UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **In Re: AUTOMOTIVE WIRE HARNESS SYSTEMS ANTITRUST LITIGATION** | |
| This Document Relates to: | MDL No. 2311 |
| **All Automobile Dealer Actions** | |
| *Hammett Motor Co., Inc. v. Delphi Automotive LLP, et al.*, No. 12-10688; | Judge Marianne O. Battani<br>Magistrate Mona K. Majzoub |
| *Landers Auto Group No. 1, Inc. d/b/a Landers Toyota v. Delphi Automotive LLP, et al.*, No. 12-10676; | |
| *Superstore Automotive, Inc. v. Delphi Automotive LLP, et al.*, No. 12-10687; | |
| *Martens Cars of Washington, Inc. v. Furukawa Electric Co., et al.*, 12-10681 | |

**Memorandum in Support of Motion to Consolidate Automobile Dealer Indirect Purchaser Cases, For Leave to File Consolidated Class Complaint *Instanter* And to Appoint Interim Class Counsel For Automobile Dealer Indirect Purchasers**

## Statement of the Issues Presented

Whether the Court should order consolidation of the above-listed actions pursuant to

Fed. R. Civ. P. 42(a); grant leave to file the attached Automobile Dealers Consolidated Class

Complaint *instanter*; and appoint interim class counsel for the automobile dealer indirect

purchaser class pursuant to Federal Rule of Civil Procedure 23(g)(3).

**Controlling and Most Important Authority**

Fed. R. Civ. P. 23

Fed. R. Civ. P. 42

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, MDL No. 2262, No. 11-2262, Memorandum and Order (Oct. 18, 2011 S.D. N.Y.)

*In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184 (S.D. N.Y. 2008)

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)

*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003)

*In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 2011 WL 4382942 (W.D. Pa. 2011)

*DIK Drug Co. v. Altana Pharma AG*, 2008 WL 2264586 (D. N.J. 2008)

*Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831 (N.D. Ill. 2008)

*In re OSB Antitrust Litig.*, 2007 WL 2253425 (E.D. Pa. 2007)

*In re Tyco Intern., Ltd.*, 2000 WL 1513772 (D. N.H. 2000)

*In re Oxford Health Plans, Inc., Secs. Litig.*, 182 F.R.D. 42 (S.D. N.Y.1998)

Manual for Complex Litig. (Fourth) § 21.11 (2004)

H. Newberg & A. Conte, *Newberg on Class Actions*, § 9.35 at (3rd ed. 1992)

9 *Wright & Miller, Federal Practice and Procedure* § 2384

## Introduction

This Automotive Wire Harness Systems Antitrust Litigation will be substantial in both size and scope. As the Court noted in its February 17, 2012 Order (Doc. No. 1), at least forty-five class action complaints have already been filed directly in this Court or transferred here by the Judicial Panel on Multidistrict Litigation ("JPML"). *See* Conditional Transfer Order at 1. The majority of these cases are brought either by direct purchasers of wire harnesses and related products[1] or by consumers who bought vehicles containing the same products (hereafter referred to as "End-Payors").

A smaller – but unquestionably distinct – set of cases consist of class actions brought by Plaintiffs who are automobile *dealers* (the "Automobile Dealer Actions"). These automobile dealers ("automobile dealers" or "automobile dealer plaintiffs") are indirect purchasers who purchased the automobiles containing the wire harnesses (and sometimes just the wire harnesses for use as replacement parts) and related products from the automobile manufacturers, who had purchased the wire harnesses and related products from the Defendants. The automobile dealers resold these automobiles and wire harnesses to consumers, the End-Payors.

Separate leadership is necessary in this litigation for the different indirect purchaser classes of End-Payors (generally, consumers who have purchased an automobile) and automobile dealers. Although both groups of plaintiffs can and will cooperate on many aspects of the case, including discovery, there are significant conflicts between these two

_____

[1] The Department of Justice defined related products as automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors.

4

groups of indirect purchasers, especially as to how much of the illegal overcharges were passed on from the automobile dealers to the End-Payors.  Each group therefore needs its own separate counsel and leadership structure.

Automobile dealer indirect purchaser Plaintiffs Hammett Motor Co., Landers Auto Group No. 1, Inc., Superstore Automotive, Inc., and Martens Cars of Washington, Inc. ("Plaintiffs") submit this memorandum of law in support of their motion (i) for consolidation of the above-listed actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (ii) for leave to file the attached Automobile Dealers Consolidated Class Complaint *instanter*, and (iii) to appoint interim class counsel pursuant to Federal Rule of Civil Procedure 23(g)(3).  Counsel in all of the known actions on behalf of automobile dealer indirect purchasers, either filed currently or which are about to be filed, agree and join in this motion and memorandum. Attached hereto are a proposed case management order (Exhibit A) and the proposed Automobile Dealers Consolidated Class Complaint (Exhibit B).

So far, four Automobile Dealer Actions have been filed in various district courts and transferred to this multidistrict litigation ("MDL"):

- *Hammett Motor Co., Inc. v. Delphi Automotive LLP, et al.* (S.D. Miss.)
- *Landers Auto Group No. 1, Inc. v. Delphi Automotive LLP, et al.* (E.D. Ark.)
- *Superstore Automotive, Inc. v. Delphi Automotive LLP, et al.* (D. Minn.)
- *Martens Cars of Washington, Inc. v. Furukawa Electric Co., et al.* (D. D.C.)

Counsel for these plaintiff automobile dealers have conferred and agreed to work together and in consolidation in the prosecution of this litigation on behalf of the automobile dealers class.   Five additional dealers, Westfield Dodge City, Inc. (New York), Lee Pontiac-Oldsmobile-GMC Truck, Inc. (Florida), Landers McClarty Fayetteville TN, LLC

(Tennessee), V.I.P. Motors Cars, Ltd. (California), and Desert European Motorcars, Ltd. (California) will file actions directly in this Court. These five additional automobile dealers have likewise agreed to consolidation and are included within the proposed Automobile Dealers Consolidated Class Complaint.

As described in more detail below, the proposed leaders of the Automobile Dealer Actions satisfy the criteria for leadership set forth by this Court in its February 17 Order, especially the Court's requirement that the attorneys be willing and able to cooperate with others, including other plaintiffs' counsel. The attorneys proposed for the leadership structure set out in this motion have the experience and ability to work cooperatively with the leadership of both the End-Payor class and the Direct Purchaser class. The proposed interim co-lead counsel also satisfy the criteria set out in Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs have attached hereto their proposed Automobile Dealers Consolidated Class Complaint, which combines all claims and class action allegations related to automobile dealer plaintiffs. Plaintiffs have also attached a proposed case management order that, among other things, consolidates the Automobile Dealer Actions, grants leave to file the Automobile Dealers Consolidated Class Complaint, and appoints Jonathan W. Cuneo of Cuneo Gilbert & LaDuca, LLP, Don Barrett of Barrett Law Group, P.A., and Shawn M. Raiter of Larson • King, LLP, as interim co-lead counsel for the Automobile Dealer Actions.

**Argument**

**I.      Consolidation Of The Automobile Dealer Actions Is Appropriate.**

Federal Rule of Civil Procedure 42 states that if "actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2).  Consolidation under Rule 42(a) is appropriate where there are factual and legal similarities among the actions, and the defendants overlap in substantial degree. 9 Wright & Miller, *Federal Practice and Procedure* § 2384, at 447 ("Actions involving the same parties are apt candidates for consolidation."); *see generally United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 & n.10 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

The Automobile Dealer Actions involve common questions of law and fact.  These actions share factual questions arising out of a conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems.   The factual allegations, alleged wrongdoing, causes of action, and the Defendants in the Automobile Dealer Actions are virtually the same, so much so that Plaintiffs believe that the cases may be handled through a single Automobile Dealers Consolidated Class Complaint.

**II.     Appointment Under Rule 23(g) Of Interim Lead Counsel For The Automobile Dealers Is Appropriate In Light Of The Conflict Within The Classes Of Indirect Purchasers.**

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).  In large proposed class actions such as this

7

one, courts routinely appoint interim class counsel to coordinate prosecution of the matter for plaintiffs. *See* H. Newberg & A. Conte, *Newberg on Class Actions*, § 9.35 at 9-99 (3rd ed. 1992) ("it is almost standard practice for the court to issue an order at an early stage.").

Here, appointment of interim lead counsel for the automobile dealers is necessary given the inherent conflicts between the automobile dealer plaintiffs and the End-Payor plaintiffs. The most significant of these conflicts is how much of the illegal overcharge was passed on from the automobile dealers to the End-Payors and whether the pass through defense is valid under the applicable state laws. These conflicts between the two classes of indirect purchasers have already been acknowledged by some of the End-Payor attorneys.

For example, counsel for first filed End-Payor case, *Susan LaCava v. Delphi Automotive, et al.,* filed a motion regarding a schedule for lead counsel motions. Doc. No. 24, 11-cv-14399. Pursuant to Local Rule 7.1 (a), these plaintiffs certified that they had "sought concurrence for this Motion from all plaintiffs' attorneys in the End-Payor Class Cases." Doc. 24, at 4. Counsel for the automobile dealers were not contacted, however, underlining the difference in interests between the automobile dealers and the End-Payors.[2]

Bernard Persky, counsel for the *LaCava* plaintiffs, confirmed the need for separate classes during the JPML hearing. Mr. Persky told the JPML panel the following:

> JUDGE HEYBURN: Who are most of the plaintiffs? Are most of the plaintiffs purchasers of automobiles?

---

[2] The *LaCava* motion does not state that counsel for the End-Payor class seeks to be counsel for any indirect purchasers beyond the End-Payor class, including the automobile dealers. The fact that counsel for the End-Payor class has designated its portion of the indirect purchaser plaintiffs as a separate class demonstrates End-Payor counsel's view that separate counsel is needed for the End-Payor class and the automobile dealers class.

> MR. PERSKY:  There are various classes.  There is a class of direct purchasers of the auto wire harnesses.  There is a class of dealers intermediate in the chain of distribution.  There are a class of end payers who buy cars, and those who also buy auto wire harnesses to repair their cars.

JPML Transcript (1/26/2012) at 6:2-12.  (Exhibit C).  Other counsel for the End-Payors concur.  Diane Nast, counsel for End-Payor Gary Brock, reiterated Mr. Persky's agreement that multiple indirect classes would be needed:

> JUDGE HEYBURN:  What kind of plaintiffs do you represent?
>
> MS. NAST:  Indirect purchasers.
>
> THE COURT:  Is that going to be a problem with this case, having three or four levels of different kinds of plaintiffs?
>
> MS. NAST:  I don't think so, Your Honor.  I suspect we will end up with some classes.  This is going to be a very large case, probably one of the biggest antitrust cases in terms of the number of class members probably rivaling the airplane cases in terms of numbers of class members.  Probably bigger than that.  I don't think it is going to be a problem.  It is just a question of management.

(Ex. C at 12:16 - 13:5).  Clearly, counsel for the End-Payor plaintiffs agree that the proposed class they represent is separate and distinct from the automobile dealers.  During each year of the conspiracy period, there were more than 20,000 franchised new car dealerships in the United States.[3]  Separate counsel representing the significant class of automobile dealers is needed to protect their interests.[4]

---

[3] See http://www.nada.org/Publications/NADADATA/historical_dealer_count.htm

[4] Plaintiffs and similarly situated dealers were victimized not only by the wire harness price-fixing involved in this MDL 2311, but by the interrelated price fixing conspiracies involved in MDL No. 2349, 2350, and 2351.  Plaintiffs will be filing complaints in those MDLs and will request this Court to appoint the same leadership for all four MDLs, as the undersigned counsel believe that a unified structure will greatly assist the Court in efficiently and effectively handling this litigation.

9

Courts have acknowledged that, in antitrust cases, conflicts or tensions exist among any class members who are differently situated as to issues of damage calculation and the application of the pass-on defense. *See In re OSB Antitrust Litig.*, 2007 WL 2253425, at *5 (E.D. Pa. 2007) (re-seller cannot adequately represent consumers because it cannot be deemed to credibly address the pass-through issue on behalf of consumers); *DIK Drug Co. v. Altana Pharma AG*, 2008 WL 2264586, at *2 (D. N.J. 2008) (recognizing conflicts between classes of direct and indirect purchasers who seek different types of damages); *cf. Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1195, (11th Cir. 2003) ("the claims of these disparate groups cannot be mixed together under Rule 23(a) where the economic reality of the situation leads some class members to have economic interests that are significantly different from—and potentially antagonistic to—the named representatives purporting to represent them.").

In situations such as this, where classes of plaintiffs have inherent conflicts with one another, courts will appoint separate lead counsel for the respective classes. For example, in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, MDL No. 2262, Case No. 11-2262 (Oct. 18, 2011 S.D. N.Y.), the court appointed two separate sets of lead counsel because there were distinct categories of plaintiffs and because the firms acknowledged a potential conflict in representing both groups of plaintiffs. (Ex. D, Doc. No. 32, *Memorandum and Order*, at 2-3). There, Judge Naomi Reice Buchwald summarized her reasoning:

> We have concluded that separate putative classes should be maintained for those plaintiffs who engaged in over-the-counter transactions and those plaintiffs who purchased financial instruments on an exchange. ***These two classes may be differently positioned at various stages of the litigation, creating a potential conflict in their joint representation.*** For example, the issue of antitrust standing could be raised with respect to the exchange-

based plaintiffs, who admittedly did not purchase products directly from any
of the defendants. We express no opinion at this time as to the merits of such
an argument, but the likelihood that the argument will be raised is sufficient to
generate a conflict. Similarly, separate representation is advisable because the
two categories of plaintiffs may require different treatment in the event of
settlement.

A far more commonsense approach is to divide plaintiffs into two putative
classes and **appoint interim lead counsel for each class**. There is ample
precedent for this approach at the pre-certification stage. In fact, the
framework has been adopted specifically in the context of antitrust cases in
which there are two distinct groups of plaintiffs, one of whom more "directly"
interacted with the defendants than the other.

*Id.* at 5-6 (emphasis added).

In *LIBOR*, the court found that there was a conflict of interest between "over the
counter plaintiffs" and the "exchange-based plaintiffs," and due to that conflict separate
leadership was needed for those groups. Similar conflicts exist here. As stated previously,
there are significant conflicts between the two groups of indirect purchasers relating to how
much of the illegal overcharge was passed on from the automobile dealers to the End-
Payors, an issue that also involves a determination of whether the pass through defense is
valid under the laws of the various states.

## III. Proposed Interim Co-Lead Counsel Of The Automobile Dealer Actions Are Well-Qualified, Satisfy This Court's Prerequisites For Leadership, And Will Most Adequately Represent The Automobile Dealer Class.

"[D]esignation of interim counsel clarifies responsibility for protecting the interests of
the class during precertification activities . . . " *In re Mun. Derivatives Antitrust Litig.*, 252
F.R.D. 184, 185 (S.D.N.Y. 2008) (*quoting* Manual for Complex Litig. (Fourth) § 21.11 (2004)
(hereinafter referred to as "Manual"). Rule 23 mandates that counsel must "fairly and
adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Appointment of

multiple lead counsel for a class is appropriate in complex cases that require a great deal of resources. *See In re Tyco Intern., Ltd.,* 2000 WL 1513772, at *2 (D. N.H. 2000); *In re Oxford Health Plans, Inc. Secs. Litig.,* 182 F.R.D. 42, 46 (S.D. N.Y. 1998).

The Court listed the four primary factors it would consider in making its determination for interim lead counsel in this case. These are: (1) willingness and ability to commit to a time-consuming process; (2) ability to work cooperatively with others; (3) professional experience in this type of litigation; and (4) access to sufficient resources to advance the litigation in a timely manner. A review of these factors, as well as the similar factors set forth in Rule 23(g)(1)(A), confirms that the proposed Co-Lead Counsel and Executive Committee members are well qualified, satisfy all of the Court's requirements, and are "best able to represent the interests of the class" of automobile dealers. Fed. R. Civ. P. 23(g)(2).

As previously indicated, counsel for the Automobile Dealer Actions have unanimously agreed on a structure to represent the interests of the members of that putative class. This "private ordering" process is the preferred and most common method for selecting interim class counsel structures. *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.,* 2011 WL 4382942, at *2 (W.D. Pa. 2011); Manual at § 21.272. The unanimous support for this structure demonstrates the already cooperative and collaborative approach taken by counsel in the Automobile Dealer Actions.

There are a number of well-qualified attorneys and firms who could have sought the leadership of the Automobile Dealer Actions in their own right. All of those counsel ask

that the Court appoint the following as interim Co-Lead Counsel for the Automobile Dealer

Actions:

>Jonathan W. Cuneo, Esq.
>Cuneo Gilbert & LaDuca, LLP
>507 C Street, N.E.
>Washington, DC 20002
>(*Declaration of Jonathan W. Cuneo attached as Exhibit E*)

>Don Barrett, Esq.
>Barrett Law Group, P.A.
>P.O. Box 927
>404 Court Square North
>Lexington, MS 39095
>(*Affidavit of Don Barrett attached as Exhibit F*)

>Shawn M. Raiter, Esq.
>Larson • King, LLP
>2800 Wells Fargo Place
>30 East Seventh Street
>St. Paul, MN 55101
>(*Declaration of Shawn M. Raiter attached as Exhibit G*)

Plaintiffs also propose a five-person Executive Committee made up of Co-Lead Counsel

plus the following:

>Thomas P. Thrash, Esq.
>Thrash Law Firm, P.A.
>1101 Garland Street
>Little Rock, AR 72201

>Dewitt Lovelace, Esq.
>Lovelace Law Firm, P.A.
>Suite 200
>12870 US Hwy 98 West
>Miramar Beach, FL 32550

Plaintiffs also propose the following to serve as Liaison Counsel:

> Gerard V. Mantese, Esq.
> Mantese Honigman Rossman and Williamson, P.C.
> 1361 E. Big Beaver Road
> Troy, Michigan 48083

As discussed in greater detail below, this proposed leadership team is well-qualified and prepared to lead the litigation to represent the interests of the more than 20,000 new car dealerships in existence each year during the conspiracy period.

### A.    Proposed Co-Lead Counsel Are Willing And Able To Commit To This Time-Consuming Litigation.

Proposed Co-Lead Counsel are willing to lead the Automobile Dealers Actions and will devote the time necessary for this litigation.  Before filing their original complaints, Jonathan W. Cuneo, Don Barrett and Shawn Raiter (as well as their respective firms, Cuneo Gilbert & LaDuca, LLP, Barrett Law Group, P.A. and Larson • King, LLP) investigated the facts and thoroughly researched and analyzed the complex issues that they anticipate will arise in this case.  Consequently, these lawyers and firms are well aware of the immense complexities, factual and legal, in this case, as well as the large time commitment involved. Knowing these facts, each firm chose to enter this litigation without hesitation.

Each of these firms is capable of committing the resources needed for this litigation during the entirety of its duration.  The firms collectively have nearly 60 lawyers and many more legal support staff.  This number does not include the firms on the Executive Committee, Liaison Counsel or other co-counsel who also represent Plaintiffs in the Automobile Dealer Actions and will be working with Proposed Co-Lead Counsel during this

litigation.  To be sure, the Automobile Dealer Actions will be properly staffed with capably experienced attorneys, paralegals and other legal professionals.

Moreover, Messrs. Cuneo, Barrett and Raiter have, in anticipation of the numerous time-consuming tasks required in this litigation, hit the ground running and already started to work with experts in anticipation of various antitrust issues presented here.  In particular, Proposed Co-Lead Counsel have already engaged consulting experts to analyze the damage suffered by automobile dealers, have investigated publicly available documents related to Defendants and the price-fixing conspiracies, and have been actively developing the legal claims and factual background applicable to the substantial number of automobile dealers that have an interest in this litigation.

Proposed Co-Lead Counsel have already invested significant time and resources in this litigation, preparing the Automobile Dealer Consolidated Class Complaint and working with economists to analyze the dealers' damages, and are prepared to invest the time necessary to efficiently bring this litigation to a successful conclusion.  The attorneys involved in representing the automobile dealers have already engaged in numerous conferences to efficiently carry out the work on behalf of these class members and are well underway.

### B.     Proposed Interim Co-Lead Counsel Are Willing And Able To Work With Other Attorneys, Including Other Plaintiffs' Counsel.

Proposed Co-Lead Counsel are willing and able to work and cooperate with anyone involved in this case, including other plaintiffs' counsel and defense counsel.  Indeed, this kind of cooperation and commitment will be essential to prosecute this case in a prudent

and responsible manner given the large-scale discovery that will be involved, the sheer number of parties and attorneys involved, and the length of time of the conspiracy.

Each of the Proposed Co-Lead Counsel has successfully lead large, multidistrict litigation. (*See* Ex. E, F, and G). Each has demonstrated an ability to organize and manage large litigation and to do so cooperatively with counsel for all of the involved parties. Other federal courts have recognized as much by appointing these attorneys to leadership positions in other MDLs and class actions. *Id.* Perhaps most importantly, Proposed Co-Lead Counsel have shown that they are able to work cooperatively by agreeing on a structure to manage the automobile dealers' claims. Counsel were able to quickly agree on a leadership structure, which has allowed them to focus on preparing the case instead of fighting about who should be in charge.

### C.   Proposed Interim Co-Lead Counsel Have Significant Experience In This Type Of Litigation.

Proposed Co-Lead Counsel for the Automobile Dealers Actions provide a wealth of litigation, leadership, claims resolution, and strategy experience. This leadership also has extensive trial experience. This includes trying class actions to verdict, something many attorneys lack. This experience, coupled with the other factors discussed in this brief, demonstrates that Proposed Co-Lead Counsel are well-suited to serve as interim class counsel for the Automobile Dealers Actions.

Jonathan Cuneo and Cuneo Gilbert & LaDuca, LLP, have extensive experience leading and managing complex litigation and have particularly deep antitrust experience. (Ex. E). Mr. Cuneo previously worked as an attorney in the Office of the General Counsel of the Federal Trade Commission and worked as counsel to the Subcommittee on

16

Monopolies and Commercial law of the U.S. House of Representative's Committee on the Judiciary.  *Id.*  He also serves as General Counsel and Legislative Representative of the Committee to Support the Antitrust Laws and previously served as General Counsel of the National Association of Shareholder and Consumer Attorneys.  *Id.*  He is also the co-editor of a textbook: THE INTERNATIONAL HANDBOOK OF PRIVATE ENFORCEMENT OF COMPETITION LAW (Edward Elgar Publishing Inc., 2010).

Also working on this litigation at Mr. Cuneo's firm is Joel Davidow, one of the country's most experienced and distinguished antitrust lawyers.  (Ex. E).  Mr. Davidow worked at the U.S. Federal Trade Commission, followed by 15 years in the Antitrust Division of the Department of Justice, where he eventually served as Chief of the Foreign Commerce Section and then Director of Policy and Planning.  *Id.*  Mr. Davidow has been a partner in several firms that advised and represented major corporations.  *Id.*  Mr. Davidow has been an adjunct Professor of Law at George Washington University School of Law, Columbia Law School, Georgetown Law Center, American University Law School, and George Mason University Law School, where he has taught courses in antitrust, regulation and international competition policy.  *Id.*  Mr. Davidow is also the author of the ANTITRUST GUIDE FOR INTERNATIONAL BUSINESS ACTIVITIES (BNA, 4th ed. 2011).  *Id.*

In addition to its antitrust experience, the Cuneo Gilbert & LaDuca, LLP firm has achieved success for a range of clients, by: helping to recover billions of dollars in shareholder litigation, obtaining compensation for Holocaust survivors, working to recover hundreds of millions of dollars for homeowners with defective construction materials, and, in several jurisdictions, ending the unconstitutional practice of jails' subjecting minor law

17

violators to unnecessary strip searches. The firm has years of experience litigating and prosecuting complex class action such as this case, including such cases as the *Enron Securities Litigation* where the litigation recovered more than $7 billion for defrauded investors and CertainTeed's defective organic shingles litigation where the firm served as Co-lead Counsel in an MDL that secured a settlement valued at more than $700 million.

Don Barrett and the Barrett Law Group, P.A., have vast experience litigating and trying complex class actions. (Ex. F). Mr. Barrett maintains a nationwide complex civil litigation practice, including antitrust class action litigation, and has significant experience shepherding large scale class actions to successful conclusions. *Id.* Mr. Barrett has served as lead counsel or as a member of the executive committee in numerous antitrust class action cases. *Id.* Mr. Barrett also has the valuable, and rare, experience of successfully trying several certified class actions to verdict. *Id.*

Shawn Raiter of Larson • King, LLP is also well-qualified to serve as co-lead counsel. (Ex. G). Mr. Raiter has been recognized in *The Best Lawyers in America* for handling plaintiffs' class action and mass tort litigation and has been selected or appointed to serve as lead or co-lead counsel and other leadership positions in a number of multidistrict litigations, including: *In re Zurn Pex Plumbing Litig.*, MDL No. 1958 (D. Minn.) (Lead Counsel); *In re Uponor, Inc. F1807 Plumbing Prods. Liab. Litig.*, MDL No. 2247 (D. Minn.) (Lead Counsel); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, MDL No. 2283 (D. S.C.) (Co-Lead Counsel); *In re Kitec Plumbing Sys. Prods. Liab. Litig.*, MDL No. 2098 (N.D. Tex.) (Plaintiffs' Executive Committee); and *In Re: Baycol Prods. Liab. Litig.*, MDL No. 1431

18

(D. Minn.) (lead firm attorney as Plaintiffs' Liaison Counsel).  Ex. G.  Mr. Raiter has also served as lead or co-lead counsel on behalf of the plaintiffs in numerous class actions.  *Id.*

Since Larson • King, LLP was founded approximately 10 years ago, the firm has recovered more than $1.6 billion for its clients.  (Ex. G).  This reflects money actually paid to the clients, not settlement funds merely made available.  *Id.*  The firm also has class action jury trial experience and Mr. Raiter has substantial jury trial experience as well.  *Id.*

## IV.   Proposed Co-Lead Counsel Have Sufficient Resources To Advance The Litigation In A Timely Manner.

As stated previously, Proposed Co-Lead Counsel have served in leadership roles in various other antitrust class actions, as well as other complex and resource-intensive litigations, and are knowledgeable about the resources necessary to adequately litigate this type of case.  These firms and attorneys are also well-versed in the various legal issues pertaining to Rule 23 class certification in this type of antitrust case.

As demonstrated by Proposed Co-Lead Counsel's work in the other class actions they have successfully prosecuted, and Proposed Co-Lead Counsel's work in retaining qualified antitrust experts for this litigation, Proposed Co-Lead Counsel have the necessary resources to prosecute this action, and will devote those resources to the prosecution of this action in a manner that best serves the interests of the class members.

Proposed Co-Lead Counsel are well-established firms with the financial wherewithal to support the litigation comfortably and without stress.  They have in fact already established and funded litigation funds for these four interrelated MDLs (Nos. 2311, 2349, 2350 and 2351).  With nearly 60 attorneys in their firms, Proposed Co-Lead Counsel will be able to adequately staff the Automobile Dealers Actions.

**V.      Proposed Co-Lead Counsel Also Satisfy The Rule 23(g)(1)(A) Criteria For Selection of Interim Class Counsel.**

The Court's list of factors for appointment of interim lead counsel closely follows Rule 23(g)(1)(A), which enumerates four factors that courts have considered in appointing class counsel.  The factors are: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv); *see Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 841 (N.D. Ill. 2008) (citing factors).

As stated above, Proposed Co-Lead Counsel have already done significant work in identifying and investigating the automobile dealers' claims in this action.  That work is apparent in the proposed Automobile Dealers Consolidated Class Complaint, which contains both detailed factual allegations and economic analysis from the preliminary damage studies performed by Plaintiffs' consulting expert economists, which demonstrates why the Automobile Dealer Actions require separate leadership from the End-Payor actions.

Proposed Co-Lead Counsel also have substantial experience in handling complex litigation, as explained in more detail above.  Having served as lead counsel of MDL litigations and class actions, Proposed Co-Lead Counsel are well-versed in the issues related to certification, large discovery plans, negotiating settlements, and trying the case to verdict if necessary.

## VI.  The Proposed Leadership Structure For The Automobile Dealer Actions Is The Most Efficient Way To Prosecute This Litigation.

The proposed structure provides the most efficient means of provisioning the legal work, strategy and decision-making.  Having highly experienced Co-Lead Counsel with a robust Executive Committee will benefit the automobile dealer class members by organizing the prosecution of the class's claims efficiently and by avoiding disputes and duplication that can arise with a more complex leadership structure.  In addition, counsel for all of the Automobile Dealer Actions support entry of the proposed case management order with the proposed structure.

### Conclusion

Based on the foregoing, Plaintiffs respectfully request that the motion be granted.

Dated:  February 27, 2012.

Respectfully submitted,

/s/  *Gerard V. Mantese*

Gerard V. Mantese
(Michigan Bar No. P34424)
Mantese Honigman Rossman and
Williamson, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com

21

Don Barrett
David McMullan
Brian Herrington
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Gregory Johnson
G. Johnson Law, PLLC
6688 145th Street West,
Apple Valley, MN 55124
Telephone: (952) 930-2485
greg@gjohnsonlegal.com

Phillip Duncan
Richard Quintus
Duncan Firm, P.A.
900 S. Shackleford, Suite 725
Little Rock, AR 72211
Telephone:  (501) 228-7600
phillip@duncanfirm.com
richard@duncanfirm.com

Dewitt Lovelace
Alex Peet
Lovelace Law Firm, P.A.
Suite 200
12870 US Hwy 98 West
Miramar Beach, FL  32550
Telephone: (850) 837-6020
dml@lovelacelaw.com
alex@lovelacelaw.com

Jonathan W. Cuneo
Joel Davidow
Preetpal Grewal
Victoria Romanenko
Cuneo Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
pgrewal@cuneolaw.com
vicky@cuneolaw.com

Shawn M. Raiter
Larson • King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
sraiter@larsonking.com

Thomas P. Thrash
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Telephone: (501) 374-1058
tomthrash@sbcglobal.net

Charles Barrett
Charles Barrett, P.C.
6518 Highway 100
Suite 210
Nashville, Tennessee 37205
Telephone: (615) 515-3393
charles@cfbfirm.com

*Counsel for Automobile Dealer
Plaintiffs*

**Certificate of Service**

I, Gerard V. Mantese, hereby certify that this document was electronically filed and served using the Court's ECF system on February 27, 2012.

/s/  *Gerard V. Mantese*

Gerard V. Mantese