

```
                   MDL 2311 Automotive Harness Systems Antitrust Litigation
0001
   1         IN THE UNITED STATES DISTRICT COURT
   2         FOR THE SOUTHERN DISTRICT OF FLORIDA
   3
   4                   Docket No. 2311
   5
   6
   7  IN RE:  Automotive Wire Harness Systems
   8          Antitrust Litigation
   9
  10
  11
                HEARING BEFORE THE UNITED STATES
  12
            JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
  13
  14
  15
  16         Thurgood Marshall Federal Judiciary Building
                       400 North Miami Avenue
  17                       Miami, Florida
  18
  19
                          January 26, 2012
  20                      Morning Session
  21
  22
  23
  24            Stenographically Reported by
  25                   Matthew P. Spoutz
0002
   1              JUDICIAL PANEL:
   2       JOHN G. HEYBURN, II (Chairman)
           KATHRYN H. VRATIL
   3       BARBARA S. JONES
           MARJORIE O. RENDELL
   4       W. ROYAL FURGESON, JR.
           PAUL J. BARBADORO
   5       CHARLES R. BREYER
   6
       On behalf of SUSAN LaCAVA:
   7
           LABANTON SUCHAROW, LLP
   8       140 Broadway
           New York, New York   10005
   9       212-907-0700
           bpersky@labanton.com
  10       BY: BERNARD PERSKY, ESQ.
  11
       On behalf of MARTINEZ MANUFACTURING:
  12
           PRETI FLAHERTY
  13       1 City Center
           Portland, Maine   04104
  14       207-791-3000
           ghansel@preti.com
  15       BY: GREGORY P. HANSEL, ESQ.
  16
       On behalf of MARGARET Z. SIRMON, et al.:
  17
           BECNEL LAW FIRM, LLC
  18       106 West Seventh Street
           Reserve, Louisiana   70084
                                Page 1
```

```
                MDL 2311 Automotive Harness Systems Antitrust Litigation
19              985-536-1186
                dbecnel@becnellaw.com
20              BY: DANIEL E. BECNEL, JR., ESQ.
21
        On behalf of ZAHIRA CRESPO:
22
                JOHN F. NEVARES & ASSOCIATES, PSC
23              1225 Ponce de Leon Avenue
                Vig Tower Suite 1504
24              San Juan, Puerto Rico   00907
                787-722-9333
25              jfnevareslaw.com
0003
 1      On behalf of GARY T. BROCK:
 2              RODA NAST, P.C.
                801 Estelle Drive
 3              Lancaster, Pennsylvania   17601
                717-892-3000
 4              dnast@rodanast.com
                BY: DIANNE M. NAST, ESQ.
 5
 6      On behalf of JOSEPH MUSCARA, et al.:
 7              LEVIN, FISHBEIN, SEDRAN & BERMAN
                510 Walnut Street
 8              Suite 500
                Philadelphia, Pennsylvania   19106
 9              877-882-1011
                hsedran@lfsblaw.com
10              BY: HOWARD J. SEDRAN, ESQ.
11
        On behalf of YAZAKI NORTH AMERICA:
12
                JONES DAY
13              51 Louisiana Avenue, NW
                Washington, DC   20001
14              202-879-3939
                jmcevoy@jonesday.com
15              BY: JULIE McEVOY, ESQ.
16
17
18
19
20
21
22
23
24
25
0004
 1              JUDGE HEYBURN:  Good morning.
 2              Mr. Persky.
 3              MR. PERSKY:  Good morning, Your Honors.
 4      I'm here in support of Plaintiff Susan LaCava's
 5      motion to transfer the related cases to the eastern
 6      district of Michigan.
 7              We suggest the eastern district of
 8      Michigan is the center of gravity of this case, and
 9      has the closest nexus to the related cases.  None of
10      the other proposed districts suggested have any
11      material connection to this case.
12              All of the factors the court has looked to
13      in the past to transfer a case strongly point to the
14      eastern district of Michigan as the most appropriate
```

Page 2

```
                MDL 2311 Automotive Harness Systems Antitrust Litigation
15      transfer district. The location of the grand jury
16      in criminal cases are in that district.
17      Conspiratorial meetings occurred in that district.
18      The office of three of the foreign defendants in the
19      eastern district of Michigan were raided by the FBI.
20      Most of the corporate defendants have offices or
21      subsidiaries located in that district.  Because of
22      these facts, the parties, the witnesses, and
23      relevant evidence are likely to be found in that
24      district.
25                Indeed, the United States automobile
0005
 1      industry is centered in that district.  In our view,
 2      it would be quite anomalous for the panel to send
 3      cases to any place other than Detroit.  It would be
 4      tantamount to having the BP Gulf Oil spill cases
 5      sent to North Dakota for pretrial purposes.
 6                In addition, other factors strongly point
 7      to the eastern district of Michigan.  For example,
 8      the first filed answer was filed in this district.
 9      The vast majority of pending cases, more than
10      three-quarters of the cases, are filed in this
11      district.  Indeed, all the defendants, including the
12      Japanese and German defendants, favor transfer to
13      this district.
14                When you look at the statistics with
15      respect to the calendars of the various districts in
16      play, the eastern district of Michigan has by far
17      the most favorable statistics.  The median time
18      following the filing of district cases in Michigan
19      is 8.3 months versus 35 months for the eastern
20      district of Louisiana.  Indeed, only 7.4 percent of
21      the civil cases in the eastern district of Michigan
22      are three years old versus 30 percent in the eastern
23      district of Louisiana.
24                In our view, the eastern district of
25      Michigan is by far the most appropriate transfer
0006
 1      district.
 2                JUDGE HEYBURN:  Who are most of the
 3      plaintiffs?  Are most of the plaintiffs purchasers
 4      of automobiles?
 5                MR. PERSKY:  There are various classes.
 6      There is a class of direct purchasers of the auto
 7      wire harnesses.  There is a class of dealers
 8      intermediate in the chain of distribution.  There
 9      are a class of end payers who buy cars, and those
10      who also buy auto wire harnesses to repair their
11      cars.  End payers are direct purchasers, dealers
12      intermediate in the chain of the distribution and
13      direct purchasers.
14                The vast majority of pending cases result
15      in Michigan, including three-quarters of all the
16      pending cases.
17                JUDGE HEYBURN:  Thank you very much.
18      Mr. Hansel.
19                MR. HANSEL:  May it please the court, good
20      morning, Your Honor.  Greg Hansel for the direct
21      purchaser plaintiffs.
22                Mr. Persky and others are speaking for the
23      indirect purchasers such as consumers and the auto
24      dealers.  I'm speaking for the direct purchasers of
25      wire harness products who all support the eastern
                                Page 3
```

```
                MDL 2311 Automotive Harness Systems Antitrust Litigation
0007
  1     district of Michigan as well.
  2             Direct purchases are businesses who
  3     purchase these products directly from the
  4     defendants, including Defendant Laura Cava who plead
  5     guilty in the eastern district of Michigan.
  6             We are the only group who has standing to
  7     sue for damages under the Sherman Act.  There are
  8     ten indirect purchaser cases all filed in the
  9     eastern district of Michigan who unanimously support
 10     that venue.  None have filed anywhere else.
 11             Historically and today, Detroit has been
 12     the hub of the automotive industry in this country.
 13     Your Honor sent the potatoes case to Idaho, the
 14     chocolate case to Hershey, and the court did those
 15     things for a reason.  We submit the same reasoning
 16     supports sending the wire harness automotive case to
 17     Detroit.
 18             Thank you.
 19             JUDGE HEYBURN:  You remember New Jersey
 20     strenuously argued they are the chocolate capital of
 21     the world.  I don't know whether Michigan has a
 22     contestant there.
 23             Maybe Mr. Becnel can lighten us on that.
 24             Can't be Alabama, could it?
 25             MR. BECNEL:  It could be Alabama, and I
0008
  1     know why.  It could be Alabama because Detroit used
  2     to be the capital of the automotive industry, but
  3     virtually everybody now is in Alabama.  In fact, all
  4     the manufacturers, almost every foreign
  5     manufacturer, whether you consider Mercedes or BMW
  6     or Hundai, are building more cars there.  The reason
  7     they are there is because of Detroit's problem.  I
  8     think anywhere in Alabama before any federal judge
  9     would be good.
 10             But I make a second suggestion.  The best
 11     judge for this case, because it is going to settle
 12     and it has got to be managed, is Judge Vance who is
 13     probably the premier judge to handle an antitrust
 14     case in this country.  That is where she practices.
 15     She even ruled against me in a previous Ford case.
 16     But she knows what she is doing.  And to sit and
 17     talk about Louisiana, they have resolved probably
 18     tens of thousands of Chinese drywall cases, tens of
 19     thousands just in the last month of FIMA trailer
 20     cases.
 21             The average judge in the eastern district
 22     of Louisiana only has 150 cases now.  Judge Fallen
 23     is about to resolve the rest of them.  Propulsion is
 24     resolved.  In fact, we just wrapped it up and gave
 25     $6 million to the city of New Orleans to build a
0009
  1     hospital.
  2             Louisiana or Alabama would be great, but
  3     Judge Vance would be fantastic, and it would get
  4     over with quickly.
  5             JUDGE HEYBURN:  Thank you very much.
  6             Mr. Nevares.
  7             MR. NEVARES:  Good morning.  My name is
  8     John Nevares.
  9             I move this case be transferred to the
 10     district of Puerto Rico to Judge Gusto Jaffe who
```

```
              MDL 2311 Automotive Harness Systems Antitrust Litigation
11     runs a rocket docket and has one of the best track
12     records in running expedient dockets. He has vast
13     experience in class actions, and right now that
14     district of Puerto Rico is not handling any MDLs
15     whatsoever.
16              In the alternative, I move for Judge Sara
17     Vance. I'm also admitted to Louisiana, and I can
18     vouch for her, that she is an excellent choice also.
19              Thank you very much.
20              JUDGE HEYBURN: Thank you.
21              Mr. Sedran, how complicated do you think
22     this litigation is going to be?
23              MR. SEDRAN: Antitrust cases are
24     complicated, so it is not an easy case. It will be
25     complicated.
0010
 1              We are advocating for New Orleans as well.
 2     If there is a center of gravity to this case, I
 3     suggest it's Tokyo. That is where the conspiracy
 4     was hatched. That is where the main documents would
 5     be and the witnesses. Obviously you don't have the
 6     authority to send the case to Tokyo.
 7              The major defendants are Japanese
 8     corporations. We believe that is where the
 9     conspiracy was hatched. There really is no
10     particular nexus to Michigan.
11              Mr. Becnel was right, that the times have
12     changed. The auto manufacturers around the world
13     are located in the south, Tennessee, Mississippi,
14     Alabama, Illinois, so there are equal number of
15     witnesses that we would find in the south.
16              Mr. Persky argued about the location of
17     the grand jury as being an important factor. This
18     panel has ruled in numerous cases that it is not an
19     important factor. In the electrical car case you
20     rejected that notion. In corn derivative, air cargo
21     where I'm lead counsel, you rejected that notion.
22     Flat glass you rejected that. In commercial
23     explosives you rejected that.
24              The location of the grand jury really
25     doesn't have any meaning in today's world. The
0011
 1     plaintiffs get the documents from the defendants.
 2     We don't get the documents from the Department of
 3     Justice or the grand jury. So the location of the
 4     grand jury really has very little meaning.
 5              I want to suggest that Mr. Persky's
 6     argument that the first filed case should get some
 7     particular weight, and your prior decisions have
 8     said that, I think that is a bad precedent. You are
 9     going to cause a rush to the courthouse to file
10     cases early. I don't think that is a factor you
11     should consider today.
12              Thank you.
13              JUDGE HEYBURN: Thank you very much.
14              Ms. Nast.
15              MS. NAST: Good morning, Your Honors. My
16     colleagues have already said much of what I was
17     going to say, so I will be very brief.
18              As just an administrative update, our
19     cases in Louisiana were assigned to Judges
20     Englehardt and Feldman. There was an administrative
21     order transferring the cases to Judge Feldman in the
```

MDL 2311 Automotive Harness Systems Antitrust Litigation

22  last day or two.
23              Judge Feldman is an excellent jurist.
24  However, it is our understanding he has duties that
25  take him to Washington several days a month on a
0012
1   commission he is working on. We have no idea
2   whether or not he would be in a position to accept
3   an MDL or not.
4               I'm recommending Judge Sara Vance. She
5   has MDL experience. As Mr. Becnel mentioned, she
6   had the Ford MDL. I got a chance to see firsthand
7   how decisive she is and how she keeps things moving.
8   We lost that case, but I always thought it was
9   decided fairly even though we were on the losing
10  end.
11              She does have substantial antitrust
12  experience from her private practice before she went
13  on the bench. If she were to receive this case, we
14  would have an opportunity for all of us to benefit
15  by that antitrust experience.
16              JUDGE HEYBURN: What kind of plaintiffs do
17  you represent?
18              MS. NAST: Indirect purchasers.
19              THE COURT: Is that going to be a problem
20  with this case, having three or four levels of
21  different kinds of plaintiffs?
22              MS. NAST: I don't think so, Your Honor.
23  I suspect we will end up with some classes. This is
24  going to be a very large case, probably one of the
25  biggest antitrust cases in terms of the number of
0013
1   class members probably rivaling the airplane cases
2   in terms of numbers of class members. Probably
3   bigger than that.
4               I don't think it is going to be a problem.
5   It is just a question of management.
6               JUDGE HEYBURN: Thank you very much.
7               MS. McEvoy.
8               MS. McEVOY: Good morning, Your Honors.
9               May it please the court, I'm Julie McEvoy
10  here for Yazaki North America, Inc.
11              All six of the defendants who have made
12  their views known where the cases should be
13  transferred support transfer to the eastern district
14  of Michigan for many of the same reasons you heard
15  today. If the commercials are to be believed,
16  Detroit is back, and the defendants would certainly
17  support transfer of cases there.
18              I respectfully submit to Your Honors the
19  dispersion of the witnesses through the south would
20  not outweigh the locus of information to be
21  discovered in the eastern district of Michigan where
22  many of the defendants have offices and have their
23  corporate headquarters.
24              If you are looking at where the
25  information will be found that the plaintiffs will
0014
1   want, the defendants will need, there is no question
2   Detroit is the right place to send these cases.
3               Unless the panel has any questions, I will
4   rest.
5               JUDGE HEYBURN: How many defendants are
6   there?

```
                MDL 2311 Automotive Harness Systems Antitrust Litigation
 7                    MS. MCEVOY:  Forgive me, Your Honor.  I
 8    should have done a head count before I came to the
 9    podium.
10                    There are six who authorized me to speak
11    for them.  There are many others who have not been
12    served or who contest the court's jurisdiction over
13    them as they are defendants located in Japan, not in
14    the United States.  In total, there are about 15
15    entities named as defendants in the various cases.
16                    JUDGE RENDELL:  Are all the defendants
17    Japanese?
18                    MS. MCEVOY:  No, Your Honor.  Some of them
19    are United States subsidiaries.  Some of them are
20    foreign companies.  Others are Japanese defendants.
21                    JUDGE HEYBURN:  Any other questions?
22                    Thank you very much.  We will take the
23    matter under submission.
24
25
0015
 1                        CERTIFICATE OF REPORTER
 2
 3
 4    STATE OF FLORIDA
 5    COUNTY OF DADE
 6
 7                    I, MATTHEW P. SPOUTZ, Court Reporter and
 8    Notary Public, certify that I was authorized to and
 9    did stenographically report the proceedings before
10    the United States Judicial Panel on Multidistrict
11    Litigation, pages 1 through and including 14; and
12    that the transcript is a true record of my
13    stenographic notes.
14                    I further certify that I am not a
15    relative, employee, attorney, or counsel of any of
16    the parties, nor am I a relative or employee of any
17    of the parties' attorneys or counsel connected with
18    the action, nor am I financially interested in the
19    action.
20                    Dated this 16th day of February, 2012.
21
22                    _____
23                    MATTHEW P. SPOUTZ, Shorthand Reporter
24
25
```