**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

IN RE AUTOMOTIVE WIRE HARNESS
SYSTEMS ANTITRUST LITIGATION

CASE NO. 12-MD-02311

HON. MARIANNE O. BATTANI

---

**END-PAYOR PLAINTIFFS' APPLICATION FOR**
**APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL**
**AND LIAISON COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

CONTROLLING AUTHORITIES .................................................................................. v

STATEMENT OF ISSUES PRESENTED ...................................................................... vi

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

ARGUMENT .................................................................................................................. 2

I.      Each Of The Factors Outlined By The Court As Well As The Mandatory Factors Of Rule 23(g) Militate In Favor of Appointing Proposed Interim Class Counsel As Interim Co-Lead Class Counsel For The End-Payor Plaintiffs ................................. 2

      A.      Proposed Interim Class Counsel's Commitment To This Action Is Demonstrated By The Significant Time And Resources They Have Expended Identifying And Investigating The Claims To Date ............................. 4

            1.      Labaton Sucharow ................................................................. 4

                  a.      Labaton Sucharow Successfully Briefed And Argued The MDL Motion .......................................................................... 4

                  b.      Labaton Sucharow Successfully Briefed And Argued The Opposition To The Lear Defendants' Bankruptcy Motion ............. 5

                  c.      Labaton Sucharow Has Already Served As The Point Person On A Variety Of Issues With Defendants .......................... 6

            2.      Susman Godfrey ................................................................... 6

            3.      CPM ..................................................................................... 7

      B.      Proposed Interim Class Counsel's Ability to Work Cooperatively With Others Is Reflected By The Fact That Their Application Is Supported By All End-Payor Plaintiffs And Their Counsel ......................................... 8

      C.      Proposed Interim Class Counsel Have Extensive Experience In Handling Antitrust And Other Complex Class Actions ......................................... 9

            1.      Labaton Sucharow ................................................................. 9

                    a.      Labaton Sucharow Is A Recognized Leader in Antitrust and Other Complex Class Actions ...................................... 9

          b.     Labaton Sucharow Has Demonstrated Unique Expertise In Both Indirect Purchaser And Automotive Parts Antitrust Class Actions .................................................................................. 10

     2.     Susman Godfrey ........................................................................ 12

     3.     CPM ........................................................................................... 14

   D.    Proposed Interim Class Counsel Possess The Requisite Knowledge Of State And Federal Antitrust Law, as Well as Class Action Law .......................... 17

   E.    Proposed Interim Class Counsel Will Continue To Commit More Than Ample Resources To Representing The End-Payor Plaintiffs ............................ 17

II.    Appointing Proposed Interim Class Counsel As Interim Co-Lead Class Counsel For End-Payor Plaintiffs Is Appropriate .......................................................... 18

III.   Miller Law Should Be Appointed Liaison Class Counsel ................................. 18

CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Delphi ERISA Litig.*,
   230 F.R.D. 496 (E.D. Mich. 2005) ...................................................................3

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2009 WL. 1518428 (E.D. Mich. June 1, 2009)........................3

### DOCKETED CASES

*In re Aftermarket Automotive Lighting Antitrust Litig.*,
   MDL No. 2007 (C.D. Cal.) ...........................................................................18

*In re Air Cargo Shipping Services Antitrust Litig.*,
   MDL No. 1775 (E.D.N.Y.) ...........................................................................18

*In re Automotive Wire Harness Systems Antitrust Litig.*,
   MDL No. 2311 (J.P.M.L. Feb. 7, 2011) ...........................................................2

*In re Carbon Black Antitrust Litig.*,
   MDL No. 1543 (D. Mass).............................................................................18

*In re DRAM Antitrust Litig.*,
   MDL No. 1486 (N.D. Cal.) ...........................................................................18

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
   MDL No. 1725 (E.D. Mich.) .........................................................................18

*In re Florida Cement and Concrete Antitrust Litig.*,
   No. 09-cv-23187 (S.D. Fla.) .........................................................................18

*In re Foundry Resins Antitrust Litig.*,
   MDL No. 1638 (N.D. Ohio) .........................................................................18

*Haase v. Gunnallen Fin., Inc.*,
   08-cv-010929 (E.D. Mich.)...........................................................................18

*In re Hydrogen Peroxide Antitrust Litig.*,
   No. 05-66 (E.D. Pa) ...................................................................................18

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   MDL No. 05-1717, (D. Del. Apr.18, 2006).................................................8, 18

*LaCava v. Furukawa, et al.*,
   11-v-14399 (E.D. Mich.) .............................................................................4

*In re Lear Corporation, et al.*,
   09-14326-alg (S.D.N.Y. Feb 10, 2012) ............................................................5

*In re Marine Hose Antitrust Litig.*,
   MDL No. 1888 (S.D. Fla.) ............................................................18

*In re Methyl Methacrylate (MMA) Antitrust Litig.*,
   MDL No. 1768 (E.D. Pa.) ............................................................18

*In re Parcel Tanker Antitrust Litig.*,
   MDL No. 1568 (D. Conn.) ............................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   MDL No. 1720 (E.D.N.Y.) ............................................................18

*In re Photochromic Lens Antitrust Litig.*,
   MDL No. 2173 (M.D. Fla.) ............................................................18

*In re Polyester Staple Antitrust Litig.*,
   MDL No. 1516 (W.D.N.C.) ............................................................18

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   MDL No. 1556 (M.D. Pa.) ............................................................18

*In re Sulfuric Acid Antitrust Litig.*,
   MDL No. 1536 (N.D. Ill.) ............................................................18

*In re Urethane Antitrust Litig.*,
   MDL No. 1616 (D. Kan.) ............................................................18

## STATUTES

28 U.S.C. § 1407 ............................................................2

Fed. R. Civ. P. 23(g) ............................................................3

## MISCELLANEOUS

Manual for Complex Litigation (Fourth),
   Federal Judicial Center (2004) ............................................................3, 8, 18

## <u>CONTROLLING AUTHORITIES</u>

1.  The Court's February 17, 2012 Order Setting Initial Status Conference [D.E. 1]

2.  Fed. R. Civ. P. 23(g)

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether, based on the criteria outlined in the Court's February 17, 2012 Order Setting Initial Status Conference and Federal Rule of Civil Procedure 23(g), the Court should appoint Labaton Sucharow LLP, Susman Godfrey LLP and Cotchett, Pitre & McCarthy, LLP as Interim Class Counsel and The Miller Law Firm, P.C. as Interim Liaison Counsel for the End-Payor Plaintiffs.

## INTRODUCTION

Pursuant to the Court's February 17, 2012 Order Setting Initial Status Conference ("Order") [D.E. 1] and Federal Rule of Civil Procedure 23(g), Plaintiffs and their counsel in virtually all of the 35 End-Payor Plaintiffs cases[1] respectfully submit this memorandum in support of the appointment of the law firms of Labaton Sucharow LLP ("Labaton Sucharow"), Susman Godfrey LLP ("Susman Godfrey"), and Cotchett, Pitre & McCarthy, LLP ("CPM") as Interim Co-Lead Class Counsel (collectively, "Proposed Interim Class Counsel") and The Miller Law Firm, P.C. ("Miller Law") as Interim Liaison Counsel for End-Payor Plaintiffs.

## BACKGROUND

Competition authorities in the United States, the European Union and Japan have been investigating a conspiracy in the market for wire harnesses and related products ("Wire Harnesses") since at least February 2010. Wire Harnesses are wires or cables and data circuits that run throughout every automobile. To ensure safety and basic functions, such as accelerating, turning and stopping, and to provide comfort and convenience, automobiles are equipped with various electronics that operate using control signals running on electrical power supplied from the battery. Wire Harnesses are the conduit for the transmission of these signals and electrical power.

As part of a criminal investigation into anticompetitive conduct in the automotive parts industry, the Federal Bureau of Investigation has obtained search warrants and raided certain of the defendants' offices. The European Commission Competition Authority has also conducted dawn raids at the European offices of several of the defendants. Certain defendants have also either pleaded guilty, or agreed to plead guilty, including defendant Furukawa Electric, Inc.,

---

[1] To date, plaintiffs and their counsel in 32 of the 35 End-Payor Plaintiffs cases support the appointment of Proposed Interim Class Counsel.

which has agreed to pay a $200 million fine related to its unlawful conduct, and defendant Yazaki Corp, which has agreed to pay a $470 million fine.

Plaintiff Susan LaCava filed the first action in the country on October 5, 2011 in this Court, alleging that Furukawa, Yazaki and several named and unnamed co-conspirators violated federal and state antitrust and competition laws by fixing prices, rigging bids and allocating customers for Wire Harnesses. Dozens of other actions were subsequently filed on behalf of end-payors in this and nine other district courts around the country alleging the same conduct ("End-Payor Plaintiffs Cases"). To date, at least 52 complaints have been filed throughout the country, on behalf of end-payors, auto dealerships, and middlemen who did not purchase Wire Harnesses directly as well as direct purchasers of Wire Harnesses (collectively, the "Related Actions").

Subsequently, the MDL Panel ordered the transfer of all the Related Actions to this Court on February 7, 2011. *See* Transfer Order, *In re Automotive Wire Harness Systems Antitrust Litig.*, No. 179, MDL No. 2311 (J.P.M.L. Feb. 7, 2011).

On February 17, 2012, the Court entered an Order requesting, among other things, that all applications for the appointment of Interim Class Counsel and Interim Liaison Counsel be submitted by March 8, 2012.

## ARGUMENT

### I. Each Of The Factors Outlined By The Court As Well As The Mandatory Factors Of Rule 23(g) Militate In Favor of Appointing Proposed Interim Class Counsel As Interim Co-Lead Class Counsel For The End-Payor Plaintiffs

In its Order, the Court stated that it intends to appoint interim class counsel for the End-Payor Plaintiffs. D.E. 1 at 4. In considering the appointment of interim class counsel for the End-Payor Plaintiffs, the Court emphasized that the "main criteria" for appointment will be: (i) the willingness and ability of counsel to commit to a time-consuming process; (ii) the ability of

counsel to work cooperatively with others; (iii) the professional experience of counsel in the litigation at issue; and (iv) whether counsel possesses sufficient resources to advance the litigation in a timely manner.  D.E. 1 at 4.

The criteria identified by the Court comports with the four mandatory factors outlined in Rule 23(g) for appointment of class counsel[2], which include :  (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  *See also Delphi,* 230 F.R.D. at 498 (E.D. Mich. 2005) (quoting Fed. R. Civ. P. 23(g)); Manual for Complex Litigation (Fourth), Federal Judicial Center, § 10.224 (2004) ("Manual").  The "Court may also consider other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Delphi,* 230 F.R.D. at 498*.*

As this Court recently noted, it is the court's responsibility to "conduct an independent review to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable."  *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2009 WL 1518428, at *2 (E.D. Mich. June 1, 2009) (*citing* Manual, § 10.22).

As set forth below, each of the criteria identified by the Court and Rule 23(g) support the appointment of Proposed Interim Class Counsel.  The three firms proposed as interim co-lead class counsel are among the most experienced antitrust firms in the country and have worked

---

[2] While neither Rule 23(g) nor the accompanying Advisory Committee notes explicitly state the standards to be applied in appointing interim class counsel, courts have held that the same factors that apply in appointing class counsel at the time of class certification apply in choosing interim class counsel.  *See In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498 (E.D. Mich. 2005) ("*Delphi*").

cooperatively together in litigating several complex class action cases.  The three firms believe

that the best interests of the putative classes will be served by the firms' joint appointment.

### A. Proposed Interim Class Counsel's Commitment To This Action Is Demonstrated By The Significant Time And Resources They Have Expended Identifying And Investigating The Claims To Date

#### 1. Labaton Sucharow

Led by Hollis Salzman and Bernard Persky, Labaton Sucharow has been at the forefront

of this litigation since well before the Department of Justice announced the guilty pleas.  Indeed,

Labaton Sucharow's investigation began in February 2010, immediately after various

competition authorities carried out raids of automotive parts manufacturing companies around

the world.  Because of its extensive investigation into possible anticompetitive conduct in the

automotive parts industry, Labaton Sucharow was able to file the first civil complaint in the

country alleging unlawful, anticompetitive conduct with respect to Wire Harnesses on October 5,

2011.  *See LaCava v. Furukawa, et al.*, 11-v-14399 (E.D. Mich.).  Notably, many of the

complaints that were filed after the *LaCava* complaint – whether filed by direct purchaser

plaintiffs or indirect purchaser plaintiffs – relied on the research and investigation reflected in

that initial complaint.

Labaton Sucharow has also gone to great lengths to continue to advance this litigation.

In particular, Labaton Sucharow's most notable contributions are set forth in more detail below.

##### a. Labaton Sucharow Successfully Briefed And Argued The MDL Motion

Labaton Sucharow played a key role in the proceedings before the MDL Panel.  Plaintiff

LaCava, represented by Labaton Sucharow, filed the first motion for centralization with the

MDL Panel.  In that motion, LaCava sought centralization and transfer to the Eastern District of

Michigan because, among other reasons, some alleged conspiratorial meetings occurred in the

district, the Department of Justice's criminal investigation into the conspiracy is being

prosecuted in the district and the United States automotive industry is centered in the district.  At

the MDL Panel hearing on January 26, 2012, Bernard Persky, Co-Chair of Labaton Sucharow's

Antitrust Practice Group, made the winning argument on behalf of Plaintiff LaCava that resulted

in every Related Action in the country being transferred to this Court.  The MDL Panel held that

centralization in the Eastern District of Michigan was warranted because, *inter alia*, the first-

filed action (the *LaCava* Action) was filed in the district.

### b.  Labaton Sucharow Successfully Briefed And Argued The Opposition To The Lear Defendants' Bankruptcy Motion

On November 17, 2011, the Lear Defendants – defendants in many of the Related

Actions – filed a motion with the bankruptcy court in the Southern District of New York seeking

dismissal of the Related Actions as to the Lear Defendants because the companies were in

bankruptcy for part of the proposed class period.  *See* Memorandum of Opinion, *In re Lear*

*Corporation, et al.,* 09-14326-alg (S.D.N.Y Feb. 10, 2012) at 1.[3]   Labaton Sucharow took the

lead in responding to the Lear Defendants' motion, including: (1) coordinating with plaintiffs'

counsel to organize legal research into the anticipated response to the Lear Defendants' motion;

(2) drafting and filing the response to the Lear Defendants' motion, a response to which 24 other

firms representing 14 End-Payor Plaintiffs and direct purchaser plaintiffs joined; and (3) arguing

the End-Payor Plaintiffs' position before the bankruptcy court.

Based on Labaton Sucharow's efforts, the bankruptcy court held, *inter alia*, that "the

Antitrust Plaintiffs are entitled to seek recovery from Lear on their alleged post-Effective Date

claims, and the question of Lear's liability under antitrust law for post-Effective Date conduct

should be determined in the antitrust litigation, not in this Court."  *Id.* at 3-4.  In the order largely

---

[3] The Bankruptcy Court's February 10, 2012 Memorandum of Opinion is attached hereto as Exhibit A.

denying Lear's request for relief, the bankruptcy court recognized Labaton Sucharow's leadership role and work product in responding to Lear's motion. *See id.* at 8, 17-18.

### c. Labaton Sucharow Has Already Served As The Point Person On A Variety Of Issues With Defendants

Counsel for various defendants have looked to Labaton Sucharow on a variety of issues. Indeed, Labaton Sucharow negotiated and drafted the stipulation establishing a schedule for defendants' responses to the complaints, which has been used as the model in nearly every End-Payor Plaintiff's case. Additionally, Labaton Sucharow served nearly all defendants named in Proposed Interim Class Counsel's complaints. This required obtaining international service on several entities through the Hague Convention, and several discussions with various defense counsel regarding the potential waiver of service for multiple entities, foreign and domestic.

### 2. Susman Godfrey

Susman Godfrey took an early and active role in investigating potential claims on behalf of the putative classes, communicating with fellow plaintiffs' counsel, and helping to organize an efficient mechanism for consolidation of related cases and the appointment of an efficient and effective case structure and leadership team. Before filing suit, Susman Godfrey engaged in significant legal research and consulted with experts and experienced practitioners before filing suit. After filing suit, Susman Godfrey facilitated communications between plaintiffs' and defendants' counsel and actively participated in efforts to steamline the process of consolidating the Related Cases to create an effective leadership structure. Based on its extensive pre- and post-filing efforts, Susman Godfrey stands committed to devoting the resources necessary to advance this litigation to its ultimate disposition. Susman Godfrey is likewise committed to working closely with Labaton Sucharow and CPM to ensure that this case continues to be organized and managed in as efficient method as possible.

3.      **CPM**

Beginning in early 2010, CPM has conducted a substantial investigation regarding the misconduct which gives rise to End-Payor Plaintiffs' and the putative classes' claims in this action, the nature of the industry, the type of impact and harm suffered by the putative classes, and losses suffered by End-Payor Plaintiffs and the putative classes brought about by the defendants' alleged conduct. The attorneys at CPM working on this case are experienced in the types of legal claims at issue. CPM has devoted substantial resources, both in time and money, to investigate the allegations in the complaint, and commits to devote all necessary resources going forward to achieve a successful resolution.

CPM's investigation into the cases has been substantially aided by two key aspects of its experience – antitrust claims involving Asian companies, and litigation involving the automotive industry. For over twenty years, CPM has been involved in high-profile litigation involving Suzuki, Isuzu, and Toyota. CPM is presently one of the co-lead counsel in the Toyota sudden unintended acceleration class action pending in the Central District of California. CPM has also been involved in numerous complex cases involving Asian conglomerates such as Mitsubishi, Hyundai, Toshiba, Samsung, and Hitachi. Through this experience, CPM has developed professional contacts with competition authorities and antitrust counsel throughout the world, and has used these contacts to enhance its understanding of the nature of the claims at issue in this case.

Through these experiences, CPM has been able to focus its research and analysis of the action to develop a sound understanding of the market and products at issue. CPM has extensive relationships with consultants, experts and translators who have been assisting it in analyzing the case. As a further result of its experience, CPM has relationships with many of the counsel for defendants, which has led to agreements on acceptance of service of process and schedules for

responding to the complaint.  CPM also chose to file its action in this Court, recognizing that this is the most appropriate forum for this litigation.

### B.    Proposed Interim Class Counsel's Ability to Work Cooperatively With Others Is Reflected By The Fact That Their Application Is Supported By Virtually All End-Payor Plaintiffs And Their Counsel

In selecting interim class counsel, courts commonly give weight to plaintiffs' counsel's "self-selection."  *See*, *e.g.*, *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717, (D. Del. Apr.18, 2006) ("The most common approach to the selection of class counsel is private ordering, in which plaintiffs' counsel agree on which of them should serve as class counsel.") (citation omitted); *Manual* § 21.272 ("By far the most common [method for selecting among competing applicants] is the so-called 'private ordering' approach:  The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests.").  This is particularly important in the instant case where Proposed Interim Class Counsel is supported by plaintiffs and counsel in virtually all of the 35 End-Payor Class Cases.

Here, the proposed leadership structure was formed following numerous communications over the past several months with counsel representing plaintiffs in all of the End-Payor Plaintiffs Cases.  Firms supporting this application include many of the nation's leading antitrust class action counsel.  In an effort to build consensus, these firms have decided to support the proposed structure rather than seek their own leadership appointment, although many supporting firms have themselves served as interim class counsel or on an executive committee in major nationwide antitrust litigations.  The fact that virtually all of  the plaintiffs and their counsel support the proposed structure is a testament to the confidence that these firms and plaintiffs have in Proposed Interim Class Counsel's leadership and ability to run a nationwide complex action.  The collective judgment of these well-regarded attorneys deserves serious consideration.

In taking the lead to organize this consensus, Proposed Interim Class Counsel has already demonstrated the ability to work cooperatively and effectively together with other firms.  Indeed, in supporting this application, plaintiffs and their counsel in the End-Payor Plaintiffs Cases have concluded that the proposed leadership team is a workable and efficient structure for this litigation.

### C. Proposed Interim Class Counsel Have Extensive Experience In Handling Antitrust And Other Complex Class Actions

#### 1. Labaton Sucharow

##### a. Labaton Sucharow Is A Recognized Leader in Antitrust and Other Complex Class Actions

Labaton Sucharow is a highly experienced law firm with a demonstrated record of success and leadership in managing, litigating and prevailing in complex class actions.  *See, e.g.*, *Middlesex County Retirement System v. Monster Worldwide, Inc.,* No. 07-cv-2237 (S.D.N.Y.) ("The Labaton Firm is very well known to the Courts for the excellence of its representation.").  Indeed, Labaton Sucharow consistently earns the highest ratings from legal ranking organizations, including *Chambers and Partners USA*, *Benchmark Plaintiff* and *The Legal 500*, and has been selected by *The National Law Journal* as one of the leading plaintiffs' class action firms in the country six years in a row.  Through trial and settlement, Labaton Sucharow has recovered more than $4.5 billion for the benefit of those injured on a class-wide basis by corporations that violated federal and state laws.  *See* Labaton Sucharow Resume, attached hereto as Exhibit B; *see also* www.labaton.com.

Labaton Sucharow's Antitrust Practice Group has achieved many outstanding results in antitrust class actions throughout the country, *see*, *e.g.*, *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-01775 (E.D.N.Y.) (obtained, pending final approval, nearly $500 million in partial settlements); *In re Puerto Rican Cabotage Antitrust Litig.*, C.A.  No. 08-cv-

001467 (D.P.R.) (obtained $52 million settlement, pending final approval of the Court, on behalf of businesses injured by an alleged conspiracy to fix the prices of ocean freight services between the continental United States and Puerto Rico); *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99-cv-00962 (S.D.N.Y.) (obtained settlements totaling $47 million on behalf of a class of equity options purchasers); *In re Marine Hose Antitrust Litig.*, No. 08-MDL-1888 (S.D. Fla.) (obtained settlements totaling nearly $32 million on behalf of a class of purchasers of marine hose). Given its accomplishments, courts regularly appoint Labaton Sucharow's Antitrust Practice Group to lead high-profile antitrust class actions.[4]

### b. Labaton Sucharow Has Demonstrated Unique Expertise In Both Indirect Purchaser And Automotive Parts Antitrust Class Actions

Labaton Sucharow has extensive experience successfully prosecuting both indirect purchaser antitrust class actions *and* antitrust class actions involving automotive parts. Mr. Persky has been at the forefront of antitrust litigation for more than 40 years, and was one of the pioneers of indirect purchaser class actions in federal court. For example, in *In re Warfarin Sodium Antitrust Litigation*, Mr. Persky helped establish the precedent that indirect purchasers have standing to sue for injunctive relief under federal antitrust laws. *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395 (3d Cir. 2000). Among the most significant indirect purchaser antitrust class actions in which Labaton Sucharow, led by Hollis Salzman and/or Bernard Persky, has successfully served as lead or co-lead class counsel are *In re Lorazepam & Clorazepate*

---

[4] Labaton Sucharow currently serves as a lead counsel or member of the executive committee in the following major antitrust class actions pending throughout the country: *In re Aftermarket Automotive Lighting Antitrust Litigation* (C.D. Cal.); *In re Air Cargo Shipping Services Antitrust Litigation* (E.D.N.Y.); *In re Aftermarket Filters Litigation* (N.D. Ill.); *In re Blood Reagents Antitrust Litigation* (E.D. Pa.); *Ace Marine Rigging & Supply, Inc. v. Virginia Harbor Services, Inc., et al.* (C.D. Cal.); *Board of Commissioners of the Port of New Orleans v. Virginia Harbor Services, Inc., et al.* (C.D. Cal.); *In re Chocolate Confectionary Antitrust Litigation* (M.D. Pa); *In re NCAA Student-Athlete Name & Likeness Licensing Litigation* (N.D. Cal.); *In re Food Service Equipment Hardware Antitrust Litigation* (N.D. Ga.*); In re Fresh and Processed Potatoes Antitrust Litigation* (D. Idaho); *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.); *In re Payment Card Antitrust Litigation* (E.D.N.Y.); *In re Photochromic Lens Antitrust Litigation* (M.D. Fla.); *In re Polyurethane Foam Antitrust Litigation* (N. D. Ohio); *In re Puerto Rican Cabotage Antitrust Litigation* (D.P.R.); and *In re Transpacific Airlines Antitrust Litigation* (N.D. Cal.).

*Antitrust Litig.*, No. MDL 1290 (D.D.C.) (obtained settlements totaling $135.4 million against Mylan Laboratories, Inc., for unlawful and anticompetitive price increases for generic versions of the anti-anxiety drugs); *In re Buspirone Antitrust Litig.*, MDL No. 1413 (S.D.N.Y.) (obtained $90 million to settle claims of monopolistic and anticompetitive conduct concerning BuSpar, an anti-anxiety drug); *In re TriCor Indirect Purchaser Antitrust Litig.*, No. 05-cv-00360 (D. Del.) (obtained $65.7 million settlement in antitrust action concerning the cholesterol drug TriCor and its generic equivalents); *In re Warfarin Sodium Antitrust Litig.*, No. 98-md-01232 (D. Del.) (obtained $44.5 million settlement with DuPont Pharmaceuticals Company on behalf of consumers, union health and welfare funds, and private insurers who purchased Coumadin, a blood-thinning drug).

Labaton Sucharow is currently serving as co-lead class counsel in *In re Aftermarket Automotive Lighting Antitrust Litigation* (C.D. Cal.) ("*Autolights*") and *In re Aftermarket Filters Litigation* (N.D. Ill.) ("*Filters*"), two nationwide antitrust class action cases that also allege a conspiracy among suppliers of automotive parts. As co-lead counsel in *Autolights*, a case alleging a conspiracy among suppliers of aftermarket lights for automobiles, Labaton Sucharow has already obtained settlements of $25.45 million from two defendants, one of which is the largest aftermarket automotive lighting parts supplier in the world. Likewise in *Filters*, a case alleging a conspiracy among manufacturers of aftermarket automotive filters, Labaton Sucharow has obtained settlements from several defendants, which are awaiting final approval by the court. In prosecuting these antitrust class actions against leading international manufacturers of auto parts, Labaton Sucharow has developed an intimate knowledge of the inner-workings and structure of the auto parts industry that will be of great benefit to the End-Payor Plaintiffs in the prosecution of this action.

2.     **Susman Godfrey**

Since the firm's founding in 1980, Susman Godfrey has served as lead counsel in hundreds of antitrust class actions and complex commercial disputes throughout the country. Susman Godfrey's practice is dedicated exclusively to litigating and trying lawsuits. The firm has represented clients in some of the largest and most complex cases ever litigated and has demonstrated that it has the ability and resources to handle those cases effectively and efficiently. Susman Godfrey's experience is not confined to a single practice area. Rather, the firm has successfully represented its clients in a wide range of complex commercial disputes, including antitrust and securities class actions. Susman Godfrey's unparalleled experience is more fully detailed in its firm resume attached as Exhibit C.

Susman Godfrey's substance and staying power are reflected in its wide recognition as one of the nation's leading firms for litigation, including by The American Lawyer in its first-ever "Litigation Boutique of the Year" competition, as a leading Commercial Litigation Law Firm in ACQ Finance Magazine, and its 1st place Ranking in Chambers USA. The firm's lawyers are consistently recognized as "Super Lawyers" and "Rising Stars" in the states where they practice. Susman Godfrey currently has nearly ninety lawyers, over 90% of whom served in highly sought-after judicial clerkships after law school. Seven of Susman Godfrey's attorneys have clerked at the highest level—for Justices of the United States' Supreme Court.

Among other nationwide class actions in which the firm is currently involved, Susman Godfrey is serving as either lead or co-lead counsel in the following nationwide class actions:

IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION,
2:08-md-02002, pending in the Eastern District of Pennsylvania;

IN RE: MUNICIPAL DERIVATIVES ANTITRUST LITIGATION,
MDL DOCKET NO. 1950, pending in the Southern District of New York;

IN RE: KOREAN AIR LINES CO., LTD. ANTITRUST LITIGATION, MDL DOCKET NO. 1981, pending in the Central District of California.

IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION, MDL DOCKET NO. 2262, pending in the Southern District of New York.

Terry Oxford and Marc Seltzer, two of Susman Godfrey's most senior lawyers, will oversee the firm's trial efforts in this litigation. Terry Oxford has thirty-five years of experience trying some of the largest antitrust and complex commercial cases in America. Mr. Oxford enjoys extensive antitrust experience and has been recognized as a top antitrust litigator by Chambers USA. Mr. Oxford joined Steve Susman on the *In re Corrugated Container Antitrust Litigation*, which was one of the largest antitrust cases of all time and resulted in antitrust settlements in favor of a plaintiff class that far exceeded historical recoveries. Since that time, he has tried dozens of high profile cases to verdict. In 2010, Mr. Oxford won a $226 million victory for his client, Dillard's, Inc., in a suit against i2 Technologies for fraud, breach of contract, and breach of warranty. The verdict was one of the ten largest in the United States in 2010.

Like Mr. Oxford, Marc Seltzer has practiced law for more than thirty-five years, litigating complex business law cases in state and federal courts throughout the United States. Mr. Seltzer has been appointed to serve as lead counsel for the plaintiffs in numerous antitrust and other class action cases. Mr. Seltzer teamed with Steve Susman in prosecuting the *In re Corrugated Container Antitrust Litigation* and the *In re Vitamin Antitrust Litigation*. The latter litigation was settled pursuant to agreements that made more than $1.05 billion available to the class. He has also represented parties in securities, intellectual property, and other complex commercial litigation.

Susman Godfrey partners Steven Sklaver and Warren Burns will round out the Susman Godfrey team. They likewise enjoy extensive antitrust experience. Mr. Sklaver, along with Mr.

Seltzer, represented the class in *White, et al. v. NCAA*, an antitrust class action alleging that the NCAA violated the federal antitrust laws by restricting amounts of athletic based financial aid. The NCAA settled and paid an additional $218 million for use by current student-athletes to cover the costs of attending college and paid $10 million to cover educational and professional development expenses for former student-athletes.  Mr. Burns represented the class in *In re Ready-Mixed Concrete Antitrust Litigation* litigated in the United States District Court for the Southern District of Indiana.  In that case, Defendants agreed to pay settlements that when combined exceeded the class's actual damages.  Mr. Burns, together with Mr. Seltzer, also represented the class in *In re Universal Service Fund Telephone Billing Practices Litigation*. The case was settled as to one defendant for benefits to the class totaling $25 million, and tried to a verdict as to the remaining defendants.  The jury returned a $16 million verdict in favor of plaintiffs on their breach of contract claim, which was affirmed by the Tenth Circuit.

Additional information regarding Susman Godfrey's attorneys is available at www.susmangodfrey.com.

### 3.    **CPM**

As reflected in its firm resume, attached hereto as Exhibit D, CPM has a forty-plus year history of litigating and trying complex cases in courts throughout the United States.  CPM has achieved many extraordinary accomplishments.  Indeed, just last week, CPM was a key part of the successful effort to hold the Army Corps of Engineers responsible for negligence which resulted in the devastation of New Orleans after Hurricane Katrina.  *In re: Katrina Canal Breaches Litigation*, No. 11-30808, 2012 U.S. App. LEXIS 4372 (5th Cir. March 2, 2012).  CPM lawyers were just recognized by *California Lawyer* magazine as among California's Lawyers of the Year for their efforts in securing the largest false claims recovery in the history of California arising out of a scheme to defraud Medical.  2012 Lawyer Attorneys of the Year, *California*

*Lawyer* (Mar. 2012), http://www.callawyer.com/clstory.cfm?eid=920905.  These represent just two of the most recent accomplishments of this firm.

CPM represents a wide spectrum of clients, including public institutional funds, hedge funds, employee pension trusts, corporate employees, labor unions, limited partnerships, corporations, not-for-profit corporations, and individuals.  CPM is and has been lead and co-lead counsel in many significant complex class actions, including antitrust matters, securities matters, shareholders derivative actions, *Qui Tam* cases, and consumer protection cases.  CPM has taken hundreds of cases to trial, and the attorneys in the firm are widely recognized for their trial experience.  CPM is experienced as lead counsel in direct purchaser antitrust class actions brought pursuant to the Sherman Act, and as lead counsel in indirect purchaser antitrust class actions brought pursuant to *Illinois Brick*-repealer statutes under the laws of various states. *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

*The National Law Journal* has reported that the CPM and its members are regarded by both plaintiff and defense attorneys as some of the foremost trial lawyers in the nation.  CPM has repeatedly been named to *The National Law Journal's* "Plaintiffs' Hot List," including the most recent list in 2011.  The *Daily Journal,* California's leading legal publication, has named CPM one of the top law firms in Northern California – the only plaintiffs' class action firm so named. Joseph Cotchett, founding partner, was lead trial lawyer for 23,000 plaintiffs in the Lincoln Savings Loan Association/American Continental Corp. litigation in 1990 involving Charles Keating, attorneys, banks and accountants.  The jury trial lasted four months and involved initially over 50 individual and entity defendants.

Mr. Cotchett is lead counsel and team supervisor of the team of attorneys at CPM.  He is a Fellow of the American College of Trial Lawyers; The International Academy of Trial

Lawyers; The International Society of Barristers and the American Board of Trial Advocates. He has served on the California State Bar Board of Governors, Public Citizen in Washington, D.C., and several State Commissions, including the Commission on Judicial Performance, and the State Judicial Council. He is a former Colonel in the Army Reserves in both JAG and Airborne Special Forces. As stated by *The National Law Journal*, Joseph W. Cotchett is considered by plaintiffs and defense attorneys alike to be one of the foremost trial lawyers in the country. He has been named one of the 100 most influential lawyers in the nation for the past 10 years. He was also named the 2011 Antitrust Lawyer of the Year by the Golden State Antitrust and Unfair Competition Law Institute. He is the author of several books, including <u>Federal Courtroom Evidence</u>, <u>California Courtroom Evidence</u> and others. He has tried over 100 cases to verdict in the last 42 years in jurisdictions across the country while settling hundreds more.

Partner Steven N. Williams has over fifteen years of experience litigating antitrust, securities, and consumer class actions. Mr. Williams served as lead or co-counsel in several nationwide class actions, including *Kopies Inc., et al. v. Eastman Kodak Co*., an antitrust class action in the Northern District of California; *In re: Static Random Access Memory Antitrust Litigation*, an antitrust class action in the Northern District of California; *In re: Flash Memory Antitrust Litigation*, an antitrust class action in the Northern District of California; *In re International Air Transportation Surcharge Antitrust Litigation,* an antitrust class action in the Northern District of California; *In re Transpacific Passenger Air Transportation Antitrust Litigation*, an antitrust class action currently pending in the Northern District of California; and *In re: Air Cargo Shipping Services Litigation*, an MDL antitrust class action pending in the Eastern District of New York. Mr. Williams has also played a leading role in natural gas antitrust litigation in state and federal courts in California. Mr. Williams has represented the

16

California State Teachers' Retirement System, helping recover substantial investment losses suffered by California's public school teachers, and has represented the former Chief Justice of California, Ronald M. George, as well as the California Judicial Council and counties and cities throughout California.  Mr. Williams is admitted to practice before the State and Federal Courts of California, New York, and New Jersey and the United States Supreme Court, and will be sworn in as a member of this Court prior to the hearing on March 16.

**D.     Proposed Interim Class Counsel Possess The Requisite Knowledge Of State And Federal Antitrust Law, as Well as Class Action Law**

As demonstrated above as well as in their firm resumes, attached hereto as Exhibits B through D, Proposed Interim Class Counsel respectfully submit that their knowledge of the law applicable to the claims and defenses here is most clearly reflected by their unparalleled experience in successfully prosecuting similar state and federal antitrust claims.

**E.     Proposed Interim Class Counsel Will Continue To Commit More Than Ample Resources To Representing The End-Payor Plaintiffs**

The proposed leadership team has the necessary resources and is committed to prosecuting this action in the best interests of the putative classes.  Proposed Interim Class Counsel have extensive staffs of attorneys and support personnel, including private investigators, accountants, and an economist.  In successfully prosecuting class actions for over 40 years, these firms routinely advance the costs of litigation and have demonstrated an ability and willingness to dedicate their substantial resources to vigorously prosecute the claims of putative class members.  As reflected by the extensive time and funds they have already committed to this case, Proposed Interim Class Counsel are prepared to continue to commit the resources necessary to the effective and vigorous prosecution of this case to a successful conclusion.

## II.   Appointing Proposed Interim Class Counsel As Interim Co-Lead Class Counsel For End-Payor Plaintiffs Is Appropriate

It is routine in nationwide antitrust class actions, such as the present litigation, for the court to appoint multiple class counsel.[5]  This is particularly true where, as here, the litigation involves complex antitrust claims.  The proposed structure will also help to ensure that sufficient resources are marshaled for the effective representation of the putative classes, one of the key criteria identified by the Court.  The proposed leadership structure here is ideally suited to the particular circumstances of this litigation, which will require a team of dedicated lawyers with ample resources to prosecute this litigation against the multiple well-financed defendants located in Asia, Europe and the United States.

## III.   Miller Law Should Be Appointed Liaison Class Counsel

The *Manual* outlines the duties of liaison counsel as being "[c]harged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel advising parties of developments, and otherwise assisting in the coordination of activities and positions."  *Manual* § 10.221.  As a local law firm with class action and antitrust experience, Miller Law is ideally suited to this role.

---

[5] *See, e.g. In re Photochromic Lens Antitrust Litig.*, MDL No. 2173 (M.D. Fla.)*; In re Florida Cement and Concrete Antitrust Litig.*, No. 09-cv-23187 (S.D. Fla.) (three co-lead counsel appointed); *In re Marine Hose Antitrust Litig.*, MDL No. 1888 (S.D. Fla.) (same); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) (same); *In re Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 1717 (D. Del.) (same); *In re Foundry Resins Antitrust Litig.*, MDL No. 1638 (N.D. Ohio) (same); *In re Urethane Antitrust Litig.*, MDL No. 1616 (D. Kan.) (same); *In re Parcel Tanker Antitrust Litig.*, MDL No. 1568 (D. Conn.) (same); *In re Pressure Sensitive Labelstock Antitrust Litig.*, MDL No. 1556 (M.D. Pa.) (same); *In re Carbon Black Antitrust Litig.*, MDL No. 1543 (D. Mass) (same); *In re Sulfuric Acid Antitrust Litig.*, MDL No. 1536 (N.D. Ill.) (same); *In re Polyester Staple Antitrust Litig.*, MDL No. 1516 (W.D.N.C.) (same); *In re DRAM Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) (same); *In re Hydrogen Peroxide Antitrust Litig.*, No. 05-666 (E.D. Pa) (same); *In re Aftermarket Automotive Lighting Antitrust Litig.*, MDL No. 2007 (C.D. Cal.) (four co-lead counsel appointed); *In re Air Cargo Shipping Services Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.) (same); and *In re Methyl Methacrylate (MMA) Antitrust Litig.*, MDL No. 1768 (E.D. Pa.) (same).  *See also., Haase v. Gunnallen Fin., Inc.*, 08-cv-010927 (E.D. Mich.) (appointing four firms as interim lead counsel in securities fraud class action); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, MDL No. 1725 (E.D. Mich.) (same).  Copies of the orders in the cases cited in this footnote are attached hereto as Exhibit E.

Miller Law has extensive experience litigating complex class actions throughout the United States and, particularly, in the Eastern District of Michigan. Miller Law has been appointed class counsel or has had substantial responsibility in numerous class action cases in the Eastern District of Michigan *continuously* since 1995. *See* Miller Law's Summary of Class Action Experience, which is attached as Exhibit F hereto. Miller Law also has extensive experience outside of Michigan. For example, in March 2009, Miller Law was appointed co-lead counsel in the AIG Securities Litigation in the Southern District of New York. The firm's managing shareholder, E. Powell Miller, was appointed in August 2009 as Co-Chair of the American Bar Association Subcommittee on MDL and Class Action Procedure.

Class action cases are rarely tried, but Miller Law believes it is important to also handle complex litigation cases in order to ensure that the firm has the sharpened trial skills in the event trial becomes necessary in a class case. Mr. Miller has extensive trial experience with 12 consecutive victories, including: a multi-million dollar bench trial award in July of 2009 wherein the trial court, in its Opinion, described Mr. Miller's trial work as "superb;" a jury verdict in the Eastern District of Michigan for more than $10 million; a verdict in the Middle District of Florida for more than $20 million; and several other multi-million dollar verdicts. His class action cases have resulted in more than $500 million in settlements, including two recent cases – *Wong v. T-Mobile, USA*, No. 05-cv-73922 (E.D. MI) and *Street v. Siemens*, No. 03-885 (Pennsylvania State Court) where the class received net cash recoveries of 100% of their damages.

One of the cases, *Siemens*, was featured in *Crain's Detroit Business* as a top result for 2005, likely because it was an example of a Michigan firm serving as a lead counsel in a case in Pennsylvania, resulting in a partial summary judgment for the Plaintiff Class, a $14.4 million

settlement, which was a 100% recovery for more than 1,000 employees in a national class action. In Philadelphia, judges are assigned to areas of practice and Judge Bernstein was the "class action judge" for a considerable period of time and presided over many class action cases. In approving the settlement in *Siemens*, Judge Bernstein commented that "If this case does not restore public confidence in class actions then nothing will."

In *Gasperoni v. Metabolife*, Miller Law was Co-Lead counsel and achieved a multi-million dollar settlement against a dietary supplement manufacturer peddling dangerous dietary supplements. The District Court sought a Report and Recommendation on the quality of the work performed from Richard D. Friedman, Professor of Law at the University of Michigan Law School. Professor Friedman stated that, "Messrs Miller and Baumkel are extremely able lawyers of high standing . . . . They are smart, energetic, and resourceful. They are a credit to the bar, and specifically to the plaintiffs' bar. I suspect that if more plaintiffs' lawyers were like them the public would have a far more positive view of lawyers than it has."

Mr. Miller was named one of the "Top 10" lawyers in Michigan in 2009, 2010 and 2011 as selected by Super Lawyers Magazine. In the last several years, nine Miller attorneys have been recognized by SuperLawyers *See* bios of Miller attorneys, attached hereto as Exhibit G.

## **<u>CONCLUSION</u>**

For the foregoing reasons, it is respectfully submitted that the Court should appoint Labaton Sucharow LLP, Susman Godfrey LLP and Cotchett, Pitre & McCarthy LLP as Interim Co-Lead Counsel and The Miller Law Firm, P.C. as Interim Liaison Counsel for the End-Payor Plaintiffs.

Dated:  March 8, 2012

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

By: _____/s/ E. Powell Miller_____
E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Email:  epm@millerlawpc.com

*Proposed Interim Liaison Counsel for End-
Payor Plaintiffs*

Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Email:  hsalzman@labaton.com
Email:  bpersky@labaton.com
Email:  wreiss@labaton.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
Email:  mseltzer@susmangodfrey.com
Email:  ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY LLP**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Fax:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Steven N. Williams
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
Email:  jcotchett@cpmlegal.com
Email:  swilliams@cpmlegal.com

*Proposed Interim Class Counsel for End-Payor Plaintiffs*

Paul F. Novak
**MILBERG LLP**
One Kennedy Square
777 Woodward Ave, Suite 890
Detroit, Michigan 48226
Telephone:  (313) 309-1760
Facsimile:  (313) 447-2038
Email:  pnovak@milberg.com

Sheldon L. Miller (P17785)
**THE LAW OFFICE OF SHELDON L. MILLER, PC**
31731 Northwestern Hwy., Suite 280W
Farmington Hills, Michigan 48334
Telephone:  (248) 538-3400
Facsimile:  (248) 538-5280
Email:  ccole@sheldonmiller.com

*Additional Counsel for End-Payor Plaintiffs*