MDL No. 2173

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

IN RE: PHOTOCHROMIC LENS
ANTITRUST LITIGATION        **MDL Case No. 8:10-MD-2173-T27EAJ**

_____/

## ORDER

**BEFORE THE COURT** is a Motion for Appointment of Interim Co-Lead Class Counsel and Liaison Counsel for the Putative Indirect Purchaser End-User Class (Dkt. 57). Upon consideration of the motion, the supporting memorandum of law (Dkt. 58[1]), and the attached resumes and biographies of counsel (Dkts. 58-1, 58-2, 58-3, 58-4, 58-5), the motion (Dkt. 57) is **GRANTED**.

As Interim Co-Lead Class Counsel for the putative Indirect Purchaser End-User Class, the Court appoints Ben Barnow of the law firm of Barnow and Associates, P.C.; Lance A. Harke of Harke Clasby & Bushman LLP; Susan G. Kupfer of Glancy Binkow & Goldberg LLP; and Michael M. Buchman of Pomerantz Haudek Grossman & Gross LLP. As Liaison Counsel for the putative class, the Court appoints Christopher C. Casper of James, Hoyer, Newcomer, Smiljanich & Yanchunis, P.A.

The Court designates the following attorneys ("designated counsel") as contacts for the arrangement of periodic status conferences:

(1) For the Indirect Purchaser Plaintiffs (as defined in the September 1, 2010 case

---

[1] Counsel are reminded of the requirements of Local Rule 3.01(a), which provides: "In a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request, all of which the movant shall include _in a single document_ not more than twenty-five (25) pages." (emphasis added).

management report [Dkt. 17]), Ben Barnow.

(2) For the Direct Purchaser Plaintiffs (as defined in the September 1, 2010 case management report), H. Laddie Montague, Jr.

(3) For Plaintiff Insight Equity AP X LP, d/b/a Vision-Ease Lens Worldwide, Michael Anthony Lindsay.

(4) For Defendant Transitions Optical, Inc., Chul Pak.

(5) For Defendants Essilor International, SA, and Essilor of America, Inc., Julie E. McEvoy.

**DONE AND ORDERED** on this _**25**_ day of October, 2010.

_____
**JAMES D. WHITTEMORE**
**United States District Judge**

**Copies Furnished To:**
Counsel of Record

-2-

No. 09-cv-23187

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown

**IN RE FLORIDA CEMENT AND**
**CONCRETE ANTITRUST LITIGATION**
_____/

## PRETRIAL ORDER NO. 1

WHEREAS, Plaintiffs, Action Ready Mix Concrete Inc., Superior Concrete, Inc., Daniel Morgan Construction, Inc., Shear Construction and Development, Inc., and Square D. Homes, Inc. have filed the first direct purchaser antitrust class action in this Court, alleging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, arising from the sale of Portland cement ("Cement") and ready-mix concrete ("Concrete") in Florida;

WHEREAS, the Court has entered its November 18, 2009 Order, which consolidated four subsequently filed cases (Case Nos. 1:09-cv-23283-CMA, 1:09-cv-23295-CMA, 1:09-cv-23434-CMA, 1:09-cv-23477-CMA) with this action, appointed Case No. 1:09-cv-23187-CMA the lead case (the "Consolidated Action"), and set a schedule for Plaintiffs' filing a Consolidated Amended Complaint, for Defendants' responses to that pleading and for subsequent briefing;

WHEREAS, additional plaintiffs have filed related direct purchaser class actions (Case Nos. 1:09-cv-23342-MGC, 1:09-cv-23513-MGC, 1:09-cv-82310-KAM, 1:09-cv-23492-CMA, 1:09-cv-23461-CMA, 4:09-cv-10106-CMA, and 1:09-cv-23517-CMA) that have been or are expected to be transferred to the Court (the "Additional Actions");

WHEREAS, the Additional Actions are related cases involving substantially similar allegations;

WHEREAS, further consolidation and coordination will promote the efficient disposition of the claims raised; and

WHEREAS, the Consolidated Action is appropriately considered for the Complex Track provided for in Local Rule 16.1;

Therefore, it is

**ORDERED AND ADJUDGED** as follows:

Plaintiffs' Motion for Entry of Pretrial Order No. 1 **[D.E. 32]** is **GRANTED**. The terms of the proposed order submitted with the Motion are incorporated with some modifications to account for limitations in the role of the Clerk of Court.

A.    <u>**Consolidation and Coordination of Additional Actions**</u>

1.    Upon their expected transfer to the Court, the Court will direct the Clerk to close the following cases:

        a.    1:09-cv-23342-MGC

        b.    1:09-cv-23513-MGC

        c.    1:09-cv-82310-KAM

2.    Upon their expected transfer to the Court, the Court will consolidate the cases in paragraphs 1.a.–1.c. of this Order with case number 1:09-cv-23187-CMA.

3.    The Clerk must **CLOSE** the following cases:

        a.    1:09-cv-23492-CMA

        b.    1:09-cv-23461-CMA

        c.    4:09-cv-10106-CMA

        d.    1:09-cv-23517-CMA

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown

4.      The cases in paragraphs 3.a.–3.d. of this Order are consolidated with case number 1:09-cv-23187-CMA.

5.      All pleadings and papers filed after this date for the cases in paragraphs 3.a.–3.d. of this Order must bear the following case number: **09-23187-CIV-ALTONAGA/Brown**.

6.      This Pretrial Order No. 1 (the "Order") shall apply as specified to the Consolidated Action.

7.      A Master File Docket number is hereby established for the Consolidated Action. The Master Docket number shall be 09-23187-CIV-ALTONAGA/Brown. One docket will be maintained for the Consolidated Action with all entries to be docketed under the lead case number 09-23187-CIV-ALTONAGA/Brown.

8.      The Clerk is directed to **FILE** this Order in the following cases:

  a.      1:09-cv-23187-CMA

  b.      1:09-cv-23492-CMA

  c.      1:09-cv-23461-CMA

  d.      4:09-cv-10106-CMA

  e.      1:09-cv-23283-CMA

  f.      1:09-cv-23295-CMA

  g.      1:09-cv-23434-CMA

  h.      1:09-cv-23477-CMA

  i.      1:09-cv-23517-CMA

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown

9.      Every document filed in the Consolidated Action shall bear the following caption:

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown**

**IN RE FLORIDA CEMENT AND
CONCRETE ANTITRUST LITIGATION**
_____/

10.      The Clerk is directed to **CHANGE** the style in the civil docket of the Consolidated Action from Action Ready-Mix Concrete, Inc., et al., to **In re Florida Cement and Concrete Antitrust Litigation**.

11.      If a case that arises out of the same subject matter as the Florida Cement and Concrete Antitrust Litigation is hereafter filed in this Court or is transferred from another court (together, a "Subsequent Action"), the Court will direct the Clerk to:

a.      file a copy of this Order in the separate file for such action;

b.      make the appropriate entry in the Master Docket for In re Florida Cement and Concrete Antitrust Litigation, Master Docket No. 09-23187.

12.      Each Subsequent Action shall be consolidated with the Florida Cement and Concrete Antitrust Litigation, and this Order shall apply to the Subsequent Action, unless a party objects to consolidation or to any provision of this Order.  Any such objection shall be made within ten (10) days after the date upon which this Order is filed in such action by filing an application for relief with the Court.

13.      The Court requests the assistance of counsel in calling to the attention of the Court the filing of any Subsequent Action that might properly be consolidated or coordinated as part of

4

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown

In re Florida Cement and Concrete Antitrust Litigation, Master Docket No. 09-23187-CIV-ALTONAGA/Brown.

**B.      Organization of Plaintiffs' Counsel**

14.      Pursuant to Fed. R. Civ. P. 23(g)(2), the Court shall appoint Interim Co-Lead Class Counsel who, upon appointment, shall be responsible for coordinating and organizing plaintiffs in the conduct of the Consolidated Action and, in particular, shall have the following responsibilities:

a.      To make, brief and argue motions, and to file papers and participate in proceedings initiated by other parties;

b.      To initiate, conduct and defend discovery proceedings;

c.      To act as spokesperson at pretrial conferences;

d.      To negotiate with defense counsel with respect to settlement and other matters;

e.      To call meetings of plaintiffs' counsel when appropriate;

f.      To make all work assignments to plaintiffs' counsel to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

g.      To conduct trial and post-trial proceedings;

h.      To consult with and employ experts;

i.      To request that the Court approve settlements, if any, and fee awards;

j.      To allocate fees;

k.      To perform such other duties and undertake such other responsibilities as they deem necessary or desirable in the prosecution of this litigation; and

l.      To coordinate and communicate with defendants' counsel with respect to

5

matters addressed in this paragraph or its subparts.

15.     The Court appoints the following firms as Plaintiffs' Interim Co-Lead Class Counsel

for the Florida Cement and Concrete Antitrust Litigation:

> **Labaton Sucharow LLP**
> 140 Broadway
> New York, NY 10005
> Telephone (212) 907-0700
>
> **Hausfeld LLP**
> 1700 K Street, NW, Suite 650140
> Washington, DC 20006
> Telephone (202) 540-7201
>
> **Boies Schiller & Flexner LLP**
> 5301 Wisconsin Ave., NW, Suite 800
> Washington, DC 20015
> Telephone (202) 237-2727

16.     The Court also appoints the following firm as Plaintiffs' Liaison Counsel for the

Florida Cement and Concrete Antitrust Litigation:

> **Podhurst Orseck, P.A.**
> City National Bank Building
> 25 West Flagler Street, Suite 800
> Miami, FL 33130
> Telephone (305) 358-2800

17.     No motion, request for discovery, or other pretrial proceedings shall be initiated or

filed by any plaintiff except through Plaintiffs' Interim Co-Lead Class Counsel.

18.     Plaintiffs' Interim Co-Lead Class Counsel shall be the contact between plaintiffs'

counsel and defendants' counsel as well as the spokespersons for plaintiffs' counsel and shall direct

and coordinate the activities of plaintiffs' counsel.  Plaintiffs' Interim Co-Lead Class Counsel are

designated as the contact persons from plaintiffs' counsel and as the attorneys of record with whom

MASTER DOCKET NO. 09-23187-CIV-ALTONAGA/Brown

the Court will be dealing throughout the course of this litigation. Plaintiffs' Liaison Counsel shall be responsible for receiving and, as appropriate, distributing to Interim Co-Lead Class Counsel Orders from the Court and documents from opposing counsel, and otherwise facilitating and expediting communications among Interim Co-Lead Class Counsel and the Court.

19.     All plaintiffs' counsel shall submit to Plaintiffs' Interim Co-Lead Class Counsel a record of the time expended to date in the form set forth by Plaintiffs' Interim Co-Lead Class Counsel on a monthly basis or on such other schedule as may be established, from time to time, by Plaintiffs' Interim Co-Lead Class Counsel.

20.     Defendants shall effect service of papers on plaintiffs by serving a copy on each Interim Co-Lead Class Counsel by electronic mail, overnight mail, telecopy or hand delivery. Plaintiffs' Interim Co-Lead Class Counsel shall effect service on plaintiffs by serving a copy on all other plaintiffs' counsel by electronic mail, overnight mail, telecopy or hand delivery. The Court's Master Service List shall govern in all proceedings.

21.     The terms of this Order, the consolidation and coordination ordered herein, and the appointment of Plaintiffs' Interim Co-Lead Class Counsel and Liaison Counsel shall not constitute a waiver by any party of any claims in or defenses to any of the actions.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of December, 2009.

_Cecilia M. Altonaga_

_____

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

7

MDL No. 1888

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SHIPYARD SUPPLY LLC, et al.,

     Plaintiffs,                    Case No. 07-CIV-21282
                                            GRAHAM/O'SULLIVAN

v.

BRIDGESTONE CORPORATION, et al.,

     Defendants.
_____/


EXPRO GULF LIMITED, et al.,

     Plaintiffs,                    Case No. 07-CIV-21464
                                          GRAHAM/O'SULLIVAN

v.

BRIDGESTONE CORPORATION, et al.,

     Defendants.
_____/


SHIPYARD SUPPLY LLC, et al.,

     Plaintiffs,                    Case No. 07-CIV-21592
                                          GRAHAM/O'SULLIVAN

v.

BRYAN ALLISON, et al.,

     Defendants.
_____/

BAYSIDE RUBBER & PRODUCTS,
INC., et al.,

     Plaintiffs,

v.

TRELLEBORG INDUSTRIE, S.A., et al.,

     Defendants.

_____/

Case No. 07-CIV-21613
GRAHAM/O'SULLIVAN


BAYSIDE RUBBER & PRODUCTS,
INC., et al.,

     Plaintiffs,

v.

CHRISTIAN CALECA, et al.,

     Defendants.

_____/

Case No. 07-CIV-21784
GRAHAM/O'SULLIVAN


BAYSIDE RUBBER & PRODUCTS,
INC., et al.,

     Plaintiffs,

v.

Val M. Northcutt,

     Defendant.

_____/

Case No. 07-CIV-22991
GRAHAM/O'SULLIVAN

## PRETRIAL ORDER NO. 1

WHEREAS, plaintiffs have filed six actions (the "Actions") in this Court for alleged violations of the antitrust laws involving Marine Hose[1] (the "Marine Hose Antitrust Litigation") claiming violations of Section One of the Sherman Act, 15 U.S.C. § 1; and

The Actions are related cases involving common questions of law and fact; and

Consolidation and coordination of the Actions would promote the efficient disposition of these claims; and

The Judicial Panel on Multidistrict Litigation, has ordered that the Actions be transferred to this Court for pretrial proceedings.[2]

THEREFORE, THE COURT ORDERS as follows:

## A.    Coordination and Consolidation of Related Actions

1.    The above-captioned actions are consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a) and 28 U.S.C § 1407.  This Pretrial Order No. 1 (the "Order"), however, does not constitute a determination that these actions shall be consolidated for trial.

---

[1] "Marine Hose" is defined in the Complaint as a flexible rubber hose used to, among other things, transport oil between tankers, terminals, and buoys.

[2] The case of <u>Weeks Marine, Inc. V. Bridgestone Corp., et al.</u>, 07-CIV-06811-AKH, is pending a transfer to this district from the Southern District of New York.

3

2.     This Order shall apply as specified to each case that relates to the Marine Hose Antitrust Litigation that is subsequently filed in this Court or transferred to this Court and is coordinated with the Actions.

3.     A Master File Docket number is hereby established for this proceeding.   The Master Docket number shall be No. 08-MDL-1888.   One docket will be maintained for these actions with all entries to be docketed under the Master Docket number 08-MDL-1888. If a document pertains to only one or some cases, it will be docketed on the Master Docket with a notation in the docket text as to the case number(s) to which it pertains.

4.     An original of this Order shall be filed by the Clerk in the Master File and in the files for each of the actions and every action subsequently coordinated herein.

5.     The Clerk shall mail a copy of this Order to all counsel of record in the Actions. **Accordingly, within three (3) days from the date of this Order, all parties shall file a notice of appearance in the Master Docket No. 08-MDL-1888.**

6.     Every pleading filed in the Marine Hose Antitrust Litigation shall bear the following caption:

4

Case 1:08-md-01888-DLG Document No. 24 Entered on FLSD Docket 03/08/2008 Page 5 of 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MASTER DOCKET NO. 08-MDL-1888-GRAHAM/O'SULLIVAN

---

IN RE MARINE HOSE ANTITRUST
LITIGATION

---

THIS DOCUMENT RELATES TO:

---

7.    When a pleading is intended to apply to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after or below the words "This Document Relates To" in the caption set out above.  When a pleading is intended to only apply to particular actions, the separate caption and docket number for each individual action to which the pleading is intended to apply shall appear immediately after or below the words "This Document Relates To" in the caption described above.

8.    When a pleading is filed and the caption, pursuant to the foregoing, shows that it applies to "All Actions," the Clerk shall file such pleading in the Master File and note such filing in the Master Docket.  No further copies need be filed or docket entries made.

9.    When a pleading is filed and the caption, pursuant to the foregoing, shows that it is applicable to fewer than all of the

5

actions coordinated in the Marine Hose Antitrust Litigation, the Clerk shall file such pleadings in the Master File <u>and</u> shall also note such filing in the docket of the specified individual case(s) to which it relates.

10. This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be coordinated as part of <u>In Re Marine Hose Antitrust Litigation</u>, Master Docket No. 08-MDL-1888. In connection therewith, the Court directs that the parties seek to promptly effectuate the transfer of <u>Weeks Marine, Inc. v. Bridgestone Corporation, et al.</u>, Case No. 07-CIV-06811-AKH, pending in the United States District Court for the Southern District of New York.

11. If a case that arises out of the same subject matter of the Marine Hose Antitrust Litigation is hereinafter filed in this Court or transferred from another court, the Clerk of this Court shall:

(a) file a copy of this Order in the separate file for such action;

(b) mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed or transferred case; and

6

(c)     make the appropriate entry in the Master Docket for <u>In Re</u>
        <u>Marine Hose Antitrust Litigation</u>, Master Docket No. 08-
        MDL-1888.

12.     Each case that arises out of or relates to the subject
matter of the Marine Hose Antitrust Litigation that has been or is
subsequently filed in or transferred to this Court shall be
coordinated with the Marine Hose Antitrust Litigation and this
Order shall apply thereto, unless a party objects to coordination
or any provision of this Order.  Any objection to this Order shall
be made within ten (10) days after the date upon which a copy of
this Order is served on counsel for any party by filing an
application for relief with the Court.  Nothing in the foregoing
shall be construed as a waiver of the defendants' right to object
to coordination of any previously filed or transferred related
action.

**B.    Organization of Plaintiffs' Counsel**

13.     Pursuant to Federal Rule of Civil Procedure 23(g)(2)(A),
the Court shall appoint interim Plaintiffs' Co-Lead Counsel who,
upon appointment, shall be responsible for coordinating and
organizing plaintiffs in the conduct of this litigation and, in
particular, shall have the following responsibilities:

(a)  To brief and argue motions and file opposing briefs in proceedings initiated by other parties;

(b)  To initiate and conduct discovery proceedings;

(c)  To act as spokesperson at pretrial conferences;

(d)  To negotiate with defense counsel with respect to settlement and other matters;

(e)  To call meetings of plaintiffs' counsel when appropriate;

(f)  To make all work assignments to plaintiffs' counsel to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

(g)  To conduct trial and post-trial proceedings;

(h)  To consult with and employ experts;

(i)  To coordinate the filing of any joint fee petition by plaintiffs' counsel;

(j)  To perform such other duties and undertake such other responsibilities as they deem necessary or desirable; and

(k)  To coordinate and communicate with defendants' counsel with respect to matters addressed in this paragraph.

14. The Court appoints the following firms as interim Plaintiffs' Co-Lead Counsel for the Marine Hose Antitrust Litigation:

> Preti, Flaherty, Beliveau & Pachios, LLP
> One City Center, P. O. Box 9546
> Portland, ME 04112-9546
> Telephone: (207) 791-3000
>
> Garwin, Gerstain & Fisher, LLP
> 1501 Broadway, Suite 1416
> New York, NY 10036
> Telephone (212) 398-0055
>
> Labaton Sucharow, LLP
> 200 Park Avenue
> New York, NY 10017
> Telephone (212) 907-0700.

15. No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiff except through Plaintiffs' Co-Lead Counsel.

16. Plaintiffs' Co-Lead Counsel shall be the contact between plaintiffs' counsel and defendants' counsel as well as the spokespersons for plaintiffs' counsel and shall direct and coordinate the activities of plaintiffs' counsel and shall also be responsible for communicating with the Court. Plaintiffs' Co-Lead Counsel are designated as the contact persons from plaintiffs' counsel and as the attorneys of record with whom the Court will be dealing throughout the course of this litigation.

9

17. Defendants shall effect service of papers on plaintiffs by serving a copy of same on each Co-Lead Counsel by electronic mail, overnight mail, telecopy or hand delivery. Plaintiffs' Co-Lead Counsel shall effect service on plaintiffs by serving a copy of same on all other plaintiffs' counsel by electronic mail, overnight mail, telecopy or hand delivery. As to any action in which a defendant has received service of the Complaint pursuant to the Federal Rules of Civil Procedure, plaintiffs shall effect service of papers on such defendants by serving a copy of same on defendants' counsel by electronic mail, overnight mail, telecopy or hand delivery.

18. While the Court concurs with the proposed Co-Lead counsel for Plaintiffs and hereby appoints three (3) firms, the parties should be cognizant that attorneys' fee issues will be closely scrutinized for duplicative efforts and that the three firm arrangement may have a substantial impact on fees awarded.

19. All plaintiffs' counsel shall submit to Plaintiffs' Co-Lead Counsel a record of the time expended to date in the form set forth by Plaintiffs' Co-Lead Counsel on a monthly basis or on such other schedule as may be established, from time to time, by Plaintiffs' Co-Lead Counsel. In connection therewith, counsel who anticipate seeking an award of attorney's fees and reimbursement of expenditures from the Court shall comply with the directives

10

contained in The Manual for Complex Litigation, Fourth § 14.213 regarding maintenance of contemporaneous time records demonstrating the name of the attorney, the time spent on each discrete activity and the nature of the work performed.

20. The terms of this Order shall not have the effect of making any person, firm or corporation a party to any action in which he, she or it has not been named, served or added as such in accordance with the Federal Rules of Civil Procedure.

21. The terms of this Order, the coordination ordered herein, and the appointment of Plaintiffs' Co-Lead Counsel shall not constitute a waiver by any party of any claims in or defenses to any of the actions.

## C.  **Additional Matters**

22. **Consolidated Amended Complaint and Answer**. In accordance with the Status Conference held on February 27, 2008, Plaintiffs shall file and serve a single Consolidated Amended Complaint by no later than **March 24, 2008**. Defendants shall thereafter answer or otherwise respond to the Consolidated Amended Complaint by no later than **April 23, 2008**.

23. **Submission of Proposed Schedule**. The Court intends to promptly set a schedule by which all discovery and other pretrial proceedings in these Actions (including discovery with respect to the individual defendants) will be concluded and the cases ready

for trial and/or disposition by motion. Accordingly, the parties shall meet and confer with a view to reach an agreement on a comprehensive schedule to accomplish this goal. In their discussions, the parties shall consider, without limitation, the following:

(a) the appointment of a Special Master pursuant to Federal Rule of Civil Procedure 53, including the recommendation of candidates and consideration of the Special Master's authority, e.g., final disposition of discovery motions and oversight of mediation;

(b) a proposed motion schedule regarding proceedings under Federal Rule of Civil Procedure 23;

(c) a proposed pretrial schedule including, without limitation, providing dates for the following: (i) pretrial conference and calendar call; (ii) deadline for joinder of additional parties; (iii) deadlines to exchange expert witness and rebuttal expert witness information pursuant to Local Rule 16.1 (K); (iv) deadlines for completion of non-expert and expert discovery; (v) deadline for pretrial motions and corresponding memoranda; (vi) deadline for motions in limine; (vii) deadline for Joint Pretrial Stipulations

and (viii) deadline for Jury Instructions, verdict forms and proposed voir dire questions;

(d)   the coordination and procedures for discovery, including, but not limited to (i) the preservation of documents and materials, (ii) the necessity and/or creation of a document depository; and (iii) the necessity of orders relating to confidentiality;

(e)   the appointment of liason counsel for the defendants to, among other things, coordinate communications between the Court and the defendants; and

(f)   any other matters necessary for the expeditious adjudication of these Actions.

24.   The parties shall submit their agreed upon schedule or, if failing agreement, their respective plans, by no later than **April 30, 2008**. As expressed during the Status Conference, the Court is inclined to schedule this matter to be disposed of within twelve months from the filing of the Consolidated Amended Complaint. In the event that any of the parties seek a longer period of time, the submission shall contain a detailed justification for any such extended period.

**DONE AND ORDERED** in Chambers in Miami, Florida this ___ day of March, 2008.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:  All Counsel of Record

14

MDL No. 1720

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
IN RE PAYMENT CARD                                          **MEMORANDUM AND ORDER**
INTERCHANGE FEE AND                                         MDL 05-1720 (JG) (JO)
MERCHANT DISCOUNT
ANTITRUST LITIGATION

This document refers to: ALL ACTIONS
--------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

On February 23, 2006, I heard oral argument on the pending cross motions to appoint

lead plaintiffs' counsel in this multi-district litigation.  *See* DE 27 (Motion of Certain Class

Plaintiffs and Certain Non-Class Plaintiffs to Consolidate, Coordinate, Appoint Lead and Liaison

Counsel and Other Relief); DE 99 (Payless Shoesource Group's Cross Motion to Consolidate

Cases, Appoint Lead and Liaison Counsel and Other Relief);  *see also* Order dated December 29,

2005 (referring cross-motion to me for decision).  The "Certain Class Plaintiffs" group proposes

a co-leadership structure comprised of three law firms:  Robins, Kaplan, Miller & Ciresi L.L.P.

("Robins Kaplan"); Berger & Montague, P.C.; and Lerach, Coughlin, Stoia, Geller, Rudman &

Robbins, L.L.P. (the "Robins Kaplan group").  The "Payless Shoesource Group" proposes the

appointment of the law firm of Milberg, Weiss, Bershad & Shuman L.L.P. ("Milberg Weiss") as

sole lead counsel, but is amenable, as an alternative, to a compromise under which it would serve

as co-lead counsel together with the three members of the Robins Kaplan group.  The Certain

Class Plaintiffs group opposes such a compromise.  Having considered all of the written and oral

submissions on the matter, for the reasons set forth below I now grant the Certain Class Plaintiffs

group's motion, deny the Payless Shoesource Group's motion, reject the alternative proposal, and

appoint the three members of the Robins Kaplan group as co-lead plaintiffs' counsel.

I.      Background

On June 22, 2005, Robins Kaplan, acting as counsel for Photos, Etc. Corporation, filed the first of some forty class action lawsuits brought to date on behalf of a class of merchants against the defendant credit card networks and certain of their member banks.  In essence, the plaintiffs allege that the defendants have fixed transaction costs known as "interchange fees" at supracompetitive levels in violation of Section One of the Sherman Act.  *See* DE 27 (Certain Class Plaintiffs' Memorandum of Law) at 1-2.  By order of the Judicial Panel on Multidistrict Litigation dated October 19, 2005, that action and thirteen other related class action law suits brought in four separate districts were consolidated in the current litigation for pretrial purposes, and many more have since followed.  *See* DE 2, DE 29, DE 94.

By notice of motion dated November 22, 2005, the Certain Class Plaintiffs group, representing plaintiffs in approximately 34 of the 40 actions that were then pending, filed a motion to appoint the Robins Kaplan group as co-lead plaintiffs' counsel.  The Payless Shoesource group filed its cross-motion in support of the appointment of Milberg Weiss on January 3, 2006.  After the Honorable John Gleeson, United States District Judge, referred the matter to me for decision, I solicited proposals from all interested parties as to alternative leadership proposals, specifically including a co-lead structure that would include the three firms in the Robins Kaplan group and the Milberg Weiss firm.  *See* DE 189.

II.     Discussion

The appointment of lead counsel is recognized as a useful and helpful way to avoid duplication of effort and a means to streamline what could otherwise be inefficient and unruly proceedings.  *See Farber v. Riker-Maxson Corp.,* 442 F.2d 457, 459 (2d. Cir. 1971); *MacAlister*

2

*v. Guterma,* 263 F.2d 65, 69 (2d Cir. 1958). The *Manual for Complex Litigation* ("*Manual*")
counsels that in making such an appointment, I should consider such factors as the qualification
and competence of counsel, the ability of counsel to fairly represent diverse interests, and "the
attorneys' ability to command the respect of their colleagues and work cooperatively with
opposing counsel and the court." *Manual* § 10.224. These factors are similar to those considered
in appointing class counsel pursuant to Rule 23(g)(1)(C) of the Federal Rules of Civil Procedure,
although I recognize that the considerations are mandatory in the latter context and only
precatory in the former.

 As a threshold matter, I am confident that both leadership candidates are eminently
qualified and unquestionably competent to serve the plaintiffs well. Each brings to the table an
array of experienced attorneys who have achieved successful results for class clients in antitrust
litigation and earned the respect of the bench and bar. In short, the plaintiffs do not lack adequate
leaders. Choosing among those who would fill that role is therefore a difficult task, particularly
at this early stage of the proceedings when any choice can be no better than an informed guess
about what will best serve the plaintiffs' collective interest.

 Nevertheless, I conclude that the Robins Kaplan group is in the best position to represent
the interests of a large and diverse group of plaintiffs. The members of the group have already
demonstrated their ability to work cooperatively with each other, with the court, and, most
importantly, with the numerous non-lead counsel representing plaintiffs with very significant
interests in this litigation. They have the support of a larger and more diverse group of clients,
those clients collectively advance a broader array of the legal theories at issue in this litigation,
and they have ample resources to conduct the litigation.

Those advantages outweigh, in my view, the more particularized advantages that Milberg Weiss claims on behalf of the Payless Shoesource group.  The fact that Milberg Weiss has its main office in New York has little if any weight:  I assume that counsel in other cities can and will be equally responsive to the needs of the court and the plaintiffs, and in light of the enormous stakes potentially at issue in the litigation I cannot imagine that the additional travel burdens to be borne by other attorneys will have any significant impact on the plaintiffs' interests. Likewise, the proposition – which I assume to be true despite some disagreement on the matter – that Payless Shoesource may have a far greater individual damages claim than any other single plaintiff says nothing about who can best serve the interests of all plaintiffs.

In choosing between the two proposed leaders, a related argument made at the hearing on February 26, 2006, weighs heavily in favor of the Robins Kaplan group.  Counsel for the Payless Shoesource group argued, in essence, that Payless Shoesource is comfortable with Milberg Weiss and will readily make its considerable in-house resources available to counsel if that firm leads the litigation effort, but might reconsider if forced to accept the leadership of other attorneys. The argument seems counterintuitive at best and counterproductive at worst.  I would expect that, regardless of the outcome of this motion, Payless Shoesource will retain a strong interest in seeing this litigation to a result that favors its interests and will want to assist any lawyer working toward that goal rather than run the risk of withholding such assistance to the harm of all plaintiffs.  If am mistaken in that regard, it is either because Payless Shoesource would act differently from other plaintiffs, or because I have made a more basic error about the way any disappointed plaintiff would likely respond to a ruling on the instant matter.  If the former is true, neither Payless Shoesource nor its counsel would appear to be in the best position to protect the

4

overall interests of all plaintiffs.  If the latter is true, then the far more numerous plaintiffs in the

Certain Class Plaintiffs group may be likewise prone to picking up their ball and going home if

denied their choice of lead counsel, a result that seems likely to cause more harm to putative

class members' overall interests than a similar reaction by the members of the Payless Shoesource

group who are fewer in number.

Accordingly, if the choice were solely between the Robins Kaplan group and Milberg

Weiss, I would choose the former.  But those are not the only options.  A more difficult decision

is whether the plaintiffs would be better off by requiring the two potential leaders to work

together.  The idea has at least surface appeal, as it would inevitably provides the leadership

group with additional resources and expand the roster of experienced, talented attorneys serving

the plaintiffs.  But in this instance more is not necessarily better, and I conclude that melding the

two leadership proposals would not advance, and might instead prejudice, the plaintiffs' overall

interests.

Milberg Weiss has itself identified one area of concern by arguing that a co-lead structure

is inherently unwieldy, or at least would be so in the circumstances of this case.  *See* DE 99

(Payless Shoesource Group's Memorandum of Law) at 4.   While I do not agree that placing

leadership responsibility in the hands of a group is inevitably worse than appointing a sole leader,

the risk is plainly greater where, as here, the group's composition is the product of compulsion

rather than choice.  The latter problem can only be exacerbated where, as is also the case here,

the members of the group forced to work together have previously been at odds on a number of

issues.

My concern in that regard was heightened by an argument that Milberg Weiss advanced at the hearing on February 23, 2006. Counsel asserted that, in his experience in like matters, the attorneys who are *not* part of the leadership team in such complex litigation are often relegated to the sidelines by those in charge, and can do little more than observe the proceedings by periodically reviewing the docket. I have no reason to question the veracity of that assertion, but it is entirely inconsistent with the duties and the authority I intend to confer in appointing lead counsel in this litigation. I anticipate that the Robins Kaplan group will solicit and consider the views of others, particularly the Milberg Weiss firm, in making litigation decisions on behalf of the plaintiffs. To the extent Milberg Weiss might anticipate acting in the manner described by counsel if given the opportunity to lead the plaintiffs' litigation team, it would frustrate rather than advance my intention in appointing lead counsel.

Moreover, if Milberg Weiss is correct in anticipating how others will act in the lead counsel role, notwithstanding my explicit instruction to the contrary, I believe it will be in a better position to remedy the problem as an outsider to the leadership team rather than as a minority member of it. As Milberg Weiss pointed out in its briefing, the firm has often been successful in representing its clients in multi-district and class action litigation even where it has not been lead counsel. *See* DE 126 (Payless Shoesource Group's Reply Memorandum of Law) at 5. I therefore anticipate that it will be particularly vigilant and effective in fighting for the interests of the Payless Shoesource group and like-minded plaintiffs and will alert me and Judge Gleeson to serious disagreements with lead counsel when appropriate. As the minority member of an ad hoc leadership group created by judicial fiat, the disagreements that Milberg Weiss might have with the three members of the Robins Kaplan group could more easily be veiled by

the apparent unity of a single submission ostensibly made on behalf of the entire leadership group. But if Milberg Weiss is not part of the lead counsel group, such disagreements will more likely surface and get the judicial attention they require to protect the interests of the plaintiffs whose interests the lead counsel appointees must serve.

Finally, my decision to choose one of the two competing proposals rather than to meld them together does not rely in any way on an additional argument raised by Robins Kaplan and some of its supporters. The latter argument is predicated on the assertion that a number of law firms that are themselves qualified to lead the litigation for the plaintiffs have voluntarily given up a claim to participation in the lead counsel group in order to present a unified – and therefore more likely successful – leadership proposal. The conclusion I am asked to draw from that premise is that it would be unfair to make such altruistic law firms take a back seat to another firm that proposed itself as sole lead counsel rather than work cooperatively with others as they did. The fairness argument has some appeal, although I hasten to add that in saying so I do not mean to suggest that Milberg Weiss has acted inappropriately by striking out on its own. Appealing or not, however, the fairness argument carries no weight in my analysis because my task in deciding these motions is to protect the interests of the plaintiffs, not their lawyers. A result that best serves the plaintiffs must trump any alternative that may in some sense be deemed fairer to some of the lawyers who would represent them.

III.  Conclusion

For the reasons forth above, I grant the motion of the Certain Class Plaintiffs group, deny the cross-motion of the Payless Shoesource group, and appoint as plaintiffs' co-lead counsel the

following three law firms:  Robins, Kaplan, Miller & Ciresi L.L.P.; Berger & Montague, P.C.;

and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.

**SO ORDERED.**

Dated: Central Islip, New York
       February 24, 2006

/s/ James Orenstein___
JAMES ORENSTEIN
U.S. Magistrate Judge

MDL No. 1717

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          :
                                :
INTEL CORP. MICROPROCESSOR      : MDL Docket No. 05-1717-JJF
ANTITRUST LITIGATION            :

**MEMORANDUM ORDER**

Pending before the Court are two competing Motions for
appointment as interim class counsel and liaison counsel and for
consolidation of the seventy-two pending purchaser antitrust
cases against Intel Corporation ("Intel").  One group, calling
itself the CFHS Firms, requests the Court to appoint four firms
as co-interim class counsel:  Cohen, Milstein, Hausfeld & Toll,
P.L.L.C.; The Furth Firm LLP; Hagens Berman Sobol & Shapiro LLP;
and Saveri & Saveri, Inc..  The CFHS Firms also request that the
Court appoint Prickett, Jones & Elliott as interim liaison
counsel.  The other group, calling itself the National Plaintiffs
Group, is comprised of the named plaintiffs in eight of the
pending purchaser antitrust cases.  The National Plaintiffs Group
requests the Court to appoint Wolf Haldenstein Adler Freeman &
Herz LLP ("Wolf Haldenstein") as interim class counsel and Biggs
and Battaglia as interim liaison counsel.  For the reasons
discussed, the Court will appoint the CFHS Firms as interim class
counsel and Prickett, Jones & Elliott as interim liaison counsel.

Under Federal Rule of Civil Procedure 23, a court "may
designate interim counsel to act on behalf of the putative class
before determining whether to certify the action as a class

action."  Fed. R. Civ. P. 23(g)(2)(A).  "If more than one
adequate applicant seeks appointment as class counsel, the court
must appoint the applicant best able to represent the interests
of the class."  Fed. R. Civ. P. 23(g)(2)(C).  In deciding whom to
appoint as class counsel, the Court must consider:  the work
counsel has done in identifying or investigating potential claims
in the action, counsel's experience in handling class actions,
other complex litigation, and claims of the type asserted in the
action, counsel's knowledge of the applicable law, and the
resources counsel will commit to representing the class.  Fed. R.
Civ. P. 23(g)(1)(C)(i).  In addition, the Court may consider "any
other matter pertinent to counsel's ability to fairly and
adequately represent the interests of the class."  Fed. R. Civ.
P. 23(g)(1)(C)(ii).  The most common approach to the selection of
class counsel is private ordering, in which plaintiffs' counsel
agree on which of them should serve as class counsel.  Manual for
Complex Litigation (Fourth), § 21.272 (2004).  This is also the
approach recommended by the Third Circuit Task Force on the
Selection of Class Counsel.  See Final Report of the Third
Circuit Task Force on the Selection of Class Counsel, 18
(2002)(available at http://www.ca3.uscourt.gov/attorney_
information_and_forms.htm.) (hereinafter "Task Force Report").

     After reviewing the submissions of the National Plaintiffs
Group and the CFHS Firms, the Court is satisfied that both

proposed interim class counsel have sufficient expertise and experience to effectively represent the interests of the putative class. The Court selects the CFHS Firms for two reasons. First, the CFHS Firms are closer to being the choice of the private ordering process favored by most courts and the Third Circuit Task Force. There are currently 72 purchaser antitrust cases against Intel pending before this Court, with 111 named Plaintiffs. The CFHS Firms has the support of 73 of those Plaintiffs in 59 cases, while the National Plaintiffs Group is comprised of 32 Plaintiffs in 8 cases. Second, the CFHS Firms appear to be capable of drawing upon a greater pool of resources than the National Plaintiffs Group. This could prove to be especially beneficial in a large and complex case such as this. See Task Force Report at 96 (noting that courts "should be cognizant of the possibility that the class could benefit from the combined resources and expertise of a number of counsel, especially in a complex case where the defendants are represented by a number of large and highly qualified law firms").

The choice of four firms as co-interim class counsel raises the danger that services will be duplicative and fees unnecessarily increased. To alleviate that danger, the Court notes that it will not approve any award of fees or expenses that reflects duplication, inefficiency, or the costs of coordinating the efforts of the firms involved in the representation.

Moreover, the Court reserves the right to alter the class counsel structure if it discovers substantial duplication of effort or finds that the litigation is being unduly delayed due to the presence of multiple counsel.  With those warnings in mind, the Court concludes that the benefits of multiple class counsel in this case outweigh the dangers of inefficient representation and increased costs.

The Court's appointment of the CFHS Firms as interim class counsel does not indicate approval of the in camera fee proposal submitted by the CFHS Firms in response to the Court's Order dated January 10, 2006 (D.I. 18).  In making its selection of interim class counsel, the Court gave minimal consideration to the fee proposals submitted by the National Plaintiffs Group and the CFHS Firms.  The Court intends to award fees based on a percentage of any recovery to be determined at the close of the case.  The Court will discuss the process for awarding fees in more detail at the initial conference in this matter.

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.  Pursuant to Federal Rule of Civil Procedure 42, and consistent with the November 8, 2005 Order of the Judicial Panel on Multidistrict Litigation (D.I. 1), all purchaser antitrust actions pending in this Court against Intel Corporation and all related actions later filed in or transferred to this Court are

consolidated for pretrial purposes.  All such actions now pending in this Court are listed in Schedule A, attached hereto;

 2.  Civil Action No. 05-485-JJF shall be the lead case. All documents filed in this consolidated action shall be placed in the file of Civil Action No. 05-485-JJF;

 3.  The caption of the consolidated purchaser antitrust actions henceforth shall be:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| INTEL CORP. MICROPROCESSOR ANTITRUST LITIGATION | : | MDL Docket No. 05-1717-JJF |
| PHIL PAUL, on behalf of himself and all others similarly situated, | : | |
| Plaintiffs, | : | Civil Action No. 05-485-JJF |
| v. | : | CONSOLIDATED ACTION |
| INTEL CORPORATION, | : | |
| Defendant. | : | |

 4.  The National Plaintiffs Group's Motion For Consolidation And Appointment Of Interim Class Counsel And Liaison Counsel (D.I. 23) is **DENIED**;

 5.  The Motion By Cohen Milstein Hausfeld & Toll, The Furth Firm, Hagens Berman Sobol, and Saveri & Saveri For Appointment As Interim Class Counsel (D.I. 20) is **GRANTED**;

6. The firms of Cohen Milstein Hausfeld & Toll, The
Furth Firm, Hagens Berman Sobol, and Saveri & Saveri are
appointed Interim Class Counsel pursuant to Federal Rule of Civil
Procedure 23(g)(2)(A);

7. Interim Class Counsel shall be generally
responsible for coordinating the activities of Plaintiffs during
pretrial proceedings and, on behalf of Plaintiffs and other
members of the proposed class shall:

(a) determine and present to the Court and
opposing parties the position of Plaintiffs on all matters
arising during pretrial proceedings;

(b) direct and execute on behalf of Plaintiffs,
all pleadings and other filings with the Court;

(c) direct the briefing and argument of all
motions on behalf of Plaintiffs;

(d) coordinate discovery on behalf of Plaintiffs
consistent with the requirements of Fed. R. Civ. P. 26;

(e) enter into stipulations with opposing counsel
as necessary for the conduct of the litigation;

(f) accept, on behalf of all Plaintiffs, service
of papers by Defendant, other than those filed through the ECF
system, and distribute them to Plaintiffs' counsel as
appropriate;

(g) conduct settlement negotiations on behalf of

Plaintiffs, but not enter binding agreements except to the extent expressly authorized;

(h) maintain adequate time and disbursement records covering services as interim class counsel;

(i) monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

(j) perform such other duties as may be incidental to proper coordination of Plaintiffs' pretrial activities or authorized by further order of the Court;

7.   The firm of Prickett, Jones & Elliott is appointed interim Liaison Counsel;

8.   Interim liaison counsel shall be responsible for maintaining and distributing an up-to-date service list, distributing to all Plaintiffs' counsel Court Orders, pleadings, and other documents in the centralized actions, and performing assignments as requested by interim class counsel;

9.   Interim class counsel shall file a Consolidated Class Action Complaint no later than **Friday, April 28, 2006**;

10.   The Court will conduct an initial conference in this matter on **Thursday, May 4, 2006, at 3:00 p.m.** in Courtroom No. 4B on the 4th floor, Boggs Federal Building, Wilmington.

11.  The Court will issue an agenda for the initial conference.  The parties shall submit, by **Friday, April 28, 2006**, any suggestions for matters to be included on the agenda.

April 18, 2006
DATE

                    UNITED STATES DISTRICT JUDGE

MDL No. 1638

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE FOUNDRY RESINS** | **Case No.**       **2:04-md-1638** |
| **ANTITRUST LITIGATION** | **Master Docket No.**   **2:04-cv-415** |
| | |
| | **JUDGE GREGORY L. FROST** |
| | **Magistrate Judge Mark R. Abel** |

**This document relates to: <u>ALL CASES</u>.**

## <u>ORDER</u>

On December 9, 2004, this Court held a first preliminary pretrial conference in the above captioned multidistrict litigation cases. Counsel for all parties appeared and, after preliminary on-the-record discussions, agreed that the Court and counsel could discuss the matters to be addressed informally and off the record. This Order both memorializes those discussions and disposes of several pending issues.

**<u>Appointment of lead counsel</u>.** The Court has been presented with two alternatives for the appointment of interim lead counsel. Although all Plaintiffs' counsel agreed to waive a formal evidentiary hearing and preferred to submit the issue of lead counsel to the Court on their briefs, the Court proceeded on December 9, 2004 to discuss informally with the parties each of the following factors as outlined in the *Manual for Complex Litigation* (4th ed. 2004):

-      qualifications, functions, organization, and compensation of designated counsel;
-      whether there has been full disclosure of all agreements and understandings among counsel;
-      would-be designated attorneys' competence for assignments;
-      whether there are clear and satisfactory guidelines for compensation and reimbursement, and whether the arrangements for coordination among

1

counsel are fair, reasonable, and efficient;

• whether designated counsel fairly represent the various interests in the litigation–where diverse interests exist among parties; the court may designate a committee of counsel representing different interests;

• the attorneys' resources, commitment, and qualifications to accomplish the assigned tasks; and

• the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court–experience in similar roles in other litigation may be useful, but an attorney may have generated personal antagonisms during prior proceedings that will undermine his or her effectiveness in the present case.

*Id.* at 27. The Court also inquired into the issue of anticipated billing rates and was informed that there was no notable distinction between the competing factions for the interim lead counsel position(s).

In light of these factors, the discussions had with counsel, informal argument before the Court, and the parties' filings, the Court hereby designates the following firms to act as interim lead co-counsel in the class action cases: Choen, Milstein, Hausfeld & Toll, P.L.L.C.; Goodkind Labaton Rudoff & Sucharow LLP; Levin, Fishbein, Sedran & Berman; and Preti, Flaherty, Beliveau, Pachios & Haley, LLP. Said counsel, who have garnered the support of 88% of Plaintiffs, possess the apparent experience, qualifications, and ability to serve most effectively as interim lead co-counsel in these proceedings.

Having appointed interim co-lead counsel, the Court will not set forth at this time specific guidelines for how they should function in managing this litigation outside the presence of the Court. Until proven wrong, the Court trusts that given the experience and apparent professionalism of interim lead co-counsel, they will be able to understand their roles and function effectively, efficiently, and economically without micro-management by this Court.

2

The Court does note, however, that interim lead co-counsel shall act as spokesperson for Plaintiffs' counsel in matters of joint or common action before the Court. This does not limit the right of other counsel to be heard on matters not susceptible to joint or common action or when genuine and truly substantial divergence of opinion exists among counsel. The Court emphasizes that this latter statement does **not** mean that the Court will view favorably the presentation of cumulative views or views that differ only slightly from interim lead co-counsels' views.

This Order renders the motion for entry of a case mangement order (Doc. # 17 in 1:04-cv-434) and the cross-motion for a proposed pretrial order (Doc. # 13) **MOOT**.

**Appointment of liaison counsel.** Having considered the factors described in the foregoing section as they relate to the role of liaison counsel, the existing relationship of Hahn Loeser & Parks LLP to the appointed interim lead co-counsel, and the qualifications and ability of the Hahn Loeser counsel involved, the Court appoints Hahn Loeser as interim liaison counsel. Liaison counsel bears the responsibility, when necessary, for forwarding to Plaintiffs' counsel copies of all documents filed under seal, including this Court's Orders.

**Attorney fees.** All counsel for Plaintiffs in the class action cases shall forward a written account of their record of time and expenses to the interim lead co-counsel no less than every ninety days. Failure to provide such information as required may result in this Court's refusal to consider non-compliant counsel's application for fees and expenses should any class action plaintiff prevail.

**Motion to stay.** On November 24, 2004, Defendants filed a motion to stay discovery in

these proceedings pending completion of ongoing investigations before the Grand Jury. (Doc. #
10.) Plaintiffs have filed a memorandum in opposition. (Doc. # 17.) The parties have agreed
with the Court's approval that, following the issuance of this Order, Defendants' counsel shall
meet with Plaintiffs' interim co-lead counsel to discuss outstanding issues, including but not
limited to possibility of a stay and any need for a protective order. Said discussions should occur
as soon as possible and, **by January 3, 2005, the parties shall file a report with this Court
detailing the results of those discussions**. The Court holds Defendants' pending motion for a
stay in abeyance until after January 3, 2005.

    **<u>Consolidation of unconsolidated class action cases.</u>** The case of *Caterpillar, Inc. v.
Ashland, Inc.*, No. 1:04-1199 (C.D. Ill.), is a related individual action. For purposes of pretrial
proceedings, this case is included with the consolidated class action cases; for ease of reference,
these combined proceedings shall be referred to as the "coordinated action." Thus, the Court
hereby consolidates the additional class action cases set forth in the Conditional Transfer Order
(Doc. # 24) with the cases previously consolidated in this coordinated action. **The Court
further directs counsel in case No. 2:04-cv-667 to file no later than December 17, 2004 the
motion for consolidation discussed during the December 9, 2004 informal discussions.** The
Court shall subsequently issue a notice that will indicate each consolidated case and its Southern
District of Ohio case number.

    **<u>Case caption and case numbers.</u>** The Court shall assign every case in this coordinated
action that currently lacks a Southern District of Ohio case number such a number. The cases
will collectively be referred to by 2:04-md-1638. Additionally, the Court will utilize the lowest
case number, case No. 2:04-415, as the Master Docket Number.

4

Every filing in the coordinated action shall bear the following caption:

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| **IN RE FOUNDRY RESINS** | **Case No.**          **2:04-md-1638** |
| **ANTITRUST LITIGATION** | **Master Docket No.   2:04-cv-415** |
| | |
| | **JUDGE GREGORY L. FROST** |
| | **Magistrate Judge Mark R. Abel** |

**This document relates to:** _____

When a pleading or other court paper is intended to apply to all actions, the words "ALL ACTIONS" shall appear on the line next to the words "This document relates to" in the caption as set forth above.  When a pleading or other court paper is intended to be applicable only to one, some, but not all, of the cases governed by this order, the party filing the pleading shall indicate the actions to which the pleading is intended to apply in the line next to the words "This document relates to."

**Amended consolidated complaint.**  As discussed informally with the Court and in accordance with the parties' agreement, **the Class Action Plaintiffs shall filed an amended consolidated complaint by January 7, 2005.**

**Extension of time in which to file answers or otherwise respond to amended consolidated complaint.**  This Court recognizes that Defendants have moved for an extension of time in two of the consolidated cases.  (Doc. # 8.)  This Order vacates all existing response deadlines, and Defendants need not respond at this time to any already filed complaint.  As

5

discussed informally with the Court and in accordance with the parties' agreement, **Defendants shall respond to the amended consolidated complaint by February 7, 2005. Defendants shall also respond to the complaint in *Caterpillar* by that date.** Accordingly, Defendants' motion for an extension of time to answer, move, or otherwise plead is **MOOT**. (Doc. # 8.)

**Status conferences.** As discussed during the informal discussions, this Court shall set periodic status conferences. **The First Status Conference is set for Wednesday, January 26, 2005 at 1:30 p.m. in Courtroom Four.** The parties shall confer prior to the status conference and file with the Court, no later than two days prior to the conference, an agenda of issues to be addressed. Counsel should not regard this filing as an opportunity to present argument. Rather, the proposed agenda should simply set forth those issues the parties seek to discuss with the Court. If any matter on the agenda is not resolved during informal discussions held at the status conference, the Court will set the matter for a subsequent in-court hearing. Following each status conference, the Court will issue an order memorializing the issues addressed and resolutions reached therein.

**Applicable procedural rules.** Except as otherwise provided herein or by further order of this Court, the Federal Rules of Civil Procedure and Local Civil Rules of the United States District Court for the Southern District of Ohio shall govern all further proceedings herein.

***Pro hac vice* applications.** Each attorney who is not already a member of the bar of this Court but who seeks to act as counsel for any party in these proceedings must apply for admission *pro hac vice*. The Court will not waive the fee for *pro hac vice* admission. The Magistrate Judge shall address such motions.

6

**Electronic filing.**  All counsel must register for electronic filing with the Court.

**Scheduling Order.**  Following resolution of the motion for a stay and the January 26, 2005 status conference, this Court will issue a scheduling order as necessary.

**IT IS SO ORDERED.**

         /s/  Gregory L. Frost         
        GREGORY L. FROST
        UNITED STATES DISTRICT JUDGE

MDL No. 1616

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE: URETHANE ANTITRUST
LITIGATION                                        No.  04-MD-1616-JWL

This Order Relates to All Cases
_____

## PRACTICE AND PROCEDURE ORDER NO. 2

It is hereby **ORDERED** as follows:

### Organization of Counsel

1.      The court creates the organization of counsel set forth below for the purpose of assuring the effective, efficient, expeditious, and economical conduct of the litigation.

2.      The law firm of Shook, Hardy & Bacon, L.L.P. is appointed as liaison counsel for defendants.   Defendants' liaison counsel is authorized to: (a) receive orders, notices, correspondence, and telephone calls from the court and the clerk of the court on defendants' behalf, (b) prepare and transmit copies of such orders and notices on defendants' behalf, and (c) receive orders and notices from the Judicial Panel on Multidistrict Litigation, and shall: (d) maintain complete files with copies of all documents served upon them and make such files available to all defendants' counsel.

3.      The law firm of Stueve Siegel Hanson Woody LLP is appointed as liaison counsel for plaintiffs.   In accordance with the separate Order Regarding Service filed contemporaneously on this date, plaintiffs' liaison counsel is designated as the counsel for plaintiffs upon whom all notices, orders, pleadings, motions, discovery, and memoranda shall

be served.   Plaintiffs' liaison counsel is authorized to: (a) receive orders, notices, correspondence, and telephone calls from the court and the clerk of the court on plaintiffs' behalf, (b) prepare and transmit copies of such orders and notices on plaintiffs' behalf, and (c) receive orders and notices from the Judicial Panel on Multidistrict Litigation, and shall: (d) maintain complete files with copies of all documents served upon them and make such files available to all plaintiffs' counsel, and (e) maintain and make available to all counsel and the court an up-to-date service list.

4.      The law firms of Ross, Dixon & Bell, L.L.P.; Glancy Binkow & Goldberg LLP; Lockridge Grindal Nauen, P.L.L.P.; and Much Shelist Freed Denenberg Ament & Rubenstein, P.C. are appointed as co-lead counsel for plaintiffs.   Plaintiffs' co-lead counsel shall have the following duties during all phases of this litigation:

a.      to organize and supervise the efforts of plaintiffs' counsel in a manner to ensure that the pretrial and trial preparation for the plaintiffs is conducted effectively, efficiently, expeditiously, and economically;

b.      to delegate work responsibilities and monitor the activities of plaintiffs' counsel to assure that schedules are met and unnecessary expenditures of time and expense are avoided;

c.      to speak on behalf of plaintiffs at all court conferences and hearings;

d.      to initiate and conduct discussions and negotiations with counsel for defendants on all matters, including settlement;

e.     to determine the position of plaintiffs on all matters arising during the litigation (after such consultation with other co-counsel as appropriate) and present such position orally and/or in writing to the court and opposing parties;

f.     to consult with and employ experts, as necessary, for plaintiffs;

g.     to coordinate the initiation of and conduct discovery on behalf of plaintiffs consistent with the requirements of the Federal Rules of Civil Procedure, including the preparation of interrogatories and requests for production of documents, the organization and review of documents produced by defendants and non-parties, and the examination of witnesses via deposition;

h.     to receive and initiate communications with the court and the clerk of court, including receiving orders, notices, correspondence and telephone calls;

i.     to be the primary contact for all communications between plaintiffs and defendants;

j.     to perform such other duties as are necessary in connection with the prosecution of this litigation;

k.     to coordinate the preparation and presentation of all of plaintiffs' claims and coordinate all proceedings;

l.     to encourage full cooperation and efficiency among all plaintiffs' counsel; and

m.     to assess plaintiffs' counsel for the costs of the litigation.

3

5.      All plaintiffs' counsel shall keep contemporaneous records of their time and expenses devoted to this matter.   Those records shall reflect the date the legal service was rendered or expenses incurred, the nature of the service or expense, and number of hours consumed by the service or the amount of the expense.   These records for the preceding month shall be submitted in summary form by the end of each month to a co-lead counsel to be designated on or before **November 19, 2004.**   No plaintiffs' counsel shall incur an expense to be reimbursed from the plaintiffs' assessment fund in excess of $2,000 without first obtaining the consent from one of the plaintiffs' co-lead counsel.   Failure to comply with this rule may render the expenses non-reimbursable, at the discretion of co-lead counsel.

6.      Any discussions of a settlement that would affect any claims brought in this litigation, other than claims of an individual plaintiff or class member, must be conducted by plaintiffs' co-lead counsel.   Any proposed settlement that resolves, in whole or in part, the claims brought in this action shall first be subject to review and approval by the court in this litigation.

### Filing and Service of Papers and Court Orders

7.      Service of pleadings and other papers to be filed with the court by any party as well as service of all court orders shall, subject to further order of this court, be made according to the separate Order Regarding Service filed contemporaneously on this date.

### Service of this Order

8.      This order shall be served in accordance with the Order Regarding Service.

4

9.      Plaintiffs' liaison counsel shall promptly serve a copy of this order by overnight delivery service, facsimile, or other electronic means on counsel for plaintiffs in each related action that has not been consolidated in this proceeding to the extent that plaintiffs' liaison counsel is aware of any such action(s).

10.     When an action that properly belongs as a part of *In re: Urethane Antitrust Litigation* is hereinafter filed in the District of Kansas or transferred here from another court, the clerk of this court shall:

    a.      file a copy of this order in the separate file of such action;

    b.      make an appropriate entry on the master docket sheet;

    c.      mail a copy of this order to the attorneys for the plaintiff in the newly filed or transferred case; and

    d.      upon the first appearance of any new defendant, mail a copy of this order to the attorneys for the defendant in such newly filed or transferred cases.

**IT IS SO ORDERED** this 22nd day of October, 2004.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

5

MDL No. 1568

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

IN RE PARCEL TANKER ANTITRUST LITIGATION

2004 JUN 10 P 12: 24

Master Docket No.
03-CIV-348 (AVC)
MDL No. ___
U.S. DISTRICT COURT
HARTFORD, CT.

THIS DOCUMENT RELATES TO:  All Actions

## AMENDED PRETRIAL ORDER NO. 1

Plaintiffs JLM Industries, Inc., Illovo Sugar Limited, GFI Chemicals, LLP, GFI Sweden

AB, Basic Chemical Solutions, Inc., KP Chemical Corporation, Tulstar Products, Inc., and

Nizhnekamskneftekhim USA, Inc. have filed complaints in the above-referenced action (the

"Direct Class Plaintiff Actions") on behalf of themselves and other similarly situated direct

purchasers of ocean shipping services for the transportation of liquid chemicals and other

specialty chemicals via parcel tankers alleging violations of the antitrust laws by Defendants (the

"Parcel Tanker Antitrust Litigation").

Plaintiff, Fleurchem, Inc., has filed a similar complaint in the Parcel Tanker Antitrust

Litigation on behalf of itself and other similarly situated indirect purchasers (the "Indirect Class

Plaintiff Action").

Plaintiffs Dow Chemical Co., and Union Carbide Co., have individually filed complaints

in the Parcel Tanker Antitrust Litigation ("Individual Plaintiff Actions").

**WHEREAS** additional actions have been filed by similarly situated direct and indirect

purchasers of ocean shipping services for the transportation of liquid chemicals and other

specialty chemicals via parcel tankers for alleged violations of the antitrust laws since Pretrial

Order No. 1 was entered on or about August 18, 2003;

**WHEREAS** similar individual antitrust actions were commenced by Dow Chemical Co., and Union Carbide Co., since Pretrial Order No. 1 was entered on or about August 18, 2003;

**WHEREAS** a limited need exists to amend Pretrial Order No. 1 to consolidate and coordinate these actions for all pretrial purposes and to incorporate counsel into this case pursuant to the Court's Orders of April 30, 2004.

**NOW, THEREFORE, THE COURT ORDERS** as follows:

A.    Consolidation and Coordination of Related Actions

1.    Any suit now pending or hereafter filed in this Court, or transferred to this Court, which is brought on behalf of a putative class of direct purchasers of parcel tanker services and that arises out of the same operative facts as the Direct Class Plaintiff Actions is hereby consolidated for all pretrial purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure (the "Consolidated Direct Class Plaintiff Actions").

2.    Any suit now pending or hereafter filed in this Court, or transferred to this Court, which is brought on behalf of a putative class of indirect purchasers of parcel tanker services and that arises out of the same operative facts as the Indirect Class Plaintiff Action is hereby consolidated for all pretrial purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure (the "Consolidated Indirect Class Plaintiff Action").

3.    Any suit now pending or hereafter filed in this Court, or transferred to this Court, which is brought on behalf of individual purchasers of parcel tanker services, is not designated as a class action, and that arises out of the same operative facts as the Individual Plaintiff Actions is hereby consolidated for all pretrial purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure (the "Consolidated Individual Actions").

167912-1

4.    The Consolidated Direct Class Plaintiff Actions, the Consolidated Indirect Class Plaintiff Action and the Consolidated Individual Actions shall hereafter be joined solely for the purpose of coordinating pretrial discovery in this action ("Coordinated Actions").

B.    Caption of Cases

5.    Every pleading filed in the Coordinated Actions shall bear the following caption:

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| IN RE PARCEL TANKER ANTITRUST LITIGATION | Master Docket No. 03-CIV-348 (AVC) |
| --- | --- |
| THIS DOCUMENT RELATES TO: | |

6.    When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after or below the words "This Document Relates To" in the caption set out above.  When a pleading is intended to be applicable only to some, but not all, of such actions, the separate caption and docket number for each action to which the pleading is intended to be applicable shall appear immediately after or below the words "This Document Relates To" in the caption described above.

C.    Master Docket, Master File and Separate Action Dockets

7.    A Master Docket and Master File are hereby established for the Coordinated Actions.

8.    Documents shall bear the caption, as provided in ¶¶ 5 and 6 above, of the actions in which the authors intend the documents to be served and/or filed.  Entries shall be made on the

3

167912-1

dockets, and copies of documents placed in the files, of those actions whose captions appear on the pleading or court paper.

9.      Separate dockets shall be maintained for each of the Coordinated Actions and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order or a future order of this Court.

10.     When a pleading or other court paper is filed and the caption, pursuant to ¶¶ 5 and 6 above, shows that it is to be applicable to "All Actions," the Clerk shall file such pleading or other court paper in the Master File and note such filing in the Master Docket.  No further copies need to be filed or docket entries made.

11.     When a pleading or other court paper is filed and the caption, pursuant to ¶¶ 5 and 6 above, shows that it is applicable to fewer than all actions that are coordinated before this Court, the Clerk need file such pleading or other court paper only in the Master File, but nonetheless shall note such filing in both the Master Docket and in the docket of each such action.

D.      Newly Filed or Transferred Actions

12.     When a case that arises out of the same subject matter of the Coordinated Actions is hereafter filed in this Court or transferred from another court, the Clerk of this Court shall:

(a)     Make an appropriate entry in the Master Docket;

(b)     Place a copy of this Order in the separate file for such action; and

(c)     Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly filed or transferred case and to any new defendant(s) in the newly-filed or transferred case.

13.     This Order shall apply to each case referenced in ¶ 12 unless a party objecting to the consolidation or coordination of such case or to the provisions of this Order shall, within ten (10) days after the date upon which an Order is mailed to counsel for such party, file an

4

167912-1

application for relief from this provision and this Court deems it appropriate to grant such application.

    14.    This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated or coordinated as part of the Coordinated Actions.

E.    <u>Organization of Plaintiffs' Counsel</u>

    15.    The Consolidated Direct Class Plaintiff Actions are listed in Schedule A. Schedule A shall be amended to include any action brought on behalf of a putative class of direct purchasers of parcel tanker services from a Defendant which is subsequently filed in or transferred to this Court.

    16.    The Court designates the following to act on behalf of all plaintiffs in the Consolidated Direct Class Plaintiff Actions, with responsibilities herein described:

    (a)    As Liaison Counsel in the Consolidated Direct Class Plaintiff Actions:

> Schatz & Nobel, P.C.
> One Corporate Center
> 20 Church Street, Suite 1700
> Hartford, Connecticut 06103
> Telephone: (860) 493-6292
> Facsimile: (860) 493-6290

    (b)    As Co-Lead Counsel in the Consolidated Direct Class Plaintiff Actions:

> Milberg Weiss Bershad & Schulman LLP
> One Pennsylvania Plaza
> New York, New York 10119-0165
> Telephone: (212) 594-5300
> Facsimile: (212) 868-1229

167912-1

Much Shelist Freed Denenberg
Ament & Rubenstein, P.C.
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60606-1615
Telephone: (312) 521-2000
Facsimile: (312) 521-2100

Cohen Milstein Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: 415-777-2230
Facsimile: 415-777-5189

17.    The Consolidated Indirect Class Plaintiff Action is listed in Schedule B.  Schedule
B shall be amended to include any action brought on behalf of a putative class of indirect
purchasers of parcel tanker services from a Defendant which is subsequently filed in or
transferred to this Court.

18.    The Court designates the following to act on behalf of all Plaintiffs in the
Consolidated Indirect Class Plaintiff Action with responsibilities herein described:

(a)    As Liaison Counsel in the Consolidated Indirect Class Plaintiff Action:

James E. Hartley, Jr.
Gary B. O'Connor
Drubner, Hartley & O'Connor, L.L.C.
500 Chase Parkway
Waterbury, Connecticut 06708
Telephone:  (203) 753-9291
Facsimile:  (203) 753-6373

(b)    As Co-Lead Counsel in the Consolidated Indirect Class Plaintiff Action:

167912-1

James E. Hartley, Jr.
Gary B. O'Connor
Drubner, Hartley & O'Connor, L.L.C.
500 Chase Parkway
Waterbury, Connecticut 06708
Telephone: (203) 753-9291
Facsimile: (203) 753-6373

Joe Whatley
Whatley Drake
2323 2nd Avenue
P.O. Box 10647
Birmingham, Alabama 35202-0647
Telephone: (205) 328-9576
Facsimile: (205) 328 9669

Paul T. Warner
Reich & Binstock
4265 San Felipe Ste. 100
Houston, Texas 77027
Telephone: (713) 622-7271
Facsimile: (713) 623-8724

19.     Co-Lead Counsel in the Consolidated Direct Class Plaintiff Actions and the

Consolidated Indirect Class Plaintiff Action shall be responsible for the overall conduct of the

Parcel Tanker Antitrust Litigation for their respective groups with the following responsibilities,

but only for their respective groups:

(a)     To brief and argue motions and file opposing briefs in proceedings

initiated by other parties;

(b)     To initiate and conduct discovery proceedings;

(c)     To act as spokesperson at pretrial conferences;

(d)     To negotiate with defense counsel with respect to settlement and other

matters;

(e)     To call meetings of plaintiffs' counsel when appropriate;

167912-1

(f)     To make all work assignments to plaintiffs' counsel to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

(g)     To conduct trial and post-trial proceedings;

(h)     To consult with and employ experts;

(i)     To perform such other duties and undertake such other responsibilities as they deem necessary or desirable;

(j)     To coordinate and communicate with Defendants' counsel with respect to matters addressed in this paragraph; and

(k)     To determine, in good faith, the appropriate allocation among plaintiffs' counsel in their respective groups of legal fees, if any, recovered as a result of the litigation.

The ability of any respective group to unilaterally conduct any of the activities described above may be affected by the Case Management Order (CMO) or other order of the Court. Conduct of the Individual Plaintiff Actions shall be the exclusive responsibility of counsel for the Individual Plaintiffs and the Individual Plaintiffs' Steering Committee, but similarly may be impacted by any CMO or other order of the Court.

20.     The Consolidated Individual Plaintiff actions are listed in Schedule C. Schedule C shall be amended to include any action brought on behalf of individual plaintiffs who purchased parcel tanker services from a Defendant which action is subsequently filed in or transferred to this Court.

21.     The Court designates the following to act on behalf of all Individual Plaintiffs with responsibilities herein described:

(a)     As Liaison Counsel for the Individual Plaintiffs:

167912-1

Robert G. Oliver
Mulvey Oliver & Gould
83 Trumbull Street
New Haven, Connecticut 06511
Telephone: (203) 624-5111
Facsimile: (203) 789-8371

(b)     As Individual Plaintiffs' Steering Committee:

David Gelfand
Cleary Gottlieb Steen & Hamilton
2000 Pennsylvania Avenue, N.W.
Suite 9000
Washington, District of Columbia 20006-1801
Telephone: (202) 974-1500
Facsimile: (202) 974-1999

Nathan P. Eimer
Eimer Stahl Klevorn & Solberg LLP
224 South Michigan Avenue
Suite 1100
Chicago, Illinois 60604
Telephone: (312) 660-7601
Facsimile: (312) 692-1718

22.     Pursuant to any CMO or other court-ordered obligation, Individual Plaintiffs'

Steering Committee and Co-Lead Counsel in the Direct and Indirect Class Plaintiff Actions shall

coordinate discovery to ensure there is no duplication of effort and to consult on prosecution

strategy in order to, *inter alia*, jointly prepare for hearings or presentations to the Court where

possible.

23.     No motion shall be initiated or filed on behalf of any Plaintiff in the (a)

Consolidated Direct Class Plaintiff Actions except through Co-Lead Counsel for such actions; or

(b) Consolidated Indirect Class Plaintiff Action except through Co-Lead Counsel for such

actions.

24.     Co-Lead Counsel in the Consolidated Direct Class Plaintiff Actions and the

Consolidated Indirect Class Plaintiff Action shall have sole authority to communicate with

9

Defendants' counsel and the Court on behalf of all plaintiffs in their respective groups.

Defendants' counsel may rely on all agreements made with Co-Lead Counsel in the

Consolidated Direct Class Plaintiff Actions and the Consolidated Indirect Class Plaintiff Action

respectively and such agreements shall be binding on all the counsel in the respective actions.

25.     Liaison Counsel shall be responsible for administrative matters such as

communications between the Court and counsel, including receiving and distributing notices,

orders, motions and briefs on behalf of the group.

26.     All Direct and Indirect Class Plaintiffs' counsel shall submit to their respective

Plaintiffs' Co-Lead Counsel a record of the time expended to date in the form set forth by such

Plaintiffs' Co-Lead Counsel on a monthly basis or on such other schedule as may be established,

from time to time, by Plaintiffs' Co-Lead Counsel.

27.     Defendants shall effect service of papers on Plaintiffs by serving a copy of same

on the respective Plaintiffs' Co-Lead Counsel and Liaison Counsel.  As to any action in which a

Defendant has not received service of the Complaint pursuant to the Federal Rules of Civil

Procedures, Plaintiffs shall effect service of papers on such Defendants by serving a copy of

same on a Defendant's counsel.

28.     The terms of this Order shall not have the effect of making any person, firm or

corporation a party to any action in which he, she or it has not been named, served or added as

such, in accordance with the Federal Rules of Civil Procedure.  The terms of this Order and the

coordination ordered herein shall not constitute a waiver by any part of any claims in or defenses

to any of the actions.

167912-1

F.    Admissions Pro Hac Vice

29.    Any attorney representing a Plaintiff or Defendant in this action who is a member in good standing of the bar of the highest court of any state, territory or the District of Columbia who is not a member of the bar of this Court is admitted *pro hac vice* in this action.

IT IS SO ORDERED.

Dated: _____June 14_____, 2004     By: _____
                                        Alfred V. Covello, U.S.D.J.

FILED
2004 JUN 14 P 2:26
U.S. DISTRICT COURT
HARTFORD, CT.

167912-1

# SERVICE LIST

I hereby certify that on June 10, 2004, a copy of the foregoing was sent, via first class U.S. mail, postage prepaid, to:

Steven F. Cherry
Joseph J. Samarias
Wilmer, Cutler & Pickering
1600 Tysons Blvd., 10th Floor
McLean, VA 22102
Steven.cherry@wilmerhale.com

Craig A. Raabe
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597
***Counsel for Odfjell ASA and
Odfjell USA, Inc.***

Richard J. Rappaport
Joshua B. Silverman
McGuire Woods, LLP
150 North Michigan Ave., Suite 2500
Chicago, IL 60601
rrappaport@mcguirewoods.com
***Counsel for Jo Tankers, Inc. and
Jo Tankers B.V.***

Donna Nelson Heller
Finn Dixon & Herling
One Landmark Square, Suite 1400
Stamford, CT 06901

Christopher M. Curran
J. Mark Gidley
Peter J. Carney
White & Case LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
***Counsel for Stolt-Nielsen*** S.A. and
Stolt-Nielsen Transportation Group Ltd.

Paul S. Hoff
Robert A.W. Boraks
Richard D. Gluck
Garvey Schubert Barer
1000 Potomac Street, N.W., Fifth Floor
Washington, D.C. 20007

Sheila A. Huddleston
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103
860/251-5000
fax: 860/251-5699
shuddleston@goodwin.com
***Counsel for Defendant Tokyo Marine Co. Ltd.***

*Nancy A. Kulesa*

Nancy A. Kulesa

MDL No. 1556

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: Pressure Sensitive Labelstock　　　:
Antitrust Litigation　　　　　　　　　　:　　MDL Docket No. 1556
　　　　　　　　　　　　　　　　　　　　:　　(No. 3:03-MDL-1556)
　　　　　　　　　　　　　　　　　　　　:　　(All Cases)
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　CHIEF JUDGE VANASKIE
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:

O R D E R

NOW, THIS 17th DAY OF DECEMBER, 2003, upon consideration of (I) the "Motion for

Entry of the Proposed Order to Appoint Counsel and Liaison Counsel" submitted by Plaintiff

Pamco Printed Tape & Label Co., Inc. (hereinafter the "Pamco Motion"); (ii) the "Motion for

Entry of the Proposed Order to Appoint Lead and Local Liaison Counsel" submitted by Plaintiff

Bertek Systems, Inc. (hereinafter the "Bertek Motion"); (iii) the "Motion of Scranton Label, Inc.,

Russell Ossendryver, Graphic Art Systems, Inc., McCarty Printing Corp., Ogden Brothers, Inc.,

Glenroy, Inc., Sentry Business Products, Inc., Ampersand Label, Inc., and Hyde Park Label

Corp. for Appointment of Plaintiffs' Co-Lead Counsel and Co-Liaison Counsel" (hereinafter the

"Majority Plaintiffs' Motion"), (iv) all briefs, exhibits, and other documents accompanying these

motions, (v) all replies, briefs, exhibits, and other documents submitted in response to these

motions, (vi) all other papers and proceedings herein, and (vii) the information presented at the

hearing conducted on this date, and mindful of the Court's responsibility "to minimize expense to all litigants and to provide judicial efficiency," In re Linerboard Antitrust Litig., MDL No. 1261, 2003 U.S. Dist. LEXIS 18141, at *23-24 (E.D. Pa. Sept. 5, 2003) (quoting In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig., 953 F.2d 162, 165 (4th Cir. 1992)), and to "ensure that designated counsel fairly represent the various interests in the litigation . . . ," Manual for Complex Litigation (Third) § 20.224 (1995), **IT IS HEREBY ORDERED THAT:**

    1.  The Pamco Motion (Dkt. Entry 6) is **DENIED**;

    2.  The Bertek Motion (Dkt. Entry 9) is **GRANTED IN PART**;

    3.  The Majority Plaintiffs' Motion (Dkt. Entry 11) is **GRANTED IN PART**; and

    4.  The following terms and conditions shall apply to the organization of this litigation going forward.

**I.**    <u>Organization of Plaintiffs' Counsel</u>

    **A.**  <u>Plaintiffs' Co-Lead Counsel:</u> The following law firms shall serve as Plaintiffs' Co-Lead Counsel: Trujillo Rodriguez & Richards, LLC; Cohen Milstein Hausfeld & Toll, P.L.L.C.; Lockridge Grindal Nauen P.L.L.P.; and Keating, Muething & Klekamp, P.L.L..

    **B.**  <u>Role of Plaintiffs' Co-Lead Counsel:</u> Plaintiffs' Co-Lead Counsel shall be responsible for coordinating and organizing Plaintiffs in the conduct of this litigation, and, in particular, shall have the following responsibilities:

    1.  To brief and argue motions and file opposing briefs in proceedings initiated by other

parties;

   2.  To initiate and conduct discovery proceedings;

   3.  To act as spokesperson at pretrial conferences;

   4.  To negotiate with defense counsel with respect to settlement and other matters;

   5.  To request that the Court approve a proposed settlement and fee award;

   6.  To call meetings of Plaintiffs' counsel as appropriate;

   7.  To assign work to Plaintiffs' counsel on an equitable basis to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

   8.  To conduct trial and post-trial proceedings;

   9.  To consult with and employ experts;

   10. To perform such other duties and undertake such other responsibilities as they deem necessary or desirable; and

   11. To coordinate and communicate with Defendants' counsel with respect to the matters addressed above.

   Counsel for Plaintiffs who disagree with Plaintiffs' Co-Lead Counsel or those acting on behalf of Plaintiffs' Co-Lead Counsel or who have individual or divergent positions may, with prior leave of Court, present written and oral arguments and otherwise act separately on behalf of their client(s) as appropriate, provided that in doing so they do not repeat arguments, questions, or actions of Plaintiffs' Co-Lead Counsel.

3

C. <u>Plaintiffs' Liaison Counsel</u>: The following law firm shall serve as Plaintiffs' Liaison counsel: O'Malley & Langan, P.C.

D. <u>The Role of Plaintiffs' Liaison Counsel</u>: Plaintiffs' Liaison Counsel shall assist the Co-Lead Counsel in performing all their duties. In addition, Plaintiffs' Liaison Counsel are authorized to receive orders, notices, correspondence, and telephone calls from the Court and the Clerk of the Court on behalf of all Plaintiffs, and shall be responsible for the preparation and transmittal of copies of orders and notices to the parties in their liaison group. In accordance with Rule 5.2(e) of the Rules of the Judicial Panel on Multidistrict Litigation, liaison counsel are authorized to receive orders and notices from the Judicial Panel on Multidistrict Litigation on behalf of all parties within their liaison group, and shall be responsible for the preparation and transmittal of copies of orders and notices to the parties in their liaison group. Plaintiffs' Liaison Counsel shall promptly transmit copies of all orders, notices, correspondence, pleadings, motions, discovery, and memoranda to Plaintiffs' Co-Lead Counsel and, when appropriate, to all Plaintiffs' counsel.

II. <u>Maintenance of Contemporaneous Attorneys' Time and Expense Records</u>

All Plaintiffs' counsel, regardless of their position in the above leadership structure, shall submit to the designee of Plaintiffs' Co-Lead Counsel a record of the time expended to date in the form set forth by Plaintiffs' Co-Lead Counsel on a monthly basis or on such other schedule as may be established. Counsel who anticipate seeking an award of attorneys' fees from the

4

Court shall keep daily records of their time spent and expenses incurred in connection with this litigation, indicating with specificity the hours, location, and particular activity. Failure to maintain and timely submit such records will be considered in any fee allocation and will be grounds for denying court-awarded attorneys' fees. Insufficient description of hourly activity will likewise be so considered.

III. <u>Coordination of Pleadings, Motions, and Other Papers</u>

Defendants shall effect service of papers on Plaintiffs by serving a copy of the same on Plaintiffs' Co-Lead Counsel and Plaintiffs' Liaison Counsel in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall effect service of papers on Defendants by serving a copy of the same on Defendants' counsel and Defendants' local counsel in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

IV. <u>Communication Among Counsel</u>

The Court recognizes that cooperation by and among Plaintiffs' counsel and by and among Defendants' counsel is essential for the orderly and expeditious conduct of this litigation. The communication of information among and between Plaintiffs' counsel, or among and between Defendants' counsel, shall not be deemed a waiver of the attorney-client privilege or the protection afforded attorneys' work product to the extent that such communications fall within the ambit of the attorney-client privilege, the work product doctrine, and/or the common interest doctrine. Furthermore, the cooperative efforts contemplated above shall not in any

way be used against any Plaintiff by any Defendant or against any Defendant by any Plaintiff.
Nothing contained in the provision shall be construed to limit the rights of any party or counsel
to assert the attorney-client privilege, the attorney work product doctrine, or the common
interest doctrine.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

O:\VANASKIE\JUDGE\MDL1556\appointcounsel.wpd

6

MDL No. 1543

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE                                      )
CARBON BLACK ANTITRUST LITIGATION )        CIVIL ACTION NO.
_____)   03-10191-DPW (Lead case)
                                           )
THIS DOCUMENT RELATES TO ALL CASES)        MDL Docket No. 1543
_____)


## CASE MANAGEMENT ORDER NO. 2

November 10, 2003

Counsel in the several class action cases, which have been consolidated in this Court as MDL-1543 in connection with a transfer order issued August 13, 2003 by the Judicial Panel on Multidistrict Litigation ("JPMDL")--following the entry of the Case Management Order and Order for Consolidation entered July 29, 2003 ("Case Management Order No. 1") governing related cases initially filed in this Court--have met and conferred among themselves and were heard at a status conference on November 3, 2003 following which a proposed schedule was submitted on behalf of all parties. Upon consideration of the positions of the parties, certain additional case management orders are hereby entered.

### A.   PLAINTIFFS' COUNSEL

1.   The following counsel are appointed as Plaintiffs' Co-Lead Counsel in this litigation:  1) Berger & Montague, P.C.; 2) Cohen, Milstein, Hausfeld & Toll, P.L.L.C.; 3) Gold Bennett Cera & Sidener

L.L.P.; and 4) Milberg Weiss Bershad Hynes & Lerach LLP. Plaintiffs' Co-Lead Counsel shall be responsible for coordinating and organizing plaintiffs in the conduct of this litigation, and, in particular, shall have the following responsibilities:

    a.    To brief and argue motions and file opposing briefs in proceedings initiated by other parties;

    b.    To initiate and conduct discovery proceedings;

    c.    To act as spokesperson at pretrial conferences;

    d.    To negotiate with defense counsel with respect to settlement and other matters;

    e.    To call meetings of plaintiffs' counsel when appropriate;

    f.    To make all work assignments to plaintiffs' counsel to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

    g.    To conduct trial and post-trial proceedings;

    h.    To consult with and employ experts;

    i.    To perform such other duties and undertake such other responsibilities as they deem necessary or desirable; and

    j.    To coordinate and communicate with defendants' counsel with respect to matters addressed in this

paragraph.

2.    No motion, request for discovery, or other pre-trial proceedings shall be initiated or filed by any plaintiff except through Plaintiffs' Co-Lead Counsel, without prior order of this Court.

3.    Shapiro, Haber & Urmy, P.C. is appointed to serve as Plaintiffs' Liaison Counsel.  Plaintiffs' Liaison Counsel shall have the responsibility for maintenance and distribution of the up-to-date service list and the distribution to all plaintiffs' counsel of Court Orders, pleadings, and other documents in the Carbon Black Antitrust Litigation.

4.    Plaintiffs' Co-Lead Counsel shall be the contact between plaintiffs' counsel and defendants' counsel as well as the spokespersons for plaintiffs' counsel, and shall call meetings of and direct and coordinate the activities of plaintiffs' counsel. Plaintiffs' Co-Lead Counsel, along with Plaintiffs' Liaison Counsel, shall also be responsible for communicating with the Court to coordinate the conduct of the litigation, including the receipt and dissemination of Court Orders and notices.

5.    All plaintiffs' counsel shall submit to Plaintiffs' Co-Lead Counsel a record of the time expended to date in the form set forth by Plaintiffs' Co-Lead Counsel, and thereafter shall submit a record of time expended on a monthly basis or on such other schedule

3

as may be established by Plaintiffs' Co-Lead Counsel.

6. Plaintiffs' Co-Lead Counsel shall ultimately be responsible to insure that the conduct of the litigation by plaintiffs will promote efficiency, discourage duplication of effort and seek to minimize costs.

B. DOCKETING AND SERVICE

1. As a result of the designation of these consolidated actions as a multidistrict litigation matter by the JPMDL pursuant to 28 U.S.C. § 1407, every pleading in this proceeding, or in any action included therein, shall bear the following caption:

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


IN RE                              )
CARBON BLACK ANTITRUST LITIGATION )   CIVIL ACTION NO.
_____)     03-10191-DPW (Lead case)
                                  )
THIS DOCUMENT RELATES TO:      )   MDL Docket No. 1543

 - - - - - - - - - - - -
```

2. All submissions in this case are subject to electronic filing and all counsel who choose to appear must make arrangements to

4

register for participation in electronic case filing.

3.   Counsel shall also file all submissions with the Court in hard copy clearly marked "Courtesy Copy - Do Not Scan" on the cover page of each submission.

4.   Notices, orders and memoranda of the Court will only be filed and served electronically.

### C.  SCHEDULE

The following schedule is established for pre-trial proceedings:

| | |
|---|---|
| Filing and service of Consolidated Complaint | 11/14/03 |
| Parties may file consolidated First Wave Written Discovery | 11/14/03 |
| Answer to Consolidated Complaint | 12/15/03 |
| Responses to First Wave Written Discovery to be served by | 12/15/03[1] |
| Meet counsel in person and Confer on Discovery Objections | 12/23/03[2] |
| Plaintiffs file motion for class certification (to include any expert report or affidavit)[3] | 3/8/04 |

---

[1] Or thirty (30) days after service of discovery, if served after November 14, 2003.

[2] Or within seven (7) days from the date of service of each party's discovery responses.

[3] At the time of service of the expert report(s) or affidavit(s), each party shall simultaneously transmit all underlying materials relied upon by the expert, including, in electronic format,

Defendants' class certification expert
    report due[4]                         4/22/04

Deposition of plaintiffs' class expert
    to be taken by                      5/6/04

Deposition of defendants' class expert
    to be taken by                      5/26/04

Deadline for filing opposition to class
    certification motion              6/25/04

Deadline for plaintiffs' Reply Brief on
    class certification               7/26/04

Hearing on class certification      8/25/04 at 2:30 p.m.                            in Court-                                    room
#1

Conclusion of discovery               11/23/04

Identification of plaintiffs' expert(s)
    and service of report(s)[5]       12/23/04

Identification of defendants' expert(s)
    and service of report(s)[6]       2/7/05

Deposition(s) of plaintiffs' expert(s)
    to be taken by                      3/4/05

Deposition(s) of defendants' expert(s)
    to be taken by                      4/1/05

---

all input files, including original source transaction data, all programs applied to those input files, and all output files relating to any statistical work done by the expert.

    [4] <u>See</u> footnote 3, incorporated herein by reference.

    [5] <u>See</u> footnote 3, incorporated herein by reference.

    [6] <u>See</u> footnote 3, incorporated herein by reference.

```
Rebuttal Reports, if necessary[7]        5/2/05

Depositions on Rebuttal Reports,
     if necessary                        6/10/05

Filing of dispositive motions           7/11/05

Opposition to dispositive motions       8/22/05

Reply brief for dispositive motions     9/6/05


Hearing on dispositive motions          10/5/05 at
                                         2:30 p.m. in
                                         Courtroom # 1

Trial                                    To be set at a
                                         later date
```

### D.  CASES SUBJECT TO CONSOLIDATION

1.  The following cases are subject to consolidation in this proceeding:

a.  Actions transferred by the JPMDL pursuant to its Transfer Order of August 13, 2003:

>      03-cv-10191-DPW *Technical Industries v. Cabot Corp., et al.*
>
>      03-cv-10659-DPW *Standard Rubber Products v. Cabot Corp., et al.*
>
>      03-cv-10733-DPW *Reeves Brothers, Inc. v. Cabot Corp., et al.*

----

[7] See footnote 3, incorporated herein by reference.  Rebuttal reports are intended to be limited to responding to matters raised in the opposing side's expert reports or during deposition.  Each side reserves the right to move to strike any portion of any expert rebuttal report which introduces a significant new factor into its analysis.

03-cv-10837-DPW  *Plastics Color Corp. of Illinois v. Cabot Corp., et al.*

03-cv-11531-DPW  *Synaflex Rubber Products Co. v. Cabot Corp., et al.*

03-cv-11532-DPW  *Alco Industries, Inc. v. Cabot Corp., et al.*

03-cv-11533-DPW  *Chase & Sons, Inc. v. Cabot Corp., et al.*

03-cv-11534-DPW  *Parker Hannifin Corp. v. Cabot Corp., et al.*

b.   Actions filed in this Court requiring no action on the part of the JPMDL, see Judicial Panel Rule of Procedure 7.5(a), which have been consolidated in this proceeding, see Case Management Order No. 1 at note 1, pursuant to D. Mass. L.R. 40.1(E):

03-cv-10931-DPW  *Polymerics, Inc. v. Cabot Corp., et al.*

03-cv-11072-DPW  *Robbins LLC v. Cabot Corp., et al.*

03-cv-11073-DPW  *Cardinal Color v. Cabot Corp., et al.*

03-cv-11181-DPW  *Schlegel Corporation v. Cabot Corp., et al.*

03-cv-11369-DPW  *Cronite Supply v. Cabot Corp., et al.*

c.   Actions subject to conditionally transfer orders of the JPMDL entered on dates first listed below:

8/25/03   03-cv-11836-DPW    *Industrial Rubber Prod. v. Cabot Corp., et al.*, C.A. No. 1:03:3424 (N.D. Ill.)

10/29/03  [pending]          Ceradyne v. Cabot Corp., et al.,

C.A. No. 1:03-1522 (N.D. Ohio)

3.   The parties are aware of no other actions which may be subject to consolidation in this proceeding.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

MDL No. 1536

Minute Order Form (rev'97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4576 (MDL # 1536) | **DATE** | 7/29/2003 |
| **CASE TITLE** | In Re: In Re Sulfuric Acid Antitrust Litigation (#03 C 1788 Galvanizers v. Noranda and #03 C 1994 National Alum. v. Norfalco) | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(10) ■ [Other docket entry] Plaintiffs' Motion for Entry of Pretrial Order No. 1 is Granted. _Order of Consolidation and Caption of Cases:_ All actions transferred to this Court by the MDL Judicial Panel ......shall be consolidated and collectively referred to as **In Re Sulfuric Acid Antitrust Litigation, Case No. 03 C 4576, MDL Docket No. 1536.** If a pleading is applicable to all actions, the words shall appear in the caption as "All Actions", if the pleading is applicable to only some, but not all, the words shall appear - "This Document Relates to". _Master Docket, Case File and Separate Action Files:_ A master docket and case file is established for the consolidated pretrial proceedings in this action. The master file is 03 C 4576. The Clerk shall maintain a separate file for each action that is or may be consolidated and filings shall be made in accordance with the regular procedures of the Clerk of the Court. A copy of this order shall be filed in each such separate file. _Newly-Filed or Transferred Actions:_ When a civil action that relates to the same subject matter as In re Sulfuric Acid Antitrust Litigation is filed in this Court or transferred here from another Court, the Clerk of Court shall file a copy of this order in the separate file for such action and this order shall apply to subsequently-filed cases. See order for filing and docketing procedures. Steven A. Asher of Fox Rothschild LLP; Mary Jane Edelstein Fait of Wolf Haldenstein Adler Freeman & Herz LLC; Joseph C. Kohn of Kohn, Swift & Graf, P.C.; and Steven O. Sidener of Gold Bennett Cera & Sidener LLP shall serve as Plaintiffs' Co-Lead Counsel. See Pretrial Order No. 1 for full particulars and procedures. ENTER PRETRIAL ORDER #1. The Court will enter separate scheduling order as stated on the record.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | JUL 3 1 2003 | |
| | Docketing to mail notices. | | date docketed | 6 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7-29-03 | |
| | | courtroom deputy's initials | date mailed notice | |
| PAMF | | Date/time received in central Clerk's Office | | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re SULFURIC ACID ANTITRUST LITIGATION | ) ) ) | **DOCKETED** |
| | ) | MDL 1536    JUL 3 1 2003 |
| | ) | Case No. 03 C 4576 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) | |
| | ) | Judge David H. Coar |

## [PROPOSED] PRETRIAL ORDER NO. 1

### I.    Order of Consolidation

     A.      All actions transferred to this Court by the Multidistrict Judicial Panel, or otherwise, for pretrial purposes and similar actions that may be transferred later shall be consolidated and collectively referred to as *"In re Sulfuric Acid Antitrust Litigation*, Case No. 03 CV 4576, MDL Docket No. 1536."

     B.      This Order is made without prejudice to the right of any party to apply for a severance or separation of any claim, party, or action.

     C.      No action taken hereunder shall have the effect of making any person or entity a party to any action in which he, she, or it has not been named, served, or added in accordance with the Federal Rules of Civil Procedure.

### II.    Master Docket, Case File and Separate Action Files

     A Master Docket and Case File is hereby established for the consolidated pretrial proceedings in this action. The Master File shall be Civil Action No. 1:03 CV 4576. The original of this Order shall be filed by the Clerk of Court in the Master File herein established. The Clerk of Court shall maintain a separate file for each action that is or may be consolidated



and filings shall be made therein in accordance with the regular procedures of the Clerk of Court. The Clerk of Court shall file a copy of this Order in each such separate file.

### III.  Caption of Cases

A.    Every pleading filed in this consolidated action, or in any separate action included therein, shall bear the following caption:

| | | | |
|---|---|---|---|
| IN RE: | SULFURIC ACID<br>ANTITRUST LITIGATION | : <br> : <br> : | MDL Docket No. 1536 <br><br> Master File <br> No. 03 C 4576 |
| | | : | |
| THIS DOCUMENT RELATES TO: | | : <br> : <br> : | |

B.    When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words, "This Document Relates To:" in the caption set out above.  When a pleading is intended to be applicable only to some, but not all, of such actions, this Court's docket number for each individual action to which the pleading is intended to be applicable and the caption of that action, *e.g., "Galvanizers Company v. Noranda Inc., et al.* " shall appear immediately after the words "This Document Relates To:"

### IV.  Newly-Filed or Transferred Actions

When a civil action that relates to the same subject matter as *In re Sulfuric Acid Antitrust Litigation*, Case No. 03 C 4576, MDL Docket No. 1536, is hereafter filed in this Court or transferred here from another court, the Clerk of Court shall:

A.    File a copy of this Order in the separate file for such action.

B.     Mail a copy of the notice of assignment to counsel for plaintiffs and counsel for defendant(s) in the actions consolidated herewith for pretrial purposes.

C.     Make an appropriate entry in the Master Docket.

D.     Mail to the attorneys for the plaintiff(s) in the newly-filed or transferred case a copy of this Order.

E.     Upon the first appearance of any new defendant(s), add them to the Master Docket and mail to the attorney(s) for the newly-added defendant(s) a copy of this Order.

The Court requests the assistance of counsel in calling to the attention of the Clerk of Court the filing or transfer of any case that might properly be consolidated for pretrial purposes with *In re Sulfuric Acid Antitrust Litigation*, Case No. 03 C 4576, MDL Docket No. 1536.

## V.     Application of This Order to Subsequently-Filed Cases

This Order shall apply to each civil action alleging claims similar to those set forth in *In re Sulfuric Acid Antitrust Litigation*, Case No. 03 C 4576, MDL Docket No. 1536, which is subsequently filed in or transferred to this Court, unless the Court otherwise orders upon motion of a party moving for relief from this Order or from any of its provisions within twenty (20) days after the date on which the Clerk of Court mails a copy of this Order to counsel for that party.

## VI.     Filing and Docketing

A.     When a paper is filed and the caption, pursuant to Section III above, shows that it is to be applicable to "All Actions," the Clerk of Court shall file such paper in the Master File and note such filing in the Master Docket. No further papers need be filed or docket entries made.

B.     When a paper is filed and the caption, pursuant to Section III above, shows that it is to be applicable to less than all of the actions that may have been consolidated, the Clerk of

Court shall file an original and duplicate copy of such paper in the Master File and a copy in the file for each specific action to which the paper is intended to be applicable and shall note such filing in the Master Docket and in the docket of each such action. It shall be the responsibility of the party filing such paper to supply the Clerk of Court with sufficient copies of any paper to facilitate compliance with the directions of this paragraph.

**VII.**  **Rules of Procedure**

Except as otherwise provided herein or by further order of Court, the Federal Rules of Civil Procedure and the Local Civil Rules for the United States District Court for the District of Northern District of Illinois shall govern all further proceedings herein.

**VIII.**  **Admission of Attorneys**

Each attorney not a member of the bar of this Court who is acting as counsel for a plaintiff or defendant herein shall be deemed admitted *pro hac vice* to practice before this Court in connection with these proceedings, so long as the attorney is a member in good standing of the bar of the state where the attorney practices.

**IX.**  **Organization of Plaintiffs' Counsel**

A.  Plaintiffs' Co-Lead Counsel:  The following attorneys shall serve as Plaintiffs' Co-Lead Counsel: Steven A. Asher of Fox Rothschild LLP; Mary Jane Edelstein Fait of Wolf Haldenstein Adler Freeman & Herz LLC; Joseph C. Kohn of Kohn, Swift & Graf, P.C.; and Steven O. Sidener of Gold Bennett Cera & Sidener LLP.

B.  Role of Plaintiffs' Co-Lead Counsel:  Plaintiffs' Co-Lead Counsel shall be responsible for coordinating and organizing plaintiffs in the conduct of this litigation and, in particular, shall have the following responsibilities:

(1)  To brief and argue motions and file briefs in connection therewith;

(2)   To receive orders, notices, correspondence, and telephone calls from the
Court and the Clerk of the Court on behalf of all plaintiffs;

(3)   To transmit copies of all orders, notices, correspondence, pleadings,
motions, discovery, and memoranda to all plaintiffs' counsel when
appropriate;

(4)   To initiate and conduct discovery proceedings together with other
designated plaintiffs' counsel;

(5)   To act as spokesperson at pretrial conferences;

(6)   To negotiate with defense counsel with respect to settlement and other
matters;

(7)   To request that the Court approve a proposed settlement and fee award;

(8)   To call meetings of plaintiffs' counsel when appropriate;

(9)   To make all work assignments to plaintiffs' counsel to facilitate the
orderly and efficient prosecution of this litigation and to avoid duplicative
or unproductive effort;

(10)  To conduct trial and post-trial proceedings;

(11)  To consult with and employ experts;

(12)  To perform such other duties and undertake such other responsibilities as
they deem necessary or desirable; and

(13)  To coordinate and communicate with defendants' counsel with respect to
matters addressed in this paragraph.

C.   <u>Plaintiffs' Liaison Counsel</u>

Wolf Haldenstein Adler Freeman & Herz LLC shall serve as Plaintiffs' Liaison
Counsel.

D.     Role of Plaintiffs' Liaison Counsel:

Plaintiffs Liaison Counsel shall have the following responsibilities:

　　　　1.　　to coordinate activities and tasks performed, under the supervision of Co-Lead Counsel to facilitate the orderly and efficient prosecution of this litigation;

　　　　2.　　to maintain and distribute to the Court, to counsel for plaintiffs, and to counsel for Defendants, an up-to-date and comprehensive service list;

　　　　3.　　to speak for plaintiffs and plaintiffs' counsel in the Consolidated Action, under the supervision of Co-Lead Counsel and in consultation with Co-Lead Counsel, regarding pretrial proceedings, settlement negotiations, trial preparation, and trial;

　　　　4.　　to receive and distribute to plaintiffs' counsel in the Consolidated Action all orders from the Court; and

　　　　5.　　to receive and distribute to plaintiffs' counsel in the Consolidated Action all pleadings filed with the Court.

E.     Maintenance of Contemporaneous Attorneys' Time and Expense Records

All plaintiffs' counsel shall submit to the designee of Plaintiffs' Co-Lead Counsel a record of the time expended to date in the form set forth by Plaintiffs' Co-Lead Counsel on a monthly basis or on such other schedule as may be established.  Counsel who anticipate seeking an award of attorneys' fees from the Court shall keep daily records of their time spent and expenses incurred in connection with this litigation, indicating with specificity the hours, location, and particular activity.  Failure to maintain and timely submit such records will be considered in any fee allocation and will be grounds for denying court-awarded attorneys' fees. Insufficient description of hourly activity will likewise be so considered.

## X.    Coordination of Pleadings, Motions, and Other Papers

Defendants shall effect service of papers on plaintiffs by serving a copy of the same on the members of Plaintiffs' Co-Lead Counsel by fax delivery and by overnight mail. Plaintiffs shall effect service of papers on defendants by serving a copy of the same on defendants' counsel and defendants' local counsel by fax delivery and by overnight mail.

## XI.    Communication Among Counsel

The Court recognizes that cooperation by and among plaintiffs' counsel and by and among defendants' counsel is essential for the orderly and expeditious conduct of this litigation. The communication of information among and between plaintiffs' counsel, or among and between defendants' counsel, shall not be deemed a waiver of the attorney-client privilege or the protection afforded work product to the extent that such communications fall within the ambit of the attorney-client privilege, the work product doctrine and/or the common interest doctrine and the cooperative efforts contemplated above shall not in any way be used against any plaintiff by any defendant or against any defendant by any plaintiff. Nothing contained in this provision shall be construed to limit the rights of any party or counsel to assert the attorney-client privilege, the work product doctrine or the common interest doctrine.

By the Court

_____

The Honorable David H. Coar
United States District Judge

July 29, 2003

3722v3

7

MDL No. 1516

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| IN RE POLYESTER STAPLE ANTITRUST LITIGATION | ) ) ) ) ) ) | **PRETRIAL CASE MANAGEMENT & SCHEDULING ORDER**<br><br>**MDL DOCKET NO: 3:03CV1516**<br>**ALL CASES** |

**THIS MATTER** comes before the Court on its own motion, and following the Initial Pretrial Conference held on June 9, 2003.

In the Court's Practice & Procedure Order issued May 20, 2003, the litigants were directed to participate in an Initial Attorney's Conference ("IAC") and submit certification of the same to the Court by June 5, 2003. (PPO, ¶3a) The parties were also encouraged to submit a joint statement of relevant facts and disputed issues, in addition to proposals regarding the organization of Plaintiff's counsel. (PPO, ¶3e) Any suggestions for the initial pretrial conference agenda were welcomed and the parties were required to present an updated list of attorneys for purposes of service prior to the pretrial conference. (PPO, ¶3f) It was the Court's hope that consensus could be reached on these matters. However, in large part, that was not accomplished. For that reason, without further delay, the undersigned appointed liaison and lead counsel for non-class and class Plaintiffs, proposed a tentative schedule, and allowed the appointed leadership an opportunity to reconsider various scheduling matters prior to issuance of the instant Pretrial Case Management & Scheduling Order. Submissions were received by noon on Wednesday, June 11, 2003.[1] The Court also provided an opportunity for the U.S. Department of Justice

---

[1] Defendant Hoechst Celanese Corporation was provided an additional forty-eight (48) hours to provide input on the scheduling due to problems surrounding service of the Practice &

1



to share concerns with chambers staff regarding how discovery in this case might impact the related ongoing grand jury investigation.  Having considering all of the comments and proposals presented, the Court **ORDERS** the following:

## I. APPOINTMENT OF LIAISON & LEAD COUNSEL

To act on behalf of Plaintiffs, consistent with the responsibilities outlined herein, the Court makes the following appointments:

**A.   Class Plaintiffs:** Attorneys Greg Martin and Larry McDevitt are hereby appointed Co-Liaison Counsel for Class Plaintiffs.

The Court also hereby appoints Co-Lead Counsel for Class Plaintiffs as follows: 1) Paul F. Bennett, Gold, Bennett, Cera & Sidener, LLP, San Francisco, CA; 2) Michael D. Hausfeld, Cohen, Milstein, Hausfeld, & Toll, PLLC, Washington, DC; 3) Samuel D. Heins, Heins, Mills & Olson, PLC, Minneapolis, MN; and 4) Steven A. Asher, Fox-Rothschild, LLP, Philadelphia, PA.

On the recommendation of Class Plaintiffs, an Executive Committee will be formed to assist Co-Lead Counsel.  The Executive Committee will consist of three (3) members and their respective law firms designated by Co-Lead Counsel.

**B.   Non-Class Plaintiffs:**  Attorney Everett Bowman, Robinson, Bradshaw & Hinson, P.A., Charlotte, North Carolina, is appointed Liaison Counsel for Non-Class Plaintiffs.

**C. Defendants:**  The Court is willing to appoint Liaison Counsel for Defendants. Likewise, the Court is willing to appoint Liaison Counsel for those groups of Defendants

---

Procedure Order.

2

that have seemingly aligned themselves according to their respective litigation positions. At a minimum, for the convenience of the parties, as well as the Court, each Defendant should identify one (1) attorney and respective law firm to accept service for that Defendant.  In other words, if appointment of Liaison Counsel for all Defendants is not appropriate, each Defendant should identify its own Liaison Counsel.

Defendants shall identify Liaison Counsel for all Defendants, and / or Liaison Counsel for each Defendant (or group of Defendants), on or before **June 27, 2003**. Motions and briefs are not necessary.

**D.  Role Of Liaison Counsel:** All Liaison Counsel are responsible for receiving orders and notices from the Court on behalf of all parties within their respective liaison groups and shall be responsible for the preparation and transmittal of copies of such orders and notices to the parties in their liaison groups.  Panel Rule 5.2(e).  Liaison counsel shall be required to maintain complete files with copies of all documents served upon them and shall make such files available to parties within their liaison groups upon request (except such documents as may be available at a document repository).  Liaison counsel are also authorized to receive orders and notices from the Judicial Panel on Multidistrict Litigation pursuant to Rule 8(e) of the Panel's Rules of Procedure on behalf of all parties within their respective liaison groups and shall be responsible for the preparation and transmittal of copies of such orders and notices to the parties in their liaison groups.

**E.  Role Of Lead Counsel:** Lead Counsel are charged with the responsibility of formulating and presenting positions on substantive and procedural issues during the litigation.  Only after consultation with other counsel, Lead Counsel will act for the group personally, or will be responsible for coordinating the efforts of others, in presenting written

3

and oral arguments and suggestions to the Court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, entering into stipulations with opposing counsel, conducting settlement negotiations (but not entering binding agreements except to the extent expressly authorized), employing experts, arranging for support services, and seeing that schedules are met. In addition, Lead Counsel shall maintain adequate time and disbursement records describing services rendered as Lead Counsel, as well as monitor the activities of co-counsel to ensure that unnecessary expenditures of time and funds are avoided.

**F. Role Of Executive Committee:** The other members of Plaintiffs' Executive Committee shall, from time to time, consult with Plaintiffs' Lead and Liaison Counsel in coordinating the pretrial activities and in planning for trial.

**G. Privileges Preserved:** No communication among Plaintiffs' counsel or among Defendants' counsel shall be taken as a waiver of any privilege or protection to which they would otherwise be entitled.

## II. AMENDED CLASS COMPLAINT

**A. Consolidated Class Action Complaint:** The Class Action Plaintiffs shall submit an Amended Class Complaint on or before **July 18, 2003**.

**B. Answer / Responsive Pleading:** Defendants will have until **September 5, 2003** in order to file an Answer or other responsive pleading to the Amended Class Complaint.

4

### III. DISCOVERY

**A.   Commencement:** The stay of all discovery in this matter is lifted and commencement of document discovery may begin immediately, or as soon as practicable given the deadlines set out below. <u>With the exception of depositions limited to inquiry regarding certification issues</u>, in light of the related criminal proceedings, *United States v. Robert Bradley Dutton*, *3:02CR220*, the deposition phase of discovery will be deferred pending the conclusion of the criminal trial, which is calendared for September 2003. After the *Dutton* trial, and at the request of any party wishing to notice a deposition, the Court will reevaluate the need for continuing to postpone the deposition phase of discovery.

**B. Rule 26 Initial Disclosures:** Those parties who have not already done so shall comply with the requirements of Rule 26(a)(1) on or before **June 30, 2003**.

**C. Production Of Documents Already Provided To U.S. DOJ:** Defendants shall make available to Plaintiffs, preferably by way of a document repository located within the Western District of North Carolina, all documents already provided to the Government on or before **September 5, 2003**. In the interim, the parties are expected to negotiate, execute and implement a protective order addressing Defendants' concerns for the confidentiality of any trade secret, or other confidential research, development or commercial information contained in the documents. If production occurs prior to the execution of an appropriate protective order, Plaintiffs are cautioned that document review is for "Attorneys' Eyes Only."

**D. Limits On Discovery:** Discovery in this case is limited as follows: Each party may propound no more than **twenty-five (25)** interrogatories to any other party, including

5

discrete subparts, and no more than **forty (40)** requests for admission to any other party. Plaintiffs (non-class and class) and Defendants will be limited to an aggregate maximum of **seventy-five (75)** depositions of non-expert witnesses.

　　**E. Responses To Interrogatories & Requests For Admission:**  Every response to an interrogatory or request for admission, and every objection thereto, shall be preceded by the original number and complete text of the corresponding interrogatory or request for admission.

　　**F.   Maintenance Of Discovery Materials:** Pursuant to FED. R. CIV. P. 5(d), discovery materials are NOT to be filed unless specifically ordered by the Court, or to the extent offered in connection with a motion. The parties are responsible for the preservation of any and all discovery materials they may generate.

　　**G.   Protective Orders:** Any objections made to discovery requests shall be accompanied by a draft proposed protective order if such order is, or will be, requested. When counsel submit proposed protective orders, they shall include a provision leaving the ultimate disposition of protected materials subject to a final order of the court on the completion of litigation.

　　**H. Goal For Completion:** All discovery shall be complete no later than **June 30, 2004**. Counsel are directed to initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery completion deadline so as to comply with this Order.  (Note also the requirement set forth within "VIII, B.")  Discovery requests that seek responses or schedule depositions after the discovery completion deadline are not enforceable except by order of the court for good cause shown. The parties may

6

consent to extensions of the discovery completion deadline so long as any such extension expires not later than ten (10) days prior to scheduled trial time. If a party requests an extension of time to respond to discovery requests or to extend the discovery deadline, the result of consultation with opposing counsel must be stated in the motion.

I. **Expert Witnesses:** The Plaintiff shall designate its experts and provide initial expert disclosures pursuant to Rule 26(a)(2) by **July 31, 2004**. Defendant shall designate experts and provide initial expert disclosures by **August 30, 2004**. Plaintiff will have until **September 15, 2004** to designate any rebuttal experts and provide expert disclosures. Supplements per Rule 26(e) shall be due by within thirty (30) days after obtaining applicable information. Depositions of expert witnesses shall be completed by **October 31, 2004**.

J. **Approach To Discovery Disputes:** The Court's preference is to attempt to resolve any discovery disputes informally, reserving the right to require written motions and briefs on any matter that is not amenable to this type of informal resolution. <u>If a written motion and memorandum is required, the memorandum may not exceed twenty (20) pages</u>. It is the Court's intention to utilize the regular status conferences as a mechanism to monitor the discovery process, and / or resolve any dispute. While strongly discouraged, any matter requiring the Court's immediate attention, such as an objection during the course of a deposition in a location outside of this district, may be addressed via phone conference.

7

## IV. CLASS CERTIFICATION

**A. Briefing Schedule:** Class Plaintiffs shall file their class certification motion on or before **August 29, 2003**. Defendants' response or opposition shall be due on or before **December 19, 2003**. Class Plaintiffs' reply, if necessary, will be due on or before **January 16, 2004.** It is anticipated that a hearing will be held during the last week of February 2004 (between February 23rd and 27th).

**B. Discovery:** Discovery for purposes of class certification will not be bifurcated except to the extent that the Court will allow depositions limited solely to certification issues to occur prior to resolution of the related criminal proceedings. (See also "VIII, B.")

## V. PROPOSED SETTLEMENT WITH "DAK" DEFENDANTS

**A. Briefing Schedule:**   Motion for Preliminary Approval of the settlement with the DAK Defendants shall be filed on or before **June 25, 2003**.

**B. Hearing:** A hearing will be held on that motion on **August 20, 2003 at 2:00 PM.**

## VI. MEDIATION / ALTERNATIVE DISPUTE RESOLUTION

**A.** The parties will be expected to participate in mediation or some other form of alternative dispute resolution following the completion of discovery. If mediation appears appropriate prior to the completion of discovery, the parties should advise the Court immediately and initiate the process.

## VII. MOTIONS PRACTICE

**A. Motions Deadlines:** Dispositive motions shall be filed no later than **November 30, 2004**. Motions in limine are due on or before **December 15, 2004**. Parties may not extend these deadlines by agreement and stipulated extensions of the completion of

8

discovery do not extend the Motions Deadlines.

**B. Memoranda In Support Of Motions:** Every motion shall include, or be accompanied by, a brief written statement of the facts, a statement of the law, including citations of authority and the grounds on which the motion is based. Motions not in compliance with this order are subject to summary denial.

**C. Briefing Schedules:**   Responses to any dispositive motion shall be filed and served within thirty (30) days of service of the motion.  Replies, if any, in support of any dispositive motion may be filed and served within twenty (20) days of service of the response. (The first 2 paragraphs of Local Rule 7.1(B) will not apply to dispositive motions.)

Responses to all other motions, if any, must be filed within fourteen (14) days of the date on which the motion is filed. Replies to responses, if any, must be filed within seven (7) days of the date on which the response is filed.

Pursuant to Rule 6(e) of the Rules, when a party serves a motion or response by mail, the respondent shall have an additional three (3) days to file a response or reply.

**D. Extensions Of Time:** If counsel need more than fourteen (14) days to file a response or seven (7) days to file a reply, a motion for extension of time shall be filed, accompanied by a proposed order. The moving party must show consultation with opposing counsel regarding the requested extension and must notify the court of the views of opposing counsel on the request. If a party fails to make the requisite showing, the court may summarily deny the request for extension.

**E. Motions To Compel:** A motion to compel must include a statement by the movant that the parties have conferred in good faith in an attempt to resolve the dispute

9

and are unable to do so.  Consistent with the spirit, purpose, and explicit directives of the Federal Rules of Civil Procedure and the Local Rules of the Western District of North Carolina, the Court expects all parties (and counsel) to attempt in good faith to resolve discovery disputes without the necessity of court intervention.

## VIII.  REMAND / TRIAL

**A. Remand:**  All cases to be remanded to the transferor district shall be ready for remand by **March 30, 2005**.

**B. Trial:**  As for cases that were initiated in the Western District of North Carolina, and will remain in this district for trial, a separate order will issue at the appropriate time identifying deadlines for submission of pretrial filings such as trial briefs, jury instructions, exhibit and witness lists, and the like.  Consolidation of any remaining cases for purposes of trial will be considered at a future date.  Trial(s) in this district are tentatively scheduled to be heard during the **March 2005** term.

## IX. STATUS CONFERENCES

**A.  Status Reports Preceding Conferences:**  The Court will strive to conduct regular status conferences with Plaintiffs' Liaison and Lead Counsel, and Defendants' counsel.  At least three (3) days prior to each conference, the parties shall jointly file with the Court a concise summary of the topics to be discussed during the conference.  The first status conference is scheduled for **August 8, 2003 at 2:00 PM**.  The Court will not issue any other notice or scheduling order reminding the parties of this date.

**B. Location:**  Unless otherwise notified, all status conferences will be held in the Jury Room adjacent to Courtroom #2, which is located on the second floor almost directly

across the hall from Judge Voorhees' Chambers.  All other interested counsel or parties are welcome to attend.  However, the Court trusts that Liaison and Lead Counsel can adequately represent the concerns of the parties and the time provided for the conferences will be allotted accordingly.

## X. TAG-ALONG ACTIONS

**A. Case Management & Scheduling Order:** The terms of this Case Management & Scheduling Order shall apply automatically to those tag-along actions identified by the Court and automatically consolidated for pretrial proceedings as set forth in the Court's Order dated June 16, 2003. (Copy Attached)

**B. Access To Discovery:**  At any point during this litigation, discovery already taken shall be made available to tag-along parties.

**B. Rulings On Common Issues:** Rulings on common issues shall be deemed to be made in tag-along actions without the need for separate motions and orders.

## XI. COORDINATION WITH OTHER LITIGATION

**A. Related State Court Civil Actions:**  Plaintiffs' Liaison and Lead Counsel, Representative Counsel for Defendants, and all counsel appearing for Plaintiffs and Defendants in this litigation shall attempt to coordinate the conduct of this litigation with all other litigation arising out of the alleged conspiracy to violate federal and state antitrust laws by manufacturers of polyester staple.

**B. Related Federal Criminal Proceedings:**  The Antitrust Division of the U.S. Department of Justice shall be notified by all parties of their intention to depose individuals or corporate representatives on the merits of this litigation.  The DOJ also requests to be

11

notified of depositions that deal with class certification. The parties should serve the DOJ with Deposition Notices at least seven (7) days in advance of the designated deposition date at the following address:

> Mitchell Chitwood
> Antitrust Division
> U.S. Department of Justice
> Thanksgiving Tower
> 1601 Elm Street
> Dallas, TX  75201-4717

**C. Application Of Discovery Deadlines:** The deadlines imposed herein shall <u>not</u> apply where witnesses or parties assert Fifth Amendment rights. Issues surrounding Fifth Amendment protections will necessarily need to be considered on a case-by-case basis.

## XII. SANCTIONS FOR FAILURE TO COMPLY

Failure to comply with any of the provisions of this Order which causes added delay or expense to the Court may result in the imposition of sanctions as provided by the Federal Rules of Civil Procedure ("the Rules") or pursuant to the Court's inherent powers.

## XIII. SERVICE OF ORDER

The Clerk of Court is directed to send a copy of this Pretrial Case Management & Scheduling Order to Liaison Counsel appointed for non-class and class Plaintiffs, as well as each attorney identified as counsel for one or more of the Defendants, Mitchell Chitwood, U.S. DOJ Antitrust Division, and the Clerk of the Panel.

**THIS** the 16th day of June, 2003.

**RICHARD L. VOORHEES**
**UNITED STATES DISTRICT COURT JUDGE**

MDL No. 1486

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| In Re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | MASTER FILE NO.: M-02-1486 PJH |
|  | [~~PROPOSED~~] PRETRIAL ORDER NO. 2 |
| This Document Relates To All Actions |  |

WHEREAS, various actions by direct purchasers of dynamic random access memory ("DRAM") were either filed in or transferred to this court by the Judicial Panel On Multidistrict Litigation (collectively the "Direct Purchaser Actions"); and

WHEREAS, the Court by order dated January 30, 2003, entered Pretrial Order No. 1 governing case management and the organization of plaintiffs' counsel in the Direct Purchaser Actions; and

WHEREAS, the Court by order filed May 2, 2003, adopted an amended Pretrial Order No. 1 governing case management and the organization of plaintiffs' counsel in the Direct Purchaser Actions; and

WHEREAS, various actions by indirect purchasers of DRAM were either filed in or transferred to this court by the Judicial Panel On Multidistrict Litigation (collectively the "Indirect Purchaser Actions"); and

WHEREAS, Plaintiffs in certain of the Indirect Purchaser Actions filed Applications for Relief from Amended Pretrial Order No. 1 of May 2, 2003 ("PTO 1"), and for

-1-

1    appointment of lead counsel in the Indirect Purchaser Actions separate from the co-lead

2    counsel appointed in the Direct Purchaser Actions; and

3          WHEREAS, this Court's July 19, 2005 Case Management Order granted these

4    requests for relief from PTO 1 and determined that the indirect purchaser plaintiffs "shall

5    have . . . [their] own . . . leadership structure separate from . . . the direct purchaser group;"

6    and

7          WHEREAS, certain indirect purchaser plaintiffs submitted alternative proposed

8    organizational structures to the Court and the Court issued its August 16, 2005 Order re

9    Indirect Purchaser Plaintiffs, which, *inter alia*, directed the parties to prepare a proposed

10   Pretrial Order No. 2 which incorporates the provisions of amended Pretrial Order No. 1

11   regarding the Direct Purchaser Plaintiffs, as well as a proposed organization of the Indirect

12   Purchaser Plaintiffs in accordance the August 16, 2005 Order;

13         NOW, THEREFORE, it is hereby **ORDERED** that:

14              <u>**CONSOLIDATION OF RELATED ACTIONS**</u>

15         1.    The clerk shall establish and maintain a Master Docket and Master File for this

16   proceeding under the caption "*In re Dynamic Random Access Memory (DRAM) Antitrust*

17   *Litigation*," Master File No. M-02-1486 PJH.    All orders, pleadings, motions and other

18   documents should, when filed and docketed in the Master File, be deemed filed and docketed

19   in each individual case.

20         2.    The terms of this Order shall apply to actions later instituted in, removed to, or

21   transferred to this Court that involve the same or substantially similar issues of law and fact

22   (collectively, "the Consolidated Actions"), subject to the following procedures:

23              a.    When such a case is filed in, removed to, or transferred to this Court,

24                    the Clerk of the Court shall:

25                    (i)    place a copy of this Order in the separate file for such action;

26                    (ii)   mail a copy of this Order to counsel for plaintiff(s) in the newly

27                           filed or transferred action and to any defendant(s) in the newly

28                           filed or transferred action; and

           (iii)     make an appropriate entry on the Master Docket for the Consolidated Action.

        b.     Each new case that arises out of the subject matter of the Consolidated Actions, which is filed in this Court or transferred to this Court, shall be consolidated with the Consolidated Actions and this Order shall apply to that action, unless a party in such newly-filed or transferred action objects to consolidation, in the manner provided for, or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief, and this Court deems it appropriate to grant such application.

3.     Counsel shall call to the attention of the Court and the Clerk the filing or transfer of any case which might properly be consolidated with the Consolidated Actions. Mailing or other delivery of a copy of this Order by Defendants' counsel or Plaintiffs' counsel, as appropriate, to the counsel in any newly filed or transferred actions shall constitute valid notice for purposes of establishing its applicability to such action in accordance with this Order.

### FILING AND DOCKETING PROCEDURES

4.     Every pleading hereafter filed in the Consolidation Action shall bear the following caption:

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA )<br>)<br>)<br>) | **MASTER FILE NO.:**<br>**M-02-1486 PJH** |
| In Re DYNAMIC RANDOM ACCESS MEMORY<br>(DRAM) ANTITRUST LITIGATION )<br>)<br>)<br>) | |
| THIS DOCUMENT RELATES TO:<br><br>  [FILL IN AS APPROPRIATE] )<br>)<br>)<br>) | |

5.     When a pleading or paper is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above.  When a pleading or paper is intended to be applicable only to all Direct Purchaser Actions, the words "All Direct Purchaser Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above.  When a pleading or paper is intended to be applicable only to all Indirect Purchaser Actions, the words "All Indirect Purchaser Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above.  When a pleading or paper is intended to be applicable only to some, but not all, of the Consolidated Actions, the Direct Purchaser Actions or the Indirect Purchaser Actions, this Court's docket number for each action to which the pleading or paper is intended to be applicable and the last name of the first named plaintiff(s) in said action shall appear immediately after the words "This Document Relates To:" in the caption described above, i.e., "Civil Action No. _____, [Name of plaintiff(s)]."

6.     When a pleading or paper is filed and the caption, pursuant to ¶4, shows that it is to be applicable to "All Actions," to "All Direct Purchaser Actions" or to "All Indirect Purchaser Actions," the Clerk shall file such pleading or paper in the Master File and note such filing in the Master Docket, with an entry to reflect that the filing relates to "All Actions," "All Direct Purchaser Actions" or "All Indirect Purchaser Actions."  No further copies need be filed or other docket entries made.

7.     When a pleading or paper is filed and the caption, pursuant to ¶4, shows that it is applicable to fewer than All Actions, All Direct Purchaser Actions or All Indirect Purchaser Actions, the Clerk shall file such pleading or other paper only in the Master File but nonetheless shall note such filing in both the Master Docket and in the docket of each such action.

8.     At the time of filing of original papers with the Clerk's Office, the parties will submit ONE additional conformed copy of each document designated "PJH Chambers Copy."

## ORGANIZATION OF DIRECT PURCHASER PLAINTIFFS' COUNSEL

9.      The organizational structure of the Direct Purchaser Plaintiffs' counsel previously established by Amended Pretrial Order No. 1 and reaffirmed by this Order shall bind the Direct Purchaser Plaintiffs' counsel in the Consolidated Direct Purchaser Actions, including any action subsequently governed by this Order.

10.     The following law firms are designated as Co-Lead Counsel for the Direct Purchaser Plaintiffs:  Saveri & Saveri, Inc.; Wolf Haldenstein Adler Freeman & Herz, LLC; and Hagens Berman LLP.

11.     The firm of Berman DeValerio Pease Tabacco Burt & Pucillo is designated as the Direct Purchaser Plaintiffs' Liaison Counsel.

12.     The law firms of Berman DeValerio Pease Tabacco Burt & Pucillo; Cotchett, Pitre, Simon & McCarthy; Lovell & Stewart LLP; Milberg Weiss Bershad Hynes & Lerach, LLP; Much Shelist Freed Denenberg Ament & Rubenstein, P.C.; and Spector Roseman & Kodroff. P.C. are hereby designated as members of the Direct Purchaser Plaintiffs' Executive Committee.

13.     The Direct Purchaser Plaintiffs' Co-Lead Counsel shall assume and exercise the following powers and responsibilities:

a.      To determine and present in motions, briefs, oral argument or such other fashion as may be appropriate, to present (by a designee) to the Court and opposing parties, the position of all of the Direct Purchaser Plaintiffs as to all matters arising during all pretrial and trial proceedings;

b.      To designate attorneys to act as spokespersons at pretrial conferences;

c.      To conduct or coordinate discovery on behalf of the Direct Purchaser Plaintiffs consistent with the requirements of the Federal Rules of Civil Procedure, including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

-5-

d.      To designate an attorney to enter into stipulations with opposing counsel necessary for the conduct of the litigation;

e.      To monitor the activities of co-counsel and to implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds by counsel are to be avoided;

f.      To sign any consolidated complaint, motions, briefs, discovery requests or objections, subpoenas or notices on behalf of all Direct Purchaser Plaintiffs or those Direct Purchaser Plaintiffs filing the particular papers;

g.      To conduct all pre-trial, trial and post-trial proceedings on behalf of the Direct Purchaser Plaintiffs;

h.      To employ and consult with experts;

i.      To call meetings of the Direct Purchaser Plaintiffs' counsel when deemed appropriate;

j.      To conduct settlement negotiations with defense counsel on behalf of the Direct Purchaser Plaintiffs and the putative class;

k.      To assure that all the Direct Purchaser Plaintiffs' counsel are kept informed of the progress of this litigation as necessary;

l.      To otherwise coordinate the work of all the Direct Purchaser Plaintiffs' counsel, and perform such other duties as necessary or as authorized by further order of the Court; and

m.      To make all work assignments, including the organization and formation of committees of the Direct Purchaser Plaintiffs' counsel, in such a manner as to promote the orderly and efficient conduct of this litigation and to avoid unnecessary duplication and unproductive efforts for all parties.

[Master File No.: M-02-1486 PJH], [PROPOSED] PRETRIAL ORDER NO. 2

14. The Direct Purchaser Plaintiffs' Executive Committee shall be consulted by Direct Purchaser Plaintiffs' Co-Lead Counsel on substantive issues to assist in the responsible and efficient prosecution of the litigation.

15. The Direct Purchaser Plaintiffs' Co-Lead Counsel and Executive Committee shall together select working groups or committees to further the efficient prosecution of the litigation as is deemed necessary based on their collective judgment and consideration.

16. The Direct Purchaser Plaintiffs' Liaison Counsel shall be the contact between the Direct Purchaser Plaintiffs' counsel and the Court. The Direct Purchaser Plaintiffs' Liaison Counsel shall forward any notices from the Court and report upon any communications from the Court to the Direct Purchaser Plaintiffs' Co-Lead Counsel.

**ORGANIZATION OF INDIRECT PURCHASER PLAINTIFFS' COUNSEL**

17. The organizational structure of the Indirect Purchaser Plaintiffs' counsel established by this Order shall bind the Indirect Purchaser Plaintiffs' counsel in the Consolidated Actions, including any action subsequently governed by this Order.

18. The following law firms are designated as Indirect Purchaser Plaintiffs' Co-Lead Counsel to manage jointly the Indirect Purchaser Actions: Josef D. Cooper and the firm of Cooper & Kirkham, P.C.; David Boies and the firm of Straus & Boies, LLP; Daniel R. Gustafson and the firm of Gustafson Gluek, PLLC; and Daniel J. Mogin and The Mogin Law Firm, P.C.

19. Francis O. Scarpulla and the firm of The Law Offices of Francis O. Scarpulla is designated as Indirect Purchaser Plaintiffs' Liaison Counsel.

20. The law firms of: (1) Gross & Belsky LLP; (2) Zelle Hofmann Voelbel Mason & Gette LLP; (3) The Furth Firm LLP; (4) Green Welling LLP; (5) Trump, Alioto, Trump & Prescott LLP; (6) Finkelstein Thompson & Loughran; (7) Bramson Plutzik Mahler & Birkhaeuser LLP; (8) DurretteBradshaw PLC; (9) Guerrieri, Edmond, Clayman & Bartos, PC; (10) Hulett Harper Stewart, LLP; (11) Bonnett, Fairbourn, Friedman & Balint, PC; (12) LaFollette Godfrey & Kahn, SC; (13) Freedman Boyd Daniels Hollander & Goldberg, PA; (14) Frankovitch, Anetakis, Colantonio & Simon; (15) Steyer Lowenthal Boodrookas Alvarez

-7-

1  & Smith, LLP; (16) Krause Kalfayan Benink & Slavens; (17) Gilman & Pastor, LLP; and (18)

2  ~~HALLISEY AND JOHNSON~~ are hereby designated as members of the

3  Indirect Purchaser Plaintiffs' Executive Committee.

4       21.    Indirect Purchaser Plaintiffs' Co-Lead Counsel shall assume and exercise

5  jointly the following powers and responsibilities:

6      a.    To determine and to present in motions, briefs, oral argument or such

7      other fashion as may be appropriate, to present (either personally or by

8      designee) to the Court and opposing parties, the position of all of the

9      Indirect Purchaser Plaintiffs as to all matters arising during all pretrial

10      and trial proceedings;

11      b.    To designate attorneys to act as spokespersons at pretrial conferences;

12      c.    To conduct or coordinate discovery on behalf of the Indirect Purchaser

13      Plaintiffs consistent with the Federal Rules of Civil Procedure,

14      including the preparation of joint interrogatories and requests for

15      production of documents and the examination of witnesses in

16      depositions;

17      d.    To designate an attorney to enter into stipulations with opposing

18      counsel necessary for the conduct of the litigation;

19      e.    To monitor the activities of co-counsel and to implement procedures to

20      ensure that schedules are met and unnecessary expenditures of time and

21      funds by counsel are to be avoided;

22      f.    To sign any consolidated complaint, motions, briefs, discovery requests

23      or objections, subpoenas or notices on behalf of all Indirect Purchaser

24      Plaintiffs or those plaintiffs filing the particular papers;

25      g.    To conduct all pre-trial, trial and post-trial proceedings on behalf of all

26      Indirect Purchaser Plaintiffs;

27      h.    To employ and consult with experts;

28

[Master File No.: M-02-1486 PJH], [PROPOSED] PRETRIAL ORDER NO. 2

i.     To call meetings of Indirect Purchaser Plaintiffs' counsel when appropriate;

j.     To conduct settlement discussions with defense counsel on behalf of the Indirect Purchaser Plaintiffs and the putative class;

k.     To assure that all Indirect Purchaser Plaintiffs' counsel are kept informed of the progress of this litigation as necessary;

l.     To make all work assignments to Indirect Purchaser Plaintiffs' counsel, including the organization and formation of, and the appointment of one or more counsel to chair, all committees of Indirect Purchaser Plaintiffs' counsel, in such a manner as to promote the orderly and efficient prosecution of this litigation and to avoid unnecessary duplication and unproductive efforts for all parties;

m.     To ensure that work assignments to all Indirect Purchaser Plaintiffs' Counsel are made in the best interests of the Indirect Purchaser Plaintiffs and the proposed class and are made on the basis of the qualifications and expertise of the persons assigned particular tasks or responsibilities, counsel's knowledge of the law, facts and issues, efficiency and cost-effectiveness;

n.     To assess Indirect Purchaser Plaintiffs' Counsel common litigation costs and to collect all assessments on a regular basis;

o.     To collect time, lodestar and expense reports from each Indirect Purchaser Plaintiffs' Counsel, including paralegals and any other staff members whose time is expected to be included in any fee petition;

p.     To ensure that work assignments are not given to any Indirect Purchaser Plaintiffs' Counsel firm that has not promptly submitted its time and expense records or paid its assessments;

q.     To coordinate and communicate with Defense Counsel;

[Master File No.: M-02-1486 PJH], [PROPOSED] PRETRIAL ORDER NO. 2

r.      To coordinate and communicate with Direct Purchaser Plaintiffs' Co-
Lead Counsel in the Direct Purchaser Actions;

s.      To coordinate and communicate with Plaintiffs' Counsel in Indirect
Purchaser Actions which remain in state courts as to discovery and
other related issues; and

t.      To otherwise coordinate the work of all Indirect Purchaser Plaintiffs'
counsel, and perform such other duties as necessary or as authorized by
further order of the Court.

22.    The Indirect Purchaser Plaintiffs' Executive Committee shall be consulted by
the Indirect Purchaser Plaintiffs' Co-Lead Counsel and assist Co-Lead Counsel in the
responsible and efficient prosecution of the indirect purchaser litigation.

23.    Indirect Purchaser Plaintiffs' Liaison Counsel shall be the contact between
Indirect Purchaser Plaintiffs' Counsel and the Court. Indirect Purchaser Plaintiffs' Liaison
Counsel shall forward any notices from the Court and report upon any communications from
the Court to Indirect Purchaser Plaintiffs' Co-Lead Counsel.

### MISCELANEOUS HOUSEKEEPING PROVISIONS

24.    Defendants shall effect service of papers on the Direct and Indirect Purchaser
Plaintiffs' Co-Lead Counsel, both Liaison Counsel and the members of both the Direct and
Indirect Purchaser Plaintiffs' Executive Committees, by: (i) e-mail; (ii) overnight mail
service or comparable delivery; (iii) telecopier or (iv) hand delivery. Plaintiffs in the
Consolidated Action shall effect service of papers on defendants by serving a copy of same on
each defendants' counsel by: (i) e-mail; (ii) overnight mail service or comparable delivery;
(iii) telecopier or (iv) hand delivery. When service is accomplished by e-mail or telecopier,
copies of the served papers shall also be delivered by regular mail. The provisions of this
paragraph shall not apply to any papers filed with the Court and subject to the Northern
District of California's CM-ECF policies and procedures.

25. Any attorney representing a Plaintiff in this action, who is a member in good standing of the bar of the highest court of any state, territory or the District of Columbia and who is not a member of the bar of this Court, is admitted *pro hac vice* in the Action.

26. This Pretrial Order No. 2 supersedes Amended Pretrial Order No. 1 of May 2, 2003.

Dated:  September 20 , 2005

_____
Hon. Phyllis J. Hamilton
United States District Judge

[Master File No.:  M-02-1486 PJH], [PROPOSED] PRETRIAL ORDER NO. 2

No. 05-cv-666

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: HYDROGEN PEROXIDE ANTITRUST LITIGATION | : : : : : | CIVIL ACTION NO. 05-666 |
| This Document Relates To: | : : : | MDL DOCKET NO. 1682 |
| INDIRECT-PURCHASER ACTION RESIDUAL-PURCHASER ACTION | : : : | |

ORDER

AND NOW, this 13th day of September, 2005, upon consideration of the residual-purchaser plaintiffs' and indirect-purchaser plaintiffs' motion to appoint interim co-lead counsel (docket entry # 84), and the unanimous consent of all plaintiffs' counsel with residual-purchaser and indirect-purchaser cases pending in this district, under Fed. R. Civ. P. 23 (g)(2)(A), it is hereby ORDERED that:

1.    The motion is GRANTED;

2.    We APPOINT Francis O. Scarpulla of the Law Offices of Francis O. Scarpulla as Interim Lead Counsel for plaintiffs in the Indirect-Purchaser Action;

3.    Mr. Scarpulla shall DIRECT this litigation on behalf of indirect-purchaser plaintiffs in Alabama, Arizona, California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Carolina, South

1

Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia;

4. Mr. Scarpulla shall UNDERTAKE the following responsibilities with respect to the prosecution of this litigation on behalf of indirect-purchaser plaintiffs:

a. To brief and argue motions and file opposing briefs in proceedings initiated by other parties;

b. To initiate and conduct discovery proceedings;

c. To act as a spokesperson at pretrial conferences;

d. To negotiate with defense counsel with respect to settlement and other matters;

e. To request that the Court approve settlements and fee awards;

f. To call meetings of counsel for plaintiffs in the Indirect-Purchaser Action when appropriate;

g. To delegate all work assignments to counsel for plaintiffs in the Indirect-Purchaser Action to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

h. To conduct trial and post-trial proceedings;

i. To consult with and employ experts;

j. To perform such other duties and undertake such other responsibilities as he deems necessary or desirable;

k. To coordinate and communicate with counsel in

related individual cases with respect to matters addressed in
this paragraph;

        l.   To coordinate and communicate with
plaintiffs' counsel in the Direct-Purchaser Action and Residual-
Purchaser Action; and

        m.   To coordinate and communicate with defense
counsel with respect to matters addressed in this paragraph;

    5.   Mr. Scarpulla shall SUBMIT all motions, discovery
requests, and other documents in the Indirect-Purchaser Action;

    6.   Mr. Scarpulla must AUTHORIZE in advance all work
performed by any plaintiff attorney in the Indirect-Purchaser
Action;

    7.   All plaintiffs' counsel in the Indirect-Purchaser
Action shall SUBMIT to Mr. Scarpulla's designee a record of the
time expended to date in the form set forth by Mr. Scarpulla on a
monthly basis or on such other schedule as may be established,
and we may consider any failure to maintain and submit such
records (on a timely basis) as grounds for denying court-awarded
attorneys' fees;

    8.   We APPOINT Gordon Ball of Ball & Scott as Interim
Lead Counsel for private, i.e., non-public, plaintiffs in the
Residual-Purchaser Action;

    9.   Mr. Ball shall DIRECT this litigation on behalf of
private residual-purchaser plaintiffs in Alabama, Arizona,
California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts,
Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico,

New York, North Carolina, North Dakota, South Carolina, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia;

      10.  We APPOINT William H. Parish of Parish & Small, PC, as Interim Lead Counsel for all public plaintiffs in the Residual-Purchaser Action;

      11.  Mr. Parish shall DIRECT this litigation on behalf of public residual-purchaser plaintiffs in Alabama, Arizona, California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Carolina, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia;

      12.  Mr. Ball and Mr. Parish shall UNDERTAKE the following responsibilities with respect to the prosecution of this litigation on behalf of residual-purchaser plaintiffs:

      a.  To brief and argue motions and file opposing briefs in proceedings initiated by other parties;

      b.  To initiate and conduct discovery proceedings;

      c.  To act as a spokesperson at pretrial conferences;

      d.  To negotiate with defense counsel with respect to settlement and other matters;

      e.  To request that the Court approve settlements and fee awards;

      f.   To call meetings of counsel for plaintiffs in the Residual-Purchaser Action when appropriate;

      g.   To delegate all work assignments to counsel for plaintiffs in the Residual-Purchaser Action to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

      h.   To conduct trial and post-trial proceedings;

      i.   To consult with and employ experts;

      j.   To perform such other duties and undertake such other responsibilities as they deem necessary or desirable;

      k.   To coordinate and communicate with counsel in related individual cases with respect to matters addressed in this paragraph;

      l.   To coordinate and communicate with plaintiffs' counsel in the Direct-Purchaser Action and Indirect-Purchaser Action; and

      m.   To coordinate and communicate with defense counsel with respect to matters addressed in this paragraph.

12.   Mr. Ball or Mr. Parish shall SUBMIT all motions, discovery requests, and other documents in the Residual-Purchaser Action;

13.   Mr. Ball or Mr. Parish must AUTHORIZE in advance all work performed by any plaintiff attorney in the Residual-Purchaser Action; and

14.   All plaintiffs' counsel in the Residual-Purchaser Action shall SUBMIT to Mr. Ball's and Mr. Parish's designee a

record of the time expended to date in the form set forth by Mr.
Ball and Mr. Parish on a monthly basis or on such other schedule
as may be established, and we may consider any failure to
maintain and submit such records (on a timely basis) as grounds
for denying court-awarded attorneys' fees.

                              BY THE COURT:



                              /s/ Stewart Dalzell, J.

MDL No. 2007

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10<br><br>11<br><br>12<br><br>13<br><br>14<br><br>15<br><br>16<br><br>17<br><br>18<br><br>19<br><br>20<br><br>21<br><br>22<br><br>23 | DYNACORN AUTOBODY PARTS, INC., a<br>California corporation, and all others similarly<br>situated,<br><br>            0Plaintiff,<br><br>v.<br><br>GENERA CORPORATION, a California<br>corporation; MAXZONE VEHICLE<br>LIGHTING CORP., a California corporation;<br>E-LITE AUTOMOTIVE, INC., a California<br>corporation, TYC BROTHER INDUSTRIAL<br>CO., LTD., a Taiwanese corporation; DEPO<br>AUTO PARTS INDUSTRIAL CO., LTD., a<br>Taiwanese corporation and EAGLE EYES<br>TRAFFIC INDUSTRIAL CO., LTD., a<br>Taiwanese corporation,<br><br>           Defendants. | Case No. **09 MDL 2007**<br><br>CV08-1158 GW (PJWx)<br><br>**ORDER APPOINTING PLAINTIFFS'<br>INTERIM LEAD COUNSEL AND<br>SCHEDULE FOR FILING<br>CONSOLIDATED COMPLAINT**<br><br>**RELATED CASES:**<br><br>**CV08-07204 GW**<br><br>**CV08-07634 GW**<br><br>**CV08-8470 GW**<br><br>**CV09-0982 GW**<br><br>**CV09-0967 JFW (Notice of Related Case<br>          filed on 2/23/09)**<br><br>**Date:      March 9, 2009<br>Time:      8:30 a.m.<br>Courtroom: 10<br>Judge:     Hon. George Wu** |

24

25

26          On March 9, 2009, this Court heard Plaintiffs' Motion for Appointment of Interim Class

27  Counsel and Scheduling Order and,

28          Good cause appearing therefor, the Court orders as follows:

1

CV08-1158 GW (PJWx)

**Organization Of Direct Purchaser Plaintiffs' Counsel**

1.     The organizational structure of direct purchaser plaintiffs' counsel established by this Order shall bind plaintiffs' and defendants' counsel in the related actions filed by direct purchasers in this Court, namely *Dynacorn Autobody Parts v. Genera Corporation, et al*, CV08-01158 GW (C.D. Cal.); *Flash Sales Inc. v. Genera Corporation, et al*, CV08-07204 GW (C.D. Cal.); *DJ's Autobody Inc. v. Genera Corporation, et al*, CV08-07634 GW (C.D. Cal.); *Motoring Parts, Int'l v. Genera Corp.*, *et al.,* No. CV09-0967 JFW (C.D. Cal.); *Prevatte Auto Supply Inc. v. Genera Corp., et al.*, No. CV08-8470 GW (C.D. Cal.); *California Customs, Inc. v. Genera Corp., et al.;* No. 09-0982 GW (C.D. Cal.) (the "Related Actions"), including any subsequent action brought by direct purchasers making the same or similar claims filed in or transferred to this Court.

2.     The following attorneys are designated as Interim Co-Lead Counsel for the direct purchaser plaintiffs: Jason S. Hartley of Troutman Sanders, LLP; Bonny Sweeney of Coughlin Stoia Geller Rudman & Robbins, LLP; Michael Lehmann of Hausfeld LLP; and Jay Himes of Labaton Sucharow, LLP (hereinafter referred to as "Direct Purchaser Plaintiffs' Interim Co-Lead Counsel").

3.     Direct Purchaser Plaintiffs' Interim Co-Lead Counsel are authorized to receive orders, notices, correspondence, and telephone calls from the Court on behalf of all plaintiffs in the Related Actions. Any agreements entered into by Direct Purchaser Plaintiffs' Interim Co-Lead Counsel with defendants or their counsel shall be binding on all plaintiffs in the Related Actions. Direct Purchaser Plaintiffs' Interim Co-Lead Counsel shall assume and exercise the following powers and responsibilities:

    a.     To determine and present in pleadings, motions, briefs, oral argument or such other fashion as may be appropriate to the Court and opposing parties, the position of the direct purchaser plaintiffs as to all matters arising during all pretrial and trial proceedings;

    b.     To conduct or coordinate discovery on behalf of direct purchaser

plaintiffs consistent with the requirements of the Federal Rules of Civil Procedure;

  c.  To enter into stipulations with opposing counsel for the conduct of the direct purchaser litigation;

  d.  To supervise and monitor the activities of direct purchaser plaintiffs' counsel and to implement procedures to ensure that unnecessary expenditures of time and funds by counsel are avoided, including collecting monthly fee and expense reports from those counsel;

  e.  To sign all papers filed or submitted on behalf of direct purchaser plaintiffs;

  f.  To conduct all pre-trial, trial and post-trial proceedings on behalf of direct purchaser plaintiffs;

  g.  To employ and consult with experts;

  h.  To call and chair meetings of direct purchaser plaintiffs' counsel when deemed appropriate;

  i.  To be the sole persons authorized to conduct settlement negotiations with defendants on behalf of direct purchaser plaintiffs;

  j.  To designate attorneys to enter into stipulations necessary for the conduct of the litigation with defense counsel and plaintiff's counsel in the individual, non-class action captioned *Sabry Lee, Inc. v. Genera Corporation, et al.*, Case No. CV08-05758 GW PJWx (the "*Sabry Lee* Action"), and in any indirect purchaser actions that are or will be pending in this Court;

  k.  To coordinate with the Department of Justice regarding its criminal investigation;

  l.  To otherwise coordinate the work of all direct purchaser plaintiffs' counsel, and perform such other duties as Direct Purchaser Plaintiffs' Interim Co-Lead Counsel deem necessary or as authorized by further order of the Court; and

  m.  To make all work assignments on behalf of direct purchaser plaintiffs in such a manner as to promote the orderly and efficient conduct of this litigation and to

3

1    avoid unnecessary duplication and expense.

2    **Schedule for Filing Consolidated Amended Complaint**

3        4.    No later than March 16, 2009, plaintiffs shall prepare and file through ECF a

4    single Consolidated Complaint that shall be deemed to supersede the complaints filed by the

5    direct purchasers in each of the Related Actions.

6        IT IS SO ORDERED.

7

Dated:  March 16, 2009

8                                                    _____

9                                                    Hon. George H. Wu
                                                     Judge of the U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                4

MDL No. 1775

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

IN RE

                                    **06-MD-1775**

AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION                    **ALL CASES**

M.D.L. No. 1775

---------------------------------------------------------x

## DECISION AND ORDER

      In accordance with the schedule set forth by the court at a conference on September 11, 2006, four motions for the appointment of interim class counsel have been made. The firms proposed to serve as interim class counsel include (1) a group of six firms to be appointed as an Executive Committee for whom Cohen, Milstein, Hausfeld & Toll P.L.L.C. would serve as chair and as liaison counsel to the court (the "CMHT Group"); (2) two firms who would serve as Co-Lead Counsel, Labaton Sucharow & Rudoff LLP and Lovell Stewart & Halebian, LLP ("Labaton/Lovell"); (3) the firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"); and (4) the firm of Levin Fishbein Sedran & Berman ("Levin Fishbein"). Each applicant has made written submissions, and oral argument concerning the applications was heard on November 8, 2006.

      The appointment of interim class counsel is authorized by Rule 23(g)(2)(A) of the Federal Rules of Civil Procedure. In cases such as this, where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management. *See generally Manual for Complex Litigation (Fourth)* (hereinafter "*Manual*") § 21.11 (2004). Generally such counsel has the responsibility for "protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id*. § 22.11, at 246. No party has voiced any objection to the notion that interim class counsel should be appointed here.

      Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of

interim class counsel before certification. *See, e.g., Parkinson v. Hyundai Motor America*, Dkt. Nos. CV06-345 *etc.*, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006); *Hill v. The Tribune Co.*, Dkt. Nos. 05 C 2602 *etc.*, 2005 WL 3299144, at *3 -4 (N.D. Ill. Oct. 13, 2005). Those factors include the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C). Because this case involves (at least at present) numerous separately pleaded class actions with multiple plaintiffs' counsel, interim class counsel will be serving in a somewhat more expansive role than simply protecting the interests of a putative class. Interim class counsel will also be acting on behalf of other attorneys and those other attorneys' clients in the role of lead counsel or liaison counsel. Thus, other considerations come into play, including among others the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court. *See Manual* § 10.224 (2004). Ultimately, the court's goal is "achieving efficiency and economy without jeopardizing fairness to the parties." *Id.* at 25.

In considering the qualifications of the various attorneys in light of the above factors, the court is satisfied that although some of the applicants have more combined years of experience and have handled more cases, particularly when aggregating the six firms that constitute the CMHT Group, all of the applicants have the necessary experience in handling complex litigation and claims of the type asserted in this action to serve more than adequately as interim class counsel. Similarly, all of the applicants appear to possess a strong command of the applicable law.

The CMHT Group and Labaton/Lovell both assert that the court should consider their efforts at "private ordering," that is, achieving a consensus among the various attorneys as to who should serve as lead counsel. *See generally Manual* § 21.272. In this regard, the CMHT Group asserts that 48 law firms involved in the litigation support their appointment, while Labaton/Lovell asserts that 29 law firms support their appointment. Kaplan Fox and Levin Fishbein predictably discount this selection criterion since the appointment is not supposed to be a popularity contest, and the number of attorneys supporting a given candidacy is not included among the factors set forth in Rule 23(g). Nevertheless, that large numbers of experienced

counsel are satisfied to be represented by these two competing applicants is some measure of the respect they command and the confidence of their peers that they will serve well in the role.

Choosing between the two, however, is problematic. The CMHT Group appears to the court to be too large and therefore runs the risk of both inefficiency and unnecessary expense. *See Manual*, § 10.22 at 25. The CMHT Group also carries baggage which may interfere with the resolution of these actions. The CMHT Group has already negotiated settlements with four of the defendants, and the settlements with three of the defendants contemplate the payment of no damages. Although there is no prohibition on engaging in settlement negotiations before the appointment of interim class counsel, justifiable suspicions arise about the motivations underlying the settlements, particularly where they result in the payment of no money. These suspicions may make the attorneys not part of the Group less inclined to accept the CMHT Group's inevitable recommendations, if they are appointed lead counsel, that the settlements be approved by all class members. In addition, in view of the circumstances in which the settlements were negotiated, appointing the CMHT Group as lead counsel now promotes an appearance that the defendants have influenced the selection of interim class counsel.

Choosing Labaton/Lovell to the exclusion of the CMHT Group has flaws and risks as well. The CMHT Group has clearly been able to accomplish the most thus far in investigating the claims in this action, primarily because it was able to take advantage of the settlement negotiations to obtain information from the settling defendants. The fruit of those efforts would be largely lost if Labaton/Lovell were chosen. Perhaps more importantly, in any situation like this where one of two rivals with substantial constituencies is chosen over the other, there is the likelihood of a lingering rivalry with corrosive effects that may hinder the ability of the prevailing group to carry out its role.

Appointing one of the other two applicants to act solely as lead counsel is not the proper resolution either. Although six firms may be too many, given the complexity of the case and the sheer numbers of litigants and counsel involved here, one firm does not appear to be enough to carry out the functions of interim class counsel. Indeed, Mr. Sedran of Levin Fishbein suggests the appointment of four Co-Lead Counsel, a structure that has been chosen by other courts. See Exhibits to Memorandum in Support of Motion for Appointment of Howard J. Sedran As Class Co-Lead Counsel.

The court proposes to adopt such a structure here by appointing one attorney from each of the various applicants to serve as Co-Lead Counsel: Michael Hausfeld of Cohen, Milstein, Hausfeld & Toll P.L.L.C., Barbara Hart of Labaton Sucharow & Rudoff LLP, Robert Kaplan of Kaplan Fox & Kilsheimer LLP, and Howard Sedran of Levin Fishbein Sedran & Berman.  This approach provides each of the two "privately ordered" constituencies, which together encompass the overwhelming majority of the plaintiffs' attorneys in the litigation, with a voice in the conduct of the litigation.  The other two attorneys, each of whom have many years of experience and have served as co-lead counsel in the past with other attorneys in the litigation, will hopefully provide a leavening effect if rivalries between the major constituencies begin to interfere with decisionmaking.

The court is aware that, except for Mr. Sedran, this structure is not one that the appointees have advocated.  Indeed, the CMHT Group expressly opposed such a compromise team on the ground that it would penalize other members of the group's constituency for agreeing to support the Group.  See Memorandum of Law in Support of Motion of Majority Plaintiffs, p. 2 at n.1.  Accordingly, any of the attorneys proposed above who do not wish to serve in the proposed structure shall file their objections and reasons within five days.  The court will enter an appropriate order concerning appointment of interim class counsel and their duties upon the expiration of the five-day period.

SO ORDERED:

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:   Brooklyn, New York
     November 15, 2006

-4-

MDL No. 1768

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: | : |  |
| **METHYL METHACRYLATE (MMA)** | : |  |
| **ANTITRUST LITIGATION** | : | **10-md-1768** |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | |
| **ALL INDIRECT PURCHASER** | : | |
| **ACTIONS** | : | |

## ORDER

**AND NOW**, this 21st day of August, 2006, upon consideration of the Indirect-Purchaser Plaintiffs' Revised Motion to Appoint Interim Co-Lead Counsel (filed in Civil Action 06-469 as Document No. 27), and after a pretrial conference, it is **ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED**, pursuant to Fed. R. Civ. P. 23(g)(2)(A), as follows:

1.     Krishna Narine, Esquire, of the Law Office of Krishna B. Narine and Gordon Ball, Esquire, of Ball & Scott are appointed **Interim Lead Counsel** for plaintiffs in the Indirect Purchaser Actions.

2.     Interim Lead Counsel shall be responsible for the overall conduct of the pretrial proceedings on behalf of the Indirect Purchaser Plaintiffs and shall:

        a.     brief and argue motions and file opposing briefs in proceedings;

        b.     initiate and conduct discovery proceedings consistent with the requirements of the Federal Rules of Civil Procedure;

        c.     act as spokespersons for Indirect Purchaser Plaintiffs at pretrial conferences;

        d.     negotiate and enter stipulations with defense counsel with respect to

Case 2:10-md-02168-TJS Document 2 Filed 08/25/06 Page 2 of 9

all matters involved in this litigation, including discovery and settlement;

       e.      request approval of settlements and fee awards;

       f.      convene meetings of counsel for Indirect Purchaser Plaintiffs;

       g.      delegate tasks to counsel for plaintiffs in the Direct Purchaser Actions to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

       h.      consult with and employ experts;

       i.      coordinate and communicate with Interim Lead Counsel for the Direct Purchaser Plaintiffs with respect to all matters involving this litigation;

       j.      coordinate and communicate with defense counsel with respect to all matters involving this litigation;

       k.      transmit all communications with the court to all counsel; and,

       l.      perform such other duties and undertake such other responsibilities as they deem necessary or desirable to the proper coordination of Indirect Purchaser Plaintiffs' pretrial activities.

       3.      Counsel for Indirect Purchaser Plaintiffs who disagree with Interim Lead Counsel or who have individual or divergent positions may present written and oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their clients as appropriate, provided that in doing so they do not repeat arguments, questions, or actions of Interim Lead Counsel.

       4.      No motion, discovery request, or other pretrial proceeding in this litigation shall be initiated or filed by any Indirect Purchaser Plaintiff except through Interim Lead Counsel.

5.      All work performed by any plaintiffs' counsel in the Indirect Purchaser Actions must be authorized in advance by Interim Lead Counsel.

6.      All Indirect Purchaser Plaintiffs' counsel shall submit to Indirect Purchaser Plaintiffs' Interim Lead Counsel's designee a record of the time expended to date in the form set forth by Indirect Purchaser Plaintiffs' Interim Lead Counsel no later than **September 1, 2006**, and thereafter on a monthly basis. Failure to maintain and timely submit such records shall be considered in any fee allocation and may constitute grounds for denying court-awarded attorneys' fees.

7.      Krishna Narine, Esquire, of the Law Office of Krishna B. Narine, is designated **Liaison Counsel** for Indirect Purchaser Plaintiffs.

8.      Liaison Counsel shall:

(a)      maintain and distribute to counsel and the Court an up-to-date service list;

(b)      receive and distribute Court orders, notices and transmittals from other counsel to counsel for the Indirect Purchaser Plaintiffs;

(c)      maintain and make available to counsel for the Indirect Purchaser Plaintiffs at reasonable hours a complete file of all documents served by or upon each party;

(d)      establish and maintain a document depository; and

(e)      call meetings of counsel for the Indirect Purchaser Plaintiffs for the purposes of coordinating discovery, presentations at pretrial conferences, and other pretrial activities.


  s/ Timothy J. Savage
TIMOTHY J. SAVAGE, J.

No. 08-cv-010929

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD E. HAASE, et al.,

           Plaintiffs,

v.

GUNNALLEN FINANCIAL, INC.,
et al.

           Defendants.

Case No. 08-10927
Honorable Julian Abele Cook, Jr.

ORDER

This case involves a contention by the Plaintiffs, Donald E. Haase[1] et al., that they and the
other members of a purported class[2] were wrongfully and purposefully induced by the Defendants,
GunnAllen Financial, Inc., et al., to invest in "phony limited liability companies" in violation of
then-existing federal and Michigan statutes.

On May 13, 2008, some of these investors, who have been identified herein as the "Repota
Group,"[3] filed a motion in which they seek (1) to be collectively appointed as the lead plaintiffs in

---

[1] Haase is a resident of Oakland County, Michigan who claims to have "invested in
unregistered securities through Defendants' Bluestein, May, and/or their related companies and
entities including Defendants Questar and GunnAllen."

[2] It should be noted that the issue relating to class action certification has neither been
addressed nor determined by the Court. Fed. R. Civ. P. 23(c)(1).

[3] For the purpose of this order, the movant (namely, the "Ropeta Group") consists of the
following persons: Steve Ropeta, Lily Ropeta, Frank Ropeta, Mary Kay Ropeta, Susan Johnson
and William Johnson.

1

this litigation and (2) the approval by the Court of their nomination of the lead counsel (namely, the law firms of Sommers Schwartz, P.C.; J. Thompson & Associates, P.L.C.; Paul L. Nine & Associates, P.C.; and Zimmerman Reed, P.L.L.P.) for the proposed class in accordance with the Private Securities Litigation Reform Act of 1995, ("PSLRA"), 15 U.S.C. § 78u-4.

## I.

On March 14, 2008, the Ropeta Group caused a notice to be published in the *PrimeNewswire*,[4] which was ostensibly designed to inform potential class members of their right to petition the Court for the appointment of a lead plaintiff  Thereafter, the Ropeta Group filed a motion on May 13, 2008, along with "signed and filed certifications" by its members, all of whom expressed a willingness to serve as representative parties on behalf of the proposed class.[5]

In support of this motion, it is the position of the Ropeta Group that its aggregate claims against the Defendants constitute the largest collection of losses by any member of the prospective class; to wit, an amount in excess of $307,159.82 (from an original collective investment of over $462,915.00).[6] The Ropeta Group maintains that its members - like all of the other persons within the purported class - unwittingly purchased unregistered securities in these nonexistent "phony

---

[4]According to the July 30, 2008 version of the *PrimeNewswire* web site, it is "a press release newswire and multimedia service with one of the world's most extensive distribution networks."

[5]On July 3, 2008, two of the Plaintiffs, Donald F. Haase and Douglas K. Haase, proffered their written concurrence with the suggested designation of the Ropeta Group as the lead plaintiffs.

[6]According to the Ropeta Group, the claimed losses were calculated and based on the purchase of interests in the limited liability companies by its members during the suggested class period of February 4, 2003 through February 4, 2008 which represents the maximum period that is allowable under § 13 of the Securities Act, 15 U.S.C. § 77(m), and § 9 of the Exchange Act, 15 U.S.C. § 78(i).

limited liability companies" between February 4, 2003 and February 4, 2008 which, in turn, caused them to sustain damages. Turning to the request for the appointment of its nominee law firms as the lead counsel, the Ropeta Group submits that the collective experience of these attorneys "in successfully handling securities class actions and [their] significant research and effort in identifying and investigating the claims in this action" warrants an approval of their selection by the Court to this significant position.

II.

Upon certifying a class action, the court "must appoint class counsel" unless a statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A). However, even before a class action is certified, the PSLRA provides that

> "[n]ot later than 90 days after the date on which a notice is published under subparagraph (A)(I), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."
> 15 U.S.C. § 78u-4(a)(3)(B).

Furthermore, the lead plaintiff, after having been appointed by a court, "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78U-4(a)(5). This statutory provision, which is central to the PSLRA, creates a rebuttable presumption that the investor with the largest financial interest in a securities fraud class action should be appointed the lead plaintiff for the lawsuit. § 78u-4(a)(3)(B)(iii). However, this presumption may be rebutted only "upon proof by a member of the putative plaintiff class that the presumptively most adequate plaintiff . . . . (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject

3

to unique defenses that render such plaintiff incapable of adequately representing the class." 15

U.S.C. § 78u-4(a)(3)(B)(iii)(I). This "lead plaintiff" provision was adopted by the Congress as a

means of encouraging an allegedly injured party with a large financial stake to become the class

representative.  *In re Quintus §. Litig.*, 201 F.R.D. 475, 487 (N.D. Cal. 2001).  In addition, the

Federal Rules of Civil Procedure provide the Court with the option to  "designate interim counsel

to act on behalf of a putative class before determining whether to certify the action as a class

action." Fed. R. Civ. P. 23(g)(3). There are some courts that will consider nothing more than the

financial stakes, and, thereafter, will complete its "lead plaintiff" inquiry by exploring and relying

upon the requirements of Fed. R. Civ. P. 23. *See Ohio Public Employees Ret. Sys. v. Fannie Mae*,

357 F. Supp. 2d 1027, 1032 (S.D. Ohio 2005) ("Once it is established that a plaintiff either has filed

a complaint or has moved for appointment as lead plaintiff within the strictures of the PSLRA, to

determine which candidate should be lead plaintiff, the Court calculates which of the candidates

has the largest financial interest, and then decides whether that candidate meets the typicality and

adequacy requirements of Fed. R. Civ. P. 23(a)").  *See also In re Cendant Corp. Litig.*, 264 F.3d

201, 262 (3d Cir.2001) ("Once the court has identified the movant with 'the largest financial

interest in the relief sought by the class,' it should then turn to the question whether that movant

'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure'. . . . ").

Rule 23(a) of the Federal Rules of Civil Procedure provides that a party may serve as a class

representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are
> questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Finally, the most qualified plaintiff, after being selected, "shall, subject to the approval of

the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). In judging the adequacy of the class counsel, the court may, *inter alia*, evaluate the attorneys' performance in this pending litigation. *See Sullivan v. Chase Investment Services of Boston, Inc.*, 85 F.R.D. 246, 258 (N.D. Cal. 1978). However, a court is encouraged to refrain from interfering with the choice of the "lead counsel" unless it is necessary to "protect the interests of the class." *See* § 78u-4(a)(3)(B)(iii)(II)(aa).

III.

The requirements of the PSLRA, which pertain to the selection of the lead plaintiff, facially appear to have been satisfied in this case for several reasons. First, the counsel for the Ropeta Group seems to have filed a legally sufficient notice in a newspaper of general circulation (i.e., the *PrimeNewswire)* on March 14, 2008 within twenty days of filing the complaint[7] as required by the statute. *See Jolly Roger Offshore Fund LTD v. BKF Capital Group, Inc.*, 2007 WL 2363610, *2 (S.D. N.Y. 2007) (*PrimeNewswire* is a "suitable vehicle for meeting the statutory requirement that notice be published [as required by 15 U.S.C. § 78u-4(a)(3)(A)(I).]"). Moreover, the Ropeta Group timely filed its motion which addressed the lead plaintiff issue without any competing petitions by other prospective candidates. *See* 15 U.S.C. § 78u-4 (a)(3)(A), (B).

Although there may be some minor variances in the emphasis within the respective claims of each putative class member, the Ropeta Group has (1) proffered a sufficiency of evidence which ostensibly satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and (2) projected an interest in establishing each element of a claim for relief under the Securities Act and Exchange Act. Moreover, its interests appear to be sufficiently

---

[7]The complaint was filed on March 4, 2008.

5

parallel to ensure a full and vigorous representation of the interests of all those persons who are involved in this litigation.

With recognition that the currently pending motion which addresses the "lead plaintiff" issue is uncontested and has received the assent by other members of the proposed class, as well as by some of the Defendants,[8] and because it proclaims to have the largest financial interest in this litigation, the Ropeta Group's request to be appointed as the lead plaintiff is granted, pending a final decision by the Court regarding the issue of certification.

The Court also approves the Ropeta Group's identification of Sommers Schwartz, P.C.; J. Thompson & Associates, P.L.C.; Paul L. Nine & Associates, P.C.; and Zimmerman Reed, P.L.L.P. to serve as the interim lead counsel in this lawsuit. Fed. R. Civ. P. 23(g)(3). This request has been granted as an interim appointment because of (1) the prior substantial experience by these law firms in the prosecution of shareholder and securities class and shareholder derivative actions and (2) the quality of the pleadings that these attorneys have submitted to the Court in this litigation. 15 U.S.C. § 78u-4(a).

IV.

For the reasons that have been set forth above, the Court grants the Ropeta Group's motion in part and denies it in part. Specifically, the Court (1) grants the Ropeta Group's request to be appointed as the lead plaintiff and (2) approves its nomination of lead counsel pending a final decision relating to the issue of class certification by the Court.

---

[8]On July 3, 2008, two of the Defendants, Questar Capital Corporation and GunnAllen Financial Inc., filed a pleading in which they expressed their support for the adoption of the proposals by the Ropeta Group on May 13th relating to the appointment of the lead plaintiffs and the lead counsel in this action.

IT IS SO ORDERED.

Dated: <u>August 5, 2008</u>                         <u>s/ Julian Abele Cook, Jr.</u>
             Detroit, Michigan                        JULIAN ABELE COOK, JR.
                                                  United States District Court Judge

<u>Certificate of Service</u>

I hereby certify that on August 5, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                            <u>s/ Kay Alford</u>
                                            Courtroom Deputy Clerk

MDL No. 1725

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: DELPHI CORPORATION
SECURITIES, DERIVATIVE &                    MDL No. 1725
"ERISA" LITIGATION,                         E.D. Mich. No. 05-1725
_____/                Hon. Gerald E. Rosen


OPINION AND ORDER VACATING THE SOUTHERN DISTRICT
OF FLORIDA COURT'S JULY 20, 2005 ORDER APPOINTING
LEAD PLAINTIFF AND CO-LEAD COUNSEL

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____October 17, 2006_____

PRESENT:  Honorable Gerald E. Rosen
          United States District Judge


I. INTRODUCTION

The above-captioned matter is before the Court pursuant to the December 12,

2005 Transfer Order of the Judicial Panel on Multidistrict Litigation (the "MDL Transfer

Order") which transferred to this Court seven securities fraud and shareholder derivative

actions that were originally filed in the District Court for the Southern District of New

York (the "New York action") and one securities fraud action that was originally filed in

the Southern District of Florida (the "Florida action"), for consolidation with sixteen

securities fraud, ERISA, and shareholders derivative actions which were originally filed

in the Eastern District of Michigan.  At the time of the transfer of the New York and

Florida actions, two motions were pending in the respective transferor courts:  (1) a

1

motion filed by the New York Lead Plaintiffs in the Florida action asking Judge Ryskamp to vacate his order appointing Sidney Bernstein as lead plaintiff and Bernstein's attorneys as co-lead plaintiff's counsel and (2) a motion filed by Bernstein in the New York action asking the court to strike from the Consolidated Class Action Complaint the allegations and claims concerning Delphi Trust I securities, which is same the class of securities addressed in the Florida action. These motions are now pending before this transferee Court.

Having reviewed and considered the parties' respective motions, briefs and supporting documents, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND

Delphi Corporation, once a completely integrated division of General Motors, was established as an independent company in 1999. At the time of its spin-off from GM, Delphi was the largest supplier of automotive parts in the world on a gross sales and market capitalization basis. The new company enjoyed a healthy balance sheet in 1999 as a result of the stock market riding the telecom and internet high and the economy being strong at the time. The company's fiscal success was also attributable to the demand for GM's (Delphi's primary customer's) high profile SUVs and because its pension plans were being largely funded by the soaring stock market.

However, in 2000, the stock market collapse precipitated a downturn in the

economy.  This, in turn, led to a decline in the production of cars by GM.  The decline in auto production widely impacted the various businesses that support domestic auto manufacturers, including auto parts suppliers.  This market decline has continued ever since.

Despite the collapsing economy, however, Delphi continued to report profits in its SEC Form 10-Q quarterly reports, its annual Form 10-K's, and in press releases to the general public.  Plaintiffs allege that these reports were false and that during the period from April 2000 through March 2005, Delphi, its officers and directors fraudulently misrepresented Delphi's financial results.

In July 2004, the SEC launched an investigation into certain transactions between Delphi and one of its information technology suppliers, EDS.  This SEC investigation precipitated an internal investigation by Delphi's Audit Committee which was begun in October 2004.  In March 2005, the Audit Committee released the preliminary findings of its internal investigation.  These preliminary findings showed widespread accounting irregularities in various Delphi transactions dating back to 1999, requiring the Company to restate its financial statements.  Consequently, on March 4, 2005, Delphi filed a Form 8-K with the SEC acknowledging its accounting irregularities and admitting that these accounting irregularities resulted in the Company overstating cash flow from operations in 2000 by approximately $200 million and in 2001 by $61 million.  Delphi also announced that its Chief Financial Officer, Alan Dawes, had resigned.

On March 5, 2005, Delphi's debt rating was downgraded to junk status.  The revelation that Delphi inflated its earnings and operating cash flow since 1999 also sent

Delphi's stock plummeting – Delphi's stock price fell from $6.48 on March 3 to $5.15 on March 7 – a drop of over 20% in two trading days.  Then, on March 30, 2005, the FBI announced that it was initiating a criminal investigation into Delphi's accounting.

The foregoing events precipitated the filing of the various securities fraud, ERISA and shareholders' derivative complaints comprising the instant MDL action.  The instant motions concern the securities fraud actions.

The New York Securities Fraud Action

The Consolidated Complaint filed in the New York securities fraud action contains 16 separate counts all based on allegations of fraud stemming from the misrepresentations in Delphi's Form 10-K's, quarterly 10-Q's, and press releases and also from misrepresentations in various stock and bond offering materials.  Specifically, Plaintiffs allege claims of violations of Section 10(b) and Rule 10b-5 of the Exchange Act (Counts I, III, and IV) and Section 20(a) of the Exchange Act (Count II) against Delphi, its Officers, its Directors, the Audit Committee Members, three outside entities -- BBK, Setech and Bank One -- and the accounting firm of Deloitte & Touche, all based on the 10-K and 10-Q filings.

The Consolidated Complaint further alleges violations of Sections 11, 12 and 15 of the Securities Act (Counts V-XVI) against the Company, Delphi Trust I and Delphi Trust II, the Officers, Directors and Underwriters based on the June 1, 2001 and July 25, 2003 stock offerings and the October 21, 2003 Delphi Trust I and November 11, 2003 Delphi Trust II Preferred Securities offerings.

The Florida Securities Fraud Action

The Florida securities fraud action alleges claims against Delphi Trust I, the officers and directors of the Company and the underwriters of the Delphi Trust I October 21, 2003 Preferred Securities offering.  As with the New York action, the Florida complaint is predicated upon the misrepresentations in the various 10-K and 10-Q reports as well as the Registration Statement and Prospectus concerning the October 21, 2003 Delphi Trust I offering.  Plaintiff Bernstein alleges violations of Sections 11 and 15 of the Securities Act, i.e., the same claims alleged in Counts XI and XIII in the Consolidated Complaint in the New York action.

## II.  PROCEDURAL HISTORY

The first Delphi securities fraud class action complaint, *Cox v. Delphi Corporation*, S.D.N.Y. No. 05-02637, was filed in Southern District of New York on March 7, 2005.[1]  On that same date, Cox's attorneys, Schiffrin & Barroway LLP, published on *Market Wire* a statutory Notice of the filing of "a class action lawsuit filed in the United States District Court for the Southern District of New York *on behalf of all securities purchasers* of Delphi Corporation. . . from January 17, 2001 through March 3, 2005, inclusive." [*See* 7/25/05 Declaration of Sean Handler, Ex. A (emphasis added).] The Notice further advised,

---

[1]  Six more securities fraud complaints were filed in the Southern District of New York on March 8, 10, 15, 29, April 1 and May 6, 2005.  These complaints were subsequently consolidated with the *Cox* case and the consolidated action was re-titled "*In re Delphi Corp. Securities Litigation*."

> If you are a member of the class described above, you may, *not later than May 6, 2005* move the Court to serve as lead plaintiff of the class, if you so choose. . . .  You may retain Schiffrin & Barroway, or other counsel of your choice, to serve as your counsel in this action."

*Id.* (Emphasis added.)

The day after the New York action was filed, a separate class action securities fraud complaint was filed by different counsel in the Eastern District of Michigan, *Priest v. Delphi Corp., et al.*, No. 05-CV-70907-DT, and statutory Notice of this action was published on the *Business Wire*.  Similar to the *Cox* Notice, the *Priest* Notice advised of the filing of "a class action lawsuit *on behalf of purchasers of the securities of Delphi Corporation* between April 12, 2000 and March 3, 2005, inclusive." [*See* E.D. Mich. Document No. 17, Declaration of Patrick Dahlstrom, Ex. A (emphasis added).] The *Priest* Notice further advised,

> If you bought the securities of Delphi between April 12, 2000 and March 3, 2005 and sustained damages, you may, *no later than May 6, 2005*, request that the Court appoint you as lead plaintiff. . . .  You may retain Milberg Weiss Bershad & Schulman LLP, or other counsel of your choice to serve as your counsel in this action.

*Id.* (Emphasis added.)

In accordance with the *Cox* and *Priest* Notices, on May 6, 2005, 18 parties filed motions in the New York action for appointment as lead plaintiffs and for approval of their respective attorneys as lead counsel and 17 parties filed such motions in the Eastern

District of Michigan.[2]

On April 11, 2005, after the New York (and the Michigan) actions were pending

for more than a month, Sidney Bernstein filed his class action lawsuit in the District Court

for the Southern District of Florida purportedly on behalf of only Delphi Trust I

purchasers who purchased Delphi Trust I preferred securities from October 21, 2003

through March 3, 2005. As indicated above, Bernstein's Florida lawsuit named as

defendants Delphi Trust I, the banks that underwrote the Delphi Trust I preferred

securities, and essentially the same Delphi officers and directors as in the *Cox* action, but

alleges only violations of Sections 11 and 15 of the Securities Act of 1933. *See Bernstein*

*v. Delphi Trust I, et al.*, S.D. Fla. No. 05-80307. The claims in Bernstein's complaint,

however, are premised on the same underlying facts as the New York action.

Two weeks after filing the *Bernstein* action, on April 22, 2005, counsel for

Bernstein published a notice of the lawsuit in the *Investor's Business Daily*. That notice

advised of the filing of a class action lawsuit "on behalf of all persons who purchased

Trust Preferred Securities Certificates of Delphi Trust I. . . between October 23, 2003 and

March 3, 2004, inclusive." [*See* 8/10/05 Declaration of Howard T. Longman, Ex. B.]

---

[2] Anticipating transfer of all of the related actions in one of the two Districts to the other District, a number of these parties filed motions for appointment as lead plaintiff and for lead counsel approval simultaneously in the Southern District of New York and the Eastern District of Michigan. One of the movants in the Michigan action, Spectrum Asset Management, Inc., was a Delphi Trust I purchaser that claimed losses of nearly $14 million.

The Notice further advised,

> If you acquired the Certificates between October 20, 2003 and March 3, 2004, inclusive, you may, no later than June 21st, 2005, request the Court appoint you as lead plaintiff. . . . You may retain Stull, Stull & Brody, or other counsel of your choice to serve as your counsel in this action."

*Id.*

Only Bernstein moved the Court to be appointed as lead plaintiff; no other interested parties sought to participate in the Florida action either before or after June 21, 2005. In his motion filed in the Florida court on June 20, 2005, Bernstein asserted that he suffered losses in the amount of $5,226.00 as a result of the defendants' violations of the securities laws. [*See* 6/20/05 Motion for Appointment, p. 2.] Bernstein's Motion further stated that

> Plaintiff's attorneys know of no other member or members of the putative Class who has or have moved for appointment as Lead Plaintiff or even filed a complaint on behalf of the putative Class.

*Id.*

In a footnote, however, Bernstein acknowledged his awareness of the March 7 and 8, 2005 filing, and continued pendency, of the actions in the Southern District of New York and the Eastern District of Michigan. *Id.* at p. 10 n. 4. He further acknowledged that the New York and Michigan actions were "based upon the same or similar underlying occurrences at Delphi Corporation as the instant [Florida] action." *Id.* But, he advised the Florida court [erroneously] that the New York and Michigan actions were brought only "on behalf of *purchasers of the common shares* of Delphi Corporation," and

8

that his action was "the only action brought on behalf of purchasers of [Preferred Securities] Certificates of Delphi Trust I." *Id.* (Emphasis added.)

Bernstein's motion for appointment as lead counsel being unopposed, on July 20, 2005, Judge Ryskamp entered Bernstein's proposed "Order Appointing Lead Plaintiff and Co-Lead and Liaison Counsel," appointing Bernstein as Lead Plaintiff, and his choice of Stull, Stull & Brody and Goldhammer & Graifman as Co-Lead Counsel, and Bernstein's Florida attorney, Abraham Rappaport, as Liaison Counsel.

The New York plaintiffs promptly moved to intervene in the Florida action on July 27, 2006, and requested that Judge Ryskamp vacate the order appointing lead plaintiff and lead counsel. The motion was fully briefed by the parties but Judge Ryskamp never ruled on the matter. Instead, on August 29, 2005, upon being notified of the filing of a motion to transfer with the Judicial Panel on Multidistrict Litigation, the Judge entered an Order staying the action pending transfer to multidistrict litigation proceedings.

Meanwhile, in the New York and Michigan actions, the interested parties reached an agreement as to the appointment of Lead Plaintiffs and Lead Counsel. First, the parties in the Michigan securities cases agreed to voluntarily dismiss their complaints and to participate as class members in the New York action, instead. Then, on June 27, 2005, Judge Buchwald entered a stipulated Order appointing the Teachers' Retirement System of Oklahoma ("OTRS"), the Public Employees Retirement System of Mississippi ("Mississippi PERS"), Stichting Pensionenfonds ABP ("ABP"), and Raiffeisen Kapitalanlange-Gesellschaft, m.b.H. ("Raiffeisen") as Co-Lead Plaintiffs and their

9

respective attorneys, Nix, Patterson & Roach, L.L.P., Bernstein, Litowitz, LLP, Berger & Grossmann, Grant & Eisenhofer, P.A., and Schiffrin & Barroway as Co-Lead Counsel for the Class.[3]

These agreements having been reached, on September 23, 2005, Judge Buchwald entered an Order directing the filing of a Consolidated Class Action Complaint.

A Consolidated Class Action Complaint was filed in accordance with Judge Buchwald's Order on September 30, 2005. The Consolidated Class Action Complaint added Delphi Trust I and Delphi Trust II as defendants and included separate counts alleging violations of the Securities Act of 1933.[4]

Three months later, on December 12, 2005, Sidney Bernstein, through counsel, moved to intervene in the New York action for the purpose of obtaining an order to strike the allegations concerning Delphi Trust I from the Consolidated Class Action Complaint. This motion was never acted upon because it was on that same date, December 12, 2005, that the Judicial Panel on Multidistrict Litigation issued its order transferring the action to this Court.

In his Motion to Intervene, however, Bernstein admits that the relief he seeks by

_____

[3] This was the same agreement reached in the Michigan cases although no order was ever entered because the cases were voluntarily dismissed and the Michigan litigants joined the New York action.

[4] As originally filed, neither the *Cox* action nor any of the companion cases specifically named Delphi Trust I or II as a party-defendant, nor did any of the complaints allege violation of the Securities Act of 1933 as a theory of recovery.

way of his New York filing is wholly contingent upon this Court's decision with regard to the New York plaintiffs' motion to vacate the Florida court's lead plaintiff order:

> After the MDL Panel rules on the pending MDL motions, the Cox Lead Plaintiffs' motion to intervene and to vacate the order issued by the Florida District Court will be decided by the transferee Court designated by the MDL panel. If the Cox Lead Plaintiffs are successful in vacating the Delphi Trust I Lead Plaintiff Order, they can proceed to include the Delphi Trust I Class Action claims in their litigation.

[*See* 12/12/05 Motion of Delphi Trust I Lead Plaintiff to Intervene, p. 16.]

Therefore, resolution of the Florida Motion to Vacate will resolve both of the pending motions.

### III.  DISCUSSION

### A.  THIS COURT IS AUTHORIZED TO VACATE THE ORDERS OF A TRANSFEROR COURT

It is well-established that after a multidistrict transfer becomes effective, "[t]he transferee judge may vacate or modify any order of a transferor court." *See* Manual for Complex Litigation, Fourth ("MCL"), § 20.132, pp. 221-222 (2004). *See also In re Upjohn Co.Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 117 (6th Cir. 1981). Until altered, however, orders of the transferor court remain in effect. MCL § 20.132, *supra*; *In re Master Key Antitrust Litig.*, 320 F. Supp. 1404, 1406 (J.P.M.L. 1971). Accordingly, this Court has the authority to vacate the order entered by the District Court for the Southern District of Florida appointing lead plaintiff and lead counsel in the *Bernstein* matter.

### B.  BERNSTEIN DOES NOT SUFFICIENTLY MEET THE REQUIREMENTS OF

11

### THE PSLRA TO SERVE AS A LEAD PLAINTIFF IN THIS MATTER

The Private Securities Litigation Reform Act ("PSLRA") sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class action lawsuits. *See* 15 U.S.C. § 78u-4(a)(3). According to the PSLRA, the court shall appoint as lead plaintiff the movant that the court determines to be most capable or adequately representing the interests of the putative class members. In determining who is the "most adequate plaintiff," the statute provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that --
>
> > (aa) has either filed a complaint or made a motion in response to a notice. . .;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the [adequacy and typicality] requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added). *See also, Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 16-17 (D.D.C. 2006).

The question presented here is whether Bernstein satisfies the financial interest requirement.

The PSLRA's presumption that the most adequate plaintiff is the one with the largest financial interest reflects Congress's desire to curtail lawyer-driven securities class

actions. *See* H.R. Conf. Rep. No. 104-369 at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N.

730. To achieve this goal, Congress sought to attract lead plaintiffs with a significant

financial stake in the litigation on the assumption that they would be more likely to play

an active role in directing and overseeing litigation. *See Barnet v. Elan*, 236 F.R.D. 158,

161 (S.D.N.Y. 2005).

Furthermore, Congress explicitly stated that it hoped that by selecting the plaintiff

with the greatest financial loss, the PSLRA would thereby "increase the likelihood that

institutional investors will serve as lead plaintiffs." H.R. Conf. Rep. No. 104-369 at 34,

1995 U.S.C.C.A.N. 730, 733. In Congress's view, institutional investors should serve as

lead plaintiffs where possible, since they are most likely to have the most at stake in the

case and be the most sophisticated and competent litigants. *In re XM Satellite Radio*,

*supra*, 237 F.R.D. at 17; *see also In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157

(S.D.N.Y. 1997) ("[a]ppointing lead plaintiff on the basis of financial interest, rather than

on a 'first come, first serve' basis, was intended to ensure that institutional plaintiffs with

expertise in the securities market and real financial interests in the integrity of the market

would control the litigation, not lawyers"); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp.

2d 1061, 1066 (C.D. Cal. 1999) ("As Congress and academics have noted, institutional

investors have incentives to monitor their suits closely because of the substantial stakes in

the stock at issue, thereby eliminating frivolous tactics and settlements that inflate

attorneys' fees.)

Here, there is no question that Mr. Bernstein comes no where close to having the

13

largest financial interest in the action.  His $5,226.00 loss is far from the losses of the four co-lead institutional plaintiffs appointed in the New York action who collectively lost over $34 million from the same fraudulent activities alleged in Bernstein's complaint.

Bernstein does not dispute this.  Rather, taken in the best possible light now that his complaint has become part of the multidistrict proceeding, his position is that he is the most adequate plaintiff to represent the sub-class of Delphi Trust I preferred security purchasers bringing Section 11 and 15 claims because the co-lead plaintiffs appointed by the New York court only suffered common stock losses.  Therefore, he argues that he should be afforded Lead-Plaintiff status to represent Delphi Trust I claimants.

However, courts that have addressed this issue have held otherwise.  For example, in *In re Northwestern Corp. Sec. Litig*., 299 F. Supp. 2d 997 (D.S.D. 2003), a consolidated class action securities fraud case, a purchaser of trust preferred securities in business trusts affiliated with Northwestern sought to be appointed as a separate lead plaintiff on behalf of only the preferred securities purchasers arguing, as Bernstein does in this case, that it was the most adequate plaintiff to represent the preferred securities purchasers because it was the only plaintiff with claims under the Securities Act.  The court rejected the argument noting:

> It is not a requirement that a lead plaintiff under the PLSRA suffer losses on each type of security that may be at issue in the class action.  "The purpose of the lead plaintiff section. . . was never to do away with the notion of class representatives or named plaintiffs in securities class actions.  Rather, the purpose was to ensure that securities litigation was investor-driven, as opposed to lawyer-driven." [Citations omitted.] Thus, the three members of the Carpenters Group appointed as Lead Plaintiff need not have suffered a

loss on each type of security at issue to serve as the Lead Plaintiff in this
litigation.

*Id.* at 1007; *see also The Constance Sczesny Trust v. KMPG LLP*, 223 F.R.D. 319, 325

(S.D.N.Y. 2004) (where the claims of both shareholders and option holders were

predicated on the same misrepresentations in Polaroid's public securities filings, the

interests of option investors and shareholders were held not to be sufficiently

differentiated so as to require the appointment of a "niche" lead plaintiff); *In re Enron*

*Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (rejecting arguments by preferred

stockholders, bondholders and other securities holders that separate classes and separate

lead counsel were required for each type of security noting that for purposes of efficiency

and fairness to all litigants, "the litigation should proceed as a unified class with a strong

Lead Plaintiff, at least until the time for class certification"); *Aronson v. McKesson*

*HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) (noting that there is a "statutory

presumption that one lead plaintiff can vigorously pursue all available causes of action

against all possible defendants under all available theories," the court rejected arguments

by competing lead plaintiffs who argued that they, unlike presumptive lead candidates,

possessed unique statutory claims); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 480

(D.N.J. 1988) (emphasizing that "what matters here is that the claims of every member or

constituent group of the putative class arise from the same false or allegedly fraudulent

representations of [the defendants]" and, therefore, refusing to appoint separate lead

plaintiffs and counsel for separate groups of investors).

15

By application of the foregoing authorities, the Court finds that separate lead plaintiff status and counsel for a separate class of Delphi Trust I claimants is unnecessary in this case. As indicated, the institutional Lead Plaintiffs and counsel appointed and approved by Judge Buchwald are by far "the most adequate plaintiffs" in this matter. Further, segregating out a sub-class of Delphi Trust I preferred securities purchasers is wholly unnecessary here where the claims of both the common stock and preferred securities purchasers are all predicated upon the same allegedly false and fraudulent representations and actions of Delphi Corporation and its officers and directors.

Moreover, as the institutional Lead Plaintiffs acknowledge, they are statutorily obligated to vigorously pursue the claims of *all* claimants. They have already taken action in this regard by filing a consolidated class action complaint which incorporates the claims of common stock purchasers and the claims of both Delphi Trust I and Delphi Trust I preferred securities purchasers. The Court notes that in this respect the case which Plaintiff Bernstein relies heavily upon, *In re UnumProvident*, E.D. Tenn. No. 03-1552 (11/6/03 unpublished order), is markedly distiguishable. In that case, the court sanctioned the maintenance of a separate class action for the purchasers of trust securities because the lead plaintiff appointed to represent the purchasers of Unum common stock had elected to file a consolidated amended complaint that failed to bring claims on behalf of putative class members who had purchased Unum Trust securities.

Furthermore, allowing the maintenance of a separate class with Plaintiff Bernstein as the lead plaintiff and his selection of two firms to act as co-lead counsel for the

16

subclass would unnecessarily increase the costs of litigation of this matter. Separate class/separate counsel would present a substantial risk of duplicative services and disrupt the coordination of efforts, not to mention increasing litigation time and expense, which was among the goals of Congress in enacting the PSLRA. These are all issues that Judge Ryskamp was not presented with the time of his approval and entry of Bernstein's proposed order appointing him lead plaintiff and his selection of Stull, Stull & Brody and Goldhammer & Graifman as co-lead counsel.

In sum, under the circumstances presented here, the Court finds that the appointment of a lead plaintiff with separate co-lead counsel to represent a subclass of Delphi Trust I preferred securities purchasers is not warranted. Therefore, the Court will VACATE the Order entered by the District Court for the Southern District of Florida on July 20, 2005. The vacating of this order does not preclude Mr. Bernstein from retaining the counsel of his choice or from participating in this matter as a member of the plaintiff class. It only precludes Bernstein's participation as a "lead" plaintiff.

<u>CONCLUSION</u>

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that the July 20, 2005 Order of the District Court for the Southern District of Florida appointing Sidney Bernstein lead plaintiff and approving Bernstein's selection of Stull, Stull & Brody and Goldhammer & Graifman as co-lead counsel and Abraham Rappaport as liaison counsel is VACATED.

The Court being satisfied with the adequacy of the OTRS, the Mississippi PERS,

17

ABP and Raiffensen to serve as co-lead plaintiffs and being further satisfied with the

adequacy of their respective attorneys to serve as co-lead counsel for the class,

IT IS FURTHER ORDERED that the June 27, 2005 Order entered by the District

Court for the Southern District of New York  appointing the OTRS, the Mississippi

PERS, ABP and Raiffensen as co-lead plaintiffs and their respective attorneys as co-lead

counsel for the class is hereby ratified by this Court.

SO ORDERED.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  October 17, 2006




I hereby certify that a copy of the foregoing document was served upon counsel of record
on October 17, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager