# EXHIBIT 2



**LEGAL LANGUAGE SERVICES**

A division of ALS International
8014 State Line Road
Suite 110
Leawood, KS  66208-3712

Telephone   (913) 341-3167
Toll Free    (800) 755-5775
Telefax     (913) 341-3168
www.legallanguage.com

**May 11, 2012**
2012年5月11日

**To whom it may concern:**
関係者各位：

**This is to certify that the attached translation from English into Japanese is an accurate representation of the document received by this office.  This document is designated as:**
添付の、英語から日本語への翻訳は、本事務所が受領した書類を正確に反映していると証明します。当該書類は次のとおりです：

**Consolidated Amended Class Action Complaint**
統合され改正された集団訴訟訴状

**Maria Victoria Portuguez, Manager of this company, certifies that Keiko Hargrave, who translated this document, is fluent in Japanese and standard North American English and qualified to translate.  He/She attests to the following:**
本会社のマネージャーである Maria Victoria Portuguez は、この書類を翻訳した Keiko Hargrave は日本語及び標準北アメリカ英語において流暢であり、翻訳を行なう能力があることを証明します。彼/彼女は次のことを証言します：

**"To the best of my knowledge, the accompanying text is a true, full and accurate translation of the specified document".**
「私の知る限り、添付の書類は特定された書類の真正かつ完全で正確な翻訳です。」

**Signature of Maria Victoria Portuguez**
Maria Victoria Portuguez の署名

**Subscribed and sworn to before me this May 11, 2012.**
2012年5月11日 日に私の面前で宣誓。

**Vicki Farron**
**Notary Public, State of Kansas**
**Qualified in Johnson County**
**Commission Expires December 9 2012**

*Vicki Farron*
カンザス州公証人
ジョンソン群で資格取得
任期は2012年12月9日まで

**Sincerely,**
敬具

**Victor J. Hertz**
**President/社長**

合衆国連邦地方裁判所[UNITED STATES DISTRICT COURT]
ミシガン州東地区南支所[THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION]

————————————————————

自動車用ワイヤーハーネスシステム：
反トラスト訴訟に関する事件

————————————————————

この文書は以下に関係する：

すべての直接購買者訴訟

————————————————————

：マスターファイル No. 12:md-02311

：

：

：

：

：

：

：

統合され改正された集団訴訟訴状

事案の概要

1.　　　原告らは、本クラス期間中に、一人以上の被告らから、アメリカ合衆国で、以下に定義されている本ワイヤーハーネス製品を購入した直接購買者を代表して、アメリカ合衆国の独占禁止法の下、損害賠償および差止命令による救済を求めて、個人としておよび以下に記述の本クラスを代表して、被告らに対してこの集団訴訟を起こす。被告らは、アメリカ合衆国で製造または販売されている本ワイヤーハーネス製品の製造業者または販売者である。

2.　　　原告らは、シャーマン法 [Sherman Act] 第１条に違反して、少なくとも早ければ 2000 年１月１日から少なくとも 2010 年２月 28 日までに、被告らが共謀して、アメリカ合衆国で販売された本ワイヤーハーネス製品の入札を不正に操作し、本ワイヤーハーネス製品の価格を上げ、固定し、維持し、または安定させたと主張する。原告らはさらに、被告らがその共同謀議を不正に秘匿したと主張する。

3.　　被告らの不法行為の結果、原告らおよび本クラスのメンバーは、本ワイヤー

ハーネス製　品に対して、競争市場で払っていたに違いない価格よりも高い価格を支払った。

裁判権および裁判地

4.　　被告らの合衆国法典第 15 編第 1 条、シャーマン法 [Sherman Act]第 1 条の違

反の結果として、差止命令による救済、並びに三倍賠償、訴訟費用、および合理的な弁護

士費用を含む損害賠償を得るために、原告らは本訴訟を提起する。

5.　　本裁判所は、クレイトン法 [Clayton Act] 第 4 条(a)および第 16 条、合衆国法

典第 15 編第 15 条および第 26 条、並びに合衆国法典第 28 編第 1331 条および第 1337 条に基

づき、本訴訟の係争物 に対する裁判権を有する。原告らの請求を生じさせた出来事の実質

的な部分がこの裁判区で起こったこと、影響を受けた州際取引および通商の実質的な部分

が本裁判区で行われたこと、並びに 1 人以上の被告らが本裁判区に居住していることから、

クレイトン法 [Clayton Act] 第 12 条、合衆国法典第 15 編第 22 条、並びに合衆国法典第 28 編

第 1391 条(b)、(c) および (d)に基づき、裁判地は、本裁判区が適切である。

6.　　本裁判所は、次の理由により、各被告らに対して人的裁判権を有する。すな

わち、直接かまたはその合衆国の子会社の所有もしくは合衆国の子会社の支配を通してか

を問わず、各被告が、(a) この裁判区を含み、合衆国で取引業務を行っていたため、(b) この

裁判区を含み、合衆国全域で本ワイヤーハーネス製品の実質的な量を、直接間接を問わず、

販売もしくは市場に出していたため、(c) この裁判区を含み、全体として合衆国と実質的に

総体的な接触を持ったため、または(d) この裁判区を含み、合衆国内に居住しているか、位

置しているか、もしくは事業を行っている人または事業体の事業もしくは財産に向けられ

た不法な価格協定の共同謀議、並びに当該事業または財産に直接的な、実質的な、適度に

予見できる、および意図した損害をもたらす効果を持った不法な価格協定の共同謀議に従

2

事したためである。被告らは、この裁判区を含み、合衆国全域で事業を行っており、かつ意図的に合衆国の法律を利用した。

7.　　被告らは、合衆国内の州際通商に直接的な、実質的な、適度に予見できる、および意図した競争を制限する効果をもたらす行為に、合衆国の内部および外部の両方で従事した。

8.　　また、連邦民事訴訟規則第4条(k)(2)に基づき、外国の被告らに対する裁判権を持つ。

<u>定義</u>

9.　　「本クラス期間」は、2000年1月1日から現在までである。

10.　　本訴状で使用されている「本ワイヤーハーネス製品」という用語は、ワイヤーハーネスおよび次の関連製品を意味する。　自動車用電気配線、リードワイヤーアセンブリ、ケーブルボンド、自動車用配線コネクタ、自動車用配線端子、高電圧配線、電子制御ユニット、ヒューズボックス、リレーボックス、ジャンクションブロック、自動車用電源分配器。

11.　　ワイヤーハーネスは、自動車の電子部品、配線、および回路基板を指示および制御するために使用される電気配電システムである。

12.　　本書で使用されている「被告」または「被告ら」は、指名された被告らの本クラス期間中の先任者すべてを含む。

<u>取引および通商</u>

13.　　本クラス期間中、各被告は、継続および連続した流れの州際通商において、合衆国で本ワイヤーハーネス製品を販売した。

14.　　本クラス期間中、被告らは、世界的におよび合衆国内で、本ワイヤーハーネ

ス製品の市場の大部分を連帯して制御した。

　　　15.　　被告らの当該事業活動は、合衆国の州際取引および通商に実質的に影響を与えた。

当事者

原告ら

　　　16.　　ティモシー・ミラー[Timothy Miller]が代表の原告メキシカン・インダストリーズ・イン・ミシガン・インコーポレイテッド[Mexican Industries in Michigan, Inc.]、その破産管財人（以下「メキシカン・インダストリーズ[Mexican Industries]」という）は、ミシガン州デトロイト[Detroit, Michigan]に主たる営業地を有するミシガン州[Michigan]の法人である。原告メキシカン・インダストリーズ[Mexican Industries]は、本クラス期間中、1人以上の被告らから直接に本ワイヤーハーネス製品を購入した。

　　　17.　　原告パエザーノ・コネクティング・システムズ・インコーポレイテッド[Paesano Connecting Systems, Inc.]（以下「パエザーノ[Paesano]」という」）は、ペンシルバニア州リッジウェイ[Ridgway, Pennsylvania]に主たる営業地を有するペンシルバニア州[Pennsylvania]の法人である。原告パエザーノ[Paesano]は、本クラス期間中、1人以上の被告らから直接に本ワイヤーハーネス製品を購入した。

　　　18.　　原告クラフトコ・エンタープライズ・インコーポレイテッド[Craft-Co Enterprises, Inc.]（以下「クラフトコ[Craft-Co]」という」）は、ミシシッピ州ブランドン[Brandon, Mississippi]に主たる営業地を有するミシシッピ州[Mississippi]の法人である。原告クラフトコ[Craft-Co]は、本クラス期間中、1人以上の被告らから直接に本ワイヤーハーネス製品を購入した。

　　　19.　　原告フィンドレー・インダストリーズ・インコーポレイテッド[Findlay

Industries, Inc.] （以下「フィンドレー[Findlay]」という」 は、オハイオ州フィンドレー [Findlay, Ohio]に主たる営業地を有するオハイオ州[Ohio]の法人である。原告フィンドレー [Findlay]は、本クラス期間中、1人以上の被告らから直接に本ワイヤーハーネス製品を購入した。

20.　原告シーザー・スコット・インコーポレイテッド[Cesar-Scott, Inc.]（以下「シーザー・スコット[Cesar-Scott]」という」 は、テキサス州エルパソ [El Paso, Texas]に主たる営業地を有するテキサス州 [Texas]の法人である。原告シーザー・スコット[Cesar-Scott]は、本クラス期間中、1人以上の被告らから直接に本ワイヤーハーネス製品を購入した。

21.　原告マルティネス・マニュファクチャーズ・インコーポレイテッド[Martinez Manufacturing, Inc.]（以下「マルティネス[Martinez]」という」 は、イリノイ州キャリー [Cary, Illinois]に主たる営業地を有するイリノイ州 [Illinois]の法人である。原告マルティネス [Martinez]は、本クラス期間中、1人以上の被告らから直接に本ワイヤーハーネス製品を購入した。

22.　原告サウススター・コーポレーション[South Star Corporation]（以下「サウススター[South Star]」という」 は、ヴァージニア州エリストン [Elliston, Virginia]に主たる営業地を有するヴァージニア州[Virginia]の法人である。原告サウススター[South Star]」は、本クラス期間中、1人以上の被告らから直接に本ワイヤーハーネス製品を購入した。

デルファイ [Delphi]被告ら

23.　被告デルファイ・オートモーティブ LLP [Delphi Automotive LLP]は、イングランドおよびウェールズの法[the laws of England and Wales] に基づいて組織化されたパートナーシップである。本組織は、2005 年に破産保護を申請したミシガン州トロイ[Troy, Michigan]を拠点としたデルファイ・コーポレイション[Delphi Corporation ]の資産を購入する

5

ために 2009 年に作られた。被告デルファイ・オートモーティブ LLP [Delphi Automotive LLP]は、直接または本組織が完全に所有もしくは支配していた子会社を通してかを問わず、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

24. 被告デルファイ・オートモーティブ・システムズ LLC [Delphi Automotive Systems, LLC]は、ミシガン州トロイ[Troy, Michigan]に主たる営業地を有するデラウェア州 [Delaware]の法人である。当該法人は、その親会社であるデルファイ・オートモーティブ LLP [Delphi Automotive LLP]の子会社であり、当該親会社に完全に所有または支配されている。被告デルファイ・オートモーティブ LLP [Delphi Automotive LLP]の役員は、被告デルファイ・オートモーティブ・システムズ LLC [Delphi Automotive Systems, LLC]のミシガン [Michigan]の事務所で働いている。被告デルファイ・オートモーティブ・システムズ LLC [Delphi Automotive Systems, LLC]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

25. 被告 DPH・ホールディングス・コーポレーション[DPH Holdings Corporation] （以前はデルファイ・コーポレーション[Delphi Corporation]という名称）は、オハイオ州ウォレン[Warren, Ohio]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、その親会社であるデルファイ・オートモーティブ LLP [Delphi Automotive LLP]の子会社であり、当該親会社に完全に所有または支配されている。被告 DPH・ホールディングス・コーポレーション[DPH Holdings Corporation]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

26. 被告デルファイ・フルカワ・ワイヤリング・システムズ[Delphi Furukawa

6

Wiring Systems LLC]は、デルファイ・コーポレーション[Delphi Corporation]および古河電気工業株式会社[Furukawa Electric Co., Ltd.]の合弁会社として2004年に設立された、ミシガン州アナーバー[Ann Arbor, Michigan]に主たる営業所を有する有限会社である。デルファイ・フルカワ・ワイヤリング・システムズ[Delphi Furukawa Wiring Systems LLC]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

　　　27.　　被告らデルファイ・オートモーティブ LLP [Delphi Automotive LLP]、デルファイ・オートモーティブ・システムズ LLC [Delphi Automotive Systems, LLC]、DPH・ホールディングス・コーポレーション[DPH Holdings Corporation]およびデルファイ・フルカワ・ワイヤリング・システムズ[Delphi Furukawa Wiring Systems LLC]は、以下本書にて「デルファイ[Delphi]被告ら」または「デルファイ[Delphi]」とまとめて称する。

**デンソー[Denso]被告ら**

　　　28.　　被告株式会社デンソー[Denso Corporation]は、日本の法人である。被告株式会社デンソー[Denso Corporation]は、直接または当該法人が完全に所有もしくは支配していた子会社を通してかを問わず、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

　　　29.　　被告デンソー・インターナショナル・アメリカ・インコーポレイテッド[Denso International America, Inc.]は、ミシガン州サウスフィールド[Southfield, Michigan]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、その親会社である株式会社デンソー[Denso Corporation]の子会社であり、当該親会社に完全に所有または支配されている。被告デンソー・インターナショナル・アメリカ・インコーポレイテッド[Denso International America, Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入され

た、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、株式会社デンソー[Denso Corporation]の支配下および指揮下にあった。

30.　被告アスモ株式会社[Asmo Co. Ltd.]（以下「アスモ[Asmo]という」は、日本に主たる営業地を有する日本の法人である。アスモ[Asmo]は、被告株式会社デンソー[Denso Corporation]が完全所有および支配している子会社である。被告アスモ[Asmo]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、株式会社デンソー[Denso Corporation]の支配下および指揮下にあった。

31.　被告ら株式会社デンソー[Denso Corporation]、デンソー・インターナショナル・アメリカ・インコーポレイテッド[Denso International America, Inc.]、およびアスモ株式会社[Asmo Co. Ltd.]は、以下本書にて「デンソー[Denso]被告ら」または「デンソー[Denso]」とまとめて称する。

## フジクラ[Fujikura]被告ら

32.　被告株式会社フジクラ[Fujikura Ltd.]は、日本の法人である。被告株式会社フジクラ[Fujikura Ltd.]は、直接または当該法人が完全に所有もしくは支配していた子会社を通してかを問わず、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

33.　被告フジクラ・アメリカ・インコーポレイテッド[Fujikura America, Inc.]は、アトランタ州ジョージア[Atlanta, Georgia]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、その親会社である株式会社フジクラ[Fujikura Ltd.]の子会社であり、当該親会社に完全に所有または支配されている。被告フジクラ・アメリカ・インコー

8

ポレイテッド[Fujikura America, Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、株式会社フジクラ[Fujikura Ltd.]の支配下および指揮下にあった。

34.　被告ら株式会社フジクラ[Fujikura Ltd.]およびフジクラ・アメリカ・インコーポレイテッド[Fujikura America, Inc.]は、以下本書にて「フジクラ[Fujikura 被告ら]」または「フジクラ[Fujikura]」とまとめて称する。

**古河[Furukawa]被告ら**

35.　被告古河電気工業株式会社[Furukawa Electric Co., Ltd.]は、日本の法人である。古河電気工業株式会社[Furukawa Electric Co., Ltd.]は、直接または当該法人が完全に所有もしくは支配していた子会社を通してかを問わず、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

36.　被告アメリカン・フルカワ・インコーポレイテッド[American Furukawa, Inc.]は、ミシガン州プリマス[Plymouth, Michigan]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、その親会社である古河電気工業株式会社[Furukawa Electric Co., Ltd.]の子会社であり、当該親会社に完全に所有または支配されている。被告アメリカン・フルカワ・インコーポレイテッド[American Furukawa, Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、古河電気工業株式会社[Furukawa Electric Co., Ltd.]の支配下および指揮下にあった。

37.　被告フルカワ・ワイヤリング・システムズ・アメリカ・インコーポレイテッド[Furukawa Wiring Systems America, Inc.]（以前はフルカワ・リア・コーポレーション

[Furukawa Lear Corporation]および[リア・フルカワ・コーポレーション[Lear Furukawa Corporation]と名称]は、テキサス州エルパソ[El Paso, Texas]に主たる営業地を有するデラウェア州[Delaware]の法人である 。被告フルカワ・ワイヤリング・システムズ・アメリカ・インコーポレイテッド[Furukawa Wiring Systems America, Inc. ]は、古河電気工業株式会社[Furukawa Electric Co., Ltd. ]に 60%所有されており、アメリカン・フルカワ・インコーポレイテッド[American Furukawa, Inc. ]に 40%所有されている。本クラス期間中、被告フルカワ・ワイヤリング・システムズ・アメリカ・インコーポレイテッド[Furukawa Wiring Systems America, Inc. ]は、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売していたリア・コーポレイション[Lear Corporation ]および古河電気工業株式会社[Furukawa Electric Co., Ltd. ]の合弁会社として運営されていた。2010 年 6 月、古河電気工業株式会社[Furukawa Electric Co., Ltd. ]は、リア・コーポレイション[Lear Corporation ]所有の残りの株式すべてを購入した。

38.　　被告ら古河電気工業株式会社[Furukawa Electric Co., Ltd. ]、アメリカン・フルカワ・インコーポレイテッド[American Furukawa, Inc. ]およびフルカワ・ワイヤリング・システムズ・アメリカ・インコーポレイテッド[Furukawa Wiring Systems America, Inc. ]は、以下本書にて 「古河[Furukawa 被告]」 ら または 「古河[Furukawa]」 とまとめて称する。

リア[Lear]被告ら

39.　　被告リア・コーポレーション[Lear Corporation]は、ミシガン州サウスフィールド[Southfield, Michigan]に主たる営業地を有するデラウェア州[Delaware]の法人である。被告リア・コーポレーション[Lear Corporation]は、直接または当該法人が完全に所有もしくは支配していた子会社を通してかを問わず、本クラス期間中、この裁判区を含んだ合衆国全

域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

　　　40.　　被告キュンシン・リア・セールス・アンド・エンジニアリング

LLC[Kyungshin-Lear Sales and Engineering, LLC]は、アラバマ州セルマ[Selma, Alabama]に主

たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、リア・コーポレー

ション[Lear Corporation]および韓国のキュンシン・コーポレーション[Kyungshin Corporation]

の合弁会社である。被告キュンシン・リア・セールス・アンド・エンジニアリング

LLC[Kyungshin-Lear Sales and Engineering, LLC]は、本クラス期間中、この裁判区を含んだ合

衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

　　　41.　　被告らリア・コーポレーション[Lear Corporation]およびキュンシン・リア・

セールス・アンド・エンジニアリング LLC[Kyungshin-Lear Sales and Engineering, LLC]は、

以下本書にて「リア[Lear 被告ら]」または「リア[Lear]」とまとめて称する。

　　　42.　　リア[Lear]は、2009 年 7 月 7 日、連邦破産法第 11 条の適用を申請した。2009

年 11 月 9 日に連邦破産法第 11 条の手続から立ち直った後、リア[Lear]は、共同謀議を推進

するために、およびその参加の一環として、本ワイヤーハーネス製品を販売し続けた。

2009 年 11 月以降リア[Lear]は、競争価格を超えた価格により、本ワイヤーハーネス製品の

大きな売上を合衆国で得た。2010 年だけでリア[Lear]は、共同謀議によって得た合衆国での

本ワイヤーハーネス製品の大きな売上を含み、電力および管理システムにおいて総売上高

25 億 6 千万ドルを得た。

**レオニ[Leoni]被告ら**

　　　43.　　被告レオニ AG[Leoni AG]は、ドイツの法人である。被告レオニ AG[Leoni

AG]は、直接または当該法人が完全に所有もしくは支配していた子会社を通してかを問わず、

本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品

を製造し、市場に出し、または販売した。

44. 被告レオニ・ワイヤリング・システムズ・インコーポレイテッド[Leoni Wiring Systems, Inc.]は、アリゾナ州ツーソン[Tucson, Arizona]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、その親会社であるレオニ AG[Leoni AG]の子会社であり、当該親会社に完全に所有または支配されている。被告レオニ・ワイヤリング・システムズ・インコーポレイテッド[Leoni Wiring Systems, Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、レオニ AG[Leoni AG]の支配下および指揮下にあった。

45. 被告レオニッシュ・ホールディング・インコーポレイテッド[Leonische Holding, Inc.] は、アリゾナ州ツーソン[Tucson, Arizona]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、その親会社であるレオニ AG[Leoni AG]の子会社であり、当該親会社に完全に所有または支配されている。被告レオニッシュ・ホールディング・インコーポレイテッド[Leonische Holding, Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、レオニ AG[Leoni AG]の支配下および指揮下にあった。

46. 被告レオニ・ケーブル GmbH[Leoni Kabel GmbH]は、ドイルの法人である。被告レオニ・ケーブル GmbH[Leoni Kabel GmbH]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

47. 被告レオニ・ワイヤ・インコーポレイテッド[Leoni Wire Inc.]は、マサチュー

12

セッツ州チコピー[Chicopee, Massachusetts]に主たる営業地を有するマサチューセッツ州[Massachusetts]の法人である。レオニ・ワイヤ・インコーポレイテッド[Leoni Wire Inc.]は、被告レオニ AG[Leoni AG]の子会社であり、当該親会社に完全に所有または支配されている。被告レオニ・ワイヤ・インコーポレイテッド[Leoni Wire Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、レオニ AG[Leoni AG]の支配下および指揮下にあった。

48. 被告らレオニ AG[Leoni AG]、レオニ・ワイヤリング・システムズ・インコーポレイテッド[Leoni Wiring Systems, Inc.]、レオニッシュ・ホールディング・インコーポレイテッド[Leonische Holding, Inc.]、レオニ・ケーブル GmbH[Leoni Kabel GmbH]およびレオニ・ワイヤ・インコーポレイテッド[Leoni Wire Inc.]は、以下本書にて「レオニ[Leoni 被告ら]」または「レオニ[Leoni]」とまとめて称する。

住友[Sumitomo]被告ら

49. 被告住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]は、日本の法人である。被告住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]は、直接または当該法人が完全に所有もしくは支配していた子会社を通してかを問わず、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

50. 被告住友電装株式会社[Sumitomo Wiring Systems, Ltd.]は、日本の法人である。被告住友電装株式会社[Sumitomo Wiring Systems, Ltd.]は、直接または当該法人が完全に所有もしくは支配していた子会社を通してかを問わず、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売し

た。

51.　　被告スミトモ・エレクトリック・ワイヤリング・システムズ・インコーポレイテッド[Sumitomo Electric Wiring Systems, Inc.]は、ケンタッキー州ボウリンググリーン[Bowling Green, Kentucky]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、被告ら住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]および住友電装株式会社[Sumitomo Wiring Systems, Ltd.]の合弁会社である。被告スミトモ・エレクトリック・ワイヤリング・システムズ・インコーポレイテッド[Sumitomo Electric Wiring Systems, Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期 中、合衆国内の当該法人の活動は、住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]および住友電装株式会社[Sumitomo Wiring Systems, Ltd.]の支配下および指揮下にあった。

52.　　被告 K&S ワイヤリング・システムズ・インコーポレイテッド[K&S Wiring Systems, Inc. ]は、テネシー州ラ・バーグ[La Vergne, Tennessee]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は、住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]の子会社であり、当該親会社に完全に所有または支配されている。被告 K&S ワイヤリング・システムズ・インコーポレイテッド[K&S Wiring Systems, Inc. ]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]の支配下および指揮下にあった。

53.　　被告スミトモ・ワイヤリング・システムズ（米国）インコーポレイテッド[Sumitomo Wiring Systems (U.S.A.) Inc. ]は、ミシガン州ノビ[Novi, Michigan]に主たる営業地を有するミシガン州[Michigan]の法人である。当該法人は、住友電気工業株式会社

14

[Sumitomo Electric Industries, Ltd.]および住友電装株式会社[Sumitomo Wiring Systems, Ltd.]の合弁会社である。被告スミトモ・ワイヤリング・システムズ（米国）インコーポレイテッド[Sumitomo Wiring Systems (U.S.A.) Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]および住友電装株式会社[Sumitomo Wiring Systems, Ltd.]の支配下および指揮下にあった。

54.　　被告スミトモ・エレクトリック・ウィンテック・アメリカ・インコーポレイテッド[Sumitomo Electric Wintec America, Inc.]は、ケンタッキー州エドモントン [Edmonton, Kentucky]に主たる営業地を有するケンタッキー州[Kentucky]の法人である。スミトモ・エレクトリック・ウィンテック・アメリカ・インコーポレイテッド[Sumitomo Electric Wintec America, Inc.]は、被告住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]の子会社であり、当該親会社に完全に所有または支配されている。被告スミトモ・エレクトリック・ウィンテック・アメリカ・インコーポレイテッド[Sumitomo Electric Wintec America, Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]の支配下および指揮下にあった。

55.　　被告ら住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]、住友電装株式会社[Sumitomo Wiring Systems, Ltd.]、スミトモ・エレクトリック・ワイヤリング・システムズ・インコーポレイテッド[Sumitomo Electric Wiring Systems, Inc.]、K&S ワイヤリング・システムズ・インコーポレイテッド[K&S Wiring Systems, Inc.]、スミトモ・ワイヤリング・システムズ（米国）インコーポレイテッド[Sumitomo Wiring Systems (U.S.A.) Inc.] およびス

15

ミトモ・エレクトリック・ウィンテック・アメリカ・インコーポレイテッド[Sumitomo Electric Wintec America, Inc.]は、以下本書にて「住友[Sumitomo 被告ら]」または「住友 [Sumitomo]」とまとめて称する。

### 矢崎[Yazaki]被告ら

56. 被告矢崎総業株式会社[Yazaki Corporation]は、日本の法人である。被告矢崎 総業株式会社[Yazaki Corporation]は、直接または当該法人が完全に所有もしくは支配してい た子会社を通してかを問わず、本クラス期間中、この裁判区を含んだ合衆国全域で購入さ れた、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

57. 被告矢崎ノースアメリカインク[Yazaki North America, Inc.]は、ミシガン州カ ントン・タウンシップ[Canton Township, Michigan]に主たる営業地を有するイリノイ州 [Illinois]の法人である。当該法人は、矢崎総業株式会社[Yazaki Corporation]の子会社であり、 当該親会社に完全に所有または支配されている。被告矢崎ノースアメリカインク[Yazaki North America, Inc.]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本 ワイヤーハーネス製品を製造し、市場に出し、または販売した。 クラス期間中、合衆国内 の当該法人の活動は、矢崎総業株式会社[Yazaki Corporation]の支配下および指揮下にあった。

58. 被告 S-Y システムズ・テクノロジーズ・ヨーロッパ有限会社[S-Y Systems Technologies Europe GmbH]は、ドイツの法人である。S-Y システムズ・テクノロジーズ・ヨ ーロッパ有限会社[S-Y Systems Technologies Europe GmbH]は、シーメンス[Siemens]と矢崎総 業株式会社[Yazaki Corporation]の合弁会社である。S-Y システムズ・テクノロジーズ・ヨー ロッパ有限会社[S-Y Systems Technologies Europe GmbH]は、直接または当該法人が完全に所 有もしくは支配していた子会社を通してかを問わず、本クラス期間中、この裁判区を含ん だ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売

した。

59.   被告 S-Y システムズ・テクノロジーズ・アメリカ LLC [S-Y Systems Technologies America, LLC]は、ミシガン州ディアボーン [Dearborn, Michigan]に主たる営業地を有するデラウェア州[Delaware]の法人である。当該法人は現在、被告矢崎総業株式会社 [Yazaki Corporation]の子会社であり、当該親会社に完全に所有または支配されているが、以前は、シーメンス VDO オートモーティブ AG[Siemens VDO Automotive AG ]および矢崎総業株式会社[Yazaki Corporation]の合弁会社であった。被告 S-Y システムズ・テクノロジーズ・アメリカ LLC [S-Y Systems Technologies America, LLC]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、シーメンス[Siemens]および矢崎総業株式会社[Yazaki Corporation]、または現在の日本の親会社である矢崎総業株式会社 [Yazaki Corporation]の支配下および指揮下にあった。

60.   矢崎総業株式会社[Yazaki Corporation]、矢崎ノースアメリカインク[Yazaki North America, Inc.]、S-Y システムズ・テクノロジーズ・ヨーロッパ有限会社[S-Y Systems Technologies Europe GmbH]および S-Y システムズ・テクノロジーズ・アメリカ LLC [S-Y Systems Technologies America, LLC]は、以下本書にて「矢崎[Yazaki 被告ら]」または「矢崎 [Yazaki]」とまとめて称する。

東海理化[Tokai Rika]被告ら

61.   被告株式会社東海理化電機製作所[Tokai Rika Co., Ltd. ]は、日本の法人である。被告株式会社東海理化電機製作所[Tokai Rika Co., Ltd. ]は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。

62. 被告 TRAM インコーポレイテッド[TRAM,Inc.] （以下「TRAM」という）は、ミシガン州プリマス [Plymouth, Michigan]に主たる営業地を有するミシガン州[Michigan]の法人である。TRAM は、被告株式会社東海理化電機製作所[Tokai Rika Co., Ltd.]の子会社であり、当該親会社に完全に所有または支配されている。被告 TRAM は、本クラス期間中、この裁判区を含んだ合衆国全域で購入された、本ワイヤーハーネス製品を製造し、市場に出し、または販売した。本クラス期間中、合衆国内の当該法人の活動は、株式会社東海理化電機製作所[Tokai Rika Co., Ltd.]の支配下および指揮下にあった。

63. 被告ら株式会社東海理化電機製作所[Tokai Rika Co., Ltd.]および TRAM インコーポレイテッド[TRAM,Inc.]は、以下本書にて「東海理化[Tokai Rika]」とまとめて称する。

### 被告らの共謀者および代理人

64. 本書に被告として指名されていない多数の人および企業が本書で申し立てている違反の共謀者として参加し、かつそれを推進するための行為および発言をしていた。被告らは、本訴状に被告として指名されていると、されていないを問わず、共謀者の行為に対して各自連帯して責任を負う。

65. 各被告は、原告が申し立てている行為、違反、および通常の行為に関して、他の被告らの代理人または合弁事業として、または他の被告らのために行為をした。

### 集団訴訟の申し立て

66. 原告らは、自分達自身および同状況のその他すべて（以下「本クラス」という）に代わって、連邦民事訴訟規則第 23 条(a)、23 条(b)(2) および (b)(3) に従い、本訴訟を提起する。本クラスは、次のように定義される。

> 2000 年 1 月 1 日から現在までに一人以上の被告らかまたは共謀者から直接に合衆国で本ワイヤーハーネス製品を購入した個人および事業

体のすべて。

67.　原告らは、本クラスメンバーの数については、そのような情報が被告らに排他的に管理されているため、正確には知らない。しかし、取引および通商が関連する性質により、本クラスが非常に多数であり、かつ合衆国全域に地理的に分散しているため、すべての本クラスメンバーの併合は実行不可能であると原告は信じている。

68.　本クラスには以下の共通の法律または事実の問題がある。

> a.　被告らは、アメリカ合衆国内で販売された本ワイヤーハーネス製品の入札を不正に操作するか、または本ワイヤーハーネス製品の価格を上げ、固定し、維持し、または安定するために契約、結合、または共同謀議に従事したか、
>
> b.　被告らは、モデルごとに、合衆国の特定の直接購買者に販売される本ワイヤーハーネス製品の供給を割り当てることに合意したか、
>
> c.　被告らの行為は、合衆国内で販売された本ワイヤーハーネス製品の人為的な高値の原因となったか、
>
> d.　原告らおよび本クラスの他のメンバーは、被告らの行為により被害を被ったか、もしそうであれば、本クラスメンバーに対する適切な本クラス全体の損害賠償の算定基準、並びに
>
> e.　原告らおよび本クラスの他のメンバーは、差止命令による救済の権利があるか、もしそうであれば、当該救済の性質および範囲。

69.　これら法律および事実の問題は、本クラスに共通であり、個々の本クラスメンバーにのみ影響する問題より優位である。

70. 原告らの請求は、本クラスの請求の代表である。その理由として、原告らが一人以上の被告らから直接に本ワイヤーハーネス製品を購入したことにより、本クラスメンバーすべてが本書で申し立てているのと同じ共同謀議により損害を受けたためであり、原告らが請求している救済は、本クラスにとって共通である。

71. 原告らは、原告らが本ワイヤーハーネス製品の直接購買者であり、かつ本クラスの他のメンバーと利害の衝突を持たないという点で、本クラスの利益を公平かつ適切に代表する。さらに原告らは、反トラスト、集団訴訟、およびその他の複雑な訴訟の経験がある資格を有する弁護士を雇っている。

72. 被告らは、本クラスに一般に適用される理由で行為を行った、それにより、終局的差止命令による救済は、全体としての本クラスに対して適切である。

73. 集団訴訟は、本争訟の公正かつ効率的な司法的判断を得るには、その他代わりの方法（もしあれば）よりも優れている。本問題の集団訴訟としての追行は、訴訟が繰り返される可能性を排除することができ、かつ集団訴訟として本事件を管理するための内在的な障壁は存在しない。

74. 個々の本クラスメンバーによる個別訴訟の追行は、矛盾またはそれぞれ異なる結果となる危険性を引き起こす可能性がある。

75. 本クラスはまた、すぐに定義でき、かつ被告らおよび共謀者のファイルに記録されている可能性が高い。

## 業界背景

76. ワイヤーハーネスは、電力用およびエレクトロニクス用のケーブル、電線、およびコネクタによって構成されたシステムで、情報の伝達および動作電流を電子制御装置、電線、回路基板、およびその他の自動車部品に伝えるために使用される。

77.　ワイヤーハーネスアセンブリは、原材料の巻状の電線からなり、当該電線は長さを切断されかつ端末に端子が取りつけられる。個々の回路は、治具または組立台上で組み立てられ、コネクタに挿入され、かつ巻き付けまたはテープ巻きを行いワイヤーハーネスアセンブリとなる。

78.　ワイヤーハーネスは、特定の電力およびエレクトロニクス自動車の特徴に対応するように設計された色分けされた電線を持つ。全部ではないにしても、ほとんどの自動車の電力およびエレクトロニクス装置は、運転のための電流およびデータ伝送を供給するワイヤーハーネスに頼っている。

79.　自動車は、長さにして数キロメーターにもなる多量の電線を抱えている。自動車一台の配線システムは、複数のワイヤーハーネスに分割される。ワイヤーハーネスは、多様な配線条件のために系統化された結合箇所を有している。ハーネスの形態としては、電線やケーブルが結束されて、振動、磨耗、および湿度からの劣化または損傷を防いでいる。

80.　本ワイヤーハーネス製品は、生産工程の一部として製造業者により新車に組み込まれる。また、本ワイヤーハーネス製品は、劣化、欠陥、または破損部品を交換するために自動車に組み込まれることもある。

81.　自動車の電気配線は、自動車の内部いたるところある配線である。

82.　高電圧配線は、ハイブリッド、燃料電池、または電力によるパワートレインを装備した自動車に不可欠である。

83.　リードワイヤーアセンブリは、パワー電源から電流を電極ホルダーまたは一括結合のアース点へと結線する。

84.　ケーブルボンドは、一つのケーブルのシールド外装または遮蔽と、隣接する

ケーブルのシールド外装もしくは遮蔽またはシールド外装中の電線との電気的な結合である。

85.　　自動車用配線コネクタは、自動車で使われる様々なタイプの電線と結合できる。

86.　　自動車用配線端子は、外部の回路との結合ポイントを供給する電線の終端である。

87.　　電子制御ユニット（以下「ECU」という）は、自動車内で一つ以上の電気的システムまたはサブシステムを制御する内蔵モジュールまたはシステムである。自動車には、様々な自動車の機能を操作し、かつ大量のデーターを互いに交換する多数のECUが装備されている。

88.　　ヒューズボックスは、様々な電気回路のヒューズを格納しているモジュールであり、全ての回路は、当該ヒューズボックスを通して配線されている。電気ヒューズの主な目的は、回路上の部品をショート、電流スパイク、または過負荷が生じた場合の損傷から保護することである。

89.　　リレーボックスは、インパルスを一つの部品から他の部品へと伝達する電気スイッチを格納するモジュールであり、かつ回路中の電流をつないだり、または切ったりすることが出来る。　一旦リレーが駆動されると、リレーは電気または他のデーターを特定の部品またはアクセサリーに供給する。

90.　　ジャンクションブロックは、電源を分配またはアース回路を分岐するための電気的な接続点である。

91.　　電源分配器は、電源を様々なレベルで様々な電気部品に分配する。

<u>見積依頼</u>

92. 自動車業界相手方商標製造会社（以下「OEM」という）は、自動車部品の複数の供給元を必要とする。サプライチェーンおよび調達手順の一環として、OEMは、特定モデルの本ワイヤーハーネス製品に対して、モデルごとの部品供給者に見積依頼（以下「RFQ」という）を発行する。

93. RFQは、標準の商慣行であり、部品供給者が特定の製品またはサービスに対して価格見積もりを提出すること、または入札することを可能にする。

94. 外国のOEMは、海外および合衆国内の両方において、合衆国で製造される自動車に対する部品を調達するためにRFQに参加する。

95. 一般に、OEMは、自動車が製造される約3年前から、入札過程を始めるために本ワイヤーハーネス製品のRFQを発行する。

96. OEMのRFQは、一般的に各自動車製品に対する仕様およびその他関連情報を含む。RFQに応じて部品供給者は、その事業を獲得しようとしてOEMに見積価格を提出するか、または入札する。

97. 各入札者からRFQの応答を受け取った後、OEMは、一般的に自動車モデルが存続している期間、選択した部品供給者にその事業を依頼し、かつその事業は、年間注文書によりさらに確定される。

98. OEMへの供給者は、OEMおよび被告らが入札過程で設定した価格で、本ワイヤーハーネス製品を被告らから直接購入することを要求された。

<u>本ワイヤーハーネス製品業界</u>

99. 本ワイヤーハーネス製品の直接購買者が支払う価格を制御するために、OEM

が支払う価格をメンバーが制御および操作することは、本書で申し立てているカルテルの成功には重要であった。

100.　本ワイヤーハーネス製品業界は、非常に集中している。本ワイヤーハーネス製品メーカーは、ありとあらゆる自動車に使用するための本ワイヤーハーネス製品を製造する能力を有する。

101.　本クラス期間中、自動車用本ワイヤーハーネス製品メーカーの主要4社が世界市場の76.95%を支配し、かつ被告らである主要7社が世界市場の87.95%を支配した。図1を参照のこと。

**2009年の世界の主要自動車本ワイヤーハーネス製造業者の市場シェア**

| 矢崎[Yazaki] | 29.81% |
|---|---|
| 住友[Sumitomo] | 24.38% |
| デルファイ[Delphi] | 16.71% |
| レオニ[Leoni] | 6.05% |
| リア[Lear] | 4.70% |
| 古河[Furukawa] | 3.61% |
| フジクラ[Fujikura] | 2.69% |

図1

102.　国際的な市場調査および市場データ会社である*リサーチ・イン・チャイナ[Research in China]*によると、世界の自動車ワイヤーハーネス市場は、2009年に253億米ドルに到達し、かつ2010年は6.6%成長して269億ドルに達した。2013年までに、世界の自動車ワイヤーハーネス市場は、約330億米ドルに増加すると予測されている。図2を参照のこと。

24





世界の自動車ワイヤーハーネス市場規模　2007 年〜2013 年

|  | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|
| 市場規模（百万米ドル） | 29,302 | 24,980 | 25,317 | 26,982 | 29,380 | 30,010 | 32,980 |
| 成長率 | 16.9% | -14.7% | 1.3% | 6.6% | 9.3% | 9.0% | 3% |

図 2　　　Market Scae (US$ min) = 市場規模（百万米ドル）　　　　Growth Rate = 成長率

103.　工場および機械への高い資本投資並びに技術的専門知識が必要なために、本ワイヤーハーネス製品市場の参入には、高い障壁がある。OEM が設定した価格および数量制限内で部品を効果的に製造するために、最小限に実行可能な規模を維持することは、部品供給者にとって非常に重要である。従って、最適な供給者としての位置を失うことは、被告らおよび共謀者のビジネスモデルにとって厳しい結果となる可能性があった。

104.　競争市場において、スケールメリットおよび費用逓減は、一般的に製造業者

25

が市場シェアを失うよりも値下げを行うために、価格の低下を引き起こす。しかし、価格を設定をするための共同謀議が行われた市場では、共謀の合意に基づき、低価格の競争相手に売上を失う危険性が最小であるため、競争相手は、固定または減少した投入費用にもかかわらず、価格を引き下げようと考える同じ動機を持たない。

105.　本クラス期間中、主要な製造投入費用は一定に保たれていたにもかかわらず、本ワイヤーハーネス製品の価格は上昇した。実際、矢崎[Yazaki]、住友[Sumitomo]、レオニ[Leoni]、古河[Furukawa]、デルファイ[Delphi]、リア[Lear]およびフジクラ[Fujikura] 被告らは、ワイヤ製品に対する広範囲な経験を有し、かつ関連投入費用を制御することが可能である。

## 共謀する機会

106.　被告らおよびその共謀者は、産業イベントに参加しており、当該イベントは、会合を行い、その不正な議論を隠蔽し、かつ共同謀議を推進するための行為を実施する機会を提供していた。例えば、被告らおよびその共謀者は、ミシガン州デトロイト[Detroit, Michigan]で開かれる年間北米国際自動車ショー（以下「NAIAS」という）およびネバダ州ラスベガス[Las Vegas, Nevada]で開かれる自動車補修部品エキスポに定期的に参加していた。

## 共同謀議

107.　本クラス期間中、被告らおよびその共謀者は、本ワイヤーハーネス製品の入札を不正に操作し、本ワイヤーハーネス製品の価格を上げ、固定し、維持し、または安定させることに合意することで、本ワイヤーハーネス製品に対する競争を抑制および排除するための国際カルテルを形成した。

108.　被告らおよびその共謀者は、合衆国内および海外において、合衆国の自動車製造業者に提出する本ワイヤーハーネス製品に対する入札および価格見積もりについて議論するために、会議、会話、および意見交換に参加した。

109.　被告らおよびその共謀者は、これら会議、会話、および意見交換の間、モデルごとに合衆国の自動車製造業者に販売される本ワイヤーハーネス製品の供給を割り当てることに合意した。

110.　被告らおよびその共謀者はまた、これら会議、会話、および意見交換の間、合衆国の自動車製造業者が要求する価格調整をまとめることにも合意した。

111.　被告らおよびその共謀者は、その共謀の合意に従って、合衆国の自動車製造業者に対して、入札、価格見積もり、および価格調整を提出した。

112.　自動車製造業者に対する本ワイヤーハーネス製品の販売に関する被告らの価格設定行為は、合衆国全域の本ワイヤーハーネス製品の直接購買者すべてに対する本ワイヤーハーネス価格に影響を与えた。

113.　被告らおよびその共謀者は、合意済みの不正入札および価格協定の共謀を監視および監督するために、合衆国で会議および会話を行った。

114.　被告らおよびその共謀者は、コードネームの使用および私邸または遠隔地での会議などを含む（ただしこれらに限定されない）、彼らの不法行為の秘密的性質を維持するための方法を取っていた。

<u>政府調査</u>

115.　合衆国司法省（以下「DOJ」という）の反トラスト部を含み、様々な合衆国および国際政府当局が、本ワイヤーハーネス製品産業に関連する反競争的行為について現在調査している。

116.　2010年2月23日、連邦捜査局（以下「FBI」という）のデトロイト局および DOJ は、デンソー[Denso]、矢崎[Yazaki]および TRAM の米国事務所を家宅捜査した。DOJ の代弁者であるジーナ・タラモナ[Gina Talamona]は、「反トラスト部は反競争的カルテル行為の可能性について現在調査中です....私達は、ヨーロッパの委員会および外国の競争庁と調整しているところです。」と語った。

117.　2010年2月24日、EC の競争局からの職員が本ワイヤーハーネス製品メーカーの事務所を家宅捜査し、かつ 2010年2月25日、EC プレスリリースは、「委員会が自動車用電気および電子部品供給者産業における、カルテルの疑いを調査していることを認めた....委員会は、カルテルおよび商慣行の制限を禁止している EU 反トラスト規則を問題の会社が違反している可能性があると信じるだけの理由がある。」と発表した。報告は、EU の調査が、レオニ AG[Leoni AG]、レオニ・ケーブル GmbH[Leoni Kabel GmbH]、リア・オートモーティブ・フランス[Lear Automotive France]、デルファイ[Delphi]、矢崎[Yazaki]および SY システムズ[S-Y Systems]を含んでいると示した。

118.　2010年2月24日はまた、日本の公正取引委員会（以下「JFTC」という）が、価格協定カルテルに参加している疑いから、日本のワイヤーハーネス製造業者である矢崎総業株式会社[Yazaki Corporation]、住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]および古河電気工業株式会社[Furukawa Electric Co., Ltd.]の3社の家宅捜査を行ったと報告さ

れた。当該 3 社は合計して、日本のワイヤーハーネス市場の 90%のシェアを持っている。

119.　2011 年 6 月 30 日、被告株式会社フジクラ[Fujikura Ltd.]は、ワイヤーハーネスの取引に関する反トラスト法の違反について、JFTC から当該企業に対する懲戒処分の事前通知を受け取ったと発表した。株式会社フジクラ[Fujikura Ltd.]は、12 億円（1 千 480 万米ドル）の支払い命令を受けた。

120.　2011 年 7 月 20 日、JFTC は、被告ら株式会社デンソー[Denso Corporation] およびその完全所有子会社であるアスモ[Asmo]を含む、日本の自動車部品メーカー7 社に家宅捜査を行った。ジャパン・タイムズ[Japan Times] は、JFTC が「部品製造業者が、部品価格を設定し、かつ自動車製造業者からの注文に入札する前に、どの企業が契約を勝ち取るかを決める会議を、2002 年またはそれより前から開いていたと疑っている」と報告した。

121.　2011 年 7 月 27 日、被告デルファイ[Delphi]は、「電気および電子部品市場に関する欧州連合での調査に関して、デルファイ[Delphi]の行為についての情報を探しているという要請を欧州委員会の反トラスト局から受けた」と 2011 年第二四半期連結財務諸表で発表し、かつ欧州の当局に協力していると発表した。

122.　2011 年 9 月 29 日、DOJ は、被告古河電気工業株式会社[Furukawa Electric Co., Ltd.]および 3 人の役員を、シャーマン反トラスト法[Sherman Antitrust Act]に違反して「自動車用ワイヤーハーネスおよび関連製品の入札を不正に操作し、本ワイヤーハーネス製品および関連製品の価格を上げ、固定し、維持し、または安定させることに合意することにより、自動車部品産業における競争を抑制および排除するための結合および共同謀議に」参加した罪で起訴した。

123. 2011 年 9 月 29 日はまた、被告古河電気工業株式会社[Furukawa Electric Co., Ltd.]および 3 人の役員が、本ワイヤーハーネス製品の販売に関して犯罪的な価格協定および不正入札の共謀に関与したことに対して、罪を認めた。古河電気工業株式会社[Furukawa Electric Co., Ltd.]は、2 億ドルの罰金を支払うことに合意し、役員 3 人は、1 年 1 日から 18 ヶ月までの合衆国での禁錮刑に合意した。

124. DOJ は、これを「自動車部品産業の価格協定および入札談合に対して国際的なカルテル捜査を進めている結果としての初めての起訴」と説明した。

125. 2011 年 9 月 29 日、DOJ プレスリリースで、DOJ の反トラスト部の司法次官補であるシャリス・A. ポズン[Sharis A. Pozen]は、「このカルテルは、わが国の経済の重要な産業に悪影響を与えた、また反トラスト部は連邦捜査局とともに、この手の種類の共同謀議を阻止するために協力し続ける」と述べた。

126. 担当の FBI 捜査官 であるアンドリュー・G. アリーナ[Andrew G. Arena]もまた「企業が組んで価格協定、不正入札、または契約を制御した場合、合衆国の経済システムの土台を壊していることになる。」「FBI は、反トラスト犯罪に関与する企業を積極的に追求することに取り組んでいる。」と述べた。

127. DOJ によると、被告古河電気工業株式会社[Furukawa Electric Co., Ltd.]およびその共謀者は、(a)合衆国で製造および販売される自動車に取付けるために、合衆国で自動車用本ワイヤーハーネス製品を製造した、(b) 合衆国で製造および販売される自動車に取付けるため、および合衆国に輸入するために日本で自動車用本ワイヤーハーネス製品を製造した、並びに (c) 合衆国に輸出され、合衆国で販売されるために日本で製造される自動車に取付けるために、日本で自動車用本ワイヤーハーネス製品を製造した。

128.　　DOJ は、古河電気工業株式会社[Furukawa Electric Co., Ltd.]およびその共謀者が (a)合衆国の自動車製造業者に提出される入札および価格見積もりを議論するために、合衆国および日本において会議および意見交換を行った、 (b) 合衆国の自動車製造業者に提出される入札および価格見積もりに合意した、(c) モデルごとに合衆国で販売される自動車用ワイヤーハーネスおよび関連製品の供給を割り当てることに合意した、 (d) 合衆国の自動車製造業者が要求する価格調整をまとめることに合意した、

(e) 達した合意に従い、合衆国の自動車製造業者に対して入札、価格見積もりおよび価格調整を提出した、 (f) 合衆国の自動車製造業者に対して本ワイヤーハーネス製品を、共謀した価格および非競争の価格で販売した、並びに(g) 当該共同謀議を監視するため、並びにコードネームの使用および私邸または遠隔地での会議などを含み（ただしこれらに限定されない）不法行為を 秘匿するため、会議および意見交換に参加した。

129.　　2011 年 10 月 24 日、合衆国連邦地方裁判所ミシガン州東地区[U.S. District Court for the Eastern District of Michigan]の裁判官ジョージ・スティー[George Steeh]の前で、ナガタ ヒロツグ[Hirotsugu Nagata]は、シャーマン法[Sherman Act]に違反して、本ワイヤーハーネス製品市場の取引を制限した共同謀議の罪を認めた。ナガタ[Nagata]は、ミシガン州プリマス[Plymouth, Michigan]のフルカワ・アメリカ[Furukawa America]に、2004 年 1 月から 2007 年 11 月までは営業部のゼネラル・マネージャー[General Manager of Sales]として、2004 年 1 月から 2009 年 3 月までは最高財務責任者[Chief Financial Officer]として、 および 2004 年 1 月から 2009 年 6 月までは関連合弁会社のマーケティング・マネージャー[Marketing

Manager] として雇用されていた。ナガタ[Nagata]は、共謀者との会議および会話の間「モデルごとに自動車製造業者に販売される自動車用ワイヤーハーネスおよび関連製品の供給を割り当てるため、自動車用ワイヤーハーネスおよび関連製品に対する自動車製造業者への入札価格を操作するため、」並びに、合衆国で販売される本ワイヤーハーネス製品に対する「価格を固定、安定、および維持するための合意に到達した」と、有罪の答弁で認めた。

130.　2011 年 10 月 24 日、合衆国連邦地方裁判所ミシガン州東地区[U.S. District Court for the Eastern District of Michigan]の裁判官ジョージ・スティー[George Steeh]の前で、フノ ジュンイチ[Junichi Funo]は、シャーマン法[Sherman Act]に違反して、本ワイヤーハーネス製品市場の取引を制限した共同謀議の罪を認めた。フノ[Funo]は、日本の古河電気工業株式会社[Furukawa Electric Co., Ltd.]に、2003 年 4 月から 2003 年 8 月まではホンダ営業部担当者[Honda Sales Division representative]として、2003 年 8 月から 2009 年 3 月まではフルカワ・アメリカ[Furukawa America]のホンダ営業部のアシスタント・ゼネラル・マネージャー[Assistant General Manager]として、および 2009 年 3 月から少なくとも 2009 年 7 月までは日本のホンダ営業部のマネージャー[Manager of the Honda Sales Division]として勤めた。フノ[Funo]は、共謀者との会議および会話の間「モデルごとに自動車製造業者に販売される自動車用ワイヤーハーネスおよび関連製品の供給を割り当てるため、自動車用ワイヤーハーネスおよび関連製品に対する自動車製造業者への入札価格を操作するため、」並びに、合衆国で販売される本ワイヤーハーネス製品に対する「価格を固定、安定、および維持するための合意に到達した」と、有罪の答弁で認めた。

131.　2011 年 11 月 10 日、合衆国連邦地方裁判所ミシガン州東地区[U.S. District Court for the Eastern District of Michigan]の裁判官ジョージ・スティー[George Steeh]の前で、ウカイ テツヤ[Tetsuya Ukai]は、シャーマン法[Sherman Act]に違反して、本ワイヤーハーネス製品市場の取引を制限した共同謀議の罪を認めた。ウカイ[Ukai]は、日本の古河電気工業株式会社[Furukawa Electric Co., Ltd.]に、2003 年 4 月から 2005 年 7 月まではホンダ営業部のマネージャー[Manager in the Honda Sales Division]として、2005 年 7 月から 2007 年 4 月まではホンダ営業部のユニット・チーフ[Unit Chief in the Honda Sales Division]として、および 2007 年 4 月から少なくとも 2009 年 7 月まではホンダ営業部のゼネラル・マネージャー[General Manager of the Honda Sales Division]として勤めた。ウカイ[Ukai]は、共謀者との会議および会話の間「モデルごとに自動車製造業者に販売される自動車用ワイヤーハーネスおよび関連製品の供給を割り当てるため、自動車用ワイヤーハーネスおよび関連製品に対する自動車製造業者への入札価格を操作するため、」並びに、合衆国で販売される本ワイヤーハーネス製品に対する「価格を固定、安定、および維持するための合意に到達した」と、有罪の答弁で認めた。

132.　2011 年 11 月 14 日、被告古河電気工業株式会社[Furukawa Electric Co., Ltd.]は、本ワイヤーハーネス製品の販売に関連して、犯罪的な価格協定および不正入札の共同謀議に関与したことについて罪を認めた。古河電気工業株式会社[Furukawa Electric Co., Ltd.]は、その関連期間中「モデルごとに自動車製造業者に販売される自動車用ワイヤーハーネスおよび関連製品の供給を割り当てるため、自動車用ワイヤーハーネスおよび関連製品に対する自動車製造業者への入札価格を操作するため、」並びに、合衆国で販売される本ワイヤーハーネス製品に対する「価格を固定、安定、および維持するための合意に到達した」と、有罪の答弁で認めた。古河電気工業株式会社[Furukawa Electric Co., Ltd.]は、2 億米ドルの罰

33

金を払うことに合意した。

133.　2012 年 1 月 19 日、JFTC は、被告ら矢崎総業株式会社[Yazaki Corporation]お
よび株式会社フジクラ[Fujikura Ltd.]に対して排除命令を出した。JFTC はまた、矢崎総業株
式会社[Yazaki Corporation]、住友電気工業株式会社[Sumitomo Electric Industries, Ltd.]、および
び株式会社フジクラ[Fujikura Ltd.]に罰金を科した。これら被告らに対する JFTC の排除命令
および罰金は、日本の独占禁止法第 3 条に違反した本ワイヤーハーネス製品の販売に関す
る価格協定および不正入札の共同謀議への関与に基づいている。JFTC のプレスリリースに
よると、矢崎総業株式会社[Yazaki Corporation]、住友電気工業株式会社[Sumitomo Electric
Industries, Ltd.]、株式会社フジクラ[Fujikura Ltd.] および古河電気工業株式会社[Furukawa
Electric Co., Ltd.]は、「指定された入札者を選任することで、および指定された入札者が落
札するように管理することで、...実質的に競争を制限した。」JFTC は、矢崎総業株式会
社[Yazaki Corporation]に約 1 億 2,580 万米ドル、住友電気工業株式会社[Sumitomo Electric
Industries, Ltd.]に約 2,750 万米ドル 、株式会社フジクラ[Fujikura Ltd.] に約 1,440 万米ドルの
罰金を科した。古河電気工業株式会社[Furukawa Electric Co., Ltd.]は、価格協定および不正入
札の共同謀議への関与を認めたが、本捜査に導いた情報を JFTC に提供したため、罰金は科
されなかった。

134.　2012 年 1 月 30 日、DOJ は、矢崎総業株式会社[Yazaki Corporation]が
4 億 7 千万米ドルの罰金を支払うことに合意したこと、およびシャーマン法[Sherman Act]第
1 条に違反して、少なくとも早ければ 2000 年 1 月から少なくとも 2010 年 2 月にわたって、
合衆国および他の場所の特定の自動車製造業者に販売される本ワイヤーハーネス製品の入
札を不正に操作すること、および本ワイヤーハーネス製品の価格を固定し、維持し、また
は安定させることに合意したことで、競争を抑制および排除するという共謀者との結合お

および共同謀議に参加した罪で、矢崎総業株式会社[Yazaki Corporation]を起訴している略式起訴状に記載の3つの訴因について罪を認めた。2012年3月1日、被告矢崎総業株式会社[Yazaki Corporation]は、本起訴内容を認めた。

135.　矢崎総業株式会社[Yazaki Corporation]に加えて、ハナムラ ツネアキ[Tsuneaki Hanamura]、クワイ リョウジ[Ryoji Kuwai]、オガワ シゲル[Shigeru Ogawa]およびタカダ ヒサミツ[Hisamitsu Takada]の矢崎[Yazaki]の役員4人が、合衆国および他の場所の特定の自動車製造業者に販売される本ワイヤーハーネス製品の入札を不正に操作すること、および本ワイヤーハーネス製品の価格を固定し、維持し、または安定させることに合意したことで、競争を抑制および排除するという結合および共同謀議に参加したことから生じた反トラスト法違反の罪を認めた。これら矢崎総業株式会社[Yazaki Corporation]の4人の役員は、15ヶ月から2年の禁錮刑に服する。2年の判決は、シャーマン法[Sherman Act]違反に対して合衆国に裁判管轄を自発的に付託した外国人に課された禁錮刑としては最長となる。

136.　2012年1月30日、DOJはまた、株式会社デンソー[Denso Corporation]が、シャーマン法[Sherman Act]第1条に違反して、少なくとも早ければ2000年1月から少なくとも2010年2月にわたって、合衆国および他の場所の自動車製造業者に販売されるECUの入札を不正に操作すること、および当該ECUの価格を固定し、維持し、または安定させることに合意したことで、競争を抑制および排除するという共謀者との結合および共同謀議に参加した罪で、株式会社デンソー[Denso Corporation]を起訴している略式起訴状に記載の2つの訴因について罪を認め、かつ7,800万米ドルの罰金を支払うことに合意したと、発表した。ECUは、本訴状で申し立てている本ワイヤーハーネス製品であり、「自動車の配線、回路基板、ゲージ、および燃料タンクに絶対不可欠」である。2012年3月5日、株式会社デンソー[Denso Corporation]は、本起訴内容を認めた。

137.　2012年4月23日、DOJは、株式会社フジクラ[Fujikura Ltd.]が、シャーマン法[Sherman Act]第1条に違反して、少なくとも早ければ2006年1月から少なくとも2010年2月にわたって、合衆国および他の場所の自動車製造業者に販売される本ワイヤーハーネス製品の入札を不正に操作すること、および本ワイヤーハーネス製品の価格を固定し、維持し、または安定させることに合意したことで、競争を抑制および排除するという共謀者との結合および共同謀議に参加した罪で、株式会社フジクラ[Fujikura Ltd.]を起訴している略式起訴状に記載の1つの訴因について罪を認めたと、発表した。株式会社フジクラ[Fujikura Ltd.]はまた、当該共同謀議の関与に対して2,000万米ドルの罰金を支払うことに合意した。

## 悪意の秘匿

138.　被告らは、本ワイヤーハーネス製品メーカーに対する反トラスト調査が公になったとき、少なくとも2000年1月1日から少なくとも2010年2月にわたって、自身の非競争的行為を原告らおよび本クラスから積極的および不当に秘匿した。その間、原告らおよび本クラスは、相当の注意にも関わらず、原告らの請求を生じさせる影響のある事実を学ばなかったし、または発見しなかった。従って、被告らの悪意の秘匿は、少なくとも2010年2月まで主訴期限を停止させた。

139.　被告らは、顧客および他に向けて、彼らの価格設定および入札活動が単独のものであったと公に表明した。このような虚偽の表明によって、被告らは、彼らの不正入札、顧客割り当て、および価格協定活動の正確な、共謀した、調整した性質について、原告らおよび本クラスメンバーを欺いた。

140.　被告らの不法な行為は、発覚を避けるように意図された手段および方法を介して実行された部分があり、また実際にうまく発覚されることを防いだ。

141.　特に、被告らは、合衆国およびその他の場所の顧客に提出される入札および価格見積もりを議論するために会議、会話、および意見交換に参加した。

142.　これらの会議、会話、および意見交換の間、被告らは、合衆国およびその他の場所の顧客に提出される入札および価格見積もりについて合意した。

143.　被告らは、合衆国およびその他の場所の顧客に販売される本ワイヤーハーネス製品の供給の割り当てにも同じように合意した。

144.　被告らはまた、合衆国およびその他の場所の顧客が要求する価格調整をまとめることにも合意した。

145.　被告らが到達した合意に従って、被告らは、合衆国およびその他の場所の顧客に対して、共謀した入札、価格見積もり、および価格調整を提出した。

146.　当該調整行為の結果、および原告らに気付かれなかったことにより、被告らは、合衆国の購買者に本ワイヤーハーネス製品を共謀した価格および非競争価格で販売した。

147.　本ワイヤーハーネス製品を共謀した価格および非競争価格で販売していることを秘密に保つために、被告らは、コードネームの使用および私邸または遠隔地での会議などを含む（ただしこれらに限定されない）確実な方法を用いた。

148.　さらに、被告らの成功した契約、結合、または共同謀議は、それ自体が本質的に秘密性を有している。

149. 相当の注意にも関わらず、原告らは、被告らの不法な契約、結合、または共同謀議に関する知識が全くなかった。

150. 本ワイヤーハーネス製品を購入する過程で、原告らは、関係している特定の製品の価格を調査した。

151. 原告らは、1人以上の被告らから、様々な価格情報を受け取った。本書で被告らの価格が申し立てている共同謀議により本来あるべき値段よりも高かったということを、原告らが知る手段はなかった。

152. 原告らは、相当の注意にも関わらず、被告らの不法な契約、結合、または共同謀議を、もっと早い段階に、発見することはできなかったし、かつ発見することは不可能であった。被告らは、秘密会議の出席、原告らおよび本クラスへの請求額の理由に対する不実表示、並びに本ワイヤーハーネス製品の顧客の割り当て、不正入札、および価格協定への従事を含み、被告らの契約、結合、または共同謀議を秘匿するための積極的な行為を取った。

## 反トラスト法上の損害

153. 被告らの共同謀議は、本ワイヤーハーネス製品メーカー間の価格競争を抑制し、それにより本ワイヤーハーネス製品の購買者から競争市場の利益を奪い、かつ本ワイヤーハーネス製品の価格を人為的に高値に設定したことにより、原告らおよび本クラスメンバーに損害を及ぼした。

154. 被告らの共同謀議の直接的な結果として、原告らおよび本クラスメンバーは、本来ならば競争市場で支払っていたはずの価格よりも高い値段を本ワイヤーハーネス製品に支払っていたことにより、事業または財産において損害を被った。

<u>救済の申立て</u>

（シャーマン法[Sherman Act]第1条　－　すべての原告らに対する水平的価格協定)

155.　原告らは、上記申立てのすべてを、本書に全面的に記述されているかのように、参照により組み込む。

156.　本クラス期間中、被告らおよびその共謀者は、合衆国法典第15編第1条、シャーマン法[Sherman Act]第1条に違反して、合衆国で販売された本ワイヤーハーネス製品の価格を人為的に上げ、固定し、維持し、または安定させるために取引を抑制する継続的な契約、結合、または共同謀議に参加した。

157.　当該契約、結合、または共同謀議は、被告らおよび共謀者が合衆国で販売される本ワイヤーハーネス製品の価格を固定し、上げ、維持し、または安定させることを推進させる、被告らおよび共謀者間の合意の上での行為、了解済みの行為、または共謀行為をもたらした。当該契約、結合、または共同謀議は、連邦反トラスト法の当然違反を構成する。

158.　被告らは、本クラス期間中、アメリカ合衆国内で販売された本ワイヤーハーネス製品の入札を不正に操作し、本ワイヤーハーネス製品の価格を上げ、固定し、維持し、または安定させることに成功した。

159.　共同謀議を策定および達成するために、被告らおよび共謀者は、共謀して以下を含むことを行った。

a.   合衆国の直接購買者に提出される本ワイヤーハーネスの入札および価格見積もりについて議論するために、合衆国またはその他の場所で会議および意見交換に参加した、

b.   合衆国の直接購買者に提出される本ワイヤーハーネスの入札および価格見積もりについて合意した、

c.   直接購買者から自由および公開競争を奪う方法で、合衆国で販売される本ワイヤーハーネス製品の価格の操作および供給の割り当てについて合意した、

d.   合衆国内の価格見積もりをまとめることに合意した、

e.   達した合意に従った入札、価格見積もり、および価格調整を本ワイヤーハーネス製品の直接購買者に提出した、

f.   合衆国の直接購買者に非競争的価格で本ワイヤーハーネスを販売した、並びに

g.   当該共同謀議を推進させるために、原告らおよび本クラスのその他メンバーから彼らの不法行為を秘匿するための手段を用いた。

160.   被告らの不法行為の直接的結果および近接結果として、原告らおよび本クラスのその他メンバーは、本来ならば競争市場で支払っていた価格よりも高い値段を本ワイヤーハーネス製品に支払っていたことにより、その事業および財産に損害を被った。

<u>請求趣旨申立て</u>

それゆえに、原告らは、原告らおよび本クラスに代わって本裁判所が下す判決および以下の救済を求める。

A.　　連邦民事訴訟規則第23条に従って、原告らを指定された本クラスの代表および原告らの弁護士を本クラス弁護士として、本訴訟を集団訴訟として手続きするという本裁判所の決定、

B.　　本訴状で申し立てている被告らおよびその共謀者による契約、結合、または共同謀議、およびそれらを推進するために行われた行為が、シャーマン法[Sherman Act]第1条の当然違反として、司法的判断が下され、かつエクイティ上の判決が下されること。

C.　　連邦反トラスト法で規定されている通り、原告らおよび本クラスメンバーが、彼らが被った損害賠償を得ること、並びに合衆国法典第15編第15(a)条に従って、原告らおよび本クラスに有利に三倍賠償を科す連帯判決が被告らに対して下されること、

D.　　被告ら、その子会社、関係会社、承継人、譲受人、取得者、並びに各役員、取締役、パートナー、代理人および従業員、並びにその代わりとして行為しているおよび行為していると主張するその他の者が、本書で申し立てている継続および続行する結合、共同謀議、または合意を永久に禁止されること、

E.　　原告らおよび本クラスメンバーが、法律が定める合理的な弁護士費用を含む、本訴訟の費用を回収すること、

F.　　原告らおよび本クラスメンバーが、判決前および判決後の利息を裁定されること、並びに

G.　　原告らおよび本クラスメンバーが、公正かつ適当とされるその他またはさらなる救済を受けること。

41

<u>陪審審理の要求</u>

連邦民事訴訟規則第38(b)条に従って、原告らは、公判に付し得るすべての争点に対して陪審審理を要求する。

日付：2012年5月14日

<u>/s/ デイビッド・H・フィン [David H. Fink]</u>
デイビッド・H・フィンク [David H. Fink] (P28235)
ダリー・ブリサック [Darryl Bressack] (P67820)
フィンク＋アソシエーツ・ロー
[FINK + ASSOCIATES LAW]
ミシガン州ブルームフィールド、ウエストロングレイクロード [100 West Long Lake Road; Ste. 111 Bloomfield Hills, MI] 48304
(248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com

直接購買者暫定幹事弁護士

グレゴリー・P・ハンセル [Gregory P. Hansel]
ランダル・B・ウェイル [Randall B. Weill]
ジョシュア・R・カーバー [Joshua R. Carver]
[PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP]
メーン州ポートランドワンシティセンター私書箱9546 [One City Center, P.O. Box 9546 Portland, ME] 04112-9546
電話番号：(207) 791-3000
ghansel@preti.com
rweill@preti.com
jcarver@preti.com

ジョセフ・C・コーン [Joseph C. Kohn]
ウィリアム・E・ホーセ [William E. Hoese]
ダグラス・A・アブラハムス [Douglas A. Abrahams]
コーン、スイフト＆グラフ、P.C.
[KOHN, SWIFT & GRAF, P.C.]
ペンシルバニア州フィラデルフィア、ワンサウスブロードストリート2100室 [One South Broad Street, Suite 2100 Philadelphia, PA  19107]
電話番号：(215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

マイケル・J・フリード [Michael J. Freed]
スティーヴン・A・カナー [Steven A. Kanner]
ウィリアム・H・ロンドン [William H. London]
マイケル・L・シルバーマン[Michael L. Silverman]
フリードカナーロンドン&ミレンLLC
[FREED KANNER LONDON & MILLEN LLC]
イリノイ州バノックバーンウォーキーガンロード2201、130室
[2201 Waukegan Road, Suite 130 Bannockburn, IL] 60015
電話番号: (224) 632-4500
mfreed@fklmlaw.com
skanner@fklmlaw.com
blondon@fklmlaw.com
msilverman@fklmlaw.com

ユージン・A・スペクター [Eugene A. Spector]
ウィリアム・B・カルデス [William G. Caldes]
ジョナサン・M・ジャガー [Jonathan M. Jagher]
ジェフリー・L・スペクター[Jeffrey L. Spector]
スペクターローズマンコドロブ&ウリリス
[SPECTOR ROSEMAN KODROFF & WILLIS, P.C.]
ペンシルバニア州フィラデルフィアマーケットストリート1818、2500室
[1818 Market Street, Suite 2500 Philadelphia, PA] 19103
電話番号: (215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

直接購買者暫定主任弁護士

W. ジョゼフ・ブラックナー[W. Joseph Bruckner]
ロックリッジ・グリンダル
　　ナウエン P.L.L.P.
[LOCKRIDGE GRINDAL
　　NAUEN P.L.L.P.]
55401 ミネソタ州ミネアポリス市ワシントンアベ
ニューサウス 100
[100 Washington Avenue South
Minneapolis, MN 55401]
Tel: (612) 339-6900
wjbruckner@locklaw.com

ロバート・ボンシニョーレ[Robert Bonsignore]
リチャード・カークナー[Richard Kirchner]
ブライアン・ハーゲン[Brian Hagen]
ポーラ・フラナリー[Paula Flannery]
リサ・スリボダ[Lisa Sleboda]
ボンシグノア &ブリュワー[BONSIGNORE &
BREWER]
03220 ニューハンプシャー州ベルモント市プラマー
ヒルロード 193
[193 Plummer Hill Road
Belmont, NH 03220]
Tel: (781) 856-7650
rbonsignore@class-actions.us
rkirchner@class-actions.us
bhagen@class-actions.us
pflannery@class-actions.us
lsleboda@class-actions.us

ブライアン・ムレー[Brian Murray]
リー・アルバート[Lee Albert]
ムレー・フランク LLP[MURRAY FRANK LLP]
10016 ニューヨーク州ニューヨーク市
マディソンアベニュー275、801 号室
[275 Madison Avenue, Suite 801
New York, NY 10016]
Tel: (212) 682-1818
bmurray@murrayfrank.com
lalbert@murrayfrank.com

ギャレット・ブランチフィールド[Garret
Blanchfield]
ラインハート、ウェンドーフ
　&ブランチフィールド
[REINHARDT, WENDORF & BLANCHFIELD]
55101 ミネソタ州セントポール市
ミネソタストリート 332 、ファーストナショナルバ
ンクビル E-1250
[332 Minnesota St., E-1250 First National Bank Bldg.
332 Minnesota St.
St. Paul, MN 55101]
Tel: (651) 287-2100
g.blanchfield@rwblawfirm.com

43

ソロモン B. セラ[Solomon B. Cera]
ゴールド・ベネット・セラ
　＆サイドナーLLP
[GOLD BENNETT CERA
　& SIDENER LLP]
94105 カリフォルニア州サンフランシスコ市
マーケットストリート 595、2300 号室
[595 Market Street, Suite 2300
San Francisco, CA 94105]
Tel: (415) 777-2230
scera@gbcslaw.com

カルロス F. フィンリー[Karlos F. Finley]
ボテラー、フィンリー & ウルフ P.C.[BOTELER,
FINLEY & WOLFE, P.C.]
36604 アラバマ州モバイル市
ドーフィンストリート 1252
[1252 Dauphin Street
Mobile, AL 36604]
Tel: (251)433-7766
karlos@bfw-lawyers.com

ブルース E. ガースタイン[Bruce E. Gerstein]
ガーウィン・ガースタイン&フィッシャーLLP
[GARWIN GERSTEIN & FISHER LLP]
　10036 ニューヨーク州ニューヨーク市
ブロードウェイ 1501、1416 号室
[1501 Broadway, Suite 1416
New York, NY 10036]
Tel: (212) 398-0055
bgerstein@garwingerstein.com

ジェフリー S. ゴールデンバーグ[Jeffrey S.
Goldenberg]
ゴールデンバーグ・シュナイダーLPA
[GOLDENBERG SCHNEIDER, LPA]
45202 オハイオ州シンシナティ市
イーストセブンスストリート 35、600 号室
[35 East Seventh Street, Suite 600
Cincinnati, OH 45202]
Tel: (513) 345-8291
jgoldenberg@gs-legal.com

ジェームズ F.B.ダニエルズ[James F.B. Daniels]
マクダウェル、ライス、スミス
　& バカナン P.C.
[MCDOWELL, RICE, SMITH
　& BUCHANAN, P.C. ]
64112-1005 ミズーリ州カンザスシティ
ウエストフォーティセブンスストリート 605 、350
号室  [605 West 47th Street, Suite 350
Kansas City, MO 64112-1005]
Tel:  (816) 753-5400
jdaniels@mcdowellrice.com

ジョゼフ M. フィッシャー[Joseph M. Fischer]
カーソン・フィッシャーP.L.C.[CARSON FISCHER,
P.L.C.]
48302-1924 ミシガン州ブルームフィールドヒルズ
市アンドバーロードウエスト 4111、2 階
[4111 Andover Road West - Second Floor
Bloomfield Hills, MI 48302-1924]
Tel:  (248) 644-4840
jfischer@carsonfischer.com

ルイス・ゴールドファーブ[Lewis Goldfarb]
マックエルロイ、ドイチェ、マルバニー
　& カーペンターLLP
[MCELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP]
07962-2075 ニュージャージー州モリスタウン市
マウントケンベルアベニュー1300
私書箱 2075
[1300 Mount Kemble Avenue, P.O. Box 2075
Morristown, NJ  07962-2075]
Tel: (973) 425-8689
lgoldfarb@mdmc-law.com

スティーブ・グリーンフォゲル[Steve Greenfogel]
ライト・デパルマ・グリーンバーグ LLC
[LITE DEPALMA GREENBERG, LLC]
19102 ペンシルベニア州フィラデルフィア市
ロカストストリート 1521
[1521 Locust Street
Philadelphia, PA 19102]
Tel:  (215) 564-5182
sgreenfogel@litedepalma.com

44

スティーブン D.アーウィン[Steven D. Irwin]
リーチ・ティシュマン・ファスカルド
　　& ランプル LLC
[LEECH TISHMAN FUSCALDO
　　& LAMPL, LLC]
15219 ペンシルベニア州ピッツバーグ市
ウィリアムペンプレース 525 、30 階
[525 William Penn Place, 30th Floor
Pittsburgh, PA 15219]
Tel: (412) 261-1600
sirwin@leechtishman.com

ダニエル J. モギン[Daniel J. Mogin]
ザ・モギン法律事務所 P.C.[THE MOGIN LAW
FIRM, P.C.]
92101 カリフォルニア州サンディエゴ市
ブロードウェイ 707 、1000 号室
[707 Broadway, Suite 1000
San Diego, CA 92101]
Tel: (619) 687-6611
dmogin@moginlaw.com

リンダ P. ナスバウム[Linda P. Nussbaum]
ロバート G. アイスラー[Robert G. Eisler]
グラント & アイゼンホファー P.A.
[GRANT & EISENHOFER P.A.]
10017 ニューヨーク州ニューヨーク市
レキシントンアベニュー485、29 階
[485 Lexington Avenue, 29th Floor
New York, NY 10017]
Tel: (646) 722-8500
lnussbaum@gelaw.com

ダスティン M. ローチ[Dustin M. Roach]
ヴァンギルダー & トリュジンカ P.C.[VAN
GILDER & TRZYNKA, P.C.]
46802 インディアナ州フォートウェイン市
イーストウェインストリート 436
[436 E. Wayne Street, Fort Wayne, IN 46802]
Tel: (260) 424-8132
droach@vgtlaw.com

アーウィン B. レビン[Irwin B. Levin]
コーヘン & マラド LLP[COHEN & MALAD, LLP]
46204 インディアナ州インディアナポリス市
ワンインディアナスクエア 1400 号室
[One Indiana Square, Suite 1400
Indianapolis, IN 46204]
Tel: (317) 636-6481
ilevin@cohenandmalad.com

D. マイケル・ヌーナン[D. Michael Noonan]
シャヒーン& ゴードン P.A.[SHAHEEN & GORDON,
P.A.]
03821 ニューハンプシャー州ドーバー市
ワシントンストリート 140、2 階
私書箱 977
[P.O. Box 977
140 Washington Street, 2nd floor
Dover, NH 03821]
Tel: (603) 749-5000
mnoonan@shaheengordon.com

ロバート・プーラッチ [Robert Peurach]
ダクマク・プーラッチ P.C.
[DAKMAK PEURACH, P.C.]
48226 ミシガン州デトロイト市
グリスワルドストリート 615、600 号室
[615 Griswold Street, Suite 600
Detroit, MI 48226]
Tel: (866) 732-9522
rpeurach@gdakmak.com

R.アレキサンダー・サベリ[R. Alexander Saveri]
カディオ・ジルポリ[Cadio Zirpoli]
サベリ&サベリ INC.[SAVERI & SAVERI, INC.]
94111 カリフォルニア州サンフランシスコ市
サンソムストリート 706
[706 Sansome Street, San Francisco, CA 94111]
Tel: (415) 217-6810
rick@saveri.com
cadio@saveri.com

ウェズリー・スチュリー[Wesley Steury]
バート・ブリー・ディクソン・サットン＆
ブルーム LLP
[BURT BLEE DIXON SUTTON & BLOOM, LLP]
46802 インディアナ州フォートウェイン市
イーストメインストリート 200、ファーストソ
ースバンキングセンター 1000 号室
[200 East Main Street, Suite 1000
1st Source Banking Center
Fort Wayne, IN 46802]
Tel: (260) 426-1300
Wsteury@burtblee.com

ステファン M.スミス[Stephen M. Smith]
ジョセフ・スミス社[JOSEPH SMITH, LTD.]
23661 バージニア州ハンプトン市
ケコフタンロード 2100
[2100 Kecoughtan Road
Hampton, VA 23661]
Tel: (757) 244-7000 内線[Ext.] 123
ssmith@braininjurylawcenter.com

マイケル T. スミス[Michael T. Smith]
マイケル T. スミス
法律事務所
[LAW OFFICES OF MICHAEL T. SMITH]
60172 イリノイ州ロセル市
ウエストアービングパークロード 440
[440 West Irving Park Road
Roselle, IL 60172]
Tel:  (847) 380-5899
lawoffice0724@sbcglobal.net

ジェイソン J. トンプソン [Jason J. Thompson]
ランス A. ヤング[Lance A. Young]
ソマーズ・シュワルツ PC[SOMMERS SCHWARTZ
PC ]
48075 ミシガン州サウスフィールド市
タウンセンター 2000、900 号室
[2000 Town Center, Suite 900
Southfield, MI 48075 ]
Tel: (248) 355-0300
jthompson@sommerspc.com
lyoung@sommerspc.com

46

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE WIRE HARNESS SYSTEMS ANTITRUST LITIGATION | : Master File No. 12-md-02311 :  :  :  :  : |
| THIS DOCUMENT RELATES TO: | :  : |
| All Direct Purchaser Actions | :  : |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## SUMMARY OF THE CASE

1.      Plaintiffs, individually and on behalf of the Class described below, bring this class action against Defendants for damages and injunctive relief under the antitrust laws of the United States on behalf of direct purchasers who, during the Class Period, purchased Wire Harness Products, as defined below, in the United States from one or more of the Defendants.  Defendants are manufacturers or sellers of Wire Harness Products that are manufactured or sold in the United States.

2.      Plaintiffs allege that Defendants conspired to rig bids for, and to raise fix, maintain, or stabilize the prices of, Wire Harness Products sold in the United States from at least as early as January 1, 2000 until at least February 28, 2010 in violation of Section 1 of the Sherman Act.  Plaintiffs further allege that Defendants fraudulently concealed their conspiracy.

3.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class paid higher prices for Wire Harness Products than they would have paid in a competitive market.

## JURISDICTION AND VENUE

4.     Plaintiffs bring this action to obtain injunctive relief and to recover damages, including treble damages, costs of suit and reasonable attorneys' fees, as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

5.     The Court has jurisdiction over the subject matter of this action pursuant to Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337. Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce has been carried out in this District, and one or more of the Defendants reside in this District.

6.     This Court has personal jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership or control of its United States subsidiaries: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Wire Harness Products throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) was engaged in an illegal price-fixing conspiracy that was

directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

7.    Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anti-competitive effects upon interstate commerce within the United States.

8.    Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

<u>DEFINITIONS</u>

9.    The "Class Period" is from January 1, 2000 through the present.

10.    The term "Wire Harness Products", as used in this Complaint, refers to wire harnesses and the following related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors used in motor vehicles.

11.    Wire harnesses are electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in motor vehicles.

3

12.    "Defendant" or "Defendants" as used herein, includes all of the named Defendants' predecessors during the Class Period.

## TRADE AND COMMERCE

13.    During the Class Period each Defendant sold Wire Harness Products in the United States, in a continuous and uninterrupted flow of interstate commerce.

14.    During the Class Period, Defendants collectively controlled a majority of the market for Wire Harness Products, both globally and in the United States.

15.    The business activities of the Defendants substantially affected interstate trade and commerce in the United States.

## THE PARTIES

Plaintiffs

16.    Plaintiff Mexican Industries in Michigan, Inc. by and through Timothy Miller, its Trustee in Bankruptcy ("Mexican Industries") is a Michigan corporation with its principal place of business in Detroit, Michigan.  Plaintiff Mexican Industries purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

17.    Plaintiff Paesano Connecting Systems, Inc. ("Paesano") is a Pennsylvania corporation with its principal place of business in Ridgway, Pennsylvania.  Plaintiff Paesano purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

18.     Plaintiff Craft-Co Enterprises, Inc. ("Craft-Co") is a Mississippi corporation with its principal place of business in Brandon, Mississippi. Plaintiff Craft-Co purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

19.     Plaintiff Findlay Industries, Inc. ("Findlay") is an Ohio corporation with its principal place of business in Findlay, Ohio. Plaintiff Findlay purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

20.     Plaintiff Cesar-Scott, Inc. ("Cesar-Scott") is a Texas corporation with its principal place of business in El Paso, Texas. Plaintiff Cesar-Scott purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

21.     Plaintiff Martinez Manufacturing, Inc. ("Martinez") is an Illinois corporation with its principal place of business in Cary, Illinois. Plaintiff Martinez purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

22.     Plaintiff South Star Corporation ("South Star") is a Virginia corporation with its principal place of business in Elliston, Virginia. Plaintiff South Star purchased Wire Harness Products directly from one or more of the Defendants during the Class Period.

## The Delphi Defendants

23.    Defendant Delphi Automotive LLP is a partnership organized under the laws of England and Wales.  It was formed in 2009 to buy assets of Troy, Michigan-based Delphi Corporation, which filed for bankruptcy protection in 2005. Defendant Delphi Automotive LLP – directly or through its subsidiaries, which it wholly owned or controlled –  manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

24.    Defendant Delphi Automotive Systems, LLC is a Delaware corporation with its principal place of business in Troy, Michigan.  It is a subsidiary of and wholly owned or controlled by its parent, Delphi Automotive LLP.  Officers from Defendant Delphi Automotive LLP work out of the Michigan offices of Defendant Delphi Automotive Systems, LLC. Defendant Delphi Automotive Systems, LLC manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

25.    Defendant DPH Holdings Corporation (f/k/a Delphi Corporation) is a Delaware corporation with its principal place of business in Warren, Ohio.  It is a subsidiary of and wholly owned or controlled by its parent, Delphi Automotive LLP. Defendant DPH Holdings Corporation manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

26.    Defendant Delphi Furukawa Wiring Systems LLC is a limited liability company created in 2004 as a joint venture between Delphi Corporation and Furukawa Electric Co., Ltd. with its principal place of business in Ann Arbor, Michigan.  Delphi Furukawa Wiring Systems LLC manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

27.    Defendants Delphi Automotive LLP, Delphi Automotive Systems, LLC, DPH Holdings Corporation and Delphi Furukawa Wiring Systems LLC shall collectively be referred to herein as the "Delphi Defendants" or "Delphi."

**The Denso Defendants**

28.    Defendant Denso Corporation is a Japanese corporation.  Defendant Denso Corporation – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

29.    Defendant Denso International America, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan.  It is a subsidiary of and wholly owned or controlled by its parent, Denso Corporation. Defendant Denso International America, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.  During the Class Period, its activities in the United States were under the control and direction of Denso Corporation.

7

30.     Defendant Asmo Co. Ltd. ("Asmo") is a Japanese corporation with its principal place of business in Japan. Asmo is a wholly-owned and controlled subsidiary of Defendant Denso Corporation. Defendant Asmo manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Denso Corporation.

31.     Defendants Denso Corporation, Denso International America, Inc. and Asmo Co., Ltd. shall collectively be referred to herein as the "Denso Defendants" or "Denso."

**The Fujikura Defendants**

32.     Defendant Fujikura Ltd. is a Japanese corporation. Defendant Fujikura Ltd. – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

33.     Defendant Fujikura America, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. It is a subsidiary of and wholly owned or controlled by its parent, Fujikura Ltd. Defendant Fujikura America, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

During the Class Period, its activities in the United States were under the control and direction of Fujikura Ltd.

34.    Defendants Fujikura Ltd. and Fujikura America, Inc. shall collectively be referred to herein as the "Fujikura Defendants" or "Fujikura."

**The Furukawa Defendants**

35.    Defendant Furukawa Electric Co., Ltd. is a Japanese corporation. Defendant Furukawa Electric Co., Ltd. – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

36.    Defendant American Furukawa, Inc. is a Delaware corporation with its principal place of business in Plymouth, Michigan.  It is a subsidiary of and wholly owned or controlled by its parent, Furukawa Electric Co. Ltd.  Defendant American Furukawa, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.  During the Class Period, its activities in the United States were under the control and direction of Furukawa Electric Co., Ltd.

37.    Defendant Furukawa Wiring Systems America, Inc. f/k/a Furukawa Lear Corporation and Lear Furukawa Corporation is a Delaware corporation with its principal place of business in El Paso, Texas.  Defendant Furukawa Wiring Systems America, Inc. is 60% owned by Furukawa Electric Co., Ltd. and 40% owned by American Furukawa, Inc.  During the Class Period, Furukawa Wiring Systems

America, Inc. operated as a joint venture between Lear Corporation and Furukawa Electric Co., Ltd. that manufactured, distributed or sold Wire Harness Products that were purchased throughout United States, including in this District.  In June 2010, Furukawa Electric Co., Ltd. purchased all of Lear's Corporation's remaining interest.

38.     Defendants Furukawa Electric Co., Ltd. American Furukawa, Inc. and Furukawa Wiring Systems America, Inc. shall collectively be referred to herein as the "Furukawa Defendants" or "Furukawa."

**The Lear Defendants**

39.     Defendant Lear Corporation is a Delaware corporation with its principal place of business in Southfield, Michigan.  Defendant Lear Corporation – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

40.     Defendant Kyungshin-Lear Sales and Engineering, LLC is a Delaware corporation with its principal place of business in Selma, Alabama.  It is a joint venture between Defendant Lear Corporation and Kyungshin Corporation of South Korea.  Defendant Kyungshin-Lear Sales and Engineering, LLC manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

41.     Defendants Lear Corporation and Kyungshin-Lear Sales and Engineering, LLC shall collectively be referred to herein as the "Lear Defendants" or "Lear."

42.     Lear filed for Chapter 11 bankruptcy protection on July 7, 2009. After its emergence from Chapter 11 bankruptcy proceedings on November 9, 2009, Lear continued to sell Wire Harness Products pursuant to and as part of its participation in furtherance of the conspiracy. From and after November 2009, Lear had significant Wire Harness Products sales in the United States at supra-competitive prices. In 2010 alone, Lear had $2.56 billion in total sales in its electric power and management systems, which includes significant sales of Wire Harness Products in the United States pursuant to the conspiracy.

**The Leoni Defendants**

43.     Defendant Leoni AG is a German corporation. Defendant Leoni AG – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

44.     Defendant Leoni Wiring Systems, Inc. is a Delaware corporation with its principal place of business in Tucson, Arizona. It is a subsidiary of and wholly owned or controlled by its parent, Leoni AG. Defendant Leoni Wiring Systems Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

11

During the Class Period, its activities in the United States were under the control and direction of Leoni AG.

45.    Defendant Leonische Holding, Inc. is a Delaware corporation with its principal place of business in Tucson, Arizona. It is a subsidiary of and wholly owned or controlled by its parent, Leoni AG. Defendant Leonische Holding, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Leoni AG.

46.    Defendant Leoni Kabel GmbH is a German corporation. Defendant Leoni Kabel GmbH manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

47.    Defendant Leoni Wire Inc. is a Massachusetts corporation with its principal place of business in Chicopee, Massachusetts. Leoni Wire Inc. is a wholly-owned and controlled subsidiary of Defendant Leoni AG. Defendant Leoni Wire Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Leoni AG.

48.     Defendants Leoni AG, Leoni Wiring Systems, Inc., Leonische Holding, Inc., Leoni Kabel GmbH and Leoni Wire Inc. shall collectively be referred to herein as the "Leoni Defendants" or "Leoni."

**The Sumitomo Defendants**

49.     Defendant Sumitomo Electric Industries, Ltd. is a Japanese corporation.  Defendant Sumitomo Electric Industries, Ltd. – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

50.     Defendant Sumitomo Wiring Systems, Ltd. is a Japanese corporation. Defendant Sumitomo Wiring Systems, Ltd. – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

51.     Defendant Sumitomo Electric Wiring Systems, Inc. is a Delaware corporation with its principal place of business in Bowling Green, Kentucky.  It is a joint venture between Defendants Sumitomo Electric Industries, Ltd. and Sumitomo Wiring Systems, Ltd.  Defendant Sumitomo Electric Wiring Systems, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control

and direction of Sumitomo Electric Industries, Ltd. and Sumitomo Wiring Systems, Ltd.

52.   Defendant K&S Wiring Systems, Inc. is a Delaware corporation with its principal place of business in La Vergne, Tennessee.  It is a subsidiary of and wholly owned or controlled by its parent, Sumitomo Electric Industries, Ltd. Defendant K&S Wiring Systems, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.  During the Class Period, its activities in the United States were under the control and direction of Sumitomo Electric Industries, Ltd.

53.   Defendant Sumitomo Wiring Systems (U.S.A.) Inc. is a Michigan corporation with its principal place of business in Novi, Michigan.  It is a joint venture between Defendants Sumitomo Electric Industries, Ltd. and Sumitomo Wiring Systems, Ltd.  Defendant Sumitomo Wiring Systems (U.S.A.) Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Sumitomo Electric Industries, Ltd. and Sumitomo Wiring Systems, Ltd.

54.   Defendant Sumitomo Electric Wintec America, Inc. is a Kentucky corporation with its principal place of business in Edmonton, Kentucky.  Sumitomo Electric Wintec America, Inc. is a wholly-owned and controlled subsidiary of

Defendant Sumitomo Electric Industries, Ltd. Defendant Sumitomo Electric Wintec America, Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Sumitomo Electric Industries, Ltd.

55.     Defendants Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc., Sumitomo Wiring Systems (U.S.A.) Inc., and Sumitomo Electric Wintec America, Inc. shall collectively be referred to herein as the "Sumitomo Defendants" or "Sumitomo."

**The Yazaki Defendants**

56.     Defendant Yazaki Corporation is a Japanese corporation. Defendant Yazaki Corporation – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

57.     Defendant Yazaki North America, Inc. is an Illinois corporation with its principal place of business in Canton Township, Michigan. It is a subsidiary of and wholly owned or controlled by its parent, Yazaki Corporation. Defendant Yazaki North America Inc. manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District,

during the Class Period.  During the Class Period, its activities in the United States were under the control and direction of Yazaki Corporation.

58.     Defendant S-Y Systems Technologies Europe GmbH is a German corporation.  S-Y Systems Technologies Europe GmbH was formed as a joint venture between Siemens and Yazaki Corporation.  Defendant S-Y Systems Europe GmbH – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

59.     Defendant S-Y Systems Technologies America, LLC is a Delaware corporation with its principal place of business in Dearborn, Michigan.  It is currently a wholly owned subsidiary of or controlled by its parent Defendant Yazaki Corporation, but was formerly a joint venture between Siemens VDO Automotive AG and Yazaki Corporation.  Defendant S-Y Systems Technologies America, LLC manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities in the United States were under the control and direction of Siemens and Yazaki Corporation, or its current Japanese parent, Yazaki Corporation.

60.     Yazaki Corporation, Yazaki North America, Inc., S-Y Systems Technologies Europe GmbH, and S-Y Systems Technologies America, LLC are herein referred to as shall collectively be referred to herein as the "Yazaki Defendants" or "Yazaki."

**The Tokai Rika Defendants**

61.     Defendant Tokai Rika Co., Ltd. is a Japanese corporation.  Defendant Tokai Rika Co., Ltd. manufactured, marked or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.

62.     Defendant TRAM, Inc. ("TRAM") is a Michigan corporation with its principal place of business in Plymouth, Michigan.  TRAM is a wholly-owned and controlled subsidiary of Defendant Tokai Rika Co., Ltd. Defendant TRAM manufactured, marketed or sold Wire Harness Products that were purchased throughout the United States, including in this District, during the Class Period.  During the Class Period, its activities in the United States were under the control and direction of Tokai Rika Co., Ltd.

63.     Defendants Tokai Rika Co., Ltd. and TRAM, Inc. are collectively referred to herein as "Tokai Rika."

**DEFENDANTS' CO-CONSPIRATORS AND AGENTS**

64.     Various persons or firms not named as Defendants herein have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.  The Defendants are jointly and severally liable for the acts of their co-conspirators whether named or not named as Defendants in this Complaint.

17

65.    Each Defendant acted as the agent or joint venturer of or for other Defendants with respect to the acts, violations and common course of conduct alleged by Plaintiffs.

## CLASS ACTION ALLEGATIONS

66.    Plaintiffs bring this action both on behalf of themselves and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3).  The Class is defined as follows:

> All individuals and entities that purchased Wire Harness Products in the United States directly from one or more Defendants or co-conspirators from January 1, 2000 through the present.

67.    Plaintiffs do not know the exact number of Class members, such information being in the exclusive control of Defendants.  Due to the nature of the trade and commerce involved, however, Plaintiffs believe that the Class is so numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable.

68.    There are questions of law or fact common to the class:

a.    Whether Defendants engaged in a contract, combination, or conspiracy to rig bids for, or to raise, fix, maintain, or stabilize prices of Wire Harness Products sold in the United States;

b.    Whether Defendants agreed to allocate the supply of Wire Harness Products sold to certain direct purchasers in the United States on a model-by-model basis;

18

      c.     Whether Defendants' conduct caused Wire Harness Products to be sold in the United States at artificially high prices;

      d.     Whether Plaintiffs and other members of the Class were injured by Defendants' conduct, and, if so, the appropriate class-wide measure of damages for Class members; and

      e.     Whether Plaintiffs and other members of the Class are entitled to injunctive relief and, if so, the nature and extent of such relief.

69.     These questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

70.     Plaintiffs' claims are typical of the claims of the Class because Plaintiffs directly purchased Wire Harness Products from one or more of the Defendants, all Class members were damaged by the same conspiracy alleged herein, and the relief sought by Plaintiffs is common to the Class.

71.     Plaintiffs will fairly and adequately represent the interests of the Class in that Plaintiffs are direct purchasers of Wire Harness Products and have no conflict with any other members of the Class. Furthermore, Plaintiffs have retained competent counsel experienced in antitrust, class action, and other complex litigation.

72.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

73.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution of this matter as a class action will eliminate the possibility of repetitive litigation and there are no inherent barriers to managing the case as a class action.

74.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying outcomes.

75.     The Class is also readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

<u>INDUSTRY BACKGROUND</u>

76.     Wire harnesses are systems of electrical and electronic cables, wires and connectors used to transmit informational signals or operating currents to electronic control units, wiring, circuit boards, and other components in motor vehicles.

77.     Wire harness assemblies consist of raw, coiled wire, which is cut to length and terminated.  Individual circuits are assembled together on a jig or table, inserted into connectors and wrapped or taped to form wire harness assemblies.

78.     Wire harnesses have color coded wires that are designed to support specific electrical and electronic motor vehicle features.  Most, if not all, electrical and electronic devices in a vehicle rely on a wire harness to provide electric current and data transmission for operation.

79.     Motor vehicles contain masses of wires that can amount to several kilometers in length.  A motor vehicle's wiring system is organized into multiple

wire harnesses.  Wire harnesses provide organized connection points for multiple wiring configurations.  The harness feature binds wires and cables into a bundle, which provides protection against deterioration or damage from vibration, abrasions, and moisture.

80.     Wire Harness Products are installed by manufacturers in new vehicles as part of the manufacturing process.  Also, Wire Harness Products are installed in vehicles to replace worn out, defective or damaged parts.

81.     Automotive electrical wiring is the wiring that runs throughout the vehicle.

82.     High voltage wiring is integral to vehicles equipped with hybrid, fuel-cell or electric-powered powertrains.

83.     Lead wire assemblies connect a wire carrying electrical current from the power source to an electrode holder or a group clamp.

84.     Cable bonds are the electrical connection between the armor or sheath of one cable and that of an adjacent cable or across a wire in the armor.

85.     Automotive wiring connectors connect various types of wires in a motor vehicle.

86.     Automotive wiring terminals are the ends of a wire that provide a point of connection to external circuits.

87.     Electronic control units ("ECUs") are embedded modules or systems that control one or more of the electrical systems or subsystems in a motor vehicle.

Motor vehicles are equipped with a large number of ECUs that operate various motor vehicle functions and exchange large volumes of data with one another.

88.  Fuse boxes are modules that hold the fuses for the various electrical circuits, all of which are routed through the fuse box.  The primary purpose of an electrical fuse is to help protect components on a circuit from damage in the event of a short circuit or a current spike or overload.

89.  Relay boxes are modules that hold the electrical switches that transmit impulses from one component to another, and can be used to connect or break the flow of the current in a circuit.  Once a relay is activated it connects an electrical or other data supply to a particular component or accessory.

90.  Junction blocks are used as electrical connection points for the distribution power or distribution of a ground.

91.  Power distributors serve to distribute power at varying levels to various electrical components.

Requests For Quotation

92.  Motor vehicle Original Equipment Manufacturers ("OEMs") require multiple sources for motor vehicle parts.  As part of their supply chain and procurement process, OEMs issue Requests for Quotation ("RFQs") to parts suppliers on a model-by-model basis for model specific Wire Harness Products.

93.  RFQs are a standard business practice that allow parts suppliers to submit price quotations or bids on specific products or services.

94.     Foreign OEMs participate in RFQs to procure parts for U.S.-manufactured vehicles both abroad and in the United States.

95.     Generally, OEMs issue Wire Harness Products RFQs to begin the bidding process approximately three years prior to production of a motor vehicle.

96.     OEMs' RFQs typically include specifications and other relevant information for each motor vehicle product.  In response to RFQs, parts suppliers submit price quotations, or bids, to OEMs to be considered for an award.

97.     After receiving responses to RFQs from each respective bidder, OEMs then award the business to the selected parts suppliers generally for the life of the vehicle model and further confirmed with annual purchase orders.

98.     Suppliers to OEMs have been required to directly purchase Wire Harness Products from Defendants at prices established by the OEMs and Defendants in the bidding process.

## The Wire Harness Products Industry

99.     It was important to the success of the cartel alleged herein that its members control and manipulate the prices paid by OEMs in order to control the prices paid by all other direct purchasers of Wire Harness Products.

100.    The Wire Harness Products industry is heavily concentrated.  Wire Harness Products manufacturers are all capable of producing Wire Harness Products for use in any motor vehicle.

101.   During the Class Period the top four automotive Wire Harness

Products manufacturers controlled 76.95% of the global market, and the top seven,

all of which are Defendants, controlled 87.95% of the global market.  See Figure 1.

**Market Shares of World's Major Manufacturers of Automotive Wiring Harness, 2009**

| Yazaki | 29.81% |
|--------|--------|
| Sumitomo | 24.38% |
| Delphi | 16.71% |
| Leoni | 6.05% |
| Lear | 4.70% |
| Furukawa | 3.61% |
| Fujikura | 2.69% |

Figure 1.

102.   According to *Research in China*, an international market research and

market data firm, the global automotive wiring harness market reached U.S. $25.3

billion in 2009, and grew by 6.6% to $26.9 billion in 2010.  By 2013, the global

automotive wiring harness market is projected to increase to almost U.S. $33

billion.  See Figure 2.



| | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|
| Market Scale (US$ million) | 29,302 | 24,980 | 25,317 | 26,982 | 29,380 | 30,010 | 32,980 |
| Growth Rate | 16.9% | -14.7% | 1.3% | 6.6% | 9.3% | 9.0% | 3% |

Figure 2.

103.    There are high barriers to entry in the Wire Harness Products market

due to high capital investment in plant and machinery and technical expertise.  It is

critically important for parts suppliers to maintain minimum viable scale in order

to efficiently produce parts within the price and quantity parameters established by

the OEMs.  As such, loss of one's position as a supplier of choice could have severe

consequences to the business models of Defendants and their co-conspirators.

104.   In a competitive market, economies of scale and decreasing costs would lead to lower prices because manufacturers typically will reduce pricing rather than lose market share.  In a market subject to a conspiracy to fix prices, however, competitors do not have the same incentive to lower prices despite steady or decreasing input costs because, based on a conspiratorial agreement, there is a smaller risk of losing sales to lower-priced competitors.

105.   During the Class Period, the prices of Wire Harness Products increased, while the primary manufacturing input costs remained steady.  In fact, the Yazaki, Sumitomo, Leoni, Furukawa, Delphi, Lear and Fujikura Defendants have extensive experience in wiring production and are able to control associated input costs.

## Opportunities To Conspire

106.   Defendants and their co-conspirators attended industry events that provided the opportunity to meet, disguise their improper discussions, and perform acts in furtherance of the conspiracy.  For example, Defendants and their co-conspirators have regularly attended the annual North American International Auto Show ("NAIAS") in Detroit, Michigan and the Automotive Aftermarket Products Expo in Las Vegas, Nevada.

## The Conspiracy

107.   During the Class Period, Defendants and their co-conspirators formed an international cartel to suppress and eliminate competition for Wire Harness

Products by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, Wire Harness Products.

108.    Defendants and their co-conspirators participated in meetings, conversations, and communications in the United States and abroad to discuss bids and price quotations for Wire Harness Products to be submitted to automobile manufacturers in the United States.

109.    Defendants and their co-conspirators agreed during those meetings, conversations, and communications to allocate the supply of Wire Harness Products sold to automobile manufacturers in the United States on a model-by-model basis.

110.    Defendants and their co-conspirators also agreed during meetings, conversations, and communications to coordinate price adjustments requested by automobile manufacturers in the United States.

111.    Defendants and their co-conspirators submitted bids, price quotations, and price adjustments to automobile manufacturers in the United States in accordance with their conspiratorial agreements.

112.    Defendants' pricing actions regarding their sales of Wire Harness Products to automobile manufacturers had an impact on prices for Wire Harness Products for all direct purchasers of Wire Harness Products throughout the United States.

113.    Defendants and their co-conspirators held meetings and conversations in the United States to monitor and police the agreed-upon bid-rigging and price-fixing conspiracy.

114.    Defendants and their co-conspirators undertook measures to maintain the secretive nature of their unlawful conduct, including but not limited to, using code names and meeting at private residences or remote locations.

Government Investigations

115.    Various U.S. and international governmental authorities, including the U.S. Department of Justice ("DOJ") via its Antitrust Division, are currently investigating anticompetitive conduct in connection with the Wire Harness Products industry.

116.    On February 23, 2010, the Federal Bureau of Investigation's ("FBI") Detroit division and the DOJ raided the U.S. offices of Denso, Yazaki, and TRAM. DOJ spokeswoman Gina Talamona said that "[t]he antitrust division is investigating the possibility of anticompetitive cartel conduct. . . . We are coordinating with the European Commission and other foreign competition authorities."

117.    On February 24, 2010, officials from the Competition Directorate of the EC raided the offices of Wire Harness Products manufacturers and a February 25, 2010 EC press release disclosed that the "Commission confirms investigation into suspected cartel in the sector of automotive electrical and electronic components suppliers. . . . The Commission has reason to believe that the companies concerned may have violated EU antitrust rules that prohibit cartels and restrictive business practices." Reports indicated that the EU's investigation included Leoni AG, Leoni Kabel GmbH, Lear Automotive France, Delphi, Yazaki and S-Y Systems.

118.   Also on February 24, 2010, it was reported that the Japanese Fair Trade Commission ("JFTC") raided three Japanese wire harness manufacturers suspected of participating in a price-fixing cartel: Yazaki Corporation, Sumitomo Electric Industries, Ltd., and Furukawa Electric Co., Ltd.  The three manufacturers have a combined 90% share of the Japanese wire harness market.

119.   On June 30, 2011, Defendant Fujikura Ltd. announced that it received an advance notice of disciplinary action against the company from the JFTC for violating antitrust laws regarding the trading of wiring harnesses.  Fujikura Ltd. was ordered to pay 1.2 billion yen (U.S. $14.8 million).

120.   On July 20, 2011, the JFTC raided seven Japanese auto parts makers, including Defendants Denso Corporation and its wholly-owned subsidiary Asmo. The *Japan Times* reported that the JFTC "suspects the parts manufacturers had meetings from 2002 or earlier to set parts prices and decided which companies would win contracts before bidding for orders from automakers."

121.   On July 27, 2011, Defendant Delphi announced in its consolidated second quarter 2011 financial statements that it "received a request from antitrust authorities at the European Commission seeking information about conduct by Delphi in connection with an investigation in the European Union related to the electrical and electronic components market" and is cooperating with European authorities.

122.   On September 29, 2011, the DOJ charged Defendant Furukawa Electric Co., Ltd. and three of its executives with participating in a "combination

and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses and related products" in violation of the Sherman Antitrust Act.

123.   Also on September 29, 2011, Defendant Furukawa Electric Co., Ltd. and its three executives agreed to plead guilty for their involvement in a criminal price-fixing and bid-rigging conspiracy in connection with the sale of Wire Harness Products.  Furukawa Electric Co., Ltd. agreed to pay a $200 million fine while three of its executives agreed to serve prison time in the United States ranging from a year and a day to eighteen months.

124.   The DOJ described these as the "first charges as a result of its ongoing international cartel investigation of price fixing and bid rigging in the auto parts industry."

125.   In a September 29, 2011 DOJ press release, Sharis A. Pozen, Acting Assistant Attorney General of the DOJ's Antitrust Division stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."

126.   FBI Special Agent in Charge Andrew G. Arena also said that "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system."  "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

127. According to the DOJ, Defendant Furukawa Electric Co., Ltd. and its co-conspirators manufactured automotive Wire Harness Products (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

128. The DOJ alleges that Furukawa Electric Co., Ltd. and its co-conspirators: (a) had meetings and communications in the United States and Japan to discuss bids and price quotations to be submitted to automobile manufacturers in the United States, (b) agreed on bids and price quotations to be submitted to automobile manufacturers in the United States, (c) agreed to allocate the supply of automotive wire harnesses and related products sold in the United States on a model-by-model basis, (d) agreed to coordinate price adjustments requested by automobile manufacturers in the United States, (e) submitted bids, price quotations, and price adjustments to automobile manufacturers in the United States in accordance with the agreements reached, (f) sold Wire Harness Products to automobile manufacturers in the United States at collusive and noncompetitive prices, and (g) participated in meetings and communications to monitor the conspiracy and conceal their unlawful conduct, including but not limited to using code names and meeting at private residences or remote locations.

129. On October 24, 2011, Hirotsugu Nagata pleaded guilty to a conspiracy to restrain trade in the market for Wire Harness Products in violation of the

Sherman Act before Judge George Steeh of the U.S. District Court for the Eastern District of Michigan.  Nagata was employed at Furukawa America in Plymouth, Michigan as General Manager of Sales from January 2004 to November 2007, Chief Financial Officer from January 2004 until March 2009, and Marketing Manager for a related joint venture from January 2004 until June 2009.  Nagata admitted in his guilty plea that during meetings and conversations with co-conspirators, "agreements were reached to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers on a model-by-model basis, rig bids quoted to automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices" for Wire Harness Products sold in the United States.

130.    On October 24, 2011, Junichi Funo pleaded guilty to a conspiracy to restrain trade in the market for Wire Harness Products in violation of the Sherman Act before Judge George Steeh of the U.S. District Court for the Eastern District of Michigan.  Funo worked at Furukawa Electric Co., Ltd. in Japan as a Honda Sales Division representative from April 2003 to August 2003, then as Assistant General Manager for Honda Sales at Furukawa America from August 2003 to March 2009, and also as Manager of the Honda Sales Division in Japan from March 2009 until at least July 2009.  Funo admitted in his guilty plea that during meetings and conversations with co-conspirators, "agreements were reached to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers on a model-by-model basis, rig bids quoted to automobile

manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices" for Wire Harness Products sold in the United States.

131. On November 10, 2011, Tetsuya Ukai pleaded guilty to a conspiracy to restrain trade in the market for Wire Harness Products in violation of the Sherman Act before Judge George Steeh of the U.S. District Court for the Eastern District of Michigan. Ukai worked at Furukawa Electric Co., Ltd. in Japan as a Manager in the Honda Sales Division from April 2003 to July 2005, Unit Chief in the Honda Sales Division from July 2005 to April 2007, and then General Manager of the Honda Sales Division from April 2007 until at least July 2009. Ukai admitted in his guilty plea that during meetings and conversations with co-conspirators, "agreements were reached to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers on a model-by-model basis, rig bids quoted to automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices" for Wire Harness Products sold in the United States.

132. On November 14, 2011, Defendant Furukawa Electric Co., Ltd. pleaded guilty for its involvement in a criminal price-fixing and bid-rigging conspiracy in connection with the sale of Wire Harness Products. Furukawa Electric Co., Ltd. admitted in its guilty plea that during the relevant period, "agreements were reached to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers on a model-by-model basis, rig

bids quoted to automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices" for Wire Harness Products sold in the United States. Furukawa Electric Co., Ltd. agreed to pay a $200 million fine.

133.    On January 19, 2012, the JFTC issued cease and desist orders to Defendants Yazaki Corporation and Fujikura Ltd. The JFTC also fined Yazaki Corporation, Sumitomo Electric Industries Ltd. and Fujikura Ltd. The JFTC's cease and desist orders and fines against these Defendants were based on their involvement in a price-fixing and bid-rigging conspiracy in connection with the sale of Wire Harness Products in violation of Article 3 of the Japanese Antimonopoly Act. According to a JFTC press release, Yazaki Corporation, Sumitomo Electric Industries Ltd., Fujikura Ltd., and Furukawa Electric Co., Ltd. "substantially restrained competition . . . [by] appointing the designated successful bidder and managing to have the designated successful bidder win the bidding." The JFTC fined Yazaki Corporation approximately $125.8 million, Sumitomo Electric Industries Ltd. $27.5 million, and Fujikura Ltd. $14.4 million. Furukawa Electric Co., Ltd. admitted to its participation in a price-fixing and bid-rigging conspiracy, but was not fined because it provided information to the JFTC that led to the investigation.

134.    On January 30, 2012, the DOJ announced that Defendant Yazaki Corporation had agreed to pay a $470 million fine and to plead guilty to a three-count criminal information charging Yazaki Corporation with, among other things,

participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Wire Harnesses Products sold to certain automobile manufacturers in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of Section 1 of the Sherman Act.  On March 1, 2012, Defendant Yazaki Corporation pleaded guilty to this charge.

135.   In addition to Yazaki Corporation, four Yazaki executives, Tsuneaki Hanamura, Ryoji Kuwai, Shigeru Ogawa, and Hisamitsu Takada, agreed to plead guilty to antitrust violations arising from their participation in a conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Wire Harness Products sold to certain automobile manufacturers in the United States and elsewhere.  The four executives of Yazaki Corporation will serve prison time ranging from 15 months to two years.  The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U.S. jurisdiction for a Sherman Act violation.

136.   On January 30, 2012, the DOJ also announced that Defendant Denso Corporation agreed to plead guilty and pay a total of $78 million in criminal fines to a two-count criminal information charging Denso Corporation with, among other things, participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of certain ECUs sold to an automobile manufacturer in the

United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of Section 1 of the Sherman Act. ECUs are Wire Harness Products as alleged in this Complaint and are "essential to the wiring, circuit boards, gauges and fuel tanks of automobiles." On March 5, 2012, Denso Corporation pleaded guilty to this charge.

137.    On April 23, 2012, the DOJ announced that Defendant Fujikura Ltd. had agreed to plead guilty to a one-count criminal information charging it with participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Wire Harnesses Products sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2006 and continuing until at least February 2010 in violation of Section 1 of the Sherman Act. Fujikura Ltd. also agreed to pay a $20 million fine for its role in the conspiracy.

## FRAUDULENT CONCEALMENT

138.    Defendants affirmatively and wrongfully concealed their anti-competitive conduct from Plaintiffs and the Class from at least January 1, 2000 through at least February 2010, when the antitrust investigations of the Wire Harness Products manufacturers became public. During that time, Plaintiffs and the Class did not learn or discover the operative facts giving rise to their claims, despite due diligence. Thus, Defendants' fraudulent concealment tolled the statute of limitations through at least February 2010.

139.   Defendants represented publicly, both to customers and otherwise, that their pricing and bidding activities were unilateral. In making those false representations, Defendants misled Plaintiffs and members of the Class as to the true, collusive, and coordinated nature of their bid-rigging, customer allocation, and price-fixing activities.

140.   Defendants' wrongful conduct was carried out in part through means and methods that were designed to avoid detection, and which, in fact, successfully precluded detection.

141.   In particular, Defendants participated in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to customers in the United States and elsewhere.

142.   During these meetings, conversations, and communications, Defendants agreed upon bids and price quotations to be submitted to customers in the United States and elsewhere.

143.   Defendants likewise agreed to allocate the supply of Wire Harness Products sold to customers in the United States and elsewhere.

144.   Defendants also agreed to coordinate price adjustments requested by customers in the United States and elsewhere.

145.   In accordance with the agreements reached by Defendants, they submitted collusive bids, price quotations, and price adjustments to customers in the United States and elsewhere.

146. As a result of such coordinated actions, and unbeknownst to Plaintiffs, Defendants sold Wire Harness Products to purchasers in the United States at collusive and noncompetitive prices.

147. To keep the sale of Wire Harness Products at collusive and noncompetitive prices a secret, Defendants employed certain measures, including but not limited to, using code names and meeting at private residences or remote locations.

148. Moreover, Defendants' successful contract, combination, or conspiracy was by its nature inherently self-concealing.

149. Despite due diligence, Plaintiffs had no knowledge of Defendants' unlawful contract, combination, or conspiracy.

150. In the course of purchasing Wire Harness Products, Plaintiffs studied prices of the specific products involved.

151. Plaintiffs received from one or more Defendants various pricing information. Plaintiffs had no way to know that Defendants' prices were higher than they should have been due to the conspiracy alleged herein.

152. Plaintiffs did not and could not have discovered Defendants' unlawful contract, combination, or conspiracy at any earlier date, despite due diligence. Defendants undertook affirmative acts of concealment of their contract, combination, or conspiracy, including their attendance at secret meetings, making misrepresentations to Plaintiffs and the Class of the reasons for the prices charged,

and engaging in secret conversations concerning the allocation of customers, bid-rigging, and price-fixing of Wire Harness Products.

## ANTITRUST INJURY

153.   Defendants' conspiracy caused injury to Plaintiffs and members of the Class by suppressing price competition among Wire Harness Products manufacturers, thereby depriving purchasers of Wire Harness Products of the benefits of a competitive market and setting prices of Wire Harness Products at artificially high levels.

154.   As a direct result of Defendants' conspiracy, Plaintiffs and members of the Class have been injured in their business or property in that they paid more for Wire Harness Products than otherwise would have been the case in a competitive market.

## CLAIM FOR RELIEF

**(Sherman Act Section 1 – Horizontal Price-Fixing Against All Defendants)**

155.   Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

156.   During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, combination or conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Wire Harness Products sold in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

157.   The contract, combination or conspiracy resulted in an agreement, understanding or concerted action between and among the Defendants and their co-

conspirators in furtherance of which the Defendants and their co-conspirators fixed, raised, maintained, or stabilized prices for Wire Harness Products sold in the United States. Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws.

158.   Defendants succeeded in rigging bids, fixing, raising, maintaining and stabilizing the prices of Wire Harness Products sold in the United States during the Class Period.

159.   For purposes of formulating and effectuating their conspiracy, Defendants and their co-conspirators did those things they conspired to do, including:

    a.   Participating in meetings and conversations in the United States and elsewhere to discuss the bids and price quotations of Wire Harness Products to be submitted to direct purchasers in the United States;

    b.   Agreeing on bids and price quotations to be submitted to direct purchasers in the United States;

    c.   Agreeing to manipulate prices and allocate supply of Wire Harness Products sold in the United States in a manner that deprived direct purchasers of free and open competition;

    d.   Agreeing to coordinate price adjustments in the United States;

e.     Submitting bids, price quotations, and price adjustments to direct purchasers of Wire Harness Products in accordance with the agreements reached;

f.     Selling Wire Harness Products to direct purchasers in the United States at noncompetitive prices; and

g.     Employing measures to conceal the true nature of their unlawful conduct from Plaintiffs and other members of the Class in furtherance of the conspiracy.

160.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their businesses or property in that they have paid more for Wire Harness Products than they otherwise would have paid in a competitive market.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray that the Court enter judgment on their behalf and on behalf of the Class herein, and respectfully request the following relief:

A.     That the Court determine that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure, with Plaintiffs as the designated Class representatives and their counsel as Class Counsel;

B.     That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators as alleged in this complaint, be adjudicated and decreed a *per se* violation of Section 1 of the Sherman Act;

C.     That Plaintiffs and members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiffs and the Class be entered against the Defendants in an amount to be trebled in accordance with 15 U.S.C. §15(a);

D.     That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

E.     That Plaintiffs and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law;

F.     That Plaintiffs and members of the Class be awarded pre-judgment and post-judgment interest; and

G.     That Plaintiffs and members of the Class receive such other or further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues so triable.

Dated:  May 14, 2012

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road; Ste. 111
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com

Direct Purchaser Interim Liaison
Counsel

Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone:  (207) 791-3000
ghansel@preti.com
rweill@preti.com
jcarver@preti.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone:  (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Michael J. Freed
Steven A. Kanner
William H. London
Michael L. Silverman
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone:  (224) 632-4500
mfreed@fklmlaw.com
skanner@fklmlaw.com
blondon@fklmlaw.com
msilverman@fklmlaw.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

Direct Purchaser Interim Lead Counsel

W. Joseph Bruckner
LOCKRIDGE GRINDAL
    NAUEN P.L.L.P.
100 Washington Avenue South
Minneapolis, MN 55401
Telephone: (612) 339-6900
wjbruckner@locklaw.com

Robert Bonsignore
Richard Kirchner
Brian Hagen
Paula Flannery
Lisa Sleboda
BONSIGNORE & BREWER
193 Plummer Hill Road
Belmont, NH 03220
Telephone: (781) 856-7650
rbonsignore@class-actions.us
rkirchner@class-actions.us
bhagen@class-actions.us
pflannery@class-actions.us
lsleboda@class-actions.us

Brian Murray
Lee Albert
MURRAY FRANK LLP
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
bmurray@murrayfrank.com
lalbert@murrayfrank.com

Garret Blanchfield
REINHARDT, WENDORF
    & BLANCHFIELD
E-1250 First National Bank Bldg.
332 Minnesota St.
St. Paul, MN 55101
Telephone: (651) 287-2100
g.blanchfield@rwblawfirm.com

Solomon B. Cera
GOLD BENNETT CERA
  & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
scera@gbcslaw.com

James F.B. Daniels
MCDOWELL, RICE, SMITH
  & BUCHANAN, P.C.
605 West 47th Street, Suite 350
Kansas City, MO 64112-1005
Telephone: (816) 753-5400
jdaniels@mcdowellrice.com

Manuel John Dominguez
COHEN MILSTEIN SELLERS & TOLL
  PLLC
3507 Kyoto Gardens Drive
Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 578-6850
jdominguez@cohenmilstein.com

Vincent J. Esades
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
vesades@heinsmills.com

44

Karlos F. Finley
BOTELER, FINLEY & WOLFE, P.C.
1252 Dauphin Street
Mobile, AL 36604
Telephone: (251)433-7766
karlos@bfw-lawyers.com

Joseph M. Fischer
CARSON FISCHER, P.L.C.
4111 Andover Road West - Second Floor
Bloomfield Hills, MI 48302-1924
Telephone: (248) 644-4840
jfischer@carsonfischer.com

Bruce E. Gerstein
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
bgerstein@garwingerstein.com

Lewis Goldfarb
MCELROY, DEUTSCH, MULVANEY
  & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
Telephone: (973) 425-8689
lgoldfarb@mdmc-law.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, LPA
35 East Seventh Street, Suite 600
Cincinnati, OH 45202
Telephone: (513) 345-8291
jgoldenberg@gs-legal.com

Steve Greenfogel
LITE DEPALMA GREENBERG, LLC
1521 Locust Street
Philadelphia, PA 19102
Telephone: (215) 564-5182
sgreenfogel@litedepalma.com

Steven D. Irwin
LEECH TISHMAN FUSCALDO
  & LAMPL, LLC
525 William Penn Place, 30th Floor
Pittsburgh, PA 15219
Telephone: (412) 261-1600
sirwin@leechtishman.com

Irwin B. Levin
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ilevin@cohenandmalad.com

Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 687-6611
dmogin@moginlaw.com

D. Michael Noonan
SHAHEEN & GORDON, P.A.
P.O. Box 977
140 Washington Street, 2nd floor
Dover, NH 03821
Telephone: (603) 749-5000
mnoonan@shaheengordon.com

Linda P. Nussbaum
Robert G. Eisler
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500
lnussbaum@gelaw.com

Dustin M. Roach
VAN GILDER & TRZYNKA, P.C.
436 E. Wayne Street
Fort Wayne, IN 46802
Telephone: (260) 424-8132
droach@vgtlaw.com

Wesley Steury
BURT BLEE DIXON SUTTON &
BLOOM, LLP
200 East Main Street, Suite 1000
1st Source Banking Center
Fort Wayne, IN 46802
Telephone: (260) 426-1300
Wsteury@burtblee.com

Stephen M. Smith
JOSEPH SMITH, LTD.
2100 Kecoughtan Road
Hampton, VA 23661
Telephone: (757) 244-7000 Ext. 123
ssmith@braininjurylawcenter.com

Robert Peurach
DAKMAK PEURACH, P.C.
615 Griswold Street, Suite 600
Detroit, MI 48226
Telephone: (866) 732-9522
rpeurach@gdakmak.com

R. Alexander Saveri
Cadio Zirpoli
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com
cadio@saveri.com

Michael T. Smith
LAW OFFICES OF
MICHAEL T. SMITH
440 West Irving Park Road
Roselle, IL 60172
Telephone: (847) 380-5899
lawoffice0724@sbcglobal.net

Jason J. Thompson
Lance A. Young
SOMMERS SCHWARTZ PC
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: (248) 355-0300
jthompson@sommerspc.com
lyoung@sommerspc.com