

**LEGAL LANGUAGE SERVICES**

A division of ALS International
8014 State Line Road
Suite 110
Leawood, KS  66208-3712

Telephone   (913) 341-3167
Toll Free    (800) 755-5775
Telefax      (913) 341-3168
www.legallanguage.com

May 14, 2012
*14. Mai 2012*

**Certification:**
*Bestätigung:*

**This is to certify that the attached translation from English into German is an accurate representation of the document received by this office.  This document is designated as:**
*Hiermit wird bestätigt, daß die beigefügte Übersetzung aus der englischen in die deutsche Sprache eine genaue Wiedergabe des von diesem Büro erhaltenen Schriftstücks ist. Das Schriftstück ist wie folgt bezeichnet:*

**Consolidated Amended Class Action Complaint**
*Verbundene Erweiterte Gruppenklage-Klageschrift*

**I, Maria Victoria Portuguez, General Manager of this company, hereby certify that Eva Kafka, who translated this document, is fluent in German and standard North American English and qualified to translate. I attest to the following:**
*Ich, Maria Victoria Portuguez, Hauptgeschäftsführer/Hauptgeschäftsführerin von dieser Gesellschaft, hiermit bescheinige dass Eva Kafka, der/die dieses Schriftstück übersetzt hat, ist  fließend in den deutschen und englischen Sprachen und qualifiziert für Übersetzungen. Ich attestiere das Folgende:*

**"To the best of my knowledge, the accompanying text is a true, full and accurate translation of the specified document."**
*"Nach meinem besten Wissen ist der beiliegende Text eine wahre, vollständige und genaue Übersetzung des angeführten Schriftstücks."*

**Signature of Maria Victoria Portuguez**
*Unterschrift von Maria Victoria Portuguez*

**Subscribed and sworn to before me this May 14, 2012.**
*Vor mir unterzeichnet und beeidigt am 14. Mai 2012.*

Vicki Farron
**Vicki Farron**
**Notary Public, State of Kansas**
**Qualified in Johnson County**
**Commission Expires December 9, 2012**

*Vicki Farron*
*Öffentlicher Notar des Staates Kansas*
*Qualifiziert in Bezirk Johnson*
*Ermächtigung läuft am 9.dezember 2012 ab*

**Sincerely,**
*Hochachtungsvoll,*

**Victor J. Hertz**
**President**/*Präsident*

BEZIRKSGERICHT DER VEREINIGTEN STAATEN
FÜR DEN BEZIRK MICHIGAN-OST
SÜDLICHE ABTEILUNG

|  |  |  |
|---|---|---|
| IN SACHEN KARTELLPROZESS WEGEN FAHRZEUG-KABELSYSTEMEN | : : : : | Stammakte Nr. 12-md-02311 VERBUNDENE ERWEITERTE GRUPPENKLAGE-KLAGESCHRIFT |
| DIESES DOKUMENT BEZIEHT SICH AUF: ENDZAHLER-KLAGEN | : : : : : | FORDERUNG EINER GESCHWORENENVERHANDLUNG |

Die Kläger Rebecca Lynn Morrow, Erica Shoaf, Ifeoma Adams, Melissa Barron, John Hollingsworth, Meetesh Shah, Gary Arthur Herr, Michael Tracy, Jane Taylor, Jennifer Chase, Darrel Senior, AGA Realty LLC, James Marean, Ron Blau, Roger Olson, Susan Olson, Nilsa Mercado, Darcy Sherman, Curtis Gunnerson, David Bernstein, Ellis Winston McInnis, Thomas Wilson, Lauren C. Primos,  Robert Klingler, Jessica DeCastro, Lori Curtis, Virginia Pueringer, Nathan Croom, Richard Stoehr, Edward Muscara, Michael Wick, Ian Groves, Tenisha Burgos, Jason Grala, Peter Brook, Kathleen Tawny, Kelly Klosterman, Melinda Harr DDS PC, Cindy Prince, Paul Gustafson, Frances Gammell Roach, William Picotte, Phillip Young, Becky Bergeson, Jessee Powell, Alena Farrell, Jane FitzGerald, Arthur Stukey, Janne Rice, Robert Rice, Jr., Stacey Nickell, Carol Ann Kashishian und Susan LaCava, (zusammenfassend die „Kläger") strengen diese Gruppenklage auf Schadensersatz, Unterlassungsanspruch und andere Rechtsmittel gemäß den bundes- und einzelstaatlichen Antikartellgesetzen, Gesetzen über unlauteren Wettbewerb und den Verbraucherschutzgesetzen in eigener Sache und für alle anderen Personen in einer ähnlichen Situation (die „Gruppen", wie nachstehend definiert) auf Grund persönlicher Kenntnis der sie selbst betreffenden Fakten und nach bestem Wissen und Gewissen in Bezug auf alle anderen Angelegenheiten sowie auf Grundlage anwaltlicher Nachforschungen an und die Kläger fordern eine Geschworenenverhandlung und erklären wie folgt:

**ART DER KLAGE**

1.      Diese Klage wird wie geplant als Gruppenklage gegen die Beklagten, die größten Hersteller von Fahrzeug-Kabelsystemen („Automotive Wire Harness Systems", wie nachstehend definiert) weltweit und in den Vereinigten Staaten, vorgebracht, weil diese sich ein Jahrzehnt lang an einer massiven Absprache beteiligt haben, um auf gesetzwidrige Weise die Preise für diese Produkte abzusprechen und künstlich anzuheben. Die Absprache der Beklagten richtete sich erfolgreich gegen die seit Langem in Schwierigkeiten befindliche Autoindustrie der Vereinigten Staaten, indem sie die Preise für Autohersteller und Verbraucher gleichermaßen in die Höhe trieb.

2.      Die Kläger möchten Verbraucher vertreten, die neue Fahrzeuge mit Fahrzeug-Kabelsystemen oder Ersatz- Kabelsysteme für Fahrzeuge in der Zeit von einschließlich 1. Januar 2000 bis einschließlich zu dem Zeitpunkt, an dem die wettbewerbsbeschränkenden Auswirkungen des Verhaltens der Beklagten aufhörten (die „Gruppenklagefrist") kauften oder leasten.

3.      „Fahrzeug-Kabelsysteme" sind elektrische Verteilungssysteme für Fahrzeuge zur Steuerung und Kontrolle elektronischer Komponenten,  von Kabeln und Leiterplatten in einem Fahrzeug. Im Wesentlichen dienen Fahrzeug-Kabelsysteme als „zentrales Nervensystem" eines Fahrzeugs. Der Begriff „Fahrzeug-Kabelsysteme" umfasst Folgendes: elektrische Leitungen für Fahrzeuge, Motorzuleitungsdrahtverbindungen, Kabelbonding, Leitungsverbinder, Kabelanschlüsse, elektronische Steuereinheiten, Sicherungskästen, Relaisboxen, Klemmenblöcke, Verteiler und Geschwindigkeitssensor-Kabelstrangbaugruppen.

4.      Die  Beklagten Delphi, Denso, Fujikura, Furukawa, Lear, Leoni, Sumitomo, S-Y Systems, Yazaki, Tokai Rika und G.S. Electech (wie nachstehend definiert und zusammenfassend die „Beklagten") stellen Kabelsysteme für Fahrzeuge in den gesamten Vereinigten Staaten her und vermarkten und verkaufen diese dort. Herstellung und Verkauf von Fahrzeug-Kabelsystemen ist eine Milliardendollarindustrie.

5.      Die Beklagten und weitere (derzeit noch unbekannte) Mitverschwörer

2

sprachen sich ab, wirkten zusammen und verschworen sich, um die Preise für Fahrzeug-Kabelsysteme aufzublähen, abzusprechen, anzuheben, gleichbleibend zu halten oder künstlich festzusetzen.

6.     Wettbewerbsbehörden in den Vereinigten Staaten, der Europäischen Union und Japan haben mindestens seit Februar 2010 Ermittlungen zu einer Verschwörung auf dem Markt für Fahrzeug-Kabelsysteme angestellt. Im Rahmen seiner Ermittlungen sucht das US-amerikanische Justizministerium („DOJ") nach Informationen über wettbewerbsfeindliches Verhalten auf dem Markt für Fahrzeug-Kabelsysteme und das Bundeskriminalamt („FBI") hat anhand von Durchsuchungsbefehlen Durchsuchungen vorgenommen, die mindestens in einigen Büroniederlassungen der Beklagten stattfanden. Die Wettbewerbsbehörde der Europäischen Kommission (EU-Kommission) hat auch unangekündigte Durchsuchungen in den Büroniederlassungen mehrerer Beklagter in Europa durchgeführt.

7.     Wie im Folgenden näher erläutert, haben sich die Beklagten Furukawa Electric Co. Ltd., Yazaki Corporation, Denso Corporation, G.S. Electech, Inc. und Fujikura Ltd. der Teilnahme an einem Kartell für Fahrzeug-Kabelsysteme während der Gruppenklagefrist schuldig bekannt und haben sich bereit erklärt, für dieses rechtswidrige Verhalten erhebliche Geldstrafen zu zahlen. Diese Beklagten und ihre Mitverschwörer beteiligten sich an einem Zusammenschluss und einer Verschwörung zur Unterdrückung und Eliminierung der Konkurrenz in der Fahrzeugersatzteil-Branche, indem sie sich bereit erklärten, Absprachen für Angebote für Fahrzeug-Kabelsysteme zu treffen und die Preise von Fahrzeug-Kabelsystemen, die an Autohersteller und andere in den Vereinigten Staaten verkauft wurden, abzusprechen, zu stabilisieren und gleichbleibend zu halten. Der von diesen Beklagten und ihren Mitverschwörern begangene Zusammenschluss und die Verschwörung erfolgte unter unzulässiger Beschränkung des zwischenstaatlichen und Außenhandels unter Verstoß gegen 15 U.S.C. § 1 des US-amerikanischen Kartellgesetzes („Sherman Antitrust Act").

8.     Im Rahmen ihres Vergleichs haben sich die Beklagten einverstanden erklärt, das DOJ bei seinen fortlaufenden kriminalpolizeilichen Ermittlungen gegen die

3

Fahrzeugersatzteil-Branche zu unterstützen.

9.     Als direkte Folge des hierin zur Last gelegten wettbewerbsfeindlichen und rechtswidrigen Verhaltens zahlten die Kläger und die Klägergruppen während der Gruppenklagefrist künstlich überhöhte Preise für Fahrzeug-Kabelsysteme und haben dadurch kartellrechtlichen Schaden ihres Geschäfts bzw. ihres Eigentums erlitten.

## ZUSTÄNDIGKEIT UND GERICHTSSTAND

10.     Die Kläger strengen diese Klage gemäß Paragraph 16 des Clayton Act (15 U.S.C. § 26) an, um Rechtsmittel nach dem Billigkeitsrecht und einen Unterlassungsanspruch gegen die Beklagten auf Grund des Verstoßes gegen Paragraph 1 des Sherman Act (15 U.S.C. § 1) zu erreichen. Die Kläger machen auch Forderungen auf konkreten und verschärften Schadensersatz gemäß den bundesstaatlichen Kartellgesetzen, den Gesetzen über unlauteren Wettbewerb und den Verbraucherschutzgesetzen geltend und fordern Entschädigung, den Erhalt von Schadensersatz und andere Rechtsmittel gegen die Beklagten auf Grund des Verstoßes gegen diese bundesstaatlichen Gesetze.  Die Kläger und die Klägergruppen fordern auch Anwaltskosten, Kosten und anderweitige Auslagen gemäß bundes- und einzelstaatlichen Gesetzen.

11.     Dieses Gericht ist gemäß Paragraph 16 des Clayton Act (15 U.S.C. § 26), Paragraph 1 des Sherman Act (15 U.S.C. § 1) und Titel 28 United States Code (Sammlung US-amerikanischer Bundesgesetze), Paragraph 1331 und 1337 für den Gegenstand dieser Klage zuständig. Dieses Gericht hat die sachliche Zuständigkeit für die einzelstaatlichen Forderungen gemäß 28 U.S.C. §§ 1332(d) und 1367, da (i) dies eine Gruppenklage ist, bei welcher der Streitgegenstand einen Betrag von $5.000.000 ohne Zinsen und Kosten übersteigt, und bei der einige Mitglieder der vorgesehenen Klägergruppen Staatsbürger eines anderen Staates als einige der Beklagten sind, und (ii) die einzelstaatlichen Forderungen der Kläger Teil desselben Falles bzw. desselben Streites sind wie ihre bundesstaatlichen Forderungen gemäß Artikel III der Verfassung der Vereinigten Staaten.

12.     Der Gerichtsstand liegt ordnungsgemäß gemäß Paragraph 12 des Clayton Act (15 U.S.C. § 22) und 28 U.S.C. §§ 1391 (b), (c) und (d) in diesem Bezirk, weil ein

4

erheblicher Teil der Vorfälle, die Anlass zu den Forderungen der Kläger gegeben haben, sich in diesem Bezirk ereignet haben, weil ein erheblicher Teil des nachstehend besprochenen betroffenen zwischenstaatlichen Handelsverkehrs und Handels in diesem Bezirk abgewickelt wurde und eine oder mehrere Beklagte in diesem Bezirk ansässig sind, dort zur Geschäftstätigkeit zugelassen sind, dort geschäftstätig sind, dort Vertreter hatten oder dort anzutreffen sind und Geschäfte abwickeln.

13.     Dieses Gericht hat die gerichtliche Zuständigkeit für eine Klage gegen *eine Person* für jede einzelne Beklagte, weil jede Beklagte entweder direkt oder durch Besitz und/oder Kontrolle ihrer US-amerikanischen Tochtergesellschaften *unter anderem:* (a) Geschäfte in den Vereinigten Staaten abwickelte, einschließlich in diesem Bezirk, (b) direkt oder indirekt erhebliche Mengen von Fahrzeug-Kabelsystemen in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, verkaufte bzw. vermarktete, (c) erhebliche Gesamtkontakte mit den Vereinigten Staaten insgesamt einschließlich dieses Bezirks unterhielt, oder (d) an einer gesetzwidrigen Verschwörung zur Preisabsprache beteiligt war, die sich gegen die Unternehmen oder das Eigentum von Personen und Organisationen richtete, die in den Vereinigten Staaten, einschießlich in diesem Bezirk, ansässig waren oder dort geschäftstätig waren und eine direkte, erhebliche, nach vernünftigem Ermessen vorhersehbare und beabsichtigte nachteilige Wirkung hatte, die diese schädigte. Die Beklagten sind auch in den gesamten Vereinigten Staaten einschließlich in diesem Bezirk geschäftstätig und haben sich gezielt die Gesetze der Vereinigten Staaten zunutze gemacht.

14.     Die Beklagten befleißigten sich innerhalb und außerhalb der Vereinigten Staaten eines Verhaltens, das eine direkte, erhebliche und nach vernünftigem Ermessen vorhersehbare und beabsichtigte nachteilige wettbewerbsfeindliche Wirkung auf den zwischenstaatlichen Handel innerhalb der Vereinigten Staaten verursachte.

15.     Die Aktivitäten der Beklagten und ihrer Mitverschwörer fanden im Fluss des zwischenstaatlichen Handels in den Vereinigten Staaten statt, zielten auf diesen ab und hatten in der Tat eine erhebliche Auswirkung auf diesen. Die Produkte der Beklagten werden im Fluss des zwischenstaatlichen Handels verkauft.

5

16.     Von den Beklagten im Ausland hergestellte Fahrzeug-Kabelsysteme zur Verwendung in Fahrzeugen, die entweder in den Vereinigten Staaten oder im Ausland hergestellt und in den Vereinigten Staaten verkauft wurden, sind Güter, die zum Verkauf in die Vereinigten Staaten gebracht werden und daher einen Importhandel darstellen. Sofern die Fahrzeug-Kabelsysteme in den Vereinigten Staaten gekauft werden und diese Fahrzeug-Kabelsysteme keinen Importhandel darstellen, hatten die Aktivitäten der Beklagten in Bezug darauf, wie hierin im Einzelnen erläutert wird, während der Gruppenklagefristeine direkte, erhebliche und nach vernünftigem Ermessen vorhersehbare Wirkung auf den Handel der Vereinigten Staaten und haben weiter diese Wirkung. Durch das hierin beschriebene wettbewerbsfeindliche Verhalten und dessen Wirkung auf den Handel der Vereinigten Staaten wurde den Klägern und Mitgliedern der Klägergruppen in den Vereinigten Staaten unmittelbarer Schaden durch kartellrechtliche Verstöße zugefügt.

17.     Aufgrund der nachstehend behaupteten rechtswidrigen Aktivitäten hatten die Beklagten eine erhebliche negative Auswirkung auf den Handel in den gesamten Vereinigten Staaten, wodurch sie den Klägern und den Mitgliedern der Klägergruppen Schaden verursachten. Die Beklagten befassten sich direkt und durch ihre Handlungsbeauftragten mit Aktivitäten, die sich auf alle Staaten auswirkten, um die Preise von Fahrzeug-Kabelsystemen abzusprechen oder zu überhöhen, wobei durch diese Verschwörung der Handel auf unzulässige Weise beschränkt und der Markt für Fahrzeug-Kabelsysteme beeinträchtigt wurde.

18.     Die hierin beschriebene Verschwörung und das rechtswidrige Verhalten der Beklagten wirkte sich negativ auf Personen in den Vereinigten Staaten aus, die Fahrzeug-Kabelsysteme zum persönlichen Gebrauch kauften, einschließlich der Kläger und den Klägergruppen.

## **DIE PARTEIEN**

19.     Die Klägerin Rebecca Lynn Morrow ist eine Einwohnerin von Glendale, Arizona, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

20.     Die Klägerin Erica Shoaf ist eine Einwohnerin von Phoenix, Arizona, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

21.     Die Klägerin Ifeoma Adams ist eine Einwohnerin von Hercules, California, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

22.     Die Klägerin Melissa Barron ist eine Einwohnerin von Oakland, California, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

23.     Der Kläger John Hollingsworth ist ein Einwohner von Saratoga, California, der  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

24. Der Kläger Meetesh Shah ist ein Einwohner von Daly City, Kalifornien, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

25.     Der Kläger Gary Arthur Herr ist ein Einwohner von Orlando, Florida, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

26.     Der Kläger Michael Tracy ist ein Einwohner von Pensacola, Florida, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

27.     Die Klägerin Jane Taylor ist eine Einwohnerin von Kapaa, Hawaii, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

28.     Die Klägerin Jennifer Chase ist eine Einwohnerin von Waterloo, Iowa, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

29.     Der Kläger Darrel Senior ist ein Einwohner von Lenexa, Kansas, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

30.     Die Klägerin AGA Realty LLC, eine Gesellschaft mit beschränkter Haftung mit Hauptgeschäftssitz in Portland, Maine, kaufte Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten.

31.     Der Kläger James Marean ist ein Einwohner von Westbrook, Maine, der

Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

32.     Der Kläger Ron Blau ist ein Einwohner von Newton Highlands, Massachusetts, der  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

33.     Der Kläger Roger Olson ist ein Einwohner von South Haven, Michigan, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

34.     Die Klägerin Susan Olson ist eine Einwohnerin von South Haven, Michigan, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

35.     Die Klägerin Nilsa Mercado ist eine Einwohnerin von Waterford, Michigan, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

36.     Die Klägerin Darcy Sherman ist eine Einwohnerin von Minneapolis, Minnesota, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

37.     Der Kläger Curtis Gunnerson ist ein Einwohner von South Haven, Minnesota, der  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

38.     Der Kläger David Bernstein ist ein Einwohner von Minnetonka, Minnesota, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

39.     Der Kläger Ellis Winton McInnis ist ein Einwohner von Flowood, Mississippi, der  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

40.     Der Kläger Thomas Wilson ist ein Einwohner von Tupelo, Mississippi, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

41.     Die Klägerin Lauren C. Primos ist eine Einwohnerin von Flowood, Mississippi, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten

8

gekauft hat.

42.     Der Kläger Robert Klingler ist ein Einwohner von Manchester, Missouri, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

43.     Die Klägerin Jessica DeCastro ist eine Einwohnerin von St. Louis, Missouri, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

44.     Die Klägerin Lori Curtis ist eine Einwohnerin von St. Louis, Missouri, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

45.     Die Klägerin Virginia Pueringer ist eine Einwohnerin von Billings, Montana, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

46.     Der Kläger Nathan Croom ist ein Einwohner von Omaha, Nebraska, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

47.     Der Kläger Richard Stoehr ist ein Einwohner von Henderson, Nevada, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

48.     Der Kläger Edward Muscara ist ein Einwohner von Manchester, New Hampshire, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

49.     Der Kläger Michael Wick ist ein Einwohner von Rio Rancho, New Mexico, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

50.     Der Kläger Ian Groves ist ein Einwohner von Albuquerque, New Mexico, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

51.     Die Klägerin Tenisha Burgos ist eine Einwohnerin der Bronx, New York, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

52.     Der Kläger Jason Grala ist ein Einwohner von Holbrook, New York, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

53.      Der Kläger Peter Brook ist ein Einwohner von Bayside, New York, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

54.      Die Klägerin Kathleen Tawny ist eine Einwohnerin von Charlotte, North Carolina, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

55.      Die Klägerin Kelly Klosterman ist eine Einwohnerin von Mooreton, North Dakota, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

56.      Die Klägerin Melinda Harr DDS PC, eine Gesellschaft mit Hauptsitz in Fargo, North Dakota, kaufte Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten.

57.      Die Klägerin Cindy Prince ist eine Einwohnerin von Langlois, Oregon, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

58.      Der Kläger Paul Gustafson ist ein Einwohner von Milwaukie, Oregon, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

59.      Die Klägerin Frances Gammell Roach ist eine Einwohnerin von Warwick, Rhode Island, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

60.      Der Kläger William Picotte ist ein ehemaliger Einwohner von South Dakota, der  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten während der Gruppenklagefrist in South Dakota gekauft hat.

61.      Der Kläger Phillip Young ist ein Einwohner von Bon Aqua, Tennessee, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

62.      Die Klägerin Becky Bergeson ist eine Einwohnerin von Merry, Utah, die Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

63.      Der Kläger Jesse Powell ist ein Einwohner von Lehi, Utah, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

64.     Die Klägerin Alena Farrell ist eine Einwohnerin von South Burlington, Vermont, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

65.     Die Klägerin Jane FitzGerald ist eine Einwohnerin von Milton, Vermont, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

66.     Der Kläger Arthur Stukey ist ein Einwohner von Montpelier,Vermont, der Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

67.     Die Klägerin Janne Rice ist eine Einwohnerin von Kenova, West Virginia, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

68.     Der Kläger Robert Rice, Jr. ist ein Einwohner von Kenova, West Virginia, der  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

69.     Die Klägerin Stacey Nickell ist eine Einwohnerin von Beckley, West Virginia, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

70.     Die Klägerin Carol Ann Kashishian ist eine Einwohnerin von Milwaukee, Wisconsin, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

71.     Die Klägerin Susan LaCava ist eine Einwohnerin von Madison, Wisconsin, die  Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten gekauft hat.

**Die Beklagten Delphi**

72.     Die Beklagte Delphi Automotive LLP hat ihren Hauptgeschäftssitz in Troy, Michigan und ist Gesellschaft mit beschränkter Haftung, die nach dem Recht von England und Wales gegründet wurde. Delphi Automotive LLP produzierte zusammen mit ihren Tochtergesellschaften und verbundenen Gesellschaften Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den Vereinigten Staaten, einschließlich in diesem Bezirk, verkauft und/oder gekauft wurden.

73.     Die Beklagte Delphi Automotive Systems, LLC ist ein in Delaware

11

gegründetes Unternehmen mit Hauptsitz in Troy, Michigan.  Delphi Automotive Systems, LLC produzierte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den Vereinigten Staaten, einschließlich in diesem Bezirk, verkauft und/oder gekauft wurden.

74.    Die Beklagten Delphi Automotive, LLP, Delphi Automotive Systems, LLC und DPH Holdings Corp. werden hierin zusammenfassend als die „Beklagten Delphi" bzw. „Delphi" bezeichnet.

75.    Delphi Automotive LLP und Delphi Automotive Systems, LLC wurden beide im Jahr 2009 gegründet, um bestimmte Kfz-Teile-Vermögenswerte von der Delphi Corporation und deren Tochtergesellschaften zu kaufen, die zu jener Zeit in Konkurs waren. Delphi Automotive LLP und Delphi Automotive Systems, LLC führten das Fahrzeug-Kabelsystemgeschäft fort, das von der Delphi Corporation und ihren Tochtergesellschaften vor Aufnahme des Konkursverfahrens, das im Folgenden näher beschrieben ist, geführt worden war.

76.    Im Dezember 2004 kündigten die Delphi Corporation und Furukawa Electric [wie unten definiert] zum Beispiel die Schaffung eines Joint Venture an, das für den Verkauf von Fahrzeug-Kabelsystemen an Toyota in Amerika verantwortlich war. Das Joint Venture – mit dem Namen Delphi Furukawa Wiring Systems LLC – war in Warren, Ohio, ansässig. Wie Furukawa in einer Pressemitteilung erklärte:

> Besitzt Delphi Furukawa Wiring Systems LLC die Fähigkeit zum Entwurf, zur Entwicklung und Qualitätskontrolle von Kabelsystemen, die von Furukawa Electric übernommen wurden und die Fähigkeit zur Systemintegration, Herstellung und zum Kundendienst in Nordamerika von Delphi, um die Kundenerwartungen zu erfüllen und [sic] zu übertreffen. Das Joint Venture ist für die Verkaufs- und technischen Aktivitäten  für die Kabelsysteme verantwortlich, auf die sich sowohl Delphi wie Furukawa Eelctric für Toyota-Programme in Nordamerika geeinigt haben, und wird den direkten Verkauf an den Kunden übernehmen. Was die Herstellung der Kabelsysteme anbelangt, so wird das Joint Venture die bestehenden Betriebsanlagen von Delphi unter seiner Leitung nutzen, um das Know-How beider Muttergesellschaften einzusetzen.

77.    Im Oktober 2005 reichten die Delphi Corporation und bestimmte US-Tochtergesellschaften und verbundene Gesellschaften 42 Anträge auf Konkursschutz gemäß Chapter 11 ein. Diese Verfahren wurden gemeinsam beim Konkursgericht der

Vereinigten Staaten für den Bezirk New York-Süd abgewickelt. Siehe Prozesslistennummer 05-44481 (Delphi Corporation), 05-47452 (Delphi Furukawa Wiring Systems LLC).

78.     Im Jahr 2006 eröffnete die Delphi Furukawa Wiring Systems LLC ein 5000 m$^2$ großes Kundendienstzentrum an der Adresse 2311 Green Road in Ann Arbor, Michigan in der Nähe des Toyota Technical Centers.

79.     Am 30. Juli 2009 genehmigte das Konkursgericht einen modifizierten Umstrukturierungsplan [ Prozesslistennummer 05-44481, Dok. Nr. 18707]. Der modifizierte Umstrukturierungsplan trat am 6. Oktober 2009 in Kraft (das „Datum des Inkrafttretens").

80.     Am 6. Oktober 2009 erfüllte die Delphi Corporation (die während des Konkurses ihren Namen in DPH Holding Corporation geändert hatte) im Wesentlichen die Bedingungen des modifizierten Umstrukturierungsplans. An diesem Tag erwarb die Delphi Automotive LLP durch die in ihrem Besitz befindlichen oder unter ihrer Kontrolle stehenden Tochtergesellschaften und verbundenen Gesellschaften im Wesentlichen alle globalen Kerngeschäftsbereiche der im Konkurs befindlichen Unternehmen von Delphi, einschließlich des Bereichs der Fahrzeug-Kabelsysteme der im Konkurs befindlichen Unternehmen von Delphi.

81.     Nach dem Datum des Inkrafttretens führten die Beklagten Delphi das Lieferverhältnis für Fahrzeug-Kabelsysteme fort, das von den im Konkurs befindlichen Unternehmen aufgebaut worden war, einschließlich zum Beispiel das Lieferverhältnis von Delphi Furukawa Wiring Systems LLC mit Toyota. Delphi Automotive Systems LLC führt und betreibt derzeit das Ann Arbor-Kundendienstzentrum von Delphi in Ann Arbor, Michigan in der Nähe des Toyota Technical Centers. Am 15. März 2011 erkannte Toyota „Delphi Automotive" als einen seiner Spitzen-Lieferanten im Jahr 2010 an und erwähnte „Kabelsysteme" als eines der gelieferten Produkte.

82.     Nach dem Datum des Inkrafttretens verkauften die Beklagten Delphi weiter Fahrzeug-Kabelsysteme gemäß und als Teil ihrer Beteiligung zur Förderung der hierin behaupteten Verschwörung. Ab dem und nach dem 6. Oktober 2009 verkauften die

Beklagten Delphi eine beträchtliche Anzahl von Fahrzeug-Kabelsystemen in den Vereinigten Staaten zu Preisen über dem wettbewerbsfähigen Niveau. Allein für das Jahr 2010 wies die Delphi Automotive LLP Umsätze in Höhe von $ 5,6 Milliarden für ihr Segment Elektronik/Elektronische Architektur aus, das erhebliche Umsätze für Fahrzeug-Kabelsysteme in den Vereinigten Staaten gemäß der Verschwörung umfasste.

**Die Beklagten Denso**

83.     Die Beklagte Denso Corp. ist eine japanische Gesellschaft. Die Beklagte Denso Corp. hat – direkt und/oder durch ihre Tochtergesellschaften, die in ihrem vollständigen Besitz oder unter ihrer Kontrolle standen – Fahrzeug-Kabelsysteme hergestellt, vermarktet und/oder verkauft, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten gekauft wurden, einschließlich in diesem Bezirk.

84.     Die Beklagte Denso International America, Inc. ist ein Unternehmen mit Sitz in Delaware und Hauptgeschäftssitz in Southfield, Michigan. Sie ist eine Tochtergesellschaft von und steht im vollständigen Besitz/unter der Kontrolle ihrer Muttergesellschaft, Denso Corp. Die Beklagte Denso International America, Inc. hat Fahrzeug-Kabelsysteme hergestellt, vermarktet und/oder verkauft, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten gekauft wurden, einschließlich in diesem Bezirk. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist zu allen Zeiten unter der Kontrolle und Leitung ihrer japanischen Muttergesellschaft.

85.     Auf die Beklagten Denso Corp. und Denso International America, Inc. wird hierin zusammenfassend als die „Beklagten Denso" oder „Denso" Bezug genommen.

**Die Beklagten Fujikura**

86.     Die Beklagte Fujikura Ltd. ist ein japanisches Unternehmen. Die Beklagte Fujikura Ltd. produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

14

87.     Die Beklagte Fujikura America, Inc. ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in Atlanta, Georgia. Sie ist eine Tochtergesellschaft, die im hundertprozentigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft Fujikura Ltd. steht. Die Beklagte Fujikura America, Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung ihrer japanischen Muttergesellschaft.

88.     Die Beklagten Fujikura Ltd. und Fujikura America, Inc. werden hierin zusammenfassend als die „Beklagten Fujikura" bzw. „Fujikura" bezeichnet.

**Die Beklagten Furukawa**

89.     Die Beklagte Furukawa Electric Co., Ltd. („Furukawa Electric") ist ein japanisches Unternehmen. Die Beklagte Furukawa Electric produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

90.     Die Beklagte American Furukawa, Inc. („American Furukawa") ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in Plymouth, Michigan. Sie ist eine Tochtergesellschaft, die im hundertprozentigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft Furukawa Electric steht. Die Beklagte American Furukawa produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung ihrer japanischen Muttergesellschaft.

91.     Die Beklagte Wiring Systems America, Inc., ehemals bekannt als Furukawa Lear Corporation und Lear Furukawa Corporation („Furukawa Wiring") ist ein

Unternehmen mit Sitz in Delaware und Hauptsitz in El Paso, Texas. Die Beklagte Furukawa Wiring steht zu 60% im Besitz von Furukawa Electric und zu 40%  von American Furukawa. Während der Gruppenklagefrist operierte Furukawa Wiring als Joint Venture zwischen der Lear Corporation und Furukawa Electric, das Fahrzeug-Kabelsysteme in den Vereinigten Staaten herstellte, vertrieb bzw. verkaufte. Im Juni 2010 erwarb Furukawa Electric alle verbliebenen Beteiligungen von Lear.

92.     Die Beklagten Furukawa Electric, American Furukawa und Furukawa Wiring werden hierin zusammenfassend als die „Beklagten Furukawa" bzw. „Furukawa" bezeichnet.

**Die Beklagten Lear**

93.     Die Beklagte Lear Corporation ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in Southfield, Michigan. Die Beklagte Lear produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

94.     Die Beklagte Kyungshin-Lear Sales and Engineering, LLC ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in Selma, Alabama. Sie ist ein Joint Venture zwischen der Beklagten Lear Corporation und Kyungshin Corporation aus Südkorea. Die Beklagte Kyungshin-Lear Sales and Engineering, LLC produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

95.     Die Beklagten Lear Corp. und Kyungshin-Lear Sales and Engineering, LLC werden hierin zusammenfassend als die „Beklagten Lear" bzw. „Lear" bezeichnet.

96.     Am 7. Juli 2009 beantragte Lear Konkursschutz gemäß Chapter 11. Nach Abschluss des Konkursverfahrens gemäß Chapter 11 am 9. November 2009 verkaufte Lear weiter Fahrzeug-Kabelsysteme gemäß und im Rahmen ihrer Teilnahme zur Förderung der

hierin behaupteten Absprache. Ab November 2009 und danach tätigte Lear beachtliche Verkäufe von Fahrzeug-Kabelsystemen in den Vereinigten Staaten zu Preisen weit über dem wettbewerbsfähigen Niveau. Allein im Jahr 2010 verzeichnete Lear Gesamtumsätze in Höhe von $ 2,5593 Milliarden bei ihren Elektro- und Steuerungssystemen, wobei dies erhebliche Umsätze aus Fahrzeug-Kabelsystemen in den Vereinigten Staaten gemäß der hierin behaupteten Absprache umfasst.

**Die Beklagten Leoni**

97.     Die Beklagte Leoni AG ist ein deutsches Unternehmen. Die Beklagte Leoni AG produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

98.     Die Beklagte Leoni Wiring Systems, Inc. ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in Tucson, Arizona. Sie ist eine Tochtergesellschaft im hundertprozentigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft, Leoni AG. Die Beklagte LEONI Wiring Systems, Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung ihrer deutschen Muttergesellschaft.

99.     Die Beklagte Leonische Holding, Inc. ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in Tucson, Arizona. Sie ist eine Tochtergesellschaft im hundertprozentigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft, Leoni AG. Die Beklagte Leonische Holding, Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung ihrer deutschen Muttergesellschaft.

100.    Die Beklagte Leoni Wire Inc. ist ein Unternehmen mit Sitz in Massachusetts und Hauptsitz in Chicopee, Massachusetts. Sie istt eine Tochtergesellschaft von und steht im vollständigen Besitz/unter der Kontrolle ihrer Muttergesellschaft Leoni AG. Die Beklagte Leoni Wire Inc. produzierte, vermarktete oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten gekauft wurden, einschließlich in diesem Bezirk. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung ihrer deutschen Muttergesellschaft.

101.    Die Beklagte Leoni Kabel GmbH ist ein deutsches Unternehmen. Die Beklagte Leoni Kabel GmbH produzierte, vermarktete oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

102.    Die Beklagten Leoni AG, Leoni Wiring Systems, Inc., Leonische Holding, Inc. und Leoni Kabel GmbH werden hierin zusammenfassend als die „Beklagten Leoni" bzw. „Leoni" bezeichnet.

**Die Beklagten Sumitomo**

103.    Die Beklagte Sumitomo Electric Industries, Ltd. ist ein japanisches Unternehmen. Die Beklagte Sumitomo Electric Industries, Ltd. produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

104.    Die Beklagte Sumitomo Electric Wintec America, Inc. ist ein Unternehmen mit Sitz in Kentucky und Hauptsitz in Edmonton, Kentucky. Sie ist eine Tochtergesellschaft von und steht im vollständigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft, Sumitomo Electric Industries, Ltd. Die Beklagte Sumitomo Electric Wintec America, Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten

18

Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung ihrer japanischen Muttergesellschaft. Die Beklagte Sumitomo Electric Wintec America, Inc. produzierte, vermarktete oder verkaufte während der Gruppenklagefrist Kabelsystemprodukte, die in den gesamten Vereinigten Staaten gekauft wurden, einschließlich in diesem Bezirk. Während der Gruppenklagefrist standen ihre Aktivitäten in den Vereinigten Staaten jederzeit unter der Kontrolle und Leitung ihrer japanischen Muttergesellschaft.

105.    Die Beklagte Sumitomo Wiring Systems, Ltd. ist ein japanisches Unternehmen. Die Beklagte Sumitomo Wiring Systems, Ltd. hat erklärt, dass sie „stolz darauf ist, im Besitz des weltweit größten Marktanteils im Bereich Fahrzeug-Kabelsysteme zu sein". Sie produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

106.    Die Beklagte Sumitomo Electric Wiring Systems, Inc. ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in Bowling Green, Kentucky. Sie ist ein Joint Venture zwischen den Beklagten Sumitomo Electric Industries, Ltd. und Sumitomo Wiring Systems, Ltd. Die Beklagte Sumitomo Electric Wiring Systems, Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung der an ihrem Joint Venture beteiligten japanischen Unternehmen.

107.    Die Beklagte K&S Wiring Systems, Inc. ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in La Vergne, Tennessee. Sie ist eine Tochtergesellschaft im hundertprozentigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft, Sumitomo Electric Industries, Ltd. Die Beklagte K&S Wiring

19

Systems, Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung ihrer japanischen Muttergesellschaft.

108.    Die Beklagte Sumitomo Wiring Systems (U.S.A.) Inc. ist ein Unternehmen mit Sitz in Michigan und hat ihren Hauptsitz in Novi, Michigan. Sie ist ein Joint Venture zwischen der Beklagten Sumitomo Electric Industries, Ltd. und Sumitomo Wiring Systems, Ltd. Die Beklagte Sumitomo Wiring Systems (U.S.A.) Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung der an ihrem Joint Venture beteiligten japanischen Unternehmen.

109.    Die Beklagten Sumitomo Electric Industries, Ltd., Sumitomo Electric Wintec America, Inc., Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc. und Sumitomo Wiring Systems (U.S.A.) Inc. werden hierin zusammenfassend als die „Beklagten Sumitomo" bzw. „Sumitomo" bezeichnet.

**Die Beklagten S-Y Systems und Yazaki**

110.    Die Beklagte S-Y Systems Technologies Europe GmbH („S-Y Systems") ist ein deutsches Unternehmen. Die Beklagte S-Y Systems produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

111.    Die Beklagte Yazaki Corporation ist ein japanisches Unternehmen. Die Beklagte Yazaki Corporation produzierte, vermarktete und/oder verkaufte - direkt

und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

112. Die Beklagte S-Y Systems Technologies America, LLC („S-Y-Systems") ist ein Unternehmen mit Sitz in Delaware und hat ihren Hauptsitz in Dearborn, Michigan. Sie ist derzeit eine hundertprozentige Tochtergesellschaft im Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft, der Beklagten Yazaki Corporation, war davor jedoch eine Tochtergesellschaft im hundertprozentigen Besitz und/oder unter der Kontrolle der Beklagten S-Y Systems. Die Beklagte S-Y Systems Technologies America, LLC produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit entweder unter der Kontrolle und Leitung ihrer deutschen Muttergesellschaft oder während der Zeit, in der sie im Besitz und unter der Kontrolle von S-Y Systems stand, unter der Kontrolle und Leitung ihrer derzeitigen japanischen Muttergesellschaft, Yazaki Corporation.

113. Die Beklagte Yazaki North America Inc. ist ein Unternehmen mit Sitz in Illinois und hat ihren Hauptsitz in Canton Township, Michigan. Sie ist eine hundertprozentige Tochtergesellschaft und steht im Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft, Yazaki Corporation. Die Beklagte Yazaki North America Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden. Ihre Aktivitäten in den Vereinigten Staaten standen während der Gruppenklagefrist jederzeit unter der Kontrolle und Leitung ihrer japanischen Muttergesellschaft.

114. Auf Yazaki Corporation, Yazaki North America Inc. und S-Y Systems Technologies America LLC wird hierin zusammenfassend als die „Beklagten Yazaki" bzw. „Yazaki" Bezug genommen.

21

**Die Beklagten Tokai Rika**

115.     Die Beklagte Tokai Rika, Ltd. ist ein japanisches Unternehmen mit Hauptsitz in Toyota, Japan. Die Beklagte Tokai Rika, Ltd. produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

116.     Die Beklagte TRAM, Inc., die unter dem Namen Tokai Rika U.S.A. Inc. geschäftstätig ist, ist ein Unternehmen mit Sitz in Michigan und Hauptsitz in Plymouth, Michigan. Sie ist eine Tochtergesellschaft von und steht im vollständigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft Tokai Rika, Ltd. Während der Gruppenklagefrist produzierte, vermarktete und/oder verkaufte die Beklagte TRAM, Inc., die unter dem Namen Tokai Rika U.S.A. Inc. geschäftstätig ist, Fahrzeug-Kabelsysteme, die in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

117.     Tokai Rika. Ltd. und TRAM, Inc., die unter dem Namen Tokai Rika U.S.A. Inc. geschäftstätig ist, werden hierin zusammenfassend als die „Beklagten Tokai Rika" oder „Tokai Rika" bezeichnet.

**Die Beklagten G.S. Electech**

118.     Die Beklagte G.S. Electech, Inc. ist ein japanisches Unternehmen mit Hauptsitz in Toyota, Japan. Die Beklagte G.S. Electech, Inc. produzierte, vermarktete und/oder verkaufte - direkt und/oder durch ihre Tochtergesellschaften, die in ihrem hundertprozentigen Besitz oder unter ihrer Kontrolle standen - Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

119.     Die Beklagte G.S. Wiring Systems, Inc. ist ein in Ohio ansässiges Unternehmen mit Sitz in Findlay, Ohio. Nach bestem Wissen und Gewissen ist sie eine Tochtergesellschaft von und steht im vollständigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft G.S. Electech, Inc. G.S. Wiring Systems, Inc. produzierte,

vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

120.    Die Beklagte G.S.W. Manufacturing Inc. ist ein in Ohio ansässiges Unternehmen mit Sitz in Findlay, Ohio. Nach bestem Wissen und Gewissen ist sie eine Tochtergesellschaft von und steht im vollständigen Besitz und/oder unter der Kontrolle ihrer Muttergesellschaft G.S. Electech, Inc. G.S.W. Manufacturing Inc. präsentiert sich als Tier 1- und Tier 2-Lieferant von Fahrzeug-Kabelsystemen. G.S.W. Manufacturing Inc. produzierte, vermarktete und/oder verkaufte Fahrzeug-Kabelsysteme, die während der Gruppenklagefrist in den gesamten Vereinigten Staaten, einschließlich in diesem Bezirk, gekauft wurden.

## HANDLUNGSBEAUFTRAGTE UND MITVERSCHWÖRER

121.    Jede einzelne Beklagte handelte als Auftraggeber oder Handlungsbeauftragter für andere Beklagte in Bezug auf die hier angeführten Handlungen, Verstöße und allgemeine Verhaltensweise.

122.    Diverse Personen, Personengesellschaften, Alleininhaber, Firmen, Körperschaften und Einzelpersonen, die in dieser Klage nicht als Beklagte genannt werden, sowie Einzelpersonen, deren Identität derzeit nicht bekannt ist, haben sich als Mitverschwörer mit den Beklagten an den in dieser Klage zur Last gelegten widerrechtlichen Handlungen beteiligt und haben zur Förderung der Absprache bzw. zur Förderung des wettbewerbsfeindlichen Verhaltens Handlungen begangen und Erklärungen abgegeben.

123.    Bei jeder Bezugnahme in dieser Klage auf eine Handlung, Tat oder Transaktion eines Unternehmens oder einer Gesellschaft mit beschränkter Haftung bedeutet die Anschuldigung, dass das Unternehmen bzw. die Gesellschaft mit beschränkter Haftung die Handlung, Tat oder Transaktion durch ihre leitenden Angestellten, Vorstandsmitglieder, Handlungsbeauftragten, Mitarbeiter oder Stellvertreter vornahm, während sie aktiv an der Leitung, dem Vorstand, der Kontrolle oder Abwicklung der

Geschäfte und Angelegenheiten des Unternehmens bzw. der Gesellschaft mit beschränkter Haftung beteiligt waren.

**SACHVERHALT**

A.      **Die Fahrzeug-Kabelsystem-Branche**

124.    Fahrzeug-Kabelsysteme stellen das „zentrale Nervensystem" eines Fahrzeugs dar und bestehen aus Drähten, Kabeln und Datenverbindungen, die überall in einem Fahrzeug vorhanden sind. Zur Gewährleistung von Sicherheit und grundlegenden Funktionen (wie z.B. Fahren, Abbiegen und Anhalten) und für Komfort und Bequemlichkeit sind Fahrzeuge mit diversen elektronischen Vorrichtungen ausgestattet, die durch Verwendung von Kontrollsignalen bedient werden, die mit Strom aus der Batterie gespeist werden. Das Fahrzeug-Kabelsystem ist der Kanal für die Übertragung dieser Signale und des elektrischen Stroms. Siehe Abbildung 1 und 2.



Abbildung 1.



Abbildung 2.

125.　Fahrzeug-Kabeldrähte sind die Kabel, die im ganzen Fahrzeug verlaufen.

126.　Starkstromkabel sind von wesentlicher Bedeutung bei Fahrzeugen mit Hybrid-, Brennstoffzellen- oder elektrisch gespeistem Antrieb.

127.　Zuleitungskabel verbinden ein Kabel, das Strom von der Stromquelle zuführt, mit einem Elektrodenhalter oder einer Mehrfach-Verschraubung.

128.　Kabelverbindungen sind die elektrische Verbindung zwischen der Isolierung oder Ummantelung eines Kabels und derjenigen eines angrenzenden Kabels oder über ein Kabel in einer Isolierung hinweg.

129.　Automobil-Steckverbinder verbinden unterschiedliche Arten von Kabeln in einem Fahrzeug. Die Steckverbinder, die geringere Ampere leiten, sind eher klein, während die Steckverbinder, die hohe Leistungen liefern, meist weitaus größer sind. Automobil-Steckverbinder können zusammengeschnappt, zusammengeschoben oder aneinander gesteckt werden.

130.　Fahrzeug-Verkabelungen sind das Schlussstück eines Kabels, die einen Anschlusspunkt für externe Stromkreise bieten.

131.　Elektrische Steuereinheiten sind eingebettete Module oder Systeme, die

eines oder mehrere elektrische Systeme oder Subsysteme in einem Fahrzeug steuern. Ein Fahrzeug ist mit einer großen Anzahl elektronischer Steuereinheiten ausgestattet, die verschiedene Fahrzeugfunktionen ausführen und ein hohes Datenaufkommen untereinander austauschen.

132.    Sicherungskästen sind Module, die die Sicherungen für die unterschiedlichen elektrischen Stromkreise enthalten, die alle durch den Sicherungskasten geleitet werden. Der Hauptzweck einer elektrischen Sicherung besteht darin, Komponenten auf einem Stromkreis im Fall eines Kurzschlusses, einer Stromspitze oder Überlastung vor Schäden zu schützen. Ein Fahrzeug hat mehrere Sicherungen, die zum Schutz der elektrischen Stromkreise notwendig sind.

133.    Relaisboxen sind Module, die die elektrischen Schalter enthalten, die Impulse von einer Komponente an die andere übertragen, und können zur Verbindung oder Unterbrechung des Flusses in einem Stromkreis benutzt werden. Nachdem ein Relais aktiviert ist, verbindet es eine elektrische oder anderweitige Datenzufuhr mit einer bestimmten Komponente oder einem Zubehörteil.

134.    Klemmenblöcke werden als elektrische Verbindungspunkte für die Verteilung von Strom oder einer Erdung verwendet.

135.    Stromverteiler dienen zur Stromverteilung auf verschiedenen Ebenen an unterschiedliche elektrische Komponenten.

136.    Geschwindigkeitssensor-Kabelbaugruppen werden in Fahrzeugen mit Anti-Blockier-Bremssystemen („ABS") installiert. Die Geschwindigkeitssensor-Kabelbaugruppen verbinden einen Sensor auf jedem Reifen mit dem ABS und transportieren elektrische Signale von den Sensoren an das ABS, um ihm mitzuteilen, wann es eingreifen muss.

137.    Fahrzeug-Kabelsysteme werden von den Originalgeräteherstellern („OEMS") von Fahrzeugen in Neuwagen als Teil des Fahrzeugherstellungsprozesses installiert. Sie werden auch in Fahrzeugen als Ersatz für alte, defekte oder beschädigte Fahrzeug-Kabelsysteme installiert.

138.    Für Neuwagen kaufen die OEMS—vorwiegend große Autohersteller wie z.B. Honda, Toyota, Volvo und General Motors— Fahrzeug-Kabelsysteme direkt von den Beklagten. Fahrzeug-Kabelsysteme können auch von Teileherstellern bezogen werden, die diese Systeme dann an die OEMS liefern. Diese Teilehersteller werden in der Branche auch als sogenannte „Tier Manufacturers" bezeichnet. Tier I-Manufacturer liefern Fahrzeug-Kabelsysteme direkt an einen OEM (Originalgerätehersteller).

139.    Beim Kauf von Fahrzeug-Kabelsystemen und damit verbundenen Produkten erstellen die OEMS Angebotsanfragen an Lieferanten von Fahrzeugteilen. Die Lieferanten von Fahrzeugteilen unterbreiten den OEMS Angebote als Antwort auf die Angebotsanfragen und die OEMS vergeben den Auftrag gewöhnlich an den ausgewählten Teilelieferanten für eine Dauer von vier bis sechs Jahren. Normalerweise beginnt der Ausschreibungsprozess ungefähr drei Jahre vor Produktionsbeginn eines neuen Modells. Japanische OEMS beschaffen Teile für in den USA hergestellte Fahrzeuge sowohl in Japan wie in den Vereinigten Staaten.

140.    Die Beklagten und ihre Mitverschwörer lieferten Fahrzeug-Kabelsysteme an OEMS zur Installation in Fahrzeugen, die in den Vereinigten Staaten und anderswo hergestellt und verkauft werden. Die Beklagten und ihre Mitverschwörer produzierten Fahrzeug-Kabelsysteme (a) in den Vereinigten Staaten zur Installation in Fahrzeugen, die in den Vereinigten Staaten hergestellt und verkauft werden, (b) in Japan zum Export in die Vereinigten Staaten und zur Installation in Fahrzeugen, die in den Vereinigten Staaten hergestellt und verkauft werden und (c) in Japan zur Installation in Fahrzeugen, die in Japan zum Export und Verkauf in die bzw. den Vereinigten Staaten hergestellt werden.

141.    Die Kläger und Mitglieder der vorgesehenen Klägergruppen kauften Fahrzeug-Kabelsysteme indirekt von einer oder mehreren Beklagten. So kann z.B. ein Besitzer eines Fahrzeugs indirekt ein Fahrzeug-Kabelsystem von den Beklagten als Teil des Kaufs oder Leasing eines neuen Fahrzeugs kaufen. Ein Fahrzeugbesitzer kann auch indirekt ein Fahrzeug-Kabelsystem von den Beklagten kaufen, wenn ein beschädigtes Fahrzeug repariert wird oder wenn das Fahrzeug-Kabelsystem defekt ist.

27

142.    Der weltweite Markt für Fahrzeug-Kabelsysteme belief sich 2009 auf US $ 21,9 Milliarden und stieg 2010 um 32,2% auf US $ 29 Milliarden. Laut Research in China, einer führenden Quelle für internationale Marktforschungs- und Marktdaten, weist der Markt für Fahrzeug-Kabelsysteme ein stetiges Wachstum auf und soll sich erwartungsgemäß im Jahr 2012 auf US $ 32 Milliarden belaufen.

143.    Der weltweite Markt für Fahrzeug-Kabelsysteme wird von großen Herstellern beherrscht und kontrolliert, wobei die sechs wichtigsten Hersteller Beklagte sind, die beinahe 90% des weltweiten Marktes unter ihrer Kontrolle haben; vier von diesen Herstellern haben beinahe 77% des weltweiten Marktes unter ihrer Kontrolle. Siehe Abbildung 3 und 4.

**Marktanteile der weltweit bedeutendsten Hersteller von Fahrzeug-Kabelsystemen, 2009**



Abbildung 3.

**Einstufung der Hersteller von Fahrzeug-Kabelsystemen weltweit nach Erträgen, 2009**

|  | Erträge im Jahr 2009 (Milliarden US$) |
|---|---|
| Yazaki | 7,548 |
| Sumitomo | 6,172 |
| Delphi | 4,230 |
| Leoni | 1,531 |
| Furukawa | 914 |
| Lear | 1,190 |
| Coroplast | 400 |
| THB Group | 136 |
| Fujikura | 682 |
| YURA | 404 |
| Comba | 98 |
| Sonstige | 2,012 |

Abbildung 4.

144.     Yazaki kontrolliert beinahe 30% des weltweiten Marktes für Fahrzeug-Kabelsysteme mit Stand 2009. Laut Angaben auf ihrer Website werden ihre Fahrzeug-Kabelsysteme „von jedem Fahrzeughersteller in Japan verwendet" und sie „hält einen beherrschenden Anteil des weltweiten Marktes". Tatsächlich stammen 77% der Umsätze von Yazaki aus Fahrzeug-Kabelsystemen und 37% ihrer Umsätze im Jahr 2007 stammten aus der westlichen Hemisphäre. Yazakis größte Kunden sind Toyota, gefolgt von Chrysler, Ford, Renault-Nissan, Honda und schließlich General Motors. In der westlichen Welt beliefert das Unternehmen Chrysler, Ford, General Motors, Honda, Isuzu, Mazda, Mitsubishi, Nissan, Renault, Subaru und Toyota.

145.     Die Beklagte Sumitomo ist der zweitgrößte Hersteller von Fahrzeug-Kabelsystemen und kontrolliert 24% des weltweiten Marktes.

146.     Die Beklagte Delphi ist der drittgrößte Hersteller von

29

Fahrzeug-Kabelsystemen mit Stand 2009. Sie kontrolliert 16,71% des weltweiten Marktes. Ihre beiden größten Kunden sind General Motors und Ford.

147.     Die Beklagte Lear kontrolliert beinahe 5% des weltweiten Marktes für Fahrzeug-Kabelsysteme. Lear beliefert Toyota, General Motors, Ford und BMW.

148.     Die Beklagte Furukawa kontrolliert beinahe 4% des weltweiten Marktes für Fahrzeug-Kabelsysteme.

149.     Die Beklagte Leoni kontrolliert 6% des weltweiten Marktes für Fahrzeug-Kabelsysteme.

150.     Kraft ihres jeweiligen Marktanteils sind die Beklagten die beherrschenden Hersteller und Lieferanten von Fahrzeug-Kabelsystemen in den Vereinigten Staaten und weltweit.

**B.     Die Beklagten hoben die Preise für Fahrzeug-Kabelsysteme trotz gleichbleibender Kosten an**

151.     In einem wettbewerbsorientierten Markt würden sinkende Material- und Arbeitskosten zu niedrigeren Preisen führen, weil jeder Konkurrent Angst hätte, dass die anderen Mitbewerber versuchen würden, ihre niedrigeren Kosten zu nutzen, um ihre Preise zu senken und dadurch Marktanteile zu erobern. Die einzige wirtschaftlich sinnvolle Handlungsweise in einer solchen Situation besteht für jeden Konkurrenten darin, seine Preise zu senken.

152.     In einem Markt, auf dem Konkurrenten eine Verschwörung zur Absprache von Preisen eingegangen sind, senken die Konkurrenten jedoch ihre Preise nicht, selbst wenn die Herstellungskosten gleichbleibend oder niedriger sind. Derartige Preissenkungen sind unnötig, weil die Verschwörer wissen, dass sie keine Umsätze an Konkurrenten mit niedrigeren Preisen verlieren.

153.     Der Preis für Fahrzeug-Kabelsysteme stieg während der Gruppenklagefrist, während die wichtigsten Herstellungskosten buchstäblich gleich blieben. Tatsächlich besitzen Sumitomo und Furukawa laut Angaben von Research in China sogar ihre eigenen

Kupferminen und kontrollieren ihre Kupferherstellungskosten auf effiziente Weise. Kupfer ist eine wichtige Herstellungskostenkomponente bei der Herstellung von Fahrzeug-Kabelsystemen. In einem wettbewerbsorienterten Markt hätten gleichbleibende Herstellungskosten nicht zu steigenden Preisen für die Fahrzeug-Kabelsystem-Kunden der Beklagten führen sollen. Diese wettbewerbsfeindlichen Preissteigerungen haben dazu geführt, dass die Kläger und Mitglieder der Klägergruppen weit über einem wettbewerbsfähigen Preis liegende Preise gezahlt haben.

**C.**   **Struktur und besondere Merkmale des Fahrzeug-Kabelsystemmarktes machen die Verschwörung plausibler**

**1.**   **Der Markt für Fahrzeug-Kabelsysteme hat hohe Markteintrittsbarrieren**

154.    Die Struktur und anderen Merkmale des Marktes für Fahrzeug-Kabelsysteme in den Vereinigten Staaten begünstigen Vereinbarungen zur Preisabsprache und haben unerlaubte Absprachen auf diesem Markt besonders attraktiv gemacht. Der Markt für Fahrzeug-Kabelsysteme ist von folgenden Charakteristika geprägt: (1) hohe Markteintrittsbarrieren, (2) unelastische Nachfrage, (3) eine hohe Konzentration und (4) reichlich Gelegenheiten zu Absprachen.

155.    Eine wettbewerbswidrige Absprache, durch die Produktpreise auf ein Niveau über wettbewerbsfähige Preise angehoben werden, würde bei grundlegenden Wirtschaftsprinzipien neue Markteinsteiger anziehen, die versuchen würden, von den über einem wettbewerbsfähigen Preis liegenden Preisen zu profitieren. Wenn jedoch erhebliche Barrieren für den Markteinstieg vorhanden sind, sind Neueinsteiger in den Markt weniger wahrscheinlich. Somit fördern die Markteintrittsbarrieren die Bildung und Aufrechterhaltung eines Kartells.

156.    Es bestehen erhebliche Barrieren, die den Einstieg in den Markt für Fahrzeug-Kabelsysteme verhindern, reduzieren oder schwieriger machen. Ein Neueinsteiger in diesem Geschäft wäre mit kostspieligen und langwierigen Start-Up-Kosten konfrontiert, einschließlich Kosten in Höhe mehrerer Milliarden im Zusammenhang mit Fertigungsbetrieben und Ausrüstung, Energie, Transport,

Vertriebsinfrastruktur, Facharbeitskräften und langfristigen Kundenbeziehungen.

157.    Darüber hinaus können OEMS die Lieferanten für Fahrzeug-Kabelsysteme nicht willkürlich ändern, nachdem sie sich für einen entschieden haben, weil die OEMS die Merkmale ihrer Fahrzeuge so konstruieren, dass die von ihnen für ein Fahrzeug gekauften Fahrzeug-Kabelsysteme dann mit der Elektronik, Mechanik, Wärmeverteilung und anderen Merkmalen des jeweiligen Fahrzeugmodells integriert werden. Daher muss die Konstruktion von den Herstellern von Fahrzeug-Kabelsystemen und den OEMS synergistisch sein. Dies wäre für einen Neueinsteiger auf dem Markt schwierig.

## 2.    Die Nachfrage bei Fahrzeug- Kabelsystemen ist unelastisch

158.    „Elastizität" ist ein Ausdruck, der zum Beschreiben der Anfälligkeit von Angebot und Nachfrage auf Änderungen bei einem der beiden verwendet wird. So wird zum Beispiel die Nachfrage als „unelastisch" bezeichnet, wenn ein Preisanstieg bei einem Produkt nur einen geringen bzw. gar keinen Rückgang der verkauften Menge dieses Produkts zur Folge hat. Anders ausgedrückt haben Kunden keine Alternative, um billigere Produkte ähnlicher Qualität zu erwerben und kaufen daher weiter trotz des Preisanstigs.

159.    Damit ein Kartell von einer Preisanhebung über ein wettbewerbsfähiges Preisniveau hinaus profitieren kann, muss die Nachfrage bei wettbewerbsfähigen Preisen relativ unelastisch sein. Andernfalls würden die erhöhten Preise zu rückläufigen Umsätzen, Erträgen und Gewinnen führen, da die Kunden andere Produkte als Ersatz kaufen bzw. gar keine Produkte kaufen. Eine unelastische Nachfrage ist ein Marktmerkmal, das wettbewerbswidrige Absprachen fördert und Herstellern erlaubt, ihre Preise anzuheben, ohne Kundensubstitution und Umsatzverluste auszulösen.

160.    Die Nachfrage nach Fahrzeug-Kabelsystemen ist stark unelastisch. Die Nachfrage nach Fahrzeug-Kabelsystemen ist unelastisch, weil es keine annähernden Ersatzprodukte für diese Produkte gibt. Außerdem müssen Kunden Fahrzeug-Kabelsysteme als wesentlichen Teil eines Fahrzeugs kaufen, selbst wenn die Preise auf einem Stand über den wettbewerbsfähigen Preisen gehalten werden.

### 3. Der Markt für Fahrzeug-Kabelsysteme weist eine hohe Konzentration auf

161.    Ein stark konzentrierter Markt ist anfälliger für wettbewerbswidrige Absprachen und anderweitige wettbewerbsfeindliche Praktiken.

162.    Wie oben erläutert beherrschen die Beklagten den Markt für Fahrzeug-Kabelsysteme. Sechs der Beklagten kontrollieren beinahe 90% des weltweiten Marktes, und vier der Beklagten kontrollieren beinahe 77% des weltweiten Marktes: Yazaki kontrolliert nahezu 30%, Sumitomo kontrolliert 24%, Delphi kontrolliert 16,71%, Lear kontrolliert nahezu 5%, Furukawa kontrolliert nahezu 4% und Leoni kontrolliert 6%.

### 4. Die Beklagten hatten reichlich Gelegenheit zur Verschwörung

163.    Die Beklagten nahmen an Branchenveranstaltungen teil, bei denen sie Gelegenheit zum Treffen, Führen unzulässiger Gespräche unter dem Deckmantel legitimer Geschäftskontakte und zur Vornahme von Handlungen hatten, die zum Betrieb und zur Förderung der Verschwörung nötig waren. So haben die Beklagten und ihre Mitverschwörer zum Beispiel regelmäßig an der jährlich in Nordamerika stattfinden internationalen Automesse („NAIAS") in Detroit, Michigan, und an der Messe „Automotive Aftermarket Products Expo" in Las Vegas, Nevada, teilgenommen. Laut Angaben der NAIAS-Website war die Beklagte Denso sogar einer der Hauptsponsoren der Veranstaltung im Jahr 2012, die vom 9. bis 22. Januar stattfand.

### D. Staatliche Ermittlungen

164.    In den Vereinigten Staaten, Europa und Japan wird eine global koordinierte Kartell-Ermittlung durchgeführt, deren Gegenstand Fahrzeug-Kabelsystemlieferanten sind.

165.    Die Nachforschungen begannen ursprünglich in Europa als Ergebnis einer Zusammenkunft mehrerer europäischer Originalgerätehersteller (OEMS), um bei der Europäischen Kommission eine Klage einzureichen. Es heißt, dass ein Autohersteller keine wettbewerbsfähigen Angebote für Fahrzeug-Kabelsysteme einholen konnte, was das Unternehmen veranlasste, sich mit anderen Autoherstellern zu einer Klage bei der

Europäischen Kommission zusammenzutun.

166.    Am 8. Februar 2010 führte die EU-Kommission unangekündigte
Durchsuchungen in den europäischen Büroniederlassungen bestimmter Beklagter im
Rahmen einer Ermittlung zu wettbewerbswidrigem Verhalten im Zusammenhang mit der
Herstellung und dem Verkauf von Fahrzeug-Kabelsystemen durch.   Die  EU-Kommission
führte am 7. Juni 2010 auch weitere Durchsuchungen in den europäischen
Büroniederlassungen mehrerer Fahrzeug-Kabelsystemlieferanten durch. Die
Ermittlungsbeamten der EU-Kommission durchsuchten insbesondere die
Büroräumlichkeiten von Leoni, S-Y Systems und Yazaki. „Die Kommission hat Grund zu
der Annahme, dass die betreffenden Unternehmen u.U. gegen die Kartellgesetze der
Europäischen Union verstoßen haben, die die Bildung von Kartellen und beschränkenden
Geschäftspraktiken untersagen,“ so die Erklärung eines Beamten der EU- Kommission.

167.    Die Beklagten S-Y Systems und Leoni haben eingestanden, dass sie mit den
Kartellfahndern kooperieren. Der Unternehmenschef von Lear, Bob Rossiter, hat erklärt,
dass Lear von der EU-Kommission in Kenntnis gesetzt wurde, dass sie Gegenstand einer
Ermittlung wegen wettbewerbswidriger Praktiken unter Lieferanten von elektronischen
und Elektrokomponenten für Fahrzeuge ist. Darüber hinaus hat Delphi zugegeben, dass sie
„eine Informationsanfrage von Kartellbehörden der Europäischen Kommission erhalten
habe, in der Informationen über unser Verhalten im Zusammenhang mit einer Ermittlung
in der Europäischen Union in Bezug auf den Markt für elektro- und elektronische
Komponenten angefordert werden.“” Delphi erklärte, dass sie vollumfänglich mit den
europäischen Wettbewerbsbehörden kooperiere. Leoni hat ebenfalls erklärt, dass sie mit
den Kartellermittlungsbeamten kooperiert.

168.    Im Februar 2010 durchsuchte die japanische Wettbewerbsbehörde die
Büros von Furukawa, Sumitomo und Yazaki in Tokio im Rahmen einer groß angelegten
Ermittlung zu wettbewerbswidrigen Absprachen in der Branche, die bis mindestens 2003
zurück reichen.

169.    Das DOJ hat erklärt, dass es derzeit Ermittlungen zu potenziellen

Antitrustaktivitäten durchführt und seine Ermittlung mit Kartellbeamten in Europa koordiniert. „Die Kartellabteilung stellt Nachforschungen zu möglichen wettbewerbswidrigen Verhaltensweisen seitens Lieferanten von elektronischen und Elektrokomponenten für Fahrzeuge an," erklärte die Sprecherin des Justizministeriums, Gina Talamona.

170.     Tatsächlich durchsuchten Ermittlungsbeamte des FBI am 23. Februar 2010, ungefähr zur gleichen Zeit wie die von den japanischen und europäischen Wettbewerbsbehörden vogenommenen Durchsuchungen, drei japanische Fahrzeugteilehersteller im Einzugsgebiet Detroit im Rahmen einer bundesstaatlichen kartellrechtlichen Ermittlung. Das FBI erließ Durchsuchungsbefehle und durchsuchte die Büroräumlichkeiten dieser Unternehmen, einschließlich der Beklagten Denso, Tokai Rika sowie der Tochtergesellschaft von Yazaki in Canton Township, Michigan. Sonderagentin Sandra Berchtold gab an, dass die eidlichen Erklärungen über die Erstellung von Durchsuchungsbefehlen bei einem Bundesgericht gesiegelt wurden.

171.     Um Durchsuchungsbefehle zu erhalten, mussten die Vereinigten Staaten nach dem Gesetz einen triftigen Grund haben, der von einem Untersuchungsrichter akzeptiert wurde, um anzunehmen, dass sie bei Ausübung eines Durchsuchungsbefehls Nachweise eines kartellrechtlichen Verstoßes  erhalten würden - das heißt, die Vereinigten Staaten mussten hinlängliche Beweise haben, um eine nach vernünftigem Ermessen umsichtige Person zu der Annahme zu veranlassen, dass eine Durchsuchung der Büroräumlichkeiten eines dem Anschein nach rechtmäßig operierenden Unternehmens Beweise von kartellrechtlichen Verstößen erbringen würde und dass die angeblichen Beweise von einem Untersuchungsrichter geprüft und akzeptiert worden sein müssen. Diese Annahme, die in eidlichen Erklärungen oder Zeugenaussagen gemacht wurde, muss auf nach vernünftigem Ermessen vertrauenswürdigen Informationen fußen.

**E.     Schuldbekenntnisse**

172.     Am 29. September 2011 gab das DOJ bekannt, dass die Beklagte Furukawa Electric sich schuldig bekannt hatte und eine Geldstrafe von $200 Millionen für ihre Rolle

bei einer kriminellen Verschwörung zur Preis- und Angebotsabsprache für den Verkauf von Fahrzeug-Kabelsystemen an Autohersteller zahlen würde.

173. Furukawa Electric wird der Preisabsprache unter Verstoß gegen das Sherman-Kartellgesetz angeklagt.

174. Furukawa Electric hat sich ihrer Rolle bei einer Verschwörung zur Angebots- und Preisabsprache zum Verkauf von Fahrzeug-Kabelsystemen und verbundenen Produkten schuldig bekannt, die an Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden. Das DOJ gab in einer Pressemitteilung bekannt, dass Furukawa Electric mindestens seit Januar 2000 und mindestens bis Januar 2010 an der Verschwörung beteiligt war.

175. Die hierin besprochenen Schuldbekenntnisse gehen auf die ursprünglichen Anschuldigungen des DOJ im Rahmen seiner fortlaufenden internationalen kartellrechtlichen Ermittlungen zu Preis- und Angebotsabsprachen in der Fahrzeugteileindustrie zurück. Laut vier separaten Anklagen eines Verbrechens mit jeweils einem Klagepunkt, die beim Bezirksgericht der Vereinigten Staaten für den Bezirk Michigan-Ost in Detroit eingereicht wurden, beteiligten sich Furukawa Electric und ihre leitenden Angestellten—Junichi Funo, Hirotsugu Nagata and Tetsuya Ukai—an einer Verschwörung zur Angebotsabsprache zur Absprache, Stabilisierung und Aufrechterhaltung von Preisen für Fahrzeug-Kabelsysteme, die an Kunden in den Vereinigten Staaten und andernorts verkauft wurden.

176. Laut den eingereichten Informationen führten Furukawa Electric und ihre Mitverschwörer die Verschwörung folgendermaßen durch:

(a) durch Teilnahme an Meetings, Gesprächen und Kommunikationen in den Vereinigten Staaten und in Japan zur Besprechung der Angebote und Preisgebote, die Autoherstellern in den Vereinigten Staaten und andernorts unterbreitet werden sollten;

(b) durch Absprache bei diesen Meetings, Gesprächen und Kommunikationen von Angeboten und Preisgeboten, die Autoherstellern in den Vereinigten Staaten und andernorts unterbreitet werden sollten;

36

(c)      durch Vereinbaren bei diesen Meetings, Gesprächen und Kommunikationen der Aufteilung des Angebots an Fahrzeug-Kabelsystemen, die an Autohersteller in den Vereinigten Staaten und andernorts auf Modellbasis verkauft wurden;

(d)      durch Vereinbaren bei diesen Meetings, Gesprächen und Kommunikationen, die von Autoherstellern in den Vereinigten Staaten und andernorts verlangten Preisanpassungen zu koordinieren;

(e)      durch Unterbreiten von Angeboten, Preisgeboten und Preisanpassungen für Autohersteller in den Vereinigten Staaten und andernorts entsprechend den getroffenen Absprachen;

(f)      den Verkauf von Fahrzeug-Kabelsystemen an Autohersteller in den Vereinigten Staaten und andernorts zu wettbewerbswidrigen und nichtwettbewerbsfähigen Preisen;

(g)      durch Annahme von Zahlungen für Fahrzeug-Kabelsysteme, die an Autohersteller in den Vereinigten Staaten und andernorts zu wettbewerbswidrigen und nichtwettbewerbsfähigen Preisen verkauft wurden;

(h)      durch Teilnahme an Meetings, Gesprächen und Kommunikationen in den Vereinigten Staaten und andernorts, um die Einhaltung der vereinbarten Angebots- und Preisabsprachen zu überwachen und durchzusetzen und

(i)      durch das Ergreifen von Maßnahmen zur Geheimhaltung ihres Verhaltens, einschließlich, aber nicht beschränkt auf die Verwendung von Decknamen und Zusammenkünfte in Privathäusern oder an entlegenen Standorten.

177.    „In Folge dieser internationalen Verschwörung zur Preis- und Angebotsabsprache zahlten Autohersteller nicht wettbewerbsfähige und höhere Preise für Fahrzeugteile von Fahrzeugen, die an US-Kunden verkauft wurden," sagte Sharis A. Pozen, stellvertretende Generalstaatsanwältin für die Kartellrechtsabteilung des Justizministeriums. „Dieses Kartell hat eine wichtige Branche unserer heimischen

Wirtschaft geschädigt und die Kartellrechtsabteilung wird weiter mit dem Bundeskriminalamt zusammenarbeiten, um sicher zu stellen, dass dieser Art von Verschwörung Einhalt geboten wird."

178.    „Wenn sich Unternehmen zur Preiskontrolle, Preisabsprache oder Absprache von Verträgen zusammenschließen, unterminiert dies die Grundlagen des Wirtschaftssystems der Vereinigten Staaten," meinte der zuständige FBI-Sonderagent Andrew G. Arena. „Das FBI setzt sich nachdrücklich für die Strafverfolgung von in kartellrechtliche Verbrechen verwickelten Unternehmen ein."

179.    Bei der Verhandlung zum Eingeständnis der Schuld und zur Strafzumessung am 14. November 2011 bekannte sich die Beklagte Furukawa Electric schuldig und es wurde verfügt, dass sie innerhalb von 45 Tagen eine Geldstrafe von $ 200 Millionen zahlen müsse. Bei der Verhandlung beschrieb die Beklagte Furukawa Electric ihre Beteiligung an der Verschwörung wie folgt:

> Ab dem in den Informationen angegebenen Zeitraum, das heißt ungefähr ab Januar 2000 bis Januar 2010, führten leitende Angestellte und Mitarbeiter meines Unternehmens Gespräche mit Mitarbeitern von Konkurrenzunternehmen, die auch Fahrzeug-Kabelsystemprodukte herstellten und verkauften . . . . Diese Gespräche fanden bei persönlichen Treffen oder telefonisch statt. Die Gespräche wurden in den Vereinigten Staaten und andernorts geführt.
>
> Während . . . dieser Treffen und Gespräche wurde eine Verschwörung gebildet und Absprachen zur Zuteilung des Angebots an Fahrzeug-Kabelsystemen und verwandten Produkten getroffen, die auf Modellbasis an Autohersteller verkauft wurden sowie zur Absprache von Angeboten, die Autoherstellern für Fahrzeug-Kabelsysteme und verwandte Produkte unterbreitet wurden.
>
> In Folge dieser Treffen produzierte und verkaufte mein Unternehmen daher Fahrzeug-Kabelsysteme und verwandte Produkte, die der Gegenstand rechtswidriger Preisabsprachen waren, die mein Unternehmen mit Konkurrenzunternehmen getroffen hatte. Diese Produkte und die Zahlungen für diese Produkte befanden sich im zwischenstaatlichen und Außenhandel

und beeinträchtigten den zwischenstaatlichen und Außenhandel erheblich.

Für die Zwecke dieses Eingeständnisses („plea agreement") beliefen sich unsere Umsätze aus Fahrzeug-Kabelsystemen und verwandten Produkten für die Zeit von Januar 2000 bis Januar 2010, die sich auf US-amerikanische Autohersteller ausgewirkt hatten, auf insgesamt $ 839 Millionen.

Schließlich merken wir gegenüber dem Gericht noch an, dass einige von der Verschwörung betroffenen Produkte von einer unserer Tochtergesellschaften [American Furukawa], die hier im Bezirk Michigan-Ost ansässig ist, an Autohersteller verkauft wurden.

- Plea & Sentencing (Eingeständnis der Schuld und Strafzumessung), *United States v. Furukawa Electric Co*., Nr. 11-cr-20612 (E.D. Mich.), unter Punkt 14-16.

180.    Die Führungskräfte von Furukawa Electric, Funo, Nagata und Ukai, standen vor Gericht auch ihre Beteiligung an dem rechtswidrigen Kartell ein:

a)    Bei seiner Verhandlung mit Schuldbekenntnis vom 24. Oktober 2011 gestand der leitende Angestellte von Furukawa Junichi Funo seine Beteiligung an einer Verschwörung zur Wettbewerbsbeschränkung ein.  Herr Funo gestand ein, dass er Absprachen mit Konkurrenten – d.h. den Beklagten in dieser Sache – getroffen hatte, um Preise festzusetzen und aufrecht zu halten, einschließlich der Absprache von Angeboten, die von Kunden angefordert wurden. Mit den Absprachen sollten auch Preisanpassungen kontrolliert werden und diese wurden auch kontrolliert.  Laut eigenen Angaben von Herrn Funo „traf er Preisabsprachen für Kfz-Teile". Diese Preisabsprachen „betrafen im Allgemeinen . . . Kabelsysteme und verwandte Produkte." Die Preisabsprachen wirkten sich negativ auf den Verkauf von Waren in den gesamten Vereinigten Staaten aus. Herr Funo war persönlich bei Treffen anwesend, bei denen solche rechtswidrigen Absprachen erreicht wurden, einschließlich Treffen, die im Bezirk Michigan-Ost stattfanden. Entsprechend seinem Schuldbekenntnis wurde Herr Funo zu einer Haftstrafe von einem Jahr, einer Geldstrafe von $ 20.000 verurteilt und erteilte die Zusage, bei den laufenden Ermittlungen des DOJ zu kooperieren.

b)     Bei seiner Verhandlung mit Schuldbekenntnis am 24. Oktober 2011 gestand der leitende Angestellte von Furukawa Hirotsugu Nagata ein, dass er an „einer Absprache zur Unterbreitung nicht-wettbewerbsorientierter Angebote in Höhe eines Betrags von über $ 100 Millionen" beteiligt war. Der Zweck dieser Absprache bestand darin, „Konkurrenz in der Fahrzeugteileindustrie zu unterdrücken und eliminieren." Herr Nagata förderte nach eigenen Angaben die rechtswidrige Verschwörung mit den Beklagten durch Abhalten „eines Treffens [mit] Mit-Verschwörern und einer gewissen Absprache des Preises für Teile zur Autoherstellung" – vorallem Fahrzeug-Kabelsysteme. Er nahm persönlich an „einigen" widerrechtlichen Treffen zur Förderung der Verschwörung teil, bei denen die Beklagten Absprachen zur Preisgebung für Fahrzeug-Kabelsysteme einschließlich der Absprache von Angeboten trafen. Einige Treffen fanden im Bezirk Michigan-Ost statt und Herr Nagata räumte ein, dass die rechtswidrigen Absprachen sich nachteilig auf Unternehmen mit Hauptgeschäftssitz im Bezirk Michigan-Ost auswirken würden. Herr Nagata merkte an, dass die gemäß der Preisabsprache verkauften Fahrzeug-Kabelsysteme in einigen US-Bundesstaaten verkauft wurden und den Wettbewerb innerhalb der Vereinigten Staaten unterminierten und verhinderten. Entsprechend seinem Schuldbekenntnis wurde Herr Nagata mit einer Haftstrafe von 15 Monaten, einer Geldstrafe von $ 20.000 belegt und erteilte die Zusage, bei den laufenden Ermittlungen mit dem DOJ zu kooperieren

c)     Bei seiner Verhandlung mit Schuldbekenntnis und Strafzumessung vom 10. November 2011 gab der leitende Angestellte von Furukawa Tetsuya Ukai an, dass er „Preise  – Preise von Fahrzeugteilen – mit anderen Lieferanten absprach." Er gestand ein, dass er sich mit Konkurrenten getroffen habe, „um Preise und Angebote für Kabelsysteme und verwandte Produkte abzusprechen" und räumte ein, dass die Treffen zur Preisabsprache sowohl in den Vereinigten Staaten wie andernorts stattfanden, einschließlich im Bezirk Michigan-Ost über eine Tochtergesellschaft von Furukawa – vermutlich American Furukawa.  Herr Ukai gestand außerdem ein, dass der davon betroffene Handel $ 100 Millionen überstieg. Als Teil seines Schuldbekenntnisses hat sich Herr Ukai bereit erklärt, eine Haftstrafe von 18 Monaten zu verbüßen und eine Geldstrafe

von $ 20.000 für seine Rolle bei der Verschwörung zu zahlen.

181.    Die Beklagte Furukawa Electric sowie Herr Funo, Herr Nagata und Herr Ukai haben sich allesamt bereit erklärt, das DOJ bei seinen anhaltenden Ermittlungen der Fahrzeugteilbranche zu unterstützen.

182.    Am 30. Januar 2012 gab das DOJ bekannt, dass die Beklagte Yazaki Corporation sich bereit erklärt habe, eine Geldstrafe von $ 470 Millionen zu zahlen und sich einer Strafanzeige mit drei Anklagepunkten schuldig zu bekennen, die die Yazaki Corporation folgender Vergehen bezichtigt: (1) Beteiligung an einem Zusammenschluss und einer Absprache mit ihren Mitverschwörern zur Unterdrückung und Ausschaltung des Wettbewerbs in der Kfz-Teile-Branche, indem vereinbart wurde, Preisangebote für Kabelsysteme und verbundene Produkte, die an bestimmte Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden, mindestens ab Januar 2000 und bis mindestens Februar 2010 unter Verstoß gegen das Sherman-Kartellgesetz, 15 U.S.C § 1 abzusprechen und die Preise dafür abzusprechen, zu stabilisieren und aufrecht zu erhalten; (2) Beteiligung an einem Zusammenschluss und einer Absprache mit ihren Mitverschwörern zur Unterdrückung und Ausschaltung des Wettbewerbs in der Kfz-Teile-Branche, indem vereinbart wurde, Preisangebote für Armaturenbretter, die an bestimmte Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden, mindestens ab Dezember 2002 und bis mindestens Februar 2010 unter Verstoß gegen das Sherman-Kartellgesetz, 15 U.S.C § 1 abzusprechen und die Preise dafür abzusprechen, zu stabilisieren und aufrecht zu erhalten; und (3) Beteiligung an einem Zusammenschluss und einer Absprache mit ihren Mitverschwörern zur Unterdrückung und Ausschaltung des Wettbewerbs in der Kfz-Teile-Branche, indem vereinbart wurde, Preisangebote für Treibstoffsensoren, die an bestimmte Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden, mindestens ab März 2004 und bis mindestens Februar 2010 unter Verstoß gegen das Sherman-Kartellgesetz, 15 U.S.C § 1 abzusprechen und die Preise dafür abzusprechen, zu stabilisieren und aufrecht zu erhalten.

183.    Außer der Yazaki Corporation erklärten sich vier leitende Angestellte der Yazaki Corporation (durchweg Japaner) - Tsuneaki Hanamura, Ryoji Kuwai, Shigeru

Ogawa und Hisamitsu Takada – einverstanden, sich der Beteiligung an einer Absprache zur Unterdrückung und Ausschaltung des Wettbewerbs in der Kfz-Teile-Branche schuldig zu bekennen, bei der vereinbart wurde, Preisangebote für Fahrzeug-Kabelsysteme, die an bestimmte Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden, unter Verstoß gegen das Sherman-Kartellgesetz, 15 U.S.C § 1 abzusprechen und die Preise dafür abzusprechen, zu stabilisieren und aufrecht zu erhalten. Diese vier leitenden Angestellten der Yazaki Corporation werden Haftstrafen zwischen 15 Monaten und zwei Jahren verbüßen. Die zweijährigen Haftstrafen wären die längsten Inhaftierungen, mit denen ein Ausländer belegt wurde, der sich freiwillig der US-Rechtsprechung wegen eines kartellrechtlichen Verstoßes gegen das Sherman-Kartellgesetz unterwirft.

184.    Am 26. März 2012 gab das DOJ bekannt, dass die Beklagte Denso Corporation sich bereit erklärte, sich schuldig zu bekennen und Geldstrafen von insgesamt $ 78 Millionen wegen einer Strafanzeige mit zwei Anklagepunkten zu zahlen, die Denso folgender Vergehen bezichtigt: (1) Beteiligung an einem Zusammenschluss und einer Absprache mit ihren Mitverschwörern zur Unterdrückung und Ausschaltung des Wettbewerbs in der Kfz-Teile-Branche, indem vereinbart wurde, Preisangebote für elektronische Steuereinheiten, die an bestimmte Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden, mindestens ab Januar 2000 und bis mindestens Februar 2010 unter Verstoß gegen das Sherman-Kartellgesetz, 15 U.S.C § 1 abzusprechen und die Preise dafür abzusprechen, zu stabilisieren und aufrecht zu erhalten; (2) Beteiligung an einem Zusammenschluss und einer Absprache mit ihren Mitverschwörern zur Unterdrückung und Ausschaltung des Wettbewerbs in der Kfz-Teile-Branche, indem vereinbart wurde, Preisangebote für Heizungsbedienfelder, die an bestimmte Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden, mindestens ab Januar 2000 und bis mindestens Februar 2010 unter Verstoß gegen das Sherman-Kartellgesetz, 15 U.S.C § 1 abzusprechen und die Preise dafür abzusprechen, zu stabilisieren und aufrecht zu erhalten. Die hierin erwähnten „elektronischen Steuereinheiten" sind in der in dieser Klageschrift angeführten Definition von Fahrzeug-Kabelsystemen mit enthalten (siehe oben, Absatz 3).

185.     Am 3. April 2012 gab das DOJ bekannt, dass die Beklagte G.S. Electech Inc. sich bereit erklärt hat, sich schuldig zu bekennen und eine Geldstrafe von $ 2,75 Millionen wegen einer Strafanzeige mit einem Anklagepunkt zu zahlen, die G.S. Electech Inc. der Beteiligung an einem Zusammenschluss und einer Absprache zur Unterdrückung und Ausschaltung des Wettbewerbs in der Kfz-Teile-Branche bezichtigt, indem vereinbart wurde, Preisangebote für Geschwindigkeitssensor-Kabelbaugruppen, die an bestimmte Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden, mindestens ab Januar 2003 und bis mindestens Februar 2010 unter Verstoß gegen das Sherman-Kartellgesetz, 15 U.S.C § 1 abzusprechen und die Preise dafür abzusprechen, zu stabilisieren und aufrecht zu erhalten. Die hierin erwähnten „Geschwindigkeitssensor-Kabelbaugruppen" sind in der in dieser Klageschrift angeführten Definition von Fahrzeug-Kabelsystemen mit enthalten (siehe oben, Absatz 3).

186.     Am 23. April 2012 gab das DOJ bekannt, dass die Beklagte Fujikura Ltd. sich bereit erklärt hat, sich schuldig zu bekennen und eine Geldstrafe von $ 20 Millionen wegen einer Strafanzeige mit einem Anklagepunkt zu zahlen, die Fujikura der Beteiligung an einem Zusammenschluss und einer Absprache zur Unterdrückung und Ausschaltung des Wettbewerbs in der Kfz-Teile-Branche bezichtigt, indem vereinbart wurde, Preisangebote für Fahrzeug-Kabelsysteme und verbundene Produkte, die an bestimmte Autohersteller in den Vereinigten Staaten und andernorts verkauft wurden, mindestens ab Januar 2006 und bis mindestens Februar 2010 unter Verstoß gegen das Sherman-Kartellgesetz, 15 U.S.C § 1 abzusprechen und die Preise dafür abzusprechen, zu stabilisieren und aufrecht zu erhalten.

187.     Die Beklagten, die sich bis dato der Beteiligung an dem Fahrzeugkabelsystem-Kartell schuldig bekannt haben, haben sich zur Zahlung von Geldstrafen in Höhe von insgesamt $ 770,75 Millionen bereit erklärt, die zu den höchsten jemals vom DOJ eingezogenen Kartell-Geldstrafen gehören.

## BEHAUPTUNGEN DER GRUPPENKLAGE

188.     Die Kläger strengen diese Klage in eigener Sache und als Gruppenklage

43

gemäß Rechtsregel 23(a) und (b)(2) der Bundeszivilprozessordnung an und ersuchen um Rechtsmittel nach dem Billigkeitsrecht und einen Unterlassungsanspruch für die folgende Klägergruppe (die „landesweite Klägergruppe"):

> Alle Personen und juristischen Personen, die indirekt während der Gruppenklagefrist Fahrzeug-Kabelsysteme zum persönlichen Gebrauch und nicht zum Weiterverkauf einschließlich des Kaufs von Fahrzeug-Kabelsystemen als selbständiges Ersatzprodukt oder als Bestandteil eines neuen Fahrzeugs von einer der Beklagten oder einer derzeitigen oder früheren Tochtergesellschaft oder verbundenen Gesellschaft derselben oder einem Mitverschwörer in den Vereinigten Staaten gekauft oder geleast haben.

189.    Die Kläger strengen diese Klage auch in eigener Sache und als Gruppenklage gemäß Rechtsregel 23(a) und (b)(3) der Bundeszivilprozessordnung an und ersuchen um Schadensersatz gemäß den Kartellgesetzen, Gesetzen gegen unlauteren Wettbewerb, den Verbraucherschutzgesetzen und Gesetzen gegen ungerechtfertigte Bereicherung der Staaten, deren Gesetze in Absatz 236-276 unten (die „Klägerstaaten") angegeben sind. Diese Forderungen werden von den Klägern in eigener Sache und für Personen und Organisationen in den Klägerstaaten wie folgt geltend gemacht (die „Schadensersatzgruppe"):

> Alle Personen und juristischen Personen, die indirekt während der Gruppenklagefrist Fahrzeug-Kabelsysteme zum persönlichen Gebrauch und nicht zum Weiterverkauf einschließlich des Kaufs von Fahrzeug-Kabelsystemen als selbständiges Ersatzprodukt oder als Bestandteil eines neuen Fahrzeugs von einer der Beklagten oder einer derzeitigen oder früheren Tochtergesellschaft oder verbundenen Gesellschaft derselben oder einem Mitverschwörer in den Klägerstaaten gekauft oder geleast haben.

190.    Die landesweite und die Schadensersatzgruppe werden hierin als die „Gruppen" bezeichnet.  Von den Gruppen ausgeschlossen sind die Beklagten, deren Muttergesellschaften, Tochtergesellschaften und verbundenen Gesellschaften, alle Mitverschwörer, bundesstaatliche Regierungsstellen und Behörden der Bundesregierung, Staaten und deren Unterabteilungen, Regierungsstellen und -behörden sowie Personen, die Fahrzeug-Kabelsysteme direkt oder zum Weiterverkauf gekauft haben.

44

191.    Den Klägern ist die genaue Anzahl der Mitglieder dieser Gruppe zwar nicht bekannt, die Kläger glauben jedoch, dass jeder Gruppe (mindestens) Tausende von Mitgliedern angehören.

192.    In Bezug auf alle Mitglieder der Gruppen bestehen gemeinsame rechtliche und faktische Fragen. Dies trifft besonders in Anbetracht der Art der Verschwörung der Beklagten zu, die sich generell auf alle Mitglieder beider Gruppen bezog und dadurch angemessene Rechtsmittel in Bezug auf beide Gruppen insgesamt beschafft. Diese beiden Gruppen gemeinsamen rechtlichen und faktischen Fragen sind unter anderem, jedoch nicht beschränkt auf:

(a)    Ob die Beklagten und ihre Mitverschwörer untereinander einen Zusammenschluss und eine Verschwörung zur Absprache, Anhebung, Aufrechterhaltung oder Stabilisierung der Preise von in den Vereinigten Staaten verkauften Fahrzeug-Kabelsystemen eingegangen sind;

(b)    Die Identität der Beteiligten der angeblichen Verschwörung;

(c)    Die Dauer der angeblichen Verschwörung und der von den Beklagten und ihren Mitverschwörern zur Förderung der Verschwörung begangenen Handlungen;

(d)    Ob die angebliche Verschwörung einen Verstoß gegen das Sherman-Kartellgesetz darstellt, wie in der ersten Forderung von Rechtsmitteln behauptet wird;

(e)    Ob die angebliche Verschwörung gegen die staatlichen Kartellgesetze und Gesetze über unlauteren Wettbewerb und/oder das einzelstaatliche Verbraucherschutzgesetz verstößt, wie in der zweiten und dritten Forderung von Rechtsmitteln behauptet wird;

(f)    Ob die Beklagten sich unrechtmäßig zum Nachteil der Kläger und den Mitgliedern der Gruppen bereichert haben, wodurch die Kläger und die Mitglieder der Gruppen zur Herausgabe aller von den Beklagten erhaltenen Bereicherungen berechtigt

45

werden, wie in der vierten Forderung von Rechtsmitteln behauptet wird;

(g)    Ob das Verhalten der Beklagten und ihrer Mitverschwörer wie in der vorliegenden Klage behauptet das Geschäft und Eigentum der Kläger und der Mitglieder der Gruppen geschädigt hat;

(h)    Die Auswirkung der angeblichen Verschwörung auf die Preise von in den Vereinigten Staaten während der Gruppenklagefrist verkauften Fahrzeug-Kabelsysteme;

(i)    Ob einem der Kläger die von den Beklagten getroffene Absprache bekannt war oder einer der Kläger Grund hatte, davon Kenntnis zu haben.

(j)    Ob die Beklagten und ihre Mitverschwörer auf arglistige Weise den Klägern und den Gruppenmitgliedern die Existenz der Verschwörung verschwiegen haben;

(k)    Der angemessene Unterlassungsanspruch und die damit verbundenen Rechtsmittel nach dem Billigkeitsrecht für die landesweite Gruppe und

(l)    Das angemessene Ausmaß des Schadensersatzes für die gesamte Schadensersatzgruppe.

193.    Die Forderungen der Kläger sind typisch für die Forderungen der Mitglieder der Gruppen und die Kläger werden die Interessen der Gruppen auf faire und angemessene Weise schützen. Die Kläger und alle Gruppenmitglieder sind auf ähnliche Weise von dem rechtswidrigen Verhalten der Beklagten betroffen, da sie künstlich überhöhte Preise für indirekt von den Beklagten oder deren Mitverschwörern gekaufte Fahrzeug-Kabelsysteme bezahlt haben.

194.    Die Forderungen der Kläger ergeben sich aus derselben gemeinsamen Verhaltensweise, aus der sich die Forderungen der anderen Gruppenmitglieder ergeben. Die Interessen der Kläger stimmen mit denjenigen der anderen Gruppenmitglieder überein und widersprechen diesen nicht. Die Kläger werden von Anwälten vertreten, die zur Durchführung von kartellrechtlichen und Gruppenklagen qualifiziert und darin erfahren

46

sind.

195.    Die den Mitgliedern der Gruppen gemeinsamen rechtlichen und faktischen Fragen haben Vorrang vor allen Fragen, die nur einzelne Mitglieder betreffen, einschließlich rechtlicher und faktischer Fragen im Hinblick auf Haftung und Schadensersatz.

196.    Eine Behandlung als Gruppenklage ist eine bestens geeignete Methode für eine faire und effiziente Entscheidung des Rechtsstreits, da diese Behandlung unter anderem einer großen Anzahl ähnlich gestellter Personen erlaubt, ihre gemeinsamen Forderungen gleichzeitig, effizient und ohne unnötige doppelte Beweisvorlage, doppelte Mühe und Auslagen, die bei vielen einzelnen Klagen anfallen würden, an einem einzigen Gerichtsstand einzuklagen.  Die Vorteile des Vorgehens durch eine Gruppenklage, einschließlich der Bereitstellung einer Vorgehensweise zum Erlangen einer Entschädigung für Forderungen von geschädigten Personen und juristischen Personen, die einzeln u.U. nicht durchgesetzt werden könnten, wiegen in erheblichem Umfang alle Schwierigkeiten auf, die sich ggf. aus dem Geltendmachen dieser Gruppenklage ergeben könnten.

197.    Das Vorbringen separater Klagen durch einzelne Gruppenmitglieder würde die Gefahr nicht übereinstimmender oder abweichender Entscheidungen schaffen, wodurch nicht übereinstimmende Verhaltensnormen für die Beklagten erstellt würden.

## DEN KLÄGERN UND DEN GRUPPEN SIND KARTELLRECHTLICHE SCHÄDEN ENTSTANDEN

198.    Die Verschwörung der Beklagten zur Preisabsprache hatte unter anderem folgende Auswirkungen:

(a)    Der Preiswettbewerb bei Fahrzeug-Kabelsystemen wurde beschränkt oder eliminiert;

(b)    Die Preise für Fahrzeug-Kabelsysteme wurden abgesprochen, angehoben, aufrecht erhalten oder auf einem künstlich überhöhten Niveau stabilisiert und

(c)    Indirekte Käufer von Fahrzeug-Kabelsystemen wurden um einen

47

ungehinderten und offenen Wettbewerb gebracht.

199.    Die Kläger und die Mitglieder der Gruppen zahlten während der Gruppenklagefrist weit über dem wettbewerbsfähigen Stand liegende Preise für Fahrzeug-Kabelsysteme.

200.    Die Märkte für Fahrzeug-Kabelsysteme und der Automarkt sind unauflöslich miteinander verflochten und verbunden, weil der Markt für Fahrzeug-Kabelsysteme existiert, um den Automarkt zu bedienen. Ohne Fahrzeuge haben Fahrzeug-Kabelsysteme wenig bzw. gar keinen Wert, weil sie keine unabhängige Verwendbarkeit haben. Tatsächlich schafft die Nachfrage nach Fahrzeugen die Nachfrage nach  Fahrzeug-Kabelsystemen. Wie Lear in seinem Jahresbericht 2010 anmerkte: „Unsere Umsätze werden durch die Anzahl der von den Autoherstellern produzierten Fahrzeuge vorangetrieben, die letztendlich von der Verbrauchernachfrage und der Autonachfrage abhängt.“

201.    Fahrzeug-Kabelsysteme sind identifizierbare, spezielle Produkte, die im Wesentlichen beim Einbau in ein Fahrzeug unverändert bleiben. Infolgedessen durchlaufen Fahrzeug-Kabelsysteme eine nachvollziehbare physische Vertriebskette von den Beklagten bis zu den Klägern und den Gruppenmitgliedern, und alle auf Fahrzeug-Kabelsysteme zurück zu führenden Kosten können über die Vertriebskette zu den Klägern und den Gruppenmitgliedern zurück verfolgt werden.

202.    Durch die angeblichen Verstöße gegen die Kartellgesetze sind die Kläger und die Gruppenmitglieder in ihrem Geschäft oder Eigentum geschädigt worden, da sie höhere Preise für Fahrzeug-Kabelsysteme gezahlt haben als sie ohne Vorhandensein des rechtswidrigen Vertrages, Zusammenwirkens bzw. der Verschwörung der Beklagten gezahlt hätten und infolgedessen sind sie in Höhe eines derzeit nicht ermittelten Betrages geschädigt worden. Dies ist ein kartellrechtlicher Schaden der Art, die von den Kartellgesetzen bestraft und verhindert werden soll.

## DIE FORDERUNGEN DER KLÄGER SIND NICHT VERJÄHRT

**A.**     **Die Verjährungsfrist hat noch nicht begonnen, weil die Kläger ihre Forderungen nicht entdeckten und nicht entdecken konnten**

203.     Die Kläger wiederholen und führen die oben erwähnten Anschuldigungen erneut an.

204.     Den Klägern und den Gruppenmitgliedern waren die hierin behauptete Absprache bzw. Verschwörung oder Tatsachen, die ausgereicht hätten, um eine Anfrage hinsichtlich der hierin vorgebrachten Forderungen auszulösen, bis kurz vor dem Einreichen der ursprünglichen Klage in diesem mehrere Bezirke umfassenden Rechtsstreit nicht bekannt. Die Kläger und die Gruppenmitglieder entdeckten und hätten die Existenz der hierin behaupteten Verschwörung durch Ausübung angemessener Sorgfalt nicht bis frühestens am 29. September 2011 entdecken können, dem Datum, an dem das DOJ bekannt gab, dass die Beklagte Furukawa Electric sich bereit erklärt hatte, sich ihrer Rolle bei der hierin behaupteten kriminellen Preisabsprache und Angebotsabsprache schuldig zu bekennen.

205.     Die Kläger und die Gruppenmitglieder sind Verbraucher, die Fahrzeuge kauften oder leasten oder Fahrzeug-Kabelsysteme kauften, um beschädigte oder defekte Fahrzeug-Kabelsysteme in ihren Fahrzeugen zu ersetzen oder zu reparieren. Sie hatten keinen direkten Kontakt oder Umgang mit irgend einer der Beklagten in dem vorliegenden Fall und hatten keine Mittel, durch die sie die in dieser Klageschrift beschriebene Absprache und Verschwörung vor der oben erwähnten Bekanntgabe des DOJ vom 29. September 2011 hätten aufdecken können.

206.     Den Klägern und den Gruppenmitgliedern standen vor der Bekanntgabe des DOJ vom 29. September 2011 keine öffentlich zugänglichen Informationen zur Verfügung, die hinlängliche Informationen boten, um nahezulegen, dass eine der Beklagten in eine kriminelle Verschwörung zur Absprache von Preisen und Angeboten für Fahrzeug-Kabelsysteme verwickelt war. Die Kläger und die Gruppenmitglieder hatten keine Mittel, um Fakten oder Informationen bezüglich irgend welcher Aspekte der

Beziehungen der Beklagten zu Fahrzeugherstellern (OEMs) oder anderen Direktkäufern in Erfahrung zu bringen, geschweige denn die Tatsache, dass sie die hierin zur Last gelegte Absprache und Verschwörung begangen hatten.

207.   Aus diesen Gründen hat die Verjährungsfrist in Bezug auf die Forderungen der Kläger und der Klägergruppen nicht begonnen und ist in Bezug auf die von den Klägern und Gruppenmitgliedern in dieser Klageschrift vorgebrachten Forderungen gehemmt worden.

**B.      Die Verjährung wurde durch betrügerisches Verschweigen gehemmt**

208.   Alternativ dazu hemmte die Anwendung der Doktrin des betrügerischen Verschweigens die Verjährung der hierin von den Klägern und den Klägergruppen geltend gemachten Forderungen. Den Klägern und den Gruppenmitgliedern war die Existenz der hierin behaupteten Verschwörung und gesetzwidrigen Absprache bis frühestens zum 29. September 2011, dem Datum, an dem das DOJ bekannt gab, dass die Beklagte Furukawa Electric sich bereit erklärt hatte, sich ihrer Rolle bei der hierin behaupteten kriminellen Preisabsprache und Angebotsabsprache schuldig zu bekennen, nicht bekannt und sie hätte ihnen auch nicht bekannt sein können.

209.   Vor diesem Zeitpunkt war den Klägern und den Gruppenmitgliedern das rechtswidrige Verhalten der Beklagten nicht bekannt und sie wussten vor diesem Zeitpunkt nicht, dass sie während der Gruppenklagefrist in den gesamten Vereinigten Staaten weit über dem wettbewerbsfähigen Stand liegende Preise für Fahrzeug-Kabelsysteme zahlten. Den Klägern und den Gruppenmitgliedern wurden zu keiner Zeit tatsächliche oder gefolgerte Informationen zur Verfügung gestellt, die den Klägern gegenüber auch nur angedeutet hätten, dass ihnen durch das gesetzwidrige Verhalten der Beklagten Schaden entstand.

210.   Die hierin behaupteten, von den Beklagten aktiv begangenen Handlungen, einschließlich Handlungen zur Förderung der Verschwörung, wurden arglistig verschwiegen und auf eine Weise ausgeführt, die sich der Erkennung entzog.

211.   Die wettbewerbswidrige Verschwörung und gesetzwidrige Absprachen der

Beklagten waren ihrer Beschaffenheit nach inhärent zur Verschleierung ausgelegt. Fahrzeug-Kabelsysteme entziehen sich nicht der Regelung durch die Kartellgesetze und somit betrachteten die Kläger und die Mitglieder der Klägergruppen diese gerechtfertigterweise als wettbewerbsorientierte Branche. Die Beklagten trafen sich und kommunizierten heimlich und vereinbarten, die Umstände ihres geheimen Verhaltens vor einer Aufdeckung durch ein Mitglied der Öffentlichkeit oder durch die OEMs und andere Direktkäufer, mit denen sie Geschäfte abwickelten, zu schützen.

212.    So bezichtigte das DOJ zum Beispiel die Beklagten Fujikura Ltd., Furukawa Electric, G.S. Electech, Inc. und Yazaki Corporation neben anderen gesetzwidrigen Handlungen „der Anwendung von Mitteln zur Geheimhaltung ihres Verhaltens, einschließlich jedoch nicht beschränkt auf die Verwendung von Codenamen und Zusammenkünften in Privathäusern oder an entlegenen Orten". Diese beklagten Unternehmen haben sich mittlerweile der gegen sie vom DOJ erhobenen Anschuldigungen schuldig bekannt.

213.    Das DOJ hat außerdem einzelne leitende Angestellte bestimmter Beklagter angeschuldigt, Codenamen zu verwenden und an geheimen, der Verschwörung dienenden Treffen teilzunehmen, um die Verschwörung der Beklagten vor der Öffentlichkeit und den Wettbewerbsbehörden geheim zu halten.  Bis dato haben sich Junichi Funo von Furukawa und Tsuneaki Hanamura, Ryoji Kawai, Shigeru Ogawa und Hisamitsu Takada von Yazaki Corporation allesamt der vom DOJ gegen sie erhobenen Anschuldigungen schuldig bekannt. Dementsprechend hätte eine vernünftig handelnde Person unter diesen Umständen keinen Grund zu Nachforschungen hinsichtlich der Rechtmäßigkeit der Preise der Beklagten für Fahrzeug-Kabelsysteme gesehen.

214.    Es war den Klägern und den Gruppenmitgliedern auf Grund der von den Beklagten und ihren Mitverschwörern zur Vermeidung der Aufdeckung und zum arglistigen Verheimlichen ihres Verhaltens eingesetzten betrügerischen Praktiken und Verschweigungstechniken  nicht möglich gewesen, die angebliche Absprache bzw. die angebliche Verschwörung zu einem früheren Zeitpunkt durch die Ausübung angemessener Sorgfalt zu entdecken.

215.    Während der gesamten Dauer der Verschwörung  trafen sich die Beklagten und kommunizierten heimlich, um ihre Verschwörung vor der Öffentlichkeit zu verheimlichen und deren Aufdeckung zu vermeiden. Außer den von ihnen zur Förderung der Verschwörung begangenen Handlungen, wie unter anderem die Absprache von Angeboten, betrieben die Beklagten heimliche Aktivitäten wie die Verwendung von Codenamen und Zusammenkünfte in Privathäusern oder an entlegenen Orten. Die genauen Daten und Zeiten dieser Treffen sind den Beklagten bekannt, einschließlich denjenigen Beklagten und Führungskräften der Beklagten, die sich vor diesem Gericht der strafbaren Verstöße gegen das Sherman-Kartellgesetz schuldig bekannt haben. Diese Beklagten haben den Klägern oder den Mitgliedern der Klägergruppen keinerlei Unterlagen und Informationen über diese zugegebenen Handlungen zur Verschleierung bereit gestellt.

216.    Da die angebliche Verschwörung sowohl ihrer Art nach verschleiert war als auch aktiv von den Beklagten und ihren Mitverschwörern verheimlicht wurde, war den Klägern und den Gruppenmitgliedern die angebliche Verschwörung oder irgend welche Umstände oder Informationen, die eine nach vernünftigen Maßstäben umsichtige Person dazu veranlasst hätten, Nachforschungen zur Existenz einer Verschwörung anzustellen, bis frühestens zum 29. September 2011, dem Datum, an dem das DOJ bekannt gab, dass die Beklagte Furukawa Electric sich bereit erklärt hatte, sich ihrer Rolle bei der hierin behaupteten kriminellen Preisabsprache und Angebotsabsprache schuldig zu bekennen, nicht bekannt.

217.    Aus diesen Gründen wurde die für die von den Klägern und den Gruppen in dieser Klage vorgebrachten Forderungen geltende Verjährung gehemmt und begann erst am 29. September 2011.

**ERSTE FORDERUNG VON RECHTSMITTELN**
**Verstoß gegen Paragraph 1 des Sherman-Kartellgesetzes**
**(für die Kläger und die landesweite Gruppe)**

218.    Die Kläger nehmen durch Bezugnahme die Behauptungen in den vorstehenden Absätzen als Bestandteil auf.

52

219.     Die Beklagten und nicht namentlich genannte Verschwörer gingen einen Vertrag, ein Zusammenwirken bzw. eine Verschwörung bei unzulässiger Wettbewerbsbeschränkung unter Verstoß gegen Para. 1 des Sherman-Act (15 U.S.C. § 1) ein und beteiligten sich an dieser.

220.     Die von jeder einzelnen Beklagten als Teil und zur Förderung ihres Vertrags, Zusammenwirkens bzw. ihrer Verschwörung begangenen Handlungen wurden von ihren leitenden Angestellten, Handlungsbeauftragten, Mitarbeitern oder Vertretern genehmigt, angeordnet oder ausgeführt, während sie sich aktiv mit der Wahrnehmung der Angelegenheiten der Beklagten befassten.

221.     Mindestens seit Januar 2000 und bis einschließlich zur Einreichung dieser Klage, wobei die exakten Daten den Klägern nicht bekannt sind, gingen die Beklagten und ihre Mitverschwörer eine fortlaufende Absprache, Vereinbarung und Verschwörung unter Wettbewerbsbeschränkung zur künstlichen Absprache, Anhebung, Stabilisierung und Kontrolle der Preise für Fahrzeug-Kabelsysteme ein und schufen damit wettbewerbsfeindliche Auswirkungen.

222.     Die wettbewerbsfeindlichen Handlungen richteten sich vorsätzlich gegen den Fahrzeug-Kabelsystemmarkt der Vereinigten Staaten und hatten eine erhebliche und vorhersehbare Auswirkung auf den zwischenstaatlichen Handel, da die Preise für Fahrzeug-Kabelsysteme in den gesamten Vereinigten Staaten angehoben und abgesprochen wurden.

223.     Die verschwörerischen Handlungen und das Zusammenwirken haben eine unzulässige Beschränkung des Fahrzeug-Kabelsystemmarktes verursacht.

224.     Infolge des rechtswidrigen Verhaltens der Beklagten wurden die Kläger und andere ähnlich gestellte indirekte Käufer in der landesweiten Gruppe, die Fahrzeug-Kabelsysteme gekauft haben, geschädigt, da sie gezwungen wurden, überhöhte, weit über dem wettbewerbsfähigen Stand liegende Preise für Fahrzeug-Kabelsysteme zu zahlen.

225.     Durch das Ausarbeiten und Ausführen der angeblichen rechtswidrigen

Absprache, Vereinbarung und Verschwörung begingen die Beklagten und ihre Mitverschwörer die Handlungen, zu denen sie sich zusammengeschlossen und verschworen hatten, einschließlich u.a. jedoch nicht beschränkt auf die hierin erläuterten Handlungen, Praktiken und Verhaltensweisen.

226.   Die Verschwörung der Beklagten hatte unter anderem folgende Auswirkungen:

(a)   Der Preiswettbewerb auf dem Markt für Fahrzeug-Kabelsysteme in den Vereinigten Staaten wurde beschränkt, unterdrückt und/oder eliminiert;

(b)   Die Preise für von den Beklagten und ihren Mitverschwörern verkaufte Fahrzeug-Kabelsysteme wurden abgesprochen, angehoben, aufrecht erhalten oder auf künstlich überhöhtem, nicht wettbewerbsfähigem Niveau in den gesamten Vereinigten Staaten stabilisiert and

(c)   Die Kläger und Mitglieder der landesweiten Gruppe, die Fahrzeug-Kabelsysteme indirekt von den Beklagten und ihren Mitverschwörern kauften, wurden um die Vorteile eines ungehinderten und offenen Wettbewerbs gebracht.

227.   Die Kläger und Mitglieder der landesweiten Gruppe wurden in ihrem Geschäft und Eigentum geschädigt und werden weiterhin geschädigt, indem sie mehr für Fahrzeug-Kabelsysteme zahlen, die indirekt von den Beklagten und ihren Mitverschwörern gekauft wurden, als sie ohne Vorhandensein der Verschwörung gezahlt hätten und ohne diese zahlen würden.

228.   Der angebliche Vertrag, das Zusammenwirken bzw. die Verschwörung stellt *per se* einen Verstoß gegen die bundesstaatlichen Kartellgesetze dar.

229.   Die Kläger und Mitglieder der landesweiten Gruppe haben Anspruch auf eine Unterlassungsverfügung gegen die Beklagten zur Verhinderung und zum Verbot der hierin behaupteten Verstöße.

**ZWEITE FORDERUNG VON RECHTSMITTELN**
**Verstoß gegen die staatlichen Kartellstatuten**
**(für die Kläger und die Schadensersatzgruppe)**

230.    Die Kläger nehmen durch Bezugnahme die Behauptungen in den vorstehenden Absätzen als Bestandteil auf.

231.    Bereits seit Januar 2000 bis mindestens zur Einreichung dieser Klage gingen die Beklagten und ihre Mitverschwörer eine fortlaufende Absprache, Vereinbarung und Verschwörung in Bezug auf den Verkauf von Fahrzeug-Kabelsystemen unter unzulässiger Beschränkung des Handels und Handelsverkehrs und unter Verstoß gegen die nachstehend aufgeführten diversen staatlichen Kartell- und anderen Gesetze ein.

232.    Der Vertrag, das Zusammenwirken bzw. die Verschwörung bestand aus einer Absprache unter den Beklagten und ihren Mitverschwörern zur Festsetzung, Anhebung, Überhöhung, Stabilisierung und/oder Aufrechterhaltung von künstlich über den wettbewerbsfähigen Stand angehobenen Preisen für Fahrzeug-Kabelsysteme und zur Aufteilung von Kunden für Fahrzeug-Kabelsysteme in den gesamten Vereinigten Staaten.

233.    Durch das Ausarbeiten und Ausführen dieser Verschwörung begingen die Beklagten und ihre Mitverschwörer Handlungen zur Förderung des Zusammenwirkens und der Verschwörung einschließlich:

(a)    Teilnahme an Meetings und Gesprächen unter einander in den Vereinigten Staaten und andernorts, bei denen sie vereinbarten, die Preise für Fahrzeug-Kabelsysteme auf einem bestimmten Stand festzusetzen und anderweitig die von den Klägern und Mitgliedern der Schadensersatzgruppe für in den Vereinigten Staaten verkaufte Fahrzeug-Kabelsysteme effektiv gezahlten Preise abzusprechen, zu erhöhen, aufzublähen, aufrecht zu erhalten und zu stabilisieren;

(b)    Kunden und Märkte für Fahrzeug-Kabelsysteme in den Vereinigten Staaten zur Förderung ihrer Absprachen aufzuteilen und

(c)    Teilnahme an Meetings und Gesprächen unter einander in den Vereinigten Staaten und andernorts zur Umsetzung, Einhaltung und Überwachung der von

ihnen erreichten rechtswidrigen Absprachen.

234. Die Beklagten und ihre Mitverschwörer begingen die oben beschriebenen Handlungen zur Ausführung ihrer rechtswidrigen Absprachen zur Festsetzung, Aufrechterhaltung, Aufblähung oder Stabilisierung von Preisen und zur Aufteilung von Kunden für Fahrzeug-Kabelsysteme.

235. Die hierin beschriebenen wettbewerbsfeindlichen Handlungen der Beklagten erfolgten wissentlich, vorsätzlich und stellen Verstöße bzw. offenkundige Verstöße gegen die folgenden staatlichen Kartellgesetze dar.

236. Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Arizona Revised Statutes, §§ 44-1401 *ff.* ein.

(a) Die Absprachen bzw. Verschwörungen der Beklagten hatten folgende Auswirkungen: (1) Der Wettbewerb bei den Preisen für Fahrzeug-Kabelsysteme wurde beschränkt, unterdrückt und in ganz Arizona eliminiert; (2) die Preise für Fahrzeug-Kabelsysteme wurden angehoben und in ganz Arizona auf einem künstlich überhöhten Stand festgelegt, aufrecht erhalten und stabilisiert; (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und ungehinderten Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten auf einem über dem wettbewerbsfähigen Niveau liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b) Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Arizona.

(c) Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d) Durch das oben Angeführte gingen die Beklagten Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen Ariz. Rev. Stat. §§ 44-1401 *ff.* ein.

Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß Ariz. Rev. Stat. §§ 44-1401 *ff.* verfügbaren Formen von Rechtsmitteln.

237.   Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen den California Business and Professions Code, §§ 16700 *ff.* ein.

(a)   Während der Gruppenklagefrist gingen die Beklagten und ihre Mitverschwörer eine anhaltende gesetzwidrige Vereinbarung zur Beschränkung des oben beschriebenen Handels ein und hielten diese unter Verstoß gegen Para. 16720 des California  Business und Professions Code aufrecht. Jede einzelne Beklagte handelte unter Verstoß gegen Para. 16720, um die Preise für Fahrzeug-Kabelsysteme festzusetzen, anzuheben, zu stabilisieren und aufrecht zu erhalten und die Märkte für diese auf einem über dem wettbewerbsfähigen Niveau liegenden Stand aufzuteilen.

(b)   Die oben genannten Verstöße gegen Para. 16720 des California Business und Professions Code bestanden ohne Einschränkung in einer gesetzwidrigen Vereinbarung  und verabredeten Praktiken unter den Beklagten und ihren Mitverschwörern, deren wichtigste Bedingungen die Festlegung, Anhebung und Stabilisierung der Preise von Fahrzeug-Kabelsystemen und die Aufteilung von Märkten für diese waren.

(c)   Die Beklagten und ihre Mitverschwörer haben diese Dinge, die sie untereinander absprachen, getan, um die gesetzwidrige Vereinbarung zu schaffen und umzusetzen, einschließlich, jedoch nicht beschränkt auf die oben beschriebenen Handlungen, Praktiken und Verhaltensweise sowie Folgendes: (1) Festlegung, Anhebung, Stabilisierung und Stützung der Preise von Fahrzeug-Kabelsystemen und (2) Aufteilung der Produktion von Fahrzeug-Kabelsystemen untereinander.

(d)   Die hierin behauptete Beschränkung des Wettbewerbs und Verschwörung hat unter anderem die folgenden Wirkungen gehabt: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde im Bundesstaat Kalifornien  beschränkt, unterdrückt und/oder eliminiert; (2) Die Preise für die von den

Beklagten und ihren Mitverschwörern verkauften Fahrzeug-Kabelsysteme wurden im Bundesstaat Kalifornien und in den gesamten Vereinigten Staaten festgelegt, angehoben, stabilisiert und auf einem künstlich überhöhten, nicht wettbewerbsfähigen Stand gestützt und (3) diejenigen Personen, die Fahrzeug-Kabelsysteme direkt oder indirekt von den Beklagten und ihren Mitverschwörern gekauft haben, wurden der Vorteile des freien und ungehinderten Wettbewerbs beraubt.

(e)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum in sofern geschädigt worden, als sie für Fahrzeug-Kabelsysteme mehr bezahlt haben, als sie ansonsten ohne das rechtswidrige Verhalten der Beklagten bezahlt hätten. In Folge des Verstoßes der Beklagten gegen Para. 16720 des California Business und Professions Code fordern die Kläger und Mitglieder der Schadensersatzgruppe Schadensersatz in dreifacher Höhe und ihre Prozesskosten einschließlich angemessener Anwaltskosten gemäß Para. 16750(a) des California Business und Professions Code.

238.   Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen den District of Columbia Code Annotated §§ 28-4501 *ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde im gesamten Bundesdistrikt Columbia beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden im gesamten Bundesdistrikt Columbia angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten, nicht wettbewerbsfähigen Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel im Bundesdistrikt Columbia.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen District of Columbia Code Ann. §§ 28-4501 *ff.* eingegangen.  Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß District of Columbia Code Ann. §§ 28-4501 *ff.* verfügbaren Formen von Rechtsmitteln.

239.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen den Iowa Code §§ 553.1 *ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Iowa  beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Iowa angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Wirkung auf den Handel in Iowa.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen den Iowa Code §§ 553.1 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß dem Iowa Code §§ 553.1 *ff.* verfügbaren Formen von

Rechtsmitteln.

240.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Kansas Statutes Annotated, §§ 50-101 *ff.* ein.

(a)    Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Kansas  beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Kansas angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)    Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Kansas.

(c)    Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)    Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Kansas Stat. Ann. §§ 50-101 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Kansas Stat. Ann. §§ 50-101 *ff.*  verfügbaren Formen von Rechtsmitteln.

241.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101 *ff.* ein.

(a)    Die Beschränkung des Wettbewerbs und die Verschwörungen der

Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Maine beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Maine angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Wirkung auf den Handel in Maine.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Maine Rev. Stat. Ann. 10, §§ 1101 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Maine Rev. Stat. Ann. 10, §§ 1101 *ff.* verfügbaren Rechtsmittel.

242.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen das Kartellgesetz des Bundesstaates Massachusetts Mass. Gen. Laws. Ann. 93 §§ 1 *ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Massachusetts beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Massachusetts angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der

Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Massachusetts.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Mass. Gen. Laws. Ann. 93 §§ 1 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Mass. Gen. Laws. Ann. 93 §§ 1 *ff.* verfügbaren Rechtsmittel.

243.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Michigan Compiled Laws Annotated §§ 445.771 *ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Michigan beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Michigan angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Michigan.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens

62

der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)      Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Michigan Comp. Laws. Ann. §§ 445.771 *ff*.  eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Michigan Comp. Laws. Ann. §§ 445.771 *ff*.  verfügbaren Rechtsmittel.

244.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Minnesota Annotated Statutes §§ 325D.49 *ff*. ein.

(a)      Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Minnesota beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Minnesota angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)      Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Minnesota.

(c)      Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)      Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Minnesota Stat. §§ 325D.49 *ff*.  eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Minnesota Stat. §§ 325D.49 *ff*.  verfügbaren

Rechtsmittel.

245.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen den Mississippi Code Annotated §§ 75-21-1 *ff.* ein.

(a)    Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Mississippi beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Mississippi angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)    Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Mississippi.

(c)    Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)    Durch das Obenstehende gingen die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen Mississippi Code Ann. § 75-21 *ff.* ein.  Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß Mississippi Code Ann. § 75-21 *ff.*  verfügbaren Rechtsmittel.

246.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Nebraska Revised Statutes §§ 59-801 *ff.* ein.

(a)    Die Beschränkung des Wettbewerbs und die Verschwörungen der

64

Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Nebraska beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Nebraska angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

   (b)  Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Nebraska.

   (c)  Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

   (d)  Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Nebraska Revised Statutes §§ 59-801 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Nebraska Revised Statutes §§ 59-801 *ff.* verfügbaren Rechtsmittel.

247.  Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Nevada Revised Statutes Annotated §§ 598A.010 *ff.* ein.

   (a)  Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Nevada beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Nevada angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem

65

wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Nevada.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Nevada Rev. Stat. Ann. §§ 598A *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Nevada Rev. Stat. Ann. §§ 598A *ff.*  verfügbaren Rechtsmittel.

248.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die New Hampshire Revised Statutes §§ 356.1 *ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz New Hampshire beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz New Hampshire angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegenden, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in New Hampshire.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens

der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)      Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die New Hampshire Revised Statutes §§ 356.1 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den New Hampshire Revised Statutes §§ 356.1 *ff.* verfügbaren Rechtsmittel.

249.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die New Mexico Statutes Annotated §§ 57-1-1 *ff.* ein.

(a)      Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz New Mexico beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz New Mexico angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)      Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in New Mexico.

(c)      Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)      Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die New Mexico Statutes Annotated §§ 57-1-1 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den New Mexico Statutes Annotated §§ 57-1-1 *ff.*

67

verfügbaren Rechtsmittel.

250.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die New York General Business Laws §§ 340 *ff.* ein.

(a)    Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz New York beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz New York angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme, wenn sie mit Fahrzeug-Kabelsystemen ausgestattete Fahrzeuge oder Produkte kauften, die ansonsten von minderwertiger Qualität waren, als ohne die illegalen Handlungen der Verschwörer der Fall gewesen wäre oder wenn sie Produkte nicht kaufen konnten, die sie ohne das rechtswidrige Verhalten gekauft hätten.

(b)    Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in New York.

(c)    Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)    Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen das New York Donnelly Act §§ 340 *ff.* eingegangen. Das oben geschilderte Verhalten ist als solches ein Verstoß gegen dieses Gesetz. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß dem New York Gen. Bus. Law §§ 340 *ff.* verfügbaren Rechtsmittel.

251.    Die Beklagten gingen eine widerrechtliche Absprache zur

Wettbewerbsbeschränkung unter Verstoß gegen die North Carolina General Statutes §§ 75-1 *ff.* ein.

(a) Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz North Carolina beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz North Carolina angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b) Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in North Carolina.

(c) Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d) Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die North Carolina Gen. Stat. §§ 75-1 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den North Carolina Gen. Stat. §§ 75-1 *ff.* verfügbaren Rechtsmittel.

252. Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen den North Dakota Century Code §§ 51-08.1-01 *ff.* ein.

(a) Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz North Dakota beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz North Dakota

angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)   Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in North Dakota.

(c)   Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)   Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen den North Dakota Cent. Code §§ 51-08.1-01 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß dem North Dakota Cent. Code §§ 51-08.1-01 *ff.* verfügbaren Rechtsmittel.

253.   Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Oregon Revised Statutes §§ 646.705 *ff.* ein.

(a)   Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Oregon beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Oregon angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)   Während der Gruppenklagefrist hatte das rechtswidrige Verhalten

70

der Beklagten eine wesentliche Auswirkung auf den Handel in Oregon.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Oregon Revised Statutes §§ 646.705 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Oregon Revised Statutes §§ 646.705 *ff.* verfügbaren Rechtsmittel.

254.     Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die South Dakota Codified Laws §§ 37-1-3.1 *ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz South Dakota beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz South Dakota angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in South Dakota.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche

71

Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die South Dakota Codified Laws §§ 37-1 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den South Dakota Codified Laws §§ 37-1 *ff.* verfügbaren Rechtsmittel.

255.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen den Tennessee Code Annotated §§ 47-25-101 *ff.* ein.

(a)    Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Tennessee beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Tennessee angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)    Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Tennessee.

(c)    Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)    Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen den Tennessee Code Ann. §§ 47-25-101 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß dem Tennessee Code Ann. §§ 47-25-101 *ff.* verfügbaren Rechtsmittel.

256.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen den Utah Code Annotated §§ 76-10-911

*ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Utah beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Utah angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Utah.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen den Utah Code Annotated §§ 76-10-911 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß dem Utah Code Annotated §§ 76-10-911 *ff.* verfügbaren Rechtsmittel.

257.   Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Vermont Stat. Ann. 9 §§ 2453 *ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Vermont beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Vermont angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs

beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)      Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Vermont.

(c)      Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)      Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Vermont Stat. Ann. 9 §§ 2453  *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Vermont Stat. Ann. 9 §§ 2453 *ff.* verfügbaren Rechtsmittel.

258.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen den West Virginia Code §§ 47-18-1 *ff.* ein.

(a)      Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz West Virginia beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz West Virginia angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)      Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in West Virginia.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen West Virginia §§ 47-18-1 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß West Virginia §§ 47-18-1 *ff.* verfügbaren Rechtsmittel.

259.    Die Beklagten gingen eine widerrechtliche Absprache zur Wettbewerbsbeschränkung unter Verstoß gegen die Wisconsin Statutes §§ 133.01 *ff.* ein.

(a)     Die Beschränkung des Wettbewerbs und die Verschwörungen der Beklagten hatten die folgenden Wirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Wisconsin beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Wisconsin angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Wisconsin.

(c)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)     Durch das Obenstehende sind die Beklagten widerrechtliche Absprachen zur Wettbewerbsbeschränkung unter Verstoß gegen die Wisconsin Stat. §§ 13301 *ff.* eingegangen. Dementsprechend fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß den Wisconsin Stat. §§ 13301 *ff.* verfügbaren Rechtsmittel.

75

260.    Die Kläger und die Mitglieder der Schadensersatzgruppe in jedem einzelnen oben angeführten Bundesstaat haben Schaden an ihrem Geschäft und Eigentum durch den gesetzwidrigen Zusammenschluss, Vertrag, die Verschwörung und Absprache der Beklagten erlitten. Die Kläger und Mitglieder der Schadensersatzgruppe haben mehr für Fahrzeug-Kabelsysteme gezahlt als sie ansonsten ohne das gesetzwidrige Verhalten der Beklagten bezahlt hätten. Dieser Schaden ist von der Art, die die Kartellgesetze der obigen Bundesstaaten verhindern sollen und ergibt sich aus der rechtswidrigen Beschaffenheit des Verhaltens der Beklagten.

261.    Darüber hinaus haben die Beklagten in erheblichem Ausmaß von der vorstehend erwähnten Verschwörung profitiert. Die Gewinne der Beklagten stammten aus ihrem wettbewerbswidrigem Verhalten auf Kosten und zum Schaden der Kläger und der Mitglieder der Schadensersatzgruppe.

262.    Daher fordern die Kläger und die Mitglieder der Schadensersatzgruppe in den oben jeweils angeführten Gerichtsbezirken Schadensersatz (einschließlich gesetzlichen Schadensersatz, wo dies Anwendung findet), der verdreifacht oder anderweitig, wie nach den Kartellgesetzen des jeweiligen Gerichtsbezirks zulässig, erhöht werden soll sowie Prozesskosten einschließlich angemessener Anwaltskosten, soweit dies nach den obigen staatlichen Gesetzen zulässig ist.

### DRITTE FORDERUNG VON RECHTSMITTELN
**Verstoß gegen die Verbraucherschutzgesetze**
**(für die Kläger und die Schadensersatzgruppe)**

263.    Die Kläger nehmen jede einzelne Behauptungen in den vorstehenden Absätzen dieser Klageschrift als Bestandteil auf und führen diese erneut an, als wäre sie hierin vollständig angeführt.

264.    Die Beklagten praktizierten unlauteren Wettbewerb oder unlautere, sittenwidrige oder betrügerische Praktiken unter Verstoß gegen die unten angeführten einzelstaatlichen Verbraucherschutzgesetze oder Gesetze über unlauteren Wettbewerb.

265.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen

unlautere, sittenwidrige oder betrügerische Handlungen unter Verstoß gegen den California Business and Professions Code § 17200 *ff.*

    (a)    Während der Gruppenklagefrist begingen die Beklagten und begehen auch weiter Handlungen unlauteren Wettbewerbs im Sinne der Definition von Para. 17200 *ff.* des California Business and Professions Code, indem sie die oben beschriebenen Handlungen und Praktiken begingen.

    (b)    Diese Forderung wird gemäß Para. 17203 und 17204 des California Business and Professions Code erhoben, um von den Beklagten eine Wiedergutmachung für Handlungen zu erlangen, die wie hierin vorgebracht gegen Para. 17200 des California Business and Professions Code verstießen, allgemein als das Gesetz über unlauteren Wettbewerb bekannt.

    (c)    Das hierin behauptete Verhalten der Beklagten verstieß gegen Para. 17200.  Die hierin behaupteten Handlungen, Unterlassungen, Falschdarstellungen, Praktiken und Nichtoffenlegungen der Beklagten stellten ein allgemeines, fortwährendes und anhaltendes Verhalten unlauteren Wettbewerbs durch unlautere, ungesetzliche und/oder betrügerische geschäftliche Handlungen oder Praktiken im Sinne der Bedeutung des California Business and Professions Code, Para. 17200 ff. dar, einschließlich aber nicht beschränkt auf Folgendes: (1) die Verstöße gegen Para. 1 des Sherman Act, wie oben angegeben: (2) die Verstöße gegen Para. 16720 ff. des California Business and Professions Code wie oben angegeben.

    (d)    Die oben beschriebenen Handlungen, Unterlassungen, Falschdarstellungen, Praktiken und Nichtoffenlegungen der Beklagten sind unabhängig davon, ob sie unter Verstoß gegen Para. 16720 ff. des California Business and Professions Code und konzertiert oder als einzelne Handlungen begangen wurden, anderweitig unlauter, sittenwidrig, gesetzwidrig oder betrügerisch.

    (e)    Die Handlungen oder Praktiken der Beklagten sind unlauter gegenüber Verbrauchern von Fahrzeug-Kabelsystemen (oder Fahrzeugen, die mit diesen ausgestattet sind) im Bundesstaat Kalifornien im Sinne der Bedeutung von Para. 17200 des

California Business and Professions Code und

(f)     die Handlungen und Praktiken der Beklagten sind im Sinne der Bedeutung von Para. 17200 des California Business and Professions Code betrügerisch.

(g)     Die Kläger und die Mitglieder der Schadensersatzgruppe haben Anspruch auf vollständige Rückerstattung und/oder Herausgabe aller Erträge, Einnahmen, Gewinne, Vergütung und Vorteile, die die Beklagten ggf. in Folge dieser geschäftlichen Handlungen und Praktiken erlangt haben.

(h)     Das hierin behauptete rechtswidrige Verhalten wird weiter fortgesetzt und es gibt keinen Hinweis darauf, dass die Beklagten diese Aktivität nicht in Zukunft fortsetzen werden.

(i)     Die oben beschriebenen gesetzwidrigen und unlauteren Geschäftspraktiken jeder einzelnen Beklagten haben dazu geführt und führen weiter dazu, dass die Kläger und die Mitglieder der Schadensersatzgruppe  über dem wettbewerbsfähigen Niveau liegende und künstlich überhöhte Preise für Fahrzeug-Kabelsysteme (oder mit diesen ausgestattete Fahrzeuge) zahlen. Die Kläger und die Mitglieder der Schadensersatzgruppe  haben tatsächlichen Schaden erlitten und in Folge dieses unlauteren Wettbewerbs Geld und Eigentum verloren.

(j)     Das in dieser Klageschrift behauptete Verhalten der Beklagten verstößt gegen Para. 17200 des California Business and Professions Code.

(k)     Wie in dieser Klageschrift behauptet, haben die Beklagten und ihre Mitverschwörer sich in Folge ihres rechtswidrigen Verhaltens und durch den unlauteren Wettbewerb der Beklagten ungerechtfertigt bereichert. Die Kläger und die Mitglieder der Schadensersatzgruppe  haben daher gemäß dem California Business and Professions Code, Para. 17203 und 17204 Anspruch auf Rechtsmittel nach dem Billigkeitsrecht einschließlich Rückerstattung und Herausgabe aller Erträge, Einnahmen, Gewinne, Vergütung und Vorteile, die die Beklagten ggf. in Folge dieser geschäftlichen Handlungen und Praktiken erlangt haben.

78

266.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Handlungen unter Verstoß gegen den District of Columbia Code § 28-3901 *ff.*

(a)    Die Beklagten vereinbarten und begingen tatsächlich Handlungen zur Beschränkung des Wettbewerbs, indem sie die Preise, zu denen Fahrzeug-Kabelsysteme im Bundesdistrikt Columbia verkauft, vertrieben oder erworben wurden, beeinflussten, festsetzten,  kontrollierten und/oder auf einem künstlichen und/oder nicht wettbewerbsfähigen Stand aufrecht erhielten.

(b)    Das vorstehend beschriebene Verhalten stellt „gesetzwidrige Handelspraktiken" im Sinne der Bedeutung des D.C. Code § 28-3904 dar.

(c)    Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde im ganzen Bundesbezirk Columbia beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden im ganzen Bundesbezirk Columbia angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(d)    Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden. Die Beklagten haben unlauteren Wettbewerb oder unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen den District of Columbia Code § 28-3901 *ff* . begangen und dementsprechend fordern die Kläger und die Mitglieder der Schadensersatzgruppe alle gemäß diesem Gesetz verfügbaren Rechtsmittel.

267.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Praktiken oder Handlungen unter Verstoß

gegen das Gesetz gegen den betrügerischen und unlauteren Wettbewerb des Bundesstaates Florida „Deceptive and Unfair Trade Practices Act", Fla. Stat. §§ 501.201 *ff*.

    (a)    Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Florida beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Florida angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

    (b)    Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel und für die Verbraucher in Florida.

    (c)    Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

    (d)    Die Beklagten haben unlauteren Wettbewerb oder unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen die Florida Stat. § 501.201 *ff*. begangen und dementsprechend fordern die Kläger und die Mitglieder der Schadensersatzgruppe alle gemäß diesem Gesetz verfügbaren Rechtsmittel.

    268.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Praktiken oder Handlungen unter Verstoß gegen die Hawaii Revised Statutes Annotated §§ 480-1 *ff*.

    (a)    Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen: (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Hawaii beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Hawaii angehoben, festgelegt, aufrecht erhalten

und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)       Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel und für die Verbraucher in Hawaii.

(c)       Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)       Die Beklagten haben unlauteren Wettbewerb oder unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen die Hawaii Rev. Stat. § 480 *ff* . begangen und dementsprechend fordern die Kläger und die Mitglieder der Schadensersatzgruppe alle gemäß diesem Gesetz verfügbaren Rechtsmittel.

269.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Praktiken oder Handlungen unter Verstoß gegen die Mass. G.L. c. 93A, § 2.

(a)       Die Beklagten befassten sich mit Handel gemäß der Definition der G.L. c. 93A.

(b)       Die Beklagten vereinbarten und begingen tatsächlich Handlungen zur Beschränkung des Wettbewerbs und Handels in einem Markt, der Massachusetts mit einschließt, indem sie die Preise, zu denen Fahrzeug-Kabelsysteme in Massachusetts verkauft, vertrieben oder erworben wurden, beeinflussten, festsetzten, kontrollierten und/oder auf einem künstlichen und/oder nicht wettbewerbsfähigen Stand aufrecht erhielten und Bemühungen unternahmen, ihre Absprachen vor den Klägern und den Mitgliedern der Schadensersatzgruppe zu verheimlichen.

(c)     Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Massachusetts beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Massachusetts angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(d)     Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(e)     Bestimmten Beklagten wurde ein Forderungsschreiben gemäß G.L.c. 93A, § 9 zugestellt oder die Zustellung eines Forderungsschreibens war nach bestem Wissen und Gewissen nicht nötig, weil die Beklagte im Bundesstaat Massachusetts keinen Geschäftssitz unterhält bzw. keine Vermögenswerte im Bundesstaat Massachusetts hält. Seit der Zustellung dieser Forderungsschreiben sind mehr als dreißig Tage vergangen und keine Beklagte, der ein solches zugestellt wurde, hat ein angemessenes Angebot für einen Vergleich unterbreitet.

(f)     Durch das Obenstehende praktizierten die Beklagten unlauteren Wettbewerb und begingen unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen G.L.c. 93A, §2. Die Verstöße gegen Kapitel 93A seitens der Beklagten und ihrer Mitverschwörer wurden vorsätzlich begangen und berechtigen die Kläger und die Mitglieder der Schadensersatzgruppe zu Mehrfachschadensersatz.

270.     Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Praktiken oder Handlungen unter Verstoß gegen den Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *ff.*

(a)     Der Kläger aus Missouri und Mitglieder dieser

Schadensersatzgruppe kauften Fahrzeug-Kabelsysteme zum persönlichen Gebrauch, für die Familie oder den Haushalt.

(b)      Die Beklagten praktizierten das hierin beschriebene Verhalten im Zusammenhang mit dem Verkauf von Fahrzeug-Kabelsystemen beim Handel in einem Markt, der Missouri mit umfasst.

(c)      Die Beklagten vereinbarten und beeinflussten in der Tat, setzten fest, kontrollierten und/oder hielten die Preise, zu denen Fahrzeug-Kabelsysteme in Missouri verkauft, vertrieben oder erworben wurden, auf einem künstlichen und/oder nicht wettbewerbsfähigen Stand aufrecht, wobei dieses Verhalten insofern unlautere Praktiken darstellte, als es unter den bundes- und einzelstaatlichen Gesetzen unzulässig war, gegen öffentliche Richtlinien verstieß, unethisch, unterdrückerisch und skrupellos war und den Klägern und Mitgliedern der Schadensersatzgruppe erheblichen Schaden zufügte.

(d)      Die Beklagten verschleierten, unterdrückten und unterließen die Offenlegung von wesentlichen Tatsachen gegenüber den Klägern und Mitgliedern der Schadensersatzgruppe in Bezug auf die gesetzwidrigen Aktivitäten und künstlich überhöhten Preise der Beklagten für Fahrzeug-Kabelsysteme. Die verschleierten, unterdrückten und ausgelassenen Tatsachen wären für die Kläger und Mitglieder der Schadensersatzgruppe wichtig gewesen, da sie die Kosten der von ihnen gekauften Fahrzeug-Kabelsysteme betrafen.

(e)      Die Beklagten machten falsche Angaben zu dem wirklichen Grund der Preisanhebungen und/oder der mangelnden Preissenkungen bei Fahrzeug-Kabelsystemen, indem sie öffentliche Erklärungen abgaben, die nicht den Tatsachen entsprachen.

(f)      Die Erklärungen und das Verhalten der Beklagten hinsichtlich des Preises von Fahrzeug-Kabelsystemen waren betrügerisch, da sie die Tendenz bzw. die Möglichkeit hatten, die Kläger und Mitglieder der Schadensersatzgruppe zu der irrtümlichen Annahme zu verleiten, dass sie Fahrzeug-Kabelsysteme zu Preisen kauften, die auf einem freien und fairen Markt festgesetzt worden waren.

(g)     Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Missouri beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Missouri angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(h)     Die vorstehenden Handlungen und Praktiken stellten gesetzwidrige Praktiken unter Verstoß gegen den Missouri Merchandising Practices Act dar.

(i)     Als direkte und unmittelbare Folge der oben beschriebenen gesetzwidrigen Praktiken erlitten die Kläger und Mitglieder der Schadensersatzgruppe einen nachweislichen Verlust von Geld oder Besitztum.

(j)     Dementsprechend fordern die Kläger und die Mitglieder der Schadensersatzgruppe alle gemäß dem Missouri Merchandising Practices Act und insbesondere Mo. Rev. Stat. §  407.020 verfügbaren Rechtsmittel. Dieser Paragraph untersagt „die Handlung, Verwendung oder den Einsatz jeglichen Betrugs, falscher Vorspiegelung, falscher Versprechen, Falschdarstellungen, unlauterer Praktiken oder die Verschleierung, Unterdrückung oder Auslassung von wesentlichen Tatsachen im Zusammenhang mit dem Verkauf oder der Bewerbung einer Ware im Handel...", was des Weiteren von den Gesetzesregelungen des Missouri Code of State, 15 CSR 60-7.010 ff., 15 CSR 60-8.010 ff. und 15 CSR 60-9.010 ff. sowie Mo. Rev. Stat. § 407.025 ausgelegt wird, die die vor diesem Gericht geforderten Rechtsmittel vorsehen.

271.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Handlungen oder Praktiken unter Verstoß gegen das Gesetz des Bundesstaates Montana gegen unlauteren Wettbewerb und das Verbraucherschutzgesetz von 1970, Mont. Code, §§ 30-14-103 *ff.* und §§ 30-14-201 *ff.*

(a)      Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Montana beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Montana angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4) die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(b)      Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel in Montana.

(c)      Als direkte und unmittelbare Folge des rechtswidrigen Verhaltens der Beklagten sind  die Kläger und Mitglieder der Schadensersatzgruppe in ihrem Geschäft und ihrem Eigentum geschädigt worden, und ihnen droht weiterer Schaden.

(d)      Die Beklagten haben unlauteren Wettbewerb oder unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen den Mont. Code §§ 30-14-103 *ff*. und §§ 30-14-201 *ff*. begangen und dementsprechend fordern die Kläger und die Mitglieder der Schadensersatzgruppe alle gemäß diesem Gesetz verfügbaren Rechtsmittel.

272.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Handlungen oder Praktiken unter Verstoß gegen die New Mexico Stat. § 57-12-1 *ff*.

(a)      Die Beklagten vereinbarten und begingen tatsächlich Handlungen zur Beschränkung des Wettbewerbs und Handels, indem sie die Preise, zu denen Fahrzeug-Kabelsysteme in New Mexico verkauft, vertrieben oder erworben wurden, beeinflussten, festsetzten,  kontrollierten und/oder auf einem künstlichen und/oder nicht wettbewerbsfähigen Stand aufrecht erhielten und Bemühungen unternahmen, ihre Absprachen vor den Klägern und den Mitgliedern der Schadensersatzgruppe zu

verheimlichen.

(b)     Das oben erwähnte Verhalten seitens der Beklagten stellte „sittenwidrige Handelspraktiken" unter Verstoß gegen die N.M.S.A. Stat. § 57-12-3 dar, da ein solches Verhalten unter anderem zu einer erheblichen Diskrepanz zwischen dem von den Klägern und Mitgliedern der Schadensersatzgruppe erhaltenen Wert und den von ihnen für Fahrzeug-Kabelsysteme gezahlten Preisen führte, wie in N.M.S.A. Stat. § 57-12-3E erläutert.

(c)     Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz New Mexico beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz New Mexico angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(d)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel und für die Verbraucher in New Mexico.

(e)     Als direkte und unmittelbare Folge der oben beschriebenen gesetzwidrigen Praktiken erlitten die Kläger und Mitglieder der Schadensersatzgruppe Schaden und ihnen droht weiterer Schaden.

(f)     Die Beklagten haben unlauteren Wettbewerb oder unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen die New Mexico Stat. § 57-12-1 *ff*. begangen und dementsprechend fordern die Kläger und die Mitglieder der Schadensersatzgruppe alle gemäß diesem Gesetz verfügbaren Rechtsmittel.

273.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Handlungen oder Praktiken unter Verstoß

gegen das N.Y. Gen.Bus. Law § 349 *ff*.

(a)     Die Beklagten vereinbarten und begingen tatsächlich Handlungen zur Beschränkung des Wettbewerbs und Handels, indem sie die Preise, zu denen Fahrzeug-Kabelsysteme in New York verkauft, vertrieben oder erworben wurden, beeinflussten, festsetzten,  kontrollierten und/oder auf einem künstlichen und/oder nicht wettbewerbsfähigen Stand aufrecht erhielten und Bemühungen unternahmen, ihre Absprachen vor den Klägern und den Mitgliedern der Schadensersatzgruppe zu verheimlichen.

(b)     Das hierin beschriebene Verhalten der Beklagten stellt verbraucherorientierte betrügerische Handlungen oder Praktiken im Sinne der Bedeutung des N.Y.Gen.Bus. Law § 349 dar, durch das Verbraucher geschädigt wurden und das eine weitreichende Auswirkung auf die Öffentlichkeit im Allgemeinen hatte und das Interesse der Öffentlichkeit im Bundesstaat New York auf einem ehrlichen Markt schädigte, auf dem wirtschaftliche Aktivitäten auf wettbewerbsorientierte Weise abgewickelt werden.

(c)     Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz New York beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz New York angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(d)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel und für die Verbraucher in New York.

(e)     Während der Gruppenklagefrist stellte jede einzelne hierin genannte Beklagte direkt oder indirekt und durch verbundene Gesellschaften, die unter ihrem

beherrschenden Einfluss standen und von ihnen kontrolliert wurden, Fahrzeug-Kabelsysteme in New York her, verkaufte und/oder vertrieb diese dort.

(f)     Die Kläger und die Mitglieder der Schadensersatzgruppe fordern alle gemäß N.Y. Gen.Bus. Law § 349 (h) verfügbaren Rechtsmittel.

274.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Handlungen oder Praktiken unter Verstoß gegen die North Carolina Gen. Stat. § 75-1-1 *ff.*

(a)     Die Beklagten vereinbarten und begingen tatsächlich Handlungen zur Beschränkung des Wettbewerbs und Handels, indem sie die Preise, zu denen Fahrzeug-Kabelsysteme in North Carolina verkauft, vertrieben oder erworben wurden, beeinflussten, festsetzten,  kontrollierten und/oder auf einem künstlichen und/oder nicht wettbewerbsfähigen Stand aufrecht erhielten und Bemühungen unternahmen, ihre Absprachen vor den Klägern und den Mitgliedern der Schadensersatzgruppe zu verheimlichen.

(b)     Das hierin beschriebene Verhalten der Beklagten stellt verbraucherorientierte betrügerische Handlungen oder Praktiken im Sinne der Bedeutung der Gesetze von North Carolina dar, durch das Verbraucher geschädigt wurden und das eine weitreichende Auswirkung auf die Öffentlichkeit im Allgemeinen hatte und das Interesse der Öffentlichkeit in North Carolina auf einem ehrlichen Markt schädigte, auf dem wirtschaftliche Aktivitäten auf wettbewerbsorientierte Weise abgewickelt werden.

(c)     Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz North Carolina beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz North Carolina angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert und (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für

Fahrzeug-Kabelsysteme.

(d)     Während der Gruppenklagefrist hatte das rechtswidrige Verhalten der Beklagten eine wesentliche Auswirkung auf den Handel und für die Verbraucher in North Carolina.

(e)     Während der Gruppenklagefrist stellte jede einzelne hierin genannte Beklagte direkt oder indirekt und durch verbundene Gesellschaften, die unter ihrem beherrschenden Einfluss standen und von ihnen kontrolliert wurden, Fahrzeug-Kabelsysteme in North Carolina her, verkaufte und/oder vertrieb diese dort.

(f)     Die Kläger und Mitglieder der Schadensersatzgruppe fordern Schadensersatz für den ihnen durch diese Verstöße entstandenen tatsächlichen Schaden in Höhe eines bei der Verhandlung festzusetzenden Betrages, und ihnen droht weiterer Schaden.  Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen die North Carolina Gen. Stat. § 75-1-1 *ff*. und daher fordern die Kläger und die Mitglieder der Schadensersatzgruppe alle gemäß diesem Gesetz verfügbaren Rechtsmittel.

275.    Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Handlungen oder Praktiken unter Verstoß gegen das Gesetz gegen unlauteren Wettbewerb und das Verbraucherschutzgesetz von Rhode Island, R.I. Gen. Laws §§ 6-13.1-1- *ff*.

(a)     Die Mitglieder der Schadensersatzgruppe kauften Fahrzeug-Kabelsysteme zum persönlichen Gebrauch, für die Familie oder den Haushalt.

(b)     Die Beklagten vereinbarten und begingen tatsächlich Handlungen zur Beschränkung des Wettbewerbs und Handels in einem Markt, der Rhode Island mit umfasst, indem sie die Preise, zu denen Fahrzeug-Kabelsysteme in Rhode Island verkauft, vertrieben oder erworben wurden, beeinflussten, festsetzten,  kontrollierten und/oder auf einem künstlichen und nicht wettbewerbsfähigen Stand aufrecht erhielten.

(c)     Die Beklagten unterließen vorsätzlich, den Klägern und Mitgliedern

der Schadensersatzgruppe wesentliche Tatsachen in Bezug auf die rechtswidrigen Aktivitäten und künstlich überhöhten Preise der Beklagten für Fahrzeug-Kabelsysteme zu offenbaren. Die Beklagten unterlagen einer Pflicht zur Offenlegung dieser Tatsachen und eingedenk der relativ geringen Versiertheit des durchschnittlichen Nicht-Geschäftskunden verstießen die Beklagten mit ihrem Schweigen gegen diese Pflicht. Die Beklagten gaben während des Gruppenklagezeitraums fälschlicherweise gegenüber allen Verbrauchern an, dass die Preise der Beklagten für Fahrzeug-Kabelsysteme wettbewerbsfähig und angemessen waren.

(d)      Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Rhode Island beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Rhode Island angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert ; (3) die Kläger und Mitglieder der Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(e)      Als direkte und unmittelbare Folge der oben beschriebenen Gesetzesverstöße der Beklagten erlitten die Kläger und Mitglieder der Schadensersatzgruppe einen nachweislichen Verlust von Geld oder Besitztum in Folge der Verwendung und des Einsatzes sittenwidriger  und betrügerischer Handelspraktiken seitens der Beklagten, wie oben angegeben. Dieser Verlust wurde durch das hierin beschriebene vorsätzliche und betrügerische Verhalten der Beklagten verursacht.

(f)      Der Betrug der Beklagten, einschließlich ihrer Falschdarstellungen und Auslassungen hinsichtlich des Preises von Fahrzeug-Kabelsystemen, war wahrscheinlich für alle Verbraucher irreführend, die unter den gegebenen Umständen vernünftig handelten, als sie annahmen, dass sie Fahrzeug-Kabelsysteme zu einem von einem freien und fairen Markt bestimmten Preis kauften. Die Falschdarstellungen und Auslassungen stellen für die Kläger und Mitglieder der Schadensersatzgruppe wichtige

Informationen dar, da sie sich auf die Kosten der von ihnen gekauften Fahrzeug-Kabelsysteme bezogen.

(g)     Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen die Rhode Island Gen. Laws §§ 6-13.1-1- *ff.* und daher fordern die Kläger und die Mitglieder der Schadensersatzgruppe alle gemäß diesem Gesetz verfügbaren Rechtsmittel.

276.     Die Beklagten praktizierten unlauteren Wettbewerb oder begingen unlautere, sittenwidrige oder betrügerische Handlungen oder Praktiken unter Verstoß gegen 9 Vermont § 2451 *ff.*

(a)     Die Beklagten vereinbarten und begingen tatsächlich Handlungen zur Beschränkung des Wettbewerbs und Handels in einem Markt, der Vermont mit umfasst, indem sie die Preise, zu denen Fahrzeug-Kabelsysteme in Vermont verkauft, vertrieben oder erworben wurden, beeinflussten, festsetzten,  kontrollierten und/oder auf einem künstlichen und nicht wettbewerbsfähigen Stand aufrecht erhielten.

(b)     Die Beklagten unterließen vorsätzlich, den Klägern und Mitgliedern der Schadensersatzgruppe wesentliche Tatsachen in Bezug auf die rechtswidrigen Aktivitäten und künstlich überhöhten Preise der Beklagten für Fahrzeug-Kabelsysteme zu offenbaren. Die Beklagten unterlagen einer Pflicht zur Offenlegung dieser Tatsachen und eingedenk der relativ geringen Versiertheit des durchschnittlichen Nicht-Geschäftskunden verstießen die Beklagten mit ihrem Schweigen gegen diese Pflicht. Die Beklagten gaben während des Gruppenklagezeitraums fälschlicherweise gegenüber allen Verbrauchern an, dass die Preise der Beklagten für Fahrzeug-Kabelsysteme wettbewerbsfähig und angemessen waren.

(c)     Das gesetzwidrige Verhalten der Beklagten hatte folgende Auswirkungen:  (1) Der Preiswettbewerb beim Verkauf von Fahrzeug-Kabelsystemen wurde in ganz Vermont beschränkt, unterdrückt und eliminiert; (2) Die Preise für Fahrzeug-Kabelsysteme wurden in ganz Vermont angehoben, festgelegt, aufrecht erhalten und auf einem künstlich überhöhten Stand stabilisiert ; (3) die Kläger und Mitglieder der

Schadensersatzgruppe wurden des freien und offenen Wettbewerbs beraubt und (4)  die Kläger und die Mitglieder der Schadensersatzgruppe zahlten über dem wettbewerbsfähigen Stand liegende, künstlich überhöhte Preise für Fahrzeug-Kabelsysteme.

(d)     Als direkte und unmittelbare Folge der oben beschriebenen Gesetzesverstöße der Beklagten erlitten die Kläger und Mitglieder der Schadensersatzgruppe einen nachweislichen Verlust von Geld oder Besitztum in Folge der Verwendung und des Einsatzes sittenwidriger  und betrügerischer Handelspraktiken seitens der Beklagten, wie oben angegeben. Dieser Verlust wurde durch das hierin beschriebene vorsätzliche und betrügerische Verhalten der Beklagten verursacht.

(e)     Der Betrug der Beklagten, einschließlich ihrer Falschdarstellungen und Auslassungen hinsichtlich des Preises von Fahrzeug-Kabelsystemen, war wahrscheinlich für alle Verbraucher irreführend, die unter den gegebenen Umständen vernünftig handelten, als sie annahmen, dass sie Fahrzeug-Kabelsysteme zu einem von einem freien und fairen Markt bestimmten Preis kauften. Das irreführende Verhalten der Beklagten und deren sittenwidrige Aktivitäten stellen unlauteren Wettbewerb oder unlautere oder betrügerische Handlungen oder Praktiken unter Verstoß gegen 9 Vermont § 2451 *ff.* dar und daher fordern die Kläger und Mitglieder der Schadensersatzgruppe alle gemäß diesem Gesetz verfügbaren Rechtsmittel.

### VIERTE FORDERUNG VON RECHTSMITTELN
**Ungerechtfertigte Bereicherung**
**(für die Kläger und die Schadensersatzgruppe)**

277.    Die Kläger nehmen durch Bezugnahme die Behauptungen in den vorstehenden Absätzen als Bestandteil auf.

278.    Infolge ihres oben beschriebenen gesetzwidrigen Verhaltens haben sich die Beklagten und werden sich diese auch weiter ungerechtfertigt bereichern. Die Beklagten haben sich durch den Erhalt von auf gesetzwidrige Weise mindestens überhöhten Preisen und unrechtmäßige Gewinne aus dem Verkauf von Fahrzeug-Kabelsystemen

ungerechtfertigt bereichert.

279.     Die Beklagten haben von ihren gesetzwidrigen Handlungen profitiert und es ware unbillig, den Beklagten die Einbehaltung ihrer unrechtmäßig erworbenen Gewinne zu gestatten, die aus der von den Klägern oder den Mitgliedern der Schadensersatzgruppe für Fahrzeug-Kabelsysteme geleisteten Überzahlung resultierten.

280.     Die Kläger und die Mitglieder der Schadensersatzgruppe haben Anspruch auf den Betrag der unrechtmäßig erworbenen Gewinne der Beklagten, der ihrem gesetzwidrigen, ungerechten und unbilligen Verhalten entstammt. Die Kläger und die Mitglieder der Schadensersatzgruppe sind zur Einrichtung eines fingierten Teuhandfonds berechtigt, der aus den gesamten unrechtmäßig erworbenen Gewinnen besteht, an denen die Kläger und die Mitglieder der Schadensersatzgruppe anteilmäßig Forderungen geltend machen können.

## KLAGEBEGEHREN

Daher fordern die Kläger hochachtungsvoll, dass:

A.     Das Gericht entscheiden möge, dass diese Klage als Gruppenklage gemäß Regel 23(a), (b)(2) und (b)(3) der Bundeszivilprozessordnung geltend gemacht werden soll und verfügen möge, dass eine entsprechende Benachrichtigung über diese Klage, wie in Regel 23(c)(2) der Bundeszivilprozessordnung vorgesehen,  an jedes einzelne Mitglied der Gruppen ergehen möge;

B.     Dass das hierin behauptete gesetzwidrige Verhalten, der gesetzwidrige Vertrag bzw. das Zusammenwirken beurteilt und verurteilt werden möge:

(a)     Als unzulässige Beschränkung des Handels oder Handelsverkehrs unter Verstoß gegen Para. 1 des Sherman Act;

(b)     Als Verstoß *per se* gegen Para. 1 des Sherman Act;

(c)     Als rechtswidriges Zusammenwirken, Treuhandvertrag, Absprache, Vereinbarung und/oder aufeinander abgestimmtes Verhalten unter Verstoß gegen die hierin angeführten staatlichen Kartellgesetze und Gesetze über unlauteren Wettbewerb und

Verbraucherschutz und

      (d)     Als Handlungen zur ungerechtfertigten Bereicherung seitens der Beklagten, wie hierin erläutert.

     C.     Dass die Kläger und die Mitglieder der Schadensersatzgruppe Schadensersatz in Höhe des maximal nach diesen Gesetzen zulässigen Umfangs erhalten mögen und dass ein gesamtschuldnerisches Urteil zugunsten der Kläger und der Mitglieder der Schadensersatzgruppe gegen die Beklagten in Höhe eines Betrags eingetragen werden möge, der, soweit nach den jeweiligen Gesetzen zulässig, verdreifacht werden soll;

     D.     Dass die Kläger und die Mitglieder der Schadensersatzgruppe Schadensersatz in Höhe des maximal nach diesen Gesetzen zulässigen Umfangs in Form einer Rückerstattung und/oder Herausgabe der unrechtmäßig von ihnen eingezogenen Gewinnen erhalten mögen;

     E.     Den Beklagten, deren verbundenen Unternehmen, Nachfolgern, Erwerbern, Zessionaren und anderweitigen leitenden Angestellten, Vorstandsmitgliedern, Gesellschaftern, Handlungsbeauftragten und deren Mitarbeitern sowie allen anderen Personen, die in ihrem Auftrag handeln oder angeblich in ihrem Auftrag oder in Abstimmung mit ihnen handeln, dauerhaft untersagt und verboten werden soll, auf irgend eine Weise das hierin behauptete Verhalten, den Vertrag, die Verschwörung oder das Zusammenwirken fortzuführen, aufrecht zu erhalten oder zu erneuern oder irgend einen anderen Vertrag, eine Verschwörung oder ein Zusammenwirken mit einem ähnlichen Zweck bzw. einer ähnlichen Wirkung einzugehen und Praktiken, Pläne, Programme oder Vorrichtungen mit einem ähnlichen Zweck bzw. einer ähnlichen Wirkung einzusetzen oder zu befolgen;

     F.     Dass den Klägern und den Mitgliedern der Schadensersatzgruppe eine Rückerstattung zuerkannt werden möge, einschließlich Herausgabe der von den Beklagten durch ihre Handlungen zum unlauteren Wettbewerb und Handlungen ungerechtfertiger Bereicherung erhaltenen Gewinne;

     G.     Dass den Klägern und den Mitgliedern der Schadensersatzgruppe wie vom

Gesetz vorgesehen Zinsen für die Zeit vor und nach dem Urteil zuerkannt werden mögen und dass diese Zinsen zu dem vom Gesetz erlaubten Höchstsatz ab und nach dem Datum der Zustellung dieser Klage zugesprochen werden mögen;

H.     Die Kläger und die Gruppenmitglieder ihre Prozesskosten einschließlich angemessenerAnwaltskosten, wie vom Gesetz vorgesehen, zurückerhalten sollen und

I.     Die Kläger und die Gruppenmitglieder solch anderweitige und zusätzliche Rechtsmittel erhalten mögen, die der Fall u.U. erfordert und das Gericht für gerecht und billig erachtet.

DATUM: 14. Mai 2012

**THE MILLER LAW FIRM, P.C.**

Gez.:   [Unterschrift]  E. Powell Miller
E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telefon: (248) 841-2200
Faksimile: (248) 652-2852
epm@millerlawpc.com

*Anwälte für die Kläger und verbindender*
*Rechtsberater für die vorgesehenen*
*Endzahler-Klägergruppen*

Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telefon: (212) 907-0700
Faksimile: (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

95

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telefon: (310) 789-3100
Faksimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrel W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telefon: (214) 754-1900
Faksimile: (214) 754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE &**
**McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcom Road, Suite 200
Burlingame, CA 94010
Telefon: (650) 697-6000
Faksimile: (650)697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com

jcotchett@cpmlegal.com
swilliams@cpmlegal.com

*Anwälte für die Kläger und vorläufiger Co-*
*Lead-Gruppenklagenanwalt für die vorgesehenen*
*Endzahler-Klägergruppen*

## FORDERUNG EINER GESCHWORENENVERHANDLUNG

Die Kläger fordern eine Geschworenenverhandlung gemäß Regel 38(b) der Bundeszivilprozessordnung für alle derart verhandelbaren Streitpunkte.

DATUM:  14. Mai 2012     **THE MILLER LAW FIRM, P.C.**

             Gez.:   [Unterschrift]  E. Powell Miller
             E. Powell Miller (P39487)
             950 W. University Dr., Ste. 300
             Rochester, Michigan 48307
             Telefon: (248) 841-2200
             Faksimile: (248) 652-2852
             epm@millerlawpc.com

             *Anwälte für die Kläger  und vorläufiger*
             *Co-Lead-Anwalt für die vorgesehenen*
             *Endzahler-Klägergruppen*

             Hollis Salzman
             Bernard Persky
             William V. Reiss
             **LABATON SUCHAROW LLP**
             140 Broadway
             New York, NY 10005
             Telefon: (212) 907-0700
             Faksimile: (212) 883-7058
             hsalzman@labaton.com
             bpersky@labaton.com
             wreiss@labaton.com

             Marc M. Seltzer
             Steven G. Sklaver
             **SUSMAN GODFREY L.L.P.**
             1901 Avenue of the Stars, Suite 950
             Los Angeles, CA 90067-6029
             Telefon: (310) 789-3100
             Faksimile: (310) 789-3150
             mseltzer@susmangodfrey.com
             ssklaver@susmangodfrey.com

Terrel W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telefon: (214) 754-1900
Faksimile: (214) 754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcom Road, Suite 200
Burlingame, CA 94010
Telefon: (650) 697-6000
Faksimile: (650)697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
jcotchett@cpmlegal.com
swilliams@cpmlegal.com

*Anwälte für die Kläger und vorläufiger Co-
Lead-Gruppenklagenanwalt für die
vorgesehenen
Endzahler-Klägergruppen*