UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE WIRE HARNESS SYSTEMS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

JOINT MEMORANDUM OF PLAINTIFFS AND DEFENDANTS
REGARDING DISCOVERY SUBMISSIONS

Direct Purchaser Plaintiffs, Automobile Dealer Plaintiffs and End Payor Plaintiffs (collectively "Plaintiffs") and Defendants, by their undersigned counsel, submit this joint memorandum regarding the discovery submissions ordered to be submitted to the Court under the March 29, 2012 Case Management Order No. 1 [Dkt. No. 73] ("CMO No. 1").

## I. INTRODUCTION

CMO No. 1 provides as follows at ¶ 23:

> 23. Direct Purchaser Interim Lead Counsel, Automobile Dealer Interim Lead Counsel, End-Payor Interim Lead Counsel and counsel for the Defendants shall meet and confer and jointly submit the following to the Court no later than sixty (60) days from the date of this Order:
>
> a. a discovery plan;
> b. a proposed Protective Order;
> c. a proposed Document Preservation Order;
> d. a proposed Expert Discovery Stipulation; and
> e. a proposed Electronically Stored Information Protocol.

In compliance with the foregoing, Plaintiffs and Defendants ("the Parties") met and conferred in person and telephonically on several occasions in May to attempt to reach

agreement on as many issues as possible. The Parties are pleased to report that they have narrowed the issues significantly and agreed on most matters.

The purpose of this memorandum is twofold: (1) to submit the Parties' agreed proposed submissions for the Court's consideration and, if satisfactory, the Court's approval; and (2) where the Parties were unable to agree, to submit the Parties' respective proposals, along with succinct position statements, for the Court's consideration. The Parties look forward to further addressing the remaining issues and responding to any questions the Court may have at the Status Conference on June 15, 2012.

## II. DISCOVERY PLAN AND DOCUMENT PRESERVATION ORDER

The Parties' proposed Initial Discovery Plan, attached as Exhibit 1, includes Paragraph 9, concerning document preservation. As a result, the Parties have not created a separate document to address that issue.

The Parties have reached agreement on all points contained in the proposed Discovery Plan, except for the following:

A. Production of Grand Jury subpoenas, search warrants, document demands and any agreed-upon search protocols or limits on the scope of search and production concerning documents produced to the United States Department of Justice ("DOJ")

1. *Plaintiffs' Position*:

The parties are pleased to inform Your Honor that they have reached agreement on almost all of a proposed Initial Discovery Plan. In summary, the Initial Discovery Plan being presented to the Court provides that the Defendants who have either pled guilty or who the Department of Justice has announced have agreed to plead guilty will provide to Plaintiffs the wire harness and related products documents that they have produced to the Department of

Justice (the "DOJ Documents"). Production of the DOJ Documents will commence no later than August 1, 2012, and end on October 16, 2012. Defendants who have not pled guilty and the Plaintiffs will exchange initial disclosures by August 1, 2012.

The parties have also agreed to discuss production of transactional data beginning no later than July 16, 2012. Doing so will facilitate the parties working out any issues related to the transactional data and the eventual production of usable data more quickly after the motions to dismiss are decided.

All other discovery will start, subject to Court approval, after the Court decides the motions to dismiss.

There is an important area of disagreement between the parties regarding production of the DOJ Documents. Plaintiffs' position is that, along with the DOJ Documents, Defendants should also provide documents and information necessary for Plaintiffs to be able to more easily and meaningfully review the DOJ Documents, such as source logs for the documents, lists of custodians of the documents produced and of all employees whose records were searched, a list of which locations were searched, the manner and methodology of the searches that were conducted, any search terms that were used, agreed-upon search protocols or limits on the scope of searches and production concerning the DOJ Documents, and subpoenas, search warrants, and document demands. Defendants contend that Plaintiffs are not entitled to these documents, although they have told Plaintiffs that source and custodian information will be provided along with the production of electronic, but not hard copy, DOJ Documents.

Plaintiffs believe that it is important and logical for the Defendants to provide the information set forth above so that Plaintiffs can more easily and economically review the DOJ Documents. Defendants have the information and it could be readily produced. While Plaintiffs

are gratified that some Defendants agreed to produce DOJ Documents, there is no reason that they should not also provide basic information like whose records were searched, the search locations, etc. now. All such information would be fair game in discovery. Defendants should be required to provide it now, when it would be most productively used, instead of later, after the DOJ Documents have already been reviewed. Defendant's refusal to provide that information only delays the inevitable and makes Plaintiffs' job harder. Therefore, Plaintiffs respectfully ask the Court to order Defendants to produce the additional documents and information to Plaintiffs along with the DOJ Documents.

2. *Defendants' Position*:

Defendants have agreed to provide Plaintiffs with millions of pages of automotive wire harness-related documents produced to the United States Department of Justice ("DOJ"), and will begin doing so no later than August 1, 2012, as reflected in the proposed Initial Discovery Plan.[1] Despite Defendants' willingness to produce these documents before motions to dismiss have been decided and the scope of the case has been defined, Plaintiffs claim that they are entitled to more. Specifically, they demand not only the documents that certain Defendants produced to the DOJ, but also copies of grand jury subpoenas, search warrants, document demands and any agreed upon search protocols or limits on the scope of the searches concerning those Defendants' document productions to the DOJ. Because these materials would reveal "the nature, scope, or direction of the grand jury inquiry," *FDIC v. Ernst & Whinney*, 921 F.2d 83, 87 (6th Cir.1990), they are protected from disclosure under Rule 6(e) of the Federal Rules of Criminal Procedure.

[1] In so doing, the producing Defendants will also provide Plaintiffs with the fields that were provided to the DOJ, which will indicate to Plaintiffs, among other information, the custodians and sources of the DOJ Documents.

The "General Rule of Grand Jury Secrecy" reflects a "strong" and "well-established policy" that strictly limits disclosures of matters occurring before a grand jury. *See U.S. v. Procter & Gamble Co*., 356 U.S. 677, 681 (1958); *In re Grand Jury Proceedings*, 841 F.2d 1264, 1267-68 (6th Cir. 1988). Safeguarding the confidentiality of grand jury proceedings serves several interests, including the promotion of honesty and cooperation of potential grand jury witnesses and the protection of the innocent accused. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). In addition, as observed by the Sixth Circuit, "the need for secrecy continues even after the persons indicted by the grand jury have pleaded guilty, as they had in *United States v. Sells Engineering, Inc*., 463 U.S. 418 (1983) … [because] courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 222; *In re Grand Jury Proceedings,* 841 F.2d at 1268.

Accordingly, there is a presumption in this Circuit that all confidential documentary information before a grand jury constitutes grand jury materials entitled to protection. *FDIC v. Ernst & Whinney*, 921 F.2d 83, 87 (6th Cir.1990). Although a party may rebut this presumption by showing "that the documents are public or were not obtained by coercive means or that discovery would otherwise be available by civil discovery *and would not reveal the nature, scope, or direction of the grand jury inquiry*," (*FDIC*, 921 F.2d at 87 (emphasis added)), Plaintiffs cannot meet this burden. The subpoenas and related documents are essentially the concrete summary of the nature, scope, and direction of the grand jury's inquiry. As such, they clearly fall under Rule 6(e)'s protection, and courts have considered them to be "matters occurring before the grand jury" entitled to protection under Rule 6(e). *See Fiumara v. Higgins*, 572 F. Supp. 1093, 1105 (D.N.H. 1983); *May Dep't Stores Co. v. First Nat'l Supermarkets*, No.

81-1738, 1984 WL 419, at *3-5 (N.D. Ohio Mar. 26, 1984); *U.S. v. White Ready-Mix Concrete Co.*, 509 F. Supp. 747, 750 (N.D. Ohio 1981); *Application of State of Cal.*, 195 F.Supp. 37, 40-41 (E.D. Pa. 1961). Indeed, in *In re Caremark Int'l, Inc. Sec. Litig.*, No. 94 C 4751, 1995 WL 557496, at *3 (N.D. Ill. Sept. 14, 1995), the Court, although requiring the production of ordinary course of business documents produced to the DOJ, made clear that "responsive documents should not be produced with any grand jury subpoenas or document indices provided to the grand jury; in other words, they should not be compiled for the plaintiffs in the same manner they were presented to the grand jury, for that would disclose the workings of the grand jury." Simply put, Plaintiffs are not entitled to invade the province of the grand jury, yet that is precisely what they seek to do in improperly insisting on production of subpoenas, search protocols and the like.

In addition to impermissibly invading grand jury secrecy, Plaintiffs' demand for information about the specifics of search methodologies is outside the scope of discovery. The Federal Rules of Civil Procedure do not give requesting parties the right to conduct the actual search for relevant data. *See In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003). "The discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data." *Powers v. Thomas M. Cooley Law School*, No. 5:05-cv-117, 2006 WL 2711512, at *5 (W.D. Mich. Sept. 21 2006) Here, Plaintiffs aren't even the requesting parties! These productions were in response to *DOJ* demands. The DOJ was satisfied with them, and Plaintiffs have no business inquiring into the producing Defendants' searches, much less suggesting that the producing Defendants did not conduct their searches appropriately. Even were Plaintiffs the requesting parties – and they are not – "[i]n the absence of a strong showing that the responding party has somehow defaulted in his obligation, the court should not

resort to extreme, expensive, or extraordinary means to guarantee compliance." *Powers,* 2006 WL 2711512 *at *5*; *see also Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022, 2006 WL 1806151, at *1 (N.D. Cal. June 29, 2006) (denying plaintiffs' motion to compel discovery because a party does not have "an unfettered right to conduct its own examination of the opposing party's computers"). The producing Defendants have not given Plaintiffs any reason to doubt either their prior compliance with their subpoena obligations – which Plaintiffs have no standing to challenge in any event – or their intention to comply with their discovery obligations under the Federal Rules of Civil Procedure and, therefore, should not have to undergo the unreasonable costs and potential privacy risks associated with providing Plaintiffs with detailed information about past search methodologies. That, however, is precisely the result Plaintiffs seek to have the Court order here.

B. Preservation

1. *Plaintiffs' Position*:

The only other area of contention is that Plaintiffs have proposed that the parties meet, confer and agree on document preservation issues by December 1, while Defendants want to do it earlier. Plaintiffs believe that they need time after production of the DOJ Documents to be able to reasonably determine what appropriate document preservation periods should be in this case. The parties may be able to agree sooner, but Plaintiffs should not be rushed.

Plaintiffs propose that the Court adopt the following language in an Order as to the Discovery Plan with respect to document preservation: "The Parties are cognizant of their obligations under the Federal Rules of Civil Procedure and applicable case law to preserve electronically stored information ("ESI") and hard copy documents (collectively, "Documents")

relevant to these Actions and have agreed to meet and confer on these issues and to resolve them by December 1, 2012."

The merits of the unresolved points are the real issue before the Court now – not the minutiae of the back-and-forth of the Parties failed efforts to resolve particular issues. Moreover, both Plaintiffs and Defendants no doubt were willing to make certain proposed compromises in the interest of reaching an agreement on all issues. The question now is not whether one set of parties or another was more or less fair in the unsuccessful portions of negotiations that proceeded in good faith on all sides. Having said that, Plaintiffs strongly differ with Defendants' view of the negotiations that have led to the filing of this document and feel compelled to respond to Defendants' characterization of the negotiations. It is disappointing that Defendants feel the need to depict themselves as the only reasonable parties and wrongly allege that Plaintiffs have declined to engage in substantive discussions.

Defendants forget that the Parties began this process with differing views, which remain, on the appropriate time parameters of Defendants' document preservation. In Plaintiffs' view, it is woefully premature to set bracket dates for Defendants' preservation obligations. Plaintiffs must further investigate both the origins and the continuing effects of the admitted wire harness cartel, which have significant implications for both liability and damages. Plaintiffs do not and cannot slavishly assume that the Department of Justice – which has different responsibilities and objectives in its criminal cases than Plaintiffs do in their civil cases – has defined the temporal range of the wire harness cartel once and for all. For example, the time frame for a guilty plea in a criminal case may be subject to plea negotiations between the government and the accused.

While Plaintiffs' Rule 11 obligations govern their pleadings, those obligations do not prohibit Plaintiffs from fully investigating when exactly the wire harness cartel got its start.

Defendants should not be given *carte blanche* to destroy the documents that hold the answer. Yet under the guise of burden and expense, they seek the imprimatur of the Court to do just that. In reality, any burden of preserving existing, likely technologically obsolete back-up tapes is negligible.

Plaintiffs will propose – and are willing to stipulate to – a reasonable preservation period once that period can fairly be determined. Defendants demand that Plaintiffs accede to their proposed beginning and end dates based on a supposed burden that Defendants have never substantiated. Plaintiffs simply ask for a reasonable amount of time to ascertain the appropriate dates for document preservation. [2]

2. *Defendants' Position*:

On May 4, 2012, Defendants proposed reasonable preservation limits[3] in response to Plaintiffs' earlier suggestion that Defendants preserve documents above and beyond the

---

[2] This process began when it was agreed that Plaintiffs would submit the initial draft preservation stip on April 27, 2012 to begin negotiations. Plaintiffs did exactly that. Defendants on May 4, 2012 did not work from Plaintiffs initial draft, but instead included their preservation language in the Discovery Plan draft rather than have it as a separate document. Defendants state there were no substantive discussions, but in fact the Parties met and conferred on May 9, 2012 in Washington D.C. Later, Defendants proposed another draft on May 18, 2012 and Plaintiffs responded to that document with edits on May 23, 2012. In the spirit of cooperation, Plaintiffs commented on Defendants' draft, which was something Defendants had not done. The parties continued to exchange drafts and held conference calls to discuss a resolution of this issue from May 24 to May 28. During that time, the Parties exchanged at least six drafts.

Plaintiffs believed at several points the Parties were close to resolution. As late as May 28, 2012 the parties had agreed upon all language in the draft except one line and Defendants version of that line was "... have agreed to meet and confer on these issues and to resolve them by September 1, 2012". Defendants noted in that email that if it was agreed to "we are good to go." Plaintiffs responded with the exact language except requesting a date of December 1, 2012: "... have agreed to meet and confer on these issues and to resolve them by December 1, 2012". Plaintiffs had moved significantly from our initial position and were only two and a half months apart. Defendants since that offer have moved back to their May 9, 2012 position, except to remove a cutoff date relating to transactional data, while Plaintiffs stand by their proposal of May 28, 2012.

Defendants' statement that Plaintiffs "refuse to engage meaningfully" in this process is refuted by the effort, number of drafts exchanged and how close the parties came to a complete resolution. The fact that only a few issues remain to be decided by the Court illustrates that fair and reasonable negotiation by both sides did in fact take place throughout this entire process.

[3] Defendant's May 4, 2012 proposal was as follows: "The parties have agreed as follows: a. The parties need not preserve centrally maintained transactional data dated or created after________. b. The parties need not preserve other Documents [defined earlier in the document as "electronically stored information ("ESI") and hard

applicable rules and case law. Plaintiffs declined to offer alternative limits or to engage in any substantive discussions of the limitations Defendants proposed; instead, on May 23, 2012, Plaintiffs responded by deleting all discussion of document preservation. Plaintiffs' first counterproposal on this topic came on May 25, 2012, when they suggested that the parties meet and confer to discuss the issue. Plaintiffs proposed no date by which this meet and confer would begin and no date by which the existing preservation issues would be resolved. Plaintiffs likewise did not address the fact that the Court had ordered the parties to file a joint Document Preservation Order. *See* Case Management Order No. 1 for all Direct Purchaser, Automobile Dealer and End-Payor Actions ¶ 23, March 29, 2012, ECF No. 73. Later on May 25, 2012, after prompting by Defendants, Plaintiffs suggested that the parties meet and confer on preservation issues by December 15, 2012 (i.e., within the next *seven* months). Plaintiffs' proposal again did not include any date by which they believed the parties should resolve the existing preservation issues. On May 26, 2012, Defendants tried yet again to reach a compromise by proposing that the parties meet and confer *and resolve* preservation issues on or before September 1, 2012. In response, late on May 28, 2012, Plaintiffs offered to agree to meet and confer and resolve any disputes by December 1, 2012.[4] Thus, in spite of the substantial burdens of delay on

---

copy documents"] dated or created after________. c. The parties need not preserve Documents dated or created prior to________. d. The parties need not preserve backup tapes or other archived information unless the party in possession of the backup tapes or information has reason to believe that an identifiable tape or archive location has relevant Documents that are non-duplicative of Documents available from another source that is more readily accessible." On May 9, 2012, the parties met in Washington, D.C. for a meet and confer. At that time, Defendants proposed cut off dates of January 1, 1999; December 31, 2011 (transactional data); and February 24, 2011 (documents other than transactional data).

[4] On the morning of May 29, 2012, Defendants advised Plaintiffs that Defendants could not agree to this proposal given the lengthy amount of time they were proposing and the substantial burdens associated with preservation. However, Defendants made clear that they would forego the preservation limits they had earlier proposed for centrally maintained transactional data. Instead, they advised Plaintiffs that their final position in the discovery plan to be submitted to the Court would be that centrally maintained transactional data would not be subject to the proposed preservation limits, and Defendants would propose only that the parties need not preserve other Documents dated or created (i) before January 1, 1999 or (ii) on or after

Defendants, Plaintiffs have declined to meaningfully engage on this important issue. This does not satisfy Plaintiffs' obligations under Federal Rule of Civil Procedure 26(f)(2)-(3).

The Department of Justice ("DOJ") conducted raids on certain Defendants well over two years ago. In subsequent filings, including Informations and Rule 11 Plea Agreements, the DOJ has made clear that after more than two years of investigation, it has concluded that the conduct at issue in those filings ceased on or before February 2010, the time of the raids. Plaintiffs, relying on the public disclosure of the raids and the DOJ's subsequent filings filed suit in October 2011.

Continuing obligations to preserve documents over such substantial periods of time impose significant burdens on: (i) the employees subject to litigation holds who must ensure that they understand and comply with the holds; (ii) internal and external IT personnel who must execute litigation holds as they relate to centralized processes (e.g., email systems, servers, back-up tapes and other means of archiving); and (iii) internal and external counsel who must implement and monitor these efforts. These burdens are costly in terms of the man hours required and can often be completed only by sacrificing day-to-day job responsibilities. Further burdens have been imposed on those Defendants who have had to purchase hardware (e.g., servers, back-up devices and tapes), software, and physical space for no other reason than to meet the storage demands of the litigation holds. Courts have recognized that these types of preservation activities can "cripple large corporations." *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (Scheindlin, J.).

Given the substantial burdens associated with preservation, which are often disproportionately felt by large companies, it is standard practice for parties to agree at the outset

February 24. 2011. Plaintiffs were not amenable to this suggestion either, electing to stand on their December 1, 2012 "compromise."

of litigation on reasonable limitations, e.g., limiting preservation to documents dated or created prior to the date of the filing of the initial complaint, or in the case of a government investigation, to documents dated or created prior to the date of the initial raids. In some cases, the parties may agree to provide a few additional months as a buffer to capture any "chatter" that may continue in the weeks following the filing of the complaint or the raid.

Consistent with these common practices and the events in this matter, Defendants carefully considered how to address preservation burdens while ensuring the relevant, non-duplicative documents would be preserved. Toward that end, Defendants' proposal contemplates preserving in particular potentially relevant documents dated between January 1, 1999 – a year before the conduct alleged in the complaints – and February 24, 2011 – a year after the raids, as well as centrally maintained transactional data regardless of date.

Plaintiffs have yet to propose an alternative. Instead, Plaintiffs argue that they do not have enough information to make judgments about reasonable preservation limits. Yet, Plaintiffs base their claims on the publicly available information – the announcements concerning the DOJ raids and the DOJ's filings, including Informations and Plea Agreements, which as mentioned, provide ample support for the dates proposed by Defendants. Plaintiffs also have suggested that even where the conduct at issue ceased prior to February 2010, multiyear contracts may result in sales continuing for several years after that. That is a red-herring. As they know, Defendants will continue to retain centrally maintained transactional data about their sales, as will Plaintiffs. That is not the issue. The issue is the substantial burden on individuals and IT personnel and the costs imposed on the companies to have to continue to maintain future emails and other documents created years after the events at issue.

It is wholly unclear why Plaintiffs cannot agree – on the facts currently known to them – to ending preservation obligations for all documents other than centrally maintained transactional data for documents (i) dated or created prior to January 1, 1999 (one year before the relevant period stated in the complaints) and (ii) dated or created after February 24, 2011 (one year after the public raids by the DOJ and FBI on certain Defendants). Nor can Defendants fathom any basis for Plaintiffs' refusal to agree that "[t]he parties need not preserve backup tapes or other archived information unless the party in possession of the backup tapes or information has reason to believe that an identifiable tape or archive location has relevant Documents that are non-duplicative of Documents available from another source that is more readily accessible."

Finally, Plaintiffs' refusal to engage meaningfully on these issues within a reasonable timeframe is perplexing in light of Defendants' conservative requests. Defendants' position is narrowly focused on two areas that are among (i) the most expensive and difficult areas of preservation and (ii) the least likely to result in the loss of non-duplicative, relevant information: preservation of documents created a year after the conduct alleged in the complaints ended and back-up tapes.[5]

---

[5] *See, e.g.,* Fed. R. Civ. P. 26 advisory committee's notes (2006) ("The parties' discussion should pay particular attention to the balance between the competing needs to preserve relevant evidence and to continue routine operations critical to ongoing activities. Complete or broad cessation of a party's routine computer operations could paralyze the party's activities. The parties should take account of these considerations in their discussions, with the goal of agreeing on reasonable preservation steps.") (internal citation omitted); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d. 456, 479 n. 99 (S.D.N.Y. 2010) (Scheindlin, J.) (finding no need to preserve back-up tapes unless they are the sole source of relevant information or relate to key players whose active files are no longer available); *Forest Lab., Inc. v. Caraco Pharm. Lab., Ltd.,* No. 06-cv-13143, 2009 WL 998402, at *3 (E.D. Mich. Apr. 14, 2009) ( "As a general rule, that litigation hold does not apply to inaccessible backup tapes (e.g., those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set forth in the company's policy.") (internal citation omitted); Fed. R. Civ. P. 26(b)(2)(C) (stating that courts may limit discovery where (i) "unreasonably cumulative or duplicative, or can be obtained from another

## III. PROTECTIVE ORDER

The Parties have reached agreement on all points contained in a proposed Protective Order, except for the following:

A. Pre-notification of the use of Highly Confidential documents

1. *Plaintiffs' Position*: The Parties have reached agreement on all terms of a proposed Protective Order with the exception of Paragraph 10 with regard to pre-notification of the use of Highly Confidential documents. Attached as Exhibit 2 is the Parties' proposed Protective Order, with the Plaintiffs' and Defendants' respective, differing versions of Paragraph 10. Plaintiffs object to Defendants' proposal in paragraph 10(c) that advance notification be provided for documents intended to be used at depositions.

Plaintiffs maintain that pre-notification of documents to be used at deposition is an invasion of attorney work product and preparation, and destroys the ability to elicit candid, accurate, unrehearsed testimony. If forced to disclose anticipated deposition exhibits, the party whose witness is being deposed will be able to rehearse with the witness the testimony that the party wants the witness to provide. This is an interference with the search for the truth that the discovery process represents, and prejudices plaintiffs' ability to prepare for trial. These concerns are particularly acute here because it is likely that many depositions will be for trial purposes because the witnesses will be beyond the subpoena power of the Court.

---

source that is more convenient, less burdensome or less expensive" or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit, considering… the importance of the discovery in resolving the issues."); Fed. R. Civ. P. 26(b)(2)(B) ("A party need not produce discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.").

There is little potential prejudice to the defendants. Any witness or person to whom documents are to be shown will be subject to the sanctions provided for by the protective order. The documents which are likely to be the subject of discovery are not mostly historical, and involve an admitted criminal price-fixing conspiracy in violation of the Sherman Act. In the MDL antitrust class action *In re Packaged Ice Antitrust Litigation*, 08-md-1952 (E.D. Mich.) (PDB) ("*Packaged Ice*"), Judge Borman recently entered a protective order which does not require any advance notification of documents to be used at deposition. A true and correct copy of that protective order is attached hereto as Exhibit 3. There are no circumstances here that justify a burdensome, invasive notification process. In the spirit of cooperation, plaintiffs have made many compromises with defendants on the terms of the protective order. Advance notification of deposition exhibits is not justified; it was not necessary in *Packaged Ice*, and it is not necessary here. Plaintiffs' respectfully request that the Court enter their proposed protective order.

2. *Defendants' Position*:

Plaintiffs and Defendants have worked cooperatively and successfully to reach agreement on nearly all parts of the proposed Protective Order. Each side has compromised preferred positions to reach this result. But there is one paragraph regarding "Highly Confidential Information" where a difference among the parties remains—paragraph 10(c)—and this difference raises substantial competitive issues. Defendants' proposal addresses these issues, and therefore should be entered.

By definition, a party's Highly Confidential Information contains:

> highly sensitive and/or proprietary information, including but not limited to documents or information reflecting, containing, or derived from current confidential trade secrets, research, development, pricing, production, cost, marketing, or customer information, the disclosure of which, even limited to the

> restrictions placed on the information designated as "Confidential" under this Order, could compromise and/or jeopardize the Producing Party's competitive business interests.

Protective Order ¶ 5(b). Paragraph 10 of the Protective Order allows, under defined circumstances, attorneys to show this kind of Highly Confidential Information to certain categories of individuals who are not employees of the producing party, including competitors, customers and sometimes former employees. As a result, all parties in this industry—and certainly Defendants—have a keen interest in ensuring that this kind of Highly Confidential Information not be disclosed lightly to competitors or customers. Indeed, sometimes former employees are hired by competitors or customers.

In recognition of these realities, Defendants proposed that the Protective Order include a version of paragraph 10(c) that does *not* bar Plaintiffs from showing Highly Confidential Information to anyone authorized to see it under the Protective Order. Instead, paragraph 10 provides that in the very narrow situation where the person to whom the information will be shown is a "competitor, customer, or direct seller" to the producing party <u>and</u> that person did not author or receive the information, the attorney needs to notify the producing party, in advance, that he or she intends to show the party's Highly Confidential Information to the witness, so that the party has time to evaluate any competitive harm that might arise *before* it actually arises.

This pragmatic, tailored approach to dealing with a party's sensitive commercial information that is going to be shown to a competitor or customer has no real possibility of wrecking Plaintiffs' trial strategy or leading to the parade of horribles outlined by Plaintiffs. Disclosure of a Party's Highly Confidential Information to a competitor or customer should be the exception, not the rule, and certainly warrants protection to ensure that a company's valuable, commercial information is not unnecessarily shared. And while the Protective Order bars the

witness from exploiting the information for his own (or his company's) gain, any such Highly Confidential Information might not be easily forgotten by the witness, despite his or her best efforts.

Plaintiffs rely heavily for their proposal on language taken from the protective order recently entered in *In re Packaged Ice Antitrust Litigation*, 08-md-1952 (E.D. Mich.) (PDB). But the requirements of protective orders are case-specific, and there is a wide gulf between the need for confidentiality with respect to the business of producing ice—the recipe is hardly a secret—and the business of producing highly customized automotive wire harnesses in response to individualized Requests for Quotation by sophisticated OEMs.

Finally, one part of Plaintiffs' proposal would allow disclosure of a party's most Highly Confidential Information to a witness who had *never* before seen the document or known its contents, without the need for any notice, if (1) the witness happened to work at any point in his career in any capacity whatsoever for the producing party, (2) the document is being used for refreshment purposes or (3) the document is being used for impeachment. Pls. Proposal ¶¶ 10(b)(iii) and 10(c). (Remember that the situation of a witness who actually "authored, received, or is reasonably believed in good faith to be referenced in or aware of or participated in" the specific events referenced in the Highly Confidential Material is already covered by ¶ 10(b)(ii).) Not surprisingly, during the many meet-and-confer conversations, Plaintiffs could not identify a single instance when it would be appropriate to show a former employee/current competitor/current customer Highly Confidential Information from another party, whether to refresh his recollection or to impeach his testimony, *if that former employee did not have any pre-existing knowledge of the events referenced in the document*. Plaintiffs' proposed language authorizes lawyers to do exactly that, under the unfettered guise of "impeachment" or

"refreshment," and therefore sweeps far too broadly. Indeed, plaintiffs' proposed carve-out from the notice requirement (in the first few words of paragraph 10(c)) of all "persons described in paragraph 10(b)(ii) and (iii) above" undermines the entire purpose of the provision.[6]

Defendants' version of paragraph 10 balances the requirements of the litigation with the need for protection of sensitive commercial information from competitors and customers. It should be entered by the Court.

## IV. EXPERT DISCOVERY STIPULATION

The Parties have also reached agreement on the Expert Discovery Stipulation attached as Exhibit 4. The Parties respectfully urge the Court to enter an Order approving the Expert Discovery Stipulation.

## V. ELECTRONICALLY STORED INFORMATION PROTOCOL

The Parties have also reached agreement on the Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents ("Production Stipulation and Order") attached as Exhibit 5. The Parties respectfully urge the Court to enter an Order approving the Production Stipulation and Order.

[6] A modest dispute remains over one part of paragraph 10(b)(ii): Plaintiffs would allow disclosure under certain circumstances to witnesses who "participated in the events referenced in the Highly Confidential Material," while Defendants would allow such disclosure to witnesses who "participated in the ***specific*** events" referred to in the Highly Confidential Material. *See* Protective Order ¶ 10(b)(ii). The inclusion of the word "specific" is important: it makes clear that it is not enough to refer to some generalized industry fact to support disclosure of Highly Confidential Information to a witness who has no association with the document or information.

Date: May 29, 2012

Respectfully submitted,

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com

**DIRECT PURCHASER INTERIM LIAISON COUNSEL**

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

/s/ Gregory P. Hansel
Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
PRETI, FLAHERTY, BELIVEAU
& PACHIOS LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
ghansel@preti.com
rweill@preti.com
jcarver@preti.com

Michael J. Freed
Steven A. Kanner
William H. London
Michael L. Silverman
FREED KANNER LONDON
& MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500
mfreed@fklmlaw.com
skanner@fklmlaw.com
blondon@fklmlaw.com
msilverman@fklmlaw.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
& WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

**INTERIM LEAD COUNSEL FOR DIRECT PURCHASER PLAINTIFFS AND PROPOSED CLASS**

Gerard V. Mantese (P34424)
David Hansma (P71056)
Brendan Frey (P70893)
Joshua Lushnat (P75319)
MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200 Ext. 203
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

**AUTOMOBILE DEALER INTERIM LIAISON COUNSEL**

Don Barrett
David McMullan
Brian Herrington
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
(662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
Victoria Romanenko
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960
jonc@cuneolaw.com
Vicky@cuneolaw.com

Shawn M. Raiter
Paul A. Sand
Larson • King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

**INTERIM LEAD COUNSEL FOR AUTOMOBILE DEALER PLAINTIFFS AND PROPOSED CLASS**

E. Powell Miller (P39487)
950 W. University Dr., Suite 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com

**INTERIM LIAISON COUNSEL FOR END-PAYOR PLAINTIFFS AND PROPOSED CLASS**

Hollis Salzman
Bernard Persky
William V. Reiss
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

/s/ Marc M. Seltzer
Marc M. Seltzer
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
(310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, TX 75202
(214) 754-1900
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
Gene W. Kim
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
(650) 697-6000
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com

**INTERIM LEAD COUNSEL FOR END-PAYOR PLAINTIFFS AND PROPOSED CLASS**

LANE POWELL PC

May 29, 2012 By: /s/Larry S. Gangnes

Larry S. Gangnes
LANE POWELL PC
1420 Fifth Ave., Suite 4100
Seattle, WA 98101-2338
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
gangnesl@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Masayuki Yamaguchi
Darin M. Sands
LANE POWELL PC
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
yamaguchim@lanepowell.com
sandsd@lanepowell.com

Irwin Alterman
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
248-528-1111
irwin.alterman@kkue.com

*Attorneys for Defendants American Furukawa, Inc. and Furukawa Electric Co., Ltd.*

DELPHI AUTOMOTIVE LLP, DELPHI AUTOMOTIVE SYSTEMS, LLC, AND DPH HOLDINGS CORPORATION

May 29, 2012 By: /s/Joseph E. Papelian

Joseph E. Papelian
5725 Delphi Drive
Troy, MI 48098
Phone: 248-813-2535
joseph.e.papelian@delphi.com

Kenneth A. Gallo
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel: 202-223-7356
kgallo@paulweiss.com

Gary R. Carney
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
212-373-3051
gcarney@paulweiss.com

*Attorneys for Defendants Delphi Automotive LLP, Delphi Automotive Systems, LLC, and DPH Holdings Corporation*

WILMER CUTLER PICKERING HALE AND DORR LLP

May 29, 2012 By: /s/Steven F. Cherry

Steven F. Cherry
Stephanie K. Wood
Elizabeth Martin
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000

Fax: (202) 663-6363
steven.cherry@wilmerhale.com
stephanie.wood@wilmerhale.com
ellie.martin@wilmerhale.com

Karen D. Stringer
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6406
Fax: (617) 526-5000
karen.stringer@wilmerhale.com

*Attorneys for Defendant Denso International America, Inc. and Denso Corporation*

KERR, RUSSELL AND WEBER, PLC

May 29, 2012 By: /s/William A. Sankbeil

William A. Sankbeil (P19882)
Joanne Geha Swanson (P33594)
Matthew L. Powell (P69186)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
(313) 961-0388 (facsimile)
wsankbeil@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russel.com

James L. Cooper
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
(202) 942-5014
(202) 942-5999-facsimile
Email: james.cooper@aporter.com

*Attorneys for Defendants Fujikura America, Inc., and Fujikura Ltd.*

SMITH, GAMBRELL & RUSSELL, LLP

May 29, 2012 By: /s/Wm. Parker Sanders

Wm. Parker Sanders (Georgia Bar No. 626020)
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 815-3684
psanders@sgrlaw.com

*Attorney for Defendant Kyungshin-Lear Sales and Engineering, LLC*

DYKEMA GOSSETT PLLC

May 29, 2012 By: /s/Howard B. Iwrey

Howard B. Iwrey (P39635)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
(248) 203-0526 – Telephone
hiwrey@dykema.com

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 –Telephone
(312) 701-7711 – Facsimile
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

*Attorneys for Defendant Lear Corporation*

O'MELVENY & MYERS LLP

May 29, 2012 By: /s/Michael F, Tubach
Michael F. Tubach
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel: 415-984-8700
Fax: 415-984-8701
Email: Mtubach@omm.com

Michael R. Turco
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Tel: 248-971-1713
Fax: 248-971-1801
Email: turco@bwst-law.com

*Attorneys for Defendants Leoni AG, Leoni Wire Inc., Leoni Wiring Systems, Inc., Leoni Kabel Gmbh, and Leonische Holding, Inc.*

GIARMARCO, MULLINS & HORTON, P.C.

May 29, 2012 By: /s/William H. Horton
William H. Horton (P31567)
Giarmarco, Mullins & Horton, P.C.
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Phone: 248-457-7060
bhorton@gmhlaw.com

Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel.: 202-637-2200
Fax: 202-637-2201
Maggy.sullivan@lw.com

*Attorneys for Defendants Sumitomo Electric Industries, Ltd., Sumitomo Electric Wiring Systems, Inc., Sumitomo Electric Wintec America, Inc., Sumitomo Wiring Systems (U.S.A.) Inc., Sumitomo Wiring Systems, Ltd., and K&S Wiring Systems, Inc.*

.

COVINGTON & BURLING LLP

May 29, 2012 By: /s/Michael J. Fanelli

Michael J. Fanelli
Anita F. Stork
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel: (202) 662-6000
Fax: (202) 662-5383
Email: Mfanelli@cov.com

One Front Street
35th Floor
San Francisco, CA, 94111
Tel: (415) 591-6000
Fax: (415) 955-6550
Email: astork@cov.com

*Attorneys for Defendant S-Y Systems Technologies Europe GmbH*

BUTZEL LONG

May 29, 2012 By: /s/David F. DuMouchel
David F. DuMouchel
George B. Donnini
150 West Jefferson, Suite 100
Detroit, MI 48226
Tel: 313-225-7000
dumouchd@butzel.com
donnini@butzel.com

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Tel: 202-663-7820
TMiller@bakerandmiller.com

*Attorneys for Defendant TRAM, Inc.*

JONES DAY

May 29, 2012 By: /s/John M. Majoras
John M. Majoras
Carmen G. McLean
JONES DAY
51 Louisiana Ave. N.W.
Washington, D.C. 20001-2113
Tel. (202) 879-3939
Fax (202) 626-1700
jmmajoras@jonesday.com
cgmclean@jonesday.com

Michelle K. Fischer
Stephen J. Squeri
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Tel. (216) 586-3939
Fax (216) 579-0212
mfischer@jonesday.com
sjsqueri@jonesday.com

*Attorneys for Defendants Yazaki Corporation & Yazaki North America, Inc.*

Certificate of Service

I hereby certify that on this 29th day of May, 2012, I filed the foregoing and exhibits using the Court's ECF system which will automatically serve all counsel registered thereon.

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com

**DIRECT PURCHASER INTERIM LIAISON COUNSEL**