UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE AUTOMOTIVE WIRE HARNESS     :
SYSTEMS ANTITRUST LITIGATION      :        Master File No. 12-md-02311
_____  :
                                  :
THIS DOCUMENT RELATES TO:         :
                                  :
ALL ACTIONS                       :
_____  :

STIPULATION AND ORDER REGARDING
PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY
DOCUMENTS

This Stipulation and Order Regarding Production of Electronically Stored Information

and Hard Copy Documents ("Production Stipulation and Order") shall govern the parties in the

above-captioned case and all actions that are later consolidated with that case (collectively, the

"Litigation").

I.     GENERAL PROVISIONS

A.     This Production Stipulation and Order will only govern the production of

electronically stored information ("ESI") and hard copy documents (collectively, "Document" or

"Documents").

B.     TIFF Image Files:  The parties agree that all Documents will be produced as

single-page black and white Group IV TIFF image files of at least 300 dpi resolution, except as

provided in section III.C.  Page size shall be 8.5 x 11 inches unless, in the reasonable judgment

of the producing party, a particular item requires a different page size.  Each image file will use

the Bates number of the page as its unique file name. Original document orientation as displayed

in the native file should be maintained in the TIFF image (e.g., portrait to portrait and landscape to landscape).

C.      Text Files:  Each Document produced under this order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page.  Each text file shall be named using the Bates number of the first page of the corresponding production item.

i.  OCR: The text for each hard copy document shall be generated by applying optical character recognition (OCR) technology to the scanned image of the document.  The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.  The parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

ii.  ESI: The text of each ESI item shall be extracted directly from the ESI native file. To the extent that is not technically possible (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above. For contacts and calendars collected and/or processed after the execution date of this Production Stipulation and Order, user modifiable fields should be extracted and produced as text.

iii.  Redacted Text:  The text file corresponding to a redacted document may be generated by applying OCR to the redacted TIFF file under the provision above.

2

    iv.    Foreign Language Text:  The parties will make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any Document – including all TIFF conversion and OCR processes, and the extraction of text from native files – preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

D.    Bates Numbering:

    i.    Each TIFF image produced under this order must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

    ii.    If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify any such gap within 14 days of each production.  The producing party need not provide a placeholder (e.g., gap sheet, dummy image) within the production.

    iii.    The producing party will brand all TIFF images with its corresponding Bates number, using a consistent font type and size.  Parties will make reasonable efforts to avoid obscuring any part of the underlying image with the Bates number.

WAI-3072383v1
3004782.1

E.      Color:  If a receiving party finds the black and white version of a Document insufficient, the receiving party may request that the producing party provide a color image.  If the producing party has converted the Document to color for its own review for production, the producing party will provide the color image to the receiving party in the same format.  If the producing party has not converted the Document to color for its own use, the producing party will not unreasonably deny a request to provide a color image after the requesting party demonstrates good cause for requesting a color image.  If a producing party converts a document to color image in response to a request from a receiving party, the producing party shall do so in JPEG, TIFF or such other format as agreed with the receiving party.

F.      Confidentiality Designations:  If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to the Document. The confidentiality designation should also be reflected in the "Confidentiality" field specified in Appendix 2.

G.      Load Files:  All productions will be provided with Concordance image and data load files as detailed in Appendix 1. The image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.

4

H.     Fields:

i.     Documents shall be produced with all of the fields set forth in Appendix 2 to the extent that such fields can be extracted from the native file or created using an automated process.

ii.    ESI items collected and/or processed after the execution date of this Production Stipulation and Order shall be produced with the fields set forth in Appendix 3 to the extent that such fields can be extracted from the native file or created using an automated process *and* it is possible to do so without requiring a party to incur any additional expense or inconvenience than would be required to provide the fields set forth in Appendix 2.

iii.   Documents shall be produced with the following fields regardless of whether the fields may be populated automatically from the native file or created using an automated process:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) SourceParty, (g) NativeFileLink (for ESI only), (h) AttachRange, (i) Confidentiality, (j) RecordType, and (k) Redacted.

iv.    All field information will be provided in a .DAT file consistent with the descriptions and the field names provided in Appendix 2 and, as appropriate, Appendix 3.

v.     ESI shall be processed to reflect the date and time standardized for the UTC/GMT time zone.  The date and time reflected in the fields in Appendix 2, Appendix 3, and on any TIFF image will include UTC/GMT.  TIFF images may optionally show the local date and time if they display the offset to UTC/GMT.

5

      I.     ESI Liaison:  Each party agrees to designate an attorney to act as its ESI Liaison. Each ESI Liaison will be prepared to participate in the resolution of ESI discovery issues; know the party's ESI discovery efforts; and have access to those who are familiar with the party's electronic systems and capabilities in order to, as appropriate, answer relevant questions.  Each party shall designate its ESI Liaison within 10 days after entry of this Production Stipulation and Order.  Any party is free to change their designated ESI Liaison by providing written notice to the other parties.

II.    PRODUCTION OF HARD COPY DOCUMENTS

    A.    Unitization of Hard Copy Documents:  The parties will produce images of hard copy documents unitized to the extent the original documents appeared to be units in physical form, with attachments following parents, and with information that identifies the folder (or container) structure, to the extent such structure exists.

III.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION

    A.    System Files:  ESI shall be filtered for file type using an acceptable industry standard exclusion list or process ("Industry Standard").  The parties recognize that to reduce the document review population, additional file types may need to be excluded.  The parties recognize that certain parties have already processed documents that may be relevant to this Litigation.

        i.    Any party that has processed documents prior to the execution of this Production Stipulation and Order, will provide the other parties, within 30 days of the execution of this Production Stipulation and Order, a list of file types excluded from review that are not within the Industry Standard. Any

6

party receiving the list must lodge objections with the party who provided the list within 14 days. Any objection not received in this period will be waived. If objections are made, the relevant parties will meet and confer to resolve them.

ii. As to documents processed after the execution of this Production Stipulation and Order, if a party plans to exclude from review a file type not within the Industry Standard, that party must disclose such an exclusion to the other parties. Any party to whom such disclosure is made will have 5 business days to object. Any objection not made in this period will be waived. If objections are made, the relevant parties will meet and confer to resolve them.

B. Metadata Fields and Processing:

i. ESI items processed after the execution date of this Production Stipulation and Order shall be processed in a manner that preserves the source native file and metadata without modification, including time, date and time-zone metadata consistent with the requirements provided in this Production Stipulation and Order.

ii. Auto date/time stamps: ESI items processed after the execution date of this Production Stipulation and Order shall be processed so as to maintain the date/time shown in the document as it was last saved by the custodian or end user, not the date of collection or processing.

7

iii.  Hidden text:  Except as to the ESI produced in accordance with Sections III.C.-F., *infra*, ESI items processed after the execution date of this Production Stipulation and Order shall be processed in a manner that maintains and displays hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

C.   Production of Native Items:  The following are exceptions to the agreements outlined in sections I.B. and I.C.

i.   Through the pendency of this Litigation, the producing party shall exercise reasonable, good faith efforts to maintain all collected Native Files that may be relevant to this Litigation in a manner that does not materially alter or modify the file or the metadata other than as provided in this Production Stipulation and Order.

ii.  The parties shall produce TIFF images of each presentation-application file (e.g., MS PowerPoint) together with the full native version of each file.

iii. The parties shall produce the TIFF images of the first five pages of each spreadsheet-application file (e.g., MS Excel) together with the full native version of each file.

iv.  To the extent necessary, the parties will meet and confer regarding production of relevant information from personal databases (e.g., MS Access).

v.     The parties agree to meet and confer regarding the production of enterprise database-application files (e.g., SQL and SAP) to determine the most reasonable form of production based on the specific circumstances. In addition, the production of transactional data contemplated by the Initial Discovery Plan, as entered by the Court, shall be in the form agreed to during the meet and confer process and shall not be subject to this Production Stipulation and Order regardless of the source of the transactional data.

vi.     To the extent necessary, the parties will meet and confer regarding production of relevant multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi).

vii.     The parties agree to meet and confer prior to producing native file types other than those described in this section.

D.    Requests for Other Native Files: Other than as specifically set forth in Paragraph III.C., *supra*, a producing party need not produce documents in native format. If a party wants particular ESI produced in native format, and this order does not require the production of that ESI in its native format, the requesting party bears the burden of showing that good cause exists for the producing party to produce the ESI in its native format. The requesting party will provide a specific Bates range for ESI it wishes to be produced in native format. Upon receiving such a request, the producing party shall either produce the requested ESI in native format or disclose to the requesting party why it is unreasonable or unnecessary to do so. Any native files that are

9

produced under this procedure are subject to all of the production requirements specified for native file productions above.

E.     Parent-Child Relationships:  Parent-child relationships for all ESI (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.  For example, if a party is producing an e-mail with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent e-mail.

F.     Redaction:

i.     Where ESI items need to be redacted the ESI items shall be produced in TIFF with the OCR text of the redacted TIFF and with each redaction clearly indicated on the face of the TIFF.  The producing party will also provide data fields specified in Appendix 2 and Appendix 3 to the extent that such fields can be provided for all redacted documents without individualized privilege review and redaction subject to Section I.H., *supra*.

ii.    If ESI redacted and partially withheld from production are PowerPoint-type presentation decks or Excel-type spreadsheets as addressed in Paragraph III.C., *supra*, and the native items are also withheld, the entire file must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not display or print when

10

opened as last saved by the custodian or end-user.  For PowerPoint-type presentation decks, this shall include, but is not limited to, speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values and formulas as visible when printed, annotations and notes. If a requesting party receives a TIFF image that the requesting party does not believe is formatted so as to be legible (e.g., column cells display "#########" instead of the value) or if a requesting party wants additional information from an Excel-type spreadsheet (e.g., formulas), the requesting party may request from the producing party a legible TIFF image or a redacted native item.  At that time the requesting party will explain why good cause exists to make the request and will provide a specific Bates range for the ESI at issue.  Upon receiving such a request, the producing party shall either produce a legible TIFF image or redacted native item or disclose to the requesting party why it is unreasonable or unnecessary to do so.

iii.    If ESI redacted and partially withheld from production are audio/visual files, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unprivileged portion of the content.

G.   De-duplication:

i.    The producing party need only produce a single copy of a particular ESI item.  Any Documents produced in accordance with the Initial Discovery

11

Plan, as entered by the Court, are subject only to the provisions set forth in that Initial Discovery Plan.

ii.     A producing party may de-duplicate ESI vertically by custodian, or horizontally (globally) across the population of records.

iii.    ESI duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms only to create and compare hash values for exact matches only.  Any other methodology for identification of duplicates must be discussed with the receiving party and approved in writing before implementation. The resulting hash value for each item shall be reflected in the HashValue field specified in Appendix 2.

iv.     If a producing party elects to de-duplicate horizontally, all custodians who were in possession of a de-duplicated document must be identified in the CustodianOther metadata field specified in Appendix 2.  Additionally, all BCC recipients whose names would have been included in the BCC metadata field but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 2.  In the event of a rolling production of documents or ESI items, the producing party shall provide an overlay load file with updated CustodianOther and BCC information along with each production.

IV.    MISCELLANEOUS PROVISIONS

A.     Objections Preserved:  Nothing in this Production Stipulation and Order shall be interpreted to require disclosure of irrelevant information or relevant information that is overly

12

burdensome or is protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents.

B.     Cooperation:  The parties agree to act cooperatively and meet and confer regarding preservation, processing, and production issues.

C.     Modifications:  Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of Documents.


SO ORDERED:


_____

United States District Judge


13

IT IS SO STIPULATED.

Respectfully submitted,

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com

**DIRECT PURCHASER INTERIM
LIAISON COUNSEL**

Gregory P. Hansel                           Joseph C. Kohn
Randall B. Weill                            William E. Hoese
Joshua R. Carver                            Douglas A. Abrahams
PRETI, FLAHERTY, BELIVEAU                   KOHN, SWIFT & GRAF, P.C.
    & PACHIOS LLP          One South Broad Street, Suite 2100
One City Center                             Philadelphia, PA 19107
P.O. Box 9546                               (215) 238-1700
Portland, ME 04112-9546                     jkohn@kohnswift.com
(207) 791-3000                              whoese@kohnswift.com
ghansel@preti.com                           dabrahams@kohnswift.com
rweill@preti.com
jcarver@preti.com

14

Michael J. Freed
Steven A. Kanner
William H. London
Michael L. Silverman
FREED KANNER LONDON
     & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500
mfreed@fklmlaw.com
skanner@fklmlaw.com
blondon@fklmlaw.com
msilverman@fklmlaw.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
     & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

**INTERIM LEAD COUNSEL FOR DIRECT PURCHASER PLAINTIFFS AND
PROPOSED CLASS**

15

/s/ Gerard V. Mantese
Gerard V. Mantese (P34424)
David Hansma (P71056)
Brendan Frey (P70893)
Joshua Lushnat (P75319)
MANTESE HONIGMAN ROSSMAN
        AND WILLIAMSON, P.C.
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200 Ext. 203
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

**AUTOMOBILE DEALER INTERIM
LIAISON COUNSEL**

Don Barrett
David McMullan
Brian Herrington
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
(662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Jonathan W. Cuneo
Victoria Romanenko
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960
jonc@cuneolaw.com
Vicky@cuneolaw.com

Shawn M. Raiter
Paul A. Sand
Larson • King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

16

**INTERIM LEAD COUNSEL FOR AUTOMOBILE DEALER PLAINTIFFS AND PROPOSED CLASS**

/s/ E. Powell Miller
E. Powell Miller (P39487)
950 W. University Dr., Suite 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com

**INTERIM LIAISON COUNSEL FOR END-PAYOR PLAINTIFFS AND PROPOSED CLASS**

Hollis Salzman
Bernard Persky
William V. Reiss
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

Marc M. Seltzer
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
(310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, TX 75202
(214) 754-1900
toxford@susmangodfrey.com
wburns@susmangodfrey.com

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
Gene W. Kim
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
(650) 697-6000
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com

17

**INTERIM LEAD COUNSEL FOR END-PAYOR PLAINTIFFS AND PROPOSED CLASS**

[INSERT Ds' SIG BLOCK]

18

# Appendix 1: Production Delivery Requirements

General Instructions

1. A cover letter should be included with each production and shall include information sufficient to identify all accompanying media (hard drive, thumb drive, DVD or CD).
2. Data can be produced on CD, DVD, thumb drive or hard drive; use the media requiring the least number of deliverables.
3. Label all media with the following:
   a. Case number,
   b. Production date,
   c. Bates range, and
   d. Disk number (1 of X, 2 of X, etc.), if applicable.
4. Each deliverable volume should limit directory contents to approximately 5,000 files per folder.
5. All productions should be checked and produced free of computer viruses.
6. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.


Image Load Files

- Image load (cross-reference) files should be produced in Concordance Image (Opticon) format.

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.OPT).

- The volume names should be consecutive (e.g., ABC001, ABC002, *et seq.*).

- There should be one row in the load file for every TIFF image in the production.

- Every image in the delivery volume should be cross-referenced in the image load file.

- The imageID key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

- Files that are the first page of a logical document should include a "Y" where appropriate. Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

Sample Concordance Image (Opticon) Load File:
19

```
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,,
```

<u>Concordance Data Load Files:</u>

- Data load files should be produced in Concordance .DAT format.

- The data load file should use standard Concordance delimiters:

  - Comma - ¶ (ASCII 20);

  - Quote - þ (ASCII 254);

  - Newline - ® (ASCII174).

- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.

- All date fields should be produced in mm/dd/yyyy format.

- All attachments should sequentially follow the parent document/email.

- Use carriage-return to indicate the start of the next record.

- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.); a separate volume should be created for each piece of media delivered.

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (e.g., ABC001.DAT).

- The volume names should be consecutive (e.g., ABC001, ABC002, *et seq*.).

- If foreign language / Unicode text exists, the .DAT file shall be in UTF-8 or UTF-16 format where appropriate, consistent with section I.C.iv.

<u>Sample Concordance .DAT Load File:</u>

þBegBatesþþEndBatesþþBegAttachþþEndAttachþþPgCountþþCustodianþ

20

<u>OCR/Extracted Text Files</u>

- OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files.

- If Foreign Language/Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format, consistent with section I.C.iv.

21

# Appendix 2: Fields

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item. |
| EndBates | Last Bates number (production number) of an item.<br>**The EndBates field should be populated for single-page items. |
| BegAttach | First Bates number of attachment range (i.e. Bates number of the first page of the first attachment). |
| EndAttach | Last Bates number of attachment range (i.e. Bates number of the first page of the first attachment). |
| PgCount | Number of pages in the item. |
| Custodian | Name of person from whose files the item is produced. |
| CustodianOther | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated. |
| FileSize | Size (in kilobytes) of the source native file. |
| SourceFilePath | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 hash value of the file. |
| NativeFileLink | Hyperlink path for documents provided in native format only.<br>**The linked file must be named per the BegBates value. |
| SourceParty | Name of party producing the item. |
| FileExtension | Indicates file extension of source native file. |
| DateSent<br>(mm/dd/yyyy) | Date email or calendar item was sent. |
| LastModDate<br>(mm/dd/yyyy) | Date the item was last modified. |
| TimeSent<br>(hh:mmAM/PM) | Time email or calendar item was sent. |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received |
| ParentBates | First Bates number for the parent item of a family.<br>**Will not be populated for items that are not part of a family. |
| AttachBates | First Bates number of each "child" attachment.<br>**Can be more than one Bates number listed depending on the number of attachments. |
| To | The names and SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item. |
| From | The name and SMTP email address of the sender of the email or calendar item. |
| CC | The names and SMTP email addresses of all recipients that were included |

22

| Field Name | Field Description |
|---|---|
| | on the "CC" line of the email or calendar item. |
| BCC | The names and SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item. |
| DateCreated (mm/dd/yyyy) | Date the item was created. |
| TimeCreated (hh:mm AM/PM) | Time the item was created. |
| FileName | The filename of the source native file for an ESI item. |
| Subject | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email or calendar item). |
| TextPath | Full relative path to the current location of the document-level text file |
| Confidentiality | Indicates if item has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| AttachRange | Bates number of the first page of the parent item to the Bates number of the last page of the last attachment "child" item. |
| RecordType | To indicate "Paper," "Hard Copy," or "HC" if a hard copy document and "ESI" if it is an ESI item. |
| Application | Indicates software application that generated the ESI item (e.g., Outlook, Word). |
| Redacted | User-generated field that will indicate redactions.  "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |

23

# Appendix 3: Additional Fields

| Field Name | Field Description |
|---|---|
| Importance Ranking | Level of importance/sensitivity of messages or calendar items. |
| MessageID | The unique message identifier generated by the source email or calendar system. |
| PrevMessageID | The MessageID of the previous message in the email thread (the message that was replied to or forwarded). |
| Title | Any value populated in the Title field of the source file metadata or item properties. |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties. |

WAI-3072383v1
3004782.1