## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | : : | |
| THIS DOCUMENT RELATES TO: | : : | Child Case: W:12-cv-10001-MOB-MKM |
| All Direct Purchaser Actions | : | **Oral Argument Requested** |

## DEFENDANTS' COLLECTIVE MOTION TO DISMISS
## THE DIRECT PURCHASER ACTIONS

Defendants[1], by and through their counsel, hereby move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims in the Direct Purchaser Consolidated Amended Class Action Complaint (Doc. No. 86).  In support of the foregoing Motion, Defendants state as follows:

1.      Defendants base this Motion upon the accompanying memorandum of law in support, oral argument of counsel, and such other and further material as the Court may consider.

2.      As required by E.D. Mich. Local Rule 7.1(a), counsel for Defendants sought concurrence from counsel for Plaintiffs on July 6, 2012, via telephone conference.  During that call, counsel for Defendants explained the nature of this Motion and its legal basis and requested, but did not obtain, concurrence in the relief sought (i.e., dismissal of the Complaint).

---

[1] "Defendants" refers to American Furukawa, Inc.; Furukawa Electric Co., Ltd.; DENSO Corporation; DENSO International America, Inc.; Fujikura America, Inc.; Fujikura Ltd.; Kyungshin-Lear Sales and Engineering, LLC; Lear Corporation; Leoni AG; Leoni Wire Inc.; Leoni Wiring Systems, Inc.; Leoni Kabel GmbH; Leonische Holding Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Electric Wintec America, Inc.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.) Inc.; S-Y Systems Technologies Europe GmbH; Tokai Rika Co., Ltd.; TRAM, Inc.; Yazaki Corporation; and Yazaki North America, Inc.

Respectfully submitted,

LANE POWELL PC

July 13, 2012                    By:      /s/Larry S. Gangnes (w/consent)
                                         Larry S. Gangnes
                                         LANE POWELL PC
                                         1420 Fifth Ave., Suite 4100
                                         Seattle, WA  98101-2338
                                         (206) 223-7000
                                         (206) 223-7107 (facsimile)
                                         gangnesl@lanepowell.com

                                         Craig D. Bachman
                                         Kenneth R. Davis II
                                         LANE POWELL PC
                                         ODS Tower
                                         601 SW Second Ave., Suite 2100
                                         Portland, OR  97204-3158
                                         (503) 778-2100
                                         (503) 778-2200 (facsimile)
                                         bachmanc@lanepowell.com
                                         davisk@lanepowell.com

                                         Irwin Alterman
                                         KEMP KLEIN LAW FIRM
                                         201 W. Big Beaver, Suite 600
                                         Troy, MI  48084
                                         (248) 528-1111
                                         (248) 528-5129 (facsimile)
                                         irwin.alterman@kkue.com

                                         *Attorneys for Defendants American Furukawa, Inc.,
                                             and Furukawa Electric Co., Ltd.*

WILMER CUTLER PICKERING HALE AND
DORR LLP

July 13, 2012                    By:    /s/Steven F. Cherry (w/consent)
                                        Steven F. Cherry
                                        David P. Donovan
                                        Stephanie K. Wood
                                        Elizabeth Martin
                                        WILMER CUTLER PICKERING HALE AND
                                              DORR LLP
                                        1875 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20006
                                        (202) 663-6000
                                        (202) 663-6363 (facsimile)
                                        steven.cherry@wilmerhale.com
                                        david.donovan@wilmerhale.com
                                        stephanie.wood@wilmerhale.com
                                        ellie.martin@wilmerhale.com

                                        Karen D. Stringer
                                        Heather Price
                                        WILMER CUTLER PICKERING HALE AND
                                              DORR LLP
                                        60 State Street
                                        Boston, MA 02109
                                        (617) 526-6406
                                        (617) 526-5000 (facsimile)
                                        karen.stringer@wilmerhale.com
                                        heather.price@wilmerhale.com

                                        *Attorneys for Defendants DENSO International
                                             America, Inc. and DENSO Corporation*

                                        Steven M. Zarowny (P33362)¶
                                        General Counsel¶
                                        DENSO INTERNATIONAL AMERICA, INC.¶
                                        24777 Denso Drive¶
                                        Southfield, MI 48033¶
                                        (248) 372-8252¶
                                        (248) 213-2551 (facsimile)¶
                                        STEVE_ZAROWNY@denso-diam.com

                                        *Attorney for Defendant DENSO International
                                             America, Inc.*

KERR, RUSSELL AND WEBER, PLC

July 13, 2012        By:   /s/William A. Sankbeil
                                      William A. Sankbeil (P19882)
                                      Joanne Geha Swanson (P33594)
                                      Matthew L. Powell (P69186)
                                      KERR, RUSSELL AND WEBER, PLC
                                      500 Woodward Avenue, Suite 2500
                                      Detroit, MI  48226
                                      (313) 961-0200
                                      (313) 961-0388 (facsimile)
                                      was@krwlaw.com
                                      jgs@krwlaw.com
                                      mlp@krwlaw.com

James L. Cooper
Sonia Kuester Pfaffenroth
Laura Cofer Taylor
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC  20004
(202) 942-5014
(202) 942-5999 (facsimile)
james.cooper@aporter.com
sonia.pfaffenroth@aporter.com
laura.taylor@aporter.com

*Attorneys for Defendants Fujikura America, Inc.,
and Fujikura Ltd.*

SMITH, GAMBRELL & RUSSELL, LLP

July 13, 2012        By:   /s/Wm. Parker Sanders (w/consent)
                                        Wm. Parker Sanders (Georgia Bar No. 626020)
                                      SMITH, GAMBRELL & RUSSELL, LLP
                                      Promenade II, Suite 3100
                                      1230 Peachtree Street, N.E.
                                      Atlanta, Georgia 30309
                                      (404) 815-3684
                                      (404) 685-6984 (facsimile)
                                      psanders@sgrlaw.com

Jeffrey G. Heuer (P14925)
Peter M. Falkenstein (P61375)
JAFFE, RAITT, HEUER & WEISS, P.C.
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
(248) 351-3000
jheuer@jaffelaw.com
pfalkenstein@jaffelaw.com

*Attorneys for Defendant Kyungshin-Lear Sales and
    Engineering, LLC*


DYKEMA GOSSETT PLLC

July 13, 2012                    By:    /s/Howard B. Iwrey (w/consent)
                                        Howard B. Iwrey (P39635)
                                        DYKEMA GOSSETT PLLC
                                        39577 Woodward Avenue, Suite 300
                                        Bloomfield Hills, MI  48304
                                        (248) 203-0526
                                        (248) 203-0763 (facsimile)
                                        hiwrey@dykema.com

                                        Andrew S. Marovitz
                                        Britt M. Miller
                                        MAYER BROWN LLP
                                        71 S. Wacker Drive
                                        Chicago, IL  60606
                                        (312) 782-0600
                                        (312) 701-7711 (facsimile)
                                        amarovitz@mayerbrown.com
                                        bmiller@mayerbrown.com

                                 *Attorneys for Defendant Lear Corporation*

                                 O'MELVENY & MYERS LLP

July 13, 2012                    By:    /s/Michael F. Tubach (w/consent)
                                        Michael F. Tubach
                                        O'MELVENY & MYERS LLP
                                        Two Embarcadero Center, 28th Floor
                                        San Francisco, CA  94111
                                        (415) 984-8700
                                        (415) 984-8701 (facsimile)
                                        Mtubach@omm.com

{35842/1/DT692493.DOCX;1}                    5

Michael R. Turco
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, MI  48009
(248) 971-1713
(248) 971-1801 (facsimile)
turco@bwst-law.com

*Attorneys for Defendants Leoni AG, Leoni Wire
    Inc., Leoni Wiring Systems, Inc., Leoni Kabel
    GmbH, and Leonische Holding Inc.*

GIARMARCO, MULLINS & HORTON, P.C.

July 13, 2012                    By:    /s/William H. Horton (w/consent)
                                        William H. Horton (P31567)
                                        GIARMARCO, MULLINS & HORTON, P.C.
                                        101 West Big Beaver Road, Tenth Floor
                                        Troy, MI  48084-5280
                                        (248) 457-7060
                                        (248) 457-7001 (facsimile)
                                        bhorton@gmhlaw.com

                                        Marguerite M. Sullivan
                                        LATHAM & WATKINS LLP
                                        555 Eleventh Street NW, Suite 1000
                                        Washington, DC  20004
                                        202-637-2200
                                        202-637-2201 (facsimile)
                                        Maggy.sullivan@lw.com

                                        *Attorneys for Defendants Sumitomo Electric
                                            Industries, Ltd., Sumitomo Electric Wiring
                                            Systems, Inc., Sumitomo Electric Wintec
                                            America, Inc., Sumitomo Wiring Systems
                                            (U.S.A.) Inc., Sumitomo Wiring Systems, Ltd.,
                                            and K&S Wiring Systems, Inc.*

COVINGTON & BURLING LLP

July 13, 2012                    By:     /s/Michael J. Fanelli (w/consent)
                                         Michael J. Fanelli
                                         COVINGTON & BURLING LLP
                                         1201 Pennsylvania Ave., NW
                                         Washington, D.C.  20004
                                         (202) 662-6000
                                         (202) 662-5383 (facsimile)
                                         Mfanelli@cov.com

                                         Anita F. Stork
                                         COVINGTON & BURLING LLP
                                         One Front Street
                                         35th Floor
                                         San Francisco, CA  94111
                                         (415) 591-6000
                                         (415) 955-6550 (facsimile)
                                         astork@cov.com

                                         *Attorneys for Defendant S-Y Systems Technologies
                                              Europe GmbH*

                                         BUTZEL LONG

July 13, 2012                    By:     /s/David F. DuMouchel (w/consent)
                                         David F. DuMouchel
                                         George B. Donnini
                                         BUTZEL LONG
                                         150 West Jefferson, Suite 100
                                         Detroit, MI  48226
                                         (313) 225-7000
                                         (313) 225-7080 (facsimile)
                                         dumouchd@butzel.com
                                         donnini@butzel.com

                                         W. Todd Miller
                                         BAKER & MILLER PLLC
                                         2401 Pennsylvania Ave., NW, Suite 300
                                         Washington,  DC 20037
                                         (202) 663-7820
                                         (202) 663-7849 (facsimile)
                                         TMiller@bakerandmiller.com

                                         *Attorneys for Defendants TRAM, Inc. and Tokai
                                              Rika Co., Ltd.*

JONES DAY

July 13, 2012                   By:    /s/John M. Majoras (w/consent)
                                       John M. Majoras
                                       Carmen G. McLean
                                       JONES DAY
                                       51 Louisiana Ave. N.W.
                                       Washington, D.C.  20001-2113
                                       (202) 879-3939
                                       (202) 626-1700 (facsimile)
                                       jmmajoras@jonesday.com
                                       cgmclean@jonesday.com

                                       Michelle K. Fischer
                                       Stephen J. Squeri
                                       JONES DAY
                                       North Point
                                       901 Lakeside Avenue
                                       Cleveland, OH  44114
                                       (216) 586-3939
                                       (216) 579-0212 (facsimile)
                                       mfischer@jonesday.com
                                       sjsqueri@jonesday.com

                                       *Attorneys for Defendants Yazaki Corporation and
                                            Yazaki North America, Inc.*

                                       Atleen Kaur (P66595)
                                       YAZAKI NORTH AMERICA, INC.
                                       6801 N. Haggerty Road
                                       Canton, MI  48187
                                       (734) 983-4622
                                       (734) 983-4623 (facsimile)
                                       Atleen.kaur@us.yazaki.com

                                       *Attorney for Defendant Yazaki North America, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | |
| THIS DOCUMENT RELATES TO: All Direct Purchaser Actions | Child Case: W:12-cv-10001-MOB-MKM **Oral Argument Requested** |

**DEFENDANTS' COLLECTIVE MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**COLLECTIVE MOTION TO DISMISS THE DIRECT PURCHASER ACTIONS**

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.    Whether under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Plaintiffs have failed to allege sufficient facts to meet the minimum requirements for pleading a claim based on an antitrust conspiracy?

2.    Whether Plaintiffs have failed to allege injury giving rise to a claim for money damages under the Sherman Act, as required by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)?

3.    Whether Plaintiffs' claims for damages accruing before November 23, 2007, are barred by the four-year statute of limitations in Section 4B of the Clayton Act, 15 U.S.C. § 15b, because Plaintiffs fail to allege facts with the particularity required by Rule 9(b) that show (i) affirmative acts of concealment by Defendants and (ii) Plaintiffs' due diligence, as required to meet the stringent rules for pleading fraudulent concealment?

4.    Whether Plaintiffs lack standing to seek injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, because they fail to plead any facts that plausibly suggest a continuing conspiracy or a real threat of immediate injury or future violations or harm?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1. **Insufficiency of the Complaint under *Bell Atlantic Corp. v. Twombly***

   - *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
   - *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)
   - *In re Refrigerant Compressors Antitrust Litig.*, Case No. 2:09-md-02042-SFC, 2012 WL 2114997 (E.D. Mich. June 11, 2012)
   - *In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203 (N.D. Cal. 2005)
   - *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009)
   - Fed. R. Civ. P. 8(a)(2)
   - Fed. R. Civ. P. 12(b)(6)

2. **Plaintiffs' failure to allege injury giving rise to monetary damages under Sherman Act**

   - *Campos v. Ticketmaster Corp.*, 140 F.3d 1166 (8th Cir. 1998); *cert. den.* 525 U.S. 1102 (1999)
   - *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977)
   - Fed. R. Civ. P. 8(a)(2)
   - Fed. R. Civ. P. 12(b)(6)

3. **Plaintiffs' failure to allege fraudulent concealment**

   - *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)
   - *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975)
   - *Dry Cleaning & Laundry Inst. of Detroit, Inc. v. Flom's Corp.*, 841 F. Supp. 212 (E.D. Mich. 1993)
   - *In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647 (E.D. Mich. 2011)
   - *Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445 (6th Cir.), *cert. denied,* 488 U.S. 880 (1988)
   - Fed. R. Civ. P. 8(a)(2)
   - Fed. R. Civ. P. 9(b)
   - Fed. R. Civ. P. 12(b)(6)
   - 15 U.S.C. § 15b

4. **Plaintiffs' failure to establish standing to seek injunctive relief**

   - *City of L.A. v. Lyons*, 461 U.S. 95 (1983)
   - *In re Delta/Airtrust Baggage Fee Antitrust Litig.*, 733 F. Supp. 2d 1348 (N.D. Ga. 2010)
   - *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6 (D.D.C. 2004)
   - *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953)
   - Fed. R. Civ. P. 8(a)(2)
   - Fed. R. Civ. P. 12(b)(6)
   - 15 U.S.C. § 26

**TABLE OF CONTENTS**

I.     SUMMARY OF ARGUMENT ..................................................................... 1

II.    BACKGROUND ....................................................................................... 3

    A.    The Products ................................................................................ 3

    B.    The Parties .................................................................................. 3

    C.    The Alleged Conduct .................................................................. 4

    D.    The Government Investigations and Guilty Pleas ................................. 5

III.   THE DPPs FAIL TO ALLEGE FACTS STATING A CLAIM ........................................ 6

    A.    The DPPs Cannot Satisfy Their Obligations Under *Twombly* By Referring to the Existence of Investigations and Guilty Pleas ........................................ 9

        1.    DPPs' reliance on investigations does not satisfy their pleading requirement under *Twombly* ...................................................... 9

        2.    The four guilty pleas are discrete and divorced from the overarching conspiracy the DPPs allege ........................................................ 10

    B.    The DPPs Fail to Allege Facts to Support Their Claim of an Overarching Conspiracy ................................................................................ 15

    C.    The DP CAC Fails to Differentiate Between Any of the at Least Two Dozen Defendants ................................................................................ 17

IV.   THE "DIRECT PURCHASER" PLAINTIFFS' DAMAGE CLAIMS SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO ALLEGE INJURY GIVING RISE TO A CLAIM FOR DAMAGES UNDER THE SHERMAN ACT ................................ 20

V.    THE STATUTE OF LIMITATIONS BARS THE DPPs' CLAIMS ACCRUING BEFORE NOVEMBER 23, 2007 .................................................................... 23

    A.    The DPPs Fail to Plead Affirmative Acts of Concealment ...................... 24

    B.    The DPPs Fail to Plead Due Diligence ............................................. 28

VI.   THE DPPs LACK STANDING TO SEEK INJUNCTIVE RELIEF ................................ 29

    A.    The DPPs Fail to Plead Facts Supporting a "Continuing Conspiracy" ........ 30

    B.    The DPPs Fail to Plead a Real or Immediate Threat of Future Injury ......... 31

## <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>                                                                                   <u>Page(s)</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................7, 15

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)................................................................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................ passim

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
    371 F.3d 883 (6th Cir. 2004) ..........................................................................24, 26

*Campos v. Ticketmaster Corp.*,
    140 F.3d 1166 (8th Cir. 1998), *cert. denied*, 525 U.S. 1102 (1999)................................21, 22

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) .......................................................................... passim

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983)..................................................................................30, 31, 36

*Dart Drug Corp. v. Parke, Davis & Co.*,
    344 F.2d 173 (D.C. Cir. 1965) ........................................................................34, 35

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) ..........................................................................24, 28

*Dry Cleaning & Laundry Inst. of Detroit, Inc. v. Flom's Corp.*,
    841 F. Supp. 212 (E.D. Mich. 1993)...............................................................25, 27

*Eidson v. Tenn. Dep't of Children's Servs.*,
    510 F.3d 631 (6th Cir. 2007) ..................................................................................7

*Egerer v. Woodland Realty, Inc.*,
    556 F.3d 415 (6th Cir. 2009) ................................................................................24

*Granader v. Pub. Bank*,
    417 F.2d 75 (6th Cir. 1969) ..................................................................................32

*Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*,
    491 F.3d 310 (6th Cir. 2007) ................................................................................24

*Hentosh v. Herman M. Finch Univ. of Health Scis.*,
    167 F.3d 1170 (7th Cir. 1999) ......................................................................24, 26

*Hill v. U.S. Dep't of Labor,*
    65 F.3d 1331 (6th Cir. 1995) ................................................................23

*Hinds Cnty. v. Wachovia Bank N.A.,*
    620 F. Supp. 2d 499 (S.D.N.Y. 2009)...........................................13, 17

*Hinds Cnty. v. Wachovia Bank N.A.,*
    700 F. Supp. 2d 378 (S.D.N.Y. 2010)...........................................13, 14

*Ill. Brick Co. v. Illinois,*
    431 U.S. 720 (1977)............................................................... passim

*In re Bath & Kitchen Fixtures Antitrust Litig.,*
    No. 05-cv-10510 MOM, 2006 WL 2038605 (E.D. Pa. July 19, 2006) ...................................10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    138 F. Supp. 2d 25 (D. Me. 2001) ......................................................28

*In re Delta/Airtrust Baggage Fee Antitrust Litig.,*
    733 F. Supp. 2d 1348 (N.D. Ga. 2010) ................................................35

*In re Elevator Antitrust Litig.,*
    502 F.3d 47 (2d Cir. 2007).................................................................16

*In re Fertilizer Antitrust Litig.,*
    No. MF-75-1, 1979 WL 1690 (E.D. Wash. Sept. 14, 1979)...................26

*In re Florida Cement & Concrete Antitrust Litig.,*
    746 F. Supp. 2d 1291 (S.D. Fla. 2010) ..................................................7

*In re Graphics Processing Units Antitrust Litig.,*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................8, 9

*In re Iowa Ready-Mix Concrete Antitrust Litig.,*
    768 F. Supp. 2d 961 (N.D. Iowa 2011).............................................9, 13

*In re Magnesium Oxide Antitrust Litig.,*
    Civ. No. 10-5943 (DRD), 2012 WL 1150123 (D.N.J. Apr. 5, 2012)....................26

*In re Nifedipine Antitrust Litig.,*
    335 F. Supp. 2d 6 (D.D.C. 2004) ............................................... passim

*In re Optical Disk Drive Antitrust Litig.,*
    No. 3:10-md-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011).....................12

*In re Pa. Title Ins. Antitrust Litig.,*
    648 F. Supp. 2d 663 (E.D. Pa. 2009) ..................................................19

*In re Packaged Ice Antitrust Litig.,*
   723 F. Supp. 2d 987 (E.D. Mich. 2010)...................................................................9, 13, 14, 16

*In re Plavix Indirect Purchaser Antitrust Litig.,*
   No. 1:06-cv-226, 2011 WL 335034 (S.D. Ohio Jan. 31, 2011)................................................33

*In re Refrigerant Compressors Antitrust Litig.,*
   795 F. Supp. 2d 647 (E.D. Mich. 2011)............................................................... passim

*In re Refrigerant Compressors Antitrust Litig.,*
   No. 2:09-md-02042, 2012 WL 2114997 (E.D. Mich. June 11, 2012)............................ passim

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
   580 F. Supp. 2d 896 (N.D. Cal. 2008) .................................................................................9, 14

*In re Tableware Antitrust Litig.,*
   363 F. Supp. 2d 1203 (N.D. Cal. 2005) ..........................................................................8, 9, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ......................................................................17, 18, 19

*In re Travel Agent Comm'n Antitrust Litig.,*
   MDL No. 1561, No. 1:03 CV 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007),
   *aff'd* 583 F.3d 896 (6th Cir. 2009) ...................................................................................8, 17

*In re Travel Agent Comm'n Antitrust Litig.,*
   583 F.3d 896 (6th Cir. 2009) ........................................................................................ passim

*Ingram Corp. v. J. Ray McDermott & Co.,*
   No. 79-2575, 1980 WL 1819 (E.D. La. Jan. 10, 1980), *rev'd on other grounds,*
   698 F.2d 1295 (5th Cir. 1983) ................................................................................................26

*Invamed, Inc. v. Barr Labs., Inc.,*
   22 F. Supp. 2d 210 (S.D.N.Y. 1998).......................................................................................18

*Iron Workers Local Union No. 70 Ins. Fund v. Philip Morris Inc.,*
   29 F. Supp. 2d 801 (N.D. Ohio 1998)....................................................................................28

*Jones v. City of Cincinnati,*
   521 F.3d 555 (6th Cir. 2008) ....................................................................................................7

*Kansas v. UtiliCorp United, Inc.,*
   497 U.S. 199 (1990)................................................................................................................22

*Klehr v. A.O. Smith Corp.,*
   521 U.S. 179 (1997)................................................................................................................23

*Lubic v. Fidelity Nat'l Fin., Inc.,*
    No. C08-0401 MJP, 2009 WL 2160777 (W.D. Wash. July 20, 2009) ....................................19

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .........................................................................................................35, 36

*Mich. Div.-Monument Builders of N.A. v. Mich. Cemetery Assoc.,*
    458 F. Supp. 2d 474 (E.D. Mich. 2006) ......................................................................... passim

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) .........................................................................................................29, 30

*Pinney Dock & Transp. Co. v. Penn Central Corp.,*
    838 F.2d 1445 (6th Cir.), *cert. denied,* 488 U.S. 880 (1988) ................................23, 24, 25, 26

*Rodic v. Thistledown Racing Club, Inc.,*
    615 F.2d 736 (6th Cir. 1980) ...................................................................................................32

*Salaam v. Collins,*
    830 F. Supp. 853 (D. Md. 1993), *aff'd sub nom. Calhoun-El v. Robinson,*
    70 F.3d 1261 (4th Cir. 1995) ...................................................................................................35

*Sinclair Oil Corp. v. Atl. Richfield Co.,*
    720 F. Supp. 894 (D. Utah 1989) ............................................................................................26

*State of Tex. v. Allan Const. Co.,*
    851 F.2d 1526 (5th Cir. 1988) .................................................................................................26

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) ...................................................................................................................31

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield,*
    552 F.3d 430 (6th Cir. 2008) .....................................................................................16, 17, 18

*United States v. Sargent Elec. Co.,*
    785 F.2d 1123 (3d Cir. 1986) ..................................................................................................12

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953) .....................................................................................................33, 34, 35

*Weiner v. Klais & Co., Inc.,*
    108 F.3d 86 (6th Cir. 1997) .....................................................................................................32

*Wood v. Carpenter,*
    101 U.S. (11 Otto) 135 (1879) ...........................................................................................23, 24

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    395 U.S. 100 (1969) .................................................................................................................31

STATUTES, RULES AND REGULATIONS

15 U.S.C. § 1 ...........................................................................................6, 7, 17, 22

15 U.S.C. § 15(b) .................................................................................................23

15 U.S.C. § 16(a) .................................................................................................10

15 U.S.C. § 26 ......................................................................................................30

Fed. R. Civ. P. 8 ....................................................................................................9

Fed. R. Civ. P. 9(b) ..................................................................................24, 27, 29

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 6

Fed. R. Evid. 201 .................................................................................................32

COURT DOCUMENTS

Plea Agreement, *United States v. DENSO Corp.*,
   No. 12-20063 (E.D. Mich. Mar. 5, 2012) ...............................................5, 10, 32, 33

Plea Agreement, *United States v. Fujikura Ltd.*,
   No. 12-20254 (E.D. Mich. June 21, 2012)...................................................5, 11, 32

Plea Agreement, *United States v. Furukawa Electric Co., Ltd.*,
   No. 11-20612 (E.D. Mich. Nov. 14, 2011) ............................................5, 6, 11, 32, 33

Plea Agreement, *United States v. Yazaki Corp.*,
   No. 12-20064 (E.D. Mich. Mar. 1, 2012) ............................................5, 6, 11, 32, 33

Tr. of Guilty Plea & Sentencing Hr'g, *United States v. DENSO Corp.*,
   No. 12-20063 (E.D. Mich. Mar. 5, 2012) .......................................................34

Tr. of Guilty Plea & Sentence, *United States v. Fujikura Ltd.*,
   No. 12-20254 (E.D. Mich. June 21, 2012)......................................................34

Tr. of Plea & Sentencing, *United States v. Furukawa Electric Co., Ltd.*,
   No. 11-20612 (E.D. Mich. Nov. 14, 2011) ....................................................34

Tr. of Guilty Plea & Sentencing Hr'g, *United States v. Yazaki Corp.*,
   No. 12-20064 (E.D. Mich. Mar. 31, 2012) ....................................................33

Defendants[2] submit this collective memorandum in support of their motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Direct Purchaser Consolidated Amended Class Action Complaint (Doc. No. 86) ("DP CAC") for failure to state a claim upon which relief can be granted.

## I.   SUMMARY OF ARGUMENT

The DP CAC fails to state a claim against any of the Defendants and therefore should be dismissed in its entirety.

First, the Direct Purchaser Plaintiffs ("DPPs") fail to allege sufficient facts to meet the pleading standard set by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). While the DPPs' claims are based on an alleged overarching conspiracy among at least two dozen Defendants (DPPs initially named thirty-one) to fix prices on twelve separate products, the DPPs allege no facts to support their claim of any overarching conspiracy, much less to connect any conspiracy to their own purchases. Although the DP CAC is predictably replete with generic (and legally meaningless) assertions about *unspecified* "meetings" and "agreements" among *unidentified* "Defendants" and their *unnamed* "co-conspirators," regarding *unspecified* products, the DPPs' claims ultimately rest on the existence of government investigations involving only some of the Defendants and the guilty pleas of four others. But the existence of investigations does not relieve the DPPs of their obligation to allege facts to support their claims. Nor do the guilty pleas. Indeed, those pleas do not even touch on the majority of

---

[2] Defendants submitting the Collective Motion and this supporting memorandum include all Defendants named in the above-captioned matters, with the exception of ASMO Co. Ltd., Delphi Automotive LLP, Delphi Automotive Systems, LLC, DPH Holdings Corporation, Delphi Furukawa Wiring Systems LLC, and S-Y Systems Technologies America LLC, which have since been dismissed by the DPPs, and Furukawa Wiring Systems America, Inc., which no longer exists.

the Defendants, and even as to the four Defendants who pled guilty to certain charges, the pleas describe conspiracies entirely different from the overarching conspiracy alleged here.  The four pleas cover not only distinct products, but also involve sales only to a small set of purchasers completely distinct from the DPPs – certain automobile manufacturers, and, in two instances, only *one* automobile manufacturer.  (The same is true with respect to the Japan Fair Trade Commission's cease and desist order.)  *But **none** of the DPPs are automobile manufacturers*.

Further, the DPPs fail to allege what product(s) (if any) each of them actually purchased and from which of the at least two dozen Defendants, making it impossible to link any injury claimed by any of the DPPs to *any* Defendant, much less to anything to which any Defendant pled guilty.  Thus, the DPPs' allegations of government investigations and guilty pleas fail to give rise to a plausible theory that all of the at least two dozen Defendants engaged in a global conspiracy to fix prices of a dozen "Wire Harness Products."  But even if they did allege a plausible conspiracy (and they did not), the DPPs fail to allege anything to reasonably infer that such a conspiracy harmed *them*.  Their claims against all Defendants therefore fail as a matter of law.

Second, the DPPs have failed to allege injury giving rise to a claim for monetary damages under the Sherman Act.  The DPPs admit that any alleged conspiracy had to do with prices charged to automobile manufacturers (rather than the DPPs), and have failed to allege facts showing how they were injured by any such conspiracy.  To the extent the DPPs allege that the prices they paid were derived from a prior agreement between an automobile manufacturer and a Defendant, the DPPs are at most *indirect* purchasers and, as such, are barred from pursuing money damages under the Sherman Act by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

Third, any recovery based on DPPs' purchases of Wire Harness Products prior to November 23, 2007, is barred by the four-year statute of limitations under the Clayton Act. DPPs have failed to satisfy the stringent pleading requirements necessary to establish fraudulent concealment and therefore have failed to properly plead a basis for equitable tolling of the limitations period prior to November 23, 2007.

Finally, DPPs' request for an injunction must be dismissed. DPPs have pled no facts (i) showing any real or immediate threat of future harm or (ii) supporting their bare assertion that there is a "continuing" conspiracy. Moreover, any such claim is implausible in light of the Cease and Desist Orders against several Defendants issued by the Japan Fair Trade Commission ("JFTC") and by the guilty pleas of four of the Defendants in the United States.

For all of these reasons, and as discussed more fully below, the DP CAC must be dismissed as to all Defendants.

## II.     BACKGROUND

### A.     The Products

The DPPs allege that Defendants engaged in an overarching conspiracy with respect to twelve "Wire Harness Products," comprised of wire harnesses and the following allegedly "related products": automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors used in motor vehicles. DP CAC ¶ 10.

### B.     The Parties

The DPPs are seven alleged direct purchasers of "Wire Harness Products." *Id.* ¶¶ 10, 16-22. None are automobile manufacturers. *Id.* ¶¶ 16-22. With respect to each DPP, the DP CAC

identifies its state of incorporation and principal place of business and alleges only that it "purchased Wire Harness Products from one or more of the Defendants during the Class Period." *Id.* ¶¶ 16-22.  The DPPs do not identify which Wire Harness Product(s) they each allegedly purchased, or from which Defendant(s) such purchases were allegedly made.

The DPPs currently identify at least two dozen corporate entities as Defendants (they originally named thirty-one).  *Id.* ¶¶ 23-63.  With respect to each Defendant, the DP CAC identifies its place of incorporation and principal place of business and alleges only that it "manufactured, marketed or sold Wire Harness Products."  The DPPs do not identify which Wire Harness Product(s) each Defendant allegedly manufactured, marketed, or sold.

### C.       The Alleged Conduct

The DPPs contend that Defendants formed an overarching conspiracy dating from "at least" January 1, 2000, until "at least" February 28, 2010, to "rig bids for, and to raise[,] fix, maintain, or stabilize the prices of, Wire Harness Products sold in the United States."  *Id.* ¶ 2.  In support of this contention, the DPPs allege that "Defendants and their co-conspirators":

1. "participated in meetings, conversations, and communications in the United States and abroad to discuss bids and price quotations for Wire Harness Products to be submitted *to automobile manufacturers* in the United States."  *Id.* ¶ 108 (emphasis added).

2. "agreed during those meetings, conversations, and communications to allocate the supply of Wire Harness Products sold *to automobile manufacturers* in the United States on a model-by-model basis."  *Id.* ¶ 109 (emphasis added).

3. "also agreed during meetings, conversations, and communications to coordinate price adjustments requested *by automobile manufacturers* in the United States."  *Id.* ¶ 110 (emphasis added).

4. "submitted bids, price quotations, and price adjustments *to automobile manufacturers* in the United States in accordance with their conspiratorial agreements."  *Id.* ¶ 111 (emphasis added).

5. "held meetings and conversations in the United States to monitor and police the agreed-upon bid-rigging and price fixing conspiracy."  *Id.* ¶ 113.

6. "undertook measures to maintain the secretive nature of their unlawful conduct, including but not limited to, using code names and meeting at private residences or remote locations." *Id.* ¶ 114.

The DPPs provide no details as to these generic, conclusory allegations.

### D.   The Government Investigations and Guilty Pleas

The DPPs allege the existence of government investigations by the United States Department of Justice ("DOJ"), the European Commission, and the JFTC involving certain Defendants. *Id.* ¶¶ 116-22.  The DPPs allege that four of the Defendants (and certain of their employees) have pled guilty to certain charges brought against them. *Id.* ¶¶ 123, 129-32, 134-37. One company, Furukawa Electric Co., Ltd. ("FEC"), pled to a charge pertaining to sales of certain wire harnesses and ten "related products."  Plea Agreement at 3, *United States v. Furukawa Electric Co., Ltd.*, No. 11-20612 (E.D. Mich. Nov. 14, 2011) ("*FEC Plea*") [Ex. A]. A second company, Yazaki Corporation ("YC"), pled to charges concerning sales of certain wire harnesses and ten "related products" that do not entirely overlap with FEC's "related products." Plea Agreement at 4, *United States v. Yazaki Corp.*, No. 12-20064 (E.D. Mich. Mar. 1, 2012) ("*YC Plea*") [Ex. B].  Fujikura Ltd. ("F-Co") pled to a charge pertaining to sales of "wire harnesses" and only four "related products" (only cable bond, automotive wiring connectors, automotive wiring terminals, and fuse boxes) and, even then, only over a period beginning at least as early as January 2006, *not* January 2000.  Plea Agreement at 2-3, *United States v. Fujikura Ltd.*, No. 12-20254 (E.D. Mich. June 21, 2012) ("*F-Co Plea*") [Ex. C].  And DENSO Corporation ("DENSO") pled to a charge that pertains to sales of only one of the twelve "Wire Harness Products" – an electronic control unit known as a "body ECU[]."  Plea Agreement at 4, *United States v. DENSO Corp.*, No. 12-20063 (E.D. Mich. Mar. 5, 2012) ("*DENSO Plea*") [Ex. D].  The pleas by two of the companies (DENSO and F-Co) are limited to sales to a *single* automobile manufacturer. *Id.* [Ex. D]; *F-Co Plea* at 5 [Ex. C].  The pleas by the other two

companies (FEC and YC) are limited to sales to *certain* automobile manufacturers.  *YC Plea* at 4 [Ex. B]; *FEC Plea* at 4 [Ex. A].

The DPPs also reference a JFTC press release describing cease and desist orders ("Orders") the JFTC issued to YC and F-Co.  DP CAC ¶ 133.  The Orders do not concern sales in the United States, involve only four of the at least two dozen Defendants, and reference only four of the twelve products identified in the DP CAC:  wire harnesses, relay boxes, fuse boxes and junction blocks.  Like the guilty pleas, the Orders only reference sales to certain automobile manufacturers (all of which are Japanese companies) and make no reference to sales to the DPPs.

Based upon these allegations, the DPPs allege a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  *Id.* ¶¶ 2, 4, 155-60.  The DPPs seek to bring claims on behalf of themselves and a nationwide class defined as follows:  "All individuals and entities that purchased Wire Harness Products in the United States directly from one or more Defendants or co-conspirators from January 1, 2000 through the present."  *Id.* ¶ 66.

## III.    THE DPPs FAIL TO ALLEGE FACTS STATING A CLAIM

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court made clear that, to survive a motion to dismiss, a complaint alleging an antitrust conspiracy must do more than recite conclusory labels such as "conspiracy" or "agreement."  Rather, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to demonstrate that relief is "plausible on its face."  *Id.* at 555, 570; *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Likewise, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  *In re Travel Agent Comm'n*, 583 F.3d at 903 (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)).

While the court must construe the complaint "in the light most favorable" to the plaintiffs, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 903 (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)) (alteration and internal citation omitted).  When applying this standard to a purported conspiracy in violation of Section 1 of the Sherman Act, the Supreme Court has made clear that an antitrust complaint must contain "allegations plausibly suggesting (not merely consistent with) [an] agreement." *Twombly*, 550 U.S. at 557.  Indeed, a Section 1 complaint must allege "enough factual matter (taken as true) to suggest that an agreement was made."  *Id.* at 556.

The DP CAC fails to allege anything sufficient to support the DPPs' claim of an overarching conspiracy among all of the at least two dozen Defendants with respect to all twelve, or even any, of the Wire Harness Products.  Instead, it impermissibly relies on sweeping, conclusory allegations, rather than on specific factual allegations as to what each Defendant actually did, and is premised ultimately on the existence of government investigations and the guilty pleas of four Defendants relating entirely to conduct directed at *automobile manufacturers*, not the DPPs themselves.  *See In re Florida Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1319-20 (S.D. Fla. 2010) (finding that factual allegations were sufficient to support a claim only as to four of ten defendants and one of three products).  But the existence

of government investigations is flatly insufficient to satisfy the requirements set forth in

*Twombly. See, e.g.*, *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012

WL 2114997, at *6 (E.D. Mich. June 11, 2012) [Ex. E] (dismissing most of plaintiffs' claims and

recognizing cases cited by defendants "wherein district courts have found such allegations

immaterial or irrelevant to whether a complaint sufficiently alleged a conspiracy claim"); *In re*

*Travel Agent Comm'n Antitrust Litig.*, MDL No. 1561, No. 1:03 CV 30000, 2007 WL 3171675,

at *11-12 (N.D. Ohio Oct. 29, 2007), *aff'd* 583 F.3d 896 (6th Cir. 2009) [Ex. F] (dismissing

complaint and finding references to current government investigations to be irrelevant); *In re*

*Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007)

("*GPU*") (investigations "carr[y] no weight in pleading an antitrust conspiracy claim"); *In re*

*Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1205 (N.D. Cal. 2005) (reliance on

government investigations insufficient; plaintiffs must "undertake [their] own reasonable inquiry

and frame [their] complaint with allegations of [their] own design"). And the four guilty pleas

fail not only to support a claim of any overarching conspiracy among all of the at least two dozen

defendants with respect to all, some, or any of the dozen products allegedly at issue, but also fail

to support any claim of any conspiracy directed at, or having any impact on, any of these

particular plaintiffs. The pleas pertained to a variety of products, which were not the same for

each of the Defendants that entered pleas; yet, the DPPs fail to allege anything to link the plea of

any Defendant to the plea of any other, much less to link the Defendants who filed pleas with

any of the Defendants that did not. Just as critically, the pleas all pertain only to sales to

automobile manufacturers; yet, *none* of the DPPs is an automobile manufacturer. Accordingly,

DPPs' conspiracy claim fails to satisfy the "plausibility" requirement established by the Supreme

Court and must be dismissed.

**A.      The DPPs Cannot Satisfy Their Obligations Under *Twombly* By Referring to the Existence of Investigations and Guilty Pleas**

The DPPs' claims ultimately rest on allegations concerning the existence of certain government investigations and the guilty pleas of four Defendants.  DP CAC ¶ 116-22.  Without more, those investigations and limited guilty pleas do not lend plausibility to the DPPs' allegations of an overarching conspiracy among any (much less all) of the Defendants with respect to any of the dozen products at issue.  *See, e.g.*, *In re Refrigerant Compressors*, 2012 WL 2114997, at *7-8 [Ex. E]; *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975, 979 (N.D. Iowa 2011); *In re Tableware*, 363 F. Supp. 2d at 1205 (invoking a government investigation is insufficient to fulfill the pleading requirements of Fed. R. Civ. P. 8); *see also In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1009 (E.D. Mich. 2010) (government investigations are "not determinative standing alone").  Nor do they support any claims by these particular plaintiffs.

1.      DPPs' reliance on investigations does not satisfy their pleading requirement under *Twombly*

With respect to those Defendants merely under investigation, the DP CAC provides no factual support whatsoever as to any alleged conspiracy.  Simply saying "me too" as an alleged victim following a government investigation of an industry is not sufficient to state a claim.  *In re Tableware,* 363 F. Supp. 2d at 1205.  Because "[i]t is unknown whether the investigation will result in indictments or nothing at all . . . the scope of the investigation is pure speculation . . . . The grand jury investigation is a non-factor."  *GPU*, 527 F. Supp. 2d at 1024; *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (allegations regarding grand jury investigation of SRAM industry do not support claim defendants engaged in conspiracy to fix SRAM prices).  The mere fact that a defendant is under investigation by the government, standing alone, simply does not make an antitrust conspiracy

plausible. *See, e.g.*, *In re Bath & Kitchen Fixtures Antitrust Litig.*, Master Docket No. 05-cv-00510 MOM, 2006 WL 2038605, at *2, *7 (E.D. Pa. July 19, 2006) [Ex. G] (existence of investigations of defendants for anticompetitive activities insufficient to state claim); *In re Tableware*, 363 F. Supp. 2d at 1205. Rather, plaintiffs are charged with performing a "reasonable inquiry" to "frame" their own allegations and to set forth a "plausible" basis for their specific claims as required under *Twombly*. *In re Tableware*, 363 F. Supp. 2d at 1205. In some instances, DPPs do not even allege what specifically the government is investigating. *See* DP CAC ¶¶ 116, 117 (failing to identify products to which investigations relate). Here, even with four guilty pleas, the DPPs have failed to set forth factual allegations sufficient to survive a motion to dismiss.

      2.     <u>The four guilty pleas are discrete and divorced from the overarching conspiracy the DPPs allege</u>

Although government investigations have yielded guilty pleas for four Defendants – DENSO, F-Co, FEC, and YC – none of those pleas suggest the overarching conspiracy alleged here. DP CAC ¶¶ 123, 128-32, 134-37. For each of these four Defendants, its plea may be prima facie evidence of its own conduct as set forth in the plea, 15 U.S.C. §16(a), but that is of little relevance to either the claims asserted here or these particular plaintiffs. On their face, the pleas pertain to conduct concerning different products (not an overarching conspiracy concerning all two dozen Defendants and all twelve products) and certain automobile manufacturers (not an overarching conspiracy with respect to all automobile manufacturers, and no conspiracy at all as to any of these plaintiffs).

Two of the four pleas have no connection at all to the majority of the so-called Wire Harness Products. DENSO's plea concerned only certain electronic control units (a type known as a "body ECU") and none of the eleven other Wire Harness Products. *DENSO Plea* at 4

[Ex. D].  In fact, nowhere in DENSO's plea is the term "wire harness" even mentioned.  F-Co's plea concerned only five of the twelve "Wire Harness Products:"  wire harnesses, cable bond, automotive wiring connectors, automotive wiring terminals, and fuse boxes.  *F-Co Plea* at 3 [Ex. C].[3]  Critically, F-Co's plea does not even mention electronic control units of any kind, much less "body ECUs" – the only alleged Wire Harness Product covered by the DENSO plea agreement.  FEC's and YC's pleas also did not concern all twelve Wire Harness products.  *FEC Plea* at 4 [Ex. A]; *YC Plea* at 4 [Ex. B].  In addition, two of the pleas are limited to certain automobile manufacturers, and the other two are further limited to a single automobile manufacturer.  Moreover, while three of the pleas involve the January 2000 to January or February 2010 time frame, F-Co's plea is limited to the January 2006 to February 2010 time frame, *F-Co Plea* at 3 [Ex. C].

Just as importantly, *none* of the pleas say *anything* about the conduct of any of the other Defendants.  Thus, whatever value the pleas may have with respect to a claim against any one of these four Defendants by an *automobile manufacturer* that had purchased one or more of the products that were the subject of a plea, they provide no factual basis for any claim regarding those products against a Defendant that did not plead guilty, much less any factual basis for the claim alleged here by the DPPs – a global conspiracy by all the Defendants with respect to all of the products allegedly sold to DPPs which are not automobile manufacturers.  *See, e.g., In re*

---

[3] F-Co's plea agreement was unavailable at the time the DPPs filed the DP CAC.  However, the DPPs' reference to an April 23, 2012, DOJ press release for the proposition that F-Co agreed to plead guilty to conduct relating to sales of all Wire Harness Products is misleading.  The press release simply notes that F-Co would plead guilty with respect to sales of "wire harnesses and related products."  The press release does not define "related products" – and in fact, the resulting plea defines "related products" to include only four additional products, not eleven additional products, as the DPPs would have this Court believe.

*Refrigerant Compressors*, 2012 WL 2114997, at *7-8 [Ex. E] (guilty pleas alone are insufficient to maintain a claim as to non-pleading defendants).

Indeed, the DP CAC includes a chart illustrating the market share of certain Defendants in the wire harness industry.  It is telling that this chart does not include two of the Defendants at all – DENSO and Tokai Rika.  See DP CAC ¶ 101.  (As mentioned above, DENSO's plea also made no mention of wire harnesses.)  It is unclear, then, how there could be an overarching conspiracy when the DPPs have not alleged (nor could they) that all Defendants even make each of the products at issue.  *See United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986) (in bid-rigging and price fixing cases where "the disputed issue is the existence or scope of the alleged horizontal agreement that is to be inferred from circumstantial evidence, the first inquiry must be whether or not each firm alleged to have been a party to it was an actual or potential competitor in that market"); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2011 WL 3894376, at *6 (N.D. Cal. Aug. 3, 2011) [Ex. H] (rejecting alleged conspiracy to fix prices of multiple "ODD Products" as implausible because such a conspiracy would "suggest that [defendants] have somehow agreed with unnamed parties to fix the prices of products each sells").

Likewise, the pleas also fail to support any claim by *these* particular plaintiffs.  The DP CAC fails to identify which, if any, of the twelve Wire Harness Products each DPP allegedly purchased and from which, if any, of the Defendants.  For example, there is no indication in the DP CAC that any of the DPPs purchased any product from any of the four Defendants that have entered into a plea, much less purchased a product covered by the particular Defendant's plea.  Moreover, while all of the pleas are limited to certain automobile manufacturers, the DPPs are *not* automobile manufacturers.  *See* DP CAC ¶¶ 16-22.  The DPPs gloss over these and other

distinctions between their allegations and the guilty pleas by undifferentiated allegations regarding "Wire Harness Products," "automobile manufacturers" (they also use the term "OEMs"), and "Defendants" and fail to provide the necessary linkage between the pleas and their own claims.

Courts have consistently dismissed complaints where the plaintiffs failed to link guilty pleas with specific allegations in the complaints. *See, e.g.*, *In re Iowa Ready-Mix Concrete*, 768 F. Supp. 2d at 975, 979; *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 505 (S.D.N.Y. 2009). In *In re Iowa Ready-Mix Concrete*, a closely analogous case, plaintiffs alleged a conspiracy between eight defendants supported only by three individual defendants' guilty pleas. 768 F. Supp. 2d at 965-66. The individuals pled that they had conspired to fix prices "with certain competitors" *Id.* at 966. The complaint, however, offered no factual allegations to link the pleas to the claims against the eight defendants. Instead, as here, other than referring to the pleas, plaintiffs made only conclusory assertions that all eight defendants held "secret meetings" and reached "agreements." *Id* at 974-75. With no specific factual allegations linking the pleas of bilateral conduct to an overarching conspiracy among all defendants, the court dismissed the complaint. *Id.* at 975, 979 (distinguishing *In re Packaged Ice* and noting, "[w]hat is missing in this case . . . is the 'larger picture' from which inferences of a wider conspiracy can be drawn from guilty pleas to separate bilateral conspiracies"). *See also Hinds Cnty.*, 620 F. Supp. 2d at 505, 515 (dismissing complaint as to defendants against whom the complaint made no specific factual averment of involvement in the alleged conspiracy where plaintiffs relied on an admission of guilt from one of the thirty-four defendants).[4]

---

[4] The court in *Hinds County* granted leave to amend the complaint, and plaintiffs subsequently cured the defects such that the court denied a second motion to dismiss. *See Hinds Cnty. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378 (S.D.N.Y. 2010). Notably, the new complaint

Footnote continued on next page

Guilty pleas have contributed to the plausibility of a complaint only when bolstered by significant factual allegations linking the complaints and the pleas – facts that are conspicuously absent here.  *See In re Packaged Ice*, 723 F. Supp. 2d at 1009; *SRAM*, 580 F. Supp. 2d at 902.  In *In re Packaged Ice*, the court held that guilty pleas were properly considered where they were part of the "larger picture" that included detailed factual statements from a named former executive of one of the defendants "supported in great detail" by alleged expected testimony of "numerous confidential witnesses," each identified by the positions they held in the defendant companies, providing details of specific meetings attended by specific defendants and details of the terms of the agreements made at those meetings to allocate identified territories and customers.  723 F. Supp. 2d at 1011-14; *see also SRAM*, 580 F. Supp. 2d at 903 (finding guilty pleas in the DRAM market lent plausibility to a conspiracy in the SRAM industry where plaintiffs alleged that the same decision makers handled both products and alleged specific email communications between defendants and internal communications containing information obtained from other defendants with respect to SRAM).

The contrast between the allegations here and those in the complaints in *Packaged Ice* and *SRAM* could hardly be more stark.  There is no linkage of any sort between the pleas and the DPPs' claims, much less any detailed factual allegations to support an inference of any such linkage.[5]  Unlike *Packaged Ice* and *SRAM*, guilty pleas and investigations are not part of any "larger picture" here; rather, they are the sole premise of DPPs' entire complaint.

---

Footnote continued from previous page
contained numerous additional factual allegations, such as testimony from confidential witnesses, facts regarding specific communications and meetings, and details regarding the terms of the agreements.  *Id*. at 387-88.

[5] The DPPs also reference a JFTC press release describing Orders issued to YC and F-Co.  DP CAC ¶ 133.  Although the Orders link the conduct of four of the named Defendants (YC, F-Co, FEC, and Sumitomo Electric Industries), these Orders, like the guilty pleas, do not support an

Footnote continued on next page

## B.     The DPPs Fail to Allege Facts to Support Their Claim of an Overarching Conspiracy

The DP CAC is utterly devoid of any actual factual allegations to support the DPPs'

claim of an overarching conspiracy.  Other than the government investigations and guilty pleas,

the DPPs' claims are premised on a core set of conclusory assertions:  that all of the Defendants

and their unnamed co-conspirators "participated in meetings, conversations, and

communications" to "discuss bids and price quotations for Wire Harness Products to be

submitted to automobile manufacturers;" that they "agreed during those meetings, conversations,

and communications" to "allocate the supply of Wire Harness Products sold to automobile

manufacturers" and "to coordinate price adjustments requested by automobile manufacturers;"

and that they "submitted bids, price quotations, and price adjustments to automobile

manufacturers . . . in accordance with their conspiratorial agreements."  DP CAC ¶¶ 108-11.

The DP CAC does not identify a single "meeting," "conversation," or "communication" –

it does not identify when or where or specifically between or among whom any such meetings

occurred.[6]  Nor does the DP CAC include a single fact concerning any alleged "agreement"

---

Footnote continued from previous page

inference of the overarching conspiracy the DPPs allege.  Indeed, as an initial matter, these
Orders are divorced from the allegations in the DP CAC because they concern sales in Japan.
The Orders concern only four of the at least two dozen Defendants and sales to only certain
*automobile manufacturers* (according to the press release, Toyota, Daihatsu, Honda, Nissan, and
Fuji, none of which is a plaintiff here).  The Orders also relate to only four of the twelve "Wire
Harness Products," specifically excluding "body ECUs," the subject of DENSO's plea, and any
other product manufactured or sold by DENSO.  The DPPs simply fail to allege any facts to link
either the JFTC press release or the Orders to their own claims.  *See infra* n. 13 (describing
Orders and press releases and Court's authority to consider same).

[6] None of these defects are cured by the DPPs' unremarkable allegation that some (unidentified)
Defendants attended the same public trade shows, such as the North American International Auto
Show, which allegedly created "opportunit[ies] to meet."  DP CAC ¶ 106.  As a matter of law,
such routine industry activities are entirely consistent with legitimate business activity, and thus
provide no "further factual enhancement" to create an inference of conspiracy.  *See Twombly*,
550 U.S. at 557, 567 n.12; *In re Travel Agent Comm'n*, 583 F.3d at 911 (citing *Iqbal*, 129 S. Ct.
at 1950) ("[P]resence at such trade meetings is more likely explained by . . . lawful, free-market
behavior.").

reached – it does not identify a single RFQ that was ever allocated, or a single price that was ever agreed upon or adjusted regarding any product.  DPPs also do not allege a single fact showing that any such "agreement" had anything to do with them – the DP CAC does not identify any specific product that any DPP actually bought (or from whom) at any price, much less at a price impacted by an alleged conspiracy involving conduct directed at automobile manufacturers, *not* the DPPs.

As the Supreme Court held in *Twombly*, "a conclusory allegation of agreement at some unidentified point does not supply the facts adequate to show illegality."  550 U.S. at 557; *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 455 (6th Cir. 2012) ("To survive a motion to dismiss, [plaintiffs'] allegations must be specific enough to establish the relevant 'who, what, where, when, how, or why.'" (quoting *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008))); *In re Travel Agent Comm'n*, 583 F.3d at 905 (dismissing complaint and finding that the term "agreement" without additional factual enhancement was "nothing more than a legal conclusion 'masquerading' as a factual allegation") (internal quotes omitted); *In re Elevator Antitrust Litig*., 502 F.3d 47, 50-51 (2d Cir. 2007) ("averments of agreements made at some unidentified place and time" not sufficient to state a claim).  The very same thing can be said of the allegations here.  Notwithstanding their clear obligations under *Twombly*, the DPPs offer no specifics of the terms, timing, or parties to any agreement or any other details that would suggest a plausible overarching conspiracy of the type and scope they allege.  *See, e.g.*, *In re Packaged Ice*, 723 F. Supp. 2d at 997-98, 1012-14 (detailed allegations of expected testimony from witnesses identified by name and/or job title regarding specific geographic areas in which parties agreed they would not compete supported plausibility of a nationwide conspiracy to allocate markets).

For example, the DPPs have failed even to allege which of the twelve Wire Harness Products each Defendant actually sells. Nor did they allege that all of the Defendants even make most of the products the DPPs include in their definition of "Wire Harness Products" (nor could they do so in good faith). In fact, the allegations of the DP CAC indicate to the contrary – that the Defendants do *not* make the same products.

### C. The DP CAC Fails to Differentiate Between Any of the at Least Two Dozen Defendants

Even assuming *arguendo* that the DPPs alleged facts otherwise sufficient to state a claim based on an overarching conspiracy (which they have not), they utterly fail to indicate which of the at least two dozen Defendants actually participated in the conspiracy. This deficiency is reason alone to dismiss the DP CAC. *See Total Benefits Planning Agency*, 552 F.3d at 436; *In re Refrigerant Compressors*, 2012 WL 2114997, at *7-8 [Ex. E]; *Mich. Div.-Monument Builders of N.A. v. Mich. Cemetery Assoc.*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("*TFT-LCD*").

Indeed, for many of the Defendants, the DPPs fail to allege facts other than the Defendant's place of incorporation, corporate affiliation, and participation in the industry.[7] Such allegations clearly fall short of the DPPs' pleading requirements. *See Twombly*, 550 U.S. at 555; *Hinds Cnty.*, 620 F. Supp. 2d at 512 (such allegations were "insufficient to state a § 1 claim because those allegations merely aver that these Joint Defendants were involved in the sale of" the product); *In re Travel Agent Comm'n*, 2007 WL 3171675, at *4 [Ex. F] (dismissing

---

[7] DPPs have made no specific and individualized factual allegations other than market participation and corporate affiliation regarding the following Defendants: Fujikura America, Inc. ("FAI") (DP CAC ¶ 33); Kyungshin-Lear Sales and Engineering, LLC ("KL Sales") (*id.* ¶ 40); Lear Corporation ("Lear") (*id.* ¶¶ 39-42); Leonische Holding Inc. (*id.* ¶ 45); Leoni Wire Inc. (*id.* ¶ 47); Leoni Wiring Systems, Inc. (*id.* ¶ 44); and Tokai Rika Co., Ltd. (*id.* ¶¶ 61-62). FAI, KL Sales, Lear, the Leoni entities, and Tokai Rika Co., Ltd. have filed separate motions to dismiss on this point.

complaint where there was no allegation of "specific action taken" by that defendant); *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 218-19 (S.D.N.Y. 1998) ("[Plaintiff] cannot rely on its allegation that . . . another defendant engaged in monopolistic practices . . . to satisfy its requirement that [affiliated companies] too [engaged in such conduct].").

Beyond that, the DPPs just vaguely reference "Defendants and their co-conspirators" throughout their complaint.  DP CAC ¶¶ 107-14.  In so doing, DPPs merely group all of the Defendants together without providing any facts to show that each Defendant participated in the alleged conspiracy.  As the Sixth Circuit has held, such "[g]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy was specifically rejected in *Twombly*" and is thus insufficient to allege an antitrust conspiracy claim. *Total Benefits Planning Agency*, 552 F.3d at 436; *see also In re Refrigerant Compressors*, 2012 WL 2114997, at *7-8 [Ex. E]; *Mich. Div.-Monument Builders*, 458 F. Supp. 2d at 485; *In re TFT-LCD*, 586 F. Supp. 2d at 1117.

In *TFT-LCD*, the court dismissed plaintiffs' complaint where they failed to differentiate between particular defendants, referring instead to defendants by nationality (e.g., the "Japanese defendants," the "Korean defendants," or the "Taiwanese defendants") or by corporate family (e.g., "Hitachi").  586 F. Supp. 2d at 1117.  As the court held, such generalization was insufficient to put specific defendants on notice of the claims against them.  *Id.*[8]  By referring simply to "Defendants and their co-conspirators," the DPPs here fail to achieve even that level of specificity as to each Defendant's participation and role in the alleged conspiracy.  DP CAC ¶¶ 107-14; *see also Carrier Corp.*, 673 F.3d at 445 ("[Plaintiffs] must 'specify how [each]

[8] With the exception of the Defendant-specific allegations referenced in footnote 7, the DPPs' allegations against the Defendants listed in footnote 7 are alleged with respect to the entire corporate family.  Not only are such "group" allegations insufficient, but they typically involve nothing more than further allegations of market participation.

defendant [was] involved in the alleged conspiracy.'" (quoting *In re Travel Agent Comm'n*, 583 F.3d at 905)); *Mich. Div.-Monument Builders*, 458 F. Supp. 2d at 485 (dismissing antitrust conspiracy claim where plaintiffs used the term "defendants" to apply to numerous parties without specific allegations as to the individual defendants); *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009) (under *Twombly*, plaintiffs must allege "sufficiently independent participation in the conspiracy" on the part of each defendant); *Lubic v. Fidelity Nat'l Fin., Inc.*, No. C08-0401 MJP, 2009 WL 2160777, at *5 (W.D. Wash. July 20, 2009) [Ex. I] ("A 'complaint must allege that each individual defendant joined the conspiracy and played some role in it because at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'" (quoting *TFT-LCD*, 586 F. Supp. at 1117)).

The pleading requirements set forth by the U.S. Supreme Court in *Twombly* are not a mere technicality.  Allowing the DPPs to proceed against at least two dozen Defendants regarding twelve separate products where they have failed to provide even the most basic facts about the alleged overarching conspiracy, let alone link any such conspiracy to their own purchases, exemplifies the very concerns highlighted in *Twombly*.  There, the Court aptly recognized that "[t]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Twombly*, 550 U.S. at 558.  Before embarking upon discovery, the Court should "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528, n.17 (1983)); *see also In re Refrigerant Compressors*, 2012 WL 2114997, at *7-8 [Ex. E]; *Mich. Div.-Monument Builders*, 458 F. Supp. 2d at 485.  This is just as

true where certain Defendants have pled guilty.  The fact that four Defendants have pled guilty does not justify imposing the extraordinary costs of discovery in a case of this nature on the other Defendants.  And, even as to the four Defendants who have pled guilty, they should not be required to bear such costs with respect to claims that have no linkage to either their own pleas or the pleas of the other Defendants, much less any linkage to the plaintiffs themselves.  Requiring complaints to satisfy *Twombly* helps to ensure that party and judicial resources are not squandered on theoretical or hypothetical claims for which a plaintiff has no good faith factual basis, and that the parties and the court focus instead on claims for which there is at least plausible viability.

**IV.   THE "DIRECT PURCHASER" PLAINTIFFS' DAMAGE CLAIMS SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO ALLEGE INJURY GIVING RISE TO A CLAIM FOR DAMAGES UNDER THE SHERMAN ACT**

The DPPs admit that any conspiracy was directed at automobile manufacturers, rather than the DPPs, *see* DP CAC ¶¶ 108-12 (alleging agreements concerning sales "to automobile manufacturers"), and fail to allege facts sufficient to show how they were harmed by any such conspiracy, much less in a manner giving rise to a claim for damages under the Sherman Act.  In describing the procurement process used by "motor vehicle Original Equipment Manufacturers ("OEMs")" – i.e., automobile manufacturers – the DPPs expressly allege that the prices at which the Wire Harness Products are sold are determined "at prices established by the OEMs and Defendants," *id.* ¶ 98, pursuant to an "RFQ" process initiated and controlled by the automobile manufacturers.  *Id.* ¶¶ 92-97.  The DPPs are admittedly not "OEMs" (i.e., they are not automobile manufacturers).

The DPPs do not allege facts as to their own purchases, but do allege that "[s]uppliers to OEMs have been required to directly purchase Wire Harness Products from Defendants at prices established by the OEMs and Defendants in the bidding process."  *Id.* ¶ 98.  Even assuming this

allegation is intended to refer to the DPPs' own purchases (which is not clear given that the DPPs do not even allege that they were "suppliers to OEMs"), it is far from sufficient to state a claim under the Sherman Act.  The DPPs fail to allege who "required" them to purchase Wire Harness Products from Defendants pursuant to an agreement reached between a Defendant and an automobile manufacturer, *e.g.*, whether an automobile manufacturer required them to do so and, if so, which automobile manufacturer.  The DPPs also fail to allege any link between the prices they paid as suppliers to automobile dealers and any illegal conspiracy or how they were harmed by any such purchase.  At most, the DPPs allege that an automobile manufacturer negotiates a price with a Defendant, but then for its own purposes chooses to have its supplier purchase the part under the agreement between the automobile manufacturer and the Defendant. The DPPs fail to allege how they would have been harmed under such circumstances, even if any of them were such a supplier.

Indeed, under such circumstances, if the DPPs' alleged harm is derived from an overcharge contained in an antecedent transaction between the Defendants and a third party, the DPPs are not truly "direct purchasers" in any economic sense and thus may not maintain a claim for damages under the Sherman Act.  *See Ill. Brick Co. v. Illinois,* 431 U.S. 720 (1977).  By definition, an "indirect purchaser . . . is one who bears some portion of a monopoly overcharge only by virtue of an antecedent transaction between the monopolist and another, independent purchaser."  *Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1169-70 (8th Cir. 1998); *cert. den.* 525 U.S. 1102 (1999).  Here, to the extent the DPPs allege that the prices they paid for Wire Harness Products were determined – not by them – but by an antecedent transaction between a Defendant and an automobile manufacturer, they are indirect purchasers.

*Campos* makes clear that even if the DPPs were allegedly "required" to purchase Wire Harness Products from Defendants "at prices established by the OEMs and Defendants in the bidding process" and allegedly paid inflated prices, that does not make them direct purchasers. 140 F.3d at 1171 ("[W]e do not find billing practices to be determinative of indirect purchaser status."). In *Campos*, plaintiffs were concert ticket buyers who were allegedly overcharged by Ticketmaster for concert ticket service fees. *Id*. The plaintiffs claimed to be direct purchasers because they dealt with and paid only Ticketmaster. Although acknowledging that the plaintiffs had direct dealings with Ticketmaster, the Eighth Circuit concluded that they were actually indirect purchasers within the meaning of *Illinois Brick* because the overcharge that they allegedly paid was the result of an antecedent transaction between Ticketmaster and the concert venue. Because the plaintiffs' service fees arose out of the allegedly anticompetitive agreements between Ticketmaster and the venues – a transaction with which the plaintiffs were not involved – plaintiffs were more appropriately classified as indirect purchasers. "[S]uch derivative dealing is the essence of indirect purchaser status, and it constitutes a bar under the antitrust laws to the plaintiffs' suit for damages." *Id.*; *cf. In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647, 653-54 (E.D. Mich. 2011) (declining to carve out an exception to *Illinois Brick* (citing *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990)).

The same is true here. The DPPs only purchased the Wire Harness Products at allegedly inflated prices because the automobile manufacturers first agreed to those prices in separate, prior transactions with Defendants. As a result, their dealings with Defendants, like those in *Campos*, are strictly derivative and their damage claims under § 1 of the Sherman Act must be dismissed.

## V.   THE STATUTE OF LIMITATIONS BARS THE DPPs' CLAIMS ACCRUING BEFORE NOVEMBER 23, 2007

The Clayton Act imposes a four-year statute of limitations on the DPPs' claims.

15 U.S.C. § 15(b).  Martinez Manufacturing, Inc. filed the first direct purchaser complaint on November 23, 2011.  The DPPs have not alleged that they purchased any Wire Harness Product from any Defendant during the four-year limitations period, *see* p. 12, *supra*, and are barred by statute from recovery on any claim that is based on their purchases of such products prior to November 23, 2007.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189-90 (1997).

The DPPs nevertheless seek to recover damages for purchases during a putative "Class Period" that dates back "at least as early as January 1, 2000," or almost eight years prior to the start of the limitations period.  DP CAC ¶¶ 1-2.  The DPPs allege that they are entitled to recover damages far beyond the four-year limitations period because the running of the statute should be tolled under the equitable doctrine of fraudulent concealment.  But the DPPs cannot avoid dismissal of stale claims simply by asserting fraudulent concealment.  *See Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1336 (6th Cir. 1995) (holding that equitable tolling is "narrowly applied" in the most restricted circumstances).

In the seminal antitrust case *Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445 (6th Cir.), *cert. denied,* 488 U.S. 880 (1988), the court observed that because statutes of limitation are "'favored in the law,' the plaintiff who invokes the doctrine of fraudulent concealment 'will be held to stringent rules of pleading and evidence'. . . ."  *Id*. at 1465 (quoting *Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 139-40 (1879)).  To meet these "stringent" pleading rules, and

> [t]o toll the statute, the plaintiff must allege in the complaint that:  (1) the defendant concealed the conduct that constitutes the cause of action; (2) defendant's concealment prevented plaintiff from discovering the cause of

action within the limitations period; and (3) until discovery plaintiff exercised due diligence in trying to find out about the cause of action.

*Id*. (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)). Such allegations must satisfy Federal Rule of Civil Procedure 9(b). *Dayco*, 523 F.2d at 394.

Thus, to toll the limitations period here, the DPPs must allege with particularity (i) the affirmative steps, if any, Defendants wrongfully took to conceal the DPPs' alleged cause of action from them, and (ii) the due diligence, if any, they undertook to discover Defendants' alleged misconduct. *See Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009); *Pinney*, 838 F.2d at 1465, 1472. The DP CAC fails to satisfy the Sixth Circuit's stringent pleading requirements in either respect.

### A. The DPPs Fail to Plead Affirmative Acts of Concealment

To plead fraudulent concealment, the DPPs must first allege specific affirmative acts of concealment by Defendants. *Carrier*, 673 F.3d at 446 ("plaintiff must point to 'affirmative acts of concealment'") (citing *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 319 (6th Cir. 2007)); *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004) (fraudulent concealment requires showing that defendants took "active steps," such as fraudulent statements or "hiding evidence"). Such acts must be "separate from the alleged price-fixing conspiracy itself" and "conceal[] the means for discovering plaintiffs' claims." *In re Refrigerant Compressors*, 795 F. Supp. 2d at 663 (citing *Bridgeport*, 371 F.3d at 891); *Hentosh v. Herman M. Finch Univ. of Health Scis.*, 167 F.3d 1170, 1174 (7th Cir. 1999) (fraudulent concealment requires "efforts by the defendant – above and beyond the wrongdoing upon which the plaintiff's claim is founded – to prevent the plaintiff from suing in time").

As a result, allegations that a price fixing conspiracy was "inherently self-concealing" or that the conspirators met secretly or kept silent are insufficient. "'[M]ere silence or

unwillingness to divulge wrongful activities is not sufficient.' . . .  Instead, there must be some 'trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Carrier*, 673 F.3d at 446-47 (internal citation omitted) (quoting *Pinney,* 838 F.2d at 1467).

The DP CAC ignores these principles.  It alleges that (i) Defendants' "conspiracy was by its nature inherently self-concealing," and (ii) Defendants' "wrongful conduct was carried out . . . through means and methods that were designed to avoid detection," including (iii) "using code names and meeting at private residences or remote locations."  DP CAC ¶¶ 140, 147-48.  But these allegations of passive conduct that is indistinguishable from the conduct upon which the DPPs rely to establish the alleged conspiracy itself fail to toll the limitations period.  *Refrigerant*, 795 F. Supp. 2d at 664-65; *Dry Cleaning & Laundry Inst. of Detroit, Inc. v. Flom's Corp.*, 841 F. Supp. 212, 217-18 (E.D. Mich. 1993).  "Such [allegations] of clandestine meetings and telephone conversations [are] not sufficient to establish the requisite 'affirmative acts' of fraudulent concealment."  *Dry Cleaning*, 841 F. Supp. at 218.

The DPPs' allegations also miss the mark because the DPPs were not the targets of the alleged "self-concealing" conspiratorial conduct.  The DP CAC alleges instead that the conspiracy was directed at automobile manufacturers.  DP CAC ¶¶ 108-11.[9]  The only plausible inference to be drawn from the DP CAC is that the "means and methods" allegedly used by Defendants were designed to avoid suspicion by those automobile manufacturers receiving bids and prices from Defendants, not by the DPPs, none of which is an automobile manufacturer or

---

[9] For example, the DPPs allege that Defendants (i) "participated in meetings, conversations, and communications . . . to discuss bids and price quotations for Wire Harness Products *to be submitted to automobile manufacturers*," and (ii) "*submitted* bids, price quotations, and price adjustments *to automobile manufacturers* . . . in accordance with their conspiratorial agreements."  DP CAC ¶¶ 108, 111 (emphasis added); *see also* Section III, *supra*.

alleges that it received bids and prices directly from any Defendant.  *See id*. ¶¶ 16-22, 92-98, 107-12.

Thus, even if such "means and methods" could properly be characterized (which they cannot) as the requisite "affirmative acts" of concealment with respect to those automobile manufacturers, the DPPs have not alleged facts sufficient to allege that *they* were prevented from discovering Defendants' alleged misconduct or their own alleged causes of action.  "Application of equitable estoppel 'should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon.'"  *Bridgeport*, 371 F.3d at 891 (quoting *Hentosh*, 167 F.3d at 1174); *see also In re Magnesium Oxide Antitrust Litig*., Civ. No. 10-5943 (DRD), 2012 WL 1150123, at *9 (D.N.J. Apr. 5, 2012) [Ex. J] ("Plaintiffs could not plausibly have been misled by Defendants' justifications or any self-concealing aspect of the MgO conspiracy."); *Sinclair Oil Corp. v. Atl. Richfield Co.*, 720 F. Supp. 894, 908 (D. Utah 1989) ("The defendant must act to hide the cause of action and the plaintiff must not find it *because* it was hidden.  Only in such a causal circumstance does the equitable fraudulent concealment tolling principle make sense.") (emphasis in original).[10]

---

[10] The *Pinney* court noted in *dictum* that in *Ingram Corp. v. J. Ray McDermott & Co.*, No. 79-2575, 1980 WL 1819 (E.D. La. Jan. 10, 1980) [Ex. K], *rev'd on other grounds,* 698 F.2d 1295 (5th Cir. 1983), the court found that certain specific conduct alleged in connection with rigged bids on public construction projects was sufficient in that case to plead affirmative acts of concealment.  838 F.2d at 1473.  But *Ingram* is inapposite here.  Not only is the DP CAC devoid of such specific allegations, defendants in *Ingram*, unlike this case, allegedly acted to conceal their misconduct from plaintiff, a competitor of defendants, whom plaintiff claimed had conspired to destroy its business and force a sale of its assets to one of them.  Other courts have held that bid rigging is not *per se* an affirmative act of concealment.  *State of Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1531 (5th Cir. 1988) (finding that bid rigging is not inherently self-concealing for purposes of determining fraudulent concealment); *In re Fertilizer Antitrust Litig.*, No. MF-75-1, 1979 WL 1690, at *8 (E.D. Wash. Sept. 14, 1979) [Ex. L] ("The submission of bids is merely failure to disclose the existence of a possible claim for relief, and that does not constitute an affirmative act of concealment.").

Apparently for this reason, the DPPs also allege that Defendants concealed their alleged price-fixing conspiracy by "represent[ing] publicly, both to customers and otherwise, that their pricing and bidding activities were unilateral" and that "those false representations . . . misled Plaintiffs and members of the Class . . . ."  DP CAC ¶ 139.  However, these allegations are deficient because they lack the particularity and "distinct averments" required by Rule 9(b). Since the DPPs allege they were misled by, and thus must have received, the purported misrepresentations, they cannot claim they are not in a position to provide the requisite particulars.  *Carrier*, 673 F.3d at 446-47 ("A plaintiff must plead the factual allegations underlying a claim of fraudulent concealment with particularity.").  Instead, the DPPs impermissibly lump all Defendants together, without pleading any facts identifying which Defendant told which DPP what about pricing terms, or when, where or how these allegedly false statements were made.  *See id*. at 447 (allegation that defendants "'[gave] false and pretextual reasons for . . . pricing . . . during the Relevant Period and [described] such pricing falsely as being the result of competitive factors rather than collusion'. . . lacks the requisite particularity, as it fails to specify 'the time, place, and content of the alleged' fraudulent acts"); *Refrigerant*, 795 F. Supp. 2d at 665 (plaintiffs "do not identify which of the Defendants such misrepresentations are attributed to" or "when these representations were made").

Finally, the DPPs fail to aver whether any of the unidentified individuals who allegedly made the unspecified false representations to any of the DPPs knew about the alleged price fixing.  This, too, is fatal to pleading affirmative concealment, because if "the salespersons were unaware that defendants were engaging in any [alleged] price-fixing," then "the statements attributed to the salesmen cannot be considered as affirmative acts of concealment on the part of defendants."  *Dry Cleaning*, 841 F. Supp. at 218; *accord Refrigerant*, 795 F. Supp. 2d at 665.

B.      **The DPPs Fail to Plead Due Diligence**

To equitably toll the statute of limitations, the DPPs must also plead with particularity that they met their "positive duty to use diligence in discovering [their] cause of action within the limitations period." *Dayco*, 523 F.2d at 394. To satisfy this requirement, the DPPs must "fully plead the facts and circumstances surrounding [their] belated discovery and the delay which has occurred must be shown to be consistent with the requisite diligence." *Id.* (internal quotation marks omitted). In this respect, "any fact that should excite [a plaintiff's] suspicion is the same as actual knowledge of [their] entire claim." *Id.* Accordingly, a plaintiff does not properly allege due diligence "without asserting what steps were taken" to discover the cause of action. *Id.*

Here, the DPPs allege only that they "did not learn or discover the operative facts giving rise to their claims, *despite due diligence*," until "February 2010, when the antitrust investigations of the Wire Harness Products manufacturers became public," and that they "did not and could not have discovered" Defendants' alleged misconduct "at any earlier date, *despite due diligence*." DP CAC ¶¶ 138, 152 (emphasis added). The DPPs do not allege any facts to show that they "diligently sought" to discover the price-fixing conspiracy for which they now seek damages. Such bare, conclusory allegations are insufficient to satisfy the "due diligence" prong of fraudulent concealment. *Refrigerant*, 795 F. Supp. 2d at 666 ("the 'mere allegation of due diligence without asserting what steps were taken is insufficient'" (quoting *Dayco*, 523 F.2d at 394)); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 138 F. Supp. 2d 25, 28-29 (D. Me. 2001) (same); *Iron Workers Local Union No. 70 Ins. Fund v. Philip Morris Inc.*, 29 F. Supp. 2d 801, 809 (N.D. Ohio 1998) (plaintiff failed to plead due diligence with specificity and thus "cannot use the fraudulent concealment exception to escape the statute of limitations").

The DPPs do allege that they "studied prices of the specific products involved" in purchasing wire harnesses and "received from one or more Defendants various pricing information." DP CAC ¶¶ 150-51. But, again, the DPPs fail to provide any of the particulars about these allegations, as required by Rule 9(b). And the DPPs' claim that they "did not and could not have" discovered the alleged price fixing conspiracy earlier is belied by their awareness of alleged increases in wire harness prices during the putative Class Period that they assert were inconsistent with the economic forces in a competitive market and with Defendants' alleged steady manufacturing input costs and ability to control those costs. *See id.* ¶¶ 104-05.[11] If, as the DPPs contend, these allegations are indicative of conspiratorial conduct by Defendants, then the events alleged, which were readily apparent to the public, should have put the DPPs on notice of their claims.

Because the DPPs have not pled "affirmative acts of concealment" or "due diligence" with the requisite particularity, their allegations of fraudulent concealment must be dismissed. Therefore, to the extent that any of their claims for relief proceed, those claims (and the putative Class Period) must be limited to the period beginning November 23, 2007 forward.

## VI.   THE DPPs LACK STANDING TO SEEK INJUNCTIVE RELIEF

The DPPs seek an injunction restraining Defendants "from continuing and maintaining" the alleged price fixing conspiracy. DP CAC Prayer for Relief ¶ D. To obtain such relief, the DPPs must plead facts that plausibly establish a "likelihood of substantial and immediate

---

[11] In this regard, the DPPs allege that (i) "[i]n a competitive market, economies of scale and decreasing costs would lead to lower prices because manufacturers typically will reduce pricing rather than lose market share," (ii) while "[i]n a market subject to a conspiracy to fix prices, . . . competitors do not have the same incentive to lower prices despite steady or decreasing input costs," (iii) "[d]uring the Class Period, the prices of Wire Harness Products increased, while the primary manufacturing input costs remained steady," and (iv) many of the Defendants "have extensive experience in wiring production and are able to control associated input costs." DP CAC ¶¶ 104-05.

irreparable injury." *City of L.A. v. Lyons*, 461 U.S. 95, 103, 111 (1983) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)) (a "likelihood of substantial and immediate irreparable injury" is a prerequisite to issuance of an injunction); *see also* 15 U.S.C. § 26 (adopting standards applicable to request for injunctive relief). However, this "requirement . . . cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. More importantly, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96. DPPs' request for injunctive relief here must be dismissed because they have pled no facts supporting their conclusory allegation of a "continuing conspiracy," and the facts they have pled are inconsistent with such a conspiracy or any real or immediate threat of future harm.

### A.      The DPPs Fail to Plead Facts Supporting a "Continuing Conspiracy"

The DPPs allege that Defendants "entered into a continuing" conspiracy, DP CAC ¶ 156, but the DP CAC is devoid of any facts supporting this conclusory allegation. A request for injunctive relief should be dismissed where "plaintiffs have provided no factual basis for their claims that there is any kind of continuing violation on the part of the defendants." *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 17-18 (D.D.C. 2004) (plaintiffs lacked standing to seek injunctive relief where they failed to allege "a real and immediate threat of future injury").

In this case, the only facts the DPPs have pled regarding the price fixing conspiracy they allege are those found in the guilty pleas of certain Defendants. As a result, the DPPs allege (borrowing from certain, but not all, of the pleas) that the conspiracy was in effect "until at least February 28, 2010." DP CAC ¶ 2. However, both the "continuing" conspiracy and the putative Class Period "through the present" that the DPPs also allege, *id.* ¶¶ 9, 66, are contrary to the pleas on which they rely. In this regard, it is telling that the DPPs do not allege any conduct or

events during or after February 2010 other than the various government investigations, pleas and Orders.

Based on the facts the DPPs do allege, it is simply not plausible that Defendants would continue conspiring once enforcement agencies around the world had so publicly commenced their investigations in February 2010 (as the DPPs admit, *id*. ¶¶ 115-21), much less after the pleas (with their onerous consequences for another violation) and Orders had been entered.[12] "The Court is not required to accept the plaintiffs' conclusions and inferences [of a continuing violation] if [as here] they are unsupported by facts . . . ." *Nifedipine*, 335 F. Supp. 2d at 18.

### B.     The DPPs Fail to Plead a Real or Immediate Threat of Future Injury

Apart from the DPPs' unsupported, conclusory allegation of a "continuing conspiracy," the DP CAC is *silent* about any real or immediate threat of future harm to the DPPs.  This bare allegation is contrary to the Supreme Court's "clear precedent requiring that the allegations of future injury be particular and concrete." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (1998); *see also Lyons*, 461 U.S. at 101-02 ("[P]laintiff must show that he has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged [] conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical . . . .") (quotation omitted).  Because the DPPs fail to plead any facts supporting an allegation or inference that they face a real or immediate threat of future injury, DPPs lack standing to seek an injunction. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969) (standing to seek injunctive relief under § 16 of the Clayton Act requires

---

[12] Counsel for the DPPs in effect conceded at the June 15, 2012, status conference that the DPPs are not aware of any facts supporting any claim that the alleged conspiracy continued after various enforcement authorities began their investigations in February 2010.  Tr. of June 15, 2012 Status Conference at 61, 66-67 (Doc. No. 136).

plaintiffs to "demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur").

Not only is there no "particular and concrete" allegation of such harm in the DP CAC, the facts DPPs do plead are inconsistent with any such assertion.  First, as explained earlier, the DPPs allege that automobile manufacturers, not the DPPs, were the targets of the price fixing conspiracy they allege.  DP CAC ¶¶ 16-22, 92-98, 107-12.  The DPPs have not claimed a real or immediate threat of future injury from misconduct that was directed against others and not at them.  Nor would any such claim even be plausible given that the alleged victims, certain automobile manufacturers, would be by now well aware of the violations charged and have taken steps to protect themselves, and detect and prevent any further misconduct in the future.

Second, the guilty pleas of some Defendants and the Orders cited in the DP CAC undermine any claim that the alleged conspiracy will be revived or recur.  *See id.* at ¶¶ 122-23, 129-37.  For example, the Orders required YC and F-Co to terminate the wrongful conduct and adopt measures to ensure that future violations do not occur, including regular training for sales staff and notifying their employees, automobile manufacturers and the other violators, Sumitomo and Furukawa, of these measures.  JFTC Order ¶¶ 3(1)-(4).[13]

The terms of the plea agreements are even more rigorous, requiring, among other conditions, continuing cooperation from the Defendants who are parties to them.[14]  Any violation

---

[13] English versions of the JFTC's January 19, 2012 press release announcing its Cease and Desist Orders and the Orders themselves are available at the JFTC website:
http://www.jftc.go.jp/en/pressreleases/archives/individual-000462.html; and
http://www.jftc.go.jp/en/pressreleases/uploads/2012_Jan_19.pdf.  A court may consider documents in a motion to dismiss when they are incorporated by reference in plaintiff's complaint, and are central to plaintiff's claims.  *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  Further, "[f]ederal courts may take judicial notice of proceedings in other courts of record."  *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)); *see also* Fed. R. Evid. 201.

[14] *See FEC Plea* [Ex. A]; *YC Plea* [Ex. B]; *F-Co Plea* [Ex. C]; *DENSO Plea* [Ex. D].

of a plea agreement allows the government to bring charges against that Defendant and its

subsidiaries, and their present or former directors, officers and employees whom the government

had previously agreed not to prosecute, for any federal crime of which the government has

knowledge, using not only new evidence, but also the information provided by the Defendant, its

subsidiaries, and their present and former directors, officers and employees.[15]

Other facts pled in the DP CAC militate against the likelihood that the violations will

recur.  The DPPs admit that Furukawa provided information to the JFTC that led to its

investigation, DP CAC ¶ 133, and the pleas of Furukawa, YC, and DENSO note that each

provided substantial assistance to the government's investigation and prosecutions.[16]  Even if not

dispositive, these facts are "relevant to the determination of whether 'there exists some

cognizable danger of [a] recurrent violation.'"  *Nifedipine*, 335 F. Supp. 2d at 17 (quoting *United

States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)) (noting that plaintiffs must still show the

requisite threatened future injury while taking into account the effect of a prior consent order);

*accord In re Plavix Indirect Purchaser Antitrust Litig.*, No. 1:06-cv-226, 2011 WL 335034, at *4

(S.D. Ohio Jan. 31, 2011) [Ex. M].

Third, the Court accepting the plea agreements concluded that further relief was not

required to deter future violations.  During YC's sentencing hearing, Judge Steeh noted that the

consequences YC faced would "be quite sufficient to deter the company from making this

mistake in the future, and will deter others from repeating the mistake as well."  Tr. of Guilty

Plea and Sentencing Hr'g at 31, *United States v. Yazaki Corp.*, No. 12-cr-20064-GCS (E.D.

Mich. Mar. 31, 2012), Doc. No. 10 [Ex. N].  The Court therefore declined to impose a

---

[15] *See, e.g.*, *YC Plea* at 20-21 [Ex. B].

[16] *See FEC Plea* at 9 [Ex. A]; *YC Plea* at 13 [Ex. B]; *DENSO Plea* at 10 [Ex. D].

probationary sentence "given the fact that the cooperation which is agreed upon will be ongoing." *Id.* at 33. The Court likewise found it unnecessary to impose probationary sentences against DENSO, F-Co, and FEC. *See* Tr. of Guilty Plea & Sentencing Hr'g at 12, 26, *United States v. DENSO Corp.*, No. 12-cr-20063 (E.D. Mich. Mar. 5, 2012), Doc. No. 12 [Ex. O] (declining to impose probationary sentence); Tr. of Guilty Plea and Sentence at 9-10, 23, *United States v. Fujikura Ltd.*, No. 12-cr-20254 (E.D. Mich. June 21, 2012), Doc. No. 12 [Ex. P] (same); Tr. of Plea & Sentencing at 25-26, *United States v. Furukawa Elec. Co.*, No. 11-cr-20612-GCS (E.D. Mich. Nov. 14, 2011), Doc. No. 12 [Ex. Q] (noting that the court was "satisfied . . . that there is not a need to go beyond the parties' agreement to deter [FEC] from future violations").

A plaintiff is not entitled to injunctive relief when a defendant has taken steps definitively renouncing past conduct and there is an assurance that the unlawful conduct will not be repeated. *See W.T. Grant Co.*, 345 U.S. at 635-36 (affirming dismissal of complaint seeking injunctive relief because plaintiffs did not demonstrate any "threatened" injury); *Dart Drug Corp. v. Parke, Davis & Co.*, 344 F.2d 173, 176-78 (D.C. Cir. 1965) (explaining trial court's denial of an injunction where defendant showed that the wrongful conduct had been voluntarily abandoned).

In *Grant*, the government brought suit to enjoin a director from serving on the boards of competing companies. 345 U.S. at 630. After the case was filed, the director resigned from his positions. The Court affirmed dismissal of the complaint, noting that since the alleged violation had ended and defendants had denied any intent to resume it, the government's conclusory allegation that defendants "have threatened to continue and will continue the aforesaid violation" was insufficient. *Id.* at 635. Instead, "[t]he necessary determination is that there exists some

cognizable danger of recurrent violation, something more than the mere possibility which serves

to keep the case alive." *Id*. at 633.

Here, as in *Grant*, those Defendants that entered pleas testified under oath that they have

abandoned the challenged conduct and adopted measures to prevent future violations, and the

DPPs have also failed to allege a plausible threat of any future harm. *Id*. at 635; *see also Dart*,

344 F.2d at 176-78; *Salaam v. Collins*, 830 F. Supp. 853, 865 (D. Md. 1993), *aff'd sub nom.*

*Calhoun-El v. Robinson*, 70 F.3d 1261 (4th Cir. 1995) (finding injunctive relief unnecessary in

part because "in view of defendants [sic] admission on the record of their error, and their present

adherence to a policy recognizing that error, there [was] . . . no need for equitable relief").  Given

the DPPs' failure to plead any facts suggesting that the alleged conspiracy continued after the

investigations began or plea agreements were reached, those Defendants' ongoing cooperation

with the government, and the severe penalties for violating the pleas, along with the JFTC Cease

and Desist Orders, the DPPs' bare allegations of a continuing conspiracy are insufficient to

establish a real or immediate threat of future harm.  *See In re Delta/Airtran Baggage Fee*

*Antitrust Litig.*, 733 F. Supp. 2d 1348, 1367-68 (N.D. Ga. 2010) (plaintiffs failed to demonstrate

significant threat of future injury because the "complaint indicates that Defendants have resumed

their adherence to the antitrust laws" and conclusory allegation of threat of future injury was

insufficient); *Nifedipine*, 335 F. Supp. 2d at 18 (dismissing injunctive relief claim where

plaintiffs alleged generally, without providing any factual basis, that defendants continued to act

unlawfully after entry of consent order).

In the final analysis, the DPPs' claim for injunctive relief relies solely on Defendants'

alleged past conduct.  Yet, past conduct alone does not demonstrate the type of "impending or

recurring violation" required to establish Article III standing to obtain an injunction.  *See Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (quoting *Lyons*, 461 U.S. at 102)); *Nifedipine*, 335 F. Supp. 2d at 19 ("[L]ingering monetary injury, without any ongoing threat of recurrent violations, is not sufficient to confer standing to seek an injunction.").  Because the DPPs have failed to meet their burden of pleading facts that plausibly support a real or immediate threat of future injury, their claim for injunctive relief should be dismissed.

## CONCLUSION

For all of these reasons, the Court should dismiss all of the Direct Purchaser Plaintiffs' claims.

Respectfully submitted,

LANE POWELL PC

July 13, 2012                    By:    /s/Larry S. Gangnes (w/consent)
                                         Larry S. Gangnes
                                         LANE POWELL PC
                                         1420 Fifth Ave., Suite 4100
                                         Seattle, WA  98101-2338
                                         (206) 223-7000
                                         (206) 223-7107 (facsimile)
                                         gangnesl@lanepowell.com

                                         Craig D. Bachman
                                         Kenneth R. Davis II
                                         LANE POWELL PC
                                         ODS Tower
                                         601 SW Second Ave., Suite 2100
                                         Portland, OR  97204-3158
                                         (503) 778-2100
                                         (503) 778-2200 (facsimile)
                                         bachmanc@lanepowell.com
                                         davisk@lanepowell.com

Irwin Alterman
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI  48084
(248) 528-1111
(248) 528-5129 (facsimile)
irwin.alterman@kkue.com

*Attorneys for Defendants American Furukawa, Inc.,
   and Furukawa Electric Co., Ltd.*


WILMER CUTLER PICKERING HALE AND
DORR LLP


July 13, 2012                    By:    /s/Steven F. Cherry (w/consent)
                                        Steven F. Cherry
                                        David P. Donovan
                                        Stephanie K. Wood
                                        Elizabeth Martin
                                        WILMER CUTLER PICKERING HALE AND
                                           DORR LLP
                                        1875 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20006
                                        (202) 663-6000
                                        (202) 663-6363 (facsimile)
                                        steven.cherry@wilmerhale.com
                                        david.donovan@wilmerhale.com
                                        stephanie.wood@wilmerhale.com
                                        ellie.martin@wilmerhale.com

                                        Karen D. Stringer
                                        Heather Price
                                        WILMER CUTLER PICKERING HALE AND
                                           DORR LLP
                                        60 State Street
                                        Boston, MA 02109
                                        (617) 526-6406
                                        (617) 526-5000 (facsimile)
                                        karen.stringer@wilmerhale.com
                                        heather.price@wilmerhale.com

                                        *Attorneys for Defendants DENSO International
                                           America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)¶
General Counsel¶
DENSO INTERNATIONAL AMERICA, INC.¶
24777 Denso Drive¶
Southfield, MI 48033¶
(248) 372-8252¶
(248) 213-2551 (facsimile)¶
STEVE_ZAROWNY@denso-diam.com

*Attorney for Defendant DENSO International
    America, Inc.*


KERR, RUSSELL AND WEBER, PLC


July 13, 2012                    By:    /s/William A. Sankbeil_____
                                        William A. Sankbeil (P19882)
                                        Joanne Geha Swanson (P33594)
                                        Matthew L. Powell (P69186)
                                        KERR, RUSSELL AND WEBER, PLC
                                        500 Woodward Avenue, Suite 2500
                                        Detroit, MI  48226
                                        (313) 961-0200
                                        (313) 961-0388 (facsimile)
                                        was@krwlaw.com
                                        jgs@krwlaw.com
                                        mlp@krwlaw.com

                                        James L. Cooper
                                        Sonia Kuester Pfaffenroth
                                        Laura Cofer Taylor
                                        ARNOLD & PORTER LLP
                                        555 Twelfth Street NW
                                        Washington, DC 20004
                                        (202) 942-5014
                                        (202) 942-5999 (facsimile)
                                        james.cooper@aporter.com
                                        sonia.pfaffenroth@aporter.com
                                        laura.taylor@aporter.com

                                        *Attorneys for Defendants Fujikura America, Inc.,
                                            and Fujikura Ltd.*

SMITH, GAMBRELL & RUSSELL, LLP

July 13, 2012                By:    /s/Wm. Parker Sanders (w/consent)
                                    Wm. Parker Sanders (Georgia Bar No. 626020)
                                    SMITH, GAMBRELL & RUSSELL, LLP
                                    Promenade II, Suite 3100
                                    1230 Peachtree Street, N.E.
                                    Atlanta, Georgia 30309
                                    (404) 815-3684
                                    (404) 685-6984 (facsimile)
                                    psanders@sgrlaw.com

                                    Jeffrey G. Heuer (P14925)
                                    Peter M. Falkenstein (P61375)
                                    JAFFE, RAITT, HEUER & WEISS, P.C.
                                    27777 Franklin Rd., Ste. 2500
                                    Southfield, MI 48034
                                    (248) 351-3000
                                    jheuer@jaffelaw.com
                                    pfalkenstein@jaffelaw.com

                                    *Attorneys for Defendant Kyungshin-Lear Sales and*
                                        *Engineering, LLC*

                             DYKEMA GOSSETT PLLC

July 13, 2012                By:    /s/Howard B. Iwrey (w/consent)
                                    Howard B. Iwrey (P39635)
                                    DYKEMA GOSSETT PLLC
                                    39577 Woodward Avenue, Suite 300
                                    Bloomfield Hills, MI  48304
                                    (248) 203-0526
                                    (248) 203-0763 (facsimile)
                                    hiwrey@dykema.com

                                    Andrew S. Marovitz
                                    Britt M. Miller
                                    MAYER BROWN LLP
                                    71 S. Wacker Drive
                                    Chicago, IL  60606
                                    (312) 782-0600
                                    (312) 701-7711 (facsimile)
                                    amarovitz@mayerbrown.com
                                    bmiller@mayerbrown.com

                                    *Attorneys for Defendant Lear Corporation*

O'MELVENY & MYERS LLP

July 13, 2012                    By:    /s/Michael F. Tubach (w/consent)
                                        Michael F. Tubach
                                        O'MELVENY & MYERS LLP
                                        Two Embarcadero Center, 28th Floor
                                        San Francisco, CA 94111
                                        (415) 984-8700
                                        (415) 984-8701 (facsimile)
                                        Mtubach@omm.com

                                        Michael R. Turco
                                        BROOKS WILKINS SHARKEY & TURCO PLLC
                                        401 South Old Woodward, Suite 400
                                        Birmingham, MI 48009
                                        (248) 971-1713
                                        (248) 971-1801 (facsimile)
                                        turco@bwst-law.com

                                        *Attorneys for Defendants Leoni AG, Leoni Wire
                                          Inc., Leoni Wiring Systems, Inc., Leoni Kabel
                                          GmbH, and Leonische Holding Inc.*

                                        GIARMARCO, MULLINS & HORTON, P.C.

July 13, 2012                    By:    /s/William H. Horton (w/consent)
                                        William H. Horton (P31567)
                                        GIARMARCO, MULLINS & HORTON, P.C.
                                        101 West Big Beaver Road, Tenth Floor
                                        Troy, MI  48084-5280
                                        (248) 457-7060
                                        (248) 457-7001 (facsimile)
                                        bhorton@gmhlaw.com

                                        Marguerite M. Sullivan
                                        LATHAM & WATKINS LLP
                                        555 Eleventh Street NW, Suite 1000
                                        Washington, DC 20004
                                        202-637-2200
                                        202-637-2201 (facsimile)
                                        Maggy.sullivan@lw.com

*Attorneys for Defendants Sumitomo Electric Industries, Ltd., Sumitomo Electric Wiring Systems, Inc., Sumitomo Electric Wintec America, Inc., Sumitomo Wiring Systems (U.S.A.) Inc., Sumitomo Wiring Systems, Ltd., and K&S Wiring Systems, Inc.*


COVINGTON & BURLING LLP

July 13, 2012          By:     /s/Michael J. Fanelli (w/consent)
                               Michael J. Fanelli
                               COVINGTON & BURLING LLP
                               1201 Pennsylvania Ave., NW
                               Washington, D.C. 20004
                               (202) 662-6000
                               (202) 662-5383 (facsimile)
                               Mfanelli@cov.com

                               Anita F. Stork
                               COVINGTON & BURLING LLP
                               One Front Street
                               35th Floor
                               San Francisco, CA, 94111
                               (415) 591-6000
                               (415) 955-6550 (facsimile)
                               astork@cov.com

*Attorneys for Defendant S-Y Systems Technologies Europe GmbH*


BUTZEL LONG

July 13, 2012          By:     /s/David F. DuMouchel (w/consent)
                               David F. DuMouchel
                               George B. Donnini
                               BUTZEL LONG
                               150 West Jefferson, Suite 100
                               Detroit, MI 48226
                               (313) 225-7000
                               (313) 225-7080 (facsimile)
                               dumouchd@butzel.com
                               donnini@butzel.com

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
(202) 663-7820
(202) 663-7849 (facsimile)
TMiller@bakerandmiller.com

*Attorneys for Defendants TRAM, Inc. and Tokai Rika Co., Ltd.*

JONES DAY

July 13, 2012                    By:    /s/John M. Majoras (w/consent)
                                        John M. Majoras
                                        Carmen G. McLean
                                        JONES DAY
                                        51 Louisiana Ave. N.W.
                                        Washington, D.C. 20001-2113
                                        (202) 879-3939
                                        (202) 626-1700 (facsimile)
                                        jmmajoras@jonesday.com
                                        cgmclean@jonesday.com

                                        Michelle K. Fischer
                                        Stephen J. Squeri
                                        JONES DAY
                                        North Point
                                        901 Lakeside Avenue
                                        Cleveland, OH 44114
                                        (216) 586-3939
                                        (216) 579-0212 (facsimile)
                                        mfischer@jonesday.com
                                        sjsqueri@jonesday.com

                                        *Attorneys for Defendants Yazaki Corporation and Yazaki North America, Inc.*

                                        Atleen Kaur (P66595)
                                        YAZAKI NORTH AMERICA, INC.
                                        6801 N. Haggerty Road
                                        Canton, MI 48187
                                        (734) 983-4622
                                        (734) 983-4623 (facsimile)
                                        Atleen.kaur@us.yazaki.com

                                        *Attorney for Defendant Yazaki North America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2012, I caused the foregoing Collective Memorandum in Support of Defendants' Collective Motion to Dismiss the Direct Purchaser Actions to be served upon Direct Purchaser Interim Lead and Liaison Counsel, Automobile Dealer Interim Lead and Liaison Counsel, and End-Payor Interim Lead and Liaison Counsel by filing said document via ECF in accordance with Case Management Order No. 1.


Dated: July 13, 2012                                  By:  /s/William A. Sankbeil
                                                                William A. Sankbeil