# EXHIBIT E

2012 WL 2114997
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

In re REFRIGERANT COMPRESSORS
ANTITRUST LITIGATION.

No. 2:09–md–02042. | June 11, 2012.

**Opinion**

***MEMORANDUM OPINION REGARDING THE
COURT'S JUNE 7, 2012 ORDER (D .E. NO. 294)***

SEAN F. COX, District Judge.

**\*1** On June 7, 2012, this matter came before the Court
on "Defendants' Motion To Dismiss The Indirect Purchaser
Plaintiffs' Consolidated Amended Complaint" (D.E. No.
162). The motion had been fully briefed by the parties some
time ago. While the motion makes numerous challenges to
the Indirect Purchasers' ("IP") Plaintiffs' current operative
complaint, at the June 7, 2012 hearing, the Court addressed
only the issue of whether the IP Plaintiffs' current operative
complaint sufficiently alleges an antitrust conspiracy under
*Twombly.* [1]

Following the hearing, this Court ruled that the IP Plaintiffs'
Second Consolidated Amended Complaint fails to state
a claim under *Twombly,* except as to the claims against
Defendants Panasonic Corporation and Embraco North
America, Inc., for the approximately three-year period set
forth in their respective plea agreements. Moreover, while
the IP Plaintiffs' response brief contained a footnote making
a blanket statement that IP Plaintiffs "reserve the right to
amend" their complaint "should any portion of Defendants'
motion be granted," they have not properly requested leave
to file an amended complaint and it is not the Court's role
to initiate amendments or give legal advice to the parties.
Thus, the Court dismissed the claims asserted in the IP
Plaintiffs' Second Consolidated Amended Complaint as to
all Defendants with the exception of Defendants Panasonic
Corporation and Embraco North America, Inc.

**BACKGROUND**

**Procedural Background**

Beginning in February 2009, Direct Purchaser ("DP")
Plaintiffs and Indirect Purchaser ("IP") Plaintiffs filed
complaints in various jurisdictions asserting claims against
Defendants based on an alleged price-fixing conspiracy.
Those actions were consolidated for pretrial proceedings by
the United States Judicial Panel on Multidistrict Litigation.
While both the DP and IP Plaintiffs' claims are based on
the same alleged antitrust price-fixing conspiracy, they assert
different claims. The DP Plaintiffs assert federal antitrust
claims, while the IP Plaintiffs assert state-law claims only

On November 2, 2009, the Court entered orders appointing
Interim Lead Counsel for both the DP and IP Plaintiffs.
(Docket Entry Nos. 113 & 114).

On May 26, 2012, the Court issued Case Management Order
No. 1, which was agreed to by counsel for the parties.
(Docket Entry No. 152). It provides that the Direct and
Indirect Purchaser Plaintiffs shall separately file Master
Amended Complaints including each Defendant no later than
June 30, 2012. (*Id.* at 8). It also provides that Defendants
may thereafter file motions to dismiss the master amended
complaints. (*Id.* at 9–10).

The DP Plaintiffs filed their "Master Amended
Complaint" ("MAC") (D.E. No. 155) on June 30, 2010,
asserting putative class action claims under the federal
antitrust laws. The DP Plaintiffs' MAC asserted specific
allegations as to the role of various Defendants in the alleged
conspiracy. (*See* MAC at 14–18).

**\*2** On June 30, IP Plaintiffs filed their "Consolidated
Amended Complaint" ("CAC") (Docket Entry No. 154), also
alleging an antitrust price-fixing conspiracy but asserting
claims under state laws. The IP Plaintiffs' CAC contains far
less detailed factual allegations than the DP Plaintiffs' MAC
and it refers to "Defendants" as a whole, rather than including
allegations specific to the various Defendants. (*See* CAC at
15–16).

In response to the DP and IP Plaintiffs' respective complaints,
Defendants filed several motions to dismiss on August
30, 2010. As to the IP Plaintiffs, Defendants filed a
joint motion seeking to dismiss the CAC on multiple
grounds, including that it fails to state a claim under
*Twombly.* (D.E. No. 162). That joint motion specifically
challenged the IP Plaintiffs' complaint as failing to state a
claim under Sixth Circuit precedent because it generically

referred to "Defendants" without alleging specific conduct undertaken by the seventeen different defendants in this case. (*See* D.E. No. 162 at 8 where Defendants assert that "fatal to Plaintiffs' claims is their failure to allege any specific conduct undertaken by any particular Defendant. For example, Plaintiff do not identify which Defendants purportedly attended any of the alleged meetings. Instead, Plaintiffs just lump together all seventeen named defendants. Such allegations are insufficient as a matter of law.").

Whirlpool Corporation filed its own Motion to Dismiss, also asserting that neither the DP or IP Plaintiffs' operative complaints state a claim as to it under *Twombly*. (D.E. No. 165).

On August 20, 2010, the IP Plaintiffs' filed a motion seeking leave to file a Second Consolidated Amended Complaint, in order to modify a single paragraph alleging the type of products that one Defendant manufactures. (D.E. No. 159). The IP Plaintiffs did not seek to include any other allegations at that time. The IP Plaintiffs attached a copy of their proposed pleading to that motion. (*Id.*).

On September 9, 2010, Defendants stipulated to allowing the IP Plaintiffs to file their Second Consolidated Amended Complaint ("SCAC"). The IP Plaintiff filed their SCAC on September 21, 2010. (Docket Entry No. 174).

On October 29, 2010, the IP Plaintiffs filed their brief in opposition to the Defendants' Joint Motion to Dismiss. (D.E. No. 189). In opposing the *Twombly* challenge in that motion, IP Plaintiffs asked the Court to consider the factual allegations in the DP Plaintiffs' complaint. In a footnote on the last page of that brief, the IP Plaintiffs stated that they "respectfully reserve the right to amend" their complaint "should any portion of Defendants' motion be granted." (*Id.* at 49 n. 60). The IP Plaintiffs filed their response to Whirlpool Corporation's motion on that same date and, in a footnote on page nine of their brief, stated that if the Court concludes they have not stated a claim as to Whirlpool, they "would request leave to amend the [S]CAC to include more specific Whirlpool-related allegations." (D.E. No. 188).

**\*3** Although buried in footnotes, those blanket statements were not overlooked by Defendants. Defendants objected. For example, Whirlpool Corporation's Reply Brief directed the Court—and thus the IP Plaintiffs and their Counsel—to authority providing that the Sixth Circuit disfavors such bare requests and they are not a substitute for a properly filed motion for leave to file an amended complaint. (D.E. No. 206 at 10) (citing *Begala v. PNC Bank, Ohio, N.A.,* 214 F.3d

776 (6th Cir.2000); *D.E. & J. Ltd. P'ship v. Conaway,* 284 F.Supp.2d 719 (E.D.Mich.2003); *La. Sch. Emps.% Ret. Sys. v. Ernst & Young, LLP,* 622 F.3d 471, 486 (6th Cir.2010)). It also advised that the IP Plaintiffs had failed to comply with Local Rule 15.1 by not filing a formal motion and attaching a copy of their proposed pleading.

Nevertheless, IP Plaintiffs did not file a motion seeking leave to file an amended complaint either during or after the briefing of the motions.

The Court addressed the Defendants Joint Motion to Dismiss the DP Plaintiffs' claims first. It issued an Opinion & Order regarding that motion on June 13, 2011.

Due to other matters on this Court's docket, [2] a hearing on the remaining motions was delayed. On April 3, 2012, the Court issued a notice advising that it would hear the pending motions on June 7, 2012. The Court's docket manager advised counsel that, due to the number and complexity of the motions, the hearings would held over a number of days. Counsel were advised that, at the June 7, 2012 hearing, the Court would be addressing the *Twombly* challenge asserted in the Defendants' Joint Motion to Dismiss the IP Plaintiffs' SCAC.

No motion seeking leave to amend was filed prior to the June 7, 2012 hearing.

At the June 7, 2012 hearing, the Court addressed the *Twombly* challenge to the IP Plaintiffs' operative complaint. Counsel for the IP Plaintiffs indicated that various allegations in the DP Plaintiffs' June 30, 2010 Master Amended Complaint relate to specific meetings of the various defendants and that, although those allegations are not in the IP Plaintiffs' complaint, "that's something we intend to cure." (Hrg. Tr. at 6). Counsel further stated that "we have an amended complaint that we intend to add a number of allegations to." (*Id.*). In support of IP Plaintiffs' argument that their complaint survives a *Twombly* challenge, Counsel then attempted to discuss a document that was not referenced in either the IP Plaintiffs' briefs or its complaint.

When asked when IP Plaintiffs had filed a motion seeking leave to file an amended complaint, Counsel responded, "I am today asking the Court for leave to amend my pleadings." (*Id.* at 8). The Court noted that IP Plaintiffs have not filed a motion seeking leave to file an amended complaint, have not submitted a proposed amended complaint, and are asking the Court to consider allegations in another party's complaint to

determine whether the IP Plaintiffs' own complaint meets the applicable pleading standard:

**\*4** THE COURT: I heard about the negotiations. But I mean you haven't filed a motion for leave to file an amended complaint. And you're telling me that in examining your complaint as to whether or not it meets the *Twombly* standard, I should incorporate Mr. Fink's complaint and then evaluate whether or not your complaint meets the *Twombly* standard.

MR. BATTIN: Certain of the allegations in Mr. Fink's complaint as well as the guilty pleas, your Honor. As well as the fact that the Courts already decided—we have the exact same allegations—I mean, the exact same underlying harm we're alleging as the direct purchasers, your Honor. And the Court has already ruled—

THE COURT: You don't have the exact same allegations as Mr. Fink does in his complaint.

MR. BATTIN; We don't currently have the exact same allegations, your Honor. One question I would ask the Court is; every time there is an event in the case should we as indirect purchasers move to amend our complaint to add each individual allegation as it arises or should we assume that the Court will take judicial notice of guilty pleas and amendments in the direct purchasers' case?

....

THE COURT: So you're asking me how you should proceed?

(6/7/12 Hrg. Tr.).

### The Allegations In The SCAC

The SCAC, filed on *September 21, 2010,* is the operative complaint on behalf of the IP Plaintiffs. (D.E. No. 174). Based on the alleged antitrust price-fixing conspiracy, IP Plaintiffs assert claims under state law antitrust and consumer protections acts, and assert unjust enrichment claims.

The SCAC describes the nature of the case as follows. This case arises from "a long-running, world-wide conspiracy" among Defendants "to fix, raise, maintain, and/or stabilize the prices of, and to allocate customers and markets for, Hermetic Compressors," thus artificially raising the prices for Hermetic Compressors and products containing Hermetic Compressors." (SCAC at ¶ 1). The IP Plaintiffs allege that the conspiracy was effective and that "end-payor purchasers

of Hermetic Compressor Products were among its many victims." (SCAC at ¶ 2). "The Hermetic Compressor is the critical engine in refrigeration products ." (SCAC at ¶ 3). "Defendants sold Hermetic Compressors through a number of channels, including in the refrigerator and freezer channel (the 'R & F' channel or 'R & F Market'), which is dominated by a few large Original Equipment Manufacturers ('OEMs'), including Electrolux and General Electric." (SCAC at ¶ 4). "Sales of Hermetic Compressors in the R & F channel involve a yearly bidding process by which the OEMs invite Defendants to compete for each OEM's yearly compressor needs. The OEMs invite all the manufacturers of Hermetic Compressor to participate in the bidding at a location and time of the OEM's choosing. These negotiations are critical for buyers and sellers alike as the prices at which Hermetic Compressors are sold to the OEMs for the entire year are determined in the course of a few days. All five Defendants actively participated in these meetings." (SCAC at ¶ 5). "Defendants, however, created a sham bidding system, secretly meeting before the annual contract negotiations, sharing bids with one another and agreeing upon prices. In addition, Defendants allocated among each other respective shares of the OEM market." (SCAC at ¶ 6). As a result, "prices between 1996 and 2009 were artificially inflated. This overcharge was then passed on to end payors in the form of inflated prices for Hermetic Compressors and products containing them, such as refrigerators and freezers." (SCAC at ¶ 7).

**\*5** The SCAC asserts the following counts: 1) "Violation of State Antitrust Statutes" (Count I), which asserts antitrust claims under the laws of 25 different states; 2) "Violation of State Consumer Protection and Unfair Competition Statutes" (Count II), which asserts claims under the consumer protection acts of 11 different states; and 3) "Unjust Enrichment" (Count III).

The SCAC states that the IP Plaintiff seek to bring a class action on behalf of the following class:

All persons and entities that purchased Hermetic compressors ("Hermetic Compressors") or products that contained Hermetic Compressors as an end payor, and not for resale, in the states of Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin at any time from

January 1, 1996 through December 31, 2009 from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.

Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, person who purchased Hermetic Compressors directly, and persons who purchased Hermetic Compressors indirectly for resale.

(SCAC at ¶ 130). The SCAC further states that "[i]n the alternative, Plaintiffs may seek the certification of subclasses." (SCAC at ¶ 131).

In the SCAC, the IP Plaintiffs allege the following factual allegations as to the alleged antitrust price-fixing conspiracy:

67. In an effort to increase revenues, Defendants banded together to rig bids made to OEMs prior to negotiations.

68. In effectuating the conspiracy, the Defendants met secretly in order to conceal their bid rigging from the OEMs and the market. Throughout the Class Period, Defendants regularly met to agree on pricing of, and market allocation strategies for, Hermetic Compressors.

69. These conspiratorial meetings often occurred directly before contract negotiations with the OEMs and, for obvious reasons, were not disclosed to the OEMs or the public. During the course of these meetings, Defendants discussed general strategies in negotiating the coming years' contracts with the OEMs, and shared their proposed bids.

70. In 2004 and 2005, for example, Defendants' including Tecumseh and Embraco, met in Europe prior to negotiations with the OEMs. Defendants also engaged in telephone conversations to facilitate their bid rigging and market allocation scheme.

71. In 2006, Defendants met again in Europe to discuss prices for Hermetic Compressors for 2007.

72. Many of Defendants' top executives participated in these meetings. A document from the Brazilian investigatory authority shows the following five executives, among others, were instrumental in furthering Defendants' conspiracy:

**\*6** • Gerson Verissimo, the head of Defendant Tecumseh Brasil;

• Ernesto Henzelmann, CEO and President of Embraco;

• Valter Taranzano, CEO and President of ACC;

• Lars Snitkjaer, Director of Sales and Marketing for Danfoss; and

• Kaisha Masuda, Sales and Marketing Associate at Panasonic.

73. In addition to fixing prices for Hermetic Compressors, Defendants also agreed to allocate market share.

74. A further indication that Defendants were not vigorously competing against each other is the torpid manner in which they improved their products or responded to changing market conditions. According to an industry publication, "[c]ompared with air conditioning, the refrigeration industry has been slower with changes, both in terms of a shift towards scroll units, and also in terms of a shift towards efficiency and environmental protection."

(SCAC at ¶¶ 67–74).

## LEGAL STANDARD

When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true. *Evans–Marshall v. Board of Educ.,* 428 F.3d 223, 228 (6th Cir.2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although certain matters of public record, orders, exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir.2001) (citing *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)).

## ANALYSIS

**I. The IP Plaintiffs's SCAC Fails To State A Claim Under The Applicable Pleading Standard, Except As To Two Defendants, For The Approximately Three–Year Period Set Forth In Their Respective Plea Agreements.**

The issue before the Court is whether the IP Plaintiffs' operative complaint, the SCAC, sufficiently alleges an antitrust conspiracy under the pleading standard set forth in *Twombly* and *Iqbal.*

Defendants contend that it does not. They contend that IP Plaintiff's complaint essentially contains two sets of allegations: 1) allegations regarding government investigations; and 2) conclusory allegations that Defendants "conspired."

Defendants first assert that the IP Plaintiffs' allegations regarding government investigations are irrelevant. Defendants contend that allegations about government investigations carry no weight in pleading an antitrust conspiracy claim. Defendants cite several cases wherein district courts have found such allegations immaterial or irrelevant to whether a complaint sufficiently alleged a conspiracy claim. *See, e.g, In re Graphics Process Units Antitrust Litig,* 527 F.Supp.2d 1011, 1024 (N.D.Cal.2007) (Stating that an investigation by the Antitrust Division of the DOJ "carries no weight in pleading an antitrust conspiracy claim," and explaining "it is unknown whether the indictment will result in indictments or nothing at all.").

**\*7** Defendants also contend that the remaining allegations in the SCAC do not satisfy the applicable pleading standard. Defendants assert that IP Plaintiffs are required to allege the specific time, place or person involved in the alleged conspiracy and that the Sixth Circuit has dismissed antitrust complaints were plaintiffs failed to allege any specifics about the alleged conspiracy. They direct the Court to *In re Travel Agent Comm'n, Antitrust Litig.,* 583 F.3d 896, 905 (6th Cir.2009) and *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 438 (6th Cir.2008). Defendants contend that IP Plaintiffs' failure to allege any specific conduct undertaken by any particular Defendant is fatal. They direct the Court to *Total Benefits, supra,* and this Court's decision in *Mich. Div.—Monument Builders of N. Am. v. Mich. Cemetery Ass'n,* 458 F.Supp.2d 474, 485 (E.D.Mich.2006).

In response, IP Plaintiffs assert that the Court should consider their allegations as to governmental investigations. They also note that since SCAC was filed, two Defendants have entered criminal guilty pleas: 1) Panasonic Corporation; and 2) Embraco North America, Inc. They assert that the Court should take judicial notice of those guilty pleas.

The IP Plaintiffs also assert that in evaluating whether their complaint meets the applicable pleading standard, the Court should consider the more specific and detailed factual allegations in the DP Plaintiffs' MAC. (IP Pls.' Br. at 28; 6/7/12 Hrg. Tr.).

In their Reply Brief, Defendants state that, taking into account that the Court can take judicial notice of their plea agreements, Defendants Panasonic and Embraco North America, Inc. no longer dispute that IP Plaintiffs meet the applicable pleading standard for the approximately three-year period set forth in their respective plea agreements. (D.E. No. 204 at 2 & 3 n. 2).

Having considered the parties briefs, and oral argument on this issue, the Court concludes that the IP Plaintiffs' SCAC fails to state a claim under *Twombly,* except as to the claims asserted against Defendants Panasonic Corporation and Embraco North America, Inc., for an approximately three-year period.

"In the antitrust context, the Supreme Court has noted that although district courts must be 'cautious before dismissing an antitrust complaint in advance of discovery,' they must not forget that 'proceeding to antitrust discovery can be expensive." *Michigan Division–Monument Builders of N.A. v. Michigan Cemetery Assoc.,* 524 F.3d 726, 731 (6th Cir.2008) (quoting *Twombly,* 550 U.S. at 558)). "It specifically commented that 'a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed .' " *Id.*

Where claims are based upon an alleged antitrust conspiracy, in order to survive a motion to dismiss, the allegations in the complaint "must be specific enough to establish the relevant 'who, what, where, when, how, or why.' " *Carrier Corp.,* 673 F.3d at 445 (citing *Total Benefits,* 552 F.3d at 437)). "Furthermore, they must 'specify how [each] defendant [was] involved in the alleged conspiracy.' " *Carrier Corp.,* 673 F.3d at 445 (citing *In re Travel Agent Comm'n Antitrust Litig.,* 583 F.3d at 905)).

**\*8** The Court rejects the IP Plaintiffs' position that this Court can consider the allegations in another party's complaint in considering whether their own complaint satisfies the applicable pleading standard. This Court must evaluate whether the allegations in the IP Plaintiffs' current operative complaint satisfies the applicable pleading standing.

Unlike the DP Plaintiffs, the IP Plaintiffs' operative complaint alleges a conspiracy but its allegations are vague and reference "Defendants" without specific factual allegations as to the numerous individual defendants named in this case. (*See* SCAC at ¶¶ 67–74). Such "[g]eneric pleading, alleging misconduct against defendants without specific as to the role each played in the alleged conspiracy" is insufficient to allege an antitrust conspiracy claim. *Total Benefits,* 552 F.3d at 436–37; *Michigan Division–Monument Builders of N.A. v. Michigan Cemetery Assoc.,* 458 F.Supp.2d 474, 485 (E.D.Mich.2006) (dismissing antitrust conspiracy claim where plaintiffs used the term "defendants" to apply to numerous parties without specific allegations as to the individual defendants).

While the IP Plaintiffs' SCAC does not contain factual allegations specific as to the alleged wrongdoing by Defendants Panasonic Corporation and Embraco North America, Inc., the Court concludes it is appropriate to take judicial notice of their plea agreements. Moreover, those two Defendants have withdrawn their *Twombly* challenge as to the approximately three-year period set forth in those plea agreements. Accordingly, the Court concludes that IP Plaintiffs have stated a claim against these two Defendants for the approximately three-year period set forth in their respective plea agreements.

## II. The IP Plaintiffs Have Not Properly Requested Leave To File An Amended Complaint.

At this stage of the litigation, IP Plaintiffs may amend their complaint "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). "The party requesting leave to amend must 'act with due diligence if it wants to take advantage of the Rule's liberality.' " *D.E. & J Limited Partnership v. Conaway,* 284 F.Supp.2d 719, 751 (E.D.Mich.2003) (quoting *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299,306 (6th Cir.2000)). "Eastern District of Michigan Local Rule 15.1 further requires that a party seeking leave to amend a pleading provide the Court with a copy of its proposed amended pleading." *D.E. & J Limited Partnership,* 284 F.Supp.2d at 751.

Here, the IP Plaintiffs have not filed a motion for leave to amend their SCAC, nor have they presented the Court with any proposed amendments of their claims. Rather, in a footnote on the last page of their response brief, the IP Plaintiffs stated that they "respectfully reserve the right to amend" their complaint "should any portion of Defendants' motion be granted." (*Id.* at 49 n. 60).

**\*9** The Sixth Circuit's "disfavor of a such a bare request in lieu of a properly filed motion for leave to amend was made clear in *Begala v. PNC Bank, Ohio, N.A.,* 214 F.3d 776, 784 (6th Cir.2000) ." *Alliance for Children, Inc. v. City of Detroit Public Schools,* 475 F.Supp.2d 655, 669 (E.D.Mich.2007).

"What plaintiffs may have stated, almost as an aside," to this Court in their brief in opposition to the Defendants' Joint Motion to Dismiss is not the proper procedure for requesting leave to amend. *Begala,* 214 F.3d at 784; *see also Louisiana Sch. Emp. Ret. Sys. v. Ernst & Young, LLP,* 622 F.3d 471, 486 (6th Cir.2010). " "As the *Begala* decision stated in affirming the district court's dismissal of the plaintiff's complaint with prejudice:

> Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's consideration of the motions to dismiss and accompanies that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint ... Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint* and then an opportunity to cure those deficiencies.

*Louisiana Sch. Emp. Ret. Sys.,* 622 F.3d at 486 (quoting *Begala,* 214 F.3d at 784) (emphasis in original).

The IP Plaintiffs' Counsel's verbal request, at the June 7, 2012 hearing, to file an amended pleading, without filing a motion for leave to amend and attaching a proposed pleading, is also not the proper procedure for requesting leave to amend. Presumably, IP Plaintiffs' Counsel knows this, as IP Plaintiffs's Counsel actually followed the proper procedure when they sought to leave to file the SCAC (i.e., the IP Plaintiffs filed a motion for leave to file an amended complaint and attached their proposed amended complaint as an exhibit to that motion.). Moreover, Defendants raised the impropriety of IP Plaintiffs' bare request for leave to amend in their briefs.

In sum, IP Plaintiffs never requested leave for additional amendments, and it is not the district court's role to initiate amendments. *Total Benefits Planning Agency, Inc.,* 552 F.3d at 438. Nor is it appropriate for the Court to give Counsel legal advice as to when and how they should seek to file an amended complaint. (*See* 6/7/12 Hrg. Tr.) ("One question I would ask the Court is; every time there is an event in the case, should we as indirect purchasers move to amend our complaint to add each individual allegation as it arises or should we assume that the Court will take judicial notice of guilty pleas and amendments in the direct purchasers' case?").

Footnotes

1       *Bell Atl Corp. v. Twombly,* 550 U.S. 544 (2007).

2       This Court currently has two MDL actions.

**End of Document**                                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.