# EXHIBIT Q

1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3
     UNITED STATES OF AMERICA,
 4
                       Plaintiff,
 5   vs.                                 Case No. 11-20612
                                         Hon. George Caram Steeh
 6   FURUKAWA ELECTRIC COMPANY,

 7                     Defendant.
     _____/
 8

 9                     PLEA & SENTENCING

10        BEFORE THE HONORABLE GEORGE CARAM STEEH
                  United States District Judge
11        Theodore Levin United States Courthouse
                  231 West Lafayette Boulevard
12                     Detroit, Michigan
                  Monday, November 14, 2011
13
     APPEARANCES:
14
     For the Plaintiff:    KATHRYN M. HELLINGS
15                         Assistant U.S. Attorney
                           U.S. Department of Justice
16                         450 5th St., N.W.
                           Suite 11300
17                         Washington, D.C.  20530
                           202-307-0934
18
     For the Defendant:    ROBERT R. CALO
19                         Lane Powell, P.C.
                           601 SW Second Avenue
20                         Portland, Oregon  97204-3158
                           503-778-2100
21

22       To obtain a copy of this official transcript, contact:
             Linda M. Cavanagh, Official Court Reporter
23          Theodore Levin United States Courthouse
             231 West Lafayette Boulevard, Room 235
24                    Detroit, Michigan  48226
         (248) 884-0327 • linda_cavanagh@mied.uscourts.gov
25
```

```
 1    APPEARANCES:  Continued

 2    For the Defendant:    CRAIG D. BACHMAN
                            Lane Powell, P.C.
 3                          601 SW Second Avenue
                            Portland, Oregon  97204-3158
 4                          503-778-2100

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        I N D E X

2      Witnesses                                    Page

3      NONE

4

5

6

7

8                      E X H I B I T S

9      Identification                  Marked      Received

10     NONE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1            Detroit, Michigan

 2            Monday, November 14, 2011

 3                         −   −   −

 4            (Proceedings commenced at 8:59 a.m.)

 5            MR. BACHMAN:  Good morning, Your Honor.

 6            THE COURT:  Good morning.

 7            MR. CALO:  Good morning.

 8            THE CLERK:  Case No. 11-20612, United States of

 9   America versus Furukawa Electric.

10            THE COURT:  Good morning.  Would you like to state

11   your appearances?

12            MS. HELLINGS:  Katherine Hellings for the

13   government.

14            MR. CALO:  Good morning, Your Honor.  Robert Calo

15   and Craig Bachman on behalf of Furukawa Electric, and the

16   company representative today is Takahiro Kashiwagi who is

17   present here in court today.

18            THE COURT:  Welcome.  Would you like to approach

19   the podium?

20            MR. CALO:  Yes, Your Honor.

21            THE COURT:  Okay.  So the Court's been presented

22   today with a -- an acknowledgment of the Information filed in

23   the case and a Waiver of Indictment along with a proposed

24   Rule 11 agreement and a confirmation indicating that the

25   board of directors of the defendant corporation is giving Mr.
```

1    Kashiwagi authority to tender the plea.

2          MR. CALO:  Yes.

3          THE COURT:  All right.  And I see that we have the

4    assistance of an interpreter.  Would you like to state your

5    name, ma'am?

6          THE INTERPRETER:  Yes, my name is Jinko Koring.

7          THE COURT:  Okay.  And Linda, do you have that

8    spelling?

9          COURT REPORTER:  I have that.  Thank you, Your

10   Honor.

11         THE COURT:  Would you like to raise your right hand

12   to be sworn?

13         THE INTERPRETER:  Yes.

14                J I N K O   K O R I N G

15     was thereupon called as an interpreter herein, and after

16     being first duly sworn to translate from English to

17     Japanese and from Japanese to English to the best of her

18     ability, testified on her oath as follows:

19         THE INTERPRETER:  I do.

20         THE COURT:  Okay.  Mr. Kashiwagi, would you like to

21   state your name for the record please?

22         MR. KASHIWAGI:  Takahiro Kashiwagi.

23         THE COURT:  All right.  And how old are you, sir?

24         All right.  Yeah, actually go ahead.

25         THE INTERPRETER:  My name is Kashiwagi Takahiro,

1    52 years old.

2            THE COURT:  Okay.  And you are here representing

3    the defendant, Furukawa Electric Company Limited, is that

4    right?

5            THE INTERPRETER:  Yes.

6            THE COURT:  And your position with that company is

7    what, sir?

8            THE INTERPRETER:  I'm a general manager of the

9    legal department.

10            THE COURT:  Okay.  And Furukawa Electric Company is

11    organized and domiciled in Tokyo, Japan?

12            THE INTERPRETER:  Yes.

13            THE COURT:  And you have been given authority to

14    enter into this Rule 11 plea agreement that has been

15    presented to the Court today?

16            THE INTERPRETER:  Yes, Your Honor.

17            THE COURT:  And I understand from the documents

18    submitted that you were authorized by the Board of Directors

19    of the company, which was given to you November 4th of this

20    year, is that right?

21            THE INTERPRETER:  Yes, Your Honor.

22            THE COURT:  Okay.  So you've had an opportunity to

23    go over the Rule 11 plea agreement carefully with Mr. Calo?

24            THE INTERPRETER:  Yes, Your Honor.

25            THE COURT:  And do you believe you understand its

1    terms?

2            THE INTERPRETER:  Yes, Your Honor.

3            THE COURT:  And this plea agreement was also

4    reviewed and approved by the Board of Directors?

5            THE INTERPRETER:  Yes, Your Honor.

6            THE COURT:  You understand that by the terms of

7    this agreement, on behalf of the company, you are pleading

8    guilty to multiple -- there are there multiple counts, four

9    counts that he's pleading guilty to?

10           MS. HELLINGS:  No, Your Honor, just one.

11           THE COURT:  Just one.

12           MS. HELLINGS:  Yes.

13           THE COURT:  And yet you have a $400 assessment.

14           MS. HELLINGS:  The company has one special

15   assessment just for the single count.

16           THE COURT:  And that's -- so it's a different rate

17   for companies than individuals?

18           MS. HELLINGS:  Yes.

19           THE COURT:  I see.  I didn't realize that.

20           MR. CALO:  Such is life in general.

21           THE COURT:  Right.  Okay.  You understand, sir,

22   that you're pleading guilty to the charge of Conspiracy to

23   Restrain Trade?

24           THE INTERPRETER:  Yes, Your Honor.

25           THE COURT:  And do you understand that the maximum

8

```
 1    possible sentence for that violation is the largest sum of

 2    the following:  $100 million or twice the gross pecuniary

 3    gain that was derived by the conspiracy -- conspirators from

 4    the crime or twice the gross pecuniary loss that was caused

 5    to the victims of the crimes by the conspirators.  You

 6    understand that?

 7                 THE INTERPRETER:  Yes, Your Honor.

 8                 THE COURT:  And do you understand that in addition,

 9    the penalties may include a term of probation of at least one

10    year and not more than five years?

11                 THE INTERPRETER:  Yes, Your Honor.

12                 THE COURT:  And that the maximum sentence may

13    include restitution ordered to be paid to the victims of the

14    offense?

15                 THE INTERPRETER:  Yes, Your Honor.

16                 THE COURT:  And a $400 special assessment provided

17    for by statute.

18                 THE INTERPRETER:  Yes, Your Honor.

19                 THE COURT:  Now, this charge is set forth in an

20    Information that has been filed with the Court.  You recall

21    that document?

22                 THE INTERPRETER:  Yes, Your Honor.

23                 THE COURT:  And you've gone over the charge and

24    discussed it thoroughly with Mr. Calo?

25                 THE INTERPRETER:  Yes, Your Honor.
```

9

| | |
|---|---|
| 1 | THE COURT:  And Mr. Calo, would you waive the |
| 2 | reading of the Information? |
| 3 | MR. CALO:  We certainly do, Your Honor. |
| 4 | THE COURT:  Okay.  You understand that the company |
| 5 | has a right to file an indictment in this case before |
| 6 | proceeding with a plea, you understand that? |
| 7 | THE INTERPRETER:  Yes, Your Honor. |
| 8 | THE COURT:  And that would -- that would first have |
| 9 | the case considered by a grand jury, which is made up of at |
| 10 | least 23 citizens from the community who would hear the |
| 11 | evidence from -- presented by the government in connection |
| 12 | with this case.  You understand? |
| 13 | THE INTERPRETER:  Yes, Your Honor. |
| 14 | THE COURT:  And it is only if the -- if at least 16 |
| 15 | of those citizens were to conclude that your company should |
| 16 | be charged with the violation that an indictment would be |
| 17 | returned.  You understand? |
| 18 | THE INTERPRETER:  Yes, Your Honor. |
| 19 | THE COURT:  By pleading guilty to the charges in |
| 20 | the Information, you're waiving or giving up the company's |
| 21 | right to have the matter considered first by a grand jury. |
| 22 | You understand that? |
| 23 | THE INTERPRETER:  Yes, Your Honor. |
| 24 | THE COURT:  All right.  You understand that if the |
| 25 | Court accepts this Rule 11 plea agreement, your company will |

1    become obliged to pay a fine of $200 million, and that would

2    be due -- I know I've got the page here somewhere.

3              MS. HELLINGS:  It's in paragraph eight, Your Honor.

4              THE COURT:  Eight?

5              MS. HELLINGS:  Payable in 45 days.

6              THE COURT:  Yes, payable within 45 days of the

7    sentence imposed.  Do you understand that?

8              THE INTERPRETER:  Yes, Your Honor.

9              THE COURT:  In addition, of course, the Court would

10   require the $400 special assessment to be paid.

11             THE INTERPRETER:  Yes, Your Honor.

12             THE COURT:  And because there are civil causes of

13   action available to the victims of this violation, the Court

14   would not be ordering any restitution as a part of the

15   sentence.  You understand that?

16             THE INTERPRETER:  Yes, Your Honor.

17             THE COURT:  And the Court will be considering the

18   joint request of the parties not to order any term of

19   probation, but I may decide to order at least the one-year

20   term of probation that would otherwise be required by

21   statute.  You understand that?

22             THE INTERPRETER:  Yes, Your Honor.

23             THE COURT:  By pleading guilty, of course, the

24   company would be waiving or giving up a number of important

25   legal rights that it otherwise has in the case.  You

1    understand that?

2              THE INTERPRETER:  Yes, Your Honor.

3              THE COURT:  Of course, it's giving up its right to

4    have a trial in the case and a number of legal rights

5    connected with that trial, which we'll discuss in a few

6    minutes, along with other rights.  You understand that?

7              THE INTERPRETER:  Yes, Your Honor.

8              THE COURT:  The company will also be giving up the

9    opportunity to appeal the conviction and the sentence imposed

10   by the Court if it is in accordance with the Rule 11 plea

11   agreement in this case.

12             THE INTERPRETER:  Yes, Your Honor.

13             THE COURT:  Okay.  You understand that the company

14   has a right to be represented by counsel throughout these

15   proceedings, including the trial, sentence and appeal of the

16   case, and if -- I guess if it couldn't afford counsel,

17   counsel could be appointed to represent the company -- the

18   company.  You understand that, sir?

19             THE INTERPRETER:  Yes, Your Honor.

20             THE COURT:  The company would also be giving up the

21   opportunity to decline to accept service of summons in the

22   case and to contest the jurisdiction of the United States to

23   prosecute this case in this district.  You understand that?

24             THE INTERPRETER:  Yes, Your Honor.

25             THE COURT:  You understand the company could also

```
1    elect, instead of pleading guilty to these charges, to plead

2    not guilty and to have a trial in the -- in the matter to

3    decide that question?

4            THE INTERPRETER:  Yes, Your Honor.

5            THE COURT:  If the company elected to have a trial

6    in the case, it would be presumed not guilty of the charge,

7    presumed innocent of the offense.

8            THE INTERPRETER:  Yes, Your Honor.

9            THE COURT:  And that presumption would continue

10   unless and until the government proved each element or part

11   of the charge it's facing beyond a reasonable doubt.

12           THE INTERPRETER:  Yes, Your Honor.

13           THE COURT:  So to establish this violation, the

14   government would first have to prove that at least two

15   persons or entities got together to enter into an illegal

16   agreement or conspiracy to restrain trade.  Do you understand

17   that?

18           THE INTERPRETER:  Yes, Your Honor.

19           THE COURT:  And secondly, the government would have

20   to prove that Furukawa as a company voluntarily entered into

21   that agreement.

22           THE INTERPRETER:  Yes, Your Honor.

23           THE COURT:  And thirdly, that Furukawa understood

24   the object and the purpose of the agreement to restrain trade

25   as it participated.
```

1           THE INTERPRETER:  Yes, Your Honor.

2           THE COURT:  Okay.  So you understand that as

3    attorney for the corporation, Mr. Calo would have the

4    opportunity to cross-examine all of the witnesses called to

5    testify against the company by the government.

6           THE INTERPRETER:  Yes, Your Honor.

7           THE COURT:  And in addition, Mr. Calo could have

8    the Court order witnesses into court to testify for the

9    corporation if it wishes during the course of the trial.

10          THE INTERPRETER:  Yes, Your Honor.

11          THE COURT:  Then if convicted, the corporation

12   would have the opportunity to appeal the conviction if it

13   chose to go to trial instead of pleading guilty in this case.

14          THE INTERPRETER:  Yes, Your Honor.

15          THE COURT:  And then the corporation would also

16   have the opportunity, once sentenced, to appeal the sentence

17   that the Court might decide upon if it were not for this Rule

18   11 plea agreement.

19          THE INTERPRETER:  Yes, Your Honor.

20          THE COURT:  So these are all rights that the

21   corporation as a defendant in this case is giving up in order

22   to enter into this Rule 11 plea agreement.  You understand

23   that?

24          THE INTERPRETER:  Yes, Your Honor.

25          THE COURT:  So understanding then the likely and

1  the possible consequences of pleading guilty to these charges

2  and understanding the rights that the corporation is giving

3  up in order to do so, do you still wish to tender this plea

4  of guilty today?

5          THE INTERPRETER:  Yes, Your Honor.

6          THE COURT:  How then do you wish to plead to the

7  charge of Conspiracy to Restrain Trade on behalf of Furukawa,

8  guilty or not guilty?

9          MR. KASHIWAGI:  Guilty.

10          THE COURT:  And can you tell me what happened in

11  this case that leads you to believe the corporation is guilty

12  of this charge?  Mr. Calo?

13          MR. CALO:  Your Honor, may I be heard for a second?

14          THE COURT:  Sure.

15          MR. CALO:  Anticipating that, we have prepared a

16  statement of the factual basis, which I would propose to the

17  Court -- the government has no objection -- if I could read

18  it, essentially read it to my client, and he could affirm it

19  to the Court if that's acceptable.

20          THE COURT:  Yes, that's fine.

21          MR. CALO:  Thank you very much.

22          Your Honor, my company is a Japanese company with

23  headquarters in Tokyo, Japan.  It manufactures many products,

24  including the automotive wire harnesses and related products

25  listed in the Information.  It employs more than 5,000 people

1   and sells automotive wire harnesses and related products in

2   the United States and elsewhere.

3          From the time period listed in the Information,

4   that is, approximately from January, 2000 to January, 2010,

5   officers and employees of my company had discussions with

6   employees of competitors that also manufactured and sold

7   automotive wire harness products -- excuse me, automotive

8   wire harness products, yes.  Excuse me.  These discussions

9   took place in face-to-face meetings or by telephone.  The

10  discussions took place in the United States and elsewhere.

11         During such meetings -- during such meetings and

12  conversations, a conspiracy was formed and agreements were

13  reached to allocate the supply of automotive wire harnesses

14  and related products sold to automobile manufacturers on a

15  model-by-model basis and to rig bids quoted to automobile

16  manufacturers for automotive wire harnesses and related

17  products.

18         Therefore, as a result of these meetings, my

19  company produced and sold automotive wire harnesses and

20  related products that were the subject of the illegal price

21  fixing agreements that my company had made with competitors.

22  Those products and the payments for those products traveled

23  in interstate and foreign commerce and substantially affected

24  interstate and foreign trade and commerce.

25         For the purposes of this plea agreement, during the

1    time period of January, 2000 to January, 2010, our sales of

2    automotive wire harnesses and related products affecting U.S.

3    auto manufacturers totalled approximately $839 million.

4            Finally, we note to the Court that some of the

5    products affected by the conspiracy were sold to automobile

6    manufacturers by one of our subsidiaries, which is located

7    here in the Eastern District of Michigan.

8            Thank you, Your Honor.  That's the summary of the

9    factual basis.

10           THE COURT:  Did you state a period of time?

11           MR. CALO:  I did, January of 2000 to January, 2010.

12           THE COURT:  Okay.  Thank you.  And did I hear an

13   affirmation here by your client?

14           MR. CALO:  Do you affirm that that is a correct

15   factual summary basis of the crime allegation?

16           THE INTERPRETER:  Yes, Your Honor.

17           MR. CALO:  Thank you, Your Honor.

18           THE COURT:  Thank you.  Is counsel satisfied with

19   the sufficiency of the plea?

20           MS. HELLINGS:  Yes, Your Honor.

21           THE COURT:  Mr. Calo?

22           MR. CALO:  Yes, Your Honor.

23           THE COURT:  Court is likewise satisfied that the

24   plea is voluntary, knowledgeable and accurate.

25           I should have asked directly, and I'll do that now

1    actually, whether Mr. Kashiwagi -- I'm screwing that up

2    already.

3            MR. CALO:  No, no, you did fine.  No worse than I

4    have, and I've known it for weeks, Your Honor.

5            THE COURT:  Okay.  Sir, has there been -- have

6    there been any promises made to the corporation causing it to

7    plead guilty today that are not in this Rule 11 plea

8    agreement?

9            THE INTERPRETER:  No, Your Honor.

10           THE COURT:  Okay.  And has anyone tried to force or

11   intimidate the corporation to plead guilty under duress based

12   upon anything, again, that is not already contained as

13   promises in this agreement?

14           THE INTERPRETER:  No, Your Honor.

15           THE COURT:  So no other threats that would amount

16   to coercion of the company to plead guilty?

17           THE INTERPRETER:  No, Your Honor.

18           THE COURT:  Okay.  Thank you.  Well, again, the

19   Court is satisfied that the plea is voluntary and

20   knowledgeable and accurate as -- based upon the factual basis

21   that's been presented.  The Court will therefore accept the

22   plea of guilty.

23           And I note that in the agreement there's a request

24   that the Court again consider immediate sentencing in the

25   case that is based upon the -- the circumstances outlined in

1    the plea agreement and the -- and what I will hear during the

2    presentation in relation to the sentence to be imposed, is

3    that right?

4              MS. HELLINGS:  Yes, Your Honor.

5              THE COURT:  Mr. Calo, you are making that request

6    as well?

7              MR. CALO:  Yes, Your Honor, we certainly are.

8              THE COURT:  All right.  I believe I should be able

9    to elicit enough information to comply with the purposes and

10   the objectives in the sentencing statute to determine a

11   sentence without the need for a pre-sentence investigation

12   report and so --

13             MS. HELLINGS:  Did Your Honor receive the

14   sentencing memorandum that was filed under seal?

15             THE COURT:  I thought I read something but --

16             THE CLERK:  Let me check your desk.

17             THE COURT:  She's going to check my desk.

18             (Brief pause)

19             THE COURT:  Did the memorandum discuss how the

20   amount of the fine was determined?

21             MS. HELLINGS:  Yes, Your Honor.

22             MR. CALO:  Yes.

23             THE COURT:  Okay.

24             MR. CALO:  That's exactly --

25             THE COURT:  And because it's under seal, would you

1    prefer that we not discuss that on the record?

2         MS. HELLINGS:  Um, I think that there are some

3    things that we can discuss, but there were some things that

4    we sort of preferred not to discuss.

5         THE COURT:  Okay.  Yes, I do have that memo and I

6    have briefly reviewed it but I want to refresh my memory

7    here.

8         (Brief pause)

9         THE COURT:  Yes.  Okay.  That actually does refresh

10   my memory, and Ms. Hellings, I'll be glad to hear your

11   discussion or do you prefer that I start with Mr. Calo?

12        MS. HELLINGS:  It doesn't matter to me.  I'm happy

13   to start.

14        THE COURT:  Why don't I start with you and

15   understand the basis for the recommendation from the

16   government's viewpoint.

17        MS. HELLINGS:  I was just going to use the mike.

18   Thank you.

19             This is a complicated industry and calculating the

20   volume of commerce was also complicated here.

21        THE COURT:  Let me interrupt for just a second here

22   because we want to make sure you're explaining what's being

23   said to your client.  Okay.  Go ahead.

24        MS. HELLINGS:  We essentially took into

25   consideration three categories of commerce as we understand

1    it in this industry.  The first category includes wire

2    harnesses and related products that are manufactured in the

3    United States, sold in the United States to automakers here

4    in the U.S. who are installing these parts into their cars.

5    We included this commerce in our overall calculation.

6          The second category includes wire harnesses and

7    related products for -- that were manufactured abroad, that

8    is, for example, in Japan, that were then sold into the

9    United States and installed in cars here in the U.S.  We also

10   included this category in our overall volume of commerce

11   analysis.

12         There's a third category that's a little more

13   complicated.  That is products that are manufactured abroad,

14   they're sold to automakers abroad, installed in cars abroad

15   that are ultimately destined for the U.S. and U.S. consumers.

16   Although we could have included this commerce arguably, we

17   did not include it in our overall volume of commerce analysis

18   or our calculation overall.

19         THE COURT:  Was that calculation which totaled 839

20   million?

21         MS. HELLINGS:  There's one more step.  Essentially

22   what we did is we took the categories one and two and we

23   started the defendant at the bottom of the guidelines range.

24   We then adjusted upwards within the range because we felt

25   that the guidelines fine was understating the seriousness of

1  the offense because of this third category of commerce that

2  we were not including.  The upward adjustment correlates with

3  the percentage of the business that the defendant had that

4  falls into category three.  We worked with the economist in

5  the Justice Department to come up with this synopsis and we

6  think it fairly represents the harm here.

7          THE COURT:  Okay.

8          MS. HELLINGS:  And then, of course, from there, we

9  did give a cooperation discount to the defendant off the back

10  end of that analysis.

11          THE COURT:  Right.  So we had a -- we had a -- an

12  agreed upon guideline range of 167.8 million to 537.5 million

13  based upon a total culpability score of eight, is that

14  correct?

15          MS. HELLINGS:  That's correct, Your Honor.

16          MR. CALO:  Would the Court --

17          THE COURT:  Mr. Calo?

18          MR. CALO:  Yeah.  Thank you.  Your Honor, I'm going

19  to take right off from the last point, which I think is the

20  essential point for my client this morning, and that is the

21  Court has -- the Court has within its power the ability to

22  not only follow the recommendation with regard to the fine --

23  and it is a substantial fine.  It is a fine that, while we

24  are agreeing to it for these criminal purposes, I want the

25  Court to bear in mind that we worked hard with the government

1   in a cooperative manner to reach a resolution, and I would

2   like the Court to take that into account.  And I'm speaking

3   here directly about the issue of probation.  I think the fine

4   is substantial.  If the Court has any concerns about

5   probation, I would ask the Court to consider several things:

6         One is that the cooperation meant that this company

7   came forward even before it was aware of the government

8   investigation.  This was not a situation where the company --

9   the government had started to issue subpoenas to competitors

10  or to customers and we got wind of it and we say okay, we're

11  going in.  We didn't know the government was investigating

12  it.  We came in voluntarily.  And then once we came in, we

13  came in with full force.  We provided documents, we provided

14  witnesses, and as the plea agreement even notes, we've agreed

15  that four of our employees would be subject to individual

16  prosecution.  And as this Court is well aware from the

17  proceedings it's had, some of those individuals are

18  voluntarily submitting to the jurisdiction of the United

19  States and going to jail.

20        Not only that, but my client did not stop there.

21  Once we became aware of this misconduct, we conducted an

22  extensive internal investigation.  We have completely

23  revamped the internal policies and procedures regarding

24  compliance in this issue and we are going to be providing

25  extensive training.

```
 1              I would say to the Court that the fine is
 2     substantial.  It's warranted perhaps by the calculations, but
 3     the cooperation was certainly there.  And in terms of
 4     self-policing, I think this is a company that has policed
 5     itself right from the get-go even before the government was
 6     involved.
 7              So for that reason, I would urge the Court not to
 8     issue the term of probation.  I fully recognize it's within
 9     the Court's discretion, but I think the track record here
10     says don't put him on probation.  I think the government, who
11     has investigated this case for several -- for several months,
12     couple years actually, has also concurred that probation is
13     not necessary.  So I would ask the Court to consider the
14     cooperation, consider the totality of the its cooperation,
15     and I urge the Court to follow the recommended sentence.
16              THE COURT:  Okay.  Thank you, Mr. Calo.
17              And Mr. Kashiwagi, anything else that you would
18     like to say to the Court before the sentence is imposed?
19              THE INTERPRETER:  The company sincerely regrets the
20     events that have lead it to be before the Court today.  The
21     company accept full responsibility for its unlawful conduct.
22     It readily acknowledge the need to be punished and
23     respectfully ask the Court impose the sentence and fine urged
24     by the prosecutor and as set forth in the plea -- plea
25     agreement.
```

1          THE COURT:  All right.  Thank you.  Well, anything

2     else anyone wishes to add to the record before the Court

3     imposes sentence?

4          MR. CALO:  Defense will submit it, Your Honor.

5          MS. HELLINGS:  No, Your Honor.

6          THE COURT:  All right.  The Court is first directed

7     to consider the guideline range that applies to the

8     sentencing, and the Court has described that for the record

9     already at 167.8 to $537.5 million based upon a -- a

10    culpability score of eight.

11         And the background and circumstances I think have

12    been adequately described for the Court to enable the Court

13    to impose a meaningful sentence based upon this information

14    without the need for a pre-sentence investigation report.

15    Accordingly, the Court will proceed without the benefit of

16    that report as requested here by both counsel in the case.

17         The fine is indeed quite substantial as a

18    percentage of the total sales.  It's described here.  And

19    the -- and recognizing that in addition to sums paid in

20    connection with this criminal prosecution, that defendant

21    will face claims, lawsuits and obviously an exposure to

22    payment of civil restitution to the -- to the victims who

23    have already begun filing those claims, and I'm aware that

24    there are several civil cases already pending in this Court.

25         The Court is satisfied therefore that the proposed

1    fine is reasonable, proportionate to the seriousness of the

2    offense and the -- and the background of Furukawa as a

3    company, which has been described here by Mr. Calo in

4    connection with the company's recognition of its wrongdoing

5    and its forthcoming behavior thereafter in conducting its own

6    investigation and in initiating contact with the government

7    to correct the violations that have been described.

8            The Court is also satisfied that the remaining

9    factors of the sentencing statute at section 3553(a) will be

10   satisfied by the sentence as proposed here.

11           The behavior of Furukawa in initiating contact to

12   essentially self-police itself and to cooperate with

13   authorities is a strong indication that the probationary

14   sentencing otherwise contemplated by the statute would be

15   unnecessary.

16           In addition, the Rule 11 plea agreement includes

17   multiple consequences which would follow from a -- a failure

18   of the company to abide by the terms, including

19   post-conviction behavior and -- and the -- those

20   consequences, which are probably the most significant and

21   would otherwise be considered by the Court to be incorporated

22   in a probationary order, are the subject of an agreement and

23   enforceable through the terms of the agreement and the

24   potential consequences for violation that are provided for in

25   that document.

1        So the Court is -- is satisfied that given the

2   forthcoming behavior on the part of the defendant, that there

3   is not a need to go beyond the parties' agreement to deter

4   Furukawa from future violations, and the consequences are

5   certainly severe enough to satisfy the need to impose a

6   sentence that is sufficient but not greater than necessary to

7   deter other companies from like behavior.

8        Accordingly, and pursuant to the Sentencing Reform

9   Act of 1984, the Court will order that the defendant pay a

10  criminal fine of $200 million within 45 days of today's date.

11  It will order a judgment that does not include restitution

12  for the reasons that I've discussed.  It will -- the judgment

13  will include an order that requires the payment of $400 as a

14  special assessment forthwith.  And the Court will impose no

15  term of probation, again for the reasons that have been

16  discussed here.

17       Anything else that you believe the sentence ought

18  to include that I haven't mentioned, Ms. Hellings?

19       MS. HELLINGS:  Thank you, Your Honor.

20       THE COURT:  Mr. Calo?

21       MR. CALO:  Your Honor, I apologize.  First I want

22  to thank the Court for the sentence.  I've had to look into

23  this because of the large amount of money that we're

24  transferring.  It's going to be by wire transfer to the

25  Clerk's Office.  And the Court had just said right now it's

27

```
1    45 days from today.  It has tremendous interest implications

2    for us.  The actual law is -- and I was an AUSA for 17 years

3    and didn't know this until last week.  The actual law is from

4    the date that the Court files a judgment and commitment

5    order.  So if I could just have that clarified on the record,

6    it's not from today; it's actually from the date that the JNC

7    gets filed that the 45 days begin.

8              THE COURT:  I would fully --

9              MR. CALO:  Thank you, Your Honor.

10             THE COURT:  I would fully anticipate that it will

11   be filed today unless you would rather that we hold it off.

12             MR. CALO:  No.  I know --

13             THE COURT:  Forty-five days will give him enough

14   time.

15             MR. CALO:  Right, right.  Some courts in other

16   districts, the JNC might come out a day or two later or it

17   comes out a week later, but you obviously -- you probably

18   have the most efficient courtroom in the country, so I'll let

19   it go on that.

20             THE COURT:  Yeah.  Well, now I know she'll get it

21   out.

22             All right.  Okay.  Well, the Court then will order

23   that the sentence be imposed as I've stated it on the record,

24   and I will not be advising the defendant of its right to

25   appeal the conviction and sentence given the waiver that's
```

Plea/Sentencing • November 14, 2011

28

1    included in the Rule 11 agreement, which the Court has also

2    accepted, and so wish you good luck.  Thank you.

3            MR. CALO:  Thank you, Your Honor.

4            MR. BACHMAN:  Thank you, Your Honor.

5            MS. HELLINGS:  Thank you, Your Honor.

6            THE CLERK:  Counsel, one minute.  Were you all

7    sworn in?  I see that your appearances were filed.

8            MR. CALO:  I was sworn in on Thursday.

9            THE CLERK:  Oh, okay.

10           MR. CALO:  I'm still excited about it.

11           THE CLERK:  Great.

12           (Whereupon proceedings were concluded at 9:53 a.m.)

13                        —  —  —

14

15

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T I O N

2          I, Linda M. Cavanagh, Official Court Reporter of

3     the United States District Court, Eastern District of

4     Michigan, appointed pursuant to the provisions of Title 28,

5     United States Code, Section 753, do hereby certify that the

6     foregoing pages 1 through 28 comprise a full, true and

7     correct transcript taken in the matter of United States of

8     America vs. Furukawa Electric Company, Case No. 11-20612, on

9     Monday, November 14, 2011.

10

11

12                    s/Linda M. Cavanagh
                      Linda M. Cavanagh, CSR 131, RPR, CM, CRR
13                    Federal Official Court Reporter
                      United States District Court
14                    Eastern District of Michigan

15

16

17    Date: November 16, 2011
      Detroit, Michigan
18

19

20

21

22

23

24

25