# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | : : : | |
| THIS DOCUMENT RELATES TO: | : : | |
| All Automobile Dealer Actions All End-Payor Actions | : : : : | Child Case: W:12-cv-10002 Child Case: W:12-cv-10003 **ORAL ARGUMENT REQUESTED** |

# DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END-PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE AUTOMOBILE DEALERS' CONSOLIDATED CLASS COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6), Defendants[1] respectfully move to dismiss all claims in the End-Payors' Corrected Consolidated Amended Class Action Complaint, filed on June 26, 2012 (ECF No. 174) ("EP CCAC"), and the Automobile Dealers' Consolidated Class Complaint, filed on May 14, 2012 (ECF No. 85) ("AD CCC") (the EP CCAC and AD CCC are collectively referred to herein as the "Complaints").  In support of this motion, Defendants state as follows:

1.      Defendants base this motion upon the accompanying memorandum of law in support, oral argument of counsel, and such other and further material as the Court may consider.

2.      As required by E.D. Mich. Local Rule 7.1(a), counsel for Defendants sought concurrence from counsel for Auto Dealer plaintiffs on July 9, 2012 and counsel for End-Payor plaintiffs on July 6, 2012 via telephone conferences.  During those calls, counsel for Defendants explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought (*i.e.*, dismissal of the Complaints).

---

[1]      "Defendants" refers to American Furukawa, Inc.; Furukawa Electric Co., Ltd.; DENSO Corporation; DENSO International America, Inc.; Fujikura America, Inc.; Fujikura Ltd.; Kyungshin-Lear Sales and Engineering, LLC; Lear Corporation; Leoni AG; Leoni Wire Inc.; Leoni Wiring Systems, Inc.; Leoni Kabel GmbH; Leonische Holding Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Electric Wintec America, Inc.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.) Inc.; S-Y Systems Technologies Europe GmbH; Tokai Rika Co., Ltd.; TRAM, Inc.; Yazaki Corporation; and Yazaki North America, Inc.  Yazaki Corporation ("YC") has not yet been served with the AD CCC or any of the original complaints in the Auto Dealer Actions in the manner required by Paragraph 19 of Case Management Order No. 1 ("CMO No. 1"). Because YC has not yet been properly served by the Auto Dealers, it need not answer, move or otherwise respond to the AD CCC until sixty days after proper service thereof. *See* CMO No. 1 ¶ 20.  Accordingly, as YC is not yet a proper party to the Auto Dealer Action, YC joins and brings this motion solely against the End-Payors.  DENSO Corporation and DENSO International America, Inc. have not been named as defendants in the AD CCC and therefore join and bring this motion solely with respect to the EP CCAC.

Respectfully submitted,

July 13, 2012          By:     LANE POWELL PC

*/s/Larry S. Gangnes*  (w/consent)
Larry S. Gangnes
LANE POWELL PC
1420 Fifth Ave., Suite 4100
Seattle, WA 98101-2338
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
gangnesl@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Masayuki Yamaguchi
Darin M. Sands
LANE POWELL PC
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
yamaguchim@lanepowell.com
sandsd@lanepowell.com

Irwin Alterman (P10147)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone:  (248)528-1111
irwin.alterman@kkue.com

*Attorneys for Defendants American Furukawa, Inc.; and*
*Furukawa Electric Co., Ltd.*

WILMER CUTLER PICKERING HALE AND DORR LLP

July 13, 2012     By:   */s/Steven F. Cherry*  (w/consent)
Steven F. Cherry
David P. Donovan
Stephanie K. Wood
Elizabeth Martin
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
stephanie.wood@wilmerhale.com
ellie.martin@wilmerhale.com

Karen D. Stringer
Heather Price
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6406
Fax: (617) 526-5000
karen.stringer@wilmerhale.com
heather.price@wilmerhale.com

*Attorneys for Defendants DENSO International America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International America, Inc.*

KERR, RUSSELL AND WEBER, PLC

July 13, 2012     By:     */s/William A. Sankbeil*  (w/consent)
William A. Sankbeil (P19882)
Joanne Geha Swanson (P33594)
Matthew L. Powell (P69186)
500 Woodward Avenue, Suite 2500
KERR, RUSSELL AND WEBER, PLC
Detroit, MI 48226
Telephone: (313) 961-0200
Fax: (313) 961-0388
wsankbeil@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russel.com

James L. Cooper
Sonia Kuester Pfaffenroth
Laura Cofer Taylor
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Telephone: (202) 942-5014
Fax: (202) 942-5999
james.cooper@aporter.com
sonia.pfaffenroth@aporter.com
laura.taylor@aporter.com

*Attorneys for Defendants Fujikura America, Inc. and
Fujikura Ltd.*

SMITH, GAMBRELL & RUSSELL, LLP

July 13, 2012     By:     */s/Wm. Parker Sanders*  (w/consent)
Wm. Parker Sanders (Georgia Bar No. 626020)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 815-3684
psanders@sgrlaw.com

Jeffrey G. Heuer (P14925)
Peter M. Falkenstein (P61375)
JAFFE, RAITT, HEUER & WEISS, P.C.
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
Telephone: (248) 351-3000
jheuer@jaffelaw.com
pfalkenstein@jaffelaw.com

*Attorney for Defendant Kyungshin-Lear Sales and
Engineering, LLC*

DYKEMA GOSSETT PLLC

July 13, 2012    By:    */s/Howard B. Iwrey* (w/consent)
                        Howard B. Iwrey (P39635)
                        DYKEMA GOSSETT PLLC
                        39577 Woodward Avenue, Suite 300
                        Bloomfield Hills, MI 48304
                        (248) 203-0526 – Telephone
                        hiwrey@dykema.com

                        Andrew S. Marovitz
                        Britt M. Miller
                        MAYER BROWN LLP
                        71 S. Wacker Drive
                        Chicago, IL 60606
                        Telephone: (312) 782-0600
                        Fax: (312) 701-7711
                        amarovitz@mayerbrown.com
                        bmiller@mayerbrown.com

                        *Attorneys for Defendant Lear Corporation*

                        O'MELVENY & MYERS LLP

July 13, 2012    By:    */s/Michael F. Tubach* (w/consent)
                        Michael F. Tubach
                        O'MELVENY & MYERS LLP
                        Two Embarcadero Center, 28th Floor
                        San Francisco, CA 94111
                        Telephone: (415) 984-8700
                        Fax: (415) 984-8701
                        Mtubach@omm.com

                        Michael R. Turco (P48705)
                        BROOKS WILKINS SHARKEY & TURCO PLLC
                        401 South Old Woodward, Suite 400
                        Birmingham, MI 48009
                        Telephone: (248) 971-1713
                        Fax: (248) 971-1801
                        turco@bwst-law.com

                        *Attorneys for Defendants Leoni AG, Leoni Wire Inc., Leoni Wiring*
                        *Systems, Inc., Leoni Kabel GmbH, and Leonische Holding Inc.*

LATHAM & WATKINS LLP

July 13, 2012      By:    */s/ Marguerite M. Sullivan*
                          Marguerite M. Sullivan
                          LATHAM & WATKINS LLP
                          555 Eleventh Street NW, Suite 1000
                          Washington, DC 20004
                          Telephone: (202)637-2200
                          Fax: (202)637-2201
                          maggy.sullivan@lw.com


                          William H. Horton (P31567)
                          GIARMARCO, MULLINS & HORTON, P.C.
                          101 West Big Beaver Road, Tenth Floor
                          Troy, MI 48084-5280
                          Telephone: 248-457-7060
                          bhorton@gmhlaw.com

                          *Attorneys for Defendants Sumitomo Electric Industries, Ltd.;*
                          *Sumitomo Electric Wintec America, Inc.; Sumitomo Wiring*
                          *Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S*
                          *Wiring Systems, Inc.; and Sumitomo Wiring Systems (U.S.A.) Inc.*

                          COVINGTON & BURLING LLP

July 13, 2012      By:    */s/Michael J. Fanelli*  (w/consent)
                          Michael J. Fanelli
                          COVINGTON & BURLING LLP
                          1201 Pennsylvania Ave., NW
                          Washington, D.C. 20004
                          Telephone: (202) 662-6000
                          Fax: (202) 662-5383
                          Mfanelli@cov.com

                          Anita F. Stork
                          COVINGTON & BURLING LLP
                          One Front Street
                          35th Floor
                          San Francisco, CA 94111
                          Telephone: (415) 591-6000
                          Fax: (415) 955-6550
                          astork@cov.com

                          *Attorneys for Defendant S-Y Systems Technologies*
                          *Europe GmbH*

BUTZEL LONG

July 13, 2012      By:      */s/David F. DuMouchel*  (w/consent)
                            David F. DuMouchel (P25658)
                            George B. Donnini (P66793)
                            BUTZEL LONG
                            150 West Jefferson, Suite 100
                            Detroit, MI 48226
                            Telephone: (313)225-7000
                            dumouchd@butzel.com
                            donnini@butzel.com

                            W. Todd Miller
                            BAKER & MILLER PLLC
                            2401 Pennsylvania Ave., NW, Suite 300
                            Washington, DC 20037
                            Telephone: (202)663-7820
                            TMiller@bakerandmiller.com

                            *Attorneys for Defendants Tokai Rika Co., Ltd. and  TRAM, Inc.*

JONES DAY

July 13, 2012     By:     */s/John M. Majoras*  (w/consent)
John M. Majoras
Carmen G. McLean
JONES DAY
51 Louisiana Ave. N.W.
Washington, D.C. 20001-2113
Telephone (202) 879-3939
Fax (202) 626-1700
jmmajoras@jonesday.com
cgmclean@jonesday.com

Michelle K. Fischer
Stephen J. Squeri
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone (216) 586-3939
Fax (216) 579-0212
mfischer@jonesday.com
sjsqueri@jonesday.com

*Attorneys for Defendants Yazaki Corporation and Yazaki North America, Inc.*

YAZAKI NORTH AMERICA, INC.

Atleen Kaur (P66595)
Yazaki North America, Inc.
6801 N. Haggerty Road
Canton, MI 48187
Telephone: 734-983-4622
Fax: 734-983-4623
Email:  Atleen.kaur@us.yazaki.com

*Attorney for Defendant Yazaki North America, Inc.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | |
| THIS DOCUMENT RELATES TO: | |
| All Automobile Dealer Actions All End-Payor Actions | Child Case: W:12-cv-10002 Child Case: W:12-cv-10003 |
| | **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' COLLECTIVE MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END-PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE AUTOMOBILE DEALERS' CONSOLIDATED CLASS COMPLAINT**

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether the Court should dismiss the End-Payors' and Automobile Dealers' Complaints in their entirety because they have not satisfied the requirements of *Twombly* to allege facts sufficient to plead a plausible conspiracy.  (The Automobile Dealers are referred to herein as "Auto Dealers."  The Auto Dealers and End-Payors are referred to collectively as "Plaintiffs.")

2.      Whether the Court should dismiss the Plaintiffs' Complaints in their entirety because Plaintiffs have failed to plausibly allege an injury-in-fact, as required for constitutional standing.

3.      Whether Plaintiffs have constitutional standing to assert claims under the laws of jurisdictions in which none of the Plaintiffs resides or allegedly suffered injury.

4.      Whether Plaintiffs who allegedly acquired a Wire Harness System solely by purchasing or leasing a vehicle in which the system was just one of over 10,000 components ("Component Part Plaintiffs") lack antitrust standing to bring their antitrust claims.

5.      Whether, as indirect purchasers, Plaintiffs are barred from bringing suit under the antitrust laws of Massachusetts and Missouri where both states follow *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*"), and bar indirect purchaser claims.

6.      Whether Plaintiffs are barred from recovering under the antitrust laws of Hawaii, Nebraska, New Hampshire, and Utah for purchases made before the date that each of those states passed laws that "repeal" *Illinois Brick*.

7.      Whether Plaintiffs are barred from maintaining claims as class actions under the antitrust law of Illinois and the consumer protection laws of Kansas, Mississippi, Montana, and South Carolina where the relevant statutes prohibits such suits.

8.      Whether Plaintiffs are barred from maintaining claims under the antitrust laws of the District of Columbia, Massachusetts, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, and West Virginia because those statutes do not reach predominantly interstate conduct.

9.      Whether Plaintiffs' claims under the consumer protection laws of Florida, Michigan, Minnesota, North Dakota, and South Dakota must be dismissed because Plaintiffs failed to plead fraud or deceit with particularity.

10.     Whether Plaintiffs' claims under the consumer protection laws of Arkansas, the District of Columbia, Kansas, New Mexico, and North Carolina must be dismissed because Plaintiffs failed to allege unconscionable conduct or other aggravating circumstances.

11.     Whether Plaintiffs are barred from bringing their claims under the consumer protection laws of Arizona, Arkansas, Kansas, Michigan, Minnesota, New Mexico, Rhode Island, and South Dakota because antitrust price-fixing claims are not actionable under those statutes.

12.     Whether Plaintiffs' New York consumer protection law claims must be dismissed because Plaintiffs failed to allege facts sufficient to support standing.

13.     Whether Plaintiffs failed to allege a sufficient nexus between Defendants' conduct and intrastate commerce as the consumer protection laws of California, Montana, New Hampshire, New York, and North Carolina require.

14.     Whether, as businesses, the Auto Dealers are precluded from bringing consumer protection claims under the laws of Iowa, Kansas, Massachusetts, Michigan, Mississippi, Missouri and Montana.

15.     Whether the Component Part Plaintiffs lack standing to assert consumer protection claims under the laws of Arkansas, Nebraska, New York and Vermont because their claims are too remote.

16.     Whether the Court should dismiss Auto Dealers' unjust enrichment claims because Auto Dealers failed to identify the state law(s) under which they assert those claims.

17.     Whether Plaintiffs can maintain unjust enrichment claims under the law of a particular state where there are no surviving antitrust or consumer protection claims under the law of that state.

18.     Whether Plaintiffs are barred from maintaining unjust enrichment claims where Plaintiffs, individual consumers or auto dealers, were parties to voluntary agreements and received the benefit of their bargains.

19.     Whether Plaintiffs' claims for unjust enrichment under the laws of Florida, Kansas, Maine, Michigan, North Carolina, North Dakota, and Utah must be dismissed because Plaintiffs did not (and cannot) plead that they conferred a direct benefit on Defendants.

20.     Whether Plaintiffs' unjust enrichment claims under the laws of Arizona, Mississippi, New York, South Carolina, Tennessee, and West Virginia must be dismissed because Plaintiffs have failed to meet the special pleading requirements of those laws.

21.     Whether Plaintiffs' claims for unjust enrichment under California law must be dismissed because California does not recognize a cause of action for unjust enrichment.

22.     Whether the Court should dismiss Plaintiffs' claims for injunctive relief due to Plaintiffs' failure to plausibly allege a real or immediate threat of future injury.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council*, 459 U.S. 519 (1983)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)

*Iqbal v. Ashcroft*, 556 U.S. 662 (2009)

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)

*In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007)

*In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008)

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004)

*In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907 (N.D. Ill. 2009)

Cases cited in appendices attached as Exhibits C through M.

**Rules**

Fed. R. Civ. P. 8(a)

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ............................................................... i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................. iii

INDEX OF AUTHORITIES.................................................................................... vii

INDEX OF EXHIBITS ........................................................................................ xiii

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 3

I.     THE COURT SHOULD DISMISS ALL OF THE AUTO DEALERS' AND
END-PAYORS' CLAIMS BECAUSE THEY DO NOT SATISFY THE
REQUIREMENTS OF *TWOMBLY* TO PLAUSIBLY PLEAD A CONSPIRACY ........... 3

II.    AUTO DEALERS AND END-PAYORS LACK CONSTITUTIONAL
STANDING TO ASSERT THEIR ANTITRUST AND CONSUMER
PROTECTION CLAIMS ............................................................................... 5

       A.    Plaintiffs Failed To Sufficiently Plead The Injury-In-Fact Necessary For
Constitutional Standing ................................................................. 5

       B.    Plaintiffs Lack Constitutional Standing To Assert Claims Under The Laws
Of Those States Where No Named Plaintiff Resides ........................... 10

III.   THE AUTO DEALER AND END-PAYOR PLAINTIFFS CANNOT OBTAIN
RELIEF UNDER VARIOUS STATES' ANTITRUST LAWS ........................................ 11

       A.    Component Part Plaintiffs Cannot Demonstrate Antitrust Standing ............. 11

             1.    Plaintiffs Must Satisfy The *Associated General Contractors* Test
To Have Standing Under Nearly All Of The State Antitrust Laws
Pled ................................................................................ 12

             2.    Courts Have Found Component Part Plaintiffs' Claims Too
Remote To Warrant Antitrust Standing, And The Same Result Is
Warranted Here ................................................................. 13

       B.    As Indirect Purchasers, Plaintiffs Cannot Bring A Claim Under
Massachusetts' Or Missouri's Antitrust Laws ....................................... 19

       C.    Auto Dealers And End-Payors Cannot Assert Retroactive Antitrust Claims
Under The Antitrust Laws Of Hawaii, Nebraska, New Hampshire And
Utah ........................................................................................ 20

D. Because Plaintiffs Allege An Insufficient Nexus Between Defendants' Conduct And *Intra*state Commerce, Their Antitrust Claims Fail In Nine States ...................................................................................20

E. Auto Dealers Cannot Maintain An Antitrust Claim As A Class Action Under Illinois Law ...................................................................22

IV. AUTO DEALERS' AND END-PAYORS' CLAIMS UNDER VARIOUS STATE CONSUMER PROTECTION STATUTES MUST BE DISMISSED ...........................22

A. Plaintiffs Fail To Plead Fraud Or Deceit With The Requisite Particularity As Required By Certain Consumer Protection Laws ..............................22

B. Plaintiffs Do Not Allege Any Unconscionable Conduct Or Other Aggravating Circumstances As Several States Require .........................23

C. Plaintiffs' Price-Fixing Claims Are Not Actionable Under The Consumer Protection Laws of Eight States ...................................................24

D. Plaintiffs Do Not Allege Facts To Support Standing Under New York's Consumer Protection Law ...............................................................25

E. Because Plaintiffs Fail To Allege A Sufficient Nexus Between Defendants' Conduct And Intrastate Commerce, The Court Should Dismiss Their Claims Under The Consumer Protection Laws Of Five States ...................................................................................25

F. As Businesses, Auto Dealers Cannot Bring Consumer Protection Claims Under The Laws Of Seven States ...........................................26

G. The Component Part Plaintiffs Lack Standing To Assert Consumer Protection Claims Under Four States' Laws Because Their Claims Are Too Remote ...................................................................................28

H. Plaintiffs Cannot Pursue Their Claims Under The Consumer Protection Laws of Kansas, Mississippi, Montana, Or South Carolina As A Class Action ...................................................................................29

V. AUTO DEALERS' AND END-PAYORS' CLAIMS FOR UNJUST ENRICHMENT FAIL ...................................................................31

A. Auto Dealers Fail To Identify Any State Law In Support Of Their Unjust Enrichment Claims ...............................................................31

B. Plaintiffs Cannot Use Unjust Enrichment To Recover On Failed Antitrust And Consumer Protection Theories ...........................................32

C.     Unjust Enrichment Is Unavailable Where, As Here, A Party To A Voluntary Agreement Received The Benefit Of Its Bargain ................................. 35

D.     Because Plaintiffs Did Not Confer A Direct Benefit On Defendants, Their Unjust Enrichment Claims Under The Laws Of Seven States Fail ...................... 36

E.     Plaintiffs Fail To State Unjust Enrichment Claims Under The Laws Of Seven States For Additional Reasons ................................................................. 36

VI.    PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE THREATENED FUTURE INJURY ENTITLING THEM TO INJUNCTIVE RELIEF ............................ 38

# INDEX OF AUTHORITIES

## Cases

*A&M Supply Co. v. Microsoft Corp.*,
654 N.W.2d 572 (Mich. App. 2002) ......................................................................... 6

*Alabama v. Blue Bird Body Co.*,
573 F.2d 309 (5th Cir. 1978) ................................................................................. 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 6

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council*,
459 U.S. 519 (1983) ..................................................................................... Passim

*BC's Heating & Air and Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*,
No. 2:11-cv-136-KS-MTP, 2012 WL 642304 (S.D. Miss. Feb. 27, 2012) (Ex.O) ................. 30

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 3, 6, 24

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
818 N.E.2d 1140 (N.Y. 2004) .......................................................................... 25, 29

*Brown v. Matauszak*,
415 Fed. Appx. 608 (6th Cir. 2011) ........................................................................ 6

*Burton v. R.J. Reynolds Tobacco Co.*,
886 F. Supp. 1515 (D. Kan. 1995) ........................................................................ 23

*Ciardi v. F. Hoffman-La-Roche, Ltd.*,
762 N.E.2d 303 (Mass. 2002) ......................................................................... 20, 28

*Ciardi v. Hoffmann-LaRoche, Ltd.*,
No. 993244, 2000 WL 33162197 (Mass. Super. Ct. Sept., 29, 2000) (Ex.R) ....................... 21

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
795 F. Supp. 2d 874 (D. Minn. 2011) ..................................................................... 23

*Freeman Indus. v. Eastman Chem. Co.*,
172 S.W.3d 512 (Tenn. 2005) ......................................................................... 21, 37

*Fucile v. Visa U.S.A. Inc.*,
No. S1560-03 CNC, 2004 WL 3030037 (Vt. Super. Dec. 27, 2004) (Ex.V) ........................ 29

*Hill v. Roll Int'l Corp.*,
128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011) ............................................................ 38

*Hoard v. Shawnee Mission Medical Center*,
662 P.2d 1214 (Kan. 1983) ..................................................... 15

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) .................................................................. 2

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) (Ex.Y) ........................................ 36

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) ......................................... 22, 32, 33

*In re Dynamic Random Access Memory Antitrust Litig. ("DRAM I")*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ................................... 14, 30

*In re Dynamic Random Access Memory Antitrust Litig. ("DRAM II")*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ................................ 13, 15, 17, 29

*In re Estate of Verploegh*,
No. 303296, 2012 WL 1623525, (Mich. Ct. App. May 8, 2012) (Ex.Z) .................................. 15

*In re Flash Memory Antitrust Litig.*
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..................................... 2

*In re Graphics Processing Units Antitrust Litig. ("GPU I")*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................... 11, 24, 25

*In re Graphics Processing Units Antitrust Litig. ("GPU II")*,
253 F.R.D. 478 (N.D. Cal. 2008) ................................................ 7

*In re Intel Corp. Microprocessor Antitrust Litig.*,
496 F. Supp. 2d 404 (D. Del. 2007) .......................................... 35

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2012 WL 2126351 (N.D. Cal. June 12, 2012) (Ex.AA) ................ 38

*In re Microsoft Corp. Antitrust Litig.*,
MDL 1332, 2003 WL 22070561 (D. Md. Aug. 22, 2003) (Ex.CC) ................................. 21, 37

*In re Microsoft Corp. Antitrust Litig.,*
401 F. Supp. 2d 461 (D. Md. 2005) ............................................ 36

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
350 F. Supp. 2d 160 (D. Me. 2004) ...................................... 31, 33, 35

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
522 F.3d 6 (1st Cir. 2008) ......................................................... 38

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  632 F. Supp. 2d 42 (D. Me. 2009) .......................................................................... 9

*In re Packaged Ice Antitrust Litig.*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011).............................................................. 11, 31

*In re Potash Antitrust Litig.*,
  667 F. Supp. 2d 907 (N.D. Ill. 2009) ...................................................... 15, 17, 36, 39

*In re: Refrigerant Compressors Antitrust Litig.*,
  Order Dismissing Indirect Purchaser Pls.'
  Claims For Lack of Constitutional Standing
  No. 2:09-md-02042-SFC (E.D. Mich. July 10, 2012) (Ex.EE) ............................... 11

*In re Relafen Antitrust Litig.*,
  225 F.R.D. 14 (D. Mass. 2004)................................................................................ 30

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) .............................................................. 11, 33

*In re Wellbutrin XL Antitrust Litig.*,
  260 F.R.D. 143 (E.D. Pa. 2009)......................................................................... 11, 31

*Independence County v. Pfizer, Inc.*,
  534 F. Supp. 2d 882 (E.D. Ark. 2008)..................................................................... 29

*INS v. Pangilinan*,
  486 U.S. 875 (1988)................................................................................................. 32

*Ireland v. Microsoft Corp.*,
  No. 00-CV-201515, 2001 WL 1868946 (Mo. Cir. Ct. Jan. 24, 2001) (Ex.FF) ....... 19

*Kanne v. Visa U.S.A. Inc.*,
  723 N.W.2d 293 (Neb. 2006) .................................................................................. 29

*Karofsky v. Abbott Labs.*,
  No. cv-95-1009, 1997 WL 34504652 (Me. Super. Oct. 16, 1997) (Ex.HH)............. 6

*Kline v. Coldwell, Banker & Co.*,
  508 F.2d 226 (9th Cir. 1974) .................................................................................... 5

*Knowles v. Visa U.S.A., Inc.*,
  No. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) (Ex.II) ..... 13, 19

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................... 6

*Melchior v. New Line Prods., Inc.*,
   131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003) ........................................................................... 38

*Melnick v. Microsoft Corp.*,
   No. CV-99-709, No. CV-99-752, 2001 WL 1012261
   (Me. Super. Ct. Aug. 24, 2001) (Ex.KK)............................................................................... 19

*Merck & Co. v. Lyon*,
   941 F. Supp. 1443 (M.D.N.C. 1996) ..................................................................................... 27

*Meridian Project Systems, Inc. v. Hardin Construction Co.*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005) ................................................................................. 26

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*,
   578 N.W.2d 222 (Iowa 1998) ................................................................................................ 28

*New York v. Daicel Chem. Indus., Ltd.*,
   840 N.Y.S.2d 8 (N.Y. App. Div. 2007) ...................................................................... 25, 29

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ....................................................................................... 12, 13

*Paltre v. General Motors Corp.*,
   26 A.D.3d 481 (N.Y. App. Div. 2006) .................................................................................. 25

*Perez v. RadioShack Corp.*,
   No. 01-5095-CIV-SEITZ, 2002 WL 1335158 (S.D. Fla. Apr. 23, 2002) (Ex.NN)................... 1

*Quick v. Astrue*,
   No. 3:10-cv-133-J-32JBT, 2011 WL 2149412 (M.D. Fla. May 10, 2011) (Ex.PP).................. 2

*Siena v. Microsoft Corp.*,
   796 A.2d 461 (R.I. 2002)....................................................................................................... 25

*Sperry v. Crompton Corp.*,
   863 N.E.2d 1012 (N.Y. 2007)............................................................................................... 37

*Stark v. Visa U.S.A., Inc.*
   No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) (Ex.UU) ............. 17, 19

*Strang v. Visa U.S.A., Inc.*,
   No. 03-011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) (Ex.VV) ............................ 16

*Teague v. Bayer AG*,
   671 S.E.2d 550 (N.C. Ct. App. 2009) ................................................................................... 13

*Trustmark Ins. Co. v. Bank One, Arizona, NA*,
   48 P.3d 485 (Ariz. Ct. App. 2002)........................................................................................ 36

*Walker v. USAA Casualty Insurance Co.*,
    474 F. Supp. 2d 1168 (E.D. Cal. 2007) ................................................................. 38

*Weaver v. Cabot Corp.*,
    No. 03 CVS 04760, 2004 WL 3406119 (N.C. Super. Mar. 26, 2004) (Ex.WW)..................... 16

*Wille v. Southwestern Bell Tel. Co.*,
    549 P.2d 903 (Kan. 1976)................................................................................ 23

*Willis v. Rehab Solutions, PLLC*,
    82 So. 3d 583 (Miss. 2012)....................................................................... 37, 38

*Wittenberg v. First Indep. Mortg. Co.*,
    No. 3:10–CV–58, 2011 WL 1357483 (N.D. W.Va. Apr. 11, 2011) (Ex.XX)........................ 37

**Statutes**

15 U.S.C. § 26 ................................................................................................ 38

740 Ill. Comp. Stat. § 10/7 ............................................................................... 22

Haw. Rev. Stat. § 480-2 .................................................................................. 20

Haw. Rev. Stat. § 480-13.3 ............................................................................. 20

Iowa Code § 714H, *et seq.* ............................................................................. 28

Kan. Stat. Ann. § 50-624 ................................................................................ 27

Kan. Stat. Ann. § 50-626 ................................................................................ 24

Kan. Stat. Ann. § 50-627 ................................................................................ 25

Kan. Stat. Ann. § 50-634 ................................................................................ 30

Mass. Gen. Laws ch. 93A, § 11 ...................................................................... 28

Miss. Code Ann. § 75–24–15 .......................................................................... 30

Mo. Rev. Stat. § 416.141 ................................................................................ 19

Mont. Code Ann. § 30-14-133 ........................................................................ 30

Mont. Code Ann. § 30-14-201 ........................................................................ 30

N.H. Rev. Stat. Ann. § 356:11 ........................................................................ 20

N.M. Stat. Ann. § 57-12-2 .............................................................................. 24

N.Y. Gen. Bus. Law § 349 ................................................................................................ 25

Neb. Rev. Stat. § 59-821 .................................................................................................. 20

R.I. Gen Laws § 6-36-12 .................................................................................................. 25

S.C. Code Ann. § 39-5-140 .............................................................................................. 30

Utah Code Ann. § 76-10-919 ........................................................................................... 20

## Rules

Fed. R. Civ. P. 9(b) .......................................................................................................... 23

Fed. R. Civ. P. 10(b) .......................................................................................................... 1

## INDEX OF EXHIBITS

| | |
|---|---|
| **EXHIBIT A** | Summary Of Defendants' Arguments For Dismissal Of Plaintiffs' (1) Individual State Law Antitrust Claims; (2) Individual State Law Consumer Protection Claims; And (3) Unjust Enrichment Claims |
| **EXHIBIT B** | Index Of Authorities Cited In Appendices |
| **EXHIBIT C** | Comparison Of Sixteen Statutes Cited By Auto Dealers With State Antitrust And Consumer Protection Statutes |
| **EXHIBIT D** | Appendix Of Authority Supporting Argument That Plaintiffs Who Purchased Or Leased A Vehicle In Which A Wire Harness System Was A Component Part Cannot Demonstrate Antitrust Standing |
| **EXHIBIT E** | Appendix Of Authority Supporting Argument That Auto Dealers And End-Payors Cannot Assert Retroactive Antitrust Claims Under The Antitrust Laws Of Hawaii, Nebraska, New Hampshire And Utah |
| **EXHIBIT F** | Appendix Of Authority Supporting Argument That Plaintiffs' Allegations Fail To Establish A Sufficient Nexus Between Defendants' Conduct And Intrastate Commerce To State A Claim Under Antitrust Statutes In Nine States |
| **EXHIBIT G** | Appendix Of Authority Supporting Argument That Plaintiffs Fail To Allege A Sufficient Nexus Between Defendants' Conduct And Intrastate Commerce As Requried To State A Claim Under Consumer Protection Statutes Of Five States |
| **EXHIBIT H** | Appendix Of Authority Supporting Argument That Plaintiffs Fail To Plead Fraud Or Deceit With Requisite Particularity, As Required By The Consumer Protection Laws Of Five States |
| **EXHIBIT I** | Appendix Of Authority Supporting Argument That Plaintiffs Do Not Allege Any Unconscionable Conduct Or Other Aggravating Circumstances As Required By Five States |
| **EXHIBIT J** | Appendix Of Authority Supporting Argument That Plaintiffs' Price-Fixing Claims Are Not Actionable Under The Consumer Protection Laws Of Eight States |
| **EXHIBIT K** | Appendix Of Authority Supporting Argument That As Businesses, The Auto Dealer Plaintiffs Cannot Bring Consumer Protection Claims Under The Laws Of Seven States |

| | |
|---|---|
| **EXHIBIT L** | Appendix Of Authority Supporting Argument That Unjust Enrichment Is Unavailable Where, As Here, A Party To A Voluntary Agreement Received The Benefit Of Its Bargain |
| **EXHIBIT M** | Appendix Of Authority Supporting Argument That Plaintiffs' Unjust Enrichment Claims Fail In The Seven States That Require A Direct Benefit Conferred By Plaintiffs |
| **EXHIBITS N—XX** | Copies of Unpublished Authority Cited in Memorandum in Support of Motion and Exhibits B—M |

## INTRODUCTION

The Auto Dealer and End-Payor plaintiffs ("Plaintiffs") allege that the Defendants, manufacturers of automotive component parts, engaged in a conspiracy to fix prices in the U.S. as to eleven (in the case of the End-Payors) and thirteen (in the case of the Auto Dealers) separate products that they collectively describe as a "Wire Harness System."[1]  AD CCC ¶¶ 1, 5, 137-38, 154, 233, 245-46, 255-57; EP CCAC ¶¶ 1, 5, 140, 221-22, 231-34.  The parts comprising a "Wire Harness System" connect the various electronic components within an automobile and conduct electricity throughout the car.  AD CCC ¶ 130; EP CCAC ¶ 124.

The named Plaintiffs are individual consumers or automobile dealers who are suing on behalf of putative classes of persons or entities who claim to have purchased what they call a "Wire Harness System" *indirectly* from Defendants.  AD CCC ¶ 2; EP CCAC ¶ 2.  Although they have filed separate complaints, the End-Payors' and Auto Dealers' allegations are substantially similar and can be analyzed together for purposes of this motion.[2]  Both sets of

---

[1]    The End-Payors use the term "Automotive Wire Harness System" (herein simply "Wire Harness System") to refer to eleven separate products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies.  EP CCAC  ¶ 3.  The Auto Dealers use the term Wire Harness System to refer to thirteen separate products: automotive wire harnesses themselves, as well as automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, high voltage wiring, and speed sensor wire assemblies.  AD CCC ¶ 3.

[2]    Under Count II, Auto Dealers purport to assert claims under the "below-listed antitrust and consumer protection statutes."  AD CCC ¶ 260.  This commingling of multiple legal claims in a single count violates Federal Rule of Civil Procedure 10(b), and is an independently sufficient basis to dismiss Auto Dealers' Count II in its entirety.  *See Perez v. RadioShack Corp.*, No. 01-5095-CIV-SEITZ, 2002 WL 1335158, at *2 (S.D. Fla. Apr. 23, 2002) (dismissing plaintiffs' complaint where plaintiffs "commingle[d] multiple legal claims in [ ] each count of the Complaint in violation of Rule 10(b)").  Auto Dealers add to the confusion in the 16 states identified in Exhibit C in which they cite only an initial code section, followed by "*et seq.*," without otherwise identifying the specific statute or provision under which they bring their claim.  For example, in Michigan, Auto Dealers allege only that Defendants entered into "an unlawful

Plaintiffs seek to represent classes of two separate types of indirect purchasers: (1) those who indirectly acquired Wire Harness Systems solely as a result of buying (and, in the End-Payors' case, also leasing) a vehicle that happened to contain a Wire Harness System as one component among many others (the "Component Part Plaintiffs"); and (2) those who purchased a stand-alone Wire Harness System to replace one already in a vehicle (the "Aftermarket Plaintiffs"). AD CCC ¶¶ 2, 217-19; EP CCAC ¶¶ 2, 188-89. In each case, Plaintiffs allege that they were injured because some portion of an overcharge resulting from the purported conspiracy passed through each of the various intermediate levels of the distribution chain to them.

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that federal antitrust laws prohibit such indirect purchasers from recovering damages because their injuries are too remote and speculative. Because Plaintiffs cannot obtain damages under federal law, or under the many state antitrust and consumer protection statutes that follow *Illinois Brick*, they instead rely on other state laws. All of Plaintiffs' claims fail on multiple grounds.

First, all of Plaintiffs' claims fail because they have not plausibly alleged an overarching conspiracy involving over two dozen defendants and eleven or thirteen products, and therefore

---

agreement in restraint of trade in violation of the Michigan Compiled Laws ("MCL") §§ 445.771, *et seq.*" AD CCC ¶ 272. MCL 445.711 is the initial section of the Michigan Antitrust Reform Act ("MARA"). The Michigan Consumer Protection Act ("MCPA") appears later in Chapter 445, at MCL 445.901 *et. seq.* Defendants understand Auto Dealers to be asserting a claim only under the specific statute in which the "*et seq.*" reference appears, *e.g.*, in Michigan, only MARA, not the MCPA. If Auto Dealers intended to assert claims under any other statute, then the claim under the other statute should be dismissed for failing to adequately plead it. Defendants should not have to guess which claims Auto Dealers are bringing. *Quick v. Astrue*, No. 3:10-cv-133-J-32JBT, 2011 WL 2149412, at *5 (M.D. Fla. May 10, 2011) (recommending grant of motion to dismiss where plaintiff "fail[ed] to allege exactly what type(s) of claim(s) Plaintiff asserts"); *cf. In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1158 (N.D. Cal. 2009) (granting motion to dismiss Hawaii antitrust and consumer protection claims where plaintiffs alleged both as a basis for recovery in a single claim). Nevertheless, out of an abundance of caution, Defendants offer alternative grounds for dismissal below based on the assumption that Auto Dealers seek relief under any consumer protection or antitrust statute that follows their initial citation for the 16 states identified in Exhibit C.

have failed to meet the requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Second, even if Plaintiffs have plausibly alleged a conspiracy, they have not plausibly alleged that they were actually injured by it and therefore lack standing to bring their claims.  (And the Component Part Plaintiffs' theory of injury is far too attenuated to survive in any event.)  Third, Plaintiffs have either pled themselves out of, or failed to allege even the basic facts necessary to give rise to, causes of action under many states' antitrust, consumer protection and unjust enrichment laws.  *See* Exhibit A (Summary Charts of Claim Deficiencies).  Finally, Plaintiffs have failed to plausibly plead any real threat of future injury as required for injunctive relief. The Court should dismiss the Auto Dealers' and End-Payors' Complaints in their entirety.

## ARGUMENT

I.   **THE COURT SHOULD DISMISS ALL OF THE AUTO DEALERS' AND END-PAYORS' CLAIMS BECAUSE THEY DO NOT SATISFY THE REQUIREMENTS OF *TWOMBLY* TO PLAUSIBLY PLEAD A CONSPIRACY**

The Court should dismiss Plaintiffs' Complaints in their entirety because they fail to plausibly allege the overarching conspiracy at the heart of Plaintiffs' claims, as required by the United States Supreme Court in *Twombly*.  Defendants incorporate by reference the arguments and authority set forth in Section III of Defendants' Collective Memorandum In Support of Defendants' Collective Motion to Dismiss the Direct Purchaser Actions.  But these Plaintiffs, as alleged *indirect* purchasers who seek to bring claims not only for purported losses attributable to purchases of finished vehicles incorporating Wire Harness Systems, but also for purported losses attributable to purchases of aftermarket replacement parts, bear even greater burdens than the Direct Purchasers.

Plaintiffs base their claim of an overarching conspiracy, in this case involving over two dozen (they originally named thirty) different Defendants and eleven (in the case of the EP CCAC) or thirteen (in the case of the AD CAC) separate products, almost exclusively on the

existence of government investigations against certain of the Defendants and guilty pleas by a few others.  But the existence of investigations does not relieve Plaintiffs of their obligation to allege facts to support their claims.  Nor do the guilty pleas.

Indeed, those pleas do not even touch on the majority of Defendants.  As to those Defendants who have not pled guilty, the Complaints allege nothing at all to link them to any alleged conspiracy.  And even as to the few Defendants who pled guilty to certain charges, the pleas describe conspiracies entirely different from the overarching conspiracy alleged here.  First, the pleas cover distinct products, undermining any allegation of an overarching conspiracy.  For example, DENSO Corporation's plea covers sales of only one of the eleven or thirteen products included by Plaintiffs in the definition of "Wire Harness Systems"—body ECUs—and contains no reference to "wire harnesses" at all, while G.S. Electech's plea covers only sales of speed sensor wire assemblies, and Fujikura's plea covers sales of wire harnesses and four related products, but neither body ECUs nor speed sensor wire assemblies.  The pleas also involve sales only to a distinct set of purchasers—"certain" (but not all) automobile manufacturers, and, in three instances, sales to only *one* automobile manufacturer.  And none of the pleas involves the sale of replacement or "aftermarket" parts to anyone.

In addition to the plain and significant distinctions in these pleas, the Auto Dealers and End-Payors also fail to allege any facts showing any linkage between the five Defendants' pleas and the Plaintiffs' own claims.  Neither set of Plaintiffs alleges facts showing that the manufacturer of each Plaintiff's vehicle (to the extent that Plaintiff even purchased a finished vehicle) was one subject to a conspiracy involved in any Defendant's plea.  Indeed, the End-Payors' Complaint does not even specify whether each End-Payor purchased a finished vehicle, and, if so, from which automobile manufacturer, or whether instead they merely purchased an

aftermarket part (and, if so, from whom).  Moreover, both the Auto Dealers and End-Payors fail even to allege which of the eleven or thirteen "Wire Harness" products (if any) each of them actually purchased and from which of the over two dozen Defendants, much less how that purchase was affected by any alleged conspiracy among the Defendants, making it utterly impossible to link any injury claimed by any of them to anything to which any Defendant pled guilty.  Thus, even as to the Defendants who pled guilty, Plaintiffs' allegations of government investigations and guilty pleas fail to give rise to a plausible theory that Defendants engaged in a global conspiracy to fix prices of over a dozen products, much less that it harmed *them*.  And as to the other (non-pleading) Defendants, the guilty pleas establish literally nothing at all.

The Plaintiffs' Complaints also fail to allege any facts as to the role each of the over two dozen Defendants played in the purported conspiracy, instead lumping them all together in conclusory, generalized allegations about "Defendants and their co-conspirators."  For all of these reasons, Plaintiffs' claims against all Defendants fail as a matter of law.

## II.    AUTO DEALERS AND END-PAYORS LACK CONSTITUTIONAL STANDING TO ASSERT THEIR ANTITRUST AND CONSUMER PROTECTION CLAIMS

### A.    Plaintiffs Failed To Sufficiently Plead The Injury-In-Fact Necessary For Constitutional Standing

Even if Plaintiffs had alleged sufficient facts to establish an overarching conspiracy (and they have not), that by itself would not be sufficient to state a claim.  Instead, Plaintiffs must also allege that they suffered an actual injury because of the alleged conspiracy.  *See, e.g.*, *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 320 (5th Cir. 1978) ("[T]he issue of liability in antitrust cases includes not only the question of violation, but also the question of fact of injury, or impact."); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 233 (9th Cir. 1974) ("proof of injury is an essential substantive element of . . . [an] antitrust violation").  Absent such injury, the Plaintiffs lack standing to sue under Article III of the Constitution.

To satisfy the constitutional standing requirement, Plaintiffs must sufficiently plead: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of, *i.e.*, the injury must be "fairly traceable" to the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). All of the End-Payors' and Auto Dealers' claims for damages fail because they have not sufficiently alleged the required causal connection between the injury they claim and the Defendants' alleged misconduct. While at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," *id.* at 561, it is still necessary to include some "'well-pleaded factual allegations'" to support the claim. *Brown v. Matauszak,* 415 Fed. App'x 608, 613 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Plaintiffs must plead factual allegations sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Plaintiffs appear to contend that because this is a price-fixing case, they can satisfy their pleading obligations by simply asserting, without any actual factual allegations, that the alleged conspiracy caused them to pay more than they otherwise would have paid for (1) the vehicle that they purchased or leased containing the allegedly price-fixed Wire Harness System; or (2) the stand-alone Wire Harness System that they purchased in the aftermarket as a replacement part. But because Plaintiffs are *indirect* purchasers and had no direct dealings with Defendants, to sufficiently plead the injury that they claim, they must first plausibly allege that Defendants overcharged the direct purchasers, and then must plausibly allege that some or all of that overcharge was ultimately passed on to them through each of the various intermediate levels of the distribution chain. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.,* 253 F.R.D.

478, 502 (N.D. Cal. 2008) ("*GPU II*") ("By definition, indirect purchasers must prove that an overcharge was levied on *direct* purchasers of defendants' products, who then passed all or some of that overcharge through to the indirect purchasers."); *A&M Supply Co. v. Microsoft Corp.*, 654 N.W.2d 572, 575 (2002) ("proving overcharge and pass-on are essential to succeeding in an indirect purchaser suit under" Michigan antitrust law). This is called the "pass-through" or "pass-on" hurdle in indirect purchaser cases. Plaintiffs were not injured by the alleged conspiracy and have no standing to bring a claim unless they can establish that the reseller passed on the alleged overcharge at every one of the various intermediate levels of the distribution chain. *Karofsky v. Abbott Labs.*, No. CV-95-1009, 1997 WL 34504652, at *5 (Me. Super. Ct. Oct. 16, 1997) (Ex. HH) ("Unless there has been a 'pass on' of the allegedly higher costs to Maine consumers, those consumers have not been injured, and no claim will lie.").

Here, Plaintiffs have not alleged *any* facts to plausibly claim that any alleged overcharge to the direct purchasers was passed on to them. The Component Part Plaintiffs in both the Auto Dealer and End-Payor Complaints allege a protracted distribution chain for vehicles that contain the allegedly price-fixed Wire Harness Systems. They assert that three years before the production of a new vehicle model, automobile manufacturers, referred to in the Complaints as motor vehicle original equipment manufacturers ("OEMs") issue Requests for Quotation ("RFQs") to automotive parts suppliers. AD CCC ¶ 135; EP CCAC ¶ 139. OEMs then award business to suppliers pursuant to these RFQs. *Id.* Years later when the manufacturing process begins, OEMs sometimes purchase Wire Harness Systems directly from Defendants for installation in new cars. AD CCC ¶ 133; EP CCAC ¶ 137. In other instances, Defendants' products pass through one or more intermediate "Tiers" of suppliers before reaching the OEM for installation into new vehicles. AD CCC ¶ 134; EP CCAC ¶ 138. Wire Harness Systems, of

course, make up only a tiny portion of countless (over 10,000)[3] other components that OEMs use to make a finished vehicle, each of which has its own distribution system and pricing. Auto Dealers ultimately purchase the finished vehicles downstream from OEMs, AD CCC ¶ 139, and then sell or lease those vehicles to End-Payors. EP CCAC ¶ 141. Thus, Component Part Plaintiffs are multiple levels removed from the Defendants in the distribution chain and are buying a finished product (an automobile) made up of thousands of component parts for a single price. In these circumstances, to allege injury-in-fact sufficiently, Component Part Plaintiffs must allege facts from which the Court can plausibly conclude that every reseller in the chain passed on some or all of the alleged overcharge to them and that the price of their vehicle was higher than it should have been because of the alleged overcharge on a Wire Harness System. Plaintiffs have alleged nothing from which that link could plausibly be made.

With respect to component part (versus aftermarket) purchases, Plaintiffs merely and conclusorily allege that Wire Harness Systems "follow a traceable physical chain of distribution from Defendants to Plaintiffs'" and that therefore "any costs attributable to Automotive Wire Harness Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes." AD CCC ¶ 231; EP CCAC ¶ 201. But Plaintiffs do not allege that all or even any identifiable portion of any alleged overcharge resulting from the purported price-fixing conspiracy was passed on from each step in the chain of distribution to the next, let alone sufficient facts from which the Court could conclude that their pass-through theory is plausible. Even if it were true that Plaintiffs could track a *physical product* through the distribution system,

---

[3]    As this Court recognized at the June 15, 2012 status conference, an automobile typically contains 12,000 to 15,000 parts. Transcript at 13. Plaintiffs do not, and indeed cannot in good faith, allege that the Wire Harness Systems make up more than a miniscule percentage of the cost of a finished vehicle. (Defendants believe they generally make up less than 2% and, in many cases, substantially less.) Indeed, the Complaints are utterly silent on this critical issue.

that says nothing about whether the alleged overcharge portion of the *price* of each part sold by a Defendant impacted the price at which the assemblies and systems into which those parts were incorporated were sold to intermediate tier buyers and OEMs.  It also says nothing about how (if at all) any such alleged overcharge impacted the OEM's sale price of the finished vehicle to an Auto Dealer, or how any such overcharge could possibly be shown to impact an Auto Dealer's heavily negotiated sale price to an End-Payor.  Plaintiffs do not allege any facts that make their pass-through claim plausible in light of the commercial realities.

For example, Plaintiffs do not allege how OEMs price their vehicles nor how the price of one or more out of thousands of component parts affects the price of the finished vehicle. Plaintiffs utterly ignore and fail to address real-world circumstances, such as the fact that (1) OEMs may price cars solely off their estimated demand for their cars, with variables in the cost of actually producing the car (such as marginal changes in the pricing of inputs like the products in Wire Harness Systems) having no bearing on the ultimate price; (2) the OEM simply absorbs the alleged overcharges by slightly reducing its profit margin on each vehicle; or (3) the OEM sells its cars in some months at below its cost of production because of the competition it faces from other car brands that produce at lower cost points.  Similarly, End-Payors do not allege that they purchased their vehicles from auto dealers at the "sticker" price, nor otherwise attempt to disclaim that they individually negotiated the prices of their vehicles.  *Cf. In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 632 F. Supp. 2d 42, 59 n.21 (D. Me. 2009) ("[C]ar purchases generally are a product of individual negotiation and can often involve other issues such as trade-in allowances, below-market-rate financing, etc.").  By failing to address these most basic facts, the Component Part Plaintiffs have failed to satisfy their obligation to plead facts sufficient to conclude that their claimed injury-in-fact is plausible.

The Aftermarket Plaintiffs plead even less than the Component Part Plaintiffs.  They do not allege anything at all about the aftermarket distribution system.  For example, they allege absolutely nothing about (1) how the aftermarket channel is structured; (2) how many layers are in the distribution chain; (3) what functions the intermediaries in the chain perform; or (4) whether overcharges actually were passed on through each level of the chain.  Perhaps most importantly, they do not even allege (nor could they) that the price of aftermarket parts is determined by the OEMs' RFQs for production parts (for new automobiles) that were allegedly the subject of the conspiracy.  Obviously, without even *alleging* that the OEMs' RFQ process impacts the price of aftermarket parts, the Aftermarket Plaintiffs have entirely failed to link the conspiracy they have alleged with the prices they theoretically paid.  Without these fundamental facts, there is simply no way to evaluate, much less conclude, that the Aftermarket Plaintiffs' claim of injury is plausible.

The Court should dismiss all of the claims asserted by both the Component Part and Aftermarket Plaintiffs for lack of constitutional standing.

### B.    Plaintiffs Lack Constitutional Standing To Assert Claims Under The Laws Of Those States Where No Named Plaintiff Resides

Although none of the named Auto Dealers resides in **Hawaii**, **Maine**, **Montana**, **North Dakota**, **South Carolina** or **Vermont,** and none of the named End-Payors resides in the **District of Columbia**, each set of named Plaintiffs still seeks to assert claims on behalf of residents of those states in their representative capacities.  The Court should dismiss these claims because Plaintiffs do not satisfy the Article III standing requirement that they state an injury-in-fact.

As the court in *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) concluded, "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  For that reason, the court granted

defendants' motion to dismiss indirect purchasers' claims under 26 states' antitrust and consumer protection statutes. *Id.* Recently, the court in the *Refrigerant Compressors* antitrust case similarly dismissed claims under 11 states' laws where no named plaintiff "claims to reside or have been injured." *In re Refrigerant Compressors Antitrust Litig.*, Order Dismissing Indirect Purchaser Pls.' Claims For Lack of Constitutional Standing, No. 2:09-md-02042-SFC (E.D. Mich. July 10, 2012) (Ex. EE). Numerous other courts have concluded likewise. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) ("*GPU I*") (dismissing indirect purchasers' state antitrust claims for states where none of the named plaintiffs resided); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 148 nn. 1-2, 155, 157-58 (E.D. Pa. 2009) (same as to indirect purchasers' claims under 33 states' statutes); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (dismissing claims in 10 states where no named plaintiff allegedly suffered injury because "the named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief"). The Court should similarly dismiss all claims asserted under the laws of those states in which no named plaintiff resides or allegedly suffered injury.[4]

## III.   THE AUTO DEALER AND END-PAYOR PLAINTIFFS CANNOT OBTAIN RELIEF UNDER VARIOUS STATES' ANTITRUST LAWS

### A.   Component Part Plaintiffs Cannot Demonstrate Antitrust Standing

Both Auto Dealers and End-Payors assert claims on behalf of a specific group of indirect purchasers who acquired Wire Harness Systems not as stand-alone items, but as built-in

---

[4]      If the Court grants Defendants' motion with respect to claims in states in which no named plaintiff resides or allegedly suffered injury, the Court need not reach the arguments set forth below with respect to the Auto Dealers' claims under the laws of **Hawaii, Maine, Montana, North Dakota, South Carolina** or **Vermont** or the End-Payors' claims under the laws of the **District of Columbia**. The arguments set forth below with respect to these states are made as alternative grounds for dismissing these state law claims.

components incorporated into finished vehicles.  But these "Component Part Plaintiffs" lack antitrust standing even under state antitrust laws that do not follow *Illinois Brick*.  Distinct from *constitutional* standing, the concept of *antitrust* standing serves to ensure that only an appropriate claimant may seek redress for an alleged antitrust injury.  "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination *whether the plaintiff is a proper party to bring a private antitrust action*."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) ("*AGC*") (emphasis added); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) ("[A]ntitrust standing and Article III standing are not one and the same, and we not only may—but we must—reject claims under Rule 12(b)(6) when antitrust standing is missing.").  Thus, even if Plaintiffs had plausibly alleged an injury-in-fact sufficient for constitutional standing—and they have not—the Court should still dismiss these actions for lack of *antitrust* standing.

> **1.** **Plaintiffs Must Satisfy The *Associated General Contractors* Test To Have Standing Under Nearly All Of The State Antitrust Laws Pled**

To adequately demonstrate antitrust standing, Plaintiffs must show that their injuries are directly traceable to the alleged indirect antitrust violation, *i.e.*, that they are not overly remote. *AGC*, 459 U.S. at 534-35.   Under *AGC*, courts must consider the following five factors in making this determination: (1) the nature of the plaintiff's alleged injury and whether the plaintiff was a participant in the relevant market; (2) the directness of the alleged injury; (3) the speculative nature of the alleged harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages.[5]  *Id.* at 537-45.  *See also NicSand*, 507 F.3d at 450 (stating

---

[5]      Although the issue in *AGC* was one of federal antitrust standing, the Supreme Court's analysis is frequently applied in federal actions, like this one, where state antitrust claims are

that antitrust standing is a "threshold, pleading-stage inquiry" and citing numerous Sixth Circuit cases affirming the 12(b)(6) dismissal of claims for lack of antitrust standing under *AGC*).

Most of the jurisdictions under which the Component Part Plaintiffs allege state antitrust claims either directly apply the *AGC* factors[6] or look to federal law to interpret their respective antitrust statutes.[7]  Even those few jurisdictions that have modified the *AGC* factors, like Maine, or use a different analysis to assess indirect purchaser standing, like North Carolina, still require component part indirect purchasers to plead a sufficient plausible causal connection between the alleged overcharge on the component and the alleged overcharge paid for the product incorporating the component.[8]  Plaintiffs have not done so here.

### 2. Courts Have Found Component Part Plaintiffs' Claims Too Remote To Warrant Antitrust Standing, And The Same Result Is Warranted Here

Courts faced with facts analogous to those here have held that "component" indirect purchaser claims—where the allegedly price-fixed item is but one component of the finished end product actually purchased—are too remote to support antitrust standing.

---

asserted.  *See, e.g.*, *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129, 1134-42 (N.D. Cal. 2008) ("*DRAM II*") (applying *AGC* test to dismiss indirect purchaser claims under 15 different state laws).

[6]     States that apply the *AGC* factors in determining antitrust standing:  **California, District of Columbia**, **Iowa**, **Kansas, Michigan, Nebraska**, **New York, North Dakota**, **South Dakota**, **Tennessee, Vermont**, **West Virginia**, and **Wisconsin**.  *See* Exhibit D for authority.

[7]     States with harmonization statutes that expressly require courts to interpret state antitrust laws in accordance with federal law, and thus in accordance with *AGC*:  **Arizona**, **Hawaii, Nevada**, **New Hampshire**, **New Mexico**, **Oregon, Utah**, and **West Virginia**.  States that look to federal law when interpreting state antitrust statutes:  **Illinois** and **Mississippi**.  *See* Exhibit D for authority.

[8]     **Maine:**  *Knowles v. Visa U.S.A. Inc.*, No. Civ. A. CV-03-707, 2004 WL 2475284, at *5-6 (Me. Super. Ct. Oct. 20, 2004) (Ex. II) (applying some but not all of the *AGC* factors to find indirect purchasers had no standing); **North Carolina:**  *Teague v. Bayer AG*, 671 S.E.2d 550, 557-58 (N.C. Ct. App. 2009) (declining to adopt *AGC* analysis, but finding antitrust standing only because plaintiffs alleged that price-fixed product was a "significant component part" (80-85%) of a product purchased).

In *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, the court held that indirect purchasers who bought computers or other products containing the allegedly price-fixed DRAM chips lacked standing to sue the DRAM manufacturers. 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ("*DRAM I*"). Applying the *AGC* factors, the court found that: (1) plaintiffs who purchased products in which the DRAM chips were a component, rather than DRAM chips themselves, were "participating in a secondary market that is incidental to the primary price-fixed market (i.e., the market for DRAM modules themselves);" (2) there was no "direct link in the causation chain" between defendants' alleged conduct and the allegedly increased prices in the finished goods; and (3) damages would be speculative and difficult to apportion because plaintiffs "would need to allege that the market for personal computers and other secondary markets [for finished goods containing DRAM chips] was itself restrained as a result of defendants' conduct" to establish that their purported damages were "sufficiently concrete, and capable of determination." *Id.* at 1091-93. Accordingly, the court held that these plaintiffs lacked standing to pursue their antitrust claims.

Following *DRAM I*, the plaintiffs amended their complaint in an effort to overcome their prior pleading deficiencies, but were still unsuccessful. In *DRAM II*, the court noted that plaintiffs' revised allegations included details about how DRAM chips had no freestanding use and had to be inserted into a device to serve any function, how this fact rendered the DRAM and computer markets "intimately connected," and how the demand for DRAM chips was ultimately determined by computer end-buyers. 536 F. Supp. 2d 1129, 1136-37 (N.D. Cal. 2008). The court held, once again, that antitrust standing was lacking because the DRAM and finished product markets simply could not be viewed as one and the same under established legal

precedent.  *Id.* at 1141.  The court granted defendants' renewed motion to dismiss plaintiffs' antitrust claims, without leave to amend further.

The court reached a similar conclusion in a case arising out of an alleged price fixing conspiracy involving potash, which are mineral and chemical salts used primarily in making agricultural fertilizer.  *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 915 (N.D. Ill. 2009). The issue in that case was whether an indirect purchaser who allegedly paid supracompetitive prices for fertilizer products that contain potash, among other ingredients, had antitrust standing to pursue injunctive relief against potash producers under federal and state law.  Applying *AGC*, the court held that the plaintiffs did not have antitrust standing because they were not participants in the market for the allegedly priced-fixed product and because they had failed to allege a "chain of causation between the alleged restraint in the market—an illicit agreement to fix the price of potash—and their injury, paying higher prices for potash-containing products, specifically, fertilizer."[9]  *Id.* at 940, 945-46.

Similarly, in *Weaver v. Cabot Corp.*, No. 03 CVS 04760, 2004 WL 3406119, at *1 (N.C. Super. Ct. Mar. 26, 2004) (Ex. WW), the court concluded that an indirect purchaser who allegedly paid supracompetitive prices for tires containing the allegedly price-fixed chemicals did not have standing to bring a state antitrust claim against the chemical manufacturers.  The

---

[9]     Relying on *AGC,* the *Potash* court dismissed antitrust claims under Iowa and Mississippi law, 667 F. Supp. 2d at 945-46; however, the court was not convinced that Kansas or Michigan courts would apply *AGC* to their states' antitrust claims, *id.* at 943-44.  Even if Kansas and Michigan have not yet expressly adopted *AGC*, both states' laws routinely preclude plaintiffs from recovering for injuries that are too remote or speculative.  *Cf. Hoard v. Shawnee Mission Med. Ctr.*, 662 P.2d 1214, 1221-22 (Kan. 1983) ("Recovery may not be had where the cause of the injury is too remote and speculative and where the alleged resulting damages are too conjectural and speculative to form a sound basis for measurement."); *In re Estate of Verploegh*, No. 303296, 2012 WL 1623525, at *3 (Mich. Ct. App. May 8, 2012) (Ex. Z) (plaintiff failed to establish causation where alleged injury was "too remote in time, and likely too influenced by intervening factors") (internal citation omitted).

court drew a distinction between indirect purchasers in general and indirect purchasers who had merely bought a finished product containing the allegedly price-fixed component. *Id.* The court explained that just because the state regime permitted claims by indirect purchasers, that did not mean that all indirect purchasers necessarily possessed standing, as "[t]o rule otherwise would put this Court in an impossible position of attempting to determine whether the alleged price-fixing by an oligopoly of *an ingredient used to make tires had anything to do with the price paid by the Plaintiff when he bought the tires*." *Id.* (emphasis added). Although not relying on *AGC*, the court concluded that, in the absence of evidence that the secondary market of tire manufacturers *themselves* were an oligopoly and fixing prices, it would be impossible to show that the price the plaintiff paid "was not set by the normal laws of supply and demand in our open economic system." *Id.* It further added that, even if such a showing was somehow possible, "there would be no way for the Court to, in any fair or just way, determine an amount the plaintiff was damaged." *Id.*

Likewise, in *Strang v. Visa U.S.A. Inc.*, No. 03cv-011323, 2005 WL 1403769, at *1 (Wis. Cir. Ct. Feb. 8, 2005) (Ex. VV), the court applied the *AGC* factors to hold that indirect purchaser plaintiffs, who alleged that they paid higher prices for goods and services purchased from merchants who themselves incurred anticompetitive transaction fees imposed by credit card companies, lacked standing to sue the credit card companies. *Id.* at *5 (calling plaintiffs' injuries "derivative, remote, and highly speculative"); *see also Stark v. Visa U.S.A. Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *2 (Mich. Cir. Ct. July 23, 2004) (Ex. UU) (same).

Analyzed under the five-part *AGC* test or any other remoteness standard, the result in this case should be the same as in these other cases—dismissal, because the injuries that the

Component Part Plaintiffs allegedly suffered are too remote and speculative to confer antitrust standing on them.

*First*, the Component Part Plaintiffs did not participate in the allegedly price-fixed market. The central interest of the antitrust laws is to "protect[] the economic freedom of participants *in the relevant market*." *AGC*, 459 U.S. at 538 (emphasis added). Therefore, "Indirect Purchaser Plaintiffs must also allege that they are participants in the relevant market." *In re Potash,* 667 F. Supp. 2d at 939. Plaintiffs allege that Defendants only fixed prices on the sale of Wire Harness Systems, not finished end products containing such Systems. Plaintiffs who bought *vehicles* containing Wire Harness Systems are not participants in the market for the Wire Harness Systems themselves. Rather, those Plaintiffs participated in *the vehicle market* and are part of a market that is secondary to the allegedly price-fixed market. *Id.*; *DRAM II,* 536 F. Supp. 2d at 1140; *Stark*, 2004 WL 1879003, at *2 (Ex. UU) (indirect purchaser lacked standing under Michigan antitrust law because, among other things, he was not a consumer in the allegedly restrained market). This factor weighs against standing.

*Second,* the distribution chains at issue here make the Component Part Plaintiffs' claimed injuries every bit as speculative and indirect as the plaintiffs' injuries in *DRAM I and II*, *Potash* and *Strang*, if not more. *See In re Potash,* 667 F. Supp. 2d at 940 (courts must look to "the chain of causation between [plaintiffs'] injury and the alleged restraint in the market" to assess the directness of the alleged injury); *AGC*, 459 U.S. at 540-41. As discussed above, Component Part Plaintiffs are multiple levels removed from Defendants in the distribution chain. Because the Court must assume that any alleged overcharge passed through each level in order to find that these Plaintiffs have stated an injury, this factor, too, weighs against standing.

17

*Third*, this Court must "consider whether [Plaintiffs'] claim rests at bottom on some abstract conception or speculative measure of harm." *AGC*, 459 U.S. at 543 (internal citations and quotations omitted). *AGC* recognized two indicators of unduly speculative harm: (1) an indirect causal connection between the alleged injury and the alleged antitrust violation; and (2) the presence of many independent factors—apart from the alleged overcharge—that could have influenced the price that that plaintiffs paid. *Id*. at 542. Here, the Component Part Plaintiffs' purchases in the secondary market for vehicles necessarily mean that there is, at best, an *indirect* causal connection between their alleged injury and Defendants' alleged antitrust violation. Moreover, Plaintiffs' asserted injury is unduly speculative because the Component Part Plaintiffs purchased vehicles that necessarily contain countless components—engine, transmission, chassis, suspension, wheels, fenders, car stereos, climate control systems, paint, and on and on. A variety of independent factors, such as the costs of those numerous components, the costs of their assembly and distribution, pricing of competing vehicle models, timing of the purchase during the model year, and the negotiating prowess exhibited at each step of the distribution chain, could have influenced the price that each Plaintiff paid for his or her respective vehicle. *See supra* n.3. In short, Plaintiffs do not (and ultimately cannot) allege that the market for vehicles in which they participated was restrained as a result of defendants' conduct. Thus, this factor also weighs against standing.

*Fourth*, it would be virtually impossible to calculate and apportion damages for the Component Part Plaintiffs. At a minimum, Plaintiffs would need to show (1) what portion of the Wire Harness System price resulted from the alleged conspiracy; and (2) the extent to which this overcharge amount affected the price they paid for the finished vehicles. *Melnick v. Microsoft Corp.*, No. CV-99-709, No. CV-99-752, 2001 WL 1012261, at *6 (Me. Super. Ct. Aug. 24,

18

2001) (Ex. KK).  To quantify the latter, Plaintiffs would need to disaggregate the multitude of other factors that affected the price of the finished products—an analysis complicated by the fact that there are varieties of products and market participants involved in the transactions that yield a finished vehicle.  In other words, "[t]o determine what portion of any overcharge was passed on by any given merchant, with respect to which products, and to which consumers is a task of monumental uncertainty and complexity."  *Knowles*, 2004 WL 2475284, at *6 (Ex. II).

*Fifth*, there is a pronounced risk of duplicative recovery.  Not only do the Plaintiffs seek damages for the same alleged misconduct at issue in the direct purchaser case, *Stark*, 2004 WL 1879003, at *3 (Ex. UU), but there are also two putative classes of indirect purchasers (Auto Dealers and End-Payors) that seek overlapping damages.  Thus, this factor also clearly weighs against standing.

Every single factor in any conceivable remoteness analysis weighs against antitrust standing.  The Court should therefore dismiss Component Part Plaintiffs' claims in their entirety.

### B.   As Indirect Purchasers, Plaintiffs Cannot Bring A Claim Under Massachusetts' Or Missouri's Antitrust Laws

To the extent that End-Payors are attempting to bring a claim under **Massachusetts'** antitrust law, and Auto Dealers are attempting to bring a claim under **Missouri's** antitrust law, the Court should dismiss these claims.  AD CCC ¶¶ 271, 275; EP CCAC ¶ 242.  Both states follow *Illinois Brick* and bar indirect purchaser claims.  Mo. Rev. Stat. 416.141; *Ireland v. Microsoft Corp.*, No. 00CV-201515, 2001 WL 1868946 at *1 (Mo. Cir. Ct. Jan. 24, 2001) (Ex. FF) (denying indirect purchaser standing under Missouri antitrust law); *Ciardi v. F. Hoffmann La Roche, Ltd.*, 762 N.E.2d 303, 308 (Mass. 2002)  (precluding indirect purchaser claim under the Massachusetts Antitrust Act).

### C.   Auto Dealers And End-Payors Cannot Assert Retroactive Antitrust Claims Under The Antitrust Laws Of Hawaii, Nebraska, New Hampshire And Utah

Plaintiffs seek damages for alleged conduct that pre-dates the enactment of four state statutes allowing indirect purchasers to recover damages under their respective state antitrust laws.  **Hawaii** and **Nebraska** enacted their indirect purchaser statutes in 2002.[10]  Haw. Rev. Stat. § 480-2; Neb. Rev. Stat. § 59-821.  **Utah** enacted its indirect purchaser statute in 2006.  Utah Code Ann. § 76-10-919.  **New Hampshire** enacted its indirect purchaser statute effective in 2008.  N.H. Rev. Stat. Ann. § 356:11.  All four of these statutes either expressly apply only prospectively, or the states refuse to apply substantive statutes retroactively in the absence of clear legislative intent (which is not present here).  *See* Exhibit E (citing authority).  Plaintiffs therefore cannot seek recovery under these states' statutes for any alleged conduct prior to their respective effective dates.

### D.   Because Plaintiffs Allege An Insufficient Nexus Between Defendants' Conduct And *Intra*state Commerce, Their Antitrust Claims Fail In Nine States

The antitrust statutes of the **District of Columbia, Massachusetts, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee**, and **West Virginia** require plaintiffs to allege a specific nexus between defendants' conduct and *intrastate* commerce.  *See* Exhibit F (citing authority).  Bare legal conclusions without specific facts demonstrating effects on intrastate commerce do not establish this nexus.  *See, e.g., Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (rejecting "bare allegation" regarding defendants' sales

---

[10]   Auto Dealers' claims under Hawaii law also fail because all indirect purchasers pursuing a violation of Hawaii's antitrust statute as a class action are required to first provide the Hawaii Attorney General with the opportunity to prosecute the antitrust claim on their behalf.  Haw. Rev. Stat. § 480-13.3(a).  Auto Dealers do not plead that requirement has been satisfied.

in Tennessee because the plaintiff failed "to establish how the defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree").

Plaintiffs' boilerplate allegations fall far short of establishing the necessary nexus between Defendants' conduct and intrastate commerce.  With respect to the antitrust claims made in the District of Columbia, Massachusetts, Mississippi, Nevada, New York, North Carolina, and West Virginia, End-Payors simply repeat the mantra that Defendants' conduct caused Wire Harness System prices in [state] to be fixed "at artificially high levels," deprived End-Payors of "free and open competition," caused them to pay "supracompetitive" prices, and "substantially affected [state] commerce."  EP CCAC at ¶¶ 236-59.  These allegations fail to allege a sufficient nexus with intrastate commerce and fail as a matter of law in each of those states.  *See, e.g., Ciardi v. Hoffmann-LaRoche, Ltd.*, No. 993244, 2000 WL 33162197, at *2-3 (Mass. Super. Ct. Sept. 29, 2000)  (Ex. R) (allegations that Massachusetts consumers were "deprived of . . . free and open competition" and paid "supra-competitive" prices for vitamins (the allegedly price-fixed product) failed to state claim because defendants' challenged actions "did not 'occur and have their predominant impact primarily within the commonwealth'"); *In re Microsoft Corp. Antitrust Litig.*, Nos. MDL 1332, Civ. JFM 03-741 through 03-748, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) (Ex. CC) (dismissing Mississippi Antitrust Act claim where plaintiffs failed to allege any conduct by defendants "performed wholly intrastate"); *see also* Exhibit F (citing authority).

The Auto Dealers' complaint is even less specific, failing to refer to the commerce of *any* specific state except Michigan (*e.g.,* AD CCC ¶¶ 194-95).  They merely allege that Defendants' conduct "had a substantial and foreseeable effect on intrastate commerce by raising and fixing prices for Automotive Wire Harness Systems throughout those states [in which indirect

21

purchasers can bring antitrust damage actions]."  *Id.* ¶ 259.  Nowhere do they allege that Defendants made or sold Wire Harness Systems in any particular state (except Michigan), that any part of the alleged conspiracy took place in any particular state, or that they made any purchases of a Wire Harness System from Defendants in any particular state.  Because they make no differentiation whatsoever among particular states, the Auto Dealers have failed to establish the necessary nexus with intrastate commerce in all the same states as the End-Payors, as well as in South Dakota and Tennessee.  Accordingly, the Court should dismiss their claims under the antitrust laws of each of these states.  *See* Exhibit F (citing authority).

### E. Auto Dealers Cannot Maintain An Antitrust Claim As A Class Action Under Illinois Law

Auto Dealers purport to bring an antitrust claim on behalf of themselves and as representatives of classes of Illinois consumers.  AD CCC ¶¶ 218-19, 267.  The Court should dismiss this claim because Illinois does not allow indirect purchaser plaintiffs to maintain their antitrust claims as class actions.  740 Ill. Comp. Stat. § 10/7(2); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415-416 (S.D.N.Y. 2011) (dismissing putative class claim under Illinois antitrust law).

## IV. AUTO DEALERS' AND END-PAYORS' CLAIMS UNDER VARIOUS STATE CONSUMER PROTECTION STATUTES MUST BE DISMISSED

### A. Plaintiffs Fail To Plead Fraud Or Deceit With The Requisite Particularity As Required By Certain Consumer Protection Laws

Plaintiffs' attempts to assert consumer protection claims fail in **Florida, Michigan, Minnesota, North Dakota,** and **South Dakota** because Plaintiffs offer no specific facts regarding fraud or deception to support these claims.  To adequately allege claims sounding in fraud, a plaintiff must allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  In a case involving multiple defendants, the complaint should inform each

defendant of the nature of their alleged participation in the deceptive conduct or fraud. *In re Potash*, 667 F. Supp. 2d at 947. These heightened pleading requirements apply to consumer protection claims in certain states. *See, e.g., Burton v. R.J. Reynolds Tobacco Co.*, 886 F. Supp. 1515, 1524 (D. Kan. 1995) (Rule 9(b) applies to allegations of deceptive trade practices under Kan. Stat. Ann. 50-626); *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 795 F. Supp. 2d 874, 879 (D. Minn. 2011) (Rule 9(b) heightened pleading requirement applies to Minnesota Consumer Fraud Act claims); *see also* Exhibit H (citing authority).

Here, neither Auto Dealers nor End-Payors allege fraud or deception with any particularity. The AD CCC at most alleges that defendants "wrongfully concealed" their actions by "using code names and arranging meetings at private residences and remote locations." AD CCC ¶¶ 236, 238. But the AD CCC contains no allegations of deceptive or misleading statements made by any Defendant to any Auto Dealers. End-Payors admit that they "had no direct contact or interaction with any of the Defendants in this case" and in fact "had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers." EP CCAC ¶¶ 205, 206. Neither Complaint describes any particular Defendant's participation in the alleged deceptive acts. Accordingly, Plaintiffs' consumer protection claims under these states should be dismissed.

### B. Plaintiffs Do Not Allege Any Unconscionable Conduct Or Other Aggravating Circumstances As Several States Require

Plaintiffs also have not pled any facts to establish that Defendants engaged in "unconscionable" conduct, as is required under **Arkansas, District of Columbia, Kansas, New Mexico,** and **North Carolina** consumer protection statutes. *See., e.g.,* Kan. Stat. Ann. §50-627; *Wille v. Sw. Bell Tel. Co.*, 549 P.2d 903, 907 (Kan. 1976) (unconscionable conduct requires "additional factors such as deceptive bargaining conduct as well as unequal bargaining power");

N.M. Stat. Ann. § 57-12-2(E) (unconscionable conduct constitutes acts or practices that "take[] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree" or "result[] in a gross disparity between the value received by a person and the price paid"); *see also* Exhibit I (citing authority).  "[P]leading unconscionability requires something more than merely alleging that the price of a product was unfairly high."  *GPU I*, 527 F. Supp. 2d at 1029.

Plaintiffs have not alleged any facts from which the Court could plausibly conclude that they were subjected to inequitable bargaining power compared to Defendants, or that there existed a "gross disparity" between the price paid for a Wire Harness System and the value received.  *Twombly*, 550 U.S. at 570.  In fact, neither Complaint alleges anything about the specific prices that Plaintiffs paid for Wire Harness Systems or vehicles.  Moreover, Plaintiffs expressly allege that they purchased Wire Harness Systems exclusively from parties *other than* Defendants, and therefore cannot base their claims on unequal bargaining power between themselves and Defendants.  Accordingly, the Court should dismiss Plaintiffs' claims under these states' statutes.

### C.   Plaintiffs' Price-Fixing Claims Are Not Actionable Under The Consumer Protection Laws of Eight States

Despite Plaintiffs' efforts to relabel them, Plaintiffs' "consumer protection" allegations are plainly antitrust price-fixing claims (*see, e.g.,* AD CCC ¶ 1; EP CCAC ¶ 1) and as such are not actionable under the consumer protection laws of **Arizona, Arkansas, Kansas, Michigan, Minnesota, New Mexico, Rhode Island,[11] or South Dakota**.  *See, e.g.,  GPU I*, 527 F. Supp.

---

[11]    Additionally, as indirect purchasers, End-Payors lack standing to bring their antitrust claims under the guise of the Rhode Island consumer protection statute.  *See GPU I*, 527 F. Supp. 2d at 1029-30 (dismissing plaintiffs' Rhode Island consumer protection claims, alleging antitrust violations, in part because Rhode Island "does not permit state-law antitrust claims by

2d at 1029-31 (dismissing (i) *inter alia,* Arkansas, Kansas, and New Mexico consumer protection claims because price fixing is "not the kind of conduct prohibited under these statutes"; and (ii) Rhode Island consumer protection claims because the statute "foreclose[s] claims based on antitrust violations"); *see also* Exhibit J (citing authority).  Accordingly, the consumer protection claims of the End-Payors under New Mexico and Rhode Island law, and those of the Auto Dealers under Arizona, Arkansas, Kansas, Michigan, Minnesota, New Mexico, and South Dakota law must be dismissed.

> ### D. Plaintiffs Do Not Allege Facts To Support Standing Under New York's Consumer Protection Law

Plaintiffs have failed to allege facts sufficient to support standing under New York's consumer protection law, N.Y. Gen. Bus. Law § 349.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . in [New York]."  *Id.* at § 349(a).  The statute only confers a private right of action on a "person who has been injured *by reason of*" a deceptive act or practice.  *Id.* at § 349(h) (emphasis added).  In order to state a Section 349 claim, plaintiffs must allege "both a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a plaintiff."  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004).  New York courts consistently dismiss claims under Section 349 where, as here, plaintiffs allege price-fixing violations but do not allege any misrepresentations directed at indirect purchasers.  *New York v. Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d 8 (N.Y. App. Div. 2007); *Paltre v. Gen. Motors Corp.*, 26 A.D.3d 481 (N.Y. App. Div. 2006).  Auto Dealers do not allege any statements that were made by any Defendant to any Auto Dealer, and End-Payors admit that they "had no direct

---

[private] indirect purchasers"); *Siena v. Microsoft Corp.*, 796 A.2d 461, 464 (R.I. 2002) (indirect purchasers lack standing under Rhode Island's antitrust act); R.I. Gen. Laws § 6-36-12(g) (authorizing suit on behalf of indirect purchaser *by state attorney general*).

contact or interaction with any of the Defendants in this case" and in fact "had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers."  EP CCAC ¶¶ 205, 206.  Accordingly, Plaintiffs have failed to plead standing under New York law.

E.     **Because Plaintiffs Fail To Allege A Sufficient Nexus Between Defendants' Conduct And Intrastate Commerce, The Court Should Dismiss Their Claims Under The Consumer Protection Laws Of Five States**

To state a claim under the consumer protection laws of **California**, **Montana**, **New Hampshire**, **New York**, and **North Carolina**, Plaintiffs must allege a specific nexus between Defendants' conduct and intrastate commerce.  *See* Exhibit G (citing authority).  Here, however, all Plaintiffs fail to allege *any* offending conduct that took place within California or Montana. That is fatal to those claims.  *See Meridian Project Sys. Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005) (dismissing California unfair competition claims against out-of-state defendant where there was "no specific intrastate misconduct" alleged in the complaint); *DRAM I*, 516 F. Supp. 2d at 1104 (dismissing plaintiffs' Montana consumer protection law claims where plaintiffs failed to allege "any conduct or activity taking place within [Montana] that sets forth a basis for connecting plaintiffs' individual claims with representative claims under . . . Montana . . . statutes").

Auto Dealers likewise fail to allege any facts at all to support an effect on intrastate commerce as a result of Defendants' conduct in New Hampshire, New York, and North Carolina.  Their consumer protection claims in these states thus fail as a matter of law and must be dismissed.  *See* Exhibit G (citing authority).

End-Payors allege no claim under New Hampshire consumer protection law and, while they pay lip service to the intrastate commerce requirements of the consumer protection laws of New York, and North Carolina, their scant allegations that Wire Harness Systems were "sold,

distributed or obtained" in each of these states (EP CCAC ¶¶ 269, 273-74) fall well short of the threshold necessary to state a consumer protection claim there. *See, e.g., Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing plaintiff's claim under NC UTPA where "plaintiffs . . . failed to allege a substantial effect on any in-state business operations," and "[a]ny injury plaintiffs may suffer in North Carolina will be incidental"); *see also* Exhibit G (citing authority).  Thus, the Court should also dismiss End-Payors' deficient consumer protection claims in each of these states.

### F.     As Businesses, Auto Dealers Cannot Bring Consumer Protection Claims Under The Laws Of Seven States

The consumer protection laws of **Michigan, Mississippi, Missouri**, and **Montana** do not provide a private right of action when an item is purchased primarily for business or commercial purposes.  *See* Exhibit K (citing authority).  But the Auto Dealers expressly allege that they purchased Wire Harness Systems for their respective "repair and service business[es]."  AD CCC at ¶ 23; *see also id.* ¶¶ 214-16, 232.  Moreover, **Kansas** permits consumers to bring an action for items purchased for business purposes, but defines "consumer" as an "individual, husband, wife, sole proprietor or family partnership."  Kan. Stat. Ann. §50-624(b).  None of the Auto Dealers allege that they are individuals, sole proprietorships, or family partnerships.  AD CCC ¶¶ 22-85.  Therefore, Auto Dealers' consumer protection claims in these states should be dismissed.

The Court should also dismiss the Auto Dealers' claims under **Iowa's** consumer protection statute.  Prior to 2009, Iowa's consumer protection statute did not provide a private right of action at all.  *See Molo Oil Co. v. River City Ford Truck Sales, Inc*., 578 N.W.2d 222, 228 (Iowa 1998) (affirming trial court dismissal of claims under Iowa consumer fraud statute, and holding that "the statute does not expressly create a private cause of action").  Although Iowa amended its code in 2009 to provide a private right of action to *consumers* for limited

consumer fraud claims accruing on or after July 1, 2009, *see* Iowa Code § 714H.5(1) ("A consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages."), Auto Dealers are not "consumers" as defined in the Iowa Code and, therefore, have no private right of action. *Compare* Iowa Code § 714H.2(3) (defining "consumer" as "a natural person or the person's legal representative") *with* AD CCC ¶¶ 22-85 (describing all plaintiffs as corporations, partnerships, or other legal entities).[12]

Additionally, the Court should dismiss the Auto Dealers' claims under **Massachusetts**' consumer protection statute, the Massachusetts Consumer Protection Act ("MA CPA"). Because the Auto Dealers engage in "the conduct of any trade or commerce," they must bring their claims pursuant to section 11 of the MA CPA. Mass. Gen. Laws ch. 93A, § 11. Section 11 states that courts "shall . . . be guided in [their] interpretation of unfair methods of competition by those provisions of . . . the Massachusetts Antitrust Act." *Id.* The Massachusetts Supreme Court has specifically stated that indirect purchasers are precluded from bringing claims under the Massachusetts Antitrust Act. *Ciardi*, 762 N.E.2d at 308. This bar on indirect purchaser suits applies to the Auto Dealers' MA CPA claims, and therefore the court should dismiss them.

G.     **The Component Part Plaintiffs Lack Standing To Assert Consumer Protection Claims Under Four States' Laws Because Their Claims Are Too Remote**

To prevent Plaintiffs from circumventing *AGC*'s stringent standards simply by re-casting their antitrust claims as consumer protection claims, several states—including **Arkansas,**

---

[12]     Moreover, even as amended, this provision only allows class actions to proceed with the approval of the Iowa Attorney General. *See* Iowa Code § 714H.7 (2009) ("A class action lawsuit alleging a violation of this chapter shall not be filed with a court unless it has been approved by the attorney general."). Auto Dealers do not plead that they asked for, much less received, such approval, and their Iowa consumer protection claims thus fail for this reason as well.

**Nebraska, New York,** and **Vermont**—have relied on *AGC* and its remoteness inquiry to dismiss consumer protection claims sounding in antitrust. Here, Plaintiffs are claiming the same injury for their antitrust and consumer protection claims; just as the former fail for being too remote, so must the latter. *See Fucile v. Visa U.S.A. Inc.*, No. S1560-03 CNC, 2004 WL 3030037at *3 (Vt. Super. Ct. Dec. 27, 2004) (Ex. V) (applying an *AGC* analysis to conclude that plaintiffs lacked standing to bring claims under the Vermont Consumer Fraud Act); *Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d at 12 (trial court "properly dismissed the General Business Law § 349 claim on the ground that the indirect purchasers on whose behalf plaintiff is suing are too remote from defendants' alleged wrongdoing to support such a claim") (citing *Blue Cross & Blue Shield of N.J.*, 818 N.E.2d at 1145); *DRAM II*, 536 F. Supp. 2d at 1142 (dismissing consumer protection claims under New York law pursuant to *AGC*); *Independence County v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 888 (E.D. Ark. 2008) (plaintiffs' injury stemming from production of methamphetamine was too remote to support claim against defendants under Arkansas Deceptive Trade Practices Act; "Arkansas law recognizes the remoteness doctrine"), *aff'd* 552 F.3d 659 (8th Cir. 2009); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 302 (Neb. 2006) (citing the *AGC* factors and holding that plaintiffs' asserted injuries from the alleged antitrust conduct were too "remote and derivative" to state a claim under the Nebraska Consumer Protection Act).

### H. Plaintiffs Cannot Pursue Their Claims Under The Consumer Protection Laws of Kansas, Mississippi, Montana, Or South Carolina As A Class Action

Plaintiffs cannot bring their consumer protection claims under the laws of **Kansas**, **Mississippi**, **Montana**, or **South Carolina** because each of these laws expressly prohibits class actions.[13] Kan. Stat. Ann. § 50-634(b) ("A consumer who is aggrieved by a violation of this act

---

[13] Because Auto Dealers also have failed to satisfy Mississippi's requirement that, "[i]n any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney

may recover, but not in a class action, damages or a civil penalty . . . ."); Miss. Code Ann. § 75–24–15(4) ("Nothing in this [consumer protection statute] shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person."); Mont. Code Ann. § 30-14-133(1)  ("A consumer who suffers any ascertainable loss of money or property . . . as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual but not a class action . . . .");[14] S.C. Code Ann. § 39-5-140(a)  ("Any person who suffers any ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages.").  Accordingly, these claims must be dismissed.

---

General," Miss. Code Ann. § 75–24–15(2) , their Mississippi consumer protection claims are deficient and warrant dismissal for this reason as well.  *See BC's Heating & Air and Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, No. 2:11-cv-136-KS-MTP, 2012 WL 642304, at *4-5 (S.D. Miss. Feb. 27, 2012) (Ex. O) (granting defendants' motion to dismiss plaintiffs' claims under the Mississippi Unfair Trade Practices Act because plaintiffs failed to allege that they attempted to resolve the claim through an informal dispute resolution program).

[14]      End-Payors also purport to bring a claim for violation of Montana's consumer protection laws under Mont. Code Ann. §§ 30-14-201, *et seq.* (*see* EP CCAC ¶ 271), but that section deals with unlawful restraints of trade and is Montana's antitrust law, comparable to Sections 1 and 2 of the Sherman Act, *DRAM I*, 516 F. Supp. 2d at 1112 (N.D. Cal. 2007), which is a claim End-Payors did not make – *see* EP CCAC ¶¶ 230-262.  Nor could they, given that indirect purchasers lack standing to pursue antitrust claims for money damages under Montana law.  *In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 23 (D. Mass. 2004) (finding, in action asserting claims under various state and federal antitrust laws, that Montana indirect purchasers "lack recognized rights of action under … the statutory scheme[]").

V.      **AUTO DEALERS' AND END-PAYORS' CLAIMS FOR UNJUST ENRICHMENT FAIL**

      A.      **Auto Dealers Fail To Identify Any State Law In Support Of Their Unjust Enrichment Claims**

Auto Dealers purport to assert unjust enrichment claims on behalf of their entire class, yet they fail to identify the unjust enrichment laws of any particular jurisdictions.  AD CCC ¶¶ 297-300.  The failure to identify appropriately the state laws under which Auto Dealers claim a right to restitution is an independently sufficient basis for dismissing all of their unjust enrichment claims, and the Court should do so.

First, to the extent that Auto Dealers seek to recover under federal common law, the Court should dismiss their claims because courts do not recognize a federal common law unjust enrichment claim.  *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("Unjust enrichment is not a catch-all claim existing within the narrow scope of federal common law.").  To hold otherwise would permit a blatant common law circumvention of the Supreme Court's ruling in *Illinois Brick.  See, e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig. ("In re NMV")*, 350 F. Supp. 2d 160, 211 (D. Me. 2004) ("Certainly no restitutionary remedy can escape the limitations the United States Supreme Court imposed on federal antitrust recovery in *Illinois Brick*.").

Second, where, as here, it is impossible to know which states' unjust enrichment laws may apply, courts routinely dismiss the inadequately pled claim because the individual requirements for an unjust enrichment claim vary from state to state.  *See, e.g., In re Packaged Ice*, 779 F. Supp. 2d at 667-68 (detailing differences in state unjust enrichment law and

dismissing those claims due to inability to analyze the plaintiffs' claims based on the complaint). The Court should do so here too.[15]

### B. Plaintiffs Cannot Use Unjust Enrichment To Recover On Failed Antitrust And Consumer Protection Theories

Plaintiffs do not specify whether they are seeking to bring "autonomous" unjust enrichment claims—claims independent of their antitrust or consumer protection claims—or so-called "parasitic" unjust enrichment claims—claims that merely provide an alternative remedy for their underlying predicate antitrust and consumer protection claims. *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 411 (S.D.N.Y. 2011). Under either theory, Plaintiffs cannot evade the restrictions of federal and state law by resorting to the doctrine of unjust enrichment.

It is axiomatic that, where the law precludes a plaintiff from seeking damages under a claim at law, that plaintiff may not seek those same damages vis-à-vis an equitable claim for restitutionary relief. *Cf. INS v. Pangilinan*, 486 U.S. 875, 883 (1988) ( "it is well established that courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law" (internal quotations and citation omitted)). Antitrust and consumer protection statutes reflect each state legislature's policy choices concerning how best to regulate economic conduct in that state. Courts do not permit plaintiffs to circumvent these legislative policy choices by repackaging failed antitrust theories under the common law of unjust enrichment. To do so would undermine "a relatively comprehensive state and federal statutory

---

[15]     Should the Court decline to dismiss Auto Dealers' deficient unjust enrichment claims based on their failure to identify the law of any state in support of such claims, for the remaining arguments related to Auto Dealers' unjust enrichment claims, Defendants construe their complaint, like the End-Payor Complaint (*see* EP CCAC ¶¶ 189, 277-80), as asserting such claims only in the states for which Auto Dealers pled an antitrust or consumer protection claim.

and common-law scheme [which] exists to proscribe the conduct of which [p]laintiffs complain." *In re Digital Music*, 812 F. Supp. 2d at 412; *see also In re NMV*, 350 F. Supp. 2d at 209.

If Plaintiffs are asserting autonomous, or "free-standing," unjust enrichment claims, those claims must be dismissed because there is no cause of action for unjust enrichment separate and apart from the predicate causes of action (either antitrust or consumer protection). *See In re Digital Music*, 812 F. Supp. 2d at 412 (dismissing all autonomous unjust enrichment claims). The necessary premise of a freestanding unjust enrichment claim is that, "even if the defendants' conduct is blameless under the substantive requirements of federal and state antitrust statutes and state consumer protection statutes, the plaintiffs nevertheless can still obtain restitution of some part of their . . . purchase price." *In re NMV*, 350 F. Supp. 2d at 209. But permitting any such claim would directly circumvent the common-law and statutory schemes at issue.

If, on the other hand, Plaintiffs are asserting parasitic claims, then each of those claims fails for the same reasons that the underlying predicate antitrust and consumer protection claims fail, as discussed above. *In re Digital Music*, 812 F. Supp. 2d at 412-13 (dismissing parasitic unjust enrichment claims brought under the laws of states that follow *Illinois Brick*).

For all of these reasons, Plaintiffs cannot use their unjust enrichment claims to seek damages in states that would otherwise preclude them from bringing claims, whether because the state follows *Illinois Brick* or because the state has limited recovery for indirect purchasers through other means. *See In re Terazosin Hydrochloride*, 160 F. Supp. 2d at 1380 ("State legislatures and courts that adopted the *Illinois Brick* rule against indirect purchaser antitrust suits did not intend to allow an end run around the policies allowing only direct purchasers to recover.") (internal quotation and citation omitted).

Relying on the same allegations that form the basis of their antitrust and consumer protection claims, and under the broadest reading of their complaints, Plaintiffs purport to assert unjust enrichment claims under the laws of 32 states but, as discussed above, Plaintiffs' unjust enrichment claims must be tethered to their antitrust or consumer protection claims.   As described above in Sections III and IV, many of these 32 states do not permit claims of the sort that Plaintiffs allege.  For example, at least three of the states in which Plaintiffs make antitrust claims (Illinois, Massachusetts, and Missouri) do not allow private, indirect purchaser antitrust suits at all or in the form of a class action, *see supra* Sections III.B and III.E, and at least four states (Hawaii, Nebraska, New Hampshire, and Utah) have only permitted indirect purchaser suits for a portion of the relevant time period.  *See supra* Section III.C.  Similarly, at least four of the states in which Plaintiffs attempt consumer-protection claims do not allow class actions (Kansas, Mississippi, Montana, and South Carolina), *see supra* Section IV.H, and fifteen states[16] do not permit consumer protection claims under the facts alleged by Plaintiffs, *see supra* Sections IV.C, IV.E, and IV.G.  To the extent that these state antitrust and/or consumer protection claims are dismissed, the corresponding unjust enrichment claims must also be dismissed.  To hold otherwise would circumvent the states' policy choices.

For the foregoing reasons, any autonomous unjust enrichment claims alleged by Plaintiffs must be dismissed.  This necessarily includes any unjust enrichment claims in states for which Plaintiffs do not have a surviving antitrust or consumer protection claim.

---

[16]   Arizona, California, Arkansas, Kansas, Michigan, Minnesota, Montana, Nebraska, New Hampshire, New Mexico, New York, North Carolina, Rhode Island, South Dakota, and Vermont.

### C.   Unjust Enrichment Is Unavailable Where, As Here, A Party To A Voluntary Agreement Received The Benefit Of Its Bargain

Courts uniformly have rejected unjust enrichment claims in cases, like this one, "where parties voluntarily have negotiated, entered into and fully performed their bargain."  *See In re NMV*, 350 F. Supp. 2d at 210 (rejecting unjust enrichment claims in a case involving indirect purchasers of vehicles).  According to the Restatement (First) of Restitution § 107(1):

> A person of full capacity who, pursuant to a contract with another, has performed services or transferred property to the other or otherwise has conferred a benefit upon him, is not entitled to compensation therefor other than in accordance with the terms of such bargain, unless the transaction is rescinded for fraud, mistake, duress, undue influence or illegality, or unless the other has failed to perform his part of the bargain.

Here, both the Auto Dealers and End-Payors "paid their purchase prices and obtained their products under contracts that were voluntarily negotiated and entered into (*see* AD CCC ¶ 2; EP CCAC ¶ 2).  *In re NMV*, 350 F. Supp. 2d at 210.  Plaintiffs do not assert that they failed to receive the benefit for which they bargained, nor do they seek to rescind their purchases.  Rather they allege only that they overpaid for the product for which they bargained.[17]  Unjust enrichment is unavailable in these circumstances.  *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 421 (D. Del. 2007) (rejecting unjust enrichment claims for overpayment of microprocessors by indirect purchasers where class plaintiffs "paid the purchase price for their computers and received their computers," "ha[d] not sought to rescind their purchases, none of which involved Intel as a direct manufacturer or seller," and "ha[d] not

---

[17]     *See* AD CCC ¶ 12 ("As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for Automotive Wire Harness Systems or vehicles containing Automotive Wire Harness Systems."); EP CCAC ¶ 9 ("As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for Automotive Wire Harness Systems.").

alleged that they did not receive the benefit of their bargain"); *see also* Exhibit L (citing additional authorities).  For this reason, Plaintiffs' unjust enrichment claims fail in all states.

### D.       Because Plaintiffs Did Not Confer A Direct Benefit On Defendants, Their Unjust Enrichment Claims Under The Laws Of Seven States Fail

Plaintiffs' unjust enrichment claims under the laws of **Florida**, **Kansas**, **Maine**, **Michigan**, **North Carolina**, **North Dakota**, and **Utah** fail because Plaintiffs do not and cannot allege that they conferred a direct benefit upon Defendants.  A claim of unjust enrichment in these jurisdictions requires that a plaintiff confer not just a benefit upon defendants, but a *direct* benefit.  *See In re Potash*, 667 F. Supp. 2d at 948 (granting a motion to dismiss claims of "indirect" unjust enrichment based on the laws of Florida, Kansas, and Michigan);  *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010) (Ex. Y) (granting motion to dismiss unjust enrichment claims based on the laws of Kansas, Maine, Michigan, North Carolina and Utah); *see also* Exhibit M (citing additional authorities).  As indirect purchasers, Plaintiffs by definition cannot have directly conferred any benefit on Defendants.  Plaintiffs' general allegation that "Defendants have benefited" is insufficient to overcome this dispositive fact.  AD CCC ¶ 298; EP CCAC ¶ 279.

### E.       Plaintiffs Fail To State Unjust Enrichment Claims Under The Laws Of Seven States For Additional Reasons

Plaintiffs have also failed to meet the special pleading requirements for unjust enrichment under the laws of **Arizona**, **South Carolina**, **Tennessee**, and **West Virginia**.  Under the law of Arizona, to establish a claim for unjust enrichment, a party must show, *inter alia*, "the absence of a legal remedy."  *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002).  South Carolina requires that "the plaintiff  . . . establish the existence of a duty owed to him or her by the defendant."  *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464-65 (D. Md. 2005) (dismissing unjust enrichment claim because, *inter alia*, plaintiff failed to

establish a breach of fiduciary duty).  In Tennessee, unjust enrichment claimants must allege

exhaustion of remedies against the party with whom the plaintiff had privity of contract, or show

that attempts at exhaustion would have been futile.  *Freeman Indus. LLC v. Eastman Chem. Co.*,

172 S.W.3d 512, 525-26 (Tenn. 2005) (reversing denial of summary judgment to defendants on

indirect purchasers' Tennessee unjust enrichment claim because they failed to allege exhaustion

of remedies against the direct purchaser and only provided "bare allegation" that such efforts

would be futile).  And West Virginia requires a plaintiff to specifically allege that retention of a

benefit is both "inequitable and unconscionable."  *Wittenberg v. First Indep. Mortg. Co.*, No.

3:10–CV–58, 2011 WL 1357483, at *15 (N.D. W.Va. Apr. 11, 2011) (Ex. XX) (dismissing

plaintiffs' unjust enrichment claims for failure to allege "how the defendants' retention of that

benefit is both inequitable and unconscionable").  Plaintiffs' failure to plead any of these

elements requires dismissal of their claims.

In addition, under **New York** law, the attenuated relationship between a manufacturer

and a purchaser of a complex product containing many parts precludes an unjust enrichment

claim against the manufacturer of one of those parts.  *See Sperry v. Crompton Corp.*, 863 N.E.2d

1012, 1018 (N.Y. 2007) (a plaintiff cannot assert an unjust enrichment claim against an entity

that manufactured a component of a product purchased from a third party because the connection

is too attenuated).  Accordingly, this claim must be dismissed as well.

In **Mississippi**, unjust enrichment permits recovery only of "[m]oney paid to another by a

mistake of fact."  *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012), *reh'g*

*denied,* No. 2010-CA-01015-SCT, 2012 Miss. LEXIS 175 (Miss. Mar. 29, 2012) ("[t]he law is

clear that unjust enrichment applies when one party has mistakenly paid another party").

Because Plaintiffs do not allege any facts that, taken as true, plausibly suggest that they have

"mistakenly paid" the Defendants, their Mississippi unjust enrichment claim must be dismissed as well.  *Id.*

Finally, there is no cause of action for unjust enrichment under the laws of **California**.[18] *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) ("Because California law does not recognize Plaintiff's claim for unjust enrichment, there are no facts Plaintiff could prove to support this claim."), *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009).  To the extent that Plaintiffs have alleged an unjust enrichment claim under California law, this claim also fails.

## VI.  PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE THREATENED FUTURE INJURY ENTITLING THEM TO INJUNCTIVE RELIEF

Whether or not Plaintiffs' other claims survive, their claims for injunctive relief must be dismissed because they have not pled facts that plausibly establish the continuing presence of the requisite threatened injury, which is the essential predicate for such relief under Section 16 of the Clayton Act.  15 U.S.C. § 26; *see In re NMV*, 522 F.3d 6, 14 (1st Cir. 2008).  Plaintiffs seek an injunction restraining Defendants from "continuing" or "maintaining" the alleged price fixing conspiracy.  AD CCC at 84 (Prayer for Relief ¶ E); EP CCAC at 93 (Prayer for Relief ¶ E). However, Plaintiffs have pled no facts supporting their conclusory allegations of a "continuing conspiracy," and the facts they have pled are inconsistent both with such a conspiracy and with any real or immediate threat of future harm.

---

[18]    Notwithstanding earlier cases suggesting the existence of a separate, stand-alone cause of action for unjust enrichment, both the California Court of Appeals and the California federal district courts recently have reiterated and reaffirmed that "[u]njust enrichment is not a cause of action, just a restitution claim."  *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2012 WL 2126351, at *27 (N.D. Cal. June 12, 2012) (Ex. AA); *see also Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011).

Auto Dealers allege that the conspiracy "continu[ed] through at least September 30, 2011" (AD CCC ¶ 245), and End-Payors allege that it continued through "the filing" of their complaint (EP CCAC ¶ 221). But neither set of Plaintiffs has pled any facts to support these allegations. They are contrary to the guilty pleas and JFTC Orders on which Plaintiffs rely (AD CCC ¶¶ 7-11, 177-212; EP CCAC ¶¶ 7-8, 172-86), and implausible given (a) the widespread publicity of enforcement agency investigations beginning in February 2010 (AD CCC ¶¶ 6, 168-75; EP CCAC ¶¶ 6, 164-70); (b) the pleas by certain Defendants and the onerous consequences of another violation; and (c) the JFTC Orders relating to certain Defendants. As set forth in detail in Section VI of the Memorandum In Support of the Defendants' Motion to Dismiss the Direct Purchasers' Consolidated Amended Complaint, the pleas and JFTC Orders undermine any claim that the alleged conspiracy will be revived or recur, and the court accepting the plea agreements concluded that further relief was not required to deter future violations. Because the arguments and authorities that call for dismissal of the Direct Purchasers' claim for injunctive relief (which are incorporated here by reference) apply with equal force to the Auto Dealers' and End-Payors' claims for such relief, the Court should likewise dismiss those claims here.[19]

## CONCLUSION

For the reasons set forth above, the Court should dismiss the End-Payors' and Auto Dealers' Complaints in their entirety. Alternatively, the Court should dismiss End-Payors and Auto Dealers individual federal and state claims in accordance with Exhibit A.

---

[19]    If the Court is not inclined to dismiss the federal injunction claims in their entirety, the Court should at least dismiss them as to the Component Part Plaintiffs because they have failed to satisfy the requirements of *AGC*. *See supra* Section III.A; *In re Potash,* 667 F. Supp. 2d at 938-41 (dismissing component purchasers' federal injunction claim for failure to satisfy *AGC*).

Respectfully submitted,

July 13, 2012          By:     LANE POWELL PC

*/s/Larry S. Gangnes*  (w/consent)
Larry S. Gangnes
LANE POWELL PC
1420 Fifth Ave., Suite 4100
Seattle, WA 98101-2338
Telephone: (206) 223-7000
Fax: (206) 223-7107
gangnesl@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Masayuki Yamaguchi
Darin M. Sands
LANE POWELL PC
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Fax: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
yamaguchim@lanepowell.com
sandsd@lanepowell.com

Irwin Alterman (P10147)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone: (248)528-1111
irwin.alterman@kkue.com

*Attorneys for Defendants American Furukawa, Inc.; and
Furukawa Electric Co., Ltd.*

WILMER CUTLER PICKERING HALE AND DORR LLP

July 13, 2012     By:     */s/Steven F. Cherry*  (w/consent)
Steven F. Cherry
David P. Donovan
Stephanie K. Wood
Elizabeth Martin
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
stephanie.wood@wilmerhale.com
ellie.martin@wilmerhale.com

Karen D. Stringer
Heather Price
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6406
Fax: (617) 526-5000
karen.stringer@wilmerhale.com
heather.price@wilmerhale.com

*Attorneys for Defendants DENSO International America, Inc. and
DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Phone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International America, Inc.*

KERR, RUSSELL AND WEBER, PLC

July 13, 2012      By:      */s/William A. Sankbeil*  (w/consent)
                            William A. Sankbeil (P19882)
                            Joanne Geha Swanson (P33594)
                            Matthew L. Powell (P69186)
                            500 Woodward Avenue, Suite 2500
                            KERR, RUSSELL AND WEBER, PLC
                            Detroit, MI 48226
                            Telephone: (313) 961-0200
                            Fax: (313) 961-0388
                            wsankbeil@kerr-russell.com
                            jswanson@kerr-russell.com
                            mpowell@kerr-russel.com

                            James L. Cooper
                            Sonia Kuester Pfaffenroth
                            Laura Cofer Taylor
                            ARNOLD & PORTER LLP
                            555 Twelfth Street NW
                            Washington, DC 20004
                            Telephone: (202) 942-5014
                            Fax: (202) 942-5999
                            james.cooper@aporter.com
                            sonia.pfaffenroth@aporter.com
                            laura.taylor@aporter.com

                            *Attorneys for Defendants Fujikura America, Inc. and
                            Fujikura Ltd.*

                            SMITH, GAMBRELL & RUSSELL, LLP

July 13, 2012      By:      */s/Wm. Parker Sanders*  (w/consent)
                            Wm. Parker Sanders (Georgia Bar No. 626020)
                            SMITH, GAMBRELL & RUSSELL, LLP
                            Promenade II, Suite 3100
                            1230 Peachtree Street, N.E.
                            Atlanta, Georgia 30309
                            Telephone: (404) 815-3684
                            psanders@sgrlaw.com

                            Jeffrey G. Heuer (P14925)
                            Peter M. Falkenstein (P61375)
                            JAFFE, RAITT, HEUER & WEISS, P.C.
                            27777 Franklin Rd., Ste. 2500
                            Southfield, MI 48034
                            Telephone: (248) 351-3000
                            jheuer@jaffelaw.com
                            pfalkenstein@jaffelaw.com

                            *Attorney for Defendant Kyungshin-Lear Sales and
                            Engineering, LLC*

DYKEMA GOSSETT PLLC

July 13, 2012    By:    */s/Howard B. Iwrey*  (w/consent)
Howard B. Iwrey (P39635)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Telephone: (248) 203-0526
hiwrey@dykema.com

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Fax: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

*Attorneys for Defendant Lear Corporation*

O'MELVENY & MYERS LLP

July 13, 2012    By:    */s/Michael F. Tubach*  (w/consent)
Michael F. Tubach
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415)984-8700
Fax: (415) 984-8701
Mtubach@omm.com

Michael R. Turco (P48705)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248)971-1713
Fax: (248) 971-1801
turco@bwst-law.com

*Attorneys for Defendants Leoni AG, Leoni Wire Inc., Leoni Wiring Systems, Inc., Leoni Kabel GmbH, and Leonische Holding Inc.*

LATHAM & WATKINS LLP

July 13, 2012    By:    */s/ Marguerite M. Sullivan*
                      Marguerite M. Sullivan
                      LATHAM & WATKINS LLP
                      555 Eleventh Street NW, Suite 1000
                      Washington, DC 20004
                      Telephone: (202)637-2200
                      Fax: (202)637-2201
                      maggy.sullivan@lw.com

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: (248)457-7060
bhorton@gmhlaw.com

*Attorneys for Defendants Sumitomo Electric Industries, Ltd.;
Sumitomo Electric Wintec America, Inc.; Sumitomo Wiring
Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S
Wiring Systems, Inc.; and Sumitomo Wiring Systems (U.S.A.) Inc.*

COVINGTON & BURLING LLP

July 13, 2012    By:    */s/Michael J. Fanelli*  (w/consent)
                      Michael J. Fanelli
                      COVINGTON & BURLING LLP
                      1201 Pennsylvania Ave., NW
                      Washington, D.C. 20004
                      Telephone: (202) 662-6000
                      Fax: (202) 662-5383
                      Mfanelli@cov.com

Anita F. Stork
COVINGTON & BURLING LLP
One Front Street
35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

*Attorneys for Defendant S-Y Systems Technologies
Europe GmbH*

BUTZEL LONG

July 13, 2012          By:     */s/David F. DuMouchel*  (w/consent)
                               David F. DuMouchel (P25658)
                               George B. Donnini (P66793)
                               BUTZEL LONG
                               150 West Jefferson, Suite 100
                               Detroit, MI 48226
                               Telephone: (313)225-7000
                               dumouchd@butzel.com
                               donnini@butzel.com

                               W. Todd Miller
                               BAKER & MILLER PLLC
                               2401 Pennsylvania Ave., NW, Suite 300
                               Washington, DC 20037
                               Telephone: (202)663-7820
                               TMiller@bakerandmiller.com

                               *Attorneys for Defendants Tokai Rika Co., Ltd. and  TRAM, Inc.*

JONES DAY

July 13, 2012        By:    */s/John M. Majoras*  (w/consent)
                            John M. Majoras
                            Carmen G. McLean
                            JONES DAY
                            51 Louisiana Ave. N.W.
                            Washington, D.C. 20001-2113
                            Tel. (202) 879-3939
                            Fax (202) 626-1700
                            jmmajoras@jonesday.com
                            cgmclean@jonesday.com

                            Michelle K. Fischer
                            Stephen J. Squeri
                            JONES DAY
                            North Point
                            901 Lakeside Avenue
                            Cleveland, OH 44114
                            Tel. (216) 586-3939
                            Fax (216) 579-0212
                            mfischer@jonesday.com
                            sjsqueri@jonesday.com

                            *Attorneys for Defendants Yazaki Corporation and Yazaki North America, Inc.*

                            YAZAKI NORTH AMERICA, INC.

                            Atleen Kaur (P66595)
                            Yazaki North America, Inc.
                            6801 N. Haggerty Road
                            Canton, MI 48187
                            734-983-4622
                            734-983-4623 (facsimile)
                            Email:  Atleen.kaur@us.yazaki.com

                            *Attorney for Defendant Yazaki North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2012, I caused the foregoing DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END-PAYORS' CONSOLIDATED AMENDED COMPLAINT AND THE AUTOMOBILE DEALERS' CONSOLIDATED AMENDED COMPLAINT and DEFENDANTS' COLLECTIVE MEMORANDUM IN SUPPORT THEREOF to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Marguerite M. Sullivan*
Marguerite M. Sullivan