# EXHIBIT N



Page 1

Not Reported in N.W.2d, 2008 WL 540883 (Mich.App.)
**(Cite as: 2008 WL 540883 (Mich.App.))**


Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED

Court of Appeals of Michigan.
A & M SUPPLY CO., a Michigan corporation, Individually and as Representative of all persons similarly situated, Plaintiff-Appellant,
v.
MICROSOFT CORPORATION, Defendant-Appellee.

Docket No. 274164.
Feb. 28, 2008.

West KeySummary**Pretrial Procedure 307A** 🗝️ **587**

307A Pretrial Procedure
    307AIII Dismissal
        307AIII(B) Involuntary Dismissal
            307AIII(B)3 Want of Prosecution
                307Ak587 k. Particular Applications, Delay or Time Limitation. Most Cited Cases
    Lack of progress required dismissal of corporation's anti-trust action against computer software company for failure to prosecute. The proceedings had been stayed pending determination of class certification issues involving another plaintiff and the computer software company, but even after these class certification issues had been resolved the corporation failed to appropriately advance the case. M.C.L.A. § 445.771 et seq.; MCR 2.502(A)(1).

Wayne Circuit Court; LC No. 00-031123-NZ.

Before: BANDSTRA, P.J., and DONOFRIO and SERVITTO, JJ.

PER CURIAM.

*1 Plaintiff A & M Supply Company appeals the lower court's order denying its motion to amend its complaint and granting defendant Microsoft Corporation's motion to dismiss. We affirm.

Plaintiff first argues that the trial court erred in dismissing the case for "lack of progress." MCR 2.502. We review the trial court's action in this regard for an abuse of discretion. *Eliason Corp., Inc. v. Dep't of Labor,* 133 Mich.App. 200, 203, 348 N.W.2d 315 (1984). No abuse of discretion occurs unless the action of the trial court was outside of a range of principled outcomes considering the facts and circumstances of the case. *Saffian v. Simmons,* 477 Mich. 8, 12, 727 N.W.2d 132 (2007); *Maldanado v. Ford Motor Co.,* 476 Mich. 372, 388, 719 N.W.2d 809 (2006). Applying that standard here, we do not find an abuse of discretion.

We recognize that the lower court entered a stay of proceedings in this matter in early 2003, pending determination of class certification issues in related litigation involving another plaintiff, Fish, and defendant Microsoft. That would certainly provide justification for plaintiff's failure to prosecute its claims until the Fish certification issue had been resolved. However, the logic of the trial court's decision, with which we agree, was that plaintiff thereafter failed to appropriately advance the case.

The Fish certification issue was initially decided when the application for certification was denied by the trial court. Our Court denied an application for leave to review that decision in July 2004, and the Supreme Court similarly denied leave in November 2005. Notwithstanding those determinations of the Fish certification question and the fact that the record here clearly shows this was the question underlying the stay, plaintiff took no action to lift the stay until September 2006.[FN1] In other words, plaintiff took no action to lift the stay in response to the Fish decision until more than two years after that decision was first made and until al-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in N.W.2d, 2008 WL 540883 (Mich.App.)
**(Cite as: 2008 WL 540883 (Mich.App.))**

most 11 months after the Supreme Court entered an order finally resolving the possibility of any appeal of that decision. That lengthy inaction on plaintiff's part certainly justified dismissal under the Rule, which provides that an action "in which no steps or proceedings ... have been taken within 91 days" may be dismissed for lack of progress. MCR 2.502(A)(1).

> FN1. Plaintiff filed a motion to lift the stay *prior* to a decision on the Fish certification question, which was thus unfounded and unsuccessful for that reason, in September 2003.

Further, the record here clearly indicates that there was ample notice that dismissal was likely to occur in the face of plaintiff's failure to prosecute the case. Already in October 2003, the trial court indicated in its ruling denying plaintiff's premature motion to lift the stay, see n 1, that the case was probably subject to dismissal as a result of our Court's prior decision, *A & M Supply Co. v. Microsoft Corp.,* 252 Mich.App. 580, 654 N.W.2d 572 (2002) (*A & M I* ), or that it should be remanded to the district court for consideration as an individual action rather than a class action as a result of *A & M I.* The record also shows that, shortly after the Supreme Court denied the application for review in the Fish case, the trial court initiated a telephone conference with the parties. It asked what plaintiff's plans for the case were, and whether the case should be dismissed, to which plaintiff responded that it would make a determination and undertake further proceedings .FN2 The "notice of proposed dismissal" that MCR 2.502 requires "shall be given in the manner provided in MCR 2.501(C) for notice of trial." MCR 2.502(A)(3). MCR 2.501(C) specifies that notice may be provided orally if the party is before the court and only requires a 28 days notice period, both of which provisions were amply satisfied here.

> FN2. And, as explained above, notwithstanding the trial court's initiative, plaintiff still took no steps to lift the stay and advance the case for 11 months.

**\*2** We conclude that dismissal of this action for lack of progress was warranted because plaintiff made no showing that progress was being made. MCR 2.502(A)(1). Instead, the trial court correctly determined that:

> So-and from my perspective, there has been a complete and total failure of the plaintiff to make any effort to prosecute the case since the Fish application was denied. Plaintiff knew all along and I told him all along that hey, we're going to see what happens on the Fish case and then it's going to be your responsibility to put the ball in play. You never did. You just let it sit on my docket and were perfectly happy to do that.

In light of the facts and circumstances surrounding the lower court's decision in this regard, we do not find an abuse of discretion.

Further, even if the lower court had erred in dismissing a plaintiff's action for lack of progress, it was properly subject to dismissal on the merits. In *A & M I,* a panel of our Court determined that plaintiff failed to make an appropriate showing that the persons within the proposed class suffered "actual damages" under the Michigan Anti-Trust Reform Act, MCL 445.778(2) ("MARA"). *A & M I, supra* at 635-642.FN3 Upon remand, plaintiff attempted to avoid the "actual damages" requirement of the MARA by seeking to amend its complaint to allege an unjust enrichment theory of recovery. However, we agree with defendant that an unjust enrichment claim is not viable under the facts of this case.

> FN3. Although plaintiff criticizes *A & M I,* we conclude that it properly determined that MARA's requirement that even "indirect purchasers" like plaintiff must show "actual damages" means that a "skeptical" approach should be followed here in Michigan. See *A & M I, supra* at 635. In light of that conclusion, *A & M I* is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2008 WL 540883 (Mich.App.)
**(Cite as: 2008 WL 540883 (Mich.App.))**

binding upon us in this regard. MCR 7.215(J). Further, as this case does not involve any important claim of constitutional rights such as in *Locricchio v. Evening News Ass'n of MI,* 438 Mich. 84, 476 N.W.2d 112 (1991), *A & M I* also constitutes the binding law of the case.

In Michigan,[FN4] because the unjust enrichment doctrine relies upon the fiction of a quasi-contract which "vitiates normal contract principles," our courts employ the doctrine "with caution ." *Kammer Asphalt Paving Co. v. East China Twp. Schools,* 443 Mich. 176, 185-186, 504 N.W.2d 635 (1993). Ordinarily, the doctrine is employed in cases where a benefit is received by the defendant from the plaintiff, see, e.g., *Bell Isle Grill Corp. v. Detroit,* 256 Mich.App. 463, 478, 666 N.W.2d 271 (2003), and there was no direct receipt of any benefit by defendant here from the persons seeking class certification. Plaintiff relies on a passing reference in *Kammer, supra* at 187, 504 N.W.2d 635, that "plaintiff indirectly provided defendant a benefit." However, the facts of that case clearly show that the defendant and the plaintiff were in contact with one another during the course of plaintiff's paving activities at athletic facilities owned by the defendant, and the defendant certainly benefited directly from plaintiff's work on those facilities. *Id.* at 179, 504 N.W.2d 635. Plaintiff here can point to no similar direct contact between Microsoft and the indirect purchasers in the class they seek to have certified. Nor can they show that Microsoft received any direct payment or other benefit from those purchasers. We conclude that the unjust enrichment doctrine does not apply under the facts alleged by plaintiff here. Thus, plaintiff's attempt to amend its complaint in this fashion was futile, and the motion to make the amendment could properly have been denied on that basis. *PT Today, Inc. v. Comm'r of Office of Financial and Insur. Services,* 270 Mich.App. 110, 142-143, 715 N.W.2d 398 (2006).

> FN4. Plaintiff relies on foreign case law to support its unjust enrichment theory but this cause of action is a matter of state law and we are compelled to follow Michigan authorities.

*3 Plaintiff also tried, following remand, to comply with *A & M I's* direction regarding the proof needed on the "actual damages" requirement, by submitting a new affidavit from its expert Dr. Leffler ("2003 affidavit").[FN5] In *A & M I,* the panel extensively reviewed previous affidavits submitted by Dr. Leffler and concluded that the statistical analyses and economic theories upon which they were based could not suffice to establish "actual damages" as required by the statute with respect to the indirect purchasers constituting the plaintiff class seeking certification here. *A & M I, supra* at 637-642. We have reviewed the 2003 affidavit and conclude, once again, that it does not establish that plaintiff will be able to show "actual damages" with proofs common to all the plaintiffs within the class and with the degree of specificity and rigor required under the "skeptical" approach mandated by MARA. *Id.* at 635, 715 N.W.2d 398.

> FN5. Plaintiff's amended complaint also sought to limit the class, purportedly to aid Dr. Leffler's analysis. We conclude below that the 2003 affidavit, like its predecessors, was lacking under *A & M I.* Similarly, the related attempt to limit the class, which plaintiff does not suggest had any other import, is unavailing.

*A & M I* noted that the prior Leffler affidavits were not based on "regression analyses [that] might be used to calculate the rate at which Microsoft's direct purchasers passed on the overcharge to indirect purchasers." *Id.* at 639, 715 N.W.2d 398. In an apparent response, the 2003 affidavit describes the results of five regression analyses performed after remand. However, Dr. Leffler quite honestly admitted in that affidavit that the data that he was working with did not account for all relevant variables and that, therefore, his results were only illustrative rather than definitive. His final, summary statement

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in N.W.2d, 2008 WL 540883 (Mich.App.)
**(Cite as: 2008 WL 540883 (Mich.App.))**

regarding his analysis claimed only that it suggested that "there is a near full pass on" of Microsoft's overcharges to indirect purchasers. And he acknowledged that even that somewhat tentative conclusion would not apply in the subset of transactions, the extent of which he suggested no way of measuring, where final sales to users were made on a "loss leader," below cost basis. Thus, while Dr. Leffler's 2003 affidavit undoubtedly was markedly more convincing than the earlier affidavits, it still only evidenced a way to "estimate damages for the class" and, thus, again "failed to bridge the gap between economic theory and the reality of economic damages." Id. at 639-640, 715 N.W.2d 398.

In sum, neither the amended complaint that plaintiff sought to file nor the new Leffler affidavit substantially negated the reasons upon which the *A & M I* panel determined that this matter could not proceed as a class action. Plaintiff took no action to pursue its claim as an individual rather than as a class representative, even though the *A & M I* panel clearly suggested that was a better approach. Id. at 642, 715 N.W.2d 398. For those reasons, the trial court could properly have dismissed this action even without concluding that plaintiff had failed to appropriately pursue it in a timely fashion.

We affirm.

Mich.App.,2008.
A & M Supply Co. v. Microsoft Corp.
Not Reported in N.W.2d, 2008 WL 540883 (Mich.App.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.