# EXHIBIT O



Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.
BC's HEATING & AIR AND SHEET METAL
WORKS, INC. and Clark Lowery, Plaintiffs
v.
VERMEER MANUFACTURING COMPANY, et
al., Defendants.

Civil Action No. 2:11–CV–136–KS–MTP.
Feb. 27, 2012.

Chadwick Lester Shook, Shook Law Firm & Dispute Resolution Services, PLLC, Hattiesburg, MS, for Plaintiffs.

Mark D. Jicka, Watkins & Eager, Jeffrey M. Williams, Jeffrey P. Hubbard, Hubbard, Mitchell, Williams & Strain, PLLC, Jackson, MS, Alethea Marie Huyser, David Nathan Lutz, Bowman and Brooke, LLP, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER
KEITH STARRETT, District Judge.

**\*1** For the reasons stated below, the Court **grants in part and denies in part** the Motions to Dismiss [34, 47] filed by Defendants Vermeer Manufacturing Company and Vermeer Midsouth, Inc.

### I. BACKGROUND

Plaintiff BC's Heating & Air and Sheet Metal Works, Inc. ("BC's") purchased a drill from Defendants. Plaintiff Clark Lowery is the president and owner of BC's. Plaintiffs allege that Defendants made certain representations about the capabilities and performance of the drill prior to the purchase, and that the drill did not perform in the manner that Defendants represented it would, causing Plaintiffs to suffer damages. Plaintiffs brought a variety of claims, and Defendants filed Motions to Dismiss.

### II. DISCUSSION
#### A. Timeliness of Defendants' Motions to Dismiss

Plaintiffs initially argue that Defendants' motions to dismiss are untimely because they were filed after Defendants' responsive pleadings. Rule 12(b) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." FED.R.CIV.P. 12(b). A defendant may raise certain defenses by motion "before pleading if a responsive pleading is allowed." *Id.* Therefore, generally, "a rule 12(b) motion must be filed before responsive pleadings," and a 12(b) motion filed after a responsive pleading is untimely. *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999).

However, a defendant may raise a plaintiff's failure to state a claim for which relief may be granted in a motion for judgment on the pleadings pursuant to Rule 12(c). FED.R.CIV.P. 12(h)(2); *see also Stearman v. Comm'r,* 436 F.3d 533, 536 n. 6 (5th Cir.2006).[FN1] Accordingly, it is appropriate for the Court to construe a Rule 12(b)(6) motion filed after the filing of a responsive pleading as a motion for judgment on the pleadings under Rule 12(c). *Jones,* 188 F.3d at 324. Therefore, the Court rejects Plaintiffs' argument that Defendants' motions to dismiss are untimely.

> FN1. The Court further notes that Defendants raised Plaintiffs' alleged failure to state a claim in their responsive pleadings. Accordingly, Defendants have not waived the defense. *See* FED.R.CIV.P. 12(h)(2)(A).

#### B. Standard of Review

Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED.R.CIV.P. 12(c). The Court evaluates a "motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

claim." *Gentilello v. Rege,* 627 F.3d 540, 543–44 (5th Cir.2010). Therefore, to survive the motion, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State,* 624 F.3d 201, 210 (5th Cir.2010) (punctuation omitted). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). "The complaint need not contain detailed factual allegations, but must state more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.,* 615 F.3d 412, 417 (punctuation omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hershey v. Energy Transfer Partners, L.P.,* 610 F.3d 239, 245 (5th Cir.2010).

**\*2** The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock Co. LLC,* 624 F.3d at 210. However, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Ashcroft v.. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A plaintiff must provide more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements, which do not permit the court to infer more than the mere possibility of misconduct." *Hershey,* 610 F.3d at 246 (punctuation omitted).

### C. Fraud/Misrepresentation

Defendants argue that Plaintiffs failed to plead their fraud and misrepresentation claims with sufficient particularity. Rule 9(b) provides a "heightened pleading standard" for claims of fraud. *City of Clinton v. Pilgrim's Pride Corp.,* 632 F.3d 148, 153 (5th Cir.2010). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED.R.CIV.P. 9(b). The rule "requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 266 (5th Cir.2010) (punctuation omitted). Phrased differently, "[t]o plead fraud adequately, the plaintiff must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent ." *Sullivan v. Leor Energy LLC,* 600 F.3d 542, 551 (5th Cir.2010) ; *see also Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.,* 565 F.3d 200, 206–07 (5th Cir.2009) (5th Circuit interprets Rule 9(b) "strictly," requiring specific allegations as to each element of fraud).

In Mississippi, a plaintiff must prove nine elements to make out a claim of fraud and intentional misrepresentation:

(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Trim v. Trim,* 33 So.3d 471, 478 (Miss.2010). In the present case, Plaintiffs failed to identify the specific person(s) who made the representations at issue. Plaintiff also failed to specify when or where the statements were made. Accordingly, the Court grants Defendants' Motions to Dismiss as to Plaintiffs' claims for fraud and misrepresentation.

### D. Tortious Interference with Business Relations

"Tortious interference with business relations ... occurs when one unlawfully diverts prospective customers away from another's business." *McBride Consulting Serv., LLC v. Waste Mgmt. of Miss.,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

*Inc.,* 949 So.2d 52, 55 (Miss.2006). The Mississippi Supreme Court has noted:

**\*3** There are four elements necessary to prove a claim of tortious interference with a business relationship: (1) The acts were intentional and willful; (2) The acts were calculated to cause damages to the plaintiffs in their lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) Actual damage and loss resulted.

*Biglane v. Under the Hill Corp.,* 949 So.2d 9, 15–16 (Miss.2007). "Additionally, in the case of tortious interference with business relations, in order to establish a prima facie case for damages, the plaintiff must prove (1) that his business experienced a loss, and (2) that the defendant was the cause of that loss." *McBride Consulting Serv., LLC,* 949 So.2d at 56.

Tortious interference with business relations involves the *intentional* diversion of customers from a plaintiff's business. *Biglane,* 949 So.2d at 15 . Plaintiffs did not allege that Defendants intentionally sold them a defective drill in a calculated effort to damage their business. Rather, Plaintiffs alleged that Defendants sold them a drill that failed to perform as promised, and that Plaintiffs' business suffered as a result of that failure. These allegations do not reflect the sort of intentional, calculated effort—or malice—that is required for a claim of tortious interference with business relations. Accordingly, the Court grants Defendants' Motions to Dismiss with respect to Plaintiffs' claims for tortious interference with business relations.

### E. Breach of Fiduciary Duty
The Mississippi Supreme Court has held:

A fiduciary duty must exist before a breach of the duty can occur. "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed.

*Callicutt v. Prof'l Servs. of Potts Camp, Inc.,* 974 So.2d 216, 222 (Miss.2007) (punctuation and citations omitted). Every contractual relationship does not create a fiduciary relationship, but a contract may create a fiduciary relationship under the following circumstances:
(1) the activities of the parties go beyond their operating on their own behalf, and the activities are for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

*Robley v. Blue Cross/Blue Shield,* 935 So.2d 990, 994–95 (Miss .2006) (punctuation and citations omitted). To be clear, a contract does not create a fiduciary relationship unless the "contract relationship creates a justifiable special trust and confidence in the parties so that the first party relaxes the care and vigilance normally exercised in entering into a transaction with a stranger." *Id.* at 995. Accordingly, a fiduciary relationship is not created by an arm's-length business transaction. *Id.*

**\*4** Plaintiffs offered two primary reasons why they believe a fiduciary relationship was created. First, they alleged that they relied on Defendants' representations as to the performance of the drill. Second, they alleged that Defendants shared an interest in their success, as it would allow Plaintiffs to purchase additional equipment in the future. However, Plaintiffs "were not under the 'dominion and control' of [Defendants] in any sense more than is common" in commercial transactions. *Ward v. Life Investors Ins. Co. of Am.,* 383 F.Supp.2d 882, 887 (S.D.Miss.2005) (although the relationship between an insurance agent and an insurer bore some similarities to a fiduciary relationship, there

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

was no "dominion and control" other than that typical to such contractual relationships). If Plaintiffs' allegations were sufficient to support a claim for breach of fiduciary duty, then a fiduciary relationship could plausibly exist in *every* arm's-length commercial transaction. "Although one does not typically enter into a contract with another person unless he or she has a degree of trust or confidence in that person, without more, such a transaction amounts to merely a business relationship and not a fiduciary relationship." Robley, 935 So.2d at 995.

For example, "there is no presumption of a fiduciary relationship between a debtor and a creditor," despite the debtor's reliance upon the creditor for financing and the creditor's interest in the debtor being able to repay the debt. See Davis v. GMAC, 406 F.Supp.2d 698, 701 (S.D.Miss.2005). Also, the Mississippi Supreme Court "has never held that the relationship between a mortgagor and a mortgagee is a fiduciary one," despite the mortgagor's reliance upon the mortgagee for financing and the mortgagee's interest in profiting from the interest on the loan. See Hopewell Enters. v. Trustmark Nat'l Bank, 680 So.2d 812, 816 (Miss.1996). Finally, the relationship between a bank and depositor is not a fiduciary one, despite the depositor's reliance upon the bank for the security of his funds and the bank's interest in using those funds in other financial endeavors. See Holland v. Peoples Bank & Trust Co., 3 So.3d 94, 102 (Miss.2008).

In summary, Plaintiffs' factual allegations do not describe a fiduciary relationship; they describe an arm's-length commercial transaction. If the Court agreed with Plaintiffs' argument on this point, a fiduciary relationship could plausibly exist every time any consumer purchased a product—and that is not the intention of Mississippi law. The Court grants Defendants' Motions to Dismiss with respect to Plaintiffs' claims for breach of fiduciary duty.

### F. Mississippi Unfair Trade Practices Act

Defendants argued that Plaintiffs' claims under the Mississippi Unfair Trade Practices Act ("MUTPA") [FN2] should be dismissed because Plaintiffs failed to comply with the statute's requirement that plaintiffs attempt to informally resolve their claims before filing suit. Indeed, the MUTPA provides: "In an private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." MISS.CODE ANN. § 75–24–15(2); *see also* Montalto v. Viacom Int'l, Inc., 545 F.Supp.2d 556, 561 (S.D.Miss.2008) (MUTPA was barred because plaintiff failed to seek informal resolution as required by the statute); Cole v. Chevron USA, Inc., 554 F.Supp.2d 655, 667–68 (S.D.Miss.2007) (plaintiffs' MUTPA claim was barred because they did not allege an attempt at informal resolution as required by statute); Dominquez v. Palmer, 970 So.2d 737, 743 (Miss.Ct.App.2007) (plaintiff's MUTPA claim was barred because she did not attempt to resolve it through informal resolution as required by the statute).

FN2. MISS.CODE ANN. § 75–24–1, *et seq.*

**\*5** Plaintiffs argue that their claim is not barred because—based upon their own information and belief—no informal dispute resolution program exists at the Consumer Protection Division of the Mississippi Attorney General's office. Accordingly, Plaintiffs contend that it was impossible for them to comply with the statute. The Court is not convinced that the alleged impossibility of Plaintiffs' compliance with the MUTPA is relevant to this issue. Regardless of whether it was possible for Plaintiffs to attempt to informally resolve their claims, the statute requires them to do so before they may bring a private cause of action.

In any case, this Court has previously noted that the MUTPA "does not require that the plaintiffs attempt to resolve their claims through the Attorney General's Office of Dispute Resolution or even that the Attorney General administer the informal dispute settlement program." Cole, 554 F.Supp.2d at 668. Rather, the statute merely re-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

quires that "the plaintiffs attempt to resolve their claims through a program approved by the Attorney General." *Id.* Accordingly, Plaintiffs' argument is inapposite. As Plaintiffs failed to allege that they attempted resolution of their claim through an informal dispute resolution program approved by the Mississippi Attorney General's office, the Court grants Defendants' Motions to Dismiss as to Plaintiffs' claims under the MUTPA.

### G. Lanham Act

The Lanham Act created a private remedy for the violation of its prohibition against false advertising. *See* 15 U.S.C. § 1125(a). Although the statute "should be broadly construed," it is nonetheless "subject to the limits of prudential standing." *Harold H. Huggins Realty, Inc. v. FNC, Inc.,* 634 F.3d 787, 796 (5th Cir.2011). Accordingly, the Fifth Circuit has adopted a five-factor test to determine whether a plaintiff has prudential standing to sue under the Lanham Act:

(1) the nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws?; (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages.

*Id.* at 796–97.

Under the first factor of the test, "only persons whom Congress intended to protect by passing the Lanham Act have standing to sue under it." *Id.* at 796. The Lanham Act was not intended to "protect consumers generally." *Seven–Up v. Coca–Cola Co.,* 86 F.3d 1379, 1383 (5th Cir.1996). "[T]he primarily pro-competitive purpose" of the Act's private remedy means that "suit may be brought only by a commercial plaintiff who can prove that its interests have been harmed by a competitor's false advertising." *Id.* "The reason consumers do not have standing under the Lanham Act is that the injuries consumers suffer as a result of anti-competitive behavior—being forced to pay a higher price for a good, or being duped into purchasing a lower-quality service—are not the kids of injuries that the Lanham Act was intended to redress ." *Harold H. Huggins Realty, Inc.,* 634 F.3d at 798.

**\*6** In the present case, Plaintiffs allege that they relied upon Defendants' false representations in purchasing a drill which failed to perform as represented. Defendants' alleged conduct was not "anti-competitive," as Plaintiffs were not Defendants' competitor. Plaintiffs were a consumer of Defendants' goods, and their injury is not the sort which Congress intended the Lanham Act to redress. Indeed, the Fifth Circuit's language in *Huggins Realty* —quoted above—appears to be determinative on this point. *Id.* Accordingly, the Court grants Defendants' Motions to Dismiss with respect to Plaintiffs' Lanham Act claims.

### H. Civil Conspiracy

"Under Mississippi law, a conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Gallagher Bassett Servs. v. Jeffcoat,* 887 So.2d 777, 786 (Miss.2004). The elements of a civil conspiracy claim are: "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." *Id.* The third element "requires an agreement between the co-conspirators." *Id.*

Plaintiffs alleged that two or more parties completed one or more unlawful acts insofar as Plaintiffs alleged that both Defendants committed several torts. Plaintiffs also alleged that they suffered damages as a result of these acts. However, Plaintiffs have not made any specific factual allegations concerning a meeting of the minds or agreement between Defendants. Rather, Plaintiffs merely alleged that Defendants "acted in concert with a meeting of the minds."

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

As noted above, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC,* 624 F.3d at 210. Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Iqbal,* 556 U.S. 662, 129 S.Ct. at 1950. Plaintiffs' allegation concerning Defendants "meeting of the minds" is nothing more than a threadbare recital of the third element cited above. See *Hershey,* 610 F.3d at 246. As Plaintiffs failed to allege any specific facts demonstrating the existence of an agreement or meeting of the minds between Defendants, the Court grants Defendants' motion to dismiss as to Plaintiffs' civil conspiracy claims.

### I. Deceptive Advertising

Mississippi Code Section 97–23–3 is "a criminal statute which provides a civil tort remedy to any party damaged by an untrue, misleading or deceptive advertisement." *Woods v. R.J. Reynolds Tobacco Co.,* 635 F.Supp.2d 530, 535 (S.D.Miss.2009). The statute provides:

Any person who, with intent to sell or in any way dispose of merchandise ... offered by such person, directly or indirectly, to the public for sale or distribution ... makes, publishes, disseminates, circulates or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated or placed before the public within the state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet or letter, or by a label affixed to the merchandise or its container, or in any other way, an advertisement of any sort regarding merchandise, ... which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading, ... may be held civilly responsible in tort for damages to persons or property proximately resulting from a violation of this section.

**\*7** MISS.CODE ANN. § 97–23–3. To succeed on a deceptive advertising claim, a plaintiff must, at a minimum, prove the following elements: "(1) that she saw or heard an untrue, deceptive or misleading advertisement; and (2) that the advertisement proximately caused her injuries." *Id.*

With respect to Defendants' advertising, Plaintiffs merely alleged that Defendants provided them with "literature and/or video" which contained "assertions and representations ... that are untrue, deceptive, and misleading." These allegations are not specific enough to survive a motion to dismiss; such threadbare, conclusory allegations are insufficient to state a claim for relief which may be granted. *Hershey,* 610 F.3d at 246; *Great Lakes Dredge & Dock Co., LLC,* 624 F.3d at 210. Therefore, the Court grants Defendants' Motion to Dismiss as to Plaintiffs' deceptive advertising claims.

### J. Breach of Duty of Good Faith and Fair Dealing

"All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Limbert v. Miss. Univ. for Women Alumnae Ass'n,* 998 So.2d 993, 998 (Miss.2008). Good faith is "the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party," and bad faith is "some conscious wrongdoing because of dishonest purpose or moral obliquity." *Id.* To prove bad faith, a party must demonstrate "more than bad judgment or negligence." *Id.*

According to the factual allegations of the Complaint, Plaintiff Lowery did not purchase the drill at issue in this case. BC's purchased it. "Under Mississippi law, a corporation is an entity separate and distinct from its stockholders." *Bruno v. Southeastern Servs., Inc.,* 385 So.2d 620, 621 (Miss.1980). Accordingly, this Court has previously noted:

In Mississippi, an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

merely derivative ... even though the complaining stockholder owns all or substantially all of the stock of the corporation.... An exception to this rule arises where the stockholder seeks damages for the violation of a duty owed directly to him, but the exception comes into play only where the wrong itself amounts to a breach of the duty owed to the stockholder personally. The exception has no application merely because the acts complained of resulted in damage both to the corporation and to the stockholder.

*Jordan v. United States Fid. & Guar. Co.,* 843 F.Supp. 164, 175 (S.D.Miss.1993) (punctuation and internal citations omitted); *see also Mathis v. Era Franchise Sys.,* 25 So.3d 298, 301 (Miss.2009).[FN3]

> FN3. An "exception to this rule arises where the stockholder seeks damages for the violation of a duty owed directly to him, but the exception comes into play only where the wrong itself amounts to a breach of the duty owed to the stockholder personally." *Id.* As the Court shall presently explain, Plaintiff Lowery was not a party to the contract underlying Plaintiffs' claim for breach of fiduciary duty. He did not purchase the drill; BC's did. Accordingly, Defendants owed him no duty of good faith and fair dealing with respect to the underlying transaction, and this exception is inapplicable.

There can be no breach of the duty of good faith and fair dealing if there is no breach of contract. *Frye v. S. Farm Bureau Cas. Ins. Co.,* 915 So.2d 486, 492 (Miss.Ct.App.2005). According to Plaintiff's factual allegations, Plaintiff Lowery was not a party to the contract at issue in this case. BC's purchased the drill—not Plaintiff Lowery. Therefore, as Plaintiff Lowery was not a party to the contract at issue, Defendants owed him no duty of good faith and fair dealing. Furthermore, he may not assert a claim for the breach of a duty owed to BC's. Accordingly, the Court grants Defendants' Motions to Dismiss with respect to Plaintiff Lowery's claim for breach of the duty of good faith and fair dealing.

*8 Defendants further argue that Plaintiffs failed to state a claim for breach of the duty of good faith and fair dealing because they only complain of representations made prior to the execution of the contract. However, Plaintiffs also alleged that Defendants failed to provide adequate repair services after the drill was purchased, and that Defendants failed to provide operation and maintenance manuals/guides. Therefore, Plaintiffs' factual allegations were not limited to pre-contract activities, as Defendants argue. Accordingly, the Court denies Defendants' Motions to Dismiss with respect to Plaintiff BC's claim for breach of the duty of good faith and fair dealing.

***K. Breach of Implied Warranty of Fitness for a Particular Purpose***

A plaintiff must prove the following elements to recover on a claim for the breach of an implied warranty of fitness for a particular purpose: "(1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods; and (3) the goods were unfit for the particular purpose." *Watson Quality Ford, Inc. v. Casanova,* 999 So.2d 830, 835 (Miss.2008). Defendant argues that BC's purchased the drill for its ordinary purpose, drilling. Therefore, Defendants contend that Plaintiffs failed to state a claim for breach of an implied warranty of fitness for a particular purpose. Indeed, "no claim for breach of the implied warranty of fitness for a particular purpose will lie when a product is to be used for its ordinary purpose." *Id.*

Plaintiffs specifically alleged in their Complaint that Defendants warranted the drill "was fit and suitable for the ordinary purpose for which it was sold, more specifically vertical drilling in BC's geographic service area at the performance rates represented by" Defendants. In briefing, Plaintiffs attempt to characterize this as a particular pur-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

pose—despite the fact that they specifically alleged it was an "ordinary" one. The Court does not intend to create a rule that plaintiffs must avoid certain "magic words" to state a plausible claim for the breach of an implied warranty of fitness for a particular purpose. Nonetheless, Plaintiffs specifically alleged in their Complaint that the purpose for which BC's purchased the drill was its "ordinary purpose." Accordingly, the Court grants Defendants' Motions to Dismiss as to Plaintiffs' claims for breach of an implied warranty of fitness for a particular purpose.

### L. Breach of Implied Warranty of Merchantability

Defendant argues that Plaintiff Lowery failed to state a claim for Defendants' alleged breach of an implied warranty of merchantability because Plaintiffs specifically alleged that BC's purchased the drill, rather than Plaintiff Lowery. Privity of contract is not required to show a breach of the implied warranty of merchantability. MISS.CODE ANN § 11–7–20; *Casanova,* 999 So.2d at 834; *Hargett v. Int'l Corp.,* 508 So.2d 663, 665 (Miss.1987). Accordingly, the Court denies Defendants' Motions to Dismiss with respect to Plaintiff Lowery's claim for breach of an implied warranty of merchantability.[FN4]

> [FN4]. BC's also asserted a claim for the breach of an implied warranty of merchantability, but Defendants' motions did not address BC's claim.

### M. Breach of Express Warranty

**\*9** Defendants argue that the Court should dismiss Plaintiff Lowery's claim for breach of an express warranty because he did not purchase the drill. As noted above, "[i]n all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty ... privity shall not be a requirement to maintain said action." MISS.CODE ANN. § 11–7–20; *see also Tellus Operating Group, L.L.C. v. R. & D. Pipe Co.,* 377 F.Supp.2d 604, 611 (S.D.Miss.2005). To the extent Defendants argue that they made no express warranty to Plaintiff Lowery because he was not a party to the underlying transaction, that is a factual dispute which the Court may not resolve at this juncture. Accordingly, the Court denies Defendants' Motions to Dismiss with respect to Plaintiff Lowery's claim for breach of an express warranty.[FN5]

> [FN5]. BC's also asserted a claim for the breach of an express warranty, but Defendants' motion did not address BC's claim.

### N. Negligence and Gross Negligence

Defendants argue that Plaintiffs' negligence claims should be dismissed under the economic loss doctrine. Under this doctrine, "a plaintiff who suffers only economic loss as the result of a defective product may have no recovery in strict liability or negligence, though such damage may be pursued under a breach of warranty theory of liability." *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,* 736 So.2d 384, 387 (Miss.Ct.App.1999). In this context, "economic loss" refers to "damages caused by the product that adversely affect the product's monetary value." *Id.* at 388. The Fifth Circuit, however, has explicitly declined to apply this doctrine "outside the realm of products liability" to "tort case[s] involving a duty shaped by contract." *Lyndon Prop. Ins. Co. v. Duke Levy & Assocs. LLC,* 475 F.3d 268, 274 (5th Cir.2007).

In the present case, Plaintiffs asserted damages beyond mere adverse effects to the drill's monetary value. Accordingly, the economic loss doctrine does not apply. *State Farm,* 736 So.2d at 387–88 (economic loss is damages caused by the product that adversely affect the product's monetary value). Furthermore, Plaintiffs have asserted multiple theories of liability, and it is not yet clear which one they intend to pursue. Defendants urge that this is nothing more than a simple contracts case. However, depending on the facts that come out during discovery, this case could be a straightforward contract case, a general tort case, a warranty case, or a product liability case.

Although the Court does not wish to encourage

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

"shotgun" pleading of the sort employed by Plaintiffs, it is not the Court's place to dictate Plaintiffs' theory of liability—at least not at this early juncture. When evidence is placed before the Court, it may be appropriate to narrow the focus of the case. At this point, though, the Court declines to apply the economic loss doctrine and effectively choose Plaintiffs' theory of liability for them. Accordingly, the Court denies Defendants' Motions to Dismiss as to Plaintiffs' claims of negligence and gross negligence.

### O. Intentional and Negligent Infliction of Emotional Distress

**\*10** Defendants argue that Plaintiff Lowery has no viable claim for the negligent or intentional infliction of emotional distress because their actions—as alleged by Plaintiffs—were directed at BC's, rather than Lowery. Defendants further argue that the conduct alleged in the Complaint is not outrageous enough to support a claim for intentional infliction of emotional distress, and that emotional damages were not a reasonably foreseeable result of the conduct at issue.

Defendants' first argument is another attempt to narrow the focus of this case to a simple contract matter between them and BC's. However, the Court has denied Defendants' Motions to Dismiss as to several claims asserted by Plaintiff Lowery. As stated above, the facts—as alleged by Plaintiffs—implicate several theories of liability, and it would be inappropriate for the Court to narrow the focus of the case at this stage of the case.

As for Defendants' second argument, they failed to direct the Court to any Mississippi precedents addressing the specific conduct alleged in Plaintiffs' Complaint. Defendants argue that emotional distress is not a reasonably foreseeable result of the sale of a drill, and that the conduct alleged in the Complaint is not sufficiently outrageous to give rise to emotional damages. However, the cases cited by Defendants do not address the specific type of conduct alleged in the Complaint. It is Defendants' responsibility to direct the Court to applicable Mississippi authority in support of their argument. In the absence of that authority, the Court denies Defendants' Motions to Dismiss as to Plaintiff Lowery's claims for negligent and intentional infliction of emotional distress.

### P. Plaintiff Lowery's Claims

Finally, Defendants argue that all of Plaintiff Lowery's claims should be dismissed because he did not purchase the drill at issue in this case. Defendants contend that Plaintiff Lowery's claims are an attempt to disregard the corporate veil. "Under Mississippi law, a corporation is an entity separate and distinct from its stockholders." *Bruno,* 385 So.2d at 621; *see also Burroughs v. McDaniel,* 886 So.2d 748, 751 (Miss.Ct.App.2004). However, a stockholder may seek redress for an injury to a corporation if he "seeks damages for the violation of a duty owed directly to him, but the exception comes into play only where the wrong itself amounts to a breach of the duty owed to the stockholder personally. The exception has no application merely because the acts complained of resulted in damage both to the corporation and to the stockholder ." *Jordan,* 843 F.Supp. at 175 (punctuation and internal citations omitted).

In the present case, Plaintiff Lowery asserted numerous claims of his own, premised upon alleged duties owed to him individually. The Court has already dismissed many of his claims, but the following ones remain: breach of an express warranty, breach of implied warranty of merchantability, intentional and negligent infliction of emotional distress, and negligence/gross negligence. In the Court's opinion, Defendant has not adequately demonstrated in briefing that the absence of privity of contract is dispositive as to these claims. Plaintiff Lowery apparently contends that Defendants owed him certain duties that were not created by contract. Until those claims are clarified and Plaintiff Lowery's theory of liability becomes clear, it would be inappropriate to dismiss them because he was not a party to the underlying contract, as Defendants urge.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 642304 (S.D.Miss.)
**(Cite as: 2012 WL 642304 (S.D.Miss.))**

### III. CONCLUSION

***11** For the reasons stated above, the Court **grants in part and denies in part** Defendants' Motions to Dismiss [34, 47]. The motions are granted as to the following claims:

- both Plaintiffs' claims for fraud and misrepresentation (Count IV);

- both Plaintiffs' claims for tortious interference with business relations (Count XI);

- both Plaintiffs' claims for breach of fiduciary duty (Count XII);

- both Plaintiffs' claims for violation of the Mississippi Unfair Trade Practices Act (Count IX);

- both Plaintiffs' claims for violation of the Lanham Act (Count X);

- both Plaintiffs' claims for civil conspiracy (Count XVIII);

- both Plaintiffs' claims for deceptive advertising (Count VIII);

- Plaintiff Lowery's claim for breach of the duty of good faith and fair dealing (Count XIII); and

- both Plaintiffs' claims for breach of implied warranty of fitness for a particular purpose (Count VII).

However, the Court **denies** the motions as to the following claims:

- Plaintiff BC's Heating & Air's claim for breach of the duty of good faith and fair dealing (Count XIII);

- Plaintiff Lowery's claim for breach of implied warranty of merchantability (Count VI);

- Plaintiff Lowery's claim for breach of express warranty (Count V);

- both Plaintiffs' claims for negligence/gross negligence (Counts XIX and XX); and

- Plaintiff Lowery's claims for negligent and intentional infliction of emotional distress (Counts XVI and XVII).

Finally, Plaintiffs requested preliminary injunctions against both Defendants to preserve certain evidence. Defendants represented in briefing that the parties agreed on a plan to preserve the evidence. Plaintiffs did not address the issue in their briefing. Accordingly, the Court assumes that the issue is resolved, and Counts I and II of the Complaint are **moot.**

SO ORDERED AND ADJUDGED.

S.D.Miss.,2012.
BC's Heating & Air and Sheet Metal Works, Inc. v. Vermeer Mfg. Co.
Slip Copy, 2012 WL 642304 (S.D.Miss.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.