# EXHIBIT Q



Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
State of CALIFORNIA, et al., Plaintiffs,
v.
INFINEON TECHNOLOGIES AG, et al., Defendants.

No. C 06-4333 PJH.
April 15, 2008.

Charles M. Kagay, Spiegel Liao & Kagay, LLP, Kathleen E. Foote, Emilio Eugene Varanini, IV, Sangeetha M. Raghunathan, Office of the Attorney General, San Francisco, CA, Nancy M. Bonnell, Arizona Attorney General Antitrust, Phoenix, AZ, Bradford Justus Phelps, Office of the Attorney General of Arkansas, Little Rock, AR, Emilian Bucataru, Lizebeth Ann Leeds, Patricia A. Conners, Office of the Attorney General, Tallahassee, FL, Rodney I. Kimura, Department of the Attorney General, Honolulu, HI, Brett Talmage Delange, Office of the Attorney General, Boise, ID, Blake Lee Harrop, Office of the Attorney General, Chicago, IL, Jane Bishop Johnson, Louisiana Department of Justice, Baton Rouge, LA, John Robert Tennis, Attorney General, Antitrust Division, Baltimore, MD, D. J. Pascoe, Michigan Department of Attorney General, Lansing, MI, Kristen Marie Olsen, Office of the Attorney General, St. Paul, MN, Bridgette W. Wiggins, Sondra S. McLemore, Mississippi Attorney General's Office, Jackson, MS, Deyonna D. Young, Albuquerque, NM, Todd A. Sattler, North Dakota Office of Attorney General, Bismarck, ND, Thomas A. Bates, Oklahoma Attorney General's Office, Oaklahoma City, OK, Tim David Nord, Oregon Department of Justice, Salem, OR, Alexis Leslie Barbieri, James A. Donahue, III, Jennifer Jane Kirk, Pennsylvania Office of the Attorney General, Harrisburg, PA, C. Havird Jones, Jr., South Carolina Attorney General's Office, Columbia, SC, Victor J. Domen, Jr., Nashville, TN,

James W. Palmer, Ronald J. Ockey, Office of the Attorney General of Utah, Salt Lake City, UT, Sarah Oxenham Allen, Office of the Atty. General, Richmond, VA, Brady R. Johnson, Attorney General of Washington, Seattle, WA, Douglas Lee Davis, Attorney General, Charleston, WV, Eric J. Wilson, Gwendolyn J. Cooley, Wisconsin Department of Justice, Madison, WI, Christina Moylan, Maine Office of the Attorney General, Augusta, ME, Edmund F. Murray, Jr., Rhode Island Department of Attorney General, Providence, RI, K. D. Sturgis, Western Division, Raleigh, NC, Maryellen Buxton Mynear, Kentucky Attorney General, Frankfort, KY, for Plaintiffs.

The Commonwealth of the Northern Mariana Islands by its Attorney General Matthew T. Gregory, pro se.

Julian Brew, Aton Arbisser, Joshua Stewart Stambaugh, Kaye Scholler LLP, Peter Bruce Nemerovski, Timothy Michael Martin, Kenneth Ryan O'Rourke, Steven H. Bergman, O'Melveny & Myers LLP, Los Angeles, CA, Joel Steven Sanders, George Charles Nierlich, III, Joshua David Hess, Rebecca Justice Lazarus, Gibson, Dunn & Crutcher LLP, Emilio Eugene Varanini, IV, State Attorney General's Office, David C. Brownstein, Heller Ehrman White & McAuliffe LLP, Howard Mark Ullman, Orrick Herrington & Sutcliffe LLP, Jonathan Edward Swartz, Thelen Reid Brown Raysman & Steiner LLP, Peter Nels Larson, Daniel Tadeusz Dobrygowski, Jones Day, San Francisco, CA, Harrison J. Frahn, IV, Simpson Thacher & Bartlett, Palo Alto, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

PHYLLIS J. HAMILTON, District Judge.

**\*1** Defendants' motion to dismiss plaintiffs' complaint came on for hearing before this court on February 27, 2008. Plaintiffs, numerous individual

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

Page 2

states acting through their Attorneys General, and certain named government entities (collectively "plaintiffs" or "plaintiff States"), appeared through their respective counsel, Lizbeth Leeds (FL), Ronald Ockey (UT), Emilio E. Varanini (CA), John Tennis (MD), Victor Domen (TN), and Sondra McLemore (MS). Defendants appeared through their counsel, Steven Bergman, Tim Martin, Joel S. Sanders, Joshua Hess, David C. Brownstein, Jonathan Swartz, and Catherine Lui. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS defendants' motion to dismiss in part and DENIES the motion to dismiss in part, for the reasons stated at the hearing, and as follows.

### BACKGROUND

This action is related to the larger *In re DRAM* litigation currently pending before this court. Plaintiff States generally allege a horizontal price-fixing conspiracy in the U.S. market for dynamic random access memory ("DRAM"), carried out by numerous manufacturer defendants.

Plaintiff States filed their original complaint on July 14, 2006, and a first amended complaint on September 8, 2006. The first amended complaint alleged three causes of action: (1) violation of the Sherman Act § 1; (2) violation of California's Cartwright Act; and (3) violations of various state antitrust and consumer protection laws. *See generally* First Amended Complaint ("FAC"). Each cause of action, however, contained various sub-claims, and sub-groupings of plaintiffs. Generally, however, the claims were asserted by and on behalf of 40 individual states and state government entities, and in various alternative capacities-e.g., proprietary actions, class actions, and/or parens patriae actions alleged by the states' Attorneys General on behalf of varying states' political subdivisions, state agencies, and/or natural persons residing in those states. *See, e.g.,* FAC at ¶¶ 4, 12, 114-15. The first amended complaint also stated claims by both direct and indirect purchasers.

On February 7, 2007, defendants moved to dismiss the second and third causes of action, alleging Cartwright Act violations and violations of state antitrust and consumer protection laws, respectively. Defendants sought dismissal of the former on grounds that standing to sue is generally lacking for non-California persons and entities. Defendants sought dismissal of the latter based on myriad procedural and substantive grounds. The court granted defendants' motion in part, and denied it in part, on August 31, 2007. *See generally* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("August 31, 2007 Order"). With respect to the Cartwright Act claim, the court dismissed all claims on behalf of non-California Attorneys General seeking relief on behalf of non-California residents and government entities. With respect to plaintiffs' third claim for relief, the court dismissed some claims and denied dismissal as to others, based on various procedural and substantive grounds. The court permitted amendment as to some of these claims.

**\*2** On September 28, 2007, plaintiff States duly filed their second amended complaint. They subsequently sought leave, however, to file a third amended complaint, which defendants did not oppose. The court accordingly granted the request and the third amended complaint was filed on November 7, 2007. *See generally* Third Amended Complaint ("TAC").

Defendants once again seek dismissal of certain claims alleged in the TAC. This time around, they limit their arguments to plaintiff States' third claim for relief, and target claims brought pursuant to six different plaintiff States' antitrust and consumer protection laws. Defendants also move to strike certain portions of plaintiffs' requests for relief under various state laws.

### DISCUSSION
A. Legal Standards

1. Motion to Dismiss

In evaluating a motion to dismiss, all allega-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tions of material fact are taken as true and construed in the light most favorable to the nonmoving party. *See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 663 (9th Cir.2000) (citations omitted). In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough to raise his/her right to relief "above the speculative level." *See Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). While the complaint "does not need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. *Twombly,* 127 S.Ct. at 1974.

2. Motion to Strike

A court may strike any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. Proc. 12(f). A motion to strike may be granted where plaintiff has made an improper demand or prayer for relief as a matter of law. *See, e.g ., Bureerong v. Uvawas,* 922 F.Supp. 1450, 1479 n. 34 (C.D.Cal.1996). Notwithstanding, motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice. *See, e.g., Colaprico v. Sun Microsystems,* 758 F.Supp. 1335, 1339 (N.D.Cal.1996).

B. Defendants' Motion to Dismiss

Defendants' motion to dismiss demands resolution of the following issues: (1) whether the *Illinois Brick* doctrine bars Louisiana's and Utah's state antitrust and consumer protection claims; (2) whether Tennessee and New Mexico's parens patriae claims for damages on behalf of natural persons are barred; and (3) whether plaintiffs' claims pursuant to the state antitrust statutes of Maryland and Mississippi are barred for failure to properly allege the requisite intrastate conduct.

1. *Dismissal of Louisiana and Utah Claims under Illinois Brick*

**\*3** Raising a now familiar issue, defendants assert that plaintiff States Louisiana and Utah have alleged claims under their consumer protection and antitrust statutes, respectively, that are barred to the extent they seek damages on behalf of indirect purchasers. This results, say defendants, from the fact that both states follow *Illinois Brick* in explicitly prohibiting indirect purchaser claims. *See, e.g., Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

a. Louisiana

Defendants target plaintiff State Louisiana's claim on behalf of indirect purchasers brought under the state's consumer protection statute, the Louisiana Unfair Trade Practices and Consumer Protection Act ("UTPCPA"). *See* TAC, ¶¶ 264-65. Defendants argue that the vast majority of Louisiana's state courts have ruled that any action brought under the UTPCPA applies only to direct consumers or to business competitors of the defendant-which precludes any action here on behalf of indirect purchasers.[FN1] Plaintiffs oppose this argument on grounds that the UTPCPA expressly defines trade or commerce to include trade or commerce that "directly or indirectly" affects the people of the state, and has been construed broadly enough to include state agencies and indirect purchasers.

> FN1. The court previously granted defendants' motion to dismiss plaintiffs' indirect purchaser claim under Louisiana's Monopolies Act. *See* August 31, 2007 Order at 30-32. Significantly, in moving for dismissal of that claim, defendants did not appear to dispute that indirect purchasers do, in fact, have standing under the UTPCPA. Accordingly, and based on the parties' arguments, the court's August 31 Order specifically adopted the premise that indirect purchasers have standing under the UTPCPA, and ultimately held that it was not inconsistent "to hold that the [Monopolies Act] does not allow for indirect purchaser

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

standing, even if the [UTPCPA] does." *See id.* at 32:15-17 (noting that Louisiana's consumer protection statute "expressly defines trade or commerce covered under the statute to include indirect purchasers").

Beginning, as always, with the statutory language, the UTPCPA states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *See* La.Rev.Stat. Ann. § 51:1405. The statute further defines "trade or commerce" as "any trade or commerce directly or indirectly affecting the people of the state." *Id.* at § 51:1402(9). Under its plain language, therefore, the UTPCPA covers unlawful conduct with respect to trade or commerce that affects Louisiana residents either directly *or* indirectly. This supports plaintiffs' argument that indirect purchaser claims are covered.

By contrast, defendants' reliance on Louisiana case law interpreting the UTPCPA as covering actions brought by "direct consumers or business competitors"-to the exclusion of indirect purchasers-is ultimately unavailing. *See, e.g., Vermillion Hosp., Inc. v. Patout,* 906 So.2d 688, 692 (La.App.2005); *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.,* 292 F.3d 471, 480 (5th Cir.2002). At first blush, these cases *do* seem to restrict interpretation of the UTPCPA to direct purchaser claims. However, the cases are interpreting the personal right of action provision of the UTPCPA-which allows "any person who suffers any ascertainable loss of money or movable property" to bring an action for money damages. *See* La.Rev.Stat. Ann. § 51:1409. This is distinguishable from the Attorney General enforcement provision that is at play here. *See id.* at § 51:1407. Second, and more importantly, it is not actually clear whether the reference to "direct consumers or business competitors" can be read to support a direct purchaser requirement. While true enough that the language of some cases contains this precise phrase, other cases omit the word "direct," and state

only that the UTPCPA's private right of action applies to simply "consumers or business competitors." *See, e.g., Vermilion,* 906 So.2d at 692 ("Louisiana courts, both state and federal, have uniformly held the personal right of action granted under [UTPCPA] applies only to direct consumers or to business competitors"); *Tubos de Acero de Mexico,* 292 F.3d at 480; *cf. Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.,* 522 So.2d 1362, 1365 (La.App.1988) (language of UTPCPA "has been held to confer the private right of action on both consumers and business competitors"); *Gil v. Metal Serv. Corp.,* 412 So.2d 706, 707 (La.App.1982) ("this statute has been construed to give protection only to consumers and business competitors"). Accordingly, the only consistent rule to be garnered from these cases is that actions under the UTPCPA must be brought, at a minimum, by consumers or business competitors. Indeed, even *Vermillion* itself-the case most heavily relied on by defendants-may be viewed as suggesting that indirect purchaser standing is available under the UTPCPA. *See, e.g., Vermillion,* 906 So.2d at 692 ("to satisfy the standing requirement of [UTPCPA]," plaintiff must furthermore "establish it engages in business that competes directly *or indirectly* with the defendants as a business competitor") (emphasis added).

**\*4** On balance, defendants have failed to persuade the court that, contrary to the clear definition provided by the UTPCPA, indirect purchaser claims cannot be brought under the statute by Louisiana's Attorney General. Therefore, as the court stated on the record at the hearing on this matter, defendants' motion to dismiss indirect purchaser claims asserted by plaintiff State Louisiana under the UTPCPA is DENIED.

b. Utah

Defendants also target plaintiff State Utah's claim on behalf of indirect purchasers, brought pursuant to the Utah Antitrust Act ("UAA"). *See* TAC, ¶¶ 362-63. Specifically, defendants note that the Utah legislature only recently-on May 1, 2006-amended its antitrust statute to explicitly re-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

Page 5

peal *Illinois Brick,* and the amendment does not apply retroactively. Since the conduct here is alleged to have taken place between 1998 and 2002, defendants contend that the statute does not actually authorize any indirect purchaser claims. Plaintiffs respond that the amendment issue is essentially irrelevant, since indirect purchasers have always had standing to sue under the UAA. Plaintiffs also assert that the UAA's harmonization provision requires the court to follow other states that have allowed indirect purchasers to bring suit under comparable antitrust statutes, and that doing otherwise would violate Utah state and constitutional law. Finally, plaintiffs contend that, even if the court is persuaded by defendants' assertions that the 2006 amendment is controlling on the question of indirect purchaser standing, the amendment should be applied retroactively to cover plaintiffs' claims.

Defendants have the better argument here. First, neither party disputes that the UAA was amended in May 2006 to expressly state that actions may be brought under the UAA by the Utah Attorney General on behalf of natural persons or government entities, regardless whether stated on behalf of direct or indirect purchasers. *See* Utah Code Ann. § 76-10-918 ("Actions may be brought under this section regardless of whether the plaintiff dealt directly or indirectly with the defendant"). Far from proving irrelevant, the obvious implication of this *Illinois Brick* repealer amendment is that, prior to its passage, indirect purchaser standing was *not* available under the UAA. The legislative history recited by defendants in their brief provides further support. *See, e.g.,* 2006 Ut. ALS 19 ("This bill gives consumers and others the right to obtain judicial relief for violations of the Utah Antitrust Act even though they have not dealt directly with the wrongdoer").

Second, while plaintiffs hold fast to the contrary assertion that indirect purchasers have long had standing to bring suit under the UAA, they have not actually relied on any authority that explicitly addresses the question of indirect purchaser standing under the UAA. Rather, plaintiffs have relied on authorities generally allowing "persons"-defined as individuals and government entities-to bring suit under the UAA. These authorities make no distinction between direct and indirect purchasers; they simply assert that qualifying persons and individuals may bring suit, without stating whether an indirect purchaser *is* a qualifying person or individual. To the extent that plaintiffs contend that the court should construe the term "persons" in the UAA's pre-2006 statutory version to *mean* indirect purchasers, this is also misguided. Plaintiffs rely on the UAA's harmonization provision, which states that courts should be guided by interpretations given by other state courts to comparable state antitrust statutes, as well as numerous decisions of other state courts purportedly "allowing indirect purchaser suits under analogous state antitrust statutes..". *See* Opp. Br. at 19:5-7; *id.* at n. 26; *see also* Utah Code Ann. § 76-10-926 ("The legislature intends that the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes."). However, plaintiffs conveniently ignore the harmonization provision's equally weighted statement that the court should also be guided by *federal courts'* interpretation of comparable *federal* antitrust statutes, in interpreting the UAA. *See id.* And as defendants point out, this means that the harmonization provision could just as easily be construed consistently with judicial decisions regarding the Sherman Act, which prohibits indirect purchaser standing. Since plaintiffs propose no meaningful way of determining which courts' interpretation of "person" should govern-either in favor or against indirect purchaser standing-the argument is less than convincing.

**\*5** Moreover, even plaintiffs concede that there is only one pre-2006 Utah case that directly considered indirect purchasers standing under the UAA-and concluded that indirect purchasers did *not* have standing under the UAA. *See, e.g., State of Utah v. Daicel Chem. Indus., Ltd.,* Civil No.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

020910931 (3rd Dist.Utah 2004) (unpublished) (denying indirect purchaser standing under UAA). While plaintiffs correctly note that an unpublished state district court decision has no precedential value under Utah law, and the court should therefore not rely on the case exclusively, *Daicel* does support the observation that the 2006 amendment to the UAA changed existing law with respect to indirect purchasers, and clarified that indirect purchaser standing was affirmatively being granted. Logically, then, the court concludes that indirect purchaser standing was not available prior to 2006.

In view of the fact that the 2006 amendment affirmatively altered the legal landscape with respect to indirect purchaser standing, the only real dispute is whether the amendment applies retroactively to conduct alleged to have occurred before 2006. Preliminarily, both parties agree that the 2006 amendment applies retroactively if the statute expressly calls for it, or if the statute can be classified as "procedural." *See, e.g., Brown & Root Indus. Service v. Industrial Com'n of Utah,* 947 P.2d 671, 675 (Utah 1997) ("The general rule is that statutes are not applied retroactively unless retroactive application is expressly provided for by the legislature;" however, "[a]mendments that are purely procedural may be given retrospective effect"). Both parties also agree that the 2006 amendment in question does not expressly provide for retroactive applicability. Thus, the only question is whether the amendment should be classified as procedural, or substantive.

On balance, the court concludes that the 2006 amendment is substantive, not procedural. As stated by the Utah Supreme Court in *Brown & Root Indus. Service,* the procedural exception to non-retroactivity is a narrow one, and "only procedural changes 'which do not enlarge, eliminate, or destroy vested or contractual rights' may be applied retroactively." *See id.* A substantive change, by contrast, may not be applied retroactively and is defined as "the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause of action." *Id.* Here, the amendment at issue served to enlarge the rights of parties under the UAA, and created an entire cause of action for indirect purchasers. This is a substantive change.

In sum, and based on the above, the court finds that indirect purchaser status is lacking under the UAA, since the conduct alleged in the third amended complaint pre-dates the 2006 amendment to the UAA that allows indirect purchaser claims to go forward. The court therefore GRANTS defendants' motion to dismiss plaintiffs' claim for damages on behalf of indirect purchasers under the UAA. The dismissal is with prejudice.

2. *Parens Patriae Authority for New Mexico and Tennessee AGs*

**\*6** Defendants next move to dismiss New Mexico's and Tennessee's parens patriae claims, on grounds that neither of these plaintiff States empowers their Attorneys General to assert parens patriae claims for damages on behalf of natural persons. Defendants note that the court's August 31 Order already considered whether New Mexico and Tennessee granted their Attorneys General the right to assert parens patriae claims for damages under the same or similar statutes, and answered this question in the negative. Accordingly, defendants contend that for the same reasons as those set forth in the August 31 Order, plaintiffs' parens patriae claims for damages under New Mexico and Tennessee law continue to falter.

a. New Mexico

Defendants seek dismissal of New Mexico's parens patriae claim for damages brought under the state's consumer protection act-the New Mexico Unfair Trade Practices Act ("NMUPA"). Defendants point out that, in the August 31, 2007 order, the court dismissed plaintiff State New Mexico's parens patriae damages claim under the state's antitrust act, but the court was silent with respect to the corresponding parens patriae claim brought under the consumer protection statute.[FN2] Plaintiffs, for their part, assert that the consumer protection stat-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

ute's reach is distinct from that of the state antitrust statute's, in that it expressly permits the Attorney General to bring suit on behalf of all victims of defendants' unlawful conspiracy, and to seek restitution on their behalf.

> FN2. Defendants note that they previously sought dismissal of New Mexico's parens patriae claim under the state's consumer protection statute, in addition to the parens patriae claim asserted under the state antitrust statute. Upon review of the parties' earlier dismissal papers, the court concedes this to be the case. However, the court's failure to rule on the issue in its order has no bearing on the merits of the issue. For this reason, the court rejects plaintiffs' argument that the court's silence with respect to the consumer protection statute is analogous to a holding that parens patriae authority to seek damages under the consumer protection statute exists.

The NMUPA allows the Attorney General to "bring an action in the name of the state alleging violations of the Unfair Practices Act" and to seek "temporary or permanent injunctive relief and restitution," as well as civil penalties. *See* N.M. Stat. Ann. §§ 57-12-8(A-B), 57-12-11. Separately, the provision covering private remedies under the NMUPA allows "[a]ny person who suffers any loss of money or property" under the act to sue for "actual damages." *See* N.M. Stat. Ann. §§ 57-12-10(B). A "person" is defined as "natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates." *See id.* at § 57-12-2. In sum, then, the plain language of the NMUPA states that the Attorney General can act "in the name of the state" to seek equitable relief and civil penalties only-not "actual damages;" damages suits are limited to suits filed by qualifying "persons" only-none of which include the Attorney General.

Nor have plaintiffs pointed to any other source that grants such authority. Plaintiffs' only claim is that the Attorney General can sue for equitable relief on behalf of natural persons-a contention with which defendants do not appear to take issue. And to the extent that plaintiffs rely on *State of N.. M. v. Scott & Fetzer Co.,* 1981 WL 2167 (D.N.M.1981) for support, *Scott & Fetzer* merely recognizes that parens authority is vested in the New Mexico Attorney General. It contains no express provision for parens patriae authority for damages actions. *See* August 31, 2007 Order at 65.

**\*7** In sum, defendants are correct that parens patriae authority to sue for damages is lacking under the NMUPA. The court therefore GRANTS defendants' motion to dismiss the NMUPA claim, to the extent that plaintiffs seek monetary damages on behalf of natural persons. The dismissal is with prejudice.

b. Tennessee

Defendants also seek dismissal of plaintiff State Tennessee's claim under the Tennessee Unfair Trade Practices Act ("TPPA"), to the extent this claim seeks monetary damages in a parens patriae capacity on behalf of consumers. Defendants point out that the August 31 Order dismissed this very same claim, finding that "there is simply no statutory authority relied on by plaintiffs that expressly grants the Attorney General the right to assert a parens patriae claim for damages on behalf of natural persons or consumers." *See* August 31 Order at 69:21-26. Nonetheless, defendants note that plaintiffs have in essence pled the exact same claim once again. Plaintiffs' revised allegations have been duly amended to no longer state that Tennessee is seeking damages "on behalf of itself and on behalf of consumers," instead stating that Tennessee is seeking damages "on behalf of the State, its state agencies, and its political subdivisions." *See* First Amended Complaint, ¶ 184, *cf.* TAC, ¶ 360. However, the amendment is a semantic change only, note defendants, for the third amended complaint then goes on to state that even "on behalf of the State," the Attorney General is seeking relief in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

the form of "damages sustained by the State, local government *and consumers,* including full consideration and/or sums paid....". *See* TAC, ¶ 360 (emphasis added).

Defendants are correct. The August 31 Order affirmatively dismissed the Attorney General's parens patriae claim under the TPPA on behalf of consumers, to the extent the parens patriae claim sought money damages. *See* August 31 Order at 68-69. The third amended complaint now before the court, even though it contains slightly different wording, essentially re-states the very same claim. By seeking damages sustained "by consumers," the Attorney General is basically seeking relief for damages on behalf of consumers. *See* TAC, ¶ 360. In other words, the difference in language changes nothing.

As such, the court need not revisit here the same arguments made previously. The court simply adopts the same reasoning as that set forth in its August 31 Order, and GRANTS defendants' motion to dismiss plaintiff State Tennessee's claim under the TPPA, to the extent it seeks monetary damages in a parens patriae capacity on behalf of consumers. The dismissal is with prejudice.

3. *Intrastate Conduct Allegations Under Maryland and Mississippi Statutes*

Defendants argue that plaintiffs have failed to cure the deficiencies contained in their prior claims under Maryland and Mississippi's antitrust statutes. Specifically, defendants contend that they have still not properly alleged the requisite intrastate conduct, as instructed by the court in its August 31 Order.

a. Maryland

**\*8** As defendants note, the court's August 31 Order dismissed plaintiffs' claim pursuant to the Maryland Antitrust Act ("MATA"), because plaintiffs had failed to adequately allege intrastate activity. *See* Order at 44-47. Specifically, the court found that MATA reaches economic activity that is intrastate in nature and that, while the conduct need not be *exclusively* intrastate in nature, plaintiffs must at least allege that economic activity within the State of Maryland is implicated as a result of defendants' purportedly unlawful conduct. *See id.* As such, plaintiffs' prior bare allegation that defendants were engaged "in the business of marketing and selling DRAM throughout the United States," was insufficient under MATA.

Plaintiffs have now amended their allegations. Among other things, the third amended complaint now alleges: that during the relevant period, DRAM was in the regular continuous and substantial flow of intrastate commerce in Maryland; that State of Maryland government entities, including the University System of Maryland, purchased in excess of $100 million worth of DRAM-containing computers; that defendant Micron, through its subsidiary Crucial Technologies, sold DRAM directly to the University of Maryland and other Maryland government entities; and that the State, its agencies and subdivisions, residents and businesses, paid artificially high prices for DRAM-containing computers and equipment than they otherwise would have in a competitive market. *See* TAC, ¶ ¶ 271-74.

These allegations are sufficient to allege the requisite intrastate activity required by MATA. They allege, at a minimum, that economic activity within the State of Maryland was affected, as contemplated by the court's prior order. *See* August 31 Order at 46.

Defendants' arguments to the contrary are essentially the same as those raised and dealt with in the court's August 31 Order. They are premised on their reading of MATA, which defines trade and commerce as "all economic activity within the State," and *Maryland Staffing Serv., Inc. v. Manpower, Inc. See* 936 F.Supp. 1494, 1504 (E.D.Wis.1996). As the court made clear in its order, however, allegations of conduct or economic activity within the state satisfy MATA, even if interstate conduct is also alleged. Accordingly, even though defendants are correct that much of the conduct alleged by plaintiffs *is* interstate in nature-e.g., defendants' shipment of DRAM products to Mary-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

Page 9

land originated out of state-this does not impact the court's ultimate finding that intrastate activity has been alleged, in view of plaintiffs' allegations that *some* unlawful conduct took place in Maryland, via the direct sale of artificially high DRAM to Maryland entities, who bought DRAM at those artificially high prices. *See* TAC, ¶¶ 271-74.

In sum, the court is unpersuaded by defendants' arguments. Accordingly, defendants' motion to dismiss on this ground is DENIED.

b. Mississippi

**\*9** Defendants make a similar argument with respect to plaintiffs' claim pursuant to Mississippi's Antitrust Act. They argue that the Mississippi state courts have consistently interpreted the state's antitrust statute to apply to illegal conduct that occurred, at least in part, wholly within the state, and that plaintiffs' amended allegations still fail to allege any conduct by defendants that took place wholly inside Mississippi. For similar reasons to those expressed above in connection with Maryland's statute, the court also rejects defendants' arguments here.

Preliminarily, the August 31 Order covered the same competing case law and arguments as those advanced by the parties here. Specifically, the court considered the Mississippi Supreme Court's opinion in *Standard Oil Co. v. State ex rel. Attorney General,* as well as subsequent case law from the federal courts. *See* Order at 47-49; *see also Standard Oil,* 107 Miss. 377, 65 So. 468 (Miss.1914); *Moore ex rel. State of Mississippi v. Abbott Labs.,* 900 F.Supp. 26 (S.D.Miss.1995). The court in its August 31 Order noted that, while *Standard Oil* may be read to suggest that allegations of at least some intrastate activity must be made, this opinion has not been followed by any subsequent state supreme court opinion, and appears to have been based on a largely discredited dual sovereignty view of the Commerce Clause. *See* August 31 Order at 48. Nonetheless, the court ultimately found that the state antitrust act should be read to require allegations of at least some activity or conduct occurring in intrastate commerce or trade. The court further found that *Moore v. Abbott Labs.* supports this conclusion. *See* 900 F.Supp. at 28. Finally, the court found that plaintiffs' first amended complaint nowhere alleged any activity of any kind that took place in Mississippi and was related to defendants' conduct.

Here, plaintiffs' third amended complaint alleges: that defendants' unlawful conduct resulted in "wholly intrastate conduct as DRAM and DRAM-containing products were imported into Mississippi and sold within the state;" that defendant Micron sold DRAM directly to the State of Mississippi and its government entities, in transactions which partially took place "wholly within the state of Mississippi;" that defendants shipped DRAM directly into Mississippi; and that Mississippi paid artificially high prices for the DRAM in Mississippi. *See* TAC, ¶¶ 288-94.

As with plaintiffs' allegations under MATA, the court finds these allegations sufficient to allege that some activity or conduct occurred in intrastate commerce or trade within Mississippi. Moreover, the court finds defendants' contrary argument that the defendants are not sufficiently implicated in the alleged intrastate activity, unpersuasive. Defendants are alleged to have sold at least some DRAM directly to plaintiff State Mississippi. That direct sale-which was allegedly made at artificially high prices as a result of defendants' unlawful conduct-reasonably viewed, constitutes conduct that occurred within the state of Mississippi, even if the contours of the exact sale are not set forth. Furthermore, this reasonable inference is all that is required at this stage of litigation.

**\*10** Thus, the court concludes that plaintiffs' amended allegations with respect to Mississippi's antitrust statute adequately plead the requisite level of intrastate conduct. Defendants' motion to dismiss on the above ground is accordingly DENIED.

C. Defendants' Motion to Strike

Defendants move to strike certain portions of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

plaintiffs' requests for relief. First, defendants seek to strike the prayer for treble damages brought by plaintiff State Louisiana,[FN3] to the extent treble damages are alleged by that state in connection with parens patriae actions on behalf of natural persons. Second, defendants seek to strike plaintiff Mississippi's request for damages pursuant to that state's consumer protection statute. Third, defendants seek to strike all relief requested by plaintiff State Tennessee, with the exception of plaintiff State Tennessee's limited request to deny defendants the opportunity to do business within Tennessee.

> FN3. Defendants originally moved to strike claims for treble damages asserted by plaintiff States Nevada, Vermont, and New Mexico. Plaintiffs' opposition brief makes clear that they are not asserting any claims for treble damages on behalf of natural persons under the laws of Nevada and Vermont. Accordingly, defendants have withdrawn their motion to strike with respect to these treble damages claims. And with respect to New Mexico's treble damages claim, it is unnecessary for the court to reach this argument, in view of its dismissal of plaintiffs' parens patriae claim for monetary damages on behalf of natural persons. *See* discussion, *supra; see also* Defs. Mot. to Dismiss at 11, fn 7.

1. *Treble Damages Sought by Louisiana and New Mexico*

Defendants contend that plaintiff State Louisiana cannot recover either actual or treble damages on behalf of itself, government entities, or citizens, for its claims brought pursuant to Louisiana's consumer protection statute ("UTPCPA"). Specifically, defendants assert that the statute only permits the Attorney General to recover for injunctive relief, restitution, and civil penalties. Moreover, they note that the statute also prohibits any attempt to recover any actual damages in actions brought "in a representative capacity," as is the case here. Finally, defendants claim that even if the Attorney General could recover treble damages, the UTPCPA only allows recovery for treble damages where the Attorney General has first placed defendants on notice of the intent to seek treble damages.

Defendants are correct. First, the UTPCPA on its face provides that in actions brought by the Attorney General, only injunctive relief, restitution, and civil penalties are recoverable. *See* La.Rev.Stat. Ann. §§ 51:1407 (allowing Attorney General to seek injunctive relief and civil penalties); 1408(A) (court may issue such additional orders as necessary, including restitution); *see also Louisiana ex rel. Guste v. Gen. Motors Corp.,* 370 So.2d 477, 486 (La.1979) (affirming appellate court's holding that damages are not allowed under UTPCPA, although restitution awards are). Its plain language therefore expressly omits actual or treble damages sought by the Attorney General. Plaintiffs *do* correctly note that actual and treble damages may be sought under the UTPCPA. However, the provision granting this relief expressly states that it may only be granted where a plaintiff brings "an action individually but *not* in a representative capacity." *See id.* at § 1409(A) (emphasis added).

Accordingly, the UTPCPA expressly limits the Louisiana Attorney General to actions seeking only equitable relief, and not actual or treble damages. As for plaintiffs' invocation of other statutory provisions- §§ 51:1404, 51:1414, and 51:1408-for support of their position that actual or treble damages may be sought as an "additional order" or pursuant to other duties belonging to the Attorney General, these provisions provide no such support.

**\*11** Defendants are also correct that, even if plaintiffs could properly seek treble damages pursuant to section 1409(A) of the UTPCPA, that same provision requires as a pre-requisite to treble damages, that the Attorney General provide notice of such. *See* La.Rev.Stat. Ann. § 51:1409(A) ("If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

three times the actual damages sustained."); *see also* B & G Crane Service, L.L.C. v. Duvic, 935 So.2d 164, 170 ("since the plaintiff has been unable to prove the issuance of the requisite notice to the defendants mandated by statute, the trial court did not err in granting the defendants' motion to strike the claim for treble damages"). Plaintiff, however, has made no argument, nor offered any exhibits, demonstrating such notice. While they assert that the notice requirement is limited to private actions, they have also failed to provide any actual support for this exact proposition. As such, plaintiffs' request for treble damages under the UTPCPA is also improper on notice grounds.

For the foregoing reasons, the court hereby GRANTS defendants' motion to strike Louisiana's claim for actual or treble damages.

2. *Actual Damages Sought by Mississippi*

Defendants also seek to strike Mississippi's prayer for damages and restitution pursuant to the Mississippi Consumer Protection Act ("MCPA"). Both parties argue their contrary positions based on their reading of the MCPA.

Turning to the language of the MCPA, it prohibits all "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce," and further defines specifically enumerated conduct that is also prohibited. *See* Miss.Code Ann. § 75-24-5(1-2). That same provision also provides that any "[a]ction ... brought under Section 75-24-5(1)" be brought "only under the provisions of Section 75-24-9." *See id.* at § 75-24-5(1). Turning to section 75-24-9, this provision expressly allows the Attorney General to seek injunctive relief, which relief may also be accompanied by civil penalties. *See* Miss.Code Ann. § 75-24-9 (Attorney General "may bring an action in the name of the state against [violators] to restrain by temporary or permanent injunction the use of [any prohibited] method, act or practice."); *see also* Miss. Cod Ann. § 75-24-19(1) (a, b). The statute *also* provides, in a subsequent provision, that the court "may make such additional orders or judgments, including restitution, as may be necessary to restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice prohibited by this chapter." *See id.* at § 75-24-11.

Thus, the plain reading of this statutory language is that the Attorney General, in seeking to redress violations under the MCPA, is limited to injunctive relief, although the Attorney General may also seek additional orders or judgments, including restitution. Damages, by contrast, are not provided for in any of these provisions. To the extent that the MCPA allows for them, they are permissible pursuant to the private right of action provision of the MCPA, which permits "any person who purchases or leases goods or services primarily for personal, family or household purposes" and suffers a loss by reason of any unlawful conduct under the MCPA, to recover "damages." *See* Miss.Code Ann. § 75-24-15. The Attorney General, however, is not such a person. *See id.* at § 75-24-3 ("person" defined as "natural persons, corporations, trusts, partnerships, incorporated and unincorporated associations, and any other legal entity"). This conclusion is unaffected by plaintiffs' post-hearing submission of additional case law purportedly establishing the proposition that plaintiffs press upon the court here, as neither of the cases provided expressly hold that monetary damages may be pursued by the Attorney General pursuant to the MCPA. *See* Declaration of Sondra S. McLemore ISO Plaintiff's Motion to File Statement of Unpublished Decision, Exs. A-B.

**\*12** Accordingly, the court finds that plaintiffs' request for damages is improper, but that any request for restitution is not. The court therefore GRANTS defendants' motion to strike plaintiffs' request for monetary damages under the MCPA, insofar as plaintiffs seek monetary damages.

3. *Relief Requested by Plaintiff State Tennessee*

Finally, defendants seek to strike all relief requested by plaintiff State Tennessee pursuant to its antitrust statue ("TTPA"), with the exception of its

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

Page 12

limited request to deny defendants the opportunity to do business within Tennessee. Tennessee has requested relief in the form of damages, civil penalties, all available equitable remedies, including injunctive relief and the denial of defendants' ability to do business in the State, and reimbursement of reasonable attorneys' fees, expert fees, and costs. *See* TAC, ¶ 360. Defendants, however, contend that the TTPA has two provisions that govern suits brought by the state, neither of which allows for any of this requested relief (with the exception of the request to deny defendants the right to do business in the state).

Plaintiffs, by contrast, contend that disgorgement and other equitable relief is available to the state under the Tennessee consumer protection statute ("TCPA"), and that the court should construe these remedies as covered under the TTPA as well. As for money damages, plaintiffs assert that, pursuant to certain legal principles embraced by Supreme Court precedent, statutory money damages may generally be awarded, despite statutory language limiting relief to injunctive relief.

Defendants have the more persuasive argument. As they point out, the TTPA only provides for the institution of two types of actions by the Attorney General-a criminal suit seeking criminal penalties, and an action for forfeiture of a Tennessee corporation's charter or to prohibit foreign corporations from conducting business in the state. *See* Tenn.Code Ann. §§ 47-25-103, 47-25-104. Neither of these enforcement provisions authorizes the relief requested by the Attorney General here, with the exception of the request to prohibit defendants from conducting business in Tennessee. Furthermore, while there *is* a separate private right of action provision under the TTPA that allows "any person" to bring suit for "full consideration" of any ill-gotten sum under the act, neither the Attorney General nor the state is defined as such a "person." *See* Tenn.Code Ann. §§ 47-25-106 (private right of action provision), 1-3-105(3) ("person" defined to include "a corporation, firm, company or association"). Accordingly, the plain reading of the TTPA is that plaintiff may not seek the remedies requested here, with the exception of that already noted.

Moreover, plaintiffs provide no affirmative authority for the proposition that the TPPA should be construed consistently with the TTPA insofar as remedies are concerned. Nor does this make inherent sense, for it stands to reason that the legislature, by providing each statute with a different remedial scheme, meant those schemes to be different. As such, the fact that the TCPA may allow for equitable remedies broader than that which is allowed under the TPPA, is not relevant to the analysis here.

**\*13** Furthermore, plaintiffs' suggestion that the Supreme Court has previously held that the court may authorize equitable relief, notwithstanding statutory requirements to the contrary, is misguided. The case relied on by plaintiffs for this proposition, *Porter v. Warner Holding Co.,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), is wholly inapposite, since it dealt with the separate equitable and damages provisions of a single statute-not the inherent equitable powers of a court to override a statutory damages provision. *See id.* at 403.

In conclusion, plaintiffs have provided no basis for supporting the request for relief made pursuant to the TTPA. To that end, the court hereby GRANTS defendants' motion to strike plaintiffs' request for relief, with the exception of the request to deny defendants the right to do business in the state.

D. Conclusion
For the foregoing reasons, and as stated on the record at the hearing on this matter, the court hereby GRANTS defendants' motion to dismiss in part, and DENIES it in part, as stated herein. The court furthermore GRANTS defendants' motion to strike.

**IT IS SO ORDERED.**

N.D.Cal.,2008.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 1766775 (N.D.Cal.)
**(Cite as: 2008 WL 1766775 (N.D.Cal.))**

Page 13

California v. Infineon Technologies AG
Slip Copy, 2008 WL 1766775 (N.D.Cal.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.