# EXHIBIT R



Page 1

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

Only the Westlaw citation is currently available.

Superior Court of Massachusetts.
Valerie CIARDI et al,[FN1]

FN1. A class of others similarly situated.

v.
HOFFMANN-LaROCHE, LTD et al.[FN2]

FN2. Hoffman-La Roche, Inc., Roche Vitamins, Inc., BASF A.G., BASF Corporation, Rhone-Poulenc S.A., Rhone-Poulenc Animal Nutrition, Inc ., Rhone-Poulenc Inc., Lonza A.G., Lonza Inc., Chinook Group, Ltd., Chinook Group, Inc., DCV, Inc., and Ducoa L.P.

No. 993244.
Sept. 29, 2000.

MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS
BOTSFORD.

**\*1** The plaintiff, Valerie Ciardi (Ciardi), has filed a two-count complaint alleging coercive civil conspiracy (count I) and violation of G.L. c. 93A (count II), against the defendant corporations, all of which are engaged in the manufacture, production, distribution and sale of vitamins and vitamin products. Ciardi has filed the claims on behalf of herself and others similarly situated as a class action suit pursuant to Mass.R.Civ.P. 23. Each defendant corporation has filed a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), as well as Mass.R.Civ.P. 9(b) and 8(a)(1), and each relies on substantially the same arguments.[FN3] For the following reasons, the defendants' motions to dismiss the civil conspiracy count will be allowed, and the motions to dismiss the count under G.L. c. 93A will be denied, as will the defendants' motions under Mass.R.Civ.P. 8(a)(1) and 9(b).

FN3. Several defendants have also filed motions to dismiss for lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2). The parties have agreed, however, to have the Rule motions described in the text resolved first, and therefore they are the only motions addressed in this memorandum of decision.

*BACKGROUND*

For purposes of this motion, I accept the facts alleged in Ciardi's first amended complaint as true. These facts are as follows.

The defendants manufacture, produce, distribute, and sell vitamins, vitamin premixes, and other vitamin products for human and animal consumption. The defendants are dominant in the vitamin market. F. Hoffmann-La Roche, Ltd., Hoffman-La Roche, Inc., and Roche Vitamins, Inc., control approximately 40% of the relevant world vitamin market; BASF, A.G. and BASF Corporation account for approximately 20%; and Rhone-Poulenc, S.A., Rhone-Poulenc Animal Nutrition, Inc., and Rhone-Poulenc, Inc. account for approximately 15% of the market. The products involved include vitamins A, B2, B3, B4, B5, C, E, Beta Carotene, vitamin premixes, and products containing one or more of certain vitamins or vitamin premixes (collectively, the vitamin products). The vitamin products are manufactured and sold in the United States, including Massachusetts.

Beginning in or about January 1990, the defendants conspired together to suppress and eliminate competition by fixing the prices and allocating the volume of the vitamin products. The conspiracy consisted of collusive agreements, formal and informal, among defendants to: fix, increase, and maintain prices for the vitamin products and coordinate price increases among themselves in the United States, including Massachusetts; allocate the volume of sales and market shares of the vitamin products, and allocate all or part of certain contracts to supply to various customers; and refrain from

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

submitting bids, or submit collusive, non-competitive and rigged bids. In furtherance of these agreements, the defendants engaged in a number of activities, including: participation in meetings and conversations to discuss the prices and volumes of the vitamin products, the exchange of sales and customer information for the purpose of monitoring and enforcing adherence to the above-described price-fixing and other agreements; issuing price announcements and price quotations; selling the vitamin products at agreed-upon prices and volume allocations; participation in meetings and conversations to discuss the submission of prospective bids for contracts including agreeing upon the low bidder and prices to be submitted; and selling the vitamin products at the rigged and non-competitive prices.

**\*2** As a result of the agreements between and conduct of the defendants, competition in the sale of the vitamin products in Massachusetts has been restrained; prices paid by consumers in Massachusetts have been artificially fixed at supra-competitive levels; purchasers of vitamin products in Massachusetts, including the plaintiff, have been overcharged for the products and such purchasers have also been deprived of the benefits of free and open competition.

By acting in unison to control the prices of the vitamin products, the defendants exercised a peculiar coercive power over the plaintiff. Throughout the period described in the complaint (i.e., beginning in 1990 and extending almost to the time of filing), the defendants fraudulently concealed their conspiracy from the plaintiff and putative class members. In particular, the defendants engaged in a horizontal price-fixing conspiracy that was inherently self-concealing, and to further the concealment, they met secretly together in the United States and Europe; exchanged information about prices and volumes of sales of vitamin products; instructed the members of their conspiracy at their meetings not to divulge the existence of the conspiracy; and took other steps, including manipulating bidding practices, to disguise and cover up the existence of the agreement.

The plaintiff has served a demand letter pursuant to G.L. c. 93A, § 9, on each of the defendants. The plaintiff defines the class she seeks to represent as including all persons or entities in Massachusetts who or which purchased vitamin products supplied by any of the defendants at any time from January 1, 1990 to the present.

DISCUSSION

I. Rule 12(b)(6) Motions

Under Mass.R.Civ.P. 12(b)(6), the sufficiency of a complaint is examined by accepting the allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. See *Eyal v. Helen Broadcasting Corp.,* 411 Mass. 426, 429 (1991). "The plaintiffs need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim." *Bell v. Mazza,* 394 Mass. 176, 184 (1985). "[D]ismissals on the basis of pleadings, before facts have been found, are discouraged." *Gennari v. Revere,* 23 Mass.App.Ct. 979, 980 (1987) (citations omitted). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader v. Citron,* 372 Mass. 96, 98 (1977) (citation omitted). "Doubt or misgivings whether the present claim can be ranked as provable (or even credible), ... is not a proper basis for dismissal ..." *Wrighton v. Spaulding,* 20 Mass.App.Ct. 70, 72, rev. denied, 395 Mass. 1103 (1985). "If a complaint lacks merit, the defendant should take the appropriate steps to cause the matter to be brought within the purview of rule 56(b) ..." *Id.*

A. Coercive Civil Conspiracy

**\*3** The first count of the complaint sets out a common law claim of civil conspiracy in restraint of trade. The defendants contend that this count is preempted by the Massachusetts Antitrust Act, G.L. c. 93, §§ 1-14A (referred to generally hereafter as the Antitrust Act), and must therefore be dismissed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

Page 3

Section 4 of c. 93 provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in the commonwealth shall be unlawful." As the defendants point out, the plaintiff's claims-that the defendants conspired together to suppress and eliminate competition by fixing the prices for the vitamin products, coordinating price increases, allocating volume and market shares of the vitamin products as well as contracts, and rigging bids, all for the purpose of restraining trade and commerce [FN4]-fall squarely within the scope of this statutory language. The parties agree, however, that the plaintiff does not and cannot raise a claim under the Antitrust Act because the challenged course of conduct of the defendants did not "occur and have their predominant impact primarily within the commonwealth and at most, only incidentally outside New England ... [,]" G.L. c. 93, § 3, and because the plaintiff is an indirect purchaser of the vitamin products.[FN5] The question raised is whether a common law cause of action for civil conspiracy in restraint of trade may be maintained independently of the Antitrust Act.

FN4. First amended complaint, ¶¶ 8, 11.

FN5. The plaintiff's status as an indirect purchaser precludes her from bringing a claim under the Antitrust Act because the Act is to "to be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable[,]" G.L. c. 93, § 1, and indirect purchasers are foreclosed from bringing claims under the Federal antitrust statutes. See *Illinois Brick v. Illinois,* 431 U.S. 720, 736-45 (1977) (Illinois Brick). See also *Boos v. Abbott Labs.,* 925 F.Sup. 49, 50-51 (1996). The plaintiff concedes this point. (Plaintiff's opposition, p. 7.)

The answer is no. The common law proscribed conspiracies to create monopolies and regulate prices in restraint of trade. See, e.g., *Commonwealth v. Dyer,* 243 Mass. 472, 481, 486 (1922), cert. denied, 262 U.S. 751 (1923) (defendants charged, *inter alia,* with common law crime of "conspiracy to create a monopoly in fresh fish, to fix, regulate, control, and to enhance ... unreasonably the price of fresh fish, and thus to cheat and defraud the public"). The proscription could have criminal consequences, see *id.,* and also civil. See, e.g., *United Shoe Machinery Corp. v. LaChapelle,* 212 Mass. 467 (1912). Cf., e.g., *Foster v. Shubert Holding Co.,* 316 Mass. 470 (1944). However, as the Supreme Judicial Court has noted, since Massachusetts adopted an antitrust statute in the early 1900s, there do not appear to be any cases in which a common law cause of action for conspiracy to create a monopoly or to restrain trade has been advanced separately from the statute. See *SDK Medical Computer Serv. Corp. v. Professional Operating Mgt. Group, Inc.,* 371 Mass. 117, 129 (1976).

In *Boos v. Abbott Labs.,* 925 F.Sup. 49, 51 (D.Mass.1996), the court considered the same question raised here, that is, whether a common law claim of illegal restraint of trade was superseded by the Massachusetts Antitrust Act.[FN6] After a thorough review of the common law governing monopolies and agreements in restraint of trade in Massachusetts, the history of antitrust legislation in the Commonwealth and the relationship between the two, the court concluded that the legislation was intended to replace any common law cause of action for monopolistic agreements or conspiracies in restraint of trade. [FN7] As the court in Boos pointed out, antitrust laws in Massachusetts from the start proscribed monopolistic agreements and agreements in restraint of trade in violation of the "common law," and thus appeared always "to have encompassed the claim which plaintiff[ ] now assert[s]." *Id.* at 53. Moreover, historically, the remedy offered by the common law did not include damages, but rather looked to injunctive relief or a judicial determination that an agreement or conspiracy restraining trade in violation of the common law could not be enforced. See *Foster v. Shubert Holding Co., supra,* 316 Mass. 470. See also *United Shoe Machinery Corp. v. LaChapelle, supra,* 212 Mass. 467; *Central Shade Roller Co. v. Cushman,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

143 Mass. 153 (1887). By contrast, the Massachusetts Antitrust Act expressly establishes a private cause of action for damages, see G.L. c. 93, § 12, which is of course the remedy the plaintiff seeks in this case.

> FN6. The plaintiff in *Boos* brought a class action in which she alleged that the defendant companies had conspired to fix prices for infant formula throughout the United States. She asserted a violation of G.L. c. 93A as well as a common law claim of illegal restraint of trade in "necessities." *Boos v. Abbott Labs., supra,* 925 F.Sup. at 51.

> FN7. "To the extent that Massachusetts courts would have recognized plaintiff's claims prior to statutory enactments, I find that the legislature intended, by its passage of comprehensive antitrust legislation, to replace the common law regime and to specify fully, by statute, the remedies available for acts which would have violated the common law." *Boos v. Abbott Labs.,* 925 F.Sup. at 54.

**\*4** In sum, I find the *Boos* decision persuasive, and based on its reasoning, I conclude that a common law cause of action based on a claim of civil conspiracy in restraint of trade does not survive the passage of the Antitrust Act. See also *SDK Medical Computer Serv. Corp. v. Professional Operating Mgt. Group, Inc., supra,* 371 Mass. at 129 (where the court observed that "... the statutory [antitrust] provisions have largely if not altogether supplanted the common law ..."). The defendants' motions to dismiss Count I of the plaintiff's first amended complaint should be allowed.

B. Chapter 93A

In the second count of the plaintiff's amended complaint she alleges that the price-fixing conspiracy in which the defendants have engaged constitutes an unfair or deceptive act or practice that violates G.L. c. 93A, § 9. The defendants assert dismissal of the count is required. In substance, their argument is this: the plaintiff raises one substantive claim in this case, viz., the defendants have engaged in a concerted plan of price-fixing and related anti-competitive conduct in connection with the sale of the vitamin products; such conduct is the direct focus of the Antitrust Act; the plaintiff has no claim under the Antitrust Act because she is an indirect purchaser of the vitamin products; [FN8] and policy concerns as well as a governing principle of statutory construction-that related statutes should be construed "harmoniously so as to give rise of a consistent body of law," *Marco v. Green,* 415 Mass. 732, 736 (1993)-require that Chapter 93A be interpreted to bar claims of anti-competitive conduct by indirect purchasers.

> FN8. See note 5 above.

The question whether Chapter 93A permits indirect purchasers to bring a claim for price-fixing or other forms of unfair competition is one that has not yet been addressed by the Massachusetts appellate courts.[FN9] While the defendants advance strong legal and policy arguments to the contrary, I nonetheless conclude-particularly in the context of a motion to dismiss under Rule 12(b)(6), see *Nader v. Citron, supra,* 372 Mass. at 98-that Chapter 93A should not be interpreted to bar the plaintiff as an indirect purchaser from bringing such a claim.[FN10]

> FN9. In *Boos v. Abbott Labs., supra,* 925 F.Sup. at 57, the Federal District judge certified to the Supreme Judicial Court the question whether an individual consumer may bring an action under G.L. c. 93A, § 9, alleging a price-fixing conspiracy, where that individual is barred from bringing such a claim under the Federal or Massachusetts antitrust statutes because of her status as an indirect purchaser within the meaning of the *Illinois Brick* decision. For unexplained reasons the Court appears never to have answered the question.

> FN10. Some of the defendants may be ar-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

Page 5

guing that Chapter 93A must be construed to bar indirect purchasers from bringing a claim of price-fixing conspiracy because it would be inconsistent with *Illinois Brick.* Such a contention must fail. The Supreme Court held in *California v. ARC America Corp.,* 490 U.S. 93, 103-04 (1989), that States may permit indirect purchasers to recover under their own antitrust or related laws. Accordingly, the question here is not whether the Commonwealth may authorize indirect purchaser suits, but whether Chapter 93A is intended to do so, at least where consumers are concerned.

It goes without saying that the Antitrust Act and chapter 93A are separate enactments, although obviously related to each other in some respects. [FN11] Chapter 93A is a broad remedial statute, creating new substantive rights. See, e.g., *Linthicum v. Archambault,* 379 Mass. 381, 383 (1979); *Dodd v. Commercial Union Ins. Co.,* 373 Mass. 72, 78 (1977); *Slaney v. Westwood Auto, Inc.,* 366 Mass ... 688, 693 (1975). By its terms, c. 93A proscribes unfair or deceptive conduct as well as "[u]nfair methods of competition"; both are "declared unlawful." G.L. c. 93A, § 2(a). Moreover, the statute expressly states that it is to be construed in accordance with the interpretations of the Federal Trade Commission Act (FTC Act) by the Federal Courts and FTC. *Id.,* § 2(b). The FTC Act has long been read to offer an additional prohibit anti-competitive conduct that is also covered by the Federal antitrust statutes, and to offer a separate and cumulative avenue of relief against such conduct. See *FTC v. Cement Institute,* 333 U.S. 683, 693-95 (1948). Accordingly, it is clear that G.L. c. 93A, § 2, reaches the merits of price-fixing agreements in restraint of trade that the plaintiff alleges in this case, and the defendants do not suggest otherwise.

> FN11. The defendants' reliance on cases such as *GTE Products Corp. v. Broadway Elec. Supply Co., Inc.,* 42 Mass.App.Ct. 293, 302 (1997); and *J.H Westerbeke Corp. v. Onan Corp.,* 580 F.Sup. 1173, 1192 (D.Mass.1984), to prove their argument is misplaced; the plaintiff is correct that the defendants have conflated lack of standing with lack of proof. In GTE Products, the defendant's counterclaim alleging violations of the Antitrust Act, G.L. c. 93, were dismissed on summary judgment because there was no evidence of any conduct in restraint of competition or trade. Since the defendants' counterclaim alleging a violation of Chapter 93A was wholly premised on the antitrust claims, dismissal of the Chapter 93A count was also proper. In the J H. Westerbeke Corp. case, the situation was essentially the same. In both cases, however, the plaintiffs had standing to raise their Chapter 93A claims as well as their antitrust claims. Here, whatever the merits of an antitrust claim may be, the plaintiff lacks standing to bring it. What must be determined is whether she also lacks standing to bring her Chapter 93A claim.

**\*5** As the defendants also recognize, insofar as consumers are concerned, since 1979, Chapter 93A has not required plaintiffs to be in privity with the persons or businesses against whom or which they have a claim. See G.L. c. 93A, § 9(1), as amended by St.1979, c. 406, § 1.[FN12] While there is no specific reference to consumers as indirect purchasers in the amended version of § 9(1), they unquestionably are covered by the section's terms: "[a]ny person, other than a person entitled to bring an action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two ..." *Id.* More significantly, the Antitrust Act, G.L. c. 93, § 14A, expressly provides that it is to "have no effect upon the provisions of [Chapter 93A], except as explicitly provided in said [Chapter 93A]," and the only reference to the Antitrust Act in Chapter 93A occurs in the business section, § 11,[FN13] not in § 9. What the reference to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

Page 6

the Antitrust Act in § 11 demonstrates is that if the Legislature intended to limit consumer actions under § 9 of chapter 93A by restrictions that may apply to actions brought under the Antitrust Act, it knew how to effectuate such a purpose. See *Boos v. Abbott Labs., supra,* 925 F.Sup. at 56.

> FN12. The defendants suggest that the amendment to G.L. c. 93A, § 9(1) is not to be read as intending anything other than to reverse the Supreme Judicial Court's decision in *Dodd v. Commercial Union Ins. Co.,* 373 Mass. 72 (1977), which held that only an insurance company's policy holder could bring a claim for unfair claims settlement practices. (See BASF memorandum, p. 10, n. 5.) While the 1979 amendment to § 9(1) may have in part been focused on the *Dodd* decision, see *VanDyke v. St. Paul Fire & Marine Ins. Co.,* 388 Mass. 671, 675 (1983), the language of the amendment is broader and more general, and plainly reaches beyond unfair claims settlement practices of insurance companies. See, e.g., *Maillet v.. ATF-Davidson Co.,* 407 Mass. 185, 190-91 (1990); *Burnham v. Mark IV Homes, Inc.,* 387 Mass. 575, 581 (1982). The defendants also point to *Nei Boston Survey Consultants, Inc.* 388 Mass. 320, 324 (1983), as showing that a direct connection between plaintiff and defendant is required under Chapter 93A. I disagree. The court expressly recognized in *Nei* that no privity of contract is required under Chapter 93A. Its statement that "it is somewhat significant" the defendant land surveying company had no contractual or business relationship with the plaintiff must be considered in context. In the *Nei* case the plaintiff buyers of real property sued the land surveying company which had conducted high water and percolation lots on the property for the sellers. The plaintiffs sought to hold the company liable for not disclosing to them the significance of the tests it had performed. The Court concluded that the company had not committed an unfair or deceptive act or practice in violation of Chapter 93A simply by failing to explain to the buyers the significance of test results that it had performed for the sellers and had accurately reported. The Court does not suggest in *Nei,* contrary to the defendants' claim here, that a "substantial nexus" between plaintiff and defendant is generally "a necessary perquisite for a Chapter 93A claim." (BASF memorandum, p. 9.)

> FN13. The penultimate paragraph of G.L. c. 93A, § 11, reads:
>
> In any action brought under this section, in addition to the provisions of paragraph (b) of section two, the court shall also be guided in its interpretation of unfair methods of competition by those provisions of chapter ninety-three known as the Massachusetts Antitrust Act.
>
> (Emphasis supplied.)

The legislative history of the Antitrust Act supports the conclusion that it was not intended to circumscribe the scope of consumers' actions under Chapter 93A. The Massachusetts Antitrust Act in essentially its current form was enacted in 1978 with an emergency declaration. St.1978, c. 459. The passage of the statute followed several attempts by the Attorney General and others to replace the existing antitrust legislation which had been enacted at various points over the years since the early 1900s.[FN14] Thus, in January 1977, a bill was filed in the House of Representatives on the petition of the Attorney General that proposed a new antitrust act containing most of the terms that were ultimately enacted in the 1978 legislation, including proscriptions against contracts and agreements in restraint of trade and monopolies, provisions for civil investigations and suits by the Attorney General as well as a private right of action with the po-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tential for treble damages. 1977 House Bill No. 1251.[FN15] The bill had a provision calling for the act to be construed "in harmony" with judicial interpretations of the Federal antitrust statutes. (1977 House Bill No. 1251, Section 1, proposing G.L. c. 93F, § 20.) On the question of relationship between the proposed antitrust act and Chapter 93A, the bill provided: "This chapter shall not be interpreted to repeal any statute modeled after the Federal Trade Commission Act." (*Id.,* Section 1, proposing G.L. c. 93F, § 21.) The bill was referred to the Committee of Ways and Means, and in October 1977, a substitute bill was reported out, Senate Bill No.1925.

> FN14. See *Boos v. Abbott Labs. supra,* 925 F.Sup. at 52-53, for a description of the early antitrust statutes. See also Letter from Attorney General Francis X. Bellotti to Governor Michael S. Dukakis, dated July 7, 1978, included in the Governor's legislative file for St.1978, c. 459, located in the State Archives.

> FN15. The private right of action appears in the proposed G.L. c. 93F, § 12(a), included in Section 1 of Bill No. 1251.

The bill was similar in most respects to the earlier House Bill, but contained one major change. It contained a provision repealing G.L. c. 93A, § 11, in its entirety, while expressly stating that the remaining provisions of Chapter 93A were to be unaffected:

> *6 SECTION 1. Chapter 93A of the General Laws is hereby amended by repealing section eleven. The preceding sentence shall not affect any action brought under section eleven of Chapter 93A of the General Laws prior to the effective date of this act. Except as explicitly provided herein, this act shall have no impact upon the provisions of Chapter 93A of the General Laws.

> 1977 Senate Bill No.1925, Section 1 (emphasis supplied).

Senate Bill No.1925 passed the Senate on October 31, 1977. It appears that its proposed repeal of § 11 caused great consternation in some business circles, because unlike consumers, the consumer protection remedies available to businesses were being completely eliminated.[FN16] The result was another round of negotiations between the Attorney General and others, with a compromise about the fate of Chapter 93A, § 11, being reached and memorialized in amendments to Senate Bill No.1925. (See 1977 Journal of the House of Representatives, vol. II, Jan. 3, 1978, p. 2700.) (See also letter of Attorney General Francis X. Bellotti to Governor Michael S. Dukakis dated July 7, 1978, page 1; the letter is included in the Governor's legislative file for St.1978, c. 459.) The compromise, however, came too late for the amended version of the proposed antitrust legislation to be enacted during the 1977 session. (See *id.*)

> FN16. The Governor's legislative file for St.1978, c. 459, contains letters from Harold Brown, Esquire, to then Governor Michael Dukakis and to then Attorney General Francis Bellotti which vigorously oppose the repeal of G.L. c. 93A, §§ 11. For example, Mr. Brown writes: "Although the consumer will still retain a private remedy under § 9 and 10 [of c. 93A], the small businessman would be foreclosed. On the technical side, this means that in return for obtaining a limited private remedy under the new Chapter 93 [the proposed Antitrust Act], such businessmen would have to surrender their cause of action for 'unfair or deceptive acts or practices.' This is contrary to all logic ..." (Letter from Harold Brown to Attorney General Francis X. Bellotti dated December 1, 1977, page 2.)

In 1978, a new bill was filed, 1978 House Bill No. 2222; according to the Attorney General, this bill was essentially the same as the compromise bill that had died the year before. (See *id.*) On the general relationship between the Antitrust Act and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

Chapter 93A, the bill provided: "Except as explicitly provided therein, the said Massachusetts Antitrust Act shall have no effect upon the provisions of chapter ninety-three A of the General Laws." 1978 House Bill No. 2222, Section 2. The bill then went on to provide for an amendment to c. 93A, § 11, to deal with the Antitrust Act: "In any action brought under this section [viz., c. 93A, § 11], the court shall be guided in its interpretation of unfair methods of competition in particular by those provisions of chapter ninety-three known as the Massachusetts Antitrust Act and cases decided thereunder." 1978 House Bill No. 2222, Section 4.FN17 Both of these provisions were incorporated into the Antitrust Act legislation as it was enacted during the 1978 legislative session. See G.L. c. 93, § 14A, as enacted by St.1978, c. 459, § 1; and G.L. c. 93A, § 11, as amended by St.1978, c. 459 § 3.FN18 And of course these provisions remain in the Antitrust Act and c. 93A, § 11 today.

> FN17. House Bill No. 2222 was referred to the Committee on the Judiciary and reported out as a new bill, 1978 Senate Bill No. 1499. The exact substance of House Bill No. 2222's provisions relating to G.L. c. 93A are present in the Senate Bill. See 1978 Senate Bill No. 1499, Section 1, proposing G.L. c. 93, § 15 and Section 4.

> FN18. The 1978 amendment to G.L. c. 93A, § 11, also contained a sentence providing that a particular portion of c. 93A, § 3, was not to apply to actions brought under § 11. This sentence was repealed in 1986, at the same time that § 3 of c. 93A was amended. The sentence has no bearing on the issue in this case.

This history indicates that the connection between the Antitrust Act and Chapter 93A was a special point of focus for the Legislature when the Antitrust Act was enacted. The history also shows, however, that with respect to the interrelation of the two statutes, there was consistently drawn a distinction between consumers and businesses. All the bills leading up to St.1978, c. 459, provided in substance that the Antitrust Act was to be construed in harmony with interpretations of the Federal antitrust statutes, and Chapter 93A was not generally to be affected by the Antitrust Act. But (with the exception of 1977 House Bill No. 1251) these bills also had sections that dealt specifically with § 11 of Chapter 93A. This same distinction obviously appears in St.1978, c. 459. Read against this background, the language generally separating Chapter 93A from the Antitrust Act is reasonably understood to reflect a legislative determination that in contrast to its effect on businesses, the new antitrust legislation was not to have any impact on individual consumers'(or the Attorney General's) available causes of actions and remedies under Chapter 93A.

*7 It may be argued that the lack of attention paid to consumers in 1977 and 1978 is not significant, because at that time, G.L. c. 93A, § 9, did not authorize a consumer to bring suit against a defendant if there was no privity in the relationship. See G.L. c. 93A, § 9, as amended through St.1973, c. 939. The argument would be that the Legislature had no reason to be concerned in 1978 about the possibility that consumers as indirect purchasers might make an "end run" around the restriction on their standing to sue under the Antitrust Act which the *Illinois Brick* decision imposed, because consumers as indirect purchasers had no standing under Chapter 93A in any event. This argument should fail. Section 9(1) of Chapter 93A was amended in 1979 to remove the requirement of privity with respect to consumer suits, only one year after the passage of the Antitrust Act. See St.1979, c. 406, § 1. The *Illinois Brick* case had been decided two years earlier, in 1977. The Legislature had demonstrated it was very aware of the connection between the Antitrust Act and Chapter 93A when it enacted the former statute in 1978, but nothing in the legislative history of St.1979, c. 406, suggests any concern about the possibility that consumers, freed of the privity requirements originally incorporated into Chapter 93A, § 9(1), might have available to them through § 9 an avenue of relief against anti-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

competitive conduct that was foreclosed by the Antitrust Act. Again, the history of the Legislature's handling of Chapter 93A, § 11, in relation to the Antitrust Act indicates that if the Legislature were uneasy about consumers' potentially inconsistent causes of action under the Antitrust Act and Chapter 93A, it would have addressed the issue specifically when it amended Chapter 93A, § 9(1), in 1979.

The defendants point to decisions in other States in which courts have concluded that consumers who are indirect purchasers do not have standing to sue for alleged price-fixing or other anti-competitive conduct under consumer protection statutes when state antitrust statutes bar suits by indirect purchasers. See *Abbott Labs., Inc. v. Segura,* 907 S.W.2d 503, 505-06 (Tex.1995). See also *Blewett v. Abbott Labs.,* 86 Wash.App. 782, 785, 786-89 (1997). Cf. *Laughlin v. Evanston Hosp.,* 133 Ill.2d 374, 550 N.E .2d 986, 993 (1990) (where State's antitrust act is interpreted to preclude recovery for claims of non-predatory price discrimination, State's consumer fraud statute will be similarly construed not to include such price discrimination as an unfair or deceptive act or practice; to do otherwise would be inconsistent and incongruous). But see *Mack v. Bristol-Myers Squibb Co.,* 673 So.2d 100, 104-05, 106 10 (Fla.App.1996), review dismissed, *Bristol-Myers v. Mack,* 689 So.2d 1068 (Fla.1997) (although plaintiff, an indirect purchaser, had no standing under Florida antitrust statute to sue manufacturers of infant formula for alleged price-fixing conduct, she stated a claim for relief under the separate Florida deceptive and unfair trade practices [consumer protection] statute, and the two statutes could operate harmoniously with different standing rules); [FN19] *Blake v. Abbott Labs., Inc.,* 1996 WL 134947 (Tenn .Ct.App.1996) (Tennessee antitrust act should be interpreted to permit suits by indirect purchasers; the same should be true of Tennessee consumer protection statute). These decisions, which come down on both sides of the question presented here, are of limited value in helping to decide the meaning of the Massachusetts consumer protection and antitrust statutes. There are distinctions to be drawn between the statutes involved in each of these cases and the two relevant Massachusetts statutes in terms of language and history. In the end the question is one of discerning the intent of the Massachusetts Legislature, and other States' statutes and decisions do not speak to this issue.

> FN19. Although the court in the *Mack* case concluded that the Florida consumer protection statute should be interpreted to afford standing to consumers suing as indirect purchasers for alleged price-fixing by manufacturers, it nonetheless certified this question to the Florida Supreme Court. *Mack v. Bristol-Myers Squibb Co.,* 673 So.2d 100, 110-11 (Fla.App.1996). The Florida Supreme Court, however, dismissed the certification as moot. *Bristol-Myers Squibb Co. v. Mack,* 689 So.2d 1068 (Fla.1997).

**\*8** The defendants also contend that strong policy considerations counsel against interpreting G.L. c. 93A, § 9, to authorize the plaintiff as an indirect purchaser to bring a price-fixing claim when she may not do so under the Antitrust Act. One of those considerations is the incongruity of permitting a consumer to bring a cause of action under Chapter 93A for what might be deemed an antitrust violation when she cannot do so under the Antitrust Act. In addition, the defendants point to the practical problems of duplicative recovery and of proving damages. These were problems discussed in the *Illinois Brick* decision, and one of the reasons the Court interpreted the Federal antitrust statutes to preclude suits by indirect purchasers. *Illinois Brick,* 431 U.S. at 730-43. These are all matters as serious concern. But in *California v. ARC America Corp., supra,* the Supreme Court plainly stated that States were free to allow indirect purchasers to recover under State laws, see 490 U.S. at 103, and for the reasons discussed above, there is no evidence that the Legislature intended to limit the broad

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

scope of Chapter 93A in relation to actions by indirect purchaser-consumers who seek to challenge alleged price-fixing or other forms of anti-competitive conduct.

In sum, despite the policy issues raised by the defendants, the language and history of the Antitrust Act and of Chapter 93A persuade me at this stage of the case that the plaintiff has stated a claim under c. 93A, § 9, upon which relief may be granted. The defendants' motion to dismiss in its entirety Count II of the amended complaint should be denied.

II. Notice of Claims

The defendants argue that they were not put on fair notice of the claims against them. They point to a lack of any specifics in the complaint regarding dates, meetings, or products affected in claiming that they were not fairly appraised of the claims against them. Under Mass.R.Civ.P. 8(a)(1), a complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief ..." Further, Mass.R.Civ.P. 8(e)(l) states that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." "Under this rule, if a plaintiff fairly notifies the defendant of the nature of the plaintiff's claim and the grounds on which he relies, the action should not be dismissed because it does so through what might be termed 'conclusions of law.' " Mass.R.Civ .P. 8, Reporter's Notes. "Nevertheless the Rules are not designed to encourage a plaintiff to put in a grievously murky complaint, without sufficient attention to its basis in the substantive law, in hopes of somehow finding something helpful to his case in the course of the discovery procedure." *Charbonnier v. Amico,* 367 Mass. 146, 153 (1975).

The complaint here is sufficient to put the defendants on notice of the allegations made against them. See *Jessie v. Boynton,* 372 Mass. 293, 304 (1977). The face of the complaint indicates the plaintiff has alleged that through various discussions and meetings the defendants agreed to inflate artificially the prices of the various vitamin products. It is not necessary for the plaintiff to set forth the specifics at this point. See, e.g., *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 291 (1st Cir.1987); *Julius Nasso Concrete Corp. v. DIC Concrete Corp.,* 467 F.Sup. 1016, 1025 (S.D.N.Y.1979). The plaintiff is entitled to discovery in this case. For now, it is enough that the defendants have been warned of the claims against them so that they may prepare their defense. See *Friedman v. Jablonski,* 371 Mass. 482, 488 (1976). The complaint has fairly warned the defendants of the allegations against them involving a large scale, world-wide conspiracy to fix the prices of vitamin products and fix the bidding on certain contracts. If, after discovery, no facts have been developed to support these allegations with respect to one or more, or all, of the defendants, summary judgment motions are available. The defendants' motions to dismiss under Rule 8(a)(l) must be denied.

V. Fraudulent Concealment

*9 The complaint in this case was filed on June 29, 1999. The statute of limitations for violations of G.L. c. 93A claims is four years. See G.L. c. 260, § 5A. In anticipation of the defendants' statute of limitations defense, the plaintiff alleges fraudulent concealment in the complaint in an attempt to toll the limitations period. See G.L. c. 260, § 12, which permits the statute of limitations to be tolled where a person potentially liable to another "fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it ... Absent the tolling statute, the plaintiff's consumer protection claims would be limited to damages arising after June 29, 1995.

Under Mass.R.Civ.P. 9(b), a plaintiff must plead fraud with particularity. This requirement also applies to a claim of fraudulent concealment of the cause of action. See *Maloney v. Brackett,* 275 Mass. 479, 484 (1931). Cf. *In re Vitamins Antitrust Litigation,* Misc. No. 99-197 (D.D.C.), Memorandum Opinion Re: Motions to Dismiss dated May 9, 2000, slip op. at 3-5 (pleading requirements of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)
**(Cite as: 2000 WL 33162197 (Mass.Super.))**

Page 11

claim for fraudulent concealment under Federal antitrust statutes). In the last-cited decision, the court rejected motions to dismiss the fraudulent concealment allegations of complaints similarly alleging a conspiracy by the manufacturers as vitamin products to fix prices and take other concerted action in restraint of trade. *Id.,* slip op. at 5-15. It appears that the allegations of those complaints were very similar to the plaintiff's allegations of fraudulent concealment, and I similarly conclude that while they are hardly a model of specificity, in the context of the complaint, the allegations are sufficient to satisfy the requirements of Rule 9(b). There will be time enough after discovery for the defendants to proceed with a summary judgment motion concerning their statute of limitations claim.

### ORDER

For the foregoing reasons, the defendants' motions to dismiss the plaintiff's claim of coercive civil conspiracy (Count I of the first amended class action complaint) under Mass.R.Civ.P. 12(b)(6) are allowed, and their Rule 12(b)(6) motions to dismiss the claim of violation of G.L. c. 93A are denied. The defendants' motions to dismiss the plaintiff's claims under Mass.R.Civ.P. 9(b) and 8(a)(1) are also denied. Counsel are requested to contact the clerk of the "E" Session in Boston to schedule a brief conference on this case, and in particular the question of whether or not this decision on the Chapter 93A claim should be reported pursuant to Mass.R.Civ.P. 64.

Mass.Super.,2000.
Ciardi v. Hoffmann-LaRoche, LTD
Not Reported in N.E.2d, 2000 WL 33162197 (Mass.Super.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.