# EXHIBIT V



Not Reported in A.2d, 2004 WL 3030037 (Vt.Super.)
**(Cite as: 2004 WL 3030037 (Vt.Super.))**



Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Vermont, Chittenden County.
Anthony J. FUCILE
v.
VISA U.S.A. INC. and Mastercard International, Inc.

No. S1560-03 CNC.
Dec. 27, 2004.

John T. Sartore of Paul Frank & Collins, P.C., Burl-
ington, VT; Stephen V. Bomse and David M. Gold-
stein of Heller Ehrman White & McAuliffe LLP,
San Francisco, CA; Robert C. Mason of Arnold &
Porter LLP, New York, NY, for Defendant Visa
U.S.A. Inc.

Samuel Hoar, Jr. of Dinse, Knapp & McAndrew,
Burlington, VT; Kenneth A. Gallo and Patricia C.
Crowley of Paul, Weiss, Rifkind, Wharton & Gar-
rison LLP, Washington, DC; Gary R. Carney and
Randi D. Adelstein of Paul, Weiss, Rifkind, Whar-
ton & Garrison LLP, New York, NY, for Defendant
MasterCard International Incorporated.

Robert A. Mello of Mello & Klesch, LLP, South
Burlington, VT; David Markun, Edward S. Zusman
and Kevin Eng of Markun Zusman Compton &
David, LLP, San Francisco, CA, for Plaintiffs.

ENTRY
NORTON, J.

**\*1** The plaintiff, Anthony J. Fucile, sues Visa
and Mastercard on behalf of himself and all simil-
arly situated individuals for damages incurred by
purchasing products sold by merchants who used
the defendants' debit card services. Mr. Fucile
claims that because of the defendants' antitrust viol-

ations, merchants were forced to pay higher costs
for the use of debit cards. The merchants, in turn,
passed these costs along to consumers through the
price of the goods they sold. Mr. Fucile brings this
action under the Vermont Consumer Fraud Act.
The defendants move to dismiss for failure to state
a claim upon which relief can be granted, pursuant
to Rule 12(b)(6) of the Vermont Rules of Civil Pro-
cedure. Because Mr. Fucile lacks standing under
the Consumer Fraud Act, the court dismisses his
complaint.

This action stems from a class action in the
U.S. District Court for the Eastern District of New
York. In that action, a class of retailers sued Visa
and Mastercard for antitrust violations, claiming
that the two defendants illegally required retailers
to accept debit card services along with credit card
services. The parties settled before trial, resulting in
more than $3 billion in damages and injunctive re-
lief worth between $25 billion to $87 billion. See
generally In re Visa Check/Mastermoney Antitrust
Litig., 297 F.Supp.2d 503 (E.D.N.Y.2003).

Mr. Fucile now seeks damages as a consumer
from merchants affected by the antitrust violations
at issue in the prior class action litigation, claiming
that these violations constituted an unfair method of
competition within the meaning of 9 V.S.A. §
2453(a). Mr. Fucile claims standing to bring this
claim not as a purchaser, because he did not actu-
ally purchase the financial services from the de-
fendants, but as an "indirect purchaser."

The defendants, however, argue that Mr. Fucile
is neither a direct purchaser nor an indirect pur-
chaser. Rather, he is a "non-purchaser," because he
did not actually receive the financial services that
were affected by the defendants' antitrust violation.
Mr. Fucile merely complains about prices of goods
that may or may not have been affected by the price
of the defendants' financial services. Therefore, the
defendants argue, he lacks standing.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2004 WL 3030037 (Vt.Super.)
(Cite as: 2004 WL 3030037 (Vt.Super.))

A motion to dismiss for failure to state a claim upon which relief can be granted will issue only if it is beyond doubt that there exists no facts or circumstances that entitle a plaintiff to relief. *Powers v. Office of Child Support,* 173 Vt. 390, 395 (2002). In a motion to dismiss, the court assumes all facts that a plaintiff pleads are true and disregards all of a defendant's contrary assertions. *Id.* Here, the dispositive issue is whether a person in Mr. Fucile's position, having not actually acquired the product or service that is alleged to be tainted by unlawful trade, can seek damages under the Consumer Fraud Act. Because this standing issue is one of law, it is appropriate for disposition on a motion to dismiss for failure to state a claim upon which relief can be granted. See, e.g., *Parker v. Town of Milton,* 169 Vt. 74, 76-79 (1998).

**\*2** The Consumer Fraud Act, literally read, provides limitless standing to any consumer. See 9 V.S.A. § 2451a(a) (defining consumer as "any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services"). Courts will not, however, interpret statutes in a manner that leads to "absurd results manifestly unintended by the Legislature." *In re G.T.,* 170 Vt. 507, 517 (2000). Although courts should interpret the Consumer Fraud Act liberally in order to serve its remedial purpose, courts should not "so freely stretch its meaning as to evade the Legislature's intent." *Wilder v. Aetna Life & Cas. Ins. Co.,* 140 Vt. 16, 19 (1981). Thus, the court must define some limits to who may have standing to sue under the Consumer Fraud Act.

Although federal courts have limited antitrust actions to "direct purchasers" of goods or services, see *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 746 (1977), Vermont has expressly disagreed with this limitation and allowed indirect purchaser suits under state law. See 9 V.S.A. § 2465(b); *Elkins v. Microsoft Corp.,* 174 Vt. 328, 337-38. (2002). But the standing issue in the instant case is a separate matter from the indirect purchaser issue. Indeed, the *Illinois Brick* Court did not address standing, stat-

ing that the indirect purchaser issue "is analytically distinct from the question of which persons have sustained injuries too remote to give them standing to sue for damages." *Illinois Brick.* 431 U.S. at 728 n. 7. Despite his claim that he qualifies as an "indirect purchaser," Mr. Fucile is far more remote than the plaintiff in *Elkins.* In *Elkins,* the plaintiff had actually acquired the product that was allegedly tainted by unfair methods of competition. See *Elkins,* 174 Vt. at 333. Here, Mr. Fucile never actually purchased the tainted financial services, but merely claims damages through the purchase of other products, the price of which may or may not have been affected by the financial services. Therefore, despite Vermont's indirect purchaser rule, the court must still determine if Mr. Fucile has standing given his remote relationship to the alleged wrongdoing.

Federal courts have generally split into two camps with respect to antitrust standing. Some courts have opted for the "direct injury" test, which focuses on the relationship between the parties. Under this test, if the plaintiff is separated by intermediate victims, courts usually deny standing. See Annotation, " *Target Area" Doctrine as Basis For Determining Standing to Sue Under § 4 of Clayton Act (15 U.S.C.A. § 15) Allowing Treble Damages For Violation of Antitrust Laws,* 70 A.L.R. Fed. 637, § 2[a]. Other courts have used the "target area" test, which focuses on the general area of the economy injured by the antitrust violator. See *id.*

The Supreme Court has not endorsed either test, but it has provided factors that lower courts should consider in determining standing. *Associated Gen. Contractors v. Calif. State Council of Carpenters,* 459 U.S. 519, 537 n. 33 (1983). These factors include (1) whether there is a causal connection between the antitrust violation and the alleged harm, *id.* at 537; (2) the directness of the injury, considering the "chain of causation," *id.* at 540; (3) whether the violator had an improper motive, *id.* at 537 and n. 35; (4) whether the plaintiff's injury was of a type that Congress sought to redress by provid-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2004 WL 3030037 (Vt.Super.)
**(Cite as: 2004 WL 3030037 (Vt.Super.))**

ing a private remedy, *id.* at 538; (5) whether the alleged damages are speculative, *id.* at 542; and (6) whether the nature of the action will keep "the scope of complex antitrust trials within judicially manageable limits," *id.* at 543.

**\*3** Simply by glancing at these factors, one can see that the Court did not pull them from thin air. Rather, they reflect the Court's standing factors to determine whether a case or controversy exists, pursuant to Article III of the Constitution.[FN1] The three primary factors in this context are (1) injury, (2) causation, and (3) redressibility. See *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). The Vermont Supreme Court has expressly adopted these factors in other contexts. See, e.g., *Agency of Natural Resources v. U.S. Fire Ins. Co.,* 173 Vt. 302, 306 (2001). Although the Vermont Consumer Fraud Act has broader remedial purposes than federal statutes, the court nevertheless believes that the Vermont Supreme Court would also draw upon the standing factors in *Associated General Contractors* for guidance, at least to the extent that these factors are consistent with allowing "indirect purchaser" standing.

> FN1. The Court has noted that antitrust standing is somewhat different from constitutional standing because it requires additional considerations, but both share the same basic requirements. See *Associated Gen. Contractors,* 459 U.S. at 535 n .31.

Therefore, in applying the general factors of *Associated General Contractors,* the court holds that Mr. Fucile does not have standing in this case. First, the causal chain here is simply too long. Mr. Fucile's damages are through an alleged inflated cost of goods sold by merchants who were injured by the defendants' inflated cost of financial services. He would have to demonstrate that the merchants actually passed their costs along to consumers through the price of their goods, rather than absorbing them by other means. The court would need to consider all other potential causes of inflated costs, such as any number of supply prob-

lems that affected the price of each different product the plaintiff class bought in Vermont during the relevant time period. This exercise in speculation extends far beyond a court's abilities. Although causation may be indirect, given the indirect purchaser rule in Vermont, it cannot extend beyond a reasonable length, as it does here. Thus, factors (1) and (2) weigh against standing.

Second, the defendants' intent in this case weighs in favor of standing. Although the complaint is unclear as to the defendants' intent to violate antitrust law, the extent of money that the defendants allegedly made because of their tying arrangement demonstrates that their actions were intentional. Moreover, the defendants are associations providing financial services to thousands of banks. One cannot imagine that they lack familiarity with antitrust laws in conducting their business, so inferring intent here is appropriate. Therefore, factor (3) weighs in favor of standing for Mr. Fucile.

Third, the injury here does not appear to be a type that the Legislature intended to redress through the Consumer Fraud Act. Although, as the Vermont Supreme Court has stated many times, courts should construe the Act liberally to effectuate its remedial purpose, the court cannot imagine that the Legislature intended the Act to redress injuries to all consumers, even those whose contact to the goods or services tainted by unfair competition is remote and tangential. One could divine any number of hypothetical scenarios analogous to this case that highlight the absurdity of allowing standing under these circumstances.

**\*4** For instance, assume the plaintiff in *Elkins* was not a computer purchaser, but a client whose attorney provided legal services using Microsoft software. The client could claim that her bill was slightly higher because the attorney was forced to pay a higher price for the software because of Microsoft's antitrust violations. Whether or not the client's alleged injury is accurate, the court cannot reasonably assume that the Legislature intended the Consumer Fraud Act to extend limitlessly. As

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2004 WL 3030037 (Vt.Super.)
**(Cite as: 2004 WL 3030037 (Vt.Super.))**

Justice Brennan acknowledged in his *Illinois Brick* dissent, "[t]here is, of course, a point beyond which antitrust defendants should not be held responsible for the remote consequences of their actions." 431 U.S. at 749 n. 2. The plaintiff here extends far beyond this point. Thus, factor (4) weighs against standing.

Finally, the alleged damages are highly speculative. Assuming that the merchants actually passed along added expenses in the price of goods sold, the court would need to determine the degree to which these expenses were passed along. This degree may vary from one good to another. For instance, merchants may pass on greater costs in product markets that are relatively inelastic and fewer costs in product markets that are relatively elastic. See *Illinois Brick,* 431 U.S. at 750 n. 3 (Brennan, J., dissenting). The court would then have to determine actual sales of goods to the plaintiff class during the relevant time period. Consumer fraud cases typically venture into the field of approximation, see *id.* at 758-59 (Brennan, J., dissenting), but these alleged damages venture into uncharted territories of sheer guesswork. Factors (5) and (6) therefore weigh against standing.

Tallying the above analysis, the court grants the defendants' motion to dismiss. The court also notes that even should the Vermont Supreme Court ultimately adopt a different standard than that in *Associated General Contractors,* such as the "target area" test as it existed prior to *Associated General Contractors,* this court would still dismiss. In its most liberal manifestation, the target area test considered not only whether an antitrust violator's actions were aimed at a particular sector of the market, but whether the violator could have foreseen that its actions would affect the sector. See, e.g., *Mulvey v. Samuel Goldwyn Prod.,* 433 F.2d 1073, 1076 (9th Cir.1970); see also *Hlinois Brick,* 431 U.S. at 760 and n. 18 (Brennan, J., dissenting) (discussing "more liberal" target area test). Even under this test, Mr. Fucile lacks standing. The defendants could not be expected to foresee an anti-

trust violation affecting merchants to result in increased cost of goods throughout the entire consumer base and to so injure that consumer base as to result in liability to every consumer in the country. General consumers were not the target area of the defendants' actions; merchants were. Therefore, the court would grant the defendants' motion using this test, as well.

**\*5** Finally, the court briefly addresses Mr. Fucile's request that the court permit an amended answer to allow a narrower class, defined as those consumers who used debit cards in their transactions. The court denies this request, as it would not result in a different ruling. Mr. Fucile lacks standing because his injury-as a general consumer of products that are not directly related to the defendants' financial services-is too remote. Whether he used a debit card, a credit card, a check, or cash is irrelevant. His injury would still be that of a general consumer, and he would lack standing.

ORDER

For the foregoing reasons, the defendant's motion to dismiss is GRANTED.

JUDGMENT FOR DEFENDANTS

The court having

granted the defense motion for

dismissal

judgment is entered for defendants, this action is dismissed.

Vt.Super.,2004.
Fucile v. Visa U.S.A., Inc.
Not Reported in A.2d, 2004 WL 3030037 (Vt.Super.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.