# EXHIBIT Z



Not Reported in N.W.2d, 2012 WL 1623525 (Mich.App.)
**(Cite as: 2012 WL 1623525 (Mich.App.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED

Court of Appeals of Michigan.
In re ESTATE OF VERPLOEGH.
Angelina Clark, Personal Representative for the Estate of Mark Verploegh, Plaintiff–Appellant,
v.
DR. Edward Haughn, Do, and Doctors Group PC d/b/a Suburban Medical Centers, Defendants–Appellees.

Docket No. 303296.
May 8, 2012.

Kalamazoo Circuit Court; LC No.2010–000396–NH.

Before: BECKERING, P.J., and OWENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

**\*1** In this wrongful-death and medical malpractice action, plaintiff Angelina Clark, Personal Representative of the Estate of Mark Verploegh, appeals the trial court's order granting summary disposition in favor of defendants Doctors Group P.C. and Dr. Edward Haughn. We affirm.

I. PERTINENT FACTS

Dr. Haughn began treating Mark Verploegh in 1999. Verploegh had a medical history of chronic pain, depression, panic attacks, and epilepsy. Dr. Haughn prescribed hydrocodone to Verploegh seventeen times from 1999 to 2000. In 2000, Verploegh stopped seeing Dr. Haughn but continued to receive medication from other doctors. Verploegh returned to Dr. Haughn in 2003, and Dr. Haughn prescribed hydrocodone, alprazolam (Xanax), and methadone. From October 6, 2003, to July 23, 2007, Dr. Haughn neither treated Verploegh nor prescribed him medication. Verploegh returned to Dr. Haughn for treatment on July 23, 2007, August 11, 2007, September 12, 2007, and September 20, 2007. Dr. Haughn prescribed Verploegh Xanax, diazepam (Valium), methadone, Keppra, Depakote, and Prozac. Verploegh's last office visit with and prescription from Dr. Haughn was on September 20, 2007.

Dr. Steve Reiman began treating Verploegh on or about January 31, 2008. Verploegh took alprazolam and methadone prescribed by Dr. Reiman from January 31, 2008, to June 16, 2008. Verploegh's medical records with Dr. Reiman "show that [Verploegh] exhibited clear symptoms of someone addicted to pain medication, mainly methadone, including discharge from several medical practices, multiple prescriptions from many physicians, running out of doses early, and verbal abuse of prior physicians and their staff."

During the afternoon on June 18, 2008, Verploegh went to a friend's home and spent the night. At some point, Verploegh's friend left the home for a short time and, when he returned, found Verploegh snoring loudly on the couch. In the early morning on June 19, 2008, Verploegh's friend heard Verploegh cough loudly, and Verploegh stopped breathing. Verploegh's friend called 911, but Verploegh ultimately died. Prescription bottles of Xanax and methadone were in Verploegh's jacket pocket. Dr. Michael A. Markey, who performed an autopsy on Verploegh, noted that a prescription for 90 tablets of methadone (three tablets to be taken per day) dated June 16, 2008, was found empty in Verploegh's pocket. A recently filled prescription of Xanax, containing only three of the original 30 pills prescribed, was also in Verploegh's pocket. Toxicology testing detected large concentrations of methadone and alprazolam in Verploegh. Dr. Markey opined that Verploegh "most likely died of a multiple drug (methadone and alprazolam) intoxic-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2012 WL 1623525 (Mich.App.)
**(Cite as: 2012 WL 1623525 (Mich.App.))**

ation." With respect to the manner of Verploegh's death, Dr. Markey opined as follows:

> Given [Verploegh's] history of depression with prior suicide attempts and the empty bottle of methadone and near empty bottle of Xanax (alprazolam) that were filled only a few days prior to his death, I believe there is a reasonable possibility that he intentionally ingested a large number of pills in order to harm himself. However, he does have a history of drug abuse and it is also reasonably possible that he was abusing the medications for recreational purposes. As both possibilities are reasonable and I cannot exclude either with a significant degree of certainty, the manner of death is classified as undetermined.

## II. ANALYSIS

*2 The only issues before this Court are (1) whether the trial court erred when it granted summary disposition in favor of defendants on the basis that plaintiff failed to establish causation and (2) whether the trial court abused its discretion when it denied plaintiff's motion for reconsideration.

We review a trial court's summary-disposition ruling de novo. *Maiden v. Rozwood,* 461 Mich. 109, 118; 597 NW2d 817 (1999). When reviewing a motion brought under MCR 2.116(C)(10), we consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties in a light most favorable to the nonmoving party. *The Cadle Co. v. City of Kentwood,* 285 Mich.App 240, 247; 776 NW2d 145 (2009). "[T]his Court will not consider evidence that had not been submitted to the lower court at the time the motion was decided." [FN1] *In re Rudell Estate,* 286 Mich.App 391, 405; 780 NW2d 884 (2009). A motion for summary disposition under MCR 2.116(C)(10) may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Campbell v. Dep't of Human Servs.,* 286 Mich.App 230, 235; 780 NW2d 586 (2009). Furthermore, we review a trial court's ruling on a motion for reconsideration for an abuse of discretion. *Corporan v. Henton,* 282 Mich.App 599, 605; 766 NW2d 903 (2009). A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes. *Id.* at 605–606.

> FN1. To the extent that the parties have submitted such evidence to this Court, we do not consider it.

"Proof of a medical malpractice claim requires the demonstration of the following factors: (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Locke v. Pachtman,* 446 Mich. 216, 222; 521 NW2d 786 (1994), citing MCL 600.2912a. " 'Proximate cause' is a term of art that encompasses both cause in fact and legal cause." *Robins v. Garg (On Remand),* 276 Mich.App 351, 362; 741 NW2d 49 (2007). "As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate cause or legal cause of those injuries." *Craig v. Oakwood Hosp.,* 471 Mich. 67, 87; 684 NW2d 296 (2004).

"The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* at 86–87, quoting *Skinner v. Square D Co.,* 445 Mich. 153, 163; 516 NW2d 475 (1994). "While a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act or omission was *a* cause." *Id.* at 87 (emphasis in original). "[A] plaintiff cannot satisfy this burden by showing only that the defendant *may* have caused his injuries." *Id.* (emphasis in original). "Rather, a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he 'set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect.' " *Id.,* quoting *Skinner,* 445 Mich. at 174. "A valid theory of causation, therefore, must be based on facts in evidence." *Id.* Although the evidence need not negate

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2012 WL 1623525 (Mich.App.)
**(Cite as: 2012 WL 1623525 (Mich.App.))**

all other possible causes, the evidence must "exclude other reasonable hypotheses with a fair amount of certainty." *Id.* at 87–88.

**\*3** "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and ... [that] the result of that conduct and intervening causes were foreseeable." *Lockridge v. Oakwood Hosp.,* 285 Mich.App 678, 684; 777 NW2d 511 (2009). "An intervening cause is not an absolute bar to liability if it is foreseeable." *Richards v. Pierce,* 162 Mich.App 308, 317; 412 NW2d 725 (1987). "Consequences of a doctor's negligent acts in treating the plaintiff's original injury are considered foreseeable." *Id.*

We conclude that the trial court properly granted summary disposition in favor of defendants because plaintiff cannot establish that an act or omission by defendants was a cause in fact of Verploegh's death. More specifically, plaintiff cannot establish that Verploegh would have lived but for Dr. Haughn's acts and omissions during the four visits in 2007. Verploegh died nine months after he last visited Dr. Haughn; his death "was too remote in time, and likely too influenced by intervening factors, to establish a question of material fact regarding the causation element." See *Teal v. Prasad,* 283 Mich.App 384, 390; 772 NW2d 57 (2009) (death too remote in time where decedent committed suicide eight days after discharge from hospital). Furthermore, the factual evidence in this case indicates that it is just as reasonable to conclude that Verploegh committed suicide as it is to conclude that he accidently died because of a mixed-drug overdose induced by his drug addiction. The "reasonable hypothesis" that Verploegh committed suicide cannot be excluded with "a fair amount of certainty" to demonstrate factual causation. See *Craig,* 471 Mich. at 87–88.

Plaintiff contends that defendants caused Verploegh's death because Dr. Haughn continued to prescribe methadone and Xanax to Verploegh during the four visits that Verploegh had with Dr. Haughn in 2007. However, Dr. Haughn's prescriptions of methadone and Xanax in 2007 cannot provide a basis for factual causation. Dr. Haughn did not prescribe the methadone and Xanax that caused Verploegh to die of drug intoxication; rather, the methadone and Xanax that killed Verploegh were prescribed by another doctor. See generally *Posner v. Walker,* 930 So2d 659, 666 (Fla App 3rd Dist, 2006) (physician defending a medical-malpractice claim did not cause patient's death where the drugs that killed the patient were prescribed by another physician). One cannot reasonably infer that Verploegh would not have visited Dr. Reiman on June 16, 2008, obtained a prescription for methadone and Xanax, and died two days later from ingesting "large" and "significant" amounts of the methadone and Xanax if Dr. Haughn had not prescribed methadone and Xanax to Mark about nine months earlier. See *Craig,* 471 Mich. at 87.

Plaintiff also contends that defendants caused Verploegh's death because Dr. Haughn failed to intervene and recommend detoxification and rehabilitation to Verploegh during the four visits in 2007. But this also does not provide a basis for factual causation. Certainly Verploegh *may* have been able to detoxify and overcome his addiction and, thus, not need to obtain the methadone and Xanax from Dr. Reiman on June 16, 2008, had Dr. Haughn referred him for drug rehabilitation. But, plaintiff cannot satisfy the cause-in-fact requirement merely because Verploegh *may* have detoxified and overcome his addiction had Dr. Haughn referred him for drug rehabilitation. See *id.* Rather, the cause-in-fact requirement "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury *would not have* occurred." *Id.* at 86–87 (emphasis added). "[A] physician ... cannot make his patients do exactly as he tells them. He can only give advice and treatment alternatives, then let them make choices." *Posner,* 930 So2d at 666. There are no facts in evidence that reasonably indicate that Verploegh would have sought detoxification and rehabilitation treatments had Dr. Haughn advised him to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in N.W.2d, 2012 WL 1623525 (Mich.App.)
**(Cite as: 2012 WL 1623525 (Mich.App.))**

do so. See *id.* at 667 (no causation under failure-to-refer theory where the record did not support a finding that the patient would have followed the defendant physician's advice of seeking alternative treatment). The limited record evidence indicates that Verploegh would not have followed such a recommendation by Dr. Haughn; Verploegh had a history of verbally abusing his previous physicians and their staff and of being discharged from several medical practices. Indeed, Dr. Haughn once terminated the physician-patient relationship with Verploegh in 2003 because a "satisfactory relationship" could not exist. Furthermore, even assuming that Verploegh would have attended rehabilitative services if advised to do so by Dr. Haughn, it would be speculative given the record before this Court to find that Verploegh would have successfully detoxified, overcome his addiction, not seen Dr. Reiman on June 16 to obtain the methadone and Xanax, and not taken the significant quantities of the methadone and Xanax that killed him on June 19.[FN2] "[A] plaintiff cannot establish causation if the connection made between the defendant's negligent conduct and the plaintiff's injuries is speculative or merely possible." *Teal,* 283 Mich.App at 392. The connection between Dr. Haughn's failure to intervene and Verploegh's death is speculative. See *id.*

> FN2. Defendants' appellate brief contains documentary evidence that in December, 2007, Verploegh attended and graduated from the inpatient unit of the Jim Gilmore Center, which provides programs for detoxification, to demonstrate that rehabilitative efforts were employed following Dr. Haughn's care and were unsuccessful. We decline to consider this evidence. While defendant presented this evidence to the trial court in response to plaintiff's motion for reconsideration, it was not presented to the trial court at summary disposition. See *In re Rudell Estate,* 286 Mich.App at 405 ("When reviewing a decision on a motion for summary disposition, this Court will not consider evidence that had not been submitted to the lower court at the time the motion was decided.").

**\*4** Plaintiff also argues that, regardless of whether Dr. Haughn proximately caused Verploegh's death, as Verploegh's mother she is entitled to damages for her loss of society and companionship of her son while he was alive because Dr. Haughn's commission of medical malpractice by prescribing narcotics and other medications prevented Verploegh from carrying on a meaningful relationship with her. At the outset, we conclude that this unpreserved issue is abandoned because plaintiff did not raise it in her statement of questions presented. See *Ypsilanti Fire Marshal v. Kircher,* 273 Mich.App 496, 543; 730 NW2d 481 (2007). But, notwithstanding plaintiff's abandonment of this issue, her argument lacks merit. Michigan common law does not recognize a parent's action for loss of a child's society and companionship when a child has been negligently injured. *McClain v. Univ. of Mich. Bd. of Regents,* 256 Mich.App 492, 495–496; 665 NW2d 484 (2003); see also *Sizemore v. Smock,* 430 Mich. 283, 285; 422 NW2d 666 (1988) Furthermore, the wrongful death act does not provide for an award of loss of society and companionship while Verploegh was alive. MCL 600.2922(6). Instead, the act specifically limits loss-of-society-and-companionship damages to "the loss of society and companionship *of the deceased.*" MCL 600.2922(6) (emphasis added). "A claim for loss of society and companionship under the wrongful death act addresses compensation for the destruction of family relationships that results *when one family member dies.*" *McTaggart v. Lindsey,* 202 Mich.App 612, 616; 509 NW2d 881 (1993) (emphasis added); see also *Sizemore v. Smock,* 430 Mich. at 296–298 (the wrongful-death act's allowance of consortium damages does not similarly allow such damages when a negligently inflicted injury is less than fatal, so as to allow a parent's action for loss of a child's society and companionship when the child has been negligently injured). Plaintiff cannot recover the damages she seeks.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2012 WL 1623525 (Mich.App.)
**(Cite as: 2012 WL 1623525 (Mich.App.))**

Page 5

Accordingly, the trial court did not erroneously grant summary disposition in favor of defendants. And, consequently, the trial court did not abuse its discretion when it denied plaintiff's motion for reconsideration.

Affirmed.

Mich.App.,2012.
In re Estate of Verploegh
Not Reported in N.W.2d, 2012 WL 1623525 (Mich.App.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.