# EXHIBIT GG



Page 1

Not Reported in N.W.2d, 2010 WL 143470 (Mich.App.)
**(Cite as: 2010 WL 143470 (Mich.App.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED

Court of Appeals of Michigan.
Sebra V. ISOM, Bernard E. Johnson, Christopher L. Johnson, Franklin D. Johnson, Gregory Johnson, Joseph D. Johnson, and Kenneth Johnson, Plaintiffs–Appellees,
v.
NE LOTS LLC, Defendant–Appellant.

Docket No. 288378.
Jan. 14, 2010.

West KeySummary**Deeds 120** 🗝121

120 Deeds
    120III Construction and Operation
        120III(C) Estates and Interests Created
            120k121 k. Operation of quitclaim deed.
Most Cited Cases

    Quitclaim deeds assigning the right to receive proceeds from the sale of property did not entitle assignee to payments received by assignors from a settlement related to a contest of the deceased property owner's will. The language in the quitclaim deeds did not cover payments received by assignors as a result of the settlement because the settlement was related to the estate of decedent as a whole, and not to the specific property in question. Accordingly, payments received as a result of the settlement were not equivalent to payments received out of the proceeds of a sale of the property.

Lake Circuit Court; LC No. 07–007208–CK.

Before: STEPHENS, P.J., and GLEICHER and M.J. KELLY, JJ.

PER CURIAM.

    ***1*** In this suit for declaratory relief, defendant NE Lots, LLC (NE Lots) appeals as of right the trial court's order granting summary disposition in favor of plaintiffs and declaring that NE Lots does not have any legal right to payments received by plaintiffs under a settlement agreement that plaintiffs made with a third party. Because we conclude the trial court properly granted summary disposition in favor of plaintiffs, we affirm.

I. Basic Facts and Procedural History

    This case has its origins in NE Lots attempt to acquire some valuable parcels of real property situated in Chicago (the "Chicago Property") that were owned by William Johnson. Johnson died in February 2005. At the time of his death, Johnson was a resident of Lake County, Michigan. Johnson's personal representative initiated the probate of Johnson's estate in Lake County.

    After Johnson's death, NE Lots hired a genealogist to find Johnson's potential heirs. Plaintiffs were some of those potential heirs. NE Lots eventually contacted the potential heirs regarding the Chicago Property and offered to purchase a quitclaim deed from each for various modest sums. Although some potential heirs declined the offer, plaintiffs each executed a quitclaim deed granting whatever interest they might have in the Chicago Property to NE Lots. Under the terms of the quitclaim deeds, plaintiffs also assigned to NE Lots "the right to receive any proceeds of the sale of said property."

    The Johnson Estate eventually found a purchaser for the Chicago Property, but was unable to sell the property as a result of the cloud on the title created by the existence of the quitclaim deeds executed by plaintiffs in favor of NE Lots. However, the sale proceeded after NE Lots agreed to quitclaim whatever interest it might have to the purchaser. The purchaser ultimately paid the Johnson Estate more than $1.2 million for the Chicago Property. Although NE Lots executed a quitclaim deed

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in N.W.2d, 2010 WL 143470 (Mich.App.)
**(Cite as: 2010 WL 143470 (Mich.App.))**

in favor of the purchaser, it specifically reserved whatever interest it might have in the proceeds from the sale of the property.

After plaintiffs had already executed the quitclaim deeds in favor of NE Lots, they petitioned the probate court for a determination that Johnson died intestate. Had plaintiffs' petition prevailed, plaintiffs would each have been entitled to an intestate share of the Johnson Estate. However, Ruth Chaytor petitioned the probate court to determine that Johnson died testate. Chaytor was Johnson's daughter, but had been adopted by an unrelated family. Chaytor petitioned the court based on a holographic will that was purportedly made by Johnson and which named Chaytor to be the sole beneficiary of his estate. Plaintiffs initially contested the validity of the holographic will and NE Lots intervened to also contest the will.

The probate court scheduled a hearing concerning whether Johnson died intestate. However, at the hearing plaintiffs indicated that they were withdrawing their petition and were supporting Chaytor's petition to have the holographic will probated. According to plaintiffs' trial counsel, the family had reconciled and come to some form of settlement regarding the will. After plaintiffs withdrew their petition, the probate court determined that the holographic will was valid and that Chaytor was the sole beneficiary of the Johnson Estate.

**\*2** According to plaintiffs, NE Lots contacted them and claimed that it had the right to receive any payments that Chaytor made to plaintiffs arising out of the settlement agreement. Plaintiffs also claimed that, when they refused to disclose the details of the settlement or turn over any payments made by Chaytor, NE Lots threatened to sue them. For that reason, in October 2007, plaintiffs sued NE Lots.

In their amended complaint, plaintiffs alleged that NE Lots had no right to any payments that plaintiffs might receive from Chaytor because the assets possessed by the Johnson Estate are something other than the proceeds of the sale of the Chicago Property. Plaintiffs also alleged that the deeds were unconscionable and that NE Lots procured the quitclaim deeds through fraud. For these reasons, plaintiffs contended that the deeds were unenforceable. Based on the allegations in their complaint, plaintiffs asked the trial court to declare that the deeds are unenforceable and "do not entitle [NE Lots] to any payments from any Plaintiff."

In January 2008, plaintiffs moved for summary disposition on their claim for declaratory relief. In their motion, plaintiffs argued that, at the time they executed the quitclaim deeds, they had only a bare right to contest Johnson's will. They argued that this bare right could not be transferred and that the deeds otherwise do not purport to assign their rights under the settlement agreement with Chaytor.

In response, NE Lots argued that, under the plain language of the deeds, plaintiffs assigned their right to the proceeds of the sale of the Chicago Property. For that reason, plaintiffs had to pay NE Lots the proceeds from the sale of the Chicago Property—and they had to do so without regard to the manner by which they obtained those proceeds. Therefore, NE Lots concluded, because Chaytor likely paid plaintiffs using money derived from the sale of the Chicago Property, plaintiffs must remit those payments to NE Lots.

In June 2008, NE Lots moved for a change of venue and for permission to amend its answer to state any counter or cross claims that it may have.

The trial court held a hearing on the parties' motions on June 23, 2008. At the hearing, plaintiffs' counsel acknowledged that plaintiffs had entered into a settlement agreement with Chaytor: "In that agreement, our clients would withdraw their petition, which they did, as you know. And if Miss Chaytor was successful at that hearing, which she was, she agreed to share a settlement payment with our clients." However, plaintiffs' counsel did not agree that the quitclaim deeds executed by plaintiffs assigned any right to the payments made to plaintiffs under that settlement agreement.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2010 WL 143470 (Mich.App.)
**(Cite as: 2010 WL 143470 (Mich.App.))**

Rather, the payments under the settlement agreement were entirely distinct from any right that plaintiffs might have had to receive the proceeds from the sale of the Chicago Property.

In response, NE Lots' trial counsel argued that the issue before the trial court ultimately came down to the proper understanding of the term "proceeds" as used in the deeds. NE Lots' counsel further argued that this term could not be understood without further discovery to determine what the parties intended and whether it properly encompassed any payments made under the settlement agreement between plaintiffs and Chaytor.

***3** After hearing the parties' arguments, the trial court stated that it was granting plaintiffs' motion and denying NE Lots' motions.

In July 2008, the trial court entered an order granting summary disposition in favor of plaintiffs. In its order, the trial court clarified that, assuming that the deeds were valid, they do not entitle NE Lots to "any payment from Plaintiffs, including, but not limited to, Ruth Chaytor's settlement with Plaintiffs...." The trial court also denied NE Lots motions for a change of venue and for leave to amend.

This appeal followed.

II. Summary Disposition
A. Standard of Review

NE Lots first argues that the trial court erred when it determined that summary disposition was appropriate and granted the declaratory relief requested by plaintiffs. This Court reviews de novo a trial court's decision concerning a motion for summary disposition. *Barnard Mfg. v. Gates Performance Eng'g,* 285 Mich.App. 362, 369, 775 N.W.2d 618; —— NW2d —— (2009). Similarly, this Court reviews de novo questions of law, such as the proper interpretation of a deed or contract. *In re Rudell Estate,* ——Mich.App ——, ——; —— NW2d —— (2009).

B. The Assignment of Proceeds

On appeal, NE Lots argues that the trial court erred when it granted summary disposition because the grant was premature. Specifically, NE Lots contends that further discovery would reveal that any payments made by Chaytor to plaintiffs were made using the proceeds from the sale of the Chicago Property and, for that reason, the payments would be subject to the assignment of proceeds that the plaintiffs made when they executed the quitclaim deeds to NE Lots. NE Lots also suggests that discovery is needed to determine the parties' true understanding of the term "proceeds" as used in the quitclaim deeds.

With the quitclaim deeds executed by plaintiffs in favor of NE Lots, plaintiffs transferred any interest that they might have had in the Chicago Property to NE Lots. They also assigned to NE Lots "the right to receive any proceeds of the sale of said property." This language is not ambiguous and, therefore, whether construed under Illinois law or Michigan law, must be enforced as written. *Minerva Partners, Ltd v. First Passage, LLC,* 274 Mich.App. 207, 216, 731 N.W.2d 472 (2007); *Int'l Supply Co. v. Campbell,* 391 Ill.App.3d 439, 452, 329 Ill.Dec. 887, 907 N.E.2d 478 (2009) ("If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning and enforced as written."). Further, where a deed is unambiguous, both Michigan and Illinois courts will construe the deed without recourse to extrinsic evidence. *Minerva Partners,* 274 Mich.App. at 216, 731 N.W.2d 472 (noting that the meaning of the words actually used in the deed controls and not what the parties may have intended by such language); *Urbaitis v. Commonwealth Edison,* 143 Ill.2d 458, 476, 159 Ill.Dec. 50, 575 N.E.2d 548 (1991) ("It is well settled that where a deed is unambiguous, the intention of the parties must be ascertained without consideration of extrinsic factors."); *In re Estate of Crooks,* 266 Ill.App.3d 715, 721, 202 Ill.Dec. 861, 638 N.E.2d 729 (1994) (noting that parol evidence is not admissible to vary the terms of an unambiguous deed). For that reason,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2010 WL 143470 (Mich.App.)
**(Cite as: 2010 WL 143470 (Mich.App.))**

we cannot agree with NE Lots contention that further discovery was necessary to determine the parties' understanding of the term "proceeds" as used in the assignment.

**\*4** Under a plain reading of the assignment at issue, plaintiffs purported to assign their right to receive the proceeds from the sale of the Chicago Property. Although plaintiffs did not have an actual right to receive the proceeds at the time of the purported assignment, both Michigan and Illinois courts have recognized that such an assignment can be enforced in equity. See *Emmons v. Lake State Ins. Co.,* 193 Mich.App. 460, 464, 484 N.W.2d 712 (1992); *In re Davis,* 126 Ill.App.3d 518, 520, 81 Ill.Dec. 702, 467 N.E.2d 402 (1984) ("Earl Taylor assigned only his expectancy as one of the decedent's heirs at law. Such an assignment is enforceable at equity and is regarded as a contract between assignor and assignee to convey the interest if and when it should vest in the assignor."). However, by framing the assignment as an assignment of the "right" to receive "the proceeds" of the sale of the Chicago property, the parties plainly limited the assignment to those proceeds that plaintiffs received on the basis of some legal right to the proceeds *as proceeds from that sale.* That is, if the Chicago property were sold and plaintiffs received the proceeds from that sale and they received those proceeds on the basis of some legal right to the proceeds *of that sale,* then plaintiffs would be contractually obligated to turn the proceeds over to NE Lots.

In this case, because Johnson died testate and plaintiffs were not beneficiaries under his will, plaintiffs never had any property right in the Chicago Property or any legal right to the proceeds from its sale. Rather, the Johnson Estate sold the Chicago Property and received all the proceeds. Later, the probate court determined that Chaytor was the sole beneficiary of the Johnson Estate. Hence, plaintiffs did not even indirectly receive a share of the proceeds as the legal beneficiaries of Johnson's estate. After plaintiffs entered into a settlement agreement with Chaytor regarding their dispute over the Johnson Estate, plaintiffs obtained a contractual right to the payment of certain sums under the conditions stated in that contract. However, even assuming that Chaytor made the payments using funds that indirectly came to her as a result of the sale of the Chicago Property, plaintiffs did not receive the payments on the basis of any right to the proceeds as the proceeds of the sale of the Chicago Property—they received the payments as compensation for the consideration given in their contract with Chaytor.

Moreover, we reject NE Lots' implicit contention that it had the right to compel plaintiffs to remit any money that they might acquire at any point in the future, as long as the money could be linked—however tenuously—to the proceeds from the sale of the Chicago Property. Rather, we conclude that the only reasonable interpretation of the assignment language reflects an intent to assign the proceeds as long as those proceeds remained segregated and identifiable as proceeds of the sale. Once the Johnson Estate transferred its assets to Chaytor, the proceeds from the sale of the Chicago Property ceased to be proceeds from that sale and became Chaytor's personal property, which she could distribute in whatever fashion and to whomever she wished. Accordingly, under the plain and unambiguous terms of the quitclaim deeds at issue, NE Lots did not have any right to compel plaintiffs to remit any payments that they might have received from Chaytor.

**\*5** NE Lots purchased from plaintiffs whatever interest plaintiffs might have in the Chicago Property and purchased plaintiffs' right, if any, to receive the proceeds from the sale of the Chicago Property. Unfortunately for NE Lots, it turned out that plaintiffs had no interest in the property and had no right to the proceeds from that property's sale. Although in hindsight NE Lots' deal with plaintiffs appears to have been unwise, NE Lots nevertheless got the full benefit of its bargain: a chance to acquire a share of valuable real property

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in N.W.2d, 2010 WL 143470 (Mich.App.)
**(Cite as: 2010 WL 143470 (Mich.App.))**

or a share of the proceeds from the sale of that property, if plaintiffs should prove to have some legally enforceable right to that property.

The trial court correctly determined that, as a matter of law, the quitclaim deeds did not give NE Lots the right to any payments made by Chaytor to plaintiffs. Therefore, it did not err when it granted plaintiffs' motion for summary disposition and ordered appropriate declaratory relief. MCR 2.116(C)(10).

### III. Motion for Leave to Amend

NE Lots contends that the trial court erred when it denied its motion for leave to amend its answer to include counterclaims and additional defenses. At oral arguments the trial court determined that any amendment would be futile and, for that reason, denied the motion. This Court reviews a trial court's decision on a motion to amend for an abuse of discretion. *Weymers v. Khera,* 454 Mich. 639, 658, 563 N.W.2d 647 (1997).

On appeal, NE Lots argues that, had the trial court granted its motion, it could have raised additional defenses as well as viable claims for breach of contract, promissory estoppel, and unjust enrichment against plaintiffs. However, NE Lots does not identify the defenses that it would have raised and failed to state the facts and law supporting its claim that it could have raised a claim for tortious interference or unjust enrichment. For that reason, we conclude that NE Lots has abandoned any claim of error with regard to its attempt to amend its pleadings to include additional defenses or a claim for tortious interference or unjust enrichment.[FN1] *Hamade v. Sunoco, Inc. (R & M),* 271 Mich.App. 145, 173, 721 N.W.2d 233 (2006). Likewise, NE Lots did not address the possibility that it might have claims premised on any theory other than unjust enrichment and—possibly—breach of contract before the trial court. And, to the extent that NE Lots failed to raise these potential claims before the trial court, we decline to consider the propriety of permitting an amendment to add these claims for the first time on appeal. See *Smith v. Foerster–Bolser Constr., Inc.,* 269 Mich.App. 424, 427, 711 N.W.2d 421 (2006) (noting that this Court need not review matters raised for the first time on appeal). In any event, to the extent that NE Lots could be said to have minimally raised its desire to amend its pleadings to include claims for unjust enrichment and breach of contract, we conclude that the trial court did not err in refusing to grant leave to amend to add these claims.

> FN1. NE Lots also briefly mentions on appeal that the trial court erred when it failed to grant its motion for reconsideration and had no jurisdiction to hear plaintiffs' complaint. Because these claims of error were similarly unsupported on appeal, we decline to address them. *Hamade,* 271 Mich.App. at 173, 721 N.W.2d 233.

**\*6** NE Lots argues that, under the terms of the assignment plaintiffs made in the quitclaim deeds, plaintiffs were obligated to turn over to NE Lots any payments that Chaytor made to plaintiffs because those payments were made with the proceeds from the sale of the Chicago Property. However, as we noted above, under the plain language of the assignments in the quitclaim deeds, plaintiffs had no obligation to remit to NE Lots any payments made to them by Chaytor, even if Chaytor made the payments using funds that could be traced to the sale of the Chicago Property. Therefore, amendment to include a breach of contract claim premised on plaintiffs' failure to remit those payments to NE Lots would have been futile. And a trial court need not grant leave to amend where the amendment would be futile. *Weymers,* 454 Mich. at 658, 563 N.W.2d 647.

Likewise, NE Lots argued at the hearing on its motion that it wanted to add unjust enrichment because it bargained for "proceeds" and did not get the benefit of that bargain. As we noted above, NE Lots did get the benefit of its bargain: it purchased plaintiffs' "right" to the proceeds from the sale of the Chicago Property—even though there was a chance that plaintiffs had no such right. NE Lots

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in N.W.2d, 2010 WL 143470 (Mich.App.)
**(Cite as: 2010 WL 143470 (Mich.App.))**

took a gamble and lost, but that by itself does not establish a claim for unjust enrichment. See, e.g., *Prime Financial Services, LLC v. Vinton,* 279 Mich.App. 245, 275–276, 761 N.W.2d 694 (2008).

The trial court did not err when it denied NE Lots' motion to for leave to amend.

### IV. Motion for a Change in Venue

NE Lots also argues that the trial court erred when it denied its motion for a change of venue. However, as the trial court noted at oral arguments, NE Lots' motion for a change of venue was untimely. See MCR 2.221(A). Further, there was no indication that NE Lots' motion fell within the exception stated under MCR 2.221(B). As such, by failing to timely object to the venue, NE Lots waived its right to object. MCR 2.221(C). And, for that reason, the trial court had no authority to grant the motion. See *Bursley v. Fuksa,* 164 Mich.App. 772, 778–779, 417 N.W.2d 602 (1987) (stating that the failure to file a timely motion results in a "total waiver of the right to change venue" and that the trial court had no authority to consider the motion). Consequently, the trial court did not err when it denied the motion.

### V. Failure to Apply Illinois Law

Finally, NE Lots also argues that the trial court erred when it failed to apply Illinois law. On appeal, NE Lots does not identify how application of Illinois law to the facts of this case might have altered the outcome of the lower court proceedings. Indeed, as we already noted, even if the deeds at issue were construed under Illinois law, the result would be the same: NE Lots had no right to the payments plaintiffs received from Chaytor under the terms of their settlement agreement. Therefore, even if the trial court erred in this regard, it nevertheless came to the correct conclusion and we would affirm. See *Coates v. Bastian Bros., Inc.,* 276 Mich.App. 498, 508–509, 741 N.W.2d 539 (2007). Likewise, to the extent that NE Lots argues that the probate court erred when it failed to apply Illinois law to the administration of Johnson's estate, that argument is unavailing; any claim of error with regard to the law applicable to the administration of the Johnson Estate should have been addressed to this Court in an appeal from that case.

**\*7** There were no errors warranting relief.

Affirmed.

Mich.App.,2010.
Isom v. NE Lots LLC
Not Reported in N.W.2d, 2010 WL 143470 (Mich.App.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.