# EXHIBIT LL



Not Reported in F.Supp.2d, 2003 WL 22272135 (D.N.H.), 2003 DNH 168
**(Cite as: 2003 WL 22272135 (D.N.H.))**

Page 1



NOT FOR PUBLICATION

United States District Court,
D. New Hampshire.
MUELLER CO. and Mueller International, Inc.
v.
UNITED STATES PIPE & FOUNDRY CO.

No. Civ. 03–170–JD.
Oct. 2, 2003.

*ORDER*

DICLERICO, J.

**\*1** Mueller Co. ("Mueller") and Mueller International, Inc. ("MII") have sued United States Pipe & Foundry Co. ("U.S.Pipe") over its marketing of fire hydrants which allegedly resemble those manufactured by Mueller. U.S. Pipe seeks dismissal of two of the nine counts of the amended complaint on the ground that they fail to state a claim on which relief can be granted.

*Standard of Review*

During the pendency of its partial motion to dismiss, U.S. Pipe filed an answer to the amended complaint. As a result, the court must treat the motion to dismiss as a motion for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c). In evaluating this kind of motion, a "court must accept all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in [its] favor." *Feliciano v. Rhode Island,* 160 F.3d 780, 788 (1st Cir.1998). Great specificity is not required to survive a motion under Rule 12. "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts.' " *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990)). On the other hand, a plaintiff cannot rely on "bald assertions, unsupportable conclusions, and 'opprobrious epithets.' " *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987) (quoting *Snowden v. Hughes,* 321 U.S. 1, 10 (1944)). Ultimately, judgment on the pleadings is not appropriate " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.' " *Santiago de Castro v. Morales Medina,* 943 F.2d 129, 130 (1st Cir.1991) (quoting *Rivera–Gomez v. De Castro,* 843 F.2d 631, 635 (1st Cir.1988) (further internal citations omitted)).

*Background*

The following facts are drawn from the plaintiffs' amended complaint. Since 1933, Mueller has manufactured fire hydrants with a distinctive trade dress, which includes certain fluting and beading. These hydrants have enlarged Mueller's reputation over the years such that "[t]he vast majority of cities and towns throughout the United States approve or specify Mueller Hydrants for municipal use...." MII secured federal registration of the Mueller Hydrant's trade dress in 1996, and subsequently licensed its use to Mueller. MII has its principal place of business in Portsmouth, New Hampshire.

U.S. Pipe, headquartered in Birmingham, Alabama, also manufactures fire hydrants, although its products apparently have not achieved the same level of success as those of Mueller. In early 2002, the parties were engaged in discussions surrounding U.S. Pipe's acquisition of Mueller, which were evidently unsuccessful. Indeed, Mueller relates that "US Pipe representatives made explicit threats to copy Mueller's fire hydrants" during these discussions. A year or so later, U.S. Pipe allegedly began marketing a fire hydrant with a design "substantially similar to" and "likely to be confused with" Mueller's trade dress, which the plaintiffs characterize as well-known to consumers and famous within the industry itself.

**\*2** Mueller and MII filed suit against U.S. Pipe in this court in the spring of 2003. Their complaint

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2003 WL 22272135 (D.N.H.), 2003 DNH 168
**(Cite as: 2003 WL 22272135 (D.N.H.))**

consists of nine counts: (I) trade dress infringement, (II) injury to business reputation and trade dress dilution under state law, (III) misappropriation, (IV) conversion, (V) common-law trademark infringement, (VI) trademark dilution, (VII) unfair competition through false designation of origin, (VIII) unfair competition under Revised Statutes Annotated ("RSA") 358:A–2, and (IX) palming off. U.S. Pipe responded by simultaneously filing both an answer and counterclaim and a partial motion to dismiss counts II, III, and IX. The plaintiffs then moved to amend their complaint, which was allowed, mooting U.S. Pipe's motion as to count II. U.S. Pipe subsequently filed an answer to the amended complaint.[FN1]

> FN1. U.S. Pipe filed a "renewed" motion to dismiss counts III and VIII on September 11, 2003, which merely incorporated the arguments made in connection with its original motion. The plaintiffs followed suit with an objection to the renewed motion on September 22, 2003, also incorporating the arguments from their previous submission.

*Discussion*

Count III of the complaint seeks injunctive relief and damages under a common-law theory of "misappropriation." U.S. Pipe contends that "such a cause of action has never been recognized by any court in the State of New Hampshire," and seeks dismissal on that basis. The plaintiffs object, arguing that New Hampshire has also never rejected a cause of action for "misappropriation of the value of a trademark or trade dress," which has been accepted as a viable claim by other states.

In Count VIII, the plaintiffs assert a claim pursuant to RSA 358–A:2, which prohibits "any unfair method of competition ... within this State." U.S. Pipe argues that the complaint fails to state a cause of action under this statute because the plaintiffs allege no unfair competition which occurred in New Hampshire. In response, the plaintiffs contend that (1) their allegations that they and U.S. Pipe compete in a national market, and that a substantial part of the events giving rise to their claims took place in New Hampshire, satisfy section 358–A:2, and (2) they have a claim under the statute because U.S. Pipe's alleged conduct caused injury to MII, located in New Hampshire. The court will address the parties' arguments as to Count III and Count VIII in turn.

A. *Whether State Law Recognizes A Misappropriation Claim*

The parties appear to agree that New Hampshire law controls the plaintiffs' ability to assert a common-law claim for misappropriation of the value of their trademark. They also agree that the New Hampshire Supreme Court has yet to consider the question. As a federal tribunal exercising supplemental jurisdiction over the plaintiffs' state law claims, this court must predict that court's future course on this issue. *See FDIC v. Ogden Corp.,* 202 F.3d 454, 460–61 (1st Cir.2000). This task requires an " 'an informed prophecy of what the [New Hampshire Supreme Court] would do in the same situation,' seeking 'guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." ' *Walton v. Nalco Chem. Co.,* 272 F.3d 13, 20 (1st Cir.2001) (quoting *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1151 (1st Cir.1996)). It also demands "considerable caution" and respect for the " 'well-marked boundaries" ' of New Hampshire law. *Doyle v. Hasbro, Inc.,* 103 F .3d 186, 192 (1st Cir.1996) (quoting *Andrade v. Jamestown Hous. Auth.,* 82 F.3d 1179, 1187 (1st Cir.1996)).

*3 The plaintiffs describe a claim for the misappropriation of trademarks as a form of unfair competition for which relief is and should be available under New Hampshire law. In support of this contention, the plaintiffs simply refer to cases from other jurisdictions which have purportedly recognized such a theory.

Misappropriation has been described as a cause of action

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22272135 (D.N.H.), 2003 DNH 168
**(Cite as: 2003 WL 22272135 (D.N.H.))**

usually invoked by a plaintiff who has what he considers a valuable commercial "thing" which he sees another has appropriated at little cost. The problem is that plaintiff's item or thing ... is not protected either (1) by federal copyright or patent legislation or (2) by one of the traditional common-law theories of unfair competition.... Thus, the plaintiff is relegated to reliance on the argument that his business item is deserving of recognition as a "property right" which was illegally "misappropriated" by the defendant.

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 10:47 (4th ed.2003). Courts have generally applied the misappropriation doctrine to prevent a defendant from free-riding on the plaintiff's innovation or effort in developing something having commercial value, but nevertheless falling outside of traditional trademark and copyright protections. *See, e.g., Int'l News Serv. v. Associated Press,* 248 U.S. 215, 240 (1918) (defendant's telegraphing news reported by plaintiff's service, as it had appeared New York papers, to San Francisco, where it was published in advance of papers there which subscribed to plaintiff's service); *Standard & Poor's Corp. v. Commodity Exch., Inc.,* 683 F.2d 704, 711 (2d Cir.1982) (defendant's proposed sale of futures contract tied to index of stocks compiled by plaintiff); *United States Trotting Ass'n v. Chicago Downs Ass'n,* 665 F.2d 781, 787 (7th Cir.1981) (defendant's unauthorized use of racehorse performance data assembled by plaintiff for use of its own members).

Here, the "thing" allegedly misappropriated by U.S. Pipe is the configuration of the plaintiffs' fire hydrants. Under appropriate circumstances, a product's appearance qualifies for trademark protection under the Lanham Act. *See Yankee Candle Co. v. Bridgewater Candle Co.,* 259 F.3d 25, 37–38 (1st Cir.2001). Because the plaintiffs' claim implicates federal trademark law, it does not fall outside of traditional protections.[FN2] The misappropriation theory, which has been reserved for the vindication of commercial rights left unprotected by trademark principles, would therefore not apply.

> FN2. Two of the cases relied on by the plaintiffs reflect this traditional use of the misappropriation doctrine. Indeed, *Board of Trade v. Dow Jones & Co.,* 439 N.E.2d 526, 534–35 (Ill.App.1982), found misappropriation on facts nearly identical to those of *Standard & Poor's,* 683 F.2d 704, relying heavily on the District Court's opinion in that case in its own decision. Similarly, *GAI Audio of N.Y., Inc. v. Columbia Broad. Sys., Inc.,* 340 A.2d 736 (Md.Ct.Spec.App.1975), used the misappropriation doctrine as a basis for liability for copying and reselling another's albums because the record piracy in question had occurred before federal copyright law was amended to include sound recordings. *Id.* at 745. Neither of these cases, then, supports the availability of a misappropriation claim in a trademark action.

Nevertheless, courts occasionally "invoke the misrepresentation doctrine to protect trademarks and other trade designations." *Restatement (Third) of Unfair Competition* § 38 cmt. c, reporters' note (1995). Commentators have pointed out, however, that many of these applications result from the imprecise usage of the term "misappropriation" to describe a garden-variety claim for trademark infringement. *See id.;* 2 McCarthy § 10:72 ("it is a misnomer to talk of 'misappropriation' of trademarks or trade symbols of any kind"). The New York case cited by the plaintiffs in support of their misappropriation claim appears to have used the term in this way. *See Eagle Comtronics, Inc. v. Pico Prods., Inc.,* 682 N.Y.S.2d 505, 506 (N.Y.App.Div.1998) (referring to "misappropriation of a commercial advantage belonging to another by infringement or dilution of a trademark or trade name ...").

***4** It is unclear from either the amended complaint or the plaintiffs' objection to U.S. Pipe's mo-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion whether or not their claim for misappropriation simply reiterates their various claims for trademark infringement. To the extent that it does, however, the dismissal of the misappropriation claim as redundant of the plaintiffs' other causes of action is proper. *See* Fed.R.Civ.P. 12(f); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.37[3] (2003).

The misappropriation doctrine has also been used to protect trademarks in the absence of one of the prerequisites for relief under traditional infringement principles. *See* 2 McCarthy § 10.47. Courts have thus invoked misappropriation "to justify protection for the ornamental or merchandising value of a trademark or trade name when there was little apparent likelihood of consumer confusion." *Restatement (Third) of Unfair Competition* § 38 cmt. c, reporters' note (1995). Misappropriation has also given rise to liability for the use of another's mark without a showing of secondary meaning. *See* 2 McCarthy § 15:18. The court must determine whether the doctrine in this form squares with existing New Hampshire trademark law.

To recover under New Hampshire common law, a plaintiff generally has been required to prove that its name or mark has "a secondary meaning associating [it] with a given business, so as to entitle that business to protect the association" and, further, that "the defendant's use of the [name or mark] would probably confuse him with the plaintiff in the public's mind." *Auto Body Specialists, Inc. v. Vallee,* 127 N.H. 382, 385 (1985); *accord Puritan Furniture Corp. v. Comarc, Inc.,* 519 F.Supp. 56, 60 (D.N.H.1981); *Esso Standard Oil Co. v. Standard Oil Co. of New England,* 170 F.Supp. 71, 73 (D.N.H.1958); *W. Auto Supply Co. v. W. Auto Supply Co.,* 13 F.Supp. 525, 527 (D.N.H.1936); *Blastos v. Humphrey,* 112 N.H. 352, 353–54 (1972); *Bogosian v. Fine,* 99 N.H. 340, 345 (1955); *Nardini's Rest., Inc. v. Sterling Rest. Co.,* 93 N.H. 364, 369–70 (1945).

There does not appear to be any case decided under New Hampshire law where liability attached in the absence of either secondary meaning or likelihood of confusion. *Cf. Optical Alignment Sys. & Inspection Servs., Inc. v. Alignment Servs. of N. Am., Inc.,* 909 F.Supp. 58, 61–62 (D.N.H.1995) (dismissing unfair competition claim arising out of use of plaintiff's mark in absence of "potentially confusing" conduct); *Jacobs v. Robitaille,* 406 F.Supp. 1145, 1155 (D.N.H.1976) (finding for defendant where plaintiff could prove neither "public deception" nor "special significance" of product). This standard has been applied whether the plaintiff's claim is analyzed under the rubric of common-law trademark infringement or that of unfair competition. *Compare, e.g., Blastos,* 112 N.H. at 353 (common-law trademark) *with Jacobs,* 406 F.Supp. at 1154 (unfair competition). In addition, a number of New Hampshire's neighboring jurisdictions have also limited common-law trademark liability to cases where the plaintiffs could show both secondary meaning and a likelihood of confusion. *See, e.g., Mohegan Tribe of Indians v. Mohegan Tribe & Nation, Inc.,* 769 A.2d 34, 36–37 (Conn.2001); *Datacomm Interface, Inc. v. Computerworld, Inc.,* 489 N.E.2d 185, 193 (Mass.1986); *Sebago Lake Camps, Inc. v. Simpson,* 434 A.2d 519, 521 (Me.1981); *Nat'l Lumber & Bldg. Materials Co. v. Langevin,* 798 A.2d 429, 433 (R.I.2002).

**\*5** Furthermore, commentators have argued against the extension of trademark protections through the application of the misappropriation doctrine. *See Restatement (Third) of Unfair Competition* § 38 cmt. b (1995) ("The better approach, and the one most likely to achieve an appropriate balance between competing interests, does not recognize a residual common law tort of misappropriation"); 2 McCarthy § 10:72 ("If there can be such a thing as misappropriation of another's trademark, irrespective of distinctiveness and likelihood of buyer confusion, then a big step has been taken to wipe out the law of trademarks"). Like a number of other district courts which have dismissed claims for the misappropriation of trademarks or trade dress, the court considers such arguments persuasive. *See, e.g., Estate of Jenkins v. Paramount Pic-*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22272135 (D.N.H.), 2003 DNH 168
**(Cite as: 2003 WL 22272135 (D.N.H.))**

*tures Corp.,* 90 F.Supp.2d 706, 714 n. 26 (E.D.Va.2000), *aff'd,* 2001 WL 401320 (4th Cir. Apr. 20, 2001); *Abbott Labs. v. Nutramax Prods., Inc.,* 844 F.Supp. 443, 447 (N.D.Ill.1994); *Sykes Lab., Inc. v. Kalvin,* 610 F.Supp. 849, 855 (C.D.Cal.1985). Moreover, this court has previously noted that New Hampshire has tended to look to the *Restatement* for guidance in developing state unfair competition law. *See Jacobs,* 408 F.Supp. at 1155.

The court therefore concludes that New Hampshire would not recognize a common-law claim for use of another's trademark without proof that (1) the use generates a likelihood of confusion among consumers, and (2) the mark has acquired a secondary meaning which associates it with the plaintiff.[FN3] Thus, the plaintiffs cannot state a claim for misappropriation under New Hampshire law based on U.S. Pipe's alleged use of their trademark or trade dress.[FN4] It is true, as the plaintiffs point out, that "the New Hampshire Supreme Court has not defined the exact contours of common-law unfair competition...." *Optical Alignment,* 909 F.Supp. at 61. Nevertheless, this court declines to stretch the contours of that doctrine to accommodate a misappropriation claim based on a defendant's use of the plaintiff's trademark.

> FN3. Oregon law, on which the plaintiffs rely, follows the same approach. The plaintiffs cite *Volt Servs. Group v. Adecco Employment Servs.,* 35 P.3d 329, 338 (Or.Ct.App.2001), for the proposition that Oregon recognizes a claim for misappropriation of another's trademark upon a showing of likelihood of confusion only. However, *Wedgwood Homes, Inc. v. Lund,* 659 P.2d 377 (Or.1983), which the *Volt* court followed, requires both likelihood of confusion and secondary meaning to recover under the Oregon unfair competition statute. *Id.* at 378–79.

> FN4. The court expresses no opinion on whether New Hampshire would recognize a common-law claim for the misappropriation of business values unprotected by trademark or copyright law. *Cf. Restatement (Third) of Unfair Competition* § 38 (1995).

Because New Hampshire would not recognize a claim for the misappropriation of another's trade dress, U.S. Pipe's motion to dismiss count III of the complaint, which seeks relief under such a theory, is allowed.

B. *Whether Plaintiffs State A Claim Under RSA § 358–A:2*

RSA 358–A:2 makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." U.S. Pipe contends that the plaintiffs have failed to state a claim under section 358–A:2 because they have not alleged any conduct proscribed by the statute which took place "within this state."

The plaintiffs contend that because the harm from U.S. Pipe's alleged infringement of the plaintiffs' mark occurred in New Hampshire, where MII has its principal place of business, that fact alone amounts to unfair competition within New Hampshire in violation of RSA 358–A:2. For this proposition, the plaintiffs rely on this court's decision in *Delta Educ., Inc. v. Langlois,* 719 F.Supp. 42 (D.N.H.1989). *Delta,* however, did not consider whether harm suffered by a New Hampshire corporation satisfies section 358:A–2's requirement that the unfair competition occur "within this state." *Id.* at 48. Instead, the court ruled that the defendants' violations of RSA 358–A:2 (among other torts) which occurred outside of New Hampshire were sufficient to create personal jurisdiction under the state long-arm statute because they harmed the commercial relations of a company with its principal place of business in New Hampshire. *Id.* Whether harm suffered by a company headquartered in New Hampshire gives rise to personal jurisdiction under the long-arm statute presents a different inquiry than whether that harm gives rise to liability under

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22272135 (D.N.H.), 2003 DNH 168
**(Cite as: 2003 WL 22272135 (D.N.H.))**

the unfair trade practices statute. *Compare* RSA 293–A:121 *with* RSA 358–A:2. *Delta* does not support the plaintiffs' position.

**\*6** The plaintiffs also rely on the definition of " 'trade' and 'commerce' "in RSA 358–A:1(II) to support their reading of the statute. Although the phrase " 'trade' and 'commerce' " is defined to include "any trade or commerce directly or indirectly affecting the people of this state," that definition is limited by section 358:A–2 itself, which reaches only "trade or commerce *within this state*" (emphasis added). Thus, commercial conduct which affects the people of New Hampshire is actionable under section 358–A:2 only if it occurs within New Hampshire. *See Environamics Corp. v. Ferguson Enters., Inc.,* 2001 DNH 175, 2001 WL 1134727, at \*4 (D.N.H. Sept. 24, 2001); *Pacamor Bearings, Inc. v. Minebea Co.,* 918 F.Supp. 491, 504 (D.N.H.1996).[FN5] In the absence of any alleged unfair method of competition or unfair or deceptive act or practice which took place within New Hampshire, the harm suffered by MII within the state does not state a claim under RSA 358–A:2.

> FN5. The court disagrees with the plaintiffs' reading of *Pacamor, i.e.,* that the "holding in that case was limited to finding that the defendant was not required to be located in New Hampshire to state a claim under RSA 358–A, and that an offending act within New Hampshire sufficed." In *Pacamor,* this court ruled that the out-of-state sales of a New Hampshire defendant and its foreign parent were relevant evidence of the plaintiffs' claim under section 358–A:2 because the sales constituted commerce "within the state" by virtue of the subsidiary's place of business here. 918 F.Supp. at 504. Thus, *Pacamor* supports a reading of RSA 358:A–2 which limits its scope to conduct which took place in New Hampshire. Moreover, the court in *Pacamor* explicitly stated that "the 'offending conduct' ... must occur within

the state" for liability to attach under section 358–A:2. *Id.* (quoting *Shorter v. Champion Home Builders Co.,* 776 F.Supp. 333, 339 (N.D.Ohio 1991) (interpreting similar Ohio statute)).

The plaintiffs argue that their allegation that "a substantial part of the events or omissions giving rise to [their] claims occurred in this jurisdiction" suffices to plead an unfair act or practice within New Hampshire as required by section 358–A:2. The court disagrees. The foregoing allegation merely parrots the standard for venue in this court set forth in 28 U.S.C. § 1391. It is a conclusory statement, insufficient for purposes of defeating a motion to dismiss under Rule 12(b)(6). *See DM Research, Inc. v. Coll. of Am. Pathologists,* 170 F.3d 53, 55–56 (1st Cir.1999).

In a related vein, the plaintiffs argue that because they compete with U.S. Pipe in a nationwide market, the court should infer that "the areas in which U.S. Pipe is undertaking to compete unfairly with its infringing products include New Hampshire." Liability under section 358–A:2, however, requires more than "undertaking to compete unfairly" in New Hampshire; it requires the actual "use" of an "unfair method of competition" or "unfair or deceptive act" in New Hampshire. In their amended complaint, the plaintiffs specifically allege that U.S. Pipe has advertised and offered its infringing product for sale, but they do not allege that any of these advertisements or offers took place in New Hampshire. *Cf.* RSA § 358–A:1(II). Accordingly, the court concludes, based on the plaintiffs' allegations, that they can prove no set of facts which would entitle them to relief on their statutory claim of unfair and deceptive trade practices. U.S. Pipe's motion to dismiss that count from the amended complaint is granted.

*Conclusion*

For the foregoing reasons, the defendant's renewed motion to dismiss counts III and VIII of the amended complaint (document no. 37) is GRANTED.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22272135 (D.N.H.), 2003 DNH 168
**(Cite as: 2003 WL 22272135 (D.N.H.))**

Scattershot pleading is not favored. The court expects the plaintiffs to review the remaining counts with a view to eliminating any count that is unnecessary or redundant because it does not materially differ from another count in terms of the elements that must be proved, or the remedy available.

**\*7** SO ORDERED.

D.N.H.,2003.
Mueller Co. v. U.S. Pipe & Foundry Co.
Not Reported in F.Supp.2d, 2003 WL 22272135 (D.N.H.), 2003 DNH 168

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.