# EXHIBIT MM



Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

Page 1



United States District Court,
E.D. Michigan,
Southern Division.
Harrison W. MUNSON and Gerald L. Munson,
Plaintiffs,
v.
COUNTRYWIDE HOME LOANS, INC., Countrywide Bank, Lucy Chacon, Mark Wilson, Lee Gonzalez, Great Lakes Mortgage Company L.L.C., John Doe, Midwest Appraisal Group, and John Schwartz, Jr., Defendants.

No. 08-13244.
Dec. 17, 2008.

West KeySummary**Banks and Banking 52** 🗝 **100**

52 Banks and Banking
    52III Functions and Dealings
        52III(A) Banking Franchises and Powers, and Their Exercise in General
            52k100 k. Torts. Most Cited Cases

**Mortgages 266** 🗝**216**

266 Mortgages
    266IV Rights and Liabilities of Parties
        266k215 Actions for Damages
            266k216 k. Between Parties to Mortgage or Their Privies. Most Cited Cases

Under Michigan law, homeowners could not establish a prima facie case for fraudulent representation against a bank. The bank did not perform the appraisal of the home or make any statements regarding its value. There were also insufficient allegations that the bank was aware of an inflated appraisal value. Furthermore, there could have been no misrepresentation of a material fact as the records used for the appraisal were public.

Harrison W. Munson, Detroit, MI, for Plaintiffs.

Brian C. Summerfield, Bodman, Troy, MI, Timothy L. Taylor, Bos & Glazier, Grand Rapids, MI, for Defendants.

**ORDER GRANTING MOTION TO DISMISS AS TO DEFENDANTS COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE BANK, LUCY CHACON, MARK WILSON AND LEE GONZALEZ, ONLY**

VICTORIA A. ROBERTS, District Judge.
**I. INTRODUCTION**
    **\*1** This matter is before the Court on Defendants' Motion to Dismiss [Docket # 3], filed August 15, 2008. Plaintiff filed a Response [Docket # 4] on September 2, 2008. Defendants filed a Reply [Docket # 5] on September 10, 2008.

    For the reasons stated below, Defendants' Motion is **GRANTED.**

**II. BACKGROUND**
    This is a consumer lending case arising out of a mortgage and foreclosure on Plaintiffs' home. Plaintiffs, a Michigan licensed attorney and his spouse, originally filed this action in the Oakland County Circuit Court on June 30, 2008, alleging five counts against: Countrywide Home Loans, Inc. ("Countrywide Loans"), the loan servicer; Countrywide Bank ("Countrywide Bank"), the lender; Lucy Chacon, Mark Wilson, and Lee Gonzalez ("the Countrywide employees"), employees of Countrywide Loans and Countrywide Bank; Great Lakes Mortgage Company, LLC ("Great Lakes"), the mortgage broker; John Doe, an employee of Great Lakes; Midwest Appraisal Group, Inc. ("Midwest"); and John Schwartz, Jr., a home appraiser. Defendants Countrywide Loans, Countrywide Bank, and the Countrywide employees timely removed on July 29, 2008.

    Plaintiffs allege: Count I-Breach of Contract; Count II-Fraud and Misrepresentation; Count III-Violation of the Fair Debt Collection Practices Act,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

15 U.S.C. 1692 et seq.; Count IV-Unjust Enrichment; and Count V-Violation of the Michigan Uniform Commercial Code, MCL 440.1101 et seq. Plaintiffs allege all five counts against Defendants Countrywide Bank and Countrywide Loans. Plaintiffs allege only Count III against the Countrywide employees.

This matter arises out of Plaintiffs' purchase of residential property located at 5205 Creekmonte Drive, Unit 54, Rochester, Michigan. Great Lakes provided mortgage broker services and employed John Schwartz of Midwest to prepare the appraisal for the property. The property was appraised for $615,000.00 on February 4, 2005. Plaintiffs (incorrectly) say they gave Countrywide Loans a $565,000.00 mortgage on March 24, 2005; the actual Mortgage says the lender is Countrywide Bank. Plaintiffs say that Countrywide Loans erroneously submitted their account to the credit bureau as 60 days late, which caused other lenders to refuse to refinance the loan. Plaintiffs say they sought a loan modification, which Countrywide Loans and Countrywide Bank denied. Plaintiffs say that Countrywide Loans and Countrywide Bank are alter egos and that their refusal to grant the loan modification was wrongful. Plaintiffs also say that Countrywide Loans and Countrywide Bank used an inflated appraisal which did not include properties comparable in size, type and price; Plaintiffs say this constituted a material misrepresentation on which they relied to their detriment.

Defendants Countrywide Loans, Countrywide Bank, and the Countrywide employees move to dismiss. They say Plaintiffs' claims are baseless and should be dismissed because: (1) Plaintiffs failed to allege any breach of the note or mortgage by Countrywide Bank; (2) Plaintiffs don't have a contract with Countrywide Loans; (3) Plaintiffs failed to allege fraud with particularity; (4) the Countrywide employees are not debt collectors and there are no allegations supporting a violation of the Fair Debt Collection Practices Act; (5) the unjust enrichment claim is precluded because there is an express contract between Plaintiffs and Countrywide Bank; and (6) foreclosure sales are governed by MCL 600.3216, not by the Uniform Commercial Code.

**III. STANDARD OF REVIEW**

*2 Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6), where a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff's allegations plausibly establish a case which would entitle the plaintiff to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1968-70, 167 L.Ed.2d 929 (2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Id.* at 1965. *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any attached exhibits, public records, items appearing in the record and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the contained claims. See *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001). "[T]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir.2003). "A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993).

**IV. CASE LAW AND ANALYSIS**

**A. TWOMBLY ARGUMENT**

Defendants argue that Plaintiffs' entire complaint should be dismissed because the allegations

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

Page 3

are insufficient to state a claim upon which relief can be granted. The Court does not agree.

The nature of each of Plaintiffs claims is sufficiently articulated such that Defendants and the Court need not "guess" what Plaintiff is alleging.

Although the Court finds that most claims are insufficiently pled, the Complaint is not defective in its entirety. Generally, the Complaint contains "sufficient factual information to provide the 'grounds' on which the claims rest. *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008). Accordingly, the Court denies Defendants' Motion to Dismiss based on *Twombly.*

**B. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT**

In Count I, Plaintiffs allege that Countrywide Loans initially breached its contract with Plaintiffs by using an inflated appraisal which did not include properties comparable in size, type and price. Plaintiffs also say Countrywide Loans unilaterally changed the terms of the mortgage contract to no longer provide four payment options previously granted: (1) 30-year amortization, (2) 15-year-amortization, (3) minimum payment, and (4) interest only. They say Countrywide Loans claimed that it was unable to calculate the four options, so it began requesting the "minimum payment." Lastly, Plaintiffs say Countrywide Loans erroneously submitted their account to the credit bureaus as 60 days late, dating back to 2004. For example, Plaintiffs say their February 2006 payment was reported as 60 days late in February 2006, despite the fact that the March 2006 payment had already been made. Plaintiffs say these errors caused other financial institutions to refuse to refinance the loan. Plaintiffs allege these combined actions constitute a breach of the mortgage contract. Plaintiffs also allege that Countrywide Loans and Countrywide Bank are alter egos and should be treated as one.

***3** The Court notes that throughout the Complaint, Plaintiffs incorrectly allege they have a contract with Countrywide Loans. However, in conjunction with this loan transaction, on March 24, 2005 Plaintiffs singularly or jointly executed several documents: (1) Adjustable Rate Note ("ARN"), (2) Mortgage, and (3) Adjustable Rate Rider ("ARR"). The Mortgage document lists the borrowers as Harrison Munson and Geri Munson, and the lender as Countrywide Bank. Countrywide Loans is not listed in any of these documents and Defendants say Countrywide Loans is merely the loan servicer for Countrywide Bank.

Plaintiffs allege Countrywide Bank and Countrywide Loans are alter egos; they address both companies as one and impute Countrywide Bank's actions to Countrywide Loan throughout their Complaint and Response. However, it is clear this is an assumption and conclusion and it is not supported by any proofs.

In Michigan, to pierce the corporate veil or find that one company is the 'alter ego' of another, the corporate entity must be a mere instrumentality of another entity or individual; the corporate entity must be used to commit a fraud or wrong; and there must be an unjust loss or injury to Plaintiffs. See *Daymon v. Fuhrman,* 474 Mich. 920, 705 N.W.2d 347 (2005). Plaintiffs fail to adequately allege any of these factors or reference any case law to support piercing the corporate veil; their analysis of the issue is merely conclusory. Plaintiffs only assert that Countrywide Bank is an alter ego of Countrywide Loans "because one speaks for the other ." (Docket # 4, p. 5). This theory of alter-ego is unsubstantiated and the Court evaluates the entities separately.

**i. COUNTRYWIDE LOANS**
Plaintiffs have no contract with Countrywide Loans; the breach of contract claim against it fails in its entirety.

**ii. COUNTRYWIDE BANK**
In the Mortgage, the listed loan amount is $565,000.00. It contains various borrower, uniform and non-uniform covenants. Likewise, the ARN contains the borrowers' promise to pay $565,000.00

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

plus interest to Countrywide Bank in exchange for a loan received. The Mortgage says it is to be governed by federal law and the law of the jurisdiction in which the property is located. Michigan law governs.

To state a claim for breach of contract, Plaintiffs must first establish the elements of a valid contract. See *Pawlak v. Redox Corp.,* 182 Mich.App. 758, 453 N.W.2d 304, 307 (Mich.Ct.App.1990). The elements of a valid contract are: 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation. *Thomas v. Leja,* 187 Mich.App. 418, 468 N.W.2d 58, 60 (Mich.Ct.App.1990). Plaintiffs allege facts sufficient to meet all of these elements, and the Court finds the Mortgage and the ARN constitute a valid contract between Plaintiffs and Countrywide Bank.

Once a valid contract is established, a plaintiff seeking to recover on a breach of contract theory must prove by a preponderance of the evidence: (1) the terms of the contract; (2) defendant breached the terms; and (3) the breach caused the plaintiff's injury. See *Platsis v. E.F. Hutton & Co., Inc.,* 642 F.Supp. 1277, 1309 (W.D.Mich.1986).

**\*4** The ARN lists an initial interest rate of 3.000%. It contains an adjustable interest rate provision which provides that the interest rate *may* change on May 1, 2005 (37 days after the loan inception) and on the 1st day of every subsequent month; this is called the "Interest Rate Change Date." Although the interest rate could change monthly, the monthly payment was not recalculated on a monthly basis. *See* ARN ¶ 2(B) and 3. This could result in negative amortization.

The ARR, which is incorporated in the Mortgage, contains a complicated schedule for calculation of interest rate, interest rate changes, monthly payments, monthly payment changes and payment options. It provides that the initial monthly payment would be $2,382.06, until May 1, 2006. It further says that on May 1, 2006 and each successive May 1st thereafter, the monthly payment *may* change; this is referred to as the "Payment Change Date." Each month beginning on each payment change date, Plaintiffs were required to pay the amount of the new "Minimum Payment"; this is the minimum amount that Countrywide Bank would accept as a monthly payment, as determined at the last payment change date or as provided in sections 3(F) or 3(G). Unless sections 3(F) or 3(G) applied, the new monthly payment effective on a payment change date would not increase by more than 7.5% of the prior monthly payment; this is called the "Payment Cap."

The ARR also says that after the first interest rate change, Countrywide Bank *may* provide Plaintiffs with up to three additional payment options that are *greater* than the minimum payment: (1) interest only, (2) fully amortized, and (3) 15 year amortized. The ARR recognizes that because the monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to certain payment limitations, the minimum payment could be less than the interest portion of the monthly payment that would be sufficient to repay the unpaid principal in full at the maturity date in equal installments. In such case, Countrywide Bank was to subtract the amount of the monthly payment from the interest portion and add the difference to the unpaid principal; interest was to accrue on this difference.

Contrary to Plaintiffs' assertions, it was not a breach of the mortgage contract for Countrywide Bank, and Countrywide Loans as its servicer, to cease providing four payment options because the Mortgage did not require them to do so. The Mortgage clearly says the lender *may* provide up to three additional payment options. Moreover, the Mortgage contemplates that all of the additional payment options would be greater than the "Minimum Payment"; the "Minimum Payment" is the minimum amount the note holder would accept for a monthly payment. So, it could not be a breach for

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

Countrywide Bank to demand that Plaintiffs pay the "Minimum Payment," the lowest of the possible payment options. To the extent that Plaintiffs allege the "minimum payment" request was a breach of the Mortgage contract, that claims fails.

***5** Likewise, to the extent that Plaintiffs allege the failure to modify the loan terms was a breach of contract, that claim fails. It is logical that the loan servicer would consult with the lender, Countrywide Bank, for approval to modify the loan. Moreover, nothing in the Mortgage contract requires Countrywide Bank to modify the loan terms upon request by Plaintiffs, and Plaintiffs fail to identify legal authority that requires such a result.

Plaintiffs also allege Countrywide Bank erroneously submitted their account to the credit bureau as 60 days late dating back to 2004, despite the fact that payment had been made. Plaintiffs say this caused other lenders to refuse to refinance the loan. However, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., preempts any subject matter regulated under section 1681s-2. See 15 U.S.C. § 1681t(b)(1)(F). While there is considerable dispute about the extent of the FRCA's preemption of state law claims, see *Stafford v. Cross Country Bank,* 262 F.Supp.2d 776, 784-89 (W.D.Ky.2003) (providing an extensive discussion of the different preemption provisions, their varying interpretations, and their application to different types of state law claims), it is clear that when a state law imposes distinct duties with respect to the subject matter regulated by § 1681s-2, it is preempted, *Riley v. Gen. Motors Acceptance Corp.,* 226 F.Supp.2d 1316, 1322 (S.D.Ala.2002).

The Court need not engage in an extensive discussion of how 1681t(b)(1)(F) preempts different types of state law claims, however, because this breach of contract allegation is founded solely on Countrywide Bank's actions in reporting Plaintiffs' payment history. Since the reporting of credit information is the subject matter regulated by § 1681s-2, this breach of contract claim is preempted.

In Response to this Motion, Plaintiffs assert for the first time an additional claim: Countrywide Bank breached the contract by instituting a payment change in March 2008, rather than May as required in the ARN. Plaintiffs say the two contingencies which would allow a different payment change date-(1) the principal balance exceeding 115% of the original balance or (2) the fifth payment change date-had not yet occurred, so the arbitrary change was a breach. Plaintiffs do not allege this in the Complaint. Our Circuit makes clear: a plaintiff may not omit a claim from his complaint and then attempt to raise it for the first time in a motion brief. See *Davison v. Cole Sewell Corp.,* 231 F. App'x 444, 450-51 (6th Cir.2007). The Court declines to address this allegation.

Because Plaintiffs fail to state a claim for breach of contract, Defendants' Motion to Dismiss Count I against Countrywide Loans and Countrywide Bank is granted.

**C. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD AND MISREPRESENTATION**
Defendants say that Plaintiffs failed to plead the elements of fraud with particularity, and there are no allegations that Countrywide Bank made any representations to Plaintiffs. As such, Defendants say Plaintiffs' claim must be dismissed.

***6** Federal Rule of Civil Procedure 9(b) states that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). The Sixth Circuit holds that Rule 9(b) must be read liberally. See *Coffey v. Foamex L.P.,* 2 F.3d 157, 161 (6th Cir.1993). It is also true that at a minimum, the plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the de-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

fendants; and the injury resulting from the fraud." *Id.* at 162. "[A]llegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.* at 162. Moreover, where there are multiple defendants, a claim must identify who made the alleged misrepresentations. *Hoover v. Langston Equipment Assoc., Inc.,* 958 F.2d 742, 745 (6th Cir.1992). A pleading that fails to comply with the requirements of Rule 9(b) fails to state a claim under Rule 12(b)(6). *Michigan ex rel. Kelley v. McDonald Dairy Co.,* 905 F.Supp. 447, 450 (W.D.Mich.1995).

If the Court finds that Plaintiff failed to state fraud with sufficient particularity, "in the absence of defendant's motion for more definitive statement under Rule 12(e), dismissal on this basis alone would not be appropriate." *Coffey* at 162 (6th Cir.1993). However, the Court will not review Defendants' argument regarding Plaintiffs' failure to sufficiently plead fraud with particularity, because the face of Plaintiffs' Complaint reveals that Plaintiffs cannot establish a prima facie case for fraudulent misrepresentation.

Michigan adheres to the general rule that six elements of actionable fraud or misrepresentation must be found and proved by clear and convincing evidence:

1) the defendant made a material misrepresentation; 2) that it was false; 3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; 4) that he made it with the intention that it should be acted upon by plaintiff; 5) that plaintiff acted in reliance upon it; and 6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty.

*Hi-Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 335-36, 247 N.W.2d 813 (1976). A material misrepresentation must be a statement relating to a past or existing fact. *Id.* at 336, 247 N.W.2d 813. Statements of opinion and "puffing" are not representations of material fact that would give rise to a claim of fraud. *Graham v. Myers,* 333 Mich. 111, 115, 52 N.W.2d 621 (1952).

Plaintiffs' theory of recovery against Defendants Country Loans and Countrywide Bank rests upon the alleged misrepresented appraisal values used to induce Plaintiffs into mortgage agreements related to the residential property, and the failure to modify Plaintiffs' loan terms unless they paid additional funds. Plaintiffs allege that the tactics used by Countrywide Loans, Countrywide Bank, and its appraisers constitute fraud. Plaintiffs allege that Schwartz's appraisal used as comparables, single family homes in more affluent subdivisions, which had more square footage and higher values than their condominium. Plaintiffs say that during the time period Schwartz prepared the appraisal on their home, there were comparable condos in their subdivision that had recently sold, and his failure to compare those like properties was a material misrepresentation.

**\*7** However, possession of actual or constructive knowledge of a misrepresentation is not the equivalent of making a material misrepresentation. Plaintiffs do not allege that Countrywide Loans and Countrywide Bank participated in the preparation of the inflated appraisal. Countrywide Loans and Countrywide Bank did not make a material misrepresentation; they did not perform the appraisal on the home, nor did they make statements regarding the value of the home. Further, there are insufficient allegations in the Complaint to establish that Countrywide Loans and Countrywide Bank were aware of an inflated appraisal value.

In any event, the records relied upon to make the appraisal were public. Thus, even if Countrywide Loans and Countrywide Bank were aware of these facts, they could hardly have suppressed this information since it was available to Plaintiffs. There can be no misrepresentation of a material fact where the Plaintiff has equal access to the information alleged to have been misrepresented and sup-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

pressed. See *Wysaski v. Universal Homes, LLC,* 2007 U.S. Dist. LEXIS 21595, 2007 WL 951435 (E.D.Mich.2007).

Similarly, there can be no misrepresentation based on a failure to modify the loan terms. Plaintiffs failed to provide the Court with legal authority stating that Countrywide Loans and Countrywide Bank had a legal duty to modify the loan because Plaintiffs were unhappy with its terms.

For these reasons, Plaintiffs cannot establish a prima facie case of fraud or misrepresentation. The Court grants Defendants' Motion to Dismiss Count II against Defendant Countrywide Loans and Countrywide Bank.

**D. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

Defendants say this claim is baseless because none of the Defendants is a debt collector, as defined by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 et seq.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The term "debt collector" has a particular meaning, however: it refers only to persons attempting to collect debts due "another." See *id.* § 1692a(6) ("The term 'debt collector' means any person who ... regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."). The Sixth Circuit construed the FDCPA in *Montgomery v. Huntington Bank,* 346 F.3d 693 (6th Cir.2003) and, in that case, determined that "the legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors...." *Id.* at 698 (citing *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985) (emphasis added)). See also, *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106 (6th Cir.1996) (quoting S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad. News 1695, 1698); *Aubert v. American Gen. Fin., Inc.,* 137 F.3d 976, 978 (7th Cir.1998) ("Creditors who collect in their own name and whose principal business is not debt collection ... are not subject to the Act.")

**\*8** Notwithstanding the exclusion provided by § 1692a(6)(F), the term "debt collector" includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of the Act, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the enforcement of security interests. The term does not include:

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

\* \* \*

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity

(i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

(ii) concerns a debt which was originated by such person;

(iii) concerns a debt which was not in default at the time it was obtained by such person; or

(iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

15 U.S.C. § 1692a(6).

Plaintiffs allege Countrywide Bank tried to deceive them into believing it does not control Countrywide Loans, when they actually are the same. Plaintiffs also allege the Countrywide employees initiated telephone calls to Plaintiffs and tried to deceive them into believing that Countrywide Loans needed permission from Countrywide Bank to modify the loan. They say Countrywide Loans used subversive means by using the name of its alter ego, and the Countrywide employees asked for $75,000 before a loan modification would be considered.

These allegations, even assuming they are true, are insufficient to state a claim for relief under the FDCPA. First, Plaintiffs allege deceptive acts which center around their requests to obtain a loan modification. Plaintiffs do not allege Defendants made the telephone solicitations and assertions in order to collect a debt. In order for the FDCPA to apply, the practice in question must constitute an attempt to collect a "debt."

Second, Plaintiffs cite the FDCPA, but do not allege which provision of the FDCPA the Defendants violated.

Lastly, none of these Defendants meets the FDCPA's definition of a debt collector. Countrywide Bank originated the loan and is Plaintiffs' creditor, and hence is not a debt collector. Countrywide Loans also is not a debt collector. Plaintiffs do not allege the loan was in default at the time Countrywide Loans began servicing the loan. In fact, they say Countrywide Loans was erroneously submitting their account as late to the credit reporting bureaus. A person is not a "debt collector" subject to the Act if the debt he seeks to collect was not in default at the time he purchased or otherwise obtained it. *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384 (7th Cir.1998). Finally, the Act specifically excludes employees of a creditor who attempt to collect a debt for that creditor. So, the Countrywide employees also are not debt collectors.

**\*9** The Court dismisses Count III against Country Bank, Countrywide Loans, and the Countrywide employees.

**E. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT**

Defendants say that Plaintiffs cannot maintain a claim for unjust enrichment against Countrywide Bank because there is an express contract between those parties. Defendants also say that Plaintiffs have not alleged that Countrywide Loans received any benefit from Plaintiffs.

The elements of an implied contract in law to prevent unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and, (2) inequitable retention by defendant of that benefit. *Roznowski v. Bozyk,* 73 Mich.App. 405, 251 N.W.2d 606, 608 (Mich.Ct.App.1977). However, as Defendants correctly note, an implied contract cannot be enforced where the parties made an express contract covering the same subject matter." *Scholz v. Montgomery Ward & Co.,* 437 Mich. 83, 468 N.W.2d 845, 849 (Mich.1991). There cannot be an express and implied contract covering the same subject matter at the same time. *Superior Ambulance Service v. Lincoln Park,* 19 Mich.App. 655, 173 N.W.2d 236 (1969).

The Court previously found that there is an express contract between Plaintiffs and Countrywide Bank-the Note and the Mortgage. Accordingly, Plaintiffs cannot maintain a claim for unjust enrichment against Countrywide Bank.

As for Countrywide Loans, the defendant must have received a benefit directly from the plaintiff. See *A & M Supply Co. v. Microsoft Corp.,* No. 274164, 2008 Mich.App. LEXIS 433, 2008 WL 540883 (Mich.Ct.App. Feb. 28, 2008). At minimum, this involves some sort of direct contact between the parties. *Id.* Accordingly, Michigan law requires that Plaintiffs allege they provided mortgage proceeds directly to Countrywide Loans. Plaintiffs do not and cannot make such an allegation.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

Page 9

The Court grants Defendants' Motion to Dismiss Count IV against Countrywide Bank and Countrywide Loans.

### F. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE UNIFORM COMMERCIAL CODE, MCL 440.1101 ET SEQ.

Defendants say that foreclosures by advertisement and the sale of this property are governed by MCL 600.3201 et seq., not by the Michigan Uniform Commercial Code ("UCC"), MCL 440.1101 et seq. Defendants say this claim is nonsensical and should be dismissed.

Plaintiffs say the UCC governs their mortgage transaction because the Note which Defendants pledged to guarantee their investors' investment is personal property. They say the UCC requires sales of personal property to be made in a commercially reasonable manner.

Although a mortgage is a contingent interest in real property, a note secured by a mortgage is itself personal property. *Union Guardian Trust Co. v. Nichols,* 311 Mich. 107, 115, 18 N.W.2d 383 (1945). The owner of a note secured by a mortgage may transfer the note to third parties. *Ginsberg v. Capitol City Wrecking Co.,* 300 Mich. 712, 717, 2 N.W.2d 892 (1942). However, only that portion of the package unrelated to the real property is governed by Article Nine when "a promissory note and mortgage together become the subject of a security interest ." *In re Bristol Associates, Inc.,* 505 F.2d 1056, 1061 (3rd Cir.1974). See also *First Nat'l Bank of Boston v. Larson ( In re Kennedy Mortgage Co.),* 17 Bankr.957, 963-65 (Bankr.D.N.J.1982).

*10 As Defendants correctly note, there is no MCL 440.9504(3). MCL 440.9504 contains only 2 subsections:

A financing statement sufficiently indicates the collateral that it covers if the financing statement provides 1 of the following:

(a) A description of the collateral pursuant to section 9108.

(b) An indication that the financing statement covers all assets or all personal property.

MCL 440.9504.

Contrary to Plaintiffs' assertion in the Complaint, this section makes no reference to notice to a debtor.

In their Response, Plaintiffs cite Article Nine of the UCC, MCL 440.9627, as applicable. It says:

(1) The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.

(2) A disposition of collateral is made in a commercially reasonable manner if the disposition is made in the usual manner on any recognized market, at the price current in any recognized market at the time of the disposition, or otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

(3) A collection, enforcement, disposition, or acceptance is commercially reasonable if it has been approved in a judicial proceeding, by a bona fide creditors' committee, by a representative of creditors, or by an assignee for the benefit of creditors.

(4) Approval under subsection (3) need not be obtained, and lack of approval does not mean that the collection, enforcement, disposition, or acceptance is not commercially reasonable.

MCL 440.9627.

Plaintiffs' Complaint alleges it would be com-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692
**(Cite as: 2008 WL 5381866 (E.D.Mich.))**

mercially unreasonable to sell the property at a sheriff's sale for approximately $300,000.00 when the current appraisal is $425,000.00 and Plaintiffs are still willing to pay up to $600,000.00 for the property at a reasonable term and interest rate. However, Article Nine governs secured transactions involving personal property, not sales of foreclosed real property. *See* MCL 444.9109. Therefore, this allegation fails to state a claim under Article Nine of the UCC.

The Court grants Defendants' Motion to Dismiss Count V.

**V. CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendants' Countrywide Home Loans, Inc., Countrywide Bank, Lucy Chacon, Mark Wilson, and Lee Gonzalez's Motion to Dismiss in its entirety.

**IT IS ORDERED.**

E.D.Mich.,2008.
Munson v. Countrywide Home Loans, Inc.
Not Reported in F.Supp.2d, 2008 WL 5381866 (E.D.Mich.), 67 UCC Rep.Serv.2d 692

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.