# EXHIBIT SS



Not Reported in N.W.2d, 2006 WL 2382511 (Mich.App.)
**(Cite as: 2006 WL 2382511 (Mich.App.))**

**C**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.
Maurice R. RUSSELL, Christine A. Russell, Douglas S. Gibson, and Jeane R. Gibson, Plaintiffs/ Counter Defendants-Appellees,
v.
Ina G. ZEEMERING, Defendant/Counter Plaintiff/ Third Party Plaintiff/Counter Defendant-Appellant,
v.
Alvin Decker and Cynthia Decker, Third Party Defendants/Counter Plaintiffs-Appellees,
and
J. David Gibson and Marathon Group, LLC., Third Party Defendants-Appellees.

Docket No. 260660.
Aug. 17, 2006.

Livingston Circuit Court; LC No. 02-019290-CH.

Before: CAVANAGH, P.J., and SMOLENSKI and TALBOT, JJ.

[UNPUBLISHED]
PER CURIAM.

**\*1** Defendant Ina Zeemering appeals as of right from the trial court's order granting judgment in favor of plaintiffs/counter defendants Maurice Russell, Christine Russell, Douglas Gibson, and Jeane Gibson, and dismissing with prejudice defendant's counterclaims and her claims against third party defendants/counter plaintiffs Alvin Decker and Cynthia Decker, and third party defendants John David Gibson and Marathon Group, LLC.[FN1] We affirm in part and remand for proceedings consistent with this opinion.

FN1. John David Gibson is Douglas Gib-

son's father. For ease of reference, we will refer to John David Gibson as David.

This suit arises from a dispute concerning the scope of an express easement and a dispute regarding whether the Russells and Alvin Decker had notice of defendant's claimed right to extend the easement to service additional property splits when they purchased their respective parcels. David, a land developer, using the entity Marathon Group, LLC, divided a piece of property with frontage on Curdy Road into three parcels. David obtained a permit to construct a private road, later named Happy Hollow Lane, that would run along the western edge of all three parcels to provide access to Curdy Road, and he sold the northernmost parcel to Douglas and Jeane Gibson. Defendant then approached David and offered to pay for the road construction costs if she could use the road to access property she held north of the property owned by Douglas and Jeane, which she was in the process of splitting. Two recorded deeds establish that Marathon Group and Douglas and Jeane Gibson granted an easement to defendant for access to Curdy Road over Happy Hollow Lane for the benefit of parcels identified as A, B, C, and D. The parties to the deeds also signed an agreement to convey a road easement that indicated the parties thereto agreed to extend the road easement in the future "to benefit those properties owned by Happy Hollow Ranch, Ltd., and Zeemering Enterprises, Ltd." However, this agreement was not recorded.

Happy Hollow Ranch and Zeemering Enterprises owned additional property to the north of parcels A, B, C, and D. Defendant was the sole owner of Happy Hollow Ranch and owned a 98 percent stake in Zeemering Enterprises. Eventually, defendant split the parcels owned by Zeemering Enterprises and Happy Hollow Ranch and constructed an extension of Happy Hollow Lane to benefit those properties.

Meanwhile, shortly after Marathon Group and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2006 WL 2382511 (Mich.App.)
(Cite as: 2006 WL 2382511 (Mich.App.))

Jeane and Douglas Gibson agreed to grant defendant the easement, Marathon Group sold its parcel abutting Curdy Road to Alvin Decker. The middle parcel was sold to Michael Wallace, a builder, who sold it to Maurice and Christine Russell. The Russells and Douglas and Jeane Gibson objected to defendant's use of Happy Hollow Lane to access property north of parcels A, B, C, and D and brought this suit seeking a declaratory judgment regarding the parties' rights and responsibilities with regard to Happy Hollow Lane. Defendant filed a counter complaint and a third party complaint seeking declaratory relief and asserting several claims for damages. The Deckers responded by filing a counter complaint against defendant seeking injunctive relief requiring the removal of a for sale sign defendant had placed on their property.

*2 The trial court granted the Deckers' request for injunctive relief. Following a bench trial, the court granted judgment in favor of plaintiffs finding that because neither the Deckers nor Russells had notice of defendant's intent to extend the easement north of parcels A, B, C, and D when they purchased their respective properties, the use of Happy Hollow Lane by defendant and her successors was limited to accessing those four parcels. The trial court further dismissed with prejudice defendant's claims for damages. Defendant now appeals.

Defendant first asserts that the trial court erred by concluding that neither the Russells nor Alvin Decker had notice of her intent to extend the easement. In an equitable action, this Court reviews "the trial court's findings of fact for clear error" and the trial court's holdings de novo. *Higgins Lake Prop Owners Ass'n v Gerrish Twp,* 255 Mich.App 83, 117; 662 NW2d 387 (2003).

MCL 565.29 provides in relevant part as follows:

Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

"A good-faith purchaser is one who purchases without notice of a defect in the vendor's title." *Michigan Nat'l Bank & Trust Co v Morren,* 194 Mich.App 407, 410; 487 NW2d 784 (1992). A person is chargeable with constructive notice when, having the means of knowledge, he does not use them. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries and does not make, but studiously avoids making, the obvious inquiries, he must be taken to have notice of those facts which, had he used ordinary diligence, would have been readily ascertained. [ *Deputy Comm'r of Agriculture v. O & A Electric Coop, Inc,* 332 Mich. 713, 716; 52 NW2d 565 (1952).]

Here, both the Russells and the Deckers denied having actual notice of defendant's intent to extend Happy Hollow Lane to her property north of parcels A, B, C, and D, when they made their purchases, and no evidence was presented suggesting that they had actual notice. Accordingly, defendant can only prevail against them if she can establish that they had constructive notice that she intended to extend the easement to her northern property. To that end, defendant relies, in part, on the physical characteristics of the property. However, many of the physical characteristics or changes defendant references were notable only after the Russells and Alvin purchased their respective properties, including, for example, the fact that defendant eventually extended the road north of parcels A, B, C, and D.

We conclude the physical characteristics of the property at the time the Russells and Alvin made their purchases indicated that the easement extended only as far as parcels A, B, C, and D. Specifically, Maurice testified that he saw four parcels for sale north of the Gibsons' property and that Happy Hollow Lane ended in a cul de sac at that point. At the time Alvin inspected the area prior to his purchase, there was no road at all, but only a two-track

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in N.W.2d, 2006 WL 2382511 (Mich.App.)
**(Cite as: 2006 WL 2382511 (Mich.App.))**

extending from Curdy Road to the Gibsons' home. Defendant notes that the Russells' and Alvin's mortgage surveys show Happy Hollow Lane extending past their properties without end. However, neither survey shows the northern edge of the Gibsons' property, to which it is undisputed that the easement extends. Accordingly, the mortgage survey maps would not have provided constructive notice of a northern extension of the easement.

**\*3** Defendant's primary argument that the Russells and Alvin had constructive notice of her intent to extend the easement relies on the fact that the recorded deeds referenced the easement agreement. However, the context in which the agreement was referenced in the deeds suggests that the agreement was simply an initial agreement between the parties to the deeds that outlined their respective duties including the standards for the improvements to the road. The context in which the agreement is referenced does not suggest that the agreement extends the easement beyond what is provided for in the recorded deeds.

But even if the reference in the deeds to the agreement would provisionally put persons on notice that they should read the agreement to determine if it contained any information the potential purchasers should have been aware of, it is not clear that the agreement would have been readily ascertainable to a reasonably diligent person in the position of the purchasers. Certainly, the agreement was not recorded in the public records. Further, there is no evidence that Wallace, the seller of the Russells' property, even knew of the agreement or its terms. And, while Alvin could have learned of the agreement if he had questioned David, David testified that he believed the agreement did not provide for an extension of the easement to defendant's northern property. Thus, to learn of the possibility of a northern extension, Alvin would have had to obtain a copy of the agreement from David, and then have had it reviewed by an attorney who could tell him that the property owned by Happy Hollow Ranch and Zeemering Enterprises included defendant's

property north of parcels A, B, C, and D. In light of the fact that the apparent use of the easement was consistent with the record title at the time Alvin and the Russells made their purchases, we conclude that the trial court's finding that the facts available to the purchasers were insufficient to require such inquiries was not clearly erroneous.

On the other hand, the situation is different with respect to Douglas and Jeane Gibson. As parties to the deeds and the easement agreement, they are bound by its terms. See *Michigan Fire & Marine Ins Co v Hamilton,* 284 Mich. 417, 419; 279 NW 884 (1938) (noting that the predecessor to MCL 565.29, 1929 CL 26.547, required that mortgages be recorded, but that "[t]he object of recording the mortgage is to give notice to third persons. The rule is well-nigh universal in the United States that, as between the parties thereto, the mortgage is just as effectual for all purposes without recording as it is with it.").FN2 Therefore, if the agreement is a valid contract that provides for the extension of Happy Hollow Lane for access to defendant's northern property, the agreement to extend Happy Hollow Lane for access to defendant's northern property is binding as to Douglas and Jeane. Further, having this agreement be binding on Douglas and Jeane would not necessarily be meaningless. For instance, if the Russells and Deckers were to sell their parcels, defendant (or her heirs, successors, or assigns) could negotiate with the Russells' and Deckers' successors for the use of Happy Hollow Lane to access her northern properties from Curdy Road and she would not have to negotiate a new agreement with the Gibsons.

FN2. The same analysis clearly applies to an easement.

**\*4** However, because there was some dispute in the trial court as to the intent of the grantors in signing the agreement, and what the language of the agreement required that the trial court never resolved, we conclude the case must be remanded for a determination of exactly what the agreement requires. In other words, the trial court must decide

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in N.W.2d, 2006 WL 2382511 (Mich.App.)
**(Cite as: 2006 WL 2382511 (Mich.App.))**

whether defendant's easement over Gibsons' property, presuming that she eventually gains access to Curdy Road over the property that currently belongs to the Deckers and the Russells, entitles the owners of any back lot parcels at one time owned by Happy Hollow Ranch and Zeemering Enterprises to use Happy Hollow Lane for access no matter how many times the back lots are split or subdivided without the need for any further assent on the part of the Gibsons, their heirs, successors, or assigns.

Defendant next argues that the trial court erred by finding in favor of the Gibsons and Marathon Group on her claims for damages. We disagree. "This Court reviews for clear error a trial court's factual findings following a bench trial; however, legal conclusions are reviewed de novo." *Villadsen v. Mason Co Rd Comm,* 268 Mich.App 287, 303; 706 NW2d 897 (2005).

Defendant asserts that the Gibsons and Marathon Group breached their contract with her by failing to inform their successors of the agreement to extend the easement to benefit the northern parcels owned by Happy Hollow Ranch and Zeemering Enterprises. However, Douglas and Jeane Gibson have not transferred their property to anyone else, so they could not be held liable under this theory. Similarly, because David was acting on behalf of Marathon Group in his negotiations with defendant, he did not have a contract with defendant, and, accordingly, cannot be held to have breached a contract with her. Moreover, the written agreements between the parties do not indicate that it was the Gibsons' or Marathon Group's duty to provide notice to their successors, and the evidence adduced at trial showed that it was defendant who agreed to have the necessary documents recorded, the purpose of recording being to give notice to subsequent purchasers.

Defendant also claims that David and Marathon Group breached their contract with her by failing to inform her that David had received an offer to purchase from Alvin before defendant and the Gibsons

signed the relevant easement documents. However, defendant has not cited to a contractual provision that required such a disclosure and has not cited to any legal authority that would require such a disclosure. An appellate court need not address an assertion of error unsupported by appropriate citation. *Wilson v. Taylor,* 457 Mich. 232, 243; 577 NW2d 100 (1998). Accordingly, we decline to address this assertion of error.

Defendant next asserts that the trial court erred by finding in favor of the Gibsons and Marathon Group on her claim based on the theory of unjust enrichment.

In order to sustain the claim of unjust enrichment, plaintiff [defendant here] must establish (1) the receipt of a benefit by defendant [the Gibsons and Marathon Group] from plaintiff [defendant], and (2) an inequity resulting to plaintiff [defendant] because of the retention of the benefit by defendant [the Gibsons and Marathon Group]. If this is established, the law will imply a contract in order to prevent unjust enrichment. However, a contract will be implied only if there is no express contract covering the same subject matter. [ *Belle Isle Grill Corp v. Detroit,* 256 Mich.App 463, 478; 666 NW2d 271 (2003) (citations omitted).]

**\*5** We conclude that there was a contract between Marathon Group, Douglas and Jeane Gibson, and defendant covering this subject matter. Specifically, defendant agreed to make the road improvements for the benefit of Marathon Group and Douglas and Jeane Gibson in exchange for the easement. Accordingly, no contract can be implied to prevent unjust enrichment to Marathon Group and Douglas and Jeane Gibson. *Id.* Moreover, the trial court implicitly found that no inequity resulted because defendant could have avoided the loss of the benefit of the bargain she thought she had made if she had only ensured that the agreement had been properly recorded. We further note that defendant did receive an easement to benefit parcels A, B, C, and D, which also undermines her assertion that an inequitable result has occurred. Accordingly, we

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in N.W.2d, 2006 WL 2382511 (Mich.App.)
**(Cite as: 2006 WL 2382511 (Mich.App.))**

conclude the trial court did not err by finding in fa-vor of the Gibsons and Marathon Group on defend-ant's unjust enrichment claim.

Defendant further asserts that the trial court erred by finding in favor of the Gibsons and Mara-thon Group on her interference with an economic advantage claim. The elements of interference with a prospective economic advantage are as follows:

the existence of a valid business relationship or the expectation of such a relationship between the plaintiff and some third party, knowledge of the relationship or expectation of the relationship by the defendant, and an intentional interference causing termination of the relationship or expect-ation, resulting in damages to the plaintiff. [ *Blazer Foods, Inc v Restaurant Properties, Inc,* 259 Mich.App 241, 254; 673 NW2d 805 (2003).]

The only evidence of "intentional interference" to which defendant cites is the evidence that no one objected at public hearings concerning the exten-sions of Happy Hollow Lane. How such actions constitute intentional interference is unclear. In any event, we find that any damages defendant suffered were a result of her failure to ensure the agreement was properly recorded. Her damages did not flow from the Gibsons' or Marathon Group's alleged in-terference with her business expectations.

Defendant next asserts that the trial court erred by finding in favor of the Gibsons and Marathon Group on her slander of title claim. Again, we dis-agree.

The cause of action for slander of title occurs when there is a false and malicious statement made to disparage a person's title to real estate. The elements of slander of title are (1) falsity of the statement made, and (2) malice. [ *Bonner v. Chicago Title Ins Co,* 194 Mich.App 462, 469; 487 NW2d 807 (1992)* (citation omitted).]

Here, defendant has failed to cite to any false statement made by the Gibsons or Marathon Group

concerning her or her corporations' title to real es-tate. Accordingly, the trial court properly granted judgment in favor of the Gibsons and Marathon Group on defendant's slander of title claim.

We affirm the decision of the trial court limit-ing defendant's easement over the Deckers' and Russells' properties to accessing parcels A, B, C, and D, and dismissing defendant's claims for dam-ages. However, we remand this case to the trial court for a determination of what rights defendant has to the easement over the Gibsons' property un-der the Agreement to Convey Road Easement. We do not retain jurisdiction.

Mich.App.,2006.
Russell v. Zeemering
Not Reported in N.W.2d, 2006 WL 2382511 (Mich.App.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.