# EXHIBIT TT



Page 1

155 P.3d 1220, 2007 WL 1175858 (Kan.App.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 155 P.3d 1220, 2007 WL 1175858 (Kan.App.))**

**H**
(Pursuant to Kansas Supreme Court Rule 7.04(f), unpublished opinions are not precedential and are not favored for citation. They may be cited for persuasive authority on a material issue not addressed by a published Kansas appellate court opinion.)

Court of Appeals of Kansas.
SENNE & COMPANY, INC., et al., Appellants,
v.
SIMON CAPITAL LIMITED PARTNERSHIP, d/b/a Simon Property Group, Inc ., et al., Appellees.

No. 93,302.
April 20, 2007.
Review Denied Sept. 27, 2007.

Appeal from Shawnee District Court; Fred S. Jackson, judge. Opinion filed April 20, 2007. Affirmed.
Richard M. Paul III and G. Edgar James, of Shughart Thomson & Kilroy, P.C., of Kansas City, Missouri, for appellants.

Jere D. Sellers and Stewart M. Stein, of Stinson Morrison Hecker LLP, of Kansas City, Missouri, for appellees.

Before RULON, C.J., MALONE and HILL, JJ.

MEMORANDUM OPINION
PER CURIAM.
*1 This is a mechanics' lien case. The appellants were unsuccessful at trial in their attempts to make their respective liens binding upon the fee interest owners of the West Ridge Mall Shopping Center in Topeka. They now, in a three-part argument, contend that the district court erred because the owners, as well as their tenant, had extensive control over construction and planning of all improvements that were made; that all construction for the tenant was done in accordance with the owners' specifications and preferences; and, equity weighs in their favor. Because there is nothing in the record that indicates the fee simple owners received an overall benefit here, we hold that there is no implied agency between the tenant and landlord and the district court did not err when it ruled the contractors' liens did not extend to the fee interest.

In their second issue, the lien holders complain about hearsay evidence that was admitted at trial. While we agree that it was erroneously admitted, we believe its admission was harmless. We affirm.

*Background Facts and Prior Proceedings*
Kansas International Museum (KIM) leased space in West Ridge Mall Shopping Center from Simon Capital Limited Partnership, d/b/a Simon Property Group, Inc. (Simon). KIM hired several contractors, including Senne & Company, Inc. (Senne), to construct improvements upon the leased premises. KIM eventually abandoned the premises without paying the contractors for their work. The contractors sought to extend their respective mechanic's liens to Simon's fee interest. Summary judgment was granted previously to Simon against all of the lien claimants. That ruling was appealed to this court in *Senne & Company, Inc. v. Simon Capital Limited Partnership,* No. 93,434, unpublished opinion filed July 29, 2005 (*Senne I* ). We affirmed the grant of summary judgment on all theories except implied agency. We remanded the case for a determination of whether Senne's improvements provided a benefit to Simon, thereby implying an agency and responsibility for payment. On remand the district court conducted a bench trial. The parties stipulated to certain facts, and the sole issue before the court was to decide if Simon received a benefit from the tenant improvements, thus creating an implied agency. The trial court decided that Simon did not receive such a benefit. The contractors now appeal the district court's ruling in favor of Simon.

At trial Senne presented the testimony of several contractors, an architect, and the representative

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

155 P.3d 1220, 2007 WL 1175858 (Kan.App.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 155 P.3d 1220, 2007 WL 1175858 (Kan.App.))**

of a management company employed by KIM. Their testimony was virtually identical. Each contractor discussed the extent of its improvements and how they contributed to or beautified the space. In fact, most of the improvements remained on the premises including the paint, a display case, the heating and air conditioning system, additional restrooms, a new fire alarm system and electrical features, carpeting, additional walls, and an elevator. Some of these improvements have been used by Simon and the subsequent tenants.

**\*2** Going further, they also testified about the degree of involvement Simon maintained in the construction process. Simon attended most, if not all, of the construction meetings and authorized all construction plans. On several occasions, Simon vetoed KIM's proposed improvements and ordered that they be reworked. For example, Simon would not permit KIM to remove the escalators in order to create more floor space and insisted that KIM fill in the escalator openings instead. KIM also discussed removing the skylight, but Simon preferred to maintain its integrity by simply closing it off.

To this end, Arlin Meats, the Mall manager and employee of Simon, testified that he did a daily walk-through of the premises during construction to inspect the quality of the work and insure the improvements were being made according to Simon's specifications. He indicated that from his point of view, Simon's primary concern was maintaining the integrity of the building, the "overall box" or actual structure of the premises. Meats also testified that two merchants, Bargain Books and Homier Tent Sales, have subsequently leased the gift shop portion of the premises. Both merchants executed only short-term leases and, at the time of trial, Simon had not been able to find another long-term tenant.

Simon called only Scott Richardson, its development director, to testify regarding the process of leasing space in the Mall. He stated that Simon could potentially lease the premise to another museum but would prefer to have a retailer. Richardson also discussed the ongoing negotiations between Simon and Burlington Coat Factory Warehouse of Topeka, Inc. (Burlington Coat Factory) to lease the space previously occupied by KIM. On multiple occasions, Richardson indicated that he was not personally involved with the negotiations but was aware of the ongoing discussions. During Richardson's testimony, Simon presented a proposal it had received several days before trial from Burlington Coat Factory outlining the details of the anticipated lease. Senne objected on hearsay grounds, insisting that Richardson did not have personal knowledge of the negotiations and, therefore, his testimony and the proposal were improper hearsay. Simon responded that the proposal was offered solely to demonstrate the company had received it. As such, the district court overruled Senne's objection.

Ultimately, when the district court ruled on the matter it first noted that neither the mechanic's lien statute nor PIK Civ.3d instructions provides a definition of the word "benefit." The district court concluded: "A review of the relevant Kansas mechanic lien cases indicates no court has found a benefit to the landlord rises to the level of imposing liability against the fee interest. [Citations omitted.]" The court decided that this case is similar to *Kansas City Heartland Constr. Co. v. Maggie Jones Southport Café, Inc.,* 250 Kan. 32, 824 P.2d 926 (1992), and determined that abatement of rent during renovation and KIM's acceptance of the property " 'as is' " did not create an agency relationship.

**\*3** Furthermore, the court found that the work performed by Senne was completed according to the unique needs and designs of KIM. Simply because Simon agreed to KIM's improvements, that agreement did not necessarily confer a benefit upon Simon. In fact, Simon has been unable to let the space since KIM vacated nearly 3 years ago. One prospective tenant, Burlington Coat Factory, has indicated that in order make use of the space, the property will have to be restored to its condition prior to KIM's improvements. Although Senne performed considerable work on the premises, the dis-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

155 P.3d 1220, 2007 WL 1175858 (Kan.App.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 155 P.3d 1220, 2007 WL 1175858 (Kan.App.))**

trict court held that Senne failed to provide sufficient evidence demonstrating that Simon received a benefit from the improvements.

In this appeal Senne and the other contractors attack the district court's ruling in three ways. First, because Simon had extensive control over construction and planning of the improvements and they were completed to Simon's specifications and preferences, Senne insists that they provided Simon with a significant benefit. Second, Senne contends the improvements were intrinsically valuable. They give a detailed explanation of the improvements and how Simon has and will continue to receive a benefit from such improvements. Finally, they argue that even if Simon did not receive a benefit from the improvements Senne argues that all the equities weigh in its favor.

In its second issue on appeal, Senne contends that the district court erred in admitting the proposal from Burlington Coat Factory indicating Simon would have to remove the improvements made by Senne. Furthermore, Richardson's testimony regarding the document without personal knowledge also constitutes inadmissible hearsay. Senne insists that the inclusion of this evidence was prejudicial because the district court relied upon it when drafting its order and conclusion.

*What we must decide about improvements and benefits.*

The controlling law of this case arises from *Lentz Plumbing Co. v. Fee,* 235 Kan. 266, 272, 679 P.2d 736 (1984), in which our Supreme Court indicated that real property may be subject to a lien for work completed at the demand of a lessee where the lessee is regarded as an agent of the lessor. Whether the lessee may be regarded as an agent of the lessor depends primarily upon whether the lessor received a benefit from the improvements. *Heartland,* 250 Kan. at 38-39.

> "If the lessee acts for himself, no lien will attach to the property of the lessor. But where the owner rents his property to another and stipulates in the lease that improvements may be made on the property by the lessee, and the expense thereof deducted from the rentals to be paid him, the lessee may be regarded as the agent of the owner, and those doing the work and furnishing materials for improving the property will be entitled to a lien on the interest estate of the lessee and the owner. [Citation omitted.]" *Lentz,* 235 Kan. at 273.

Accordingly, we must determine whether Simon received a sufficient benefit from the improvements made to the leased premises to create an implied agency relationship between Simon and KIM, thus permitting Senne to extend its lien to Simon's fee interest.

*Control by Simon*

**\*4** First, Senne argues that Simon had extensive control and authority over the construction of improvements in the space leased by KIM. According then to *Heartland,* 250 Kan. at 37, Senne contends that Simon's authorization of its work is sufficient to create an agency relationship. Furthermore, by maintaining control of the scope and nature, the improvements were constructed according to Simon's standards, thus providing Simon with a benefit.

Previously, we have rejected this argument. We stated that "mere knowledge of improvements and involvement in their approval does not, alone, establish an agency relationship between a lessor and lessee." *Senne I,* slip op at 12. There is no evidence that KIM received any reduction in rent payments because of the improvements or that Simon ratified any of the contracts entered between KIM and the contractors. Furthermore, none of the contractors sought or obtained a guaranty from Simon for payment of any work performed.

Senne has provided no additional legal or factual analysis to overcome this court's prior conclusion. Senne merely reiterates the fact that Simon directed and controlled the improvements by overseeing the plans and attending the construction

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

155 P.3d 1220, 2007 WL 1175858 (Kan.App.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 155 P.3d 1220, 2007 WL 1175858 (Kan.App.))**

Page 4

meetings. We see no reason to change our ruling now.

*Intrinsic Benefits*

Senne lists the numerous installations and modifications constructed upon the leased property, including a new elevator, new restrooms, the creation of new floor space, a new display window, new electrical wiring and plumbing, and a new heating and cooling system. According to Senne, the mere installation of these improvements alone provided Simon with a significant benefit. In contrast to the district court's conclusion, Senne argues that these benefits are not limited to cosmetic or routine maintenance. Moreover, because Simon forced KIM to leave the improvements at the termination of the lease, Senne insists that Simon purposefully retained these benefits and will continue to receive a benefit well into the future. To illustrate this point, Senne describes Simon's nonstop use of both the fire alarm system and heating and cooling system since KIM vacated the premises. These two systems were also used by the subsequent tenants.

Senne also asserts that Simon received a number of intangible benefits from the improvements. For example, the construction permitted KIM to open the museum, which, in turn, increased the number of visitors to and sales at the Mall and would ultimately result in more square footage for Simon to lease. Furthermore, upon completion of the improvements, Simon received a benefit in the form of rent payments from KIM.

On the other side, Simon argues that these improvements simply do not provide a sufficient benefit under current case law. First, Simon insists that KIM was allowed to remove certain property; therefore, the improvements that remained were left at KIM's discretion and not at the insistence of or for the benefit of Simon. Second, the Supreme Court in *Heartland,* 250 Kan. at 40, rejected the argument that payment of rent provides the requisite benefit. Third, lease of the gift shop by Bargain Books and Homier Tent Sales did not provide a sufficient benefit because they were short-term, seasonal tenants who leased only a fraction of the premises, which was largely unimproved. Finally, the space has generally remained vacant for almost 3 years since KIM left. In essence, the improvements not only have failed to attract new tenants, but also may have had the effect of repelling new tenants.

*5 Here, much like the original appeal, the parties disagree as to whether KIM was permitted to remove certain improvements at the termination of the lease. The importance of this distinction arises from *Heartland,* in which the court concluded that no implied agency existed in part because the tenant was not required to surrender *all* improvements at the termination of the lease. 250 Kan. at 38; *Lumber Co. v. Band Co.,* 89 Kan. 788, Syl. ¶ 1, 132 Pac. 992 (1913) (where the landlord received a benefit because all improvements made by the tenant became permanent fixtures pursuant to the lease). In order to determine whether that distinction applies here, a brief comparison of the lease provisions is helpful. In *Heartland,* the lease provided:

> " 'ARTICLE 23. SURRENDER.... On or before the last day of the term or the sooner termination thereof, Tenant shall at its expense, remove its trade fixtures, signs and carpeting from the leased premises and any property not removed shall be deemed abandoned. Any damage caused by Tenant in the removal of such items shall be repaired by and at Tenant's expense. All alterations, additions, improvements and fixtures (other than Tenant's trade fixtures, signs and carpeting) which have been installed or made by either Landlord or Tenant upon the leased premises and all hard surface bonded or adhesively affixed flooring shall remain upon and be surrendered with leased premises as a part thereof....' " 250 Kan. at 38.

In that case, the court interpreted the provision to permit the tenant to remove any trade fixtures, signs, or carpeting from the premises; therefore, no agency existed. *Heartland,* 250 Kan. at 38. Here,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

155 P.3d 1220, 2007 WL 1175858 (Kan.App.)
**(Table, Text in WESTLAWN), Unpublished Disposition**
**(Cite as: 155 P.3d 1220, 2007 WL 1175858 (Kan.App.))**

Section 10.1 of the lease describes KIM's ability to remove improvements:

"All alterations, changes and additions and all improvements, including leasehold improvements, made by Tenant whether part of Tenant's Work or not, shall immediately upon installation attach to the fee and become Landlord's property and shall not be removed unless replaced by like property. If Tenant fails to remove any shelving, decorations, equipment, trade fixtures or personal property from the Premises prior to the end of the Lease Term, they shall become Landlord's property and Tenant shall repair or pay for the repair of any damage done to the Premises resulting from removing same but not for painting or redecorating the Premises."

On remand, the district court concluded: "The Lease language in the instant case is similar to that in *Heartland,* such that KIM was allowed to remove shelving, decorations, equipment, trade fixtures or other personal property. Therefore, as in *Heartland* there is no implied agency or benefit to Simon because KIM could remove certain property." Nevertheless, Senne insists that the district court improperly interpreted this provision and that KIM only retained the right to remove personal property.

Here, the lease provision makes an exception for other improvements such as shelving, decorations, equipment, trade fixtures, *as well as* personal property. In comparison, the lease in *Heartland* permitted the lessee to remove trade fixtures, signs, and carpeting from the premises. While the provision in this case begins in a much more prohibitive manner, the lease actually permitted KIM to remove more of the improvements and other property than the lease did in *Heartland.* A closer reading of these provisions indicates that neither KIM nor the tenant in *Heartland* were required to surrender *all* improvements. The fact that Meats performed a walk-through of the premises after KIM left to make sure nothing had been removed is inconclusive since Simon did have a right to retain many of the improvements. Therefore, under *Heartland,* KIM's ability to remove a portion of the improvements is a factor that now weighs in Simon's favor. See also *Lentz,* 235 Kan. at 273 (holding that improvements were not for the lessor's benefit because the lease permitted the tenant to remove property at its expiration).

**\*6** Contrary to Senne's first and most prevalent assertion, mere completion and presence of the improvements cannot be deemed to provide Simon a benefit. In fact, the evidence indicates that Simon would probably have been in a better position to lease the space if none of the improvements were present. Arlin Meats testified that "[w]hen retailers come in they usually demo the previous space for the tenant improvement back down to bare walls, bare concrete, bare ceiling and construct." In addition, Simon inquired of Scott Richardson whether the improvements made by KIM were of any value to a retail user. Richardson responded, "No, in most cases because of the retailers having 'prototypical buildings,' ... it's even more beneficial for the entire building to be demolished."

These improvements must be viewed in the context of the lease and the Mall as a whole-to hold otherwise would permit a mechanic's lien to attach to real property any time substantial improvements are completed regardless of whether the improvements actually deter subsequent tenants or provide more harm than good. Again, while it is true that Simon and the two subsequent tenants continued to use some of the improvements after KIM's departure, the benefit Simon has received does not rise above that typically received by a lessor. In fact, most of these benefits may be described as incidental. For example, the contractor who modified the heating and cooling system indicated that the HVAC system was probably functioning prior to his work. And the fire alarm system was in operation prior to the commencement of KIM's lease; the contractor simply modified it to accommodate a museum rather than a department store.

Finally, Senne suggests that an agency relation-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

155 P.3d 1220, 2007 WL 1175858 (Kan.App.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 155 P.3d 1220, 2007 WL 1175858 (Kan.App.))**

ship existed because Simon undoubtedly received a benefit from the improvements; in other words, Simon no doubt received an abundance of benefits, much less a single benefit. While it is true that this court framed the issue on remand in terms of whether Simon received a benefit, Senne misinterprets the query. Clearly, this court did not remand the case for determination of whether Simon received *a single benefit.* If this court followed Senne's single benefit argument, then any tenant who made an improvement, no matter how insignificant, would be entitled to a mechanic's lien against the fee interest. Common sense and our Supreme Court's conservative application of *Lentz* dictate otherwise.

This court remanded the case to determine if Simon derived a benefit from the many improvements *as a whole.* By citing each individual improvement as evidence of a benefit, Senne seems to overlook the distinction between "a benefit" and "an improvement." In this context, an improvement does not necessarily equate to a benefit; instead, each improvement either adds to or detracts from the ultimate benefit or loss Simon received. To illustrate this point, the paint applied to the premises leased by KIM provides a benefit by protecting the underlying surface. But suppose that paint is unusual or an unpleasant color. In order to accommodate a subsequent tenant, the paint would have to be removed or covered. While it is true that the paint provides the benefit of a protective coating, it may ultimately provide more trouble than it is worth.

**\*7** In deciding whether the landlord received a benefit as contemplated by *Lentz,* the court must necessarily consider whether the alleged benefit of improvements exceeds the inconveniences or nuisances that also arise from those improvements. A "benefit" is defined as an "advantage; privilege ... [p]rofit, or gain." Black's Law Dictionary 166 (8th ed.2004.) Whereas "gain" is "[a]n increase in amount, degree, or value" and "profit" is "[t]he excess of revenues over expenditures in a business transaction." Black's Law Dictionary 700, 1246.

Accordingly, the question before this court is whether the benefit or gain Simon received from the improvements *exceeded* the cost of dealing with the improvements at the termination of KIM's lease. Simon has provided evidence that new tenants to the Mall often demolish most or all of the improvements made by the prior tenant. Furthermore, the modifications made by KIM are so substantial and unique that unless Simon leases space to another museum, it is highly likely that the next tenant would be forced to remove the improvements. Had Simon aspired to transform the premises into a museum and sought out tenants that would rent and modify the space appropriately in exchange for abatement of rent, the outcome might be different. However, the record indicates that the premises had been empty for over a year when KIM sought to lease the space and insisted on transforming it into a museum.

We think that the rule in *Lentz* is difficult to apply in cases involving property that substantially changes from tenant to tenant. See *Waite Lumber Co., Inc. v. Masid Bros., Inc.,* 189 Neb. 10, 18-20, 200 N.W.2d 119 (1972) (noting that landlord's lease of the property to a "similar operation" after tenant made substantial changes was sufficient to justify attachment of a mechanic's lien to the real property).

Although Senne constructed significant improvements on the leased premises, there is no evidence that Simon received a benefit beyond those anticipated by any lessor that permits their lessee to modify the property. Without any indication that Simon received an overall benefit, no implied agency existed between Simon and KIM. Therefore, the district court did not err in concluding that Senne and the other contractors' liens should not extend to Simon's fee interest.

*Equity*
Finally, Senne argues that the equities weigh in its favor. Senne insists that Kansas lien law favors the unpaid materialman and laborer. Furthermore, Simon did not take appropriate steps to protect it-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

155 P.3d 1220, 2007 WL 1175858 (Kan.App.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 155 P.3d 1220, 2007 WL 1175858 (Kan.App.))**

self from this very situation. Specifically, Simon could have required KIM to furnish payment or performance bonds to assure the contractors were paid pursuant to Section 3.3 of the lease.

Simon responds to Senne's argument by reiterating its previous assertion that the improvements will probably have to be removed in order to accommodate a new tenant. Due to the unusual nature of a museum, the improvements Senne made are very different from those normally made to a leased spaced and will not translate to other tenants. For example, because the walls constructed by Senne form a virtual maze, they will probably have to be demolished. If the walls are removed, which is likely, the carpet will also have to be removed. Furthermore, the fire alarm system may have to be changed because the fire code requirements are different for a museum than a department store. According to Simon, these few examples illustrate why the equities do not weigh in Senne's favor.

**\*8** Senne appears to make a quantum meruit or unjust enrichment-type argument. But Senne fails to acknowledge that the underlying premise of a claim for unjust enrichment is that the defendant received a benefit without having paid for it. See *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.,* 21 Kan.App.2d 833, Syl. ¶ 5, 908 P.2d 1315 (1995), *rev. denied* 259 Kan. 928 (1996).

While it is admittedly unfair that Senne and the other contractors were not fully compensated for their services, it is equally unfair that a party which did not receive a benefit should have to pick up the slack. If this court were to follow Senne's argument, Simon would have to pay for the extensive improvements that are probably of use only to a museum and pay again to have the improvements removed. Although Senne completed a significant number of improvements and modifications, Senne has provided no evidence that Simon received a benefit from the improvements. Weighing the equities here do not compel us to rule in Senne's favor.

*No abuse of discretion in admitting hearsay.*

Richardson testified during trial about ongoing negotiations between Simon and Burlington Coat Factory to lease the space previously rented by KIM. He indicated that he was not personally involved with the negotiations but rather simply aware of their progress. During his testimony, Simon presented a proposal it had received from Burlington Coat Factory with anticipated lease terms. Section 9 of the proposal provides: "Construction: Landlord will agree to build Tenant a turn-key store using prototypical drawings that will be provided by Tenant. These drawings will be used as the standards of quality and scope of Landlord's work." Richardson understood that Simon would have to demolish the leased space and rebuild the premises according to Burlington Coat Factory's specifications. The district court overruled Senne's hearsay objections. We review questions about the admission of evidence using an abuse of discretion standard. See *Garrett v. Read,* 278 Kan. 662, 667, 102 P.3d 436 (2004).

Generally, hearsay is evidence "of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." See K.S.A.2006 Supp. 60-460. Unless the statement qualifies as one of the many exceptions listed in the statute, it is inadmissible and should be excluded upon proper and timely objection by the opposing party.

Simon does not contest that the testimony and proposal were hearsay or argue that any of the exceptions apply. Instead, Simon argues that admission of this evidence had no prejudicial effect and did not influence the outcome of the case. They contend that the district court did not rely heavily on this evidence in its order. Simon also argues that the court reasonably believed Richardson had personal knowledge of the discussions with prospective tenants.

It is unclear from the record for what purpose the proposal and testimony were offered other than to show that Simon would have to remove all of KIM's improvements in order to lease the premises

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

155 P.3d 1220, 2007 WL 1175858 (Kan.App.)
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 155 P.3d 1220, 2007 WL 1175858 (Kan.App.))**

to Burlington Coat Factory. As Senne pointed out, Richardson did not have any personal knowledge of the negotiations; rather, he recited second-hand information he had obtained from other individuals who were actually party to the negotiations. Because no exception to the hearsay rule applies in this situation, the district court erred in admitting the proposal from Burlington Coat Factory and the testimony of Richardson regarding the negotiations.

**\*9** We next examine the ruling by applying the harmless error rule of K.S.A. 60-261, which provides that a trial court's error in the admission of evidence is not grounds for granting a new trial or setting aside a verdict unless refusal to take such action appears inconsistent with substantial justice. If this court is willing to declare that the error had little, if any, likelihood of having changed the result of the trial, the harmless error rule applies. See *State v. Horton,* 283 Kan. 44, 55, 151 P.3d 9 (2007).

Here, Simon provided unrefuted evidence that new tenants of a leased space will frequently demolish the improvements made by former tenants. While it is Simon's policy to utilize existing conditions where feasible, it is often more cost efficient to raze the building and start from scratch. Again, Meats testified that retailers prefer to commence a lease with bare walls, ceilings, etc., and will often remove or demolish improvements of the prior tenant. Richardson indicated that most retailers have "prototypical buildings," and often times it is easier for them to demolish the entire building and work from a clean slate. Even several of the contractors testified that new tenants to the Mall will frequently remove or modify large portions of the prior improvements upon commencing a lease. Michael McGivern, the president of Senne, indicated that the improvements he made would be of sufficient structural integrity for use by a retail merchant "[i]f it fit their layout." Charles Lower, another of Senne's witnesses, admitted that changes would need to be made in some areas to accommodate a nonmuseum tenant.

From the trial transcript, it is evident Simon was attempting to refute Senne's assertion that Simon received a benefit by demonstrating many of the improvements that would have to be removed or demolished. The proposal from Burlington Coat Factory and Richardson's testimony regarding those negotiations are probably the most poignant illustration of Simon's contentions. Nevertheless, had the district court excluded this evidence, it is unlikely that the result of the trial would have changed. Even without the disputed evidence, Simon clearly demonstrated that a new tenant would probably want the improvements in the former KIM space demolished. Furthermore, Simon demonstrated that even if the improvements were not demolished in their entirety, the majority of them would be removed or significantly altered. The construction and improvements required by KIM were so unique and different from those required by most merchants that a significant amount of new improvements and demolition would have to be made to suit the specifications of new tenants.

We conclude the error was harmless.

Affirmed.

Kan.App.,2007.
Senne & Co., Inc. v. Simon Capital Ltd. Partnership
155 P.3d 1220, 2007 WL 1175858 (Kan.App.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.