# EXHIBIT UU



Not Reported in N.W.2d, 2004 WL 1879003 (Mich.Cir.Ct.), 2004-2 Trade Cases P 74,555
**(Cite as: 2004 WL 1879003 (Mich.Cir.Ct.))**

Page 1

▷ UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Michigan Circuit Court.
Robert STARK, on behalf of himself and all others similarly situated, Plaintiff,
v.
VISA U.S.A. INC. and Mastercard International Incorporated, Defendants.

No. 03-055030-CZ.
July 23, 2004.

Richard E. Zuckerman and Douglas Salzenstein of Honigman Miller Schwartz and Cohn, LLP, Detroit, MI; Stephen V. Bomse, David M. Goldstein of Heller Ehrman White & McAuliffe, LLP, San Fransico, CA; Robert C. Mason of Arnold & Porter, LLP, New York, NY, for Defendant Visa U.S.A. Inc.

Kathleen A. Lang of Dickinson Wright, PLLC, Detroit, MI; Kenneth A. Gallo of Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Washington, DC; Gary R. Carney of Paul, Weiss, Rifkind, Wharton & Garrison, LLP, New York, NY, for Defendant MasterCard International Incorporated.

J. Christopher Caldwell and Joseph A. Ahern of Stark Regan & Finnerty, PC, Troy, MI, for Plaintiffs.

*OPINION AND ORDER*
OBRIEN, J.

INTRODUCTION
*1 This matter is before the Court on Defendants' motion for summary disposition under MCR 2.116(C)(8). The Court heard oral argument and took the motion under advisement. After considering Defendants' motion and brief in support, Plaintiff's response and Defendants' reply in light of applicable law, and for the reasons discussed below, the Court grants Defendants' motion for summary disposition.

This is an antitrust action. Defendants claim that Plaintiff lacks standing to sue for purported violation of the Michigan Antitrust Reform Act ("MARA") because he alleges only remote injuries and did not purchase-directly or indirectly-the services that Defendants allegedly restrained in violation of MARA.

BACKGROUND
Plaintiff claims that Defendants engaged in tying arrangements in violation of the Michigan Antitrust Reform Act, ("MARA") MCL 445.772. Plaintiff claims that he and the Michigan class he represents have been damaged "indirectly" under the Act because they were forced to pay the overcharge that resulted from Visa and MasterCard's unlawful tying arrangement. For these alleged violations, Plaintiff seeks damages and attorneys' fees.

Plaintiff's Complaint in this matter is based on the same conduct of Defendants that was at issue in previous federal litigation. In October 1996, several groups of merchants commenced a class action against Visa and MasterCard in federal court. *In re Visa Check/MasterMoney Antitrust Litigation,* 192 F.R.D. 68 (E.D.N.Y., 2000), *aff'd* 280 F.3d 124 (C.A.2, 2001), *cert den* 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002). The merchants alleged that under the "Honor All Cards" rules, as a condition of being permitted to accept Visa and/or MasterCard credit cards, they were also required to accept Visa and MasterCard debit cards. The merchants claimed that this constituted a tying arrangement and an attempt to monopolize a debit market in violation of federal antitrust laws. The merchants alleged that as result of those purported antitrust violations, they paid inflated fees for Visa and MasterCard debit transactions-fees that were higher than those they paid for debit transactions processed over other debit networks.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in N.W.2d, 2004 WL 1879003 (Mich.Cir.Ct.), 2004-2 Trade Cases P 74,555
**(Cite as: 2004 WL 1879003 (Mich.Cir.Ct.))**

In February 2000, the federal court certified a nationwide class of more than four million merchants who had accepted Visa or MasterCard within the statute of limitations period. That class action was settled in April 2003 on the eve of trial. The federal court issued an order granting final approval of the settlements. See *In re Visa Check/MasterMoney Antitrust Litig.,* 297 F Supp 2d 503 (E.D.N.Y., 2003). Pursuant to the settlements, Visa and MasterCard each eliminated the asserted tying of credit and debit card services to merchants, thereby allowing merchants to reject consumers' Visa or MasterCard-branded debit cards but still accept consumers' Visa or MasterCard-branded credit cards. Visa and MasterCard also collectively paid more than three billion dollars into a settlement fund.

In the federal litigation, the merchants alleged that Visa and MasterCard imposed an overcharge on merchants by forcing them to accept Visa and MasterCard debit cards as a condition of accepting Visa and MasterCard credit cards. In the instant matter, Plaintiff contends that the merchants passed that overcharge on to both him and Michigan consumers by increasing the price of goods.

*2 Plaintiff claims to have paid higher prices on every purchase he made from merchants who accept Visa or MasterCard, regardless of whether he used a debit card to make the purchase. Plaintiff alleges that all consumers, including those who used cash, were affected by Defendants' actions. Therefore, the proposed class would include not only consumers who purchased goods using debit cards but also any consumers who purchased goods from any Michigan retailer that accepted Visa and/or MasterCard credit cards.

## ANALYSIS

Defendants' motion is brought pursuant to MCR 2.116(C)(8). Defendant argues that Plaintiff's claims should be dismissed because he lacks standing to sue under the Michigan Antitrust Reform Act for the injuries he alleged.

A motion under MCR 2.116(C)(8) tests the "legal sufficiency of the complaint on the basis of the pleadings alone." *Mack v. Detroit,* 467 Mich. 186, 193 (2002). "All factual allegations are accepted as true, along with any inferences or conclusions which may be fairly drawn therefrom." *Ambro v. American Nat'l Bank & Trust Co.,* 152 Mich.App. 613, 616-617, 394 N.W.2d 46 (1986).

Defendant's first argument is that Plaintiff cannot meet the five-factor test set forth in *Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). This Court agrees.

In *Associated General Contractors,* the United States Supreme court Supreme Court identified five factors for determining whether the relationship between the plaintiff's harm and the defendants' conduct is sufficiently close to confer standing to sue: (1) whether the plaintiff is a consumer or competitor in the allegedly restrained market; (2) whether the alleged injury alleged is a direct, first-hand impact of the restraint alleged; (3) whether there are more directly injured plaintiffs with motivation to sue; (4) whether the damages claims are speculative; and (5) whether the plaintiff's claims risk duplicative recoveries and would require a complex apportionment of damages. *Id.* at 538-45.

First of all, Plaintiff is not a consumer or competitor in the allegedly restrained market. Here, in the alleged market, the merchants are the consumers of Visa and MasterCard debit card services; and other debit networks are the competitors of Visa and MasterCard. Thus, there is no connection between Plaintiff's purchases of consumer goods and the Defendants' alleged tying of debit services.

Second, the injury that Plaintiff alleges here is not a direct, first-hand impact of the restraint alleged. Here, the direct impact allegedly fell on the merchants. Plaintiff alleges only derivative and second-hand injuries from those that merchants purportedly incurred.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2004 WL 1879003 (Mich.Cir.Ct.), 2004-2 Trade Cases P 74,555
**(Cite as: 2004 WL 1879003 (Mich.Cir.Ct.))**

Third, there are more directly injured persons with motivation to sue to vindicate any interest in antitrust enforcement. Here, the alleged direct victims of Defendants' conduct, the merchants, litigated for seven years in a massive nationwide class action challenging the very same Visa and MasterCard conduct alleged in plaintiff's Complaint. The merchants directly affected have vindicated any interest in antitrust enforcement by suing the Defendants for the same alleged conduct. Thus, denying Plaintiff an antitrust remedy clearly will not leave any alleged antitrust violation "undetected or unremedied." *Id.* at 542.

**\*3** Fourth, the Court agrees with Defendants that Plaintiff's damage claims are speculative. Here, Plaintiff asserts he paid overcharges on every single purchase that he made for several years from merchants who accepted Visa or MasterCard cards. However, there is nothing about the debit network systems of Visa or MasterCard that contributes in any way to the production of the consumer goods for which Plaintiff contends he paid inflated prices.

Moreover, Plaintiff's claims risks duplicative recoveries and would require a complex apportionment of damages. Here, Plaintiff's claims are based on the very same conduct of Visa and MasterCard that was at issue in the federal merchant class action. Thus, Plaintiff is seeking recovery duplicative of the sums to be paid under the settlements to the Michigan merchants at which Plaintiff shopped. Moreover, Plaintiff's claims would require apportionment of damages using virtually every single purchase that Plaintiff made during the years for which he seeks damages. The Court agrees with Defendants that certainly any effort to make such an apportionment would be incredibly complex, if not impossible.

Plaintiff argues that Defendants' reliance on *Associated General Contractors* is misplaced for the reason that the test in *Associated General Contractors* is inconsistent with MARA's grant of standing to persons injured "indirectly." MCL 445.778(2). Plaintiff argues that MARA's plain language, rather than federal standing rules, governs the question of who has standing to bring a claim under MARA. Thus, under Plaintiff's analysis, the Act in itself grants standing per se.

Federal antitrust law does not recognize actions by indirect purchasers. The death knell of actions by indirect purchasers was embodied in the case of *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). In *Illinois Brick,* the plaintiffs sought to recover an overcharge on concrete acquired from users and direct purchasers of the concrete, who allegedly had overpaid for the concrete due to a manufacturers' price-fixing conspiracy and had passed on that overcharge to the plaintiffs. *Id.* at 726-27. The United States Supreme Court concluded that such plaintiffs should not be deemed to have suffered an injury cognizable under the federal antitrust laws, given the potential for multiple liability and the complexity that would be introduced into antitrust damages suits if such pass-on theories were permitted. *Id* at 727-29, 736-47.

After *Illinois Brick,* Michigan and several other states amended their antitrust statutes to reject the Illinois Brick rule. Such legislation became known as *Illinois Brick* repealer laws. See *A & M Supply Co. v. Microsoft Corp.,* 252 Mich.App. 580, 583, 654 N.W.2d 572 (2002)

Specifically, in 1985, the Michigan Legislature adopted a damages statute modeled on the federal Clayton Act, but which also provided a potential damages remedy to persons injured "directly or indirectly" by a violation of Michigan's antitrust law. MCL 445.778(2). Thus, the mere fact that a plaintiff is an "indirect purchaser" would not automatically bar an antitrust damages claim.

**\*4** However, this Court agrees with Defendants that it does not necessarily follow that Michigan's repeal of the *Illinois Brick* rule also eliminated the *Associated General Contractors* standing requirements. The Supreme Court in *Illinois Brick* made clear that its decision addressed only whether there should be a bar on "indirect purchaser" suits. It ex-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2004 WL 1879003 (Mich.Cir.Ct.), 2004-2 Trade Cases P 74,555
**(Cite as: 2004 WL 1879003 (Mich.Cir.Ct.))**

Page 4

pressly "d[id] not address the standing issue," explaining that the "indirect purchaser" question is "analytically distinct from the question of which persons have sustained injuries to remote to give them standing to sue." *Illinois Brick, supra* at 728 n. 7.

Plaintiff argues that restrictive federal standing rules such as in *Associated General Contractors* do not apply to MARA indirect purchaser claims. Plaintiff points out that no Michigan trial or appellate court has ever applied the *Association General Contractors* factors in a case under MARA's indirect purchaser provisions. However, while Michigan appellate courts have not developed a test for determining when a plaintiff's injury is too remote to permit suit under MARA, the Act requires courts to give "due deference to interpretations given by the federal courts to comparable antitrust statutes. MCL 445.784. Moreover, the Court notes that courts in other states that have repealed the Illinois Brick rule have continued to apply antitrust standing requirements to dismiss the claims of plaintiffs who assert only derivative or remote injuries. See *Ho v. Visa USA, Inc,* Index No. 112316/00, N.Y. Sup. Crt, April 26, 2004; *International Brotherhood of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc.,* 196 F.3d 818 (C.A.7, 1999).

Furthermore, even if this Court did not apply the five-factor test in *Associated General Contractors,* Plaintiff's claim would still fall under MARA. The Court agrees with Defendants' second argument that because Plaintiff is not an indirect purchaser, he cannot sue under MARA.

MCL 445.788(2) provides in pertinent part:

Any ... person ... injured directly or indirectly in his or her business or property by a violation of this act may bring an action ... for actual damages sustained by reason of a violation of this act ... (emphasis added).

The repealer language in 445.788(2) addresses "indirect purchasers" such as "an end user or licensee" of the product that the defendant had manufactured. *A & M Supply, supra* at 583, 654 N.W.2d 572. Plaintiff claims that he and the Michigan class he represents have been damaged "indirectly" under MARA's plain text because they were forced to pay the "overcharge" that resulted from Visa and MasterCard's unlawful tying arrangement. Plaintiff claims that he is an indirect purchaser of the debit car services because the monopoly overcharge on Defendants' debit card services is reflected in the artificially inflated prices of the consumer goods he purchases.

Thus, Plaintiff's alleged injuries admittedly do not stem from his purchase of the purportedly restrained debit card services that Defendants provided to merchants. Plaintiff does not claim that he repurchased from merchants or other middlemen the allegedly restrained debit card services that defendants provided to merchants. Instead, as correctly pointed out by Defendants, Plaintiff claims only derivative and remote injuries on his purchases from merchants of an endless variety of merchandise not even manufactured or sold by defendants. Therefore, Plaintiff is actually a "non-purchaser" of the debit card services that Defendants provide to merchants. Thus, MARA would not be applicable.

**\*5** THEREFORE, IT IS HEREBY ORDERED that Defendants' motion for summary disposition is GRANTED.

IT IS FURTHER ORDERED that this Opinion and Order resolves the last pending claim and closes the case.

IT IS SO ORDERED.

Mich.Cir.Ct.,2004.
Stark v. Visa U.S.A. Inc.
Not Reported in N.W.2d, 2004 WL 1879003 (Mich.Cir.Ct.), 2004-2 Trade Cases P 74,555

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.