# EXHIBIT VV



Not Reported in N.W.2d, 2005 WL 1403769 (Wis.Cir.)
**(Cite as: 2005 WL 1403769 (Wis.Cir.))**

Page 1

Only the Westlaw citation is currently available.

Circuit Court of Wisconsin, Milwaukee County..
Mary STRANG, individually and on behalf of all others similarly situated Plaintiff
v.
VISA U.S.A. INC., et. al. Defendants

No. 03 CV 011323.
Feb. 8, 2005.

John S. Skilton and Gabrielle E. Bina of Heller Ehrman White & McAuliffe LLP, Madison, WI; Stephen V. Bomse and David M. Goldstein of Heller Ehrman White & McAuliffe LLP, San Francisco, CA; Robert C. Mason of Arnold & Porter LLP, New York, NY, for Defendant Visa U.S.A. Inc.

Jeffrey Morris of Quarles & Brady LLP, Milwaukee, WI; Kenneth A. Gallo and Patricia C. Crowley of Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC; Gary R. Carney and Randi D. Adelstein of Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Defendant MasterCard International Incorporated.

John M. Swietlik, Jr. and Jane M. Cuthbert of Kasdorf, Lewis & Swietlik, S.C., Milwaukee, WI, for Plaintiffs.

DECISION AND ORDER
FOLEY, J.
FACTS AND PROCEDURAL POSTURE
*1 This matter is before me on the Visa U.S.A. and MasterCard International's (Defendants') motion to dismiss. They maintain that Ms. Strang lacks standing to bring this lawsuit, as her claimed injuries are derivative and too remote.[FN1] In addressing a motion to dismiss, all properly plead facts are taken as true. Wis. Stat. sec. 802.06(2)(a)(6) and Tietsworth v. Harley-Davidson, Inc., 2004 WI 32, par. 11, 677 N.W.2d 233, 238 (2004). After careful consideration, I have decided that I must join the chorus [FN2] and grant the motion to dismiss. As a general consumer or debit card consumer, Ms. Strang's claimed injuries are derivative and too remote; they are also highly speculative, potentially duplicative and would clearly involve daunting and overwhelming evidentiary concerns.

FN1. Standing requires that a party have "a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton,* 472 U.S. 727, 731 (1972). The *Sierra Club* standard has been recognized by the Wisconsin Supreme Court and requires a two-step analysis: whether the plaintiff has suffered a threatened or actual injury and whether the interest asserted is recognized by law. Norquist v. Zeuske, 211 Wis.2d 241, 247, 564 N.W.2d 748 (1997). As noted below, there is little question that Ms. Strang alleges she suffered injury in regard to an interest recognized by law in Wis. Stats. ch. 133. The critical issue is whether judicially imposed limitations nevertheless deprive her of standing to maintain this lawsuit.

FN2. With the latest submission of authorities by the Defendants, *Kanne v. Visa, U.S.A., Inc., et. al,* Neb. Dist. Ct., Douglas County, Doc. 1033, No. 469, arriving today, I am advised that fourteen state trial courts have granted motions to dismiss in parallel state court proceedings concluding that consumers like Ms. Strang lack standing to maintain state antitrust claims based upon virtually identical factual allegations under statutes similar to Wis. Stats. ch. 133..

Ms. Strang's complaint, seeking relief under Wisconsin's antitrust statutes, Wis. Stats. ch.. 133, is a "follow on" action [FN3] to *In re Visa Check/ Master Money Antitrust Litigation,* No. CV-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2005 WL 1403769 (Wis.Cir.)
**(Cite as: 2005 WL 1403769 (Wis.Cir.))**

Page 2

96-5238 (E.D.N.Y.). In that litigation, it was determined that the defendants illegally tied their credit and debit card services, i.e. merchants were forced to accept Visa and MasterCard debit cards if they wished accept defendants' credit cards. This practice was commonly referred to as an "honor all cards" rule. This tying, according to the complaint, resulted in merchants paying excessive debit card service (discount) fees. In the settlement of that merchant-initiated federal litigation, the defendants agreed to pay $3 billion in damages and to cease the tying requirement. A series of "follow on" actions have been filed in a number of states affording state antitrust protection to those harmed directly or indirectly by actions that violate relevant state statutes.

> FN3. The Honorable Ben Tenille, of the Superior Court, Hanover County, North Carolina, who wrote a scholarly decision in regard to this same issue in the parallel proceedings in that state, *Morris v. Visa, et. al.,* No. 03 CVS 2514, characterized this and similar state antitrust claims as "generally parasitic" in that they almost invariably piggyback on some triggering federal antitrust claim. Given our relatively recent experience with parasites in the water in our community, I'll constrain myself to the "follow on" characterization.

Ms. Strang proposes to bring suit individually and on behalf of a proposed class of all persons who made purchases in Wisconsin from any retailer utilizing Visa and MasterCard credit card and debit card services during the proposed class period, December, 1999 to December, 2003. Ms. Strang, a Wisconsin consumer, alleges the tying practices of the defendants' violated Wis. Stat. ch. 133 as a contract or conspiracy in restraint of trade. Pursuant to Wis. Stats. sec. 133.18(1) "any person injured, directly or indirectly," by prohibited practices is entitled to recover treble damages, the costs of suit and reasonable attorney fees. Ms. Strang claims she was indirectly injured by the defendants' practices because the merchants using their debit card services passed through the excessive fees merchants were forced to pay.[FN4] She reasons that she, and all other Wisconsin consumers who made purchases from merchants paying Visa and Master Card debit card service fees, incurred indirect injury in each purchase made when those excessive fees were passed through to the consumer in the form of increased prices of all items sold by the merchant. Anticipating potential standing concerns related to the manageability of the size of this proposed class and the potential volume of claims, leave is sought to plead an alternative class comprised only of debit card users. *Plaintiff's Brief in Opposition,* p. 34.

> FN4. The complaint alleges that the fees were as much as 1500% higher than those incurred by merchants for competitive debit card services. See, par. 45.

**\*2** In my view, only a brief summary of the intricacies of the business relationships and transactions underlying this lawsuit is necessary. Visa and MasterCard are alleged to be an association of thousands of member banks operating a national bank card network. Individual banks that are members of the association issue Visa or MasterCard branded payment cards to consumers and enter into agreements with merchants allowing them to accept these cards. Credit cards allow consumers to buy on credit, using the bank's funds and repaying the debt later. Debit cards are utilized to make payments directly from funds the consumer has on deposit with the bank. The merchant pays a fee to the bank providing debit card services for each transaction involving a Visa or MasterCard branded card.[FN5] According to the complaint, the defendants are able to extract excessive debit card fees due to their dominant position in the credit card market and the imposition of the "honor all cards" policy. More succinctly stated, they assert that merchants cannot survive without Visa and MasterCard credit card services and therefore accede to the excessive fees for their debit card services.

> FN5. Fees paid by merchants (discount

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2005 WL 1403769 (Wis.Cir.)
**(Cite as: 2005 WL 1403769 (Wis.Cir.))**

Page 3

fees) are actually split between the bank providing debit card services to the merchant and the bank that issues the Visa or MasterCard debit card to the consumer.

PRECEDENTIAL CONTEXT

The positions taken by the parties in this litigation cannot be properly understood without a basic understanding of the United States Supreme Court's decisions relating to standing of "indirect purchasers" in antitrust litigation. This is true, in primary part, because Wis. Stat. ch. 133 and similar statutes in other states are acknowledged to be a direct response to denial of standing to indirect purchasers in federal antitrust litigation as a result of those decisions.

In *Hanover Shoe Co. v. United Shoe Machinery Corp.,* 392 U.S. 481 (1968), the Supreme Court rejected the "pass on" theory of an antitrust violator, rejecting the proffered defense that the direct purchaser of the affected product was not actually injured in that they had "passed on" the excessive costs to a succeeding (indirect) purchaser in the chain of distribution. Nine years later, the Court held that an indirect purchaser did not have standing to maintain a federal antitrust claim. *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977). In response, Wisconsin and a significant number of other states (twenty two) enacted " *Illinois Brick* repealer" legislation, granting standing to indirect purchasers.[FN6] The U.S. Supreme Court subsequently rejected a challenge to the validity of state " *Illinois Brick* repealer" (indirect purchaser standing) statutes. *California v. ARC Am. Corp.,* 490 U.S. 93 (1989).

> FN6. See, *Bunker's Glass Comp. v. Pilkington,* PLC, 75 P.3d 99, 105, fn. 4 (Ariz., 2003).

STANDING IN WISCONSIN ANTITRUST CASES

As noted, Wisconsin enacted an " *Illinois Brick* repealer" statute in response to the dramatic standing limitations of that decision. Wis. Stat. sec 133.18(1)(b) provides in pertinent part: "Any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefore...." The breadth of the language is emphasized in the legislative expression of intent in Wis. Stat. 133.01: "It is the intent of the legislature that this chapter be interpreted in a manner which gives the most liberal construction to achieve the aim of competition."

**\*3** Defendants correctly and emphatically assert however that the breadth of this statutory standard would grant standing to even the most remote of purchasers in the chain of distribution of an affected commodity. A literal application of the language would grant standing to the purchaser of a used bicycle asserting that the purchase price of the twice-sold bicycle was inflated due to a price fixing conspiracy of a rubber manufacturer whose product was used to manufacture the tires of the bike. In direct response to those concerns, courts have refused to grant standing to those remotely and derivatively injured based on policy considerations. The most notable case in this regard is *Associated General Contractors of Cal. Inc. v. Cal. State Council of Carpenters,* 459 U.S. 529, 534 (1983) (hereinafter *AGC* ) in which the Court noted that a literal reading of the federal antitrust statute "was broad enough to encompass every harm that can be attributed directly or indirectly to ... an antitrust violation," but noting that "federal courts have been 'virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." ' (quoting *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262, fn. 14 (1972)). *AGC* went on to enumerate various factors to be considered in determining whether a claimed antitrust injury was too remote to accord standing to bring the claim. Given then that the literal language of the Wisconsin statute specifically rejects the federal ban on standing for indirect purchasers [FN7] and would clearly grant standing to Ms. Strang to bring her claim, the critical issue becomes what, if any, policy limitations attend the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2005 WL 1403769 (Wis.Cir.)  
**(Cite as: 2005 WL 1403769 (Wis.Cir.))**

Page 4

Wisconsin statute. The parties agree that this is an issue of first impression in Wisconsin.[FN8]

> FN7. As indicated at fn. 9, *infra,* I agree that Ms. Strang and other debit card (or general) consumers are not "indirect purchasers" of defendants' debit card services. However, she does allege indirect injury from restraint of trade conduct. This is all that Wis. Stats. secs. 133.03 and 133.18, by their literal terms, require. The critical issue then is not whether she is or is not an indirect purchaser; it is whether she lacks standing based upon an analysis of the *AGC* factors set forth below.

> FN8. The process of "judicial line drawing" based upon concerns that an injury is too remotely related to a wrongdoing is, of course, not unprecedented. Tort liability in Wisconsin is cut off, based upon six judicially crafted public policy considerations, if "the cause in fact of injury is legally insufficient to allow recovery." *Fandrey v. American Family,* 04 Wi. 62, par. 15, 272 Wis.2d 46, 680 N.W.2d 345. The *AGC* court noted the similarity of this "proximate cause" analysis in tort law to the standing analysis in antitrust law. *AGC, supra* at 532-535.

Defendants argue that I should embrace the policy considerations set forth in *AGC*. I read that case to set forth the following factors to be considered in determining whether an antitrust claimant has standing to maintain an antitrust claim.

1. Is there a causal connection between the antitrust violation and the harm to the plaintiff?

2. Did the defendant intend to cause the particular harm?

3. The nature of the claimant's injuries, most specifically the directness or indirectness of those injuries. Included in this consideration is whether there is another class of affected individuals who are more directly injured.

4. Is the injury claimed highly speculative in nature? At bottom, does the claimed injury rest on an abstract conception or speculative measure of harm.

5. The risk of duplicative recovery as well as the danger and judicial manageability of complex apportionment of damages.

While I share the concern of the plaintiff that these factors could be read to simply reinstate the rule of *Illinois Brick* as law in Wisconsin, i.e. no indirect purchaser standing, I suspect that if faced with this issue, our appellate courts would look to these factors for guidance in assessing an indirect or remote purchaser's standing. Numerous state courts have analyzed these factors and concluded that injuries identical to those claimed by Ms. Strang are too remote and speculative and granted motions to dismiss for lack of standing. See, fn. 2. After a careful analysis of those factors, and while noting that the first two factors support a conclusion that Ms. Strang should be accorded standing, I have concluded that the remaining factors clearly dictate the conclusion the motion should be granted.

CAUSAL CONNECTION

**\*4** Ms. Strang does allege causally related injury. She maintains that the tying of debit card services to credit card services violated Wis. Stat. sec. 133.03. As a result, according to her allegations, merchants paid excessive fees for defendants' debit card services and those costs were passed on to her in the form of inflated prices for goods that she purchased. This is sufficient to establish an "inference of causation" [FN9] to support her antitrust claim pursuant to Wis. Stat. secs. 133.03 and 133.18.

> FN9. *Perkins v. Standard Oil Co.,* 395 U.S. 642, 648 (1969),

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

https://findprint.westlaw.com/print/printstream.aspx?prid=ia74487170000013872fa628d52...   7/10/2012

Not Reported in N.W.2d, 2005 WL 1403769 (Wis.Cir.)
**(Cite as: 2005 WL 1403769 (Wis.Cir.))**

Page 5

### INTENT TO CAUSE HARM

Clearly the strongest inference from the facts alleged in the complaint is that the defendants most directly intended to harm the merchants. However, it would be disingenuous to argue or conclude that no inference of intent to harm consumers is supported by those same facts. It has long been recognized in antitrust litigation that the ultimate purchaser/consumer is saddled with some or all of the antitrust related costs of products. *Hanover Shoe, supra* at 492.[FN10] Quite clearly, the facts as plead support a reasonable inference that the defendants intended, or foresaw, their conduct in restraint of trade would injure the consumer as well as the merchant.

> [FN10]. This fact was also noted in the legislative history of amendments to the Sherman Antitrust Act. "[T]he economic burden of most antitrust violations is borne by the consumer in the form of higher prices for goods and services." Hart-Scott-Rondino Antitrust Improvements Act of 1976, S.Rep. No. 94-808.

### NATURE OF INJURY

This factor looks initially to the directness or indirectness of the injury. There is no question that the plaintiff alleges injuries that are indirect. The excessive fees were paid initially by the merchants and, according to the plaintiff's allegations, then passed through to the consumer/purchaser in the form of higher purchase prices for all goods. As in *AGC,* "such injuries were the indirect result" of injuries suffered by the merchants. *AGC, supra* at 541.

The *AGC* court also directed attention to whether a claimant was a consumer or competitor in the restrained market. The restrained market in the context of the plaintiff's claims is the debit card service market. Ms. Strang and consumer/purchasers are hardly competitors in the debit card services market. They are also not consumers of debit card services. Merchants are consumers of those services.[FN11]

> [FN11]. As I noted at oral arguments on this motion, unquestionably merchants consume these services because consumers demand the convenience of cashless transactions. However, this does not transform ultimate purchasers into consumers of debit card services in the legal or economic sense.

An additional consideration in regard to this factor is whether a more directly affected class exists who would be likely to address the violation. *Id.* at 542. Succinctly stated, merchants are the class of individuals who are more directly injured by the antitrust activities and in a better position to prosecute a claim based upon that activity; in fact, they have done so. While the plaintiff alleges that the damages assessed fall far short of the damages actually incurred, a "significant antitrust violation [has not been] undetected or unremedied." *Id.* at 543. Given that their claimed injuries were direct, they entailed none of the "conceptual difficulties" that encumber indirectly injured parties claims. Most specifically, as noted below, they encounter none of the daunting evidentiary problems of proving any marginal effect of the excessive debit card fees vis a vis the multitude of other pricing factors that impact the ultimate purchase price of any and all products that a Visa or MasterCard merchant sells.

### SPECULATIVE DAMAGES, RISK OF DUPLICATIVE RECOVERY AND COMPLEX APPORTIONMENT OF DAMAGES

*5 Dovetailing with the directness of injury consideration, antitrust courts have looked to the speculative nature of claimed injuries in assessing antitrust standing. As discussed above, direct purchasers are immediately impacted by the antitrust violation. Proof of damages is often complicated, but given their immediate proximity in the chain of distribution, there is far less likelihood that a multitude of other pricing factors will at the very best cloud, if not obliterate, the connection between the prohibited conduct and the claimed injury. Simply

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in N.W.2d, 2005 WL 1403769 (Wis.Cir.)
**(Cite as: 2005 WL 1403769 (Wis.Cir.))**

stated, with indirect purchasers, their most significant "conceptual difficulty" is that the causal connection, if in fact one exists, often times will be obliterated in the intervening steps in the chain of distribution. They are faced with the daunting task of proving the effect of the prohibited conduct on the price at any and all levels above them and then at their removed position in the chain of distribution, and disproving, or at least quantifying, the effects of a multitude of other pricing considerations which clearly did or could have intervened at any relevant level.[FN12] In the context of the proposed class, they bear this burden with respect to every product purchase made at a Visa or MasterCard merchants store during the proposed class period. As Judge Tenille stated in *Morris,* one cannot "conceive of an economically feasible way to administer a trial which would require inquiry into how every retailer set the price for every consumer good sold in this state. Nor is it conceivable that any judgment would be in any amount which could be economically allocated and paid to every consumer in North Carolina." Paragraph 90.

> [FN12.] I am not unmindful that the consumer is closer to the wrongdoer in this chain of distribution than, for instance, the purchaser of the fictional bicycle in the scenario cited earlier in this decision. However, the difficulty of proof attends nevertheless as the intervening party considers a multitude of factors in pricing decisions. In addition, depending upon the elasticity of the product, the prohibited conduct could have a major, minor or no effect on the ultimate purchase price of a good. Landes and Posner, *An Economic Analysis of the Rule of Illinois Brick,* 46 U. Chi. L.Rev., 602, 619-620; *Morris, supra, par. 89.* Suffice it to say that the damage claim in this case is fairly characterized as "highly speculative." *AGC, supra* at 544.

The risk of duplicative recovery could not be more acute. Merchants have sued and recovered. Assuming the plaintiff can overcome the daunting task of proving a causal connection and quantifying the overarching injury caused by the prohibited conduct, there remains the difficult process of determining a nonduplicative measure of damages between the ultimate consumers and the merchants. As the Supreme Court noted in *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 475, fn. 11, "the task of disentangling overlapping damage claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial system," in that doing so "would be to discourage vigorous enforcement of antitrust laws by private suit." This is, of course, the antithesis of the legislative purpose of Wis. Stats. sec. 133.18.

CONCLUSION

Ms. Strang alleges a recognizable claim under Wis. Stats. ch. 133 and resultant injuries. She also alleges facts to support an inference that the defendants intended, or foresaw, ultimate purchasers would be injured as a result of the tying arrangement and pass through of excessive debit card fees paid by merchants. However, her claimed injuries, as a general Wisconsin consumer or as a debit card purchaser, are derivative, remote, and highly speculative. The direct purchaser victims of the prohibited conduct have sued and recovered, redressing the prohibited conduct. Overwhelming concerns exist as to the speculative nature of the injuries and the manageability of the litigation in which she would endeavor to overcome those conceptual and evidentiary concerns. In my view, the analysis of the *AGC* factors overwhelmingly supports the conclusion that Ms. Strang lacks standing to maintain this action. For that reason, the motion to dismiss is granted.

Wis.Cir.,2005.
Strang v. Visa U.S.A., Inc.
Not Reported in N.W.2d, 2005 WL 1403769 (Wis.Cir.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.