## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | : | Master File No. 12-md-02311 |
| | : | |
| | : | Honorable Marianne O. Battani |
| | : | Magistrate Judge Mona K. Majzoub |
| | : | |
| **Product(s):** | : | **Oral Argument Requested** |
| | : | |
| **WIRE HARNESS SYSTEMS** | : | |
| | : | |
| **This Document Relates to:** | : | |
| | : | |
| **All Direct Purchaser Actions** | : | |
| **All End-Payor Actions** | : | |

### DENSO CORPORATION AND DENSO INTERNATIONAL AMERICA, INC.'S MOTION TO DISMISS THE DIRECT PURCHASERS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE END-PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Defendants DENSO Corporation and DENSO International America, Inc. (collectively, "DENSO"),[1] by and through their counsel, hereby move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims in the Direct Purchasers' Consolidated Amended Class Action Complaint (ECF No. 86) and the End-Payors' Corrected Consolidated Amended Class Action Complaint (ECF No. 174). (The Automobile Dealers did not name DENSO in their Consolidated Amended Class Complaint (ECF No. 85)). In support of the foregoing Motion, DENSO states as follows:

1.      DENSO bases this Motion upon the accompanying memorandum of law in support, oral argument of counsel, and such other and further material as the Court may consider.

---

[1]      Although the Direct Purchasers initially named ASMO Co. Ltd. ("ASMO") in their Consolidated Amended Class Action Complaint, they have filed a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) as to ASMO (ECF No. 185). The Automobile Dealers and End-Payors did not name ASMO as a Defendant.

2.      As required by E.D. Mich. Local Rule 7.1(a), counsel for DENSO sought

concurrence from counsel for the Direct Purchasers and the End-Payors on July 6, 2012, via

telephone conference.  During two separate calls, counsel for DENSO explained the nature of

this Motion and its legal basis and requested, but did not obtain, concurrence in the relief sought

(i.e., dismissal of the Direct Purchaser and End-Payor actions).

Respectfully submitted,

July 13, 2012                    By:     /s/ Steven F. Cherry
                                         Steven F. Cherry
                                         David P. Donovan
                                         Stephanie K. Wood
                                         Elizabeth Martin
                                         WILMER CUTLER PICKERING HALE AND
                                             DORR LLP
                                         1875 Pennsylvania Avenue, NW
                                         Washington, DC 20006
                                         (202) 663-6000
                                         (202) 663-6363 (facsimile)
                                         steven.cherry@wilmerhale.com
                                         david.donovan@wilmerhale.com
                                         stephanie.wood@wilmerhale.com
                                         ellie.martin@wilmerhale.com

                                         Karen D. Stringer
                                         Heather Price
                                         WILMER CUTLER PICKERING HALE AND
                                             DORR LLP
                                         60 State Street
                                         Boston, MA 02109
                                         (617) 526-6406
                                         (617) 526-5000 (facsimile)
                                         karen.stringer@wilmerhale.com
                                         heather.price@wilmerhale.com

                                         *Attorneys for Defendant DENSO International
                                             America, Inc. and Denso Corp.*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Phone: (248) 372-8252
Fax:   (248) 213-2551
STEVE_ZAROWNY@denso-diam.com

*Attorney for Defendant DENSO International
    America, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS** **ANTITRUST LITIGATION** | Master File No. 12-md-02311 |
| | Lead Case: W:12-cv-00001-MOB-MKM |
| **THIS DOCUMENT RELATES TO:** | **Oral Argument Requested** |
| **Product(s): Wire Harnesses** | |
| **All Direct Purchaser Actions** **All End-Payor Actions** | |

**MEMORANDUM IN SUPPORT OF DENSO CORPORATION AND DENSO INTERNATIONAL AMERICA, INC.'S MOTION TO DISMISS THE DIRECT PURCHASERS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE END-PAYORS' CORRECTED CONSOLIDATED <u>AMENDED CLASS ACTION COMPLAINT</u>**

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Direct Purchasers and End-Payors have failed to allege sufficient facts to meet the minimum requirements for pleading a claim based on an antitrust conspiracy?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1.    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

2.    *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

3.    *In re Refrigerant Compressors Antitrust Litig.,* Case No. 2:09-md-02042-SFC, 2012 WL 2114997 (E.D. Mich. June 11, 2012)

4.    *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009)

5.    Fed. R. Civ. P. 12(b)(6)

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ............................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................................. iii

TABLE OF CONTENTS ............................................................................................. iv

TABLE OF AUTHORITIES ........................................................................................ v

ARGUMENT ............................................................................................................... 1

I.       SUMMARY ........................................................................................ 1

II.      BACKGROUND ............................................................................... 2

      A.      The Products ........................................................................... 2

      B.      The Parties ............................................................................. 3

      C.      Other Industry Background ..................................................... 4

      D.      The Alleged Conduct ............................................................. 5

III.     PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO STATE THEIR CLAIM FOR AN ANTITRUST CONSPIRACY AGAINST DENSO ............................. 6

      A.      Plaintiffs Have Failed to Plead Facts Showing a Link Between DENSO Corporation's Plea and the Conspiracy Alleged Here ............................ 7

      B.      Plaintiffs Have Failed to Plead Facts Showing a Link Between DENSO Corporation's Plea and Any Injury to Plaintiffs ...................................... 8

      C.      Absent Facts to Link Plaintiffs' Conspiracy to DENSO Corporation's Plea, Plaintiffs Fail to State a Claim ....................................................... 9

IV.     CONCLUSION ............................................................................... 11

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... ii, iii, 6, 7

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) ............................. ii, 10

*In re Am. Investor Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
   No. 04-3329, 2010 WL 1407308 (E.D. Pa. Apr. 7, 2010) ......................................... 1

*In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224 (M.D. Pa. 2010) ................ 1

*In re Commercial Tissue Products*, 183 F.R.D. 589 (N.D. Fla. 1998) ......................................... 1

*In re Iowa Ready-Mix Concrete*, 768 F. Supp. 2d 961 (N.D. Iowa 2011)...................................... 9

*In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010).......................... 9, 10

*In re Refrigerant Compressors Antitrust Litig.,* No. 2:09-md-02042-SFC,
   2012 WL 2114997 (E.D. Mich. June 11, 2012).................................................... ii, 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827,
   2010 WL 2629728 (N.D. Cal. June 29, 2010) ...................................................... 9

*In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009) .................... ii, iii, 6, 10

*Kulinski v. Am. Elec. Power Co., Inc.,* No.02-03-412,
   2004 WL 3257090 (S.D. Ohio July 13, 2004) ...................................................... 1

*Mich. Div. Monument Builders of N. Am. v. Mich. Cemetery Ass'n.*,
   458 F. Supp. 2d 474 (E.D. Mich. 2006).......................................................... 11

*Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736 (6th Cir. 1980)......................................... 6

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*,
   552 F.3d 430 (6th Cir. 2008) ...................................................................... 11

*United States v. Sargent Elec. Co.*, 785 F.2d 1123 (3d Cir. 1986) ............................................... 8

*Weiner v. Klais & Co.,* 108 F.3d 86 (6th Cir. 1997)...................................................................... 6

**STATUTES and RULES**

15 U.S.C. § 16(a) .................................................................................................... 7

Fed. R. Evid. 201 .................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ...................................................................................... iii, 1

Fed. R. Civ. P. 41(a) ............................................................................................... 4

**MISCELLANEOUS**

*MANUAL FOR COMPLEX LITIGATION* (4th ed. 2004) ........................................ 1

DENSO Corporation and DENSO International America, Inc. (collectively, "DENSO") submit this memorandum in support of their Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Direct Purchasers' Consolidated Amended Class Action Complaint (ECF No. 86) ("DP CAC") and the End-Payors' Corrected Consolidated Amended Class Action Complaint (ECF No. 174) ("EP CCAC") for failure to state a claim upon which relief can be granted.[2]  DENSO joins Defendants' Collective Motions to Dismiss the DP CAC and the EP CCAC, incorporates the arguments in those motions by reference, and files this separate brief to elaborate on the distinctions and arguments unique to DENSO.[3]

## I.    SUMMARY

The Direct Purchaser Plaintiffs ("DPPs") and End-Payor Plaintiffs ("EPPs") (collectively, "Plaintiffs") have failed to allege facts sufficient to state a claim against DENSO.  Although Plaintiffs' claims are based on an overarching conspiracy among more than two dozen Defendants and involving as many as twelve separate products, Plaintiffs fail to allege facts

---

[2]      Under the terms of Case Management Order No. 1, Defendants were directed to answer, move or otherwise plead "in response to the Consolidated Amended Complaint" by today's date (ECF No. 73, ¶ 20).  The Direct Purchasers' and End-Payors' Consolidated Amended Complaints both assert personal jurisdiction and venue only in the Eastern District of Michigan.  *See* DP CAC ¶¶ 5-6 (alleging, *e.g.*, that venue is proper "in this District," that a substantial portion of the events allegedly occurred "in this District," that one or more Defendants reside "in this District," that each Defendant transacted business "in this District" and marketed wire harnesses "in this District," etc.); EP CCAC ¶¶ 12-13 (same). DENSO therefore is not addressing defenses or objections such as lack of personal jurisdiction or venue that might have been appropriate in response to any of the original complaints.  *See* Case Management Order No. 1 (ECF No. 73); *see also In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 232 n.6 (M.D. Pa. 2010) (second consolidated amended complaint "supersedes the consolidated amended complaint");  *In re Am. Investor Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. 04-3329, 2010 WL 1407308 (E.D. Pa. Apr. 7, 2010) ("amended complaints supersede original complaints"; consolidated amended complaint that did not name particular defendants named in prior complaint terminated action as to those defendants) [Exhibit A]; *Kulinski v. Am. Elec. Power Co., Inc.*, No. 02-03-412, 2004 WL 3257090 (S.D. Ohio July 13, 2004) ( report and recommendation) (defendant not required to move or plead with respect to complaint that has been superseded by consolidated amended complaint) [Exhibit B]; *In re Commercial Tissue Products*, 183 F.R.D. 589, 591, 594 (N.D. Fla. 1998) (court will consider allegations of consolidated amended complaint, rather than allegations in superseded pleadings to determine nature of plaintiffs' claims); Fed. Judicial Ctr., *Manual for Complex Litigation* § 20.132 n.668 (4th ed. 2004) [Exhibit C].  DENSO reserves the right to raise such objections in the event that either complaint is further amended to allege jurisdiction or venue in another forum.

[3]      DENSO is moving solely with respect to the DP CAC and EP CCAC because DENSO Corporation and Denso International America, Inc. were not named as defendants in the Automobile Dealers' Consolidated Class Complaint.

1

sufficient to give rise to a plausible claim that DENSO participated in any overarching conspiracy or to otherwise link DENSO to any harm allegedly suffered by any of the Plaintiffs.

Plaintiffs' claims against DENSO rest almost entirely on DENSO Corporation's guilty plea, which involved a single relevant product—body electronic control units ("body ECUs")—and a single automobile manufacturer.  Yet Plaintiffs fail to allege any facts to link that narrow guilty plea to the broad conspiracy Plaintiffs allege involving as many as twelve products (eleven of which Plaintiffs do not—and cannot—allege DENSO even manufactures or sells), let alone to any products that any Plaintiff has ever purchased.  Not a single one of the Plaintiffs even claims to be an automobile manufacturer (much less the automobile manufacturer to which DENSO sold its product), or indeed, to have ever purchased a body ECU from any Defendant, or, in fact, ever to have purchased *anything at all* from DENSO.  Whatever claim *some* plaintiff might be able to make based on DENSO Corporation's guilty plea, that plea lends no plausibility to the broad, overarching conspiracy claim that *these* Plaintiffs have asserted.  Plaintiffs' claims against DENSO must therefore be dismissed.

## II.    BACKGROUND

### A.    The Products

The DPPs allege a conspiracy with respect to twelve "Wire Harness Products," comprised of wire harnesses and the following allegedly "related products":  automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors.  DP CAC ¶ 10.  The EPPs add a product—speed sensor wire assemblies—to the list and remove two others—wire harnesses and high voltage wiring— referring to the eleven remaining products collectively as "Automotive Wire Harness Systems."

EP CCAC ¶ 3. The only one of these products that Plaintiffs implicitly allege DENSO makes is electronic control units. They do not (and cannot in good faith) allege that DENSO makes any of the ten or eleven other products on which they allege the more than two dozen Defendants "conspired" to fix prices.

### B. The Parties

The DPPs are seven alleged direct purchasers of Wire Harness Products. DP CAC ¶¶ 10, 16-22. The DPPs do not allege which product they purchased or from whom or, for that matter, that any of them actually purchased each of these products. The DPPs allege only that they "purchased Wire Harness products directly from one or more of the Defendants during the Class Period." *Id.* ¶¶ 16-22. No DPP specifically alleges it purchased a body ECU from any Defendant or anything at all from DENSO.

The EPPs allegedly indirectly purchased Automotive Wire Harness Systems for their own use and not for resale. EP CCAC ¶¶ 2, 188-89. They allegedly purchased either finished automobiles that incorporated one or more of the eleven products included in their definition of Automotive Wire Harness Systems or purchased one or more of these eleven products as a replacement part in the "aftermarket"—they do not specify which. *Id.* They also do not identify which of the eleven products any of them purchased indirectly and from which Defendant or, again, that any of them actually purchased each of these products indirectly. Instead, they allege only that they "purchased Automotive Wire Harness Systems indirectly from one or more Defendants." *Id.* ¶¶ 19-71. No EPP specifically alleges he or she indirectly purchased a body ECU (either as a component in a finished automobile or as an aftermarket replacement part) from any Defendant or anything at all manufactured or sold by DENSO.

Plaintiffs identify at least two dozen corporate entities as Defendants.  DP CAC ¶¶ 23-63; EP CCAC ¶¶ 72-120.  Defendants include DENSO Corporation and DENSO International America, Inc.[4]  With respect to each Defendant, the Plaintiffs identify its place of incorporation and principal place of business and allege the Defendant "manufactured, marketed [and/or] sold" Wire Harness Products or Automotive Wire Harness Systems, respectively.  DP CAC ¶¶ 23-62; EP CCAC ¶¶ 72-120.  Neither the DPPs nor the EPPs identify which of the products included within the definition of "Wire Harness Products" or "Automotive Wire Harness Systems" each Defendant, and in particular DENSO, allegedly manufactured, marketed or sold.

### C.      Other Industry Background

Plaintiffs make other general allegations about the nature of the products they include within the definition of "Wire Harness Products" and "Automotive Wire Harness Systems," as well as the nature of the industry as a whole, including certain Defendants' market shares, and the manner in which automobile manufacturers purchase products on a model-by-model basis through requests for quotation.  DP CAC ¶¶ 76-105; EP CCAC ¶¶ 124-150.  There is no mention of DENSO in any of the allegations concerning the industry.  In particular, the charts provided by the Plaintiffs reflecting certain Defendants' market shares with respect to the sale of wire harnesses do not mention DENSO.  DP CAC ¶ 101 Fig. 1; EP CCAC ¶ 143 Fig. 3 and 4.

Plaintiffs allege that Defendants had opportunities to conspire because they attended public events, such as the North American International Auto Show ("NAIAS") and the Automotive Aftermarket Products Expo.  DP CAC ¶ 106, EP CCAC ¶ 163.

---

[4]      Although the DPPs initially named ASMO Co. Ltd. ("ASMO") in their Consolidated Amended Class Action Complaint, they have filed a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) as to ASMO (ECF No. 185).  The EPPs did not name ASMO as a Defendant.  Certain other corporate entities originally named in either or both complaints have been voluntarily dismissed.

### D.     The Alleged Conduct

Plaintiffs contend that Defendants formed an overarching conspiracy dating from "at least" January 1, 2000 to rig bids and fix prices of Wire Harness Products or Automotive Wire Harness Systems.  Both sets of Plaintiffs rely almost entirely on the existence of government investigations of certain Defendants and guilty pleas of certain others, including DENSO Corporation (and a few of certain Defendants' employees) to support their claims.

Both sets of Plaintiffs rely on the plea of DENSO Corporation, as well as pleas by Fujikura Ltd., Furukawa Electric Co. Ltd., and Yazaki Corporation.  DP CAC ¶¶ 122-37; EP CCAC ¶¶ 172-87.  The EPPs additionally rely on a guilty plea by G.S. Electech.  EP CCAC ¶ 185.  DENSO Corporation's plea (in relevant part) involved sales of a single product—a type of electronic control unit known as a "body ECU"—to a single automobile manufacturer.  Plea Agreement at 4, *United States v. DENSO Corp.*, No. 12-20063 (E.D. Mich. Mar. 5, 2012) [Exhibit D].  The other pleas do not mention DENSO and involve distinct products and customers.  G.S. Electech's plea involved sales of a single product—speed sensor wire assemblies—to a single automobile manufacturer.  Plea Agreement at 3-4, *United States v. GS Electech*, No. 12-20215 (E.D. Mich. May 16, 2012) [Exhibit E].  It does not mention ECUs or DENSO.  Fujikura Ltd.'s plea involved sales of five products at issue here all to a single automobile manufacturer, but did not involve electronic control units of any kind, much less "body ECUs" (or speed sensor wire assemblies), and the plea does not mention DENSO (or G.S. Electech).  Plea Agreement at 3, *United States v. Fujikura Ltd.*, No. 12-20254 (E.D. Mich. June 21, 2012) [Exhibit F].  The pleas of Yazaki Corporation and Furukawa Electric Co. Ltd. each involved certain additional Wire Harness products sold to certain automobile manufacturers, although not the same products and not all the products included within the Plaintiffs' definition of Wire Harness Products or Automotive Wire Harness Systems.  Plea Agreement at 3, *United*

*States v. Furukawa Electric Co., Ltd.*,  No. 11-20612 (E.D. Mich. Nov. 14, 2011) [Exhibit G];

Plea Agreement at 4, *United States v. Yazaki Corp.*, No. 12-20064 (E.D. Mich. Mar. 1, 2012)

[Exhibit H].  Neither plea mentions DENSO.[5]

## III.    PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO STATE THEIR CLAIM FOR AN ANTITRUST CONSPIRACY AGAINST DENSO

As set forth in the Defendants' Collective Motions to Dismiss, the Plaintiffs have failed

to allege facts sufficient to state a claim against any of the Defendants.  But even if they had

alleged sufficient facts to state a claim against some Defendants (which they have not), they have

clearly failed to do so against DENSO.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court made clear

that, to survive a motion to dismiss, a complaint alleging an antitrust conspiracy must do more

than recite conclusory labels such as "conspiracy" or "agreement."  *See id*. at 555.  Rather, to

survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above

the speculative level" and to demonstrate that relief is "plausible on its face."  *Id.* at 555, 570; *see*

*also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009), *cert. denied*,

131 S. Ct. 896 (2011).  A claim is plausible on its face "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

---

[5]      The DPPs also reference a Japanese Fair Trade Commission ("JFTC") press release describing cease and desist orders ("Orders") the JFTC issued to defendants Yazaki Corporation and Fujikura Ltd. DP CAC ¶ 133.  The Orders make no mention of DENSO and reference only four of the twelve products identified in the DP CAC:  wire harnesses, relay boxes, fuse boxes, and junction blocks.  DENSO's plea does not concern those products, and neither set of Plaintiffs alleges that DENSO manufacturers or sells those products.  English versions of the JFTC's January 19, 2012 press release announcing its Cease and Desist Orders and the Orders themselves are available at the JFTC website: http://www.jftc.go.jp/en/pressreleases/archives/individual-000462.html [Exhibit I]; and http://www.jftc.go.jp/en/pressreleases/uploads/2012_Jan_19.pdf [Exhibit J].  A court may consider documents in a motion to dismiss when they are incorporated by reference in plaintiff's complaint, and are central to plaintiff's claims.  *See Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997).  Further, "[f]ederal courts may take judicial notice of proceedings in other courts of record."  *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)); *see also* Fed. R. Evid. 201.

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atl. Corp*, 550 U.S. at

556).

> **A.   Plaintiffs Have Failed to Plead Facts Showing a Link Between DENSO Corporation's Plea and the Conspiracy Alleged Here**

Although Plaintiffs' claims are based on an overarching conspiracy among more than two

dozen Defendants and involving as many as twelve separate products (the DPPs include twelve,

while the EPPs include eleven), the Plaintiffs fail to allege facts showing that DENSO

participated in any such overarching conspiracy.

The Plaintiffs' claims against DENSO rest almost entirely on the existence of a

government investigation that resulted in a guilty plea by DENSO Corporation.  Although

DENSO Corporation's plea may be *prima facie* evidence of its own conduct as set forth in the

plea, 15 U.S.C. § 16(a), it does not provide the necessary support for the claims asserted by these

particular Plaintiffs, who fail to allege facts linking DENSO Corporation's plea to the far

different, overarching conspiracy Plaintiffs allege.

DENSO Corporation's plea involved sales of only one of the products included within

the definition of Wire Harness Products or Automotive Wire Harness Systems—a type of

electronic control unit known as a body ECU.  Exhibit D, *DENSO Plea* at 4.  Neither "wire

harnesses" nor any other "Wire Harness Product" or "Automotive Wire Harness System" is even

mentioned in DENSO's plea.[6]

Moreover, the Plaintiffs' discussion of the wire harness industry, including their charts

showing certain Defendants' respective market shares, do not even mention DENSO, and for

good reason.  With the exception of ECUs, the Plaintiffs do not, and cannot in good faith, allege

---

[6]      The JFTC cease and desist orders also fail to support Plaintiffs' claims.  They make no mention of DENSO or of body ECUs, the only relevant product involved in DENSO Corporation's plea.  Instead, they reference four other products: wire harnesses, relay boxes, fuse boxes, and junction blocks. Plaintiffs do not (and cannot) allege that DENSO even manufactures or sells those products.

that DENSO manufactured or sold any of the products included within the definition of Wire

Harness Products or Automotive Wire Harness Systems. Plaintiffs therefore have failed to

plausibly allege that DENSO participated in any overarching conspiracy as to such products. *See*

*United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986) (in bid-rigging and price

fixing cases where "the disputed issue is the existence or scope of the alleged horizontal

agreement that is to be inferred from circumstantial evidence, the first inquiry must be whether

or not each firm alleged to have been a party to it was an actual or potential competitor in that

market").

  **B. Plaintiffs Have Failed to Plead Facts Showing a Link Between DENSO Corporation's Plea and Any Injury to Plaintiffs**

  The Plaintiffs also fail to link DENSO Corporation's plea to any harm that any Plaintiff

allegedly suffered. DENSO Corporation's plea was limited to sales of a single product—body

ECUs—to a single automobile manufacturer. The Plaintiffs, however, do not allege any facts

concerning their own purchases. In particular, Plaintiffs do not even allege that any of them ever

purchased a body ECU from any Defendant (or indeed that any of them ever purchased *anything*

at all from DENSO).

  With respect to the DPPs: none of them are automobile manufacturers. None of them

has alleged (or could in good faith allege) that DENSO ever sold a single body ECU to any of

them. None of them has alleged (or could in good faith allege) that any of them ever purchased a

body ECU from any other Defendant that was the subject of the conduct set forth in DENSO's

plea.

  With respect to the EPPs: none of them allege that they ever purchased a body ECU

from anyone (or anything at all from DENSO), much less that any body ECU that they

purchased was the subject of the conduct set forth in DENSO's plea. In fact, the EPPs do not

even allege which, if any, of them purchased a finished automobile rather than a replacement part on the aftermarket.  None of the Defendants' pleas (and certainly not DENSO Corporation's) had anything to do with "aftermarket" parts, and nothing is alleged in either CAC to suggest that DENSO has ever engaged in price fixing of body ECUs in the "aftermarket" or in any instance other than with respect to the single automobile manufacturer referenced in DENSO Corporation's plea.  And to the extent any EPP purchased a finished automobile, the CAC is devoid of any allegation regarding the automobile manufacturer from which he or she purchased much less any facts to show which (if any) of the EPPs bought their automobile from the single automobile manufacturer that was the subject of the conduct set forth in DENSO Corporation's plea.

> **C.     Absent Facts to Link Plaintiffs' Conspiracy to DENSO Corporation's Plea, Plaintiffs Fail to State a Claim**

Absent factual allegations linking their claims to DENSO Corporation's plea, Plaintiffs' claims against DENSO must be dismissed.  *See, e.g.*, *In re Iowa Ready-Mix Concrete*, 768 F. Supp. 2d 961, 975, 979 (N.D. Iowa 2011) (plea agreements involving alleged bilateral agreements failed to state claim for broader conspiracy absent allegation of facts supporting existence of overall plan to fix prices or to show that each defendant had knowledge of involvement of the others in the conspiracy); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2010 WL 2629728 at *5  (N.D. Cal. June 29, 2010) (granting motion to dismiss complaint where plaintiffs' allegation of conspiracy in the STN-LCD panel market was insufficiently supported by guilty pleas concerning TFT-LCD panels with no additional specific factual allegations linking the pleas to the alleged conspiracy) [Exhibit K].

This case is readily distinguishable from *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010).  In that case, the plaintiffs provided detailed factual allegations

of a nationwide conspiracy to allocate customers, including the particular agreements between identified defendants to allocate specific territories based on statements from a defendant's former executive and "numerous" confidential informants who were identified by the positions they had held with the defendant companies. *Id.* at 1012-14. In addition, the plaintiffs alleged that certain defendants had pleaded guilty to customer allocation agreements in a more limited geographical region. *Id.* Taken as a whole, the pleas, the detailed factual allegations from a defendant's former executive and numerous confidential informants, and the other facts alleged were sufficient to "nudge" their claims "across the line from the conceivable to plausible." *Id.* at 1017. Here, Plaintiffs allege virtually nothing other than DENSO Corporation's plea, and that is plainly not enough to state a claim against DENSO with respect to the broad conspiracy alleged here.

Indeed, other than the investigation of DENSO and DENSO Corporation's subsequent plea, the Plaintiffs each allege as to DENSO only: the place of incorporation and principal place of business for DENSO Corporation and DENSO International America, Inc.; the relationship between the two entities; and that they manufactured, marketed, or sold unspecified "Wire Harness Products" or "Automotive Wire Harness Systems." (EPPs also allege DENSO was one of many sponsors of a public auto show.) Plaintiffs also include a few wholly conclusory and legally meaningless assertions about unspecified "Defendants and their co-conspirators." Such allegations fall far short of stating a claim. *See, e.g.*, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445, 555 (6th Cir. 2012) (to survive motion to dismiss, plaintiffs must 'specify how [each] defendant [was] involved in the alleged conspiracy.'" (quoting *In re Travel Agent Comm'n*, 583 F.3d 896, 905 (6th Cir. 2009)); *In re Travel Agent Commission Antitrust Litig.,* 583 F.3d 896, 905 (reliance on "indeterminate assertions" about "'defendants' or 'defendants' executives'" is

"precisely the type of naked conspiratorial allegations rejected . . . in *Twombly*."); *see also Total Benefits Planning Agency v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2012 WL 2114997, at \*\*7-8 (E.D. Mich. June 11, 2012); *Mich. Div. Monument Builders of N. Am. v. Mich. Cemetery Ass'n.*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006) [Exhibit L].

## IV. CONCLUSION

For the foregoing reasons, as well as those in Defendants' Collective Motion to Dismiss the Direct Purchaser Actions and Defendants' Collective Motion to Dismiss the End-Payors' Corrected Consolidated Amended Class Action Complaint and the Automobile Dealers' Consolidated Class Action Complaint, DENSO respectfully requests that the Consolidated Amended Class Action Complaints filed by the Direct Purchasers and End-Payors be dismissed as against DENSO, with prejudice.

Respectfully submitted,

July 13, 2012         By:    /s/ Steven F. Cherry
                             Steven F. Cherry
                             David P. Donovan
                             Stephanie K. Wood
                             Elizabeth Martin
                             WILMER CUTLER PICKERING HALE AND
                                 DORR LLP
                             1875 Pennsylvania Avenue, NW
                             Washington, DC 20006
                             (202) 663-6000
                             (202) 663-6363 (facsimile)
                             steven.cherry@wilmerhale.com
                             david.donovan@wilmerhale.com
                             stephanie.wood@wilmerhale.com
                             ellie.martin@wilmerhale.com

Karen D. Stringer
Heather Price
WILMER CUTLER PICKERING HALE AND
    DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6406
(617) 526-5000 (facsimile)
karen.stringer@wilmerhale.com
heather.price@wilmerhale.com

*Attorneys for Defendant DENSO International
    America, Inc. and Denso Corp.*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Phone: (248) 372-8252
Fax:   (248) 213-2551
STEVE_ZAROWNY@denso-diam.com

*Attorney for Defendant DENSO International
    America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2012, I caused the foregoing Denso Corporation and Denso International America, Inc.'s Motion to Dismiss the Direct Purchasers' Consolidated Amended Class Action Complaint and the End-Payors' Corrected Consolidated Amended Class Action Complaint and accompanying Exhibits A-L to be served upon Direct Purchaser Interim Lead and Liaison Counsel, Automobile Dealer Interim Lead and Liaison Counsel, and End-Payor Interim Lead and Liaison Counsel by filing said document via ECF in accordance with Case Management Order No. 1.

Dated: July 13, 2012

By: /s/ Steven F. Cherry
Steven F. Cherry
WILMER CUTLER PICKERING HALE AND
    DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
(202) 663-6363 (facsimile)
steven.cherry@wilmerhale.com