# EXHIBIT H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No.: *12-20064* |
| v. | Filed: |
| YAZAKI CORPORATION, | Violation: 15 U.S.C. § 1 |
| Defendant. | THREE COUNTS |

_____/

## PLEA AGREEMENT

The United States of America and Yazaki Corporation ("defendant"), a corporation

organized and existing under the laws of Japan, hereby enter into the following Plea Agreement

pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.      The defendant understands its rights:

   (a)      to be represented by an attorney;

   (b)      to be charged by Indictment;

   (c)      as a corporation organized and existing under the laws of Japan, to decline

to accept service of the Summons in this case, and to contest the jurisdiction of the

United States to prosecute this case against it in the United States District Court for the

Eastern District of Michigan;

   (d)      to plead not guilty to any criminal charge brought against it;

   (e)      to have a trial by jury, at which it would be presumed not guilty of the

charges and the United States would have to prove every essential element of the charged

offenses beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above.  The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by the Court.  This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c).  Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.  The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.  Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a three-count Information to be filed in the United States District Court for the Eastern District of Michigan.  Count One of the Information will charge the defendant with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere, from at least as

2

early as January 2000 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Count Two of the Information will charge the defendant with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, instrument panel clusters sold to certain automobile manufacturers in the United States and elsewhere, from at least as early as December 2002 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Count Three of the Information will charge the defendant with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to fix, stabilize, and maintain the prices of fuel senders sold to an automobile manufacturer in the United States and elsewhere, from at least as early as March 2004 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.     The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charges described in Paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSES CHARGED

4.     Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)     As to Count One:

(i)     For purposes of this Plea Agreement, the "relevant period" is that period from at least as early as January 2000 until at least February 2010. During the relevant period, the defendant was an entity organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan. During the

3

relevant period, the defendant was a manufacturer of automotive wire harnesses and related products, employing more than 5,000 individuals, and was engaged in the sale of automotive wire harnesses and related products in the United States and elsewhere. Automotive wire harnesses are automotive electrical distribution systems used to direct and control electronic components, wiring, and circuit boards. The following are defined as "related products" for the purposes of this Plea Agreement: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, and junction blocks. During the relevant period, the defendant's sales of automotive wire harnesses and related products affecting certain automobile manufacturers in the United States and elsewhere totaled approximately $2 billion.

(ii)   During the relevant period, the defendant, through certain of its officers and employees, including high-level personnel of the defendant, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of automotive wire harnesses and related products, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere. In furtherance of the conspiracy, the defendant, through certain of its officers and employees, engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of automotive wire harnesses and related products. During such meetings and conversations, agreements were reached to allocate the

4

supply of automotive wire harnesses and related products sold to certain automobile manufacturers on a model-by-model basis, rig bids quoted to certain automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by certain automobile manufacturers, of automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere.

(iii)     During the relevant period, automotive wire harnesses and related products sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of automotive wire harnesses and related products, as well as payments for automotive wire harnesses and related products, traveled in interstate and foreign commerce.  The business activities of the defendant and its co-conspirators in connection with the production and sale of automotive wire harnesses and related products that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(iv)     The conspiratorial meetings and conversations described above took place in the United States and elsewhere, and automotive wire harnesses and related products that were the subject of the conspiracy were sold to certain automobile manufacturers by the defendant's United States subsidiary, which is located in the Eastern District of Michigan.

(b)     As to Count Two:

5

(i)     For purposes of this Plea Agreement, the "relevant period" is that period from at least as early as December 2002 until at least February 2010. During the relevant period, the defendant was an entity organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan. During the relevant period, the defendant was a manufacturer of instrument panel clusters, also known as meters, employing more than 5,000 individuals, and was engaged in the sale of instrument panel clusters in the United States and elsewhere.  Instrument panel clusters are the mounted array of instruments and gauges housed in front of the driver of an automobile.  During the relevant period, the defendant's sales of instrument panel clusters affecting certain automobile manufacturers in the United States and elsewhere totaled approximately $73 million.

(ii)     During the relevant period, the defendant, through certain of its officers and employees, including high-level personnel of the defendant, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of instrument panel clusters, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, instrument panel clusters sold to certain automobile manufacturers in the United States and elsewhere.  In furtherance of the conspiracy, the defendant, through certain of its officers and employees, engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of instrument panel clusters. During such meetings and conversations, agreements were reached to allocate the supply of instrument panel clusters sold to certain automobile manufacturers on a

6

model-by-model basis, rig bids quoted to certain automobile manufacturers for instrument panel clusters, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by certain automobile manufacturers, of instrument panel clusters sold to certain automobile manufacturers in the United States and elsewhere.

(iii)    During the relevant period, instrument panel clusters sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of instrument panel clusters, as well as payments for instrument panel clusters, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of instrument panel clusters that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(iv)    The conspiratorial meetings and conversations described above took place in the United States and elsewhere, and instrument panel clusters that were the subject of the conspiracy were sold to certain automobile manufacturers by the defendant's United States subsidiary, which is located in the Eastern District of Michigan.

(c)    As to Count Three:

(i)    For purposes of this Plea Agreement, the "relevant period" is that period from at least as early as March 2004 until at least February 2010. During the relevant period, the defendant was an entity organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan. During the

7

relevant period, the defendant was a manufacturer of fuel senders, employing more than 5,000 individuals, and was engaged in the sale of fuel senders in the United States and elsewhere. Fuel senders reside in the fuel tank of an automobile and measure the amount of fuel in the tank. During the relevant period, the defendant's sales of fuel senders affecting an automobile manufacturer in the United States totaled approximately $1.6 million.

(ii) During the relevant period, the defendant, through certain of its officers and employees, including high-level personnel of the defendant, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of fuel senders, the primary purpose of which was to fix, stabilize, and maintain the prices of fuel senders sold to an automobile manufacturer in the United States and elsewhere. In furtherance of the conspiracy, the defendant, through certain of its officers and employees, engaged in discussions and attended meetings with a co-conspirator involved in the manufacture and sale of fuel senders. During such meetings and conversations, agreements were reached to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by an automobile manufacturer, of fuel senders sold to an automobile manufacturer in the United States and elsewhere.

(iii) During the relevant period, fuel senders sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of fuel senders, as well as payments for fuel senders, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of fuel senders that

8

were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

       (iv)    The conspiratorial meetings and conversations described above took place in Japan, and fuel senders that were the subject of the conspiracy were sold to an automobile manufacturer by the defendant's United States subsidiary, which is located in the Eastern District of Michigan.

## POSSIBLE MAXIMUM SENTENCE

5.    The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for each violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

       (a)    $100 million (15 U.S.C. § 1);

       (b)    twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

       (c)    twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

6.    In addition, the defendant understands that:

       (a)    pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years, for each of the charged crimes;

       (b)    pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offenses; and

9

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for each of the charged crimes.

## SENTENCING GUIDELINES

7.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## SENTENCING AGREEMENT

8.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $470 million, pursuant to 18 U.S.C. § 3571(d), payable in installments as set forth below with interest accruing under 18 U.S.C. § 3612(f)(1)-(2) and no order of restitution ("the recommended sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0. The parties agree not to seek or support any sentence outside of the Guidelines range nor any

Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

      (a)    The United States and the defendant agree to recommend, in the interest of justice pursuant to 18 U.S.C. § 3572(d)(1), that the fine be paid in the following installments: within forty five (45) days of imposition of sentence -- $78,333,333.33 plus any accrued interest; at the one-year anniversary of imposition of sentence ("anniversary") -- $78,333,333.33 plus any accrued interest; at the two-year anniversary -- $78,333,333.33 plus any accrued interest; at the three-year anniversary -- $78,333,333.33 plus any accrued interest; at the four-year anniversary -- $78,333,333.33 plus any accrued interest; and at the five-year anniversary -- $78,333,333.35 plus any accrued interest; provided, however, that the defendant shall have the option at any time before the five-year anniversary of prepaying the remaining balance plus any accrued interest then owing on the fine.

      (b)    The defendant understands that the Court will order it to pay a $400 special assessment for each offense charged in the Information, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

      (c)    In light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offenses charged in the Information.

      (d)    Both parties will recommend that no term of probation be imposed, but the defendant understands that the Court's denial of this request will not void this Plea Agreement.

11

(e)     The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 9, will provide sufficient information concerning the defendant, the crimes charged in this case, and the defendant's role in the crimes to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and defendant agree to request jointly that the Court accept the defendant's guilty pleas and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32.1(h) of the Criminal Local Rules. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

(f)     The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss resulting from the charged offenses is sufficient to justify the recommended sentence set forth in this paragraph, pursuant to 18 U.S.C. § 3571(d). For purposes of this plea and sentencing only, the defendant waives its rights to contest this calculation.

9.     Subject to the full, truthful, and continuing cooperation of the defendant and its subsidiaries, as defined in Paragraph 11 of this Plea Agreement, and before sentencing in the case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's and its subsidiaries' cooperation, and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offenses and all other relevant conduct.

The United States and the defendant agree that the applicable Guidelines fine range exceeds the fine contained in the recommended sentence set out in Paragraph 8 above. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 11 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. §8C4.1, for a downward departure from the Guidelines fine range and will request that the Court impose the recommended sentence set out in Paragraph 8 of this Plea Agreement because of the defendant's substantial assistance in the government's investigation and prosecutions of violations of federal criminal law in the automotive parts industry.

      10.    The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea Agreement.

      (a)    If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 10(b) below, shall be rendered void.

      (b)    If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty pleas (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws its pleas of guilty, this Plea Agreement, the guilty pleas, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty pleas or this Plea Agreement, or made in the course of plea discussions with an attorney for the government, shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Federal Rule of Evidence 410. In addition, the defendant agrees that, if it withdraws its guilty pleas pursuant to this subparagraph of

the Plea Agreement, the statute of limitations period for any offenses referred to in

Paragraph 13 of this Plea Agreement shall be tolled for the period between the date of the

signing of the Plea Agreement and the date the defendant withdrew its guilty pleas or for

a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever

period is greater.

## DEFENDANT'S COOPERATION

11.     The defendant and its subsidiaries will cooperate fully and truthfully with the

United States in the prosecution of this case; the conduct of the current federal investigation of

violations of federal antitrust and related criminal laws involving the manufacture or sale of

automotive wire harnesses and related products, instrument panel clusters, or fuel senders; any

other federal investigation resulting therefrom; and any litigation or other proceedings arising or

resulting from any such investigation to which the United States is a party ("Federal

Proceeding").  The full, truthful, and continuing cooperation of the defendant and its subsidiaries

shall include, but not be limited to:

(a)     producing to the United States all non-privileged documents, information,

and other materials, wherever located (and with translations into English when

requested), in the possession, custody, or control of the defendant or any of its

subsidiaries, requested by the United States in connection with any Federal Proceeding;

and

(b)     using its best efforts to secure the full, truthful, and continuing

cooperation, as defined in Paragraph 12 of this Plea Agreement, of the current and former

directors, officers and employees of the defendant or any of its subsidiaries as may be

requested by the United States, but excluding Tsuneaki Hanamura, Kazuhiko Kashimoto,

14

Ryoji Kawai, Akira Kawakami, Shigeru Ogawa, Toshio Sudo, and Hisamitsu Takada, including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.

12.     The full, truthful, and continuing cooperation of each person described in Paragraph 11(b) above, will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a)     producing in the United States and at other mutually agreed-upon locations all non-privileged documents, including claimed personal documents and other materials, wherever located (and with translations into English when requested), requested by attorneys and agents of the United States;

(b)     making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(d)     otherwise voluntarily providing the United States with any non-privileged material or information not requested in (a) - (c) of this paragraph that he or she may have that is related to any Federal Proceeding;

15

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402) and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 14(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 14(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

### GOVERNMENT'S AGREEMENT

13.     Upon acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the cooperation requirements of Paragraph 11 of this Plea Agreement, the United States agrees that it will not bring further criminal charges against the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive wire harnesses and related products, instrument panel clusters, or fuel senders.  The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws or to any crime of violence.

16

14.     The United States agrees to the following:

(a)     Upon the Court's acceptance of the guilty pleas called for by this Plea
Agreement and the imposition of the recommended sentence and subject to the exceptions
noted in Paragraph 14(c), the United States will not bring criminal charges against any
current or former director, officer or employee of the defendant or its subsidiaries for any
act or offense committed before the date of this Plea Agreement and while that person was
acting as a director, officer or employee of the defendant or its subsidiaries that was
undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of
automotive wire harnesses and related products, instrument panel clusters, or fuel senders
("Relevant Offense"), with the exception that the protections granted in this paragraph
shall not apply to Tsuneaki Hanamura, Kazuhiko Kashimoto, Ryoji Kawai, Akira
Kawakami, Shigeru Ogawa, Toshio Sudo, and Hisamitsu Takada;

(b)     Should the United States determine that any current or former director,
officer, or employee of the defendant or its subsidiaries may have information relevant to
any Federal Proceeding, the United States may request that person's cooperation under the
terms of this Plea Agreement by written request delivered to counsel for the individual
(with a copy to the undersigned counsel for the defendant) or, if the individual is not
known by the United States to be represented, to the undersigned counsel for the
defendant;

(c)     If any person requested to provide cooperation under Paragraph 14(b) fails
to comply with his or her obligations under Paragraph 12, then the terms of this Plea

Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

(d)     Except as provided in Paragraph 14(e), information provided by a person described in Paragraph 14(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement (18 U.S.C. § 1001), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 12 of this Plea Agreement, the agreement in Paragraph 14(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

(f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence; and

(g)     Documents provided under Paragraphs 11(a) and 12(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its subsidiaries.

15.     The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for

meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury (18 U.S.C. § 1621), making a false statement (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*) or contempt (18 U.S.C. §§ 401-402) in connection with any testimony or information provided or requested in any Federal Proceeding.

16.     The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the convictions resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner and extent of the cooperation of the defendant and its subsidiaries as a matter for that agency to consider before determining what administrative action, if any, to take.

## REPRESENTATION BY COUNSEL

17.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charges, any possible defenses to the charges, and the nature and range of possible sentences.

## **VOLUNTARY PLEA**

18.     The defendant's decision to enter into this Plea Agreement and to tender pleas of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement.  The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## **VIOLATION OF PLEA AGREEMENT**

19.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its subsidiaries has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 11 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its subsidiaries shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.  The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its subsidiaries for any offense referred to in Paragraph 13 of this Plea Agreement, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

20.     The defendant understands and agrees that in any further prosecution of it or its subsidiaries resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or its subsidiaries' violation of the Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its subsidiaries, or current or former directors, officers, or employees of it or its subsidiaries to attorneys or agents of the United States, federal grand juries or courts, and any leads derived therefrom, may be used against it or its subsidiaries in any such further prosecution.  In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Federal Rule of Evidence 410.

## ENTIRETY OF AGREEMENT

21.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

22.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Confirmation of Grant of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

23.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

24.     A facsimile or PDF signature shall be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: January 30, 2012

BY: _____
Takao Soeda
Senior Managing Director
Yazaki Corporation


BY: _____
John M. Majoras
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 879-3939

Michelle K. Fischer
Stephen J. Squeri
Jones Day
901 Lakeside Avenue
Cleveland, OH 44114
Tel.: (216) 586-3939

Counsel for Yazaki Corporation

BY: _____
Kathryn Hellings
Shane Cralle
Matthew Lunder
Trial Attorneys
United States Department of Justice
Antitrust Division
450 Fifth Street, NW
Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694

## CONFIRMATION OF GRANT

The Board of Directors of Yazaki Corp.("YAZAKI"), certifies that, at the Board of Director's meeting convened on January 10th, 2012,YAZAKI's Board of Directors:

(1) **RESOLVED** that the execution, delivery and performance of the Plea Agreement between YAZAKI and the United States Department of Justice ("DOJ") be approved, in substantially the form presented to the Board of Directors; and

(2) **AUTHORIZED, EMPOWERED AND DIRECTED,** for and on behalf of YAZAKI, Takao Soeda, Senior Managing Director of YAZAKI, responsible for Compliance, as a representative of YAZAKI,

- to execute and deliver, with power to act alone, the Plea Agreement;
- to represent YAZAKI at any hearing in order to waive any and all rights of YAZAKI referred to in the Plea Agreement and to plead guilty at such hearing, in accordance with the terms therein; and
- to prepare and deliver or cause to be prepared and delivered, and to execute all documents, and take or cause to be taken such further actions as he may deem necessary, appropriate and advisable to fully effectuate the intent of the foregoing resolution and authorizations, and to comply with the provisions of any of the documents and instruments approved or authorized by the Board of Directors at their January 10, 2012 meeting.

January 12, 2012

Representative Director and President
Shinji Yazaki
Yazaki Corporation

CLI-1954841v1