UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-MD-02311 |
| PRODUCT(S): | |
| WIRE HARNESS SYSTEMS | |
| THIS DOCUMENT RELATES TO: | |
| All Actions | |

**INTERESTED THIRD PARTY/PLAINTIFF MCGUIRE BEARING COMPANY'S OPPOSITION TO WIRE HARNESS LITIGATION PLAINTIFFS' MOTION FOR CASE MANAGEMENT ORDER NO. 3**

In accordance with the Court's July 16, 2012 Order (Dkt. # 244) granting Plaintiff McGuire Bearing Company's ("McGuire") motion for leave to file it, Plaintiff McGuire herein provides its Opposition to Wire Harness Litigation Plaintiff's Motion for Case Management Order No. 3 (Dkt. #184). It opposes the entrance of Proposed Case Management Order No. 3, filed on June 29, 2012, as Exhibit 2 to the Joint Memorandum of Plaintiffs and Defendants Regarding Submission of Proposed Orders Reflecting June 15, 2012 Status Conference Rulings (Dkt. #180). The Opposition is identical (other than one misspelling, the date and the new name of a law firm in the signature block) to the one filed on July 6, 2012 as Exhibit 1 to Plaintiff's motion for leave to file the Opposition.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-MD-02311 |
| PRODUCT(S): | |
| WIRE HARNESS SYSTEMS | |
| THIS DOCUMENT RELATES TO: | |
| All Actions | |

**INTERESTED THIRD PARTY/PLAINTIFF MCGUIRE BEARING COMPANY'S OPPOSITION TO WIRE HARNESS LITIGATION PLAINTIFFS' MOTION FOR CASE MANAGEMENT ORDER NO. 3**

**Introduction and Summary**

Interested third-party/Plaintiff McGuire Bearing Company ("McGuire") has brought an action on behalf of a putative class of direct purchasers of bearings, *McGuire Bearing Co. v. JTEKT Corp.*, No. 2:12-cv-12932-JAC-MAR (filed July 3, 2012) (Dkt. No. 1) (hereafter the "Bearings Litigation"), and anticipates that the matter will be transferred to the Honorable Judge Battani as other cases concerning "automotive bearings" brought by *indirect* purchasers have been.[1] McGuire understands that counsel in the Automotive Wire Harness Systems cases (hereafter the "Wire Harness Litigation") have moved the Court to enter a proposed case

---

[1] The three indirect purchaser bearings cases transferred to this Court as companion cases to Case No. 12-02311 are *Kaufman v. JTEKT Corp.*, No. 12-12263-MOB-MKM; *Shah v. NSK Ltd.*, No. 12-12680-MOB-MKM; and *Florida Welding Fabricators & Erectors, Inc. v. JTEKT Corp.*, No. 12-cv-12352-MOB-MKM.

management order ("CMO No. 3") that would appoint them as interim co-lead counsel not only in the current cases before the Court, but in "all cases filed in or transferred to this Court in MDL 2311, *In re: Automotive Parts Antitrust Litigation.*" The proposed CMO No. 3 is opposed by the Defendants.

Plaintiff McGuire respectfully submits that the Court should not enter proposed CMO No. 3. First, to the extent that it seeks to resolve leadership issues in the Bearings Litigation, it is overbroad and inappropriate. The Bearings Litigation involves many different plaintiffs, different defendants, a different conspiracy, and encompasses far more than just automotive parts. (Indeed, the majority of the products at issue in the Bearings Litigation are *not* "automotive parts"). Notably, counsel for the wire harness direct purchaser plaintiffs have not even filed direct purchaser bearings cases. McGuire is the only plaintiff who has filed a direct purchaser bearings complaint. Moreover, given the nature of the cases – and the differences in the parties, the products and the conspiracy involved – Federal Rule of Civil Procedure 23(g) requires an assessment of the appropriate leadership structure for the Bearings Litigation based on the factors set forth in Rule 23(g).

Second, the overbreadth of proposed CMO No. 3 as applied to the Bearings Litigation highlights a more fundamental problem in the proposed order. In this respect, Plaintiff McGuire agrees with the Defendants' opposition to proposed CMO No. 3. It would be premature and contrary to the requirements of Rule 23(g) to appoint counsel in the Wire Harness Litigation as interim co-lead counsel for *other cases* – including all future cases that may be "transferred to this Court as part of MDL 2311" – without regard to the circumstances presented by those cases and the factors set forth in Rule 23(g). The Bearings Litigation provides a clear example and illustrates the broader point: the appropriate leadership structure in future cases should be

3

determined when those cases are before the Court, interested parties have notice and an opportunity to be heard, and the Court can evaluate the Rule 23(g) factors in light of all relevant circumstances presented by those cases.

The Court will have ample opportunity to make that assessment as such actions are transferred to the Court. But the proposal in CMO No. 3 that the interim lead role for counsel in the Wire Harness Litigation be extended to all other cases that may be "transferred to this Court as part of MDL 2311" should be denied.

### The Proposed Application of CMO No. 3 to the Bearings Litigation Is Inconsistent with the Requirements of Federal Rule 23(g) and Should be Denied

Although the proposed CMO No. 3 does not explicitly reference the Bearings Litigation, it appears to contemplate a substantial extension of the role of interim co-lead counsel in the Wire Harness Litigation to all future cases that are filed or transferred to this Court as part of MDL 2311. Such a sweeping proposed order disregards both the differences in these cases and the clear requirements of Federal Rule 23(g).

As set forth in Plaintiff McGuire's complaint, the products at issue in the Bearings Litigation are defined by type – for example, ball bearings and tapered roller bearings. Those different types of bearings are purchased by companies involved in five major industries, including (1) transportation; (2) industrial manufacturing and energy; (3) space and defense; (4) electronics and appliances; and (5) various other industries. Although bearings are often used for products in the transportation sector, *the majority* of bearings (55%) are used for other purposes. Thus, it would be a misnomer to describe the products at issue as "automotive parts"; they are defined by their type and uses, not a particular group of customers. Moreover, even if they were defined by customer, the products at issue are predominantly purchased by companies other than those in the automotive industry.

The Bearings Litigation includes claims against twelve Defendant corporations that are not involved in the other automotive parts cases.[2] *None* of these Defendants is a defendant in the Wire Harness Litigation or is alleged to have conspired in that case. Nor are they defendants or alleged to have conspired in the instrument panel clusters, heating control panels, fuel senders or occupant safety restraint systems litigations. Similarly, none of the Defendants involved in the Wire Harness Litigation or the other litigations are alleged to have participated in the conspiracy at issue in the Bearings Litigation. Stated succinctly, these cases involve entirely different conspiracies and entirely different groups of defendants.

In evaluating the appropriate leadership structure for the Bearings Litigation, this Court will have an opportunity to assess the Rule 23(g) factors. Although neither Rule 23(g) nor the Advisory Committee notes explicitly defines the standards for appointing *interim* lead counsel, courts have held that the Rule 23(g) factors should also be considered in this context. *See, e.g., In re Bear Stearns Cos., Inc., Sec., Derivative and ERISA Litig.*, MDL No. 1963, 2009 WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009) (explaining that it is "generally accepted that the considerations set out in Rule 23(g)(1)(c), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification") (quoting *In re Air Cargo,* 240 F.R.D. 56, 57 (S.D.N.Y. 2006)). Rule 23(g) provides that in appointing class counsel, the court "must consider" the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit

---

[2]   The defendants include JTEKT Corp., Koyo Corp. of U.S.A., Nachi-Fujikoshi Corp., Nachi America Inc., NSK Ltd., NSK Americas, Inc., Schaeffler AG, Schaeffler Group USA Inc., AB SKF, SKF USA Inc., NTN Corp., and NTN USA Corp.

to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Rule further provides that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Counsel for direct purchaser McGuire in the Bearings Litigation intend to seek appointment as interim co-lead counsel in that case and will address how the Rule 23(g) factors support such an appointment. The Court will then have the opportunity to determine the lead counsel that will best serve the interests of the putative class. To the extent the proposed CMO No. 3 instead seeks simply to appoint counsel from the Wire Harness Litigation – involving different products, defendants, and challenged conduct – simply because some bearings are also used as automotive products, it is not consistent with the requirements of Federal Rule 23(g) and Plaintiff respectfully requests that the proposed CMO be denied.

### As the Bearings Litigation Illustrates, Proposed CMO No. 3 is Substantially Overbroad in its Attempt to Appoint Interim Co-Lead Counsel For "All Cases Filed in or Transferred to this Court as Part of MDL 2311"

Although the Bearings Litigation provides a clear illustration of the infirmities in proposed CMO No. 3, the problems presented by the proposed order go substantially beyond the Bearings Litigation. The Department of Justice has described its automotive parts investigation as "the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged illegal conduct." *See* http://www.justice.gov/atr/public/division-update/2012/criminal-program.html. There is no telling at this point what other automotive parts will be implicated in the investigation in the future; whether they will involve the same, overlapping, or entirely different conspiracies; what civil cases will ultimately result; and whether those cases will involve the same defendants or entirely different actors. There may be little or no overlap between future direct purchaser

plaintiffs classes and little or no overlap among defendants in certain future cases. There is also no guarantee that the Wire Harness Litigation co-lead counsel will be retained by direct purchasers of whichever automotive and non-automotive parts that may end up as part of this MDL (and, if they choose to file such future cases, whether their appointment as interim lead counsel in those cases is dictated by the Rule 23(g) analysis). Moreover, neither the Court nor counsel can know at this time whether the Wire Harness Litigation co-lead counsel law firms have conflicts that preclude their suing all future defendants. Regardless of whether conflicts or a lack of standing would disqualify them, there are few, if any, efficiencies to appointing them as lead counsel in cases in which there are significant differences in the defendants involved, a different conspiracy at issue, or Rule 23(g) factors that support a different leadership structure in a future case. In any event, these are all issues that must be analyzed under Rule 23(g) in the context of specific cases, where the Court can consider the products involved, the identity of the parties, the nature of the conspiracy and other relevant Rule 23(g) factors.

For example, the first factor courts must consider in appointing lead counsel per Federal Rule of Civil Procedure 26(g)(1)(A) is "the work counsel has done in identifying and investigating potential claims in the action." With all due respect, there is no evidence that the Wire Harness Litigation co-lead counsel have done more than other counsel to identify and investigate cases such as the Bearings Litigation or future cases. Indeed, that determination cannot be made before those future cases and the claims involved are actually identified and evaluated pursuant to Rule 23(g). Another factor courts must consider in appointing lead counsel per Rule 26(g)(1)(A) is "the resources counsel will commit to representing the class." It is impossible to determine at this point how adding more multi-defendant class antitrust litigations (most of which will be multi-year actions defended by formidable defense firms)

might strain the resources of the wire harness co-lead counsel firms if they are already tasked with leading multiple other class actions. Given the resources likely to be employed on the defense side, there may be very important advantages for the putative classes in future cases in having other cases lead by other firms that have substantial additional resources, or some combination of those counsel and existing counsel. These are not questions the Court need resolve today, but instead can make under Rule 23(g) when those cases are on file and interested parties submit proposals regarding case leadership.

Plaintiff McGuire and counsel recognize the significance and complexity of the matters pending before the Court and the care that is being taken to move the various cases forward in a manner that best serves the interests of the parties involved and the judiciary. Proposed CMO No. 3 would shortcut that important process in a manner that is not consistent with Rule 23(g), disregards the significant differences between cases, and seeks to resolve these issues in future cases before the competing considerations can be appropriately evaluated and weighed by the Court. Stated differently, the considerations that make entry of such a CMO inappropriate for the Bearings Litigation may apply with equal or even greater force in future cases.

### It Would Be Unusual to Appoint the Same Co-Lead Counsel Structure for All Direct Purchaser Cases Arising From Wide-Ranging Investigations Into a Particular Industry.

It is quite common for the Department of Justice's Antitrust Division to bring a series of criminal cases involving multiple products within a particular industry or sector within an overlapping time frame. This often results because documents or witnesses from one investigation produce leads for antitrust abuses in other related product markets. For example, within the past decade, the Department of Justice has prosecuted three separate conspiracies involving transoceanic transportation and freight services, three separate conspiracies involving tire manufacturing inputs, and four separate conspiracies involving computer memory and

displays. Each of those conspiracies spawned separate civil class action cases. None of the direct purchaser class actions that resulted from those investigations were led by identical teams of lead counsel.[3] In certain cases where there were overlapping defendants, courts have appointed co-lead counsel teams with some overlap, but none of the aforementioned civil class actions were led by the exact same team. Moreover, in no case have determinations of lead counsel been made before complaints were filed alleging the specific conspiracy in the relevant product market and the court could evaluate the Rule 23(g) factors in the context of the specific case presented.[4] Thus, in addition to its overbreadth, Proposed CMO No. 3 would mark a significant departure from standard practice.

---

[3] *See* Decision and Order, *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y. Nov. 15, 2006) (Dkt. No. 225); Order Appointing Interim Class Counsel, *In re International Air Transportation Surcharge Antitrust Litig.,* No. 06-cv-1793 (N.D. Cal. Dec. 18, 2006) (Dkt. No. 42); Order, *Precision Assocs. v. Panalpina World Transport (Holding) Ltd.,* No. 08-cv-42 (E.D.N.Y. June 3, 2009) (Dkt. No. 115) (all three orders appointing non-identical groups of lead counsel). *See also* Pretrial Order #1, *Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,* No. 03-md-1542 (D. Conn. Sept. 11, 2003) (Dkt. No. 17); Order, *In re Carbon Black Antitrust Litig.*, No. 03-cv-10191 (D. Mass. Apr. 15, 2005) (Dkt. No. 178); Motion for Order Authorizing Distribution of Settlement Funds, *In re Rubber Chemicals Antitrust Litig.,* No. 04-cv-1648 (N.D. Cal. Jan. 28, 2008)) (shows Plaintiffs' appointed Executive Committee structure) (all three cases with different appointed groups of lead counsel). *See also* Minute Entry, *In re Static Random Access Memory (SRAM) Antitrust Litig.,* No. 07-md-1819 (N.D. Cal. May 3, 2007) (Dkt. No 72); Pretrial Order No. 2, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* No. 02-cv-1486 (N.D. Cal. Sept. 20, 2005); Order Appointing Interim Lead Counsel, *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944 (N.D. Cal. May 9, 2008); Pretrial Order No. 3, *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07-md-1827 (N.D. Cal. July 13, 2007) (all four orders appointing different groups of lead counsel).

[4] There are two other relevant points of comparison. *In re: LIBOR-Based Financial Instruments Antitrust Litigation* involves banks' coordination and manipulation of LIBOR. In that case, despite a complete overlap of defendants within a single MDL, Judge Buchwald recently determined that purchasers of different affected products should have entirely separate counsel. Memorandum and Order, No. 11-md-2262 (S.D.N.Y. Nov. 29, 2011) (Dkt No. 33). *In re Urethanes Antitrust Litigation* is another case where different co-lead counsel have been named for different purchaser classes within the same multi-district litigation- one for polyester polyols and one polyether polyols. Practice and Procedure Order No. 3, No. 04-md-1616 (D. Kan. Aug. 31, 2005) (Dkt. No. 127).

**CONCLUSION**

For the foregoing reasons, the proposed CMO No. 3 should not be entered. A leadership structure is already in place in the Wire Harness Litigation. With respect to other cases, the leadership structure should be determined after interested parties have submitted a proposed leadership structure, and the Court has an opportunity to evaluate those submissions and determine the proper application of the Rule 23(g) factors to the case before the Court.

Dated: July 17, 2012

Respectfully submitted,

*/s/ M. John Dominguez*
M. John Dominguez
Cohen Milstein Sellers & Toll PLLC
3507 Kyoto Gardens Drive
Suite 200
Palm Beach Gardens, FL 33410
Tel: 561-578-6850
jdominguez@cohenmilstein.com

Kit A. Pierson
Brent W. Johnson
Meghan M. Boone
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave., NW
Suite 500 West
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699
kpierson@cohenmilstein.com
bjohnson@cohenmilstein.com
mboone@cohenmilstein.com

Solomon B. Cera
Gold Bennett Cera & Sidener LLP
595 Market Street
Suite 2300
San Francisco, CA 94105
Tel: 415-777-2230
Fax: 415-777-5189
scera@gbcslaw.com

Charlotte Croson
Bogas, Koncious, and Croson, P.C.
31700 Telegraph Road
Suite 160
Bingham Farms, MI 48025
Tel: 248-502-5000
Fax: 248-502-5001
ccroson@kbogaslaw.com

*Counsel for Plaintiff McGuire Bearing Company and the Proposed Class*

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on July 17, 2012 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

               <u>/s/ Manuel J. Dominguez</u>
               Cohen Milstein Sellers & Toll, PLLC
               3507 Kyoto Gardens Drive, Suite 200
               Palm Beach Gardens, FL 33410
               jdominguez@cohenmilstein.com