UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————————————————————————
                                              :
IN RE: AUTOMOTIVE PARTS          :
ANTITRUST LITIGATION             :        Master File No. 12-MD-02311
                                              :
—————————————————————————:
                                              :
PRODUCT(S):                            :
                                              :
WIRE HARNESS SYSTEMS         :
                                              :
—————————————————————————:
                                              :
THIS DOCUMENT RELATES TO:  :
                                              :
Direct Purchaser Actions             :
—————————————————————————:


RESPONSE IN FURTHER SUPPORT OF THE ENTRY OF PROPOSED
CASE MANAGEMENT ORDER NO. 3 BY DIRECT PURCHASER PLAINTIFFS
WHO HAVE FILED WIRE HARNESS PRODUCTS, INSTRUMENT PANEL
CLUSTER, HEATER CONTROL PANEL, OCCUPANT SAFETY PRODUCTS
AND BEARINGS ANTITRUST CASES


Kohn, Swift, & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios LLP; Spector Roseman Kodroff & Willis, P.C.; Freed Kanner London & Millen LLC; and Fink + Associates Law respectfully submit their Response in Further Support of the Entry of Proposed Case Management Order No. 3 ("CMO No. 3").  The direct purchaser bearings cases should be included with the indirect purchaser bearings cases in MDL No. 2311, and subject to proposed CMO No. 3 if it were to be entered by the Court.

**TABLE OF CONTENTS**

I. INTRODUCTORY STATEMENT ........................................................................1

II. BACKGROUND ...............................................................................................1

III. ARGUMENT .................................................................................................5

    A.     The Bearings Cases Should Be Part of MDL No. 2311 .........................................5

    B.     Kohn Swift, Preti Flaherty, Spector Roseman and Freed Kanner Should Be Appointed Lead Counsel For MDL No. 2311, and Fink + Associates Should Be Appointed Liaison Counsel ...............................................................6

    C.     The Cases Cited By McGuire's Counsel Do Not Support A Separate Leadership Structure For Cases Involving New Products In MDL No. 2311 .........................................................................................7

IV. CONCLUSION ...............................................................................................9

## STATEMENT OF QUESTIONS PRESENTED

1.      Should the direct purchaser bearings cases be included with the indirect purchaser cases

in MDL No. 2311, and subject to proposed CMO No. 3, if it were to be entered by the Court?

> Interim Lead and Liason Counsel for Direct
> Purchaser Plaintiffs in MDL No. 2311 Answer:      Yes.


2.      Should Kohn Swift, Preti Flaherty, Spector Roseman and Freed Kanner serve as Lead

Counsel and Fink + Associates serve as Liaison Counsel of the direct purchaser bearings cases in

MDL No. 2311.

> Interim Lead and Liason Counsel for Direct
> Purchaser Plaintiffs in MDL No. 2311 Answer:      Yes

# I. INTRODUCTORY STATEMENT

The undersigned firms have filed cases in this District on behalf of direct purchasers of wire harness products,[1] instrument panel clusters,[2] heater control panels,[3] occupant safety products[4] and bearings.[5] The court previously entered an order appointing Kohn, Swift, Preti, Flaherty, Spector Roseman, and Freed Kanner interim lead counsel, and Fink + Associates Law interim liaison counsel, for the wire harness cases (Doc. No. 60). The Court also appointed lead and liaison counsel for the end-payor and automobile dealer indirect purchasers in the wire harness cases (Doc. Nos. 64, 65). As set forth in the Joint Memorandum of Plaintiffs and Defendants Regarding Submission of Proposed Orders Reflecting June 15, 2012 Status Conference Rulings filed on June 29, 2012 (Doc. No.180 in proposed CMO No. 3), and herein, plaintiffs' position is that the entry of proposed CMO No. 3 regarding leadership in MDL No. 2311, *In re Automotive Parts Antitrust Litigation*, is appropriate and in accordance with this Court's rulings on the record at the June 15, 2012 hearing in MDL No. 2311. Those rulings were based upon, and reinforce the structure that the Judicial Panel on Multidistrict Litigation (the "Panel") and this Court have established for the just, speedy and inexpensive resolution of the cases in MDL No. 2311.

# II. BACKGROUND

In September 2011, the Department of Justice announced that Furukawa Electric Co., Ltd. had agreed to plead guilty to conspiring to rig bids for and to fix, stabilize and maintain the prices of wire harnesses and related products sold to customers in the United States and

---

[1] Consolidated Amended Class Action Complaint, Master File No.12-md-02311 (E.D. Mich.).
[2] *ACAP, LLC v. Yazaki Corporation, et al.* (E.D. Mich.).
[3] *Tiffin Motor Homes Inc. v. Denso Corporation, et al.* (E.D. Mich.).
[4] *Findlay Industries, Inc. v. Autoliv, Inc.* (E.D. Mich.).
[5] *SPS Spindle Parts and Service, LLC v. JTEKT Corporation, et al.* (E.D. Mich.).

elsewhere.   Civil cases were then filed against Furukawa and other wire harness products manufacturers by direct and indirect purchasers.   Motions to centralize the cases were filed with the Panel.   Creation of an MDL proceeding in the Eastern District of Michigan was advocated by most of the parties in the cases.   The Panel agreed, and centralized the direct and indirect purchaser wire harness products cases in this District, and selected Your Honor as the MDL Judge. *In re Automotive Wire Harness Sys. Antitrust Litig.*, MDL No. 2311, 2012 WL 432596 (J.P.M.L. Feb. 7, 2012).

After the Court appointed lead and liaison counsel in the wire harness products cases, the government automotive parts antitrust investigation yielded guilty pleas related to other products -  instrument panel clusters, fuel senders, and heater control panels - which led to additional civil cases being filed by direct and indirect purchasers of these products.   Motions to create new MDL dockets for each of these parts were filed with the Panel.

On May 31, 2012, the Panel held a hearing on the motions to create separate multidistrict dockets for the instrument panel cluster, fuel sender, and heater control panel cases.   The Panel agreed that the cases involving these three new products should be transferred to Your Honor, but declined the request to create three new MDLs.   JPML Transfer Order, June 12, 2012 at 2, attached hereto as Exhibit A.

The Panel, while recognizing that it could create three new MDLs, decided that the better approach was to include all actions in MDL No. 2311.   The Panel concluded that "including all actions in MDL No. 2311 will lead to the most efficient handling of these cases."  *Id.*

The Panel's reluctance to create multiple MDL dockets was not overcome by arguments "that the cases in each MDL involve a separate alleged conspiracy that will involve facts, time frames, parties and witnesses specific to that conspiracy."  *Id.*[6]

Part of what drove the Panel's decision is that the government is investigating bid rigging, price fixing and other anticompetitive conduct in the automotive parts industry.  The final paragraph of the Panel's June 12, 2012 Transfer Order renaming the "*Wire Harness Systems Antitrust Litigation*" as "*In re Automotive Parts Antitrust Litigation*" clearly expresses the Panel's intent to not only include wire harness products, instrument panel cluster, fuel sender, and heater control panel cases under an umbrella automotive parts antitrust litigation MDL, but also any future cases involving automotive parts, even if such cases involve different parts and parties.  As set forth below, the bearings (and occupant safety products)[7] cases should be incorporated into MDL No. 2311, *In re Automotive Parts Antitrust Litigation.*

---

[6] McGuire's counsel here make the same argument in opposing the entry of proposed CMO No. 3.

[7] Direct and indirect purchasers have asserted claims against defendants that make occupant safety products - airbags, seat belts, steering wheels or steering systems and safety electronic systems.  These cases were filed in the Eastern District of Michigan and all of them should be before Your Honor as part of MDL No. 2311.  There has been no motion filed to create a new MDL in connection with these products.

The occupant safety products cases name Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Japan Ltd., Takata Corporation, TK Holdings, Inc., Tokai Rika Co., Ltd., TRAM Inc. d/b/a Tokai Rika U.S.A. Inc. and TRW Automotive Holdings Corporation.  Only Tokai Rika U.S.A. Inc. and TRAM Inc. d/b/a Tokai Rika U.S.A. Inc. are named in the wire harness products cases in *In re Automotive Parts Antitrust Litigation*, MDL No. 2311.  These cases allege an antitrust conspiracy involving occupant safety products among, except for two related defendants, companies that have not been named as defendants in any other cases.  Even so, it is unlikely that anyone would claim that these cases should not be included as part of MDL No. 2311, as the other cases have been.

On June 12, 2012 the Court issued its Agenda for the Second Status Conference under the caption *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. The first two items of business on the Agenda were the Panel's June 12, 2012 Order and the relationship with other automotive parts price fixing cases, including bearings and occupant safety products, which cases were then before different Judges in the Eastern District of Michigan.

On June 15, 2012 the Court held a hearing in *In re Automotive Parts Antitrust Litigation* MDL No. 2311, during which there was a discussion not only about the wire harness cases, but also the inclusion of other cases and leadership in MDL No. 2311. On June 29, 2012, the parties filed their Joint Memorandum of Plaintiffs and Defendants Regarding Submission of Proposed Orders Reflecting June 15, 2012 Status Conference Rulings (Doc. No. 180). In addition to providing the Court with an agreed upon Case Management Order No. 2, initial discovery plan and protective order for the wire harness cases, plaintiffs' counsel requested entry of proposed CMO No. 3 regarding leadership in MDL No. 2311, in *In re Automotive Parts Antitrust Litigation.*

After proposed CMO No. 3 had been filed for the Court's consideration, McGuire Bearing Company filed a direct purchaser complaint in this District. The case is currently before Judge Cook. The next day counsel for McGuire filed a motion for leave to file an opposition to proposed CMO No. 3, which motion the undersigned did not oppose. On July 16, 2012, the Court granted the motion for leave to file an objection to proposed CMO No. 3, set a response date of July 27, 2012, and scheduled a hearing for August 2, 2012 (Doc. No. 244)[8]. The objection was filed on July 17, 2012 (Doc. No. 250).

---

[8] The hearing has since been rescheduled to August 1, 2012.

## III. ARGUMENT

### A.  The Bearings Cases Should Be Part of MDL No. 2311

All the bearings cases should be part of MDL No. 2311.  As McGuire's counsel point out, there are already indirect purchaser bearings cases before the Court in MDL No. 2311.[9]  The indirect purchaser bearings cases involve automotive bearings.  The automotive industry is the principal user of tapered roller bearings and ball bearings, which are the two most prevalent types of bearings.  While there are non-automotive bearings, because the automobile industry uses more of the most widely sold types of bearings than any other, it makes sense that the direct bearings cases should be treated as part of MDL No. 2311 along with the indirect bearings cases.

McGuire's counsel take inconsistent positions on the issue of whether the bearings cases should be part of MDL No. 2311.  On the one hand, while they could have filed their bearings case in another district and had their assertion that it should not be considered part of MDL No. 2311 evaluated by the Panel, they filed it in the Eastern District of Michigan.  Having done so, they state in their opposition that they anticipate that their case will be assigned to this Court as part of MDL No. 2311.

On the other hand, they argue that more bearings are used in non-transportation applications than in transportation applications.  It appears that McGuire's counsel are advocating for separate treatment of the bearings cases outside the framework of MDL No. 2311, presumably because they believe it will enhance their odds of being appointed lead counsel.  But their proposal should be rejected for the reasons set forth above.  The most efficient way to conduct the bearings litigation is to handle it as part of MDL No. 2311, with the undersigned as interim lead and liaison counsel for the direct bearings purchasers.

---

[9] As of July 27, 2012, all nine indirect bearings cases are before Your Honor.

**B. Kohn Swift, Preti Flaherty, Spector Roseman and Freed Kanner Should Be Appointed Lead Counsel For MDL No. 2311, and Fink + Associates Should Be Appointed Liaison Counsel**

The firms the Court appointed interim lead and liaison counsel for the direct purchasers of wire harness products in the MDL formerly known as *In re Wire Harness Systems Antitrust Litigation* have filed a bearings case. We earlier provided the Court information to evaluate our ability to serve as interim lead and liaison counsel. The earlier submissions to the Court set forth why Kohn, Swift, Preti Flaherty, Freed Kanner, Spector Roseman and Fink + Associates satisfied the requirements of Fed.R.Civ. 23(g): (1) they are experienced in handling complex antitrust class actions; (2) they are well versed in antitrust and class action law; and (3) they are committed to expending the necessary resources. They have filed direct purchaser wire harness products, instrument panel cluster, heater control units, occupant safety products and bearings cases.

The Court has also been able to observe the undersigned in connection with the progress of the litigation to date. We have worked closely with interim lead and liaison counsel for the indirect purchaser end-payors and automobile dealers so that all submissions to the Court have been on behalf of all direct and indirect plaintiffs' counsel. This excellent working relationship would no doubt continue with respect to additional cases in MDL No. 2311. Further, we have negotiated various orders and an initial discovery plan with defense counsel, and filed a wire harness products Consolidated Amended Complaint.

McGuire's counsel raise the specter of a situation where lead and liaison counsel have not filed a direct case involving an automotive part, but other attorneys have, as a reason not to enter proposed CMO No. 3. But that situation does not now exist. They claim it would be unfair to those as yet unknown (and possibly non-existent) counsel. But the undersigned have no

intention of excluding any attorneys who have filed a complaint from participating in MDL No. 2311, and will endeavor to work with any such attorneys. Indeed, two of the firms that filed the McGuire complaint and have opposed the entry of proposed CMO No. 3, Cohen Milstein and Gold Bennett, are listed on the wire harness products Consolidated Amended Complaint. A representative of Cohen Milstein attended the Court's March 15, 2012 initial conference. Both firms are on the ECF service list.

It makes sense for the Court to maintain the leadership structure that it currently has in place going forward in MDL No. 2311. McGuire's counsel would prefer that competing Rule 23(g) motions be filed whenever a new automotive product becomes the subject of a lawsuit. That is, however, not necessary in this case, where lead and liaison counsel can be appointed for MDL No. 2311 to oversee the operation of the overall MDL. Such appointment will continue to serve the putative classes through the efficiencies gained with the continuity achieved with this leadership structure.

As set forth in Joint Memorandum (Doc. No. 180) at 2-3, the undersigned (as well as counsel for the end-payor and automobile dealer indirect purchasers) believe that proposed CMO No. 3 in accordance with the Court's rulings regarding leadership in MDL No. 2311 made on the record at the June 15, 2012 hearing. The Court's rulings are the practical embodiment of the framework for the automotive parts antitrust MDL established by the Court and the Panel.

### C. The Cases Cited By McGuire's Counsel Do Not Support A Separate Leadership Structure For Cases Involving New Products In MDL No. 2311

McGuire's counsel also claim that entry of proposed CMO No. 3 by the Court would be an unprecedented deviation from "standard practice," which they assert is to appoint different lead counsel for every case. But that conclusion is supported neither by the cases they cite, nor

logic. The reality is that the overwhelming majority of those cases were established as separate MDLs before different judges.[10]

McGuire's counsel's strained comparison of MDL No. 2311 and the government investigation into the automotive parts industry to some other cases and government investigations misses the mark. The comparison is inapposite because, in almost all of the cases upon which they rely, the Panel created separate and distinct MDLs before different courts with different judges for each case.[11] That is not what happened here, where the Panel has specifically rejected that approach.

---

[10] *In re LIBOR-Based Financial Instruments Antitrust Litig.* does not support McGuire's counsel's position. The basis for appointment of two sets of counsel there was a conflict between different classes of purchasers. In their memorandum McGuire's counsel state they are unaware of any conflicts here.

[11] McGuire's counsel associate *In re International Air Transportation Surcharge Antitrust Litig.,* Case No. 3:06-MD-01793 (N.D. Cal.)(Judge Breyer) with *In re Air Cargo Shipping Services Antitrust Litig.,* Case No. 1:06-MD-01775 (E.D.N.Y.)(Judge Gleeson). In these cases, the Panel created separate MDLs in different jurisdictions and different judges presided over each MDL. McGuire's counsel's citation to *Precision Assocs. v. Panalpina World Transport (Holding) Ltd.*, No. 08-cv-42 in relation to *Air Cargo* (in which McGuire's counsel formerly served as lead counsel for direct purchasers) as a comparison to MDL 2311 is misleading. *Precision Assocs.* was filed on behalf of purchasers of freight–forwarding services, a distinct class, separate and apart from the direct purchaser class in *Air Cargo*. This is unlike the situation in MDL 2311 in which McGuire's counsel seeks to represent the *same* class as the undersigned. McGuire similarly groups *Ethylene Propylene Diene Monomer* ("*EPDM*") *Antitrust Litig.*, Case No. 3:03-MD-01542 (D. Conn.) (Judge Stefan R. Underhill); *In re Rubber Chemicals Antitrust Litig.,* Case No. 3:04-MD-01648 (N.D. Cal.) (Judge Maxine Chesney); and *In re Carbon Black Antitrust Litig.,* Case No. 1:03-cv-10191 (D. Mass.) (Judge Douglas P. Woodlock) as related cases where different groups were appointed as lead counsel. Again, these were unrelated cases. *EPDM* and *Rubber Chemicals* were separate MDLs litigated in different jurisdictions with different judges. *Carbon Black* was not an MDL, but a consolidated action in the District of Massachusetts, unrelated to the other two cases. McGuire's counsel also cites four more separate MDLs, again arguing that these cases were related to one another. Although these cases were transferred by the Panel to the same District, they were four individual and separate MDLs with four separate judges. These cases are: *In re Static Random Access Memory (SRAM) Antitrust Litig.,* Case No. 4:07–MD-01819 (N.D. Cal.)(Judge Claudia Wilken); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* Case No. 4:02-MD-01486 (N.D. Cal.)(Judge Phyllis J. Hamilton); *In re Cathode Ray Tube (CRT) Antitrust Litig.,* Case No. 3:07-cv-059447,

When presented with the opportunity to create separate MDLs for automotive parts beyond automotive wire harness products, the Panel denied the motions for centralization (*In re Instrument Panel Clusters Antitrust Litigation*, *In re Heating Control Panels Antitrust Litigation*, and *In re Fuel Senders Antitrust Litigation*), and instead transferred these additional automotive product cases to this Court for coordinated or consolidated proceedings within MDL No. 2311. McGuire's counsel provide no reasoned basis why what they describe as "standard practice" is warranted in this case, since the Panel has explicitly rejected creating separate MDLs for different automotive parts.

## IV. CONCLUSION

Therefore, for the reasons set forth in the Joint Memorandum and herein, Kohn, Swift, Preti, Flaherty, Spector Roseman, Freed Kanner and Fink + Associates respectfully request that the Court overrule McGuire's counsel's objection and enter proposed CMO No. 3.


Dated: July 27, 2012                                   Respectfully submitted,

                                                       /s/ David H. Fink
                                                       David H. Fink (P28235)
                                                       Darryl Bressack (P67820)
                                                       FINK + ASSOCIATES LAW
                                                       100 West Long Lake Road, Suite 111
                                                       Bloomfield Hills, MI 48304
                                                       (248) 971-2500
                                                       dfink@finkandassociateslaw.com
                                                       dbressack@finkandassociateslaw.com

---

MDL #1917, (N.D. Cal.)(Judge Samuel Conti); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. 3:07-MD-01827 (N.D. Cal.)(Judge Susan Illston).

Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone:  (207) 791-3000
ghansel@preti.com
rweill@preti.com
jcarver@preti.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone:  (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Michael J. Freed
Steven A. Kanner
William H. London
Michael L. Silverman
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone:  (224) 632-4500
mfreed@fklmlaw.com
skanner@fklmlaw.com
blondon@fklmlaw.com
msilverman@fklmlaw.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

**FINK + ASSOCIATES LAW**

By:     /s/Darryl Bressack
David H. Fink (P28235)
Interim Liaison Counsel
100 West Long Lake Road, Ste. 111
Bloomfield Hills, MI  48304
(248) 971-2500/Fax: (248) 971-2600
dbressack@finkandassociateslaw.com