# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| PRODUCT(S): | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT |
| OCCUPANT SAFETY RESTRAINT SYSTEMS | |
| This Document Relates to: | <u>JURY TRIAL DEMANDED</u> |
| ALL END-PAYOR ACTIONS | |

1

# TABLE OF CONTENTS

**Page(s)**

I.      NATURE OF ACTION ....................................................................................................1

II.     JURISDICTION AND VENUE ......................................................................................3

III.    PARTIES      6

        A.      Plaintiffs...............................................................................................................6

    B.      The Takata Defendants .......................................................................................11

    C.      The Autoliv Defendants......................................................................................11

    D.      The Tokai Rika Defendants ................................................................................13

IV.     AGENTS AND CO-CONSPIRATORS .......................................................................13

V.      FACTUAL ALLEGATIONS ........................................................................................14

        A.      The Occupant Safety Restraint System Industry ...............................................14

        B.      Defendants Increased Prices for Occupant Safety Restraint
Systems

            Despite Steady Costs............................................................................................19

        C.      The Structure and Characteristics of the Occupant Safety Restraint
Systems  Market Render the Conspiracy More Plausible.....................................20

            1.      The Occupant Safety Restraint Systems Market Has High
Barriers to Entry.............................................................................................21

            2.      There is Inelasticity of Demand for Occupant Safety Restraint
Systems ...........................................................................................................22

            3.      The Market for Occupant Safety Restraint Systems Is Highly
Concentrated....................................................................................................22

            4.      Defendants had Ample Opportunities to Conspire .......................................23

        D.      Government Investigations ..................................................................................23

        E.      Guilty Plea ..........................................................................................................25

VI.     CLASS ACTION ALLEGATIONS ..............................................................................28

VII.    PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY ................32

VIII.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE ............................................36

i

IX.     STATUTE OF LIMITATIONS ..................................................................................36

        A.     The Statute of Limitations Did Not Begin to Run Because
            Plaintiffs Did Not and  Could Not Discover Their Claims ...................................36

        B.     Fraudulent Concealment Tolled the Statute of Limitations ..................................37


FIRST CLAIM FOR RELIEF
Violation of Section 1 of the Sherman Act
(on behalf of Plaintiffs and the Nationwide Class) .....................................................................39


SECOND CLAIM FOR RELIEF
Violation of State Antitrust Statutes
(on behalf of Plaintiffs and the Damages Class) .........................................................................41

THIRD CLAIM FOR RELIEF ......................................................................................................65
Violation of State Consumer Protection Statutes
(on behalf of Plaintiffs and the Damages Class) .........................................................................65

FOURTH CLAIM FOR RELIEF
Unjust Enrichment
(on behalf of Plaintiffs and the Damages Class) .........................................................................84


PRAYER FOR RELIEF ...............................................................................................................85


JURY DEMAND      84

Plaintiffs Tom Halverson, Stephanie Petras, Rebecca Lynn Morrow, Erica Shoaf, Melissa Barron, Meetesh Shah, Michael Tracy, Jennifer Chase, Darrel Senior, James Marean, Ron Blau, Roger Olson, Susan Olson, Antonio Mercado, Nilsa Mercado, Darcy Sherman, David Bernstein, Ellis Winton McInnis, Thomas Wilson, Lauren Primos, Robert Klinger, Jessica DeCastro, Lori Curtis, Virginia Pueringer, Nathan Croom, Richard Stoehr, Edward Muscara, Michael Wick, Tenisha Burgos, Jason Grala, Howard Tepler, Rochelle Meyer, Eugene Friedman, Kathleen Tawney, Melinda Harr, Curtis Harr, Cindy Prince, Paul Gustafson, France Gammell-Roach, William Dale Picotte, Becky Bergeson, Jesse Powell, Arthur Stuckey, Janne Rice, Robert Rice, Stacy Nickell, Carol Ann Kashishian (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to them and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, and consumer protection laws, Plaintiffs demand a trial by jury, and allege as follows:

## I.     NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Defendants, suppliers of Occupant Safety Restraint Systems (defined below) globally and in the United States, for engaging in a massive conspiracy to unlawfully fix and artificially raise the prices of these products.  Defendants' conspiracy successfully targeted the long-struggling United States automotive industry, raising prices for car manufacturers and consumers alike.

2.      Plaintiffs bring this action on behalf of a proposed class of consumers who purchased or leased new motor vehicles containing Occupant Safety Restraint Systems or

1

replacement Occupant Safety Restraint Systems during the period from and including March 2006 through such time as the anticompetitive effects of Defendants' conduct ceased (the "Class Period").

3.      "Occupant Safety Restraint Systems" are generally comprised of the parts in a motor vehicle that protect drivers and passengers from bodily harm in the event of an accident. Occupant Safety Restraint Systems include seat belts, airbags, steering wheels or steering systems, and safety electronic systems.

4.      The Autoliv Defendants, Takata Defendants, Tokai Rika Defendants, and TRW (all as defined below, and collectively "Defendants") manufacture, market, and sell Occupant Safety Restraint Systems throughout the United States.  The manufacture and sale of Occupant Safety Restraint Systems is a multi-billion dollar industry.

5.      Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to inflate, fix, raise, maintain, or artificially stabilize prices of Occupant Safety Restraint Systems.

6.      Competition authorities in the United States and the European Union have been investigating a conspiracy in the market for Occupant Safety Restraint Systems since at least February 2011.  As part of its criminal investigation, the United States Department of Justice ("DOJ") is seeking information about anticompetitive conduct in the market for Occupant Safety Restraint Systems, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in at least some of the Defendants' offices.  The European Commission Competition Authority ("EC") has also conducted investigations at the European offices of several of the Defendants.

7.      As hereafter more fully alleged, Defendant Autoliv, Inc. has agreed to plead guilty and pay a $14.5 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as March 2006 and continuing until at least February 2011.  The combination and conspiracy engaged in by Defendant Autoliv, Inc. and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

8.      As part of its plea agreement, Defendant Autoliv, Inc. has agreed to assist the DOJ in its ongoing criminal investigation into the automotive parts industry.

9.      As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for Occupant Safety Restraint Systems during the Class Period and have thereby suffered antitrust injury to their business or property.

## II.        JURISDICTION AND VENUE

10.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).   Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages and secure other relief against Defendants for violation of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

11.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that:  (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

12.     Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

13.     This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia*: (a) transacted business in the United States, including in this district; (b) directly or indirectly sold or marketed substantial quantities of Occupant Safety Restraint Systems throughout the United States, including in this district; (c) had substantial aggregate contacts with the United States as a whole, including in this district; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this

district.  Defendants also conduct business throughout the United States, including in this district, and they have purposefully availed themselves of the laws of the United States.

14.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

15.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

16.     Occupant Safety Restraint Systems manufactured abroad by Defendants and sold for use in automobiles that were either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce.  To the extent any Occupant Safety Restraint Systems are purchased in the United States, and such Occupant Safety Restraint Systems do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce.  The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

17.     By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes.  Defendants, directly and through their agents, engaged in activities affecting all states,

to fix or inflate prices of Occupant Safety Restraint Systems, which conspiracy unreasonably restrained trade and adversely affected the market for Occupant Safety Restraint Systems.

18.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Occupant Safety Restraint Systems for personal use, including Plaintiffs and members of the Classes.

## III.     PARTIES

### A.     Plaintiffs

19.     Plaintiff Tom Halverson is an Arizona resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

20.     Plaintiff Stephanie Petras is an Arizona resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendnts.

21.     Plaintiff Brad Zirulnik is a New York resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

22.     Plaintiff Rebecca Lynn Morrow is an Arizona resident who purchased Occupant Safety Restraint Systems indirectly from one or more Defendants.

23.     Plaintiff Erica Shoaf is an Arizona resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

24.     Plaintiff Melissa Barron is a California resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

25.      Plaintiff Meetesh Shah is a California resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

26.      Plaintiff Michael Tracy is a Florida resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

27.      Plaintiff Jennifer Chase is an Iowa resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

28.      Plaintiff Darrel Senior is a Kansas resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

29.      Plaintiff James Marean is a Maine resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

30.      Plaintiff Ron Blau is a Massachusetts resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

31.      Plaintiff Roger Olson is a Michigan resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

32.      Plaintiff Susan Olson is a Michigan resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

33.      Plaintiff Antonio Mercado is a Michigan resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

34.      Plaintiff Nilsa Mercado is a Michigan resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

35.     Plaintiff Darcy Sherman is a Minnesota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

36.     Plaintiff David Bernstein is a Minnesota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

37.     Plaintiff Ellis Winton McInnis, IV is a Mississippi resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

38.     Plaintiff Thomas Wilson is a Mississippi resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

39.     Plaintiff Lauren Primos is a Mississippi resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

40.     Plaintiff Robert Klinger is a Missouri resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

41.     Plaintiff Jessica DeCastro is a Missouri resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

42.     Plaintiff Lori Curtis is a Missouri resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

43.     Plaintiff Virginia Pueringer is a Montana resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

44.     Plaintiff Nathan Croom is a Nebraska resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

45.     Plaintiff Richard Stoehr is a Nevada resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

46.     Plaintiff Edward Muscara is a New Hampshire resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

47.     Plaintiff Michael Wick is a New Mexico resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

48.     Plaintiff Tenisha Burgos is a New York resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

49.     Plaintiff Jason Grala is a New York resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

50.     Plaintiff Howard Tepler is a New York resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

51.     Plaintiff Rochelle Meyer is a New York resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

52.     Plaintiff Eugene Friedman is a New York resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

53.     Plaintiff Kathleen Tawney is a North Carolina resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

54.     Plaintiff Melinda Harr is a North Dakota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

55.      Plaintiff Cindy Prince is an Oregon resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

56.      Plaintiff Paul Gustafson is an Oregon resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

57.      Plaintiff France Gammell-Roach is a Rhode Island resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

58.      Plaintiff William Dale Picotte is a South Dakota resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

59.      Plaintiff Becky Bergeson is a Utah resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

60.      Plaintiff Jesse Powell is a Utah resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

61.      Plaintiff Arthur Stuckey is a Vermont resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

62.      Plaintiff Janne Rice is a West Virginia resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

63.      Plaintiff Robert Rice is a West Virginia resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

64.      Plaintiff Stacey Nickell is a West Virginia resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

65.     Plaintiff Carol Ann Kashishian is a Wisconsin resident who purchased an Occupant Safety Restraint System indirectly from one or more Defendants.

66.     TRW Automotive Holdings Corp. ("TRW") is a Delaware corporation with its principal place of business in Livonia, Michigan.  TRW—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

**B.     The Takata Defendants**

67.     Defendant Takata Corp. is a Japanese corporation.  Takata Corp.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

68.     Defendant TK Holdings, Inc. ("TK") is a Delaware corporation with its principal place of business in Auburn Hills, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent, Takata Corp.   TK manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent.

69.     Defendants Takata Corp. and TK shall collectively be referred to herein as the "Takata Defendants" or "Takata."

**C.     The Autoliv Defendants**

70.     Defendant Autoliv, Inc. is a Delaware corporation with its principal place of business in Stockholm, Sweden.  Autoliv, Inc.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

71.     Autoliv ASP, Inc. is an Indiana corporation with its principal place of business in Ogden, Utah.  It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc.  Autoliv ASP, Inc. manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent.

72.     Autoliv B.V. & Co. KG is a German corporation with its principal place of business in Elmshorn, Germany.  It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc.  Autoliv B.V. & Co. KG manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent.

73.     Autoliv Japan, Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan.  It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc.  Autoliv Japan, Ltd.  manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district,

during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent.

74.     Defendants Autoliv, Inc., Autoliv ASP, Inc., and Autoliv B.V. & Co. KG shall collectively be referred to herein as the "Autoliv Defendants" or "Autoliv."

**D.     The Tokai Rika Defendants**

75.     Defendant Tokai Rika Co., Ltd. is a Japanese company with its principal place of business in Toyota, Japan.  Defendant Tokai Rika Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period.

76.     Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. is a Michigan Corporation with its principal place of business in Plymouth, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent Tokai Rika Co., Ltd.  During the Class Period, Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including this district, during the Class Period.

77.     Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. shall collectively be referred to herein as the "Tokai Rika Defendants" or "Tokai Rika."

## IV.     AGENTS AND CO-CONSPIRATORS

78.     Each Defendant acted as the principal of or agent for other Defendants with respect to the acts, violations, and common course of conduct alleged.

13

79.     Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

80.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## V.     FACTUAL ALLEGATIONS

### A.     The Occupant Safety Restraint System Industry

81.     Occupant Safety Restraint Systems are generally comprised of the parts in an automotive vehicle that protect drivers and passengers from bodily harm.  Occupant Safety Restraint Systems include seat belts, air bags, steering wheels (or steering systems), and safety electronic systems.  See Figure 1.



**Figure 1.**

82.    Occupant Safety Restraint Systems are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They are also installed in cars to replace worn out, defective or damaged Occupant Safety Restraint Systems

83.    For new cars, the OEMs—mostly large automotive manufacturers such as Honda, Toyota, Volvo, and General Motors—purchase Occupant Safety Restraint Systems directly from Defendants.  Occupant Safety Restraint Systems may also be purchased by component manufacturers who then supply such systems to OEMs.  These component manufacturers are also called "Tier I Manufacturers" in the industry.  Tier I Manufacturers supply Occupant Safety Restraint Systems directly to an OEM.

84.    When purchasing Occupant Safety Restraint Systems and related products, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers.  Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for four to six years.  Typically, the bidding process begins approximately three years prior to the start of production of a new model.

85.    Defendants and their co-conspirators supplied Occupant Safety Restraint Systems to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere. Defendants and their co-conspirators manufactured Occupant Safety Restraint Systems (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) abroad for export to the United States and installation in vehicles manufactured and sold in the United

15

States, and (c) aboard for installation in vehicles manufactured abroad for export to and sale in the United States.

86.     Plaintiffs and members of the proposed Classes purchased Occupant Safety Restraint Systems indirectly from one or more of the Defendants.  By way of example, an owner of a vehicle may indirectly purchase an Occupant Safety Restraint System from Defendants as part of purchasing or leasing the new vehicle.   An owner of a vehicle may also indirectly purchase a replacement Occupant Safety Restraint System from Defendants when repairing a damaged vehicle or where the vehicle's Occupant Safety Restraint System is defective.

87.     According to Autoliv's 2011 Annual Report, the global market for Occupant Safety Restraint Systems in 2010 was $18.1 billion and the North American market for Occupant Safety Restraint Systems was $4.2 billion.

88.     The global Occupant Safety Restraint Systems market is dominated and controlled by large manufacturers, the top three of which are Defendants who control almost 75% of the market.  The Autoliv Defendants account for more than 33% of the global market for Occupant Safety Restraint Systems; as Autoliv states in its 2011 Annual Report, it is "the world's largest automotive safety supplier with sales to all the leading car manufacturers in the world."  TRW accounts for approximately 20% of the global market for Occupant Safety Restraint Systems.  The Takata Defendants account for approximately 20% of the Occupant Safety Restraint Systems global market.

89.     By virtue of their market shares, Defendants are the dominant manufacturers and suppliers of Occupant Safety Restraint Systems in the United States and the world.

90.     Airbags are a type of Occupant Safety Restraint System.  Airbags are occupant restraints designed to control the movement of an occupant inside a vehicle in the event of a collision.  An airbag consists of a light fabric air bag, an inflator, which through use of pressurized gas (typically generated by pyrotechnic materials), rapidly inflates the airbag upon deployment, and an initiator to initiate the deployment.  It may also include, depending on the requirements of the vehicle manufacturer, an injection molded plastic decorative cover or other devices associated with the airbag.   According to the National Highway Traffic Safety Administration, a typical new asirbag retailed for approximately $1,000 from a car dealer in 2011.

91.     In 2012, the total dollar-value of airbags sold in the U.S. reached $6.7 billion. (see Figure 2).



**Figure 2.**

92.     According to Autoliv's website, it manufactures more than one-third of the airbags sold in North America and according to its 2011 10-K, Autoliv manufactures over 40%

of the side airbags and almost 30% of the frontal airbags sold in the world.  TRW and Takata are also major manufacturers of airbags.

93.     Seatbelts are another type of Occupant Safety Restraint System.  Seatbelts are safety strap restraints designed to secure an occupant in position in a vehicle in the event of a collision.  A seatbelt includes belt webbing, a buckle, a retractor, and hardware for installation in a vehicle.  It may also include, depending on the requirements of the vehicle manufacturer, a height adjuster, a pretensioner, or other devices associated with the seatbelt.

94.     In 2012, the total dollar-value of seatbelts sold in the U.S. reached over $900 million. (see Figure 3).



**Figure 3.**

95.     According to Autoliv's website, it manufactures almost one-third of the seatbelts sold in North America, and according to its 2011 10-K, Autoliv manufactures 40% of the seatbelts sold in the world.  TRW and Takata are also major manufacturers of Seatbelts.

96.     Steering wheels are another type of Occupant Safety Restraint System.   Steering wheels consist of a die-cast armature (frame) covered by molded polyurethane.  Steering wheels are then finished with leather, wood trim, or plastic, and may include various electronic features and controls, depending on the requirements of a vehicle manufacturer.

97.     In 2012, the dollar-value for steering wheels and related components sold in the U.S. reached $2.24 billion.  (see Figure 4).



**Figure 4.**

98.     According to its website, Autoliv manufactures more than 15% of the steering wheels sold in North America, and in its 2011 10-K, Autoliv states that it manufactures almost 30% of the steering wheels sold in the world.  TRW and Takata are also major manufacturers of steering wheels.

**B.     Defendants Increased Prices for Occupant Safety Restraint Systems
         Despite Steady Costs**

99.     In a competitive market, falling material and labor costs would lead to decreased prices because each competitor would be afraid that other competitors would attempt to take advantage of their lower costs to lower their prices in order to capture market share.  The only economically rational action in such a situation is for each competitor to lower its own prices.

100.     In a market where competitors have engaged in a conspiracy to fix prices, however, competitors do not lower prices even when faced with steady or decreasing input costs. Such price decreases are unnecessary because the conspirators know that they will not lose sales to lower-priced competitors.

101.     The price of Occupant Safety Restraint Systems increased during the Class Period, while major input costs virtually remained the same.  In a competitive market, steady input costs should not have resulted in rising prices to Defendants' customers for Occupant Safety Restraint Systems.  Such anticompetitive price increases have resulted in Plaintiffs and members of the Classes paying supra-competitive prices.

**C.      The Structure and Characteristics of the Occupant Safety Restraint Systems Market Render the Conspiracy More Plausible**

102.     The structure and other characteristics of the Occupant Safety Restraint Systems market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market.  Specifically, the Occupant Safety Restraint Systems market: (1) has high barriers to entry; (2) has inelasticity of demand; (3) is highly concentrated; and (4) is rife with opportunities to conspire.

### 1.    The Occupant Safety Restraint Systems Market Has High Barriers to Entry

103.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supracompetitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely to enter the market.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

104.    There are substantial barriers that preclude, reduce, or make more difficult entry into the Occupant Safety Restraint Systems market.  A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

105.    In addition, OEMs cannot change Occupant Safety Restraint Systems suppliers randomly after they choose one because the OEMs design the features of their vehicles so that the Occupant Safety Restraint System it purchases for a vehicle is then integrated with the electronics, mechanics, thermal distribution and other features of the particular vehicle model.  Thus, the design must be synergized by Occupant Safety Restraint Systems manufacturers and OEMs.  It would be difficult for a new market entrant to do so.

106.    Research and development costs are also significant for Occupant Safety Restraint Systems, creating an additional barrier to entry.  Airbags are constantly researched for better deployment speeds, seatbelts are constantly researched for better functionality and quality, and steering wheels are constantly researched for better precision and rotation.

107.    Defendants also own several patents for Occupant Safety Restraint Systems.  For example, TRW owns airbag, steering wheel and seatbelt patents.  These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

### 2.    There is Inelasticity of Demand for Occupant Safety Restraint Systems

108.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

109.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

110.    Demand for Occupant Safety Restraint Systems is highly inelastic.  Demand for Occupant Safety Restraint Systems is inelastic because there are no close substitutes for these products.  In addition, customers must purchase Occupant Safety Restraint Systems as an essential part of a vehicle, even if the prices are kept at a supracompetitive level.

### 3.    The Market for Occupant Safety Restraint Systems Is Highly Concentrated

111.    A highly concentrated market is more susceptible to collusion and other anti-competitive practices.

112.     As discussed above, Defendants dominate the Occupant Safety Restraint Systems market.  Three of the Defendants control almost 75% of the global market.

### 4.     Defendants had Ample Opportunities to Conspire

113.     Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary for the operation and furtherance of the conspiracy.  In a June 6, 2012 press release, the DOJ explained that Defendant Autoliv and its co-conspirators met in secret and agreed to allocate the supply of various automotive parts.  According to the Autoliv information, Autoliv and its co-conspirators participated in meetings, conversations and communications to discuss and agree on the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems, and agreed, during meetings, conversations and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis.

## D.     <u>Government Investigations</u>

114.     A globally coordinated antitrust investigation is taking place in the United States, Europe, Canada and Japan, aimed at suppliers of automotive parts in general, and Occupant Safety Restraint Systems in particular.  The DOJ has confirmed that its auto parts investigation is the largest criminal investigation that the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the illegal conduct.  Almost $1 billion in criminal fines have already been levied against various automotive parts manufacturers.

115.     The probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the EC.  The EC and the FBI have executed surprise raids at the

European and U.S. offices of several auto parts manufacturers, including certain Defendants, as part of an investigation into anticompetitive conduct related to the manufacturing and sale of automotive parts.

116.    Defendants Autoliv, TRW, and Takata have admitted that they are cooperating with the antitrust investigators.  Autoliv, Inc. stated in its 2011 Annual Report that its subsidiary, Autoliv ASP, Inc., received a grand jury subpoena from the Antitrust Division of the United States Department of Justice on February 8, 2011.  "The subpoena requested documents and information as part of a long-running investigation into possible anticompetitive behavior among certain suppliers to the automotive vehicle industry, including Autoliv."  Autoliv, Inc.'s 2011 Annual Report also stated that, on June 7-9, 2011, representatives of the EC visited two facilities of Autoliv B.V. & Co. KG to gather information for a similar inquiry.

117.    TRW stated in its 2011 Annual Report that "in June 2011, European antitrust authorities visited certain of our Occupant Safety Systems business unit locations in Germany to gather information. We also received a subpoena related to the Antitrust Investigations in the United States from the U.S. Department of Justice."

118.    On February 23, 2010, investigators from the FBI raided the Plymouth, Michigan offices of Tokai Rika as part of a federal antitrust investigation.  Special Agent Sandra Berchtold, media coordinator for the FBI, stated that the affidavits containing facts supporting issuance of the search warrants were filed in federal court under seal.

119.    Takata Corp. stated in its 2011 Annual Report that TK Holdings, Inc., a U.S. subsidiary, "became the subject to an investigation conducted by the Federal Bureau of Investigation on February 8, 2011.  TK Holdings, Inc. is cooperating fully with the

investigation."  Alby Berman, vice-president of marketing and public relations for TK Holdings, Inc., said the subpoena "targeted safety system suppliers – seat belts, air bags, steering wheels and safety electronics – any communications with competitors, and specifically mentioned Tokai Rika" and that the subpoena targeted communications dating back to January 1, 2005.  Special Agent Berchtold confirmed that the FBI raided TK Holdings, Inc.'s Auburn, Michigan offices.

120.    The DOJ has stated that it is conducting an investigation of potential antitrust activity and coordinating its investigation with antitrust regulators in Europe.

121.    To obtain search warrants, the United States was legally required to have probable cause, accepted by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of executing the search warrant – that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence must have been examined and accepted by a magistrate.  That belief, which was recounted in sworn affidavits or testimony, must be grounded on reasonably trustworthy information.

**E.    Guilty Plea**

122.    Defendant Autoliv has pleaded guilty and agreed to pay a total of $14.5 million in criminal fines to a two-count criminal information for fixing the prices of Occupant Safety Restraint Systems.  Autoliv has admitted to conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as March

2006 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1. Among other things, Autoliv admitted to:

> (a)    During the relevant period from March 2006 to at least February 2011, the defendant was a manufacturer of seatbelts, employing more than 5,000 individuals, and was engaged in the sale of seatbelts in the United States and elsewhere.

> (b) During the relevant period, the defendant, through certain employees of its wholly-owned subsidiary, Autoliv Japan, Ltd., including a high-level employee of the subsidiary, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of seatbelts, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts sold to certain Japanese automobile manufacturers in the United States and elsewhere. In furtherance of the conspiracy, the defendant, through certain employees of that subsidiary, engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of seatbelts. During such meetings and conversations, agreements were reached to (a) allocate the supply of certain seatbelts sold to certain Japanese automobile manufacturers on a model-by-model basis; (b) rig bids quoted to certain Japanese automobile manufacturers for those seatbelts; and (c) fix, stabilize, and maintain the prices of those seatbelts, sold to certain Japanese automobile manufacturers in the United States and elsewhere.

> (c) Seatbelts sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of seatbelts, as well as payments for seatbelts, traveled in interstate and foreign commerce. The business activities of the

defendant and its co-conspirators in connection with the production and sale of seatbelts that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

123.     According to the Information filed, Autoliv and its co-conspirators carried out the conspiracy by:

(a)     participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems;

(b)     agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems;

(c)     agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis;

(d)     submitting bids and price quotations to certain automobile manufacturers in accordance with the agreements reached;

(e)     selling Occupant Safety Restraint Systems to certain automobile manufacturers at collusive and noncompetitive prices; and

(f)     accepting payment for Occupant Safety Restraint Systems sold to certain automobile manufacturers at collusive and noncompetitive prices.

124.    The plea agreement discussed herein is an outgrowth of the DOJ's ongoing international cartel investigation of price fixing and bid rigging in the auto parts industry.

125.    "By meeting in secret and agreeing to allocate the supply of various automotive parts, the conspirators colluded to rip off automotive manufacturers in the United States and abroad," said Scott D. Hammond, Deputy Assistant Attorney General of the Antitrust Division's criminal enforcement program in a June 6, 2012 press release announcing the Autoliv guilty plea agreement.  "These conspiracies eliminated competition and resulted in inflated prices to automotive manufacturers for parts in cars sold to U.S. consumers."

## VI.        CLASS ACTION ALLEGATIONS

126.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities that indirectly purchased or leased in the United States, during the Class Period, Occupant Safety Restraint Systems, for personal use and not for resale, including the purchase of Occupant Safety Restraint Systems as a stand-alone replacement product or as a component of a new motor vehicle purchased or leased from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.

127.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the antitrust, unfair competition, consumer protection, and unjust enrichment laws of the states

whose laws are identified below ("Plaintiffs' States").  These claims are brought by Plaintiffs on behalf of themselves and persons and entities in Plaintiffs' States as follows (the "Damages Class"):

> All persons and entities that indirectly purchased or leased in the Plaintiffs' States, during the Class Period, Occupant Safety Restraint Systems, for personal use and not for resale, including the purchase of Occupant Safety Restraint Systems as a stand-alone replacement product or as a component of a new motor vehicle purchased or leased from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.

128.    The Nationwide Class and the Damages Class are referred to herein as the "Classes."  Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Occupant Safety Restraint Systems directly or for resale.

129.    While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

130.    Common questions of law and fact exist as to all members of the Classes.  This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

(a)     Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Occupant Safety Restraint Systems sold in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)     Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law,  as alleged in the Second and Third Claims for Relief;

(f)     Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)     The effect of the alleged conspiracy on the prices of Occupant Safety Restraint Systems sold in the United States during the Class Period;

30

(i)      Whether any of the Plaintiffs knew, or had any reason to know, of the conspiracy engaged in by Defendants;

(j)      Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the members of the Classes;

(k)      The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)      The appropriate class-wide measure of damages for the Damages Class.

131.   Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Occupant Safety Restraint Systems purchased indirectly from Defendants or their co-conspirators.

132.   Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

133.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

134.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

135.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VII.        **PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**

136.    Defendants' price-fixing conspiracy had the following effects, among others:

(a)    Price competition has been restrained or eliminated with respect to Occupant Safety Restraint Systems;

(b)    The prices of Occupant Safety Restraint Systems have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

(c)    Indirect purchasers of Occupant Safety Restraint Systems have been deprived of free and open competition.

137.    During the Class Period, Plaintiffs and the members of the Classes paid supra-competitive prices for Occupant Safety Restraint Systems.  These inflated prices have been passed on to them by OEMs and dealers.  Those overcharges have unjustly enriched defendants.

138.    The markets for Occupant Safety Restraint Systems and the market for cars are inextricably linked and intertwined because the market for Occupant Safety Restraint Systems exists to serve the vehicle market.  Without the vehicles, the Occupant Safety Restraint Systems have little to no value because they have no independent utility.  Indeed, the demand for vehicles creates the demand for Occupant Safety Restraint Systems.

139.    Occupant Safety Restraint Systems are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle.  As a result, Occupant Safety Restraint Systems follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Occupant Safety Restraint Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

140.    Just as Occupant Safety Restraint Systems can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Occupant Safety Restraint Systems affect prices paid by indirect purchasers of new motor vehicles containing Occupant Safety Restraint Systems and of Occupant Safety Restraint Systems purchased for repair purposes.

141.    While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces.  The OEM and dealer markets for new motor vehicles are subject to vigorous price competition.  The OEMs and dealers have thin net margins, and are therefore at the mercy of their component costs, such that increases in the price of components such as Occupant Safety Restraint Systems lead to corresponding increases in prices for new motor

vehicles and replacement parts at the OEM and dealer levels. When downstream distribution markets are highly competitive, as they are in the case of new motor vehicles containing Occupant Safety Restraint Systems as components, overcharges are passed through to ultimate consumers, such as the indirect-purchaser plaintiffs and class members.

142. Hence, the inflated prices of Occupant Safety Restraint Systems both in new motor vehicles and purchased for repair resulting from defendants' bid rigging and price-fixing conspiracy have been passed on to plaintiffs and the other class members by OEMs and dealers.

143. The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."

144. As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire

overcharge will be passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets.  This general phenomenon of cost pass through is well established in antitrust laws and economics as well.

145.     The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of Occupant Safety Restraint Systems and, as a direct and foreseeable result, the price of new motor vehicles containing Occupant Safety Restraint Systems and the price of Occupant Safety Restraint Systems purchased for repair purposes.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.  Thus, it is possible to isolate and identify only the impact of an increase in the price of Occupant Safety Restraint Systems on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time.  A regression model can explain how variation in the price of Occupant Safety Restraint Systems affects changes in the price of new motor vehicles. In such models, the price of Occupant Safety Restraint Systems would be treated as an independent or explanatory variable.  The model can isolate how changes in the price of Occupant Safety Restraint Systems impact the price of new motor vehicles containing Occupant Safety Restraint Systems while controlling for the impact of other price-determining factors.

146.    The precise amount of the overcharge impacting the prices of new motor vehicles containing Occupant Safety Restraint Systems can be measured and quantified.  Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed-through the chain of distribution.  Thus, the economic harm to Plaintiffs and the class members can be quantified.

147.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Occupant Safety Restraint Systems than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## VIII.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

**A.    The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims**

148.    Plaintiffs repeat and reallege the allegations set forth above.

149.    Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until the DOJ publicly announced Autoliv Inc.'s agreement to a guilty plea on June 6, 2012.

150.     Plaintiffs and the members of the Classes are consumers who purchased or leased automobiles or purchased Occupant Safety Restraint Systems to replace or repair damaged or defective Occupant Safety Restraint Systems in their automobiles. They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the June 6, 2012 public DOJ announcement of Autoliv, Inc.'s agreement to plead guilty.

151.     No information in the public domain was available to the Plaintiffs and the members of the Classes prior to the June 6, 2012 public announcement of Autoliv, Inc.'s agreement to plead guilty that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to price-fix and rig bids for Occupant Safety Restraint Systems.  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMS or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

152.     For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

**B.     Fraudulent Concealment Tolled the Statute of Limitations**

153.     In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes.  Plaintiffs and the members of the Classes did not know and could not have known of the existence of the conspiracy and unlawful combination alleged herein until June 2012 at the earliest, the time of

the first public announcement of a DOJ plea agreement to the price-fixing of Occupant Safety Restraint Systems.

154.    Before that time, Plaintiffs and members of the Classes were unaware of Defendants' unlawful conduct, and did not know before then that that they were paying supracompetitive prices for Occupant Safety Restraint Systems throughout the United States during the Class Period.  No information, actual or constructive, was ever made available to Plaintiffs and the members of the Classes that even hinted to Plaintiffs that they were being injured by Defendants' unlawful conduct.

155.    The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

156.    By its very nature, Defendants' anticompetitive conspiracy and unlawful combinations were inherently self-concealing.  Occupant Safety Restraint Systems are not exempt from antitrust regulation and, thus, Plaintiffs and the members of the Classes reasonably considered it to be a competitive industry.  Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Occupant Safety Restraint Systems' prices before June 6, 2012.

157.    Plaintiffs and the members of the Classes could not have discovered the alleged combination or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their conduct.

158.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and the members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until February 2011, when reports of the investigations into anticompetitive conduct concerning Occupant Safety Restraint Systems were first publicly disseminated.

159.     For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until February 2011.

### FIRST CLAIM FOR RELIEF
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiffs and the Nationwide Class)**

160.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

161.     Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

162.     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

163.     At least as early as March 2006, and continuing through the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to

artificially fix, raise, stabilize, and control prices for Occupant Safety Restraint Systems, thereby creating anticompetitive effects.

164.    The anticompetitive acts were intentionally directed at the United States market for Occupant Safety Restraint Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Occupant Safety Restraint Systems throughout the United States.

165.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Occupant Safety Restraint Systems.

166.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Occupant Safety Restraint Systems have been harmed by being forced to pay inflated, supracompetitive prices for Occupant Safety Restraint Systems.

167.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

168.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the United States;

(b)     Prices for Occupant Safety Restraint Systems sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, noncompetitive levels throughout the United States; and

(c)     Plaintiffs and members of the Nationwide Class who purchased Occupant Safety Restraint Systems indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

169.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Occupant Safety Restraint Systems purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

170.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

171.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**SECOND CLAIM FOR RELIEF**
**Violation of State Antitrust Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

172.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

173.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Occupant Safety Restraint Systems in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

174. The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Occupant Safety Restraint Systems and to allocate customers for Occupant Safety Restraint Systems in the United States.

175. In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a) participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Occupant Safety Restraint Systems at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Occupant Safety Restraint Systems sold in the United States;

(b) allocating customers and markets for Occupant Safety Restraint Systems in the United States in furtherance of their agreements; and

(c) participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

176. Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Occupant Safety Restraint Systems.

177. Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

178.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

179.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*.

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Occupant Safety Restraint Systems at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Occupant Safety Restraint Systems.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following:  (1) Fixing, raising, stabilizing, and pegging the price of Occupant Safety Restraint Systems; and (2) Allocating among themselves the production of Occupant Safety Restraint Systems.

(d)     The combination and conspiracy alleged herein has had, inter alia, the following effects:  (1) Price competition in the sale of Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Occupant Safety Restraint Systems sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Occupant Safety Restraint Systems

44

directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Occupant Safety Restraint Systems than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

180.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

181.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

46

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*.

182.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

183.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Maine; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

184.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Massachusetts Antitrust Act, Mass. Gen. Laws Ann. 93 §§ 1, *et seq.*

48

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mass. Gen. Laws Ann. 93 §§ 1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mass. Gen. Laws Ann. 93 §§ 1, *et seq.*

185.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and

49

members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)      As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

186.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

187.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

51

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

188.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

189.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

190.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

191.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

54

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

192.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and

55

members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems when they purchased vehicles containing Occupant Safety Restraint Systems, or purchased products that were otherwise of lower quality, than would have been absent the conspirators illegal acts, or were unable to purchase products that they would have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*.  The conduct set forth above is a per se violation of the Act.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

193.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs

and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

194.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)      During the Class Period, defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

195.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

196.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

197.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

60

198.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Utah; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)    During the Class Period, defendants' illegal conduct had a substantial effect on Utah commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq*.

199.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

200.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and

members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

201.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

202.     Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for Occupant Safety Restraint Systems than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

203.     In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of members of the Plaintiffs and the members of the Damages Class.

204.     Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**

**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

205.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

allegation set forth in the preceding paragraphs of this Complaint.

206.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

fraudulent acts or practices in violation of the state consumer protection and unfair competition

statutes listed below.

207.     Defendants have engaged in unfair competition or unfair, unconscionable,

deceptive or fraudulent acts or practices in violation of California Business and Professions Code

§ 17200, *et seq*.

(a)     During the Class Period, defendants marketed, sold, or distributed

Occupant Safety Restraint Systems in California, and committed and continue to commit acts of

unfair competition, as defined by Sections 17200, *et seq.* of the California Business and

Professions Code, by engaging in the acts and practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the

California Business and Professions Code, to obtain restitution from these defendants for acts, as

alleged herein, that violated Section 17200 of the California Business and Professions Code,

commonly known as the Unfair Competition Law.

(c)     The Defendants' conduct as alleged herein violated Section 17200.  The

acts, omissions, misrepresentations, practices and non-disclosures of defendants, as alleged

herein, constituted a common, continuous, and continuing course of conduct of unfair

competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the

meaning of California Business and Professions Code, Section 17200, et seq., including, but not

limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above;

(2) the violations of Section 16720, et seq., of the California Business and Professions Code, set

forth above;

   (d) Defendants' acts, omissions, misrepresentations, practices, an non-

disclosures, as described above, whether or not in violation of Section 16720, *et seq*., of the

California Business and Professions Code, and whether or not concerted or independent acts, are

otherwise unfair, unconscionable, unlawful or fraudulent;

   (e) Defendants' acts or practices are unfair to consumers of  Occupant Safety

Restraint Systems (or vehicles containing them) in the State of California within the meaning of

Section 17200, California Business and Professions Code; and

   (f) Defendants' acts and practices are fraudulent or deceptive within the

meaning of Section 17200 of the California Business and Professions Code.

   (g) Plaintiffs and members of the Damages Class are entitled to full restitution

and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have

been obtained by defendants as a result of such business acts or practices.

   (h) The illegal conduct alleged herein is continuing and there is no indication

that defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Occupant Safety Restraint Systems (or vehicles containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

208.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed or obtained in the District of Columbia.

(b)     The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs were not aware of Defendants' price-fixing

conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Occupant Safety Restraint Systems. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Occupant Safety Restraint Systems because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. Defendants' conduct with regard to sales of Occupant Safety Restraint Systems, including their illegal conspiracy to secretly fix the price of Occupant Safety Restraint Systems at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Occupant Safety Restraint Systems.

(c)     Defendants' unlawful conduct had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels  throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(d)     As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

209.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)    Defendants' unlawful conduct had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Florida; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

210. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

(a) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

211. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

(a) Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(b)      Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(c)      Defendants' unlawful conduct had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(d)      As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

(e)      Certain of the Defendants have been served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.  More than thirty days has passed since such demand letters were served, and each Defendant served has failed to make a reasonable settlement offer.

(f)      By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-

conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

212.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

(a)     Missouri Plaintiff and members of this Damages Class purchased Occupant Safety Restraint Systems for personal, family, or household purposes.

(b)     Defendants engaged in the conduct described herein in connection with the sale of Occupant Safety Restraint Systems in trade or commerce in a market that includes Missouri.

(c)     Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

(d)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning defendants' unlawful activities and artificially inflated prices for Occupant Safety Restraint Systems.  The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Occupant Safety Restraint Systems they purchased.

(e)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Occupant Safety Restraint Systems by making public statements that were not in accord with the facts.

(f)     Defendants' statements and conduct concerning the price of Occupant Safety Restraint Systems were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing Occupant Safety Restraint Systems at prices established by a free and fair market.

(g)     Defendants' unlawful conduct had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(h)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(j)     Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false

pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

213. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*

(a) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Montana; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems.

(b) During the Class Period, defendants marketed, sold, or distributed Occupant Safety Restraint Systems in Montana, and defendants' illegal conduct substantially affected Montana commerce and consumers.

(c) As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq*., and §§ 30-14-201, *et. seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

214.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Occupant Safety Restraint Systems as set forth in N.M.S.A., § 57-12-2E.  Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Occupant Safety Restraint Systems.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing Occupant Safety Restraint Systems because they were unaware of the unlawful overcharge and there was no alternative source of supply through which

Plaintiffs' could avoid the overcharges. Defendants' conduct with regard to sales of Occupant Safety Restraint Systems, including their illegal conspiracy to secretly fix the price of Occupant Safety Restraint Systems at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Occupant Safety Restraint Systems.

(c)      Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(d)      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)      As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

215.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants and their co-conspirators made public statements about the prices of Occupant Safety Restraint Systems and products containing Occupant Safety Restraint Systems that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Occupant Safety Restraint Systems and products containing Occupant Safety Restraint Systems; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)     Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Occupant Safety Restraint Systems were misled to believe that they were paying a fair price for Occupant Safety Restraint

Systems or the price increases for Occupant Safety Restraint Systems were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d)     Defendants knew that their unlawful trade practices with respect to pricing Occupant Safety Restraint Systems would have an impact on New York consumers and not just the Defendants' direct customers.

(e)     Defendants knew that their unlawful trade practices with respect to pricing Occupant Safety Restraint Systems would have a broad impact, causing consumer class members who indirectly purchased Occupant Safety Restraint Systems to be injured by paying more for Occupant Safety Restraint Systems than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f)     The conduct of the defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)     Defendants' unlawful conduct had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(h)     During the Class Period, defendants marketed, sold, or distributed Occupant Safety Restraint Systems in New York, and defendants' illegal conduct substantially affected New York commerce and consumers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Occupant Safety Restraint Systems in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

216.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy.  Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.  Defendants' public statements concerning the price of Occupant Safety Restraint Systems created the illusion of competitive pricing

controlled by market forces rather than supracompetitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)     The conduct of the defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Defendants' unlawful conduct had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(e)     During the Class Period, defendants marketed, sold, or distributed Occupant Safety Restraint Systems in North Carolina, and defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Occupant Safety Restraint Systems in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

217.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)     Members of this Damages Class purchased Occupant Safety Restraint Systems for personal, family, or household purposes.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Rhode Island.

(c)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Occupant Safety Restraint Systems. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers

81

during the Class Period that defendants' Occupant Safety Restraint Systems prices were competitive and fair.

(d)     Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(e)     As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by defendants' willful and deceptive conduct, as described herein.

(f)     Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Occupant Safety Restraint Systems, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Occupant Safety Restraint Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Occupant Safety Restraint Systems they purchased.

(g)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

218.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Vermont.

(b)    Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Occupant Safety Restraint Systems.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that defendants' Occupant Safety Restraint Systems prices were competitive and fair.

(c)    Defendants' unlawful conduct had the following effects:  (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs

and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems.

(d)     As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Occupant Safety Restraint Systems, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Occupant Safety Restraint Systems at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiffs and the Damages Class)

219.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

220.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Occupant Safety Restraint Systems.

221.     Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs of the members of the Damages Class for Occupant Safety Restraint Systems.

222.     Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

1.      The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

2.      That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)      An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)      A *per se* violation of Section 1 of the Sherman Act;

(c)      An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)      Acts of unjust enrichment by Defendants as set forth herein.

3.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

4.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

5.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

6.      Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

86

7.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

8.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

9.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

**DATED:** July _____, 2012                    **COTCHETT, PITRE & McCARTHY, LLP**

By   **DRAFT**_____

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE &**
**McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com

swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:  (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for  the Proposed End-Payor
Plaintiffs Classes*

E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison
Counsel for the Proposed End-Payor Plaintiffs
Classes*

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED:  July _____, 2012           **COTCHETT, PITRE & McCARTHY, LLP**


By   **DRAFT** _____

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE &**
**McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:  (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Attorneys for Plaintiffs and Interim Co-Lead*
*Class Counsel for  the Proposed End-Payor*
*Plaintiffs Classes*

E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison
Counsel for the Proposed End-Payor Plaintiffs
Classes*