# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
|  | : |  |
|  | : | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT |
| PRODUCT(S): | : |  |
|  | : |  |
| INSTRUMENT PANEL CLUSTERS | : | JURY TRIAL DEMANDED |
|  | : |  |
|  | : |  |
| This Document Relates to: | : |  |
|  | : |  |
| ALL END-PAYOR ACTIONS | : |  |
|  | : |  |

# TABLE OF CONTENTS

**Page(s)**

NATURE OF ACTION ................................................................................................... 1

JURISDICTION AND VENUE ..................................................................................... 3

PARTIES ......................................................................................................................... 6

AGENTS AND CO-CONSPIRATORS ......................................................................... 10

FACTUAL ALLEGATIONS ......................................................................................... 11

    A.    The Instrument Panel Cluster Industry ................................................. 11

    B.    The Structure and Characteristics of the Instrument Panel Clusters
         Market Render the Conspiracy More Plausible ................................... 13

        1.    The Instrument Panel Clusters Market has High Barriers to Entry ......... 13
        2.    There is Inelasticity of Demand for Instrument Panel Clusters ............... 14

    C.    Government Investigations .................................................................... 14

    D.    Yazaki Pleads Guilty to Price-Fixing Instrument Panel Clusters ........ 16

    E.    Additional Criminal Pleadings in the Automotive Parts Industry ....... 18

CLASS ACTION ALLEGATIONS ................................................................................ 19

PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY ............... 23

PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS ........ 26

    A.    The Statute of Limitations Did Not Begin to Run Because Plaintiffs
         Did Not and Could Not Discover Their Claims ................................... 26

    B.    Fraudulent Concealment Tolled the Statute of Limitations ................. 27

FIRST CLAIM FOR RELIEF
Violation of Section 1 of the Sherman Act
(on behalf of Plaintiffs and the Nationwide Class) ....................................................... 29

SECOND CLAIM FOR RELIEF
Violation of State Antitrust Statutes
(on behalf of Plaintiffs and the Damages Class) .......................................................... 31

THIRD CLAIM FOR RELIEF
Violation of State Consumer Protection Statutes
(on behalf of Plaintiffs and the Damages Class)..........................................................................52

FOURTH CLAIM FOR RELIEF
Unjust Enrichment
(on behalf of Plaintiffs and the Damages Class)..........................................................................70

PRAYER FOR RELIEF ..........................................................................................................71

JURY DEMAND ......................................................................................................................77

Plaintiffs Tom Halverson, Stephanie Petras, Melissa Barron, John Hollingsworth, Meetesh Shah, Michael Tracy, Jane Taylor, Jennifer Chase, Darrel Senior, James Marean, Ron Blau, Roger Olson, Susan Olson, Antonio and Nilsa Mercado, Darcy Sherman, Curtis Gunnerson, David Bernstein, Ellis Winton McInnis, Thomas Wilson, Lauren Primos, Robert Klinger, Jessica DeCastro, Virginia Pueringer, Nathan Croom, Richard Stoehr, Edward Muscara, Michael Wick, Ian Groves, Tenisha Burgos, Jason Grala, Kathleen Tawney, Melinda and Curtis Harr, Cindy Prince, Paul Gustafson, France Gammell-Roach, William Dale Picotte, Becky Bergeson, Jesse Powell, Alena Farrell, Janne Rice, Robert Rice, Stacey Nickell, Carol Ann Kashishian (Wisconsin) (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to them and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, and consumer protection laws, Plaintiffs demand a trial by jury, and allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Defendants Yazaki Corporation ("Yazaki") and Yazaki North America, Inc. (together, the "Yazaki Defendants") and unnamed co-conspirators, manufacturers, and/or suppliers of Instrument Panel Clusters (defined below) globally and in the United States, for engaging in a nearly eight-year-long conspiracy to fix, raise, maintain, and/or stabilize prices, and allocate the market and customers in the United States for Instrument Panel Clusters.  Yazaki Defendants' conspiracy successfully targeted the long-struggling United States automotive industry, raising prices for car manufacturers and consumers alike.

1

2.      "Instrument Panel Clusters," also known as meters, are the mounted array of instruments and gauges housed in front of the driver of an automobile.

3.      Plaintiffs seek to represent classes of consumers who purchased or leased new motor vehicles containing Instrument Panel Clusters or who purchased replacement Instrument Panel Clusters for their motor vehicles during the period from and including December 2002 up to and including at least February 2010 (the "Class Period").

4.      Yazaki Defendants manufacture, market, and/or sell Instrument Panel Clusters throughout the United States.

5.      Yazaki Defendants and their co-conspirators (as yet unknown) agreed, combined, and conspired to fix, raise, maintain, and/or stabilize prices, and allocate the market and customers in the United States for Instrument Panel Clusters.

6.      Competition authorities in the United States, the European Union, and Japan have been investigating a number of conspiracies involving automotive parts since at least February 2010.  As part of its criminal investigation, the United States Department of Justice's Antitrust Division ("DOJ") is seeking information about anticompetitive conduct in the markets for several different automotive parts, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the offices of a number of major competitors in the industry.  The European Commission Competition Authority ("EC") has also conducted dawn raids at the European offices of several of these competitors.

7.      As hereafter more fully alleged, Yazaki agreed to plead guilty and pay a criminal fine of $470 million – the second largest fine ever for an antitrust violation – stemming from its participation in three separate unlawful conspiracies to fix prices for certain auto parts, including fixing prices for Instrument Panel Clusters from at least as early as December 2002 and

continuing until at least February 2010.  The ongoing criminal investigation launched by the DOJ has already resulted in more than $748 million in criminal fines.

8.     The combination and conspiracy engaged in by Yazaki Defendants and their co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

9.     As part of its anticipated plea agreement, Yazaki agreed to assist the DOJ in its ongoing criminal investigation into the automotive parts industry.

10.     As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for Instrument Panel Clusters during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

11.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26); Section 1 of the Sherman Act (15 U.S.C. § 1); and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that:  (i) this is

a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

13. Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

14. This Court has *in personam* jurisdiction over each Defendant because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia*: (a) transacted business in the United States, including in this district; (b) directly or indirectly sold or marketed substantial quantities of Instrument Panel Clusters throughout the United States, including in this district; (c) had substantial aggregate contacts with the United States as a whole, including in this district; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this district. Defendants also conduct business throughout the United States, including in this district, and they have purposefully availed themselves of the laws of the United States.

15.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, reasonably foreseeable, and intended anticompetitive effects upon interstate commerce within the United States.

16.     The activities of Yazaki Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect on interstate commerce of the United States.  Defendants' products are sold in the flow of interstate commerce.

17.     Instrument Panel Clusters manufactured abroad by Yazaki Defendants and sold for use in automobiles that were either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce.  To the extent any Instrument Panel Clusters are purchased in the United States, and such Instrument Panel Clusters do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial, and reasonably foreseeable effect on United States commerce.  The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

18.     By reason of the unlawful activities hereinafter alleged, Yazaki Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes.  Defendants, directly and through their agents, engaged in activities affecting all states to fix, stabilize, and maintain prices in the United States for Instrument Panel Clusters, which conspiracy unreasonably restrained trade and adversely affected the market for Instrument Panel Clusters.

19.     Yazaki Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Instrument Panel Clusters for personal use, including Plaintiffs and members of the Classes.

## PARTIES

20.     Plaintiff Tom Halverson is an Arizona resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

21.     Plaintiff Stephanie Petras is an Arizona resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

22.     Plaintiff Melissa Barron is a California resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

23.     Plaintiff John Hollingsworth is a California resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

24.     Plaintiff Meetesh Shah is a California resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

25.     Plaintiff Michael Tracy is a Florida resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

26.     Plaintiff Jane Taylor is a Hawaii resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

27.     Plaintiff Jennifer Chase is an Iowa resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

28.     Plaintiff Darrel Senior is a Kansas resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

29.     Plaintiff James Marean is a Maine resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

30.     Plaintiff Ron Blau is a Massachusetts resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

31.     Plaintiff Roger Olson is a Michigan resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

32.     Plaintiff Susan Olson is a Michigan resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

33.     Plaintiffs Antonio and Nilsa Mercado are Michigan residents who purchased Instrument Panel Clusters indirectly from one or more Defendants.

34.     Plaintiff Darcy Sherman is a Minnesota resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

35.     Plaintiff Curtis Gunnerson is a Minnesota resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

36.     Plaintiff David Bernstein is Minnesota resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

37.     Plaintiff Ellis Winton McInnis is a Mississippi resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

38.     Plaintiff Thomas Wilson is a Mississippi resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

39.     Plaintiff Lauren Primos is a Mississippi resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

40.     Plaintiff Robert Klinger is a Missouri resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

41.     Plaintiff Jessica DeCastro is a Missouri resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

42.     Plaintiff Virginia Pueringer is a Montana resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

43.     Plaintiff Nathan Croom is a Nebraska resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

44.     Plaintiff Richard Stoehr is a Nevada resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

45.     Plaintiff Edward Muscara is New Hampshire resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

46.     Plaintiff Michael Wick is a New Mexico resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

47.     Plaintiff Ian Groves is a New Mexico resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

48.     Plaintiff Tenisha Burgos is a New York resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

49.     Plaintiff Jason Grala is a New York resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

50.     Plaintiff Kathleen Tawney is a North Carolina resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

51.     Plaintiffs Melinda and Curtis Harr are North Dakota residents who purchased Instrument Panel Clusters indirectly from one or more Defendants.

52.     Plaintiff Cindy Prince is an Oregon resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

53.     Plaintiff Paul Gustafson is an Oregon resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

54.     Plaintiff France Gammell-Roach is a Rhode Island resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

55.     Plaintiff William Dale Picotte is a South Dakota resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

56.     Plaintiff Becky Bergerson is a Utah resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

57.     Plaintiff Jesse Powell is a Utah resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

58.     Plaintiff Alena Farell is a Vermont resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

59.     Plaintiff Janne Rice is a West Virginia resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

60.     Plaintiff Robert Rice is a West Virginia resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

61.     Plaintiff Stacey Nickell is a West Virginia resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

62.     Plaintiff Carol Ann Kashishian is a Wisconsin resident who purchased Instrument Panel Clusters indirectly from one or more Defendants.

**Yazaki Defendants**

63.     Defendant Yazaki Corporation is a Japanese corporation.  Defendant Yazaki Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Instrument Panel Clusters that were purchased throughout the United States, including in this district, during the Class Period.

64.     Defendant Yazaki North America, Inc. is an Illinois corporation with its principal place of business in Canton Township, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent, Yazaki Corporation.  Defendant Yazaki North America, Inc. manufactured, marketed, and/or sold Instrument Panel Clusters that were purchased throughout the United States, including in this district, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent.

65.     Yazaki Corporation and Yazaki North America, Inc. are herein referred to as shall collectively be referred to herein as the "Yazaki Defendants" or "Yazaki."

## AGENTS AND CO-CONSPIRATORS

66.     Each Yazaki Defendant acted as the principal of or agent for the other Yazaki Defendant with respect to the acts, violations, and common course of conduct alleged.

67.     Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Yazaki Defendants in the offenses

alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

68.     Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.     The Instrument Panel Cluster Industry

69.     Instrument Panel Clusters, also known as meters, are the mounted array of instruments and gauges housed in front of the driver of an automobile.   See Figures 1 and 2.



**Figures 1 and 2.  Yazaki Instrument Panel Clusters**

70.     Instrument Panel Clusters are installed by automobile original equipment manufacturers ("OEMs") in new vehicles as part of the automotive manufacturing process.  They are also installed in vehicles to replace worn out, defective, or damaged Instrument Panel Clusters.

71.     Instrument Panel Clusters are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They are also installed in cars to replace worn out, defective, or damaged Instrument Panel Clusters.

72.     For new cars, OEMs – mostly large automotive manufacturers – purchase Instrument Panel Clusters directly from Yazaki Defendants.

73.     When purchasing Instrument Panel Clusters, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers.  Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for four to six years.  Typically, the bidding process begins approximately three years prior to the start of production of a new model.  Japanese OEMs procure parts for U.S.-manufactured vehicles both in Japan and the United States.

74.     Yazaki Defendants and their co-conspirators supplied Instrument Panel Clusters to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere. Yazaki Defendants and their co-conspirators manufactured Instrument Panel Clusters (a) in the United States for installation in vehicles manufactured and sold in the United States; (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States; and (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

75.     Plaintiffs and members of the proposed Classes purchased Instrument Panel Clusters indirectly from Yazaki Defendants and/or their co-conspirators.  By way of example, an owner or leasee of a vehicle may indirectly purchase an Instrument Panel Cluster from Yazaki Defendants or their co-conspirators as part of purchasing or leasing the new vehicle.  An owner or leasee of a vehicle may also indirectly purchase a replacement Instrument Panel Cluster from

Yazaki Defendants when repairing a damaged vehicle or where the Instrument Panel Cluster is defective.

76.    Yazaki ranks among the largest worldwide automotive suppliers, ranked 13th by the industry journal Automotive News in 2011.  As an OEM supplier, Yazaki interacts directly with car makers such as GM, Ford, Toyota, Jaguar Land Rover, Nissan, Honda, and others.  In 2010, Yazaki's total global OEM automotive parts sales were estimated to be $12,531,000,000.

B.    **The Structure and Characteristics of the Instrument Panel Clusters Market Render the Conspiracy More Plausible**

77.    The structure and other characteristics of the Instrument Panel Clusters market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market.  Specifically, the Instrument Panel Clusters market: (1) has high barriers to entry; and (2) has inelasticity of demand.

1.    **The Instrument Panel Clusters Market has High Barriers to Entry**

78.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely to enter the market.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

79.    There are substantial barriers that preclude, reduce, or make more difficult entry into the Instrument Panel Clusters market.  A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

13

80.     Additionally, Yazaki owns a number of patents for component parts that the Instrument Panel Clusters.  In fact, Yazaki ranks among the top 100 companies receiving the most U.S. patents.  These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

### 2.     There is Inelasticity of Demand for Instrument Panel Clusters

81.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

82.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

83.     Demand for Instrument Panel Clusters is highly inelastic because there are no close substitutes for these products.  In addition, customers must purchase Instrument Panel Clusters as an essential part of their vehicles, even if the prices are kept at a supra-competitive level.

### C.     Government Investigations

84.     A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan, aimed at suppliers of automotive parts, including Instrument Panel Clusters.

85.     The probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the European Commission ("EC").  One carmaker is said to have

failed to attract competitive bids for automotive wire harness systems, leading the company to join with other carmakers to take their complaint to the EC.

86.     On February 8, 2010, the EC executed surprise raids at the European offices of certain automotive parts makers as part of an investigation into anticompetitive conduct related to the manufacturing and sale of automotive parts, including Instrument Panel Clusters.  The EC also carried out additional raids at the European offices of several suppliers of automotive parts on June 7, 2010.  Specifically, EC investigators raided the offices of Leoni, S-Y Systems, and Yazaki.  "The Commission has reason to believe that the companies concerned may have violated European Union antitrust rules that prohibit cartels and restrictive business practices," an EC official said in a statement.

87.     In February 2010, Japan's Fair Trade Commission raided the Tokyo offices of Furukawa, Sumitomo, and Yazaki as part of an expansive investigation into collusion in the industry dating back to at least 2003.

88.     The DOJ stated that it is conducting an investigation of potential antitrust activity and coordinating its investigation with antitrust regulators in Europe.  "The antitrust division is investigating the possibility of anticompetitive cartel conduct of automotive electronic component suppliers," Justice Department Spokeswoman Gina Talamona said.

89.     Indeed, on February 23, 2010, around the same time as the raids by the Japanese and European competition authorities, investigators from the FBI raided three Detroit-area Japanese auto parts makers as part of a federal antitrust investigation.  The FBI executed warrants and searched the offices of these companies, including Yazaki's subsidiary in Canton Township, Michigan.  Special Agent Sandra Berchtold said the affidavits supporting issuance of the warrants were sealed in federal court.

90.     To obtain search warrants, the United States was legally required to have probable cause, accepted by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of executing the search warrant – that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence must have been examined and accepted by a magistrate. That belief, which was recounted in sworn affidavits or testimony, must be grounded on reasonably trustworthy information.

**D.     Yazaki Pleads Guilty to Price-Fixing Instrument Panel Clusters**

91.     On January 30, 2012, the DOJ announced that Defendant Yazaki Corporation had agreed to pay a $470 million fine and to plead guilty to a three-count criminal information charging Yazaki Corporation with:

(a)     participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1;

(b)     participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Instrument Panel Clusters sold to certain automobile manufacturers in the United States and elsewhere from at least as early as December 2002 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; and

(c)     participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to fix, stabilize, and maintain the prices of Instrument Panel Clusters sold to a certain automobile manufacturer in the United States and elsewhere from at least as early as March 2004 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

92.     According to the Information filed, Yazaki and its co-conspirators carried out the Instrument Panel Clusters conspiracy by:

(a)     participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to certain automobile manufacturers in the United States and elsewhere;

(b)     agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile manufacturers in the United States and elsewhere;

(c)     agreeing, during those meetings, conversations, and communications, to allocate the supply of Instrument Panel Clusters sold to certain automobile manufacturers in the United States and elsewhere on a model-by-model basis;

(d)     agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain automobile manufacturers in the United States and elsewhere;

(e)     submitting bids, price quotations, and price adjustments to certain automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)     selling Instrument Panel Clusters to certain automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)     accepting payment for Instrument Panel Clusters sold to certain automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(h)     engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)     employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

### E.     Additional Criminal Pleadings in the Automotive Parts Industry

93.     Four executives from Yazaki Corporation (all Japanese nationals) – Tsuneaki Hanamura, Ryoji Kuwai, Shigeru Ogawa, and Hisamitsu Takada – agreed to plead guilty to their participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses sold to certain automobile manufacturers in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.  These four executives of Yazaki Corporation will serve prison time ranging from 15 months to two years.  The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U.S. jurisdiction for a Sherman Act antitrust violation.

94.     The plea agreements are an outgrowth of the DOJ's initial charges in its ongoing international cartel investigation of price-fixing and bid-rigging in the automotive parts industry.

95.     In addition to Yazaki, a number of other manufacturers of automotive parts have pleaded guilty, or agreed to plead guilty for price-fixing and bid-rigging in the automotive parts

18

industry, including: Denso Corporation; Furukawa Electric Co., Ltd.; G.S. Electech, Inc.; and Fujikura Ltd.

96.    "As a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in vehicles sold to U.S. consumers," said Sharis A. Pozen, Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division.  "This cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."

97.    "When companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," said FBI's Special Agent in Charge Andrew G. Arena.  "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

## CLASS ACTION ALLEGATIONS

98.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities that indirectly purchased or leased in the United States, during the Class Period, Instrument Panel Clusters, for personal use and not for resale, including the purchase of Instrument Panel Clusters as a stand-alone replacement product or as a component of a new motor vehicle purchased or leased from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator.

99.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the antitrust, unfair competition, consumer protection, and unjust enrichment laws of the states

whose laws are identified in Paragraphs 153-193 below ("Plaintiffs' States").  These claims are

brought by Plaintiffs on behalf of themselves and persons and entities in Plaintiffs' States as

follows (the "Damages Class"):

> All persons and entities that indirectly purchased or leased in
> Plaintiffs' States, during the Class Period, Instrument Panel
> Clusters, for personal use and not for resale, including the purchase
> of Instrument Panel Clusters as a stand-alone replacement product
> or as a component of a new motor vehicle purchased or leased
> from any Defendant or any current or former subsidiary or affiliate
> thereof, or any co-conspirator.

100.     The Nationwide Class and the Damages Class are referred to herein as the

"Classes."  Excluded from the Classes are Yazaki Defendants, their parent companies,

subsidiaries and affiliates, any co-conspirators, federal governmental entities and

instrumentalities of the federal government, states and their subdivisions, agencies and

instrumentalities, and persons who purchased Instrument Panel Clusters  directly or for resale.

101.     While Plaintiffs do not know the exact number of the members of the Classes,

Plaintiffs believe there are (at least) thousands of members in each Class.

102.     Common questions of law and fact exist as to all members of the Classes.  This is

particularly true given the nature of Yazaki Defendants' conspiracy, which was generally

applicable to all members of both Classes, thereby making appropriate relief with respect to the

Classes as a whole.  Such questions of law and fact common to the Classes include, but are not

limited to:

(a)     Whether Yazaki Defendants and their co-conspirators engaged in a

combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of

Instrument Panel Clusters sold in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)    The duration of the alleged conspiracy and the acts carried out by Yazaki Defendants and their co-conspirators in furtherance of the conspiracy;

(d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)    Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

(f)    Whether Yazaki Defendants unjustly enriched themselves to the detriment of Plaintiffs and members of the Classes, thereby entitling Plaintiffs and members of the Classes to disgorgement of all benefits derived by Yazaki Defendants, as alleged in the Fourth Claim for Relief;

(g)    Whether the conduct of Yazaki Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and members of the Classes;

(h)    The effect of the alleged conspiracy on the prices of Instrument Panel Clusters sold in the United States during the Class Period;

(i)    Whether any Plaintiffs knew, or had any reason to know, of the conspiracy engaged in by Yazaki Defendants;

(j)    Whether Yazaki Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and members of the Classes;

(k)    The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)    The appropriate class-wide measure of damages for the Damages Class.

103.     Plaintiffs' claims are typical of the claims of members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Yazaki Defendants' wrongful conduct in that they paid artificially inflated prices for Instrument Panel Clusters purchased indirectly from Yazaki Defendants and/or their co-conspirators.

104.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

105.     The questions of law and fact common to members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

106.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

107.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

108.    The Yazaki Defendants' price-fixing conspiracy had the following effects, among others:

(a)    Price competition has been restrained or eliminated with respect to Instrument Panel Clusters;

(b)    The prices of Instrument Panel Clusters have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

(c)    Indirect purchasers of Instrument Panel Clusters have been deprived of free and open competition.

109.    During the Class Period, Plaintiffs and members of the Classes paid supra-competitive prices for Instrument Panel Clusters.  These inflated prices have been passed on to them by OEMs and dealers.   Those overcharges have unjustly enriched defendants.

110.    The markets for Instrument Panel Clusters and the market for cars are inextricably linked and intertwined because the market for Instrument Panel Clusters exists to serve the vehicle market.  Without the vehicles, the Instrument Panel Clusters have little to no value because they have no independent utility.  Indeed, the demand for vehicles creates the demand for Instrument Panel Clusters.

111.    Instrument Panel Clusters are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle.  As a result, Instrument Panel Clusters follow a traceable physical chain of distribution from Yazaki Defendants to Plaintiffs and members of the Classes, and any costs attributable to Instrument Panel Clusters can be traced through the chain of distribution to Plaintiffs and members of the Classes.

112.    Just as Instrument Panel Clusters can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Instrument Panel Clusters affect prices paid by indirect purchasers of new motor vehicles containing Instrument Panel Clusters.

113.    While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces.  The OEM and dealer markets for new motor vehicles are subject to vigorous price competition.  The OEMs and dealers have thin net margins, and are therefore at the mercy of their component costs, such that increases in the price of components such as Instrument Panel Clusters lead to corresponding increases in prices for new motor vehicles and replacement parts at the OEM and dealer levels.  When downstream distribution markets are highly competitive, as they are in the case of new motor vehicles containing Instrument Panel Clusters as components, overcharges are passed through to ultimate consumers, such as the indirect-purchaser plaintiffs and class members.

114.    Hence, the inflated prices of Instrument Panel Clusters both in new motor vehicles and purchased for repair resulting from defendants' bid rigging and price-fixing conspiracy have been passed on to plaintiffs and the other class members by OEMs and dealers.

115.    The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law

School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."

116.    As Professor Jeffrey K. MacKien-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end customers.   When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers . . ..  Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets.   This general phenomenon of cost pass through is well established in antitrust laws and economics as well.

117.    The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of Instrument Panel Clusters and, as a direct and foreseeable result, the price of new motor vehicles containing Instrument Panel Clusters and the price of Instrument Panel Clusters purchased for repair purposes.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.  Thus, it is possible to isolate and identify only the impact of an increase in the price of Instrument Panel Clusters on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time.

A regression model can explain how variation in the price of Instrument Panel Clusters affects changes in the price of new motor vehicles. In such models, the price of Instrument Panel Clusters would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Instrument Panel Clusters impact the price of new motor vehicles containing Instrument Panel Clusters while controlling for the impact of other price-determining factors.

118. The precise amount of the overcharge impacting the prices of new motor vehicles containing Instrument Panel Clusters can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed-through the chain of distribution. Thus, the economic harm to Plaintiffs and the class members can be quantified.

119. By reason of the alleged violations of the antitrust laws, Plaintiffs and members of the Classes have sustained injury to their businesses or property, having paid higher prices for Instrument Panel Clusters than they would have paid in the absence of Yazaki Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A. The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims

120. Plaintiffs repeat and re-allege the allegations set forth above.

121. Plaintiffs and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until shortly before the initial complaint was filed in this multi-district litigation.

Plaintiffs and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until January 30, 2012, the date the DOJ announced Yazaki's anticipated guilty plea for its role in the criminal price-fixing conspiracy alleged herein.

122.    Plaintiffs and members of the Classes are consumers who purchased or leased automobiles or purchased Instrument Panel Clusters to replace or repair damaged or defective Instrument Panel Clusters in their automobiles. They had no direct contact or interaction with Yazaki Defendants and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the DOJ's January 30, 2012 announcement alleged above.

123.    No information in the public domain was available to Plaintiffs and members of the Classes prior to the DOJ's announcement on January 30, 2012 that revealed sufficient information to suggest that Yazaki Defendants were involved in a criminal conspiracy to price-fix Instrument Panel Clusters.  Plaintiffs and members of the Classes had no means of obtaining any facts or information concerning any aspect of Yazaki's dealings with OEMs or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

124.    For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and members of the Classes have alleged in this Complaint.

**B.    Fraudulent Concealment Tolled the Statute of Limitations**

125.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes.  Plaintiffs and members of the Classes did not know and could not have known of the existence of the

conspiracy and unlawful combination alleged herein until January 30, 2012, at the earliest, the

date the DOJ announced that Yazaki had agreed to plead guilty for its role in the criminal price-

fixing conspiracy alleged herein.

126.   Before that time, Plaintiffs and members of the Classes were unaware of

Defendants' unlawful conduct, and did not know before then that they were paying supra-

competitive prices for Instrument Panel Clusters throughout the United States during the Class

Period.  No information, actual or constructive, was ever made available to Plaintiffs and

members of the Classes that even hinted to Plaintiffs that they were being injured by Yazaki's

unlawful conduct.

127.   The affirmative acts of Yazaki Defendants alleged herein, including acts in

furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that

precluded detection.

128.   By its very nature, Yazaki Defendants' anticompetitive conspiracy and unlawful

combinations were inherently self-concealing.  Instrument Panel Clusters are not exempt from

antitrust regulation and, thus, Plaintiffs and members of the Classes reasonably considered it to

be a competitive industry.  Accordingly, a reasonable person under the circumstances would not

have been alerted to investigate the legitimacy of Yazaki Defendants' Instrument Panel Clusters

prices before January 30, 2012.

129.   Plaintiffs and members of the Classes could not have discovered the alleged

combination or conspiracy at an earlier date by the exercise of reasonable diligence because of

the deceptive practices and techniques of secrecy employed by Yazaki Defendants and their co-

conspirators to avoid detection of, and fraudulently conceal, their conduct.

130.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until January 30, 2012, when the DOJ issued a press release concerning Yazaki Defendants' anticompetitive conduct in the market for Instrument Panel Clusters.

131.     For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until January 30, 2012.

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

132.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

133.     Yazaki Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

134.     The acts done by each Yazaki Defendant as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

135.     At least as early as December 2002, and continuing until at least February 2010, the exact dates being unknown to Plaintiffs, Yazaki Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices, rig bids, and allocate markets for Instrument Panel Clusters, thereby creating anticompetitive effects.

136. The anticompetitive acts were intentionally directed at the United States market for Instrument Panel Clusters and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Instrument Panel Clusters throughout the United States.

137. The conspiratorial acts and combinations have caused unreasonable restraints in the market for Instrument Panel Clusters.

138. As a result of Yazaki Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Instrument Panel Clusters have been harmed by being forced to pay inflated, supra-competitive prices for Instrument Panel Clusters.

139. In formulating and carrying out the alleged agreement, understanding, and conspiracy, Yazaki Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth herein.

140. Yazaki Defendants' conspiracy had the following effects, among others:

(a) Price competition in the market for Instrument Panel Clusters has been restrained, suppressed, and/or eliminated in the United States;

(b) Prices for Instrument Panel Clusters sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c) Plaintiffs and members of the Nationwide Class who purchased Instrument Panel Clusters indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

141.     Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Instrument Panel Clusters purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

142.     The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

143.     Plaintiffs and members of the Nationwide Class are entitled to an injunction against Yazaki Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

144.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

145.     During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Instrument Panel Clusters in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

146.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Instrument Panel Clusters and to allocate customers for Instrument Panel Clusters in the United States.

147.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including: participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Instrument Panel Clusters at certain levels, and

otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Instrument Panel Clusters sold in the United States; allocating customers and markets for Instrument Panel Clusters in the United States in furtherance of their agreements; and participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

148.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Instrument Panel Clusters.

149.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the following state antitrust statutes.

150.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

151.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Instrument Panel Clusters at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Instrument Panel Clusters.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following:  (1) Fixing, raising, stabilizing, and pegging the price of Instrument Panel Clusters; and (2) Allocating among themselves the production of Instrument Panel Clusters.

The combination and conspiracy alleged herein has had, inter alia, the following effects: (1) Price competition in the sale of Instrument Panel Clusters has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Instrument Panel Clusters sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Instrument Panel Clusters directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Instrument Panel Clusters than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

152.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

153.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*.

154.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq*.

155.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Maine; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

156.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Massachusetts Antitrust Act, Mass. Gen. Laws Ann. 93 §§ 1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Instrument Panel Clusters prices were raised, fixed, maintained

and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mass. Gen. Laws Ann. 93 §§ 1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mass. Gen. Laws Ann. 93 §§ 1, *et seq*.

157.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

158.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

159.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

160.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

161.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Instrument Panel Clusters prices were raised, fixed, maintained and

stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

162.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

163.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

164.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout New York; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters when they purchased vehicles containing Instrument Panel Clusters, or purchased products that were otherwise of lower quality, than would have been absent the conspirators illegal acts, or were unable to purchase products that they would have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.*  The conduct set

44

forth above is a per se violation of the Act.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

165.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

166.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)      During the Class Period, defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

167.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq*.

(a)      Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

46

the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

168.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

169.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.*  Accordingly,

Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

170.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Utah; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

171.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated

49

throughout Vermont; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

172.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

50

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

173.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Instrument Panel Clusters prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

174.     Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement.  Plaintiffs and members of the Damages Class have paid more for Instrument Panel Clusters than they otherwise would have paid in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

175.     In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of members of the Plaintiffs and the members of the Damages Class.

176.     Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
### Violation of State Consumer Protection Statutes
### (on behalf of Plaintiffs and the Damages Class)

177.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

178.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

52

179.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)     During the Class Period, defendants marketed, sold, or distributed Instrument Panel Clusters in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)     The Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, et seq., including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, et seq., of the California Business and Professions Code, set forth above;

(d)     Defendants' acts, omissions, misrepresentations, practices, an non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

53

(e)     Defendants' acts or practices are unfair to consumers of Instrument Panel Clusters (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(f)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Instrument Panel Clusters (or vehicles containing them).  Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by defendants' unfair competition.  Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by defendants as a result of such

business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

180.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Instrument Panel Clusters were sold, distributed or obtained in the District of Columbia.

(b)    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.  Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Instrument Panel Clusters.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing Instrument Panel Clusters because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges.  Defendants' conduct with regard to sales of Instrument Panel Clusters, including their illegal conspiracy to secretly fix the price of Instrument Panel Clusters at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs.  The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for

consumers so that there was a gross disparity between the price paid and the value received for Instrument Panel Clusters.

(c)     Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels  throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for Instrument Panel Clusters.

(d)     As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

181.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a)     Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Florida; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

182.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

(a)     Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

183.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

(a)     Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which Instrument Panel Clusters were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(c)     Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Instrument Panel Clusters.

(d)     As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

(e)     Certain of the Defendants have been served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the

Commonwealth of Massachusetts or not keeping assets within the Commonwealth.  More than thirty days has passed since such demand letters were served, and each Defendant served has failed to make a reasonable settlement offer.

(f)     By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

184.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

(a)     Missouri Plaintiff and members of this Damages Class purchased Instrument Panel Clusters for personal, family, or household purposes.

(b)     Defendants engaged in the conduct described herein in connection with the sale of Instrument Panel Clusters in trade or commerce in a market that includes Missouri.

(c)     Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Instrument Panel Clusters were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

(d)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning defendants' unlawful activities and artificially inflated prices for Instrument Panel Clusters.  The concealed, suppressed, and omitted

facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Instrument Panel Clusters they purchased.

(e)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Instrument Panel Clusters by making public statements that were not in accord with the facts.

(f)     Defendants' statements and conduct concerning the price of Instrument Panel Clusters were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing Instrument Panel Clusters at prices established by a free and fair market.

(g)     Defendants' unlawful conduct had the following effects: (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Instrument Panel Clusters.

(h)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(j)     Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false

pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

185.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*

(a)    Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Montana; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Instrument Panel Clusters.

(b)    During the Class Period, defendants marketed, sold, or distributed Instrument Panel Clusters in Montana, and defendants' illegal conduct substantially affected Montana commerce and consumers.

(c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*, and,

accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

186.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Instrument Panel Clusters were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Instrument Panel Clusters as set forth in N.M.S.A., § 57-12-2E.  Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Instrument Panel Clusters.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing Instrument Panel Clusters because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs' could avoid the overcharges.  Defendants' conduct with regard to sales of Instrument Panel Clusters, including their illegal conspiracy to secretly fix the price of Instrument Panel Clusters at supracompetitive levels and overcharge consumers, was substantively unconscionable because it

was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public.

Defendants took grossly unfair advantage of Plaintiffs.  The suppression of competition that has

resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for

consumers so that there was a gross disparity between the price paid and the value received for

Instrument Panel Clusters.

(c)     Defendants' unlawful conduct had the following effects:  (1) Instrument

Panel Clusters price competition was restrained, suppressed, and eliminated throughout New

Mexico; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at

artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages

Class were deprived of free and open competition; and (4) Plaintiffs and the members of the

Damages Class paid supra-competitive, artificially inflated prices for Instrument Panel Clusters.

(d)     During the Class Period, Defendants' illegal conduct substantially affected

New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the

Defendants, Plaintiffs and the members of the Damages Class have been injured and are

threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and

the members of the Damages Class seek all relief available under that statute.

187.     Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce

by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the

prices at which Instrument Panel Clusters were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)      Defendants and their co-conspirators made public statements about the prices of Instrument Panel Clusters and products containing Instrument Panel Clusters that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Instrument Panel Clusters and products containing Instrument Panel Clusters; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)      Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Instrument Panel Clusters were misled to believe that they were paying a fair price for Instrument Panel Clusters or the price increases for Instrument Panel Clusters were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d)      Defendants knew that their unlawful trade practices with respect to pricing Instrument Panel Clusters would have an impact on New York consumers and not just the Defendants' direct customers.

(e)      Defendants knew that their unlawful trade practices with respect to pricing Instrument Panel Clusters would have a broad impact, causing consumer class members who indirectly purchased Instrument Panel Clusters to be injured by paying more for Instrument Panel Clusters than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f)     The conduct of the defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)     Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout New York; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Instrument Panel Clusters.

(h)     During the Class Period, defendants marketed, sold, or distributed Instrument Panel Clusters in New York, and defendants' illegal conduct substantially affected New York commerce and consumers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Instrument Panel Clusters in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

188.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the

prices at which Instrument Panel Clusters were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy.  Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.  Defendants' public statements concerning the price of Instrument Panel Clusters created the illusion of competitive pricing controlled by market forces rather than supracompetitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)     The conduct of the defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages

Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Instrument Panel Clusters.

(e)     During the Class Period, defendants marketed, sold, or distributed Instrument Panel Clusters in North Carolina, and defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Instrument Panel Clusters in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

189.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)     Members of this Damages Class purchased Instrument Panel Clusters for personal, family, or household purposes.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Instrument Panel Clusters were sold, distributed, or obtained in Rhode Island.

(c)      Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Instrument Panel Clusters. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that defendants' Instrument Panel Clusters prices were competitive and fair.

(d)      Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price  competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Instrument Panel Clusters.

(e)      As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by defendants' willful and deceptive conduct, as described herein.

(f)      Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Instrument Panel Clusters, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Instrument Panel Clusters at prices set by a free and fair market. Defendants' affirmative misrepresentations and

omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Instrument Panel Clusters they purchased.

(g)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

190.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Instrument Panel Clusters were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Instrument Panel Clusters.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that defendants' Instrument Panel Clusters prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects:  (1) Instrument Panel Clusters price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Instrument Panel Clusters prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Instrument Panel Clusters.

(d)      As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by defendants' willful and deceptive conduct, as described herein.

(e)      Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of Instrument Panel Clusters, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Instrument Panel Clusters at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiffs and the Damages Class)

191.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

192.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Instrument Panel Clusters. Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs of the members of the Damages Class for Instrument Panel Clusters.

193.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a

constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

1.      The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

2.      That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)      An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)      A *per se* violation of Section 1 of the Sherman Act;

(c)      An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)      Acts of unjust enrichment by Defendants as set forth herein.

3.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

4.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

5.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

6.      Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

7.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

8.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

9.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

DATED:  July _____, 2012                    **COTCHETT, PITRE & McCARTHY, LLP**


By  **DRAFT**                                                      

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com


Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:  (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com


Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Attorneys for Plaintiffs and Interim Co-Lead*
*Class Counsel for  the Proposed End-Payor*
*Plaintiffs Classes*


E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison*
*Counsel for the Proposed End-Payor Plaintiffs*
*Classes*

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.

DATED:  July _____, 2012                    **COTCHETT, PITRE & McCARTHY, LLP**


By  **DRAFT**

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com


Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:  (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com


Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com


*Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for  the Proposed End-Payor
Plaintiffs Classes*


E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com


*Attorneys for Plaintiffs and Interim Liaison
Counsel for the Proposed End-Payor Plaintiffs
Classes*

25965