```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3                            —   —   —

4
     IN RE:  AUTOMOTIVE PARTS
5    ANTITRUST LITIGATION              Case No. 12-md-02311

6          MDL NO. 2311                Hon. Marianne O. Battani

7

8    _____/

9                    STATUS CONFERENCE

10        BEFORE THE HONORABLE MARIANNE O. BATTANI
                  United States District Judge
11       Theodore Levin United States Courthouse
                 231 West Lafayette Boulevard
12                   Detroit, Michigan
                 Wednesday, August 1, 2012
13

14   APPEARANCES:

15   For the                WILLIAM G. CALDES
     Direct Purchaser       SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
16   Plaintiffs:            1818 Market Street, Suite 2500
                            Philadelphia, PA  19103
17                          (215) 496-0300

18                          CHARLOTTE CROSON
                            BOGAS, KONCIUS & CROSON, P.C.
19                          31700 Telegraph Road
                            Bingham Farms, MI  48025
20                          (248) 502-5000

21                          DAVID H. FINK
                            FINK & ASSOCIATES LAW
22                          100 West Long Lake Road, Suite 111
                            Bloomfield Hills, MI  48304
23                          (248) 971-2500

24
         To obtain a copy of this official transcript, contact:
25            Robert L. Smith, Official Court Reporter
              (313) 964-3303 • rob_smith@mied.uscourts.gov
```

```
 1    APPEARANCES:  (Continued)

 2    For the              GREGORY P. HANSEL
      Direct Purchaser     PRETI, FLAHERTY, BELIVEAU &
 3    Plaintiffs:          PACHIOS, L.L.P.
                           One City Center
 4                         Portland, ME  04112
                           (207) 791-3000
 5
                           BRENT W. JOHNSON
 6                         COHEN MILSTEIN
                           1100 New York Avenue NW, Suite 500 West
 7                         Washington, D.C.  20005
                           (202) 408-4600
 8
                           STEVEN A. KANNER
 9                         FREED, KANNER, LONDON & MILLEN, L.L.C.
                           2201 Waukegan Road, Suite 130
10                         Bannockburn, IL  60015
                           (224) 632-4502
11
                           WILLIAM H. LONDON
12                         FREED, KANNER, LONDON & MILLEN, L.L.C.
                           2201 Waukegan Road, Suite 130
13                         Bannockburn, IL  60015
                           (224) 632-4504
14
                           KIT A. PIERSON
15                         COHEN MILSTEIN
                           1100 New York Avenue NW, Suite 500 West
16                         Washington, D.C.  20005
                           (202) 408-4600
17
                           EUGENE A. SPECTOR
18                         SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
                           1818 Market Street, Suite 2500
19                         Philadelphia, PA  19103
                           (215) 496-0300
20
                           JASON J. THOMPSON
21                         SOMMERS SCHWARTZ, P.C.
                           2000 Town Center, Suite 900
22                         Southfield, MI  48075
                           (248) 355-0300
23

24

25
```

```
 1    APPEARANCES:   (Continued)

 2    For the                WARREN T. BURNS
      End-Payor              SUSMAN GODFREY, L.L.P.
 3    Plaintiffs:            901 Main Street, Suite 5100
                             Dallas, TX  75202
 4                           (214) 754-1928

 5                           FRANK C. DAMRELL
                             COTCHETT, PITRE & McCARTHY, L.L.P.
 6                           840 Malcolm Road
                             Burlingame, CA  94010
 7                           (650) 697-6000

 8                           DANIEL E. GUSTAFSON
                             GUSTAFSON GLUEK, P.L.L.C.
 9                           650 Northstar East
                             608 Second Avenue South
10                           Minneapolis, MN  55402
                             (612) 333-8844
11
                             ALYSON OLIVER
12                           KRESCH OLIVER, P.L.L.C.
                             21400 Southfield Road, Suite 305
13                           Southfield, MI  48075
                             (248) 327-6556
14
                             HOLLIS L. SALZMAN
15                           LABATON SUCHAROW
                             140 Broadway Avenue
16                           New York, NY  10005
                             (212) 907-0700
17
                             ADAM T. SCHNATZ
18                           THE MILLER LAW FIRM, P.C.
                             950 West University Drive, Suite 300
19                           Rochester, MI  48307
                             (248) 841-2200
20
                             STEVEN N. WILLIAMS
21                           COTCHETT, PITRE & McCARTHY, L.L.P.
                             840 Malcolm Road
22                           Burlingame, CA  94010
                             (650) 697-6000
23

24

25
```

```
 1    APPEARANCES:  (Continued)

 2    For the              DAVID McMULLAN
      Dealership           BARRETT LAW OFFICES
 3    Plaintiffs:          P.O. Drawer 987
                           Lexington, MS  39095
 4                         (601) 834-2376

 5                         SHAWN M. RAITER
                           LARSON KING, L.L.P.
 6                         30 East Seventh Street, Suite 2800
                           Saint Paul, MN  55101
 7                         (651) 312-6500

 8    For the              RICHARD D. BISIO
      Defendants:          KEMP KLEIN LAW FIRM
 9                         201 West Big Beaver Road, Suite 600
                           Troy, MI  48084
10                         (248) 528-1111
                              on behalf of Furukawa Electric Company
11
                           DANIEL W. GLAD
12                         LATHAM & WATKINS, L.L.P.
                           233 South Wacker Drive, Suite 5800
13                         Chicago, IL 60606
                           (312) 777-7110
14                            on behalf of Sumitomo Electric
                                Industries, Limited
15
                           HOWARD B. IWREY
16                         DYKEMA GOSSETT, P.L.L.C.
                           39577 Woodward Avenue, Suite 300
17                         Bloomfield Hills, MI  48304
                           (248) 203-0526
18                            on behalf of Lear Corporation

19                         WILLIAM A. SANKBEIL
                           KERR, RUSSELL & WEBER, P.L.C.
20                         500 Woodward Avenue, Suite 2500
                           Detroit, MI  48226
21                         (313) 961-0200
                              on behalf of Fujikura America,
22                              Incorporated

23

24

25
```

1    Detroit, Michigan

2    Wednesday, August 1, 2012

3    at about 10:00 a.m.

4                        —   —   —

5           (Court and Counsel present.)

6           THE CASE MANAGER:  All rise.

7           The United States District Court for the Eastern

8    District of Michigan is now in session, the Honorable

9    Marianne O. Battani presiding.

10          You may be seated.

11          THE COURT:  Good morning.

12          ATTORNEYS PRESENT:  (Collectively) Good morning,

13   Your Honor.

14          THE COURT:  I will say you are getting less

15   intimidating; it must be your numbers are going down or I'm

16   getting used to you or something.

17          Okay.  Welcome.  Our purpose today was to entertain

18   the objections by McGuire Bearing Company, and I

19   understand -- is Mr. Brent Johnson, are you here, sir?

20          MR. PIERSON:  Your Honor, I'm Kit Pierson, and I'm

21   lead counsel.

22          THE COURT:  Okay.  Can you please come to the

23   podium.  Can I have your appearance, please?

24          MR. PIERSON:  Yes, Your Honor.  My name is

25   Kit Pierson, I'm from Cohen Milstein and I represent

1    McGuire Bearings.

2           THE COURT:  Okay.  Mr. Pierson, is this correct

3    that you are withdrawing your objection?

4           MR. PIERSON:  It is correct, Your Honor.

5    Mr. Johnson is my colleague and my partner.  He called this

6    morning just as a courtesy call to chambers.

7           THE COURT:  Okay.  Is there anything that you want

8    to put on the record about that --

9           MR. PIERSON:  Not really, Your Honor.  All I would

10   say is -- I will make one comment, if you will sort of

11   forgive me, is I did spend a year clerking for Judge

12   Feikens -- the late Judge Feikens, in this court many years

13   ago, too many years ago, and so it is a pleasure to be here

14   again.

15          I guess the only comment I would want to make is

16   this, Your Honor:  We appreciate the complexity of the web of

17   cases that you are in and the Court's efforts.  I have read

18   the prior status conference, I obviously have read the MDL

19   panel's comments about how you bring these cases together and

20   proceed in an efficient way.

21          So we have -- since filing our motion a couple

22   things have happened.  Number one, other bearing cases have

23   been filed including by the four counsel that you designated

24   as co-lead in other cases.  We have had extended discussions

25   with them about how you sort of proceed efficiently in this

1    web of cases, and we have worked with them before in other

2    cases, and we are just satisfied that they are proceeding in

3    a sensible and inclusive way and we want to support that, not

4    fight it.  Whatever fights there are in this case should be

5    between the plaintiffs and defendants, and whatever we can do

6    to help you get to that point we are happy to work with them

7    in as supportable a way as we can.

8              THE COURT:  And it is my understanding in

9    appointing the interim lead counsel and in discussing with

10   them their interaction with the other attorneys, that they

11   will call on individual attorneys or assign individual

12   attorneys duties when necessary so I do foresee that you will

13   be an active part.

14             MR. PIERSON:  We would like to be, Your Honor.  We

15   believe in the case and we have very good relationships with

16   them and are confident they will proceed in that way.

17             THE COURT:  Okay.  Thank you very much.

18             MR. PIERSON:  Thank you.

19             THE COURT:  Any of the other parties have any

20   comments on this motion?  No.

21             MR. FINK:  Your Honor, with respect to the direct

22   purchaser plaintiffs --

23             THE COURT:  Please put your appearance on --

24             MR. FINK:  I'm sorry.  David Fink appearing on

25   behalf of direct purchaser plaintiffs, and really only

Status Conference • August 1, 2012

1    appearing to say that Gene Spector will speak for direct

2    purchaser plaintiffs today.

3              THE COURT:  Okay.  Mr. Spector?

4              MR. SPECTOR:  Good morning, Your Honor.

5    Eugene Spector on behalf of direct purchaser plaintiffs.

6              I really have very little to say because now that

7    Cohen Milstein has withdrawn its objection to the entry of

8    CMO Number 3, the only question with regard to the entry of

9    that order was that raised by the defendants in the joint

10   submission in connection with the June 15th conference.  I'm

11   prepared to answer any questions that Your Honor might have

12   with regard to the issues that they have raised, although I'm

13   not sure they have any standing to raise them.

14             THE COURT:  Well, they did raise some issues and we

15   will hear from the plaintiffs -- excuse me, from the

16   defendants.  Why don't we hear from the defendants first and

17   then I'm going to call back up.  All right.  So let's hear --

18             MR. SPECTOR:  Thank you, Your Honor.

19             THE COURT:  Who wishes to speak, one or all?

20             MR. IWREY:  Your Honor, Howard Iwrey on behalf of

21   Lear.

22             We take no position on the appointment of lead and

23   liaison counsel in the wire harness case, but we do take a

24   position that we couldn't stipulate to the appointment of

25   lead and liaison counsel in the other cases since those

1    parties were not before the Court either on June 15th, they

2    were not part of the MDL proceeding and not part of the JPML

3    order.  And so what plaintiffs want to do is essentially have

4    an ex-parte order that is binding on non-present parties.  We

5    can't take a position on that.  We can't stipulate to that.

6    I think what should happen is what the Court had said on

7    June 15th, to treat these matters separately, to have a

8    separate status conference and to allow those parties to

9    brief the issues in terms of lead and liaison counsel,

10   addressing things such as potential conflicts of interest,

11   for example, and to let those parties address the issues of

12   whether they should be consolidated under Rule 42.

13            THE COURT:  Okay.

14            MR. IWREY:  So this isn't the appropriate forum.  I

15   think they should be treated on separate tracks.

16            THE COURT:  Well, I think that the issue is, and

17   I'm looking at the proposed case management order number 3 in

18   which it says basically lead -- interim lead counsel and

19   interim liaison counsel continue as such for all cases filed

20   in or transferred to this Court in the MDL 2311.

21            MR. IWREY:  Right.

22            THE COURT:  The question will be, and I'm going to

23   ask the plaintiffs to address this, we should put not

24   anything about status conferences because those are

25   administrative matters that we will get to, and I assume we

1   will be seeing people in status conferences as they come into

2   the case, but whether we should include in this order a

3   provision that there may be objections filed and that we

4   would hear, as we are today if it is not resolved, the

5   objections because I think you're absolutely right, we don't

6   even know who these people, companies, whatever, may be.

7           MR. IWREY:  Cases are still being filed, parties

8   are not served.

9           THE COURT:  Okay.  Thank you.

10          MR. IWREY:  Thank you, Your Honor.

11          THE COURT:  Mr. Spector, if you would address that,

12  please.

13          MR. SPECTOR:  Good morning, again, Your Honor.

14          With respect to adding a provision regarding

15  objections for anyone who comes into this case later, I don't

16  have a problem with that.  We are prepared to stand on the

17  way we handle the cases and the decisions that you have

18  already made with regard to our satisfying Rule 23(G)

19  requirements to be an interim lead counsel in the case, and

20  we will do that in every case if that's what the Court wants.

21  We thought that the most efficient way is the way that you

22  have proposed, which is to have that as a presumption, in

23  essence.

24          THE COURT:  Well, you know what, and that is

25  exactly -- thank you, because I thought about that too,

1    that's exactly the way to word it is that the presumption is,

2    as stated in this paragraph, parties opposing it may present

3    objections for good cause or something to that effect.  If

4    you just add a sentence I would be more comfortable with that

5    because we simply don't know what may come up.  It is

6    something that would be unanticipated but, you know,

7    unanticipated things happen.

8              MR. SPECTOR:  I will say however, Your Honor, my

9    firm has experience in a case with a similar kind of

10   situation in the Average Wholesale Price Pharmaceutical

11   Antitrust Litigation in front of Judge Sarason in Boston.

12   That case involved separate drugs and separate pharmaceutical

13   companies and individual cases, but it had been put into a

14   single MDL by the panel I guess about ten years ago.

15             THE COURT:  And it's still going on?

16             MR. SPECTOR:  It has just finished.  One of those

17   kinds of cases, Your Honor.  It has just finished.  Part of

18   the problem was that there were some --

19             THE COURT:  You're lead counsel?

20             MR. SPECTOR:  We are one of lead counsel.  My

21   partner, Jeff Kodroff, is one of the lead counsel in that

22   case.  Part of the problem in terms of delay were there were

23   a number of appeals of settlements by outlying counsel who

24   wanted to challenge that and that, of course, always adds a

25   year or a year and-a-half to any case.  If you are lucky it

1    is only a year or a year and-a-half.  They did that on

2    multiple occasions, so that's really the reason why it took

3    as long as it took.

4           But it is -- all I'm saying is AWP gives you an

5    example of a case where that was done.  The court at the

6    inception of that case appointed four interim lead counsel,

7    they handled the case from that time until the end, and

8    additional cases were filed, additional defendants were

9    named, it was fine.

10           There was one comment that Mr. Iwrey made in his

11   presentation about consolidation of these cases, and I don't

12   think consolidation is what we are talking about here, I

13   think we are talking about coordination.  I think that these

14   cases are separate products.  I think we proposed to handle

15   them as separate products.  We've talked about in the ECF

16   filings setting up individual dockets for each of those

17   cases.  That is our proposal.  In fact, I wanted to suggest

18   to the Court today that we set a deadline, possibly a status

19   conference, sometime in September by which we can submit to

20   the Court scheduling orders in each of those other pending

21   cases.  There are five or six of them right now if I remember

22   correctly.

23           THE COURT:  There are five other beside the wire

24   harness.

25           MR. SPECTOR:  Right.  In those five other cases if

1    we can then submit to the Court but* then try to reach an

2    agreement with the defendants about scheduling and put

3    together a scheduling order in each of those cases, filing a

4    consolidated amended complaint, answer, motion practice, all

5    of those kind of things.

6          THE COURT:  Yes.  We are going to get to that in

7    just a minute.

8          Let me say as to this order to be entered, if you

9    would simply submit an order that allows objections for good

10   cause to be submitted I would feel comfortable with that.  It

11   is obviously my intention that counsel as appointed will be

12   counsel for all parts but it leaves it open if we need to add

13   somebody.  I don't know, you might even say this is something

14   I have never heard of and I don't want to deal with, I don't

15   know.  I don't think so.  Anyway, let's just put that in so

16   people know and I think that individual attorneys getting

17   involved in this case are certainly going to know that the

18   chances of there being another interim lead counsel are slim

19   but there may be some other format that we have to change.  I

20   don't know, I don't even want to go there.  Let's assume we

21   are going forward as we are with all parts but we will allow

22   any new party who, of course, has not had an input into these

23   orders file their objections so they may be heard, that's

24   all.

25          MR. SPECTOR:  Fine, Your Honor.  We will submit a

1    proposed change within the next day or so.

2            THE COURT:  Okay.  Real good.

3            MR. SPECTOR:  Thank you.

4            THE COURT:  Then what I wanted to discuss since you

5    were here -- and I want to thank Mr. Iwrey for coming for the

6    defendants to our -- what did we call it, ECF technical

7    little meeting.  I would like to report what is going on, and

8    I would like to tell everyone who is here so they know the

9    numbering system that we will be following.  I didn't get

10   into when consolidated amended complaints -- no, consolidated

11   complaints will be filed, et cetera, but I want to get this

12   done first so that we have on CM/ECF what I think is a good

13   structure for this case.

14           And for all of you I guess what I want to think of

15   is that the Case No., the 2311, 12-md-2311, that's like a big

16   umbrella number.  If you look at it now it is a mess.  There

17   is so much in there you don't even want to look at it, and

18   you can hardly get to what you want to find.  So what we did

19   or what we are going to do, and I'm going to have Mr. Fink,

20   who has coordinated this, talk because I don't know what the

21   last resolution is, but I just want to go over this

22   structure.  Okay.

23           So the 2311 will be like the big umbrella, but when

24   you open up 2311 you are going to see -- you are going to see

25   six master numbers, all right, like six people under this

1    umbrella.  There are six master numbers, one for each of the

2    parts.  We have six parts now.  We are able to expand

3    obviously if there are more parts, as long as we don't get to

4    the 14,000 parts in the car, right?  Okay.

5           We will see that the very first digit is a letter.

6    For instance, the wire harness cases are W, the instrument

7    panel cluster is P, et cetera.  They will be there so you

8    don't have to memorize this or write this down, I'm sure you

9    will be very familiar with it shortly, but that's how we will

10   identify it.  Then there will be 12-cv, and if it's, in fact,

11   a direct purchaser then the number will be for, let's say,

12   the wire harness will be 00101, if it is for the instrument

13   panel it will be 00201, so we know a 2 is instrument panel.

14   We will know -- the very last digit of the number will be

15   whether it is a direct will be 1, dealerships will be 2 and

16   end-payors will be 3.  This is all going to be laid out in an

17   order so that you all can have it.

18          When you open up the master 2311 you will be able

19   to click -- let's say you are on fuel senders, you are a

20   direct fuel sender, you will be able to click on fuel sender

21   and then when you go into the fuel sender you will be able to

22   go whether you are a direct dealership or end-payor.  So

23   really with a couple clicks you will get just to the area

24   that you want.

25          There will be documents filed in all of these, in

1    some of them, that's what is going to be in the order to tell

2    you where you are going to file your parts -- I mean you're

3    pleadings.  So it sounds more confusing than what it is.  I

4    think you need to see it in writing.  It is not absolute yet.

5    We don't have the order, which is why I'm not handing

6    anything out, but we do know what that basic structure is.

7    So you've got your umbrella number, under that you've got

8    your masters for each part, each part is a master number,

9    underneath each master number for each part will be the three

10   proposed classes.  Okay.  So that's pretty much the way it is

11   going to be laid out.

12        Mr. Fink, do you want to address the Court in terms

13   of what the status of that is?

14        MR. FINK:  Yes.  As the Court may recall, very

15   shortly after we all met Mr. Iwrey -- we are going to out him

16   again -- went to Thailand.  For reasons unknown, he's

17   returned.  While he was gone we were circulating drafts, but

18   he did not really have a chance to review any of it.  He's

19   back, we had a brief discussion today, he does have a

20   concern.  Everything that the Court described though is

21   perfectly consistent, and I don't want to speak for Howard,

22   but it is perfectly consistent with my understanding of what

23   was discussed in the meeting.  It is a system that will work.

24   We will have an order in the next couple of days but we

25   wanted to make sure that the defendants had their input and

1     they really -- it didn't make sense to make a switch.

2          THE COURT:  No.  The intent of all of this is, and

3     in having everybody who wanted to be or all of our liaison

4     counsel there and defendant representative was so everybody

5     would have an input.  I didn't want to impose this and then

6     find out that there was certainly something that I wouldn't

7     have considered because I wouldn't have known it, and I

8     wanted a chance for everybody to have their input.  I think

9     that that happened at that meeting, and certainly with this

10    circulating of the proposed order so --

11         MR. FINK:  Your Honor, I do want to say how much

12    all of the parties appreciated having the meeting and you

13    being present also because there really were more issues than

14    any of us realized before we started talking.

15         THE COURT:  I know, that was very interesting.

16         MR. FINK:  It was a surprise -- some of us were

17    surprised, but I think what the Court described is exactly

18    where we ended up and we are all comfortable and some of the

19    wording and some of the preambulatory language I know is a

20    concern to defendants and we will work that through very

21    quickly.

22         I do want to take this opportunity because I don't

23    know if I will have this again to express to the Court how

24    much we appreciated working with Eric Westenberg and how much

25    we will miss him.

1          THE COURT:  As will I.

2          MR. FINK:  I have to say, I was introduced to the

3   intern this morning, your intern, and explained to him

4   because I thought it was appropriate for him to know that

5   this is a pretty standard case, you get a lot of these in

6   here, and he should understand this is just what he's going

7   to be dealing with in all of the cases that he faces through

8   the years so --

9          THE COURT:  Thank you.

10          MR. FINK:  Thank you.

11          THE COURT:  And I would formally like to thank Eric

12   too.

13          Mr. Iwrey?

14          Eric is going with the Court of Appeals for a

15   two-year clerkship with Judge Griffen in Traverse City.  Poor

16   thing, he's moving to Traverse City.

17          MR. IWREY:  Congratulations, and we'll miss you.

18          Your Honor, I think we agree with the plaintiffs on

19   most of the protocol for the numbering and the appearance

20   protocols and the captioning protocols.  As Mr. Fink

21   mentioned, we did have some issues with the very last draft

22   that we were sent while I was away that seemed to want to

23   transform this into an overall consolidation order for the

24   other cases, which we would object to for the reasons that I

25   stated earlier because those parties should have a chance to

1   object not only to appointment of lead counsel but whether it

2   is appropriate to consolidate it, whether there are common

3   issues, et cetera, and we couldn't take a position on that as

4   the wire harness people.  So my --

5           THE COURT:  I'm not sure where you are going with

6   common issues, et cetera.  I mean, this was a numbering

7   scheme.

8           MR. IWREY:  Right.

9           THE COURT:  And they are going to fit into this

10  scheme no matter --

11          MR. IWREY:  That's exactly my point.

12          THE COURT:  -- what counsel or who is representing

13  them.

14          MR. IWREY:  My point is that the draft we received

15  said OSS as well as bearings were consolidated, and we

16  couldn't stipulate to that because there were non-present

17  parties that have a right to address those issues.  I wanted

18  to limit this order just to the numbering protocols that we

19  discussed and leave those other issues about the

20  appropriateness of consolidation for another day when those

21  parties are all served and present.  So we will get you a

22  draft that hopefully will just be limited to the numbering

23  and appearance issues without prejudice to other issues such

24  as consolidation.

25          And I would add that in terms of --

1      THE COURT:  All right.  Because I would like to

2   know more about that.  I'm getting a little mixed up about

3   coordination, consolidation.  These maybe are magic words to

4   you but --

5      MR. IWREY:  I agree, Mr. Spector, it would be

6   coordination, I will agree with you on that.  Under Rule 42

7   would be the standard for cases that are only in the Eastern

8   District of Michigan.

9      THE COURT:  All right.

10      MR. IWREY:  So I would appreciate it if the CMO 3

11   would also reflect the right to object to those issues as

12   well by the other parties when the dust settles and they all

13   come to the Eastern District of Michigan or they all come

14   before the Court.

15      THE COURT:  I'm not sure that CMO 3 --

16      MR. IWREY:  My point is that the objections to the

17   non-present parties should be preserved --

18      THE COURT:  All right.

19      MR. IWREY:  -- for both lead and liaison counsel as

20   well as other issues such as Rule 42.

21      THE COURT:  Okay.

22      MR. IWREY:  Okay.

23      THE COURT:  Did you have a good trip?

24      MR. IWREY:  Yes.  Thank you very much, Your Honor.

25   It is very nice to be back.

Status Conference • August 1, 2012

1          THE COURT:  Good.  Welcome back.

2          Who is going to speak?

3          MR. FINK:  Your Honor, we are not competing here.

4    There is an issue that it will be helpful if we could -- I

5    hate to put it this way, but if we could have about a

6    five-minute break to speak among ourself we have an issue

7    that we think we may be able to resolve but we don't want to

8    get the Court involved in what's unnecessary mess, if you

9    will.

10          THE COURT:  Okay.  Do you need that right now?

11          MS. SALZMAN:  Hollis Salzman, Your Honor.

12          I think there's just some confusion, at least in my

13   mind, what the defendants are objecting to.  I don't think

14   the plaintiffs are saying that all of the six auto part cases

15   would be consolidated.  We are saying there should be

16   coordination among the cases.  What we are looking for from

17   the Court is a consolidation order for each of the subpart

18   cases within each product.  So, for example, for heating

19   control panels we need a consolidation order so that all of

20   the end-payor cases that are on file, there's about nine

21   end-payor cases, we want to file a consolidated amended

22   complaint so the defendants can respond and we can move the

23   litigation forward.  We need an order from the Court on

24   consolidation in that regard.

25          THE COURT:  Okay.  Is there any objection to that?

1        MR. SANKBEIL:  May I speak, Your Honor?

2        THE COURT:  You may.

3        MR. SANKBEIL:  William Sankbeil from Kerr, Russell

4   & Weber.  I'm only representing Fujikura in wire harness.

5        To follow up on what Mr. Iwrey said, the defendants

6   have no objection to the filing protocol order without added

7   verbiage.  What Ms. Salzman just said is she wants a

8   consolidation order, for example, with parties who are not

9   before the Court, and the wire harness defendants did not

10  want to speak to that issue.  For example, what you did in

11  wire harness is you had a status conference, you properly

12  went through procedures and orders of which order we will

13  proceed with a CMO, appointment of counsel.

14       As to the cases not in front of Your Honor, at

15  least the defendants, for example bearings and OSS, I don't

16  even know if all of those parties have been served.  What we

17  do know is the cases have been filed in the Eastern District

18  of Michigan, they weren't part of the panel order, and I

19  think what Mr. Iwrey has been referring to is just like any

20  other group of cases, if you have related cases filed in this

21  district, as you well know, Your Honor, different judges are

22  assigned, we have local protocol deciding which judge will

23  have those cases.  When they get to the judge there is a

24  decision as to coordination or consolidation under Rule 42.

25       All we are saying, the wire harness defendants, is

1   that we should not be expected to make stipulations on the

2   bearings cases will all be consolidated and coordinated

3   because we don't represent those people at this point.  There

4   will be counsel.  Now, if Your Honor wants to move forward

5   and have numbers in anticipation of where things will be

6   filed, that makes perfect sense, but it also makes perfect

7   sense for you to have in this order that an absent party can

8   object.  So we think they are taking the cart before the

9   horse and it is almost an ex-parte hearing relative to

10  bearings and OSS when those defendants haven't appeared.

11  That's all we are saying.  We just want a plain vanilla

12  protocol order.

13          THE COURT:  All right.

14          MR. SANKBEIL:  Thank you.

15          THE COURT:  Ms. Salzman?

16          MS. SALZMAN:  Hollis Salzman.  I think that we have

17  the wire harness case, then we have the three cases that were

18  subject of the last MDL order, that's the heating control

19  panel, the instrument panel cluster and the fuel senders

20  complaints.  Those parties have already appeared in those

21  cases and they were subject to the MDL, so certainly there

22  would not be an issue with notice for those cases.

23          If on the last two cases the -- my memory --

24          THE COURT:  The bearings and occupant safety?

25          MS. SALZMAN:  Thank you.

1          THE COURT:  It's all right, I have a list.

2          MS. SALZMAN:  Thank you.  If the Court feels

3   comfortable having language in those orders to allow parties

4   to later come in and object I think that's acceptable at

5   least for the end-payors.

6          THE COURT:  Okay.  I know you asked for a break.  I

7   don't know if that's still necessary with this discussion.

8   Let's proceed a little bit and just see.

9          I think that the instrument panel and fuel sender

10  and the heater control panel are ready to proceed to the next

11  step.  The next step would be I believe the consolidate --

12  the filing of the consolidated amended complaint.  And as to

13  the other two -- yes, sir?

14         MR. SANKBEIL:  May I suggest that even -- I agree

15  with Ms. Salzman, that's why I make reference to bearing and

16  OSS, I understand what Your Honor did June 15th.  May I

17  suggest that we get CMOs in fuel senders and the other parts

18  which will then give dates for CACs, motions to dismiss, just

19  like we did in wire harness?

20         THE COURT:  We will.

21         MR. SANKBEIL:  Maybe I misunderstood, I apologize

22  if I did, but I thought there was a request to set a date for

23  a CACs now.  What I'm suggesting is in those cases with those

24  defense counsel come up with a CMO in each case setting the

25  dates for the various activities.  On the other two cases,

```
 1    that was all I was speaking to on bearings and OSS, as to I

 2    think they should be removed from that type of thing.

 3              MR. KANNER:  Your Honor, Steve Kanner, one of the

 4    co-leads for direct cases.

 5              I think that's exactly what we suggested to do by

 6    setting a status date some time in December by which time --

 7              THE COURT:  December?

 8              MR. KANNER:  I'm sorry, September, forgive me.

 9    Somehow December and vacation is in the mind.  But I think

10    that's --

11              THE COURT:  Scratch that.

12              MR. KANNER:  That's exactly what we would like to

13    do.

14              And with respect to the other cases, the OSS and

15    bearings, it seems to me that the MDL order transferring

16    these matters before, you made it clear that anything in the

17    auto parts related area is going to end up in this district

18    before Your Honor.  I am not sure if it makes sense to set

19    impediments in terms of the smooth transitioning of these

20    cases to get in front of this Court and to get them

21    scheduled.  I am not sure what -- I get what the defendants

22    are saying but I know that these aren't the same counsel that

23    are going to be appearing for those defendants.  I think in

24    any situation if a case is filed in auto parts it is going to

25    end up before Your Honor, and why it is that we don't take
```

```
 1    all of the steps to organize those makes very little sense.
 2    In fact, it seems to me that it adds to the number of
 3    hearings like this that we are going to have before Your
 4    Honor.  One of the things that we promised this Court was to
 5    do our best to enhance the efficiencies and not have
 6    two-dozen lawyers, not that Detroit is not great at this time
 7    of the year, but flying in for things that really ought to be
 8    handled administratively.
 9          THE COURT:  Let me step back and ask you -- don't
10    leave.  Let me step back and ask you what do you envision?
11    Now, remember that wire harness was like our template, that
12    case management order for, number one, for what we were going
13    to do.  So given that, what is your vision of the next step
14    in these proceedings?
15          MR. KANNER:  With respect to OSS and bearings or
16    in --
17          THE COURT:  The other five parts.  You can separate
18    them, three and two.
19          MR. KANNER:  Certainly.  I think what we envisioned
20    is ultimately a schedule whereby at the very least status
21    hearings before this Court are one docket call after another.
22    In other words, if we have something up on wire harness that
23    day and, in fact, it would make sense for a general status
24    hearing to contemplate each of the products.  There may be
25    nothing new on a particular product but it is essentially a
```

1    clearinghouse for each of these cases.  To me that is the

2    efficiency that I believe we ought to hold up as a light in

3    complex cases like this.  And very similar, candidly, to what

4    Mr. Spector was talking about in terms of what happened in

5    the AWP cases, there is a way to run these cases in a

6    streamlined format taking due concern for the rights of all

7    parties, both defendants and plaintiffs' counsel -- and

8    plaintiffs, and the concerns that the various counsel might

9    have.  That's what I would envision.

10                THE COURT:  Okay.  So let me just stop you.  So

11   let's say sometime in September we would have a status

12   conference for all parts, they would be sequential but we

13   would have it at the same time basically, so we'll have one

14   status conference, that would be the next step.  At that

15   point, as we did with the wire harness, we would determine a

16   date for filing the complaints?

17                MR. KANNER:  The CACs, consolidated amended

18   complaints.

19                THE COURT:  Yeah, is that what you envisioned?

20                MR. KANNER:  Absolutely.  I'm hoping by September,

21   for example, we can work out a lot of those -- the timing

22   issues with respect to filing consolidated amended complaints

23   on each of these cases with defense counsel.

24                THE COURT:  Okay.

25                MR. KANNER:  The more we can do the more we can

 1    make these status conferences less arguing about the details

 2    on dates and more about substantive issues.

 3            THE COURT:  All right.  My plan was to have a

 4    status conference.  We had talked about it before as I recall

 5    the last time we were here for September anyway.

 6            MR. KANNER:  Okay.

 7            THE COURT:  We said September, October.  September

 8    is fine.  So I think we will do that, and we will follow

 9    pretty much the outline -- I don't have it here so I can't

10    remember exactly what was in it but in that first case

11    management order that we did, and we will repeat that for all

12    of the other parts.

13            MR. KANNER:  We certainly think that makes sense,

14    Your Honor.

15            THE COURT:  Ms. Salzman?

16            MS. SALZMAN:  Your Honor, what I might suggest is

17    that the parties prepare case management orders modeled after

18    the wire harness case management order that sets out a date

19    for filing consolidated amended complaints and a schedule to

20    either move to dismiss or answer those complaints similar to

21    what we did in wire harness, and that the parties over the

22    next week to ten days attempt to negotiate that language for

23    the cases and if not submit that to Your Honor for

24    consideration.  Then in September when we are here for a

25    status conference the case will be moved on to a greater

1    extent and we'll have more to report to the Court about.

2        I don't think it is a good idea to wait until

3    September or October to have a consolidated amended complaint

4    schedule that delays the case, I think, unnecessarily.

5        THE COURT:  Okay.

6        MR. SANKBEIL:  I agree with Mr. Kanner, and I agree

7    with the Court, that the first order that should be entered

8    in each case -- I would rather use the word each part as

9    opposed to all parts.  They are separate cases.

10       THE COURT:  All right.

11       MR. SANKBEIL:  There's going to be separate

12   counsel.  In many of the cases there's no overlap of

13   defendants.

14       As I understand the first order Your Honor is

15   contemplating entering is the order in this case where you

16   gave the protocol of what you wanted to discuss which

17   included various issues.  And I agree with Mr. Kanner if you

18   schedule and notice in each case that status conference and

19   what you expect to accomplish, that's the way to proceed.

20   You will have represented parties.  We are only here for the

21   wire harness defendants and for Your Honor to enter an order

22   for absent defendants telling them that they are going to

23   discuss this or that when I don't even know if they have been

24   served.

25       THE COURT:  Okay.  Let me do this.  I think I have

1    heard what you have to say.  I am going to follow the same

2    procedure as we did in the wire harness case, and the next

3    event will be a status conference for each part.  I'm looking

4    at my calendar so while you are all here if you would look at

5    your calendars.

6         MR. SANKBEIL:  Can I make a request?  I'm a sole

7    arbitrator in a case the last two weeks of September starting

8    the 17th.

9         THE COURT:  So it has to be before the 17th?

10        MR. SANKBEIL:  Or after.

11        MR. FINK:  We just want to note that Mr. Sankbeil

12   has taken out of consideration all of the Jewish holidays

13   which is what we were concerned about.

14        THE COURT:  That would be the last part of

15   September.  Okay.  I'm hearing rumblings.  Are you looking at

16   the first of October?

17        MS. SALZMAN:  I don't know if this suits everyone's

18   schedules but the opposition to the motion to dismiss in the

19   wire harness case are due on September 11th, so perhaps

20   September 12th or 13th would be a suitable date.  I don't

21   know what --

22        MR. SANKBEIL:  May I ask one question?  I thought

23   there -- wasn't there going to be a filing on the status of

24   service?  Where are you all on service because that may have

25   an effect on each of the other cases?  It is just a question.

1          MS. SALZMAN:  Right.  As I said, the MDL -- for the

2    three cases that have already run through the MDL those

3    defendants have been served.

4          MR. SANKBEIL:  Okay.

5          MS. SALZMAN:  The domestic defendants in the

6    bearings -- at least for the end-payor cases in the bearings

7    and the safety restraint system cases, the domestic

8    defendants have been served and, in fact, the Court has

9    entertained stipulations on due dates for those complaints as

10   it stands to the end-payors.  The foreign service for one of

11   those is still outstanding.

12         MR. SANKBEIL:  I just inquired because we don't

13   want to run into a service --

14         THE COURT:  Yes, you want to get as many people

15   served as you can before that meeting.  I think the middle of

16   September meeting would be better until waiting to October,

17   so --

18         MR. KANNER:  The 13th or the 14th are clear in

19   terms of having -- they are not good for you?

20         MR. WILLIAMS:  No.  Of those that are out there if

21   we can do September 12th?

22         THE COURT:  How is September 12th?

23         MR. KANNER:  That works.

24         THE COURT:  Let's do September 12th.  We will

25   follow the same schedule, 10:00.  I'm going to ask liaison

```
 1   counsel to prepare a notice of the conference in that first
 2   case management order as we have talked about so that we will
 3   know -- I want you all to have the same input.  If you will
 4   recall we asked for the agenda from counsel so if you have
 5   any items that you want discussed on the agenda please submit
 6   it, and that will be put in the order so you know your dates.
 7            I wanted to put off the filing in any event of the
 8   consolidated complaints until we have the order in on the
 9   numbering -- the structure because I want everybody to get
10   into using the new structure, better that we start it now.
11            I will say the wire harness cases which are, of
12   course, already filed and done, they will be put into this
13   new structure by the court staff manually, so they will be in
14   the same CM/ECF structure as everything else.
15            MR. KANNER:  Will there be an ECF notice to all
16   counsel when the new structure is actually in place?
17            THE COURT:  Yes, yes.  We will send out -- we will
18   do the ECF notice and you will all know on the specific date
19   that we start with the new structure, and hopefully it will
20   go without a hitch.
21            Oh, I know what I wanted to tell you.  In using
22   this new structure, as I said, the very first digit is a
23   letter here like W for wire harness.  Usually it is what, 2
24   for Detroit, 5 for Ann Arbor, it is the location of the court
25   if you are familiar -- I know you are familiar with the
```

1    numbering system.  So that first digit is the location of the

2    court.  We are using that to put a letter in to describe the

3    part, and each part will have its own letter.

4         There is one time a month for about ten minutes I'm

5    told when there is a report that has to be done by location

6    and those letters will all be swapped out for a number.  So

7    if you happen to hit the docket at that time -- I mean, if

8    you ever run into a problem give yourself about ten minutes

9    and then start it again.  I think this is run during the

10   night but my experience now is people file all times of day

11   and night.  I just want to warn you, it is just a little

12   glitch so we can use that first digit, but that's the only

13   time that it happens is once a month.  Okay.

14        All right.  Then let me check my notes here.  Can

15   we have a deadline for that docket protocol?

16        MR. FINK:  Your Honor, having resolved as much as

17   we have now I don't see how we can take past -- the latest

18   would be Monday.  I'm sorry, I can't speak for Howard.  You

19   should have seen the face.

20        THE COURT:  He's still in vacation mode.  He needs

21   a little more time.

22        MR. IWREY:  We will get you a draft within the next

23   couple of days that just limits it to the issues on

24   appearance and protocols preserving any rights for objections

25   as we discussed so we will --

1     THE COURT:  This is Wednesday, I think you can do

2  it by Monday.

3     MR. FINK:  There shouldn't be any controversy, Your

4  Honor.

5     THE COURT:  Okay.  I'm going to give you all of

6  Monday to complete it, and by Tuesday I would like to see it.

7     MR. FINK:  Your Honor, I have one question.

8     THE COURT:  Yes.

9     MR. FINK:  The Court indicated liaison counsel

10  should prepare a notice of the conference with the date we

11  set.  I assume this is to be prepared to provide to the

12  Court?

13     THE COURT:  Right, that's fine.  I think in our

14  last one we had case management and notice of hearing just

15  so -- not notice of hearing but notice of conferences, yes,

16  we will do that.

17     MS. SALZMAN:  We are also going to be resubmitting

18  the order in the next couple of days to you on leadership

19  with the provision for objections.

20     THE COURT:  Yes, that order that is known as case

21  management order 3.

22     MS. SALZMAN:  Yes.  Then also when do you want us

23  to provide you with consolidation orders at least for the

24  three cases that have already run through the MDL and we know

25  that counsel is present?

1    THE COURT:  I don't know what you mean by
2  consolidation orders that you are talking to specifically.
3    MS. SALZMAN:  Similar to the case management order
4  that was entered in the wire harness case, I believe it might
5  be --
6    THE COURT:  I think that's going to be after the
7  status conference.
8    MS. SALZMAN:  So we are not going to move for
9  consolidation until after the status conference?
10    THE COURT:  Right.  I think that would work the
11  best.  We have that status conference really in another month
12  so it is not going to be -- okay.  Let me see if there is
13  anything else?  No.  I think that covers it all.  Does
14  anybody have anything that they wish to bring to the Court's
15  attention?  Okay.
16    Again, when we send out that notice everyone will
17  get notice, whoever wants to come is welcome to come.  Of
18  course, you have to decide among yourselves, I do need a
19  representative of both sides and all parties just to make
20  sure we have all bases covered but I think that's it.
21    Anything else?  All right.  Thank you all very,
22  very much.
23    ATTORNEYS PRESENT:  (Collectively)  Thank you, Your
24  Honor.
25    THE CASE MANAGER:  All rise.  Court is in recess.

```
 1              (Proceedings concluded at 10:45 a.m.)

 2                            _    _    _

 3

 4                          CERTIFICATION

 5

 6              I, Robert L. Smith, Official Court Reporter of

 7    the United States District Court, Eastern District of

 8    Michigan, do hereby certify that the foregoing pages comprise

 9    a full, true and correct transcript taken in the matter of

10    Automotive Parts Antitrust Litigation, Case No. 12-md-02311,

11    on Wednesday, August 1, 2012.

12

13                            s/Robert L. Smith
                              Robert L. Smith, CSR 5098
14                            Federal Official Court Reporter
                              United States District Court
15                            Eastern District of Michigan

16

17

18    Date:  08/03/2012

19    Detroit, Michigan

20

21

22

23

24

25
```