# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS SYSTEMS CASES** | |
| **THIS RELATES TO:** | |
| **ALL DEALERSHIP ACTIONS**<br>**ALL END-PAYOR ACTIONS** | W:12-cv-00102-MOB-MKM<br>W:12-cv-00103-MOB-MKM |

# END-PAYOR AND AUTOMOBILE DEALER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT FUJIKURA AMERICA, INC.'S MOTION TO DISMISS ALL ACTIONS

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

Where, as here, a foreign parent corporation has pleaded guilty to participating in a criminal conspiracy to fix prices and allocate customers in the United States, is it reasonable to infer, at the pleading stage, that its United States subsidiary was a member of that conspiracy where the complaint alleges:  (1) a wide-ranging conspiracy to fix prices in the United States; (2) that the foreign parent of the United States subsidiary has pleaded guilty to participating in a conspiracy to fix prices in the United States; (3) that the United States subsidiary is wholly owned and controlled by the foreign parent; (4) that the foreign parent used the United States subsidiary as the entity through which it accomplished its conspiratorial ends; and (5) that the United States subsidiary was a participant in the conspiracy?

**<u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>**

**<u>Cases</u>**

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

*In re Elec. Carbon Products Antitrust Litigation*, 333 F. Supp. 2d 303 (D.N.J. 2004)

*In re Packaged Ice Antitrust Litigation*, 723 F. Supp. 2d 987 (E.D. Mich. 2010)

**<u>Rules</u>**

Fed. R. Evid. 201

# **TABLE OF CONTENTS**

Page

STATEMENT OF THE ISSUE PRESENTED ......................................................... i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................... ii

TABLE OF AUTHORITIES ................................................................................... iv

PRELIMINARY STATEMENT ............................................................................... 1

SUMMARY OF EP AND AD AMENDED COMPLAINTS ..................................... 2

FJP'S PLEA AGREEMENT .................................................................................... 3

ARGUMENT ........................................................................................................... 4

      A.      The Allegations Against FAI Satisfy *Twombly's* Plausibility
            Requirements ......................................................................................... 4

      B.      FJP's Plea Agreement Further Allows For The Reasonable
            Inference That FAI Participated In The Conspiracy ............................. 11

CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-MD-1775, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009).............................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................... *passim*

*Carrier Corp. v. Outokumpu Oyj*,
   673 F.3d 430 (6th Cir. 2012).............................................................................. *passim*

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962)...............................................................................................6

*Cupp v. Alberto-Culver USA, Inc.*,
   310 F. Supp. 2d 963 (W.D. Tenn. 2004).................................................................10

*In re Elec. Carbon Products Antitrust Litig.*,
   333 F. Supp. 2d 303 (D.N.J. 2004) .........................................................................9

*Hinds County v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009) ...............................................................10, 11

*In re Optical Disk Drive Antitrust Litig.*,
   No. 10-md-2143, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012).................................5

*In re Packaged Ice Antitrust Litigation*,
   723 F. Supp. 2d 987 (E.D. Mich. 2010)...........................................................3, 5, 6

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   566 F. Supp. 2d 363 (M.D. Pa. 2008) ....................................................................6

*Precision v. Kenco/Williams, Inc.*,
   66 F. App'x 1 (6th Cir. 2003) ...............................................................................8

*RSM Production Corp. v. Petroleos De Venezuela Societa Anonima*,
   338 F. Supp. 2d 1208 (D. Colo. 2004)...................................................................10

*In re Title Insurance Antitrust Cases*,
   702 F. Supp. 2d 840 (N.D. Ohio 2010)...................................................................9

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
   552 F.3d 430 (6th Cir. 2008)...........................................................................10, 11

iv

*In re Travel Agent Commission Antitrust Litig.*,
   No. 1:03 CV 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007)..................................10, 11

**RULES**

Fed. R. Evid. 201 ...............................................................................................................3

The End-Payor Plaintiffs ("EP") and Automobile Dealer Plaintiffs ("AD") (together, "Plaintiffs"), by and through their counsel, submit this Memorandum in Opposition to Defendant Fujikura America, Inc.'s ("FAI") Motion To Dismiss All Actions[1], and in support hereof state[2]:

## PRELIMINARY STATEMENT

Contrary to FAI's contentions, the Amended Complaints' (defined below) allegations as to FAI do not hinge upon the sole fact that FAI was a mere participant in the market for Automobile Wire Harness Systems ("AWS")[3]. The Amended Complaints allege that: (1) FAI's corporate parent, Fujikura Ltd. ("FJP"), pleaded guilty to participating in the conspiracy alleged in the Amended Complaints; (2) FAI is wholly owned and controlled by FJP; and (3) FAI was the entity through which FJP sold its price-fixed products in the United States. Under controlling Sixth Circuit law nothing more is required. Accordingly, FAI's motion to dismiss must be denied.

But there is an additional reason to deny FAI's motion. The plea agreement entered into between the United States and FJP directly implicates FAI in the criminal price-fixing conspiracy alleged here. As discussed below, the Amended Complaints provide sufficient detail

---

[1]  FAI's Motion is hereinafter cited as FAI Mem. at __.

[2]  The Direct Purchaser Plaintiffs are contemporaneously filing their own brief in opposition to FAI's Motion.

[3]  AWS are automotive electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in an automotive vehicle. EP AC ¶ 3; AD AC ¶ 3. The EP's Corrected Consolidated Amended Class Action Complaint defines AWS to include the following: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, and speed sensor wire assemblies. EP AC ¶ 3. The AD's Consolidated Class Complaint defines AWS to include the following: automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automobile wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, high voltage wiring and power distributors. AD AC ¶ 3.

concerning FAI's involvement in the conspiracy, such that FAI has received ample notice of the claims made against it.

## SUMMARY OF EP AND AD AMENDED COMPLAINTS

The EP's Corrected Consolidated Amended Class Action Complaint ("EP AC") and the AD's Consolidated Amended Class Action Complaint ("AD AC") (together, "Amended Complaints") identify all of the defendants, including FAI, as entities that manufacture, market, and sell AWS throughout the United States.  EP AC ¶ 4; AD AC ¶ 4.  The Amended Complaints further allege that the defendants, including FAI, "agreed, combined, and conspired to inflate, fix, raise, maintain, or artificially stabilize prices" of AWS and to allocate markets for AWS.  EP AC ¶¶ 5, 232; AD AC ¶¶ 5, 256.

The Amended Complaints explain that several defendants, including FAI's parent, FJP, have pleaded guilty to participating in a cartel to fix prices of AWS sold in the United States since as early as January 1, 2000, which involved  rigging bids for, fixing, stabilizing and maintaining the prices of AWS sold in the United States.  EP AC ¶¶ 6, 186; AD AC ¶¶ 7-11.  The Amended Complaints further allege that FJP, directly or through "the ownership and/or control of its United States subsidiaries . . . engaged in an illegal price-fixing conspiracy."  EP AC ¶ 13; AD AC ¶ 16.  The Amended Complaints allege that FJP "wholly owned and/or controlled" its subsidiaries, including FAI, and manufactured, marketed and/or sold AWS that were purchased throughout the United States directly through its subsidiaries.  EP AC ¶ 86; AD AC ¶ 91.  With respect to FAI, the complaint alleges that it was wholly owned and/or controlled by FJP and at all times during the Class Period FAI's "activities in the United States were under the control and direction of its Japanese parent [FJP]."  EP AC ¶ 87; AD AC ¶ 92.

The Amended Complaints further allege that in furtherance of their unlawful conspiracy, defendants, including FAI, regularly attended the annual North American International Auto Show in Detroit, Michigan and the Automotive Aftermarket Products Expo in Las Vegas.  EP AC ¶ 163; AD AC ¶ 167.  The Amended Complaints allege that FJP agreed to plead guilty to engaging in the conspiracy to rig bids, fix, stabilize and maintain prices of AWS in violation of the Sherman Act, 15 U.S.C. § 1.  EP AC ¶ 186; AD AC ¶¶ 207-08.

### FJP'S PLEA AGREEMENT[4]

On June 21, 2012, FJP  pleaded guilty to participating "in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to an automobile manufacturer in the United States and elsewhere . . ."  FAI Mem. at Ex. B ¶¶ 2-3.  The plea agreement explains that if a trial had been conducted, the United States would have proven that FJP, though "certain of its employees participated in a conspiracy with other persons and entities engaged in the manufacture and sale of automotive wire harnesses and related products."  *Id.* ¶ 4(b).  The conspiracy involved allocating the supply of automotive wire harnesses and related products, rigging bids to an automobile manufacturer in the United States, and agreements to fix prices.  *Id.*  The plea agreement further states that the products that were the subject of the conspiracy were sold to an automobile manufacturer "***by the defendant's***

---

[4]   The Court can take judicial notice of FJP's plea agreement.  *See* Fed. R. Evid. 201; *see also In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 998 n.5 (E.D. Mich. 2010) ("*Packaged Ice*") (taking judicial notice of plea agreement).  To the extent that the Court elects not to take judicial notice of the facts set forth in FJP's plea agreement, Plaintiffs request leave to amend their complaints to allege the facts set forth above.

***United States subsidiary, which is located in the Eastern District of Michigan.***"[5]  *Id.* ¶ 4(d) (emphasis added).

The plea agreement provides that "[t]he defendant and its subsidiaries will cooperate fully and truthfully with the United States" in the conduct of the case and its investigation of violations of federal antitrust and related criminal laws.  *Id.* ¶ 11.  The cooperation will include the production of documents by FJP and its subsidiaries, obtaining cooperation of former directors, officers and employees of, among others, its subsidiaries.  *Id.* ¶ 11(a)-(b).  The plea agreement further provides that upon acceptance of the agreement, the United States will not bring further criminal charges against, among other entities, FJP's subsidiaries arising out of the conspiracy.  *Id.* ¶ 13.  FJP further agreed that if the United States determined that it or its subsidiaries had failed to provide truthful and continuing cooperation, that the United States could elect to subject FJP or its subsidiaries to criminal prosecution and that the United States would have the right, among other things, to prosecute both FJP and its subsidiaries for the conspiracy set forth in the plea agreement.  *Id.* ¶ 19.

## ARGUMENT

### A.    The Allegations Against FAI Satisfy *Twombly's* Plausibility Requirements[6]

As set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), dismissal is only appropriate where plaintiffs fail to plead sufficient factual allegations to make their claim plausible on its face.  This does not mean that a heightened pleading requirement exists – rather

---

[5]  As reflected on the Fujikura web site, FAI is the Fujikura subsidiary doing business in the Eastern District of Michigan.  http://www.fujikura.com/contact/index.html.

[6]  Plaintiffs adopt and incorporate by reference the arguments advanced in:  (1) Direct Purchaser Plaintiffs' Response in Opposition to Defendants' Collective Motion to Dismiss; and (2) End-Payor Plaintiffs and Auto-Dealer Plaintiffs' Memorandum of Law in Response to Defendants' Collective Motion to Dismiss.

the complaint need only allege sufficient facts to nudge the claim across the line from conceivable to plausible. *Id.; see also Packaged Ice*, 723 F. Supp. 2d at 1002. "If the Court can discern some 'factual enhancement' pointing toward, or suggesting a basis for inferring, an illegal agreement, the motion to dismiss must be denied." *Id.* at 1004 (quoting *Twombly*, 550 U.S. at 556-57). Furthermore, government investigations and guilty pleas by some, but not all, of the defendants support the plausibility of Plaintiffs' allegations even where the guilty pleas do not encompass the entire conspiracy alleged in the complaint. For example, in *Packaged Ice*, certain defendants pleaded guilty to a conspiracy that was limited in geographic scope to Southeastern Michigan. Yet, the Court found that these pleas were sufficient to lend plausibility to plaintiffs' allegations of the existence of a nationwide conspiracy against all defendants. 723 F. Supp. 2d at 1008-12; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2009 WL 3443405, at *1 (E.D.N.Y. Aug. 21, 2009) (existence of numerous guilty pleas suggestive enough to render plaintiffs' conspiracy allegations plausible); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143, 2012 WL 1366718, at *2 (N.D. Cal. Apr. 19, 2012) (guilty pleas are relevant to the plausibility of plaintiffs' conspiracy claims).

The allegation that numerous defendants have pleaded guilty to participating in a conspiracy to fix prices of AWS sold in the United States renders Plaintiffs' conspiracy allegations plausible. The Amended Complaints allege that FAI was a participant in this conspiracy. *See, e.g.,* EP AC ¶¶ 4, 5. For purposes of a motion to dismiss, that is all that is needed to lend plausibility sufficient to sustain Plaintiffs' claims against FAI. But, the Amended Complaints are not limited to these allegations.

The Amended Complaints allege that FJP pleaded guilty to participating in the conspiracy. In its guilty plea, Fujikura directly implicates FAI as playing a material role in the

effectuation of this conspiracy in the United States.  Specifically, FJP's guilty plea identifies FAI as the entity through which FJP sold the price-fixed products in the United States.  Finally, a material term of FJP's plea agreement was that FAI, as one of FJP's subsidiaries, provide cooperation to the United States regarding the conspiracy.  If FAI fails to provide cooperation, the United States reserves the right to prosecute it for participating in this illegal conspiracy.

One of the key components of the conspiracy, as reflected in FJP's guilty plea and the guilty pleas of other defendants, was rigging bids for individual models of cars made by various manufacturers, including those located in the United States.  It is a fair inference from the facts alleged that FAI, as FJP's wholly-owned U.S. subsidiary, participated in the conspiracy.  Thus, at a minimum, the foregoing facts, taken as a whole,[7] lend plausibility to Plaintiffs' allegations that defendant FAI was a participant in the unlawful conspiracy.  These allegations are sufficient to "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.  This is particularly so, where, as here, the United States has demanded the cooperation of FAI in its further criminal investigation of the conspiracy in the United States and FJP has agreed that FAI will provide such required cooperation.

The Sixth Circuit's recent decision in *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012), is instructive.  There, the Court held that "requiring [plaintiffs] to delineate in the complaint the role each subsidiary played in the conspiracy is unnecessary."  *Id.* at 445-46.  In *Carrier*, plaintiffs alleged that several defendant groups participated in an unlawful conspiracy to fix the prices of air conditioning and refrigeration copper tubes ("ACR Copper Tubes").  *Id.* at

---

[7]   The complaint's allegations are not to be dismembered and must be read as a whole. *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole"); *Packaged Ice*, 723 F. Supp. 2d at 1017; *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 373-74 (M.D. Pa. 2008).

436. One of the defendant groups included Finnish based Outokumpu Oyj ("OTO"), its wholly owned Finish subsidiary, Outokumpu Copper Products Oy ("OCP"), and OCP's two American subsidiaries, Outokumpu U.S.A. and Outokumpu Franklin (together, "U.S. Subsidiaries").  *Id.* at 435.  Prior to the filing of the complaint, the European Commission ("EC) issued two decisions. The first decision found that OTO and OCP, among others, engaged in a conspiracy to fix prices for industrial tubes.  The second decision found that OTO and OCP, among others, engaged in a separate conspiracy with respect to plumbing tubing.  *Id.* at 435-36.  Notably, the EC's finding did not relate to the same product as that alleged in the civil complaint nor did it implicate the U.S. Subsidiaries or even suggest that the conspiracies extended beyond the European markets.[8] *Id.* at 436.

In moving to dismiss the complaint, OCP's U.S. Subsidiaries, like FAI here, argued that there were insufficient allegations in the complaint as to their "specific involvement" in the conspiracy.  *Id.* at 445.  Indeed, the court in *Carrier*, characterized the U.S. Subsidiaries' arguments in a similar fashion to those made by FAI here:  "The two U.S. entities' argument stems from [plaintiffs'] frequent use of the blanket references to the 'Outokumpu defendants,' without always specifying the role that each corporate entity played in the conspiracy."  *Id.* Additionally, the U.S. Subsidiaries argued that neither of the EC decisions attributed any liability to them.  *Id.*

The Sixth Circuit rejected these arguments and held that "[e]ven in the absence of direct allegations that Outokumpu's U.S. entities were coconspirators . . . , the court may look beyond

---

[8]   Accordingly, the factual allegations giving rise to the plausible inference of a U.S. conspiracy were far weaker in *Carrier* than here, where numerous defendants, including FAI's parent FJP, have pleaded guilty to fixing prices of wire harnesses sold in the United States and where FJP has directly implicated FAI in that conspiracy.

those entities' corporate forms if the complaint presents facts to support a determination that the

subsidiaries were alter egos of the parent corporation." *Id.* For purposes of the motion to

dismiss, the Court of Appeals found that the plaintiffs' allegations were sufficient where the

complaint alleged that: (1) the U.S. Subsidiaries were responsible for selling the price-fixed

tubing directly to plaintiffs; (2) the U.S. Subsidiaries sold the price-fixed tubing in the United

States; and (3) the various Outokumpu entities were "operated and deliberately portrayed to the

outside world as a 'single global enterprise' in which key executives overlapped." *Id.*

Accordingly, the Sixth Circuit concluded:

> Under such circumstances, requiring [Plaintiffs] to delineate in the
> complaint the role each subsidiary played in the conspiracy is
> unnecessary, and [Plaintiffs'] allegations against Outokumpu's
> U.S. entities are sufficient to survive the motion to dismiss.

*Id*. at 446.[9]

The factual allegations here are sufficiently analogous to those pleaded in *Carrier Corp*.

to require denial of FAI's motion. The Amended Complaints expressly plead that each of the

foreign defendants, including FJP, directly or through "the ownership and/or control of its United

States subsidiaries . . . engaged in an illegal price-fixing conspiracy." EP AC ¶ 13; AD AC ¶ 16.

The Amended Complaints further allege that FJP "wholly owned and/or controlled" its

subsidiaries, including FAI, and directly and through its subsidiaries manufactured, marketed

and/or sold wire harnesses that were purchased throughout the United States. EP AC ¶ 86; AD

---

[9] FAI's citation to *Precision, Inc. v. Kenco/Williams, Inc.,* is inapplicable here. 66 F. App'x
1, 4 (6th Cir. 2003). Def. Mem. at 2 n.3. *Kenco* addressed whether a parent corporation could be
held liable for breach of contract committed by its subsidiary and applied traditional corporate
veil piercing principles in determining that the parent was not liable. *Carrier*, decided
subsequent to *Kenco*, sets forth the standard in this Circuit for determining whether a plaintiff is
required "to delineate in the complaint the role each subsidiary played in the conspiracy" and, as
such, it clearly controls here. 673 F.3d at 446.

AC ¶ 91.  Most importantly, the Amended Complaints allege that FAI was wholly-owned and/or controlled by FJP and at all times during the Class Period, FAI's "activities in the United States were under the control and direction of its Japanese parent."  EP AC ¶ 87; AD AC ¶ 92.[10]  Thus, based upon these allegations of corporate unity and control by its parent, FJP, it is not necessary for the Amended Complaints to delineate the role that FAI "played in the conspiracy" with any greater precision.  *Carrier,* 673 F.3d at 446; *see also In re Elec. Carbon Prods. Antitrust Litig.,* 333 F. Supp. 2d 303 (D.N.J. 2004) (allegations that U.S. subsidiaries participated in conspiracy sufficient where complaint alleged that parent corporation had been fined by the EC relating to its participation in an international conspiracy).[11]

As such, FAI's contention that Plaintiffs' allegations are insufficient (Def. Mem. at 2) is directly contrary to Sixth Circuit and other applicable precedent.  Moreover, the cases cited by FAI in support of its argument – none of which involved instances in which a corporate parent pleaded guilty – are inapposite.  For instance, in *In re Title Insurance Antitrust Cases*, 702 F. Supp. 2d 840 (N.D. Ohio 2010), the plaintiffs' entire claim was dismissed with prejudice. Nevertheless, in a footnote, the court noted that the claims made against the corporate parents for the alleged acts of their subsidiaries should also be dismissed because "a corporate parent Defendant could not be liable under the Sherman Act merely for approving or assenting to the actions of its affiliate or subsidiary."  *Id.* at 878 n.28.  FAI does not and cannot dispute that there is a material difference between corporate liability flowing upstream from a subsidiary to its

---

[10]   *See also*, http://www.fujikura.com/ (Fujikura's web site listing America as part of its global network) and http://www.fujikura.co.jp/eng/history/table.html (under title "Age of Globalization New Technologies" noting FJP's creation of FAI in 2005).

[11]   In the unlikely event that the Court deems that FJP's control over FAI has not been sufficiently alleged, Plaintiffs seek leave to amend their complaints to plead additional allegations concerning FAI's participation in the alleged conspiracy.

parent and what is alleged here – corporate liability flowing downstream from a corporate parent

that wholly owns and controls its United States subsidiary as the instrumentality through which it

effectuated its unlawful conspiratorial actions in the United States.[12]

Similarly, FAI's reliance on *RSM Production Corp. v. Petroleos De Venezuela Societa*

*Anonima*, 338 F. Supp. 2d 1208, 1216 (D. Colo. 2004), is misplaced.  Like *Title Ins.*, plaintiffs'

entire complaint in *RSM* was dismissed.  With respect to the plaintiff's allegations as to

defendant CITGO, the court noted that "[t]he plaintiff's only allegation concerning CITGO is

that CITGO is alleged to be the wholly owned U.S. marketing arm of PDVSA . . . The fact that

CITGO is a wholly owned subsidiary of PDVSA, without more, does not subject CITGO to

liability on any basis."  *RSM*, 338 F. Supp. 2d at 1216.  As set forth above, far more has been

pleaded here than just the fact that FAI is FJP's wholly-owned subsidiary.  Contrary to FAI's

contentions, the Amended Complaints do not allege that FAI was merely a participant in the

market for AWS (Def. Mem. at 2), but instead allege that FAI was a full-fledged active

participant in the conspiracy that attended meetings and engaged in other conspiratorial conduct.

EP AC ¶ 163; AD AC ¶ 167.  Moreover, the Amended Complaints allege that FAI, as a wholly-

owned and controlled subsidiary of FJP, was expressly utilized by FJP to effectuate the illegal

conspiracy to fix prices and allocate customers and the supply of AWS in the United States.[13]

---

[12]  For the same reason, FAI's citation to *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d
963, 972-73 (W.D. Tenn. 2004), is unavailing.  There, the court dismissed a *pro se* complaint on
a multitude of grounds.  With respect to one defendant, the court noted that other than being the
parent company of one of the defendants, it had no connection whatsoever to plaintiff's
allegations.  Accordingly, under the circumstances, the "Court decline[d] to presume that a
parent company participates in every decision or action of its subsidiary."  *Id.* at 973.

[13]  For these reasons, FAI's citations to *Total Benefits Planning Agency, Inc. v. Anthem Blue
Cross & Blue Shield*, 552 F.3d 430, 436-37 (6th Cir. 2008), *Hinds County v. Wachovia Bank
N.A.*, 620 F. Supp. 2d 499, 512 (S.D.N.Y. 2009) and *In re Travel Agent Commission Antitrust
Litigation*, No. 1:03 CV 30000, 2007 WL 3171675, at *4 (N.D. Ohio Oct. 29, 2007) are

**B.**   **FJP's Plea Agreement Further Allows For The Reasonable Inference That FAI Participated In The Conspiracy**

As set forth above, *Twombly* merely requires that the fair inferences from the well-pleaded facts plausibly suggest a claim for relief.  The plea agreement entered into between the United States and FAI's parent, FJP, provides an independent basis, apart from the allegations of the Amended Complaints, upon which such reasonable inferences can be drawn.  In its plea, FJP admitted to participating in a conspiracy to rig bids, fix prices, allocate customers and allocate the supply of AWS.  FJP also admitted that its U.S. subsidiary, FAI, sold the price-fixed products that were the subject of this conspiracy.  Notably, the plea agreement also expressly provides that FAI, as a subsidiary of FJP, is required to provide cooperation to the United States in its further prosecution of this criminal conspiracy and that, if FAI fails to provide such cooperation, the United States can elect to prosecute FAI for violating the Sherman Act.  Thus, at the pleading stage, a reasonable inference can be made that FAI has knowledge of and information concerning the conspiracy.  Such knowledge, coupled with the fact that it was the entity through which FJP sold the price-fixed wire harnesses in the United States, would allow for a reasonable inference at the pleading stage that FAI participated in the conspiracy.

---

misplaced.  In *Total Benefits*, the plaintiff failed to allege any facts indicating that there was a conspiratorial agreement among any of the defendants.  552 F.3d at 436-37.  In *Hinds*, plaintiffs alleged only that certain defendants sold products in the conspiratorially affected market, but failed to plead the defendants' connection to the conspiracy.  620 F. Supp. 2d at 512.  And in *Travel Agent*, the plaintiffs did not even allege that the defendant, KLM, engaged in parallel conduct that comprised the alleged conspiratorial acts and, thus, on its face, KLM could not be tied to the conspiracy.  2007 WL 3171675, at *4.  Here, in light of the numerous guilty pleas, including that of FAI's parent, Plaintiffs' allegations of a conspiratorial agreement are clearly plausible to say the least.

11

## CONCLUSION

For the foregoing reasons, the End-Payor and Automobile Dealer Plaintiffs respectfully request that the Court deny FAI's motion to dismiss.


Dated:  September 11, 2012                **COTCHETT, PITRE & McCARTHY, LLP**


By   */s/ Frank C. Damrell*
Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com


**LABATON SUCHAROW LLP**


By   */s/ Hollis Salzman*
Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

**SUSMAN GODFREY L.L.P.**

By   */s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Interim Co-Lead Counsel for End-Payor Plaintiffs*

**THE MILLER LAW FIRM, P.C.**

By   */s/ E. Powell Miller*
E. Powell Miller (P39487)
Adam T. Schnatz (72049)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

*Interim Liaison Counsel for End-Payor Plaintiffs*

13

**MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.**

By    /s/ *Gerard V. Mantese*
Gerard V. Mantese (Michigan Bar No.
P34424)
David Hansma (Michigan Bar No. P71056)
Brendan Frey (Michigan Bar No. P70893)
Joshua Lushnat (Michigan Bar No. P75319)
**MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com


**BARRETT LAW GROUP, P.A.**

By    /s/ *Don Barrett*
Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

14

**CUNEO GILBERT & LADUCA, LLP**

By _  /s/ Jonathan W. Cuneo_
Jonathan W. Cuneo
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Phone: (202) 789-3960
Fax: (202) 789-1813
jonc@cuneolaw.com
Vicky@cuneolaw.com

Joel Davidow
Daniel Cohen
**CUNEO GILBERT & LADUCA, LLP**
Bethesda, Maryland
8120 Woodmont Ave
Suite 810
Bethesda, MD 20814
Phone: (202) 789-3960
joel@cuneolaw.com

Michael J. Flannery
**CUNEO GILBERT & LADUCA, LLP**
300 North Tucker Boulevard
Suite 801
St. Louis, MO 63101
Phone: (202) 789-3960
Fax: (202) 789-1813
mflannery@cuneolaw.com

**LARSON • KING, LLP**

By    /s/ *Shawn M. Raiter*
Shawn M. Raiter
Paul A. Sand
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

*Attorneys for Automobile Dealer Plaintiffs*

16

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS** **ANTITRUST LITIGATION** | 12-md-02311 Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS SYSTEMS CASES** | |
| **THIS RELATES TO:** | |
| **ALL DEALERSHIP ACTIONS** **ALL END-PAYOR ACTIONS** | W:12-cv-00102-MOB-MKM W:12-cv-00103-MOB-MKM |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 11, 2012 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all filing users indicated on the Electronic Notice List through the Court's electronic filing system.  I also certify that I will serve copies via First Class U.S. Mail upon all other parties indicated on the Manual Notice List.

Respectfully submitted,

*/s/ Adam T. Schnatz*
Adam T. Schnatz (P72049)
The Miller Law Firm, P.C.
950 W. University Drive, Ste. 300
Rochester, MI 48307
(248) 841-2200
ats@millerlawpc.com