UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-MD-02311<br>Honorable Marianne O. Battani |
| PRODUCT(S):<br>WIRE HARNESS SYSTEMS |  |
| THIS DOCUMENT RELATES TO:<br>Direct Purchaser Actions | Lead Case No. W:12-cv-00101 |

**DIRECT PURCHASER PLAINTIFFS' RESPONSE IN OPPOSITION TO DENSO CORPORATION AND DENSO INTERNATIONAL AMERICA, INC.'S MOTION TO DISMISS THE DIRECT PURCHASERS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE END-PAYORS' CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON
 & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500

David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500

Interim Liaison Counsel for the Direct Purchaser Plaintiffs

Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

Interim Lead Counsel for the Direct Purchaser Plaintiffs

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ............................................................................ ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................................. iii

INDEX OF AUTHORITIES......................................................................................................... iv

PRELIMINARY STATEMENT ................................................................................................... 1

INTRODUCTION ......................................................................................................................... 1

ARGUMENT   THE CAC SUFFICIENTLY ALLEGES THAT  DENSO PARTICIPATED IN A WIRE HARNESS PRODUCTS CONSPIRACY ................................................................. 3

    A.    Standard of Review – Rule 8(a)(2) and Twombly ........................................................ 3

    B.    The Government Investigations and Guilty Plea Agreements By DENSO, Other Defendants, and Their Corporate Executives Support the Plausibility of Plaintiffs' Allegations. ..................................................................................................................... 5

    C.    The Allegations of Defendants' Opportunities to Collude Support the Plausibility of Plaintiffs' Claims.................................................................................... 9

    D.    DENSO Is Jointly And Severally Liable For All Injury Resulting From The Conspiracy, Regardless Of Whether Plaintiffs Purchased From DENSO Or From Another Defendant. .................................................................................... 10

CONCLUSION............................................................................................................................ 11

## STATEMENT OF THE ISSUES PRESENTED

Whether the Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint, which alleges: (i) guilty pleas by multiple Defendants, including DENSO Corporation, to antitrust violations involving wire harness products; (ii) extensive governmental investigations into the wire harness products for anticompetitive activities; (iii) a market structure conducive to collusion; (iv) opportunities to collude; and (v) injury contains more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of action," satisfies the pleading requirements of Fed. R. Civ. P. 8 and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Cases*

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962)

*In re Flat Glass Antitrust Litig. II*, No. 08–mc–180, MDL 1942, 2009 WL 331361 (W.D. Pa. Feb. 11, 2009)

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d. 651 (7th Cir. 2002)

*In re OSB Antitrust Litig.*, 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007)

*In re Packaged Ice Antitrust Litig.,* 723 F. Supp. 2d 987 (E.D. Mich. 2010)

*In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777 (N.D. Ohio 2011)

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896 (N.D. Cal. 2008)

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009)

*In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980)

*Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877 (N.D. Ill. 2009)

*Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2d Cir. 2010)

*Rules*

Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8(a)(2)

# INDEX OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................................... 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 3, 4, 7, 11

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ............................ 5

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................................................. 3, 4

*Hyland v. Homeservices of Am., Inc.*, 3:05-CV-612-R,
   2007 WL 2407233 (W.D. Ky. Aug. 17, 2007) ........................................................................ 4

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009) ................ 8

*In re Flat Glass Antitrust Litig. II*, No. 08–mc–180, MDL 1942,
   2009 WL 331361 (W.D. Pa. Feb. 11, 2009) ......................................................................... 10

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d. 651 (7th Cir. 2002) .......................... 6

*In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961 (N.D. Iowa 2011 ............... 7

*In re OSB Antitrust Litig.*, 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) ............................ 8

*In re Packaged Ice Antitrust Litig.,* 723 F. Supp. 2d 987 (E.D. Mich. 2010) ........................ passim

*In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603 (N.D. Ga. 1997) ............................. 7

*In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777 (N.D. Ohio 2011) ...................... 8

*In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934 (E.D. Tenn. 2008) ........................ 4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................................................... 8

*In re Tamoxifin Citrate Antitrust Litig.*, 466 F.3d 187 (2d Cir. 2006) ........................................... 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 U.S. Dist. LEXIS 64930
   (N.D. Cal. June 29, 2010) ("*STN-LCD*") ................................................................................ 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009) .................. 8

*In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980) .................................................... 11

*In re Vitamins Antitrust Litig.*, No. 99–CV–197, 2000 WL 1475705 (D.D.C. May 9, 2000) ........ 6

*Paper Systems, Inc. v. Nippon Paper Indust. Co.*, 281 F.3d 629 (7th Cir. 2002) ...................... 11

*Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877 (N.D. Ill. 2009) ............................. 8, 9

*Starr v. Sony BMG Music Entertainment*, 592 F.3d 314 (2d Cir. 2010) ....................................... 10

*United States v. Sargent*, 785 F.2d 1123 (3d Cir. 1986) .................................................................. 9

**Rules**

Federal Rule of Civil Procedure 8 ................................................................................................ 3

Federal Rule of Civil Procedure 8(a)(2) ........................................................................................ 3

## **PRELIMINARY STATEMENT**

Direct Purchaser Plaintiffs ("DP Plaintiffs") submit this brief in opposition to DENSO Corporation and DENSO International America, Inc.'s (collectively, "DENSO") Motion to Dismiss (ECF No. 239) the Direct Purchasers' Consolidated Amended Class Action Complaint (ECF No. 86) and the End-Payors' Corrected Consolidated Amended Class Action Complaint (ECF No. 174).[1]

## **INTRODUCTION**

Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") describes a horizontal conspiracy to raise and fix prices on Wire Harness Products through bid-rigging and coordinated price adjustments in violation of 15 U.S.C. § 1. The CAC also explains how DENSO participated in this ongoing, international cartel.

Numerous governmental agencies across the globe have investigated the Wire Harness Products industry for antitrust violations. In February 2010, the FBI raided the U.S. headquarters of multiple Wire Harness Product producers, including DENSO's U.S. offices, as part of an antitrust investigation by the DOJ. (CAC at ¶ 116)

Following these investigations—and the filing of multiple criminal Informations—DENSO[2] admitted that it violated Section 1 of the Sherman Antitrust Act by rigging bids and fixing prices of Wire Harnesses and Related Products. (*Id.* at ¶ 136). Specifically, in the Plea Agreement, DENSO admitted to the following facts:

---

[1] DENSO's motion to dismiss is hereinafter cited as DENSO MTD, at __.
[2] DENSO Corporation entered into the Plea Agreement, but, during the guilty plea hearing, DENSO Corporation admitted that DENSO International America, Inc. participated in the criminal conspiracy to rig bids and fix prices of AWHS. *See United States v. Denso Corp.*, No. 12-20063 (E.D. Mich.) [Dkt. No. 12] at 18, attached as Exhibit A (referring to DENSO Corporation and DENSO International America, Inc., together as DENSO and admitting that employees of DENSO had discussions and meetings with competitors that also sold ECUs and that during these discussions and meetings, "agreements were reached to allocate the supply of body ECU's [sic]. and to fix, stabilize and maintain the prices of body ECU's [sic] sold . . .").

- Participation, through certain of its managers and employees, including high-level personnel, in a conspiracy with other persons and entities engaged in the manufacture and sale of ECUs (electronic control units[3]), to rig bids for, and to fix, stabilize, and maintain the prices of certain ECUs;

- Discussions and attended meetings with co-conspirators involved in the manufacture and sale of the price-fixed ECUs; and

- Reached agreements to allocate the supply of and coordinate prices for the price-fixed ECUs sold to an automobile manufacturer in the United States and elsewhere.

*See U.S. v. DENSO Corp.*, No. 12-20063, Plea Agreement (E.D. Mich. Mar. 5, 2012), attached as Exhibit B.  For its participation in the Wire Harness Products conspiracy and the Heater Control Panels conspiracy, DENSO agreed to pay a $78 million criminal fine.

In addition to DENSO's plea agreement, the CAC also details the extensive international governmental investigations, which resulted in the guilty pleas of five other Defendants for their roles in the price-fixing and bid-rigging conspiracy in the Wire Harness Products market. *See* CAC at ¶¶ 115-137.

Yet, DENSO, separately and as part of a collective motion to dismiss, repeatedly claims that it is implausible that it could have participated in the Wire Harness Products conspiracy DP Plaintiffs allege.  Essentially, DENSO asserts that because it pled guilty to only one product contained in DP Plaintiffs' definition of Wire Harness Products it could not have plausibly participated in a Wire Harness Products conspiracy.

---

[3] ECUs are one of the defined Wire Harness Products. *See* Complaint at ¶ 10 and ¶ 136 (ECUs are an embedded system that controls one or more of the electronic systems or subsystems in a motor vehicle, and is essential to the wiring, circuit boards, gauges, and fuel tanks of automobiles).  Moreover, DESNO describes ECUs as "a standardized product" that is "interchangeable" across automobile models. (*See* Exhibit O, pg. 6 to Defendants Collective Motion to Dismiss the Direct Purchaser Actions) (Doc 228, pg. ID 2839).

But DENSO's guilty plea cannot be ignored. Rather, the Court should consider DENSO's guilty plea together with and within the context of the CAC's additional allegations, including the detailed background on the products that compose the Wire Harness System and necessary related products, including ECUs. The Court should consider how these related products function in auto systems, and how the large number of ECUs function in a motor vehicle's wire harness system (*see* CAC at ¶¶ 76-91) and the specific opportunities for collusion through industry trade meetings and conferences. *See id.* at ¶¶ 99-106.

When taken together the allegations build a plausible claim and "'give [DENSO] fair notice of what the … claim is and the grounds upon which it rests,'" creating a plausible basis to infer an illegal antitrust conspiracy. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### THE CAC SUFFICIENTLY ALLEGES THAT DENSO PARTICIPATED IN A WIRE HARNESS PRODUCTS CONSPIRACY

DP Plaintiffs have adequately alleged facts regarding the nature of the alleged conspiracy, the susceptibility of the Wire Harness Products market to collusion, Defendants' opportunity to collude, the injuries arising from the conspiracy, and the numerous guilty plea agreements to antitrust conspiracy violations in the Wire Harness Products industry. DP Plaintiffs' allegations set forth a plausible Sherman Act claim against DENSO and therefore satisfy the "notice pleading" standard of Fed. R. Civ. P. 8 and *Twombly*.

### A. Standard of Review – Rule 8(a)(2) and Twombly

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

3

what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555; *see Erickson*, 551 U.S. at 93.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949; *see Twombly*, 550 U.S. at 556. A complaint needs more than "labels and conclusions" or "formulistic recitation of the elements of a cause of action," but "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage[.]" *Id*. at 555-56. Instead, *Twombly's* plausibility requirement "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id*.

*Twombly* did not impose a heightened pleading standard for antitrust conspiracy cases on a motion to dismiss and does not require elaborate fact pleading. *In re Packaged Ice Antitrust Litig.,* 723 F. Supp. 2d 987, 1003-1004 (E.D. Mich. 2010); *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 943-944 (E.D. Tenn. 2008); *Hyland v. Homeservices of Am., Inc.*, 3:05-CV-612-R, 2007 WL 2407233, * 2-3 (W.D. Ky. Aug. 17, 2007). "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Packaged Ice*, 723 F. Supp. 2d at 943-44 (quoting *Twombly*, 550 U.S. at 556).

4

Moreover, in antitrust cases, allegations must be reviewed as a whole and "'plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.'" *In re Tamoxifin Citrate Antitrust Litig.*, 466 F.3d 187, 201 (2d Cir. 2006), *quoting Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). On this basis "the character and effect of a conspiracy are not to be judged by dismembering it and viewing it in its separate parts, but only by looking at it as a whole." *Continental Ore*, 370 U.S. at 699; s*ee also Packaged Ice*, 723 F. Supp. 2d at 1006 (conspiracy allegations are "not to be judged by dismembering [the conspiracy] and viewing its separate parts").

### B. The Government Investigations and Guilty Plea Agreements By DENSO, Other Defendants, and Their Corporate Executives Support the Plausibility of Plaintiffs' Allegations.

DENSO admits that its guilty plea may be *prima facie* evidence of its own conduct. DENSO MTD at 7. Yet, DENSO claims that DP Plaintiffs do not sufficiently "link" DENSO's admissions to DP Plaintiffs' claim. DENSO, however, either ignores DP Plaintiffs' well-plead allegations or improperly isolates DP Plaintiffs' allegations. Either way, DENSO's argument fails.

ECUs—the subject of DENSO's plea agreement—are one of the related Wire Harness Products that are the subject of the alleged conspiracy. ECUs are in the same Wire Harness products market as other products that are the subject of guilty pleas by other defendants. *See* CAC at ¶¶ 123-137. Moreover, all of these guilty pleas admit to the same type of collusive behavior that DENSO admitted to, namely meeting with co-conspirators, making agreements with co-conspirators and carrying out the conspiracy through meetings and communications. *See id.* These facts regarding the numerous guilty pleas by defendants in the same market render DENSO's participation in the alleged industry plausible. *See Packaged Ice*, 723 F. Supp. 2d at

5

1010 ("admissions of price-fixing by so many defendants certainly 'are suggestive enough to render a § 1 conspiracy claim plausible'") (internal citations omitted).

Additionally, DENSO did not conspire in a vacuum. DENSO admitted that it conspired "*with other persons and entities* engaged in the manufacture and sale of ECUs, the primary purpose of which was to rig bids for, and to fix, stabilize and maintain the prices of, certain ECUs." (Exhibit B at ¶ 4(a)(ii) (emphasis added)). And both Furukawa and Yazaki, in separate plea agreements, admitted to rigging bids and fixing prices of Wire Harnesses and "related products," including ECUs. *See United States v. Furukawa Electric Company*, No. 11-20612 (E.D. Mich.) [Dkt. 10] ("Furukawa Plea Agreement"), attached as Exhibit C, ¶¶ 2, 4; *United States v. Yazaki Corporation*, No. 12-20064 (E.D. Mich.) [Dkt. 6] ("Yazaki Plea Agreement"), attached as Exhibit D, ¶¶ 2, 4.

Further, DENSO's guilty plea neither limits nor defines DP Plaintiffs' claims. The DOJ is motivated by different interests and limited resources and, in part, because of these different motivations and interests, Plaintiffs are not limited to bringing only claims based on facts in the criminal complaint or plea. *See, e.g.*, *Packaged Ice*, 723 F. Supp. 2d at 1011-12 (civil litigation is not circumscribed or defined by the boundaries of criminal investigations or plea agreements); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d. 651, 664-65 (7th Cir. 2002) (setting forth reasons why the DOJ's decision to limit criminal charges and not prosecute ADM for participating in the price fixing of corn syrup, stating that one reason was the likely vigorous litigation by the private bar); *In re Vitamins Antitrust Litig.*, No. 99–CV–197, 2000 WL 1475705, *11 (D.D.C. May 9, 2000) (rejecting the "notion that the guilty pleas and cooperation agreements and the class settlement foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice

Department's resources and other cases requiring the government's attention."); *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 620 (N.D. Ga. 1997) ("[T]he Court is aware of no authority that requires a civil antitrust plaintiff to plead only the facts of a prior criminal complaint.  To the contrary, several cases flatly reject this theory.").

The Sixth Circuit has made clear that allegations regarding guilty pleas can bolster the claims made by plaintiffs in civil litigation. *See Packaged Ice,* 723 F. Supp. 2d at 1009 (government investigations and guilty plea agreements "bolster the plausibility analysis and heighten the Court's expectation that 'discovery will reveal evidence of illegal agreement'") (quoting *Twombly*, 550 U.S. at 556).  This holds true even where defendants plead guilty to narrower conduct than that alleged.[4]  Accordingly, DP Plaintiffs' allegations bolster the plausibility of their claim against DENSO.

Finally, the above demonstrates that DP Plaintiffs' allegations are neither "wholly conclusory" nor "meaningless." DENSO MTD at 10; *see also* CAC at ¶¶ 106-114, 116, 120, 136.  Regardless, courts have repeatedly held that on a motion to dismiss, allegations need not be detailed "defendant-by-defendant." *See In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp.

---

[4] DENSO cites *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975, 979 (N.D. Iowa 2011) in support of its argument that DP Plaintiffs do not link its guilty plea to the conspiracy alleged. DENSO MTD, at 9.  *Iowa Ready-Mix* is clearly distinguishable.  There, plaintiffs relied on guilty pleas involving a small region in Iowa, based on three bilateral agreements, to support their allegations of conspiracy in the larger "Iowa region."  768 F. Supp. 2d at 972.  Unlike the conspiracy alleged here, where the big picture of the alleged conspiracy is comprehensively laid out, the plaintiffs in *Iowa Ready-Mix* did not provide any "larger picture" of the conspiracy alleged.  *Id.*  DENSO also cites to *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 U.S. Dist. LEXIS 64930 (N.D. Cal. June 29, 2010) ("*STN-LCD*").   As a preliminary matter, there are many cases coordinated under the "TFT-LCD" caption.  The case cited by DENSO, while it bears the same caption as the TFT-LCD panel cases, involves an entirely different product category and unrelated market (the STN-LCD panel market) than in the TFT-LCD panel actions.  In the TFT-LCD panel actions, the court found that plaintiffs' allegations regarding defendants' guilty pleas as to TFT-LCD panels enhanced the plausibility of plaintiffs' conspiracy allegations.  *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009).  The case cited by DENSO, however, regarding STN-LCD panels, is quite different.  In *STN-LCD*, plaintiffs attempted to rely on the guilty pleas regarding TFT-LCD panels to support their claims that defendants conspired in the STN-LCD market.  *Id.* at *16-17.  The court noted that unlike the present case, there was no overlap between the two markets and that none of the class cases regarding TFT-LCD panels or the DOJ's investigations regarding TFT-LCD panels alleged any price-fixing related to STN-LCD panels.  *Id.*  Here, DP Plaintiffs allege facts regarding DENSO's guilty plea (and the guilty pleas of other Defendants) in the same market as alleged in the civil action – not in an entirely different, unrelated market as the court found in *STN-LCD*.

2d 777, 794-795 (N.D. Ohio 2011) (plausibility pleading standard does not require a court to construct a mandatory checklist of the "who, what, where, when and how" of an antitrust agreement for each defendant); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009) (defendant-by-defendant fact pleading not required under *Twombly*); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903-907 (N.D. Cal. 2008) (same); *Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877, 900 (N.D. Ill. 2009) (complaint need not contain detailed "defendant-by-defendant" allegations; it only needs to allege that each defendant "joined the conspiracy and played some role in it"); *In re OSB Antitrust Litig.*, 06-826, 2007 WL 2253419, *4 (E.D. Pa. Aug. 3, 2007) ("one lone paragraph" in a complaint mentioning defendant was enough to state a claim). Accordingly, DP Plaintiffs have sufficiently alleged a plausible claim.

If an industry is structured so as to make it susceptible to collusive behavior, factual allegations to that effect may support an inference of plausibility. *Packaged Ice*, 723 F. Supp. 2d at 1014 (citing *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 576 (M.D. Pa. 2009) ("For example, a plaintiff may aver that the relevant market is ripe for collusion due to the presence of oligarchic sellers, diffuse buyers, prohibitive entry barriers, and standardized products.")). As outlined in the CAC, the structure of the Wire Harness Products industry facilitates collusion due to, among other reasons, the industry's high concentration and high barriers to market entry of new competitors. (CAC ¶¶ 99-103) The high barriers to entry into the Wire Harness Products market include the requirement of high capital investments and technical expertise. (*Id.* at ¶ 103)

8

DENSO's arguments for dismissal—that the industry research reports in the CAC do not cite DENSO's respective market shares, and that DP Plaintiffs have not affirmatively alleged the specific Wire Harness Products that DENSO manufactures[5]—are not credible.

First, the charts are intended to paint the larger picture regarding the economic backdrop of the Wire Harness Products market.

Second, the argument fails because DENSO's reliance on *United States v. Sargent*, 785 F.2d 1123, 1127 (3d Cir. 1986), is unavailing. *Sargent* merely stands for the unremarkable proposition that a horizontal conspiracy can only occur among competitors or potential competitors in a given market. *Id.* DENSO appears to contend that because it is not mentioned in the charts by name, it somehow was not a competitor in the Wire Harness Products market. DENSO MTD at 8. This argument, however, ignores DP Plaintiffs' clear allegations that DENSO was a participant in the Wire Harness Products market. More importantly, DENSO's plea agreement confirms that during the period January 2000 to at least February 2010, DENSO's "sales of ECUs affecting a U.S. automobile manufacturer totaled approximately $237 million." *See* Exhibit B at 2-4. In sum, the charts do not detract from DP Plaintiffs' allegations regarding DENSO's participation in the alleged conspiracy.

### C. The Allegations of Defendants' Opportunities to Collude Support the Plausibility of Plaintiffs' Claims.

The multiple opportunities for Defendants, including DENSO, to conspire further bolster the plausibility of DP Plaintiffs' claims. *Packaged Ice*, 723 F. Supp. 2d at 1017 (citing *Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d. at 902). The CAC alleges multiple opportunities for Defendants to meet and collude, including the annual North American International Auto Show and the Automotive Aftermarket Products Expo. (CAC ¶ 106). Moreover, DENSO and

---

[5] *See* DENSO MTD at 7-8.

9

the guilty plea defendants admitted that they met and communicated with co-conspirators. *See, e.g.,* Exhibit B (DENSO admitted it met with and had discussions with co-conspirators involved in the manufacture and sale of the price-fixed ECUs); (CAC ¶ 128) (Furukawa admitted it met with and had discussions with co-conspirators involved in the manufacture and sale of the price-fixed Wire Harnesses and related products).

When viewed in the context of the entire CAC, the opportunities available to DENSO and the other Defendants to meet, communicate and conspire, and the admission of DENSO and the other Defendants that they did conspire to fix prices of Wire Harness Products, bolster the plausibility of DP Plaintiffs' claim. *See In re Flat Glass Antitrust Litig. II*, No. 08–mc–180, MDL 1942, 2009 WL 331361 at *3 (W.D. Pa. Feb. 11, 2009) ("attendance at said meetings should be easily ascertained through discovery such that there is a reasonable expectation that discovery may reveal evidence of the alleged illegal conspiracy"). "It is not Plaintiffs' burden at the pleading stage to 'rule out the possibility that the defendants were acting independently' but only to allege 'enough factual matter (taken as true) to suggest that an agreement was made.'" *In re Packaged Ice*, 723 F. Supp. 2d at 1016 (citing *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010)).

### D. DENSO Is Jointly And Severally Liable For All Injury Resulting From The Conspiracy, Regardless Of Whether Plaintiffs Purchased From DENSO Or From Another Defendant.

DENSO further attacks the sufficiency and plausibility of DP Plaintiffs' allegations on the ground that no Direct Purchaser Plaintiff has alleged that it purchased Wire Harness Products directly from DENSO. DENSO MTD at 8-9. DENSO, however, does not cite any authority in support of its argument. Regardless, as discussed *infra*, DENSO's guilty plea does not define DP Plaintiffs' claim. DP Plaintiffs have alleged that they purchased Wire Harness Products from Defendants. (CAC ¶¶ 16-22) Wire Harness Products includes the ECUs that DENSO sold and

for which DENSO plead guilty.  DP Plaintiffs have alleged a conspiracy that harmed all DP Plaintiffs, and those allegations must be taken as true.

Moreover, liability under Section 1 of the Sherman Act is joint and several.  *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980).  DENSO is jointly and severally liable for all of the overcharges of the conspiracy whether DP Plaintiffs purchased from DENSO or from another Defendant. *Paper Systems, Inc. v. Nippon Paper Indust. Co.*, 281 F.3d 629, 634 (7th Cir. 2002) ("If Nippon Paper participated in a cartel of thermal fax paper … then it is jointly and severally liable for the cartel's entire overcharge.  That the plaintiffs did not buy from Nippon Paper directly, or not at all, does not matter.").

Here, DP Plaintiffs "purchased Wire Harness Products directly from one or more of the Defendants during the Class Period." (CAC ¶¶ 16- 22)  DP Plaintiffs allege that they "paid more for Wire Harness Products than would have been the case in a competitive market" due to the conspiracy. (CAC ¶ 154)   DP Plaintiffs are direct purchasers of Wire Harness Products, regardless of whether each DP Plaintiff purchased a Wire Harness Product from every Defendant in the conspiracy.  Because cartel members are jointly and severally liable for the damage caused by their illegal practices under the Sherman Act, every DP Plaintiff who bought a price-fixed Wire Harness Product can sustain a claim against DENSO, an alleged member of the price-fixing and bid-rigging cartel.

## **CONCLUSION**

*Twombly* does not require "detailed factual allegations" but only "enough [facts] to raise the right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.  DP Plaintiffs' allegations of DENSO's participation in the conspiracy, including DENSO's guilty plea, coupled with the other allegations in the CAC more than raise the right to relief above the speculative level.  Additionally, the CAC sufficiently alleges injury.  Accordingly, DENSO's motion to

11

dismiss Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint should be denied in its entirety.

Dated: September 11, 2012          Respectfully Submitted,

By: /s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com

*Interim Liaison Counsel for the DP Plaintiffs*

| | |
|---|---|
| Joseph C. Kohn | Gregory P. Hansel |
| William E. Hoese | Randall B. Weill |
| Douglas A. Abrahams | Joshua R. Carver |
| KOHN, SWIFT & GRAF, P.C. | PRETI, FLAHERTY, BELIVEAU |
| One South Broad Street, Suite 2100 |   & PACHIOS LLP |
| Philadelphia, PA 19107 | One City Center, P.O., Box 9546 |
| (215) 238-1700 | Portland, ME 04112-9546 |
| jkohn@kohnswift.com | (207) 791-3000 |
| | ghansel@preti.com |
| Steven A. Kanner | |
| William H. London | Eugene A. Spector |
| Michael E. Moskovitz | William G. Caldes |
| Michael L. Silverman | Jonathan M. Jagher |
| FREED KANNER LONDON | Jeffrey L. Spector |
|   & MILLEN LLC | SPECTOR ROSEMAN KODROFF |
| 2201 Waukegan Road, Suite 130 |   & WILLIS, P.C. |
| Bannockburn, IL 60015 | 1818 Market Street, Suite 2500 |
| (224) 632-4500 | Philadelphia, PA 19103 |
| skanner@fklmlaw.com | (215) 496-0300 |
| | espector@srkw-law.com |

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

12

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2012, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

>FINK + ASSOCIATES LAW
>
>By: /s/ David H. Fink
>David H. Fink (P28235)
>Darryl Bressack (P67820)
>Interim Liaison Counsel for DP Plaintiffs
>100 West Long Lake Road, Suite111
>Bloomfield Hills, MI  48304
>(248) 971-2500
>dfink@finkandassociateslaw.com