UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | : | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-MD-02311 Honorable Marianne O. Battani |
| | : : | |
| PRODUCT(S): WIRE HARNESS SYSTEMS | : : : | |
| | : : | |
| THIS DOCUMENT RELATES TO: Direct Purchaser Actions | : : : | Lead Case No. W:12-cv-00101 |

**DIRECT PURCHASER PLAINTIFFS' RESPONSE
IN OPPOSITION TO DEFENDANT S-Y SYSTEMS TECHNOLOGIES EUROPE
GMBH'S MOTION TO DISMISS THE CONSOLIDATED AMENDED
<u>CLASS ACTION COMPLAINTS FOR LACK OF PERSONAL JURISDICTION</u>**

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON
 & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500

David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500

Interim Liaison Counsel for the Direct Purchaser Plaintiffs

Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

Interim Lead Counsel for the Direct Purchaser Plaintiffs

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ........................................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................................ iii

INDEX OF AUTHORITIES ........................................................................................................ iv

PRELIMINARY STATEMENT ................................................................................................... 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

   I.    THIS COURT HAS JURISDICTION OVER S-Y ............................................................ 3

      A.    S-Y Engaged In Overt Actions Connecting Itself To The United States ................... 3

      B.    DP Plaintiffs' CAC Arises From S-Y's Contacts And There Is A Substantial Enough Connection Between S-Y's Acts Or The Consequences Caused By S-Y To Make The Exercise Of Jurisdiction Reasonable .......................... 7

   II.    EXERCISING JURISDICTION OVER S-Y IS APPROPRIATE ..................................... 8

   III.   ALTERNATIVELY, JURISIDICTIONAL DISCOVERY IS WARRANTED ............ 11

CONCLUSION ............................................................................................................................ 11

# **STATEMENT OF THE ISSUES PRESENTED**

Whether the Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") sufficiently alleges that this Court can exercise specific or general jurisdiction over S-Y Technologies Europe GmbH ("S-Y") where the CAC alleges that: (i) pursuant to the *Calder*-effects doctrine, S-Y expressly aimed tortious conduct at the United States and caused harm in the United States, *Calder v. Jones*, 465 U.S. 783, 789 (1984); (ii) S-Y has had continuous and systematic contacts with the United States, emanating from its close relationship with its United States counterpart S-Y Systems Technologies America, LLC ("S-Y America"); and, (iii) S-Y's and S-Y America's activities are so interrelated that for jurisdictional purposes the acts of S-Y America are attributable to S-Y.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Cases*

*Aristech Chemical Intern. Ltd v. Acrylic Fabricators Ltd.*, 138 F.3d 624 (6th Cir. 1998)

*Calder v. Jones*, 465 U.S. 783 (1984)

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

*Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357 (6th Cir. 2008)

*Futaba Industrial Co., Ltd. v. Keylex Corp.*, No. 11-11873, 2012 WL 432968 (E.D. Mich. Feb. 9, 2012)

*General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656 (E.D. Mich. 1996)

*Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2008)

*McFadden v. Fuyao N. Am. Inc.*, No. 10-CV-14457, 2012 WL 1230046 (E.D. Mich. Apr. 12, 2012)

*Palmieri v. Estefan*, 793 F. Supp. 1182 (S.D.N.Y. 1992)

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968)

*Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991)

*Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087 (6th Cir. 1989)

*Rules*

Federal Rule of Civil Procedure 12(b)(2)

# INDEX OF AUTHORITIES

**Cases**

*Am. Greetings Corp. v. Cohn*, 839 F.2d 1164 (6th Cir. 1988) ...................................................... 2

*Aristech Chemical Intern. Ltd v. Acrylic Fabricators Ltd.*, 138 F.3d 624 (6th Cir. 1998 .............. 8

*Avery Dennison Corp. v. Alien Technology Corp.*, 632 F. Supp. 2d 700 (N.D. Ohio 2008) ........ 10

*Bradford Co. v. Afco Mfg.*, No. 1:05-CV-449, 2006 WL 143343 (S.D. Ohio Jan. 19, 2006) ...... 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................................................. 8

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................................ 1, 6

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) .......................................... 2, 3, 4, 6

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) ........................................................ 3

*Conley v. MLT, Inc.*, No. 11-11205, 2012 WL 1893509 (E.D. Mich. May 23, 2012) ................... 3

*Creech v. Roberts*, 908.2d 75 (6th Cir. 1990), *cert. denied*, 499 U.S. 975 (1991) ......................... 7

*Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170 (6th Cir. 1995). ................................ 11

*Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357 (6th Cir. 2008) ..................................... 2

*Fortis Corporate Ins. V. Viken Ship Mgmt.*, 450 F.3d 214 (6th Cir. 2006) ................................ 3, 7

*Futaba Industrial Co., Ltd. v. Keylex Corp.*, No. 11-11873,
    2012 WL 432968 (E.D. Mich. Feb. 9, 2012) ............................................................................. 9

*General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656 (E.D. Mich. 1996) .... 4, 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, |
    180 L. Ed. 2d 796 (U.S.N.C. 2011) ........................................................................................... 8

*In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010) ............................... 11

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997) ........................................ 8

*McFadden v. Fuyao N. Am. Inc.*, No. 10-CV-14457,
    2012 WL 1230046 (E.D. Mich. Apr. 12, 2012) .................................................................. 8, 11

*Med. Mut. Of Ohio v. deSoto*, 245 F.3d 561 (6th Cir. 2001) ......................................................... 3

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002) ............................. 10

*MM Global Servs., Inc. v. The Dow Chemical Co.*, 404 F.Supp.2d 425 (D. Conn. 2005) ....... 8, 11

*Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2008) .............................................................................. 4

*Palmieri v. Estefan*, 793 F. Supp. 1182 (S.D.N.Y. 1992) ............................................................ 10

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968) .................... 3, 6

*Technology & Servs., Inc. v. TACS Automation, LLC*, No. 2:09-cv-1113,
   2010 WL 2640047 (S.D. Ohio June 29, 2010) ......................................................................... 11

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) ..................................................... 2

*Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087 (6th Cir. 1989) ................. 8

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ............................................................................ 1, 2, 13

**PRELIMINARY STATEMENT**

The Direct Purchaser Plaintiffs ("DP Plaintiffs") submit this brief in opposition to S-Y Systems Technologies Europe GmbH ("S-Y") motion under Rule 12(b)(2) to dismiss the DP Plaintiffs Consolidated Amended Class Action Complaint (the "CAC").

DP Plaintiffs allege that S-Y participated in a decade-long conspiracy and agreed to rig bids for, and to raise, fix, stabilize, and maintain the prices of Wire Harness Products[1] sold in the United States. Yet, S-Y asks this Court to dismiss the CAC because of a lack of personal jurisdiction.

This Court has jurisdiction over S-Y.

First, the Court may exercise specific jurisdiction over S-Y. S-Y purposefully availed itself of the privilege of acting in the United States. That finding is enhanced by the *Calder*-effects doctrine, which enables a court to exercise jurisdiction over a defendant that expressly aimed tortious conduct at the forum and caused harm in the forum. *Calder v. Jones*, 465 U.S. 783, 789 (1984). Here, S-Y's conduct in furtherance of the conspiracy was directed at and caused anticompetitive effects in the United States. Additionally, DP Plaintiffs' claim arises from S-Y's activities in the United States, and S-Y's acts or the consequences of S-Y's acts have a substantial enough connection with the United States to make the exercise of jurisdiction reasonable.

Second, the Court may also exercise general jurisdiction over S-Y on two grounds: (i) continuous and systematic contacts, and (ii) agency. S-Y's continuous and systematic contacts emanate from its close relationship with its United States counterpart S-Y Systems Technologies

---

[1] The term "Wire Harness Products" includes wire harnesses and these related products: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, high voltage wiring, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors used in motor vehicles.

America, LLC ("S-Y America"), a relationship that was born out the same joint venture, that was built on a shared business goal, and that is connected by a managing board.

General jurisdiction can also be premised on an agency relationship, which applies to affiliated parties and related subsidiaries. S-Y and S-Y America's activities are so interrelated that for jurisdictional purposes the Court can find that S-Y America's acts can be attributed to S-Y.

DP Plaintiffs have, therefore, established that the Court can – and should –exercise jurisdiction over S-Y.[2]

## LEGAL STANDARD

DP Plaintiffs recognize that the plaintiff bears the burden of establishing that [personal] jurisdiction exists. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012). But, when the court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, the plaintiff's burden is "relatively slight," and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357, 360 (6th Cir. 2008) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) and *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). In fact, courts view the pleadings and affidavits submitted in a light most favorable to the plaintiff, disregarding "'the controverting assertions of the party seeking dismissal.'" *Id.* at 360–61 (quoting *Theunissen*, 935 F.2d at 1459); *see also Carrier Corp.*, 673 F.3d at 449 (inappropriate to weigh controverted facts). The reason is because the Sixth Circuit "want[s] 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an

---

[2] Should the Court require further information, DP Plaintiffs request that they be permitted to conduct jurisdictional discovery, including document requests and depositions, after which they be permitted to supplement their response. *See Carrier Corp.,* 673 F.3d at 449 (court may decide the motion upon the affidavits alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions) (citing *Theunissen* 935 F.2d at 1458). *See infra.*

affidavit denying all jurisdictional facts.'" *Conley v. MLT, Inc.*, No. 11-11205, 2012 WL 1893509, at * 8 n.3 (E.D. Mich. May 23, 2012), *quoting CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

## ARGUMENT

### I.  THIS COURT HAS JURISDICTION OVER S-Y

For Sherman Act claims, personal jurisdiction exists whenever the defendant has "'sufficient minimum contacts with the *United States.*'" *Carrier Corp.*, 673 F.3d at 449, *quoting Med. Mut. Of Ohio v. deSoto*, 245 F.3d 561, 566–67 (6th Cir. 2001) (emphasis in original). To establish specific jurisdiction, DP Plaintiffs need only show the following elements:

- The defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state;

- The cause of action arises from the defendant's activities in the forum state; and

- The defendant's acts or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Carrier Corp.,* 673 F.3d at 450 (quoting *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)) (the "*Southern Machine*" test).

#### A.  S-Y Engaged In Overt Actions Connecting Itself To The United States

In analyzing the first prong—purposeful availment—this Court need only determine that S-Y "'engaged in some overt actions connecting [it] with the forum.'" *Carrier Corp.*, 673 F.3d at 450, *quoting Fortis Corporate Ins. V. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006). And, for Sherman Act cases the forum is the United States. *Carrier Corp.* at 450. "If the nonresident conducted business, committed a tort, or furthered a tortious scheme in the forum, even by way of phone call or written correspondence to the forum, personal jurisdiction is appropriate." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 663 (E.D.

Mich. 1996) ("a defendant may reach into a forum as part of a scheme to defraud."). Further, the *Calder*-effects doctrine solidifies a finding that S-Y purposefully availed itself of this forum because S-Y expressly aimed tortious conduct at the United States and the brunt of the harm was felt here.

DP Plaintiffs have alleged that S-Y was an active participant in the unlawful conspiracy, that S-Y's anticompetitive conduct was directed at the U.S., and that DP Plaintiffs and the putative class were injured by this conduct. Because the allegations relate specifically to S-Y's anti-competitive conduct toward DP Plaintiffs, S-Y's contacts are "enhanced" by the *Calder*-effects doctrine. Under the *Calder*-effects doctrine, "a plaintiff can establish personal jurisdiction when it alleges that the defendant 'expressly aimed' tortious conduct at the forum in question and the 'brunt of the harm' is felt there." *Carrier Corp.* at 451, *quoting Calder v. Jones*, 465 U.S. at 789).

In *Calder*, the Supreme Court held that two Florida residents, a writer and editor, were subject to personal jurisdiction in California because they intentionally aimed their tortious conduct—a defamatory article written and edited in Florida—at a California resident. 465 U.S. at 788–89. The Court reasoned that the defendants knew the focal point of the article and the "brunt of the harm" would be in California, and thus, personal jurisdiction was proper based on the "effects" of their Florida conduct in California. *Id.* at 789-90; s*ee also Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2008) ("[E]ven a single act by [a] defendant directed toward [the relevant forum] that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process.").

Here, the facts alleged in the CAC, clearly demonstrate that S-Y aimed its anti-competitive conduct toward the U.S.:

4

- S-Y and its co-conspirators formed an international cartel to suppress and eliminate competition for wire harness products in the U.S. by agreeing to rig bids for, and to raise, fix, stabilize, or maintain the prices of, wire harness products. (CAC ¶¶ 2, 107, 129–32, 134–37).

- S-Y and its co-conspirators participated in meetings, conversations, and communications in the U.S. to discuss bids and price quotations for wire harness products to be submitted to automobile manufacturers in the U.S. (*Id.* at ¶¶ 108, 128, 141).

- S-Y and its co-conspirators attended industry events in the U.S. that provided the opportunity to meet, disguise their improper discussions, and perform acts in furtherance of the conspiracy. (*Id.* at ¶ 106).

- S-Y and its co-conspirators agreed during those meetings, conversations, and communications to allocate the supply of wire harness products sold to automobile manufacturers in the U.S. on a model-by-model basis. (*Id.* at ¶¶ 109, 128, 129, 130, 131, 132, 143).

- S-Y and its co-conspirators also agreed during meetings, conversations, and communications to coordinate price adjustments requested by automobile manufacturers in the U.S. (*Id.* at ¶¶ 110, 128, 144).

- S-Y and its co-conspirators submitted bids, price quotations, and price adjustments to automobile manufacturers in the U.S. in accordance with their conspiratorial agreements. (*Id.* at ¶¶ 111, 128, 142, 145).

- S-Y and its co-conspirators' actions regarding their sales of wire harness products to automobile manufacturers in the U.S. had an impact on prices for wire harness products for all direct purchasers of wire harness products throughout the U.S. (*Id.* at ¶¶ 112, 128, 146).

- S-Y and its co-conspirators held meetings and conversations in the U.S. to monitor and police the agreed-upon-bid-rigging and price-fixing conspiracy. (*Id.* at ¶ 113).

Importantly, on January 30, 2012, the Department of Justice announced that Defendant Yazaki Corporation, which owns a 50% interest in S-Y, agreed to pay a $470 million fine and to plead guilty to a three-count criminal information charging Yazaki Corporation with, among other things, participating in a combination and conspiracy with its coconspirators to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the

5

prices of, Wire Harness Products sold to certain automobile manufacturers in the United States and elsewhere from January 2000 to February 2010. (CAC at ¶ 134).  On March 1, 2012, Defendant Yazaki Corporation pleaded guilty to the charge. (*Id.*).  Four Yazaki executives also agreed to plead guilty to antitrust violations arising from their participation in the same conspiracy. (*Id.* at ¶ 135).

Moreover, Continental AG, which purchased Siemens' interest in S-Y, admitted that the European Commission ("EC") conducted a search at S-Y and that the EC announced that it has indications that S-Y violated antitrust law. (Exhibit A). Continental also disclosed that it conducted internal audits which revealed anticompetitive behavior in a product group. (*Id.*).

DP Plaintiffs' allegations demonstrate S-Y knowingly aimed its anticompetitive activities at the U.S., harming U.S. residents. Accordingly, S-Y's enhanced contacts through the *Calder-*doctrine establishes purposeful availment under the *Southern Machine* test.  This conclusion is consistent with a similar result reached in *Carrier Corp.*, where the Sixth Circuit used the *Calder*-effects doctrine to find purposeful availment:

> Here, the conspiracy in which OCP and OTO allegedly participated had an explicit geographical focus. According to the complaint, one of the main pillars of the conspiracy was allocating Carrier's U.S. business to the Outokumpu defendants, thereby forcing Carrier to pay higher prices in the United States. Such conduct serves as a paradigmatic example of "expressly aiming" tortious conduct. Carrier has thus sufficiently alleged purposeful availment under the Southern Machine test.

*Carrier Corp.*, 673 F.3d at 451.  Therefore, DP Plaintiffs have satisfied the first prong of the *Southern Machine* test.

### B. DP Plaintiffs' CAC Arises From S-Y's Contacts And There Is A Substantial Enough Connection Between S-Y's Acts Or The Consequences Caused By S-Y To Make The Exercise Of Jurisdiction Reasonable

To satisfy the "arises from" factor, "the cause of action, of whatever type, [need only] have a substantial connection with the defendant's [in-forum] activities." *Carrier Corp.*, 673 F.3d at 451 (quotation omitted). The Sixth Circuit has established a "lenient threshold for meeting this requirement." *Fortis Corporate Ins.*, 450 F.3d at 222; s*ee also Creech v. Roberts*, 908.2d 75, 80 (6th Cir. 1990), *cert. denied*, 499 U.S. 975 (1991) ("An action will be deemed not to have arisen from the defendant's contacts with the forum state *only* when they are unrelated to the operative facts of the controversy.") (emphasis added).

DP Plaintiffs' horizontal price-fixing claim against S-Y has a substantial connection with S-Y's in-forum activities. S-Y's alleged activities are substantially related to the operative facts. DP Plaintiffs have alleged that S-Y participated in an unlawful conspiracy with other manufacturers of wire harness products that was intentionally directed at the U.S. and had the purpose and effect of artificially inflating the prices that U.S. purchasers paid for wire harness products. Accordingly, DP Plaintiffs have satisfied the second prong of the *Southern Machine* test.

The third prong of the *Southern Machine* test – "substantial enough connection with the forum to make the exercise of jurisdiction reasonable" – is typically a given when the first two factors are satisfied. *See General Motors*, 948 F. Supp. at 664 ("When the purposeful availment and arising under factors of the Southern Machine test are satisfied, only the unusual case will not satisfy the third factor of a 'substantial enough connection with the forum to make the exercise of jurisdiction reasonable.'"), citing *Creech*, 908 F.2d at 80; *see also Carrier Corp.*, 673 F.3d at 451 (inference of reasonableness arises after first two prongs met); *Third Nat'l Bank in*

*Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) ("only the unusual case will not meet the third criterion."). Accordingly, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). S-Y, however, has presented no such case.

Instead, as discussed *infra*, S-Y shares common ownership with and works closely with its United States affiliate, S-Y America, and serves corporations, BMW and Renault, with a global presence. Defending a lawsuit in the U.S. would not be unduly burdensome for this company with a global presence and close relationship with a United States affiliate. Moreover, the United States also has an interest in the enforcement of its antitrust laws. *MM Global Servs., Inc. v. The Dow Chemical Co.*, 404 F.Supp.2d 425, 435 (D. Conn. 2005). DP Plaintiffs have, therefore, satisfied the third prong of the *Southern Machine* test.

## II.   EXERCISING JURISDICTION OVER S-Y IS APPROPRIATE

General jurisdiction exists when the defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Aristech Chemical Intern. Ltd v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998), *quoting Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). "'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the [forum] are so 'continuous and systematic' as to render them essentially at home in the forum . . . .'" *McFadden v. Fuyao N. Am. Inc.*, No. 10-CV-14457, 2012 WL 1230046, at *2 (E.D. Mich. Apr. 12, 2012), *quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (U.S.N.C. 2011).

In 2001, Siemens VDO Automotive AG and the Yazaki Corporation created S-Y as a joint venture "for the global sale, program management and development of integrated vehicle

8

electronic/electrical systems for the combined Siemens and Yazaki business at Ford, BMW and Renault." (Exhibit B at 1). S-Y was one of two system companies formed by Siemens and Yazaki "for the development and sale of integrated vehicle electronic/electrical distribution systems." (*Id.*). The second joint venture, S-Y Systems Technologies, America, LLC ("S-Y America"), is headquartered in Dearborn, Michigan. (*Id.*). S-Y "is responsible for the strategic lead with respect to BMW and Renault global programs," and S-Y America "is responsible for the strategic lead regarding Ford programs worldwide." (*Id.*).

While announcing the creation of S-Y and S-Y America, Siemens and Yazaki representatives publicly stated that "[t]he JVs will work closely together in supporting one another on their respective customer programs as required." (*Id.*). That aim has been institutionalized by the creation of a single managing board to oversee S-Y and S-Y America. (*Id.*). It has also been actively promoted through S-Y and S-Y America sharing websites. (Exhibits C and D).

DP Plaintiffs also believe that S-Y's close relationship with S-Y America involves S-Y having regular interaction with the United States, such as phone calls, emails, visits to the United States, and the possible sharing of programs or accounts. Further, because these companies were both created to develop and sell integrated vehicle electronic/electrical distribution systems, DP Plaintiffs believe S-Y sent its system products to S-Y America. Additionally, S-Y was created to service BMW and Renault, both of which are international companies with a presence in the United States.

This public record supports the exercise of general jurisdiction. In *Futaba Industrial Co., Ltd. v. Keylex Corp.*, No. 11-11873, 2012 WL 432968, at * 3 (E.D. Mich. Feb. 9, 2012), the court asserted general jurisdiction over a foreign corporation whose website stated "that it has

9

established 'business branches' in China and the U.S. . . . as a 'way[ ] to expand [its] business globally.'" The court reasoned that these statements "suggest[ ] that [defendant] has engaged in more extensive activities in the forum than have been uncovered at this stage in the litigation and without discovery." *Id*; s*ee also Avery Dennison Corp. v. Alien Technology Corp.*, 632 F. Supp. 2d 700, 711 (N.D. Ohio 2008) (asserting general jurisdiction where evidence "suggests a significant volume of business in the [forum].")

Further, the agency relationship between S-Y and S-Y America provides another basis for the Court to exercise jurisdiction. "[W]hen two corporations have common ownership and their activities are interrelated . . ., they may have an agency relationship for jurisdictional purposes, even if the resident corporation is not controlled by the nonresident entity," and the "intimacy of the relationship between the two corporations does not reach the level of finding [alter ego] status." *Palmieri v. Estefan*, 793 F. Supp. 1182, 1194 (S.D.N.Y. 1992); s*ee also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1273 (11th Cir. 2002) ("Agency is not, however, limited to a parent-subsidiary relationship. Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates.") (collecting cases).

S-Y and S-Y America have the requisite agency relationship for jurisdictional purposes. S-Y and S-Y America have common ownership (Exhibit B), they engage in similar activities (*Id.*), they work closely together (*Id.*), share the same website (Exhibits C and D), and share a board of directors (Exhibit B). Therefore, S-Y America's contacts may be attributed to S-Y. *See Palmieri*, 793 F. Supp. at 1194.

Finally, DP Plaintiffs are cognizant that "'[a] court's exercise of its power over an out-of-state defendant must not offend traditional notions of fair play and substantial justice.'"

10

*McFadden*, 2012 WL 1230046, *5 (quotation omitted). But the exercise of general jurisdiction over S-Y is warranted. S-Y should have reasonably anticipated being hailed into this court. It works with S-Y America; it shares a board of directors with S-Y America; and, it shares a website with S-Y America. Moreover, the United States has an interest in enforcing its antitrust laws. *MM Global*, 404 F.Supp.2d at 435. Subjecting S-Y to jurisdiction here, therefore, does not offend traditional notions of fair play and substantial justice.

### III.   ALTERNATIVELY, JURISIDICTIONAL DISCOVERY IS WARRANTED

Should the Court conclude that DP Plaintiffs have not demonstrated a *prima facie* case of personal jurisdiction over S-Y, DP Plaintiffs have at least made a sufficient showing to justify jurisdictional discovery concerning S-Y's contacts with the United States and the close relationship of S-Y and S-Y America. *See In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1019 (E.D. Mich. 2010) (deferring ruling on motion to dismiss for lack of personal jurisdiction until plaintiffs have had an opportunity to conduct jurisdictional discovery); *Bradford Co. v. Afco Mfg.*, No. 1:05-CV-449, 2006 WL 143343, at * 4–*5 (S.D. Ohio Jan. 19, 2006) ("Where the district court concludes that the record is insufficient to support personal jurisdiction, it may allow discovery"); *Technology & Servs., Inc. v. TACS Automation, LLC*, No. 2:09-cv-1113, 2010 WL 2640047, at *3 (S.D. Ohio June 29, 2010); *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170, *2 (6th Cir. 1995).

### CONCLUSION

For all of the reasons set forth above, DP Plaintiffs respectfully submit that they have presented a *prima facie* case establishing personal jurisdiction over S-Y, and, as a result, S-Y's motion to dismiss pursuant to Rule 12(b)(2) should be denied. Should the Court disagree, DP

Plaintiffs respectfully request that the Court defer ruling on S-Y's motion and grant DP Plaintiffs' alternative request to conduct jurisdictional discovery.

Dated: September 11, 2012  Respectfully Submitted,

By: /s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com

*Interim Liaison Counsel for the DP Plaintiffs*

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700
jkohn@kohnswift.com

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON
 & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500
skanner@fklmlaw.com

Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
PRETI, FLAHERTY, BELIVEAU
 & PACHIOS LLP
One City Center, P.O., Box 9546
Portland, ME 04112-9546
(207) 791-3000
ghansel@preti.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
 & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300
espector@srkw-law.com

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2012, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Interim Liaison Counsel for DP Plaintiffs
100 West Long Lake Road, Suite111
Bloomfield Hills, MI  48304
(248) 971-2500
dfink@finkandassociateslaw.com