# EXHIBIT A

Canada) had initiated their own investigations of DOM for the infringement of national competition law. After DOM reached a settlement with the Brazilian antitrust authorities in December 2011, all proceedings have now been concluded or, as was the case in Canada, are not being pursued further. DOM is still facing claims for damages by third parties due to the infringement of antitrust law as a result of the marine hose cartel. Class actions in the U.S.A. were settled. A claim brought before the British High Court was also settled. However, further claims are still threatened in the U.K. and other countries (e.g. Japan, South Korea, Australia and Brazil).

In May 2005, the Brazilian competition authorities opened investigations against Continental's Brazilian subsidiary Continental Brasil Indústria Automotiva ("CBIA") following a complaint of anticompetitive behavior in the area of commercialization of tachographs. On August 18, 2010, the Brazilian competition authorities determined an "invitation to cartel" and imposed a fine of BRL 12 million (about €5.0 million) on CBIA. CBIA denies the accusation and has filed an appeal with the relevant court. However, third parties may also claim damages from CBIA resulting from the infringement of Brazilian antitrust law. On October 2, 2006, South African antitrust authorities received a complaint from a third party accusing several South African tire manufacturers of alleged antitrust behavior, including Continental Tyre South Africa (Pty.) Limited ("CTSA"), a company that is 74% owned by Continental. On August 31, 2010, the South African antitrust authorities came to the conclusion that CTSA had violated South African antitrust law and referred the matter to the responsible antitrust court for a decision. CTSA denies the allegation of infringements of South African antitrust law. However, the tribunal could impose a fine of up to 10% of CTSA's sales. In addition, third parties may also claim damages from CTSA resulting from the infringement of South African competition law.

On February 24, 2010, the European Commission conducted searches at several companies that manufacture wiring harnesses for automotive purposes, including S-Y Systems Technologies Europe GmbH ("S-Y"), Regensburg, Germany. S-Y is a company in which Continental and the Japanese company Yazaki, a wiring harness manufacturer, each own 50%. The European Commission announced that it has indications that the companies in question have violated EU antitrust law. However, it is not clear whether the European Commission will impose fines against S-Y or Continental. Searches are a preliminary step in investigations into antitrust behavior and are not indicative of the outcome. If the European Commission determines that S-Y or Continental can be accused of antitrust behavior, it could impose a fine based on the severity and the duration of the violations not to exceed 10% of the previous year's sales of the participating company. Even if the European Commission determines that only S-Y exhibited antitrust behavior, it cannot be ruled out that the parent companies may be included in the fine due to joint and several liability. Continental has conducted internal audits in certain business units to check compliance with antitrust law. These audits revealed anticompetitive behavior with respect to one product group. Continental took measures to end this behavior. There is a risk that antitrust authorities may conduct investigations due to this behavior and impose fines and that third parties, especially customers, may file claims for damages. The amount of such fines and any subsequent claims is unknown from the current perspective, but could be significant. It also cannot be ruled out that future internal audits may reveal further actual or potential violations of antitrust law that in turn could result in fines and claims for damages. In addition, alleged or actual antitrust behavior could seriously disrupt the relationships with our business partners.

**Continental might be exposed to tax risks regarding the use of tax loss and interest carryforwards in connection with changes in the shareholder structure of the company.**
Section 8c of the German Corporate Income Tax Act *(Körperschaftsteuergesetz – KStG)* provides for the pro rata elimination of tax loss and interest carryforwards and current losses as a rule in cases where more than 25% and up to 50% of the shares in a company have been acquired within a five-year period by an individual purchaser. If more than 50% of the shares have been acquired by an individual shareholder, carryforwards and current losses are as a rule eliminated completely.