# Exhibit 7

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)
**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

C

Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan, Southern Division.
CBT TECHNOLOGIES, INC., a Michigan corpora-
tion, and Thomas Johnson, Plaintiffs,
v.
Scott FISHER and Microcadam, a foreign corpora-
tion, Defendants.

No. 99–CV–70034 DT.
Oct. 8, 1999.

*OPINION AND ORDER REGARDING DEFEND-
ANTS' MOTIONS TO DISMISS AND FOR SUM-
MARY JUDGMENT AND PLAINTIFFS' MOTION
TO REMAND*

ROSEN, J.

I. *INTRODUCTION*

**\*1** This breach of contract action is presently
before the Court on Defendants Scott Fisher's and
Microcadam's separately filed Motions to Dismiss
and for Summary Judgment, and Plaintiffs' Motion
to Remand, which appears to have been filed in re-
sponse to the Defendants' summary judgment mo-
tions. FN1

> FN1. Defendants filed their summary judg-
> ment/dismissal motions in mid-February
> 1999, shortly after this case was filed.
> Plaintiffs responded to the motions and on
> the same date, March 2, 1999, filed their
> motion to remand.

The Court has reviewed and considered the
parties' respective motions and responses/replies
thereto, and has determined that oral argument is
not necessary. Therefore, pursuant to Local Rule
7.1(e)(2), the Court will decide the motions on the
briefs. This Opinion and Order sets forth the
Court's ruling.

II. *FACTUAL BACKGROUND*
Plaintiff CBT Technologies, Inc., is a Michigan

corporation based in Oakland County, Michigan.
The company also has a branch office in Amherst,
New Hampshire. CBT is engaged in the business of
selling computer hardware and software used
primarily in engineering design. Plaintiff Thomas
Johnson is the President of CBT.

Defendant Scott Fisher is the former
Vice–President of Sales of CBT who, after severing
his employment relationship with that company in
June 1998, formed his own corporation, Eastern
Technologies, Inc., FN2 in New Hampshire. Fisher
and his company, Eastern Technologies, act as a
sales representative for Defendant Microcadam, a
California company.

> FN2. As set forth below, Fisher actually
> had registered with the New Hampshire
> Secretary of State as doing business under
> the trade name of "Eastern CAD/CAM As-
> sociates," three months *prior* to severing
> his employment relationship with CBT. He
> subsequently incorporated Eastern CAD/
> CAM under the name "Eastern Technolo-
> gies, Inc."

This lawsuit centers around events that oc-
curred in January—August 1998. Plaintiffs allege
that in January 1998, CBT and Microcadam entered
into a Marketing Agreement pursuant to which
CBT would sell Microcadam products for which
sales Microcadam would pay CBT a commission.
FN3 At the time of this alleged agreement, Defend-
ant Scott Fisher was employed by CBT. According
to the Affidavit of Plaintiff Thomas Johnson, CBT,
through Fisher, was initially contacted by Micro-
cadam to assist it in preparing a written proposal to
submit to Sanders Lockheed corporation, for the
purchase by Sanders of Microcadam products. The
proposal was submitted to Sanders on June 1, 1998.
Mr. Johnson further states that CBT was to be paid
a commission "between $1,000 and $1,500 per
'seat' " on Sanders sales if the Sanders proposal
was accepted. FN4

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)
**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

FN3. As discussed below, Microcadam contends that the Marketing Agreement with CBT was never consummated because one of its conditions with its sales representatives is that they submit a check for $1,800 with their application to become a Microcadam seller. However, CBT's President, Thomas Johnson, states in his Affidavit that Microcadam had advised CBT that it did not have to submit the $1,800 with its VAR (Value Added Re-sellers) application and instead that sum would simply be deducted from CBT's first commission check.

FN4. Microcadam's Regional Sales Manager, Gordon Di Giacomo, states in his Af-fidavit that the Sanders proposal was accepted and the initial sale was for 75 seats. [See Di Giacomo's March 19, 1999 Affi-davit, ¶ 5.] Thus, by Plaintiff Johnson's calculations, CBT would be entitled to between $75,000 and $122,500.

On June 29, 1998, Scott Fisher severed his em-ployment relationship with CBT and formally resigned his position with the company on July 17, 1998.

Meanwhile, apparently unbeknownst to CBT and Johnson, on April 13, 1998, while still em-ployed by CBT, Fisher registered with the New Hampshire Secretary of State as doing business un-der the Trade Name of "Eastern CAD/CAM Asso-ciates". Then, on July 15, 1998, i.e., two days be-fore formally resigning from CBT, Fisher, in his personal capacity, entered into a Marketing Agree-ment with Microcadam, listing on that Marketing Agreement his address as "17 Old Nashua Road, Suite 17, Amherst, New Hampshire," i.e., the same address as that of CBT's New Hampshire office.

Lockheed Sanders subsequently accepted the CBT/Microcadam proposal, and in August 1998, Sanders purchased from Microcadam a sixty (60) seat license to certain Microcadam software, plus

an additional fifteen (15) software add-on modules, for a total of 75 units. [See Affidavit of Gordon Di-Giacomo, Microcadam's Regional Sales Manager.] CBT was not paid any commission on this, or any other sale. Rather, Scott Fisher's Eastern Technolo-gies company allegedly was paid a commission on the Sanders sale in the amount of $59,100.

*2 On December 3, 1998, CBT and Thomas Johnson initiated the instant action in Oakland County Circuit Court. CBT and Scott Fisher timely removed the action to this Court on January 6, 1999. FN5

FN5. Although Plaintiffs state in their Mo-tion to Remand that Scott Fisher did not join in removal, they are mistaken. In Para-graph 3 of the Notice of Removal which was filed by Defendant Microcadam, it states that "Defendant Scott Fisher agrees to and joins in the removal of this action. A copy of the Stipulation Re Removal is attached hereto [i.e., to the Notice of Re-moval] as Exhibit 3." Exhibit 3 to the No-tice of Removal explicitly states:

"Defendants Microcadam and Scott Fisher join in the removal to Federal Court of the action filed by Plaintiffs CBT Technologies, Inc. and Thomas Johnson, Case No. 98–010968–CK in the Circuit Court of Michigan in and for the County of Oakland on or about December 3, 1998."

In their six-count Complaint Plaintiffs allege breach of contract and quantum merit against Mi-crocadam based upon the failure to pay CBT a sales commission or fee for the sale of Microcadam products to Lockheed Sanders (Counts I and II); breach of employment contract against Scott Fisher (Count III); tortious interference with contractual relations against Fisher (Count IV); declaratory re-lief concerning copyright rights against Fisher (Count V) and declaratory relief of no defamation regarding Fisher's allegations that he was defamed

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)
**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

by Johnson (Count VI).

For *each* of their breach of contract, quantum merit and tortious interference claims in Counts I–IV, Plaintiffs ask for damages "in the approximate amount of $90,000 together with interest, costs and reasonable attorney fees."

### II. *PLAINTIFFS' MOTION TO REMAND*

Because Plaintiffs' Motion to Remand challenges subject matter jurisdiction, the Court will address this motion first.

Plaintiffs do not dispute complete diversity of citizenship among the parties. However, they argue that the amount in controversy requirement for diversity jurisdiction is not met based upon their assertion that they were advised, subsequent to filing their lawsuit, that Scott Fisher was paid a commission by Microcadam of only $59,100 on the Lockheed Sanders sale. Based upon this fact, Plaintiffs contend that the Court should disregard the $90,000 amount sought by them on the face of their Complaint in Counts I, II, III and IV.[FN6]

> FN6. Notwithstanding the lack of legal merit to Plaintiffs' argument, the Court notes that Plaintiffs have provided no affirmative substantiation by way of affidavit or otherwise for their assertions concerning the amount allegedly paid to Fisher.

Plaintiffs' contention lacks legal merit. It is well-settled that the amount in controversy requirement for diversity jurisdiction is to be determined from the allegations in the plaintiff's complaint, and that amount is not affected by a plaintiff's subsequent reduction of his demand. *St Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–90, 58 S.Ct. 586 (1938); *Jones v. Knox Exploration Corp.,* 2 F.3d 181, 182–83 (6th Cir.1993). In this case, Plaintiffs' complaint on its face alleges $90,000 in breach of contract/quantum meruit damages against Microcadam for commission allegedly due to CBT on the Lockheed Sanders sale. Plainly, under *Red Cab,* and its progeny, the diversity

amount in controversy of damages in excess of $75,000 is satisfied here.

Furthermore, Plaintiffs have also asserted claims against Defendant Scott Fisher for damages for breach of his employment contract and for tortious interference with contractual relations seeking damages over and above recovery of the amount of commission allegedly due and owing to them by Microcadam for commissions on the Lockheed Sanders sale. For these claims, Plaintiffs also seek $90,000. Thus, even if it were affirmatively established that Plaintiffs were only entitled to $59,100 on their breach of contract/quantum merit claims against Microcadam for commissions due, no such limitation is placed upon the $90,000 damages sought on Plaintiffs' breach of employment contract and tortious interference claims.

**\*3** Additionally, Plaintiffs have asserted a copyright claim against Defendant Fisher. Although the parties dispute the merits of the copyright claim, the fact remains that 28 U.S.C. § 1338(a) vests federal courts with subject matter jurisdiction to hear claims "arising under any Act of Congress relating to ... copyrights." Furthermore, if a case involves claims of infringement *or require construction of a copyright,* the right to hear the action rests *exclusively* with the federal courts. 17 U.S.C. § 301(a); *Burns v. Rockwood Distributing Co.,* 481 F.Supp. 841, 845 (N.D.Ill.1979). As such, removal on federal question grounds is appropriate. *Rosciszewski v. Arete Associates, Inc.,* 1 F.3d 225 (4th Cir.1993). Although Defendants in this case did not allege federal question jurisdiction under the copyright laws as a basis for their removal of this case, because the Court finds that federal court jurisdiction would be appropriate under 28 U.S.C. § 1338(a), even if the Court were persuaded that diversity jurisdiction were lacking, Plaintiffs' motion to remand would be denied.[FN7]

> FN7. Accepting federal question jurisdiction over Plaintiffs' copyright claim, the Court would take supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs'

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)
**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

non-copyright claims.

III. *DEFENDANTS' MOTIONS TO DISMISS AND
FOR SUMMARY JUDGMENT*
A. *DEFENDANT MICROCADAM'S MOTION TO
DISMISS/TRANSFER VENUE OR FOR SUMMARY
JUDGMENT*

Defendant Microcadam's Motion to Dismiss/ Transfer Venue is predicated upon its assertion that the sales representative "Value Added Reseller" (VAR) Agreement which CBT claims it entered into with Microcadam FN8 contained an express forum selection clause which provided:

> FN8. As discussed below, Microcadam also argues that no "contract" ever existed with CBT because CBT had not paid the $1,800 fee Microcadam required of its VAR applicants.

All legal disputes or conflicts arising out of or connected with this Agreement that you bring shall be submitted and brought exclusively in the United States Federal Court or California State court located in Los Angeles or appropriate subject matter jurisdiction.

As proof that such a forum selection clause governs this action, Microcadam has submitted a "blank" VAR Agreement [Microcadam Ex. 1] and a copy of the VAR Agreement it entered into with Scott Fisher—Eastern CAD/CAM Associates [Microcadam Ex. 3]. *See* VAR Agreement, p. 16, ¶ 22.

"It is settled that parties to a contract may agree in advance to submit to the jurisdiction of a given court...." *The Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 11 (1972).* While the Court accepts that such forum selection clauses generally are valid and will be given effect, in this case, Plaintiff Thomas Johnson has submitted a sworn Affidavit with a copy of the VAR Agreement he signed. As indicated in Paragraph 4 of his Affidavit and as borne out by the copy of the Agreement attached as Exhibit A thereto, the Agreement Johnson signed did

not have a page 16, and hence, Johnson never agreed to an exclusive California forum for resolution of disputes. Where, as here, the record evidence does not support a finding that both parties agreed to a particular forum for resolution of their disputes, the Court cannot give effect to an exclusive forum provision in the contract. Therefore, the Court will deny Microcadam's Motion to Dismiss/to Transfer Venue.

**\*4** Microcadam also argues that it is entitled to summary judgment on Count I of Plaintiffs' Complaint. As indicated above, in Count I, Plaintiffs allege that Microcadam breached its Agreement with CBT by not paying CBT a commission on the Sanders Lockheed sale. Microcadam argues, however, that no contract ever existed between it and CBT because it required CBT, as it allegedly does with all of its sales representatives, to submit with its VAR application a check to it for $1,800. Microcadam contends that CBT failed to submit to it a check for $1,800. Therefore, it argues that no contract ever existed between it and CBT. FN9 Since no contract ever existed, Microcadam contends that CBT is not entitled to breach of contract damages as a matter of law.

> FN9. Microcadam makes no argument other than the non-payment of the $1800 fee as the basis for its "no contract existed" premise.

Thomas Johnson, however, has stated in his sworn Affidavit that CBT was told that the $1,800 check normally required of VAR applicants did not have to be submitted with CBT's application; that that fee would simply be deducted from its first sales commission check. [See Johnson Affidavit, ¶ 6.] FN10

> FN10. Defendant Fisher disputes Johnson's assertions in his Affidavit. [See Fisher Affidavit, ¶¶ 12–16.]

Because Johnson's Affidavit creates an issue of fact as to whether an $1,800 fee was required of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)
**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

CBT to establish a contract with Microcadam, Microcadam's Motion for Summary Judgment will be denied.

IV. *DEFENDANT SCOTT FISHER'S MOTION FOR SUMMARY JUDGMENT*

Scott Fisher moves for summary judgment in this case on lack of personal jurisdiction grounds. Defendant Fisher contends that he is entitled to summary judgment because he did not have sufficient minimum contacts with the state of Michigan to satisfy due process.

As indicated above, Fisher was the Vice–President of Sales of CBT Technologies. He is being sued in this case for breach of his employment contract with CBT and for tortious interference with contractual relations based upon his having personally and/or on behalf of his Eastern Technologies company, contracted or engaged in contract negotiations with Microcadam to provide the services that his former employer CBT had contracted or negotiated to contract to perform while he was still an employee of that company. Additionally, Fisher is the subject of the two declaratory judgment counts in Plaintiffs' complaint—for a declaration of no rights in a copyright allegedly held by CBT and for a declaration of non-defamation.

According to Fisher's Affidavit, he is now, and at all times relevant in this action was, a resident of New Hampshire. [Fisher Affidavit, ¶ 3.] He further states that while employed by CBT from April 7, 1997 until June 29, 1998, he worked at CBT's New Hampshire office. *Id.* at ¶ 6. He claims he only came to Michigan on two occasions at Thomas Johnson's request, for corporate meetings at CBT's Michigan headquarters, in Oakland County. *Id.* at ¶ 4.[FN11] Noticeably absent from Fisher's Affidavit is any indication as to how he conducted business for CBT in Michigan from his New Hampshire office. Presumably, he kept in contact with the Michigan office via the telephone, correspondence and/or e-mail.

FN11. Plaintiffs state that in addition to the corporate meetings attested to in his Affidavit, Fisher also came to Michigan on at least one additional occasion to make sales calls on Michigan customers. [See Plaintiffs' Response, p. 2, § I.C.] Defendant Fisher has not filed any Reply to Plaintiffs' Response, therefore, the Court presumes that he does not contest Plaintiffs' assertion regarding his presence in Michigan to make sales calls on Michigan customers.

*5 Fisher acknowledges that he was CBT's Vice–President of Marketing and had a written employment contract with CBT, a Michigan corporation. *Id.* at ¶ 7. A copy of that employment contract has been provided to the Court. [See Fisher's Motion Ex. A.] However, Fisher states in his Affidavit that his employment was solicited by Thomas Johnson in the State of New Hampshire and that the employment contract was "tendered, negotiated and executed" in the State of New Hampshire. [Fisher Affidavit, ¶ 8.]

Based on the foregoing, Fisher contends that he has not had sufficient contacts with or within the State of Michigan for this Court to exercise personal jurisdiction over him.

In response to Fisher's Motion, Plaintiffs argue that by virtue of (1) Fisher's employment contract with CBT, a Michigan corporation, (2) his status as CBT's Vice–President of Marketing and (3) his having transacted business on behalf of CBT in Michigan, pursuant to Michigan's Long–Arm Statute, M.C.L. § 600.705, the Court can exercise limited personal jurisdiction over Fisher.

A. *PRINCIPLES APPLICABLE IN DETERMINING WHETHER THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER A DEFENDANT*

1. *BURDEN OF PROOF*

As an initial matter, the Court notes that on a motion to dismiss for lack of personal jurisdiction,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)
**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

the burden of proof is upon the Plaintiffs who need only make a *prima facie* showing that personal jurisdiction exists. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). Dismissal, thus, is only proper if all of the specific facts alleged by Plaintiffs collectively fail to state a *prima facie* case for jurisdiction. *Id.* at 1459. Furthermore, a defendant may not avoid personal jurisdiction simply by filing an affidavit denying all jurisdictional facts. *Id.* (citing *Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.12d 1212, 1214 (6th Cir.1989)).

1. *GENERAL CONSTITUTIONAL CONSIDERATIONS*

In diversity cases, a federal district court "must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant. However, constitutional concerns of due process limit the application of this state law." *Theunissen v. Matthews, supra,* 935 F.2d at 1459 (citations omitted). "The relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154 (1945); *accord, Southern Machine Co. v. Mohasco Indus.,* 401 F.2d 374, 380 (6th Cir.1968). The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S. Ct. 559, 467 (1980). "Even a single act [by the defendant] can support jurisdiction as long as it creates the required relationship with the forum state." *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201 (1957).

**\*6** Finally, the Supreme Court has also held that apart from the minium contacts analysis, a court may also consider other factors to determine whether the exercise of personal jurisdiction would be consistent with the "fair play and substantial

justice" requirement of *International Shoe. Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184 (1985). There are certain considerations, for instance, that could sometimes establish jurisdiction on a lesser showing of minimum contacts than would otherwise be required. *Id.* at 477, 105 S.Ct. at 2184. These factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the several states in furthering substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. Similarly, the concept of "fair play and substantial justice" may defeat jurisdiction where a defendant has purposefully engaged in forum activities, but such a showing will normally be quite difficult. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85.

2. *SPECIFIC CONSIDERATIONS IN THIS CASE*

Personal jurisdiction in Michigan is governed by the Revised Judicature Act. [FN2] That Act distinguishes between "general" and "limited" (or "specific") personal jurisdiction.

FN12. M..C.L. §§ 600.701 and 600.705 govern personal jurisdiction over individuals; §§ 600.711 and 600.715 govern corporations.

M.C.L. § 600.701 governs general personal jurisdiction over individual defendants. It provides:

The existence of any of the following relationships between an individual and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the individual or his representative and to enable such courts to render personal judgments against the individual or representative.

(1) Presence in the state at the time when process is served.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)

**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

(2) Domicile in the state at the time when process is served.

(3) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745 [§ 600.745].

Plaintiffs do not contend that general jurisdiction exists over Defendant Fisher in this case, and no facts have been presented to the Court which would establish general jurisdiction under Section 600.701. Rather, Plaintiffs rely upon the limited personal jurisdiction provisions of Michigan's Long–Arm Statute, M.C.L. § 600 .705, which provides:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

**\*7** (1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within the state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, separate maintenance, property settlement, child support or child custody.

Plaintiffs in this case point to subsections (1), (5) and (6) of Section 705 as the basis for their allegations of personal jurisdiction.[FN13] It appears to the Court that Plaintiffs are correct in that the Michigan Long–Arm Statute supports personal jurisdiction here. However, as indicated above, our inquiry does not end with satisfaction of the statutory requisites of personal jurisdiction. The constitutional requirements of due process must also be satisfied.

> FN13. Although not asserted by Plaintiffs, it would also appear that an argument could be made for application of subsection (2), i.e., "causing ... consequences to occur in the state giving rise to an action for tort."

Michigan's Long–Arm Statute has been interpreted to extend to the limits of due process. *Theunissen v. Matthews, supra,* 935 F.2d at 1462–63.

The Sixth Circuit has developed a three-part test for application of due process personal jurisdiction requirements:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction of the defendant reasonable.

*LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied,* 494 U.S. 1056 (1990). Furthermore, "[w]hen the first two

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)
**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1126 (6th Cir.1982).

"It is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U .S. 235, 251, 78 S.Ct. 1228, 1238 (1958). "[T]ransaction of *any* business within the state" is enough. M.C.L. § 600.705(1) (emphasis added). "The word 'any' means just what it says. It includes 'each' and 'every'.... It comprehends the 'slightest.'" ' *Shah v. Nu–Kote International, Inc.,* 898 F.Supp. 496, 502 (E.D.Mich.1995) (quoting *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971)), *aff'd,* 106 F.3d 401 (6th Cir.1997); *Theunissen v.. Matthews, supra,* 935 F.2d at 1464; and *Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 905–06 (6th Cir.), *cert. denied,* 488 U.S. 329 (1988)).

**\*8** As indicated above, Plaintiffs' cause of action against Defendant Fisher is based (1) on his alleged breach of his employment contract which required him to "devote a substantial portion of his business time, energy and skill to the affairs of [CBT]" and to "report to the Corporation's President." [See Fisher Motion Ex. A]; and (2) on his alleged tortious interference with CBT's contractual relations with Microcadam.

When analyzing personal jurisdiction in the context of a breach of contract claim, the solution cannot turn on "conceptualistic ... theories of the place of contracting or performance." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 478–79, 105 S.Ct. at 2185. *See also, Shah v. Nu–Kote, supra,* 898 F.Supp. at 502. Rather, the analysis must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185; *Shah v.*

*Nu–Kote, supra.*

Further, if the non-resident conducted business, committed a tort, or furthered a tortious scheme in the forum, even if only by way of phone calls or written correspondence to the forum, personal jurisdiction is appropriate. *General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 656, 663 (E.D.Mich.1996). Thus, in *Onderik v. Morgan,* 897 F.2d 204 (6th Cir.1989), the Sixth Circuit held that personal jurisdiction was proper over a defendant whose only contact with Michigan was by telephone and correspondence. The plaintiffs' breach of employment contract/tortious interference suit named two nonresident private investigators who allegedly provided information to the plaintiffs' employer leading to their firing. One of the nonresident defendants never set foot in Michigan. He conducted an investigation by phone and by letter. Based on this alone, personal jurisdiction was found to be proper. *See also, Lanier v. American Board of Endodontics, supra,* where contacts between the plaintiff and the defendant Board were solely by mail and phone.

By application of the foregoing authorities to the collective facts of this case, the Court finds that Fisher had sufficient contacts with the State of Michigan to satisfy due process and establish personal jurisdiction. It is undisputed that Fisher had an employment contract with CBT and that he served as an officer (Vice–President) of the corporation. Although Fisher vigorously asserts that his contract was negotiated and executed in New Hampshire and that he worked for CBT out of an office in New Hampshire, as the Supreme Court made clear in *Burger King,* the determination of personal jurisdiction in a breach of contract case should not be made pursuant to "conceptualistic theories of the place of contracting and performance." 471 U.S. at 479. Furthermore, it is only reasonable to infer that, at least with respect to CBT's work with Microcadam in preparing the June 1, 1998 Sanders Lockheed proposal [Johnson Affidavit Ex. B], Fisher was in contact with CBT Pres-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)
**(Cite as: 1999 WL 34728850 (E.D.Mich.))**

ident, Thomas Johnson, and/or other company employees in Michigan, if not in person, then presumably by phone, correspondence and/or e-mail. Moreover, it is the Sanders Lockheed transactions that are at the heart of Plaintiffs' Complaint. Under these circumstances, the Court determines that it may properly exercise personal jurisdiction over Defendant Fisher.

**\*9** Therefore, Defendant Fisher's Motion for Summary Judgment will be denied.

### CONCLUSION

For all of the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Defendant Microcadam's Motion to Dismiss, Transfer Venue or for Summary Judgment be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Defendant Fisher's Motion for Summary Judgment be, and hereby is, DENIED.

Accordingly, this case will proceed to trial.

E.D.Mich.,1999.
CBT Technologies v. Fisher
Not Reported in F.Supp.2d, 1999 WL 34728850 (E.D.Mich.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.