# Exhibit 8

Not Reported in F.Supp.2d, 2007 WL 3231738 (N.D.Cal.)
**(Cite as: 2007 WL 3231738 (N.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court, N.D. California, Oakland Division.
DION LLC, Plaintiff,
v.
INFOTEK WIRELESS, INC. and Infotek Associates, Inc., Defendants.

No. C 07-1431 SBA.
Docket No. 23.
Oct. 30, 2007.

Beth E. Terrell, Tousley Brain Stephens, Seattle, WA, for Plaintiff.

William Edward Taggart, Jr., Taggart & Hawkins A Professional Corporation, Oakland, CA, for Defendants.

**ORDER**

SAUNDRA BROWN ARMSTRONG, United States District Judge.

*1 Before the Court is a motion to dismiss [Docket No. 23] by defendant Infotek Associates, Inc. (Associates) or, in the alternative, a motion for a more definite statement or a motion to strike. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, Associates' motion to dismiss pursuant to Federal Rule 12(b)(6) is hereby DENIED. Associates alternative motions pursuant to Rules 12(e) and 12(f) are also DENIED.

**BACKGROUND**

This case arises from a consulting agreement between Dion LLC (Dion), a Washington-based company, and a California corporation known as InfoTek Wireless, Inc (Wireless). A. Edward Mohebi, the sole member of Dion, alleges that upon termination of his consulting work, Wireless refused to honor the terms of their written agreement under which he was owed more than $75,000. *See* Docket No. 19 at ¶ 5.9. Mohebi subsequently filed this lawsuit against both Wireless and Infotek Associates, Inc. (Associates), a sister corporation of Wireless that Mohebi claims has assets to pay him and has sufficient connections to Wireless such that it is obligated to pay Wireless' debt. *See* Docket No. 30 at 1-2.

In September 2006, Wireless president Siavash Poursartip approached Mohebi and discussed the possibility of an agreement for consulting services. *See* Docket No. 19 at 3. The discussions, during which Poursartip supposedly provided financial statements showing the viability of Wireless, resulted in the execution of several agreements: a consulting agreement, a stock purchase agreement and a service termination agreement. *Id.* The service termination agreement provided compensation to Mohebi in the event of termination for anything other than "cause." *See* Docket No. 25, Ex. C.

The employment agreement between Mohebi's company, Dion, and Wireless proved to be short-lived. *See* Docket No. 24 at 4. Mohebi claims that soon after he began working, he discovered that virtually all of Wireless' assets were held by its sister corporation, Associates. *See* Docket No. 19 at 4. After explaining his concern to Wireless board members, Mohebi says Wireless executed an agreement with Associates to transfer assets in order for both entities to become solvent. *Id.* Wireless disclaims knowledge of or information about any such agreement in its answer. *See* Docket No. 22 at 4. After several subsequent disputes between Mohebi, on behalf of his company Dion, and Wireless board members, Mohebi finally declared that the terms of the "service termination agreement" had been met and he requested payment. To date, Mohebi claims he is owed more than $75,000 for his February consulting fees and his severance pay. *Id.* at 6.

On March 13, 2007, Dion filed a complaint

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3231738 (N.D.Cal.)
**(Cite as: 2007 WL 3231738 (N.D.Cal.))**

against Wireless and its related company, Associates, claiming breach of contract. *See* Docket No. 1. In its second amended complaint, Dion has expanded its allegations against Associates, claiming that Associates is liable to Dion under several legal theories including the alter ego doctrine and agency principles. *See* Docket No. 19. On June 21, 2007, Associates filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) arguing that, since no written agreement exists between Associates and the plaintiff, there can be no basis for contractual liability. *See* Docket No. 24 at 6. In the alternative, Associates moves for a more definite statement under Rule 12(e) or a motion to strike under Rule 12(f). *See* Docket No. 23.

**\*2** The issues before the Court are whether Dion's second amended complaint is sufficient to withstand the requirements of Rule 12(b) (6), 12(e) or 12(f).

### LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.,* 472 F.3d 1072, 1075 (9th Cir.2007). However, conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.,* 413 F.3d 943, 950 n. 5 (9th Cir.2005); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

Courts generally do not look outside the pleadings, including any attachments thereto, in deciding a motion to dismiss. *See United States v. LSL Biotechs.,* 379 F.3d 672, 699 (9th Cir.2004). A document is not considered outside the complaint if it is "incorporated by reference," *i.e.,* the complaint specifically refers to the document and if its authenticity is not questioned. *See Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir.2005); *Cooper v. Pickett,* 137 F.3d 616, 622-23 (9th Cir.1997). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint can not be saved by any amendment. *See Sparling v. Daou,* 411 F.3d 1006, 1013 (9th Cir.2005), *cert. denied,* 546 U.S. 1172, 126 S.Ct. 1335, 164 L.Ed.2d 51 (2006); *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir.2002).

Federal rule of Civil Procedure 12(e) states that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Under Rule 12(f), "[u]pon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Federal Rule 8(a), which governs federal pleading standards, states that "[a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."

### ANALYSIS
**A. Breach of contract**

The crux of Associates' argument for dismissal under Rule 12(b) (6) rests upon the absence of any written contract between Dion and Associates. *See* Docket No. 24 at 6. Associates reasons that since no written agreement exists with Dion, there can be no breach of a non-existent document. *See* Docket No. 24 at 6. Because Dion's Second Amended Complaint [FN1] contains only a single cause of action-for breach of contract-Associates concludes that the pleading contains no legally cognizable claim against it. Dion counters this argument by stating two theories-alter ego and agency-by which Associates can be held liable for breach of contract. *See* Docket No. 30 at 4-6.

   [FN1]. *See* Docket No. 19.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3231738 (N.D.Cal.)
**(Cite as: 2007 WL 3231738 (N.D.Cal.))**

***3** Associates points to several California state court decisions that set forth minimum pleading requirements in the context of contract disputes. *See* Docket No. 24 at 6-7. But it is hornbook law that the federal standard, not the California counterpart, that governs. In federal court, "[p]leadings need suffice only to put the opposing party on notice of the claim .... Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Austin v. Terhune,* 367 F.3d 1167, 1171 (9th Cir.2004) (quoting *Fontana v. Haskin,* 262 F.3d 871, 877 (9th Cir.2001)). Accordingly, Associates' reliance on state court pleading requirements for breach-of-contract claims is misplaced.

**1. Alter ego liability**

"A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself." *Local 159 v. Nor-Cal Plumbing, Inc.* 185 F.3d 978, 985 (9th Cir.1999). In other words, "a claim against a defendant based on the alter ego theory is a derivative of the substantive cause of action against the corporate defendant." [FN2] *Rachford v. Air Line Pilots Ass'n,* WL 1699578 (N.D.Cal.2006).

> FN2. Other jurisdictions recognize that "[a]lter ego claims ... may arise out of contract." *In re Elegant Custom Homes, Inc.,* WL 1412456 (D.Ariz.2007); *see Southeast Texas Inns, Inc. v. Prime Hospitality Corp.,* 462 F.3d 666, 679 n. 16 (6th Cir.2006) ("[t]he alter ego doctrine and its criteria are applicable to impose substantive liability whether that liability is in causes of action in tort, in contract, or both....").

In this case, Dion is suing both Wireless and Associates for breach of contract, but there exists no written agreement between Dion and Associates. *See* Docket No. 24 at 2. Because of this, Dion is basing its claim on its contract with Wireless, which is the alleged alter ego of Associates. *See* Docket No. 19 at ¶ 6.5. While Dion's initial complaint is noticeably stark, the second amended complaint filed June 18, 2007 states that "[t]he unity of interest and ownership between Wireless and Associates ... prevented the two from functioning as separate entities .... [The two companies] conduct the same type of business, shared the same office space, used the same business address, and had the same bookkeeper, lawyers and CPA." *See* Docket No. 19 at 7. The complaint further alleges that "[i]t would be inequitable to allow Associates to now assert a distinction between the corporations to avoid liability arising from the Consulting Agreement." *Id.* Unlike later evidentiary stages of this lawsuit, in which Dion would be required to prove the elements not only of a breach of contract but of alter ego liability, a pleading need only provide "the bare outlines of [a] claim" within the federal notice pleading framework under Federal Rule of Civil Procedure 8(a). *Bautista v. Los Angeles County,* 216 F.3d 837, 843 (9th Cir.2000).

Associates relies on *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101 (C.D.Cal.2003) for the proposition that a claim of alter ego liability requires heightened pleading standards. *See* Docket No. 31 at 5. *Neilson* explains that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id.* at 1116. These two elements are 1) a unity of interest or ownership between a corporation and its individual owner and 2) that if the acts are treated as those of the corporation alone, an inequitable result will follow. *Id.* at 1115-1116.

**\*4** Assuming that Dion was required to allege both elements of alter-ego liability in its pleading, the second amended complaint does just this. *See* Docket No. 19 at 7. Dion states that

> [t]he unity of interest and ownership between Wireless and Associates, as well as the operational practices of 'InfoTek,' prevented the two from functioning as separate entities ... These prac-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tices, among others, caused the companies to operate as one entity and reasonably misled Dion about the business it would be providing services for as well as the actual value of the Consulting Agreement it was offered. It would be inequitable to allow Associates to now assert a distinction between the corporations to avoid liability arising from the Consulting Agreement.

*Id.* The amended complaint also sets forth facts supporting both elements. *Id.* at ¶¶ 5.3-5.9.[FN3]

> [FN3.] Paragraph 5.9 states that "Don Fowler informed Dion that Wireless was insolvent and unable to pay Dion the compensation due under the Service Termination Agreement ... To date, Dion has not been paid for its February consulting fees or the severance pay as required. The amount owed Dion exceeds $75,000." *See* Docket No. 19 at 6. In its reply, Associates concludes "Dion has failed to expressly plead facts to substantiate the second element of an alter ego theory-that an inequitable result will flow from the failure to allow Dion to maintain an alter ego claim against Associates." *See* Docket No. 31 at 7. The Court fails to see how a loss of more than $75,000 resulting from an allegedly insolvent sister corporation is not an "inequitable result" in the alter ego context.

**2. Agency relationship between Associates and Wireless**

In response to Dion's opposition to the motion to dismiss, Associates argues that Dion fails to plead a claim based on an agency relationship between Wireless and Associates because Dion provides no facts to support the three elements necessary to prove agency.[FN4] Associates again cites to a district court case, *Bowoto v. Chevron Texaco Corp.,* 312 F.Supp.2d 1229 (N.D.Cal.2004) (Illston, J.), to support Dion's alleged failure to plead agency liability. Associates confuses the federal notice pleading standard with an evidentiary standard; the *Bowoto* decision came in the context of summary judgment, not a 12(b)(6) motion. *Id.* Associates reinforces the meritless nature of its argument by blatantly misrepresenting the holding of *Bowoto* in its claim that a "plaintiff asserting a claim based on an agency relationship *must plead* the [three elements of agency]."[FN5] *See* Docket No. 31 at 8 (emphasis added). *Bowoto* stands for no such proposition because the case dealt with a summary judgment motion, not a Rule 12(b)(6) motion. In its pleading, Dion is only required by Rule 8(a) to place Associates "on notice" of its claim for breach of contract based on Associates' agency relationship with Wireless. *See Bautista,* 216 F.3d at 843. In its complaint, Dion states that "Associates is also liable for breach of contract because Wireless was acting as its agent in entering the Consulting Agreement. Associates created Wireless and sought the Consulting Agreement with Dion as a vehicle for funding and growing Associates' existing business." *See* Docket No. 19 at ¶ 6.6. Dion's complaint adequately places Associates on notice of its claim.

> [FN4.] The three elements are 1) a manifestation by the principal that the agent shall act for him or her, 2) the agent must accept the undertaking and 3) an understanding that the principal is to be in control of the undertaking. *Bowoto v. Chevron Texaco Corp.,* 312 F.Supp.2d 1229, 1239 (N.D.Cal.2004).

> [FN5.] In the context of a summary judgment discussion, the actual words used by the *Bowoto* court are: "To establish actual agency a party *must demonstrate* the following elements...." *Bowoto,* 312 F.Supp.2d at 1239 (emphasis added).

Lastly, Associates argues that even if Dion states a claim under the alter ego doctrine, agency or some other legally cognizable theory, Dion must make such a claim separately from its breach-of-contract action. *See* Docket No. 31 at 3-4. The only authority Associates cites to support this reasoning is *Neilson,* 290 F.Supp.2d 1101, which recog-

tices, among others, caused the companies to operate as one entity and reasonably misled Dion about the business it would be providing services for as well as the actual value of the Consulting Agreement it was offered. It would be inequitable to allow Associates to now assert a distinction between the corporations to avoid liability arising from the Consulting Agreement.

*Id.* The amended complaint also sets forth facts supporting both elements. *Id.* at ¶¶ 5.3-5.9.[FN3]

> [FN3.] Paragraph 5.9 states that "Don Fowler informed Dion that Wireless was insolvent and unable to pay Dion the compensation due under the Service Termination Agreement ... To date, Dion has not been paid for its February consulting fees or the severance pay as required. The amount owed Dion exceeds $75,000." *See* Docket No. 19 at 6. In its reply, Associates concludes "Dion has failed to expressly plead facts to substantiate the second element of an alter ego theory-that an inequitable result will flow from the failure to allow Dion to maintain an alter ego claim against Associates." *See* Docket No. 31 at 7. The Court fails to see how a loss of more than $75,000 resulting from an allegedly insolvent sister corporation is not an "inequitable result" in the alter ego context.

**2. Agency relationship between Associates and Wireless**

In response to Dion's opposition to the motion to dismiss, Associates argues that Dion fails to plead a claim based on an agency relationship between Wireless and Associates because Dion provides no facts to support the three elements necessary to prove agency.[FN4] Associates again cites to a district court case, *Bowoto v. Chevron Texaco Corp.,* 312 F.Supp.2d 1229 (N.D.Cal.2004) (Illston, J.), to support Dion's alleged failure to plead agency liability. Associates confuses the federal notice pleading standard with an evidentiary standard; the *Bowoto* decision came in the context of summary judgment, not a 12(b)(6) motion. *Id.* Associates reinforces the meritless nature of its argument by blatantly misrepresenting the holding of *Bowoto* in its claim that a "plaintiff asserting a claim based on an agency relationship *must plead* the [three elements of agency]."[FN5] *See* Docket No. 31 at 8 (emphasis added). *Bowoto* stands for no such proposition because the case dealt with a summary judgment motion, not a Rule 12(b)(6) motion. In its pleading, Dion is only required by Rule 8(a) to place Associates "on notice" of its claim for breach of contract based on Associates' agency relationship with Wireless. *See Bautista,* 216 F.3d at 843. In its complaint, Dion states that "Associates is also liable for breach of contract because Wireless was acting as its agent in entering the Consulting Agreement. Associates created Wireless and sought the Consulting Agreement with Dion as a vehicle for funding and growing Associates' existing business." *See* Docket No. 19 at ¶ 6.6. Dion's complaint adequately places Associates on notice of its claim.

> [FN4.] The three elements are 1) a manifestation by the principal that the agent shall act for him or her, 2) the agent must accept the undertaking and 3) an understanding that the principal is to be in control of the undertaking. *Bowoto v. Chevron Texaco Corp.,* 312 F.Supp.2d 1229, 1239 (N.D.Cal.2004).

> [FN5.] In the context of a summary judgment discussion, the actual words used by the *Bowoto* court are: "To establish actual agency a party *must demonstrate* the following elements...." *Bowoto,* 312 F.Supp.2d at 1239 (emphasis added).

Lastly, Associates argues that even if Dion states a claim under the alter ego doctrine, agency or some other legally cognizable theory, Dion must make such a claim separately from its breach-of-contract action. *See* Docket No. 31 at 3-4. The only authority Associates cites to support this reasoning is *Neilson,* 290 F.Supp.2d 1101, which recog-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

nizes the alter ego theory as a claim separate from a breach-of-contract claim. But such a recognition, by itself, does not force litigants to separately describe claims under separate counts, nor does Associates point to any authority for this proposition. FN6 See *Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462, 466 (9th Cir.1990) ("while it is not necessary that plaintiff state sufficient facts to constitute a cause of action, plaintiff must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.") Even though separate headings or counts in the complaint may have made the pleading easier to read, Associates was put on notice because the second amended complaint mentions alter ego, agency and estoppel as the theories under which Associates could be held liable for the contractual obligations of Wireless. *See* Docket No. 19 at 7-8. A complaint need only contain affirmative statements sufficient to "establish a basis for judgment against the defendant." *Yamaguchi v. U.S. Dept. of the Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997).

> FN6. *See also* THE RUTTER GROUP, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL, CH. 8-B(3)(B) (2) ("It is not always necessary to specify the precise nature of the claim asserted as long as the facts alleged put defendant on notice thereof").

**B. Promissory estoppel**

**\*5** Although Dion never expressly uses the phrase "promissory estoppel" in its complaint, it does mix an estoppel argument into its breach-of-contract claim. *See* Docket No. 19 at ¶ 6.7. Associates' reply attacks Dion's claim of promissory estoppel because "[n]othing in [the complaint] suggests promissory estoppel aside from Dion's single use of the word 'promise' in [Paragraph 6.7]." *See* Docket No. 31 at 9. The elements of promissory estoppel are 1) a clear promise, 2) reliance, 3) substantial detriment and 4) damages measured by the extent of the obligation assumed and not performed. *Toscano v. Greene Music,* 124 Cal.App.4th 685, 692, 21 Cal.Rptr.3d 732 (4th Dist.2004) (citations omitted). Dion's complaint says "Dion reasonably relied on Associates' representations" and "is damaged by this promise because Wireless now asserts an inability to pay the contracted compensation." *See* Docket No. 19, ¶ 6.7. This section of the complaint asserts all four elements of promissory estoppel. *Id.* That Dion fails to use the precise phrase "promissory estoppel" is not enough to render the complaint inadequate given the Court's duty to "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Parks School of Business,* 51 F.3d at 1484. *See also Coleman v. Standard Life Ins. Co.,* 288 F.Supp.2d 1116, 1120 (E.D.Cal.2003) (quoting *Pair-A-Dice Acquisition Partners, Inc. v. Bd. of Trustees of the Galveston Wharves,* 185 F.Supp.2d 703, 708 n. 6 (S.D.Tex.2002) ("Although [plaintiff] fails to use the term 'promissory estoppel' to describe its theory of recovery ... the Court assumes that [plaintiff intended to plead promissory estoppel as an alternative theory of recovery] and will consider the merit of such argument").

**C. Motion for a more definite statement**

If its motion to dismiss under Rule 12(b)(6) is not granted, Associates requests that the Court require Dion to amend its complaint to form a more definite statement of the claims as permitted under Rule 12(e) of the Federal Rules of Civil Procedure. A host of decisions from this District have concluded that "[m]otions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Sagan v. Apple Computer, Inc.,* 874 F.Supp. 1072, 1077 (N.D.Cal.1994) (citing *In re American Intern. Airways, Inc.,* 66 B.R. 642 (E.D.Penn.1986); *Hunter v. Ohio Indem. Co.,* WL 2458715 (N.D.Cal.2006); *Info Vista S.A. v. Vistanet IT, Inc.,* WL 1176628, 1 (N.D.Cal.2007); *Podesta v. City of San Leandro,* WL 2333802, 2

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2007 WL 3231738 (N.D.Cal.)
**(Cite as: 2007 WL 3231738 (N.D.Cal.))**

(N.D.Cal.2005); *Whiteway v. FedEx Kinko's Office and Print Services, Inc.,* WL 3095864, 1 (N.D.Cal.2005); *Northwest Pipe Co. v. Travelers Indem. Co. of Conn.,* WL 24027882 (N.D.Cal.2003).

As stated above, Dion's second amended complaint satisfies the federal pleading requirements of Rule 8(a) because Associates has been put on notice of the legal theories that could hold Associates liable to Dion for breach of contract. Since the complaint is adequate, there is no need for Dion to amend it under Rule 12(e).

**D. Motion to strike**

***6** Associates also requests that Paragraphs 6.5, 6.6 and 6.7 of Dion's second amended complaint be stricken under Federal Rule 12(f) because they "bear no relationship to the subject matter of Dion's complaint." *See* Docket No. 24 at 8. Motions to strike, like motions for a more definite statement, are generally viewed with disfavor because they are often used as delaying tactics. *Bowoto v. Chevron Corp.,* WL 2349338 (N.D.Cal.2007); *See Rosales v. Citibank,* 133 F.Supp.2d 1177, 1180 (N.D.Cal.2001); *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1478 (C.D.Cal.1996). Additionally, Rule 12(f) "is neither an authorized nor a proper way to procure the dismissal of all or part of a complaint." *Yamamoto v. Omiya,* 564 F.2d 1319, 1327 (9th Cir.1977) (quoting 5 WRIGHT & MILLER, FEDERAL PRAC. & PROC. § 1380 AT 782 (1969)).

The paragraphs Associates requests to be stricken concern Dion's legal theories by which Associates may be held liable for breach of contract-namely, the alter ego doctrine, agency and promissory estoppel. *See* Docket No. 19 at 7-8. Since these areas of the complaint relate directly to the subject matter of Dion's action for breach of contract against both Wireless and Associates, they should not be stricken. Nor has Associates presented any reason why these paragraphs should be stricken because they are "impertinent or scandalous." FED.R.CIV.P. 12(F).

**CONCLUSION**

Accordingly, Associates' motion to dismiss pursuant to Rule 12(b) (6) [Docket No. 23] is DENIED. Associates' alternative motions pursuant to Rules 12(e) and 12(f) are also DENIED.

IT IS SO ORDERED.

N.D.Cal.,2007.
Dion LLC v. Infotek Wireless, Inc.
Not Reported in F.Supp.2d, 2007 WL 3231738 (N.D.Cal.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.