# Exhibit 9

59 F.3d 170, 1995 WL 376722 (C.A.6 (Tenn.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 59 F.3d 170, 1995 WL 376722 (C.A.6 (Tenn.)))**

**C**

NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. Use FI CTA6 Rule 28 and
FI CTA6 IOP 206 for rules regarding the citation of
unpublished opinions.)

United States Court of Appeals, Sixth Circuit.
DREXEL CHEMICAL COMPANY, Plaintiff-Ap-
pellee,
v.
SGS DEPAUW & STOKOE, Defendant-Appellant.

No. 94-5564.
June 22, 1995.

On Appeal from the United States District Court,
for the Western District of Tennessee, No.
92-02593; Julia Smith Gibbons, Judge.
W.D.Tenn.

REMANDED.

**Before: KEITH, MARTIN, and GUY, Circuit
Judges.**

PER CURIAM.

**\*1** This is an interlocutory appeal of a district
court order denying Societe Generale de Surveil-
lance DePauw & Stokoe's Motion to Dismiss for
lack of personal jurisdiction and *forum non con-
veniens.* Because we find that the district court
should have permitted discovery or held an eviden-
tiary hearing, rather than deciding the issue of per-
sonal jurisdiction on the basis of written submis-
sions only, we remand the case to the district court.

In December 1991, the Tennessee-based Drexel
Chemical Company contracted in Poland with an
Austrian chemical company, Chrisfield Holding
Corporation, to purchase certain pesticides. The
purchase was to be financed through a letter of
credit that required the chemicals to be tested and
certified prior to the completion of the transaction.

SGS DePauw & Stokoe, a Belgian company
wholly-owned by the Swiss-based SGS Holding,
and SGS Poland, a Polish-based, majority-owned
subsidiary of SGS Holding, were ultimately chosen
to perform the requisite testing and certification.
Drexel's International Sales Manager, Leigh
Shockey, specifically requested that an SGS entity
perform the inspection, in light of the corporation's
reputation, its large size and accessibility in the
United States, and its record of prior dealings with
Drexel. This request was reflected in the original
letter of credit, which instructed that an "SGS in-
spection certificate" was required on all merchand-
ise.

Because the goods were to be shipped from a
Polish port, Shockey allegedly contacted "the SGS
office in New Orleans" as well as the "SGS Office
in New York" to verify that SGS Poland had the ca-
pacity to inspect them. On January 9, 1992,
Shockey learned from Padierna, the president of
Chrisfield, that SGS Poland could not conduct both
parts of the required inspection, because it did not
have a chemical laboratory. Padierna allegedly pro-
posed that SGS Poland physically inspect the
product and seal the containers and another SGS of-
fice analyze and certify the chemicals. Because the
entire inspection would still be completed by SGS,
Shockey consented to this arrangement.

In the wake of the alleged agreement between
Padierna and Shockey, Drexel prepared an amend-
ment to the letter of credit, authorizing "two separ-
ate SGS offices" to test the chemicals. The amend-
ment identified SGS Poland as the entity selected to
physically inspect the chemicals and "another SGS
European office such as Hamburg or Antwerp," as
the entity chosen to perform the required chemical
analysis.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

59 F.3d 170, 1995 WL 376722 (C.A.6 (Tenn.))

**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 59 F.3d 170, 1995 WL 376722 (C.A.6 (Tenn.)))**

SGS Poland witnessed the filling and sealing of the containers and drew the required samples. It then prepared an inspection report attesting to those activities. SGS DePauw & Stokoe ultimately analyzed the pesticide samples it received in Belgium and furnished an analytical report outlining the results of its inspection. Specifically, the report certified that the samples contained 96% linuron and 97% diuron. Based on the representations by SGS Poland and SGS DePauw & Stokoe that the chemicals were what they purported to be, Drexel paid for them. As later shipped, however, the goods did not conform to contract specifications. Upon receiving the chemicals in the United States, Drexel discovered that they contained none of the active ingredients certified as present by SGS Poland and SGS DePauw & Stokoe.

**\*2** Drexel subsequently learned that other companies had been similarly duped. In a letter denying its own liability, the Polish freight insurer explained that "[s]imilar results have been obtained by various other laboratories testing samples of other shipments recently arranged by Chrisfield and destined for other consignees throughout Europe." According to the letter, Chrisfield "was engaged in numerous illegal transactions and has committed a number of commercial frauds."

Drexel brought suit against SGS DePauw & Stokoe, SGS Poland, and SGS Holding, alleging breach of contract and negligent or intentional misrepresentation. Drexel filed its original complaint on July 21, 1992, and an amended complaint on October 21. Although Drexel has tried to serve process upon all of the named defendants, SGS De-Pauw & Stokoe is the only defendant that has been served and, consequently, is the only defendant that has appeared.

SGS DePauw & Stokoe filed a Motion to Dismiss on March 1, 1993, alleging insufficiency of process, lack of personal jurisdiction, and *forum non conveniens.* In support of its motion, SGS De-Pauw & Stokoe claimed that it never communicated with Drexel and that it had no links to Tennessee.

SGS DePauw & Stokoe also submitted affidavits explaining the structure of the SGS corporate family and averring that SGS DePauw & Stokoe does not do business in Tennessee. Drexel, in turn, submitted Shockey's affidavit in opposition to the motion. Without allowing discovery or holding an evidentiary hearing, the district court denied the motion on May 11.

On June 25, SGS DePauw & Stokoe filed a motion for reconsideration or for certification of an interlocutory appeal on the issues of personal jurisdiction and *forum non conveniens.* In an order dated January 24, 1994, the district court denied the motion for reconsideration but granted the request for certification of an interlocutory appeal. This order also stated that if properly served, SGS Poland and SGS Holding would be bound by the court's ruling on the issues of personal jurisdiction and *forum non conveniens.* In a February 1 order, the district court amended its May 11, 1993, order to certify an interlocutory appeal with respect to the issues of personal jurisdiction and *forum non conveniens.*

SGS DePauw & Stokoe then filed a petition in this Court, requesting permission to appeal. This Court granted the request on April 26, concluding that immediate review was appropriate under 28 U.S.C. § 1292(b). The petition was docketed as a notice of appeal pursuant to Rule 5(d) of the Federal Rules of Appellate Procedure.

In ruling upon a motion to dismiss for lack of personal jurisdiction, the district court has three procedural alternatives: "[it] may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981)). Although a plaintiff always bears the burden of establishing that jurisdiction exists, the weight of that burden depends upon whether the district court rules on the jurisdictional issue after hearing evidence or only upon written

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

59 F.3d 170, 1995 WL 376722 (C.A.6 (Tenn.))

**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 59 F.3d 170, 1995 WL 376722 (C.A.6 (Tenn.)))**

submissions of the parties. *Id.* In this appeal, we are faced with the question of whether the district court selected the proper method for ruling upon SGS DePauw & Stokoe's motion to dismiss. Therefore, we must determine whether the district court erred in ruling upon that motion on the basis of written affidavits only. If, in the complaint, it is unrefuted that the court has no jurisdiction, certainly no hearing or further development of the facts is necessary. Here, however, the written submissions raised disputed issues of fact with regard to cross-corporate entanglements. In order to resolve those issues, the district court should have allowed further discovery or held an evidentiary hearing. *See American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988) (citing *Data Disc, Inc. v. Systems Technology Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). Therefore, we remand the case to the district court for further fact-finding proceedings that it deems appropriate. We note that if the court decides to hold an evidentiary hearing, Drexel must establish the jurisdictional facts by a preponderance of the evidence in order to avoid dismissal. *Id.* (citing *Data Disc,* 557 F.2d at 1285). Because our decision leaves the jurisdictional issue unresolved, we need not address SGS DePauw & Stokoe's *forum non conveniens* argument.

**\*3** For the foregoing reasons, we REMAND the case to the district court for proceedings consistent with this opinion.

C.A.6 (Tenn.),1995.
Drexel Chemical Co. v. SGS Depauw & Stokoe
59 F.3d 170, 1995 WL 376722 (C.A.6 (Tenn.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.