# Exhibit 14

Page 1

Not Reported in F.Supp.2d, 2009 WL 331361 (W.D.Pa.), 2009-1 Trade Cases P 76,495
**(Cite as: 2009 WL 331361 (W.D.Pa.))**

United States District Court,
W.D. Pennsylvania.
In re FLAT GLASS ANTITRUST LITIGATION (II).
This Document Relates to: All Actions.

Civil Action No. 08–mc–180.
MDL No. 1942.
Feb. 11, 2009.

West KeySummary**Antitrust and Trade Regulation 29T ⚿972(4)**

29T Antitrust and Trade Regulation
    29TXVII Antitrust Actions, Proceedings, and Enforcement
        29TXVII(B) Actions
            29Tk972 Pleading
                29Tk972(2) Complaint
                      29Tk972(4) k. Conspiracy or Combination. Most Cited Cases

    Plaintiffs, alleging a flat glass manufacturer agreed to raise and fix prices through collusive energy surcharges and price increases, plead sufficient facts to state a violation of the Sherman Act. The plaintiffs alleged the glass manufacturers raised prices by identical percentages and charged energy surcharges in virtual lockstep until the European Commission launched a raid upon the flat glass market for a similar conspiracy in Europe. Because the plaintiffs alleged more than a parallel conduct based on the European Commission's findings and used those findings solely as evidence of timing, the manufacturer's motion to dismiss was denied. 15 U.S.C. § 1.

*OPINION and ORDER OF COURT*
AMBROSE, Chief Judge.
*Synopsis*
    **\*1** Defendants filed a Motions to Dismiss Plaintiffs' Consolidated Amended Complaint. (Doc. No. 85). All Defendants filed a Brief in Support (Doc. No. 86), however, Defendant PPG Industries, Inc. ("PPG") filed an additional Brief in Support (Doc. No. 87). Plaintiffs filed a Brief in Opposition thereto. (Doc. No. 117). Defendants have filed a Reply and Defendant PPG filed an additional separate Reply. (Doc. Nos. 120 and 121). Defendants also submitted for further consideration supplemental authority recently filed. (Doc. No. 127). Plaintiffs filed a response thereto. (Doc. No. 128). After careful consideration of the same and based on the reasoning set forth below, the Motion to Dismiss (Doc. No. 85) is denied.

*Opinion*
**I. Factual Background and Procedural History**
    This is an antitrust class action charging certain United States manufacturers of high quality flat glass used for construction and architectural applications ("Construction Flat Glass") with price fixing in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs [FN1] bring this action on behalf of themselves and all entities that purchased construction flat glass in the United States directly from Defendants or their controlled subsidiaries from July 1, 2002 through December 31, 2006. Defendants are AGC America, Inc., AGC Flat Glass North America, Inc. (collectively "AGC"), Guardian Industries Corp. ("Guardian"), Pilkington North America, Inc., Pilkington Holding Inc. (together "Pilkington), and PPG. Plaintiffs allege that Defendants controlled approximately 75% of the United States market for construction flat glass. They allege that Defendants agreed to raise and fix prices through a combination of collusive energy surcharges and price increases.

> FN1. The named Plaintiffs are Colonial Glass Solutions ("Colonial Glass"), Gilkey Window Company, Inc. ("Gilkey Window"), Girard Class Corporation ("Girard Glass"), Jackson Glass Company, Inc. ("Jackson Glass"), Maran–Wurzell Glass & Mirror ("Maran–Wurzell"), and Thermo–Twin Industries, Inc.

Not Reported in F.Supp.2d, 2009 WL 331361 (W.D.Pa.), 2009-1 Trade Cases P 76,495
**(Cite as: 2009 WL 331361 (W.D.Pa.))**

(Thermo–Twin").

On June 10, 2008, the United States Judicial Panel on Multidistrict Litigation filed a transfer order, pursuant to 28 U.S.C. § 1407, consolidating twenty cases for coordinated or consolidated pretrial proceedings. (Doc. No. 1). On July 22, 2008, I entered an order appointing interim co-lead class counsel and interim liaison class counsel. (Doc. No. 46). Plaintiffs filed their Consolidated Amended Complaint ("CAC") on September 5, 2008. (Doc. No. 68). Thereafter, Defendants filed their Motion to Dismiss. (Doc. No. 85). Briefing is now complete and the Motion is ripe for review.

**II. Legal Analysis**

**A.** *Standard of Review*

In ruling on a 12(b)(6) motion for failure to state a claim, I must accept all factual allegations, and all reasonable inferences therefrom, as true and view them in the light most favorable to the plaintiff. *Phillips v. County of Allegheny,* 525 F.3d 224, 233 (3d Cir.2008). Although a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *Phillips,* 515 F.3d at 231. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (internal citations omitted). "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement [in a § 1 claim] reflects Rule 8(a)(2)'s threshold requirement that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 1966. In other words, "factual allegations in the complaint must not be 'so underdeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.'" *Umland v. Planco Financial Services, Inc.,* 542 F.3d 59, 64 (3d Cir.2008), *quoting Phillips,* 515 F.3d at 233.

**\*2** Thus, a § 1 claim

requires a complaint with enough factual matter (taken as true) to suggest than an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement....[A]llegations of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Id.* at 1965–66. "[W]ithout further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Id.*

With this standard in mind, I now turn to the issues of this case.

**B.** *Sufficiency of Allegations*

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce...." 15 U.S.C. § 1. "The existence of an agreement is '[t]he very essence of a section 1 claim.'" *In re Flat Glass Antitrust Litig.,* 385 F.3d

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 331361 (W.D.Pa.), 2009-1 Trade Cases P 76,495
**(Cite as: 2009 WL 331361 (W.D.Pa.))**

350, 356 (3d Cir.2004), *quoting, Alvord–Polk, Inc. v. F. Schumacher & Co.,* 37 F.3d 996, 999 (3d Cir.1994). Defendants argue that the CAC should be dismissed because the various allegations therein are insufficient under the pleading standard set forth above to infer the existence of an agreement or conspiracy to restrain trade.[FN2] (Doc. No. 86). After a careful review of the CAC, in the light most favorable to Plaintiffs, and the issues raised in the briefs, however, I find that the allegations of the CAC nudge over the line of sufficiency.

> FN2. Specifically, Defendants argue that the following allegations are insufficient: 1) the allegations regarding an agreement; 2) the allegations of parallel energy surcharges are insufficient; 3) the allegations of parallel price increases by some Defendants are insufficient; 4) the allegations of participation in trade associations are insufficient; 5) the allegations of Defendants' profitability are insufficient; 6) the allegations of miscellaneous suspicious statements are insufficient; and 7) the allegations regarding European misconduct are insufficient. *Id.* Additionally and separately, PPG argues that the CAC should be dismissed against it because: 1) PPG did not participate in the alleged European conspiracy, thus, the allegation that "multi-market" contact in the flat glass industry in Europe and the U.S. made it both desirable and feasible for Defendants to collude are irrelevant as to PPG; and 2) Plaintiffs implicitly concede they fail to sufficiently allege a claim against PPG. (Doc. No. 87).

For example, the CAC alleges there was a history of inability to raise and maintain prices prior to the conspiracy (¶ ¶ 7, 71) and a history of varying surcharges by region of the country (¶ 67), but after June of 2002, Defendants did not vary their surcharges by region. (¶ 80). Rather, the CAC alleges an agreement that existed for over 30 months beginning in June of 2002 (¶ 8), by raising prices by identical percentages and charging energy surcharges in virtual lockstep while providing customers with identical charts and justifications for the same, until February of 2005, when the European Commission launched raids upon the European construction flat glass market. (¶¶ 5, 8, 10–13, 75–79, 83–93, 102–103, 105–106, 109, 126–128). Thereafter, Defendants did not engage in lock step parallel conduct. (¶ 112–114). Thus, contrary to Defendants' position, this is not a case where Plaintiffs rely solely on the decision of the European Commission to assert a domestic conspiracy or a solely parallel conduct case. Therefore, dismissal of the CAC is not warranted based on Defendants' EC allegation arguments and arguments of parallel conduct.

**\*3** While it is true that membership in trade associations, without more, does not in and of itself suggest a conspiracy, the meeting dates provide the Defendants with notice of specific time frames and manner of the alleged agreement, and thus, dismissal based on the same is not warranted. Furthermore, attendance at said meetings should be easily ascertained through discovery such that there is a reasonable expectation that discovery may reveal evidence of the alleged illegal conspiracy.

It is of no moment that PPG did not participate in the European conspiracy. The CAC is not simply asserting a theory of "since it happened there, it happened here." To the contrary, as set forth above, the CAC sets forth sufficient allegations, when read *in toto,* to set forth a § 1 claim. To that end, the facts surrounding the European conspiracy are relevant for, *inter alia,* timing. Consequently, I find no merit to PPG's claim that Plaintiffs implicitly conceded that they failed to allege a claim against PPG.

Thus, when read as a whole and in the light most favorable to Plaintiffs, the CAC complies with Rule 8(a)(2) and *Twombly* setting forth sufficient notice and the grounds therefore of an alleged agreement/conspiracy that if true would make an antitrust conspiracy plausible. Therefore, the CAC

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 331361 (W.D.Pa.), 2009-1 Trade Cases P 76,495
**(Cite as: 2009 WL 331361 (W.D.Pa.))**

survives the pending Motion to Dismiss. Accordingly, Defendants' Motion to Dismiss (Doc. No. 85) is denied.

### *ORDER*

And now, this 11th day of February, 2009, upon careful consideration of Defendants' Motion to Dismiss (Docket Nos. 85), said Motion is denied.

A status conference is set for March 9, 2009, at 1:30 p.m.

W.D.Pa.,2009.
In re Flat Glass Antitrust Litigation (II)
Not Reported in F.Supp.2d, 2009 WL 331361 (W.D.Pa.), 2009-1 Trade Cases P 76,495

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.