# Exhibit 25

Slip Copy, 2011 WL 5553696 (S.D.Ala.)
**(Cite as: 2011 WL 5553696 (S.D.Ala.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Alabama,
Southern Division.
J & M ASSOCIATES, INC., Plaintiff,
v.
Mark C. CALLAHAN, d/b/a Callahan Financial Solutions, et. al., Defendants.

Civil Action No. 07–0883–CG–C.
Nov. 15, 2011.

James G. Curenton, Jr., Fairhope, AL, for Plaintiff.

Frederick Romero, Los Angeles, CA, pro se.

Charles Baer, U.S. Attorney's Office, Mobile, AL, for Defendants.

### ORDER

CALLIE V.S. GRANADE, District Judge.

**\*1** This matter is before the court on defendant Fredrick A. Romero's motion to set aside default judgment (Doc. 247), plaintiff's response (Doc. 251), and Romero's motion for leave to amend his motion to set aside default judgment. (Doc. 254). For the reasons explained herein, the motion to amend is due to be **GRANTED** and the motion to set aside default judgment is due to be **DENIED.**

### PROCEDURAL HISTORY

On December 21, 2007, J & M Associates, Inc. ("J & M"), brought a lawsuit against Mark C. Callahan d/b/a Callahan Financial Solutions, Lalat Pattanaik d/b/a I.P.S. Private Advisors, Brady Richardson d/b/a Richardson Consultants, J. Michael Mangawang, Fredrick A. Romero, and American General Life Insurance Company ("AIG") alleging breach of contract, negligence, wantonness, fraud, fraudulent concealment, and civil conspiracy relating to J & M's enrollment in a welfare benefit plan (the "VEBA plan") that ultimately led to "huge tax liability and penalties." (Doc. 1). On April 3, 2010, this court entered default against Brady Richardson d/b/a Richardson Consultants, J. Michael Mangawang, and Fredrick A. Romero for failure to plead or otherwise defend the action. (Doc. 47). On June 15, 2010, J & M's claims against Mark Callahan d/b/a Callahan Financial Solutions, Lalat Pattanaik d/b/a I .P.S. Private Advisors, and Brady Richardson d/b/a Richardson Consultants were dismissed with prejudice. (Docs. 148, 153, & 154). On July 27, 2011, J & M's claims against AIG were dismissed with prejudice, leaving only J. Michael Mangawang and Frederick A. Romero as defendants in this case. (Doc. 238).

The Eleventh Circuit has an established policy of determining cases on their merits and therefore views defaults with disfavor. *In re Worldwide Web Systems, Inc.,* 328 F.3d 1291 (11th Cir.2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada,* 674 F.2d 1365, 1369 (11th Cir.1982). Nevertheless, it is no less established that a "district court has the authority to enter default judgment for failure ... to comply with its orders or rules of procedure." *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir.1985). Accordingly, on August 31, 2011, this court entered an order of default judgment against Romero. (Doc. 243). Subsequently, on September 28, 2011, Romero filed a motion to set aside default judgment. (Doc. 247). On October 20, 2011, J & M filed a response brief opposing Romero's motion. (Doc. 251). Romero then moved to amend his motion (Doc. 254).

**A. RULE 55(c) MOTION VERSUS RULE 60(b) MOTION**

Romero originally brought his motion pursuant to Federal Rule of Civil Procedure 55(c). (Doc. 247, p. 1). Fed.R.Civ.P. 55(c) provides that the court may set aside an entry of default for good cause shown, whereas a party seeking to set aside a default judgment must proceed under Federal Rule of Civil Procedure 60(b). *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.,* 740 F.2d

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

1499, 1507 (11th Cir.1984).

**\*2** "The importance of distinguishing between an entry of default and a default judgment lies in the standard to be applied in determining whether or not to set aside the default." *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528 (11th Cir.1990). The excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default. *Id.* (citing *Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988)).

As an attorney, Romero understands the difference between setting aside an entry of default, on the one hand, and setting aside a default judgment, on the other hand, and thus moved to amend his motion to be brought pursuant to Rule 60(b), and not Rule 55(c).[FN1] The court hereby **GRANTS** the motion to amend, and addresses the arguments made by Romero under the standard of Rule 60(b).

> FN1. With this point in mind, it has not gone unnoticed by the court that Romero signed his motion as a pro se litigant. *See* Doc. 247, p. 13. To the extent that Romero hopes to elicit leniency from the court and to gain advantage from the less stringent standards applied to legitimate pro se litigants, such an attempt will fail. "Although pro se litigants normally receive extra latitude in their pleadings, attorneys who represent themselves are not held to a lesser standard than attorneys who represent others." *Brannon v. Tarlov,* 986 F.Supp. 146, 148 (E.D.N.Y.1997) (*quoting Davidson v. Garry,* 956 F.Supp. 265, 267 (E.D.N.Y.1996); *accord Harbulak v.. County of Suffolk,* 654 F.2d 194, 198 (2d Cir.1981)). Romero also stresses that he is a transactional attorney and not a litigator. (Doc. 247, p. 8). However, the operative fact here is that Romero is a licensed attorney. If he is concerned that litigation is not his forté, then he should hire outside counsel. Otherwise, the court holds him to the same standard as any other attorney appearing before it.

Fed.R.Civ.P. 60(b) allows a court to relieve a party from a final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason that justifies relief. Fed.R.Civ.P. 60(b)(1)-(6). The party seeking relief from final judgment must "demonstrate a justification so compelling that the court was required to vacate its order." *Gilley v. Monsanto Co., Inc.,* 428 Fed. Appx. 883, 884–885 (11th Cir.2011) (*quoting Cavaliere v. Allstate Ins. Co.,* 996 F.2d 1111, 1115 (11th Cir.1993)).

Romero argues that the court should set aside default judgment because (1) the judgment is void due to lack of personal jurisdiction; (2) the judgment is void due to lack of subject matter jurisdiction; and (3) Romero's failure to defend the action meets the excusable neglect standard. Romero also argues that this court is the improper venue for a lawsuit against him. The court addresses each argument in turn.

**B. RULE 60(b)(4)—PERSONAL JURISDICTION**

Rule 60(b)(4) allows a litigant-even one who does not initially appear-to collaterally attack a judgment on the ground that it is void due to lack of personal jurisdiction. *Sloss Industries Corporation v. Eurisol,* 488 F.3d 922, 924 (11th Cir.2007) (*citing Hazen Research, Inc. v. Omega Minerals, Inc.,* 497 F.2d 151, 154 (5th Cir.1974)). This is because "[a]n in personam judgment entered without personal jurisdiction over a defendant is void as to that defendant." *Id.* (internal quotation marks omitted); *see also Burke v. Smith,* 252 F.3d 1260, 1263 (11th Cir .2001) ("[u]nlike motions pursuant to other subsections of Rule 60(b), Rule 60(b)(4) motions leave no margin for consideration of the district court's

Slip Copy, 2011 WL 5553696 (S.D.Ala.)
**(Cite as: 2011 WL 5553696 (S.D.Ala.))**

discretion as the judgments themselves are by definition either legal nullities or not.")

Determining whether a court has personal jurisdiction over a party generally entails a two-step inquiry. *Sloss,* 488 F.3d at 925. First, the court must determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. See *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir.1996). Second, the court must examine whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend "traditional notions of fair play and substantial justice." *Sloss* at 925 (*quoting Int'l Shoe Co. v.. Washington,* 326 U.S. 310, 316 (1945)). In this case, the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible. *Id.* (*citing Ala. R. Civ. P. 4.2(b); Sieber v. Campbell,* 810 So.2d 641, 644 (Ala.2001)). See also *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *Duke v. Young,* 496 So.2d 37 (Ala.1986); *Brooks v. Inlow,* 453 So.2d 349 (Ala.1984).

**\*3** This case involves the concept of specific jurisdiction, which applies when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit. See *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1220 n. 27 (11th Cir.2009). To permit the exercise of specific jurisdiction, there must first exist "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Additionally, the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *United States SEC v. Carrillo,* 115 F.3d 1540, 1542 (11th Cir.1997). These dual requirements are "the constitutional benchmarks of the minimum contacts analysis and ensure that a defendant is only burdened with litigation in a forum where his 'conduct and connection with the forum ... are such that he should reasonably anticipate being haled into court there.' " *Oldfield,* 558 F.3d at 1220–1221 (*quoting World–Wide Volkswagen Corp.,* 444 U.S. at 297); see also *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,* 197 F.3d 1070, 1074 (11th Cir.1999).

In his motion to set aside default judgment and accompanying affidavit (Doc. 247, pp. 73–78), Romero argues, *inter alia,* that his involvement in the factual background of the case was limited to his provision to J & M of a "more likely than not" legal opinion letter regarding the VEBA plan. (Doc. 247, p. 74). Romero points to the fact that both he and J & M did business in states other than Alabama (California and Mississippi, respectively), and asserts that he sent all correspondence to J & M at its principal place of business in Moss Point, Mississippi. *Id.* Romero states that he did not send any correspondence to Alabama. *Id.* Furthermore, Romero also asserts that he did not know any of the other defendants (and alleged co-conspirators) except for Lalat Pattanaik ("Pattanaik"), who, as characterized by Romero, "referred me into the case with J & M Associates ..." *Id.* Romero further states that he did not receive retainer fees or commissions from Pattanaik or any of the other defendants, whose activities in Alabama are well-documented in the complaint. *Id.*

These assertions ordinarily would comprise a *prima facie* evidentiary showing that this court lacks personal jurisdiction over Romero. Specifically, where Romero wrote a legal opinion letter in California and mailed it to J & M's office in Mississippi, then the requisite minimum contacts with Alabama would not normally appear to exist such that Romero could reasonably have expected to be sued here, rather than Mississippi or California.

However, in this case, where J & M alleged a claim of civil conspiracy in its complaint, such a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*prima facie* evidentiary showing does not conclude the analysis. (*See* Doc. 1). "Alabama courts have recognized and adopted the conspiracy theory of personal jurisdiction," which comes into play under Alabama law only when the complaint includes particularized allegations of both the conspiracy and the overt acts within the forum taken in furtherance of the conspiracy. *Professional Locate and Recovery, Inc. v. Prime, Inc.,* 2007 WL 1624792, *2 (S.D. Ala. June 4, 2007)* (*citing Ex parte United Ins. Cos.,* 936 So.2d 1049 (Ala.2006) (holding that a plaintiff raising a civil-conspiracy claim was entitled to jurisdictional discovery because she presented detailed pleadings regarding the corporate relationship of the defendants and regarding the role each defendant allegedly played in the civil conspiracy)) (internal citations omitted); *see e.g., Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1031 (D.C.Cir.1997) (recognizing that the conspiracy theory of personal jurisdiction requires plaintiff to plead with particularity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy"); *Textor v. Board of Regents of Northern Illinois University,* 711 F.2d 1387, 1392–1393 (7th Cir.1983) ("To plead successfully facts supporting application of the conspiracy theory of jurisdiction a plaintiff must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state.") Thus, the court must determine whether J & M has pleaded its conspiracy allegations with sufficient particularity, and whether it alleges overt acts taken within Alabama in furtherance of the conspiracy.

**\*4** In *Snyder v. Faget,* 326 So.2d. 113, 119 (Ala.1976), the Supreme Court of Alabama summarized the necessary elements of civil conspiracy as follows:

" '(a) Purpose. The most important feature of a tortious conspiracy where unlawful means are not used is that the object or purpose of the combination must be to cause damage to the plaintiff. It is not a matter of "intention" as that word is normally used in the law, for intention signifies not what a person is aiming at but what may reasonably be expected to flow from what he does, while for conspiracy the test is "what is in truth the object in the minds of the combiners when they acted as they did." Malice in the sense of malevolence, spite or ill-will is not an essential for liability; what is required is that the combiners should have acted in order that (not So that) the plaintiff should suffer damage. If they did not act in order that the plaintiff should suffer damage they are not liable, however selfish their attitude and however inevitable the plaintiff's damage may have been ...

" '(b) Combination. There must, of course, be concerted action between two or more persons....

" '(c) Overt act causing damage.... [A]n overt act causing damage is an essential of liability in tort....' "

(*quoting* Jolowicz & Lewis, *Winfield on Torts,* Conspiracy 557, 559–60 (8th ed.1967)).

With these factors in mind, the court considers as true all factual allegations contained in J & M's complaint, which are presumed admitted because Romero defaulted in April 2008. *Virgin Records America, Inc. v. Lacey,* 510 F.Supp.2d 588, 593 (S.D.Ala.2007) ("The effect of a default is to render all well-pleaded factual allegations of the complaint (except those relating to damages) admitted."). These allegations include the following: (1) defendants Pattanaik, Callahan, and Richardson made a presentation about the VEBA plan to J & M at the Grand Hotel in Point Clear, Alabama, on May 18, 2004, (Doc. 1, pp. 5); (2) J & M paid Romero a retainer fee on the same day as the VEBA plan presentation in Baldwin County—May 18, 2004, (Doc. 1, p. 7); (3) in his opinion letter, dated August 12, 2004, Romero represented to J & M that the VEBA plan had been established and operated for years and had been approved by the IRS, and that the contributions would be subject to full deductibility in the year for which the contribution

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

was made as an ordinary and necessary expense. (Doc. 1, p. 13.) (quotations omitted); (4) the representations made during the course of the Baldwin County presentation by Pattanaik, Callahan, and Richardson, as well as the representations made by Romero in the opinion letter, were fraudulent (Doc. 1, p. 22); and (4) the defendants, including Pattanaik and Romero, conspired and conferred among themselves in an effort to commit fraud. (Doc. 1, p. 25). As to this last point, Romero's own affidavit supports the complaint's allegation of a nexus, or "combination" between Romero and Pattanaik (an alleged co-conspirator) because, by Romero's own admission, Pattanaik "referred" Romero to J & M because of his work on the VEBA plan. (Doc. 247, p. 74). Additionally, John Wilks, J & M's president, stated in his deposition that Romero came to J & M's attention through Pattanaik, and that J & M's desire for an opinion letter was communicated to Romero by Pattanaik, which is further evidence of a nexus between Romero and Pattanaik. *See* Doc. 159–4, p. 28.

**\*5** As stated, *supra,* where a plaintiff pleads a conspiracy with particularity, as well as an overt act within the forum taken in furtherance of the conspiracy, then personal jurisdiction is established. *Matthews v. Brookstone Stores, Inc.,* 469 F.Supp.2d 1056, 1066 (S.D.Ala.2007) (*citing In re McInnis,* 820 So.2d 795, 806–07 (Ala.2001)). In this case, J & M has alleged (i) a purpose to sell the VEBA plan to J & M; (ii) a nexus, or "combination," among the defendants, including Romero; and (iii) an overt act in the form of the sales presentation at the Grand Hotel in Point Clear, Alabama, at which Pattanaik, Callahan, and Richardson allegedly explained the benefits and advantages of enrolling in the VEBA plan to J & M. (Doc. 1, p. 5).

Accordingly, the court finds J & M's factual allegations of civil conspiracy and an overt act within Alabama to be specific and particular enough to survive Romero's (construed) Rule 60(b)(4) motion, as it pertains to personal jurisdiction.

C. **RULE 60(b)(4)**—SUBJECT MATTER JURISDICTION

Romero also claims that the court lacks subject matter jurisdiction. "In general, a judgment is void under Rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter." *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1216 (11th Cir.2009). Romero's argument regarding subject matter jurisdiction can be broken down into two parts, which the court addresses separately.

**(1) Insurer Exception to 28 U.S.C. § 1332(c)(1)**

Romero first argues that, because he is not a citizen of Alabama, because J & M's principal place of business is not Alabama, and because no other defendant in the case is a citizen of Alabama, then the requirements of 28 U.S.C., § 1332(c)(1) have not been met. (Doc. 247, p. 25–26). Romero's argument appears to hinge on the fact that he "is not a licensed insurance salesman and ... received no commissions for any of the transactions stated in the [c]omplaint," and therefore, "the exception stated in referenced [sic] section 1332(c)(1) does not apply as Romero is not an insurer." (Doc. 247, p. 26). This argument must fail, as it misstates the facts of the case as they existed at the outset of the litigation, and misapplies the § 1332(c)(1) exception.

Pursuant to 28 U.S.C. § 1332, a district court has jurisdiction over all civil actions where (1) the suit is between citizens of different states, and (2) the amount in controversy exceeds $75,000. *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005). § 1332 requires complete diversity; therefore, each defendant must be a citizen of a different state than each plaintiff. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,* 411 F.3d 1242, 1247 (11th Cir.2005). A corporation such as J & M has dual bases for citizenship for diversity purposes: its state of incorporation, and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see also Fritz v. Am. Home Shield Corp.,* 751 F.2d 1152, 1153 (11th Cir.1985).

**\*6** In this case, the § 1332 requirement of complete diversity is met because Romero is a citizen

of California, and J & M is a corporation incorporated under the laws of Mississippi, with its principal place of business located in Moss Point, Mississippi. Furthermore, at the time J & M filed the instant action in the Southern District of Alabama, one of the defendants was Mark Callahan, d/b/a Callahan Financial Solutions, a resident of Baldwin County, Alabama. (Doc. 1, p. 2). The amount in controversy requirement is also met, because the default judgment against Romero stands at slightly more than $1.7 million, which obviously is significantly in excess of $75,000. *See* Doc. 243.

Romero misunderstands the purpose of the insurer exception in § 1332(c)(1), which deems a liability insurer to be a citizen of the same state as its insured in order to prevent subsection (c) being used as a vehicle to get the insurer into federal court when both the plaintiff and the insured are residents of the same state. *See Newsom v. Zurich Ins. Co.,* 397 F.2d 280, 281–82 (5th Cir.1968). Here, there is no allegation that Romero is an insurer, nor that J & M is a defendant facing tort liability. (*See* Doc. 1). Therefore, to the extent that Romero's argument makes sense, his claims that he is "not an insurer," that he "is not a licensed insurance salesman," and that he "received no commissions for any of the transactions stated in the Complaint," (Doc. 247, pp. 25–26), tend to argue in favor of the existence of subject matter jurisdiction.

### (2) ERISA

Romero also asserts in his proposed answer that J & M's claims are precluded by ERISA because (i) he was acting as a fiduciary when he wrote the legal opinion on the VEBA plan, (ii) "the claim [sic] of the plaintiffs relates to the subsequent loss of deductions by the corporation," and (iii) "the effect [the loss] has on the plaintiffs [sic] claim for benefits under the ERISA [w]elfare [b]enefit [p]lan." (Doc. 247, p. 26).

Before turning to the substance of this line of argument, the court notes with disapproval the fact that Romero raised an argument relating to a threshold issue such as subject matter jurisdiction in his proposed answer, which has not yet been accepted by the court, rather than in his brief in support of his motion to set aside default judgment. The court also notes that Romero neglected to cite any supporting case law or make reference to any document on the docket. Instead, Romero has made a solitary, conclusory statement, with no accompanying explanation or argument, which asserts that the court lacks subject matter jurisdiction, and then attempts to tie that alleged want of jurisdiction to ERISA. This alone is cause for the court to reject the argument.

Nevertheless, the court will address the substance of Romero's argument *sua sponte,* despite these deficiencies, because of the importance of eliminating any possible doubt about subject matter jurisdiction. *Fed.R.Civ.P. 12(h)(3); Jackson v. Farmers Insurance Group/ Fire Insurance Exchange,* 391 Fed. Appx. 854, 856 (11th Cir.2010).

**\*7** The Eleventh Circuit explained the concept of preemption in *Geddes v. American Airlines, Inc.:*

> Preemption is the power of federal law to displace state law substantively. The federal preemptive power may be complete, providing a basis for jurisdiction in the federal courts, or it may be what has been called "ordinary preemption," providing a substantive defense to a state law action on the basis of federal law. More specifically, ordinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law. Complete preemption, on the other hand, is a doctrine distinct from ordinary preemption. Rather than constituting a defense, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims.

321 F.3d 1349, 1352–53 (11th Cir.2003) (internal punctuation and citations omitted); *see also Behlen v. Merrill Lynch,* 311 F.3d 1087, 1090

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5553696 (S.D.Ala.)
**(Cite as: 2011 WL 5553696 (S.D.Ala.))**

(11th Cir.2002); *Butero v. Royal Maccabees Life Ins. Co .,* 174 F.3d 1207, 1211–12 (11th Cir.1999) (describing the doctrine of "complete" or "super-preemption") (other citations omitted). ERISA preemption works in the same manner—it can take the form either of ordinary preemption (also referred to as "defensive preemption") or complete preemption (also referred to as "super-preemption"). *Butero* at 1211; *see also Adair v. Johnston,* 2003 WL 23469844 (M.D.Ala. Oct. 24, 2003). The court finds neither form of preemption to be a factor in this case.

When boiled down to its essence, this case is really about claims of fraud and misrepresentation in the sale of life insurance policies, which took place before J & M entered into the plan. "Congress did not intend to 'immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation.' " *Cotton v. Mass. Mutual Life Ins. Co.,* 402 F.3d 1267, 1284 (11th Cir.2005) (*quoting Morstein v. National Insurance Serv.,* 93 F.3d 715, 722 (11th Cir.1996) (internal quotations omitted)). The Eleventh Circuit made this point succinctly in *Cotton* (quoting Morstein):

> Allowing preemption of a fraud claim against an individual insurance agent will not serve Congress's purpose for ERISA.... Congress enacted ERISA to protect the interests of employees and other beneficiaries of employee benefit plans. To immunize insurance agents from personal liability for fraudulent misrepresentation regarding ERISA plans would not promote this objective. If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan. These employees, whom Congress sought to protect, will find themselves unable to make informed choices regarding available benefit plans where state law places the duty on agents to deal honestly with applicants.

**\*8** *Cotton* at 1284. Here, of course, Romero is a tax attorney and not an insurance agent, but logic of the Eleventh Circuit's opinion extends to Romero where he stands accused of making representations about the VEBA plan which encouraged J & M to enter into the transaction.

Additionally, the court is not convinced by Romero's claim that he was acting as a fiduciary as it relates to the written legal opinion he provided. (Doc. 247, p. 26). "Fiduciary duties imposed by ERISA include 'proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.' " *Ehlen Floor Covering, Inc. v. Lamb,* 2011 WL 4922017, \*2 (11th Cir.2011) (*quoting Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142–3 (1985)). Romero has not argued nor pointed to any evidence which suggests that he ever exercised discretionary authority or control over plan management or the administration of plan assets.

Accordingly, the court finds no merit in Romero's argument concerning subject matter jurisdiction, and declines to grant his (construed) Rule 60(b)(4) motion on this ground.

### D. VENUE AND FORUM NON–CONVENIENS
### (1) Venue

Romero claims that this court "has no venue and the elements of diversity jurisdiction have not been met." (Doc. 247, p. 13). The court has addressed Romero's argument regarding subject matter jurisdiction and the diversity of citizenship of the parties, *supra.* Romero's claims regarding venue similarly are without merit, because he has waived such objections through his default. "A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default." *Hoffman v. Blaski,* 363 U.S. 335, 343 (1960). *See also Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202 (10th Cir.1986) ("[I]f a party is in default by failing to appear ... defects in venue are waived, a default judgment may be validly entered

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

and the judgment cannot be attacked collaterally for improper venue."); Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 3d § 3829 (2007) ("Venue is waived by a defendant who defaults ...").

### (2) Forum Non Conveniens

The doctrine of forum non conveniens authorizes a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried elsewhere. *Liquidation Commission of Banco Intercontinental, S.A. v. Renta,* 530 F.3d 1339, 1356 (11th Cir.2008) (*citing Ford v. Brown,* 319 F.3d 1302, 1307 (11th Cir.2003)). "A defendant seeking dismissal for forum non conveniens bears the burden of demonstrating (i) that an adequate alternative forum is available, (ii) that relevant public and private interests weigh in favor of dismissal, and (iii) that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Id.* (*citing Membreno v. Costa Crociere SPA,* 425 F.3d 932, 937 (11th Cir.2005)). Pertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment. *Id.* (*citing Ford,* 319 F.3d at 1307) (additional citations omitted).

**\*9** Romero argues that "[t]he location in Alabama is far removed from California, where Romero and all of the witnesses reside and where Romero's actions ... occurred." (Doc. 247, p. 13). This line of argument, at best, may demonstrate that an alternative forum is available. However, Romero does not address the relevant public and private interests at issue, nor demonstrate that these interests weigh in favor of dismissal. *See Renta* at 1356. Furthermore, Romero is silent as to the issue of whether J & M could reinstate its suit in California without undue inconvenience or prejudice. (*See* Doc. 247, p. 13).

Accordingly, the court declines to set aside the default judgment on the bases of venue and forum non conveniens.

### E. RULE 60(b)(1)—Mistake, Inadvertence, Surprise, or Excusable Neglect

Federal Rule of Civil Procedure 60(b)(1) permits relief from a default judgment for "mistake, inadvertence, surprise, or excusable neglect" on a motion made within one year of the judgment. *Fed.R .Civ.P. 60(b)(1).* Courts construe Rule 60(b)(1) liberally to ensure that they resolve doubtful cases on the merits. *See Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453, 1459 (5th Cir.1992) ("This court applies Rule 60(b) 'most liberally to judgments in default ... [because] ... [t]runcated proceedings of this sort are not favored.' ")

"In the context of the denial of a motion to set aside a default judgment ... a reviewing court will not examine the merits of the motion unless the defaulting party has met two prerequisites." *Gulf Coast Fans, Inc.,* 740 F.2d at 1511. The first prerequisite is a showing that the it had a meritorious defense that might have affected the outcome *Id.* The second prerequisite requires a showing that granting the motion would not result in prejudice to the non-defaulting party. *Id.* Only once these two requirements have been met will the court review the motion in order to determine whether there existed a good reason for failing to reply to the complaint. *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528 (11th Cir.1990) (*citing Gibbs v. Air Canada,* 810 F.2d 1529, 1537 (11th Cir.1987); *McGrady v. D'Andrea Elec., Inc.,* 434 F.2d 1000, 1001 (5th Cir.1970)).

Even presuming that Romero has succeeded in meeting the two prerequisites by establishing both the merit of his defenses and the absence of prejudice to J & M, the court finds that no good reason existed for Romero's failure to reply either to the complaint or the Clerk's entry of default. Simply put, the willful delay exhibited by Romero precludes a finding of excusable neglect, as discussed below.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(1) No Good Reason Existed for Failing to Reply to the Complaint or to the Clerk of the Court's Entry of Default**

Romero admits that he was served with the complaint on December 26, 2007. (Doc. 247, p. 1). The court then heard nothing from Romero for more than three and a half years. Not even an entry of default against him, entered on April 3, 2008—notice of which was indisputably sent to Romero at his address of record—could convince him to appear and defend the claims. (Doc. 47).

**\*10** "The longer a defendant ... delays in responding to a complaint, the more compelling the reason it must provide for its inaction when it seeks to set aside a default judgment." *Sloss,* 488 F.3d at 935. By his own admission, Romero's failure to respond "was the result of [his] honest belief that no action was necessary as [he] believes ... that the court has no jurisdiction or venue over [him] ..." (Doc. 247, p. 4). Romero also states that he was concerned that responding to the complaint might subject him to the court's jurisdiction. *See* Doc. 247, p. 13 ("[my] concern has been to refrain from any communication with this court so as not to subject [myself] to this court's jurisdiction."). Far from showing a good or compelling reason, all that this explanation reveals is a calculated decision to roll the proverbial dice and wait the litigation out in California. If Romero felt so strongly that the court lacked personal and subject matter jurisdiction, then he could have filed Rule 12(b)(1) and 12b(2) motions to dismiss for want of jurisdiction at the beginning of the case. Instead, he chose to stay silent and monitor events from afar via the court's CM/ECF system. *See* Doc. 247, pp. 12–13. "[S]uch conduct amply supports a determination that the default here was 'willful' in the most meaningful sense of the word, and that relief from the final judgment would be inappropriate." *Sasso v. M. Fine Lumber Co., Inc.,* 144 F.R.D. 185, 190 (E.D.N.Y .1992) (*citing Jack Gray Transport, Inc. v. Shaw,* 105 F.R.D. 485, 490 (N.D.Ill.1984) ("Any defendant guilty of sticking his head in the sand ... must be charged with the kind of deliberate inattention that justifies a 'willfulness' label.")).

Romero also argues that his judgment was impaired as a result of post-traumatic stress disorder (PTSD) brought about by his service in combat as a United States Marine Corps infantryman in the 2nd Battalion, 3rd Marine Unit in DaNang and elsewhere in Vietnam in the late 1960s. (Doc. 247, p. 76). Romero points to the fact that he received two Purple Heart medals resulting from injuries sustained while in a combat unit, as well as several unit commendations. *Id* . The court is sympathetic to any lingering trauma that Romero suffers as a result of his wartime military service. However, the contention that his mental disarray was sufficient to prevent him from filing an answer in this case is not supported by the record, which reflects that Romero was sufficiently competent in the years after Vietnam to attend law school, pass the California bar exam, maintain a law practice, and write legal opinion letters regarding the tax treatment of highly complex financial transactions.

**F. NOTICE OF MOTION FOR DEFAULT JUDGMENT**

Finally, Romero contends that the default judgment should be set aside because he did not receive notice of J & M's request for default judgment.[FN2] (Doc. 247, p. 12). J & M sent Romero notice of its motion for default judgment on July 25, 2011. However, J & M sent the notice to 801 South Flower Street, Los Angeles, California, while Romero asserts that his address is 404 South Figueroa Street, Suite 522A, Los Angeles, CA 90071. (Doc. 247, pp. 12–13). J & M counters that Romero told plaintiff's counsel in a telephone conversation to use the 801 South Flower Street address. (Doc. 251, p. 3). The issue of Romero's address, however, is a moot one, because Romero was not entitled to written notice of the default judgment.

> FN2. As stated, *supra,* the court notes that the Clerk of the Court mailed a copy of the Clerk's Entry of Default (Doc. 47) to Romero at his address of record, which is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

the South Figueroa Street address. The Clerk's Entry of Default was not returned by the U.S. Postal Service. Therefore, at a minimum, Romero knew that he had defaulted and faced a likely default judgment if he did not take action.

**\*11** Generally, Fed.R.Civ.P. 55(b)(2) requires that the party against whom default judgment is sought must be served with written notice at least seven days prior to any hearing for default, if that party has appeared personally or by a representative. Fed.R.Civ.P. 55(b)(2). However, "[n]o service is required on a party who is in default for failing to appear." Fed.R.Civ.P. 5(a)(2). Therefore, the question turns on whether or not Romero has "appeared" in this case within the meaning of the Federal Rules of Civil Procedure.

"An appearance is ordinarily an overt act by which a party comes into court and submits himself to its jurisdiction." Anderson v. Taylorcraft, Inc., 197 F.Supp. 872, 874 (W.D.Pa.1961) (*citing* 6 C.J.S. Appearances § 1). "It is an affirmative act requiring knowledge of the suit and an intention to appear." *Id.* (citations omitted). Some courts have held that the defendant does not have to make a formal appearance to trigger the notice requirement, but he must manifest a clear intention to defend. S.E.C. v. GetAnwers, Inc., 219 F.R.D. 698, 700 (S.D.Fla.2004) (*citing* New York Life Ins. Co. v. Brown, 84 F.3d 137, 141–42 (5th Cir.1996); Key Bank of Maine v. Tablecloth Textile Corp., 74 F.3d 349, 353 (1st Cir.1996); Wilson v. Moore and Assocs., Inc., 564 F.2d 366 (9th Cir.1977). Other courts have held that participation in settlement negotiations constitutes a clear intention to defend. *Id.* (*citing* Key Bank, 74 F.3d at 353; H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C.Cir.1970)). However, "informal contacts alone do not constitute an appearance if they fail to rise to the level of settlement negotiations." GetAnswers, Inc. at 700 (*citing* Wilson, 564 F.2d at 369).

Here, there is no evidence that Romero expressed an intent to defend this action, or that the limited contacts between Romero and plaintiff's counsel were anything other than "informal contacts," which, by themselves, do not constitute an appearance. Plaintiff's counsel mentions one telephone conversation with Romero during which the two attorneys discussed the lawsuit, and after which J & M agreed to an enlargement of time for Romero to file an answer. (Doc. 19). However, despite the enlargement of time, Romero filed nothing with the court for more than three and a half years (with the exception of signing and returning the Waiver of Service of Summons form in February 2008). In this one conversation with plaintiff's counsel, Romero cannot be said to have taken an "overt act" by which he submitted himself to the jurisdiction of the court. Nor can Romero be said to have manifested a clear intent to defend, when, by his own admission, he avoided responding to the complaint so as to avoid the court's jurisdiction. (Doc. 247, p. 13).

Accordingly, the court finds that Romero failed to make an appearance in this proceeding, and therefore the notice requirements of Rule 55(b)(2) do not apply.

## CONCLUSION

**\*12** "The entry of judgment by default is a drastic remedy and should be resorted to only in extreme situations. It is only appropriate where there has been a clear record of delay or contumacious conduct ." U.S. v. Varmado, 342 Fed. Appx. 437, 441, \*4 (11th Cir.2009) (*quoting* E.F. Hutton & Co. v. Moffatt, 460 F.2d 284, 285 (5th Cir.1972) (internal quotation marks omitted)). Given the nearly universal disfavor with which default judgment is viewed by courts in this circuit and elsewhere, this court does not lightly impose such a sanction on a defendant. Yet the length of Romero's delay, his willfulness in refusing to appear and defend the allegations against him, and his failure to contest or even acknowledge the entry of default entered against him three and a half years ago, neatly fit the standard quoted above—that of a clear

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5553696 (S.D.Ala.)
**(Cite as: 2011 WL 5553696 (S.D.Ala.))**

record of delay and contumacious conduct. Accordingly, Romero's motion to set aside default judgment is **DENIED.**

    **DONE** and **ORDERED.**

S.D.Ala.,2011.
J & M Associates, Inc. v. Callahan
Slip Copy, 2011 WL 5553696 (S.D.Ala.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.