# Exhibit 30

Page 1

Not Reported in F.Supp.2d, 2003 WL 22070561 (D.Md.), 2003-2 Trade Cases P 74,138
**(Cite as: 2003 WL 22070561 (D.Md.))**

▷

United States District Court,
D. Maryland.
In re MICROSOFT CORP. ANTITRUST LITIGA-
TION
John ROBY
v.
MICROSOFT CORPORATION
Michael LEWIS
v.
MICROSOFT CORPORATION
Henry MASCAGNI
v.
MICROSOFT CORPORATION
Hayley J. GARDNER
v.
MICROSOFT CORPORATION
Steve GRUBB
v.
MICROSOFT CORPORATION
Linda STEWART
v.
MICROSOFT CORPORATION
Murline ADDINGTON
v.
MICROSOFT CORPORATION
Travis D. MCHANN
v.
MICROSOFT CORPORATION
Billy LEWIS
v.
MICROSOFT CORPORATION
Booker T. BAILEY
v.
MICROSOFT CORPORATION
James PIGG
v.
MICROSOFT CORPORATION
Angela BRINKLEY
v.
MICROSOFT CORPORATION
Delanious HARRIED

v.
MICROSOFT CORPORATION
Gertrude GREEN
v.
MICROSOFT CORPORATION
Camelia CALVERT
v.
MICROSOFT CORPORATION
Mary WYATT
v.
MICROSOFT CORPORATION

Nos. MDL 1332, Civ. JFM–03–741, Civ.
JFM–03–742, Civ. JFM 03–743, Civ. JFM 03–744,
Civ. JFM–03–745, Civ. JFM–03–746, Civ.
JFM–03–747, Civ. JFM–03–748.
Aug. 22, 2003.

Steven J. Aeschbacher, Thomas W. Burt, Richard J.
Wallis, Microsoft Corporation, Redmond, WA,
Joseph E. Neuhaus, Sullivan and Cromwell, David
B. Tulchin, Sullivan and Sullivan, New York, NY,
for Microsoft Corporation.

Brent H. Hazzard, Hazzard Law, Christopher W.
Cofer, Cofer and Associates PA, Jackson, MS, for
John Does, Michael NMI Lewis, Henry Mascagni,
Hayley J. Gardner, Steve Grubb, Linda Stewart,
Murline Addington, Travis D. McHann, Jr.

MEMORANDUM
MOTZ, J.

**\*1** Plaintiffs John Roby, Michael Lewis, Henry
Mascagni, Hayley J. Gardner, Steve Grubb, Linda
Stewart, Murline Addington, Travis D. McHann,
Billy Lewis, Booker T. Bailey, Jr., James Pigg, An-
gela Brinkley, Delanious Harried, Gertrude Green,
Camelia Calvert, and Mary Wyatt have filed suit
against Microsoft Corporation, alleging that they
were overcharged for Microsoft software. Now
pending before me are Microsoft's motions to dis-
miss plaintiffs' complaints.[FN1] For the reasons
stated below, the motions will be granted.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22070561 (D.Md.), 2003-2 Trade Cases P 74,138
**(Cite as: 2003 WL 22070561 (D.Md.))**

FN1. The motions in the cases of Grubb, Bailey, Brinkley, and Calvert are technically motions for judgment on the pleadings.

## I.

These actions arise out of plaintiffs' purchases of computers containing Microsoft operating systems. Plaintiffs allege, based largely on the findings of fact in *United States v. Microsoft,* 84 F.Supp.2d 9 (D.D.C.1999), that Microsoft engaged in unfair, deceptive, and anticompetitive conduct designed to achieve and maintain alleged monopolies in the markets for personal computer operating software, word processing software, and spreadsheet software. According to plaintiffs, as a result of these alleged monopolies, Microsoft charged monopoly prices for its software and denied plaintiffs free choice in the competitive market as well as the benefits of software innovation. Based on these allegations, each plaintiff asserts a claim under the Mississippi Antitrust Act, Miss.Code Ann. § 75–21–3 ("MAA"). Each plaintiff also asserts a claim for civil conspiracy.FN2

FN2. Plaintiffs initially asserted claims under the Mississippi Consumer Protection Act, Miss.Code Ann. §§ 75–24–1 *et seq.* They now concede, however, that the Consumer Protection Act does not create a private right of action for claims based on anticompetitive conduct.

## II.

The MAA provides that any corporation that "monopolize[s] or attempt[s] to monopolize the production, control or sale of any commodity, or the prosecution, management or control of any kind, class or description of business" shall be deemed to be a prohibited "trust or combine" subject to liability as provided in the MAA. Miss.Code Ann. § 75–21–3.FN3 Microsoft argues that the scope of this provision is limited to wholly intrastate conduct and that no wholly intrastate conduct is alleged by plaintiffs.

FN3. The MAA was initially enacted in 1900. The language of the MAA remains almost entirely unchanged. (*See* Def.'s Tab 1.)

In *Standard Oil Co. of Kentucky v. State ex rel. Attorney Gen.,* 107 Miss. 377, 65 So. 468 (Miss.1914), the Supreme Court of Mississippi addressed an alleged conspiracy between various oil companies to monopolize trade in petroleum throughout the United States. The defendant, who was allegedly allocated exclusive rights to sell petroleum products in Mississippi, moved to dismiss the complaint on the basis that the complaint alleged only conduct in interstate commerce that was beyond the reach of the Mississippi antitrust statute. In addressing the scope of the Mississippi antitrust statute, the Supreme Court of Mississippi explained:

In the case at bar, if, with the intent to monopolize commerce in petroleum products throughout the United States, appellants had agreed to do and had actually done only such things as relate to that portion of the commerce therein which is interstate, they would have been punishable only under the laws of the general government, even though they intended to, and in fact did thereby, monopolize also that portion of the commerce therein that is wholly intrastate. In other words, a conspiracy to monopolize trade in any commodity to be punishable under state laws must have as one of its objects a monopoly in the intrastate trade therein *to be accomplished in part at least by transactions which are also wholly intrastate.*

**\*2** *Id.* at 470–71 (emphasis added).

*Standard Oil* was based upon the "dual sovereignty" view of the Commerce Clause prevalent at the time the decision was rendered. That view was well articulated by the Supreme Court of the United States in *Addyston Pipe & Steel Co. v. United States,* a case relied upon the by the Mississippi Supreme Court in *Standard Oil:*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22070561 (D.Md.), 2003-2 Trade Cases P 74,138
**(Cite as: 2003 WL 22070561 (D.Md.))**

Although the jurisdiction of Congress over commerce among the states is full and complete, it is not questioned that it has none over that which is wholly within a state, and therefore none over combinations or agreements so far as they relate to a restraint of such trade or commerce. It does not acquire any jurisdiction over that part of a combination or agreement which relates to commerce wholly within a state, by reason of the fact that the combination also covers and regulates commerce which is interstate.

175 U.S. 211, 248, 20 S.Ct. 96, 44 L.Ed. 136 (1899).

In later years the Supreme Court's conceptual approach to the Commerce Clause changed, and the dual sovereignty doctrine became obsolete. *See N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 49, 57 S.Ct. 615, 81 L.Ed. 893 (1937); *see also Cantor v. Detroit Edison Co.,* 428 U.S. 579, 632–37, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (Stewart, J., dissenting) (discussing evolution of federal Commerce Clause jurisprudence with respect to the Sherman Act). However, the issue presented in this case is not whether today the State of Mississippi could constitutionally enact legislation that prohibits intrastate anticompetitive conduct affecting intrastate commerce within Mississippi, regardless of how and where the means of effecting the illegal conduct are carried out. The issue is whether the legislature intended to do so when it enacted the MAA.

I am persuaded that it did not. The MAA was enacted one year after *Addyston Pipe* was decided and against the same conceptual background embodied in that decision. Of course, I recognize that it can be argued that the Mississippi legislature's true intent when enacting the MAA was to regulate commerce to the fullest extent permitted by the Constitution. However, plaintiffs have cited no legislative history to support that view, and the fact that the legislature has not amended the MAA since 1914 when *Standard Oil* was decided argues against such an interpretation of the legislative in-

tent.[FN4]

FN4. Plaintiffs cite *Moore ex rel. State of Mississippi v. Abbott Labs.,* 900 F.Supp. 26 (S.D.Miss.1995), for the proposition that the highest court in Mississippi has not determined whether "Mississippi antitrust law is limited to intrastate conspiracies." *Id.* at 32. That is true to the extent that *Standard Oil* found the MAA to be applicable to an illegal agreement that was both interstate and intrastate in nature and was accomplished at least in part by transactions that were wholly intrastate. In any event, *Moore* was a removal case which did not directly determine the scope of the MAA's coverage.

I also note that limiting state antitrust statutes to intrastate is consistent with the jurisprudence of other states. For example, in *Arnold v. Microsoft Corp.,* No. 00–CI–00123, 2001 WL 193765 (Ky.Cir.Ct. July 21, 2000), *aff'd,* No.2000–CA–002144–MR, 2001 WL 1835377 (Ky. T.App.2001), *motion for review denied,* No.2002–SC–0116–D (Ky.2002), the court held that Kentucky's antitrust statute was limited to intrastate commerce. *Id.* at *9. The court noted:

When a national company commits an anticompetitive act, it is certain to have at least some impact on at least one Kentucky resident. To use that as a means to bring a company's national or global operations under Kentucky law smacks of overreaching. This Court declines to do so.

*Id.*

The question thus becomes whether plaintiffs have alleged at least *some* conduct by Microsoft which was performed wholly intrastate. In *Standard*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22070561 (D.Md.), 2003-2 Trade Cases P 74,138
**(Cite as: 2003 WL 22070561 (D.Md.))**

*Oil,* the Mississippi Supreme Court found that there were sufficient allegations of such conduct because one of the objects of the alleged illegal conduct was "a monopoly of that portion of trade in petroleum products which lies wholly within the state of Mississippi, to be accomplished in part at least by transactions lying wholly within the state." 65 So. At 471. In the present case it can be inferred that plaintiffs allege that one of the objects of Microsoft's allegedly illegal conduct was to establish an unlawful monopoly in the relevant product markets within Mississippi. Plaintiffs have failed to allege, however, that this monopoly was to be accomplished by any transactions "lying wholly within the state." To the contrary, even after having been alerted to the criticality of the issue by Microsoft's motion to dismiss, plaintiffs make only the entirely conclusory averment that "Defendant Microsoft obviously created a monopoly in both interstate and intrastate commerce." (Pls.' Opp'n at 7.) This falls far short of the type of allegation that the Mississippi Supreme Court contemplated in *Standard Oil.* FN5

> FN5. Because I am dismissing Plaintiffs' MAA claims, it is unnecessary for me to determine whether punitive damages are available under the MAA.

III.

**\*3** Microsoft also moves to dismiss plaintiffs' civil conspiracy claims. Under Mississippi law, a civil conspiracy claim cannot stand alone. It must reference an underlying tort. *Wells v. Shelter Gen'l Ins. Co.,* 217 F.Supp.2d 744, 755 (S.D.Miss.2002) (citing cases from numerous jurisdictions standing for the same proposition, *i.e.,* "absent the underlying tort, there can be no liability for civil conspiracy"). The only tort arising under Mississippi law referenced by plaintiffs is the asserted violation of the MAA which, for the reasons I have stated, is not viable. FN6

> FN6. Plaintiffs seem to suggest that they may assert a civil conspiracy claim under Mississippi law based upon alleged viola-

tions of federal law and the laws of other states. They have not, however, cited any authority to support this far-reaching proposition and, absent such authority, I am not prepared to accept it.

A separate order is being entered herewith.

D.Md.,2003.
In re Microsoft Corp. Antitrust Litigation
Not Reported in F.Supp.2d, 2003 WL 22070561 (D.Md.), 2003-2 Trade Cases P 74,138

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.