# Exhibit 33

Page 1

Not Reported in F.Supp.2d, 2007 WL 2253419 (E.D.Pa.), 2007-2 Trade Cases P 75,845
**(Cite as: 2007 WL 2253419 (E.D.Pa.))**



United States District Court,
E.D. Pennsylvania.
In re OSB ANTITRUST LITIGATION.
This Document Relates to: All Actions.

Master File No. 06-826.
Aug. 3, 2007.

Cadio Zirpoli, Richard Alexander Saveri, Saveri & Saveri Inc., Craig C. Corbitt, Francis O. Scarpulla, Lorel A. Kish, Pamela E. Woodside, Scott R. Campbell, Zelle Hofmann Voelbel Mason & Gette Llp, Joseph M. Patane, Law Office of Joseph M. Patane, Lauren C. Russell, Mario N. Alioto, Trump Alioto Trump & Prescott Llp, San Francisco, CA, Charles E. Tompkins, Patrick A. Tillou, William P. Butterfield, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Daniel D'Angelo, David Pastor, Kenneth G. Gilman, Gilman and Pastor, Boston, MA, Darla Jo Boggs, Elizabeth R. Odette, Michael D. Hausfeld, Richard A. Lockridge, W. Joseph Bruckner, Lockridge Grindal Nauen & Holstein P.L.L.P., Minneapolis, MN, David H. Fink, E. Powell Miller, The Miller Law Firm Pc, Rochester, MI, David J. Guin, Tammy McClendon Stokes, Donaldson & Guin, L.L.C., Birmingham, AL, Eugene A. Spector, Jeffrey J. Corrigan, Jeffrey L. Kodroff, Simon Bahne Paris, Jay S. Cohen, Spector Roseman & Kodroff, P.C., Philadelphia, PA, John C. Murdock, Murdock Goldenberg Schneider & Groh Lpa, Cincinnati, OH, Krishna B. Narine, Law Office of Krishna B. Narine, Elkins Park, PA, for Plaintiff.

Carolyn Hazard Feeney, David J. Stanoch, Joseph A. Tate, Will W. Sachse, Donald C. Le Gower, Dechert Llp, Amy B. Miner, Paul H. Saint-Antoine, Drinker, Biddle & Reath Llp, Peter Breslauer, Richard L. Scheff, Montgomery McCracken Walker & Rhoads Llp, David L. Comerford, Edward F. Mannino, Mary Kay Christodoulou, Katherine Menapace, Akin Gump Strauss Hauer & Feld, Llp,

Eleanor Morris Illoway, John G. Harkins, Jr., Harkins Cunningham, Robert L. Ebby, Sozi Pedro Tulante, William T. Hangley, Hangley Aronchick Segal & Pudlin, Philadelphia, PA, Paul H. Friedman, Dechert Llp, R. Hewitt Pate, Ryan Shore, Hunton & Williams, David S. Eggert, Michael B. Bernstein, William J. Baer, Arnold & Porter Llp, Michael L. Denger, Gibson Dunn & Crutcher Llp, Washington, DC, Benjamin Hatch, Douglas M. Garrou, Thomas G. Slater, Jr., Hunton & Williams Llp, Richmond, VA, Barack S. Echols, James Howard Mutchnik, James H. Schink, Kirkland & Ellis Llp, Chicago, IL, Reginald D. Steer, Akin Gump Strauss Hauer & Feld Llp, George A. Nicoud, III, Gibson Dunn & Crutcher Llp, San Francisco, CA, James A. Keyte, Jeffrey M. Beyer, Karen M. Hoffman, Shepard Goldfein, Skadden, Arps, Slate, Meagher & Flom Llp, Gabriel Herrmann, Gibson Dunn & Crutcher Llp, New York, NY, Steven A. Lupin, Steven H. Lupin, Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C., Lansdale, PA, for Defendants.

Scott Jared Fisher, James K. Gardner, Neal Gerber & Eisenberg LLP, Chicago, IL, for Grant Forest Products Inc.

*MEMORANDUM*

DIAMOND, J.

**\*1** In this price-fixing conspiracy class action, Defendants contend that Plaintiffs have failed to satisfy the pleading standard recently announced by the Supreme Court in *Bell Atlantic Corp. v. Twombly. See* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). I disagree. Plaintiffs have made specific factual allegations of Defendants' wrongdoing-including actions in furtherance of the conspiracy, Defendants' purported motive, the approximate time and manner of their agreement, and the mechanism by which Defendants fixed prices. *Twombly* requires no more.

*BACKGROUND*

Not Reported in F.Supp.2d, 2007 WL 2253419 (E.D.Pa.), 2007-2 Trade Cases P 75,845
**(Cite as: 2007 WL 2253419 (E.D.Pa.))**

Plaintiffs-direct and indirect purchasers of Oriented Strand Board-have filed class action complaints, alleging a horizontal price-fixing conspiracy among nine major OSB manufacturers in violation of the Sherman Antitrust Act and numerous state antitrust provisions. *See* 15 U.S.C. § 1; *e.g.,* Ariz.Rev.Stat. § 44-1402; D.C.Code § 28-4502; Fla. Stat. § 501.204. At the time *Twombly*was pending in the Supreme Court, Defendants moved to dismiss the Amended Complaints, arguing that antitrust plaintiffs should be held to a higher pleading standard, and that Plaintiffs failed to allege facts with sufficient particularity under that standard. *See, e.g., Georgia-Pacific Corp.'s Motion to Dismiss the Consolidated Amended Class Action Complaint, at 10* (Doc. No. 70). Noting that the Third Circuit did not require heightened pleading in antitrust cases, and that the Supreme Court would soon decide *Twombly,* I denied the motions without prejudice to Defendants' right to renew them after the *Twombly* ruling. *See* Order of September 13, 2006 (Doc. No. 159).

On May 21, 2007, the Supreme Court announced its decision in *Twombly.* Defendants immediately renewed their arguments that the instant Second Amended Complaints set forth only conclusory allegations of parallel conduct and conspiracy, with no supporting facts, and so failed to meet the *Twombly* standard. *See, e.g., Def. Reply Mem., at 6.* Plaintiffs have responded that *Twombly* did not change the pleading requirements, but that if it did, they have alleged sufficient facts to satisfy any heightened pleading standard. *See Direct Purchaser Pl. May 29, 2007 letter; Indirect Purchaser Pl. Opp. Mem., at 1.*

### *LEGAL STANDARDS*

In deciding a Rule 12(b)(6) motion to dismiss, I must accept as true the factual allegations in the complaint. *See iErickson v. Pardus,* 551U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *In re Rockefeller Center Properties, Inc.,* 311 F.3d 198,215 (3d Cir.2002). "An antitrust complaint must include 'enough factual matter (taken as true) to suggest that an agreement was made ... [I]t simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.' " *Cosmetic Gallery, Inc. v. Schoeneman Corp.,* 495 F.3d 46, 2007 WL 2051099, at *5 (3d Cir. July 19, 2007) (quoting *Twombly,* 127 S.Ct. at 1965). "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice," however. *Twombly,* 127 S.Ct. at 1966, 1974. Plaintiffs must "state a claim to relief that is plausible on its face," not merely possible. *Id.*

**\*2** In deciding a Rule 12(c) motion for judgment on the pleadings, I apply the same standard as I would apply to a Rule 12(b)(6) motion to dismiss. *See Spruill v. Gillis,* 372 F.3d 218, 223 n. 2 (3d Cir.2004) ("there is no material difference in the applicable legal standards"). Accordingly, to survive Defendants' motions for judgment on the pleadings, Plaintiffs must "state a claim to relief that is plausible on its face." *Twombly,* 127 S.Ct. at 1974; *see also Charles v. Lawyers Title Ins. Corp.,* 2007 WL 1959253 (D.N.J. July 3, 2007) (applying *Twombly* standard to Rule 12(c) motion).

### *DISCUSSION*

Defendants argue that both Second Amended Complaints fail to meet *Twombly* 's plausibility requirement because they include only allegations that, like those in *Twombly,* are potentially "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions ofthe market." *Twombly,*127 S.Ct. at 1964. *See Def. Reply Mem. at 5.*

I disagree. The plaintiffs in *Twombly* alleged "upon information and belief" that the defendants-the "Baby Bell" companies created after the 1984 breakup of AT & T-had conspired not to compete against one another and to prevent new communications companies from "competitive entry into [the defendants'] respective local telephone and/or high speed internet services markets." 127 S.Ct. at 1962-63. In support, the plaintiffs did not make

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2253419 (E.D.Pa.), 2007-2 Trade Cases P 75,845
**(Cite as: 2007 WL 2253419 (E.D.Pa.))**

"any independent allegation of actual agreement among the [defendants]." *Twombly,* 127 S.Ct. At 1970. Indeed, the plaintiffs alleged virtually no specific wrongdoing by Defendants. Rather, they charged that the defendants' "failure ... to compete with one another would be anomalous in the absence of an agreement among [the defendants] not to compete"; that one defendant's "predominance in surrounding states would have given it substantial ompetitive advantages"; that it would be "unlikely" that the apparent failure to compete occurred spontaneously; that the defendants "[did] indeed communicate amongst themselves through a myriad of organizations"; that the defendants engaged in parallel conduct; that market conditions facilitated possible agreements; and that it could thus be inferred that Defendants had entered into a conspiracy not to compete. *Consolidated Amended Class Action Complaint, Twombly v. Bell Atlantic Corporation,* 313. F.Supp.2d 174 (S.D.N.Y.2003), No. 02-10220(GEL), ¶ 40, 41, 46, 47, 49, 51. The Supreme Court concluded that Plaintiffs' deduction that a conspiracy must have formed was insufficient to make out a viable antitrust claim:

> [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action ... [plaintiffs must offer] allegations plausibly suggesting (not merely consistent with) agreement.

**\*3** *Twombly,* 127 S.Ct. at 1966.

Plaintiffs in the instant case have alleged facts that strongly suggest-and are "not merely consistent with"- a price-fixing conspiracy. *Twombly,* 127 S.Ct. at 1966.

**A. Direct Purchaser Plaintiffs' Second Amended Complaint**

Direct Purchaser Plaintiffs allege that Defendants, nine major OSB manufacturers, together control 95% of the OSB market in North America; that on or about June 1, 2002, Defendants together tacitly agreed to raise OSB prices and so revitalize the stagnating OSB market; and that Defendants' illegal actions were wildly successful. *Direct Purchaser Pl. Second Amended Compl. ¶ 3, 51, 59, 66, 105* . Plaintiffs claim that Defendants took the following concerted actions to reduce the supply of OSB (and so drive up the price): (1) kept OSB from the market through mill shutdowns; (2) delayed or canceled the construction of new OSB mills; (3) bought OSB from competitors instead of manufacturing it themselves (which they could have done at a lower cost); and (4) maintained low operating rates at mills. *Direct Purchaser Pl. Second Amended Compl. ¶ 66.*

As *Twombly* requires, Plaintiffs situate these allegations of parallel conduct in a context that suggests preceding agreement. *See* 127 S.Ct. at 1966. Direct Purchaser Plaintiffs claim that on June 18, 2002, Defendant Louisiana-Pacific "communicated to its competitors its intention to take mill downtime resulting in a shutdown of each of its North American OSB mills in July of 2002." Plaintiffs allege that Louisiana-Pacific repeated this communication on October 15, 2002. Plaintiffs further allege that between June and December 2002, "in response to the communications from Louisiana-Pacific," defendants Norbord, Weyerhauser, Potlatch, and Ainsworth all "began to take production downtime"-at a time when industry demand was increasing. *Direct Purchaser Pl. Second Amended Compl. ¶ 72,106*. Plaintiffs allege that in 2003, Defendants repeated these actions, resulting in a record high price for OSB in April 2004. *Direct Purchaser Pl. Second Amended Compl. ¶ 106.*

Finally, Direct Purchaser Plaintiffs identify the mechanism by which Defendants allegedly fixed OSB prices: the use of a twice-weekly published

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2253419 (E.D.Pa.), 2007-2 Trade Cases P 75,845
**(Cite as: 2007 WL 2253419 (E.D.Pa.))**

price list in *Random Lengths,* an industry periodical. Plaintiffs claim that because *Random Lengths* included lists of OSB prices by region, Defendants could monitor their competitors and ensure that no member of the conspiracy "cheated" by offering significantly different prices. *Direct Purchaser Pl. SecondAmended Compl. ¶ 99-102.*

**B. Indirect Purchaser Plaintiffs' Second Amended Complaint**

Indirect Purchaser Plaintiffs similarly allege that Defendants' tacit agreement to raise OSB prices began on June 1, 2002. *Indirect Purchaser Pl. SecondAmended Compl. ¶ 1, 5,107, 109, 100.* Plaintiffs claim that the OSB market is highly concentrated, facilitating collusion, and that Defendants have taken steps to increase market concentration. *Indirect Purchaser Pl. Second Amended Compl. ¶ 96, 114-117.*

**\*4** Indirect Purchaser Plaintiffs also charge that Louisiana-Pacific "took a leading role in reducing capacity in OSB production ... with assurances from other Defendants that they would not raise output and undercut its efforts to get prices in the industry higher ." *Indirect Purchaser Pl. SecondAmended Compl. ¶ 152.* Thus, despite increasing market demand for OSB, Louisiana-Pacific announced on June 18, July 1, and October 15, 2002 that it would take "market-related downtime" at its OSB mills. *Indirect Purchaser Pl. SecondAmended Compl. ¶ 137-140.* Like Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs allege that in response, Defendants took concerted actions to reduce the supply of OSB and so drive up the price: (1) ordering mill shutdowns; (2) cancelling the construction of new OSB mills; (3) buying OSB from competitors; and (4) maintaining low mill operating rates. *Indirect Purchaser Pl. Second Amended Compl. ¶ 2, 131.* As a result, Plaintiffs claim, OSB prices reached record highs, resulting in "staggering" profit increases for Defendants-including Louisiana-Pacific, which increased its OSB operating profits from $61 million in 2002 to $502.9 million in 2003. *Indirect Purchaser Pl. Second Amended Compl. ¶ 147, 158.* Plaintiffs allege that, continuing their tacit agreement, Defendants continued to curtail production over the next two years despite increasing industry demand and skyrocketing OSB prices. *Indirect Purchaser Pl. Second Amended Compl. ¶ 160-170.* Plaintiffs also allege that Defendants confirmed their agreements during meetings at industry trade shows and events. *Indirect Purchaser Pl. Second Amended Compl. ¶ 177-179.*

Like Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs allege that Defendants fixed, maintained, and monitored the price of OSB through the use of a twice-weekly published price list in *Random Lengths. Indirect Purchaser Pl. Second Amended Compl. ¶ 171-173.*

**C. The Adequacy of the Second Amended Complaints**

Since this litigation began, Defendants have protested-often in memoranda and arguments generating more heat than light-that they should not have to defend against Plaintiffs' purportedly baseless allegations. With the Supreme Court's decision in *Twombly,* Defendants again contend that the Second Amended Complaints are not viable because Plaintiffs' allegations are as consistent with rational, parallel commercial behavior as they are with a price-fixing conspiracy:

> Defendants' allegedly "parallel" conduct was "natural" given the market condition facing the Defendants and was completely consistent with unilateral behavior and lawful, independent business goals.
>
> *Ainsworth's and Norbord's Mem., at 5.*

I well understand that absent reasonable pleading requirements, the imperatives of commercial litigation could require even an innocent business either to settle meritless lawsuits or incur enormous defense costs and the risks of trial. *See Twombly, 127 S.Ct. at 1967.* I do not believe that situation obtains here, however.

Not Reported in F.Supp.2d, 2007 WL 2253419 (E.D.Pa.), 2007-2 Trade Cases P 75,845
**(Cite as: 2007 WL 2253419 (E.D.Pa.))**

Page 5

**\*5** The so-called "parallel conduct" Plaintiffs allege is entirely different from that alleged in *Twombly:* the Baby Bells' failure to compete with one another or to allow "start-up" communications companies into their regions. The *Twombly* Court observed that because in the very recent past, the Baby Bells had been regional divisions of AT & T-where they certainly did not compete with one another-the parallel conduct alleged was not "anything more than the natural, unilateral reaction of each [Baby Bell] intent on keeping its regional dominance." *Twombly,* 127 S.Ct. at 1971.

The "parallel conduct" Plaintiffs allege here may or may not be Defendants' "natural" reactions to the failing OSB market, but-taken in combination with Plaintiffs' explicit allegations of Defendants' agreement to fix prices through *Random Lengths,* and their price-fixing discussions during industry events-is certainly "enough to raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965.

In sum, Plaintiffs have set out in some detail an alleged nationwide scheme-purportedly led by Louisiana-Pacific-to restructure the failing OSB industry through supply manipulation, price agreements, and price monitoring. I do not know if Plaintiffs will be able to prove this conspiracy at trial. *Twombly* does not, however, require Plaintiffs to prove their allegations before taking discovery. Rather, because Plaintiffs' allegations "plausibly raise[ ] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action," the Second Amended Complaints are adequately pled. *Twombly,* 127 S.Ct. At 1966.

**D. Grant Forest Products, Inc.**

Defendant Grant Forest Products moves for judgment on the pleadings, arguing that Direct Purchaser Plaintiffs have not plausibly stated a claim for relief as to Grant because the Second Amended Complaint contains only "one lone paragraph" explicitly mentioning Grant. *Grant's Mot., at 2.* Remarkably, Grant does not mention Plaintiffs' allegation that Grant joined and participated in the alleged price-fixing conspiracy. *See Direct Purchaser Pl. Second Amended Compl.* ¶ 22.

Antitrust conspiracy allegations need not be detailed defendant by defendant. *See In re Fine Paper Antitrust Litig.,* 685 F.2d 810, 822 (3d Cir.1982) (district court should not "compartmentalize" a conspiracy claim by conducting "a seriatim examination of the claims against each of five conspiracy defendants as if they were separate lawsuits") (citing *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 698-99, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962)). Rather, an antitrust complaint should be viewed as a whole, and the plaintiff must allege that each individual defendant joined the conspiracy and played some role in it. *See Jung v. Ass'n of American Medical Colleges,* 300 F.Supp.2d 119, 164 n. 27 (D.D.C.2004) (plaintiff must plead that "an individual defendant was a participant in the conspiracy in the first instance," but "need not allege overt acts committed by each defendant in furtherance of a conspiracy") (citing *In re Vitamins Antitrust Litig.,* 2000 WL 1475705 (D.D.C.2000)). *See also Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.,* 253 F.Supp.2d 262, 278 (D.Conn.2003) (on motion to dismiss, district court must view plaintiff's complaint as a whole).

**\*6** Plaintiffs have satisfied this requirement: they have alleged that each Defendant, including Grant, joined the conspiracy and committed acts in furtherance of it. *See Direct Purchaser Pl. Second Amended Compl.* ¶ 3-4, 21A, 22, 66, 80. Accordingly, Plaintiffs have provided Grant with reasonable notice of their allegations, and have stated a plausible claim for relief against Grant. *See In re Elec. Carbon Prods. Antitrust Litig.,* 333 F.Supp.2d 303, 313-314 (D.N.J.2001) (plaintiff must allege sufficient facts to provide defendant notice of nature and reasonable basis for the claims against it).

*CONCLUSION*

Direct and Indirect Purchaser Plaintiffs have

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:12-md-02311-SFC-RSW ECF No. 384-33, PageID.5374 Filed 09/11/12 Page 7 of 7

Page 6

Not Reported in F.Supp.2d, 2007 WL 2253419 (E.D.Pa.), 2007-2 Trade Cases P 75,845
**(Cite as: 2007 WL 2253419 (E.D.Pa.))**

satisfied the *Twombly* pleading standard by stating a claim to relief that is plausible on its face. Accordingly, Defendants' motions for judgment on the pleadings and renewed motions to dismiss are **DENIED.**

An appropriate Order follows.

### *ORDER*

AND NOW, this 3rd day of August, 2007, upon consideration of Defendants' renewed Motions to Dismiss (Doc. No. 394; letter of May 21, 2007), Defendants' Motions for Judgment on the Pleadings (Doc. Nos.402, 403), Direct Purchaser Plaintiffs' Responses (letter of May 29, 2007; Doc. No. 433), Indirect Purchaser Plaintiffs' Response (Doc. No. 408), Defendants' Joint Reply (Doc. No. 409), and Defendant Grant Forest Products, Inc.'s Reply (Doc. No. 436), it is hereby ORDERED that Defendants' Motions to Dismiss and for Judgment on the Pleadings are **DENIED.**

AND IT IS SO ORDERED.

E.D.Pa.,2007.
In re OSB Antitrust Litigation
Not Reported in F.Supp.2d, 2007 WL 2253419 (E.D.Pa.), 2007-2 Trade Cases P 75,845

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.