# Exhibit 35

66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.)))**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Sixth Circuit Rule 28. (Find CTA6 Rule 28)

United States Court of Appeals,
Sixth Circuit.
PRECISION, INC., Plaintiff-Appellant,
v.
KENCO/WILLIAMS, INC., et al., Defendants-Appellees.

No. 01-1733.
March 21, 2003.

In breach of contract action, the United States District Court for the Eastern District of Michigan granted summary judgment in favor of defendant parent corporation, and plaintiff appealed. The Court of Appeals, Graham, District Judge, sitting by designation, held that parent corporation was not alter ego of its subsidiary, and therefore was not liable for subsidiary's alleged breach of contract.

Affirmed.

West Headnotes

**[1] Corporations and Business Organizations 101 ⚷1645**

101 Corporations and Business Organizations
    101VI Shareholders and Members
        101VI(D) Liability for Corporate Debts and Acts
            101k1643 Nature and Grounds in General
                101k1645 k. Parent and subsidiary corporations. Most Cited Cases
   (Formerly 101k215)

Under both Michigan and Delaware law, a parent corporation is not generally liable for the acts of its subsidiaries.

**[2] Corporations and Business Organizations 101 ⚷1053**

101 Corporations and Business Organizations
    101II Disregarding Corporate Entity; Piercing Corporate Veil
        101k1050 Separate Corporations; Disregarding Separate Entities
            101k1053 k. Parent and subsidiary corporations in general. Most Cited Cases
   (Formerly 101k1.5(3))

Delaware and Michigan courts will pierce the corporate veil and hold the parent company liable for acts of a subsidiary when there is such a complete identity between the defendant and the corporation as to suggest that one was simply the alter ego of the other; also, there must be evidence that the use of the corporation was improper.

**[3] Corporations and Business Organizations 101 ⚷1059**

101 Corporations and Business Organizations
    101II Disregarding Corporate Entity; Piercing Corporate Veil
        101k1057 Particular Occasions for Determining Corporate Entity
            101k1059 k. Contracts in general. Most Cited Cases
   (Formerly 101k1.6(2))

Under both Michigan and Delaware law, parent corporation was not alter ego of its subsidiary, and therefore was not liable for subsidiary's alleged breach of contract; subsidiary maintained its own office and records, had its own bylaws, maintained its own board of directors, and was not created for fraudulent purposes.

**[4] Federal Civil Procedure 170A ⚷2553**

170A Federal Civil Procedure
    170AXVII Judgment

66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.)))**

      170AXVII(C) Summary Judgment
         170AXVII(C)3 Proceedings
           170Ak2547 Hearing and Determination
              170Ak2553 k. Time for consideration of motion. Most Cited Cases

   District court did not abuse its discretion in refusing plaintiff's requests for further discovery; plaintiff had over a year to conduct discovery, and record did not disclose what information could have been obtained through the additional discovery or whether the information sought in discovery might have persuaded the district court to deny defendant's summary judgment motion. Fed.Rules Civ.Proc.Rule 56(f), 28 U.S.C.A.

**\*1** On Appeal from the United States District Court for the Eastern District of Michigan.

Before: BATCHELDER and COLE, Circuit Judges; and GRAHAM, District Judge.<sup>FN\*</sup>

      FN\* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

**OPINION**

GRAHAM, District Judge.

   **\*\*1** This is a diversity breach of contract case brought by Precision, Inc. ("Precision"). Precision is a Michigan corporation**\*2** with its principal place of business in Michigan. Precision claims that Kenco/Williams, Inc. ("Kenco") breached its contract with Precision. Kenco/Williams is a Delaware corporation with its principal place of business in Indiana. Kenco is a subsidiary of Williams Controls, Inc. ("Williams"). Williams is a Delaware corporation with its principal place of business in Oregon. Williams also maintains an office in Michigan. Tom Itan is the controlling shareholder and CEO of Williams. Although Precision's contract was with Kenco, Precision claims that Williams is liable for the breach, because, according to Precision, under the theory of piercing the corporate veil, Kenco was an alter ego of Williams.

   The district court entered summary judgment in favor of Williams, and Precision timely appealed. Because we conclude that Williams was not Kenco's alter ego, nor was its use of Kenco improper, we affirm.

**I. History of Case**

   Precision is solely owned by Everett Casey. Casey has a law degree and practiced law in Michigan for about twenty years prior to becoming a businessman. In 1994, Casey formed Precision, Inc. to manufacture parts for Williams.

   Kenco manufactured and marketed aftermarket accessories for light trucks and automobiles. Kenco contacted Casey about Kenco's need for a molded part because Precision had done work for Williams. Through a series of letters, phone conversations and meetings, Casey and Henry Starr, Kenco's executive vice president and general manager, negotiated contracts, whereby Precision agreed to design running board end caps and center accents for Kenco. Because Precision financed the tooling and front-end production costs required to make the tools, the contracts contained prices and minimum purchase quantities that would enable Precision to recoup its expenses and eventually turn a profit. The running board end caps were $6.71 per pair, and Precision required Kenco to purchase at least 50,000 sets over the course of three years. The center accents were $4.90 per pair. Kenco agreed to purchase at least 30,000 pairs by the end of the three-year period.

   Kenco performed the contracts through April 10, 1997, when Starr was terminated and replaced by Clarence Yahn. In a letter dated April 10, 1997, Kenco notified Casey that Kenco would no longer be selling the running board end caps and center accent pieces because Kenco did not "have channels of distribution for a line of running boards in the installer market[.]" Kenco indicated that no further delivery of these parts would be accepted.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:12-md-02311-SFC-RSW ECF No. 384-35, PageID.5390 Filed 09/11/12 Page 4 of 9

Page 3

66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.)))**

Precision then filed suit in the Eastern District of Michigan on November 12, 1997, alleging that Kenco repudiated and anticipatorily repudiated the balance of the contracts. Precision also named Williams as a defendant, stating that Williams was the parent company of Kenco, but not specifically pleading that Williams was Kenco's alter ego.

**\*\*2** On December 2, 1997, Williams moved for summary judgment, arguing that it was not liable on the contract. On March 20, 1998, Precision moved for leave to file an amended complaint which specifically alleged an "alter ego" relationship between Williams and Kenco. On March 26, 1998, the district court denied Williams' motion for summary judgment, and on April 7, 1998, the district court entered an order granting leave to file the amended complaint.

On March 19, 1999, Williams filed a second motion for summary judgment. Precision filed a cross-motion for partial summary**\*3** judgment, a motion pursuant to Fed.R.Civ.P. 37 to compel discovery and for other relief, and a request to serve additional interrogatories. The discovery motion was referred to the magistrate judge, who issued a report and recommendation on April 19, 1999, allowing Precision to list ten more witnesses that it wished to depose. The magistrate judge also denied Precision's motion for sanctions under Rule 37, its request for reformation of the protective order and its request to serve additional interrogatories. Finally, the magistrate judge held in abeyance Kenco's and Williams' motion to compel discovery and Precision's motion for other relief. Because Precision's motion was not included in the record on appeal, it is not clear what the relief was that Precision was requesting. The only indication of this relief is found in Precision's objections to the magistrate judge's report and recommendation filed on April 28, 1999, and in the motion to reconsider filed on April 3, 2001, where Precision explained that it demanded rescheduling of the discovery deadlines and trial date due to the defendants' "wrongful delays."

The district court held a hearing on the motion for summary judgment on May 19, 1999, and granted Williams' motion for summary judgment. In its oral decision, the district court found that there was no factual dispute as to whether Williams was a party to the contract because the parties conducted themselves as separate corporations. Further, as to the alter ego theory, the court declared that regardless of whether Michigan or Delaware law applied, the key element is fraud:

> [I]t still must show that the corporate structure was designed to enable Defendants to engage in fraud and that injustice required the Court to disregard the separate entities.... Plaintiff has failed to present any evidence of fraud or injustice to raise a material question of fact that would require a trial in this particular matter.

The district court also denied as moot Precision's motion for partial summary judgment and Precision's objections to the report and recommendation of the magistrate judge regarding the discovery issues. Although the district court did not expressly address the merits of Precision's objections to the report and recommendation, this ruling effectively denied Precision's request for additional discovery and an extension of the discovery deadlines.

**\*\*3** On May 27, 1999, Precision moved for reconsideration of the court's order granting summary judgment and denying Precision's discovery motion. On June 10, 1999, the magistrate judge denied Precision's motion to comply and for other relief and Kenco's motion to compel discovery. Although the docket entry is not clear, the magistrate judge apparently also recommended the denial of Precision's motion for reconsideration. On July 7, 1999, the district court affirmed the order of the magistrate judge entered on June 10, 1999.

On April 3, 2001, Precision filed a motion pursuant to Fed.R.Civ.P. 54(b), 59(e), and 60(b) to alter or vacate the order granting summary judgment to Williams. This was in essence a motion for re-

Case 2:12-md-02311-SFC-RSW ECF No. 384-35, PageID.5391 Filed 09/11/12 Page 5 of 9

Page 4

66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.)))**

consideration. Precision argued that the court erred in denying Precision the opportunity for discovery and in granting summary judgment in favor of Williams, and further that there was new evidence establishing that summary judgment was improper. On April 16, 2001, the district court denied Precision's motion.

Subsequently, Precision and Kenco settled their dispute through a consent judgment in favor of Precision entered on March 29, 2001. Williams was not a party to the settlement agreement. Precision timely appealed the district court's grant **\*4** of Williams' motion for summary judgment, denial of Precision's discovery motion, and denial of Precision's two motions for reconsideration.

## II. Motion for Summary Judgment
### A. Standard of Review

We review the district court's grant of summary judgment *de novo. Sperle v. Michigan Dep't of Corr.,* 297 F.3d 483, 490 (6th Cir.2002). Summary judgment is proper when there exists no issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Piercing the Corporate Veil

Precision argues that Kenco and Williams should be treated as one entity because Kenco was simply a division of Williams. Alternatively, Precision argues that the court should pierce the corporate veil and hold Williams liable for the breach because Kenco is merely an alter ego of Williams.

There is some controversy over which state's law, that of Michigan or Delaware, applies to this matter. However, as noted by the district court, the law governing this dispute is similar in both jurisdictions. Therefore, it is unnecessary to resolve that issue.

[1][2] "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (internal citation omitted). However, Delaware and Michigan courts will pierce the corporate veil and hold the parent company liable for acts of a subsidiary when there is "such a complete identity between the defendant and the corporation as to suggest that one was simply the alter ego of the other." *Pettaway v. McConaghy,* 367 Mich. 651, 654, 116 N.W.2d 789, 790 (1962); *see Geyer v. Ingersoll Publications Co.,* 18 Del. J. Corp. L. 658, 678, 621 A.2d 784, 793 (Del.Ch.1992) ("a court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner[ ]"). Also, "[t]here must be evidence that the use of the corporation was improper." *Mattner v. Jennaro & Associates, Inc.,* No. 89-2366, 1991 WL 159452, \*3 (6th Cir. Aug.20, 1991) (internal citation omitted) (applying Michigan law). "There must be such a unity of interest and ownership that the separate personalities of the corporation and its owner cease to exist, and the circumstance must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *United States v. Cordova Chemical Co. of Michigan,* 113 F.3d 572, 580 (6th Cir.1997), *vacated on other grounds, sub nom* 524 U.S. 924, 118 S.Ct. 2317, 141 L.Ed.2d 692 (1998), (discussing Michigan law on piercing the corporate veil); *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc., et al.,* 685 A.2d 724, 729 n. 2 (Del.1996) (plaintiff is required to show that there is "exclusive domination and control ... to the **\*5** point that [the subsidiary]

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:12-md-02311-SFC-RSW ECF No. 384-35, PageID.5392 Filed 09/11/12 Page 6 of 9

Page 5

66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.)))**

no longer has legal or independent significance of [its] own."). "In ascertaining whether the separate corporate entity should be disregarded, each case is *sui generis* and must be decided in accordance with its own underlying facts." *Lettinga v. Agristor Credit Corp.,* 686 F.2d 442, 446 (6th Cir.1982) (internal citations omitted) (applying Michigan law); *Equitable Trust Co. v. Gallagher,* 34 Del.Ch. 76, 82, 99 A.2d 490, 493 (1953) (when circumstances require, courts will look behind the corporate curtain).

**\*\*4** In *Cordova Chemical,* this court found that the parent and subsidiary corporations were separate personalities even where a parent company owned 100% of a subsidiary; the parent company participated in the subsidiary's board of directors; there was a "cross-pollination of officers who were involved in decision-making and daily operations;" there was active participation by the parent officials in certain matters; and the parent had financial control of the subsidiary through approval of budgets and capital expenditures. *Cordova Chemical,* 113 F.3d at 581. These factors simply revealed "a parent that took an active interest in the affairs of its subsidiary[.]" *Id.*

In contrast, the Michigan Supreme Court in *Herman v. Mobile Homes Corp.,* 317 Mich. 233, 26 N.W.2d 757 (1947), found that two subsidiaries were alter egos of the parent company when the following factors were present: (1) all of the subsidiaries' capital and credit was provided by the parent; (2) one subsidiary purchased all of its supplies from the parent; (3) one of the subsidiaries was grossly undercapitalized; (4) the directors and officers of the subsidiaries were the officers and directors or employees of the parent company and the sons of the president of the parent company; (5) the parent handled the payroll of one subsidiary; (6) officers and employees of the parent company rendered gratuitous services to the subsidiaries; (7) the policies and decisions of the subsidiaries were determined by the parent's president; (8) one subsidiary received no profit; (9) one subsidiary was dissolved with its debt written off upon completion of a project; (10) the offices of all three corporations were at the same address; and (11) the correspondence from the parent revealed that it considered the subsidiary's project as its own. *Herman,* 317 Mich. at 240-241, 26 N.W.2d at 760-61.

[3] The evidence in this case shows that Kenco is not simply a division of Williams. The two are separate entities, and Precision should have been aware of this fact. Precision's negotiations were with Starr, Kenco's executive vice president and general manager. Starr's correspondence with Casey was on Kenco's letterhead. Further, Kenco maintains its own facilities in Indiana. Casey was aware of this fact, since Precision sent its invoices directly to Kenco in Indiana, not to Williams in Michigan. While some of the meetings during the negotiations of the contracts were held at Williams' headquarters in Michigan, this does not establish Williams as a party to the contract.

Kenco is not merely an instrumentality of Williams. Kenco maintains its own financial records and bank accounts. While Williams made loans to Kenco, the loans were documented on the books of both companies. *Cf. Doe v. Unocal Corp.,* 27 F.Supp.2d 1174, 1188 (C.D.Cal.1998) (Evidence that parent provides interest free loans without observing corporate formalities by documenting those loans with promissory notes supports finding that parent is subsidiary's alter ego.). Further, while Starr was required to receive Itan's approval on any purchase orders over $100 in August, 1993, this only lasted for a short period of time because Kenco was a newly **\*6** formed corporation. *See Cordova Chemical,* 113 F.3d at 581.

**\*\*5** Furthermore, Kenco has its own bylaws and maintains its own board of directors. While Precision argues that Kenco and Williams have the same board of directors, this does not establish "alter ego" liability. *See Bestfoods,* 524 U.S. at 56, 118 S.Ct. 1876 ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve

Case 2:12-md-02311-SFC-RSW   ECF No. 384-35, PageID.5393   Filed 09/11/12   Page 7 of 9

Page 6

66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.)))**

to expose the parent corporation to liability for its subsidiary's acts."); *see also* Madden v. Mac Sim Bar Paper Co., 103 F.2d 974 (6th Cir.1939). "Parents and subsidiaries frequently have overlapping boards of directors while maintaining separate business operations." Fletcher v. Atex, Inc., 68 F.3d 1451, 1460 (2d Cir.1995).

Precision also asserts that executives of Williams and Kenco referred to Kenco as a "division." However, references to a subsidiary as a "division" are not the equivalent to evidence that the entities are a "single economic entity." *See* Fletcher, 68 F.3d at 1460.

Further, we have found no law supporting Precision's argument that the corporate form should be disregarded simply because the company switched from using a backward slash mark in its name, Kenco*Williams, Inc., as seen in the Certificate of Incorporation, to a forward slash mark in its name, Kenco/Williams, Inc. If Casey was unsure about the status of the entities, he could have inquired during his negotiations.

Precision further asserts that a genuine issue of material fact existed as to whether the creation of Kenco was for fraudulent purposes. Precision alleges that there was a conflict of information that Williams certified to the Securities and Exchange Commission ("SEC") in its quarterly report, and facts that Williams presented in affidavits to the district court. Williams certified to the SEC that it sold a substantial portion of Kenco's assets. Simultaneously with the sale,

> the Registrant [Williams] repaid $1.1 million outstanding under its existing credit facility with its bank. Pursuant to the Intercreditor Agreement among U.S. Bank, Wells Fargo Bank and the Registrant dated July 14, 1997, the Company is obligated to pay to U.S. Bank the first $2.34 million in proceeds from future sales of inventory to KPI.

Precision argues this sale rendered Kenco judgment proof, contrary to two affidavits submitted by Williams which stated that Kenco was financially sound. However, both of those affidavits also reference the sale of Kenco's assets. As explained in the affidavits, "Kenco's Board of Directors made the decision to sell many of its assets in 1997 because its business was no longer compatible with the core business of the Williams' subsidiaries." Further, Gerald Herlihy, chief financial officer of Williams, explained in his affidavit that U.S. Bank retained a security interest in certain assets of subsidiaries, including assets of Kenco, in the Intercreditor Agreement. However, the proceeds from the sale were used to pay only Kenco's outstanding bank debt. After the sale of its assets, Kenco still owned real estate, with a fair market value of approximately $1,900,000, and preferred stock in Kenco Products, Inc., the company that bought a substantial portion of Kenco's assets, with a stated value of $797,000. Thus, the record discloses no material conflict between Williams' SEC filing and the evidence presented through affidavits.

**\*\*6** The evidence in the record before the district court establishes that Kenco maintained its own office and records, and that Casey negotiated the contracts with Starr, an executive at Kenco. Precision failed to **\*7** produce evidence sufficient to raise a genuine issue of material fact showing that Williams was the alter ego of Kenco, or that Kenco was used for improper purposes. In fact, Casey could not recall any documents that led him to believe that Kenco was a division of Williams. Accordingly, the district court's order entering summary judgment in favor of Williams on Precision's alter ego theory of liability is affirmed.

**III. Ruling on Motion for Additional Discovery**

[4] Precision also asserts that the district court erred in granting summary judgment to Williams because additional discovery was required to adequately address the issues raised in the motion for summary judgment. Because the district court denied Precision's objections to the magistrate judge's report and recommendation, the court also implicitly denied Precision's request for additional

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:12-md-02311-SFC-RSW   ECF No. 384-35, PageID.5394   Filed 09/11/12   Page 8 of 9

Page 7

66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.)))**

discovery in the summary judgment proceedings.

Precision's motion for additional time to conduct discovery is governed by Fed.R.Civ.P. 56(f), which states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court *may* refuse the application for judgment or *may* order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or *may* make such other order as is just.

(emphasis added). Because the district court "*may* refuse the application," it has discretion to do so. Mallory v. Noble Corr. Inst., et al., 45 Fed.Appx. 463, 467-68 (6th Cir.2002) ("a district court's discovery ruling should not be overturned unless the district court abused its discretion and that abuse of discretion resulted in substantial prejudice[ ]") (emphasis added) (citing Wolotsky v. Huhn, 960 F.2d 1331, 1338 (6th Cir.1992); Emmons v. McLaughlin, 874 F.2d 351, 356 (6th Cir.1989)); *see also* McCurry v. Adventist Health System/Sunbelt, Inc., 298 F.3d 586, 592 (6th Cir.2002) ("by providing that a District Court 'may' relieve a party from a final judgment or order, ... allows for some discretion.... Consequently, we review such a decision for an abuse of discretion.").

In the discovery context we evaluate the exercise of a district court's discretion against the five factors articulated in Plott v. General Motors Corp., Packard Electric Division, 71 F.3d 1190, 1196-97 (6th Cir.1995):(1) when the appellant learned of the desired discovery topic; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests. However, each of these individual factors can be determinative. *See* Gordon v. Barnes Pumps, Inc., 999 F.2d 133, 138 (6th Cir.1993); Woods v. McQuire, 954 F.2d 388, 391 (6th Cir.1992) (finding no abuse of discretion when the trial date and discovery deadline was extended twice); Tarleton v. Meharry Medical College, 717 F.2d 1523, 1534-35 (6th Cir.1983).

**\*\*7** Because Precision's motion for additional discovery is not in the record, the specific discovery sought by Precision and when Precision learned about the discovery topic are unknown.[FN1] Precision's objections**\*8** to the report and recommendation indicate only that the defendants allegedly delayed the discovery process through untimely responses. In Precision's memorandum opposing Williams' second motion for summary judgment, Precision refers to its arguments concerning its discovery request made in its response to Williams' first motion for summary judgment. However, this response filed on January 5, 1998, is not in the record.

> FN1. The only indication as to what Precision sought is based on the objections to the magistrate judge's order. *See* J.A. at 280. However, this only indicates what Precision objected to, not what Precision sought in the way of further discovery.

Precision had almost a year after the denial of the first motion for summary judgment to conduct further discovery before the pending motion for summary judgment. Further, Precision's motion for reconsideration states that Precision was entitled "to take critical depositions of defendants' personnel for evidence opposing the granting of Summary Judgment" because, according to an affidavit of counsel, Williams delayed the original discovery. However, Precision presented no affidavit outlining the areas in which it sought further discovery. Hence, the instant case is distinguished from Glen Eden Hosp., Inc. v. Blue Cross and Blue Shield of Michigan, Inc., 740 F.2d 423 (6th Cir.1984), where the district court was found to have abused its discretion in granting summary judgment despite a documented and supported request for additional

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:12-md-02311-SFC-RSW ECF No. 384-35, PageID.5395 Filed 09/11/12 Page 9 of 9

Page 8

**66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))**
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.)))**

discovery.

In this case, the record does not disclose what information could have been obtained through the additional discovery or whether the information sought in discovery might have persuaded the district court to deny the summary judgment. However, the record does indicate that, prior to the district court's ruling on Williams' second motion for summary judgment, Precision had over a year to conduct discovery, because the lawsuit was filed in November, 1997, and the deadline for discovery established by the pretrial scheduling order was February 22, 1999. The record also establishes that Precision was dilatory in its efforts to secure the information that it requested, as Precision did not file its motion to compel discovery until March 22, 1999, a month after the discovery deadline.

On April 3, 2001, Precision filed a motion to reconsider the prior ruling, and submitted arguments and new evidence. The district court stated that the court "had an opportunity to fully review this matter and believes that it contains the same issues ruled upon by the Court and the allegedly newly discovered evidence would not change this conclusion." The additional evidence that Precision did submit after two years of further discovery in the case against Kenco was insufficient to change the court's mind about its prior ruling.

Based on the record before this court, we find no grounds for concluding that the district court abused its discretion in refusing Precision's requests for further discovery, nor does the record show that Precision was substantially prejudiced by this ruling.

### IV. Conclusion

**\*\*8** In accordance with the foregoing, the judgment of the District Court granting summary judgment to Williams is affirmed.

C.A.6 (Mich.),2003.
Precision, Inc. v. Kenco/Williams, Inc.
66 Fed.Appx. 1, 2003 WL 1517241 (C.A.6 (Mich.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.