# Exhibit 36

Not Reported in F.Supp.2d, 2010 WL 1658033 (E.D.Mich.)
**(Cite as: 2010 WL 1658033 (E.D.Mich.))**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Michigan,
Southern Division.
RECARO NORTH AMERICA, INC., a Michigan corporation, Plaintiff,
v.
HOLMBERGS CHILDSAFETY CO., LTD., f/k/a Kendrion Safety Functions, Ltd., a Hong Kong corporation, and Gnosjö-Gruppen AB, f/k/a Kendrion Automotive Metals, AB, a Swedish corporation, Defendants.

No. 09-12256.
April 23, 2010.

*OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, PURSUANT TO FED. R. CIV. P. 12(b)(3) FOR LACK OF PROPER VENUE, OR IN THE ALTERNATIVE, BASED ON FORUM NON CONVENIENS GROUNDS*
MARIANNE O. BATTANI, District Judge.

**\*1** Before the Court is Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(2) for Lack of Personal Jurisdiction, or in the Alternative, Pursuant to FED. R. CIV. P. 12(b)(3) for Lack of Proper Venue, or In the Alternative Based on *Forum Non Conveniens* Grounds (Doc. No. 11). The Court heard oral argument on January 6, 2010, and at the conclusion of the hearing, took this matter under advisement. Counsel for Defendants subsequently provided the Court with a chart of the corporate structure of Gnosjö-Gruppen AB. The Court upon consideration of the pleadings, **DENIES** the motion.

**I. STATEMENT OF FACTS**

Recaro North America Inc. (Recaro) brings this action for damages relating to the recall and replacement of a metal, spring-loaded adjuster, commonly called an A-lock. Pl.'s Ex. A, ¶ 3. A-locks, which are used in child safety seats, keep the harness straps tight, and a failure of the A-lock results in an inability to secure a child properly in the safety seat. *Id.* at ¶ 4. Defendant Gnosjö-Gruppen AB, formerly known as Kendrion Automotive Metals AB, a Swedish corporation, includes an automotive supplier division and a child safety division. Two corporations comprise the child safety division: Holmbergs Childsafety AB, formerly known as Kendrion Holmbergs AB, and Defendant Holmbergs Childsafety Co., LTD (hereinafter Holmbergs Hong Kong), formerly known as Kendrion Safety Functions, LTD., a Hong Kong corporation. *See* Defs.' Suppl. Exhibit.

According to Recaro, prior to contracting with Defendants, it used an A-lock designed and manufactured by Indiana Mills and Manufacturing Incorporated (IMMI), a U.S. company. Am. Compl. at ¶ 14. When Recaro began development of its Como and Signo brand convertible child safety seats, it was approached by Global Products Inc., to purchase A-locks designed by Gnosjö-Gruppen AB, and manufactured by Holmbergs Hong Kong. Pl.'s Ex. A at ¶ 5.

According to Plaintiff, Global Products, Inc. (Global Products) has represented Gnosjö-Gruppen AB since 2001 and Holmbergs since 2003. Pl.'s Ex. B, Dec. 5, 2006 email; Pl.'s Ex. C1. After October 2006, when Brad Shearer, a principal of Global Products, approached Recaro about using Defendants' A-locks, *id.* at ¶¶ 5, 7, Global Products initiated many subsequent communications with Recaro. *Id.* at ¶ 8. A Global Products representative personally visited Recaro's headquarters to discuss Defendants' involvement in the supply chain for Recaro's child safety seats. Pl.'s Ex. A, ¶ 19. In these interactions, Global Products represented

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1658033 (E.D.Mich.)
**(Cite as: 2010 WL 1658033 (E.D.Mich.))**

Gnosjö-Gruppen AB and Holmbergs Hong Kong as one company, portraying Gnosjö-Gruppen AB as in control and Holmbergs Hong Kong as a production facility opened in China to take advantage of low production costs. *Id.* at ¶¶ 12, 13.

Eventually, Recaro agreed to purchase 18,000 A-locks directly from Gnosjö-Gruppen AB for the Cosmo brand. Pl.'s Ex. A at ¶ 15. After Holmbergs Hong Kong established production capability, it manufactured the A-locks and shipped them to International Marketing Systems("IMS")/Safety Plus, which was also in China. *Id.* at ¶ 16. IMS/SafetyPlus inserted the safety belt through the A-lock and sewed the harness straps. These "finished" components were sent to Lerado, another Chinese company with whom Recaro had a contractual relationship. Lerado assembled all of the components and shipped the final seat to Recaro. Recaro purchased approximately 16,000 A-locks from Holmbergs Hong Kong. *Id.* at ¶ 15.

**\*2** According to Plaintiff, Global Products represented and agreed that Holmbergs Hong Kong and IMS/Safety Plus would remain directly liable to Recaro for any defects in the respective components. *Id* . at ¶ 17. Shearer issued two quotations from Holmbergs Hong Kong to IMS/SafetyPlus and from IMS/SafetyPlus to Lerado, which are offered in support of Plaintiff's position. *See* Pl.'s Exs. E and F. The first, dated August 14, 2007, is written on Holmbergs Hong Kong letterhead, and includes a "Note:

> [Holmbergs Hong Kong] is responsible for the [A-locks] as noted .... and Recaro specifications as agreed upon. IMS/Safety Plus only responsible for a visual inspection fo the mechanism during sewing operation. Any defects discovered in this inspection should be noted immediately to [Holmbergs Hong Kong].

Pl.'s Ex. E. The second quotation is on IMS letterhead and addresses a quotation for sewn straps sold to Lerado for use only on seats as "designed and approved by Recaro." Pl.'s Ex. F. The Note section states that Holmbergs Hong Kong will be "responsibly directly to Recaro for QA matters." *Id.*

In January 2009, Recaro received a customer complaint about the A-lock. Recaro's engineering and quality department reviewed the issue, and on February 2, 2009, it informed Lerado, IMS, and Holmbergs Hong Kong of the problem. Recaro sent several of the defective A-locks to Holmbergs Hong Kong, which confirmed that Gnosjö-Gruppen AB designed the A-lock. *Id.* at ¶ 21, 22.

Recaro reported the defect to the National Highway Traffic Safety Administration ("NHTSA"), *id.* at ¶ 26, and Recaro subsequently announced a recall affecting 5,444 child safety seats assembled between February 2008 and September 2008. Pursuant to the recall, Recaro agreed to replace all defective child safety seats. *Id.* at ¶ 27, Pl.'s Ex G, H. It replaced 1,540 seats and reworked 7,000. Pl.'s Ex. A at ¶ 29.

On June 29, 2009, Plaintiff filed suit against Defendants Holmbergs Hong Kong and Gnosjö-Gruppen AB, alleging claims of breach of contract and breach of warranty. Plaintiff also seeks to pierce the corporate veil as to Gnosjö-Gruppen AB. Plaintiff alleges that Defendants are liable for damages Plaintiff incurred in connection with a recall of its child safety seats by NHTSA.

Defendants move for dismissal for lack of personal jurisdiction, improper venue, and on the basis of *forum non conveniens.*

## II. STANDARD OF REVIEW

### A. Personal jurisdiction

Before its answer is filed, a defendant may move to dismiss for lack of personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). "Where personal jurisdiction is challenged in a 12(b) (2) motion, the plaintiff has the burden of establishing that jurisdiction exists." *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168 (6th Cir.1988); *see also McNutt v. Gen. Motors Acceptance Corp.,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

298 U.S. 178, 189 (1936) (the plaintiff "must allege in his pleading the facts essential to show jurisdiction"). If a district court rules on such a motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion ." *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981)). The district court is granted considerable discretion in rendering its decision. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991); *Mich. Nat'l Bank v. Quality Dinette, Inc.,* 888 F.2d 462, 466 (6th Cir.1989). The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal. *Serras,* 875 F.2d at 1214. Where the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish a *prima facie* showing of jurisdiction in order to avoid dismissal, *Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir.2005), and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1261-62 (6th Cir.1996).

**\*3** In considering 12(b)(2) motions, the court does not weigh the controverting assertions of the moving party due to its interest in "prevent [ing] nonresident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc.,* 89 F.3d at 1262 (quoting *Theunissen,* 935 F.2d at 1459).

### B. Venue

Pursuant to 28 U.S.C. § 1391(a):

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

### C. Forum Non Conveniens

Forum non conveniens is a flexible doctrine. *Estate of Thomson v. Toyota Motor Corp. World-Wide,* 545 F.3d 357, 363 (6th Cir.2008). When a district court weighs the relevant factors, its decision deserves substantial deference. *Id.* at 364. In weighing these factors, the district court must first establish an adequate alternative forum. *Id.* Then, the court must weigh the relevant public and private factors. *Id.* The court should also give deference to the plaintiff's choice of home forum. *Id.* at 365.

### III. ANALYSIS

### A. May the Court Exercise Personal Jurisdiction over the Defendants?

The parties contest whether the exercise of personal jurisdiction is proper. At the outset of the analysis of this issue, the Court observes that Recaro bears the burden of establishing personal jurisdiction for each defendant individually, even here, where the defendants are related companies. *Calder v. Jones,* 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with [the forum state] are not to be judged according to their employer's activities there .... Each defendant's contacts with the forum State must be assessed individually").

Where a federal court's subject matter jurisdiction over a case stems from the existence of diversity of citizenship, the courts examine the law of the forum state to determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir.2000). The court may exercise personal jurisdiction provided the state long-arm statute and constitutional due process require-

Not Reported in F.Supp.2d, 2010 WL 1658033 (E.D.Mich.)
**(Cite as: 2010 WL 1658033 (E.D.Mich.))**

ments are met. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1993) (citation omitted). Personal jurisdiction can be either general or specific, depending on the type of minimum contacts. *Third Nat'l Bank v. Wedge Group Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989). General jurisdiction depends on a showing that the defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims" the plaintiff may have against the defendant. *Fortis Corporate Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 218 (6th Cir.2006) (quoting *Aristech Chem Int'l v. Acrylic Fabricators,* 138 F .3d 624, 627 (6th Cir.1998)). In contrast, specific jurisdiction exposes the defendant to suit in the forum state only as to those claims that "arise out of or relate to" the defendant's contact with the forum. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414-15 (1984).

**\*4** Plaintiff argues that the contacts in this case support both general and specific jurisdiction. Each basis is addressed below.

**1. General Jurisdiction**

General personal jurisdiction over a corporation exists when any of three criteria is met: the corporation is incorporated in Michigan; the corporation consents to jurisdiction in a Michigan court; or the corporation carries on "a continuous and systematic part of its general business within the state." MICH. COMP. LAWS § 600.711. There is no dispute that the Defendants are not subject to the jurisdiction of this Court under the first two prongs of the statute. Neither Defendants is incorporated in Michigan. Neither has consented to jurisdiction here.

Additionally, Plaintiff does not allege that either Defendant has an office, warehouse, facility, or bank account in Michigan, or that either Defendant owns property in Michigan. *See* Defs.' Ex. 1, Decl. of Philip Chan, CEO Holmbergs Hong Kong at ¶¶ 4-13; Defs.' Ex. 2, Decl. of Bo Isacson, CFO Gnosjö-Gruppen AB at ¶¶ 3-12. Nevertheless, Recaro asserts that both Defendants' contacts with the U.S. and Michigan are continuous and systematic, therefore, this Court may exercise general jurisdiction over each Defendant pursuant to MICH. COMP. LAWS § 600.711(3).

Under the statute, a court may exercise general jurisdiction over a corporation provided "a continuous and systematic part of its general business" takes place in Michigan. According to Plaintiff, each Defendant conducted business in Michigan through Brad Shearer and Global Products. Gnosjö-Gruppen AB maintained a regional office in Indiana. Individuals from that office actively pursued Recaro's business in Michigan, including Peter Miller, who, while he was Global Products' Vice President, also acted as the COO of Holmbergs Hong Kong. Pl.'s Exs. B and D, Exs. I and J.

Shearer represented to Recaro that Holmbergs Hong Kong is related directly to Gnosjö-Gruppen AB. "Five years ago, Global Products began working with them as entry into the U.S. market from Sweden. As customer need and focus changed in the U.S., we opened the plant in Hong Kong about 2.5 years ago." *See* Pl.'s Ex. B. Further, Holmbergs Hong Kong represented that its existing main customers include a couple of U.S. manufacturers of child safety products. Pl .'s Ex. C at 25.

The allegations advanced by Plaintiff to establish a continuous and systematic part of Defendants' business took place in Michigan are insufficient, and Plaintiff's reliance on *Composite Sales & Mktg, Inc. v. Camali Indus. (NA) Inc.,* No. 08-19997, 2009 WL 2750952 (E.D.Mich. Aug. 26, 2009), is misplaced. In finding the exercise of jurisdiction over the defendant was proper, the *Composite Sales* Court was presented with evidence of the percentage of the defendant's annual sales in Michigan, evidence of a large volume of sales to Michigan customers, and evidence of purchase orders from Michigan that occurred regularly throughout the year. *Id.* at \*2.

**\*5** In contrast, here, the allegations and evid-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ence do not show what percentage of Defendants' business is conducted in Michigan. That Holmbergs Hong Kong had some U.S. customers among its many Chinese customers provides an insufficient basis for asserting general jurisdiction. Nor does the record include evidence of purchase orders from Michigan occurring regularly throughout the year. Consequently, the Court finds that the exercise of general jurisdiction over these Defendants is not authorized under the long-arm statute. Therefore, the Court considers whether it may exercise specific jurisdiction, given the facts of this case and claims asserted.

**2. Specific Jurisdiction**

a. *Long-Arm Statute*

The Michigan long-arm statute likewise specifies conditions under which Michigan courts may exercise specific personal jurisdiction over nonresident corporate defendants. Pursuant to applicable provisions, specific jurisdiction exists when a plaintiff's claim arises out of a defendant's contact with the state. The statute allows a court to assert personal jurisdiction over a corporation or its agent who, among other things, transacts "any business within" Michigan. MICH. COMP. LAWS § 600.715(1). The provision is interpreted broadly, and it includes even the "slightest" business contact. *Sifers v. Horen,* 188 N.W.2d 623, 624 n. 2 (Mich.1971).

Plaintiff alleges that Defendants' agent negotiated and executed a contract with a Michigan corporation that required a product be shipped to Michigan. Further, Plaintiff contends that Defendants caused harm by sending a defective product into Michigan. In this case, the Court assumes for the purposes of analysis that Defendants Holmbergs Hong Kong and Gnosjö-Gruppen AB transacted some business, albeit neither continuous nor systematic, in Michigan. Accordingly, the Court considers whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

b. *Due Process*

Under the Due Process Clause of the Fourteenth Amendment, "[a] state court may exercise personal jurisdiction over a nonresident defendant so long as there exists 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945)). "The proper focus for analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail itself of the privilege of conducting activities within Michigan, the forum state. If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113 (1987)).

In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally articulated in *S'ern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968):

> *\*6 First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.*

Because there has been no evidentiary hearing on the issue of personal jurisdiction, the Court must limit its inquiry to whether Plaintiff has established a "prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). The Court must draw all reasonable inferences and resolve all factual disputes in favor of Plaintiff as the party invoking federal jurisdiction.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1658033 (E.D.Mich.)
**(Cite as: 2010 WL 1658033 (E.D.Mich.))**

See *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790 (6th Cir.1996).

1. *Purposeful availment*

The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant [itself] that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that it should "reasonably anticipate being haled into court there." *CompuServe, Inc.,* 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75 (1985)). This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Id.* at 475 (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 774 (1984); *Helicopteros,* 466 U.S. at 417).

At the outset, the Court observes that a defendant cannot be subject to suit in a particular state merely because it entered into a contract with a resident plaintiff. Instead, the Court must evaluate the relationship of Holmbergs Hong Kong, Michigan, and the cause of action. The same analysis must be conducted relative to Gnosjö-Gruppen AB.

Minimum contacts may be established through a defendant's purposeful availment of the benefits and protections of Michigan's laws. *Ashai Metal indus.,* 480 U.S. at 109. Accord *Mohasco,* 401 F.2d at 381 (court must first determine whether the defendant "purposefully avail[ed] [itself] of the privilege of acting in the forum state or causing a consequence in the forum state"). Here, the Court uses the "stream of commerce 'plus' " approach, articulated by Justice O'Connor in *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102 (1987). See *Bridgeport Music, Inc. v. Still N the Water Publishing,* 327 F.3d 472, 479 (6th Cir.2003) (adopting the approach). Under this approach, "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* (quoting *Asahi,* 480 U.S. at 112). There must be conduct reflecting "an intent or purpose to serve the market in the forum state." *Ashai,* 480 U.S. at 112).

**\*7** Accordingly, the Court looks at how and why the A-locks landed in Michigan. Here, Plaintiff makes a prima facie case that Defendants actually guided the product to Michigan and the purpose was to serve Recaro in Michigan. In reaching this resolution, the Court finds the Sixth Circuit's decision in *Tobin v. Astra Pharm. Prod., Inc.,* 993 F.2d 528, 544 (6th Cir.1993) (holding that an out-of-state defendant purposely directed its activities at the forum state where the defendant manufacturer had a nationwide distribution agreement with a distributor of pharmaceuticals), persuasive.

The distribution agreement in *Tobin,* required the distributor to place the defendant's product throughout the United States, to "regularly consult with [the defendant]" on a variety of matters, which indicated to the court that the defendant "intended to retain control over the manner in which the distributor marketed its products." *Id.* at 543. Notably, the appellate court found that "designing the product for the market in the forum state" may be indicative of an intent or purpose to serve the forum state. The *Tobin* Court relied on the reasoning of an earlier, unpublished decision. Specifically, in *Mott v. Shelling & Company,* No. 91-1540, 1992 WL 116014 (6th Cir. May 29, 1992), the court identified facts significant in affirming the exercise of personal jurisdiction over the defendant. Several of those facts are relevant to the analysis here, including the fact that the foreign defendant sold its product worldwide but maintained an exclusive American sales agent, and the fact that the design and manufacture of the products contemplated United States standards. The court reasoned that these facts demonstrated that the defendant not only was aware that its product was sold in the United States, it "actively cultivated its market there, and benefitted from numerous U.S. sales ." *Tobin,* 993 F.2d at 545.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1658033 (E.D.Mich.)
**(Cite as: 2010 WL 1658033 (E.D.Mich.))**

As was the situation in *Tobin,* here, Plaintiff has presented evidence that the A-lock was designed expressly for Recaro to access the United States market. This is not a case wherein a plaintiff attempted to establish purposeful availment of a defendant that merely knew but did not object to sending its product into Michigan. Although Holmbergs Hong Kong did not negotiate directly with Plaintiff, or travel to Michigan, its agent did so. Therefore, the lack of an actual physical connection by Holmbergs Hong Kong does not render the Court's analysis faulty.

Likewise Gnosjö-Gruppen AB had purposeful contact with Michigan. Although it maintains that it did not have a relationship with Global Products, here, Plaintiff advances a piercing the corporate veil claim and the Court finds that requiring Gnosjö-Gruppen AB to defend in Michigan is not unreasonable. Shearer, acting through Global Products, intentionally sought out Recaro's business in Michigan on behalf of both Defendants. The relationship is not random, fortuitous or attenuated. Through their agent, Defendants directly solicited and indirectly supplied Recaro with 34,000 A-locks from September 2007 until January 2009, they frequently emailed and called Recaro employees, visited Recaro in Michigan, and agreed to be directly liable to Recaro in order to become suppliers of the child safety seat. Therefore, they had continuing obligations to Recaro. Accordingly, the Court finds the first prong of the Sixth Circuit's *Mohasco* test is satisfied.

2. *Arising from*

**\*8** The next prong of *Mohasco,* which requires Plaintiff's cause of action to arise from Defendants' activities in the forum state, should not be construed too strictly. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Mohasoc,* 401 F.2d at 384 n. 29. In other words, so long as the cause of action has "[a] substantial connection with [a] defendant's in-state activities," it is not necessary that the suit formally arise from [a] defendant's contacts with the forum state. *See WEDGE Group, Inc.,* 882 F.2d at 1091 (quoting *Mohasoc,* 401 F.2d at 384 n. 27).

The activities of Shearer and Global Products satisfy this second prong. Here, Plaintiff's claims would not have occurred in absence of his specific targeting of Plaintiff's business. Given the lenient standard and that the cause of action need not "formally" arise out of the contact, the Court finds Plaintiff has made a prima facie showing of jurisdiction as to Defendants. Even crediting Defendants' insistence that no one "required" Shearer to target Michigan, there is no question that he set the relationship in motion.

Therefore, the Court finds that Defendants' activities gave rise to Plaintiff's cause of action and thus satisfy the second element of the *Mohasco* test.

3. *Reasonableness.*

As to the third and last prong, the Supreme Court has cautioned the lower courts to use "great care and reserve" when addressing personal jurisdiction relative to international defendants. *Ashai,* 480 U.S. at 115 (citation omitted). Although "[a]n inference arises that the third factor is satisfied if the first two requirements are met." Bird, 289 F3d at 875; *CompuService, Inc.,* 89 F.3d at 1268, the Court carefully considers "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interests of other states in securing the most efficient resolutions of controversies." *Am. Greetings Corp.,* 839 F.2d at 1169-70 (quoting *Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 113 (1987)).

The Court is cognizant that the Sixth Circuit has routinely upheld specific jurisdiction in cases even when doing so forces the defendant to travel to the forum state, see, *e.g., Lanier v. Am. Bd. of Endodontics, supra,* 843 F.2d at 911-12 (upholding jurisdiction in Michigan over Illinois defendant); *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1170-71 (6th Cir.1988) (allowing jurisdiction in

Michigan over California defendant). Here, the Court reaches the same conclusion-that it is reasonable to exercise personal jurisdiction over Defendants. The burden on Defendants is outweighed by Michigan's interest in affording its citizen, Recaro, the most efficient resolution of this controversy. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477. Because this litigation arose from Defendants' contacts with the state of Michigan, it is subject to specific personal jurisdiction in the courts of this state. Because the Court has resolved this motion "solely on written submissions and affidavits," Recaro's burden to show the existence of personal jurisdiction is "relatively slight." *Air Prods. & Controls, inc. v. Safetech Int'l inc.,* 503 F.3d 544, 549 (6th Cir.2007). Recaro has met its burden.

**B. Is Venue Proper?**

**\*9** In the alternative, Defendants maintain that venue in this Court is improper. Title 28 U.S.C. § 1391(a)(3), which governs venue in a case brought pursuant to diversity jurisdiction, is satisfied because the Court has determined the Defendants are subject to personal jurisdiction in this district. Accordingly, Defendants' request for dismissal on this basis is denied.

**C. Is Dismissal Appropriate under *Forum Non Conveniens*?**

Defendants ask that the Court to dismiss this matter even if personal jurisdiction exists because the interests of justice require them to be tried in Hong Kong. Plaintiff disagrees.

Under the common law doctrine of *forum non conveniens,* a district court "may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Howe v. Goldcorp Investments,* Ltd., 946 F.2d 944, 945 (1st Cir.1991). The doctrine requires the court to weigh multiple factors relating to fairness and convenience in light of the particular facts of the case. See *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249-50 (1981).

A defendant moving for dismissal on *forum non conveniens* grounds must first demonstrate the availability of an adequate alternative forum. See *Stewart v. Dow Chemicals Co.,* 865 F.2d 103, 106 (6th Cir.1989); *Kryvicky v. Scandinavian Airlines Sys.,* 807 F.2d 514, 516 (6th Cir.1986). A defendant meets this requirement by showing amenability to process in the foreign jurisdiction. See *Piper Aircraft Co.,* 454 U.S. at 254 n. 22 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506-07 (1947)). "In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Id.*

If a defendant satisfies this burden, the court directs its attention to the public and private interests to determine whether dismissing the action best serves the convenience of the parties and the ends of justice. See *Stewart,* 865 F.2d at 106-07; *Kryvicky,* 807 F.2d at 516; *Dowling v. Richardson-Merrell, Inc.,* 727 F.2d 608, 612 (6th Cir.1984). "Among the important private interest considerations are "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Dowling,* 727 F.2d at 612 (quoting *Golf Oil,* 330 U.S. at 508). Additionally, the court must assess the problems that would be encountered in enforcing a judgment. *Dowling,* 727 F.2d at 612. The Supreme Court also identified relevant public interest factors, including docket congestion; "the burden of jury duty on people of a community having no connection with the litigation; desirability of holding a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

trial near those most affected by it ("There is a local interest in having localized controversies decided at home."); and familiarity with governing law. *Golf Oil,* 330 U.S. at 508-09.

**\*10** Defendants' assertion that China is an adequate forum is not contested. *See* Defs.' Reply, Ex. A, Aff. of Richard Healy, a solicitor practicing in Hong Kong. Certainly witnesses and proofs are located in China; however, many key witnesses are located in the U.S., included Shearer and Miller. Defendants failed to identify any witness that is unwilling to appear here. Moreover, although documentary proofs are located in Holmbergs Hong Kong's production plant, the ease with which documents may be sent electronically, mitigates any finding that this factor requires dismissal, especially when the recalled seats are in Michigan. The record in this case suggests that many documents regarding the relationship appear to be written in English, and regardless of where this dispute is litigated, the parties will incur translation costs and travel costs.

Further, the Court finds that Michigan has a strong public interest in protecting even its corporate citizens from defective, foreign manufactured equipment. The damage was sustained in Michigan. *See Kryvicky,* 807 at 516 (noting that "the country where the injury occurred has a greater interest in the ensuing products liability litigation that the country where the product was manufactured). Although Defendants maintain that they do not have property in the U.S. to collect a judgment, Plaintiff asserts that Defendants have customers in the U.S., and Recaro could collect a judgment by garnishing Defendants' receivables.

In *Duha v. Agruim, Inc.,* 448 F.3d 867, 874 (6th Cir.2006), the Sixth Circuit Court of Appeals reiterated the deference shown for a "U.S. plaintiff's choice of a home forum." It noted that under the standard, dismissal is appropriate "only when the defendant "establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id., citing Koster v. American Lumbermans Mut. Cas. Co.,* 330 U.S. 518, 524 (1947). Defendants simply have not met their burden to show dismissal is warranted.

### IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion.

**IT IS SO ORDERED.**

E.D.Mich.,2010.
Recaro North America, Inc. v. Holmbergs Childsafety Co., Ltd.
Not Reported in F.Supp.2d, 2010 WL 1658033 (E.D.Mich.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.