# Exhibit 38

Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
SEE, INC., Plaintiff,
v.
IMAGO EYEWEAR PTY LTD., Seeyewear Party Ltd. and, Steven Ehrltch, Defendants.

No. 03–74761.
Oct. 12, 2004.

Mark A. Cantor, Robyn S. Lederman, Brooks & Kushman, Southfield, MI, for Plaintiff.

James W. Stuart, Ogne, Alberts, Troy, MI, for Defendants.

***OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS***

PAUL D. BORMAN, District Judge.

***1** Presently before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. The Court heard oral argument on. this matter on September 27, 2004.

***BACKGROUND:***

In this action, Plaintiff See, Inc. ("Plaintiff") brought suit against Imago Eyewear Pty Ltd. ("Imago") Seeyewear Party Ltd. ("Seeyewear") and Steven Ehrlich ("Ehrlich") collectively ("Defendants") based on the alleged infringement of its trademark registrations. Specifically, the Complaint contains the following counts:

Count I—Cyberpiracy

Count II—Trademark Infringement

Count III—False Designation of Origin or Sponsorship under Sections 43(d), 43(c), 32(1), and 43(a) of the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a) and § 1125(d).

Count IV—Violation of Michigan Consumer Protection Act under MCLA § 445.901 et. seq.

Plaintiff seeks a preliminary and permanent injunction, statutory damages under the Cyberpiracy Act in the amount of $100,000 for each infringing domain name, compensatory damages, treble damages, attorneys's fees and costs.

Plaintiff owns United States Federal trademark registrations for "SEE" and "SEE SELECTIVE EYEWEAR ELEMENTS", and has a pending Federal application Tor "SEE EYEWEAR". (Complaint Exh. 2). These trademark registrations were originally filed by D.O.C. Optical Corporation ("D.O.C") and later assigned to Plaintiff. (Complaint ¶ 13, Exh, 2).

According to Plaintiff, on December 23, 1998 D.O.C. registered the domain name SEEEYEWEAR.COM to serve as the web site for Plaintiff and for products sold under the "SEE EYEWEAR" trademark.

Ehrlich is an individual domiciled in New South Wales, Australia. (Declaration of Ehrlich, ¶ 3, ¶ 4, attached to Defendant's Motion to Dismiss). He has never visited Michigan. (*Id.* at ¶ 19). Ehrlich is the founder and owner of Imago and Seeyewear both of which are Australian companies. (*Id.* at ¶ 3, ¶ 4). Ehrlich owns an Australian Trademark Registration and a World Intellectual Property Organization Trademark Registration for "SEEYEWEAR." ( *Id.* at ¶ 14, ¶ 15; See also Certificate of Registrations attached to Defendant's Motion to Dismiss).

Around April 2002, Ehrlich registered the domain name www.sceyewear.com. (*Id.* at ¶ 16). This web address is identical to Plaintiff's except that it has one less "e." FN1

FN1. Both Plaintiff's and Defendants' website displays information about their eye-

care products. (Declaration of Ehrlich, ¶ 19, attached to Defendant's Motion to Dismiss and Declaration of Richard Golden, ¶ 7, attached to Plaintiff's Brief in Opposition). Defendants' website displays information about its products, but the products cannot be purchased through the website. (Declaration of Ehrlich, ¶ 19, attached to Defendant's Motion to Dismiss). Defendants' website does have a feature which allows internet users to inquire about the products by filing out an online form. (*Id.* at ¶ 20). The online form asks for the user's name and postal address but not credit card information. (*Id.* at ¶ 20). The Defendants have never received an inquiry through its website by an individual identified as a resident of Michigan. (*Id.* at ¶ 21).

On November 25, 2003 Plaintiff filed its complaint primarily based upon its allegation that many of its customers are being diverted to Defendants' website because it is confusingly similar to Plaintiff's domain name. (Docket Entry 1). On April 21, 2004, Defendants filed the present motion to dismiss, arguing that, this Court cannot exercise personal jurisdiction over them. (Docket Entry 7). On June 2, 2004, Plaintiff filed its brief in opposition. (Docket Entry 11). On June 21, 2004, Defendants filed their Reply. (Docket Entry 12).

The Defendants move to dismiss Plaintiff's complaint for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). Defendants' claim that they have no contact with Michigan and for this court to exercise personal jurisdiction would violate due process and cannot satisfy Michigan's Long Arm Statute. Defendants' argue that they have engaged in no activities in Michigan to purposefully avail themselves in Michigan.

***2** Plaintiff counter Defendant's argument by stating that the Defendants "misinterpret the law of personal jurisdiction." (Plaintiff's brief pg. 1) The Plaintiff asserts that in trademark cases of this type, the "effects doctrine" applies. *Id.* The "effects doctrine" examines where the plaintiff feels the harm from the infringement, and vests that forum with personal jurisdiction over the Defendant. *Id.* Plaintiff states that the operation of Defendants website is causing it harm because its customers mistakenly visit the Defendants website. *Id.* Therefore, the Plaintiff "feels" the effects of Defendants infringement in Michigan.

Furthermore, Plaintiff claims that Defendants are subject to personal jurisdiction in this court because their website is "quite interactive" by providing visitors with ample opportunity to exchange information. *Id.* Plaintiff also alleges that Defendants market goods at Exhibition throughout the world, and that attendees that include individuals and those companies from this district and that sell into this district. (Plaintiff's complaint ¶ 9).

Plaintiff also claims Defendants are subject to personal jurisdiction in this court pursuant to Fed.R.Civ.P. 4(k)(2). *Id.*

Plaintiff further argues that the declaration of Steven Ehrlich addresses only his activities, and not that of Imago or Seeyewear. Therefore, the Motion to Dismiss as to Imago and Seeyewear is unsupported and should be dismissed. (Plaintiff's brief pg.7).

Lastly, Plaintiff requests that if the Court is considering granting Defendants' Motion, it first be given an opportunity to take jurisdictional discovery to determine what additional facts favor personal jurisdiction under Rule 4(k)(2) or the Michigan Long–Arm Statute. (Plaintiff's brief pg. 17–18).

***ANALYSIS***

**A. Standard**

To avoid dismissal where there has been no evidentiary hearing, a plaintiff need only present a *prima facie* case for jurisdiction. *Niemi v. NIIK Spring Co.,* 276 F.Supp.2d 717 (E.D.Mich.2003) (citing *Kerry Steel v. Paragon Industries,* 106 F.3d 147, 148 (6th Cir.1997)). A court must consider all affidavits and pleadings in a light most favorable to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

plaintiffs, and does not weigh the controverting assertions of the party seeking dismissal. *Id.* (citing *Dean v. Motel 6 Operating, LLP,* 134 F.3d 1269, 1272 (6th Cir.1998)). However, at this stage, where the Court has not held an evidentiary hearing, "in the face of a properly supported motion for dismissal, the [plaintiffs] may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Mathews,* 935 F.2d 1454, 1459 (6th Cir.2002).

The Supreme Court also has noted "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 155, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

**B. Personal Jurisdiction**

***3** Plaintiff invokes this court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum's] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process. See *Bird v. Parsons,* 289 F.3d at 871 (6th Cir.2002) quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992).]

With personal jurisdiction, Michigan's Long Arm Statute applies. It states:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
>
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
>
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
>
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

M.C.L. § 600.705.

There are two ways to assert personal jurisdiction over a foreign defendant: (1) general personal jurisdiction, where a defendant has "continuous and systematic" contacts with a forum state, see *Perkins v. Benquet Consol. Mining Co.,* 342 U.S. 437, 445–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952); and (2) limited or specific personal jurisdiction, where the subject matter of the lawsuit relates to, and arises out of, a defendant's contacts with a forum state. *Nationwide Mut. Ins. Co. v. Tryg Intl. Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996). Michigan's Long–Arm Statute provides for general personal jurisdiction in M.C.L. § 600.711 and limited or specific jurisdiction in M.C.L. § 600.715.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Michigan Supreme Court has construed Michigan's Long–Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process. *The Sports Authority Michigan, Inc. v. Justballs, Inc.,* 97 F.Supp.2d 806, 810 (E.D.Mich.2000) (quoting *Sifers v. Horen,* 385 Mich. 195, 198–99, 188 N.W.2d 623 (1971)). The determination of whether jurisdiction attaches under M .C.L. § 600.711 and § 600.715 requires a two-step analysis:

> ***4** First, whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. If not, then whether the rule of statutory construction supports such an exercise of jurisdiction over defendants.

*Id.* (quoting *Walter v. M. Walter & Co., Inc.,* 179 Mich.App. 409, 412, 446 N.W.2d 507 (1989)). Under Michigan's Long–Arm Statute, the state's jurisdiction extends to the limits imposed by the Due Process Clause, and thus, the two questions become one. *Id.* (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992); *Green v. Wilson,* 455 Mich. 342, 349–50, 565 N.W.2d 813 (1997)).

In order to comply with the Due Process Clause, the plaintiff must establish that significant minimum contacts exist sufficient to satisfy "traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Sixth Circuit has set forth three criteria that must be met before a court will exercise personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 150 (6th Cir.1997)). The showing that the defendant purposefully availed himself of the privilege of transacting business or causing a consequence in the forum state is essential. *Id.* at 811.

**A. *Due Process***

***a. Purposeful Availment***

The United States Supreme Court has expressed that the " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 474 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Justler Magazine,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The key to this requirement is whether the defendant reached out beyond his state to create a continuous and systematic relationship with citizens of another state. *Id.* (citing *Burger King,* 477 U.S. at 473). "Purposeful availment" is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being 'haled before' a Michigan court." *Id.* (quoting *Jeffrey v. Rapid Am. Corp.,* 448 Mich., 178, 187, 529 N.W.2d 644 (1995)). The Plaintiff alleges that Defendants have purposefully availed themselves in Michigan by virtue of: (1) its interactive website; and (2) the "effects doctrine."

**(i) Interactive Website Analysis**

***5** In the internet context, the interactivity of the website determines whether personal jurisdiction is appropriate for an out of state defendant.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Cyhersell, Inc. v. Cyhersell, Inc.,* 130 F.3d 414, 418–19 (9th Cir.1997). Courts have stated that there are three categories of interactivity for website. The first category is highly interactive which is the ability to download and enter into contracts. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1264 (6th Cir.1996). This category is sufficient for a Court to exercise personal jurisdiction. *Id.* The second category is "a middle ground in which defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." *Citigroup Inc., v. City Holding Co.,* 97 F.Supp.2d 549, 564–65 (S.D.N.Y.2000). The last category is where the defendant makes information available on an otherwise passive website. *Id.* A "passive website is insufficient to establish purposeful availment for the purpose of due process." *McGill v. Gourmet Technologies, Inc.,* 300 F.Supp.2d 501 (E.D.Mich.2004).

The Court finds that the Defendants' website is a passive one, and therefore not to the degree where the exercise of personal jurisdiction is proper. Defendants' website displays information about its products, but the products cannot be purchased through the website. (Declaration of Ehrlich, ¶ 19, attached to Defendant's Motion to Dismiss). Defendants' website does have a feature which allows internet users to inquire about the products by filing out an online form. (*Id.* at ¶ 20). The online form asks for the user's name and postal address but not credit card information. (*Id.* at ¶ 20). The Defendants have never received an inquiry through its website by an individual identified as a resident of Michigan. (*Id.* at ¶ 21).

Defendants' website is similar to the "GT site" in *McGill v. Gourmet Technologies, Inc.* In *McGill,* plaintiff brought a Patent Infringement suit against GT involving a frozen confection apparatus, GT sells equipment and supplies to the food service industry and maintained two websites, important for our purposes is the "GT site." The Court found that the "GT site" was a classic passive site and did not trigger jurisdiction in Michigan. The "GT site" provided information about Defendant GT's products as well as a means to contact Defendant GT, but it did not allow a site visitor to purchase products or otherwise directly transact business over the site. The Court finds that Defendants website is similar to the "GT site" and does not trigger personal jurisdiction in Michigan.

Plaintiff alleges that visitors to the website "can obtain information, view merchandise and collect model numbers, communicate with defendants and provide defendants with contact information, which presumably, defendants follow up with email or otherwise." (Plaintiff's brief pg. 11–12). These allegations still do not rise to the level of purposeful availment. Defendants have never been contacted by a Michigan resident and the website does not allow visitors to enter into contracts or otherwise purchase goods through the website. Further Defendants have never consummated a transaction in Michigan.

***6** Plaintiff cites support for his allegations from *Audi AG & Volkswagen of America, Inc. v. Izumi,* 204 F.Supp.2d 1014, 1021 (E.D.Mich.2002), but it is distinguishable. In *Audi,* the website allowed customers to purchase items, and at a minimum, it attempted to solicit business from Michigan residents. *Id.* at 1021. Further, the *Audi* Court found that Defendant offered to sell the rights to the website to Plaintiffs. *Id.* In this matter, visitors to Defendants' website cannot purchase goods, and there is no allegation that Defendants attempted to sell the rights to the website to Plaintiffs.

Plaintiff's also cite *Publications International, Ltd. v. Burkel Triolo, Inc.* 121 F.Supp.2d 1178 (N.D.Ill.2000) to support its claim that the exercise of personal jurisdiction is proper because of Defendants interactive website. In *Publications,* the Defendants had a website in which visitors could request an online catalog which can be directly submitted to a visitor. *Id.* at 1182. Additionally, Defendant had a sales representative in Illinois and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

sought out and contracted with Illinois customers. *Id.* at 1183. Thus, given the totality of defendant's contact with Illinois, the court found that its exercise of personal jurisdiction would be proper. *Id. Publications* can be distinguished from Defendants actions here because Defendants only contact with Michigan is the operation of its website. It has no sales representatives in Michigan and has never consummated a sale in Michigan.

For the reason explained above, the Court finds that Defendants website is "passive" and does not subject Defendants to the Court's personal jurisdiction.

**(ii) "Effects Doctrine" Analysis**

The Court finds that the "effects doctrine" does not apply in this case. For the "effects doctrine" to apply in this case, the Plaintiff must demonstrate that the brunt of the injury was felt in Michigan, the use of the Plaintiff's trademarks was intentional or deliberate and that the Defendant's acts were expressly aimed at the State of Michigan. *Ford Motor Co. v. Great Domains, Inc.,* 141 F .Supp.2d 763, 774 (E.D.Mich.2001). Here, Plaintiff cannot show that the use of its trademarks was intentional or deliberate.

If there is an injury to be felt by Plaintiff it would be in Michigan. The Plaintiff has its principal place of business in Michigan. (Plaintiff' complaint ¶ 1). The Plaintiff alleges that Defendants have used and continued to use Plaintiff's trademarks with the knowledge that the mark is owned by Plaintiff. Plaintiff has not alleged that Defendants deliberately registered its domain name. It is Important to note that "Seeyewear" had a prexisting legitimate use for the domain name based upon valid Australian trademark registrations. (Certificate of Registration attached to Defendant's Motion).

The Plaintiff's authority to support its theory under the "effects doctrine" is distinguishable from the facts here. In the cases where the "effects doctrine" allows for personal jurisdiction, the defendant specifically targeted the plaintiff with an intentional tort. In the internet context, "simply registering someone else's trademark as a domain name and posting a website on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another." *Panavision Int. L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998) (quoting *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir.1997). For the "effects doctrine" to apply, there needs to be "something more" to demonstrate that the defendant directed his activity toward the forum state. *Id.* Under these facts, accepting Plaintiff's allegations as true, the Court finds at most, Defendants registered Plaintiff's trademark as a domain name and posted it on the internet. There is no evidence that Defendants directed any activity towards Plaintiff in Michigan. Furthermore, the "effects doctrine" should be applied with caution because a plaintiff always feels the effect of a legal injury in its home forum. *Ford Motor Co. v. Great Domains, Inc.,* 141 F.Supp.2d 763, 777 (E.D.2001), (quoting *Imo Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 261 (3d Cir.1998)).

***7** In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), where the "effects doctrine" originated, the Court held that the editor of the National Enquirer was subject to jurisdiction in California. In *Calder,* the Enquirer libeled actress Shirley Jones, and the Enquirer knew that she lived and worked in California. *Id.* at 788–89. Because the Enquirer's conduct was aimed at a specific individual in California, it could anticipate being haled into court there. *Id.* In our matter, there are no factual allegations of an intentional tort aimed at the Plaintiff in Michigan.

The Plaintiff also cites the *Panavision* case to support its claim. In *Panavision,* the defendant intentionally registered the plaintiff's domain name to "extort fees" from the plaintiff. *Id* . at 1321. Plaintiff's have not alleged that Defendants intentionally registered its domain name to extort fees, so *Panavision* is not applicable here.

In *McMaster–Carr v. Supply Depot, Inc.,* 1999 WL 417352 (N.D.Illinois, 1999) (unpublished), the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

plaintiff sued defendant for tradename infringement. Defendant moved to dismiss the case for lack of personal jurisdiction. The Court found that "although this case presents a close question", defendant's actions satisfy the effects test. *Id.* at 12. The important fact was that the defendant "intentionally registered [plaintiff's] mark as its domain name, an act that it knew would harm Illinois-based [plaintiff]" and accordingly it could anticipate being haled into court there. *Id.* The plaintiff argued that defendant's actions were "obviously targeted" at it, whose principal place of business is in Illinois. *Id.* at 7. Here, Plaintiff makes no allegations that Defendants deliberately targeted it by registering its domain name and trademarks.

In *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership,* 34 F.3d 410 (7th Cir.1994), the Indianapolis Colts (previously of Baltimore) sued a Canadian football league team operating out of Baltimore which called itself the Baltimore Colts. *Id.* at 411. The Indianapolis Colts brought suit in Indiana, and defendants moved to dismiss for lack of personal jurisdiction. *Id.* The Court found jurisdiction to be proper because defendant deliberately copied the Plaintiff's trademarked team name. The Court stated "we do not doubt that the resonance of the name, and not merely the clamor of the Baltimoreans, motivated the Baltimore's team's choice of 'Colts' out of all the appealing animals in the ark." *Id.* at 412. The defendants knew that the plaintiff would be injured in Indiana and could anticipate being haled into Court there. Again, Plaintiff's have not alleged that Defendants deliberately copied its trademarks.

In *Ford Motor Co. v. Great Domains, Inc.,* 141 F.Supp.2d 763, 777 (E.D.2001), the Court took notice of the fact that the trademarks at issue, "Volvo," Jaguar," "Stang," "Ford," "Lincoln," and "Mercury", were well known throughout the United States and England where the defendants reside. *Id.* at 774. Thus, the Court found it "highly unlikely" that the incorporation of Ford's trademarks could have resulted in negligence. *Id.* In this matter, the Plaintiff alleges that its prior rights in the "SEE EYEWEAR" Marks were "well known." However, even in a light most favorable to Plaintiff, the Court takes notice "SEE EYEWEAR" Marks do not rise to the worldwide notoriety of Ford's trademarks. More importantly, Defendants declaration provides an independent non-related reason for the creating of the trademark "SEEYEWEAR." Defendants state that the trademark at issue here was created as a combination of Steven Ehrlich's initials "S.E." and the category of products he sells "Eyewear." (Declaration of Ehrlich, ¶ 13, attached to Defendant's motion).

***8** The *Ford* Court stated five factors to assess the level of individual targeting needed under the "effects doctrine" and they are as follows:

(1) whether the trademark owner has been directly solicited to purchase the domain name, *see Panavision Int'l. L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.);

(2) whether the domain name registrant has registered domain names incorporating other protected marks, *see id.;*

(3) whether the domain has been offered for sale by the current registrant and, if so, the price sought;

(4) whether the registrant has a preexisting, legitimate use for the domain name; and

(5) any other factors which demonstrate that the act of incorporating the protected mark into a domain name was "expressly aimed" at the forum where trademark owner resides." *Id.* at 777.

Here, every *Ford* factor above favors Defendants, Plaintiff has not alleged any facts otherwise. Plaintiff has not alleged Defendants solicited it to purchase the domain name, or that Defendants have registered domain names incorporating other protected marks. Further, Plaintiff does not allege that Defendants have offered the current domain name for sale, and Defendants do have a preexisting le-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

gitimate use for its domain name. Lastly, Plaintiff's have not alleged any other factors which demonstrate that Defendants activities were “expressly aimed” at Michigan.

Although Plaintiff alleges Defendants intended its mark to be confused with Plaintiff's, Plaintiff alleges no independent facts to support the allegation. At this stage, where the Court has not held an evidentiary hearing, “in the face of a properly supported motion for dismissal, the [plaintiffs] may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.” *Theunissen v. Mathews,* 935 F.2d 1454, 1459 (6th Cir.2002). Important to note Plaintiff has not alleged contrary facts to Defendants assertion that the trademark at issue here was created as a combination of Steven Ehrlich's mitials “S.E” and the category of products he sells “Eyewear.” (Declaration. of Ehrlich, ¶ 13, attached to Defendant's motion).

Plaintiff does allege that Defendants have knowingly used its trademarks for the purpose of diverting customers to its website. (Plaintiff's complaint § 49). The knowledge that Plaintiff alleges is essentially the knowledge that was provided in its cease and desist letter of October 8, 2003. However, the fact that Defendants continued to operate its website after receiving a letter indicating its trademarks may be in dispute by a United States company is different than the “knowledge” required under the “intentional acts” and “expressly aimed” requirements under the “effects doctrine.” The “effects doctrine” requires deliberate acts expressly aimed at the forum where plaintiff resides. Plaintiff provides no allegations that state that the time Defendants registered its domain name and posted its website, Defendants deliberately aimed to infringe upon its trademark. Plaintiff do not allege any facts that indicate Defendants knew of its trademarks prior to October 8, 2003. The fact that Defendants continued to use its domain name after the cease and desist letter of October 8, 2003 is irrelevant to this analysis because they had a preexisting legitimate use of its trademark and domain name.

***9** For the reasons stated above, the Court finds that the “effects doctrine” does not apply in this case because the Plaintiff cannot demonstrate that the use of its trademarks was intentional or deliberate and that Defendants' acts were expressly aimed at the State of Michigan. *Ford Motor Co. v. Great Domains, Inc.,* 141 F .Supp.2d 763, 774 (E.D.Mich.2001).

In conclusion, the Court holds that Plaintiff's allegations fall short of a prima facie showing as to the “purposeful availment” requirement. Viewing all the facts in a light most favorable to and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has not established a prima facie showing that Defendant engaged in a systematic relationship with a Michigan resident, and caused significant and substantial events to occur in the state of Michigan. Haling Defendants into this Court, based upon the actions described above, would be based on “random,” “fortuitous,” or “attenuated” contacts. Accordingly, Defendants have not “purposefully availed” themselves of the benefits of transacting business or causing events to occur in Michigan.

***b. Forum–Related Activities***

The second element evaluated in the personal jurisdiction inquiry is whether the current controversy is related to Defendant's forum-related activities. The Plaintiff claims that this prong is satisfied because its cause of action arises out of Defendants' contacts with Michigan. (Plaintiff's brief pg. 12). However, the Court still finds that personal jurisdiction here would violate due process because Defendants forum-related activities are insufficient for “purposeful availment” under the first element.

***c. Reasonableness***

Where the first two elements of the test for personal jurisdiction are met, there is an inference that the exercise of jurisdiction is reasonable. *Id.* (citing *Compuserve, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir.1996)). In this case, however, the exercise of jurisdiction is unreasonable. The factors to con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

sider in assessing reasonableness are:

> ... the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. [A court] must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution, of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

In this case, the exercise of jurisdiction over Defendant is not reasonable because of Defendants' limited contacts in Michigan.. Further, the injury alleged by Plaintiff arose out of Defendants' preexisting legitimate use of its trademark as the domain name for its Australian website. (Certificate of Registration attached to Defendants Motion to Dismiss). The benefit of the State of Michigan here to protect its citizens from alleged trademark infringement is outweighed by the burden on Defendants to travel thousands of miles to defend a lawsuit brought against its valid Australian trademark.

***10** Accordingly, based upon the entirety of the discussion above, the Court holds that the exercise of personal jurisdiction over Defendant in this case does not comport with the notions of Fair play and substantial justice required by the Due Process Clause of the United States Constitution.

**C. Fed.R.Civ.P. 4(k)(2)**

The Plaintiff argues that Fed.R.Civ.P. 4(k)(2) provides an alternative basis for personal jurisdiction in this case.[FN2] Rule 4(k)(2) states:

> FN2. It should be noted that the Lanham Act does not authorize nationwide service of process. 15 U.S.C. § 1121.

> If the exercise of jurisdiction is consistent with the Constitution and law of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction of the courts of general jurisdiction of any state.

Three conditions must be satisfied under Rule 4(k)(2):

(1) the plaintiff's claim must be one arising under federal law;

(2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and

(3) the Federal Courts' exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law. *Sunshine Distribution, Inc. v. Sports Authority Mick., Inc.,* 157 F.Supp.2d 779, 788 (E.D.Mich.2001).

Rule 4(k)(2) does not provide an alternative basis for jurisdiction because the Plaintiff cannot satisfy the third condition above, namely that the Court's exercise of personal jurisdiction does not offend the Constitution. As explained above, Plaintiff was unable to make a due process showing. Plaintiff also states that Defendants have demonstrated contacts with the United States through its domain address, internet website, website advertising, attendance at trade shows and by filing trademark applications at the United States Patent and Trademark Office. (Plaintiff's brief pg. 17). Haling Defendant into this Court, based upon the allegations described above, would be based on "random," "fortuitous," or "attenuated" contacts.

Defendants' domain address and internet website addressed above are insufficient to satisfy the due process clause of the Constitution under the "effects doctrine." Defendants attendance at a trade show in either 1996 or 1997 New York is not a sufficient contact with the United States particularly when it is not related to Plaintiff's cause of action. Plaintiff also alleged in its complaint that Defendants market goods at Exhibitions where attendees include individuals and companies from tin's dis-

trict, and that sell into this district. (Plaintiff's complaint ¶ 9). Defendants state that he has not attended a trade show in the United States since either 1996 or 1997. (Ehrich's declaration ¶ 26, attached to Defendant's Motion to Dismiss). Plaintiff makes no specific allegations that Defendants market its goods to the United States. Defendant, however, states that Seeyewear sells its products in Australia, New Zealand, Singapore and the Netherlands, and Imago sells its products in Australia and New Zealand. (*Id.* ¶ 23, 24). Plaintiff also provides no authority for the assertion that by filing trademark application in the United States, one could anticipate being sued there.

***11** Accordingly, the Court holds that Rule 4(k)(2) does not provide an alternative basis for personal jurisdiction for Plaintiff given the attenuated nature of Defendants' contacts with the United States.

**D. Insufficiency of Ehrlich's Declaration as to Seeyewear and Imago**

Plaintiff's claim that the Motion to Dismiss as to Imago and Seeyewear is unsupported and should be dismissed because the declaration of Steven Ehrlich addresses only his activities, and not those of Imago or Seeyewear. This request is denied. (Plaintiff's brief pg. 7). Steven Ehrlich's declaration states that he is the founder, President and owner of both companies. (Ehrlich's declaration ¶ 3–4, attached to Defendant's Motion to Dismiss). For this reason, the Court accepts his declaration on behalf of Imago and Seeyewear because in the declaration it is clear that be is speaking on behalf of his companies as well as himself.

**E. Jurisdictional Discovery**

Plaintiff requests that if the Court is considering granting Defendants' Motion, it first be given an opportunity to take jurisdictional discovery to determine what additional facts favor personal jurisdiction under Rule 4(k)(2) or the Michigan Long–Arm Statute. (Plaintiff's brief pg. 17–18 citing *Toys "R" Us, Inc. v. Step Two S.A.,* 318 F.3d 446).

A district court's decision to deny jurisdictional discovery is reviewed for abuse of discretion. *Toys "R" Us* (quoting *Brumfield v. Sanders,* 232 F.3d 376, 380 (3rd Cir.2000). In *Toys "R" Us*, the plaintiff trademark holder sued defendant, a toy retailer for trademark infringement, unfair competition and cybersquatting. *Id.* at 376. The retailer was a Spanish Corporation which did not operate any stores in the United States, but a portion of its merchandise was purchased from United States vendors. *Id.* at 449. Its president attended the New York City Toy fair once a year. *Id* The company also maintained a website which the district court held to be "passive." *Id.* The district court held that Plaintiff had not shown that the defendant had sufficient contacts to support personal jurisdiction. *Id.* The Court, however, held that the district court erred when, it denied plaintiff's request for jurisdictional discovery. *Id.* at 448. The Court held "that the District Court appears to have focused entirely on the web site, thereby preventing further inquiry into non-Internet contacts." *Id.* at 456. The Court stated that the other internet and non-internet contacts alleged by plaintiff, if explored, might provide the "something more" needed to bring defendant within its jurisdiction. *Id.*

There are no such allegations here. It is undisputed that the Defendants contacts with the United States are through its domain address, internet website, website advertising, attendance at trade shows and by filing trademark applications at the United States Patent and Trademark Office. (Plaintiff's brief pg. 17). As stated above, even accepting all of these allegations as true, that they are not sufficient to satisfy the due process clause. Thus, jurisdictional discovery in this case is not appropriate.

***CONCLUSION***

***12** For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss.

**SO ORDERED.**

E.D.Mich.,2004.
See, Inc. v. Imago Eyewear Pty Ltd.

Not Reported in F.Supp.2d, 2004 WL 5569067 (E.D.Mich.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.