# Exhibit 40



Page 1

Not Reported in F.Supp.2d, 2003 WL 21576518 (S.D.N.Y.), 2003-2 Trade Cases P 74,102
**(Cite as: 2003 WL 21576518 (S.D.N.Y.))**

United States District Court,
S.D. New York.
STATE of New York, ex rel. Eliot Spitzer, State of Maryland, ex rel. J. Joseph Curran, Jr., and State of California, ex rel. Bill Lockyer, Plaintiffs,
v.
Anthony FELDMAN, John Apfelbaum, Earl P.L. Apfelbaum, Inc., Davitt Felder, Davitt Felder, Inc., Stephen Osborne, Dana Okey, Etienne De Cherisey, Kees Quirijns, and Lewis Berg, Defendants.

No. 01 Civ.6691 SAS.
July 10, 2003.

Attorneys General of New York, Maryland, and California sued a group of postage stamp dealers who allegedly rigged bids at public auctions, asserting that the bid-rigging scheme violated federal and state antitrust laws. On a motion for summary judgment by a dealer who was also an officer of a corporation, the District Court, Scheindlin, J., held that: (1) genuine issues of material fact existed as to whether the dealer's purchase of stamps was related to the bid-rigging scheme; (2) dealer could be held liable even though his corporation was not sued; (3) limitations period on antitrust claims asserted under New York law was tolled while tolling agreement was in effect; and (4) genuine issues of material fact existed as to whether stamp dealers engaged in the fraudulent concealment of their scheme.

Motion denied.

West Headnotes

**[1] Federal Civil Procedure 170A ⚷2484**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2484 k. Antitrust and price discrimination cases. Most Cited Cases

Genuine issues of material fact as to whether corporate officer's purchase of stamps was related to a bid-rigging scheme precluded summary judgment in his favor in an antitrust suit brought by Attorneys General of New York, Maryland, and California.

**[2] Antitrust and Trade Regulation 29T ⚷968**

29T Antitrust and Trade Regulation
    29TXVII Antitrust Actions, Proceedings, and Enforcement
        29TXVII(B) Actions
            29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
                29Tk968 k. Persons liable. Most Cited Cases
   (Formerly 265k28(1.7))

Stamp dealer whose alleged illegal activity occurred while acting as a corporate officer could be held liable for antitrust violations even though the corporation was not sued. Clayton Act, § 4C, as amended, 15 U.S.C.A. § 15c.

**[3] Limitation of Actions 241 ⚷14**

241 Limitation of Actions
    241I Statutes of Limitation
        241I(A) Nature, Validity, and Construction in General
            241k14 k. Agreements as to period of limitation. Most Cited Cases

Statute of limitations on antitrust claims asserted under New York law was tolled while a tolling agreement obtained from a defendant by the New York Attorney General was in effect. McKinney's General Business Law §§ 340(5), 349; McKinney's Executive Law§ 63(12).

**[4] Federal Civil Procedure 170A ⚷2484**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2484 k. Antitrust and price discrimination cases. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21576518 (S.D.N.Y.), 2003-2 Trade Cases P 74,102
**(Cite as: 2003 WL 21576518 (S.D.N.Y.))**

Genuine issues of material fact as to whether postage stamp dealers who allegedly rigged bids at public auctions engaged in the fraudulent concealment of their scheme precluded summary judgment for a dealer on limitations grounds in an action brought by Attorneys General of New York, Maryland, and California claiming violations of federal and state antitrust laws. Clayton Act, § 4B, as amended, 15 U.S.C.A. § 15b;; West's Ann.Cal.Bus. & Prof.Code §§ 16750.1, 17208; West's Ann.Cal.Com.Code, § 11–209(c)(1); N.Y. McKinney's General Business Law §§ 340(5), 349; N.Y. McKinney's Executive Law§ 63(12).

David A. Weinstein, Assistant Attorney General, Office of the New York State Attorney General, New York, NY, for Plaintiffs.

Stephen Osborne, Storrington, West Sussex, England, for Defendant Stephen Osborne pro se.

*OPINION AND ORDER*
SCHEINDLIN, J.

**\*1** The Attorneys General of New York, Maryland, and California (the "States") bring this action against a group of postage stamp dealers who allegedly rigged bids at public auctions. The States claim that defendants' bid-rigging scheme violated federal and state antitrust laws. Stephen Osborne, one of the defendants, moves for summary judgment on the grounds that: (1) he cannot be held liable for alleged antitrust violations he committed as a corporate officer and (2) the claims are time-barred. For the reasons stated below, Osborne's motion is denied.

I. BACKGROUND

A. The "Ring"

In the 1970s, three influential postage stamp dealers, Anthony Feldman, John Apfelbaum, and Kees Quirijns, began rigging bids at public auctions by sharing confidential information prior to the auctions. Amended Complaint ("Compl.") ¶¶ 3, 40. The group referred to themselves as the "Ring." By the 1990s, the Ring included stamp dealers Dana Okey, Etienne de Cherisey, Lewis Berg, and Stephen Osborne in addition to the original members. Osborne is a resident of Vermont and the United Kingdom. He was the sole director and shareholder of Stephen Osborne Stamps and Postal History Ltd. ("SOSAPH"). *See* Defendant's Memorandum in Support of Motion to Dismiss ("Def.Mem.") at 2, 7; Deposition of Stephen Osborne, Ex. G to 4/24/03 Declaration of New York Assistant Attorney General David Weinstein ("Weinstein Decl."), at 39; 2001 Annual Return of SOSAPH, Ex. J to Weinstein Decl., at 2, 4–5.[FN1]

> FN1. Earl P.L. Apfelbaum, Inc. and Davitt Felder, Inc. are also named defendants. These corporations allegedly made payments to the other defendants related to the Ring's activities. Compl. ¶¶ 16, 19.

B. The Bid–Rigging Scheme

The Ring's scheme was based on secret auctions held among Ring members prior to the actual public bidding. Compl. ¶ 3. The members would submit their bids on specific stamp lots to Ahmed Hegazi, a New York limousine driver who was hired by members of the Ring to perform various tasks. *Id.* ¶ 4. Hegazi compiled the secret bids on a pre-printed form and determined which member submitted the highest bid on each lot. The member who submitted the highest bid on a lot during the secret auctions won the privilege of being the only Ring member who would bid on that specific lot at the public auction. *Id.* ¶ 3.

During the public auctions, competition was substantially reduced because the Ring members would not bid against one another. *Id.* As a result, the price received by the lot owners and the commissions of the auction houses decreased. *Id.* Ring members who refrained from bidding at the public auction were compensated by the "winning" Ring member through an intricate pay-off formula. The formula calculated the amount of money saved by the winning Ring member due to the non-competitive bidding and allocated a portion of these savings to the other Ring members. *Id.* ¶¶ 46–50. In 1997, the Ring ceased its illegal conduct in the United States, after Greg Stolow, a stamp dealer who did not participate in the Ring, threatened to expose the bid-rigging scheme. *Id.* ¶ 65.

C. Procedural History

**\*2** In April 2000, Stolow alerted the New York Attorney General of the Ring's past activities. *Id.* ¶

Not Reported in F.Supp.2d, 2003 WL 21576518 (S.D.N.Y.), 2003-2 Trade Cases P 74,102
**(Cite as: 2003 WL 21576518 (S.D.N.Y.))**

69. Following an investigation, the New York Attorney General informed the Attorneys General of California and Maryland of the Ring's activities. The States brought this action on July 23, 2001, seeking damages for defendants' violation of: (1) Section 1 of the Sherman Act; [FN2] (2) the Donnelly Act; [FN3] (3) Section 63(12) of the New York Executive Law; (4) Section 349 of the New York General Business Law; (5) Maryland's Antitrust Act; [FN4] (6) California's Antitrust Act; [FN5] and (7) California's Unfair Competition Act.[FN6]

> FN2. 15 U.S.C. § 1 (2003).
>
> FN3. N.Y. Gen. Bus. § 340 (McKinney 2003).
>
> FN4. Md. Com. Law §§ 11–201 et seq. (2003).
>
> FN5. Cal. Bus. & Prof.Code §§ 16720 et seq. (West 2003).
>
> FN6. Cal. Bus. & Prof.Code §§ 17200 et seq. (West 2003).

Osborne, appearing pro se, brings this motion for summary judgment on the grounds that he "acted at all times relevant to the Amended Complaint, as a corporate officer of SOSAPH Ltd, not as an individual on his own account. Therefore, [plaintiffs' case] fails as a matter of law because the Amended Complaint alleges that [Osborne] acted individually without reference to a corporation...." Def. Mem. at 7. In addition, Osborne argues that the statute of limitations has run on the States' claims against him. *See id.*

## II. LEGAL STANDARD

Summary judgment is permissible "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party." ' Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir.2002) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material when "it 'might affect the outcome of the suit under the governing law.' " *Id.* (quoting Anderson, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See* Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir.2002) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, he " 'must do more than simply show that there is some metaphysical doubt as to the material facts,' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir.2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), and he " 'may not rely on conclusory allegations or unsubstantiated speculation.' " Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir.2001) (quoting Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998)). *See also* Gayle, 313 F.3d at 682. Rather, the non-moving party must produce admissible evidence that supports his pleadings. *See* First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir.2003) (quoting Anderson, 477 U.S. at 252).

**\*3** In determining whether a genuine issue of material facts exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See* Niagara Mohawk, 315 F.3d at 175. Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Summary judgment is therefore inappropriate "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel, 310 F.3d at 286 (citing Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir.2000)).

## III. PERSONAL LIABILITY FOR ANTITRUST VIOLATIONS

A. Liability of Corporate Officers

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21576518 (S.D.N.Y.), 2003-2 Trade Cases P 74,102
**(Cite as: 2003 WL 21576518 (S.D.N.Y.))**

Section 1 of the Sherman Act provides that "*[e]very person* who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony." 15 U.S.C. § 1 (emphasis added). The term "person" is interpreted broadly and "a corporate officer is subject to prosecution under [section] 1 of the Sherman Act whenever he knowingly participates in effecting the illegal contract, combination, or conspiracy—be he one who authorizes, orders, or helps perpetrate the crime—regardless of whether he is acting in a representative capacity." United States v. Wise, 370 U.S. 405, 416, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962). A corporate officer can also be held liable in civil antitrust actions. See 15 U.S.C. § 15c.[FN7]

> FN7. *See also* First Med Representative, LLC v. Futura Med. Corp., 195 F.Supp.2d 917, 929 (E.D.Mich.2002) ("[T]here is no bar to individual civil liability for antitrust violations, even by an employee/officer of a corporation, acting on behalf of the corporation."); Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., No. 97 Civ. 5499, 2000 WL 264295, at *35 (S.D.N.Y. Mar.9, 2000) ("A corporate officer or director can be held personally liable for damages arising from an antitrust violation where he or she participated in the unlawful acts...."); Continental Orthopedic Appliances v. Health Ins. Plan of Greater N .Y., Inc., 994 F.Supp. 133, 142 (E.D.N.Y.1998) (declining to dismiss claims against individual corporate officers who participated in bid-rigging conspiracy on corporations' behalf, on ground that "[i]ndividual officers of corporations may be held liable under section 1 of the Sherman Act for ... conspiracies or combinations ... with persons other than the corporations for whom they serve as officers"); New York v. Cedar Park Concrete Corp., 665 F.Supp. 238, 247–48 (S.D.N.Y.1987) (declining to dismiss claims against individual corporate officers who participated in bid-rigging conspiracy on corporations' behalf).

New York, Maryland, and California antitrust laws are modeled after the Sherman Act and construed in light of federal precedent. *See* County of Toulumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1160 (9th Cir.2001); X.L.O. Concrete Corp. v. Rivergate Corp., 83 N.Y.2d 513, 518, 611 N.Y.S.2d 786, 634 N.E.2d 158 (1994); Natural Design, Inc., v. Rouse Co., 302 Md. 47, 485 A.2d 663, 666 (Md.1984) (quoting Md. Com. Law § 11–202(a)). Accordingly, a corporate officer can be held liable under the antitrust provisions of each of these states.[FN8]

> FN8. Indeed, Osborne concedes that "the caselaw clearly establishes that an individual who participates in an antitrust conspiracy may be held individually liable for the violation, regardless of whether the individual acted on behalf of a corporation or other entity." Defendant's Reply Memorandum to Plaintiffs' Opposition ("Reply Mem.") at B; *see also* Pl. Mem. at 4.

B. Osborne Can Be Held Personally Liable for Antitrust Violations

[1] Although the Complaint does not state that Osborne acted in his corporate capacity nor mention SOSAPH, Osborne is properly sued based on his alleged participation in the bid-rigging scheme. Osborne concedes that he purchased stamps in his capacity as managing director of SOSAPH. *See* Def. Mem. at 7. However, Osborne denies that his purchase of stamps was related to the bid-rigging scheme. Reply Mem. at B. Nevertheless, four participants in the conspiracy stated, under oath, that Osborne participated in the bid-rigging scheme. *See* 11/5/01 Affidavit of Leon Constantinides ¶ 8; Depositions of Ahmed Hegazi, Edward Younger, and Martin Wilkinson, Exs. A–C of Weinstein Decl. Consequently, there is a material issue of fact as to Osborne's role in the scheme.

[2] The States are not required to name SOSAPH as a defendant in order to hold Osborne liable for his participation in the alleged bid-rigging scheme. Osborne argues that he is shielded from liability for his participation in the bid-rigging scheme simply because SOSAPH is a defunct corporation. *See* Reply Mem. at F. However, liability for antitrust violations is joint and several. *See* Texas Indus. Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 635, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); In re Nasdaq Market–Makers Antitrust Litig., 169 F.R.D. 493, 519 (S.D.N.Y.1996). Thus, a plaintiff "[is] not required to sue all of the alleged conspirators inasmuch as antitrust cocon-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21576518 (S.D.N.Y.), 2003-2 Trade Cases P 74,102
**(Cite as: 2003 WL 21576518 (S.D.N.Y.))**

spirators are jointly and severally liable for all damages caused by the conspiracy." *Williams Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., 668 F.2d 1014, 1053 (9th Cir.1982)*. *Cf. In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig., No. MDL 150 AWT, 1992 WL 220753, at \*5 (C.D.Cal. July 16, 1992)* (noting that "a plaintiff need not name all members of a conspiracy in order to proceed against any conspirator," except where there is a risk of duplicative recovery). As a result, a defendant whose alleged illegal activity occurred while acting as a corporate officer can be held liable for antitrust violations even though the corporation is not sued.

IV. STATUTE OF LIMITATIONS

A. Applicable Statutes of Limitations

**\*4** Plaintiffs' federal and state law antitrust claims each have a four-year statute of limitations. *See* 15 U.S.C. § 15b; Cal. Bus. & Prof.Code § 16750.1; Md. Com. Law § 11–209(c)(1); N.Y. Gen. Bus. Law § 340(5). Antitrust actions accrue when a defendant commits an act that injures the plaintiff in violation of the antitrust statutes. *See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)*. The statute of limitations for antitrust actions may be tolled under the doctrine of fraudulent concealment. *See New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir.1988)*. A "plaintiff may prove fraudulent concealment sufficient to toll the running of the statute of limitations if he establishes (1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." *Id; see also Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 122 (4th Cir.1995)* (applying equivalent fraudulent concealment test in antitrust action); *Conmar Corp. v. Mitsui & Co., 858 F.2d 499, 505 (9th Cir.1988)* (same).

The States' claim under section 63(12) of the New York Executive Law has a six-year statute of limitations [FN9] and the claim under section 349 of the New York General Business Law has a three-year statute of limitations. [FN10] The California unfair competition claim has a four-year statute of limitations. *See* Cal. Bus. & Prof.Code § 17208. Similar to the antitrust claims, each of these state law claims may be tolled under the fraudulent concealment doctrine. *See Meridien Intern. Bank Ltd. v. Government of the Republic of Liberia, 23 F.Supp.2d 439, 446 n. 4 (S.D.N.Y.1998); Stutz Motor Car of America, Inc. v. Reebok Intern., Ltd., 909 F.Supp. 1353, 1364 (C.D.Cal.1995); Simcuski v. Saeli, 44 N.Y.2d 442, 448–49, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978)*.

> FN9. *See State v. Cortelle Corp., 38 N.Y.2d 83, 89, 378 N.Y.S.2d 654, 341 N.E.2d 223 (1975); State v. Danny's Franchise Sys., Inc., 131 A.D.2d 746, 517 N.Y.S.2d 157, 158 (2d Dep't 1987)*.

> FN10. *See Gaidon v. Guardian Life Ins. Co. of America, 96 N.Y.2d 201, 208–09, 727 N.Y.S.2d 30, 750 N.E.2d 1078 (2001)*.

B. Osborne Has Not Shown That the States' Claims Are Time–Barred

[3] Osborne argues that he last purchased stamps at public auctions in his corporate capacity in 1997, which was over four years before the States filed this action on July 23, 2001. *See* Reply Mem. at I–J. Indeed, the States only submit evidence of the bid-rigging scheme operating up until June 27, 1997. *See* Bidding Sheets, Ex. A. to 5/14/03 Supplemental Declaration of David Weinstein ("Supp. Weinstein Decl.").[FN11] However, the New York Attorney General ensured that the statute of limitations would not run on New York's antitrust claims by obtaining Osborne's consent to a Tolling Agreement (the "Agreement") on June 10, 2001.[FN12] *See* Tolling Agreement, Ex. C to Supp. Weinstein Decl. Three days after the Agreement expired, the States filed this action. Because the time period during which the Agreement was in effect does not count for limitations purposes, this suit was timely filed within the four-year statute applicable to New York's Sherman and Donnelly Act claims.[FN13]

> FN11. The States contend that other evidence of bid-rigging beyond June 27, 1997 may exist. *See* States' Sur–Reply Memorandum in Opposition to Motion for Summary Judgment at 2.

> FN12. Osborne concedes that he signed the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21576518 (S.D.N.Y.), 2003-2 Trade Cases P 74,102
**(Cite as: 2003 WL 21576518 (S.D.N.Y.))**

Agreement, but argues that the vast majority of the alleged scheme occurred more than four years before the Agreement and therefore "99%" of the claims are time-barred. Reply Mem. at D–E. However, New York's causes of action that accrued before June 1997 may be timely under the fraudulent concealment doctrine discussed *infra*.

FN13. Although the Agreement did not toll the statute of limitations for Maryland and California's claims, these claims may be timely under the fraudulent concealment doctrine discussed *infra*.

**\*5** [4] More importantly, this statute of limitations issue cannot be decided until a jury determines whether defendants engaged in the fraudulent concealment of their scheme. *See Hendrickson Bros., 840 F.2d at 1085; Robertson v. Seidman & Seidman, 609 F.2d 583, 593 (2d Cir.1979)* (reversing district court's summary judgment that sustained a statute of limitations defense because issue of fraudulent concealment required jury fact finding). If a jury finds that the States have established the three elements of fraudulent concealment, the statute of limitations will be tolled from the beginning of the bid-rigging scheme until April 2000, when the New York Attorney General became aware of the Ring's activities.

The States have submitted sufficient evidence to establish a material issue of fact as to whether the fraudulent concealment test is satisfied.FN14 *First,* there is evidence that the Ring purposely concealed the scheme. According to the sworn testimony of Hegazi, he concealed his bidding sheet from the auctioneer's view out of concern that the conspiracy's role in restricting competition among his principals might be discovered.FN15 Deposition of Ahmed Hegazi, Ex. B. to Supp. Weinstein Decl., at 79–85. Feldman also instructed Hegazi to limit his record-keeping and discard the conspiracy's records. *See id.* at 81–82, 87.

FN14. Osborne had no opportunity to dispute the States' fraudulent concealment theory because the argument was first raised in the States' Sur–Reply and the Court prohibited additional submissions. However, by asserting that the claims are time-barred he tacitly argues that the States knew or should have known of his conduct within the limitations period.

FN15. In the Second Circuit, a bid-rigging scheme is "inherently self-concealing". *Hendrickson Bros., 840 F.2d at 1083; Philip Morris, Inc. v. Heinrich,* No. 95 Civ. 0328, 1997 WL 781907, at \*9 (S.D.N.Y. Dec. 18, 1997) (noting that *Hendrickson Bros.* applies to federal and state law antitrust claims). The scheme is not inherently self-concealing in the Ninth Circuit. *See Conmar Corp., 858 F.2d at 505*.

*Second,* New York claims that it did not learn of the scheme until April 2000, and the other plaintiffs did not learn of it until 2001. The States then apparently brought this action well within four years from the date they learned of the alleged violations. *Finally,* there is a possible dispute as to whether the States could have discovered the conspiracy by reasonable diligence. These are issues for the jury to decide and the Complaint cannot be deemed time-barred at this stage of the proceedings. *See Hendrickson Bros., 840 F.2d at 1085* (holding that fraudulent concealment tolled the statute of limitations after the jury found that the State's "failure to commence the action within four years of the [violation] was 'through no fault of its own,' and that it had 'exercised due diligence under all circumstances." ') (quoting jury instructions).

V. CONCLUSION

For the foregoing reasons, Osborne's Motion for Summary Judgment is denied. A conference is scheduled for July 23, 2003 at 4:30 p.m. The Clerk is directed to close this motion.

SO ORDERED:

S.D.N.Y.,2003.
New York ex rel. Spitzer v. Feldman
Not Reported in F.Supp.2d, 2003 WL 21576518 (S.D.N.Y.), 2003-2 Trade Cases P 74,102

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.