# Exhibit 41



Page 1

Not Reported in F.Supp.2d, 2010 WL 5094289 (N.D.Cal.), 2011-1 Trade Cases P 77,336
**(Cite as: 2010 WL 5094289 (N.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
In re STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION.

No. 07–md–01819 CW.
Dec. 8, 2010.

ORDER ON DEFENDANTS SAMSUNG AND CYPRESS'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT IN INDIRECT PURCHASER ACTIONS

CLAUDIA WILKEN, District Judge.

***1** Defendants Samsung Electronics Company, Ltd. (SEC) and Samsung Semiconductor, Inc. (SSI), collectively referred to as Samsung in this order, move for summary judgment or, in the alternative, partial summary judgment on the claims of the Indirect Purchaser (IP) Plaintiffs.[FN1] Defendant Cypress Semiconductor Corporation (Cypress) joins in portions of Samsung's motion. Where the Court addresses Samsung and Cypress' joint arguments, the Court refers to both as "Movants."

FN1. Samsung Electronics America, Inc. (SEA) originally joined SEC and SSI in this motion. However, SEA is no longer a movant after the Court granted summary judgment on all claims against it, pursuant to a stipulation by the parties. Docket No. 1131.

Some of the issues raised in this motion are also presented by Samsung and Cypress's joint motions to exclude Plaintiffs' expert evidence and to decertify the DP and IP classes. The Court's order denying those motions resolves those issues in the present motion.

The Court heard oral argument on this motion on October 14, 2010. Having reviewed all of the parties' submissions and considered their oral arguments, the Court grants in part and denies in part the motion for summary judgment.

BACKGROUND

In this antitrust multi-district litigation, Direct and Indirect Purchasers allege that Defendant manufacturers engaged in a price-fixing conspiracy related to a product called Static Random Access Memory (SRAM). The facts of this case have been described in greater detail in the Court's prior orders.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir.1987). The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

DISCUSSION

I. Purchases Outside of Damages Subperiods

Samsung [FN2] argues that summary judgment should be granted with respect to the individual claims of twenty-four named IP Plaintiffs in seventeen jurisdictions, because they did not purchase SRAM, PSRAM or a product containing SRAM or PSRAM during the damages subperiods in which IP Plaintiffs' experts found overcharges.[FN3] Samsung asserts that these named IP Plaintiffs suffered no injury, cannot prove damages, and thus lack standing.

FN2. Cypress does not join in this part of Samsung's motion.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN3. The seventeen jurisdictions and their named Plaintiffs are Arkansas (Robert Harmon); District of Columbia (Dona Culver); Florida (Ronnie Barnes, Ryan Edwards and John Pharr d/b/a JP Micro); Iowa (Herbert Harmison and David Sly); Kansas (nXio, LLC); Maine (Penobscot Eye Care); Massachusetts (James Allen); Michigan (Mathew Frank); Minnesota (Reclaim Center and Fairmont Orthopedics & Sports Medicine, P.A.); New Mexico (Daniel Yohalem); New York (Rodrigo Gatti and CHP Media, Inc.); North Carolina (Curtis Hogue, Jr.); North Dakota (Ward Cater); Rhode Island (Kevin Kicia); South Dakota (Mitch Mudlin); Utah (Christopher K. Giauque); and Wisconsin (Mark and Shannon Schneider and Christopher J. Stawski).

The Court disagrees. Expert evidence from Dr. Harris and Dr. Dwyer, as well as the presumption of class-wide impact resulting from price-fixing activities, sufficiently establish that the named IP Plaintiffs suffered injury, and thus have standing in this suit. *See* Order Denying Defendants' Joint Motion to Decertify Plaintiff Classes and to Exclude Expert Opinions of Dr. Levy and Dr. Dwyer, December 7, 2010.

***2** IP Plaintiffs have produced additional evidence of injury to survive Samsung's motion for summary judgment as to the twenty-four named Plaintiffs through Dr. Dwyer's analysis. Using regression models, Dr. Dwyer determined overcharges and pass-through rates for both fast and slow SRAM, and PSRAM, during damages subperiods within the class period. Dr. Dwyer's calculations of pass-through rates are specific to class jurisdiction, damages subperiod, and the category of product containing SRAM or PSRAM, such as desktop computers, servers, PDAs, and so forth. Dr. Harris, IP Plaintiffs' other expert, determined IP Plaintiffs' alleged damages based on Dr. Dwyer's overcharge and pass-through analysis. According to Dr. Harris, IP Plaintiffs' class damages during the damages subperiods are $276.4 million. Named IP Plaintiffs who purchased allegedly price-fixed products outside of the damages subperiods may have suffered only nominal damages, as opposed to IP Plaintiffs who purchased within the damages subperiods. However, IP Plaintiffs' expert evidence as to pass-through rates and overcharges does provide some proof of injury as to the class, including those who purchased outside of the damages subperiods.

Accordingly, the Court denies summary judgment for Samsung with respect to the individual claims of the twenty-four named IP Plaintiffs in seventeen jurisdictions.

II. Personal Use Requirements

Movants [FN4] argue that named IP Plaintiffs from Hawaii, Maine and Rhode Island may not assert claims under those states' unfair competition statutes because they do not meet statutory requirements to bring such claims.

FN4. Cypress joins in this part of Samsung's motion.

A. Hawaii's Unfair Competition Law

Unite Here Local 5 is one of the representatives for the class prosecuting claims under Hawaii law.

Under Hawaii's unfair competition law, no "person other than a consumer ... may bring an action based upon unfair or deceptive acts or practices." Haw.Rev.Stat. § 480–2(d). A consumer is defined as "a natural person" who, among other things, purchases goods "primarily for personal, family, or household purposes." *Id.* § 480–1. However, any "person may bring an action based on unfair methods of competition declared unlawful by" the state's unfair competition law. *Id.* § 480–2(e).

Movants argue that Unite Here Local 5, a labor organization, lacks standing to bring claims under the Hawaii's unfair competition law because it does not meet the definition of a consumer. However, by its terms, the restriction applies only to claims involving deceptive acts or practices, not unfair competition; no such restriction applies to claims for unfair competition. *See Star Markets, Ltd. v. Texaco, Inc.*, 945 F.Supp. 1344, 1346 (D.Haw.1996); *Paulson, Inc. v. Bromar, Inc.*, 808 F.Supp. 736, 743 (D.Haw.1992) ("Although the statute was amended to bar suit by a business for deceptive practices in 1987, the unfair competition claim was not affected.").

Accordingly, summary judgment in favor of Movants is not warranted on this ground.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

B. Maine

***3** Penobscot Eye Care is the representative for the IP class prosecuting claims under Maine law.

To recover under Maine's Unfair Trade Practices Act, a plaintiff's purchase must have involved "goods, services or property, real or personal, primarily for personal, family or household purposes." Me.Rev.Stat. tit. 5, § 213(1); *see also Sanford v. Nat'l Ass'n for the Self–Employed, Inc.*, 640 F.Supp.2d 82, 90 (D.Me.2009) (dismissing claim because membership in professional association did not primarily serve "personal, family, or household purposes").

Movants argue that Penobscot's claims fail because there is no evidence that the server it purchased in 2005 was primarily for personal, family or household use. IP Plaintiffs do not refute this argument with evidence, but instead argue that Movants fail to carry a burden to show that the server was used only or primarily for business purposes. This argument is unavailing; IP Plaintiffs, not Movants, carry the burden to establish an entitlement to bring a claim.

Indeed, it appears that Penobscot's Rule 30(b)(6) witness testified that the server was used for scheduling appointments, inventory and electronic medical records. *See* Reply at 9 n. 17. In the absence of contrary evidence, this testimony suggests that the server was not used primarily for personal, family or household purposes.

Accordingly, Penobscot lacks standing to bring claims under Maine Unfair Trade Practices Act. Penobscot's inability to bring this claim, however, does not warrant summary judgment against the class. Instead, Penobscot appears to be an inadequate class representative, which warrants decertification of the Maine class. IP Plaintiffs may move for leave to amend to name a new Maine class representative.

C. Rhode Island

Kevin Kicia is the representative of the IP class prosecuting claims under Rhode Island law.

To recover under the Rhode Island Unfair Trade Practices and Consumer Protection Act, a plaintiff's purchase must have involved "goods or services primarily for personal, family, or household purposes." R.I. Gen. Laws § 6–13.1–5.2(a).

Movants argue that Kicia may not bring claims under the Rhode Island statute because there is no evidence that the BlackBerry he purchased was primarily for personal, family or household use. Movants note that Kicia purchased the BlackBerry using his business credit card and testified that he uses it for business purposes. IP Plaintiffs respond by pointing to Kicia's testimony that he uses the BlackBerry "for both personal and business use." Although this may be true, there is no evidence that Kicia uses it *primarily* for personal, family or household purposes.

Accordingly, Kicia lacks standing to bring claims under the Rhode Island Unfair Trade Practices and Consumer Protection Act. His inability to bring this claim, however, does not warrant summary judgment against the class. Instead, he appears to be an inadequate class representative, which warrants decertification of the Rhode Island class. IP Plaintiffs may move to name a new Rhode Island class representative.

III. Challenges to State Claims as a Matter of Law [FN5]

FN5. Cypress joins in the portion of Samsung's motion that is addressed in this part of the Court's order.

A. Wyoming

***4** Movants argue that summary judgment is warranted on IP Plaintiffs' claim under the Wyoming Consumer Protection Act because the Court disposed of this claim with prejudice on Defendants' motion to dismiss. IP Plaintiffs did not respond to this argument. Accordingly, the Court grants summary judgment for Movants on IP Plaintiffs' Wyoming Consumer Protection Act claims.

B. *Illinois Brick* Attacks

1. Montana

Movants argue that IP Plaintiffs cannot bring claims under the Montana Unfair Trade Practices Act (MUTPA) because the law mirrors federal antitrust law, and Montana courts have applied federal case law to interpret Montana law. *See Smith v. Video Lot-*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*tery Consultants, Inc.*, 260 Mont. 54, 58, 858 P.2d 11 (1993) (giving "due weight to the federal courts' interpretation of this type of alleged antitrust violation."). Accordingly, lawsuits by indirect purchasers are barred pursuant to *Illinois Brick v. Illinois*, 431 U.S. 720, 736, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Another court in this district dismissed the claims of indirect purchaser plaintiffs under Montana law, citing *Illinois Brick* and *Smith. In re TFT–LCD (Flat Panel) Antitrust Litig., (LCD II),* 599 F.Supp.2d 1179, 1187 (N.D.Cal.2009). IP Plaintiffs argue that the legislative history of the MUTPA must be consulted to determine whether Montana law would foreclose the claims of indirect purchaser plaintiffs. However, they do not point to any legislative history or other authority that would support their argument.

Accordingly, summary judgment for Movants is warranted against IP Plaintiffs on their MUTPA claims for damages.

2. Puerto Rico

Puerto Rico's antitrust laws are similar to the analogous federal laws and are construed "as essentially embodying the jurisprudence relevant to the parallel federal law." *Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 19 F.3d 745, 754 (1st Cir.1994). "Puerto Rico courts generally follow federal antitrust law when interpreting local antitrust laws." *The Shell Co. (Puerto Rico) Ltd. v. Los Frailes Svc. Station, Inc.*, 551 F.Supp.2d 127, 135 (D.P.R.2007).

Movants assert, as above, that IP Plaintiffs' claims under Puerto Rico law are foreclosed by *Illinois Brick.* IP Plaintiffs argue that *Illinois Brick* should not be applied, but rather Puerto Rico law should be read broadly and in the context of the territory's "particular socio-economic reality," citing *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497, 508 (1994). However, IP Plaintiffs point to no authority that suggests that *Illinois Brick'* s interpretation of federal antitrust law would not be applied to Puerto Rico law. Another court in this district dismissed the claims of indirect purchaser plaintiffs under Puerto Rico law based on *Illinois Brick. In re TFT–LCD (Flat Panel) Antitrust Litig. (LCD II),* 599 F.Supp.2d at 1188–89.

Accordingly, summary judgment is warranted for Movants against IP Plaintiffs on their antitrust claims for damages under Puerto Rico law.

3. Nevada

***5** At the time the Nevada legislature passed its unfair trade practices law in 1975, it declared that the statute "shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." Nev.Rev.Stat. Ann. § 598A.050. In 1999, the Nevada legislature amended that state's unfair trade practices law to provide that any "person injured or damaged directly or indirectly in his or her business or property by reason of" a state antitrust violation may bring suit. Nev.Rev.Stat. Ann. § 598A.210(2). This amendment took effect on October 1, 1999. *See* Nev.Rev.Stat. Ann. § 218.530 (1999) (providing that laws have an October 1 effective date, unless otherwise stated). Movants characterize the 1999 amendment as an "*Illinois Brick* repealer law" that is not retroactive. Therefore, Movants argue that they cannot be held liable for damages for conduct predating the 1999 amendment.

IP Plaintiffs argue that the amendment did not constitute a change in Nevada law, but rather a clarification. Indeed, portions of the bill that amended the law stated that the legislature was "clarifying the persons who may bring a civil action for unfair trade practices." Defendants' Request for Judicial Notice, Ex. A. However, other portions of the act provide that it reflects a change in the law. In *Pooler v. R.J. Reynolds Tobacco Co.*, a Nevada state district court addressed the question, and held that the amendment was simply a clarification of the law, and indirect purchasers were permitted to sue for conduct prior to the 1999 amendment. 2001 WL 403167, at *1 (Nev.Dist.Ct.). The Court is persuaded by the analysis in *Pooler*, and therefore denies partial summary judgment for Movants that they are not liable for alleged price-fixing that occurred before October 1, 1999.

4. Hawaii

In 2002, the Hawaii legislature amended the state's unfair competition law, H.R.S. § 480–2, to provide that "[a]ny person may bring an action based on unfair methods of competition ..." Defendants' Request for Judicial Notice, Ex. E. Movants argue that, prior to this amendment, the state applied *Illinois Brick'* s prohibition to indirect purchaser lawsuits, and therefore they cannot be held liable for price-fixing that occurred before June 28, 2002.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2010 WL 5094289 (N.D.Cal.), 2011-1 Trade Cases P 77,336
**(Cite as: 2010 WL 5094289 (N.D.Cal.))**

IP Plaintiffs argue that Movants mistake the provision of law upon which they base their claim. IP Plaintiffs indicate that they are pursuing their claim under H.R.S. § 480–4. In their Fifth Amended Consolidated Complaint, IP Plaintiffs allege inflated prices and state their antitrust claim under "H.R.S. § 480–1, *et seq.*," which includes H.R.S § 480–4, the provision that expressly prohibits conspiracies to fix the prices of commodities. In 1999, the Hawaii Supreme Court distinguished H.R.S § 480–4 from H.R.S. §§ 480–2 and 480–13. *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., Inc.,* 91 Hawai'i 224, 251, 982 P.2d 853 (1999). The court held that §§ 480–2 and 480–13 did not create a private claim for relief for unfair methods of competition, but the court further stated that Hawaii law did not limit "private claims for violations of" H.R.S. § 480–4, the anti-price-fixing statute. *Id.* Thus, the purpose of the 2002 amendment was to make available a private right of action under §§ 480–2 and 480–13. Its passage did not imply that state law had imposed an *Illinois Brick* limitation on lawsuits alleging price-fixing. Accordingly, partial summary judgment for Movants on IP Plaintiffs' H.R.S. § 480–4 claims is denied.

5. Utah

***6** In 2006, the Utah legislature amended that state's antitrust laws to provide that actions "may be brought under this section regardless of whether the plaintiff dealt directly or indirectly with the defendant." Utah Code Ann. § 76–10–918. This statute took effect on May 1, 2006. *See* Utah Const. Art. VI § 25 (unless otherwise ordered, an act of the legislature takes effect "sixty days after the adjournment of the session at which it passed"). Movants argue that prior to this amendment, application of *Illinois Brick* precluded indirect purchasers from bringing antitrust claims for damages.

A statutory provision enacted prior to the amendment states that a court's construction of the Utah Antitrust Act is to "be guided by interpretations given by the federal courts to comparable federal antitrust statutes." Utah Code Ann. § 76–10–926. Thus, it appears that *Illinois Brick* was applied prior to the 2006 amendment. *See e.g., Boisjoly v. Morton Thiokol, Inc.,* 706 F.Supp. 795, 805 (D.Utah 1988). Another court in this district has reached the same conclusion. *See California v. Infineon Techs. AG,* 2008 WL 1766775, at *4 (N.D.Cal.) (stating that, in Utah, "the 2006 amendment affirmatively altered the legal landscape with respect to indirect purchaser standing").

IP Plaintiffs argue that "it is far from clear that the Utah legislature intended that *Illinois Brick'* s indirect purchaser restriction be adopted in Utah." Opp'n at 21. However, they do not point to any authority that *Illinois Brick* did not apply.

Accordingly, the Court grants partial summary judgment for Movants on IP Plaintiffs' claims under Utah law based on alleged price-fixing that occurred before May 1, 2006.

C. Claims for Unjust Enrichment

Movants argue that summary judgment is warranted on IP Plaintiffs' claims for unjust enrichment under the common law of Kansas, Michigan, New York and Pennsylvannia. Movants argue that these states require that plaintiffs suing for unjust enrichment prove that they dealt directly with the defendant.

1. Kansas

In *Haz–Mat Response, Inc. v. Certified Waste Services, Ltd.* the Kansas Supreme Court held that under certain circumstances a party could bring an unjust enrichment claim against another without privity. 259 Kan. 166, 910 P.2d 839 (1996). The court stated, "In the absence of evidence that the owner misled the subcontractor to his or her detriment, or that the owner in some way induced a change of position in the subcontractor to his or her detriment, or some evidence of fraud by the owner against the subcontractor, an action for unjust enrichment does not lie against the owner by a subcontractor." *Id.* at 177, 910 P.2d 839. Because IP Plaintiffs have not pointed to any evidence that Movants engaged with them in this manner, summary judgment in Movants' favor on IP Plaintiffs' unjust enrichment claims under Kansas law is warranted.

2. Michigan

Movants rely on *A & M Supply Co. v. Microsoft Corp.* to argue that they are entitled to summary judgment on IP Plaintiffs' unjust enrichment claims under Michigan state law. 2008 WL 540883 (Mich.Ct.App.). In that case the Michigan Court of Appeal stated that the indirect purchaser plaintiffs'

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

claim for unjust enrichment under Michigan law failed because they had no direct contact with Microsoft, and provided no direct payment or other benefit to the company. However, the ruling was issued in an unpublished per curiam opinion, in which the court at the outset affirmed dismissal of the case for failure to prosecute. Though the decision is citable, it is not binding precedent. *See* Mich. Ct. Rule 7.215(C)(1).

***7** A claim for unjust enrichment under Michigan law does not require that the plaintiff confer a direct benefit on the defendant. *Kammer Asphalt Paving Co., Inc. v. East China Township Schools,* 443 Mich. 176, 187–88, 504 N.W.2d 635 (1993). Persuaded by the district court's analysis in *In re K–Dur Antitrust Litig.,* the Court denies summary judgment for Movants on the Michigan unjust enrichment claim.2008 U.S. Dist. LEXIS 113310 at *43–46 (D.N.J.) (holding that indirect purchasers could maintain a claim for unjust enrichment under Michigan law, citing *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich.App. 187, 729 N.W.2d 898 (Mich.Ct.App.2006)); *see also In re Cardizem CD Antitrust Litig.,* 105 F.Supp.2d 618, 670–71 (E.D.Mich.2008) (rejecting argument Michigan unjust enrichment claim requires direct benefit to defendant).

3. New York

The parties cite various cases, but the decision in *Sperry v. Crompton Corp.* is binding authority from the state's highest court and is on point. The case was brought by indirect purchasers who bought tires and other products manufactured with chemicals sold by the defendants. 8 N.Y.3d 204, 831 N.Y.S.2d 760, 863 N.E.2d 1012 (N.Y.2007). The New York Court of Appeal held that the connection between the purchasers of the tires and the producers of chemicals used in the rubber-making process was simply too attenuated to support an unjust enrichment claim. *Id.* at 215–16, 831 N.Y.S.2d 760, 863 N.E.2d 1012. In light of *Sperry,* the Court grants summary judgment for Movants on IP Plaintiffs' unjust enrichment claims under New York common law.

4. Pennsylvania

Movants cite *Stutzle v. Rhone–Poulenc S.A.,* in which the court dismissed unjust enrichment claims by indirect purchasers. 2003 WL 22250424, at *1–2 (Pa.Com.Pl.2003). The court held, “[P]laintiffs did not confer a benefit upon defendants. Plaintiffs are indirect purchasers and had no direct dealing with defendants ... Perhaps defendants appreciated the value of the benefits, but any unjust enrichment claim would belong to the direct purchasers, not to indirect purchasers such as plaintiffs.” *Id.* at *1. *Powers v. Lycombing Engines,* cited by IP Plaintiffs, is unpersuasive, because the district court did not cite any authority in support of its statement that Pennsylvania permits unjust enrichment claims by indirect purchasers. 245 F.R.D. 226, 232 (E.D.Pa.2007). Accordingly, the Court grants summary judgment for Movants on IP Plaintiffs' claims for unjust enrichment under Pennsylvania common law.

D. Unjust Enrichment Claims in States Barring Indirect Purchaser Antitrust Claims

Movants argue that IP Plaintiffs are not permitted to pursue unjust enrichment claims in states that bar indirect purchaser suits under their antitrust laws; otherwise, IP Plaintiffs would be permitted to circumvent their states' antitrust statutes. *In re K–Dur Antitrust Litig.,* 2008 WL 2660780, at *5 (“where the applicable state law bars antitrust actions for damages by indirect purchasers, or simply does not recognize a private cause of action for antitrust violations, a plaintiff cannot circumvent the statutory framework by recasting an antitrust claim as one for unjust enrichment.”).

1. Massachusetts

***8** Massachusetts law expressly prohibits suits by indirect purchasers under its antitrust statute, but permits such suits under the state's consumer protection statute. *Ciardi v. F. Hoffman–La Roche, Ltd.,* 436 Mass. 53, 762 N.E.2d 303, 312 (Mass.2002) (“[W]e cannot conclude that the application of [Massachusetts' consumer protection statute], is to be guided by the provisions of the Antitrust Act, and by association *Illinois Brick Co. v. Illinois, supra,* so as to preclude indirect purchasers, like the plaintiff from bringing a cause of action under G.L. c. 93A, § 9.”)Given that the Massachusetts Supreme Court has not limited suits by indirect purchasers for price fixing under its consumer protection statute, IP Plaintiffs' claims for unjust enrichment likewise do not contravene that state's law. Summary judgment for Movants on IP Plaintiffs' claims for unjust enrichment under Massachusetts common law is denied.

2. Montana

As explained earlier in this order, indirect pur-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp.2d, 2010 WL 5094289 (N.D.Cal.), 2011-1 Trade Cases P 77,336
**(Cite as: 2010 WL 5094289 (N.D.Cal.))**

chasers may not seek relief under the Montana Unfair Trade Practices Act (MUTPA). IP Plaintiffs have not identified any other Montana law or authority providing indirect purchasers a private right of action to sue for price-fixing. Accordingly, the Court grants summary judgment for Movants on IP Plaintiffs' Montana claims for unjust enrichment. To allow such claims would permit IP Plaintiffs to circumvent limitations in Montana's antitrust law. *In re TFT–LCD (Flat Panel) Antitrust Litig. (LCD II)*, 599 F.Supp.2d at 1192.

3. Pennsylvania

The Court has already determined that an indirect purchaser may not pursue a claim for unjust enrichment under Pennsylvania common law. *See Stutzle*, 2003 WL 22250424, at *1–2. Therefore it is unnecessary for the Court to address Movants' arguments that permitting IP Plantiffs' unjust enrichment claims would circumvent Pennsylvania's antitrust statute.

4. Rhode Island

Rhode Island's antitrust statute prohibits suits by indirect purchasers. *Siena v. Microsoft Corp.*, 796 A.2d 461, 464–65 (R.I.2002). However, the state's Unfair Trade Practices and Consumer Protection Act (UTPCPA) allows suits by indirect purchasers. *See, In re TFT–LCD (Flat Panel) Antitrust Litig. (LCD I)*, 586 F.Supp.2d 1109, 1129–30 (N.D.Cal.2008). Movants have not pointed to any authority indicating indirect purchasers are barred from pursuing claims under the UTPCPA or unjust enrichment claims under Rhode Island common law. Accordingly, the Court denies Movants summary judgment on IP Plaintiffs' claims for unjust enrichment under Rhode Island law.

E. State Law Claims for Deceptive Practices

1. Arkansas

The Arkansas Deceptive Trade Practices Act (ADTPA) forbids certain enumerated "[d]eceptive and unconscionable trade practices." Ark.Code Ann. § 4–88–107(a). While the law is broadly construed, the claim requires "grossly unequal bargaining power" between the parties. *State ex. Rel. Bryant v. R & A Inv. Co.*, 336 Ark. 289, 985 S.W.2d 299, 302–303 (Ark.1999). The Court has found no Arkansas case law indicating that the ADTPA reaches price-fixing conduct of the nature presented in this lawsuit. Thus, the Court declines to extend the statute to permit indirect purchasers to sue manufacturers for a conspiracy to fix prices. *See In re TFT–LCD (Flat Panel) Antitrust Litig. (LCD I)*, 586 F.Supp.2d at 1125; *In re Graphics Processing Unites Antitrust Litig.*, 527 F.Supp.2d 1011, 1029–30 (N.D.Cal.2007). The Court grants summary judgment for Movants on IP Plaintiffs' claims based on the ADTPA.

2. Kansas

***9** IP Plaintiffs bring claims under the Kansas Consumer Protection Act (KCPA). Kan. Stat. Ann. §§ 50–623, *et seq.* The KCPA states, "No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50–627(a). The parties do not identify any controlling law clearly stating that the KCPA reaches price-fixing. The KCPA does not define unconscionability, but instead provides a non-exhaustive list of circumstances in which unconscionability may arise. *State ex rel. Kline v. Transmasters Towing*, 38 Kan.App.2d 537, 541, 168 P.3d 60 (2007). The statute appears to require misconduct above and beyond price fixing. Nor does *Equitable Life Leasing Corp. v. Abbick* persuade the Court that the KCPA applies to price-fixing. 243 Kan. 513, 517, 757 P.2d 304 (1988). Thus, the Court grants summary judgment for Movants on IP Plaintiffs' KCPA claims.

3. Maine

A claim based on pricing practices under Maine's Unfair Trade Practices Act (UTPA) requires that "the price has the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase." *Tungate v. MacLean–Stevens Studios, Inc.*, 714 A.2d 792, 797 (Maine 1998). Because IP Plaintiffs have failed to produce evidence of consumer deception or inducement, the Court grants summary judgment for Movants on IP Plaintiffs' claims under Maine's UTPA.

4. New York

New York's consumer protection statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. New York Gen. Bus. Law § 349(a). IP Plaintiffs' claim under this statute fails because price fixing by manufacturers, without more, does not have a deceptive impact on consumers, *State ex rel. Spitzer v. Daicel Chemical Industries, Ltd.*, 42

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

A.D.3d 301, 840 N.Y.S.2d 8, 12 (App.Div.2007), and IP Plaintiffs have not produced evidence that the allegedly inflated prices materially misled consumers. Thus, the Court grants summary judgment for Movants on IP Plaintiffs' claims under the New York consumer protection statute.

5. Pennsylvania

Movants seek summary judgment on IP Plaintiffs' claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL). IP Plaintiffs failed to address this issue in their opposition brief. Accordingly, the Court grants summary judgment for Movants on IP Plaintiffs' claims under Pennsylvania's UTPCPL. IV. Sufficiency of IP Plaintiffs' Evidence of Pass–Through

Samsung [FN6] argues that it is entitled to summary judgment because deficiencies in IP Plaintiffs' expert analysis of pass-through rates render it insufficient to support a jury verdict on IP Plaintiffs' antitrust claims. Samsung's arguments largely mirror the substance of its motion to exclude Dr. Dwyer's expert opinions. That motion did not challenge the expert opinions of Dr. Harris, IP Plaintiffs' other expert witness. In a separate order, the Court evaluated Dr. Dwyer's analysis of pass-through rates, and denied Samsung's motion to exclude the evidence. Order Denying Defendants' Joint Motion to Decertify Plaintiff Classes and to Exclude Expert Opinions of Dr. Levy and Dr. Dwyer, December 7, 2010.

> FN6. Cypress does not join in this part of Samsung's motion.

***10** However, in this motion, Samsung further attacks Dr. Dwyer's pass-through analysis by challenging the sufficiency of the foundation for that analysis, as provided by Dr. Harris. Dr. Harris conducted a specific analysis of the SRAM distribution chain, including downstream and upstream markets, by reviewing semiconductor industry reports and articles, original equipment manufacturer (OEM) publications and product information, speaking with contract manufacturers and OEMs, and assessing Defendants' transactional data regarding sales to OEMs and CMs. This allowed Dr. Harris to review the conditions under which well-established economic theory would predict pass-through, and determine whether those conditions existed in the SRAM market at issue in this action.

Because the Court has found Dr. Dwyer's pass-through analysis based on a reliable methodology, and because on this motion the Court finds sufficient foundation for that analysis, any weaknesses in the evidence of pass-through rates go to the weight of the evidence and may be explored at trial through cross examination or the presentation of other expert evidence. " 'As a general rule, summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case.' " *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1144 (9th Cir.1997) (citing *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1116 (9th Cir.1989)).

Samsung's reliance on *Matsushita* does not persuade the Court that IP Plaintiffs' evidence is insufficient. Apart from a single footnote, the Court in *Matsushita* did not provide a detailed description or analysis of the deficiencies in the expert evidence it discounted. 475 U.S. at 594 n. 19. Moreover, the core holding in *Matsushita* does not bear on the challenge that Samsung raises in regard to IP Plaintiffs' evidence of pass-through. *Matsushita* limits the use of inferences based on circumstantial evidence at the summary judgment stage in antitrust cases, where those inferences may deter equally plausible, procompetitive conduct.

Samsung's reliance on *Illinois Brick* on this point is also unavailing. There, the Court held that indirect purchasers would not be permitted to pursue damages claims for antitrust injuries. The Court reasoned that such lawsuits would burden the judicial system, and that limiting recovery to direct purchasers was a more efficient means of making antitrust violators pay for their illegal acts. 431 U.S. at 736–747. The Court did not rule on the methodologies required to "trace the overcharge through each step in the distribution chain," because that evidentiary dispute was not present in the case. *Id.* at 733 n. 13.

CONCLUSION

Summary judgment for Samsung is DENIED with respect to the individual claims of twenty-four named Plaintiffs in seventeen jurisdictions who did not purchase products containing SRAM during the damages subperiods: Arkansas (Robert Harmon); District of Columbia (Dona Culver); Florida (Ronnie Barnes, Ryan Edwards and John Pharr d/b/a JP Micro); Iowa (Herbert Harmison and David Sly); Kan-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

sas (nXio, LLC); Maine (Penobscot Eye Care); Massachusetts (James Allen); Michigan (Mathew Frank); Minnesota (Reclaim Center and Fairmont Orthopedics & Sports Medicine, P.A.); New Mexico (Daniel Yohalem); New York (Rodrigo Gatti and CHP Media, Inc.); North Carolina (Curtis Hogue, Jr.); North Dakota (Ward Cater); Rhode Island (Kevin Kicia); South Dakota (Mitch Mudlin); Utah (Christopher K. Giauque); and Wisconsin (Mark and Shannon Schneider and Christopher J. Stawski).

***11** Summary judgment for Movants is DENIED on Hawaii named Plaintiff Unite Here Local 5's claim under the Hawaii Unfair Competition Law.

Summary judgment is GRANTED for Movants against Maine named Plaintiff Penobscot Eye Care, on its claim under the state's Unfair Trade Practices Act. However, summary judgment is DENIED on the class' claim. Instead, the Maine class is decertified. IP Plaintiffs may move to replace Penobscot with another named Plaintiff.

Summary judgment is GRANTED for Movants against Rhode Island named Plaintiff Kevin Kicia on his claim under the state's Unfair Trade Practices Act and Consumer Protection Act. However, summary judgment is DENIED on the class' claim. Instead, the class is decertified. IP Plaintiffs may move to replace Kicia with another named Plaintiff.

Summary judgment is GRANTED for Movants against IP Plaintiffs on their claims based on the Montana Unfair Trade Practices Act and Puerto Rico's antitrust laws.

Summary judgment is GRANTED for Movants on IP Plaintiffs' claims under the Wyoming Consumer Protection Act.

Summary judgment for Movants on IP Plaintiffs' claim under Nevada's unfair trade practices law, Nev.Rev.Stat. Ann. § 598A.210(2), is DENIED.

Summary judgment for Movants is DENIED on IP Plaintiffs' claims under Hawaii's unfair competition law, H.R.S § 480–4.

Partial summary judgment is GRANTED for Movants on IP Plaintiffs' claims based on Utah's antitrust law, Utah Code Ann. § 76–10–918, to the extent they address price-fixing before May 1, 2006.

Summary judgment is GRANTED for Movants on IP Plaintiffs' unjust enrichment claims under Kansas, New York, Pennsylvania and Montana common law.

Summary judgment for Movants is DENIED on IP Plaintiffs' unjust enrichment claims based on Michigan, Massachusetts and Rhode Island law.

Summary judgment is GRANTED for Movants on IP Plaintiffs' claims under the Arkansas Deceptive Trade Practice Act; the Kansas Consumer Protection Act; the Maine Unfair Trade Practices Act; New York Gen. Bus. Law § 349(a); and the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

Summary judgment for Samsung on all claims brought by IP Plaintiffs, due to purportedly insufficient evidence of pass-through rates, is DENIED.

IT IS SO ORDERED.

N.D.Cal.,2010.
In re Static Random Access Memory (SRAM) Antitrust Litigation
Not Reported in F.Supp.2d, 2010 WL 5094289 (N.D.Cal.), 2011-1 Trade Cases P 77,336

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.