# Exhibit 47

Not Reported in N.W.2d, 2011 WL 5067251 (Mich.App.)
**(Cite as: 2011 WL 5067251 (Mich.App.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED

Court of Appeals of Michigan.
UNITED INSURANCE GROUP AGENCY, INC.,
Plaintiff–Appellant,
v.
Patrick D. PATTERSON, Defendant,
and
Amerilife Group, LLC, Defendant–Appellee.

Docket No. 299631.
Oct. 25, 2011.

Oakland Circuit Court; LC No.2008–096069–CK.

Before: WILDER, P.J., and CAVANAGH and DONOFRIO, JJ.

PER CURIAM.

**\*1** Plaintiff, United Insurance Group Agency, Inc. (UIG), appeals by leave granted an order granting summary disposition in favor of defendant, Amerilife Group, LLC (Amerilife Group), on the ground that the court lacked personal jurisdiction, MCR 2.116(C)(1). We affirm.

UIG marketed and distributed life and health insurance products. When UIG was sold to LTC Global, several of UIG's employees, including senior executives and agents, resigned or were terminated. Some of these former UIG employees then attended a meeting with Tim North, the CEO of Amerilife Group, in Florida to discuss the possibility of starting a new venture. Shortly thereafter, Amerilife United, LLC (United), a subsidiary of Amerilife Group was formed. United then began to operate in Michigan, with offices in Novi and Grand Rapids. Separate subsidiary entities were created for each office, as well. It appears from the record evidence that, for example, Amerilife Group may have: (1) been involved in setting up United's offices in Michigan and elsewhere, (2) paid United's rent for its Michigan offices on at least some occasions, (3) paid United's payroll, (4) allowed United to store electronic documents on its central server, (5) swept revenues from United into its master account on a daily basis, (6) provided administrative support to United, and (7) provided financial support to United that was not memorialized in promissory notes.

UIG eventually sued Amerilife Group asserting several claims, including tortious interference with business relations and contracts, unfair competition, and misappropriation of trade secrets, as well as confidential and proprietary information. Amerilife Group responded with a motion for summary dismissal, arguing that personal jurisdiction was lacking under Michigan's long-arm statute and to exercise such jurisdiction would violate due process. See MCR 2.116(C)(1). After additional discovery, the trial court granted Amerilife Group's motion. The court held that: (1) general personal jurisdiction did not exist because Amerilife Group did not have sufficient contacts with Michigan and (2) the requirements for the exercise of limited personal jurisdiction were not met. The court noted that: (1) Amerilife Group did not transact business in Michigan and had very little contacts, if any, with Michigan and (2) any alleged tortious acts of Amerilife Group were committed, if at all, in Florida, not Michigan. Accordingly, the claims against Amerilife Group were dismissed. UIG sought leave to appeal, which this Court granted. *United Ins. Group Agency, Inc. v. Patrick Patterson,* unpublished order of the Court of Appeals, entered September 1, 2010 (Docket No. 299631).

On appeal, UIG argues that the court could exercise both limited and general personal jurisdiction over Amerilife Group; therefore, the motion for summary disposition was improperly granted. We

disagree.

The issue whether the courts have personal jurisdiction is reviewed de novo. *Lease Acceptance Corp. v. Adams,* 272 Mich.App.209, 218; 724 NW2d 724 (2006). In deciding such a motion, all affidavits and documentary evidence submitted by the parties is viewed in a light most favorable to the plaintiff. *Id.* The plaintiff has the burden of establishing that the court has personal jurisdiction over a defendant, but it need make only a prima facie showing to defeat a motion for summary disposition. *Jeffrey v. Rapid American Corp.,* 448 Mich. 178, 184; 529 NW2d 644 (1995).

I. LIMITED PERSONAL JURISDICTION

**\*2** First, we address UIG's claim that the trial court had limited personal jurisdiction over Amerilife Group. Two inquires are made with regard to the issue whether personal jurisdiction may be exercised: (1) is jurisdiction permitted under the long-arm statute and (2) does the exercise of jurisdiction comply with the requirements of the Due Process Clause of the Fourteenth Amendment. *Electrolines, Inc. v. Prudential Assurance Co., Ltd.,* 260 Mich.App. 144, 167; 677 NW2d 874 (2003); *WH Froh, Inc. v. Domanski,* 252 Mich.App. 220, 226; 651 NW2d 470 (2002).

Michigan's long-arm statute, MCL 600.735, extends limited personal jurisdiction over a nonresident LLC for claims

> arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort. [MCL 600.735.] FN1

> FN1. The parties agree that the other relationships listed in MCL 600.735 are not relevant in this case.

Viewing the evidence in the light most favorable to UIG, Amerilife Group paid rent on behalf of its subsidiaries in Michigan, paid their payroll, and also provided those companies with administrative and financial support. FN2 There is also evidence that, although Amerilife Group's CEO, North, solicited statements from UIG's former employees stating that they were not bound by non-compete agreements, North knew at the time that these statements were untrue. If UIG's claims arose out of these facts, then the long-arm statute would be satisfied.

> FN2. Amerilife Group argues that many of these facts are irrelevant because they took place after UIG's claims accrued in November 2008. However, UIG has alleged continuing torts, including that Amerilife Group continues to use misappropriated information. Therefore, none of the facts alleged are irrelevant based on when they occurred.

In its second amended complaint, UIG charged Amerilife Group with misappropriation of trade secrets and confidential information, unfair competition, tortious interference with business relations, and tortious interference with contracts. UIG argues that Amerilife Group's administrative and financial support for the operations in Michigan constitute facts from which torts arose, because the subsidiaries could not have unfairly competed with UIG without Amerilife Group's support. Further, UIG argues that North's knowledge of the non-compete agreements proves that Amerilife Group intended to unfairly compete with UIG in Michigan.

However, any actual misappropriation of confidential information, unfair competition, or tortious interference that took place, if at all, was committed by UIG's former employees and United, not Amerilife Group. There is no evidence that Amerilife Group instigated UIG's former employees' defections from UIG. Nor is there any evidence that Amerilife Group itself abused UIG's confidential information or competed with UIG. Although

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2011 WL 5067251 (Mich.App.)
**(Cite as: 2011 WL 5067251 (Mich.App.))**

Amerilife Group provided support to its subsidiaries' operations in Michigan, financial and administrative support did not give rise to UIG's claims. Even if UIG is correct that Amerilife Group intended for United to compete unfairly with UIG in Michigan, this does not establish that Amerilife Group itself took any action with tortious consequences in Michigan.

UIG also argues that the acts of United may be attributed to Amerilife Group under theories of alter ego, attribution, or merger. "[I]n order to find a parent corporation amenable to jurisdiction through the activities of its subsidiary, the subsidiary must be the corporation's 'alter-ego.' " *Avery v. American Honda Motor Car. Co.,* 120 Mich.App. 222, 226; 327 NW2d 447 (1982), citing *Kircos v. Lola Cars Ltd.,* 97 Mich.App. 379; 296 NW2d 32 (1980). Michigan courts will not disregard the separate corporate existence of a subsidiary unless it is "a mere instrumentality" of the parent corporation, and "where an otherwise separate corporate existence has been used to subvert justice or cause a result that [is] contrary to some other clearly overriding public policy." *Seasword v. Hilti, Inc.,* 449 Mich. 542, 548; 537 NW2d 221 (1995) (internal quotation marks and citation omitted; alteration by *Seasword* Court). Facts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own. *Id.* at 548 n .10; *Herman v. Mobile Homes Corp.,* 317 Mich. 233, 239–241; 26 NW2d 757 (1947).

**\*3** In this case, there is evidence that Amerilife Group paid United's payroll and rent, provided other administrative support, and had authority to cut off United's funding. Further, promissory notes were not executed for the amounts lent by Amerilife Group to its subsidiaries and Amerilife Group held out as its own two subsidiary offices in Michigan. However, it does appear that Amerilife Group drew a clear distinction between its own preexisting business and the United project. An October 2009 review of United's progress indicated that there had been problems stemming from the fact that United's management (mainly UIG's former employees) had been slow to fully adopt Amerilife Group's preferred business model. The report suggests that Amerilife Group did not have direct control of day-to-day operations at United. In fact, although there is evidence that Amerilife Group had the power to shut down United and the other subsidiaries at any time, UIG cannot point to any evidence showing that Amerilife Group had an active role in the day-to-day decision-making at United. The citations UIG uses to support its argument that Amerilife Group actively managed its subsidiaries show only that Amerilife Group possessed and exercised the power to shut down specific offices.

In addition, Amerilife Group and United had separate offices, and UIG does not suggest that Amerilife Group derived all or even a substantial portion of its revenue from United. Moreover, it is not clear that observing the corporate form of Amerilife Group's subsidiaries will subvert justice. UIG will merely be required to file suit against Amerilife Group in another jurisdiction. We conclude that, when viewed in the light most favorable to UIG, although certain facts support UIG's alter ego theory, UIG has not made a prima facie case that the subsidiaries here were mere instrumentalities of Amerilife Group.

And exercising limited jurisdiction would be inconsistent with due process for similar reasons.

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2011 WL 5067251 (Mich.App.)
**(Cite as: 2011 WL 5067251 (Mich.App.))**

be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. [ *Int'l. Shoe Co. v. Washington,* 326 U.S. 310, 316; 66 S.Ct. 154; 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted) ].

Courts use a three-pronged test to determine whether the necessary minimum contacts exist:

"First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be so substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable." [ *Aaronson v. Lindsay & Hauer Int'l. Ltd.,* 235 Mich.App. 259, 265; 597 NW2d 227 (1999), quoting *Mozdy v. Lopez,* 197 Mich.App. 356, 359; 494 NW2d 866 (1992).]

**\*4** As discussed above, however, UIG's claims did not arise out of Amerilife Group's limited contacts in Michigan.

In summary, we reject UIG's claim that the trial court erred when it granted Amerilife Group's motion for summary disposition on the ground that limited personal jurisdiction over Amerilife Group was not established.

II. GENERAL PERSONAL JURISDICTION

Second, we address UIG's claim that the trial court had general personal jurisdiction over Amerilife Group. UIG argues that Amerilife Group had sufficient contacts with this state to support jurisdiction regardless of whether the claims arise from Amerilife Group's contacts. Under Michigan law, courts may exercise general personal jurisdiction over an LLC such as Amerilife Group if it is carrying on a "continuous and systematic part of its general business within the state." MCL 600.731. General jurisdiction allows suit in a forum state even when the claim at issue did not arise out of the defendant's contacts with the forum. *Oberlies v. Searchmont Resort, Inc.,* 246 Mich.App. 424, 427; 633 NW2d 408 (2001). In *Oberlies,* this Court held that general jurisdiction did not exist because the defendant did "not have any officer, employee, bank account, or place of business in Michigan." *Id.* at 428. The same statement can be made about Amerilife Group in the present case.

UIG argues that this case is similar to *Helzer v. F. Joseph Lamb Co.,* 171 Mich.App. 6; 429 NW2d 835 (1988) and *Lincoln v. Fairfield–Nobel Co.,* 76 Mich.App 514; 257 NW2d 148 (1977), in which this Court found general jurisdiction. However, in *Helzer* the defendant sent a courier to Michigan daily and bought and sold parts in the state. *Helzer,* 171 Mich.App. at 11. Amerilife Group has sent employees to Michigan on occasion, but not regularly, and it does not conduct its general business in Michigan. In *Lincoln,* the defendant had an in-state sales force making sales in Michigan. *Lincoln,* 76 Mich.App. at 518. The present case is only similar if United's activities are imputed to Amerilife Group. As discussed above, however, United's activities may not be imputed to Amerilife Group.

UIG points out that Amerilife Group claimed in certain materials to have two offices in Michigan. However, UIG does not argue that the offices referred to were actually part of Amerilife Group rather than a subsidiary. It is not strange that Amerilife Group would show all of the offices of its subsidiaries together with its own to allow for joint marketing. These materials do not mean that Amerilife Group was carrying on a continuous and systematic part of its general business in Michigan.

In summary, we reject UIG's claim that the trial court erred when it granted Amerilife Group's motion for summary disposition on the ground that general personal jurisdiction over Amerilife Group was not established.

Affirmed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2011 WL 5067251 (Mich.App.)
**(Cite as: 2011 WL 5067251 (Mich.App.))**

Mich.App.,2011.
United Ins. Group Agency, Inc. v. Patterson
Not Reported in N.W.2d, 2011 WL 5067251 (Mich.App.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.