# Exhibit 48

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

▷

Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio,
Eastern Division.
UNITED STATES of America, Plaintiff,
v.
Richard M. OSBORNE, Sr., et al., Defendants.

No. 1:11 CV 1029.
Dec. 15, 2011.

Amy J. Dona, Daniel R. Dertke, U.S. Department of Justice, Washington, DC, Steven J. Paffilas, Office of the U.S. Attorney, Cleveland, OH, for Plaintiff.

Richard H. Blake, Robert K. James, Bricker & Eckler, Darrell A. Clay, Leslie G. Wolfe, Ralph E. Cascarilla, Walter & Haverfield, Margaret M. Koesel, Porter, Wright, Morris & Arthur, Gregory J. Degulis, McMahon Degulis, Wade A. Mitchell, Gretchen L. Lange, Jason P. Perdion, Baker & Hostetler, William T. Doyle, Brendan R. Doyle, Cleveland, OH, Frank L. Merrill, Bricker & Eckler, Christopher R. Schraff, Porter, Wright, Morris & Arthur, Andrea M. Salimbene, McMahon Degulis, Lawrence S. Helkowski, Alana R. Shockey, Office of the Attorney General, Columbus, OH, John W. Wiles, City of Willoughby, Willoughby, OH, for Defendants.

### *REPORT & RECOMMENDATION*
WILLIAM H. BAUGHMAN, JR., United States Magistrate Judge.

### Introduction
***1** Before me by referral [FN1] is a motion [FN2] by defendant Richard Osborne, Sr., individually and as trustee of the Richard Osborne Trust (Osborne), to dismiss a civil action by the United States [FN3] (Government) and an additional complaint by the State of Ohio [FN4] (State) for failure to state a claim for relief under Federal Civil Rule

12(b)(6). The Government [FN5] and the State [FN6] have responded in opposition to the motion, and Osborne has replied to those oppositions.[FN7]

> FN1. ECF # 76.
>
> FN2. ECF # 38.
>
> FN3. ECF # 1.
>
> FN4. ECF # 2. The State was initially a defendant that filed a cross-claim, but has since been realigned as a plaintiff by a non-document order of November 28, 2011.
>
> FN5. ECF # 63.
>
> FN6. ECF # 59.
>
> FN7. ECF # 72.

For the reasons that follow, I will recommend granting the motion in part without prejudice, and denying it in part.

### Facts
#### A. Overview
As noted in a companion report and recommendation, this case involves a claim that from 2001 to 2004 "one or more" defendants discharged dredged or fill material from a commercial real estate development site in Lake County, Ohio, into waters of the United States and the State of Ohio without a prior permit from the Army Corps of Engineers, thus violating the federal Clean Water Act (CWA) [FN8] and related state statutes.[FN9]

> FN8. ECF # 1 at ¶ 1.
>
> FN9. ECF # 2 at ¶ 50.

In the Government's complaint, Osborne is alleged: (1) to be the sole trustee of a trust having an ownership interest in the site; [FN10] (2) to be a principal or president of entities having ownership in-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

terests in the site;[FN11] (3) to be responsible for planning some or all of the commercial development on the site;[FN12] and, together with the other defendants, (4) to have "controlled the land" on which the unauthorized discharge took place,[FN13] (5) "conducted, contracted, supervised or otherwise controlled" the discharge,[FN14] or (6) known about the activities giving rise to the violation.[FN15]

> FN10. ECF # 1 at ¶¶ 7, 8, 9.
>
> FN11. *Id.*
>
> FN12. *Id.*
>
> FN13. *Id.* at ¶ 43.
>
> FN14. *Id.* at ¶ 44.
>
> FN15. *Id.* at ¶¶ 39, 41.

Similar allegations are made in the State's complaint wherein the State asserts that: (1) Osborne individually caused or allowed the clearing or grubbing of over 280 acres, along with the placement of fill material in existing wetlands and other waters of the state in violation of Ohio statutes;[FN16] (2) Osborne planned the development of some or all of the site;[FN17] (3) Osborne knew or consented to the activities described above;[FN18] such that (4) as a result of these activities (a) dredged or fill material and/or wastes was placed into waters of the state without a permit, (b) thus degrading the wetlands and waters of the state.[FN19]

> FN16. ECF # 2 at ¶ 4.
>
> FN17. *Id.* at ¶ 11.
>
> FN18. *Id.* at 43.
>
> FN19. *Id.* at 44.

**B. Motion and responses**

Osborne, in his motion, contends first that because the complaints speak of Osborne along with other defendants, Osborne is not on notice of any particular claims against him personally.[FN20] Spe-

cifically, he argues that the "catch all" allegations do not clearly allege that Osborne, individually, has done anything wrong, but merely give rise to the inference that he was a trustee, principal, or president of an entity that owned the land at issue.[FN21]

> FN20. ECF # 38 at 2.
>
> FN21. *Id.* at 5.

Next, he argues that neither the Government nor the State allege that any of the other defendant entities were Osborne's alter ego, and so, under Ohio business and trust law, Osborne is immune from personal liability for actions taken by the trust and limited liability defendants.[FN22] In particular, although a trustee may be liable for violations of environmental law where the trustee was personally at fault,[FN23] Osborne maintains that the complaints fail to allege sufficient facts from which to infer that he has any personal liability.[FN24] In addition, Osborne also contends that because a member of a limited liability company has no liability for acts of the LLC, nothing in either complaint states a claim for his personal liability.[FN25] Finally, he asserts that no attempt has been made to pierce the corporate veil such as would permit a finding of personal liability against Osborne for acts of incorporated defendants, thus mandating dismissal of such allegations.[FN26]

> FN22. *Id.*
>
> FN23. *Id.* at 5.
>
> FN24. *Id.* at 6.
>
> FN25. *Id.* at 6–7.
>
> FN26. *Id.* at 7–8.

**\*2** In response, the Government argues first that the CWA is a strict liability statute that permits liability to be imposed on both a landlord who authorizes an action violating that statute, as well as on the contractor performing the action itself.[FN27] In that regard, agents or employees of corporations

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

can be individually liable notwithstanding that they acted in their corporate capacity.[FN28] Thus, the Government contends, because it is alleged: (1) that Osborne planned the development of the site; (2) that the discharge occurred with Osborne's consent and/or knowledge during the development of the site; and (3) that Osborne conducted, contracted for, supervised and/or controlled the unauthorized discharge; it is reasonable to infer that the allegations state a claim for relief against Osborne as an individual and put him on notice of that claim.[FN29]

> FN27. ECF # 63 at 5.
>
> FN28. *Id.* at 6.
>
> FN29. *Id.* at 7–8.

Moreover, the Government points to case authority holding that the "responsible corporate officer doctrine," which arose in the context of the federal cosmetic, food and drug statute, has been applied to CWA cases.[FN30] In particular, the Government asserts that this doctrine, which holds that an individual corporate officer has personal criminal liability if he had a "responsible share in the furtherance of the transaction which the statute outlaws," has been applied to CWA cases.[FN31] As such, the Government maintains, it would be premature to dismiss a claim against Osborne individually where the complaint gives rise to the plausible inference that the "unifying link" between other named defendants is Osborne himself and that Osborne may be personally responsible for the alleged violations as the "responsible corporate officer" who controlled those entities.[FN32] Similarly, as regards personal liability for a trustee under Ohio law, the Government argues that because a violation of the CWA is not a "tort," a trustee may be liable for actions of the trust regardless of any finding of personal liability.[FN33]

> FN30. *Id.* at 8.
>
> FN31. *Id.*
>
> FN32. *Id.* at 8–10.

> FN33. *Id* at 11–12.

For its part, the State argues that Osborne has received adequate notice that the claims are against him in his personal capacity.[FN34] It asserts that it is not required in the pleadings to set forth the particular theory of liability by which the claims will be pursued.[FN35] It further maintains that Osborne, as trustee, is the proper party to defend allegations against the trust .[FN36]

> FN34. ECF # 59 at 4–6.
>
> FN35. *Id.* at 7–8.
>
> FN36. *Id.* at 8–10.

Osborne, in reply, argues, as concerns the federal claims, that (1) there are insufficient facts alleged by which a plausible penetration of the corporate veil could be established under the tests outlined in the applicable law, and (2) the "responsible corporate officer" doctrine cannot apply to the CWA by reason of legislative intent to the contrary.[FN37] Further, as concerns the state law claims, Osborne contends that under Ohio law a trustee may be personally liable for actions of the trust only upon a showing that the trustee was personally at fault and that neither the Government nor the State have alleged facts to that point.[FN38]

> FN37. ECF # 72 at 9–12.
>
> FN38. *Id.* at 7–8.

### Analysis
**A. Standard of review—motion to dismiss**
**\*3** Federal Civil Rule 8 requires only that a pleading contain "a short and plain statement of the claim showing the pleader is entitled to relief."[FN39] Federal Civil Rule 12(b)(6) provides that a court may grant a motion to dismiss a complaint only when, after construing the allegations in a light most favorable to the plaintiff and accepting all well pleaded allegations as true, the court determines that the plaintiff can prove no set of facts in support of those allegations that would entitle

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

him to relief. [FN40]

> FN39. Fed.R.Civ.P. 8(a)(2).
>
> FN40. *Harbin–Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir.2005).

In *Ashcroft v. Iqbal,* [FN41] and *Bell Atlantic v. Twombly,* [FN42] the Supreme Court has held that to survive a 12(b) (6) motion to dismiss a complaint, it must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " [FN43] As Judge Zouhary recently noted in *In re Polyurethane Foam Antitrust Litigation,* under this "plausibility pleading standard," a complaint must contain "allegations plausibly suggesting (not merely consistent with)" the defendant's liability. [FN44] But "this standard neither imposes a probability requirement nor requires ultra specific factual allegations." [FN45] Rather, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level," or "raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. [FN46]

> FN41. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
>
> FN42. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
>
> FN43. *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570).
>
> FN44. *In re Polyurethane Foam Antitrust Litigation,* 799 F.Supp.2d 777, 2011 WL 3204712, at *11 (N.D.Ohio Sept.15, 2011) (quoting *Twombly,* 550 U.S. at 557).
>
> FN45. *Id.* (citations omitted).
>
> FN46. *Id.* (quoting *Twombly,* 550 U.S. at 555, 556).

Courts employ a two-step process when evaluating the facial plausibility of a complaint. [FN47]

> FN47. *Id.*

First, a "court must dispose of those allegations not entitled to the presumption of truth." [FN48] This means, as the Supreme Court stated in *Iqbal,* "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." [FN49] Care must be taken, however, not to dismiss conclusory allegations when a court determines from a fair reading of the complaint as a whole that those conclusory allegations are supported by factual allegations. [FN50]

> FN48. *Id.*
>
> FN49. *Iqbal,* 129 S.Ct. at 1949.
>
> FN50. *Twombly,* 550 U.S. at 564.

Second, a court must then determine whether the remaining allegations, if taken as true, "plausibly give rise to an entitlement to relief." [FN51] A plausible claim is not merely "possible" or "conceivable," [FN52] but rather is an allegation which permits a court to draw from it the "reasonable inference that the defendant is liable for the misconduct alleged." [FN53]

> FN51. *Iqbal,* 129 S.Ct. at 1950.
>
> FN52. *Twombly,* 550 U.S. at 557.
>
> FN53. *Iqbal,* 129 S.Ct. at 1949.

In applying the plausibility pleading standard, the court must take care not to do so simplistically, rigidly, or mechanically. As Judge Zouhary further observed in *Polyurethane Foam,* the plausibility pleading standard should not be glossed so as to "doom[ ] *any* complaint paragraph containing a term that, by itself, constitutes a legal conclusion, regardless of any factual support that may exist for that allegation anywhere in the complaint.... [E]ven in its most expansive reading, *Twombly* does not support such an exacting dissection of a complaint." [FN54]

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

FN54. *Polyurethane Foam,* 2011 WL 3204712, at * 13.

**\*4** Further care must be taken not to dismiss as a "legal conclusion" an allegation that is actually factual in nature merely because a defendant asserts that such an allegation "does not contain *enough* factual specificity."[FN55] Factual allegations "are readily distinguishable from solely legal conclusions."[FN56] Specifically, a factual allegation's "veracity can be demonstrated on its own terms," whereas, a legal conclusion would require an analysis of underlying facts to determine whether "the asserted legal determination is appropriate."[FN57]

FN55. *Id.* (emphasis original).

FN56. *Id.*

FN57. *Id.*

Moreover, courts must be alert to arguments from a defendant that *Twombly* requires a plaintiff to advance specific factual allegations describing the particularized "who, what, when, where and how" of the defendant's liability.[FN58] As the *Polyurethane Foam* opinion succinctly observed in rejecting that approach, *"Twombly* stands for no such proposition."[FN59] Indeed, "the plausibility pleading standard does not require a court to construct a mandatory checklist" of detail required in every complaint.[FN60]

FN58. *Id.* at 14.

FN59. *Id.*

FN60. *Id.*

**B. Application of standard**

As noted, Osborne's motion to dismiss essentially raises three fundamental issues: (1) personal liability under Ohio law of a trustee for acts of the trust; (2) application under federal law of the "responsible corporate officer" doctrine to CWA cases; and (3) sufficiency of pleadings for piercing the corporate veil. Depending on the conclusions to

these inquiries, a final issue may be present as to whether Osborne is on notice of any allowable personal claims against him.

**1. Personal liability of a trustee**

Ohio Revised Code § 5810.10(B) provides:

A trustee is personally liable for torts committed in the course of administering a trust or for obligations arising from ownership or control of trust property, including liability for violation of environmental law, only if the trustee is personally at fault.

As Osborne notes, the Official Comments to the Uniform Trust Code further states that liability in such situations as for violations of environmental law "is imposed on the trustee only if the trustee was personally at fault, either intentionally or negligently."[FN61] Moreover, that same Official Comment further observes that the above-cited subsection of the revised code "specifically protects a trustee from personal liability for violations of environmental law such as CERCLA (42 U.S.C. § 9607) or its state law counterparts, unless the trustee was personally at fault."[FN62]

FN61. *Id.* at 5.

FN62. *Id.*

In this case, while there may be an argument to be made that Osborne is personally liable under the responsible corporate officer doctrine for acts taken by corporate entities that allegedly conducted the dredging and filling on the site (the argument is addressed below), the trust is merely alleged to own some of the land on which those acts were performed.[FN63] Thus, the responsible corporate officer doctrine, even if applicable, cannot provide the means for asserting personal liability against Osborne for any acts of the trust.

FN63. *See,* ECF # 1 at ¶ 7.

**\*5** In addition, there is no basis for concluding, as the Government alleges,[FN64] that the federal

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

CWA has preempted the operation of Ohio's trust laws.[FN65]

> FN64. ECF # 63 at 11.

> FN65. *See, Hillsborough County v. Automated Med. Labs.,* 471 U.S. 707, 712–13, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (setting forth the areas of federal preemption).

Thus, absent such a mechanism for imputing personal liability to Osborne for any liability attaching to the trust's partial ownership of the property at issue, or absent any preemption, the Ohio law provision specifically shielding a trustee from such liability, except in cases of proven personal responsibility, operates to preclude a finding of liability against Osborne in this case. I specifically note in that regard that such a finding does not question the naming of Osborne, in his capacity as trustee, as the appropriate party to answer allegations against the trust.[FN66]

> FN66. ECF # 72 at 8. Osborne agrees that, as trustee, he is the proper party to a suit involving the trust.

Accordingly, the Court should grant Osborne's motion to dismiss those portions of the complaints that assert personal liability against him for actions of the trust. This dismissal should be without prejudice to the Government or the State amending the complaints to include allegations, if any, against Osborne for personal actions taken that would permit a finding of liability under Ohio trust law.

### 2. "Responsible corporate officer" doctrine in CWA cases

A New York federal district court recently held that in appropriate circumstances an individual corporate officer may be held personally liable for violations of the CWA without piercing the corporate veil. In *City of Newburgh v. Sarna,*[FN67] the court considered the "responsible corporate officer" doctrine by which, if a corporate officer had a

"responsible share in the furtherance of the transaction which the statute outlaws," that officer may be criminally liable for such actions.[FN68] The *Sarna* court concluded—as had every other federal district court to expressly address the issue—that the "responsible corporate officer" doctrine applies in cases, such as this one, seeking civil remedies for CWA violations.[FN69]

> FN67. *City of Newburgh v. Sarna,* 690 F.Supp.2d 136 (S.D.N.Y.2010).

> FN68. *Id.* at 160 (citing *United States v. Dotterweich,* 320 U.S. 277, 284, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (construing the Federal Food, Drug and Cosmetics Act)).

> FN69. *Id.* (citation omitted).

In so deciding, *Sarna* extensively considered the argument made here by Osborne[FN70] that because the portion of the CWA delineating criminal liability differs from the civil portion by expanding the definition of a "person" liable under the act to include "any responsible corporate officer," any liability for such "responsible corporate officer" under the CWA should be limited to criminal charges and not include civil claims.[FN71] After a lengthy discussion of the rationale offered by the various federal district courts to have addressed the issue, *Sarna* determined, as had the other courts, that the responsible corporate officer doctrine applied, and that it would be premature to dismiss the complaint against the particular corporate officer involved. Rather, although that defendant's particular role in the corporate entities named there as defendants remained "a matter to be fleshed out during discovery," the pleadings were sufficient to survive a motion to dismiss where they "gave rise to the plausible inference" that the "unifying link" between the named corporate entities was Sarna the individual, and that, as such, Sarna may be liable as the responsible corporate officer of these corporate entities.[FN72]

> FN70. ECF # 72 at 11–13.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

FN71. *Sarna,* 690 F.Supp.2d at 160–62.

FN72. *Id.* at 162–63.

**\*6** On the basis of the reasoning of *Sarna,* and the similarity of that matter to this one, the pleadings plausibly give rise to the inference that because Osborne was the unifying link between the two named corporate defendants wherein he was either a principal or an officer, he may plausibly be a responsible corporate officer of these entities and so civilly liable for their actions that violated the CWA. Thus, I recommend denying Osborne's motion to dismiss the allegations against him personally insofar as the allegations may involve claims that he was the responsible corporate officer of Madison/Route 20, LLC [FN73] and Midway Industrial Campus Co., Ltd. [FN74]

FN73. *See,* ECF # 1 at ¶¶ 7–8 (Osborne alleged to be a principal of Madison).

FN74. *Id.* at ¶¶ 7, 9 (Osborne alleged to be president of Midway).

**3. Sufficiency of pleadings for piercing the corporate veil**

According to the Sixth Circuit's construction of Ohio law, the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when:

(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, or existence of its own;

(2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate identity; and

(3) injury and unjust loss resulted to the plaintiff from such control and wrong. [FN75]

FN75. *Taylor Steel, Inc. v. Keeton,* 417 F.3d 598, 605 (6th Cir.2005) (citing

*Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos.,* 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993).

The Sixth Circuit emphasized that the first element of that group " 'is a restatement of the alter ego doctrine which requires that plaintiff show that the individual and the corporation are fundamentally indistinguishable.' " [FN76] In doing so the opinion in *Taylor Steel v. Keeton* cited several factors that Ohio courts have considered,[FN77] but further noted that because " 'of the equitable nature of the veil-piercing doctrine, no list of factors can be exclusive or exhaustive.' " [FN78]

FN76. *Id.* (quoting *Belvedere,* 67 Ohio St.3d at 288, 617 N.E.2d at 1086).

FN77. *See also, Fortress Value Recovery Fund I, LLC v. Columbus Components Group, LLC,* 2011 WL 1130442, at \*4 (N.D.Ohio March 28, 2011) (factors considered to show corporation is alter ego of another are: (a) whether corporate formalities are observed; (b) whether corporate records are kept; (c) whether the corporation is financially independent; (d) whether the corporation shares officers and employees; (e) whether the corporation engages in the same business; (f) whether the corporation has the same address and phone lines; (g) whether the entities use the same assets; (h) whether they complete the same jobs; (i) whether separate books, tax returns and financial statements are maintained; and (j) whether the corporation exerts control over the daily operation of another corporation).

FN78. *Taylor Steel,* 417 F.3d at 605 (quoting *Carter–Jones Lumber Co. v. LTV Steel Co.,* 237 F.3d 745, 749 (6th Cir.2001) (applying Ohio law)).

Here, as to the first element of the *Taylor Steel* test, the complaint alleges that Osborne personally

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

"planned development" of some or all of the site FN79 but does not directly assert that the named corporate entities were Osborne's alter egos. Osborne argues that because there are no specific allegations pertaining to how he could be shown to be the alter ego (*e.g.,* financial independence of the corporations from Osborne, keeping of separate records, etc.), the complaint does not state a claim for relief. FN80 Moreover, he contends that the complaints lack any factual allegations going toward the second and third elements of the *Taylor Steel* test that are necessary to permit piercing the corporate veil. FN81

FN79. ECF # 1 at ¶ 7.

FN80. ECF # 72 at 9–11.

FN81. *Id.*

As Judge Gwin determined when addressing a similar motion to dismiss in *Fortress Value Recovery Fund I, LLC v. Columbus Components Group, LLC,* FN82 if the corporate entities were alter egos of Osborne, which is the essence of the first element of the *Taylor Steel* test, the allegations of the complaints are sufficient to establish the second and third elements of that test—that (a) corporate control was exercised to commit an illegal act (b) from which harm resulted to the party seeking to pierce the corporate veil. In particular, the complaint alleges FN83 that one or more defendants conducted, controlled, or supervised FN84 the discharge of dredged or fill material into protected waters FN85 without a permit, FN86 such that this discharge had an adverse impact on waters of the United States. FN87 The State's complaint contains similar allegations.

FN82. *Fortress Value,* 2011 WL 1130442.

FN83. The allegations were discussed in greater detail in a companion report and recommendation.

FN84. ECF # 1 at ¶ 44.

FN85. *Id.* at ¶ 39.

FN86. *Id.* at ¶ 46.

FN87. *Id.* at ¶ 45.

**\*7** However, the bare allegation that Osborne "planned" the development does not allege that the corporate entities were his alter egos. Even under the standard of plausibility pleading that was extensively set forth and discussed in the companion report and recommendation, the present allegations—which do not allege facts such as a common address, the fact of corporate control by Osborne, etc.—do not plausibly permit the inference, regardless of what Osborne may have done in planning the development, that the corporate defendants had no independent identity, but were actually Osborne's alter egos. FN88

FN88. This should not be understood as saying that the pleading must contain these factual allegations to be sufficient but only to state that, absent the direct allegation that corporate entities here were Osborne's alter egos, there were no other factual allegations from which the Court may have inferred the allegation that there was no independent corporate identity. The basic elements of what is required for plausibility pleading are addressed in a companion report and recommendation and should be understood to apply here.

Accordingly, I recommend granting Osborne's motion in this respect without prejudice to the Government and the State being permitted to amend the complaints.

**Conclusion**
For the foregoing reasons and as set forth above, I recommend granting Osborne's motion in part without prejudice, and denying it in part.

N.D.Ohio,2011.
U.S. v. Osborne
Slip Copy, 2011 WL 7640990 (N.D.Ohio)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7640990 (N.D.Ohio)
**(Cite as: 2011 WL 7640990 (N.D.Ohio))**

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.