# EXHIBIT G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

SHIGERU OGAWA,

Defendant.

Criminal No.: 12-20068

Filed:

Violation: 15 U.S.C. § 1

FILED
MAR 26 2012
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

## PLEA AGREEMENT

The United States of America and Shigeru Ogawa ("defendant") hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

### RIGHTS OF DEFENDANT

1.  The defendant understands his rights:

    (a) to be represented by an attorney;

    (b) to be charged by Indictment;

    (c) as a citizen and resident of Japan, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against him in the United States District Court for the Eastern District of Michigan;

    (d) to plead not guilty to any criminal charge brought against him;

    (e) to have a trial by jury, at which he would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for him to be found guilty;

    (f) to confront and cross-examine witnesses against him and to subpoena witnesses in his defense at trial;

 (g) not to be compelled to incriminate himself;

 (h) to appeal his conviction, if he is found guilty; and

 (i) to appeal the imposition of sentence against him.

### AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2. The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(h) above. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2241 or 2255, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 13 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to be filed in the United States District Court for the Eastern District of Michigan. The Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere, from on or about January 2002 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

2

3. The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charge described in Paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below. The United States agrees that at the arraignment, it will stipulate to the release of the defendant on his personal recognizance, pursuant to 18 U.S.C. § 3142, pending the sentencing hearing in this case.

## FACTUAL BASIS FOR OFFENSE CHARGED

4. Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a) For purposes of this Plea Agreement, the "relevant period" is that period from on or about January 2002 until at least February 2010. During the relevant period, the defendant was employed by Yazaki Corporation ("Yazaki"), a corporation organized and existing under the laws of Japan, and with its principal place of business in Susono-Shi, Japan. During the relevant period, the defendant was employed by Yazaki in Japan as Assistant Section Manager in the Honda Business Unit from January 2002 until January 2004, as Section Manager in the Honda Business Unit from January 2004 until June 2005, as Branch Manager for Honda Sales at Yazaki North America, a subsidiary of Yazaki in the United States, in Columbus, Ohio, from June 2005 through January 2009, and as Director of Yazaki North America from January 2009 until at least February 2010. During the relevant period, Yazaki was a manufacturer of automotive wire harnesses and related products and was engaged in the sale of automotive wire harnesses and related products in the United States and elsewhere. Automotive wire harnesses are automotive electrical distribution systems used to direct and control electronic components, wiring, and circuit boards. The following are defined as "related products" for the purposes of

3

this Plea Agreement: automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors. During the relevant period, Yazaki's sales of automotive wire harnesses and related products affecting certain automobile manufacturers in the United States and elsewhere totaled more than $250,000,000.

(b)     During the relevant period, the defendant participated in a conspiracy with other persons and entities engaged in the manufacture and sale of automotive wire harnesses and related products, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere. In furtherance of the conspiracy, the defendant engaged in discussions and attended meetings with co-conspirators involved in the manufacture and sale of automotive wire harnesses and related products. During such meetings and conversations, agreements were reached to allocate the supply of automotive wire harnesses and related products sold to certain automobile manufacturers on a model-by-model basis, rig bids quoted to certain automobile manufacturers for automotive wire harnesses and related products, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by certain automobile manufacturers, of automotive wire harnesses and related products sold in the United States and elsewhere.

(c)     During the relevant period, automotive wire harnesses and related products sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of automotive wire harnesses and related

4

products, as well as payments for automotive wire harnesses and related products, traveled in interstate and foreign commerce. The business activities of Yazaki and its co-conspirators in connection with the production and sale of automotive wire harnesses and related products that were the subjects of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

  (d)  The conspiratorial meetings and conversations described above took place in the United States and elsewhere, and automotive wire harnesses and related products that were the subject of this conspiracy were sold to certain automobile manufacturers by Yazaki's United States subsidiary, which is located in the Eastern District of Michigan.

## POSSIBLE MAXIMUM SENTENCE

  5.  The defendant understands that the statutory maximum penalty which may be imposed against him upon conviction for a violation of Section One of the Sherman Antitrust Act is:

  (a)  a term of imprisonment for ten (10) years (15 U.S.C. § 1);

  (b)  a fine in an amount equal to the greatest of (1) $1 million, (2) twice the gross pecuniary gain the conspirators derived from the crime, or (3) twice the gross pecuniary loss caused to the victims of the crime by the conspirators (15 U.S.C. § 1; 18 U.S.C. § 3571(b) and (d)); and

  (c)  a term of supervised release of three (3) years following any term of imprisonment. If the defendant violates any condition of supervised release, the defendant could be required to serve up to two (2) years in prison (18 U.S.C. § 3559(a)(3); 18 U.S.C. § 3583(b)(2) and (e)(3); and United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") §5D1.2(a)(2)).

6. In addition, the defendant understands that:

    (a) pursuant to U.S.S.G. §5E1.1 or 18 U.S.C. § 3663(a)(3) or 3583(d), the Court may order him to pay restitution to the victims of the offense; and

    (b) pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order the defendant to pay a $100.00 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

7. The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

8. The United States and the defendant agree to the following Guidelines calculations:

    (a) The November 1, 2011 edition of the Guidelines applies.

    (b) The controlling Guideline applicable to the sole count charged is U.S.S.G. §2R1.1.

    (c) The Guidelines fine range is one to five percent of the volume of commerce attributable to the defendant pursuant to U.S.S.G. §§2R1.1(b)(2) and (c)(1).

    (d) Pursuant to the Guidelines §2R1.1(a), the base offense level is 12.

 (e) The offense to which the defendant is pleading guilty involved participation in an agreement to submit non-competitive bids, within the meaning of U.S.S.G. §2R1.1(b)(1), which increases the offense level by 1.

 (f) The volume of commerce attributable to the defendant within the meaning of U.S.S.G. §2R1.1(b)(2) is more than $250,000,000, which increases the offense level by 10.

 (g) The resulting Offense Level before any reduction for acceptance of responsibility is 23.

 (h) Based on an Offense Level of 23 and a Criminal History Category I, the Guidelines imprisonment range is 46 to 57 months.

9. The United States does not oppose a two-level reduction in the defendant's adjusted offense level, based upon the defendant's prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The United States agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional one-level reduction in recognition of the defendant's timely notification of his intention to plead guilty. If the Court grants a three-level reduction for acceptance of responsibility, the defendant's Total Offense Level will be 20. Based on a Total Offense Level of 20 and a Criminal History Category I, the Guidelines imprisonment range is 33 to 41 months.

10. The defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history or criminal history category could alter his offense level, if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

11. The United States and the defendant agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0.

12. The United States and the defendant agree that with respect to the calculation of the advisory Guidelines range, no offense characteristics, Sentencing Guidelines factors, potential departures or adjustments as set forth in Chapters 2, 3, 4, or 5 of the Sentencing Guidelines will be raised, argued, or are in dispute that are not set forth in this Plea Agreement.

## SENTENCING AGREEMENT

13. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $20,000, payable in full before the fifteenth (15th) day after the date of judgment; a period of imprisonment of fifteen (15) months; no period of supervised release; and no order of restitution ("the recommended sentence"). The defendant agrees that he will not request that he be allowed to serve any part of his sentence in home detention, intermittent confinement, or community confinement. The United States will not object to the defendant's request that the Court make a recommendation to the Bureau of Prisons that the Bureau of Prisons designate that the defendant be assigned to a Federal Minimum Security Camp (or one such specific Camp as the defendant may request prior to or at the time of his sentencing) to serve his sentence of imprisonment and that the defendant be released following the imposition of sentence to allow him to self-surrender to the assigned prison facility on a specified date after his sentencing. The defendant understands that the Court will order him to pay a $100 special assessment pursuant to 18 U.S.C.

§ 3013(a)(2)(A) in addition to any fine imposed. The parties agree that the recommended sentence set forth in this paragraph is reasonable.

14. The United States and the defendant agree that the agreed-upon Guidelines calculations, set forth in Paragraphs 8 and 9 above, result in applicable Guidelines fine and imprisonment ranges exceeding the fine and term of imprisonment contained in the recommended sentence set forth in Paragraph 13 above. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 17 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. §5K1.1, for a downward departure from the Guidelines fine and imprisonment ranges in this case and will request that the Court impose the fine and term of imprisonment contained in the recommended sentence set out in Paragraph 13 of this Plea Agreement because of the defendant's substantial assistance in the government's investigation and prosecution of violations of federal criminal law in the automotive parts industry.

15. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 17 of this Plea Agreement, and before sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's cooperation and his commitment to prospective cooperation with the United States's investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

16. The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 13 of this Plea Agreement.

(a) If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 16(b) below, shall be rendered void. Neither party may withdraw from this Plea Agreement, however, based on the type or location of the prison facility to which the defendant is assigned to serve his sentence.

(b) If the Court does not accept the recommended sentence, the defendant will be free to withdraw his guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws his plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if he withdraws his guilty plea pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any Relevant Offense, as defined in Paragraph 18 below, shall be tolled for the period between the date of the signing of the Plea Agreement and the date the defendant withdrew his guilty plea or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater. For a period of three (3) consecutive days following such a withdrawal of the guilty plea under this subparagraph, the United States shall take no action, based upon either a Relevant Offense or any actual or alleged violation of the Plea Agreement, to revoke the defendant's release on his personal recognizance, to subject the defendant to service of process, arrest, or detention, or to prevent the defendant from departing the United States.

## DEFENDANT'S COOPERATION

17. The defendant will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The full, truthful, and continuing cooperation of the defendant shall include, but not be limited to:

  (a)  producing all non-privileged documents, including claimed personal documents, and other materials, wherever located, in the possession, custody, or control of the defendant, requested by attorneys and agents of the United States;

  (b)  making himself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States;

  (c)  responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

  (d)  otherwise voluntarily providing the United States with any non-privileged material or information, not requested in (a) - (c) of this paragraph, that he may have that is related to any Federal Proceeding; and

(e) when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States, fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*).

## GOVERNMENT'S AGREEMENT

18. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 17 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, the United States will not bring further criminal charges against the defendant for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere ("Relevant Offense"). The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence.

19. The United States agrees that when the defendant travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject the defendant to arrest, detention, or service of process, or to prevent the defendant from departing the United States. This paragraph does not apply to the defendant's commission of perjury (18 U.S.C. § 1621), making false statements (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C.

§ 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or contempt (18 U.S.C. §§ 401 - 402) in connection with any testimony or information provided or requested in any Federal Proceeding.

20. The United States agrees to request that United States Immigration and Customs Enforcement ("ICE"), on behalf of the United States Department of Homeland Security ("DHS") and in consultation with the Department of State ("DOS"), grant the immigration relief outlined in Paragraphs 20 (a) – (e) of this Plea Agreement. The defendant understands that the Antitrust Division cannot guarantee that the immigration relief outlined in Paragraphs 20 (a) - (e) will be granted, as the final decision rests with ICE, on behalf of DHS and in consultation with DOS.

(a) Pending approval by ICE, as described in Paragraphs 20 (b) - (e), subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 17 of this Plea Agreement, and upon the Court's acceptance of the defendant's guilty plea and imposition of sentence in this case, the United States agrees not to seek to remove the defendant from the United States under Sections 238 and 240 of the Immigration and Nationality Act, 8 U.S.C. §§ 1228 and 1229a, based upon the defendant's guilty plea and conviction in this case, should the defendant apply for or obtain admission to the United States as a nonimmigrant (hereinafter referred to as the "agreement not to seek to remove the defendant"). The agreement not to seek to remove the defendant is the equivalent of an agreement not to exclude the defendant from admission to the United States as a nonimmigrant or to deport the defendant from the United States. (Immigration and Nationality Act, § 240(e)(2), 8 U.S.C. § 1229a(e)(2)).

(b) So that the defendant will be able to obtain any nonimmigrant visa that he may need to travel to the United States, DHS and the Visa Office, United States

13

Department of State, will be asked to concur in the granting of a nonimmigrant waiver of the defendant's inadmissibility. This waiver, should it be granted, will remain in effect so long as the agreement not to seek to remove the defendant remains in effect. While the waiver remains in effect, the Department of State will not deny the defendant's application for a nonimmigrant visa on the basis of the defendant's guilty plea and conviction in this case, and DHS will not deny his application for admission as a nonimmigrant on the basis of his guilty plea and conviction in this case. The nonimmigrant waiver will apply only to applications for entry as a nonimmigrant. DHS will not agree to waive any grounds of removability on an application for an immigrant visa.

(c) If granted, the agreement not to seek to remove the defendant will remain in effect so long as the defendant:

(i) acts and has acted consistently with his cooperation obligations under this Plea Agreement;

(ii) is not convicted of any felony under the laws of the United States or any state, other than the conviction resulting from the defendant's guilty plea under this Plea Agreement or any conviction under the laws of any state resulting from conduct constituting an offense subject to this Plea Agreement; and

(iii) does not engage in any other conduct that would warrant his removal from the United States under the Immigration and Nationality Act.

The defendant understands that should the Antitrust Division become aware that the defendant has violated any of these conditions, the Antitrust Division will

notify DHS. DHS will then determine, in consultation with the Antitrust Division, whether to rescind the agreement not to seek to remove the defendant.

(d) The defendant agrees to notify the Assistant Attorney General of the Antitrust Division should the defendant be convicted of any other felony under the laws of the United States or of any state.

(e) Should the United States rescind the agreement not to seek to remove the defendant because of the defendant's violation of a condition of this Plea Agreement, the defendant irrevocably waives his right to contest his removal from the United States under the Immigration and Nationality Act on the basis of his guilty plea and conviction in this case, but retains his right to notice of removal proceedings.

(f) The defendant and the Antitrust Division of the United States understand that ICE, on behalf of DHS and in consultation with the United States Department of State, may decline to grant the immigration relief contained in paragraphs (a) – (e) and may seek to remove the defendant. The Antitrust Division agrees to notify the defendant of any decision by ICE to decline the immigration relief outlined in paragraphs (a) – (e), in writing, within five (5) business days of that decision. The Antitrust Division further agrees that if immigration relief is not granted, the defendant may withdraw from this agreement by notifying the Antitrust Division of that decision within fourteen (14) days of the receipt of the Antitrust Division's written notification of the ICE decision. The Antitrust Division agrees to join a request by the defendant to defer scheduling of the sentencing hearing in this matter until such time as the ICE decision has been made.

(g) The defendant understands and agrees that, in the event that he withdraws from this Plea Agreement pursuant to Paragraph 20(f), the United States will be released

from its obligations under this Plea Agreement and may bring criminal charges against him for any Relevant Offense, as defined in Paragraph 18. If the defendant withdraws from the Plea Agreement pursuant to Paragraph 20(f), any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if he withdraws from the Plea Agreement pursuant to Paragraph 20(f), the statute of limitations period for any Relevant Offense, shall be tolled for the period between the date of the signing of the Plea Agreement and the date the defendant withdrew from the Plea Agreement or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater. For a period of three (3) consecutive days following a withdrawal pursuant to Paragraph 20(f), the United States shall take no action, based upon either a Relevant Offense or any actual or alleged violation of the Plea Agreement, to subject the defendant to service of process, arrest, or detention, or to prevent the defendant from departing the United States.

21. The defendant understands that he may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner, and extent of the cooperation of the

defendant as a matter for that agency to consider before determining what administrative action, if any, to take.

## REPRESENTATION BY COUNSEL

22. The defendant has reviewed all legal and factual aspects of this case with his attorney and is fully satisfied with his attorney's legal representation. The defendant has thoroughly reviewed this Plea Agreement with his attorney and has received satisfactory explanations from his attorney concerning each paragraph of this Plea Agreement and alternatives available to the defendant other than entering into this Plea Agreement. After conferring with his attorney and considering all available alternatives, the defendant has made a knowing and voluntary decision to enter into this Plea Agreement.

## VOLUNTARY PLEA

23. The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

24. The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 17 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify the defendant or his counsel in writing by personal or overnight delivery or facsimile transmission and may also notify his counsel by telephone of its intention to void any of its obligations under

this Plea Agreement (except its obligations under this paragraph), and the defendant shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any Relevant Offense, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

25. The defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Plea Agreement based on the defendant's violation of the Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him in any such further prosecution. In addition, the defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

26. The defendant agrees to and adopts as his own the factual statement contained in Paragraph 4 above. In the event that the defendant breaches this Plea Agreement, the defendant agrees that the Plea Agreement, including the factual statement contained in Paragraph 4 above, provides a sufficient basis for any possible future extradition request that may be made for his return to the United States to face charges either in the Information referenced in Paragraph 2 of this Plea Agreement or in any related indictment. The defendant further agrees not to oppose or

contest any request for extradition by the United States to face charges either in the Information referenced in Paragraph 2 of this Plea Agreement or in any related indictment.

## ENTIRETY OF AGREEMENT

27. This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

28. The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

29. A facsimile or PDF signature shall be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED this 26th day of March, 2012

BY: _____
SHIGERU OGAWA
Defendant

_____
Rachel S. Brass
Peter Sullivan
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, N.Y. 10166-0193
Tel: (212) 351-5370
Counsel for Shigeru Ogawa

BY: _____
Kathryn Hellings
Shane Cralle
Matthew Lunder
Trial Attorneys, Antitrust Division
U.S. Department of Justice
Washington, D.C. 20530
Tel: (202) 307-6694