**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS SYSTEMS CASES** | |
| **THIS RELATES TO: ALL END-PAYOR ACTIONS** | W:12-cv-00103-MOB-MKM |

**END-PAYOR PLAINTIFFS' OPPOSITION TO DENSO CORPORATION
AND DENSO INTERNATIONAL AMERICA, INC.'S MOTION TO
DISMISS THE DIRECT PURCHASERS' CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT AND THE END-PAYORS' CORRECTED
<u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

## <u>STATEMENT OF ISSUE PRESENTED</u>

1.      Whether End-Payor Plaintiffs' allegations, taken together as true, plausibly suggest that DENSO Corporation and DENSO International America, Inc. participated in the alleged conspiracy, sufficient to satisfy *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

**<u>Cases</u>**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*In re Packaged Ice Antitrust Litigation*, 723 F. Supp. 2d 987 (E.D. Mich. 2010)

**<u>Rules</u>**

Fed. R. Civ. P. 8

# TABLE OF CONTENTS

STATEMENT OF ISSUE PRESENTED ........................................................................ i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ....................................... ii

TABLE OF AUTHORITIES ..................................................................................... iv

I.     INTRODUCTION .............................................................................................1

II.    THE ALLEGATIONS IN THE EP CCAC ARE SUFFICIENT TO STATE A
       CLAIM AGAINST DENSO .............................................................................2

       A.     Standard Of Review ...............................................................................2

       B.     When Viewed As A Whole, EPPs' Allegations More Than Plausibly
              Suggest That DENSO Participated In The Alleged Conspiracy...........................4

              1.     Allegations regarding DENSO's guilty plea................................4

              2.     Allegations regarding other Defendants' guilty pleas ................7

              3.     Allegations regarding other criminal investigations and
                     proceedings ...............................................................................9

              4.     Allegations regarding DENSO's participation in trade associations........10

              5.     Allegations regarding industry market share ............................11

       C.     EPPs Sufficiently Allege That They Suffered Injury ...........................12

III.   CONCLUSION..............................................................................................13

## TABLE OF AUTHORITIES

*Am. Tobacco Co. v. United States,*
   147 F.2d 93 (6th Cir. 1945), *aff'd,* 328 U.S. 781 (1946)...........................................................11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...................................................................................... *passim*

*Carrier Corp. v. Outokumpu Oyj,*
   673 F.3d 430 (6th Cir. 2012)...........................................................................9

*In re Chocolate Confectionary Antitrust Litig.,*
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ............................................................10

*Erickson v. Pardus,*
   551 U.S. 89 (2007).........................................................................................3

*In re Flat Glass Antitrust Litig. II,*
   No. 08-mc-180, 2009 WL 331361 (W.D. Pa. Feb. 11, 2009)...................................10

*In re High Fructose Corn Syrup Antitrust Litig.,*
   295 F.3d 651 (7th Cir. 2002)...........................................................................5

*Hinds Cnty. v. Wachovia Bank N.A.,*
   700 F. Supp. 2d 378 (S.D.N.Y. 2010)........................................................10, 12

*Hyland v. Homeservices of Am., Inc.,*
   No. 3:05-CV-612, 2007 WL 2407233 (W.D. Ky. Aug. 17, 2007) .........................3, 6

*In re Iowa Ready-Mix Concrete Antitrust Litig.,*
   768 F. Supp. 2d 961 (N.D. Iowa 2011).............................................................6

*Mich. Div. Monument Builders of N. Am. v. Mich. Cemetery Ass'n,*
   458, F. Supp. 2d 474, 485 (E.D. Mich. 2006) ..........................................................9

*In re OSB Antitrust Litig.,*
   No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) ......................................9

*In re Optical Disk Drive Antitrust Litig.,*
   No. 10-md-143, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012)................................12

*In re Packaged Ice Antitrust Litig.,*
   No. 08-MDL-1952, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) .......................12

*In re Packaged Ice Antitrust Litig.,*
   723 F. Supp. 2d 987 (E.D. Mich. 2010)........................................................ *passim*

*In re Polypropylene Carpet Antitrust Litig.*,
    178 F.R.D. 603 (N.D. Ga. 1997) .................................................................8

*In re Polyurethane Foam Antitrust Litig.*,
    799 F. Supp. 2d 777 (N.D. Ohio 2011) .....................................................8

*In re Refrigerant Compressors Antitrust Litig.*,
    No. 2:09-md-02042, 2012 WL 2114997 (E.D. Mich. June 11, 2012) ........9

*In re Se. Milk Antitrust Litig.*,
    555 F. Supp. 2d 934 (E.D. Tenn. 2008) ...........................................3, 4, 8

*Standard Iron Works v. Arcelormittal*,
    639 F. Supp. 2d 877 (N.D. Ill. 2009) ...................................................8, 11

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) .....................................................................10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ..............................................4, 7, 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Nos. M 07-1827, C 09-5609, 2010 WL 2629728 (N.D. Cal. June 29, 2010) ...........................6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ..................................................6, 8

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ....................................................................9

*United States v. Sargent*,
    785 F.2d 1123 (3d Cir. 1986) ..................................................................11

*In re Vitamins Antitrust Litig.*,
    No. MISC 99-197, 2000 WL 1475705 (D.D.C. May 9, 2000) ..................5

**RULES**

Fed. R. Civ. P. 8 ...............................................................................................3

End-Payor Plaintiffs ("EPPs") submit this memorandum in opposition to DENSO

Corporation and DENSO International America, Inc.'s (together, "DENSO") Motion to Dismiss

(ECF No. 239)[1] the Direct Purchasers' Consolidated Amended Class Action Complaint (ECF

No. 86) and the End-Payors' Corrected Consolidated Amended Class Action Complaint (ECF

No. 174) ("EP CCAC").[2]  This opposition adopts and incorporates by reference the arguments

advanced in:  (1) Direct Purchaser Plaintiffs' Response in Opposition to Defendants' Collective

Motion to Dismiss; and (2) End-Payor Plaintiffs and Auto-Dealer Plaintiffs' Memorandum of

Law in Response to Defendants' Collective Motion to Dismiss.

## I.    <u>INTRODUCTION</u>

The EP CCAC is replete with allegations regarding the existence of a conspiracy to fix

prices, rig bids, and allocate markets for automotive wire harness systems ("AWHS").  The EP

CCAC also contains a multitude of allegations which, when viewed as a whole, plausibly suggest

that DENSO participated in that conspiracy.  Among other things, the EP CCAC contains

allegations of DENSO's plea agreement[3] with the United States Department of Justice, Antitrust

Division ("DOJ"), in which DENSO admits to fixing prices and rigging bids in the AWHS

market as well as in the related market for heating control panels ("HCPs"); the guilty pleas of

five other Defendants with the DOJ for antitrust violations in the AWHS market; an FBI search

---

[1] The Direct Purchaser Plaintiffs are contemporaneously filing their own brief in opposition to DENSO's Motion to Dismiss.

[2] DENSO's motion to dismiss is hereinafter cited as DENSO Mem. at __.

[3] As a formal matter, DENSO's guilty plea was entered by the Japanese company, DENSO Corporation.  Tellingly, in its motion to dismiss, DENSO does not attempt to distinguish between DENSO Corporation and its wholly owned U.S. subsidiary, DENSO International America, Inc.  Indeed, during the hearing concerning its criminal guilty plea, DENSO Corporation admitted that DENSO International America, Inc. participated in the criminal conspiracy to rig bids and fix prices of AWHS.  *See United States v. Denso Corp.*, No. 12-20063 (E.D. Mich.) [Dkt. No. 12] at 18, attached as Exhibit A (referring to DENSO Corporation and DENSO International America, Inc., together as DENSO and admitting that employees of DENSO had discussions and meetings with competitors that also sold ECUs and that during these discussions and meetings, "agreements were reached to allocate the supply of body ECU's [sic] and to fix, stabilize and maintain the prices of body ECU's [sic] sold . . .").

warrant (based on probable cause) to search DENSO's offices related to antitrust violations in the AWHS market; and, a globally coordinated investigation of Defendants by the DOJ, the Japan Fair Trade Commission ("JFTC") and the European Commission ("EC") for antitrust violations in the AWHS market.

Yet, DENSO comes before this Court and claims it is not "plausible" that it could have participated in the conspiracy alleged in the EP CCAC.  DENSO argues that since it admitted and pleaded guilty to fixing prices and rigging bids as to only one of the 11 AWHS products alleged in the EP CCAC – electrical control units or "ECUs" – and only with respect to sales to one auto manufacturer, facts about its guilty plea are somehow irrelevant to EPPs' claims. DENSO's argument rings hollow.

Even if DENSO did plead guilty to a narrower slice of the AWHS conspiracy than alleged in the EP CCAC, allegations of its plea still bolster EPPs' claims against it here.  Indeed, it is hard to imagine facts that better support plausibility than a defendant's own admission of guilt for criminal antitrust violations in the same market.  Here, DENSO's guilty plea taken with numerous other allegations in the EP CCAC, more than plausibly suggest DENSO's participation in the conspiracy alleged.  Accordingly, DENSO's motion to dismiss should be denied.

## II.     THE ALLEGATIONS IN THE EP CCAC ARE <u>SUFFICIENT TO STATE A CLAIM AGAINST DENSO</u>

### A.     <u>Standard Of Review</u>

On a motion to dismiss, the Court must accept the facts alleged in the complaint as true and construe all facts in favor of the nonmoving party. *Bell Atl. Corp.  v. Twombly*, 550 U.S. 544, 555-56 (2007) ("*Twombly*").

Federal Rule of Civil Procedure 8 requires that a complaint contain only a "short and plain statement" of a claim for relief. "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

*Twombly* did not impose a heightened pleading standard for antitrust conspiracy cases on a motion to dismiss and does not require elaborate fact pleading. *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1003-04 (E.D. Mich. 2010) ("*Packaged Ice*"); *In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 943-44 (E.D. Tenn. 2008) ("*Se. Milk*"); *Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612, 2007 WL 2407233, at *2-3 (W.D. Ky. Aug. 17, 2007).

Rather, *Twombly* requires only that plaintiffs allege enough factual matter to suggest an agreement and that discovery will reveal evidence of that agreement. *Packaged Ice*, 723 F. Supp. 2d at 1003-04; *Hyland*, 2007 WL 2407233, at *3. As this Court explained in *Packaged Ice*:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

723 F. Supp. 2d at 1003-04 (quoting *Twombly*, 550 U.S. at 556).

Furthermore, *Twombly* does not require that plaintiffs parse their allegations defendant-by-defendant. *Id.* at 1005 (*Twombly* does not require that plaintiffs plead the "who, what, when and where" of the alleged conspiracy). Although Plaintiffs will need to provide evidence of each Defendant's participation in the conspiracy to survive summary judgment, on a motion to dismiss, they "only need to make allegations that plausibly suggest that each Defendant

participated in the alleged conspiracy." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) ("*SRAM*").

Finally, an antitrust complaint must be viewed as a whole. Conspiracy allegations are "not to be judged by dismembering [the conspiracy] and viewing its separate parts." *Packaged Ice*, 723 F. Supp. 2d at 1006; *see also Se. Milk*, 555 F. Supp. 2d at 943-44 (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)) (Court expressly rejected defendants' attempts to read the allegations of the complaint in isolation).

### B.     When Viewed As A Whole, EPPs' Allegations More Than Plausibly Suggest That DENSO Participated In The Alleged Conspiracy

#### 1.     Allegations regarding DENSO's guilty plea

To support its claims, EPPs have offered facts regarding DENSO's guilty plea. EP CCAC ¶ 184. DENSO argues that since it only pleaded guilty to price-fixing and bid-rigging of one product alleged to be part of the conspiracy in the EP CCAC – ECUs – and only with respect to one auto manufacturer, facts about its plea are somehow irrelevant to EPPs' claims in this civil litigation. DENSO Mem. at 6-11. DENSO's argument fails on every level.

As an initial matter, DENSO's guilty plea concerns price-fixing and other unlawful conduct in the same market as alleged by EPPs. EPPs have alleged that ECUs are part of and included within the AWHS market as to which Defendants conspired. EP CCAC ¶¶ 124-136, 198-202. On a motion to dismiss, EPPs' allegations must be taken as true. *Twombly*, 550 U.S. at 555-56. Indeed, Defendants' plea agreements in the DOJ's parallel criminal prosecution confirm that ECUs are part of the AWHS market and were the subject of the alleged conspiracy. *See* Furukawa Plea Agreement, DENSO Mem. at Ex. G ¶¶ 2, 4 (pleading guilty to rigging bids and fixing prices of automotive wire harnesses and "related products" including ECUs, among other products); Yazaki Plea Agreement, DENSO Mem. at Ex. H ¶¶ 2, 4 (same).

Furthermore, DENSO's guilty plea does not limit nor define what claims EPPs may bring in this civil litigation. *Packaged Ice*, 723 F. Supp. 2d at 1011-12 (civil litigation is not circumscribed or defined by the boundaries of criminal investigations or plea agreements); *see also In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 620 (N.D. Ga. 1997) ("[T]he court is aware of no authority that requires a civil antitrust plaintiff to plead only the facts of a prior criminal indictment.  To the contrary, several cases flatly reject that theory."); *In re Vitamins Antitrust Litig.*, No. MISC 99-197, 2000 WL 1475705, at *11 (D.D.C. May 9, 2000) (rejecting the "notion that the guilty pleas and cooperation agreements and the class settlements foreclose a broader conspiracy").

As this Court explained in rejecting the very same argument in *Packaged Ice*, there are many reasons why a guilty plea may be narrower or otherwise differ from claims alleged in civil litigation, including the possibility that civil enforcement will be the vehicle by which victims of criminal conduct are provided a recovery.  723 F. Supp. 2d at 1012.  *See also Vitamins*, 2000 WL 1475705, at *11 ("Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention.").  One reason a guilty plea may be narrower than a civil antitrust claim is the enhanced burden of proof required to prove a criminal case.  *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664–665 (7th Cir. 2002) (refusing to infer lack of a civil conspiracy from the government's decision not to move against certain defendants, acknowledging that the DOJ may decide to limit the scope of an investigation for numerous reasons, including differing standards of proof in a criminal case and the knowledge that the private bar "had both the desire and the resources to prosecute [the] suit").  In any event, even if DENSO did plead guilty to narrower conduct than alleged in the EP CCAC, allegations

5

regarding its admitted criminal conduct involving AWHS still enhance the plausibility of EP's CCAC.

The Sixth Circuit has made clear that allegations regarding guilty pleas can bolster the claims made by plaintiffs in civil litigation. *See, e.g., Packaged Ice*, 723 F. Supp. 2d at 1009-10 (government investigations and guilty pleas, while not determinative standing alone, do bolster the plausibility analysis and heighten the court's expectation that "discovery will reveal evidence of illegal agreement"); *Hyland*, 2007 WL 2407233, at *3 (DOJ enforcement actions properly supported § 1 price-fixing allegations in civil litigation).

This holds true even where defendants plead guilty to narrower conduct than alleged in civil litigation. *See Packaged Ice*, 723 F. Supp. 2d at 1009-10 (government prosecution of an agreement among packaged ice manufacturers to fix prices and allocate customers in Southeastern Michigan supported the plausibility of civil plaintiffs' claim of a nationwide conspiracy).[4] This is also true where defendants plead guilty to conduct in separate, but related, markets. *See id.* at 1011 ("guilty pleas in one market are suggestive of the plausibility of a

---

[4] DENSO cites *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975, 979 (N.D. Iowa 2011) in support of its argument that EPPs do not link its guilty plea to the conspiracy alleged. DENSO Mem. at 9. *Iowa Ready-Mix* is clearly distinguishable. There, plaintiffs relied on guilty pleas involving a small region in Iowa, based on three bilateral agreements, to support their allegations of conspiracy in the larger "Iowa region." 768 F. Supp. 2d at 972. Unlike the conspiracy alleged by EPPs here, where the big picture of the alleged conspiracy is comprehensively laid out, the plaintiffs in *Iowa Ready-Mix* did not provide any "larger picture" of the conspiracy alleged. *Id.* DENSO also cites *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827, C 09-5609, 2010 WL 2629728 (N.D. Cal. June 29, 2010) ("*STN-LCD*"). As a preliminary matter, there are many cases coordinated under the "TFT-LCD" caption. The case cited by DENSO, while it bears the same caption as the TFT-LCD panel cases, involves an entirely different product category and unrelated market (the STN-LCD panel market) than in the TFT-LCD panel actions. In the TFT-LCD panel actions, the court found that plaintiffs' allegations regarding defendants' guilty pleas as to TFT-LCD panels enhanced the plausibility of plaintiffs' conspiracy allegations. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009). The case cited by DENSO, however, regarding STN-LCD panels, is quite different. In *STN-LCD*, plaintiffs attempted to rely on the guilty pleas regarding TFT-LCD panels to support their claims that defendants conspired in the STN-LCD market. *STN-LCD*, 2010 WL 2629728, at *5-6. The court noted that unlike the present case, there was no overlap between the two markets and that none of the class cases regarding TFT-LCD panels or the DOJ's investigations regarding TFT-LCD panels alleged any price-fixing related to STN-LCD panels. *Id.* Here, EPPs allege facts regarding DENSO's guilty plea (and the guilty pleas of other Defendants) in the same market as alleged in the civil action – not in an entirely different, unrelated market as the court found in *STN-LCD*.

conspiracy to commit the same illegal acts in another market"); *SRAM*, 580 F. Supp. 2d at 903

(guilty pleas in related DRAM industry, while not sufficient on their own, supported an inference

of conspiracy in the SRAM industry).  Here, EPPs offer allegations regarding DENSO's guilty

plea with the DOJ (in the AWHS market with respect to ECUs and in the related HCP market).

Both types of allegations involving auto parts only serve to bolster the plausibility of EPPs'

claims against DENSO.[5]

**2.    Allegations regarding other Defendants' guilty pleas**

EPPs also offer facts regarding the guilty pleas of five other Defendants for antitrust

violations in the AWHS market.  EP CCAC ¶¶ 172-83, 185-87.  DENSO claims that these guilty

pleas do not lend plausibility to EPPs' claims because they involve different AWHS products

than in DENSO's guilty plea, and because they only refer to "co-conspirators" instead of

mentioning DENSO by name.  DENSO Mem. at 5.  Yet, like DENSO's guilty plea, these pleas

involve conduct in the same market as EPPs allege – the AWHS market.  Indeed, as set forth

above, Defendants' plea agreements in the DOJ's parallel criminal prosecution confirm that

ECUs are part of the AWHS market and were the subject of the alleged conspiracy.  *See* DENSO

Mem. at  Ex.G ¶¶ 2, 4 (pleading guilty to rigging bids and fixing prices of automotive wire

harnesses and "related products" including ECUs, among other products); DENSO Mem. at Ex.

H ¶¶ 2, 4  (same) .

Furthermore, all of the criminal pleas entered by Defendants here contain facts regarding

the same types of collusive behavior as alleged in the EP CCAC, and similarly describe how

Defendants met, made agreements with each other, and carried out their conspiracy through

---

[5] Notably, DENSO has also pleaded guilty in the United States for antitrust violations in the market for HCPs.  *See* DENSO Mem. at ¶¶ 2-3.  DENSO's plea confirms that DENSO's conspiratorial conduct with respect to ECUs and HCPs was identical (*id.* at 4-6); that the conduct in both markets occurred during the same time period, January 2000 to at least February 2010 (*id.* at 3-5); and, carves out the same DENSO executives as not immune from further prosecution in both markets (*id.* at 12).

7

conspiratorial meetings and communications during the same time period. *See* EP CCAC ¶¶ 172-82 (Furukawa); ¶ 183 (Yazaki); ¶ 184 (DENSO); ¶ 185 (G.S. Electech); ¶ 186 (Fujikara). While not determinative on their own, facts regarding a multitude of guilty pleas by Defendants in the same market as alleged in civil litigation certainly are enough to render DENSO's participation in the AWHS conspiracy plausible to say the least. *See Packaged Ice*, 723 F. Supp. 2d at 1010 ("admissions of price-fixing by so many defendants certainly 'are suggestive enough to render a § 1 conspiracy claim plausible'") (internal citations omitted).

Furthermore, the persuasive effect of other Defendants' guilty pleas on EPPs' claims against DENSO is not undercut because they refer to "co-conspirators" or "competitors in the automotive wire harness" industry. *Twombly* imposed no obligation to identify specifically the time, place, and person as to each allegation and does not require elaborate fact pleading. *Id.* at 1005-08; *Se. Milk*, 555 F. Supp. 2d at 943-44. It is sufficient that these allegations refer to "co-conspirators" collectively and it is reasonable to expect that given these guilty pleas, discovery will reveal evidence that DENSO is among those "co-conspirators" and "competitors."

In a similar vein, DENSO argues that allegations that refer to "Defendants" or "co-conspirators" in the EP CCAC are too "conclusory" to state a claim against it. DENSO Mem. at 10. However, courts have repeatedly held that on a motion to dismiss, allegations need not be detailed "defendant-by-defendant." *See In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 794-95 (N.D. Ohio 2011) (plausibility pleading standard does not require a court to construct a mandatory checklist of the "who, what, where, when and how" of an antitrust agreement for each defendant); *TFT-LCD*, 599 F. Supp. 2d at 1184 ("defendant-by-defendant fact pleading not required under *Twombly*); *SRAM*, 580 F. Supp. 2d at 903-07 (same); *Standard Iron Works v. Arcelormittal*, 639 F. Supp. 2d 877, 900 (N.D. Ill. 2009) (complaint need not

contain detailed "defendant-by-defendant" allegations; it only needs to allege that each defendant "joined the conspiracy and played some role in it"); *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *5-6 (E.D. Pa. Aug. 3, 2007) ("one lone paragraph" in a complaint mentioning defendant was enough to state a claim).

Here, EPPs offer many allegations which specifically identify DENSO (see EP CCAC ¶¶ 4, 7, 83-85, 163, 170-71, 184). In addition, the allegations that refer to "Defendants" or "co-conspirators," collectively, are also sufficient. The cases offered by DENSO do not persuade otherwise.[6] EPPs also offer many allegations detailing the conspiratorial conduct of "Defendants" and "co-conspirators" which will likely point to DENSO once EPPs have had the benefit of discovery. *See, e.g.,* EP CCAC ¶¶ 1, 6, 8-9, 14, 18, 151-53, 164, 172-83, 185-87, 215, 231-35. While *Twombly* does not require EPPs to parse their allegations at this stage, EPPs provide many facts specific to DENSO and do not simply provide "conclusory" allegations with nothing more.

### 3. Allegations regarding other criminal investigations and proceedings

EPPs allege that DENSO's offices were raided by the FBI in connection with antitrust violations in the AWHS market (based on probable cause and signed by a magistrate). EP CCAC ¶¶ 170-71. EPPs also allege facts regarding a globally coordinated investigation of the AWHS industry amongst the DOJ, the JFTC, and the EC. EP CCAC ¶¶ 6, 164-69. DENSO

---

[6] *See, e.g., Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (finding it unnecessary for plaintiff to delineate in the complaint the role each defendant subsidiary played in the conspiracy to survive a motion to dismiss); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (plaintiffs only offered conclusory allegations about opportunities to conspire and nothing else); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012 WL 2114997, at *8 (E.D. Mich. June 11, 2012) (holding that indirect plaintiffs' claims against defendants that did not plead guilty were too conclusory where they did not contain any allegations naming defendants individually, but denying defendants' motions to dismiss as to defendants that entered guilty pleas, even where there were no additional allegations that mentioned those defendants specifically by name); *Mich. Div. Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458, F. Supp. 2d 474, 485 (E.D. Mich. 2006) (dismissing claims in tying case where complaint was completely devoid of any factual allegations about any agreement among defendants and no factual allegations which specifically mentioned any of the defendants).

attempts to downplay these facts by claiming that it is not mentioned in the cease and desist orders of the JFTC.  DENSO Mem. at 6-7, n.5 & n.6.  This argument is meritless.

Courts have repeatedly found that allegations regarding criminal investigations bolster allegations of a conspiracy in civil litigation.  *See, e.g., Packaged Ice*, 723 F. Supp. 2d at 1008-09; *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 324 (2d Cir. 2010) (when considered with other allegations, pending government investigations can enhance plausibility of illegal conduct); *see also Hinds Cnty. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 393-98 (S.D.N.Y. 2010) (pending government investigations can be used to bolster the plausibility of plaintiffs' claims); *In re Flat Glass Antitrust Litig. II*, No. 08-mc-180, 2009 WL 331361, at *2-3 (W.D. Pa. Feb. 11, 2009) (fact that one of the defendants was not a participant in a European conspiracy referred to in complaint did not provide basis for dismissal of that defendant where other allegations plausibly suggested defendant was part of U.S. conspiracy); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 576 (M.D. Pa. 2009) (defendants' alleged conduct in Canada enhanced plausibility of the alleged U.S. price-fixing conspiracy).  Here, the facts regarding other criminal investigations and foreign prosecution of Defendants only lend further plausibility to EPPs' claims against DENSO.

### 4.    Allegations regarding DENSO's participation in trade associations

DENSO also implies that allegations regarding its participation in trade associations cannot lend support to EPPs' claims.  DENSO Mem. at 4.  However, allegations of opportunities to collude, taken with other allegations, can certainly bolster the plausibility of a complaint, particularly in cases where there are also numerous guilty pleas.  *See Packaged Ice*, 723 F. Supp. 2d at 1016 (citing *Flat Glass II*, 2009 WL 331361, at *3) (When viewed in the context of the allegations of the CAC as a whole, … "'opportunities' bolster the plausibility of a conspiracy and 'attendance at said meetings would be easily ascertained through discovery such

10

that there is a reasonable expectation that discovery may reveal evidence of the alleged illegal conduct.'").

### 5. Allegations regarding industry market share

DENSO argues that because the charts offered by EPPs regarding overall market share positions in the AWHS market do not mention it specifically, the charts cannot be used to support EPPs' claims against it. DENSO Mem. at 4. This argument too is meritless. The charts are intended to paint the larger picture regarding the economic backdrop of the AWHS market. *Id.* at 1014 (citing *Standard Iron*, 639 F. Supp. 2d at 883) (economic factors which make a market susceptible to collusion support inference of conspiracy). The fact that DENSO may be referred to within the "others" line item in the charts or whether it had a smaller market share than other Defendants does not make EPPs' claims against DENSO any less viable.[7]

DENSO's reliance on *United States v. Sargent*, 785 F.2d 1123, 1127 (3d Cir. 1986), is unavailing. *Sargent* merely stands for the unremarkable proposition that a horizontal conspiracy can only occur among competitors or potential competitors in a given market. *Id.* DENSO appears to contend that because it is not mentioned in the charts in the EP CCAC by name, it somehow was not a competitor in the AWHS market. DENSO Mem. at 4. However, DENSO ignores EPP's clear allegations that DENSO was a participant in the market for AWHS. More importantly, DENSO's plea agreement confirms that during the period January 2000 to at least February 2010, DENSO's "sales of ECUs affecting a U.S. automobile manufacturer totaled approximately $237 million." DENSO Mem. at Ex. D ¶¶ 2-4. In sum, the charts do not detract from EPPs' allegations regarding DENSO's participation in the alleged conspiracy.

---

[7] Of course, even if it is ultimately determined that DENSO has a smaller market share or is only a bit player in the alleged conspiracy, it can still be held jointly liable for the total conspiracy alleged. *See American Tobacco Co. v. United States*, 147 F.2d 93, 107, 119 (6th Cir. 1945), *aff'd*, 328 U.S. 781 (1946). EPPs will not ultimately have to prove, much less plead, that DENSO participated in each and every act or aspect of the conspiracy alleged to establish liability. *See id.*

C.      **EPPs Sufficiently Allege That They Suffered Injury**

DENSO claims that EPPs cannot base claims of injury on its guilty plea because it only admitted harm to one auto manufacturer and does not address any claims in the "aftermarket." DENSO Mem. at 8-9.  But, for the reasons detailed above, DENSO's guilty plea does not define EPPs' claims here.  The EP CCAC alleges a conspiracy that harmed all EPPs and those allegations must be taken as true.

DENSO further argues that EPPs do not allege injury with enough specificity to meet *Twombly's* requirements.  *Id.*  However, it is well-settled that at the pleading stage, general factual allegations of injury resulting from defendants' conduct more than suffice.  *See In re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 WL 6178891, at \*11 (E.D. Mich. Dec. 12, 2011) (indirect purchasers' injury allegations sufficient at pleading stage, where they alleged that they purchased packaged ice and suffered injury in certain defined states whose class members they sought to represent); *see also In re Optical Disk Drive Antitrust Litig.*, No. 10-md-143, 2012 WL 1366718, at \*4 n.9 (N.D. Cal. Apr. 19, 2012) (court rejected defendants' argument that named plaintiffs' purchases were too vague to determine what kind of products they purchased; at pleading stage, indirect purchasers' allegations were sufficient where they alleged a pass-through of the alleged overcharges).

To sufficiently allege injury at the pleading stage, EPPs must only allege that they:  (1) suffered or imminently will suffer injury; (2) the injury is fairly traceable to the conduct of the defendants; and (3) a favorable federal court decision is likely to redress the injury.  *Hinds*, 700 F. Supp. 2d at 392-93;  As the Court noted in *Hinds*, "[t]his standard must be further amplified in antitrust conspiracy cases, where specific details regarding the injury suffered by an individual plaintiff may not be ascertainable until after discovery."  *Id.* at 393 (internal citations omitted).

12

Here, EPPs have provided sufficient allegations that they have suffered injury as a result of Defendants' conduct.  EP CCAC ¶¶ 198-202.  EPPs have traced that injury to Defendants' conduct, thoroughly explaining how the overcharges in the AWHS market were directly passed on to consumers, and EPPs' claims can be redressed through this lawsuit.  *Id.*  Nothing more is required.

**III.**     **CONCLUSION**

Taken together, the allegations of DENSO's guilty plea and the other allegations in the EP CCAC are more than sufficient to plausibly suggest DENSO's participation in the conspiracy alleged.  The EP CCAC also sufficiently alleges injury.  Accordingly, DENSO's motion to dismiss the EP CCAC should be denied.

Dated:  September 11, 2012            **COTCHETT, PITRE & McCARTHY, LLP**

By   */s/ Frank C. Damrell*
Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com

**LABATON SUCHAROW LLP**

By  _/s/ Hollis Salzman_
Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

**SUSMAN GODFREY L.L.P.**

By  _/s/ Marc M. Seltzer_
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Interim Co-Lead Counsel for End-Payor Plaintiffs*

14

**THE MILLER LAW FIRM, P.C.**

By   */s/ E. Powell Miller*
E. Powell Miller (P39487)
Adam T. Schnatz (72049)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

*Interim Liaison Counsel for End-Payor Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS SYSTEMS CASES** | |
| **THIS RELATES TO:** | |
| **ALL END-PAYOR ACTIONS** | W:12-cv-00103-MOB-MKM |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2012 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all filing users indicated on the Electronic Notice List through the Court's electronic filing system.  I also certify that I will serve copies via First Class U.S. Mail upon all other parties indicated on the Manual Notice List.

Respectfully submitted,

*/s/ Adam T. Schnatz*
Adam T. Schnatz (P72049)
The Miller Law Firm, P.C.
950 W. University Drive, Ste. 300
Rochester, MI 48307
(248) 841-2200
ats@millerlawpc.com