# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | : : : : | W:12-cv-00102-MOB-MKM; W:12-cv-00103-MOB-MKM |
| THIS DOCUMENT RELATES TO: | : : : | **Oral Argument Requested** |
| All Automobile Dealer Actions All End-Payor Actions | : : | |

## END-PAYOR AND AUTO-DEALER PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' COLLECTIVE MOTION TO DISMISS

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the Auto Dealers' and End-Payors' Complaints allege more than a "formulaic recitation of the elements of a cause of action," and "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), where the Complaints allege:

- Many of the Defendants and their executives pleaded guilty to DOJ criminal antitrust violations;

- DOJ has issued record fines for collusive behavior in the Automotive Wire Harness Systems and related products industry;

- Additional Defendants were investigated, fined and issued cease and desist orders by foreign competition authorities;

- A market structure conducive to collusion;

- Rising AWHS prices despite steady input costs; and

- Opportunities for collusion.

2. Whether Rule 8 and *Twombly* require detailed factual allegations regarding the mechanics of "pass-through" for purposes of establishing injury-in-fact and Article III constitutional standing?

3. Whether the plain language of statutes in North Dakota, Vermont, Hawaii, Maine, South Carolina, the District of Columbia and Montana require in-state residency for purposes of bringing an antitrust claim?

4. Whether class certification is "logically antecedent" to issues of standing under state statutes?

5. Whether the federal *AGC* standing analysis applies to state *Illinois Brick* repealer statutes where the issues that motivated *AGC* in the federal context do not apply to state repealer statutes?

6. Whether Plaintiffs' Complaints satisfy *AGC* for those states that require such an analysis?

7. Whether indirect purchasers can state claims under Massachusetts and Missouri law?

8. Whether it is appropriate to permit piecemeal adjudication under Rule 12 to limit claims arising from Hawaii, Nebraska, New Hampshire and Utah?

9. Whether courts have expressly held that damages for price-fixing conduct in Hawaii and Nebraska can be recovered prior to 2002?

10.     Whether Plaintiffs' Complaints allege a sufficient nexus between Defendants' conduct and intrastate commerce for nine states' antitrust statutes?

11.     Whether *Shady Grove* permits Plaintiffs to bring class claims in federal court for a number of state statutes?

12.     Whether consumer protection claims based on price-fixing conduct that do not sound in fraud must meet Rule 9(b)'s particularity requirement?

13.     Whether Plaintiffs have stated claims under the consumer protection statutes of five states alleged by Defendants to require "unconscionable" conduct?

14.     Whether price-fixing is actionable conduct under several states' consumer protection statutes?

15.     Whether Plaintiffs have adequately alleged standing under New York's consumer protection statute where the Complaints allege that Defendants engaged in a price-fixing conspiracy and concealed their wrongful conduct?

16.     Whether Plaintiffs have sufficiently alleged a nexus between Defendants' conduct and intrastate commerce under five states' consumer protection statutes where the Complaints allege effects of the conspiracy on each state's commerce and that the conspiracy caused supra-competitive prices nationwide?

17.     Whether the Auto Dealer Plaintiffs, as businesses, may bring claims under seven state consumer protection statutes?

18.     Whether the *AGC* standing analysis applies to four states' consumer protection claims?

19.     Whether the Auto Dealer Plaintiffs have adequately identified the states in which they bring unjust enrichment claims where the Complaint specifically states that it is brought in the 31 states permitting indirect purchaser suits?

20.     Whether Plaintiffs may bring an unjust enrichment claim for states that do not permit indirect purchaser suits under antitrust or consumer protection statutes?

21.     Whether Plaintiffs may bring an unjust enrichment claim for states that do permit indirect purchaser suits under antitrust or consumer protection statutes?

22.     Whether the doctrine of unjust enrichment requires Plaintiffs to seek rescission of their contracts where the Restatement of Restitution permits recovery of money instead?

23.     Whether Plaintiffs may maintain unjust enrichment claims under the laws of several states where there was no contractual privity with Defendants?

24.     Whether Plaintiffs' unjust enrichment claims from Arizona, South Carolina, Tennessee and West Virginia are adequately alleged?

25.     Whether Plaintiffs have stated a claim for injunctive relief where there is a significant risk of conspiratorial conduct continuing without the availability of injunctive relief?

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1.  **Plausibility of Complaint under *Twombly***

    - *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
    - *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962)
    - *In re Packaged Ice Antitrust Litig.,* 723 F.Supp.2d 987 (E.D. Mich. 2010)
    - Fed. R. Civ. Proc. 8

2.  **Article III Constitutional Standing**

    - *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
    - *Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 WL 4000546 (W.D. Ky. August 25, 2008)
    - *D.R. Ward Const. Co. v. Rohm and Haas Co.*, 470 F.Supp.2d 485 (E.D. Pa. 2006)
    - *In re Processed Egg Products Antitrust Litig.*, Case No. 8-md-02002, 2012 WL 935669 (E.D. Pa. Mar. 20, 2012)
    - *Hovering v. Transnation Title Ins. Co.*, 545 F.Supp.2d 662 (E.D. Mich. 2008);
    - *In re Polyurethane Form Antitrust Litig.,* 799 F.Supp.2d 777 (N.D. Oh. 2011);
    - *Fallick v. Nationwide Insurance Mutual Co.*, 162 F.3d 410 (6th Cir. 1998)
    - Haw. Rev. State § 480-13
    - Me. Rev. Stat. tit. 10, § 1104
    - S.C. Code § 39-3-30
    - D.C. Code § 28-4503
    - M.C.A. § 30-14-102 through 103.

3.  **Standing Under State Antitrust Statutes and *AGC***

    - *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983)
    - *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)
    - *Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007)

4.  **Ability to Recover Damages under State Antitrust Statutes**

    - *In re Static Random Access Memory Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010)
    - *In re TFT-LCD (Flat Panel) Antitrust Litig.,* M 07-1827 SI, 2011 WL 3738985 (N.D. Cal. Aug. 24, 2011)
    - Fed. R. Civ. Proc. 12
    - Fed. R. Civ. Proc. 56

5.      **Nexus Between Conduct and Intrastate Commerce**

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F.Supp.2d 1179 (N.D. Cal. 2009)
- *In re Graphics Processing Units Antitrust Litig.*, 540 F.Supp.2d 1085 (N.D. Cal. 2007)

6.      **Maintaining Class Claims under Substantive State Law**

- *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010)
- Fed. R. Civ. Proc. 23

7.      **Whether Unconscionable Conduct Needs to be Alleged or Has Adequately Been Alleged**

- *District Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714 (D.C. 2003)
- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F.Supp.2d 1179 (N.D. Cal. 2009)
- *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42 (4th Cir. 1983)
- *Independence City v. Pfizer, Inc.*, 534 F.Supp.2d 882 (E.D. Ark. 2008)
- *In re Flash Memory Antitrust Litig.*, 643 F.Supp.2d 1133 (N.D. Cal. 2009)

8.      **Allegations of Price-Fixing Conduct State Claims under Consumer Protection Statutes**

- *In re Processed Egg Products Antitrust Litig.*, Case No. 8-md-02002, 2012 WL 935669 (E.D. Pa. Mar. 20, 2012)
- *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)

9.      **Standing Under New York Consumer Protection Statute**

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109 (N.D. Cal. 2008).

10.     **Whether Auto Dealer Plaintiffs May Bring Claims as Businesses under Certain State Statutes**

- *PA Employee Benefit Trust Fund v. Zeneca, Inc.,* 710 F.Supp.2d 458 (D. Del. 2010)
- *Ciardi v. F. Hoffmann-La Roche*, *Ltd. ,* 436 Mass 53 (2002)
- Mo. Rev. Stat. § 407.025(1)
- Mont. Code Ann. §§ 30-14-102; 30-14-133

11.     **Maintaining Unjust Enrichment Claims**

- *In re Digital Music Antitrust Litig.*, 812 F.Supp.2d 390 (S.D.N.Y. 2011)
- *In re Processed Egg Products Antitrust Litig.*, Case No. 8-md-02002, 2012 WL 935669 (E.D. Pa. Mar. 20, 2012)
- Restatement (Third) of Restitution and Unjust Enrichment § 4(2) (2011)

**12.     Injunctive Relief**

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010).
- *In re Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009)

*** Like Defendants, Plaintiffs also include additional authorities as Exhibits to this Motion.

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ........................................................................ i

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.      THE COMPLAINTS PLAUSIBLY PLEAD A CONSPIRACY ....................................... 3

      A.     Standard of Review ........................................................................................... 3

      B.     The Guilty Pleas of Five Defendants Support the Allegations ............................. 4

      C.     The Factual Allegations and their Reasonable Inferences Establish Linkage Between the Conspiracy and Plaintiffs .................................................................. 5

      D.     Detailed Factual Allegations as to Each Defendant Are Not Required ................. 6

II.     PLAINTIFFS HAVE ADEQUATELY ALLEGED CONSTITUTIONAL STANDING ... 7

      A.     Well-Settled Authorities Support Plaintiffs ......................................................... 7

      B.     Plaintiffs May Bring Claims Under the Laws of Various States Where No Named Plaintiff Resides ............................................................................... 9

            1.     None of the States Cited by Defendants Require In-State Residency ........ 9

            2.     Class Certification is "Logically Antecedent" to Questions of Article III Standing under State Laws ...................................................... 11

III.    THE COMPLAINTS ADEQUATELY STATE CLAIMS UNDER VARIOUS STATE ANTITRUST STATUTES ............................................................................................ 13

      A.     *AGC* Provides No Basis for Dismissal of Plaintiffs' Claims .............................. 13

            1.     Antitrust Standing Under State Law ...................................................... 13

             2.     Application of the *AGC* Factors Supports Antitrust Standing ................. 15

      B.     Plaintiffs' Claims Under Massachusetts' and Missouri's Antitrust Laws............. 17

      C.     Plaintiffs Have Stated Antitrust Claims Under the Laws of Hawaii, Nebraska, New Hampshire, and Utah .................................................................................. 17

D.      Plaintiffs Allege A Sufficient Nexus Between Defendants' Conduct and the Commerce of the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, and West Virginia................................ 18

E.      AD Plaintiffs May Maintain an Antitrust Claim Under Illinois Law .................. 20

IV.     PLAINTIFFS HAVE SUFFICIENTLY PLEADED VALID CLAIMS UNDER VARIOUS STATE CONSUMER PROTECTION STATUTES ...................................... 21

A.      Plaintiffs' Consumer Protection Claims Need Not be Pleaded with Particularity.................................................................................................... 21

B.      Plaintiffs' Claims are Not Invalid for Failure to Allege "Unconscionable Conduct" ........................................................................................................... 21

C.      Defendants' Price-Fixing Conduct Violates State Consumer Protection Statutes ............................................................................................ 23

D.      EP Plaintiffs' Allegations Support Standing Under New York's Consumer Protection Law ................................................................................................. 25

E.      Plaintiffs Have Alleged a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce ................................................................................. 25

F.      The AD Consolidated Class Complaint Successfully Alleges Consumer Protection Claims Under the Laws of Massachusetts, Montana, and Missouri.... 27

G.      Plaintiffs Have Standing to Assert the Consumer Protection Claims.................. 29

H.      Plaintiffs Have Standing to Assert Class Claims Under the Consumer Protection Laws of Kansas, Montana, and South Carolina .................................. 30

V.      PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT ARE VALID.......................... 32

A.      AD Plaintiffs Have Sufficiently Pleaded Unjust Enrichment Claims ................. 32

B.      Plaintiffs' Unjust Enrichment Claims are Proper ................................................. 32

1.      Defendants' Failed Theories Argument Lacks Merit ............................... 32

2.      Plaintiffs Are Not Circumventing State Laws ........................................ 323

C.      Defendants' "Benefit of the Bargain" Argument is Incorrect ............................. 35

D.      Plaintiffs Need Not Deal Directly with Defendants In Order to State a Claim for Unjust Enrichment.................................................................................... 36

     E.     Defendants' Miscellaneous Attacks on Certain Unjust Enrichment Claims Lack Merit.................................................................................................................. 36

VI.     PLAINTIFFS HAVE PLEADED FACTS THAT PLAUSIBLY ESTABLISH THE SIGNIFICANT POSSIBILITY OF FUTURE HARM ENTITLING THEM TO INJUNCTIVE RELIEF...................................................................................... 39

CONCLUSION............................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Supply Co. v. Microsoft Corp.,*
  654 N.W.2d 572 (2002) .................................................................................. 9

*Arkansas ex rel. Bryant v. R & A Inv. Co.,*
  985 S.W.2d 299 (Ark. 1999).................................................................... 23, 24

*Arthur v. Microsoft Corp.,*
  676 N.W.2d 29 (Neb. 2004)..................................................................... 18, 33

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).......................................................................................... 4

*Associated General Contractors of California, Inc. v.
California State Council of Carpenters,*
  459 U.S. 519 (1983).............................................................................. *passim*

*Baptist Health v. Murphy,*
  226 S.W.3d 800 (2006)............................................................................ 24, 30

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).......................................................................... i, 3, 4, 7

*Blue Cross of Cent. New York, Inc. v. Wheeler,*
  461 N.Y.S.2d 624 (N.Y. App. Div. 1983) ...................................................... 33

*Booker v. City of Detroit,*
  492 Mich. 892,
  668 N.W.2d 623 (2003) ................................................................... 17, 31, 33

*Braden v. Wal–Mart Stores, Inc.,*
  588 F.3d 585 (8th Cir.2009) ............................................................................ 9

*Burton v. Micron Tech, Inc.,*
  Case No. CV 2004-226-1 (Cir. Ct. 1st Div. Nov. 6, 2009) ......................... 24, 25

*California v. Arc America Corp.*,
    490 U.S. 93 (1989) .................................................................................................. 14, 17

*California v. Infineon Tech. AG*,
    531 F. Supp. 2d 1124 (N.D. Cal. 2007) ........................................................................ 24

*Carrier Corp.  v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir 2012) ......................................................................................... 4

*Carter v. Gugliuzzi*,
    168 Vt. 48 (1998) ........................................................................................................ 29

*Cason-Merenda v. Detroit Medical Center*,
    No. 06-15601, 2008 WL 880286 (E.D. Mich. March 31, 2008) ....................................... 7

*Chattanooga Foundry & Pipe Works v. City of Atlanta*,
    203 U.S. 390 (1906) ...................................................................................................... 8

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
    436 Mass. 53 (2002) .............................................................................................. 28, 34

*City of Oakland v. City of Detroit*,
    866 F.2d 839 (6th Cir. 1989) ......................................................................................... 8

*Cole v. Gen. Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007) .......................................................................................... 9

*Committee for Immigrant Rights of Sonoma County v. County of Sonoma*,
    No. C 08-4220 RS, 2010 WL 2465030 (N.D.Cal. June 11, 2010) .................................... 6

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962)....................................................................................................... 4

*Cox v. Microsoft Corp.*,
    8 A.D.3d 39 N.Y.S.2d 147 (2004) ...................................................................... 25, 37, 38

*Curtis Lumber Co. v. La. Pacific Corp.*,
    618 F.3d 762 (8th Cir. 2010) ........................................................................................ 22

*D.R. Ward Const. Co. v. Rohm and Haas Co.*,
  470 F.Supp.2d 485 (E.D. Pa. 2006) ...................................................................... 8, 13, 17

*Dew v. Langford*,
  666 So. 2d 739 (Miss. 1995) ................................................................................... 38

*DirecTV, Inc. v. Treesh*,
  487 F.3d 471 (6th Cir. 2007) .................................................................................... 3

*District Cablevision Ltd. Partnership v. Bassin*,
  828 A.2d 714 (D.C. 2003) ....................................................................................... 21

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ................................................................................................... 13

*Fallick v. Nationwide Insurance Mutual Co.*,
  162 F.3d 410 (6th Cir. 1998) ................................................................................... 12

*Food Parade, Inc. v. Office of Consumer Affairs of County of Nassau*,
  7 N.Y.3d 568 (2006) ................................................................................................ 29

*Fucile v. Visa U.S.A., Inc.*,
  2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ................................................ 29

*Galstaldi v. Sunvest Communities USA, LLC*,
  637 F. Supp. 2d 1045 (S.D. Fla. 2009) ................................................................... 21

*Ghirardo v. Antonioli*,
  924 P.2d 996 (Cal. 1996) ......................................................................................... 38

*Hovering v. Transnation Title Ins. Co.*,
  545 F.Supp.2d 662 (E.D. Mich. 2008) ................................................................ 11, 12

*Howe v. Microsoft Corp.*,
  656 N.W.2d 285 (N.D. 2003) ................................................................................... 33

*Hyland v. Homeservices of Am., Inc.*
  Case No. 3:05-CV-612-R, 2008 WL 4000546 (W.D. Ky. August 25, 2008).................... 8

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ................................................................... 14, 15, 17, 34

*In re Aftermarket Filters Antitrust Litig.*,
    2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ............................................ passim

*In re Canon Cameras Litig.*,
    No. 05-7233, 2006 WL 1751245 (S.D.N.Y., June 23, 2006) ......................... 38

*In re Cardizem CD Antitrust Litig.*,
    105 F. Supp. 618 (E.D. Mich. 2000) ............................................................ 36

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F.Supp.2d 538 (M.D. Pa. 2009) ............................................ 10, 11, 23, 24

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ................................................ 26, 28, 33

*In re Don's Making Money, LLP*,
    No. 99-7757, 2007 WL 2784351 (D. Ariz. Bkrtcy. Sept. 24, 2007) .............. 36

*In re DRAM Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................. 24, 25

*In re Flash Memory Antitrust Litigation*,
    643 F.Supp.2d 1133 (N.D. Cal. 2009) ................................................ 23, 24, 30

*In re Flat Panel Antitrust Litig.*,
    599 F.Supp.2d 1179 (N.D.Cal.2009) ..................................................... 4, 18, 19

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ............................................................ 28

*In re Graphics Processing Units Antitrust Litig. ("GPU II")*,
    540 F.Supp.2d 1085, 1099 (N.D.Cal.2007) ................................................. 20

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008) ................................................................... 9

*In re High Fructose Corn Syrup Antitrust Litig.,*
    295 F.3d 651 (7th Cir. 2002) ............................................. 5

*In re Hypodermic Prods. Antitrust Litig.,*
    MDL No. 1730, 2007 WL 1959225 (D.N.J. Jun. 29, 2007) ............................. 12

*In re Intel Corp. Microprocessor Antitrust Litig.,*
    496 F.Supp.2d 404 (D. Del. 2007) ................................... 10, 17, 35

*In re K-Dur Antitrust Litig.,*
    338 F. Supp.2d 517 (D.N.J. 2004) ............................. 33, 34

*In re Linerboard Antitrust Litig.,*
    305 F.3d 145 (3d Cir. 2002); ............................... 16

*In re Magnesium Oxide Antitrust Litig.,*
    2011 WL 5008090, *FN 10 (D. N.J. 2011) ......................... 9

*In re Microsoft Corp. Antitrust Litig.,*
    401 F. Supp. 2d 461 (D. Md. 2005) ............................ 36

*In re New Motor Vehicles Can. Exp. Antitrust Litig.,*
    350 F.Supp.2d 160 (D. Me. 2004). ......................... *passim*

*In re Optical Disk Drive Antitrust Litig.,*
    2012 WL 1366718 (N.D. Cal. April 12, 2012) ................... 5, 31, 39

*In re OSB Antitrust Litig.,*
    No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) .................. 7

*In re Packaged Ice Antitrust Litig.,*
    723 F.Supp.2d 987 (E.D. Mich. 2010) ................... 4, 26, 32

*In re Polyurethane Antitrust Litig.,*
    799 F.Supp.2d 777 (N.D. Oh. 2011) ..................... 5, 6, 12

*In re Potash Antitrust Litig.,*
    667 F. Supp. 2d 907 (N.D. Ill. 2009) ...................... 15

*In re Processed Egg Products Antitrust Litig.,*
    851 F.Supp.2d 867 (E.D. Pa. 2012) ................................................................ *passim*

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
    587 F.Supp.2d 27, FN 4 (D.D.C. 2008) ........................................................... 4

*In re Relafen Antitrust Litig.,*
    221 F.R.D. 260 (D.Mass. 2004) ....................................................................... 12

*In re Southeastern Milk Antitrust Litig.,*
    555 F. Supp. 2d 934 (E.D. Tenn. 2008) ........................................................... 4

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    264 F.R.D. 603 (N.D. Cal. 2009) ................................................... 9, 18, 23, 39

*In re Sugar Indus. Antitrust Litig.,*
    579 F.2d 13 (3d Cir. 1978) ............................................................................... 16

*In re Terazosin Hydrochloride Antitrust Litig.,*
    220 F.R.D 672 (S.D. Fla. 2004) ...................................................................... 38

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    Case No. M 07-1827-SI, 2012 WL 253298, FN 2 (N.D. Cal. Jan. 26, 2012) ........... *passim*

*In re TJX Cos. Retail Sec. Breach Litig.,*
    564 F.3d 489 (1st Cir. 2009) ........................................................................... 28

*In re Vitamins Antitrust Litig.,*
    2000 WL 1475705 (D.D.C. May 9, 2000) ....................................................... 5

*In re Warfarin Sodium Antitrust Litig.,*
    214 F.3d 395 (3d Cir. 2000) ............................................................................. 15

*In re: Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.,*
    495 F. Supp. 2d 1027 (N.D. Cal. 2007). .......................................................... 27

*Independence Cty. v. Pfizer, Inc.*,
    534 F. Supp.2d 882 (E.D. Ark. 2008),
    *aff'd* 552 F.3d 659 (8th Cir. 2009) ..................................................... 22, 29, 30

*ITCO Corp. v. Michelin Tire Corp.*,
　　722 F.2d 42 (4th Cir. 1983)
　　*a*ff'd on rehearing, 742 F.2d 170 (4th Cir.1984) ............................................................ 22

*Kanne v. Visa U.S.A. Inc.,*
　　723 N.W.2d 293 (Neb. 2006) ........................................................................................ 14

*Karofsky v. Abbott Labs.,*
　　Case No. CV-95-1009, 1997 WL 34504652 (Me. Super. Ct. Oct. 16, 1997) .................... 9

*Kaufman v. Sirius XM Radio, Inc.*,
　　No. 11-121, 2012 WL 1109397 (2d Cir. April 4, 2012) .................................................. 26

*Kersey v. Fernald*,
　　911 So.2d 994 (Miss. App. 2005) .................................................................................... 38

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
　　232 F.3d 979 (9th Cir. 2000) .......................................................................................... 16

*Loeb Indus., Inc. v. Sumitomo Corp.,*
　　306 F.3d 469 (7th Cir. 2002). .......................................................................................... 8

*Lorix v. Crompton Corp.*,
　　736 N.W. 2d 619 (Minn. 2007) .................................................................. 14, 15, 16, 17

*Lucas Auto. Eng'g Inc. v. Bridgestone/Firestone, Inc.*,
　　140 F.3d 1228 (9th Cir. 1998). ...................................................................................... 39

*Lujan v. Defenders of Wildlife,*
　　504 U.S. 555 (1992) ........................................................................................................ 8

*Melton v. Carolina Power & Light Co.,*
　　No. 11-270, 2012 WL 2401635 (D.S.C. June 25, 2012) ................................................ 36

*Myrtle Beach Hospital, Inc. v. City of Myrtle Beach*,
　　532 S.E.2d 868 (S.C. 2000) ............................................................................................ 36

*Nelson v. Ho,*
　　564 N.W.2d 482 (Mich. Ct. App. 1997) ........................................................................ 27

*Novell, Inc. v. Microsoft Corp.*,
  505 F.3d 302 (4th Cir. 2007); ..................................................................... 16

*Olson v. Microsoft Corp.*,
  2001 ML 652 (1st Dist. Ct. Mont. 2001) ................................................... 33

*Osbourne v. Capital City Mortg. Corp.*,
  727 A.2d 322 (D.C. 1999) ......................................................................... 21

*Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*,
  710 F. Supp. 2d 458 (D. Del. 2010)........................................................... 27

*Parker v. Federal Exp. Corp.*,
  No. 09-15063, 2010 WL 2510984, (E.D. Mich. Jun. 17, 2010) ..................... 3

*Payton v. Cnty. of Kane*,
  308 F.3d 673 (7th Cir. 2002) ..................................................................... 11

*Perez v. RadioShack Corp.*,
  No. 01-5095-CIV-SEITZ, 2002 WL 1335158 (S.D. Fla. Apr. 23, 2002). ........ 3

*Pitts v. Jackson National Life Ins. Co.*,
  574 S.E.2d 502 (S.C. App. 2002) .............................................................. 37

*Rainbow Chevrolet, Inc. d/b/a Cutter Chevrolet, Inc. v. Denso International et al.*,
  2:12cv12526 (E.D. Mich) .......................................................................... 10

*Realmark Devs., Inc. v. Ranson*,
  542 S.E.2d 880 (W.Va. 2000)..................................................................... 37

*Rohm & Haas Co.*,
  470 F. Supp. 2d 485 (E.D. Pa. 2006) ......................................................... 13

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*,
  130 S. Ct. 1431 (U.S. 2010)........................................................... 20, 30, 31

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
  737 F.Supp.2d 380 (E.D. Pa. 2010) ........................................................... 37

*Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.,*
   Case No. 07-5205, 2008 WL 3833577 (D.N.J. Aug. 13, 2008) ....................................... 11

*Slobin v. Henry Ford Health Care,*
   666 N.W.2d 632 (Mich. 2003) ........................................................................................... 27

*Southard v. Visa U.S.A. Inc.,*
   734 N.W.2d 192 (Iowa 2007) ............................................................................................ 14

*Sperry v. Compton Corp.,*
   863 N.E.2d 1012 (N.Y. 2007) ........................................................................................... 37

*Stanislaus Food Products Co. v. USS-POSCO Indus.,*
   782 F. Supp. 2d 1059 (E.D. Cal. 2011) ............................................................................ 16

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.,*
   840 N.Y.S. 2d 8 (N.Y. App. Div. 2007) ........................................................................... 29

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ............................................................................................................... 7

*Teague v. Bayer AG,*
   671 S.E.2d 550 (N.C. Ct. App. 2009) ............................................................................... 33

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ............................................................................................................. 4

*Total Benefits Planning Agency Inc., v. Anthem Blue Cross and Blue Shield et al.,*
   552 F.3d 430 (6th Cir. 2008) .............................................................................................. 5

*Trustmark Ins. Co. v. Bank One, Arizona, NA,*
   48 P.3d 485 (Ariz. App. 2002) .......................................................................................... 36

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ............................................................................................................. 7

*Wilder v. JP Morgan Chase Bank, N.A.*
   No. 09-834, 2009 U.S. Dist. LEXIS 124242 (C.D. Cal. Nov. 25, 2009) .......................... 39

*Williams Elecs. Games, Inc. v. Garrity*,
   366 F.3d 569 (7th Cir. 2004) (Posner, J.) ........................................................ 32

*Williams v. Wells Fargo Bank, N.A.*,
   No. 11-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ........................................... 36

*Wilner v. Allstate Ins. Co.*,
   893 N.Y.S.2d 208 (2010) ................................................................................ 29

## **STATUTES**

28 U.S.C. §1332(d) ........................................................................................ 13

Fed. R. Civ. P.

   Rule 8(d) .............................................................................................. 36

   Rule 9(b) .............................................................................................. 21

   Rule 23 ............................................................................................. passim

   Rule 56(a) ............................................................................................. 18

   Rule 56(d)(1) .......................................................................................... 18

Ark. Code. Ann. § 4-88-107(a) ............................................................................. 24

D.C. Code § 28-4503 ....................................................................................... 10

Fla. Stat. § 501.204(1) ................................................................................... 21

Haw. Rev. Stat.

   §480-2 ................................................................................................ 18

   §480–4 ................................................................................................ 18

   § 480-4(a) ............................................................................................ 10

   §480-13.3 ............................................................................................. 10

/ / /

M.C.A.

§ 30-14-102 ............................................................................................................... 11

§ 30-14-103 ............................................................................................................... 11

Mass. Gen. Laws Ann. ch. 93, §§ 1, *et seq.* ................................................................ 17

ME. Rev. Stat. tit. 10, § 1104(1) .................................................................................. 10

Miss. Code Ann. § 75-21-9 ........................................................................................... 33

Mo. Rev. Stat. § 407.025(1) (2011) .............................................................................. 27

Mont. Code Ann.

§ 30-14-102(1) ........................................................................................................... 28

§§ 30-14-103, *et seq.* ............................................................................................... 30

§§ 30-14-133(1) ......................................................................................................... 28

§§ 30-14-201, *et seq.* ............................................................................................... 31

Oregon Rev. Stat. § 646.780(1)(a) ............................................................................... 33

Restatement (Third) of Restitution and Unjust Enrichment, § 4(2) (2011) ................... 32

S.C. Code

§ 39-3-10 ................................................................................................................... 10

§ 39-3-30 ..................................................................................................................... 10

S.C. Code Ann. §  39-5-140(a) ..................................................................................... 31

Utah Code § 76-10-919(1) ...................................................................................... 11, 33

## **OTHER AUTHORITIES**

Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. e (2011) ............................ 35

Rules Enabling Act, 28 U.S.C. § 2072(b) ............................................................... 20, 31

## INTRODUCTION

Automobile Dealer Plaintiffs ("AD") and End-Payor Plaintiffs ("EP") (collectively "Plaintiffs") have properly pleaded claims for relief arising from Defendants' conspiracy to rig bids, fix prices, and allocate the market for Automotive Wire Harness Systems and related products ("AWHS"). This action arises from the same facts that have led to five guilty pleas for violating the Sherman Antitrust Act and the largest criminal antitrust fines and penalties in the history of that Act. Yet every Defendant in this action argues that Plaintiffs cannot state a claim. Defendants' arguments would render federal and state laws a nullity by erecting barriers to recovery that frustrate the purposes of the legislatures that passed these laws. Under the appropriate pleading standard, the Court should uphold Plaintiffs' Complaints.

## STATEMENT OF FACTS

In February of 2010, in a coordinated global investigation into the AWHS industry, the European Commission raided the offices of Defendants Leoni, S-Y Systems, Yazaki and Lear. EP Consolidated Amended Complaint ("CAC") ¶¶166-167; AD Consolidated Class Complaint ("CCC") ¶¶168-176. The Japanese Fair Trade Commission ("JFTC") raided the offices of Defendants Furukawa, Sumitomo and Yazaki. EP CAC ¶168; AD CCC ¶172. The JFTC's investigation led to cease and desist orders against Defendants Fujikura and Yazaki, and fines against Fujikura, Sumitomo and Yazaki. AD CCC ¶¶177-182. In addition to findings of guilt against Fujikura, Yazaki and Sumitomo, the JFTC also concluded that Furukawa participated in the conspiracy. *Id.*

DOJ's investigation began when the FBI conducted raids on the U.S. offices of Defendants Denso, Tokai Rika and a subsidiary of Yazaki. *Id.* On September 29, 2011, Defendant Furukawa agreed to plead guilty and to pay a $200 million fine. EP CAC ¶¶172-175;

AD CCC ¶¶183-216. Three Furukawa executives agreed to plead guilty. EP CAC ¶¶180-181; AD CCC 183-216. Defendant Yazaki agreed to plead guilty and pay a $470 million fine. EP CAC ¶182; AD CCC ¶¶197, 199. Four of its executives pleaded guilty. EP CAC ¶183; AD CCC ¶197. Defendant Denso agreed to plead guilty and pay a $78 million fine. EP CAC ¶184. Defendant G.S. Electech Inc. agreed to plead guilty and pay a $2.75 million fine. EP CAC ¶185; AD CCC ¶¶210, 213. Defendant Fujikura agreed to plead guilty and pay a $20 million fine. EP CAC ¶¶186-187; AD CCC ¶¶207, 209.

Plaintiffs allege a market structure conducive to an antitrust conspiracy. The market for AWHS products is highly concentrated: Defendant Yazaki controls 30% of the AWHS market and Defendant Sumitomo controls 24% of the market. EP CAC ¶¶143-150; AD CCC ¶¶164-165. Defendants collectively supply AWHS to Toyota, Chrysler, Ford, Nissan, Honda, General Motors, Isuzu, Mazda, Mitsubishi, Subaru, Volvo and BMW, among others. EP CAC ¶¶144-150; AD CCC ¶¶134, 142-144, 146, 148-150. The AHWS market is characterized by factors economists have found conducive to price fixing: high barriers to entry, an inelasticity of demand, a highly concentrated market and ample opportunities to conspire. EP CAC ¶¶154-163; AD CCC ¶¶156-167. Prices for AWHS continued to rise even though input costs remained steady – a sign of broad anticompetitive conduct in the industry.

///

///

**ARGUMENT**[1]

## I.    THE COMPLAINTS PLAUSIBLY PLEAD A CONSPIRACY

### A.    Standard of Review

Plaintiffs' Complaints are to be construed "in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff[s]." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).    The Complaints should be upheld unless "plaintiff[s] do[] not have a 'reasonably founded hope'" of making their case. *Parker v. Federal Exp. Corp.*, No. 09-15063, 2010 WL 2510984, at *2 (E.D. Mich. Jun. 17, 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) ("*Twombly*") (Cox, J.)).    The standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).    "*Twombly* did not purport to place on a plaintiff … a summary judgment standard at the pleading stage." *In re Packaged Ice Antitrust Litig.*, 723 F.Supp.2d 987, 1005 (E.D. Mich. 2010) ("*Packaged Ice*") (citing *In re Flat Panel Antitrust Litig.*, 599 F.Supp.2d 1179, 1184 (N.D.Cal.2009)).

"The court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007). This principle applies with particular force to price-fixing allegations. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).    Post-*Twombly* antitrust decisions have routinely rejected attempts to compartmentalize factual allegations and consider them piecemeal. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F.Supp.2d 27, 33, n. 4

---

[1]   Defendants incorporated by reference Section III of their Collective Motion to Dismiss the Direct Purchaser Actions into their brief regarding AD and EP Plaintiffs.  Plaintiffs incorporate by reference the arguments and authorities in the Direct Purchasers' brief in opposition.

(D.D.C. 2008) *("Rail Freight"); In re Southeastern Milk Antitrust Litig.,* 555 F. Supp. 2d 934, 943-44 (E.D. Tenn. 2008).

An antitrust conspiracy complaint need only "provide [d]efendants with fair notice of [p]laintiff's claims and the grounds on which they are based, such that these [d]efendants will know how to respond." *Packaged Ice,* 723 F.Supp.2d at 1017. Ultimately, Plaintiffs will need to specifically "identify the people who acted on behalf of the various defendants" in the conspiracy, but a plaintiff *"cannot* be expected to know or allege such details at this early stage of the case; [and] neither *Twombly* nor any case decided under that holding suggests otherwise." *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009).[2]

## B. The Guilty Pleas of Five Defendants Support the Allegations

Defendants ask the Court to dismiss the Complaints because Plaintiffs' allegations of an overarching conspiracy rely on the guilty pleas of five Defendants – Furukawa, Yazaki, Denso, G.S. Electech Inc. and Fujikura Ltd. They further argue that Plaintiffs' Complaints lack plausibility because those negotiated pleas admit a narrower conspiracy. Courts have repeatedly rejected this approach. *See*, *e.g.*, *Packaged Ice,* 723 F.Supp.2d at 1009-1010; *In re Optical Disk Drive Antitrust Litig.,* 2012 WL 1366718 (N.D. Cal. April 12, 2012); *In re Vitamins Antitrust Litig.*, 2000 WL 1475705, *11 (D.D.C. May 9, 2000); *In re High Fructose Corn Syrup Antitrust*

---

[2] Defendants reliance on *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir 2012) does not support dismissal of Plaintiffs' complaints. In *Carrier Corp.*, the Sixth Circuit *reversed* the district court's decision that plaintiffs had not plausibly alleged a conspiracy based merely upon allegations of the European Commission's findings, which confined the conspiracy to the European market. In *Carrier Corp.*, the Sixth Circuit relied on its previous holding in *Total Benefits Planning Agency Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430 (6th Cir. 2008), which dismissed a "rule of reason" conspiracy because of an utter lack of factual detail. Plaintiffs' Complaints in this case do not suffer from the same lack of allegations at issue in *Total Benefits* or *Twombly*.

*Litig.*, 295 F.3d 651, 664-65 (7th Cir. 2002); *In re Polypropylene Carpet Antitrust Lit.*, 178 F.R.D. 603, 620 (N.D. Ga. 1997) ("*Polypropylene*").

EP Plaintiffs name <u>nine</u> Defendant families and AD Plaintiffs name <u>eight</u>. There are DOJ guilty pleas for *five* corporations who have agreed to pay $700 million in fines within those Defendant families. EP CAC ¶¶172-184. Additionally, Sumitomo has been fined and its offices were raided by the JFTC. EP CAC ¶168; AD CCC ¶¶172, 177. The European Commission is investigating Leoni, S-Y Systems, Yazaki and Lear. EP CAC ¶¶166-167; AD CCC ¶¶170-171.

Against this backdrop, Defendants claim that an overarching conspiracy to fix the prices of AHWS is implausible. The criminal pleas and the related allegations in the complaints here undeniably establish the existence of an antitrust conspiracy in the AWHS and related products industry. EP CAC at ¶¶142-150, AD CCC ¶¶168-216, EP CAC at ¶¶172-187, AD CCC ¶¶168-216; *see also*, Def. Exs. to Motion to Dismiss Directs CAC, Exs. A-D (Furukawa Plea); (Yazaki Plea); (Fujikura Plea); (Denso Plea); AD and EP Plaintiffs Ex. 1 (GS Electech Plea).[3] Defendants' Motion should be denied.

### C.   The Factual Allegations and their Reasonable Inferences Establish Linkage Between the Conspiracy and Plaintiffs

Defendants argue that there are no factual averments showing a link between the guilty pleas and Plaintiffs' injury claims. Plaintiffs are not required to set forth this level of proof in their Complaints. *See Twombly*, 550 U.S. at 544; *In re Polyurethane Antitrust Litig.*, 799

---

[3] The guilty pleas are not limited to distinct products and purchasers. Furukawa, Yazaki and Fujikura admitted that they manufactured and sold AWHS and many, if not all, of the related products to various "automobile manufacturers" rather than a single manufacturer. *See*, Def. Exs. to Motion to Dismiss Directs CAC, Exs. A-D (Furukawa Plea); (Yazaki Plea); (Fujikura Plea); (Denso Plea).

F.Supp.2d 777, 795 (N.D. Oh. 2011); *Committee for Immigrant Rights of Sonoma County v. County of Sonoma,* No. C 08-4220 RS, 2010 WL 2465030, at *4 (N.D.Cal. 2010).

Plaintiffs have pleaded a bid-rigging, price-fixing, and market allocation conspiracy. Plaintiffs have pleaded higher prices for AWHS were the intended purpose and natural result of Defendants' unlawful acts. Defendants control nearly 90% of the market (Yazaki alone controls nearly 30%), and sell AWHS and related products to Ford, Chrysler, GM, Toyota, Nissan, Honda, Isuzu, Mazda, Mitsubishi and Subaru, representing the vast majority of vehicles sold in the United States. EPP CAC ¶¶133-141; AD CCC ¶¶141-144. Plaintiffs have pleaded a plausible link between Defendants' conspiracy and the antitrust injury to Plaintiffs.

### D. Detailed Factual Allegations as to Each Defendant Are Not Required

Defendants argue that Plaintiffs' CAC and CCC should be dismissed because they "fail to allege any facts as to the role each of the over two dozen Defendants played in the purported conspiracy …". Def. Memo at 5. "[A]ntitrust conspiracy allegations need not be detailed defendant by defendant. Rather, an antitrust complaint should be viewed as a whole, and the plaintiff must allege that each individual defendant joined the conspiracy . . . ." *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, *5 (E.D. Pa. Aug. 3, 2007). This District recognizes *Twombly* does not require defendant-specific allegations. *See Cason-Merenda v. Detroit Medical Center*, No. 06-15601, 2008 WL 880286, at *2 (E.D. Mich. March 31, 2008).

Taking the CAC and CCC as a whole, Plaintiffs have sufficiently pleaded a common course of conduct between Defendants.[4] In addition to the allegations pertaining to the

---

[4] Defendants argue, Def. Mem., fn.2, that AD Plaintiffs violate Fed. R. Civ. P. 10(b) because Count II asserts claims under antitrust and consumer protection statutes. Fed. R. Civ. P. 10(b) states: "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." The claims in Count II involve the same occurrence—Defendants' inflation of the

Defendants who *did* plead guilty, Plaintiffs allege facts that apply to *all* Defendants.  Plaintiffs allege (1) across-the-board price increases despite steady costs – a sign of broad anticompetitive conduct in the AWHS market, EP CAC ¶¶151-153, AD CCC ¶¶152-155; (2) the AWHS market has high barriers to entry, EP CAC  ¶155-157, AD CCC ¶¶157-160; (3) inelasticity of demand, EP CAC ¶¶158-160, AD CCC ¶¶161-163; (4) the market is highly concentrated, EP CAC ¶¶161-162, AD CCC ¶164-165; and (5) Defendants had ample opportunity to conspire, EP CAC ¶163, AD CCC ¶¶166-167.  These allegations, along with the guilty pleas, are sufficient.

## II.     PLAINTIFFS HAVE ADEQUATELY ALLEGED CONSTITUTIONAL STANDING

### A.     Well-Settled Authorities Support Plaintiffs

Plaintiffs' allegations of injury-in-fact satisfy Article III standing.  Defendants cite no authority holding that indirect purchasers must allege the mechanics of pass-through to plead injury-in-fact and causation for purposes of constitutional standing.  Defendants confuse constitutional standing with proof of damages.  *See Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998).  A plaintiff adequately

---

prices of AWHS through their conspiracy.  Separation would only promote duplication. *Compare Perez v. RadioShack Corp.*, No. 01-5095-CIV-SEITZ, 2002 WL 1335158, at *2 (S.D. Fla. Apr. 23, 2002).  Defendants' Ex. NN (disparate factual allegations concerning different legal theories of failure to supervise and discrimination improperly alleged together in one count). Contrary to Defendants' assertion, Plaintiffs' citations to the early sections of 15 states' antitrust statutes demonstrate reliance on the antitrust statues, *see e.g., ¶*261, (the 16th is a consumer protection statute) just as citations to the initial sections of certain states' consumer protection statutes demonstrate reliance on states' consumer protection statutes, *see e.g., ¶*275.  Defendants' claim that the use of the term "*et seq*" warrants dismissal of AD Plaintiffs' claims is completely disingenuous.  The only two citations that are not as clear as AD Plaintiffs would have liked are those to Hawaii Revised Statutes Annotated ¶¶480-1 *et seq.,* where there the section concerning consumer protection occurs prior to the section concerning restraints on competition, despite Part I of the chapter being identified as "Antitrust Provisions" and Vermont Statutes Annotated §§ 2453 *et seq.,* where both the consumer protection and antitrust causes of action are mentioned in the cited first section.  AD Plaintiffs clarify here that they assert antitrust claims under both sections.

pleads injury-in-fact through allegations that she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). General factual allegations of injury are sufficient to establish constitutional standing. *See Lujan* 504 U.S. at 561. Plaintiffs' allegations meet that test. *See, e.g.,* EP CAC ¶¶5, 9, 176, 141, 201-202, 226(b)(c); AD CCC ¶¶5, 191(f), 139, 228(b)-(c), 214, 12. Plaintiffs' allegations that they paid more for their vehicles and AWHS *but for* Defendants' unlawful conspiracy is consistent with Sixth Circuit authority. *See City of Oakland v. City of Detroit,* 866 F.2d 839, 845 (6th Cir. 1989), *quoting Chattanooga Foundry & Pipe Works v. City of Atlanta,* 203 U.S. 390, 396 (1906) ("A buyer who is induced to pay an unlawfully inflated price for goods or services obviously suffers an actual injury . . . .").

The standing analysis is the same for an indirect purchaser. In *Hyland v. Homeservices of Am., Inc.* Case No. 3:05-CV-612-R, 2008 WL 4000546 (W.D. Ky. August 25, 2008), the district court held that indirect purchasers of real estate established Article III standing by alleging the payment of higher prices as a result of fixed prices on commissions charged by real estate brokers. *Id.* at * 10-11; *see also Loeb Indus., Inc. v. Sumitomo Corp.,* 306 F.3d 469, 480-81 (7th Cir. 2002). The allegations of injury in *Hyland* sufficed despite the lack of "empirical data or studies" demonstrating the mechanics of pass-through. *Id.*

In *D.R. Ward Const. Co. v. Rohm and Haas Co.,* 470 F.Supp.2d 485 (E.D. Pa. 2006), the court held that plaintiffs' allegations met the standard for constitutional standing because they alleged paying "inflated prices for products . . . due to an overcharge . . . which was passed on to them from the intervening links within the distribution chain . . . ." *Id.* at 492-93; *see also In re Aftermarket Filters Antitrust Litig.,* Case No. 08-C-4883, 2009 WL 3754041, at *5 (N.D. Ill.

Nov. 5, 2009) ("*Aftermarket Filters*"); *In re Processed Egg Products Antitrust Litig.,* 851 F.Supp.2d 867 (E.D. Pa. 2012) ("*Eggs*").

Courts have found standing for claims for purchase of a finished product with a price-fixed component. *See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 610-11 (N.D. Cal. 2009); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* Case No. M 07-1827-SI, 2012 WL 253298, at *1 FN 2 (N.D. Cal. Jan. 26, 2012). The authorities Defendants cite address issues of pass-through **at the class certification stage**. *In re Graphics Processing Units Antitrust Litig.,* 253 F.R.D. 478 (N.D. Cal. 2008); *A&M Supply Co. v. Microsoft Corp.,* 654 N.W.2d 572, 575 (2002); *Karofsky v. Abbott Labs.,* Case No. CV-95-1009, 1997 WL 34504652 (Me. Super. Ct. Oct. 16, 1997). Because the inquiry is different at the pleading stage, detailed allegations of impact are not required. *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 591 (8th Cir.2009); *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 722–23 (5th Cir. 2007). Plaintiffs' allegations easily meet the standard and Defendants' Motion should be denied.

### B. Plaintiffs May Bring Claims Under the Laws of Various States Where No Named Plaintiff Resides[5]

#### 1. None of the States Cited by Defendants Require In-State Residency

As noted in several opinions, neither North Dakota's nor Vermont's antitrust statute require in-state residency to bring a claim. *See, e.g., Eggs,* 851 F.Supp.2d at 885-891; *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, *FN 10 (D. N.J. 2011). The Hawaii, Maine, South Carolina and D.C. antitrust statutes do not require in-state residency either. The Hawaii antitrust Statute states: "any person who is injured in the person's business or property by

---

[5] The Auto Dealers assert claims under the laws of Hawaii, Maine, Montana, North Dakota, South Carolina, and Vermont. The End-Payors assert claims under District of Columbia law.

reason of anything forbidden or declared unlawful by this chapter . . . [m]ay sue for damages sustained by the person . . . and [m]ay bring proceedings to enjoin the unlawful practices." Haw. Rev. Stat. § 480-13(a)(1), (2).[6]  Similarly, the Maine Antitrust Statute states: "[a]ny person, including the State or any political subdivision of the State, injured directly or indirectly in its business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by section 1101, 1102 or 1102-A, may sue for the injury in a civil action." ME. Rev. Stat. tit. 10, § 1104(1).  The South Carolina statute states "[a]ny person who may be injured or damaged by any such arrangement, contract, agreement, trust or combination described in § 39-3-10 may sue . . .. S.C. Code § 39-3-30 (emphasis added).  The District of Columbia statute states: "[a]ny person who is injured in that person's business or property by reason of anything forbidden by this chapter may bring a civil action for damages, for appropriate injunctive or other equitable relief, or for both."  D.C. Code § 28-4503.

 As with the *Eggs* court's analysis regarding South Dakota's antitrust statute, none of the language in the above statutes requires state residency to bring an antitrust claim.  *Eggs*, 851 F.Supp.2d at 889-895; *see also, In re Chocolate Confectionary Antitrust Litig.,* 602 F.Supp.2d 538, 581 (M.D. Pa. 2009) ("*Chocolate*"); *In re Intel Corp. Microprocessor Antitrust Litig.,* 496 F.Supp.2d 404, 412  (D. Del. 2007) ("*Intel*").  This court should follow the *Eggs* court decision

---

[6] An AD Plaintiff – Rainbow Chevrolet, Inc. – resides in Hawaii and was included in a separate complaint filed under seal, per Hawaii Rev. Stat. §480-13.3.  *Rainbow Chevrolet, Inc. d/b/a Cutter Chevrolet, Inc. v. Denso International et al.*, 2:12cv12526 (E.D. Mich).  That action was kept under seal until the Hawaii Attorney General declined to prosecute the action himself or to file his own action.  The complaint has now been unsealed and Rainbow Chevrolet has been given permission to proceed with its case, as demonstrated in the letter from the Deputy Attorney General of Hawaii, attached as Exhibit 2.  Auto Dealer Counsel has advised the court that the *Rainbow* case merits consolidation with this action.  Given that consolidation of the *Rainbow* action will render Defendants' argument moot, AD Plaintiffs submit that the Hawaii claim should not be dismissed at this juncture.

in finding that it is unnecessary to have a named-Plaintiff hailing from Hawaii, Maine, South Carolina or D.C. in order to state a claim under these antitrust statutes.

The Montana Consumer Protection Statute states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." M.C.A. 30-14-103. "Trade or commerce . . . includes any trade or commerce directly or indirectly affecting the people of this state." *Id.* § 30-14-102. While the statute requires the anticompetitive conduct affect Montanans, it does not require state residency to bring the claim. The AD Plaintiffs have alleged that Defendants' anticompetitive conduct affected the people of Montana, AD CCC, ¶259.

None of these state statutes requires in-state residency for purposes of stating a claim.[7] *Compare*, Utah Code § 76-10-919(1) (explicitly conferring standing only on "[a] person *who is a citizen of this state* or a resident of this state and who is injured or is threatened with injury. . . .") (emphasis added). As the court held in *Eggs*, in the "absence of definitive legal authority as to whether *vel non* an extraterritorial injury that might be traced to an antitrust violation is cognizable" under the state statutes, motions to dismiss based on Article III standing should be rejected. *Eggs*, 851 F.Supp.2d at 891.

### 2. Class Certification is "Logically Antecedent" to Questions of Article III Standing under State Laws

Article III standing under the various state statutes should not be resolved at the pleadings stage because class certification is "logically antecedent" to issues of Article III standing under state law. *See, e.g., Hovering v. Transnation Title Ins. Co.,* 545 F.Supp.2d 662, 667 (E.D. Mich. 2008); *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002); *Chocolate,* 602 F.Supp.2d at

---

[7]  AD and EP Plaintiffs have sufficiently demonstrated that Defendants' conspiracy occurred in those states or the effects of the conspiracy were felt in those states.  AD CCC ¶¶17, 19, 20, 21, 138, 139, 232, 233, 248, 259, 261-292, 293, 294, 298; EP CAC ¶238(a)-(b).

579-80; *Aftermarket Filters,* 2009 WL 3754041, at *5; *Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.,* Case No. 07-5205, 2008 WL 3833577, at *8-9 (D.N.J. Aug. 13, 2008); *In re Hypodermic Prods. Antitrust Litig.,* MDL No. 1730, 2007 WL 1959225, at *15 (D.N.J. Jun. 29, 2007); *In re Relafen Antitrust Litig.,* 221 F.R.D. 260, 267-70 (D.Mass. 2004).

The Sixth Circuit has not ruled on this question in the context of an indirect purchaser antitrust class action. *See In re Polyurethane Foam Antitrust Litig.*, 799 F.Supp.2d 777 (N.D. Oh. 2011); *Packaged Ice*, 779 F.Supp.2d 642, 654 (E.D. Mich. 2011). In a directly analogous context, the Sixth Circuit held that standing inquiries should not take place prior to class certification. *See Fallick v. Nationwide Insurance Mutual Co.*, 162 F.3d 410 (6th Cir. 1998). Plaintiff brought a proposed ERISA class action seeking to represent members of several of defendant's benefit plans, even though he only belonged to one. *Id.* at 413. The district court dismissed the allegations pertaining to the other benefit plans, reasoning that the named plaintiff lacked standing. *Id.* at 412. The Sixth Circuit reversed, finding that the district court's decision "confuses the requirements of Article III and Rule 23 . . . ." *Id.* at 421. It concluded that once the named plaintiff establishes individual standing, his capacity to seek relief for absent class members should be determined in accord with Rule 23. *Id.* at 423.[8]

District courts within the Sixth Circuit, following *Fallick*, have concluded that class certification is "logically antecedent" to a determination of whether class representatives have standing to assert claims under the laws of various states. *In re Polyurethane Foam Antitrust Litig.*, 799 F.Supp.2d 777, 805-806 (N.D. Oh. 2011); *Hoverig v. Transnation Title Ins. Co.*, 545 F.Supp.2d 662, 667 (E.D. Mich. 2008). In *Hovering*, the plaintiff brought claims under Michigan law, and the laws of eight other states, on behalf of a proposed class. *Id.* The

---

[8] Defendants principally rely on *In re Refrigerant Compressors Antitrust Litig.*, for support. That case is in the minority and is contradicted by the well reasoned *Eggs* and *Fallick* decisions.

defendants moved to dismiss, arguing that the plaintiff lacked standing for the claims brought under state laws other than Michigan. *Id.* at 665. Relying on *Fallick,* the court found that the "decision on class certification is logically antecedent to the determination of standing." *Id.* This Court should follow suit.[9]

## III.   THE COMPLAINT ADEQUATELY STATES CLAIMS UNDER VARIOUS STATE ANTITRUST STATUTES

### A.   *AGC* Provides No Basis for Dismissal of Plaintiffs' Claims

Defendants contend that Plaintiffs lack standing to bring state antitrust claims based on *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). Defendants are wrong. *AGC* is an interpretation of *federal* antitrust law in a wholly different context and does not address state indirect purchaser claims.[10] The vast majority of courts addressing this issue hold that *AGC* does not apply to indirect purchaser claims. Plaintiffs have alleged facts sufficient to show antitrust injury under state antitrust laws, and to the extent state antitrust laws so require, under *AGC* as well.

### 1.   Antitrust Standing Under State Law

Because this Court is sitting in diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), it is required to follow state law in interpreting antitrust standing under state statutes. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *D.R. Ward*

---

[9] Defendants' arguments also confuse the requirements of Article III standing with "statutory standing." *See Eggs,* 851 F.Supp.2d at 886-888.

[10] *AGC* was decided several years after *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which held, by and large, indirect purchasers should not be permitted to maintain a claim for damages under federal antitrust law. In response to *Illinois Brick*, many states created *Illinois Brick* "repealer" provisions that permitted indirect purchasers to maintain damages claims under state law. The *AGC* analysis, therefore, was not intended to apply to antitrust claims of indirect purchasers under state law.

*Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 494-95 (E.D. Pa. 2006).  Applying *AGC* to bar Plaintiffs' damages claims would effectively abrogate the remedies authorized by the *Illinois Brick* repealer states, disregarding the Supreme Court's clear directive in *California v. Arc America Corp.*, 490 U.S. 93 (1989) ("*Arc America*").  *ARC America* held that federal remoteness constraints addressed in *AGC* should not be applied to indirect-purchaser claims under state laws.  As the Minnesota Supreme Court emphasized in rejecting an *AGC* challenge, the legislature did not "repudiate [] *Illinois Brick* and invite [] indirect purchaser suits only for courts to dismiss those suits on the pleadings based on the very concerns that motivated *Illinois Brick*."  *Lorix v. Crompton Corp.*, 736 N.W. 2d 619, 629 (Minn. 2007).

Even in the face of harmonization provisions or judicial reference to federal antitrust precedents, most courts have held that *AGC* does not apply in the absence of a clear directive from those states' legislatures or highest courts.[11]  Defendants cite few, if any, such directives.  Their arguments regarding *AGC*'s applicability to the relevant state statutes are incorrect and their cited cases are inapposite.  *See* Exhibit 3 (distinguishing authority in Defendants' Exhibit D and citing contrary authority).

Defendants rely upon the Visa cases, which are very different.  The *Visa* plaintiffs "did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity by Visa and MasterCard."  *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 196-99 (Iowa 2007) (*Visa* plaintiffs are not indirect purchasers because they are "not in the chain of distribution"); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 298-99 (Neb. 2006) (same).

---

[11] *See, e.g.*, *In re Flash Memory Antitrust Litigation*, 643 F.Supp.2d 1133, 1151-53 (N.D. Cal. 2009); *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F.Supp.2d 1109, 1123 (N.D. Cal. 2008); *D.R. Ward Constr. Co.*, 470 F.Supp.2d 485, 494-96 (E.D. Pa. 2006); *In re Aftermarket Filters Antitrust Litigation*, No. 08 C 4883, 2009 WL 3754041, at *7 (N.D. Ill. Nov. 5, 2009); *Bunker's Glass Co. v. Pilkington PLC*, 75 P. 3d 99, 106 (Ariz. 2003); *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36-38 (Neb. 2004) (same).

In *Lorix, supra,* the Minnesota Supreme Court similarly distinguished the *Visa* cases from an indirect-purchaser component case. It held that an indirect purchaser of component parts had antitrust standing because as an end-user "of a consumer good whose price was inflated by anticompetitive conduct earlier in the chain . . . [she was] the party most likely to be injured by an anticompetitive overcharge because she was the only party in the chain of purchase who cannot pass on part or all of that overcharge." *Lorix,* 736 N.W. 2d at 631 (citing *Illinois Brick* dissent).

The only federal authority cited by Defendants in favor of wholesale application of *AGC* to state claims are the *DRAM* decisions.[12] Because a majority of courts considering this issue have declined to extend *AGC* to component claims under state law, this Court should hold that in the absence of a clear directive from a state's legislature or highest court, *AGC* does not apply to indirect purchaser standing, and deny Defendants' Motion with regard to such states. *See* Exh. 3 (Plaintiffs' Response to Defendants' Ex. D).

### 2. Application of the *AGC* Factors Supports Antitrust Standing

Plaintiffs have alleged facts sufficient to establish antitrust standing under *AGC*. First, Plaintiffs have alleged "antitrust injury" under state law. AD CCC ¶¶228-233; EP CAC ¶¶198-202. Plaintiffs have alleged a *per se* antitrust violation. "It is difficult to imagine a more formidable demonstration of antitrust injury." *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3d Cir. 2000); *see also Lorix*, 736 N.W.2d at 631 ("The violation complained of – price fixing – is a *per se* violation of the law that strikes at the heart of antitrust law's purpose of

---

[12] The other federal ruling relied upon by Defendants, *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009), establishes little. The court dismissed antitrust claims under Iowa law (relying on a *Visa* case) and Mississippi law while admitting "Mississippi has not provided a clear indication as to the adoption of *AGC*". *Id.* at 945-46. But the court declined to find *AGC* applicable to plaintiffs' Kansas and Michigan antitrust claims, and denied the defendants' motion to dismiss on that basis. *Id.* at 943-44.

protecting competition . . . . The injury alleged – overcharge – is exactly the sort that would be expected to flow from the violation.").  This is certainly sufficient to state a claim under the repealer states' antitrust laws and/or *AGC*.

The repealer states do not impose a rigid market participant test for indirect purchaser claims.  *See Lorix,* 736 N.W. 2d at 629-30; *D.R. Ward,* 470 F.Supp.2d at 502-03.  Federal courts do not impose a bright-line "market participant" requirement for antitrust standing.  *See Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 316 (4th Cir. 2007); *TFT-LCD*, 586 F.Supp.2d at 1123; *Stanislaus Food Products Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1070-72 (E.D. Cal. 2011).  Plaintiffs have sufficiently alleged that they paid higher prices for automobiles containing AWHS and that the price-fixed products "remain unchanged when incorporated into a vehicle."  They further allege that AWHS "have no independent utility" and that "the demand for vehicles creates the demand for Automotive Wire Harness Systems."  *See* AD CCC ¶¶130, 230-31; EP CAC, ¶¶124, 200-201.

Plaintiffs' CAC and CCC also satisfy the remaining *AGC* factors.  With regard to the "directness" and "non-speculative" *AGC* factors, Defendants argue that the distribution chain is too complex and there are a number of market factors that affect the prices paid by each plaintiff.  Defendants' argument is directly contradicted by Plaintiffs' allegations.  *See, e.g.,* AD CCC ¶231; EP CAC, ¶201.  The ability of purchasers to trace overcharges for components through a distribution chain has been repeatedly recognized by federal courts.  Numerous courts have refused to find "remoteness" or "speculativeness" at the pleading stage in cases involving price-fixed components or ingredients.  *See e.g., In re Sugar Indus. Antitrust Litig.,* 579 F.2d 13, 18 (3d Cir. 1978); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 159 (3d Cir. 2002); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000); *TFT–LCD,* 586 F.Supp.2d at 1124.

Defendants' arguments ignore that Plaintiffs are indirect purchasers suing for damages only under state laws.  Repealer states allow these claims because indirect purchasers often "suffer [] the greatest, if not the most direct, injury of the price-fixing conspiracy."  *D.R. Ward,* 470 F. Supp. 2d at 503; *see also Lorix*, 736 N.W.2d at 631.  Defendants would have this Court repeal these statutes.

Defendants' argument on the final *AGC* factor, the risk of duplicative recoveries, is nothing more than a request that this Court overturn the law permitting indirect purchaser actions.  As the *Lorix* court stated, the risk of duplicative recoveries "is inherent in the dual system of private antitrust enforcement created by *Illinois Brick* and *California v. ARC America Corp*."  *Lorix,* 736 N.W.2d at 628.  "[I]t is not a risk that [this Court] may remedy by restricting [repealer states'] antitrust law in ways that [the] legislature has not."  *Id.*; *see also Intel,* 496 F. Supp. 2d at 410.

## B. Plaintiffs' Claims Under Massachusetts' and Missouri's Antitrust Laws

EP Plaintiffs pleaded claims under Massachusetts' antitrust laws (EP CAC ¶242) and under Massachusetts' consumer protection statute (EP CAC ¶269).  Defendants do not seek dismissal of or otherwise challenge EP Plaintiffs' Massachusetts consumer protection claim.  *See* Def. Memo at 22-30.  As such, at this time, EP Plaintiffs do not oppose dismissal of their claims under the Massachusetts Antitrust Act only.  Mass. Gen. Laws Ann. ch. 93, §§ 1, *et seq*.  AD Plaintiffs have not asserted claims under Massachusetts' or Missouri's antitrust statute.

## C. Plaintiffs Have Stated Antitrust Claims Under the Laws of Hawaii, Nebraska, New Hampshire, and Utah

Defendants assert that Plaintiffs cannot recover for purchases before the dates when *Illinois Brick* repealer amendments became effective.  This argument is procedurally flawed.  Federal Rule of Civil Procedure 12(b)(6) does not provide for dismissal of portions of claims.

17

Only Federal Rule of Civil Procedure 56 contemplates such partial adjudications.  *See* Fed. R. Civ. Proc. 56(a) and (b); Fed. R. Civ. Proc. 56(d)(1).  Defendants cite no authority for their position and, for this reason alone, the arguments should be rejected.

Defendants' arguments pertaining to other states are also contrary to law.  For example, Defendants assert that no claims pre-dating 2002 may be asserted under the "unfair competition" prong of Hawaii's antitrust provision (*i.e.*, Haw. Rev. Stat. § 480-2).  Even assuming that is true, Plaintiffs may assert pre-2002 claims for damages under Hawaii's relevant antitrust provision (*i.e.*, Haw. Rev. Stat. § 480–4).[13]  *In Re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07–md–01819 CW, 2010 WL 5094289, at *2 (N.D. Cal. Dec. 8, 2010).

Similarly, other federal courts have expressly recognized that "even prior to the 2002 amendment, indirect-purchaser suits were permitted under Nebraska law."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-1827 SI, 2011 WL 3738985, at *3 (N.D. Cal. Aug. 24, 2011); *see also Arthur v. Microsoft Corp.*, 676 N.W.2d 29 (Neb. 2004) (rejecting defendants' argument that indirect purchaser claims pre-dating 2002 amendment were barred).  Plaintiffs' Nebraska claims should survive intact.

### D. Plaintiffs Allege A Sufficient Nexus Between Defendants' Conduct and the Commerce of the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, and West Virginia[14]

Plaintiffs specifically allege a substantial effect on intrastate commerce in the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee and West Virginia.  *See* Exhibit 5 responding to Defendants Exhibit F.  The EP Plaintiffs allege that "price

---

[13] Defendants' insinuation that AD Plaintiffs did not provide the Hawaii Attorney General with an opportunity to prosecute the action and await his declination is incorrect.  *See* Exhibit 2.

[14] Because EP Plaintiffs do not oppose dismissal of their claims under the Massachusetts antitrust statute it is unnecessary to address Defendants' argument.

competition was restrained, suppressed, and eliminated throughout [the state]," "Automotive Wire Harness System prices were raised, fixed, maintained and stabilized at artificially high levels throughout [the state]," and that plaintiffs and consumers were "deprived of free and open competition and "paid supracompetitive, artificially inflated prices" within the state. EP CAC ¶¶238(a)-(b), 245(a)-(6), 247(a)-(b), 250(a)-(b), 251(a)-(b), 254(a)-(b), 255(a)-(b), and 258(a)-(b). AD Plaintiffs make similar allegations. AD CCC ¶¶259, 292.

AD Plaintiffs make similar allegations asserting that "anti-competitive acts were intentionally directed at the market for Automotive Wire Harness Systems in all states allowing indirect purchasers to collect damages, as listed *infra* [including the states at issue here], and had a substantial and foreseeable effect on intrastate commerce by raising and fixing prices for Automotive Wire Harness Systems throughout those states." AD CCC ¶259. AD Plaintiffs also allege that specific plaintiffs who have their principal places of business in the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, and Tennessee[15] purchased AWHS and vehicles containing AWHS during the Class Period – as such those Plaintiffs were injured in those states through payment of inflated prices. AD CCC ¶¶22-23, 24-25, 31-33, 38-39, 60-61, 64-65, 72-73, 84-85. AD Plaintiffs also allege that "[d]efendants and their co-conspirators manufactured Automotive Wire Harness Systems for installation in vehicles manufactured and sold in the United States (including all of the states having laws permitting recovery of damages by indirect purchases as listed *infra.*)" AD CCC ¶138.

These allegations have been held as sufficient to trigger the protection of state antitrust laws. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F.Supp.2d 1179, 1188-89 (N.D. Cal. 2009) (finding indirect-purchaser claims sufficient where plaintiffs alleged substantially similar

---

[15] AD Plaintiffs are not asserting a claim under the Massachusetts Antitrust Act.

19

effect on intrastate commerce); *In re Graphics Processing Units Antitrust Litig. ("GPU II")*, 540 F.Supp.2d 1085, 1099 (N.D. Cal. 2007) (same); *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 350 F. Supp. 2d 160, 170-75 (D. Me. 2004) (same).

Defendants' AWHS—as part of the vehicles and replacements—were transported to their final destination and purchased by Plaintiffs, the price-fixed products entered the state's commerce, came under the jurisdiction of each state's respective antitrust laws, and caused injury. Plaintiffs have adequately alleged affects on commerce in each state.

     **E.    AD Plaintiffs' May Maintain an Antitrust Claim Under Illinois Law**

Defendants argue that AD Plaintiffs fail to state a cognizable claim under the Illinois Antitrust Act because Section 7(2) of the Act bars class actions by indirect purchasers. However, Illinois' procedural class action bar is inapplicable in federal courts. *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.,* 130 S. Ct. 1431, 1436 (2010) ("*Shady Grove*"). Under *Shady Grove*, it is clear that (1) Rule 23 and Section 7(2) of the Illinois Antitrust Act conflict as to the availability of class actions; (2) Rule 23 must be applied in federal court unless its application would "abridge, enlarge or modify any substantive right" under the Rules Enabling Act, 28 U.S.C. § 2072(b); and (3) rules such as Section 7(2), which states "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act," prohibiting the maintenance of claims through class actions are procedural, not substantive--they "address[] not the remedy, but the procedural right to maintain a class action." *Shady Grove,* 130 S. Ct. at 1439 n. 4. Plaintiffs' claim is cognizable.

/ / /

/ / /

20

## IV.     PLAINTIFFS HAVE SUFFICIENTLY PLEADED VALID CLAIMS UNDER VARIOUS STATE CONSUMER PROTECTION STATUTES

### A.     Plaintiffs' Consumer Protection Claims Need Not be Pleaded with Particularity

Defendants' argument that Plaintiffs have failed to plead "with particularity" under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) has no merit.[16]   As Defendants concede, Rule 9(b)'s particularity requirement only applies to "claims sounding in fraud." Claims under the FDUTPA based on price-fixing conduct do not sound in fraud, nor is fraud a required element of a FDUTPA claim.  *See,* Fla. Stat. § 501.204(1); *Eggs,* 851 F.Supp.2d at 900, FN 33; *see also Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009); Exhibit 6 (distinguishing authority cited in Defendants' Exhibit H and citing contrary authority).  Florida's consumer protection claims must survive.

### B.     Plaintiffs' Claims are Not Invalid for Failure to Allege "Unconscionable Conduct" [17]

A violation of the District of Columbia's Consumer Protection Practices Act (CPPA) does not require "unconscionable conduct."  "While the CPPA enumerates a number of specific unlawful trade practices . . . the enumeration is not exclusive." *District Cablevision Ltd. Partnership v. Bassin,* 828 A.2d 714, 723 (D.C. 2003); *see also Osbourne v. Capital City Mortg. Corp.,* 727 A.2d 322, 325–26 (D.C. 1999).  Accordingly, "plaintiffs may maintain a claim for defendant's alleged price-fixing under the statute," without additional unconscionability

---

[16] While Defendants move on these grounds with respect to consumer protection claims in Florida, Michigan, Minnesota, North Dakota, and South Dakota, of these states, EP Plaintiffs and AD Plaintiffs only assert such a claim under Florida law.

[17] EP Plaintiffs' CAC does not assert claims under Arkansas or Kansas law.  AD Plaintiffs' CCC does not assert claims under the consumer protection acts of Kansas, New Mexico, North Carolina, or the District of Columbia.

allegations.  *TFT-LCD*, 586 F. Supp. 2d at 1126;  s*ee also* Exhibit 7 (distinguishing authority cited in Defendants' Exhibit I and citing contrary authority).

With respect to New Mexico's Unfair Practices Act ("NMUPA"), EP Plaintiffs explicitly plead that Defendants' price-fixing conduct "resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Automotive Wire Harness Systems."  EP CAC ¶272 (b).  As Defendants concede, a "gross disparity" between the price paid and value received gives rise to a claim of unconscionable practices.  These allegations "are sufficient as a matter of pleading to state a claim" under the NMUPA, even if not "factually specific."  *TFT-LCD,* 586 F. Supp. 2d at 1127 (distinguishing *GPU I* where plaintiffs made no "gross disparity" allegation); *Eggs*, 851 F.Supp.2d at 906-907 (collecting cases).

As to North Carolina's Unfair and Deceptive Trade Practices Act (NCUDTPA), Defendants ignore that a violation of antitrust law is, in and of itself, a violation of the NCUDTPA.  *See ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 48 (4th Cir. 1983) *aff'd on rehearing,* 742 F.2d 170 (4th Cir.1984); *Eggs*, 851 F.Supp.2d at 909-912.

To state a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA") AD Plaintiffs merely need to allege that Defendants engaged in any "unconscionable, false, or deceptive act or practice."   "The Arkansas Supreme Court defined an unconscionable act as an 'act that affronts the sense of justice, decency, or reasonableness' including acts that violate public policy or a statute."  *Independence Cty. v. Pfizer, Inc.*, 534 F. Supp.2d 882 (E.D. Ark. 2008), *aff'd,* 552 F.3d 659 (8th Cir. 2009).  The ADTPA was enacted "to protect the interests of both the consumer public and the legitimate business community" and is to be liberally construed.  *Curtis Lumber Co. v. La. Pacific Corp.*, 618 F.3d 762, 780 (8th Cir. 2010); *Arkansas*

*ex rel. Bryant v. R & A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999). Liberal construction means that the ADTPA contemplates price-fixing, committed in violation of the Sherman Act, as an "unconscionable, false, or deceptive act." *See, e.g., In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1156-57 (N.D. Cal. 2009) ("*Flash*"). Moreover, the argument that failure to plead "grossly unequal bargaining power" is fatal to an ADTPA claim has been expressly rejected by other district courts. *Flash*, 643 F. Supp. 2d at 1156-57; *In re Aftermarket Filters*, 2009 WL 3754041, at *8-9; *Chocolate*, 602 F. Supp. 2d at 583 n.57.

## C. Defendants' Price-Fixing Conduct Violates State Consumer Protection Statutes[18]

Defendants ignore the vast weight of authority routinely sustaining NMUPA claims that are based on conspiratorial agreements to fix prices at artificial, non-competitive levels. *See, e.g., Eggs*, 851 F.Supp.2d at 902-905; *TFT–LCD*, 586 F. Supp. 2d at 1127; *Chocolate*, 602 F. Supp. 2d at 586; *New Motor Vehicles*, 350 F. Supp. 2d at 196.[19]

Numerous courts have recognized that, because price-fixing clearly offends the public policy of Rhode Island, such allegations fall squarely under the RIUTPCPA. *Chocolate*, 602 F. Supp. 2d at 586-87; *TFT–LCD*, 586 F. Supp. 2d at 1129-30; *SRAM*, 2008 WL 2610549 at *4. Plaintiffs here have pleaded precisely what is required and more: "Defendants' deception … likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Automotive Wire Harness Systems at prices born by a free and fair market," causing

---

[18] EP Plaintiffs do not assert claims under Arizona, Arkansas, Kansas, Michigan, Minnesota, or South Dakota consumer protection law. AD Plaintiffs do not assert claims under the consumer protection laws of Arizona, Kansas, Michigan, New Mexico, Rhode Island, or South Dakota.

[19] The one case Defendants cite, *GPU I*, is inapposite. The court there relied on two contract-based actions neither of which were New Mexico authority in relation to defendants' "unconscionability" argument, already addressed above in section IV.B. *See also* Exhibit 8.

"an ascertainable loss of money or property" to Rhode Island consumers as a result.  *See* EP CAC ¶¶275(a)-(g).  Plaintiffs have sufficiently stated a claim under the RIUTPCPA.

As an Arkansas court has noted, "price fixing is actionable under the ADTP as conduct that is deemed an 'unconscionable, false or deceptive act or practice . . .'" *Burton v. Micron Tech*, *Inc.*, Case No. CV 2004-226-1, at 2 (Cir. Ct. 1st Div. Nov. 6, 2009). The court relied on the Arkansas Supreme Court's interpretation of the term "unconscionable" in the ADTPA to mean "an act that 'affronts the sense of justice, decency, or reasonableness,'" including acts "violative of public policy or a statute." *Baptist Health v. Murphy*, 226 S.W.3d 800, 810-811 (2006)).  A number of federal courts have also recognized that a claim for price fixing is actionable under the ADPTA.  *Aftermarket Filters*, 2009 WL 3754041, at *9; *Flash*, 643 F. Supp. 2d at 1157; *Chocolate*, 602 F. Supp. 2d at 583; *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d 1072, 1108 (N.D. Cal. 2007); *California v. Infineon Tech. AG*, 531 F. Supp. 2d 1124, 1143-44 (N.D. Cal. 2007); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 178-79 (D. Me. 2004).  Illicit price fixing such as that alleged here clearly violates the public policy of Arkansas and the Sherman Act.   As such, Plaintiffs' price fixing claims are viable under the ADTPA.[20]

/ / /

---

[20] As for the one case cited by Defendants, *GPU I*, its ruling that the ADTPA did not apply to price-fixing was based on the theory that price-fixing was considered to be an unconscionable act, a theory demonstrated above to be erroneous.  That ruling was rejected two years later in the same district court.  *Flash*, 643 F. Supp.2d at 1157 (citing *Baptist Health*, 226 .S.W. 3d at 810-811).  However, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp.2d 1036, 1042 (N.D. Cal. 2011), narrowly interpreted the ADTPA to dismiss price fixing claims, noting the "lack of any cases from Arkansas state or federal courts recognizing a price-fixing claim under the ADTPA."  It appears the parties in that case were not aware of the 2009 ruling in *Burton*, *supra*, which negates that court's reasoning.

**D.      EP Plaintiffs' Allegations Support Standing Under New York's Consumer Protection Law**

It is sufficient under N.Y. G.B.L. § 349 if "the complaint alleges a price-fixing scheme that resulted in New York consumers paying inflated prices for [the products], and that defendants took efforts to conceal their agreements from the New York plaintiffs and the indirect class." *TFT–LCD*, 586 F. Supp. 2d at 1128 (citing *DRAM II*, 536 F. Supp. 2d at 1143) ("[P]laintiffs need only allege—and ultimately show—that defendants' acts or practices have a broader impact on consumers at large."); *GPU I*, 527 F. Supp. 2d at 1030; *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40 (N.Y. App. Div. 2004).  This is precisely what the EP Plaintiffs have alleged here.  EP CAC ¶¶208-217.  EP Plaintiffs' allegations are sufficient.

**E.      Plaintiffs Have Alleged a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce**

Defendants assert that Plaintiffs have failed to allege a sufficient nexus with the intrastate commerce of California, Montana, New Hampshire, New York and North Carolina.  EP Plaintiffs include residents of California, Montana, New York, and North Carolina[21] who were injured when they purchased AWHS indirectly from one or more of the Defendants and AD Plaintiffs include businesses in California who purchased price-fixed AWHS and vehicles containing AWHS in California.  *See* AD CCC ¶¶34-37; EP CAC ¶¶21-24, 45, 51-54.  The "'intrastate effects' requirement is met at the pleading stage by allegations, like those in the instant case, claiming that the anticompetitive conduct caused supra-competitive price effects

---

[21]  EP Plaintiffs do not assert a claim under the New Hampshire consumer protection statute.
The AD Plaintiffs do not include a plaintiff from Montana.

nationwide." *Packaged Ice*, 779 F. Supp. 2d 642, 664 (E.D. Mich. 2011) (and citations therein).[22]

AD Plaintiffs also make sufficient allegations that the conspiracy concerned trade or commerce "directly or indirectly affecting the people of this state."  Mont. Code §§ 30-14-102. The AD CCC properly pleads that "Plaintiffs and members of the  proposed Classes . . . purchased new vehicles containing Automotive Wire Harness Systems or Automotive Wire Harness Systems themselves from OEMs . . . in each state having laws permitting recovery of damages by indirect purchasers, as listed *infra*, who in turn purchased Automotive Wire Harness Systems from Defendants."  AD CCC  ¶139.  The states belonging to the Damages Classes include Montana.  AD CCC ¶219(p).  The CCC also states "[t]he anti-competitive acts were intentionally directed at the market for Automotive Wire Harness Systems in all states allowing indirect purchasers to collect damages, as listed *infra,* and had a substantial and foreseeable effect on intrastate commerce by raising and fixing prices for Automotive Wire Harness Systems throughout those states."  AD CCC ¶259; s*ee also* AD CCC ¶292.[23]

/ / /

---

[22]  *See also In re Digital Music Antitrust Litig*., 812 F. Supp. 2d 390, 407-408 (S.D.N.Y. 2011); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,* 737 F.Supp.2d 380, 406 (E.D. Pa. 2010); *Kaufman v. Sirius XM Radio, Inc*., No. 11-121, 2012 WL 1109397 (2d Cir. April 4, 2012); *In re New Motor Vehicles Can. Exp. Antitrust Litig.,* 350 F.Supp.2d 160, 192 (D. Me. 2004).

[23]  AD Plaintiffs do not allege claims under the consumer protection laws of New Hampshire, New York, or North Carolina.

F.    **The AD's Consolidated Class Complaint Successfully Alleges Consumer Protection Claims Under the Laws of Massachusetts, Montana, and Missouri**

Defendants contend that the Auto Dealers' allegations fail under the consumer protection laws of Iowa, Kansas, Michigan, Mississippi, Massachusetts, Montana and Missouri.[24]   The Auto Dealers proceed under the consumer protection statutes of Montana, Missouri and Massachusetts and dismissal of those claims is unwarranted.

When interpreting language in other states' consumer protection statutes that is virtually identical to that in the Montana and Missouri consumer protection statutes encompassing goods or merchandise ultimately intended for "personal, family or household purposes,"[25] courts have emphasized that the focus is not on the character of any particular plaintiff, but rather upon "the use to which the goods [will] be put." *Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 482 (D. Del. 2010); *see also Nelson v. Ho*, 564 N.W.2d 482, 486 (Mich. Ct. App. 1997) ("[C]ourts must examine the nature of the conduct complained of case by case . . . ."). Those jurisdictions which limit their consumer protection laws to items designed for "personal" consumption recognize the claims of those who serve as "conduit[s] or intermediar[ies]," obtaining goods so as to "pass them along" to the ultimate consumer. *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 635 (Mich. 2003); *see also In re: Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 495 F. Supp. 2d 1027, 1033-34 (N.D. Cal. 2007) (allowing insurance intermediaries to bring consumer protection claims).[26]

---

[24]   The CCC does not assert claims pursuant to the applicable Consumer Protection Acts of Iowa, Kansas, Michigan or Mississippi.  As such, summary denial of the Motion to Dismiss as to those states is appropriate.

[25]   Mo. Rev. Stat. § 407.025(1) (2011); Mont. Code Ann. § 30-14-102 (1) (2011).

[26]   *See also* Exhibit 12 (distinguishing authority in Defendants' Exhibit K and citing contrary authority).

The Auto Dealers are such "intermediaries," because they purchase vehicles in bulk not for their own commercial use, but in order to "pass them along" to persons and entities who will devote the automobiles to "personal, family, or household purposes." *Cf.* Mo. Rev. Stat. § 407.025(1) (2011) (ability to sue resides in those victimized during transactions for merchandise *primarily* meant for "personal, family, or household purposes"); Mont. Code Ann. §§ 30-14-133(1), 30-14-102(1) (same). The CCC plainly states claims under the Consumer Protection Acts of Missouri and Montana.

Defendants maintain that the Auto Dealers are not authorized to bring claims under the Massachusetts Consumer Protection Act. Defendants are mistaken. The Supreme Judicial Court of Massachusetts concluded that § 9 of the consumer protection law, governing claims brought by individuals, unquestionably extends to indirect purchasers. *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 66-67 (2002) ("We read the language of [the Consumer Protection Act] as a clear statement of legislative policy to protect Massachusetts consumers through the authorization of . . . indirect purchaser actions."). The Auto Dealers proceed under the next section of the same act, § 11 – providing "for a claim for 'unfair' or 'deceptive' trade practices as between businesses," *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 495 (1st Cir. 2009). That section should be construed to permit claims by indirect purchasers. Sections 9 and 11 are part of the same consumer protection law, and "[s]tatutes addressing the same subject matter clearly are to be construed harmoniously so as to . . . give rise to a consistent body of law." *Ciardi*, 436 Mass. at 62.

It would be "absurd" and "unreasonable" to interpret sections 9 and 11 inconsistently with respect to indirect purchaser claims, *Ciardi*, 436 Mass. at 68 (Sosman, J., dissenting), this Court should join other courts to hold that "Massachusetts does not bar indirect purchaser

28

standing under its consumer protection act."  *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524,

545 (E.D. Pa. 2010) (health and welfare plans alleging damages for reimbursement of plan

members who purchased Flonase at inflated prices upheld); *see also, In re Digital Music

Antitrust Litig.*, 812 F. Supp. 2d 390, 413 n.12 (S.D.N.Y. 2011).

### G.    Plaintiffs Have Standing to Assert the Consumer Protection Claims

*AGC* does not apply to Plaintiffs' claims under the consumer protection laws of

Arkansas, Nebraska, New York and Vermont.[27]   The remedial purposes of these consumer

protection statutes are clear and none of these states' highest courts have endorsed the *AGC* test

for standing under consumer protection statutes.  *Carter v. Gugliuzzi*, 168 Vt. 48, 52 (1998);

*Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 213 (2010) (citing with approval *Food Parade,

Inc. v. Office of Consumer Affairs of County of Nassau*, 7 N.Y.3d 568, 574 (2006)); *Arkansas ex

rel. Bryant,*, 985 S.W.2d at 302 (Ark. 1999).

Defendants rely on Vermont and New York decisions that follow *AGC* to dismiss claims

based on derivative injuries, rather than as here, *indirect* purchases of the price-fixed products in

question.  *See Fucile v. Visa U.S.A., Inc.*, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004)

(merchants purchased "debit card services" and allegedly passed on the higher cost in the price

of all goods they sold at retail to consumers); *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,

840 N.Y.S. 2d 8, 12 (N.Y. App. Div. 2007), *affirming* Decision and Order, at 16, Index No.

403878/2002 (Sup. Ct. New York, County, Aug. 16, 2005).[28]   These cases stand for the

unremarkable proposition that derivative injuries are too remote under these states' consumer

---

[27] EP Plaintiffs do not assert claims under Arkansas and Nebraska consumer protection law.  AD Plaintiffs do not assert claims under the consumer protection laws of Nebraska, New York or Vermont.

[28] http://decisions.courts.state.ny.us/fcas/FCAS_docs/2005AUG/30040387820026SCIV.PDF.

protection statutes. *See also* Exh. 3 (Plaintiffs' Response to Defendants' Ex. D, addressing New York and Vermont law).

Defendants rely on *Independence Cty.*, 534 F Supp. 2d at 882, which did not involve an antitrust action or even mention *AGC*. The Eighth Circuit affirmed that the criminal actions of methamphetamine cooks and those farther down the line of manufacturing and distributing the methamphetamine were "totally independent" of defendants' legal actions of selling cold medicine to retail stores. *Id.* at 670. The Eighth Circuit distinguished the Arkansas Supreme Court's decision in *Baptist Health,* 226 S.W.3d at 811, permitting a court to find an act unconscionable under the ADPA when a third-party is harmed, specifically because there was no direct link between the alleged misconduct and the damages of which the plaintiffs complained. *Independence Cty.* 534 F. Supp. 2d at 889. Here, AD Plaintiffs allege a clear, traceable connection between Defendants' *illegal* conduct and higher prices caused by Defendants, removed from AD Plaintiffs by only one level of distribution. The uniform injury was caused by the same unlawful conduct as that directed to the OEMS – the alleged price fixing. Such allegations are not "too remote" under Arkansas law. *See In re Aftermarket Filters*, 2009 WL 3754041, at *7-9; *In re Flash Memory*, 643 F. Supp. 2d at 1155.

**H.     Plaintiffs Have Standing to Assert Class Claims Under the Consumer Protection Laws of Kansas, Montana, and South Carolina[29]**

Defendants assert that Plaintiffs' claims under the Montana Unfair Trade Practices and Consumer Protection Act ("MUTPA"), Mont. Code Ann. §§ 30-14-103, *et seq.* (AD CCC ¶276; EP CAC ¶271), should be dismissed because they cannot be brought as a class action.[30]

---

[29] AD Plaintiffs have only asserted *antitrust*, not consumer protection, claims under Mississippi and Kansas law.

Defendants' contention is wrong because class certification in federal court is governed by Rule 23. *Shady Grove,* 130 S. Ct. at 1448.  In *Shady Grove,* the Supreme Court held that Federal Rule 23 applies to class actions based on state substantive rights when state prohibition "is procedural in the ordinary use of the term" and is not "so intertwined with a state right or remedy that it functions to define the scope of the state-created right."   130 S. Ct. at 1452 (Stevens, J., concurring).   The MUTPA provides that a consumer who suffers an ascertainable loss as a result of a violation "may bring an individual but not a class action under the rules of civil procedure in the district court of the county in which the [defendant] resides or has its principal place of business or is doing business . . . ."  Mont. Code Ann. § 30-14-103(1).  The statute applies a procedural bar to class actions that does not define the scope of the statute's substantive rights and remedies.  In any event, dismissal on the pleadings is inappropriate, as this issue is properly addressed at the class certification stage.  *See In re New Motor Vehicles Can. Exp. Antitrust Litig.,* 350 F. Supp. 2d 160, 196 FN 19 (D. Me. 2004) ("I find these arguments [including with respect to Montana] premature because I have not yet been asked to rule on whether a class can be certified."). [31]

The South Carolina procedural class action bar is also inapplicable in federal courts, given that it conflicts with Fed. R. Civ. P. 23.  *See  In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718, at * 8 (N.D. Cal. April 19, 2012) (dismissal of claims denied despite class action bar in South Carolina statute) (citing *Shady Grove,* 130 S. Ct. at 1437-38).  Under *Shady Grove* (1) Rule 23 and S.C. Code Ann. §  39-5-140(a) conflict as to the availability of class actions;

---

[30]  EP Plaintiffs do not assert claims under the consumer protection statutes of Kansas, Mississippi and South Carolina.

[31] Defendants also note EP Plaintiffs' assertion of a claim under Mont. Code. Ann. §§ 30-14-201, *et seq*.  Mot. at 30 n. 14.  EP Plaintiffs included this claim in its complaint inadvertently and do not oppose dismissal.

(2) Rule 23 must be applied in federal court unless its application would "abridge, enlarge or modify any substantive right" under the Rules Enabling Act, 28 U.S.C. § 2072(b); and (3) the South Carolina rule prohibiting the maintenance of claims through class actions is procedural, not substantive, as it concerns the form in which the action can be maintained.

## V.  PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT ARE VALID

### A.  AD Plaintiffs Have Sufficiently Pleaded Unjust Enrichment Claims

Defendants contend Auto Dealers' unjust enrichment claims fail because the Complaint does not "identify the unjust enrichment law of any particular jurisdiction" and  "it is impossible to know which states' unjust enrichment laws may apply."  The case Defendants cite, *Packaged Ice*, 779 F. Supp. 2d at 667, states that "to assert claims of unjust enrichment, plaintiffs are required to specify the specific state's unjust enrichment laws under which they purported to proceed."  The AD Plaintiffs did just that.  The unjust enrichment claims is brought "on behalf of Plaintiffs and the Damages Classes*,*"  AD CCC at 82, defined as  automobile dealers from the 30 states and the District of Columbia.  *Id*. ¶¶218-219.  AD Plaintiffs specifically list these 30 states and the District of Columbia on pages 59-69.  Defendants' suggestion that it is "impossible" to know which unjust enrichment laws may apply is inaccurate.[32]

### B.  Plaintiffs' Unjust Enrichment Claims are Proper

#### 1.  Defendants' Failed Theories Argument Lacks Merit

Defendants' argument that "where the law precludes a plaintiff from seeking damages under a claim at law, that plaintiff may not seek those same damages vis-à-vis an equitable claim for restitutionary relief"  directly contradicts black-letter law providing that an unjust enrichment claim can exist when Plaintiffs have another claim.  A "claimant otherwise entitled to a remedy

---

[32]   AD Plaintiffs do not assert unjust enrichment claims under federal common law.

for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law."  Restatement (Third) of Restitution and Unjust Enrichment, § 4(2) (2011).  "Restitution is available in any intentional-tort case in which the tortfeasor has made a profit that exceeds the victim's damages …"  *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 576 (7th Cir. 2004).

Defendants' criticism that the Complaints fail to specify whether the unjust enrichment claim is based on the same facts as Plaintiffs' antitrust claim is wrong.  Plaintiffs' Unjust Enrichment claims are based on the same facts.  *See,* EP CAC ¶278; AD CCC ¶297.  The CAC alleges that Defendants received a benefit from Plaintiffs at their expense – Defendants received higher prices for AWHSs (EP CAC ¶278) – and that it would be unjust for Defendants to retain that benefit because of their price-fixing conduct. EP CAC ¶279; *see also* AD CCC ¶¶297-98 (making similar allegations).  Nothing more needs to be pleaded. *See In re K-Dur Antitrust Litig.*, 338 F. Supp.2d 517, 544 (D.N.J. 2004); *Booker v. City of Detroit*, 492 Mich. 892, 893, 668 N.W.2d 623 (2003); *Blue Cross of Cent. New York, Inc. v. Wheeler*, 461 N.Y.S.2d 624, 626 (N.Y. App. Div. 1983).

### 2.    Plaintiffs Are Not Circumventing State Laws

Defendants' argument that Plaintiffs' unjust enrichment claims "circumvent" state law is incorrect.  Even the courts in the cases cited by Defendants **denied** motions to dismiss unjust enrichment claims under the laws of states that permit indirect purchasers actions.  *See In re Digital Music Antitrust Litig.,* 812 F. Supp.2d 390, 413, 420 (S.D.N.Y. 2011); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp.2d 160, 211-212 (D. Me. 2004).[33]  The

---

[33] *See In re Digital Music Antitrust Litig.,* 812 F. Supp.2d at 413 n.12 (Arizona, California, the District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Nevada, New Mexico, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin allow indirect purchaser suits); and Miss. Code Ann. § 75-21-9; *Olson v. Microsoft Corp.,* 2001 ML 652 (1st Dist. Ct. Mont. 2001);

vast majority of the states' laws pleaded in the CAC and CCC permit indirect purchasers to recover antitrust damages. For instance, Massachusetts allows recovery by indirect purchasers under its consumer protection law. *Ciardi,* 762 N.E.2d at 309-10, *citing* Mass Gen. Laws ch. 93A.[34]

Defendants cite no cases from any state court holding that a common law unjust enrichment claim is barred simply because indirect purchasers may not recover under the antitrust law of the same state. Defendants' argument ignores that different state policies underlie different causes of action. *See Ciardi,* 762 N.E.2d at 309-10 (permitting a cause of action under Massachusetts consumer protection law but not under its antitrust law). The *Illinois Brick* rule does not apply to unjust enrichment claims. A principle consideration underlying *Illinois Brick* is the complexity of apportioning total antitrust damages among all the purchasers in a chain of distribution. *Illinois Brick,* 431 U.S. at 737. Unjust enrichment damages are measured by the benefit conferred on defendant, and not the loss incurred by the plaintiff, so no such apportionment is necessary. *See In re New Motor Vehicles Canadian Export Antitrust Litig.,* 350 F. Supp.2d at 212; *In re K-Dur Antitrust Litig.,* 338 F. Supp.2d at 544-46 (D.N.J. 2004). In the absence of any authority from state courts on the common law cause of action, it is incorrect to assume that any state precludes an unjust enrichment claim simply because it does not permit recovery under its antitrust law.

---

*Arthur v. Microsoft Corp.*, 676 N.W.2d 29 (Neb. 2004); *Teague v. Bayer AG,* 671 S.E.2d 550 (N.C. Ct. App. 2009); *Howe v. Microsoft Corp.,* 656 N.W.2d 285 (N.D. 2003) ; Oregon Rev. Stat. § 646.780(1)(a); Utah Code Ann. § 76-10-919(1)(a) .

[34] EP CAC ¶ 269 (alleging Defendants' violations of chapter 93A).

### C.       Defendants' "Benefit of the Bargain" Argument is Incorrect

Defendants' "benefit of the bargain" argument is wrong for three reasons.  First, the "benefit of the bargain" rule applies to situations where there is a contract between the parties. In the EP and AD Plaintiffs' case, there is no contract between Plaintiffs and Defendants. Defendants' accusation that Plaintiffs "do not seek to rescind their purchases" is illogical.  EP Plaintiffs have no right of rescission against the dealers from whom they bought cars and who played no role in Defendants' illegal conspiracy, and AD Plaintiffs have no right of rescission against the original equipment manufacturers from whom they purchased their vehicles and AWHS.

Defendants principally rely on *In re New Motor Vehicles Canadian Export Antitrust Litig.*  There, the court upheld unjust enrichment claims as to the laws of the states that allow indirect purchaser suits.  350 F. Supp.2d at 211-12.  Defendants' other case, *Intel,* mistakenly said that all state law unjust enrichment claims were dismissed in *New Motor Vehicles.  See Intel*, 496 F. Supp.2d at 421.  The portion of the *New Motor Vehicles* opinion quoted by *Intel* dealt with a claim for "freestanding" unjust enrichment, *i.e.*, a claim not based on the antitrust allegations.  *See New Motor Vehicles*, 350 F. Supp.2d at 209-10.  The *Intel* decision did not address the holding in *New Motor Vehicles* regarding unjust enrichment claims that were based on alleged antitrust violations.  Because the *Intel* decision relied solely on its mistaken reading of *New Motor Vehicles,* it should not guide this Court.

Third, Section 107 of the Restatement of Restitution, published in 1937 and on which Defendants rely, no longer reflects current law.  Even assuming *arguendo* it could be applied to litigants who are not parties to a contract (it cannot), the limitation of remedies to rescission no longer applies.  "A claimant entitled to rescission or reformation might often (as an alternative

remedy) obtain a judgment for money on a theory of unjust enrichment …".    Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. e (2011).

### D.    Plaintiffs Need Not Deal Directly with Defendants In Order to State a Claim for Unjust Enrichment

Defendants assert that Plaintiffs did not confer a "direct benefit" on them, which they maintain is a requirement of the unjust enrichment law of seven states, *i.e.*, Florida, Kansas, Maine, Michigan, North Carolina, North Dakota and Utah.   Defendants erroneously equate "direct benefit" with "direct contact" between the parties (or privity), which is not required under the law of any of these states. *See Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4368980, *9 (S.D. Fla. Sept. 19, 2011); *see also* Exhibit 11 (distinguishing authority cited in Defendants' Exhibit M and citing contrary authority for each state).   Numerous courts have upheld unjust enrichment claims based on indirect purchases of price-fixed products or components, which is sufficient to allege a direct benefit on conspiring manufacturers. *See, e.g., Eggs,* 2012 WL 935669, *44-50 (Florida, Kansas, North Carolina, Utah); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1189-90 (N.D. Cal. 2009) (Michigan, North Carolina); *see also* Ex. 11.

### E.    Defendants' Miscellaneous Attacks on Certain Unjust Enrichment Claims Lack Merit

***Absence of Legal Remedy (Arizona).***   Fed. R. Civ. P. 8(d) specifically allows for alternative claims "regardless of consistency." *See, e.g., In re Cardizem CD Antitrust Litig.,* 105 F. Supp. 618, 671 n.25 (E.D. Mich. 2000).   There is nothing unique about Arizona law that would preclude such alternative pleading in this case. *See In re Don's Making Money, LLP*, No. 99-7757, 2007 WL 2784351 (D. Ariz. Bkrtcy. Sept. 24, 2007) (citing *Trustmark Ins. Co. v. Bank One, Arizona, NA,* 48 P.3d 485 (Ariz. App. 2002)).

***Existence of Duty (South Carolina).*** South Carolina does not impose a unique "existence of a duty" element to unjust enrichment claims. *See, e.g*., *Melton v. Carolina Power & Light Co.,* No. 11-270, 2012 WL 2401635 (D.S.C. June 25, 2012) ("a cause of action for unjust enrichment may be available" where the conduct at issue is "not covered by the express agreement"). *In re Microsoft Corp. Antitrust Litig*., 401 F. Supp. 2d 461, 464-65 (D. Md. 2005), the only case relied upon by Defendants, misconstrued both *Myrtle Beach Hospital, Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000) and *Pitts v. Jackson National Life Ins. Co.*, 574 S.E.2d 502 (S.C. App. 2002) in concluding that South Carolina imposes some unique requirement in this regard.

***Privity of Contract/Exhaustion of Remedy (Tennessee).*** When plaintiffs "lack a cognizable remedy" against their direct sellers they are not required to show exhaustion of remedies. *See Chocolate*, 749 F. Supp. 2d at 242; *In re TFT–LCD Antitrust Litig.,* 599 F.Supp.2d 1179, 1192-93 (N.D. Cal. 2009); *accord Eggs,* 851 F.Supp.2d at 919-920. AD Plaintiffs allege that pursuit of remedies against the original equipment manufacturers from whom they purchase would have been futile. AD CCC ¶300.

***Retention Inequitable and Unconscionable (West Virginia).*** "[I]f benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefore, the law requires the party receiving the benefits to pay their reasonable value." *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884–85 (W.Va. 2000). The retention of the benefits of a criminal antitrust conspiracy is sufficiently unconscionable to satisfy Plaintiffs' pleading burden under West Virginia law. *See In re TFT-LCD (Flat Panel) Antitrust Litig*. No. 07-1827, 2011 WL 4501223, *13 (N.D. Cal.

37

Sept. 28, 2011); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,* 737 F. Supp. 2d 380, 447 (E.D. Pa. 2010).

**Connection too Attenuated (New York).** Indirect purchasers have standing to bring unjust enrichment claims under New York law, *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 778 N.Y.S.2d 147 (2004), and that standing extends to "discrete physical objects that do not change form or become an indistinguishable part of" other products. *In re TFT-LCD (Flat Panel) Antitrust Litig.* No. 07-1827, 2011 WL 4501223, *10 (N.D. Cal. Sept. 28, 2011). *Sperry v. Compton Corp.*, 863 N.E.2d 1012 (N.Y. 2007), is inapposite because that case involved rubber chemicals that constitute a tiny, unidentifiable ingredient in the manufacturing process of tires purchased by end consumers. *See id.* at 216; *cf. In re Canon Cameras Litig.,* No. 05-7233, 2006 WL 1751245, *2 (S.D.N.Y., June 23, 2006) ("The cases on which defendant relies suggest, at most, only that some relationships may be too attenuated to support an unjust enrichment claim.").

**Mistake of Fact (Mississippi).** In Mississippi, "[t]he doctrine of unjust enrichment or recovery . . . applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong." *Kersey v. Fernald*, 911 So.2d 994, 997 (Miss. App. 2005) (quoting *Dew v. Langford*, 666 So. 2d 739, 745 (Miss. 1995)). The concept of "good conscience and justice" is not limited. Indirect purchasers of price-fixed products have successfully pleaded unjust enrichment claims under Mississippi law. *See, e.g., Eggs,* No. 08-2002, 2012 WL 935669, *34 (E.D. Pa. Mar. 20, 2012); *In re TFT-LCD (Flat Panel) Antitrust Litig.* No. 07-1827, 2011 WL 4501223, *8-9 (N.D. Cal.

Sept. 28, 2011); *cf. In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D 672, 697 n.40 (S.D. Fla. 2004).

     *No Cause of Action (California).*   "California courts, including the Supreme Court of California, have acknowledged that parties may pursue causes of action arising from an unjust enrichment claim . . . ."  *Eggs,* 851 F.Supp.2d 913-914 (citing *Ghirardo v. Antonioli,* 924 P.2d 996, 1002–03 (Cal. 1996)).  While "there appears to be something of a schism among California state courts as to this point of law," *id.*, "the weight of authority indicates that California law recognizes a cause of action for unjust enrichment/restitution."  *Wilder v. JP Morgan Chase Bank, N.A.* No. 09-834, 2009 U.S. Dist. LEXIS 124242 (C.D. Cal. Nov. 25, 2009).

## VI.    PLAINTIFFS HAVE PLEADED FACTS THAT PLAUSIBLY ESTABLISH THE SIGNIFICANT POSSIBILITY OF FUTURE HARM ENTITLING THEM TO INJUNCTIVE RELIEF [35]

     Plaintiffs have adequately pleaded a significant risk that Defendants' unlawful pricing activities will persist or resume in the future.  Section 16 of the Clayton Act provides that "[a]n antitrust plaintiff seeking injunctive relief need only show a threatened injury, not an actual one."  *Lucas Auto. Eng'g Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998).  Plaintiffs allege that Defendants have engaged in a "decade-long conspiracy to unlawfully fix and artificially raise the prices" of AWHSs.  AD CCC ¶1; EP CAC ¶1; *see also,* AD CCC ¶¶156-60, 166-67, 198, 235, 245, 255; EP CAC ¶¶154-57, 163, 211-12, 221, 231.  Despite the guilty pleas, there have been no public disclosures on the extent or nature of Defendants' plans for antitrust compliance.   The DOJ has not filed a civil action, and thus there will not be a Government-imposed injunction.  Finally, AD Plaintiffs will continue to be exposed to harm

---

[35] Plaintiffs hereby incorporate by reference Direct Purchaser Plaintiffs' arguments in opposition to dismissal of their claim for injunctive relief.

from collusive input price increases in the future given long-standing relationships between them and the OEMs who supply their vehicles and replacement AWHS.  Courts have found similar allegations and scenarios sufficient to sustain a nationwide injunctive relief claim.  *See In re TFT-LCD (Flat Panel) Antitrust Litigation,* 267 F.R.D. 583, 595-97 (N.D. Cal. 2010); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 610-11 (N.D. Cal. 2009); *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718, at *8 (N.D. Cal. Apr. 19, 2012).[36]

Defendants' assertion that the government investigations and the criminal pleas make any ongoing threatened injury implausible is unpersuasive.  Courts have recognized that the presence of finite time periods in criminal pleas or class periods do not preclude a claim for injunctive relief.  *See LCD*, 267 F.R.D. at 597; *SRAM*, 264 F.R.D. at 611.  Without injunctive relief, Defendants could readily continue to sell and/or resume selling their products at higher prices. Defendants' motion to dismiss Plaintiffs' claim for injunctive relief should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Collective Motion to Dismiss the AD and EP Plaintiffs' Complaints should be denied.  Alternatively, AD and EP Plaintiffs request leave to file further amended complaints pursuant to Federal Rule of Civil Procedure 15 should this Court grant any of Defendants' Motion.

---

[36] Defendants' reliance on *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 522 F.3d 6, 14 (1st Cir. 2008), is misplaced as there, the threatened injury was lacking where the record showed that the "'perfect storm' that allegedly precipitated massive arbitrage opportunities for selling Canadian cars in the United States ceased long ago."

Dated:  September 11, 2012                 **COTCHETT, PITRE & McCARTHY, LLP**

                                           By   _/s/ Frank C. Damrell_____

                                           Joseph W. Cotchett
                                           Frank C. Damrell
                                           Steven N. Williams
                                           Adam J. Zapala
                                           Gene W. Kim
                                           **COTCHETT, PITRE & McCARTHY, LLP**
                                           San Francisco Airport Office Center
                                           840 Malcolm Road, Suite 200
                                           Burlingame, CA 94010
                                           Telephone: (650) 697-6000
                                           Facsimile: (650) 697-0577
                                           jcotchett@cpmlegal.com
                                           fdamrell@cpmlegal.com
                                           swilliams@cpmlegal.com
                                           azapala@cpmlegal.com
                                           gkim@cpmlegal.com

Dated:  September 11, 2012                 **LABATON SUCHAROW LLP**

                                           By   _/s/ Hollis Salzman_____

                                           Hollis Salzman
                                           Bernard Persky
                                           William V. Reiss
                                           **LABATON SUCHAROW LLP**
                                           140 Broadway
                                           New York, NY 10005
                                           Telephone: (212) 907-0700
                                           Facsimile: (212) 883-7058
                                           hsalzman@labaton.com
                                           bpersky@labaton.com
                                           wreiss@labaton.com

Dated:  September 11, 2012

**SUSMAN GODFREY L.L.P.**

By  __/s/ Marc M. Seltzer_____

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Attorneys for End-Payor Plaintiffs*

Dated:  September 11, 2012

**THE MILLER LAW FIRM, P.C.**

By  __/s/ E. Powell Miller_____

E. Powell Miller (P39487)
Adam T. Schnatz (72049)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

*Liaison Counsel for End-Payor Plaintiffs*

42

Dated:  September 11, 2012

**MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.**

By___/s/ *Gerard V. Mantese*_____
Gerard V. Mantese (Michigan Bar No. P34424)
David Hansma (Michigan Bar No. P71056)
Brendan Frey (Michigan Bar No. P70893)
Joshua Lushnat (Michigan Bar No. P75319)
**MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

*Liaison Counsel for Auto Dealer Plaintiffs*

Dated:  September 11, 2012

**BARRETT LAW GROUP, P.A.**

By ___/s/ *Don Barrett*_____

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Dated:  September 11, 2012                    **CUNEO GILBERT & LADUCA, LLP**

By ___/s/ *Jonathan W. Cuneo*_____

Jonathan W. Cuneo
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Phone: (202) 789-3960
Fax: (202) 789-1813
jonc@cuneolaw.com
Vicky@cuneolaw.com

Joel Davidow
Daniel Cohen
**CUNEO GILBERT & LADUCA, LLP**
Bethesda, Maryland
8120 Woodmont Ave
Suite 810
Bethesda, MD 20814
Phone: (202) 789-3960
joel@cuneolaw.com

Michael J. Flannery
**CUNEO GILBERT & LADUCA, LLP**
300 North Tucker Boulevard
Suite 801
St. Louis, MO 63101
Phone: (202) 789-3960
Fax: (202) 789-1813
mflannery@cuneolaw.com

Dated:  September 11, 2012          **LARSON • KING, LLP**

By ___/s/ *Shawn M. Raiter*_____

Shawn M. Raiter
Paul A. Sand
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

*Attorneys for Auto Dealer Plaintiffs*