# EXHIBIT 3

# EXHIBIT 3

## INDIRECT-PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' EXHIBIT D
## REGARDING ANTITRUST STANDING UNDER STATE ANTITRUST STATUTES (MOT. SECTION III.A)

| | State | Defendants' Exhibit D | Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority |
|---|---|---|---|
| 1. | **Arizona** | Ariz. Rev. Stat. § 44-1412; *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F. Supp. 2d 1129, 1134-42 (N.D. Cal. 2008). | The cited statute provides no "clear directive" that *AGC* applies. Rather the Arizona "harmonization statute" is merely permissive and only looks to federal antitrust statutes for guidance. Ariz. Rev. Stat. Ann. § 44-1412 ("the courts may use as a *guide* interpretations given by the federal courts to comparable federal antitrust statutes.") (emphasis added). *See In Re G-Fees Antitrust Litig.*, 584 F.Supp.2d 26, 38 (D.C. 2008) ("Arizona's [antitrust] statute permits, but does not require, a court enforcing Arizona's antitrust statute apply federal case law interpreting comparable federal antitrust provisions").<br><br>The Arizona Supreme Court broadly interpreted Arizona's antitrust standing law to "comport [] with the longstanding policy of this state to protect consumers and deter anticompetitive behavior." *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 110 (Ariz. 2003). *Id.* at 106 (with regard to harmonization provision, desired uniformity extends only to the standard of conduct required, not "procedural matters such as who may bring an action for injuries caused by violations of the standard of conduct"); *see also In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d at 38 (*Bunker's Glass* "implicitly declined" to apply *AGC* factors). |
| 2. | **California** | *Vinci v. Waste Mgmt., Inc.* 36 Cal. App. 4th 1811, 1814 (Cal. Ct. App. 1995) | *Vinci* is not an indirect purchaser case. It involved an attempt to transform a time-barred wrongful termination claim into an antitrust claim. *Vinci* denied standing based on the fact that the loss of plaintiff's job "was not the type of loss the antitrust statute was intended to forestall," the injury did not result from defendant's "acquisition of market power," plaintiff was not a target of defendant's alleged |

| | State | Defendants' Exhibit D | Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority |
|---|---|---|---|
| | | | anticompetitive scheme, and plaintiff's remedy was a wrongful termination action, not an antitrust claim. *Vinci*, 36 Cal. App. 4th 1816-17.<br><br>The only time that the California Supreme Court has addressed whether *AGC* should apply, it held that *AGC* did not apply. *See Korea Supply Co. v. Lockhead Martin Corp.*, 63 P.3d 937, 957 n. 13 (Cal. 2003) (refusing to apply *AGC* to a claim for intentional interference with prospective economic advantage). *See also Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1234 (1993) (holding that federal antitrust cases "merely define the term 'antitrust injury' for purposes of federal antitrust laws," and that "the more restrictive definition of 'antitrust injury' under federal law does not apply to section 16750."); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir. 2000) (holding "'the more restrictive definition of 'antitrust injury' under federal law does not apply" to the Cartwright Act.'") (*quoting Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1234 (1993); *State ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal. 3d 1147, 1164 (1988) (judicial interpretation of the Sherman Act "is not directly probative of the Cartwright Act's drafters' intent"); *Cianci v. Superior Court*, 40 Cal. 3d 903, 920 (1985) ("the Cartwright Act is broader in range and deeper in reach than the Sherman Act . . . ."); *cf. Stanislaus Food Products Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1070-72 (E.D. Cal. 2011) (applying principles of antitrust standing under California's Cartwright Act to indirect purchaser claims); *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1125 (N.D. Cal. 2003) ("[U]nder the California law, an indirect purchaser of goods or services is deemed to participate as a customer in the relevant market and thus may suffer a cognizable antitrust injury"). |
| 3. | **District of Columbia** | *Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761, at *4-6 (D.C. Super. Ct. Apr. 22, | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out |

|   | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
|   |   | 2005) | of others' antitrust claims. In *Peterson*, the D.C. trial court found that the *Visa* plaintiff lacked standing under the D.C. antitrust statute "because he is not an indirect purchaser of defendants' debit card services" and he "does not fit anywhere in the chain of distribution for defendants' debit card services." *Peterson,* 2005 WL 1403761, at *2.<br><br>*Compare Holder v. Archer Daniels Midland Co.*, 1998 WL 1469620, at *2-3 (D.C. Super Nov. 4, 1998) (noting that "core of the standing issue" is controlled by intent behind state law, and that "Justice Brennan's dissent [in *Illinois Brick*] provides a useful backdrop for analyzing the Council's intent in passing [D.C. Code] Section 4509(a);" and, holding that consumers who purchased products with high fructose corn syrup stated a claim under D.C. Antitrust Act). |
| 4. | **Hawaii** | Haw. Rev. Stat. § 480-3 | The cited statute provides no "clear directive" that *AGC* applies. Rather the Hawaii "harmonization statute" is merely permissive and only looks to federal antitrust statutes for guidance. Haw. Rev. Stat. § 480-3 ("This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, *except that lawsuits by indirect purchasers may be brought* as provided in this chapter.") (emphasis added). *Compare In re Flash Memory Antitrust Litig.*, 643 F.Supp.2d 1133, 1151-53 (N.D. Cal. 2009) (questioning whether "a state's harmonization provision, whether created by statute or common law, is an appropriate means of predicting how a state's highest court would rule regarding the applicability of *AGC*"). |
| 5. | **Illinois** | *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 827–28 (7th Cir. 1999); *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 990 (Ill. 1990) (noting that "when the wording of this Act is | Neither case explicitly holds that *AGC* test would apply to an Illinois state antitrust claim. In *Teamsters*, the Seven Circuit affirmed the district court's dismissal of health insurers' suit seeking to hold tobacco companies liable for costs of smokers' health care, because the claims relied entirely on injuries to smokers and were too remote to support |

|  | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
|  |  | identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act."). | recovery. In *Laughlin*, the court looked to federal law in determining whether price discrimination can be violative of the Illinois Antitrust Act because the *standard of conduct* is not clearly provided in the Act or in state decisions interpreting the Act. *Laughlin*, 550 N.E.2d at 990. |
| 6. | **Iowa** | *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198-99 (Iowa 2007) | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. *Southard* only cited *AGC* in determining whether "persons who were *not* indirect purchasers and who suffered injuries *even more remote than those sustained by indirect purchasers* had standing" under Iowa antirust law due to Iowa's "common-law remoteness doctrine." *Id.* at 196-99 (emphasis added). *Compare Lorix v. Crompton Corp.*, 736 N.W. 2d 619 (Minn. 2007). |
| 7. | **Kansas** | *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943, 2011 U.S. Dist. LEXIS 121373 at *22, n. 9 (D.N.J. 2011) | In *Magnesium Oxide*, the court dismissed indirect purchasers' claims on the grounds that the plaintiffs failed to specify the products they purchased that contained the relevant magnesium oxide products. *Magnesium Oxide,* 2011 WL 5008090, at *7 (D.N.J. Oct. 20, 2011). *Compare Bellinder v. Microsoft Corp.,* 2001 WL 1397995, at*1 n.1 (Kan. Dist. Ct. Sept. 7, 2001) (concluding that "Kansas' repealer statute . . . grants an individual indirect purchaser standing" and certifying a class of indirect purchasers of Microsoft software); *Four B. Corp. v. Daicel Chem. Indus., Ltd.,* 253 F. Supp. 2d 1147, 1150-53 (D. Kan. 2003) (holding that plaintiffs who bought food products containing allegedly price-fixed chemical preservatives had standing under Kansas' repealer statute). |
| 8. | **Maine** | *Knowles v. Visa U.S.A. Inc.*, No. CV-03-707, 2004 WL 2475284, at *5 (Me. Super. Ct. Oct. 20, 2004); *see also In re Motor Vehicles Canadian Export Antitrust Litig.*, 235 F.R.D. 127, 134 (D. | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. In *Knowles,* the trial court noted that Maine's highest court would not apply *AGC* factors where "those factors cannot |

|   | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
|   |   | Me. 2006) | be reconciled with the legislature's adoption of the *Illinois Brick* repealer." *Knowles,* 2004 WL 2475284, at *5. |
| 9. | **Michigan** | Mich. Comp. Laws § 445.784(2) ("in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes . . ."); *see also Stark v. Visa U.S.A. Inc*., No. 03-055030-CZ, 2004 WL 1879003, at *2-4 (Mich. Cir. Ct. July 23, 2004) (Ex. UU); *Am. Council, Certified Podiatric Physicians v. Am. Board Podiatric Surgery, Inc*., 185 F.3d 606, 619 n.4 (6th Cir. 1999) ("Because Michigan antitrust law follows federal precedents, our reasoning regarding the federal antitrust claims applies equally to the state antitrust claims."); *Zuccarini v. Hoescht (In re Cardizem CD Antitrust Litig.)*, 200 F.R.D. 326, 332 n. 4 (E.D. Mich. 2003) ("The Michigan Antitrust Reform Act is patterned after the federal Sherman Antitrust Act, . . . and Michigan courts have observed that federal court interpretation of the Sherman Antitrust Act is persuasive authority as to the meaning of the Michigan Antitrust Reform Act.") | The cited statute provides no "clear directive" that *AGC* applies. Rather he Michigan "harmonization statute," Mich. Comp. Laws § 445.784(2), is merely permissive and only looks for federal antitrust statutes for guidance. Also, the cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. In *Stark*, the trial court noted that courts in repeater states have only applied "antitrust standing requirements to dismiss the claims of plaintiffs who assert only derivative or remote injuries." *Stark,* 2004 WL 1879003, at *4. *Compare Flash Memory,* 643 F. Supp. 2d at 1152 (declining to apply *AGC* to indirect purchasers' claims under Michigan antitrust law). |
| 10. | **Mississippi** | *Owens Corning v. R.J. Reynolds Tobacco Co*., 868 So. 2d 331, 344 (Miss. 2004) (following federal law and holding that plaintiffs' claims were too remote to confer antitrust standing). | *Owens* is not an indirect purchaser case, and did not involve claims of price-fixing or bid rigging. It involved a suit by an asbestos producer seeking to hold tobacco companies liable for its expenditures on asbestos claims where the asbestos claimants also smoked. The court held that the asbestos producer's alleged injury from tobacco companies' conspiracy |

|  | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
|  |  |  | was too remote to be compensable. *Owens*, 868 So. 2d 331, 339, 344.<br><br>*Compare In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1097 (N.D. Cal. 2007) ("*GPU II*") (holding that "favorable citations" to federal antitrust law in Mississippi cases "are not sufficient to mandate that the *AGC* test applies"); *Flash Memory,* 643 F. Supp. 2d at 1152 (declining to apply *AGC* to indirect purchasers' claims under Mississippi antitrust law). |
| 11. | **Nebraska** | *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 289 (Neb. 2006). | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. *Kanne,* 723 N.W.2d at 298 (finding *Visa* plaintiffs' alleged injuries derivative and remote because they "do not allege that they were injured directly, or even indirectly, by purchasing debit processing services in a chain of distribution."). *Compare Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 38 (Neb. 2004) ("[t]o deny the indirect purchaser, who in this case is the ultimate purchaser, the right to seek relief from unlawful conduct would essentially remove the word 'consumer' from the Consumer Protection Act"). |
| 12. | **Nevada** | Nev. Rev. Stat. § 598A.050 | The cited statute provides no "clear directive" that *AGC* applies. Rather the Nevada "harmonization statute," Nev. Rev. Stat. § 598A.050, is merely permissive and only looks to federal antitrust statutes for guidance. *See Pooler v. R.J. Reynolds Tobacco Co.*, 2001 WL 403167, at *1 (Nev. Dist. Ct. Apr. 4, 2001) (holding that the state's repealer statute was enacted specifically to reverse a decision relying on Nevada's harmonization provision to deny standing to indirect purchasers under *Illinois Brick* and concluding that the legislature intended to reaffirm its original intent to allow indirect purchasers to sue); *see also Flash Memory,* 643 F. Supp. 2d at 1152 (declining to apply *AGC* to indirect |

|  | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
|  |  |  | purchasers' claims under Nevada antitrust law). |
| 13. | New Hampshire | N.H. Rev. Stat. Ann. § 356:14; *see also Minuteman v. Microsoft Corp.*, 795 A.2d 833, 839 (N.H. 2002) (holding that RSA chapter 356 should be construed consistent with the *Illinois Brick* rule). | The cited statute provides no "clear directive" that *AGC* applies. Rather the New Hampshire "harmonization statute" is merely permissive and only looks to federal antitrust statutes for guidance. N.H. Rev. Stat. Ann. § 356:14 ("the court may be *guided* by interpretations of the United States' antitrust laws") (emphasis added). In 2007, the New Hampshire Legislature adopted Senate Bill 52, a so-called *Illinois Brick* repealer, allowing indirect purchasers to sue and recover damages for a violation of the New Hampshire antitrust statute. *See* N.H. Rev. Stat. §356:11. |
| 14. | New Mexico | N.M. Stat. Ann. § 57-1-15; *see also Romero v. Philip Morris Inc.*, 242 P.3d 280, 291 (N.M. 2010) ("It is therefore the duty of the courts to ensure that New Mexico antitrust law does not deviate substantially from federal interpretations of antitrust law.") | The cited statute provides no "clear directive" that *AGC* applies. Rather the New Mexico "harmonization statute," N.M. Stat. Ann. § 57-1-15, is merely permissive and only looks to federal antitrust statutes for guidance. Defendants' quotation from *Romero* merely addresses the standard of conduct required to prove an antitrust violation under the New Mexico Antitrust Act. *Romero*, 242 P.3d at 291.<br><br>*Compare Romero v. Philip Morris Inc.,* 109 P.3d 768, 770 (N.M. Ct. App. 2005) (confirming that New Mexico's repealer statute permits "indirect purchasers to prove overcharges"); *In re New Mexico Indirect Purchasers Microsoft Corp. Antitrust Litig.,* 149 P.3d 976, 983-84 (N.M. Ct. App. 2006) (describing trial court decisions which denied a motion to dismiss and subsequently certified a class of computer purchasers). |
| 15. | New York | *Ho v. Visa U.S.A. Inc.*, No. 112316/00, 2004 WL 1118534, at *3 (N.Y. Sup. Ct. Apr. 21, 2004) (Ex. W), *aff'd* 16 A.D.3d 256 (N.Y. App. Div. 2005) (applying *ACG* factors to Gen. Bus. Law § 340 claim and denying indirect purchaser | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. *Compare Cox v. Microsoft Corp.*, 2005 WL 3288130, at *5 (N.Y. Sup. Ct. July 29, 2005) (holding that computer purchaser plaintiffs had adequately alleged injury because Microsoft's |

|  | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
|  |  | standing). | "inflated prices [were] passed [on] to consumers.") |
| 16. | **North Carolina** | *Teague v. Bayer*, 671 S.E.2d 550, 555-57 (N.C. Ct. App. 2009); *N.C. Steel, Inc. v. Nat'l Council on Compensation Ins.*, 472 S.E.2d 578, 582–83 (N.C. Ct. App. 1996*), aff'd in part and rev'd in part on other grounds,* 496 S.E.2d 369 (N.C. 1998) ("Our Supreme Court has held that federal precedent is instructive in interpreting Chapter 75 due to the similarity between provisions of Chapter 75 and the federal antitrust laws."); *see also In re Plavix Indirect Purchaser Litig.*, No. 1:06-cv-226, 2011 WL 335034 (S.D. Ohio 2011) (Ex. DD). | *Teague v. Bayer AG*, 671 S.E.2d 550, 555-58 (N.C. Ct. App. 2009) (holding that *AGC* factors do not apply in determining indirect-purchaser standing in a component case under North Carolina's antitrust law and plaintiff has standing to bring the antitrust and consumer fraud action); *Hyde v. Abbott Laboratories, Inc.,* 473 S.E.2d 680, 684-85 (N.C. Ct. App. 1996) (North Carolina's antitrust statute authorizes indirect purchaser to sue). |
| 17. | **North Dakota** | *Beckler v. Visa U.S.A. Inc.*, No. Civ. 09-04-C-00030, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004) (Ex. P). | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. *Beckler v. Visa U.S.A*, although it cited *AGC*, does not discuss any of its factors. It also draws the same distinction as the other *Visa* cases between indirect purchasers and the *Visa* plaintiffs, who "are not indirect purchasers within the scope of North Dakota Uniform State Antitrust Act." *Id.* at *4. *Compare Howe v. Microsoft Corp.,* 656 N.W.2d 285 (N.D. 2003) (upholding certification of indirect-purchaser class of computer purchasers in a Microsoft case). |
| 18. | **Oregon** | Or. Rev. Stat. § 646.715 (2); *see also N.W. Med. Labs., Inc. v. Blue Cross & Blue Shield,* 794 P.2d 428, 433 (Or. 1990) (acknowledging that Or. Rev. Stat. § 646.715 (2) requires Oregon courts to review federal case law when interpreting Or. | The cited statute provides no "clear directive" that *AGC* applies. Rather the Oregon "harmonization statute," Or. Rev. Stat. § 646.715 (2), is merely permissive and only looks to federal antitrust statutes for guidance. *See GPU II,* 540 F. Supp. 2d at 1097 ("favorable citations" to federal antitrust law in state cases "are not sufficient to mandate that the |

|  | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
|  |  | Rev. Stat. § 646.725). | *AGC* test applies"). |
| 19. | **South Dakota** | *Cornelison v. Visa U.S.A. Inc.*, Hearing Transcript, No. CIV 03-1350 (S.D. Cir. Ct. 2004) (Ex. S) (noting state trial court's employment of *AGC* factors in dismissing claims based on lack of antitrust standing); *see also In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d 85, 99 (S.D. 2005) ("Because of the similarity of language between federal and state antitrust statues…great weight should be given to the federal cases interpreting the federal statute" (citing *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985))). | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. Defendants rely on an oral bench ruling by a trial court in *Cornelison* that stated it was relying on several *AGC* factors in granting a motion to dismiss in a *Visa* case not involving indirect purchasers. *Compare In re South Dakota Microsoft Antitrust Litig.,* 657 N.W.2d 668 (S.D. 2003) (upholding certification of indirect-purchaser class of computer purchasers in a Microsoft case); *Flash Memory,* 643 F. Supp. 2d at 1152 (declining to apply *AGC* to indirect purchasers' claims under South Dakota antitrust law). |
| 20. | **Tennessee** | *Tenn. Med. Ass'n v. Blue Cross Blue Shield of Tenn., Inc.*, 229 S.W.3d 304, 307 (Tenn. Ct. App. 2007) (citing *AGC* for its causation standard and applying that standard to the Tennessee consumer protection and trade practices statute). | *Tenn. Med. Ass'n* is not an indirect purchaser case. It involved a follow-on suit filed by TMA, a nonprofit corporation, after its member physicians sued health insurer for the insurer's refusal to reimburse medically necessary charges claimed by the physicians. The court held that TMA's claim was too remote to qualify for the protection of Tennessee Consumer Protection Act because it *failed to identify any consumer transaction* or other exchange between itself and the insurer. 229 S.W.3d at 307-308.<br><br>*Compare D.R. Ward Const. Co. v. Rohm & Haas, Co.,* 470 F. Supp. 2d 485, 499 (E.D. Pa. 2006) (recognizing that indirect purchasers are "real victims" of antitrust conduct, the court "predicts that the Supreme Court of Tennessee . . . would apply traditional standing requirements rather than the *AGC* analysis to determine whether the injuries suffered by an indirect purchaser are too remote to confer standing under the TTPA"). |

|  | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
| 21. | **Utah** | Utah Code Ann. § 76-10-926. | The cited statute provides no "clear directive" that *AGC* applies. Rather the Utah "harmonization statute" is merely permissive and only looks to federal antitrust statutes for guidance. Utah Code Ann. § 76-10-926 ("the courts, in construing the act, will be *guided* by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes") (emphasis added). *See* Utah Code §76-10-918 ("Actions may be brought under this section regardless of whether the plaintiff dealt directly or indirectly with the defendant"). No Utah cases construe the *Illinois Brick* indirect purchaser doctrine. |
| 22. | **Vermont** | *Fucile v. Visa U.S.A., Inc.*, No. 51560-03 CNC, 2004 WL 3030037 at *2-4 (Vt. Super. Ct. Dec. 27, 2004) (Ex. V). | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. *D.R. Ward,* 470 F. Supp. 2d 485 at 501 (casting doubt that the Vermont Supreme Court would adopt the *AGC* factors for determining standing under the VCDA); *Elkins v. Microsoft Corp.*, 817 A.2d 9, 17 (Vt. 2002) (expressly rejecting the argument "that the definition of who may sue under the Act [VCFA] must be consistent with the definition of who may sue under federal antitrust law"). |
| 23. | **West Virginia** | W. Va. Code § 47-18-16; *see also Kessel v. Monongalia County Gen. Hosp. Co.*, 648 S.E.2d 366, 375 (W. Va. 2007) ("The courts of this state are directed by the legislature in W.Va. Code § 47-18-16 (1978) to apply the federal decisional law interpreting the Sherman Act, 15 U.S.C. 1, to our own parallel antitrust statute."); *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587, 598-99 (W.Va. 2009) (following federal law to hold that plaintiffs failed to demonstrate antitrust | The cited statute provides no "clear directive" that *AGC* applies. Rather the West Virginia "harmonization statute," W. Va. Code § 47-18-16, is merely permissive and only looks to federal antitrust statutes for guidance. *See* W. Va. Code § 142-9.1.6 (requiring that the repealer statute "be liberally construed to effectuate the beneficial purposes of the West Virginia Antitrust Act"); *see also GPU II,* 540 F. Supp. 2d at 1097 (noting that no state court in West Virginia has reached the question of whether *AGC* applies and rejecting defendants' harmonization argument); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1122-23 (N.D. Cal. 2008) (agreeing with *GPU II* on the *AGC* issue). |

|  | **State** | **Defendants' Exhibit D** | **Defendants' Authority Distinguished and Indirect-Purchaser Plaintiffs' Responsive Authority** |
|---|---|---|---|
|  |  | injury). |  |
| 24. | **Wisconsin** | *Strang v. Visa U.S.A., Inc.*, No. 03 CV 011323, 2005 WL 1403769, at *3-5 (Wis. Cir. Ct. Feb. 8, 2005) (Ex. VV). | The cited *Visa* case does not involve indirect purchasers of price-fixed component products, but plaintiffs claiming derivative injuries arising out of others' antitrust claims. *Compare Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 154 (Wis. 2005) (quoting legislative history stating that an intended purpose of the statute was to allow indirect purchasers of price-fixed hardware incorporated in buildings to recover), *Szukalski v. Crompton Corp.*, 726 N.W.2d 304, 307 n.6, *abrogated on other grounds, Meyers v. Bayer AG, Bayer Corp.*, 735 N.W.2d 448 (Wis. 2007) (holding that indirect purchasers in a tire-chemical case have standing based on the Wisconsin legislature's direction that its antitrust statute "be interpreted in a manner which gives the most liberal construction to achieve the aim of competition," and the Wisconsin's Supreme Court's direction "not to construe the standing requirement narrowly."), *and Flash Memory,* 643 F. Supp. 2d at 1152 (declining to apply *AGC* to indirect purchasers' claims under Wisconsin antitrust law) *with Strang, supra*. |