**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS CASES** | |
| **THIS RELATES TO:** | |
| **ALL DEALERSHIP ACTIONS AND ALL END-PAYOR ACTIONS** | W:12-cv-00102-MOB-MKM<br>W:12-cv-00103-MOB-MKM |

**AUTOMOBILE DEALER AND END PAYOR PLAINTIFFS'**
**OPPOSITION TO DEFENDANT S-Y SYSTEMS TECHNOLOGIES EUROPE GMBH'S**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION**
**COMPLAINTS FOR LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

COUNTERSTATEMENT OF ISSUES PRESENTED .................................................... iv

CONTROLLING AUTHORITIES .................................................................................. v

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT ................................................................................................................... 4

    I.    There Is Specific Jurisdiction Over S-Y Systems Because It Was Involved In A Conspiracy Designed To Have An Effect In The United States ................................................................................................................. 5

    II.    Specific Jurisdiction Exists Against S-Y Systems For Its Engaging In An Antitrust Conspiracy To Fix, Maintain, And/Or Stablilize The Price of Automotive Wire Harness Systems ........................................................ 6

        a.    S-Y Systems Purposefully Availed Itself Of The Laws Of The United States ............................................................................................... 7

            i.    S-Y Systems Is Subject To The Laws Of The United States Because It Furthered Its Scheme Through Communication With The United States ........................................ 7

            ii.    S-Y Systems Is Subject To The Laws Of The United States Having Placed Its Automotive Wire Harness Systems In The Stream Of Commerce After Having Fixed Prices .................................................................................... 9

            iii.    S-Y Systems's Purported Lack Of Contacts With The United States Is Not Determinative ............................................... 11

        b.    Plaintiffs' Causes of Action Arise From S-Y Systems's Activities In The United States ................................................................. 12

        c.    Personal Jurisdiction Over S-Y Systems Is Reasonable ........................... 13

    III.    Should The Could Require Additional Factual Support Prior To Finding Personal Jurisdiction Over The S-Y Systems, Plaintiffs Respectfully Request That They Be Granted Jurisdictional Discovery ................ 15

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Bledsoe v. Emery Worldwide Airlines*,
  258 F. Supp. 2d 780 (S.D. Ohio 2003) ........................................................................ 7

*Bridgeport Music, Inc. v. Still N the Water Publishing*,
  327 F.3d 472 (6th Cir. 2003) ...................................................................................... 12

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) .............................................................................. 6, 7, 10

*Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*,
  589 F. Supp. 2d 490 (D. Del. 2008)............................................................................. 9

*Chrysler Corp. v. Fedders Corp.*,
  643 F.2d 1229 (6th Cir.1981) ........................................................................... 7, 8, 9, 14

*Dean v. Motel 6 Operating L.P.*,
  134 F.3d 1269 (6th Cir. 1998) ..................................................................................... 6

*Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*,
  189 F. Supp. 2d 696 (W.D. Mich. 2002) ................................................................... 12

*Drexel Chemical Co. v. SGS Depauw & Stokoe*,
  59 F.3d 170, 1995 WL 376722 at *2 (6th Cir.1995) ................................................... 7

*Eastman Outdoors Inc. v. Archery Trade Ass'n*,
  CIV. 05-74015, 2006 WL 1662641 (E.D. Mich. June 6, 2006) ............................ 10, 16

*Flagstar Bank, FSB v. Wounderberg*,
  2010 WL 1027860, *5 (E.D. Mich. Mar. 17, 2010) .................................................. 17

*General Motors Corp. v. Ignacio Lopez de Arriortua*,
  948 F.Supp. 656 (E.D. Mich. 1996)........................................................................... 10

*GSI Group Inc. v. Glass Inc. Int'l*,
  06-15396, 2007 WL 1008359, *5 (E.D. Mich. Mar. 29, 2007)................................... 15

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000)................................................................ 11, 12

*In re Packaged Ice Antitrust Litig.*,
  723 F. Supp. 2d 987 (E.D. Mich. 2010)........................................................................ 6

*Inc. v. Imago Eyewear Pty Ltd.*,
  03-74761, 2004 WL 5569067 (E.D. Mich. Oct. 12, 2004)........................................ 18

*Inc. v. Imago Eyewear Pty, Ltd.*,
  167 F. App'x 518 (6th Cir. 2006) .................................................................. 18

*J & M Associates, Inc. v. Callahan*,
  CIV.A. 07-0883-CG-C, 2011 WL 5553696, at *5 (S.D. Ala. Nov. 15, 2011) .................. 9

*J. McIntyre Mach., Ltd. v. Nicastro*,
  131 S. Ct. 2780 (2011) ............................................................................. 13

*K Mart Corp. v. Knitjoy Mfg., Inc.*,
  534 F. Supp. 153 (E.D. Mich. 1981) ............................................................... 12

*Kent Display Sys., Inc. v. Advanced Display Sys., Inc.*,
  238 F.3d 422 (6th Cir. 2000) ...................................................................... 18

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
  410 F. Supp. 2d 592 (E.D. Ky. 2006) ........................................................... 8, 9

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
  106 F.3d 147 (6th Cir. 1997) ...................................................................... 15

*Mott v. Schelling & Co.*,
  966 F.2d 1453 (6th Cir. 1992) ..................................................................... 12

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*,
  166 F. Supp. 2d 1155 (E.D. Mich. 2001) .......................................................... 18

*Poyner v. Erma Werke Gmbh*,
  618 F.2d 1186 (6th Cir. 1980) ..................................................................... 12

*Recaro N. Am., Inc. v. Holmbergs Childsafety Co., Ltd.*,
  09-12256, 2010 WL 1658033 ......................................................................... 12

*Tech. & Services, Inc. v. TACS Automation, LLC*,
  CIV.A. 2:09-CV-1113, 2010 WL 2640047 (S.D. Ohio June 29, 2010) ........................... 7

*Theunissen v. Matthews*,
  935 F.2d 1454 (6th Cir.1991) ................................................................... 6, 17

*Third Nat. Bank in Nashville v. WEDGE Group Inc.*,
  882 F.2d 1087(6th Cir. 1989 ..................................................................... 6, 7

*Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*,
  688 F. Supp. 2d 693 (E.D. Mich. 2009) ........................................................... 8

*Welsh v. Gibbs*,
  631 F.2d 436 (6th Cir.1980) ....................................................................... 6

2400659v1/012878

## COUNTERSTATEMENT OF ISSUE PRESENTED

Whether in light of S-Y Systems Technologies Europe GmbH's ("S-Y Systems") actions in furthering the alleged conspiracy through communications with the United States and by placing its products in the stream of commerce with the intent to reach this forum Plaintiffs have met their burden of showing that S-Y Systems had sufficient minimum contacts with the United States to support personal jurisdiction?

## CONTROLLING AUTHORITIES

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

*Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000)

*Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir.1981)

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997)

*LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293 (6th Cir. 1989)

Federal Rule of Civil Procedure 12

2400659v1/012878

## INTRODUCTION

Defendant S-Y Systems Technologies Europe GmbH ("S-Y Systems") engaged in a conspiracy to fix the prices of Automotive Wire Harness Systems.[1] Although S-Y Systems seeks to evade liability on personal jurisdiction grounds, S-Y Systems has purposefully availed itself to the laws of the United States such that it would be proper to exercise specific jurisdiction over it and, additionally, participated in a conspiracy affecting consumers in the United States. Because each of these facts subject it to personal jurisdiction, S-Y Systems's Motion to Dismiss [D.E. 235] should be denied.

## BACKGROUND

S-Y Systems has conspired, along with other defendants, to fix, maintain, and/or stabilize the prices of Automotive Wire Harness Systems sold directly and indirectly to consumers in the United States. As alleged in Plaintiffs' Complaints,[2] the European Commission Competition Authority ("EC") conducted dawn raids at the European office of S-Y Systems because it and other parties "may have violated European Union antitrust rules that prohibit cartels and restrictive business practices." Auto Dealer Compl. ¶ 170; End-Payor Compl. ¶ 166. S-Y Systems has admitted that it is now cooperating with the EC antitrust investigators. Auto Dealer Compl. ¶ 171; End-Payor Compl. ¶ 167. Continental AG, currently a 50% owner of S-Y Systems, acknowledged in its 2011 Annual Report that anticompetitive behavior occurred within an unnamed business unit of S-Y Systems and that additional violations could have occurred:

---

[1] The phrase Automotive Wire Harness System includes: automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, high voltage wiring and power distributors. *See* Consolidated Amended Class Action Complaint for the Automobile Dealer Actions [D.E. 85] at ¶ 3 ("Auto Dealer Compl."), and the End-Payor Actions [D.E. 174] ¶ 3 ("End-Payor Compl.") (collectively referred to as "Complaints").

[2] The term "Plaintiffs" refers to the plaintiffs and putative classes alleged in the Auto Dealer Compl. ¶¶ 22-85, 217-218(ee), and the End Payor Compl. ¶¶ 19-71, 188-189.

1

Continental has conducted internal audits in certain business units to check compliance with antitrust law.  These audits revealed anticompetitive behavior with respect to one product group. Continental took measures to end this behavior. There is a risk that antitrust authorities may conduct investigations due to this behavior and impose fines and that third parties, especially customers, may file claims for damages. The amount of such fines and any subsequent claims is unknown from the current perspective, but could be significant. It also cannot be ruled out that future internal audits may reveal further actual or potential violations of antitrust law that in turn could result in fines and claims for damages.

*See* Burns Aff. ¶ 9; Ex. F (emphasis added).[3]

S-Y Systems was created by as a joint venture between Yazaki Corporation and Siemens VDO Automotive AG to be "responsible for the strategic lead with respect to BMW and Renault global programs" for the "global sale, program management and development of integrated vehicle electronic/electrical systems." *See* Burns Aff. ¶ 1;Ex. A.  It was intended to "work closely" with S-Y Systems Technologies, America, LLC ("S-Y America'), to support "one another on their respective customer programs."[4] *Id.* Indeed, on its website it states that it "nurture[s] long-term working relationships" and engaged in "decades of collaboration" with Ford – S-Y America's customer program.[5] *See* Burns Aff. ¶ 10; Ex. G.

Additionally, S-Y Systems "nurture[s] long-term working relationships" and engaged in "decades of collaboration" with BMW. *See id.* BMW sold 247,907 vehicles in the United States in 2011 alone, making BMW the top luxury brand sold in the United States for 2011. *Id.* ¶7; Ex. D. From 2000 to 2011, BMW sold over three million vehicles in the United States. *See id.* ¶ 8; Ex. E. Nevertheless, despite the fact that S-Y Systems's primary purpose for existing is the "global sale, program management and development of integrated vehicle electronic/electrical

---

[3] Citations to the "Burns Aff." refer to the Affidavit of Warren T. Burns, filed concurrently with this opposition brief.

[4] The dismissal of S-Y America without prejudice is not outcome determinative when evaluating whether Defendant personally availed itself to the laws of the United States with its relationship with S-Y America.

[5] Indeed, the Automobile Dealer Actions specifically alleges "S-Y Systems supplies Ford, among other OEMs." Auto Dealer Compl. ¶ 150.

2

systems" for its parent companies' business with BMW, a company that has sold over three million of cars in the United States, S-Y Systems claims that the United States has no personal jurisdiction over it. This is not so.

**LEGAL STANDARD**

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(2) and attaches affidavits in support of its motion, Plaintiffs may also submit affidavits to support the allegations of personal jurisdiction from their complaint. *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1019 (E.D. Mich. 2010). The Court, in its discretion, "may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991)). Plaintiffs need only present a prima facie case in support of jurisdiction. *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d at 1019. In such a case, "the burden on the plaintiff is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981)). In the event of conflicting evidence, the court should not consider any controverting evidence submitted by S-Y Systems. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)

Granting jurisdictional discovery is also within the court's discretion. The touchstone for the granting of jurisdictional discovery is whether there are unresolved questions of fact. *See Tech. & Services, Inc. v. TACS Automation, LLC,* CIV.A. 2:09-CV-1113, 2010 WL 2640047 (S.D. Ohio June 29, 2010) (granting limited jurisdictional discovery with respect to disputed questions of control for establishing personal jurisdiction under the alter-ego theory) (citing

3

*Drexel Chemical Co. v. SGS Depauw & Stokoe*, 59 F.3d 170, 1995 WL 376722 at *2 (6th Cir.1995)(table opinion); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 139 (6th Cir.1981)); *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003) *aff'd sub nom. Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836 (6th Cir. 2011) (deferring ruling on a Rule 12(b)(2) motion where there was a lingering fact sensitive question).

## ARGUMENT

Personal jurisdiction may lie over a defendant through general or specific jurisdiction. *Carrier Corp.*, 673 F.3d at 449. Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Third Nat. Bank*, 882 F.2d at 1089 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).

As S-Y Systems acknowledges, since Plaintiff's "claims arise under the Sherman Act, the relevant forum in which to apply the contacts analysis is the United States as a whole." Mem. Of Law in Supp. of Def. S-Y Systems Tech. Europe GmbH's Mot. to Dismiss the Consol.Am. Class Action Compl. for Lack of Personal Jurisdiction at 4 [D.E. 235] (hereinafter *Def. Br.*) (citing *Carrier Corp.*, 673 F.3d at 449-50). Additionally, since the long-arm statutes of each jurisdiction at issue is coextensive with constitutional due process, "the question of jurisdiction under the long-arm statute merges into a single inquiry of constitutional due process." *Id.* In the present case Plaintiffs argue there is specific jurisdiction over S-Y Systems.[6]

---

[6] For purposes of this motion, Plaintiffs do not argue that there is general jurisdiction over the Defendant, nor that the Defendant was the alter ego of another corporation. *See* Def. Br. 9-11. However, should the court grant Plaintiff jurisdictional discovery as requested in part II of this brief, Plaintiff specifically reserves the right to raise those issues at a later date after conducting jurisdictional discovery.

I.     **There Is Specific Jurisdiction Over S-Y Systems Because It Was Involved In A Conspiracy Designed To Have An Effect In The United States**

Pursuant to the conspiracy theory of jurisdiction there is specific jurisdiction over S-Y Systems in the United States. A conspiracy exists where two or more persons enter into a plan or partnership to accomplish an illegal act and the law holds every member of the conspiracy liable for the acts of every member. *See Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592, 599 (E.D. Ky. 2006) (collecting cases). When one co-conspirator commits acts in the forum which would justify the forum court exercising personal jurisdiction over it, the acts are imputed to the other co-conspirators and personal jurisdiction exists. *Id.* "The Sixth Circuit has recognized the conspiracy theory where there is some minimal factual support of the non-resident defendant's participation in the conspiracy."[7] *Id.* (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir.1981)).  As explained in End-Payor and Auto-Dealer Plaintiffs' Memorandum of Law in Response to Defendants' Collective Motion to Dismiss ("Plaintiffs' Omnibus Resp."), Plaintiffs have alleged a plausible conspiracy satisfying the "minimal factual support" of S-Y Systems's participation in the conspiracy. Plaintiffs' Omnibus Resp. §1.  Accordingly, this Court has personal jurisdiction over S-Y Systems based upon its involvement in the conspiracy with other co-conspirators for whom it is undisputed that personal jurisdiction exist.

While this Court has previously found the conspiracy theory of jurisdiction inapplicable under the facts presented by *Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*, 688 F.

---

[7] While the Sixth Circuit in *Chrysler Corp.* acknowledged the theory, it declined to adopt or reject the theory. 643 F.2d at 1237.  However, its language suggests sympathy for the theory when – as here – a plaintiff properly alleges participation in a conspiracy.  *See id.* (noting that "***totally unsupported*** allegations of conspiracy cannot constitute sufficient contacts with Michigan to justify an exercise of personal jurisdiction . . . by the District Court" and that "the allegation of conspiratorial activities with tortious consequences in the forum state is insufficient to support jurisdiction under the long arm statute ***in the absence of some minimal factual showing of . . . participation in the conspiracy***." (emphasis added).

5

Supp. 2d 693, 696 (E.D. Mich. 2009) (declining to endorse conspiracy theory of jurisdiction "in this case"), that case presented dramatically different facts than this one. Unlike *Weather Underground* a trademark case with secondary state law conspiracy claims – this case primarily alleges S-Y Systems's participation in a conspiracy directly aimed both at the United States and this District.  *Compare id.* at 695 (listing plaintiff's causes of action, which primarily consisted of trademark claims and also included civil conspiracy) with Auto Dealer Compl. ¶¶ 242-300 (alleging violations of the Sherman Act, 15 U.S.C. §1, state antitrust and consumer protection statutes, as well as unjust enrichment); End-Payor Compl. ¶¶ 218-280 (same). As such, it presents the "minimal factual showing" of participation that the *Chrysler Corp.* suggested may be a necessary prerequisite for applicability of the doctrine,  643 F.2d at 1237, and the type of circumstances other courts find warrant application of the doctrine. *Kentucky Speedway*, 410 F. Supp. 2d 592, 599 (E.D. Ky. 2006) (conspiracy theory of jurisdiction applicable when complaint supported conspiratorial allegations); *J & M Associates, Inc. v. Callahan*, CIV.A. 07-0883-CG-C, 2011 WL 5553696, at *5 (S.D. Ala. Nov. 15, 2011) (properly alleged conspiracy supported application of conspiracy theory of jurisdiction); *Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*, 589 F. Supp. 2d 490, 500 (D. Del. 2008) ( "detailed factual allegations regarding the intertwined relationships among Defendants" supported conspiracy theory of jurisdiction).

II.     **Specific Jurisdiction Exists Against S-Y Systems For Its Engaging In An Antitrust Conspiracy To Fix, Maintain, And/Or Stablilize The Price of Automotive Wire Harness Systems**

Even without the conspiracy theory of jurisdiction, S-Y Systems is still subject to personal jurisdiction.  To establish specific jurisdiction, the Sixth Circuit has adopted a three part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the

6

defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Carrier Corp.*, 673 F.3d at 450.  When the first two elements are satisfied, there is an ""inference of reasonableness" that arises with the third element.  *Id.* at 451.

### a.   S-Y Systems Purposefully Availed Itself Of The Laws Of The United States

S-Y Systems availed itself of the laws of the United States in at least two ways: by furthering its scheme through communications with the United States, and by placing its products in the stream of commerce with the intent to reach this forum.

### i.   S-Y Systems Is Subject To The Laws Of The United States Because It Furthered Its Scheme Through Communication With The United States

Due to its collaboration with S-Y America and its attendance of meetings in the United States, S-Y Systems has subjected itself to personal jurisdiction in the United States. "If the nonresident conducted business, committed a tort, or furthered a tortious scheme in the forum, even by way of phone call or written correspondence to the forum, personal jurisdiction is appropriate." *Eastman Outdoors Inc. v. Archery Trade Ass'n*, CIV. 05-74015, 2006 WL 1662641 (E.D. Mich. June 6, 2006) (Battani, J.) (quoting *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656, 663 (E.D. Mich. 1996)). In application, the court examines the communications and looks at whether the quality of the contacts, not their quantity, constitute purposeful availment. *Gen. Motors Corp.*, 948 F. Supp. at 663. In *Eastman*, the writing of a single article distributed in the forum at issue that "could be tortious" because it accused plaintiff of tax evasion was sufficient to satisfy purposeful availment. Similarly, in *CBT Tech. v. Fisher*, the court held there was purposeful availment despite plaintiff's averments that he worked in New Hampshire because it was "reasonable to infer" that with respect to defendant's work that

7

communication occurred "if not in person, then presumably by phone, correspondence and/or email" with a party in the forum state. 99-CV-70034 DT, 1999 WL 34728850, *8 (E.D. Mich. Oct. 8, 1999).

This case revolves around an international conspiracy to fix the price of Automotive Wire Harness Systems. S-Y Systems's 50% owner concedes that S-Y Systems was engaged in anticompetive conduct. Burns Aff. ¶ 9; Ex. F. The complaint alleges that the anticompetitive conduct was price fixing. *See* Auto Dealer Compl. ¶¶ 1, 5; End-Payor Compl. ¶¶ 1, 5, 151-153. S-Y Systems admits on its website that it engaged in "decades of collaboration" with Ford. *See* Burns Aff. at ¶ 10; Ex. G. At S-Y Systems's inception, it was contemplated that S-Y Systems and S-Y America (both responsible for the global sale, program management and development of Automotive Wire Harness Systems) would work closely together in supporting their respective customer programs. *Id.* at ¶ 1; Ex. A. S-Y America was responsible for Ford. Following *CBT Tech.* it would be reasonable to infer that during the collaboration between S-Y Systems and S-Y America there were communications by S-Y Systems to the United States regarding Automotive Wire Harness Systems. Alternatively, the complaints allege that Defendants had the opportunity to conspire while attending meetings in Michigan and Nevada. Auto Dealer Compl. ¶ 167; End-Payor Compl. ¶ 163. Affording these allegations their due inferences, Plaintiffs have established personal jurisdiction over S-Y Systems. *See also In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671-72 (E.D. Mich. 2000) (pleadings on a Rule 12(b)(2) motion must be considered "in the light most favorable to the plaintiff" because courts want to "prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts").

8

### ii. S-Y Systems Is Subject To The Laws Of The United States Having Placed Its Automotive Wire Harness Systems In The Stream Of Commerce After Having Fixed Prices

Through its placing Automotive Wiring Harness Systems in the stream of commerce with the intent to harm United States consumers with anticompetitive activity, S-Y Systems is subject to personal jurisdiction in the United States. Under the "stream of commerce 'plus'" approach, jurisdiction lies over a defendant where it placed its product into the stream of commerce and reflected an intention to serve the market in the forum. *See Recaro N. Am., Inc. v. Holmbergs Childsafety Co., Ltd.*, 09-12256, 2010 WL 1658033, *6 (E.D. Mich. Apr. 23, 2010) (Battani, J.) (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987); *Bridgeport Music, Inc. v. Still N the Water Publishing*, 327 F.3d 472, 479 (6th Cir. 2003)). While defendant's intent to serve the forum's market in *Racaro* was illustrated through the design of the product, intent to serve has been illustrated in a variety of ways. *See id.*; *Mott v. Schelling & Co.*, 966 F.2d 1453 (6th Cir. 1992) (maintaining sales agent and considering U.S. standards); *Poyner v. Erma Werke Gmbh*, 618 F.2d 1186, 1190 (6th Cir. 1980) ("The use of an independent distributor so that the manufacturer is only indirectly responsible for the product reaching an injured consumer, in and of itself, will not insulate a non-resident foreign corporation from suit.")[8]

S-Y Systems placed Automotive Wire Harness Systems in the stream of commerce, having sold the Automotive Wire Harness Systems to BMW which sells over a quarter of a million cars a year in the United States. *See* Burns Aff. ¶ 8; Ex. E. Additionally, S-Y Systems

---

[8] *See also K Mart Corp. v. Knitjoy Mfg., Inc.*, 534 F. Supp. 153, 159 (E.D. Mich. 1981) (placing products in the stream of commerce to be sent either directly or through brokers to wholesale purchasers in the United States put a defendant located abroad on notice of the fact that such products would end up in Michigan); *Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*, 189 F. Supp. 2d 696, 708 (W.D. Mich. 2002) (incorporation of a foreign corporation's mirrors in automobiles sold in the U.S. allowed that corporation to be subjected to personal jurisdiction in Michigan); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671-72 (E.D. Mich. 2000) (plaintiffs established purposeful availment by alleging that "Hoechst AG authorized distribution of Cardizem CD in Minnesota and Tennessee; [and] that it caused injury in those states[.]").

has engaged in "decades of collaboration" with BMW and Ford. *See* Burns Aff. ¶ 10; Ex. G. S-Y Systems was also directed to work "closely" with its sister joint venture in the United States, S-Y America, "in supporting one another on their respective customer programs" involving Automotive Wire Harness Systems. *See* Burns Aff. at ¶ 1; Ex. A (explaining S-Y America sells and develops "integrated vehicle electronic/electrical systems.") Considering the complaint as a whole and providing Plaintiffs all due inferences, it is reasonable to conclude that S-Y Systems interacted with BMW (an auto manufacturer importing a significant volume cars into the United States) and Ford (a United States auto manufacturer) to provide Automotive Wire Harness System for their vehicles. *See* Burns Aff. ¶¶ 3, 10; Exs. A, G. While closely working with BMW and Ford, S-Y Systems also engaged in a price fixing scheme with the other defendants demonstrating its intent to injure those who directly and indirect purchased Automotive Wire Harness Systems while travelling through the stream of commerce. Taken in its totality, these facts reflect S-Y Systems's placing its product into the stream of commerce and its intention to serve the United States.

Application of the stream of commerce theory in this fashion is consistent with the Supreme Court's opinions in *Asahi* and its recent opinion in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2785 (2011) (Kennedy, J. plurality). In both cases the court declined to find the defendant subject to personal jurisdiction in the forum due to a lack of purposeful direction. *Asahi*, 480 U.S. at 112 (O'Connor, J., plurality); *J. McIntyre*, 131 S. Ct. at 2790-91. However, the distinguishing characteristic of both cases is the lack of intent on behalf of defendants in *Asahi* and *J. McIntyre* to injure the plaintiffs, as both were products liability cases resulting from allegedly defective products. *Asahi*, 480 U.S. at 107-08 (lacking allegations that defendant intentionally designed tube's valve assembly to severely injure or kill plaintiffs); *J. McIntyre*,

131 S. Ct. at 2786 (lacking allegations that defendant intentionally designed machine to hurt plaintiff's hand). Here S-Y Systems engaged in the anticompetitive activity of price fixing, which by its very nature is directed at consumers with the intent of forcing those consumers to pay inflated prices. S-Y System's anticompetitive misconduct targeted customers that are known to reside in the United States, a fact that alone satisfies the intention to serve prong.

### iii. S-Y Systems's Purported Lack Of Contacts With The United States Is Not Determinative

In attempting to avoid being subject to personal jurisdiction in the United States, S-Y Systems has submitted a carefully worded declaration that attempts to establish lack of contacts with the United States. *See* Declaration of Mr. Wolfgang Girod [D.E. 236]. These alleged lack of contacts do not justify granting S-Y Systems's motion for two separate reasons. First, a due process analysis is not an exercise in counting, because courts examine the quality of the contacts, not their quantity. *Gen. Motors Corp.*, 948 F. Supp. at 663. Second, the contents of Plaintiff's allegations and the evidence submitted in support of this opposition do not necessarily conflict with S-Y Systems's declaration. For instance, while Mr. Girod disavows various corporate affiliations with S-Y America, he does not deny the existence of a business relationship between the two companies. *Cf.* Girod Decl. ¶¶ 3-4 with Burns Aff. ¶ 3; Ex. A. Additionally, while S-Y Systems "never sold automotive wire harness systems for mass production of automobiles in the United States," that fact (even if true) is irrelevant because S-Y Systems's price fixing misconduct still targeted the United States from Europe. *Cf.* Girod Decl. ¶ 6 with Burns Aff. ¶ 3, 8 10, Exs. A, E, G.

S-Y Systems's case law support that tries to connect its purported lack of contacts to a lack of personal jurisdiction is equally unavailing and distinguishable. Unlike the present case, the courts in *Chrysler Corp., Kerry Steel, and GSI Group* were not presented facts of a

11

continuing business relationship with a United States business on the subject matter giving rise to the litigation – such as the relationship between S-Y Systems and SY America regarding Ford. *Cf. Chrysler Corp.*, 643 F.2d at 1239 ("Interclisa's alleged purchases are unrelated to the events giving rise to this litigation."); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) ("Kerry Steel may or may not have reached out to Oklahoma, but in no way has it been shown that Paragon reached out to Michigan."); and *GSI Group Inc. v. Glass Inc. Int'l*, 06-15396, 2007 WL 1008359, *5 (E.D. Mich. Mar. 29, 2007) ("…the transaction appears to only involve a one-off purchase-not the beginning of an ongoing sales relationship between the parties.") with Burns Aff. ¶¶ 3, 10; Exs. A, G (explaining S-Y Systems would work closely with S-Y America in supporting Ford's programs, S-Y Systems "nurture[s] long term working relationships with its customers" and has collaborated for decades with Ford). For personal jurisdiction, the pertinent question is whether a defendant purposefully availed itself and in this case S-Y Systems has done just that.[9]

### b. Plaintiffs' Causes of Action Arise From S-Y Systems's Activities In The United States

The requirement that Plaintiff's cause of action to arise from S-Y Systems's activities in the forum state "should not be construed too strictly," as it is a "lenient standard." *Recaro*, 2010 WL 1658033, at *8 (Battani, J.) All that is required is that the cause of action has "'a substantial connection with a defendant's in-state activities,' it is not necessary that the suit formally arise from a defendant's contacts with the forum state." *See id.* (citation omitted). This standard is satisfied where "Plaintiff's claims would not have occurred in absence of … [the] specific

---

[9] For similar reasons, Defendants argument that it "never sold those systems or products for mass production of automobiles in the United States" is not outcome determinative on its arguments that Plaintiff's causes of action arise from Defendant's activities in the United States. *See* Def. Br. p. 7. For example, since only a limited number of BMW vehicles are manufactured in the United States, it is plausible for S-Y Systems to have provided price fixed Automotive Wiring Harness Systems to a wide array of BMW vehicles intended for shipment to the United States without having supplied BMW's plant in the United States. *See* Burns Aff. ¶ 6, 8; Ex. C, E.

targeting of Plaintiff's business." *Id.* In other words, there needs to be a link between the cause of action and the actions creating jurisdiction.

For example, in *Recaro*, defendants Shearer and Global Products set up the relationship that underpinned plaintiff's complaint and that relationship was sufficient to satisfy the "lenient standard." 2010 WL 1658033, at *8. Conversely, in *Eastman Outdoors Inc. v. Archery Trade Ass'n*, CIV. 05-74015, 2006 WL 1662641, *8-9 (E.D. Mich. June 6, 2006) (Battani J.), while the defendant published an article that was sent into Michigan and allegedly caused harm to the plaintiff, plaintiff's complaint alleged "that the suspension of its membership tortiously interfered with existing business relationships and not the publication of the article." 2006 WL 1662641 at *9. It was the disconnect between the article and the allegation that defeated personal jurisdiction. *Id.* In the present case there is a link between S-Y Systems's actions targeting plaintiff that creates personal jurisdiction and plaintiff's causes of action. The actions targeting plaintiff was the price fixing of Automotive Wire Harness Systems, selling those harnesses to BMW for vehicles sold in the United States, and working with its sister company in the United States in doing business with Ford. Plaintiffs' causes of action are based on federal and state antitrust law (and related causes of action) to remedy the S-Y Systems's anticompetitive conduct that flowed to Plaintiffs. *See* Auto Dealer Compl. ¶¶ 242-300 (alleging violations of the Sherman Act, 15 U.S.C. §1, state antitrust and consumer protection statutes, as well as unjust enrichment); End-Payor Compl. ¶¶ 218-280 (same). This case is therefore more like *Recaro* than *Eastman*, and the Court should accordingly find this prong satisfied.

### c. Personal Jurisdiction Over S-Y Systems Is Reasonable

Under this prong, there is an inference of reasonableness that arises when the first two due process criteria are met such that "only the unusual case will not meet this third criteria."

*Flagstar Bank, FSB v. Wounderberg*, 2010 WL 1027860, *5 (E.D. Mich. Mar. 17, 2010) (Battani, J.) (quoting *Theunissen*, 935 F.2d at 1461). In determining reasonableness the court considers the burden on the defendant, the interest of the forum, the plaintiff's interest in obtaining relief, and the interests of other states in securing the most efficient resolutions of controversies. *Recaro*, 2010 WL 1658033, at *8 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). "The Sixth Circuit has routinely upheld specific jurisdiction in cases even when doing so forces the defendant to travel to the forum state." *Id.* (collecting cases). This logic flows from the Supreme Court of the United States: when a defendant directs activity at a forum, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

While the presumption favors the Plaintiff, so do the other factors the court considers in the reasonableness analysis. While S-Y Systems will be required to litigate in the United States, it engaged in anticompetitive activity that harmed United States consumers through activities directed at the United States and the world as a whole. It would be a miscarriage of justice to argue that despite S-Y Systems aiming everywhere, it should only be liable in one foreign jurisdiction. Conversely, the antitrust laws of the United States were designed to protect United States citizens from domestic and foreign anticompetitive activity aimed at the United States. Declining to find personal jurisdiction over S-Y Systems would deprive Plaintiffs of relief. In a similar vein, since the contacts at issue are with the United States as a whole, the competing interests of various states is a non-factor. Ultimately, with the first two prongs of the Sixth Circuit's test satisfied, it is reasonable to exercise personal jurisdiction over the S-Y Systems.

III.    **Should The Could Require Additional Factual Support Prior To Finding Personal Jurisdiction Over The S-Y Systems, Plaintiffs Respectfully Request That They Be Granted Jurisdictional Discovery**

Should the court desire additional factual support from Plaintiffs prior to finding personal jurisdiction over the S-Y Systems, Plaintiffs respectfully request they be granted jurisdictional discovery. While it is within the discretion of the court whether or not to grant jurisdictional discovery, when there are disputed issues of fact it is an abuse of discretion to disallow further discovery. *Drexel Chem. Co.*, 59 F.3d 170. This is particularly true when there are disputed issues of fact regarding cross-corporate entanglements or "where personal jurisdiction over a defendant relies on whether the plaintiff can support the allegations of its underlying claims." *See id.; Kent Display Sys., Inc. v. Advanced Display Sys., Inc.*, 238 F.3d 422 (6th Cir. 2000) (table opinion). Granting jurisdictional discovery would be consistent with other cases from within this district. *See, Inc. v. Imago Eyewear Pty Ltd.*, 03-74761, 2004 WL 5569067 (E.D. Mich. Oct. 12, 2004) *aff'd sub nom. See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518 (6th Cir. 2006); *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 166 F. Supp. 2d 1155, 1171 (E.D. Mich. 2001).

The present case before the court presents questions of cross-corporate entanglements and intertwined questions of merits and personal jurisdiction.  For instance, there are unresolved questions of fact regarding the relationship between S-Y America and the S-Y Systems regarding Automotive Wire Harness Systems in the United States. There are also questions whether communications between S-Y Systems, S-Y America, and the other defendants demonstrate the existence of a conspiracy. Moreover, discovery of S-Y Systems would be unique in that there would be little risk of subjecting an "innocent" party to discovery since its corporate parent already admitted S-Y Systems engaged in anticompetitive activity. *See* Burns Aff. at ¶ 9, Ex. F.

15

Instead the only questions that would be resolved in discovery would be confirmation that the anticompetitive activity was indeed the price fixing alleged in the complaint and confirmation that the S-Y Systems is indeed subject to personal jurisdiction in the United States. Therefore, should the court require additional support from plaintiffs prior to holding there is personal jurisdiction over the S-Y Systems, Plaintiff requests the opportunity to conduct jurisdictional discovery of S-Y Systems.

## CONCLUSION

Because S-Y Systems participated in a conspiracy impacting this District, and because it is separately subject to specific jurisdiction in this District, this Court should deny S-Y Systems's motion to dismiss for lack of personal jurisdiction.

Dated:  September 11, 2012                **COTCHETT, PITRE & McCARTHY, LLP**


By   _/s/ Frank C. Damrell_____

Joseph W. Cotchett
Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com

16

September 11, 2012

**LABATON SUCHAROW LLP**

By   */s/ Hollis Salzman*

Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com

September 11, 2012

**SUSMAN GODFREY L.L.P.**

By   */s/ Marc M. Seltzer*

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

September 11, 2012

**THE MILLER LAW FIRM, P.C.**

By __*/s/ E. Powell Miller* _____

E. Powell Miller (P39487)
Adam T. Schnatz (72049)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

*Attorneys End-Payor Plaintiffs*


September 11, 2012

**MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.**

By____*/s/ Gerard V. Mantese*_____
Gerard V. Mantese (Michigan Bar No.
P34424)
David Hansma (Michigan Bar No. P71056)
Brendan Frey (Michigan Bar No. P70893)
Joshua Lushnat (Michigan Bar No. P75319)
**MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

18

September 11, 2012

**BARRETT LAW GROUP, P.A.**

By ____/s/ *Don Barrett*_____

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

September 11, 2012

**CUNEO GILBERT & LADUCA, LLP**

By ____/s/ *Jonathan W. Cuneo*_____

Jonathan W. Cuneo
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Phone: (202) 789-3960
Fax: (202) 789-1813
jonc@cuneolaw.com
Vicky@cuneolaw.com

Joel Davidow
Daniel Cohen
**CUNEO GILBERT & LADUCA, LLP**
Bethesda, Maryland
8120 Woodmont Ave
Suite 810
Bethesda, MD 20814
Phone: (202) 789-3960
joel@cuneolaw.com

19

Michael J. Flannery
**CUNEO GILBERT & LADUCA, LLP**
300 North Tucker Boulevard
Suite 801
St. Louis, MO 63101
Phone: (202) 789-3960
Fax: (202) 789-1813
mflannery@cuneolaw.com

September 11, 2012                    **LARSON • KING, LLP**

By ____/s/ *Shawn M. Raiter*_____

Shawn M. Raiter
Paul A. Sand
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

*Attorney for Auto Dealer Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS** **ANTITRUST LITIGATION** | 12-md-02311 Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS CASES** | |
| **THIS RELATES TO:** | |
| **ALL DEALERSHIP ACTIONS AND** **ALL END-PAYOR ACTIONS** | W:12-cv-00102-MOB-MKM W:12-cv-00103-MOB-MKM |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 11, 2012 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all filing users indicated on the Electronic Notice List through the Court's electronic filing system.  I also certify that I will serve copies via First Class U.S. Mail upon all other parties indicated on the Manual Notice List.

Respectfully submitted,
*/s/ Warren T. Burns*
Warren T. Burns
Susman Godfrey, LLP
901 Main Street, Suite 5100
Dallas, Texas 75202

21

2400659v1/012878