UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS ANTITRUST :    Master File No. 12-MD-02311
LITIGATION :    Honorable Marianne O. Battani
_____ :
                                   :
PRODUCT(S): :
WIRE HARNESS SYSTEMS :
_____ :
                                     :
THIS DOCUMENT RELATES TO: :    Lead Case No. W:12-cv-00101
Direct Purchaser Actions :
_____ :

**DIRECT PURCHASER PLAINTIFFS' RESPONSE IN OPPOSITION
TO LEONI AG, LEONI KABEL GMBH, LEONI WIRE INC.,
LEONI WIRING SYSTEMS, INC.AND LEONISCHE HOLDING INC.S'
MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS**

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
(224) 632-4500

David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500

Interim Liaison Counsel for the Direct Purchaser
Plaintiffs

Gregory P. Hansel
Randall B. Weill
Joshua R. Carver
PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

Interim Lead Counsel for the Direct Purchaser Plaintiffs

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED.................................................................ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ...................................iii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.   THE CAC SATISFIES RULE 8(a) AND RULE 12(b)(6)................................. 1

II.  THIS COURT HAS SPECIFIC AND GENERAL JURISDICTION OVER LEONI
AG AND LEONI KABEL................................................................................... 4

    A.    Legal Standard ....................................................................................... 4

        1.   Leoni AG and Leoni Kabel Engaged in Overt Actions Connecting
Themselves to the United States.................................................. 5

        2.   DP Plaintiffs' Complaint Arises From Leoni AG's and Leoni Kabel's Contacts ...... 7

        3.   There Is A Substantial Enough Connection Between Leoni AG's
and Leoni Kabel's Acts or the Consequences Caused by their Acts to
Make the Exercise of Jurisdiction Reasonable ........................................ 8

    C.    This Court Has General Jurisdiction Over Leoni AG and Leoni Kabel .................... 9

        1.   The Alter Ego Theory Supports General Jurisdiction over Leoni AG ...................... 9

        2.   Leoni AG and Leoni Kabel Have Continuous and Systematic U.S. Contacts. ........ 13

        3.   The Agency Relationship Between Leoni AG and its U.S. Subsidiaries
Provides Another Basis for the Court to Exercise Jurisdiction................................ 16

III.   ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS WARRANTED ............. 18

CONCLUSION................................................................................................................ 18

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether Direct Purchaser Plaintiffs ("DP Plaintiffs") allege "sufficient facts to meet the minimum requirements for pleading an antitrust conspiracy as to Leoni AG, Leoni Wiring Systems, Inc., Leonische Holding, Inc., Leoni Kabel GmbH and Leoni Wire, Inc. (collectively "Leoni"), satisfying Fed. R. Civ. P. 8 and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), where DP Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") alleges: (a) guilty pleas by multiple Defendants and key company executives to antitrust violations involving wire harnesses and related products; (b) cease and desist orders and fines against multiple Defendants issued by the Japanese Fair Trade Commission; (c) wire harness products investigations of Defendants by U.S., Japanese and European law enforcement entities; (d) a market structure conducive to collusion; and (e) opportunities to collude.

2.  Whether the DP Plaintiffs' CAC sufficiently alleges that this Court can exercise specific or general jurisdiction over Leoni AG and Leoni Kabel GmbH ("Leoni Kabel") where the CAC alleges that: (i) pursuant to the *Calder*-effects doctrine, Leoni AG and Leoni Kabel expressly aimed tortious conduct at the United States and caused harm in the United States, *Calder v. Jones*, 465 U.S. 783, 789 (1984); (ii) Leoni AG and Leoni Kabel have had continuous and systematic contacts with the United States, emanating from their close relationship with United States subsidiaries or affiliates; and (iii) Leoni AG and Leoni Kabel activities are so interrelated with their subsidiaries or affiliates that for jurisdictional purposes the acts of their subsidiaries or affiliates are attributable to Leoni AG and Leoni Kabel.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

*Creech v. Roberts*, 908.2d 75 (6th Cir. 1990), *cert. denied*, 499 U.S. 975 (1991)

*Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357 (6th Cir. 2008)

*Futaba Industrial Co., Ltd. v. Keylex Corp.*, No. 11-11873, 2012 WL 432968 (E.D. Mich. Feb. 9, 2012)

*Glover v. Small Bone Innovations, Inc.*, No. 1:11 CV 2709, 2012 WL 24212068 (N.D. Ohio June 26, 2012)

*In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)

*McNulty v. Reddy Ice Holdings, Inc.*, 2009 WL 1508381, at *5 (E.D. Mich. May 29, 2009), *rev'd on reconsideration on other grounds*, 2009 WL 2168231 (E.D. Mich. July 17, 2009)

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968)

*Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991)

*Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087 (6th Cir. 1989)

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Aristech Chemical Intern. Ltd v. Acrylic Fabricators Ltd.*, 138 F.3d 624 (6th Cir. 1998) ............ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 1

*Avery Dennison Corp. v. Alien Technology Corp.*, 632 F. Supp. 2d 700 (N.D. Ohio 2008).. 10, 14

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011) ................................................ 17

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 1, 3

*Bradford Co. v. Afco Mfg.*, No. 1:05-CV-449, 2006 WL 143343 (S.D. Ohio Jan. 19, 2006) ...... 18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................. 8

*Calder v. Jones*, 465 U.S. 783 (1984) .......................................................................................... 6

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) .......................................... passim

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) ...................................................... 5

*Conley v. MLT, Inc.*, No. 11-11205, 2012 WL 1893509 (E.D. Mich. May 23, 2012) .................. 5

*Creech v. Roberts*, 908.2d 75 (6th Cir. 1990), *cert. denied*, 499 U.S. 975 (1991) .................... 7, 8

*Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170 (6th Cir. 1995) ................................. 18

*Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357 (6th Cir. 2008) ............................. 4, 10

*Fortis Corporate Ins. V. Viken Ship Mgmt.*, 450 F.3d 214 (6th Cir. 2006) ............................. 5, 7

*Futaba Industrial Co., Ltd. v. Keylex Corp.*, No. 11-11873,
    2012 WL 432968 (E.D. Mich. Feb. 9, 2012) ................................................................ 10, 13, 16

*General Motors Corp. v. Ignacio Lopez de Arriortua*,
    948 F. Supp. 656 (E.D. Mich. 1996) ...................................................................................... 5, 8

*German Free State of Bavaria v. Toyobo Co., Ltd.*, No. 1:06-CV-407,
    2007 WL 851671 *6 (W.D. Mich. Mar. 19, 2007) ............................................................. 15, 16

*Glover v. Small Bone Innovations, Inc.*, No. 1:11 CV 2709,
    2012 WL 24212068 (N.D. Ohio June 26, 2012) ........................................................ 10, 12, 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846,
    180 L. Ed. 2d 796 (U.S.N.C. 2011) .......................................................................................... 9

*Hinds County v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378 (S.D.N.Y. 2010................................ 2

*In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ................ 2

*In re Automotive Refinishing Paint Antitrust Litig.*, No. 1426,
     2002 WL 31261330 (E.D. Pa. July 31, 2002)........................................................... 15

*In re NASDAQ Market Makers Antitrust Litig.*, 894 F. Supp. 703 (S.D.N.Y. 1995) .................... 2

*In re OSB Antitrust Litig.*, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007)........................................ 2

*In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 987 (E.D. Mich. 2010)................................. 4

*In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777 (N.D. Ohio 2011)...................... 3

*In re Refrigerant Compressors Antitrust Litig.* 795 F. Supp. 2d 647 (E.D. Mich. 2011).............. 4

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997) ........................................ 9

*McFadden v. Fuyao N. Am. Inc.*, No. 10-CV-14457,
     2012 WL 1230046 (E.D. Mich. Apr. 12, 2012)............................................... 9, 16, 17

*McNulty v. Reddy Ice Holdings, Inc.*, 2009 WL 1508381 (E.D. Mich. May 29, 2009), *rev'd on
     reconsideration on other grounds*, 2009 WL 2168231 (E.D. Mich. July 17, 2009) ................ 2

*Med. Mut. Of Ohio v. deSoto*, 245 F.3d 561 (6th Cir. 2001) ........................................................ 5

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002)............................. 17

*Miller Pipeline Corp. v. British Gas PLC*, 901 F.Supp. 1416 (S.D. Ind. 1995)..................... 14, 15

*MM Global Servs., Inc. v. The Dow Chemical Co.*, 404 F.Supp.2d 425 (D. Conn. 2005)............. 9

*Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001) ............................................................................ 6

*Owen v. Illinois Baking Corp.*, 235 F.Supp. 257 (W.D. Mich. 1964) .......................................... 16

*Palmieri v. Estefan*, 793 F. Supp. 1182 (S.D.N.Y. 1992)............................................................ 17

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985)....................................................... 15

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968)............ 5, 7, 8, 9

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) ................................................ 2, 4

*Technology & Servs., Inc. v. TACS Automation, LLC*, No. 2:09-cv-1113,
     2010 WL 2640047 (S.D. Ohio June 29, 2010) .......................................................... 18

*Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991) ........................................................ 4, 18

*Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087 (6th Cir. 1989)..... 8, 10, 11

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ........................................................................ 4

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 2

Federal Rule of Civil Procedure 8 .................................................................................... 1

Federal Rule of Civil Procedure 8(a)(2) ........................................................................... 1

## PRELIMINARY STATEMENT

The Leoni Defendants[1] (hereinafter "Leoni") argue that there are insufficient factual allegations particular to them in the DP Plaintiffs' Consolidated Amended Complaint ("CAC")[2] to satisfy Rule 8 of the Federal Rules of Civil Procedure. Leoni's position is meritless. There is no requirement at the pleading stage that a plaintiff provide detailed conspiracy allegations for each defendant. Where, as here, a complaint details an unlawful, overt price-fixing agreement among defendants, to which several of the defendants have already admitted their guilt, the factual allegations are more than sufficient, under Rule 8(a), against all defendants.

Defendants Leoni AG and Leoni Kabel GmbH ("Leoni Kabel") also seek dismissal under Rule 12(b)(2), claiming that the Court lacks jurisdiction over them. This argument is also meritless. The Court has specific jurisdiction over Leoni AG and Leoni Kabel because they purposefully availed themselves of the privilege of acting in the United States. Further, the Court has general jurisdiction over Leoni AG and Leoni Kabel because they had continuous and systematic contacts with the United States.

## ARGUMENT

I. **THE CAC SATISFIES RULE 8(a) AND RULE 12(b)(6)[3]**

Neither *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), nor *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), changed the pleading standard for a civil antitrust complaint. Indeed, *Twombly* confirmed that the notice pleading standard of Rule 8 applies and that "[Rule] 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" 550 U.S. at 555. Moreover, a complaint need not contain "detailed factual allegations," to survive a

---

[1] For purposes of this response, "Leoni" refers to and includes Leoni AG, Leoni Wiring Systems, Inc., Leonische Holding, Inc., Leoni Kabel GmbH and Leoni Wire, Inc.

[2] Citation to the CAC will be in the form of " ¶ __".

[3] For a full discussion of the pleading standards, see DP Plaintiffs' Response to Defendants' Joint Motion to Dismiss.

motion to dismiss under Rule 12(b)(6).  *Id.*   Certainly, after an opportunity for meaningful discovery, a plaintiff will need to specifically "identify the people who acted on behalf of the various defendants" to the conspiracy, *but* a plaintiff "*cannot* be expected to know or allege such details at this early stage on the case; [and] neither *Twombly* nor any case decided under that holding suggests otherwise." *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *4 (N.D. Ill. Nov. 5, 2009); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010) (rejecting defendant's demand that plaintiff "identify the specific time, place, or person related to each conspiracy allegation").  This basic tenet has been adopted in this District. *See McNulty v. Reddy Ice Holdings, Inc.*, 2009 WL 1508381, at *5 (E.D. Mich. May 29, 2009), *rev'd on reconsideration on other grounds*, 2009 WL 2168231 (E.D. Mich. July 17, 2009).

Moreover, a "complaint must adequately allege the plausible involvement of each defendant and put defendants on notice of the claims against them, but it need not be detailed with overt acts by each defendant." *Hinds County v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 394 (S.D.N.Y. 2010).  Plaintiffs are not required to specify individual acts of each defendant, *In re NASDAQ Market Makers Antitrust Litig.*, 894 F. Supp. 703, 712 (S.D.N.Y. 1995), or detail conspiracy allegations defendant by defendant, *In re OSB Antitrust Litig.*, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007).

Here, the CAC details an unlawful, overt price-fixing agreement among defendants, to which several of the defendants have already admitted their guilt.  The CAC specifically alleges all defendants: (i) participated in meetings, conversations, and communications to discuss bids and price quotations for Wire Harness Products (¶ 108); (ii) agreed to allocate the supply of Wire Harness Products at those meetings (¶ 109); (iii) agreed to coordinate price adjustments (¶ 110); (iv) submitted bids, price quotations, and price adjustments in accordance with the conspiratorial

agreements (¶ 111); and (v) took measures to maintain the secretive nature of the unlawful conduct (¶ 114).[4]

Additionally, Plaintiffs' allegations are bolstered by the following facts: (i) the U.S. DOJ is continuing to investigate the anticompetitive conduct at issue here (¶ 115); (ii) European Commission antitrust investigators raided Leoni AG's offices and Leoni AG is cooperating with European antitrust authorities (¶¶ 101, 117); (iii) European antitrust authorities are investigating Leoni Kabel (¶ 117); (iv) the FBI has already raided the offices of defendants TRAM, Denso, and Yazaki (¶ 116); (v) the Japanese Fair Trade Commission has already raided the offices of defendants Yazaki, Sumitomo, and Furukawa (¶ 118); (vi) defendant Furukawa has pled guilty and agreed to pay a $200 million fine, with three of its executives agreeing to serve time in the U.S. prison system (¶ 132); (vii) defendant Yazaki has pled guilty and agreed to pay a $470 million fine, and four of its executives are now scheduled to serve time in the U.S. prison system (¶¶ 134-135); (viii) defendant Denso has pled guilty and agreed to pay a $78 million fine (¶ 136); and, (ix) defendant Fujikura has agreed to plead guilty and pay a $20 million fine (¶137).  When an illegal price-fixing agreement has been confirmed by confessions of alleged conspirators, the alleged conspiracy is certainly plausible. *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 798-99 (N.D. Ohio 2011).

Despite the size, scope and weight of these allegations, Leoni maintains that DP Plaintiffs need to plead more.  Leoni believes that *Twombly* imposes an obligation to identify specifically the time, place, and person as to each allegation of the conspiracy—pleading obligations akin to the heightened pleading standard of Rule 9(b).  But Leoni's position is wrong.  In an overt price-fixing case such as this one, especially one involving governmental investigations and guilty

---

[4] The CAC specifically alleges that Leoni, like its co-conspirators, manufactures, markets, and distributes "Wire Harness Products" sold in the United States (¶¶43-48).

pleas, plaintiffs are not required to plead time, place, and person. *See In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1006 (E.D. Mich. 2010); *In re Refrigerant Compressors Antitrust Litig.* 795 F. Supp. 2d 647, 661 (E.D. Mich. 2011) (finding that *Twombly* does not require heightened fact pleadings); *see also Starr v. Sony BMG Music Entertainment*, 592 F.3d at 325 (specifically rejecting the time, place, and person argument suggested herein). DP Plaintiffs have satisfied the pleading standard, providing sufficient notice to Leoni and raising "a reasonable expectation that discovery will reveal evidence of illegal agreement" among the defendants, including Leoni. *See Twombly*, 550 U.S. at 556.

## II. THIS COURT HAS SPECIFIC AND GENERAL JURISDICTION OVER LEONI AG AND LEONI KABEL

### A. Legal Standard

DP Plaintiffs recognize that the plaintiff bears the burden of establishing that personal jurisdiction exists. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012). But, when the court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, the plaintiff's burden is "relatively slight," and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357, 360 (6th Cir. 2008) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) and *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). In fact, courts view the pleadings and affidavits submitted in a light most favorable to the plaintiff, disregarding "'the controverting assertions of the party seeking dismissal.'" *Id.* at 360–61 (quoting *Theunissen*, 935 F.2d at 1459); s*ee also Carrier Corp.*, 673 F.3d at 449 (ruling it is inappropriate to weigh controverted facts during motions to dismiss). The rationale underlying this policy is that the Sixth Circuit "want[s] 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional

facts.'" *Conley v. MLT, Inc.*, No. 11-11205, 2012 WL 1893509, at * 8 n.3 (E.D. Mich. May 23, 2012) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

###### B.  This Court Has Specific Jurisdiction Over Leoni AG and Leoni Kabel

For Sherman Act claims, personal jurisdiction exists whenever the defendant has "'sufficient minimum contacts with the *United States.*'" *Carrier Corp.*, 673 F.3d at 449 (quoting *Med. Mut. Of Ohio v. deSoto*, 245 F.3d 561, 566–67 (6th Cir. 2001) (emphasis in original)).  To establish specific jurisdiction, DP Plaintiffs need only show:  (1) defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action arises from defendant's activities in the forum state; and (3) the defendant's acts or consequences caused by defendant's acts have enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Carrier Corp.*, 673 F.3d at 450 (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)) (the "*Southern Machine*" test).  Each of these elements is satisfied here.

###### 1.  Leoni AG and Leoni Kabel Engaged in Overt Actions Connecting Themselves to the United States

In analyzing the first prong – purposeful availment – this Court need only determine that Leoni AG and Leoni Kabel "'engaged in some overt actions connecting [it] with the forum.'" *Carrier Corp.*, 673 F.3d at 450 (quoting *Fortis Corporate Ins. V. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)).  For Sherman Act cases the forum is the United States.  *Id.* at 450.  "If the nonresident conducted business, committed a tort, or furthered a tortious scheme in the [United States], even by way of phone call or written correspondence to the [United States], personal jurisdiction is appropriate." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 663 (E.D. Mich. 1996); *see id.* ("a defendant may reach into a forum as part of a scheme to defraud.").  Further, the *Calder*-effects doctrine directs a finding that Leoni AG and

Leoni Kabel purposefully availed themselves of this forum because they expressly aimed tortious conduct at the United States and the brunt of the harm was felt here. *See Calder v. Jones*, 465 U.S. 783 (1984).[5]

Under the *Calder*-effects doctrine, "a plaintiff can establish personal jurisdiction when it alleges that the defendant 'expressly aimed' tortious conduct at the forum in question and the 'brunt of the harm' is felt there." *Carrier Corp.* at 451 (quoting *Calder* at 789). Here, DP Plaintiffs have alleged that Leoni AG and Leoni Kabel were active participants in the unlawful conspiracy, that their anticompetitive conduct was directed at the U.S., and that DP Plaintiffs and the putative class were injured by this conduct.

More specifically, the CAC alleges that Leoni AG, Leoni Kabel and their co-conspirators did the following, *inter alia*, in connection with wire harness products in the U.S.: (i) formed an international cartel to suppress competition by agreeing to rig bids for, and to raise, fix, stabilize, or maintain prices (¶¶ 2, 107, 129–32, 134–37.); (ii) participated in meetings, conversations, and communications in the U.S. to discuss bids and price quotations to automobile manufacturers in the U.S. (¶¶ 108, 128, 141.); (iii) attended industry events in the U.S. that provided the opportunity to meet, disguise their improper discussions, and perform acts in furtherance of the conspiracy, including reaching agreements to allocate the supply of wire harness products sold to automobile manufacturers in the U.S. (¶¶ 106, 109, 128, 129, 130, 131, 132, 143.); (iv) agreed during meetings, conversations, and communications to coordinate price adjustments requested by automobile manufacturers in the U.S. (¶¶ 110, 128, 144.); (v) submitted, bids, price

---

[5] In *Calder*, the Supreme Court held that two Florida residents, a writer and editor, were subject to personal jurisdiction in California because they intentionally aimed their tortious conduct – a defamatory article written and edited in Florida – at a California resident. 465 U.S. at 788–89. The Court reasoned that the defendants knew the focal point of the article and the "brunt of the harm" would be in California, and thus, personal jurisdiction was proper based on the "effects" of their Florida conduct in California. *Id.* at 789–90. *See also Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) ("[E]ven a single act by [a] defendant directed toward [the relevant forum] that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process.").

quotations, and price adjustments to automobile manufacturers in the U.S. in accordance with their conspiratorial agreements. (¶¶ 111, 128, 142, 145.); and (vi) impacted prices for all direct purchasers of wire harness products throughout the U.S. (¶¶ 112, 128, 146.)

DP Plaintiffs' allegations demonstrate Leoni AG and Leoni Kabel knowingly aimed their anticompetitive activities at the U.S., harming U.S. residents. Because the allegations relate to their anti-competitive conduct toward DP Plaintiffs, Leoni AG's and Leoni Kabel's contacts are "enhanced" by the *Calder*-effects doctrine and establish purposeful availment under the *Southern Machine* test. This conclusion is consistent with a similar result reached in *Carrier Corp.*, where the Sixth Circuit used the *Calder*-effects doctrine to find purposeful availment:

> Here, the conspiracy in which OCP and OTO allegedly participated had an explicit geographical focus. According to the complaint, one of the main pillars of the conspiracy was allocating Carrier's U.S. business to the Outokumpu defendants, thereby forcing Carrier to pay higher prices in the United States. Such conduct serves as a paradigmatic example of "expressly aiming" tortious conduct. Carrier has thus sufficiently alleged purposeful availment under the Southern Machine test.

*Carrier Corp.*, 673 F.3d at 451. Therefore, DP Plaintiffs have satisfied the first prong of the *Southern Machine* test.

## 2. DP Plaintiffs' Complaint Arises From Leoni AG's and Leoni Kabel's Contacts

To satisfy the second prong of the *Southern Machine* test – the "arises from" factor – "the cause of action, of whatever type, [need only] have a substantial connection with the defendant's [in-forum] activities." *Carrier Corp.*, 673 F.3d at 451 (quotation omitted). The Sixth Circuit has established a "lenient threshold for meeting this requirement." *Fortis Corporate Ins.*, 450 F.3d at 222. *See, e.g., Creech v. Roberts*, 908.2d 75, 80 (6th Cir. 1990), *cert. denied*, 499 U.S. 975 (1991) ("An action will be deemed not to have arisen from the defendant's contacts with the

forum state *only* when they are unrelated to the operative facts of the controversy.") (emphasis added).

DP Plaintiffs' horizontal price-fixing claim against Leoni AG and Leoni Kabel has a substantial connection with Leoni AG's and Leoni Kabel's in-forum activities and their alleged activities are substantially related to the operative facts. DP Plaintiffs have alleged that Leoni AG and Leoni Kabel participated in an unlawful conspiracy with other manufacturers of wire harness products that was intentionally directed at the U.S. and had the purpose and effect of artificially inflating the prices that U.S. purchasers paid for wire harness products. Thus, DP Plaintiffs have satisfied the second prong of the *Southern Machine* test.

### 3. There Is A Substantial Enough Connection Between Leoni AG's and Leoni Kabel's Acts or the Consequences Caused by their Acts to Make the Exercise of Jurisdiction Reasonable

The third prong of the *Southern Machine* test – "substantial enough connection with the forum to make the exercise of jurisdiction reasonable" – is typically a given when the first two factors are satisfied. *See General Motors*, 948 F. Supp. at 664 ("When the purposeful availment and arising under factors of the Southern Machine test are satisfied, only the unusual case will not satisfy the third factor of a 'substantial enough connection with the forum to make the exercise of jurisdiction reasonable.'") (citing *Creech*, 908 F.2d at 80); *Carrier Corp.*, 673 F.3d at 451 (inference of reasonableness arises after first two prongs met); *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) ("only the unusual case will not meet the third criterion."). Accordingly, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Leoni AG and Leoni Kabel, however, have made no such case, and the facts show otherwise.

8

Leoni AG is the ultimate parent of a large multinational conglomerate, and it conducted business in the United States independently and through its wholly-owned U.S. subsidiaries. Leoni Kabel is part of the Leoni Group's multinational conglomerate and sells products in the United States to Leoni Group U.S. subsidiaries. Defending a lawsuit in the U.S. should not be unduly burdensome for these companies with a global presence and close relationship with their United States affiliates. Moreover, the United States also has an interest in the enforcement of its antitrust laws. *MM Global Servs., Inc. v. The Dow Chemical Co.*, 404 F.Supp.2d 425, 435 (D. Conn. 2005). DP Plaintiffs have, therefore, satisfied the third prong of the *Southern Machine* test.

### C. This Court Has General Jurisdiction Over Leoni AG and Leoni Kabel

General jurisdiction exists when the defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Aristech Chemical Intern. Ltd v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). "'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the [forum] are so 'continuous and systematic' as to render them essentially at home in the forum . . . .'" *McFadden v. Fuyao N. Am. Inc.*, No. 10-CV-14457, 2012 WL 1230046, *2 (E.D. Mich. Apr. 12, 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (U.S.N.C. 2011))

#### 1. The Alter Ego Theory Supports General Jurisdiction over Leoni AG

Continuous and systematic contacts may be engaged in by the defendant or by the defendant's subsidiaries. When jurisdiction is based on the subsidiaries' contacts, this is referred to as "the alter-ego theory of personal jurisdiction." *Carrier Corp.*, 673 F.3d at 450–51. That

9

theory "'provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" *Id* (quoting *Estate of Thomson*, 545 F.3d at 362 (collecting cases)).  When determining whether to apply the alter-ego theory, the Sixth Circuit considers the following factors:  "(1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation." *Estate of Thomson*, 545 F.3d at 362–63.  A plaintiff need only show that "the majority of factors weigh in favor of finding [the subsidiary] to be the alter ego of [the parent] for purposes of establishing jurisdiction." *Glover v. Small Bone Innovations, Inc.*, No. 1:11 CV 2709, 2012 WL 24212068, * 6 (N.D. Ohio June 26, 2012).  As discussed below, it is clear that the Court has general jurisdiction over Leoni AG and Leoni Kabel based on both their own contacts with the United States and the contacts of its U.S. subsidiaries.[6]

First, Leoni AG admits that it is the ultimate parent and sole shareholder of "U.S.-based" defendants Leonische Holding Inc., Leoni Wiring System Inc., and Leoni Wire Inc. (Dkt. 234-3 ¶ 4). *See Carrier Corp.*, 673 F.3d at 450–51 (applying the alter ego theory to find jurisdiction over parent that, among other things, wholly-owned the subsidiary); *WEDGE Group*, 882 F.2d at 1090 (same).

---

[6] The public record supports the exercise of general jurisdiction.  In *Futaba Industrial Co., Ltd. v. Keylex Corp.*, No. 11-11873, 2012 WL 432968, * 3 (E.D. Mich. Feb. 9, 2012), the court asserted general jurisdiction over a foreign corporation whose website stated "that it has established 'business branches' in China and the U.S. . . . as a 'way[ ] to expand [its] business globally.'" The court reasoned that these statements "suggest[ ] that [defendant] has engaged in more extensive activities in the forum than have been uncovered at this stage in the litigation and without discovery." *Id. See also Avery Dennison Corp. v. Alien Technology Corp.*, 632 F. Supp. 2d 700, 711 (N.D. Ohio 2008) (asserting general jurisdiction where evidence "suggests a significant volume of business in the [forum].")

Second, Leoni AG's public documents show it has "the power to govern the financial and operating policies [of its subsidiaries] so as to obtain benefits from its activities." (Exhibit A at 118.) *Carrier Corp.*, 673 F.3d at 450–51 (applying alter ego theory when parent claimed to retain full operational control over the subsidiary).[7]  The control and involvement of Leoni AG in the day-to-day operations of its U.S. subsidiaries supports application of the alter ego theory of personal jurisdiction.  *Carrier Corp.*, 673 F.3d at 450 (parent "held day-to-day management responsibilities within the U.S. subsidiaries); *WEDGE*, 882 F.2d at 1090 (parent reviewed and directed subsidiary's operations).

Third, Leoni AG provides "various internal, administrative services" to its U.S. subsidiaries "such as cash pooling services and information technology support." (Dkt. 234-3 ¶ 5.)  One "example" of such services is that "Leoni AG shares the SAP SEM computer program with Leonische Holding Inc., Leoni Wiring Systems, Inc. and Leoni Wire Inc. for the purposes

---

[7] Leoni AG's consolidated financial statements "include the accounts of LEONI AG and of all subsidiaries that are directly or indirectly controlled by LEONI AG." (Exhibit A at 118.)  Leoni AG lists as "fully consolidated subsidiaries" Leoni Wire Inc. and Leoni Wiring Systems Inc. (*Id.* at 139, 188–89.)  "Subsidiaries are fully consolidated from the time of acquisition, i.e. from the time when the Group has acquired control over the subsidiary."  (*Id.* at 119.)  Leoni AG handles the LEONI Group's financial management at its company headquarters.  (*Id.* at 67.)  Leoni AG's financial management of its subsidiaries includes, *inter alia*:  determining its subsidiaries' capital requirements and taking necessary financing measures; protecting Leoni Group's liquidity worldwide; optimizing finance costs and revenue; and, minimizing currency and interest rate risks.  (*Id.*)  Such extensive financial control further supports application of the alter ego theory to assert general jurisdiction over Leoni AG. *WEDGE*, 882 F.2d at 1090 (applying alter ego theory when parent was a party to tax sharing agreement with subsidiaries, shared income tax liability with subsidiaries, and deposited money in a forum account); *Glover*, 2012 WL 2412068 at *5 (applying alter ego theory when parent was authorized to write checks from subsidiary's accounts and approved its expenditures; subsidiary was partially financed by loan from parent, and assets overlapped).  Leoni AG also controls the operations of its subsidiaries. "The Leoni Group comprises LEONI AG, the holding company, and the two segments, Wiring Systems and Wire & Cable Solutions." (Exhibit A at 44.)  "The holding company performs cross-divisional tasks with its head office functions."  (*Id.*)  The Management and Supervisory Boards of Leoni AG "collaborate closely and in mutual trust for the benefit of the Company" and provide services and monitoring functions for all subsidiaries.  (*Id.* at 28.)  The Management Board "is responsible for corporate governance" and "[i]ts work is monitored by the Supervisory Board."  (*Id.* at 46.)  "The Management Board also determines Group strategy [ ] together with those in charge of the divisions and the individual business units."  (*Id.*)  "Furthermore, the Management Board ensures effective risk management and controlling as well as adherence to legal requirements and guidelines within the Company applying to all group subsidiaries (compliance)."  (Exhibit B at 29.)  "A dedicated subdivision (Business Unit or Business Group) with profit-centre responsibility is assigned to look after each of the various carmakers, the commercial vehicle industry, the automotive supply industry as well as the component and electromobility segments.  In principle, each business unit is the worldwide contact for one customer.  In addition, there are two regional umbrella organisations for the Americas."  (Exhibit A at 53.)

of preparing Leoni AG's consolidated balance sheet and financial statements." (*Id.*) Leoni AG also admits that it "shares certain other information technology tools with the U.S. subsidiaries." (*Id.*)

Fourth, "individual Leoni AG directors from time to time have held positions on the boards of directors of" Leoni Wire Inc., Leoni Wiring Systems, Inc., and Leonische Holdings Inc. (*Id.* ¶ 15.) *See Carrier Corp.*, 673 F.3d at 450 (applying alter ego theory when subsidiaries' directors included parent personnel); *WEDGE*, 882 F.2d at 1090 (same); *Glover*, 2012 WL 2412068, at *5 (same).

Fifth, Leoni AG enforces corporate policies that govern its U.S. subsidiaries, including a Code of Ethics, social policy, safety standards to ensure appropriate and a risk management system. (Exhibit A at 88, 90, 95-96) These worldwide policies support the exercise of jurisdiction under the alter ego theory. *Carrier Corp.*, 673 F.3d at 450 (applying alter ego theory where parent controlled commercial policy).

Finally, the Leoni Group's global corporate image is projected throughout its website and annual reports. The annual report states that "[t]he Leoni Group operates worldwide," (Exhibit A at 1.) and its website discusses its "[g]lobal footprint" in the automotive and commercial vehicles industry, (Exhibit C; *see also* Exhibit D ("For the automotive and other industries LEONI is a proven global partner.").) The Leoni Group annual report boasts that it "employs more than 60,000 people in 31 countries" and that it has "83 subsidiaries and 93 production facilities in 31 countries," including in America. (Exhibit A at 1, 44; *see id.* at 2 (discussing "the Company's increasing international footprint and the ever greater global interdependence"); *id.* (aiming to be in "a leading position as a provider of cable and wiring systems" in the U.S.).) The public record establishes that Leoni AG repeatedly reinforced its global image, which supports

12

the exercise of jurisdiction.  In *Futaba Industrial Co. v. Keylex Corp.*, 2012 WL at * 3, this Court asserted general jurisdiction over a foreign corporation whose website stated "that it has established 'business branches' in China and the U.S. . . . as a 'way[ ] to expand [its] business globally.'" This court reasoned that these statements "suggest[ ] that [defendant] has engaged in more extensive activities in the forum than have been uncovered at this stage in the litigation and without discovery." *Id.; Glover*, 2012 WL at *5 (parent and subsidiary share same website).

### 2. Leoni AG and Leoni Kabel Have Continuous and Systematic U.S. Contacts.

First, Leoni AG's subsidiaries are located in the U.S.  "[T]he ownership of [a] subsidiary carrying on local activities in [the forum] represents . . . one contact or factor to be considered in assessing the existence or non-existence of the [parent's] requisite minimum contacts with the [forum]." *Futaba*, 2012 WL at * 3.

Second, Leoni AG has acquisitions and other business in the U.S.  In 2010, Leoni AG acquired RoMack Inc., a U.S. company.  (Exhibit A at 142.)  Leoni AG's annual report states that "this acquisition enables the Company to offer its target markets in North and South America a complete range of optical technology from a single source."  (*Id.*)

Third, Leoni AG benefits from business conducted on its behalf in the U.S.  In its 2011 Interim Report, Leoni AG stated that "[b]usiness in the U.S. also rose strongly.  Here LEONI benefited from a return in the North American commercial vehicle market to particularly dynamic growth."  (Exhibit e at 10; *id.* at 11 ("the Wire & Cable Solutions Division recorded significant growth in all regions.  This also reflected the global nature of the automotive cables business, which made gains in . . . the Americas.  In our other Business Groups, we expanded above all in . . . North America."); *id.* at 24 ("[t]he basis for [the positive performance of the Leoni Group] is the undiminished, strong demand from the . . . sectors in the regions of

13

importance to us, namely . . . [the] USA"); Exhibit F at 10, 20 (USA a "market[ ] of greatest importance to LEONI").)   These facts support asserting general jurisdiction over Leoni AG. *Avery Dennison Corp.*, 632 F. Supp. 2d at 711 (general jurisdiction exists where evidence "suggests a significant volume of business in the [forum].")

Fourth, "[s]ince 2010, Leoni AG has maintained two bank accounts in the U.S." that it uses "to provide cash pooling services to its U.S. subsidiaries to ensure favorable banking terms."  (Dkt. 234-3 ¶ 10.)  Maintaining bank accounts in the U.S. to provide services to U.S. companies and to obtain a financial benefit supports this Court asserting general jurisdiction over Leoni AG.

Fifth, Leoni AG admits its "functional role is to provide various internal, administrative services" to its U.S. subsidiaries "such as cash pooling services and information technology support."  (Dkt. 234-3 ¶ 5.)  One "example" of the services it provides is that "Leoni AG shares the SAP SEM computer program with Leonische Holding Inc., Leoni Wiring Systems, Inc., and Leoni Wire Inc. for the purposes of preparing Leoni AG's consolidated balance sheet and financial statements."  (*Id.*)  Leoni AG also "shares certain other information technology tools with the U.S. subsidiaries."  (*Id.*)

Sixth, Leoni "has licensed the [U.S. subsidiaries] to use the name 'Leoni.'" (Dkt. 234-3 ¶ 5.)  Such license agreements with U.S. companies support exercise of general jurisdiction over Leoni AG. *Miller Pipeline Corp. v. British Gas PLC*, 901 F.Supp. 1416, 1423 (S.D. Ind. 1995).

Seventh, Leoni AG concedes that "[i]n connection with these internal functions" that Leoni AG provides to its U.S. subsidiaries, "Leoni AG employees occasionally visit the U.S. . . . ."  (Dkt. 234-3 ¶ 5.)  Indeed, "Leoni AG board members occasionally travel to the U.S. to attend meetings and trade shows."  (*Id.* ¶ 12.)  Those Leoni AG board members also have held positions

14

on the boards of directors of the U.S. subsidiary defendants.  (*Id.* ¶ 15.)  In *German Free State of Bavaria v. Toyobo Co., Ltd.*, No. 1:06-CV-407, 2007 WL 851671 *6 (W.D. Mich. Mar. 19, 2007), the court asserted general jurisdiction over a foreign corporation whose employees "visit[ed] Michigan on multiple occasions."  Defendant argued the visits were "promotional," but the court found the evidence showed that "these meetings were . . . rather strategy pow-wows and informational meetings regarding the testing" of products. *Id.*[8]

Eighth, ownership of U.S. patents also supports jurisdiction over Leoni AG and Leoni Kabel. *In re Automotive Refinishing Paint Antitrust Litig.*, No. 1426, 2002 WL 31261330, at *9 (E.D. Pa. July 31, 2002); *Miller Pipeline*, 901 F. Supp. at 1423.  Leoni AG owns two U.S. Patents.  It filed the application for U.S. Patent No. 6,939,139, which was issued on September 6, 2005. (Exhibit G.)  Leoni AG also was granted U.S. Patent No. 7,521,665 on April 21, 2009. (Exhibit H.)  Leoni AG is also the assignee of U.S. Patent Application No. 20090314520, filed June 23, 2009. (Exhibit I.)  Leoni Kabel owns a U.S. Patent No. 6,833,506, which was issued December 21, 2004. (Exhibit J.)  With the grant of these U.S. patents, Leoni AG and Leoni Kabel obtained exclusivity rights based on the U.S. Constitution. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985) (citing 35 U.S.C. § 154).  By choosing to protect its intellectual property and obtaining U.S. patents, Leoni AG and Leoni Kabel submitted to general personal jurisdiction in the U.S.

Ninth, Leoni Kabel concedes that it "sells products in the U.S. both directly and through a United States-based Leoni group entity, Leoni Cable Inc."  (Dkt. 234-4 ¶ 5.)  "Leoni Kabel GmbH has sold products to Leoni Wiring Systems, Inc." and Leoni Kabel admits that some of its

---

[8] Leoni AG claims that the board members visiting the U.S. did "not conduct business."  But based on DP Plaintiffs' evidence of control, it is reasonable to infer that the board members and other personnel were conducting business for Leoni AG while in the U.S.  Further, DP Plaintiffs allege that Leoni AG and Leoni Kabel attended industry events that provided the opportunity to perform acts in furtherance of the conspiracy.  (Dkt. 86 ¶ 106.)

net sales occur in the U.S. (*Id.*). Selling products in the U.S. and obtaining sales from the U.S. is sufficient for general jurisdiction over Leoni Kabel. In *McFadden*, this Court exercised personal jurisdiction over a defendant that supplied products over a period of years to Michigan pursuant to an agreement with General Motors. 2012 WL at *4. The supply of these products involved "regular interaction" with the forum. *Id.* It is reasonable to infer that Leoni Kabel had an agreement or substantial relationship with Leoni Cable, Inc. and Leoni Wiring Systems, Inc., both U.S. entities, that detailed the terms of Leoni Kabel selling products to these entities. And it is also reasonable to infer that these relationships involved Leoni Kabel's regular interaction with the forum. *See Futaba*, 2012 WL 432968, at *3; *Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989) (general personal jurisdiction when defendant had at least one sale in Michigan every month for a year); *German Free State of Bavaria*, 2007 WL at *6–*7 (general personal jurisdiction found where defendant sold products in the forum).

Leoni Kabel's U.S. sales also justify exercising general jurisdiction over it. In *Owen v. Illinois Baking Corp.*, 235 F.Supp. 257 (W.D. Mich. 1964), the court found general personal jurisdiction based on the volume of business done in the past five years in the forum, which ranged from $182,000 to $250,000. The exact amount of Leoni Kabel's U.S. sales are unknown because its sales figures are included in Leoni AG's consolidated financial statements. But viewing the evidence in the light most favorable to DP Plaintiffs, and considering that Leoni AG's net sales were €3.7 billion in 2011, it is reasonable to infer that Leoni Kabel has sufficient sales in the U.S. to support the exercise of general jurisdiction.

### 3. The Agency Relationship Between Leoni AG and its U.S. Subsidiaries Provides Another Basis for the Court to Exercise Jurisdiction.

"[W]hen two corporations have common ownership and their activities are interrelated . . ., they may have an agency relationship for jurisdictional purposes, even if the resident

16

corporation is not controlled by the nonresident entity," and the "intimacy of the relationship between the two corporations does not reach the level of finding [alter ego] status." *Palmieri v. Estefan*, 793 F. Supp. 1182, 1194 (S.D.N.Y. 1992). *See also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1273 (11th Cir. 2002) ("Agency is not, however, limited to a parent-subsidiary relationship. Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates.") (collecting cases).

Leoni AG and its U.S. subsidiaries have the requisite agency relationship for jurisdictional purposes because the services provided by Leoni AG's U.S. subsidiaries are sufficiently important to Leoni AG that, if those subsidiaries went out of business, Leoni AG would continue its involvement in the U.S. automobile market either by selling products itself, or be selling them through a new representative. *See id.* As discussed below, Leoni AG's public reports are replete with statements concerning the importance of the business conducted in the U.S. on its behalf. And as discussed above, Leoni AG's website and public reports repeatedly discuss the importance of the Leoni Group's performance on a global scale. Therefore, the services provided by the U.S. subsidiaries are of sufficient importance to warrant the exercise of general jurisdiction under the agency test. *See id.* Finally, as set forth above, Leoni AG sufficiently controls its U.S. subsidiaries to support the exercise of general jurisdiction under the agency test. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 922-23 (9th Cir. 2011). Therefore, the contacts of Leoni AG's subsidiaries may be attributed to Leoni AG. *See Palmieri*, 793 F. Supp. at 1194.

DP Plaintiffs are cognizant that "'[a] court's exercise of its power over an out-of-state defendant must not offend traditional notions of fair play and substantial justice.'" *McFadden*,

2012 WL at *5 (quotation omitted). But the exercise of general jurisdiction over Leoni AG and Leoni Kabel is warranted.

## III.    ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS WARRANTED

Should the Court conclude that DP Plaintiffs have not demonstrated a *prima facie* case of personal jurisdiction over Leoni AG and Leoni Kabel, DP Plaintiffs have at least made a sufficient showing to justify jurisdictional discovery concerning Leoni AG's and Leoni Kabel's contacts with the United States and the close relationship they share with their U.S. subsidiaries and affiliates. *Carrier Corp.* at 449 (court may permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions) (citing *Theunissen* at 1458); *In re Packaged Ice* at 1019 (deferring ruling on motion to dismiss for lack of personal jurisdiction until plaintiffs have had an opportunity to conduct jurisdictional discovery); *Bradford Co. v. Afco Mfg.*, No. 1:05-CV-449, 2006 WL 143343, at * 4–*5 (S.D. Ohio Jan. 19, 2006) ("Where the district court concludes that the record is insufficient to support personal jurisdiction, it may allow discovery"); *Technology & Servs., Inc. v. TACS Automation, LLC*, No. 2:09-cv-1113, 2010 WL 2640047, *3 (S.D. Ohio June 29, 2010); *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170, *2 (6th Cir. 1995).

## CONCLUSION

For the foregoing reasons, DP Plaintiffs respectfully submit that they have satisfied the pleading requirements of Rule 8(a) and Rule 12(b)(6) and have presented a *prima facie* case establishing personal jurisdiction over Leoni AG and Leoni Kabel. As a result, Leoni's motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(6) should be denied. Should the Court disagree that DP Plaintiffs have established a basis for the exercise of jurisdiction over Leoni AG or Leoni

Kabel, DP Plaintiffs respectfully request that the Court defer ruling on the 12(b)(2) aspect of the

motion and grant DP Plaintiffs' alternative request to conduct jurisdictional discovery.


Dated: September 11, 2012                    Respectfully Submitted,

                                             By: /s/ David H. Fink
                                             David H. Fink (P28235)
                                             Darryl Bressack (P67820)
                                             FINK + ASSOCIATES LAW
                                             100 West Long Lake Road, Suite 111
                                             Bloomfield Hills, MI 48304
                                             (248) 971-2500
                                             dfink@finkandassociateslaw.com

                                             *Interim Liaison Counsel for the DP Plaintiffs*

Joseph C. Kohn                               Gregory P. Hansel
William E. Hoese                             Randall B. Weill
Douglas A. Abrahams                          Joshua R. Carver
KOHN, SWIFT & GRAF, P.C.                     PRETI, FLAHERTY, BELIVEAU
One South Broad Street, Suite 2100             & PACHIOS LLP
Philadelphia, PA 19107                       One City Center, P.O., Box 9546
(215) 238-1700                               Portland, ME 04112-9546
jkohn@kohnswift.com                          (207) 791-3000
                                             ghansel@preti.com
Steven A. Kanner
William H. London                            Eugene A. Spector
Michael E. Moskovitz                         William G. Caldes
Michael L. Silverman                         Jonathan M. Jagher
FREED KANNER LONDON                          Jeffrey L. Spector
  & MILLEN LLC                               SPECTOR ROSEMAN KODROFF
2201 Waukegan Road, Suite 130                  & WILLIS, P.C.
Bannockburn, IL 60015                        1818 Market Street, Suite 2500
(224) 632-4500                               Philadelphia, PA 19103
skanner@fklmlaw.com                          (215) 496-0300
                                             espector@srkw-law.com

                                             *Interim Lead Counsel for the Direct Purchaser*
                                             *Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2012, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Interim Liaison Counsel for DP Plaintiffs
100 West Long Lake Road, Suite111
Bloomfield Hills, MI  48304
(248) 971-2500
dfink@finkandassociateslaw.com