# EXHIBIT

# A

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **Master File No. 12-md-02311**<br><br>**Lead Case: W:12-cv-00001-MOB-MKM** |
| **THIS DOCUMENT RELATES TO:**<br><br>**Product(s): Wire Harnesses**<br><br>**All End-Payor and Auto Dealer Actions** | |

### END-PAYOR AND AUTOMOBILE DEALER PLAINTIFFS' OPPOSITION TO THE LEONI DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.   STATEMENT OF THE CASE.................................................................................... 1

II.  ARGUMENT ....................................................................................................... 3

    A.   Plaintiffs Have Pled Sufficient Facts Showing Leoni Joined the
         International Wire Harness Cartel. ............................................................. 3

        1.   Plaintiffs Have Pleaded Direct Evidence of a Conspiracy as Well
            as Evidence Linking Leoni to That Conspiracy........................................ 3

        2.   Contrary to Leoni's Distorted Reading of the Law, Plaintiffs are
            Not Required to Recite Intimate Details of the Conspiracy or List
            Each Defendant by Name When Making Allegations that Pertain
            to All Defendants. ..................................................................................... 8

    B.   The Court Has Personal Jurisdiction Over Leoni AG. ............................. 12

        1.   The Court has General Jurisdiction Over Leoni AG Because Its
            U.S. Subsidiaries Are its Alter Egos........................................................ 13

        2.   The Court Has Specific Jurisdiction over Defendant Leoni AG
            Based on Its Contacts with the United States. ......................................... 17

            a.   Leoni AG Purposefully Availed Itself of the Privilege of
                Doing Business in the United States........................................... 17

                i.   Leoni AG Likely Placed Products Into the Stream
                    of Commerce With the Intent That They Would
                    Reach the United States. ................................................ 18

                ii.  Leoni AG's Price-Fixing Was Aimed at and
                    Generated Pernicious Effects in the United States. .......... 18

            b.   Jurisdiction Over Leoni AG for its Price-Fixing of Wire
                Harnesses "Arises From" Leoni's Sales of Those Wire
                Harnesses Into the US. ............................................................... 19

            c.   It is Eminently Reasonable for Leoni to Defend Itself in the
                 US Against US Customers Injured by its Actions. ....................... 19

        3.   Jurisdictional Discovery.......................................................................... 20

III. CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Alexander Assocs., Inc. v. FCMP Inc.*,
  2012 WL 1033464, at \*17 (E.D. Mich. Mar. 27, 2012) .................................................. passim

*Asahi Metal Indus. Co. v. Superior Court*,
  480 U.S. 102 (1987).................................................................................................... 17, 18

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009).......................................................................................................... 3

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)................................................................................................... passim

*Bird v. Parsons*,
  289 F.3d 865 (6th Cir. 2002) ...................................................................................... 13, 19

*Bridgeport Music, Inc. v. Still N the Water Pub.*,
  327 F.3d 472 (6th Cir. 2003) ....................................................................................... vi, 18

*Burger King Corp. v Rudzewicz*,
  471 U.S. 462 (1985).......................................................................................................... 19

*Calder v. Jones*,
  465 U.S. 783 [ ] (1984)..................................................................................................... 18

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430, (6th Cir. 2012) .......................................................................... vi, 9, 13, 19

*Cf. Neal v. Janssen*,
  270 F.3d 328 (6th Cir. 2001) ........................................................................................... 20

*Continental Ore Co. v. Union Carbide and Carbon Corp.*,
  370 U.S. 690 (1962)............................................................................................................ 3

*Donnelly Corp. v. Reitter & Schefenacker GmbH*,
  189 F. Supp. 2d 696 (W.D. Mich. 2002) ......................................................................... 20

*Fair Isaac Corp. v. Equifax Inc.*,
  No. 06-4112, 2008 WL 623120, at \*\*5-6 (D. Minn. Mar. 4, 2008)........................................ 11

*Group Agency, Inc. v. Patterson*,
  2011 WL 5067251, at \*2 (Mich.Ct.App. Oct.25, 2011)........................................................ 14

*Hyland v. Homeservices of Am., Inc.*,
  No. 05 Civ. 612, 2007 WL 2407233, at \*3 (W.D. Ky. Aug. 17, 2007)................................... 12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No 06-1775, 2009 WL 3443405, at \*1 (E.D.N.Y. Aug. 21, 2009) ........................................... 4

*In re Bulk Popcorn Antitrust Litig.*,
  783 F. Supp. 1194 (D. Minn. 1991)........................................................................................ 5

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000)..................................................................... 18

*In re Chocolate Confectionary Antitrust Litig.*,
  602 F. Supp. 2d 538 (M.D. Pa. 2009) ......................................................................... 7

*In re Elevator Antitrust Litig.*,
  502 F.3d 47, 52 (2d Cir. 2007) ................................................................................... 6

*In re Fine Paper Antitrust Litig.*,
  685 F.2d 810 (3d Cir. 1982) ...................................................................................... 10

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) ......................................................... 7, 10, 11

*In re Flat Glass Antitrust Litig.*,
  385 F.3d 350 (3d Cir. 2004) ........................................................................................ 5

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) ........................................................ 4, 8

*In re Hypodermic Prods. Antitrust Litig.*,
  No. 05 Civ. 1602, 2007 WL 1959225, at *6, *8 (D.N.J. June 29, 2007) ................. 12

*In re OSB Antitrust Litig.*,
  No. 06 Civ. 826, 2007 WL 2253419, at *6 (E.D. Pa. Aug. 3, 2007)................... 10, 12

*In re Packaged Ice Antitrust Litig.*,
  723 F. Supp. 2d 987 (E.D. Mich. 2010)............................................................ passim

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  764 F. Supp. 2d 991 (N.D. Ill. 2011) .......................................................................... 7

*In re Polyurethane Foam Antitrust Litig.,*
  799 F. Supp. 2d 777 (N.D. Ohio 2011).................................................................. vi, 8

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  566 F. Supp. 2d 363 (E.D. Pa. 2008) ...................................................................... 4, 11

*In re Refrigerant Compressors Antitrust Litig.*,
  2012 WL 2114997, at *6 (E.D. Mich. Jun. 11, 2012) ............................................... 11

*In re Southeastern Milk*,
  555 F. Supp. 2d 934 (E.D. Tenn. 2008)....................................................................... 4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  580 F. Supp. 2d 896 (N.D. Cal. 2008) ........................................................... 7, 10, 11

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) ....................................................................................... 7

*In re Travel Agent Commission Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) ....................................................................................... 9

*In re Urethane Antitrust Litig.*,
  683 F. Supp. 2d 1214 (D.Kan. 2010).......................................................................... 8

*Jung v. Ass'n. of Am. Medical Colleges,*
    300 F. Supp. 2d 119 (D.D.C. 2004).........................................................................10

*Mich. Div.- Monument Builders of N. Am. v. Mich. Cemetery Ass'n,*
    458 F. Supp. 2d 474 (E.D. Mich. 2006)..................................................................11

*Neogen Corp. v. Neo Gen Screening, Inc.,*
    282 F.3d 883 (6th Cir. 2002) ...............................................................................13

*Operating Corp.,*
    No. 06-cv-30, 2007 WL 3254765, at *1 (D. Utah Nov. 2, 2007)...........................12

*Orbo Theater Corp v Loews,*
    156 F. Supp. 770 (D.D.C. 1957)..............................................................................4

*S. Mach. Co. v. Mohasco Indus., Inc.,*
    401 F.2d 374 (6th Cir. 1968) ................................................................................17

*Scotts Co. v. Aventis S.A.,*
    145 Fed. Appx. 109 (6th Cir. 2005)................................................................. vi, 18

*Starr v. Sony BMG Music Ent.,*
    592 F.3d 314, 324 (2d Cir. 2010) ............................................................................5

*Theunissen v. Matthews,*
    935 F.2d 1454 (6th Cir. 1991) ..................................................................13, 17, 19

*Third National Bank in Nashville v. WEDGE Group Inc.,*
    882 F.2d 1087 (6th Cir.1989) ........................................................................ vi, 14

*Tobin v. Astra Pharm. Prod., Inc.,*
    993 F.2d 528 (6th Cir. 1993) ................................................................................18

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,*
    552 F.3d 430 (6th Cir. 2008) ................................................................................10

*Toys "R" Us, Inc. v. Step Two, S.A.,*
    318 F.3d 446 (3d Cir. 2003) .................................................................................20

*WEDGE Group,*
    882 F.2d at 1090 ............................................................................................11, 15

**Statutes**

15 U.S.C. § 16(a) (1964)..................................................................................................4

**Rules**

Fed.R. Civ.P. 8 ................................................................................................................ v

**COUNTER-STATEMENT OF THE ISSUES PRESENTED**

1.      Whether Plaintiffs' allegations of an admitted global conspiracy, the active investigation into Leoni's participation in that conspiracy, and additional plus factors, are sufficient to state a claim for relief under Fed.R.Civ.P. 8 and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

2.      Whether the Court has personal jurisdiction over Leoni AG under the alter ego theory of general jurisdiction or under theories of specific jurisdiction based on Leoni AG's minimum contacts with the United States.

**MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT**

1.      **Sufficiency of Plaintiffs' Complaints Under Rule 8 and Twombly**

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)

*In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010)

*In re Polyurethane Foam Antitrust Litig.,*799 F. Supp. 2d 777, 795 (N.D. Ohio 2011)

2.      **Personal Jurisdiction Over Leoni AG**

*Carrier Corp. v. OutokumpuOjy*, 673 F.3d 430, 450-51 (6th Cir. 2012)

*Third National Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087 (6th Cir. 1989)

*Alexander Assocs., Inc. v. FCMP Inc.*, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012)

*Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472 (6th Cir. 2003)

*Scotts Co. v. Aventis S.A.*, 145 Fed. Appx.109, 113 (6th Cir. 2005)

Leoni's Motion does not attempt to dispute that the End-Payor and Auto Dealer Indirect Purchaser Plaintiffs ("Plaintiffs") have adequately pleaded the existence of an international conspiracy to fix prices of automotive wire harnesses. Indeed, Plaintiffs' case is unusually strong in that several international wire harness manufacturers have already pleaded guilty in the United States, and several more have faced disciplinary action in Japan. *See* End-Payor Plaintiffs' Corrected Consolidated Amended Class Action Complaint ("End-Payor Compl.") (Dkt. 174 ) ¶¶ 164-87; Automobile Dealer Plaintiffs' Consolidated Class Complaint ("AD Compl.") (Dkt. 85) ¶¶ 7-11, 168-176.  Instead, Leoni AG seeks to escape liability for this worldwide price-fixing conspiracy because it is located in Germany, while all the Leoni entities attempt to distance themselves from the conspiracy by compartmentalizing and isolating Plaintiffs' allegations against them. Both of these tactics must fail: Plaintiffs have pleaded sufficient facts regarding the global wire harness cartel and the fact that Leoni AG and its US-based subsidiaries were members of that cartel.[1]

## I.   STATEMENT OF THE CASE

The Leoni Group is a multinational enterprise based in Germany that manufactures and sells wire harnesses and other electrical products around the world. Its various product divisions and international locations are nominally organized as subsidiaries, with Defendant Leoni AG (based in Germany) as the parent company at the top of the hierarchy. *See* Burns Aff., Ex. E. The division that makes wire harnesses is the Wiring Systems Division (in German: Bordnetz-Systeme). Two wholly-owned subsidiaries in the United States, Defendants Leoni Wire, Inc. (LW) and Leoni Wiring Systems, Inc. (LWS), manufacture and sell wire harness products in the US. End-Payor Compl. ¶¶ 98, 100; AD Comp. ¶¶ 103, 106.  Defendant Leonische Holding, Inc.

---

[1] At this time Plaintiffs will stipulate to the dismissal of Defendant LeoniKabel GmbH, without prejudice to their right to name LeoniKabel as a defendant should discovery reveal more information implicating it in the cartel.

is the US-based intermediate holding company between LWS and Leoni AG. *See* Burns Aff., Ex. E.

The United States, European Union, and Japanese antitrust authorities are pursuing coordinated investigations of illegal cartels in the automotive parts industry, including the wire harnesses sector. That investigation became public in February 2010, when the FBI, European Commission, and Japan Fair Trade Commission conducted coordinated surprise searches at the offices of wire harness producers, including Leoni. End-Payor Compl. ¶¶ 164-70; AD Compl. ¶¶ 168-176. To date, the investigations have yielded a number of disciplinary actions and guilty pleas in the US and Japan. End-Payor Compl. ¶¶ 172-86; AD Compl. ¶¶ 183-213. The investigations are ongoing, and the defendants who pleaded guilty have agreed to cooperate with the authorities. End-Payor Compl.¶¶ 8, 180-81; AD Compl. ¶¶ 8, 195. Moreover, on August 9, 2012 (after Plaintiffs filed their Complaints), the European Commission ("EC") announced the investigation had progressed to the next level when it formally opened proceedings against suspected cartel members, although it has not named the particular companies under investigation. Press Release, European Commission, Antitrust: Commission Opens Proceedings Against Suspected Participants In Several Cartels For The Supply Of Automotive Wire Harnesses (Aug. 9, 2012).[2]  On August 9, 2012 Bloomberg BusinessWeek quoted Leoni AG as stating that it is continuing to cooperate with the authorities' antitrust probes.[3]

---

[2]Available at
http://europa.eu/rapid/pressReleasesAction.do?reference=IP/12/894&format=HTML&aged=0&language=EN&guiLanguage=en.
This Court may take judicial notice of facts such as the existence of the EC investigation without transforming the instant motion into one for summary judgment. *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009).
3 http://www.businessweek.com/news/2012-08-09/eu-starts-probe-of-automotive-wire-harness-maker-cartels.

## II.    ARGUMENT

**A.    Plaintiffs Have Pled Sufficient Facts Showing Leoni Joined the International Wire Harness Cartel.**

A motion to dismiss should be denied when there is "a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). Plaintiffs discuss the basic pleading standards under *Twombly*, *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and Rule 8 in the End-Payor and Auto-Dealer Plaintiffs' Memorandum of Law in Response to Defendants' Collective Motion to Dismiss, which Plaintiffs incorporate herein by reference. In particular, Plaintiffs have met those standards as they apply to Plaintiffs' claims against Leoni because Plaintiffs' allegations linking Leoni to a known price-fixing conspiracy satisfy the twin goals of *Twombly*: requiring that the complaint give the defendant fair notice of the claims against it, and that the claim for relief must be plausible on its face. *See Twombly*, 550 U.S. at 554-55 & 556-57.

### 1.    Plaintiffs Have Pleaded Direct Evidence of a Conspiracy as Well as Evidence Linking Leoni to That Conspiracy.

By moving separately for dismissal based primarily on a myopic focus on the paragraphs in Plaintiffs' Complaints that mention Leoni by name, Leoni Br. at 1-2, Leoni essentially asks the Court to ignore the remainder of the Complaints. Leoni's approach is wholly improper: courts have long recognized that allegations of conspiracy must be viewed in their entirety and not piecemeal. *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690, 699 (1962) ("[P]laintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.") (citation and internal quotation marks omitted).  This is the case even in the shadow of *Twombly*.  "Nothing in *Twombly*

however, contemplates this 'dismemberment' approach to assessing the sufficiency of a

Complaint." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 373 (E.D.

Pa. 2008). "Rather, a district court must consider a complaint in its entirety without isolating

each allegation for individualized review." *Id.; accord In re Southeastern Milk*, 555 F. Supp. 2d

934, 943-44 (E.D. Tenn. 2008).

It is plain to see why Leoni asks this Court to ignore Plaintiffs' broader conspiracy

claims. There can be no dispute that an international conspiracy existed to fix prices on wire

harnesses, as several wire harness manufacturers have pleaded guilty to fixing prices in the U.S.

and elsewhere, and a criminal guilty plea is prima facie evidence of the existence of the same

antitrust conspiracy. *See* 15 U.S.C. § 16(a) (1964); *Orbo Theater Corp v Loews*, 156 F. Supp.

770, 777 (D.D.C. 1957) (final judgment or decree is prima facie evidence of a conspiracy

covering the same area and existing during the same time as that involved in any subsequent

case), aff'd, 26118 F.2d 380 (D.C. Cir. 1958); *see also In re Air Cargo Shipping Servs. Antitrust*

*Litig.*, No 06-1775, 2009 WL 3443405, at *1 (E.D.N.Y. Aug. 21, 2009) ("[T]he admissions of

price-fixing by so many of the defendants certainly 'are suggestive enough to render a § 1

conspiracy plausible." (quoting *Twombly*, 550 U.S. at 556)). Leoni's attempt to brush aside the

government investigations as "irrelevant," Leoni Br. at 4, is futile.[4]

---

[4] The language Leoni quotes from *In re Refrigerant Compressors Antitrust Litig.*, 2012 WL
2114997, at *6 (E.D. Mich. Jun. 11, 2012) (quoted in Leoni Br. at 4-5), which is in turn quoted
from *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal.
2007) ("*GPU*")(quoted in Leoni Br. at 4), pertains to a very different situation. In *GPU* there had
been no guilty pleas, but rather the plaintiffs relied on the fact that two defendants had been
served with grand jury subpoenas. The court noted: "It is unknown whether the investigation will
result in indictments or nothing at all. Because of the grand jury's secrecy requirement, the scope
of the investigation is pure speculation. It may be broader or narrower than the allegations at
issue." *Id.* Nonetheless, the *GPU* court granted the plaintiffs leave to amend. *Id.* at 1033.

4

The numerous guilty pleas present in this case by themselves establish a plausible antitrust conspiracy. Further, "[o]nce a conspiracy is shown, only slight evidence is needed to link another defendant with it." *In re Bulk Popcorn Antitrust Litig.*, 783 F. Supp. 1194, 1197 (D. Minn. 1991); *accord In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 363 (3d Cir. 2004) ("If six firms act in parallel fashion and there is evidence that five of the firms entered into an agreement, for example, it is reasonable to infer that the sixth firm acted consistent with the other five firms' actions because it was also party to the agreement. That is especially so if the sister firm's behavior mirrored that of the five conceded coconspirators.").

The specific allegations linking Leoni with the conspiracy in this case are much more than "slight." First, Leoni was a target of the first round of EC raids that were carried out in February of 2010, End-Payor Compl. ¶ 166; AD Compl. ¶ 170, a fact that by itself is enough to plausibly suggest Leoni joined the conspiracy. In *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1009 (E.D. Mich. 2010), this Court held that an investigation and guilty pleas lent credence to the plaintiff's allegations of conspiracy, even though the guilty pleas involved other members of the alleged conspiracy, not the defendant moving to dismiss. *Id.*, citing *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 324 (2d Cir. 2010).

Second, Plaintiffs have pleaded considerable facts suggesting that both the market and the cartel were international in scope, and that Leoni participated in this worldwide cartel. Although Leoni attempts to downplay the EU investigation, its claim that "Plaintiffs do not allege that there is any link between Plaintiffs' allegations in the United States and the investigation in Europe," Leoni Br. at 4, is false: the Complaints describe an international conspiracy to fix prices in multiple countries, including the United States. The Complaints state that the European, American, and Japanese investigations were all coordinated and all targeted

an overlapping group of companies that operate worldwide. End-Payor Compl. ¶¶ 164-170; AD Compl. ¶¶ 168-176. The Complaints also detail how the market for wire harnesses is international in scope: the market is highly concentrated in the hands of a small group of multinational companies, End-Payor Compl. ¶ 143; AD Compl. ¶ 143, and wire harnesses are built to the specifications of a small number of multinational automobile manufacturers, End-Payor Compl. ¶ 157; AD Compl. ¶¶ 159. Plaintiffs have alleged – based in part on information revealed in the guilty pleas – that the cartel members met in locations around the world and agreed to fix prices for products sold in the US and other markets. End-Payor Compl. ¶¶ 176, 179, 180, 182-86; AD Compl. ¶¶ 191, 194, 195, 197-208.[5] There is no reason to believe, as Leoni implies, that Leoni watched its co-conspirators reap artificially inflated profits worldwide while arbitrarily cutting off its own participation at the European border.

Third, in addition to the ongoing criminal investigations, the Complaints allege "plus factors" that are equally applicable to Leoni as to the other defendants. These allegations detail unusual market behavior consistent with cartel operation in a market susceptible to collusion:

- The global wire harness market is highly concentrated, with the Defendants in this case controlling almost 90% of the worldwide market. End-Payor Compl. ¶¶ 143, 161-62; AD Compl. ¶¶ 141, 164-165.

- The price of wire harnesses increased steadily, whereas the price of major inputs needed to make wire harnesses remained the same. End-Payor Compl. ¶ 153; AD Compl. ¶ 154.

---

[5] *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007), cited in Leoni Br. at 4, is distinguishable: in that case, the plaintiffs did not establish any link between the EU investigations and the defendants' activities in the US. Notably, in *Elevator* there was no corresponding investigation by the US government, and in fact, the claims were precipitated merely by a news report that certain European elevator companies were under investigation. In essence, the plaintiffs' invocation of the European investigations suggested merely that "if it happened there, it could have happened here." *Id.* at 52.

- The wire harness market has high barriers to entry. End-Payor Compl. ¶¶ 155-57; AD Compl. ¶¶ 157-159.

- Demand for wire harnesses is inelastic. End-Payor Compl. ¶¶ 158-60; AD Compl. ¶¶ 161-163.

- Regular trade association meetings provided plentiful opportunities for Defendants to conspire. End-Payor Compl. ¶ 163; AD Compl. ¶¶ 166-167.

Each of these allegations describes a well-known "plus factor" that, if proven at trial, would support an inference of conspiracy against each of the defendants, including Leoni. This Court in *Packaged Ice* denied a motion to dismiss based on a strikingly similar fact pattern: government investigations and guilty pleas, a market conductive to collusion, and regular opportunities to conspire at trade association meetings. *Packaged Ice*, 723 F. Supp. 2d at 1014-17 (finding allegations of plus factors of market structure and opportunity to conspire, combined with other evidence, "bolster[ed] the plausibility of a conspiracy," *Id.* at 1017).

*Packaged Ice* is not unusual: since *Twombly*, numerous other courts have found antitrust complaints sufficient where plaintiffs have pleaded such factual detail. *See, e.g. In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 627-628 (7th Cir. 2010); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1003 (N.D. Ill. 2011); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 576 (M.D. Pa. 2009); *Flash Memory*, 643 F. Supp. 2d at 1142; *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 902-903 (N.D. Cal. 2008) (allegations of homogeneous product sold in concentrated market with high barriers sufficient to support to support inference of conspiracy).

In sum, the facts enumerated above are sufficient to raise a plausible inference that the conspiracy operated worldwide and that Leoni joined the conspiracy. Far from being mere "legal conclusion[s] couched as [ ] factual allegation[s]," *Twombly*, 550 U.S. at 555, these allegations are more than sufficient to state a plausible claim and to "put Defendant[ ] on notice, sufficient to

form the basis for a response," which is the crux of Rule 8's notice pleading standard. *See Packaged Ice*, 723 F. Supp. 2d at 1007.

> **2.      Contrary to Leoni's Distorted Reading of the Law, Plaintiffs are Not Required to Recite Intimate Details of the Conspiracy or List Each Defendant by Name When Making Allegations that Pertain to All Defendants.**

The two legal arguments that form the backbone of Leoni's argument – that Plaintiffs must recite an insider's view of the "who, what, when, where, how, and why" of the conspiracy, Leoni Br. at 3 & 5, and that the Court may disregard allegations that describe the activities of "defendants" without listing each defendant by name, *Id.* at 6 – have been repeatedly rejected by courts across the country.[6] As the Northern District of Ohio neatly summarized: "[T]he plausibility pleading standard does not require a court to construct a mandatory checklist of the 'who, what, where, when, and how' of an antitrust agreement for each defendant. Common sense prevails, and a complaint survives if it contains 'enough factual matter (taken as true) to suggest that an agreement was made' among the defendants." *In re Polyurethane Foam Antitrust Litig.,* 799 F. Supp. 2d 777, 795 (N.D. Ohio 2011) (quoting *Twombly*, 550 U.S. at 556). Here, common sense dictates that an admitted global conspiracy, plus the fact that Leoni is being investigated by the European antitrust authorities for participation in the same global conspiracy, plus the oligopolistic nature of the market and the defendants' pricing behavior, are more than enough to plausibly suggest that Leoni joined the conspiracy.

---

[6]*See, e.g. In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1233 (D.Kan. 2010) ("Contrary to defendants' argument, plaintiffs are not required to allege every detail for every meeting or communication occurring during the relevant time period. … The applicable standard is not whether any unanswered questions remain about the alleged meetings and communications during the time period, as defendants seem to suggest."); *GPU*, 527 F. Supp. 2d at 1024 (confirming that plaintiffs need not plead "specific back-room meetings between specific actors at which specific decisions were made.").

As to Leoni's first illusory legal standard, neither *Twombly* nor *Iqbal* require the impossible: pleading a minute-by-minute accounting of the inner workings of the conspiracy. A motion to dismiss should be denied when there is "a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. In fact, this Court has previously rejected the very argument Leoni advances here. *Packaged Ice*, 723 F. Supp. 2d at 1005 ("*Twombly* does not require specific allegations of time, place or person."). Moreover, the court in *Packaged Ice* explained that the "who what when" argument was based on a distortion of language in prior cases, and in particular distinguished *In re Travel Agent Commission Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009), one of the cases[7] Leoni relies on for this standard. In fact, in *Travel Agent*, the problem was not the lack of detail as to the particular defendants, but that the plaintiffs alleged nothing beyond mere parallel conduct and opportunity to conspire, *Travel Agent*, 583 F. 3d at 904-5, facts that are equally consistent with innocent conduct. By contrast, here the government investigations, guilty pleas, and suspicious market behavior in this industry are more than sufficient to "nudge[ ] [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

As to Leoni's insistence that any allegation that uses the term "defendants" in lieu of each defendant's name must be disregarded, *cf.* Leoni Br. at 6, also seeks to impose a burden far higher than either *Twombly* or Rule 8 require. It is well established that antitrust conspiracy allegations need not be detailed "defendant by defendant." *Flash Memory*, 2009 U.S. Dist.

---

[7] The other case, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, (6th Cir. 2012), which also cites *Travel Agent*, actually supports Plaintiffs' case against Leoni. There, the Sixth Circuit reversed the trial court's dismissal of the action, finding the plaintiffs had adequately pleaded a conspiracy. The allegations in that case were similar to those here: Carrier alleged an investigation by the European (though not US) antitrust authority, a worldwide customer allocation scheme, an opportunity to collude at trade association meetings, and market conditions that facilitated the conspiracy. *Id.* at 436-37.

LEXIS 38941, at *34 n.7 ("For pleading purposes, allegations of antitrust conspiracy need not be detailed on a 'defendant by defendant' basis."); *SRAM*, 580 F. Supp. 2d at 904; *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 822 (3d Cir. 1982). "Rather, an antitrust complaint should be viewed as a whole, and the plaintiff must allege that each individual defendant joined the conspiracy and played some role in it." *In re OSB Antitrust Litig.*, No. 06 Civ. 826, 2007 WL 2253419, at *6 (E.D. Pa. Aug. 3, 2007) (citing *Jung v. Ass'n. of Am. Medical Colleges*, 300 F. Supp. 2d 119, 164 n.27 (D.D.C. 2004) ("plaintiff must plead that 'an individual defendant was a participant in the conspiracy in the first instance,' but 'need not allege overt acts committed by each defendant in furtherance of the conspiracy'").

Most of the cases Leoni cites are distinguishable because they did not involve a conspiracy that had been conclusively established by guilty pleas or judgments against any defendants, and because the plaintiffs merely pleaded that a conspiracy existed but made no allegations linking any defendant to the conspiracy. *See Total Benefits Planning* (affirming dismissal where complaint made generic allegations of "'a continuing agreement'" pursuant to which defendants "'defamed and libeled the Total Benefits Strategy to third parties,' 'coerced and threatened certain insurance agents by threatening to blacklist them and cancel their contracts,' and 'organized a boycott of Plaintiffs'", but pleaded no facts regarding the nature of the alleged statements);[8] *Mich. Div.- Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458

---

[8] *Total Benefits Planning* is also distinguishable because there the plaintiffs failed to provide any detail beyond the bare claim that a conspiracy existed, which was especially important because the wrongful acts allegedly committed by the conspiracy were in the nature of statements – i.e. defamation, libel, and threats. In such a case, the defendant must know something about the content of the alleged statements in order to adequately prepare a defense. By contrast, here the Complaints clearly specify what wrongful acts they charge -- price-fixing and bid-rigging – and they contain highly detailed descriptions by conspiracy insiders of how the wire harness manufacturers carried out the conspiracy. *E.g.* SCAC ¶¶ 176, 179, 180, 182-86.

F. Supp. 2d 474, 485 (E.D. Mich. 2006), cited in Leoni Br. at 6 (finding plaintiff had made " no

specific factual allegations that relate to" any specific defendant, *id.* at 485).

Plaintiffs respectfully submit that the case on which Leoni relies most heavily, *In re

Refrigerant Compressors*, is simply inapposite here.  In *Compressors*, plaintiffs' complaint

lacked the detailed allegations present in this case.  For example, plaintiffs in *Compressors* did

not plead the existence of guilty pleas among conspirators, presumably because none had been

entered at the time of filing.  2012 WL 2114997, at *8 (taking judicial notice of guilty pleas as to

two defendants). There were no detailed allegations of a coordinated investigation between

foreign and U.S. legal authorities. There apparently were no allegations pertaining to amenability

of the market to price fixing.  And perhaps most tellingly, plaintiffs in *Compressors* sought to

incorporate by reference the complaint of direct purchasers which apparently did include far

more detail. *Id.* at *8 (refusing to take into account allegations in the direct purchasers'

complaint).  These circumstances are not present here, and this Court should decline Defendants'

invitation to extend the ruling in *Compressors* to a case like this one where Plaintiffs'

Complaints include significant detail and rests on a proven conspiracy.

Put frankly, the *Compressors* decided on the basis of a unique set of facts is dwarfed by

the volumes of precedent finding that *Twombly* did not claim to abrogate the notice pleading

standard of Rule 8.[9] Here, Plaintiffs have pled sufficient facts showing (a) a conspiracy existed in

---

[9]*See, e.g. SRAM*, 580 F. Supp. 2d at 900 (complaint need only present a short and plain statement of the claim; no detailed factual recitations are needed); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008) (Rule 8 pleading standards continue to apply after *Twombly*); *Flash Memory*, 643 F. Supp. 2d at 1141 (specific factual allegations are not necessary; the statement in a complaint need only "give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.") (internal quotation marks and citations omitted); *Fair Isaac Corp. v. Equifax Inc.*, No. 06-4112, 2008 WL 623120, at **5-6 (D. Minn. Mar. 4, 2008) (*Twombly* does not require specific pleading of the evidentiary details of a conspiracy); *Flying J Inc. v. TA Operating Corp.*, No. 06-cv-30, 2007 WL 3254765, at *1 (D.

the wire harness industry, (b) the means by which the participants carried out the conspiracy (based on the statements of admitted co-conspirators), (c) the industry, and thus the conspiracy, were international in scope, (d) Leoni has been targeted by the antitrust authorities in its home country, and (e) additional plus factors, including suspicious price increases by all defendants – including Leoni – in a market conducive to conspiracy, further suggest that Leoni joined the conspiracy. These allegations are more than sufficient to plausibly suggest Leoni joined the conspiracy and to place Leoni on notice of Plaintiffs' claims.

## B.   The Court Has Personal Jurisdiction Over Leoni AG.

Leoni does not dispute that the Leoni Group intentionally sells wiring harnesses to US-based customers. End-Payor Compl. ¶¶ 97-102; AD Compl. ¶¶ 102-107.  Further, as discussed below, Leoni's public filings and other evidence indicate that the Leoni Group operates as a single worldwide entity that is "managed centrally by LEONI AG." 2006 Ann. Rpt. at 20. Thus regardless of whether the Leoni wire harnesses sold in the U.S. left the hands of defendant Leoni AG, its U.S. subsidiaries defendants LWS and Leoni Wire, or some other global subsidiary, the result is the same: this Court has general jurisdiction over Leoni AG under the alter ego theory, and in addition, if Leoni AG sold the wire harnesses into the US then this Court has specific jurisdiction over it.

---

Utah Nov. 2, 2007) (*Twombly* imposed no heightened pleading standard; a short and plain statement of a claim is still all that is needed); *Hyland v. Homeservices of Am., Inc.*, No. 05 Civ. 612, 2007 WL 2407233, at *3 (W.D. Ky. Aug. 17, 2007) (complaint sufficed where "[p]laintiffs had alleged more than parallel business conduct and a 'bare' assertion of a 'belief' of a conspiracy"); *In re OSB Antitrust Litig.*, No. 06 Civ. 826, 2007 WL 2253419, at *3 (E.D. Pa. Aug. 6, 2007) (in denying motion to dismiss price-fixing conspiracy claim, "[p]laintiffs situate these allegations of parallel conduct in a context that suggests preceding agreement"); *In re Hypodermic Prods. Antitrust Litig.*, No. 05 Civ. 1602, 2007 WL 1959225, at *6, *8 (D.N.J. June 29, 2007) (liberal antitrust pleading standards apply after *Twombly*; allegations of anti-competitive exclusive dealing arrangements stated a claim under Section 1 of the Sherman Act).

On a Rule 12(b)(2) motion to dismiss, Plaintiffs need only make a prima facie showing of personal jurisdiction. *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002); *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883 (6th Cir. 2002). So long as the plaintiff has made this prima facie showing, "[t]he court must view the pleadings and affidavits in the light most favorable to the plaintiff and not weigh 'the controverting assertions of the party seeking dismissal.'" *Alexander Assocs., Inc. v. FCMP Inc.*, 2012 WL 1033464, at *17 (E.D. Mich. Mar. 27, 2012) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

A federal court may obtain jurisdiction over a foreign defendant by means of specific or general jurisdiction. This Court has general jurisdiction over Leoni AG because its subsidiaries in the U.S. are its alter egos. In addition, if the source of the wire harnesses Plaintiffs purchased in the U.S. was Leoni AG, then the Court has specific jurisdiction over Leoni AG under the purposeful availment, stream of commerce, and effects tests for specific jurisdiction.

### 1. The Court has General Jurisdiction Over Leoni AG Because Its U.S. Subsidiaries Are its Alter Egos.

Leoni AG cannot evade this Court's jurisdiction merely by adopting the formality of separate incorporation of its U.S. locations, where in reality the entire Leoni Group functions as a single entity managed and directed by Leoni AG. A court may exercise general jurisdiction over a foreign corporation if it possesses jurisdiction over a subsidiary and the two companies operate as a single, organic entity, such that the domestic subsidiary is a mere alter ego of the parent. *Carrier Corp. v. OutokumpuOjy*, 673 F.3d 430, 450-51 (6th Cir. 2012) ("[A] non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.") (further citation and quotation marks omitted).

Courts in this Circuit have considered a range of factors in assessing alter ego jurisdiction. For example, in *Alexander Associates*, the Court described the test as follows:

> Facts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

*Alexander Assocs.*, 2012 WL 1033464 at *18 (quoting *United Ins. Group Agency, Inc. v. Patterson*, 2011 WL 5067251, at *2 (Mich.Ct.App. Oct.25, 2011).Similarly, the Sixth Circuit has found alter ego jurisdiction where the foreign parent owned 100% of the domestic subsidiary; officers of the parent company sat on the subsidiary's board of directors and met regularly "to review and direct [its] operations," and the parent was a party to certain agreements and negotiations in the forum together with its domestic subsidiary. *Third National Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1090 (6th Cir.1989).

Even without the aid of discovery, Plaintiffs have already assembled a wealth of evidence that Leoni AG operated its wire harness subsidiaries worldwide – including Defendant LWS – as pieces of its global "Wiring Systems Division," rather than as independent companies. Leoni AG is the 100% owner of Leonische Holdings, Inc., which in turn is the 100% owner of LWS. Burns Aff., Ex. E at 9; Leoni Br. Ex. C (Steiner Aff.) ¶ 4. Leoni's public filings uniformly indicate that the "Leoni Group" functions as a single worldwide entity and holds itself out to potential customers and suppliers as a single entity. As Leoni states in its Annual Report: "The group of companies is managed centrally by LEONI AG." Burns Aff., Ex. H, 2006 Ann. Rpt. at 20. Leoni reports its income, profits, activities, and achievements on a worldwide basis for the entire Wiring Systems Division. *E.g.* Burns Aff., Ex. I, at 65-70 (2010 Leoni Annual Report). The Leoni Group's public documents also show that Leoni treats its subsidiaries' "project[s] to be its own," *Alexander Assocs.*, 2012 WL 1033464, at *18. For example, a 2006 report touting the

Leoni Group's recent successes lists examples of sales to auto manufacturers worldwide, including a recent decision that Leoni would begin "series production of cable harnesses for the BMW X5, which is made in the USA." Burns Aff. Ex. C,[10] 2006 Leoni Group Management Report.

Leoni AG and LWS also share many board members and executives in common, a factor cited in *WEDGE Group*, 882 F.2d at 1090, and *Alexander Assocs.*, 2012 WL 1033464, at *18. LWS' president, Juergen Linhard, is also the Managing Director of Leoni Bordnetz-Systeme GmbH and resides in Germany. *See* Burns Aff., Ex. N (2012 Arizona Corporation Commission Annual Report and Certificate of Disclosure (hereinafter "ACC Ann. Rpt.")); Burns Aff., Ex. B (July 12, 2012 press release mentioning Mr. Linhard's role with Leoni Bordnetz-Systeme).[11] Martin Gloesslein, LWS' current CEO and sole director (*see* Burns Aff, Ex. N, 2012 ACC Ann. Rpt.) has also been the Vice President of Global R&D at Leoni Bordnetz-Systeme Gmbh since 2003. *See* Burns Aff., Ex. G at 2[12]; Burns Aff., Ex. F (brief biography of Martin Gloesslein, spelled "Glößlein" in German).[13] Uwe Lamann, LWS' CEO and the sole Director listed in LWS' corporate filings until 2008, has also been a member of Leoni AG board since 1999 and is currently the head of Leoni's global Wiring Systems Division, *see* Burns Aff., Ex. N  at 11 (2010 Annual Report). The CEO and sole director in 2008, Helmut Zehnder, was also Executive Vice President and COO of Leoni Bortnetz-Systeme in 2011. *See* Burns Aff., Ex. A at 319-20 (CFR Institute profile of Leoni)[14].

---

[10] Available at http://www.leoni.com/Reports-by-division.1258.0.html

[11] Available at http://www.leoni.com/News-Details.176.0.html?&L=1&tx_ttnews%5Btt_news%5D=1966&tx_ttnews%5BbackPid%5D=115&cHash=9aacf3abab9c992b97244da6b1b1d404

[12] Available at http://www.sgs-cqe.de/images/stories/Web%20Images/news/Euroforum-Agenda_2011.pdf

[13] Available at http://summits.econique.com/584.html?&L=0#c6504

[14]Available at http://www.toparbeitgeber.com/Portals/23/TAD2011/TAD11%20PDF/LEONI_TAD_2011.pdf. The profile continues in German with a more information about Mr. Zehnder, noting he joined the company 35 years ago as tool maker and worked his way up the ranks.

Several core corporate functions of Leoni's wire harness producing locations worldwide are centralized in Germany, in addition to the "administrative services" such as information technology mentioned in Mr. Steiner's affidavit. Leoni Br. Ex. C. *Cf. Alexander Assocs.*, 2012 WL 1033464 at *18 (citing parent's provision of "gratuitous services to the subsidiary"). The Leoni Group Wiring Systems Division website states that "[o]ur global R&D activity is directed from a central competence centre based in Kitzingen, Germany. This facility oversees a global network of R&D centres which provide an integrated full service supply capability to global and regional customers."[15] In addition, Leoni has centralized some or all of its materials purchasing. *See* Burns Aff., Ex. K[16] (describing logistics functions, including "Procurement of materials from suppliers for issue to our global manufacturing sites, on time and in full"). Leoni has instituted centralized logistics requirements for suppliers to its various plants. *See* Burns Aff., Ex. J, Leoni Logistics Terms for Suppliers of LEONI Bordnetz-Systeme GmbH, at 2 (stating terms apply to suppliers "to LEONI Bordnetz-Systeme GmbH and the affiliated companies of LEONI Bordnetz-Systeme GmbH that are organized in the Wiring Systems Division of LEONI AG (hereinafter referred to as "LEONI Wiring Systems") & 14 (listing several "consolidation centers" and contracted shippers worldwide, including for deliveries to the Hermosillo and Durango, Mexico manufacturing plants operated by LWS).[17] Notably, one of LWS's Mexican plants was selected to produce the wire harnesses for the BMW X5 being built in the US. *See* Burns Aff., Ex. D,[18] "Analyst Meeting 2007" at 8 (under "Major Projects", listing BMW X5 and "Expansion of the Mexican production facility."). Further, it appears neither LWS nor Leonische Holdings has a website; their only effort to reach potential customers online is via their listing on

---

[15] Available at http://www.leoni-wiring-systems.com/EDS-development-optimisation.12102.0.html?&L=1

[16] Available at http://www.leoni-wiring-systems.com/Material-procurement-inventory-management.12072.0.html?&L=1

[17] *See* Burns Aff., Ex. E, Dun & Bradstreet Comprehensive Report for Leoni Wiring Systems, Inc., at 8 (listing Hermosillo and Durango plants as LWS subsidiaries).

[18] Available at http://www.leoni.com/fileadmin/leoni.com/downloads/pdf/reden_praesentationen/en_07ak_p.pdf

the main Leoni Group or Leoni Wiring Systems Division websites as one of Leoni's many North American "locations". *See* Burns Aff., Ex. L (Leoni Wiring Systems website)[19]; Ex. M (Leoni Group website)[20].

In sum, there is considerable evidence that the Leoni Group, despite its separation on paper into a myriad of subsidiaries and holding companies, functions as a single economic unit, such that LWS has at all times been a mere alter ego of Leoni AG.

### 2.    The Court Has Specific Jurisdiction over Defendant Leoni AG Based on Its Contacts with the United States.

If Defendant Leoni AG was the entity that sold wire harnesses into the United States at illegally fixed prices – a fact that would require jurisdictional discovery to confirm – then this activity is more than sufficient to establish personal jurisdiction over Leoni AG. To establish personal jurisdiction over a defendant that is not present in the forum state, courts apply the following test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also Theunissen*, 935 F.2d at 1460. Leoni's contacts with the United States meet all three elements.

### a.    Leoni AG Purposefully Availed Itself of the Privilege of Doing Business in the United States.

The key to a finding of "purposeful availment" is that the defendant performed a volitional act directed toward the forum. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). Leoni AG's contacts with the United States satisfy two alternative tests for assessing purposeful availment: the "stream of commerce" test and the *Calder* effects test.

---

[19] http://www.leoni-wiring-systems.com/index.php?id=15087&L=1
[20] http://www.leoni.com/USA.138.0.html?&L=1

### i. Leoni AG Likely Placed Products Into the Stream of Commerce With the Intent That They Would Reach the United States.

The stream of commerce test allows a court to exercise personal jurisdiction over a defendant that directs its products into a forum. *Asahi*, 480 U.S. at 112. The Sixth Circuit applies Justice O'Connor's "stream of commerce 'plus' approach" described in *Asahi*, *Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 479-80 (6th Cir. 2003), which requires that the defendant must not merely place its product into the stream of commerce, but must demonstrate "an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112. This test is readily met where a defendant has "made a deliberate decision to market [the product] in … the forum state." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 675 (E.D. Mich. 2000) (quoting *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 543-44 (6th Cir. 1993)). Other conduct probative of such intent includes "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112. Publicly available information shows the Leoni Group marketed, designed, and sold wire harnesses with the specific intent that they be sold in the U.S. *E.g.* Burns Aff., Ex. C (mentioning wire harness contract for the BMW X5). If Leoni AG was the entity responsible for those contracts, then it is clearly subject to jurisdiction under a stream of commerce analysis.

### ii. Leoni AG's Price-Fixing Was Aimed at and Generated Pernicious Effects in the United States.

"Under the effects test, first articulated in *Calder v. Jones,* 465 U.S. 783 [ ] (1984), personal jurisdiction exists where an individual purposefully directs activities towards the forum state with the intent to cause harm there." *Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 113 (6th Cir. 2005); *see also id.* at 113 n. 1 ("[W]e have applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the

18

defendant out of which the suit arises."). The heart of Plaintiffs' claims is that Leoni fixed prices on products it sold in the U.S. and thereby caused Plaintiffs to pay an inflated price for automobiles. End-Payor Compl. ¶¶ 151-53, 198-202; AD Compl. ¶¶ 152-55, 228-33. *Cf. Carrier*, 673 F.3d at 451 (finding jurisdiction under effects test where "the conspiracy in which OCP and OTO allegedly participated had an explicit geographical focus"). These allegations are more than sufficient to meet the effects test.

> **b. Jurisdiction Over Leoni AG for its Price-Fixing of Wire Harnesses "Arises From" Leoni's Sales of Those Wire Harnesses Into the US.**

The "arising from" element is a "lenient standard", which "does not require that the cause of action formally arise from defendant's contacts with the forum," but merely requires that the plaintiff's cause of action be "at least marginally related" to the defendant's contacts with the forum. *Bird*, 289 F.3d at 875 (quoted in *Alexander Assocs.*, 2012 WL 1033464 at *20) (further citation omitted). Here there can be no question that Plaintiffs' claims and Leoni AG's contacts with the U.S. are related: Plaintiffs' claims are based on their purchases of Leoni's wire harnesses in the United States. End-Payor Compl. ¶¶ 16, 97-100; AD Compl. ¶¶ 19, 102-107; *cf. Alexander Assocs.*, 2012 WL 1033464 at *20 (finding plaintiff's breach of contract claim for unpaid sales commissions was sufficiently related to foreign defendant's contacts with forum to solicit business).

> **c. It is Eminently Reasonable for Leoni to Defend Itself in the US Against US Customers Injured by its Actions.**

Plaintiffs' burden of proving the reasonableness element of the specific jurisdiction analysis is low. "If the first two elements are met, an 'inference of reasonableness arises ... [and] only the unusual case will not meet this third criterion.'" *Alexander Assocs.*, 2012 WL 1033464 at *21 (quoting *Theunissen*, 935 F.2d at 1461)*; see also Burger King Corp. v Rudzewicz*, 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). Leoni AG's vague

complaint about the "burden" of sending witnesses and documents to the United States, Leoni Br. at 9, falls far short of an unusual hardship. *See Donnelly Corp. v. Reitter & Schefenacker GmbH*, 189 F. Supp. 2d 696, 711 (W.D. Mich. 2002) ("While the Court is not unsympathetic to the burden that distance creates, such distances are part of the reality of modern business and are not enough alone to make a particular forum unfair and unreasonable to settle a dispute."). Indeed, Leoni AG admits its executives travel to the U.S. for business meetings and trade shows. *See* Leoni Br. Ex. B, Declaration of Robert F. Steiner, ¶¶ 5, 12. *Cf. Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001) (finding no undue hardship in suit against individual defendant where "defendant appears to be well traveled throughout the world"). The mere fact of distance is not enough to outweigh the compelling interest that Plaintiffs and the United States have in pursuing restitution for Leoni's illegal conduct. *See Alexander Assocs.*, 2012 WL 1033464 at *21.

### 3. Jurisdictional Discovery

Plaintiffs believe the materials cited herein are more than sufficient to establish this Court's jurisdiction over Leoni AG. However, where circumstances dictate, plaintiffs are entitled to discovery of jurisdictional issues. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) If the Court holds that the existing record is too sparse to support jurisdiction over Leoni AG, Plaintiffs respectfully move the Court to allow jurisdictional discovery.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny the Leoni Defendants' motion to dismiss.

Dated: September 11, 2012                    **COTCHETT, PITRE & McCARTHY, LLP**

By __/s/ Frank C. Damrell_____

Joseph W. Cotchett
Frank C. Damrell

Steven N. Williams
Adam J. Zapala
Gene W. Kim
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
gkim@cpmlegal.com


September 11, 2012                    **LABATON SUCHAROW LLP**

By   */s/ Hollis Salzman* _____

Hollis Salzman
Bernard Persky
William V. Reiss
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 883-7058
hsalzman@labaton.com
bpersky@labaton.com
wreiss@labaton.com


September 11, 2012                    **SUSMAN GODFREY L.L.P.**

By   */s/ Marc M. Seltzer* _____

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com


21

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

September 11, 2012                              **THE MILLER LAW FIRM, P.C.**

By   */s/ E. Powell Miller*

E. Powell Miller (P39487)
Adam T. Schnatz (72049)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com

*Attorneys End-Payor Plaintiffs*

September 11, 2012                              **MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.**

By    */s/ Gerard V. Mantese*
Gerard V. Mantese (Michigan Bar No.
P34424)
David Hansma (Michigan Bar No. P71056)
Brendan Frey (Michigan Bar No. P70893)
Joshua Lushnat (Michigan Bar No. P75319)
**MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Phone: (248) 457-9200 ext. 203

22

Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

September 11, 2012                    **BARRETT LAW GROUP, P.A.**


By ____/s/ *Don Barrett*_____

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com


September 11, 2012                    **CUNEO GILBERT & LADUCA, LLP**


By ____/s/ *Jonathan W. Cuneo*_____

Jonathan W. Cuneo
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Phone: (202) 789-3960
Fax: (202) 789-1813
jonc@cuneolaw.com
Vicky@cuneolaw.com

Joel Davidow
Daniel Cohen
**CUNEO GILBERT & LADUCA, LLP**
Bethesda, Maryland
8120 Woodmont Ave
Suite 810
Bethesda, MD 20814
Phone: (202) 789-3960
joel@cuneolaw.com

Michael J. Flannery
**CUNEO GILBERT & LADUCA, LLP**
300 North Tucker Boulevard
Suite 801
St. Louis, MO 63101
Phone: (202) 789-3960
Fax: (202) 789-1813
mflannery@cuneolaw.com

September 11, 2012                    **LARSON • KING, LLP**

By ____/s/ *Shawn M. Raiter*_____

Shawn M. Raiter
Paul A. Sand
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

*Attorney for Auto Dealer Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS<br>ANTITRUST LITIGATION** | 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re: WIRE HARNESS CASES** | |
| **THIS RELATES TO:** | |
| **ALL DEALERSHIP ACTIONS AND<br>ALL END-PAYOR ACTIONS** | W:12-cv-00102-MOB-MKM<br>W:12-cv-00103-MOB-MKM |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 11, 2012 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all filing users indicated on the Electronic Notice List through the Court's electronic filing system. I also certify that I will serve copies via First Class U.S. Mail upon all other parties indicated on the Manual Notice List.

Respectfully submitted,

*/s/ Warren T. Burns*

Warren T. Burns
Susman Godfrey, LLP
901 Main Street, Suite 5100
Dallas, Texas 75202

25