EXHIBIT 1

Slip Copy, 2012 WL 3841397 (E.D.Wis.)
**(Cite as: 2012 WL 3841397 (E.D.Wis.))**

H
Only the Westlaw citation is currently available.

United States District Court,
E.D. Wisconsin.
FOND DU LAC BUMPER EXCHANGE, INC., and Roberts Wholesale Body Parts, on behalf of themselves and others similarly situated, Plaintiffs,
v.
JUI LI ENTERPRISE COMPANY, LTD., et al., Defendants.
Arkansas Transit Homes, Inc., Olivia Lee, Patrick Torrey, and Mary Louise Fowler, on behalf of themselves and others similarly situated, Plaintiffs,
v.
Jui Li Enterprise Company, Ltd., et al., Defendants.

Nos. 09–CV–00852, 11–CV–00162.
Sept. 5, 2012.

Benjamin D. Brown, Cohen Milstein Hausfeld & Toll, Washington, DC, Bonny E. Sweeney, Robbins Geller Rudman & Dowd LLP, Christopher M. Burke, Scott & Scott LLP, San Diego, CA Joseph R. Saveri, Eric B. Fastiff, Dean M. Harvey, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, CA, Douglas A. Millen, Freed Kanner London & Millen LLC, Bannockburn, IL, Jason M. Lindner, Jason S. Hartley, Eric L. Dirks, Patrick J. Stueve, Stueve Siegel Hanson LLP, Kansas City, MO, Vincent J. Esades, Jessica N. Servais, Heins Mills & Olson PLC, Minneapolis, MN, Jon T. King, The Furth Firm LLP, San Francisco, CA, Susan G. Kupfer, Joseph M. Barton, Glancy Binkow & Goldberg LLP, San Francisco, CA, K. Scott Wagner, Hale & Wagner SC, Milwaukee, WI, Robert G. Eisler, Grant & Eisenhofer Pa Wilmington, DE, for Plaintiff.

Gretchen L. Jankowski, Buchanan Ingersoll & Rooney PC, Pittsburgh, PA, Howard B. Iwrey, Dykema Gossett PLLC, Bloomfield Hills, MI, Joanna Rosen, Manatt Phelps & Phillips LLP, Los Angeles, CA, Lynn J. Alstadt, Buchanan Ingersoll & Rooney PC, Pittsburgh, PA, Wendelynne J. Newton, Buchanan Ingersoll & Rooney PC, Pittsburgh, PA, for Defendant.

*DECISION AND ORDER*
LYNN ADELMAN, District Judge.
*1 Plaintiffs Arkansas Transit Homes, Inc. ("Arkansas Transit"), Olivia Lee, Patrick Torrey and Mary Fowler, American purchasers of aftermarket sheet metal auto parts ("AM parts"), bring putative class actions alleging that defendants, Taiwanese manufacturers of AM parts and their American subsidiaries, violated Section 1 of the Sherman Anti-trust Act and several state laws by entering into price-fixing and other anti-competitive agreements. Defendants now move to dismiss plaintiffs' second amended complaint.

**I. BACKGROUND**
AM parts are replacement parts for the body of a car that are not made by a car's original manufacturer. Because companies specialize in making AM parts and because they are not certified by a car's manufacturer, they are usually the cheapest parts available. Defendants Taiwan Kai Yih Industrial Co., Ltd. ("TKY Industrial"), Gordon Auto Body Parts ("Gordon"), Auto Parts Industrial, Ltd. ("API"), and Jui Li Enterprise Company, Ltd. ("Jui Li") are Taiwanese manufacturers of AM parts, defendant TYG Products, L.P. ("TYG Products") is an American distributor of such parts, both TKY Industrial and TYG Products are subsidiaries of the Tong Yang Group ("TYG"), a Taiwanese conglomerate, and defendant Cornerstone Auto Parts, LLC ("Cornerstone") is an American subsidiary of API and a distributor of AM parts.

Plaintiffs are indirect purchasers of AM parts. Defendants sell these parts to United States distributors and body shops, which then sell them to plaintiffs for end use on their own vehicles. Direct purchasers of AM parts have brought a separate suit against defendants.

Plaintiffs allege that together defendants control over 95% of the U.S. AM parts market, and that, sometime in 2003, they ceased competing with one another. According to the complaint, defendants met secretly to agree on floor prices for certain AM parts, beneath which no defendant would sell, and to establish penalties for defendants who did not comply with the agreed-on terms. For example, defendants purportedly met in March 2004 and again in March 2008

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 3841397 (E.D.Wis.)
(Cite as: 2012 WL 3841397 (E.D.Wis.))

to agree on price increases that they would implement simultaneously. Plaintiffs also allege that defendants TKY Industrial, Jui Li, Gordon and API set up "strategic alliances" through which they divided up the market for certain AM parts, and began sharing marketing costs and the cost of developing the tools required to make AM parts. As a result, plaintiffs allege that defendants were able to charge artificially inflated prices and that direct purchasers passed the higher costs on to plaintiffs and other consumers. Plaintiffs allege that defendants were able to increase the price for AM parts by as much as 100%.

As additional support for their claim, plaintiffs cite public statements from several of defendants' executives. For example, they cite a 2003 article from the Taiwan Economic News in which TYG President Raymond Wu explained how the concentration of AM parts manufacturers in Southern Taiwan allowed defendants to engage in coordinated pricing:

> *2 Now the world's strongest AM auto-parts production citadel, according to [Raymond] Wu, Taiwan comes close to monopolizing the global AM-parts market.... In the past, Wu explains, most AM-parts makers competed with one another by cutting prices no matter how strong the global demand was, to "steal" market share from each other, but now the situation has changed, makers have abandoned this approach, and the profit margins of major local AM-parts makers parallel or even outstrip those of high-tech product makers on the island.... [TKY Industrial] closely cooperates with local counterparts to escape the blood-shedding price competition, thus achieving very high profitability, Wu explains.

(Second Am. Compl.¶ 33, ECF No. 218.) Plaintiffs further cite a 2004 article in the Taiwan Economic News in which a representative of TYG acknowledged that in North America TYG "does not compete with its major rivals—all from Taiwan, but has been trying to form a strategic alliance to jointly develop the world's largest single market." (*Id.* at ¶ 34.) Plaintiffs also cite a statement by Gordon's vice president attributing Gordon's considerable revenues in 2004 and 2005 to defendants' agreement which "effectively ended the price-cutting competition." (*Id.* at ¶ 37.)

Finally, plaintiffs allege that the nature of the AM parts market is highly conducive to the kind of cooperative anti-competitive behavior in which they allege defendants engaged. Plaintiffs allege that AM parts production is highly concentrated in the southern part of Taiwan, that barriers to entry are very high, that AM parts are fungible and that there are few substitutes for such parts.

## II. DISCUSSION

Defendants move to dismiss plaintiffs' complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion, the complaint must state a plausible claim for relief that permits "the reasonable inference that defendant is liable for the injury alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In assessing defendants' motion, I take all of plaintiffs' allegations as true and draw all reasonable inferences in plaintiffs' favor. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir.2008).

### A. Sherman Act Claim

Plaintiffs first claim that defendants violated § 1 of the Sherman Act, 15 U.S.C. § 1, by entering into a conspiracy to restrain trade or commerce, and they seek injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26. To state a claim under § 1 of the Sherman Act, plaintiffs must allege sufficient facts to suggest that defendants entered into an unlawful agreement, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and that plaintiffs have "antitrust standing." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters ("AGC"),* 459 U.S. 519, 535, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). To determine whether a plaintiff has antitrust standing, a court must consider whether the plaintiff is a proper party to bring a private antitrust lawsuit. *Id.* Plaintiffs have antitrust standing to seek injunctive relief if they are threatened with an "antitrust injury," loss or damage of the type the antitrust laws were designed to prevent. *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 111 n. 6, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986).

*3 Plaintiffs allege enough facts to plausibly suggest that defendants entered into an unlawful agreement. *See Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.,* 753 F.Supp.2d 792 (E.D.Wis.2010). Plaintiffs allege that all of the defendants participated in secret price-fixing meetings, that TKY Industrial, Gordon, API, and Jui Li were parties to strategic alliances that allowed defendants to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

share resources and divide up the market, and that TYG Products and Cornerstone distributed AM parts in the U.S. at unlawfully established prices. Plaintiffs also offer direct evidence of the conspiracy in the form of public statements made by defendants' executive officers.

Plaintiffs also allege sufficient facts to suggest that defendants' actions threaten them with an antitrust injury. To establish antitrust injury, plaintiffs must prove they are being injured because they are participants in the market where defendants are restraining competition or that their injuries are "inextricably intertwined" with the injuries of market participants. *AGC,* 459 U.S. at 538–39 (citing *Blue Shield of Va. v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982)). Here, plaintiffs allege that they are participants in the relevant market, the U.S. AM parts market, because they are end users of AM parts, and that they are being injured because the higher prices defendants charge for AM parts are being passed on to end users by direct purchasers and others in the chain of distribution. These allegations are sufficient to establish that plaintiffs are threatened with an antitrust injury.

Defendants argue that plaintiffs' allegation that direct purchasers are passing price increases on to end users is too speculative to survive a motion to dismiss. I disagree. Since AM parts travel down the chain of distribution substantially unchanged, the price charged by the manufacturer will largely determine the price paid by the end user. If, as plaintiffs allege, defendants control over 95% of the U.S. AM parts market, it is easy for a direct purchaser to pass a price increase on to its customers because the majority of distributors are paying the same inflated price for AM parts. No one has to worry about being undercut by a lower-cost competitor. Therefore, plaintiffs' claim that they are being injured as a result of defendants' alleged conspiracy is plausible.

Finally, I reject defendants' argument that plaintiffs' claim should be dismissed based on the four-year statute of limitations contained in 15 U.S.C. § 15b. Section 15b only expressly applies to damages claims, but it creates a rebuttable presumption that a plaintiff's claim for injunctive relief is subject to a defense of laches if brought more than four years after the alleged violation. *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.,* 518 F.2d 913, 928–29 (9th Cir.1975), overruled on other grounds by *Cal. v. Am. Stores Co.,* 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990). Here, plaintiffs allege that defendants' price-fixing conspiracy was ongoing at the time the complaint was filed. Thus, it is not clear from the face of the complaint that plaintiffs' federal claim is untimely.

**B. State Law Claims**
*4 Plaintiffs 15 remaining claims seek damages under various state laws. Plaintiffs bring these claims because, as indirect purchasers, they are prohibited from seeking damages under federal antitrust laws. *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); see also *Cal. v. ARC Am. Corp.,* 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989) (holding that rule prohibiting damages claims by indirect purchasers under federal law does not preempt similar state law claims). Defendants raise several specific objections to plaintiffs' state law claims.

Defendants first contend that plaintiffs' state law claims fail because plaintiffs do not expressly allege that they purchased AM parts in the states under whose laws they seek damages.[FN1] However, as indicated, I must draw all reasonable inferences in plaintiffs' favor, and based on plaintiffs' complaint, it is reasonable to infer such purchases. Each plaintiff is alleged to have purchased AM parts "from one or more of the defendants or their controlled subsidiaries," and each plaintiff represents at least one class of consumers from a particular state. Plaintiff Arkansas Transit, which "conducts business throughout the 48 contiguous states," is alleged to have purchased AM parts "in many states," and is bringing class action claims on behalf of, "All people and entities that ... indirectly paid for all or part of the purchase price of AM Sheet Metal Parts for end use in [Arkansas, Florida, Minnesota, New Mexico and Tennessee]...." (Second Am. Compl. ¶¶ 10, 96.) The remaining class action claims, under California, Massachusetts and Vermont law, are brought by plaintiffs Lee, Fowler and Torrey, each of whom is alleged to be a resident of the state under whose law he or she is suing. Based on these allegations, it is reasonable to infer that the named plaintiffs purchased AM parts in the eight relevant states.

> FN1. Defendants improperly frame this argument as a challenge to plaintiffs' standing under Article III of the Constitution. How-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ever, plaintiffs do not need to allege that they purchased AM parts in a particular state to establish Article III standing. All they need to allege is that they were injured by defendants' conspiracy and that the injury can be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiffs have clearly alleged Article III standing in this case.

Next, defendants' challenge plaintiffs' statutory claims in California, Massachusetts and Minnesota arguing that plaintiffs fail to allege that defendants' conspiracy caused plaintiffs' injury. *See, e. g., Vinci v. Waste Mgmt., Inc.,* 36 Cal.App.4th 1811, 1814, 43 Cal.Rptr.2d 337 (Cal.App. 1 Dist.1995) (noting California antitrust statute requires "a direct causal connection between the asserted injury and the alleged restraint of trade"). As noted in my discussion of plaintiffs' federal claim, the complaint contains sufficient allegations to plausibly suggest that plaintiffs paid higher prices for AM parts as a direct result of defendants' conspiracy. Therefore, I reject defendants' arguments on this point.

Next, defendants argue that plaintiffs' claims under the antitrust and consumer protection laws of Arkansas, California, New Mexico, Massachusetts and Vermont fail because plaintiffs lack antitrust standing to sue for damages as required by federal law. Defendants contend that each of these states would employ the federal standard for determining antitrust standing because they interpret their laws in harmony with federal antitrust laws. Since this appears to be correct in at least a couple of these states, I will apply the federal standard. To determine whether a plaintiff has antitrust standing to seek damages under federal law, a court weighs six factors (the "*AGC* factors"): "(1) the causal connection between the violation and the harm; (2) the presence of improper motive; (3) the type of injury and whether it was one Congress sought to redress; (4) the directness of the injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex damage apportionment." *Loeb Indus., Inc. v. Sumitomo Corp.,* 306 F.3d 469, 484 (7th Cir.2002) (listing factors from *AGC,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)).

*5 For the reasons stated in my discussion of plaintiffs' federal claim, I conclude that the first five *AGC* factors weigh in plaintiffs' favor. Plaintiffs allege that they are participants in the market being restrained and that they are paying higher prices for AM parts as a direct result of defendants' conspiracy. Therefore, they allege an antitrust injury and a plausible claim for damages. The sixth factor also weighs in plaintiffs' favor because the states involved have rejected the Supreme Court's reasoning in *Illinois Brick* barring damage suits by indirect purchasers because they create a risk of duplicative recovery by both direct and indirect purchasers and make the apportionment of damages too complex. 431 U.S. at 730–32 (noting defendants cannot use pass-on as a defense against a federal claim by a direct purchaser); *see also Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979, 987 (9th Cir.2000); (finding "California law affords standing more liberally than does federal law"); *Fucile v. VISA U .S.A., Inc.,* No. S1560–03, 2004 WL 3030037, at *3 (Vt.Super.Ct. Dec. 27, 2004) (applying the AGC factors only "to the extent that these factors are consistent with allowing 'indirect purchasers' standing"). Therefore, plaintiffs allegations are sufficient to establish antitrust standing to sue for damages.

Next, defendants seek dismissal of plaintiffs' unjust enrichment claims under Arkansas, Florida, Massachusetts, Minnesota, New Mexico and Vermont law. First, defendants claim that plaintiffs' unjust enrichment claims in Florida, Massachusetts, Minnesota and New Mexico fail on the ground that statutes in each state provide plaintiffs with an adequate legal remedy. Defendants argue that unjust enrichment is an equitable claim and that plaintiffs cannot seek equitable relief in these states if they have a legal remedy. *See, e.g., Williams v. Bear Stearns & Co.,* 725 So.2d 397, 400 (Fla.Dist.Ct.App.1998) (noting "the general rule is that if the complaint on its face shows that adequate legal remedies exist, equitable remedies are unavailable"). Fed.R.Civ.P. 8(d), however, allows a party to plead inconsistent claims in the alternative. Therefore, while plaintiffs' statutory claims may later preclude them from recovering for unjust enrichment, it would be inappropriate to dismiss plaintiffs' equitable claims at this stage.

Second, defendants seek dismissal of plaintiffs' unjust enrichment claims in Florida, Massachusetts and Minnesota on the ground that, inasmuch as the parties had no direct contact, plaintiffs fail to allege

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 3841397 (E.D.Wis.)
(Cite as: 2012 WL 3841397 (E.D.Wis.))

that they conferred a benefit on defendants. *See Extraordinary Title Servs., LLC v. Fla. Power & Light Co.,* 1 So.3d 400, 404 (Fla.Dist.Ct.App.2009) (holding that one element of unjust enrichment is that "plaintiff has conferred a benefit on the defendant"); *Johnson v. Johnson,* 946 N.E.2d 157 (Mass.App.Ct.2011) (same); *Schumacher v. Schumacher,* 627 N.W.2d 725, 729 (Minn.App.2001) (same). However, plaintiffs' complaint sufficiently alleges the conferral of a benefit. Plaintiffs allege that, as the consumers of AM parts, they drive demand for such parts and that defendants profit from the sale of AM parts as a direct result of their purchases. *See Romano v. Motorola, Inc.,* No. 07–CIV–60517, 2007 WL 4199781, at *2 (S.D.Fla.2007) (allowing consumers who purchased Motorola cellphones from a retail outlet to sue Motorola for unjust enrichment because "Motorola is directly benefitted through profits earned from the sale of the phone").

*6 Third, defendants argue that plaintiffs are not entitled to seek disgorgement of defendants' profits through their claims for unjust enrichment in Arkansas, Minnesota, New Mexico and Vermont because the antitrust and unfair competition statutes in each of these states limit plaintiffs to compensatory damages. In these states, unjust enrichment is a freestanding common law claim independent of any statutory cause of action. *See DePriest v. AstraZeneca Pharmaceuticals, L.P.,* 2009 Ark. 547, 351 S.W.3d 168 (2009) (treating claim for unjust enrichment as a stand-alone claim); *Dahl v. R.J. Reynolds Tobacco, Co.,* 742 N.W.2d 186, 195–96 (Minn.App.2007) (same); *Heimann v. Kinder–Morgan CO2 Co., L.P.,* 140 N.M. 552, 144 P.3d 111, 117–18 (N.M.Ct.App.2006) (same); *Winey v. William E. Dailey, Inc.,* 161 Vt. 129, 636 A.2d 744, 751 (Vt.1993) (same). Thus, any limitations on damages for plaintiffs' statutory claims are inapplicable to plaintiffs'unjust enrichment claims. The goal of unjust enrichment is to allow a plaintiff to recover profits that a defendant unjustly earned at plaintiff's expense, even if such profits exceed plaintiff's actual damages.

Finally, defendants seek dismissal of plaintiffs' Florida unjust enrichment claim on the ground that Florida law prohibits an indirect purchaser plaintiff from suing a manufacturer unless the plaintiff first seeks to recover damages from the person who sold plaintiff the relevant product. Defendants rely on *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.,* 695 So.2d 383 (Fla.Dist.Ct.App.1997). Assuming defendants' interpretation of *Commerce Partnership* is correct, which is doubtful, plaintiffs satisfy this requirement by alleging that a suit against the retailers of AM parts would be futile. Plaintiffs allege that everyone in the chain of distribution was forced to pay inflated prices for AM parts as a result of defendants' conspiracy. Thus, the parties who directly sold AM parts to plaintiffs were not unjustly enriched by the transaction, and it would be pointless for plaintffs to sue them.

Next, defendants seek dismissal of plaintiffs' claim under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark.Code § 4–88–107. Defendants argue that the ADTPA does not authorize claims by indirect purchasers. To state a claim under the ADTPA, plaintiffs must allege facts showing that defendants engaged in an "unconscionable, false, or deceptive act or practice in business, commerce or trade." Ark.Code § 4–88–107(a)(10). An "unconscionable" act or practice is one "that affronts the sense of justice, decency, and reasonableness." *Baptist Health v. Murphy,* 365 Ark. 115, 226 S.W.3d 800 (Ark.2006). No Arkansas case addresses whether price-fixing constitutes an unconscionable act under the ADTPA, but the Arkansas Supreme Court has noted that the ADTPA should be given a "liberal construction" in order "to protect the interests of both the consumer public and the legitimate business community." *State ex rel. Bryant v. R & A Inv. Co., Inc.,* 336 Ark. 289, 985 S.W.2d 299, 302 (Ark.1999). Thus, I conclude that plaintiffs sufficiently allege an ADTPA claim. *See In re Chocolate Confectionary Antitrust Litig.,* 602 F.Supp.2d 538, 583 (M.D.Pa.2009) (reaching same result); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 516 F.Supp.2d 1072, 1108–09 (N.D.Cal.2007) (same); *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 350 F.Supp.2d 160, 178–79 (D.Me.2004) (same).

*7 Since I conclude that plaintiffs may bring a claim for price fixing under the ADTPA, I also reject defendants' argument that plaintiffs' claim for unjust enrichment under Arkansas law is an impermissible end run around the state's prohibition on damages claims by indirect purchasers. No Arkansas statute or case law prohibits claims by indirect purchasers.

Next, defendants seek dismissal of plaintiffs'

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 3841397 (E.D.Wis.)
(Cite as: 2012 WL 3841397 (E.D.Wis.))

claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204. Defendants argue that plaintiffs fail to satisfy the heightened pleading requirements for allegations of fraud under Fed.R.Civ.P. 9(b). However, Rule 9(b) does not apply to this claim because plaintiffs do not need to prove fraud to prevail under the FDUTPA. The statute allows challenges to practices that are "unfair or deceptive," and a deceptive practice is one that is likely to mislead a reasonable consumer. Fla. Stat. § 501.204(1); State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc., 869 So.2d 592, 598 (Fla. 1 st D. Ct.App.2004). Plaintiffs do not need to prove they personally relied on defendants' deception. Id. Thus, detrimental reliance, one of the traditional elements of fraud, is not an element of a FDUTPA claim. See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (3d ed.2012) (listing traditional elements of fraud).

Next, defendants seek dismissal of plaintiffs' claim under the New Mexico Unfair Practices Act ("NMUPA"), N.M. Stat. § 57–12–1 et seq., claiming the statute bars claims for price-fixing. The NMUPA outlaws "unfair or deceptive" and "unconscionable trade practices." N.M. Stat. § 57–12–3. An "unconscionable trade practice" is "an act or practice ... that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. § 57–12–2(E). Thus, the statute authorizes a price-fixing claim as long as it alleges a "gross disparity" between the price paid for a product and the value received. See Chocolate Confectionary, 602 F.Supp.2d at 585–86 (allowing a claim for price-fixing under the NMUPA); New Motor Vehicles, 350 F.Supp.2d at 195–96 (same). Since plaintiffs allege that defendants increased the price of some AM parts by as much as 100% while simultaneously taking steps to cut costs, the complaint states a claim under the NMUPA.

Next, defendants argue that plaintiffs' claim under the Tennessee Trade Practices Act ("TTPA"), Tenn.Code § 47–25–101 et seq., should be dismiss because plaintiffs fail to allege that defendants' conspiracy had a "substantial effect" on commerce within the state. See Freeman Indus., LLC v. Eastman Chemical Co., 172 S.W.3d 512, 523 (Tenn.2005). Since plaintiffs allege defendants engaged in a con-spiracy to fix the price of AM parts sold in Tennessee and forced consumers in the state to pay unreasonably high prices, I conclude the complaint is sufficient to state a claim under the TTPA.

*8 Finally, I reject defendants' argument that plaintiffs have failed to state a claim under the Vermont Consumer Fraud Act, Vt. Stat. tit. 9, § 2453. "[A]n agreement to fix prices is unlawful per se" under § 2453. State v. Heritage Realty, 137 Vt. 425, 407 A.2d 509, 511 (Vt.1979). Therefore, plaintiffs' allegation that defendants engaged in a price-fixing conspiracy is sufficient.

### III. CONCLUSION
**THEREFORE, IT IS ORDERED** that defendants' joint motion to dismiss plaintiffs' second amended complaint for failure to state a claim [DOCKET # 247] is DENIED. Dated at Milwaukee, Wisconsin, this 5th day of September, 2012.

E.D.Wis.,2012.
Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co., Ltd.
Slip Copy, 2012 WL 3841397 (E.D.Wis.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.