```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3                             _   _   _

4    IN RE:  AUTOMOTIVE WIRE HARNESS
     SYSTEMS ANTITRUST
5
             MDL NO. 2311
6    _____/

7
                          STATUS CONFERENCE
8
           BEFORE THE HONORABLE MARIANNE O. BATTANI
9                 United States District Judge
           Theodore Levin United States Courthouse
10               231 West Lafayette Boulevard
                       Detroit, Michigan
11               Wednesday, March 13, 2013

12
     APPEARANCES:
13
     Direct Purchaser Plaintiffs:
14
                     THOMAS C. BRIGHT
15                   GOLD, BENNET, CERA & SIDENER, L.L.P.
                     595 Market Street, Suite 2300
16                   San Francisco, CA  94105
                     (415) 777-2230
17
                     WILLIAM G. CALDES
18                   SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
                     1818 Market Street, Suite 2500
19                   Philadelphia, PA  19103
                     (215) 496-0300
20
                     DAVID H. FINK
21                   FINK & ASSOCIATES LAW
                     100 West Long Lake Road, Suite 111
22                   Bloomfield Hills, MI  48304
                     (248) 971-2500
23

24
            To obtain a copy of this official transcript, contact:
25              Robert L. Smith, Official Court Reporter
                (313) 964-3303 • rob_smith@mied.uscourts.gov
```

```
 1    APPEARANCES: (Continued)

 2    Direct Purchaser Plaintiffs:

 3                    LEWIS H. GOLDFARB
                      McELROY, DEUTSCH, MULVANEY & CARPENTER,
 4                    L.L.P.
                      1200 Mount Kemble Avenue
 5                    Morristown, NJ  07962
                      (973) 993-8100
 6
                      GREGORY P. HANSEL
 7                    PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.
                      One City Center
 8                    Portland, ME  04112
                      (207) 791-3000
 9
                      WILLIAM E. HOESE
10                    KOHN, SWIFT & GRAF, P.C.
                      One South Broad Street, Suite 2100
11                    Philadelphia, PA  19107
                      (215) 238-1700
12
                      JONATHAN M. JAGHER
13                    SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
                      181 Market Street, Suite 2500
14                    Philadelphia, PA  19103
                      (215) 496-0300
15
                      STEVEN A. KANNER
16                    FREED, KANNER, LONDON & MILLEN, L.L.C.
                      2201 Waukegan Road, Suite 130
17                    Bannockburn, IL  60015
                      (224) 632-4502
18
                      JOSEPH C. KOHN
19                    KOHN, SWIFT & GRAF, P.C.
                      One South Broad Street, Suite 2100
20                    Philadelphia, PA  19107
                      (215) 238-1700
21
                      MICHAEL MOSKOVITZ
22                    FREED, KANNER, LONDON & MILLEN, L.L.C.
                      2201 Waukegan Road, Suite 130
23                    Bannockburn, IL  60015
                      (224) 632-4502
24

25
```

```
 1    APPEARANCES: (Continued)

 2    Direct Purchaser Plaintiffs:

 3                        KENNETH P. MUNN
                          BBK
 4                        400 Galleria Officentre, Suite 400
                          Southfield, MI  48034
 5                        (248) 603-6495

 6                        EUGENE A. SPECTOR
                          SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
 7                        1818 Market Street, Suite 2500
                          Philadelphia, PA  19103
 8                        (215) 496-0300

 9                        RANDALL B. WEILL
                          PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.
10                        One City Center
                          Portland, ME  04112
11                        (207) 791-3000


12
      End-Payor Plaintiffs:
13
                          THOMAS E. AHLERING
14                        HAGENS, BERMAN, SOBOL, SHAPIRO, L.L.P.
                          1144 West Lake Street, suite 400
15                        Oak Park, IL  60301
                          (708) 628-4961
16
                          WARREN T. BURNS
17                        SUSMAN GODFREY, L.L.P.
                          901 Main Street, Suite 5100
18                        Dallas, TX  75202
                          (214) 754-1928
19
                          LAUREN CRUMMEL
20                        THE MILLER LAW FIRM, P.C.
                          950 West University Drive, Suite 300
21                        Rochester, MI  48307
                          (248) 841-2200
22
                          FRANK C. DAMRELL
23                        COTCHETT, PITRE & McCARTHY, L.L.P.
                          840 Malcolm Road
24                        Burlingame, CA  94010
                          (650) 697-6000

25
```

```
1    APPEARANCES: (Continued)

2    End-Payor Plaintiffs:

3                    E. POWELL MILLER
                     THE MILLER LAW FIRM, P.C.
4                    950 West University Drive, Suite 300
                     Rochester, MI  48307
5                    (248) 841-2200

6                    BERNARD PERSKY
                     LABATON SUCHAROW
7                    140 Broadway Avenue
                     New York, NY  10005
8                    (212) 907-0700

9                    WILLIAM V. REISS
                     LABATON SUCHAROW
10                   140 Broadway Avenue
                     New York, NY  10005
11                   (212) 907-0858

12                   ADAM T. SCHNATZ
                     THE MILLER LAW FIRM, P.C.
13                   950 West University Drive, Suite 300
                     Rochester, MI  48307
14                   (248) 841-2200

15                   ELIZABETH T. TRAN
                     COTCHETT, PITRE & McCARTHY, L.L.P.
16                   840 Malcolm Road
                     Burlingame, CA  94010
17                   (650) 697-6000

18                   STEVEN N. WILLIAMS
                     COTCHETT, PITRE & McCARTHY, L.L.P.
19                   840 Malcolm Road
                     Burlingame, CA  94010
20                   (650) 697-6000

21                   ADAM J. ZAPALA
                     COTCHETT, PITRE & McCARTHY, L.L.P.
22                   840 Malcolm Road
                     Burlingame, CA  94010
23                   (650) 697-6000

24

25
```

```
 1   APPEARANCES: (Continued)

 2   Dealership Plaintiffs:

 3              LISA ASMUS
               OLIVER LAW GROUP
 4              950 West University Drive, Suite 200
               Rochester, MI  48307
 5              (248) 436-3385

 6              JONATHAN W. CUNEO
               CUNEO, GILBERT & LaDUCA, L.L.P.
 7              507 C Street NE
               Washington, D.C.  20002
 8              (202) 789-3960

 9              JOEL DAVIDOW
               CUNEO, GILBERT & LaDUCA, L.L.P.
10              507 C Street NE
               Washington, D.C.  20002
11              (202) 789-3960

12              BRENDAN FREY
               MANTESE, HONIGMAN, ROSSMAN & WILLIAMSON,
13              P.C.
               1361 East Big Beaver Road
14              Troy, MI  48083
               (248) 457-9200
15
               GERARD V. MANTESE
16              MANTESE, HONIGMAN, ROSSMAN & WILLIAMSON,
               P.C.
17              1361 East Big Beaver Road
               Troy, MI  48083
18              (248) 457-9200

19              SHAWN M. RAITER
               LARSON KING, L.L.P.
20              30 East Seventh Street, Suite 2800
               Saint Paul, MN  55101
21              (651) 312-6500

22              VICTORIA ROMANENKO
               CUNEO, GILBERT & LaDUCA, L.L.P.
23              507 C Street NE
               Washington, D.C.  20002
24              (202) 789-3960

25
```

```
 1    APPEARANCES: (Continued)

 2    For the Defendants:

 3                    CRAIG D. BACHMAN
                      LANE POWELL, P.C.
 4                    601 SW Second Avenue, Suite 2100
                      Portland, OR  97204
 5                    (503) 778-2100
                         on behalf of Furukawa Electric Company
 6
                      DONALD M. BARNES
 7                    PORTER, WRIGHT, MORRIS & ARTHUR, L.L.P.
                      1919 Pennsylvania Avenue, NW, Suite 500
 8                    Washington, D.C.  20006
                         on behalf of GS Electech, GSW & GSM
 9
                      RICHARD D. BISIO
10                    KEMP KLEIN LAW FIRM
                      201 West Big Beaver Road, Suite 600
11                    Troy, MI  48084
                      (248) 528-1111
12                       on behalf of Furukawa Electric Company

13                    PETER E. BOIVIN
                      HONIGMAN, MILLER, SCHWARTZ AND COHN, L.L.P.
14                    2290 First National Building
                      660 Woodward Avenue
15                    Detroit, MI  48226
                      (313) 465-7396
16                       on behalf of NSK

17                    MICHAEL L. BROWN
                      ALSTON & BIRD, L.L.P.
18                    1201 West Peachtree Street
                      Atlanta, GA  30309
19                    (404) 881-7000
                         on behalf of Autoliv
20
                      JAMES L. COOPER
21                    ARNOLD & PORTER, L.L.P.
                      555 Twelfth Street NW
22                    Washington, DC  20004
                      (202) 942-5000
23                       on behalf of Fujikura America, Inc.

24

25
```

```
 1   APPEARANCES: (Continued)

 2   For the Defendants:

 3               SAMUEL B. DAVIDOFF
                 WILLIAMS & CONNOLLY, L.L.P.
 4               725 Twelfth Street NW
                 Washington, DC  2005
 5               (202) 434-5648
                   on behalf of TK Holdings, Inc. and
 6                 Takata Corp.

 7               KENNETH R. DAVIS, II
                 LANE POWELL, P.C.
 8               601 SW Second Avenue, Suite 2100
                 Portland, OR  97204
 9               (503) 778-2100
                   on behalf of Furukawa Electric Company
10

11               DEBRA H. DERMODY
                 REED SMITH, L.L.P.
12               225 Fifth Avenue, Suite 1200
                 Pittsburgh, PA  15222
12               (412) 288-3302
13                 on behalf of AB SKF, SKF USA, INC.

14               GEORGE B. DONNINI
                 BUTZEL LONG, P.C.
15               150 West Jefferson Avenue
                 Detroit, MI  48226
16               (313) 225-7000
                   on behalf of Tokai Rika America (TRAM)
17

18               MOLLY M. DONOVAN
                 WINSTON & STRAWN, L.L.P.
19               200 Park Avenue
                 New York, NY  10166
19               (212) 294-4692
20                 on behalf of NTN & Nippon Seiki

21               DAVID F. DuMOUCHEL
                 BUTZEL LONG, P.C.
22               150 West Jefferson Avenue
                 Detroit, MI  48226
23               (313) 225-7000
                   on behalf of Tokai Rika America (TRAM)
24

25
```

```
 1    APPEARANCES: (Continued)

 2    For the Defendants:

 3                    JAMES P. FEENEY
                      DYKEMA GOSSETT, P.L.L.C.
 4                    39577 Woodward Avenue, Suite 300
                      Bloomfield Hills, MI  48304
 5                    (248) 203-0841
                         on behalf of TRW Holdings
 6
                      MICHELLE K. FISCHER
 7                    JONES DAY
                      51 Louisiana Avenue NW
 8                    Washington, D.C.  20001
                      (202) 879-4645
 9                       on behalf of Yazaki North America, Inc.

10                    STACY E. FRAZIER
                      WILMER, CUTLER, PICKERING, HALE and DORR,
11                    L.L.P.
                      1875 Pennsylvania Avenue, NW
12                    Washington, D.C.  20006
                      (202) 663-6076
13                       on behalf of Schaeffler AG

14                    LARRY S. GANGNES
                      LANE POWELL, P.C.
15                    1420 Fifth Avenue, Suite 4100
                      Seattle, Washington  98101
16                    (206) 223-7000
                         on behalf of Furukawa Electric Company
17
                      FRED K. HERRMANN
18                    KERR, RUSSELL & WEBER, P.L.C.
                      500 Woodward Avenue, Suite 2500
19                    Detroit, MI  48226
                      (313) 961-0200
20                       on behalf of NTN, Nippon Seiki, Autoliv

21                    JEFFREY G. HEUER
                      JAFFE, RAITT, HEUER & WEISS, P.C.
22                    27777 Franklin Road, Suite 2500
                      Southfield, MI  48034
23                    (248) 351-3000
                         on behalf of Kyungshin-Lear Sales and
24                       Engineering

25
```

```
 1   APPEARANCES: (Continued)

 2   For the Defendants:

 3                   HOWARD B. IWREY
                     DYKEMA GOSSETT, P.L.L.C.
 4                   39577 Woodward Avenue, Suite 300
                     Bloomfield Hills, MI  48304
 5                   (248) 203-0526
                        on behalf of Lear Corporation
 6
                     BENJAMIN W. JEFFERS
 7                   DYKEMA GOSSETT, P.L.L.C.
                     400 Renaissance Center
 8                   Detroit, MI  48243
                     (313) 568-5340
 9                      on behalf of TRW Holdings

10                   HEATHER LAMBERG KAFELE
                     SHEARMAN & STERLING, L.L.P.
11                   801 Pennsylvania Avenue, NW
                     Washington, D.C.  20004
12                   (202) 508-8097
                        on behalf of Jtekt Corp, Koyo Corp U.S.A.
13
                     KURT G. KASTORF
14                   WILMER, CUTLER, PICKERING, HALE and DORR,
                     L.L.P.
15                   1875 Pennsylvania Avenue, NW
                     Washington, D.C.  20006
16                   (202) 663-6868
                        on behalf of Denso International America
17
                     SHELDON H. KLEIN
18                   BUTZEL LONG, P.C.
                     41000 Woodward Avenue
19                   Bloomfield Hills, MI  48304
                     (248) 258-1414
20                      on behalf of Tokai Rika America (TRAM)

21                   JOHN M. MAJORAS
                     JONES DAY
22                   51 Louisiana Avenue NW
                     Washington, D.C.  20001
23                   (202) 879-3939
                        on behalf of Yazaki North America, Inc.
24

25
```

```
1   APPEARANCES: (Continued)

2   For the Defendants:

3                   ANDREW S. MAROVITZ
                    MAYER BROWN, L.L.P.
4                   71 South Wacker Drive
                    Chicago, IL  60606
5                   (312) 701-7116
                       on behalf of Lear Corporation
6
                    RONALD NIXON
7                   KEMP KLEIN LAW FIRM
                    201 West Big Beaver Road, Suite 600
8                   Troy, MI  48084
                    (248) 528-1111
9                      on behalf of Furukawa Electric Company

10                  WM. PARKER SANDERS
                    SMITH, GAMBRELL & RUSSELL, L.L.P.
11                  Promenade Two, Suite 3100
                    1230 Peachtree Street NE
12                  Atlanta, GA  30309
                    (404) 815-3684
13                     on behalf of Kyungshin-Lear Sales and
                       Engineering
14
                    WILLIAM A. SANKBEIL
15                  KERR, RUSSELL & WEBER, P.L.C.
                    500 Woodward Avenue, Suite 2500
16                  Detroit, MI  48226
                    (313) 961-0200
17                     on behalf of Fujikura America, Inc.

18                  JOHN E. SCHMIDTLEIN
                    WILLIAMS & CONNOLLY, L.L.P.
19                  725 Twelfth Street NW
                    Washington, DC  2005
20                  (202) 434-5901
                       on behalf of TK Holdings, Inc. And Takata
21                     Corp.

22                  ANITA STORK
                    COVINGTON & BURLING, L.L.P.
23                  One Front Street
                    San Francisco, CA  94111
24                  (415) 591-7050
                       on behalf of S-Y Systems Technologies,
25                     GmbH
```

```
1   APPEARANCES: (Continued)

2   For the Defendants:

3               MARGUERITE M. SULLIVAN
                LATHAM & WATKINS, L.L.P.
4               555 Eleventh Street NW, Suite 1000
                Washington, D.C.  20004
5               (202) 637-2200
                  on behalf of Sumitomo Electric Industries,
6                 Limited

7               JOANNE GEHA SWANSON
                KERR, RUSSELL & WEBER, P.L.C.
8               500 Woodward Avenue, Suite 2500
                Detroit, MI  48226
9               (313) 961-0200
                  on behalf of Fujikura America,
10                Incorporated & Autoliv

11              MICHAEL R. TURCO
                BROOKS, WILKINS, SHARKEY & TURCO, P.L.L.C.
12              401 South Old Woodward Avenue, Suite 400
                Birmingham, MI  48009
13              (248) 971-1713
                  on behalf of Leoni AG, Leoni Wiring
14                Systems, Leonishe Holding, Inc.

15              A. PAUL VICTOR
                WINSTON & STRAWN, L.L.P.
16              200 Park Avenue
                New York, NY  10166
17              (212) 294-4655
                  on behalf of NTN & Nippon Seiki
18
                STEPHANIE K. WOOD
19              WILMER, CUTLER, PICKERING, HALE and DORR,
                L.L.P.
20              1875 Pennsylvania Avenue, NW
                Washington, D.C.  20006
21              (202) 663-6099
                  on behalf of Denso International America
22

23

24

25
```

1   Detroit, Michigan

2   Wednesday, March 13, 2013

3   at about 10:17 a.m.

4                          —   —   —

5           (Court and Counsel present.)

6           THE CASE MANAGER:  All rise.

7           The United States District Court for the Eastern

8   District of Michigan is now in session, the Honorable

9   Marianne O. Battani presiding.

10          You may be seated.  The Court calls In Re:

11  Automotive Parts Antitrust Litigation.

12          THE COURT:  Good morning.  I'm looking at all of

13  you to see if this is thinning out any at all, but I don't

14  think so.  Okay.  We will follow the same procedures; if you

15  would please give your name before you speak so that we can

16  have an accurate record.

17          MR. WILLIAMS:  Thank you, Your Honor.  My name is

18  Steve Williams, I represent the end payors.  I know we have

19  an agenda, but there was one thing we wanted to bring to the

20  Court's attention at the outset, which is that the end payors

21  and auto dealers have entered into a settlement with one of

22  the defendants and intend very soon to present the papers, we

23  are finalizing those papers, but we wanted the Court to be

24  aware of that.

25          THE COURT:  Can you tell me the defendant?

1           MR. WILLIAMS:  They have asked at this point that

2   we not do so.

3           THE COURT:  All right.

4           MR. WILLIAMS:  Thank you.

5           THE COURT:  That's nice but it would be nice if it

6   was more global, should I say?  Okay.  All right.  Let's go

7   through the agenda.  The first thing is the wire harness.

8   Who is going to speak?  Mr. Fink.

9           MR. FINK:  David Fink, liaison counsel for the

10  direct purchaser plaintiffs in all of the cases.

11          With respect to wire harnesses, there's -- well,

12  there's really no issue on service right now for any of the

13  plaintiffs.  And with respect to depositions -- I don't mean

14  to skip number two, but with respect to depositions

15  Greg Hansel will be speaking to that.

16          THE COURT:  Okay.

17          MR. FINK:  So, Your Honor, I guess I will just

18  defer to Mr. Hansel right now on that.

19          THE COURT:  All right.  Mr. Hansel.

20          MR. HANSEL:  May it please the Court, good morning,

21  Your Honor.  I'm Greg Hansel, one of the interim lead counsel

22  for direct purchaser plaintiffs in all cases except for

23  bearings.

24          Item 3 under wire harness, which also appears under

25  instrument panel clusters and heater control panels as well

1    as anti-vibration rubber parts, one of the new cases.

2              THE COURT:  That's a new one.

3              MR. HANSEL:  I would like to give the Court just an

4    overview of what the issue is, and then I believe I can

5    report to the Court some very good progress that the parties

6    have made on that issue.

7              THE COURT:  Okay.

8              MR. HANSEL:  So as the Court is aware, Exhibit 1 to

9    the agenda is a table of individuals who have -- who are

10   serving time in U.S. prison as a result of sentences in the

11   related criminal cases.  The plaintiffs are concerned that if

12   those individuals if and when, you know, they are released

13   from U.S. prisons or possibly transferred under a statute

14   that may permit them to serve part of their sentence in a

15   prison in their home country of Japan, we are concerned that

16   they may go to Japan and they may be difficult to depose

17   under Japanese law.  So we have approached the corporate

18   defendants who employ those gentlemen and asked them to agree

19   to produce them in the United States for depositions at some

20   appropriate agreed time after they are released from prison.

21             As the Court is aware, all three groups of

22   plaintiffs have reached an agreement with Furukawa and the

23   four men who are employed by Furukawa on the list, and on

24   Friday the 8th of March the plaintiffs filed a document

25   entitled notice of submission of stipulation and agreement

1    and order with respect to depositions of Messrs. Funo,

2    Nagata, Ukai and Hayashida, and so that is a matter that is

3    under submission to the Court and it provides that they will

4    be produced for deposition in the United States at an agreed

5    time and place.

6              THE COURT:  What was the last one after --

7              MR. HANSEL:  Hayashida.

8              THE COURT:  Is he on this list?

9              MR. HANSEL:  Apparently not.  I guess he's not

10   incarcerated but they have agreed to produce him nonetheless.

11             THE COURT:  All right.  Thank you.

12             MR. HANSEL:  We are in discussions with Denso and

13   Yazaki and we have made very good progress in those

14   discussions.

15             THE COURT:  Can I back up just so I can get this

16   right?  You indicated on March 8th there was a stipulation

17   filed.  Do you have a docket number on that?

18             MR. HANSEL:  Yes, it is number 130.

19             THE COURT:  Thank you.

20             MR. HANSEL:  Okay.

21             THE COURT:  Okay.  Denso and Yazaki.

22             MR. HANSEL:  Yes.  Those discussions are going

23   well, and we are optimistic that we will reach a similar

24   agreement with Denso and Yazaki and their associated

25   employees.  The matter does have some time sensitivity

1    because one of the Yazaki employees is scheduled, according

2    to our understanding, to be released July 10th, 2013, and

3    there is also some uncertainty regarding when two other

4    Yazaki employees may be transferred to serve part of their

5    sentence in Japan, which could happen conceivably even

6    earlier than July, and we appreciate Yazaki sharing that with

7    us that that was in process and was a possibility.

8              So if we don't happen to resolve it the plaintiffs

9    will present a motion to the Court, but it is premature to

10   concern ourselves with that because we are still hopeful that

11   we will reach agreement on the subject.  Thank you.

12             THE COURT:  Thank you.  Okay.

13             MR. MAJORAS:  Good morning, Your Honor.

14   John Majoras from the Jones Day firm on behalf of Yazaki.

15   And what Mr. Hansel just said about the depositions, we

16   agree, that is the state of play in terms of discussions.  We

17   believe and I understand from Denso's counsel, who also has

18   individuals at issue, that they believe a resolution is in

19   the offing.  We are working diligently to do that.  Obviously

20   conferring with individuals while they are in the Lompoc

21   prison takes some time, there are some translation issues, we

22   have explained that to plaintiffs, they have been

23   understanding in terms of trying to give us time to do that,

24   and we hope we will not be in a position where a motion will

25   be necessary where we then have to debate these issues.

 1           THE COURT:  Okay.  Good, good.  Did Denso want to

 2    say anything or was that enough?

 3           (No response.)

 4           THE COURT:  Okay.  Let's go on then.  Is there

 5    anything else on wire harness?

 6           MR. FINK:  No, Your Honor.

 7           THE COURT:  Instrument panel clusters?

 8           MR. FINK:  We don't believe -- since we have

 9    addressed this issue regarding the depositions we are not

10    aware of anything that needs to be brought to the Court's

11    attention on instrument panel clusters.

12           THE COURT:  Okay.  Any defendant?

13           (No response.)

14           THE COURT:  No.  All right.  Thank you.  The fuel

15    senders?

16           MR. FINK:  On fuel senders, again, Mr. Hansel can

17    speak to this, but we have -- it is not referenced here but

18    since the preparation of this agenda another -- a case has

19    been filed for a direct plaintiff.

20           THE COURT:  I looked at the docket at that and it

21    said a sealed complaint.  I was a little confused by that.

22    Is there something going on here that --

23           MR. FINK:  No secrets from you, Your Honor.

24           THE COURT:  -- I need to know about?

25           MR. FINK:  What has occurred in terms of the filing

1    is that we filed the case, it was assigned to Judge Tarnow.

2    We filed it as a redacted complaint with certain confidential

3    information.  When we do that we then file an unredacted

4    version under seal with the Court where the case has been

5    assigned.  Because it hasn't yet been reassigned here we

6    still did not think it was a good idea to file the sealed

7    complaint with Judge Tarnow so we filed that here, and the

8    difference is simply there's some redacted information --

9    confidential information in the complaint.

10            THE COURT:  All right.  Presumably Judge Tarnow

11   will transfer that to me as soon as he gets around to it.

12            Bernie, would you please make a note of that?

13            Thank you.  I was just curious when I saw that, I

14   thought, uh-oh, what are they getting into.  Okay.  I've got

15   it.  Okay.  Mr. Hansel, does that take care of --

16            MR. HANSEL:  That takes care of it, Your Honor.

17   Thank you.

18            THE COURT:  Okay.  And everybody is served.  And

19   the consolidated amended complaint will be filed timely in

20   April, is that --

21            MR. FINK:  Yes.  We are not asking for any

22   different date, that still works just fine for us.

23            THE COURT:  Okay.  Good.  Heater control panels?

24            MR. FINK:  Actually I'm not aware of any issue on

25   heater control panels that anybody needs to bring to the

1    Court's attention, but I was wrong.

2            MR. RAITER:  Good morning, Your Honor.

3    Shawn Raiter on behalf of the automobile dealers.  The only

4    correction or supplement to this agenda is that in the auto

5    dealer cases we have accomplished service on Apps Electric

6    North America and Apps Automotive, Inc., so those are two

7    additional services that have been completed, and the others

8    remain underway.

9            THE COURT:  Okay.

10           MR. ZAPALA:  Good morning, Your Honor.  Adam Zapala

11   for the end payors.  We are in the process of serving the

12   newly-added defendants, we don't expect that there is going

13   to be any problems.

14           THE COURT:  Excuse me.  Can I have your name again?

15   You're not Mr. Persky who I had --

16           MR. ZAPALA:  No, Adam Zapala for the end payors.

17           THE COURT:  Okay.

18           MR. ZAPALA:  So we are in the process of serving

19   the newly added defendants, the Apps defendants.  We have

20   reached agreements in principle with the other defendants for

21   them to accept service.  We are hopeful that consistent with

22   the template that has been used in other cases that we will

23   be able to reach an agreement with those defendants.

24           THE COURT:  And in your case the consolidated

25   amended complaint was filed in February, was it?

```
1          MR. ZAPALA:  It was filed -- yeah, correct.
2          THE COURT:  The end of February.
3          MR. ZAPALA:  The end of February, right, and that
4    was also filed under seal.
5          THE COURT:  Okay.  Thank you very much.
6          MR. ZAPALA:  Thank you.
7          MS. STORK:  Good morning, Your Honor.  Anita Stork
8    from Covington on behalf of the Apps defendants.  I am not
9    aware that the automobile dealers have successfully served
10   Apps North America.  They purported to serve a copy of the
11   complaint on an entity in Michigan but Apps North America is
12   in California, so I wanted to point that out.
13         I also wanted to point out that service has not
14   been effected on Apps Electric Company, Limited, which is the
15   parent company located in Japan, so I just wanted to make the
16   record straight on that.
17         THE COURT:  Okay.  What about plaintiffs on that,
18   does somebody want to talk to what is going on with the
19   service there?  It sounds like a wrong company was served, is
20   that what you are saying, or it should have been served in
21   California instead of --
22         MS. STORK:  What I'm saying with respect to the
23   automobile dealer complaint is that it was served on an
24   entity in Michigan but the proper place of service for Apps
25   North America is in California, which is my understanding
```

1    from the client.

2            THE COURT:  Excuse me just one minute.

3            (An off-the-record discussion was held at

4            10:36 a.m.)

5            THE COURT:  Sorry.  Okay.  Are you going to speak

6    to --

7            MR. RAITER:  Your Honor, we can obviously sort this

8    out but our understanding is that we served a registered

9    agent -- a Michigan registered agent for Apps North American,

10   and we would believe that's proper service but we can work

11   that out with defense counsel.

12           THE COURT:  Okay.  While you are here today you can

13   discuss it?

14           MS. STORK:  Yes, absolutely.

15           THE COURT:  Okay.  All right.  The deposition issue

16   is the same as we have discussed before, correct?

17           MR. FINK:  That's correct, Your Honor.

18           THE COURT:  Okay.  So then we go on to bearings.

19           MR. FINK:  With respect to bearings, there --

20   again, no issue on the service.  And the order that has been

21   entered, the case-management order, there is an issue on the

22   discovery plan, and Gene Spector, one of the interim co-leads

23   who is on the bearings case, will -- can speak to that.

24           THE COURT:  Okay.  Let me indicate that there were

25   orders -- we had a problem with the orders in the bearings

 1    and the occupant safety, I believe, those two, there were six

 2    orders that were stipulated to and I just want to indicate

 3    that they were entered this morning.  The problem with them

 4    is the way they were initially submitted our system doesn't

 5    allow us to separate them, and so they all went off as

 6    something for the Court to look at later.  I think that

 7    Bernie talked to Mr. Iwrey about that.  Then they were

 8    resubmitted -- this is very interesting because I'm learning

 9    more about CM/ECF than I care to know really, but they were

10    resubmitted, they had the case number, proposed order, case

11    number, proposed order, case number, proposed order, but

12    since it had the same title, proposed order, they would be

13    overriding each other and she didn't separate them, but

14    anyway I'm sure she is working that out with you and now we

15    know that.  I'm sorry about the delay but it was -- it was

16    just one of those things that happen.

17                MR. FINK:  Your Honor, I've spoken with Mr. Iwrey

18    since he's spoken with your case manager, and we can avoid

19    that -- we are pretty certain we can avoid that problem in

20    the future, and we will do our best.

21                THE COURT:  Okay.

22                MR. FINK:  We are all learning that with this many

23    cases in this many different contexts, the electronic system,

24    as efficient as it is, is not as intuitive as a human being.

25                THE COURT:  We thought we had it all figured out

1    perfectly, right?  Wait until we get to the next topic

2    because I have something else.

3          MR. SPECTOR:  Good morning, Your Honor.

4    Eugene Spector on behalf of the direct purchaser plaintiffs.

5    The issue is both in the bearings case and in the occupant

6    safety systems cases, the same issue, and it has to do with

7    the entry of a discovery plan.  There are only really two

8    disputed issues with regard to that discovery plan; the first

9    being with regard to the production of documents produced to

10   the Department of Justice by those defendants who have pled

11   guilty, and the second issue being that of when initial

12   disclosure should be made by those defendants and the

13   plaintiffs also who have not pled guilty.  Our position is,

14   as it has been in the other cases, following basically the

15   template of what happened in wire harnesses, instrument panel

16   clusters, heater control panels --

17         THE COURT:  Let me ask you a question about those.

18         MR. SPECTOR:  Sure.

19         THE COURT:  As I understood, when wire harness

20   turned over these documents -- when the defendants in wire

21   harness turned over these documents, the consolidated amended

22   complaint was filed, is that correct or not?

23         MR. SPECTOR:  I believe that is correct, Your

24   Honor, that was the structure at that point.  However, in the

25   heater control panel case and the instrument panel cluster

1   case that's not the case; the documents have been turned over

2   prior to the filling of the consolidated amended complaint.

3   Quite honestly that is not atypical in cases where there are

4   guilty pleas.  In fact, I think Judge Alsup in the graphic

5   processing units antitrust litigation in the Northern

6   District of California dealt with that issue, it is a case in

7   which the defendants rely on their papers, and he in that

8   case did stay discovery of those documents because there were

9   no guilty pleas.  What he said was, nor in this case where it

10  is almost certain that the complaint is viable, such is often

11  true where guilty pleas are already or have already been

12  entered in a parallel criminal case, of course, in such

13  conditions at least some discovery should ordinarily proceed

14  despite any pending motion to dismiss.  And in that case

15  there had been no indictment and so therefore he stayed

16  discovery.

17       I think that's the issue here, I think virtually

18  every case that the defendants relied on except I think one

19  did not have a guilty plea and therefore the documents were

20  not ordered produced at that point.

21       THE COURT:  Were those cases all -- I know they

22  weren't but were these cases all pre consolidated complaint?

23       MR. SPECTOR:  The cases where there has been a

24  guilty plea, yes, they were pre consolidated amended

25  complaints.

 1           THE COURT:  So let me ask you this:  If it is

 2    pre consolidated amended complaint and they have to turn over

 3    these documents, do they turn them over to every individual

 4    case although here I don't think we have a lot of cases

 5    anyway?

 6           MR. SPECTOR:  Well, there's three groups basically

 7    that we're working on discovery, they are all subject to the

 8    protective order in the case and therefore they will be

 9    confidential, they can only be used for purposes of the

10    litigation.  It is -- there is no issue other than whether it

11    is appropriate where there has been a guilty plea for those

12    documents to be produced.  In the bearings case we don't have

13    that issue because there are no guilty pleas and so therefore

14    there are -- there are no documents to be turned over.

15    However, if a guilty plea does occur under the terms that we

16    have proposed in the plaintiffs' order --

17           THE COURT:  You said something --

18           MR. SPECTOR:  -- 30 days thereafter they would

19    produce the documents.

20           THE COURT:  30 days after the guilty plea --

21           MR. SPECTOR:  Yes.

22           THE COURT:  -- because you said something somewhere

23    about -- let me pull those orders, okay, of the agreement to

24    plea versus the plea?

25           MR. SPECTOR:  Yes.

1       THE COURT:  So the plea would not have necessarily

2  have taken place?

3       MR. SPECTOR:  Correct.  If there an announcement by

4  the Department that we have an agreement for a plea to be

5  entered at that point it is basically the same as the plea

6  having taken place in terms of what burden there would be on

7  the defendant whether it is appropriate for that kind of

8  discovery to take place because you're fundamentally in the

9  same position you would be in as if a guilty plea had taken

10  place.

11       THE COURT:  Okay.  Thank you.

12       MR. SPECTOR:  Thank you, Your Honor.

13       THE COURT:  Who is arguing?

14       MR. DAVIS:  Good morning, Your Honor.  Ken Davis

15  with the Lane Powell law firm.  I represent Nachi Fujikoshi

16  Corporation and Nachi American, which are named as defendants

17  in some, but not all, of the individual complaints in the

18  bearings matter.  I think to answer your question, Your

19  Honor, I think there are 13, maybe 14, current complaints in

20  bearings --

21       THE COURT:  13 or 14?

22       MR. DAVIS:  -- from the three primary groups just

23  mentioned.

24       Your Honor, the first thing I would like to do is

25  dispel this myth that there is some sort of template out

1    there that was established in the earlier cases, that's

2    simply not the case for three primary reasons.

3         First of all, in the wire harness cases the issue

4    with respect to DOJ documents and with respect to initial

5    disclosures was subject of an agreement amongst the parties

6    as part of a broader compromise involving all of the

7    discovery issues.  That's not the case here obviously.  The

8    parties have not been able to agree on these issues.  So this

9    issue with respect to DOJ documents has never been presented

10   to the Court for adjudication before, and Your Honor has not

11   had the opportunity to review the authority by Judge Cox of

12   this District as well as the Sixth Circuit -- and that's in

13   the refrigerant case, or the Sixth Circuit in the Travel

14   Agents case as well, which strongly suggests that this Court

15   needs to take a very hard look before it allows any discovery

16   at all before the motions to dismiss are resolved.  And, Your

17   Honor, you have hit upon -- so that's the first difference.

18        The second difference why this is not a

19   template-type case is the reason already alluded to by

20   Mr. Spector, and that is in the bearings case there are no

21   guilty pleas.  In the graphic processors case that

22   Mr. Spector referred to, it was precisely because there was a

23   guilty plea that the court said, okay, well, in this case it

24   is plausible that the complaints can be framed around that

25   guilty plea.  Here we don't have a guilty plea so there is no

Status Conference • March 13, 2013

1    actual guilty plea upon which the plaintiffs can hang or

2    frame their complaints here.  This is discovery in search of

3    a claim, that's specifically not allowed under the federal

4    rules.

5            Here, Your Honor, we have a case where there is no

6    guilty plea, we have some defendants that are named in some

7    lawsuits but not others, we also have differences amongst the

8    various complaints with respect to the definition of the

9    product.  In some of the complaints the product is defined as

10   automotive bearings, in other complaints the product is

11   defined as not only automotive bearings but also industrial

12   bearings.  We don't know what the consolidated amended

13   complaints are going to say in that regard.  We don't know

14   what is relevant to the extent that any documents have been

15   produced to the DOJ or initial disclosures were going to take

16   place.  We don't know what is relevant or what is not

17   relevant because we don't know what the consolidated amended

18   complaints are going to say with respect to either of those

19   issues or whether all the parties that are named in some

20   complaints but not other complaints will eventually be named

21   in the consolidated amended complaints, so why are the

22   plaintiffs seeking this pre-complaint discovery?

23           And I disagree with Mr. Spector with respect to the

24   authority that was cited by the plaintiffs; this is not

25   routine or common.  In fact, in the Flash Memory case and the

1    Toyota case, these are cases cited by the plaintiffs, that

2    discovery with respect to DOJ production was ordered after

3    the resolution of the motions to dismiss, not just the

4    consolidated amended complaints but after the motions to

5    dismiss.  Furthermore, the pharmaceutical case and I think

6    the S-RAM case involved orders with respect to discovery

7    after the consolidated amended complaints.  And again the

8    graphic processors case, Your Honor, I think lays this out

9    that you should not be entitled to get discovery to hunt for

10   a claim upon which to frame your complaint.  The complaint

11   needs to rest on the facts as they exist today, should be

12   tested in due course by the motions to dismiss and properly

13   heard by the Court.

14            THE COURT:  Can you distinguish refrigerants --

15            MR. DAVIS:  Refrigerants from processors?

16            THE COURT:  Yes.

17            MR. DAVIS:  That was a case before Judge Cox, Your

18   Honor.

19            THE COURT:  Was that before Cox?  Okay.  Yeah, not

20   Borman.

21            MR. DAVIS:  It is attached as one of the exhibits

22   to the joint submission, Your Honor.

23            THE COURT:  Right, okay.

24            MR. DAVIS:  The Travel Agents case was a

25   Sixth Circuit case.  Both of those cases -- the Circuits come

```
 1    out different in the interpretation of Twombly, but I submit
 2    under the Travel Agents case, and as construed by Judge Cox
 3    in the refrigerants case, the Sixth Circuit is very reluctant
 4    to order discovery prior to filing -- file to the resolution
 5    of motion to dismiss, and those two authorities I think
 6    should control this case.  That at the very least prior to
 7    the amended complaints being filed -- consolidated amended
 8    complaints being filed but even more so it should wait until
 9    after the resolution of the motions to dismiss before we
10    address these issues.  At that point we will know what the
11    claims are, if any, who the defendants are and what the
12    product definition is and whether or not there are any viable
13    claims upon which to pursue documents that may have been
14    produced to the DOJ as well as initial disclosures.
15            THE COURT:  Are there any pending pleas in the --
16            MR. DAVIS:  In bearings, no, Your Honor.  I should
17    say, Your Honor, I'm only speaking on behalf of the bearings
18    defendants because OSS is situated slightly differently in
19    that regard.
20            THE COURT:  Okay.  Thank you.
21            MR. DAVIS:  Thank you.
22            MR. FENNEY:  Your Honor, Jim Fenney on behalf of
23    TRW and TRW Deutscheland.  We are in the OSS case, and simply
24    indicate at this time on behalf of those defendants, Your
25    Honor, we agree with counsel with respect to the presentment
```

```
 1    of the arguments with respect to bearings, but I would like

 2    to say in addition to that, and not to belabor the point,

 3    that the plaintiffs in their submission, Your Honor, other

 4    than citing the fact of a template and a few needle in a

 5    haystack cases that they have collected together, have not

 6    dealt with the law in the Sixth Circuit and have not

 7    articulated a single legitimate reason why they need this

 8    information before the consolidated amended complaints are

 9    filed and before this Court resolves the motions to dismiss.

10         There is no concern here about documents to be

11    preserved, there is no concern here about preserving

12    testimony.  These are the commonly cited reasons for this

13    sort of activity.  There is certainly no provision in the

14    federal rules that allows for pre-complaint discovery, and

15    it's simply not appropriate, Your Honor.  Thank you.

16         THE COURT:  Wait a minute.  In the -- in the OSS

17    cases how about pleas?

18         MR. FENNEY:  There are pleas by some defendants.

19         THE COURT:  How many pleas?

20         MR. FENNEY:  Two.

21         MR. SPECTOR:  I believe two, Your Honor.

22         THE COURT:  Okay.

23         MR. FENNEY:  Thank you, Your Honor.

24         MR. WILLIAMS:  Your Honor, Steve Williams for the

25    end payors.  I know Mr. Spector is going to respond, but I
```

1    had to because so much of what was just said in the argument
2    before was wrong so I don't -- I know the Court is going to
3    read the authorities.  I was lead counsel in S-RAM.  The
4    Government documents without any guilty pleas were ordered
5    produced at the first case-management conference, not after
6    complaints or after motions to dismiss.  In GPU there was not
7    a guilty plea.  I know the Court is going to look at it, but
8    in Toyota and in the drug cases what was just said to you was
9    not correct, but I think there is just this misstatement of
10   the law that we are pre-complaint.  We are not pre-complaint,
11   complaints are filed.  There is no automatic stay of
12   discovery; this is not a PSLRA case.  And, you know, all of
13   this flows from Twombly, and all Twombly said is as long as
14   the court thinks discovery is likely to produce evidence
15   supportive of the alleged antitrust violation discovery
16   should go forward.  We have guilty pleas, they've admitted to
17   the antitrust violation.  So really the issue that I think is
18   here is, is there any burden to defendants from solely
19   producing what they have already collected and produced to
20   the Department of Justice?  And under 26(c) it is their job
21   to tell this Court what that burden is, it is not our job to
22   justify what guilty pleaders should tell us, we have to prove
23   our need for the discovery.  That's not the law.  So I know
24   the Court will look at the law but I just want --
25              THE COURT:  How about bearings where there is no

1   guilty plea?

2        MR. WILLIAMS:  They don't have to produce anything,

3   they don't have to produce until there are guilty pleas, so

4   there is no issue there.  And, you know, again, I had to

5   comment just because of the misstatements of the law but the

6   law is discovery is not automatically stayed and when there

7   are guilty pleas in an antitrust case, they have admitted to

8   what we filed our complaints about, unless they can

9   demonstrate burden to the Court, which they can, the

10   discovery should go forward.  It is very little.  We did not

11   come in and say we want depositions, we want to serve

12   document requests or any of that.  We are just saying give us

13   what you've already produced to the government, and they have

14   given you no reason to say no.  Thank you.

15        THE COURT:  Okay.

16        MR. SPECTOR:  Your Honor, Gene Spector again.  I

17   just wanted to clarify one thing.  With regard to bearings,

18   we are not asking for any documents to be produced because

19   there are no guilty pleas.  We are only asking for the

20   documents to be produced in the occupant safety system cases

21   because there are guilty pleas, and the reasons for that have

22   been explained.  I thought Mr. Williams explained very well

23   his experience in the S-RAM case and in the other cases, and

24   the cases are all put -- set forth in our papers, but I just

25   wanted to make sure that you understood the difference

 1    between those two cases and the burdens that were at issue.

 2            THE COURT:  Okay.

 3            MR. SPECTOR:  Thank you, Your Honor.

 4            THE COURT:  I think that the issue in terms of the

 5    OSS cases is the easier issue, and clearly there were guilty

 6    pleas, there were complaints filed really based on the same

 7    alleged facts as the guilty pleas, so I think that this is

 8    something that should move along.  The complaints have been

 9    filed, granted the consolidated amended complaints have not

10    been filed but there are complaints filed, and the

11    information has -- is gathered because it has been given over

12    to the Department of Justice so it seems to be appropriate to

13    do it at this time, and it also seems like it would save the

14    defendants further work in the future with discovery because

15    they now have it all set.

16            So I think given that -- given as was said in one

17    of the cases that it is almost certain the complaint is

18    viable, the Court will order that in the -- those cases where

19    there are guilty pleas, the documents which have been

20    produced to the Department of Justice should be turned over

21    to the plaintiffs -- plaintiff groups.

22            MR. SPECTOR:  Thank you, Your Honor.

23            MR. SCHMIDTLEIN:  Your Honor, just one point of

24    clarification.  John Schmidtlein for the Takata defendants.

25    We are in OSS but we have not pled guilty.  Some defendants

1    in OSS have pled guilty, others have not.  Just to clarify,

2    your ruling is that this only applies to defendants who have

3    pled guilty?

4            THE COURT:  This would apply to your defendants who

5    have pled guilty and turned the documents over to the

6    Department of Justice.

7            MR. SCHMIDTLEIN:  Thank you, Your Honor.

8            THE COURT:  Okay.  How about the -- anything else

9    on the second issue, which is the Rule 26?

10           MR. FINK:  No.  I don't think we have any issue on

11   that, I'm not aware that there is any controversy about --

12           THE COURT:  Well, there was.

13           MR. FINK:  I apologize, I thought --

14           MR. SPECTOR:  No.

15           THE COURT:  Mr. Spector.

16           MR. SPECTOR:  There is still the 26(a)(1) issue as

17   to when those disclosures should be made.  What we have done

18   in the other cases is we have provided that those who do not

19   produce their Government documents at the time that the

20   Government documents are produced by the defendants who have

21   pled guilty, those defendants who have not pled guilty should

22   make their 26(a)(1) disclosures, as should we, as should the

23   plaintiffs, and that's what we have asked for in the proposed

24   order.

25           THE COURT:  Okay.  Defense?

```
 1           MR. DAVIS:  Your Honor, should I?

 2           THE COURT:  Yes.

 3           MR. DAVIS:  For the record, Ken Davis.  Your Honor,

 4  with respect to the initial disclosure, the real problem here

 5  is to do these before the filing of a consolidated amended

 6  complaint leaves the defendants in a very unenviable position

 7  to have to do initial disclosures with respect to each

 8  individual complaint that has been filed to date.  Again, I

 9  pointed out to Your Honor the differences --

10           THE COURT:  I agree with you, I agree with that.  I

11  think that that's a little more difficult because of the

12  number of cases and how you would have to respond to each of

13  them.

14           MR. DAVIS:  Very well.  I won't belabor the point

15  then, Your Honor.  Thank you.

16           THE COURT:  So, yes, I do believe that any other

17  initial disclosure should wait until the consolidated amended

18  complaint is filed.

19           MR. SPECTOR:  If I might, Your Honor, then if we

20  are going to do that could we set a time period by which this

21  is done, 30 days after the CAC, for example, would that work

22  for people so that we have a date certain at least?

23           THE COURT:  Defendants, 30 days?

24           MR. DAVIS:  I can't speak on behalf all defendants.

25           THE COURT:  Well, I think 30 days is plenty.  You
```

     1  know it is coming -- you know most likely it will come so --

     2  we know there will be a consolidated amended complaint so

     3  what am I talking about, you do know it is coming, and

     4  therefore 30 days after its filing should be plenty.

     5          When is the date for the filing of the

     6  consolidated -- one of them I thought was way out in July?

     7          MR. SPECTOR:  One is -- I believe the occupant

     8  safety systems' complaint is due June 3rd I believe because

     9  that's a Monday, and the bearings consolidated amended

    10  complaint I believe is July 15th, Your Honor.

    11          THE COURT:  Okay.  When you prepare your order add

    12  30 days and make it -- if it is a weekend make it a Monday,

    13  et cetera, and that's good.

    14          MR. SPECTOR:  Thank you, Your Honor.

    15          THE COURT:  Okay.  All right.  So if you would then

    16  prepare the order and have it submitted to the Court within

    17  the next few days with the dates in?

    18          MR. SPECTOR:  Yes, Your Honor.  Thank you.

    19          THE COURT:  Is there anything else in that order

    20  before we proceed?

    21          MR. SPECTOR:  I believe everything else was agreed,

    22  Your Honor.

    23          THE COURT:  Okay.

    24          MR. PERSKY:  Your Honor, circling back -- this is

    25  Bernard Persky for the end payors.  Just circling back to

1    wire harnesses.

2            THE COURT:  That seems like such an old case.

3            MR. PERSKY:  The stipulation of dismissal without

4    prejudice of FAI from the case, we also submitted, the three

5    plaintiffs' groups, a proposed order that I think would

6    effectuate the parties' agreement that in the event that

7    there will be an amended pleading assuming the Court either

8    upholds the complaint or it dismisses the complaint and gives

9    leave to replead, we would be able to substitute FAA for FAI,

10   it is a proposed order, there is no dispute that it is under

11   submission to Your Honor.

12           THE COURT:  I actually looked at that and signed it

13   yesterday, so that order is done.  It may not actually be in

14   the system given our little confusion but I have reviewed

15   that.

16           MR. PERSKY:  Thank you, Your Honor.

17           THE COURT:  Okay.

18           MR. HANSEL:  Excuse me, Your Honor.  Greg Hansel,

19   again, in the wire harness case.  The direct purchasers are

20   not within the scope of the order that Mr. Persky and you

21   were just discussing, and we are working on it and hope to

22   submit something to the Court shortly that is very similar,

23   if not identical.  Thank you.

24           THE COURT:  Okay.  I don't remember the title, if

25   we can -- we will have to look at that to make sure the

```
 1    direct purchasers are clearly not in that at this point.

 2           Would you make a note of that, please, Bernie?

 3           Okay.  All right.  Mr. Fink?

 4           MR. FINK:  Your Honor, with respect to the next

 5    item, Roman numeral VII, the new cases, the new cases

 6    identified the auto dealers' intentions but there is -- on

 7    these subjects but there is no reference to the direct

 8    purchaser plaintiffs, and Steve Kanner will speak to the

 9    direct purchaser plaintiffs in terms of the five new cases

10    that were filed -- or five new products.

11           THE COURT:  Okay.  Just one minute, I want to read

12    this order.  Okay.  That order that we were talking about was

13    the dealership plaintiffs --

14           MR. PERSKY:  Your Honor, it turns out that two

15    groups of plaintiffs have filed, the directs have not yet,

16    and the order that was filed before Your Honor --

17           THE COURT:  But the proposed order I have is for

18    the dealerships only.  Is there a second order for the end

19    payors?  There are two orders?

20           MR. PERSKY:  We filed an earlier order on behalf of

21    the end payors.

22           THE COURT:  Okay.  Got it.

23           MR. PERSKY:  Okay.  Thank you.

24           THE COURT:  Sorry but if I don't do it when I think

25    about it it causes more problems later.  Thank you.
```

1              MR. KANNER:  Good morning, Your Honor.

2     Steve Kanner, interim co-lead, on behalf of direct purchaser

3     plaintiffs.  Item 7, which is generally titled new cases,

4     lists the various cases which have been filed by the end

5     payor plaintiffs.  There are notations, of course, that the

6     automobile dealer plaintiffs intend to file.

7              What I would tell this Court with respect to the

8     intention of the direct purchasers is that it would be

9     reasonable to assume that we will be adding cases to the

10    list, I can't specifically indicate whether it would be each

11    of these cases.  Certainly one of these cases, the

12    anti-vibration rubber parts, is a case in which there has

13    been at least one guilty plea on the part of the defendant,

14    and I would preface these remarks by indicating that, as the

15    Court may be well aware, Deputy Assistant Attorney General

16    Scott Hammond spoke in the last few weeks in Detroit to one

17    of the Bar associations and indicated that the prosecution of

18    these various auto parts cases is and will continue and we

19    can expect additional prosecution to be announced.  The

20    direct purchaser plaintiffs are well aware of many of these

21    prosecutions and are continuing to work towards the goal of

22    filing these cases when we believe it is appropriate.  So as

23    they say, more to come.

24             THE COURT:  More to come.  Okay.  In terms of these

25    cases that were filed in the Eastern District, we have to

1    follow those up to make sure they get here.  I'm not sure

2    right now where they are filed, I did not --

3           MR. REISS:  Good morning, Your Honor.  Will Reiss

4    on behalf of the end payors.  Yeah, right now one of the

5    cases is pending with you.  I can tell you which judges;

6    windshield wipers case is before Judge Hood, starters is with

7    you, the radiators case is with Judge Murphy, the alternators

8    case is with Judge Edmunds, and anti-vibration is also with

9    Judge Murphy.  I know we have contacted their chambers to see

10    if we can get them relayed to you, but my understanding is

11    they are still pending.

12           THE COURT:  Okay.

13           MR. KANNER:  One other thing I would add, Your

14    Honor, is that all of these products have been referenced as

15    prosecutions by the JFTC, the Japan Fair Trade System, the

16    analog to the U.S. Department of Justice Antitrust Division,

17    and I believe there were findings and fines in Japan, and we

18    expect there to be criminal actions announced in the

19    United States.

20           THE COURT:  All right.  Okay.  So we will try and

21    gather all of these from the other judges.  I mean, they will

22    get to it as soon as they look at it I'm sure, but I don't

23    want to lose any of them so we will keep following them to

24    make sure that they get onto the docket here and part of the

25    MDL.

1    All right.  The next issue we put on here is

2    briefing procedures.  Let me say that as to this issue I will

3    hear you, but I just want to say a lot of this is to make it

4    easier here, I don't know that it would make it easier for

5    you or if it makes any difference to you, but I have one

6    clerk working on this plus she has other work so it is a

7    little bit difficult.  We kind of laugh here as we read all

8    of these pages and we go over all the people that you have

9    working on your briefs, and poor Molly, she is kind of

10    handling it all by herself, she is doing a marvelous job, but

11    it is taking us longer because I just can't let everything

12    else go, so we are kind of putting it together.

13    But I will tell you that I believe the rulings on

14    the motions on the wire harness, the motions to dismiss on

15    the wire harness cases will come out probably the end of

16    April, beginning of May.  That's not to say some of them

17    aren't done, but I'm holding them all until I get all of the

18    motions done so you will get them all at one time.

19    Okay.  And then in terms of briefing, we talked a

20    little bit about this before that the argument and authority

21    have to be in the body of the brief, there can be a summary

22    in an appendix, but the cases you are relying on as you go

23    through have to be in the body, not a footnote, please put

24    them in the body.  Yes, it doesn't read so well because

25    sometimes we have to skip over lots of cites but it still

1    makes it easier for us to read with them in the body.

2         And as to the state cases, antitrust, whatever

3    claims are going to be in the state cases, including the

4    consumer protection, we would like those briefs done by state

5    as opposed to by issue.  I can see why they were done by

6    issue but when we are doing them by state we have things all

7    over the place, it is just much easier to have everything by

8    state, and I think that will make it easier as we go along

9    with the other cases to see what each state's law is.  This

10   is going to, I believe, probably take a lot more pages and

11   that's why I put on here the page-limit extension because I

12   would rather that you had more pages and have it organized

13   this way.  Okay.  You want to --

14        MR. WILLIAMS:  I don't think I have much to say.  I

15   think all of us agree we would like to make this easier for

16   the Court.  I think the idea of state by state organization

17   will do that, but I can't speak for the defendants as to if

18   they need more pages or not.  The only question I would ask

19   just for clarification would be in describing a summary of

20   authority in appendix, whether that's simply identification

21   of authority or any discussion, parentheticals, because in

22   the briefing on the last round I think where the challenge

23   came is in the appendixes were parentheticals that would then

24   set forth propositions that cases stood for, then we

25   responded and the defendants responded.

```
 1            THE COURT:  It was like we were arguing indices to
 2   indices, and that's what I don't like.  If you are going to
 3   argue it put it in the brief.  If you want to do a summary
 4   chart or something, if -- I like summary charts, by the way,
 5   I'm not saying I don't like them, I just also like to be able
 6   to read the brief as it goes along, but you can't raise new
 7   arguments in exhibits no matter what they are.  You can do a
 8   summary, but no new arguments, don't argue the cases or
 9   anything in the index.
10            MR. WILLIAMS:  We have had --
11            THE COURT:  You have to put it in the body.
12            MR. WILLIAMS:  We had some discussions and it seems
13   to me it probably makes sense to let the defendants tell us
14   if they want more pages.
15            THE COURT:  I want them to tell me how many more
16   pages, that's why I didn't put a number down here.
17            MR. HERRMANN:  Good morning, Your Honor,
18   Fred Herrmann, Kerr, Russell & Webber, appearing on behalf of
19   Nippon Seiki defendants and the IPC defendants and speaking
20   on behalf of the other IPC defendants.  The last thing we
21   want to do, Your Honor, is make this more difficult for the
22   Court.
23            THE COURT:  I know that.
24            MR. HERRMANN:  This is of particular urgency of the
25   IPC defendants who have their briefing deadline due this
```

 1    coming Tuesday, and this issue relative to the restructuring

 2    that the Court asked for was not the subject of our meet and

 3    confer with plaintiffs, and the other defendants certainly

 4    haven't had an opportunity to consider this either, so I

 5    can't represent for all of the defendants what page extension

 6    they may seek.

 7          The first thing I would ask of the Court because

 8    our briefing deadline is imminent --

 9          THE COURT:  I can change that.

10          MR. HERRMANN:  We have been putting this brief

11    through the sausage grinder to get everything in the brief as

12    the Court asked us to do.  It is going to take frankly a

13    significant additional effort to reorganize this brief the

14    way the Court has asked here in the agenda item.

15          So our first request of the Court would be if we

16    could exempt the IPC defendants from this requirement for

17    their briefing, and if not, if the Court would like us to

18    rework the brief, we will need an appreciable page extension

19    and we would ask for a week's extension to get that

20    accomplished.

21          THE COURT:  I am going to ask you to rework your

22    brief.  You need a week extension to do that, the Court will

23    allow you -- is that sufficient, one week?

24          MR. HERRMANN:  The time is sufficient, Your Honor,

25    we'll still need to address the pages.

```
 1            THE COURT:  We'll get to the pages but, yes, I will
 2    allow you to rework it and give you one more week.  Okay.
 3            MR. HERRMANN:  Thank you, Your Honor.
 4            THE COURT:  Now, as to the page limits, I had a
 5    difficult time with that because I was trying to add up all
 6    the page limits, you know, the additional pages that you had
 7    in the indices and there's a lot, so I decided I would just
 8    let you tell me -- you don't often get this opportunity so
 9    you tell me.
10            MR. HERRMANN:  Your Honor, the way we tried to
11    approach this is we did do a little bit of tinkering with the
12    brief as it exists under the old format, and what we tried to
13    take into consideration is if we briefed end payors and
14    dealers in separate briefing and addressed this the way the
15    Court would like we think we would need at least 40 pages per
16    brief.  To put them together it was frankly a challenge and
17    we were considering asking Your Honor for additional pages
18    just to meet the previous format to get everything up out of
19    the footnotes and into the main body of the brief, and that
20    would have put us at best at 60 pages.
21            So we would think 40 additional pages to the 50
22    that was discussed back in December, we can get that done in
23    those additional 40 pages, so a total of 90 to get this
24    reorganization with all of the state-by-state analysis.
25    That's our best estimate, Your Honor, based on the tinkering
```

1    we have done and looking at all the appendixes, the arguments

2    that have been raised, and taking into account that we are

3    addressing both end payors and dealers in one combined brief,

4    we can put it all in one place and if we can get that

5    accomplished in those 90 pages we can get the state-by-state

6    structure that the Court has asked for.

7            THE COURT:  Thank you.

8            MR. WILLIAMS:  I would like to make an alternate

9    proposal and pick up on something that counsel said, which is

10   why not have a separate brief for the end payors and a

11   separate brief for the dealers, because to me a lot of the

12   difficulties last time was that you had arguments that might

13   relate to one group mixed in with an argument that related to

14   another, it was not always easy to keep those separated.  So

15   I think it would make more sense to have -- there is a

16   separate complaint so have a separate motion directed to each

17   of those.  90 pages -- or I guess I would make it 45 each, we

18   can live with that if that's what they need.

19           THE COURT:  Just a minute?  Let me get Molly.

20           (An off-the-record discussion was held.)

21           THE COURT:  Molly says it doesn't matter to her if

22   you separate them or you don't.

23           MR. HERRMANN:  Your Honor, we disagree with that.

24   The point on the separate briefing was to analyze the pages

25   required to address all of this.  We would be repeating the

1   same things in two separate briefs with end payors.  The

2   legal arguments are the same.  In fact, that was if we were

3   to request going back to the original format that's why we

4   formatted the briefs the way we did because you could put the

5   legal argument followed by string citations of the state law

6   that applies and supports that individual legal argument, but

7   if we now break it out into states the legal arguments remain

8   the same, the problem is the space requirements to address

9   each state.  So for us, again, particularly at this hour, we

10  are on the eve of filing our papers, we would -- we have one

11  combined brief already, we would like to keep that

12  organization, we think it is more efficient for the

13  defendants, more efficient for --

14          THE COURT:  I agree, you have already worked on it.

15  Let's do that, let's keep it combined.  Does anybody else

16  have anything regarding number of pages, number of pages,

17  anyone disagree?

18          MR. WILLIAMS:  I've just got one thing.  If they

19  are going to tell you they are just repeating the same thing

20  I don't see why they need 90 pages to do that, they had 50

21  already.  It's a lot of pages.

22          THE COURT:  I have to tell you something, I got an

23  opinion once from the Court of Appeals, I don't remember now

24  if it reversed or didn't, to be honest with you, but it was

25  like 97 pages and, you know, I have never to this day read

1    the whole thing.  Okay.  Let's do it 90, we will do it

2    together, you know, if in response you find that you want to

3    separate it out maybe you could work something out in a

4    response that is separate.

5              MR. WILLIAMS:  Would it be acceptable to the Court,

6    they can file their one brief because it is already almost

7    done apparently, but our groups file our own responses?

8              THE COURT:  You can file your own responses, sure.

9              MR. WILLIAMS:  Thank you.

10             MR. SANKBEIL:  William Sankbeil for Kerr Russell.

11   Not that my partner is ever vague, but March 26th is the

12   date, is that also for the direct motion also?  Do you want

13   both motions filed on the same date, Your Honor, is the

14   question?

15             THE COURT:  Yes, everything will have --

16             MR. SANKBEIL:  So it is extended to March 26th?

17             THE COURT:  Yes, everything will get the extension.

18             MR. SANKBEIL:  Thank you.

19             THE COURT:  Yes, you don't have to abide by it but

20   you may.

21             MR. SANKBEIL:  Pardon me?

22             THE COURT:  You don't have to wait a week but you

23   certainly may.

24             MR. WILLIAMS:  One last thing on the briefing, if

25   we file singly, meaning dealers and end payors, we will do

1    90; if we file separate briefs we will do 45 each?

2              THE COURT:  That's correct.

3              MR. WILLIAMS:  Thank you.

4              THE COURT:  Okay.  Anything else on briefing?

5              (No response.)

6              THE COURT:  All right.  The next issue, I would

7    like to take this out of order, I would like to skip down to

8    the electronic case-management protocol order.  We do have

9    some problems.  You may have noticed already with our letters

10   now that we have the additional parts, you know, it gets --

11   we can only use one letter so it gets confusing.  We all know

12   wire harness and W, you know that, but as we add the parts it

13   is becoming meaningless to me, and I don't want anybody to be

14   confused by a letter in the beginning of the case number, so

15   I'm really going to do away with those letters.  I don't

16   think we need to worry about it, otherwise we would have to

17   sit down and pick nice letters for -- you know, Q is for

18   Avenue Q, I don't know, so we are not going do the letters.

19   As long as we have the numbers that would distinguish it, so

20   a part would have a number and you will just have to remember

21   what that number is.

22              I wanted to see, and this is one of the things on

23   our agenda with IT, if we could put on the 2311 face page,

24   the first page, if we can put an identification like bearings

25   is 5, I believe, so it would be 500 or whatever, so we will

1  see if we can make that a little easier, but otherwise you

2  will have to keep a list of 1 to 11 right now as to which

3  part is which, so there will be that.  I will do a

4  protocol -- another protocol order and send it out to you

5  because I have one other issue, and that is now we have these

6  parts that the case numbers are '13 dash whatever and they

7  are going into a '12 -- they are coming under a year '12

8  number in the electronic filing, so I just didn't think of

9  that when we started and how it would fit in there.  I think

10  it is going to be okay but I don't know that.  We are going

11  to discuss this with IT, and then we'll enter another

12  protocol which hopefully will be very similar to what you

13  have absent the letter.  Okay.

14          MR. FINK:  Of course, Your Honor, on that, if your

15  staff would like to consult with Mr. Iwrey and the liaison

16  counsel we are all happy to do that.  We appreciate the Court

17  seeing this.  We were stunned when the indirects filed

18  another W case, horrified truthfully, and then to add insult

19  to injury --

20          THE COURT:  You are very protective of your W,

21  aren't you?

22          MR. FINK:  Yes, yes, yes, I am, Your Honor.  And

23  then when they would file alternators and anti-vibration

24  rubber parts at the same time they really forced the issue,

25  and as upset as we are about it -- we thought we could solve

1    it, by the way, we thought windshields wipers could be called

2    squeegees but then they filed starters at the same time.

3         THE COURT:  I know.  It is interesting all the work

4    on that and we thought we had it all done -- oh, well.  Okay.

5    It is just something that I'm glad that it came up because it

6    may come up in the future as these parts -- if there are more

7    parts, which it looks like there may be, and we don't even

8    know that they will be in '13, right, I mean, they could be

9    in '14, so we might have this continue.

10        MR. FINK:  Your Honor, my son is a practicing

11   attorney.

12        THE COURT:  He may be taking over for you.

13        MR. FINK:  We don't intend to stop in '13, '14,

14   '15, we've got plans for this case.

15        THE COURT:  Okay.  All right.  Then the date for

16   the next status conference is quite controversial but I'm not

17   going to let you argue that, I have my own feelings and I'm

18   going to do this, and that is I like to keep track of this.

19   You do not have to come if you don't want to, if you have --

20   if you have your liaison or you have somebody you want to

21   appoint just to be here to be updated, and I'm very sincere

22   about that, feel free to do that, I'm not trying to make it

23   difficult for you, but I do want to keep these updates going

24   because it is very beneficial to me to see that these cases

25   are, in fact, moving along, and I always learn something

1    about what is happening.

2          I don't have a date yet for the oral argument on

3    the next step, we'll have to discuss that maybe at the next

4    conference.  I am going to set the conference for July 10th,

5    it is a Wednesday, and we'll do it at 10:00, and it will be

6    simply the status conference and that's all, no motions

7    argued except if there's something like we had today on

8    discovery.

9          MR. FINK:  Can I raise one issue with the Court?

10   This morning in speaking to various counsel who had come in

11   from out of town, not just on the plaintiffs' side but also

12   among the defendants, that if -- I don't know if the Court's

13   calendar can allow it, but if the status conference can be a

14   little later in the day, but not very late in the day, say

15   either 11:00 a.m. or maybe 1:00 p.m., then some folks who are

16   flying in would be able to come in that day.  I see

17   somebody -- we haven't consulted or talked about this.  By

18   the way, the Westin Hotel absolutely disagrees with this

19   idea.  Steve Williams apparently may have an argument to the

20   contrary.

21          MR. WILLIAMS:  It is -- I don't want to bother the

22   Court with it, it is the opposite issue for the west-coast

23   people who can't get out.

24          MR. FINK:  If it ain't broke, Your Honor, maybe --

25          THE COURT:  I thought you were going to say a

1    different day and I went back and read the transcript and saw

2    you liked Wednesdays, so we are keeping it on Wednesday, but

3    if it is a different time I certainly could start it at

4    11:00 if that's beneficial to anybody.

5              MR. FINK:  That would be great because some folks

6    could come in that morning that way, and God willing some of

7    the defendants would get stuck coming in and it will be a

8    smaller group.

9              THE COURT:  We will do it at 11:00 then, and we

10   will go -- we are not breaking for lunch but this is only an

11   hour now so probably it will be another hour so that's great.

12   Okay.  That's fine.

13             MR. HERRMANN:  Your Honor, one more point we didn't

14   address in the context of briefing.  Fred Herrmann again.

15   Reply briefs, we didn't address any page extensions relative

16   to replies, and frankly --

17             THE COURT:  A very good point.

18             MR. HERRMANN:  -- we want to bring that to the

19   Court's attention now.

20             We could handle it by approaching the Court later

21   when we get further on in the briefing.

22             THE COURT:  How many pages do you have now on

23   reply?

24             MR. HERRMANN:  We have 25.

25             THE COURT:  25?

```
1              MR. HERRMANN:  Yeah.

2              THE COURT:  25.  What are you asking for?

3              MR. HERRMANN:  It's difficult to gauge, Your Honor,

4   but if you don't mind if I consult for just one moment.

5              (An off-the-record discussion was held.)

6              THE COURT:  40?

7              MR. HERRMANN:  45, Your Honor, if we could have it.

8              THE COURT:  Just one minute.  All right.  You can

9   have 45.

10             MR. HERRMANN:  Thank you, Your Honor.

11             MR. WILLIAMS:  Your Honor, they are getting the

12  same amount of pages for their reply that we have for our

13  opposition, that doesn't seem right so, you know, I didn't

14  want to ask for more but if they think they need 45 I think

15  we should get 55.

16             THE COURT:  Okay.

17             MR. WILLIAMS:  Replies are --

18             THE COURT:  We have 90, reply brief is 45, and your

19  response you want 55?

20             MR. WILLIAMS:  We had 45, we will take 55.

21             THE COURT:  Okay.  I don't have a problem with

22  that.

23             MR. HERRMANN:  Thank you, Your Honor.

24             THE COURT:  90, 55, 45.  Would you put that in the

25  order -- submit an order to that effect for today's date?
```

1          MR. FINK:  Your Honor, at the risk of suggesting

2     the incredibly obvious, this only relates to the indirect

3     cases, the direct cases -- the direct case stays the same in

4     terms of page limits?

5          THE COURT:  Right, the indirect cases where you

6     have the state issues.

7          MR. FINK:  Right.

8          THE COURT:  Right.  Everything else is the same.

9     All right.  Is there anything else?

10          MR. HANSEL:  Not from the direct plaintiffs, Your

11     Honor.

12          THE COURT:  No.  Any defendants?

13          (No response.)

14          THE COURT:  I look at defendants here, but we have

15     defendants out here too, right?  Yeah.  All right.  Thank you

16     very much for coming in.  I appreciate your help.  Again,

17     please, for the next conference, you know, you will get

18     notice to send in the agenda, which you are doing a great

19     job, but if some of you have anything that you want in the

20     agenda when you think of it please make a note of it so that

21     we can be sure that we keep track of this as we go along.

22     Okay.

23          Oh, I have one other issue.  I'm sorry.  Sit down

24     again.  Is there anything -- and, Mr. Fink, I will address

25     this to you regarding the time of attorneys.  Are you keeping

1   track of your time?  I want some kind of an update on time.

2           MR. FINK:  We do that very comprehensively, and

3   Steven Kanner can speak to that.

4           THE COURT:  Okay.  Mr. Kanner.

5           MR. KANNER:  Thank you, Your Honor.  Steve Kanner

6   again.  We have, as I mentioned to you at the outset of this

7   case, instituted a monthly time-collection procedure, all of

8   the attorneys are required, and I mean everyone from the

9   people who are doing document reviews to co-lead counsel,

10  submit time sheets with details on a monthly basis.  Co-lead

11  counsel reviews that time on an occasional basis to determine

12  if things might be out of whack.  So far we are pleased to

13  tell you that for the most part everyone is doing what they

14  are supposed to do and in the amount of time that we have

15  allocated for it.  We have the same process with expenses.

16          THE COURT:  All right.  I would like --

17          MR. KANNER:  I expect that the indirect counsel

18  will have the same issues.

19          THE COURT:  I would like for you, if you would, to

20  submit a summary to the Court of the time and the attorneys.

21  All right.  I'm just curious.  I'm not going to be double --

22  I can tell you, unless there is something that is really

23  outstanding, I'm not double -- I'm not guessing what you

24  should be doing or trying to correct it, I just want to see

25  what it is to this point.

1    MR. KANNER:  And I'm assuming, Your Honor, that

2  would be an under-seal document --

3    THE COURT:  Absolutely.

4    MR. KANNER:  -- or a document filed for the Court's

5  eyes only?

6    THE COURT:  Yes, absolutely.

7    MR. KANNER:  We will be happy to do that.  Does

8  Your Honor wish to have that for each case to date or just

9  for the wire harness, which is the bulk of the time thus far?

10    THE COURT:  I think right now wire harness would be

11  sufficient, and then maybe at our next -- if you could file a

12  follow-up with the other -- with the next four cases by our

13  next status conference.

14    MR. KANNER:  We can do that, Your Honor, it is well

15  within the computer's ability to put something out.  I assume

16  you are looking for a general time allocation as opposed --

17    THE COURT:  Yes, I want a summary.  I want to know

18  generally what is going into this and who is doing it.

19    MR. KANNER:  Very well, Your Honor.

20    THE COURT:  Okay.  Thank you.  All right.  Thank

21  you very much.  Have a safe trip back.

22    THE CASE MANAGER:  All rise.  Court is in recess.

23    (Proceedings concluded at 11:45 a.m.)

24                              _   _   _

25

 1                          *CERTIFICATION*

 2

 3              I, Robert L. Smith, Official Court Reporter of

 4     the United States District Court, Eastern District of

 5     Michigan, appointed pursuant to the provisions of Title 28,

 6     United States Code, Section 753, do hereby certify that the

 7     foregoing pages comprise a full, true and correct transcript

 8     taken in the matter of In Re:  Automotive Wire Harness

 9     Systems Antitrust Litigation • 12-mdl-02311, on Wednesday,

10     March 13, 2013.

11

12

13                          *s/Robert L. Smith*
                            Robert L. Smith, RPR, CSR 5098
14                          Federal Official Court Reporter
                            United States District Court
15                          Eastern District of Michigan

16

17

18     Date:  03/28/2013

19     Detroit, Michigan

20

21

22

23

24

25