## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

_____

THIS DOCUMENT RELATES TO
ALL ACTIONS

_____

Master File No. 12-md-02311
Hon. Marianne O. Battani
Mag. Judge Mona K. Majzoub

## MOTION AND BRIEF OF THE UNITED STATES TO INTERVENE AND FOR A TEMPORARY AND LIMITED STAY OF CERTAIN DISCOVERY

### I.     INTRODUCTION

The United States of America, through the Antitrust Division of the United

States Department of Justice ("the Antitrust Division" or "the Division"), submits

this Motion and Brief, supported by the separately-filed under seal *ex parte*

Declaration of Antitrust Division Trial Attorney Mark Grundvig, to Intervene and

for a Temporary and Limited Stay of Certain Discovery in the above-captioned

matter.  The Antitrust Division respectfully submits that the integrity of its ongoing

criminal investigation into the automotive parts industry and any resulting criminal

prosecutions resulting from that investigation may be seriously compromised if the

Court does not enter a temporary and limited stay of certain discovery in these

consolidated civil cases, including certain document discovery and depositions

involving the merits.  The Division requests this temporary and limited stay of

certain discovery for a period of one year, at which time it requests that the Court revisit the stay to determine whether it should be modified.

The Antitrust Division requests that, in support of its Motion, the Court permit it to file *ex parte* and under seal the Declaration of Antitrust Trial Attorney Mark Grundvig, as it contains highly-sensitive information and information subject to the provisions of Federal Rule of Criminal Procedure 6(e).

Plaintiffs do not oppose the Division's request to intervene for the purposes of seeking a temporary and limited stay of certain discovery. The Division has received no indication that any defendant opposes the Division's intervention. The three plaintiffs groups generally do not oppose the Division's request for a stay, with the exception that they believe it should be revised after six months, not the one year requested by the Division.

## II. FACTUAL BACKGROUND

### A. The Antitrust Division's Investigation

The Antitrust Division has been conducting an ongoing and wide-ranging investigation in this District relating to the automotive parts industry. It is investigating violations of federal laws, including antitrust and related laws, as a result of bid rigging and price fixing of automotive parts sold by suppliers to Original Equipment Manufacturers ("OEMs"), such as Toyota and Honda, for installation into vehicles sold in the United States.

To date, the investigation has resulted in guilty pleas by nine corporations which do business in the United States and elsewhere, and the imposition of corporate criminal fines of over $800 million dollars.  In addition, fourteen individuals have entered guilty pleas and have been sentenced to prison terms ranging from a year and one day to two years.  Many of these individuals are foreign citizens who have agreed to surrender themselves and serve their sentences in the United States.

The Antitrust Division has publicly announced the following corporate plea agreements involving the following products:

| **Corporation** | **Announcement Date** | **Products** |
|---|---|---|
| Furukawa | 11/11/2011 | Wire harnesses |
| Denso | 03/12/2012 | Electronic control units, heater control panels |
| Yazaki | 03/12/2012 | Wire harnesses, instrument panel clusters, fuel senders |
| GSE | 05/12/2012 | Speed sensor wire assemblies |
| Fujikura | 06/12/2012 | Wire harnesses |
| Autoliv | 06/12/2012 | Seatbelts, airbags, steering wheels |
| TRW | 09/12/2012 | Seatbelts, airbags, steering wheels |
| Nippon Seiki | 11/12/2012 | Instrument panel clusters |
| Tokai Rika | 12/12/2012 | Heater control panels |

The Division's investigation is highly complex, wide-ranging in scope, and likely will involve investigations and prosecutions of additional corporations and individuals.

**B.**     **The Civil Class Actions**

Shortly after the Antitrust Division publicly announced each of the corporate

plea agreements set forth above, civil class actions were filed relating to each of

the respective products.  In addition, civil class actions were filed relating to other

auto parts, including starters, alternators, radiators, windshield wipers, anti-

vibration rubber, and bearings, subsequent either to public announcements of plea

agreements reached with *individual* defendants by the Antitrust Division or

announcements of investigations regarding certain parts by law enforcement

agencies in other jurisdictions.  All of the class actions have been consolidated

with this Court for pretrial purposes.

In the first of the consolidated class actions - which involve wire harnesses –

the plaintiffs contacted the Division in the summer of 2012 to determine whether

the Division would object if the plaintiffs sought an order from the Court requiring

the production of documents provided to the Division by any civil defendant who

had entered a criminal plea agreement with the Division.  The plaintiffs intended to

obtain these documents directly from any such defendant.  At that time, because

the Division's investigation into the wire harnesses conspiracy was substantially

completed, the Division indicated that it would not object to such a request.  This

Court entered an Order on July 10, 2012 in the Wire Harness Cases requiring any

civil defendant that had entered a criminal plea agreement with the Division to

produce the documents that each had produced to the Division as part of the Division's investigation (including translations of any foreign documents).

Over the next several months, a similar Order was entered in the consolidated civil class actions relating to other products, including heater control panels (HCPs), instrument panel clusters (IPCs), and fuel senders (hereinafter, the wire harness, HCP, IPC and fuel sender civil cases referred to at times as "the Initial Product Cases"). Although the Division was unaware until months afterwards that the Court had extended its initial discovery Order to the HCP, IPC and fuel sender cases, because the Division's investigation into those conspiracies is also substantially completed, the Division does not object to the production to plaintiffs of documents relating to those products.

Recently, the Court indicated that a similar Order would be entered in the consolidated civil class cases involving Occupant Safety Systems ("OSS") (comprised of seatbelts, airbags, and steering wheels). Because the Division's investigation of the OSS conspiracy(ies) is not yet substantially completed, the Division objects to the production to plaintiffs by pleading defendants of documents that were given to the Division relating to OSS products, as well as documents relating to products included in any civil cases filed subsequent to the OSS product cases (including cases involving bearings, alternators, anti-vibrational rubber parts, windshield wipers, radiators and starters) (hereinafter the OSS and

subsequently-filed civil cases referred to at times as "the Subsequent Product Cases"), or any civil auto parts cases filed in the future.  There is a substantial likelihood that such discovery will interfere with the Division's extensive and on-going criminal investigation and prosecutions.

Although no depositions have been noticed in any of the civil cases yet, the Division seeks a stay of depositions as well because they pose an even greater potential to interfere with the Division's criminal investigation and prosecutions. This request applies to the Initial Product Cases and Subsequent Product Cases, as merits depositions at this point in time would likely compromise anticipated criminal litigation.

## III.   ARGUMENT

None of the parties to the Consolidated Civil Class Actions have indicated that they oppose the Division's Motion to Intervene for the limited purpose of seeking a temporary and limited stay of certain discovery.

### A.   Intervention is Warranted Under Rule 24 of the Federal Rules of Civil Procedure and is Unopposed

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, any person may intervene as of right in an action when that person "claims an interest relating to the property or transaction that is the subject of the action, and [ ] is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect [its] interest .…"  Fed. R. Civ. P. 24(a)(2).  Alternatively, Rule 24(b)

6

permits intervention when an applicant "has a claim or defense that shares with the main action common questions of law or fact."  Fed. R. Civ. P. 24(b)(1)(B). Where the government "anticipate[s] bringing related criminal charges against one or more defendants to a civil action, 'it is well established' that such parties may intervene to seek a stay of discovery."  *NAGE v. Mulligan*, 849 F. Supp.2d 167, 172 (D. Mass. 2012) (citing *SEC v. Downe*, No. 98-CV-4092-PKL, 1993 U.S. Dist. LEXIS 753, at *42 (S.D.N.Y Jan. 26, 1993)).

Federal courts routinely grant motions made by prosecuting authorities to intervene in civil actions for the limited purpose of seeking a stay of discovery. *See, e.g., In re: Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2010 U.S. Dist. LEXIS 113796, at *48 (D. Kan. Oct. 21, 2010) (collecting cases); *In re Flash Memory Antitrust Litig.,* 2007 WL 3119612, at *1 (N.D. Cal.) (citing cases). Intervention is appropriate under either Rule 24(a) or 24(b) where the government seeks to stay civil discovery pending completion of a related criminal investigation.  *See Philip Morris, Inc. v. Heinrich*, No. 95-CV-0328-LMM, 1996 U.S. Dist. LEXIS 9156, at *57-58 (S.D.N.Y.  June 28, 1996) ("a district court does not abuse its discretion in allowing intervention under either of the provisions of Rule 24").  In addition, "[c]ourts that have addressed a motion to intervene for the limited purpose of seeking a stay in a civil action filed on behalf of the United States have allowed intervention where the civil action shares the same common

questions of fact as a parallel criminal proceeding." *Ashworth v. Albers Med., Inc.*,
229 F.R.D. 527, 529 (S.D.W. Va. 2005). The government has "a discernible
interest in intervening in order to prevent discovery in [a] civil case from being
used to circumvent the more limited scope of discovery in [a] criminal matter." *Id.*
at 532; *see also Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) (noting
that "a trial judge should give substantial weight to [the public interest in law
enforcement] in balancing the policy against the right of a civil litigant to a
reasonably prompt determination of his civil claims or liabilities").

Here, as in the cases cited above, intervention is appropriate under both
sections of Rule 24. The Division has a compelling interest in protecting the
integrity of its criminal investigation, protecting the secrecy that accompanies any
grand jury proceedings, and preventing evidence gathered during its investigation
from being disclosed prematurely or inappropriately. *Urethane*, at *48. It is
indisputable that there is a substantial overlap between the federal criminal
investigations and the claims in the Consolidated Civil Class Cases. In fact, the
class actions are simply the civil counterpart to the Division's criminal
investigations and prosecutions.

In order to intervene, the party seeking to do so must act in a timely manner.
*See*, *e.g.*, *NAACP v. New* York, 413 U.S. 345, 365 (1973). The timeliness of a
motion to intervene is determined from the totality of the circumstances. Id. at

8

366. The Division's request is timely. The civil cases were not consolidated and transferred to this court until February 7, 2012. The Division was aware that the Court was permitting document discovery with respect to wire harnesses, but declined to intervene at the time because the criminal investigation relating to wire harnesses was largely resolved against the corporate defendants. When the Court entered a similar Order in the other Initial Product Cases, the Division declined to intervene for similar reasons. At that time, the Division concluded that any intervention would be considered premature. However, when the Court approved document discovery to begin in the OSS cases, the Division immediately began to meet and confer with the parties in the civil cases and has sought to intervene shortly thereafter. To the Division's knowledge, no discovery in the OSS case or any cases filed after the OSS case has occurred. The Division's intervention is therefore timely.

   **B.**   **The Integrity of the Division's Criminal Investigation and Any Resulting Prosecutions Could Be Seriously Compromised if a Temporary and Limited Stay of Certain Discovery is Not Ordered**

The Division is seeking a temporary and limited stay of the following discovery: (1) document production by defendants in the Subsequent Product Cases and any future civil cases; (2) depositions in all of the Consolidated Civil Class Cases, including the Initial Product Cases, the Subsequent Product Cases, and any future cases; and (3) any other discovery in the Subsequent Product Cases

and future civil cases that goes to the merits of those cases. The Division seeks the temporary stay for a period of one year. The Division proposes to update the Court regarding the status of the criminal investigation and prosecutions at the end of that period.[1]

The Division also requests that the Court permanently prohibit discovery of any type, in any of the civil cases, that seeks to obtain information about the Division's investigation or any grand jury investigation.

### 1. The Court Has Wide Discretion to Stay Civil Proceedings Where There is a Parallel Criminal Investigation

A district court has the discretion to stay proceedings pursuant to its inherent power to control its docket. *See Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936); *Philip Morris, Inc.,* 1996 U.S. Dist. LEXIS 9156, at *58; *SEC v. Shanahan*, No. 4:07-CV-1262-JCH, 2007 U.S. Dist. LEXIS 80309, at *4 (E.D. Mo. Oct. 30, 2007). When both civil and criminal proceedings arise out of the same or related transactions, the government is entitled to a stay of discovery until the disposition of the criminal matter. *See Gabrilowitz v. Newman*, 582 F.2d 100, 102 (1st Cir. 1978) (*citing U.S. v. Kordel*, 397 U.S. 1, 12 n.25); *Pfizer v. Albers Med., Inc.*, 225 F.R.D. 591, 592 (W.D. Mo. 2004) (holding that the government was entitled to intervene in civil suit for the limited purpose of seeking a stay of

---

[1] The Division does not oppose document production in the Initial Product Cases because the criminal investigations relating to these products are largely completed. However, the Division requests that the Court Order that any documents relevant to the Initial Product Cases that also discuss products not involved in the Initial Product Cases either be withheld or redacted by defendants.

discovery, where the government's criminal case and the civil suit overlapped in large measure); *SEC v. Kozlowski*, 2003 U.S. Dist. LEXIS 6261, at *4 (S.D.N.Y. April 15, 2003) (noting that federal courts have the power to manage civil litigation "to avoid interference with criminal prosecutions") (quoting *Degen v. United States,* 517 U.S. 820, 827 (1996)).

Even where no indictment has been issued, federal district courts frequently grant stays of discovery in civil cases to protect related criminal investigations. For example, in *Walsh Securities v. Cristo Property Management*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998), although no indictment had been handed down, the government had been conducting an active investigation that included executing search warrants and issuing subpoenas. The district court concluded that there was a strong case for a stay and granted the requested six month stay of all interrogatories and depositions in the parallel civil action. *Id.; see also Zavatsky v. O'Brien*, No. 11-11850-NMG, 2012 U.S. Dist. LEXIS 141843, at *30-37 (D. Mass. Sept. 30, 2012) (granting stay of discovery in civil suit during parallel criminal investigation); *U.S. v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 658-59 (D.R.I. 1987) (staying civil action while the Department of Justice considered bringing criminal proceedings based upon certain allegations that were the subject matter of the civil proceedings); *SEC v. Downe*, No. 92-CIV-4092, 1993 U.S. Dist. LEXIS 753, at *51-52 (S.D.N.Y. Jan. 26, 1993) (granting two month pre-

indictment stay of discovery in civil matter, and adding that if an indictment relating to the subject matter of the civil suit was filed within that time, court would extend the stay until the conclusion of any prosecution brought as a result of the investigation).

Similarly, in *SEC v. Offill*, No. 3:07-CV-1643-D, 2008 U.S. Dist. LEXIS 28977 (N.D. Tex. Apr. 9, 2008), even though no indictment had yet been issued, the government moved to stay all discovery on the grounds that the defendants would be able to acquire evidence, including testimony and documents, to which they would not be entitled in a criminal proceeding. *Id.* at *2-4. The court stayed discovery to a date certain, but provided that if an indictment resulted by that time, the stay would continue until the end of the criminal proceedings. *Id.* at *14; s*ee also SEC v. HGI, Inc.,* No. 99-CV-3866, 1999 U.S. Dist. LEXIS 17377, at *11 (S.D.N.Y. Nov. 9, 1999) (granting the government's motion to intervene and stay discovery despite the fact that an indictment had not yet been returned).

District courts have granted stays of discovery in civil cases specifically to protect Antitrust Division investigations prior to the issuance of an indictment. For example, in *In re Ready-Mixed Concrete,* the court limited discovery to certain classes of documents on the ground that unlimited discovery would have an adverse effect on the ongoing grand jury investigation. *In re Ready-Mixed Concrete Price Fixing Litig.,* No. 05-CV-979 (S.D. Ind. Nov. 28, 2005) (order

granting stay of discovery) (Attachment A).  There, the stay remained in effect for approximately one year.  *See In re Ready-Mixed Concrete Price Fixing-Litig*., No. 05-CV-979 (S.D. Ind. Dec 19, 2006) (order lifting stay of discovery) (Attachment B).

In *TFT-LCD (Flat Panel) Antitrust Litig*ation, No. 07-DV-1827 (N.D. Cal. Sept. 25, 2007), the court stayed certain civil discovery, concluding that the production of grand jury documents "would reveal the nature, scope and direction of the ongoing criminal investigation, as well as the identities of potential witnesses and targets."  *Id*. at 2 (Attachment C).  That order, although modified, continued the stay for an additional seven months and applied to discovery relating to "understandings, agreements, contacts, meetings or communications by and between defendants," as well as depositions and interrogatories relating to any party's or witness's communications with the government.  *In re: TFT-LCD (Flat Panel) Antitrust Litig*., No. 07-CV 1827 (N.D. Cal. May 27, 2008) (order modifying stay of discovery) (Attachment D).  Similarly, in *Laura Albee v. Korean Air Lines*, the district court, finding that the public interest in the related grand jury investigation outweighed the civil parties' interest in discovery, granted a stay of discovery of merits-related evidence, including documents, interrogatories and depositions, for six months.  *See Laura Albee v. Korean Air Lines Co. Ltd.,* No. 07-CV-5107 (C. D. Cal Oct. 24, 2008) (Attachment E).

In more recent cases, federal courts have granted similar requests by the Division to limit certain civil proceedings that threatened to conflict with federal criminal investigations and prosecutions.  For example, in *In re Municipal Derivatives Antitrust Litigation*, No. 08-CV-2516 (S.D.N.Y. 2011) (Attachment F), the magistrate judge limited indefinitely the witnesses who could be deposed by Plaintiffs at the request of the Division so as not to interfere with its bid-rigging criminal investigation and prosecutions.  Relating to the same criminal investigation, the federal district court in Alabama stayed several depositions at the request of the Division for six months to prevent interference with the same federal investigation and prosecutions.  *See SEC v. LeCroy*, No. 09-2238 (N.D. Ala. 2011) (Attachment G).

The nature of the Division's auto parts investigation provides an even more compelling basis than the cases above for temporarily staying certain civil discovery.

> **2.    The Public Interest, the Interests of the Class Plaintiffs and the Defendants, and the Impact on the Court Weigh in Favor of a Temporary Stay of Certain Discovery**

In determining whether to grant a stay of civil discovery during a criminal investigation, the district court should do so when the interests of justice require such action.  *See In re Rothstein Rosenfeldt Alder, P.A.*, No. 11-61338-CIV-COHN, 2011 U.S. Dist. LEXIS 71126, at *5-6 (S.D. Fla. July 1, 2011).  The most

significant issue for a Court to assess in determining whether to grant a stay of discovery is the degree of overlap between the civil cases and the criminal investigation.  *See Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (quoting Judge Milton Pollack, *Parellel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y.)).  Judge Pollack noted that, if the threshold issue of overlap is established, the effect on the public interest is "perhaps the most important factor in the equation, albeit the one hardest to define."  *Parallel Civil and Criminal Proceedings*, 129 F.R.D. at 205.

In addition to determining the extent of overlap between the criminal investigation and the civil case, a court "must balance the competing interests of the litigants, non-parties, the public interest and the convenience of the courts." *Philip Morris, Inc.*, 1996 U.S. Dist. LEXIS 9156, at *58 (citing *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992)); *see also SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1069 (C.D. Cal. 2008) (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995) (listing factors)).

> a.   *Overlap of the Criminal Investigation and the Civil Cases*

It is indisputable that the civil cases are an outgrowth of the Division's criminal investigations and the resulting corporate and individual plea agreements. In their Consolidated Amended Complaint (CAC) in the Wire Harnesses case, for example, plaintiffs detailed the Division's investigation into anticompetitive

15

activities, the subsequent charges, the conduct identified in the public plea

agreements, and the guilty pleas entered by corporate and individual defendants.

CAC Pars. 115-137.   The Court itself has referred to the criminal investigation in

denying defendants' motions to dismiss.  *See* Opinion and Order Denying

Collective Defendants' Motion to Dismiss Direct Purchaser Actions, at 10-11.  The

civil cases are the civil counterpart of the Division's criminal investigation and the

resulting criminal plea agreements that the Division has obtained.  The common

facts, issues, defendants, witnesses, documents, commerce and victims compel a

finding that the overlap between the criminal investigation and the civil cases

creates an enormous potential for the civil cases to interfere with the criminal

investigation and prosecutions.

### b.    *Public Interest*

Numerous federal courts have recognized that the public interest in the

prosecution of a criminal case is entitled to precedence over a related civil case.

*See, e.g., Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962);  *SEC v.*

*Nicholas*, 569 F. Supp. 2d 1065, 1069-71 (C.D. Cal. 2008); *U.S v. Hugo Key &*

*Son, Inc.,* 672 F. Supp. 656, 658 (D.R.I. 1987).  Courts routinely grant

government–requested stays of civil discovery pending the outcome of a closely-

related criminal proceeding, in part to prevent the use of civil discovery rules from

being used to circumvent the more limited rules of criminal discovery.  *See*

*Campbell*, 307 F.2d at 487 n.12;  *In re: Urethane Antitrust Litig*., No. 04-MD-1616-JWL, 2010 U.S. Dist. LEXIS 113796, at *48 (D. Kan. Oct. 21, 2010) (collecting cases); *LaRouche Campaign v. FBI*, 106 F.R.D. 500 (D.Mass. 1985). The rules of criminal discovery protect the integrity of criminal proceedings and it is in the public's interest that criminal proceedings remain untainted by perjury, manufactured evidence, witness intimidation and unfairness due to the limited ability of the government to discover evidence from potential targets and defendants.  *See, e.g., Campbell*, 307 F.2d at 487; *Bureerong v. Uvawas*, 167 F.R.D. 83, 86-87 (C.D. Cal. 1996); *SEC v. Mersky,* 1994 U.S. Dist. LEXIS 519, at *5 (E.D. Pa. Jan 25, 1994); *In re Ivan F. Boesky Sec. Litig*., 128 F.R.D. 47, 49-50 (S.D.N.Y. 1989).

Documents

Here, there is a substantial public interest in temporarily staying document discovery in the Subsequent Product Cases and the future civil cases.  First, in the Subsequent Product Cases and future civil cases, production of documents provided to the Division by defendants who entered a plea agreement would provide a roadmap regarding the focus and direction of any on-going grand jury investigation into the products involved in those cases.  Although the documents were in existence prior to the criminal proceedings, the production by a defendant of specific documents that it gave to the Division can provide clear indications to

other potential criminal defendants, both corporate and individual, regarding the focus of the investigation and the inner workings of any grand jury. This knowledge could provide a defendant with the opportunity to engage in activities that could undermine the Division's investigation and prosecutions, such as destruction of documents or interference with witnesses.

Second, all of the Subsequent Product Cases involve products, as well as corporations and individuals, that are still being actively investigated by the Division. Some of these companies are defendants in the civil cases. If documents were order to be produced, presumably these companies, who are still being criminally investigated, would be permitted access to every other co-defendant's documents that are produced to the civil plaintiffs. This would allow a company that was still the subject of the criminal investigation to utilize the civil discovery process to obtain information that otherwise would not be available to that defendant company in the criminal investigation, or would make information available to it before the company was entitled access to it under the Federal Rules of Criminal Procedure. In this way the corporate defendant could discover the witnesses against it, the documents produced by other companies that implicate it, and even be able to determine the identity of any amnesty applicant which implicated the company in the conspiracy. This would be at odds not only with the Federal Rules of Criminal Procedure, but also the policies of the Division's

Amnesty Program. A high percentage of the Division's cases are initiated through its Amnesty Program, which is successful in part because the identity of the amnesty applicant remains confidential. Providing a defendant access to information prematurely also creates the potential for witness intimidation, witness tampering, obstruction (such as document destruction), perjury, and other conduct that would interfere with the Division's investigation.[2]

Even if defendants in the civil cases were required only to produce relevant documents generally, as opposed to the specific documents they gave to the Division, this would address only the concern about discovering the focus of the criminal investigation. It would not address the remaining problem of making documents available to co-conspirator companies that could use them to defend themselves in any criminal prosecution.

Third, any civil litigation that occurs simultaneously with the criminal investigation presents the opportunity for interference or conflict with the criminal investigation and prosecution as a result of the different objectives of the Division and the civil plaintiffs. As just one example, documents produced by one corporate defendant may identify a co-conspirator who is being investigated by the Division but is unaware that it is a subject. The Division might be planning a raid, readying subpoenas, engaging in consensual monitoring of telephone calls, or

---

[2] These are just some of the reasons that, for example, 18 U.S.C. § 3500 does not permit discovery by defendants of statements of government witnesses until the witness has testified on direct examination at trial.

utilizing other confidential investigative techniques.  If plaintiffs were to make the identity of that company public by, for example, filing a complaint against that company based on plaintiffs' review of documents produced to it by a co-conspirator, this would directly interfere with the Division's investigation. Similarly, plaintiffs or other parties could use documents in interviews, depositions, or even civil trials, with witnesses in ways that create false memories or subsequently could cause confusion about the extent of a witness's knowledge at any particular point in time.   This may compromise the value of such witnesses with valuable information in any criminal prosecution.

There are many ways that production of documents in the Subsequent Product Cases and future civil cases could interfere with the Divison's investigation.  An Order temporarily staying this discovery is the best way to address this potential interference.

<u>Depositions</u>

In addition to all of the concerns set forth above, depositions pose an even greater threat of interference with the Division's criminal investigation and subsequent prosecutions, a danger that could impact the Initial Product Cases, Subsequent Product Cases and future civil cases. For example, it is not uncommon in a civil case that flows from a criminal investigation for witnesses to be asked detailed questions about their involvement with a grand jury, including whether

they appeared as a witness, what they were asked, and what they told the grand jury.[3]  This undoubtedly would compromise and conflict with any grand jury investigation, as well as the Division's investigation.  And while a protective order in the civil cases may limit the type of questions that may be *asked*, it cannot restrict the type of information that a witness divulges in *response* to questions.  This creates the opportunity for the release of information relating to the Division's and any grand jury's investigation.  It is not possible for the Division to monitor all civil depositions to ensure compliance with any protective order.

Similarly, a particular witness may have knowledge about illegal activities relating to more than one product.  Questioning a witness during a deposition in a case that relates to one product could lead to discovery of information about other products or co-conspirators that the Division is still investigating.  Again, it would be impossible to create a workable protective order that could prevent this situation.

As with the documents, a defendant may seek to utilize civil depositions, even if noticed by plaintiffs, to obtain information to which it would not be entitled in a criminal prosecution, thereby discovering the key witnesses and evidence against it even prior to the initiation of any criminal proceedings.  As well, a defendant may seek to depose a likely prosecution witness during the civil case in

---

[3]  Of course,  Fed. R. Crim. P. 6(e) permits a grand jury witness to disclose his or her own grand jury testimony.

order to obtain admissions or concessions that could be used to undermine the prosecution's criminal case.

The public interest in permitting the criminal investigations and prosecutions to proceed ahead of the civil proceedings is overwhelming, and compels limitations on the extent and timing of discovery in the civil cases.

      c.    *Interests of the Class Plaintiffs, Defendants, and the Impact on the Court*

Other factors the Court should consider in deciding whether to grant a stay of discovery are the interests of the plaintiffs and the defendants, as well as the impact on the Court.  Generally, plaintiffs have an interest in promptly resolving a civil claim by gathering information through the discovery process.  *See Mersky,* 1994 U.S. Dist. LEXIS 519, at *9 (E.D. Pa. Jan 25, 1994); *Hugo Key,* 672 F. Supp. at 658.  However, in contesting a stay, a plaintiff must establish more prejudice than simply a delay in its right to expeditiously pursue its claim.  *See In re Adelphia Commc'ns Secs. Litig.*, 2003 WL 22358819, No. 02-1781, at *9-11 (E.D. Pa. May 14, 2003).

The Division does not wish to unduly impede the civil proceedings.  As such, the Division's request for a temporary stay of discovery has been tailored to be as narrow as possible; the Division is not seeking a blanket stay.  The Division is limiting its request for a temporary stay to critical evidence that, if disclosed, threatens the integrity of the Division's investigation and any resulting criminal

prosecutions.  Given that the Division is not seeking a stay of document production in the Initial Product Cases, the parties have plenty of evidence to evaluate and work with during the pendency of any stay.[4]  Moreover, the Division also has no objection to non-merits discovery proceeding in any of the civil cases, including Rule 30(b)(6) depositions.

Any prejudice that would be caused by a temporary stay would be more than offset by the efficiencies gained as a result of the resolution of issues in the criminal prosecutions that would not need to be relitigated in the civil cases.  *See*, *e.g.*, *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 57-58 (E.D. Pa. 1980) ("if the government succeeds in the prosecution of the criminal case, the parties and [the] court will likely be relieved of the burden attendant upon the plaintiffs' need to prove antitrust liability").  Resolution of liability and other issues during the criminal prosecutions, or pursuant to plea agreements, will eliminate the need for parties in the civil cases to spend time and resources on these issues.  For example, there may be some preclusive impact of a guilty plea in the criminal cases on liability issues in the civil cases.  The Division submits that the benefits that would flow to the civil litigants as a result of the temporary stay of discovery outweigh any minor potential prejudice they may suffer.  Further, a temporary stay of discovery at this juncture will streamline

---

[4]  It is the Division's understanding that Motions to Dismiss have been filed and ruled upon only in the Wire Harnesses cases.

discovery once the stay is lifted, to the benefit of both Class Plaintiffs and

Defendants.

A temporary stay will also avoid the inevitable need for the Court to address

conflicts that otherwise would arise with simultaneous criminal and civil litigation,

such as the need for the Court to address invocation of Fifth Amendment

protections in civil depositions by witnesses who are still subject to criminal

prosecution by the Division. *See, e.g., SEC v.Healthsouth Corp*., 261 F. Supp. 2d

1298, 1325, 1331 (N.D. Ala. 2003) (when a number of witnesses assert their Fifth

Amendment rights, civil discovery is "all but meaningless," and "the potential for

an unjust result outweighs the efficiencies gained by allowing the case to

proceed").  Temporarily staying discovery will permit the Court to resolve the civil

cases in a much more efficient manner once a stay in the criminal prosecutions is

no longer necessary.

## IV.   CONCLUSION

The enormous public interest in permitting criminal prosecutions to be

resolved without interference from civil litigation, the lack of prejudice to the

parties in the civil litigation, and the substantial benefits to the Court of permitting

the criminal prosecutions to move forward unfettered all support the entry of a

temporary, limited stay of discovery in the civil cases to avoid interference with

the criminal prosecutions.  For the reasons stated herein, the Division respectfully

requests that its motion to intervene and for a temporary stay of discovery be granted for one year from the date of the Court's Order.  The Division's request poses no substantial delay or prejudice to the parties or the Court in the civil cases, while simultaneously protecting the Division's and the public's interests in the current auto parts investigations and prosecutions.

BARBARA L. McQUADE
United States Attorney

Local Counsel:                              w/consent of Paul T. Gallagher
s/Peter A. Caplan                           PAUL T. GALLAGHER
PETER A. CAPLAN                             Trial Attorney
Assistant U.S. Attorney                     Antitrust Division
211 W. Fort St., Suite 2001                 United States Department of Justice
Detroit, Michigan  48226                    450 5th Street, N.W.
(313) 226-9784                              Suite 11300
P30643                                      Washington, DC  20530
peter.caplan@usdoj.gov                      (202) 532-4570
                                            paul.gallagher2@usdoj.gov

Dated:  July 8, 2013

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

---

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

Master File No. 12-md-02311
Honorable Marianne O. Battani
Mag. Judge Mona K. Majzoub

---

THIS DOCUMENT RELATES TO
ALL ACTIONS

---

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2013, I caused the foregoing Motion in Brief

of the United States to Intervene and for a Temporary and Limited Stay of Certain

Discovery to be served upon Direct Purchaser Interim Lead and Liaison Counsel,

Automobile Dealer Interim Lead and Liaison Counsel, and End-Payor Interim

Lead and Liaison Counsel, and Defendants' Counsel, by filing said document via

ECF in accordance with Case Management Order No. 1.

BARBARA L. McQUADE
United States Attorney

Local Counsel:
s/Peter A. Caplan
PETER A. CAPLAN
Assistant U.S. Attorney
Detroit, Michigan  48226
(313) 226-9784
peter.caplan@usdoj.gov

w/consent of Paul T. Gallagher
PAUL T. GALLAGHER,
Trial Attorney, Antitrust Division
U.S. Department of Justice
Washington, DC  20530
(202) 532-4570
paul.gallagher2@usdoj.gov