1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MICHIGAN
2                    SOUTHERN DIVISION

3                      —   —   —

4    IN RE:  AUTOMOTIVE PARTS          Master File No. 12-md-02311
     ANTITRUST LITIGATION              Hon. Marianne O. Battani
5
     _____/
6

7                    **STATUS CONFERENCE**

8        **BEFORE THE HONORABLE MARIANNE O. BATTANI**
                **United States District Judge**
9         **Theodore Levin United States Courthouse**
                **231 West Lafayette Boulevard**
10                   **Detroit, Michigan**
               **Wednesday, July 10, 2013**
11

12   APPEARANCES:

13   For Direct Purchaser Plaintiffs:

14        DOUGLAS ABRAHAMS
          **KOHN, SWIFT & GRAF, P.C.**
15        One South Broad Street, Suite 2100
          Philadelphia, PA  19107
16        (215) 238-1700

17        THOMAS C. BRIGHT
          **GOLD, BENNET, CERA & SIDENER, L.L.P.**
18        595 Market Street, Suite 2300
          San Francisco, CA  94105
19        (415) 777-2230

20        WILLIAM G. CALDES
          **SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.**
21        1818 Market Street, Suite 2500
          Philadelphia, PA  19103
22        (215) 496-0300

23

24        *To obtain a copy of this official transcript, contact:*
               *Robert L. Smith, Official Court Reporter*
25          *(313) 964-3303 • rob_smith@mied.uscourts.gov*

```
 1  APPEARANCES: (Continued)

 2  For Direct Purchaser Plaintiffs:

 3       JEFFREY CORRIGAN
         SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
 4       1818 Market Street, Suite 2500
         Philadelphia, PA  19103
 5       (215) 496-0300

 6       DAVID H. FINK
         FINK & ASSOCIATES LAW
 7       100 West Long Lake Road, Suite 111
         Bloomfield Hills, MI  48304
 8       (248) 971-2500

 9       GREGORY P. HANSEL
         PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.
10       One City Center
         Portland, ME  04112
11       (207) 791-3000

12       JONATHAN M. JAGHER
         SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
13       181 Market Street, Suite 2500
         Philadelphia, PA  19103
14       (215) 496-0300

15       STEVEN A. KANNER
         FREED, KANNER, LONDON & MILLEN, L.L.C.
16       2201 Waukegan Road, Suite 130
         Bannockburn, IL  60015
17       (224) 632-4502

18       JOSEPH C. KOHN
         KOHN, SWIFT & GRAF, P.C.
19       One South Broad Street, Suite 2100
         Philadelphia, PA  19107
20       (215) 238-1700

21       WILLIAM H. LONDON
         FREED, KANNER, LONDON & MILLEN, L.L.C.
22       2201 Waukegan Road, Suite 130
         Bannockburn, IL  60015
23       (224) 632-4504

24

25
```

```
 1   APPEARANCES: (Continued)

 2   For Direct Purchaser Plaintiffs:

 3        JASON J. THOMPSON
          SOMMERS SCHWARTZ, P.C.
 4        2000 Town Center, Suite 900
          Southfield, MI  48075
 5        (248) 355-0300

 6        RANDALL B. WEILL
          PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.
 7        One City Center
          Portland, ME  04112
 8        (207) 791-3000

 9
     For End-Payor Plaintiffs:
10
          WARREN T. BURNS
11        SUSMAN GODFREY, L.L.P.
          901 Main Street, Suite 5100
12        Dallas, TX  75202
          (214) 754-1928
13
          LAUREN CRUMMEL
14        THE MILLER LAW FIRM, P.C.
          950 West University Drive, Suite 300
15        Rochester, MI  48307
          (248) 841-2200
16
          FRANK C. DAMRELL
17        COTCHETT, PITRE & McCARTHY, L.L.P.
          840 Malcolm Road
18        Burlingame, CA  94010
          (650) 697-6000
19
          E. POWELL MILLER
20        THE MILLER LAW FIRM, P.C.
          950 West University Drive, Suite 300
21        Rochester, MI  48307
          (248) 841-2200
22
          ALYSON OLIVER
23        OLIVER LAW GROUP
          950 West University Drive, Suite 300
24        Rochester, MI  48307
          (248) 327-6556
25
```

```
 1    APPEARANCES: (Continued)

 2    For End-Payor Plaintiffs:

 3          BERNARD PERSKY
            ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
 4          601 Lexington Avenue, Suite 3400
            New York, NY  10022
 5          (212) 9980-7404

 6          HOLLIS L. SALZMAN
            ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
 7          601 Lexington Avenue, Suite 3400
            New York, NY  10022
 8          (212) 980-7405

 9          STEVEN N. WILLIAMS
            COTCHETT, PITRE & McCARTHY, L.L.P.
10          840 Malcolm Road
            Burlingame, CA  94010
11          (650) 697-6000

12

      For Dealership Plaintiffs:
13
            DANIEL COHEN
14          CUNEO, GILBERT & LaDUCA, L.L.P.
            507 C Street NE
15          Washington, D.C.  20002
            (202) 789-3960
16
            JONATHAN W. CUNEO
17          CUNEO, GILBERT & LaDUCA, L.L.P.
            507 C Street NE
18          Washington, D.C.  20002
            (202) 789-3960
19
            BRENDAN FREY
20          MANTESE, HONIGMAN, ROSSMAN & WILLIAMSON, P.C.
            1361 East Big Beaver Road
21          Troy, MI  48083
            (248) 457-9200
22
            GERARD V. MANTESE
23          MANTESE, HONIGMAN, ROSSMAN & WILLIAMSON, P.C.
            1361 East Big Beaver Road
24          Troy, MI  48083
            (248) 457-9200

25
```

```
 1    APPEARANCES: (Continued)

 2    For Dealership Plaintiffs:

 3           SHAWN M. RAITER
              LARSON KING, L.L.P.
 4           30 East Seventh Street, Suite 2800
              Saint Paul, MN  55101
 5           (651) 312-6500

 6           VICTORIA ROMANENKO
              CUNEO, GILBERT & LaDUCA, L.L.P.
 7           507 C Street NE
              Washington, D.C.  20002
 8           (202) 789-3960

 9           PAUL A. SAND
              LARSON KING, L.L.P.
10           30 East Seventh Street, Suite 2800
              Saint Paul, MN  55101
11           (651) 312-6500

12    For the Defendants:

13           DONALD M. BARNES
              PORTER, WRIGHT, MORRIS & ARTHUR, L.L.P.
14           1919 Pennsylvania Avenue, NW, Suite 500
              Washington, D.C.  20006
15
              STEVEN F. CHERRY
16            WILMER, CUTLER, PICKERING, HALE and DORR, L.L.P.
              1875 Pennsylvania Avenue NW
17            Washington, D.C.  20006
              (202) 663-6321
18
              JAMES L. COOPER
19            ARNOLD & PORTER, L.L.P.
              555 Twelfth Street NW
20            Washington, DC  20004
              (202) 942-5000
21
              DEBRA H. DERMODY
22            REED SMITH, L.L.P.
              225 Fifth Avenue, Suite 1200
23            Pittsburgh, PA  15222
              (412) 288-3302
24

25
```

```
 1   APPEARANCES: (Continued)

 2   For the Defendants:

 3        GEORGE B. DONNINI
          BUTZEL LONG, P.C.
 4        150 West Jefferson Avenue
          Detroit, MI  48226
 5        (313) 225-7000

 6        DAVID P. DONOVAN
          WILMER, CUTLER, PICKERING, HALE and DORR, L.L.P.
 7        1875 Pennsylvania Avenue, NW
          Washington, D.C.  20006
 8        (202) 663-6868

 9        MOLLY M. DONOVAN
          WINSTON & STRAWN, L.L.P.
10        200 Park Avenue
          New York, NY  10166
11        (212) 294-4692

12        DAVID F. DuMOUCHEL
          BUTZEL LONG, P.C.
13        150 West Jefferson Avenue
          Detroit, MI  48226
14        (313) 225-7000

15        JAMES P. FEENEY
          DYKEMA GOSSETT, P.L.L.C.
16        39577 Woodward Avenue, Suite 300
          Bloomfield Hills, MI  48304
17        (248) 203-0841

18        MICHELLE K. FISCHER
          JONES DAY
19        51 Louisiana Avenue NW
          Washington, D.C.  20001
20        (202) 879-4645

21        FRED K. HERRMANN
          KERR, RUSSELL & WEBER, P.L.C.
22        500 Woodward Avenue, Suite 2500
          Detroit, MI  48226
23        (313) 961-0200

24

25
```

```
 1    APPEARANCES: (Continued)

 2    For the Defendants:

 3         JEFFREY G. HEUER
           JAFFE, RAITT, HEUER & WEISS, P.C.
 4         27777 Franklin Road, Suite 2500
           Southfield, MI  48034
 5         (248) 351-3000

 6         HOWARD B. IWREY
           DYKEMA GOSSETT, P.L.L.C.
 7         39577 Woodward Avenue, Suite 300
           Bloomfield Hills, MI  48304
 8         (248) 203-0526

 9         SHELDON H. KLEIN
           BUTZEL LONG, P.C.
10         41000 Woodward Avenue
           Bloomfield Hills, MI  48304
11         (248) 258-1414

12         PETER KONTIO
           ALSTON & BIRD, L.L.P.
13         1201 West Peachtree Street
           Atlanta, GA  30309
14         (404) 881-7000

15         ANDREW S. MAROVITZ
           MAYER BROWN, L.L.P.
16         71 South Wacker Drive
           Chicago, IL  60606
17         (312) 701-7116

18         WM. PARKER SANDERS
           SMITH, GAMBRELL & RUSSELL, L.L.P.
19         Promenade Two, Suite 3100
           1230 Peachtree Street NE
20         Atlanta, GA  30309
           (404) 815-3684
21
           JOHN E. SCHMIDTLEIN
22         WILLIAMS & CONNOLLY, L.L.P.
           725 Twelfth Street NW
23         Washington, DC  2005
           (202) 434-5901

24

25
```

```
1    APPEARANCES: (Continued)

2    For the Defendants:

3          EYITAYO O. ST. MATTHEW-DANIEL
           MORGAN, LEWIS & BOCKIUS, L.L.P.
4          101 Park Avenue
           New York, NY  10172
5          (212) 309-7156

6          ANITA STORK
           COVINGTON & BURLING, L.L.P.
7          One Front Street
           San Francisco, CA  94111
8          (415) 591-7050

9          MARGUERITE M. SULLIVAN
           LATHAM & WATKINS, L.L.P.
10         555 Eleventh Street NW, Suite 1000
           Washington, D.C.  20004
11         (202) 637-2200

12         JOANNE GEHA SWANSON
           KERR, RUSSELL & WEBER, P.L.C.
13         500 Woodward Avenue, Suite 2500
           Detroit, MI  48226
14         (313) 961-0200

15         MICHAEL F. TUBACH
           O'MELVENY & MYERS, L.L.P.
16         Two Embarcadero Center, 28th Floor
           San Francisco, CA  94111
17         (415) 984-8700

18         A. PAUL VICTOR
           WINSTON & STRAWN, L.L.P.
19         200 Park Avenue
           New York, NY  10166
20         (212) 294-4655

21         ALISON WELCHER
           SHEAVMAN & STERLING
22         801 Pennsylvania Avenue, NW, Suite 900
           Washington, D.C.  20004
23         (202) 508-8112

24

25
```

1    APPEARANCES: (Continued)

2    For the Defendants:

3         MASA YAMAGUCHI
          **LANE POWELL, P.C.**
4         601 SW Second Avenue, Suite 2100
          Portland, OR  97204
5         (503) 778-2174

6

     ALSO PRESENT:
7
          PAUL GALLAGHER
8         **U.S. DEPARTMENT OF JUSTICE**
          450 5th Street NW, Suite 11300
9         Washington, D.C.  20530
          (202) 532-4570
10
          GREGORY S. SLEMP
11        **OFFICE OF THE ATTORNEY GENERAL - STATE OF FLORIDA**
          PL-01 The Capital
12        Tallahassee, FL  32399
          (850) 414-3300

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           TABLE OF CONTENTS

2                                                             Page

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Detroit, Michigan

 2   Wednesday, July 10, 2013

 3   at about 11:06 a.m.

 4                          _   _   _

 5           (Court and Counsel present.)

 6           THE CASE MANAGER:  All rise.

 7           The United States District Court for the Eastern

 8   District of Michigan is now in session, the Honorable

 9   Marianne O. Battani presiding.

10           You may be seated.

11           THE COURT:  Good morning.

12           ATTORNEYS:  (Collectively) Good morning.

13           THE COURT:  How nice to see all of you again.  I

14   see the defendants are in the right spot.  Don't you wish in

15   every trial you could be there?  Okay.  Excuse me.  This is

16   all from yesterday's trial so let me get rid of all of this.

17   It's not that we weren't expecting you, it is just sometimes

18   we forget the basics like clearing off the bench.

19           Okay.  You all, I take it, have received the agenda

20   and have reviewed it, so let's just go ahead and start.

21           Number one, wire harness, who is -- Mr. Fink?

22           MR. FINK:  Yes.

23           THE COURT:  Again, please put your appearances on

24   the record as you speak each time.

25           MR. FINK:  Thank you, Your Honor.  David Fink on
```

1    behalf of direct purchaser plaintiffs, liaison -- interim

2    liaison counsel.

3         The first item, although it states service

4    completed, just for the fun of it last night our office filed

5    another complaint so that service isn't quite complete and,

6    if I may, on items A and B Greg Hansel will speak to those.

7         THE COURT:  All right.  Mr. Hansel?

8         MR. HANSEL:  May it please the Court, good morning,

9    Your Honor.

10         THE COURT:  Good morning.

11         MR. HANSEL:  Greg Hansel, one of the interim lead

12    counsel for direct purchaser plaintiffs.

13         So as Mr. Fink mentioned, last evening the direct

14    purchasers filed a complaint that relates to the wire harness

15    part and it names a new group of defendants that the direct

16    purchaser plaintiffs had not named before but the end payors

17    and the auto dealer had named, and that's GS Electech group

18    of defendants.  There are three defendants, GS Electech,

19    Inc., GS Wiring Systems, Inc. and GSW Manufacturing, Inc.

20    The case has a number, it is 2:13-CV-12965-NGE.  That was

21    filed yesterday.

22         We have not served that complaint yet, and so the

23    purpose of mentioning it is simply to update the Court and

24    service is not completed as to that newly-filed complaint.

25         THE COURT:  Is there somebody from GS Electech,

 1   defendant?

 2         MR. BARNES:  Yes, Your Honor.

 3         THE COURT:  And you were served with -- not with

 4   this one but the other plaintiffs; is that correct?

 5         MR. BARNES:  That's correct.

 6         THE COURT:  In the wire harness.  Okay.  And are

 7   you working on -- working out service or -- I'm sorry, your

 8   name?

 9         MR. BARNES:  Donald Barnes, B-A-R-N-E-S.

10         THE COURT:  I have a cousin Donald Barnes.  Okay.

11         MR. BARNES:  I hope he's behaved himself.

12         THE COURT:  Okay.

13         MR. HANSEL:  Your Honor, we have contacted

14   Mr. Romano's office, Mr. Barnes' co-counsel for GS Electech,

15   and requested that they accept service.  We have not heard

16   back.  We will continue to follow up with that.

17         MR. BARNES:  Your Honor, if I may?

18         THE COURT:  Yes.  Why don't you come to the

19   microphone?

20         MR. BARNES:  Sure.  Mr. Romano unfortunately has

21   had some very serious medical problems.  He recently had a

22   kidney removed, he had a kidney tumor, a cancerous tumor.  He

23   currently has an inoperable tumor on his liver.  He was

24   readmitted to Johns Hopkins last night.  I have no doubt that

25   perhaps counsel called him and left a voicemail, but he

```
 1   hasn't been in his office for a number of months.  He did

 2   come in for a few days earlier this week.

 3           So I apologize to counsel for the lack of

 4   response --

 5           MR. HANSEL:  Understood.

 6           MR. BARNES:  -- but that's the reason.

 7           Mr. Romano will probably be incapacitated for some

 8   time.

 9           THE COURT:  Okay.  So you will be basically as

10   co-counsel taking his place, and any stipulations you can

11   work out will be between the two of you?

12           MR. BARNES:  We'll be happy to talk to the

13   plaintiffs as we always are.

14           THE COURT:  Okay.  I am wondering now that we are

15   adding new defendants we have another round of motions.  I

16   guess you have to look at it, you don't even know yet.

17           MR. BARNES:  I haven't seen the complaint yet, Your

18   Honor.

19           THE COURT:  You haven't seen it, right?

20           MR. BARNES:  It is possible, it's very possible.

21           THE COURT:  Okay.  All right.  If we need motion

22   dates -- well, we will know because we will get the motion

23   but we will have to work on that because this is an

24   additional one.  Okay.

25           MR. HANSEL:  All right.  Thank you, Your Honor.  I
```

1    believe that covers the service item.

2           Then moving down to B, which is an update on the

3    stipulations between plaintiffs --

4           THE COURT:  Can we hold that off because we have a

5    government motion which we will take in just a minute --

6           MR. HANDSEL:  Certainly.

7           THE COURT:  -- and I think that this will affect

8    it, but before you sit down, Mr. Hansel, let's talk about --

9    let's see, the answers are due July 31st.

10          Is that -- who is speaking for defendants here,

11   anybody?

12          MS. FISCHER:  Michelle Fischer, I'm representing

13   Yazaki.  I will speak on behalf of the defendants.

14          For the end payors and the direct purchasers,

15   answers are due --

16          THE COURT:  Why don't you come down here so we

17   can -- I just want to make sure that the record is clear.

18          MS. FISCHER:  Thank you, Your Honor.  For the

19   direct purchasers and the end payors, we have agreed to

20   answer the currently-existing complaints as conformed to the

21   Court's order by July 31st.  We have worked out an

22   arrangement with the auto dealers in connection with the

23   agenda item relating to their motion for leave --

24          THE COURT:  Yes.

25          MS. FISCHER:  -- that will affect the answer date

 1    for that particular complaint.

 2            THE COURT:  Just stay right there but let's talk

 3    about the motion for leave.

 4            Mr. Hansel, do you have -- or who is doing that?

 5    Okay.

 6            MS. ROMANENKO:  Good morning, Your Honor.

 7    Victoria Romanenko for dealership plaintiffs.

 8            We have been in communication with the defendants

 9    since the filing of our motion for leave to file our

10    second-amended complaint, and we believe we have reached an

11    agreement.  Dealership plaintiffs have agreed to withdraw our

12    request to add the only three new state law damages claims

13    that we were seeking to add beyond --

14            THE COURT:  Wait a minute.  Could you slow down,

15    and pull that microphone down a little so everybody can hear

16    you in the back.  Okay.  I'm sorry.  Could you repeat that?

17            MS. ROMANENKO:  Sure.  Dealership plaintiffs have

18    agreed to withdraw our request to add the only three new

19    state law damages claims that we were seeking to add in the

20    second-amended complaint beyond those that we asserted in the

21    first wire harness complaint, and those are under the

22    consumer protection laws of New Mexico, North Carolina and

23    New York.  And defendants have agreed that they will not

24    oppose our motion for leave to amend, and provided Your Honor

25    grants our motion they will not file any motions to dismiss

```
 1    and will answer our second-amended complaint 30 days from the
 2    time that we file a clean copy.
 3            So what we would request is that we submit a copy
 4    of our second-amended complaint to Your Honor with those
 5    three claims removed and then 30 days from the time that that
 6    is entered, provided Your Honor agrees to enter it, the
 7    defendants will file an answer.  We have also agreed to serve
 8    a Japanese translation of that version of the complaint on
 9    the defendants when it is ready, and nothing else will be
10    affected.
11            THE COURT:  Okay.  Do you want to respond to that?
12            MS. FISCHER:  That's an accurate summary.  I
13    believe the auto dealers' second-amended complaint will also
14    reflect the notice that they filed the other day wherein they
15    dropped the new Leoni entity and all allegations relating to
16    that entity.
17            THE COURT:  All right.
18            MS. FISCHER:  So the clean copy will simply reflect
19    all changes they have agreed to since --
20            THE COURT:  Okay.  So I have a proposed order, why
21    don't you submit another order allowing the amended complaint
22    attaching the clean copy of the new claim?
23            MS. ROMANENKO:  Okay.
24            THE COURT:  And then in terms of the briefing
25    schedule for the 1292(B) motions?
```

1          MR. PERSKY:  Yes.  I'm Bernard Persky of the

2    Robins, Kaplan firm, interim co-lead counsel for the end

3    payors.

4          We have entered into a stipulated briefing schedule

5    which I think the Court has so ordered.  Our answering papers

6    are due July 22, and Lear's reply is due August 15.

7          And I guess there is one other matter on the remand

8    motion which isn't before the Court, but the -- Lear has made

9    a motion before the bankruptcy court for additional relief.

10          THE COURT:  Is this Lear?

11          MR. PERSKY:  This is Lear's counsel, and I guess

12    they will decide --

13          THE COURT:  Let's let him speak then, Mr. Persky.

14          MR. MAROVITZ:  Good morning, Your Honor.

15    Andy Marovitz on behalf of Lear.

16          Two things.  First, Mr. Persky accurately stated

17    the briefing schedule.  The only addition I would request on

18    that is that the Court schedule oral argument on the motion

19    for the same date that it schedules oral argument upcoming on

20    instrument panel clusters because the plaintiffs will

21    presumably be here for those motions, we will come in and we

22    will argue it then if that would be convenient for the Court.

23          THE COURT:  Well, I don't know that I need oral

24    argument on 1292.  My intent is to do that on briefs.

25          MR. MAROVITZ:  Okay.

1        THE COURT:  So unless there is something that you

2    think is more unusual or some strong reason to have oral

3    argument I don't see any need for it.

4        MR. MAROVITZ:  Thank you, Your Honor.  We will wait

5    to see the plaintiffs' brief, which we haven't seen yet, it

6    is not due yet, and then in our response if we think there is

7    anything unusual that would require oral argument we will

8    indicate that for the Court.

9        In connection with Mr. Persky's point about the

10   remand, the Court may remember that there is a parallel

11   proceeding going on in the Southern District of New York.

12   Judge Forrest had remanded that part of the case, which is a

13   bankruptcy issue, back to the bankruptcy court with two

14   questions to be addressed by the parties.  Lear has filed its

15   brief in response to that remand from Judge Forrest.  The

16   plaintiffs will have an opportunity to file their response,

17   Lear will file a reply, and presumably there will be

18   argument.

19       THE COURT:  Is that going to interfere in any way

20   with what we are doing here with our motions?

21       MR. PERSKY:  It might depend on what the bankruptcy

22   judge decides.  The bankruptcy judge had initially decided to

23   defer to the MDL court on certain issues.  That was taken on

24   appeal to the district court.  Judge Forrest had reversed the

25   order of the bankruptcy court and said no, some of the issues

1   raised are core bankruptcy issues and she remanded to

2   bankruptcy Judge Gropper two questions concerning the

3   scope -- potential scope of Lear's liability with respect to

4   the liability occasioned by postdischarge conduct, and if

5   they are guilty of unlawful conduct postdischarge under what

6   circumstance can their liability extend backwards to the

7   conduct of either themselves prior to the discharge or their

8   co-conspirators?  So two questions remain for the bankruptcy

9   judge to determine, but there is no -- right now that has not

10  yet been determined and that has to be fully briefed, but I

11  don't see any reason why the 1292(B) shouldn't go forward and

12  that should be resolved.

13          MR. MAROVITZ:  We certainly agree that the

14  disposition of the 1292(B) should not be held for any reason

15  based upon the bankruptcy court proceedings.  The one thing

16  that I know, Mr. Persky didn't mean to suggest this but I

17  want the record to be clear, Lear, of course, has denied

18  liability from the get-go with respect to all of these

19  claims, it was not investigated by the Government, it has not

20  been fined by the European Commission, and what the

21  bankruptcy court is considering right now is simply the

22  hypothetical case of potential exposure if the plaintiffs

23  ultimately are able to prove something, but with respect to

24  Lear, Lear is, as I say, has not been accused by any

25  Government agency of doing anything wrong and I just wanted

1    the record to be clear.

2            THE COURT:  I don't think Mr. Persky meant to admit

3    liability for you.

4            MR. MAROVITZ:  Yeah, yeah.  Thank you, Your Honor.

5            THE COURT:  Or maybe he did.

6            MR. MAROVITZ:  Thank you.

7            MR. PERSKY:  Thank you.

8            THE COURT:  Okay.

9            MR. SANDERS:  Your Honor, Parker Sanders for

10   Kyungshin-Lear Sales and Engineering.

11           I just wanted to point out we are part of the

12   stipulation also.

13           THE COURT:  Are you?

14           MR. SANDERS:  Yes.

15           THE COURT:  Okay.  Thank you.

16           And KL Sales, same?

17           MR. SANDERS:  Yes, ma'am.

18           THE COURT:  Okay.  The next item is the

19   clarification of the Court's decision on the motion to

20   dismiss the IPP complaints.  I can't imagine why you need

21   clarification.

22           MS. FISCHER:  Good morning, again, Your Honor.

23   Michelle Fischer on behalf of the defendants.

24           This is a relatively simple issue, Your Honor.  On

25   page 41 of the Court's opinion regarding the indirect

1    purchaser complaints, the Court set forth a list of the auto
2    dealer consumer protection claims that it viewed as, quote,
3    remaining claims. That's at page 41. And included within
4    that list were claims under the consumer protection laws of
5    nine states, specifically Hawaii, Illinois, Maine, Nevada,
6    Oregon, Tennessee, Utah, West Virginia and Wisconsin. The
7    auto dealers did not, in fact, bring consumer protection
8    claims under the laws of these nine states so we contacted
9    counsel for the auto dealers, specifically Mr. Cuneo and
10   Ms. Romanenko, and they confirmed that fact in writing to us.
11   So because these claims were accidentally characterized as
12   remaining claims in the opinion and not dismissed on the last
13   page of the opinion, we feel there is an ambiguity as to what
14   remains in the case, so we would ask the Court to clarify
15   that they are not part of the case.
16           And I didn't discuss this with the auto dealer
17   counsel, I just found this last night, on pages 22 to 23 of
18   your opinion you had identified various states where the auto
19   dealers had expressly stated that they were not bringing
20   claims under the consumer protection laws under those states,
21   there were ten states there. All of those states are listed
22   in your dismissals at the end with the exception of Minnesota
23   which, again, I think was just an accidental oversight. So
24   we would also request that the Court clarify that the
25   Minnesota claims have been dismissed.

1           The bottom line, Your Honor, is that as we

2   understand it there are four remaining consumer protection

3   claims for the auto dealers at the end of the day, they are

4   in Arkansas, California, Florida and South Carolina, and in

5   the end we are just seeking to make it clear that that is

6   what remains.

7           THE COURT:  Okay.  Thank you.  Is there any comment

8   or anybody have any objections?  Sounds accurate as to what

9   was said.  I didn't know where you were going with this so I

10  wasn't prepared obviously to rule, but we will correct that,

11  we will send out an addendum in writing just so we are sure

12  that everybody understands what is left and that these are

13  out.

14          MS. FISCHER:  Thank you, Your Honor.

15          THE COURT:  Okay.  Does that mean we did extra

16  work?  Okay.  All right.

17          The next item is coordination with the Department

18  of Justice.  Mr. Fink, do you have something you want to say

19  on that?

20          MR. FINK:  Only to introduce the individual.

21          THE COURT:  Mr. Gallagher?

22          MR. FINK:  Well, for the direct purchaser

23  plaintiffs, Jeff Corrigan, who is a partner of Eugene Spector

24  from the Spector, Roseman, Kodroff & Willis firm, is here

25  today, and he is the individual that has been focusing on

1   this for the direct purchaser plaintiffs.  I think I spoke

2   out of turn.

3          MR. CORRIGAN:  Your Honor, I'm Jeff Corrigan.  It

4   sounded like you might have wanted to speak to Mr. Gallagher

5   first.

6          MR. FINK:  I'm sorry.

7          THE COURT:  Yes, I think it all relates to the

8   government's motion, it comes up in every part, so I think we

9   should go ahead and do it now.  It is your motion,

10  Mr. Gallagher.

11         MR. GALLAGHER:  Yes.  Good morning, Your Honor.

12         THE COURT:  Good morning.

13         MR. GALLAGHER:  Paul Gallagher with the antitrust

14  division of the Department of Justice.

15         With this many people here I feel a bit like I'm

16  crashing a party that I haven't been invited to.

17         THE COURT:  Oh, we have these periodically, they

18  are fun, you should come.

19         MR. GALLAGHER:  Your Honor, I'm here to -- I will

20  follow your lead in terms of the fact that we just filed our

21  papers.  I don't know whether the Court wants to provide an

22  opportunity for all of the parties to respond or I can let

23  you know where we are in terms of discussions between the

24  defendants and the plaintiffs?

25         THE COURT:  All right.  Well, I know this was just

1  filed, I just read it I think yesterday, and obviously people

2  haven't had a chance to respond to this motion, so I don't

3  know if we can do it today, I'm going to hear what the

4  defendants have to say, or if we need something more.  I also

5  received your declaration -- or I think it was

6  Mr. Grundvis' --

7            MR. GALLAGHER:  Grundvis, that's correct, Your

8  Honor.

9            THE COURT:  His declaration this morning, and I

10 briefly reviewed that.  I understand where you are coming

11 from, but I don't know that the defendants have had an

12 opportunity -- excuse me, the plaintiffs have had an

13 opportunity to respond.

14            So before you argue let me just ask the plaintiffs

15 what their feelings are and let's get -- if you can just step

16 to the side and we will see.

17            MR. WILLIAMS:  Good morning, Your Honor.

18 Steve Williams for the end payors.

19            Myself, Mr. Corrigan and Mr. Cuneo have been

20 talking with the Justice Department for some time.  The

21 papers were just filed and we understand an order has been

22 filed but none of our groups have seen the order.

23            THE COURT:  Well, the order allows the filing under

24 seal I think of the affidavit --

25            MR. GALLAGHER:  There are two different orders, one

 1     was the motion to seal, which Your Honor has granted.

 2              THE COURT:  Right.

 3              MR. GALLAGHER:  The second was the proposed order

 4     depending on the Court's decision on the motion to intervene

 5     and the motion for a stay.

 6              THE COURT:  Okay.  That hasn't been entered.

 7              MR. WILLIAMS:  And we have not seen that order, and

 8     obviously that is -- it is an important order in terms of the

 9     details of the request by the department.  I think our view

10     collectively on the plaintiffs' side, and they will speak for

11     themselves, is we generally don't oppose -- well, I should

12     say first we don't oppose the request to intervene.  We

13     generally don't oppose what has been requested in the motion

14     for the stay but we would like an opportunity to review the

15     proposed order and then in a very short period from the

16     end payors' position, within a week, either indicate we agree

17     to the term of it or propose those few areas where we may

18     have some disagreement and then perhaps an opportunity to be

19     heard if we cannot work this out with the Department and with

20     the defendants, but we think for today's purposes we should

21     be given that opportunity to review the proposed order and

22     then to give our comments to that order.

23              THE COURT:  All right.

24              MR. CORRIGAN:  Thank you, Your Honor.

25     Jeff Corrigan for the direct purchaser plaintiffs.

1        I second mostly what Mr. Williams said.  We have

2   been speaking to Mr. Gallagher for a number of months to try

3   to make this process as smooth as possible, and as he

4   indicated in his papers, we generally agree with the proposed

5   stay but we have not seen the order, as Mr. Williams said.

6   We would like a brief chance to just look at the order, see

7   exactly what it sets out and properly respond, but based on

8   the number of months that we have spent hashing this out we

9   don't expect it to be much of a process.

10           THE COURT:  Okay.

11           MR. CORRIGAN:  Thank you, Your Honor.

12           THE COURT:  We have one more?

13           MR. CUNEO:  Jonathan Cuneo for the auto dealers.  I

14   have nothing to add to what my colleagues said before me.

15           THE COURT:  Thank you, Mr. Cuneo.  Okay.

16        And as I looked at least one of the orders there

17   was apparently a little disagreement about six months or a

18   year.  There was a time period disagreement.

19           MR. GALLAGHER:  There was.  That's one of the few

20   and the basic differences between plaintiffs' position and

21   the government's position.

22        First of all, I want to apologize to the Court for

23   filing as closely to this hearing as we did.  We were not

24   aware until just a week or two ago that this status

25   conference was occurring.  We have been monitoring the civil

1  cases but not super closely because we didn't believe -- we

2  believed that there were protocols in place that were going

3  to take care of any concerns that we had, at least with

4  regard to the initial cases, so it was not an intention to

5  get this in at the last minute.

6       The counsel for plaintiffs are correct, we have

7  been talking about this for some time, we have very few

8  differences but as is always the case once you start to put

9  pen to paper then, you know, questions come up and that's the

10  situation with the plaintiffs.  I believe also that we will

11  be able to work out something, we may even be able to provide

12  a proposed stipulated order to Your Honor.  We did not want

13  to overstep our bounds given that this affects the Court's

14  docket and could potentially impact the speed that the cases

15  move forward, we don't think very much, but we wanted to make

16  sure that we just didn't offer a stipulation without having

17  an opportunity for the Court to ask questions.

18       THE COURT:  All right.  Let me just indicate to all

19  of you, when you are working trying to work this out,

20  remember we have these conferences and so if you are talking

21  six months or a year, it could be that maybe we meet again

22  and add this to the agenda in six months or nine months and

23  say let's look at where the Government is and how far away

24  so, you know, it doesn't have to be, you know, an endpoint

25  order, it could have intermediate steps that might resolve

1    this, so just keep that in mind.

2         MR. GALLAGHER:  Right, and one other alternative in

3    terms of six months versus a year is to give a certain period

4    of time, either six months or a year, but then to have us,

5    the government, provide the Court with field updates about

6    where we are that would enable the Court to determine which

7    cases should go forward with discovery and which cases should

8    still be stayed, so we would be happy to do that as well.

9         THE COURT:  Okay.  So then I guess the answer to

10   all of that is we are not going to deal with the discovery

11   dates today because we have to wait for this order and really

12   the only one ready, that might even come ready, and I don't

13   know that your order affects it because you talk about pre

14   and initial products and subsequent products, so the only one

15   that is going to even be starting or could possibly start

16   discovery is the initial product, the wire harness case,

17   so --

18        MR. GALLAGHER:  My understanding and one of the

19   reasons why we -- our concern was increased was we understood

20   that several months ago the Court in the occupant safety

21   systems cases had ordered that the same protocol that you had

22   ordered with regard to wire harnesses and some of those

23   initial cases would be applied to those OSS cases, which

24   means that discovery and document production would be

25   permitted at that time.  That's something that we for the

 1   reasons stated in our brief and also in the sealed

 2   declaration have concerns about, so that's why we came in at

 3   this point, because we thought it was ripe.

 4          THE COURT:  Okay.  That's true, they are all put on

 5   the same case management orders and protocol but do consider

 6   how far off all of this is.  By the time we do motions to

 7   dismiss and then get to answers, I mean, I'm trying to keep a

 8   calendar and I don't know that anything is going to be ready

 9   before -- for discovery for many, many months except for the

10   wire harness, but we also have the depositions, that was

11   another issue you raised.

12          MR. GALLAGHER:  Correct.

13          THE COURT:  And that's something that the

14   plaintiffs presented because -- I can't remember under what

15   context but you gave me the schedule of when these defendants

16   are going to be released and therefore ready for depositions,

17   so I do think your order will have to specifically take care

18   of -- have to specifically take care of that because we have

19   a number of these defendants who are now either out or going

20   to be out shortly.

21          MR. GALLAGHER:  Right.  I think one of the other

22   issues that caused the timing to come up was the fact that

23   Your Honor has ruled on certain motions to dismiss, and I

24   believe that some of the initial discovery orders said that

25   certain depositions could begin after the decisions on the

1   motions to dismiss --

2           THE COURT:  That's correct.

3           MR. GALLAGHER:  -- so that's another thing.

4           To some extent OSS is timely.  To some extent with

5   regard to other products our request is prophylactic, we want

6   to get out in front of this to make sure that we are not

7   chasing and coming in each time a new product, you know, that

8   there is a plea on it and new civil cases are filed and new

9   orders are applied to those particular cases, so we are

10  hoping to get a protocol that can apply to groups of cases as

11  we have set forth in our briefs.

12          THE COURT:  Okay.  And when you work out your order

13  I would like specifically a listing -- I want to know for the

14  part, when the discovery can start for the part and what part

15  of discovery, if it is paper discovery or if it is

16  depositions, et cetera, I want to know that so that I can try

17  and keep track of the flow of each of these parts basically.

18          MR. GALLAGHER:  Very good.

19          THE COURT:  Okay.

20          MR. GALLAGHER:  Your Honor, I believe our motion to

21  intervene is unopposed.  Would the Court grant that?

22          THE COURT:  All right.  If you would present an

23  order the Court would grant your motion to intervene.

24          MR. GALLAGHER:  Very good.  Thank you, Your Honor.

25          THE COURT:  Since you've already argued I don't see

1    any sense in --

2            MR. CHERRY:  Your Honor, may I speak?

3            THE COURT:  Yes.

4            MR. CHERRY:  I'm Steve Cherry with Wilmer Hale.  We

5    represent Denso.

6            THE COURT:  Just a minute.  There is a microphone

7    here.  Why don't you use that just to be sure the people in

8    the back can hear you, Mr. Cherry.

9            MR. CHERRY:  Okay.  Thank you, Your Honor.  I just

10   wanted to make clear that the defendants, you know, we feel

11   like this obviously impacts us as well and would expect to be

12   heard on this issue.  We have been in contact with

13   Mr. Gallagher.  We don't oppose the motion for a stay as a

14   matter of principle but we obviously want to see a proposed

15   order and may have --

16           THE COURT:  Well, it will have to be stipulated to

17   by everybody so that includes the defendants.

18           MR. CHERRY:  Thank you, Your Honor.

19           THE COURT:  So any number of the defendants

20   involved you are going to have quite a job just to get the

21   defendants --

22           MR. GALLAGHER:  Right, understood, Your Honor.

23           THE COURT:  Okay.  Thank you.  All right.

24   Instrument panel cluster?

25           MR. HANSEL:  Your Honor, before we turn to

1    instrument panel cluster, one more thing.  Greg Hansel for

2    the direct purchasers.

3            Returning to the deposition of the incarcerated

4    persons, which was item 1-B on wire harness?

5            THE COURT:  Yes.

6            MR. HANSEL:  Your Honor addressed that with

7    Mr. Gallagher briefly.  I also wanted to give the Court a

8    quick update on our discussions with defendants.  The

9    plaintiffs have already filed a stipulation reached with

10   Furukawa.  We have agreed in principle with Yazaki also with

11   respect to the wire harness case, and we have not fully

12   executed that stipulation yet but expect to do so in the near

13   future.  That's all with respect to wire harness.  I may come

14   back and briefly touch on this issue with respect to some

15   other parts.

16           THE COURT:  All right.  Anything else on the wire

17   harness?

18           MR. KANNER:  There is, Your Honor, just one minor

19   matter.  Good morning, Your Honor.  Steve Kanner, one of the

20   interim co-lead counsel on direct purchaser plaintiffs.

21           The only matter I would add with respect to 1-D is

22   by way of an overview of what is going on.  The defendants

23   have now produced approximately two and-a-half million

24   documents to plaintiffs.  We have been and continue to be

25   reviewing those materials, and most current by way of update

```
 1    the direct purchaser plaintiffs recently served our requests
 2    for production and our interrogatories on defendants.  The
 3    time for response has not yet taken place as I think these
 4    were only filed in the last week or so.  We expect there will
 5    be spirited but cooperative discussions with respect to the
 6    inevitable objections that will come up in the course of
 7    these matters, and we would hope to be able to work it out by
 8    way of a stipulation, and if we can't we will certainly come
 9    to this Court for your direction on how to handle these
10    issues because now that we are into the
11    post-motion-to-dismiss phase the request for production
12    largely relating to transactional data are critical to our
13    moving the case ahead and being ready at some point in time
14    for the class certification arguments.
15            And it occurred to me that perhaps if there are
16    issues with the discovery process, rather than waiting three
17    months for a hearing that perhaps the Court would entertain
18    the possibility of a telephonic conference call with limited
19    representatives from each side on issues that relate to
20    unsurmountable problems should we run into that.
21            THE COURT:  Let me tell you a couple of things.
22    Certainly I will entertain telephone conferences as long as
23    you set them up.
24            MR. KANNER:  Certainly.
25            THE COURT:  But, no, I wouldn't want you to wait if
```

```
 1   you have discovery problems any differently that any other
 2   case, you have to file your motion or request a conference,
 3   whatever, immediately.  No, I do not want you to wait for
 4   something like that, that would make no sense.
 5           MR. KANNER:  Agree.
 6           THE COURT:  Okay.
 7           MR. KANNER:  Thank you very much, Your Honor.
 8           THE COURT:  Thank you.  Defense?
 9           MS. SULLIVAN:  Good morning, Your Honor.
10   Marguerite Sullivan on behalf of the Sumitomo defendants.
11           The only thing I would add to what Mr. Kanner just
12   said is that we do anticipate that we will attempt to reach
13   an agreement on a discovery schedule so that we can lay out
14   the schedule of events and discovery going forward.  If we
15   can't reach an agreement with the plaintiffs we'll raise that
16   with Your Honor.
17           THE COURT:  All right.  Good.  Thank you.  Okay.
18   Instrument panel clusters, direct purchasers?
19           MR. FINK:  Nothing interesting on service that I'm
20   aware of, Your Honor.
21           THE COURT:  The service is all done, right?  The
22   service is complete on that one?
23           MR. FINK:  Yes.
24           THE COURT:  All right.  And how about your motion
25   to dismiss, the defendants' replies are due July 15th?
```

 1          MR. FINK:  Yes, and I don't think there is anything

 2  controversial about that.  I would look to the jury.

 3          THE COURT:  Okay.  Oh, there is an issue on the 12

 4  point, we've gotten a number of calls on that.

 5          MR. FINK:  That's -- Your Honor, we were --

 6          THE COURT:  That's funny because I was at a meeting

 7  when we were discussing going to the 14 point and adopting

 8  that and it didn't seem like any big thing, and the next

 9  thing I know I'm getting all of these calls.

10          Because of the nature of this case and, you know,

11  working out the number of pages and all of that, I see no

12  problem with continuing with the 12 point in the same number

13  of pages, okay, so that would be the same for all of the

14  parts.  I don't want any part to say they got less pages than

15  another part.  So you will all be the same by keeping with

16  the 12 point.  I don't think that would cause -- and, Bernie,

17  we need to note this for the Clerk's Office, that they don't

18  reject these pleadings because they are not the right size.

19  Okay.  So that's what we will do for everybody, every part,

20  everything from now on we will keep the 12 point.  Okay.

21          MR. FINK:  Thank you, Your Honor.  That was what I

22  prepared for for weeks to talk about.

23          THE COURT:  Oh, so sorry.

24          MR. FINK:  But I will be okay.

25          THE COURT:  Okay.

1          MR. FINK:  For the hearing date, which is more

2    complex, I will defer to Steve Kanner.

3          THE COURT:  I hate to say what that cost as I did

4    review the attorney fees.  I'm not happy, but we will talk

5    about that later.  Okay.

6          MR. FINK:  Thank you, Your Honor.  I will take some

7    of my weeks of work on that off of the bill.

8          THE COURT:  Okay.

9          MR. KANNER:  Good morning, again, Your Honor.

10   Steve Kanner.

11         THE COURT:  Mr. Kanner.

12         MR. KANNER:  With respect to the hearing dates, we

13   listened with interest as Your Honor perhaps previewed your

14   thinking with respect to whether or not we need oral argument

15   on the motions to dismiss.  I conferred briefly with my

16   colleagues, and since many of the arguments are going to be

17   typical of what we saw before and Your Honor has spent an

18   extraordinary amount of time with those motions, thoroughly

19   analyzing them and ruling on them, and in the interest of the

20   amount of time that we spent preparing for those oral

21   arguments, we are prepared to accept Your Honor's

22   determination if you so indicate to hear those -- or to have

23   those motions ruled on on the papers.

24         Alternatively, if Your Honor is going to determine

25   that you would like to have oral argument on certain

1    questions, I would also make a suggestion that will help

2    economize time and judicial resources, that with respect to

3    both instrument panel clusters, and if I can jump ahead to

4    heater control panels, we have already determined that with

5    respect to instrument panel clusters the defendants' briefing

6    should be done on July 15th.  And if I can, Your Honor, look

7    at heater control panels, the defendants' briefs are to be

8    completed -- the reply briefs on October 2nd.

9            Now, putting that to the side, we have typically

10   scheduled conferences every three months which would suggest

11   that the next one be sometime in October.  It seems to me if

12   we can do both of those sometime in October it is a great

13   savings to all parties, certainly defendants and plaintiffs,

14   and, again, with an eye towards judicial resources we might

15   be able to take that into consideration.

16           THE COURT:  Okay.  Let met hear defendants'

17   response.  Go ahead.

18           MR. VICTOR:  Good morning, Your Honor.  Paul Victor

19   for the Nippon Seiki defendants.

20           THE COURT:  Good morning.

21           MR. VICTOR:  With respect to the comments that

22   Mr. Kanner made concerning the hearing, we take issue with

23   that.  These cases are not all the same; the parties are

24   different, the charges are different, and the plaintiffs, of

25   course, would like to treat this all as one similar part.

1  Well, just because the MDL put these cases together doesn't

2  mean that we are not entitled to our rights, which include

3  the rights to argue our motions to dismiss.  We think there

4  are differences, we'll point out the differences, we are not

5  involved in wire harnesses, we are involved with instrument

6  panel clusters, and we feel that we have the right to present

7  our position to the Court directly as a matter of due

8  process, so we do take issue with that and we do wish to have

9  an oral argument with respect to our motions to dismiss.

10          THE COURT:  Okay.

11          MS. STORK:  Good morning, Your Honor.  Anita Stork

12  on behalf of the Alps defendant in the heater control panel

13  cases.

14          I would echo everything that was just said, that

15  the defendants do want their right to come in and argue their

16  motions, the collective motions, because we believe the

17  issues are different.  There also are some defendants in some

18  of these case, such as my client, Alps, that has filed a

19  separate motion to dismiss and is differently situated than

20  some of the other defendants, so we would strongly urge the

21  Court to allow the hearings to go forward.

22          THE COURT:  Okay.  Let me --

23          MR. DAMRELL:  If I may comment?

24          THE COURT:  Yes.

25          MR. DAMRELL:  Frank Damrell on behalf of the

1   end payors.

2          Your Honor, we have always referred to the wire

3   harness case as a template and that's to suggest that the

4   order is a template because there are going to be different

5   issues in different cases, but in those cases where the same

6   issue arises and the Court has ruled while the defendants

7   have a right to argue the Court can certainly exercise its

8   discretion in terms of rulings that it has made, it is not

9   the law of the case, these are different cases, but the

10  rulings do mirror -- will undoubtedly mirror the findings

11  that the Court made in the wire harness case, and I think it

12  would be very helpful from a standpoint of the multiple

13  motions that are going to be filed that the Court consider

14  giving us guidance in narrowing those issues particularly if

15  counsel is going to repeat and rebrief and reargue matters

16  that the Court has already ruled upon.  That is pretty

17  critical in an MDL case, and I think this is the advantage of

18  an MDL case with a judge that can make that ruling or rulings

19  in advance of other motions, and those rulings I think should

20  control, so to the extent that you can provide us guidance in

21  that respect would be very helpful.

22          THE COURT:  Well, let me just say this, let me do

23  the easy part first, if we have oral argument it will be at

24  the next status conference so you don't have to come in

25  twice.  I in advance took the liberty of looking at dates.

1    October, because we do have that MDL -- I have an MDL,

2    whatever it is called, that conference which I attended last

3    year and I would like to attend this year, and I decided to

4    put off our meeting until after that in case I can pick up

5    any hints as to how to be most efficient in this case.

6            I looked at November 13th.  I don't know if you --

7    if there is anything else significant happening that day that

8    might prevent you from attending.  Please let me know.

9    Anybody offhand know of anything?

10           (No response.)

11           MR. KANNER:  Your Honor, from the direct purchaser

12   perspective, we don't have a problem with that date.

13           THE COURT:  All right.  It looks like that's not a

14   big problem for anybody so let's schedule it for

15   November 13th.  I would suggest this -- it will be at 11:00,

16   just as this was.  We will -- what did we do last time?  We

17   did our status conference and then motions, I think, and we

18   will do that so those of you not involved could leave.  It's

19   starting at 11:00 so it is a little later, so depending upon

20   how long the status conference goes it might be, you know,

21   after lunch, I don't know, but we will play it by ear.

22           I agree with Mr. Damrell, it would be helpful to

23   have some kind of template if we could do it, but I recognize

24   at this point that these parts are different and they may

25   very well have different issues, I don't know, I fully intend

1     to give every defendant its day in court, of course, for the

2     individual parts.  So I can't rule on this -- I mean, I can't

3     say that I can have a template, I don't know.  I do expect,

4     of course, that some of the issues will be the same or

5     ultimately come up the same but you also have all of the

6     pleadings, all of the subsequent parts have all of the

7     pleadings, so you know how I have ruled.  I may be wrong but

8     I will tell you that I'm consistent so, you know, accept it

9     and get over it, and if that's how I ruled that's how I ruled

10    and that's all I can tell you.  So we do plan and try to be

11    as consistent as we can be but if you have something that is

12    new then you raise that.

13          It may be that you will have multiple -- probably

14    it will be so that you have multiple issues and some of the

15    issues I have ruled on and then I won't hear oral argument on

16    these issues, and there might be new issues that I haven't

17    ruled on that I would hear oral argument.  So if you want

18    oral argument just mention it in your brief, you know, a new

19    issue, want the opportunity to argue, so we know that.  You

20    know, oral argument, as you know, in Federal court isn't

21    always allowed on dispositive motions.  It so happens that I

22    always do allow it so being consistent I will allow you to

23    argue if it is new, so we will see, but we will plan those

24    arguments if we have them, and I'm anticipating that we will,

25    on -- what did I say?  November 13th.  Okay.  That will be

1   both for the instrument panel and heater control.  I know we

2   didn't get there yet but they are both going to be about

3   ready about the same time so we will do both of the

4   arguments.  Okay.  Any comments or any questions on that?

5         (No response.)

6         THE COURT:  All right.  The next issue is the

7   stipulations between plaintiffs and defendants regarding the

8   depositions.  Okay.

9         MR. HANSEL:  Greg Hansel, again, Your Honor.

10        We have the same agreement in principle with Yazaki

11  in the instrument panel clusters which we expect to sign in

12  the near future.

13        THE COURT:  Okay.  And whatever you are going to do

14  with the Government on depositions I think that's probably

15  the next thing that you would coordinate that.

16        MR. HANSEL:  I believe that -- well, I don't want

17  to speak, I will let Jeff Corrigan address the DOJ situation.

18        THE COURT:  Okay.

19        MR. CORRIGAN:  Your Honor, I think, as before, we

20  will have to see what the order says but we are largely -- we

21  largely agree with the motion that has been filed.  We will

22  take a look at the order and get back to the Court very

23  shortly on that.

24        THE COURT:  Okay.

25        MR. CORRIGAN:  Thank you.

1          THE COURT:  All right.  Fuel senders, Mr. Hansel?

2          MR. HANSEL:  Greg Hansel, again, Your Honor.

3          On fuel senders, a quick update on service.  The

4  direct purchaser plaintiffs have served Yazaki.

5          THE COURT:  All right.  And on the fuel senders --

6  let me just see here.  We have some dates on the motions to

7  dismiss on the fuel senders, they are due August 16th, these

8  dates are still good.  Okay.  Response is October 18th, and

9  reply is December 5th.

10          And I will tell you -- oh, there is a note that we

11  will continue with the 12 point.

12          I have randomly with some thought selected

13  February 12th as the date for our next status conference so

14  that will be two status conferences down, and the oral

15  argument, if any, on fuel senders.  Does that date sound

16  reasonable?  Anybody have anything they know about on that

17  date?

18          MR. KANNER:  It is fine for direct purchaser

19  plaintiffs.  Your Honor, would that be an 11:00 date too?

20          THE COURT:  Yes.  I think we agreed to have these

21  at 11:00 for transportation purposes.

22          MS. FISCHER:  Is that a Wednesday as well?

23          THE COURT:  Pardon me?

24          MS. FISCHER:  Is that a Wednesday as well?

25          THE COURT:  Yes.  Okay.  So we will set that.

1     Heater control panels, for the auto dealers, Alps

2 hasn't been served?  Who is speaking on --

3     MS. ROMANENKO:  Your Honor, as far as we know Alps

4 has not yet been served.  Hague service is in process for

5 them.

6     THE COURT:  But they have been served by the

7 end payors?

8     MS. SALZMAN:  Hollis Salzman, for the end payors.

9 That's correct.

10     THE COURT:  And so let me just ask again, it is

11 just because of the Hague process that it is delayed?

12     MS. ROMANENKO:  Correct.

13     THE COURT:  Okay.  And we have already talked about

14 hearing dates for November 13th on this.  Okay.  The

15 depositions, Mr. Hansel, the same?

16     MR. HANSEL:  Thank you, Your Honor.  Yes.  We have

17 reached an agreement in principle with Denso with respect to

18 heater control panels, and we have not signed that yet but

19 expect to do so soon.

20     THE COURT:  Okay.  And, again, that will be

21 coordinated with the discovery issue the DOJ has?

22     MR. HANSEL:  Yes.

23     THE COURT:  Okay.  All right.  On the bearings,

24 okay, it is not on here but I have the reply briefs due

25 March 25th of 2014.  I've looked at somebody's order, I have

 1 | to write this all down because I don't remember it, but

 2 | assuming that's true the motions to dismiss aren't due until

 3 | December 2nd so I'm assuming that is true, I have not set

 4 | another date, I think it is a little bit too far, but

 5 | hopefully we can keep this scheduling deadline where the

 6 | replies would be due by March 25th because that's quite a

 7 | ways away right now.  Okay.  And the discovery coordination

 8 | with DOJ, same thing?

 9 |         MR. FINK:  The same thing.

10 |         THE COURT:  All right.  Occupant safety systems, I

11 | guess we are waiting on the Hague on that too; is that

12 | correct?

13 |         MS. SALZMAN:  Your Honor, Hollis Salzman.

14 |         I was just notified today that for the end payor

15 | cases we are fully served now via the Hague.

16 |         THE COURT:  Oh, okay.  All right.  The next item is

17 | the pleadings, and plaintiffs' consolidated amended complaint

18 | on that is due July 3rd.  Is there any problem with that date

19 | on the occupant safety?

20 |         (No response.)

21 |         THE COURT:  No.  Okay.  I'm not sure what this is,

22 | direct purchaser plaintiffs wish to address necessity of

23 | translation.  You mean we don't have translation resolved by

24 | now?

25 |         MR. FINK:  Well, we do with respect to the original

1    complaints, and this is a situation that involves amended

2    complaints and we are trying to work through an agreement

3    with the defense, and some of the defendants have already

4    agreed, we are trying to avoid what we think is an

5    unnecessary translation, but we will work it through with the

6    defendants.  Other than to have this opportunity to chat with

7    the Court we don't need any involvement of the Court.

8           THE COURT:  Okay.  All right.  Then the defendants'

9    motions to dismiss on this part, the occupant safety, are due

10   October 21st, and that date is still a good date.  Okay.  And

11   we will continue with the 12 point, and we have the same

12   issue with the Department of Justice so -- and the

13   alternators, we are just basically in service right now; is

14   that correct?  Any problems --

15          MS. SALZMAN:  That's correct, Your Honor.

16   Hollis Salzman.

17          MS. ROMANENKO:  Correct for us as well, no

18   problems.

19          THE COURT:  All right.  Let's do the rest of these.

20   The anti-vibration, the windshield wiper, radiators,

21   starters, lamps, is there anything that I need to know

22   about -- Counsel?

23          MS. ROMANENKO:  Your Honor, the dealership

24   plaintiffs would like to notify the Court, we have now filed

25   our lamps complaint.  It has been assigned to Judge O'Meara,

1    but we have identified it as related to the end payors' lamps

2    case in this MDL, so we believe it should be transferred to

3    Your Honor.

4             THE COURT:  When did you file that?

5             MS. ROMANENKO:  Yesterday.

6             THE COURT:  Oh, okay.  Molly, if you will note that

7    so we can call Judge O'Meara.  Okay.  Thank you.

8             We have had a number of complaints filed, we are

9    trying to get them in faster.  You know, sometimes the

10   courtrooms it is a little bit longer, and we are just trying

11   to pull them in so we don't miss anybody in our

12   notifications.  All right.

13            Dates for the next status conference, we already

14   have the next two, November 13th and February 12th, both

15   Wednesdays and both at 11:00.  Again, the hearings on the

16   motions to dismiss will be at the same time.

17            MR. CUNEO:  Those hearings I think at the next

18   status conference will be at 11:00?

19            THE COURT:  Yes.

20            MR. CUNEO:  The status conference, argument on two

21   motions to dismiss?

22            THE COURT:  Correct.

23            MR. CUNEO:  Would it be the Court's intention to

24   complete it in one day?

25            THE COURT:  It is my intention to complete it in

1     one day.  If we do not, it would continue over the next

2     morning.

3              MR. CUNEO:  Thank you.

4              THE COURT:  Thank you for bringing that up.  Yes.

5     Since I don't know what is involved and how many issues, I

6     can't tell you how long it would be, but that's what I would

7     anticipate.

8              MR. BARNES:  Your Honor, Donald Barnes for the GS

9     Electech defendants.

10             There may be another motion filed by us in the

11    direct purchaser suits.  We were just sued last night so we

12    haven't seen the complaint yet, so I don't want the Court to

13    think that you are only going to deal with two motions, there

14    may be a third.

15             THE COURT:  I would not be surprised, it's all

16    right.

17             MR. BARNES:  Thank you, Your Honor.

18             THE COURT:  Okay.  All I'm saying is whatever

19    motions are ready at that time will be heard that day, if we

20    can't complete them that day they will be heard the next

21    morning.  Okay.

22             All right.  Now, I just wanted to bring up the

23    State of Florida.  Is there -- is the AG --

24             MR. SLEMP:  Your Honor, good afternoon.

25    Greg Slemp, assistant attorney general for the Florida

1    Attorney General's Office on behalf of the State of Florida.

2          We have filed an instrument panel cluster case

3    against three defendants, Nippon Seiki and two of its

4    subsidiaries.  We filed that back in May and just recently a

5    couple weeks ago we were transferred into the MDL, so here we

6    are.

7          THE COURT:  You are limiting yourself -- I

8    shouldn't say it that way.  You are on the instrument panel

9    cases only, is that the only thing?

10          MR. SLEMP:  Yes, and at this time --

11          THE COURT:  What does this mean, it is for all the

12    people in the State of Florida?

13          MR. SLEMP:  We have filed on behalf of consumers,

14    government state agencies which includes municipalities and

15    counties, and we also have claims for civil penalties.

16          THE COURT:  I guess what I'm wondering, this is

17    kind of like a separate category here, we have got -- how do

18    we categorize you as a plaintiff?  You are not --

19          MR. SLEMP:  Well, Your Honor, I think we're --

20          THE COURT:  I don't know.  I don't know what to do.

21    Are we going to have one of these from every state?

22          MR. SLEMP:  To my knowledge, I don't know at this

23    point.  I wouldn't anticipate it but I can't speak for what

24    other states might do.  At this time I think we are most

25    closely aligned with the end payor group.

 1          THE COURT:  The end payor group?

 2          MR. SLEMP:  But we do have claims for civil

 3   penalties which does distinguish us from the end payors, but

 4   it is our understanding that the case management orders will

 5   be filed in our case as well.

 6          THE COURT:  I would assume they would be but I want

 7   to know if any of the other plaintiffs have any other

 8   comments on this.  This one kind of surprised me.

 9          MR. WILLIAMS:  Your Honor, Steve Williams on behalf

10   of the end payors.

11          I think the prime comment for us is we are doing

12   everything we can to work cooperatively with the Florida

13   attorney general to eliminate any duplication or any

14   inefficiencies that may be caused at this early point in the

15   case, so really the primary point for us is we are working

16   together, we communicate regularly to make sure that for the

17   Court and the parties this is done in the most efficient way.

18   And then in terms of how far the cases play out, I think they

19   will fold in for the most part in terms of discovery and in

20   terms of how the pleadings are resolved while they assert the

21   statutory and the claims on behalf of the sovereign that they

22   have that are unique from the claims that we have.

23          THE COURT:  Okay.  And, Mr. Slemp, I think, yes,

24   you really have to work this coordination because I don't

25   know, I have received attorney fees, which are confidential

1   so I'm not going into that, but I want to go into the hours,

2   there is apparently an extraordinary number of hours.  I

3   mean, I don't know if you know what you are getting into, I

4   guess, and this could be coordinated because many of your

5   plaintiffs are the same plaintiffs in the -- well, I assume

6   they are all almost the same plaintiffs in the other cases,

7   so I do encourage this coordination of this effort.

8        MR. SLEMP:  Yes, Your Honor.  We fully intend to

9   coordinate our effort to the end payor group.

10       THE COURT:  Okay.  Are you anticipating that there

11  are other states or is this something that you are not yet

12  free to discuss?

13       MR. SLEMP:  I'm not free to discuss at this time.

14       THE COURT:  Okay.  All right.

15       MR. SLEMP:  Thank you, Your Honor.

16       THE COURT:  Thank you.  After all of this time I'm

17  still not able to grasp where we are going here in the end if

18  we even get by subsequent summary judgment motions, but it is

19  like as those parts continue to come up -- maybe I should ask

20  plaintiffs this:  Are you -- in terms of a resolution of this

21  case, what are your thoughts?  We need to wait until we have

22  all of our parts?  I mean, we only have one car obviously,

23  you know, with all of its parts.  I just want a heads up if

24  you could give me something as to where this is going?

25       MR. KOHN:  May it please the Court, Joseph Kohn,

1    Kohn, Swift & Graf, one of the direct purchaser counsels.

2          Your Honor, we, of course, as plaintiffs are always

3    interested in talking about resolution.  We don't consider it

4    a sign of strength if somebody doesn't want to talk about it,

5    we don't consider it a sign of weakness if you do.  Each of

6    these parts are, from our perspective as the direct

7    purchasers, are separate cases, part of the overall MDL.

8    They are -- in some cases the classes are slightly different.

9    There are some direct purchasers that buy wire harnesses but

10   do not buy wipers, and with respect to those cases we think

11   each of those cases to a certain extent rises or falls on

12   their own merits, and settlements with defendants that are

13   only in those cases would be handled as any settlement in

14   class-action litigation would occur.

15         You have certain defendants that make products and

16   there has been a series of cases, for example, in the

17   chemical industry, some were brought together in one court,

18   some were MDL'ed into different courts, some of those

19   defendants overlapped.  BASF was a defendant in a number of

20   those, Akzo Nobel.  Sometimes those cases then were settled

21   seriatim.  So that is a model that would exist with respect

22   to, let's say, defendant A makes product X, that case

23   would -- that litigation could be settled partially or fully.

24   If a defendant A makes products X, Y and Z, defendant A could

25   settle product X but not Y, they may have defenses on

1    product Y.

2          THE COURT:  If a defendant settles a product for X

3    dollars --

4          MR. KOHN:  Yes.

5          THE COURT:  -- is this X dollars put into a fund or

6    do you create an entity until all of these defendants are

7    resolved?

8          MR. KOHN:  As to each particular product part it

9    goes into a fund.  Sometimes there is an interim distribution

10   to class members, it becomes sort of an issue of efficiency.

11   If there is a sufficient amount of money in that fund but

12   there are still other defendants that want to litigate for

13   the next ten years, sometimes we will propose that there be a

14   distribution to the class so they get some recovery at that

15   point.

16         Our direct purchaser classes do have some

17   difference from the indirect purchasers who I will not speak

18   for.  To the extent that the indirect end payors are

19   consumers who buy an automobile their class is different than

20   our classes of direct purchasers.  They may have some

21   proposals that would be different from that in terms of any

22   individual automobile buyer who has all of these claims

23   together.

24         THE COURT:  Then when -- I don't know what the

25   hours you are putting toward experts, what those experts are

 1   doing right now or what information you are seeking from

 2   them, but I take it also that in the end, I mean, we know we

 3   have some parts because we have pleas, so in this case we

 4   know that we have some defendants who are going to be

 5   responsible, liable.  The question of damages is did that

 6   make a difference in the cost of the car?  Is that something

 7   that you wait until the end, are you working on that because

 8   it seems to me to be a rather big issue?

 9          MR. KOHN:  For the direct purchasers it is a

10   question whether it made a difference with respect to that

11   product.

12          THE COURT:  That product, yes.

13          MR. KOHN:  With the end payors and the dealers,

14   they have different issues with respect to how that flowed

15   through or cascaded through the economy with respect to those

16   products but, yes, the experts, that's part of where some of

17   discovery discussions early on about the transactional data,

18   those materials that we will now be moving ahead with, those

19   are the numbers that experts will crunch as to what were the

20   input costs, what is the cost that we paid for the product,

21   what is the cost for the automobile, and those are both part

22   of a class certification analysis at one level and then

23   ultimately is our damage proof with a claim, the number, if

24   you will, the plaintiffs would put on the board against which

25   a settlement negotiation would take place.

1          THE COURT:  All right.  I ask these questions only

2    because I don't want to ever miss any opportunity to begin

3    discussions on resolution of this case, and I say that -- I

4    mean, you plaintiffs' attorneys are all very experienced so I

5    say that as the Court is open to that.

6          MR. KOHN:  And as are the defense counsel, and I

7    don't think we are speaking out of school, there was some

8    mention at the last hearing about discussions, that there has

9    been discussions among experienced lawyers who know each

10   other.  At some point it may be appropriate for the Court to

11   have a conference perhaps that is devoted to a Rule 16

12   conference to explore issues.  We think that might be

13   premature as we stand here today but hopefully in the next

14   series of months that it may not be -- it may not be the

15   case.

16          And, again, to use the word template, we think

17   perhaps if some of these discussions do reach fruition there

18   would again be a template with respect to that process of are

19   there settlements that relate to all three plaintiffs'

20   groups, are there settlements with individual plaintiffs'

21   groups, are there settlements of cross products, are they

22   narrow, and I think that would be evident as that process

23   moves forward.

24          THE COURT:  Okay.

25          MR. KOHN:  Thank you, Your Honor.

1          THE COURT:  Counsel?

2          MR. BURNS:  Your Honor, just briefly, this is

3    Warren Burns for the end payor plaintiffs.

4          To touch on some of the issues that my colleague

5    referred to, since the beginning I don't think it is any

6    secret here that we on the end payor side and also more

7    broadly on the indirect side have been working with experts

8    to look at the particular issues that apply to our classes of

9    plaintiffs in these cases, so this is something that has been

10   on our mind since the beginning and are pursuing diligently

11   and will continue to do so going forward.

12         I also would echo that as we look at resolution of

13   parts short of trial we are open and amenable to looking at

14   broader resolutions that encompass a number of parts and

15   various vehicles.  There are obviously complexities involved

16   in this case and we will have to address that on a

17   defendant-by-defendant basis, but it is something that is

18   fresh in our minds and we are pursuing.

19         THE COURT:  Okay.

20         MR. VICTOR:  It's Paul Victor, again, Your Honor.

21         THE COURT:  You're not coming up here to make a

22   demand, are you?

23         MR. VICTOR:  No, no, of course not.

24         THE COURT:  Okay.

25         MR. VICTOR:  I just want to point out again that as

1   far as my clients are concerned each of these cases involve

2   separate parts, each of these classes are going to have to

3   try to get certified separately, it is not going to happen

4   together, it is not going to happen for all of these cases.

5   And as you pointed out, an interesting question is whether or

6   not some of this alleged overcharge was passed on, that's an

7   issue as to what about a purchaser of an automobile, did it

8   make a difference in the price of the automobile, there is a

9   lot of issues here, this is not going to be a big lump sum.

10  Maybe some of the defendants who have multiple parts want to

11  do something different but those defendants are -- at least

12  my clients who have individual parts want each of these

13  things handled separately.

14          THE COURT:  Okay.  I sense you're worried that you

15  are going to be lumped together with I don't know who but,

16  you know, I can assure you every part will be handled

17  separately if that's what is called for.

18          MR. VICTOR:  Thank you, Your Honor.

19          THE COURT:  Is there anything else?

20          MR. CUNEO:  Just to say two things.  First is that

21  dealers are also working with experts in order to make the

22  kind of determinations that Your Honor was discussing.  And

23  the second, looking right at the jury box, I have a phone

24  number connected to the outside world, I have an e-mail

25  address and we are open for business.  Thank you.

 1            THE COURT:  All right.  We have one last issue,

 2    which is the attorney fees.  Okay.  Let's hear what you have

 3    to say.

 4            The defendants should know that I did receive -- I

 5    received confidential memos so I don't know that they know

 6    but we talked about it last time that I asked you for --

 7            MR. KANNER:  Your Honor, Steve Kanner, from the

 8    Freed, Kanner, London & Millen firm again speaking as interim

 9    co-lead for the direct purchaser plaintiffs.

10            The defendants are aware and have received a copy

11    of the cover letter which was sent to this Court on June 18th

12    of 2013 which described the submission that we made to this

13    Court without, of course, giving them any information with

14    respect to that submission because it is obviously

15    attorney-client privilege information.

16            I'm happy to field any questions, but I would urge

17    this Court if there are specific questions I'm happy to

18    answer them in camera because, again, specifics would

19    undoubtedly open the door towards a view of what it is we are

20    doing and how we are doing it.

21            As a general matter, Your Honor, I can tell this

22    Court that an extraordinary amount of work goes in the first

23    case.  The seed -- the spade work is extraordinary and the

24    efforts are extraordinary, and I think just from seeing the

25    briefing and the motion to dismiss the time required was

 1    substantial.  And we continue to report to Your Honor each

 2    three months, every status conference we are here, on the

 3    amount of documents that have been produced to us.  We are

 4    not complaining about it by any stretch, it is -- the

 5    documents have been fruitful, we think they are beneficial to

 6    the prosecution of this case, and if anything we remain

 7    confident and perhaps even more so with respect to the basis

 8    for our cause of action.

 9            Now, without going into an argument of the case,

10    that's not my purpose to be here, I can tell you that as we

11    complete the review of time, the amount of time being put in

12    is obviously going to be reduced dramatically but, again,

13    with respect to specific questions we are happy to answer

14    those in a private situation, Your Honor.

15            THE COURT:  Well, I don't have specific questions

16    that I need to bring up at this point.  I do have concerns

17    because as a practical matter, and this isn't so different

18    from any other case, it is hard to get a grasp on attorney

19    fees.  You could tell me that you have 100 hours to prepare

20    something, obviously when we get to pleadings I have a better

21    idea of how much time because I can see it, but I don't

22    know -- I like your categories, I like the way the categories

23    have been laid out, you know, but I don't know.  I'm pulling

24    numbers out of the air here, you know, a thousand hours to

25    find defendants, find plaintiffs, you know, I don't know if

1   that's a reasonable number, and that's not the numbers, I

2   don't want to mislead anybody here or reveal anything here,

3   but I don't know if these things are reasonable, but I'm

4   going to be following it a little more closely and I may be

5   asking you for some more detail in the hours that you

6   submitted as to billing records.

7           MR. KANNER:  We are happy and will be responsive to

8   any requests along that line.  The form we used for Your

9   Honor is a form which is one which -- is one we typically use

10  in these cases, the format, the category breakdowns are the

11  ones most typically adhered to.

12          And we would also urge the Court to remember that's

13  almost two years worth of time from the time we began to

14  research this case and it needs to be perhaps viewed in that

15  perspective.  But, again, to the extent that there are any

16  specific questions, concerns, I'm happy to address them in

17  the appropriate forum, and on behalf of plaintiffs' counsel

18  we are very much aware of the need to monitor it tightly.  As

19  the case progresses it is easier to do so because you have a

20  better handle on what is going on.

21          THE COURT:  I would indicate if I do request

22  anything else I'm going to wait and see what the next three

23  months because it is going to be a smaller billing period,

24  right?

25          MR. KANNER:  That's correct.

```
 1              THE COURT:  Well, you actually ended -- I can't
 2    remember, was that the end of March?
 3              MR. KANNER:  It was time through March 31st.
 4              THE COURT:  Yeah, so --
 5              MR. KANNER:  Would you like --
 6              THE COURT:  -- if you would submit something to me
 7    through the end of June, if you would do that by the end of
 8    July, would that be --
 9              MR. KANNER:  I think we can do that.
10              THE COURT:  Well, wait a minute, this is already
11    the middle of July, but as soon as you can.
12              MR. KANNER:  I don't think there is a problem
13    putting it together for you some time in August, if that's
14    okay?
15              THE COURT:  That would be fine.  And if I have any
16    questions, if I need to contact anybody, you know, I worry
17    about ex-parte communications so I would let defendants know
18    somehow we would do a notice that they would know that I
19    would be contacting you only regarding the attorney fees,
20    which are confidential, so you know that would be happening
21    if it should happen, and we will go with that.
22              MR. KANNER:  Very well, Your Honor.
23              THE COURT:  Is that satisfactory with the
24    defendants?  I don't know how else to do this because we have
25    to keep it confidential.  Okay.  All right.  Is there
```

1   anything else, Mr. Fink?

2        MR. FINK:  If I may, Your Honor, just one point

3   with respect to the fees.  Ultimately as the Court is well

4   aware the Court will have to approve any fee but it is

5   extremely important to understand in the context of an

6   antitrust class action the most common fee application, and

7   of course I can't speak to any application that is not

8   currently pending, but the most common fee application would

9   be seeking a percentage of the recovery.  And all of this

10  loadstar data, what we are calling our attorney fees, all of

11  that data is often referred to by the court or looked to by

12  the court as a crosscheck against the reasonableness of the

13  fee, but it doesn't drive the fee so it isn't that each time

14  somebody puts down one hour for review of documents that that

15  means the Court is being asked to award an amount for that

16  review of the documents but rather the Court will have a

17  broader understanding, of course, of the case at that point,

18  the Court will be advised at that point as to all the work

19  related to the case and why it is the percentage recovery

20  would make sense but generally in the 6th Circuit plaintiffs

21  seek a percentage of the recovery.

22        THE COURT:  Thank you.

23        MR. FINK:  Thank you.

24        MR. TUBACK:  Your Honor, Michael Tuback on behalf

25  of the Leoni defendants.

```
 1           I haven't conferred with any of my colleagues
 2   because the issue of the meeting relating to attorney fees
 3   just came up in court today, but we -- I would at least have
 4   some concern about the Court meeting with the plaintiffs'
 5   counsel alone to talk about the bills that they have
 6   submitted or the hours that they put in only because I think
 7   it is very difficult to talk about the reasonableness of the
 8   hours expended so far without also getting into the merits of
 9   the case, and I know the Court wouldn't entertain motions or
10   arguments specifically on issues but it is difficult to talk
11   about those issues without also getting into what they are
12   doing and the merits of the case.
13           THE COURT:  I agree it -- mostly if I have
14   questions would be questions in writing as opposed to like
15   meeting with them in a conference.
16           MR. TUBACK:  I appreciate that, Your Honor.  Thank
17   you.
18           THE COURT:  And I don't have questions now, and I
19   would say to the plaintiffs I'm not flyspecking, you know,
20   you spent two hours reviewing a memo, I'm not doing that.
21           MR. KANNER:  I understand, Your Honor.  I would
22   also tell the Court, and some of my colleagues were in that
23   case, in the filters antitrust litigation the judge met with
24   plaintiffs on two occasions, early in the case to give his
25   thoughts about how it should be maintained, and once in the
```

```
 1    case as things progressed just again to get -- to satisfy his

 2    concerns about certain issues and we addressed them, and

 3    certainly we were able to do that without imposing any

 4    argument or anything of any consequence other than a direct

 5    response to those questions.  If the Court feels it is

 6    necessary we are certainly willing to do so, as I said

 7    before.

 8              THE COURT:  All right.  If I do I will let -- I

 9    mean, I will let the defendants know too, but at this point I

10    don't think that it will be necessary and I would hope that

11    we could do it in writing just so we have a record if ever

12    there is any question.

13              Anything else?  All right.  Thank you very much.

14    We will see you in November.  Have a good summer and fall.

15              THE CASE MANAGER:  All rise.  Court is adjourned.

16              (Proceedings concluded at 12:26 p.m.)

17                           -    -    -

18

19

20

21

22

23

24

25
```

1                        *CERTIFICATION*

2

3              I, Robert L. Smith, Official Court Reporter of

4      the United States District Court, Eastern District of

5      Michigan, appointed pursuant to the provisions of Title 28,

6      United States Code, Section 753, do hereby certify that the

7      foregoing pages comprise a full, true and correct transcript

8      taken in the matter of MDL 12-md-02311 on Wednesday,

9      July 10, 2013.

10

11

12                              *s/Robert L. Smith*
                                Robert L. Smith, RPR, CSR 5098
13                              Federal Official Court Reporter
                                United States District Court
14                              Eastern District of Michigan

15

16

17     Date:   07/31/2013

18     Detroit, Michigan

19

20

21

22

23

24

25