# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Occupant Safety Restraint Systems | |
| THIS DOCUMENT RELATES TO: | |
| All Automobile Dealer Actions All End-Payor Actions | Child Case: 12-cv-00602 Child Case: 12-cv-00603 |
| | **ORAL ARGUMENT REQUESTED** |

## DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END-PAYORS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE AUTOMOBILE DEALERS' CONSOLIDATED CLASS COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants TRW Automotive Holdings Corp., TRW Deutschland Holding GmbH, TRAM, Inc., Tokai Rika Co., LTD., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Japan Limited, Autoliv Safety Technology, Incorporated, Autoliv, Incorporated, Takata Corporation, and TK Holdings Inc. (collectively "defendants"), through its counsel, hereby move to dismiss the Dealership Consolidated Class Complaint, No. 2:12-cv-00602-MOB-MKM (Doc. #55) (July 3, 2013) and the Occupant Safety Restraint Systems' Consolidated Amended Class Action Complaint, No. 2:12-cv-00603-MOB-MKM (Doc. #55) (June 6, 2013) (collectively the "complaints") for failure to state a claim upon which relief may be granted.

1.      The complaints fail to allege facts sufficient to support the claims alleged against defendants.

2.      The complaints fail to allege facts sufficient to show injury that is not speculative and, therefore, the plaintiffs do not have standing to bring their claims.

3.     The complaints fail to allege facts to establish antitrust injury.

4.     The state law claims are limited and/or barred by the applicable statute of limitations.

5.     The complaints fail to allege facts demonstrating that the alleged conduct is within the purview of the identified state laws.

Prior to filing this motion, defendants' counsel sought concurrence from counsel for the plaintiffs, as required by Local Rule 7.1, for the relief requested herein.  Such concurrence was not forthcoming and, therefore, this motion is necessary.

In support of its motion, defendants rely upon the authorities and arguments set forth in the accompanying brief and attached exhibits.

Dated:  October 21, 2013                          Respectfully submitted,

| | |
|---|---|
| David M. Zinn<br>John E. Schmidtlein<br>Samuel Bryant Davidoff<br>**Williams & Connolly LLP**<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>202-434-5000<br>Fax: 202-434-5029<br>dzinn@wc.com<br>jschmidtlein@wc.com<br>sdavidoff@wc.com | By: /s/ Robert J. Wierenga<br>Robert J. Wierenga<br>Suzanne L. Wahl<br>**Schiff Hardin LLP**<br>340 S. Main Street, Suite 210<br>Ann Arbor, MI  48104<br>734-222-1500<br>Fax: (734) 222-1501<br>rwierenga@schiffhardin.com<br>swahl@schiffhardin.com |
| **COUNSEL FOR DEFENDANTS TAKATA CORPORATION AND TK HOLDINGS INC.** | |

| | |
|---|---|
| | /s/Howard B. Iwrey<br>James P. Feeney (P13335)<br>Howard B. Iwrey (P39635)<br>Benjamin W. Jeffers (P57161)<br>David J. Council (P73163)<br>DYKEMA GOSSETT PLLC<br>39577 Woodward Avenue, Suite 300<br>Bloomfield Hills, MI 48304 |

| | 248 203-0526<br>Fax: 248-203-0763<br>jfeeney@dykema.com<br>hiwrey@dykema.com<br>bjeffers@dykema.com<br>dcouncil@dykema.com |
|---|---|
| **COUNSEL FOR DEFENDANTS TRW AUTOMOTIVE HOLDINGS CORP. AND TRW DEUTSCHLAND HOLDING GMBH** | |

| | |
|---|---|
| W. Todd Miller<br>BAKER & MILLER PLLC<br>2401 Pennsylvania Ave., N.W.<br>Suite 300<br>Washington, DC 20037<br>202-663-7820<br>Fax: 202-663-7849<br>tmiller@bakerandmiller.com | /s/ David F. DuMouchel<br>David F. DuMouchel (P25658)<br>Sheldon H. Klein (P41062)<br>George B. Donnini (P66798)<br>BUTZEL LONG PC<br>150 W. Jefferson, Suite 900<br>Detroit, MI 48226-4430<br>313-225-7000<br>dumouchd@butzel.com<br>Klein@butzel.com<br>donnini@butzel.com |
| **COUNSEL FOR DEFENDANTS TRAM, INC. AND TOKAI RIKA CO., LTD.** | |

| | |
|---|---|
| Peter Kontio<br>ALSTON & BIRD<br>1201 W. Peachtree Street, Suite 4000<br>Atlanta, GA 30309-3424<br>404-881-7000<br>Fax: 404-253-9690<br>peter.kontio@alston.com | /s/ Joanne Geha Swanson<br>Joanne Geha Swanson (P33594)<br>Fred K. Herrmann (P49519)<br>Dwayne D. Stresman (P73283)<br>KERR, RUSSELL & WEBER PLC<br>500 Woodward Avenue, Suite 2500<br>Detroit, MI 48226-3406<br>313-961-0200<br>jswanson@kerr-russell.com<br>fherrmann@kerr-russell.com |
| **COUNSEL FOR AUTOLIV DEFENDANTS** | |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Occupant Safety Restraint Systems | |
| THIS DOCUMENT RELATES TO: | |
| All Automobile Dealer Actions All End-Payor Actions | Child Case: 12-cv-00602 Child Case: 12-cv-00603 **ORAL ARGUMENT REQUESTED** |

**BRIEF IN SUPPORT OF**
**DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END-PAYORS'**
**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE**
**AUTOMOBILE DEALERS' CONSOLIDATED CLASS COMPLAINT**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................. xiii

STATEMENT OF THE ISSUES PRESENTED .................................................. xxviii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES .............. xxxi

INTRODUCTION ..............................................................................................1

ARGUMENT .....................................................................................................3

I.     THE IPPS FAIL TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM. ...........3

II.    THE COURT SHOULD DISMISS THE IPPS' CLAIMS FOR LACK OF
       CONSTITUTIONAL STANDING. ...............................................................6

       A.     The IPPs Do Not Sufficiently Allege that They Purchased Affected
              Products.................................................................................6

       B.     IPPs Have Not Sufficiently Alleged a Causal Connection Between Their
              Injury and the Alleged Conspiracy. .........................................8

       C.     A Ruling on the ADs' Standing To Bring Certain State Law Claims
              Should Not Await Class Certification.......................................9

III.   THE COURT SHOULD DISMISS THE IPPS' CLAIMS BECAUSE THE IPPS
       CANNOT DEMONSTRATE ANTITRUST STANDING UNDER *AGC*.......................10

IV.    THE COURT SHOULD DISMISS THE IPPS' UNJUST ENRICHMENT
       CLAIMS. ..............................................................................................13

       A.     Plaintiffs Do Not Adequately Plead Claims for Unjust Enrichment. ...................13

       B.     The IPPs Cannot Use Unjust Enrichment To Recover on Failed Antitrust
              and Consumer Protection Theories...........................................15

       C.     The IPPs' Unjust Enrichment Claims Fail Because the IPPs Do Not
              Satisfy the Direct Benefit Requirement in Certain States.....................16

       D.     The IPPs' Unjust Enrichment Claims Fail Because the IPPs Do Not
              Satisfy the Benefit of the Bargain Limitation in Certain States...........................17

       E.     The IPPs' Claims Fail in Certain States Because Defendants Provided
              Consideration for any Benefit. ................................................18

V.      MANY OF THE IPPS' STATE-LAW CLAIMS ARE BARRED BY STATUTES
        OF LIMITATIONS.......................................................................................................19

VI.     THE COURT SHOULD DISMISS MANY OF THE IPPS' STATE LAW
        CLAIMS ON STATUTORY OR OTHER GROUNDS....................................................20

        A.      Arizona...........................................................................................................21

                1.      The IPPs' Arizona Antitrust Claims Fail for Lack of Antitrust
                        Standing. .............................................................................................21

                2.      The IPPs' Arizona Unjust Enrichment Claims Fail for Three
                        Reasons. ..............................................................................................21

                3.      Arizona's Statute of Limitations Bars the IPPs' Antitrust and
                        Unjust Enrichment Claims in Whole or in Part. ........................................22

        B.      Arkansas..........................................................................................................23

                1.      The ADs' Price Fixing Claims Are Not Actionable Under the
                        Consumer Protection Laws of Arkansas................................................23

                2.      Because the ADs Merely Allege Overpayment, They Have No
                        Right of Action Under Arkansas Consumer Protection Law....................23

                3.      The ADs Lack Standing To Assert Consumer Protection Claims
                        Under Arkansas Law Because Their Claims Are Too Remote. ...............24

                4.      The ADs' Consumer Protection Claim Fails Because Plaintiffs Do
                        Not Allege "Unconscionable" Conduct. ...................................................24

                5.      The ADs' Arkansas Unjust Enrichment Claim Fails Because They
                        Received the Benefit of Their Bargains....................................................25

                6.      Arkansas's Statute of Limitations Bars the ADs' Consumer
                        Protection and Unjust Enrichment Claims in Whole or in Part. ...............25

        C.      California ........................................................................................................26

                1.      The IPPs' California Antitrust Claims Fail for Lack of Standing. ............26

                2.      An Insufficient California Nexus Prohibits the EPs' Consumer
                        Protection Claim. ....................................................................................26

                3.      California Does Not Recognize a Cause of Action for Unjust
                        Enrichment. ...........................................................................................26

4.     Alternatively, the IPPs' California Unjust Enrichment Claim Fails Because They Received the Benefit of Their Bargains. ...........................27

5.     California's Statute of Limitations Bars the IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims in Whole or in Part. .......................................................................................27

D.     District of Columbia ...................................................................28

    1.     The IPPs' D.C. Antitrust Claims Fail for Lack of Standing. ....................28

    2.     The ADs' Consumer Protection Claim Fails Under D.C. Law Because the ADs Are Not Consumers. ......................................................28

    3.     The IPPs Fail To Allege a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce, Which Is Fatal to Their Antitrust Claims Under D.C. Law. ............................................................29

    4.     IPPs' D.C. Unjust Enrichment Claims Fail for Two Reasons. .................30

    5.     D.C.'s Statutes of Limitations Bars the IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims in Whole or in Part. ..............31

E.     Florida ......................................................................................31

    1.     The IPPs Fail To Plead Fraud with Particularity as Required To State a Consumer Protection Claim Under Florida Law. .........................31

    2.     The IPPs' Florida Unjust Enrichment Claims Fail for Four Reasons. .................................................................................32

    3.     Florida's Statute of Limitations Bars the IPPs' Consumer Protection and Unjust Enrichment Claims...................................................35

F.     Hawaii ......................................................................................35

    1.     The ADs' Hawaii Antitrust Claim Fails for Lack of Standing. .................35

    2.     The ADs Cannot Maintain an Antitrust Claim Under Hawaii Law Because They Did Not Give the State of Hawaii an Opportunity To Prosecute. ...............................................................................36

    3.     The IPPs' Hawaii Unjust Enrichment Claims Fail Because the IPPs Have an Adequate Remedy at Law.............................................36

|   | 4. | Hawaii's Statute of Limitation Bars the ADs' Antitrust, the EPs' Consumer Protection, and the IPPs' Unjust Enrichment Claims in Whole or in Part. ..................................................................36 |
|---|----|----|
| G. | Illinois | ..............................................................................................37 |
|   | 1. | The ADs' Illinois Antitrust Claim Fails for Lack of Standing. ...............37 |
|   | 2. | The ADs Cannot Maintain an Antitrust Claim as a Class Action Under Illinois Law. ....................................................................37 |
|   | 3. | The ADs' Illinois Unjust Enrichment Claim Fails for Two Reasons. ................................................................................38 |
|   | 4. | Illinois's Statute of Limitations Bars the ADs' Antitrust and Unjust Enrichment Claims.............................................................38 |
| H. | Iowa | ...............................................................................................39 |
|   | 1. | The IPPs' Iowa Antitrust Claims Fail for Lack of Standing......................39 |
|   | 2. | The IPPs' Iowa Unjust Enrichment Claims Fail for Two Reasons. ..........39 |
|   | 3. | Iowa's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.....................................40 |
| I. | Kansas | .............................................................................................40 |
|   | 1. | The IPPs' Kansas Antitrust Claims Fail for Lack of Standing. ................40 |
|   | 2. | The IPPs' Kansas Unjust Enrichment Claims Fail for Two Reasons. ................................................................................41 |
|   | 3. | Kansas's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part....................................42 |
| J. | Maine | ..............................................................................................42 |
|   | 1. | The IPPs' Maine Antitrust Claims Fail for Lack of Standing. .................42 |
|   | 2. | The IPPs' Maine Unjust Enrichment Claims Fail Because the IPPs Did Not Confer a Direct Benefit on Defendants.......................................43 |
|   | 3. | Maine's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.....................................43 |

K.   Massachusetts ................................................................................44

   1.   The EPs Lack Standing To Bring an Antitrust Claim Under
        Massachusetts Law Because They Are Indirect Purchasers. .....................44

   2.   The EPs Fail To Allege a Sufficient Nexus with Massachusetts,
        Which Is Fatal to Their Antitrust Claims Under Massachusetts
        Law. ................................................................................................44

   3.   The IPPs' Massachusetts Unjust Enrichment Claims Fail for Three
        Reasons. ..........................................................................................45

   4.   Massachusetts's Statute of Limitations Bars the EPs' Antitrust
        Claim and IPPs' Unjust Enrichment Claim in Whole or in Part...............45

L.   Michigan .......................................................................................46

   1.   The IPPs' Michigan Antitrust Claims Fail for Lack of Standing. .............46

   2.   The IPPs' Michigan Unjust Enrichment Claims Fail for Two
        Reasons. ..........................................................................................46

   3.   Michigan's Statute of Limitations Bars the IPPs' Antitrust and
        Unjust Enrichment Claims in Whole or in Part. .......................................47

M.   Minnesota......................................................................................48

   1.   The IPPs' Minnesota Unjust Enrichment Claims Fail for Three
        Reasons. ..........................................................................................48

   2.   Minnesota's Statute of Limitations Bars the IPPs' Antitrust and
        Unjust Enrichment Claims in Whole or in Part. .......................................49

N.   Mississippi ....................................................................................49

   1.   The IPPs' Mississippi Antitrust Claims Fail for Lack of Standing. ..........49

   2.   The IPPs' Mississippi Antitrust Claims Fail Because IPPs Do Not
        Allege Conduct by Defendants that Took Place Wholly in
        Mississippi. .....................................................................................49

   3.   The IPPs' Mississippi Unjust Enrichment Claims Fail for Two
        Reasons. ..........................................................................................51

   4.   Mississippi's Statute of Limitations Bars IPPs' Antitrust and
        Unjust Enrichment Claims in Whole or in Part. .......................................51

O.     Missouri ................................................................................................52

     1.    The IPPs' Missouri Unjust Enrichment Claims Fail For Two
          Reasons. .............................................................................................52

     2.    Missouri's Statute of Limitations Bars the EPs' Consumer
          Protection and the IPPs' Unjust Enrichment Claims in Whole or in
          Part. ...................................................................................................52

P.     Montana ...............................................................................................53

     1.    The EPs Cannot Maintain Their Consumer Protection Claims as a
          Class Action Under Montana Law. .................................................53

     2.    The EPs Fail To Allege a Sufficient Nexus Between Defendants'
          Conduct and Intrastate Commerce and Thus Cannot State a
          Consumer Protection Claim Under Montana Law. .......................54

     3.    Montana's Statute of Limitations Bars the EPs' Consumer
          Protection and Unjust Enrichment Claims in Whole or in Part. ...............55

Q.     Nebraska .............................................................................................55

     1.    The IPPs' Nebraska Antitrust Claims Fail for Lack of Standing. ..............55

     2.    The IPPs' Nebraska Unjust Enrichment Claims Fail Because the
          IPPs Received the Benefit of Their Bargains. ...........................56

     3.    Nebraska's Statute of Limitations Bars the IPPs' Antitrust and
          Unjust Enrichment Claims in Whole or in Part. ........................56

R.     Nevada ................................................................................................56

     1.    IPPs' Nevada Antitrust Claims Fail for Lack of Standing. ........................56

     2.    The IPPs' Nevada Antitrust Claims Fail Because the IPPs Do Not
          Allege Conduct by Defendants that Took Place in Nevada. ......................57

     3.    The IPPs' Nevada Unjust Enrichment Claims Fail Because
          Defendants Provided Consideration. ..........................................57

     4.    Nevada's Statute of Limitations Bars the IPPs' Antitrust and
          Unjust Enrichment Claims In Whole Or In Part. .......................58

S.     New Hampshire ..................................................................................58

1.      The IPPs' New Hampshire Antitrust Claims Fail for Lack of
        Standing. .........................................................................................58

2.      The IPPs Cannot Assert Retroactive Antitrust Claims Under the
        Antitrust Laws of New Hampshire. ..........................................................59

3.      The IPPs' New Hampshire Unjust Enrichment Claims Fail for Two
        Reasons. ...........................................................................................59

4.      New Hampshire's Statute of Limitations Bars the IPPs' Antitrust
        and Unjust Enrichment Claims in Whole or in Part. ...............................59

T.      New Mexico.....................................................................................60

1.      IPPs' New Mexico Antitrust Claims Fail for Lack of Standing. ..............60

2.      The IPPs' New Mexico Consumer Protection Claims Fail Because
        IPPs Do Not Allege "Unconscionable" Conduct.....................................60

3.      The IPPs' New Mexico Unjust Enrichment Claims Fail Because
        Plaintiffs Received the Benefit of Their Bargains. ..................................62

4.      New Mexico's Statute of Limitations Bars the IPPs Antitrust,
        Consumer Protection, and Unjust Enrichment Claims in Whole or
        in Part. .............................................................................................62

U.      New York.........................................................................................62

1.      The IPPs' New York Antitrust Claims Fail for Lack of Standing.............62

2.      The EPs' New York Antitrust Claim Fails Because They Do Not
        Allege a Sufficient Impact on Intrastate Commerce.................................63

3.      The EPs'  New York Consumer Protection Claim Fails Because
        Their Injuries Are Too Remote................................................................63

4.      The IPPs' New York Consumer Protection Claims Fail Because
        IPPs Have Not Alleged a Deceptive Act Directed Towards
        Consumers.........................................................................................64

5.      The EPs' New York Consumer Protection Claim Fails Because
        They Do Not Allege that the Deceptive Transaction Occurred in
        New York...........................................................................................64

6.      The IPPs' New York Unjust Enrichment Claims Fail for Two
        Reasons. ...........................................................................................65

7.      New York's Statutes of Limitations Bars the IPPs' Antitrust, Consumer Protection and Unjust Enrichment Claims in Whole or in Part. ...............................................................................67

V.      North Carolina ...................................................................................67

1.      The IPPs' North Carolina Antitrust Claims Fail for Lack of Standing. ..................................................................................67

2.      The IPPs Fail To Allege Conduct That Took Place in North Carolina, Which Is Fatal to Their Antitrust Claims Under North Carolina Law..................................................................68

3.      The IPPs Fail To Allege a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce and Thus Cannot State a Consumer Protection Claim Under North Carolina Law...........................68

4.      The IPPs' North Carolina Unjust Enrichment Claims Fail for Two Reasons. ......................................................................69

5.      North Carolina's Statute of Limitations Bars the IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims In Whole or In Part...........................................................................70

W.      North Dakota.....................................................................................71

1.      The IPPs' North Dakota Antitrust Claims Fail for Lack of Standing. ..................................................................................71

2.      The IPPs' North Dakota Unjust Enrichment Claims Fail for Three Reasons. ......................................................................71

3.      North Dakota's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part. ........................72

X.      Oregon...............................................................................................72

1.      The IPPs' Oregon Antitrust Claims Fail for Lack of Standing.................72

2.      The IPPs' Oregon Unjust Enrichment Claims Fail Because Plaintiffs Received the Benefit of Their Bargains. ...................................73

3.      Oregon's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part. .........................................73

Y.      Rhode Island .....................................................................................73

1.      The EPs' Price Fixing Claims Are Not Actionable Under the
        Consumer Protection Laws of Rhode Island. ............................................73

2.      The EPs' Rhode Island Unjust Enrichment Claim Fails for Two
        Reasons. .................................................................................................74

3.      Rhode Island's Statute of Limitations Bars the EPs' Consumer
        Protection and Unjust Enrichment Claims in Whole or in Part. ...............75

Z.      South Carolina ...................................................................................................75

1.      The ADs Cannot Maintain Their Consumer Protection Claim as a
        Class Action Under South Carolina Law. ..................................................75

2.      The ADs' South Carolina Unjust Enrichment Claim Fails for Three
        Reasons. .................................................................................................76

3.      South Carolina's Statute of Limitations Bars ADs' Consumer
        Protection Claims In Whole or In Part. ......................................................77

AA.     South Dakota .......................................................................................................78

1.      The IPPs' South Dakota Antitrust Claims Fail for Lack of
        Standing. .................................................................................................78

2.      The IPPs Fail To Allege a Sufficient Nexus Between Defendants'
        Conduct and Intrastate Commerce, Which Is Fatal to Their
        Antitrust Claims Under South Dakota Law. ...............................................78

3.      The IPPs' South Dakota Unjust Enrichment Claims Fail Because
        Defendants Provided Consideration to IPPs for any Benefit
        Received. .................................................................................................78

4.      South Dakota's Statute of Limitations Bars the IPPs' Antitrust and
        Unjust Enrichment Claims in Whole or in Part. ........................................79

BB.     Tennessee ...........................................................................................................79

1.      The IPPs' Tennessee Antitrust Claims Fail for Lack of Standing. ............79

2.      The EPs Fail To Allege a Sufficient Nexus Between Defendants'
        Conduct and Intrastate Commerce, Which Is Fatal to Their
        Antitrust Claim Under Tennessee Law. .....................................................80

3.      The IPPs' Tennessee Unjust Enrichment Claims Fail for Two
        Reasons. .................................................................................................80

4.       Tennessee's Statute of Limitations Bars the IPPs' Antitrust and
Consumer Protection Claims in Whole or in Part.....................................81

CC.    Utah..................................................................................................................82

1.       The IPPs' Utah Antitrust Claims Fail for Lack of Standing.....................82

2.       The IPPs Cannot Assert Retroactive Antitrust Claims Under Utah
Law. .........................................................................................................82

3.       The IPPs' Utah Unjust Enrichment Claims Fail for Four Reasons. ..........83

4.       Utah's Statute of Limitations Bars the IPPs' Antitrust and Unjust
Enrichment Claims in Whole or in Part.....................................................85

DD.    Vermont ..........................................................................................................85

1.       The IPPs' Vermont Antitrust and Consumer Protection Claims Fail
for Lack of Standing. ................................................................................85

2.       The IPPs' Vermont Unjust Enrichment Claims Fail Because
Plaintiffs Received Consideration for the Benefit Conferred. ...................86

3.       Vermont's Statute of Limitations Bars the IPPs' Antitrust,
Consumer Protection and Unjust Enrichment Claims in Whole or
in Part.......................................................................................................86

EE.    West Virginia ..................................................................................................86

1.       The IPPs' West Virginia Antitrust Claims Fail for Lack of
Standing. ..................................................................................................86

2.       The EPs' West Virginia Antitrust Claim Fails Because EPs Do Not
Allege a Sufficient Impact on Intrastate Commerce..................................87

3.       The IPPs' West Virginia Unjust Enrichment Claims Fail Because
They Fall Short of West Virginia's Pleading Requirements. ....................87

4.       West Virginia's Statute of Limitations Bars the IPPs' Antitrust and
Unjust Enrichment Claims In Whole or In Part.........................................88

FF.    Wisconsin........................................................................................................88

1.       The IPPs' Wisconsin Antitrust Claims Fail for Lack of Standing.............88

2.      IPPs' Wisconsin Unjust Enrichment Claims Fail Because
        Defendants Provided Consideration for Any Benefit Received. ...............88

3.      Wisconsin's Statute of Limitations Bars the IPPs' Antitrust and
        Unjust Enrichment Claims in Whole or in Part. ........................................89

VII.    THE IPPS HAVE FAILED TO ALLEGE PLAUSIBLE THREATENED
        FUTURE INJURY ENTITLING THEM TO INJUNCTIVE RELIEF. ...........................89

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Allen v. Wright*, 468 U.S. 737 (1984) ............................................................6

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999) ........................................................46

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005) ..................................................................32

*Am. Movie Classics v. Rainbow Media Holdings*, 508 F. App'x 826 (10th Cir. 2013) ................84

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................3, 15, 68

*Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) .......................................................... *passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................3, 25, 61

*Boulware v. Nevada*, 960 F.2d 793 (9th Cir. 1992) .....................................................56

*Brenner v. Brenner*, 821 F. Supp. 2d 533 (E.D.N.Y. 2011) ....................................65, 66

*Bristol Vill., Inc. v. La.-Pac. Corp.*, 916 F. Supp. 2d 357 (W.D.N.Y. 2013) .............................66

*California v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 1766775 (N.D. Cal. Apr. 15, 2008) ..................................................................82

*California v. Infineon Techs. AG.*, 531 F. Supp. 2d 1124 (N.D. Cal. 2007) ..........................49, 50

*Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475, 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) .............................................................65

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) .....................................3

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286 (6th Cir. 2006) ..............................................................9

*Davis v. Four Seasons Hotel Ltd.*, No. 08-00525, 2011 WL 5025521 (D. Haw. Oct. 20, 2011) ..................................................................36

*Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975) ...............................20

*Dist. 1199P Health & Welfare Plan v. Janssen, LP*, 784 F. Supp. 2d 508 (D.N.J. 2011) .............18

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) .................................33, 77

*Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010) ...............................69

*Dunkel v. eBay, Inc.*, No. 5:12-CV-01452-EJD, 2013 WL 415584 (N.D. Cal. Jan. 31, 2013) ..........................................................................................................................................27

*Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007).......................................3

*Eivaz v. Edwards*, No. 12-C-910, 2013 WL 989843 (E.D. Wis. Mar. 13, 2013) ..........................15

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)................................................9

*Fernandes v. Havkin*, 731 F. Supp. 2d 103 (D. Mass. 2010).........................................................45

*FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999).........................................................83

*Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045 (S.D. Fla. 2009)................32

*Glenwood Farms, Inc. v. Ivey*, 228 F.R.D. 47 (D. Me. 2005) ......................................................43

*Hinds Cnty. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 106 (S.D.N.Y. 2011) .................................4

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ. 5889(DAB), 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005) ...........................................................................................................63

*"In" Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987) .....................69

*In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ............................................................................................................... *passim*

*In re Automotive Parts Antitrust Litigation (In re Wire Harness Cases)*, No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013)..................................................... *passim*

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001) .......................................46

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009) ...............61

*In re CRT Antitrust Litig. ("CRT I")*, No. 07-cv-05944-SC, slip op. (N.D. Cal. Sept. 30, 2010) ......................................................................................................................................10

*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011) ...........................16, 37

*In re Ditropan XL*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) .........................................................10

*In re Dynamic Random Access Memory Antitrust Litig. ("DRAM I")*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007)...........................................................................................11, 54, 55, 74

*In re Dynamic Random Access Memory Antitrust Litig. ("DRAM II")*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008)....................................................................................................... *passim*

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..............................74

*In re Flonase Antitrust Litig.* (*"Flonase II"*), 692 F. Supp. 2d 524 (E.D. Pa. 2010) ..............16, 70

*In re Graphics Processing Units Antitrust Litig.* ("*GPU I*"), 527 F. Supp. 2d 1011 (N.D. Cal. 2007)........................................................................................................................ *passim*

*In re Graphics Processing Units Antitrust Litig.* ("*GPU II*"), 540 F. Supp. 2d 1085 (N.D. Cal. 2007) .....................................................................................................................50

*In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961 (N.D. Iowa 2011) .............4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2013 WL 1285338 (S.D.N.Y. Mar. 29, 2013) .................................................................................66

*In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ....................................................................................................41, 57, 72, 82

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, No. 2:11-cv-00167-DCN, 2012 WL 5408563 (D.S.C. Nov. 6, 2012) ................................................................................76

*In re Microsoft Corp. Antitrust Litig.*, Nos. MDL 1332, Civ. JFM 03-741 through 03-748, 2003 WL 22070561 (D. Md. Aug. 22, 2003) ........................................................................49

*In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461 (D. Md. 2005)..................................76

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.* (*"NMV I"*), 350 F. Supp. 2d 160 (D. Me. 2004)........................................................................................................16, 17, 61

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV II*"), 235 F.R.D. 127 (D. Me. 2006), *vacated by* 522 F.3d 6 (1st Cir. 2008) ...................................................................42

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008)................89

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV III*"), 632 F. Supp. 2d 42 (D. Me. 2009)................................................................................................................8

*In re Optical Disk Drive Antitrust Litigation*, No. 3:10-MD-2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) ................................................................................................75, 76

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011)...................... *passim*

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012)......................................33

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir.2011) ..... *passim*

*In re Refrigerant Compressors Antitrust Litig.* ("*Compressors I*"), No. 2:09–md–02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) ................................................................9, 10

*In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), No. 2:09–md–02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ................................................................ *passim*

*In re Relafen Antitrust Litig.* ("*Relafen I*"), 221 F.R.D. 260 (D. Mass. 2004) ............................ 70

*In re Relafen Antitrust Litig.* ("*Relafen II*"), 225 F.R.D. 14 (D. Mass. 2004) .............................. 71

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001) .............. 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD II*"), 599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...................................................................................................................................... 57

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................ 23

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009) ................................... 10, 14

*INS v. Pangilinan*, 486 U.S. 875 (1988) ..................................................................................... 15

*Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5 (2d Cir 2012) ............................................... 65

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) .................................................................. 65, 66

*Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ......................................................................................................... 76

*Laborers' & Operating Eng'rs' Util. Agreement Health & Welfare Trust Fund for Ariz. v. Philip Morris, Inc.*, 42 F. Supp. 2d 943 (D. Ariz. 1999) ........................................................ 21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................... 6

*M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535 (DLC), 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) .................................................................................................................................... 66

*McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461 (W.D. Tenn. May 9, 2011) ................ 81

*Merck & Co. v. Lyon*, 941 F. Supp. 1443 (M.D.N.C. 1996) ........................................................ 69

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214 (E.D. Cal. 2005) ......... 26

*Minebea Co. Ltd. v. Pabst*, 444 F. Supp. 2d 68 (D.C.C. 2006) .................................................... 30

*Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 WL 5381866 (E.D. Mich. Dec. 17, 2008) ...................................................................................................................... 46

*Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73 (D.D.C. 2013) ....................................... 9

*Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406 (D. Nev. 1995) .......................................... 58

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) ............................................................... 10

*O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060 (7th Cir. 1997)..........................................37

*Orr v. Beamon*, 77 F. Supp. 2d 1208 (D. Kan. 1999), *aff'd sub nom. Orr v. BHR, Inc.*, 4
    Fed. Appx. 647 (10th Cir. 2001).....................................................................41

*Perry v. Am. Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003).............................................................79

*Prohias v. Pfizer* ("*Prohias I*"), 485 F. Supp. 2d 1329 (S.D. Fla. 2007) ................................18, 34

*Prohias v. Pfizer, Inc.* ("*Prohias II*"), 490 F. Supp. 2d 1228 (S.D. Fla. 2007).......................32, 24

*Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047 (6th Cir. 1986)....................................12

*Shady Grove Orthopedic Associates v. Allstate Insurance*, 559 U.S. 393 (2010)........................53

*Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010).....................................................28

*Shropshear v. Corp. Counsel*, 275 F.3d 593 (7th Cir. 2001).......................................................20

*Sierra Club v. Morton*, 405 U.S. 727 (1972) .............................................................................6

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)..............................................................9

*Smith v. Lawyers Title Ins. Corp.*, No. 07-12124, 2009 WL 514210 (E.D. Mich. Mar. 2,
    2009) .........................................................................................................10

*Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269 (10th Cir. 2008) ...............................................41

*Stuart & Sons, L.P. v. Curtis Publ'g Co.*, 456 F. Supp. 336 (D. Conn. 2006) .............................19

*Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381 (D. Md. 1990)......................29

*Sun Dun, Inc. v. Coca-Cola Co.*, 770 F. Supp. 285 (D. Md. 1991)..............................................29

*Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493, 2011 WL 7095432........................................33

*Tradesmen Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191 (D. Kan. 2002) ......................41

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003)...............32

*United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158 (D.D.C. 2007)........................30

*Wade v. Danek Med. Inc.*, 182 F.3d 281 (4th Cir. 1999)..............................................................20

*Walker v. Armco Steel Corp.* 446 U.S. 740 (1980).....................................................................19

*Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168 (E.D. Cal. 2007), *aff'd sub nom.
    Walker v. GEICO Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009)..............................................26

*Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011 WL 1357483 (N.D. W. Va. Apr. 11, 2011) ................................................................................................................87

*Wrestlerreunion, LLC v. Live Nation T.V. Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859 (M.D. Fla. Aug. 4, 2008) ..................................................................31, 32

*Yee v. Nat'l Gypsum Co.*, No. CV-09-8189-PHX-DGC, 2010 WL 2572976 (D. Ariz. June 22, 2010) .............................................................................................................................21

## STATE CASES

*A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008) (per curiam) .................................................................................................47, 50

*Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322 (Fla. Dist. Ct. App. 2007) ...................18, 34

*Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182 (Utah 1996), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009) ......................................83

*Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891 (N.D. 1999) ..........................................71

*Arena Res., Inc. v. OBO, Inc.*, 238 P.3d 357 (N.M. Ct. App. 2010)..............................................62

*Au v. Au*, 626 P.2d 173 (Haw. 1981) ............................................................................................37

*Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754 (N.H. 2013) ....................................................59

*Baker Constr. Co. v. City of Burlington*, No. COA09-13, 2009 WL 3350747 (N.C. Ct. App. Oct. 20, 2009)...................................................................................................................69

*Barr v. City of Rock Hill*, 500 S.E.2d 157 (S.C. 1998) .................................................................77

*Batek v. Curators of Univ. of Mo.*, 920 SW 2d 895 (Mo. 1996) (en banc)...................................52

*Beckler v. Visa U.S.A. Inc.*, No. Civ. 09-04-C-00030, 2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) .........................................................................................................................71

*Berenda v. Langford*, 914 P.2d 45 (Utah 1996)...........................................................................85

*Bomar v. Moser*, 251 S.W.3d 234 (Ark. 2007).............................................................................25

*Bouchard v. Price*, 694 A.2d 670 (R.I. 1997)...............................................................................74

*Bowyer v. Davidson*, 584 P.2d 686 (Nev. 1978) (per curiam).......................................................57

*Bray Lines Inc. v. Utah Carriers, Inc.*, 739 P.2d 1115 (Utah Ct. App. 1987)...............................84

*Britt v. Britt*, 359 S.E.2d 467 (N.C. 1987), *overruled on other grounds by Myers &
Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988)..................................70

*Brooks v. Valley Nat'l Bank*, 548 P.2d 1166 (Ariz. 1976) (in banc) .............................................22

*Byre v. City of Chamberlain*, 362 N.W.2d 69 (S.D. 1985)..........................................................78

*Cevenini v. Archbishop of Wash.*, 707 A.2d 768 (D.C. Ct. App. 1998) .......................................31

*Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239 (Or. 1972) .........................................................73

*Christy v. Miulli*, 692 N.W.2d 694 (Iowa 2005)..........................................................................40

*Ciardi v. F. Hoffmann La Roche, Ltd.*, 762 N.E.2d 303 (Mass. 2002)..........................................44

*Ciardi v. Hoffmann-LaRoche, Ltd.*, No. 993244, 2000 WL 33162197 (Mass. Super. Ct.
Sept. 29, 2000) ..................................................................................................................44

*Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021 (N.H. 2009).........................................................59

*Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964 (Mass. App. Ct.
1998) ................................................................................................................................45

*Cnty. Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704 (Mo. Ct. App. 2007)...........52

*Colosimo v. Roman Catholic Bishop*, 156 P.3d 806 (Utah 2007)..................................................85

*Commerce P'ship 8098 L.P. v. Equity Contracting Co.*, 695 So. 2d 383 (Fla. Dist. Ct.
App. 1997) (en banc) .........................................................................................................34

*Commercial Fed. Bank v. Qwest Corp.*, No. 03-0634, 2004 WL 2296370 (Iowa Ct. App.
Oct. 14, 2004) ...................................................................................................................39

*Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910 (Utah 1987)..............................................83

*Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66 (N.M. 1993)...................................62

*Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147 (App. Div. 2004)......................................................64

*Crandell v. Wall Lake View Auburn Bd. of Educ.*, No. 00-2013, 2002 WL 987665 (Iowa
Ct. App. May 15, 2002) .....................................................................................................40

*Crawford v. Paul Davis Restoration Triad Inc.*, No. COA02-1040, 2003 WL 21436156
(N.C. App. June 17, 2003)..................................................................................................70

*Dahlgren v. Audiovox Commc'ns Corp.*, No. 2002 CA 007884 B, 2012 WL 2131937
(D.C. Super. Ct. Mar. 15, 2012)..........................................................................................30

*Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303 (Haw. 2010).....................................................35

*Depriest v. Astrazeneca Pharms. L.P.*, No. CV 2004-77, 2008 WL 3243562 (Ark. Cir. Ct. July 31, 2008), *aff'd* 351 S.W.3d 168 (Ark. 2009) ...................................................................23

*Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916 (N.C. 1992) ......................................69

*Emergency Physicians Integrated Care v. Salt Lake Cnty.*, 167 P.3d 1080 (Utah 2007) ..............84

*ERI Max Enter., Inc. v. Streisand*, 690 A.2d 1351 (R.I. 1997) (per curiam) ................................74

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400 (Fla. Dist. Ct. App. 2009) ...............................................................................................................................33

*Ferola v. Allstate Life Ins. Co.*, No. 050996, 2007 WL 2705534 (Mass. Super. Ct. Aug. 30, 2007) (per curiam) .......................................................................................................18, 45

*First Fed. Savings & Loan Ass'n of Wisconsin v. Dade Fed. Savings & Loan Ass'n*, 403 So.2d 1097 (Fla. Dist. Ct. App. 1981) ....................................................................................35

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C. 2008) ............30

*Frank Cooke, Inc. v. Hurwitz*, 406 N.E.2d 678 (Mass. App. Ct. 1980) .........................................45

*Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005) ..............................80

*Frein v. Windsor Weeping Mary, LP*, 366 S.W.3d 367 (Ark. Ct. App. 2009) ..............................25

*Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936 (Kan. 1980) ...................................................42

*Fucile v. Visa U.S.A. Inc.*, No. S1560-03 CNC, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ..................................................................................................................................85

*Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743 (N.Y. 2012) ..................................................66

*Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002) .................................................63, 65

*Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126 (D.C. Super. Ct. Mar. 28, 2006) .................30

*Harkness v. Fitzgerald*, 701 A.2d 370 (Me. 1997) .......................................................................43

*Haz-Mat Response, Inc. v. Certified Waste Servs., Ltd.*, 910 P.2d 839 (Kan. 1996) ....................41

*Henning v. Sec. Bank*, 564 N.W.2d 398 (Iowa 1997) ...................................................................39

*Hesse v. Vinatieri*, 302 P.2d 699 (Cal. Dist. Ct. App. 1956) ........................................................27

*High v. Davis*, 584 P.2d 725 (Or. 1978) (en banc) ..................................................................18, 73

*Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011) ............................................27

*Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576 (Fla. Dist. Ct. App. 1994) .............................34

*Ho v. Visa U.S.A. Inc.*, No. 112316/00, 2004 WL 1118534 (Sup. Ct., N.Y. Cnty. Apr. 21, 2004), *aff'd*, 793 N.Y.S.2d 8 (App. Div. 2005) ........................................................................62

*Howard v. Turnbull*, 316 S.W.3d 431 (Mo. Ct. App. 2010)..................................................18, 52

*In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d 85 (S.D. 2005) ................................................78

*In re Silk*, 937 A.2d 900 (N.H. 2007)............................................................................................59

*Isom v. NE Lots LLC*, No. 288378, 2010 WL 143470 (Mich. Ct. App. Jan. 14, 2010) (per curiam) ......................................................................................................................................47

*Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324 (N.D. 1982) .............................................72

*Johnston v. Brown*, 348 S.E.2d 391 (S.C. Ct. App. 1986), *rev'd on other grounds*, 357 S.E.2d 450 (S.C. 1987) ..............................................................................................................77

*Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293 (Neb. 2006)............................................................56

*Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366 (W. Va. 2007).............................87

*Knowles v. Visa U.S.A. Inc.*, No. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) ........................................................................................................................................42

*La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188 (Ill. 1977).........................................38

*Laughlin v. Evanston Hosp.*, 550 N.E.2d 986 (Ill. 1990) ..............................................................37

*Lewis v. Lead Industries Ass'n, Inc.*, 793 N.E.2d 869 (2003) .......................................................38

*Luscher v. Bayer AG*, No. 2004-01485, slip op. (Ariz. Super. Ct. Sept. 14, 2005) ......................21

*Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104 (N.Y. 2011).........................................66

*Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461 (Utah 1978) ............................................................83

*Martin v. Howard*, 784 A.2d 291 (R.I. 2001) ...............................................................................75

*Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017 (2009) ........................................38

*McNaughton v. Rockford State Bank*, 256 N.W. 84 (Mich. 1933) ................................................48

*Melchior v. New Line Prods. Inc.*, 131 Cal. Rptr. 2d 347 (Ct. App. 2003) ..................................27

*Merkle v. Health Options, Inc.*, 940 So. 2d 1190 (Fla. Dist. Ct. App. 2006) ...............................33

*Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833 (N.H. 2002) .................................................58

*Morrisville Lumber Co. v. Okcuoglu*, 531 A.2d 887 (Vt. 1987) .................................................. 86

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000) .......................... 76

*Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772 (N.M. Ct. App. 2012) ...................................... 60

*Nickerson Co. v. Energy W. Mining Co.*, No. 20090221–CA, 2009 WL 4681778 (Utah Ct. App. Dec. 10, 2009) ......................................................................................................... 83, 84

*Niemi v. Am. Axle Mfg. & Holding. Inc.*, No. 269155, 2007 WL 29383 (Mich. Ct. App. Jan. 4, 2007) (per curiam) ......................................................................................................... 47

*Nw. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or., Inc.*, 794 P.2d 428 (Or. 1990) ............ 72

*Ockey v. Lehmer*, 189 P.3d 51 (Utah 2008) ................................................................................ 83

*Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76 (Miss. 1992) ......................................... 51

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 925 N.Y.S.2d 61 (App. Div. 2011) ................. 67

*Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004) (en banc) .............. 49

*Pahlad ex rel. Berger v. Brustman*, 823 N.Y.S.2d 61 (App. Div. 2006), *aff'd* 865 N.E.2d 1240 (N.Y. 2007) ....................................................................................................................... 67

*Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d 496 (App. Div. 2006) .............................................. 64

*Parker v. W. Dakota Insurors, Inc.*, 605 N.W.2d 181 (S.D. 2000) .............................................. 79

*Paschall's v. Dozier*, 407 S.W.2d 150 (Tenn. 1966) ............................................................... 18, 81

*Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 317 S.E.2d 41 (N.C. Ct. App. 1984) .................. 70

*People v. Coleman*, 794 N.E. 2d 275 (Ill. 2002) .......................................................................... 38

*Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316 (Ct. App. 2008) ................................................ 27

*Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) ..................................................................................................................................... 28

*Pooler v. R.J. Reynolds Tobacco Co.*, No. CV00-02674, 2001 WL 403167 (Nev. Dist. Ct. Apr. 4, 2001) .......................................................................................................................... 58

*Porter v. Hu*, 169 P.3d 994 (Haw. Ct. App. 2007) ...................................................................... 36

*Portsmouth Country Club v. Town of Greenland,* 883 A.2d 298 (N.H. 2005) ............................ 60

*Puritan Med. Ctr., Inc. v. Cashman*, 596 N.E.2d 1004 (Mass. 1992) ......................................... 45

*Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994 (Vt. 1987)..............................18, 86

*Rivers v. Amato*, No. CV-00-131, 2001 WL 1736498 (Me. Super. Ct. June 22, 2001) ...............43

*Rodrigue v. Valco Enter.*, 726 A.2d 61 (Vt. 1999) ........................................................................86

*Roether v. Nat'l Union Fire Ins. Co.*, 200 N.W. 818 (N.D. 1924)..................................................72

*Romero v. Philip Morris Inc.*, 242 P.3d 280 (N.M. 2010)..............................................................60

*Rosetta v. Morretti*, No. 98-89, 2005 WL 1109638 (R.I. Super. Ct. May 4, 2005).......................74

*Rucinsky v. Hentchel*, 881 P.2d 616 (Mont. 1994) ........................................................................55

*Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174 (R.I. 2008) ..................................75

*S. Title Guar. Co. v. Bethers*, 761 P.2d 951 (Utah Ct. App. 1988)................................................84

*Sanchez v. South Hoover Hospital*, 553 P.2d 1129 (Cal. 1976) ....................................................28

*Sattler v. Bailey*, 400 S.E.2d 220 (W.V. 1990)..............................................................................88

*Schroeder v. Buchholz*, 622 N.W.2d 202 (N.D. 2001) ...................................................................71

*Schumacher v. Schumacher*, 627 N.W.2d 725 (Minn. Ct. App. 2001).........................................48

*Senne & Co. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858 (Kan. Ct. App.
   Apr. 20, 2007) ..........................................................................................................................18, 42

*Shadrick v. Coker*, 963 S.W.2d 726 (Tenn. 1998) .........................................................................81

*Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348 (Mich. Ct. App. 1997).........................................48

*Smith v. Stowell*, 125 N.W.2d 795 (Iowa 1964), *overruled on other grounds by Lamp v.
   Am. Prosthetics, Inc.*, 379 N.W.2d 909 (Iowa 1986)................................................................40

*Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192 (Iowa 2007) ........................................................39

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137 (Minn. Ct. App.
   1992) .............................................................................................................................................48

*Spann v. Diaz*, 987 So. 2d 443 (Miss. 2008)..................................................................................51

*Spencer v. Estate of Spencer,* 759 N.W.2d 539 (S.D. 2008) .........................................................79

*Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007)............................................................65

*Spitler v. Dean*, 436 N.W.2d 308 (Wis. 1989)...............................................................................89

*Standard Oil Co. of Ky. v. State ex rel. Attorney General*, 65 So. 468 (Miss. 1914),
  *overruled in part on other grounds by Mladinich v. Kohn*, 164 So. 2d 785 (Miss.
  1964) ...................................................................................................................................50

*Stark v. Visa U.S.A. Inc.*, No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23,
  2004) ...................................................................................................................................46

*State ex rel. Susedik v. Knutson*, 191 N.W.2d 23 (Wis. 1971) ......................................................89

*State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321 (Minn. Ct. App.
  1997) ...................................................................................................................................49

*Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78 (Miss. 2003)........................51

*Strang v. Visa U.S.A. Inc.*, No. 03 CV 011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8,
  2005) ...................................................................................................................................88

*Strassburg v. Citizens State Bank*, 581 N.W.2d 510 (S.D. 1998)...................................................79

*Teague v. Bayer AG*, 671 S.E.2d 550 (N.C. Ct. App. 2009).................................................67, 68

*Tenn. Med. Ass'n v. BlueCross BlueShield of Tenn., Inc.*, 229 S.W.3d 304 (Tenn. Ct.
  App. 2007) ...........................................................................................................................79

*Tovrea Land & Cattle Co. v. Linsenmeyer*, 412 P.2d 47 (Ariz. 1966) ...........................................22

*Tri-State Mech., Inc. v. Northland Coll.*, 681 N.W.2d 302 (Wis. Ct. App. 2004)........................88

*Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485 (Ariz. Ct. App. 2002) ..........................21

*Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175 (Miss. 2004) .............................................51

*Upah v. Ancona Bros. Co.*, 521 N.W.2d 895 (Neb. 1994) ...........................................................56

*USLife Title Co. v. Gutkin*, 732 P.2d 579 (Ariz. Ct. App. 1986) ..................................................22

*Variety Children's Hosp., Inc. v. Vigliotti*, 385 So. 2d 1052 (Fla. Dist. Ct. App. 1980)..............33

*Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337 (Ct. App. 1995) ...............................................26

*Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005).................................................................24

*Washa v. Miller*, 546 N.W.2d 813 (Neb. 1996).............................................................................56

*Watts v. Mulliken's Estate*, 115 A. 150 (Vt. 1921) ......................................................................86

*Weather Doctor Servs. Co. v. Stephens*, No. E2000-1427-COA-R3-CV, 2001 Wl 849540
  (Tenn. Ct. App. July, 27, 2001) .........................................................................................81

*West Virginia ex rel. Palumbo v. Graley's Body Shop, Inc.*, 425 S.E.2d 177 (W. Va. 1992) ...................................................................................................................87

*Will v. Mill Condo. Owners Ass'n, Inc.*, No. 457-10-01 WRCV, 2002 WL 34340312 (Vt. Super. Ct. July 5, 2002); ....................................................................................86

*Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583 (Miss. 2012) (en banc) ....................................51

*Winters v. Cnty. of Clatsop*, 150 P.3d 1104 (Or. Ct. App. 2007) ...........................................18, 73

*Zinter v. Univ. of Minn.*, 799 N.W.2d 243 (Minn. Ct. App. 2011) ................................................48

*Zoe G. v. Frederick F. G.*, 208 A.D.2d 675 (N.Y. App. Div. 1994) .............................................67

## STATUTES

15 U.S.C. § 26 ....................................................................................................................................89

740 ILCS 10/7(2) ...............................................................................................................................38

740 Ill. Comp. Stat. Ann. § 10/11 .....................................................................................................37

740 Ill. Comp. Stat. Ann. § 10/7(2) ..................................................................................................37

14 Me. Rev. Stat. Ann. § 752 ............................................................................................................43

12 Vt. Stat. Ann. § 511 ......................................................................................................................86

Ariz. Rev. Stat. Ann. § 44-1410 ........................................................................................................22

Ariz. Rev. Stat. Ann. § 44-1412 ........................................................................................................21

Ark. Code Ann. § 4-88-101 ...............................................................................................................23

Ark. Code Ann. § 4-88-107(a) ...........................................................................................................24

Ark. Code Ann. § 4-88-113(f) ...........................................................................................................23

Ark. Code Ann. § 4-88-115 ...............................................................................................................25

C.P.L.R. § 214(2) ...............................................................................................................................67

Cal. Bus. & Prof. Code § 16750.1 .....................................................................................................27

Cal. Bus. & Prof. Code § 17208 ........................................................................................................27

D.C. Code § 28-4511 .........................................................................................................................31

D.C. Code § 28-4515 .........................................................................................................................28

Fla. Stat. Ann. § 95.11(3) ................................................................................35

Haw. Rev. Stat. § 480-3 ...................................................................................35

Haw. Rev. Stat. § 480-13.3(a) .........................................................................36

Haw. Rev. Stat. § 480-24 .................................................................................36

Iowa Code Ann. § 553.16(1) ............................................................................40

Kan. Stat. Ann. § 60-512(2) .............................................................................42

Mass. Gen. Laws Ann. Chapter 93 § 13 ..........................................................45

Mich. Comp. Laws Ann. § 445.781 ..................................................................47

Mich. Comp. Laws Ann. § 445.784(2) .............................................................46

Minn. Stat. Ann. § 325D.64 .............................................................................49

Miss. Code Ann. § 15-1-49 ..............................................................................51

Mo. Rev. Stat. § 516.120 ..................................................................................52

Mont. Code Ann. § 27-2-11 .............................................................................55

Mont. Code Ann. § 27-2-102(3) .......................................................................55

Mont. Code Ann. § 30-14-133(1) .....................................................................54

N.C. Gen. Stat. § 75-1 ......................................................................................68

N.C. Gen. Stat § 75-16.2 ..................................................................................70

N.D. Cent.Code § 28-01-24 ..............................................................................72

N.D. Cent. Code § 51-08.1-10(1) .....................................................................72

N.H. Rev. Stat. Ann. § 356:11 ..........................................................................59

N.H. Rev. Stat. Ann. § 356:14 ..........................................................................58

N.H. Rev. Stat. Ann. § 356:12 ..........................................................................60

N.M. Stat. Ann. § 57-1-12 ................................................................................62

N.M. Stat. Ann. § 57-1-15 ................................................................................60

N.M. Stat. Ann. § 57-12-2(E) ...........................................................................60

N.Y. Civ. Prac. L. § 901(b) ..................................................................................53

N.Y. Gen. Bus. Law 340(5) .................................................................................67

N.Y. Gen. Bus. Law § 349(h) ..............................................................................64

Neb. Rev. Stat. Ann. § 59-829 .............................................................................55

Neb. Rev. Stat. Ann. § 59-1612 ...........................................................................56

Nev. Rev. Stat. Ann. § 598A.050 .........................................................................56

Nev. Rev. Stat. Ann. § 598A.060 .........................................................................57

Nev. Rev. Stat. Ann. § 598A.220 .........................................................................58

Or. Rev. Stat. Ann. § 646.140 ..............................................................................73

Or. Rev. Stat. Ann. § 646.715(2) .........................................................................72

R.I. Gen. Laws § 6-36-23 .....................................................................................75

S.C. Code Ann. § 39-5-140(a) ..............................................................................75

S.C. Stat. Ann. § 39-5-150 ...................................................................................77

S.D. Codified Laws § 37-1-3.1 .............................................................................78

S.D. Codified Laws § 37-1-14.4 ...........................................................................79

S.D. Codified Laws § 37-1-22 ..............................................................................78

Tenn. Code Ann. § 28-3-105 ................................................................................81

Utah Code Ann. § 68-3-3 ......................................................................................82

Utah Code Ann. § 76-10-925 ................................................................................85

Utah Code Ann. § 76-10-3109 ..............................................................................82

Utah Code Ann. § 76-10-3118 ..............................................................................82

W. Va. Code Ann. § 47-18-11 ..............................................................................88

W. Va. Code Ann. § 47-18-16 .........................................................................86, 87

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether the Court should dismiss the complaints of the End Payors ("EPs") and Automobile Dealers ("ADs") (collectively, "IPPs") in their entirety because they have not satisfied the requirements of *Twombly* to allege facts sufficient to plead a plausible conspiracy.

2.      Whether the Court should dismiss the IPPs' complaints in their entirety because the IPPs have failed to plausibly allege an injury-in-fact, as required for constitutional standing.

3.      Whether the ADs have constitutional standing to assert claims under the laws of Hawaii and North Dakota, where none of the ADs reside or allegedly suffered injury.

4.      Whether the IPPs lack antitrust standing to bring their antitrust claims in Arizona, California, the District of Columbia, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

5.      Whether the Court should dismiss the IPPs' unjust enrichment claims in their entirety because the IPPs have failed to identify the unjust enrichment laws of any particular jurisdiction.

6.      Whether the IPPs can maintain unjust enrichment claims under the laws of thirty-one states and the District of Columbia if there are no surviving antitrust or consumer protection claims under the laws of those states.

7.      Whether, as indirect purchasers, the EPs are barred from bringing an antitrust claim under Massachusetts law because Massachusetts follows *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*"), and bars indirect purchaser claims.

8.      Whether the IPPs lack standing to assert consumer protection claims under the laws of Arkansas, New York, and Vermont because their claims are too remote.

9.      Whether the IPPs are barred from maintaining claims as class actions under the antitrust law of Illinois and the consumer protection laws of Montana and South Carolina because the relevant statutes explicitly prohibit such suits.

10.     Whether, as businesses, the ADs are precluded from bringing a consumer protection claim under the law of the District of Columbia.

11.     Whether the IPPs are barred from recovering under the antitrust laws of New Hampshire and Utah based on alleged anticompetitive conduct that occurred before the date that each of those states passed laws that "repeal" *Illinois Brick*.

12.    Whether the IPPs' antitrust claims under the laws of the District of Columbia, Massachusetts, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, and West Virginia, and consumer protection law claims under the laws of California, Montana, New York, and North Carolina must be dismissed because the IPPs failed to allege the requisite sufficient nexus with intrastate commerce.

13.    Whether the ADs are barred from bringing claims under Arkansas consumer protection law because they failed to allege actual damage or injury cognizable under that statute.

14.    Whether the IPPs are barred from bringing their New Mexico consumer protection claims because they failed to allege "unconscionable" conduct, as defined and required by that statute.

15.    Whether the IPPs' New York consumer protection claims must be dismissed because the IPPs failed to allege a deceptive act or practice directed at consumers that resulted in actual injury to them.

16.    Whether the IPPs' claims for unjust enrichment under the laws of Arizona, the District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, New York, North Carolina, North Dakota, Rhode Island, South Carolina, and Utah must be dismissed because the IPPs did not (and cannot) plead that they conferred a direct benefit on defendants.

17.    Whether the IPPs are barred from maintaining unjust enrichment claims in twenty-one states (Arizona, Arkansas, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, and Utah) and the District of Columbia because the IPPs voluntarily entered into purchasing arrangements for OSS or vehicles containing OSS and therefore received the benefit of the bargains into which they entered.

18.    Whether the IPPs' claims for unjust enrichment under the laws of Florida, Kansas, Massachusetts, Missouri, Nevada, New Hampshire, South Dakota, Tennessee, Utah, Vermont, and Wisconsin must be dismissed because defendants provided consideration (OSS parts) for any benefit received (money).

19.    Whether the IPPs' claims for unjust enrichment under California law must be dismissed because California does not recognize a cause of action for unjust enrichment.

20.    Whether the IPPs' unjust enrichment claims under the laws of Arizona, California, Florida, Hawaii, Illinois, Massachusetts, Minnesota, Mississippi,

North Dakota, South Carolina, Tennessee, Utah, and West Virginia must be dismissed because the IPPs have failed to meet the special pleading requirements of those states' laws.

21.    Whether the IPPs' antitrust, consumer protection and unjust enrichment claims are barred, in whole or in part, by each state's statues of limitations.

22.    Whether the Court should dismiss the IPPs' claims for injunctive relief due to the IPPs' failure to plausibly allege a real or immediate threat of future injury.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**I.    The IPPs' Failure To Plausibly Plead Conspiracy Under *Twombly*.**

- Fed. R. Civ. P. 12(b)(6)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

**II.   The IPPs' Failure To Sufficiently Plead Article III Constitutional Standing.**

- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), No. 2:09–md–02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)
- *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
- *Nat'l ATM Council Inc. v. Visa Inc.*, 992 F. Supp. 2d 73 (D.D.C. 2013)

**III.  The IPPs' Failure To Sufficiently Plead Antitrust Standing.**

- *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983)
- *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM II*"), 536 F. Supp. 2d 1129 (N.D. Cal. 2008)
- *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir. 2011)
- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), No. 2:09–md–02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)

**IV.   The IPPs' Failure To Sufficiently Plead Any Claims for Unjust Enrichment.**

- *In re Automotive Parts Antitrust Litig. (In re Wire Harness Cases)*, No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013)
- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), No. 2:09–md–02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)

**V.    The IPPs Cannot Bring Autonomous Unjust Enrichment Claims.**

- *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011)
- *In re Flonase Antitrust Litig.* ("*Flonase II*"), 692 F. Supp. 2d 524 (E.D. Pa. 2010)

**VI.   The IPPs' Failure To Sufficiently Plead State Antitrust and Consumer Protection Claims for Lack of Standing or Other Reasons.**

- 740 Ill. Comp. Stat. §§ 10/7, 10/11
- *Am. Council, Certified Podiatric Physicians v. Am. Board Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999)

- *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983)
- *Beckler v. Visa U.S.A. Inc.*, No. Civ. 09-04-C-00030, 2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004)
- *Ciardi v. Hoffmann-LaRoche, Ltd.*, No. 993244, 2000 WL 33162197 (Mass. Super. Ct. Sept. 29, 2000)
- *Cornelison v. Visa U.S.A. Inc*., Hearing Transcript, No. CIV 03-1350 (S.D. Cir. Ct. 2004)
- *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303 (Haw. 2010)
- *Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005)
- *Fucile v. Visa U.S.A., Inc.*, No. 51560-03 CNC, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004)
- Haw. Rev. Stat. § 480-13.3(a)
- *H-Quotient, Inc. v. Knight Trading Grp., Inc*., No. 03 Civ.5889 (DAB), 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005)
- *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM II*"), 536 F. Supp. 2d 1129 (N.D. Cal. 2008)
- *In re Microsoft Corp. Antitrust Litig*., No. MDL 1332, Civ. JFM 03-741 through 03-748, 2003 WL 22070561 (D. Md. Aug. 22, 2003)
- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), No. 2:09–md–02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)
- *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882 (E.D. Ark. 2008)
- *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293 (Neb. 2006)
- *Knowles v. Visa U.S.A. Inc.*, No. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004)
- *Luscher v. Bayer AG*, No. 2004-01485, slip op. (Ariz. Super. Ct. Sept. 14, 2005)
- *Minuteman v. Microsoft Corp.*, 795 A.2d 833 (N.H. 2002)
- *Nass-Romero v. Visa U.S.A. Inc*., 279 P.3d 772 (N.M. Ct. App. 2012)
- N.C. Gen. Stat. § 75-1
- Neb. Rev. Stat. Ann. § 59-829
- Nev. Rev. Stat. Ann. § 598A.050
- Nev. Rev. Stat. Ann. § 598A.060
- *N.W. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or., Inc.*, 794 P.2d 428 (Or. 1990)
- *Orr v. Beamon*, 77 F. Supp. 2d 1208 (D. Kan. 1999)
- *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004)
- *Peterson v. Visa U.S.A. Inc*., No. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005)
- *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587 (W. Va. 2009)
- *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192 (Iowa 2007)
- S.D. Cod. Laws § 37-1-3.1
- *State ex rel. Palumbo v. Graley's Body Shop, Inc.*, 425 S.E.2d 177 (W. Va. 1992)
- *Strang v. Visa U.S.A., Inc*., No. 03 CV 011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005)

- *Sun Dun, Inc. of Wash. v. Coca-Cola Co.* ("*Sun Dun II*"), 770 F. Supp. 285 (D. Md. 1991)
- *Teague v. Bayer AG*, 671 S.E.2d 550 (N.C. Ct. App. 2009)
- *Tenn. Med. Ass'n v. BlueCross BlueShield of Tenn., Inc.*, 229 S.W.3d 304 (Tenn. Ct. App. 2007)
- Utah Code Ann. § 76-10-3118
- *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811 (1995)

## VII. The IPPs' Failure To Sufficiently Plead Consumer Protection Claims.

- *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140 (N.Y. 2004)
- *ERI Max Enter., Inc. v. Streisand*, 690 A.2d 1351 (R.I. 1997)
- *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002)
- *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM I*"), 516 F. Supp. 2d 1072 (N.D. Cal. 2007)
- *In re Graphics Processing Units Antitrust Litig.* ("*GPU I*"), 527 F. Supp. 2d 1011 (N.D. Cal. 2007)
- *In re MI Windows and Doors, Inc. Prods. Liab. Litig.*, 2:11–cv–00167–DCN, 2012 WL 5408563 (D.S.C. Nov. 6, 2012) (Ex. J-51)
- *Merck & Co. v. Lyon*, 941 F. Supp. 1443 (M.D.N.C. 1996)
- *Meridian Project Sys. Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214 (E.D. Cal. 2005)
- Mont. Code Ann. § 30-14-133
- S.C. Code Ann. § 39-5-140
- *Shaw v. Marriot Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010)
- *Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005)
- *Wrestlerreunion, LLC v. Live Nation T.V. Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859 (M.D. Fla. Aug. 4, 2008)

## VIII. The IPPs' Failure To Sufficiently Plead State Unjust Enrichment Claims.

- *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005)
- *Am. Movie Classics v. Rainbow Media Holdings*, 508 F. App'x 826 (10th Cir. 2013)
- *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891 (N.D. 1999)
- *Arena Res., Inc. v. OBO, Inc.*, 238 P.3d 357 (N.M. Ct. App. 2010)
- *Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754 (N.H. 2013)
- *Baker Constr. Co. v. City of Burlington*, No. COA09-13, 2009 WL 3350747 (N.C. Ct. App. Oct. 20, 2009)
- *Bouchard v. Price*, 694 A.2d 670 (R.I. 2001)
- *Britt v. Britt*, 359 S.E.2d 467 (N.C. 1987), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988)
- *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166 (Ariz. 1976)
- *Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021 (N.H. 2009)

- *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383 (Fla. Dist. Ct. App. 1997)
- *Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc*., 692 N.E.2d 964 (Mass. App. Ct. 1998)
- *Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910 (Utah 1987)
- *Cnty. Asphalt Paving, Co., Inc. v. Mosley Constr., Inc*., 239 S.W.3d 704 (Mo. Ct. App. 2007)
- *Dahlgren v. Audiovox Commc'ns Corp.*, No. 2002 CA 007884 B, 2012 WL 2131937 (D.C. Super. Ct. Mar. 15, 2012)
- *Dist. 1199P Health and Welfare Plan v. Janssen, LP*, 784 F. Supp. 2d 508 (D.N.J. 2011)
- *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400 (Fla. Dist. Ct. App. 2009)
- *Fernandes v. Havkin*, 731 F. Supp. 2d 103 (D. Mass. 2010)
- *Ferola v. Allstate Life Ins. Co.*, No. 050996, 2007 WL 2705534 (Mass. Super. Ct. Aug. 30, 2007)
- *Fort Lincoln Civic Assoc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C. 2008)
- *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005)
- *Frein v. Windsor Weeping Mary LP*, 366 S.W.3d 367 (Ark. Ct. App. 2009)
- *High v. Davis*, 584 P.2d 725 (Or. 1978) (en banc)
- *Howard v. Turnbull*, 316 S.W.3d 431 (Mo. Ct. App. 2010)
- *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010)
- *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461 (D. Md. 2005)
- *In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV I*"), 350 F. Supp. 2d 160 (D. Me. 2004)
- *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir. 2011)
- *Isom v. NE Lots LLC*, No. 288378, 2010 WL 143470 (Mich. Ct. App. Jan. 14, 2010)
- *Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324 (N.D. 1982)
- *Johnston v. Brown*, 348 S.E.2d 391 (S.C. Ct. App. 1986), *rev'd on other grounds*, 357 S.E.2d 450 (S.C. 1987)
- *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188 (Ill. 1977)
- *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461 (Utah 1978)
- *Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017 (2009)
- *Melchior v. New Line Prods., Inc*., 131 Cal. Rptr. 2d 347 (Ct . App. 2003)
- *Munson v. Countrywide Home Loans, Inc*., No. 08-13244, 2008 WL 5381866 (E.D. Mich. Dec. 17, 2008)
- *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000)
- *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76 (Miss. 1992)
- *One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 925 N.Y.S.2d 61 (App. Div. 2011)
- *Parker v. W. Dakota Insurors, Inc.*, 605 N.W.2d 181 (S.D. 2000)
- *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150 (Tenn. 1966)

- *Peterson v. Cellco P'Ship*, 80 Cal. Rptr. 3d 316 (Ct. App. 2008)
- *Prohias v. Pfizer, Inc.* ("*Prohias I*"), 485 F. Supp. 2d 1329 (S.D. Fla. 2007)
- *Porter v. Hu*, 169 P.3d 994 (Haw. Ct. App. 2007)
- *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994 (Vt. 1987)
- *Rivers v. Amato*, No. CV-00-131, 2001 WL 1736498 (Me. Super. Ct. June 22, 2001)
- *Rosetta v. Moretti*, No. 98-89, 2005 WL 1109638 (R.I. Super. Ct. May 4, 2005)
- *Schroeder v. Buchholz*, 622 N.W.2d 202 (N.D. 2001)
- *Schumacher v. Schumacher*, 627 N.W.2d 725 (Minn. App. 2001)
- *Senne & Co. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858 (Kan. Ct. App. Apr. 20, 2007)
- *Smith v. Stowell*, 125 N.W.2d 795 (Iowa 1964), *overruled on other grounds by Lamp v. Am. Prothetics, Inc.*, 379 N.W.2d 909 (Iowa 1986)
- *S. Title Guar. Co. v. Bethers*, 761 P.2d 951 (Utah Ct. App. 1988)
- *Southard v. Visa U.S.A., Inc.*, LACV 031729, 2004 WL 3030028 (Iowa Dist. Nov. 17, 2004)
- *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc*., 493 N.W.2d 137 (Minn. Ct. App. 1992)
- *Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007)
- *Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269 (10th Cir. 2008)
- *Tri-State Mech., Inc. v. Northland Coll.*, 681 N.W.2d 302 (Wis. Ct. App. 2004)
- *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485 (Ariz. Ct. App. 2002)
- *Washa v. Miller*, 546 N.W.2d 813 (Neb. 1996)
- *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583 (Miss. 2012), *reh'g denied*, No. 2010-CA-01015-SCT, 2012 Miss. LEXIS 175 (Miss. Mar. 29, 2012)
- *Winters v. Cnty. of Clatsop*, 150 P.3d 1104 (Or. Ct. App. 2007)
- *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011 WL 1357483 (N.D. W. Va. Apr. 11, 2011)
- *Yee v. Nat'l Gypsum Co.*, CV-09-8189-PHX-DGC, 2010 WL 2572976 (D. Ariz. June 22, 2010)
- *Zinter v. Univ. of Minn*., 799 N.W.2d 243 (Minn. Ct. App. 2011)

**IX.  Statues of Limitations Barring the IPPs' Claims in Whole or in Part.**

- 12 Vt. Stat. Ann. § 511
- 14 Me. Rev. Stat. Ann. § 752
- 740 ILCS 10/7(2)
- Ariz. Rev. Stat. Ann. § 44-1410
- Ark. Code Ann. § 4-88-115
- *Au v. Au*, 626 P.2d 173 (Haw. 1981)
- *Barr v. City of Rock Hill*, 500 S.E.2d 157 (S.C. 1998)
- *Batek v. Curators of Univ. of Mo.*, 920 SW 2d 895 (Mo. 1996) (en banc)
- *Bomar v. Moser*, 251 S.W.3d 234 (Ark. 2007)
- Cal. Bus. & Prof. Code § 16750.1
- Cal. Bus. & Prof. Code § 17208
- *Cevenini v. Archbishop of Wash.*, 707 A.2d 768 (D.C. Ct. App. 1998)

- *Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239 (Or. 1972)
- *Christy v. Miulli*, 692 N.W.2d 694 (Iowa 2005)
- *Colosimo v. Roman Catholic Bishop*, 156 P.3d 806 (Utah 2007)
- *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66 (N.M. 1993)
- D.C. Code § 28-4511
- D.C. Code § 12-301(8)
- *First Fed. Savings & Loan Ass'n of Wisconsin v. Dade Fed. Savings & Loan Ass'n*, 403 So.2d 1097 (Fla. Dist. Ct. App. 1981)
- Fla. Stat. Ann. § 95.11(3)
- *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936 (Kan. 1980)
- *Harkness v. Fitzgerald*, 701 A.2d 370 (Me. 1997)
- Haw. Rev. Stat. § 480-24
- Iowa Code Ann. § 553.16(1)
- Kan. Stat. Ann. § 60-512(2)
- *Martin v. Howard*, 784 A.2d 291 (R.I. 2001)
- Mass. Gen. Laws Ann. Ch. 93 § 13
- Mich. Comp. Laws Ann. § 445.781
- Minn. Stat. Ann. § 325D.64
- Miss. Code Ann. § 15-1-49
- Mo. Rev. Stat. § 516.120
- Mont. Code Ann. § 27-2-11
- Mont. Code Ann. § 27-2-102(3)
- N.C. Gen. Stat § 75-16.2
- N.D. Cent. Code § 51-08.1-10(1)
- N.D. Cent. Code § 28-01-24
- N.H. Rev. Stat. Ann. § 356:12
- N.M. Stat. Ann. § 57-1-12
- Neb. Rev. Stat. Ann. § 59-1612
- Nev. Rev. Stat. § 598A.220
- N.Y. Gen. Bus. Law § 340(5)
- N.Y. C.P.L.R. § 214(2)
- Or. Rev. Stat. Ann. § 646.140
- *Pahlad ex rel. Berger v. Brustman*, 823 N.Y.S.2d 61 (N.Y. App. Div. 2006), *aff'd* 865 N.E.2d 1240 (N.Y. 2007)
- *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 317 S.E.2d 41 (N.C. Ct. App. 1984)
- *People v. Coleman*, 794 N.E. 2d 275 (Ill. 2002)
- *Pooler v. R.J. Reynolds Tobacco Co.*, No. CV00-02674, 2001 WL 403167 (Nev. Dist. Ct. Apr. 4, 2001)
- *Portsmouth Country Club v. Town of Greenland*, 883 A.2d 298 (N.H. 2005)
- *Puritan Med. Ctr., Inc. v. Cashman*, 596 N.E.2d 1004 (Mass. 1992)
- R.I. Gen. Laws § 6-36-23
- *Rodrigue v. Valco Enter.*, 726 A.2d 61 (Vt. 1999)
- *Roether v. Nat'l Union Fire Ins. Co.*, 200 N.W. 818 (N.D. 1924)
- *Rucinsky v. Hentchel*, 881 P.2d 616 (Mont. 1994)

- *Ryan v. Roman Catholic Bishop of Providence,* 941 A.2d 174 (R.I. 2008)
- S.C. Stat. Ann. § 39-5-150
- S.D. Codified Laws § 37-1-14.4
- *Sanchez v. South Hoover Hospital,* 553 P.2d 1129 (Cal. 1976)
- *Sattler v. Bailey,* 400 S.E.2d 220 (W.V. 1990)
- *Shadrick v. Coker,* 963 S.W.2d 726 (Tenn. 1998)
- *Sills v. Oakland Gen. Hosp.,* 559 N.W.2d 348 (Mich. Ct. App. 1997)
- *Spann v. Diaz,* 987 So. 2d 443 (Miss. 2008)
- *Spencer v. Estate of Spencer,* 759 N.W.2d 539 (S.D. 2008)
- *State ex rel. Susedik v. Knutson,* 191 N.W.2d 23 (Wis. 1971)
- *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,* 572 N.W.2d 321 (Minn. Ct. App. 1997)
- Tenn. Code Ann. § 28-3-105
- *Tovrea Land & Cattle Co. v. Linsenmeyer,* 412 P.2d 47 (Ariz. 1966)
- *Upah v. Ancona Bros. Co.,* 521 N.W.2d 895 (Neb. 1994)
- Utah Code Ann. § 76-10-925
- W. Va. Code Ann. § 47-18-11
- Wisc. Stat. Ann. § 133.18(2)

**X.      The IPPs' Failure To State a Claim for Injunctive Relief.**

- *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 522 F.3d 6 (1st Cir. 2008)

## INTRODUCTION

As they did in the first four auto-parts cases before this Court, the Automobile Dealers ("ADs") and End-Payors ("EPs") in this case (collectively, the "IPPs") allege, on the basis of public guilty pleas relating to certain auto parts and specific auto manufacturers, an industry wide, multi-year conspiracy in which all defendants purportedly conspired to raise the price of every "Occupant Safety Restraint System" sold to every auto manufacturer across the globe. Here, however, these IPPs take their broad allegations a step further. They allege a conspiracy that spans not only years, defendants, and auto manufacturers, but also *multiple markets containing products that do not compete with one another*. The so-called Occupant Safety Restraint Systems ("OSS") market that is the subject of the IPPs' complaints is actually comprised of at least four distinct, non-interchangeable products—namely, seat belts, airbags, steering wheels, and safety electronic systems. AD CCC ¶ 2; EP CAC ¶ 3. Yet the defendants have not all pleaded guilty to fixing the prices of all of these parts and, indeed, in some instances *do not even sell* all of the parts they allegedly price-fixed. Thus, the vast mega-conspiracy alleged by the IPPs is without question factually implausible, taking the pleadings in this case beyond even the broad allegations this Court considered in the other auto-parts cases before it, including in *In re Automotive Parts Antitrust Litigation (In re Wire Harness Cases)* ("*WH*"), No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013).

This is not to say that, based on the guilty pleas on which the IPPs claim to rely, *some* set of plaintiffs could not plausibly allege *some* conspiracy (or conspiracies) against *some* of the defendants relating to *certain* seat belts, airbags, or steering wheels sold to *certain* auto manufacturers. But that is not the conspiracy alleged here. Rather, with little mind for what their alleged facts actually support, these IPPs make sweeping, speculative claims that are necessarily flawed in several critical respects.

First, because the IPPs' overbroad allegations regarding the extent and duration of the alleged conspiracy are unmoored from the few facts they allege, the complaints fail to satisfy the pleading standards elucidated by the Supreme Court in *Twombly* and *Iqbal*.  In particular, the IPPs cannot plausibly base the multi-product, multi-defendant, multi-year conspiracy they plead on the criminal filings they reference which, *at most*, suggest discrete conspiracies, by certain defendants, regarding specific parts, sold only to non-United States auto manufacturers.

Second, the IPPs' implausibly broad conspiracy allegations make their claims of injury speculative and, thus, constitutionally deficient.  In particular, given the lack of factual support for an all-encompassing multi-industry conspiracy, the IPPs' vague allegations that at *some* point, they purchased *some* parts, that might have been made by *some* defendants—without a single word about whether they actually bought an allegedly affected part or even a car by an allegedly affected auto manufacturer—simply does not plead the type of injury-in-fact necessary to state a cognizable legal claim.

Third, these vague and conclusory allegations similarly fail to establish injuries that are directly traceable to the defendants' alleged anti-competitive conduct.  Thus, even had the IPPs sufficiently alleged constitutional injury, they still fail to allege the proper prerequisites for antitrust standing, including how any overcharge that resulted from any price fixing was passed down the chain to the IPPs.

Fourth, the IPPs' state law claims are subject to statutes of limitation ranging from three to six years.  The first indirect purchaser complaint was filed on June 8, 2012.  Thus, any damages that the IPPs attempt to recover prior to the applicable statute of limitations period in each state, running from this date, are not recoverable.

2

Finally, the IPPs have failed to allege many of the factual elements that would give rise to causes of action under many states' antitrust, consumer protection, and unjust enrichment laws, and they have failed to allege a proper basis for seeking federal injunctive relief.

## ARGUMENT

## I.   THE IPPS FAIL TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM.

Because the IPPs fail to allege any facts in their complaints to support their claim that defendants participated in a broad, multi-year, multi-part conspiracy, their claims should be dismissed in their entirety pursuant to the Supreme Court's decisions in *Twombly* and *Iqbal* and the relevant Sixth Circuit precedent that followed those decisions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012) (to survive a motion to dismiss, conspiracy allegations "must be specific enough to establish the relevant 'who, what, where, when, how or why'"); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").[1]

Like the indirect plaintiffs in *WH*, the IPPs here rest their broad claims of conspiracy on the fact that certain defendants have pleaded guilty to, or are under investigation for, engaging in antitrust violations.  However, the inferences the IPPs seek to draw from those facts are far more speculative and tenuous than the inferences this Court found appropriate in *WH*.  *See* 2013 WL 2456612, at *6–7 (finding allegations based on guilty pleas sufficient "provided one such

---

[1] Defendants incorporate by reference the arguments and authority set forth in Section I of Defendants' Collective Brief in Support of Defendants' Collective Motion to Dismiss the Direct Purchaser Actions.

inference suggests a plausible conspiracy").  Here, the guilty pleas and criminal filings that the IPPs rely on do not support the broad conspiracy they allege.  *See Hinds Cnty. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 106, 115 (S.D.N.Y. 2011) ("[E]vidence of guilty pleas . . . cannot replace entirely a plaintiff's independent proffer of facts which would tend to support the illegal conduct alleged."); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 979 (N.D. Iowa 2011) (holding allegations referencing narrow guilty pleas did not sufficiently state a claim of "an 'overarching' conspiracy").

Stripped of generic statements about the "elasticity" and "barriers to entry" of the alleged market, *see, e.g.*, AD CCC ¶¶ 149–59; EP CAC ¶¶ 94–105,[2] and irrelevant references to government investigations of unrelated auto parts, *see, e.g.*, AD CCC ¶¶ 181; EP CAC ¶¶ 116–26, the conspiracy pleaded in the IPPs' complaints is based on allegations pertaining to:

- A guilty plea by Tokai Rika Co., Ltd. ("Tokai Rika") that makes no mention of any OSS product, but instead relates entirely to Heater Control Panels sold to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc., *see United States v. Tokai Rika Co., Ltd.*, No. 12-cr-20711, Plea Agreement (Doc. #11) ¶ 4(a);

- A guilty plea by TRW Deutschland Holding GmbH that pertains solely to seat belts, airbags and steering wheels sold to two German automobile manufacturers, *see United States v. TRW Deutschland*, No. 12-cr-20491 (Doc. #4) ¶¶ 4(e), 8(a);

---

[2] Citations to "AD CCC" are to the Dealership Consolidated Class Complaint, No. 2:12-cv-00602-MOB-MKM (Doc. #55) (July 3, 2013) and citations to "EP CAC" are to the Occupant Safety Restraint Systems' Consolidated Amended Class Action Complaint, No. 2:12-cv-00603-MOB-MKM (Doc. #55) (June 6, 2013).

- A guilty plea by Autoliv, Inc. ("Autoliv") that relates to: (a) the sale of only seat belts to one Japanese auto manufacturer, and (b) the sale of seat belts, airbags and/or steering wheels to a different Japanese auto manufacturer, *see United States v. Autoliv, Inc*., No. 12-cr-20383, Plea Agreement (Doc. #8) ¶ 4; and

- A reported guilty plea by Takata Corporation ("Takata") to a criminal information that relates only to seat belts sold to certain Japanese auto manufacturers, *see United States v. Takata Corp.*, No. 13-cr-20741 (Doc. #1) ¶¶ 1, 4.[3]

The conspiracy—or conspiracies—suggested by these pleas is far narrower than the broad conspiracy alleged by the IPPs.[4] Even read generously, these documents simply do not support a conspiracy covering all OSS parts,[5] spanning six years, including all defendants, and directed at all automobile manufacturers. *See* AD CCC ¶¶ 1–3; EP CAC ¶¶ 1–5. Indeed, they suggest that portions of the IPPs' complaints are not just speculation but sheer fabrication. For example, nowhere in any of the cited documents is there the slightest hint of any conspiratorial conduct involving any defendant that relates in any way to *any* safety electronic systems or *any* United States auto manufacturer. Moreover, the plea offers no basis for inferring that all defendants conspired with respect to all OSS parts, a particularly noteworthy omission given that

---

[3] Neither complaint refers to the Takata plea, the announcement of which post-dated the filing of both complaints. Nevertheless, because its inclusion in the complaint would not alter the arguments at issue here, defendants treat it as if it had been pleaded and make their arguments accordingly.

[4] These pleas also stand in stark contrast to the pleas relied on in *WH*, which were not clearly limited to specific OEMs. For example, in *WH* one defendant pleaded guilty to conduct involving sales to "automobile manufacturers" generally, and another pleaded to conduct that targeted "certain automobile manufacturers" without identifying which ones, or even in which country they were based. *See* Furukawa Plea Agreement at 5, *United States. v. Furukawa Electric Co., Ltd.,* No. 11-cr-20612 (E.D. Mich. filed Nov. 14, 2011); Yazaki Plea Agreement at 4, *United States v. Yazaki Corp.,* No. 12-cr-20064 (E.D. Mich. filed Mar. 1, 2012).

[5] Defendants treat the IPPs' allegations as true for purposes of this motion to dismiss. Defendants do not concede, for example, that there is one, global "seat belt" market.

(in addition to the fact that no plea mentions safety electronic systems), Tokai Rika does not even sell airbags,[6] Takata has not been charged with or pleaded guilty to conduct involving airbags or steering wheels, and part of Autoliv's plea relates exclusively to seat belts.  In short, whatever conspiratorial conduct four of the ten defendants in this case pleaded guilty to, it is clearly *not* the conspiracy alleged by either of the IPP complaints, and there are no other facts alleged in those complaints that plausibly suggest such a conspiracy.

## II.     THE COURT SHOULD DISMISS THE IPPS' CLAIMS FOR LACK OF CONSTITUTIONAL STANDING.

To satisfy constitutional standing requirements, the IPPs must plead facts sufficient to establish they have suffered an injury-in-fact as a result of the alleged conspiracy.  *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief").  The alleged injury must be both "concrete and particularized" and "actual or imminent."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted).  The IPPs' complaints here, which do not identify any specific products they purchased and contain only conclusory allegations about their alleged overpayment for these products, fall short of this standard.

### A.     The IPPs Do Not Sufficiently Allege that They Purchased Affected Products.

To establish injury-in-fact the IPPs must allege facts showing, at a minimum, that the prices were inflated by overcharges in one or more of the OSS parts implicated by the alleged conspiracy.  *See, e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured.").  The IPPs fail to meet this threshold standard because

---

[6] *See* http://www.tokai-rika.co.jp/en/products/vehicle/safety.html.

they do not allege even the most basic facts about what OSS part they purchased, including which kind of part, when they purchased it, whether, and if so, what vehicle the part was in, and from whom it was purchased.  On the basis of such meager allegations—which ultimately amount to no more than an allegation that each plaintiff at some point purchased some car— there is simply no basis on which to conclude that any plaintiff was actually injured by the alleged conspiracy.

The ADs allege that they are each dealers for particular auto manufacturers and that each dealer purchased "vehicles containing [OSSs] manufactured by one or more of the Defendants." AD CCC ¶¶ 20–105.  They do not, however, allege anything about which specific parts they purchased, when, and from whom, or even what vehicle makes or models they purchased.  This makes it impossible to tell which actual part was affected (seat belt, airbag, etc.) or which defendant manufactured the part, and thus whether the part was actually affected by the alleged conspiracy—unless the Court credits the impossibly broad allegation that every OSS part manufactured in the last six years was overpriced as a result of a speculative conspiracy. Particularly notable is the fact that roughly half of the ADs allege that they purchased cars *only* from United States auto manufacturers which are not implicated by *any* of the pleas or criminal filings related to *any* OSS part.  *See supra* Part I.

The EPs' allegations are even less specific, stating only that they each "purchased an [OSS] indirectly from one or more Defendants."  EP CAC ¶¶ 19–63.  Thus, they not only fail to say which part they purchased, when, from whom, and which defendant manufactured it, but they do not even say from which auto manufacturer they purchased their car, or what car model they purchased, rendering it impossible to tell whether they indirectly purchased an even arguably affected car model.

In short, the IPPs' minimalist pleadings fail to provide sufficient factual support for their claims that they purchased a part that is implicated by the alleged conspiracy, unless the conspiracy is assumed to cover every single OSS part ever manufactured by any defendant—an assumption that *Twombly* and *Iqbal* do not allow.  *See supra* Part I.

**B.     IPPs Have Not Sufficiently Alleged a Causal Connection Between Their Injury and the Alleged Conspiracy.**

Even had the IPPs alleged sufficient facts to establish that they indirectly purchased a part that was affected by the alleged conspiracy, they still fail to establish that they have suffered injury-in-fact because they do not plead sufficient facts to establish that any overcharge that may have been paid by the *direct purchaser* of such part was ultimately passed on to the IPPs when they *indirectly* purchased such a part.  While the IPPs do allege this in conclusory fashion, *see, e.g.*, AD CCC ¶ 205; EP CAC ¶ 140, they do not offer any factual allegations about why or how the alleged overcharge was passed through to them in light of the thousands of components that make up an automobile and the myriad factors that affect the price paid for the finished product they allegedly purchased.  *See, e.g.*, *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), No. 2:09–md–02042, 2013 WL 1431756, at *14 (E.D. Mich. Apr. 9, 2013) (finished products containing price-fixed component "contain numerous other components, all of which collectively determine the final price paid"); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV III*"), 632 F. Supp. 2d 42, 59 n.21 (D. Me. 2009) ("[C]ar purchases generally are a product of individual negotiation and can often involve other issues such as trade-in allowances, below-market-rate financing, etc.").

Defendants recognize that this Court in *WH* accepted similar pleadings as establishing injury-in-fact in the face of similar arguments, which will therefore not be repeated at length. Nevertheless, defendants respectfully urge the Court to revisit that holding in this case,

particularly given:  (a) that the decision on which the Court relied,[7] *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 294 (6th Cir. 2006), was decided before *Twombly* and *Iqbal*; and (b) that more recent authority has rejected "the proposition that to plead antitrust injury, all a claimant must allege is that he paid for a product at a supra-competitive price," *Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 83 (D.D.C. 2013).

### C. A Ruling on the ADs' Standing To Bring Certain State Law Claims Should Not Await Class Certification.

The ADs plead claims under the laws of Hawaii and North Dakota, notwithstanding the fact that no AD resides in those states and no facts pleaded suggest that any AD was injured in those states.  That circumstance warrants dismissal of those claims for lack of standing, notwithstanding the ADs' claims to represent a putative class that could include residents of those states.  *See, e.g.*, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (internal quotations omitted)); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("A potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action."); *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors I*"), No. 2:09–md–02042, 2012 WL 2917365, at *7 (E.D. Mich. July 17, 2012) (dismissing claims under various states' laws because "no named [indirect purchaser] Plaintiff resides in or was injured in those states"); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657–59 (E.D. Mich. 2011) (same as to indirect purchaser claims under twenty-six states' laws).

---

[7] *See WH*, 2013 WL 2456612, at *7–8.

9

Defendants recognize that in *WH* this Court deferred similar standing questions until the class certification stage, 2013 WL 2456612, at *11, but respectfully suggest that in this case the Court should follow the reasoning of numerous other cases that have held that Article III standing of individual plaintiffs should be determined before subjecting defendants to what may well prove to be the unjustified and substantial burden of litigation.  *See Compressors I*, 2012 WL 2917365, at *7; *In re CRT Antitrust Litig.* ("*CRT I*"), No. 07-cv-05944-SC, slip op. at *6 (N.D. Cal. Sept. 30, 2010); *Packaged Ice*, 779 F. Supp. 2d at 657–59; *Smith v. Lawyers Title Ins. Corp.*, No. 07-12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir.2011); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 157 (E.D. Pa. 2009); *In re Ditropan XL*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).

## III.   THE COURT SHOULD DISMISS THE IPPS' CLAIMS BECAUSE THE IPPS CANNOT DEMONSTRATE ANTITRUST STANDING UNDER *AGC*.

As this Court has explained, in *Associated General Contractors*, the Supreme Court held "that even when a plaintiff plausibly alleges an injury-in-fact sufficient for constitutional standing, the plaintiff still must establish antitrust standing" in order to maintain an antitrust action.  *WH*, 2013 WL 2456612, at *13 (citing *Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983) ("*AGC*")); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) ("[A]ntitrust standing and Article III standing are not one and the same, and we not only may—but we must—reject claims under Rule 12(b)(6) when antitrust standing is missing.").  Antitrust standing requires the IPPs to show that their injuries are directly traceable to the alleged antitrust violation—in other words, that their injuries are not

overly remote. *AGC*, 459 U.S. at 534–35.[8]  Although *AGC* involved the interpretation of the

Clayton Act, this Court in *WH* "reject[ed] IPPs' argument that *AGC* does not factor into the

standing analysis" when reviewing the sufficiency of state law antitrust claims.  2013 WL

2456612, at *14.  And, for the reasons explained below, *infra* Part III, it is clear that the *AGC*

factors (or substantially similar factors) are applicable to nearly all the state law claims brought

by the IPPs.

　　　　Defendants acknowledge that this Court held in *WH* that antitrust standing was

adequately pleaded in complaints with substantially similar allegations to the ones at issue here.

*See* 2013 WL 2456612, at *15–18.  Defendants respectfully urge this Court to reconsider that

reasoning in this case, and to adopt the reasoning of the other federal courts that have held that

*AGC* requires dismissal of claims that, like the claims at issue here, were made by buyers of

finished goods who did not participate in the market in which the prices were allegedly fixed and

whose injuries were not "inextricably intertwined" with that market.  *See Compressors II*, 2013

WL 1431756, at *12 (internal quotations omitted) (citing *In re Dynamic Random Access Memory*

*Antitrust Litig. ("DRAM I")*, 516 F. Supp. 2d 1072, 1091 (N.D. Cal. 2007)); *Potash*, 667 F.

Supp. 2d at 939–40); *In re Dynamic Random Access Memory Antitrust Litig. ("DRAM II")*, 536

F. Supp. 2d 1129, 1141–42 (N.D. Cal. 2008).  Nevertheless, in deference to the Court's prior

consideration of these issues, Defendants will not belabor the issue, but only note briefly that

under the rationale of those decisions, the IPP complaints here do not pass muster:

---

[8] Under *AGC*, a court should analyze the following factors to determine whether a plaintiff's
alleged harm is sufficient to establish antitrust standing: (1) the nature of the plaintiff's alleged
injury and whether the plaintiff was a participant in the relevant market; (2) the directness of the
alleged injury; (3) the speculative nature of the alleged harm; (4) the complexity in apportioning
damages; and (5) the risk of duplicative recovery.  *WH*, 2013 WL 2456612, at *14.

First *AGC* Factor—Market Participation:  The IPPs did not participate in the allegedly price-fixed market.  They allege that the relevant market is "the market for [OSS]," AD CCC ¶ 18; EP CAC ¶ 17, but the IPPs did not purchase those products from Defendants.  And, while they allege in conclusory fashion that their purchases are "inextricably linked and intertwined" with the relevant market, *see* AD CCC ¶ 203; EP CAC ¶ 139, they have not alleged facts, as required under Sixth Circuit law, that would make that claim plausible—i.e., that would, if proven, demonstrate that IPPs have been "manipulated or utilized by [d]efendant[s] as a fulcrum, conduit or market force to injure competitors or participants in the relevant product and geographical market."  *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047, 1052 (6th Cir. 1986) (first alteration in original) (internal quotations omitted); *see also DRAM II*, 536 F. Supp. 2d at 1140; *Compressors II*, 2013 WL 1431756, at *12.

Second *AGC* Factor—Directness of Injury:  The IPPs' complaint does not contain a single specific factual allegation concerning whether the parties from whom they purchased their finished automobiles passed on any alleged overcharges resulting from the alleged conspiracy. *See Potash*, 667 F. Supp. 2d at 941 ("The absence of a critical link in the chain of causation alleged by Indirect Purchaser Plaintiffs weighs against finding that they have antitrust standing to pursue this claim.").  Therefore, "the causal nexus between the alleged conspiracy in the [OSS] market and the [OSS IPPs'] alleged injury (paying inflated prices for [vehicles] that contain [OSSs] is too remote and attenuated to support antitrust standing" under the second AGC factor. *Compressors II*, 2013 WL 1431756, at *14.

Third *AGC* Factor—Speculative Harm:  There is, *at best*, only an indirect causal connection between the IPPs' alleged injury and the alleged antitrust violation based on their allegation that they purchased OSS components through the vehicle market.  *See AGC*, 459 U.S.

12

at 542.  Moreover, many independent factors—apart from the alleged overcharge—exist that could have influenced the price that the IPPs paid.  *See id.*  These include the cost of the thousands of other components contained in vehicles, the cost of their assembly and distribution, pricing of competing vehicle models, the timing of the purchase during the model year, and the negotiating skill exhibited at each step of the distribution chain.  As such, the IPPs' "alleged indirect injuries would render damages highly speculative," and the third *AGC* factor weighs against antitrust standing here.  *Compressors II*, 2013 WL 1431756, at \*14.

Fourth and Fifth *AGC* Factors—Apportioning Damages and Duplicative Recovery:  It would be virtually impossible to calculate and apportion damages for any alleged OSS overcharge, and to avoid duplicative recoveries while doing so.  The IPPs would not only have to identify the specific price increase on each OSS component that resulted from the alleged conspiracy, but they would have to show the extent to which this overcharge amount was passed through to the ADs and subsequently passed through to the EPs to show not only damages but to avoid duplicative recovery.  *See Compressors II*, 2013 WL 1431756, at \*14 (noting "the danger of duplicative recovery is highly relevant" in indirect, component cases, as such claims "involve an incredibly complex—if not impossible—apportionment of damages" that subject them to dismissal (internal quotations omitted)).  The fourth and fifth *AGC* factors thus weigh strongly against antitrust standing here.

## IV.    THE COURT SHOULD DISMISS THE IPPS' UNJUST ENRICHMENT CLAIMS.

### A.    Plaintiffs Do Not Adequately Plead Claims for Unjust Enrichment.

The IPPs' unjust enrichment claims are deficient for multiple reasons and should be dismissed in their entirety.

First, the EPs' unjust enrichment claims fail because they fail to identify the unjust enrichment laws of any particular state.  As this Court held in *WH*:  "[F]ailure to identify the

unjust enrichment laws of any particular jurisdiction subjects the causes of action to dismissal. There is no federal common law of unjust enrichment, and courts have recognized that a federal remedy would be contrary to the Supreme Court's holding in *Illinois Brick*."  2013 WL 2456612, at *31 (citation omitted) (dismissing indirect purchasers' unjust enrichment claims); *see also Packaged Ice*, 779 F. Supp. 2d at 667–68 (dismissing unjust enrichment claims where plaintiffs "fail[ed] to identify any specific state unjust enrichment law under which the IP Plaintiffs purport to proceed"); *Compressors II*, 2013 WL 1431756, at *24.  The EPs here have done nothing to correct for the deficiencies noted by the Court in *WH*.  There is thus no basis for a different outcome here.

Second, although the ADs include a catch-all allegation that they are bringing their unjust enrichment claims under the laws of "all states listed in the Second and Third Claims, *supra*," plus the laws of "Missouri, Massachusetts and Illinois," AD CCC ¶ 291, this too is insufficient. "[C]obbling together the elements of a claim of unjust enrichment from the laws of the fifty states is no different from applying federal common law," *Wellbutrin*, 260 F.R.D. at 167, which, as this Court has recognized, does not exist, 2013 WL 2456612, at *31.

Third, and relatedly, the IPPs' barebones allegations that "Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits"; that "Defendants have benefited from their unlawful acts"; and that "it would be inequitable for defendants to be permitted to retain any of the" benefit, AD CCC ¶¶ 292–93; EP CAC ¶ 214–15, are deficient as a matter of law.  Neither the ADs nor the EPs plead the specific elements of any state's unjust enrichment law or the factual allegations to support recovery under those laws. Although, as demonstrated below, *see infra* Part V, "[s]tate law requirements under unjust

14

enrichment law vary widely." *Compressors II*, 2013 WL 1431756, at *24. IPPs include no such state-specific pleading.

*Twombly* and *Iqbal* make clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.," *Iqbal*, 556 U.S. at 678, which applies with equal force to the IPPs' unjust enrichment claims here, *see Eivaz v. Edwards*, No. 12-C-910, 2013 WL 989843, at *2–3 (E.D. Wis. Mar. 13, 2013) (dismissing unjust enrichment claim that was based on allegations that were conclusory and amounted to a formulaic recitation of the elements of the claim). The IPPs do not even offer "threadbare recitals" of the elements of their unjust enrichment claims, and those claims should, therefore, be dismissed. *See Packaged Ice*, 779 F. Supp. 2d at 667–68 (detailing differences in state unjust enrichment laws and granting dismissal due to inability to analyze the plaintiffs' claims based on the complaint); *Compressors II*, 2013 WL 1431756, at *24.

**B.      The IPPs Cannot Use Unjust Enrichment To Recover on Failed Antitrust and Consumer Protection Theories.**

The IPPs cannot evade the restrictions of federal and state law by resorting to the doctrine of unjust enrichment. It is axiomatic that, where the law precludes a plaintiff from seeking damages under a claim at law, that plaintiff may not seek those same damages vis-à-vis an equitable claim for restitution. *Cf. INS v. Pangilinan*, 486 U.S. 875, 883 (1988) ("[I]t is well established that courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." (brackets and internal quotations omitted)). Antitrust and consumer protection statutes reflect each state legislature's policy choices concerning how best to regulate economic conduct in that state. Courts do not permit plaintiffs to circumvent these legislative policy choices by repackaging failed antitrust theories under the common law of unjust enrichment. *See In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365,

1380 (S.D. Fla. 2001) ("State legislatures and courts that adopted the *Illinois Brick* rule against indirect purchaser antitrust suits did not intend to allow an end run around the policies allowing only direct purchasers to recover." (internal quotations omitted)).  To do so would undermine "a relatively comprehensive state and federal statutory and common-law scheme [which] exists to proscribe the conduct of which [p]laintiffs complain."  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig. ("NMV I")*, 350 F. Supp. 2d 160, 209 (D. Me. 2004).

There is no cause of action for unjust enrichment based on anticompetitive conduct separate and apart from the predicate causes of action (either antitrust or consumer protection).  *See Digital Music*, 812 F. Supp. 2d at 412 (dismissing all autonomous unjust enrichment claims); *In re Flonase Antitrust Litig. ("Flonase II")*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010) (dismissing unjust enrichment claims where the predicate causes of action were dismissed); *Potash*, 667 F. Supp. 2d at 948 (same under Mississippi law).   The necessary premise of a freestanding unjust enrichment claim would have to be that, "even if the defendants' conduct is blameless under the substantive requirements of federal and state antitrust statutes and state consumer protection statutes, the plaintiffs nevertheless can still obtain restitution of some part of their . . . purchase price."  *NMV I*, 350 F. Supp. 2d at 209.  But permitting any such claim would directly circumvent legal limits of substantive antitrust and consumer protection law.

### C.     The IPPs' Unjust Enrichment Claims Fail Because the IPPs Do Not Satisfy the Direct Benefit Requirement in Certain States.

The IPPs' unjust enrichment claims under the laws of Arizona, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Utah, and D.C. (collectively, the "Direct Benefit States") fail because the IPPs do not and cannot plead that they conferred a "direct" benefit on Defendants.  *See, e.g.*, *Potash*, 667 F.

Supp. 2d at 948; *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *2–3 (N.D. Ill. Apr. 1, 2010).  In these states, the IPPs must allege that they conferred some "direct" advantage on Defendants.  The IPPs, however, admit they "had no direct contact or interaction with" any Defendants.  AD CCC ¶ 217; EP CAC ¶ 145.  All the IPPs offer is the general allegation that "Defendants have benefited."  AD CCC ¶ 293; EP CAC ¶ 215. But, as explained in more detail below, *see infra* Part V, that is insufficient to meet the pleading standards applicable in each of the Direct Benefit States.

### D.   The IPPs' Unjust Enrichment Claims Fail Because the IPPs Do Not Satisfy the Benefit of the Bargain Limitation in Certain States.

As explained below, courts in Arizona, Arkansas, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, Utah and D.C. ("Benefit of the Bargain States") reject unjust enrichment claims in cases like this one, "where parties voluntarily have negotiated, entered into and fully performed their bargain" (the "Benefit of the Bargain Limitation").  *See NMV I*, 350 F. Supp. 2d at 210 (rejecting unjust enrichment claims in case involving indirect purchasers of vehicles); *see also* Rstmt. (First) of Restitution § 107(1) (1937).  This is because there can be no unjust enrichment where the plaintiff got the product or service he expected at the price he agreed to pay—i.e., the benefit of his bargain.  The IPPs "paid their purchase prices and obtained their" products, *see NMV I*, 350 F. Supp. 2d at 210, under contracts they voluntarily negotiated and entered.  *See* AD CCC ¶¶ 20–105; EP CAC ¶ 19–63.  The IPPs do not assert that they failed to receive the benefits for which they bargained, nor do they allege that they sought to rescind their purchases.  Rather, the IPPs allege only that they overpaid for the products for which they bargained.  *See* AD CCC ¶ 10 ("As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the

17

Class paid artificially inflated prices for [OSS] or for vehicles containing [OSS].”); EP CAC ¶ 8

(same)).  That assertion, however, is insufficient to sustain an unjust enrichment claim because

the IPPs obtained the products they bargained for at the prices they agreed to pay.  *See, e.g.*, *Dist.*

*1199P Health & Welfare Plan v. Janssen, LP*, 784 F. Supp. 2d 508, 532–33 (D.N.J. 2011);

*Prohias v. Pfizer* (“*Prohias I*”), 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007).  This is true

whether the plaintiff entered into the bargain with the defendant, or, as here, with a third party.

*See, e.g.*, *High v. Davis*, 584 P.2d 725, 736 (Or. 1978) (en banc); *Howard v. Turnbull*, 316

S.W.3d 431, 438 (Mo. Ct. App. 2010); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322,

331–32 (Fla. Dist. Ct. App. 2007); *Winters v. Cnty. of Clatsop*, 150 P.3d 1104, 1108 (Or. Ct.

App. 2007).  For these reasons, and as explained *infra*, the IPPs’ unjust enrichment claims fail in

the Benefit of the Bargain States.

      **E.**    **The IPPs’ Claims Fail in Certain States Because Defendants Provided
Consideration for any Benefit.**

      Florida, Kansas, Massachusetts, Missouri, Nevada, New Hampshire, South Dakota,

Tennessee, Utah, Vermont and Wisconsin (the “Consideration States”) do not permit unjust

enrichment claims where the defendant has provided consideration for the benefit it received

because retention of the benefit under such circumstances is not considered to be “unjust” (the

“Consideration Limitation”).  *See, e.g.*, *Ray Reilly’s Tire Mart, Inc. v. F.P. Elnicki, Inc*., 537

A.2d 994, 995 (Vt. 1987) (“‘[I]f the [defendant] has given any consideration to any person for

the [benefit], it would not be unjust for him to retain the benefit without paying the furnisher.’”

(second and third alteration in original) (quoting *Paschall’s v. Dozier*, 407 S.W.2d 150, 155

(Tenn. 1966))); *Senne & Co. v. Simon Capital Ltd. P’ship*, No. 93-302, 2007 WL 1175858, at *8

(Kan. Ct. App. Apr. 20, 2007) (underlying premise of a claim for unjust enrichment is that the

defendant received a benefit without providing consideration); *Ferola v. Allstate Life Ins. Co.*,

No. 050996, 2007 WL 2705534, at *14 (Mass. Super. Ct. Aug. 30, 2007) (per curiam) (unjust

enrichment will not lie where defendant provided valuable consideration).  The IPPs expressly

allege that defendants gave consideration—namely, seat belts, airbags, etc.—to their direct

customers, *see*, *e.g.*, AD CCC ¶¶ 6 ("Defendants then sold Occupant Safety Restraint Systems . .

. to automobile manufacturers . . . .); EP CAC ¶ 5 (same), for any benefit (i.e., money)

defendants received.  Thus, as explained below, the IPPs may not bring unjust enrichment claims

in the Consideration States.

## V.    MANY OF THE IPPS' STATE-LAW CLAIMS ARE BARRED BY STATUTES OF LIMITATIONS.

The IPPs' state law antitrust and consumer protection claims are subject to statutes of

limitation ranging from three to six years.  In each state, the statute of limitations applied to these

statutory claims will also be applied to equitable claims, including unjust enrichment.  *See*, *e.g.*,

*Walker v. Armco Steel Corp.* 446 U.S. 740, 745 (1980); *Stuart & Sons, L.P. v. Curtis Publ'g Co.*,

456 F. Supp. 336, 343 (D. Conn. 2006) (to prevent opportunistic pleading, where a plaintiff

asserts an equitable claim based on the same conduct used to support a statutory claim, both

claims are controlled by the statute of limitations applicable to the statutory claim).  The first

indirect purchaser complaint was filed by Brock's Automotive on June 8, 2012.  *See* Class

Action Compl. for Damages & Inj. Relief, No. 2:12-cv-01474-HGB-ALC (Doc. #1) (E.D. La.

June 8, 2012).  Thus, any alleged violations on which the IPPs' attempt to recover prior to the

applicable statute of limitations period in each state, running from June 8, 2012, are not

actionable.

The IPPs attempt to toll the applicable limitations periods by alleging in conclusory

fashion that the equitable doctrine of fraudulent concealment applies.  AD CCC ¶¶ 220–28; EP

CAC ¶¶ 148–54.  To plead fraudulent concealment, the IPPs must plead facts that would meet

each state's respective standard for equitable tolling. *See, e.g.*, *Shropshear v. Corp. Counsel*, 275

F.3d 593, 596 (7th Cir. 2001); *Wade v. Danek Med. Inc.*, 182 F.3d 281, 289 (4th Cir. 1999).

However, as discussed further on a state-by-state basis, *infra* Part V, the IPPs fail to include *any*

facts supporting fraudulent concealment, and thus they have failed to meet their burden to plead

facts supporting each of the elements of this doctrine with particularity. *See, e.g.*, *Dayco Corp.*

*v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). Thus, fraudulent

concealment is not available here for the same reasons discussed in the Defendants' Joint Motion

to Dismiss DPP Claims, the reasoning and authorities of which Defendants incorporate as if fully

set forth herein. *See* Defs.' Joint Mot. to Dismiss DPP Claims at Part V.

## VI.    THE COURT SHOULD DISMISS MANY OF THE IPPS' STATE LAW CLAIMS ON STATUTORY OR OTHER GROUNDS.

In addition to failing for the reasons explained above, the IPPs' state antitrust, consumer

protection, and unjust enrichment claims are deficient on numerous state-specific grounds that

also require their dismissal in whole or in part. Defendants address these arguments below, and

provide exhibits summarizing these arguments, including that the IPPs: (1) lack antitrust

standing in states adopting *AGC* (or a similar standard) (Ex. B); (2) have failed to satisfy the

intrastate nexus requirements of certain state antitrust laws (Ex. C) and consumer protection laws

(Ex. D); (3) have failed to state a claim for unjust enrichment in certain states because they

cannot avoid the Benefit of the Bargain Limitation, avoid the Consideration Limitation, meet the

direct benefit requirement, and/or meet other state-specific pleading requirements (Exs. E–H);

and (4) are barred in whole or in part by state statutes of limitations (Ex. I). The Court need not

address all of these alternative arguments, however, should the Court find dismissal of the state

law claims appropriate for any of the reasons set forth in Parts I through III, *supra*.

A.      **Arizona**

1.      **The IPPs' Arizona Antitrust Claims Fail for Lack of Antitrust Standing.**

Arizona's harmonization statute authorizes courts to "use as a guide interpretations given by the federal courts to comparable federal antitrust statutes."  Ariz. Rev. Stat. Ann. § 44-1412. *AGC* thus applies to IPPs' Arizona antitrust claims, as recognized by Arizona, courts in this District, and other courts.  *See Luscher v. Bayer AG*, No. 2004-01485, slip op. at 2–3 (Ariz. Super. Ct. Sept. 14, 2005) (applying *AGC* to dismiss indirect purchaser Arizona antitrust claims); *Compressors II*, 2013 WL 1431756, at *10–15 (same); *DRAM II*, 536 F. Supp. 2d at 1134–42 (N.D. Cal. 2008) (same).  As explained in Part III, *supra*, because the *AGC* factors all weigh against standing, the IPPs' Arizona claims should be dismissed.

2.      **The IPPs' Arizona Unjust Enrichment Claims Fail for Three Reasons.**

First, to state an Arizona unjust enrichment claim, a party must plead, *inter alia*, "the absence of a legal remedy."  *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002).  Because the IPPs have not done so, and because the IPPs failed to plead their unjust enrichment claims in the alternative, the claims should be dismissed.

Second, Arizona unjust enrichment law requires the IPPs to specially allege that they conferred a benefit on Defendants.  *See Yee v. Nat'l Gypsum Co.*, No. CV-09-8189-PHX-DGC, 2010 WL 2572976, at *4 (D. Ariz. June 22, 2010) (dismissing unjust enrichment claim because indirect purchaser's complaint "contain[ed] no allegation that Plaintiff conferred a benefit on [defendant]"); *Laborers' & Operating Eng'rs' Util. Agreement Health & Welfare Trust Fund for Ariz. v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 951 (D. Ariz. 1999) (dismissing unjust enrichment claim where plaintiff union pension fund did not allege it conferred any benefit on defendant cigarette manufacturer).  Absent such allegations, courts, including in this District,

21

have dismissed Arizona unjust enrichment claims by indirect purchasers.  *See, e.g.*, *Compressors II*, 2013 WL 1431756, at \*25–26.  Because the IPPs do not and cannot allege they conferred any direct benefit on defendants, *see* Part IV.C., *supra*, their Arizona unjust enrichment claims should be dismissed.

Third, the IPPs' Arizona unjust enrichment claims also fail because, as explained in Part IV.D., *supra*, the IPPs received the benefit of their bargains:  properly functioning OSS parts at the prices they agreed to pay.  *See Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (in banc) ("A person is not entitled to compensation on the grounds of unjust enrichment if he receives from the other that which it was agreed between them the other should give in return."); *USLife Title Co. v. Gutkin*, 732 P.2d 579, 585 (Ariz. Ct. App. 1986) (plaintiff not entitled to unjust enrichment recovery because "[u]pon delivery of the quitclaim deed [plaintiff] obtained that for which it bargained").

> **3.  Arizona's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.**

A four year statute of limitations applies to Arizona antitrust claims, Ariz. Rev. Stat. Ann. § 44-1410, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Arizona requires that the IPPs' plead affirmative acts with particularity, *see Tovrea Land & Cattle Co. v. Linsenmeyer*, 412 P.2d 47, 63 (Ariz. 1966), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Arizona's statute of limitations.

### B.      Arkansas

#### 1.      The ADs' Price Fixing Claims Are Not Actionable Under the Consumer Protection Laws of Arkansas.

The ADs have alleged a claim under the Arkansas Deceptive Trade Practices Act

("ADTPA"), Ark. Code Ann. § 4-88-101.  AD CCC ¶ 281.  However, the Arkansas legislature

has passed a separate Unfair Practices Act.  Ark. Code Ann. §§ 4-75-201, *et seq.* ("AUPA").

Included in AUPA is a specific prohibition against price fixing.  *Id.* § 4-75-309.  While there are

no Arkansas state court opinions on whether the ADTPA allows a private cause of action for

price fixing claims, at least one Arkansas state court has recognized that there is no private right

of action under the AUPA price fixing statute.  *Depriest v. Astrazeneca Pharms. L.P.*, No. CV

2004-77, 2008 WL 3243562 (Ark. Cir. Ct. July 31, 2008) ("Plaintiffs' claim for 'Fixing Prices or

Quantities of Product' is based on Ark. Code Ann. § 4-75-309 and fails because the statute does

not provide a private right of action, *id.* § 4-75-315."), *aff'd* 351 S.W.3d 168 (Ark. 2009).  If the

Arkansas legislature had intended for price fixing to be actionable then it would have provided

for a private right of action under AUPA which specifically prohibits price fixing.  The fact that

it did not suggests strongly that the Arkansas legislature did not intend for plaintiffs to maintain

price fixing claims under the more general ADTPA statute.  This Court should therefore follow

other federal courts and dismiss the ADs' ADTPA claim.  *See, e.g.*, *In re Graphics Processing*

*Units Antitrust Litig.* ("*GPU I*"), 527 F. Supp. 2d 1011, 1030 (N.D. Cal. 2007); *In re TFT-LCD*

*(Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125 (N.D. Cal. 2008).

#### 2.      Because the ADs Merely Allege Overpayment, They Have No Right of Action Under Arkansas Consumer Protection Law.

The ADTPA provides a private right of action only if a plaintiff suffers "actual damage

or injury."  Ark. Code Ann. § 4-88-113(f).  The Arkansas Supreme Court has made clear this

standard is not met where, as here, plaintiffs allege only that they overpaid for a product.

*Compare Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005) ("Where the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA.") *with* AD CCC ¶ 281(c) (alleging that ADs "paid supracompetitive, artificially inflated prices" for OSS parts and vehicles containing OSS parts); *see also GPU I*, 527 F. Supp. 2d at 1029–30 (allegation that a product's price was too high was insufficient to state an ADTPA claim). Because the ADs' only claimed harm is the diminished value of their OSS parts—i.e., that they paid too much for them—the ADs have not suffered the "actual damage or injury" required by the ADTPA, and their claim should be dismissed.

### 3. The ADs Lack Standing To Assert Consumer Protection Claims Under Arkansas Law Because Their Claims Are Too Remote.

Arkansas does not allow plaintiffs to circumvent the antitrust standing requirements of *AGC* by re-casting antitrust claims as consumer protection claims. *See Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 888 (E.D. Ark. 2008) (plaintiffs' injury was too remote to support claim under Arkansas Deceptive Trade Practices Act; "Arkansas law recognizes the remoteness doctrine"), *aff'd*, 552 F.3d 659 (8th Cir. 2009). Therefore, for the same reasons discussed above, *see* Part III, *supra*, the IPPs may not maintain their consumer protection claims under Arkansas law because their injury is too remote.

### 4. The ADs' Consumer Protection Claim Fails Because Plaintiffs Do Not Allege "Unconscionable" Conduct.

The ADTPA requires the ADs to plead facts that establish that defendants engaged in unconscionable conduct. Ark. Code Ann. § 4-88-107(a); *GPU I*, 527 F. Supp. 2d at 1029–30. That means that the ADs must allege "grossly unequal bargaining power" compared to defendants. *GPU I*, 527 F. Supp. 2d at 1030. An allegation that the price of the product the ADs bought was unfairly high is insufficient to state a claim. *Id.* at 1029.

The ADs have not alleged any facts from which the Court could plausibly infer that they were subjected to inequitable bargaining power compared to defendants, or that there existed a "gross disparity" between the price paid for an OSS part and the value that the ADs received. *Id; see also Twombly*, 550 U.S. at 570. In fact, neither complaint alleges *anything* about the prices that the ADs paid for OSS parts or vehicles. Moreover, the ADs expressly allege that they purchased OSS parts or vehicles exclusively from parties other than defendants, and thus no bargaining ever took place between the ADs and defendants that could be characterized as "unequal." AD CCC ¶¶ 136, 137. Therefore, the Court should dismiss the ADs' legally deficient Arkansas consumer protection claims.

5.    **The ADs' Arkansas Unjust Enrichment Claim Fails Because They Received the Benefit of Their Bargains.**

Under Arkansas law, a plaintiff may not recover for unjust enrichment if it has received that for which it bargained. *See Frein v. Windsor Weeping Mary, LP*, 366 S.W.3d 367, 372 (Ark. Ct. App. 2009). As explained in Part IV.D., *supra*, the IPPs have received the benefit of their bargains—in this case, properly functioning OSS parts at prices they agreed to pay. Therefore, this Court should dismiss the ADs' Arkansas unjust enrichment claim.

6.    **Arkansas's Statute of Limitations Bars the ADs' Consumer Protection and Unjust Enrichment Claims in Whole or in Part.**

A five year statute of limitations applies to Arkansas consumer protection claims, Ark. Code Ann. § 4-88-115, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*. In order to toll the statute of limitations by pleading fraudulent concealment, Arkansas requires that the ADs plead both affirmative acts and due diligence with particularity, *see Bomar v. Moser*, 251 S.W.3d 234, 241–42 (Ark. 2007), which they have failed to do, *see* Part V, *supra*. Thus, the ADs' claims for damages based on purchases prior to June 8, 2007, are barred by Arkansas's statute of limitations.

C.     California

1.     **The IPPs' California Antitrust Claims Fail for Lack of Standing.**

"Because the Cartwright Act has objectives identical to the federal antitrust acts, the

California courts look to cases construing the federal antitrust laws for guidance in interpreting

the Cartwright Act." *Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337, 338 n.1 (Ct. App. 1995).

In *Vinci* and *Compressors II*, the courts applied *AGC* to determine plaintiffs' standing under the

Cartwright Act (California's antitrust law), and in each case found that plaintiffs had none.  *See*

*Vinci*, 43 Cal. Rptr. 2d at 338–40; *Compressors II*, 2013 WL 1431756, at *10–15 (dismissing

California antitrust claims by indirect purchasers of finished goods containing price-fixed part).

Because, as explained in Part III, *supra*, every *AGC* factor weighs against standing here, the

Court should dismiss the IPPs' California antitrust claims.

2.     **An Insufficient California Nexus Prohibits the EPs' Consumer
       Protection Claim.**

California consumer protection law requires that the "alleged misconduct or injuries

occur[] in California" and any "specific intrastate misconduct" be alleged in the complaint.  *See*

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005).

The EPs do not allege *any* California misconduct by Defendants nor do they allege where any EP

bought OSS parts or cars (*see* EP CAC ¶¶ 19–63, 202) or, hence, where they suffered injury.

The EPs' California consumer protection claim should therefore be dismissed.

3.     **California Does Not Recognize a Cause of Action for Unjust
       Enrichment.**

A cause of action for unjust enrichment *does not exist* under California law.  *See, e.g.*,

*Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) ("Because

California law does not recognize [p]laintiff's claim for unjust enrichment, there are no facts

[p]laintiff could prove to support this claim."), *aff'd sub nom. Walker v. GEICO Gen. Ins. Co.*,

558 F.3d 1025 (9th Cir. 2009); *Melchior v. New Line Prods. Inc*., 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003) ("Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." (internal quotation omitted)).  The California Court of Appeals and federal district courts in California recently have confirmed that there is no separate stand-alone cause of action for unjust enrichment under California law.  *See, e.g.*, *Dunkel v. eBay, Inc.*, No. 5:12-CV-01452-EJD, 2013 WL 415584, at *11 (N.D. Cal. Jan. 31, 2013); *Hill v. Roll Int'l Corp*., 128 Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011).  To the extent the IPPs have attempted to allege a California unjust enrichment claim, this claim fails.

### 4.     Alternatively, the IPPs' California Unjust Enrichment Claim Fails Because They Received the Benefit of Their Bargains.

Even assuming *arguendo* that the IPPs can maintain an unjust enrichment claim under California law, it still should be dismissed because the IPPs received the benefit of their bargains:  properly functioning OSS parts at the price they agreed to pay.  *See Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008) (holding plaintiffs not entitled to restitution; "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." (internal quotations omitted)); Part IV.D., *supra*.

### 5.     California's Statute of Limitations Bars the IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to California antitrust, Cal. Bus. & Prof. Code § 16750.1, and consumer protection claims, Cal. Bus. & Prof. Code § 17208, and also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, California requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Hesse v. Vinatieri*, 302 P.2d 699, 702 (Cal. Dist. Ct. App. 1956) (citations omitted) ("there must be some affirmative act calculated

27

to obscure the existence of a cause of action and it must be factually alleged"); *see also Sanchez v. South Hoover Hospital*, 553 P.2d 1129, 1134 (Cal. 1976), which they have failed to do, *see* Part V, *supra*. Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by California's statute of limitations.

### D. District of Columbia

#### 1. The IPPs' D.C. Antitrust Claims Fail for Lack of Standing.

The District of Columbia Antitrust Act ("DCAA") authorizes "a court of competent jurisdiction . . . [to] use as a guide interpretations given by federal courts to comparable antitrust statutes." D.C. Code § 28-4515. Because of the identical wording of the DCAA and its federal counterpart, the D.C. Superior Court has held that *AGC* applies to DCAA claims. *See Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761, at *4–6 (D.C. Super. Ct. Apr. 22, 2005) (applying *AGC* factors to dismiss DCAA claim: courts will "look at federal case law to determine whether [a] D.C. plaintiff has standing under § 28-4508"). In reliance on that authority and the DCAA harmonization provision, a court in this District likewise held that *AGC* applies to, and requires dismissal of, DCAA claims under circumstances analogous to those here. *See Compressors II*, 2013 WL 1431756, at *10–15. The Court should reach the same result here and dismiss the IPPs' DCAA claims for the reasons set forth in Part III, *supra*.

#### 2. The ADs' Consumer Protection Claim Fails Under D.C. Law Because the ADs Are Not Consumers.

The ADs' consumer protection claim under the District of Columbia's Consumer Protection Procedures Act ("CPPA") should be dismissed because the ADs are not "consumers." The CPPA protects only "consumer[s]," defined as persons "who receive[] or demand[] goods or services that are primarily for personal, household, or family use." *See Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043–44 (D.C. Cir. 2010) (citing authority from D.C. Court of Appeals).

As such, "[t]he CPPA does not reach transactions intended primarily to promote business or professional interests" and "does not apply to commercial dealings outside the consumer sphere." *Compressors II*, 2013 WL 1431756, at *22 (internal quotations omitted).  The court in *Compressors II* dismissed a claim brought by a limited liability company under the CPPA because it failed to allege "how it used the product" or "that the entity purchased the product primarily for personal, household, or family use."  *Id.*  The ADs here similarly do not allege that a single plaintiff was a "consumer" or used OSS for personal, household, or family use.  As such, their claim under the CPPA should be dismissed.

### 3.    The IPPs Fail To Allege a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce, Which Is Fatal to Their Antitrust Claims Under D.C. Law.

In *WH*, this Court cited *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 397 (D. Md. 1990), for the proposition that a court should "allow[] discovery to ascertain whether an interstate link could be established even though none of the defendants, nor the plaintiff were residents or citizens of the District of Columbia."  2013 WL 2456612, at *20. However, the IPPs must still satisfy *Twombly* and allege facts sufficient to state a claim.  To do so under the antitrust law of D.C., they must allege facts sufficient to show that there were "sales in the District of Columbia that d[o] *not* have an *interstate* aspect."  *Sun Dun, Inc. v. Coca-Cola Co.*, 770 F. Supp. 285, 289 (D. Md. 1991) (emphasis added).  The IPPs have not done so here. First, no EP resides in D.C., and there is no allegation that there was a sale in D.C. that did not have an interstate aspect.  *See* EP CAC ¶ 175.  To the contrary, the EPs' complaint is replete with references to the *interstate* nature of the alleged conspiracy.  *See, e.g.*, *id.* ¶ 14 ("Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States."); *id.* ¶ 15 ("The activities of Defendants and their co-conspirators were within

the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States.").  Likewise, although the ADs' complaint includes allegations of purchases within D.C., they clearly allege that the conspiracy was *interstate* in nature.  *See* AD CCC ¶¶ 15, 16.  As such, the IPPs have failed to plead facts necessary to support the required intrastate conduct element of an antitrust claim under D.C. law.

### 4.      IPPs' D.C. Unjust Enrichment Claims Fail for Two Reasons.

First, a claim of unjust enrichment under D.C. law requires that a plaintiff confer a *direct* benefit.  *See Minebea Co. Ltd. v. Pabst*, 444 F. Supp. 2d 68, 186 (D.C.C. 2006) (denying D.C. unjust enrichment claim where neither plaintiff "ever afforded any direct benefit to [the defendant]"); *United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 173 (D.D.C. 2007) (dismissing unjust enrichment claim against corporation's former president and majority shareholder because "any benefit was conferred on the corporation and not the individual defendant"); *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008) (rejecting unjust enrichment claim of third party because it had no direct relationship with defendant developer); *Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126, at *3 (D.C. Super. Ct. Mar. 28, 2006) (dismissing unjust enrichment claim by plaintiff-consumer against manufacturer because "the complaint doe[sic] not allege that [plaintiff] has conferred a benefit on any Defendant" and thus failed to specifically link plaintiff with defendant).  For the reasons given above, *see* Part IV.C., *supra*, and as recently recognized in *Compressors II*, 2013 WL 1431756, at *25–26, the IPPs' D.C. unjust enrichment claims should be dismissed.

Second, D.C. law does not allow a plaintiff to bring an unjust enrichment claim where she has received the benefit of her bargain.  *See Dahlgren v. Audiovox Commc'ns Corp.*, No. 2002 CA 007884 B, 2012 WL 2131937 (D.C. Super. Ct. Mar. 15, 2012) (dismissing an unjust enrichment claim where a plaintiff who sued a phone manufacturer and "produced no evidence

30

that the cell phones she bought failed to function as intended," had received the benefit of her

bargain with the phone seller).  As in *Dahlgren*, the IPPs here voluntarily purchased products

and received that for which they bargained:  properly functioning OSS parts at the prices they

agreed to pay.  *See* Part IV.D., *supra*.  Therefore, this Court should dismiss the IPPs' D.C. unjust

enrichment claims.

> **5.     D.C.'s Statutes of Limitations Bars the IPPs' Antitrust, Consumer
>          Protection, and Unjust Enrichment Claims in Whole or in Part.**

A four year statute of limitations applies to D.C. antitrust claims, D.C. Code § 28-4511,

and a three year statute of limitations applies to D.C. consumer protection claims, *id.* § 12-

301(8), which also applies to unjust enrichment claims relying on the same allegations, *see* Part

V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, D.C.

requires that the IPPs plead both affirmative acts and due diligence with particularity, *see*

*Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 773–74 (D.C. Ct. App. 1998), which they have

failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to

June 8, 2008 (antitrust) and June 8, 2009 (consumer protection and unjust enrichment), are

barred by D.C.'s statutes of limitations.

> **E.     Florida**

> > **1.     The IPPs Fail To Plead Fraud with Particularity as Required To State
> >          a Consumer Protection Claim Under Florida Law.**

This Court held in *WH* that plaintiffs need not plead fraud with particularity to support a

claim under Florida's consumer protection law.  2013 WL 2456612, at *23–24.  Defendants

respectfully disagree, as this holding is contrary to what federal courts in Florida have held, *see,*

*e.g.*, *Wrestlerreunion, LLC v. Live Nation T.V. Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS,

2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008) (recognizing that "[m]ost courts construing

claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts

have required the heightened pleading standard requirements of Rule 9(b)"), and is contrary to the previously published decision in this District of *Compressors II*, 2013 WL 1431756, at *20–21. While this Court relied on *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) to support its rationale that fraud need not be pleaded with particularity to state a Florida consumer protection claim, other district courts in Florida have held otherwise, *see, e.g.*, *Wrestlerreunion, LLC*, 2008 WL 3048859, at *3.

Under this standard, the IPPs here do not allege fraud or deception with the particularity required by Federal Rule of Civil Procedure 9(b). "In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied," among other things. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (internal quotations omitted). Not only do the IPPs fail to allege the time and place of any alleged misrepresentations, their complaints in fact contain no allegations of deceptive or misleading statements made by any defendant to any plaintiff, let alone to any auto manufacturer. Further, the complaints fail to describe any particular defendant's participation in the alleged deceptive acts, as required by Rule 9(b). *See id.* ("A complaint may not rely upon blanket references to acts or omissions by all of the 'defendants.'" (internal quotations omitted)).

## 2. The IPPs' Florida Unjust Enrichment Claims Fail for Four Reasons.

First, to state a Florida unjust enrichment claim, a party must plead, *inter alia*, "that no adequate legal remedy exists." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (dismissing unjust enrichment claims predicated on same facts as FDUTPA claim because existence of FDUTPA claim shows an adequate remedy at law); *see also Prohias v. Pfizer, Inc.* ("*Prohias II*"), 490 F. Supp. 2d 1228, 1236–37 (S.D. Fla. 2007)

32

(same).  The IPPs do not plead the absence of a legal remedy.  Nor have they pleaded their Florida unjust enrichment claims in the alternative.

Second, the IPPs' Florida unjust enrichment claims fail because the IPPs do not allege that they conferred a "direct" benefit on defendants.  *See Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009) (affirming trial court order dismissing unjust enrichment claim because plaintiff did not confer a direct benefit upon defendant); *see also In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842–44 (S.D. Ohio 2012) (dismissing unjust enrichment claim because "[w]ithout establishing a link between the unidentified seller of his vehicle and [the manufacturer], Florida [p]laintiff fails to allege that he conferred a direct benefit on [defendant] as Florida law requires"); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551–52 (D. Md. 2011) (dismissing Florida unjust enrichment claim by used car purchasers against car manufacturer for failure to allege they bought from the manufacturer or otherwise conferred a benefit on it when they bought cars from independent dealerships); *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493, 2011 WL 7095432, at *20 (S.D.N.Y. Dec. 16, 2011) (dismissing Florida unjust enrichment claim because claim requires a direct relationship between the parties, and plaintiff did not allege he bought car from defendant).

A plaintiff may meet Florida's direct benefit requirement by pleading contractual privity or direct contact, or, in the absence of such a direct relationship, by alleging that: (1) it provided services, such as medical services, to a person to whom the defendant owes a legal or other duty to provide such services, *see, e.g.*, *Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1199 (Fla. Dist. Ct. App. 2006) (treatment of defendant-HMO's subscribers by plaintiff is sufficient allegation that plaintiff conferred a benefit on defendant-HMO); *Variety Children's Hosp., Inc. v. Vigliotti*, 385 So. 2d 1052, 1054 (Fla. Dist. Ct. App. 1980) (plaintiff hospital's provision of

medical services to defendant's child benefited defendant, whose "duty to provide or procure necessary medical services for her daughter was fulfilled"); or (2) it made real improvements to a defendant-landowner's property at the request of a tenant or lessee, *see, e.g.*, *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994) (plaintiff contractor's allegations that improvements contracted for by tenant "enhanced the value of the premises and allowed the owner to relet them at an increased rent" sufficient to satisfy the direct benefit element of a claim for unjust enrichment against defendant owner).  The IPPs, however, have not alleged that they conferred a direct benefit of *any* kind on defendants (nor can they), *see* Part IV.C., *supra*, and their Florida unjust enrichment claims should therefore be dismissed.  *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25–26 (granting motion to dismiss indirect unjust enrichment claims under Florida law); *Potash*, 667 F. Supp. 2d at 948–49 (same).

Third, the IPPs' Florida unjust enrichment claims fail because "to state a claim for unjust enrichment . . . the plaintiffs must plead . . . at a minimum, that they did not get the 'benefit of their bargain' when they purchased [the product]."  *Prohias v. Pfizer, Inc.* ("*Prohias I*"), 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007); *see also Am. Safety*, 959 So. 2d at 331–32 (dismissing unjust enrichment claim because the parties "received exactly what they bargained for").  Here, as in *Prohias* and *American Safety*, plaintiffs received that for which they voluntarily bargained: properly functioning OSS parts at the price they agreed to pay.  *See* Part IV.D., *supra*

Fourth, there is no unjust enrichment under Florida law when the defendant has provided consideration for the benefit conferred.  *See Commerce P'ship 8098 L.P. v. Equity Contracting Co.*, 695 So. 2d 383, 390 (Fla. Dist. Ct. App. 1997) (en banc); *see also Am. Safety*, 959 So. 2d at 331–32 ("When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails.").  Here, as discussed above, *see* Part IV.E., *supra*,

34

the IPPs expressly allege that defendants gave consideration—i.e., OSS parts—to their direct

customers.  Accordingly, their Florida unjust enrichment claims should be dismissed.

> ### 3. Florida's Statute of Limitations Bars the IPPs' Consumer Protection and Unjust Enrichment Claims.

A four year statute of limitations applies to Florida consumer protection claims, Fla. Stat.

Ann. § 95.11(3), which also applies to unjust enrichment claims relying on the same allegations,

*see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment,

Florida requires that the IPPs plead both affirmative acts and due diligence with particularity, *see*

*First Fed. Savings & Loan Ass'n of Wisconsin v. Dade Fed. Savings & Loan Ass'n*, 403 So.2d

1097, 1100 (Fla. Dist. Ct. App. 1981), which they have failed to do, *see* Part V, *supra*.  Thus, the

IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Florida's

statute of limitations.

> ## F. Hawaii

> ### 1. The ADs' Hawaii Antitrust Claim Fails for Lack of Standing.

Hawaii's harmonization statute, Haw. Rev. Stat. § 480-3, expressly directs that Hawaii's

antitrust law "*shall* be construed in accordance with judicial interpretations of similar federal

antitrust statutes."  *Id.* (emphasis added); *see also Davis v. Four Seasons Hotel Ltd.*, 228 P.3d

303, 324 (Haw. 2010) ("Pursuant to this instruction [HRS § 480-3] . . . it is appropriate to look to

'the guidance of similar federal antitrust statutes.'" (citation omitted)).  The *AGC* factors thus

apply to the ADs' Hawaii antitrust claim and, as explained in Part III, *supra*, all weigh against

standing.  Thus, the ADs' Hawaii antitrust claim warrants dismissal.

### 2. The ADs Cannot Maintain an Antitrust Claim Under Hawaii Law Because They Did Not Give the State of Hawaii an Opportunity To Prosecute.

This Court acknowledged in *WH* that the State of Hawaii must be given an opportunity to prosecute an action under its laws before private plaintiffs may do so. *See* 2013 WL 2456612, at *9 n.1; *see also* Haw. Rev. Stat. § 480-13.3(a). However, because the Hawaii attorney general declined to prosecute the Wire Harness complaint, and plaintiffs there were given permission to proceed by the deputy attorney general, this Court did not dismiss this claim in *WH*. 2013 WL 2456612, at *9 n.1. Here, however, ADs have not alleged that they have similarly satisfied this requirement. Therefore, this Court should dismiss the ADs' Hawaii antitrust claim.

### 3. The IPPs' Hawaii Unjust Enrichment Claims Fail Because the IPPs Have an Adequate Remedy at Law.

The IPPs' unjust enrichment claims under Hawaii law should be dismissed because Hawaii only permits such claims where legal remedies are inadequate. *See, e.g.*, *Porter v. Hu*, 169 P.3d 994, 1006–07 (Haw. Ct. App. 2007). Where, as here, a statutory claim is available, Hawaii courts do not permit unjust enrichment claims. *Davis v. Four Seasons Hotel Ltd.*, No. 08-00525, 2011 WL 5025521, at *6 (D. Haw. Oct. 20, 2011) (affirming summary judgment against unjust enrichment claim because plaintiffs had adequate remedy in the form of a statutory claim). Because the IPPs' Hawaiian statutory claims are premised on the same factual predicates as their unjust enrichment claims, their unjust enrichment claims should be dismissed.

### 4. Hawaii's Statute of Limitation Bars the ADs' Antitrust, the EPs' Consumer Protection, and the IPPs' Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to Hawaii antitrust and consumer protection claims, Haw. Rev. Stat. § 480-24, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*. In order to toll the statute of limitations by pleading

fraudulent concealment, Hawaii requires that the IPPs' plead affirmative acts with particularity, *see Au v. Au*, 626 P.2d 173, 178 (Haw. 1981), which they have failed to do, *see* Part V, *supra*. Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Hawaii's statute of limitations.

### G.     Illinois

#### 1.     The ADs' Illinois Antitrust Claim Fails for Lack of Standing.

Illinois' antitrust harmonization statute mandates that "[w]hen the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State *shall* use the construction of the federal law by the federal courts as a guide in construing this Act."  740 Ill. Comp. Stat. Ann. § 10/11 (emphasis added); *accord Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 990 (Ill. 1990).  *AGC* thus applies to ADs' Illinois antitrust claim.  *See O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act.").  As explained in Part III, *supra*, the *AGC* factors do not favor standing here; thus, the ADs' Illinois antitrust claim should be dismissed.

#### 2.     The ADs Cannot Maintain an Antitrust Claim as a Class Action Under Illinois Law.

The ADs allege an antitrust claim on behalf of a putative class under the Illinois Antitrust Act ("IAA").  But, this claim should be dismissed because, as the Court recognized in *WH*, 2013 WL 2456612, at *21–22, the IAA specifically prohibits private indirect purchaser plaintiffs, like the ADs, from bringing IAA claims as class actions, and does so within the very statute that creates the antitrust right, *see* 740 Ill. Comp. Stat. Ann. § 10/7(2) (except for the state attorney general, "*no person shall be authorized to maintain a class action* in any court of this State for indirect purchasers asserting claims under th[e] IAA]" (emphasis added)); *see also Digital Music.*, 812 F. Supp. 2d at 415–16 (dismissing IAA claims).

3.      **The ADs' Illinois Unjust Enrichment Claim Fails for Two Reasons.**

First, "[f]or a cause of action based on a theory of unjust enrichment to exist [under Illinois law], there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1025 (2009) (citing *Lewis v. Lead Industries Ass'n, Inc.*, 793 N.E.2d 869, 877 (2003)).  Because the ADs allege no duty owed to them by defendants, their unjust enrichment claim requires dismissal.

Second, the ADs' unjust enrichment claim under Illinois law also fails because they received the benefit of their bargains: properly functioning OSS parts at the prices they agreed to pay.  *See La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977) ("A person is not entitled to compensation on the grounds of unjust enrichment if he receives . . . that which it was agreed between them the other should give in return."); Part IV.D., *supra*.

4.      **Illinois's Statute of Limitations Bars the ADs' Antitrust and Unjust Enrichment Claims.**

A four year statute of limitations applies to Illinois antitrust claims, 740 ILCS 10/7(2), which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Illinois requires that the ADs plead both affirmative acts and due diligence with particularity.  *See People v. Coleman*, 794 N.E. 2d 275, 293 (Ill. 2002) (citations omitted), which they have failed to do, *see* Part V, *supra*.  Thus, the ADs' claims for damages based on purchases prior to June 8, 2008, are barred by Illinois's statute of limitations.

38

### H.   Iowa

#### 1.   The IPPs' Iowa Antitrust Claims Fail for Lack of Standing.

The Iowa Supreme Court has held that *AGC* applies to determine standing under Iowa's antitrust law.  *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198–99 (Iowa 2007); *accord Compressors II*, 2013 WL 1431756, at *9 (recognizing that the Iowa Supreme Court has ruled that the *AGC* test is to be applied).  In *Southard*, the Iowa Supreme Court rejected plaintiffs' argument that Iowa has no limits on standing, finding that Iowa bars recovery for remote and derivative injuries.  734 N.W.2d at 197–98 ("[T]he Iowa legislature did not intend to allow every person tangentially affected by a violation of the statute to have a remedy in damages.").  As explained in Part III, *supra*, all the *AGC* factors weigh against standing here, and this Court should therefore dismiss the IPPs' Iowa antitrust claims.

#### 2.   The IPPs' Iowa Unjust Enrichment Claims Fail for Two Reasons.

First, under Iowa law, the IPPs must allege a causal relationship between the benefit conferred on defendants and the harm the IPPs allegedly sustained.  *See Southard v. Visa U.S.A., Inc.*, LACV 031729, 2004 WL 3030028, at *5 (Iowa Dist. Ct. Nov. 17, 2004), *aff'd*, 734 N.W.2d 192 (Iowa 2007) (dismissing consumers' unjust enrichment claims because their "damages are too remote and derivative"); *Commercial Fed. Bank v. Qwest Corp.*, No. 03-0634, 2004 WL 2296370, at *5 (Iowa Ct. App. Oct. 14, 2004) (unpublished table decision) (rejecting unjust enrichment claim by subcontractors against Qwest because of lack of direct relationship between them); *cf. Henning v. Sec. Bank*, 564 N.W.2d 398, 403–04 (Iowa 1997) (subcontractors not entitled to recover against homeowner under an unjust enrichment theory due to lack of contractual privity).  Because the IPPs do not and cannot allege such a causal relationship, *see* Part IV.C., *supra*, their Iowa unjust enrichment claims should be dismissed.

Second, the IPPs' Iowa unjust enrichment claims also fail because under Iowa law a plaintiff may not recover for unjust enrichment if it has received that for which it bargained.  *See Smith v. Stowell*, 125 N.W.2d 795, 800 (Iowa 1964) ("[A] person is not entitled to compensation on the ground of unjust enrichment if he received . . . that which it was agreed between them the other should give in return." (internal quotations omitted)), *overruled on other grounds by Lamp v. Am. Prosthetics, Inc.*, 379 N.W.2d 909, 910 (Iowa 1986); *see also Crandell v. Wall Lake View Auburn Bd. of Educ.*, No. 00-2013, 2002 WL 987665, at *1–2 (Iowa Ct. App. May 15, 2002). As explained in Part IV.D., *supra*, the IPPs received the benefit of their bargains:  properly functioning OSS parts at the prices they agreed to pay.  Therefore, this Court should dismiss the IPPs' Iowa unjust enrichment claim.

### 3. Iowa's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to Iowa antitrust claims, Iowa Code Ann. § 553.16(1), which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Iowa requires that the IPPs' plead both affirmative acts and due diligence with particularity, *see Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Iowa's statute of limitations.

### I. Kansas

### 1. The IPPs' Kansas Antitrust Claims Fail for Lack of Standing.

Numerous courts, including in this District, have held that Kansas follows federal law when interpreting its antitrust laws and, thus, that the *AGC* factors apply to Kansas antitrust claims.  *See, e.g., Compressors II*, 2013 WL 1431756, at *10–15 (applying *AGC* to dismiss

Kansas antitrust claims); *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943, 2011 WL

5008090, at *7 n.9 (D.N.J. Oct. 20, 2011) (indirect purchasers lacked standing to assert Kansas

antitrust claims because they are construed in accordance with federal antitrust principles); *Orr v.

Beamon*, 77 F. Supp. 2d 1208, 1211 (D. Kan. 1999) ("[S]tanding under the Kansas antitrust

statutes requires an antitrust injury similar to that required under the Sherman and Clayton

Acts."), *aff'd sub nom. Orr v. BHR, Inc.*, 4 Fed. Appx. 647 (10th Cir. 2001).  Because, as

explained in Part III, *supra*, the *AGC* factors all weigh against standing, this Court should

dismiss the IPPs' Kansas antitrust claims.

### 2.     The IPPs' Kansas Unjust Enrichment Claims Fail for Two Reasons.

First, a claim of unjust enrichment in Kansas requires that a plaintiff confer a direct

benefit upon a defendant.  *See Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269, 273 (10th Cir.

2008) (affirming dismissal of Kansas unjust enrichment claims because "nothing in Kansas law .

. . supports an indirect unjust enrichment claim"); *Haz-Mat Response, Inc. v. Certified Waste

Servs., Ltd.*, 910 P.2d 839, 847 (Kan. 1996) (under Kansas law, without privity, an unjust

enrichment claim can only be brought in very limited circumstances).  Federal courts, including

in this District, thus have consistently dismissed Kansas unjust enrichment claims by indirect

purchasers in antitrust cases.  *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25–26 (granting

motion to dismiss claims of "indirect" unjust enrichment based on the law of Kansas); *Potash*,

667 F. Supp. 2d at 948 (same).  Because the IPPs do not and cannot allege that they conferred

any direct benefit upon defendants, *see* Part IV.C., *supra*, their Kansas unjust enrichment claims

should be dismissed.

Second, the IPPs' Kansas unjust enrichment claims also should be dismissed because

there is no unjust enrichment where the defendant provided consideration for the benefit it

received.  *See, e.g.*, *Tradesmen Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191, 1205–06

(D. Kan. 2002) (dismissing unjust enrichment claim by sub-subcontractor against contractor because subcontractor did not allege that contractor did not pay for the benefits it received); *Senne & Co.*, 2007 WL 1175858, at *8 ("[T]he underlying premise of a claim for unjust enrichment is that the defendant received a benefit without having paid for it.").  Because the IPPs concede that defendants provided consideration (OSS parts) for the benefit they received (money), *see* Part IV.E., *supra*, the IPPs' Kansas unjust enrichment claims fail.

### 3. Kansas's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A three year statute of limitations applies to Kansas antitrust claims, Kan. Stat. Ann. § 60-512(2), which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Kansas requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 941 (Kan. 1980), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2009, are barred by Kansas's statute of limitations.

### J. Maine

#### 1. The IPPs' Maine Antitrust Claims Fail for Lack of Standing.

Maine and federal courts, including courts in this District, apply the *AGC* factors to Maine antitrust claims.  *See Knowles v. Visa U.S.A. Inc.*, No. CV-03-707, 2004 WL 2475284, at *8 (Me. Super. Ct. Oct. 20, 2004) (dismissing indirect purchaser claims for lack of standing: "the court has weighed the [*AGC*] factors and has concluded that notwithstanding Maine's enactment of an *Illinois Brick* repealer, the factors that militate against standing outweigh those in favor of standing"); *Compressors II*, 2013 WL 1431756, at *10–15 (applying *AGC* to dismiss indirect purchasers' Maine antitrust claims); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*

("*NMV II*"), 235 F.R.D. 127, 134 (D. Me. 2006) (noting that, in *Knowles*, Justice Warren "found

that Maine would follow the factors set forth in [*AGC*]"), *vacated by* 522 F.3d 6 (1st Cir. 2008).

Because, as explained in Part III, *supra*, the *AGC* factors all weigh against standing, this Court

should likewise dismiss the IPPs' Maine antitrust claims.

> ## 2. The IPPs' Maine Unjust Enrichment Claims Fail Because the IPPs Did Not Confer a Direct Benefit on Defendants.

The IPPs' Maine unjust enrichment claims should be dismissed because, as explained in

Part IV.C., *supra*, the IPPs do not and cannot allege "a benefit conferred upon the defendant *by*

*the plaintiff*," as required under Maine law. *Rivers v. Amato*, No. CV-00-131, 2001 WL

1736498, at *4 (Me. Super. Ct. June 22, 2001); *see also Glenwood Farms, Inc. v. Ivey*, 228

F.R.D. 47, 52 (D. Me. 2005) (denying leave to amend complaint because Maine unjust

enrichment law requires benefit be conferred on defendant by plaintiff, not a third party).

Federal courts, including in this District, have dismissed Maine unjust enrichment claims by

indirect purchasers on this basis. *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25–26

(granting motion to dismiss Maine unjust enrichment claim); *Aftermarket Filters*, 2010 WL

1416259, at *2–3 (same).

> ## 3. Maine's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A six year statute of limitations applies to Maine antitrust claims, 14 Me. Rev. Stat. Ann.

§ 752, which also applies to unjust enrichment claims relying on the same allegations, *see* Part

V, *supra*. In order to toll the statute of limitations by pleading fraudulent concealment, Maine

requires that the IPPs' plead affirmative acts with particularity, *see Harkness v. Fitzgerald*, 701

A.2d 370, 372 (Me. 1997), which they have failed to do, *see* Part V, *supra*. Thus, the IPPs'

claims for damages based on purchases prior to June 8, 2006, are barred by Maine's statute of

limitations.

K.      **Massachusetts**

1.      **The EPs Lack Standing To Bring an Antitrust Claim Under Massachusetts Law Because They Are Indirect Purchasers.**

As indirect purchasers, the EPs lack standing to assert their claim under the Massachusetts Antitrust Act.  As this Court recognized in *WH*, "the *Illinois Brick* approach is taken under the Massachusetts Antitrust Act."  *WH*, 2013 WL 2456612, at *29 (quoting *Ciardi v. F. Hoffmann La Roche, Ltd.*, 762 N.E.2d 303, 321 (Mass. 2002).  Thus, *Illinois Brick* applies here to bar the EPs' Massachusetts antitrust claim.

2.      **The EPs Fail To Allege a Sufficient Nexus with Massachusetts, Which Is Fatal to Their Antitrust Claims Under Massachusetts Law.**

Under Massachusetts antitrust law, a plaintiff must allege that the antitrust activities "occur[ed] and ha[d] their predominant impact primarily within the commonwealth."  *Ciardi v. Hoffmann-LaRoche, Ltd.*, No. 993244, 2000 WL 33162197, at *2–3 (Mass. Super. Ct. Sept. 29, 2000) (internal quotations omitted).  However, the EPs have not alleged that any defendant engaged in any antitrust activity within Massachusetts.  Rather, while they specifically allege the places of incorporation and principal places of business for defendants, none are alleged to be incorporated or do business in Massachusetts.  *See* EP CAC ¶¶ 64–72.  Moreover, the allegations related to conspiratorial conduct specify only that the acts occurred "in the United States," not Massachusetts, *see id.* ¶ 170, and the Massachusetts antitrust claim does not allege where any conduct occurred, *see id.* ¶ 179.  The EPs have therefore failed to state a claim under Massachusetts antitrust law because they have not alleged that the antitrust activities "occur[ed] and ha[d] their predominant impact primarily within the commonwealth."  *Ciardi*, 2000 WL 33162197, at *2–3 (internal quotations omitted).

### 3.    The IPPs' Massachusetts Unjust Enrichment Claims Fail for Three Reasons.

First, the IPPs' unjust enrichment claims under Massachusetts law should be dismissed because Massachusetts only permits unjust enrichments claims where the plaintiff has no legal remedy available.  *See Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (availability of Massachussetts negligence and Chaper 93A consumer protection claims precluded unjust enrichment claim).  Here, the IPPs allege statutory claims under the very same statute (Chapter 93A) that *precluded* a claim for unjust enrichment in *Fernandes*.  The IPPs' unjust enrichment claims should therefore be dismissed.

Second, the IPPs may not recover for unjust enrichment under Massachusetts law because they have received the benefit of their bargains—in this case, properly functioning OSS parts at the price they agreed to pay.  *See Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964, 979 (Mass. App. Ct. 1998); *Ferola v. Allstate Life Ins. Co.,* No 050996, 2007 WL 2705534, at *14 (Mass. Super. Ct. Aug. 30, 2007); Part IV.D., *supra*.

Third, as explained in Part IV.E., *supra*, there is no unjust enrichment where, as here, defendants provided consideration (OSS parts) for the benefit they received (money).  *See*, *e.g.*, *Ferola*, 2007 WL 2705534, at *14.

### 4.    Massachusetts's Statute of Limitations Bars the EPs' Antitrust Claim and IPPs' Unjust Enrichment Claim in Whole or in Part.

A four year statute of limitations applies to Massachusetts antitrust claims, Mass. Gen. Laws Ann. Ch. 93 § 13, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Massachusetts requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Puritan Med. Ctr., Inc. v. Cashman*, 596 N.E.2d 1004, 1010 (Mass. 1992); *Frank Cooke, Inc. v. Hurwitz*, 406 N.E.2d 678, 684 (Mass. App. Ct. 1980), which they have

failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Massachusetts's statute of limitations.

### L.    Michigan

#### 1.    The IPPs' Michigan Antitrust Claims Fail for Lack of Standing.

Michigan's antitrust law requires courts to "give due deference to interpretations given by the federal courts to comparable antitrust statutes."  Mich. Comp. Laws Ann. § 445.784(2); *see also Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. Podiatric Surgery, Inc.*, 185 F.3d 606, 619 n.4 (6th Cir. 1999) ("Because Michigan antitrust law follows federal precedents, our reasoning regarding the federal antitrust claims applies equally to the state antitrust claims."); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 331 n.4 (E.D. Mich. 2001) ("Michigan courts have observed that federal court interpretation of the Sherman Antitrust Act is persuasive authority as to the meaning of the Michigan Antitrust Reform Act."). Consistent with that directive, Michigan and federal courts, including in this District, have held that the *AGC* factors apply to Michigan antitrust law claims.  *See, e.g.*, *Stark v. Visa U.S.A. Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *2–4 (Mich. Cir. Ct. July 23, 2004) (applying *AGC* to dismiss claims, and noting that "courts in other states that have repealed the *Illinois Brick* rule have continued to apply antitrust standing requirements to dismiss the claims of plaintiffs who assert only derivative or remote injuries"); *Compressors II*, 2013 WL 1431756, at *10–15 (applying *AGC* factors to dismiss Michigan antitrust claim).  Because the *AGC* factors all weigh against standing here, *see* Part III, *supra*, the Court should dismiss the IPPs' Michigan antitrust claims.

#### 2.    The IPPs' Michigan Unjust Enrichment Claims Fail for Two Reasons.

First, to maintain a claim for unjust enrichment under Michigan law, "the defendant must have received a benefit directly from the plaintiff."  *Munson v. Countrywide Home Loans, Inc.*,

No. 08-13244, 2008 WL 5381866, at *9 (E.D. Mich. Dec. 17, 2008).  Because the IPPs do not

and cannot allege that they conferred a direct benefit on defendants, *see* Part IV.C., *supra*, their

Michigan unjust enrichment claims warrant dismissal as Michigan and federal courts, including

in this District, have recognized.  *See Compressors II*, 2013 WL 1431756, at *25–26 (dismissing

Michigan unjust enrichment claim because indirect purchaser plaintiffs could not allege that they

directly conferred a benefit on defendants); *Aftermarket Filters*, 2010 WL 1416259, at *2–3

(same); *Potash*, 667 F. Supp. 2d at 948–49 (same); *A & M Supply Co. v. Microsoft Corp.*, No.

274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (per curiam) (same); *Niemi v.

Am. Axle Mfg. & Holding. Inc*., No. 269155, 2007 WL 29383, at *6 (Mich. Ct. App. Jan. 4,

2007) (per curiam) (dismissing plaintiffs' claim because any benefit was conveyed by plaintiff

on an intermediary, not directly on defendant).

Second, the IPPs' Michigan unjust enrichment claims also fail because, as explained in

Part IV.D., *supra*, the IPPs may not recover for unjust enrichment under Michigan law if they

have received the benefit of their bargains.  *See Isom v. NE Lots LLC*, No. 288378, 2010 WL

143470, at *6 (Mich. Ct. App. Jan. 14, 2010) (per curiam) (holding unjust enrichment claim

failed when party received the benefit of its bargain; plaintiff had bargained for and received the

"right" to proceeds, even if there was a chance there would be none).  As in *Isom*, the IPPs here

received that for which they voluntarily bargained:  properly functioning OSS parts at the prices

they agreed to pay.  Therefore, this Court should dismiss the IPPs' Michigan unjust enrichment

claims.

### 3. Michigan's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to Michigan antitrust claims, Mich. Comp. Laws

Ann. § 445.781, which also applies to unjust enrichment claims relying on the same allegations,

*see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Michigan requires that the IPPs plead both affirmative acts and due diligence with particularity, *see McNaughton v. Rockford State Bank*, 256 N.W. 84, 86 (Mich. 1933); *Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1997), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Michigan's statute of limitations.

## M.   Minnesota

### 1.   The IPPs' Minnesota Unjust Enrichment Claims Fail for Three Reasons.

First, the IPPs' unjust enrichment claims under Minnesota law should be dismissed because "[i]t is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law."  *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992) ("Relief under the theory of unjust enrichment is not available where there is an adequate legal remedy or where statutory standards for recovery are set by the legislature.").  The IPPs do not plead the absence of a legal remedy; indeed, as discussed above, they seek legal remedies under the antitrust and consumer protection laws of dozens of states.

Second, dismissal of the IPPs' Minnesota unjust enrichment claims is also warranted because the IPPs must allege that they conferred a direct benefit on defendants., *see Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001); which they cannot and do not, *see* Part IV.C., *supra*.

Third, as explained in Part IV.D., *supra*, the IPPs may not recover for unjust enrichment under Minnesota law where, as here, they have received the benefit of their bargains.  *See Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011) (unjust enrichment claim fails where plaintiff receives benefit to which she was entitled under agreement).

48

### 2. Minnesota's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to Minnesota antitrust claims, Minn. Stat. Ann. § 325D.64, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*. In order to toll the statute of limitations by pleading fraudulent concealment, Minnesota requires that the IPPs plead both affirmative acts and due diligence with particularity, *see State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321, 325 (Minn. Ct. App. 1997), which they have failed to do, *see* Part V, *supra*. Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Minnesota's statute of limitations.

### N. Mississippi

#### 1. The IPPs' Mississippi Antitrust Claims Fail for Lack of Standing.

Mississippi's Supreme Court has held that federal law applies to determine standing under Mississippi antitrust law. *See Owens Corning v. R.J. Reynolds Tobacco Co*., 868 So. 2d 331, 344 (Miss. 2004) (en banc) (applying federal law to find claims too remote to confer antitrust standing); *see also Potash*, 667 F. Supp. 2d at 945 (relying on *Owens Corning* to dismiss antitrust claim for lack of standing). Because, as discussed in Part III, *supra*, the *AGC* factors do not favor standing here, this Court should dismiss the IPPs' Mississippi antitrust claims.

#### 2. The IPPs' Mississippi Antitrust Claims Fail Because IPPs Do Not Allege Conduct by Defendants that Took Place Wholly in Mississippi.

Mississippi's antitrust statute requires plaintiffs to allege "at least some conduct by [defendant] which was performed *wholly* intrastate." *In re Microsoft Corp. Antitrust Litig.*, Nos. MDL 1332, Civ. JFM 03-741 through 03-748, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) (emphasis added); *see also California v. Infineon Techs. AG.*, 531 F. Supp. 2d 1124, 1158–59 (N.D. Cal. 2007) (dismissing plaintiffs' claims under the Mississippi Antitrust Act

because (i) the Act "require[s] allegations of at least some activity or conduct occurring in intrastate commerce or trade"; and (ii) plaintiffs' complaint was "wholly devoid of any allegations relating to intrastate trade or commerce," and thus "fails to properly allege a claim under the Mississippi Antitrust Act"). In *Microsoft*, the court dismissed Mississippi antitrust claims because the plaintiffs failed to allege conduct that was wholly intrastate. 2003 WL 22070561, at *2. This Court should reach the same result here because the IPPs' boilerplate allegations and "conclusory averment[s]," fall short of establishing *wholly* intrastate conduct. *Id*. As discussed above, the IPPs have only alleged conduct that occurred "in the United States," and have not specifically alleged *any* conduct that occurred in Mississippi, let alone conduct that occurred *wholly* within Mississippi. While the ADs (but not the EPs) allege they bought cars and OSS parts in Mississippi (AD CCC ¶¶ 23, 87, 97, 99), their claim still fails because these allegations say nothing about where *defendants'* conduct occurred. *See Microsoft*, 2003 WL 22070561, at *2. Defendants' respectfully submit that the IPPs' claims are not saved by *In re Graphics Processing Units Antitrust Litigation* ("*GPU II*"), 540 F. Supp. 2d 1085, 1099 (N.D. Cal. 2007), or *Standard Oil Co. of Kentucky. v. State ex rel. Attorney General*, 65 So. 468, 469–70 (Miss. 1914), *overruled in part on other grounds by Mladinich v. Kohn*, 164 So. 2d 785 (Miss. 1964), to which this Court cited in finding the intrastate nexus requirement satisfied in *WH*, 2013 WL 2456612, at *20. Unlike the IPPs here, the *GPU II* and *Standard Oil* plaintiffs, respectively, met the standard by pleading that defendants "promoted and sold GPUs and graphics cards in [Mississippi]," *GPU II*, 540 F. Supp. 2d at 1099, and "engaged in the sale and distribution of petroleum products in [Mississippi]," 65 So. at 469–70. The IPPs' failure to similarly plead a sufficient Mississippi nexus requires dismissal of their Mississippi antitrust claims.

### 3.    The IPPs' Mississippi Unjust Enrichment Claims Fail for Two Reasons.

First, in 2012, Mississippi's highest court ruled that unjust enrichment in Mississippi means "[m]oney paid to another by a *mistake* of fact."   *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012) (en banc); *see also Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1180 (Miss. 2004) ("mistake" is the "ground on which [unjust enrichment] recovery is allowed" (internal quotations omitted)).   Because the IPPs do not allege any facts that plausibly suggest that they have mistakenly paid defendants, the Court should dismiss their Mississippi unjust enrichment claim.

Second, the IPPs' Mississippi unjust enrichment claims also should be dismissed because, as explained in Part IV.D., *supra*, the IPPs have received the benefit of their bargains: properly functioning OSS parts at the price they agreed to pay.  *See Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92–93 (Miss. 1992) ("The mere fact that a third person . . . benefits from an arrangement between two other persons . . . does not make such third person liable in . . . unjust enrichment . . . .").

### 4.    Mississippi's Statute of Limitations Bars IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A three year statute of limitations applies to Mississippi antitrust claims, Miss. Code Ann. § 15-1-49, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Mississippi requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Spann v. Diaz*, 987 So. 2d 443, 449 (Miss. 2008); *Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 84 (Miss. 2003), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2009, are barred by Mississippi's statute of limitations.

O.    **Missouri**

1.    **The IPPs' Missouri Unjust Enrichment Claims Fail For Two Reasons.**

First, the IPPs may not recover for unjust enrichment under Missouri law because they received the benefit of their bargains.  *See Howard v. Turnbull*, 316 S.W.3d 431, 438 (Mo. Ct. App. 2010) (because plaintiff "received precisely what he bargained for" from a third party and "any benefit was conferred voluntarily, deliberately, and without complaint," his claim for unjust enrichment failed (internal quotations omitted)); Part IV.D., *supra*.

Second, as explained in Part IV.E., *supra*, there is no unjust enrichment where defendants provided consideration (OSS parts) for the benefit they received (money).  *See*, *e.g.*, *Cnty. Asphalt Paving, Co. v. Mosley Constr., Inc*., 239 S.W.3d 704, 710 (Mo. Ct. App. 2007) (no unjust enrichment where defendant provided third party the consideration due under their agreement even if defendant retained a benefit from plaintiff without further payment).

2.    **Missouri's Statute of Limitations Bars the EPs' Consumer Protection and the IPPs' Unjust Enrichment Claims in Whole or in Part.**

A five year statute of limitations applies to Missouri antitrust claims, Mo. Rev. Stat. § 516.120, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Missouri requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Batek v. Curators of Univ. of Mo.*, 920 SW 2d 895, 900 (Mo. 1996) (en banc), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2007, are barred by Missouri's statute of limitations.

P.    **Montana**

1.    **The EPs Cannot Maintain Their Consumer Protection Claims as a Class Action Under Montana Law.**

In *WH*, this Court rejected the argument that Montana law barred plaintiffs' consumer protection class action claims, ostensibly because defendants there failed to "provide any analysis or support post *Shady Grove* to support their position."   2013 WL 2456612, at \*30.  In *Shady Grove Orthopedic Associates v. Allstate Insurance*, 559 U.S. 393 (2010), a five-member majority of the Supreme Court (including Justice Stevens) held that New York Civil Practice Law section 901(b), "which precludes a suit to recover a 'penalty' from proceeding as a class action," did not apply to New York state-law claims brought in federal court.  *Id.* at 397 (citation omitted).  However, Justice Stevens' controlling concurrence[9] made clear that New York's law "is a procedural rule that is not part of New York's substantive law" and therefore, according to long-held *Erie* principles, did not apply in federal court.  *Id.* at 416.  Justice Stevens' concurrence made clear that federal courts should still apply a state law class action bar that is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right."  *Id.* at 423.  As further clarified by a court in this district, "[a]pplying Justice Stevens' approach, several courts have distinguished [the New York law at issue in *Shady Grove*] and have concluded that statutory restrictions on class actions which appear in the very statutes that define the substantive rights at issue survive *Shady Grove* and should continue to be enforced."  *Packaged Ice*, 779 F. Supp. 2d at 661 n.4.

Montana's consumer class action law bars the EPs from maintaining their claims.  The EPs bring a claim under "the Montana Unfair Trade Practices and Consumer Protection Act of

---

[9] *See, e.g.*, *Packaged Ice*, 779 F. Supp. 2d at 660 ("Courts interpreting the *Shady Grove* decision, and searching for guidance on this issue, have concluded that Justice Stevens' concurrence is the controlling opinion by which interpreting courts are bound.").

1970, Mont. Code Ann., §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*" EP CAC ¶ 207.  In

that statute, Montana has specifically barred any consumer protection claim from proceeding as a

class action.  *See* Mont. Code Ann. § 30-14-133(1) ("A consumer who suffers any ascertainable

loss of money or property . . . as a result of the use or employment by another person of a

method, act, or practice declared unlawful by 30-14-103 may bring an individual *but not a class*

*action* . . . ." (emphasis added)).  Because Montana's prohibitions on consumer protection law

class actions "appear in the very statutes that define the substantive rights at issue" they "survive

*Shady Grove* and should continue to be enforced."  *Packaged Ice*, 779 F. Supp. 2d at 661 n.4.

Therefore, the EPs' Montana consumer protection class action claim should be dismissed.

### 2.  The EPs Fail To Allege a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce and Thus Cannot State a Consumer Protection Claim Under Montana Law.

To state a claim under the consumer protection laws of Montana, the EPs must allege a

specific nexus between defendants' conduct and intrastate commerce.  *See DRAM I*, 516 F. Supp.

2d at 1104.  In *DRAM I*, the court considered and dismissed the plaintiffs' claims under

Montana's consumer protection statute, in part, because the plaintiffs failed to allege "any

conduct or activity taking place within [Montana] that sets forth a basis for connecting individual

claims with representative claims under . . . Montana . . . statutes."  *Id.*  While recognizing the

authority from *DRAM I*, this Court did not dismiss the claims in *WH* because plaintiffs there had

alleged they "purchased new vehicles containing [wire harnesses] themselves from OEMs . . . in

each state having laws permitting recovery of damages by indirect purchasers" and that the

"challenged conduct was 'intentionally directed at the market for [wire harnesses] in all states

allowing indirect purchasers to collect damages."  2013 WL 2456612, at *29 (ellipsis in original)

(internal quotations omitted).  But no similar allegation appears in the EPs' complaint here.

Instead, the EPs merely allege that the conduct occurred "in the United States."  *See, e.g.*, EP

CAC ¶ 5.  Moreover, although one plaintiff is allegedly from Montana, there is no allegation that she purchased a vehicle or OSS in Montana.  *See id.* ¶ 41 ("Plaintiff . . . is a Montana resident who purchased [OSS] indirectly from one or more Defendants.").  Therefore, the EPs' Montana consumer protection claim should be dismissed because they have failed to allege "any conduct or activity taking place within [Montana] that sets forth a basis for connecting individual claims with representative claims under . . . Montana . . . statutes."  *Dram I*, 516 F. Supp. 2d at 1104.

### 3. Montana's Statute of Limitations Bars the EPs' Consumer Protection and Unjust Enrichment Claim in Whole or in Part.

A two year statute of limitations applies to Montana antitrust claims, Mont. Code Ann. § 27-2-11, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Montana requires that the EPs plead both affirmative acts and due diligence with particularity, *see Rucinsky v. Hentchel*, 881 P.2d 616, 618 (Mont. 1994); *see also* Mont. Code Ann. § 27-2-102(3), which they have failed to do, *see* Part V, *supra*.  The EPs' failure to allege due diligence is all the more obvious because they allege that Tokai Rika was raided months *before* Montana's statute of limitations would have run.  EP CAC ¶ 110.  Thus, the EPs' claims for damages based on purchases prior to June 8, 2010, are barred by Montana's statute of limitations.

### Q. Nebraska

### 1. The IPPs' Nebraska Antitrust Claims Fail for Lack of Standing.

Nebraska's antitrust law mandates that when its provisions are "the same as or similar to the language of a federal antitrust law," courts, in construing such provisions, "shall follow the construction given to the federal law by the federal courts."  Neb. Rev. Stat. Ann. § 59-829.  Thus, Nebraska and federal courts, including courts in this District, apply *AGC* to determine whether plaintiffs have antitrust standing under Nebraska law.  *See, e.g.*, *Kanne v. Visa U.S.A.*

*Inc.*, 723 N.W.2d 293, 297–301 (Neb. 2006) (applying *AGC* to dismiss Nebraska antitrust claims); *Compressors II*, 2013 WL 1431756, at *10–15 (same).  Because, as explained in Part III, *supra*, all *AGC* factors weigh against standing, this Court should dismiss the IPPs' Nebraska antitrust claims.

### 2.  The IPPs' Nebraska Unjust Enrichment Claims Fail Because the IPPs Received the Benefit of Their Bargains.

The IPPs' Nebraska unjust enrichment claims warrant dismissal because, as explained in Part IV.D., *supra*, there can be no unjust enrichment where, as here, the IPPs received the benefit of their bargains: properly functioning OSS parts at the prices they agreed to pay.  *See Washa v. Miller*, 546 N.W.2d 813, 819 (Neb. 1996).

### 3.  Nebraska's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to Nebraska antitrust claims, Neb. Rev. Stat. Ann. § 59-1612, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Nebraska requires that the IPPs' plead affirmative acts and due diligence with particularity, *see Upah v. Ancona Bros. Co.*, 521 N.W.2d 895, 902 (Neb. 1994), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Nebraska's statute of limitations.

### R.  Nevada

### 1.  IPPs' Nevada Antitrust Claims Fail for Lack of Standing.

Nevada's harmonization statute expressly mandates that its antitrust law "shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." Nev. Rev. Stat. Ann. § 598A.050; *see also Boulware v. Nevada*, 960 F.2d 793, 800–01 (9th Cir. 1992) (Nevada Unfair Trade Practices Act "tracks . . . the Sherman Act" and "adopts by

reference the case law applicable to the federal antitrust laws"). Thus, *AGC* applies to Nevada antitrust claims. *See, e.g.*, *Magnesium Oxide*, 2011 WL 5008090, at *7 n.9 (dismissing indirect purchaser Nevada antitrust claims); *DRAM II*, 536 F. Supp. 2d at 1134–42 (same). Because all the *AGC* factors weigh against standing here, *see* Part III, *supra*, the IPPs' Nevada antitrust claims should be dismissed.

>**2.      The IPPs' Nevada Antitrust Claims Fail Because the IPPs Do Not Allege Conduct by Defendants that Took Place in Nevada.**

Under Nevada antitrust law, the IPPs must allege that at least some of the unlawful conduct at issue (here, the alleged OSS price fixing conspiracy) took place in Nevada. *See* Nev. Rev. Stat. Ann. § 598A.060 ("[I]t is unlawful to conduct any part of [a conspiracy in restraint of trade] *in this State*." (emphasis added)). The IPPs make no such allegations here. The EPs do not even allege that they purchased a vehicle in Nevada. The ADs' allegations that they bought vehicles and OSS parts in Nevada, AD CCC ¶ 63, cannot save their claims because they say nothing about whether *defendants'* sold parts in Nevada, which is the relevant question under the statute, *see* Nev. Rev. Stat. Ann. § 598A.060. Although this Court, in reliance on *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD II*"), 599 F. Supp. 2d 1179, 1189 (N.D. Cal. 2009), found similar allegations sufficient in *WH*, 2013 WL 2456612, at *21, the cases relied upon by *LCD II* all included allegations of sales of the price-fixed product *in Nevada by the defendant* or its co-conspirators. This Court should therefore dismiss the IPPs' Nevada antitrust claims.

>**3.      The IPPs' Nevada Unjust Enrichment Claims Fail Because Defendants Provided Consideration.**

The IPPs' Nevada unjust enrichment claims should be dismissed because there is no unjust enrichment where defendants provided consideration (OSS parts) for the benefit they received (money). *See, e.g.*, *Bowyer v. Davidson*, 584 P.2d 686, 687 (Nev. 1978) (per curiam) (no unjust enrichment where defendant provided third party consideration due under their

agreement even if defendant retained a benefit from plaintiff without making further payment);
Part IV.E., *supra*.

### 4.   Nevada's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims In Whole or In Part.

A four year statute of limitations applies to Nevada antitrust claims, Nev. Rev. Stat. Ann.
§ 598A.220, which also applies to unjust enrichment claims relying on the same allegations, *see*
Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment,
Nevada requires that the IPPs plead both affirmative acts and due diligence with particularity,
*see Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995); *Pooler v. R.J.
Reynolds Tobacco Co.*, No. CV00-02674, 2001 WL 403167, at *2 (Nev. Dist. Ct. Apr. 4, 2001),
which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on
purchases prior to June 8, 2008, are barred by Nevada's statute of limitations.

### S.   New Hampshire

### 1.   The IPPs' New Hampshire Antitrust Claims Fail for Lack of Standing.

New Hampshire's harmonization provision authorizes courts to interpret its antitrust law
in accordance with federal law.  *See* N.H. Rev. Stat. Ann. § 356:14 ("In any action or
prosecution under this chapter, the courts may be guided by interpretations of the United States'
antitrust laws.").  Consistent with that directive, New Hampshire's Supreme Court has held that
New Hampshire's pre-amendment antitrust law "should be construed consistent with the *Illinois
Brick* rule," *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 839–40 (N.H. 2002) (affirming
dismissal), and a court in this District also has applied *AGC* to dismiss New Hampshire antitrust
claims by indirect purchasers, *Compressors II*, 2013 WL 1431756, at *10–15.  As the *AGC*
factors do not favor the IPPs' standing here, *see* Part III, *supra*, their New Hampshire antitrust
claims warrant dismissal.

2.      **The IPPs Cannot Assert Retroactive Antitrust Claims Under the
Antitrust Laws of New Hampshire.**

As this Court held in *WH*, the IPPs may not seek damages for alleged conduct that pre-

dates the enactment of the New Hampshire antitrust statutes because New Hampshire does not

allow statutes to be applied retroactively.  *See* 2013 WL 2456612, at \*19; *see also In re Silk*, 937

A.2d 900, 904 (N.H. 2007) ("We have long held that statutes are presumptively intended to

operate prospectively.").  New Hampshire enacted its indirect purchaser statute effective January

1, 2008.  *See* N.H. Rev. Stat. Ann. § 356:11; *WH*, 2013 WL 2456612, at \*19.  Thus, the IPPs

cannot seek recovery under New Hampshire's antitrust statue for any conduct that occurred prior

to January 1, 2008.

3.      **The IPPs' New Hampshire Unjust Enrichment Claims Fail for Two
Reasons.**

First, New Hampshire courts have held that a plaintiff may not recover for unjust

enrichment if she has received that for which she bargained.  *See Clapp v. Goffstown Sch. Dist.*,

977 A.2d 1021, 1025–26 (N.H. 2009).  As explained in Part IV.D., *supra*, the IPPs have received

the benefit of their bargains:  properly functioning OSS parts at the prices they agreed to pay.

Second, the IPPs' claims also fail because New Hampshire does not permit unjust

enrichment claims where Defendants provided consideration (OSS parts) for the benefit they

received (money).  *See*, *e.g.*, *Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754, 766–67 (N.H.

2013); Part IV.E., *supra*.

4.      **New Hampshire's Statute of Limitations Bars the IPPs' Antitrust and
Unjust Enrichment Claims in Whole or in Part.**

A four year statute of limitations applies to New Hampshire antitrust claims, N.H. Rev.

Stat. Ann. § 356:12, which also applies to unjust enrichment claims relying on the same

allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent

concealment, New Hampshire requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Portsmouth Country Club v. Town of Greenland,* 883 A.2d 298, 304-05 (N.H. 2005), which they have failed to do, *see* Part V, *supra.*  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by New Hampshire's statute of limitations.

> **T.     New Mexico**

> > **1.     IPPs' New Mexico Antitrust Claims Fail for Lack of Standing.**

New Mexico's harmonization provision mandates that its state antitrust act (the "NMAA") "shall be construed in harmony with judicial interpretations of the federal antitrust laws."  N.M. Stat. Ann. § 57-1-15; *accord Romero v. Philip Morris Inc.*, 242 P.3d 280, 291 (N.M. 2010).  Thus, as New Mexico and federal courts, including in this District, have recognized, *AGC* applies to determine standing under the NMAA.  *See, e.g.*, *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 777–81 (N.M. Ct. App. 2012) (applying *AGC* to dismiss NMAA claims); *Compressors II*, 2013 WL 1431756, at *10–15 (same).  Because, as explained in Part III, *supra*, the *AGC* factors do not favor standing here, the IPPs' NMAA claims warrant dismissal.

> > **2.     The IPPs' New Mexico Consumer Protection Claims Fail Because IPPs Do Not Allege "Unconscionable" Conduct.**

The IPPs plead no *facts* to establish that defendants engaged in "unconscionable" conduct, as defined and required by New Mexico's consumer protection law.  *See* N.M. Stat. Ann. § 57-12-2(E) (unconscionable conduct constitutes acts or practices that "take[] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree" or "result[] in a gross disparity between the value received by a person and the price paid").  Pleading unconscionability under New Mexico law "requires something more than merely

alleging that the price of a product was unfairly high." *GPU I*, 527 F. Supp. 2d at 1029. While the IPPs parrot the language of the statute, AD CCC ¶ 285; EP CAC ¶ 208, they have not alleged any *facts* from which the Court could plausibly conclude that they were subjected to inequitable bargaining power compared to defendants, or that there existed a "gross disparity" between the prices the IPPs paid for vehicles or OSS parts and the value they received. *See Twombly*, 550 U.S. at 570. For example, neither complaint alleges *anything* about the specific prices that the IPPs paid for vehicles or OSS parts, or the amount of the alleged overcharges. This failure distinguishes the IPPs' complaints from the cases on which this Court relied in finding New Mexico's pleading standards satisfied in *WH*, 2013 WL 2456612, at *27. In those cases, the plaintiffs quantified in some way the alleged "gross disparity." *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 552–53 (M.D. Pa. 2009) (detailing three series of price increases and the percentage by which each defendant increased price); *NMV I*, 350 F. Supp. 2d at 196 (prices up to 30% higher). The IPPs' "formulaic recitation" of the elements of New Mexico's consumer protection law is not enough to survive dismissal, and neither *Chocolate* nor *NMV* suggest otherwise.

Any effort by the IPPs to argue that their New Mexico claims survive because they have pleaded unequal bargaining power likewise fails because the IPPs admit that they purchased vehicles or OSS parts exclusively from parties *other than* Defendants and had *no* contact with defendants. AD CCC ¶¶ 136, 137; EP CAC ¶¶ 19–63, 81. Thus, despite the IPPs' attempt to assert otherwise, they cannot plausibly base their claims on unequal bargaining power between themselves and defendants (since they had no contact). The IPPs' legally deficient New Mexico consumer protection claims should therefore be dismissed.

3.     **The IPPs' New Mexico Unjust Enrichment Claims Fail Because Plaintiffs Received the Benefit of Their Bargains.**

New Mexico courts have held that a plaintiff may not recover for unjust enrichment if it has received that for which it bargained.  *See Arena Res., Inc. v. OBO, Inc.*, 238 P.3d 357, 361 (N.M. Ct. App. 2010).  As explained in Part IV.D., *supra*, the IPPs have received the benefit of their bargains—in this case, properly functioning OSS parts at the price they agreed to pay. Therefore, this Court should dismiss the IPPs' New Mexico unjust enrichment claim.

4.     **New Mexico's Statute of Limitations Bars the IPPs Antitrust, Consumer Protection, and Unjust Enrichment Claims in Whole or in Part.**

A four year statute of limitations applies to New Mexico antitrust consumer protection claims, N.M. Stat. Ann. § 57-1-12, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, New Mexico requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 858 P.2d 66, 74 (N.M. 1993), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by New Mexico's statute of limitations.

U.     **New York**

1.     **The IPPs' New York Antitrust Claims Fail for Lack of Standing.**

New York and federal courts, including courts in this District, apply the *AGC* factors to New York antitrust claims to determine standing.  *See Ho v. Visa U.S.A. Inc.*, No. 112316/00, 2004 WL 1118534, at *2–3 (Sup. Ct., N.Y. Cnty. Apr. 21, 2004) (applying *AGC* to dismiss New York antitrust claim), *aff'd*, 793 N.Y.S.2d 8 (App. Div. 2005); *Compressors II*, 2013 WL

1431756, at *10–15 (same).  Because, as explained in Part III, *supra*, all *AGC* factors weigh

against standing here, this Court should dismiss the IPPs' New York antitrust claims.

### 2. The EPs' New York Antitrust Claim Fails Because They Do Not Allege a Sufficient Impact on Intrastate Commerce.

When considering New York antitrust claims, New York courts have held that "[w]here

the conduct complained of principally affects interstate commerce, with little or no impact on

local or intrastate commerce, it is clear that federal antitrust laws operate to preempt the field."

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ. 5889(DAB), 2005 WL 323750, at *4

(S.D.N.Y. Feb. 9, 2005).  As discussed above, the EPs have specifically complained of conduct

that "principally affects interstate commerce," and their New York antitrust claim should

therefore be dismissed.  *Id.*

### 3. The EPs' New York Consumer Protection Claim Fails Because Their Injuries Are Too Remote.

To state a claim under the consumer protection laws of New York, a plaintiff must allege

a specific nexus between a defendant's alleged conduct and intrastate commerce.  *See Goshen v.*

*Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002).  The court in *Goshen* held that the

language of the statute "unambiguously evinces a legislative intent to address commercial

misconduct occurring within New York," and thus, to be a prohibited act under the statute, "the

transaction in which the consumer is deceived must occur in New York."  *Id.*  Again, while three

EPs allegedly reside in New York, no EP alleges that she or he purchased vehicles or OSS parts

in New York.  EP CAC ¶¶ 46–48.  Therefore, the EPs' consumer protection claim under New

York law should be dismissed.

4.    **The IPPs' New York Consumer Protection Claims Fail Because IPPs Have Not Alleged a Deceptive Act Directed Towards Consumers.**

IPPs' New York consumer protection claims also fail because it confers a private right of action only on a "person who has been injured by reason of" a deceptive act or practice. N.Y. Gen. Bus. Law § 349(h). Thus, as New York's highest court has held, the IPPs must allege "both a deceptive act or practice *directed toward consumers* and that such act or practice resulted in actual injury to [them]." *BC/BS of N.J.*, 818 N.E.2d at 1143 (emphasis added); *see also WH*, 2013 WL 2456612, at *28. New York courts thus consistently dismiss consumer protection claims where, as here, indirect purchasers allege they overpaid due to an antitrust violation but do not allege any misrepresentations directed *at them*. *See, e.g.*, *Daicel*, 840 N.Y.S.2d at 12; *Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d 496, 498 (App. Div. 2006) (no viable § 349 claim where misrepresentation not directed at consumers). *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (App. Div. 2004), on which this Court relied in allowing the EPs' consumer protections claims to proceed in *WH*, 2013 WL 2456612, at *28, does not say otherwise. First, *Cox* is an *intermediate* level decision that predates *BC/BS of N.J.*, as well as *Daicel* and *Paltre*, both antitrust cases. Second, the IPPs' admission that they had no direct contact with defendants, nor any means by which to obtain information from defendants, is wholly inconsistent with New York's requirement that the IPPs allege a misrepresentation directed *at them* to state a viable consumer protection claim. AD CCC ¶¶ 136, 137; EP CAC ¶¶ 19–63, 81. The IPPs' New York consumer protection claims should therefore be dismissed for failure to allege a deceptive act directed toward consumers.

5.    **The EPs' New York Consumer Protection Claim Fails Because They Do Not Allege that the Deceptive Transaction Occurred in New York.**

New York's consumer protection statute "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York" and, to be a prohibited act under

the statute, "the transaction in which the consumer is deceived must occur in New York."

*Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002); *see also Kaufman v. Sirius*

*XM Radio, Inc.*, 474 F. App'x 5, 8-9, n.1 (2d Cir. 2012) (applying *Goshen*'s requirement that

plaintiffs allege that "that they were deceived in New York" and dismissing claims of non-New

York plaintiffs in reliance not on "the non-New York plaintiffs' residency but on the lack of any

plausible claim that they engaged in a transaction with [defendant] Sirius within New York").

The EPs make no such allegations; they do not even allege where they made their allegedly

price-fixed purchases.  EP CAC ¶¶ 46–48, 209.  The EPs' New York consumer protection claim

should thus be dismissed.

### 6.  The IPPs' New York Unjust Enrichment Claims Fail for Two Reasons.

<u>First</u>, under New York law, unjust enrichment only exists where the plaintiff either

engaged in an "actual, substantive relationship" with the defendant *or* conferred a "direct"

benefit upon it.  *See Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475, 2009 WL 890054,

at *6 (S.D.N.Y. Mar. 30, 2009) (dismissing unjust enrichment claim because plaintiff lacked

"direct dealings, or an actual, substantive relationship" with defendant); *Kaye v. Grossman*, 202

F.3d 611, 616 (2d Cir. 2000) (rejecting unjust enrichment claim by lender against borrower's

wife because lender "[did] not establish the specific and direct benefit necessary to support an

unjust enrichment claim" against the wife, a third party); *Brenner v. Brenner*, 821 F. Supp. 2d

533, 540–41 (E.D.N.Y. 2011) (dismissing unjust enrichment claim because defendant did not

directly benefit from plaintiffs having paid off a loan made to defendant's son's company).  The

attenuated relationship between a manufacturer and a purchaser of a complex product that

contains many parts precludes unjust enrichment claims against the manufacturer of one of those

parts.  *See, e.g.*, *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) ("the connection

between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support" an unjust enrichment claim); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2013 WL 1285338, at *61 (S.D.N.Y. Mar. 29, 2013) (dismissing New York unjust enrichment claim because allegations that plaintiffs paid supra-competitive prices due to defendants' conduct "d[id] not establish a relationship, of any sort, between plaintiffs and defendants"); *Bristol Vill., Inc. v. La.-Pac. Corp.*, 916 F. Supp. 2d 357, 367 (W.D.N.Y. 2013) (dismissing unjust enrichment claim: "[a] relationship is too attenuated where a plaintiff is an indirect purchaser of an item as part of a larger product"); *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. 2012) (no unjust enrichment because parties "simply had no dealings with each other" and complaint did not allege that parties "had any contact regarding the purchase transaction"); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011) (affirming dismissal of New York unjust enrichment claim due to lack of allegations indicating a relationship between the parties).  Thus, federal courts, including in this District, have consistently dismissed New York unjust enrichment claims in such circumstances.  *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25–26; *M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535 (DLC), 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) ("It is not sufficient for defendant to receive some indirect benefit—the benefit received must be specific and direct" (internal quotations omitted)); *Kaye*, 202 F.3d at 616; *Brenner*, 821 F. Supp. 2d at 540–41.  For similar reasons and as explained in Part IV.C., *supra*, this Court should do the same here.

Second, the IPPs' New York unjust enrichment claims also require dismissal because, as explained in Part IV.D., *supra*, there can be no unjust enrichment where, as here, the IPPs

66

received the benefit of their bargains: properly functioning OSS parts at prices they agreed to

pay.  *See One Step Up, Ltd. v. Webster Bus. Credit Corp*., 925 N.Y.S.2d 61, 70 (App. Div. 2011).

> ### 7.   New York's Statutes of Limitations Bars the IPPs' Antitrust, Consumer Protection, and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to New York antitrust claims, N.Y. Gen. Bus.

Law 340(5), and a three-year statute of limitations applies to New York consumer protection

claims, N.Y. C.P.L.R. § 214(2), which also applies to unjust enrichment claims relying on the

same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading

fraudulent concealment, New York requires that the IPPs plead both affirmative acts and due

diligence with particularity, *see Zoe G. v. Frederick F. G.,* 208 A.D.2d 675, 675 (N.Y. App. Div.

1994); *Pahlad ex rel. Berger v. Brustman*, 823 N.Y.S.2d 61, 64 (App. Div. 2006), *aff'd* 865

N.E.2d 1240 (N.Y. 2007), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs'

claims for damages based on purchases prior to June 8, 2008 (antitrust) and June 8, 2009

(consumer protection and unjust enrichment), are barred by New York's statute of limitations.

> ## V.   North Carolina

> ### 1.   The IPPs' North Carolina Antitrust Claims Fail for Lack of Standing.

Although North Carolina does not apply the *AGC* factors, North Carolina courts apply a

similar standing test that considers (1) whether a plaintiff has adequately alleged causation, (2)

the speculative nature of plaintiff's claims, and (3) the complexity of apportioning damages.  *See*

*Teague v. Bayer AG*, 671 S.E.2d 550, 557–58 (N.C. Ct. App. 2009).  Thus, a plaintiff lacks

standing absent allegations that the price-fixed part is a "significant component" of the product it

bought.  *Id.* at 557.  In *Teague*, the court found "sufficient facts in [the] complaint" to establish

standing where the plaintiff alleged the price-fixed product was a "significant component part"

of the finished good plaintiff bought.  *Id.*  Here, an OSS part is but one of thousands of

components in a vehicle, and no IPP pleads a single fact about the cost of an OSS part. While the ADs claim that OSS parts "comprise a not insignificant portion of the cost of a vehicle," AD CCC ¶ 210, that conclusory allegation is insufficient to state a claim, *see Iqbal*, 556 U.S. at 681 (factual "allegations [that] are conclusory" are "not entitled to be assumed true"), and fails even to allege that all OSS parts are "significant component part[s]" of a vehicle, *Teague*, 671 S.E.2d at 557. Thus, the IPPs' North Carolina antitrust claims also warrant dismissal for lack of antitrust standing.

> **2.** **The IPPs Fail To Allege Conduct That Took Place in North Carolina, Which Is Fatal to Their Antitrust Claims Under North Carolina Law.**

The antitrust statutes of North Carolina require plaintiffs to allege that the conduct at issue—the alleged price fixing conspiracy—took place in those states. *See* N.C. Gen. Stat. § 75-1 ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce *in the State of North Carolina* is hereby declared to be illegal." (emphasis added)). The allegations related to conspiratorial conduct specify only that the acts occurred "in the United States," not North Carolina, *see* AD CCC ¶ 248; EP CAC ¶ 170, and the North Carolina antitrust claims do not allege where any conduct occurred, *see* AD CCC ¶ 267; EP CAC ¶ 188. This Court should therefore dismiss Plaintiffs' North Carolina antitrust claims.

> **3.** **The IPPs Fail To Allege a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce and Thus Cannot State a Consumer Protection Claim Under North Carolina Law.**

To state a claim under the consumer protection laws of North Carolina, plaintiffs must allege that defendants' alleged conduct had a "substantial effect" on intrastate commerce, and not "merely an incidental in-state injury." *Compressors II*, 2013 WL 1431756, at *19 (internal quotations omitted) (dismissing consumer protection claims under North Carolina law because an alleged conspiracy that led to inflated prices was merely an incidental in-state injury); *see also*

*Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 677 (S.D. Tex. 2010) (dismissing

plaintiff's North Carolina Unfair and Deceptive Trade Practices Act claim, stating that "[a]

plaintiff who does not allege a substantial effect on in-state North Carolina operations fails to

state a claim" under North Carolina's consumer protection act); *Merck & Co. v. Lyon*, 941 F.

Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing plaintiff's consumer protection claims where

"plaintiffs . . . failed to allege a substantial effect on any in-state business operations," and "[a]ny

injury plaintiffs may suffer in North Carolina will be incidental"); *"In" Porters, S.A. v. Hanes*

*Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (dismissing plaintiff's North Carolina

Unfair and Deceptive Trade Practices Act claim because it lacked substantial North Carolina

effects and thus "falls outside the reach" of the Act).

      As the court in *Refrigerant Compressors* did, this Court should dismiss the IPPs' North

Carolina consumer protection claim because both complaints fail to "allege that Defendants

engaged in any wrongful conduct in North Carolina."  2013 WL 1431756, at *19.  Moreover,

merely alleging a harm based on "inflated prices" is not enough under North Carolina law to

allege a "substantial in-state injury," but instead is "an incidental in-state injury" that warrants

dismissal.  *Id.* (internal quotations omitted).

               **4.      The IPPs' North Carolina Unjust Enrichment Claims Fail for Two**
                        **Reasons.**

      First, North Carolina courts "ha[ve] limited the scope of a claim of unjust enrichment

such that the benefit conferred must be conferred directly from plaintiff to defendant, not through

a third party."  *Baker Constr. Co. v. City of Burlington*, No. COA09-13, 2009 WL 3350747, at

*6 (N.C. Ct. App. Oct. 20, 2009).  North Carolina's "direct benefit" requirement has been found

satisfied in the absence of contractual privity or direct contact only in very limited circumstances

not present here.  *See, e.g.*, *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 922 (N.C.

1992) (bank unjustly enriched when it received the security it bargained for—a completed

building—but did not disburse funds for completing the building to the third party construction

company).  Because the IPPs do not and cannot allege that they conferred a direct benefit on

Defendants, *see* Part IV.C., *supra*, their North Carolina unjust enrichment claims require

dismissal.  *See Aftermarket Filters*, 2010 WL 1416259, at *2–3 (dismissing indirect purchasers'

North Carolina unjust enrichment claim); *see also Flonase II*, 692 F. Supp. 2d at 546 (same); *cf.*

*In re Relafen Antitrust Litig.* ("*Relafen I*"), 221 F.R.D. 260, 287 (D. Mass. 2004)

Second, the IPPs' unjust enrichment claims should be dismissed because the IPPs

received that for which they bargained:  properly functioning OSS parts at prices they agreed to

pay.  *See Britt v. Britt*, 359 S.E.2d 467, 471 (N.C. 1987), *overruled on other grounds by Myers &*

*Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988); Part IV.D., *supra*.

### 5. North Carolina's Statute of Limitations Bars the IPPs' Antitrust, Consumer Protection and Unjust Enrichment Claims In Whole or In Part.

A four year statute of limitations applies to North Carolina antitrust and consumer

protection claims, N.C. Gen. Stat § 75-16.2, which also applies to unjust enrichment claims

relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by

pleading fraudulent concealment, North Carolina requires that the IPPs' plead both affirmative

acts and due diligence with particularity, *see Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 317

S.E.2d 41, 44 (N.C. Ct. App. 1984); *Crawford v. Paul Davis Restoration Triad Inc.*, No.

COA02-1040, 2003 WL 21436156, at *4 (N.C. App. June 17, 2003), which they have failed to

do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8,

2008, are barred by North Carolina's statute of limitations.

W.     **North Dakota**

1.     **The IPPs' North Dakota Antitrust Claims Fail for Lack of Standing.**

North Dakota courts apply the *AGC* factors to determine standing under North Dakota antitrust law.  *See Beckler v. Visa U.S.A. Inc.*, No. Civ. 09-04-C-00030, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004) (dismissing claims because "[p]laintiffs' alleged injuries do not satisfy antitrust standing principles identified in [*AGC*]").  Because, as explained in Part III, *supra*, the *AGC* factors all weigh against standing here, this Court should dismiss the IPPs' North Dakota antitrust claims.

2.     **The IPPs' North Dakota Unjust Enrichment Claims Fail for Three Reasons.**

First, the IPPs' North Dakota unjust enrichment claims are deficient because they fail to allege the five required elements, including, *inter alia*, "[a] connection between the enrichment and the impoverishment," "[a]bsence of a justification for the enrichment and the impoverishment," and "absence of a remedy provided by law."  *Schroeder v. Buchholz*, 622 N.W.2d 202, 207 (N.D. 2001); *see also Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 894–95 (N.D. 1999) (same).

Second, the IPPs' North Dakota unjust enrichment claims fail for the additional reason that the IPPs must allege that they conferred a "direct" benefit on Defendants, *see Apache Corp.*, 603 N.W.2d at 895; *cf. In re Relafen Antitrust Litig.* ("*Relafen II*"), 225 F.R.D. 14, 28 (D. Mass. 2004) (relying on *Apache* to preclude indirect purchasers' unjust enrichment claims due to absence of direct benefit conferred by them on defendants), but IPPs do not and cannot do so here, *see* Part IV.C., *supra*.

Third, the IPPs' North Dakota unjust enrichment claims should be dismissed because there can be no unjust enrichment where, as here, the IPPs received the benefit of their bargains:

properly functioning OSS parts at prices they agreed to pay. *See Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324, 328 (N.D. 1982); Part IV.D., *supra*.

### 3. North Dakota's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to North Dakota antitrust claims, N.D. Cent. Code § 51-08.1-10(1), which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*. In order to toll the statute of limitations by pleading fraudulent concealment, North Dakota requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Roether v. Nat'l Union Fire Ins. Co.,* 200 N.W. 818, 822 (N.D. 1924); N.D. Cent.Code § 28-01-24, which they have failed to do, *see* Part V, *supra*. Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by North Dakota's statute of limitations.

### X. Oregon

### 1. The IPPs' Oregon Antitrust Claims Fail for Lack of Standing.

Oregon's harmonization statute requires courts to interpret Oregon antitrust law consistent with federal law and, hence, in accordance with *AGC*. *See* Or. Rev. Stat. Ann. § 646.715(2) ("The decisions of federal courts in construction of federal law relating to the same subject *shall be* persuasive authority in the construction of [Or. Rev. Stat. §] 646.705 to 646.805 and 646.990." (emphasis added)); *see also Nw. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or., Inc.*, 794 P.2d 428, 433 (Or. 1990) (requiring courts to "look to federal caselaw" when interpreting and applying Oregon antitrust law); *Magnesium Oxide*, 2011 WL 5008090, at *7 n.9 (dismissing indirect purchaser Oregon antitrust claims because Oregon antitrust law is "construed in accordance with federal antitrust principles"). Thus, consistent with Oregon's

72

harmonization statute and because, as explained in Part III, *supra*, all the *AGC* factors weigh

against standing here, this Court should dismiss the IPPs' Oregon antitrust claims.

### 2. The IPPs' Oregon Unjust Enrichment Claims Fail Because Plaintiffs Received the Benefit of Their Bargains.

Oregon courts also bar recovery for unjust enrichments where a plaintiff has received

that for which it bargained. *See Winters v. Cnty. of Clatsop*, 150 P.3d 1104, 1108 (Or. Ct. App.

2007); *see also High v. Davis*, 584 P.2d 725, 736 (Or. 1978) (en banc) (holding that claimants

would not be unjustly enriched because they were "receiving what they bargained and paid

for"). As explained in Part IV.D., *supra*, the IPPs received the benefit of what they bargained

and paid for: properly functioning OSS parts at the price they agreed to pay. Therefore, this

Court should dismiss the IPPs' Oregon unjust enrichment claims.

### 3. Oregon's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to Oregon antitrust claims, Or. Rev. Stat. Ann.

§ 646.140, which also applies to unjust enrichment claims relying on the same allegations, *see*

Part V, *supra*. In order to toll the statute of limitations by pleading fraudulent concealment,

North Dakota requires that the IPPs plead both affirmative acts and due diligence with

particularity, *see Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239, 1241–42 (Or. 1972), which

they have failed to do, *see* Part V, *supra*. Thus, the IPPs' claims for damages based on purchases

prior to June 8, 2008, are barred by Oregon's statute of limitations.

### Y. Rhode Island

### 1. The EPs' Price Fixing Claims Are Not Actionable Under the Consumer Protection Laws of Rhode Island.

The EPs have alleged a claim under the Rhode Island Unfair Trade Practice and

Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.* ("RIUTPA"). EP CAC ¶ 211.

However, the Rhode Island Supreme Court has repeatedly "held that a finding of unfair competition must be predicated upon conduct on the part of the respondent that reasonably tended to confuse and mislead the general public into purchasing his product when the actual intent of the purchaser was to buy the product of the complainant." *ERI Max Enter., Inc. v. Streisand*, 690 A.2d 1351, 1353–54 (R.I. 1997) (per curiam) (internal quotations omitted). Accordingly, federal courts have dismissed price fixing claims under the RIUTPA. *See, e.g.*, *GPU I*, 527 F. Supp. 2d at 1030–31; *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1162 (N.D. Cal. 2009); *DRAM I*, 516 F. Supp. 2d at 1116. This Court should similarly dismiss the EPs' RIUTPA claim for failure to state a claim.

## 2.      The EPs' Rhode Island Unjust Enrichment Claim Fails for Two Reasons.

<u>First</u>, to establish a Rhode Island unjust enrichment claim, the EPs must allege that they conferred a "direct" benefit on Defendants. *See Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997) (affirming dismissal of Rhode Island unjust enrichment claim because plaintiffs conferred no benefit on defendants). Consistent with this requirement, federal courts, including in this District, dismiss Rhode Island unjust enrichment claims brought by indirect purchasers like the EPs. *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25–26. For the reasons explained in Part IV.C., *supra*, the Court should do the same here.

<u>Second</u>, as explained in Part IV.D., *supra*, the EPs may not recover for unjust enrichment under Rhode Island law because they received the benefit of their bargains: properly functioning OSS parts at the price they agreed to pay. *See Rosetta v. Morretti*, No. 98-89, 2005 WL 1109638, at *8 (R.I. Super. Ct. May 4, 2005) (granting motion for judgment as a matter of law in favor of defendant after determining that plaintiffs received "the benefit of the bargain" they struck in purchasing company shares).

### 3. Rhode Island's Statute of Limitations Bars the EPs' Consumer Protection and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to Rhode Island consumer protection claims,

R.I. Gen. Laws § 6-36-23, which also applies to unjust enrichment claims relying on the same

allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent

concealment, Rhode Island requires that the EPs plead both affirmative acts and due diligence

with particularity, *see Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 182 (R.I.

2008); *Martin v. Howard*, 784 A.2d 291, 299–300 (R.I. 2001), which they have failed to do, *see*

Part V, *supra*.  Thus, the EPs' claims for damages based on purchases prior to June 8, 2008, are

barred by Rhode Island's statute of limitations.

### Z. South Carolina

### 1. The ADs Cannot Maintain Their Consumer Protection Claim as a Class Action Under South Carolina Law.

South Carolina's consumer class action laws bar the ADs from maintaining their claims.

The ADs bring a claim under the "South Carolina Unfair Trade Practices Act, S.C. Code Ann.

§§ 39-5-10, *et seq.*"  AD CCC ¶ 288.  South Carolina has barred class action relief under its

consumer protection statute.  *See* S.C. Code Ann. § 39-5-140(a) ("Any person who suffers any

ascertainable loss of money or property . . . as a result of the use or employment by another

person of an unfair or deceptive method, act or practice declared unlawful by [Section] 39-5-20

may bring an action individually, *but not in a representative capacity*, to recover actual

damages." (emphasis added)).

For the same reasons set forth in Part VI.P.1., *supra*, because South Carolina's

prohibitions on consumer protection law class actions "appear in the very statutes that define the

substantive rights at issue" they "survive *Shady Grove* and should continue to be enforced."  *In*

*re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 661 n.4.  Although this Court in *WH* cited *In*

*re Optical Disk Drive Antitrust Litigation*, No. 3:10-MD-2143 RS, 2012 WL 1366718 (N.D. Cal.

Apr. 19, 2012), as authority that "rejected South Carolina's class prohibition as a basis for

dismissal of a class action" in light of *Shady Grove*, *WH*, 2013 WL 2456612, at *30, the *Optical*

*Disk Drive* decision included no analysis of the issue, *see* 2012 WL 1366718, at *8.  More recent

authority from a South Carolina federal district court has applied South Carolina's class action

bar to dismiss class action claims in federal court brought under South Carolina's consumer

protection law.  *See In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, No. 2:11-cv-00167-

DCN, 2012 WL 5408563, at *5 & n.3 (D.S.C. Nov. 6, 2012).  Therefore, the ADs' South

Carolina consumer protection class action claim should be dismissed.

### 2.    The ADs' South Carolina Unjust Enrichment Claim Fails for Three Reasons.

First, the ADs' unjust enrichment claims fail because South Carolina requires that a

"plaintiff . . . establish the existence of a duty owed to him or her by the defendant."  *In re*

*Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464–65 (D. Md. 2005) (dismissing unjust

enrichment claim because, *inter alia*, plaintiff failed to establish a breach of fiduciary duty).  The

IPPs do not plead this element of their claim.  They allege only that "[d]efendants have engaged

in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of

South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*."  AD CCC ¶ 288.

Thus, their complaint does not state a claim for relief.

Second, under South Carolina unjust enrichment law, the IPPs must also allege they

conferred a "direct" benefit on defendants.  *See Myrtle Beach Hosp., Inc. v. City of Myrtle*

*Beach*, 532 S.E.2d 868, 873 (S.C. 2000) (no unjust enrichment claim could lie where defendant

City did not have a duty to provide payment for, and therefore was not directly benefitted by,

plaintiff's provision of medical care to pre-trial detainees); *see also Kunzelmann v. Wells Fargo*

*Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913, at *10 (S.D. Fla. Jan. 10, 2013)

(denying class certification because of variation in state unjust enrichment laws, including South

Carolina's direct benefit requirement); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551–52 (D.

Md. 2011) (dismissing South Carolina unjust enrichment claim by used car purchasers against

vehicle manufacturer for failure to allege that they purchased from the manufacturer or otherwise

conferred a benefit on it when they bought cars from independent dealerships). Because, as

explained in Part IV.C., *supra*, the IPPs do not and cannot allege they conferred such a benefit,

their South Carolina unjust enrichment claim should be dismissed.

Third, as explained in Part IV.D., *supra*, the IPPs may not recover for unjust enrichment

where, as here, they have received the benefit of their bargains. *See Johnston v. Brown*, 348

S.E.2d 391, 395 (S.C. Ct. App. 1986) (holding that there was no unjust enrichment "because

[plaintiff] received the agreed payment for his services"), *rev'd on other grounds*, 357 S.E.2d

450 (S.C. 1987). As in *Johnston*, the IPPs here received that for which they voluntarily

bargained: properly functioning OSS parts at the price they agreed to pay. Therefore, this Court

should dismiss the IPPs' South Carolina unjust enrichment claim.

### 3. South Carolina's Statute of Limitations Bars ADs' Consumer Protection Claims In Whole or In Part.

A three year statute of limitations applies to South Carolina consumer protection claims,

S.C. Stat. Ann. § 39-5-150, which also applies to unjust enrichment claims relying on the same

allegations, *see* Part V, *supra*. In order to toll the statute of limitations by pleading fraudulent

concealment, South Carolina requires that the ADs plead "reasonable diligence," *cf. Barr v. City

of Rock Hill*, 500 S.E.2d 157, 159–60 (S.C. 1998), which they have failed to do, *see* Part V,

*supra*. Thus, the ADs' claims for damages based on purchases prior to June 8, 2009, are barred

by South Carolina's statute of limitations.

AA.    **South Dakota**

    1.    **The IPPs' South Dakota Antitrust Claims Fail for Lack of Standing.**

South Dakota courts apply the *AGC* factors to determine antitrust standing.  *Cornelison v. Visa U.S.A. Inc*., Hr'g Tr., No. CIV 03-1350, at 54–55 (S.D. Cir. Ct. 2004) (applying *AGC* to dismiss claims); *see also In re S.D. Microsoft Antitrust Litig*., 707 N.W.2d 85, 99 (S.D. 2005) ("'[B]ecause of the similarity of language between federal and state antitrust statutes and because of the legislative suggestion for interpretation found in SDCL 37-1-22, *great weight* should be given to the federal cases interpreting the federal statute.'" (emphasis added) (quoting *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985))); *DRAM II*, 536 F. Supp. 2d at 1134–42 (dismissing claims under South Dakota state antitrust law based on *AGC* factors).  Because, as explained in Part III, *supra*, all the *AGC* factors weigh against standing here, this Court should dismiss the IPPs' South Dakota antitrust claims.

    2.    **The IPPs Fail To Allege a Sufficient Nexus Between Defendants' Conduct and Intrastate Commerce, Which Is Fatal to Their Antitrust Claims Under South Dakota Law.**

The antitrust statutes of South Dakota require the IPPs to allege that the conduct at issue—the alleged price fixing conspiracy—took place in that state.  *See* S.D. Codified Laws § 37-1-3.1 ("[A] contract, combination, or conspiracy between two or more persons in restraint of trade or commerce any part of which is within this state is unlawful.").  As discussed above, the IPPs make no allegations that any alleged conspiratorial conduct took place in South Dakota. This Court should therefore dismiss their South Dakota antitrust claims.

    3.    **The IPPs' South Dakota Unjust Enrichment Claims Fail Because Defendants Provided Consideration to IPPs for any Benefit Received.**

The IPPs' South Dakota unjust enrichment claims should be dismissed because, as explained in Part IV.E., *supra*, there can be no unjust enrichment where Defendants provided

consideration (here, OSS parts) for the benefit they received (here, money). *See Parker v. W. Dakota Insurors, Inc.*, 605 N.W.2d 181, 187 (S.D. 2000).

### 4. South Dakota's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to South Dakota antitrust claims, S.D. Codified Laws § 37-1-14.4, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*. In order to toll the statute of limitations by pleading fraudulent concealment, South Dakota requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Spencer v. Estate of Spencer,* 759 N.W.2d 539, 544 (S.D. 2008); *Strassburg v. Citizens State Bank*, 581 N.W.2d 510, 515 (S.D. 1998), which they have failed to do, *see* Part V, *supra*. Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by South Dakota's statute of limitations.

### BB. Tennessee

#### 1. The IPPs' Tennessee Antitrust Claims Fail for Lack of Standing.

Tennessee courts apply *AGC* to determine antitrust standing. *See Tenn. Med. Ass'n v. BlueCross BlueShield of Tenn., Inc.*, 229 S.W.3d 304, 311 (Tenn. Ct. App. 2007). In *Tennessee Medical Association*, Tennessee's court of appeals applied *AGC* to determine whether plaintiffs had standing to sue under Tennessee's consumer protection law, and stated, without regard to plaintiffs' status, that "'[t]he same proximate cause standard governs Plaintiffs' statutory claims under the [Tennessee antitrust act].'" *Id.* at 311 (quoting *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003)). Because, as explained in Part III, *supra*, the *AGC* factors weigh against standing, this Court should also apply *AGC* to dismiss the IPPs' Tennessee antitrust claims.

2. **The EPs Fail To Allege a Sufficient Nexus Between Defendants'
Conduct and Intrastate Commerce, Which Is Fatal to Their Antitrust
Claim Under Tennessee Law.**

This Court in *WH* recognized that Tennessee's antitrust law requires allegations of

"substantial effects" in Tennessee in order to state a claim.  2013 WL 2456612, at *20.

"Pursuant to this standard, courts must decide whether the alleged anticompetitive conduct

affects Tennessee trade or commerce to a substantial degree."  *Freeman Indus., LLC v. Eastman*

*Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005).  This Court did not dismiss the Tennessee

antitrust claims in *WH* because "in-state IPPs allege they purchased vehicles containing price-

fixed products in Tennessee."   2013 WL 2456612, at *20.

In this case, one AD plaintiff has alleged that it purchased vehicles in Tennessee.  *See* AD

CCC ¶ 37 ("Plaintiff Fayetteville purchased and received both the aforementioned vehicles and

Occupant Safety Restraint Systems in Tennessee.").  However, no EP plaintiff has made such an

allegation.  While there is one EP plaintiff from Tennessee, there is no allegation that the

Tennessee EP plaintiff purchased an OSS product *in Tennessee*.  *See* EP CAC ¶ 55 ("Plaintiff

Phillip G. Young is a Tennessee resident who purchased an Occupant Safety Restraint System

indirectly from one or more Defendants.").  Therefore, under this Court's *WH* ruling, the failure

of the EPs' complaint to allege that any plaintiff "purchased vehicles containing price-fixed

products *in Tennessee*" is fatal to the EPs' antitrust claim under Tennessee law.  2013 WL

2456612, at *20 (emphasis added).

3. **The IPPs' Tennessee Unjust Enrichment Claims Fail for Two
Reasons.**

First, in Tennessee, unjust enrichment claimants must allege that they exhausted their

remedies against the party with whom they had privity of contract, or that attempts at exhaustion

would have been futile.  *See Freeman Indus.*, 172 S.W.3d at 525–26 (reversing denial of

summary judgment to defendants on indirect purchasers' Tennessee unjust enrichment claim because they failed to allege exhaustion of remedies against the direct purchaser and only provided "bare allegation" that such efforts would be futile).  Here, the IPPs fail to plead either of these elements.  The ADs do no more than plead "bare allegations" (AD CCC ¶ 295), while the EPs plead nothing at all regarding exhaustion.  The IPPs' Tennessee claims should therefore be dismissed.

Second, as explained in Part IV.E., *supra*, the IPPs may not recover for unjust enrichment under Tennessee law because defendants provided consideration (here, OSS parts) for any benefit received (here, money).  *See Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 155 (1966); *McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461, at *10 (W.D. Tenn. May 9, 2011); *Weather Doctor Servs. Co. v. Stephens*, No. E2000-1427-COA-R3-CV, 2001 Wl 849540, at *2–3 (Tenn. Ct. App. July, 27, 2001).

### 4. Tennessee's Statute of Limitations Bars the IPPs' Antitrust and Consumer Protection Claims in Whole or in Part.

A three year statute of limitations applies to Tennessee antitrust claims, Tenn. Code Ann. § 28-3-105, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Tennessee requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Shadrick v. Coker*, 963 S.W.2d 726, 733-34 (Tenn. 1998), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2009, are barred by Tennessee's statute of limitations.

**CC.** **Utah**

    **1.** **The IPPs' Utah Antitrust Claims Fail for Lack of Standing.**

Utah's harmonization statute, Utah Code Ann. § 76-10-3118, mandates that Utah's antitrust laws "*will* be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes." *Id.* (emphasis added). The *AGC* factors thus apply to IPPs' antitrust claims under Utah law. *See, e.g.*, *Magnesium Oxide*, 2011 WL 5008090, at *7 n.9 (dismissing indirect purchaser Utah antitrust claims because Utah antitrust law is "construed in accordance with federal antitrust principles"). Because, as explained in Part III, *supra*, each *AGC* factor weighs against standing here, this Court should dismiss the IPPs' Utah antitrust claims.

    **2.** **The IPPs Cannot Assert Retroactive Antitrust Claims Under Utah Law.**

The IPPs may not seek damages for alleged conduct that pre-dates the enactment of Utah's antitrust statutes because Utah does not allow statutes to be applied retroactively. Utah Code Ann. § 68-3-3 ("A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive."); *California v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 1766775, at *4–5 (N.D. Cal. Apr. 15, 2008) (concluding "that indirect purchaser standing was not available" prior to amendment to Utah Antitrust Act allowing for such claims). Utah's indirect purchaser statue took effect on May 1, 2006. *See* Utah Code Ann. § 76-10-3109; *WH*, 2013 WL 2456612, at *19. Thus, as this Court held in *WH*, the IPPs cannot seek recovery under Utah's antitrust statue for any conduct that occurred prior to May 1, 2006. 2013 WL 2456612, at *19, 32.

### 3.     The IPPs' Utah Unjust Enrichment Claims Fail for Four Reasons.

First, under Utah law, a claim for unjust enrichment is permissible only where there is no

adequate remedy at law.  *See, e.g.*, *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978).

When seeking an equitable remedy, a "plaintiff must affirmatively show a lack of an adequate

remedy at law on the face of the pleading."  *Ockey v. Lehmer*, 189 P.3d 51, 61 n.42 (Utah 2008)

(internal quotations omitted).  Utah courts have explicitly applied this rule to bar unjust

enrichment claims where there is a contract addressing the transaction at issue, even when the

contract is not between the parties to the litigation.  *See Am. Towers Owners Ass'n, Inc. v. CCI

Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996) (dismissing unjust enrichment claim by

condominium association against subcontractors because "[d]efendants all provided services and

materials in exchange for their contract price" and the appropriate remedy is a breach of contract

action between the contracting parties), *abrogated on other grounds by Davencourt at Pilgrims

Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009);

*Nickerson Co. v. Energy W. Mining Co.*, No. 20090221–CA, 2009 WL 4681778, at *2 (Utah Ct.

App. Dec. 10, 2009) (rejecting unjust enrichment claim because plaintiff's contract with a third

party covered the sale of the product at issue).  Because the IPPs do not allege the absence of an

adequate legal remedy nor the absence of a contract governing their purchases of OSS parts, the

IPPs' Utah unjust enrichment claims should be dismissed.

Second, to successfully plead a Utah unjust enrichment claim, the IPPs must allege that

they conferred a "direct" benefit on defendants.  *Concrete Prods. Co. v. Salt Lake Cnty.*, 734

P.2d 910, 911–12 (Utah 1987); *cf. FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 52 (D.D.C.

1999) (finding no authority authorizing unjust enrichment claims by indirect purchasers under

Utah law and dismissing these claims).  Utah's direct benefit requirement has been found

satisfied without contractual privity only in limited circumstances not present here, such as when

83

the benefit provided by the plaintiff satisfied a duty owed by the defendant to the recipient.  *See,*

*e.g.*, *Emergency Physicians Integrated Care v. Salt Lake Cnty.*, 167 P.3d 1080, 1086 (Utah 2007)

(defendant-county benefitted directly from plaintiffs' provision of medical services to county

inmates because defendant-county had constitutional duty to provide medical services);

*Aftermarket Filters*, 2010 WL 1416259, at *2–3 (although privity not required, any benefit

plaintiffs conferred "would be on others in the chain of distribution from whom they purchased,

not on defendants").  Because the IPPs do not and cannot allege that they conferred a direct

benefit of any kind on defendants, *see* Part IV.C., *supra*, their Utah unjust enrichment claims fail.

 Third, the IPPs' Utah unjust enrichment claims also require dismissal because, as

explained in Part IV.D., *supra*, there is no unjust enrichment where, as here, the IPPs received

the benefit of their bargains: properly functioning OSS parts at the prices they agreed to pay.  *See*

*S. Title Guar. Co. v. Bethers*, 761 P.2d 951, 955 (Utah Ct. App. 1988) (no unjust enrichment

when appellant received what it bargained for by voluntarily sending its check to respondents

and receiving the item which it sought); *Bray Lines Inc. v. Utah Carriers, Inc.*, 739 P.2d 1115

(Utah Ct. App. 1987).  Therefore, this Court should dismiss the IPPs' Utah unjust enrichment

claim.

 Fourth, under Utah law, a claim for unjust enrichment will not lie where the defendant

provided consideration for the benefit it received.  *See Am. Movie Classics v. Rainbow Media*

*Holdings*, 508 F. App'x 826, 833–34 (10th Cir. 2013) (rejecting unjust enrichment claim because

defendant provided consideration to the third party with whom it had contracted to purchase

advertising from plaintiff even though the third party had not paid plaintiff for the advertising);

*Nickerson*, 2009 WL 4681778, at *2 (declining to hold defendant liable for unjust enrichment

because defendant had paid a third party and, therefore, "did not receive or retain any benefit for

which it did not pay").  Because the IPPs concede that defendants provided consideration (OSS parts) for the benefit they received (money), *see* Part IV.E., *supra* , the IPPs' Utah unjust enrichment claims fail.

### 4.      Utah's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.

A four year statute of limitations applies to Utah antitrust claims, Utah Code Ann. § 76-10-925, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, Utah requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Colosimo v. Roman Catholic Bishop*, 156 P.3d 806, 816–17 (Utah 2007); *Berenda v. Langford*, 914 P.2d 45, 51–52 (Utah 1996), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by Utah's statute of limitations.

### DD.      Vermont

### 1.      The IPPs' Vermont Antitrust and Consumer Protection Claims Fail for Lack of Standing.

Vermont courts apply the *AGC* factors to determine standing under Vermont antitrust and consumer protection law.  *See Fucile v. Visa U.S.A. Inc.*, No. S1560-03 CNC, 2004 WL 3030037, at *2–4 (Vt. Super. Ct. Dec. 27, 2004) ("[I]n applying the general factors of [*AGC*], the court holds that Mr. Fucile does not have standing in this case" because, *e.g.*, the causal chain was too long and damages too speculative to allow his Consumer Fraud Act claims).  Because, as explained in Part III, *supra*, the *AGC* factors all weigh against standing here, this Court should dismiss the IPPs' Vermont antitrust and consumer protection claims.

## 2. The IPPs' Vermont Unjust Enrichment Claims Fail Because Plaintiffs Received Consideration for the Benefit Conferred.

Vermont courts have held that plaintiffs may not recover for unjust enrichment if they received consideration for the benefit that they conferred. *See Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994, 995 (Vt. 1987) (holding that "[t]he retention of a benefit is not unjust where defendants have paid for it" (internal quotations omitted)); *Will v. Mill Condo. Owners Ass'n, Inc.*, No. 457-10-01 WRCV, 2002 WL 34340312 (Vt. Super. Ct. July 5, 2002); *Morrisville Lumber Co. v. Okcuoglu*, 531 A.2d 887, 889 (Vt. 1987). Because the IPPs concede that they received consideration (OSS parts) for the benefit they conferred (money), *see* Part IV.E., *supra* , the IPPs' Vermont unjust enrichment claims fail

## 3. Vermont's Statute of Limitations Bars the IPPs' Antitrust, Consumer Protection and Unjust Enrichment Claims in Whole or in Part.

A six year statute of limitations applies to Vermont antitrust and consumer protection claims, 12 Vt. Stat. Ann. § 511, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*. In order to toll the statute of limitations by pleading fraudulent concealment, Vermont requires that the IPPs plead both affirmative acts and due diligence with particularity, *see Rodrigue v. Valco Enter.*, 726 A.2d 61, 64 (Vt. 1999); *Watts v. Mulliken's Estate*, 115 A. 150, 152 (Vt. 1921), which they have failed to do, *see* Part V, *supra*. Thus, the IPPs' claims for damages based on purchases prior to June 8, 2006, are barred by Vermont's statute of limitations.

### EE. West Virginia

#### 1. The IPPs' West Virginia Antitrust Claims Fail for Lack of Standing.

West Virginia's harmonization statute dictates that West Virginia's antitrust statute "*shall be construed . . . in harmony with ruling judicial interpretations of comparable federal antitrust statutes.*" W. Va. Code Ann. § 47-18-16 (emphasis added). Thus, state and federal courts,

including from this District, must (and do) construe West Virginia antitrust law in accordance with federal law, including *AGC*.  *See Compressors II*, 2013 WL 1431756, at *10–15 (applying *AGC* to dismiss West Virginia antitrust claims); *Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366, 374 (W. Va. 2007) (applying federal law to state antitrust claim analysis because "'the courts of this state are directed by the legislature in W. Va. Code § 47-18-16 . . . to apply the federal decisional law interpreting the Sherman Act . . . to our own parallel antitrust statute'" (brackets and citation omitted)).  Because, as explained in Part III, *supra*, the *AGC* factors all weigh against standing here, this Court should dismiss the IPPs' West Virginia antitrust claims.

### 2. The EPs' West Virginia Antitrust Claim Fails Because EPs Do Not Allege a Sufficient Impact on Intrastate Commerce.

West Virginia's antitrust statute requires plaintiffs to allege a specific nexus between defendants' alleged conduct and *intrastate* commerce.  *West Virginia ex rel. Palumbo v. Graley's Body Shop, Inc.*, 425 S.E.2d 177, 183 n.11 (W. Va. 1992) ("West Virginia's antitrust law is directed towards *intrastate* commerce." (internal quotations omitted)).  As discussed above, *see* Part VI.D.3., *supra*, however, the EPs have pleaded facts stressing the *interstate* nature of the conduct.  Moreover, the EPs' have not alleged any purchase made in the state of West Virginia. *See* EP CAC ¶¶ 60–62.

### 3. The IPPs' West Virginia Unjust Enrichment Claims Fail Because They Fall Short of West Virginia's Pleading Requirements.

The IPPs' West Virginia unjust enrichment claims fail because West Virginia requires a plaintiff to specifically allege not only that a defendant's retention of a benefit is "inequitable and unconscionable" but "how."  *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011 WL 1357483, at *15 (N.D. W. Va. Apr. 11, 2011).  Because the IPPs do not plead these elements, their unjust enrichment claims warrant dismissal.

### 4.   West Virginia's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims In Whole or In Part.

A four year statute of limitations applies to West Virginia antitrust claims, W. Va. Code Ann. § 47-18-11, which also applies to unjust enrichment claims relying on the same allegations, *see* Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment, West Virginia requires that the IPPs plead affirmative acts and due diligence with particularity, *see Sattler v. Bailey*, 400 S.E.2d 220, 229 (W.V. 1990), which they have failed to do, *see* Part V, *supra*.  Thus, the IPPs' claims for damages based on purchases prior to June 8, 2008, are barred by West Virginia's statute of limitations.

### FF.   Wisconsin

### 1.   The IPPs' Wisconsin Antitrust Claims Fail for Lack of Standing.

Wisconsin and federal courts, including in this District, apply the *AGC* factors to claims under Wisconsin antitrust law.  *See Compressors II*, 2013 WL 1431756, at *10–15 (applying *AGC* to dismiss Wisconsin antitrust claims); *Strang v. Visa U.S.A. Inc.*, No. 03 CV 011323, 2005 WL 1403769, at *3–5 (Wis. Cir. Ct. Feb. 8, 2005) (recognizing, in dismissing Wisconsin antitrust claims under *AGC*, that "[n]umerous state courts have analyzed these factors and concluded that injuries identical to those claimed by Ms. Strang are too remote and speculative").  Because, as explained in Part III, *supra*, each *AGC* factor weighs against standing here, the Court should dismiss the IPPs' Wisconsin antitrust claims.

### 2.    IPPs' Wisconsin Unjust Enrichment Claims Fail Because Defendants Provided Consideration for Any Benefit Received.

In Wisconsin, an unjust enrichment claim will not lie where, as here, defendants have provided consideration (OSS parts) for the benefit received (money).  *See Tri-State Mech., Inc. v. Northland Coll.*, 681 N.W.2d 302, 305–06 (Wis. Ct. App. 2004) (unjust enrichment unavailable if recipient of the benefit has already paid for it); Part IV.E., *supra*.

**3.    Wisconsin's Statute of Limitations Bars the IPPs' Antitrust and Unjust Enrichment Claims in Whole or in Part.**

A six year statute of limitations applies to Wisconsin antitrust claims, Wisc. Stat. Ann.

§ 133.18(2), which also applies to unjust enrichment claims relying on the same allegations, *see*

Part V, *supra*.  In order to toll the statute of limitations by pleading fraudulent concealment,

Wisconsin requires that the IPPs plead both affirmative acts and reasonable diligence with

particularity, *see State ex rel. Susedik v. Knutson*, 191 N.W.2d 23, 25–26 (Wis. 1971); *cf. Spitler*

*v. Dean*, 436 N.W.2d 308, 311 (Wis. 1989), which they have failed to do, *see* Part V, *supra*.

Thus, the IPPs' claims for damages based on purchases prior to June 8, 2006, are barred by

Wisconsin's statute of limitations.

**VII.    THE IPPS HAVE FAILED TO ALLEGE PLAUSIBLE THREATENED FUTURE INJURY ENTITLING THEM TO INJUNCTIVE RELIEF.**

A plaintiff must establish the continuing presence of the requisite threatened injury to be

entitled to injunctive relief under the Clayton Act.  15 U.S.C. § 26; *see In re New Motor Vehicles*

*Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008).  The IPPs seek an injunction

restraining defendants from "continuing" or "maintaining" the alleged price fixing conspiracy.

AD CCC p. 106 ¶ E); EP CAC pp. 74–75 ¶ E).  However, the IPPs have pleaded no facts that

plausibly support their conclusory allegation of a "continuing conspiracy," and the facts that they

have pleaded are inconsistent with such a conspiracy and with any real or immediate threat of

future harm.

The IPPs allege that the conspiracy continued through "the filing" of their complaints.

AD CCC ¶ 231; EP CAC ¶ 158.  Those allegations are inconsistent with the guilty pleas on

which the IPPs rely.  AD CCC ¶¶ 168–81; EP CAC ¶ 113.  Further, a continuing conspiracy is

highly implausible given the widespread publicity of enforcement agency investigations

and  the onerous consequences of another violation under the plea agreements.  As set forth in

detail in Part V of the Defendants' Collective Brief in Support of Defendants' Collective Motion to Dismiss the Direct Purchaser Actions, the pleas undermine any claim that any alleged conspiracy will be revived or recur, and the court that accepted the plea agreements concluded that further relief was not required to deter future violations. For these reasons, and the additional arguments and authorities set forth in the memo in support of the motion to dismiss the direct purchaser claims, the Court should dismiss the IPPs' claims for injunctive relief.

Dated: October 21, 2013                           Respectfully submitted,

| | |
|---|---|
| David M. Zinn<br>John E. Schmidtlein<br>Samuel Bryant Davidoff<br>**Williams & Connolly LLP**<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>202-434-5000<br>Fax: 202-434-5029<br>dzinn@wc.com<br>jschmidtlein@wc.com<br>sdavidoff@wc.com | By: /s/ Robert J. Wierenga<br>Robert J. Wierenga (P59785)<br>Suzanne L. Wahl (P71364)<br>**Schiff Hardin LLP**<br>340 S. Main Street, Suite 210<br>Ann Arbor, MI 48104<br>734-222-1500<br>Fax: (734) 222-1501<br>rwierenga@schiffhardin.com<br>swahl@schiffhardin.com |
| **COUNSEL FOR DEFENDANTS TAKATA CORPORATION AND TK HOLDINGS INC.** | |

| | |
|---|---|
| | /s/Howard B. Iwrey<br>James P. Feeney (P13335)<br>Howard B. Iwrey (P39635)<br>Benjamin W. Jeffers (P57161)<br>David J. Council (P73163)<br>DYKEMA GOSSETT PLLC<br>39577 Woodward Avenue, Suite 300<br>Bloomfield Hills, MI 48304<br>248 203-0526<br>Fax: 248-203-0763<br>jfeeney@dykema.com<br>hiwrey@dykema.com |

| | bjeffers@dykema.com <br> dcouncil@dykema.com |
|---|---|
| **COUNSEL FOR DEFENDANTS TRW AUTOMOTIVE HOLDINGS CORP. AND TRW DEUTSCHLAND HOLDING GMBH** | |

| | |
|---|---|
| W. Todd Miller <br> BAKER & MILLER PLLC <br> 2401 Pennsylvania Ave., N.W. <br> Suite 300 <br> Washington, DC 20037 <br> 202-663-7820 <br> Fax: 202-663-7849 <br> tmiller@bakerandmiller.com | /s/ David F. DuMouchel <br> David F. DuMouchel (P25658) <br> Sheldon H. Klein (P41062) <br> George B. Donnini (P66798) <br> BUTZEL LONG PC <br> 150 W. Jefferson, Suite 900 <br> Detroit, MI 48226-4430 <br> 313-225-7000 <br> dumouchd@butzel.com <br> Klein@butzel.com <br> donnini@butzel.com |
| **COUNSEL FOR DEFENDANTS TRAM, INC. AND TOKAI RIKA CO., LTD.** | |

| | |
|---|---|
| Peter Kontio <br> ALSTON & BIRD <br> 1201 W. Peachtree Street, Suite 4000 <br> Atlanta, GA 30309-3424 <br> 404-881-7000 <br> Fax: 404-253-9690 <br> peter.kontio@alston.com | /s/ Joanne Geha Swanson <br> Joanne Geha Swanson (P33594) <br> Fred K. Herrmann (P49519) <br> Dwayne D. Stresman (P73283) <br> KERR, RUSSELL & WEBER PLC <br> 500 Woodward Avenue, Suite 2500 <br> Detroit, MI 48226-3406 <br> 313-961-0200 <br> jswanson@kerr-russell.com <br> fherrmann@kerr-russell.com |
| **COUNSEL FOR AUTOLIV DEFENDANTS** | |

## <u>CERTIFICATE OF SERVICE</u>

I, Robert J Wierenga, hereby certify that on October 21, 2013, I caused the foregoing

Defendants' Collective Motion to Dismiss the End-Payors' Consolidated Amended Class Action

Complaint and the Automobile Dealers' Consolidated Class Complaint to be electronically filed

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to all counsel of record.


_/s/ Robert J. Wierenga_
Robert J. Wierenga
Schiff Hardin LLP