## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Case No. 12-md-02311 Honorable Marianne O. Battani |
| ALL PARTS |  |
| THIS RELATES TO: ALL CASES |  |

## RESPONSE OF CERTAIN DEFENDANTS TO
## MOVING PLAINTIFFS' MOTION TO COORDINATE

Defendants Calsonic Kansei Corp., Diamond Electric Mfg. Corp., Diamond Electric Mfg. Co., Ltd., Ichikoh Industries, Ltd., Koito Manufacturing Co., Ltd., Mitsuba Corp., American Mitsuba Corp., Mitsubishi Heavy Industries America, Inc., Mitsubishi Heavy Industries Climate Control, Inc., Panasonic Corporation, Panasonic Corporation of North America, Robert Bosch LLC, Stanley Electric Co., Tokai Rubber Industries, Ltd., DTR Industries, Inc., Valeo, Inc., Valeo Electrical Systems, Inc., and Valeo Climate Control Corp. ("Deferred Defendants")[1] file this response to the Motion to Coordinate All Actions in MDL 2311 filed by End-Payor Plaintiffs, Auto Dealer Plaintiffs, The State of Florida, and the City of Richmond ("Moving Plaintiffs" or "Plaintiffs") (ECF No. 703).

---

[1] Deferred Defendants are named as defendants in actions related to the following products: Anti-Vibrational Rubber Parts, Windshield Wiper Systems, Radiators, Starter Coils, Automotive Lamps, Switches, Ignition Coils, Steering Angle Sensors, HID Ballasts, Fan Motors, Power Window Motors, Air Conditioning Systems, and Windshield Washer Systems ("Deferred Defendant Actions").

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ............................................................................. ii

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF THE ISSUE PRESENTED ..........................................v

INDEX OF MOST CONTROLLING AUTHORITY ............................. vi

PRELIMINARY STATEMENT ................................................................1

I.    The Deferred Defendant Actions Should Be Severed and Managed
      by Other Judges in the District Concurrently with the Earlier Cases..............4

      A.    The Deferred Defendant Actions, as Unrelated Actions, Were
            Never Contemplated or Intended to Be Part of this Single
            Proceeding, and Their Mounting Number Negates the Intended
            Efficiencies of Centralization and Coordination...................................4

      B.    Neither the JPML Order nor the Local Civil Rules Require
            that the Deferred Defendant Actions Remain Consolidated
            with the Automotive Parts MDL .........................................................10

      C.    Transfer of Deferred Defendant Actions to Additional Judges
            Would Be "Just and Efficient" in Contrast to the Ineffectual,
            Inefficient, and Prejudicial Tranche Approach Proposed by
            Plaintiffs .............................................................................................16

II.   Moving Plaintiffs' Proposal Is Rife with Problems and Threatens to
      Prejudice Defendants' Rights ......................................................................18

      A.    The Proposed Barriers to Filing Motions to Dismiss Violate
            Defendants' Due Process Rights and Do Not Promote Efficiency.....19

      B.    Moving Plaintiffs' Proposal to Interminably Delay and Coordinate
            The Consideration of Class Certification Is Contrary to Procedural
            Fairness and the Federal Rules...........................................................21

      C.    Moving Plaintiffs' Proposals on Coordination of Discovery Is
            Unworkable .........................................................................................22

CONCLUSION .......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Genesee Cnty. v. Greenstone Farm Credit Servs., ACA*,
    No. 12–14460, 2012 WL 5990047 (E.D. Mich. Nov. 30, 2012)........................14

*Grutter v. Bollinger*,
    16 F. Supp. 2d 797 (E.D. Mich. 1998) ............................................................14

*In re Air Crash Disaster Near Chicago, Ill.*,
    476 F. Supp. 445 (J.P.M.L. 1979) ..................................................................15

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
    771 F. Supp. 415 (J.P.M.L. 1991) ..................................................................15

*In re Automotive Parts Antitrust Litig.*,
    Transfer Order (E.D. Mich. June 12, 2012), ECF No. 117 ......................4, 9, 11

*In re Janus Mut. Funds Inv. Litig.*,
    310 F. Supp. 2d 1359 (J.P.M.L. 2004) ...........................................................15

*In re Library Editions of Children's Books*,
    297 F. Supp. 385 (J.P.M.L. 1968) ..................................................................15

*RDI of Mich., LLC v. Mich. Coin-Op Vending, Inc.*,
    No. 08–cv–11177, 2008 WL 1902059 (E.D. Mich. Apr. 29, 2008) .................14

*Siggers v. Campbell*,
    No. 07-12495, 2008 WL 4277300 (E.D. Mich. Sept. 17, 2008) .......................14

STATUTES

28 U.S.C. § 1407(b) ..............................................................................................15, 16

Fed. R. Civ. P. 12 ..................................................................................................19, 20

Fed. R. Civ. P. 23 ...............................................................................................1, 17, 22

Fed. R. Civ. P. 26(a)(1).............................................................................................24

J.P.M.L. R. P. 1.1(h), 7.1(b)......................................................................................12

J.P.M.L. R. P. 7.2(a) .................................................................................. 12

**OTHER AUTHORITIES**

L. Civ. R. 7.1(a) ..................................................................................... 19

L. Civ. R. 83.11(b) ............................................................................13, 15

Eric Holder, Attorney General, U.S. Dep't of Justice, Remarks as Prepared
    for Delivery at Auto Parts Press Conference (Sept. 26, 2013),
    http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-
    1309261.html. ................................................................................. 10

Press Release, DOJ, Nine Automobile Parts Manufacturers and Two
    Executives Agree to Plead Guilty to Fixing Prices on Automobile Parts
    Sold to U.S. Car Manufacturers and Installed in U.S. Cars (Sept. 26,
    2013), *available at* http://www.justice.gov/opa/pr/2013/September/13-at-
    1074.html. ........................................................................................ 8

Hon. Marianne O. Battani, Motion Practice Guidelines,
    http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=4 .......... 19

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

1. Whether unrelated actions with different defendants and different alleged conspiracies involving different scopes in terms of alleged conduct, time periods, victims, and products, should be coordinated in one MDL as proposed by Moving Plaintiffs, or whether it is most appropriate to reassign the Deferred Defendant Actions to other judges in this district.

2. Whether Moving Plaintiffs' proposed methods of coordination would infringe Deferred Defendants' due process rights and fail to achieve genuine efficiency.

## <u>INDEX OF MOST CONTROLLING AUTHORITY</u>

1. L. Civ. R. 83.11(b)

2. *Genesee Cnty. v. Greenstone Farm Credit Servs., ACA*, No. 12–14460, 2012 WL 5990047 (E.D. Mich. Nov. 30, 2012)

3. *In re Automotive Parts Antitrust Litig.*, Transfer Order (E.D. Mich. June 12, 2012), ECF No. 117

## PRELIMINARY STATEMENT

Moving Plaintiffs' Motion for Coordination seeks efficiency for some at the expense of the rights of most defendants.  For the majority of defendants, Moving Plaintiffs' proposal is simple:  standby and wait under a cloud of litigation where rulings in unrelated earlier-filed actions will be binding, possibly years before even being served with operative consolidated amended complaints.  These Deferred Defendants, under Moving Plaintiffs' proposal, have no hope of obtaining the "just and efficient" resolution of their actions that the Federal Rules promise.  Deferred Defendants would have to forego their right to have early dismissal motions heard and would have the determination of whether their cases should be certified as class actions delayed for years, as opposed to the earliest possible time, as Rule 23 requires.  The solution is for the presently stalled Deferred Defendant Actions to be severed and reassigned by this Court to additional judges in this District, so that each unrelated matter can be put on a schedule that is both just and efficient.

Plaintiffs say their proposal provides a way for the "just and efficient" resolution of MDL 2311.  But it will be incredibly burdensome on this Court to coordinate the cases in MDL 2311, as it has vastly overgrown its originally contemplated scope and contains too many unrelated actions and defendants for any one court to justly and efficiently manage in a single proceeding.  This is not the efficient resolution that this MDL was intended to accomplish.  Nor would the

proposed coordination be just for the Deferred Defendants or consistent with the local rules of this District, since most of the cases joined together are not in any way related.  The array of unrelated cases that Plaintiffs propose to coordinate involves (i) different defendants, (ii) different alleged conspiracies, (ii) different scopes in terms of alleged conduct, time periods, and victims, and (iv) different products.  Indeed, the cases involving Deferred Defendants, in which virtually no activity has taken place, bear no factual relationship to the original MDL, other than that they all involve different automotive parts.

Through no fault of this Court, the number of unrelated cases lumped together in this proceeding has become unwieldy, and threatens to grow even larger.  As a result, rather than organizing scores of unrelated cases into arbitrary tranches and putting later-filed cases on ice until earlier ones are resolved as Plaintiffs request, Deferred Defendants respectfully propose that the Court sever their unrelated cases from the MDL and reassign them.  Distributing unrelated actions to other judges is a proven method of adjudicating cumbersome complex cases, especially where the litigants are better and more justly served by having the unique facts of each proceeding considered separately.  Such a severance is consistent with the terms of the MDL and the local rules of this District and will ensure that this proceeding does not exhaust this Court's limited judicial resources.

Moving Plaintiffs' proposal for coordination ignores the significant differences among the many unrelated cases that currently comprise MDL 2311. Far from promoting efficiency, Moving Plaintiffs' Motion highlights how coordinating such a large number of unrelated cases before one court can become unworkable and unjust.  There is no reason to administer in a single court dozens of cases brought by different groups of plaintiffs, against different defendants, based on different factual allegations, involving different alleged conspiracies of different scopes and different time periods, which are at different procedural stages and which are subject to different discovery limitations at the request of the Department of Justice ("DOJ").  Dissimilar cases should not be lumped together.

Deferred Defendants agree that if the current MDL structure remains in place, the parties should, to the extent possible, work together to ensure that the unrelated cases within MDL 2311 move forward as efficiently as possible in light of their significant differences.  However, any attempt to do so under Plaintiffs' proposal would be quixotic and not serve the interests of the parties or the Court. By contrast, ordering a severance and reassignment of the Deferred Defendant Actions to other judges in this District would advance the interests of all concerned, conserve the resources of this Court, and further the principles of efficiency and justice embodied in both the local rules and Federal Rules of Civil Procedure.

## **ARGUMENT**

I.   **The Deferred Defendant Actions Should Be Severed and Managed by Other Judges in the District Concurrently with the Earlier Cases**

A. **The Deferred Defendant Actions, as Unrelated Actions, Were Never Contemplated or Intended to Be Part of this Single Proceeding, and Their Mounting Number Negates the Intended Efficiencies of Centralization and Coordination**

There is no dispute that this MDL is historic in scope and complexity.  Mot. at 3.  However, the MDL was never contemplated or intended to grow this large, with so many different unrelated parts, defendants, and claims.   The JPML originally consolidated only automotive wire harness actions, and then expanded the consolidation to include three additional part categories (instrument panel clusters, fuel senders, and heating control panels).  *In re Automotive Parts Antitrust Litig.*, Transfer Order, at 3 (E.D. Mich. June 12, 2012), ECF No. 117.  The JPML held that although it is generally "hesitant to bring together actions naming separate defendants and involving separate products," the consolidation of these four products would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation" because of the significant overlap of the defendants.  *Id.*

Since then, without any further action from the JPML, MDL 2311 has swelled at least sevenfold to a group of cases that are completely unrelated to the original actions, with non-overlapping defendants and cases that were never

reviewed by the JPML.  And MDL 2311 continues to expand — without any end in sight.  The MDL has grown from the original 4 sets of cases to 29 Lead Cases,[2] involving approximately **86** Defendants.  Many of these Lead Cases have multiple tracks of direct purchaser, dealership, end-payor, governmental entities, or direct action cases, such that there are literally hundreds of different cases now in one single consolidated litigation.[3]

This unbridled growth has occurred by the addition of largely unrelated actions — a result that was not intended by either the JPML or the local rules of this District.  The result is a situation where scores of later filed cases involving different parts and unrelated defendants now far outnumber the cases involving the original four parts consolidated by the JPML.  The 18 Deferred Defendants joining in this Motion, and the actions filed against them, have no relation to the first four cases consolidated by the JPML, the other cases, or each other.  As a result, there are vast differences with respect to the issues presented in the various cases that

---

[2] The 25 additional Lead Cases added after the JPML's consolidation include: Occupant Safety Systems, Bearings, Alternators, Anti-Vibrational Rubber Parts, Radiators, Starter Motors, Windshield Wipers, Automotive Lamps, Ignition Coils, Switches, Electric Power Steering Assemblies, HID Ballasts, Inverters, Motor Generators, Steering Angle Sensors, Air Flow Meters, Fan Motors, Fuel Injection Systems, Automatic Transmission Fluid Warmers, Electronic Throttle Bodies, Power Window Motors, Valve Timing Control Devices, Air Conditioning Systems, Windshield Washer Systems, and Constant Velocity Joint Boots.

[3] *See In re Automotive Parts Antitrust Litig.*, Case Management Protocol Order, 2:12-md-02311, at ¶¶ 3-6 (E.D. Mich. Dec. 23, 2013), ECF No. 665.

make just and efficient coordination of these actions impossible.  For example, in the first six product categories,[4] the direct and indirect purchaser actions have proceeded though the pleading stages.  However, the actions for the remaining 23 product categories have stalled.[5]  Plaintiffs' Motion would not remedy this problem, but instead would exacerbate it by ensuring that substantive motions in the Deferred Defendant Actions could not be filed or heard until after many other unrelated cases proceed ahead of them — delaying the just and efficient consideration of these cases by years.

Differences that cry out for a severance of the Deferred Defendant Actions abound:

- Defendants have not been served in many cases — meaning that many named Defendants will not have an opportunity to be heard on this motion.  ECF No. 674, Ex. 1.

- Consolidated amended complaints have not been filed in most cases.

---

[4] Wire-Harness Systems, Instrument Panel Clusters, Fuel Senders, Heating Control Panels, Occupant Safety Systems, and Bearings (collectively, the "Active Product Categories").

[5] Alternators, Anti-Vibrational Rubber Parts, Radiators, Starter Motors, Windshield Wipers, Automotive Lamps, Ignition Coils, Switches, Electric Power Steering Assemblies, HID Ballasts, Inverters, Motor Generators, Steering Angle Sensors, Air Flow Meters, Fan Motors, Fuel Injection Systems, Automatic Transmission Fluid Warmers, Electronic Throttle Bodies, Power Window Motors, Valve Timing Control Devices, Air Conditioning Systems, Windshield Washer Systems, and Constant Velocity Joint Boots.

- Motions to dismiss have been briefed or decided in only 6 Lead Cases, while the rest of the litigations stand by and wait.

- Discovery is actively underway in only one Lead Case, and most are not even close to that posture.

- The majority of cases do not have direct purchaser suits (Mot. Ex. A) and whether there will ever be direct purchaser suits filed is unknown.

- 27 Defendant families, consisting of about **70** different Defendant companies, are named only in one product case (Mot. Ex. B). [6]

Most importantly, each of the Deferred Defendant Actions is factually different. They involve allegations of different individual conspiracies related to different individual product categories. Plaintiffs have not, and could not, allege a single conspiracy related to all automotive parts, and these actions cannot be treated as such. As each of the alleged conspiracies are unique, each action will necessarily involve unique issues, unique facts, and unique discovery. Indeed, these factual distinctions are one of the reasons that the DOJ Discovery Stay applies differently to the later filed actions. The DOJ has thus made it clear that it

---

[6] Twelve of the Deferred Defendants have been named as a Defendant for only a single product.

is treating each of the product categories as involving "separate conspiracies" and will only consent to the discovery stay being lifted on a case-by-case basis.[7]

Ignoring these differences, Moving Plaintiffs' Motion for Coordination attempts to place all of the cases in arbitrary "tranches."  This flatly contradicts Plaintiffs' prior acknowledgements that the cases are each distinct and should proceed on separate tracks.  *See, e.g.*, *In re Automotive Parts Antitrust Litig.*, Transcript of Status Conference held on June 15, 2012, at 17:14-24 (E.D. Mich. June 8, 2012), ECF No. 136 ("[T]here will be a separate case management order … . [T]he complaint that's filed in wire harness really is not involved in any way in…the consolidated amended complaint that ends up being filed with the IPC case." (Fink)); *id.* at 32:8-9 ("[D]ifferent products are going to be obviously in separate tracks." (Damrell)); *id.* at 34:7 ("[I]t will have its own track, its own scheduling." (Salzman)).  Moreover, the Court has made clear that each part should be treated as a separate action because they are each different.  *See In re Automotive Parts Antitrust Litig.*, Transcript of Status Conference held on July 10, 2013, at 58:14-17 (E.D. Mich. July 31, 2013), ECF No. 566 ("I can assure you every part will be handled separately if that's what is called for."); *id.* at 41:22 -

---

[7]   *See* Press Release, DOJ, Nine Automobile Parts Manufacturers and Two Executives Agree to Plead Guilty to Fixing Prices on Automobile Parts Sold to U.S. Car Manufacturers and Installed in U.S. Cars (Sept. 26, 2013) (available at http://www.justice.gov/opa/pr/2013/September/13-at-1074.html).

42:2 ("[T]hese parts are different and they may very well have different issues.");

*see also id.* at 36:14-15 ("I don't want any part to say they got less pages than

another part.").[8] Even the JPML Transfer Order recognized that the first four parts

that were consolidated would need to proceed as separate cases on independent

tracks. *In re Automotive Parts Antitrust Litig.*, Transfer Order, at 3 (E.D. Mich.

June 12, 2012), ECF No. 117 ("[T]he transferee court can employ any number of

pretrial techniques, such as establishing separate discovery and/or motion tracks, to

manage pretrial proceedings efficiently. Indeed, Judge Battani has already

employed such methods . . . and she has stated her intention to continue such a

practice with regard to the actions alleging separate conspiracies.")). In asking the

Court to abandon the separate tracks in favor of haphazard groupings, Moving

Plaintiffs ignore the factual and procedural distinctions that gave rise to the notion

of separate tracks.

The MDL has grown beyond contemplation and continues to grow even

further in a manner that defies management by a single judge. Instead of accepting

the consequence of this growth — that the cases should be severed and allocated to

other judges — Moving Plaintiffs advance a proposal that would completely

---

[8] Plaintiffs even agreed with the Court's assessment that there is "some agreement
that every part be like a track" and that "each part will have its own case
basically." *Id.* at 24:20 - 25:1 (The Court; Damrell).

trample the rights of the Deferred Defendants and do nothing to advance a just and efficient resolution of these cases.

Further, there is every reason to believe that more cases involving new products and new defendants will continue to pile up.  Moving Plaintiffs' proposal does not address this prospect, even though counsel for Plaintiffs have previously stated that there are a number of cases involving additional products that have yet to be filed.[9]  If left as is or if Moving Plaintiffs' Motion is granted, the existing MDL will end up mushrooming in vast and unpredictable directions, placing an ever-increasing burden on judicial resources and further diminishing the rights of Deferred Defendants and future parties' rights in the judicial system.

### B. Neither the JPML Order nor the Local Civil Rules Require that the Deferred Defendant Actions Remain Consolidated with the Automotive Parts MDL

There is no legal requirement mandating that any automotive parts cases filed after the first four remain together in MDL 2311.  In fact, transfer of one or

---

[9]  Similarly, the DOJ has explained that its "investigation is highly complex, wide-ranging in scope, and likely will involve investigations and prosecutions of additional corporations and individuals" beyond those that have been made public to date.  Motion and Brief of the U.S. to Intervene at 3, *In re Automotive Parts Antitrust Litig.* (E.D. Mich. July 8, 2013), ECF No. 556.  In September 2013, Attorney General Eric Holder made clear that "[d]uring the course of [the DOJ's] wide-ranging investigation, . . . [it has] continued to find more and more parts that are involved" and that the DOJ's "work isn't done."  *See* Eric Holder, Attorney General, U.S. Dep't of Justice, Remarks as Prepared for Delivery at Auto Parts Press Conference (Sept. 26, 2013), http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-1309261.html.

more actions involving the Deferred Defendant Actions to other judges in this District would be consistent with the JMPL's June 2012 Transfer Order. *See In re Automotive Parts Antitrust Litig.*, Transfer Order (E.D. Mich. June 12, 2012), ECF No. 117. When the JPML consolidated the four initial automotive part categories, it did not require the continued consolidation of actions filed solely in the Eastern District of Michigan related to new product categories. The JPML's decision only concerned the consolidation of a limited number of identified automobile components — Wire Harness Systems, Instrument Panel Clusters, Fuel Senders, and Heating Control Panels. *Id.* The Order makes no mention whatsoever about new automotive part categories yet to be filed.

The mere fact that the JPML renamed MDL 2311 the "Automotive Parts Antitrust Litigation" did not extend the scope of the MDL to every potential antirust claim related to any component part of any automobile. An MDL of that scope would be unprecedented and is not in line with the JPML's stated hesitancy in combining actions involving separate defendants and products or its previous consolidations. *See id.* For example, since 2002, a series of antitrust MDLs relating to consumer electronic components have been centralized in the Northern District of California and assigned to over a half dozen different District Judges. Each of these MDLs relate to different consumer electronic component parts, different products, different defendants, and different alleged conspiracies that, on

their own, were exceedingly complex (*see* Dynamic Random Access Memory, Static Random Access Memory, Graphics Processing Units, Cathode Ray Tubes, TFT-LCD Flat Panels, Optical Disk Drives, and Lithium Ion Batteries).[10] It would have been impossible and impracticable for a single district judge to efficiently and effectively oversee all of these cases as a single massive MDL under the name In re Consumer Electronic Parts Antitrust Litigation MDL.

Moreover, the jurisdiction of the JPML does not extend to the Deferred Defendant Actions, which allows this Court to manage them on its own. The JPML can only order that cases which are filed in other District Courts and identified by the parties as "tag-along" actions to MDL 2311 be transferred to this District for consolidation, after providing the parties notice and an opportunity to be heard. J.P.M.L. R. P. 1.1(h), 7.1(b). However, the Deferred Defendant Actions were all filed in the Eastern District of Michigan and, as such, were not identified as potential "tag-along" actions subject to the JMPL's Transfer Order. *See* J.P.M.L. R. P. 7.2(a). Instead, they were added to MDL 2311 by virtue of the local

---

[10] *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) (Hamilton, J.); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, MDL No. 1819 (N.D. Cal.) (Wilken, J.); *In re Graphics Processing Units Antitrust Litig.*, MDL No. 1826 (N.D. Cal.) (Alsup, J.); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) (Illston, J.); *In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917 (N.D. Cal.) (Conti, J.); *In re Optical Disk Drive Antitrust Litig.*, No. 10-cv-2143, MDL No. 2143 (N.D. Cal) (Seeborg, J.); *In re Lithiom Ion Batteries Antitrust Litig.*, MDL No. 2420 (N.D. Cal.) (Rogers, J.).

rules and without the named Defendants being given a meaningful opportunity to be heard on whether their case should become part of MDL 2311.

This District's Local Civil Rules similarly do not require that the actions in the Deferred Defendant Actions remain consolidated with MDL 2311 as "companion" cases.  Companion cases are only those in which "substantially similar evidence will be offered at trial" or "the same or related parties are present and the cases arise out of the same transaction or occurrence."  L. Civ. R. 83.11(b)(7)(A).  The relevant evidence for these vastly different and unrelated actions and alleged conspiracies will not be "substantially similar," and none of the cases "arise out of the same transaction or occurrence" as any of the earlier actions or any of the other cases.  Here, the "same transaction" must mean the same conspiracy impacting the same product.  Extending the meaning to different conspiracies impacting the same "industry" would result in an artificial consolidation of unrelated cases, like it has done here.  It is inconceivable that there would be any efficiencies or overlapping discovery in combining a case involving an alleged conspiracy involving certain defendants selling parts to German automobile manufacturers in Germany during one period with a case involving an alleged conspiracy with other defendants selling a different part to Japanese automobile companies in Japan during a different period.

Each of the Deferred Defendant Actions for individual automotive part categories relate to unique alleged conspiracies involving dissimilar sets of defendants and different relevant time periods.   Accordingly, consolidation of these actions with MDL 2311 is not required under the Local Civil Rules and was never contemplated by those Rules.  *See Genesee Cnty. v. Greenstone Farm Credit Servs., ACA*, No. 12–14460, 2012 WL 5990047, at *1-2 (E.D. Mich. Nov. 30, 2012) (finding cases involving the same issue are not companions when distinct evidence is offered against separate and unrelated defendants); *Siggers v. Campbell*, No. 07-12495, 2008 WL 4277300, at *1 (E.D. Mich. Sept. 17, 2008) (Battani, J.) (finding that cases are not substantially similar and would require substantially different evidence when one "case arises from conduct that occurred well after the conduct that gave rise to the earlier case"); *RDI of Mich., LLC v. Mich. Coin-Op Vending, Inc.*, No. 08–cv–11177, 2008 WL 1902059, at *1-2 (E.D. Mich. Apr. 29, 2008) (finding that common theme, question, or important issue does not mean that evidence presented at trials will be substantially similar); *Grutter v. Bollinger*, 16 F. Supp. 2d 797, 805 (E.D. Mich. 1998) ("While the general legal issue . . . is the same in both cases, this is not the test under this court's companion case rule.").

The Local Civil Rules further provide that actions may be reassigned to "promote docket efficiency."   Creating additional consolidated actions for the

Deferred Defendant Actions would be the optimal approach for achieving such "docket efficiency."  L. Civ. R. 83.11(b)(2).  Similarly, the JPML has recognized that particularly large and complex multidistrict litigations may be apportioned among one or more District judges.  *See, e.g.*, *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361-62 & n.6 (J.P.M.L. 2004) (assigning a multidistrict litigation to multiple transferee judges because the litigation "encompasses complex claims against multiple [defendants] by a vast number of plaintiffs/putative class members which could potentially . . . consume much attention from one transferee judge"); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 423 (J.P.M.L. 1991) ("[T]he Panel has long expressed its willingness to appoint additional transferee judges in litigations whose size and complexity make it difficult for the original transferee judge to handle § 1407 proceedings alone."); *In re Air Crash Disaster Near Chicago, Ill.*, 476 F. Supp. 445, 450 (J.P.M.L. 1979) ("Section 1407 transferee judge does, of course, have the power under Section 1404(a) to transfer actions in the transferee district to that district or to any other appropriate district for all purposes."); *In re Library Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968) ("[D]elays caused by calendar congestion may be avoided by the appointment of a judge for all purposes within the district . . . in accordance with Section 1407(b)."); 28

U.S.C. § 1407(b) ("With the consent of the transferee district court, such actions may be assigned by the panel to a judge or judges of such district.").

### C. Transfer of Deferred Defendant Actions to Additional Judges Would Be "Just and Efficient" in Contrast to the Ineffectual, Inefficient, and Prejudicial Tranche Approach Proposed by Plaintiffs

Plaintiffs' Motion for Coordination simply underscores the manageability problems and delay that will continue to plague the Deferred Defendant Actions if they remain yoked by Plaintiffs' proposed tranches. Moving Plaintiffs contend that their proposal will promote speed and efficiency, but the reality for the Deferred Defendants is that the Motion, if granted, will guarantee continued and prolonged inaction and delay for their cases.

As of February 2013, 23 actions have been filed where the only action to have occurred is the service of a complaint. Cases continue to pile up, with a new case filed just this month. *In re Automotive Constant Velocity Joint Boot Products*, No. 2:14-cv-02900 (E.D. Mich. May 1, 2014). Plaintiffs' proposal does not address when or how further new actions will proceed or even detail when or how the dozens of already existing cases will proceed. Instead, Moving Plaintiffs propose to arbitrarily organize all of the exiting cases in tranches, with each tranche proceeding at an undetermined time after the filing of consolidated amended complaints on a "tranche by tranche" basis in 90-day cycles. Mot. at 13.

Under Plaintiffs' so-called "streamlined" procedures, this would mean, for example, that the Panasonic Defendants in Tranche Five would wait almost a whole additional year before their cases even commence.   Under Plaintiffs' proposal, there would be no hope for class certification to be decided at an early time in the litigation, as required by Rule 23.  Fed. R. Civ. P. 23(c)(1) (the Court must decide whether to certify the class "[a]t an early practicable time after a person sues").  Such class certification proceedings are not even on the horizon for the Deferred Defendant Actions and would have to be conducted years after these issues are first resolved in earlier filed, but wholly unrelated cases.

In addition, Moving Plaintiffs' tranches do not address Deferred Defendants' significant concerns about the prospect of fairly and efficiently overseeing discovery.  Once some of the actions proceed beyond the preliminary discovery phase, the discovery proceedings burden on the Court will increase exponentially. With hundreds of cases as part of the same MDL, discovery disputes could well become everyday occurrences that would require constant judicial attention.[11] Most of the discovery issues will require individual determinations on a case-by-case and party-by-party basis, as the facts, discovery burdens, and issues of

---

[11] The appointment of a Special Master would not create efficiencies in resolving discovery disputes because the nature of any discovery dispute is likely to be idiosyncratic.  Indeed, the very basis for this motion — the level and nature of differences across defendants, across parts, and across Plaintiffs' allegations — foreshadow that discovery disputes will be just as diversified and based on dissimilar and unique circumstances.

relevance will vary from case-to-case, party-to-party, and issue-to-issue. They cannot be resolved in arbitrary tranches. These intractable problems will only mount as multiple unrelated discovery proceedings get underway.

Further, to the extent that there is a legitimate need for some limited coordination of discovery among the actions in the future, this can just as easily be achieved among the different judges assigned to hear the Deferred Defendant Actions. Such limited discovery coordination among different courts can achieve any real efficiencies that are desirable while still taking account of the major differences between the actions and the need to treat each case according to its own unique set of facts and issues.

Finally, since the Deferred Defendant Actions have not proceeded at all since they were initially filed, it would be easy to reassign them in a smooth transition without creating any prejudice to any party. Separation into different actions would promote a convenient and efficient system that mirrors the original benefits identified by the JPML, and prevent the overwhelming judicial congestion that has resulted from the expanding size and scope of MDL 2311.

## II. MOVING PLAINTIFFS' PROPOSAL IS RIFE WITH PROBLEMS AND THREATENS TO PREJUDICE DEFENDANTS' RIGHTS

In the event the Court is not inclined to sever certain case in the MDL, Moving Plaintiffs' proposal should still be denied for the following reasons.

**A. The Proposed Barriers to Filing Motions to Dismiss Violate Defendants' Due Process Rights and Do Not Promote Efficiency**

The Deferred Defendants do not object to engaging in substantive meet and confer sessions prior to filing motions to dismiss.[12]   That is the essence of the competing proposal many defendants proposed to the plaintiffs, attached hereto as Exhibit A.   Moving Plaintiffs did not even consider this proposal — but instead filed this Motion the very next day without satisfying the requirements of E.D. Mich. L.R. 7.1(a)).[13]   Moving Plaintiffs propose a fundamentally unfair protocol that would deny defendants in later tranches their due process rights while simultaneously creating extra steps that would slow down this litigation.

*First*, the idea that defendants must submit a three-page statement asking this Court for permission to file a motion expressly authorized by Rule 12(b) is fraught with problems.   This cannot be squared with Deferred Defendants' due process rights or the language of Rule 12, which allows a party to "defenses by

---

[12]   The unjust nature of the way that Plaintiffs are handling the current consolidation of cases and of Plaintiffs' Motion is highlighted by the fact that Plaintiffs filed the present Motion without conferring with all of the served Deferred Defendants and did not file the Motion in all of the cases such that several Deferred Defendants did not timely become aware of the Motion. Moreover, defendants who have not yet been served have no mechanism for learning of or responding to the Motion.

[13]   The Court's guidelines specifically provide that "[c]ounsel must comply with E.D. Mich. LR 7.1(a) and seek concurrence before filing a motion."   Hon. Marianne   O.   Battani,   Motion   Practice   Guidelines, http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=4   19.

motion" and mandates that certain challenges **must** be made by motion or they are waived.  Fed. R. Civ. P. 12(b).

*Second*, the process of asking for permission creates yet another motion for the Court to consider.  The process itself will undoubtedly lead to further challenges as to whether permission was properly granted, as well as motions for reconsideration or interlocutory review.  These issues simply invite collateral litigation that will slow down rather than streamline the hundreds of cases.

*Third*, notwithstanding that Moving Plaintiffs style their motion as one calling for greater coordination, part of the relief they seek is an order prohibiting defendants from coordinating with one another to file joint briefs.  This makes no sense for efficiency.  Indeed, in most MDL cases, defendants coordinate their briefing where possible and often submit joint briefs.  This leads to the best presentation of defendants' legal arguments, *reduces* the number of briefs submitted, and *reduces* the burden on the Court.

*Fourth*, without regard to any differences in defendants, differences in allegations, differences in pleadings, or in the fact that there are complaints that have yet to be filed, Moving Plaintiffs propose to erect across-the-board barriers to all future motions to dismiss.  They urge, among other things, to limit opening briefs to 10 pages and reply briefs to 7 pages, and to create a presumption against oral argument.  Given the number of claims asserted in most of the cases and the

complexity of the issues, some with lengthy complaints more than 100 pages long invoking dozens of state specific statutes, Deferred Defendants need sufficient pages of briefing to discuss the issues in enough detail to assist the Court and to preserve their rights on appeal.

Boiled down, Moving Plaintiffs want either to bar Deferred Defendants in later cases from filing motions to dismiss or to put so many constraints on those motions that they are almost pre-ordained to be perfunctorily and summarily denied.  Even if certain arguments are unsuccessful in one case, each Defendant in each case needs the ability to file a motion to dismiss reflecting the particular facts of its cases and its presentation of a constantly developing body of law.  Moving Plaintiffs' portrayal of these motions as a waste of time is unfounded.

### B. Moving Plaintiffs' Proposal to Interminably Delay and Coordinate The Consideration of Class Certification Is Contrary to Procedural Fairness and the Federal Rules

Under the guise of promoting efficiency, Moving Plaintiffs propose to delay consideration of class certification indefinitely and then have that issue decided in one fell swoop across all of the cases.  This is nothing more than a transparent attempt to avoid the requirements of the Federal Rules and the early adjudication of an issue that will be difficult, if not impossible, for the Moving Plaintiffs to satisfy in most, if not all cases.  The transparent goal of Moving Plaintiffs is to postpone the time when it is determined whether a case may proceed as a class

action and thereby increase their leverage to try to extract settlements based not on the relative merits of their claims, but rather on the increased burden on Defendants of continuing protracted litigation.

There is no legal justification for such a delay.  To the contrary, Rule 23 requires that class certification be determined at an "early practicable time," Fed. R. Civ. P. 23(c)(1)(A), because of the recognition that class certification is a critical juncture that can lead to a resolution of complex cases sooner rather than later.  Moving Plaintiffs say that they need to learn the nature of the collusion to be able to effectively argue that a class should be certified, but that is only true with respect to the collusion allegedly affecting each part at issue in each particular case.  There is no reason to delay one part from proceeding to class certification while the other parts are litigated.  Nor is there any basis to consider the class certification issue other than on a case-by-case basis, as the facts will be entirely different in each case.  Moving Plaintiffs' attempt to delay and conflate the Court's consideration of the critical class certification issue in each litigation should be rejected out of hand.

### C. Moving Plaintiffs' Proposals on Coordination of Discovery Is Unworkable

***Depositions.***  It makes sense that parties to an MDL should endeavor to ensure that Deferred Defendants' personnel, plaintiffs, and third-parties are deposed only a limited number of times.  But an absolute rule here is unworkable

and threatens to prejudice the rights of defendants in the later filed cases. Since neither answers nor motions to dismiss have been filed in most of these cases, discovery is nowhere close to even starting in the Deferred Defendant Actions, and Deferred Defendants will thus be at a severe disadvantage trying to participate in depositions taking place in the earlier filed cases.

Further, Moving Plaintiffs' proposal glosses over the many practical issues associated with an "only one deposition" rule. If there is only one deposition, who gets to attend, who gets to ask questions, and for how long? Will a single witness sit for a week of depositions days or more if the numerous cases requires this? How will the parties manage access to documents covered by a Protective Order in another case, but not by the Protective Order in the case in which the party's counsel has appeared? These and other practical issues need to be considered and addressed before any limits are imposed. One thing is clear now, however: the due process rights of the defendants later-filed cases should not be compromised.

***Written Discovery and Transactional Data.*** Deferred Defendants should not be required prematurely to produce transactional data and other discoverable information not authorized by the Federal Rules of Civil Procedure, before responding to consolidated amended complaints, and especially where Plaintiffs have not even filed such complaints. Discovery should proceed consistent with the

Federal Rules in each case, based on complaints that this Court has found to be sufficiently pleaded to state a claim.

Plaintiffs' request for disclosure of certain information, such as information underlying plea agreements or alleged admissions about "collusive conduct," is particularly troublesome.  Discovery of such information is not authorized under Rule 26(a)(1), and certainly should not be imposed by one sweeping rule without considering the unique circumstances of each defendant.

The request for transactional data is also not something that can be managed by a blanket rule.  Because each case is unique with different defendants, different products and alleged conspiracies, and thus different sets of data in different forms, the only practical solution is for the parties to confer in each case to develop a reasonable timeline in light of the circumstances applicable to each Defendant in each case.  The same applies to plaintiffs' transactional data, which will also need to be produced.  Plaintiffs' one-size-fits-all approach simply does not work.

## CONCLUSION

Moving Plaintiffs' proposals fail to achieve efficiency and would deprive Deferred Defendants of justice and their most basic procedural rights.  Moving Plaintiffs' Motion, however, does highlight how unwieldy and inefficient this mushrooming MDL of unrelated actions has become.  For the foregoing reasons, the Moving Plaintiffs' Motion should be denied and the Court should sever the Deferred Defendant Actions from the MDL and have them reassigned to other judges in this District — a procedure that will assure that all parties can have their unrelated litigations determined in an efficient and just manner.

Dated:  May 27, 2014                      Respectfully Submitted,


                                           /s/Jeffrey L. Kessler_____
                                          Jeffrey L. Kessler
                                          A. Paul Victor
                                          Eva W. Cole
                                          Jeffrey J. Amato
                                          Brandon W. Duke
                                          **WINSTON & STRAWN LLP**
                                          200 Park Avenue
                                          New York, NY 10166-4193
                                          (212) 294-6700
                                          Fax: (212) 294-4700
                                          jkessler@winston.com
                                          pvictor@winston.com
                                          ewcole@winston.com
                                          jamato@winston.com
                                          bduke@winston.com


                                           /s/ Fred K. Herrmann_____
                                          Fred K. Herrmann (P49519)
                                          **KERR, RUSSELL AND WEBER, PLC**

500 Woodward Avenue, Suite 2500
Detroit, MI  48226
Tel:  (313) 961-0200
Fax: (313) 961-0388
fherrmann@kerr-russell.com

*Counsel for Defendants Panasonic Corporation and Panasonic Corporation of North America*

 /s/ George A. Nicoud III (with consent)
Joel S. Sanders
George A. Nicoud III
Austin Schwing
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105
(415) 393-8200
Facsimile: (415) 393-8306
JSanders@gibsondunn.com
TNicoud@gibsondunn.com
ASchwing@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation and American Mitsuba Corporation*

 /s/ Howard B. Iwrey (with consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel:  (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore @dykema.com

Frank Liss
Barbara H. Wootton
Tiana Russell

Lauren K. Peay
**ARNOLD & PORTER LLP**
555 Twelfth Street NW
Washington, DC 20004
Tel:  (202) 942-5969
Fax: (202) 942-5999
frank.liss@aporter.com
barbara.wootton@aporter.com
tiana.russell@aporter.com
lauren.peay@aporter.com

*Counsel for Defendant Koito*
*Manufacturing Co., Ltd.*

 /s/ Steven A. Reiss (with consent)
Steven A. Reiss
Adam C. Hemlock
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

*Counsel for Calsonic Kansei Corporation*

 /s/ Brian Byrne (with consent)
Brian Byrne
Ryan Davis
**CLEARY GOTTLIEB STEEN &**
**HAMILTON LLP**
2000 Pennsylvania Avenue NW
Washington, DC 20006
(202) 974-1850
Facsimile: (202) 974-1999
bbyrne@cgsh.com
rmdavis@cgsh.com

 /s/ Howard B. Iwrey (with consent)
Howard B. Iwrey (P39635)

**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
(248) 203-0526
Facsimile: (855) 232-1791
hiwrey@dykema.com

*Counsel for Valeo, Inc., Valeo Electrical Systems, Inc., and Valeo Climate Control Corp.*

 /s/ Matthew J. Reilly (with consent)
Matthew J. Reilly
Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
1155 F Street, NW
Washington, DC 20004
Tel: (202) 636-5509
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

*Counsel for Defendant Stanley Electric Co., Ltd.*

 /s/ Matthew J. Reilly (with consent)
Matthew J. Reilly
Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
1155 F Street, NW
Washington, DC 20004
Tel: (202) 636-5509
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

*Counsel for Defendants Diamond Electric Manufacturing Co., Ltd. and Diamond*

*Electric Manufacturing Corp.*

 /s/ Corey W. Roush (with consent)
Corey W. Roush
**HOGAN LOVELLS US LLP**
555 Thirteenth St., NW
Washington, DC 20004
Tel:  (202) 637-5731
Fax:  (202) 637-5910

*Counsel for Mitsubishi Heavy Industries*
*Climate Control, Inc. (MHICC) and*
*Mitsubishi Heavy Industries of America,*
*Inc. (MHIA)*

 /s/ J. Clayton Everett, Jr. (with consent)
Eyitayo St. Matthew-Daniel
**MORGAN, LEWIS & BOCKIUS LLP**
111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:  202.739.3000
Fax:  202.739.3001

*Counsel for Tokai Rubber Industries, Ltd.*
*and DTR Industries, Inc.*

 /s/ Marguerite M. Sullivan (with consent)
Marguerite M. Sullivan
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com

William H. Horton (P31567)
**GIARMARCO, MULLINS &**
**HORTON, P.C.**
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060

bhorton@gmhlaw.com

**_Counsel for Ichikoh Industries, Ltd._**

 /s/ William R. Jansen (with consent)
William R. Jansen (P36688)
William R. Jansen (P36688)
Michael G. Brady (P57331)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
mbrady@wnj.com
wjansen@wnj.com

**_Counsel for Robert Bosch LLC_**

CERTIFICATE OF SERVICE

I, Matthew L. Powell, hereby certify that on May 27, 2014, I electronically

filed the foregoing paper with the Clerk of the Court using the ECF Filing System

which will serve such filing upon all counsel of record.

　/s/ Matthew L. Powell　　　　　　　
Fred K. Herrmann (P69186)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
Tel:  (313) 961-0200
Fax: (313) 961-0388
fherrmann@kerr-russell.com