**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| THIS RELATES TO: All Actions | |

**WIRE HARNESS PRODUCTS DEFENDANTS' OPPOSITION TO CERTAIN**
**PLAINTIFFS' MOTION TO COORDINATE ALL ACTIONS**
**IN MDL 2311**

**TABLE OF CONTENTS**

                                                                                              **Page**

INTRODUCTION ..................................................................................................................1

RELEVANT PROCEDURAL HISTORY OF THE WIRE HARNESS PRODUCTS
CASES .................................................................................................................................3

ARGUMENT ........................................................................................................................6

I.      PLAINTIFFS' PROPOSAL TO GROUP THE WIRE HARNESS PRODUCTS
        CASES TOGETHER WITH OTHER AUTO PARTS CASES WOULD
        SIGNIFICANTLY DELAY THE ULTIMATE RESOLUTION OF THESE
        CASES AND DENY DEFENDANTS IMPORTANT PROCEDURAL AND
        SUBSTANTIVE RIGHTS ......................................................................................6

II.     PLAINTIFFS' PROPOSAL TO DELAY DEPOSITION OF INDIVIDUAL
        PLAINTIFFS WOULD PRECLUDE WIRE HARNESS PRODUCTS
        DEFENDANTS FROM NARROWING THE ISSUES AND CLAIMS IN
        THESE CASES ........................................................................................................8

III.    PLAINTIFFS' PROPOSAL TO DELAY CLASS CERTIFICATION BRIEFING
        IS INCONSISTENT WITH RULE 23 AND THIS COURT'S PRIOR RULING ............12

IV.     TARGETED COORDINATION OF TRULY OVERLAPPING DISCOVERY
        BETWEEN CASES WILL BE ACCOMPLISHED BY THE PARTIES DURING
        THE COURSE OF DISCOVERY IN THE WIRE HARNESS PRODUCTS
        CASES ...................................................................................................................13

CONCLUSION....................................................................................................................16

## TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

### CASES

*Brennan v. Qwest Comm'ns. Int'l*, 2009 WL 1586721 (D. Minn. June 4, 2009) ......................... 15

*In re Automotive Parts Antitrust Litig.*, Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456612 (E.D. Mich. June 6, 2013) ........................................................................................... 4, 5, 13, 14

*In re New Motor Vehicles Canadian Expert Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) .............. 9

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 632 F. Supp. 2d 42 (D. Maine 2009) ................................................................................................................................................. 9

*McKinney v. Bayer Corp.*, No. 1:10-cv-00224, 2011 WL 2553304 (N.D. Ohio June 28, 2011) 15, 16

*Motorola Mobility LLC v. AU Optronics Corp.*, 746 F.3d 842 (7th Cir. 2014) ........................... 10

*Rumsey v. Mich. Dept. of Corrections*, No. 1:10-cv-880, 2013 WL 5442400 (W.D. Mich. June 24, 2013) .................................................................................................................................... 15

### RULES AND STATUTES

Fed. R. Civ. P. 23(c)(1)(A) ........................................................................................................ 11

Local R. 7.1(a)………………………………………………………………………... iv, 5

Foreign Trade Antitrust Improvement Act, 15 U.S.C. §6a…………………………………..10

**STATEMENT OF ISSUES PRESENTED**

1.      Whether the Court should reject plaintiffs' proposed coordination order because it will have the effect of unreasonably delaying the progress of the Wire Harness Products cases.

2.      Whether plaintiffs' motion should be dismissed for plaintiffs' failure to meet and confer as required by L.R. 7.1(a).

Defendants in the Wire Harness Products cases (Lead Case No. 2:12-cv-00100),[1] by and through their counsel, respectfully submit this opposition to the motion filed by the End-Payor Plaintiffs ("End-Payors"), Auto-Dealer Plaintiffs ("Auto Dealers"), the State of Florida[2] and the City of Richmond ("plaintiffs") to coordinate all of the cases pending in MDL 2311. (2:12-md-02311, ECF No. 703.)  Neither Direct Purchaser Plaintiffs ("Direct Purchasers") nor Ford Motor Company ("Ford") have joined the motion.[3]

## INTRODUCTION

The Wire Harness Products defendants appreciate that MDL 2311 presents numerous logistical challenges for the parties and the Court.  It contains 29 sets of unrelated cases that each involves a unique set of facts, distinct products, different alleged conspiracies, and varying groups of defendants – yet all under the same MDL umbrella.

When this Court assumed responsibility for all of these cases, it envisioned a staggered schedule by which the Wire Harness Products cases would go first as "pilot" cases and then each subsequent case set would follow the one before it, with consolidated amended complaints, motions to dismiss, and then discovery, a few months behind.  But that has not happened because plaintiffs' lead and liaison counsel in all of these cases (apparently overwhelmed by the sheer number of cases that they have brought, and continue to bring) have not kept to that schedule.

---

[1]     "Defendants" or "Wire Harness Products defendants" refers to American Furukawa, Inc.; Furukawa Electric Co., Ltd.; DENSO Corporation; DENSO International America, Inc.; Fujikura America, Inc.; Fujikura Ltd.; G.S. Electech, Inc.; G.S.W. Manufacturing, Inc.; G.S. Wiring Systems, Inc.; Kyungshin-Lear Sales and Engineering, LLC (KL Sales); Lear Corporation; Leoni Wiring Systems, Inc.; Leonische Holding Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.) Inc.; Tokai Rika Co., Ltd.; TRAM, Inc.; Yazaki Corporation; and Yazaki North America, Inc.

[2]     The State of Florida has not filed a complaint in the Wire Harness Products cases.

[3]     The Direct Purchasers agree only with the proposal governing motions to dismiss.  (Pls.' Mot. at 2.)

As a result, the Wire Harness Products cases are significantly more advanced than later product cases. The primary motions to dismiss were decided more than 11 months ago and discovery has been ongoing since. Defendants are ready to begin depositions, and summary judgment and class certification briefing are within range. By contrast, later product cases that plaintiffs filed more than a year ago sit idle, without even consolidated amended complaints or preliminary briefing schedules in place.

Plaintiffs' solution is to stop the Wire Harness Products cases in their tracks while the other cases slowly work to catch up. They ask the Court to prevent the Wire Harness Products defendants from taking depositions of plaintiffs until some later undetermined date; they request that the court postpone class certification, and potentially summary judgment, briefing indefinitely; and they propose that the court combine the Wire Harness Products cases with three other unrelated sets of cases for all purposes, even though those cases are at least a full year behind procedurally. But disregarding the separate nature of each set of product cases within the MDL, treating defendants in one set as though they also were sued in others, and stalling proceedings in the Wire Harness Products cases is not an appropriate solution. It would make management of these cases *more*, not less, complex and inefficient. And it would invariably lead to unnecessary delays in the Wire Harness Products cases, while increasing the costs to both defendants and plaintiffs.

That said, the Wire Harness Products defendants are confident that the parties (each of whom is represented by sophisticated and experienced counsel) can work together, as they have throughout the discovery process, to streamline discovery and maximize efficiency in these cases where it makes sense to do so. Indeed, defendants had already proposed to plaintiffs that the parties use their best efforts to coordinate with other cases, where practical, to minimize

duplicative depositions of both plaintiffs and defendants.[4]  Likewise, the Wire Harness Products defendants support coordinating third-party discovery to attempt to minimize burdens on third parties.

Identifying areas like these where the parties can reasonably cooperate is what will reduce redundancy and burden in this MDL, not the convoluted and arbitrary system of "tranches" and undetermined delays that plaintiffs propose.  The Court should deny plaintiffs' self-serving motion, which would deny defendants important procedural and substantive rights, and allow the parties in the Wire Harness Products cases to efficiently move towards resolution while cooperatively using their best efforts to coordinate appropriate discovery with other parts cases.[5]

**RELEVANT PROCEDURAL HISTORY OF
THE WIRE HARNESS PRODUCTS CASES**

In February 2012, the JPML transferred to this Court 17 cases in which three putative classes of plaintiffs, End-Payors, Auto Dealers and Direct Purchasers, alleged a global conspiracy to fix the prices of wire harnesses and twelve "related" products (defined by the plaintiffs in those cases as "Wire Harness Products"[6]).  (2:12-md-02311, ECF Nos. 2, 3.)

---

[4]     Wire Harness Products defendants had made these proposals as part of the negotiation of the Supplemental Discovery Plan and Deposition Protocol.  The parties were working closely together to finalize those documents when Moving Plaintiffs abruptly filed this motion.

[5]     The Court should deny the motion for the additional reason that plaintiffs failed to comply with the meet and confer requirements of Local Rule 7.1 before filing their motion.  Plaintiffs did not discuss their proposals with defendants in advance of the filing.  Thus, defendants are addressing plaintiffs' proposals for the first time in this opposition brief.

[6]     Plaintiffs include in their definition of Wire Harness Products automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, power distributors, speed sensor wire assemblies and high voltage wiring.

Plaintiffs filed their consolidated amended complaints the following summer, nearly two years ago, and the Wire Harness Products defendants moved to dismiss those claims.[7]

Defendants' arguments focused on two critical themes. First, plaintiffs are overreaching. The plea agreements on which plaintiffs rely for their claims do not support the broad – all defendant, all Wire Harness Products, all platform, all customer – global conspiracy that plaintiffs allege. Second, these plaintiffs are not the right plaintiffs. The conduct that is at the heart of these cases related to bids submitted, and sales made, to specific Original Equipment Manufacturers ("OEMs") customers that are not parties in these cases.

The parties' arguments and the Court's rulings in June 2013 made clear that discovery has the potential to significantly narrow the Wire Harness Products cases, both with respect to the scope of the alleged conspiracy and these plaintiffs' ability to prove that any such conspiracy impacted them. Indeed, the Court recognized that discovery relating to "how OEMs price their vehicles and how the price of component parts affects the price of the finished vehicle" will impact the End Payors' and Auto Dealers' claims. *In re Automotive Parts Antitrust Litig.*, Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456612 at *9 (E.D. Mich. June 6, 2013). The Court correctly explained that to "succeed[] on their claims," the End-Payors and Auto Dealers "must show that every reseller in the chain passed on some or all of the alleged overcharge to demonstrate that the price of their vehicle was higher than it would have been because of the overcharge on the wire harness systems." *Id.* at *8. The Court implied that if discovery shows that OEMs "simply absorb the overcharges by reduced profit margin on each vehicle," or that

---

[7]     A fourth plaintiff, the City of Richmond, California, filed a complaint on behalf of a purported class of public entities on February 20, 2014. (2:14-cv-10795, ECF No. 1.) The Court has not yet appointed interim class counsel for this proposed class, and that is scheduled to be addressed at the June 4, 2014 status conference. Ford Motor Co. is also a plaintiff in Wire Harness Products, and defendants have been coordinating discovery with Ford.

"OEMs sometimes sell cars below cost of production because of competition," such facts would undermine that element of plaintiffs' claims – and "may provide a basis for [the Wire Harness Products defendants] to prevail on a motion for summary judgment." *Id*. at *9.

Discovery began while the parties were briefing the motions to dismiss and has continued since that time.  On July 10, 2012, the Court entered a stipulated Initial Discovery Plan.  (2:12-md-02311, ECF No. 201.)  Pursuant to that plan, by October 2012 each defendant that had entered a guilty plea with the United States Department of Justice ("DOJ") produced to plaintiffs the documents that it had previously produced to the DOJ – more than 12 million pages in total.  Each side also served and responded to written discovery requests, including document requests and interrogatories.  Defendants provided detailed interrogatory responses in which they identified the specific Wire Harness Products, customers, and requests for quotations ("RFQs") that they discussed with certain of their competitors, if any, and the names of the individuals that were involved in those discussions.  Some defendants have agreed to provide additional information at plaintiffs' requests and are in the process of preparing supplemental interrogatory responses.

Pursuant to the stipulated Supplemental Discovery Plan approved last week by the Court, the deadlines to complete meet and confers relating to data and documents are May 30, 2014 and June 23, 2014, respectively. (2:12-cv-00100, ECF No. 224.)  The parties also have been meeting and conferring for months regarding the production of documents and transactional data.  Defendants will begin the process of producing transactional data and remaining documents (beyond the initial 12 million pages) after remaining disputes are resolved.  In the meantime, plaintiffs have produced documents relating to their purchases of Wire Harness Products.

The parties also spent two months negotiating the terms of a Deposition Protocol to govern depositions in the Wire Harness Products cases. Although the draft protocol contained several provisions that were designed to streamline discovery and avoid duplicative depositions (of both defendants and plaintiffs), plaintiffs abruptly stopped negotiating and, after weeks of silence, filed this motion instead.[8]

## ARGUMENT

**I.    PLAINTIFFS' PROPOSAL TO GROUP THE WIRE HARNESS PRODUCTS CASES TOGETHER WITH OTHER AUTO PARTS CASES WOULD SIGNIFICANTLY DELAY THE ULTIMATE RESOLUTION OF THESE CASES AND DENY DEFENDANTS IMPORTANT PROCEDURAL AND SUBSTANTIVE RIGHTS**

Plaintiffs ask the Court to put the Wire Harness Products cases into a "tranche" with three other unrelated sets of cases – Heater Control Panels (HCPs), Instrument Panel Clusters (IPCs) and Fuel Senders – for purposes of motions to dismiss and discovery.  (Pls.' Mem. at 10.) Although plaintiffs claim that their proposal will reduce delay in this MDL, the exact opposite is true.

First, these four cases will not receive any purported benefit from coordinating motions to dismiss because the Court has already ruled on most of defendants' motions to dismiss in these four sets of cases.[9]

There also is no benefit from combining these cases for discovery purposes.  The Wire Harness Products cases, which will soon see the three-year anniversary of their filing date, are significantly farther along than the other cases.  The defendants produced their DOJ productions

---

[8]    See Email Correspondence between M. Sullivan and S. Williams re: Deposition Protocol Follow-up (attached as Exhibit A).

[9]    Although the Wire Harness Products defendants may move to dismiss the City of Richmond's complaint, which was only recently filed on February 20, 2014, the City of Richmond is not a plaintiff in HCPs, IPCs or Fuel Senders.

to plaintiffs in 2012, and the parties have served and responded to voluminous written discovery requests over the past 10 months. Meet and confers have been ongoing for close to six months, and are nearing completion. Once disputes are resolved, defendants anticipate that they will begin producing additional documents and transactional data, and they are ready to begin taking depositions of the named plaintiffs in order to narrow the claims and to prepare the cases to proceed expeditiously to class certification briefing.

In contrast, the other proposed Tranche 1 cases – HCPs, IPCs, and Fuel Senders – are at least a full year behind Wire Harness Products (and cases in other proposed tranches are even further behind). The Court has not ruled on the motions to dismiss the indirect purchaser complaints pending in HCPs, IPCs and Fuel Senders and pursuant to the stipulated Initial Discovery Plans entered in those cases, written discovery cannot begin in any of the three sets of cases until the Court issues those rulings.[10] (2:12-cv-00200, ECF No. 31; 2:12-cv-00300, ECF No. 30; 2:12-cv-00400, ECF No. 26.)

Plaintiffs argue that coordination among these four cases is necessary because several of the Wire Harness Products defendants are also defendants in one or more of the other cases. (Pls.' Mem. at 8.) But *six* defendants in Wire Harness Products – Fujikura, Furukawa, GS Electech, KL Sales, Lear and Leoni – are not named as a defendant in *any* other product case. (*See* Ex. B. to Pls.' Mot.)

The possibility that there might be some overlap in discovery from the four defendants in Wire Harness Products that are also defendants in at least one other case does not justify

---

[10]     The Court denied defendants' motions to dismiss the direct purchaser complaints in those three cases on April 30, 2014. (*See* 2:12-cv-201, Doc. No. 86; 2:12-cv-301, Doc. No. 72; 2:12-cv-401, Doc. No. 78.)

combining the four sets of cases into a single "tranche" for all purposes.[11]  To the extent that a defendant employee has knowledge that relates to more than one of the four cases, the parties can work together to avoid multiple depositions of that witness.  Similarly, an end-payor who purchased a new vehicle need not be deposed in every single case.  Finally, the parties may be able to coordinate their requests for discovery from third parties (e.g., transactional data from OEMs) to minimize the number of different subpoenas served in order to reduce the burdens on those entities.  But these are all efficiencies that the parties can achieve through the meet and confer process.  The Court need not combine unrelated sets of cases together, as plaintiffs request, to accomplish them.

## II.   PLAINTIFFS' PROPOSAL TO DELAY DEPOSITION OF INDIVIDUAL PLAINTIFFS WOULD PRECLUDE WIRE HARNESS PRODUCTS DEFENDANTS FROM NARROWING THE ISSUES AND CLAIMS IN THESE CASES

Plaintiffs request a court order that would prohibit more than one deposition of any individual or entity that is a plaintiff in more than one auto parts case, and would postpone that one deposition indefinitely.  (Pls.' Mem. at 15-16.)  This would significantly prejudice defendants and should not be allowed.  The Wire Harness Products defendants do not object to working with the parties in other product cases to attempt to reduce duplication and burden (indeed, defendants had been discussing this very issue with plaintiffs when plaintiffs stopped negotiating the Wire Harness Products Deposition Protocol).  But plaintiffs' demand that only one deposition occur at some later date – presumably after discovery is underway in all 29 sets of product cases – would prevent the Wire Harness Products defendants from discovering

---

[11]    Additionally, plaintiffs do not account for *Ford v. Fujikura*, which is a related case in Wire Harness Products but not in the other three sets of cases.  Plaintiffs do not address the myriad complications that Ford's case would cause in Tranche 1, such as whether Ford would participate in depositions of defense witnesses when they testify about other parts and whether Ford would receive documents produced by parties in the other three cases.

information that is critical to their defenses and has the potential to significantly narrow these cases.

Plaintiffs are well aware that "[t]o establish liability for an illegal antitrust conspiracy, the plaintiffs must provide evidence not only that there was an illegal agreement, but also that the agreement actually caused antitrust injury." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 632 F. Supp. 2d 42, 50 (D. Maine 2009) (granting summary judgment to defendants on issue of causation). "The element of injury in the antitrust context…is the *causal link* between the antitrust violation and the damages sought by plaintiffs." *In re New Motor Vehicles Canadian Expert Antitrust Litig.*, 522 F.3d 6, 19 n. 18 (1st Cir. 2008) (emphasis added). To establish antitrust injury, plaintiffs must prove that the alleged misconduct actually caused plaintiffs to pay a higher price than they otherwise would have paid based on actual, real world evidence. *See id.* at 27-28.

Plaintiffs' deposition testimony, particularly as it relates to their purchases of Wire Harness Products and automobiles incorporating Wire Harness Products, is directly relevant to this critical element of plaintiffs' claims. For example, some plaintiffs will likely be unable to show such impact because of the particular type of car model that they purchased. Defendants need to know now which products and/or car models each plaintiff purchased so that they can determine whether plaintiffs can establish that they were impacted and therefore have standing to pursue their claims. In opposing defendants' motions to dismiss, plaintiffs argued that those details should be left for discovery. But now, plaintiffs request that the Court further delay disclosure of these basic facts until essentially all discovery has been completed of all defendants in all unrelated cases. Plaintiffs' proposal not only makes no sense, it would severely prejudice the Wire Harness Products defendants.

9

In addition, pursuant to the Foreign Trade Antitrust Improvement Act (FTAIA), 15 U.S.C. § 6a, the Sherman Act and state antitrust and consumer protection laws do not cover sales of foreign manufactured parts to OEMs outside of the United States for incorporation outside the United States into finished goods that are then exported to, and sold in, the United States. *See Motorola Mobility LLC v. AU Optronics Corp.*, 746 F.3d 842, 844 (7th Cir. 2014). In *Motorola*, the Seventh Circuit recently held that the FTAIA's "direct, substantial and reasonably foreseeable" standard is not satisfied when foreign companies sell their allegedly price-fixed products abroad to other foreign companies that incorporate them into other products that are then exported to the United States for resale. 746 F.3d at 844. In such cases, "[t]he effect of component price fixing on the price of the product of which it is a component is *indirect*. . . ." *Id.* (italics added).

That is precisely the situation that the Wire Harness Products cases present. Here, nearly all Wire Harness Products defendants are foreign companies, many of which sold significant volumes of Wire Harness Products outside the United States to OEMs that were also located outside the United States. In many cases, those OEMs installed the Wire Harness Products in automobiles that they manufactured in foreign countries and then exported to the United States, where the indirect purchasers purportedly bought them. Conduct that occurred abroad relating to foreign sales of such Wire Harness Products is too indirect to satisfy the "direct" effect on United States commerce requirement, and thus, plaintiffs who purchased cars containing those particular Wire Harness Products do not have claims under the Sherman Act or state antitrust or consumer protection laws. Plaintiffs' deposition testimony will help to identify *which* plaintiffs' claims are

barred as a matter of law, thereby further narrowing the cases, both through summary judgment and class certification.  *Id.*[12]

The fact that plaintiffs do not yet know the extent to which other defendants in other product cases conspired with respect to the products that they sold has no bearing on the appropriate timing of plaintiffs' depositions in this case.  No party has a right to complete offensive discovery, much less in dozens of unrelated cases, before providing its own information.  Moreover, as plaintiffs concede, the focus of each plaintiff's deposition will be the product(s) that he or she purchased, the terms of the purchase, and the extent to which he or she negotiated the purchase price.  None of that testimony will change based on facts that plaintiffs learn through discovery in 28 other sets of unrelated cases.

To the extent that the Wire Harness Products defendants can coordinate with the defendants in other product cases to avoid multiple depositions of the same plaintiffs, they will use their best efforts to do so (and have every incentive to do so), as discussed in more detail below.  But the Court should reject plaintiffs' proposal to postpone these depositions indefinitely and allow the Wire Harness Products defendants to obtain the testimony that they need from plaintiffs now.

---

[12] Plaintiffs also assert in their Memorandum (but not in the proposed Order) that it would be "wasteful" for defendants to "file summary judgment motions part-by-part, protracting such motions over the years, rather than being able at the appropriate time to move for summary judgment across all cases."  (Pls.' Mem. at 18.)  Thus, not only do plaintiffs wish to deny the Wire Harness Products defendants the facts they need to file motions for summary judgment on critical legal issues, they apparently wish to prevent defendants from filing such motions (and potentially resolving the cases) at any reasonable time following the conclusion of necessary discovery in *these* cases.

III.   **PLAINTIFFS' PROPOSAL TO DELAY CLASS CERTIFICATION BRIEFING IS INCONSISTENT WITH RULE 23 AND THIS COURT'S PRIOR RULING**

Plaintiffs' request that the Court postpone class certification briefing in the Wire Harness Products cases until (at a minimum) all pleading issues in all 29 sets of cases are resolved (Pls.' Mem. at 17) is prejudicial to the Wire Harness Products defendants and contrary to this Court's previous orders regarding the schedule for class certification in these cases.

Rule 23(c)(1)(A) provides that the Court "must" determine class certification at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Consistent with that requirement, when the parties attempted to negotiate a class certification schedule as part of the Supplemental Discovery Plan six months ago, defendants requested that plaintiffs file their motions within 180 days of the lifting of the DOJ Stay on merits discovery. (Joint Pls.' Mem. Re. Proposed First Suppl. Disc. Plan, 2:12-cv-00100, ECF No. 183, at 21.) Plaintiffs, on the other hand, sought to delay class certification briefing by suggesting that they file their motions more than a year after the Stay expires. (*Id.* at 18.) This Court heard the dispute between the parties and ruled that the parties should meet and confer on a schedule for class certification 30 days after the expiration of the Stay. (Tr. of Feb. 12, 2014 Hearing at 121 (attached as Exhibit B).) The Court cautioned plaintiffs that they should not consider that ruling as a belief that "you are going to have all kinds of time now" because "we need to move on this." (*Id.*) Although that admonition is reflected in the Supplemental Discovery Plan approved by the Court, plaintiffs disregard it entirely in their motion.

As the Court recognized, class certification should occur as early in the cases as possible so that the Court may determine whether any of the four putative classes is a proper class under Rule 23(b). Defendants are confident that no plaintiff will be able to satisfy its burden under Rule 23. To maintain their claims, plaintiffs must prove that they were impacted by defendants'

12

alleged conduct, something that cannot be established on a class-wide basis through common proof.  Indeed, the Court has already recognized that the indirect purchasers (Auto Dealers and End-Payors) may have difficulty proving that any of them were impacted because they "must show that every reseller in the chain passed on some or all of the alleged overcharge to demonstrate that the price of their vehicle was higher than it would have been because of the overcharge on the wire harness system."  *In re Automotive Parts*, 2013 WL 2456612, at *8.  To certify their classes, they must convince the Court that they can prove through common evidence that all purported class members – all entities and individuals that purchased or leased a car in the United States from 2000 to 2010 – paid more for his or her car because of the Wire Harness Products defendants' alleged conduct.  The Wire Harness Products defendants do not believe that plaintiffs will be able to make that showing.

In short, plaintiffs' request to postpone class certification yet again – this time indefinitely – is prejudicial to defendants' rights and inconsistent with Rule 23, contrary to Rule 1's requirement that these proceedings be administered in as "just, speedy, and inexpensive" manner possible, and inconsistent with this Court's prior order.

## IV.   TARGETED COORDINATION OF TRULY OVERLAPPING DISCOVERY BETWEEN CASES WILL BE ACCOMPLISHED BY THE PARTIES DURING THE COURSE OF DISCOVERY IN THE WIRE HARNESS PRODUCTS CASES

Plaintiffs propose that this Court establish rigid rules concerning discovery of OEMs and other third-parties, and mandate coordination of depositions of defendant employees and the putative class representatives across all 29 sets of cases.  (Pls.' Mem. at 14-16.)  Although increasing efficiency, decreasing burden, and reducing redundancy across different product cases are laudable goals, they can be achieved without the prejudice and delay of the arbitrary structure that plaintiffs propose.

First, all parties in MDL 2311 can and should use their best efforts to coordinate with respect to key third-party discovery. As plaintiffs note, each case will require discovery from the OEMs that issued the RFQs and negotiated pricing with the various manufacturers that sold each of the 29 types of products. This discovery is critical to the Wire Harness Products cases, and presumably to the other product cases as well. Among other things, the parties in each case will need it to determine – for each product – the extent to which each defendant actually charged higher prices than it would have charged absent a conspiracy, and if so, whether any OEM that paid an overcharge passed it through to its own customers. *In re Automotive Parts*, 2013 WL 2456612 at *8-9. Thus, to the extent practicable, the parties in all auto parts cases should coordinate preparing and serving Rule 45 subpoenas.

Second, the parties should use their best efforts to minimize the duplication of depositions of defendant employees across cases. As plaintiffs acknowledge, the Wire Harness Products defendants suggested exactly that in their initial draft of the Deposition Protocol. Recognizing that multiple depositions of the same employee might be avoidable in some cases but not in others, defendants proposed that the parties use their best efforts on a defendant-by-defendant and witness-by-witness basis to attempt to avoid multiple depositions of the same employee. That is a reasonable and workable solution to a problem that may or may not ever arise, and the parties themselves should be able to negotiate the terms of such an agreement. The parties do not need a rigid court order issued without a specific dispute in front of the Court to accomplish that objective. Moreover, plaintiffs' claim that they could not adequately depose any defendant's employee on only one product at a time is specious. (Pls.' Mem. at 15). Although some employees may have worked on more than one product, there is no reason to assume, as do

14

plaintiffs, that all deponents did so or that any purported collusive conduct as to one product had any relationship to any other product.

Third, some coordination of depositions of the putative class representatives will also be appropriate here.  Most of the End-Payors are plaintiffs in other product cases, and plaintiffs acknowledge that much of their testimony will center around their purchases of cars that contained auto part components.  (Pls.' Mem. at 15.)  Thus defendants have every interest to use their best efforts to minimize the duplication of these depositions.

Plaintiffs' demand that defendants in each case undertake an extraordinary burden to protect each plaintiff from their own affirmative obligation to provide a deposition in each such case is unreasonable.  *See, e.g.*, *Brennan v. Qwest Comm'ns. Int'l*, 2009 WL 1586721 at *9 (D. Minn. June 4, 2009) (dismissing claims of plaintiffs who failed to appear for deposition or make themselves available for deposition because "a plaintiff has affirmative obligations as a litigant."); *McKinney v. Bayer Corp.*, No. 1:10-cv-00224, 2011 WL 2553304 at *3 (N.D. Ohio June 28, 2011) (granting plaintiff's motion to amend complaint to add new class representative and ordering that the representative be available for deposition by a certain date within the discovery period).  Plaintiffs chose to file 29 separate sets of cases and each defendant has the right to gather the information needed to defend itself in each case in which it is named in a timely manner.  Defendants will do their best to coordinate depositions for each plaintiff and plaintiff employee to the extent practical, but the Court should not *a priori* limit their rights to take additional, non-duplicative depositions where needed.  *See, e.g.*, *Rumsey v. Mich. Dept. of Corrections*, No. 1:10-cv-880, 2013 WL 5442400 at *4 (W.D. Mich. June 24, 2013) (dismissing plaintiff's claims in part because they refused to appear for a deposition and "[d]efendants are

15

without a doubt prejudiced by their inability to depose Plaintiff."); *McKinney*, 2011 WL 2553304 at *3.

Indeed, the rigidity that plaintiffs propose is unnecessary.  To the extent that disputes arise regarding duplicative depositions, they can be resolved through pre-deposition meet and confers regarding the subject matter of the noticed deposition.  If the parties cannot reach agreement after those discussions, the Court can resolve that issue as needed.

**CONCLUSION**

For the reasons stated above, the Wire Harness Products defendants respectfully request that the Court deny plaintiffs' Motion to Coordinate.


May 27, 2014                              By:

*/s/ Marguerite M. Sullivan*
Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 395-0600
(415) 395-8095 (facsimile)
dan.wall@lw.com

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060
bhorton@gmhlaw.com

*Attorneys for Defendants Sumitomo Electric*
*Industries, Ltd.; Sumitomo Wiring Systems, Ltd.;*
*Sumitomo Electric Wiring Systems, Inc.; K&S*

16

*Wiring Systems, Inc.; and Sumitomo Wiring Systems (U.S.A.) Inc.*

May 27, 2014    By:   <u>*/s/ John M. Majoras (w/ consent)*</u>
John M. Majoras
Carmen G. McLean
Kristen Lejnieks
Tiffany Lipscomb-Jackson
JONES DAY
51 Louisiana Ave. N.W.
Washington, D.C. 20001-2113
(202) 879-3939
(202) 626-1700 (facsimile)
jmmajoras@jonesday.com
cgmclean@jonesday.com

Michelle K. Fischer
Stephen J. Squeri
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939
(216) 579-0212 (facsimile)
mfischer@jonesday.com
sjsqueri@jonesday.com

*Attorneys for Defendants Yazaki Corporation and Yazaki North America, Inc.*

May 27, 2014    By:   <u>*/s/ Larry S. Gangnes (w/ consent)*</u>
Larry S. Gangnes
LANE POWELL PC
1420 Fifth Ave., Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
gangnesl@lanepowell.com
shivelyc@lanepowell.com

Craig D. Bachman

17

Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
LANE POWELL PC
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone:  (248) 528-1111
Facsimile:  (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric
Co., Ltd.; and American Furukawa, Inc.*

18

May 27, 2014

By:   */s/ Steven F. Cherry (w/ consent)*
Steven F. Cherry
David P. Donovan
Brian C. Smith
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com
kurt.kastorf@wilmerhale.com

*Attorneys for Defendants DENSO International
America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International
America, Inc.*

May 27, 2014                          By:    _/s/ Michael A. Rubin (w/ consent)_
                                             James L. Cooper
                                             Michael A. Rubin
                                             Laura Cofer Taylor
                                             Katherine Clemons
                                             ARNOLD & PORTER LLP
                                             555 Twelfth Street NW
                                             Washington, DC 20004
                                             (202) 942-5000
                                             (202) 942-5999 (facsimile)
                                             james.cooper@aporter.com
                                             michael.rubin@aporter.com
                                             laura.taylor@aporter.com
                                             katherine.clemons@aporter.com

                                             Joanne Geha Swanson (P33594)
                                             Fred Herrmann (P49519)
                                             Matthew L. Powell (P69186)
                                             KERR, RUSSELL AND WEBER, PLC
                                             500 Woodward Avenue, Suite 2500
                                             Detroit, MI 48226
                                             (313) 961-0200
                                             (313) 961-0388 (facsimile)
                                             jswanson@kerr-russell.com
                                             fherrmann@kerr-russell.com
                                             mpowell@kerr-russell.com

                                             _Attorneys for Defendants Fujikura Ltd. and_
                                             _Fujikura Automotive America LLC_

May 27, 2014

By:   */s/ Howard B. Iwery (w/ consent)*
Howard B. Iwrey (P39635)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
(248) 203-0526 – Telephone
hiwrey@dykema.com

Andrew S. Marovitz
Britt M. Miller
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Fax: (312) 701-7711
amarovitz@mayerbrown.com
bmiller@mayerbrown.com

*Attorneys for Defendant Lear Corporation*

May 27, 2014

By:   */s/ David F. DuMouchel (w/ consent)*
David F. DuMouchel (P25658)
George B. Donnini (P66793)
BUTZEL LONG
150 West Jefferson, Suite 100
Detroit, MI 48226
Telephone: (313)225-7000
dumouchd@butzel.com
donnini@butzel.com

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Telephone: (202)663-7820
TMiller@bakerandmiller.com

*Attorneys for Defendants Tokai Rika Co., Ltd.*
*and  TRAM, Inc.*

*/s/ Donald M. Barnes (w/ consent)*
Donald M. Barnes
Jay L. Levine

May 27, 2014

21

By:    Salvatore A. Romano
John C. Monica
Molly S. Crabtree
Karri N. Allen
PORTER WRIGHT MORRIS & ARTHUR LLP
1919 Pennsylvania Ave., NW, Ste 500
Washington, DC 20006
Telephone: (202) 778-3054
Facsimile: (202) 778-3063
dbarnes@porterwright.com
sromano@porterwright.com
jmonica@porterwright.com
mcrabtree@porterwright.com
kallen@porterwright.com

*Attorneys for Defendants G.S. Electech, Inc.,
G.S.W. Manufacturing, Inc., and G.S. Wiring
Systems, Inc.*


May 27, 2014      By:    */s/ Michael F. Tubach (w/ consent)*
Michael F. Tubach
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Fax: (415) 984-8701
Mtubach@omm.com

Michael R. Turco (P48705)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1713
Fax: (248) 971-1801
turco@bwst-law.com

*Attorneys for Defendants Leoni Wiring Systems,
Inc. and Leonische Holding Inc.*

May 27, 2014                          By:   */s/ Wm. Parker Sanders (w/ consent)*
                                            Wm. Parker Sanders (Georgia Bar No. 626020)
                                            SMITH, GAMBRELL & RUSSELL, LLP
                                            Promenade II, Suite 3100
                                            1230 Peachtree Street, N.E.
                                            Atlanta, Georgia 30309
                                            Telephone: (404) 815-3684
                                            psanders@sgrlaw.com

                                            Jeffrey G. Heuer (P14925)
                                            Peter M. Falkenstein (P61375)
                                            JAFFE, RAITT, HEUER & WEISS, P.C.
                                            27777 Franklin Rd., Ste. 2500
                                            Southfield, MI 48034
                                            Telephone: (248) 351-3000
                                            jheuer@jaffelaw.com
                                            pfalkenstein@jaffelaw.com

                                            *Attorney for Defendant Kyungshin-Lear Sales
                                            and Engineering, LLC*

23

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2014, I caused the foregoing **WIRE HARNESS PRODUCTS DEFENDANTS' OPPOSITION TO CERTAIN PLAINTIFFS' MOTION TO COORDINATE ALL ACTIONS  IN MDL 2311**  to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Marguerite M. Sullivan*
Marguerite M. Sullivan