# EXHIBIT 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. **1 : 13 CR 104** |
| | ) | |
| v. | ) | Filed: |
| | ) | Violation: |
| JTEKT Corporation, | ) | Count I: 15 U.S.C. § 1 |
| | ) | Count II: 15 U.S.C. § 1 |
| Defendant. | ) | |

## PLEA AGREEMENT

The United States of America and JTEKT Corporation ("defendant"), a corporation

organized and existing under the laws of Japan, hereby enter into the following Plea Agreement

pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

### RIGHTS OF DEFENDANT

1.     The defendant understands its rights:

(a)     to be represented by an attorney;

(b)     to be charged by Indictment;

(c)     as a corporation organized and existing under the laws of Japan, to decline

to accept service of the Summons in this case, and to contest the jurisdiction of the

United States to prosecute this case against it in the United States District Court for the

Southern District of Ohio;

(d)     to plead not guilty to any criminal charge brought against it;

(e)     to have a trial by jury, at which it would be presumed not guilty of the

charge and the United States would have to prove every essential element of the charged

offense beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above. The defendant knowingly and voluntarily waives any objection or defense it may have to the prosecution of the charged offenses in the United States District Court for the Southern District of Ohio based on venue. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a two-count Information to be filed in the United States District Court for the Southern District of Ohio. Count One of the Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate markets, rig bids for, and to fix, stabilize, and maintain the prices of bearings sold to Toyota

2

Motor Company, certain of its subsidiaries, and other Japanese automobile manufacturers and Japanese automobile component manufacturers ("Japanese automobile and component manufacturers") in the United States and elsewhere, from at least as early as 2000 and continuing until as late as July 2011, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Count Two of the Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate markets, rig bids for, and to fix, stabilize, and maintain the prices of electric powered steering assemblies sold to Nissan Motor Company Ltd. and certain of its subsidiaries ("Nissan") in the United States and elsewhere, from at least as early as 2005 and continuing until as late as October 2011, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.     The defendant will plead guilty to the criminal charges described in Paragraph 2 above, pursuant to the terms of this Plea Agreement, and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSES CHARGED

4.     Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)     As to Count One:

(i)     For purposes of Count One, the "relevant period" is that period from as early as 2000 and continuing until as late as July 2011. During the relevant period, the defendant was a corporation organized and existing under the laws of Japan, with its registered headquarters in Osaka, Japan. For purposes of this Plea Agreement the defendant also includes those entities that merged in 2006 to form JTEKT. During the relevant period, the defendant was engaged in the

3

manufacture and sale of bearings in the United States and elsewhere, and employed 5,000 or more individuals. Bearings are widely used in industry in numerous applications for many products. Bearings reduce friction and help things to roll smoothly past on another; they "bear" the load. During the relevant period, the defendant's sales of bearings affecting Toyota in the U.S. totaled approximately $395 million.

      (ii)    During the relevant period, the defendant, through its managers and employees, including certain high-level personnel of the defendant, participated in a conspiracy with other bearings manufacturers, the primary purpose of which was to suppress and eliminate competition in the automotive parts industry by agreeing to allocate markets, rig bids for, and to fix, stabilize, and maintain the prices of bearings sold to Japanese automobile and component manufacturers in the United States and elsewhere. In furtherance of the conspiracy, the defendant, through its managers and employees, engaged in discussions and attended meetings with co-conspirators employed by other bearings manufacturers. During these discussions and meetings, agreements were reached to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of bearings sold to Toyota and certain other Japanese automobile manufacturers in the United States and elsewhere.

      (iii)    The conspiratorial conversations and meetings described above took place in the United States and elsewhere. During the relevant period, bearings sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of bearings, as well as payments for

4

bearings, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the manufacture and sale of bearings that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(b)     As to Count Two:

(i)     For purposes of Count Two, the "relevant period" is that period from as early as 2005 and continuing until as late as October 2011. During the relevant period, the defendant was a corporation organized and existing under the laws of Japan, with its registered headquarters in Osaka, Japan. For purposes of this Plea Agreement, the defendant also includes those entities that merged in 2006 to form JTEKT. During the relevant period, the defendant was engaged in the manufacture and sale of electric powered steering assemblies in the United States and elsewhere, and employed 5,000 or more individuals. Electric powered steering assemblies provide electric power to assist the driver to more easily steer the automobile. Electric powered steering assemblies link the steering wheel to the tires, and include the column, intermediate shaft and electronic control unit, among other parts, but do not include the steering wheel or tires. During the relevant period, the defendant's sales of electric powered steering assemblies affecting Nissan in the U.S. totaled approximately $8.4 million.

(ii)     During the relevant period, the defendant, through its managers and employees, including certain high-level personnel of the defendant, participated in a conspiracy with another manufacturer of electric powered steering assemblies, the primary purpose of which was to suppress and eliminate

5

competition in the automotive parts industry by agreeing to allocate markets, rig

bids for, and fix, stabilize, and maintain the prices of electric powered steering

assemblies sold to Nissan in the United States and elsewhere. In furtherance of

the conspiracy, the defendant, through its managers and employees, engaged in

discussions and attended meetings with co-conspirators employed by another

manufacturer of electric powered steering assemblies. During these discussions

and meetings, agreements were reached to allocate the supply of, rig bids, and fix,

stabilize, and maintain the prices of electric powered steering assemblies sold to

Nissan in the United States and elsewhere.

   (iii) During the relevant period, electric powered steering assemblies

sold by one or more of the conspirator firms, and equipment and supplies

necessary to the production and distribution of electric powered steering

assemblies, as well as payments for electric powered steering assemblies, traveled

in interstate and foreign commerce. The business activities of the defendant and

its co-conspirator in connection with the manufacture and sale of electric powered

steering assemblies that were the subject of this conspiracy were within the flow

of, and substantially affected, interstate and foreign trade and commerce.

## ELEMENTS OF THE OFFENSE

5.  The elements of the charged offense are that:

   (a) the conspiracy described in the Information existed at or about the time

alleged;

   (b) the defendant knowingly became a member of the conspiracy; and

6

(c)     the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

6.     The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for each violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)     $100 million (15 U.S.C. § 1);

(b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.     In addition, the defendant understands that:

(a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years, for each of the charged crimes;

(b)     pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or § 3663(a)(3), the Court may order it to pay restitution to the victims of the offenses; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for each of the charged crimes.

## SENTENCING GUIDELINES

8.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater

7

punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree there is no *ex post facto* issue under the November 1, 2012, Guidelines Manual. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## SENTENCING AGREEMENT

9.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), and subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $103.27 million pursuant to 18 U.S.C. § 3571(d), payable in full before the fifteenth (15th) day after the date of judgment, and no order of restitution ("the recommended sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0. The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

(a)      The United States and the defendant agree and recommend that the Court in determining the Guidelines Fine Range for a corporate defendant for violation of 15

8

U.S.C. § 1 apply the Chapter 8 - Sentencing of Organizations guidelines, and the
applicable offense guideline, §2R1.1 - Antitrust Offenses, as follows:

      (i)     Pursuant to §3D1.2(d) Count 1 and Count 2 are grouped and
pursuant to §3D1.3(b), the quantity, in this case the volume of affected commerce,
is aggregated;

      (ii)    Pursuant to §8C2.4(b), §2R1.1(d)(1), and §3D1.3(b) the base fine
is $80.68 million, 20% of $403.4 million, the volume of affected commerce;

      (iii)   The defendant's Culpability Score is 8 and is determined, pursuant
to §8C2.5, as follows:

| Base Culpability Score: | 5 (§8C2.5(a)) |
| --- | --- |
| More than 5,000 employees and participation of high level personnel: | +5 (§8C2.5(b)(1)) |
| Self-reporting: | - 2 (§8C2.5(g)(2)) |

      (iv)   Based on a Culpability Score of 8, the minimum and maximum
multipliers are 1.60-3.20 (§8C2.6);

      (v)    The Guidelines Fine Range is $129.09 million - $258.18 million
(§8C2.7).

      (b)    The defendant understands that the Court will order it to pay a $400
special assessment for each count of conviction, pursuant to 18 U.S.C. § 3013(a)(2)(B),
in addition to any fine imposed.

      (c)    Pursuant to 18 U.S.C. § 3663, restitution is not mandatory for violations of
15 U.S.C. § 1, and in light of the availability of civil causes of actions, 15 U.S.C. § 15,
and the many civil cases that have been filed against the defendant which potentially

provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offenses charged in the Information.

(d)     Both parties will recommend that no term of probation be imposed, but the defendant understands that the Court's denial of this request will not void this Plea Agreement.

(e)     The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss resulting from the charged offense is sufficient to justify a fine of $103.27 million pursuant to 18 U.S.C. § 3571(d).  For purposes of this plea and sentencing only, the defendant waives its rights to contest this calculation.

10.     The United States and the defendant agree that the applicable Guidelines Fine Range exceeds the fine contained in the recommended sentence set out in Paragraph 9 above. Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. §8C4.1, for a downward departure from the Guidelines Fine Range in this case and will request that the Court impose the fine contained in the recommended sentence set out in Paragraph 9 of this Plea Agreement because of the defendant's and its related entities' substantial assistance in the government's investigation and prosecutions of violations of federal criminal law in the bearings and electric powered steering assemblies industries.

11.     Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner,

10

and extent of the defendant's and its related entities' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

12.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 9 of this Plea Agreement.

(a)     If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 12(b) below, shall be rendered void.

(b)     If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 15 of this Plea Agreement shall be tolled for the period between the date of the signing of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of the signing of this Plea Agreement, whichever period is greater.

11

## DEFENDANT'S COOPERATION

13.    The defendant and its subsidiaries ("related entities") will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture and sale of bearings and electric powered steering assemblies, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The defendant's subsidiaries for purposes of this Plea Agreement are entities in which the defendant directly or indirectly had a greater than 50% ownership interest as of the date of signature of this Plea Agreement. The full, truthful, and continuing cooperation of the defendant and its related entities shall include, but not be limited to:

(a)    producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work product doctrine (and with translations into English when requested), in the possession, custody, or control of the defendant or any of its related entities, that are requested by the United States in connection with any Federal Proceeding;

(b)    using its best efforts to secure the full, truthful, and continuing cooperation, as defined in Paragraph 14 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its related entities as may be

12

requested by the United States, but excluding the three (3) individuals listed in Attachment A filed under seal, including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding. Current directors, officers, and employees are defined for purposes of this Plea Agreement as individuals who are directors, officers, or employees of the defendant or any of its related entities as of the date of signature of this Plea Agreement.

14. The full, truthful, and continuing cooperation of each person described in Paragraph 13(b) above will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a) producing in the United States and at other mutually agreed-upon locations all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work product doctrine (and with translations into English when requested), that are requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b) making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

(c) responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses;

13

(d)    otherwise voluntarily providing the United States with any material or information not requested in (a)-(c) of this paragraph and not protected under the attorney-client privilege or the work product doctrine that he or she may have that is related to any Federal Proceeding;

(e)    when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)    agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 16(c), the statute of limitations period for any Relevant Offense, as defined in Paragraph 16(a), shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under this Plea Agreement.

## GOVERNMENT'S AGREEMENT

15.    Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, the United States agrees that it will not bring further criminal charges against the defendant or any of its related entities for any act or offense committed before the date of the signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture and sale of bearings or electric powered steering assemblies. The nonprosecution terms of this paragraph do not apply to: (a) civil matters of any kind; (b) any violation of the federal tax or securities laws or conspiracy to commit such

14

offenses; (c) any crime of violence; or (d) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

    16.    The United States agrees to the following:

    (a)    Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 16(c), the United States agrees that it will not bring criminal charges against any current or former director, officer, or employee of the defendant or its related entities for any act or offense committed before the date of signature of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its related entities that was undertaken in furtherance of an antitrust conspiracy involving the manufacture and sale of bearings or electric powered steering assemblies ("Relevant Offenses"), except that the protections granted in this paragraph do not apply to the three (3) individuals listed in Attachment A filed under seal;

    (b)    Should the United States determine that any current or former director, officer, or employee of the defendant or its related entities may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

    (c)    If any person requested to provide cooperation under Paragraph 16(b) fails to comply with his or her obligations under Paragraph 14, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void, and the United States may

15

prosecute such person criminally for any federal crime of which the United States has knowledge, including, but not limited to any Relevant Offenses;

(d) Except as provided in Paragraph 16(e), information provided by a person described in Paragraph 16(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses;

(e) If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 14 of this Plea Agreement, the agreement in Paragraph 16(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

(f) The nonprosecution terms of this paragraph do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; and

(g) Documents provided under Paragraphs 13(a) and 14(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its related entities.

17. The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for

16

meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

18.    The defendant understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take. However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of the defendant and its related entities as a matter for that agency to consider before determining what action, if any, to take. The defendant nevertheless affirms that it wants to plead guilty regardless of the suspension or debarment consequences of its plea.

## REPRESENTATION BY COUNSEL

19.    The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charges, any possible defenses to the charges, and the nature and range of possible sentences.

## VOLUNTARY PLEA

20.    The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement and Attachment A. The United States has made no promises or representations to the defendant as to

17

whether the Court will accept or reject the recommendations contained within this Plea
Agreement.

## VIOLATION OF PLEA AGREEMENT

21.     The defendant agrees that, should the United States determine in good faith,
during the period that any Federal Proceeding is pending, that the defendant or any of its related
entities have failed to provide full, truthful, and continuing cooperation, as defined in Paragraph
13 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the
United States will notify counsel for the defendant in writing by personal or overnight delivery,
email, or facsimile transmission and may also notify counsel by telephone of its intention to void
any of its obligations under this Plea Agreement (except its obligations under this paragraph),
and the defendant and its related entities shall be subject to prosecution for any federal crime of
which the United States has knowledge including, but not limited to, the substantive offenses
relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the
event that the United States is released from its obligations under this Plea Agreement and brings
criminal charges against the defendant or its related entities for any offense referred to in
Paragraph 15 of this Plea Agreement, the statute of limitations period for such offense shall be
tolled for the period between the date of the signing of this Plea Agreement and six (6) months
after the date the United States gave notice of its intent to void its obligations under this Plea
Agreement.

22.     The defendant understands and agrees that in any further prosecution
of it or its related entities resulting from the release of the United States from its obligations
under this Plea Agreement, because of the defendant's or its related entities' violation of this
Plea Agreement, any documents, statements, information, testimony, or evidence provided by it,
its related entities, or current or former directors, officers, or employees of it or its related entities

18

to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its related entities in any such further prosecution. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

### ENTIRETY OF AGREEMENT

23.     This Plea Agreement and Attachment A constitute the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

24.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

25.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

26.     A facsimile or PDF signature shall be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

19

DATED: Sept. 19, 2013

Respectfully submitted,

BY: _____
Hiroyuki Kaijima
Executive Managing Officer
JTEKT Corporation

BY: _____
Diane Lotko-Baker
Carla M. Stern
Jason C. Turner

Trial Attorneys
U.S. Department of Justice
Antitrust Division
209 South LaSalle Street
Suite 600
Chicago, IL 60604
Tel.: (312) 353-7530

BY: _____
Beau W. Buffier
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 848-4843

Heather Lamberg Kafele
Shearman & Sterling LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 508-8097

Stephen Fishbein
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 848-4424

Counsel for JTEKT Corporation

20

## JTEKT CORPORATION
## BOARD RESOLUTIONS

At the Meeting of the Board of Directors of JTEKT CORPORATION ("JTEKT") held on September 19, 2013, the Board:

RESOLVED, that the execution, delivery and performance of the Plea Agreement between the United States Department of Justice and JTEKT, in substantially the form attached hereto, is hereby approved;

RESOLVED, that Hiroyuki Kaijima, Executive Managing Officer of JTEKT and President of JTEKT NORTH AMERICA CORPORATION ("JNA"), is authorized, empowered and directed to (i) execute and deliver the Plea Agreement and all other documents pertaining to the Plea Agreement in the name and on behalf of JTEKT, and (ii) take such further actions as he deems necessary, proper or advisable to implement the foregoing resolutions; and

RESOLVED, that Hiroyuki Kaijima, Executive Managing Officer of JTEKT and President of JNA, is authorized, empowered and directed to represent JTEKT before any court or governmental agency in order to make statements and confirmations in accordance with the Plea Agreement, including entering a guilty plea on behalf of JTEKT.

## CERTIFICATE

I, Tetsuo Agata, Representative Director and President of JTEKT CORPORATION, a company organized and existing under the laws of Japan, do hereby certify that the foregoing resolutions adopted by the Board of Directors of JTEKT CORPORATION, at a meeting of the Board of Directors held on September 19, 2013, are true, correct and complete, and that said resolutions have not been amended, modified or repealed, and remain in full force and effect, as of the date hereof.

Signed in Nagoya, Japan this 19th day of September, 2013 by

Tetsuo Agata
Representative Director and President
JTEKT CORPORATION