# EXHIBIT 13

21

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED**

NOV - 6 2013

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. *13-20712* |
| | ) | |
| | ) | Filed: |
| v. | ) | |
| | ) | Violations: 15 U.S.C. § 1 |
| MITSUBA CORPORATION | ) | 18 U.S.C. § 1519 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLEA AGREEMENT

The United States of America and Mitsuba Corporation ("defendant"), a corporation organized and existing under the laws of Japan, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.      The defendant understands its rights:

      (a)      to be represented by an attorney;

      (b)      to be charged by Indictment;

      (c)      as a corporation organized and existing under the laws of Japan, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Eastern District of Michigan;

      (d)      to plead not guilty to any criminal charge brought against it;

      (e)      to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above.  The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 10 of this Plea Agreement, regardless of how the sentence is determined by the Court.  This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c).  Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.  The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.  Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a two-count Information to be filed in the United States District Court for the Eastern District of Michigan.  Count I of the Information will charge the defendant with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain automotive parts sold to automobile manufacturers in the United States and elsewhere, from at least as early as January 2000 through at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Count II of the Information will charge the defendant with altering, destroying, mutilating, concealing, covering up, falsifying and making false entries in documents and tangible objects with the intent to

impede, obstruction, and influence the investigation of the conduct charged in Count I, and in relation to and contemplation of such investigation, in violation of 18 U.S.C. § 1519.

3.     The defendant will plead guilty to the criminal charges described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

**FACTUAL BASIS FOR OFFENSES CHARGED**

4.     Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)     For purposes of this Plea Agreement, the "relevant period" is that period from at least as early as January 2000 through at least February 2010.  During the relevant period, the defendant was a corporation organized and existing under the laws of Japan.  The defendant has its principal place of business in Gunma, Japan.  During the relevant period, the defendant was a manufacturer of various automotive parts as defined in Paragraph 14.  These automotive parts included windshield wiper systems and components, windshield washer systems and components, starter motors, power window motors, and fan motors.  The defendant was engaged in the manufacture and sale of these automotive parts in the United States and elsewhere, and employed 5,000 or more individuals.   Windshield wiper systems include components such as the motor, linkage, arm and blade necessary to clear water or snow from vehicle windows.  Windshield washer systems include components such as the pump, hoses, nozzle and tank necessary to deliver washer fluid to vehicle windows.  Starter motors are small electric motors used in starting internal combustion engines.  Power window motors are small electric motors used to raise and lower vehicle windows.  Fan motors are small electric motors used to turn radiator cooling fans.  During the relevant period, the defendant's sales of automotive parts including windshield wiper systems, windshield washer systems, starter motors, power window motors, and fan motors to Honda Motor Company Ltd., Fuji

3

Heavy Industries Ltd., Nissan Motor Company Ltd., Toyota Motor Corporation, Chrysler Group, LLC, and certain of their subsidiaries, affiliates and suppliers in the United States and elsewhere totaled more than $2.4 billion.

(b)       During the relevant period, the defendant, through its officers and employees, including high-level personnel of the defendant, participated in a conspiracy among major automotive parts manufacturers, the primary purpose of which was to rig bids for, and to fix, stabilize and maintain the prices of, certain automotive parts sold to Honda Motor Company Ltd., Fuji Heavy Industries Ltd., Nissan Motor Company Ltd., Toyota Motor Corporation, Chrysler Group, LLC, and certain of their subsidiaries, affiliates and suppliers in the United States and elsewhere (collectively, "automobile manufacturers"). In furtherance of the conspiracy, the defendant, through its officers and employees, engaged in discussions and attended meetings with representatives of other major automotive parts manufacturers. During these discussions and meetings, agreements were reached to allocate the supply of certain automotive parts sold to automobile manufacturers, rig bids quoted to automobile manufacturers for certain automotive parts, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by automobile manufacturers, of certain automotive parts sold to automobile manufacturers in the United States and elsewhere.

(c)       During the relevant period, automotive parts sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of automotive parts, as well as payments for automotive parts, traveled in interstate commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of automotive parts that were the subjects of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

(d)     The conspiratorial meetings and discussions described above took place in the United States and elsewhere.  Automotive parts that were the subject of this conspiracy were sold to Honda Motor Company Ltd., Fuji Heavy Industries Ltd., Nissan Motor Company Ltd., Toyota Motor Corporation, Chrysler Group, LLC, and certain of their subsidiaries and suppliers located in the United States and elsewhere, by the defendant and its United States subsidiaries located in the Eastern District of Michigan and elsewhere.

(e)     On or about February 24, 2010, Executive A of the defendant learned that the offices of a conspirator of the defendant located in the Eastern District of Michigan had been searched by Federal law enforcement authorities in connection with an investigation of possible violations of U.S. antitrust law.   At all times during the relevant period, Executive A was a senior executive of the defendant and of its subsidiary American Mitsuba Corporation, and was a member of the defendant's Board of Directors. Executive A, while physically present in the Eastern District of Michigan, in relation to and in contemplation of an investigation of the defendant's conduct described in Paragraphs 4(a) - (d) of this Plea Agreement, and intending to obstruct such investigation, directed certain of his subordinates to conceal and destroy documents and electronic files relating to the conduct described in Paragraphs 4(a) - (d) that were in the possession, custody and control of the defendant and American Mitsuba Corporation in both the United States and Japan.  Executive A's subordinates and other employees of the defendant took acts in the Eastern District of Michigan and elsewhere to conceal and destroy such evidence, and did conceal and destroy such evidence.  Within several days after the aforementioned search, Executive B of the defendant, a senior executive of the defendant and a member of the defendant's Board of Directors, and Executive C, a senior executive of the defendant, also became aware of the search and directed certain of their subordinates and other employees that documents and electronic files in the possession,

custody and control of the defendant in Japan should be concealed and destroyed. Executive B's and C's subordinates and other employees took acts to conceal and destroy such evidence, and did conceal and destroy such evidence.

## ELEMENTS OF THE OFFENSES

5.      The elements of the offense charged in Count I are that:

(a)     the conspiracy described in the Information existed at or about the time alleged;

(b)     the defendant knowingly became a member of the conspiracy; and

(c)     the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

6.      The elements of the offense charged in Count II are that:

(a)     the defendant knowingly altered, destroyed, mutilated, concealed, covered up, or falsified a record or document; and

(b)     the defendant acted with the intent to impede, obstruct, or influence the investigation of a matter within the jurisdiction of a department or agency of the United States, which the defendant either knew of or contemplated.

## POSSIBLE MAXIMUM SENTENCE

7.      The defendant understands that:

(a)      the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(i)     $100 million (15 U.S.C. § 1);

(ii)    twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(iii)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

(b)     the statutory maximum penalty which may be imposed against it upon conviction for a violation of Title 18, United States Code, Section 1519, is a fine in an amount equal to $500,000 (18 U.S.C. § 3571(c)(3)); further, under §§ 3D1.1(a)(1) and 3D1.2(c) of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines" or "Guidelines"), the violation of 18 U.S.C. § 1519 is grouped with the violation of 15 U.S.C. § 1 and therefore the provision of U.S.S.G. § 8C2.5(e) applies.

8.     In addition, the defendant understands that:

(a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)     pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense charged in Count I; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for each of the charged crimes.

## SENTENCING GUIDELINES

9.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed.  The parties agree there is no ex post facto issue under the November, 2012 Guidelines Manual.  The Court must also consider the other

factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## SENTENCING AGREEMENT

10.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and subject to the full, truthful, and continuing cooperation of the defendant and related entities, as defined in Paragraph 14 of this Plea Agreement, the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly, that the Court impose a sentence requiring the defendant to pay to the United States a criminal fine of $ 135 million, pursuant to 18 U.S.C. § 3571(d), payable in installments as set forth below without interest pursuant to 18 U.S.C. § 3612(f)(3)(A), and with no order of restitution ("the recommended sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0. The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

(a)     The United States and the defendant agree to recommend, in the interest of justice pursuant to 18 U.S.C. § 3572(d)(1) and U.S.S.G. §8C3.2(b), that the fine be paid in the following installments: within thirty (30) days of imposition of sentence -- $10 million; at the one-year anniversary of imposition of sentence ("anniversary") -- $25 million; at the two-year anniversary -- $25 million; at the three-year anniversary -- $25 million; at the four-year anniversary -- $25 million; and at the five-year anniversary --

$25 million; provided, however, that the defendant will have the option at any time before the five-year anniversary of prepaying the remaining balance then owing on the fine.

(b)      The defendant understands that the Court will order it to pay a $400 special assessment for each offense charged in the Information, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(c)      In light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offenses charged in the Information.

(d)      Both parties will recommend that no term of probation be imposed, but the defendant understands that the Court's denial of this request will not void this Plea Agreement.

(e)      The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 12, will provide sufficient information concerning the defendant, the crime charged in this case, and the defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and defendant agree to request jointly that the Court accept the defendant's guilty plea and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32.1(h) of the Criminal Local Rules. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

(f)      The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss

resulting from the charged offense is sufficient to justify the recommended sentence set forth in this paragraph, pursuant to 18 U.S.C. § 3571(d).  For purposes of this plea and sentencing only, the defendant waives its rights to contest this calculation.

11.  The United States and the defendant agree that the applicable Guidelines fine range exceeds the fine contained in the recommended sentence set out in Paragraph 10.  The United States agrees that, based on the defendant's ongoing cooperation, the United States would have moved the Court for a downward departure pursuant to U.S.S.G. §8C4.1, but for the fact that the amount of the fine that the United States would have recommended as a downward departure for substantial assistance would have substantially jeopardized the defendant's continued viability.  The parties further agree that the recommended fine is appropriate, pursuant to U.S.S.G. §8C3.3(a) and (b).

12.  Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 14 of this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's and its related entities' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

13.  The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 10 of this Plea Agreement.

(a)  If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 13(b) below, will be rendered void.

(b)  If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and

any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 16 of this Plea Agreement will be tolled for the period between the date of the signing of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of the signing of this Plea Agreement, whichever period is greater.

## DEFENDANT'S COOPERATION

14. The defendant and its subsidiaries (collectively, "related entities") will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of automotive parts, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in a Federal Proceeding. Automotive parts for purposes of this Plea Agreement are limited to windshield wiper systems and components thereof, windshield washer systems and components thereof,

starter motors, power window motors, fan motors, radiator fans, door mirrors, lamps, power seat motors, sunroof, door and tailgate motors, electric power steering motors, electronic throttle motors, horns, automotive electric relays and switches, automotive electric actuators, AC generators, and fuel pumps. The defendant's subsidiaries for purposes of this Plea Agreement are entities engaged in the manufacture or sale of automotive parts that the defendant had a greater than 50% ownership interest in as of the date of the signature of this Plea Agreement. The full, truthful, and continuing cooperation of the defendant and its related entities will include, but not be limited to:

     (a)    producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work product doctrine (and with translations into English), in the possession, custody, or control of the defendant or any of its related entities, requested by the United States in connection with any Federal Proceeding;

     (b)    using its best efforts to secure the full, truthful, and continuing cooperation, as defined in Paragraph 15 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its related entities, as may be requested by the United States, but excluding the five individuals listed in Attachment A filed under seal, including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding. Current directors, officers, and employees are defined for purposes of this Plea Agreement as individuals who are directors, officers, or employees of the defendant or any of its related entities as of the date of signature of this Plea Agreement.

15. The full, truthful, and continuing cooperation of each person described in Paragraph 14(b) above will be subject to the procedures and protections of this paragraph, and will include, but not be limited to:

(a) producing in the United States and at other mutually agreed-upon locations all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work product doctrine (and with translations into English), requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b) making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

(c) responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements or declarations (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses;

(d) otherwise voluntarily providing the United States with any material or information not requested in (a) - (c) of this paragraph, not protected under the attorney-client privilege or the work product doctrine, that he or she may have that is related to any Federal Proceeding;

(e) when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the

United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

      (f)    agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 17(c), the statute of limitations period for any Relevant Offense, as defined in Paragraph 17(a), will be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under this Plea Agreement.

## GOVERNMENT'S AGREEMENT

16.    Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 14 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, the United States agrees that it will not bring further criminal charges against the defendant or any of its related entities for any act or offense committed before the date of signature of this Plea Agreement that was (a) undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive parts as defined in Paragraph 14, or (b) is specified in Paragraph 4(e). The nonprosecution terms of this paragraph do not apply to (a) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), contempt (18 U.S.C. §§ 401-402), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses, except for the conduct specified in Paragraph 4(e) of this

Plea Agreement; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to commit such offenses; or (d) any crime of violence.

17. The United States agrees to the following:

(a) Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 17(c), the United States agrees that it will not bring criminal charges against any current or former director, officer, or employee of the defendant or its related entities for any act or offense committed before the date of signature of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its related entities that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive parts as defined in Paragraph 14 ("Relevant Offense"), except that the protections granted in this paragraph do not apply to the five individuals listed in Attachment A filed under seal;

(b) Should the United States determine that any current or former director, officer, or employee of the defendant or its related entities may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c) If any person requested to provide cooperation under Paragraph 17(b) fails to comply with his or her obligations under Paragraph 15, then the terms of this Plea Agreement as they pertain to that person and the agreement not to prosecute that person

granted in this Plea Agreement will be rendered void, and the United States may prosecute such person criminally for any federal crime of which the United States has knowledge, including, but not limited to any Relevant Offense;

(d)     Except as provided in Paragraph 17(e), information provided by a person described in Paragraph 17(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), contempt (18 U.S.C. §§ 401-402), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses;

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 15 of this Plea Agreement, the agreement in Paragraph 17(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case will be rendered void;

(f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses;  any crime of violence; or perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), contempt (18 U.S.C. §§ 401-402), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses; and

(g)     Documents provided under Paragraphs 14(a) and 15(a) will be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its related entities.

18.     The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States.  This paragraph does not apply to an individual's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making false statements or declarations (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

19.     The defendant understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take.  However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of the defendant and its related entities as a matter for that agency to consider before determining what action, if any, to take.  The defendant nevertheless affirms that it wants to plead guilty regardless of the suspension or debarment consequences of its plea.

## REPRESENTATION BY COUNSEL

20.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation.  The defendant has thoroughly reviewed

this Plea Agreement and acknowledges that counsel has advised it of the nature of the charges, any possible defenses to the charges, and the nature and range of possible sentences.

## **VOLUNTARY PLEA**

21.     The defendant's decision to enter into this Plea Agreement and to tender pleas of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement and Attachment A.  The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## **VIOLATION OF PLEA AGREEMENT**

22.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its related entities has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 14 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its related entities will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.  The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its related entities for any offense referred to in

Paragraph 16 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

23.     The defendant understands and agrees that in any further prosecution of it or its related entities resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or its related entities' violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its related entities, or current or former directors, officers, or employees of it or its related entities to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its related entities. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

24.     This Plea Agreement and Attachment A constitute the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

25.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

26.     The undersigned attorneys for the United States have been authorized

by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

27.    A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: September 26, 2013

Respectfully submitted,

BY: 高原 勝男

Katsuo Takahara
Vice President and Representative Director
Mitsuba Corporation

BY: _____

Kenneth W. Gaul
Nancy H. McMillen
Jason D. Jones
Megan E. Gerking
Shane Cralle

Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 5th Street, N.W.
Washington, D.C. 20530
    Tel.: (202) 307-6147

BY: _____

Gary R. Spratling
George A. Nicoud III
Gibson Dunn & Crutcher, LLP
555 Mission Street
San Francisco, CA 94105
    Tel.: (415) 393-8200

20

## MITSUBA CORPORATION
### CONFIRMATION OF BOARD RESOLUTIONS

**TO WHOM IT MAY CONCERN:**

This is to confirm, at the meeting of Board of Directors of **MITSUBA CORPORATION** (the "**Company**"), held on September 18 2013, that:

    **IT IS RESOLVED THAT,** the execution, delivery and performance of the Plea Agreement with the United States Department of Justice and the Company, in substantially the form attached hereto, is hereby approved;

    **IT IS RESOLVED THAT,** Mr. Katsuo Takahara, Vice President and Representative Director of the Company and Mr. George A. Nicoud III of GIBSON, DUNN & CRUTCHER LLP are authorized, empowered and directed to execute and deliver the Plea Agreement in the name and of behalf of the Company, and;

    **IT IS RESOLVED THAT,** Mr. Katsuo Takahara, Vice President and Representative Director of the Company, Mr. Kenichi Mita, Director, Executive Managing Officer of the Company, Mr. Nobuyuki Take, Operating Officer of the Company and Mr. George A. Nicoud III of GIBSON, DUNN & CRUTCHER LLP, or any of them, are authorized, empowered and directed to represent the Company before any courts or governmental agencies in order to make statements and confirmations in accordance with the Plea Agreement, including entering a guilty plea on behalf of the Company.

### CERTIFICATE

I, Yuichi Nagase, Representative Director and President of **MITSUBA CORPORATION** (the "**Company**"), a company organized and existing under the laws of Japan, do hereby certify that the foregoing resolutions adopted by the Board of Directors of the Company, at a meeting of the Board of Directors held on September 18, 2013 in 1-2681 Hirosawa-cho, Kiryu-shi, Gumma-pref., 376-8555 Japan are true, correct and complete and that the said resolutions have not been rescinded, revoked, amended, modified or replaced, and remain in full force and effect, as of the date hereof.

Signed in Kiryu, Japan on this 18th day of September, 2013 by:

長瀬 裕一

_____
Yuichi Nagase
Representative Director and President
MITSUBA CORPORATION