```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3                            _   _   _

 4      IN RE:  AUTOMOTIVE PARTS
        ANTITRUST LITIGATION
 5
                        MDL NO. 12-02311
 6      _____/

 7
                 SETTLEMENT REGARDING NIPPON SEIKI DEFENDANTS
 8
                   BEFORE THE HONORABLE MARIANNE O. BATTANI
 9                      United States District Judge
                   Theodore Levin United States Courthouse
10                      231 West Lafayette Boulevard
                             Detroit, Michigan
11                      Thursday, May 15, 2014

12
        APPEARANCES:
13
        Direct Purchaser Plaintiffs:
14
                DAVID H. FINK
15              FINK & ASSOCIATES LAW
                100 West Long Lake Road, Suite 111
16              Bloomfield Hills, MI  48304
                (248) 971-2500
17
                LEWIS H. GOLDFARB
18              McELROY, DEUTSCH, MULVANEY & CARPENTER, L.L.P.
                1200 Mount Kemble Avenue
19              Morristown, NJ  07962
                (973) 993-8100
20
                GREGORY P. HANSEL
21              PRETI, FLAHERTY, BELIVEAU &
                PACHIOS, L.L.P.
22              One City Center
                Portland, ME  04112
23              (207) 791-3000

24

25
```

```
 1    APPEARANCES:   (Continued)

 2    Direct Purchaser Plaintiffs:

 3            STEVEN A. KANNER
              FREED, KANNER, LONDON & MILLEN, L.L.C.
 4            2201 Waukegan Road, Suite 130
              Bannockburn, IL  60015
 5            (224) 632-4502

 6            JOSEPH C. KOHN
              KOHN, SWIFT & GRAF, P.C.
 7            One South Broad Street, Suite 2100
              Philadelphia, PA  19107
 8            (215) 238-1700

 9            EUGENE A. SPECTOR
              SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
10            1818 Market Street, Suite 2500
              Philadelphia, PA  19103
11            (215) 496-0300

12
      End-Payor Plaintiffs:
13
              ADAM T. SCHNATZ
14            THE MILLER LAW FIRM, P.C.
              950 West University Drive, Suite 300
15            Rochester, MI  48307
              (248) 841-2200
16

17    For the Defendants:

18            MOLLY M. DONOVAN
              WINSTON & STRAWN, L.L.P.
19            200 Park Avenue
              New York, NY  10166
20            (212) 294-4692

21            FRED K. HERRMANN
              KERR, RUSSELL & WEBER, P.L.C.
22            500 Woodward Avenue, Suite 2500
              Detroit, MI  48226
23            (313) 961-0200

24

25
```

Case 2:12-md-02311-SFC-RSW  ECF No. 730, PageID.10530  Filed 06/03/14  Page 3 of 28
Settlement regarding Nippon Seiki Defendants - May 15, 2014

3

```
 1    APPEARANCES:   (Continued)

 2    For the Defendants:

 3            TIFFANY LIPSCOMB-JACKSON
              JONES DAY
 4            51 Louisiana Avenue NW
              Washington, D.C.  20001
 5            (202) 879-4645

 6            BRIAN C. SMITH
              WILMER HALE
 7            1875 Pennsylvania Avenue NW
              Washington, D.C.  20006
 8            (202) 663-6185

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    TABLE OF CONTENTS

 2                                              Page

 3
```

4    Settlement placed on the record..................... 7

 5    Court's approval of settlement.......................18

```
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   Detroit, Michigan

2   Thursday, May 15, 2014

3   at about 11:00 a.m.

4                              –    –    –

5           (Court and Counsel present.)

6           THE CASE MANAGER:  All rise.

7           The United States District Court for the Eastern

8   District of Michigan is now in session, the Honorable

9   Marianne O. Battani presiding.

10          You may be seated.

11          The Court calls In Re:  Nippon Seiki.

12          THE COURT:  Good morning.

13          THE ATTORNEYS:  (Collectively) Good morning, Your

14  Honor.

15          THE COURT:  Okay.  May I have your appearances,

16  please?

17          MR. KOHN:  Good Morning, Your Honor.  For the

18  direct purchaser plaintiffs, Joseph Kohn, Kohn, Swift & Graf

19  in Philadelphia.

20          MR. HANSEL:  For the direct purchasers also,

21  Greg Hansel from Preti, Flaherty, Portland, Maine.

22          MR. SPECTOR:  Good morning, Your Honor.

23  Eugene Spector on behalf of the direct purchasers, Spector,

24  Roseman, Philadelphia.

25          MR. KANNER:  Good morning, Your Honor.  Rounding

1    out the lineup for direct purchasers, my name is Steve Kanner

2    with Freed, Kanner, London & Millen from Chicago.

3            THE COURT:  So nobody, nobody brought us good

4    weather from all over the country.

5            MR. HERRMANN:  Good morning, Your Honor.

6    Fred Herrmann on behalf of Nippon Seiki defendants.

7            MS. DONOVAN:  Molly Donovan of Winston & Strawn

8    also for the Nippon Seiki defendants.

9            MS. LIPSCOMB-JACKSON:  Good morning, Your Honor.

10   Tiffany Lipscomb-Jackson, Jones Day, for the Yazaki entities.

11           MR. SMITH:  Good morning, Your Honor.  Brian Smith

12   for Denso Corporation and Denso International America from

13   Wilmer Hale, Washington D.C.

14           THE COURT:  Okay.

15           MR. FINK:  And David Fink appearing on behalf of

16   plaintiffs.  Sorry.

17           THE COURT:  Okay.  Very good.  Let me get these

18   papers in order.

19           We are here today for direct purchasers' motion for

20   preliminary approval of a proposed settlement.  I think I've

21   got that right.  Okay.  And, Mr. Kohn?

22           MR. KOHN:  Thank you, Your Honor.  May it please

23   the Court, we are the co-lead counsel, and Mr. Fink, liaison

24   counsel, are very pleased to be here before you today on this

25   motion for preliminary approval of the settlement with the

1    three Nippon Seiki entity defendants.

2         Initially we do want to thank the Court for

3    scheduling this as a separate matter and to keep the matter

4    moving and not waiting for the next regularly-scheduled

5    conference.

6         THE COURT:  Any word settlement gets a real quick

7    hearing.

8         MR. KOHN:  Well, I think all of us are here and

9    wanted to be here because we do view this as somewhat of a

10   mile marker in the case or a crossroad.  We've certainly

11   appreciated, I think all counsel, the Court's patience with

12   the arguments on the Twombly motions and the jurisdictional

13   motions, but I certainly -- I can say personally I'm pleased

14   to be here not on a Twombly motion today, and we hope that as

15   this litigation moves we are here more frequently on motions

16   for approval of settlements than we are on the Twombly

17   motions, but that's all part of the process.

18        If I could just --

19        THE COURT:  Can I ask you a question?

20        MR. KOHN:  Certainly.

21        THE COURT:  I was curious and totally ignorant as

22   to how all of this will come together in the end, but on the

23   indirect proposed settlement that we did and put on the

24   record -- when was that?

25        MR. KOHN:  February, Your Honor.

1          THE COURT:  February.  There was a -- there is a

2     delay in that in terms of proceeding?

3          MR. KOHN:  Right.

4          THE COURT:  This settlement for the directs has

5     very specific dates, I know there's a little dispute over the

6     dates, although I'm not even sure if that was resolved.

7          MR. KOHN:  We have been able to resolve that and we

8     have a revised --

9          THE COURT:  All right, good, good, but that is the

10    plan that you will proceed on this -- with this defendant on

11    this part to do the distribution; is that correct?

12         MR. KOHN:  Yes, yes, Your Honor.  So in that sense

13    this is -- while it completes the settlements of the three

14    plaintiff groups with respect to the Nippon defendants in the

15    IPC case, it is progress in that sense that those defendants

16    will be done finally from that part of the litigation, and

17    this will be the first of the settlements that is moving

18    through the final hearing approval process, and there's

19    simply different issues with respect to the number of class

20    members in the various classes, the direct purchasers are

21    fewer than consumers of automobiles, and we would like to get

22    the finality sooner.

23         Our proposal at this point is not to have a claim

24    form and a distribution with respect to IPC; our usual

25    practice is to wait until there are several settlements or in

1    the best of all worlds the entire case is settled so you can

2    do the claim process once just for efficiency of sending

3    checks to the class members.

4         THE COURT:  That's what I wanted to know, where the

5    end result was and if you were going to go over this over and

6    over and over?

7         MR. KOHN:  But the sooner we get done with the one,

8    then it would certainly be our hope to move either with the

9    litigation or settlement, and, as Your Honor may be aware, if

10   there are other things that have been filed in some of the

11   constituent cases, our plan is the direct purchasers would be

12   the same with respect to that.

13        So just very briefly for the record, Your Honor,

14   the first of the direct purchaser IPC complaints was filed in

15   February of 2012, the amended consolidated complaint was in

16   January of 2013, and then the settlement of direct purchaser

17   case was signed on April 4th, so approximately a year and

18   several months after the consolidated complaint.

19        The standards for preliminary approval we set forth

20   we think in great detail in our brief, and cited the manual

21   and recent decisions, including Judge Borman's decisions in

22   Packaged Ice, that preliminary approval is not the final

23   approval, you are determining that this is sufficiently

24   serious and within a realm of reason such that it is

25   appropriate to send notice to the class, give them the

1    opportunity to withdraw from the settlement if they choose to

2    register any objection that they might have, and then at the

3    final hearing is when the Court would make the final

4    determination to certify a settlement class to decide whether

5    the settlement is fair, reasonable.  And we had also provided

6    in the notice to notify class members that we would request

7    the Court's approval to be able to disburse a portion of the

8    settlement up to, but not exceeding, 20 percent of this

9    settlement for future litigation expenses going forward.

10   That's all subject to Your Honor's approval, and we would

11   brief that.  We did cite some cases that have approved those

12   provisions, and there are many more that we will put in our

13   briefing for the final hearing.

14        THE COURT:  And that 20 percent here is for

15   expenses, not attorney fees; is that correct?

16        MR. KOHN:  Correct, only for the expert costs and

17   that sort of data, and we provide in the draft notices that

18   counsel are not seeking any attorney fees at this time.

19        The notice program is also described in the brief,

20   and we did prepare a schedule which was not filed, all

21   counsel have reviewed it, just to coordinate because the way

22   the order was proposed it just talked about numbers of days,

23   so 60 days from this, and 85 days, so we put it more into a

24   calendar format.

25        The initial issue that Your Honor had touched on

1   about the dispute, the non-settling defendants did request

2   some additional time to prepare the list -- the mailing list

3   of the class members which we have agreed to.  Obviously if

4   we can get those lists sooner we can start the mailing sooner

5   and build more time into the schedule.

6          We would request, Your Honor, to consider a date

7   for the final fairness hearing, which we project it could be

8   as soon as October 27th, which is a Monday, anytime

9   thereafter at the Court's convenience we think would be

10  appropriate.  Again, these are dates that all counsel have

11  agreed to, settling defendants as well as the non-settling.

12  A revised form of the proposed preliminary approval order was

13  filed by Mr. Fink's office yesterday that incorporated these

14  date changes from the one that was filed with our brief back

15  in April.

16         So, you know, we do think we are obviously within

17  the range of preliminary approval.  This is a settlement of

18  $5.25 million.  It is slightly more than five times the

19  criminal fine.  It is the largest dollar-amount settlement so

20  far of the settlements with Nippon Seiki.  It -- for the same

21  reasons that the Court granted preliminary approval with

22  respect to the indirect settlements, looking as these as

23  icebreaker settlements, there's also significant cooperation

24  that will be available to us even during the period of the

25  stay for the Department of Justice, an additional reason, but

1    we believe in terms of the direct-purchaser class that this

2    is a sum of money that can be approved, can be used to

3    contribute to the ultimate distribution to those companies

4    and start to bring both IPC and the broader litigation to a

5    conclusion.

6         We would respectfully request Your Honor approve

7    the order as agreed by all parties and look forward to seeing

8    you again in June.

9         THE COURT:  Okay.  Let me -- just while we are on

10   dates and I have the calendar open, that October 27th date, I

11   want to make sure that date is good because that obviously

12   is --

13        MR. KOHN:  That is a Monday that week.

14        THE COURT:  It is the first day of the conference

15   in the MDL -- in Florida, I don't remember what that is

16   called, but it is the first day of that conference, I just

17   got notice.  So I could do it before that if you wanted to

18   move it up a week or if you wanted to move it forward?

19        MR. KOHN:  I think, Your Honor, there is this

20   provision in the Class Action Fairness Act, also called CAFA,

21   that requires a minimum of 90 days from the notice to the

22   hearing.

23        THE COURT:  Right.

24        MR. KOHN:  We probably could, you know, beat that

25   if we get the notice out a few days later but why take a

1    chance, so I think maybe the next week would be practical.

2         THE COURT:  How about Tuesday, November 4th?  I

3    would ask everyone to look --

4         MR. KOHN:  It happens to be election day.  I don't

5    know if that's an issue for some people.

6         THE COURT:  Oh, let's not do that just in case it

7    is a problem for somebody.  Okay.  We could do November 5th,

8    November 6th, I mean, I'm pretty free?

9         MR. KOHN:  The 5th or 6th would be fine.

10        THE COURT:  The 5th would be fine.  Okay.  Let's do

11   November 5th then.  We will start at 2:00 -- or do you want

12   to start in the morning?

13        MR. KOHN:  I think 11:00 is a good --

14        THE COURT:  You want to stick with the 11:00?

15   Okay.

16        MR. KOHN:  Thank you, Your Honor.

17        MR. KANNER:  Your Honor, if I might?

18        THE COURT:  Yes.

19        MR. KANNER:  As I previously indicated,

20   Steve Kanner on behalf of class plaintiffs.

21        I did, if the Court is interested in a brief update

22   with respect to the Lear settlement, come prepared to give

23   you at least a snapshot of what is happening.

24        THE COURT:  Okay.

25        MR. KANNER:  I think it might be useful to the

1    Court.  In fact, the comments about -- the discussion about

2    the date for final approval on this may work out for us, and

3    I will tell you why I think it is a possibility.

4         The Lear settlement with all of the three class

5    groups has, in fact, been submitted to the bankruptcy court,

6    I believe we advised your offices about the settlement.  I

7    brought a copy, I don't know if the Court has it, but this is

8    the bankruptcy filing, and being environmentally conscious we

9    printed it on both sides, it's a hundred and some odd pages.

10         THE COURT:  Good.

11         MR. KANNER:  I'm happy to submit it to the Court.

12         THE COURT:  I would like that.  If you would give

13   it to Molly so I can read it later.

14         MR. KANNER:  That has, of course, complete copies

15   of all the settlement agreements for each of the groups, the

16   notice, the entire series of documents that would be filed

17   along with the settlement agreement.  There are some dates

18   which I thought I would advise the Court of.

19         The decision by the bankruptcy court, and we are

20   optimistic, although I'm a stranger to the labyrinth of

21   bankruptcy, folks who know a lot more about it --

22         THE COURT:  You should be around here, we are all

23   getting very familiar with it.

24         MR. KANNER:  I understand.  Fortunately that's not

25   been my area, but May 27th is the final -- is the date for a

1   decision by the bankruptcy court.  As I understand it, there

2   is a 20-day appeal period beyond that, so that puts us out to

3   June 16th or 17th, and it is our intention to file the motion

4   for preliminary approval as soon as we have approval and as

5   soon as the period for appeal to the bankruptcy court

6   decision has passed, which would be shortly after June 16th

7   or 17th.

8          Is it possible if the defendants can put together

9   the mailing lists a little more quickly, we could possibly do

10  the same date for final approval hearing on both the Lear and

11  the Nippon Seiki settlements.  And I think from my own

12  standpoint of judicial economy and our own time and effort it

13  seems to make sense that if we can do both of them the same

14  day I certainly would like to strive to accomplish that.

15         THE COURT:  Well, that would be wonderful.  You

16  will have to really be on top of it to make sure all the time

17  periods and the notices, et cetera --

18         MR. KANNER:  We may just be able to squeak it in.

19  If not, you may have the privilege of seeing us a week or two

20  after that for -- after the Nippon Seiki settlement agreement

21  to do one more, but I'm going to try my best.

22         THE COURT:  Okay.  Well, let's try for it and see

23  if you can do it.

24         MR. KANNER:  Exactly, Your Honor.

25         THE COURT:  Okay.  Thank you.

1        MR. KANNER:  Thank you very much.

2        THE COURT:  As to the defendants on the preliminary

3   approval --

4        MR. HERRMANN:  It has been --

5        THE COURT:  Oh, just one other thought before we

6   forget this -- before I forget here, Mr. Kanner.

7        MR. KANNER:  Sure.

8        THE COURT:  Another possibility, if you are talking

9   about one week, you know, move it up a week or two weeks, you

10  know, we might move this other settlement -- or fairness

11  hearing a week or two.  It is going to have to be coordinated

12  because of the notices, but it is possible if you are that

13  close that you could --

14       MR. KANNER:  I will make that -- we will talk about

15  that in the next day or two.  Mr. Spector made a comment as I

16  sat down, and I'm sorry, I wasn't directly focusing, that may

17  actually be very significant over here; we may file our

18  motion for the defendants to produce the mailing lists

19  earlier.  If we have those mailing lists available we may

20  just be able to -- I think, in fact, it is much more likely

21  we can make the deadline, and if they are going to accumulate

22  the mailing lists anyway I may have that motion set for -- I

23  believe we are due here in two weeks.

24       THE COURT:  Okay.

25       MR. KANNER:  And that would -- that would push the

1    ball ahead by at least 30 days in which case we have a good

2    shot at it.

3              THE COURT:  All right.  So all possibilities but

4    the aim is to get them together.

5              MR. KANNER:  We are going to do everything we can

6    to move it ahead as quickly as we possibly can.

7              THE COURT:  Okay.

8              MR. KANNER:  Thank you.

9              MR. HERRMANN:  Fred Herrmann, Your Honor, for the

10   Nippon Seiki defendants.  Mr. Kohn accurately presented the

11   settlement terms and the motion to the Court.  We have

12   nothing further to add, and, of course, have no objection

13   unless the Court has any questions?

14             THE COURT:  No.

15             MR. HERRMANN:  Thank you, Your Honor.

16             THE COURT:  Okay.  Ms. Jackson?

17             MS. LIPSCOMB-JACKSON:  Good morning, Your Honor,

18   Tiffany Lipscomb-Jackson of Jones Day representing Yazaki,

19   but speaking on behalf of Yazaki and Denso with respect to

20   the motion for preliminary approval for the IPC case.

21             THE COURT:  And I understand that you have -- you

22   want to make sure that the provisions are in there to allow

23   you to object to the class cert?

24             MS. LIPSCOMB-JACKSON:  Yes, just as we stated with

25   the end payer and the auto dealer motion for preliminary

1 approval, I think it is paragraph 20 in what is proposed

2 right now, that is very important to us.  And if the Court is

3 inclined to enter the order as it was submitted by direct

4 purchasers yesterday then I don't think we have any other

5 concerns, but to the extent that the Court decided that it

6 did not want to enter paragraph 20 we would simply ask for

7 time to build the necessary record to have a fulsome

8 opposition to class cert?

9   THE COURT:  No, I think that paragraph 20 was

10 agreed to by all of the plaintiffs, and certainly you

11 requested it, and I think it is fair, it shouldn't hold up

12 this settlement, this should go forward, but I understand

13 that you do not want the impact on the definition of class?

14   MS. LIPSCOMB-JACKSON:  Correct, Your Honor, and so

15 that's our only concern.  As Mr. Kohn stated, we have come to

16 terms on the amount of time it takes to pull together the

17 addresses that they have requested so we are good.

18   THE COURT:  Okay.  Very good.  Very good.

19   MS. LIPSCOMB-JACKSON:  Thank you, Your Honor.

20   THE COURT:  All right.  Anybody else want to say

21 anything before -- Mr. Fink?

22   MR. FINK:  Not on this motion, I just wanted to

23 make a comment when we were done with this proceeding.

24   THE COURT:  I just want to put a few remarks on the

25 record so it is on the record that I approve this because I

1   do approve it.  Certainly in these motions the plaintiffs ask

2   for this preliminary approval for a provisional approval of

3   the settlement class, for dissemination of a notice of the

4   proceedings against Nippon, and authorization to provide

5   notice of the settlement agreement to class members at a

6   later date in a form and manner to be approved in advance,

7   and appointment of ACap as settlement class representative

8   and interim co-lead class counsel as settlement class

9   counsel.

10          We know that Yazaki and Denso, while they might not

11  be entitled to object, they have -- they filed a response and

12  we have already put that on the record, so I don't need to go

13  over that.

14          The first thing is should the Court grant the

15  preliminary approval of the proposed settlement.  We know

16  that the settlement provides for a guaranteed cash recovery

17  of $5.25 million, I believe, plus accrued interest, and

18  Nippon Seiki will pay the money into an interest-bearing

19  escrow account.

20          I did want one other -- I have one other question

21  here, this account versus the account on the indirects is a

22  separate --

23          MR. KOHN:  Yes, Your Honor, these are separate

24  classes, separate accounts, structured in a similar manner

25  but separate.

1          THE COURT:  Thank you.  I just wanted to be sure

2     about that.  This amount is far greater than the $1 million

3     fine paid for defendant's involvement in the price fixing,

4     Defendant Nippon Seiki's involvement.

5          And the governing standard here under 23(e)(2) is

6     that the settlement must be fair, reasonable and adequate.

7     The Court considers whether the proposed settlement falls

8     within the range of possible approval.  In reviewing this

9     matter the first step here is the preliminary prenotification

10    hearing to determine whether the proposed settlement is

11    within the range of possible approval.

12         Here based on the information that has already been

13    presented to the Court as well as the motion and briefs

14    relating to the IPCs, the Court finds the proposed settlement

15    deserves preliminary approval.

16         Factors favoring settlement show in this Court's

17    opinion that the result appears fair and reasonable and

18    adequate in light of the expense, duration and uncertainty of

19    the continued litigation.  The claims here I know are complex

20    and the issues are numerous.  The defendants are foreign

21    parties so it certainly makes discovery a little more

22    complicated.

23         Appeal is more -- is more certain, of course, in

24    the absence of the settlement and the requirement -- the

25    agreement requires immediate and substantial cooperation.  I

1   think that's an important part of this settlement given the

2   amount that you get the cooperation of the defendant, Nippon.

3          And I also believe that the negotiations involved

4   arm-length negotiations by experienced counsel, and I say

5   here for the record, and I know it is certainly a factor, is

6   that the Court give weight to experienced counsel, I know the

7   backgrounds of counsel, I feel very confident in counsel and

8   their abilities to handle these matters and therefore I feel

9   that that gives much credit and credibility to the proposed

10  settlement.

11         The time table for the notices I think is fair and

12  you have resolved that so I have no problems with that.

13         In terms of the request to allow 20 percent of the

14  settlement fund to be used for litigation expenses, I think

15  that's fair.  The Court is well aware of the time that the

16  attorneys have put in -- plaintiffs' attorneys at least, and

17  I'm sure the defendants' attorneys, but I get their billings

18  so -- and I know what their billings are and how much has

19  gone into this, and I know they have their own fund, so I

20  think it is perfectly reasonable to allow 20 percent, I think

21  that percentage is a reasonable amount.

22         The next issue is whether the proposed settlement

23  class should be provisionally certified under Rule 23.  I'm

24  going to briefly just go over those factors.

25         Numerosity:  We know that there are many plaintiffs

1    and the class contains so many members that joinder would be

2    impracticable, also they are throughout the United States.

3          The questions of law or fact are common to the

4    class, so there certainly is commonality.  Antitrust

5    price-fixing conspiracy cases by their nature deal with

6    common legal and factual questions about the existence, scope

7    and effect of the alleged conspiracy.  And there are a number

8    of factors which I'm not going to repeat, I think that it

9    is -- it is very clear that there is a commonality here.

10         Also, typicality; the proposed class representative

11   can satisfy this requirement or this prerequisite if its

12   claim arises from the same event or practice that gives rise

13   to the claim of other class members.  Here the Court is

14   satisfied that the individual plaintiffs' injury arises from

15   the same wrong that is alleged as injuring the class as a

16   whole.

17         In terms of adequacy of representation, the Court

18   must be assured, and in this case certainly feels assured,

19   that the representative parties will fairly and adequately

20   protect the interest of the class, that is the named

21   plaintiffs would represent the class, and there's not a

22   conflict amongst them, and the other thing is the adequacy of

23   class counsel representation.  Well, we know here that ACap,

24   at least the Court finds, will fairly and adequately protect

25   the interest of the class because it has the same interest as

1    other class members.   Accordingly, the Court finds that the

2    plaintiffs are adequate class representative and that their

3    counsel, I have already indicated the Court has confidence in

4    the counsel because I know their background and because they

5    have been here practicing extensively in this action, and I

6    find it to be very good representation.

7            So because rule -- another rule is that the

8    requirement of 23(b)(3), that punitive class plaintiffs

9    demonstrate the common questions predominate over questions

10   affecting only individual members, and that class resolution

11   is superior to other methods for the fair and efficient

12   adjudication of the controversy.

13           Here the claim involves a single global conspiracy

14   from which all proposed class members' injuries arise, and

15   this suggests the existence of shared issues relative to the

16   scope of the conspiracy, the market, the aggregate amount of

17   damages, et cetera.   Evidence shows a violation as to one

18   settlement class member is common to the class and will

19   provide violation to all.

20           So I find that there are the common issues, that a

21   class action is the superior method to adjudicate these

22   claims, and therefore for purposes of the proposed settlement

23   only the Court, pending final approval of the proposed

24   settlement after the final fairness hearing, that the

25   prerequisites of a class action under Rule 23 have been met.

1          I think I covered all the points but if I didn't I

2    want to make sure they are on the record.  Is there anything

3    else anybody wants to add?

4          MR. KOHN:  Not from our perspective, Your Honor.  I

5    think you did cover everything.

6          THE COURT:  Anything from defense?

7          MR. HERRMANN:  Nothing to add, Your Honor.

8          THE COURT:  All right.  Thank you very much.  The

9    Court will approve the proposed preliminary settlement and I

10   will sign the order that was entered just yesterday.  I know

11   I have an older copy, but I will do the one with the updated

12   dates.

13         Mr. Fink?

14         MR. FINK:  Your Honor, we are done with the

15   business that's on the agenda, right?

16         THE COURT:  We are.

17         MR. FINK:  Your Honor, I just want to say that by

18   the time that we come back to this Court, which is June 4th,

19   most, if not everyone, in the Court is aware there will be

20   one very significant change.

21         THE COURT:  True.

22         MR. FINK:  And that is the startling and

23   well-deserved retirement of your case manager, Bernadette.

24   Most of us were dumbfounded when we got the word that she had

25   worked for 40 years in this building suggesting that the

1    child labor laws were violated when she was hired.

2          And I have to say that in this process, in this

3    case -- these cases in particular, her patience, her skill,

4    her good sense of humor through all the absurdity of what she

5    has had to deal with the attorneys as we try to move

6    consistent with the rules and procedures of this Court and

7    yet still move along in a friendly and cooperative way, it is

8    astonishing what she has been able to do.  We are all -- when

9    I say all, everyone on the defendants' and plaintiffs' side,

10   while we are saddened that she is leaving, we all -- I know

11   they all join me in wishing her well in her retirement and it

12   is our great loss but she obviously deserves this and we will

13   miss her sorely.

14          THE COURT:  Thank you.

15          MR. HERMANN:  Hear, hear.

16          THE COURT:  Thank you.

17          THE CASE MANAGER:  It takes David Fink for me to

18   cry.  I thank you so much.  It has been a pleasure working

19   with all of you and I will miss you too.  Thank you.

20          THE COURT:  Bernie almost changed her mind today

21   about retiring as she came back and said oh, I will miss

22   these attorneys, they are all so good.

23          THE CASE MANAGER:  It's true.

24          THE COURT:  So you have -- I appreciate Bernie, the

25   greatest loss is, of course, we are going to miss her here

1   terribly.  With the 40 years of experience, I mean, that was

2   from the cradle to the court, I don't know why but she did

3   that, she knows everything so -- she knows everyone, and that

4   has been an invaluable asset to me personally and to our

5   chambers, so we will miss her too.

6          We are going to formally say goodbye on Monday, the

7   19th, we are having a little party here.  If any of you are

8   around you are welcome.

9          I want to say something else, I think it is a

10  credit to you.  And, you know, many of you I have heard your

11  names just in class-action discussions, you know, your names

12  pop up, and it was very exciting to me to actually come and

13  have an opportunity to see you in action, but I think that

14  your professionalism is exhibited dramatically in this

15  action.  I'm sure you do it in every action but I only have

16  this, and as you know, this is the first MDL I have had, and

17  I have just been absolutely amazed at what you have all done.

18  I wish your attorney fees weren't so high.

19          MR. FINK:  We wish they weren't so low.

20          THE COURT:  But I thank you very much.  I will see

21  you on the 4th.  I think we just sent out notice for agenda

22  items went out --

23          THE CASE MANAGER:  It will, Judge, it has not yet

24  but it will.  I did mention to them it is going out today.

25          MS. LIPSCOMB-JACKSON:  Can I make one point?  I

1  hate to come in after all of those great speeches and say

2  something that is not so uplifting, although I agree with

3  everything that was said.

4       I just want to make the point, and I'm speaking

5  only on behalf of Yazaki at this time, with respect to the

6  Lear settlement and the customer list, it would certainly not

7  be our position that it is going to be the same list that is

8  generated with respect to the IPC case, and so I just want to

9  clarify to the extent Mr. Kanner's statements could have been

10 interpreted to mean that.  That was my only piece.  Thank

11 you.

12      MR. KANNER:  They weren't.  Different product, Your

13 Honor, I was just hoping to get the process started a little

14 earlier, that's all.

15      THE COURT:  Okay.  Well, there may be an

16 interesting motion coming up, we will see.  Okay.  Thank you

17 all very much.

18      THE ATTORNEYS:  (Collectively)  Thank you, Your

19 Honor.

20      (Proceedings concluded at 11:31 a.m.)

21                      —    —    —

22

23

24

25

1               *CERTIFICATION*

2

3               I, Robert L. Smith, Official Court Reporter of

4    the United States District Court, Eastern District of

5    Michigan, appointed pursuant to the provisions of Title 28,

6    United States Code, Section 753, do hereby certify that the

7    foregoing pages comprise a full, true and correct transcript

8    taken in the matter of AUTOMOTIVE PARTS ANTITRUST LITIGATION,

9    Case No. 12-2311, on Thursday, May 15, 2014.

10

11

12                         *s/Robert L. Smith*
                          Robert L. Smith, RPR, CSR 5098
13                        Federal Official Court Reporter
                          United States District Court
14                        Eastern District of Michigan

15

16

17   Date:   06/03/2014

18   Detroit, Michigan

19

20

21

22

23

24

25