**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**In Re: AUTOMOTIVE PARTS ANTITRUST
LITIGATION**

12-md-02311
Honorable Marianne O. Battani

**ALL PARTS**

**THIS RELATES TO: ALL CASES**

**COMMENTS OF CERTAIN DEFENDANTS NOT IN THE WIRE HARNESS
CASES ON THE END-PAYOR AND AUTOMOBILE DEALER PLAINTIFFS' JOINT
STATEMENT AND SUPPLEMENT TO JOINT STATEMENT REGARDING CLASS
CERTIFICATION SCHEDULE IN THE WIRE HARNESS CASES**

The Defendants listed in Appendix A ("Commenting Defendants"), none of which are

named as Defendants in the Wire Harness cases, but which are named as Defendants in other cases

in this MDL proceeding, respectfully submit the following comments on the Joint Statement

Regarding Class Certification Schedule (the "Joint Statement," 12-cv-00103 Dkt. 211) and

Supplement to Joint Statement Regarding Class Certification Schedule (the "IPP Supplement,"

12-cv-00103 Dkt. 224) filed by the End-Payor and Automobile Dealer Plaintiffs (together,

"Indirect Purchaser Plaintiffs") in the Wire Harness cases because their proposals to delay class

certification indefinitely and to conduct any trial in four phases threaten to affect cases other than

the Wire Harness cases in this MDL proceeding.

Although the IPP Supplement was filed solely in the Wire Harness cases, Commenting Defendants file this submission out of concern that Indirect Purchaser Plaintiffs are proposing that their trial structure be applied to all cases across all parts, and that even if Indirect Purchaser Plaintiffs do not directly intend for it to be applied to all parts, all subsequent parts may nonetheless be affected by rulings regarding trial structure in the Wire Harness cases.  For the reasons outlined below, the IPP Supplement is unworkable, tramples Defendants' constitutional due process and Seventh Amendment rights, and runs afoul of the procedural guarantees of Federal Rule of Civil Procedure 23.  In light of these flaws, Commenting Defendants urge the Court to defer consideration of how the Wire Harness or any other case should be tried, set a class cerification schedule in the Wire Harness cases, and take up in due course with the input of the parties to each particular case the consideration of class certification schedules in the remaining cases.

## THE COURT SHOULD DISREGARD PLAINTIFFS' PREMATURE PROPOSAL ABOUT TRIAL AND SHOULD SET A SCHEDULE FOR CLASS CERTIFICATION

The only thing clear about the Indirect Purchaser Plaintiffs' filings is that they are not what they purport to be—statements about a *schedule* for class certification in the Wire Harness cases. Nowhere in the filings do the Indirect Purchaser Plaintiffs suggest any deadline, time frame, duration, sequence, or other scheduling item whatsoever.  Instead, they propose that there be no schedule, purportedly because setting a schedule now (when the Wire Harness cases have been pending for three years) would be "premature."  (Joint Statement, p. 1; IPP Supplement, p. 2).

Implicitly acknowledging that their claims of prematurity in their Joint Statement are not well-founded, Indirect Purchaser Plaintiffs filed the IPP Supplement to put before the Court a proposed structure for *trial*.  This turns the normal sequence of civil litigation on its head.  Rule 23 requires the issue of class certification to be decided at "an early practicable time."  Fed. R. Civ. P.

23(c)(1)(A).  At a constitutional minimum, whether to certify a class must be decided *before* trial.[1]

It makes no sense to assert that it is premature to set a schedule for class certification, but then to

discuss how to structure the trial of whatever claims might remain for whatever classes, if any, that

are certified.  There is an obvious reason for Indirect Purchaser Plaintiffs to try this ploy.  They

face enormous challenges trying to meet the standards of Federal Rule of Civil Procedure 23(b)(3),

and wish to avoid for as long as possible judicial scrutiny of their inability to certify any class.

Indirect Purchaser Plaintiffs simply hope that their red herring proposal about trial will distract the

Court from setting a timetable for resolution of an issue they want never to be resolved.

   The Court should not be distracted by Indirect Purchaser Plaintiffs' proposal as to how to

structure whatever trials might ultimately take place.  There can be little doubt that trials, if in fact

there will be any, are years away.  So there is plenty of time for the parties and Court to see what

classes (if any) are certified, what claims remain, and what issues have been resolved or narrowed

by motion or stipulation.  The parties can then make concrete proposals (as opposed to the vague

and amorphous proposal in the IPP Supplement) and the Court can then make a decision based on

a properly developed record.

   But the Court should set a schedule now for class certification in the Wire Harness cases.

The Indirect Purchaser Plaintiffs claim that much discovery remains, that there is a risk of

duplication of effort, and that coordinating discovery will be complex and difficult.  But rather

than offer any solutions or make any suggestion of what an appropriate timetable might be in light

of these challenges, Indirect Purchaser Plaintiff throw up their hands and say that the class

certification issue should be pushed out indefinitely.  Ignoring the issue is no solution at all.  This

Court has been working hard towards establishing procedures to manage this litigation and there is

---

[1]  See discussion at pages 4-5 below.

no reason to delay as Indirect Purchaser Plaintiffs suggest, especially since the Wire Harness cases have already been pending for three years.  The direct purchasers and each intermediate purchaser (such as dealers) will have to produce detailed evidence about their purchases of individual parts at issue in these cases, the prices they paid, and the prices they charged to their purchasers.  While there will undoubtedly be complexities associated with coordinating discovery, the Court has appointed a Special Master to assist the parties in working through those issues.  There is no reason not to get started.

Further, Indirect Purchaser Plaintiffs' proposal that class certification be delayed or avoided altogether is not only inappropriate, but it is unworkable because it also acts to delay each and every case currently in this MDL and others that may be included, in that the Court needs to decide whether to certify any class or classes well before Defendants' deadlines for summary judgment.  The reason for this is that a decision on the merits does not bind class members until a class has been certified and the opt-out period has expired.  *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) ("a nonnamed class member is [not] a party to the class-action litigation *before the class is certified*") (alterations in original) (quotation omitted).  Unless and until the Court grants class certification and notice is given, members of the putative class are not parties to this action and are not subject to the Court's rulings.  *See id*; *Taylor v. Sturgell*, 553 U.S. 880, 894, 901 (2008); *see also Hansberry v. Lee*, 311 U.S. 32, 43 (1940).  These requirements, which are constitutionally mandated and "grounded in due process," are "implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23" in the class action context. *Taylor*, 553 U.S. at 900–01.  And "in the absence of a certification under that Rule, the precondition for binding [an absent class member] [is] not met."  *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 (2011).

Forcing Defendants to move for summary judgment prior to class certification and notice to the class would violate Rule 23's prohibition against one-way intervention—a no-lose situation for putative class members who could remain a member of the class if the Court rules in their favor, but opt out if the Court makes an unfavorable merits ruling.  *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 547-49 (1974); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012).  This tactic was a "recurrent source of abuse" and was the subject of "considerable criticism" until Rule 23 was revised to prevent it.  *American Pipe*, 414 U.S. at 547-50.   In fact, the notice provisions under Rule 23(c)(2) exist for the purpose of preventing "one-way intervention." *Id. at* 547 (commenting that the 1966 amendments to Rule 23 responded to criticism that "it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one"); Advisory Committee Notes, 1966 Amendments to Rule 23 ("Under proposed subdivision 23(c)(3), one-way intervention is excluded.").  Rule 23(c)(2) provides that class notice must advise the members that "the judgment, whether favorable or not, will include all members who do not request exclusion," and therefore class notice and the opportunity to opt out *must precede* any judgment.  *Id*. (emphasis added).[2]

Commenting Defendants urge the Court to set a class certification schedule in the Wire Harness cases, and eventually in the other cases in MDL 2311, within Rule 23's guidelines that class certification be decided "at an early practicable time."  Doing so will allow these cases to proceed in a timely, efficient, and constitutional fashion.

---

[2] *See also Bertrand v. Maram*, 495 F.3d 455 (7th Cir. 2007) ("Class-action status must be granted (or denied) early … to clarify who will be bound by the decision"); *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995) (Rule 23 "clearly contemplates that the notice requirement will be met before the parties are aware of the district court's judgment on the merits").

**IF THE COURT WERE TO CONSIDER PLAINTIFFS' PROPOSAL ABOUT TRIAL, IT SHOULD REJECT IT**

As noted above, Commenting Defendants suggest that the Court defer any consideration of a trial structure and instead focus on a class certification schedule.  If the Court wishes to consider questions of how to structure trials, Commenting Defendants suggest that the Court direct the parties to meet and confer, possibly with the Special Master, and to present their proposals and arguments consistent with an appropriate briefing schedule.  Taking up this issue raised by Indirect Purchaser Plaintiffs under the guise of what was supposed to be a statement about a schedule for class certification in the Wire Harness case would be inappropriate and deprive the Court of the parties' fullest discussion and consideration of the issues raised by the Indirect Purchaser Plaintiffs' proposal.

Another entirely sufficient reason to defer consideration of the Indirect Purchaser Plaintiffs' proposal is that it is difficult to tell what they are even proposing.  They filed the IPP Supplement in only the Wire Harness cases, but the IPP Supplement reads as if the Indirect Purchaser Plaintiffs are urging the Court to have some massive mega-trial involving scores of different defendants accused of participating in different conspiracies relating to different parts. The Indirect Purchaser Plaintiffs are studiously vague about what class or classes they are proposing—which itself is a reason to reject this proposal—but it appears they may have in mind a single class or a group of classes covering all parts.  To date, however, not a single complaint in this MDL alleges that all Defendants in all cases in this MDL participated in a single overarching conspiracy.  To the contrary, the different cases as to each part all allege *entirely separate conspiracies*, involving different defendants, different time periods, different products, and different alleged victims.  Thus, if one mega-trial is in fact what Indirect Purchaser Plaintiffs are in

6

fact proposing, then due process requires that Defendants in cases other than the Wire Harness cases be given appropriate notice of such a proposal and a full opportunity to be heard on the issue.

Commenting Defendants agree with the Wire Harness Defendants that such a trial would present grave constitutional and manageability concerns. As an initial matter, such a proposal is extremely premature for the majority of the product cases. Indeed, in contrast to the Wire Harness cases, which are three years old, there are still Defendants in later product cases who have not even been served, and many cases are either in the throes of motions to dismiss or do not yet have motion to dismiss briefing schedules. Moreover, Plaintiffs recently announced that they plan to file new cases involving at least three new products. (See Joint Statement, n. 4.) To say that it is premature at this time to determine how these cases should be tried several years from now is an understatement.

Indirect Purchaser Plaintiffs' four-phased trial proposal is unworkable for several additional reasons.

First, the trial structure Plaintiffs apparently propose is inconsistent with the way in which they have filed, prosecuted, and even settled the various product cases to date. While the different product cases are organized under one MDL, they have not been consolidated with one another. Moreover, Plaintiffs continue to file cases that allege particular product-specific conspiracies. To date, not a single complaint in this MDL alleges that all Defendants in all product cases in this MDL participated in a single overarching conspiracy.

Second, a proposal to conduct one large mega-trial ignores the fact that the Defendants are in very different positions in different cases. For instance, some auto parts suppliers are defendants in some cases, while for other parts they are direct purchasers and integrated the parts with others before selling the system to the OEM. Thus, the mega-trial structure Plaintiffs

apparently propose would result in a trial in which companies are both defendants and direct purchasers in the same proceeding, creating confusion and undue prejudice.

Third, Plaintiffs' proposal contemplates that there would be no class certification determination under Rule 23(b)(3) before the Phase I trial. As explained in detail in the Wire Harness Defendants' response, that is wholly inappropriate. Indirect Purchaser Plaintiffs cannot side-step their obligations to meet Rule 23(b)(3)'s predominance and superiority requirements by breaking the trial into phases. *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 290-291 (S.D. Ohio 1997) (finding that plaintiffs must meet the requirements of 23(a) and 23(b) before a court may determine if subclasses are appropriate). Nor is a Rule 23(c) issue class an appropriate vehicle to cure an otherwise defective class action that cannot pass muster under Rule 23(b)(3). *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4). The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole must satisfy the predominance requirement of (b)(3) . . . ."). *See also Sacred Heart Health Sys., Inc. v. Human Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010); *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 296-97 (N.D. Ohio 2007). Doing so would undermine the very existence of the mandated Rule 23(b)(3) analysis. *Castano*, 84 F.3d at 745.

Fourth, Indirect Purchaser Plaintiffs' proposal is flawed in that it proposes severing trial in a manner that will unduly prejudice Defendants. In order to succeed on their claims for antitrust liability they will need to show a violation of the antitrust laws, which includes individual injury resulting from that violation (so-called "fact of injury" or "antitrust injury"), and measureable damages. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). However, Indirect Purchaser Plaintiffs propose postponing adjudication of the existence of their alleged

injury and damages until Phases 3 and 4 of trial, long after what they have incorrectly termed the "liability" trial in Phase 1 and at a point when the involvement of Defendants would be limited or possibly non-existent.  This proposal ignores the fact that the issue of antitrust injury is inexorably intertwined with the issue of liability (i.e., impact/injury) in antitrust cases; bifurcation of these issues is infeasible.  *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70-71 (5th Cir. 1977) (overturning the decision to bifurcate issues of liability and damages in a proposed antitrust class action and finding that "[w]hether dealt with in a unitary trial or in a severed trial, the problem of proof of the individual claims and of the essential elements of individual injury and damage will remain and severance could only postpone the difficulty of such proof.").

Fifth, Indirect Purchaser Plaintiffs' proposal would improperly strip Defendants of their rights to defend themselves by presenting evidence that the proposed Dealer and End-Payor classes were not harmed or were not harmed as much as they claim because of pass-through.  As noted, antitrust impact is an essential element of Indirect Purchaser Plaintiffs' underlying claims, and Defendants have a right to challenge the Indirect Purchaser Plaintiffs' ability to demonstrate antitrust impact.  Yet, Indirect Purchaser Plaintiffs' proposal would entirely foreclose Defendants' ability to present any evidence regarding how the Dealer Plaintiffs may or may not have passed on alleged overcharges to the End-Payor Plaintiffs.  Indirect Purchaser Plaintiffs assert that they are cooperating amongst themselves on this issue and they will work out that issue through a settlement.  In effect, Indirect Purchaser Plaintiffs are attempting to turn one of the central elements of their claims, which they must prove against Defendants to have successful claims, into an issue that the Defendants have no ability to challenge and which will, according to Indirect Purchaser Plaintiffs' prognostications, be an issue for them to simply agree on through a collusive plaintiff-only settlement in Phase IV.  Indirect Purchase Plaintiffs who suffered no antitrust injury

at all would (if plaintiffs are successful at trial) obtain a determination that Defendants are liable to them.  Commenting Defendants have a due process right to present a defense in this case and they object to Indirect Purchaser Plaintiffs' attempt to alter the elements of their claims.

Sixth, Indirect Purchaser Plaintiffs' proposal would violate Defendants' Seventh Amendment right to trial by jury.  Insofar as Indirect Purchaser Plaintiffs propose that different juries be empaneled for each of the different phases, their proposal violates Defendants' Seventh Amendment rights as different juries would be forced to issue verdicts involving overlapping legal and factual questions, which is not permitted.  *See Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998); *State of Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978).  But even if Indirect Purchaser Plaintiffs are suggesting that one jury would slog through each of their four proposed phases, they have yet another problem because they are proposing that Phase IV of their trial—whether end-payors were harmed and by how much—will be determined through an agreement between the Indirect Purchaser Plaintiffs, and Defendants will have no ability to present their arguments to the jury.  But those are liability and damages issues to which Defendants have a right to a jury trial under the Seventh Amendment.  *Id*.  Plaintiffs cannot structure the trial in a way that tramples Defendants' constitutional rights simply so they can avoid difficult questions of pass-through in an effort to bypass the class certification requirements set forth in Rule 23(b)(3).  *Id*.

Seventh, Indirect Purchaser Plaintiffs' proposal will not work because there will almost certainly be opt-out plaintiffs in each of the proposed classes.  If some dealers opt out of the classes, then the amount of money paid into the pot at the proposed Phase III may be insufficient to compensate the class of End-Payor Plaintiffs claiming damages in Phase IV.  If a dealer opts out of a class, that decision does not apply to the end-payors who bought from that dealer.  Those

end-payors may remain in the proposed End-Payor class, but their total pool of money to divide with the proposed Dealer class will not adequately reflect their damages.  On the other side of the coin, if significant end-payors opt out, e.g., large fleet purchasers, then the amount of damages paid into the pot at Phase III may be too large since the opt-outs would not share in the pot in Phase IV.  This threatens to provide a windfall to the Dealer Plaintiffs since, under Indirect Purchaser Plaintiffs' proposal, Defendants would be prevented from presenting any evidence of pass-through in the phases for which Defendants would be present.  In short, Indirect Purchaser Plaintiffs' idea of one pot of money that can be shared amongst all indirect purchasers does not make any sense because the opt-out procedure all but guarantees that not all indirect purchasers remain members of the proposed classes.

Eighth, this antitrust MDL is a fundamentally different situation than interpleader, to which Indirect Purchaser Plaintiffs attempt to analogize.  Namely, this MDL is nothing like interpleader since, as noted above, not all of the possible claimants will be present in each of the phases the Indirect Purchaser Plaintiffs propose.  Again, there are likely to be substantial opt-out plaintiffs.  Additionally, interpleader is a *voluntary* procedure that a defendant invokes.  *See* Fed R. Civ. P. 22(a)(2).  There is no such thing as a forced interpleader and Indirect Purchaser Plaintiffs present no authority to the contrary.[3]  *State Farm Fire And Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) (recognizing that "our view of interpleader means that it cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort.  But interpleader was never intended to perform such a function, to be an all-purpose 'bill of peace.'").

---

[3] The fact that Indirect Purchaser Plaintiffs have to resort to arguing that their procedure is similar to the interpleader statute that ship owners voluntarily use when cargo is lost on the high seas speaks volumes.  There is no statute that authorizes what Plaintiffs are attempting to do here and the Commenting Defendants certainly are not volunteering to follow Plaintiffs' ill-conceived approach.

Finally, Indirect Purchaser Plaintiffs' proposal is flawed because it would require Defendants to pay into a settlement fund the amounts determined to be due after Phase III but before Phase IV.  Thus, Plaintiffs would require Defendants to pay before the entry of a final judgment, before they can file a supersedeas bond, and before they can appeal.  That would violate the Federal Rules, due process and fundamental notions of fairness.

In short, Indirect Purchaser Plaintiffs' proposed trial structure is not only premature, it is flawed to its core.  They suggest an unprecedented approach to trial management that appears to obviate the need for the Court to ever certify classes of plaintiffs and strips Defendants of their ability to defend themselves in each of the separate conspiracies alleged.  An antitrust case of this size and nature is not the appropriate instance to experiment with unprecedented methods of trial management, especially not a proposed method that conflicts with Rule 23's requirements and tramples Defendants' constitutional rights.

## Conclusion

Commenting Defendants respectfully request this Court to reject Indirect Purchaser Plaintiffs' trial management proposal and instead focus on scheduling class certification briefing in the Wire Harness cases.

Dated: October 3, 2014                    Respectfully submitted,


                                          By:    /s/ George A. Nicoud III
                                          George A. Nicoud III (SBN 160111)
                                          tnicoud@gibsondunn.com
                                          Austin Schwing (SBN 211696)
                                          aschwing@gibsondunn.com
                                          Leslie A. Wulff (SBN 277979)
                                          lwulff@gibsondunn.com
                                          **GIBSON, DUNN & CRUTCHER LLP**
                                          555 Mission Street
                                          San Francisco, CA 94105
                                          Telephone: (415) 393-8200
                                          Facsimile: (415) 374-8458

                                          *Counsel for Defendants Mitsuba Corporation*
                                          *and American Mitsuba Corporation*


                                          By:   /s/ Heather L. Kafele (with consent)
                                          Heather L. Kafele
                                          Keith Palfin
                                          Alison R. Welcher
                                          **SHEARMAN & STERLING LLP**
                                          801 Pennsylvania Avenue NW, Ste. 900
                                          Washington, DC 20004
                                          Telephone:  (202) 508-8000
                                          Facsimile:  (202) 508-8100
                                          hkafele@shearman.com
                                          keith.palfin@shearman.com
                                          alison.welcher@shearman.com

                                          Brian M. Akkashian
                                          **PAESANO AKKASHIAN, PC**
                                          132 N. Old Woodward Avenue
                                          Birmingham, MI 48009
                                          248-792-6886
                                          bakkashian@paesanoakkashian.com

                                          *Counsel for Defendants JTEKT Corporation,*
                                          *JTEKT North America Corporation (formerly*
                                          *d/b/a Koyo Corporation of U.S.A.), and JTEKT*
                                          *Automotive North America, Inc.*

By   /s/ A. Paul Victor  (with consent)
A. PAUL VICTOR (*pro hac vice*)
JEFFREY L. KESSLER (*pro hac vice*)
MOLLY M. DONOVAN (*pro hac vice*)
ELIZABETH A. CATE (*pro hac vice*)
pvictor@winston.com
jkessler@winston.com
mmdonovan@winston.com
ecate@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

FRED K. HERRMANN (P49519)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fkh@krwlaw.com

*Counsel for Defendants NTN CORPORATION and
NTN USA CORPORATION*

By:  /s/ Debra H. Dermody  (with consent)
Debra H. Dermody
Michelle A. Mantine
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: (412) 288-3302/4268
Fax:    (412) 288-3063
Email: ddermody@reedsmith.com
mmantine@reedsmith.com

Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Telephone: (248) 203-0526
Fax:    (248) 203-0763
Email: hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendant SKF USA Inc.*


By: */s/ Steven A. Reiss* (with consent)
Steven A. Reiss
Adam C. Hemlock
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Tel.: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

Fred K. Herrmann
Matthew L. Powell
**Kerr, Russell and Weber, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel.: (313) 961-0200
Fax: (313) 961-0388
fhermann@kerr-russell.com
mpowell@kerr-russell.com

*Counsel for Defendants Calsonic Kansei*
*Corporation and CalsonicKansei North America,*
*Inc.*


By: */s/ Steven A. Reiss* (with consent)
Steven A. Reiss
Adam C. Hemlock
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Tel.: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

Frederick R. Juckniess
**Schiff Hardin LLP**
350 South Main Street, Suite 210
Ann Arbor, MI 48104
Tel.: (734) 222-1504
fjuckniess@schiffhardin.com

*Counsel for Defendants Bridgestone Corporation and Bridgestone APM Company*

By: */s/Anita F. Stork* (with consent)
Anita F. Stork
**COVINGTON & BURLING LLP**
One Front Street
35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

Michael J. Fanelli
**COVINGTON & BURLING LLP**
1201 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202) 662-6000
Fax: (202) 662-5383
Mfanelli@cov.com

Maureen T. Taylor (P51939)
Herbert C. Donovan (P63547)
**BROOKS WILKINS SHARKEY & TURCO PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Counsel for Defendants Alps Electric (North America), Inc. and Alps Automotive, Inc.*

By: */s/ J. Clayton Everett, Jr.* (with consent)
J. Clayton Everett, Jr.
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
Email: jeverett@morganlewis.com

16

*Counsel for Defendants Showa Corporation and American Showa, Inc.*

By: /s/ J. Clayton Everett, Jr. (with consent)
J. Clayton Everett, Jr.
Eyitayo St. Matthew-Daniel
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
Email: jeverett@morganlewis.com
Email: tstmattew-daniel@morganlewis.com

*Counsel for Defendants Tokai Rubber Industries, Ltd. and DTR Industries, Inc.*

By: /s/  Craig P. Seebald (with consent)
Craig P. Seebald
Alden L. Atkins
Lindsey R. Vaala
**VINSON & ELKINS LLP**
2200 Pennsylvania Avenue, N.W.
Suite 500 West
Washington, DC 20037
Telephone:  (202) 639-6585
Facsimile: (202) 879-8995
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

*Counsel for Defendants Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc., and Hitachi, Ltd.*

By: /s/ Robert J. Wierenga (with consent)
Robert J. Wierenga (P59785)
Suzanne L. Wahl (P71364)
**Schiff Hardin LLP**
340 S. Main Street, Suite 210
Ann Arbor, MI  48104
734-222-1500
Fax: (734) 222-1501

17

rwierenga@schiffhardin.com
swahl@schiffhardin.com

David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
**Williams & Connolly LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Defendants Takata Corporation and TK
Holdings Inc.*

By: */s/ Jeremy J. Calsyn* (with consent)
Jeremy J. Calsyn
Teale Toweill
**CLEARY GOTTLIEB STEEN & HAMILTON
LLP**
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1522
jcalsyn@cgsh.com

David Ettinger
**HONIGMAN, MILLER, SCHWARTZ AND
COHN LLP**
660 Woodward Avenue
Suite 2290
Detroit, MI 48226-3506
(313) 465-7368
dettinger@honigman.com

*Counsel for Defendants NSK Ltd. and NSK
Americas, Inc.*

By: */s/ Howard B. Iwrey* (with consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**

39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

Franklin R. Liss
Barbara H. Wootton
Tiana Russell
Lauren K. Peay
**ARNOLD & PORTER LLP**
555 Twelfth Street NW
Washington, DC 20004
Tel: (202) 942-5969
Fax: (202) 942-5999
frank.liss@aporter.com
barbara.wootton@aporter.com
tiana.russell@aporter.com
lauren.peay@aporter.com

*Counsel for Defendants Koito Manufacturing Co.,
Ltd and North American Lighting, Inc.*

By: */s/ Brian Byrne* (with consent)
Brian Byrne
Ryan M. Davis
**Cleary Gottlieb Steen & Hamilton LLP**
2000 Pennsylvania Avenue, NW
Suite 9000
Washington, DC 20006
Tel: 202-974-1850
Fax: 202-974-1999
bbyrne@cgsh.com

Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

19

*Counsel for Defendants Valeo S.A., Valeo Inc.,*
*Valeo Electrical Systems, Inc., and Valeo Climate*
*Control Corp.*


By: /s/Howard B. Iwrey (with consent)
James P. Feeney (P13335)
Howard B. Iwrey (P39635)
Benjamin W. Jeffers (P57161)
David J. Council (P73163)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Tel:  248 203-0526
Fax: 248-203-0763
jfeeney@dykema.com
hiwrey@dykema.com
bjeffers@dykema.com
dcouncil@dykema.com


*Counsel for Defendants TRW Automotive Holdings*
*Corp. and TRW Deutschland Holding GmbH*


By: /s/ Eric Mahr (with consent)
Eric Mahr
Stacy Frazier
**WILMER CUTLER PICKERING HALE AND**
**DORR LLP**
1875 Pennsylvania Avenue NW
Washington, DC 20006
eric.mahr@wilmerhale.com
stacy.frazier@wilmerhale.com


*Counsel for Defendant Schaeffler Group USA Inc.*


By: James L. Cooper (with consent)
James L. Cooper
Danielle Garten
Adam Pergament
**ARNOLD & PORTER LLP**
555 Twelfth Street NW
Washington, DC 20004-1206
Telephone: (202) 942-5000
Facismile: (202) 942-5999

james.cooper@aporter.com
danielle.garten@aporter.com
adam.pergament@aporter.com

Fred K. Hermann
Joanne G. Swanson
**KERR, RUSSELL**
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
fhermann@kerr-russll.com
jgs@krwlaw.com

*Counsel for Defendants Yamashita Rubber Co., Ltd.
and YUSA Corporation*


By: */s/ Matthew J. Reilly* (with consent)
Matthew J. Reilly
Abram J. Ellis
David T. Shogren
1155 F Street, N.W.
Washington, DC  20004
**SIMPSON THACHER & BARTLETT LLP**
Telephone:  (202) 636-5500
Facsimile: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com
dshogren@stblaw.com

George S. Wang
Shannon K. McGovern
425 Lexington Avenue
New York, NY 10017
**SIMPSON THACHER & BARTLETT LLP**
Telephone:  (212) 455-2000
Facsimile: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Counsel for Defendants Diamond Electric Mfg. Co.,
Ltd. and Diamond Electric Mfg. Corporation*


By: *s/ Matthew J. Reilly* (with consent)

21

Matthew J. Reilly
Abram J. Ellis
David T. Shogren
1155 F Street, N.W.
Washington, DC  20004
**SIMPSON THACHER & BARTLETT LLP**
Telephone:  (202) 636-5500
Facsimile: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com
dshogren@stblaw.com

George S. Wang
Shannon K. McGovern
425 Lexington Avenue
New York, NY 10017
**SIMPSON THACHER & BARTLETT LLP**
Telephone:  (212) 455-2000
Facsimile: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Counsel for Defendants Stanley Electric Co., Ltd.;
Stanley Electric U.S. Co., Inc.; and II Stanley Co.,
Inc.*

By: */s/ Craig D. Bachman* (with consent)
Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
**LANE POWER PC**
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
503.778.2100
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com

Larry S. Gangnes
**LANE POWELL PC**
1420 Fifth Avenue, Suite 4100
Seattle, WA  98101-2338
206.223.7000
gangnesl@lanepowell.com

22

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
**KEMP KLEIN LAW FIRM**
201 W. Big Beaver, Suite 600
Troy, MI 48084
248.528.1111
richard.bisio@kkue.com
ron.nixon@kkue.com


*Counsel for Defendants Nachi-Fujikoshi Corp. and Nachi America Inc.*


By: */s/ Terrance J. Truax* (with consent)
Terrance J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
**ZAUSMER, KAUFMAN, AUGUST & CALDWELL, P.C.**
31700 Middlebelt Road
Suite 150
Farmington Hills, Michigan 48334-2374
Telephone (248) 851-4111
gaugust@zkac.com

*Counsel for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc.*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 03, 2014, I caused to be electronically filed the foregoing Notice of Entry of Appearance with the Clerk of the Court via CM/ECF. Notice of this filing will be sent by email to all CM/ECF registrants by operation of the Court's electronic filing systems.

_/s/ George A. Nicoud III_

George A. Nicoud III (SBN 106111)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105
415.393.8200
tnicoud@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation*
*and American Mitsuba Corporation*