1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF MICHIGAN
2                 SOUTHERN DIVISION

3                   —   —   —

4    IN RE:  AUTOMOTIVE WIRE HARNESS
     SYSTEMS ANTITRUST
5
              MDL NO. 12-2311
6    _____/

7

                STATUS CONFERENCE &
8        MOTIONS FOR PRELIMINARY APPROVAL

9        BEFORE THE HONORABLE MARIANNE O. BATTANI
              United States District Judge
10       Theodore Levin United States Courthouse
              231 West Lafayette Boulevard
11                 Detroit, Michigan
              Wednesday, October 8, 2014
12

13   APPEARANCES:
     Direct Purchaser Plaintiffs:
14
     WILLIAM G. CALDES
15   SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
     1818 Market Street, Suite 2500
16   Philadelphia, PA  19103
     (215) 496-0300
17

18   DAVID H. FINK
     FINK & ASSOCIATES LAW
19   100 West Long Lake Road, Suite 111
     Bloomfield Hills, MI  48304
20   (248) 971-2500

21

     LEWIS H. GOLDFARB
22   McELROY, DEUTSCH, MULVANEY & CARPENTER, L.L.P.
     1200 Mount Kemble Avenue
23   Morristown, NJ  07962
     (973) 993-8100

24

25       To obtain a copy of this official transcript, contact:
            Robert L. Smith, Official Court Reporter
         (313) 964-3303 • rob_smith@mied.uscourts.gov

1    **APPEARANCES (CONTINUED):**
     **Direct Purchaser Plaintiffs:**

2

3    GREGORY P. HANSEL
     **PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.**
     One City Center
4    Portland, ME  04112
     (207) 791-3000

5

6    STEVEN A. KANNER
     **FREED, KANNER, LONDON & MILLEN, L.L.C.**
7    2201 Waukegan Road, Suite 130
     Bannockburn, IL  60015
8    (224) 632-4502

9

10   JOSEPH C. KOHN
     **KOHN, SWIFT & GRAF, P.C.**
     One South Broad Street, Suite 2100
11   Philadelphia, PA  19107
     (215) 238-1700

12

13   SARAH GIBBS LEIVICK
     **KASOWITZ, BENSON, TORRES & FRIEDMAN, L.L.P.**
14   1633 Broadway
     New York, NY  10019
15   (212) 506-1765

16

17   MICHAEL MOSKOVITZ
     **FREED, KANNER, LONDON & MILLEN, L.L.C.**
18   2201 Waukegan Road, Suite 130
     Bannockburn, IL  60015
     (224) 632-4502

19

20   ERIC J. PELTON
     **KEINBAUM, OPPERWALL, HARDY & PELTON, P.L.C.**
21   280 North Old Woodward, Suite 400
     Birmingham, MI  48009
22   (248) 645-0000

23

     **MATTHEW RUIN**
24   **COHEN MILSTEIN**
     1100 New York Avenue NW, Suite 500 West
25   Washington, DC  20005
     (202) 408-4600

1    **APPEARANCES (CONTINUED):**
      **Direct Purchaser Plaintiffs:**

2

3    EUGENE A. SPECTOR
      **SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.**
      1818 Market Street, Suite 2500

4    Philadelphia, PA  19103
      (215) 496-0300

5

6    RANDALL B. WEILL
      **PRETI, FLAHERTY, BELIVEAU &**

7    **PACHIOS, L.L.P.**
      One City Center

8    Portland, ME  04112
      (207) 791-3000

9

10    **End-Payor Plaintiffs:**

11    WARREN T. BURNS
      **SUSMAN GODFREY, L.L.P.**

12    901 Main Street, Suite 5100
      Dallas, TX  75202

13    (214) 754-1928

14

15    FRANK C. DAMRELL
      **COTCHETT, PITRE & McCARTHY, L.L.P.**

16    840 Malcolm Road
      Burlingame, CA  94010
      (650) 697-6000

17

18    E. POWELL MILLER
      **THE MILLER LAW FIRM, P.C.**

19    950 West University Drive, Suite 300
      Rochester, MI  48307

20    (248) 841-2200

21

22    OMAR OCHOA
      **SUSMAN GODFREY, L.L.P.**
      901 Main Street, Suite 5100

23    Dallas, TX  75202
      (214) 754-1913

24

25

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 4 of 122   Pg ID 11334
Status Conference & Motions for Preliminary Approval • October 8, 2014

4

1    **APPEARANCES (CONTINUED):**
     **End-Payor Plaintiffs:**

2

3    WILLIAM V. REISS
     **ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.**
     601 Lexington Avenue, Suite 3400

4    New York, NY  10022
     (212) 980-7405

5

6    HOLLIS L. SALZMAN
     **ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.**

7    601 Lexington Avenue, Suite 3400
     New York, NY  10022

8    (212) 980-7405

9

10   ADAM T. SCHNATZ
     **THE MILLER LAW FIRM, P.C.**
     950 West University Drive, Suite 300

11   Rochester, MI  48307
     (248) 841-2200

12

13   STEVEN SKLAVER
     **SUSMAN GODFREY, L.L.P**

14   190 Avenue of the Stars, Suite 950
     Los Angeles, CA  90067

15   (310) 789-3123

16

17   ELIZABETH T. TRAN
     **COTCHETT, PITRE & McCARTHY, L.L.P.**
     840 Malcolm Road

18   Burlingame, CA  94010
     (650) 697-6000

19

20   STEVEN N. WILLIAMS
     **COTCHETT, PITRE & McCARTHY, L.L.P.**

21   840 Malcolm Road
     Burlingame, CA  94010

22   (650) 697-6000

23

24

25

```
 1    APPEARANCES (CONTINUED):
      Dealership Plaintiffs:
 2
      DON BARRETT
 3    BARRETT LAW OFFICES
      P.O. Drawer 987
 4    Lexington, MS  39095
      (601) 834-2376
 5

 6    JONATHAN W. CUNEO
      CUNEO, GILBERT & LaDUCA, L.L.P.
 7    507 C Street NE
      Washington, D.C.  20002
 8    (202) 789-3960

 9
      JOEL DAVIDOW
10    CUNEO, GILBERT & LaDUCA, L.L.P.
      507 C Street NE
11    Washington, D.C.  20002
      (202) 789-3960
12

13    BRENDAN FREY
      MANTESE, HONIGMAN, ROSSMAN & WILLIAMSON, P.C.
14    1361 East Big Beaver Road
      Troy, MI  48083
15    (248) 457-9200

16
      JOHN KAKINUKI
17    KAKINUKI LAW OFFICE, P.C.
      2 Civic Center Drive, #4222
18    San Rafael, CA  94913
      (415) 492-2011
19

20    GERARD V. MANTESE
      MANTESE, HONIGMAN, ROSSMAN & WILLIAMSON, P.C.
21    1361 East Big Beaver Road
      Troy, MI  48083
22    (248) 457-9200

23
      SHAWN M. RAITER
24    LARSON KING, L.L.P.
      30 East Seventh Street, Suite 2800
25    Saint Paul, MN  55101
      (651) 312-6500
```

1    **APPEARANCES (CONTINUED):**
     <u>**Dealership Plaintiffs:**</u>

2

3    VICTORIA ROMANENKO
     **CUNEO, GILBERT & LaDUCA, L.L.P.**
     507 C Street NE

4    Washington, D.C.  20002
     (202) 789-3960

5

6    <u>**Ford Motor Company:**</u>

7    CINDY CARANELLA KELLY
     **KASOWITZ, BENSON, TORRES & FRIEDMAN, L.L.P.**

8    1633 Broadway
     New York, NY  10019

9    (212) 506-1737

10

     <u>**State of Florida:**</u>

11

     TIMOTHY FRASER
12   **OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA**
     The Capital, PL-01

13   Tallahassee, FL  32399
     (850) 414-3733

14

15   <u>**Public Entities:**</u>

16   LESLEY E. WEAVER
     **GREEN & NOBLIN, P.C.**

17   700 Larkspur Landing Circle, Suite 275
     Larkspur, CA  94939

18   (415) 477-6700

19

     <u>**Truck and Heavy Equipment Dealers:**</u>
20

     ANDREW R. SPERL
21   **DUANE MORRIS, L.L.P.**
     30 South 17th Street

22   Philadelphia, PA  19103
     (215) 979-7385

23

24

25

Status Conference & Motions for Preliminary Approval • October 8, 2014

1   **APPEARANCES (Continued)**
    **For the Defendants:**

2

3   ALDEN L. ATKINS
    **VINSON & ELKINS, L.L.P.**
    2200 Pennsylvania Avenue NW, Suite 500 West

4   Washington, DC  20037
    (202) 639-6613

5

6   GARY K. AUGUST
    **ZAUSMER, KAUFMAN, AUGUST & CALDWELL, P.C.**

7   31700 Middlebelt Road, Suite 150
    Farmington Hills, MI  48334

8   (248) 851-4111

9

10  DONALD M. BARNES
    **PORTER, WRIGHT, MORRIS & ARTHUR, L.L.P.**
    1919 Pennsylvania Avenue, NW, Suite 500

11  Washington, D.C.  20006

12

13  MICHAEL G. BRADY
    **WARNER, NORCROSS & JUDD, L.L.P.**
    2000 Town Center, Suite 2700

14  Southfield, MI  48075
    (248) 784-5032

15

16  JEREMY CALSYN
    **CLEARY, GOTTLIEB, STEEN & HAMILTON, L.L.P.**

17  2000 Pennsylvania Avenue NW
    Washington, D.C.  20006

18  (202) 974-1500

19

20  STEVEN F. CHERRY
    **WILMER, CUTLER, PICKERING, HALE and DORR, L.L.P.**
    1875 Pennsylvania Avenue NW

21  Washington, D.C.  20006
    (202) 663-6321

22

23  JAMES L. COOPER
    **ARNOLD & PORTER, L.L.P.**

24  555 Twelfth Street NW
    Washington, DC  20004

25  (202) 942-5000

```
 1    APPEARANCES (Continued):
      For the Defendants:
 2
      KENNETH R. DAVIS, II
 3    LANE POWELL, P.C.
      601 SW Second Avenue, Suite 2100
 4    Portland, OR  97204
      (503) 778-2100
 5


 6    DEBRA H. DERMODY
      REED SMITH, L.L.P.
 7    225 Fifth Avenue, Suite 1200
      Pittsburgh, PA  15222
 8    (412) 288-3302


 9
      GEORGE B. DONNINI
10    BUTZEL LONG, P.C.
      150 West Jefferson Avenue
11    Detroit, MI  48226
      (313) 225-7000
12

13    DAVID P. DONOVAN
      WILMER, CUTLER, PICKERING, HALE and DORR, L.L.P.
14    1875 Pennsylvania Avenue, NW
      Washington, D.C.  20006
15    (202) 663-6868

16
      MOLLY M. DONOVAN
17    WINSTON & STRAWN, L.L.P.
      200 Park Avenue
18    New York, NY  10166
      (212) 294-4692
19

20    DAVID F. DuMOUCHEL
      BUTZEL LONG, P.C.
21    150 West Jefferson Avenue
      Detroit, MI  48226
22    (313) 225-7000

23
      J. CLAYTON EVERETT, JR.
24    MORGAN, LEWIS & BOCKIUS, L.L.P.
      1111 Pennsylvania Avenue NW
25    Washington, DC  20004
      (202) 739-5860
```

```
 1  APPEARANCES (Continued):
    For the Defendants:
 2
    PETER M. FALKENSTEIN
 3  JAFFE, RAITT, HEUER & WEISS, P.C.
    27777 Franklin Road, Suite 2500
 4  Southfield, MI  48034
    (248) 351-3000
 5

 6  JAMES P. FEENEY
    DYKEMA GOSSETT, P.L.L.C.
 7  39577 Woodward Avenue, Suite 300
    Bloomfield Hills, MI  48304
 8  (248) 203-0841

 9
    MICHELLE K. FISCHER
10  JONES DAY
    51 Louisiana Avenue NW
11  Washington, D.C.  20001
    (202) 879-4645
12

13  LARRY S. GANGNES
    LANE POWELL, P.C.
14  1420 Fifth Avenue, Suite 4100
    Seattle, Washington  98101
15  (206) 223-7000

16
    DAVID C. GIARDINA
17  SIDNEY AUSTIN, L.L.P.
    One South Dearborn Street
18  Chicago, IL  60603
    (312) 853-4155
19

20  JASON R. GOURLEY
    BODMAN P.L.C.
21  1901 St. Antoine Street, 6th Floor
    Detroit, MI  48226
22  (313) 259-7777

23
    ADAM C. HEMLOCK
24  WEIL, GOTSHAL & MANGES, L.L.P.
    767 Fifth Avenue
25  New York, NY  10153
    (212) 310-8281
```

```
1    APPEARANCES (Continued):
     For the Defendants:
2
     FRED K. HERRMANN
3    KERR, RUSSELL & WEBER, P.L.C.
     500 Woodward Avenue, Suite 2500
4    Detroit, MI  48226
     (313) 961-0200
5

6    MAURA L. HUGHES
     CALFEE, HALTER & GRISWOLD, L.L.P.
7    1405 East Sixth Street
     Cleveland, OH  44114
8    (216) 622-8335

9
     HOWARD B. IWREY
10   DYKEMA GOSSETT, P.L.L.C.
     39577 Woodward Avenue, Suite 300
11   Bloomfield Hills, MI  48304
     (248) 203-0526
12

13   WILLIAM R. JANSEN
     WARNER, NORCROSS & JUDD, L.L.P.
14   2000 Town Center, Suite 2700
     Southfield, MI  48075
15   (248) 784-5178

16
     FREDERICK JUCKNIESS
17   SCHIFF HARDIN, L.L.P.
     350 South Main Street, Suite 210
18   Ann Arbor, MI  48104
     (734) 222-1507
19

20   HEATHER LAMBERG KAFELE
     SHEARMAN & STERLING, L.L.P.
21   801 Pennsylvania Avenue, NW
     Washington, D.C.  20004
22   (202) 508-8097

23
     FRANK LISS
24   ARNOLD & PORTER, L.L.P.
     555 Twelfth Street NW
25   Washington, D.C. 20004
     (202) 942-5969
```

Status Conference & Motions for Preliminary Approval • October 8, 2014

```
 1    APPEARANCES (Continued):
      For the Defendants:
 2
      TIMOTHY J. LOWE
 3    McDONALD HOPKINS, P.L.C.
      39533 Woodward Avenue, Suite 318
 4    Bloomfield Hills, MI  48304
      (248) 220-1359
 5

 6    SHELDON H. KLEIN
      BUTZEL LONG, P.C.
 7    41000 Woodward Avenue
      Bloomfield Hills, MI  48304
 8    (248) 258-1414

 9
      JOHN M. MAJORAS
10    JONES DAY
      51 Louisiana Avenue NW
11    Washington, D.C.  20001
      (202) 879-3939
12

13    ANDREW S. MAROVITZ
      MAYER BROWN, L.L.P.
14    71 South Wacker Drive
      Chicago, IL  60606
15    (312) 701-7116

16
      SHANNON McGOVERN
17    SIMPSON, THACHER & BARTLETT, L.L.P.
      425 Lexington Avenue
18    New York, NY  10017
      (212) 455-2896
19

20    W. TODD MILLER
      BAKER & MILLER, P.L.L.C.
21    2401 Pennsylvania Avenue NW, Suite 300
      Washington, DC  20037
22    (202) 663-7822

23
      BRIAN M. MOORE
24    DYKEMA GOSSETT, P.L.L.C.
      39577 Woodward Avenue, Suite 300
25    Bloomfield Hills, MI  48304
      (248) 203-0772
```

**APPEARANCES (Continued):**
**For the Defendants:**

GEORGE A. NICOUD, III
**GIBSON, DUNN & CRUTCHER, L.L.P.**
555 Mission Street
San Francisco, CA  94105
(415) 393-8200


RONALD NIXON
**KEMP KLEIN LAW FIRM**
201 West Big Beaver Road, Suite 600
Troy, MI  48084
(248) 528-1111


WM. PARKER SANDERS
**SMITH, GAMBRELL & RUSSELL, L.L.P.**
Promenade Two, Suite 3100
1230 Peachtree Street NE
Atlanta, GA  30309
(404) 815-3684


DARIN M. SANDS
**LANE POWELL, P.C.**
601 SW Second Avenue, Suite 2100
Portland, OR  97204
(503) 778-2100


LARRY J. SAYLOR
**MILLER, CANFIELD, PADDOCK & STONE, P.L.C.**
150 West Jefferson Avenue, Suite 2500
Detroit, MI  48226
(313) 496-7986


SCOTT T. SEABOLT
**FOLEY & LARDNER, L.L.P.**
500 Woodward Avenue, Suite 2700
Detroit, MI  48226
(313) 234-7100

1   **APPEARANCES (Continued):**
    **For the Defendants:**

2

3   CRAIG SEEBALD
    **VINSON & ELKINS, L.L.P.**
    2200 Pennsylvania Avenue NW, Suite 500 West

4   Washington, DC  20037
    (202) 639-6585

5

6   JESSE T. SMALLWOOD
    **WILLIAMS & CONNOLLY, L.L.P.**

7   725 Twelfth Street NW
    Washington, DC  2005

8   (202) 434-5162

9

10  ANITA STORK
    **COVINGTON & BURLING, L.L.P.**
    One Front Street

11  San Francisco, CA  94111
    (415) 591-7050

12

13  MARGUERITE M. SULLIVAN
    **LATHAM & WATKINS, L.L.P.**

14  555 Eleventh Street NW, Suite 1000
    Washington, D.C.  20004

15  (202) 637-2200

16

17  JOANNE GEHA SWANSON
    **KERR, RUSSELL & WEBER, P.L.C.**
    500 Woodward Avenue, Suite 2500

18  Detroit, MI  48226
    (313) 961-0200

19

20  MAUREEN T. TAYLOR
    **BROOKS, WILKINS, SHARKEY & TURCO**

21  401 South Old Woodward, Suite 400
    Birmingham, MI  48009

22  (248) 971-1721

23

24  TEALE TOWEILL
    **CLEARY, GOTTLIEB, STEEN & HAMILTON, L.L.P.**
    2000 Pennsylvania Avenue NW

25  Washington, D.C.  20006
    (202) 974-1587

1    **APPEARANCES (Continued):**
     **For the Defendants:**

2

3    MICHAEL F. TUBACH
     **O'MELVENY & MYERS, L.L.P.**
     Two Embarcadero Center, 28th Floor
4    San Francisco, CA  94111
     (415) 984-8700

5

6    YOSHIYA USAMI
     **LANE POWELL, P.C.**
7    601 SW Second Avenue, Suite 2100
     Portland, OR  97204
8    (503) 778-2100

9

10   LINDSEY ROBINSON VAALA
     **VINSON & ELKINS, L.L.P.**
     2200 Pennsylvania Avenue NW, Suite 500 West
11   Washington, DC  20037
     (202) 639-6585

12

13   A. PAUL VICTOR
     **WINSTON & STRAWN, L.L.P.**
14   200 Park Avenue
     New York, NY  10166
15   (212) 294-4655

16

17   VICTORIA WEATHERFORD
     **O'MELVENY & MYERS, L.L.P.**
     Two Embarcadero Center, 28th Floor
18   San Francisco, CA  94111
     (415) 984-8700

19

20   ALISON WELCHER
     **SHEAVMAN & STERLING**
21   801 Pennsylvania Avenue, NW, Suite 900
     Washington, D.C.  20004
22   (202) 508-8112

23

24

25

1   **APPEARANCES (Continued):**
    **OTHER APPEARANCES:**

2

3   PATRICK F. MORRIS
    **MORRIS & MORRIS, L.L.C.**
4   4001 Kennett Pike, Suite 300
    Wilmington, DE  19807
5   (302) 426-0400

6

7   JAYE QUADROZZI
    **YOUNG & ASSOCIATES**
    27725 Stansbury Boulevard, Suite 125
8   Farmington Hills, MI  48334
    (248) 353-8620

9

10  **Also Present:**

11  **SPECIAL MASTER GENE J. ESSHAKI**
    **DAWN L. CIOLINO**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## TABLE OF CONTENTS

2
Page

3    Introduction of Special Master..................... 17

4    Status Conference................................. 20

5    Motions for Preliminary Approval
        regarding Yazaki Settlement......................110
6        regarding TRW Settlement.......................116

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Status Conference & Motions for Preliminary Approval • October 8, 2014

```
 1   Detroit, Michigan
 2   Wednesday, October 8th, 2014
 3   At about 10:07 a.m.
 4                         —    —    —
 5            (Court and Counsel present.)
 6            THE CASE MANAGER:  All rise.
 7            The United States District Court for the Eastern
 8   District of Michigan is now in session, the Honorable
 9   Marianne O. Battani presiding.  All persons having business
10   therein, draw near, give attention and you may be heard.
11   God save these United States and this Honorable Court.
12            Please be seated.
13            The Court calls Case No. 12-md-02311,  In Re:
14   Automotive Parts Antitrust Litigation.
15            THE COURT:  Good morning, everybody.  Welcome back.
16   I'm glad the weather is good.  I figure this is always a good
17   break before January.
18            All right.  Let's begin here with the first thing,
19   I would like to introduce, and I know a number of you have
20   met him, but sitting right in front of me is the Master,
21   Gene Esshaki.
22            SPECIAL MASTER ESSHAKI:  Good morning, everybody.
23   My assistant who you've dealt with is Dawn Ciolino, many of
24   you have communicated with.
25            THE COURT:  All right.  And we are going to get
```

```
 1     back to Mr. Esshaki later on in the agenda.
 2             All right.  The first thing is the status of the
 3     settlements which you have so nicely put forth in your status
 4     report.  What I would like to do as we do this, we need to
 5     set dates.  Go ahead, Plaintiff.  You want -- no, go ahead,
 6     you want to start on the settlements?
 7             MR. BURNS:  Certainly.
 8             THE COURT:  Go ahead.
 9             MR. BURNS:  Your Honor, we have -- this is
10     Warren Burns with Susman Godfrey for the end payors.
11             We have prepared some slides.  With your permission
12     I would approach?
13             THE COURT:  On which case?
14             MR. BURNS:  The slides cover both the settlements
15     and the argument on the case-management proposals.
16             THE COURT:  I do not want to get into case
17     management now, I simply want to set dates on these
18     settlements.  I know we just received -- Lear's filed its
19     motion.  Who is here for Lear?
20             MR. KANNER:  Your Honor, good morning.  If I can
21     speak from the table?
22             THE COURT:  You may, but your name first for the
23     record.
24             MR. KANNER:  Steve Kanner, co-lead counsel on
25     behalf of the direct-purchaser plaintiffs.
```

1      What was filed yesterday was a motion for final

2  approval for the Lear settlement.  I believe the date for

3  hearing is December 3rd -- it is the 3rd or 5th, I'm sorry, I

4  don't have that in front of me.

5      THE COURT:  It is okay.

6      MR. KANNER:  And we have two hearings that are

7  scheduled for that date, final approval of both the Lear

8  settlement and of the AutoLiv settlement in the occupant

9  safety case.  The Lear settlement, of course, is in the wire

10  harness case, Your Honor.

11      THE COURT:  All right.

12      MR. MAROVITZ:  Judge, Andy Marovitz for Lear, and

13  it is the 3rd of December.

14      THE COURT:  It is the 3rd, yes.

15      MR. MAROVITZ:  Yes.

16      THE COURT:  December 3rd.  And I would like to go

17  on -- I don't know if you are going to go to Yazaki?

18      MR. BURNS:  That's scheduled later in the day, Your

19  Honor, but if you would prefer to hear that now?

20      THE COURT:  Well, the motions are heard in the

21  afternoon -- the motions are going to be heard this

22  afternoon, maybe not this afternoon but whenever we get

23  there, most likely I'm going to grant the motion so what I

24  want to do is dates so we can get the dates and everyone can

25  have the dates and we can see how many we can coordinate on

1     the same day.

2              MR. BURNS:  Okay.

3              THE COURT:  Do you have any proposed schedule on

4     that?

5              MR. BURNS:  For Yazaki we have the preliminary

6     approval paper up for approval and also with TRW.

7              THE COURT:  Right.

8              MR. BURNS:  We are going to ask the Court to allow

9     us to defer notice on a final settlement hearing so we can

10    frankly continue discussions with other defendants and reach

11    a point where we think it is economical.

12             THE COURT:  Okay.  So the only dates we need are

13    the dates for the fairness hearings --

14             MR. BURNS:  That's right.

15             THE COURT:  -- and the final hearing, so there is

16    nothing that we need right now?

17             MR. BURNS:  Nothing we need right now, Your Honor.

18    I was just going to -- in this section, and perhaps I misread

19    the agenda or we are not on the same page, but I was just

20    going to announce two settlements we have, and the Court may

21    or may not be aware of them.

22             THE COURT:  Okay.

23             MR. BURNS:  The first is just a visual aid, but the

24    first is with T Rad, and I'm not sure if their attorney is

25    here today, I haven't seen him yet, but the end-payor and

1    dealership plaintiffs have entered into a settlement with

2    T Rad for $9.75 million.

3            We also -- this was previously announced but the

4    amount of the settlement has not been disclosed, we have

5    entered into a settlement with Panasonic and are working on

6    the settlement papers as we speak.

7            With your permission, Your Honor, this brings the

8    totals of our settlements up to combined on the end-payor and

9    dealership side to $152,216,250, and that's excluding the

10   Panasonic settlement, Your Honor.

11           Just one more thing to note, Your Honor, we want to

12   draw your attention, these settlements -- the settlements we

13   have previously entered involve a number of parts, many of

14   which are still subject to the stay.  Obviously we have had

15   discussion and information exchanges with those defendants,

16   but as you can see, some of the parts that are implicated by

17   these settlements include wire harness, instrument panel

18   clusters, occupant safety restraint systems, and various

19   others on this, and we will give you a copy of this packet

20   later.

21           THE COURT:  Okay.  Thank you.

22           MR. BURNS:  Thank you, Your Honor.

23           THE COURT:  All right.  Let me just go through -- I

24   think with that you may have covered these but wire harness,

25   instrument panel -- I'm just going down the agenda -- fuel

1    senders.  I think most of these need dates just for the

2    fairness hearings and we are not ready to set those dates

3    yet, am I correct in that?

4              MR. BURNS:  That's right, Your Honor.

5              THE COURT:  And the same with occupant safety?

6              MR. BURNS:  For the end payors and the dealers, I

7    think that's correct across the board, Your Honor.

8              THE COURT:  Okay.  So next we are at the status of

9    the temporary stay in the MDL, that is the DOJ stay, that is

10   item I-C on the agenda.  The DOJ has reported to me that it

11   no longer has any objection to discovery, either document or

12   deposition discovery, with regard to the anti-vibration

13   rubber parts, so we are there.  We don't know what's going to

14   happen come their report in December, if that's going to be

15   the end, maybe you know, I mean, they certainly haven't

16   advised me, I don't know, whether that's going to be the end

17   or not, but I anxiously await that because it will be great

18   to have closure in the parts in this case.

19             Then I have on the agenda because it was on your

20   proposed agenda but I don't know what it is, end-payor and

21   dealership plaintiffs discussion regarding additional case

22   filings and amended case filings.

23             Put your appearance, please.

24             MR. BURNS:  Certainly, Warren Burns for the

25   end payors.

1          Your Honor, I think in terms of efficiency this may

2     be best covered in the next item that we were going to cover

3     in the discussion of case-management proposal.

4          THE COURT:  Okay.

5          MR. BURNS:  Thank you, Your Honor.

6          THE COURT:  And let -- who is going to discuss the

7     case management?

8          MR. DAMRELL:  Good morning, Your Honor.

9     Frank Damrell on behalf of the end-purchaser plaintiffs.

10         We have reached a point in this case, Your Honor,

11    which we view as very critical, and I think the Court does as

12    well.  When we first filed the wire harness complaint and

13    Your Honor adopted the very effective template approach,

14    which we have used effectively throughout this case through

15    the motion phase, through the subsequent complaints.

16    However, when we first met in June 2012 when these cases were

17    consolidated no one knew where we were going except perhaps

18    the DOJ and certainly some defendants would have known but we

19    didn't, and who would have known that we would have 29 parts

20    now.

21         In fact, we have -- we have only recently learned

22    now, for example, Denso is named in 18 of those parts, and we

23    certainly didn't anticipate that.  For example, I mean, we

24    learned this from Mr. Burns -- and I'm going to divide my

25    time with Mr. Burns in this case, but there are now targeted

1  models and makes of cars with price-fixed parts, we didn't

2  know that -- we didn't know where they were, and now we know

3  more about that, and it is still emerging.

4        In light of where we are, we would like the Court

5  to consider the issues today with the backdrop of class

6  certification as the only vehicle that we have that would

7  permit the injured parties to this conspiracy to receive

8  restitution.  Many of the attorneys sitting before you today

9  previously appeared before various federal judges and agreed

10 on behalf of their clients, the defendants in this case, in

11 plea colloquies that restitution would be addressed in civil

12 cases, not in the criminal case.

13       For example, on March 5th, 2012, the sentencing

14 hearing was for Denso, and Judge Steeh said at that time, and

15 there will be -- there would be no restitution ordered with

16 this agreement if accepted by the Court.  The question of

17 restitution would apparently be left to the civil cases to

18 determine.  You understand that?

19       And the defendant Denso, through its attorney,

20 Mr. Cherry, responded we understand, Your Honor.

21       Now, Judge Steeh clearly felt that the wheels of

22 the federal judicial system with respect to this case would

23 be -- would grind finely and would ultimately deal with the

24 issue of the civil liability.  To ensure that we have the

25 opportunity to do so, to pursue those civil claims, we are

1    asking the Court to refrain from entering a class

2    certification schedule for a period of time, four to six

3    months perhaps.  This is not to defy your order as been

4    suggested, we have not intended to do that whatsoever, we are

5    just recognizing the fact that we know much more about this

6    case than we knew two years ago or even a year ago or even

7    six months ago.  We feel it is necessary to pursue our

8    discovery, to obtain additional information from the settling

9    defendants, which by the way has been a source of information

10   that now provides us a better idea of what has happened in

11   this case, as well as information from the amnesty

12   applicants, and the opportunity to explore a case-management

13   plan with Master Esshaki and the parties.

14        I think it makes sense, in fact, it has been

15   suggested to us that the sides individually and independently

16   meet with the Master to discuss off the record exactly what

17   their concerns are, what they want to accomplish with respect

18   to this, and we would really urge the Court to consider that

19   as a possibility because I think it would really advance the

20   discussion and it would advance the purpose of certification

21   if we had that opportunity to meet with the Master in this

22   case.

23        We are asking the Court to consider a

24   case-management plan which reflects the nature of this case

25   itself.  This is an MDL case, it should reflect the MDL case,

1    and it should minimize discovery battles and ultimately jury

2    confusion.  We are the only parties that I know of that have

3    really offered such a plan, and albeit this is an evolving

4    plan, it is not the case in concrete by any means.

5            THE COURT:  You are talking about the plans that

6    actually are on the agenda as the direct purchaser, end payor

7    and automobile dealer plans?

8            MR. DAMRELL:  Yes, and I'm also referencing how we

9    deal with certification, Your Honor.  It is our view that

10   this MDL, as you've reminded us in the past, is really

11   about -- not about price-fixed parts but about price-fixed

12   parts in automobiles that consumers have purchased.  And we

13   envision based upon what we know now as opposed to what we

14   knew six months ago or much less two years ago that the class

15   certification would be -- the class would be of cars that

16   would -- that have been purchased that have priced-fixed

17   parts in them.  That makes the most sense.  Many cars have

18   been targeted and they now have multiple price-fixed parts.

19   We see no reason to focus only on wire harness when we have a

20   class dealing with a model and make that has multiple

21   price-fixed parts, and that should be the model I think for

22   class certification.

23           The alternative that has been promoted by the

24   defendants is a series of single trials involving single

25   parts.  As an example, we would have a Camry with multiple

1    parts in it that are price fixed, that's what we allege, and

2    that's what they have admitted to, and yet we would only be

3    faced with certification according to the defendants with

4    wire harness, which we think doesn't make any sense in light

5    of now the knowledge and the understanding that we have of

6    what's gone on, we have a better feel and knowledge of the

7    contours of this conspiracy.  We are with dealing with

8    multiple conspiracies, and we have -- Mr. Burns will tell

9    you, this case has changed from our perception and hopefully

10   from the Court's perception because we have now engaged in

11   discovery, though limited, we have talked to settling

12   defendants, though limited, and this is ongoing and we are

13   now -- the -- we were in the dark but now the light has been

14   shed upon the case itself.

15          And it is our view that the proposal that we make,

16   and we will be making a proposal at the conclusion of

17   hopefully the time period I have mentioned, in the spring of

18   this next year, which would allow us in the meantime, you

19   know, further discovery, further discussions with amnesty

20   applicants and settling parties, defendants, and as well we

21   don't really know at this time what has happened to the DOJ

22   investigation, it may end in 2015, we don't know that, that

23   would be an enormously important factor in pursuing further

24   discovery for the plaintiffs in this case.

25          THE COURT:  All right.  Let me try to clarify

 1     something, and I know this was brought up in the briefs that

 2     have been filed regarding -- or statements, I don't know what

 3     to call them, regarding the scheduling.

 4            MR. DAMRELL:  Right.

 5            THE COURT:  Are you alleging -- you said multiple

 6     conspiracies but then on the other hand you talk about the

 7     one car.  Are you alleging also a single conspiracy?

 8            MR. DAMRELL:  What type of conspiracy?

 9            THE COURT:  A single conspiracy on all parts.

10            MR. DAMRELL:  Your Honor, we don't know.

11            THE COURT:  It is not in your pleadings.

12            MR. DAMRELL:  We are in the process of

13     understanding what this conspiracy or conspiracies is about.

14     We are not in a position to allege a single conspiracy, nor

15     are we in a position to allege how many multiple conspiracies

16     existed with respect to the parts that were put into the

17     vehicles.

18            THE COURT:  Are you saying that your plan as you've

19     outlined in your supplemental brief encompasses or is

20     predicated on all of the parts being in the case and

21     discovery substantially done on all of them?

22            MR. DAMRELL:  Your Honor, we are not talking about

23     a single trial or all of the parts.

24            THE COURT:  I'm not talking about trials, I'm just

25     talking about certification of the class.

1          MR. DAMRELL:  Certification may take, as I

2    suggested, a car with multiple price-fixed parts in it.  It

3    may --

4          THE COURT:  Well, I don't understand that.  So we

5    have a car with multiple price-fixed parts but then you are

6    saying you wouldn't know if there is price-fixed parts until

7    the DOJ is done?

8          MR. DAMRELL:  Not necessarily, Your Honor.  We may

9    know, we may not know.  We are just learning about the

10   conspiracy in the last six months it has emerged and now we

11   have a better understanding of the parts that were placed in

12   vehicles, and I think Mr. Burns is going to demonstrate that,

13   that we now know that certain vehicles and certain models and

14   makes were targeted by these defendants, and that is

15   something that we have just learned about, and we feel that

16   that becomes a very important component of any certification

17   process.

18          THE COURT:  Okay.

19          MR. DAMRELL:  I'm going to allow Mr. Burns to

20   continue our presentation.

21          MR. BURNS:  Your Honor, if I may return to the last

22   point and just note this as succinctly as possible?  There

23   are two real elements here, I think we filed a position

24   statement on class certification back last July, we filed a

25   supplement that includes a case-management plan.  Both are

1    consistent in the sense that at this point we don't know

2    whether we are going to attempt to certify a class that is

3    wire harness, instrument panel clusters and ten other parts

4    or whether it is going to be a single part.  What we are

5    saying is that we need some time and some limited -- and some

6    discovery to reach that conclusion.  And also what we are

7    saying is that we are not asking for a blank check, that we

8    have conducted limited discovery and I will get into that, we

9    have had an opportunity to talk to settling defendants, and

10   we think we are going to be in a position with the next four

11   to six months by either the next status conference or a date

12   the Court sets to further advise the Court on how we envision

13   this case going forward from our perspective.

14             THE COURT:  Okay.

15             MR. BURNS:  I will add a bit, and I do have copies

16   of the slides, I can hand them up to you later if you would

17   like, Your Honor, at the end of the hearing?

18             THE COURT:  All right.

19             MR. BURNS:  Mr. Damrell really referred to the fact

20   that wire harness in many senses in this MDL was the tip of

21   the iceberg.  The Court will recall the first wire harness

22   cases were filed on October 5th, 2011, roughly three years

23   ago, and subsequently consolidated for pretrial purposes

24   before this Court.

25             But at the time, certainly as of October 11th -- or

1    October 2005 the only insight this Court or the parties -- or

2    the plaintiffs rather had into this case was a single part,

3    wire harness.  It was the first action by the DOJ, it was

4    several months before additional cases were filed.  It was

5    our first insight into what would become a much larger MDL as

6    Your Honor is well aware.

7            Now as time proceeded obviously the cases were

8    consolidated but Your Honor will also recall that the

9    defendants took the position and we ultimately agreed that

10   discovery should be stayed on the initial cases until after

11   motions to dismiss were decided.  So in July of 2012 the

12   case-management order was entered that effectively stayed

13   discovery for those cases.  We have the advantage of

14   guilty-pleading defendants' productions to the Department of

15   Justice but that was it, sort of lump sum and those came in

16   over several months.  We did not have the opportunity to

17   conduct depositions, to interview folks, any of that.

18   Discovery was effectively stayed.

19           The wire harness motions to dismiss were ultimately

20   decided on June 6th, 2013.  Subsequent to that the Department

21   of Justice asked that a stay be -- a stay be instituted

22   across the cases with some exceptions but, again, as of

23   June 6th, 2013 plaintiffs were still unable to conduct full

24   discovery into these cases.  And as the Court is aware, that

25   discovery stay was just lifted this year on June 25th, 2014

```
 1   as to the first three cases, a stay persists as to remaining
 2   cases.
 3           The end result of this is even though our
 4   perception of the wire harness case and the other cases in
 5   this MDL is a little better today, we have been through some
 6   of that Department of Justice production, we have had the
 7   advantage of settling with some defendants, there has been
 8   limited information exchanged through the ACPERA applicants.
 9   And your court will remember that Sumitomo acknowledged
10   itself as the applicant in the wire harness case sometime
11   this last summer and there are others out there, but frankly
12   we have not seen applicants come forward in all the cases yet
13   so we are still in that process of investigating there.
14           Nevertheless, our view of these cases has changed
15   significantly.  We started out with wire harness, you see it
16   in the middle, but now we have 29 cases before this Court, 29
17   different parts all pending before this Court.  And what we
18   hear from the defendants in their submissions is that, look,
19   the plaintiffs' idea is crazy, these are independent
20   conspiracies.
21           Am I quoting or just paraphrasing?
22           MR. CHERRY:  You got it right.
23           MR. BURNS:  It is crazy to think of this as a
24   multiple-part conspiracy.  These are individual conspiracies,
25   that's how the case should proceed, wire harness only, let's
```

1    go forward, but, Your Honor, from our perspective it just

2    doesn't look like that.  What we didn't know at the time that

3    wire harness was filed and at the time that the DOJ announced

4    the first plea is that Denso, represented by Mr. Cherry here,

5    would be in 18 of these cases, 18 individual cases of the

6    ones that are filed currently.  That covers quite a bit of

7    the map of the part cases but let's go further, Your Honor,

8    and I don't think we have to go too far into the well of

9    defendants.  If you add Hitachi into the mix we continue to

10   cover that map.  If you include Mitsuba, again, we continue

11   to cover the map.  If you add Tokai Rika we cover 26 cases.

12   Four defendants, Your Honor, involved in interwoven

13   conspiracies, it is before you on the screen, cover 26 of the

14   29 cases yet the defendants ask this Court and ask the

15   plaintiffs to take their word for it that these are single

16   conspiracies, that we should go forward with wire harness

17   only.  Your Honor, it begs credulity.

18        What we have also learned, Your Honor, is that the

19   affected vehicles often, and this is only through the limited

20   discovery we have been able to get into so far and

21   cooperation, often include multiple fixed parts.  They are

22   not limited to a wire harness as the fixed part in that

23   vehicle.

24        You look here the 2009 Toyota Avalon, and what we

25   have discovered is there are at least -- at least three parts

1    in that vehicle that have been fixed.  How many more?  We

2    don't know.  Why?  Because we haven't gotten -- we haven't

3    gotten to get into the discovery in 26 of the 29 cases.

4         How about the 2007 Honda CRV, we have four of six

5    fixed parts in there, wire harnesses, HCPs, IPCs and occupant

6    safety restraint systems.  The same with the 2012 Toyota

7    Camry hybrid, four different parts and that's all we know

8    about right now, Your Honor.  What we suspect is that that

9    graphic is going to increase, we are going to see some more

10   bubbles, some more lines, some more parts on these vehicles

11   because these are some of the more popular vehicles sold in

12   the United States, they were some of the more popular

13   vehicles that were the object of the fix, and we think we are

14   going to see it spread across the cases.

15        What we have also learned recently, Your Honor, and

16   by recently I mean within the last two weeks, nowhere

17   disclosed by the defendants, discovered through our own

18   resources is that in Japan on an OEM by OEM basis, so Toyota,

19   Honda, Nissan and others, there were parts conferences made

20   up of all the parts manufacturers -- major parts

21   manufacturers --

22             THE COURT:  Say that again, parts?

23             MR. BURNS:  There were parts conferences.

24             THE COURT:  Multiple parts conferences?

25             MR. BURNS:  Yes, often they are split into two

1    different sets of parts, so you have body parts and

2    electrical parts within these conferences, but what you have,

3    Your Honor, are multiple times a year when these defendants

4    are together in a room talking to Toyota, talking to Honda,

5    getting information from the car manufacturers about what is

6    coming down the pike, but also having the opportunity, and we

7    suspect in realty this happened, to meet amongst themselves,

8    to talk about prices on multiple parts.  It is not a wire

9    harness conference, it is a parts conference.  These

10   companies were able to meet, and I don't think any of them

11   will deny it, were able to meet ostensibly for the purpose of

12   discussing parts as a whole around these vehicles.  And what

13   we have learned and what we strongly suspect will be further

14   borne out in discovery was that was an avenue that the

15   defendants may have taken advantage of to further these

16   conspiracies.

17          The end result of all of this is that to

18   plaintiffs, the end payors and direct purchasers for whom I'm

19   speaking right now, this is starting -- this is increasingly

20   not looking like a single-part case, this is increasingly

21   looking like a conspiracy that at a minimum touch multiple

22   parts.  Did it touched all 29 parts?  I don't know, Your

23   Honor.  I don't think any of us knows.  What we are asking

24   for is some time to try to figure that out.

25          And coming back, and this was actually covered on

1   the earlier point in the agenda where we referred to some

2   amended and some upcoming case files, what we have seen is

3   that the DOJ may be taking a slightly different view of these

4   conspiracies and these parts.  In its most recent plea

5   filings the DOJ alleged a single conspiracy covering spark

6   plugs, standard oxygen sensors and air fuel ratio sensors,

7   three parts, single count, single conspiracy.  We are still

8   investigating that but it may be a case and we wanted to

9   advise the Court that it may be a case where you will see us

10  file a single case covering multiple parts, and frankly we

11  are looking across the board at all of our cases now to see

12  how this puzzle comes together and how it fits.

13         We think as a result we need coordinated discovery

14  across these part cases, it just makes sense, it is the only

15  way we can handle it for a number of reasons.  One, we want

16  to -- we want to investigate the scope of these conspiracies,

17  and the optics are there, Your Honor; it looks to us like it

18  is broader than an individual part.  We also want to be able

19  to minimize the burden particularly on third parties as we

20  conduct discovery so that we are going to Honda once or as

21  few times as possible because I can tell you those parties

22  will be in this courtroom very often, we will probably see

23  them every status conference complaining about the burden of

24  producing documents and data to the parties in this case.  We

25  think that burden only exponentially grows if we are forced

1    to hit them with 29 different discovery requests.  We just

2    don't think it makes sense, we don't think we can do it, so

3    we think we need to coordinate certainly for that purpose.

4         And we think that this Court and why we have

5    proposed a trial plan at this point is we think that there

6    are decisions that need to be made on the front end that will

7    help guide the parties, push us in the right direction, and

8    that's what we are asking the Court and Master Esshaki to do

9    in this sense is to take a look at this case and give us a

10   preliminary sense of how it should go forward.  That does not

11   mean that you have to decide today when class certification

12   should proceed in any or all of the cases and, in fact, we

13   are asking you to hold off for at least a few months so that

14   we can come back to the Court and further advise you.

15        As you heard Mr. Damrell say, we would like the

16   opportunity and we think all parties would benefit from this

17   to meet with Master Esshaki and talk with him about these

18   issues to the extent that the Court would like us to do so

19   and see if there are ways we can marry positions together so

20   we narrow disputes, and this is particularly true of the

21   case-management proposal.

22        Obviously the case-management proposal has been met

23   with quite a bit of vitriol and very strident arguments that

24   have been asserted in at least two or three different briefs.

25        THE COURT:  What is your case-management proposal?

1    I have the four phases for trial?

2              MR. BURNS:  That's correct.

3              THE COURT:  What's the case-management proposal?

4              MR. BURNS:  The case-management proposal certainly

5    includes that but it would also have to include some type of

6    schedule or management of the class certification process.

7              THE COURT:  You don't present one to the Court

8    though?

9              MR. BURNS:  Well, that's right, Your Honor.  What

10   we said in our original filing, and this was the July filing,

11   which is on the agenda somewhere I think just in wire

12   harnesses, that we need additional time -- for all the

13   reasons I have discussed today we need additional time for

14   discovery to get a sense of when timing is appropriate for

15   class certification.  Again, we are not asking for a blank

16   check, that's not what we are doing.  We will come back to

17   you as early as the next status conference or some other date

18   the Court determines and present you a firm plan on that, but

19   we do need additional time to work out that particular

20   schedule.

21             THE COURT:  Well, I guess you threw me off when I

22   read the -- is it phase one, I don't have my notes here that

23   I took on that, of the trial because I just could not fathom

24   how we would have a trial of that nature.  I mean, I tell you

25   that now because that's just the way I'm thinking, I cannot

1    imagine it.  So without schedules, I don't know, you are

2    saying you want until December to make some proposal with

3    discovery schedules, is that it?

4           MR. BURNS:  If I may, Your Honor, and when you were

5    talking about phase one I just want to make sure I

6    understand, were you speaking about what the defendants

7    called the sort of global trial, all 29 parts in the same

8    trial, was that the concern?

9           THE COURT:  We can slow down for phase one.

10          MR. BURNS:  Well, fair enough, and I'm happy too

11   claim authorship.  Usually -- I am from Mississippi

12   originally, Your Honor, I don't speak English actually, it is

13   some dialect, but the truth of the matter is this, let me try

14   to clarify that.  We are agnostic at this point as to how

15   many parts will be in a particular trial.  I say we are

16   agnostic, that's actually wrong, we think it is going to be

17   more than one part.  We think we may organize this case on

18   a -- on perhaps a basis that really centers on the defendant

19   and its co-conspirators, and obviously the defendant that

20   comes to mind would be Denso because it seems to be at the

21   heart of a number of these conspiracies but does that mean we

22   are going to cover all parts in that case?  We don't know

23   yet.  None of the parties -- none of the plaintiffs are in a

24   position to tell you that today because we haven't been able

25   to take the discovery to allow us to know that, but one thing

1    I do know, Your Honor, is that what the defendants are

2    characterizing as our proposal, and I understand there's some

3    confusion on it, this global trial, that's not what we

4    intended, so I will walk that back to the extent I made it

5    because I just don't know, I can't tell you that today.  What

6    I do know is the alternative, Your Honor, and the alternative

7    that the defendants seems to be proposing is 29, 30, 31, 32,

8    depending on how many other cases come out, individual

9    trials.  That prospect seems daunting, Your Honor.  It seems

10   a lot more daunting than combining some cases where we can.

11           THE COURT:  To say the least.

12           MR. BURNS:  What it tells me is that you, me or

13   probably our successors will be here trying these cases for

14   30 years, that can't be the case, Your Honor, it can't be the

15   case, not without this -- not with four defendants capturing

16   26 to 29 parts, that can't be the way to run that railroad.

17           So I hope -- yes, Your Honor.

18           THE COURT:  So are you backing off from your phase

19   one because I just want to be able to understand this?

20           MR. BURNS:  Absolutely not, Your Honor.  What we

21   are saying is we will come back at the next status conference

22   at a minimum or some other date the Court sets and we will

23   give you our view then of how we would proceed with this case

24   because we think in that four- to six-month period we will

25   have a little more time to get into discovery with these

```
 1    folks, to do some more written discovery, to continue

 2    interviews with amnesty applicants that have just begun to

 3    get a better handle of these cases and the breadth of these

 4    cases.

 5              You also say, Your Honor, the --

 6              THE COURT:  Are you still proposing -- I've got any

 7    notes now.  Are you still proposing class cert basically

 8    after the trial?

 9              MR. BURNS:  No, Your Honor, class cert will have to

10    occur before the trial, so -- and I was actually going to get

11    to sort of a clarification on those points.

12              THE COURT:  Okay.  I'm sorry.

13              MR. BURNS:  The predicate is what does this trial

14    look like?  And what we are saying is please give us some

15    more time, don't enter a wire harness order today that

16    requires us to brief that issue as the defendants would want

17    us to do next summer, that's not enough time.  No one -- no

18    one on the plaintiffs' side thinks that's enough time.  What

19    we are saying is give us the time, we will figure it out and

20    we will tell you.  Once that issue is decided, that's really

21    when the case-management plan makes sense and kicks into this

22    case, and there we stand by our submission, we are not

23    walking away from that submission, but to clarify those

24    points the class certification -- all of the plaintiffs'

25    classes will have to occur before trial.  You are not going
```

1   to want to stop trial, go through a class-certification

2   process in the middle of it, we get that, so class

3   certification will occur before trial.

4        The reason -- the principal reason for the series

5   of phases in the plan we have presented is to avoid jury

6   confusion, Your Honor, because obviously what we have in this

7   case, we have three different plaintiffs' classes, we have

8   individual plaintiffs all with slightly different theories of

9   the case, none opposing each other, I don't think it is fair

10  to say they oppose each other but they are slightly

11  different.  And then we have issues of damages for the direct

12  purchasers, the overcharge as it is passed through the

13  indirect purchasers, all of these elements combine to present

14  a clear and present danger, if you will, a risk that is the

15  jury going to be confused, that's why we have given you a

16  four-phase approach.

17        The first phase covers the scope of the conspiracy,

18  it covers the fact of the conspiracy, it covers the elements

19  that are common to all of the plaintiffs' claims and all the

20  plaintiffs are going to participate in that phase, and I

21  think we can manage that, we can manage any issues of

22  confusion there.

23        We move to phase two and --

24        THE COURT:  Okay.  Who would be the defendants in

25  phase one?

1      MR. BURNS:  All defendants, all defendants who are

2  implicated in that case.  Not all the defendants in the MDL,

3  Your Honor, not -- whichever -- whichever defendants are

4  implicated in the case we put forward, so if it is three

5  parts, if it is six parts, it is the defendants that fall

6  within those cases.

7      THE COURT:  Well, if we take just the wire harness

8  don't we have 20 some wire harness defendants?

9      MR. BURNS:  Obviously there are several related

10 parties, Your Honor.

11     THE COURT:  Well, I cut those out, it would be 40

12 some if you do the --

13     MR. BURNS:  I don't think we are that high.  Your

14 Honor trimmed some of that during the motion to dismiss

15 phase, I don't have it handy, but my recollection is maybe we

16 have ten groups of defendants, probably less.  It is a

17 manageable number, and it is -- I mean, the issues there are

18 certainly common to all of those defendants, and I don't

19 think anyone is proposing splitting up trials for defendants

20 because then that would make their proposal of 30 separate

21 trials increase tenfold at least for wire harness, so I don't

22 think that's going to make sense, I think we would keep the

23 defendants the same, and that's in phase one.

24     Phase two is really the issue of the overcharge

25 that was assessed against the direct purchasers.  So there in

 1    realty the direct purchasers' class, Ford, who supports this

 2    proposal, and the direct purchasers will speak later, I think

 3    what you will hear from them is they have no diametric

 4    opposition to this proposal, they want to think about it and

 5    think about their issues as well, but in phase two you will

 6    have the direct purchasers and the issues of overcharge

 7    assessed against them coming before the Court and tried to

 8    the jury.

 9         Phase three is the issue of pass on to a level of

10    indirect purchasers which includes the dealership class, it

11    probably includes the City of Richmond if the City of

12    Richmond maintains in the case -- or remains in the case.  It

13    certainly includes what we will call fleet purchasers who are

14    major end purchasers in a sense but purchase directly from

15    the OEMs.  That probably includes the City of Richmond or at

16    least some of their purchases, we are not sure, they can

17    speak to that better than I can.

18         Phase four is probably the most novel of the phases

19    that we are proposing.  It is --

20         THE COURT:  This is the phase where the defendants

21    don't participate?

22         MR. BURNS:  That's right.  It is an equitable

23    phase -- well, frankly, Your Honor, at that point it is our

24    position they have no more interest.  At that point the

25    amount that is going to be split up between the dealership

1    plaintiffs and the end purchasers who purchase from them,

2    okay, and those are the two classes that are impacted by

3    phase four, it is a matter of allocation at that point.  So

4    the end payors and the dealership class will approach the

5    Court and we'll have an equitable proceeding there, and it is

6    our submission in all likelihood we will probably have a

7    settlement that this Court could approve after its inquiry

8    because we work --

9            THE COURT:  I would like to approve a settlement

10   before we begin any trial.

11           MR. BURNS:  Your Honor, we are working hard on

12   that.  Your Honor, that's our four phases.  The predicate

13   question is class certification, the timing of it, when that

14   is going to occur, and that leads to the case-management

15   proposal.

16           I will say this, Your Honor, and I don't know if

17   this will make today easier for you, but what we would

18   propose is that we use the next four months, I think the next

19   status conference is in January if I'm not mistaken?

20           THE COURT:  It is.

21           MR. BURNS:  We use that four months to actually

22   talk among the parties, sit down probably in front of

23   Master Esshaki either together or in individual sessions and

24   a combined session, but to talk through some of these issues.

25   I mean, frankly having read defendants' submissions I'm not

1    here to say our case-management proposal is perfect, I mean,

2    no case-management proposal could necessarily be perfect.

3           THE COURT:  Well, you don't have a case-management

4    proposal, you have trial --

5           MR. BURNS:  Trial plan, we will call it that.

6           THE COURT:  I'm concerned because I'm concerned

7    about the case-management proposal up to trial.

8           MR. BURNS:  Up to trial and understanding, and

9    that's -- from our perspective that's principally centered on

10   class certification, and that's why we didn't want that

11   aspect to be lost today even though we briefed that issue to

12   begin with last July.  We agree 100 percent, it is a

13   predicate question and we have to figure that out first.

14          Your Honor, I think what would be constructive is

15   not to sit here today and battle about the merits or lack of

16   merits of the individual pieces of the trial plan that we

17   have proposed but to look at this globally including class

18   certification, to sit down in the next four months and see

19   whether we can narrow the issues before you.

20          At this point, Your Honor, I don't think the

21   defendants, as their submissions I believe would require,

22   want to have class certification next summer, maybe they do,

23   they can tell you, but I don't think there is frankly enough

24   time to do that especially because we have taken a lot of

25   flack, Your Honor, in the defendants' submission for this,

1    what they say here that we are continuing to obstruct
2    discovery relevant to and delay scheduling briefing on class
3    certification.  Well, my view of that, Your Honor, is that it
4    is a big cat and mouse.  The defendants are the ones who have
5    all the information, we don't.  These same defendants who say
6    we are obstructing and that the class should go forward as
7    quickly as possible are the same defendants who haven't
8    produced a single document in response to our written
9    discovery request to date.  We have spent the last six months
10   arguing about their objections, and we have worked through a
11   lot of those, but it takes time, but I think it goes beyond
12   credulity, it is frankly a bit galling say that we are
13   obstructing by trying to present a plan that says look, we
14   are the plaintiffs, we get to define our case.  You are the
15   folks that have all the information and frankly you are not
16   giving it over very freely.  We have a right to determine
17   what this case looks like, we have a right to discover the
18   facts and we want to do so and we want the time to do so.
19          So, Your Honor, again we are not asking for a blank
20   check.  What we are saying is this, give us that four to six
21   months either to the next status conference or whatever date
22   Your Honor wants to put on it, and we have a plan for what we
23   are going to do during that period.  First, as I described is
24   we would like to meet with Master Esshaki, many of us have
25   met him over the phone already, but we think as we stated

1  very early on that having a master in this case helps you, it

2  helps us, it helps everyone and we would like to utilize that

3  process if you want us to.  So there is time for all of us to

4  get together on these issues and work through them.

5      What we are also going to do, Your Honor, is at a

6  minimum file -- not file, serve additional discovery which we

7  will expedite over any objections, but additional discovery

8  aimed at getting at some of these common elements that we

9  haven't had a chance to yet, so that's the conferences that I

10  mentioned before, it is issues that cut -- that potentially

11  cut across these cases.  Now, we can only do it in three

12  cases now and I guess anti-vibration rubber parts since the

13  stay is lifted there, but we think we can do it and we think

14  we should have an opportunity to do it.

15      What we are also going to do, you are going to hear

16  today the preliminary approval motion on the Yazaki

17  settlement and the TRW settlement.  The Yazaki settlement is

18  a significant step forward in this case particularly as it

19  applies to the earliest of the cases.  By preliminarily

20  approving that settlement it triggers the cooperation that we

21  will receive under of, and what we are going to do in the

22  next four to six months is work with each of those

23  cooperating defendants, we are through the point where we

24  have gotten preliminary approval hopefully and we are going

25  to work with each of those cooperating defendants who are

1    hopefully going to give us a little better sense of what this

2    case looks like.

3              We are also going to demand from the ACPERA

4    applicants greater cooperation.  Some of it is beginning, I

5    don't want to -- I'm not here to condemn any particular

6    applicant, that process beginning and the timing is theirs to

7    choose but we are going to demand more cooperation, we are

8    going to demand that they fully live up to that the ex para

9    statute and we are able to take advantage of that, Your

10   Honor.

11             And frankly we would -- I don't know who others are

12   in the courtroom but we would encourage any other applicants

13   who haven't come forward to come to us now, let us have that

14   cooperation now, it is going to help us, it is going to help

15   the Court, it is going to help the defendants frankly by

16   figuring out how this case will proceed and how we can do it

17   expeditiously.

18             Those are the principal issues we are going to

19   focus on in the next four to six months, as I said.  There is

20   a -- I will say one last thing, there is a -- on that front

21   there is a pending motion to compel against the dealership

22   class from the downstream discovery issue, it is obviously

23   implicated by our case-management plan.  We would suggest

24   that that also be rolled into this process to see what we can

25   figure out there, and whether there are any compromises to be

1    made so we can get that off the Court's plate, and hopefully

2    we can.  I know that the dealers are more than willing to

3    engage in that further, and I think that we should be able to

4    meet with Master Esshaki and see where we can get with it

5    before we have to put it on your plate.

6            THE COURT:  Okay.

7            MR. BURNS:  The final thing I'm going to say, Your

8    Honor, is there is a risk of clear prejudice to us by rushing

9    the class certification and doing that too early.  Again,

10   discovery in this case is full-on discovery, it has only

11   going to be going on less than six months and frankly has

12   really yet to churn and begin to bear fruit.  We need the

13   additional time, and we trust and pray that the Court will

14   grant it to us.

15           Now, I would also say --

16           THE COURT:  What would be the risk to you if we

17   proceeded to class certification on wire harness because you

18   are telling me about there may be multiple parts, et cetera,

19   and certainly the facts are suggesting that that's what's

20   happening, but if you have cert on one and you handle it the

21   same way we are handling these settlements, we don't send out

22   notice right away, we may wait to see what's coming up,

23   what's the risk to you?

24           MR. BURNS:  The one principal risk that jumps to my

25   mind, and I will say the -- I will give my first reaction.

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 51 of 122   Pg ID 11381
Status Conference & Motions for Preliminary Approval • October 8, 2014

51

1  We are --

2          THE COURT:  This has nothing to do with trial.  I'm

3  not going forward to say, okay, we are trying wire harness.

4  I don't know what's happening with that.

5          MR. BURNS:  I understand.  A principal risk I can

6  think of -- among the principal risk, but the one that jumps

7  to mind is this is going to be an expert-driven case

8  certainly on all plaintiffs' parts, so the issue of the

9  overcharges to the direct purchasers and passthrough to the

10  indirect purchasers is all going to be effectively conveyed

11  by those experts.  I think, and I'm not an economist, I'm not

12  speaking for any experts we have hired, but the issue of what

13  parts are implicated in a particular vehicle and how that

14  affects -- how that potentially affects the passthrough of an

15  overcharge, whether you have six parts, whether you have one

16  part, the value of those parts I think is very important for

17  the experts to understand that.  Is it absolutely necessary?

18  I can't say that, but I think it is important for us to have

19  the complete picture -- or as nearly a complete picture of

20  the universe of parts in a particular vehicle that may impact

21  that issue.

22          That issue is unique frankly to the indirect

23  purchasers.  I mean, the direct purchasers don't have to

24  prove passthrough, it is not an issue for them, the Supreme

25  Court said you get all the damages under the federal laws.

1     It is an issue for us, so rushing to class certification

2     certainly could be prejudicial on that front.

3           I think it is also prejudicial to us because

4     frankly the scope of conspiracy impacts obviously the

5     culpability of these parties that are sitting to my left and

6     behind.  So if it is a conspiracy of three culpability is

7     defined by that.  If it is a conspiracy of ten it is defined

8     a little bit differently.  So I think we need to understand

9     the scope so that we can assess what the culpability of these

10    individual defendants is under a joint and several liability

11    regimen.  Those are the principal areas that come to mind.

12          I will say this too, the truth of the matter is,

13    Your Honor, if we try wire harness first, think of the

14    evidence that is going to come in.  I mean, what we are going

15    to be introducing when we are telling the jury about all of

16    the bad things they have done with respect to wire harnesses,

17    we are going to say oh, by the way, Yazaki pleaded guilty to

18    fuel senders and instrument panel clusters too, so we'll have

19    some evidence on that coming in too, the jury is entitled to

20    hear it, and it bears on the fact of conspiracy and

21    violation.  So there's no way to divorce wholly the various

22    parts that are at issue in this case.  We can perhaps

23    compartmentalize and make that a little more manageable after

24    we figure out through a little more discovery where we are

25    at, but certainly impossible -- it is certainly impossible to

1    isolate a part and the activity of other defendants from

2    coming into trial.

3          The last thing I would say, Your Honor, subject to

4    any questions you might have, is in reality there is no

5    prejudice to the defendants here if we wait that period of

6    time to try to figure out what this case looks like.  Again,

7    discovery is really just beginning.  I mean, these folks are

8    going to respond to additional discovery in the HBC and IPC

9    cases, they have asked for and we have agreed to 45-day

10   extensions in those cases.  Again, we don't have productions

11   as to our document requests, and I'm sure they will say we

12   gave you most of it in our DOJ productions but I don't know

13   what's out there.  We are also going to have requests that

14   might not have been encompassed by the DOJ production.  So

15   this case needs time, they know it, I think everyone in this

16   courtroom would realistically say class certification next

17   summer should be off the table, there is just not enough

18   time.

19         There is no other -- there may be no other

20   antitrust case of this scope going or have been, but

21   certainly major antitrust cases in this country don't get to

22   class certification that quickly.  The reason is, as the

23   Court knows, class certification is very important in these

24   cases for both sides.  They view it as a way to limit their

25   liability, to kick us out notwithstanding having promised to

1   deal with restitution in these cases.  We look at it as a way

2   to compensate the victims of these conspiracies and the only

3   realistic way to do so.

4         So with that, Your Honor, I will close, but if you

5   have any additional questions I'm happy to answer them.

6         THE COURT:  Okay.  All right.  Let's hear from

7   defendants.  Plaintiffs have brought forth some very novel

8   ideas as how to handle this.  What do you say?  May I have

9   your appearances first?

10         MR. CHERRY:  Yes.  I'm Steve Cherry of the law firm

11  Wilmer Hale.  I represent Denso but I'm speaking on behalf of

12  the wire harness defendants.

13         And just going through what Mr. Damrell and

14  Mr. Burns have said sort of point by point.  First is this

15  issue of restitution that was addressed at the plea hearing.

16  As I'm sure Your Honor knows, under the federal law there is

17  a provision for restitution to direct victims in connection

18  with a felony plea, it does not cover indirects.  The direct

19  victims here are not represented by any of the people sitting

20  in this room, they are dealing with this issue on their own

21  and are not a part of any punitive class.

22         The second point, Mr. Damrell and Mr. Burns have

23  repeatedly said that they need discovery before they can even

24  address a schedule for class cert.  They do downplay

25  significantly the discovery that they have had.  They have

```
 1    had over 12 million pages of the most significant documents,
 2    all the documents produced to the DOJ and the key documents
 3    having been translated into English for them, they have had
 4    those for two years now.  They have also had the
 5    interrogatory responses of the defendants in the wire harness
 6    case going through in detail, every meeting with the
 7    competitor, all the details --
 8              THE COURT:  What are they referring to the
 9    defendants not answering their discovery?
10              MR. CHERRY:  They are talking about additional
11    document productions, so they have the 12 million DOJ
12    documents.
13              THE COURT:  They have the interrogatories?
14              MR. CHERRY:  The interrogatories were produced a
15    year ago, and they have been supplemented as we have gone
16    along, but that lays out all the detail of every competitor
17    meeting, everything relevant to wire harness.  They have said
18    repeatedly they have the cooperation of the leniency
19    applicant, they have the cooperation of the settling
20    defendants, they have everyone's initial disclosures, they
21    have all of that.
22              In terms of looking for some connection between
23    wire harness and other cases it is also relevant that they
24    have the DOJ documents from a number of other products from
25    initial -- the instrument panel clusters, the heater control
```

1   panels, fuel senders were all produced approximately a year

2   or so ago, that have had all of that.  If there is some

3   connection they should have seen it.  So they have had lots

4   of discovery.  I think what they are referring to is they

5   have served document requests for other discovery and there

6   have been meet and confers about that.  I think most issues

7   have been resolved.  We don't -- for Denso we have no

8   outstanding issues, we are just exchanging ideas on search

9   terms which we are combining and we are going to be ready to

10   go, and we are already in the process of producing hard copy

11   documents, so that's going ahead already.

12          The one thing we haven't had is any depositions.

13   We have been wanting to take depositions.  I think we were

14   here back in February and we needed to close the gap on a

15   couple issues for the deposition protocol.  Since then they

16   have refused to talk to us about a wire harness deposition

17   protocol.  They have insisted that any discussions be based

18   on an all-product all-case basis.  We have said that's not

19   what the supplemental discovery plan requires, and we want to

20   just close the gap on these last couple issues for our

21   deposition protocol and take some depositions, but we haven't

22   been able to do that.

23          THE COURT:  What about these third-party

24   depositions where people are asked to come in multiple times?

25          MR. CHERRY:  Yeah, Your Honor, we agree that there

1   should be efforts by everyone here to find efficiencies and

2   to minimize burdens, especially on third parties, but that

3   doesn't mean that we stay all depositions until the last plea

4   is ever filed and the last case filed and that moves into

5   discovery, that could be years from now.  And we can't hold

6   up the early cases, wire harness is in discovery, we ought to

7   have a class cert schedule.  We shouldn't sit on the

8   sidelines now idle for years waiting for that to happen.  We

9   should look for ways to be efficient but we should go ahead

10  and take the discovery we need.  The first four cases, and I

11  think there may be a couple coming up behind us, we are ready

12  to do that, we can do that.  If others want to participate we

13  are happy to talk to them, but we need to get those subpoenas

14  out, take that discovery, and we can do that for multiple

15  products.  And there will be products you have pushed ten

16  others forward that are in the motion phase, at some point

17  here they may be in discovery together and they can also look

18  for ways to coordinate among themself.  So this is not

19  something that is going to be 29 or 30 times, but it may be

20  done two or three times over the next several years as cases

21  are in a similar procedural posture and they need that

22  evidence.

23          If something has been produced once before like the

24  cars that are sold downstream that's not a burden, just give

25  us another copy or even the defendants can give the other

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 58 of 122   Pg ID 11388
Status Conference & Motions for Preliminary Approval • October 8, 2014

58

1    defendants a copy.  I mean, I think the burdens are

2    overstated but we can certainly look for ways to minimize

3    that burden but the answer is not just indefinite delay.

4           And the other thing, this idea that they don't know

5    what the conspiracies are and they may want some big mega

6    trial of who knows how many conspiracies and products is

7    completely inconsistent with their complaints.  They are

8    filing complaints -- they are filing new complaints.  They

9    amended the wire harness complaint three weeks ago, and after

10   all of the discovery I have mentioned they filed new amended

11   complaints that still say that there is a single conspiracy

12   involving wire harness products involving the named

13   defendants, that's their case.  Now they say they have just

14   learned something new in the last few months.  Well, that

15   isn't in their complaint they filed three weeks ago.  The

16   case is a single conspiracy involving wire harness products,

17   and that is also not reflected in the settlements they are

18   reaching.  They are asking you to approve settlements that

19   are premised on there being single conspiracies for each

20   product involving certain defendants, and that's why those --

21   they say those settlements are fair and reasonable, and so

22   they know enough to make that determination in their

23   complaints they're filing still today and in the settlements

24   they are asking you to approve, and that's also consistent

25   with every plea the DOJ has reached.  The DOJ has been

1    investigating this -- they have evidence from everyone.  They

2    have been investigating this for five years probably now, and

3    they still allege separate conspiracy -- they -- they say

4    they have found separate conspiracies involving separate

5    products after all of that investigation.  So that's the

6    case, Your Honor, and that's the case they have alleged that

7    they have pled in their complaints.

8            They basically just want to put off discussion of a

9    class cert schedule but then they want to jump ahead years to

10   a trial schedule which we think just makes no sense.  Someday

11   if we are on a -- if a trial is approaching and they have

12   certified a class, we know what that class is, who is in, who

13   is out for the wire harness products, and they've withstood

14   summary judgement and we know which claims withstood summary

15   judgment, what states they can represent.  You will remember,

16   Your Honor, at the motion to dismiss we pointed out they

17   don't have plaintiffs representing most of the states and

18   some courts have addressed that at a motion to dismiss stage,

19   and Your Honor wanted to address that at class cert.  Well,

20   that's going to be addressed at class cert, and we don't

21   think they can represent a number of these states even if

22   they can go forward with some, and there may be opt outs.  We

23   don't know what the wire harness case will look like someday

24   so it is premature to talk about trial plan, but we should

25   set a class cert schedule, we need a schedule to push this

1    case forward.

2            And what we see is that when we do have a schedule

3    and we have to push forward and accomplish something then

4    things happen; we find a way to be efficient, we work

5    together.  You know, they proposed a -- in their initial

6    filing a streamlined process for filing motions to dismiss.

7    Well, Your Honor didn't have to grant that but we have worked

8    something out on our own, and you will notice the last set of

9    motions were much more streamlined and efficient, and I think

10   in ten cases there was a single brief filed on state law

11   issues.  So, you know, when we push these cases forward we

12   have an incentive to find a way to be efficient, minimize

13   burdens on everyone, and I think the same thing will happen

14   if we can push wire harness forward, let it go forward, and

15   we are in discovery, let's go forward with that discovery,

16   let's set a class cert schedule, work towards that class cert

17   schedule, a ruling there will inform other cases, we won't be

18   going through this from scratch 29 times, we learn from what

19   we do in wire harness but only if we allow that to happen and

20   we push the case forward and don't bog it down indefinitely.

21           THE COURT:  I would like you to address the risks

22   that I asked Mr. Burns about in certifying the wire harness,

23   and, one, he talks about expert-driven cases and problems

24   with that.  Could you --

25           MR. CHERRY:  Yeah.  Frankly, I don't see the

1    relevance that there may be two or three products in a car

2    that are affected by separate conspiracies involving separate

3    groups of defendants.  Any one of these cases is going to

4    have to figure out what happened in that particular case with

5    that particular product, and they are going to have to show

6    passthrough -- they are going to have to show impact on their

7    class members at both of the auto-dealer class level and the

8    end-payor class level.

9           THE COURT:  Is there a difference in impact --

10   maybe this is something that has to wait for the expert, but

11   as I see it they are saying well, if it is one part it may

12   cost X dollars impact, but if there are multiple parts maybe

13   it is less or more or something because there are multiple

14   parts so --

15          MR. CHERRY:  Your Honor, as long --

16          THE COURT:  It really gets to the damages.

17          MR. CHERRY:  The fact that there are separate

18   conspiracies and there are different groups of defendants

19   they are going to have to address that on a part by part

20   basis to know, you know, what the impact was and who has

21   responsibility for it, and even if there is overlap of a

22   defendant in multiple cases if there are separate

23   conspiracies involving different groups of defendants they

24   are still going to have to address that on a part by part

25   basis, whether there is one part, two parts, three parts,

1    they are going to have to do that.

2        Frankly, I think Your Honor has noted the burden

3    involved in that and how difficult that is going to be there,

4    and there are a number of cases we have cited where cases

5    have failed to be certified because of end payors or the

6    retailers' inability to meet that burden, and I think it's

7    going to be a very difficult burden for them here.  I think

8    frankly a lot of what you are hearing is because of that,

9    they understand that they are going to have great difficulty

10   doing that and they are trying to really avoid coming to

11   grips with that by delaying class certification indefinitely,

12   by sort of lumping together multiple cases that are the way

13   they have pled them, are separate cases, and we think that's

14   inappropriate.  They are ultimately going to have to deal

15   with the burden here, and we think we need a schedule to get

16   to that now instead of weed out --

17       THE COURT:  I'm sorry.  You propose a schedule

18   where defendants certify that you have substantially

19   completed document production?

20       MR. CHERRY:  Yes.

21       THE COURT:  That's kind of a start date for the

22   schedule?

23       MR. CHERRY:  Well, that's how you get to the

24   deadline.

25       THE COURT:  Then you are saying four months after

1    that --

2           MR. CHERRY:  Yes.  We have under our schedule --

3    well, actually when we were here I think in February, Your

4    Honor, we were talking about schedules, and Your Honor

5    suggested six to nine months might be appropriate following

6    lifting of the stay.  And what we have proposed is that we

7    will have completed document production between four and five

8    months from now and then they would have an additional

9    120 days, so another four months after that, so basically

10   that's nine months right there which is what Your Honor

11   suggested, and we are months after the lifting of the stay,

12   so we believe that's plenty of time to brief class cert.  But

13   again you don't hear the end payors and auto dealers saying

14   we need two or three more months, they say I'm not going to

15   give you a schedule, give us months to think about it after

16   you've asked for a schedule time and time again.

17          THE COURT:  Well, what they are asking for is to

18   wait until the next status conference I think to propose --

19          MR. CHERRY:  To propose something, but you have

20   been asking since February.

21          THE COURT:  You are saying by the next status

22   conference you will basically have produced all of your

23   documents or close to it?

24          MR. CHERRY:  We should be very close to that but,

25   Your Honor, there is no reason to wait.  The idea of

1     certifying substantial completion should not be sort of a

2     start date of how we start thinking about this process, for

3     instance, for depositions.  They do have 12 million of the

4     most important documents, and we've also proposed to them all

5     along in these meet and confers that we are perfectly willing

6     to front load any custodians they want.  They have our

7     interrogatories, they know who did what, and if there are

8     people that they want to depose first, we'll produce their

9     documents first.  We can do this on a rolling basis and in

10    whatever order they want, and so we can start with

11    depositions and get going on that and not wait until

12    everything is done before they start with a single

13    deposition.

14          THE COURT:  Okay.  And the question I have for you

15    under your certification is who determines if you are

16    substantially completed, would that create arguments?

17          MR. CHERRY:  No, Your Honor, I don't think so.  I

18    mean, I think given all that they have requested and all that

19    we have agreed to do there is going to be a lot of work

20    involved, and I think the idea is there may be things

21    dribbling in at the end, you know, you may -- always may find

22    another document or two but we can't wait forever to get

23    going on this.  So there will be a point here where we have

24    produced and for all intents and purposes we are done, we've

25    done it and that's what we mean.

```
 1              THE COURT:  Okay.  Thank you.

 2              MR. CHERRY:  Let me see if there is anything else

 3    here?  I think that's it.  I mean, Your Honor, just focusing

 4    on the trial plan we have addressed this in our briefs but,

 5    you know, we do see significant problems, we think it is

 6    completely unworkable, and nowhere in there do we see any

 7    point where there is a determination of the impact to either

 8    the auto dealers or the end payors.  I mean, if you look at

 9    phase one, two, three, four never is that determined whether

10    any particular auto dealer or any particular end payor

11    would've impacted separate antitrust injury at all.  And they

12    would have that worked out among themselves after the

13    defendants are excused from the room having written a check,

14    and there is no case that has ever allowed that, it is

15    contrary to all the cases.  In fact, the cases they cite --

16    every case they cite that they say supports that proposition

17    actually has an initial determination of impact which -- of

18    liability which includes impact and then a separate

19    proceeding involving individualized damages at which the

20    defendants, of course, participate and get to assert their

21    defenses against the particular individual plaintiffs, so

22    none of their cases support that.

23              Your Honor, I think that's all but, again, we do

24    think the best way to go here really is just to get a

25    schedule in place.  Thank you.
```

```
1            THE COURT:  Thank you.
2            MR. NICOUD:  Your Honor, George Nicoud representing
3    defendants Mitsuba Corporation and America Mitsuba.
4            We on behalf of a number of defendants submitted a
5    filing regarding what I guess we are now calling a
6    case-management proposal with respect to class certification.
7            I will be very brief.  We are not seeking to become
8    part of the wire harness case but our concern from being in
9    some of the later cases is if we just keep kicking the can
10   down the road we have no idea when our cases will ever move
11   forward, we are sort of stuck behind the earlier-filed cases
12   and we endorse the view you heard expressed earlier from
13   Mr. Cherry that the way to start solving problems is to get a
14   schedule, start working on it and the parties will confer.
15   Admittedly there are challenges, we are going to have to work
16   through them but the way to make it happen is to get started.
17           THE COURT:  Thank you.  Mr. Burns?
18           MR. BURNS:  Just briefly, Your Honor.  Your Honor,
19   what you have heard from my friend Mr. Cherry, and I mean
20   that, Mr. Cherry is a good lawyer and I respect him, is
21   exactly not how to run this case.  What you heard from
22   Mr. Cherry is we are the defendants, let us define the
23   plaintiffs' case, it is a single conspiracy, trust us.  We
24   are the defendants, let us tell you when we are done with our
25   document production, trust us.  We are the defendants, none
```

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 67 of 122   Pg ID 11397
Status Conference & Motions for Preliminary Approval • October 8, 2014

67

1    of our witnesses are going to say anything inconsistent with

2    our interrogatory responses.  You are not going to find out

3    from any third parties that anything we have said is

4    inaccurate or untrue.

5              Your Honor, I have never been in a case like that

6    and I don't think it is this case either.  We are the

7    plaintiffs, we should be allowed to define our case.  You've

8    seen what we've discovered, you've seen what Mr. Cherry

9    didn't talk about, about how he and three other defendants

10   occupy 26 of 29 cases.  You've seen the overlap between parts

11   and cars.  We have to be able to address those issues, Your

12   Honor.

13             Mr. Cherry also said there is no reason to look at

14   other parts.  There is no economic reason, their economists

15   aren't going to have to deal with this.  I was a little bit

16   confused by his answer.  I'm not a  seer, Your Honor, but I

17   can guarantee you that whenever we get to class certification

18   Mr. Cherry and his experts are going to come up here and they

19   are going to say you have to take into account the price

20   inputs that go into the value of that vehicle.  Well, isn't

21   it sort of logical to assume that the price of a price-fixed

22   heating control panel may be little different than an

23   ordinary heating control panel.  How do we account for those

24   in vehicles where we are looking at at least four, if not

25   more, price-fixed parts in the vehicle?  This is clearly an

1    issue that would seem to have some import to the analysis.

2         Mr. Cherry also said that, look, all that stuff we

3    said about restitution, okay, we only meant that for the

4    direct purchasers and none of them are in here today.  Well,

5    I think Mr. Spector represents the direct purchaser class, I

6    think they are seated beside me, and more to the point, Your

7    Honor, I understand their position, I understand they want to

8    avoid liability to my clients, to Mr. Spector's clients, but

9    I also understand what the Department of Justice has said

10   since day one in this case, American consumers and American

11   businesses paid more for automobiles because of the

12   conspiracies that their clients entered into.  That is what

13   we are here to prosecute, it is what we are here to claim for

14   our clients, and we need to be able to do it in a way that

15   makes sense and that allows justice to be done, and we will

16   do that by discovering in this case how broad these

17   conspiracies stretch, what parts are implicated by these

18   conspiracies, and how it affects the compensation to our

19   clients.

20        Finally, Your Honor, you heard from Mr. Cherry,

21   this is all going to work out, we are going to produce our

22   documents by January, even though we haven't really produced

23   any by now to the plaintiffs in response of their document

24   requests, but we are going to produce them all by January and

25   then, you know, four months later they can do class cert.

```
 1    Okay.  But what happened about depositions?  I mean, is
 2    Mr. Cherry going to come up here and say, or any defendant, I
 3    don't want to personalize this, but we will make it really
 4    efficient, we will bring the 50 custodians that we identified
 5    over from Japan so you can take their depositions here in
 6    Detroit.  We haven't heard that proposal and I don't think
 7    you will.  There is a lot of work that needs to be done even
 8    after they tell us that they have completed their document
 9    discovery.  Their plan doesn't make sense, Your Honor.  We
10    need the time to figure out what does and that's what we are
11    asking for.  Thank you, Your Honor.
12              THE COURT:  Okay.
13              MR. CHERRY:  Can I just respond briefly?
14              THE COURT:  Wait a minute.  We have some other
15    defendant?
16              MR. BARNES:  Yes, Your Honor.  My name is
17    Donald Barnes, and I represent the G.S. Electeck defendants.
18              I would like to bring another perspective to the
19    attention of the Court relating to the debate that's been
20    going on about class certification, number one.  We are
21    perhaps the smallest defendant in the wire harness cases.  We
22    pled guilty.  As the Government acknowledged at our
23    sentencing hearing, there is no evidence to link us to any
24    other conspiracy involving any of these other parts.  And
25    apparently there still isn't after additional years of
```

1   Government investigation, after the plaintiffs have received

2   millions of documents from co-defendants, we are not part,

3   there is no evidence that we are part of any other auto part

4   conspiracy.  We therefore would have an objection to any

5   class-certification proceeding that lumps us into an alleged

6   conspiracy involving other auto parts.  We believe that if

7   that happened we would have a Constitutional issue to bring

8   to the attention of the Court.

9       I sort of look at this case in an old-fashion way.

10  It seems to me that historically under the rules courts

11  should make class-action determinations at the earliest

12  practicable date.  I'm not here to argue about scheduling, we

13  will go along with whatever schedule the Special Master and

14  Your Honor devises, but there is no reason in our opinion to

15  delay the class certification on the wire harness, quote,

16  conspiracy.

17      And I might add that the way wire harness is

18  defined in the complaint or I believe 13 different parts we

19  only produce one of the 13 parts.  To tie us to any other

20  part the plaintiffs would have to show that G.S. Electeck

21  knowingly and intentionally entered into an agreement to

22  violate the antitrust laws and to fix the price of that

23  particular product.  That's a threshold issue that we don't

24  believe they can sustain.  They can't sustain their burden.

25      To summarize, Your Honor, we would like to object

```
 1   to any class certification that includes anything other than
 2   wire harness.
 3           THE COURT:  Okay.
 4           MR. BARNES:  That's our position.  Thank you.
 5           THE COURT:  All right.  Thank you.  Mr. Cherry?
 6           MR. CHERRY:  Yes.  Thank you, Your Honor.
 7           Just to address Mr. Burns' comment about the
 8   defendants characterizing the plaintiffs' case, we are not
 9   characterizing the plaintiffs' case, we are reading their
10   complaint, and they just filed a complaint three weeks ago,
11   that's their case, that's their wire harness case, and they
12   allege a single conspiracy involving certain wire harness
13   defendants involving wire harnesses.  And so it is not one
14   characterizing, paraphrasing, putting words in their mouth;
15   we are just reading their complaints and looking at the
16   settlements they are reaching which, again, are their words.
17           THE COURT:  Okay.
18           MR. CHERRY:  Okay.  And he mentioned an expert may
19   need to look at the price points, the other price points.
20   The price points are what they are.  The parts cost what they
21   cost other than the part issue in a particular conspiracy
22   that they are trying to address, and they will have to prove
23   regardless of whether there are other parts subject to
24   separate conspiracies they are still going to have to focus
25   on the product that is at issue in the particular conspiracy
```

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 72 of 122   Pg ID 11402
Status Conference & Motions for Preliminary Approval • October 8, 2014

72

1    in the particular case regardless as I mentioned.

2           In terms of the point about Mr. Spector

3    representing some direct purchasers, that may be the case but

4    they certainly aren't the direct purchasers that were at

5    issue in the plea agreements, and I think we have long since

6    identified who the one direct purchaser was for our plea

7    agreement, and they are not represented by anybody in this

8    room.

9           Mr. Burns brought up a point about where

10   depositions would take place.  That's something that was

11   resolved in the initial discovery plan several years ago, we

12   don't see any reason to revisit it, but we are certainly

13   willing to talk about ways of doing depositions one after

14   another to move things along, but again the point shouldn't

15   be all of this talk and delay figuring out the perfect way to

16   do anything, it is just let's get going, take some

17   depositions.  This will work itself out if we just get going.

18           THE COURT:  Okay.

19           MR. CHERRY:  Thank you, Your Honor.

20           MR. SPECTOR:  Your Honor, if I might?

21           THE COURT:  Mr. Spector.

22           MR. SPECTOR:  Good morning, Your Honor.

23   Eugene Spector on behalf of the direct-purchaser plaintiffs.

24           Very surprised to hear that we are in this

25   courtroom not representing people that were injured by the

Status Conference & Motions for Preliminary Approval • October 8, 2014

73

1    conspiracy.  We certainly do.

2         THE COURT:  I don't think that's what was said, but

3    the claim deals with a very specific defendant in terms of

4    restitution.  We know that in the criminal law area.

5         MR. SPECTOR:  That's correct, Your Honor, but for

6    Mr. Cherry to say that the direct purchasers who were the

7    victims of this conspiracy aren't represented here is

8    incorrect.  We do represent them, and you can see that we do

9    from just looking at the Nippon Seiki settlement where we

10   already have our opt-out provisions.  We only have two of the

11   OEMs that have opted out, all of the others are part of the

12   case.  So we do represent direct purchasers who are OEMs who

13   were the targets according to Mr. Cherry and the wire harness

14   defendants of the conspiracies that are at issue in these

15   proceedings.  So that's the one thing I did want to make sure

16   I mentioned.

17        THE COURT:  Okay.  Thank you.

18        MR. SPECTOR:  The other thing that I would like to

19   mention, Your Honor, is that we have proposed a

20   class-certification schedule, and since that has now come up

21   and I saw it a little later in the agenda but it has been

22   discussed so I thought it might make sense to do it now if

23   Your Honor would like me to?

24        THE COURT:  Yes, go ahead.

25        MR. SPECTOR:  If not, we could wait.

1          We have proposed a schedule that we think is

2     realistic.  We proposed it in the wire harnesses case because

3     that's the one that we are in with a schedule.  Does that

4     mean that we don't think that there is a possibility that the

5     conspiracy might be wire harnesses plus some other things?  I

6     can't say we don't think that that's a possibility, but we

7     are -- we filed on the basis of that single product, the wire

8     harness products.  It is actually I think 13 products as

9     Mr. Burns has said so it is a conspiracy of multiple parts.

10    We are prepared to proceed on that basis if that's what the

11    Court wishes to do.  We proposed a schedule, Your Honor, that

12    talks about using time efficiently and realistically.  If the

13    defendants will certify that they have produced their

14    documents, not substantially produced them but produced their

15    documents, from that point on we would need we believe at

16    least 210 days to take -- which would be -- to take

17    depositions.

18          THE COURT:  Here?

19          MR. SPECTOR:  Here, if it is all here in the United

20    States.  If it is going to be in Japan then it is another

21    90 days and that's because of the procedural hurdles that we

22    have to face in Japan in terms of scheduling with consulates

23    and at the embassy in terms of the time that we are limited

24    to in a given day.

25          THE COURT:  How many depositions are you -- I mean,

1    I know it is hard to answer, I'm not asking for a direct

2    amount but, you know, just a guesstimate.

3              MR. SPECTOR:  I will tell you this, Your Honor, we

4    have identified over 210 custodians of relevant material

5    documents for purposes of this case, so it is quite possible

6    that we will be taking that number of depositions, I don't

7    think so.  I would suggest to Your Honor that it would

8    probably be with eight families of defendants -- or ten

9    families of defendants I would guess 100 to 150 depositions,

10   that would be my guess.  Hopefully it could be less, but with

11   that number of identified custodians and with the number of

12   documents we have seen, that to me would not be an unusual

13   number for ten families of defendants.

14             THE COURT:  Okay.

15             MR. SPECTOR:  And so that takes time.  If we take,

16   for example, a Japanese-language deposition, Your Honor, that

17   is under the current proposal, I think, planned 12 hours over

18   two days.  Well, 12 hours over two days, if you have 20 of

19   those depositions --

20             THE COURT:  Somebody's moving to Japan.

21             MR. SPECTOR:  If you have 50 of the depositions are

22   in Japanese language in Japan, that's going to take months,

23   and the proposal that we have made I think is aggressive but

24   reasonable, and it doesn't mean that I -- Your Honor, it

25   doesn't mean that I wouldn't be standing up here again nine

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 76 of 122   Pg ID 11406
Status Conference & Motions for Preliminary Approval • October 8, 2014

76

1   months from now saying, you know, Judge, we tried to do it

2   but because of A, B and C we can't accomplish it, we need

3   another couple of months.  At least we would have a schedule

4   in place that would require us to come to you again and say

5   why we can't complete it rather than simply putting it off or

6   not having a schedule, so we've tried to be realistic.

7          So once that's complete we would like 60 days from

8   the completion of depositions to be able to file our class

9   certification motion with expert reports, and that's not --

10  that's also a fairly aggressive schedule considering the

11  amount of information that is going to be involved but, you

12  know, if you look at the proposal that the defendants make,

13  Your Honor, they give us four months from the substantial

14  completion of their production of documents to take the

15  depositions, have our experts review all of the material and

16  file their report, and for us to then file our motion for

17  class certification.  And to show you how real -- unrealistic

18  that is, how much time did they ask for themselves to just

19  respond to that?  Four months.  Their proposal is totally

20  unreasonable.

21          THE COURT:  Okay.

22          MR. SPECTOR:  Thank you, Your Honor.

23          MS. WEAVER:  Good morning, Your Honor.

24  Leslie Weaver with Green & Noblin on behalf of the public

25  entities in this class.

```
 1          I just want to weigh in very briefly here.  We
 2   filed our first complaint on February 20th, 2014, and so we
 3   are trying to get up to speed and coordinate with everybody
 4   but what, in fact, happened was the defendants make us serve
 5   through the Hague defendants that had already accepted
 6   service in the case.  So we filed our amended complaint on
 7   Friday, and we have agreed to a briefing schedule with the
 8   defendants, which you approved earlier this week -- or rather
 9   last week.  We are requesting a hearing date on January 28th,
10   and that was later in the schedule, but as we have been
11   discussing scheduling and what's happening here, it is clear
12   to us on behalf of the municipalities and states that, you
13   know, for us to come into the case you, I imagine, would want
14   to have ruled on the motion to dismiss.  The defendants have
15   taken a position that we can't even sign off on any of these
16   protocols although we have been participating in all of the
17   conference calls.
18          So from our perspective it makes sense to just
19   allow us until the next status conference so all of the
20   plaintiffs can get on the same page about what makes sense in
21   terms of class cert, just as the plaintiffs here today have
22   proposed.  I myself am a huge proponent of deadlines because
23   I like moving my cases forward and getting relief for the
24   plaintiffs, but there are just so many issues at play here,
25   as Mr. Spector just laid out, there are going to be a lot of
```

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 78 of 122   Pg ID 11408
Status Conference & Motions for Preliminary Approval • October 8, 2014

78

```
 1    defendants, and with Master Esshaki just assuming his
 2    position more or less fairly recently, it really might be
 3    reasonable to allow us all a moment to sit down and come to
 4    you with something clean and direct that you can approve.
 5              Thank you.
 6              THE COURT:  Wait a minute.  There was somebody else
 7    here on plaintiffs' side.
 8              MS. KELLY:  Cindy Kelly, Your Honor, for Ford.
 9              Very briefly, we do not take a position with
10    respect to the class-certification schedule.  However, we do
11    believe that the discovery schedule that has been proposed by
12    defendants is entirely unrealistic.  They have proposed
13    120 days after their document production is substantially
14    complete as the written discovery deadline and for the
15    completion of depositions.  For the reasons that Mr. Spector
16    has already said, we believe that 120 days to complete
17    depositions is entirely unrealistic especially when we don't
18    yet know how many depositions there will be, what the
19    deposition protocol will be or the scope of those
20    depositions.  We think the minimum is 210 days.  We actually
21    think it is more logical to wait until we know the number of
22    depositions and the deposition protocol to actually set a
23    date, but we do believe that 210 days is the minimum.
24              We also just can't have a written discovery
25    deadline which is the same date as the end for depositions
```

Status Conference & Motions for Preliminary Approval • October 8, 2014

1    because under our case-management plan we need to serve all

2    written discovery 90 days prior to the deadline for written

3    discovery, and so if you have the same date you essentially

4    don't have the opportunity to take and complete your majority

5    of your depositions before having to serve your written

6    discovery, so they have to be staggered, and we would propose

7    at least a 90-day staggering, which Mr. Spector has proposed

8    that.

9              THE COURT:  Okay.

10             MS. KELLY:  Thank you, Your Honor.

11             MR. CHERRY:  Just a couple last words?

12             THE COURT:  Briefly.

13             MR. CHERRY:  Just responding to Mr. Spector, I do

14   think we need to get past this idea that we are somehow

15   waiting until all the documents -- every last document is

16   produced before we think about starting with the depositions.

17   They have had plenty of documents, plenty of information, and

18   as I said, we are perfectly willing to front load production

19   of documents relevant to certain custodians so that we should

20   start with depositions, we should have started by now, but

21   start immediately and get going on this so it is not like we

22   are trying to squeeze in all the depositions in that little

23   period at the end after documents are done.

24             THE COURT:  Okay.

25             MR. CHERRY:  And the second thing is they don't

1    need every single deposition of every single custodian to

2    deal with class cert, right, I mean, so we are about

3    efficiencies and minimizing burdens, there are overlapping

4    issues here, overlapping custodians, you know, three people

5    who are at the same meeting and they don't need to depose

6    every single person necessarily just to deal with class cert.

7            And with respect to the other issues, I think -- we

8    also don't think 210 days are necessary, certainly we don't

9    think they need 300 days just because some of the depositions

10   are taking place in Japan.

11           THE COURT:  Okay.

12           MR. CHERRY:  Thank you, Your Honor.

13           THE COURT:  All right.  I think this is perhaps a

14   very critical stage in this litigation, and I have given it a

15   lot of thought and, of course, I have not discussed it with

16   the Master and I think these discovery deadlines need to be

17   gone over with him, but I believe I need to make one ruling

18   now and that is -- I appreciate what the plaintiffs -- the

19   work that you have to do in all of this, but you have, in

20   fact, filed complaints, amended complaints,

21   consolidated-amended complaints all alleging separate

22   conspiracies for each part.  Whether you file something later

23   and whether I allow you to do that I am not addressing, but

24   we have had wire harness for some years now and I think this

25   case needs to proceed, and we will proceed with the class

1    certification for wire harness.  In order to do that we need

2    to have the schedule, and I'm going to ask Mr. Esshaki to

3    determine that schedule, and what I'm looking at is a

4    schedule that will determine how many months -- I mean,

5    basically between the direct-purchaser plaintiffs and the

6    defendants there's a difference of four to seven months, I

7    believe, but to determine a realistic number of days after

8    plaintiffs -- excuse me, defendants, each of them, have

9    submitted all of their documentation.

10          I do believe that we could include that word

11   substantially and let's see how that works.  I also believe

12   that the depositions can begin.  I don't know, they could

13   begin as soon as you get all of -- substantially all of the

14   information from the defendants, and actually they could

15   begin now because if you do them on a rolling basis and ask

16   for and -- excuse me, and defendants submit their

17   documentation on a rolling basis for you then you can begin,

18   but so that's basically my ruling, we will go forward with

19   wire harness and we will have you meet in the next few months

20   with the Master and determine an exact schedule which we'll

21   discuss at our January 28th meeting.

22          I also want the document production to continue by

23   defendant.  All the requests are in?  Mr. Cherry, are the

24   requests in by the plaintiffs except for, of course, the city

25   and the governmental entities?

```
 1          MR. CHERRY:  Yes, and we have worked through all of
 2    our issues and I think we are just putting the finishing
 3    touches on search terms, which don't hold up hard-copy
 4    documents but the ESI, and I think everyone is moving
 5    forward.
 6          THE COURT:  So I want that to continue while you're
 7    working out the schedule.  There is no need for it not to
 8    continue while the schedule is worked out because the
 9    schedule will be based off of defendants' substantial
10    compliance.  All right.
11          Mr. Esshaki, do you have anything that you wish to
12    ask or anything regarding the schedule or meetings?
13          SPECIAL MASTER ESSHAKI:  No, Your Honor.  I think I
14    understand fully what you just said so I will be available.
15          MR. SPECTOR:  Your Honor, if I might?
16          THE COURT:  Mr. Spector.
17          MR. SPECTOR:  I don't think we can proceed with
18    depositions at this point because we do not have a deposition
19    protocol in place and that's --
20          THE COURT:  All right.
21          MR. SPECTOR:  And that's the other thing that has
22    to be worked out.
23          THE COURT:  Right.
24          MR. SPECTOR:  So I think between now and
25    January 28th we should be able to hopefully get that
```

1   resolved.  I know there are some issues still being

2   negotiated, and we'll have to make it apply apparently to the

3   wire harness case because we are going to move ahead in wire

4   harness.

5           MR. CHERRY:  Yes, Your Honor.  What we would ask is

6   that the parties immediately meet and confer to try to -- we

7   just have a few remaining issues, try to close the gap on

8   that, and if within 30 days or some period of time we haven't

9   come to an agreement, we present the issue to Mr. Esshaki and

10  just have it resolved.

11          THE COURT:  I think that that's fair.  I think if

12  you meet and confer, and then Mr. Esshaki will meet with you

13  if necessary to set a protocol.

14          MR. CHERRY:  Thank you.

15          MR. WILLIAMS:  Steve Williams for end-payor

16  plaintiffs.

17          We will do that, and this relates to the deposition

18  protocol, but the issue I want to raise, it may be within the

19  scope of that protocol even if wire harness goes along on its

20  own there is overlap so, for example, discovery started in

21  heating control panel and fuel senders, same defendants, we

22  are going to have to address eliminating duplication of their

23  witnesses that relate to those cases.  They have to give us

24  the documents for us to do that, but for us more importantly

25  we have 29 cases, we assume we may have more, we end-payor

2:12-md-02311-MOB-MKM  Doc # 851  Filed 10/24/14  Pg 84 of 122  Pg ID 11414
Status Conference & Motions for Preliminary Approval • October 8, 2014

84

1    plaintiffs who bought a car don't think we should be subject

2    to being deposed in wire harness and then again in the next

3    case.

4           Our view would be one deposition of that plaintiff

5    for every case they are in, defendants can appear if they

6    want.  And what I would suggest, and I can provide the orders

7    on this, is in cases of this nature where there are class and

8    direct and multiple plaintiffs you don't repeat the

9    deposition again.  So if we produce our plaintiffs for

10   deposition once now during the wire harness discovery, we

11   don't want somebody on the sidelines to come back in a year

12   and say now it is occupant safety, we want that person again

13   to ask them all of the same questions.  So we are going to

14   suggest and we will try to work this into our protocol that

15   they get deposed once.

16          THE COURT:  Let me just indicate, you will try to

17   work it into the protocol, that's fine, but I don't see how

18   that is going to work because there is not discovery yet

19   done, I mean, or document production on these other parts.

20          MR. WILLIAMS:  But this is the plaintiff being

21   deposed, and this -- this comes back to what we have been

22   talking about, but it is the plaintiffs who's deposition

23   being taken, so --

24          THE COURT:  You are not talking --

25          MR. WILLIAMS:  My plaintiffs have produced their

1    documents, they have produced everything, they have nothing

2    more, they should just be deposed once.

3            THE COURT:  Mr. Cherry?

4            MR. CHERRY:  Yes, Your Honor.  As I said, I think

5    we all want to minimize burdens on everyone including the

6    plaintiffs and we will do our best to depose plaintiffs only

7    once, particularly the end payors, I mean, they bought a car

8    and we find out what car they bought and we are good.  So I

9    think we would take those depositions as soon as possible

10   now, and we will try to correspond and coordinate with the

11   other defendants.

12           THE COURT:  I think it is a very excellent issue to

13   address now for the plaintiffs, I hope you can do it only

14   once that you can work into our protocol.  If it happens that

15   you can't I can't imagine why for end-payor purchasers, I

16   mean, they are not going to know the individual part.

17           MR. CHERRY:  It may be somebody would come along

18   and be able to show good cause down the road if they

19   bought --

20           THE COURT:  That could very well be.

21           MR. CHERRY:  But we would certainly do our best,

22   and I think it may be less perfect at the auto dealer level

23   or direct purchasers where there are replacement parts, they

24   are part specific conduct and people, but we will do our best

25   and should do our best to minimize duplication and hopefully

1    that just won't need to occur.

2             THE COURT:  Okay.

3             MR. CHERRY:  Thank you, Your Honor.

4             THE COURT:  Yes?

5             MR. BARRETT:  Your Honor, Don Barrett for the auto

6    dealers.

7             We strongly agree with the end payors about the

8    issue of repeated depositions.  Generally speaking, our

9    plaintiffs are small businessmen and it is -- it would be

10   abusive to make them over and over and over 29 times -- you

11   know, the idea is to run them out of the litigation and --

12            THE COURT:  Nobody is going to do that.  I don't

13   think you need to worry about that.  The effort will be to

14   not duplicate discovery.  I think we said that way back when,

15   and I really think that's still where it goes, and I think

16   with the Master's assistance in your meet and confers first

17   that you will be able to work that out.  It certainly may be

18   that somebody is deposed twice two or three -- I mean, there

19   are things that we can't control but those things that are

20   within their control and we can proceed now with wire harness

21   we will work with an effort to not duplicate.

22            MR. BARRETT:  Thank you, Your Honor.

23            THE COURT:  All right.  I think we have that

24   schedule for now.  I would like to go back because there was

25   one thing I didn't do, which I believe was F, page 3 of the

1    report, and that is we are ready to set schedules in the

2    windshield wiper case; is that correct?

3              MR. HANSEL:  Your Honor, if I may?  Greg Hansel for

4    the direct-purchaser plaintiffs.  Good morning, Your Honor.

5              Before we leave wire harnesses I wanted to bring up

6    an item at the top of page 3 of Your Honor's agenda, direct

7    purchasers' motion for leave to amend.  Direct purchasers

8    filed this motion.  The time to respond has passed, there was

9    no objection to the proposed amendment, so we would ask that

10   motion be addressed.

11             I spoke this morning with Mr. Barnes from

12   G.S. Electeck.  Part of the purpose of the amendment was to

13   combine a separate wire harness direct-purchaser complaint

14   against G.S. Electeck into a single complaint, and then there

15   were three other parties added, one plaintiff and two groups

16   of defendants.  There has been no objection so we believe

17   that whenever Your Honor --

18             THE COURT:  Which item is that on the agenda

19   because my page number is different than yours?

20             MR. HANSEL:  It is Roman numeral II (B)(1),

21   unscheduled pending motions.

22             THE COURT:  Yes.  I had a note on that, I didn't

23   get any response.  Okay.

24             MR. HANSEL:  Thank you.

25             THE COURT:  So there is no objection to that, you

1    may present an order.  I don't know which part you are going

2    on so --

3              MR. TUBACH:  This is Michael Tubach on behalf of

4    the Leoni defendants.  Good morning, Your Honor.

5              Following up on what was just raised, the unopposed

6    motion to consolidate is unopposed to file that amended

7    complaint.  The direct purchasers also recently last week

8    filed a stand-alone complaint only against three Leoni

9    entities.  It was filed three weeks after the Court deadline

10   for amending complaints.  They have made no effort to show

11   good cause why they couldn't meet the deadline and we don't

12   think they could, but we will be moving to dismiss the

13   complaint.  At the very least the plaintiffs should have to

14   try to show good cause for why they should amend the

15   complaint yet again when they just passed the Court-ordered

16   deadline to amend the complaint and simply filed a

17   stand-alone complaint currently assigned to Judge Goldsmith

18   but we expect will be reassigned to the Court.

19             THE COURT:  Maybe I haven't seen --

20             MR. TUBACH:  I don't believe it has been reassigned

21   to the Court yet, but I just want to alert the Court that we

22   will be moving to dismiss that complaint for failure to abide

23   by the court-ordered deadline.

24             THE COURT:  Okay.  If you do that hopefully you

25   will do it right away and we can get a response right away so

1    we can deal with that.

2              MR. TUBACH:  We'll do it immediately.

3              MR. SPECTOR:  We are prepared to deal with the

4    issue of the reason why the complaint wasn't filed until last

5    week.

6              THE COURT:  Okay.  So we will hear that hopefully

7    in January so we can move along on that.  Okay.  Molly, will

8    you make a note of that for January?

9              THE LAW CLERK:  Yes, Judge.

10             MS. ROMANENKO:  Your Honor, Victoria Romanenko for

11   dealership plaintiffs.

12             Just on behalf of dealership plaintiffs and

13   end-payor plaintiffs, we are in the same situation as the

14   direct-purchaser plaintiffs with regard to our third-amended

15   complaint.  We filed our motion to amend on September 8th and

16   there has been no opposition, so we understand that similarly

17   to the direct-purchaser complaint our two amended complaints

18   are not opposed, so we would similarly request that the

19   orders be -- the orders be entered granting our leave to

20   amend.

21             THE COURT:  No problem with that.  They have not

22   been responded to, okay, so motion granted.

23             MS. ROMANENKO:  Thank you.

24             MS. WEAVER:  Just to close out the issue of the

25   hearing date on the motion to dismiss for the public

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 90 of 122   Pg ID 11420
Status Conference & Motions for Preliminary Approval • October 8, 2014

90

1   entities, we would request jointly January 28th.  The order

2   did not actually set it for hearing on that date, but just

3   wanted to see if that is amenable to the Court?

4           THE COURT:  On the motion to dismiss on the public

5   entities for January 28th, I don't know what the schedule is

6   regarding the response, if it is in --

7           MS. WEAVER:  Yes, I can give it to you.

8           THE COURT:  I think that's wonderful, we will put

9   it for the 28th.

10          MS. WEAVER:  Perfect.  Thank you.

11          THE COURT:  What about the windshield wiper motion

12  to dismiss, anybody on that?

13          MR. BURNS:  I don't think we have that on the

14  agenda.

15          THE COURT:  You don't have that on the agenda?

16          MR. BURNS:  No, Your Honor, we don't.

17          THE COURT:  I just found that the windshield wipers

18  are ready to go.  I just want to get your input on that

19  motion.

20          MR. CHERRY:  You just want a schedule for that?

21          THE COURT:  Yes.

22          MR. BURNS:  We can work on a schedule.

23          MR. CHERRY:  We can certainly agree to a schedule.

24          THE COURT:  That's fine, just work out a schedule

25  and submit it to us so we can see when we can put it on.

Status Conference & Motions for Preliminary Approval • October 8, 2014

1   Probably May.

2         MR. BURNS:  Thank you, Your Honor.  More broadly,

3   is windshield wipers the only case you want set for motions

4   to dismiss?

5         THE COURT:  Well, that was the only one I found

6   that would be ready.  If there are others that I have missed,

7   yeah, we could schedule it.  We would like to move along as

8   soon as ready.

9         MR. RIESE:  Good morning, Your Honor.

10        THE COURT:  I think service was complete on

11   windshield wipers and not the others, at least the last

12   service in your status report.

13        MR. RIESE:  Will Riese for end-payor plaintiffs.

14        We have completed service in a number of cases, so

15   we have a proposal of some cases we would like to move

16   forward on our motion to dismiss.

17        THE COURT:  Wonderful.

18        MR. RIESE:  So we have windshield wipers, air flow

19   meters, fuel injection systems, valve timing control devices,

20   constant velocity joint boots, electronic throttle bodies and

21   inverters, and we have served all the parties in those cases.

22   We have a proposal again for timing consistent with the

23   schedule you offered last time, so by November 10th we would

24   inform the Court of any new defendants that we intend to add,

25   November 17th we would file any consolidated-amended

1   complaints, by January 8th the defendants could file their

2   motions to dismiss, we would file oppositions by

3   February 23rd, and they could reply by March 9th.  Again,

4   that's consistent with the schedule you entered last time for

5   the nine cases.

6           THE COURT:  The last date was March --

7           MR. RIESE:  March 9th for the reply.

8           THE COURT:  Okay.  Service was completed for all --

9           MR. RIESE:  The end payors have served --

10          MR. CHERRY:  I'm sorry.  If you could just repeat

11  the dates?

12          MR. RIESE:  Sure.  So on November 10th we would

13  inform the Court of any new defendants that we intend to add.

14  November 17th we would file our consolidated-amended

15  complaints.  January 8th defendants would respond or file

16  motions to dismiss.  February 23rd we would file any

17  oppositions.  March 9th would be reply.

18          THE COURT:  So then it looks like they would be

19  ready for the next scheduling conference.  Now, we have a

20  scheduling conference for January 28th, and I've got a

21  proposed date for May which we will get to in a moment.

22  Okay.  Very good.

23          MR. RIESE:  Thank you.

24          THE COURT:  Thank you.  Defendants okay with

25  those -- I don't know who the defendants are on those cases

1    but it is pretty much --

2         MR. CHERRY:  I think the timing between -- to the

3    extent that we are in any of them -- sounds fine.  I mean, we

4    would want to talk to the defendants, it does come right over

5    the holidays for the defendants, the motion due January 8th.

6         THE COURT:  Well, let me have you -- if you have a

7    problem deal with the plaintiffs, ask the plaintiffs about

8    it, but I would --

9         MR. RIESE:  We will give you two more weeks for the

10   holidays than we have, we accounted for that.

11        THE COURT:  You can talk.  The only thing I want to

12   be sure of is I have enough time to prepare, so you've got

13   March 9th and if we are May probably the middle of April at

14   the latest.

15        Let me ask on that, is service done on the auto

16   dealers and directs for that group?

17        MR. HANSEL:  Your Honor, the directs has only filed

18   one of those cases, which is the wipers case.

19        THE COURT:  Okay.  Auto dealers?

20        MR. SPECTOR:  I believe that is served, Your Honor.

21        THE COURT:  Okay.

22        MS. ROMANENKO:  Your Honor, with regard to auto

23   dealers, we believe we can wrap up service issues by the time

24   it is time to file an amended complaint just by stipulation

25   like we have been doing.

1        THE COURT:  Okay.  Great.

2        MS. ROMANENKO:  Thank you.

3        THE COURT:  Okay.  We just want to make sure we get

4   them all in and don't lose a class.  Okay.  Anything else

5   with future scheduling of motions that are ready?

6        (No response.)

7        THE COURT:  No.  Okay.  And what about the

8   dealerships' motion to file a third-amended consolidated

9   action, did we just do that?

10       MR. BURNS:  We did, Your Honor.

11       THE COURT:  Okay.  I think on these motions the

12  motion to file a third-amended complaint for dealers and end

13  payors -- I wanted to ask, is the end payor one unopposed?

14       MR. BURNS:  I believe it is, Your Honor.

15       THE COURT:  It is?

16       MR. CHERRY:  Yes.

17       THE COURT:  Okay.  These will be done by opinion

18  and order.  There will be no oral argument on those so you

19  don't have to come in on those.

20       And the briefing schedule for Richmond, we have

21  talked about the public entity and that's all taken care of,

22  right?

23       MS. WEAVER:  Yes.

24       THE COURT:  Okay.  The bearings, the Florida action

25  and service on that, what's going on with that?

1          MR. FRASER:  If I could just speak from here?

2          THE COURT:  Your name.

3          MR. FRASER:  Tim Fraser with the State of Florida.

4          We have worked out a stipulation with the

5     defendants on service.  They have filed a motion to dismiss,

6     and responses will be due -- the replies will be due just

7     before Christmas, so if the defendants want we'll have

8     argument on the 28th.

9          THE COURT:  Okay.  So we probably will be able to

10    hear that January 28th?

11         MR. FRASER:  Yes.

12         THE COURT:  Thank you.  Then we have the new class

13    action, which is the heavy duty truck dealers.

14         MR. FRASER:  And equipment.

15         MR. SPERL:  Yes, Your Honor.  Andrew Sperl from

16    Duane Morris.

17         THE COURT:  How do you spell your last name?

18         MR. SPERL:  Sperl, S-P-E-R-L.

19         THE COURT:  Thank you.

20         MR. SPERL:  We represent Rush Enterprises or a

21    number of subsidiaries of Rush Enterprises who are dealers of

22    heavy trucks and equipment.  We filed in the bearings case a

23    case on behalf of them and on behalf of a proposed class of

24    truck and equipment dealers.

25         Just for clarification, this class is separate from

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 96 of 122   Pg ID 11426
Status Conference & Motions for Preliminary Approval • October 8, 2014

96

1    the auto dealers class that is already represented in this

2    MDL.  This is heavy trucks, heavy equipment dealers.

3         We have filed in the bearings case, just looking at

4    the agenda regarding service, we are making good progress on

5    service, we have served by mail those defendants in our case

6    who have United States registered agents and we have an

7    agreement in principle with defendants regarding service of

8    the foreign defendants whereby service will be accepted by

9    counsel in exchange for an extension of time to respond to

10   the complaint.

11        THE COURT:  All right.  You also have a motion to

12   appoint interim counsel, right?

13        MR. SPERL:  That's correct.  We just filed that on

14   Monday, it didn't make it onto the agenda.  I'm happy to

15   answer any questions about that.  I'm not looking to add

16   anything to an already full agenda.

17        THE COURT:  But you just filed it Monday so

18   defendants haven't had an opportunity really --

19        MR. SPERL:  Yes, that's correct.  It is an

20   unopposed motion but that's correct, I don't think anyone has

21   had time to --

22        THE COURT:  I have read the motion and if there are

23   no objections filed you may present an order in the next

24   30 days if there's no objections filed.  I do find the

25   firm -- you have 700 attorneys, 120 doing antitrust?

1        MR. SPERL:  That's correct, Your Honor.

2        THE COURT:  And I read the resumes of the

3    individual -- there were two I think?

4        MR. SPERL:  Yes, Mr. Wayne Mack and Mr. Manly

5    Parks, both of whom regret not being able to be here today.

6        THE COURT:  They have extensive experience in

7    antitrust and class-action suits, and I would have no problem

8    with them representing this group if there is no objections,

9    and I haven't gotten any objection -- well, it was just filed

10   but I haven't heard anything.

11       MR. SPERL:  Thank you, Your Honor.  There was a

12   proposed order attached to the motion, would you like us to

13   submit that separately on the docket?

14       THE COURT:  I would like you to submit it

15   separately and wait 30 days from today's date just to be sure

16   there is nothing, you know, yeah, it is not on the docket yet

17   obviously.  Okay.

18       MR. SPERL:  Thank you, Your Honor.

19       THE COURT:  The next item on the agenda is the

20   switches with the Panasonic defendant.

21       MR. WILLIAMS:  Steve Williams for the end payors,

22   and I think for the dealers on this.

23       For the next three really, switches, steering angle

24   sensors and HID, at least as it relates to Panasonic it is

25   the same issue, it is simply that in light of the agreement

1    that we have reached and the efforts underway now to prepare

2    the final written conference of settlement agreement, their

3    time to respond to those complaints has been sort of

4    suspended, so that's the only issue with these next three

5    items.

6              THE COURT:  I think I entered orders already on --

7              MR. WILLIAMS:  Yes, you did.

8              THE COURT:  -- on those, so that's the switches,

9    steering angles and the HID?

10             MR. WILLIAMS:  Correct.

11             THE COURT:  All right.  The next item that we have

12   has to deal with the Master.  I think -- do you want to take

13   a break at this point?  I don't know how far you want to go

14   on?  We will go on a little bit more.  All right.

15             Mr. Esshaki, do you want to give a report with what

16   is going on with you?

17             SPECIAL MASTER ESSHAKI:  Yes, thank you very much,

18   Your Honor.

19             First of all, I'm Gene Esshaki, as I said

20   previously.  I have had an opportunity to work with a number

21   of local counsel in this community for 40 years.  I have had

22   the opportunity to speak with a number of you on the

23   telephone conferences that we've conducted to date, and I

24   really do appreciate the thoroughness with which you present

25   your materials for me, and want to encourage that with you.

1          I also appreciate sincerely the cooperation that is

2     going into this case between the plaintiffs and the

3     defendants and find that in many, many instances simply

4     putting the issue down on a piece of paper, having the

5     response and a reply and an opportunity to confer resolves

6     all of the -- not all the issues but a significant number of

7     the issues.

8          I have published and have filed with the Court a

9     protocol for dealing with the Master with an amendment, and I

10    will continue to submit amendments as I think they are

11    necessary with the approval of the Court, which you will all

12    receive, on how we will interact, but I would like to just

13    sort of recap what has happened so far.  It hasn't been a

14    significant amount, but on some of the motions to extend

15    deadlines and so forth, the motion is filed, the response is

16    filed, a reply is filed, and I then insist we will schedule a

17    hearing -- a telephone hearing, and I insist the parties

18    confer on the open issues before our telephone conference.

19         Often, at least three times out of I think seven

20    motions, the conference resulted in the matter being resolved

21    and it was completely withdrawn, which is wonderful.  In

22    other instances the matters were narrowed so that a

23    conference call that I conducted on Monday I think there were

24    probably 14 issues and out of the 14 through -- I asked -- I

25    asked the defendant to file a supplemental response after a

1    mediation session on the telephone, the supplemental response
2    was filed, a supplemental reply was filed, and another
3    conference, meet and confer was conducted, so that on Monday
4    when I conducted that hearing out of 14 issues 12 of them had
5    been agreed to by the parties so there were only two
6    remaining.  And in that instance -- actually in each instance
7    where I have had to go through conference and had to address
8    these issues, I have asked one side or the other to prepare
9    an order for consideration, run it by the opposing side and
10   then submit it to me for signature.

11           What we do is in those 12 issues that have been
12   resolved the order says by stipulation of the party the issue
13   involving X has been agreed or resolved.  And so for the
14   first 12 it has been resolved, as to 13 the parties were
15   unable to reach resolution as to this issue and the Master
16   has ruled as follows, and the same thing as to 14.  So that
17   indicates the first 12 have been stipulated to, obviously
18   there will be no appeal, the second two I had to resolve
19   myself, which either side has the right to appeal, and in the
20   order -- in every order that I have to sign there is going to
21   be a provision that you all know because as part of the
22   protocol that this order is subject to appeal before
23   Judge Battani pursuant to the order appointing me Special
24   Master.

25           So things have been working very smoothly.  Again,

1      it is through a lot of cooperation, it is through a lot of

2      hard work.  I try and conduct the mediation session first to

3      see if I can narrow the issues, do some follow-up work, have

4      some more supplemental filings and then if the parties can

5      resolve those issues we make a record of it, if I have to

6      rule I rule, and then you take it up with the Judge if you

7      have an issue with my ruling.

8              Now, many of the counsel sort of stumble and we

9      really didn't think this through about how do I bill.  And in

10     the very first telephone conference I think we had 40 counsel

11     on the line, and question is how do I bill?  Well, there were

12     40 lawyers and the bill was a total of $1,200, and I just

13     can't send $30 invoices to 40 lawyers.  So I suggest at that

14     time, and counsel was cooperative, that they each designate

15     one party to receive my invoice and pay it and then allocate

16     it among themselves.

17             I'm going to ask, without my participation

18     obviously, that the plaintiffs try and establish either a

19     fund from which -- a centralized fund from which my invoices

20     can be paid and you will be able to allocate between the

21     respective cases my share of those fees -- or your -- the

22     parties' share of those fees, and the same thing with the

23     defendants, or if you cannot do that I would ask that during

24     the conference call it is part of my point sheet, the last

25     question is who do I invoice, I have to invoice somebody, and

1   if you will just give me a designated party to invoice I will

2   leave it up to you to allocate my invoice among the parties

3   that were involved in that particular motion.  I really have

4   no preference one way or other, I just prefer not to issue 40

5   invoices for $30 each.

6          So my assistant right here, Dawn Ciolino, is the

7   one that you have been dealing with in scheduling.  She is

8   very, very competent.  She has complete control of my

9   schedule.  She will get -- she knows how we process this.  If

10  you have a motion you just e-mail it to me, copy her in on

11  it, and we will set some -- she will set some deadlines for

12  you.  Do not hesitate to e-mail her for clarification or

13  whatever.  I would like to keep her between us so we do not

14  have any sort of one-on-one discussions.  I'm not going to

15  have any substantive discussions with anybody on the

16  telephone or otherwise regarding any substantive matter, but

17  you can speak with Dawn about scheduling and you can speak

18  with her about filing supplemental briefs and scheduling

19  motion hearings and so forth.

20         I'm looking forward to working with all of you.

21  Today was very educational for me.  I -- when I was

22  interviewed for this position, some of the local counsel know

23  I have been involved in litigation for 40 years and a great

24  deal of my time was spent in the automotive industry.  I had

25  personally been present at a half dozen PPAPs, preproduction

1    approval processing where you test and see if a part is run

2    according to specs and within time and so forth.  So I know a

3    great deal about the automotive industry and I am looking

4    forward to working with all of you in this case, and I really

5    enjoy the challenge that I think it is going to present.

6    It's good to meet all of you.

7            THE COURT:  Okay.  Any questions for the Master?

8    Any situations you want to bring up to the Court?

9            (No response.)

10           THE COURT:  I would indicate that I appreciate you

11   who suggested, both sides, the two names.  I don't know who

12   is plaintiff and who is defendant, that wasn't on the list,

13   but I had the two.  And I wanted to say that I thought that

14   Mr. Esshaki, who turns out you -- he actually mediated

15   another case for me but other than that we have no

16   association and I didn't even know that, but because of his

17   work in the auto industry and because it was your suggestion

18   I thought that he would be a good Master.

19           Sometimes people ask me how do you select a master

20   for your case, and I just think we are all on the same page

21   as you submitted names and then I interviewed and that was

22   the end it.

23           All right.  I think regarding the fees, again, that

24   it is just practical that either there will be a fund if you

25   want to have a fund or that one person says I'm in charge of

Status Conference & Motions for Preliminary Approval • October 8, 2014

1    distributing or allocating the fee amongst plaintiffs or

2    defendants.  Okay.

3            All right.  The other thing -- maybe we will get to

4    it as we go through this.  Never mind.

5            The next item is the motion to implement a

6    deposition protocol, and I think we already discussed that.

7    Then we have coordinated discovery and, again, that's

8    something that the Master will take care of when it is time

9    to do that.

10           The E is something that I want to address, and it

11   is end-payors objection to Master's order regarding motion to

12   compel interrogatory.  I don't want to hear your argument, I

13   want a motion.  I don't have a motion -- a written motion

14   here.

15           MR. WILLIAMS:  Understood because we don't have an

16   order, which I presumed we would have.  At the time we put

17   this on the agenda we thought we would have an order so we

18   were simply anticipating that by today it would be there and

19   we would have that in but --

20           THE COURT:  Okay.

21           MR. WILLIAMS:  -- we have not come to that point.

22           SPECIAL MASTER ESSHAKI:  Again, I'm just returning

23   from an extended trip.  In our -- we held a conference, and

24   did I assign somebody the responsibility to draft an order,

25   submit to opposing counsel, obtain approval and then send it

1    my way?

2              MR. WILLIAMS:  Correct.

3              SPECIAL MASTER ESSHAKI:  Okay.  So I think it

4    wasn't resolved as of yet?

5              MR. WILLIAMS:  On this motion -- this was the first

6    motion that we presented to you, Mr. Esshaki.  It was

7    submitted by Peter Simmons probably about two weeks ago so --

8              SPECIAL MASTER ESSHAKI:  It was a draft order

9    presented to me.

10             MR. WILLIAMS:  Yes.

11             SPECIAL MASTER ESSHAKI:  Counsel, I apologize.  I

12   don't know where it fell through.  If you wouldn't mind,

13   could you resend it?

14             MR. WILLIAMS:  I will send it to you again.

15             SPECIAL MASTER ESSHAKI:  Thank you.  I apologize.

16             THE COURT:  Okay.  So we have that and we don't

17   have any objections in writing yet but we will get those I

18   take it.  Okay.

19             The next item -- well, while I'm talking about

20   that, as Mr. Esshaki said, that according to the order

21   appointing the Master, we are not communicating on these

22   things, we are independent, and I will sit to review your

23   objections independently.  I just want you to know that.

24   That's the way we operate, so I just don't think it is right

25   for me to tell Mr. Esshaki or me give him advice or he give

1   me advice, et cetera, without you knowing if there is some

2   subject that comes up that we would discuss together.

3          Okay.  There may be something, as I listen today on

4   this scheduling, that he may want to ask me as to how I do

5   something or, you know, what I think about the number of days

6   or something.  We may confer on the scheduling because I

7   think that's so critical but he is the one that is going to

8   finalize that.

9          Okay.  The website?

10          MR. FINK:  Your Honor, David Fink appearing on

11   behalf of direct-purchaser plaintiffs.

12          I do have to do one thing first, which is to say

13   that my wife, whose birthday is today, was grateful for the

14   invitation to come to court, but unfortunately she had to be

15   at an art class this morning.  Okay.  She made me say that.

16   Thank you, Your Honor.

17          THE COURT:  Okay.

18          MR. FINK:  Your Honor --

19          THE COURT:  She missed a great meeting.

20          MR. FINK:  I'm going to tell her that.  She'll be

21   here next time.

22          Your Honor, at the preliminary approval hearing on

23   July 1st the Court raised the issue of the possibility of

24   some kind of website presence related to a -- web presence

25   related to the pending actions.

1    I have had some discussions subsequently and in

2    particular Howard Iwrey and I have -- I don't mean to point,

3    but Howard Iwrey and I had some initial discussions, and what

4    we would like to do is working with other counsel put

5    together an informal proposal to the Court and maybe meet the

6    way we did when we addressed the ECF issues at the beginning

7    to make sure that we can do something that meets both the

8    Court's interest and provides some additional public

9    information that would be helpful for plaintiffs and

10   defendants.

11       THE COURT:  There is one thing that I wanted to

12   mention.  You know the Court has a new Internet -- what do we

13   call it, Internet, not the intranet, so we have a new

14   Internet site, and on that site there is quick links, and it

15   is called cases of interest.  I'm thinking that maybe we can

16   just use that at this point so if you would just look at that

17   and see if there is something --

18       MR. FINK:  Yes, Your Honor.  In fact, Howard and I

19   both looked at exactly that spot on the site where there is

20   right now only two matters listed -- two matters listed.

21       THE COURT:  We just implemented this site a week or

22   two ago.

23       MR. FINK:  That seems to make a lot of sense to us

24   but we wanted to agree and make sure that both defendants and

25   plaintiffs are comfortable with the type of information that

Status Conference & Motions for Preliminary Approval • October 8, 2014

1    would then be available on that, but that seems like a very

2    good idea.

3              THE COURT:  There is another part on that site on

4    online services, it is selected new judicial opinions.  I

5    never put my opinions on, I don't know why, I just have never

6    done that.  If you want me to have some separate spot and

7    publish all of the opinions I can do that but, you know, let

8    me know if you think that's something that you would like.

9              MR. FINK:  We will.

10             THE COURT:  Okay.  I just haven't used it.  Okay.

11   Very good.

12             MR. FINK:  Thank you.

13             THE COURT:  Thank you.  And then the next thing is

14   the date for the next conference.  I have looked at a date,

15   we know January 28th, everybody agrees with that, that's been

16   set.  How about May 6th?  I think that is after perhaps the

17   religious holidays in April and it is before the Memorial Day

18   holiday, and we have a 6th Circuit conference next year,

19   believe it or not, I think the middle of May, so is there

20   anybody that has anything that you know of that might

21   conflict?

22             (No response.)

23             THE COURT:  Let's set that then for May 6th at

24   10:00.

25             Before we go to our settlement hearings, let me ask

1    if anybody has any other matters that needs to come before

2    the Court?

3            MR. KANNER:  Before we start that part, the next

4    segment of the hearings, I would just remind the Court, I'm

5    sure it is on your docket, that in addition to the

6    December 3rd hearings that we spoke of earlier we have a

7    November 5th hearing for final approval on the Nippon Seiki

8    settlement.

9            THE COURT:  Yes, those two additional dates are

10   there, they don't involve everybody, just the people on the

11   cases.  Yes.  Anything else?

12           (No response.)

13           THE COURT:  All right.  Why don't -- you want to

14   take a five-minute break, just a bathroom break.  No?  You

15   are ready to proceed.  Well, let's take five minutes.

16           THE LAW CLERK:  All rise.  Court is in recess.

17           (Court recessed at 12:22 p.m.)

18                            —   —   —

19           (Court reconvened at 12:33 p.m.; Court, Counsel and

20           all parties present.)

21           THE LAW CLERK:  All rise.  Court is in session.

22           THE COURT:  Ready to go.

23           MR. BURNS:  We are not rushing the bench.

24           THE COURT:  I just have to pull these up here.

25   Okay.  This is in the wire harness.

1       MR. BURNS:  With your permission, Your Honor, and

2   we will proceed however you want, but the end payors and the

3   automobile dealers think it might be more efficient to bring

4   all of the Yazaki settlements together at once, our arguments

5   will be the same for each.

6       THE COURT:  I think that's an excellent idea and I

7   was planning on doing that.  Go ahead.

8       MR. BURNS:  Thank you, Your Honor.

9       I'm joined obviously by Don Barrett for the

10  automobile-dealership plaintiffs, and John Majoras

11  representing Yazaki is behind me.

12      Your Honor, we truly think that the settlement with

13  Yazaki is certainly significant and a very, very important

14  step in this litigation.  Combined the settlement was

15  $100 million for both the end-payor plaintiffs and the

16  automobile-dealership plaintiffs covering three parts for

17  which we have alleged claims against Yazaki.

18      The end payors will receive $76 million out of the

19  combined settlement, and we have divided that among the three

20  part classes with wire harness receiving a little over

21  73 million, IPC receiving 2.6 million and fuel senders

22  58,000.  Those figures are based on the volumes of commerce

23  that roughly approximate to those particular parts based on

24  information we received from Yazaki.

25      The dealers will receive 24 million, and they have

1    divided that in similar fashion amongst their parts.

2           Your Honor, we do think that the settlement amounts

3    are fair, reasonable and certainly adequate under the

4    circumstances of this case.  Yazaki is a major defendant,

5    paid a major fine in this case, but they also have very

6    significant information about wire harness and fuel senders

7    and IPCs and perhaps other cases that we'll be able to work

8    with them through the cooperation elements in the settlement

9    agreement, and we do think that cooperation is very valuable,

10   we factored it into the settlement, and we wish to proceed

11   accordingly on that front, and we think it will hopefully

12   streamline the wire harness case and the ICP case and the

13   fuel senders case and allow us to move that forward in an

14   expeditious manner.

15          We reached these settlements for which we seek

16   preliminary approval after about frankly a year and-a-half of

17   arm's-length negotiations.  During that period Yazaki

18   provided significant information about their role in the

19   conspiracy and about their parts and volumes of commerce

20   involved.  Plaintiffs conducted an independent examination,

21   we worked with our economist.  We met repeatedly over the

22   phone and in person with Yazaki to reach the settlement.

23   Finally after about a year and-a-half we came down to the

24   agreement that is before the Court today.  This is the first

25   nine-figure settlement in the case involving a major

1    defendant, and as I said, we will take advantage fully of the

2    cooperation elements of the agreement.

3         We believe the plaintiffs have satisfied for

4    purposes of this preliminary approval hearing the

5    requirements of Rules 23(A) and 23(B)(3) and that the Court

6    should provisionally approve the settlement class.  We also

7    ask the Court to stay further proceedings against Yazaki in

8    accordance with the terms of the settlement agreement.  We

9    ask that the Court authorize plaintiffs in this case -- or in

10   these cases rather to provide notice at a later date as we

11   have done in previous settlements, Your Honor.  Essentially

12   we are now in ongoing negotiations with other defendants at

13   this point, and due to the enormous cost frankly of notice in

14   case we are trying to reach critical mass, if you will, so we

15   can efficiently do it in a way that maximizes the value and

16   benefit for the class.

17        Finally, Your Honor, we ask that the Court appoint

18   interim co-lead counsel for end payors and dealerships as

19   settlement class counsel in their respective cases for

20   purpose of the settlement.

21        I will turn the microphone over to my friend,

22   Don Barrett.

23        THE COURT:  Mr. Barrett.

24        MR. BARRETT:  We concur in everything that the end

25   payors have just said.  Your Honor, the only thing I would

1    add that Yazaki's -- it is -- this is an excellent settlement

2    on the numbers.  It is like ten percent of affected sales for

3    our clients, and that's an astonishing result, and their

4    sales will remain in the case for purposes of computing

5    treble damages and also against the remaining defendants and

6    should be part of any joint and several liability claims

7    against the remaining defendants, so this is a great

8    accomplishment for both the end payors and the auto dealers.

9         THE COURT:  Okay.  The Court has reviewed these

10   motions but let's get defendant's response.

11        MR. MAJORAS:  Your Honor, John Majoras for Yazaki.

12   We have nothing to add.

13        THE COURT:  Okay.  I didn't want to leave you out.

14        MR. MAJORAS:  Thank you, Your Honor.

15        THE COURT:  Under the governing standards as set

16   forth in Rule 23(E)(2), the settlement must be fair,

17   reasonable and adequate.  The Court's task, of course, in

18   assessing the settlement is to determine whether the proposed

19   settlement falls within that range of possible approval.  The

20   Court based on the information presented finds that the

21   proposed settlement deserves preliminary approval.  In the

22   opinion of this Court, the factors favoring settlement

23   reflect that the results appears fair, reasonable and

24   adequate, particularly in light of the expense, duration and

25   uncertainty of this continued litigation.

1        The claims are complex, the issues are numerous,
2    the defendants are foreign parties which makes discovery
3    quite a bit more complicated, and the complexity of the
4    issues in this case and the potential damages make appeal
5    more likely.
6        And I think very importantly particularly here with
7    Yazaki that in the absence of the settlement the plaintiffs
8    would not have the benefit of the cooperation of Yazaki.  So
9    I find that that's a very important part of the settlement
10   given the nature of antitrust conspiracies, and also the
11   compensation in this matter is certainly significant given
12   particularly the amount versus the cost of any further
13   proceedings in this matter.
14       The Court believes negotiations were conducted at
15   arm's-length over the period of one and-a-half years.
16   Counsel is experienced in antitrust and these class-action
17   matters.  I give great weight, I've said it before and I will
18   say it again, I give great weight to the experience of
19   counsel in coming to the table to resolve these issues, and I
20   feel very confident in their ability to handle and resolve
21   these matters.
22       The next issue is whether the proposed settlement
23   should be provisionally certified under Rule 23.  Let me just
24   briefly touch upon those factors.  First, numerosity here,
25   the number of plaintiffs within the proposed class make

1  joinder impractical, the existence of question of law, the

2  second factor, common to the class, and certainly in

3  anti-price-fixing conspiracy cases by their nature deal with

4  common legal and factual questions about the existence, scope

5  and effect of the conspiracy.

6         Third factor, typicality, the proposed class

7  representative can satisfy this requirement where the claims

8  arise from the same event or course of conduct that gives

9  rise to the claims of other class members.  I'm satisfied

10  here that the individual plaintiffs' injury arise from the

11  same wrong as alleged against the class as a whole.

12         Fourth, adequacy of representation.  The Court must

13  be assured, and certainly in this case I feel assured, that

14  the representative parties will fairly and adequately protect

15  the interest of the class, that is that the named plaintiffs

16  would represent the class and there is not a conflict amongst

17  them.  The Court finds that the class representatives will

18  adequately protect the interest of the class because they

19  share the same interest of other members.

20         Finally, under Rule 23(B)(3) the Court is satisfied

21  that the plaintiff demonstrate that common questions

22  predominate over questions affecting only individual members,

23  and that class resolution is superior to other methods for a

24  fair and efficient adjudication.  Specifically the claim

25  involved here is a single conspiracy from which all proposed

 1    class members' injuries arise.  Evidence shows a violation as

 2    to one settlement class member is common to the class and

 3    will provide violation to all.

 4          So I find these are the common issues and that a

 5    class action is superior and pending final approval of the

 6    proposed settlement, after the fairness hearing the Court

 7    finds that the prerequisites under 23(B)(3) have been met.

 8          The Court agrees with both sides that the

 9    proceedings here should be stayed until notice is provided at

10    a later date, and we delayed notice in the other settlements

11    and I think here that's clearly advisable because of the cost

12    involved, so for that and for efficiency purpose the Court

13    will delay the notice.  The Court appoints the interim

14    co-lead class counsel as settlement counsel for this case.

15          Are you satisfied I have covered all of the

16    elements?

17          MR. BURNS:  I believe so, Your Honor.

18          MR. BARRETT:  Yes.

19          THE COURT:  The Court approves the preliminary

20    settlement and will sign those proposed orders.

21          MR. BURNS:  Thank you very much.

22          THE COURT:  Okay.  Thank you.  The next is the

23    preliminary approval of the settlement with the auto dealers

24    and the end payors in the TRW litigation.

25          MS. TRAN:  Good afternoon, Your Honor.  May it

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 117 of 122   Pg ID 11447
Status Conference & Motions for Preliminary Approval • October 8, 2014

117

1  please the Court, my name is Elizabeth Tran of Cotchett,

2  Pitre & McCarthy for the end payors.  I'm here with Jon

3  Cuneo.

4          MR. CUNEO:  From Cuneo, Gilbert & LaDuca on behalf

5  of the dealers.

6          MS. TRAN:  I will keep this brief because I know

7  this is the last item on a long agenda.  We are seeking

8  preliminary approval of our settlement with the TRW

9  defendants.  End payors and auto dealers have alleged claims

10  against TRW in only one case so far, occupant safety systems

11  or OSS.  The approximately $5.44 million settlement for the

12  end payors is fair, reasonable and adequate for quite a few

13  reasons.  I will just speak for the end payors and Jon can

14  speak about the auto dealers.

15          First, the settlement arises from extensive

16  arm's-length and good-faith negotiations between experienced

17  counsel over a one plus year period.

18          Second, the settlement offers significant

19  compensation to the proposed class that will be available

20  much earlier -- years earlier than would be the case if

21  litigation against TRW continued through trial and appeal.

22          Third, the settlement comes at an early time in the

23  auto parts litigation.  It is the fifth settlement in this

24  MDL and the second settlement in the OSS case.  This

25  settlement encourages future settlements and strengthens

1    plaintiffs' hand in the litigation.

2            Fourth, the settlement requires TRW to provide

3    cooperation such as attorney proffers, witness interviews and

4    depositions, relevant documents and transactional data.

5    TRW's cooperation is valuable because it allows end payors to

6    obtain such information without extended and expensive

7    discovery, and it also enhances our prosecution of claims

8    against non-settling defendants.

9            Fifth, the settlement exceeds TRW's criminal fine

10   for participating in a conspiracy of a narrower temporal

11   scope than end payors allege in their complaint.

12           And finally the settlement only releases TRW from

13   end-payors' claim concerning OSS.

14           For all of these reasons we ask that the Court

15   preliminarily approve our TRW settlement.  You already

16   discussed why the Court would provisionally approve the

17   proposed Yazaki settlement class under Rule 23 (A) and (B),

18   and the reasons here are the same and I will skip them.

19           End payors also request that the Court stay the

20   proceedings against TRW in accordance with the settlement.

21   We ask that the Court authorize end payors to provide notice

22   of the settlement agreement to the class members at a later

23   date, and we also ask that the Court appoint interim co-lead

24   class counsel for end payors as the settlement class counsel

25   for the settlement.

2:12-md-02311-MOB-MKM   Doc # 851   Filed 10/24/14   Pg 119 of 122   Pg ID 11449
Status Conference & Motions for Preliminary Approval • October 8, 2014

119

```
 1              THE COURT:  Thank you, Counsel.  Mr. Cuneo.
 2              MR. CUNEO:  Thank you, Your Honor.  And I -- in
 3    terms of the reasons I would want to identify for the dealers
 4    with the reasons that Ms. Tran just advanced on behalf of the
 5    end payors.  I just want to add one set of facts for Your
 6    Honor's consideration.  The negotiations were extended, I
 7    would say difficult at times, and culminated in a meeting at
 8    one point in which I believe that all three lead counsel for
 9    both the dealers and the end payors attended with counsel for
10    TRW at which the framework of the settlement was agreed upon.
11              So the negotiations were lengthy, Your Honor, they
12    were at times difficult, but here we are, we have an
13    agreement, Ms. Tran has explained why the agreement works
14    well for her clients, and for the same considerations it
15    works well for ours.
16              THE COURT:  All right.  Defendant?
17              MR. IWREY:  Your Honor, Howard Iwrey for the TRW
18    defendants.
19              TRW has nothing to add.  Thank you.
20              THE COURT:  Okay.  I'm not going to repeat
21    everything that I said Yazaki because TRW is very similar in
22    terms of satisfying the provisions of Rule 23 (E)(2) and (A).
23    Actually the Court in going through this has reviewed the
24    matter and I think that the settlement amount is certainly a
25    good settlement amount to resolve this and in comparison to
```

1    the criminal fines given the complexity of this matter and

2    the cost that it would be going forward, and I think one of

3    the most important factors that I have seen in all of these

4    settlements is the cooperation of the defendants with

5    continuing in this case.

6         The Court certainly finds that there is numerosity

7    and common questions of fact and law, typicality, adequacy of

8    representation, and I would say as I said before I depend on

9    counsel and I have all faith in counsel that you have the

10   ability and experience to determine a good resolution for

11   your clients.

12        And I appreciate what has been said regarding the

13   lengthy negotiations and the difficulty of the negotiations

14   in resolving these matters, but I'm convinced that it is that

15   work that leads to this final conclusion.

16        The Court, of course, believes that the class

17   members can adequately represent the class for all the

18   reasons I have stated in Yazaki's settlement.  I believe that

19   counsel can adequately represent the class because of what I

20   have just said about counsel.  The Court agrees with both

21   sides that the proceedings should be stayed against TRW and

22   that notice should be provided at a later date.  Again, the

23   cost of providing notice and with settlements coming in it

24   appears economical and efficient to delay the notice.

25        Lastly, the Court appoints interim counsel as

1    settlement class counsel for this settlement.  The Court

2    approves the preliminary settlement and will sign the

3    proposed order.

4              Is there anything else that the Court has not

5    covered here that you wish covered?

6              MR. TRAN:  No.  Thank you, Your Honor.

7              THE COURT:  Mr. Cuneo?

8              MR. CUNEO:  No.  Thank you, Your Honor.

9              THE COURT:  Thank you very much.  Okay.  All right.

10   I believe that concludes the agenda, right?

11             MR. CUNEO:  Your Honor, before you adjourn, there

12   is one housekeeping matter that Mr. Iwrey and I have and that

13   is that we need to substitute a page that we are going to

14   make a file on that, it has the wrong number.

15             THE COURT:  In the settlement?

16             MR. IWREY:  In the settlement agreement.

17             MR. CUNEO:  It just has the wrong number.

18             THE COURT:  Okay.

19             MR. CUNEO:  Thank you.

20             THE COURT:  Thank you.  Thank you all very much.  I

21   will see you in January.  Happy holidays.

22             (Proceedings concluded at 12:52 p.m.)

23                     _    _    _

24

25

```
 1                      CERTIFICATION

 2

 3            I, Robert L. Smith, Official Court Reporter of

 4   the United States District Court, Eastern District of

 5   Michigan, appointed pursuant to the provisions of Title 28,

 6   United States Code, Section 753, do hereby certify that the

 7   foregoing pages comprise a full, true and correct transcript

 8   taken in the matter of Automobile Parts Antitrust Litigation,

 9   Case No. 12-02311, on Wednesday, October 8, 2014.

10

11

12                         s/Robert L. Smith
                           Robert L. Smith, RPR, CSR 5098
13                         Federal Official Court Reporter
                           United States District Court
14                         Eastern District of Michigan

15

16

17   Date:  10/22/2014

18   Detroit, Michigan

19

20

21

22

23

24

25
```