```
 1                    UNITED STATES OF AMERICA
                    EASTERN DISTRICT OF MICHIGAN
 2                       SOUTHERN DIVISION

 3                         —   —   —

 4   IN RE:  AUTOMOTIVE PARTS        Master File No. 12-md-02311
     ANTITRUST LITIGATION            Hon. Marianne O. Battani
 5
     _____/
 6

 7                 FINAL APPROVAL OF SETTLEMENT

 8          BEFORE THE HONORABLE MARIANNE O. BATTANI
                    United States District Judge
 9          Theodore Levin United States Courthouse
                   231 West Lafayette Boulevard
10                      Detroit, Michigan
                    Wednesday, November 5, 2014
11

12   APPEARANCES:

13   Direct Purchaser Plaintiffs:

14          DAVID H. FINK
            DARRYL BRESSACK
15          FINK & ASSOCIATES LAW
            100 West Long Lake Road, Suite 111
16          Bloomfield Hills, MI  48304
            (248) 971-2500
17
            GREGORY P. HANSEL
18          PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.
            One City Center
19          Portland, ME  04112
            (207) 791-3000
20
            STEVEN A. KANNER
21          FREED, KANNER, LONDON & MILLEN, L.L.C.
            2201 Waukegan Road, Suite 130
22          Bannockburn, IL  60015
            (224) 632-4502
23
            JOSEPH C. KOHN
24          KOHN, SWIFT & GRAF, P.C.
            One South Broad Street, Suite 2100
25          Philadelphia, PA  19107
            (215) 238-1700
```

```
 1     APPEARANCES: (Continued)

 2     Direct Purchaser Plaintiffs:

 3             EUGENE A. SPECTOR
               SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
 4             1818 Market Street, Suite 2500
               Philadelphia, PA  19103
 5             (215) 496-0300

 6

       End-Payor Plaintiffs:
 7
               ADAM T. SCHNATZ
 8             THE MILLER LAW FIRM, P.C.
               950 West University Drive, Suite 300
 9             Rochester, MI  48307
               (248) 841-2200
10

11     For the Defendants:

12             HARYLE KALDIS
               WILMER, CUTLER, PICKERING, HALE and DORR, L.L.P.
13             1875 Pennsylvania Avenue, NW
               Washington, DC 20006
14             (202) 663-6776

15             MATTHEW L. POWELL
               KERR, RUSSELL & WEBER, P.L.C.
16             500 Woodward Avenue, Suite 2500
               Detroit, MI  48226
17             (313) 961-0200

18             A. PAUL VICTOR
               WINSTON & STRAWN, L.L.P.
19             200 Park Avenue
               New York, NY  10166
20             (212) 294-4655

21

22

23

24

25
```

TABLE OF CONTENTS

Page

Settlement terms........................................ 6

Court's approval of settlement.........................14

1

2      Detroit, Michigan

3      Wednesday, November 5, 2014

4      at about 11:01 a.m.

5                              _   _   _

6              (Court and Counsel present; Mr. Victor present via

7              telephone.)

8              THE CASE MANAGER:  Please rise.

9              The United States District Court for the Eastern

10     District of Michigan is now in session.  All persons having

11     business therein draw near, give attention, you shall be

12     heard.  God save these United States and this Honorable

13     Court.  The Honorable Marianne O. Battani presiding.

14             You may be seated.

15             THE COURT:  Good morning.

16             ATTORNEYS PRESENT:  (Collectively)  Good morning.

17             MR. VICTOR:  Yes, hello.

18             THE COURT:  If you can't hear please say so.

19             MR. VICTOR:  I can hear perfectly.  Thank you.

20             THE COURT:  Good morning, again, Counsel.  May I

21     have your appearances, please?

22             MR. VICTOR:  This is Paul Victor for Winston &

23     Strawn for Nippon Seiki companies.

24             THE COURT:  All right.

25             MR. VICTOR:  Thank you, Your Honor, for permitting

 1   me to do this by telephone.

 2           THE COURT:  Okay.

 3           MR. FINK:  Your Honor, David Fink on behalf of

 4   direct-purchaser plaintiffs.

 5           MR. KOHN:  Good morning, Your Honor.  Joseph Kohn

 6   for direct-purchaser plaintiffs.

 7           MR. HANSEL:  Good morning, Your Honor.  Greg Hansel

 8   on behalf of the direct purchasers.

 9           MR. KANNER:  Good morning, Your Honor.  Steve

10   Kanner on behalf of the direct purchasers.

11           MR. SPECTOR:  Good morning, Your Honor.

12   Gene Spector on behalf of the direct purchasers.

13           MR. POWELL:  Good morning, Your Honor.

14   Matthew Powell on behalf of the Nippon Seiki entities.

15           MR. KALDIS:  Good morning, Your Honor.

16   Harlyn Kaldis on behalf of Denso Corporation and Denso

17   International America.

18           THE COURT:  This is very interesting because

19   plaintiffs are on the wrong side, right?

20           MR. FINK:  That's correct, Your Honor.

21           MR. HANSEL:  Yes.

22           THE COURT:  All right.  Well, this case is

23   different.  Mr. Powell, you're defendant, right?  You look a

24   little lonesome.  Mr. Kaldis, you don't want to sit at

25   counsel table?

1          MR. KALDIS:  Sure.

2          THE COURT:  All right.  This is the date set for

3    the final approval of the proposed settlement with Nippon,

4    correct?  Who is going to speak for the plaintiff?

5          MR. KOHN:  I will, Your Honor.

6          THE COURT:  Okay.  Mr. Kohn?

7          MR. KOHN:  May it please the Court, Joseph Kohn

8    from Kohn, Swift & Graf for the direct-purchaser plaintiffs.

9          Your Honor, on behalf of co-lead counsel and

10   Mr. Fink, liaison counsel, we are very pleased to be here

11   today on the final approval hearing of a settlement agreement

12   between the direct purchasers and Nippon Seiki Company

13   Limited, N.S. International Limited and New Sabina

14   Industries, Inc., all the Nippon entities, settlement

15   agreement dated April 3rd of this year.

16         We are here to request the Court to enter two

17   orders, the first being the stipulated form of final judgment

18   as to the Nippon entities, which would be a final dismissal

19   with prejudice of those entities from the direct purchaser

20   litigation, what we hope is the first of similar orders in

21   this broader litigation.

22         The second is an order that we had requested with

23   respect to the ability and the right to be able to withdraw a

24   portion of the settlement fund for future litigation expenses

25   related to the instrument panel cluster litigation.

1          For purposes of this record and more in the nature

2     of administerial points, I want to place on the record that

3     the Court entered an order on May 16th of this year granting

4     preliminary approval to this settlement authorizing the

5     notice to the class members and setting this hearing date.

6     We filed the appropriate certification that the notices had

7     been provided October 21st, which contained a declaration

8     from the claims administrator certifying that class notice

9     was mailed to over 200 entities that were identified by the

10    defendants as their customers, their purchasers of these

11    products.  That was done on July 30th.  The publication

12    occurred in the Automotive News on August 4th and in the

13    Wall Street Journal August 8th, all directed by your Court's

14    prior order.

15          I do have paper copies of the proposed orders

16    although I understand that they are also submitted

17    electronically but if the Court requires --

18          THE COURT:  I have a copy of them here.

19          MR. KOHN:  Okay.

20          THE COURT:  Let me just be clear on this, so you

21    mailed to the individuals or companies that the defendant

22    identified?

23          MR. KOHN:  Not only this settling defendant but the

24    other party defendants in this case, so they were all

25    required to produce those records.  We do keep them

```
 1   confidential vis-a-vis the other defendant companies, their

 2   customers have some confidential basis so we don't generally

 3   file that entire list of who was mailed but it is available

 4   should the Court require.

 5           THE COURT:  Okay.  And it was published and also I

 6   looked at a website that you had?

 7           MR. KOHN:  Correct, there is also a website that

 8   was created by the claims administrator.

 9           THE COURT:  How would people know about this

10   website, I'm just curious?

11           MR. KOHN:  It is referenced in the printed notices

12   and people surf the web.  The claims administrator advises

13   there are only 250 what they call individual hits to the IPC

14   settlement portion of the broader website that they have

15   created.  We haven't sort of -- but so it did get a fair

16   amount of activity given the size of the class.

17           Your Honor, respectfully we do believe this is a

18   milestone in the case.  As I say, this will be the first

19   final judgment of dismissal in this litigation.  Your Honor

20   may think given the number of defendants and the different

21   plaintiff groups at this pace we'll be here in the year 2525

22   as that old pop song went, but we think the pace is

23   accelerating.

24           THE COURT:  I hope so.

25           MR. KOHN:  One of the factors we had cited in favor
```

1    of approval of the settlement with respect to the preliminary

2    approval motion is the notion of an icebreaker settlement,

3    and we think that has gone beyond the theoretical to the

4    actual.  There is a hearing set in December for two

5    additional settlements with respect to the direct purchasers

6    and final approval, and we would hope that this has proven to

7    be an icebreaker and not as they say merely theoretical.

8         The standards for approval of a class settlement

9    were set forth in detail --

10        THE COURT:  Before you go -- excuse me.  Before you

11   go into those standards, there were two groups, you attached

12   a list, I believe basically they were Ford and Honda who

13   opted out of this class; is that correct?

14        MR. KOHN:  Correct, and that was again pursuant to

15   the procedures agreed in the agreement.  They were attached

16   to the proposed final judgment order indicating that they

17   have elected to remove themselves from this settlement, they

18   are not bound by the judgment but they don't share in the

19   proceeds or the benefits either.

20        THE COURT:  And there has been no other individual

21   defendants, you have received no other letters or anything

22   indicating a desire to opt out or other questions or anything

23   like that?

24        MR. KOHN:  Not at all, Your Honor, and that really

25   in the anticipation in terms of looking at the standards that

1    was one of the factors that I wanted to take some time to

2    highlight today, which is the reaction of the class --

3         THE COURT:  Okay.  You may proceed.

4         MR. KOHN:  -- to a settlement.

5         And under Rule 23 approval of a settlement is not a

6    majority rule vote, it is not a plebiscite.  Theoretically a

7    majority of the class members could oppose a settlement or

8    object to it and the Court might still determine that it is

9    fair and reasonable and adequate or vice versa, there could

10   be no objection and the Court could still determine that it

11   is not fair.

12        We believe this class is somewhat unique.  It is a

13   highly-sophisticated class of purchasers, it includes some of

14   the largest corporations in the world.  They have in-house

15   counsel, they have access to outside counsel, they have

16   access to antitrust specialists so that we really think this

17   factor weighs very heavily in favor of approval more so than

18   it would in a, quote, run of the mill kind of class action.

19        In some ways I would submit that factor subsumes a

20   number of the other factors, for example, looking at the risk

21   or duration of litigation.  Well, those corporations, the

22   Chryslers, the GMs, the Mercedes, the Nissans, understand

23   risk of litigation, they understand how long it can take,

24   they understand whether they could pursue a claim separately

25   with respect to Nippon if they chose, and they analyzed this

1    and they made their decision to remain in the class.

2         The factor of experienced counsel negotiating at

3    arm's length, they could evaluate that factor.  We have had a

4    great deal of discussion with a number of other counsel who

5    either are in-house or outside counsel for some of those

6    class members, and they were able to make that evaluation and

7    that judgment as to whether this was in the best interest of

8    the class and satisfied those kind of factors.  They could

9    have voted with their feet, as it were, and brought their own

10   actions or filed an objection to the settlement had they

11   chosen.  They certainly had the wherewithal and the ability

12   to understand the case and access to counsel who could have

13   made whatever arguments they might have chosen to.

14         Your Honor will recall that the hearing not in

15   instrument panel cluster but the wire harness, the first of

16   the Twombly motions, and I stepped to the podium with all of

17   my notes and all ready to go and prepared, and I think Your

18   Honor asked me the first question, which is could you tell us

19   who do you really represent, what is this direct purchaser

20   class?  And I think I tried my best to answer at that point

21   but maybe now a couple years later we have sort of a

22   deliverable, it is not a theory, it is a fact.  With this

23   final judgment -- proposed final judgment, should the Court

24   enter it, it is a final judgment as to all direct purchasers

25   other than the two opt-outs, other than Honda, which was

1    designated I think in the guilty pleas with the Government,

2    with Nippon, and Ford, which has carved its own pathway in

3    its litigation, but every other direct purchaser from the

4    smaller assemblers and entities to, as I say, the Chryslers,

5    GMs, Toyotas, Mercedes, et cetera, are bound by this judgment

6    and are in this proposed settlement class for purposes of

7    finality for these defendants.

8         We can also -- while the other settlements will be

9    appropriately information about the opt-outs and the other

10   settlements will be filed as we have here, we can give the

11   Court a preview that there are similar or maybe even better

12   results in terms of the opt out in the settlements that are

13   going to be heard in December as well, and those will be

14   filed soon under the schedule.

15        Your Honor, part of the final judgment order and

16   the approval process is that the Court grant final approval

17   to the settlement class or certification of the settlement

18   class that was preliminarily granted in May, and we would

19   request the Court to incorporate those findings that the

20   Court did make in May.  We have set forth in our brief the

21   standards for class certification beginning page 18 of the

22   brief we filed in September, certainly the scrap metal being

23   a leading antitrust case in the 6th Circuit, the Packaged Ice

24   case we also cited from this district, in terms of the

25   finding that commonality exists in cases of horizontal price

1    fixing and the other 23(a) factors are also satisfied here.

2           So, Your Honor, we would request on behalf of all

3    the parties, the settling defendants as well as the

4    plaintiffs, that the Court approve the judgement in the form

5    that was agreed upon by the parties.  And many courts approve

6    settlement on the basis of a judgment without writing a

7    further memorandum -- or some do, some do not, but it is

8    certainly appropriate that the settlements are simply

9    approved and put to bed by virtue of the final judgement

10   order.

11          With respect to the proposed order on the future

12   cost expenditures, we are also happy to report there were no

13   objections to that from any of these class members, the

14   larger, sophisticated ones that I talked about.  We cited --

15          THE COURT:  That is at the set amount as stated in

16   the order?

17          MR. KOHN:  Yes, Your Honor, up to that would be a

18   cap, it may be less.

19          THE COURT:  Right.

20          MR. KOHN:  We did cite a number of cases beginning

21   at pages 16 and 17 of our brief from coast to coast, from

22   California to the New York isles, of courts that have

23   approved those sorts of procedures for payment of expenses.

24   Indeed, in some of the cases the court has approved that the

25   entire amount of an early settlement can be used to fund

1    litigation expenses; we have not done that here, we have

2    placed a cap that it would be no more than 20 percent of this

3    settlement amount.  Again, there has been no objections from

4    any class members to that.

5            Again, if Your Honor has questions I would be happy

6    to answer, otherwise we would respectfully request approval

7    of the two orders as submitted, and I look forward to seeing

8    you in December.

9            THE COURT:  Thank you, Mr. Kohn.  Before I get to

10   defense, Mr. Kohn speaks for everybody?  Is there anyone who

11   has any other comment?

12           MR. KANNER:  No.

13           MR. SPECTOR:  No.

14           THE COURT:  Mr. Spector, you're sure?

15           MR. SPECTOR:  Positive.

16           THE COURT:  Okay.  For defense, you're confusing me

17   on this here.

18           MR. POWELL:  We have nothing to add, Your Honor.

19           THE COURT:  Nothing to add.  Okay.  I'm just going

20   to highlight for purposes of the record some of the items

21   that have been put forth.  I appreciate the notices that have

22   gone out, and this class has been defined as all persons or

23   entities excluding defendants, their officers, directors and

24   employees, as well as defendants' parents, predecessors,

25   successors, subsidiaries and affiliates who purchase

1    instrument panel clusters in the United States, its

2    territories and possessions, directly from any defendants,

3    including settling defendants, or from any of the parents,

4    predecessors, successors, subsidiaries or affiliates during

5    the period from January 2001 up to and including the date the

6    Court enters an order approving the proposed form and method

7    of dissemination of notice.

8            I do want to specifically indicate, if I can find

9    the order here, is that paragraph 8 in the order, I would

10    like to for the record put that forth that the Court's

11    certification, and this is agreed upon by the parties, that

12    the Court's certification of the settlement class as provided

13    herein is without prejudice to or waiver of the rights of any

14    of the defendants to contest certification of any other class

15    proposed in these coordinated actions, et cetera, so I just

16    want to highlight that for purposes of the record.

17            The terms of the settlement here, the Court finds

18    that Nippon Seiki will pay the money into an interest-bearing

19    account, and the Court notes that the settlement amount is

20    substantially larger than the fine that was paid in the

21    criminal matter in this.  Of course, in exchange for the

22    settlement payment and cooperation, which is very important

23    here, the plaintiffs and other members of the settlement

24    class release the antitrust claims arising from the conduct

25    alleged in the complaints.

1      Okay.  Under Rule 23(e) it requires the Court to,

2  of course, approve the proposed settlement.  The settlement

3  must be fair, reasonable and adequate, and of course there

4  are any number of factors that go into that, and I would just

5  briefly touch on those factors.

6      The first factor being the likelihood of success.

7  Though plaintiffs are optimistic, of course, success is not

8  guaranteed in any action, and defendant pled guilty to a

9  shorter conspiracy period than what is in the settlement.  I

10  would indicate that certainly defendant is represented by

11  competent counsel and I believe would be prepared to defend

12  through trial and appeal if necessary, but these risks are

13  weighed against the settlement amount of $5.25 million and

14  was mentioned here this morning that this is valuable also as

15  an icebreaker and I do agree with that.

16      The complexity, expense and likely duration of

17  continued litigation, I can't even foresee the likely

18  duration of continued litigation.  What did you mention, 2020

19  or --

20      MR. FINK:  2525, Your Honor.

21      THE COURT:  2525.

22      MR. FINK:  I should note Mr. Kohn didn't note one

23  thing, if this trial goes through 2525 I just hope you will

24  still be presiding and we'll all be here with you.

25      THE COURT:  Right, wouldn't that be nice?  Okay.

```
 1   But certainly it is complex, just by their nature antitrust
 2   claims are complex, very expensive.  I think we can see that
 3   already by the amount of time and counsels' fees alone
 4   without even considering the costs, the actual out-of-pocket
 5   costs, that these types of cases require and that were spent,
 6   in fact, in this case.  So it certainly eliminates the
 7   expense and delay with respect to a recovery from the
 8   defendant.
 9          The judgment of experienced counsel, I have said
10   this before and I just want to repeat, the Court is very
11   impressed with all counsel for both sides in this case and
12   truly relies on it, and I think given your -- each of
13   counsel's past experiences, which I don't have to go over,
14   and what they have showed the Court in this litigation tells
15   me that since they believe -- counsel believes a settlement
16   is fair and reasonable the Court has no reason to believe
17   that it is not.
18          I do like the other comment that was made today,
19   which I guess I really hadn't considered before, that the
20   defendants, and I'm sure the defendant here too, that they
21   have their own counsel and I imagine -- maybe I'm reaching
22   here, I don't know, but I think the counsel for these large
23   corporations must be very good counsel and that they not only
24   have their litigation counsel here but their own in-house
25   counsel to advise them.
```

1    The Court further notes that there has been no

2    objection raised by other class members as to the 20 percent

3    of the settlement fund for litigation expenses, and as to the

4    actual settlement there had been just two exclusions, which

5    we've mentioned today, there is a list attached to the

6    judgment, they are basically Honda and Ford and various

7    entities associated or part of Honda and Ford.

8    It's believed by the Court that the settlement

9    class counsel has extensive experience in class-action

10   antitrust cases and other complex cases and that this

11   settlement was negotiated at arm's length.  And certainly the

12   other factor the Court has to consider of course is the

13   public interest, and it is I believe almost always in the

14   public's interest to resolve litigation with a positive known

15   outcome.  So given the fact that these suits are notoriously

16   difficult and unpredictable, I think the public is well

17   served by the resolution of this matter.

18   Okay.  The next thing I should comment on I think

19   the notice and was the notice proper, and the Court read the

20   notice, I know it was mailed, I asked a few questions about

21   that, and apparently everybody received it, there were some

22   duplicates.  It is kind of unusual because here we had direct

23   mailings to people or entities that we know were involved in

24   this litigation, so along with the newspaper and the website

25   I think that notice was properly and clearly indicated.

1          As I indicated already, the 20 percent funds I will
2    approve.  Oh, the settlement class, the settlement class I
3    think should be finally approved by this Court under Rule 23.
4    Certainly numerosity is an issue with 200, almost 300
5    individual plaintiffs who are all over the country.  It
6    appears that given the number and the geographical
7    distribution that joinder is impracticable.
8          Commonality, as we have said before, in
9    anti-price-fixing conspiracy cases by their nature deal with
10   common, legal and factual issues about the existence, scope
11   and effect of the alleged conspiracy.
12         Typicality, to satisfy this claim so the
13   representative parties must be typical of the claims.  Here
14   typicality is satisfied because the individual plaintiffs'
15   injuries arise from the same wrong that is allegedly injuring
16   the class as a whole in that they were all victims of the
17   same conspiracy.
18         Next, the adequacy of representation.  The Court
19   looks at the representation by the individual plaintiffs and
20   also the representation by counsel, and here the
21   representative plaintiffs will fairly and adequately protect
22   the interest of the class because the individual plaintiffs
23   have the same interest as other class members.  In addition,
24   class counsel is qualified, experienced and able to conduct
25   litigation.

1          In terms of whether the plaintiffs meet the

2     requirements -- additional requirements of 23(b)(3), that

3     class members demonstrate that common questions predominate

4     over questions affecting only individual members and class

5     resolution is superior.  The claims involve a single global

6     conspiracy from which all proposed settlement class members'

7     injuries arise.  Evidence shows a violation as to one

8     settlement class member is common to the class and will

9     provide the violation to all.

10          So finally a class action the Court believes is the

11     superior method to adjudicate these claims, and I believe all

12     of Rule 23 has been satisfied here, and that the class should

13     be finally certified, and the Court will so certify.  The

14     Court will approve the proposed settlement and will sign the

15     order for the 20 percent or the $1,050,000 for the expenses

16     incurred.

17          Although I do have one question here, Mr. Kohn,

18     when you were talking about the expenses you said for future

19     expenses, so these are going for the continued litigation of

20     this as opposed to past?

21          MR. KOHN:  Right.  We wanted to make it clear that

22     we were not purporting to draw down some of that money to

23     reimburse the money that counsel has already expended on the

24     IPC cases for the translations, for the filing of the

25     complaints, et cetera.

Final Approval of Settlement • November 5, 2014

1           THE COURT:  Okay.

2           MR. KOHN:  Thank you.

3           THE COURT:  All right.  Anything else that the

4    court needs to do that I haven't done or mentioned?

5           (No response.)

6           THE COURT:  Okay.  Thank you.  This is our first

7    final approval, wonderful.  Thank you very much.

8           MR. VICTOR:  Thank you.

9           MR. KANNER:  We will see you on December 3rd for

10   two more.

11          THE COURT:  Wonderful.

12          MR. KOHN:  Do a balloon drop like we have on

13   election night.

14          (Proceedings concluded at 11:28 a.m.)

15                        _    _    _

16

17

18

19

20

21

22

23

24

25

1   *CERTIFICATION*

2

3          I, Robert L. Smith, Official Court Reporter of

4   the United States District Court, Eastern District of

5   Michigan, appointed pursuant to the provisions of Title 28,

6   United States Code, Section 753, do hereby certify that the

7   foregoing pages comprise a full, true and correct transcript

8   taken in the matter of Autmotive Parts Antitrust Litigation,

9   Case No. 12-02311, on Wednesday, November 5, 2014.

10

11

12                          *s/Robert L. Smith*
                            Robert L. Smith, RPR, CSR 5098
13                          Federal Official Court Reporter
                            United States District Court
14                          Eastern District of Michigan

15

16

17  Date:   11/12/2014

18  Detroit, Michigan

19

20

21

22

23

24

25