# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311<br>: Honorable Marianne O. Battani<br>: Master Gene J. Esshaki |
| IN RE WIRE HARNESS SYSTEMS | : Case No. 2:12-cv-00100 |
| THIS DOCUMENT RELATES TO: ALL CASES | : |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR POSITIONS
REGARDING DISPUTED DEPOSITION PROTOCOL PROVISIONS**

## I.    INTRODUCTION

After resolving most issues concerning a deposition protocol ("Protocol") for *In re Wire Harness Systems* ("*Wire Harness Systems*") through extensive discussions with the Defendants[1], the Direct Purchaser Plaintiffs ("Directs"), Automobile Dealer Plaintiffs ("Dealers")[2], End-Payor Plaintiffs ("End-Payors"), and Ford Motor Co. ("Ford") (collectively, "Plaintiffs") respectfully submit their positions on six disputed provisions. The parties have met-and-conferred in good faith regarding a Protocol per the Court's Order Approving the First Supplemental Discovery Plan (ECF No. 224) and Local Rule 7.1.

---

[1] "Defendants" collectively refer to the DENSO, Fujikura, Furukawa, Lear, Leoni, Sumitomo, Yazaki, Tokai Rika, G.S. Electech, Asti Corporation, Mitsubishi, and Chiyoda defendant families. Said families are described in detail in the operative complaints. *See*, *e.g.*, End-Payors' Fourth Amended Consolidated Complaint, Case No. 2:12-cv-00103, ECF No. 233.
[2] "Dealers" refers to Automobile Dealers only.

1

As of the last formal meet-and-confer on January 7, 2015 the parties have reached an impasse on the following issues:

1.      Coordination of depositions of class representatives for Automobile Dealers and End-Payors in more than one parts case;

2.      Number of and examination time for Federal Rule of Civil Procedure ("Rule") 30(b)(1) and 30(b)(6) depositions of the Direct and Automobile Dealership Plaintiffs;

3.      Number of Dealer depositions per day;

4.      Examination time for Rule 30(b)(6) depositions requiring an interpreter;

5.      Number of Rule 30(b)(6) notices that the Defendants may serve on the Dealers; and

6.      Involvement of check interpreters in preparing witnesses.

The parties are jointly submitting a draft of the Protocol including all agreed upon provisions and the parties' proposed language concerning disputed provisions. The parties separately submit their own memoranda setting forth their positions on the disputed provisions.

## II.      ARGUMENT

### 1.      <u>Coordination of depositions of class representatives for Automobile Dealers and End-Payors in more than one parts case</u>

The Dealers and End-Payors' position is that the Protocol should include a provision that permits any Defendant named in a complaint by a class representative to attend and participate in that class representative's deposition; to coordinate the examination of that class representative; and to preclude the Defendants from taking more than one deposition of each class representative in this multidistrict litigation absent good cause. The Defendants' position is that the Protocol should not include such a provision. Their proposed language includes a vague and difficult to enforce requirement that the Defendants shall use their "best efforts to coordinate" with the defendants in other parts cases so as to avoid duplicative depositions.  This does not provide much

assurance to the Plaintiffs that they will not be overburdened with duplicative extraneous depositions in the future. *See* Section IV.I.

The rationale for the Dealers and End-Payors' position is simple: the End-Payor's claims are based simply on their having purchased a vehicle(s), and their experience is the same regardless of the particular parts case at issue.  For the Dealers, the vast majority of their class representatives' damages are based on their simply having purchased vehicles, and their experience is the same regardless of which particular parts case is at issue. There is no justification for an End-Payor class representative whose claims are based on the purchase of a vehicle—and not a separate part—to be deposed more than once. Similarly, a Dealer class representative the vast portion of whose claims are based on the purchase of vehicles and not separate parts should not be subject to more than one set of depositions. Duplicative examinations of class representatives would violate the mandate of Fed. R. Civ. P. 1 (calling for the just, speedy, and inexpensive determination of actions) and Fed. R. Civ. P. 26 (discouraging unreasonably cumulative or duplicative discovery). To effectuate this, each class representative will produce its relevant documents and written discovery responses to the defendants in all other parts cases in which it is a class representative reasonably in advance of deposition.

The Defendants appear to agree with the general proposition that efforts should be made to avoid duplication but offer nothing more than a vague and difficult to enforce "best efforts" provision that would not avoid wasteful and duplicative depositions. While Directs have agreed to the Defendants' proposed language on this issue, their position is significantly different from the End-Payors because their claims arise from their purchases of component parts rather than finished vehicles and different from the Dealers because they are involved in far fewer of the parts cases and have far less overlap between their class representatives in the different parts cases.

This issue was discussed at the status conference on October 8, 2014. At that time, the following discussion occurred:

> MR. WILLIAMS:  My plaintiffs have produced their documents, they have produced everything, they have nothing more, they should just be deposed once.
>
> THE COURT:  Mr. Cherry?
>
> MR. CHERRY:  Yes, Your Honor. As I said, I think we all want to minimize burdens on everyone including the plaintiffs and we will do our best to depose plaintiffs only once, particularly the end payors, I mean, they bought a car and we find out what car they bought and we are good. So I think we would take those depositions as soon as possible now, and we will try to correspond and coordinate with the other defendants.
>
> THE COURT:  I think it is a very excellent issue to address now for the plaintiffs, *I hope you can do it only once that you can work into our protocol. If it happens that you can't I can't imagine why for end-payor purchasers, I mean, they are not going to know the individual part.*

Status Conf. Tr. 84:25-85:1-16, Oct. 8, 2014 (emphasis added).

Class representatives for the Dealers and End-Payors are nearly the same in all of their respective parts cases. All are residents of the United States who purchased vehicles which include *Wire Harness Systems* purchased from a Defendant or its co-conspirators. Class representatives for the End-Payors have completed production of documents to the Defendants and have provided written responses to the Defendants' written discovery in the *Wire Harness Systems* case, and these documents and written discovery responses address every conceivable aspect of their purchases and claims in this action. Indeed, no motions to compel relating to End-Payors' discovery responses have arisen. Because this discovery covers every aspect of these class representatives' purchases, the Court's suggestion that they not be deposed repeatedly is well-grounded.

The Dealers are in the same situation with regard to future parts cases. The Dealers engaged in essentially the same relevant conduct as End-Payors in each parts case—the indirect purchase

of vehicles and parts. The Dealers' documents relevant to subsequent parts cases will be produced in *Wire Harness Systems*. The Defendants will ask the same questions at Dealer depositions regardless of the part at issue—namely, how Dealers purchased their vehicles and parts. There are no interactions with different defendants to explore because Dealers are indirect purchasers. And unlike with the Defendants, there are no separate meetings or communications to explore because the Dealers engaged in the same relevant action in each parts case: the purchase of vehicles and parts. There is no justification for the Dealers to give five depositions in each parts case for a total of 6,750 Rule 30(b)(1) depositions as well as numerous Rule 30(b)(6) depositions. Such a potential burden would prevent the Dealers from being able to participate in future parts cases.

The Dealers and End-Payors' proposal would provide that notices of class representative depositions be served on all parties in all parts cases, which will ensure that all defendants in this multidistrict litigation have notice of the depositions. This will guarantee that all parties have ample opportunity to obtain information, consistent with Fed. R. Civ. Proc. 26(b)(2)(C)(ii). The Dealers and End-Payors therefore request the Master to order the Defendants to notice class representative depositions to all parties in all parts cases and to prohibit the Defendants from obtaining more than one set of depositions of each class representative, absent good cause, per the Court's statement at the October 8, 2014 status conference.

If the Master finds in favor of the Dealers and End-Payors' language regarding the coordination of depositions of class representatives in more than one parts case, he should also find in favor of the following three provisions for consistency purposes: *First*, the Plaintiffs seek to add under "Scope of Order" that Section IV(I) of the Protocol and the provisions relevant to it shall apply to all actions in all parts cases. The Defendants are seeking to exclude this sentence. *See* Protocol, Section I.A. Section IV(I) relates to the coordination of depositions of class

representatives in more than one parts case. *Second*, the Plaintiffs seek to add under "Noticing and Scheduling Depositions" that the noticing party shall serve all notices of depositions on all parties in all parts cases. The Defendants are seeking to limit service to all parties to *Wire Harness Systems*. *See* Section IV.A. *Third*, the Plaintiffs seek to add under "Modifications to Order" that the Protocol is binding on all current and future parties in all parts cases, to the extent its provisions concern coordination of indirect Dealer and End-Payor depositions in all parts cases. The Defendants seek to have the Protocol binding on all parties to the *Wire Harness Systems* cases only. *See* Section XI.

2.      **Number of and examination time for Rule 30(b)(1) and 30(b)(6) depositions of Direct and Automobile Dealer Plaintiffs**

Any party may name a particular person as a witness for an organization by noticing the deposition per Rule 30(b)(1). Rule 30(b)(6) provides an alternative procedure for taking the deposition of an organization. Per Rule 30(b)(6), the deposing party need only describe the subject matter of the proposed deposition and the organization, the responding party, is then required to select and produce persons to testify on its behalf. Here, the Directs, Dealers, and Defendants are in dispute about the number and examination time for both Rule 30(b)(1) and 30(b)(6) depositions of Direct and Dealership Plaintiffs. *See* Sections III.4 and V.B.

Both Directs and Dealers oppose the Defendants' requests for five Rule 30(b)(1) depositions and 21 hours of Rule 30(b)(6) deposition testimony. The Defendants' request is unreasonable, as demonstrated by rulings in cases such as this one. For instance, in In re *Optical Disk Drive Products Antitrust Litigation* ("*ODD*"), the court ordered one deposition of each direct

purchaser and indirect purchaser plaintiff.[3]  Directs and Dealers offer three depositions of each plaintiff and believe their positions are more than reasonable.

The Directs' position is that the Defendants can take two Rule 30 (b)(1) depositions of seven hours and one Rule (30)(b)(6) deposition of seven hours of each Direct Plaintiff. In contrast to the Defendant families, the Directs have identified no more than a handful of individuals who had any involvement in the purchase of Wire Harness Products.  Of the seven Direct Plaintiffs that have answered interrogatories requesting the identification of individuals involved in the acquisition of Wire Harness Products, 17 individuals *total* have been identified. That is an average of just more than two individuals per Direct Plaintiff who may be suitable for a deposition. To allow for any more than two Rule 30(b)(1) depositions per Direct Plaintiff is unjustified, inequitable, and a waste of time for all parties. In comparison, the Plaintiffs have agreed to limit themselves to  15 Rule 30(b)(1) depositions of each Defendant family, when several  Defendants have identified over 40 relevant custodians—and some have identified over 50 custodians.  If the Directs and Dealers sought the same percentage of depositions in comparison to the number of relevant custodians, they would be seeking over 40 and over 55 depositions, respectively, of individual Defendant families in some instances. The Directs and Dealers understand that such a position is not practical and have agreed to seek a reasonable number of depositions. The Defendants' demand of five Rule 30(b)(1) depositions of each Direct Plaintiff is unreasonable, especially given that only one of seven Direct Plaintiffs identified five relevant custodians.

The Defendants seek five Rule 30(b)(1) depositions and 21 hours of  Rule 30(b)(6) deposition testimony from each Dealer Plaintiff as well for a total of 2,520 hours of deposition testimony from just the Dealers alone. The Defendants have never explained why they require

---

[3] *See ODD*, Order re Deposition Protocol No. 2, Case 3:10-md-02143-RS, ECF No. 1002 (Ex. 1).

thousands of hours of depositions from just one of the five Plaintiff groups in this litigation. The Dealers' proposal of 15 hours for three depositions of each Dealer Plaintiff, including two Rule 30(b)(1) depositions and one Rule 30(b)(6) deposition of seven hours, is much more reasonable. Truck Dealer Plaintiffs, though they are not yet involved in this Protocol, agree with the Automobile Dealers' position on this issue and consider the Defendants' position unreasonable.

Unlike the Defendant families that contain numerous separate entities, located in different countries, with hundreds of employees, each Dealer Plaintiff is just one entity, often with a very small number of employees who would possess any relevant information. Further, unlike the Defendant families, who engaged in tens or hundreds of instances of collusion to effectuate their criminal conspiracy on three continents, the Dealers just engaged in one relevant activity: the purchase of parts and vehicles. The Dealers are already in the process of providing records of such purchases as well as sales data to the Defendants. The Defendants are unable to articulate why they require thousands of hours of depositions on top of these documents to disprove the Dealers' simple claim that they overpaid for their parts and vehicles.

The relevant information should largely be able to be obtained from one employee—a comptroller or a general manager. The Defendants have not and cannot identify five Rule 30(b)(1) deponents from each Dealer Plaintiff who would possess relevant, non-cumulative information that would not have already been obtained through a 30(b)(6) deposition. Each Dealer employee listed in Dealers' Initial Disclosures is identified as having information about essentially the same topic: the purchase of and prices paid for vehicles and parts. Depositions of numerous employees on this topic would be extremely duplicative. The Defendants should not be permitted to depose five employees of one Dealer Plaintiff for 35 hours in addition to taking a Rule 30(b)(6) deposition in hopes of obtaining information to show that the Dealer did not overpay for its vehicles and parts.

The Defendants also cannot identify enough topics to fill up 21 hours of Rule 30(b)(6) testimony. The purchases of a small business should easily be able to be examined in under seven hours, especially, when many of the Defendants' questions could be answered by reference to the Dealers' documents.

When determining the appropriate number of depositions, a court takes into account whether "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *System Fuels, Inc. v. U.S.*, 73 Fed.Cl. 206, 218 (Fed. Cl. 2006), *see also* Fed. R. Civ. P. 26(B)(2)(c).

Allowing depositions beyond the three proposed by the Directs and Dealers would be extremely burdensome for the Directs and Dealers. The Plaintiffs' deponents would have to take time off from work, meet with their lawyers, and potentially travel for these depositions. A Rule 30(b)(6) deposition lasting 21 hours may require some employees of the Directs and Dealers to take up to four days in a row off of work, at great cost to their respective businesses, some of which may be unable to operate without those employees. The Defendants' proposed amount of depositions would also be extremely burdensome and expensive for the Plaintiffs' counsel, who would have to defend a total of 260 Rule 30(b)(1) depositions and 1092 hours of Rule 30(b)(6) depositions between Dealers and Directs, for which they would have to travel all over the country. This would take an enormous amount of time for the Dealers and leave the Dealers' counsel little

9

time to do anything else, including taking the Defendants' depositions and proceeding with their case prosecution efforts. This is not justified when most depositions beyond a seven-hour Rule 30(b)(6) will likely be duplicative and when Defendants can obtain this information in a less expensive way, just by examining Plaintiffs' documents.

The information relevant to the Direct and Dealers' claims and any inquiries about the Plaintiffs' records can be sufficiently covered in one Rule 30(b)(6) deposition of each Direct or Dealer Plaintiff, during which the Defendants will be able to explore the issue of whether Direct and Dealer Plaintiffs were injured by their purchases of the Defendants' Wire Harness Systems, to the extent they have not already done so through the Plaintiffs' documents.

The Directs and Dealers have offered the Defendants not just one Rule 30(b)(6) deposition but also two Rule 30(b)(1) depositions. This allows Defendants to have any of their questions about the Plaintiffs' businesses and transactional information answered in a Rule 30(b)(6) deposition and then to have the opportunity to follow up with two individual depositions if the Defendants believe that they still have questions that remain unanswered or that require some other deponent.

The Directs and Dealers believe this is a fair number of depositions, especially given that the Protocol gives the Defendants the right to request further depositions based on good cause.

The Directs and Dealers request the Master to order that defendants may take two Rule 30(b)(1) depositions and one Rule 30(b)(6) deposition of seven hours for each Direct Plaintiff and 15 hours total of Rule 30(b)(1) and 30(b)(6) deposition testimony, with seven hours allocated to the Rule 30(b)(6) deposition, for each Dealer Plaintiff.

### 3.     <u>Number of Automobile Dealer depositions per day</u>

Dealers seek the same consideration that the Defendants requested and received from the Plaintiffs: one deposition per day of each group of parties represented by the same counsel. The Dealers have agreed to provide this courtesy to the Defendants, but the Defendants have declined to reciprocate. *See* Section IV.K.

Dealers seek to ensure that they will be able to adequately staff Dealer depositions and have sufficient time to travel and prepare for each Dealer deposition. Under the Defendants' proposal, the Defendants could notice 20 dealer depositions to take place in one day—far more depositions than Dealers' counsel could possibly staff, much less prepare for.

The Defendants complain that they will have insufficient time to complete the Dealer depositions, but the discovery schedule that the parties have negotiated allows for more than one year of depositions—more time than any Defendant could possibly need to complete Dealer depositions.  The Defendants' decision to deny the Dealers a one deposition per-day limit thus seems purely strategic. Discovery should not become a competition as to whether one party can disadvantage the other due to a lack of resources. A one-Dealer-deposition per day rule allows the Dealers' counsel to reasonably allocate their time and resources and adequately and appropriately staff their clients' depositions.

As with the issues concerning number and hours of Rule 30(b)(1) and 30(b)(6) depositions, the Truck Dealer Plaintiffs, though they are not yet involved in this Protocol, are in agreement with the Automobile Dealers' position on this issue and consider the Defendants' position unreasonable.

4.      **Examination time for Rule 30(b)(6) depositions requiring an interpreter**

The Plaintiffs' position is that examination time should be doubled for Rule 30(b)(6) depositions or portions thereof requiring an interpreter. The Defendants' position is that examination time should increase at a 7:12 ratio (*e.g.*, a seven-hour deposition in English would become a 12-hour deposition in a foreign language). *See* Section V.C. Rule 30(b)(6) deposition testimony is critical in this decade-long price-fixing conspiracy involving foreign witnesses, use of code names, and destruction of evidence and is therefore distinct from Rule 30(b)(1) deposition testimony.

The deposition protocol proceedings in *In re Cathode Ray Tube Antitrust Litigation* ("*CRT*") and *ODD* provide useful guidance. In *CRT*, the deposition protocol provided, "To the extent an interpreter is used for all or nearly all of the deposition, the time limits set forth . . . shall be ***doubled***. In all other situations, the Parties will cooperate in good faith to extend the deposition time to account for the use of the interpreter, guided by the principle that deposition time during which an interpreter should be counted at ***50% or one half*** the actual amounts against the [] set limits" (emphasis added).[4] The deposition protocol in *ODD* includes virtually the same language.[5] The Plaintiffs therefore request that the Master order the doubling of examination time for Rule 30(b)(6) depositions or portions thereof that require an interpreter.

5.      **Number of Rule 30(b)(6) notices that Defendants may serve on Dealers**

The Dealers have agreed to one Rule 30(b)(6) deposition notice per Dealer Plaintiff, with an unlimited number of topics. But the Defendants demand twice as many 30(b)(6) notices. *See*

---

[4] *See CRT*, Order re Discovery and Case Management Protocol, Case No. 3:07-cv-09533, ECF No. 1128 (Ex. 2).
[5] *See ODD*, Order re Deposition Protocol No. 2, Case No. 3:10-md-02143, ECF No. 1002 (Ex. 1).

Section V.F. The Defendants have presented the Dealers with no cases where more than one Rule 30(b)(6) notice was ordered for each indirect purchaser class representative.

Two 30(b)(6) notices per Dealer Plaintiff, for a total of 90 notices, is incredibly burdensome, especially on top of the 225 Rule 30(b)(1) depositions that the Defendants are demanding of the Dealers. Each notice would have an unlimited number of topics, many of which would likely need to be litigated as to their propriety, involving significant amounts of briefing as well as numerous rounds of meet and confers. This burden is just not justified to investigate the Dealers' activity of indirectly purchasing vehicles and parts. The Defendants know now what information they need to gather from the Dealers to stage their defense and can certainly fit their inquiries into one notice, in which they are already permitted to include an unlimited number of topics. The need for a second notice is unexplained and unnecessary.

As with the other issues described above, the Truck Dealer Plaintiffs are in agreement with the Automobile Dealers' position on this issue and consider the Defendants' position unreasonable.

6. **Involvement of check interpreters in preparing witnesses**

As to lead interpreters, the parties agree that lead interpreters at a witness' deposition should not be involved with preparing that witness for deposition. As to check interpreters (*i.e.*, an interpreter who works for the other side to "check" the lead interpreter's work), the Plaintiffs' position is similarly that a check interpreter at a witness' deposition should not be involved with preparing that witness for deposition. The Defendants' position is that the check interpreter may perform both tasks. *See* Section VIII.B.

The deposition protocol proceedings in *CRT* are instructive.[6] In *CRT*, the plaintiffs informed the special master that certain defendants had employed an interpreter to translate foreign language testimony at a witness's deposition *and* to assist the same witness and his counsel to prepare for the deposition.[7] The plaintiffs in *CRT* objected to the defendants' practice as "***raising the appearance of impropriety as to impartiality of and conflict of interest by said interpreter***" (emphasis added).[8] After considering submissions and hearing oral arguments, the special master amended the deposition protocol to read: "***Any interpreter*** hired to act as the official interpreter at a deposition shall be prohibited from participating in the preparation or counseling of that witness in conjunction with that deposition" (emphasis added).[9]

Here, the Defendants should not be able to use an interpreter involved in preparing a witness for a deposition to then be an interpreter at the same witness's deposition—lead or check. The conflict of interest is evident and unavoidable. An interpreter who participates in privileged attorney-client deposition preparation sessions will inevitably become privy to the litigation strategies and goals of the Defendants. Consciously or not, the interpreter will then have a bias in their interpretation of testimony. The Defendants acknowledge that interpretation of foreign language testimony involves nuance, shading, and judgment. Once an interpreter has effectively become part of the defense team by participating in privileged preparation sessions, the risk of bias in translations becomes apparent and dangerous to what will, in many cases, be the trial testimony of the deponent. This is a grave risk that may be avoided through a clear order providing that a

---

[6] *See CRT*, Report and Recommendation re: Modification of Section VII.A of Order re Discovery and Case Management Protocol (Deposition Interpreters), Case No. 3:07-cv-05944, ECF No. 1592 (Ex. 3).
[7] *Id.*
[8] *Id.*
[9] *Id.*

check interpreter may not participate in privileged deposition preparation sessions with the witness and counsel.

The Plaintiffs request that the Master order that a check interpreter at a witness's deposition shall not be involved in preparing that witness for deposition.

## III.   CONCLUSION

The Plaintiffs respectfully request that the Master grant the relief they requested at the close of each subsection. A proposed form of order is attached.

Date: January 12, 2015                    Respectfully submitted,

                                          */s/ Steven N. Williams*
                                          Steven N. Williams
                                          Adam J. Zapala
                                          Elizabeth Tran
                                          **COTCHETT, PITRE & McCARTHY, LLP**
                                          San Francisco Airport Office Center
                                          840 Malcolm Road, Suite 200
                                          Burlingame, CA 94010
                                          Telephone:  (650) 697-6000
                                          Facsimile:  (650) 697-0577
                                          swilliams@cpmlegal.com
                                          azapala@cpmlegal.com
                                          etran@cpmlegal.com

                                          Hollis Salzman
                                          Bernard Persky
                                          William V. Reiss
                                          **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
                                          601 Lexington Avenue, Suite 3400
                                          New York, NY 10022
                                          Telephone:  (212) 980-7400
                                          Facsimile:  (212) 980-7499
                                          hsalzman@rkmc.com
                                          bpersky@rkmc.com
                                          wvreiss@rkmc.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiffs Classes*

*/s/ E. Powell Miller*
E. Powell Miller
Adam T. Schnatz
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 841-2200
epm@millerlawpc.com
ats@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison Counsel
for the Proposed End-Payor Plaintiffs Classes*

*/s/ Eugene A. Spector*
Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
**SPECTOR ROSEMAN KODROFF
& WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com
msilverman@fklmlaw.com

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
**PRETI, FLAHERTY, BELIVEAU
& PACHIOS LLP**
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
ghansel@preti.com
rweill@preti.com
msmith@preti.com

*Interim Co-Lead Counsel for the Direct Purchaser
Plaintiffs*

David H. Fink
**FINK ASSOCIATES LAW**
100 West Long Lake Road
Suite 111
Bloomfield Hills, MI 48304
248-971-2500
Fax: 248-971-2600
dfink@finkandassociateslaw.com

*Attorneys for Plaintiffs and Interim Liaison Counsel
for the Proposed Direct Purchaser Plaintiffs
Classes*

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Evelyn Li
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834.2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer
Plaintiffs*

Gerard V. Mantese (Michigan Bar No. P34424)
David Hansma (Michigan Bar No. P71056)
Brendan Frey (Michigan Bar No. P70893)
Joshua Lushnat (Michigan Bar No. P75319)
**MANTESE HONIGMAN ROSSMAN AND
WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 ext. 203
Facsimile: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

*Attorneys for Plaintiffs and Interim Liaison Counsel
for the Proposed Automobile Dealership Plaintiffs
Classes*

19

/s/ Hector Torres
Hector Torres
Edward E. McNally
Cindy C. Kelly
**KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP**
1633 Broadway
New York, NY 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
htorres@kasowitz.com
emcnally@kasowitz.com
ckelly@kasowitz.com

Eric J. Pelton (Michigan Bar No. P40635)
Theodore R. Opperwall (Michigan Bar No. P31374)
Ryan D. Bohannon (Michigan Bar No. P73394)
**KIENBAUM OPPERWALL
HARDY & PELTON, P.L.C.**
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
Telephone:  (248) 645-0000
Facsimile:  (248) 645.1385
epelton@kohp.com
topperwall@kohp.com
rbohannon@kohp.com

*Attorneys for Plaintiff Ford Motor Co.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Steven N. Williams, certify that I served a true and correct copy of **PLAINTIFFS'**
**MEMORANDUM IN SUPPORT OF THEIR POSITIONS REGARDING DISPUTED**
**DEPOSITION PROTOCOL PROVISIONS** by e-mail on all registered counsel of record in *In*
*re Wire Harness Systems* on January 12, 2015.


*/s/ Steven N. Williams*
Steven N. Williams