# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases In Re: All Auto Parts Cases | : : : : : : : : : : : | 2:12-cv-00100-MOB-MKM 2:12-md-02311-MOB-MKM |
| THIS DOCUMENT RELATES TO: All Wire Harness Cases All Auto Parts Cases | : : | |

**DEALERHIP PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS'
MOTION FOR CLARIFICATION OF THE COURT'S RULING REGARDING
<u>DEPOSITIONS OF PLAINTIFFS IN MULTIPLE AUTO PARTS CASES</u>**

## STATEMENT OF ISSUES PRESENTED

When the Court has stated that the information Defendants require regarding Dealership Plaintiffs' purchases and sales of their vehicles can be obtained in one deposition of a named plaintiff, is one deposition per Plaintiff appropriate absent good cause for more?

## TABLE OF CONTROLLING AUTHORITIES

*In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS (JCS), 9/23/2013 Order

Re Deposition Protocol No. 2

Transcript of January 28, 2015 Status Conference

## **<u>TABLE OF CONTENTS</u>**

STATEMENT OF ISSUES PRESENTED.......................................................................... ii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. iii

TABLE OF CONTENTS........................................................................................... iv

Introduction............................................................................................................1

    A. On January 28, 2015, This Court Stated That One Deposition Per Plaintiff Was
    Appropriate ......................................................................................................1

    B.  Defendants' Proposal is Oppressive, Disproportional, and Unnecessary.....................4

Conclusion……………………………………………………………………………...8

**Introduction**

At the status conference on January 28, 2015, this Court issued rulings on contested issues in the parties' deposition protocol order regarding Dealership and End-Payor depositions and the Special Master stated that the parties would "start from scratch on that protocol." Transcript of January 28, 2015 Status Conference, at 34, *see* Exhibit A. On March 19, 2015, the Special Master entered a ruling directing the parties "to meet and confer and develop a universal deposition protocol for depositions of End-Payor and Automobile Dealer Plaintiff Witnesses in the Auto Parts MDL cases." *See* 2:21-cv-00100-MOB-MKM (Doc. # 275) ("March 19 Order"), at 2. The issue of how many depositions may be taken of each Dealership Plaintiff was raised by Defendants' motion to this Court, but has not yet been resolved.  Dealership Plaintiffs therefore submit this memorandum in hopes of resolution.[1]  Dealership Plaintiffs also remain willing to meet and confer with Defendants regarding this issue and have communicated as much to Defendants.

**A.      On January 28, 2015, This Court Stated That One Deposition Per Plaintiff Was Appropriate.**

As this Court no doubt recalls, at the January 28 status conference there was an extended colloquy among this Court, Sumitomo's counsel (Ms. Sullivan), End-Payor's counsel (Mr. Williams), and Special Master Esshaki.  This Court stated that in part:

> [C]ertainly end payers, unless somebody could convince me otherwise, auto dealers don't buy cars by parts, they buy the car. . . . I would assume what you want to know is about how much they paid for the car and where they purchased the car, that type of thing.  And I would also assume that that's true for every defendant would want this basic information and that this can all be done in *one deposition of a named plaintiff.*

---

[1] Pursuant to Local Rule 7.1(e)(2) and Fed. R. Civ. P. 6(d) Dealership Plaintiffs' response to Defendants' motion is due today.

Ex. A, at 24 (emphasis added).  Thus, this Court's remarks applied to all named plaintiffs, including both End Payors and Dealers. This Court went on to say clearly that "[t]here [will] be one deposition."  *Id.*

This Court further stated that Defendants would have to get the "information you need and at the same time only do a single deposition of most of these named plaintiffs." *Id.* at 26. Thus, this Court made clear that that for most of named plaintiffs—whether they were Dealers or End-Payors— only one deposition was warranted.

Thereafter, Sumitomo's counsel, Ms. Sullivan, asked about replacement parts.  She noted that the Dealers had "not yet withdrawn their replacement parts claims" in cases other than Wire Harness and suggested that "that will make a difference, I suspect."  *Id.* at 27. This Court then asked Ms. Sullivan if it would affect the Defendants' informational needs if the Dealers dropped their replacement parts claims.  Ms. Sullivan said it would.  *Id*.  Ms. Sullivan stated: "[T]he auto dealers are more complicated . . . because of where they sit in the distribution chain, so not only do they need to explore their purchases of cars but also their sales of cars, and that relates to the pass-through issue that Your Honor identified back in the motion to dismiss ruling in 2013 I believe." *Id*. The Court responded, "Well, there is not going to be duplication unless it comes before me first and you need a second deposition, let me start with that, because we can just not start doing two or more depositions of everyone, so I'm not barring it, I'm just saying I need to know why." *Id.* at 27-28.

As a tool, this Court made the salutatory suggestion that Defendants submit written questions so that the scope of Dealer depositions could be analyzed:

> You can if you want, each of you, submit questions you would ask of a plaintiff, be it an auto dealer or an end payer . . . . [I]n terms of those two groups you can

also submit questions and then either the master or myself could call those questions so you would literally have your questions asked, so when the person comes in he's going to be asked the question, or she, only one time, and you could decide for yourself a group of you that will be taking these deposition using this script.

*Id.* at 25.

Thereafter, this Court again suggested that Defendants make their informational needs known so that it could determine how many depositions were needed: "What we need to know," this Court explained to Ms. Sullivan, is "what's the template of the questions that are going to be asked, and who amongst the defendants—which groups are actually going to be taking the depositions[?]" *Id*. at 33.

This Court made two things clear during the January 28 conference: (1) that this Court had a strong preference for one deposition for each named plaintiff, and (2) Defendants should share a template of their questions with the Court, the Special Master, and the Dealers in order to meet their informational needs.

Defendants, instead of providing Dealership Plaintiffs with their questions, seek to rely on the Wire Harness protocol that was withdrawn. After the Court spoke at the January 28, 2015, Status Conference, Special Master Esshaki withdrew the existing protocol in light of the Court's comments, stating "Judge, I think your ruling just now alters completely the deposition protocol that we discussed." Ex. A at 34. The Special Master then stated: "So the judge, I think, made this instruction very clear, one dep, one person, across all parts and you need to figure out how you are going to do that, and we need to start from scratch on that protocol . . . ." *Id*. The Master then issued an order on March 19, 2015, ordering the parties to meet and confer on a "universal deposition protocol" to be submitted. March 19 Order, at 2. That order, issued after Defendants' Motion to Clarify was filed, did not order 3 30(b)(1) depositions and 18 hours of

3

30(b)(6) depositions of Dealers that Defendants seek—instead it confirmed that a new deposition protocol order was required. It is apparent from the Special Master's comments and order that this Court's comments "alter[ed] completely" the deposition protocol, and that the Wire Harness protocol was withdrawn.[2]

**B.   Defendants' Proposal is Oppressive, Disproportional, and Unnecessary.**

At the January 28 hearing, this Court stated:

- "[T]here [will] be one deposition."  Ex. A at 24

- "[D]o a single deposition of most of these named plaintiffs."  *Id.* at 26.

- "[T]here is not going to be duplication unless it comes to me first that you need a second deposition." *Id.* at 27-28.

The Court's clear intent was to avoid duplicative and excessive burdens on all plaintiffs—both End Payors and Dealers—while providing Defendants with the information that they need.  Dealers' position is based directly on this Court's plural expressions of its views. Notwithstanding, Defendants are seeking to capitalize on a portion of a deposition protocol that Special Master Esshaki withdrew at the January 28 hearing, despite his comment that the parties needed to "start from scratch."

There is nothing in Defendant's filing that suggests any greater need for depositions. Defendants claim multiple depositions are necessary, because they need to find "common evidence" of impact, and need to explore

---

[2] Defendants claim that Dealership Plaintiffs did not appeal the order regarding the number of Dealer depositions in Wire Harness, but that order was withdrawn and never entered and thus never triggered the right of appeal.  *See* Order Appointing A Master §II(B), 2:12-md-02311-MOB-MKM Doc # 792 (Filed 08/29/14) ("any party may file an objection to any order of the Master with the Court within 21 days of the ECF filing date.").

> [t]he process auto dealers employed at various points throughout the alleged 15-year class period at each of its various franchises to acquire and sell each automobile, and the extent to which purchase and sale prices vary based on market demands, geographic location, dealer size, car brand and model (including trim level and model year), negotiating styles, customers' wants and needs, discounts, special rates and incentives, financing, warranties, or other factors, are essential in this case.

Def.'s Mem. at 12-13. According to Defendants, this information "cannot be obtained in a single seven-hour deposition of an auto dealer." Def.'s Mem. at 13.

But no Dealer witness is going to be able to describe thousands of individual sales or purchases of automobiles, describing trim levels and model years of cars sold or "customers' wants and needs." Deposition testimony is simply not a productive way of obtaining this information.[3] The basic facts of these transactions would come from transactional records, not from individual recollections of particular sales or purchases. Those records would speak for themselves. Significantly, since the January 28 Status Conference, Dealership Plaintiffs have offered to produce over one hundred fields of transactional information, including sale prices, models, makes and trim levels. This should be more than enough information for Defendants to analyze Dealership Plaintiffs' claims.[4] In any event, if Defendants can show cause why one deposition is truly insufficient for a particular Dealership they can obtain further depositions.[5]

---

[3] Although Defendants state that dealers have produced very little written discovery, in fact Dealership Plaintiffs have produced 250,000 pages of documents. Defendants, on the other hand, have produced a fairly minimal amount of documents beyond what they gave the Department of Justice and was readily available.

[4] Defendants point to Dealership Plaintiffs' Initial Disclosures. But a significant number of the persons listed in those disclosures are either parts/service managers who are no longer relevant given that Dealers have dropped their parts claims, or OEM representatives, who are not employees of Dealers, but rather OEM employees who would need to be subpoenaed.

[5] Defendants also argue that Dealerships have numerous employees but most of these employees have no relevant knowledge regarding Dealers' claims—they include individuals such as repair

Nor are there interactions with Defendants to explore.  Importantly, Dealers are very differently situated from Direct Purchaser Plaintiffs.  Automobile dealers do not have direct contact with suppliers of parts imbedded in vehicles, and therefore there could be no individualized issues based on direct purchases from Defendants.

At the hearing on January 28, it was noted that informational issues with respect to Dealers would center on the purchase and sale of automobiles if Dealers dropped the replacement parts from the case.  Ex. A at 27 (Defendants would want to "explore their [Dealers'] purchases of cars but also their sales of cars").  Dealers have now dropped their replacement parts claims.[6]

Defendants seek three full days of fact depositions, plus 18 hours of 30(b)(b) depositions.  Under their proposal, each of approximately 50 Dealers would have 18 hours of 30(b)(6) depositions, only three hours of 30(b)(6) depositions fewer than the multi-national corporations that pleaded guilty in this case, and whose conduct is primarily at issue and the same number as Direct Purchasers who interacted with Defendants.  Moreover, excluding the preparation necessary to defend three days of 30(b)(6) depositions, the commitment that each Dealer would

shop workers, used car salespeople and secretarial workers.  Sumitomo, on the other hand, has hundreds of thousands of employees but Dealers have, collectively with the other class Plaintiffs, limited themselves to deposing only one fifth of Sumitomo's custodians in this case.

[6] Further, although Dealership Plaintiffs do not intend to argue the issue in this brief, Dealership Plaintiffs do not agree that the issue of Dealer sales is relevant because "[i]n an overcharge case, impact is shown through proof that: (1) Defendants charged more than they would have but-for their antitrust violation; and (2) class members *made some purchases* at the illegally inflated or stabilized price." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697 (S.D. Fla. 2004) (emphasis added) (declining to accept Defendants' argument that class certification is impossible for intermediary plaintiffs because they "passed on all claimed overcharges to consumers, and therefore, cannot prove that they sustained any antitrust impact.").  Dealership Plaintiffs will not advance further argument on this issue, but note they do not intend to concede this point.

make under Defendants' plan would be well over 40 hours, would stretch into two weeks, and would require a substantial outlay of Dealers' resources. Such a burden may prevent numerous dealers from being able to participate in this case.  The implementation of Defendants' proposal would require well over a year of Dealers and Dealers' counsel's time. And why are such lengthy depositions necessary? Defendants will not say. The answer is: now that replacement parts have been dropped from the case, they plainly are not. Auto dealers are business people; their business is not litigation but selling and repairing automobiles.  This Court should not permit Defendants to disrupt Dealers' lives and livelihoods in this manner absent good case. None exists here.

As this Court has recognized, an order restricting depositions to one day per Dealer would be entirely appropriate. It would also be entirely consistent with prior precedent in a case like this. In *Optical Disk Drive*, another antitrust class action against conspirators in a bid-rigging conspiracy, the court ordered one deposition of each direct purchaser and indirect purchaser plaintiff.  *See In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS (JCS), 9/23/2013 Order Re Deposition Protocol No. 2, ¶ I(H), attached as Exhibit B.

In their brief, Defendants repeatedly suggest that Dealers' current position is inconsistent with their position before the Special Master.  The brief containing Dealers' previous position of three depositions total (15 hours) was advanced at a time when Dealers were pressing replacement part claims and before Dealer Plaintiffs offered to produce for Defendants an additional 100 fields of transactional data.  As Ms. Sullivan noted at the January 28 hearing, replacement part claims would "add to the complexity significantly." Ex. A at 27. We agree, and it is therefore clear that Defendants now need significantly less time.

**Conclusion**

Dealership Plaintiffs believe one deposition of each Dealership Plaintiff is appropriate and request this Court to conclude, consistent with its comments on January 28, that one such deposition is sufficient (subject to expansion for good clause shown), to the extent this Court is inclined to rule on the number of depositions required of each Dealer.  In the alternative, Dealership Plaintiffs are prepared to meet and confer with Defendants to discuss this issue, in light of 1) the Court's comments, 2) Dealership Plaintiffs' dropping of all replacement parts claims and 3) the additional production Dealership Plaintiffs have agreed to undertake to provide Defendants with the additional information they seek.  In fact, Dealership Plaintiffs have repeatedly offered to meet and confer with Defendants on the issue and have requested Defendants to forward their outline of questions so that the parties could have a more informed discussion about Defendants' informational needs. Indeed, if necessary, Dealers would be prepared upon a showing of good cause, to voluntarily agree to more than a single day.  Dealers' counsel remain open to both persuasion and compromise.

In the meantime, there is no reason why resolution of this one issue should delay resolution of any other outstanding issues the parties need to resolve.

Date:  March 23, 2015                    Respectfully submitted,


                                         */s/ Jonathan W. Cuneo*
                                         Jonathan W. Cuneo
                                         Joel Davidow
                                         Victoria Romanenko

Yifei Li
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

*s/ Shawn M. Raiter*
Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*/s/ Don Barrett*
Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel for the Proposed
Automobile Dealer Plaintiff Classes*

*/s/ Gerard V. Mantese*
Gerard V. Mantese
David Hansma
Joshua Lushnat
**MANTESE HONIGMAN ROSSMAN AND
WILLIAMSON, P.C.**
1361 E. Big Beaver Road

9

Troy, MI 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
jlushnat@manteselaw.com

*Interim Liaison Counsel for the Proposed*
*Automobile Dealer Plaintiff Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2015 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

11