# EXHIBIT A

1   appeals for it, but let me put my two cents' worth in here.

2           I was thinking about the depositions for the

3   individual plaintiffs in all of the auto parts.  I have been

4   thinking about the issue, do you take a deposition of each

5   plaintiff in each part?  That's impossible, that is not going

6   to happen.  First of all, certainly end payers and, unless

7   somebody could convince me otherwise, auto dealers don't buy

8   cars by parts, they buy the car.  Certainly your end payers

9   probably don't even know these parts exist in their cars.  So

10  I would assume, and I don't know this, but I would assume

11  what you want to know is about how much they paid for the car

12  and where they purchased the car, that type of thing.  And I

13  would also assume that that's true for every defendant would

14  want this basic information and that this can all be done in

15  one deposition of a named plaintiff.

16          I don't know in detail what you have discussed in

17  your protocol but, you know, maybe I'm jumping the gun here

18  but I'm throwing this out because this case has to move along

19  with a little more swiftness, and that is that it is my

20  intention to do something -- I mean, if we have to innovative

21  we will be innovative but that there be one deposition.

22          So, Mr. Williams, before I go on, go ahead.

23          MR. WILLIAMS:  I just want to respond, Your Honor,

24  to your point.  This actually was a matter that the parties

25  discussed and mediated with Mr. Esshaki.

*1*      THE COURT:  See, I'm already interfering with --

*2*      MR. WILLIAMS:  It is in the proposal but I don't

*3* think that rules out us and the defendants and the master, if

*4* he's so willing, from evaluating this in light of the

*5* comments that you have made today.  I think we are all in

*6* favor of efficiencies.

*7*      THE COURT:  Well, I have thought about this and I

*8* know particularly from defendants' point of view, I mean,

*9* maybe each defendant has something unique they want to do so

*10* I thought about this, well, okay, defendants, and you haven't

*11* even answered yet, a lot of you, but that's okay, discovery

*12* can start anyway, we don't need to have the answers to do

*13* discovery, under the rules I can allow it and, of course, I

*14* am in this case.  You can if you want, each of you, submit

*15* questions you would ask of a plaintiff, be it an auto dealer

*16* or an end payer, I don't think the OEMs are a big deal, but

*17* in terms of those two groups you can also submit questions

*18* and then either the master or myself could call those

*19* questions so that you would literally have your questions

*20* asked, so when the person comes in he's going to be asked the

*21* question, or she, only one time, and you could decide for

*22* yourself a group of you that will be taking these depositions

*23* using this script.

*24*      Or another way of doing it is a group of you could

*25* get together and come up with one set of questions so you're

```
 1   not all doing it.  Either -- which way I don't care but I
 2   want you to have the opportunity to ask, you know, to get the
 3   information you need and at the same time only do a single
 4   deposition of most of these named plaintiffs.  Granted there
 5   may be something that comes up that would require an extra
 6   deposition, I don't know what that could be, you would know
 7   that, and we would deal with that, but that's kind of what I
 8   had in mind for the depositions.  So I just throw that out so
 9   when you are doing your protocol it may be a little late but
10   I've just been thinking about this.
11           Ms. Sullivan?
12           MS. SULLIVAN:  I do think that the language that
13   Master Esshaki has instructed the parties to include in the
14   protocol does envision the types of things that you may be
15   thinking about in terms of cooperating with each other and
16   trying to avoid duplication.  This is one of the reasons why
17   I asked for clarification regarding replacement parts because
18   speaking only on behalf of the wire harness defendants, not
19   on behalf of any defendant in any of the other cases, for us
20   it seems much more likely that we will be able to accomplish
21   having only a single deposition of the end payers when if it
22   is true that that's all that they are claiming is damages
23   based on the purchase of a car, and that applies in all of
24   the cases.  Again, I'm not speaking on behalf of any of the
25   other defendants in those other cases but I do expect that we
```

1  should be able to accomplish what you are envisioning with
2  respect to the end payers.
3        The auto dealers are differently situated.  First,
4  they have not yet withdrawn their replacement part claims in
5  the other cases and that will make a difference, I suspect,
6  because if they are claiming damages based on those other
7  purchases of the other parts the parties in those other cases
8  will need to explore the prices that they paid, whether the
9  prices were negotiated, the prices for which they sold those
10 parts, et cetera, et cetera, and so that will add to the
11 complexity significantly.
12       THE COURT:  Unless they drop as they did in the
13 wire harness?
14       MS. SULLIVAN:  Correct.  In addition, the auto
15 dealers are more complicated as well because of where they
16 sit in the distribution chain, so not only do we need to
17 explore their purchases of cars but also their sales of cars,
18 and that relates to the pass-through issue that Your Honor
19 identified back in the motion to dismiss ruling back in 2013
20 I believe.  So those are more complicated depositions.  We
21 are hopeful that we will be able to avoid as much duplication
22 as possible.  We are making -- we have committed to using our
23 best efforts to do that, and we will take every step that we
24 can think of to try to avoid duplication.
25       THE COURT:  Okay.  Well, there is not going to be

```
 1   duplication unless it comes before me first that you need a
 2   second deposition, let me start with that, because we just
 3   cannot start doing two depositions or more of everyone, so
 4   I'm not barring it, I'm just saying I need to know why.
 5           MS. SULLIVAN:  Your Honor, for the wire harness
 6   defendants, our primary concern is that our depositions are
 7   not delayed and because many of the other cases are far
 8   behind us we have been concerned that if there is a ruling
 9   that only one deposition may occur across the entire auto
10   parts MDL that we will then have to wait for those other
11   cases to catch up, and it is very important to us that we not
12   have to wait.  As you know, we have been in discovery in this
13   case for a very long time, and we would like to move forward
14   with our depositions.
15           THE COURT:  Well, you may have to wait, you may
16   have to wait.  I don't think this is a big deal.  I think
17   that every one of these defendants knows right now what
18   information they want from each person.
19           MS. STORK:  Your Honor if I could just say a word?
20   Good morning.  My name is Anita Stork and I represent
21   Alps Electric, with case number 4, heater control panels, and
22   I also represent another defendant who was just recently
23   served in fuel injection systems, namely Tahen (phonetic)
24   North America.
25           I think -- and I know that we are all for
```

Case 2:12-md-02311-SFC-RSW   ECF No. 916-1, PageID.11941   Filed 03/23/15   Page 7 of 12
Status Conference / Motion Hearings • January 28, 2015

29

1   efficiency and coordination as much as possible, but I think
2   one issue to consider is that the deposition protocol so far
3   has only been negotiated between wire harness defendants and
4   plaintiffs in auto dealers, end payers and also directs, but
5   the defendants in the later cases haven't been involved in
6   that at all so it is a little bit difficult to say that
7   negotiations that one set of defendants is doing now is going
8   to bind everybody in the subsequent 24, 25, however many
9   cases there are.
10           I'm not saying that we are not eager to do this,
11  I'm just saying that some defendants really aren't in a
12  position to know because they have just been served or are
13  recently in the case to know exactly what information they
14  need, and that submitting questions really is no substitute
15  for at some point being able to ask additional questions if
16  you think that's needed.  I mean, I certainly wouldn't
17  contradict anything Your Honor has said -- the Court has said
18  about the approach to it, I'm just suggesting that, one,
19  these later defendants haven't been involved in this
20  negotiation but that secondly one alternative for the Court
21  to consider would be to have depositions of the named
22  plaintiffs sooner rather than later but then keep in reserve
23  like an extra two hours if defendants in later cases feel
24  like they have to ask additional questions and can make a
25  case to the Court that these are additional questions that

 1  need to be asked.  It is just very difficult when you have
 2  only just been served and other defendants have been in their
 3  wire harness case for four years to immediately know what
 4  your client who just got the summons really needs to ask.
 5           THE COURT:  Okay.
 6           MS. STORK:  Thank you, Your Honor.
 7           THE COURT:  Mr. Williams?
 8           MR. WILLIAMS:  Just speaking on behalf of end
 9  payers, we are all in favor of doing whatever we would need
10  to do to avoid duplication.  We had offered across all the
11  cases to make our discovery responses in the first cases
12  available to all defendants, and we think that it makes a lot
13  of sense to think of ways to avoid the duplication.  I think
14  the suggestions the Court made makes a lot of sense.  From
15  the top of my head, an alternative could also be a set of
16  depositions upon written questions for the basic facts of
17  purchases.  There are a lot of creative ways -- really not
18  that creative ways to do this to create efficiencies that the
19  Court is talking about, and we for the end payers will do
20  everything we can to make that happen and to not cause any
21  delay for defendants whether they have been in the cases or
22  whether they are new defendants.
23           THE COURT:  All right.
24           MR. KANNER:  Good morning, Your Honor.
25  Steve Kanner on behalf of direct purchasers.

Case 2:12-md-02311-SFC-RSW   ECF No. 916-1, PageID.11943   Filed 03/23/15   Page 9 of 12
Status Conference / Motion Hearings • January 28, 2015

31

1      We have been listening with interest, and we have
2 been involved in these discussions.  Of course the direct
3 purchasers are in a slightly different position, there are
4 certainly fewer plaintiffs in each of these cases.  And with
5 respect to wire harness I believe the protocols have largely
6 been worked out in an extremely cooperative fashion.  Of
7 course, we also buy the product somewhat differently than the
8 end payers, we are not buying the cars, we are actually
9 buying the parts directly, but certainly off the top of my
10 head I think three plaintiffs who bought -- at least two who
11 bought wire harness parts and other parts, Findlay and ACAP,
12 and certainly another client, Tiffin, purchased four or five
13 different parts directly from the defendants, so we are
14 certainly in favor of doing whatever is necessary to make the
15 process more efficient and to have these people sit for one
16 deposition as opposed to four and five separate times.

17      It makes sense -- it certainly makes sense from the
18 standpoint of the economy of efforts by the attorneys as
19 opposed to all going to four and five separate depositions,
20 we can do it at one time.  And to the extent that we can do
21 this in a written form beforehand, certainly the purchase
22 information, the defendants from whom we have purchased know
23 exactly what our clients have purchased, when and for how
24 much.  So that ought to be considered in terms of how we
25 streamline this process, and we are certainly open to, as

```
 1    Your Honor suggested, being creative and innovative.
 2              THE COURT:  Okay.
 3              MR. KANNER:  Thank you, Your Honor.
 4              MS. SULLIVAN:  Your Honor, just very briefly to
 5    respond to one of Mr. Williams' suggestion about some form of
 6    written questioning.  We have served written discovery
 7    requests on the plaintiffs and really have not been able to
 8    collect the information that we need from them.  We really do
 9    need to move forward with depositions.  We've been working
10    hard with the plaintiffs to set a class certification
11    schedule, and I believe that that proposed schedule will be
12    filed today with the Court, so we have succeeded in agreeing
13    upon a schedule and it really is critical that we move
14    forward now and take the depositions that we need in the wire
15    harness case so that we can meet those deadlines for class
16    certification that the parties agreed upon.
17              THE COURT:  All right.  I have to tell you, even
18    though I want you to go ahead with the class cert for the
19    wire harness as we discussed at our last meeting, and, again,
20    I think we mentioned this at the last meeting, I don't know
21    that that's going to be the way it is going to go for the
22    future but we need to get one of these class certs under our
23    belt so we see where we are heading, but, but I am not going
24    to allow the depositions to go forward on the one part, I'm
25    simply not going to do that.  You will have to get together
```

Case 2:12-md-02311-SFC-RSW   ECF No. 916-1, PageID.11945   Filed 03/23/15   Page 11 of 12
Status Conference / Motion Hearings • January 28, 2015

33

```
 1   and there is some urgency here because wire harness does need
 2   to proceed, but you are going to have to do these depositions
 3   on behalf of all of the defendants.
 4            I'm not asking you to do them written first, you
 5   can start taking your depositions, but what we need to know
 6   what's the template, what's the template of the questions
 7   that are going to be asked, and who amongst the defendants --
 8   which groups are going to actually be taking the depositions.
 9   So you will have to get together, form a group of, I don't
10   know, three, four, five -- well there are a lot of defendants
11   so you can decide how many you want to take the depositions
12   but only one person is going to be questioning at a time.
13   And we are going to hold it up because I think it is well
14   worth it to extend the class cert a little bit in order to
15   get this all done, but I really don't see any reason why it
16   could not be done with, for the most part, a single dep.  And
17   I say for the most part because I really -- you know your
18   cases and you know there may be something specific that you
19   have to ask but how you do it I don't know.
20            And, Gene, I would like to address to you because
21   this may change whatever you have done in the protocol, but
22   we need like a time period in which the defendants can submit
23   either individually their list of questions they would ask
24   each end payer and each auto dealer, recognizing the auto
25   dealers may be a little different than the end payers, or
```

```
 1   time for all of the defendants to have their representatives
 2   get together and come up with one format.
 3                MASTER ESSHAKI:  Judge, I think your ruling just
 4   now alters completely the deposition protocol that we
 5   discussed and I ruled upon, and I think the parties are going
 6   to have to get back together and redraft that deposition
 7   protocol to implement what I think was a direct instruction
 8   that there will be one dep of each end payer or whoever it
 9   may be and it is going to cover all the parts so that the
10   defendants need to get together, they need to come up with a
11   template of what the deposition outline is going to look
12   like, all of the parts the defendants will have input into
13   that, if they have any particular questions they can add
14   those questions, and they will designate who's going to be
15   conducting the examination.
16                But the problem here is that, as we said during our
17   discussions, there are approximately as I remember 50
18   dealers, there were four deps, we agreed I think on the 50
19   dealers, that's 200 deps, maybe there were less, I think in
20   my mind it is 160, but if we have to do that for wire harness
21   and then for air bags and then for motors it is impossible.
22   So the judge, I think, made this instruction very clear, one
23   dep, one person, across all parts and you need to figure out
24   how you are going to do that, and we need to start from
25   scratch on that protocol, salvage as much as you can but we
```