**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | |
| In re Alternators | : | Case No. 2:13-cv-00703-MOB-MKM |
| In re Starters | : | Case No. 2:13-cv-01103-MOB-MKM |
| In re Ignition Coils | : | Case No. 2:13-cv-01403-MOB-MKM |
| In re Motor Generators | : | Case No. 2:13-cv-01503-MOB-MKM |
| In re Inverters | : | Case No. 2:13-cv-01803-MOB-MKM |
| In re Air Flow Meters | : | Case No. 2:13-cv-02003-MOB-MKM |
| In re Fuel Injection Systems | : | Case No. 2:13-cv-02203-MOB-MKM |
| In re Valve Timing Control Devices | : | Case No. 2:13-cv-02503-MOB-MKM |
| In re Electronic Throttle Bodies | : | Case No. 2:13-cv-02603-MOB-MKM |
| | : | |
| THIS DOCUMENT RELATES TO | : | |
| | : | |
| End-Payor Actions | : | |

**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is made and entered into this 26th day of March, 2015 ("Execution Date") between Hitachi Automotive Systems, Ltd. ("HIAMS"), and End-Payor Plaintiff Class Representatives ("End-Payor Plaintiffs"), both individually and on behalf of class(es) of end-payor indirect purchasers of Alternators, Starters, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices, Air Flow Meters, and Electronic Throttle Bodies ("Settlement Classes") as more particularly defined in Paragraph 14 below.

WHEREAS, End-Payor Plaintiffs are prosecuting the above *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) which includes Case No. 2:13-cv-00703 ("Alternators Action"), Case No. 2:13-cv-01103 ("Starters Action"), Case No.

1

2:13-cv-01403 ("Ignition Coils Action"), Case No. 2:13-cv-01503 ("Motor Generators Action"), Case No. 2:13-cv-01803 ("Inverters Action"), Case No. 2:13-cv-02003 ("Air Flow Meters Action"), Case No. 2:13-cv-02203 ("Fuel Injection Systems Action"), Case No. 2:13-cv-02503 ("Valve Timing Control Devices Action"), and Case No. 2:13-cv-02603 ("Electronic Throttle Bodies Action") (together, "Actions") on their own behalf and on behalf of the Settlement Class(es) against, among others, HIAMS and its affiliated companies, Hitachi Automotive Systems Americas, Inc. and Hitachi, Ltd. (collectively, "HIAMS Defendants").[1]

WHEREAS, End-Payor Plaintiffs allege that they were injured as a result of the HIAMS Defendants' participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, allocate markets and customers for (1) Alternators in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Alternators Complaint"); (2) Starters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Starters Complaint"); (3) Ignition Coils in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Ignition Coils Complaint"); (4) Motor Generators in violation of Section 1 of

---

[1] On December 12, 2014, End-Payor Plaintiffs filed their Notice of Intent to File Consolidated Amended Class Action Complaints and Add New Defendants (*see*, *e.g.*, Case No. 2:13-cv-02203, ECF No. 16), in which they stated the consolidated amended class action complaint to be filed in the Fuel Injection Systems Action will consolidate their claims previously asserted in the Air Flow Meters Action and Electronic Throttle Bodies Action. If the parties agree to the consolidation of these actions, Plaintiffs will amend the definition of the Fuel Injection Systems Settlement Class to include the Air Flow Meters and Electronic Throttle Bodies Settlement Classes and dismiss HIAMS from the Air Flow Meters and Electronic Throttle Bodies Actions.

the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Motor Generators Complaint"); (5) Inverters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Inverters Complaint"); (6) Fuel Injection Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Fuel Injection Systems Complaint"); (7) Valve Timing Control Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Valve Timing Control Systems Complaint"); (8) Electronic Throttle Bodies in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Electronic Throttle Bodies Complaint"); and (9) Air Flow Meters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in End-Payor Plaintiffs' Consolidated Amended Class Action Complaint ("Air Flow Meters Complaint") (collectively "Complaints");

WHEREAS, HIAMS Defendants deny End-Payor Plaintiffs' allegations and would assert defenses to End-Payor Plaintiffs' claims;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and counsel for HIAMS and this Agreement has been reached as a result of those negotiations;

WHEREAS, End-Payor Plaintiffs have conducted an investigation into the facts and the law regarding the Actions and have concluded that resolving the claims asserted in those Actions against the HIAMS Defendants, according to the terms set forth below, is in the best interest of End-Payor Plaintiffs and the Settlement Classes because of the payment of the Settlement Amount and the value of the Cooperation (as those terms are defined below) that HIAMS has agreed to provide pursuant to this Agreement;

WHEREAS, the Actions will continue against Defendants (as defined below) that are not Releasees (as defined below);

WHEREAS, HIAMS, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against the HIAMS Defendants with respect to Alternators, Starters, Air Flow Meters, Electronic Throttle Bodies, Ignition Coils, Motor Generators, Inverters, Fuel Injection Systems, Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices), based on the allegations in the Actions, as more particularly set out below (collectively, "Alleged Parts"), Automotive Transmission Control Units, Automotive Engine Control Units, or Automotive Sensors;

WHEREAS, HIAMS has agreed to provide Cooperation (as defined below) to End-Payor Plaintiffs in the ongoing prosecution of the Actions as set forth in this Agreement, and represents that such Cooperation will reduce End-Payor Plaintiffs' substantial burden and expense associated with prosecuting the Actions; and

WHEREAS, End-Payor Plaintiffs recognize the benefits of HIAMS's Cooperation and recognize that because of joint and several liability, this Agreement with HIAMS does not impair End-Payor Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Classes (as defined below) may be entitled to in the Actions from non-Releasees, including the damages attributable to the HIAMS Defendants' alleged conduct:

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Actions be settled, compromised, and dismissed on the merits with prejudice as to the Releasees, as defined below, and except as hereinafter provided, without costs as to End-Payor Plaintiffs, the Settlement Classes, HIAMS or other Releasees, subject to the approval of the Court, on the following terms and conditions:

A.    Definitions

1.    "Cooperation" shall refer to those provisions set forth below in Paragraphs 35 - 46.

2.    "Cooperation Materials" means any information, testimony, Documents (as defined below) or other material provided by HIAMS under the terms of this Agreement.

3.    "Defendant" means any party named as a defendant in the Actions at any time up to and including the date of Final Court Approval (as defined below).

4.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, electronically stored information.  A draft or non-identical copy of a document is a separate document within the meaning of this term.

5.     "English Translations" means English translations of documents that were originally written in a language other than English that HIAMS has provided to Government Entities (as defined below) relating to their investigations into alleged competition violations with respect to Released Parts (as defined below).

6.     "End-Payor Plaintiff Class Representatives" means those Settlement Class Members, as defined in Paragraph  17, who are named plaintiffs in the Complaints.

7.     "Indirect Purchaser States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

8.     For purposes of this Agreement, "Alternators," "Starters," "Ignition Coils," "Motor Generators," "Inverters," "Valve Timing Control Devices," "Fuel Injection Systems," "Air Flow Meters," and "Electronic Throttle Bodies" shall have the same meaning as set forth in the Complaints at the time this Agreement is executed. For the purposes of this Agreement, "Automotive Engine Control Units" are devices that calculate the optimal quantity of fuel to inject and the ignition timing based on signals from various sensors that detect information relating to, for example, the revolutions of the engine and the driver's use of the throttle pedal.  "Automotive Engine Control Units" also send signals communicating the results of these calculations to the injectors and ignition coils.  For the purposes of this Agreement, "Automotive Transmission Control Units" are devices that optimize the transmission shift timing and the transmission ratio based on the signals from the various sensors, including those for throttle opening, coolant temperature, and speed.  "Automotive Transmission Control Units" also send signals to the oil

pressure solenoid valve and control the transmission. For the purposes of this Agreement, "Automotive Sensors" are devices that detect critical internal and external vehicle parameters and transmit those signals to the vehicle's computer modules.

9.  "Opt-Out Deadline" means the deadline set by the Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class(es).

10.  "Released Claims" are all claims and potential claims against Releasees that are released by this Agreement as described in Paragraphs 25 and 26 herein.

11.  "Released Parts" refer to Alternators, Starters, Air Flow Meters, Electronic Throttle Bodies, Ignition Coils, Motor Generators, Inverters, Automotive Transmission Control Units, Automotive Engine Control Units, Automotive Sensors, Fuel Injection Systems, and Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices).

12.  "Releasees" refer to Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc., Hitachi, Ltd., Clarion Co., Ltd., Hitachi Vehicle Energy, Ltd. and HIAMS's subsidiaries, parents, affiliates, and predecessors. Notwithstanding, for the purposes of this Agreement, Releasees do not include Hitachi Metals, Ltd. (including the former Hitachi Cable, Ltd.) and Hitachi Chemical Co., Ltd.

13.  "Releasors" refer to the Settlement Class Members, as defined in Paragraph 17, below, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing.

14. For purposes of this Agreement, the "Settlement Classes" are defined as follows:

(a) "Alternators Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Alternators in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Alternators directly or for resale.

(b) "Starters Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Starters in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Starters directly or for resale.

(c) "Ignition Coils Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Ignition Coils in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Ignition Coils directly or for resale.

(d) "Motor Generators Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Motor Generators in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and

instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Motor Generators directly or for resale.

      (e)     "Inverters Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Inverters in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Inverters directly or for resale.

      (f)     "Fuel Injection Systems Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Fuel Injection Systems in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Fuel Injection Systems directly or for resale.

      (g)     "Valve Timing Control Devices Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Valve Control Timing Devices in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Valve Timing Control Devices directly or for resale.

      (h)     "Air Flow Meters Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Air Flow Meters in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product.

Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Air Flow Meters directly or for resale.

(i) "Electronic Throttle Bodies Settlement Class" is defined as:

All persons and entities from January 1, 2000 through the Execution Date of this Agreement between HIAMS and End-Payor Plaintiffs who: indirectly purchased and/or leased one or more Electronic Throttle Bodies in the United States not for resale (1) as a component in a new vehicle or (2) as a stand-alone product. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Electronic Throttle Bodies directly or for resale.

15. "Class Period" is from January 1, 2000 through the Execution Date of this Agreement.

16. "Settlement Class Counsel" shall refer to the law firms of:

Cotchett, Pitre, & McCarthy LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Robins Kaplan LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022

Susman Godfrey L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067

17. "Settlement Class Member" means each member of the Settlement Classes who has not timely elected to be excluded from the Settlement Classes.

18.     "Settlement Amount" shall be USD 46,740,000.00 and any income or interest earned upon this sum after it is deposited into the Escrow Account(s) (as defined below).  The allocation of the Settlement Amount to the Settlement Classes defined in Paragraph 14 above shall be determined by Settlement Class Counsel and subject to approval by the Court after notice to the Settlement Classes as directed by the Court.

B.     Approval of this Agreement and Dismissal of Claims Against HIAMS Defendants

19.     End-Payor Plaintiffs and HIAMS shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rule of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Actions as to the Releasees only.

20.     After notice to HIAMS, End-Payor Plaintiffs shall in each Action submit to the Court a motion seeking preliminary approval ("Preliminary Approval") of this Agreement ("Motions").  The Motions shall include the proposed form of an order preliminarily approving this Agreement.  The text of the proposed form of an order preliminarily approving this Agreement shall be subject to good faith efforts to agree by End-Payor Plaintiffs and HIAMS before submission of the Motions. End-Payor Plaintiffs and HIAMS agree to use their best efforts to obtain Preliminary Approval from the Court by April 15, 2015.

21.     After notice to HIAMS, End-Payor Plaintiffs shall, at a time to be decided in their sole discretion, in each Action submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all members of the Settlement Classes identified by End-Payor Plaintiffs ("Notice Motions").  To mitigate the costs of notice, End-Payor Plaintiffs shall endeavor to disseminate a combined notice to the Settlement

Classes of this settlement and any other settlements that have been or are reached by the time of the Notice Motions. The Notice Motions shall include a proposed form of, method for, and date of dissemination of notice in each Action.

22. End-Payor Plaintiffs shall seek, and HIAMS will not object unreasonably to, the entry of an order and final judgment in each Action, the text of which End-Payor Plaintiffs and HIAMS shall agree upon. The terms of such orders and final judgments will include, at a minimum, the substance of the following provisions:

(a) certifying the Settlement Classes described in Paragraph 14, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class for each Action;

(b) as to the Actions, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c) as to the HIAMS Defendants, directing that the Actions be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(d) reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, as well as over HIAMS, for the duration of its provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan;

(e)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgments of dismissal in each Action as to the HIAMS Defendants shall be final; and

(f)     providing that (1) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including HIAMS (if this settlement is vacated or terminated), to contest certification of any other class proposed in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311, (2) the Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311; and (3) no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any contested motion to certify any such class.

23.     This Agreement shall become final when (1) the Court has entered in each Action a final order certifying the Settlement Class(es) described in Paragraph 14 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to the HIAMS Defendants against all Settlement Class Members and without costs other than those provided for in this Agreement, and (2) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to the HIAMS Defendants described in (1) hereof has expired in each Action and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the judgment or final approved order in each Action or to toll the time for appeal of the judgment in each Action or, if appealed, approval of this Agreement and the final judgment in each Action as to the HIAMS Defendants has been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer

subject to further appeal or review ("Final Court Approval").  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  On the date that End-Payor Plaintiffs and HIAMS have executed this Agreement, End-Payor Plaintiffs and HIAMS shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 28(g), 47 or 48 of this Agreement.

24.     Neither this Agreement (whether or not it should become final) nor the final judgment in each of the Actions, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by HIAMS or the Releasees, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by HIAMS or the Releasees, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Actions, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Actions or in any other action or proceeding against the HIAMS Defendants and any other Releasees.  Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by HIAMS, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.  Nothing in this Paragraph shall prevent End-Payor Plaintiffs from using Cooperation Materials produced pursuant to Paragraphs 35 - 46 for the prosecution of the claims in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311.

C.     <u>Release, Discharge, and Covenant Not to Sue</u>

14

25.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 23 of this Agreement, and in consideration of payment of the Settlement Amount as specified in Paragraph 27 of this Agreement,  and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to this Agreement or makes a claim upon or participates in the Settlement Amount whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way related to, the conduct alleged in the Complaints or any act or omission of the Releasees (or any of them), concerning all Released Parts, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action or other complaints filed in the Actions concerning Released Parts, provided, however, that nothing herein shall release:  (1) any claims made by direct purchasers of Released Parts; (2) any claims made by automotive dealerships that are indirect purchasers of Released Parts in *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) ("Automotive Dealership Plaintiffs"); (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties relating to Released Parts; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities, or similar claim relating to Released Parts; (5) claims concerning any automotive part other than Released Parts; (6) claims under laws other than those of the United States and the states thereof; and (7) claims for damages under the state law or local laws of any jurisdiction other than an

Indirect Purchaser State. ("Released Claims").   Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims unless this Agreement is, for any reason, not finally approved or terminated.

26.     In addition to the provisions of Paragraph 25 of this Agreement, Releasors hereby expressly waive and release, with respect to the Released Claims, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR[;]

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to section 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 25 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that HIAMS and End-Payor Plaintiffs have agreed to release pursuant to Paragraph  25, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.     Settlement Amount

27.     Subject to the provisions hereof, and in full, complete and final settlement of the Actions as provided herein, HIAMS shall pay or cause to be paid the Settlement Amount.  The

Settlement Amount shall be paid in United States Dollars into an escrow account or accounts to be administered in accordance with the provisions of Paragraph 28 of this Agreement ("Escrow Account(s)") within thirty (30) days following execution of this Agreement and being provided with account number, account name, and wiring information for the Escrow Account(s).  No part of the Settlement Amount paid by HIAMS shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures or punitive recoveries.

E.      Escrow Account(s)

28.     (a)     The Escrow Account(s) will be established at Wells Fargo Bank  with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Settlement Class Counsel and HIAMS, such escrow to be subject to the Court's supervision and control.

(b)     The Escrow Agent shall cause the Settlement Amount to be deposited into the applicable Escrow Account(s) to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.  HIAMS shall bear no risk related to the Settlement Amount.  All funds held in the Escrow Account(s) shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement or further order(s) of the Court.

(c)     End-Payor Plaintiffs and HIAMS agree to treat the Settlement Amount as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  In

17

addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 28, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Amount being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.

(d)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator for the Escrow Account(s) shall be an independent consulting firm or certified public accounting firm designated by and under supervision of Settlement Class Counsel. ("Tax Administrator")   The Tax Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Amount (including without limitation the returns described in Treasury Regulation § 1.468B-2(k) and (l)). Such returns (as well as the election described in Paragraph 28(c)) shall be consistent with Paragraph 28(c) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Amount shall be paid out of the Settlement Amount as provided in Paragraph 28(f) hereof.

(e)     All (1) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Amount, including any taxes or tax detriments that may be imposed upon HIAMS or any Releasee with respect to any income earned by the

Settlement Amount for any period during which the Settlement Amount does not qualify as a Qualified Settlement Fund for federal or state income tax purposes ("Taxes"); and (2) expenses and costs incurred in connection with the operation and implementation of Paragraph 28(c) through (f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 28 ("Tax Expenses")), shall be paid out of the Settlement Amount.  For the purpose of Paragraph 28(b) through (f), references to the Settlement Amount shall include the Settlement Amount and any earnings thereon after being deposited in the Escrow Account(s).

(f)     Neither HIAMS nor any Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other taxing authority.  The Escrow Agent and/or Class Counsel shall indemnify and hold HIAMS and the Releasees harmless for Taxes and Tax Expenses (including taxes payable by reason of such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Amount and shall be timely paid by the Tax Administrator out of the Settlement Amount without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)).  HIAMS or any Releasees shall not be responsible or have any liability therefor or for any reporting requirements that may relate thereto.  End-Payor Plaintiffs and HIAMS agree to cooperate with the Escrow Agent, each other, and their tax

attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraph 28(c) through (f).

(g)     If this Agreement does not receive Final Court Approval, including final approval of the Settlement Classes as defined in Paragraph 14, or if the Actions are not certified as class actions for settlement purposes, then the Settlement Amount (other than costs expended or incurred in accordance with Paragraph 30), shall be returned to HIAMS from the applicable Escrow Account(s) by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days of the Court's final determination.

F.     Exclusions

29.     Subject to Court approval, any person or entity seeking exclusion from the Settlement Class(es) must file a written request for exclusion by the Opt-Out Deadline, which shall be the date set by the Court by which any class member must request exclusion from the Settlement Class(es).  Any person or entity that files such a request shall be excluded from the Settlement Class(es) and shall have no rights with respect to this settlement.  Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Agreement upon Final Court Approval.  Settlement Class Counsel shall, within ten (10) business days of the Opt Out Deadline, provide HIAMS with a list and copies of all opt out requests it receives in each of the Actions and shall file under seal with the Court a list of all members of the Settlement Classes who timely and validly opted out of the settlement.

(a)     Subject to Court Approval, any member of the Settlement Class(es) who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be

bound by the terms of this Agreement. HIAMS reserves all of its legal rights and defenses, including but not limited to any defenses relating to whether any excluded member of the Settlement Classes is an indirect purchaser of Released Parts.

(b)    Subject to Court Approval, in the written request for exclusion, the member of the Settlement Classes must state his, her, or its full name, address, and telephone number.  Further, the member of Settlement Classes must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the settlement.

(c)    HIAMS or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

G.    Payment of Expenses

30.    HIAMS agrees to permit use of a maximum of USD 1,000,000 of the Settlement Amount on a non-recoupable basis towards the cost of providing notice to the Settlement Classes and the costs of administration of the Settlement Amount after it is paid into the Escrow Account(s).  To the extent such expenses have been paid or incurred for notice and administration costs, the notice and administration expenses (up to the maximum of USD 1,000,000) are not recoupable if this settlement does not become final or is terminated. All remaining expenses shall be recoupable if this Agreement does not become final or is terminated.  Other than as set forth in this Paragraph 30, HIAMS shall not be liable for any of the costs or expenses of the litigation incurred by End-Payor Plaintiffs in the Actions, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion

21

practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Settlement Class administration and costs.

     H.    <u>The Settlement Amount</u>

    31.    Releasors shall look solely to the Settlement Amount for settlement and satisfaction against the Releasees of all Released Claims, and shall have no other recovery against HIAMS or any Releasee for any Released Claims.

    32.    After this Agreement becomes final within the meaning of Paragraph 23, the Settlement Amount shall be distributed in accordance with plans to be submitted at a time to be determined in the sole discretion of Settlement Class Counsel, subject to approval by the Court.  In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Amount, including, but not limited to, the costs and expenses of such distribution and administration, with the exception of the provisions set forth in Paragraph 30 of this Agreement.

    33.    End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed subject to Court approval and indemnified solely out of the Settlement Amount for their costs and expenses. HIAMS and the Releasees shall not be liable for any costs, fees, or expenses of any of End-Payor Plaintiffs' or the Settlement Classes' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Amount.

    I.    <u>Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives</u>

    34.    (a)    Settlement Class Counsel may, after Preliminary Approval of this Agreement at a time to be determined in their sole discretion, submit an application to the Court

("Fee and Expense Application") for the following payments to be made to Settlement Class Counsel after Final Court Approval of this Agreement: (1) an award of attorneys' fees not in excess of one-third of the Settlement Amount, plus (2) reimbursement of expenses and costs incurred in connection with prosecuting the Actions and incentive awards, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Amount (until paid) as may be awarded by the Court ("Fee and Expense Award"). Settlement Class Counsel reserve the right to make additional applications from time to time for fees and expenses incurred and reasonable incentive awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Amount.

(b)    Subject to Court approval and except as provided herein, End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Amount for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses.  Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Amount upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Amount, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event this Agreement is rescinded or terminated pursuant to Paragraphs 47 or 48.

(c)    The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and incentive awards for class representatives to be paid out of the Settlement Amount are not part of this

Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Neither HIAMS nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel of any Fee and Expense Award in the Actions.

(e)     Neither HIAMS nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

J.     <u>Cooperation</u>

35.     In return for the release and discharge provided herein, in addition to the Settlement Amount it will pay, HIAMS agrees to provide substantial Cooperation to End-Payor Plaintiffs as set forth below.  All such Cooperation shall occur in a manner that is in compliance with HIAMS's obligations to any Government Entity (as defined below).  HIAMS shall not be required to provide documents protected by the work product doctrine, attorney-client privilege, prohibited by the relevant antitrust agencies and/or by the law of the relevant foreign jurisdictions, or prohibited by court order.  Cooperation shall be limited to Released Parts and shall not include information relating to other parts manufactured by HIAMS and/or Releasees.

36.     Within thirty (30) days of the Preliminary Approval, counsel for HIAMS shall provide Settlement Class Counsel with the names of all current and former employees, directors and officers of the HIAMS Defendants who: (1) were interviewed and/or prosecuted by the United

States Department of Justice ("DOJ"), the Japanese Fair Trade Commission, the European Commission, or any other government entity (collectively referred to herein as "Government Entities") in connection with alleged violations with regard to any Released Parts; (2) appeared before the grand jury in connection with the DOJ's investigation into alleged antitrust violations with respect to any Released Parts; and/or (3) were disclosed to a Government Entity as having knowledge or information relating to investigations into alleged violations with respect to any Released Parts. Counsel for HIAMS shall not be required to disclose to Settlement Class Counsel the specific Government Entities to which each such current or former employee, director or officer of the HIAMS Defendants was identified to or appeared before.

37. Except as set forth herein, HIAMS will use its best efforts to substantially complete the production of the following Documents within the time frames set forth in this Paragraph 37 to the extent such Documents have not already been produced to Settlement Class Counsel and excluding those Documents protected by the work product doctrine or the attorney-client privilege, prohibited by the relevant antitrust agencies and/or by the law of the relevant foreign jurisdiction, or prohibited by court order. End-Payor Plaintiffs and Settlement Class Counsel agree that all Documents and any other Cooperation Materials produced by HIAMS pursuant to this Paragraph 37 shall be treated as "Highly Confidential," as said designation is described in the protective orders that will be issued in the Actions ("Protective Orders") unless otherwise agreed by the parties or ordered by the Court, and that they shall not use the information so received for any purpose other than the prosecution of the claims in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311.

(a)      Within thirty (30) calendar days of Preliminary Approval, all transactional data that HIAMS provided to the DOJ (including all English Translations thereof produced to DOJ) relating to Released Parts.

(b)      Within sixty (60) days of Preliminary Approval, Documents, if any, provided to Government Entities as of the Execution Date of this Agreement (including all English Translations thereof provided to those Government Entities) relating to their investigation into alleged competition violations with respect to Released Parts, to the extent they have not already been produced to Settlement Class Counsel, except those documents protected by the work product doctrine or the attorney-client privilege, or prohibited by the relevant antitrust agencies and/or by the law of the relevant foreign jurisdiction, or prohibited by court order.

(c)      At the request of End-Payor Plaintiffs and subject to meet and confer with HIAMS, (i) within one hundred eighty (180) days, pre -existing transactional data related to Released Parts from January 1, 1996 to the Execution Date of this Agreement, and (ii) at a time agreed upon between HIAMS and End-Payor Plaintiffs, transactional data related to Released Parts from the Execution Date of this Agreement until two (2) years from the Execution Date of this Agreement, including the following information:  (1) the date for each bid, price submission, or sale; (2) the price submitted in each bid or price submission;[2] (3) bids and price submissions formulated but not submitted due to agreements or understandings with co-conspirators; (4) the final price of each sale; (5) the purchaser to whom each bid or price submission was submitted and each sale was made; (6) the model, model year(s) and brand of car for which each bid and price submission was submitted and each sale was made, as well as the country of sale of said cars; (7) the total amount of each Released Part sold in each sale; (8) the location where each bid and price submission was

---

[2] Price submission includes any price reduction proposals.

submitted and each sale was made; (9) the HIAMS entity which submitted each bid or price submission and made each sale; (10) the sale agreements and contracts for each sale or price adjustment/reduction; (11) the value engineering and other price adjustments (including price reductions) requested and made to the Released Parts sold in each sale; (12) any ancillary costs associated with each sale such as tooling costs; (13) the identity of any other bids or prices submitted by competitors, including each winning bid; (14) adjustments made to each bid and price submission as it was being formulated; (15) specifications for each bid or price submission; (16) HIAMS entities' profits, losses and margins on the Released Parts; (17) data and documents showing HIAMS entities' costs to produce the Released Parts; and (18) any other transactional data or documents reasonably agreed to in writing between HIAMS's counsel and Settlement Class Counsel.  It is understood that certain categories of the aforementioned information are not maintained by HIAMS in the form of transactional data.  This request does not require HIAMS to compile any data from any less centralized or comprehensive source including without limitation individual invoices, purchase orders, personal computers, backup recording media or devices, hard copy files, or manufacturing facilities.

(d)     Within one hundred eighty (180) days of Preliminary Approval at the request of End-Payor Plaintiffs and subject to a meet and confer with HIAMS  (1) Documents, if any, that relate to or concern the allegations in the Complaints and reflect collusion or attempted collusion with respect to Released Parts, by an employee, officer, or director of HIAMS with any employee, officer or director of another manufacturer or seller of the Released Parts; (2) Documents, if any, concerning HIAMS's determinations of its prices for Released Parts including pricing policies, formulas and guidelines; and (3) Documents, if any, showing how employees were trained or instructed to bid and set prices submitted to purchasers or potential purchasers for Released Parts,

in RFQs, or any other procurement process, including Documents stating the lowest bid or price employees were authorized to submit, how to determine the lowest allowable bid or price, and when and how to increase or decrease a proposed bid or price.

38.     For all Documents withheld from production pursuant to (1) the attorney-client privilege; (2) the work product doctrine; (3) a protective order, or (4) any other applicable privilege or doctrine protecting documents from disclosure, HIAMS shall provide a privilege log ("Privilege Log"), describing such Documents in sufficient detail as to explain the nature of the privilege asserted or the basis of any other law or rule protecting such Documents. No Document shall be withheld under claim of privilege if produced or made available to any Government Entity.   If any Document protected by the attorney-client privilege, attorney work product protection, or any other privilege is accidentally or inadvertently produced under this Paragraph, its production shall in no way be construed to have waived any privilege or protection attached to such Document.   Upon notice by HIAMS of such inadvertent production, the Document shall promptly be destroyed and/or returned to HIAMS.

39.     In the event that HIAMS produces Documents or provides declarations or written responses to discovery to any party or non-party in the actions in *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311, concerning or relating to the Actions ("Relevant Production"), HIAMS shall produce all such Documents, declarations or written discovery responses to End-Payor Plaintiffs contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by HIAMS to End-Payor Plaintiffs.  This Agreement does not restrict Settlement Class Counsel from attending and/or participating in any depositions in *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-2311.  Settlement Class Counsel may attend and/or participate

in any depositions of HIAMS's witnesses in addition to the depositions set forth in Paragraph 40(c), and Settlement Class Counsel together with settlement class counsel for the Automobile Dealership Actions (as defined below) may ask questions for a combined total of three (3) hours at such deposition, provided that the time for participation of Settlement Class Counsel and settlement class counsel for the Automobile Dealerships shall not expand the time permitted for the deposition as may be provided by the Court, and Settlement Class Counsel will not ask the Court to enlarge the time of any deposition noticed of a HIAMS employee.

40.    In addition, HIAMS shall provide Cooperation to Settlement Class Counsel as set forth in this Paragraph 40 (a) through (e). All Cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided. Any Attorney Proffers (as defined below), witness interviews, or depositions provided pursuant to the below obligations, and any request for post-Execution Date transactional data pursuant to Paragraph 37(a), shall be coordinated with, and occur at the same time as, the Attorney Proffers (as defined below), witness interviews, depositions and transactional data production to be provided in a contemporaneous settlement of Master File No. 12-md-02311, Case No. 2:13-cv-00702, Case No. 2:13-cv-01102, Case No. 2:13-cv-01402, Case No. 2:13-cv-01502, Case No. 2:13-cv-01802, Case No. 2:13-cv-02002, Case No. 2:13-cv-02202, Case No. 2:13-cv-02502, and Case No. 2:13-cv-02602 (collectively, "Automobile Dealership Actions"). HIAMS shall make its best efforts (not to include actual or threatened employee disciplinary action) to make available for interviews, depositions, and testimony at trial, or at a mutually agreed-upon location or locations (except for testimony at trial) to the extent relevant laws, regulations and/or government authorities' policy permit up to ten (10) persons for interviews and depositions (as set forth in this Paragraph 40(b) and (c)), and up to ten (10) persons for trial (as set forth in this Paragraph 40(d)) who Settlement

Class Counsel select together with settlement class counsel for the Automobile Dealerships, and which may consist of directors, officers, and/or employees of HIAMS at the time of the specific request pursuant to this Paragraph 40(b), (c) and (d) whom Settlement Class Counsel reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist End-Payor Plaintiffs in the prosecution of the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. It is understood that HIAMS may be unable to make available for interviews, depositions, or trial testimony or any other court proceedings the six (6) individuals referenced in Paragraph 16(a) of the plea agreement between HIAMS and the United States of America (Case No. 2-13-cr-20707, E.D. Mich., ECF No. 8). To the extent that Settlement Class Counsel and settlement class counsel in the Automobile Dealership Actions cannot agree on the selection of ten (10) persons, Settlement Class Counsel, in consultation with HIAMS, may choose five (5) individuals relating to Released Parts for such interviews and depositions and settlement class counsel in the Automobile Dealership Actions, in consultation with HIAMS, may choose five (5) persons relating to Released Parts for such interviews and depositions. The total number of interviews provided pursuant to this Paragraph 40(b) of this Agreement shall be ten (10), and the total number of depositions provided pursuant to this Paragraph 40(c) of this Agreement shall be ten (10). Settlement Class Counsel may participate in all ten (10) depositions and interviews regardless of the selection process.

(a) Within sixty (60) days of Preliminary Approval of this Agreement, counsel for HIAMS will make themselves available in the United States for up to five (5) meetings of one (1) business day each to provide detailed proffers of the relevant facts known to them relating to End-Payor Plaintiffs' allegations of price-fixing, bid-rigging, and market allocation related to Released Products ("Attorney Proffers"). As part of the Attorney Proffers, to the extent not

covered by privilege or other protections available under any applicable statute or laws in the United States or any relevant countries, counsel for HIAMS will provide End-Payor Plaintiffs with facts known to them regarding Documents, witnesses, meetings, communications, agreements with competitors, events, background information, and any other relevant topics, relating to the claims at issue in the Actions, with respect to Released Parts including any such information given to the DOJ.  Counsel for HIAMS will make themselves available for reasonable follow-up conversations in connection with the Attorney Proffers, and will use reasonable efforts to respond to questions posed by Settlement Class Counsel relating to Released Parts.  It is understood that HIAMS has no obligation to seek new or additional information or documents from any of its employees, officers or directors in connection with any of these follow-up conversations or otherwise; however, HIAMS will in good faith consider requests for new or additional information or documents, and will produce such information or documents, if appropriate, in its discretion. End-Payor Plaintiffs and Settlement Class Counsel agree that all Attorney Proffers made by HIAMS's counsel shall be treated as "Highly Confidential," as said designation is described in the Protective Orders that will be issued in the Actions, unless otherwise agreed by the parties or ordered by the Court, and that they shall not use the information so received for any purpose other than the prosecution of their claims in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311, except as otherwise provided in this Agreement.  End-Payor Plaintiffs and Settlement Class Counsel may share information learned in Attorney Proffers with Automobile Dealership Plaintiffs but shall not disclose such information to any other parties including other claimants or potential claimants including direct purchaser plaintiffs, public entity plaintiffs, and opt-out plaintiffs in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311, except with the express written consent of HIAMS. Notwithstanding any other provision of this

31

Agreement, the parties and their counsel further agree that any Attorney Proffers or other statements made by counsel for HIAMS in connection with or as part of this settlement shall be governed by Federal Rule of Evidence 408. Notwithstanding anything herein, Settlement Class Counsel may use (but shall not introduce an Attorney Proffer into the record, or depose or subpoena any HIAMS counsel related to an Attorney Proffer) information contained in such Attorney Proffers or other statements in the prosecution of its claims in all cases in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311, except any claims against Releasees, and rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after reasonable opportunity for further investigation or discovery.

(b)     Upon reasonable notice after Preliminary Approval, HIAMS shall, at Settlement Class Counsel's request, make its best efforts to make available for an interview with Settlement Class Counsel and settlement class counsel in the Automobile Dealership Actions and/or their experts unless otherwise agreed a total of ten (10) persons, including persons relating to Released Parts, who are selected by Settlement Class Counsel, and which may consist of directors, officers, and/or employees of HIAMS at the time of the selection whom the parties reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist End-Payor Plaintiffs in the prosecution of claims for Released Parts in *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311.  Interviews shall each be limited to a total of seven (7) hours over one (1) day.  To the extent that the person to be interviewed requests an interpreter, interviews shall be limited to a total of twelve (12) hours, which would occur over two (2) consecutive days at the request of the interviewee.  Each of the ten (10) persons shall be interviewed only once.  Upon reasonable notice by Settlement Class Counsel, HIAMS shall use its

best efforts to make available by telephone the persons who have been interviewed as set forth in this Paragraph 40(b) to answer follow-up questions for a period not to exceed two (2) hours. If any such interview takes place outside of the country of the witness's residence, Settlement Class Counsel shall reimburse HIAMS for such person's economy class fare and $450 per day for lodging and expenses. If the interview and the below-described deposition occur during the same trip, the above limitations will apply to that trip. Nothing in this provision shall prevent HIAMS from objecting to the reasonableness of the identity and number of persons selected by Settlement Class Counsel and settlement class counsel in the Automobile Dealership Actions to appear for interviews, for depositions, or as trial witnesses.

(c)      Upon reasonable notice after Preliminary Approval, HIAMS shall, at Settlement Class Counsel's request, make its best efforts (1) to make available to appear for deposition up to ten (10) persons including persons relating to each of the Actions who Settlement Class Counsel and settlement class counsel in the Automobile Dealership Actions select from among the same ten (10) persons who have been chosen for interviews pursuant to this Paragraph 40 (b), and (2) to provide up to ten (10) declarations/affidavits from the same persons who have been chosen for interviews and depositions pursuant to this Paragraph 40(b) and (c). If HIAMS is unable to make those same persons available for deposition then Settlement Class Counsel may select another person. HIAMS shall use its best efforts to make that person available, and that person would then count towards the ten (10) person deposition limit. Each deposition shall be conducted at a mutually agreed upon location at a mutually agreed upon time and shall each be limited to a total of seven (7) hours over one (1) day. To the extent that the person to be deposed requests an interpreter, the deposition shall be limited to a total of twelve (12) hours, seven (7) of which would occur over two (2) consecutive days at the request of the deponent unless such condition is

inconsistent with the deposition protocol set forth in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311.  Written notice by Settlement Class Counsel to HIAMS's counsel shall constitute sufficient service of notice for such depositions.  Settlement Class Counsel shall reimburse HIAMS for such deponent's economy class fare and $450 per day for lodging and expenses.  If the deposition and interview occur during the same trip, the above limitations will apply to that trip.  Nothing in this provision shall prevent HIAMS from objecting to the reasonableness of the identity and number of persons selected by Settlement Class Counsel and Automobile Dealership settlement class counsel to appear for interviews, for depositions, or as trial witnesses.

(d)　　Upon reasonable notice, HIAMS shall make reasonable efforts to provide, for trial testimony, if necessary, up to ten (10) persons from among the persons who have been interviewed or deposed pursuant to this Paragraph 40(b) and (c), which may consist of current directors, officers, and/or employees of HIAMS at the time of identification whom the parties reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist End-Payor Plaintiffs in the prosecution of the claims for Released Parts in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311.  HIAMS shall not be required to make any individual available to testify more than once in any case.  Settlement Class Counsel shall reimburse HIAMS for such witness's economy class fares and $450 per day for lodging and expenses, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered.  Nothing in this provision shall prevent HIAMS from objecting to the reasonableness of the identity and number of persons selected by Settlement Class Counsel and settlement class counsel for the Automobile Dealership Actions to appear for interviews, for depositions, or as trial witnesses.

(e)      In addition to its Cooperation obligations set forth herein, at the request of End-Payor Plaintiffs and subject to meet and confer with HIAMS, HIAMS agrees to produce through affidavit(s) or declaration(s) and/or at trial, if necessary, representatives qualified to authenticate and/or establish as business records any of HIAMS's Documents including transaction and/or cost data produced or to be produced, and to the extent possible, any Documents produced by Defendants or third-parties in the Actions.  In addition, if not unduly burdensome, HIAMS agrees to produce through affidavit(s) or declaration(s) and/or at trial, if necessary, representatives qualified to establish any other necessary foundation for admission into evidence. The provisions in this Paragraph 40(e) do not apply to any English Translations or any other translations produced to End-Payor Plaintiffs.

(f)      End-Payor Plaintiffs and Settlement Class Counsel agree they will not use the information provided by HIAMS or the Releasees or their representatives under Paragraph 40 for any purpose other than the prosecution of the claims in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 except for any such claims against HIAMS or the Releasees and will not use it beyond what is reasonably necessary for the prosecution of those claims or as otherwise required by law.  All Documents and other information provided pursuant to this Agreement will be deemed "Highly Confidential," as said designation is described in the Protective Orders that will be issued in the Actions, unless otherwise agreed or ordered by the Court.

41.      Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, HIAMS's obligations to provide Cooperation with respect to any Released Product under this Agreement shall continue only until otherwise ordered by the Court, or the date that final judgment has been entered in the Actions against all Defendants.

42.     If this Agreement is rescinded, disapproved, otherwise fails to take effect, or if final judgment has been entered in the Actions against All Defendants (collectively "Final Termination"), unless otherwise agreed by HIAMS, within sixty (60) days after Final Termination, End-Payor Plaintiffs must return all Cooperation Materials received from HIAMS including all copies, abstracts, compilations, summaries or any other form that reproduces or captures any of the Cooperation Materials.   With permission in writing from HIAMS, End-Payor Plaintiffs may destroy some or all of the Cooperation Materials instead of returning them.   Whether the Cooperation Materials are returned or destroyed, End-Payor Plaintiffs must submit a written certification to HIAMS by the sixty (60) day deadline that identifies (by category, where appropriate) all Cooperation Materials that were returned or destroyed and that affirms that End-Payor Plaintiffs have not retained any copies, abstracts, compilations, summaries or other form that reproduces or captures any of the Cooperation Materials.

43.     In the event that this Agreement fails to receive Final Court Approval by the Court as contemplated in Paragraphs 19 - 24 hereof, including final approval of "the Settlement Classes" as defined in Paragraph  14, or in the event that it is terminated by either party under any provision herein, the parties agree that neither End-Payor Plaintiffs nor Settlement Class Counsel shall be permitted to use or introduce into evidence against HIAMS and other Releasees, at any hearing or trial, or in support of any motion, opposition or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Actions, any deposition testimony or any Documents provided by HIAMS and/or the Releasees, their counsel, or any individual made available by HIAMS pursuant to Cooperation (as opposed to from any other source or pursuant to a court order).   Notwithstanding anything contained herein, End-Payor Plaintiffs and the Settlement Classes are not relinquishing any rights to pursue

discovery against HIAMS and other Releasees in the event that this Agreement fails to receive Final Court Approval in each Action as contemplated in Paragraphs 19 - 24 hereof, including final approval of the "Settlement Classes" as defined in Paragraph 14, or in the event that it is terminated by either party under any provision herein.

44.     HIAMS and other Releasees need not respond to formal discovery requests from End-Payor Plaintiffs or otherwise participate in the Actions during the pendency of this Agreement, with the exception of the Cooperation provisions set forth above.  Other than to enforce the terms of this Agreement, neither HIAMS nor End-Payor Plaintiffs shall file motions against the other, in the Actions, during the pendency of this Agreement.

45.     HIAMS and End-Payor Plaintiffs agree not to disclose publicly or to any other person, except for Releasees where necessary, the terms of this Agreement until this Agreement is submitted to the Court for Preliminary Approval.

46.     If Settlement Class Counsel believes that any current employee, officer, or director of HIAMS has refused to cooperate under the terms of this Agreement, Settlement Class Counsel may seek an Order from the Court compelling such a current employee, officer or director of HIAMS to provide discovery.  Any court order may not infringe on a witness's applicable constitutional or legal rights against self-incrimination.

K.     Rescission if this Agreement Is Not Approved or Final Judgments Are Not Entered

47.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify Settlement Class(es) in accordance with the specific settlement class definitions set forth in this Agreement at Paragraph 14, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgments provided for in Paragraph 23 of this

Agreement, or if the Court enters the final judgments and appellate review is sought, and on such review, such final judgments are not affirmed in its entirety, then HIAMS and End-Payor Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 57. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from any of the Settlement Amount shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

48.     In the event that this Agreement does not become final, or this Agreement otherwise is terminated by either party under any provision herein then: (1) this Agreement shall be of no force or effect; (2) any and all parts of the Settlement Amount caused to be deposited in the Escrow Account(s) (including interest earned thereon) shall be returned forthwith to HIAMS less only disbursements made in accordance with Paragraph 30 of this Agreement; and (3) HIAMS shall be entitled to any tax refunds owing to the Settlement Amount. At the request of HIAMS, the Tax Administrator shall file claims for any tax refunds owed to the Settlement Amount and pay the proceeds, after deduction of any fees and expenses incurred with filing such claims for tax refunds, to HIAMS. HIAMS expressly reserves all of their rights and defenses if this Agreement does not become final.

49.     Further, and in any event, End-Payor Plaintiffs and HIAMS agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by HIAMS, or the Releasees, to be used against HIAMS and other Releasees (except to enforce this Agreement), or of the truth of any of the claims or allegations contained in the Complaints or any other pleading

filed in the Actions, or by any person or entity in any other action, to be used against HIAMS and other Releasees and evidence thereof shall not be discoverable or used in any way, whether in the Actions or in any other action or proceeding, against HIAMS and other Releasees. Nothing in this Paragraph shall prevent End-Payor Plaintiffs from using Cooperation Materials produced pursuant to Paragraphs 35 - 46, subject to the limitations in those paragraphs, for the purpose of prosecution of the claims in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md- 02311, except as to any such claims against HIAMS or Releasees.

50.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as cooperation by HIAMS.

51.     The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 19 - 24 hereof, appropriate notice (1) of the settlement; and (2) of a hearing at which the Court will consider the approval of this Agreement, will be given to Settlement Classes.

L.     Miscellaneous

52.     HIAMS shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

53.     This Agreement does not settle or compromise any claim by End-Payor Plaintiffs or any Settlement Class Member asserted in the Complaints or, if amended, any subsequent Complaints, against any Defendant or alleged co-conspirator other than the Releasees. All rights against such other defendants or alleged co-conspirators are specifically reserved by End-Payor

Plaintiffs and the Settlement Classes. All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than the Releasees, for sales made by the HIAMS Defendants and the HIAMS Defendants' alleged illegal conduct are specifically reserved by End-Payor Plaintiffs and Settlement Class Members. HIAMS Defendants' sales to the Settlement Classes and the HIAMS Defendants' alleged illegal conduct shall remain in the Actions as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Actions or other persons or entities other than the Releasees.

54.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by End-Payor Plaintiffs and HIAMS. This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of laws principles. HIAMS will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

55.     This Agreement constitutes the entire, complete and integrated agreement among End-Payor Plaintiffs and HIAMS pertaining to the settlement of the Actions against the HIAMS Defendants, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between End-Payor Plaintiffs and HIAMS in connection herewith. This Agreement may not be modified or amended except in writing executed by End-Payor Plaintiffs and HIAMS, and approved by the Court.

56.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of End-Payor Plaintiffs and HIAMS.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by End-Payor Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees other than HIAMS that are parties hereto are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.  This Agreement may be executed in counterparts by End-Payor Plaintiffs and HIAMS, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

57.     Neither End-Payor Plaintiffs nor HIAMS shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

58.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile, or electronic mail, or letter by

overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

59.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated:  March 26, 2015

Frank C. Damrell
Steven N. Williams
Adam J. Zapala
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

42

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Attorneys for Plaintiffs and Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiff Classes*

Craig P. Seebald
Alden L. Atkins
Lindsey R. Vaala
Vincent C. van Panhuys
**Vinson & Elkins, L.L.P.**
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6585
Facsimile: (202) 879-8995
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com
vvanpanhuys@velaw.com

*Attorneys for Hitachi Automotive Systems, Ltd.*

43

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
*Attorneys for Plaintiffs and Interim*
*Co-Lead Class Counsel for the Proposed*
*End-Payor Plaintiff Classes*

Craig P. Seebald
Alden L. Atkins
Lindsey R. Vaala
Vincent C. van Panhuys
**Vinson & Elkins, L.L.P.**
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6585
Facsimile: (202) 879-8995
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com
vvanpanhuys@velaw.com

*Attorneys for Hitachi Automotive Systems,*
*Ltd.*

US 3310096v.15

43