# Exhibit B

Case 2:12-md-02311-SFC-RSW ECF No. 927-3, PageID.12171 Filed 04/02/15 Page 2 of 18
Status Conference / Motion Hearings • January 28, 2015

1

```
 1                UNITED STATES OF AMERICA

 2               EASTERN DISTRICT OF MICHIGAN

 3                     SOUTHERN DIVISION

 4                        -   -   -

 5
     IN RE:  AUTOMOTIVE PARTS         Master File No. 12-md-02311
 6   ANTITRUST LITIGATION             Hon. Marianne O. Battani

 7   _____/

 8
                  STATUS CONFERENCE / MOTION HEARINGS
 9
               BEFORE THE HONORABLE MARIANNE O. BATTANI
10                    United States District Judge
              Theodore Levin United States Courthouse
11                 231 West Lafayette Boulevard
                          Detroit, Michigan
12                 Wednesday, January 28, 2015

13   APPEARANCES:

14
     Direct Purchaser Plaintiffs:
15

16   WILLIAM G. CALDES
     SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
17   1818 Market Street, Suite 2500
     Philadelphia, PA  19103
18   (215) 496-0300

19
     MANUEL J. DOMINGUEZ
20   COHEN MILSTEIN
     3507 Kyoto Gardens Drive, Suite 200
21   Palm Beach Gardens, FL  33410
     (561) 578-6850

22

23   DAVID H. FINK
     FINK & ASSOCIATES LAW
24   100 West Long Lake Road, Suite 111
     Bloomfield Hills, MI  48304
25   (248) 971-2500
```

```
 1   we will notify the plaintiffs -- the defendants in the other
 2   cases of the depositions, provide the transcripts subject to
 3   the plaintiffs' agreement, and also provide our preparation
 4   materials in an effort to avoid duplication across the auto
 5   parts cases.  And during the course of the submissions and
 6   also in the mediation the end payers and auto dealers both
 7   represented to us and to the Court that they are dropping or
 8   withdrawing their claims based on purchases of replacement
 9   parts in the wire harness case, and so we would like that to
10   be confirmed.  And we also would like both the end payers and
11   auto dealers to inform the Court as to whether they intend to
12   pursue those claims in the other auto parts cases or whether
13   they have also dropped the claims in those other cases.
14           Thank you.
15           THE COURT:  So if I understand you correctly, the
16   auto dealers in the wire harness --
17           MS. SULLIVAN:  Correct.
18           THE COURT:  -- have dropped the aftermarket -- the
19   replacement parts claims --
20           MS. SULLIVAN:  Correct.
21           THE COURT:  -- those parts of their cases, okay,
22   but the end payers have not?
23           MS. SULLIVAN:  No, the end payers have as well in
24   the wire harness case.
25           THE COURT:  Okay.
```

Case 2:12-md-02311-SFC-RSW   ECF No. 927-3, PageID.12173   Filed 04/02/15   Page 4 of 18
Status Conference / Motion Hearings • January 28, 2015

23

*1* regard to replacement parts in wire harness, we are reviewing

*2* the other cases and we will let defendants know our

*3* determination as quickly as possible.

*4*     THE COURT:  Thank you.  Ms. Sullivan?

*5*     MS. SULLIVAN:  I apologize, but it was not entirely

*6* clear what the end payers' position is with respect to the

*7* other auto parts, whether he was speaking -- Mr. Williams was

*8* speaking just in the wire harness case or across all the auto

*9* parts cases.  I just want to make sure it is clear.

*10*     THE COURT:  Mr. Williams?

*11*     MR. WILLIAMS:  Thank you.  I apologize if I was not

*12* clear but, yes, what I said about pursuing claims for people

*13* who purchased or leased automobiles with the price-fixed

*14* parts in them applies across the board to all the cases we

*15* presently have filed.  We are not pursuing damage claims for

*16* replacement parts, only parts.

*17*     THE COURT:  In any of the cases?

*18*     MR. WILLIAMS:  Correct.

*19*     THE COURT:  Thank you.

*20*     MR. WILLIAMS:  Thank you.

*21*     THE COURT:  Okay.  Something has come up, and this

*22* may be a first time when I run into a master, as I said, I

*23* haven't used a master before, but I have been thinking about

*24* this deposition protocol and I know -- I can't get into

*25* details with Mr. Esshaki at all because I may be doing

*1* appeals for it, but let me put my two cents' worth in here.

*2*      I was thinking about the depositions for the
*3* individual plaintiffs in all of the auto parts. I have been
*4* thinking about the issue, do you take a deposition of each
*5* plaintiff in each part? That's impossible, that is not going
*6* to happen. First of all, certainly end payers and, unless
*7* somebody could convince me otherwise, auto dealers don't buy
*8* cars by parts, they buy the car. Certainly your end payers
*9* probably don't even know these parts exist in their cars. So
*10* I would assume, and I don't know this, but I would assume
*11* what you want to know is about how much they paid for the car
*12* and where they purchased the car, that type of thing. And I
*13* would also assume that that's true for every defendant would
*14* want this basic information and that this can all be done in
*15* one deposition of a named plaintiff.

*16*      I don't know in detail what you have discussed in
*17* your protocol but, you know, maybe I'm jumping the gun here
*18* but I'm throwing this out because this case has to move along
*19* with a little more swiftness, and that is that it is my
*20* intention to do something -- I mean, if we have to innovative
*21* we will be innovative but that there be one deposition.

*22*      So, Mr. Williams, before I go on, go ahead.

*23*      MR. WILLIAMS: I just want to respond, Your Honor,
*24* to your point. This actually was a matter that the parties
*25* discussed and mediated with Mr. Esshaki.

Case 2:12-md-02311-SFC-RSW   ECF No. 927-3, PageID.12175   Filed 04/02/15   Page 6 of 18
Status Conference / Motion Hearings • January 28, 2015

25

*1*     THE COURT:  See, I'm already interfering with --

*2*     MR. WILLIAMS:  It is in the proposal but I don't

*3* think that rules out us and the defendants and the master, if

*4* he's so willing, from evaluating this in light of the

*5* comments that you have made today.  I think we are all in

*6* favor of efficiencies.

*7*     THE COURT:  Well, I have thought about this and I

*8* know particularly from defendants' point of view, I mean,

*9* maybe each defendant has something unique they want to do so

*10* I thought about this, well, okay, defendants, and you haven't

*11* even answered yet, a lot of you, but that's okay, discovery

*12* can start anyway, we don't need to have the answers to do

*13* discovery, under the rules I can allow it and, of course, I

*14* am in this case.  You can if you want, each of you, submit

*15* questions you would ask of a plaintiff, be it an auto dealer

*16* or an end payer, I don't think the OEMs are a big deal, but

*17* in terms of those two groups you can also submit questions

*18* and then either the master or myself could call those

*19* questions so that you would literally have your questions

*20* asked, so when the person comes in he's going to be asked the

*21* question, or she, only one time, and you could decide for

*22* yourself a group of you that will be taking these depositions

*23* using this script.

*24*     Or another way of doing it is a group of you could

*25* get together and come up with one set of questions so you're

Case 2:12-md-02311-SFC-RSW   ECF No. 927-3, PageID.12176   Filed 04/02/15   Page 7 of 18
Status Conference / Motion Hearings • January 28, 2015

26

1  not all doing it.  Either -- which way I don't care but I
2  want you to have the opportunity to ask, you know, to get the
3  information you need and at the same time only do a single
4  deposition of most of these named plaintiffs.  Granted there
5  may be something that comes up that would require an extra
6  deposition, I don't know what that could be, you would know
7  that, and we would deal with that, but that's kind of what I
8  had in mind for the depositions.  So I just throw that out so
9  when you are doing your protocol it may be a little late but
10 I've just been thinking about this.
11          Ms. Sullivan?
12          MS. SULLIVAN:  I do think that the language that
13 Master Esshaki has instructed the parties to include in the
14 protocol does envision the types of things that you may be
15 thinking about in terms of cooperating with each other and
16 trying to avoid duplication.  This is one of the reasons why
17 I asked for clarification regarding replacement parts because
18 speaking only on behalf of the wire harness defendants, not
19 on behalf of any defendant in any of the other cases, for us
20 it seems much more likely that we will be able to accomplish
21 having only a single deposition of the end payers when if it
22 is true that that's all that they are claiming is damages
23 based on the purchase of a car, and that applies in all of
24 the cases.  Again, I'm not speaking on behalf of any of the
25 other defendants in those other cases but I do expect that we

Case 2:12-md-02311-SFC-RSW ECF No. 927-3, PageID.12177 Filed 04/02/15 Page 8 of 18
Status Conference / Motion Hearings • January 28, 2015

27

1   should be able to accomplish what you are envisioning with
2   respect to the end payers.
3           The auto dealers are differently situated. First,
4   they have not yet withdrawn their replacement part claims in
5   the other cases and that will make a difference, I suspect,
6   because if they are claiming damages based on those other
7   purchases of the other parts the parties in those other cases
8   will need to explore the prices that they paid, whether the
9   prices were negotiated, the prices for which they sold those
10  parts, et cetera, et cetera, and so that will add to the
11  complexity significantly.
12          THE COURT: Unless they drop as they did in the
13  wire harness?
14          MS. SULLIVAN: Correct. In addition, the auto
15  dealers are more complicated as well because of where they
16  sit in the distribution chain, so not only do we need to
17  explore their purchases of cars but also their sales of cars,
18  and that relates to the pass-through issue that Your Honor
19  identified back in the motion to dismiss ruling back in 2013
20  I believe. So those are more complicated depositions. We
21  are hopeful that we will be able to avoid as much duplication
22  as possible. We are making -- we have committed to using our
23  best efforts to do that, and we will take every step that we
24  can think of to try to avoid duplication.
25          THE COURT: Okay. Well, there is not going to be

Case 2:12-md-02311-SFC-RSW ECF No. 927-3, PageID.12178 Filed 04/02/15 Page 9 of 18
Status Conference / Motion Hearings • January 28, 2015

28

```
 1   duplication unless it comes before me first that you need a
 2   second deposition, let me start with that, because we just
 3   cannot start doing two depositions or more of everyone, so
 4   I'm not barring it, I'm just saying I need to know why.
 5             MS. SULLIVAN:  Your Honor, for the wire harness
 6   defendants, our primary concern is that our depositions are
 7   not delayed and because many of the other cases are far
 8   behind us we have been concerned that if there is a ruling
 9   that only one deposition may occur across the entire auto
10   parts MDL that we will then have to wait for those other
11   cases to catch up, and it is very important to us that we not
12   have to wait.  As you know, we have been in discovery in this
13   case for a very long time, and we would like to move forward
14   with our depositions.
15             THE COURT:  Well, you may have to wait, you may
16   have to wait.  I don't think this is a big deal.  I think
17   that every one of these defendants knows right now what
18   information they want from each person.
19             MS. STORK:  Your Honor if I could just say a word?
20   Good morning.  My name is Anita Stork and I represent
21   Alps Electric, with case number 4, heater control panels, and
22   I also represent another defendant who was just recently
23   served in fuel injection systems, namely Tahen (phonetic)
24   North America.
25             I think -- and I know that we are all for
```

1   efficiency and coordination as much as possible, but I think
2   one issue to consider is that the deposition protocol so far
3   has only been negotiated between wire harness defendants and
4   plaintiffs in auto dealers, end payers and also directs, but
5   the defendants in the later cases haven't been involved in
6   that at all so it is a little bit difficult to say that
7   negotiations that one set of defendants is doing now is going
8   to bind everybody in the subsequent 24, 25, however many
9   cases there are.
10              I'm not saying that we are not eager to do this,
11  I'm just saying that some defendants really aren't in a
12  position to know because they have just been served or are
13  recently in the case to know exactly what information they
14  need, and that submitting questions really is no substitute
15  for at some point being able to ask additional questions if
16  you think that's needed.  I mean, I certainly wouldn't
17  contradict anything Your Honor has said -- the Court has said
18  about the approach to it, I'm just suggesting that, one,
19  these later defendants haven't been involved in this
20  negotiation but that secondly one alternative for the Court
21  to consider would be to have depositions of the named
22  plaintiffs sooner rather than later but then keep in reserve
23  like an extra two hours if defendants in later cases feel
24  like they have to ask additional questions and can make a
25  case to the Court that these are additional questions that

1  need to be asked.  It is just very difficult when you have
2  only just been served and other defendants have been in their
3  wire harness case for four years to immediately know what
4  your client who just got the summons really needs to ask.
5          THE COURT:  Okay.
6          MS. STORK:  Thank you, Your Honor.
7          THE COURT:  Mr. Williams?
8          MR. WILLIAMS:  Just speaking on behalf of end
9  payers, we are all in favor of doing whatever we would need
10 to do to avoid duplication.  We had offered across all the
11 cases to make our discovery responses in the first cases
12 available to all defendants, and we think that it makes a lot
13 of sense to think of ways to avoid the duplication.  I think
14 the suggestions the Court made makes a lot of sense.  From
15 the top of my head, an alternative could also be a set of
16 depositions upon written questions for the basic facts of
17 purchases.  There are a lot of creative ways -- really not
18 that creative ways to do this to create efficiencies that the
19 Court is talking about, and we for the end payers will do
20 everything we can to make that happen and to not cause any
21 delay for defendants whether they have been in the cases or
22 whether they are new defendants.
23         THE COURT:  All right.
24         MR. KANNER:  Good morning, Your Honor.
25 Steve Kanner on behalf of direct purchasers.

*1*         We have been listening with interest, and we have
*2* been involved in these discussions.  Of course the direct
*3* purchasers are in a slightly different position, there are
*4* certainly fewer plaintiffs in each of these cases.  And with
*5* respect to wire harness I believe the protocols have largely
*6* been worked out in an extremely cooperative fashion.  Of
*7* course, we also buy the product somewhat differently than the
*8* end payers, we are not buying the cars, we are actually
*9* buying the parts directly, but certainly off the top of my
*10* head I think three plaintiffs who bought -- at least two who
*11* bought wire harness parts and other parts, Findlay and ACAP,
*12* and certainly another client, Tiffin, purchased four or five
*13* different parts directly from the defendants, so we are
*14* certainly in favor of doing whatever is necessary to make the
*15* process more efficient and to have these people sit for one
*16* deposition as opposed to four and five separate times.

*17*         It makes sense -- it certainly makes sense from the
*18* standpoint of the economy of efforts by the attorneys as
*19* opposed to all going to four and five separate depositions,
*20* we can do it at one time.  And to the extent that we can do
*21* this in a written form beforehand, certainly the purchase
*22* information, the defendants from whom we have purchased know
*23* exactly what our clients have purchased, when and for how
*24* much.  So that ought to be considered in terms of how we
*25* streamline this process, and we are certainly open to, as

```
 1   Your Honor suggested, being creative and innovative.
 2              THE COURT:  Okay.
 3              MR. KANNER:  Thank you, Your Honor.
 4              MS. SULLIVAN:  Your Honor, just very briefly to
 5   respond to one of Mr. Williams' suggestion about some form of
 6   written questioning.  We have served written discovery
 7   requests on the plaintiffs and really have not been able to
 8   collect the information that we need from them.  We really do
 9   need to move forward with depositions.  We've been working
10   hard with the plaintiffs to set a class certification
11   schedule, and I believe that that proposed schedule will be
12   filed today with the Court, so we have succeeded in agreeing
13   upon a schedule and it really is critical that we move
14   forward now and take the depositions that we need in the wire
15   harness case so that we can meet those deadlines for class
16   certification that the parties agreed upon.
17              THE COURT:  All right.  I have to tell you, even
18   though I want you to go ahead with the class cert for the
19   wire harness as we discussed at our last meeting, and, again,
20   I think we mentioned this at the last meeting, I don't know
21   that that's going to be the way it is going to go for the
22   future but we need to get one of these class certs under our
23   belt so we see where we are heading, but, but I am not going
24   to allow the depositions to go forward on the one part, I'm
25   simply not going to do that.  You will have to get together
```

Case 2:12-md-02311-SFC-RSW ECF No. 927-3, PageID.12183 Filed 04/02/15 Page 14 of 18
Status Conference / Motion Hearings • January 28, 2015

33

```
 1   and there is some urgency here because wire harness does need
 2   to proceed, but you are going to have to do these depositions
 3   on behalf of all of the defendants.
 4              I'm not asking you to do them written first, you
 5   can start taking your depositions, but what we need to know
 6   what's the template, what's the template of the questions
 7   that are going to be asked, and who amongst the defendants --
 8   which groups are going to actually be taking the depositions.
 9   So you will have to get together, form a group of, I don't
10   know, three, four, five -- well there are a lot of defendants
11   so you can decide how many you want to take the depositions
12   but only one person is going to be questioning at a time.
13   And we are going to hold it up because I think it is well
14   worth it to extend the class cert a little bit in order to
15   get this all done, but I really don't see any reason why it
16   could not be done with, for the most part, a single dep.  And
17   I say for the most part because I really -- you know your
18   cases and you know there may be something specific that you
19   have to ask but how you do it I don't know.
20              And, Gene, I would like to address to you because
21   this may change whatever you have done in the protocol, but
22   we need like a time period in which the defendants can submit
23   either individually their list of questions they would ask
24   each end payer and each auto dealer, recognizing the auto
25   dealers may be a little different than the end payers, or
```

Case 2:12-md-02311-SFC-RSW   ECF No. 927-3, PageID.12184   Filed 04/02/15   Page 15 of 18
Status Conference / Motion Hearings • January 28, 2015

34

```
 1   time for all of the defendants to have their representatives
 2   get together and come up with one format.
 3              MASTER ESSHAKI:  Judge, I think your ruling just
 4   now alters completely the deposition protocol that we
 5   discussed and I ruled upon, and I think the parties are going
 6   to have to get back together and redraft that deposition
 7   protocol to implement what I think was a direct instruction
 8   that there will be one dep of each end payer or whoever it
 9   may be and it is going to cover all the parts so that the
10   defendants need to get together, they need to come up with a
11   template of what the deposition outline is going to look
12   like, all of the parts the defendants will have input into
13   that, if they have any particular questions they can add
14   those questions, and they will designate who's going to be
15   conducting the examination.
16              But the problem here is that, as we said during our
17   discussions, there are approximately as I remember 50
18   dealers, there were four deps, we agreed I think on the 50
19   dealers, that's 200 deps, maybe there were less, I think in
20   my mind it is 160, but if we have to do that for wire harness
21   and then for air bags and then for motors it is impossible.
22   So the judge, I think, made this instruction very clear, one
23   dep, one person, across all parts and you need to figure out
24   how you are going to do that, and we need to start from
25   scratch on that protocol, salvage as much as you can but we
```

Case 2:12-md-02311-SFC-RSW ECF No. 927-3, PageID.12185 Filed 04/02/15 Page 16 of 18
Status Conference / Motion Hearings • January 28, 2015

35

```
 1   need to feed in the judge's new ruling.
 2              THE COURT:  So, Gene, before we go on, you are
 3   agreeing with what I said?
 4              MASTER ESSHAKI:  I agree completely.
 5              THE COURT:  I don't want to have a run-in with my
 6   master.
 7              MASTER ESSHAKI:  I agree completely, I think
 8   otherwise you are going to have thousands of depositions in
 9   this case.
10              MR. WILLIAMS:  Your Honor, once we receive a
11   transcript, which we will order today, we will promptly put
12   together a revised draft keeping as much as we can from what
13   was done, send it to the defendants so we can take care of
14   this without delay.
15              THE COURT:  Let me say I am going to set some
16   deadlines here.  Do you think -- the defendants, do you think
17   in 45 days you can come up with such a template, I mean,
18   questions together?  And also those who just entered in
19   response to what was said here -- I'm sorry, I forgot your
20   name?
21              MS. STORK:  Anita Stork.
22              THE COURT:  Okay.  In terms of what you said just
23   coming in the case and maybe not knowing, I want you to
24   participate and, yes, there may be things as you do your
25   preliminary discovery that you decide that you need to ask
```

Case 2:12-md-02311-SFC-RSW ECF No. 927-3, PageID.12186 Filed 04/02/15 Page 17 of 18
Status Conference / Motion Hearings • January 28, 2015

36

```
 1   then just bring that to my attention, but I think after, you
 2   know, at least the first 20 of you have to be ready and know
 3   the case well enough to come up with a template that there is
 4   probably not much more any one party would ask but, you know,
 5   it may be, I don't know, I just don't want you to think that
 6   you are barred, it is just that we have to proceed.
 7            MS. SULLIVAN:  Your Honor, may I just ask a point
 8   of clarification?  Are you requesting that we submit a
 9   template to Master Esshaki or to other parties or just among
10   the defendants in the various cases?  We agree amongst
11   ourselves --
12            THE COURT:  You can do whatever you want.
13   Hopefully you come to terms amongst yourself and you don't
14   have to bother Mr. Esshaki, these are the questions -- we as
15   a group are saying these are the questions that we need to
16   ask of every named party.  Okay.  If you can't do that then
17   I'm going to say submit your conflicting whatever -- I'm
18   calling them templates for want of any better word, and then
19   Mr. Esshaki can determine which questions will be asked.
20            MS. SULLIVAN:  Thank you.  With respect to the
21   protocol itself, the wire harness protocol, the parties have
22   been negotiating that protocol since February of 2014, and
23   this issue that you are identifying that relates to the
24   number of times an end payer or an auto dealer may be deposed
25   throughout the entire auto part MDL really only impacts a
```

```
 1   couple of the provisions, so I would like to suggest that we
 2   move forward with the wire harness deposition protocol and
 3   just revise those provisions to account for Your Honor's
 4   ruling.  I think we can accomplish that without significant
 5   delay and we can get moving with the -- or enter the wire
 6   harness protocol as negotiated by the parties in the wire
 7   harness case.
 8              THE COURT:  Wonderful, if you can do that quickly
 9   I'm all for it but you have to get all of these other
10   defendants to join in with you.
11              MR. WILLIAMS:  I know Mr. Barrett wants to speak,
12   but that's more or less what I just said I would do, I will
13   receive the transcript and revise those portions that are
14   affected by what we have discussed today.
15              MR. BARRETT:  Right, and auto dealers concur with
16   that.
17              THE COURT:  All right.
18              MS. STORK:  Your Honor, I would just say -- repeat
19   again that the defendants in the later cases certainly are
20   all for efficiency.  I would just suggest again that there be
21   some type of stopgap measure if parties in the later cases at
22   some point as those cases progress and motions have gone
23   through and discovery actually begins that they could apply
24   to the Court or Mr. Esshaki for permission for additional
25   questions if that's needed.  It may not be, I guess I'm just
```