# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: Wire Harness Cases<br>In Re: All Auto Parts Cases | |
| THIS DOCUMENT RELATES TO: | |
| All Wire Harness Cases | 2:12-cv-00100-MOB-MKM |
| All Auto Parts Cases | 2:12-md-02311-MOB-MKM |

**CORRECTED REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR CLARIFICATION OF THE COURT'S RULING REGARDING DEPOSITIONS OF PLAINTIFFS IN MULTIPLE AUTO PARTS CASES**

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

*Comcast v. Behrend*, 133 S. Ct. 1426 (2013)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011)

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)

**Rules**

Fed. R. Civ. P. 23

**PRELIMINARY STATEMENT**

Master Esshaki's March 19 ruling resolved this motion. *See* Ruling by Special Master Upon Defendants' Motion for Clarification of the Court's Rulings Regarding Depositions of Plaintiffs in Multi-Auto Parts Cases, ECF No. 912. Master Esshaki clarified the Court's statements during the January 28 status conference, as defendants had requested, and instructed the parties "to meet and confer and develop a universal deposition protocol for depositions of End Payor Plaintiffs and Automobile Dealer Plaintiff Witnesses in the Auto Parts MDL cases." *Id.* at 2. Defendants expect to promptly meet and confer with plaintiffs regarding that protocol, and to present any disputes to Master Esshaki, as he instructed.

Although defendants' motion has now been resolved, defendants file this reply brief to address multiple misrepresentations and misstatements that the auto dealers made in the response brief that they filed after Master Esshaki ruled.

**ARGUMENT**

**I.  AUTO DEALER DEPOSITION TESTIMONY IS LIKELY TO SHOW THAT IMPACT CANNOT BE DETERMINED ON A CLASS-WIDE BASIS, EITHER FOR THE AUTO DEALERS OR THE END PAYORS**

First, the auto dealers claim that defendants seek more than one deposition of each auto dealer entity because defendants themselves "need to find 'common evidence' of impact."[1] Auto Dealers Response Brief ("Resp.") at 4, ECF No. 916. That is absolutely wrong, and it suggests a fundamental misunderstanding of the difficult standard that the auto dealers must meet to certify

---

[1] The auto dealers claim that "[d]efendants seek three full days of fact depositions, plus 18 hours of 30(b)(6) depositions," and repeatedly describe that number as "defendants' proposal." Resp. at 4, 6. But it is not defendants' proposal; it is the number of depositions that Master Esshaki decided would be appropriate, after the parties briefed and argued the dispute. Defendants had proposed up to five depositions under Rule 30(b)(1) and 21 hours of Rule 30(b)(6) testimony. Joint Stmt. of Pls.' and Defs.' Regarding Proposed Deposition Protocol, Ex. A, No. 2:12-cv-00100 (Jan. 12, 2015), ECF No. 259 (attached hereto as Ex. A).

their proposed class.

To satisfy the requirements of Rule 23, *the auto dealers* (and, separately, the end payors) need to establish, among other things, that *they* can prove through common evidence that all class members were injured by defendants' alleged conduct. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). It is no longer sufficient for plaintiffs to allege in a complaint that all class members were injured. The Supreme Court made clear in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011), that courts must engage in a rigorous analysis of the evidentiary record and resolve factual disputes between the parties to determine whether plaintiffs have satisfied the requirements of Rule 23. *See also Comcast v. Behrend*, 133 S. Ct. 1426 (2013).

Here, defendants intend to show that neither the auto dealers nor the end payors can satisfy Rule 23 because determining whether an auto dealer or end payor was impacted by defendants' alleged conduct will require individualized evidence and cannot be established on a class-wide basis. Every purchase and sales transaction is unique. Factors such as dealer holdback,[2] OEM floor plan support,[3] advertising subsidies, and various types of incentives, such

---

[2] "Dealer Holdback is an amount paid to the dealer by the [OEM] for each new vehicle sold. It may be calculated as a percentage of Invoice Price or Manufacturer's Suggested Retail Price (MSRP) including or excluding options, or as a fixed amount, and the calculation and amount varies across [OEMs]." TRUECar – What is Dealer Holdback? (June 27, 2011), http://blog.truecar.com/2011/06/27/what-is-dealer-holdback/.

[3] "Dealer Floor Plan financing allows dealers to borrow against retail inventory. The dealer then repays that debt as they sell their inventory and borrows against the line of credit to add new inventory." U.S. Small Business Administration – What Is Floor Plan Financing?, https://www.sba.gov/content/what-floor-plan-financing. Some OEMs offer "floor plan support," which "provides a payment to dealerships to help them manage the cost of financing daily operations and purchasing new vehicle inventory." SIGTARP, Factors Affecting the Decisions of General Motors and Chrysler To Reduce Their Dealership Networks at 26 (July 19, 2010), *available at*

2

as monthly sales target cash incentives, "stair step" incentives,[4] and "turn and earn" incentives,[5] to name just a few, have a significant impact on the prices, terms, and conditions of each dealer's vehicle purchases. Depending on auto dealers' business strategies, these factors also influence the prices at which they sell cars (*e.g.*, some dealers may sell higher volumes at lower prices to take advantage of sales target incentives while other dealers sell lower volumes at higher prices). Additional factors influencing dealer strategies and pricing behavior include dealer-specific target margins, negotiating flexibility afforded to salespeople, paid-vacation incentives,[6] sales contests and bonuses, the characteristics and values of customer trade-ins, additional dealer markups and add-ons, interest rate markups, service agreements, and financing (*e.g.*, some dealers will sell below their costs in order to earn profits from "add-ons" such as extended warranties and interest rate markups that generate large profit margins) – again, just to name a few.

None of the auto dealers' discovery to date addresses these influences on pricing, and defendants do not expect that their remaining documents or transactional data will shed light on

---

http://www.sigtarp.gov/Audit%20Reports/Factors%20Affecting%20the%20Decisions%20of%20General%20Motors%20and%20Chrysler%20to%20Reduce%20Their%20Dealership%20Networks%207_19_2010.pdf.

[4] Unlike a lump-sum payment for meeting a sales quota, "stair step" incentive programs "pay dealers escalating bonuses as sales targets are hit in a bid to wrest back market share or boost key models." Mike Colias & Ariena Sawyers, *Stair Step Incentives Are Back*, May 21, 2012, http://www.autonews.com/article/20120521/RETAIL07/305219947/stair-step-incentives-are-back.

[5] Some OEMs offer "turn and earn" programs "to assign capacity when [OEMs] cannot keep up with demand," allocating vehicles "based on previous sales, with high-selling dealerships receiving more capacity in the next round." KelloggInsight, *The Trick to Turn-and-Earn* (Mar. 2, 2012), http://insight.kellogg.northwestern.edu/article/the_trick_to_turn_and_earn.

[6] "Lavish trips and cash are common behind-the-scenes incentives at car dealerships. . . . The high-end trips are reserved for sales managers, general managers and owners who meet sales goals or win sales contests. Auto manufacturers often pay for these first-class trips." Lucy Lazarony, Bankrate.com, Sales Incentives Drive Up the Price of Your Car, http://www.bankrate.com/finance/auto/sales-incentives-drive-up-the-price-of-your-car.aspx.

them either.  Documents that reflect an OEM cash payment for meeting a sales volume target, for example, are unlikely to explain how a dealer changed its pricing behavior to meet that goal.  Defendants need to examine corporate representatives, sales managers, and others who actually participated in the purchase and sales processes to determine how the various incentives affected each dealer's behavior.  Defendants expect that their testimony will reveal key differences across dealers and among each dealer's own salespeople.  The three Rule 30(b)(1) depositions and 18 hours of Rule 30(b)(6) testimony from each auto dealer plaintiff that Master Esshaki has allotted for auto dealer depositions is the minimum that the wire harness defendants need to obtain this critical discovery.

## II. AUTO DEALERS WITHDREW THEIR REPLACEMENT PART CLAIMS IN THESE CASES *BEFORE* MASTER ESSHAKI DECIDED THE APPROPRIATE NUMBER OF AUTO DEALER DEPOSITIONS

Auto dealers claim that they have "now dropped" their claims based on replacement parts, and thus, the depositions that Master Esshaki allowed in the wire harness cases are no longer necessary.  But auto dealers withdrew their replacement part claims in these cases *before* Master Esshaki determined the number of depositions that would be appropriate.  During the mediation in January (before this Court's status conference), auto dealers announced that they were no longer pursuing replacement part claims, and then two separate attorneys for the dealers argued that, therefore, *three depositions of each auto dealer entity was a fair number*.[7]

The parties only discussed the topic of replacement parts during the January 28 status conference because the Court asked whether defendants should depose the same individual

---

[7] The auto dealers claim that "[t]he brief containing Dealers' previous position of three depositions total (15 hours) was advanced at a time when Dealers were pressing replacement part claims." Resp. at 7.  Although the auto dealers, indeed, filed their "brief" regarding the number of depositions before they withdrew their replacement part claims, they continued to advocate for three depositions of each auto dealer plaintiff during the mediation, after they withdrew those claims.

4

plaintiffs repeatedly *in multiple cases*. Status Conf. Tr., Jan. 28, 2015 ("Hr'g Tr.") at 24:2-25 (attached hereto as Ex. B). In response, defense counsel explained that, although the auto dealers had already withdrawn their replacement part claims in the wire harness cases, coordination with all defendants would be more difficult if the dealers continued to pursue such claims in the other product cases, and more than one deposition of an individual witness might be necessary. Hr'g Tr. at 21:5-24, 26:12-27:11, Ex. B. The auto dealers' attempt to twist that statement into a commentary about defendants' "informational needs" in the wire harness cases, or a suggestion that without replacement part claims, the wire harness defendants need fewer depositions of each auto dealer entity (Resp. at 2, 6, 7), is disingenuous at best.[8]

The auto dealers' decision to withdraw their replacement part claims in all auto parts cases should enable defendants to coordinate to avoid multiple depositions of the same individual witnesses in different cases. But it has no impact on Master Esshaki's ruling regarding the number of depositions that defendants may take of each auto dealer in the wire harness cases.

### III. THE AUTO DEALERS HAVE NOT PRODUCED, OR "OFFERED" TO PRODUCE, THEIR TRANSACTIONAL DATA, AS THEY CLAIM

The auto dealers argue that more than one deposition is unnecessary because, "since the January 28 Status Conference," the auto dealers have "offered" to produce "over one hundred fields of transactional information." Resp. at 5. That is not accurate. The auto dealers have

---

[8] The auto dealers also argue that the Court "made clear" that "Defendants should share a template of their questions with the Court, the Special Master, *and the Dealers* in order to meet their informational needs." Resp. at 3 (emphasis added). That is a blatant mischaracterization of the Court's statements. The Court never suggested that defendants should share their examination questions *with the dealers*. Hr'g Tr. at 23:5-37:7, Ex. B. Moreover, although the Court suggested that defendants might want to share their questions with the Special Master, the Court clarified that defendants should only do so if they cannot reach agreement among themselves. *Id.* at 36:12-19.

5

*identified* certain data fields that exist, but have not "offered" to produce any of them without first resolving various unspecified "objections" and without defendants first agreeing to withdraw pending motions to compel and committing not to file any others. Despite defendants' repeated requests, the auto dealers have refused to describe any of the data that they apparently intend to produce, and they have refused to commit to any deadline for this supposed production. Certain Defs. Mot. to Establish Schedule for Auto Dealer Pls. Production of ESI Concerning Vehicle Purchases & Sales & Brief in Support at 2 & Ex. C, ECF No. 287 (attached hereto as Ex. C); Emails, dated Mar. 23, 2015 and Mar. 25, 2015, between V. Romanenko and L. Gangnes (attached hereto as Ex. D).

Moreover, the auto dealers have been under a Court order since January 7 to produce their data, and 44 of the 46 dealers have failed to do so (and the two that have produced data have provided incomplete data and data fields (both in terms of substance and time period)). Their apparent willingness to now produce data that the Court ordered them to produce nearly three months ago is hardly a significant development that should have any impact on, or that warrants re-visiting, Master Esshaki's decision regarding depositions.

## CONCLUSION

Although Master Esshaki has already resolved this motion, defendants respectfully submit the above reply brief to correct the auto dealers' numerous misstatements and misrepresentations. Defendants will comply with the Special Master's March 19 ruling, and will promptly raise any additional disputes with Master Esshaki, consistent with that ruling.

| | | |
|---|---|---|
| Date:  April 3, 2015 | | LATHAM & WATKINS LLP |
| | By: | */s/ Marguerite M. Sullivan*<br>Marguerite M. Sullivan<br>LATHAM & WATKINS LLP<br>555 Eleventh Street NW, Suite 1000<br>Washington, DC 20004<br>Telephone: (202) 637-2200<br>Fax: (202) 637-2201<br>Marguerite.Sullivan@lw.com |

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-0600
Fax: (415) 395-8095
dan.wall@lw.com

David D. Cross
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  202-624-2500
Fax:  202-628-5116
dcross@crowell.com

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060
bhorton@gmhlaw.com

*Attorneys for Defendants Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; and Sumitomo Wiring Systems (U.S.A.) Inc.*

| | | |
|---|---|---|
| | | LANE POWELL PC |
| Date:  April 3, 2015 | By: | */s/Larry S. Gangnes*  (w/consent)<br>Larry S. Gangnes<br>LANE POWELL PC<br>1420 Fifth Ave., Suite 4200<br>P.O. Box 91302<br>Seattle, WA 98111-9402<br>Telephone: (206) 223-7000<br>Facsimile: (206) 223-7107<br>gangnesl@lanepowell.com |

7

        Craig D. Bachman
        Kenneth R. Davis II
        Darin M. Sands
        Tanya Durkee Urbach
        Peter D. Hawkes
        Masayuki Yamaguchi
        LANE POWELL PC
        ODS Tower
        601 SW Second Ave., Suite 2100
        Portland, OR 97204-3158
        Telephone: (503) 778-2100
        Facsimile: (503) 778-2200
        bachmanc@lanepowell.com
        davisk@lanepowell.com
        sandsd@lanepowell.com
        urbacht@lanepowell.com
        hawkesp@lanepowell.com
        yamaguchim@lanepowell.com

        Richard D. Bisio (P30246)
        Ronald S. Nixon (P57117)
        KEMP KLEIN LAW FIRM
        201 W. Big Beaver, Suite 600
        Troy, MI 48084
        Telephone:  (248) 528-1111
        Facsimile:  (248) 528-5129
        richard.bisio@kkue.com
        ron.nixon@kkue.com

        *Attorneys for Defendants Furukawa Electric Co., Ltd.; and American Furukawa, Inc.*

        WILMER CUTLER PICKERING HALE AND DORR LLP

Date:  April 3, 2015      By:  */s/Steven F. Cherry*  (w/consent)
        Steven F. Cherry
        David P. Donovan
        Brian C. Smith
        Kurt G. Kastorf
        WILMER CUTLER PICKERING HALE AND DORR LLP
        1875 Pennsylvania Avenue, N.W.
        Washington, D.C. 20006
        Telephone: (202) 663-6000
        Fax: (202) 663-6363
        steven.cherry@wilmerhale.com
        david.donovan@wilmerhale.com
        brian.smith@wilmerhale.com
        kurt.kastorf@wilmerhale.com

*Attorneys for Defendants DENSO International America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International America, Inc.*
ARNOLD & PORTER LLP

Date:  April 3, 2015          By:    */s/James L. Cooper*  (w/consent)
James L. Cooper
Michael A. Rubin
Laura Cofer Taylor
Katherine Clemons
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
(202) 942-5000
(202) 942-5999 (facsimile)
james.cooper@aporter.com
michael.rubin@aporter.com
laura.taylor@aporter.com
katherine.clemons@aporter.com

Joanne Geha Swanson (P33594)
Fred Herrmann (P49519)
Matthew L. Powell (P69186)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
(313) 961-0200
(313) 961-0388 (facsimile)
jswanson@kerr-russell.com
fherrmann@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Defendants Fujikura Ltd. and Fujikura Automotive America LLC*

|  |  | O'MELVENY & MYERS LLP |
|---|---|---|
| Date:  April 3, 2015 | By: | */s/Michael F. Tubach*  (w/consent)<br>Michael F. Tubach<br>O'MELVENY & MYERS LLP<br>Two Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 984-8700<br>Fax: (415) 984-8701<br>Mtubach@omm.com |

Michael R. Turco (P48705)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1713
Fax: (248) 971-1801
turco@bwst-law.com

*Attorneys for Defendants Leoni Wiring Systems, Inc.  and Leonische Holding Inc.*

|  |  | BUTZEL LONG |
|---|---|---|
| Date:  April 3, 2015 | By: | */s/David F. DuMouchel*  (w/consent)<br>David F. DuMouchel (P25658)<br>George B. Donnini (P66793)<br>BUTZEL LONG<br>150 West Jefferson, Suite 100<br>Detroit, MI 48226<br>Telephone: (313)225-7000<br>dumouchd@butzel.com<br>donnini@butzel.com |

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Telephone: (202)663-7820
TMiller@bakerandmiller.com

*Attorneys for Defendants Tokai Rika Co., Ltd. and  TRAM, Inc.*

|  |  |  |
|---|---|---|
|  |  | PORTER WRIGHT MORRIS & ARTHUR LLP |
| Date:  April 3, 2015 | By: | */s/ Donald M. Barnes* (w/consent)<br>Donald M. Barnes<br>Jay L. Levine<br>Salvatore A. Romano<br>John C. Monica<br>Molly S. Crabtree<br>Karri N. Allen<br>PORTER WRIGHT MORRIS & ARTHUR LLP<br>1919 Pennsylvania Ave., NW, Ste 500<br>Washington, DC 20006<br>Telephone: (202) 778-3054<br>Facsimile: (202) 778-3063<br>dbarnes@porterwright.com<br>sromano@porterwright.com<br>jmonica@porterwright.com<br>mcrabtree@porterwright.com<br>kallen@porterwright.com<br><br>*Attorneys for Defendants G.S. Electech, Inc., G.S.W. Manufacturing, Inc., and G.S. Wiring Systems, Inc.*<br>B |

JENNER & BLOCK LLP

Date:  April 3, 2015

/s/ Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
ZAUSMER, KAUFMAN, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road
Suite 150

11

                              Farmington Hills, Michigan 48334-2374
                              Telephone (248) 851-4111
                              gaugust@zkac.com

*Counsel for Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc.*

K&L GATES LLP

Date: April 3, 2015                /s/ Michael E. Martinez
                                        Steven M. Kowal
                                        Lauren N. Norris
                                        Lauren B. Salins
                                        K&L GATES LLP
                                        70 W. Madison St.
                                        Suite 3100
                                        Chicago, IL 60602
                                        Telephone: (312) 807-4404
                                        Fax: (312) 827-8116
                                        michael.martinez@klgates.com
                                        steven.kowal@klgates.com
                                        lauren.norris@klgates.com
                                        lauren.salins@klgates.com

                                        William P. Jansen (P36688)
                                        Michael G. Brady (P57331)
                                        Amanda Fielder (P70180)
                                        WARNER NORCROSS & JUDD LLP
                                        2000 Town Center, Suite 2700
                                        Southfield, MI 48075-1318
                                        Telephone: (248) 784-5000
                                        wjansen@wnj.com
                                        mbrady@wnj.com
                                        afielder@wnj.com

                                        *Counsel for Defendant Chiyoda USA Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2015, I caused the foregoing CORRECTED REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR CLARIFICATION OF THE COURT'S RULING REGARDING DEPOSITIONS OF PLAINTIFFS IN MULTIPLE AUTO PARTS CASES to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Marguerite M. Sullivan*
Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
+1.202.637.2200
maggy.sullivan@lw.com