# Exhibit C

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: WIRE HARNESS CASES | |
| THIS RELATES TO: All Auto Dealer Actions All End-Payor Actions | **Oral Argument Requested** 2:12-cv-00102-MOB-MKM 2:12-cv-00103-MOB-MKM |

## CERTAIN DEFENDANTS' MOTION TO ESTABLISH SCHEDULE FOR AUTO DEALER PLAINTIFFS' PRODUCTION OF ESI CONCERNING VEHICLE PURCHASES AND SALES AND BRIEF IN SUPPORT

1.      For more than eighteen months, Defendants have been diligently pursuing efforts

to obtain electronically stored information and data on the Auto Dealer Plaintiffs' ("ADPs")

purchases and sales of vehicles (hereinafter referred to as "Requested ESI") that are critically

important to both ADPs' claims and claims of the End Payor Plaintiffs ("EPPs").  Defendants have

faced one roadblock after another to those efforts, including (1) ADPs' repeated

misrepresentations that the Requested ESI does not exist; (2) their false assertions that it would

take "thousands" of hours to compile this data from hard copy invoices and deal files; and (3)

finally, after Defendants independently discovered the existence of databases containing the

Requested ESI, ADPs' failure to live up to their commitment to obtain and produce this data by

March 15, 2015, as required by a Stipulated Order to which they agreed last December.  *See*

Stipulation and Order Regarding Certain Defendants' Motion to Compel "Downstream"

Discovery from Auto Dealer Plaintiffs (the "Stipulated Order") (12-cv-00102, ECF No. 251).

2.      As ADPs themselves recognized in agreeing to the Stipulated Order,  the Requested

ESI bears directly on (a) whether ADPs and EPPs and their respective putative class members

suffered injury or "impact" from Defendants' alleged conduct and purported overcharges in

connection with Defendants' sales of "Wire Harness Products,"[1] and (b) whether the putative ADP

and EPP classes can satisfy Rule 23's stringent requirements for class certification.

3.      Pursuant to Federal Rules of Civil Procedure 26(b)(1) and 37(a), Certain

Defendants[2] ("Defendants") now move the Master to enter the Proposed Order Regarding Auto

---

[1]      For purposes of this Motion, Defendants use Plaintiffs' definitions of automotive Wire
Harness Products.  *See* Auto Dealers' Third Consolidated Class Action Complaint, ¶ 3
("Automotive Wire Harness Systems"), 12-cv-00102, ECF No. 219; End-Payors' Fourth
Amended Consolidated Class Action Complaint, ¶ 3 ("Automotive Wire Harness Systems"),
12-cv-00103, ECF No. 233.

[2]      DENSO Corporation; DENSO International America, Inc.; Fujikura Ltd.; Fujikura
Automotive America LLC; Furukawa Electric Co., Ltd.; American Furukawa, Inc.; G.S. Electech,

Dealer Plaintiffs' Production of ESI Concerning Purchases and Sales of Vehicles ("the Proposed

Order") that accompanies this motion (Ex. A), which will establish a schedule for ADPs'

production of this long-awaited Requested ESI and a procedure for expeditiously resolving any

remaining objections ADPs may assert.  The Proposed Order sets forth a schedule and process that

will afford ADPs approximately three more months (until June 30, 2015) to complete their

production of the Requested ESI, requires ADPs to promptly identify all fields of responsive data

that exist within the Requested ESI and state any objections that they have to producing such

fields, and provides a streamlined process for resolving such objections.  The propriety of

certification of both the EPP and ADP classes will almost certainly turn on this data, and given that

a binding schedule has now been set for submission of expert reports and briefing on class

certification, it is simply unacceptable for ADPs to continue to delay the production of this crucial

information.

      4.     On March 16, 2015, Defendants asked ADPs to stipulate to the schedule and

process for production of the Requested ESI that is set forth in the Proposed Order, and invited

ADPs to meet and confer regarding this schedule and process.  On March 18, 2015, counsel for

ADPs rejected the Proposed Order provided by Defendants, asserting "it is premature to discuss a

production schedule" and citing unspecified burden and cost.

      5.     In further compliance with Local Rule 7.1(a), Defendants engaged in additional

exchanges of emails with ADPs over the period of March 20 through March 23, 2015, again in an

effort to seek ADPs' concurrence in the relief sought by this motion (*i.e.*, agreement to submit the

Proposed Order by stipulation).  Unfortunately, these exchanges served only to confirm that the

---

Inc.; G.S.W. Manufacturing, Inc.; G.S. Wiring Systems, Inc.; Leoni Wiring Systems, Inc.;
Leonische Holding, Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.;
Sumitomo Electric Wiring Systems, Inc. (including K&S Wiring Systems, Inc.); Sumitomo
Wiring Systems (U.S.A.) Inc.; Tokai Rika Co., Ltd.; TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.

parties are at an impasse and that the present motion is necessary.  On March 23, 2015, counsel for

ADPs stated an intent to file a competing motion on March 24, 2015.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: WIRE HARNESS CASES | |
| THIS RELATES TO: | **Oral Argument Requested** |
| All Auto Dealer Actions All End-Payor Actions | 2:12-cv-00102-MOB-MKM 2:12-cv-00103-MOB-MKM |

## BRIEF IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO ESTABLISH SCHEDULE FOR AUTO DEALER PLAINTIFFS' <u>PRODUCTION OF ESI CONCERNING VEHICLE PURCHASES AND SALES</u>

## CONCISE STATEMENT OF THE ISSUES

1.      Whether the Master and the Court should enter an Order compelling ADPs to produce the Requested ESI on a binding schedule, because that discovery, which Defendants have been seeking *since August 2013*, is relevant to (and potentially dispositive of) the individual damages claims asserted by ADPs and EPPs, as well as to their efforts to certify their respective classes and to prove impact and damages on a class-wide basis, and because Defendants need sufficient time to analyze this data prior to conducting depositions and completing other discovery before ADPs and EPPs move for class certification.

**Answer**:  Yes.

## <u>TABLE OF CONTENTS</u>

CONCISE STATEMENT OF THE ISSUES ..................................................................................... i

INDEX OF EXHIBITS ................................................................................................................ iii

ARGUMENT ................................................................................................................................1

CONCLUSION ..............................................................................................................................4

## INDEX OF EXHIBITS

**EXHIBIT A**      Defendants' Proposed Order

**EXHIBIT B**      April 17, 2014 Letter from ADPs to Defendants regarding the
Requested ESI

**EXHIBIT C**      March 18, 2015 Email from ADPs to Defendants regarding the
Requested ESI

**EXHIBIT D**      March 19, 2015 Email from ADPs to Defendants regarding the
Requested ESI

**ARGUMENT**

Since August 2013, Defendants have been seeking ESI from ADPs concerning their purchases and sales or leases of new automobiles and related costs. The Requested ESI is indisputably relevant to the individual damages claims ADPs and EPPs have asserted, as well as to their upcoming attempts to certify their respective classes and to prove damages on behalf of such classes, for reasons Defendants have previously articulated in their Certain Defendants' Expedited Motion to Compel Dealer Management System Data and Information, which Defendants incorporate by reference herein. 12-cv-00102, ECF No. 275.

The principal question now is, when ADPs will—after more than a year-and-half of delay—finally produce the Requested ESI to Defendants. Initially, ADPs represented (falsely) to Defendants that none of the ADPs maintained any such transactional data in any electronic database. *See* Ex. B at 1 ("We have learned, thus far, that the Auto Dealers do not maintain and store the categories of procurement data Sumitomo has requested, in transactional databases, or spreadsheet documents."). ADPs compounded that misrepresentation in opposing Defendants' motions to compel by asserting to the Master that data on their purchases and sales of new vehicles would require them to undertake the "enormous burden" of "gathering and review of hundreds of thousands of 'deal files' relating to the individual sale or purchase of a particular vehicle, in addition to numerous other documents regarding operation of the Automobile Dealer Plaintiffs' businesses." (12-cv-00102, ECF No. 195-1, ¶ 12; ECF No. 196-3, ¶ 12.)

In late 2014, however, Defendants independently discovered that, contrary to the ADPs' repeated misrepresentations, virtually all auto dealers maintain the Requested ESI in their own databases or in the databases of their dealer management system ("DMS") service providers, or both. After Defendants subpoenaed the Requested ESI from the three leading DMS providers, ADPs finally acknowledged the existence of this data and agreed in the Stipulated Order, entered

by the Court on January 7, 2015, to obtain it from their DMS providers and produce it to Defendants by March 15, 2015.

Now, more than three months after agreeing to the Stipulated Order, ADPs have almost completely failed to live up to their obligations under it. They have provided ESI for only *two* of the forty-six ADPs, and even that limited data was incomplete, truncated based on objections asserted by ADPs, and produced after the court-ordered deadline. Since then, ADPs have offered only obfuscation and more delay.

Rather than simply producing the data as it exists in their or their DMS providers' databases, ADPs have offered to produce only certain data fields selected by an unidentified consultant, with no indication of what other data fields exist or the criteria ADPs will use to pick the fields they will produce. ESI from the only two ADPs for whom they have produced anything covers only a small fraction of the alleged class period (which extends back to 1999). For one of these two ADPs, the produced data goes back only to 2008, for the other only to 2012, and ADPs have offered no explanation for why these limitations were imposed, whether older data exists, or whether (if older data does exist) they are making any effort to collect and produce it.

The two ADPs' limited data comes from only one of the several DMS providers known to have provided DMS services to ADPs. ADPs admitted in their February 18, 2015 Responses to Furukawa Defendants' First Set of Interrogatories that forty-two of the ADPs used DMS providers, but fail to provide data from any of them other than those two. ADPs assert that three ADPs do not *currently* use a third-party DMS provider, but have not explained whether they did so in the past, whether they store their ESI in some other manner, or whether they have any plan or intent to produce it. And none of the ADPs has produced Requested ESI from their own databases in the eighteen months since it was requested.

2

Rather than attempt to resolve this plethora of issues and deficiencies, ADPs have instead refused to move forward with *any* further production of this essential data unless Defendants' agree to a host of unreasonable conditions. Among other things, they have conditioned any further production on Defendants' agreeing (1) not to seek this data from any person or entity other than ADPs themselves (even if it turns out ADPs themselves do not, or are unable to, produce it), and (2) to withdraw and not file any further motions to compel production of this data, *see* Ex. C at 1, and they have insisted that Defendants agree to ADPs' proposed self-selection of which data fields to produce, without knowing what other fields exist. *See id.* Moreover, even *that* proposal is limited by unspecified further "objections" that ADPs are reserving the right to assert. *See* Ex. C at 1; Ex. D at 1. And they insist that Defendants now forego a host of other discovery, much of it unrelated to ADPs' ESI, that is the subject of the same motion to compel that Defendants agreed to hold in abeyance last December pursuant to the Stipulated Order on which ADPs have now reneged.

This shell game must be stopped. As set forth in the accompanying Proposed Order, Defendants propose a clear timetable and roadmap for identification of the Requested ESI, assertion and resolution of objections, and production, based on the three-month production period initially proposed by the ADPs themselves that the Court adopted in the Stipulated Order. First, ADPs would identify the specific Plaintiff Dealers whose ESI would be produced on a series of rolling deadlines, starting in April and finishing by June 30, 2015. *See* Proposed Order, ¶ 2(i)-(iii). Second, ADPs would identify, for each group of Plaintiff Dealers, the categories of ESI that those Dealers have and the time period for which that data exists. *See id.*, ¶ 3(i)(A). Third, if any Plaintiff Dealer objects to producing any specific fields contained in its data, that Dealer would provide Defendants with a written statement of those objections, specifically identifying the

specific fields it seeks to withhold. *See id.*, ¶ 3(i)(C). Fourth, the parties would meet and confer within three business days of submission of any such objections, and any dispute not resolved would be submitted to the Master for resolution within four business days, and the Master would resolve any such dispute at his earliest convenience. *See id.* ¶ 3(iii).[1] To minimize the burden on ADPs, Defendants agree that the foregoing process would be the exclusive manner by which Defendants would seek the Requested ESI directly from an ADP until June 30, 2015. *Id.* ¶ 4.

The Proposed Order provides a process for expeditious resolution of objections and disputes to Defendants' requests. The Proposed Order also ensures that Defendants will receive all of the Requested ESI by June 30, 2015, with earlier productions on a rolling basis. These deadlines are necessary to ensure that both parties have adequate time to analyze the data, which will take months, and for Defendants to take any necessary depositions or conduct any related discovery in advance of ADPs' motion and initial briefing on class certification, which begins in July 2016.

ADPs' history of misrepresentation, obfuscation, and delay, when viewed in the context of a binding class certification schedule, makes it essential that the Court enter the schedule that Defendants have proposed so that Defendants are not further prejudiced by ADPs' deliberate delay.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter the

---

[1] At the time the present motion is being filed, there is pending a separate Motion to Compel filed by certain defendants that asks the Master to overrule several objections that ADPs have asserted with respect to certain categories of ESI sought by Defendants' subpoenas to the DMS providers. Certain Defendants' Expedited Motion to Compel Dealer Management System Data and Information, 12-cv-00102, ECF No. 275. That motion will provide the Master with an opportunity to provide guidance that should limit the extent of further objections by ADPs during the rolling production of ESI called for by the Proposed Order.

Proposed Order to ensure that highly relevant data in the possession, custody, and control of ADPs

is finally produced before it is literally too late for Defendants to utilize it.

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND
DORR LLP

March 23, 2015        By:    */s/ Steven F. Cherry*
Steven F. Cherry
David P. Donovan
Patrick J. Carome
Brian C. Smith
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
patrick.carome@wilmerhale.com
brian.smith@wilmerhale.com
kurt.kastorf@wilmerhale.com

*Attorneys for Defendants DENSO Corporation
and DENSO International America, Inc.*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Tel.: (248) 372-8252
Fax: (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International
America, Inc.*

ARNOLD & PORTER LLP

March 23, 2015        By:    */s/James L. Cooper* (w/consent)
James L. Cooper
Michael A. Rubin
Laura Cofer Taylor

5

Katherine Clemons
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Tel.:  (202) 942-5000
Fax:  (202) 942-5999
james.cooper@aporter.com
michael.rubin@aporter.com
laura.taylor@aporter.com
katherine.clemons@aporter.com

Joanne Geha Swanson (P33594)
Fred Herrmann (P49519)
Matthew L. Powell (P69186)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
Tel.:  (313) 961-0200
Fax:  (313) 961-0388
jswanson@kerr-russell.com
fherrmann@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Defendants Fujikura Ltd. and
Fujikura Automotive America LLC*


LANE POWELL PC

*/s/Larry S. Gangnes* (w/consent)

March 23, 2015                By:

Larry S. Gangnes
LANE POWELL PC
1420 Fifth Ave., Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Tel.:  (206) 223-7000
Fax:  (206) 223-7107
gangnesl@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
LANE POWELL PC
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Tel.:  (503) 778-2100
Fax:  (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com

hawkesp@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Tel.:  (248) 528-1111
Fax:  (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric Co.,
Ltd. and American Furukawa, Inc.*

PORTER WRIGHT MORRIS & ARTHUR LLP

March 23, 2015          By:     */s/ Donald M. Barnes* (w/consent)
                                Donald M. Barnes
                                Jay L. Levine
                                John C. Monica
                                Molly S. Crabtree
                                PORTER WRIGHT MORRIS & ARTHUR LLP
                                1919 Pennsylvania Ave., NW, Ste. 500
                                Washington, DC 20006
                                Tel.:  (202) 778-3054
                                Fax:  (202) 778-3063
                                dbarnes@porterwright.com
                                jlevine@porterwright.com
                                jmonica@porterwright.com
                                mcrabtree@porterwright.com

*Attorneys for Defendants G.S. Electech, Inc.,
G.S.W. Manufacturing, Inc., and G.S. Wiring
Systems, Inc.*

O'MELVENY & MYERS LLP

March 23, 2015          By:     */s/Michael F. Tubach*  (w/consent)
                                Michael F. Tubach
                                O'MELVENY & MYERS LLP
                                Two Embarcadero Center, 28th Floor
                                San Francisco, CA 94111
                                Tel.:  (415) 984-8700
                                Fax:  (415) 984-8701
                                Mtubach@omm.com

                                Michael R. Turco (P48705)
                                BROOKS WILKINS SHARKEY & TURCO
                                PLLC
                                401 South Old Woodward, Suite 400
                                Birmingham, MI 48009

7

Tel.: (248) 971-1713
Fax: (248) 971-1801
turco@bwst-law.com

*Attorneys for Defendants Leoni Wiring Systems,*
*Inc. and Leonische Holding, Inc.*

LATHAM & WATKINS LLP

March 23, 2015          By:    */s/ Marguerite M. Sullivan* (w/ consent)
                               Marguerite M. Sullivan
                               LATHAM & WATKINS LLP
                               555 Eleventh Street NW, Suite 1000
                               Washington, DC 20004
                               Tel.: (202) 637-2200
                               Fax: (202) 637-2201
                               Marguerite.Sullivan@lw.com

                               Daniel M. Wall
                               LATHAM & WATKINS LLP
                               505 Montgomery Street, Suite 2000
                               San Francisco, CA 94111
                               Tel.: (415) 395-0600
                               Fax: (415) 395-8095
                               dan.wall@lw.com

                               William H. Horton (P31567)
                               GIARMARCO, MULLINS & HORTON, P.C.
                               101 West Big Beaver Road, Tenth Floor
                               Troy, MI 48084-5280
                               Tel.: (248) 457-7060
                               Fax: (248) 457-7001
                               bhorton@gmhlaw.com

                               *Attorneys for Defendants Sumitomo Electric*
                               *Industries, Ltd.; Sumitomo Wiring Systems, Ltd.;*
                               *Sumitomo Electric Wiring Systems, Inc.; K&S*
                               *Wiring Systems, Inc.; and Sumitomo Wiring*
                               *Systems (U.S.A.) Inc.*

                               BUTZEL LONG

March 23, 2015          By:    */s/David F. DuMouchel* (w/consent)
                               David F. DuMouchel (P25658)
                               George B. Donnini (P66793)
                               BUTZEL LONG
                               150 West Jefferson, Suite 100
                               Detroit, MI 48226
                               Tel.: (313) 225-7000
                               Fax: (313) 225-7080
                               dumouchd@butzel.com
                               donnini@butzel.com

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Tel.:  (202) 663-7820
Fax:  (202) 663-7849
TMiller@bakerandmiller.com

*Attorneys for Defendants Tokai Rika Co., Ltd.*
*and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2015, I caused the foregoing **CERTAIN**

**DEFENDANTS' MOTION TO ENTER A PROPOSED ORDER REGARDING AUTO**

**DEALER PLAINTIFFS' PRODUCTION OF ESI CONCERNING PURCHASES AND**

**SALES OF VEHICLES** to be electronically filed with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to all counsel of record.


        _/s/ Steven F. Cherry_
        Steven F. Cherry
        WILMER CUTLER PICKERING HALE
        AND DORR LLP
        1875 Pennsylvania Avenue, NW
        Washington, DC 20006
        Tel.: (202) 663-6000
        Fax: (202) 663-6363
        steven.cherry@wilmerhale.com

        _Counsel for DENSO Corporation and DENSO_
        _International America, Inc._

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: WIRE HARNESS CASES | |
| THIS RELATES TO: | |
| All Auto Dealer Actions All End-Payor Actions | 2:12-cv-00102-MOB-MKM 2:12-cv-00103-MOB-MKM |

## CERTAIN DEFENDANTS' MOTION TO ESTABLISH SCHEDULE FOR AUTO DEALER PLAINTIFFS' PRODUCTION OF ESI CONCERNING VEHICLE PURCHASES AND SALES AND BRIEF IN SUPPORT

## INDEX OF EXHIBITS

| | |
|---|---|
| EXHIBIT A | Defendants' Proposed Order |
| EXHIBIT B | April 17, 2014 Letter from ADPs to Defendants regarding the Requested ESI |
| EXHIBIT C | March 18, 2015 Email from ADPs to Defendants regarding the Requested ESI |
| EXHIBIT D | March 19, 2015 Email from ADPs to Defendants regarding the Requested ESI |

# EXHIBIT A

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: WIRE HARNESS CASES | |
| THIS RELATES TO: | |
| All Auto Dealer Actions All End-Payor Actions | 2:12-cv-00102-MOB-MKM 2:12-cv-00103-MOB-MKM |

### [PROPOSED] ORDER REGARDING AUTO DEALER PLAINTIFFS' PRODUCTION OF ESI CONCERNING PURCHASES AND SALES OF VEHICLES

WHEREAS, Defendants served discovery requests on the Dealer Plaintiffs on August 17, 2013, March 17, 2014, and February 4, 2015 (the "Defendants' Dealer Discovery"), seeking, among other things, certain documents, data, and other information relating to the Dealer Plaintiffs' purchases, sales and leases of new vehicles, and related services; Dealer Plaintiffs objected to certain of those requests; and Defendants, on July 14, 2014, moved to compel production pursuant to certain of those requests (2:12-cv-00102, ECF No. 186) (the "July 14, 2014 Motion to Compel");

WHEREAS, in November 2014, Defendants served subpoenas *duces tecum* on certain non-party automobile dealers (the "Non-Party Dealer Subpoenas"), and the Dealership Plaintiffs thereafter indicated that they might move to quash those subpoenas or for a protective order against those subpoenas;

1

WHEREAS, in December 2014, Defendants served other subpoenas *duces tecum* on certain non-party dealership management services providers, The Reynolds & Reynolds Company ("Reynolds & Reynolds"), Dealertrack Technologies, Inc. ("Dealertrack"), and CDK Global, Inc. ("CDK") (the "DMS Provider Subpoenas");

WHEREAS, Dealer Plaintiffs and Defendants stipulated to an order, entered by the Court on January 7, 2015 (2:12-cv-00102, ECF No. 251):

(i)      providing that Defendants' July 14, 2014 Motion To Compel and their Non-Party Dealer Subpoenas would be held in abeyance and Dealer Plaintiffs would not move to quash the Non-Party Dealer Subpoenas or seek a protective order pending certain defined further developments;

(ii)     requiring Dealer Plaintiffs to seek from Reynolds & Reynolds, Dealertrack, CDK, and any other dealer management service providers used by any of the Dealer Plaintiffs (collectively, the "DMS Entities") and produce to Defendants, on or before March 15, 2015, the electronically stored data and documents (collectively, "ESI") sought in the DMS Provider Subpoenas as to Dealership Plaintiffs and in the Sumitomo Defendants' Requests for Production Nos. 1 and 3 (hereinafter referred to collectively as "Requested Dealer Plaintiff ESI"), subject to the Dealer Plaintiffs' right to object to production of certain ESI pursuant to paragraph 6 of the January 7, 2015 Stipulation and Order, which objections, if any, would not delay production of all other ESI; and

(iii)    providing that Defendants would seek from the DMS Entities the ESI sought in the DMS Provider Subpoenas as to automobile dealers, other

than the Dealer Plaintiffs, covered in the DMS Provider Subpoenas.

Dealer Plaintiffs agreed they would not oppose Defendants' efforts to

obtain the ESI requested by the DMS Provider Subpoenas, subject to the

Dealer Plaintiffs' right to object to production of certain ESI pursuant to

paragraph 6 of the January 7, 2015 Stipulation and Order;

WHEREAS, Dealer Plaintiffs have objected to Defendants obtaining from the DMS

Entities certain ESI requested by the DMS Provider Subpoenas;

WHEREAS Reynolds & Reynolds and CDK have each filed motions to quash the

subpoenas served on them and those motions have not yet been adjudicated (2:12-cv-00102, ECF

Nos. 259 and 272, respectively);

WHEREAS, Dealer Plaintiffs have been unsuccessful in obtaining their ESI from the

DMS Entities other than Dealertrack and did not produce any such ESI to Defendants by March

15, 2015; and

WHEREAS, to date Defendants have not obtained any Requested Dealer Plaintiff ESI

other than limited ESI for two of the forty-six Dealer Plaintiffs:

IT IS THEREFORE ORDERED that:

1.       **ESI to Be Produced By Dealer Plaintiffs.** In accordance with the schedule

specified below in paragraph 2, Dealer Plaintiffs shall produce to Defendants, from ESI that is in

the Dealer Plaintiffs' own possession, custody, and control (including but not limited to, ESI in

any electronic databases, archived electronic databases, or backup tapes to which Dealer

Plaintiffs have access), all Requested Dealer Plaintiff ESI, except to the extent that (i) Dealer

Plaintiffs specifically object to production of a specifically defined portion of such ESI in

accordance with the terms of paragraph 3 below and such objection has been sustained by the

Master (and not overruled by a higher authority) or (ii) Defendants agree in writing that a specifically defined portion of such ESI need not be produced.

2. **Schedule for Production of Dealer Plaintiff ESI.** Starting no later than April 1, 2015 and finishing no later than June 30, 2015, Dealer Plaintiffs shall produce to Defendants, on a rolling basis, the ESI described in paragraph 1 above. The rate of such production shall be sufficient to ensure that Defendants have received (cumulatively) all such ESI from at least 15 of the Dealer Plaintiffs by April 30, 2015, all such ESI from at least 30 of the Dealer Plaintiffs by May 31, 2015, and all such ESI from all of the Dealer Plaintiffs by June 30, 2015. Dealer Plaintiffs shall advise Defendants of the expected timing of such production as follows:

(i) By no later than March 31, 2015, Dealer Plaintiffs will inform Defendants of the particular Dealer Plaintiffs whose ESI will be produced by April 30, 2015;

(ii) By no later than April 30, 2015, Dealer Plaintiffs will inform Defendants of the particular Dealer Plaintiffs whose ESI will be produced by May 31, 2015;

(iii) By no later than May 31, 2015, Dealer Plaintiffs will inform Defendants of the particular Dealer Plaintiffs whose ESI will be produced by June 30, 2015; and

(iv) Dealer Plaintiffs shall keep Defendants apprised of their progress and shall promptly notify Defendants and the Master in writing if they become aware of any reason to expect that any aspect of the foregoing schedule cannot be met.

3. **Process For Any Objections To Production.** To avoid further delay, any
additional objections by Dealer Plaintiffs to production by them of the Requested Dealer Plaintiff
ESI shall be identified and resolved on an expedited basis, as follows:

(i)     At the same time that Dealer Plaintiffs identify to Defendants, in
accordance with paragraph 2(i)-(iii) above, the particular Dealer Plaintiffs
whose ESI will be included in the next monthly tranche of ESI production,
counsel for Dealer Plaintiffs shall also provide to Defendants, for each
such Dealer Plaintiff:

(A)     a detailed list of each category[1] of Requested Dealer
Plaintiff ESI that is within the possession, custody, or
control of each such Dealer Plaintiff, together with an
indication of the time period(s) for which each such
category of data exists, including in archived databases and
on backup tapes;

(B)     printouts reflecting a representative exemplar of the
contents of each type of database, or other similar data set,
of Requested Dealer Plaintiff ESI that is within the
possession, custody, or control of each such Dealer
Plaintiff, including in archived databases and on backup

---

[1]     For data that are stored in databases that may be represented in the form of columns and
rows, this list shall be sufficiently granular to identify the type of data contained in each row and
column. For other types of databases, this list shall have reasonably equivalent granularity.

tapes, together with an indication of the time period(s) of the data represented in each such database or data set[2]; and

(C)    to the extent that such Dealer Plaintiff objects to producing any of the ESI referenced in such list or exemplar, a written statement of each such objection, together with a specific identification of each category of Requested Dealer Plaintiff ESI, and each column (or analogous unit) of the provided exemplars, to which the objection applies.

(ii)    By no later than March 31, 2015, Dealer Plaintiffs will provide Defendants with the documents and information specified in subparagraph (i) above with respect to the two Dealer Plaintiffs for whom limited ESI was produced on March 16, 2015.

(iii)    Within three (3) business days of Dealer Plaintiffs' identification to Defendants of any objection(s) in accordance with paragraph 3(i)(C) above, Dealer Plaintiffs and Defendants shall meet and confer concerning such objection(s). To the extent any such objection is not resolved by agreement within two (2) business days of the commencement of such meet and confer, the parties shall present the dispute regarding such objection to the Master as follows:

(A)    Within four (4) business days of the commencement of such meet and confer, Dealer Plaintiffs shall email to Defendants and submit to the Master a single position

---

[2]    Dealer Plaintiffs may redact from such exemplars any particular items of information that are subject to an objection that is made in accordance with subparagraph 3(i)(C) of this Order.

paper addressing all unresolved objections that were the
subject of such meet and confer.

(B)     Within two (2) business days of Defendants' receipt of
Dealer Plaintiffs' position paper, Defendants shall submit
their own single counter-position paper.

(C)     A telephonic hearing regarding all such unresolved
objections shall be held before the Master at his earliest
convenience following submission of the parties' respective
position papers.

(iv)     If, as of the applicable deadline prescribed in paragraph 2 above for the
production of any particular Dealer Plaintiff's ESI, the Master has not yet
ruled upon any objection properly asserted under paragraph 3 above
pertaining to that particular Dealer Plaintiff's ESI, that particular Dealer
Plaintiff shall nevertheless produce by the applicable deadline all of its
Requested Dealer Plaintiff ESI other than the specific categories of data to
which the still-pending objection applies.

4.     **Effect of This Order on Other Discovery Activity.** Unless Dealer Plaintiffs
materially breach their obligations under this Stipulated Order, the terms of this Stipulated Order
shall constitute the exclusive manner and process through which Defendants may, prior to June
30, 2015, seek to obtain directly from the Dealer Plaintiffs the Requested Dealer Plaintiff ESI.
All aspects of the July 14, 2014 Motion to Compel that pertain to the Requested Dealer Plaintiff
ESI shall be held in abeyance until June 30, 2015.  Nothing in this Stipulated Order prohibits or
restricts Defendants from seeking, or moving to compel production of, any discovery from

Dealer Plaintiffs that falls outside the scope of Requested Dealer Plaintiff ESI. Nor does this

Stipulated Order prohibit Defendants from seeking, or moving to compel, production of any

Requested Dealer Plaintiff ESI from any third party.

**IT IS SO ORDERED.**

Dated: _____, 2015        _____

                                      HON. MARIANNE O. BATTANI
                                      United States District Court Judge

# EXHIBIT B

# LARSON · KING

**Shawn M. Raiter**
Direct Dial: (651) 312-6518
Direct Dial Fax: (651) 789-4803
E-Mail: sraiter@larsonking.com
Website: www.larsonking.com

April 17, 2014

Marguerite M. Sullivan
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
marguerite.sullivan@lw.com

Re:     Auto Dealer Plaintiffs' procurement data

Dear Ms. Sullivan:

The Auto Dealer Plaintiffs ("Auto Dealers") write in response to your March 15, 2014, letter about the production of procurement data.

Since early February 2014, the Auto Dealers have produced documents that are responsive to the discovery requests served by Sumitomo. The Auto Dealers are producing documents on a rolling basis and will continue to produce additional documents.

The documents produced to-date by the Auto Dealers include documents that satisfy Sumitomo's requests for procurement data as that phrase is outlined in your letter of September 7, 2012 and Request for Production No. 1. The Auto Dealers anticipate that future productions will also include documents with procurement data.

We have investigated the Auto Dealers' business practices, data gathering, and storage methods. We have learned, thus far, that the Auto Dealers do not maintain and store the categories of procurement data Sumitomo has requested, in transactional databases, or spreadsheet documents. The Auto Dealers instead generally maintain individual documents, such as invoices for parts and vehicles, which contain the procurement data Sumitomo seeks. If we discover that an Auto Dealer maintains and stores the categories of procurement data Sumitomo has requested in transactional databases, or spreadsheet documents, we will produce that information.

Page 2
April 17, 2014

Thank you.

Very truly yours,

**Larson • King, LLP**

Shawn M. Raiter

SMR:lcb
LK 1397235-v1

cc:     All Defendants' Counsel
        End Payor Plaintiffs' Counsel
        Direct Purchaser Plaintiffs' Counsel
        Ford's Counsel

# EXHIBIT C

**From:** Vicky Romanenko <Vicky@cuneolaw.com>
**Date:** March 18, 2015 at 11:09:17 PM EDT
**To:** "Gangnes, Larry" <GangnesL@LanePowell.com>
**Cc:** "Cherry, Steven (Steven.Cherry@wilmerhale.com)" <Steven.Cherry@wilmerhale.com>, "Donovan, David P (David.Donovan@wilmerhale.com)" <David.Donovan@wilmerhale.com>, "Patrick.Carome@wilmerhale.com" <Patrick.Carome@wilmerhale.com>, Evelyn Li <evelyn@cuneolaw.com>, "donbarrettpa@gmail.com" <donbarrettpa@gmail.com>, "Brian K. Herrington (BHerrington@barrettlawgroup.com)" <BHerrington@barrettlawgroup.com>, "Raiter, Shawn" <sraiter@larsonking.com>, Jon Cuneo <JonC@cuneolaw.com>, "Hawkes, Peter" <HawkesP@Lanepowell.com>, "Davis, Kenneth R." <DavisK@LanePowell.com>
**Subject: RE: DMS Production**

Larry,

We are seeking to reach agreement with Defendants. However, given that we do not have agreement on Defendants' motions to compel and that we have not agreed to streamline the objections process by focusing on the fields, as the parties had agreed to do while negotiating the Stipulation and Order Regarding Certain Defendants' Motion to Compel Downstream Discovery, it is premature to discuss a production schedule. We cannot negotiate against ourselves and we cannot commit to engaging in an extremely burdensome and costly data production involving 100+ fields (more than certain Defendants produced to Plaintiffs) if Defendants are going to request further information and file further motions to compel against Dealership Plaintiffs, including while Dealership Plaintiffs are undertaking the production. Our clients have been making productions to Defendants for over a year; it is imperative for us to agree upon a conclusion to Dealership Plaintiffs' production before Dealership Plaintiffs can take on the additional burdens of the DMS production. Please advise us as to whether Defendants will compromise with Dealership Plaintiffs. If so, we can circulate a draft proposal.

The schedule set forth in my March 12 email, disparaged in your email below as "lackadaisical" is significantly shorter than the schedule on which Furukawa produced its data to Plaintiffs, under which the time for production did not even begin running until all disputes related to data were resolved. Furukawa did not complete production of its data until 139 days after negotiations regarding data productions were completed.

We are seeking to resolve objections as early and efficiently as possible by focusing on the available fields. Defendants, however, have refused to engage in a meet and confer regarding the fields and have instead filed a premature motion concerning data not represented in the fields. Your motion to compel is in any event properly denied based on Defendants' failure to comply with LR 7.1, given that a failure to follow Local Rule 7.1 "'provides a sufficient basis in itself to deny' a motion . . . ." *Krygoski Const. Co., Inc. v. City of Menominee*, 2006 WL 2092412, at *2 (W.D. Mich. July 26, 2006) (quoting *Woodhull v. County of Kent*, 2006 WL 708662 , at *1 (W.D.Mich.2006)), *see also Kim v. U.S. Dept. Labor*, 2007 WL 4284893, at *1 (W.D. Mich. December 4, 2007) (denying motion as violative of LR 7.1 and premature); *Powers v. Thomas M. Cooley Law School* , 2006 WL 2711512 , at *3 (W.D. Mich. September 21, 2006) ("counsel has displayed impatience and not a 'good-faith effort to resolve each specific discovery dispute,' as required by this court's rules. This failure, in and of itself, is grounds for denial of the motion and imposition of sanctions."). Defendants never indicated to Dealership Plaintiffs that they intended to file a motion to compel before receiving Dealership Plaintiffs' objections to the Dealertrack fields and never advised Dealership Plaintiffs of any intention to make a filing on March 11. Instead, Defendants, who themselves took a month to schedule a meet and confer with Dealership Plaintiffs regarding the

issues articulated by Dealerships during the CDK meet and confer, decided that they could not wait two days to properly work through Dealership Plaintiffs' objections to the Dealertrack fields and filed a motion to compel with no notice to Plaintiffs.

# EXHIBIT D

**From:** Vicky Romanenko [mailto:Vicky@cuneolaw.com]
**Sent:** Thursday, March 19, 2015 8:25 AM
**To:** Gangnes, Larry
**Cc:** Hawkes, Peter; Donovan, David P (David.Donovan@wilmerhale.com); Cherry, Steven
(Steven.Cherry@wilmerhale.com); Don Barrett, PA; sraiter@larsonking.com; Jon Cuneo; Brian K.
Herrington (BHerrington@barrettlawgroup.com); Evelyn Li; Davis, Kenneth R.;
Patrick.Carome@wilmerhale.com
**Subject:** RE: ADPs' Initial Dealertrack DMS Data Production

Larry,

We write to follow up on our production from Dealertrack.  As you confirmed in your email yesterday
we have sent you productions for Central Salt Valley as well as Stephen Wade.  These productions
contain the Dealertrack fields save for the columns identified as objectionable in my email of March 11,
2015.  The columns containing personal data have been left blank per our agreement.  We have
conferred with Dealertrack, who has indicated to us, as they did during our previous meet and confer,
that the fields they have already sent you are the fields from which they can produce data and that
there are no additional fields.  We inquired with them about your statement that there is a floor
financing field.  They stated that what they told Defendants was that the "vehicle cost" field was also
known as "floorplan liability."  As you know, we have already agreed to produce this field to you and
have produced it for Central Salt Valley and Stephen Wade.

Dealertrack also advised us that you indicated that you were seeking data for all named dealers for
whom Dealertrack had data and that our clients' data should be produced directly to you.  As you know
this is a violation, of our stipulation, which states that "[t]he Dealership Plaintiffs" and not the
Defendants "will seek" and "produce to Defendants the ESI sought in the DMS Provider Subpoenas as to
Dealership Plaintiffs."  Our stipulation limits Defendants to pursuing "from the DMS Entities the ESI
sought in the DMS Provider Subpoenas as to automobile dealers, other than the Dealership
Plaintiffs."  The attempts to circumvent Dealership Plaintiffs' counsel and obtain represented parties'
data without consent are very concerning.

Finally, with regard to Holzhauer Auto and Truck Sales, as stated in my email of March 16, this
dealership will no longer be a named plaintiff.

We will respond to the other questions posed in your email of yesterday in later correspondence, under
separate cover.