```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3                          —    —    —

 4     IN RE:  AUTOMOTIVE PARTS
       ANTITRUST LITIGATION
 5
                        MDL NO. 2311
 6     _____/

 7
                    PRELIMINARY SETTLEMENT APPROVAL
 8
               BEFORE THE HONORABLE MARIANNE O. BATTANI
 9                   United States District Judge
               Theodore Levin United States Courthouse
10                   231 West Lafayette Boulevard
                            Detroit, Michigan
11                    Thursday, April 9, 2015

12
       APPEARANCES:
13
       Direct Purchaser Plaintiffs:
14

15     DAVID H. FINK
       FINK & ASSOCIATES LAW
16     100 West Long Lake Road, Suite 111
       Bloomfield Hills, MI  48304
17     (248) 971-2500

18
       LEWIS H. GOLDFARB
19     McELROY, DEUTSCH, MULVANEY & CARPENTER, L.L.P.
       1200 Mount Kemble Avenue
20     Morristown, NJ  07962
       (973) 993-8100
21

22     GREGORY P. HANSEL
       PRETI, FLAHERTY, BELIVEAU & PACHIOS, L.L.P.
23     One City Center
       Portland, ME  04112
24     (207) 791-3000

25
```

```
 1        APPEARANCES:   (Continued)

 2        Direct Purchaser Plaintiffs:

 3        JOSEPH C. KOHN
 4        KOHN, SWIFT & GRAF, P.C.
          One South Broad Street, Suite 2100
 5        Philadelphia, PA  19107
          (215) 238-1700
 6
 7        EUGENE A. SPECTOR
          SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
 8        1818 Market Street, Suite 2500
          Philadelphia, PA  19103
 9        (215) 496-0300

10
          End-Payor Plaintiffs:
11
12        ADAM T. SCHNATZ
          THE MILLER LAW FIRM, P.C.
13        950 West University Drive, Suite 300
          Rochester, MI  48307
14        (248) 841-2200

15
          STEVEN N. WILLIAMS
16        COTCHETT, PITRE & McCARTHY, L.L.P.
          840 Malcolm Road
17        Burlingame, CA  94010
          (650) 697-6000
18
19        Dealership Plaintiffs:

20        GERARD V. MANTESE
21        MANTESE, HONIGMAN, ROSSMAN & WILLIAMSON, P.C.
          1361 East Big Beaver Road
22        Troy, MI  48083
          (248) 457-9200
23

24

25
```

```
 1      APPEARANCES:   (Continued)

 2      For the Defendants:

 3
        ALDEN L. ATKINS
 4      VINSON & ELKINS, L.L.P.
        2200 Pennsylvania Avenue NW, Suite 500 West
 5      Washington, D.C.  20037
        (202) 639-6613
 6

 7      GARY K. AUGUST
        ZAUSMER, AUGUST & CALDWELL, P.C.
 8      31700 Middlebelt Road, Suite 150
        Farmington Hills, MI  48334
 9      (248) 851-4111

10
        EVA W. COLE
11      WINSTON & STRAWN, L.L.P.
        200 Park Avenue
12      New York, NY  10166
        (212) 294-4609
13

14      BRANDON W. DUKE
        WINSTON & STRAWN, L.L.P.
15      1111 Louisiana Street, 25th Floor
        Houston, TX  77002
16      (713) 651-2600

17
        JASON R. GOURLEY
18      BODMAN, P.L.C.
        1901 St. Antoine Street, 6th Floor
19      Detroit, MI 48226
        (313) 259-7777
20

21      HOWARD B. IWREY
        DYKEMA GOSSETT, P.L.L.C.
22      39577 Woodward Avenue, Suite 300
        Bloomfield Hills, MI  48304
23      (248) 203-0526

24

25
```

1    APPEARANCES:   (Continued)

2    **For the Defendants:**

3

4    CRAIG SEEBALD
     **VINSON & ELKINS, L.L.P.**
5    2200 Pennsylvania Avenue NW, Suite 500 West
     Washington, D.C.   20037
6    (202) 639-6585

7

     JOANNE GEHA SWANSON
8    **KERR, RUSSELL & WEBER, P.L.C.**
     500 Woodward Avenue, Suite 2500
9    Detroit, MI   48226
     (313) 961-0200

10

11   LINDSEY ROBINSON VAALA
     **VINSON & ELKINS, L.L.P.**
12   2200 Pennsylvania Avenue NW, Suite 500 West
     Washington, D.C.   20037
13   (202) 639-6585

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          TABLE OF CONTENTS

 2                                                           Page

 3

 4   SETTLEMENT REGARDING TRW
         by Mr. Kohn.................................... 10
 5
     SETTLEMENT REGARDING PANASONIC & HITACHI
 6       by Mr. Williams............................... 19
         by Mr. Mantese................................ 27
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   Detroit, Michigan
 2   Thursday, April 9, 2015
 3   At about 1:30 p.m.
 4                          —   —   —
 5          (Court and Counsel present.)
 6          THE CASE MANAGER:  Please rise.
 7          The United States District Court for the Eastern
 8   District of Michigan is now in session, the Honorable
 9   Marianne O. Battani presiding.
10          You may be seated.
11          The Court calls Case No. 12-md-02311, Automotive
12   Parts Antitrust Litigation.
13          THE COURT:  Good afternoon.
14          ATTORNEYS:  (Collectively) Good afternoon, Your
15   Honor.
16          THE COURT:  More of you than I expected.  Hello, we
17   have people on the phone?
18          MS. COLE:  Hello.
19          THE COURT:  Hi, this is Judge Battani.  We are just
20   about ready to begin.  Can you hear me?
21          MS. COLE:  Yes, I can hear you.
22          MR. DUKE:  Yes.
23          THE COURT:  Let's start with appearances while you
24   are speaking, is it Ms. Cole on the phone?
25          MS. COLE:  Yes, Ms. Cole for the Panasonic
```

```
 1    defendants from Winston & Strawn.

 2             THE COURT:  All right.  And Mr. Duke?

 3             MR. DUKE:  Yes, also Brandon Duke.

 4             THE COURT:  You had a little bit of bad weather

 5    today, is that what happened?

 6             MS. COLE:  Unfortunately we are stuck.  I'm stuck

 7    in O'Hare Airport due to weather delays, so I thank you very

 8    much for accommodating us telephonically.

 9             THE COURT:  I'm very sorry.  We have good

10    weather --

11             MS. COLE:  Nothing like spending the day in O'Hare.

12             THE COURT:  We have good weather in the courtroom

13    but not so good outside.

14             All right.  Let's start with the attorneys who are

15    here so we can get everybody's appearances on the record

16    starting with plaintiffs.  You're on the wrong side, you

17    always do this to me.  Go ahead.

18             MR. FINK:  Your Honor, David Fink, liaison counsel,

19    appearing on behalf of the direct plaintiffs.

20             MR. KOHN:  Joseph Kohn, Your Honor, for the direct

21    plaintiffs.

22             MR. SPECTOR:  Eugene Spector for the direct

23    plaintiffs.

24             MR. HANSEL:  Greg Hansel for the direct plaintiffs,

25    Your Honor.
```

```
 1              MR. FINK:  And, Your Honor, Steve Kanner can meet
 2   with Mr. Duke, I believe he's also at O'Hare.
 3              THE COURT:  He's at O'Hare too?
 4              MR. FINK:  Yeah, I think he's in O'Hare also, yes.
 5              THE COURT:  Do you want to make an announcement,
 6   maybe we could get him on the phone?
 7              MR. DUKE:  I'm not actually in O'Hare, sorry.
 8              THE COURT:  See, the truth comes out.
 9              MR. WILLIAMS:  Good afternoon, Your Honor.
10   Steve Williams for the end-payor plaintiffs.
11              MR. MANTESE:  Your Honor, Gerard Mantese for the
12   auto dealers.
13              MR. SCHNATZ:  Your Honor, Adam Schnatz on behalf of
14   the end payors.
15              THE COURT:  Okay.  I have a Louis Goldfarb listed
16   here.
17              MR. GOLDFARB:  Yes, Your Honor, for the direct
18   purchasers.
19              THE COURT:  Direct purchasers.  All right.  We go
20   over to the defense.
21              MS. SWANSON:  Joanne Swanson, local counsel for the
22   Panasonic defendants.
23              MR. IWREY:  Your Honor, Howard Iwrey on behalf of
24   the TRW defendants.
25              MR. SEEBALD:  Craig Seebald of Vinson & Elkins on
```

1    behalf of the Hitachi defendants.

2            MR. ATKINS:  Aldin Atkins from Vinson & Elkins also

3    on behalf of the Hitachi defendants.

4            MS. VAALA:  And Lindsey Vaala from Vinson & Elkins

5    on behalf of the Hitachi defendants.

6            THE COURT:  I'm sorry.  It's --

7            MS. VAALA:  Lindsey Vaala.

8            THE COURT:  I've got it, yes, and you are with

9    Hitachi too?

10           MS. VAALA:  Yes.

11           MR. AUGUST:  Gary August for Mitsubishi Electric,

12   Your Honor.

13           THE COURT:  And Jason Gourley?

14           MR. GOURLEY:  Jason Gourley, local counsel on

15   behalf of T. Rad, Your Honor.

16           THE COURT:  On behalf of --

17           MR. GOURLEY:  T. Rad, Your Honor.

18           THE COURT:  Let's see, do we have auto dealer

19   plaintiffs, that was Mr. Mantese?

20           MR. MANTESE:  Yes, Your Honor.

21           THE COURT:  I just want to make sure we have

22   everyone represented.  I know somebody has to take a flight

23   out, who has got to leave first?

24           MR. FINK:  The directs with TRW, we are hoping to

25   go first because they have multiple flights scheduled.

1    THE COURT:  Anybody else have multiple flights?  I

2  don't want to give preference especially since you are the

3  last ones to file.  I didn't miss that.  All right.  Okay.

4    Let's take then the direct-purchaser plaintiffs and

5  the TRW defendants.

6    MR. KOHN:  Thank you, Your Honor.  Joseph Kohn for

7  direct purchasers.

8    Thank you for hearing us today, and thank you for

9  hearing us first.  I will try to move through this

10  presentation promptly.  This process of preliminary approval

11  for class action settlement is not novel to the Court at this

12  juncture.  I don't want to repeat the law that is set forth

13  in our memorandum but just a few highlights.

14    With respect to where the direct purchasers are

15  with the TRW settlement and this particular case, the

16  occupant safety system piece of this larger MDL litigation,

17  we believe we are at another significant mile marker in the

18  road.  With this settlement this is the first time that we

19  are proposing that a claim form be included with the notice

20  to the class members, and are proposing that in connection

21  with the final approval hearing that the Court approve a plan

22  of distribution of the settlement funds that have been

23  received from TRW and from the prior settlement with AutoLiv

24  and that there be a distribution to the class members.  That

25  is a mile marker.

Preliminary Settlement Approval • April 9, 2015

1    THE COURT:  So you are asking for a final hearing

2    with all of the bells and whistles beforehand?

3    MR. KOHN:  Correct, that we would propose be in

4    July, and I can go through the dates.

5    In connection with that process, we have also

6    prepared a notice that would advise the class members that

7    counsel would file a petition for an award of attorney fees

8    and litigation expenses relative to these two settlements in

9    this case.  The class members would have the opportunity to

10    comment, respond to that, in addition to the opportunity to

11    comment on the distribution plan and the merits of the

12    settlement.

13    Your Honor, this case, occupant safety, the first

14    complaints were filed in July of 2013, so a little less than

15    two years ago, the motions to dismiss were denied August

16    2014, the settlement with AutoLiv received final approval

17    from the Court in January of this year, January 2015, and the

18    settlement agreement with TRW was signed on February 25th.

19    The settlement amount is $8 million in cash plus an

20    extensive cooperation section that will bring the total funds

21    received for the direct purchaser class in the occupant

22    safety systems case to 43.6 million.

23    We would point out just a few factors in support of

24    the preliminary approval and also with the final approval we

25    will brief these in more detail.  This was the result of

1    arm's-length litigation and fairly extensive litigation, and

2    I know all of us on our side of the V have great respect and

3    friendship for Mr. Iwrey and his colleagues but I will say

4    that these negotiations did reach several moments where one

5    side or the other was getting ready to walk or there were

6    impasses and there were some difficult discussions both to

7    strike the original terms of the deal and then to go over the

8    finer points of the agreement.

9          We would point out that the settlement amount to

10   the direct purchasers is larger than the amount paid by TRW

11   in its guilty plea fine, which was 5.1 million.  That this

12   settlement is the largest of the individual settlements with

13   the other plaintiff classes.

14         So, again, Your Honor, we have prepared as we have

15   done in some other hearings -- the proposed agreed-upon

16   preliminary approval order has a lot of blanks with dates

17   with reference this could occur 20 days after approval or

18   50 days after, so I have prepared a summary document that

19   assuming that Your Honor is prepared to approve the order and

20   it is entered tomorrow, the 10th of April, to actually put in

21   the actual dates rather than have those blanks, so we

22   prepared both a form of the order with those dates plugged in

23   and a one-page sheet with those proposed dates, and Mr. Iwrey

24   has reviewed them as well, so --

25         THE COURT:  Okay.

1      MR. KOHN:  I can hand up copies now to Your Honor

2  and also submit them electronically or Mr. Fink could if that

3  would be of some help?

4      THE COURT:  Yes, electronic would be fine.

5      THE LAW CLERK:  E-File them because they are

6  orders.

7      THE COURT:  Oh, you will have to e-file them to

8  Kay.

9      THE LAW CLERK:  It is not e-filing, it is e-mail.

10     THE COURT:  Whatever the electronic equivalent --

11     MR. FINK:  Right, there is a protocol we are

12  supposed to follow that somebody smarter than me understands

13  in my office, and we can do that.

14     THE COURT:  All right.

15     MR. KOHN:  So for the Court's convenience we did

16  try to check these dates to make sure they don't fall on a

17  Saturday or Sunday.

18     THE COURT:  Let's take a look at -- let's start

19  with -- I know in your proposed order you had specifically

20  like 30 days after the preliminary approval, et cetera, so

21  let's see what you have here.

22     MR. KOHN:  These dates do mirror those proposed

23  dates that they simply, you know, make the assumption, if you

24  will, that we are working off an April 10th date to have a

25  round number.  There is one -- with one exception with the

1    deadline of filing a claim form, we thought we should allow

2    some longer time than we had originally proposed so we

3    proposed essentially 120 days from tomorrow but it would be a

4    little more than three months from the time the notice goes

5    out.  The objections or opt outs are due earlier, but to the

6    extent that we are gathering the information and going over

7    their records, submitting a claim, it is typical to have a

8    longer period of time and be beyond the opt-out date.

9            THE COURT:  Okay.  Mr. Iwrey, do you agree with

10   these --

11           MR. IWREY:  Your Honor, that's acceptable.

12           THE COURT:  So let's look, I guess we need a final

13   date for the hearing here in court.  You have on or after

14   Tuesday, July 14th.  Kay, what do we look like?

15           MR. FINK:  That's Bastille Day, of course, Your

16   Honor, so I don't know if the Court will be open.

17           THE COURT:  We better change it then.  July 14th,

18   do you want that in the morning?

19           MR. KOHN:  That would be fine, whatever is

20   convenient for the Court.

21           THE COURT:  I don't think it would take long unless

22   you get somebody who is objecting, but I could set it either

23   at 1:30 or I could set it at 10:00, your choice?

24           MR. KOHN:  I think the 1:30 time does allow some of

25   us to try to make it in a day trip and not have to stay over,

1    if that's acceptable to the Court?

2              THE COURT:  That's fine.  July 14th at 1:30.

3              MR. KOHN:  Thank you, Your Honor.

4              THE COURT:  All right.

5              MR. FINK:  Your Honor, so we will -- we will submit

6    the order putting in that -- including the hearing time and

7    date that we just talked about and that again presumes that

8    it is entered either today or tomorrow.  If it is entered

9    after tomorrow then Molly can contact us and we can replace

10   all the dates if necessary.

11             THE COURT:  Is there any reason why we couldn't get

12   it tomorrow?

13             MR. FINK:  Not that I know of.

14             THE COURT:  Okay.  We should -- just a minute.

15   Kay, are you here tomorrow?

16             THE LAW CLERK:  She's gone.

17             THE COURT:  Oh, she's not here.

18             THE LAW CLERK:  I can't get the calendar, I tried

19   to check but I can't get it pulled up.

20             THE COURT:  It looks like it is going to be okay.

21   I'm not here tomorrow but if you are telling me these are the

22   orders exactly except with these dates I will look at them

23   electronically and --

24             MR. FINK:  We will get the order to the Court by

25   2:30 today.

1           THE COURT:  Oh, today?

2           MR. FINK:  Yes, I can easily get it to the Court.

3           THE COURT:  Well, then that's not a problem.  All

4    right.

5           MR. FINK:  If we change the rules regarding using

6    cell phones in the courtroom I could have it in ten minutes?

7           THE COURT:  You may use your cell phone.

8           MR. FINK:  Thank you.

9           THE COURT:  Make sure it doesn't ring.  Okay.

10          Well, let's go back in terms of this settlement.

11   Mr. Iwrey, you don't have -- do you agree with the terms of

12   the settlement?  Maybe we should put the rest of the terms --

13   I think we've got most of them on the record already.

14          MR. KOHN:  I think, Your Honor, from plaintiffs'

15   perspective we touched the highlights, it is the cash payment

16   and the extensive cooperation set forth in the document.

17          THE COURT:  Okay.  Mr. Iwrey, anything?

18          MR. IWREY:  Yes, Your Honor, I would agree.  Let me

19   correct something that Mr. Kohn said, he said this is the

20   product of arm's-length litigation, I think he meant

21   negotiations.

22          MR. KOHN:  Yes.

23          MR. IWREY:  While the litigation was certainly

24   arm's-length or even longer.

25          THE COURT:  All right.  I have reviewed the

 1    proposed -- well, I have reviewed the settlement agreement

 2    and I have reviewed the proposed orders obviously without the

 3    dates but I agree with the dates that have been put in here,

 4    and I think we have gone over these rules before but briefly

 5    I will state that I think the Court has to make a

 6    determination that the settlement is fair, reasonable and

 7    adequate.  The Court has reviewed this and I find that the

 8    $8 million cash payment along with the -- this is true for

 9    all of these looking at the expense and the duration of

10    these -- of this litigation, the complex issues, and the

11    cooperation agreements which I think are very important are

12    included in this.

13           So the Court then goes to look at the proposed

14    settlement class, and as in the other cases which the Court

15    has reviewed under Rule 23 because as to the classes they

16    pretty much all follow the same thing, obviously the class

17    here is for the occupant safety -- yes, the occupant safety

18    system as a component part.

19           In terms of the class certification, certainly

20    there is numerosity; there is commonality because anti-price

21    fixing conspiracy cases by their nature deal with common

22    legal and factual issues; there's typicality because it is

23    satisfied here because the individual plaintiffs' injury

24    arise from the same wrong that is incurred by the whole;

25    there is adequacy of representation as to the named

1    plaintiffs, they have the same interest as other class

2    members; and as to counsel, counsel is qualified, experienced

3    and able to conduct litigation.  The Court finds that there

4    are common questions that predominate and that the class

5    resolution is the superior method.

6          So I think all of the Court Rules on class are

7    satisfied in this case, and I do believe that it was a

8    resolution that was resolved at arm's-length negotiations,

9    and I think counsel, as the Court has indicated before,

10   clearly are capable and have exhibited their capabilities

11   here to come to this resolution, so the Court does, in fact,

12   approve the -- preliminarily approve the proposed settlement.

13   I provisionally certify the class as stated for in the

14   pleadings.

15         Class counsel, I think we need to do that too, and

16   the Court will appoint class counsel for the settlement

17   class, the provisional class will be the class counsel.  And

18   the notice the Court approves with the dates inserted in it.

19         Did I forget anything, Counsel, anything else that

20   we need --

21         MR. KOHN:  No, Your Honor.

22         THE COURT:  -- Mr. Kohn?

23         Mr. Iwrey?

24         MR. IWREY:  No, Your Honor.

25         THE COURT:  Thank you.  That concludes that.

1          Let's see, then we have Panasonic and Hitachi, who

2     wants to go --

3          MR. WILLIAMS:  Your Honor, Steve Williams for the

4     end payors.  I will go first.

5          The settlements for Hitachi and Panasonic are

6     different but the standards are similar.

7          THE COURT:  Okay.  Wait a minute, are we going to

8     do them together?

9          MR. WILLIAMS:  I was going to ask you if you have a

10    preference because I could set forth the material terms of

11    the two settlements and then at one time address the

12    standards for approval?

13         THE COURT:  I think that's reasonable.  Let me just

14    find those two.  You are for end payors with Hitachi.  Okay.

15    You may proceed.

16         MR. WILLIAMS:  The first settlement that was filed

17    with the Court was the Panasonic settlement, this is a

18    settlement between the end payors and Panasonic.  These

19    proposed settlements in conjunction with the auto dealers'

20    settlements I believe resolve all claims in this Court

21    against Panasonic.

22         Panasonic is a defendant in three cases; switches,

23    steering angle sensors and HID ballasts.  Panasonic has

24    agreed to pay a total for the end-payor cases of $17,100,000

25    to resolve those three cases.  In our papers we provided the

1    specific allocations in those cases of what those dollars

2    will be, I can recite that for the Court or, as I mentioned,

3    it is in the papers as well.

4         THE COURT:  Okay.

5         MR. WILLIAMS:  In addition to the financial

6    consideration, Panasonic has agreed to provide what is in our

7    view very meaningful and important cooperation, cooperation

8    that we believe goes beyond what we otherwise would have

9    available to us, and this comment will apply equally to

10   Hitachi.  Given that these cases as we have alleged and as is

11   we think confirmed in the plea agreements that have been

12   reached involve conspiracies, involve destruction of

13   evidence, involve secret meetings and code words, we think

14   this is a case where this type of cooperation is even more

15   meaningful and even more important than it might be in other

16   cases.  And I note as well finally for Panasonic as with

17   Hitachi that they are the first defendant to settle in the

18   cases in which they have settled.

19        For Hitachi, similarly Hitachi has agreed to a

20   settlement with the end payors and in conjunction with the

21   auto dealers settlement that I believe resolves all

22   outstanding or all pending claims in this Court that are

23   brought against Hitachi.

24        As with Panasonic, Hitachi has agreed to pay one

25   lump sum to resolve all cases against it, and that sum is

1    divided amongst one, two, three, four, five --

2             THE COURT:  Nine parts.

3             MR. WILLIAMS:  -- nine cases that they are in.

4        The Court may have noted that we have proposed --

5    or that we intend to file a motion to consolidate two of

6    those cases to make them one, it has not happened yet, if we

7    do we will modify the orders to reflect if that's approved by

8    the Court, that air flow meters and electronic throttle

9    bodies have become a single case as we are alleging it rather

10   than two, but other than that the settlement is to resolve

11   all of those cases.  And, again, the total settlement is I

12   believe $46,700,000, and I'm just finding that number, I

13   apologize.  I had written down the separate numbers for each

14   of the settlements which are also at page 10 of our motion,

15   and I could go through each of those or if the Court wants

16   that total number?

17            THE COURT:  I have the total number as

18   $46,740,000 --

19            MR. WILLIAMS:  Correct.

20            THE COURT:  -- is that right?

21            MR. WILLIAMS:  Yes.

22            THE COURT:  You have those relegated to each of the

23   nine parts that you have right now --

24            MR. WILLIAMS:  We do.

25            THE COURT:  -- your papers, in the agreement, so

1    the Court has reviewed that so unless there is an objection I

2    don't think you need to separately set forth that on the

3    record.

4            MR. WILLIAMS:  I do not or I do?  I apologize.

5            THE COURT:  You do not.

6            MR. WILLIAMS:  Thank you.  And as with Panasonic,

7    Hitachi has also agreed to provide substantial and meaningful

8    cooperation, it is the first settling defendants in these

9    cases.  And for the same reasons that I mentioned in relation

10   to Panasonic, in these cases we think the value of this

11   cooperation is particularly important and particularly

12   meaningful and will be particularly beneficial to the class.

13           In terms of the settlements themselves, both for

14   Panasonic and for Hitachi, they were the result of protracted

15   arm's-length negotiation between experienced counsel on both

16   the Panasonic side and the Hitachi side, extremely

17   experienced, extremely capable counsel who vigorously

18   defended the interest of their clients.  Negotiations in the

19   case of Panasonic went over a period of at least six months,

20   and with Hitachi I believe negotiations took place over a

21   period of a year and a half.  In the case of Hitachi, it also

22   involved the assistance of Ken Feinberg, a very prominent,

23   recognized mediator, multiple two-day sessions with

24   Mr. Feinberg and with the parties were held before we reached

25   the settlement terms, at all times the parties engaged in

1    arm's-length negotiations, and as a result of that we think

2    that certainly suggests that the settlement should be

3    preliminarily approved.

4          Briefly, because it is in the papers and the Court

5    has recited it, we know when there is a public interest in

6    resolution of class actions and anti-trust actions, we think

7    that in these cases for Panasonic and Hitachi there is no

8    reason to doubt the fairness of the settlements, there is no

9    obvious deficiencies in the settlements, the results in light

10   of the risk of litigation both in this Court with the

11   defenses made by defendants and the risk over time of

12   potential changes in the law, the result is good in light of

13   those risks.

14         All of the requirements of both 23(a) and 23(b)(3)

15   are met in these proposed settlements; there's numerosity,

16   the legal and factual questions are common, the claims of the

17   class members are typical of the claims of the class, the

18   class reps and counsel will adequately protect the interest

19   of the class members.  And as to 23(b)(3) common questions

20   certainly predominate in this horizontal price-fixing

21   conspiracy, and we believe class resolution is the superior

22   method to resolve these claims rather than individual

23   litigation.

24         We have not, unlike the settlement just presented

25   to the Court, put forward a notice or a plan of distribution

1    but it is our intention to put those things before the Court

2    very soon.  We have been working with our claims

3    administrator and with our notice provider to put that plan

4    together, and it is our hope that within the next 30 days, if

5    certainly not then by the May 6th hearing, we have an

6    opportunity to present that to the Court for approval so that

7    we can start to disseminate notice to our class members of

8    the settlements and to bring the settlements we have reached

9    to date and other settlements we may reach to finality.

10         That is my presentation on Hitachi and Panasonic.

11   I had a comment on T. Rad but I could wait to see if there

12   are any questions first.

13         THE COURT:  I'm sorry, but I don't know about

14   T. Rad.

15         MR. WILLIAMS:  T. Rad at the last hearing we had,

16   which I think was January 28th, we had just reached agreement

17   with them on essential terms.  We had hoped to present it to

18   the Court today.  We are still finalizing the agreement, and

19   I know counsel for T. Rad is here.

20         THE COURT:  Yes.

21         MR. WILLIAMS:  My understanding is we expect within

22   a week to have those papers to the Court, and the parties

23   would request that the Court consider approving that without

24   oral argument, and if the Court certainly directs us we will

25   intend to be here to answer any questions, but if the papers

1    are sufficient for the purpose of preliminary approval then
2    we would be able to fold that into the notice program we are
3    putting together at this time and somewhat accelerate that to
4    catch up with the prior settlements.
5          THE COURT:  You scared me because I thought I
6    missed reading something, there wasn't anything here for
7    T. Rad?
8          MR. WILLIAMS:  No, there are no papers before the
9    Court today but --
10         THE COURT:  Thank you.
11         MR. WILLIAMS:  -- we had suggested we might make it
12   and we didn't make it.
13         THE COURT:  We try hard to keep up with everything
14   here but -- and counsel for T. Rad, is that a correct
15   statement, do you agree with what was said here?
16         MR. GOURLEY:  Yes, that's accurate.
17         THE COURT:  And you would agree to have it approved
18   in writing?
19         MR. GOURLEY:  Yes, we would.
20         THE COURT:  Okay.  I am assuming it is going to be
21   just like all of these other ones so as a practical matter
22   the Court basically, if it is the same, would simply accept
23   your settlement agreement and make the findings that I do on
24   the record here.  That's all.  Okay.
25         MR. WILLIAMS:  Thank you.

```
 1              THE COURT:  All right.  So do you think that would
 2    be done by the May 6th meeting?
 3              MR. WILLIAMS:  The T. Rad or the notice papers?
 4              THE COURT:  Notice papers.
 5              MR. WILLIAMS:  I believe it will, I expect it will,
 6    I would hope it would be done even before then although I
 7    recognize that's only now a little less than a month away,
 8    but it is our hope to have it to the Court before that
 9    hearing.
10              THE COURT:  Because if there is anything we need to
11    deal with that we can deal with then make sure you make a
12    note of putting that on the agenda.
13              MR. WILLIAMS:  We will.
14              THE COURT:  All right.  Defendant for Panasonic and
15    Hitachi, any comment?
16              MR. MANTESE:  Your Honor, did you want to hear from
17    the auto dealers first or wait until --
18              THE COURT:  No, let's just take the end payors
19    first so we can --
20              MS. SWANSON:  I have nothing to add, Your Honor,
21    but I would defer to the Winston & Strawn lawyers on the
22    phone.
23              THE COURT:  That you would what?
24              MS. SWANSON:  Defer to the lawyers from Winston on
25    the phone -- on your conference line.
```

Preliminary Settlement Approval • April 9, 2015

```
 1            THE COURT:  Thank you.  Ms. Cole?
 2            MS. COLE:  Yes, Your Honor, I have nothing to add.
 3            THE COURT:  Okay.  Mr. Duke?
 4            MR. DUKE:  The same, nothing to add.
 5            THE COURT:  Okay.  Very good.  So we have the
 6    end payors, and before I rule on this and go through it let's
 7    take the auto dealers.
 8            MR. SEEBALD:  Your Honor, just before we go to the
 9    auto dealers, this is Craig Seebald for the Hitachi
10    defendants.  Just for the record, we have nothing further to
11    add too.
12            THE COURT:  Oh, I'm sorry, Counsel.  Thank you.
13    Thank you very much.  Sorry.
14            MR. MANTESE:  Good afternoon, Your Honor.
15    Gerard Mantese for the auto dealers.
16            We also are seeking preliminary approvals for the
17    settlements we have achieved with Hitachi and with Panasonic.
18    The settlement with Hitachi is $14,760,000.  The allocations
19    are in our motion as well.  The settlement with Panasonic is
20    $5,400,000.
21            Your Honor, we would agree with the analysis of
22    Mr. Williams as to the factors in favor of preliminary
23    approval.  The settlements were arrived at over a lengthy
24    period of time through vigorous representation, they are
25    fair, reasonable and adequate, and all of the requirements of
```

```
 1   23(a) and (b)(3) are met in terms of the class elements.
 2   Unless the Court has any questions we are seeking preliminary
 3   approval as well for our settlements.
 4            THE COURT:  All right.  Let's start with Hitachi.
 5            MR. SEEBALD:  We have nothing further to add to
 6   that either.  Thank you.
 7            THE COURT:  Thank you.  Panasonic, Ms. Cole?
 8            MS. COLE:  We are fully in support of the
 9   agreement.
10            THE COURT:  And Mr. Duke?
11            MR. DUKE:  I have nothing else to add.
12            THE COURT:  Anybody have anything else to add?
13            MS. SWANSON:  Nothing, Your Honor.
14            THE COURT:  Okay.  Thank you.  Well, then we have
15   here -- we have the end-payors agreement first with Hitachi
16   and that includes nine component parts as I read them?
17            MR. WILLIAMS:  Yes.
18            THE COURT:  There may be eight if they are
19   combined, though, correct?
20            MR. WILLIAMS:  Yes.
21            THE COURT:  But right now they are nine and that's
22   a $46,740,000 settlement.  And with -- oh, I put this down
23   twice.  Okay.  With the auto dealers with Hitachi that's also
24   a nine-component part and that's 195 -- excuse me, I've got
25   that wrong, I'm reading the fines instead of the settlement
```

1    amount.  For Hitachi with the end payors it is $46,740,000

2    and Hitachi with the auto dealers it is $14,760,000, and I

3    think in both of those they are designated to the various

4    parts, there being nine parts at this point.

5          As to the auto dealers against Panasonic, it is a

6    $5.4 million settlement, I have three parts for that;

7    switches, steering angle sensors and HID ballasts.  And as to

8    the end payors with Panasonic it is a $17,100,000 settlement.

9    And, again, as I recall these are designated to each of the

10   parts, the amount is divided over each of the parts not

11   necessarily equally but specifically designated.

12         As to all of those, you know, are the settlements

13   fair, reasonable and adequate?  The Court before I even get

14   to that gets to the settlement class and the settlement

15   classes have been defined -- it is interesting because in

16   each of these they are defined in the different parts, in the

17   one settlement, of course, there are nine classes because of

18   the nine parts and the other there are three classes for both

19   the auto dealers and the end-payor purchasers.  The Court

20   just read the definition of those classes, and I find that

21   they are appropriately designated.  And certainly the amounts

22   here appear to be sufficient as they are agreed upon amongst

23   the parties with learned counsel at arm's-length

24   negotiations.

25         The Court finds as specifically stated in this case

1    that cooperation is extremely important here, and that the

2    parties have agreed to cooperate and there are specific

3    elements of that cooperation laid out in the settlement

4    agreement.

5            The Rule 23(e), of course, requires the Court's

6    approval of the proposed class settlement, and the Court

7    notes that federal policy favors settlement and, again, the

8    Court repeats that with counsel and arm's-length

9    negotiations, the lack of discovery, the difficulty of

10   proceeding with this case, the fact that these parties also

11   in some cases negotiated with Kenneth Feinberg, who the Court

12   knows as a prominent mediator, tells me that there is every

13   reason to believe that this is a fair, reasonable, adequate

14   settlement.

15           In terms of provisionally certifying the class, the

16   Court finds as it has in the other resolutions that it would

17   be impractical to do this individually, that this class

18   resolution where there are so many entities and persons

19   involved is certainly a preferred method of litigation.

20   There is commonality, typicality and there is adequacy of

21   representation.  Again, I don't need to I think go into that,

22   but the Court finds that the attorneys are learned and

23   educated in these type of matters and the class would be

24   adequately represented with the counsel, and as to the

25   individual plaintiffs they have the same interest as all of

1    the other class members.

2          Common questions certainly predominate in this

3    litigation, and the Court finds that the class resolution is

4    the superior method and all the elements as required by the

5    rules are included.

6          In terms of the notice to the class, I know one of

7    the things that is asked for is that they defer notice until

8    a later date, and the Court as it has in some of the other

9    resolutions will defer notice, I hope it can be done as soon

10   as possible because it would be really nice to move along

11   with these settlements as final settlements.  The Court will

12   stay the proceedings in accordance with the terms of the

13   settlement agreement against the named defendants.  The Court

14   does appoint the counsel as represented as class counsel for

15   the settlement class, and I think I have already indicated

16   that I approve the settlement and the settlement classes.  Is

17   there anything else?

18          MR. WILLIAMS:  No, Your Honor.  Thank you.

19          THE COURT:  Thank you.  Okay.  All right.  Before I

20   go on to one other matter, is there anything else on the

21   settlements that needs to be resolved today?

22          MR. IWREY:  Your Honor, this is Howard Iwrey for

23   TRW.

24          I assume -- you didn't mention this in your initial

25   ruling but I assume there is a stay in the proceedings with

1    respect to TRW?

2              THE COURT:  Oh, thank you.  Yes, there is a stay as

3    to TRW.  Thank you.  I did your stay as to the other

4    defendants.

5              MR. WILLIAMS:  I was going to just answer your

6    question, nothing further.

7              THE COURT:  Nothing further.  Okay.  Anything else?

8    Mr. Iwrey, anything else?

9              Okay.  I understand, Mr. Schnatz, that you want to

10   update the Court on the website?

11             MR. SCHNATZ:  Actually all of us that are local --

12   actually I think we nominated Mr. Iwrey to quickly inform the

13   Court.

14             MR. IWREY:  Thank you.

15             THE COURT:  I consider him our computer guru anyway

16   so --

17             MR. IWREY:  Hopefully this will work.  Your Honor

18   had asked us at the status conference -- not the January one,

19   but the November one, to work out some website protocols for

20   the cases of interest tab on your page.  We have among this

21   group here preliminarily discussed and I think agreed on a

22   format for something that the public could access by clicking

23   on the cases of interest tab, then going -- and I believe you

24   have a couple -- or the court has a couple of existing cases,

25   I think the Dow litigation and one other.  We would put a tab

1    for the auto parts litigation, if that's clicked on then it

2    would click to information on specific parts -- we

3    contemplate three categories, one for dates of upcoming

4    hearings and status conferences, one for information on

5    specific parts cases, so listing the 29 or so cases, and one

6    for notices of settlement separated by the various parts.  So

7    if you click on information on specific cases, then you could

8    choose what part, and then you would within each part look at

9    the direct purchaser, the automobile dealer, the end-payor

10   cases, the OEM cases and the state AG cases and the

11   public-entity cases, the various subclasses.

12           THE COURT:  Can I go back and ask only because I

13   don't know if I jumped the gun on this, when we were

14   developing the new court website so I thought that would be

15   our case but someone said to me well, no, not your case

16   because it doesn't -- it is not high notoriety but I think

17   when I look at -- so I'm not trying to -- I'm sorry.  I said

18   what do you mean?

19           MR. FINK:  That's very hurtful, Your Honor.

20           THE COURT:  I'm sorry.

21           MR. FINK:  You didn't say it but whoever said it I

22   want to meet.

23           THE COURT:  Yeah.  But the more I read there is

24   always an article in multiple papers every time something

25   happens on the case, so I feel a little bereft if we don't

```
 1   have something on our website for it.  I don't know.  What do
 2   you -- I know I made you do this and so therefore you are
 3   probably -- but I want your honest answers as to what you
 4   think.
 5          MR. IWREY:  Well, from the defendants' perspective
 6   I think we are rather neutral on that.
 7          MR. FINK:  Speaking on behalf of the
 8   direct-purchaser plaintiffs, we are not looking for more
 9   notoriety, but the component parts of this matter -- I don't
10   mean the car components, but the component parts of what led
11   to these cases is getting a lot of attention in the media, if
12   you read the business section every time there is another
13   guilty plea there is a reasonably large article about it, and
14   we get a lot of questions, so from our perspective  we think
15   this is a very high-profile case.  I'm a little surprised --
16   it is not, you know -- it doesn't have the salacious details
17   that I know people like to see in a high-profile case but
18   it's certainly one we get a lot of questions about.
19          THE COURT:  The Dow case is on there?
20          MR. IWREY:  The Dow case and maybe Judge Freidman's
21   case.
22          MR. SCHNATZ:  I think so, that sounds right.
23          THE COURT:  Well, you know, I was just thinking
24   that if people wanted to know about it if they hear about it
25   they are certainly not going to know -- I'm talking about
```

Preliminary Settlement Approval • April 9, 2015

 1   non-lawyer, well, maybe even lawyers, they are not going to

 2   know how to get into the 2311 and look at all of what is

 3   there.

 4            MR. IWREY:  This contemplates a shortcut that would

 5   get to eventually the complaints, answers, counterclaims, as

 6   well as Your Honor's opinion and another shortcut to the

 7   settlements which would probably link to the settlement

 8   administrator websites.

 9            MR. SCHNATZ:  Your Honor, Adam Schnatz here.  I

10   think we are still working out the specific documents that we

11   are going to have linked to this website but obviously one of

12   the most crucial parts of this website is information

13   regarding the settlements, I mean, that's going to be the

14   reason that most people come to this website, read about the

15   case, find out who the parties are, what's been going on, so

16   obviously that's the most critical part.  There's still a few

17   issues that the end payors have regarding the contents of

18   nonsettlement matters in the website which I'm confident we

19   will work out very soon, but in terms of how this website is

20   structurally together, I mean, I think we got it pretty

21   good -- a pretty good formula down.  We would like to speak

22   with the Court's website administrator --

23            THE COURT:  I was just going to say.

24            MR. SCHNATZ:  -- to see how much this is feasible.

25            This plan and this format is wonderful and great

1    but if it can't be done, you know, by the administrator it

2    can't be done.

3           THE COURT:  I will tell you what, I will talk to

4    the head of IT and explain to him what we propose -- what you

5    propose as to basically an outline and the different subparts

6    and ask him to assign somebody to talk with you because I

7    certainly don't have any idea how this is done but why don't

8    I send -- I'll tell you, Mr. Iwrey, I know my clerk has

9    spoken to you, so I will have Molly contact you with the name

10   of the person to deal with and then you could get these other

11   gentlemen involved.

12          MR. IWREY:  That would be great, probably

13   accomplish like what we did with the filing protocol, sit

14   around a table and hash it out.

15          THE COURT:  Right, I think that would be a good

16   idea.  Well, thank you for working on that.

17          MR. IWREY:  Thank you.

18          THE COURT:  I didn't mean to insult you, I just

19   wanted -- actually I was insulted, I thought what do you mean

20   but, no, I think that there is good reasons particularly with

21   these settlements that people have to have access somehow

22   through the court.

23          MR. SCHNATZ:  Especially now with the notice for

24   the dealerships and the end payors set to go out soon, I'm

25   sure there is going to be a lot more inquiries coming in, so

1    the quicker we can get this up the better obviously.

2           MR. FINK:  And one in particular -- one issue in

3    particular that we have already experienced with the

4    suppliers, once we have one settlement, as soon as that

5    settlement notice went out we started getting questions about

6    all the other parts and what's going on, it is just so much

7    easier to say go to the court website, you know, and more

8    comprehensive information.

9           THE COURT:  And while we are talking about parts, I

10   have one other question which we will, of course, address at

11   the May meeting, but I'm always curious as to whether there's

12   any other parts anybody knows of.  We had talked about it at

13   our last meeting that there were several coming up but I

14   haven't heard a thing?

15          MR. IWREY:  I will back away from this.

16          MR. FINK:  There are some.  I know there was

17   recently a plea by Bosch which I'm not certain but I think it

18   added a couple parts that we haven't previously seen.

19          MR. SCHNATZ:  Spark plugs and a couple others.

20          THE COURT:  So there still are more that will be

21   coming is what you are telling me?

22          MR. FINK:  Yes.

23          MR. SCHNATZ:  Yes, Your Honor.

24          THE COURT:  I feel good though because I think we

25   are getting finally a grasp on the whole case because we know

1   there's an end in sight.

2          MR. SCHNATZ:  True, Your Honor.

3          THE COURT:  I'm not looking forward to any other

4   plaintiffs popping up.

5          MR. FINK:  Then I want to apologize in advance to

6   the Court, well, I guess their aren't other plaintiffs but we

7   are going to be filing some direct cases but all in the same

8   issues.

9          THE COURT:  We do have -- we did get a letter so I

10  ask you to look at -- Molly, are those motions -- handwriting

11  motion, is that what they were?

12         THE LAW CLERK:  Pro se motions to intervene, they

13  were filed in the 2311.

14         THE COURT:  Yes.

15         MR. IWREY:  I believe that gentleman has intervened

16  in several hundred cases.

17         THE COURT:  Well, I'm going to tell you what I am

18  going to do is require the presence of the interveners for a

19  motion hearing on May 6th so everybody will be available and

20  I see them in person.

21         MR. FINK:  Good.

22         MR. IWREY:  He may be incarcerated.

23         MR. WILLIAMS:  It might require the assistance of

24  the marshal service.

25         THE COURT:  That's what I was afraid of.

Preliminary Settlement Approval • April 9, 2015

```
 1                    MR. WILLIAMS:  Yes.

 2              THE COURT:  We have to take care of it, it is filed

 3    as a motion so I need to do something.

 4                    MR. WILLIAMS:  I believe it was filed in our case,

 5    the end-payor case, and it is our intention to file a

 6    response to that.

 7              THE COURT:  Good.  Just know that we are going to

 8    put it on the agenda for May 6th and presence will be

 9    required.

10                    MR. FINK:  Good idea.

11              THE COURT:  I hope he doesn't interrupt our meeting

12    but we will see.

13                    MR. FINK:  His presence is required and if he

14    appears the rest of us will not.

15              THE COURT:  Okay.  Thank you very much.  I

16    appreciate it.

17                    THE LAW CLERK:  All rise.  Court is in recess.

18                    (Proceedings concluded at 2:20 p.m.)

19                                        _    _    _

20

21

22

23

24

25
```

```
 1                          CERTIFICATION

 2

 3              I, Robert L. Smith, Official Court Reporter of

 4     the United States District Court, Eastern District of

 5     Michigan, appointed pursuant to the provisions of Title 28,

 6     United States Code, Section 753, do hereby certify that the

 7     foregoing pages comprise a full, true and correct transcript

 8     taken in the matter of IN RE:  AUTOMOTIVE PARTS

 9     ANTITRUST LITIGATION, Case No. 12-md-2311, on Thursday,

10     April 9, 2015.

11

12

13                               s/Robert L. Smith
                                 Robert L. Smith, RPR, CSR 5098
14                               Federal Official Court Reporter
                                 United States District Court
15                               Eastern District of Michigan

16

17

18     Date:  04/23/2015

19     Detroit, Michigan

20

21

22

23

24

25
```