**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ———————————————— | : | |
| **In Re:  AUTOMOTIVE PARTS** | : | **12-md-02311** |
| **ANTITRUST LITIGATION** | : | **Honorable Marianne O. Battani** |
| ———————————————— | : | |
| | : | |
| **In Re: All Cases** | : | |
| ———————————————— | : | |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | |
| **All Actions** | : | |
| ———————————————— | : | |

**DIRECT PURCHASER PLAINTIFFS' MOTION TO LIMIT**
**UNIFORM SUBPOENA TO OEMS**

Pursuant to the Court's instruction at the Status Conference held on May 6, 2015, Direct

Purchaser Plaintiffs ("DPPs") in the *Wire Harness Cases* submit this Motion[1] to limit the

uniform subpoena to produce documents and information proposed by Defendants and Indirect

Purchaser Plaintiffs[2] ("IPPs") to be issued and served on non-party Original Equipment

Manufacturers ("OEMS") in *All Actions* in *All Cases* ("Uniform OEM Subpoena").  The OEMs

are not parties to the litigation, however, they are absent members of the putative class of direct

purchasers in the *Wire Harness Cases* and certain of the other auto parts cases.

On May 13, 2015, DPPs sought concurrence in the relief requested herein. Concurrence

was not obtained.

---

[1] In the alternative, DPPs move for a protective order pursuant to Federal Rule of Civil
Procedure 26(c) for good cause shown for all the reasons set forth herein.
[2] Indirect Purchasers include five IPP groups -- End-Payor Plaintiffs, Auto Dealers, Truck
Dealers, the City of Richmond and the State of Florida.

WHEREFORE, Direct Purchaser Plaintiffs respectfully request that the Court grant their

Motion.

DATED: May 13, 2015.                           Respectfully submitted,

                                               */s/ David H. Fink*_____
                                               David H. Fink (P28235)
                                               Darryl Bressack (P67820)
                                               FINK + ASSOCIATES LAW
                                               38500 Woodward Ave., Suite 350
                                               Bloomfield Hills, MI 48304
                                               (248) 971-2500

                                               *Interim Liaison Counsel for the Direct Purchasers*

Steven A. Kanner                               Joseph C. Kohn
William H. London                              William E. Hoese
Michael E. Moskovitz                           Douglas A. Abrahams
FREED KANNER LONDON                            KOHN, SWIFT & GRAF, P.C.
  & MILLEN LLC                                 One South Broad Street, Suite 2100
2201 Waukegan Road, Suite 130                  Philadelphia, PA 19107
Bannockburn, IL 60015                          Telephone: (215) 238-1700
Telephone: (224) 632-4500

Gregory P. Hansel                              Eugene A. Spector
Randall B. Weill                               William G. Caldes
Michael S. Smith                               Jonathan M. Jagher
PRETI, FLAHERTY, BELIVEAU                      Jeffrey L. Spector
  & PACHIOS LLP                                SPECTOR ROSEMAN KODROFF
One City Center, P.O. Box 9546                   & WILLIS, P.C.
Portland, ME 04112-9546                        181 Market Street, Suite 2500
Telephone: (207) 791-3000                      Philadelphia, PA 19103
                                               Telephone: (215) 496-0300

          *Interim Co-Lead Counsel for the Direct Purchasers*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| | : | |
| **In Re: AUTOMOTIVE PARTS** | : | **12-md-02311** |
| **ANTITRUST LITIGATION** | : | **Honorable Marianne O. Battani** |
| | : | |
| | : | |
| **In Re: All Cases** | : | |
| | : | |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | |
| **All Actions** | : | |
| | : | |

**BRIEF IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'**
**MOTION TO LIMIT UNIFORM SUBPOENA TO OEMS**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................ i

STATEMENT OF THE ISSUES PRESENTED ........................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................. iii

ARGUMENT ................................................................................................................ 3

    A.    Particularized Need Cannot be Demonstrated Because
             Responsive Information is Available From Other Sources ......................................... 3

    B.    The Uniform OEM Subpoena Seeks Information that is not Relevant ...................... 4

    C.    Responsive Information Can and Should be Obtained from Sources
             Other Than Non-Party OEM ...................................................................... 5

    D.    The Uniform OEM Subpoena Is Overbroad and Unduly Burdensome .................. 10

    E.    Non-Party OEM Discovery Should be Precluded Until Alternative
             Sources of Information Are Secured ....................................................... 13

## STATEMENT OF THE ISSUES PRESENTED

Should the Court prohibit the issuance and service of the Uniform OEM Subpoena in its entirety, or, in the alternative, limit the scope of the Uniform OEM Subpoena upon a demonstration of particularized need by Defendants and IPPs that specific information cannot be obtained from any other source other than non-party OEMs?

    Direct Purchaser Plaintiffs' Answer:  Yes

    Defendants' Answer:  No

    Indirect Purchaser Plaintiffs' Answer  No

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481, 492-94 (1968)

*Illinois Brick Co. v. Illinois*, 431 U.S. 720, 732 (1977)

*Am. Elec. Power Co. v. United States,* 191 F.R.D. 132, 136 (S.D. Ohio 1999)

*In re Skelaxin (Metaxalone) Antitrust Litig*., 292 F.R.D. 544, 552-554 (E.D. Tenn. 2013)

*In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000)

*Groth v. Robert Bosch Corp.*, No. 1:07-cv-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008)

*Hansen Bev. Co. v. Innovation Ventures, LLC*, No. 09–50630, 2009 WL 2351769 (E.D. Mich. July 29, 2009)

*Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 13–50212, 2013 WL 1844075, at *8 (E.D. Mich. April 11, 2013)

*MFS & Co. LLC., v. Caterpillar, Inc.,* No. 09–14063, 2012 WL 195510, at*5 (E.D. Mich. Jan. 24, 2012)

*Spartanburg Reg.'l Healthcare Sys. v. Hillenbrand Indus., Inc.,* No. 1:05-MC-107, 2005 WL 2045818, at*5 (W.D. Mich. Aug. 24, 2005)

*State Farm Mut. Auto. Ins. Co. v. Hawkins,* 2011 WL 595694 at *4 (E.D. Mich. Feb. 10, 2011)

*Systems Prods. & Solutions, Inc. v. Scramlin*, No. 13-cv-14947, 2014 WL 3894385, at *9 (E.D. Mich. Aug. 8, 2014)

Fed. R. Civ. P. 45(d)

Fed. R. Civ. P. 26(b)

*The Sedona Principles: 2d Ed.*, Comment 13.c. (June 2007)

*The Sedona Conference Commentary on Non-Party Production & Rule 45 Subpoenas*, p. 6

(April 2008)

*Sedona Conference Database Principles*, 15 The Sedona Conference Journal 171 (Fall 2014)

*Moore's Fed. Prac*. § 37A.35[3][a] (3d ed. 2014)

At the Status Conference held on January 28, 2015, the Court directed that DPPs be allowed to comment on a subpoena to OEMs that was being drafted by Defendants and IPPs. *In re: Automotive Parts Antitrust Litig.*, Master File No. 12-md-02311, Status Conference/Motion Hearings, Tr. 43:25-44:13 (E.D. Mich. Jan. 28, 2015) (Battani, J.). On April 14, 2015, DPPs received a copy of the proposed Uniform OEM Subpoena. *See* Exhibit 1, hereto. DPPs thereafter submitted comments to Special Master Esshaki by letter dated April 28, 2015. See Exhibit 2, hereto. At the May 6, 2015 Status Conference, the Court instructed DPPs to raise their concerns by motion objecting to the uniform subpoena and the Special Master set a briefing schedule at the hearing which followed.[3]

DPPs object to the issuance and service of the Uniform OEM Subpoena on absent class member OEMs. This objection is made without prejudice to the particular Uniform OEM Subpoena recipients who do not waive burden or any other objections that they may raise with respect to any form of the Uniform OEM Subpoena that may be served on them.

The Uniform OEM Subpoena in its present form is to be issued and served in all direct and indirect purchaser actions across all product cases. It seeks from non-party OEMs – absent class members in the DPP actions – extensive, detailed, and potentially non-existent information in the form of documents, data and electronically stored information ("ESI") about purchases of multiple auto parts ("upstream" information) and purchases of multiple finished vehicles ("downstream" information) from 1992 to present. This information is intended entirely for use

---

[3] As set by the Special Master, DPP objections to the Uniform OEM Subpoena must be filed on or before May 13, 2015, Ford's response is due seven days thereafter, the Defendant/IPP response is due seven days following Ford's response, and DPPs' reply is due three days thereafter. *In re: Automotive Parts Antitrust Litig.*, Master File No. 12-md-02311, Hearing Regarding Deposition Protocol, Tr. 39:22-40:2 (E. D. Mich. May 6, 2015) (Esshaki, S.M.) ("Protocol Hearing").

1

in the IPP cases to determine whether an illegal overcharge was passed through to each of the Indirect Purchaser classes.

As is more fully discussed below, Defendants and IPPs have failed to establish a particularized need for the specific information from absent class member OEMs given that the information is available from other sources, particularly from parties in the Indirect Purchaser actions. In addition, the Uniform OEM Subpoena is overbroad and unduly burdensome. Undue burden will be discussed further in the submission of party OEM Ford (the only OEM that is a party in the MDL), which is in a unique position to offer insight as to the burden imposed by the Uniform OEM Subpoena on non-party OEMs. *See* n.3, *supra*. Even so, the Uniform OEM Subpoena is overbroad and unduly burdensome on its face, and the burden of production should not be borne by non-party OEMs unless the information cannot be obtained from any other source. That is not the case here: upstream and downstream information is within the possession, custody or control of Defendants and IPPs, and Auto Dealers and Defendants have reached agreement on the production of auto dealer ESI and downstream information in the Auto Dealer and End Payor cases. Information is also commercially available from sources which are in the business of collecting and analyzing auto industry data. In addition, DPPs have already produced certain upstream and downstream information to Defendants, including transactional data.

Non-party OEMs should not be subjected to the extraordinarily burdensome and harassing discovery proposed by Defendants and IPPs which is primarily directed to pass-on issues exclusively within the scope of the Indirect Purchaser actions and prohibited in direct purchaser actions. DPPs respectfully request that the Court prohibit the issuance and service of the Uniform OEM Subpoena in its entirety. In the alternative, DPPs respectfully request that the

Court limit the scope of Uniform OEM Subpoena upon a demonstration of particularized need by Defendants and IPPs that specific relevant information cannot be obtained from any source other than non-party OEMs.

## ARGUMENT

### A. **Particularized Need Cannot be Demonstrated Because Responsive Information is Available From Other Sources**

Non-party OEMs, as absent members of the putative Direct Purchaser class, are protected from the very type of discovery now sought by Defendants and IPPs.  *See, e.g., Groth v. Robert Bosch Corp.*, No. 1:07-cv-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008) (discovery from absent class members not warranted as a matter of course and demonstration of "particularized need" is a prerequisite to obtaining discovery from them); *In re Polyurethane Foam Antitrust Litig.*, 2014 WL 764617, at *2 (N.D. Ohio Feb. 26, 2014) (endorsing "particularized need" rule); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549 (E.D. Tenn. 2013) (defendants in multi-district litigation did not demonstrate particularized need for downstream discovery and data of unnamed members of *proposed* direct purchaser class simply because indirect purchaser plaintiffs were also before the court).  Defendants and IPPs have demonstrated no "particularized need" (*see id.*) for seeking the demanded information from non-party OEMs in light of the fact that demanded information is available from other sources and, moreover, is currently being produced by parties in the Indirect Purchaser cases, as is more fully set forth below.  This factor alone is sufficient reason to prohibit the Uniform OEM Subpoena in its entirety.

In addition, Federal Rule of Civil Procedure 45 requires that non-party OEMs be protected from the overbroad and burdensome Uniform OEM Subpoena.  *See* Fed. R. Civ. P. 45(d) (party issuing subpoena "must take reasonable steps to avoid imposing undue burden or

expense on a person subject to the subpoena"); *Hansen Bev. Co. v. Innovation Ventures, LLC*, No. 09–50630, 2009 WL 2351769, at *1 (E.D. Mich. July 29, 2009) (non-party status is a significant factor in the undue burden analysis). The undue burden and undue expense imposed on non-party OEMs is apparent on the face of the Uniform OEM Subpoena, as is more fully discussed below.

B. **The Uniform OEM Subpoena Seeks Information that is not Relevant**

Generally applicable notions related to the permitted scope of discovery apply to subpoenas. *Systems Prods. & Solutions, Inc. v. Scramlin*, No. 13-cv-14947, 2014 WL 3894385, at *9 (E.D. Mich. Aug. 8, 2014) (Fed. R. Civ. P. 26(b) defines scope of discovery issued pursuant to Rule 45). *Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 13–50212, 2013 WL 1844075, at *8 (E.D. Mich. April 11, 2013) (notion that court should balance a party's "right to discovery" with the need to prevent "fishing expeditions" is especially true with requests to non-parties); *Lowe v. Vadlamudi*, No. 08–10269, 2012 WL 3887177, at*2 (E.D. Mich. Sept. 7, 2012) (burden of demonstrating relevance is on the party seeking discovery).

Relevance informs the scope of discovery. Fed. R. Civ. P. 26(b). Defendants and IPPs seek upstream and downstream information exclusively for use in the IPP cases to determine whether an illegal overcharge was passed through to each of the Indirect Purchase classes. Even so, they seek to issue and serve the Uniform OEM Subpoena in All Cases, All Actions. Although pass-on discovery may be relevant to issues in the indirect cases, it has <u>no</u> relevance to issues in the direct purchaser actions. United States Supreme Court authority instructs that a federal antitrust case may not be defended on the ground that direct purchasers passed on an illegal overcharge to their customers. *See Hanover Shoe v. United Shoe Machinery Corp.*, 392

4

U.S. 481, 492-94 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 732 (1977).[4]  Accordingly, downstream discovery is generally prohibited in direct purchaser cases.  *See, e.g., In re Aspartame Antitrust Litig.*, 2008 WL 2275528, *4 (E.D. Pa. April 8, 2008) ("courts have consistently noted that this type of [downstream] discovery is not favored" in price fixing class actions); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-8 (M.D. Pa. 2005) ("courts generally proscribe downstream discovery" in price fixing cases); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) (denying defendants' motion to compel production of downstream, financial and currency exchange rate data).  Thus, Defendants are not entitled to "downstream" information concerning the sales of finished vehicles in direct purchaser actions, and to the extent they obtain such discovery in Indirect Purchaser actions from any sources, Defendants must not be permitted to use it in defense of direct purchaser actions.  Moreover, IPPs are not parties to the direct purchaser actions and have no standing to seek discovery in direct purchaser actions.

C. **Responsive Information Can and Should be Obtained from Sources Other Than Non-Party OEM**

Regardless of the action or actions in which it is issued and served, the Uniform OEM Subpoena should be precluded or significantly limited at this time.  A court must limit the frequency or extent of discovery otherwise allowed if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"  Fed. R. Civ. P. 26(b)(2)(C)(i).  *See also* Fed. R. Civ. P. 45(e)(D) (referencing Fed. R. Civ. P. 26(b)(2)(C)(i) in connection with the requests for inaccessible ESI).  The information deemed relevant to the resolution of the Indirect Purchaser

---

[4] *See also County of Oakland v. City of Detroit,* 866 F.2d 839, 847-848 (6th Cir. 1989); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 552-554 (E.D. Tenn. 2013) (downstream discovery not relevant to DPPs' measure of damages or class certification).

actions should be sought in the first instance from the parties to those actions, not from non-party OEMs who have no stake in the IPPs' claims.  *See Hansen Bev.*, 2009 WL 2351769, at *2 (subpoena to non-party broad, and information obtainable from plaintiff in a more direct, less burdensome and more convenient fashion).  Indeed, the parties to the Indirect Purchaser actions already possess much of the information sought.

First, Defendants, not non-party OEMs, are the best source for detailed information about purchases of auto parts.  The *Wire Harness* Defendants have already produced transactional data and other information to all parties, including IPPs, which reflect Defendants' sales of those products to Direct Purchasers.  *See Spartanburg Reg.'l Healthcare Sys. v. Hillenbrand Indus., Inc.,* No. 1:05-MC-107, 2005 WL 2045818, at*5 (W.D. Mich. Aug. 24, 2005) (antitrust case) (non-party motion to quash subpoena granted where much of the requested information available in the public domain through various for-profit business information services as well as non-party's annual report, significantly undermining claim of need).  On this basis alone, the information sought in Request Nos. 1 and 2 (relating to purchases of auto parts) is cumulative, duplicative, and available from Defendants.

Second, the Automobile Dealers themselves have indicated that their own "upstream" data regarding purchases of vehicles is functionally equivalent to "downstream" data from OEMs:

> 24. Most, if not all, of the needed data can be obtained from the OEMs and others that precede the automobile dealers in the supply chain. However, despite the likely redundancy between the "downstream" OEM data and the "upstream" Auto Dealer data,[5] counsel has informed me that the Auto Dealers are willing to provide data from their files that contain information on the prices that they pay the OEMs**.**
> -----------
> 5 Dr. Snyder employs this distinction between "downstream" and "upstream" data. "Upstream" data are data that are related to purchases by a given level of the

distribution chain and "downstream" data are data that are related to sales by a
given level of the distribution chain. Snyder Declaration, ¶15.

Dr. Snyder appears to recognize that the downstream data of one level of the
distribution chain is related to the upstream data for the level below it. (Snyder
Declaration, ¶19 ("the downstream data of a Direct Purchaser may be similar to
the upstream data of an Auto Dealer (if the Auto Dealer purchased the WHP
directly from the Direct Purchaser)")

Decl. of Dr. Philip B. Nelson in Opp. to Certain Defs' Motion to Compel "Downstream"

Discovery from Direct Purchaser and Auto Dealer Plfs [Dkt. 196-1 in Case 102 (Auto

Dealer Action)], ¶ 24 & n.5.

Third, in the *Wire Harness Cases*, *All Dealership Actions*, the Auto Dealer Plaintiffs have

been ordered to produce certain detailed information regarding the acquisition of Automotive

Wire Harness Systems and vehicles containing Automotive Wire Harness Systems, and ESI

concerning vehicle purchases and sales. *See* Order on Certain Defs' Motion to Compel, ECF No.

214 in Case No. 2:12-cv-00102, *Wire Harness Cases, All Dealership Actions* (Oct. 16, 2014);

Stipulation and Order, ECF No. 251 in Case No. 2:12-cv-00102, *Wire Harness Cases, All Auto*

*Dealer Actions* (Jan. 7, 2015).

Fourth, the production of extensive auto dealership acquisition and sales information is

imminent as was disclosed at the May 6, 2015 hearing before the Special Master. Defendants in

the *Wire Harness* cases advised that the multiple motions by Defendants, Automobile Dealer

Plaintiffs, and third-party providers of Dealer Management Systems (DMS Providers)

concerning Defendants' efforts to obtain the same downstream information that is requested in

the Uniform OEM Subpoena[5] had been resolved. Protocol Hearing, Tr. 3:7-4:15 (Mr. Cherry,

_____

[5] Defendants sought the same information requested in the Uniform OEM Subpoena
through motion practice in the *Auto Dealer* and *End-Payor* actions in the *Wire Harness Cases*.
*See* Certain Defs' Motion to Establish Schedule, ECF No. 283 in Case No. 2:12-cv-00102 and
ECF No. 287 in Case No. 2:12-cv-00103, *Wire Harness Cases, All Auto Dealer Actions* and *All*
*End-Payor Actions* (March 23, 2015) (motion to establish a schedule for Auto Dealer Plaintiffs
to produce ESI concerning vehicle purchases and sales); Dealership Plfs' Objections to Improper

Ms. Romanenko).   The parties' submissions on these motions indicate that the Automobile

Dealers themselves or their DMS Providers maintain or have access to extensive, detailed

records regarding purchases of automotive vehicles, including purchase prices and other costs

associated with the acquisition of these vehicles, which the Uniform OEM Subpoena seeks.   For

example, the Defendants identify monthly "OEM Reports" prepared by automobile dealers and

discuss the nature, scope, and significance of the purchase and sales information contained in

those reports.  Decls. of Allen T. Levenson and Dr. Edward A. Snyder ISO Defs' Opp. to Dealer

Plfs' Cross Motion to Resolve Defs' Motion to Compel Downstream Discovery and Outstanding

Requests (Dkt. 306 in Case 102 (Auto Dealer Action) and Dkt. 308 in Case 103 (End Payor

Action)).

At the May 6, 2015 hearing, counsel for Dealership Plaintiffs confirmed the scope of

production to Defendants:

> And the stipulation that you are going to see today provides them with all – over
> 200 fields of transactional information, basically everything they have asked for
> from us.  We have already produced 250,000 pages of documents, we continue to
> produce documents relating to the transactions, the acquisition, the sales of these
> vehicles.

Protocol Hearing, Tr. 18:2-8 (Mr. Raiter).

> [T]he stipulation that will be entered soon later today or tomorrow but what we
> are producing to them handles this information.  For example, every month a car
> dealership usually should be making a report to an OEM which summarizes what
> they sold, sales, profits, their monthly OEM reports, and we have agreed to
> produce those.  They are going to have that information across all the different
> brands, across all the different makes.

---

Subpoenas, ECF No. 295 in Case No. 12-cv-000103, *Wire Harness Cases, All End-Payor Actions,* Case (March 31, 2015) (non-party dealer management system providers' motions to quash); Dealership Plfs' Mem. ISO Mot. to Resolve Defs' Mot. to Compel Downstream Discovery and Outstanding Discovery Requests and Resp. to Defs' Mot. to Set Schedule, p. 2, ECF No. 298 in 2:12-cv-00102 in *Wire Harness, All Dealership Actions* (also filed in 2:12-cv-00103) (proposal by Dealership Plaintiffs for resolution of certain matters, including the production of over one hundred fields of data concerning vehicle sales and costs).

> We have agreed that we will use our own consultant to go extract the DMS data that was the subject of obviously the motions that have now been withdrawn before you.  So what they are going to have is a ton of information that addresses the vast majority of the legitimate issues that they could raise at this point.

Protocol Hearing, Tr. 26:3-17 (Mr. Raiter). The Stipulation submitted to the Special Master requires the Auto Dealer Plaintiffs to (i) produce certain dealer management systems (DMS) or similar data (¶¶ 1 and 2), OEM Reports (¶ 3), and other information (¶ 4) within specified time frames (¶¶ 5 and 6) and (ii) advise DMS providers that they do not seek to withhold certain information subpoenaed by Defendant (¶ 7)..  *See* Stipulation and Order on Auto Dealer Plaintiffs' Production of Documents and Data, ECF No. 310 in Case No. 2:12-cv-00102, *Wire Harness Cases, Auto Dealer Actions/End Payor Actions* (May 12, 2015).[6]

Additionally, Defendants and IPPs should seek responsive information from commercially available sources which are in the business of collecting and analyzing auto industry data such as J.D. Power,[7] R.L. Polk and *Automotive News*.  *See Allen v. Howmedica Leibinger, GmhH,* 190 F.R.D. 518, 525 (W. D. Tenn. 1999) (in the absence of some showing that publicly available information is inadequate, the burden that production would place on non-party is unreasonable, particularly in light of its non-party status).

For these reasons, the information sought in Request Nos. 1-2, 4-12, 17, 20-22, 24, 29-32, and 34 of the Uniform OEM Subpoena can and should be obtained from – and, in fact, is currently being produced by – parties to the Indirect Purchaser actions and from "more

---

[6] The exact data that is to be provided by the Auto Dealer Plaintiffs in response to ¶¶ 1 and 2 is described in an attached Exhibit A that was filed under seal and has not been provided to Direct Purchaser Plaintiffs.

[7] The Uniform OEM Subpoena explicitly asks for information provided to the J.D. Powers' Power Information Network. *See* Request No. 29.

convenient, less burdensome, or less expensive" third-party commercially available sources. Fed. R. Civ. P. 26(b)(2)(C)(i).

### D. **The Uniform OEM Subpoena Is Overbroad and Unduly Burdensome**

Rule 45 prohibits imposing an "undue burden" on a non-party and also protects a non-party from "undue expense." Rule 45(d)(1). Accordingly, as the Sedona Conference advises, non-party requests must be narrowly focused to avoid mandatory cost shifting. *The Sedona Principles: 2d Ed*., Comment 13.c. (June 2007). Here, the Uniform OEM Subpoena is overbroad and will impose extraordinary burdens upon each non-party OEM served. Party OEM Ford is in a unique position to offer insight as to the burden imposed by the Uniform OEM Subpoena on non-party OEMs and will address that burden it its submission in response to the Uniform OEM Subpoena. Protocol Hearing, Tr. 37:10-38:4 (Ms. Leivick). Even so, while only the OEMs themselves can address the specific burdens, expense, and their ability to provide the information sought through objections, it is apparent that the Uniform OEM Subpoena, on its face, is objectionable.

First, the Uniform OEM Subpoena requires that each OEM search for and produce information dating back more than 23 years (to 1992). This far exceeds the scope of what is reasonable. As a general matter, ESI more than twenty years old will likely be either non-existent or will require the non-party OEMs to incur substantial burden to retrieve and recreate archival data systems and backup tapes that are no longer functioning or functional. *See Moore's Fed. Prac*. § 37A.35[3][a] (3d ed. 2014) ("Rule 26(b)(2)(B) creates a presumption that electronically stored information on backup tapes ordinarily need not be searched."). Non-ESI material would impose similar if not greater burdens to identify, review, and analyze for responsiveness. *See Am. Elec. Power Co. v. United States,* 191 F.R.D. 132, 136 (S.D. Ohio 1999) ("Courts are required to balance the need for discovery against the burden imposed on the

person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure.").

Second, the Uniform OEM Subpoena sets forth thirty-six individual, multi-part requests which address at least fifty-six separate auto parts and at least twelve vehicle types. Compounded by the 23-year time period for which information is demanded, each OEM would be faced with a monumental task to identify, review, and produce responsive information. *See, e.g.*, *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiry); *State Farm Mut. Auto. Ins. Co. v. Hawkins,* 2011 WL 595694 at *4 (E.D. Mich. Feb. 10, 2011) (subpoena too broad because it was "not sufficiently tailored so as to avoid sweeping in a host of irrelevant, privileged, and otherwise inadmissible documents").

Third, many of the requests in the Uniform OEM Subpoena are vague and ambiguous, which directly contradicts this Court's guidance for ESI discovery. *See* Model Order, Principle 1.03, pp. 1-2 (under Fed. R. Civ. P. 26(b)(2)(C) proportionality standard, "requests for production of ESI . . .  should be reasonably targeted, clear, and as specific as practicable"). Indeed, it is even difficult to discern the discovery actually sought by many vague and ambiguous requests in the Uniform OEM Subpoena, which seek data or documents "sufficient to show" or "sufficient to identify" particular information. *See, e.g.*, Request Nos. 1-5, 8, 12-15, 19-20, 23-25, and 35-36.  Such uncertainty invites disputes that will require the intervention of lawyers, and law firms, and the time and expense invariably associated with both.  *See* Fed.R.Civ.P. 45(d)(1) ("A party…issuing…a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.")

Fourth, many requests in the Uniform OEM Subpoena demand from non-party OEMs the production of closely-guarded and highly secret proprietary information, such as business plans and strategies, costs of production, pricing methods and financial data.  *See, e.g.*, Request Nos. 12-16, 19, 22-24, 28, 30, 32-34 (relating to analyses of costs and pricing).  Even with the safeguards of the Protective Order in this case, non-parties should be protected from having to produce such burdensome discovery, especially where it is available from another source.  *Ajuba Int'l, LLC v. Saharia,* No. 11-CV-12936, 2014 WL 4793846, at *2 (E.D. Mich. Sept. 25, 2014) ("court may quash or modify a subpoena if it requires disclosure of a trade secret or other confidential research or disclosure of an unretained expert's opinion"); *Spartanburg*, 2005 WL 2045818, at *3-4 (defendants' request would subject non-party to "significant harm" because the documents requested would detail "sensitive and confidential aspects of [non-party's] business strategy.").

Fifth, aside from "downstream" information discussed generally above, many particular requests in the Uniform OEM Subpoena seek information that is not relevant to any action.  *See, e.g.*, Request Nos. 7 and 9 (financing of new vehicles), 10 (inventory levels), 11 (expected sales or leases), 12 (manufacturing, pricing, and sales information), 18 (collusion by Defendants), 20 (reporting systems), 25 (organization charts), 26 (mechanics of ESI searches), 27 (productions to governmental authorities concerning auto parts investigations), 31 (conduct at issue in MDL 2311), 35 (supplier participation in OEM design of parts), 36 (compilations of OEM-approved parts suppliers).  *Lowe*, 2012 WL 3887177 , at *4 (E.D. Mich. Sept. 7, 2012) (non-party not obligated to produce records that "contain[ed] a great deal of information that is utterly irrelevant to the plaintiff's claim" and "likelihood that relevant information will be discovered is not sufficient to outweigh the substantial burden of producing such records"); *V Cars, LLC v. Israel*

*Corp.*, No. CIV.A. 10-MC-50984, 2011 WL 900309 (E.D. Mich. Mar. 14, 2011) (Majzoub, M.J.) (non-party subpoena quashed because requests irrelevant to plaintiffs' claims).   The Special Master has already denied party discovery of similar categories of information in the *Dealership Actions*.  *See* Order on Certain Defendants' Motion to Compel, ECF No. 214 in Case No. 2:12-cv-00102, *Wire Harness Cases, All Dealership Actions* (Oct. 16, 2014) (denying requests for financing and promotional information, monthly payment information, purchasing strategies, financial documents, budgets and cost guidelines, various acquisition documents, dealer franchise agreements).   These rulings should apply equally to the Uniform OEM Subpoena, which targets non-parties, especially with respect to Request Nos. 1-4, 11, 13-17.

### E.  **Non-Party OEM Discovery Should be Precluded Until Alternative Sources of Information Are Secured**

This Court's Model Order Relating to the Discovery of Electronically Stored Information (ESI) ("Model Order") recommends staging discovery and sampling.  Model Order, Principle 1.03, pp. 1-2 (E.D. Mich. Sept. 20, 2013).  Thus, the Court should, if the non-party discovery is even deemed necessary, use staged discovery and sampling in connection with responses to the Uniform OEM Subpoena.  *See The Sedona Conference* [8] *Commentary on Non-Party Production & Rule 45 Subpoenas*, p. 6 (April 2008) ("Active or reasonably accessible data should be produced and reviewed prior to seeking data that may be unduly burdensome to produce."); *id.* ("The party and non-party subpoena recipients should consider initial testing or sample

---

[8] Sedona Conference publications have been cited favorably by the Sixth Circuit and the Eastern District of Michigan.  *See Laethem Equip. Co. v. Deere &Co.*, 261 F.R.D. 127, 146 (E. D. Mich. 2009); *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008); Model Order, p. 12 (judges, attorneys, and parties should consult Sedona Conference publications for education information regarding the discovery of ESI.  Federal Judicial Center publications also refer favorably to Sedona Conference materials. *See* Barbara J. Rothstein, Ronald J. Hedges & Elizabeth C. Wiggins, *Managing Discovery of Electronic Information: A Pocket Guide for Judges, 2d Ed.* (Federal Judicial Center), 2012, at 32, 35 (Sedona Principles as management tool), available at http://www.fjc.gov/public/pdf.nsf/lookup/eldscpkt2d_eb.pdf/$file/eldscpkt2d_eb.pdf.

approaches, as per Fed. R. Civ. P. 34(a), in order to inform decisions concerning the volume and nature of responsive documents, the form of production, and cost."); *Sedona Conference Database Principles*, 15 The Sedona Conference Journal 171 (Fall 2014), Principle No. 1, Scope of Discovery, p. 199 (absent specific showing of need, requesting party entitled only to database fields that contain relevant information and give context to such information and not entire database or underlying database application or database engine), Principle No. 2, Accessibility and Proportionality, p. 205 (not all information in database may be equally accessible, parties should apply proportionality to each component of a database to determine the marginal value of the information to the litigation and the marginal cost of collecting and producing it); Principle No. 3, Use of Test Queries and Pilot Projects, p. 209 ("Parties should use objective information, such as that generated from test queries, pilot projects, and interviews with persons with relevant knowledge to ascertain the burden and benefits to collect and produce information stored in databases and to reach consensus on the scope of discovery.").

As noted above, much of the discovery sought by the Uniform OEM Subpoena is both cumulative and duplicative of information actually available from Defendants, Indirect Purchasers, or their DMS Providers, or is potentially available from commercial sources of automotive data. *See* Request Nos. 1 (purchases of Auto Parts), 2, 19 (prices of Auto Parts), 4-12, 20-22 (sales or leases of vehicles). Much of that information has been or is in the process of being produced by parties to the litigation. Therefore, at a minimum, the Uniform OEM Subpoena should be held in abeyance until the production of information available from Defendants and Auto Dealers is completed, at which time the necessity, relevance and scope of the Uniform OEM Subpoena can be revisited. *See MFS & Co. LLC., v. Caterpillar, Inc.,* No. 09–14063, 2012 WL 195510, at*5 (E.D. Mich. Jan. 24, 2012) (modifying subpoena to exclude

publicly available documents and requests that were duplicative of other requests); *Kessler v. Palstar, Inc.*, No. 3:11–cv–35, 2011 WL 4036689 at *2 (S.D. Ohio Sep. 9, 2011) (requiring subpoenaed non-party to obtain the same documents requested from the Defendant is overly burdensome and subpoena "clearly duplicative"); *Haworth Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed. Cir. 1993) (district court can "properly require" a party "… to seek discovery from its party opponent before burdening the nonparty…").

For the foregoing reasons, DPPs respectfully submit that the Court should prohibit the issuance and service of the Uniform OEM Subpoena in its entirety. In the alternative, DPPs respectfully request that the Court limit the scope of the Uniform OEM Subpoena upon a demonstration of particularized need by Defendants and IPPs that specific information cannot be obtained from any other source other than non-party OEMs.

DATED: May 13, 2015.                    Respectfully submitted,

                                        */s/ David H. Fink*
                                        David H. Fink (P28235)
                                        Darryl Bressack (P67820)
                                        FINK + ASSOCIATES LAW
                                        38500 Woodward Ave., Suite 350
                                        Bloomfield Hills, MI 48304
                                        (248) 971-2500

                                        *Interim Liaison Counsel for the Direct Purchasers*

Steven A. Kanner                        Joseph C. Kohn
William H. London                       William E. Hoese
Michael E. Moskovitz                    Douglas A. Abrahams
FREED KANNER LONDON                     KOHN, SWIFT & GRAF, P.C.
  & MILLEN LLC                          One South Broad Street, Suite 2100
2201 Waukegan Road, Suite 130           Philadelphia, PA 19107
Bannockburn, IL 60015                   Telephone: (215) 238-1700
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
  & WILLIS, P.C.
181 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchasers*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2015, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
38500 Woodward Ave., Suite 350
Bloomfield Hills, MI  48304
(248) 971-2500
dfink@finkandassociateslaw.com