# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: All Cases | |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

# FORD MOTOR COMPANY'S RESPONSE
# TO THE PROPOSED OEM SUBPOENA

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 3

    I.    The OEM Subpoena Improperly Seeks Highly Sensitive Information ........................... 3

    II.   The OEM Subpoena Is Unduly Burdensome ................................................................. 4

    III.  The OEM Subpoena Contains Irrelevant Requests ........................................................ 8

    IV.  The Information Sought Can Be Obtained From Other Sources .................................... 8

    V.   The Vague And Ambiguous Requests Should Be Redrafted ...................................... 11

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Howmedica Leibinger, GmhH*,
  190 F.R.D. 518 (W.D. Tenn. 1999) .......................................................................................10

*In re CareSource Mgmt. Grp. Co.*,
  289 F.R.D. 251 (S.D. Ohio 2013) ........................................................................................7, 8

*Children's Legal Servs. P.L.L.C v. Kresch*,
  No. CIV.A. 07-CV-10255, 2007 WL 4098203 (E.D. Mich. Nov. 16, 2007),
  *order clarified*, 2008 WL 124496 (E.D. Mich. Jan. 11, 2008) ................................................11

*E.E.O.C. v. St. John Hosp. & Med. Ctr.*,
  No. CIV.A. 12-50225, 2012 WL 3887626 (E.D. Mich. June 1, 2012),
  *report and recommendation adopted*,
  No. 12-50225, 2012 WL 3888072 (E.D. Mich. Sept. 7, 2012) .............................................5, 7

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
  No. 09-50630, 2009 WL 2351769 (E.D. Mich. July 29, 2009) ............................... 4-5, 8, 9, 10

*Haworth Inc. v. Herman Miller, Inc.*,
  998 F.2d 975 (Fed. Cir. 1993) ..............................................................................................9, 10

*Hendricks v. Total Quality Logistics, LLC*,
  275 F.R.D. 251 (S.D. Ohio 2011) ..............................................................................................8

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
  474 F.3d 288 (6th Cir. 2007) ......................................................................................................7

*Murray v. Atkinson*,
  No. CIV.A. 07-CV-10798, 2007 WL 4126622 (E.D. Mich. Nov. 20, 2007) ..........................11

*Spartanburg Regional Healthcare Sys. v. Hillenbrand Indus., Inc.*,
  No. 1:05-MC-107, 2005 WL 2045818 (W.D. Mich. Aug. 24, 2005) .........................................4

*Univ. Del., Inc. v. Comidata Net., Inc.*,
  No. 3:10-mc-00104, 2011 WL 1085180 (M.D. Tenn. Mar. 21, 2011) ......................................4

*In re Vitamins Antitrust Litig.*,
  267 F. Supp. 2d 738 (S.D. Ohio 2003) .......................................................................................4

**Other Authorities**

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................................8-9

Fed. R. Civ. P. 34(b)(1)(A) ...........................................................................................................11

Fed. R. Civ. P. 45(d)(1) ..................................................................................................................4

Fed. R. Civ. P. 45(d)(3)(B)(i) .........................................................................................................3

Fed. R. Civ. P. 45(e)(1)(D) .............................................................................................................9

*The Sedona Principles: 2d Ed.*, Comment 13.c. (June 2007) .........................................................5

Pursuant to Special Master Esshaki's ruling at the May 6, 2015 status conference, Ford Motor Company ("Ford") respectfully submits this response to the defendants and indirect purchaser plaintiffs' proposed subpoena to the original equipment manufacturers (the "OEM Subpoena").[1]

**PRELIMINARY STATEMENT**

The scope of the proposed OEM Subpoena – which seeks detailed information and data concerning 56 specific automotive products and *all vehicles* sold by OEMs from 1992 to present – is extraordinary and, to Ford's knowledge, unprecedented in the automotive industry. The OEM Subpoena as drafted is unreasonable and utterly unworkable with respect to both the nature and breadth of the information sought and would inevitably have industry-wide ramifications. While Ford does not purport to speak for any other OEM in submitting this response, it is undoubtedly the case that other OEMs will have the same concerns as are being raised here by Ford, and the proposed OEM Subpoena should not be served in its current form.

First, the OEM Subpoena seeks highly sensitive and proprietary information concerning the core aspects of Ford's business. Providing this information to the large number of Ford's suppliers who are the defendants in this MDL, as well as the auto dealers who purchase vehicles from Ford, would be extremely detrimental to Ford's business and competitive position. Ford has never before, in any litigation, been compelled to produce this type of highly confidential information to such a large group of its suppliers and dealers, and the damage that such disclosure would cause – on an industry-wide basis – simply cannot be overstated.

---

[1]  Ford filed an action against Fujikura Ltd. and Fujikura Automotive America LLC (collectively, "Fujikura"), which arises out of Ford's direct purchases of wire harnesses and related products, and which is being coordinated with the other actions in the Wire Harness Cases. Ford is an absent class member of the direct purchaser putative class actions, and a non-party to every auto dealer and end payor putative class action.

1

Second, responding to the OEM Subpoena would be a herculean task, impose an enormous burden on Ford's employees, and cause significant business disruption. The OEM Subpoena seeks nearly every piece of paper relating to Ford's sourcing of 56 specific automotive products over the past 23 years, and information concerning the approximately *80 million vehicles* sold by Ford in North America during that period. To comply with the OEM Subpoena, Ford would be required to enlist a massive team of individuals to work full time to identify and collect this information from numerous groups and countless employees throughout the company to be reviewed and analyzed for production. The responsive information could include millions of pages of documents and terabytes of data.

Third, the excessive burden that would be imposed upon Ford is wholly unjustifiable in light of the marginal – if any – relevance of the information sought by many of the overly broad requests.

Fourth, much of the information sought by the OEM Subpoena can be produced by the actual parties to the actions, as well as other third parties, in a more convenient, less burdensome manner. This information should be sought and obtained from these other sources in the first instance.

Fifth, many of the requests are vague and ambiguous and should be redrafted before the OEM Subpoena is served.

While Ford will formally respond to any OEM Subpoena when it is served, as the only OEM that is a party in the MDL, Ford offers its perspective to assist the Court and the Special Master in understanding the enormous and extremely unfair burden that the proposed OEM

Subpoena would impose and the significant disruption it would cause across the automotive industry.[2]

## ARGUMENT

I. **THE OEM SUBPOENA IMPROPERLY SEEKS HIGHLY SENSITIVE INFORMATION**

The OEM Subpoena would improperly require the disclosure of Ford's most sensitive commercial and proprietary information, including information concerning how Ford purchases auto parts and prices its vehicles, and Ford's overall business plans and strategies. This highly confidential information goes to the very core of Ford's business, and is the epitome of protected information. *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (a subpoena may be quashed or modified if it requires the disclosure of "a trade secret or other confidential research, development, or commercial information"). Ford does not share such information with anyone outside of the company – let alone its auto parts suppliers and auto dealers – and the disclosure of this information would cause significant harm to Ford's business and would be detrimental to its competitive position.

The OEM Subpoena seeks the production of documents concerning Ford's confidential business strategy, including its most sensitive pricing information. For example, Request No. 13 seeks the production of "[d]ocuments sufficient to disclose, identify, describe, and explain the policies, procedures, methods, standards, decision-making, guidelines, factors, and reasons for determining, setting or revising Your prices . . . ." Similarly, Request No. 24 seeks "[d]ocuments sufficient to show, for each model of new Vehicle manufactured by You that is sold or leased in the United States, the models of Vehicles manufactured by other OEMs that You consider to be

---

[2] Ford's response is based solely on the information currently available to Ford concerning Ford's documents and data. Ford reserves its rights to object to any requests contained in the final OEM Subpoena on any and all grounds after it is served.

3

competitors and how (if at all) You considered the pricing by such other OEMs of such models in setting the price of the model manufactured by You." *See also* Requests Nos. 14, 15, 16, 19, 28. Such requests call for the production of Ford's most sensitive commercial information and Ford, as a non-party, should not be required to respond to these requests. *See Spartanburg Regional Healthcare Sys. v. Hillenbrand Indus., Inc.*, No. 1:05-MC-107, 2005 WL 2045818, at *3-4 (W.D. Mich. Aug. 24, 2005) (quashing subpoena that requested "documents detailing sensitive and confidential aspects of [company's] business strategy" to a competitor, despite protective order).

Further, Ford's concerns are in no way alleviated by any protective order in this MDL, given the vast number of parties involved – including, in particular, Ford's suppliers and auto dealers – and the highly sensitive nature of the information sought. *See Univ. Del., Inc. v. Comidata Net., Inc.*, No. 3:10-mc-00104, 2011 WL 1085180, at *7 (M.D. Tenn. Mar. 21, 2011) (recognizing the "constant danger inherent in disclosure of confidential information pursuant to a Protective Order"); *see also In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738, 741-42 (S.D. Ohio 2003) (despite protective order, quashing subpoena given heightened concern "that certain of the defendants in the antitrust litigation are [the subpoenaed party's] direct competitors").

The expanse of these requests is unprecedented. Ford has never before been compelled to produce this breadth of highly sensitive commercial information. If Ford and the other OEMs were required to produce this highly confidential information, it would have a potentially devastating impact on the automotive industry, because it would negatively affect competition and OEM profitability, which, in turn, would harm shareholders.

## II.   THE OEM SUBPOENA IS UNDULY BURDENSOME

The OEM Subpoena also improperly would impose an enormous and undue burden and expense on Ford. *See* Fed. R. Civ. P. 45(d)(1); *see also Hansen Beverage Co. v. Innovation*

4

*Ventures, LLC*, No. 09-50630, 2009 WL 2351769, *1 (E.D. Mich. July 29, 2009) ("Whether a burden is undue requires weighing the likely relevance of the requested material . . . against the burden . . . of producing the material. Courts also consider one's status as a nonparty to be a significant factor in the undue-burden analysis." (internal quotations and citations omitted)); *The Sedona Principles: 2d Ed.*, Comment 13.c. (June 2007). The OEM Subpoena seeks a vast amount of information and data, concerning more than 50 products over a more than twenty-year time period, which could be located in the files of an indeterminate number of former and current Ford employees and in multiple databases. The OEM Subpoena should be substantially revised to avoid imposing extraordinary burdens upon Ford, including significant business disruption.

As drafted, the OEM Subpoena would require Ford to respond to multi-part requests with respect to 56 separate products. Responding to these requests would disrupt Ford's business because Ford would be forced to enlist a team of employees to work full time in order to identify and collect documents from potentially hundreds of Ford employees. These overly broad requests could implicate millions of pages of documents, which would require many months if not years to review properly. *See E.E.O.C. v. St. John Hosp. & Med. Ctr.*, No. CIV.A. 12-50225, 2012 WL 3887626, at *8-9 (E.D. Mich. June 1, 2012) (narrowing time period for subpoena to alleviate burden on normal business operations), *report and recommendation adopted*, No. 12-50225, 2012 WL 3888072 (E.D. Mich. Sept. 7, 2012).

This task is particularly burdensome and time-consuming given Ford's organizational structure. For example, Ford's purchasing department has been restructured many times over the past 23 years (further complicating the issue), but is currently organized into five groups: Global Powertrain Purchasing, Global Interior Purchasing, Global Electrical Purchasing, Global Body & Exterior Purchasing, and Global Chassis Purchasing. Within each of these five groups, buyers

5

are organized into teams with each team responsible for a different category of parts. The buyers in each group are also subdivided: certain buyers interact with suppliers during the sourcing process and other buyers work with a supplier after Ford has decided to source from a particular supplier and the part is being developed. Moreover, Ford rotates its buyers frequently throughout its purchasing department. Accordingly, to respond to the requests concerning just one of the 56 products could include all of the employees in the relevant purchasing group.[3] The process of identifying the relevant employees itself would pose a significant burden, let alone the burden that would be imposed by interviewing and collecting data and documents from these custodians once they are identified.

As drafted, the OEM Subpoena would also require Ford to produce an enormous amount of data concerning Ford's purchases of numerous products and its sales of vehicles. This information is contained in multiple databases at Ford, which are each continuously updated as new parts are purchased and vehicles are sold. As a result, Ford would have to invest extensive time and resources to extract the data from these multiple sources, and would then be required to combine and cross-reference the data so that it would be usable to those outside of Ford. This process would be hugely time-consuming and would impose a significant burden on Ford.

Compounding the burdens associated with the production of responsive documents and data is the fact that the OEM Subpoena seeks documents and data covering a time period of 23 years – from 1992 to present. This is far longer than the time frame for which any party in the Wire Harness Cases has agreed to produce documents, and, although there are varying time periods at issue in the different cases in the MDL, it is difficult to discern any possible relevance

---

[3] For example, in responding to Fujikura's request for documents, Ford has agreed to search the documents of 17 purchasing employees who were involved in Ford's purchases of wire harnesses and related products from 2000-2011.

6

of documents dating back to 1992. It would be entirely unreasonable to require Ford to locate documents and data from 23 years ago, including data concerning *every vehicle sold by Ford* in North America for the last 23 years – approximately 80 million vehicles. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (upholding protective order where compliance with request for documents covering an eight year period would be "unduly burdensome"); *see also In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013) (quashing subpoena where requests "cover[ed] long time periods (*e.g.*, four to six years)"); *E.E.O.C.*, 2012 WL 3887626, at *8.[4] The OEM Subpoena should be revised to provide for a reasonable start date.

The OEM Subpoena should also be redrafted to provide a specific end date. Non-party OEMs should not be under a continuing obligation to produce responsive documents and data, which would result in countless productions throughout the entire life of this MDL, as these databases are constantly updated. Without a fixed end date for the OEM Subpoena, Ford would be required to dedicate Ford employee time to compiling and producing the data responsive to the OEM Subpoena on an ongoing basis. The parties to the OEM Subpoena should be required to provide a fixed end date for the requests.

In short, the OEM Subpoena should be redrafted to address the substantial burden imposed on Ford and other OEMs to identify, review, and produce documents and data responsive to the numerous requests related to 56 separate products over 23 years.

---

[4] While Ford appreciates the effort to coordinate the subpoena process so that Ford does not receive multiple subpoenas in each action, requiring Ford to respond to the requests for all parts on the same timeframe ignores the practical realities of this MDL, and the fact that all cases are not on the same schedule. The information sought concerning Ford's sourcing and direct purchases of each part is part-specific. If Ford is going to be required to produce this information – and Ford maintains this information should be obtained from other parties (*see* Part IV, *infra*) – there is no reason why the production of this information cannot be sequenced such that the documents related to the parts that are farthest along in the discovery process are produced first, with additional time to produce documents related to other parts.

7

**III.    THE OEM SUBPOENA CONTAINS IRRELEVANT REQUESTS**

It is particularly inappropriate to impose such an undue burden on a non-party where the requests seek information that is not relevant to the claims or defenses at issue in the MDL, and the requests are not proportional to the needs of the cases. *See CareSource*, 289 F.R.D. at 253 ("Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." (quotations omitted)); *see also Hansen Beverage* 2009 WL 2351769, at *1. "[T]he party seeking the discovery has the burden to show the relevancy of the request" "when relevancy is not apparent on the face of the request." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quotations omitted) (granting motion to quash subpoenas on relevancy and overbreadth grounds).

Several of the requests seek information that is patently irrelevant to any of the pending MDL actions. For example, Request No. 10 seeks the production of "[m]onthly or periodic reports on Your inventory levels with respect to new Vehicles intended for sale or lease in the U.S." Ford's inventory levels have no relevance to the claims or defenses at issue in the MDL, and Ford should not be required to produce irrelevant monthly or periodic reports for a 23 year time period. *See also, e.g.*, Requests Nos. 10, 11, 26, 31; *see also* Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs, Case No. 2:12-md-02311, No. 967, 12-13.

In sum, the OEM Subpoena should be redrafted such that it does not seek irrelevant documents and data.

**IV.    THE INFORMATION SOUGHT CAN BE
         OBTAINED FROM OTHER SOURCES**

The OEM Subpoena also improperly seeks from OEMs information that is more readily available from other sources. *See* Fed. R. Civ. P. 26(b)(2)(C) (providing that a "court must limit

8

the frequency or extent of discovery otherwise allowed" if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *see also* Fed. R. Civ. P. 45(e)(1)(D) (referencing Fed. R. Civ. P. 26(b)(2)(C) in connection with requests for inaccessible ESI). Many of the requests in the OEM Subpoena seek information that can be obtained from parties to the litigation, and other more convenient, less burdensome, and less expensive sources. *See Hansen Beverage*, 2009 WL 2351769, at *2 (granting motion to quash subpoena where information sought was "obtainable from Plaintiff in a more direct, less burdensome, and more convenient fashion"); *see also Haworth Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (court can "properly require" a party "to seek discovery from its party opponent before burdening the nonparty").

First, the defendants – and not the non-party OEMs – are the best source for detailed information about purchases of auto parts. Defendants in the Wire Harness Cases have already produced transactional data and other information to all parties concerning their sales of wire harness products to direct purchasers, and all other defendants should have the same information for all auto parts. Thus, the information sought in Requests Nos. 1-3, among others, should be sought in the first instance from the defendants, not from non-party OEMs.

Second, certain information sought in the OEM Subpoena should be sought in the first instance from the auto dealer plaintiffs ("ADPs"). The ADPs have the same information as the non-party OEMs concerning the communications between the ADPs and OEMs. *See* Request No. 22. Further, ADPs concede that they have the same "downstream" data that they purport to seek from the non-party OEMs concerning the purchases of vehicles, including detailed records regarding purchases of automotive vehicles, such as purchase prices and other costs associated

9

with the acquisition of these vehicles. *See* Requests Nos. 4, 8,[5] 20, 21, 34. Indeed, the ADPs and defendants have reached an agreement concerning the ADPs' production of such documents and data. *See* Stipulation And Order Regarding Auto Dealer Plaintiffs' Production Of Documents And Data (the "Stipulation"), ECF No. 310 in Case No. 2:12-cv-00102 and ECF No. 312 in Case No. 2:12-cv-00103; *see also* Direct Purchaser Plaintiffs' Motion To Limit Uniform Subpoena To OEMs, Case No. 2:12-md-02311, No. 967, 6-9. ADPs will produce data from numerous fields as well as documents reflecting incentives, rebates, and promotions offered by OEMs to ADPs. *See* Stipulation ¶¶ 1, 4.[6] In light of the vast quantity of data the ADPs will be producing, the OEM Subpoena should be tailored so it does not seek duplicative information from the non-party OEMs. *See Hansen Beverage*, 2009 WL 2351769, at *2; *see also Haworth*, 998 F.2d at 978.

Third, certain information sought in the OEM Subpoena can be more conveniently produced – and with less burden and expense – by other third parties. For example, Request No. 17 seeks "[a]ll studies, analyses, research, evaluations, or trade association materials concerning the market(s) . . . ." This information should be sought from commercially available sources in the business of collecting and analyzing industry data. *See Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 525 (W.D. Tenn. 1999) (in the absence of some showing that publicly available information is inadequate, the burden that production would place on non-party is unreasonable, particularly in light of its non-party status). Likewise, Request No. 29 seeks documents and data that the OEMs provided to the J.D. Power Information Network concerning new Vehicles sold or leased in the U.S. It would be far less burdensome to obtain

---

[5] As discussed in Part V, *infra*, Request No. 8 is also vague and ambiguous.

[6] The exact data that is to be provided by the ADPs is described in an exhibit attached to the Stipulation that was filed under seal and has not been provided to Ford.

10

this information directly from J.D. Power – which has collected all of the requested information in one centralized location – rather than from each OEM separately.  *Id.*

The parties to the OEM Subpoena should obtain the information requested first from the parties to the litigation and other non-parties before burdening the OEMs.[7]

## V. THE VAGUE AND AMBIGUOUS REQUESTS SHOULD BE REDRAFTED

Certain of the requests are also impermissibly vague and ambiguous.  Rule 34 requires that requests "describe with reasonable particularity each item or category of items to be inspected."  Fed. R. Civ. P. 34(b)(1)(A); *see also Children's Legal Servs. P.L.L.C v. Kresch*, No. CIV.A. 07-CV-10255, 2007 WL 4098203, at *6 (E.D. Mich. Nov. 16, 2007) (denying motion to compel requests that "do not describe the documents sought with reasonable particularity"), *order clarified*, 2008 WL 124496 (E.D. Mich. Jan. 11, 2008); *Murray v. Atkinson*, No. CIV.A. 07-CV-10798, 2007 WL 4126622, at *3 (E.D. Mich. Nov. 20, 2007) (same).  To avoid the unnecessary expense involved with interpreting and negotiating the meaning of the vague and ambiguous requests, these requests should be clarified before the OEM Subpoena is served.

For example, Request No. 6 seeks "VIN databases that include complete specifications for every new Vehicle sold by You or on Your behalf for sale or lease in the U.S."  The parties make no effort to define "complete specifications," which could refer to an enormous breadth of information.  Request No. 8 calls for "[d]ocuments sufficient to show the chronological progress of the prices You charged to each Vehicle dealership for each Vehicle You sold to a Vehicle dealership in the U.S.," but the parties make no effort to explain what "chronological progress of prices" means.[8]  *See also, e.g.*, Requests Nos. 1, 4, 5, 10, 11, 14, 17, 21.

---

[7]  Moreover, to the extent certain relevant information is not available from third parties, this information may be more easily obtained through a corporate deposition of the OEMs, rather than through the extensive and burdensome document discovery sought by the OEM Subpoena.

[8]  This information should, in any event, be sought from the ADPs in the first instance.  *See* Part IV, *supra*.

11

Rather than forcing the OEMs to individually parse the meaning of these vague and ambiguous requests – or clarify them through the meet and confer process – these requests should be clarified *before* the OEM Subpoena is served.

## CONCLUSION

Based on the foregoing, Ford respectfully requests that the parties to the OEM Subpoena be required to redraft the OEM Subpoena to address the issues raised herein before the OEM Subpoena is served.

Dated: May 20, 2015

                KASOWITZ, BENSON, TORRES
                & FRIEDMAN LLP

By: /s/ Hector Torres
     Hector Torres
     Cindy C. Kelly
     Edward E. McNally
     Sarah Gibbs Leivick

     1633 Broadway
     New York, New York 10019
     (212) 506-1700
     htorres@kasowitz.com
     ckelly@kasowitz.com
     emcnally@kasowitz.com
     sleivick@kasowitz.com

     Eric J. Pelton (P40635)
     Theodore R. Opperwall (P31374)
     Ryan D. Bohannon (P73394)
     KIENBAUM OPPERWALL
     HARDY & PELTON, P.L.C.
     280 N. Old Woodward Avenue,
     Ste. 400
     Birmingham, Michigan 48009
     (248) 645-0000
     epelton@kohp.com
     topperwall@kohp.com
     rbohannon@kohp.com

     *Attorneys for Plaintiff Ford Motor Company*

**CERTIFICATE OF SERVICE**

I, Hector Torres, hereby certify that on the 20th day of May, 2015, I caused a true and correct copy of the foregoing Ford Motor Company's Response to the Proposed Draft OEM Subpoena to be served upon all counsel of record using the ECF system.

 /s/ Hector Torres
Hector Torres
1633 Broadway
New York, New York 10019
(212) 506-1700
htorres@kasowitz.com