# Exhibit B



April 28, 2015

Dear Special Master Esshaki:

During the January 28, 2015 Status Conference, Judge Battani directed that Direct Purchaser Plaintiffs (DPPs) be allowed to comment on a subpoena to Original Equipment Manufacturers (OEMs) that was being drafted by Defendants and Indirect Purchaser Plaintiffs (IPPs).  On April 14, 2015, DPPs received a copy of the attached proposed subpoena (the "Uniform OEM Subpoena" or the "Subpoena").

DPPs have multiple concerns regarding the Subpoena's relevance, scope, and burden.  As more fully explained below, the parties should not be allowed to issue and serve the Subpoena on the OEMs because it seeks information that is irrelevant in the Direct Purchaser actions, demands information that is available from the parties in the Indirect Purchaser actions, and is overbroad and unduly burdensome on its face.  For these reasons, the DPPs request that issuance and service of the Uniform OEM Subpoena be prohibited until such time as the parties to the Indirect Purchaser actions can demonstrate the necessity of the specific information requested, and, if they are able to show that the information is necessary, the lack of less burdensome alternative sources for it.

### The Information Sought in the Uniform OEM Subpoena is not Relevant

In the Uniform OEM Subpoena, Defendants and IPPs seek from OEMs – absent class members in the DPP actions –extensive, detailed, and potentially non-existent information about purchases of multiple auto parts ("upstream" data) and sales of multiple finished vehicles ("downstream" data) from 1992 to the present.  This information is not relevant to the DPPs' case.  It is intended entirely for use in the IPP cases to determine whether an illegal overcharge was passed through to each of the Indirect Purchaser classes.

The Supreme Court has determined that "downstream" information concerning the sales of finished vehicles is not relevant to direct purchaser plaintiffs' antitrust claims, because a federal antitrust case may not be defended on the ground that direct purchasers passed on an illegal overcharge to their customers. *See Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481, 492-94 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 732 (1977).[1]  For this reason, downstream discovery is generally prohibited in direct purchaser cases.  *See, e.g., In re Aspartame Antitrust Litig.*, 2008 WL 2275528, *4 (E.D. Pa. April 8, 2008) ("courts have

---

[1] *See also County of Oakland v. City of Detroit,* 866 F.2d 839, 847-848 (6th Cir. 1989); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 552-554 (E.D. Tenn. 2013) (down-stream discovery not relevant to DPPs' measure of damages or class certification).

consistently noted that this type of [downstream] discovery is not favored" in price fixing class actions); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-8 (M.D. Pa. 2005) (courts "generally proscribe downstream discovery" in price fixing cases); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) (denying defendants' motion to compel production of downstream, financial and currency exchange rate data).

The OEMs are third parties with respect to the Indirect Purchaser actions and have no financial or other interest in their outcome.[2] Accordingly, they should be protected from the overbroad and unduly burdensome Subpoenas. *See* Fed.R.Civ.P. 45(d) (party issuing subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); *Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, 2013 U.S. Dist. LEXIS 61616, at *22 (E.D. Mich. April 11, 2013) ("In considering the scope of discovery, the court should balance a party's 'right to discovery' with the need to prevent 'fishing expeditions.' This is especially true with requests to non-parties."); *Lowe v. Vadlamudi*, 2012 U.S. Dist. LEXIS 127586, at *5 (E.D. Mich. Sept. 7, 2012) ("the burden of demonstrating relevance is on the party seeking discovery"); *Hansen Bev. Co. v. Innovation Ventures, LLC*, 2009 U.S. Dist. LEXIS 65358, at *2-3 (E.D. Mich. July 29, 2009) (a subpoenaed entity's status as a non-party is a significant factor in the undue burden analysis).

### Responsive Information Can be Obtained from Alternative Sources

Pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i), a court must limit the frequency or extent of discovery otherwise allowed if it determines that:

(i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

*See also* Fed. R. Civ. P. 45(e)(D) (referencing Fed. R. Civ. P. 26(b)(2)(C)(i) in connection with the requests for inaccessible ESI).

The information deemed relevant to the resolution of the Indirect Purchaser cases should be sought in the first instance from the parties to those cases, not from non-party OEMs who have no stake in the IPPs' claims. *See Hansen Bev.*, 2009 U.S. Dist. LEXIS 65358, at *5 (regarding subpoena to non-party, "in addition to being broad, these requests are obtainable from

---

[2] Even as absent members of the Direct Purchaser class, OEMs are protected from the very type of discovery now sought by Defendants and IPPs. *See, e.g., Groth v. Robert Bosch Corp.*, No. 1:07-cv-962, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008) (discovery from absent class members not warranted as a matter of course and demonstration of "particularized need" is a prerequisite to discovery of them); *In re Polyurethane Foam Antitrust Litig.*, 2014 WL 764617, at *2 (N.D. Ohio Feb. 26, 2014) (endorsing "particularized need" rule); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549 (E.D. Tenn. 2013) (defendants in multi-district litigation did not demonstrate particularized need for downstream discovery and data of unnamed members of *proposed* direct purchaser class simply because indirect purchaser plaintiffs were also before the court).



Plaintiff in a more direct, less burdensome, and more convenient fashion"). Indeed the parties to the Indirect Purchaser actions already possess much of the information sought.

First, Defendants, not non-party OEMs, are the best source for detailed information about purchases of auto parts. The Wire Harness Defendants have already produced transactional data and other information to all parties, including IPPs, which reflect Defendants' sales of those products to Direct Purchasers. *See Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc.*, No. 1:05-MC-107, 2005 WL 2045818 (W.D. Mich. Aug. 24, 2005) (antitrust case) (denying request to non-party for relevant information because the requested information was available from other sources such as the public domain through various for-profit business information services, as well as [non-party's] annual report, and therefore "significantly undermine[d] its claim of need"). On this basis alone, the information sought in Request Nos. 1 and 2 (relating to purchases of auto parts) is cumulative, duplicative, and available from Defendants.

Second, the Automobile Dealers themselves have indicated that their own "upstream" data regarding purchases of vehicles is functionally equivalent to "downstream" data from OEMs:

> 24. Most, if not all, of the needed data can be obtained from the OEMs and others that precede the automobile dealers in the supply chain. However, despite the likely redundancy between the "downstream" OEM data and the "upstream" Auto Dealer data,5 counsel has informed me that the Auto Dealers are willing to provide data from their files that contain information on the prices that they pay the OEMs.
>
> ----------
> 5 Dr. Snyder employs this distinction between "downstream" and "upstream" data. "Upstream" data are data that are related to purchases by a given level of the distribution chain and "downstream" data are data that are related to sales by a given level of the distribution chain. Snyder Declaration, ¶15.
>
> Dr. Snyder appears to recognize that the downstream data of one level of the distribution chain is related to the upstream data for the level below it. (Snyder Declaration, ¶19 ("the downstream data of a Direct Purchaser may be similar to the upstream data of an Auto Dealer (if the Auto Dealer purchased the WHP directly from the Direct Purchaser)")

Declaration of Dr. Philip B. Nelson in Opposition to Certain Defendants' Motion to Compel "Downstream" Discovery from Direct Purchaser and Auto Dealer Plaintiffs [Dkt. 196-1 in Case 102 (Auto Dealer Action)], ¶ 24 and note 5.

Third, in the *Wire Harness Cases, All Dealership Actions*, the Auto Dealer Plaintiffs have been ordered to produce certain detailed information regarding the acquisition of Automotive Wire Harness Systems and vehicles containing Automotive Wire Harness Systems, and ESI concerning vehicle purchases and sales. *See* Order on Certain Defendants' Motion to Compel, ECF No. 214 in Case No. 2:12-cv-00102, *Wire Harness Cases, All Dealership Actions* (Oct. 16,

2014); Stipulation and Order, ECF No. 251 in Case No. 2:12-cv-00102, *Wire Harness Cases, All Auto Dealer Actions* (Jan. 7, 2015).

      Fourth, currently scheduled for argument on April 30, 2015, are multiple motions by Defendants, Automobile Dealer Plaintiffs, and third-party providers of Dealer Management Systems (DMS Providers) concerning Defendants' efforts to obtain the same downstream information that is requested in the Uniform OEM Subpoena.[3] The parties' submissions on these motions indicate that the Automobile Dealers themselves or their DMS Providers maintain or have access to extensive, detailed records regarding purchases of automotive vehicles, including purchase prices and other costs associated with the acquisition of these vehicles, which the Subpoenas seek. For example, the Declarations of Allen T. Levenson and Dr. Edward A. Snyder submitted in support of Defendants' Opposition to Dealer Plaintiffs' Cross Motion to Resolve Defendants' Motion to Compel Downstream Discovery and Outstanding Requests (Dkt. 306 in Case 102 (Auto Dealer Action) and Dkt. 308 in Case 103 (End Payor Action)) identify monthly "OEM Reports" prepared by automobile dealers and discuss the nature, scope, and significance of the purchase and sales information contained in those reports.

      Additionally, Defendants and IPPs should seek this information from commercially available sources who are in the business of collecting and analyzing auto industry data, including J.D. Power,[4] R.L. Polk, and *Automotive News*. *See Allen v. Howmedica Leibinger,GmhH,* 190 F.R.D. 518, 525 (W.D. Tenn. 1999) ("In the absence of some showing by Dr. Allen that the publicly available information regarding other surgical navigation technology producers is inadequate, the burden that production would place on [non-party medical device manufacturer] is unreasonable, particularly in light of [non-party manufacturer's] non-party status.").

      For these reasons, the information sought in Request Nos. 1-2, 4-12, 17, 20-22, 24, 29-32, and 34 of the Uniform OEM Subpoena can and should be obtained – and, in fact, is currently

---

[3] Defendants are currently seeking the same information requested in the Uniform OEM Subpoena through motion practice in the *Auto Dealer* and *End-Payor* actions in the *Wire Harness Cases*. *See* Certain Defendants' Motion to Establish Schedule, ECF No. 283 in Case No. 2:12-cv-00102 and ECF No. 287 in Case No. 2:12-cv-00103, *Wire Harness Cases, All Auto Dealer Actions* and *All End-Payor Actions* (March 23, 2015) (motion to establish a schedule for Auto Dealer Plaintiffs to produce ESI concerning vehicle purchases and sales); Dealership Plaintiffs' Objections to Improper Subpoenas, ECF No. 295 in Case No. 12-cv-000103, *Wire Harness Cases, All End-Payor Actions,* Case (March 31, 2015) (non-party dealer management system providers' motions to quash currently pending); Dealership Plaintiffs' Mem. ISO Mot. to Resolve Defendants' Mot. to Compel Downstream Discovery and Outstanding Discovery Requests and Resp. to Defendants' Mot. to Set Schedule, p. 2, ECF No. 298 in 2:12-cv-00102 in *Wire Harness, All Dealership Actions* (also filed in 2:12-cv-00103) (proposal by Dealership Plaintiffs for resolution of certain matters, including the production of over one hundred fields of data concerning vehicle sales and costs).

[4] The Uniform OEM Subpoena even explicitly asks for information provided to the J.D. Powers' Power Information Network. *See* Request No. 29.



being sought – from parties to the Indirect Purchaser actions and from "more convenient, less burdensome, or less expensive" third party commercially available sources . Fed. R. Civ. P. 26(b)(2)(C)(i).

### The Uniform OEM Subpoena Is Unduly Burdensome and Overbroad

Rule 45 prohibits imposing an "undue burden" on a non-party and protects a non-party from "undue expense." Rule 45(d)(1). Accordingly, as the Sedona Conference advises, non-party requests must be narrowly focused to avoid mandatory cost shifting. *The Sedona Principles: 2d Ed.*, Comment 13.c. (June 2007). Here, the Uniform OEM Subpoena is overbroad and will impose extraordinary burdens upon each non-party OEM served. While only the OEMs themselves can address the specific burdens, expense, and their ability to provide the information sought through objections, the Subpoena, on its face, is objectionable.

First, the Uniform OEM Subpoena requires the search for and production of information dating back more than 23 years (to 1992). This far exceeds the scope of what is reasonable. As a general matter, ESI more than twenty years old will likely be either non-existent or will require the non-party OEMs to incur substantial burden to retrieve and recreate archival data systems and backup tapes that are no longer functioning or functional. *See Moore's Fed. Prac.* § 37A.35[3][a] (3d ed. 2014) ("Rule 26(b)(2)(B) creates a presumption that electronically stored information on backup tapes ordinarily need not be searched."). Non-ESI material would impose similar if not greater burdens to identify, review, and analyze for responsiveness. *See Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) ("Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure.").

Second, the Uniform OEM Subpoena identifies at least 56 separate parts that must be addressed for each of the 36 individual requests set forth in the subpoena. Compounded by the 23-year time period for which information is demanded, each OEM would be faced with a monumental task to identify, review, and produce responsive information. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiry); *State Farm Mut. Auto. Ins. Co. v. Hawkins*, 2011 WL 595694 at *4 (E.D. Mich. Feb. 10, 2011) (Cleland, J.) (holding that subpoena was too broad because it was not "sufficiently tailored so as to avoid sweeping in a host of irrelevant, privileged, and otherwise inadmissible documents" and requiring the requesting party to "submit to the court a stipulated or proposed order modifying the subpoenas").

Third, many of the requests in the Uniform OEM Subpoena are vague and ambiguous, which directly contradicts this Court's guidance for ESI discovery. *See* Model Order, Principle 1.03, pp. 1-2 (pursuant to Fed. R. Civ. P. 26(b)(2)(C), "requests for production of ESI . . . should be reasonably targeted, clear, and as specific as practicable."). Indeed, it is even difficult to discern the discovery actually sought by many vague and ambiguous requests in the Subpoena, which seek data or documents "sufficient to show" or "sufficient to identify" particular information. *See, e.g.*, Request Nos. 1-5, 8, 12-15, 18-20, 23-24, 31, and 35-36. Such uncertainty invites disputes that will require the intervention of lawyers, and law firms, and the time and

expense invariably associated with both. *See* Fed.R.Civ.P. 45(c)(2)(B) (any court order to compel compliance with document subpoena "shall protect any person who is not a party or an officer of a party from significant expense" of compliance).

Fourth, many requests in the Uniform OEM Subpoena demand from non-party OEMs the production of closely-guarded and highly secret proprietary, downstream information, such as business plans and strategies, costs of production, pricing methods, and financial data. *See, e.g.*, Request Nos. 12-16, 19, 22-24, 28, 30, 32-34 (relating to analyses of costs and pricing). Even with the safeguards of the Protective Order in this case, non-parties should be protected from having to produce such burdensome discovery, especially where it is available from another source. *Ajuba Int'l, LLC v. Saharia*, No. 11-CV-12936, 2014 WL 4793846, at *2 (E.D. Mich. Sept. 25, 2014) (a "court may quash or modify a subpoena if it requires disclosure of a trade secret or other confidential research or disclosure of an unretained expert's opinion." citing Fed.R.Civ.P. 45(d)(3)(B)); *Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc.*, No. 1:05-MC-107, 2005 WL 2045818 (W.D. Mich. Aug. 24, 2005) (antitrust case) (holding that defendants' request to non-party for (1) "planning and competitive and strategic analysis;" (2) "data compilations and analyses;" (3) "actual or forecasted business and/or financial performance;" (4) sales revenue and market share; and (5) how [non-party] defines "the product markets in which [it] compete[s]" would subject non-party to "significant harm" because the documents requested would detail "sensitive and confidential aspects of Steelcase's business strategy.").

Fifth, many requests in the Uniform OEM Subpoena seek irrelevant information. *See, e.g.*, Request Nos. 7 and 9 (financing of new vehicles), 10 (inventory levels), 11 (expected sales or leases), 12 (manufacturing, pricing, and sales information), 18 (collusion by Defendants), 20 (reporting systems), 25 (organization charts), 26 (mechanics of ESI searches), 27 (productions to governmental authorities concerning auto parts investigations), 31 (conduct at issue in MDL 2311), 35 (supplier participation in OEM design of parts), 36 (compilations of OEM-approved parts suppliers). *Lowe v. Vadlamudi*, 2012 U.S. Dist. LEXIS 127586, at *10 (E.D. Mich. Sept. 7, 2012) (non-party not obligated to produce records that "contain[ed] a great deal of information that is utterly irrelevant to the plaintiff's claim" and that "likelihood that relevant information will be discovered is not sufficient to outweigh the substantial burden of producing such records"); *V Cars, LLC v. Israel Corp.*, No. CIV.A. 10-MC-50984, 2011 WL 900309 (E.D. Mich. Mar. 14, 2011) (Majzoub, M.J.) (quashing subpoena issued to non-party Chrysler that sought "any and all documents …related to any business ventures, projects, or any other dealings between Chrysler …and Chery Automobile Co., Ltd." because the requests were irrelevant to plaintiffs' claims that defendant interfered with and usurped a joint venture between plaintiff and Chery).

Sixth, the Special Master has already denied party discovery of similar categories of information in the *Dealership Actions*. *See* Order on Certain Defendants' Motion to Compel, ECF No. 214 in Case No. 2:12-cv-00102, *Wire Harness Cases, All Dealership Actions* (Oct. 16, 2014) (denying requests for financing and promotional information, monthly payment information, purchasing strategies, financial documents, budgets and cost guidelines, various acquisition documents, dealer franchise agreements). These rulings should apply equally to the



Uniform OEM Subpoena, which targets non-parties, especially with respect to Request Nos. 1-4, 11, 13-17.

## No OEM Discovery Should Occur Before
## Alternative Sources of Information Are Secured

This Court's Model Order Relating to the Discovery of Electronically Stored Information (ESI) ("Model Order") recommends staging discovery and sampling. *See* Model Order, Principle 1.03, pp. 1-2 (E.D. Mich. Sept. 20, 2013). Thus, the Court should, if the non-party discovery is even deemed necessary, use staged discovery and sampling in connection with responses to the Uniform OEM Subpoena. *See also The Sedona Conference* [5] *Commentary on Non-Party Production & Rule 45 Subpoenas*, p. 6 (April 2008) ("Active or reasonably accessible data should be produced and reviewed prior to seeking data that may be unduly burdensome to produce."); *id.* ("The party and non-party subpoena recipients should consider initial testing or sample approaches, as per Fed. R. Civ. P. 34(a), in order to inform decisions concerning the volume and nature of responsive documents, the form of production, and cost."); *Sedona Conference Database Principles*, 15 The Sedona Conference Journal 171 (Fall 2014), Principle No. 1, Scope of Discovery, p. 199 (absent specific showing of need, requesting party entitled only to database fields that contain relevant information and give context to such information and not entire database or underlying database application or database engine), Principle No. 2. Accessibility and Proportionality, p. 205 (not all information in database may be equally accessible, parties should apply proportionality to each component of a database to determine the marginal value of the information to the litigation and the marginal cost of collecting and producing it); Principle No. 3, Use of Test Queries and Pilot Projects, p. 209 ("Parties should use objective information, such as that generated from test queries, pilot projects, and interviews with persons with relevant knowledge to ascertain the burden and benefits to collect and produce information stored in databases and to reach consensus on the scope of discovery.").

As noted above, much of the discovery sought by the Uniform OEM Subpoena is both cumulative and duplicative of information actually available from Defendants, Indirect Purchasers, or their DMS Providers, or is potentially available from commercial sources of automotive data. *See* Request Nos. 1 (purchases of Auto Parts), 2,19 (prices of Auto Parts), 4-12, 20-22 (sales or leases of vehicles). Therefore, at a minimum, the Uniform OEM Subpoena should be held in abeyance until the production of information available from Defendants and Auto Dealers, at which time the necessity, relevance, and scope of the Uniform OEM Subpoena

---

[5] Sedona Conference publications have been cited favorably by the Sixth Circuit and the Eastern District of Michigan. *See Laethem Equip. Co. v. Deere &Co.*, 261 F.R.D. 127, 146 (E. D. Mich. 2009); *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008); Model Order, p. 12 (judges, attorneys, and parties should consult Sedona Conference publications for education information regarding the discovery of ESI). Federal Judicial Center publications also refer favorably to Sedona Conference materials. *See* Barbara J. Rothstein, Ronald J. Hedges & Elizabeth C. Wiggins, *Managing Discovery of Electronic Information: A Pocket Guide for Judges*, 2d Ed. (Federal Judicial Center), 2012, at 32, 35 (Sedona Principles as management tool), available at http://www.fjc.gov/public/pdf.nsf/lookup/eldscpkt2d_eb.pdf/$file/eldscpkt2d_eb.pdf.



can be revisited. *MFS & Co. LLC., v. Caterpillar, Inc.,* No. 09–14063, 2012 WL 195510, (E.D. Mich. Jan. 24, 2012) (Rosen, C.J.) (modifying subpoena to exclude publicly available documents and requests that were duplicative of other requests in the same subpoena); *Kessler v. Palstar, Inc.,* No. 3:11–cv–35, 2011 WL 4036689 at *2 (S.D. Ohio Sep. 9, 2011) (holding that subpoena issued to non-party was "clearly duplicative of the document requests that were recently issued to [defendant]" and "[r]equiring a non-party to obtain the same documents requested from the Defendant is overly burdensome."); *Haworth Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed. Cir. 1993) (upholding refusal to enforce subpoena issued to non-party where same documents were available from party opponent).

For the foregoing reasons, DPPs respectfully submit that the Court should prohibit the issuance and service of the Uniform OEM Subpoena until such time as the parties to the Indirect Purchaser actions can demonstrate the necessity of, and lack of less burdensome alternative sources for, the specific information sought from the non-party OEMs.

Respectfully,

FINK + ASSOCIATES LAW

_____
David H. Fink
*Interim Liaison Counsel
for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
FREED KANNER LONDON
  & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700

Eugene A. Spector
SPECTOR ROSEMAN KODROFF
  & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

