# Exhibit C

**From:** Esshaki, Gene J. [mailto:gjesshaki@abbottnicholson.com]
**Sent:** Monday, April 27, 2015 10:58 AM
**To:** Cherry, Steven; David Fink
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com)
**Subject:** RE: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Dear Counsel,

I have reviewed your emails regarding the supplier subpoena issue. This is simply not a matter that can be resolved via email. Accordingly, I am asking Mr. Fink to file a formal Motion addressed to me and then let Mr. Cherry respond, followed by a Reply. I will then conduct a phone conference to facilitate a solution or issue an order of relief or no relief. Please move expeditiously and I will do the same.

**Gene J. Esshaki**

  



Abbott, Nicholson, Quilter, Esshaki & Youngblood, P.C.
300 River Place, Suite 3000
Detroit, MI 48207-4225
TEL:  313.566.2500
FAX:  313.566.2502
www.abbottnicholson.com

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS ATTORNEY-CLIENT COMMUNICATIONS AND IS PRIVILEGED AND CONFIDENTIAL.  **THE PRIVILEGE MAY BE LOST IF YOU FORWARD OR DISCLOSE IT TO THIRD PARTIES.**  PLEASE EXERCISE DUE CARE.  IF YOU ARE NOT THE INTENDED RECIPIENT, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS).  IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY THE SENDER BY E-MAIL REPLY.  WHEN IN DOUBT, PLEASE CONTACT ME.

We are not authorized to enter into any binding agreement on behalf of any of our clients.  If this communication contains any settlement proposal, it is for discussion purposes only and does not

constitute an offer on behalf of us or any of our clients, and cannot create a contract or legally binding agreement.  Any settlement of any matter requires the signature of an authorized representative of our client (other than Abbott Nicholson, P.C.) on final definitive documents which have been approved in accordance with our client's procedures.

**From:** Cherry, Steven [mailto:Steven.Cherry@wilmerhale.com]
**Sent:** Friday, April 24, 2015 2:34 PM
**To:** David Fink; Esshaki, Gene J.
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com)
**Subject:** Re: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Dear Special Master Esshaki,

As set forth in my prior emails, we have no reason to believe any nonparty supplier will receive multiple subpoenas. If and when that were ever to occur, and the nonparty supplier objects, the parties can discuss it and hopefully resolve any disputes, and if necessary bring any disputes to you or the Court to resolve. But that is purely hypothetical, unlikely, and therefore premature to address at this time.

Best regards,

Steve

Sent from my BlackBerry 10 smartphone.

**From:** David Fink
**Sent:** Friday, April 24, 2015 12:50 PM
**To:** Esshaki, Gene J.
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com); Cherry, Steven
**Subject:** RE: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Master Esshaki,

Mr. Cherry addresses some issues which may distinguish supplier subpoenas from OEM subpoenas, but he never directly addresses our primary concern, which we have mentioned in every one of our messages—suppliers should not be subject to multiple subpoenas from multiple parties (multiple Indirect parties and multiple Defendants).

Mr. Cherry's assurances that the Defendants "are working with the suppliers who have raised any objections to minimize burden and resolve any discovery disputes without the need to involve the Court" has no bearing on the potential for multiple future subpoenas from multiple parties.  We continue to doubt that Judge Battani would be less concerned about the impact of discovery on suppliers than she is about its impact on OEMs.

David



NOTICE: This is a communication from Fink + Associates Law and is intended for the named recipient(s) only.  It may contain information which is privileged, confidential and/or protected by the attorney-client privilege or attorney work product doctrine.  If you received this by mistake, please destroy it and notify us of the error. Thank you.

---

**From:** Cherry, Steven [mailto:Steven.Cherry@wilmerhale.com]
**Sent:** Thursday, April 23, 2015 7:20 PM
**To:** David Fink; Esshaki, Gene J.
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com)
**Subject:** RE: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Dear Special Master Esshaki,

As an initial matter, the DPPs' rationale seems to be a moving target:

In Mr. Fink's email to me on Monday he suggested his concern is multiple subpoenas from defendants in different product tracks.  That was the concern with the OEM subpoenas - that defendants in approximately 30 other cases, as well as plaintiffs in those cases, will all need discovery from the same OEMs, who bought all of the products at issue in all of these cases and who should not have to face 30 different subpoenas.  That is not the situation with the suppliers, who for the most part would be unlikely to have purchased parts at issue in more than a couple of these cases.  Mr. Fink seems to acknowledge that at this point.  Thus, there is no apparent reason to coordinate with Defendants in the other cases on a subpoena to a supplier who did not buy those other products.

The "coordination" issue that DPPs raised in our call yesterday among all parties about the agenda for the May 6 hearing was entirely different.  That issue is whether all *objections* to any subpoena to a third party supplier should be heard before Judge Battani in the EDMI.  While Defendants have no objection to having any objections by the nonparty suppliers to the subpoenas heard and resolved by you or Judge Battani, we pointed out that these nonparty suppliers might have a different view – some of them might want to go into court in their own locale for their own convenience and the DPPs likely lack standing to make them come into the EDMI.  There is thus no dispute between the DPPs and the Defendants on that point, just an entirely hypothetical position a nonparty supplier might or might not take in the future.

Now the DPPs seem to argue for "coordination" for yet another entirely different reason:  that *End Payors and Auto Dealer Plaintiffs* might want to take discovery of the nonparty suppliers.  But that is a common situation in any case as to third party discovery and courts routinely allow each side to take its own discovery.  There is no reason to do something unusual here and certainly no reason to require a "uniform subpoena" blessed by the DPPs, who represent none of these non-party suppliers.  Moreover,  we have no reason to believe that any "coordination" with ADPs and EPPs is needed with respect to discovery of these nonparty suppliers. They have not shown any interest in conducting any such discovery to date, they have not indicated they plan to do so, and they certainly are not the ones raising the issue.

Finally, DPPs have no standing to raise any of these issues.  Some of the nonparty suppliers are themselves defendants in other product tracks and obviously have their own counsel.  None of the others are represented by the DPPs, as no class has been certified, and the other nonparty suppliers also have their own counsel.

We note that we are working with the suppliers who have raised any objections to minimize burden and resolve any discovery disputes without the need to involve the Court, while imposing as little burden as possible.

We continue to believe that it would be premature to address this issue at this time, when the ADPs and EPPs have yet to express any interest in taking any additional discovery from these nonparty suppliers and none of the nonparty suppliers has requested any such "coordination." If and when such issues arise, the parties should discuss and try to work through them on their own, and if they are unable to do so, then we should bring any disputes to the Special Master. But none of that has occurred.

Best regards,

Steve


**Steven F. Cherry | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6321 (t)
+1 202 663 6363 (f)
steven.cherry@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** David Fink [mailto:dfink@finkandassociateslaw.com]
**Sent:** Thursday, April 23, 2015 5:13 PM
**To:** Esshaki, Gene J.
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com); Cherry, Steven
**Subject:** RE: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Master Esshaki,

Direct Purchaser Plaintiffs respectfully disagree with Mr. Cherry's characterization of the relevant issues related to the subpoenas to suppliers.

Whether a particular supplier is a purchaser of multiple price-fixed products is irrelevant to the basic problem. Each of these subpoenas appears to address questions of fact regarding the extent to which alleged overcharges were or were not passed on to subsequent purchasers. While this information is not relevant to the claims of the Direct Purchaser Plaintiffs, it is central to the claims of the End-Payors and the Auto Dealers (as well as any other indirect claimants). As such, we have every reason to expect that the End-Payors and the Auto Dealers will be serving similar discovery requests on these suppliers. Also, although it appears that Defendants have privately coordinated their discovery to avoid serving multiple subpoenas on the same supplier, there is no stipulation or order that would prevent multiple follow-up subpoenas from other Defendants.

Just as Judge Battani found that it made sense with the OEM subpoenas to protect those third parties from multiple overlapping discovery demands, a similar process should be in place to protect these suppliers.

Regarding the suggestion that this request is premature, notices have been filed regarding anticipated service on as many as 21 suppliers. We don't know if the suppliers have already been served or even if any of them have already filed objections. In a discovery process that should be transparent for most purposes, this component of the process is becoming opaque.

Once the first supplier is served (which has probably already occurred), this entire issue becomes ripe. As such, we believe a stay of these supplier discovery requests should issue, so that before any of these third-party suppliers begin expending time and effort responding to what could be the first of many subpoenas, a coordinated process, similar to the OEM process can be in place.

Defendants and Indirect Plaintiffs should work together with the Special Master to design uniform subpoenas that minimize the burden on third-party suppliers, just as they have done regarding the OEMs. And, again, because many of these suppliers are also absent class members in pending Direct Purchaser Plaintiff cases, the Direct Purchaser Plaintiffs would like the opportunity to offer comments, as they are doing with respect to the proposed uniform OEM subpoena.

Finally, although Defendants believe the issue is premature, Direct Purchaser Plaintiffs have asked Judge Battani to include this subject on the Agenda for the May 6, 2015 Status Conference.

We very much appreciate your consideration of this issue.

David



**David H. Fink**
dfink@finkandassociateslaw.com

100 West Long Lake Road; Suite 111, Bloomfield Hills, MI 48304

535 Griswold; Suite 1000, Detroit, MI 48226

T: (248) 971-2500 • F: (248) 971-2600

NOTICE: This is a communication from Fink + Associates Law and is intended for the named recipient(s) only.  It may contain information which is privileged, confidential and/or protected by the attorney-client privilege or attorney work product doctrine.  If you received this by mistake, please destroy it and notify us of the error. Thank you.

---

**From:** Esshaki, Gene J. [mailto:gjesshaki@abbottnicholson.com]
**Sent:** Thursday, April 23, 2015 11:39 AM
**To:** Cherry, Steven; David Fink
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com)
**Subject:** RE: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Mr. Fink may I have your thoughts on this?


**Gene J. Esshaki**

 

 

Abbott, Nicholson, Quilter, Esshaki & Youngblood, P.C.
300 River Place, Suite 3000
Detroit, MI 48207-4225
TEL:  313.566.2500
FAX:  313.566.2502
www.abbottnicholson.com

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS ATTORNEY-CLIENT COMMUNICATIONS AND IS PRIVILEGED AND CONFIDENTIAL.  **THE PRIVILEGE MAY BE LOST IF YOU FORWARD OR DISCLOSE IT TO THIRD PARTIES.**  PLEASE EXERCISE DUE CARE.  IF YOU ARE NOT THE INTENDED RECIPIENT, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS).  IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY THE SENDER BY E-MAIL REPLY.  WHEN IN DOUBT, PLEASE CONTACT ME.

We are not authorized to enter into any binding agreement on behalf of any of our clients.  If this communication contains any settlement proposal, it is for discussion purposes only and does not constitute an offer on behalf of us or any of our clients, and cannot create a contract or legally binding agreement.  Any settlement of any matter requires the signature of an authorized representative of our client (other than Abbott Nicholson, P.C.) on final definitive documents which have been approved in accordance with our client's procedures.

**From:** Cherry, Steven [mailto:Steven.Cherry@wilmerhale.com]
**Sent:** Wednesday, April 22, 2015 10:48 PM
**To:** David Fink; Esshaki, Gene J.
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com)
**Subject:** RE: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Dear Special Master Esshaki:

The first time Mr. Fink raised this issue with Defendants was on Monday.  Defendants believe that my email (below), and Mr. Fink's failure to respond to me regarding it, show that it would be premature for you to address the issue at this time.

Best regards,

Steve


**Steven F. Cherry | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6321 (t)
+1 202 663 6363 (f)
steven.cherry@wilmerhale.com

Please consider the environment before printing this email.

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

---

**From:** David Fink [mailto:dfink@finkandassociateslaw.com]
**Sent:** Wednesday, April 22, 2015 5:37 PM
**To:** Esshaki, Gene J. (gjesshaki@abbottnicholson.com)
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com); Cherry, Steven
**Subject:** FW: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Master Esshaki,

As you will recall, on behalf of the Direct Purchaser Plaintiffs, I recently raised our concern that, while a systematic process has been established to protect the OEMs from multiple subpoenas from different parties and involving different products, no such process has been established for suppliers. I then addressed this issue with Steven Cherry, hoping Defendants would agree that a process should be established to provide some type of protection for suppliers. I also asked if the Defendants would agree to extend the time for responses to the currently-outstanding supplier subpoenas until after you address this issue .

As you can see from Mr. Cherry's response to me, the Defendants do not share our concern.

Direct Purchaser Plaintiffs would like the opportunity to address questions regarding supplier subpoenas with you. In addition to the concerns we have already referenced (multiple subpoenas from multiple Defendants and involving multiple products), we are also concerned that failure to take control of this issue could lead to suppliers raising their objections in courts other than the Eastern District of Michigan, complicating discovery, leading to confusion and potentially resulting in inconsistent decisions.

Just as Judge Battani expressed her concern that OEMs should not be subjected to multiple subpoenas, we believe the same problems could arise with suppliers, and we hope to address these issues proactively.

David



FINK + ASSOCIATES LAW
**David H. Fink**
dfink@finkandassociateslaw.com

100 West Long Lake Road; Suite 111, Bloomfield Hills, MI 48304

535 Griswold; Suite 1000, Detroit, MI 48226

T: (248) 971-2500 • F: (248) 971-2600

NOTICE: This is a communication from Fink + Associates Law and is intended for the named recipient(s) only. It may contain information which is privileged, confidential and/or protected by the attorney-client privilege or attorney work product doctrine. If you received this by mistake, please destroy it and notify us of the error. Thank you.

---

**From:** Cherry, Steven [mailto:Steven.Cherry@wilmerhale.com]
**Sent:** Monday, April 20, 2015 5:05 PM
**To:** David Fink

**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com)
**Subject:** RE: Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

David,

I think this is going to be much less of a concern for these non-party supplier subpoenas, given how few of the products any particular supplier is likely to have purchased.  This is reflected in the fact that few of the cases have direct purchaser plaintiffs, and an even smaller number have direct purchaser plaintiffs who are themselves suppliers.   I.e., Your own supplier clients appear in very few of the cases, the vast majority in only one case.  Are there particular suppliers whom you believe are likely to have purchased multiple MDL products?  If you know of any, please let us know which suppliers and products you are concerned about, and we can discuss further.

Because we really don't see any particular need for coordination across cases for these subpoenas, we don't see any need to extend time for responses as a general matter.  But we would be happy to reconsider that if there are particular suppliers we have subpoenaed that you believe also purchased products relevant in other product tracks, at least as to those suppliers.

Best regards,

Steve


**Steven F. Cherry | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6321 (t)
+1 202 663 6363 (f)
steven.cherry@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.


**From:** David Fink [mailto:dfink@finkandassociateslaw.com]
**Sent:** Monday, April 20, 2015 11:49 AM
**To:** Cherry, Steven
**Cc:** Darryl Bressack; 'Weill, Randall B.' (RWeill@preti.com)
**Subject:** Auto Parts Antitrust Litigation -- Subpoenas to Suppliers

Steve,

The Direct Purchaser Plaintiffs are concerned that, while a systematic process has been established to protect the OEMs from multiple subpoenas from different parties and involving different products, no such process has been established for suppliers.

As you know, starting about two weeks ago, the Wire Harness Defendants have been serving certain suppliers with subpoenas. While it appears that there has been some effort to coordinate those subpoenas to avoid overlap, we are concerned that these suppliers could later be compelled to respond to an unlimited number of subpoenas from multiple parties, involving multiple products. A coordinated process, similar to the process for creation of the draft uniform OEM Subpoenas (or maybe even folded

into that process), could protect our absent class members from responding to unduly burdensome requests and from unnecessary duplication of effort.

Please let us know if you would agree to such a process, and also please let us know if the Defendants will agree to extend the time for responses to the currently-outstanding subpoenas to suppliers until after this issue can be addressed with Master Esshaki.

Thank you for your attention to this matter.

David



**David H. Fink**
dfink@finkandassociateslaw.com

100 West Long Lake Road; Suite 111, Bloomfield Hills, MI 48304

535 Griswold; Suite 1000, Detroit, MI 48226

T: (248) 971-2500 • F: (248) 971-2600

NOTICE: This is a communication from Fink + Associates Law and is intended for the named recipient(s) only. It may contain information which is privileged, confidential and/or protected by the attorney-client privilege or attorney work product doctrine. If you received this by mistake, please destroy it and notify us of the error. Thank you.