# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: ALL CASES | |
| THIS RELATES TO:<br>All Actions | |

**DECLARATION OF ALLEN T. LEVENSON IN SUPPORT OF DEFENDANTS'
OPPOSITION TO DIRECT PURCHASER PLAINTIFFS' MOTION TO LIMIT
UNIFORM SUBPOENA TO OEMS**

I, Allen T. Levenson, declare as follows:

1.    I have personal knowledge of the facts set forth in this Declaration. I make this Declaration pursuant to 28 U.S.C. § 1746. I submit this Declaration in Support of Defendants' Opposition to Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs.

2.    I have substantial experience and expertise in the retail marketing and sale of vehicles by automobile dealerships to consumers and others and in the business operations of automobile dealerships, including the type of information and data maintained by automobile dealerships.

3.    From 2009 to the present, I have served as President of Gear Consulting, LLC in Norwalk, CT. Gear Consulting assists automobile dealerships in various ways, such as mining their customer and other databases, including Dealer Management System ("DMS") databases, for information that permits dealerships to increase their sales through targeted communications to customers.

4.    From 2001 to 2009, I was Vice President Sales & Marketing and Chief Marketing Officer at Asbury Automotive Group, Inc. in Stamford, CT and New York City. Asbury is a publicly-traded company that was then the fifth largest automobile retailer in the U.S., with more than $5 billion in annual sales at 121 dealerships or "stores" located nationwide.

5.    I graduated Magna cum Laude with a Bachelor of Arts degree in International Relations from Tufts University in 1985. I received a Master of Business Administration degree in Marketing from the Wharton School of Business at the University of Pennsylvania in 1989.

6.    I have reviewed the proposed template subpoena that I am advised was prepared by certain of the plaintiffs and the defendants in the 30 different product tracks in the *In re Automotive Parts* multi-district litigation, to obtain certain information and documents from automobile manufacturers ("OEMs"). The template subpoena requests, among other things:

    a.    Information about the OEMs' respective RFQ processes for purchasing automotive parts for incorporation into new vehicles, including the OEM's target prices, the identity of the suppliers OEMs selected to submit bids for a part, the content of the bids OEMs obtained from suppliers (including

        suppliers other than the Defendants), and the internal guidelines the OEMs used to evaluate and pick a winning bidder;

    b.    Information about the OEMs' post-award price and specification adjustments with respect to their purchases of automotive parts for incorporation into new vehicles;

    c.    Information about the prices paid by the OEMs for individual automotive parts that OEMs have incorporated into new vehicles;

    d.    Information about OEMs' manufacturing costs and their other direct and indirect costs of manufacturing a particular vehicle;

    e.    Information about how OEMs set their prices for particular vehicles.

7.    I am advised that certain other plaintiffs (the Direct Purchaser Plaintiffs) object to the proposed template subpoena in part on the ground that the information identified above may be available from auto dealers. The Direct Purchaser Plaintiffs are incorrect. Auto dealers would have little (if any) information on any of these topics. Auto dealers have little or no information regarding the OEMs' respective RFQ processes for the purchase of automotive parts for incorporation into new vehicles, including their target prices, the identity of the suppliers submitting bids for a particular part, the content of the bids obtained from suppliers, the criteria any OEM used to evaluate and pick winning bidders, information about negotiations between the OEM and its potential suppliers, or any post-award negotiations between the OEM and its chosen supplier. Auto dealers would not have information regarding the OEMs' preferred specifications for automotive parts, the prices OEMs are willing to pay for any given part, OEMs' sourcing practices, and OEMs' internal preferences regarding the competition between potential and actual suppliers. Auto dealers do not receive, have access to, or maintain this type of OEM information.

8.    OEMs do not share their internal costs with auto dealers, much less on a part by part basis. Auto dealers are not privy to information regarding OEMs' direct and indirect costs of manufacturing vehicles or the specific costs of the parts used in a vehicle. OEMs also do not provide information to auto dealers regarding how they set prices for vehicles they sell to auto dealers.

9.    Similarly, auto dealers have sales and pricing information regarding only their own sales. Auto dealers do not have information regarding the identities of the persons and entities to whom other dealers sold vehicles.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 27th day of May, 2015.

_____
Allen T. Levenson

- 3 -