**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311 Honorable Marianne O. Battani |
| In Re: ALL CASES | |
| THIS RELATES TO: All Actions | |

**DEFENDANTS' OPPOSITION TO DIRECT PURCHASER**
**PLAINTIFFS' MOTION TO LIMIT UNIFORM SUBPOENA TO OEMS**

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.  Whether the Court intended to authorize an unprecedented, drawn-out procedure for pre-service motions challenging the joint non-party OEM subpoenas agreed on by End-Payor Plaintiffs, Auto Dealer Plaintiffs, Truck and Equipment Dealer Plaintiffs, The City of Richmond, The State of Florida, and Defendants when it stated that Direct Purchaser Plaintiffs ("DPPs") were free to "talk to counsel" about the contents of those subpoenas.

    **Answer: No**.

2.  Whether DPPs have standing to prevent or delay service of the non-party OEM Subpoenas or otherwise challenge their content where the OEM Subpoenas place no burden on DPPs, are calculated to produce relevant information, and will be served on non-parties that are clearly capable (and far better suited than DPPs) of safeguarding their own rights?

    **Answer: No**.

3.  Whether the Court should either entirely prohibit the service of the OEM Subpoenas or delay their service (and thereby delay class certification briefing in the Wire Harness cases) by more than a year based on DPPs' assertion that some portions of the OEM Subpoenas could produce duplicative information or be burdensome?

    **Answer: No**.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**CASES**

*McNaughton-McKay, Elec. Co. v. Linamar Corp.*, No. 09–CV–11165, 2010 WL 2560047 (E.D. Mich. June 15, 2010)

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners,* 294 F.R.D. 87 (S.D. Ohio 2013)

*Riding Films, Inc. v. John Does*, No. 2:13–cv–46, 2013 WL 3322221 (S.D. Ohio July 1, 2013)

*White Mule Co. v. ATC Leasing Co., LLC,*   No. 3:07CV00057, 2008 WL 2680273 (N.D. Ohio June 25, 2008)

*Donahoo v. Ohio Dep't. of Youth Servs.*,211 F.R.D. 303 (N.D. Ohio 2002)

*Hackmann v. Auto Owners, Ins. Co.,* No. 2:05-cv-876, 2009 U.S. Dist. LEXIS 15128 (S.D. Ohio Feb. 6, 2009)

*Mann v. Univ. of Cincinnati*, 114 F.3d 1133 (6th Cir. 1997)

*Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010)

**STATUTES AND RULES**

Fed. R. Civ. P. 1

Fed. R. Civ. P. 45

D.C. Code § 28-4509(b) (2001)

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ..................................................................... i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................... ii

TABLE OF AUTHORITIES ............................................................................................ iv

INDEX OF EXHIBITS .................................................................................................... vi

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 3

    I.    NEITHER THE DIRECT PURCHASER PLAINTIFFS NOR FORD MAY
        PROPERLY OBJECT TO, BAR, OR DELAY ISSUANCE OF THE
        SUBPOENA ............................................................................................. 3

        A.    The Direct Purchaser Plaintiffs Lack Standing to Challenge the
              Subpoena. ................................................................................... 3

        B.    The Direct Purchaser Plaintiffs Have Waived Any Argument in
              Favor of Barring or Delaying Service of the Subpoenas. ................... 7

        C.    Ford Has No Basis to Comment on the Subpoenas Before They Are
              Served. ........................................................................................ 9

    II.    IF THE COURT CONSIDERS DIRECT PURCHASER PLAINTIFFS'
        OBJECTIONS, IT SHOULD REJECT THEM .............................................. 10

        A.    The Subpoenas Seek Information Relevant to the Direct Purchaser
              Plaintiffs' Claims. .................................................................... 10

        B.    These Subpoenas Also Seek Information Relevant to All Other
              Plaintiffs' Claims. .................................................................... 12

        C.    The Subpoenas Seek Information That is Not Available from Other
              Sources. ...................................................................................... 15

        D.    The Sensitive Nature of Some of the Information Requested Does
              Not Justify Blocking the Subpoenas. ............................................ 19

        E.    The Burden of Production Under These Subpoenas Will Be Unique
              to Each OEM and Should Be Addressed in the First Instance in
              Discussions With Each OEM Individually ................................... 21

CONCLUSION ............................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Brennan v. Midwestern United Life Ins. Co.*,
    450 F.2d 999 (7th Cir. 1971) ...................................................................................5

*Clark v. Universal Builders, Inc.*,
    501 F.2d 324 (7th Cir. 1974) ...................................................................................5

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010) ...........................................................................................12

*Donahoo v. Ohio Dep't. of Youth Servs.*,
    211 F.R.D. 303 (N.D. Ohio 2002) ..........................................................................4

*E3 Biofuels, LLC v. Biothane Corp.*,
    No. 1:12–mc–76, 2013 WL 3778804 (S.D. Ohio July 18, 2013) ...........................20

*Groth v. Robert Bosch Corp.*,
    No. 1:07-cv-962, 2008 WL 2704709 (W.D. Mich. July 9, 2008) .......................4, 5

*Hackmann v. Auto Owners, Ins. Co.*,
    No. 2:05-cv-876, 2009 U.S. Dist. LEXIS 15128 (S.D. Ohio Feb. 6, 2009) ...........6

*Hanover Shoe v. United Shoe Machinery Corp.*,
    392 U.S. 481 (1968)................................................................................................11

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)....................................................................................7, 11, 12

*In re Auto. Parts Antitrust Litig.*,
    No. 12-md-02311, 2014 U.S. Dist. LEXIS 136403 (E.D. Mich. 2014) .................13

*In re Flash Memory Antitrust Litig.*,
    No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) .......................15

*In re OSB Antitrust Litig.*,
    No. 06-410, 2006 U.S. Dist. LEXIS 91406 (W.D.N.C. Dec. 18, 2006).................13

*In re Polyurethane Foam Antitrust Litig.*,
    No. 1:10 MD 2196, 2014 WL 764617 (N.D. Ohio Feb. 26, 2014) .................4, 5, 7

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    292 F.R.D. 544 (E.D. Tenn. 2013)..................................................................5, 6, 7

*Mann v. Univ. of Cincinnati*,
    114 F.3d 1133 (6th Cir. 1997) ..................................................................................6

*McNaughton-McKay, Elec. Co. v. Linamar Corp.*,
No. 09–CV–11165, 2010 WL 2560047 (E.D. Mich. June 15, 2010) ..................................3, 20

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*,
294 F.R.D. 87 (S.D. Ohio 2013) ......................................................................................19, 20

*Riding Films, Inc. v. John Does*,
No. 2:13–cv–46, 2013 WL 3322221 (S.D. Ohio July 1, 2013) ..................................................6

*Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*,
No. 1:05-MC-107, 2005 WL 2045818 (W.D. Mich. Aug. 24, 2005).....................................20

*Universal Delaware, Inc. v. Comidata Network, Inc.*,
No. 3:10-MC-00104, 2011 WL 1085180 (M.D. Tenn. Mar. 21, 2011) ..................................20

*White Mule Co. v. ATC Leasing Co., LLC*,
No. 3:07CV00057, 2008 WL 2680273 (N.D. Ohio June 25, 2008).........................................3

## STATUTES AND RULES

D.C. Code § 28-4509(b) (2001) .................................................................................................12

Fed. R. Civ. P. 1 ........................................................................................................................10

Fed. R. Civ. P. 45 ......................................................................................................................10

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **IN Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re:** ALL CASES | |
| **THIS RELATES TO:**<br>All Actions | |

## DEFENDANTS' OPPOSITION TO DIRECT PURCHASER PLAINTIFFS' MOTION TO LIMIT UNIFORM SUBPOENA TO OEMS

### INDEX OF EXHIBITS

EXHIBIT 1    Declaration of Edward A. Snyder In Support of Defendants Opposition. to Direct Purchaser Plaintiffs Motion to Limit Uniform Subpoena

EXHIBIT 2    Declaration of Allen T. Levenson In Support of Defendants Opposition. to Direct Purchaser Plaintiffs Motion to Limit Uniform Subpoena

EXHIBIT 3    Transcript of Status Conference / Motion Hearings, No. 12-md-02311 (Jan. 28, 2015), ECF 892

EXHIBIT 4    Transcript of Status Conference/Motion Hearings, No. 12-md-02311 (June 4, 2014), ECF No. 744

EXHIBIT 5    Transcript of Status Conference & Motions for Preliminary Approval, No. 12-md-02311 (Oct. 8, 2014), ECF No. 851

EXHIBIT 6    Transcript of Status Conference / Motion Hearing, No. 12-md-02311 (Nov. 13, 2013), ECF No. 659

# INTRODUCTION

It has been obvious from the outset of this multi-district litigation ("MDL") that the automobile manufacturers ("OEMs") play a central role. All of the complaints, including those of the Direct Purchaser Plaintiffs ("DPPs") and Ford, allege that the OEMs purchased the auto parts at issue directly from the Defendants. In addition, DPPs allege that the OEMs also negotiated the prices at which others, including "tier one" parts suppliers (like the DPPs), purchased those products for manufacture of larger auto parts, assemblies, or systems bought by the OEMs. The OEMs allegedly conducted all of these negotiations within the context of their own unique RFQ processes, the details of which are largely known only to them. All of the complaints allege that the OEMs incurred overcharges on these purchases as a result of Defendants' various alleged conspiratorial conduct.

As the Court has observed, after buying the auto parts at issue in this MDL, the OEMs incorporated them, along with thousands of other auto parts, into finished vehicles. The OEMs then unilaterally determined the prices of those finished vehicles, along with the other terms of their transactions with the auto dealers. All of the complaints filed by End-Payor Plaintiffs ("EPPs"), Auto Dealer Plaintiffs ("ADPs"), Truck and Equipment Dealer Plaintiffs, The City of Richmond, and The State of Florida in the 30 different product tracks in this MDL allege that, in doing so, the OEMs passed on the alleged overcharges downstream in their prices for finished vehicles. But only the OEMs know what all of their costs of production were, whether and (if so) how the price of any particular auto part may have impacted their costs of production for any particular vehicle, and how they actually set the prices for each of their vehicles. The OEMs also negotiated directly with the large fleet purchasers. It is not surprising, then, that virtually every party in each of the various cases in this MDL agrees that OEM discovery is critical.

Accordingly, and at the Court's direction, EPPs, ADPs, Truck and Equipment Dealer Plaintiffs, The City of Richmond, The State of Florida, and all Defendants in all 30 different product tracks in this MDL ("the Serving Parties") finally came to agreement after many months of negotiations on the contents of the template for the subpoenas to be served on the OEMs (the "Subpoena").[1] By April 14, 2015, they were ready to proceed to begin gathering this critical discovery. At that point, however, DPPs, after failing to comment on the contents of the subpoena during the drafting process, objected to the service of the Subpoena, and now another six weeks have been lost due to their correspondence and motion seeking to block any OEM discovery.

The Court's direction that the Serving Parties negotiate to prepare and serve a comprehensive subpoena across all product tracks was *not* an invitation for an entirely novel procedure to allow DPPs—who are not even parties to the vast majority of the cases in which the Subpoena will be served and who have no relationship to any of the OEMs who will receive the Subpoena—to debate the content of the Subpoena after the Serving Parties had agreed to it, much less to argue about whether (or when) any Subpoena should be served at all. DPPs lack standing to raise *any* of the challenges they have asserted, and the motion practice they have initiated (and the Special Master has, so far, permitted to proceed) is completely inconsistent with the process that this Court contemplated when it set a deadline for the Serving Parties to negotiate the subpoena, as well as contrary to the Federal Rules of Civil Procedure.

Moreover, entertaining DPPs' motion (and Ford's "comments") about the Subpoena would simply delay resolution of any actual disputes that any OEM (including Ford) may have with the content of the Subpoena, *none* of which will be resolved by the challenges DPPs (or even Ford)

---

[1] The Serving Parties agreed upon a template for the subpoenas to be served on the various OEMs. This template may require some modest modifications for particular OEMs. For example, where there is an issue as to whether an OEM owned and controlled a particular Defendant, it may be necessary to add a few requests addressing that issue.

have raised. The scope of each OEM's production will be determined only after the Subpoena is served and the OEMs themselves have the opportunity to present their own objections and to negotiate their own agreements over the scope of their productions. The same is true with respect to the comments submitted by Ford, which acknowledges that it speaks for no other OEM and plainly lacks standing to object on their behalf. Ford even itself asserts that its comments at this pre-service stage are without waiver of *any* objections it will have once the Subpoena is served on Ford.

The delay that would result from entertaining and granting DPPs' motion would also almost certainly derail the class certification schedule in the Wire Harnesses cases, which the Court has already stated it views as disappointingly slow. The Court should therefore deny the DPPs' motion without further ado, and allow the Serving Parties to serve the OEM Subpoenas, so that the OEMs themselves can assert any objections they might have and negotiate directly over the scope of their respective productions, the Serving Parties can obtain the critical discovery from the OEMs, and the litigation of the various cases in this multi-district litigation can proceed.

## ARGUMENT

## I.   NEITHER THE DIRECT PURCHASER PLAINTIFFS NOR FORD MAY PROPERLY OBJECT TO, BAR, OR DELAY ISSUANCE OF THE SUBPOENA

### A.   The Direct Purchaser Plaintiffs Lack Standing to Challenge the Subpoena

None of DPPs are OEMs. Nor are any of the DPPs even *parties* in most of the cases in which the Subpoenas will be issued. They therefore lack standing to object.

In the absence of a claim of privilege, proprietary interest, or personal interest, a party has no standing to quash a subpoena directed at a non-party. *See McNaughton-McKay, Elec. Co. v. Linamar Corp.*, No. 09-CV-11165, 2010 WL 2560047, at *3 (E.D. Mich. June 15, 2010) (Majzoub, J.) (*quoting White Mule Co. v. ATC Leasing Co.*, LLC, No. 3:07CV00057 2008 WL

2680273 (N.D. Ohio June 25, 2008)); *see also Donahoo v. Ohio Dept. of Youth Servs.*, 211 F.R.D. 303, 306 (N.D.Ohio 2002) ("the party to whom the subpoena is directed is the only party with standing to oppose it"). This general rule applies with particular force here, because DPPs are not better situated to protect the OEMs' interests. DPPs are not even parties in two-thirds of the cases in the MDL and have offered no explanation about how their interests are affected *at all* by the Subpoenas to be issued in those cases.

Moreover, the OEMs to whom the Subpoenas will be issued are large, sophisticated businesses whose understanding of their own business, data, and documents obviously is vastly superior to that of the DPPs, all of which are small "Tier 1" suppliers, and many of which are bankrupt or defunct. The OEMs, who have their own substantial teams of inside and outside counsel, will be more than able to represent their own views about these Subpoenas, and have no need for any assistance from DPPs or their counsel. Service of the Subpoenas will commence a negotiation process with the OEMs and *their* counsel over the precise contours of the Subpoenas, and delaying the start of that process serves no purpose except further delay. In a moment of candor, DPPs admit as much in their brief, explaining that "only the OEMs themselves can address the specific burdens, expense, and their ability to provide the information sought." *See* Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs at 10, No.12-md-02311, ECF No. 967 ("DPP Br."). Rather than entertaining DPPs' objections, this Court should allow the Subpoenas to be served, and let counsel for the Serving Parties and the recipients of those Subpoenas address any issues that arise, and only hear and resolve any *actual* disputes that remain.

To try to get around their lack of standing, DPPs cite to a handful of cases holding that a court may engage in a "particularized need" inquiry before permitting discovery directed at absent members of a putative class. DPP Br. at 3 (citing *Groth v. Robert Bosch Corp.*, No. 1:07-cv-962,

2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2014 WL 764617, at *2 (N.D. Ohio Feb. 26, 2014); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549 (E.D. Tenn. 2013)). But those cases do not support DPPs' motion for a host of reasons.

First, the particularized need rule simply does not apply to these Subpoenas. The rule is intended to ensure that defendants do not issue abusive discovery requests to absent class members as a "tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants." *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) (citing *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971)). The paradigm of such an abusive request is where a defendant seeks to depose dozens of individual putative class members, solely to inquire about commonality or typicality issues, with the goal of pressuring class members to relinquish their claims. For example, in *Groth*, defendants sought both to depose and obtain documents from 50 retirees who claimed a breach of their health care benefits, with the thinly-veiled goal of harassing absent class members into providing affidavits conceding that they had not been harmed. 2008 WL 2704709, at *1. *See also Clark*, 501 F.2d at 327-34, 341 (defendants must show need to depose absent members of a class of black citizens claiming housing discrimination).

Obviously, the present circumstances bear no similarity to *Groth*. Here, the Subpoenas seek specified categories of documents and data that are directly relevant to plaintiffs' claims and Defendants' defenses and that cannot be obtained from any other source. And the targets of the requests are extremely large, sophisticated, well-represented corporations with substantial resources that have a significant stake in the litigation and that even DPPs concede are more capable of protecting their own interests than are DPPs. Moreover, as the Court has recognized,

5

Defendants have a powerful incentive not to unduly antagonize the OEMs, as the OEMs are their major customers. *See* Transcript of Status Conference / Motion Hearings at 45:5–8, No. 12-md-02311 (Jan. 28, 2015), ECF 892 ("Ex. 3").

Second, the large majority of DPPs' criticisms of the Subpoenas are irrelevant to any particularized need inquiry. Nearly the entirety of DPPs' brief focuses on the supposed undue burden the Subpoenas would cause, and DPPs plainly have no standing as a matter of law to argue that. *Riding Films, Inc. v. John Does*, No. 2:13-cv-46, 2013 WL 3322221, at *6 (S.D. Ohio July 1, 2013) ("Accordingly, this Court and another district court in this circuit have previously concluded that only the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden."); s*ee also Hackmann v. Auto Owners, Ins. Co.*, No. 2:05-cv-876, 2009 U.S. Dist. LEXIS 15128, at *3 (S.D. Ohio Feb. 6, 2009); *Mann v. Univ. of Cincinnati*, 114 F.3d 1133 (6th Cir. 1997).

Third, the particularized need rule would apply only if the OEMs were, in fact, absent class members. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 546 (E.D. Tenn. 2013). Regardless of the existence of complaints brought by DPPs, the OEM Subpoenas are necessary for the litigation of the EPPs, ADPs, Truck and Equipment Dealer Plaintiffs, The City of Richmond, and The State of Florida cases, and the OEMs are obviously not "absent class members" with respect to any of those cases. Moreover, DPPs are not even *parties* in two-thirds of the product tracks in the MDL, so the OEMs could hardly be considered their "absent class members" with respect to discovery in any of the cases in those product tracks. As a result, the particularized need rule is not even potentially applicable in the bulk of the cases in which the OEM Subpoenas are to be served. Further, the proposition that OEMs are absent class members even in the relatively few cases filed by DPPs is itself questionable. The OEMs are the DPPs' customers. Moreover, the

DPPs are nothing like the OEMs, who are large sophisticated companies who can protect their own interests.

Fourth, the Special Master should not apply a "particularized need" rule that neither this Court nor the Sixth Circuit has ever adopted. In the most recent case DPPs cite, the court held that it could not quash the subpoenas at issue and applied the rule only prospectively because the serving parties had served those subpoenas in good faith knowing no such rule previously existed. *See In re Polyurethane Foam*, 2014 WL 764617, at *2. DPPs are asking the Special Master to adopt a new rule of discovery in this Court, a request that should likely go to the district court or the Sixth Circuit in the first instance, and should not apply retroactively to these Subpoenas.

Finally, even if *none* of the foregoing arguments were correct, the Subpoenas easily meet the particularized need test, which requires only a "demonstration of need."  Manual for Complex Litigation § 21.14 (4th ed.). As explained in detail below, the Subpoenas seek information that is both essential to resolving the claims of all parties and that only the OEMs possess.[2]

### B.     The Direct Purchaser Plaintiffs Have Waived Any Argument in Favor of Barring or Delaying Service of the Subpoenas

Even if the DPPs had standing to object to the OEM Subpoenas (which they do not), the Court should not entertain DPPs' request to bar issuance of the Subpoenas or renegotiate their contents because that request is untimely, contrary to the process that the Court envisioned when it said that DPPs were free to "participate in" discussions relating to the Subpoenas, seeks to rewrite the Court's instructions on the timeline for drafting and issuance of these Subpoenas, and is

---

[2] DPPs also seem to suggest in a footnote that if they do not have standing to object to the Subpoenas, they do have standing to seek a protective order. *See* DPP Br. at 1 fn. 1. Defendants disagree. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. at 546 (dismissing DPPs' motion for protective order as to nonmembers for lack of standing, before separately addressing particularized need rule). In addition, if this Court deems DPPs' motion as seeking a protective order, then DPPs bear the burden of showing a "clearly defined and serious injury" resulting from the discovery sought. *Id.* at 549. Here, DPPs' general assertion of undue burden would not suffice.

fundamentally out-of-step with the Federal Rules of Civil Procedure. The parties first raised the need for these Subpoenas more than a year ago, and they have since been discussed at multiple status conferences.[3]  At no time during those discussions did DPPs ever object to the issuance of Subpoenas to the OEMs or suggest that their service should be delayed until after discovery among the parties had been completed. Nor do they offer any basis now to reconcile their new-found position that all OEM discovery should be delayed until at least mid-2016 with their prior commitment and agreement to a schedule requiring class certification motions in the Wire Harness cases to be filed by mid-2016— motions that obviously are dependent on that OEM discovery.

DPPs attempt to justify their most recent change of position by asserting that, at the January 28, 2015 status conference, the Court "directed that DPPs be allowed to comment on" the OEM subpoenas. DPP Br. at 1. But DPPs mischaracterize the record. At that January status conference, DPPs neither expressed any objection to issuance of the Subpoenas nor called for further delay. Instead, they only requested an opportunity to participate in the discussions concerning the content of the Subpoenas, and in response the Court merely stated that DPPs would be free to "talk to [Serving Parties'] counsel" and then directed that those negotiations be completed and the Subpoenas be ready to serve (or any disputes among the Serving Parties be presented to the Special Master) within "45 days … max."  Ex. 3 at 44:9–13, 45:18–19. Without explanation, DPPs elected not to provide any comments on the drafts of the Subpoenas, and instead waited until a final OEM Subpoena had been agreed upon and was ready for service before

---

[3]        *See, e.g.*, Transcript of Status Conference/Motion Hearings at 47:4–20, No. 12-md-02311 (June 4, 2014), ECF No. 744 ("Ex. 4"); Transcript of Status Conference & Motions for Preliminary Approval at 56:23–24, No. 12-md-02311 (Oct. 8, 2014), ECF No. 851 ("Ex. 5"); Ex. 3 at 44:3–13 , 45:18–19.

moving to bar the service of any such Subpoena, or to delay its service until all discovery among the parties was completed.

This Court should not entertain DPPs' untimely motion. DPPs have known for over a year that the other parties in the MDL were planning to serve subpoenas on the OEMs. If they had any objection to the service of such subpoenas or planned to take the position that such subpoenas should not be served until after completion of other discovery, they should have made that known long before now, so that issue could be resolved in a timely manner and not substantially delay OEM discovery. Their failure to do so has prejudiced the other parties in the MDL and continues to prejudice them, as OEM discovery is further delayed. DPPs' motion should therefore be denied.

### C.      Ford Has No Basis to Comment on the Subpoenas Before They Are Served

Ford's "amicus brief" does not ask the Court to quash the Subpoenas, implicitly recognizing that it lacks standing to challenge any Subpoena before it is served on Ford. Instead, Ford asks the Serving Parties to redraft the template before Subpoenas are served, after which Ford reserves all rights to challenge any such "redrafted" Subpoena. *See* Ford Motor Co. Response To The Proposed OEM Subpoena at 11-12, No. 12-md-02311, ECF No. 977 (May 20, 2015) ("Ford Br."). Ford neither cites any authority nor offers any logical rationale for such a wasteful, two-step process for resolving its own objections. Indeed, no case cited by DPPs or Ford involves resolution of objections to subpoenas until *after* the subpoenas have been served.

Any notion that a *prospective* recipient of a non-party subpoena (or any entity that claims some interest in speaking on behalf of such recipients) should be afforded some opportunity to object to or comment on a subpoena *before it is served* is fundamentally contrary to the Federal Rules of Civil Procedure. Rule 45 sets forth a detailed process for both the issuance and service of, and the handling of objections to, discovery subpoenas, and none of the rule's provisions even remotely countenances a mechanism for any such *pre-service* objections or motion practice.

Permitting such pre-service litigation would do nothing but cause delay and duplication of effort, and would by definition involve the Court in wasteful and speculative entanglements in unripe discovery issues, and would thus violate the most basic prescription that the federal rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## II.     IF THE COURT CONSIDERS DIRECT PURCHASER PLAINTIFFS' OBJECTIONS, IT SHOULD REJECT THEM

### A.     The Subpoenas Seek Information Relevant to the Direct Purchaser Plaintiffs' Claims

DPPs incorrectly assert that the Subpoenas are "intended entirely for use in the IPP cases," apparently on the theory that pass-on is not a defense to a direct purchaser claim. DPP Br. at 2. The Subpoenas, however, do more than inquire into facts pertaining to pass-on. They request information directly relevant to DPPs' own claims, for multiple reasons:

First, because DPPs have claimed both in their complaints and at previous oral arguments that they purchased auto parts from Defendants "at prices established by the OEMs and Defendants in the bidding process," DPPs must concede that how the OEMs set those prices is directly at issue in the litigation of DPPs' own claims. Second Amended Consolidated Class Action Complaint at 18, 2:12-cv-00101, ECF No. 103; s*ee also see also* Transcript of Status Conference / Motion Hearing at 99:9–20, No. 12-md-02311 (Nov. 13, 2013), ECF No. 659 ("Ex. 6") ("we allege the winning price [from the OEM's RFQ process] is also used when the OEM suppliers that were not part of RFQ process purchased").

How the OEMs established their purchase prices for auto parts will determine whether DPPs have a claim and to what extent, if any, they were damaged, and only the OEMs possess much of the fundamental information about these transactions. The OEMs set the specifications for each auto part, in many cases calculated target prices, selected which suppliers would be given

10

a chance to bid, issued the RFQs, received the competing bids, selected a supplier, negotiated the

initial terms of the purchase, and further negotiated any subsequent changes, redesigns, and

changes in price and other terms and conditions of subsequent purchases. They, and not DPPs,

handled virtually every essential aspect of each purchase. The OEMs' documents and data are thus

relevant both to liability and damages, and for class certification purposes they are essential to

assessing impact at the OEM level, and whether it can be proven using common evidence, an

essential step in determining whether any putative class—of DPPs, ADPs, EPPs, or Truck and

Equipment Dealer Plaintiffs—in any of the various cases in the MDL can be certified.

Second, the OEMs' information matters to DPPs' claims because it will help determine

whether a DPP had a "directed-buy" relationship with the OEMs that shielded it from economic

loss. *Hanover Shoe*, which DPPs frequently invoke to argue that OEMs' data does not matter, *see*

DPP Br. at 4–5, contains an exception to the general bar on asserting a pass-on defense against a

"direct purchaser" where DPPs purchased pursuant to a "cost-plus" contract. *See Hanover Shoe v.

United Shoe Mach. Corp.,* 392 U.S. 481, 494 (1968) ("We recognize that there might be

situations—for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus

making it easy to prove that he has not been damaged—where the considerations requiring that the

passing-on defense not be permitted in this case would not be present."); *Illinois Brick Co. v.

Illinois*, 431 U.S. 720, 736 (1977). The Subpoenas seek information about the relationships

between the OEMs and DPPs because it may show that DPPs were not damaged at all.

Third, information from the OEMs may be relevant to the adequacy and typicality of the

named DPPs as putative class representatives. If, for example, named plaintiffs purchased

pursuant to directed-buy agreements, but the majority of the class negotiated RFQs directly with

Defendants, named DPPs may not be similarly-situated to the members of the putative class. Or

the named DPPs may have other contractual or financial ties to the OEMs that make them

inadequate representatives. Where the OEMs purchased from a tier one supplier, the OEMs are not

direct purchasers, at least not without displacing the tier one suppliers, like the DPPs themselves.

Indeed, to the extent the OEMs negotiated the transactions with the Defendants and then directed

the tier one suppliers, like the DPPs, to purchase according to those terms pursuant to directed-buy

agreements (especially if done on a cost-plus basis), the OEMs may well argue that the DPPs are

not direct purchasers at all, and that the OEMs should instead be considered the direct purchasers.

*See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977). In that event, there would be an obvious

conflict of interest between the DPPs and the OEMs. This may well explain why the DPPs are

taking such a strong interest in opposing any discovery from the OEMs because they fear it may

produce evidence both relevant and detrimental to their claims.

> **B.      These Subpoenas Also Seek Information Relevant to All Other Plaintiffs' Claims**

Even if the information sought were not relevant to the DPPs' claims (which it is), it

plainly is relevant to the claims asserted by the EPPs, ADPs, Truck and Equipment Dealer

Plaintiffs, The City of Richmond, and The State of Florida. In many states where these plaintiffs

are asserting claims there is overwhelming authority that a pass-on defense is available to a

defendant either by statute or court decision.[4] Downstream information from non-parties is often

sought and produced to determine whether an overcharge was passed-on to an indirect purchaser.

*See, e.g., In re Polyurethane Foam*, 2014 U.S. Dist. LEXIS 161020, at *167-169 (to support class

certification, indirect purchaser plaintiffs used third-party subpoenas to obtain cost and sales data

---

[4] *See, e.g.*, D.C. Code § 28-4509(b) (2001) ("where both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial or complete defense . . . that the illegal overcharge has been passed on to others . . . "); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) ("defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages").

12

for pass-through analysis); *In re OSB Antitrust Litig.*, No. 06-410, 2006 U.S. Dist. LEXIS 91406, at *4 (W.D.N.C. Dec. 18, 2006) (in indirect price-fixing action, court granted motion to compel discovery (in part) from third party who was an intermediate seller in the distribution chain because the "information [was] relevant to whether the alleged [product] overcharge was passed through to the Plaintiffs by intermediate sellers such as [the subpoenaed party.")])  This Court has itself explained the relevance of this information, by stating that ADPs and EPPs must show some of the alleged overcharge was passed on to them:

> Because ADPs and EPPs are indirect purchasers, their complaints must include two allegations: (1) Defendants overcharged the direct purchasers; and (2) some or all of the overcharge was passed on to them through each of the various intermediate levels of the distribution chain.[5]

The DPPs themselves have admitted elsewhere that pass-on discovery is not merely relevant, but in fact is "central," to the claims and defenses of the Serving Parties. DPPs' brief regarding non-party suppliers subpoenas that request much of the same information from non-party suppliers that the Subpoenas request from the OEMs, states:

> Each subpoena is focused on obtaining information regarding any pass through of anticompetitive overcharges. The pass through question is central to the claims of all indirect purchaser plaintiffs; as such, it is highly likely that the different indirect purchaser groups (the End-Payor Plaintiffs, the Auto Dealer Plaintiffs, the Truck Dealers, the City of Richmond, the State of Florida, etc.) will serve similar discovery requests on the same suppliers.[6]

The DPPs, however, remain vague on what, if any, discovery they would permit. DPPs destroy their own credibility when they assert that certain categories of requested information are

---

[5] *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2014 U.S. Dist. LEXIS 136403, at *197 (E.D. Mich. 2014) (Opinion and Order Granting in Part and Denying in Part Defendants' Collective Motion to Dismiss Indirect Purchaser Actions in Occupant Safety Restraint Systems Action).

[6] Direct Purchaser Plaintiffs' Motion to Establish a Coordinated Process For Discovery From Automotive Suppliers at 1, No. 12-md-02311,  ECF No. 968 at 1 (May 13, 2015).

not relevant. Specifically, DPPs characterize as "not relevant to any action" the following types of information: "manufacturing, pricing, and sales information," "collusion by Defendants," "productions to governmental authorities concerning auto parts investigations," and "conduct at issue in MDL." DPP Br. at 12. Objecting *on relevance grounds* to requests probing these topics is preposterous. How could the parties determine pass-on of any alleged overcharges without evidence of the OEMs' "manufacturing, pricing, and sales information"? How could evidence of "collusion by Defendants" be irrelevant in these 30 cases in which every single complaint alleges "collusion by Defendants"?

In fact, the information sought by the OEM Subpoenas matters both to the claims of all other plaintiffs in the MDL, and to the defenses of all defendants in the MDL. Among other things, the information is directly relevant to, and some of it might even be dispositive of, whether overcharges were incurred by the OEMs in connection with their purchases of certain auto parts and whether the OEMs passed those overcharges on to the ADPs, EPPs, or others downstream. It will be important for the parties' respective experts to understand the prices paid by the OEMs for the particular auto part at issue in the case, the OEMs' other costs of producing the vehicles into which the part was incorporated, how any changes in the price of the particular part at issue impacted the OEMs' total costs of production, and how the OEMs set their prices for each particular vehicle. All of this information is essential to determining whether (and, if so, to what extent) any alleged overcharge on the price of the particular part at issue impacted the price at which the OEM sold a particular vehicle to an auto dealer or other downstream purchaser, and whether any suspected increase in the price of that vehicle actually resulted *not* from the pricing of the part at issue but rather from changes in the OEM's other costs of production. *See* Exhibit "1" at ¶ 17-19, Declaration of Edward A. Snyder In Support of Defs. Opp. to DPPs Motion to Limit

Uniform Subpoena (hereinafter "Snyder Decl.") (May 27, 2015). *See also In re Flash Memory Antitrust Litig.,* No. C 07-0086 SBA, 2010 WL 2332081, at *11 (N.D. Cal. June 9, 2010) (expert's economic analysis that indirect purchasers suffered a common impact was flawed because it failed to consider that "different retailers respond to cost changes in different ways, with some choosing not to pass-through cost changes in the form of higher prices for the end-user").

The information sought by the jointly drafted OEM Subpoenas is also important for determining which vehicles contained which (if any) of the Defendants' auto parts at issue in each case, and to whom those vehicles were sold downstream, including the ADPs, the EPPs, and other plaintiffs in the various cases in this MDL. Such information is essential for evaluating whether any plaintiff or putative class member has any claim at all, not to mention the membership of any putative class.

### C.     The Subpoenas Seek Information That is Not Available from Other Sources

DPPs and Ford contend that the information sought in the Subpoenas is available from other sources, such as the ADPs and third party data providers. DPP Br. at 9; Ford Br. at 10–11. This claim is false.

> 1.     *The OEMs are the sole source of most of the information these Subpoenas seek.*

The OEMs are the sole source of most of the information requested in the OEM Subpoenas. First, each OEM is the sole source of information on the particulars of its own respective RFQ processes. Only the OEM knows, for example, its target price for a particular auto part and how it was determined, the identity of the suppliers submitting bids for a part and the details of those suppliers' respective bids, the criteria used by the particular OEM to evaluate the competing bids and pick a winning bidder, negotiations of the initial terms of the purchase, and the details behind the various post-award adjustments to specifications, redesigns, prices, and other

terms and conditions of subsequent purchases. *See* Exhibit "2" at ¶ 7, Declaration of Allen T. Levenson In Support of Defs. Opp. to DPPs Motion to Limit Uniform Subpoena (hereinafter "Levenson Decl.") (May 27, 2015). The Subpoenas seek this information in Requests 1, 2, 13, 14, 17, and 36, and this information will be important to the analysis on whether there was an overcharge to the OEM in connection with the purchase of any particular auto part performed by the Serving Parties' respective experts. *See* Snyder Decl. ¶ 17. OEMs have a strong interest in keeping such information from their suppliers, disclosing only limited (and often preliminary or even deliberately inaccurate) information where they perceive it to be in their interest to do so.

Second, each OEM alone knows its various costs of production for each of its vehicles. Even more obviously, *only* each OEM knows how it determined the sale price of each vehicle. *See* Levenson Decl. ¶ 8. The Subpoenas ask for this information in Requests 4, 6, 13, 15, 16, 19, 24, and 28, and this information is essential to the analyses that the Serving Parties' respective experts will conduct in connection with class certification motions. *See* Snyder Decl. ¶ 18. Even Ford admits this information is not available from other sources. Ford Br. at 3. DPPs' claim that such information is "highly secret," further confirms that this information is available only from the OEMs and belies DPPs' unsupported, and obviously contradictory, assertion in the very next sentence that it is also "available from another source." DPP Br. at 12. It is not. Only the OEMs have this data, which is critical to determine if an OEM passed on any alleged overcharge on any particular auto part downstream.

Third, as noted, the OEMs are the only source of complete information about which parts actually ended up in which vehicles. The Subpoenas seek this information in Request 1, and it is essential to the parties' respective expert analyses and for ascertaining the members of the putative classes in the various cases in the MDL. *See* Snyder Decl. ¶ 19. Each defendant may know what

auto parts it sold to an OEM, and each ADP may know what vehicles it purchased, but that is not enough. Where there were multiple suppliers for a particular auto part intended for a particular model of vehicle or for some of the vehicles using a particular engine, or where a particular part was intended for multiple models, only the OEM will know for sure which supplier's parts ended up in which vehicle.

Fourth, information from the OEMs is essential to determining what vehicles were sold to which auto dealers (and truck and equipment dealers) and which end payors. The Subpoenas seek this information in Request 4. This information is necessary to ascertain, among other things, the members of each of the separate putative classes in each product track in the MDL. The ADPs (and Truck and Equipment Dealer Plaintiffs) have limited data related to their own sales, and the EPPs (and City of Richmond and State of Florida) know only what vehicles they individually purchased. Data from the OEMs will be critical to fill in the gaps.

Fifth, data and documents from the OEMs are essential to determine the extent to which the OEMs were aware of, or even facilitated, the alleged collusive communications among suppliers. In certain instances, for example, the OEMs requested suppliers to work together on developing certain products and systems, to exchange information, and otherwise to coordinate to reduce costs. Under such circumstances, evidence of the OEM's knowledge and involvement may be essential to correcting an otherwise erroneous assumption about the legitimacy of the communications. The Subpoena seeks this information in Requests 1, 14, and 35.

2.   *Transactional data from Defendants, Auto Dealer Plaintiffs, and third parties cannot substitute for OEMs' information.*

DPPs claim that some information sought by these Subpoenas is duplicative because some of it is already being produced by the Defendants, and other information will be produced by the

ADPs or is available from third party sources. DPP Br. at 5-10. DPPs greatly overstate the availability and scope of such other data, and fail to acknowledge its considerable shortcomings.

First, Defendants only have data on their own limited sales. While a particular vehicle might contain some auto parts sold by the Defendants, including certain of the 30 products at issue in the MDL, as the Court has observed, each vehicle is made up of tens of thousands of auto parts. Only the OEM has the data needed to determine its costs incurred in acquiring those parts, as well as its other costs of production in connection with a particular vehicle. *See* Snyder Decl. ¶ 21-22.

Second, while the DPPs contend that the ADPs are producing data, those data (if and when produced) are very limited—in content and in temporal scope. DPPs focus on the fact that ADPs have said they will be producing over 200 fields of transactional data from the ADPs' dealer management systems ("DMS"), DPP Br. at 8, but no more than five of those fields relate to a dealer's *purchases* of new vehicles from OEMs. Indeed, the fact that the ADPs have concurred in the content and issuance of these subpoenas belies the claim that ADPs' data is an adequate substitute for the OEMs' information. ADPs also do not appear to have data for the entire class periods for the various cases, which generally go back to January 1, 2000 and in some cases earlier, and extend to the present. So far, only two ADPs have produced any data at all. For one of them, the produced data goes back to only June 20, 2008, and for the other the produced data goes back to only January 14, 2012 (three months after the wire harness cases were filed in October 2011). [7] Moreover, ADPs' data will reveal nothing about OEMs' sales to distributors, fleet purchasers, or the thousands of dealers that are not a named plaintiff, not to mention sales by those other dealerships.

---

[7] *See* Defendants' Reply in Support of Motion to Establish Schedule For Dealer Plaintiffs' Production of ESI at 4, 2:12-cv-00102, ECF No. 304 (April 20, 2015).

Third, while DPPs suggest that some similar dealer data is available from third party data suppliers, *id.* at 9 & 12, that too is wrong. The parties have already sent subpoenas to third party data providers, with very little success. The third party DMS software providers CDK Global and Reynolds and Reynolds strongly objected to producing DMS data, claiming that they have limited access to the individual computer systems that store the auto dealers' data.[8] Defendants have received cooperation from the DMS provider Dealertrack, but Dealertrack serves fewer auto dealers and has only limited data covering only a limited time period.

    **D.**    **The Sensitive Nature of Some of the Information Requested Does Not Justify Blocking the Subpoenas**

Ford's assertion that the Subpoena seeks confidential commercial information is not grounds to block the Subpoena given its plain relevance and the protective order in place that will strictly limit its use and prohibit further disclosure. First, information regarding an OEM's internal procurement processes, costs of production, and pricing decisions is discoverable and needed to calculate any alleged overcharge to each of the Plaintiffs at each level in the chain of distribution. *See, e.g., Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 93 (S.D. Ohio 2013) (granting defendants' motion to compel production of non-party's internal communications, deliberations, policies, and analyses about non-party's contracting strategies when information was important to establish causation of antitrust injury). Ford cites cases where the non-party commercial information was protected not because it was commercial in nature, but because the information was not needed and only tangential to the underlying claims. *See Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*, No. 1:05-MC-107, 2005 WL 2045818, at *5 (W.D. Mich. Aug. 24, 2005); *Universal Delaware, Inc. v. Comidata Network, Inc.*,

---

[8] *See* Reynolds & Reynolds Company's Motion to Quash Subpoena and For Protection at 6, 2:12-cv-00102, ECF No. 259 (January 26, 2015); Non-Party CDK Global's Motion to Quash Subpoena at 6-7, 2:12-cv-00102, ECF No. 271 (March 4, 2015).

No. 3:10-MC-00104, 2011 WL 1085180, at *5 (M.D. Tenn. Mar. 21, 2011). Here, in sharp

contrast, the Subpoenas seek highly relevant information about how OEMs purchased the actual

auto parts at issue in each of the alleged conspiracies (including how an OEM came to agree on a

particular price and other material terms and conditions of sale), what the OEM's cost of

production were for particular vehicles, how the price of any particular auto part may have

impacted the OEM's costs of production for any particular vehicle, and how the OEM set the

prices for each of its vehicles, not to mention which vehicles actually contain a particular auto part

sold by one of the Defendants. This information is not tangential, but essential to all of the Serving

Parties. The Plaintiffs among the Serving Parties *require* it to prove their claims, and it is highly

relevant to Defendants' defenses of all the Plaintiffs' claims.

Courts have repeatedly held that an appropriate protective order—like the one already

entered in this MDL—is sufficient to safeguard sensitive commercial information, and Ford's

assumption that the parties will violate the protective order is entirely baseless and offensive to the

parties. *See, e.g, McNaughton–McKay*, 2010 WL 2560047, at *1; *Med. Ctr. at Elizabeth Place,*

*LLC v. Premier Health Partners*, 294 F.R.D. 87 at 97; *E3 Biofuels, LLC v. Biothane Corp.*, No.

1:12–mc–76, 2013 WL 3778804, at *1 (S.D.Ohio July 18, 2013). Indeed, Ford itself has

previously insisted on *receiving* highly sensitive transaction data from other parties in the Wire

Harness cases, including data showing sales prices and costs of production for sales to the other

OEMs, along with other sensitive data and documents concerning the other OEMs. Those other

OEMs obviously would have preferred that their competitor (Ford) not have received such data

and documents, but are relying on Defendants to designate them "HIGHLY

CONFIDENTIAL-OUTSIDE ATTORNEYS ONLY," and on Ford to honor the terms of the

protective order governing the case. Ford can likewise designate its commercial information

"HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS ONLY" under the existing protective

order, prohibiting the information from being disclosed to suppliers, auto dealers, or other OEMs.

> **E.** **The Burden of Production Under These Subpoenas Will Be Unique to Each OEM and Should Be Addressed in the First Instance in Discussions With Each OEM Individually**

DPPs claim that the Subpoenas will impose an undue burden on OEMs, but as DPPs admit,

"only the OEMs themselves can address the specific burdens, expense, and their ability to provide

the information sought. . . ."  DPP Br. at 10. Further, many of DPPs' objections ironically target

aspects of the Subpoenas that were designed to minimize the burdens on OEMs. For example,

DPPs now complain that the Subpoenas seek information relating to every auto part at issue in the

MDL, *id.* at 4, but ignore that the Subpoenas were crafted to be comprehensive, consistent with the

Court's clear guidance that coordinated and comprehensive requests are preferable to piecemeal

requests. In fact, in a parallel context, DPPs themselves recently claimed that precisely such

coordination is preferable. On the same day they filed their present motion criticizing the OEM

subpoenas for being comprehensive, they filed a motion criticizing the non-party auto supplier

subpoenas for not being comprehensive.[9]

Meanwhile, while Ford can speak to the unique burdens it would face, these Subpoenas

should not be pre-emptively tailored to the needs of one OEM over all others. Instead, as is the

norm with every subpoena, the Serving Parties should discuss the burdens of production

individually with each of the OEMs *after* they are served. For example, Ford's primary complaint

is that it has a unique organizational structure for its purchasing group, which it says will

complicate identification of relevant documents, and that its relevant data is spread across multiple

databases, which it says will require it to combine and cross-reference the data. Ford Br. at 6.

---

[9] *See* Direct Purchaser Plaintiffs' Motion to Establish A Coordinated Process for Discovery from Automotive Suppliers at 1, No. 2:12-md-02311, ECF No. 968 (May 13, 2015).

Pre-service modification of the Subpoenas to account for Ford's peculiar organizational structure would likely not address whatever issues the subpoena may present for other OEMs, and might even create new burdens for them. Defendants know they will have to negotiate with each OEM, including Ford, to address its particular concerns. And they have powerful incentives not to unduly antagonize the OEMs, who are their major customers. Ex. 3 at 45:5–8. Blocking the Subpoenas and delaying discovery and class certification to address a single Subpoena recipients' concerns would only delay these necessary discussions between the real parties in interest. Allowing immediate service of the Subpoenas will permit negotiations over each OEMs' specific concerns to begin now and occur simultaneously, saving time and producing a better, more efficient result, and one consistent with the Federal Rules of Civil Procedure.

## CONCLUSION

DPPs lack standing. Moreover, even if they ever had standing, they waived any objections by failing to comment on the content of the template Subpoena during the drafting process, and by failing to assert at any time over the past year their position that any subpoena should be barred or delayed. Their objections also fail on the merits. They have no basis for barring service of the Subpoenas in their entirety, as they admit the information sought is relevant to at least some of the cases in the MDL and that at least some of it cannot be obtained elsewhere. The DPPs' alternative suggestion of delaying further discussion of the Subpoenas until after the close of discovery is equally untenable. It would set back the class certification schedule by a year or more, an outcome that the Court has made clear is unacceptable. As DPPs' acknowledge, they are not OEMs, and "only the OEMs themselves can address the specific burdens, expense, and their ability to provide the information sought . . . ." Accordingly, the Court should allow the parties to immediately issue the Subpoenas and to begin negotiations with each of the individual OEMs. Doing so will minimize delay and allow the OEMs themselves to object to any requests they believe to be

overbroad or unduly burdensome, and to negotiate the scope of their own respective productions depending upon their own circumstances.

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

May 27, 2015           By:    /s/ Steven F. Cherry
                              Steven F. Cherry
                              David P. Donovan
                              Patrick J. Carome
                              Kurt G. Kastorf
                              WILMER CUTLER PICKERING HALE AND DORR LLP
                              1875 Pennsylvania Avenue, NW
                              Washington, D.C. 20006
                              Tel.: (202) 663-6000
                              Fax: (202) 663-6363
                              steven.cherry@wilmerhale.com
                              david.donovan@wilmerhale.com
                              patrick.carome@wilmerhale.com
                              kurt.kastorf@wilmerhale.com

                              *Attorneys for Defendants DENSO Corporation and DENSO International America, Inc.*

                              Steven M. Zarowny (P33362)
                              General Counsel
                              DENSO International America, Inc.
                              24777 Denso Drive
                              Southfield, MI 48033
                              Tel.: (248) 372-8252
                              Fax: (248) 213-2551
                              steve_zarowny@denso-diam.com

                              *Attorney for Defendant DENSO International America, Inc.*

23

May 27, 2015                                        COVINGTON & BURLING LLP

                                                   */s/ Anita F. Stork* (w/consent)
                                        By:        Anita F. Stork
                                                   Gretchen Hoff Varner
                                                   Cortlin H. Lannin
                                                   COVINGTON & BURLING LLP
                                                   One Front Street, 35th Floor
                                                   San Francisco, CA 94111
                                                   Telephone: (415) 591-6000
                                                   Fax: (415) 955-6550
                                                   astork@cov.com

                                                   *Attorneys for Defendants Alps Electric Co., Ltd.;*
                                                   *Alps Electric (North America), Inc.; and Alps*
                                                   *Automotive, Inc.*


May 27, 2015                                        BROOKS WILKINS SHARKEY & TURCO
                                                   PLLC

                                        By:        */s/ Maureen T. Taylor* (w/consent)
                                                   Herbert C. Donovan (P51939)
                                                   Maureen T. Taylor (P63547)
                                                   BROOKS WILKINS SHARKEY & TURCO
                                                   PLLC
                                                   401 Old South Woodward, Suite 400
                                                   Birmingham, MI  48009
                                                   Telephone: (248) 971-1721
                                                   Fax: (248) 971-1801
                                                   taylor@bwst-law.com
                                                   donovan@bwst-law.com

                                                   *Attorneys for Defendants Alps Electric Co., Ltd.;*
                                                   *Alps Electric (North America), Inc.; and Alps*
                                                   *Automotive, Inc.*

                                                   WEIL, GOTSHAL & MANGES LLP

May 27, 2015                            By:        */s/ Steven A. Reiss* (with consent)
                                                   Steven A. Reiss
                                                   Adam C. Hemlock
                                                   Kaj Rozga
                                                   WEIL, GOTSHAL & MANGES LLP
                                                   767 Fifth Avenue

New York, New York 10153-0119
Tel.: (212) 310-8000
Fax: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
kajetan.rozga@weil.com

Frederick R. Juckniess
SCHIFF HARDIN LLP
350 South Main Street, Suite 210
Ann Arbor, MI 48104

*Counsel for Bridgestone Corporation and
Bridgestone APM Company*

WEIL, GOTSHAL & MANGES LLP

May 27, 2015                  By:   /s/ *Steven A. Reiss* (with consent)
                                    Steven A. Reiss
                                    Adam C. Hemlock
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153-0119
                                    Tel.: (212) 310-8000
                                    Fax: (212) 310-8007
                                    steven.reiss@weil.com
                                    adam.hemlock@weil.com

                                    Fred K. Herrmann
                                    Matthew L. Powell
                                    KERR, RUSSELL AND WEBER, PLC
                                    500 Woodward Avenue, Suite 2500
                                    Detroit, MI 48226
                                    Tel.: (313) 961-0200
                                    Fax: (313) 961-0388
                                    fhermann@kerr-russell.com
                                    mpowell@kerr-russell.com

                                    *Counsel for Calsonic Kansei Corporation and
                                    Calsonic Kansei North America, Inc*.

CALFEE, HALTER & GRISWOLD LLP

May 27, 2015                  By:   /s/ *Alexander B. Reich* (with consent)
                                    John J. Eklund

25

Maura L. Hughes
Ronald M. McMillan
Alexander B. Reich
Lindesy E. Sacher
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
Tel.: (216) 622-8200
Fax: (216) 241-0816
jeklund@calfee.com
mhughes@calfee.com
rmcmillan@calfee.com
areich@calfee.com
lsacher@calfee.com

Maureen T. Taylor
Herbert C. Donovan
BROOKS, WILKINS, SHARKEY & TURCO
PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Tel: (248) 971-1800
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Continental Automotive
Systems, Inc. and Continental Automotive
Electronics, LLC*

SIMPSON THACHER & BARTLETT LLP

May 27, 2015     By:   */s/ Matthew J. Reilly* (w/consent)
Matthew J. Reilly
Abram J. Ellis
SIMPSON THACHER & BARTLETT LLP
1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

George S. Wang

26

Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Diamond Electric Mfg.*
*Co., Ltd. and Diamond Electric Mfg. Corp.*

ARNOLD & PORTER LLP

May 27, 2015               By:   /s/James L. Cooper (w/consent)
                                 James L. Cooper
                                 Michael A. Rubin
                                 Laura Cofer Taylor
                                 Katherine Clemons
                                 ARNOLD & PORTER LLP
                                 555 Twelfth Street NW
                                 Washington, DC 20004
                                 Tel.: (202) 942-5000
                                 Fax: (202) 942-5999
                                 james.cooper@aporter.com
                                 michael.rubin@aporter.com
                                 laura.taylor@aporter.com
                                 katherine.clemons@aporter.com

                                 Joanne Geha Swanson (P33594)
                                 Fred Herrmann (P49519)
                                 Matthew L. Powell (P69186)
                                 KERR, RUSSELL AND WEBER, PLC
                                 500 Woodward Avenue, Suite 2500
                                 Detroit, MI 48226
                                 Tel.: (313) 961-0200
                                 Fax: (313) 961-0388
                                 jswanson@kerr-russell.com
                                 fherrmann@kerr-russell.com
                                 mpowell@kerr-russell.com

                                 *Attorneys for Defendants Fujikura Ltd. and*
                                 *Fujikura Automotive America LLC*

                                 LANE POWELL PC

                                 /s/Larry S. Gangnes (w/consent)
May 27, 2015               By:   Larry S. Gangnes
                                 LANE POWELL PC
                                 1420 Fifth Ave., Suite 4200

P.O. Box 91302
Seattle, WA 98111-9402
Tel.: (206) 223-7000
Fax: (206) 223-7107
gangnesl@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
LANE POWELL PC
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Tel.: (503) 778-2100
Fax: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com
hawkesp@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Tel.: (248) 528-1111
Fax: (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric Co.,
Ltd. and American Furukawa, Inc.*

PORTER WRIGHT MORRIS & ARTHUR LLP

May 27, 2015                 By:   */s/ Donald M. Barnes* (w/consent)
Donald M. Barnes
Jay L. Levine
John C. Monica
Molly S. Crabtree
PORTER WRIGHT MORRIS & ARTHUR LLP
1919 Pennsylvania Ave., NW, Ste. 500
Washington, DC 20006
Tel.: (202) 778-3054
Fax: (202) 778-3063
dbarnes@porterwright.com
jlevine@porterwright.com
jmonica@porterwright.com
mcrabtree@porterwright.com

*Attorneys for Defendants G.S. Electech, Inc.,*

*G.S.W. Manufacturing, Inc., and G.S. Wiring Systems, Inc.*

SHEARMAN & STERLING LLP

May 27, 2015             By:   */s/ Heather L. Kafele* (w/ consent)
                              Heather L. Kafele
                              Keith R. Palfin
                              Alison R. Welcher
                              SHEARMAN & STERLING LLP
                              801 Pennsylvania Ave., NW, Suite 900
                              Washington, DC 20004
                              Tel.: (202) 508-8097
                              Fax: (202) 508-8100
                              heather.kafele@shearman.com
                              keith.palfin@shearman.com
                              Alison.welcher@shearman.com

                              Brian M. Akkashian
                              PAESANO AKKASHIAN, PC
                              132 N. Old Woodward Avenue
                              Birmingham, MI 48009
                              Tel: (248) 792-6886
                              bakkashian@paesanoakkashian.com

                              *Counsel for JTEKT Corporation and JTEKT Automotive North America, Inc.*

                              COVINGTON & BURLING LLP

May 27, 2015             By:   /s/ *Anita F. Stork* (with consent)
                              Anita F. Stork
                              COVINGTON & BURLING LLP
                              One Front Street, 35th Floor
                              San Francisco, CA 94111
                              Telephone: (415) 591-6000
                              Fax: (415) 955-6550
                              astork@cov.com

                              Bruce A. Baird
                              Sarah L. Wilson
                              Michael A. Fanelli
                              COVINGTON & BURLING LLP
                              One City Center
                              850 Tenth Street NW
                              Washington, DC  20001
                              Telephone: (202) 662-6000
                              Fax: (202) 662-6291
                              bbaird@cov.com

swilson@cov.com
mfanelli@cov.com

*Attorneys for Defendant Keihin North America, Inc.*

BROOKS WILKINS SHARKEY & TURCO PLLC

May 27, 2015                 By:   /s/ *Maureen T. Taylor* (with consent)
                                   Maureen T. Taylor (P63547)
                                   BROOKS WILKINS SHARKEY & TURCO PLLC
                                   401 Old South Woodward, Suite 400
                                   Birmingham, MI  48009
                                   Telephone: (248) 971-1721
                                   Fax: (248) 971-1801
                                   taylor@bwst-law.com

                                   *Attorneys for Defendant Keihin North America, Inc.*

                                   ARNOLD & PORTER

May 27, 2015                 By:   /s/ *Franklin R. Liss* (w/consent)
                                   Franklin R. Liss
                                   Barbara H. Wootton
                                   Danielle M. Garten
                                   Tiana Russell
                                   ARNOLD & PORTER LLP
                                   555 Twelfth Street NW
                                   Washington, DC 20004
                                   Tel:  (202) 942-5969
                                   Fax: (202) 942-5999
                                   frank.liss@aporter.com
                                   barbara.wootton@aporter.com
                                   danielle.garten@aporter.com
                                   tiana.russell@aporter.com

                                   Howard B. Iwrey (P39635)
                                   Brian M. Moore (P58584)
                                   DYKEMA GOSSETT PLLC
                                   39577 Woodward Ave., Suite 300
                                   Bloomfield Hills, MI 48304
                                   Tel:  (248) 203-0700
                                   Fax: (248) 203-0763

hiwrey@dykema.com
bmoore @dykema.com

*Counsel for Defendants Koito Manufacturing Co.,*
*Ltd. and North American Lighting, Inc.*
FARMER BROWNSTEIN JAEGER LLP

May 27, 2015                    By:   */s/ David Brownstein (*with consent)
                                      David Brownstein
                                      FARMER BROWNSTEIN JAEGER LLP
                                      235 Montgomery Street, Suite 835
                                      San Francisco, CA 94104
                                      Tel: 415 962-2873
                                      Fax: 415 520-5678
                                      dbrownstein@fbj-law.com
                                      wfarmer@fbj-law.com

                                      *Attorneys for Defendants Mitsuba Corporation*
                                      *and American Mitsuba Corporation*

                                      JENNER & BLOCK LLP

May 27, 2015                    By:   */s/ Terrence J. Truax* (with consent)
                                      Terrence J. Truax
                                      Charles B. Sklarsky
                                      Michael T. Brody
                                      Gabriel A. Fuentes
                                      Daniel T. Fenske
                                      JENNER & BLOCK LLP
                                      353 N. Clark Street
                                      Chicago, IL 60654-3456
                                      ttruax@jenner.com
                                      csklarsky@jenner.com
                                      mbrody@jenner.com
                                      gfuentes@jenner.com
                                      dfenske@jenner.com

                                      Gary K. August
                                      Jamie J. Janisch
                                      ZAUSMER, AUGUST & CALDWELL, P.C.
                                      31700 Middlebelt Road, Suite 150
                                      Farmington Hills, MI 48334-2374
                                      gaugust@zacfirm.com
                                      jjanisch@zacfirm.com

                                      *Counsel for Mitsubishi Electric Corporation,*

31

*Mitsubishi Electric US Holdings, Inc., and*
*Mitsubishi Electric Automotive America, Inc.*

LANE POWELL PC

May 27, 2015                By:   */s/ Craig D. Bachman* (with consent)
                                  Craig D. Bachman
                                  Kenneth R. Davis II
                                  Darin M. Sands
                                  Masayuki Yamaguchi
                                  LANE POWELL PC
                                  601 SW Second Avenue, Suite 2100
                                  Portland, OR  97204-3158
                                  Tel:  503.778.2100
                                  bachmanc@lanepowell.com
                                  davisk@lanepowell.com
                                  sandsd@lanepowell.com
                                  yamaguchim@lanepowell.com

                                  Larry S. Gangnes
                                  LANE POWELL PC
                                  1420 Fifth Avenue, Suite 4200
                                  PO Box 91302
                                  Seattle, WA  98111-9402
                                  Tel:  206.223.7000
                                  gangnesl@lanepowell.com

                                  Richard D. Bisio (P30246)
                                  Ronald S. Nixon (P57117)
                                  KEMP KLEIN LAW FIRM
                                  201 W. Big Beaver, Suite 600
                                  Troy, MI 48084
                                  Tel:  248.528.1111
                                  richard.bisio@kkue.com
                                  ron.nixon@kkue.com

                                  *Attorneys for Defendants Nachi-Fujikoshi Corp.*
                                  *and Nachi America Inc.*

                                  WINSTON & STRAWN LLP

May 27, 2015                By:   */s/ Jeffrey L. Kessler* (with consent)
                                  Jeffrey L. Kessler
                                  A. Paul Victor
                                  Molly M. Donovan
                                  Jeffrey J. Amato

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
Fax.: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
jamato@winston.com

Fred K. Herrmann
KERR, RUSSELL, & WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel.: (313) 961-0200
fkh@krwlaw.com

*Attorneys for Defendants NTN Corporation and NTN USA Corporation*

SIMPSON THACHER & BARTLETT LLP

|  |  |  |
|---|---|---|
| May 27, 2015 | By: | */s/ Matthew J. Reilly* (w/consent) |

Matthew J. Reilly
Abram J. Ellis
David T. Shogren
SIMPSON THACHER & BARTLETT LLP
1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com
dshogren@stblaw.com

George S. Wang
Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Stanley Electric Co.,*

33

*Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc*

REED SMITH LLP

May 27, 2015          By:     /s/ Michelle A Mantine (w/consent)
                              Debra H. Dermody
                              Michelle A. Mantine
                              REED SMITH LLP
                              Reed Smith Centre
                              225 Fifth Ave.
                              Pittsburgh, PA. 15222-2716
                              Tel: 412-288-3302
                              ddermody@reedsmith.com
                              mmantine@reedsmith.com

                              *Attorneys for Defendant SKF USA Inc. (in actions 2:13-cv-00502, -00503, -00505, -12095, and -13356-MOB-MKM)*

                              CROWELL & MORING LLP

May 27, 2015          By:     /s/ David D. Cross (w/ consent)
                              David D. Cross
                              CROWELL & MORING LLP
                              1001 Pennsylvania Avenue, NW
                              Washington, DC 20004
                              Tel.: (202) 624-2500
                              Fax: (202) 628-5116
                              dcross@crowell.com

                              *Attorneys for Defendants Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; and Sumitomo Wiring Systems (U.S.A.) Inc.*

May 27, 2015                  BAKER BOTTS L.L.P.

                      By:     /s/ Heather Souder Choi (with consent)
                              Randall J. Turk
                              John Taladay
                              Mark Miller
                              Heather Souder Choi
                              BAKER BOTTS L.L.P.
                              1299 Pennsylvania Ave., NW
                              Washington, D.C. 20004-2400

Phone: 202.639.7700
Fax: 202.639.7890

*Counsel for Defendants Toyoda Gosei Co., Ltd.,
Toyoda Gosei North America Corp., and TG
Missouri Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2015, I caused the foregoing Certain Defendants'

Opposition to Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs to be

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

> */s/ Steven F. Cherry*
> Steven F. Cherry
> WILMER CUTLER PICKERING HALE
> AND DORR LLP
> 1875 Pennsylvania Avenue, NW
> Washington, DC 20006
> Tel.: (202) 663-6000
> Fax: (202) 663-6363
> steven.cherry@wilmerhale.com
>
> *Counsel for DENSO Corporation and DENSO*
> *International America, Inc.*