UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Honorable Marianne O. Battani |
| In Re: All Cases | |
| THIS DOCUMENTS RELATES TO: | |
| All Actions | |

**END-PAYOR PLAINTIFFS' RESPONSE TO DIRECT PURCHASER PLAINTIFFS' MOTION TO ESTABLISH A COORDINATED PROCESS FOR DISCOVERY FROM AUTOMOTIVE SUPPLIERS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT........................................................................................................................2

    A. DPPs have no standing to interfere with the Supplier Subpoenas ..........................2

        1. The suppliers are not yet part of any direct purchaser class .......................3

        2. The suppliers are not represented by DPP Counsel ....................................3

        3. Only each supplier can object to its own subpoena ....................................3

        4. Only each supplier can speak to the potential burden it may face...............4

        5. DPPs have only filed suit in 10 of the 29 part actions, and suppliers may not even be members of those 10 potential classes..............................4

        6. The Supplier Subpoenas are focused on discovery relevant to the indirect purchaser actions .........................................................................5

    B. There is no need for coordination on the Supplier Subpoenas ...............................5

        1. The concerns that necessitate a coordinated approach on subpoenas to OEMs do not exist here..............................................................................5

III. CONCLUSION..................................................................................................................7

# STATEMENT OF THE ISSUES PRESENTED

## ISSUE NUMBER ONE

Should the Court allow direct purchaser plaintiffs to interfere with third-party discovery to automotive suppliers where direct purchaser plaintiffs have no standing to object, direct purchaser counsel does not represent any of the automotive suppliers, and direct purchaser plaintiffs are not even parties to two-thirds of the cases in which they call for coordination?

**Answer:  No**

## ISSUE NUMBER TWO

Should discovery that is already proceeding efficiently in the wire harness case be nullified, obstructed and delayed in favor of starting from scratch with a "coordinated process" for subpoenas to third-party automotive suppliers, where each supplier only purchased a few parts, Defendants have already coordinated, and end-payor plaintiffs do not have plans to serve the same discovery on the same third parties?

**Answer:  No**

# **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

**Cases**

*In re Aftermarket Filters*, 2010 U.S. Dist. LEXIS 105108 (N.D. Ill. Oct. 1, 2010)

*Breaking Glass Pictures v. Doe*, 2014 U.S. Dist. LEXIS 14159 (S.D. Ohio Feb. 5, 2014)

*Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303 (N.D. Ohio 2002)

*Levitin v. Nationwide Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 177738

*McNaughton-McKay, Elec. Co. v. Linamar Corp.*, 2010 U.S. Dist. LEXIS 59275 (E.D. Mich. June 14, 2010)

*Morris v. GMC*, 2010 U.S. Dist. LEXIS 22618 (E.D. Mich. Mar. 11, 2010)

*Nucorp, Inc. v. Does 1-24*, 2012 U.S. Dist. LEXIS 187547 (E.D. Mich. Oct. 18, 2012)

**Other Authorities**

Fed. R. Civ. P. 45

End-Payor Plaintiffs ("EPPs") respectfully submit this response to Direct Purchaser Plaintiffs' Motion to Establish a Coordinated Process for Discovery from Automotive Suppliers. (MDL Dkt. # 968) (filed 5/13/2015) (hereinafter cited as "DPPs' Sup. Br. at __.").[1]

## I.   INTRODUCTION

There is no need for a coordinated process for subpoenas to third-party automotive suppliers ("suppliers") ("Supplier Subpoenas") across all actions, parties, and parts. To take this approach, would accomplish nothing but waste and delay, and prevent the parties from meeting the schedule set by Judge Battani.

As an initial matter, direct purchaser plaintiffs ("DPPs") have no standing whatsoever to interfere with third-party Supplier Subpoenas. Prior to certification, the suppliers are not part of any DPP class, and counsel for the DPPs ("DPP Counsel") does not represent any of the suppliers. DPPs' interference is even less understandable given that DPPs are not even a party in two-thirds of the product cases for which they are claiming a coordinated process should be used, and the subpoenas seek discovery relevant to the indirect purchaser actions, not their own.

Even aside from the fact that DPPs have no standing to interfere, there is no reason for coordination on the Supplier Subpoenas. None of the concerns that necessitate coordination on the subpoenas for original equipment manufacturers ("OEMs") ("OEM Subpoena") are present here. For example, each OEM likely purchased all of the 29 parts that are the subject of the

---

[1] DPPs also filed a motion seeking to interfere with third-party subpoenas to be issued to Original Equipment Manufacturers ("OEMs") in the indirect purchaser actions. *See* Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs (MDL Dkt. # 967) (filed 5/13/2015) ("DPPs' OEM Motion"). Ford Motor Company ("Ford") filed a response to DPPs' OEM Motion. *See* Ford Motor Company's Response to the Proposed OEM Subpoena (MDL Dkt. # 977) (filed 5/20/2015) ("Ford's Response"). Some of the indirect purchaser plaintiff parties (including End-Payor Plaintiffs and The State of Florida) filed a response in opposition to DPPs' OEM Motion and Ford's Response. *See* Indirect Purchaser Plaintiffs' Response in Opposition to DPPs' Motion and Ford Motor Company's Response to the Proposed OEM Subpoena (MDL Dkt. # 979) (filed 5/27/15).

- 1 -

MDL Action.[2]  If the OEM Subpoena is not coordinated, each OEM could potentially receive 29 separate subpoenas, each involving a different mix of indirect purchaser plaintiff parties and Defendants that manufacture each part.  By contrast, each supplier likely only purchased a few parts involved in the MDL Action, and most appear to have only purchased wire harness parts.  Defendants have already coordinated on the Supplier Subpoenas in the wire harness actions, and the EPPs do not plan to serve the same suppliers with duplicative discovery in those actions.

DPPs speculate that the suppliers that received subpoenas (or will receive subpoenas) in the wire harness actions may someday receive subpoenas from various indirect purchaser parties or Defendants regarding their purchases in the other part actions.  It is unclear whether any of the suppliers served in the wire harness actions purchased any other kinds of parts.  However, in the event that additional discovery of these same suppliers should someday become necessary in any other part action, the parties could discuss coordination at that time, but there is certainly no reason to nullify or obstruct discovery that is already proceeding smoothly in the wire harness actions based on that future possibility.

DPPs' Supplier Motion should be denied and third-party discovery of suppliers should be allowed to proceed on its normal course.

## II.    ARGUMENT

### A.    DPPs have no standing to interfere with the Supplier Subpoenas

DPPs claim they have standing to speak on behalf of the suppliers and to call for a "coordinated process" across all parties, actions, and parts on grounds that the suppliers are "absent members" of the direct purchaser classes.  DPPs' Sup. Br. at 4.  This argument fails on every level.

---

[2] "MDL Action" refers to and includes all cases coordinated in *In re Automotive Parts Antitrust Litig.*, Master Case No. 12-md-02311.

### 1. The suppliers are not yet part of any direct purchaser class

Prior to class certification, the suppliers are not members of any direct purchaser class. At best, the suppliers are *putative* members of some of the direct purchaser classes, which the Court may or may not certify, and to which the suppliers may or may not opt out. *See In re Aftermarket Filters*, 2010 U.S. Dist. LEXIS 105108, at *13 (N.D. Ill. Oct. 1, 2010) ("subpoena recipients are not actually 'class members' [of the direct purchaser class] because no class has yet been certified… [s]ubpoena recipients are more accurately characterized as *putative* class members.") (emphasis in original).

### 2. The suppliers are not represented by DPP Counsel

Prior to certification, DPP Counsel does not represent the suppliers. *See id.* (citing ABA Formal Ethics Op. 07-445 at 3) ("Before certification, the lawyers for the proposed class do not have an attorney-client relationship with the putative class members."); *see also Morris v. GMC*, 2010 U.S. Dist. LEXIS 22618, at *25 (E.D. Mich. Mar. 11, 2010) ("A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired. If the client has neither a consensual relationship with the lawyer nor a legal substitute for consent, there is no representation. Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period.") (quoting ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-445, at 3 (2007)).

### 3. Only each supplier can object to its own subpoena

DPPs cannot speak for the actual subpoena recipients – the suppliers. As Sixth Circuit courts make abundantly clear, absent a personal, legally protected interest, when a subpoena is directed to a nonparty, only the party to whom the subpoena is directed has standing to object it. *See*, *e.g.*, *Nucorp, Inc. v. Does 1-24*, 2012 U.S. Dist. LEXIS 187547, at *16-17 (E.D. Mich. Oct.

18, 2012) (court refused to quash subpoena because, under the plain language of Rule 45, "[t]he law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty") (internal citations omitted); *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) ("The party to whom the subpoena is directed is the only party with standing to oppose it.").

### 4. Only each supplier can speak to the potential burden it may face

DPPs claim that they are acting to "protect" the suppliers from "heavy burden and expense." DPPs' Sup. Br. at 2. Yet, DPPs do not have standing to speak to the burden a supplier may face, nor could they. *See Breaking Glass Pictures v. Doe*, 2014 U.S. Dist. LEXIS 14159, at *15 (S.D. Ohio Feb. 5, 2014) ("Defendant is not burdened by the subpoena because it is not he who is required to respond to the subpoena."); *see also McNaughton-McKay, Elec. Co. v. Linamar Corp.*, 2010 U.S. Dist. LEXIS 59275, at *9-10 (E.D. Mich. June 14, 2010) ("Defendant [which was not the recipient of the subpoena] does not have standing to argue that Chrysler's compliance with the subpoena will cause undue burden where Chrysler has not objected to the subpoena on this ground."); *Levitin v. Nationwide Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 177738, at *14-15 (S.D. Ohio Dec. 14, 2012) ("Here, the subpoenas are directed to Plaintiff's prior employers. Thus, only Plaintiff's prior employers have standing to challenge the subpoenas on the ground that production of the subpoenaed documents would pose an undue burden expense.").

### 5. DPPs have only filed suit in 10 of the 29 part actions, and suppliers may not even be members of those 10 potential classes

While DPPs argue for a coordinated process across all product tracks that make up the MDL Action (DPPs' Sup. Br. at 2), DPPs are not even parties in two-thirds of the cases in which they argue a coordinated process should be used. Rather, to date, DPPs have only filed suit in 10

of the 29 product actions. And, it is not even clear whether any supplier purchased any parts other than wire harness parts. In other words, DPPs are arguing for coordination (and input) in actions where they have not even filed suit and, even in the actions where DPPs have filed suit, it is unclear whether any suppliers would even be potential members of those direct purchaser classes.

### 6. The Supplier Subpoenas are focused on discovery relevant to the indirect purchaser actions

DPPs' arguments are even further diminished in that the discovery they are interfering with is related to the pass through question in the indirect purchaser actions. DPPs admit the same. *See* DPPs' Sup. Br. at 1 ("Each subpoena is focused on obtaining information regarding any pass through of anti-competitive overcharges.").

In sum, DPPs have no standing to speak for any of the suppliers or to interfere with the process for the Supplier Subpoenas. Even if DPPs did have standing, however, it would not matter. There is no need for a coordinated process for the Supplier Subpoenas, and to entertain DPPs' arguments would only cause waste and delay.

## B. There is no need for coordination on the Supplier Subpoenas

### 1. The concerns that necessitate a coordinated approach on subpoenas to OEMs do not exist here

DPPs claim that the Supplier Subpoenas should use the same coordinated process as is being used for the subpoenas to OEMs to "protect" the suppliers from having to defend against and respond to multiple subpoenas from multiple indirect parties and multiple Defendants, and involving numerous products. DPPs' Sup. Br. at 1. While the OEM Subpoena necessitates coordination, the same is not true here.

The OEMs are in a very different position than the suppliers. Each OEM likely purchased all 29 of the products involved in the MDL Action. If a coordinated approach is not

used for subpoenas to OEMs, each OEM faces receiving 29 separate subpoenas (one for each product track), each on behalf of a different mix of indirect purchaser parties and Defendants. Each OEM would need to then respond to each separate subpoena, meet and confer with the parties particular to each separate subpoena and, ultimately, search and produce piecemeal for each separate subpoena. That is not at all the case with the suppliers. By contrast, each supplier only purchases a few of the parts that are involved in the MDL Action. It appears that most only purchase wire harness parts. As DPPs concede, Defendants in the wire harness actions have already coordinated on the Supplier Subpoenas. DPPs' Sup. Br. at 5. The EPPs have no plans to serve subpoenas on the same suppliers, seeking duplicative discovery in the wire harness actions. Therefore, there is little worry that suppliers will receive multiple subpoenas seeking the same discovery from various parties in the wire harness actions.

DPPs speculate that someday the same suppliers might receive subpoenas from various indirect purchaser parties or Defendants regarding their purchases in the other part actions. *Id.* It is unclear whether any supplier even purchased any other parts besides wire harness parts. In the event that any supplier did purchase other parts, and additional discovery of these same suppliers should ever become necessary in any other part action, the parties could coordinate at that time. However, there is no reason to nullify or obstruct discovery of suppliers in the wire harness actions where it is already proceeding smoothly. The suppliers have already received, or are about to receive, subpoenas that are tailored to their own purchases of wire harness products. It makes no sense to waste the progress that has occurred to date and halt discovery for many months to redraft a new combined subpoena that, in large part, would not even apply to any supplier. EPPs see no practical reason to start supplier discovery from scratch with a new

coordinated process.  Discovery is already proceeding smoothly, and to tamper with it would only waste time and delay the production of relevant information.

### III.    CONCLUSION

For the foregoing reasons, DPPs' Supplier Motion should be denied and discovery of suppliers should be allowed to proceed along its normal course.

DATED: June 1, 2015 Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Adam T. Schnatz (P72049)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ats@millerlawpc.com

*Interim Liaison Counsel for the
End-Payor Plaintiffs Classes*

*/s/ Steven N. Williams (w/ consent)*
Steven N. Williams
Frank C. Damrell
Adam J. Zapala
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
fdamrell@cpmlegal.com
swilliams@cpmlegal.com
azapala@cmplegal.com
etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@RobinsKaplan.com
bpersky@RobinsKaplan.com
wvreiss@RobinsKaplan.com

>Marc M. Seltzer
>Steven G. Sklaver
>**SUSMAN GODFREY L.L.P.**
>1901 Avenue of the Stars, Suite 950
>Los Angeles, CA 90067-6029
>Telephone: (310) 789-3100
>Facsimile: (310) 789-3150
>mseltzer@susmangodfrey.com
>ssklaver@susmangodfrey.com
>
>Terrell W. Oxford
>**SUSMAN GODFREY L.L.P.**
>901 Main Street, Suite 5100
>Dallas, TX 75202
>Telephone: (214) 754-1900
>Facsimile: (214) 754-1933
>toxford@susmangodfrey.com
>
>*Interim Co-Lead Class Counsel for*
>*End-Payor Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Honorable Marianne O. Battani |
| In Re: All Cases | |
| THIS DOCUMENTS RELATES TO: | |
| All Actions | |

## CERTIFICATE OF SERVICE

I hereby certify that, on June 1, 2015, I electronically filed End-Payor Plaintiffs' Response to Direct Purchaser Plaintiffs' Motion to Establish a Coordinated Process for Discovery From Automotive Suppliers with the Clerk of the Court using the ECF system which will send electronic notification of such filing upon all registered counsel of record.

**THE MILLER LAW FIRM, P.C.**

By  */s/ E. Powell Miller*
E. Powell Miller (P39487)
Adam T. Schnatz (P72049)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
*Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Classes*