**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311 <br> Honorable Marianne O. Battani |
| In Re: ALL CASES | |
| THIS RELATES TO: <br> All Actions | |

**DEFENDANTS' RESPONSE TO DIRECT PURCHASER**
**PLAINTIFFS′ MOTION TO ESTABLISH A COORDINATED PROCESS FOR**
<u>**DISCOVERY FROM AUTOMOTIVE SUPPLIERS**</u>

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1.    Whether the Direct Purchaser Plaintiffs have standing to interfere with production of
documents by third parties in response to subpoenas that were not issued to Direct
Purchaser Plaintiffs and that seek information that Direct Purchaser Plaintiffs admit is
critically relevant?

**Answer:** No.

2.    Whether the Special Master should intervene to halt ongoing negotiations with recipients
of third-party subpoenas that already have been served, and to impose a procedural
mechanism not contemplated by the Federal Rules or suggested by the Court,
notwithstanding the absence of any motion by any recipient of the subpoenas?

**Answer:** No.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Page(s)

### CASES

*McNaughton-McKay, Electric Co. v. Linamar Corp.*, 2010 WL 2560047 (E.D.
Mich. June 15, 2010) .......................................................................................................3

### STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 45 ...............................................................................................................4

## TABLE OF CONTENTS

CONCISE STATEMENT OF THE ISSUES PRESENTED ................................................. i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
AUTHORITIES ........................................................................................................... ii

TABLE OF AUTHORITIES .......................................................................................... iv

INDEX OF EXHIBITS ................................................................................................... v

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.      Direct Purchaser Plaintiffs Lack Standing To Challenge Subpoenas Issued
        To Third-Party Suppliers ................................................................................... 3

II.     Even If Direct Purchaser Plaintiffs Had Standing To Object To The
        Subpoenas, The Court Should Deny The Relief They Request ............................. 5

        A.      The Court Should Decline To Establish The Formal "Coordinated"
                Process Proposed By Direct Purchaser Plaintiffs. ..................................... 6

        B.      The Court Should Not Upend Midstream The Already-Issued
                Subpoenas In The Wire Harness Track, To Which Suppliers Are
                Now Responding ..................................................................................... 7

        C.      This Court Need Not Order Disclosure Of Additional Information
                To The Direct Purchaser Plaintiffs ........................................................... 8

CONCLUSION .............................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Donahoo v. Ohio Department of Youth Services*, 211 F.R.D. 303 (N.D. Ohio 2002) ..........................................................................................................................3

*McNaughton-McKay, Electric Co. v. Linamar Corp*., 2010 WL 2560047 (E.D. Mich. June 15, 2010) ........................................................................................3

*White Mule Co. v. ATC Leasing Co.*, LLC, 2008 WL 2680273 (N.D. Ohio June 25, 2008) ....................................................................................................................3

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 1407(b) ......................................................................................................4

Fed. R. Civ. P. 45(c)(2) .................................................................................................4

Fed. R. Civ. P. 45(d)(3) .................................................................................................4

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311 Honorable Marianne O. Battani |
| In Re: ALL CASES | |
| THIS RELATES TO: All Actions | |

**DEFENDANTS' RESPONSE TO DIRECT PURCHASER**
**PLAINTIFFS' MOTION TO ESTABLISH A COORDINATED PROCESS FOR**
**DISCOVERY FROM AUTOMOTIVE SUPPLIERS**

**INDEX OF EXHIBITS**

EXHIBIT 1    Excerpts of Notices of Intent by Certain Defendants - Provided to Direct Purchaser Plaintiffs - to Serve Subpoenas to Produce Documents, Information, Or Objects Or To Permit Inspection of Premises in a Civil Action

EXHIBIT 2    Notice of Intent by DENSO Corporation and DENSO International America, Inc. to Serve Subpoenas to Produce Documents and Information in a Civil Action

# INTRODUCTION

Direct Purchaser Plaintiffs' ("DPPs") motion for a "coordinated process" is a solution in search of a problem, calculated to interfere with and delay third-party discovery.  Almost two months ago, the Wire Harness Defendants served (including on DPPs) notices of intent to serve subpoenas on twenty-two nonparty automotive parts suppliers whom Defendants believe are likely to possess information relevant to the Wire Harness cases because they are (or have been) purchasers of the auto parts at issue in those cases.  Promptly thereafter, the Wire Harness Defendants served the subpoenas on the relevant nonparty suppliers.[1]  Since then, the nonparty suppliers have reached out to the Wire Harness Defendants to raise any issues they have with the scope of the subpoenas, either through informal negotiations or written objections, which the Wire Harness Defendants are already in the process of negotiating and resolving.

DPPs raise no objection to the content of these subpoenas.  Indeed, they admit the information sought is "central" to the claims of the other Plaintiffs in the Wire Harness cases, and they do not contend that the subpoenas are overbroad or unduly burdensome.  Instead, DPPs merely speculate that some other party in one of the other cases in this multi-district litigation ("MDL") might possibly someday decide to issue another subpoena to one of these same nonparty suppliers seeking information concerning purchases of a different product at issue in that other case.  Based on that speculation, DPPs now contend, nearly two months after the subpoenas were served and weeks after the recipients have begun to respond, that the Court should take the extraordinary and unprecedented step of essentially nullifying the outstanding subpoenas and

---

[1]  The Wire Harness Defendants gave DPPs notice and copies of the subpoenas on April 3, 2015 as required by Rule 45, before serving them on the third-party suppliers on April 6.  *See* Exs. 1-2.

imposing a "coordinated process" for the issuance of a "uniform subpoena," subject to DPPs' review and "comment." The Court should deny DPPs' motion.

First, DPPs lack standing to make such a motion. The recipients of the subpoenas are the only entities with standing to object to them, and they are perfectly capable of raising any objections they might have and negotiating over the scope of their productions. And contrary to DPPs' assertions, the Court has never suggested otherwise.

Second, the "coordinated process" sought by DPPs would add neither efficiency nor expedition to discovery in this case. The Wire Harness cases have an already tight schedule for completing the discovery needed prior to class certification motions. The subpoenas already served have been outstanding for nearly two months, and the issuing and receiving parties are in the process of working through any disputes. That process should continue without DPPs' interference, so as not to waste the parties' efforts to date or delay discovery that DPPs admit is "central" to the Wire Harness cases.

While there is little likelihood that any of the nonparty suppliers will be inundated with subpoenas from each of the 29 product tracks in this multi-district litigation, the Wire Harness Defendants will nonetheless coordinate with Defendants in the other cases in the MDL, as well as with the Auto Dealer Plaintiffs, Truck and Equipment Dealer Plaintiffs, End Payor Plaintiffs, and City of Richmond on any *future* subpoenas to nonparty auto parts suppliers to minimize the potential for multiple subpoenas. Given the differences among the nonparty suppliers and the few products for which any one of them might have relevant documents and information, such subpoenas should be appropriately tailored based on the circumstances and not "uniform" as proposed by DPPs. Nor should DPPs be permitted to insert themselves as gatekeeper, obstructing the other parties' third-party discovery. There is no legal basis for that. And the Court and the

parties can see from the protracted proceedings relating to the OEM Subpoena what happens when DPPs are given the opportunity to "comment" on a subpoena.  It only leads to obstruction and delay.  (With the OEM Subpoena, DPPs failed to "comment," or "talk to counsel" as suggested by the Court, and instead insisted on waiting until discussions had concluded and a final subpoena was agreed on before moving either to quash the subpoena entirely or to delay its issuance for over a year.)

If the Wire Harness cases are ever to proceed, much less within the time frame established by the Court for completing discovery and filing class certification motions, DPPs must cease their efforts to bar or delay third-party discovery by the other parties to these cases.  Their motion should be denied.

## ARGUMENT

## I.    DIRECT PURCHASER PLAINTIFFS LACK STANDING TO CHALLENGE SUBPOENAS ISSUED TO THIRD-PARTY SUPPLIERS

DPPs lack standing to challenge these subpoenas as a matter of law.  In the absence of a claim of privilege, proprietary interest, or personal interest, a party has no standing to quash a subpoena directed at a non-party.  *See McNaughton-McKay, Electric Co. v. Linamar Corp*., Civil Action No. 09-CV-11165 2010 WL 2560047, at *3 (E.D. Mich. June 15, 2010) (Majzoub, J.) (*quoting White Mule Co. v. ATC Leasing Co.*, LLC, No.3:07CV00057 2008 WL 2680273 (N.D. Ohio June 25, 2008); *see also Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D.Ohio 2002) ("the party to whom the subpoena is directed is the only party with standing to oppose it").  This general rule applies with particular force here, where DPPs are not even parties in two-thirds of the other product tracks in the MDL, yet insist that discovery in the Wire Harness case be coordinated with discovery in all of those other cases.  DPPs have offered no explanation

3

about how they have any interest *at all* with respect to any potential subpoenas that might someday be issued in cases in which they are not parties.

Moreover, the nonparty suppliers themselves are large, sophisticated businesses whose understanding of their own business, data, and documents obviously is vastly superior to that of DPPs, many of which are bankrupt or defunct.  The nonparty suppliers that have been served with subpoenas in the Wire Harness track not only can present their own views through their own counsel about the subpoenas directly to the Wire Harness Defendants, but they are already doing so.  They have no need of any assistance from DPPs or DPPs' counsel.

Indeed, rather than seeking to assist these nonparty suppliers, DPPs are actually seeking to usurp them, and take away their rights to negotiate for what they determine to be in their own best interests.  For example, DPPs argue, *see* DPPs Mot. To Establish Coordinated Disc. From Auto. Suppliers 3–4, May 13, 2015, ECF No. 968 ("DPP Br.") that one or more of these nonparty suppliers might decide it is in its best interests to have its objections resolved in a court in its own locale, as provided by federal law—*see* 28 U.S.C. § 1407(b); Fed. R. Civ. P. 45(c)(2); Fed. R. Civ. P. 45(d)(3)—and that this Court should therefore preemptorily rule that such nonparty supplier should not be allowed to do that.  While it ultimately may be most appropriate for this Court to adjudicate  any objections raised by the recipients of the nonparty supplier subpoenas that they are unable to resolve with the Wire Harness Defendants, DPPs have no right to make such arguments against the interests of the nonparty suppliers themselves and contrary to federal law.

DPPs try to dodge their obvious standing problem by claiming that the Court has already determined that DPPs may participate in the third-party subpoena process.  But DPPs cannot justify their attempted interference with discovery of nonparty suppliers based on anything the Court has said.  The only thing they can point to is the Court's suggestion (in response to DPPs'

request) that DPPs "talk to counsel" who were then drafting the OEM Subpoena, which is to be issued to dozens of OEMs with respect to all products at issue in every one of the cases in this MDL.  The Court never suggested, much less authorized, DPPs to demand imposition of a formal "coordinated process" to develop a "uniform subpoena" subject to the DPPs' own review and "comment," *see* DPP Br. at 1, before *any Tier 1 supplier* can be asked to produce documents regarding *any* product it purchased.  This Court has not (and could not have) conferred legal standing on DPPs to (1) challenge subpoenas that are not addressed to them, (2) that have been issued in cases in the Wire Harness track in which no DPP is a party; or (3) insist that those Wire Harness subpoenas be "coordinated" with all of the other product tracks, in two-thirds of which no DPP has even filed suit.  Nothing the Court has said or done suggests that the Special Master should sanction an additional layer of formal process and further delay that would allow DPPs to act as gatekeeper to all present and future third-party subpoenas in every case, contrary to the Federal Rules of Civil Procedure.

## II.   EVEN IF DIRECT PURCHASER PLAINTIFFS HAD STANDING TO OBJECT TO THE SUBPOENAS, THE COURT SHOULD DENY THE RELIEF THEY REQUEST

DPPs request that the Special Master order three forms of relief, none of which is warranted: (1) establish a coordinated process for the development of a uniform subpoena to be served on automotive suppliers in all actions; (2) enjoin the enforcement of the subpoenas already served; and (3) order the disclosure of all Defendants' negotiations with non-party suppliers who are served with subpoenas.  (DPPs also demand that Defendants produce to them all documents produced in response to the subpoenas, which is entirely non-controversial and which Defendants have never suggested they would not do).

A. **The Court should decline to establish the formal "coordinated" process proposed by Direct Purchaser Plaintiffs.**

Defendants (across all product tracks) already have voluntarily agreed to work together and with the other Plaintiffs in the MDL to minimize the number of non-party subpoenas that they issue on any nonparty supplier. Although Defendants will, of course, notify DPPs of issuance of any subpoenas in the product tracks in which DPPs are plaintiffs, no reason exists to otherwise involve DPPs in that process. DPPs have no direct stake in the subpoenas and cannot represent the rights of nonparty suppliers. Moreover, DPPs are not even parties to a majority of the cases in this MDL, and cannot represent anyone's interests in those suits.

The subpoenas at issue here are fundamentally different from the OEM Subpoenas. The supplier subpoenas that Wire Harness Defendants have already issued are relatively modest, containing only five requests, *see, e.g.*, Ex. 2, seeking information that DPPs concede is "central" to the claims brought by all of the Plaintiffs in the Wire Harness cases bringing various "indirect purchaser" claims—the End Payor Plaintiffs, Auto Dealer Plaintiffs, Truck and Equipment Dealer Plaintiffs, and the City of Richmond. DPPs' Br. at 1. It is unclear that any of these same nonparty suppliers ever would receive an additional subpoena in any of the later-filed cases.[2] Unlike OEMs, who purchased all of the products at issue in the MDL, the nonparty auto parts suppliers who received the Wire Harness Defendants' subpoenas each purchased at most only a small number of such products. DPPs themselves are proof of that. Most of the DPPs are themselves "tier one" auto parts suppliers, yet most of them are named plaintiffs in only one of the 29 product tracks in

---

[2]     Certainly, there is no reason to believe that any of the nonparty suppliers that have been subpoenaed in the Wire Harness cases will ever receive an additional subpoena in the *Wire Harness* cases. As DPPs concede, Wire Harness Defendants have already coordinated amongst themselves to avoid any such duplication, and the Plaintiffs other than the DPPs have advised Defendants that they have no intention of serving subpoenas on these same suppliers in the *Wire Harness* cases.

the MDL.  Moreover, it is just as unclear whether any nonparty supplier who has received a subpoena in the Wire Harness track and who might someday receive another subpoena about its purchases of another part at issue in a different product track would actually prefer to be immediately confronted with a single, comprehensive subpoena.   It is at least possible that such a nonparty supplier would prefer instead to focus for now on producing only documents concerning its purchases of products at issue in the Wire Harness cases, where the parties are on a tight schedule and clearly need the information promptly, and to put off producing documents concerning its purchases of a different product until some day in the future, if and when it is really necessary to do so, and perhaps on a more flexible schedule.

Nonetheless, going forward, to minimize the already small probability of multiple subpoenas, Defendants have agreed to coordinate with the Auto Dealer Plaintiffs, Truck and Equipment Dealer Plaintiffs, End Payor Plaintiffs, City of Richmond, and State of Florida, on any future nonparty supplier subpoenas.  But such coordination should not involve DPPs, who have no interest in that discovery.  Given the parties' commitment to coordinate on future subpoenas, the nonparty suppliers that have already received subpoenas in the Wire Harness cases will at most be exposed to a single additional subpoena if any of them purchased products relevant to one of the later product tracks.  The small possibility that one of these suppliers might someday receive an additional subpoena is not sufficient to hold up the Wire Harness subpoenas that have already been outstanding with these suppliers for some time, especially given that the discovery they seek is needed promptly to meet the schedule for the Wire Harness cases.

**B.      The Court should not upend midstream the already-issued subpoenas in the Wire Harness track, to which suppliers are now responding.**

Enjoining enforcement of the already-issued subpoenas would delay discovery that is needed promptly in the Wire Harness cases, without any corresponding benefit whatsover.  These

7

subpoenas are targeted at evidence at issue in the Wire Harness cases, in which class certification briefing is set to commence in a little more than a year. Wire Harness Defendants have spent nearly two months serving and then negotiating responses to these subpoenas and have made substantial progress. Ordering Wire Harness Defendants and non-party suppliers to walk away from these discussions now would not increase efficiency; it would be a great waste of time and effort.

DPPs admit that Defendants in the Wire Harness track have already "coordinated their discovery to avoid serving multiple subpoenas on the same supplier." DPP Br. at 5. The other Plaintiffs have likewise confirmed that they have no intention of serving subpoenas on these same suppliers with to Wire Harnesses. *See* EPPs Response To DPPs' Mot. To Establish A Coordinated Process For Disc. From Auto. Suppliers 6, May 13, 2015, ECF No. 988 ("The EPPs have no plans to serve subpoenas on the same suppliers, seeking duplicative discovery in the wire harness actions."). Defendants and the other Plaintiffs have also already agreed to coordinate future subpoenas, whether in Wire Harness or any other product track. The minimal likelihood that one of the nonparty suppliers who has already received a subpoena regarding purchases of Wire Harness Products might someday receive a second subpoena about purchases of another one of the products at issue in a later filed case in the MDL, and the minimal additional burden (if any) involved in responding to such a request separately at that later time, does not justify interference with the outstanding subpoenas.

**C. This Court need not order disclosure of additional information to the Direct Purchaser Plaintiffs.**

Finally, DPPs mischaracterize the facts in asking the Court to order Defendants to produce certain information to them. First, DPPs falsely claim the Wire Harness Defendants failed to inform them of the nonparty subpoenas. In fact, the Wire Harness Defendants served notices on

DPPs of their intent to serve those subpoenas in advance of such service. *See* Ex. 1. Second, DPPs falsely claim the Wire Harness Defendants declined to discuss DPPs' motion with them, when in fact the Wire Harness Defendants explained their position, asked DPPs to explain the basis for their purported concerns, and offered to discuss it further, but DPPs declined to do so and instead filed this motion. Based on these false premises, DPPs ask the Court to order the Wire Harness Defendants to produce (a) "all stipulations or other agreements limiting or otherwise changing the scope of the uniform subpoenas"; and (b) documents Defendants obtain in response to these subpoenaes. DPP Br. at 1–2. There is no point to either request. As discussed above, there is no need for any "uniform" subpoena for nonparty suppliers, and DPPs have no no standing to insist that they be included in communications with such nonparty suppliers. As for copies of the responsive documents, Defendants have never suggested that they would not produce to all other parties, including DPPs, any documents obtained in response to any subpoena concerning products relevant to a case in which DPPs are parties.

## CONCLUSION

DPPs have no standing to interfere with the subpoenas served by the Wire Harness Defendants on nonparty suppliers and no right to speak on behalf of the recipients of those subpoenas. DPPs' proposed relief conflicts with the Federal Rules and would undermine the Court's schedule for class certification and discovery in the Wire Harness cases. The Court should deny DPPs' motion.

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

June 1, 2015

By: */s/ Steven F. Cherry*
Steven F. Cherry
David P. Donovan

9

Patrick J. Carome
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.:  (202) 663-6000
Fax:  (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
patrick.carome@wilmerhale.com
kurt.kastorf@wilmerhale.com

*Attorneys for Defendants DENSO Corporation
and DENSO International America, Inc.*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Tel.:  (248) 372-8252
Fax:  (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International
America, Inc.*


K&L GATES LLP

June 1, 2015        By:    */s/Michael G. Brady*  (w/consent)
Michael Martinez
Steven Kowal
Lauren Norris
Lauren Salins
K&L GATES LLP
70 W. Madison St., Suite 3100
Chicago, IL 60602
Tel.: (312) 807-4404
Fax: (312) 827-8116
Michael.martinez@klgates.com
Steven.kowal@klgates.com
Lauren.norris@klgates.com
Lauren.salins@klgates.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
Amanda M. Fielder (P70180)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
Tel: (248) 784-5000
wjansen@wnj.com

10

mbrady@wnj.com
afielder@wnj.com

*Attorneys for Defendant Chyoda Manufacturing*
*Corp.*

ARNOLD & PORTER LLP

June 1, 2015                    By:      */s/James L. Cooper*  (w/consent)
                                        James L. Cooper
                                        Michael A. Rubin
                                        Laura Cofer Taylor
                                        Katherine Clemons
                                        ARNOLD & PORTER LLP
                                        555 Twelfth Street NW
                                        Washington, DC 20004
                                        Tel.:  (202) 942-5000
                                        Fax:  (202) 942-5999
                                        james.cooper@aporter.com
                                        michael.rubin@aporter.com
                                        laura.taylor@aporter.com
                                        katherine.clemons@aporter.com

                                        Joanne Geha Swanson (P33594)
                                        Fred Herrmann (P49519)
                                        Matthew L. Powell (P69186)
                                        KERR, RUSSELL AND WEBER, PLC
                                        500 Woodward Avenue, Suite 2500
                                        Detroit, MI  48226
                                        Tel.:  (313) 961-0200
                                        Fax:  (313) 961-0388
                                        jswanson@kerr-russell.com
                                        fherrmann@kerr-russell.com
                                        mpowell@kerr-russell.com

                                        *Attorneys for Defendants Fujikura Ltd. and*
                                        *Fujikura Automotive America LLC*

                                        LANE POWELL PC

                                        */s/Larry S. Gangnes* (w/consent)
June 1, 2015                    By:      Larry S. Gangnes
                                        LANE POWELL PC
                                        1420 Fifth Ave., Suite 4200
                                        P.O. Box 91302
                                        Seattle, WA 98111-9402
                                        Tel.:  (206) 223-7000
                                        Fax:  (206) 223-7107
                                        gangnesl@lanepowell.com

                                        Craig D. Bachman
                                        Kenneth R. Davis II

11

Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
LANE POWELL PC
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Tel.:  (503) 778-2100
Fax:  (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com
hawkesp@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Tel.:  (248) 528-1111
Fax:  (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric Co.,
Ltd. and American Furukawa, Inc.*

PORTER WRIGHT MORRIS & ARTHUR LLP

June 1, 2015                 By:     */s/ Donald M. Barnes* (w/consent)
                                     Donald M. Barnes
                                     Jay L. Levine
                                     John C. Monica
                                     Molly S. Crabtree
                                     PORTER WRIGHT MORRIS & ARTHUR LLP
                                     1919 Pennsylvania Ave., NW, Ste. 500
                                     Washington, DC 20006
                                     Tel.:  (202) 778-3054
                                     Fax:  (202) 778-3063
                                     dbarnes@porterwright.com
                                     jlevine@porterwright.com
                                     jmonica@porterwright.com
                                     mcrabtree@porterwright.com

*Attorneys for Defendants G.S. Electech, Inc.,
G.S.W. Manufacturing, Inc., and G.S. Wiring
Systems, Inc.*

O'MELVENY & MYERS LLP

June 1, 2015                 By:     */s/Michael F. Tubach*  (w/consent)
                                     Michael F. Tubach

12

O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel.:  (415) 984-8700
Fax:  (415) 984-8701
Mtubach@omm.com

Michael R. Turco (P48705)
BROOKS WILKINS SHARKEY & TURCO
PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Tel.:  (248) 971-1713
Fax:  (248) 971-1801
turco@bwst-law.com

*Attorneys for Defendants Leoni Wiring Systems, Inc. and Leonische Holding, Inc.*

JENNER & BLOCK LLP

June 1, 2015              By:   /s/ Terrence J. Truax (w/ consent)
                                Terrence J. Truax
                                Charles B. Sklarsky
                                Michael T. Brody
                                Gabriel A. Fuentes
                                Daniel T. Fenske
                                JENNER & BLOCK LLP
                                353 N. Clark Street
                                Chicago, IL 60654-3456
                                ttruax@jenner.com
                                csklarsky@jenner.com
                                mbrody@jenner.com
                                gfuentes@jenner.com
                                dfenske@jenner.com

                                Gary K. August
                                Jamie J. Janisch
                                ZAUSMER, AUGUST & CALDWELL, P.C.
                                31700 Middlebelt Road, Suite 150
                                Farmington Hills, MI 48334-2374
                                gaugust@zacfirm.com
                                jjanisch@zacfirm.com

                                *Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc.*

                                LATHAM & WATKINS LLP

June 1, 2015              By:   /s/ Marguerite M. Sullivan (w/ consent)
                                Marguerite M. Sullivan
                                LATHAM & WATKINS LLP

13

555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel.:  (202) 637-2200
Fax:  (202) 637-2201
Marguerite.Sullivan@lw.com

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel.:  (415) 395-0600
Fax:  (415) 395-8095
dan.wall@lw.com

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Tel.:  (248) 457-7060
Fax:  (248) 457-7001
bhorton@gmhlaw.com

*Attorneys for Defendants Sumitomo Electric
Industries, Ltd.;  Sumitomo Wiring Systems, Ltd.;
Sumitomo Electric Wiring Systems, Inc.; K&S
Wiring Systems, Inc.; and Sumitomo Wiring
Systems (U.S.A.) Inc.*

BUTZEL LONG

June 1, 2015                    By:    */s/David F. DuMouchel*  (w/consent)
David F. DuMouchel (P25658)
George B. Donnini (P66793)
BUTZEL LONG
150 West Jefferson, Suite 100
Detroit, MI 48226
Tel.:  (313) 225-7000
Fax:  (313) 225-7080
dumouchd@butzel.com
donnini@butzel.com
W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Tel.:  (202) 663-7820
Fax:  (202) 663-7849
TMiller@bakerandmiller.com

*Attorneys for Defendants Tokai Rika Co., Ltd.
and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.*

JONES DAY

June 1, 2015

By:   */s/John M. Majoras*
John M. Majoras
Michael R. Shumaker
Carmen G. McLean
JONES DAY
51 Louisiana Ave. N.W.
Washington, D.C. 20001-2113
Tel. (202) 879-3939
Fax (202) 626-1700
jmmajoras@jonesday.com
mrshumaker@jonesday.com
cgmclean@jonesday.com

Michelle K. Fischer
Stephen J. Squeri
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Tel. (216) 586-3939
Fax (216) 579-0212
mfischer@jonesday.com
sjsqueri@jonesday.com

Tiffany D. Lipscomb-Jackson
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215-2673
Mailing Address:  P.O. Box 165017
Columbus, OH 43216-5017
Tel. (614) 281-3939
Fax (614) 461-4198
tdlipscombjackson@jonesday.com

*Attorneys for Defendants Yazaki Corporation*
*and Yazaki North America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2015, I caused the foregoing Certain Defendants'

Opposition to Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs to be

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

  */s/ Steven F. Cherry*
Steven F. Cherry
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com

*Counsel for DENSO Corporation and DENSO
International America, Inc.*

1