**REDACTED**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In re:  Wire Harness Cases<br>In re: All Auto Parts Cases | |
| THIS DOCUMENT RELATES TO:<br><br>All Wire Harness Cases<br>All Auto Parts Cases | 2:12-cv-00100-MOB-MKM<br>2:12-md-02311-MOB-MKM |

## WIRE HARNESS DEFENDANTS' OBJECTIONS TO, AND MOTION TO MODIFY, MASTER ESSHAKI'S JUNE 18, 2015 ORDER

### ORAL ARGUMENT REQUESTED

The wire harness defendants[1] respectfully request that the Court enter defendants' [Proposed] Order Modifying Master Esshaki's June 18, 2015 Order ("Proposed Order").  In support of this motion, the wire harness defendants state as follows:

1.    During a telephonic hearing on January 21, 2015, Master Esshaki ruled, after full briefing and oral argument, that the wire harness defendants could take up to three separate depositions under Rule 30(b)(1) and up to 18 hours of testimony under Rule 30(b)(6) of each

---

[1] "Wire harness defendants" refers to Chiyoda Manufacturing Corporation; Chiyoda USA Corporation; American Furukawa, Inc.; Furukawa Electric Co., Ltd.; DENSO Corporation; DENSO International America, Inc.; Fujikura Automotive America LLC; Fujikura Ltd.; G.S. Electech, Inc.; G.S.W. Manufacturing, Inc.; G.S. Wiring Systems, Inc.; Leoni Wiring Systems, Inc.; Leonische Holding Inc.; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; Mitsubishi Electric Automotive America, Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.) Inc.; Tokai Rika Co., Ltd.; and TRAM, Inc.

**REDACTED**

auto dealer plaintiff.  Master Esshaki instructed the parties to prepare an order that memorialized his ruling, and the parties were in the process of finalizing that order on the morning of the status conference of January 28, 2015.

2.      During that status conference, the Court expressed concern that defendants in multiple auto parts cases would take repetitive depositions of the same individual plaintiff witnesses, and it instructed the wire harness defendants to coordinate with the defendants in the other auto parts cases to avoid duplication of end payor and auto dealer depositions.  Jan. 28 Conf. Tr. at 25:24-26:4 (Ex. D).

3.      During a hearing on May 6, 2015, Master Esshaki explained that he believed that the Court's statements during the January 28 status conference vacated his January 21 ruling regarding the number of depositions that defendants could take of each auto dealer plaintiff. May 6 Hr'g Tr. at 5:3-6:10, 22:20-22, 23:20-21 (Ex. F).  He mistakenly believed that the Court had limited all defendants to a single deposition, and thus, ruled that all defendants in all parts cases may collectively take only one seven-hour Rule 30(b)(1) deposition and one seven-hour Rule 30(b)(6) deposition of each auto dealer plaintiff.  *Id.* at 22:20-22, 27: 7-9.

4.      These rulings were expressly based on a misunderstanding of the Court's statements on January 28.  The Court did not overrule, or even address, Master Esshaki's January 21 ruling regarding the number of depositions of each auto dealer plaintiff, nor did the Court say anything about the duration of Rule 30(b)(6) depositions.  Jan. 28 Conf. Tr. at 24:1-15; 32:23-33:3 (Ex. D).

5.      Moreover, one seven-hour fact witness deposition under Rule 30(b)(1) and seven-hours of corporate representative testimony under Rule 30(b)(6) do not provide nearly enough discovery for defendants to defend themselves in these cases.  Deposition testimony from the

**REDACTED**

auto dealers is highly relevant to the merits of the auto dealers' and end payors' claims and their respective motions to certify their classes.  Whether the auto dealers and end payors can prove impact (an element of their claims) on a class-wide basis requires a detailed analysis of each factor that affected the amount for which each auto dealer purchased and then later sold a particular car.  The documents and data that the auto dealers have produced or committed to produce (many auto dealers have yet to produce a single document) are not an adequate substitute for deposition testimony, as the productions to date raise a number of questions about each dealer's practices that can only be answered through deposition testimony that examines, across the relevant class periods, how each dealer operated its business and responded to OEM incentives, and how each dealer determined the amounts for which it purchased and sold vehicles.  This necessary information cannot be obtained in the amount of time that Master Esshaki has allotted, or from any other source.  Thus, the Court should modify Paragraphs 1.C and 1.E of Master Esshaki's June 18, 2015 order (ECF No. 1005) (the "June 18 Order") and reinstate Master Esshaki's January 21 ruling.

6.      The Court also should vacate Paragraph 2 of Master Esshaki's June 18 Order, which requires defendants to provide an outline of examination topics to the auto dealers and end payors in advance of individual fact witness depositions under Rule 30(b)(1).  That ruling also was based on Master Esshaki's misunderstanding of the Court's statements on January 28.  May 26 Tr. at 9:14-19; 10:7-9 (Ex. G).  The Court suggested various ways that the defendants could coordinate among themselves on end payor and auto dealer depositions to avoid taking duplicative depositions of the same individuals, but it did not at any time suggest that defendants should disclose their examination topics *to plaintiffs* in advance of those depositions.  Jan. 28 Conf. Tr. at 25:24-26:4, 36:12-14 (Ex. D) ("You can do whatever you want.").

**REDACTED**

7.      Master Esshaki's ruling is also inconsistent with Rule 30(b)(1), which sets forth precisely the information that must be contained in notices in advance of fact witness depositions (location, date, and deponent's name, if known), and does not contain the type of disclosure that Master Esshaki has ordered.   Finally, the ruling will delay depositions and waste judicial resources.  Thus, the Court should vacate Paragraph 2 of Master Esshaki's June 18 Order.

8.      Pursuant to E.D. Mich. Local Rule 7.1(a), counsel for the wire harness defendants attempted to reach agreement with the auto dealer plaintiffs and end payor plaintiffs in advance of this filing, but were unable to do so.

9.      Thus, for the foregoing reasons, the wire harness defendants respectfully request that the Court enter the Proposed Order submitted herewith.

Date:  June 19, 2015

LATHAM & WATKINS LLP

By:   */s/ Marguerite M. Sullivan*
Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Fax: (202) 637-2201
Marguerite.Sullivan@lw.com

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-0600
Fax: (415) 395-8095
dan.wall@lw.com

David D. Cross
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  202-624-2500
Fax:  202-628-5116
dcross@crowell.com

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.

4

**REDACTED**

101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060
bhorton@gmhlaw.com

*Attorneys for Defendants Sumitomo Electric
Industries, Ltd.; Sumitomo Wiring Systems,
Ltd.; Sumitomo Electric Wiring Systems, Inc.;
and Sumitomo Wiring Systems (U.S.A.) Inc.*

LANE POWELL PC

By:    /s/Larry S. Gangnes  (w/consent)
Larry S. Gangnes
LANE POWELL PC
U.S. Bank Centre
1420 Fifth Ave., Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
gangnesl@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Peter D. Hawkes
Masayuki Yamaguchi
LANE POWELL PC
MODA Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
hawkesp@lanepowell.com
yamaguchim@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone:  (248) 528-1111
Facsimile:  (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric
Co., Ltd.; and American Furukawa, Inc.*

**REDACTED**

WILMER CUTLER PICKERING HALE AND
DORR LLP

By:   */s/Steven F. Cherry*  (w/consent)
Steven F. Cherry
David P. Donovan
Brian C. Smith
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com
kurt.kastorf@wilmerhale.com

*Attorneys for Defendants DENSO International
America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International
America, Inc.*

ARNOLD & PORTER LLP

By:   */s/James L. Cooper*  (w/consent)
James L. Cooper
Michael A. Rubin
Laura Cofer Taylor
Katherine Clemons
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
(202) 942-5000
(202) 942-5999 (facsimile)
james.cooper@aporter.com
michael.rubin@aporter.com
laura.taylor@aporter.com
katherine.clemons@aporter.com

Joanne Geha Swanson (P33594)
Fred Herrmann (P49519)
Matthew L. Powell (P69186)

**REDACTED**

KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
(313) 961-0388 (facsimile)
jswanson@kerr-russell.com
fherrmann@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Defendants Fujikura Ltd. and Fujikura Automotive America LLC*


O'MELVENY & MYERS LLP

By:   */s/Michael F. Tubach*  (w/consent)
Michael F. Tubach
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Fax: (415) 984-8701
Mtubach@omm.com

Michael R. Turco (P48705)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1713
Fax: (248) 971-1801
turco@bwst-law.com

*Attorneys for Defendants Leoni Wiring Systems, Inc.  and Leonische Holding Inc.*

**REDACTED**

BUTZEL LONG

By: */s/David F. DuMouchel* (w/consent)
  David F. DuMouchel (P25658)
  George B. Donnini (P66793)
  BUTZEL LONG
  150 West Jefferson, Suite 100
  Detroit, MI 48226
  Telephone: (313)225-7000
  dumouchd@butzel.com
  donnini@butzel.com

  W. Todd Miller
  BAKER & MILLER PLLC
  2401 Pennsylvania Ave., NW, Suite 300
  Washington, DC 20037
  Telephone: (202)663-7820
  TMiller@bakerandmiller.com

  *Attorneys for Defendants Tokai Rika Co., Ltd.*
  *and  TRAM, Inc.*

  PORTER WRIGHT MORRIS & ARTHUR
  LLP

By: */s/ Donald M. Barnes* (w/consent)
  Donald M. Barnes
  Jay L. Levine
  Salvatore A. Romano
  John C. Monica
  Molly S. Crabtree
  Karri N. Allen
  PORTER WRIGHT MORRIS & ARTHUR
  LLP
  1919 Pennsylvania Ave., NW, Ste 500
  Washington, DC 20006
  Telephone: (202) 778-3054
  Facsimile: (202) 778-3063
  dbarnes@porterwright.com
  sromano@porterwright.com
  jmonica@porterwright.com
  mcrabtree@porterwright.com
  kallen@porterwright.com

  *Attorneys for Defendants G.S. Electech, Inc.,*
  *G.S.W. Manufacturing, Inc., and G.S. Wiring*
  *Systems, Inc.*

**REDACTED**

JENNER & BLOCK LLP

By: /s/ Terrence J. Truax
Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
Jamie J. Janisch
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374
gaugust@zacfirm.com
jjanisch@zacfirm.com

*Attorneys for Mitsubishi Electric Corporation,
Mitsubishi Electric US Holdings, Inc., and
Mitsubishi Electric Automotive America, Inc.*

K&L GATES LLP

By: /s/  Michael E. Martinez
Steven M. Kowal
Lauren N. Norris
Lauren B. Salins
K&L GATES LLP
70 W. Madison St.
Suite 3100
Chicago, IL 60602
Telephone: (312) 807-4404
Fax: (312) 827-8116
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.norris@klgates.com
lauren.salins@klgates.com

William P. Jansen (P36688)

**REDACTED**

Michael G. Brady (P57331)
Amanda Fielder (P70180)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
Telephone: (248) 784-5000
wjansen@wnj.com
mbrady@wnj.com
afielder@wnj.com

*Attorneys for Defendants Chiyoda Manufacturing*
*Corporation and Chiyoda USA Corporation*

REDACTED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In re: Wire Harness Cases In re: All Auto Parts Cases | |
| THIS DOCUMENT RELATES TO: All Wire Harness Cases All Auto Parts Cases | 2:12-cv-00100-MOB-MKM 2:12-md-02311-MOB-MKM |

## MEMORANDUM IN SUPPORT OF THE WIRE HARNESS DEFENDANTS' OBJECTIONS TO, AND MOTION TO MODIFY, MASTER ESSHAKI'S JUNE 18, 2015 ORDER

## ORAL ARGUMENT REQUESTED

## FILED UNDER SEAL PURSUANT TO PARAGRAPH 7 OF THE STIPULATION AND PROTECTIVE ORDER GOVERNING THE PRODUCTION AND EXCHANGE OF CONFIDENTIAL INFORMATION ENTERED IN THIS ACTION ON JULY 10, 2012 (ECF NO. 200)

**REDACTED**

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should modify Paragraphs 1.C and 1.E of Master Esshaki's June 18 Order limiting all defendants in all thirty sets of cases in *In re Automotive Parts Antitrust Litigation* collectively to only a single seven-hour fact witness deposition and a single seven-hour deposition under Rule 30(b)(6) of each auto dealer plaintiff on the ground that these limitations are based on Master Esshaki's mistaken understanding of the Court's statements during the January 28 status conference and will not allow defendants to obtain sufficient discovery from the auto dealer plaintiffs in all of these cases.

     **Answer:** Yes.

2.      Whether the Court should vacate Paragraph 2 of Master Esshaki's June 18 Order requiring defendants to disclose an outline of deposition topics to the auto dealer and end payor plaintiffs in advance of defendants' Rule 30(b)(1) depositions of those plaintiffs on the ground that the requirement is based on a mistaken understanding of the Court's statements during the January 28 status conference, would impose on defendants an unprecedented (and entirely one-sided) notice obligation that the Federal Rules do not require, and would promote further delays and inefficiencies in these cases.

     **Answer:** Yes.

REDACTED

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*In re Automotive Parts Antitrust Litig.*, Nos. 2:12-md-02311, 2:12-cv-00103, 2013 WL 2456612 (E.D. Mich. June 6, 2013)

*Comcast v. Behrend*, 133 S. Ct. 1426 (2013)

*Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900 (6th Cir. 2009)

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008)

*Marsico v. Sears Holding Corp.*, 370 F. App'x 658 (6th Cir. 2010)

*In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311 (N.D. Cal. 2014)

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013)

Fed. R. Civ. P. 30

Fed. R. Civ. P. 53

**REDACTED**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................1

PROCEDURAL BACKGROUND.................................................................................................4

I.    PARAGRAPHS 1.C AND 1.E OF MASTER ESSHAKI'S JUNE 18 ORDER
      ARE BASED EXCLUSIVELY ON HIS INTERPRETATION OF THE
      COURT'S COMMENTS ON JANUARY 28 ....................................................................4

      A.    On January 21, Master Esshaki Ruled That The Wire Harness Defendants
            Could Take Up To Three Rule 30(b)(1) Depositions And 18 Hours Of
            Rule 30(b)(6) Deposition Testimony Of Each Auto Dealer Plaintiff ......................4

      B.    During The January 28 Status Conference The Court Instructed
            Defendants To Coordinate To Avoid Duplicative Depositions Of
            Individual Plaintiffs ..............................................................................................5

      C.    Master Esshaki Reversed Himself On The Number And Length Of Auto
            Dealer Depositions Based On The Court's Comments On January 28 .................5

II.   PARAGRAPH 2 OF MASTER ESSHAKI'S JUNE 18 ORDER ALSO IS
      BASED ENTIRELY ON THE COURT'S COMMENTS ON JANUARY 28 ..................7

STANDARD OF REVIEW ...........................................................................................................8

ARGUMENT ................................................................................................................................9

I.    THE COURT SHOULD MODIFY PARAGRAPHS 1.C AND 1.E OF MASTER
      ESSHAKI'S JUNE 18 ORDER BECAUSE THEY ARE BASED ENTIRELY
      ON A MISUNDERSTANDING OF THE COURT'S STATEMENTS AT THE
      JANUARY 28 STATUS CONFERENCE ........................................................................9

II.   ONE SEVEN-HOUR FACT WITNESS DEPOSITION AND SEVEN HOURS
      OF RULE 30(B)(6) TESTIMONY ARE NOT NEARLY ENOUGH TIME FOR
      DEFENDANTS TO OBTAIN THE TESTIMONY THAT THEY NEED FROM
      EACH AUTO DEALER .................................................................................................11

      A.    Testimony From The Auto Dealers Is Highly Relevant To The Merits And
            To Class Certification ...........................................................................................11

            1.    At The OEM-to-Dealer Transaction Level, Defendants Need Auto
                  Dealer Testimony To Explain Variations In The Amounts That
                  Auto Dealers Paid For The Cars That They Purchased ...........................14

**REDACTED**

2.    At The Dealer-to-End Payor Transaction Level, Defendants Need Auto Dealer Testimony To Explain The Various Ways In Which Dealer Business Practices Affected The Amounts That End Payors Paid To Purchase Cars ...............................................................................16

3.    Defendants Need Auto Dealer Testimony To Understand The Extent To Which Other Factors (e.g., The Internet, Gender, Race, Income, Education) Influenced The Amounts That End Payors Paid For New Cars ....................................................................................18

B.    The Auto Dealers' Documents And Data Will Not Be An Adequate Substitute For Deposition Testimony ...................................................19

C.    Defendants Cannot Obtain This Critical Discovery From Any Other Source ...........................................................................................................22

III.    THE COURT SHOULD VACATE PARAGRAPH 2 OF MASTER ESSHAKI'S ORDER REQUIRING DEFENDANTS TO DISCLOSE THEIR EXAMINATION TOPICS TO PLAINTIFFS IN ADVANCE OF RULE 30(B)(1) DEPOSITIONS...........................................................................................................22

A.    This Court Did Not Order Defendants To Give The Auto Dealers And End Payors Advance Notice Of Examination Topics For Depositions Of Individual Fact Witnesses ..........................................................................23

B.    Master Esshaki's Order Is Inconsistent With The Federal Rules .........................23

C.    Master Esshaki's Order Will Generate Unnecessary And Wasteful Discovery Disputes And Delay Depositions...........................................................24

CONCLUSION............................................................................................................................25

**REDACTED**

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Automotive Parts Antitrust Litig.*,
    2:12-md-02311-MOB-MKM, ECF No. 792 (E.D. Mich. Aug. 29, 2014) ...............................1

*In re Automotive Parts Antitrust Litig.*,
    Nos. 2:12-md-02311, 2:12-cv-00103, 2013 WL 2456612 (E.D. Mich. June 6,
    2013) ..................................................................................................................................11

*Ball v. Union Carbide Corp.*,
    385 F.3d 713 (6th Cir. 2004) ............................................................................................12

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ............................................................................................13

*Comcast v. Behrend*,
    133 S. Ct. 1426 (2013) ......................................................................................................13

*Conti v. Am. Axle & Mfg., Inc.*,
    326 F. App'x 900 (6th Cir. 2009) ........................................................................................8

*East Texas Motor Freight Systems, Inc. v. Rodriguez*,
    431 U.S. 395 (1977) ..........................................................................................................12

*FTC v. Ramey Motors, Inc.*,
    1:14-cv-29603, ECF No. 1 (D.W.V. Dec. 11, 2014) ........................................................17

*Government of the Virgin Islands v. 19.623 Acres of Land*,
    602 F.2d 1130 (3d Cir. 1979) ..............................................................................................8

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008) ................................................................................13, 19

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ..............................................................................................12

*Kalamazoo River Study Group v. Rockwell International Corp.*,
    355 F.3d 574 (6th Cir. 2004) ..............................................................................................8

*Marsico v. Sears Holding Corp.*,
    370 F. App'x 658 (6th Cir. 2010) ........................................................................................8

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) .................................................................................................13

**REDACTED**

*In re Optical Disk Drive Antitrust Litig.*,
   303 F.R.D. 311 (N.D. Cal. 2014) ........................................................12

*Painter-Payne v. Vesta West Bay, LLC*,
   No. 2:12-cv-00912, 2014 WL 1599505 (S.D. Ohio Apr. 21, 2014) ........................24

*Parko v. Shell Oil Co.*,
   739 F.3d 1083 (7th Cir. 2014) ........................................................13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) ........................................................12

*Rodney v. Northwest Airlines, Inc.*,
   146 F. App'x 783 (6th Cir. 2005) ........................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................12, 13

## RULES

Fed. R. Civ. P.
   23 ........................................................11, 13
   23(a) ........................................................12
   23(b)(3) ........................................................19
   30(b)(1) ........................................................*passim*
   30(b)(6) ........................................................*passim*
   53(f) ........................................................1
   53(f)(4) ........................................................8

## TREATISES

8A Charles Alan Wright et al., *Federal Practice & Procedure* § 2103 (3d ed.
   2015) ........................................................24

8A Charles Alan Wright et al., *Federal Practice & Procedure* § 2106 (3d ed.
   2015) ........................................................24

8B Charles Alan Wright et al., *Federal Practice & Procedure* § 2163 (3d ed.
   2015) ........................................................24

## OTHER AUTHORITIES

4 Car Dealer Tricks You Need to Know Before You Buy a Car, Jan. 23, 2015,
   *available at* https://smartasset.com/personal-finance/4-car-dealer-tricks-you-
   need-to-know-before-you-buy-a-car-3 ........................................................19

**REDACTED**

Car Dealer Secrets: How to Be Confident You're Getting a Fair Deal on Your
   Trade-In, *available at* http://www.moneyunder30.com/how-to-be-confident-
   youre-getting-a-fair-deal-on-your-trade-in .............................................................17

Commonwealth Motors Staff, *available at*
   http://www.shopuslast.com/dealership/staff.htm......................................................16

Fiona Scott Morton, Florian Zettelmeyer, Jorge Silva-Risso, *Consumer
   Information and Price Discrimination: Does the Internet Affect Pricing of new
   Cars to Women and Minorities?*, Nat'l Bureau of Econ. Research, Dec. 2001......................19

Florian Zettelmeyer, Fiona Scott Morton & Jorge Silva-Risso, *Cowboys or
   Cowards: Why Are Internet Car Prices Lower?*, Nat'l Bureau of Econ.
   Research, Dec. 2001 ...............................................................................................18

Ian Ayers & Peter Siegelman, *Race & Gender Discrimination in Bargaining for a
   New Car*, Am. Econ. Rev., June 1995 ....................................................................19

KelloggInsight, *The Trick to Turn-and-Earn* (Mar. 2, 2012),
   http://insight.kellogg.northwestern.edu/article/the_trick_to_turn_and_earn ..........................15

McGrath Family of Dealerships, *available at* http://mcgrathauto.com .....................................16

Mike Colias & Arlena Sawyers, *Stair Step Incentives Are Back*, May 21, 2012,
   http://www.autonews.com/article/20120521/RETAIL07/305219947/stair-step-
   incentives-are-back ..............................................................................................15

Shearer Automotive Our Dealership Locations, *available at*
   http://www.shearerauto.com/locations/index.htm ......................................................16

SIGTARP, Factors Affecting the Decisions of General Motors and Chrysler To
   Reduce Their Dealership Networks at 26 (July 19, 2010), *available at*
   http://www.sigtarp.gov/Audit%20Reports/Factors%20Affecting%20the%20D
   ecisions%20of%20General%20Motors%20and%20Chrysler%20to%20Reduc
   e%20Their%20Dealership%20Networks%207_19_2010.pdf.................................14

The Surprising Ways Car Dealers Make the Most Money Off You, Feb. 29, 2012,
   *available at* http://www.forbes.com/sites/jimhenry/2012/02/29/the-surprising-
   ways-car-dealers-make-the-most-money-off-of-you/;...............................................17

TRUECar – What is Dealer Holdback? (June 27, 2011),
   http://blog.truecar.com/2011/06/27/what-is-dealer-holdback/ ....................................14

Why You Should Never Tell a Dealer You're Paying Cash, *available at*
   http://www.realcartips.com/cardealers/105-paying-for-a-car-in-cash.shtml ..........................17

REDACTED

Pursuant to Fed. R. Civ. P. 53(f) and the Order Appointing a Master, *In re Automotive Parts Antitrust Litig.*, 2:12-md-02311-MOB-MKM, ECF No. 792, at ¶¶ II.B-C (E.D. Mich. Aug. 29, 2014) ("*In re Auto Parts*"), the wire harness defendants[1] respectfully file this Memorandum In Support Of The Wire Harness Defendants' Objections to, And Motion To Modify, Paragraphs 1.C, 1.E, and 2 of Master Esshaki's June 18, 2015 Order.

## PRELIMINARY STATEMENT

Master Esshaki's June 18, 2015 Order (ECF No. 1005) (the "June 18 Order") contains two extraordinary rulings that substantially prejudice all defendants' ability to defend themselves in these cases. Paragraphs 1.C and 1.E limit all defendants in all auto parts cases to one seven-hour Rule 30(b)(1) deposition and one seven-hour Rule 30(b)(6) deposition of each auto dealer plaintiff entity. Paragraph 2 requires defendants to disclose to the auto dealers and end payors, in advance of fact witness depositions under Rule 30(b)(1), an outline of topics on which defendants intend to examine them. Both of these provisions are based on misunderstandings regarding comments that this Court made during the January 28 status conference. The record does not support them, they are inconsistent with the Federal Rules, and they would violate defendants' due process rights if left intact.

Master Esshaki originally ruled on January 21, 2015, after full briefing and oral argument, that the wire harness defendants could take up to three Rule 30(b)(1) depositions and 18 hours of Rule 30(b)(6) deposition testimony of each auto dealer plaintiff *in the wire harness*

---

[1] "Wire harness defendants" refers to Chiyoda Manufacturing Corporation; Chiyoda USA Corporation; American Furukawa, Inc.; Furukawa Electric Co., Ltd.; DENSO Corporation; DENSO International America, Inc.; Fujikura Automotive America LLC; Fujikura Ltd.; G.S. Electech, Inc.; G.S.W. Manufacturing, Inc.; G.S. Wiring Systems, Inc.; Leoni Wiring Systems, Inc.; Leonische Holding Inc.; Mitsubishi Electric Corporation; Mitsubishi Electric US Holdings, Inc.; Mitsubishi Electric Automotive America, Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.) Inc.; Tokai Rika Co., Ltd.; and TRAM, Inc.

**REDACTED**

*cases.*  While the parties in those cases were finalizing a written order that embodied Master

Esshaki's ruling, the Court expressed its views at the January 28 status conference that

defendants needed to coordinate end payor and auto dealer plaintiff depositions across all cases

in *In re Auto Parts* to avoid duplicative depositions of the same individuals.  The Court did not

address the number of witnesses from each auto dealer entity that defendants could depose, nor

did it say anything about the length of any depositions.  Yet on June 18, Master Esshaki reversed

his prior order, and ruled that all defendants in all thirty cases collectively may take only a single

seven-hour fact witness deposition and a single seven-hour Rule 30(b)(6) deposition of each auto

dealer entity.  In other words, he gave all defendants 25 fewer hours of deposition time and two

fewer depositions of each auto dealer plaintiff than he initially allotted to the wire harness

defendants alone.  His only explanation for this drastic change was that the Court had required it.

This severe limitation on the number and duration of depositions of auto dealers

substantially prejudices defendants in all product tracks.  As this Court is aware, whether

defendants' alleged conduct caused harm to the auto dealers and end payors is one of the central

questions in each of these cases.  It goes directly to these plaintiffs' ability to certify their classes,

and, if they proceed past class certification (although defendants do not believe that they will be

able to do so), it will dictate whether they ultimately can establish liability.  At the class

certification stage, both sets of plaintiffs must establish that they can prove through common

evidence that all class members were impacted.  Defendants, of course, are entitled to

demonstrate that plaintiffs cannot make that showing.  To do so, defendants need discovery

regarding the various terms of each auto dealers' purchases and sales of cars, as well as each of

the numerous factors that influenced those terms.

Defendants need to examine the auto dealers regarding their relationships with different

REDACTED

auto manufacturers ("OEMs") and each OEM's unique incentives, rebates, and contractual requirements (some of which may be specific to particular car brands[2] or models); the auto dealers' business strategies and policies; and the degree to which their other sales-related business activities, including sales of extended warranties, insurance, repair services, financing, vehicle trade-ins, and car accessories, affected the terms of their sales of new cars.

There is no one person, or even two people, at an auto dealer, who can testify to all of this information with respect to each car brand over the proposed fifteen-year class period, and defendants cannot cover the relevant facts within the time constraints that Master Esshaki has imposed. Many auto dealers have different employees that handle procurement and sales, and within sales, different teams of employees (at different locations) are responsible for different brands of cars. For each brand, designated employees play specific roles in each transaction: certain employees are responsible for negotiating a "price" for the car and any options or add-ons; other employees negotiate the financing and sale of warranties and insurance; and others are responsible for assigning a value to any trade-in.

Defendants also do not expect that the documents or data that the auto dealers have agreed to produce will contain the majority of this information, and no other party can provide it. Thus, the Court should modify Paragraphs 1.C and 1.E of Master Esshaki's Order to reflect his prior ruling and allow the amount of auto dealer deposition time that he initially ordered (three fact witness depositions and 18 hours of Rule 30(b)(6) testimony of each auto dealer plaintiff).

The Court also should vacate Paragraph 2 of Master Esshaki's order requiring defendants to disclose their "areas of examination" to the auto dealers and end payors in advance of Rule

---

[2] A car brand is typically associated with the name of the OEM that manufactures it (e.g., Honda or Toyota), but some OEMs manufacture and sell multiple brands of cars, either as a result of internal growth or acquisitions. For example, Honda manufacturers Acura, GM manufactures Cadillac and Buick, and Nissan manufactures Infiniti. Each brand is unique.

REDACTED

30(b)(1) depositions.  That ruling also was based on a fundamental misunderstanding of the Court's statements on January 28, it is inconsistent with the Federal Rules, and it will create additional discovery disputes, waste judicial resources, and further delay depositions.

## PROCEDURAL BACKGROUND

I.   **PARAGRAPHS 1.C AND 1.E OF MASTER ESSHAKI'S JUNE 18 ORDER ARE BASED EXCLUSIVELY ON HIS INTERPRETATION OF THE COURT'S COMMENTS ON JANUARY 28**

    A.   **On January 21, Master Esshaki Ruled That The Wire Harness Defendants Could Take Up To Three Rule 30(b)(1) Depositions And 18 Hours Of Rule 30(b)(6) Deposition Testimony Of Each Auto Dealer Plaintiff**

In early January 2015, after the parties in the wire harness cases had negotiated the terms of a deposition protocol for nearly a full year, they presented six disputes to Master Esshaki for resolution.  One dispute was the number of depositions that the wire harness defendants could take of employees of each corporate auto dealer plaintiff in the wire harness cases.  The wire harness defendants argued that five Rule 30(b)(1) depositions and up to 21 hours of Rule 30(b)(6) testimony of each auto dealer plaintiff was appropriate given the size and complexity of each auto dealer entity and changes to their businesses over time, the fact that many sold multiple different brands of cars, the breadth of the auto dealers' claims, and the importance of the discovery to the wire harness cases.  Defs.' Position Stmt., at 9-10 (ECF No. 261) (Ex. A); Joint Protocol, at 6, 15 (¶¶ III(A)(4) & V(B)) (ECF No. 259) (Ex. B).  The auto dealers argued that three depositions of each auto dealer was "a fair number of depositions." Pls.' Position Stmt., at 10 (ECF No. 260) (Ex. C); *see* Joint Protocol, at 6, 15 (¶¶ III(A)(4) & V(B)) (Ex. B).

After considering the parties' submissions and hearing oral argument, Master Esshaki ruled during a telephonic hearing on January 21 that the wire harness defendants could take up to three separate Rule 30(b)(1) depositions and up to 18 hours of Rule 30(b)(6) deposition testimony of each auto dealer plaintiff.  Master Esshaki directed the parties to prepare a draft

**REDACTED**

order that reflected his ruling, and as of the morning of the January 28 status conference, the parties had nearly finalized that draft order for submission and entry.

> **B.    During The January 28 Status Conference The Court Instructed Defendants To Coordinate To Avoid Duplicative Depositions Of Individual Plaintiffs**

During the January 28, 2015 status conference, the Court noted that it was concerned about the burden that discovery in so many separate auto parts cases would pose on "individual plaintiffs," and had decided to "put in [its] two cents' worth" on that topic.  Jan. 28 Conf. Tr. at 24:1-3 (Ex. D).   The Court was particularly focused on whether defendants would depose individual end payor plaintiffs regarding the same vehicle purchases in each set of parts cases, and stated that both end payor and auto dealer depositions should be taken "on behalf of all of the defendants."  *Id.*  at 32:23-33:3.   The Court instructed the wire harness defendants to coordinate with the other defendants on those depositions.  *Id.*

> **C.    Master Esshaki Reversed Himself On The Number And Length Of Auto Dealer Depositions Based On The Court's Comments On January 28**

During the May 6 status conference, while instructing the parties to address disputes about case protocols (including deposition protocols) with Master Esshaki, the Court referred back to its comments on January 28.  The Court stated:  "I may have overstepped my bounds last time when I made a comment as to what I was thinking because what I'm thinking on these issues right now is not really important, it is the decision between the – the argument between the parties and the decision of the master that counts, and then if there is an objection I will deal with it."  May 6 Conf. Tr. at 28:2-8 (Ex. E).

Notwithstanding that comment, during the hearing that followed the conference, Master Esshaki stated that he believed that the Court had "overturned the apple cart" at the January 28 conference and invalidated his January 21 ruling.  May 6 Hr'g Tr. at 5:3-6:10, 23:20-21 (Ex. F).  Master Esshaki explained that he understood that the Court had ordered on January 28 that *all*

**REDACTED**

*defendants in all cases* collectively could take only a single deposition of the same witness from each auto dealer, absent good cause. *Id.* at 5:10-6:10. He stated that "[t]he Judge said that the auto-dealer plaintiffs and the end-payor plaintiffs because all they did was buy and sell and buy [sic] an automobile should be subject to one deposition." *Id.* at 22:20-23:2.

Defendants responded that they understood that the Court's actual concern was that defendants would take repetitive depositions of the same individual in each parts case (*i.e.*, thirty depositions of the same individual witness), and to address that concern, the Court instructed defendants to coordinate with each other to avoid duplication. Defendants explained that the Court did not address, and there was no argument on, the number of depositions of each auto dealer plaintiff entity that would be appropriate in any one case (or overall). Master Esshaki replied, "[N]o, that's not what I got from it…. What I got from it is … she wanted it strictly limited to one deposition …." May 6 Hr'g Tr. at 23:22-24:4 (Ex. F).

Master Esshaki concluded, however, that because the auto dealers (unlike end payors) are corporate entities, defendants were necessarily entitled to at least two depositions, one under Rule 30(b)(1) and one under Rule 30(b)(6). *Id.* at 16:23-17:11, 24:1-10. But he then imposed yet another restriction. Inferring from the Court's supposed desire to limit defendants to a single deposition of each auto dealer that the Court also wanted to reduce the maximum number of hours of Rule 30(b)(6) testimony from each auto dealer, Master Esshaki reduced the 18-hour limit that he had previously imposed for the wire harness case alone to seven hours for all defendants in all cases. May 26 Tr. at 7:4-6 (Ex. G). The auto dealers themselves had not objected to the prior 18-hour limit for Rule 30(b)(6) depositions, and the Court had never mentioned the duration of Rule 30(b)(6) depositions at all. May 6 Hr'g Tr. at 27:1-23 (Ex. F); May 26 Tr. at 7:4-6 (Ex. G); Jan. 28 Conf. Tr. at 24:2-15; 32:23-33:3 (Ex. D).

REDACTED

## II. PARAGRAPH 2 OF MASTER ESSHAKI'S JUNE 18 ORDER ALSO IS BASED ENTIRELY ON THE COURT'S COMMENTS ON JANUARY 28

During the January 28 status conference, the Court suggested numerous ways in which defendants in all parts cases could coordinate to avoid repetitive depositions of the same individual plaintiffs. Jan. 28 Conf. Tr. at 25:14-26:4 (Ex. D). At the end of the discussion, defense counsel sought clarification: "Are you requesting that we submit a template to Master Esshaki *or to other parties*[,] or just among the defendants in the various cases?" *Id.* at 36:8-10 (emphasis added). The Court confirmed that it was *not* requiring defendants to provide information *to anyone* in advance of depositions, but that Master Esshaki would be available to assist defendants if they could not agree among themselves on the questions to be asked. *Id*. at 36:12-19 ("You can do whatever you want. Hopefully you come to terms amongst yourselves and you don't have to bother Master Esshaki.").

But Master Esshaki misunderstood the Court's suggestions, and informed the parties on May 6 that he believed that Judge Battani had ruled that defendants "[n]eed a script, pre-approved script" and that "if there are any special questions that any particular defendant want[ed] to have asked they [were] to submit them to [him] and [he would] determine whether they should be included in that particular person's deposition." May 6 Hr'g Tr. at 5:22-6:10 (Ex. F). During a follow-up hearing on May 26, Master Esshaki backed off from requiring a pre-approved script, but ordered defendants to disclose their examination topics to both auto dealers and end payors in advance of Rule 30(b)(1) individual witness depositions, explaining that he believed "that based upon what Judge Battani was saying that [an outline of areas to be examined] should go as to the 30(b)(1)." May 26 Tr. at 13:2-5 (Ex. G). This notice requirement applies only to defendants' depositions of auto dealer and end payor witnesses; Master Esshaki did not impose a reciprocal requirement for any depositions taken by plaintiffs.

REDACTED

## STANDARD OF REVIEW

Although a district court typically applies an abuse of discretion standard to the review of a Special Master's ruling on a procedural issue, that standard does not govern here.  Master Esshaki did not use his discretion when he issued his June 18 rulings.  Rather, he expressly relied entirely on his mistaken interpretation of the Court's statements on January 28.  *See* May 6 Hr'g Tr. at 23:22-24:4 (Ex. F); May 26 Tr. at 13:2-5 (Ex. G).  Thus, the Court need not conclude that Master Esshaki abused his discretion to modify Paragraphs 1.C, 1.E, and 2 of his June 18 Order. *Cf. Gov't of the Virgin Islands v. 19.623 Acres of Land*, 602 F.2d 1130, 1136 (3d Cir. 1979) (remanding on the ground that the district court did not exercise discretion that it did not know it had the authority to exercise).

However, even if an abuse of discretion standard applied, a decision denying discovery that results in substantial prejudice to the party seeking the discovery constitutes an abuse of discretion.  *See, e.g.*, *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (finding district court's decision to deny plaintiff's request for a deposition to be an abuse of discretion); *Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 665 (6th Cir. 2010) (holding that district court's decision to deny relevant deposition testimony was an abuse of discretion).[3] Thus, regardless of the standard that applies, the Court should grant defendants' motion.

---

[3] The abuse of discretion standard does not apply to the Court's review of Paragraph 2 of the June 18 Order for the additional reason that this unprecedented advance notice requirement for Rule 30(b)(1) depositions conflicts with the Federal Rules.  This conflict constitutes legal error, which is subject to de novo review.  Fed. R. Civ. P. 53(f)(4); *Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 355 F.3d 574, 583 (6th Cir. 2004) (a district court's "interpretation and application of the Federal Rules of Civil Procedure is a question of law and, as with all legal questions, [the court] review[s] [the district court's] analysis de novo").

8

**REDACTED**

## ARGUMENT

**I.**    **THE COURT SHOULD MODIFY PARAGRAPHS 1.C AND 1.E OF MASTER ESSHAKI'S JUNE 18 ORDER BECAUSE THEY ARE BASED ENTIRELY ON A MISUNDERSTANDING OF THE COURT'S STATEMENTS AT THE JANUARY 28 STATUS CONFERENCE**

The Court should modify Paragraphs 1.C and 1.E of Master Esshaki's June 18 Order and restore the number and duration of auto dealer depositions that Master Esshaki ordered on January 21 (up to three fact witness depositions and up to 18 hours of Rule 30(b)(6) testimony of each auto dealer plaintiff). Master Esshaki issued his initial ruling after considering full briefing and oral argument. His order of June 18, however, is based solely on his erroneous belief that this Court had "overturned the apple cart" and invalidated his prior ruling, and in doing so, imposed strict limits on depositions of auto dealers to which Master Esshaki believed he had to adhere. May 6 Hr'g Tr. at 5:3-6:10, 23:20-21 (Ex. F).

But the Court did not invalidate, or even consider, Master Esshaki's January 21 ruling during the conference on January 28. No party had objected to Master Esshaki's ruling, and this Court has made clear that it will only address discovery disputes that have been delegated to Master Esshaki "if there is an objection." May 6 Conf. Tr. at 28:2-8 (Ex. E) (explaining that "it is the argument between the parties and the decision of the master that counts").

Although the Court did comment on depositions during the January 28 conference, that discussion related to a different issue altogether: whether the defendants in each auto parts case should take depositions of the same individual plaintiff witnesses. *See* Jan. 28 Conf. Tr. at 24:4-5 (Ex. D). Both the end payors and the auto dealers had complained at the prior status conference that their witnesses should not be "subject to being deposed in wire harness and then again in the next case." Oct. 8 Hr'g. Tr. at 84:1 (Ex. H). The end payors had explained that they did not want to produce a witness in the wire harness case, only to "have somebody on the

**REDACTED**

sidelines [] come back in a year and say … we want that person again to ask them all of the same questions." *Id.* at 84:9-13.  The auto dealers "strongly agree[d] with the end payors about the issue of repeated depositions," *id.* at 86:7-8, and emphasized that it would be abusive to make the auto dealers appear repeatedly "over and over and over 29 times." *Id.* at 86:9-10.  When the next status conference began on January 28, the Court indicated that it had been "thinking about the depositions for the individual plaintiffs in all of the auto parts," and then a discussion followed on that issue.[4]  Thus, to the extent that the Court's statements during that discussion constituted a ruling at all, the only ruling that the transcript reflects is an instruction that defendants coordinate on depositions of end payor and auto dealer depositions to avoid repetitive examinations of the same individual witnesses.  *See, e.g.*, Jan. 28 Conf. Tr. at 24:10-15 (Ex. D).

The Court never addressed Master Esshaki's January 21 decision regarding the number of auto dealer witness depositions that would be appropriate in any particular case.  The Court never addressed the duration of any depositions at all, let alone expressed a desire to limit Rule 30(b)(6) depositions of auto dealer entities to seven hours (down from the 18 that Master Esshaki had awarded).  And the Court certainly never decided, after the benefit of full briefing and argument, that a single fact witness deposition and a single seven hour Rule 30(b)(6) deposition would enable more than fifty defendants in thirty separate cases to obtain all of the auto dealer testimony that they need (for the merits and class certification) for all of their cases.  Master

---

[4] When the Court and defense counsel used the phrases "one deposition" or "a single deposition," *see, e.g.*, Jan. 28 Conf. Tr. at 28:8-11; 33:15-16, they were referring to *one deposition of each individual witness* across all parts cases, not one deposition per auto dealer plaintiff, total.  *See, e.g., id.* at 24:2-3 ("I was thinking about the depositions for the individual plaintiffs in all of the auto parts"); *id.* at 25:20-21 ("so when the person comes in he's going to be asked the question, or she, only one time"); *id.* at 28:2-3 ("we just cannot start doing two depositions or more of everyone").  Master Esshaki confirmed this by his own statements at the conference, when he noted that "the judge, I think, made this instruction very clear, *one dep, one person*, across all parts." *Id.* at 34:22-23 (emphasis added).

**REDACTED**

Esshaki's June 18 Order was based on a misunderstanding of both the import and content of the discussion that occurred on January 28.  The Court should modify Paragraphs 1.C and 1.E of Master Esshaki's order and reinstate his January 21 ruling on that basis.

## II.    ONE SEVEN-HOUR FACT WITNESS DEPOSITION AND SEVEN HOURS OF RULE 30(B)(6) TESTIMONY ARE NOT NEARLY ENOUGH TIME FOR DEFENDANTS TO OBTAIN THE TESTIMONY THAT THEY NEED FROM EACH AUTO DEALER

Paragraphs 1.C and 1.E of Master Esshaki's June 18 Order will prevent defendants from obtaining the discovery that they need to defend these cases.  One fact witness deposition and seven hours of Rule 30(b)(6) testimony from each auto dealer are not even remotely enough time.  Testimony from the auto dealers is directly relevant to the merits of the auto dealers' and end payors' claims, as well as their motions to certify their classes under Rule 23, and it is the only form of discovery that will provide much of the information that defendants need from the auto dealers.

### A.    Testimony From The Auto Dealers Is Highly Relevant To The Merits And To Class Certification

Whether, and the extent to which, defendants' alleged conduct impacted the auto dealers and end payors is central to every one of the auto parts cases.  Neither set of plaintiffs can establish liability in any case in this litigation without proving that overcharges that resulted from the alleged price-fixing of a particular part caused them to pay more than they otherwise would have paid for the cars that they purchased.  *See In re Automotive Parts Antitrust Litig.*, Nos. 2:12-md-02311, 2:12-cv-00103, 2013 WL 2456612, at *8 (E.D. Mich. June 6, 2013) (explaining that the auto dealers and end payors must prove "that every reseller in the chain passed on some or all of the alleged overcharge," and that is "a difficult challenge").  But before they even get to liability, the end payors and auto dealers, if they are to proceed on behalf of their putative classes, must satisfy the requirements of Rule 23, and their ability to show impact on a class-

REDACTED

wide basis with common proof is critical to that determination.

A primary question that this Court will need to decide to rule on class certification will be whether the auto dealers and the end payors can prove that common issues predominate over individual issues.[5]  *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004) (upholding denial of class certification on predominance grounds because "any claim the class may have had in common threatened to splinter into individualized claims").  Because impact is an element of a Sherman Act claim that often requires individual, as opposed to common, proof, impact is often "critically important for the purpose of evaluating Rule 23(b)(3)'s predominance requirement."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). Indeed, numerous courts have denied class certification in these types of cases on the ground that the plaintiffs failed to establish that they could prove through common evidence that the alleged conspiracy injured all of their putative class members.  *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-53 (D.C. Cir. 2013) (vacating certification of direct purchaser class because expert methodology purporting to show that all class members suffered injury generated "false positives" and "detect[ed] injury where none could exist"); *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 322-25 (N.D. Cal. 2014) (denying certification of classes of direct and indirect purchasers of optical disk drives on the ground that plaintiffs failed to proffer a viable methodology that showed that the conspiracy caused all or nearly all class members to suffer injury); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 499-

_____

[5] Rule 23(a) also requires plaintiffs to show that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011); Fed. R. Civ. P. 23(a).  These requirements ensure that named plaintiffs "possess the same interest and suffer the same injury as the class members" that they seek to represent.  *Dukes,* 131 S. Ct. at 2550 (*quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

**REDACTED**

504 (N.D. Cal. 2008) (denying certification of indirect purchaser class for lack of predominance because expert methodology purporting to show common impact "would [] sweep in an unacceptable number of uninjured plaintiffs"); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 & n.18 (1st Cir. 2008) (reversing certification of class of car consumers and remanding to district court to consider, based on the full evidentiary record, whether the plaintiffs could prove through common evidence that all consumers were impacted).

Importantly, the Supreme Court has made clear that courts must conduct a "rigorous analysis" of the record and resolve factual disputes between the parties (and disputes between their experts) in determining whether plaintiffs have met their burden. *Dukes,* 131 S. Ct. at 2551-52; *see also Comcast v. Behrend*, 133 S. Ct. 1426 (2013).[6]  Plaintiffs must satisfy Rule 23 "through evidentiary proof," and as the Sixth Circuit has explained, "a court performing a 'predominance' inquiry under Rule 23(b)(3) may consider not only the evidence presented in the plaintiff's case-in-chief but the defendant's likely rebuttal evidence." *Rodney v. Northwest Airlines, Inc.*, 146 F. App'x 783, 787 (6th Cir. 2005).

---

[6] *See also Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("when factual disputes bear on issues vital to certification (that is, to whether the suit should be allowed to be litigated as a class action), such as predominance, the court must 'receive evidence … and resolve the disputes before deciding whether to certify the case'"); *Blades v. Monsanto Co.*, 400 F.3d 562, 575 (8th Cir. 2005) (court must "resolve disputes concerning the factual setting of the case," including "the resolution of expert disputes concerning the import of evidence").

REDACTED

████████████████████████████████████   Deposition testimony is critical to this

analysis.

> 1.   **At The OEM-to-Dealer Transaction Level, Defendants Need Auto Dealer Testimony To Explain Variations In The Amounts That Auto Dealers Paid For The Cars That They Purchased**

Many of the auto dealers purchased and sold different brands of cars that were

manufactured by different OEMs.  For example, Plaintiff Ramey Motors purchased and sold cars

manufactured by Toyota and Chrysler (Dealership Pls' Third Consol. Class Action Compl. ¶ 51,

No. 2:12-cv-00102, (ECF No. 219)); ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████   This fact is important because each OEM

offers different prices, financing terms, and dealer and customer incentives for each of its brands

that are designed to increase either its margin per car or the number of cars that its dealers

purchase.  Dealers, in turn, adjust their purchase and sales practices in different ways based on

those incentives in order to maximize their downstream sales and profits.

For example, some OEMs offer floor plan support, which provides a payment or credit to

an auto dealer to help the dealer manage the cost of financing daily operations and purchasing

new cars.[7]  OEMs also often return a percentage of the dealer's purchase price (referred to as

dealer "holdback") following the dealer's resale of the new car.[8] ███████████████

---

[7] SIGTARP, Factors Affecting the Decisions of General Motors and Chrysler To Reduce Their Dealership Networks at 26 (July 19, 2010), *available at* http://www.sigtarp.gov/Audit%20Reports/Factors%20Affecting%20the%20Decisions%20of%20 General%20Motors%20and%20Chrysler%20to%20Reduce%20Their%20Dealership%20Networ ks%207_19_2010.pdf.

[8] TRUECar, What is Dealer Holdback? (June 27, 2011), http://blog.truecar.com/2011/06/27/what-is-dealer-holdback/.

REDACTED



[9] Finally, when demand is greater than supply, some OEMs allocate cars to particular dealers based on the dealers' prior sales, "with high-selling dealerships receiving more capacity in the next round."[10]

Because these incentives vary by OEM and brand, an auto dealer that sells one brand of cars is likely to have access to different incentives than a dealer that sells a different brand, and two dealers that receive the same type of incentive from two different OEMs are likely to be subject to different terms and conditions. The auto dealers themselves also utilize the OEM incentives differently. Whereas one dealer may sell high volumes of cars at lower prices because an OEM offers a significant cash payment if the dealer hits a monthly target, another dealer may decide not to pursue that strategy and, instead, to sell lower volumes of cars at higher prices to

---

[9] Decl. of Allen T. Levenson In Support of Defendants' Opposition to Dealer Plaintiffs' Cross-Motion to Resolve Defendants' Motion to Compel Downstream Discovery and Outstanding Requests (the "Levenson Declaration") (Ex. J), ¶ 20. Unlike lump-sum payments for meeting sales quotas, "stair step" incentives "pay dealers escalating bonuses as sales targets are hit in a bid to wrest back market share or boost key models." Mike Colias & Arlena Sawyers, *Stair Step Incentives Are Back*, May 21, 2012, http://www.autonews.com/article/20120521/RETAIL07/305219947/stair-step-incentives-are-back.

[10] Some OEMs offer "turn and earn" programs "to assign capacity when [OEMs] cannot keep up with demand," allocating cars "based on previous sales, with high-selling dealerships receiving more capacity in the next round." KelloggInsight, *The Trick to Turn-and-Earn* (Mar. 2, 2012), http://insight.kellogg.northwestern.edu/article/the_trick_to_turn_and_earn.

[11] Levenson Declaration, ¶ 20 (Ex. J).

[12] *Id.* ¶ 25 (Ex. J).

15

REDACTED

earn a greater profit margin on each sale.

Given the direct role that OEM incentives play in setting the amount that auto dealers pay for the cars that they purchase, and the fact that these incentives vary by OEM and brand, defendants need to examine each auto dealer's relationship with each OEM, the types and specific terms of incentives that each OEM has offered (and for which brands and cars) over time, and the dealer's business strategies and use of those incentives in their sales to consumers. Because employees of auto dealers are typically responsible for one OEM or brand,[13] for each auto dealer that purchased and sold cars from more than one OEM (or different brands manufactured by the same OEM), defendants will need to examine the auto dealer entity itself on each of these topics, as well as the individual employees who handled the various brands that that dealer bought and sold.

**2.     At The Dealer-to-End Payor Transaction Level, Defendants Need Auto Dealer Testimony To Explain The Various Ways In Which Dealer Business Practices Affected The Amounts That End Payors Paid To Purchase Cars**

Defendants also need deposition testimony to understand each auto dealer's sales practices and strategies, the ways in which those differ among dealers, and their resulting impact on the sales price and other terms of end payors' new car purchases ████████████████ ████████████████████████████████████████████████ ■ When a customer takes out a loan to pay for a new car through a lender that is affiliated with the dealer or through the dealer itself, the dealer receives additional revenues on the sale of the car, or a

---

[13]     *See, e.g.* Commonwealth Motors Staff, *available at* http://www.shopuslast.com/dealership/staff.htm (listing separate staff members for Honda, Chevrolet and Kia models); McGrath Family of Dealerships, *available at* http://mcgrathauto.com (listing multiple dealerships within the McGrath Auto Group); Shearer Automotive Our Dealership Locations, *available at* http://www.shearerauto.com/locations/index.htm (listing separate dealerships for Audi, Acura, Chevrolet, and other brands).

[14] Levenson Declaration, ¶ 15 (Ex. J).

REDACTED

commission, or both.[15]  The financing terms affect the economics of the transaction for the end payor because a dealer that sells a car at a low "price" knowing that it will more than make up for it on the financing terms, makes a profit on the transaction with the end payor just as if the dealer had sold the vehicle at a higher "price" without financing.

██████████████████████████████████████████████████

██████████████████████ ██  They appraise the value of trade-ins and negotiate price reductions based on those valuations.[17]  As in the case of financing, a dealer may agree to a lower "price" for a new car, knowing that the allowance that it is giving for a trade-in is well below the true value of that car, and that the sale of the used car will more than make up the difference.  Conversely, a dealer may convince an end payor to pay a higher "price" for a new car by giving what at least appears to be a generous allowance for a trade-in.

Auto dealers also look to their service departments for a substantial amount of their revenues.[18]  To encourage end payors to use these repair services, auto dealers sell service and extended warranty plans to new car buyers, adding an additional premium to the total price that

---

[15] *Why You Should Never Tell a Dealer You're Paying Cash*, *available at* http://www.realcartips.com/cardealers/105-paying-for-a-car-in-cash.shtml.   The FTC, in connection with its investigation into auto dealers' fraudulent pricing and deceptive sales practices, recently filed suit against Ramey Motors, a plaintiff in this case.  The FTC alleges that Ramey Motors misrepresented "prominent costs" to its customers, such as "large down payments, vehicle trade-ins, security deposits, acquisition fees, or other up-front payments." *FTC v. Ramey Motors, Inc.*, 1:14-cv-29603, at ¶¶ 21-28, 30-32 (D.W.V. Dec. 11, 2014) (Ex. O).

[16] Levenson Declaration, ¶ 16 (Ex. J).

[17] *Car Dealer Secrets: How to Be Confident You're Getting a Fair Deal on Your Trade-In*, http://www.moneyunder30.com/how-to-be-confident-youre-getting-a-fair-deal-on-your-trade-in.

[18] *The Surprising Ways Car Dealers Make the Most Money Off You*, Feb. 29, 2012, *available at* http://www.forbes.com/sites/jimhenry/2012/02/29/the-surprising-ways-car-dealers-make-the-most-money-off-of-you/; *Why You Should Never Tell a Dealer You're Paying Cash*, *available at* http://www.realcartips.com/cardealers/105-paying-for-a-car-in-cash.shtml.

**REDACTED**

certain customers pay.[19]

Dealers pursue different strategies to maximize their total revenues, depending on their business models, management, compensation structures, customer bases, geographic locations, interest rates, and competition. The result is that the terms of two end payors' purchases of the exact same car on the exact same day may be substantially different, depending on the type and source of financing, the appraised and actual value of any trade-in, the strategies and goals of the auto dealer that each end payor visits, the sales incentives that the dealer offers to its salespeople, and the particular salesperson who sells the car.

To sufficiently understand each of the factors that affected the terms on which the auto dealers sold their various makes and models of cars over the fifteen-year class period, defendants will need sufficient Rule 30(b)(6) testimony from each auto dealer itself, as well as individual depositions of a cross-section of witnesses who handled different car brands (at different locations) and who were responsible for service warranties, financing, and trade-in valuation for each brand throughout the proposed class period.

> **3. Defendants Need Auto Dealer Testimony To Understand The Extent To Which Other Factors (e.g., The Internet, Gender, Race, Income, Education) Influenced The Amounts That End Payors Paid For New Cars**

Defendants also need depositions to understand other influences that affected the amounts that end payors paid for their cars. For example, publicly available research indicates that a consumer who uses the Internet to research or actually purchase a car typically pays less than a traditional buyer for the same car.[20] Research also shows that auto dealers often offer different terms for an identical car depending on unique customer characteristics, such as

---

[19] *Id.*

[20] Florian Zettelmeyer, Fiona Scott Morton & Jorge Silva-Risso, *Cowboys or Cowards: Why Are Internet Car Prices Lower?*, Nat'l Bureau of Econ. Research, Dec. 2001, at 4.

**REDACTED**

income, credit score, education, gender, age, and race.[21]  And a customer's stated preference for a specific maximum monthly payment also may be a driving factor in setting the terms that the dealer offers to that customer.[22]  Defendants need to understand the extent to which each auto dealer took these factors into account when it sold cars to end payors.

\*        \*        \*

The sheer number and variety of factors that influence both the terms on which auto dealers purchase cars from OEMs and the terms on which they sell them to end payors suggest that individualized issues will predominate over common issues, and neither set of plaintiffs will be able to satisfy Rule 23(b)(3).  *See, e.g., In re GPU*, 253 F.R.D. at 491, 504 (holding that class treatment is inappropriate where "a myriad of factors played a role" and "influenced the final sales price of each transaction" because the court must "scrutinize each transaction to ascertain whether the purchaser paid a supra-competitive price.")  But the Court need not make that determination now.  Defendants request only the opportunity to obtain sufficient discovery to rebut whatever showing the auto dealers and end payors attempt to make to certify each of their putative classes.  One fact witness deposition and one seven-hour Rule 30(b)(6) deposition of each auto dealer (for fifty defendants in thirty separate cases) are not nearly enough time.

**B.    The Auto Dealers' Documents And Data Will Not Be An Adequate Substitute For Deposition Testimony**

Defendants need deposition testimony from each auto dealer because the dealers' documents and data alone will not sufficiently explain the auto dealers' business practices,

---

[21] Fiona Scott Morton et al., *Consumer Information and Price Discrimination: Does the Internet Affect Pricing of new Cars to Women and Minorities?,* Nat'l Bureau of Econ. Research, Dec. 2001, at 23; Ian Ayers & Peter Siegelman, *Race & Gender Discrimination in Bargaining for a New Car*, Am. Econ. Rev., June 1995, at 319.

[22] 4 Car Dealer Tricks You Need to Know Before You Buy a Car, Jan. 23, 2015, *available at* https://smartasset.com/personal-finance/4-car-dealer-tricks-you-need-to-know-before-you-buy-a-car-3.

**REDACTED**

purchases, and sales.  In fact, the auto dealers themselves recently represented to this Court that their document productions will be "limited in temporal scope and substance by the information dealerships generally log and the information available to dealerships" and that their productions "will frequently not cover the class period."  *See* Auto Dealership Pls.' Opp'n To Direct Purchaser Pls.' Mot. To Limit Uniform Subpoena to OEMs at 1-2, No. 2:12-md-02311 (ECF No. 980).  The auto dealers are not exaggerating.  ████████████████████████████████

████████████████████████████████████████████  Although they recently agreed to produce additional documents and data (after resisting doing so for nearly two years), defendants do not expect that these additional materials will provide information for much of the alleged class period or address the majority of defendants' (and their economists') questions.[24]

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████  ██████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[23] Letter from M. Sullivan to Auto Dealer Plaintiffs' Counsel, June 12, 2015. (Ex. N).

[24] Despite the auto dealers' agreement to produce discovery, defendants do not have confidence that many of them ultimately will do so.  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

**REDACTED**

need for deposition testimony. ███████████████████████████

These are just a handful of examples from a *partial* set of data from only *two* auto

---

[25] Central GMC has not produced any data from before June 2008, and Wade Toyota has not produced any data from before late January 2012.

REDACTED

dealers.  The broader set of data that the auto dealers have committed to produce (but have not yet produced) is likely to generate substantially more questions that defendants will need to ask in depositions.  Since defendants and their experts need to understand all of the elements of each transaction to analyze the extent to which the auto dealers or end payors were impacted, and the auto dealers themselves concede that their documents and data are likely to be inadequate, defendants will need deposition testimony to supplement and explain the transactional data.

### C.    Defendants Cannot Obtain This Critical Discovery From Any Other Source

No other party can provide testimony regarding the disparate practices that each of the auto dealers employed when they purchased and sold cars over the past fifteen years, and their related costs and profitability.  The direct purchasers are Tier 1 suppliers that purchased parts from defendants and sold them to OEMs.  They had no involvement in the OEMs' sales of cars to auto dealers, or the auto dealers' sales to end payors.  The third party OEMs' documents and data (if they ultimately produce any) are likely to reflect only the terms of each car sale to a dealer, but they are not likely to reflect the dealers' ultimate costs for each car, or contain complete information relating to the dealers' sales or business practices.  Finally, none of the named end payor plaintiffs in these cases purchased cars from any of the named auto dealer plaintiffs, so defendants cannot take discovery from the end payors that relates to the auto dealers (nor would the end payors be privy to any auto dealer's internal pricing strategies in any event).

Thus, discovery from other parties cannot shed light on the inner workings of the auto dealers, or explain why a dealer agreed to the terms of a particular sale.  Only the auto dealers and their employees can provide the deposition testimony that defendants need.

### III.    THE COURT SHOULD VACATE PARAGRAPH 2 OF MASTER ESSHAKI'S ORDER REQUIRING DEFENDANTS TO DISCLOSE THEIR EXAMINATION TOPICS TO PLAINTIFFS IN ADVANCE OF RULE 30(B)(1) DEPOSITIONS

The Court should vacate Paragraph 2 of Master Esshaki's June 18 Order, in which he

**REDACTED**

ordered defendants to provide an "outline" of their examination topics to the auto dealers and end payors in advance of Rule 30(b)(1) depositions. There is no precedent or authority for the requirement, it is inconsistent with the Federal Rules, and it will cause endless and wasteful discovery disputes.

> **A.    This Court Did Not Order Defendants To Give The Auto Dealers And End Payors Advance Notice Of Examination Topics For Depositions Of Individual Fact Witnesses**

Master Esshaki's order is based on his mistaken understanding that the Court ordered defendants to disclose their list of examination topics to auto dealers and end payors in advance of individual witness depositions. He explained: "Now, I think the Judge's original ruling in the status conference in January as I remember it was that the defendants should plan on advising the plaintiffs of areas of examinations for all the parties, so I'm going to have to say it's all 30(b)(6) *and fact witnesses.*" May 26 Tr. at 9:14-19; 10: 7-9 (Ex. G) (emphasis added).

But the Court said nothing of the sort. During the January 28 status conference, the Court offered several *ideas* of ways in which the defendants in all parts cases could coordinate *with each other* on auto dealer and end payor depositions. Jan. 28 Conf. Tr. at 25:24-26:4 (Ex. D). But when asked directly whether the Court wanted defendants to submit lists of questions or topics to Master Esshaki or to the other parties, the Court left it up to defendants to coordinate among themselves. *Id.* at 36:12-14 ("You can do whatever you want.") At no time did the Court suggest that defendants provide anything *to plaintiffs* in advance of these depositions. The Court should vacate Paragraph 2 of Master Esshaki's June 18 Order on that basis.

> **B.    Master Esshaki's Order Is Inconsistent With The Federal Rules**

Alternatively, the Court should vacate Paragraph 2 of Master Esshaki's June 18 Order because it is inconsistent with the Federal Rules. Rule 30(b)(1) explicitly details the content of the notice that parties must provide in advance of a deposition: the time and place, and if known,

REDACTED

the deponent's name and address.  *See* Fed. R. Civ. P. 30(b)(1).  The Rule does not require a party to state the subject matter to be covered during the deposition.  8A Charles Alan Wright et al., *Federal Practice & Procedure* § 2106 (3d ed. 2015).

That is no accident.  Only one type of deposition, a deposition of a corporate representative under Rule 30(b)(6), requires a notice that "describe[s] with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6).  This requirement enables the corporation to identify the officer who is most appropriate to address each topic of inquiry. *Id.*; *see also Painter-Payne v. Vesta West Bay, LLC*, No. 2:12-cv-00912, 2014 WL 1599505, at *3 (S.D. Ohio Apr. 21, 2014).  Rule 30(b)(1) does not contain similar language because the party that takes an individual fact witness deposition selects the deponent.

Grafting such a requirement onto Rule 30(b)(1) would undermine the truth-seeking function of fact witness depositions by prejudicing defendants' ability to obtain spontaneous, non-coached responses to their questions regarding the witness's personal knowledge.  *See* 8B Charles Alan Wright et al., *Federal Practice & Procedure* § 2163 (explaining that "[a]t a deposition the examining party has great flexibility and can frame the questions on the basis of answers to previous questions," and "the party being examined does not have the opportunity to study the questions in advance and to consult with counsel before answering"); 8A Charles Alan Wright et al., *Federal Practice & Procedure* § 2103 ("[T]he examiner is free without advance warning to inquire about anything within the scope of discovery.").  Thus, it is not surprising that defendants are not aware of a *single case* in which any court has required a party to provide a list of examination topics for all fact witnesses in advance of their Rule 30(b)(1) depositions.

## C. Master Esshaki's Order Will Generate Unnecessary And Wasteful Discovery Disputes And Delay Depositions

Finally, the Court should vacate Paragraph 2 of the June 18 Order because it will create

REDACTED

countless discovery disputes and accomplish nothing but further delay.  Although Master Esshaki stated that he believed that the requirement would "streamline the process," May 26 Tr. at 14:2 (Ex. G), in fact, his order is likely to have the opposite effect.

The end payors and auto dealers are likely to object to the topics contained in the outlines on any number of grounds, such as vagueness, relevance, burden, or scope, and might even seek pre-emptive protective orders before any depositions take place.  Briefing these objections will take time, consume valuable court resources, and delay the depositions until after the Court has ruled.  Moreover, once the depositions finally proceed, plaintiffs presumably will have another chance to assert objections and might even instruct witnesses not to answer questions that they contend are beyond the scope of the pre-submitted outline of "areas of examination."  After each deposition, plaintiffs will have yet a third opportunity to assert that certain lines of questioning should be stricken because they were outside the scope of the outline.  None of these disputes would arise under Rule 30(b)(1)'s normal process, and nothing would be gained by using this enormous case as a test-bed for such an unprecedented and wasteful process.  The Court should vacate Paragraph 2 of Master Esshaki's June 18 Order for this reason as well.

## CONCLUSION

Defendants respectfully request that the Court modify Paragraphs 1.C and 1E of Master Esshaki's June 18 Order to allow defendants to take up to three Rule 30(b)(1) depositions and 18 hours of Rule 30(b)(6) deposition testimony of each auto dealer plaintiff (subject to increases for good cause).  Defendants also respectfully request that the Court vacate Paragraph 2 of Master Esshaki's June 18 Order and not require defendants to share examination topics with the auto dealers and end payors in advance of individual fact witness depositions under Rule 30(b)(1).

**REDACTED**

Date:  June 19, 2015                                LATHAM & WATKINS LLP

                                        By:   */s/ Marguerite M. Sullivan*
                                              Marguerite M. Sullivan
                                              LATHAM & WATKINS LLP
                                              555 Eleventh Street NW, Suite 1000
                                              Washington, DC 20004
                                              Telephone: (202) 637-2200
                                              Fax: (202) 637-2201
                                              Marguerite.Sullivan@lw.com

                                              Daniel M. Wall
                                              LATHAM & WATKINS LLP
                                              505 Montgomery Street, Suite 2000
                                              San Francisco, CA 94111
                                              Telephone: (415) 395-0600
                                              Fax: (415) 395-8095
                                              dan.wall@lw.com

                                              David D. Cross
                                              CROWELL & MORING LLP
                                              1001 Pennsylvania Avenue, N.W.
                                              Washington, D.C.  20004
                                              Tel:  202-624-2500
                                              Fax:  202-628-5116
                                              dcross@crowell.com

                                              William H. Horton (P31567)
                                              GIARMARCO, MULLINS & HORTON, P.C.
                                              101 West Big Beaver Road, Tenth Floor
                                              Troy, MI 48084-5280
                                              Telephone: 248-457-7060
                                              bhorton@gmhlaw.com

                                              *Attorneys for Defendants Sumitomo Electric*
                                              *Industries, Ltd.; Sumitomo Wiring Systems,*
                                              *Ltd.; Sumitomo Electric Wiring Systems, Inc.;*
                                              *and Sumitomo Wiring Systems (U.S.A.) Inc.*

                                              LANE POWELL PC

                                        By:   */s/Larry S. Gangnes*  (w/consent)
                                              Larry S. Gangnes
                                              LANE POWELL PC
                                              U.S. Bank Centre
                                              1420 Fifth Ave., Suite 4200
                                              P.O. Box 91302
                                              Seattle, WA 98111-9402
                                              Telephone: (206) 223-7000
                                              Facsimile: (206) 223-7107
                                              gangnesl@lanepowell.com

                                              Craig D. Bachman
                                              Kenneth R. Davis II

26

**REDACTED**

Kenneth R. Davis II
Darin M. Sands
Peter D. Hawkes
Masayuki Yamaguchi
LANE POWELL PC
MODA Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
hawkesp@lanepowell.com
yamaguchim@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone:  (248) 528-1111
Facsimile:  (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric
Co., Ltd.; and American Furukawa, Inc.*

WILMER CUTLER PICKERING HALE AND
DORR LLP

By:      */s/Steven F. Cherry*  (w/consent)
Steven F. Cherry
David P. Donovan
Brian C. Smith
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com
kurt.kastorf@wilmerhale.com

*Attorneys for Defendants DENSO International
America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.

27

**REDACTED**

24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International America, Inc.*

ARNOLD & PORTER LLP

By:   */s/James L. Cooper*  (w/consent)
James L. Cooper
Michael A. Rubin
Laura Cofer Taylor
Katherine Clemons
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
(202) 942-5000
(202) 942-5999 (facsimile)
james.cooper@aporter.com
michael.rubin@aporter.com
laura.taylor@aporter.com
katherine.clemons@aporter.com

Joanne Geha Swanson (P33594)
Fred Herrmann (P49519)
Matthew L. Powell (P69186)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
(313) 961-0200
(313) 961-0388 (facsimile)
jswanson@kerr-russell.com
fherrmann@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Defendants Fujikura Ltd. and Fujikura Automotive America LLC*

**REDACTED**

O'MELVENY & MYERS LLP

By:   */s/Michael F. Tubach*  (w/consent)
      Michael F. Tubach
      O'MELVENY & MYERS LLP
      Two Embarcadero Center, 28th Floor
      San Francisco, CA 94111
      Telephone: (415) 984-8700
      Fax: (415) 984-8701
      Mtubach@omm.com

      Michael R. Turco (P48705)
      BROOKS WILKINS SHARKEY & TURCO
      PLLC
      401 South Old Woodward, Suite 400
      Birmingham, MI 48009
      Telephone: (248) 971-1713
      Fax: (248) 971-1801
      turco@bwst-law.com

      *Attorneys for Defendants Leoni Wiring Systems,
      Inc.  and Leonische Holding Inc.*


      BUTZEL LONG

By:   */s/David F. DuMouchel*  (w/consent)
      David F. DuMouchel (P25658)
      George B. Donnini (P66793)
      BUTZEL LONG
      150 West Jefferson, Suite 100
      Detroit, MI 48226
      Telephone: (313)225-7000
      dumouchd@butzel.com
      donnini@butzel.com

      W. Todd Miller
      BAKER & MILLER PLLC
      2401 Pennsylvania Ave., NW, Suite 300
      Washington, DC 20037
      Telephone: (202)663-7820
      TMiller@bakerandmiller.com

      *Attorneys for Defendants Tokai Rika Co., Ltd.
      and  TRAM, Inc.*

**REDACTED**

PORTER WRIGHT MORRIS & ARTHUR LLP

By:   */s/ Donald M. Barnes* (w/consent)
Donald M. Barnes
Jay L. Levine
Salvatore A. Romano
John C. Monica
Molly S. Crabtree
Karri N. Allen
PORTER WRIGHT MORRIS & ARTHUR LLP
1919 Pennsylvania Ave., NW, Ste 500
Washington, DC 20006
Telephone: (202) 778-3054
Facsimile: (202) 778-3063
dbarnes@porterwright.com
sromano@porterwright.com
jmonica@porterwright.com
mcrabtree@porterwright.com
kallen@porterwright.com

*Attorneys for Defendants G.S. Electech, Inc., G.S.W. Manufacturing, Inc., and G.S. Wiring Systems, Inc.*

JENNER & BLOCK LLP

By:   /s/ Terrence J. Truax
Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
Jamie J. Janisch
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374
gaugust@zacfirm.com
jjanisch@zacfirm.com

**REDACTED**

*Attorneys for Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc.*

K&L GATES LLP

By: <u>/s/  Michael E. Martinez</u>
   Steven M. Kowal
   Lauren N. Norris
   Lauren B. Salins
   K&L GATES LLP
   70 W. Madison St.
   Suite 3100
   Chicago, IL 60602
   Telephone: (312) 807-4404
   Fax: (312) 827-8116
   michael.martinez@klgates.com
   steven.kowal@klgates.com
   lauren.norris@klgates.com
   lauren.salins@klgates.com

   William P. Jansen (P36688)
   Michael G. Brady (P57331)
   Amanda Fielder (P70180)
   WARNER NORCROSS & JUDD LLP
   2000 Town Center, Suite 2700
   Southfield, MI 48075-1318
   Telephone: (248) 784-5000
   wjansen@wnj.com
   mbrady@wnj.com
   afielder@wnj.com

*Attorneys for Defendants Chiyoda Manufacturing Corporation and Chiyoda USA Corporation*

**REDACTED**

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2015, I caused the foregoing WIRE HARNESS DEFENDANTS' OBJECTIONS TO, AND MOTION TO MODIFY, MASTER ESSHAKI'S JUNE 18, 2015 ORDER and MEMORANDUM IN SUPPORT OF THE WIRE HARNESS DEFENDANTS' OBJECTIONS TO, AND MOTION TO MODIFY, MASTER ESSHAKI'S JUNE 18, 2015 ORDER to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Marguerite M. Sullivan*
Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
+1.202.637.2200
maggy.sullivan@lw.com