# Exhibit A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | |
| THIS DOCUMENT RELATES TO: All Wire Harness Cases | 2:12-cv-00100-MOB-MKM |

## DEFENDANTS' POSITION STATEMENT REGARDING DISPUTED PROVISIONS CONTAINED IN THE PARTIES' PROPOSED DEPOSITION PROTOCOL

Defendants[1] respectfully submit this Position Statement in support of defendants' proposals regarding the provisions contained in the Proposed Joint Deposition Protocol Order on which the parties have not reached agreement. Defendants met and conferred telephonically with the direct purchaser plaintiffs, the auto dealer plaintiffs, the end payor plaintiffs, and plaintiff in the *Ford v. Fujikura* (No. 2:12-cv- 13055-MOB-MKM) action ("*Ford* Action") (collectively "plaintiffs") for approximately five months. Although the parties reached

---

[1] "Defendants" refers to American Furukawa, Inc.; Furukawa Electric Co., Ltd.; DENSO Corporation; DENSO International America, Inc.; Fujikura Automotive America LLC; Fujikura Ltd.; G.S. Electech, Inc.; G.S.W. Manufacturing, Inc.; G.S. Wiring Systems, Inc.; Leoni Wiring Systems, Inc.; Leonische Holding Inc.; Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; Sumitomo Wiring Systems (U.S.A.) Inc.; Tokai Rika Co., Ltd.; TRAM, Inc.; Yazaki Corporation; and Yazaki North America, Inc. "Defendants" does not include the recently named defendants Chiyoda Manufacturing Corporation, Chiyoda USA Corporation, Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. as the Court has not yet ruled on the viability of plaintiffs' claims against those defendants.

agreement on most issues, six provisions in the protocol remain in dispute: (1) whether plaintiffs named in more than one auto parts case may be deposed more than once in the entire Auto Parts MDL; (2) limits on depositions of direct purchaser and auto dealer plaintiffs; (3) whether more than one auto dealer deposition may occur on a single day; (4) the time permitted for Rule 30(b)(6) depositions that require interpretation; (5) the number of Rule 30(b)(6) notices that defendants may serve on the auto dealer plaintiffs; and (6) whether an interpreter retained by a defense counsel to provide interpretation services during the preparation of a witness for deposition may be retained by the same counsel to assist counsel as a check interpreter for that deposition. Certain disputes are with only certain of the plaintiffs. Defendants submit this position statement to address defendants' proposals. Defendants' [Proposed] Order Regarding Deposition Protocol submitted herewith provides the defendants' proposals on each of these issues (attached hereto as Exhibit A). Defendants request a mediation with the Special Master at the earliest opportunity.

**I.    DISPUTE 1: COORDINATION OF DEPOSITIONS OF PLAINTIFFS NAMED IN MORE THAN ONE AUTO PARTS CASE**

Defendants have committed to using their "best efforts" to coordinate with the parties in other pending auto parts cases to avoid duplicative depositions of plaintiffs named in more than one case. Defendants propose the following language:

> In the event that a named plaintiff in the Wire Harness Cases is also a named plaintiff in another Auto Part Product case, or cases, Defendants shall use their best efforts to coordinate with the defendants in that other Auto Part Product case, or cases, to avoid duplicative depositions of that named plaintiff in multiple cases. In order to effectuate this paragraph, the plaintiff shall make available to the Examining Party any documents or interrogatory responses from that named plaintiff relating to the other Auto Part Products, to the extent that such information and documents have not already been provided sufficiently in advance of the deposition to permit a proper examination and the parties shall meet and confer to seek agreement on reasonable additional time limits, if

2

necessary, for such depositions.

Defendants' proposal is consistent with the Court's statements regarding depositions during the October 8, 2014 status conference. The Court instructed the parties to attempt to "not duplicate discovery." Oct. 8, 2014 Hearing Transcript ("Hr'g Tr.") at 86:14. With respect to the number of depositions of plaintiffs, the Court stated: "[i]t certainly may be that somebody is deposed twice, two or three [times] -- I mean, there are things that we can't control but those things that are within their control and we can proceed now with wire harness and we will work with an effort to not duplicate." Hr'g Tr. at 86:17-21. Defendants' proposal that the parties work collaboratively to avoid duplicative depositions is precisely what the Court envisioned.

Despite the Court's statements, the auto dealer and end payor plaintiffs continue to insist instead that none of those plaintiffs should be required to sit for more than a single deposition across all 29 cases in the auto parts MDL. There are several problems with the auto dealer and end payor plaintiffs' proposal. First, this is a *wire harness* protocol, and cannot and should not bind parties in other unrelated cases (none of whom have participated, or are even in a position to participate, in negotiations regarding the protocol's scope and terms).

Second, plaintiffs' proposal would significantly delay depositions in, and the ultimate resolution of, this case. Most of the other auto parts cases are years behind the Wire Harness Cases. In many cases, plaintiffs have not served complaints on all defendants, they have not filed amended complaints (and thus, may still name additional defendants), and the Court has not ruled on motions to dismiss, or even determined whether it has jurisdiction over foreign entity defendants. To enable the parties in those cases to adequately participate in depositions of plaintiffs in the Wire Harness Cases, defendants would have to wait years to take those depositions until the later cases caught up. That result would be inconsistent with the Court's instructions at the last status conference to begin depositions and proceed to class certification in

the Wire Harness Cases now. Hr'g Tr. at 80:24-81:12.

Plaintiffs' depositions are not only critical to class certification, but they are also likely to be the basis for summary judgment motions, and thus have the potential to narrow the issues in dispute in this case. For example, defendants expect that the depositions will reveal that many plaintiffs cannot establish the impact element of their claims because either they did not purchase allegedly price-fixed products at all, or they did not pay higher prices than they would have paid absent the alleged conspiracy. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 632 F. Supp. 2d 42, 50, 63 (D. Me. 2009) (granting summary judgment because plaintiffs failed to establish that they paid artificially inflated prices); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 n. 18, 27-28 (1st Cir. 2008) ("The element of injury in the antitrust context … is the *causal link* between the antitrust violation and the damages sought by plaintiffs." (emphasis added)). Delaying depositions would merely postpone the Court's determination of these threshold issues.

Third, plaintiffs' proposal would require defendants to allot time (a potentially significant amount of time) in each end payor and auto dealer deposition for examination on topics that are not relevant at all to the Wire Harness Cases. Both the auto dealer and the end payor plaintiffs allege that they paid artificially inflated prices for replacement parts. To explore that allegation, defendants in each case will need to inquire into those parties' purchases, and the auto dealer plaintiffs' sales, of the specific replacement part products that are at issue in that case. If all parties in all cases were required to participate in a single deposition, defendants in the Wire Harness Cases would have to allow time in every deposition for examination on all 28 of the other products. Since every deposition has time limits – and indeed, the auto dealer plaintiffs are seeking to impose severe limits on the number and duration of their depositions – plaintiffs'

proposal would deprive defendants of their full time with each witness.

Finally, plaintiffs' proposal is logistically unworkable. Putting aside the difficulties that the parties would face just to enable the more than three dozen separate corporate families in the Auto Parts MDL to attend and participate in each deposition, even if only one attorney from each product case questioned plaintiffs on behalf of the defendants in that case, there would be multiple different examining attorneys in each deposition. Depositions would be extremely difficult to schedule, unwieldy, and incredibly inefficient.

Defendants' proposal, by contrast, is reasonable, promotes efficiency, and protects the interests of all parties. Defendants are confident that the parties can work together to streamline deposition discovery across the Auto Parts MDL and maximize efficiency in these cases where it makes sense to do so. For example, defendants expect to conduct only one deposition of each plaintiff across at least the first four cases (wire harnesses, heater control panels, instrument panel clusters, and fuel senders) because those cases are all in discovery and they involve some of the same defendants. And defendants will use their best efforts to coordinate with defendants in the other product cases as well (including by sharing deposition outlines and transcripts), and will avoid duplication whenever practical. The Court should reject the end payor and auto dealer plaintiffs' proposal and enter defendants' proposed language.

## II. DISPUTE 2: NUMBER OF 30(B)(1) DEPOSITIONS AND TIME FOR 30(B)(6) TESTIMONY OF DIRECT PURCHASER AND AUTO DEALER PLAINTIFFS

Defendants request up to five 30(b)(1) depositions and 21 hours of 30(b)(6) testimony of each corporate plaintiff (other than Ford, which has agreed to eight 30(b)(1) depositions and 21 hours of 30(b)(6) testimony). Although defendants may not ultimately use all of that time, defendants' proposal is reasonable, given the breadth of plaintiffs' claims, the fact that many of these plaintiffs are large, sophisticated entities, and the dearth of documentary discovery that

plaintiffs have produced to date (or may ever be able to produce). Plaintiffs (other than Ford), however, insist on less deposition time. The direct purchaser plaintiffs propose no more than two 7 hour 30(b)(1) depositions and one 30(b)(6) deposition, not to exceed 7 hours, of any direct purchaser plaintiff. The auto dealer plaintiffs similarly propose two 30(b)(1) depositions and one 30(b)(6) deposition, not to exceed 7 hours, but they also demand that the total hours of all 3 depositions not exceed 15 hours for each named auto dealer plaintiff. Plaintiffs' proposed restrictions disregard the massive conspiracy that they have alleged and would prohibit defendants from adequately defending against plaintiffs' claims.

Plaintiffs allege a global conspiracy to fix the prices of and rig the bids for 13 different wire harness products[2] sold by every defendant to every automobile manufacturer in the world over at least a 10 year period. They claim that the alleged conspiracy impacted all of their purchases of all wire harness products (whether purchased as replacement parts or installed in cars) during the relevant time period.[3]

To establish their claims, plaintiffs must prove not only that there was an illegal conspiracy as to each wire harness product, but also that they suffered injury to their business or property caused by the conspiracy. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488-89 (1977). The first requirement – injury to business or property – is called "impact" or "the fact of damage," and it requires plaintiffs to prove that they paid higher prices than they

---

[2] Plaintiffs include in their definition of Wire Harness Products automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, high voltage wiring and power distributors.

[3] Auto dealer plaintiffs claim that all purchases from January 1, 1999 through October 17, 2014 were impacted; direct purchaser plaintiffs claim that all purchases from January 1, 2000 through September 9, 2014 were impacted. See Direct Purchaser's Third Consolidated Amended Complaint ("DP Complaint") at 3, Auto Dealerships' Third Consolidated Class Action Complaint ("AD Complaint") at 4.

otherwise would have paid for each product. *See Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982) ("[E]ach plaintiff seeking to recover damages due to an alleged price-fixing conspiracy must show with certainty that he made purchases of a price-fixed product at a price raised by reason of the illegal agreement above the competitive level that otherwise would have prevailed."). Because the auto dealer and end payor plaintiffs' claims are indirect, as the Court explained in its rulings in June 2013, those plaintiffs must also prove that the direct purchaser plaintiffs (and every other reseller in the distribution chain) passed on some or all of those overcharges, such that the indirect purchaser plaintiffs also paid more than they otherwise would have paid for the replacement parts and cars that they bought. *See In re Automotive Parts Antitrust Litig.*, Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456612, at *8 (E.D. Mich. June 6, 2013).

Moreover, since plaintiffs purport to represent classes of purchasers, in addition to establishing the impact element of their claims, they also must establish that their claims are appropriate for class-wide treatment under the "rigorous analysis" that Rule 23 requires. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1078-79 (6th Cir. 1996). Among other things, plaintiffs must show that their claims are "typical of the claims or defenses of the class," such that they can "adequately protect the interests of the class," and that common issues predominate over issues that are unique to each individual plaintiff. Fed. R. Civ. P. 23(a)(3)-(4), (b)(3). To the extent that plaintiffs within each putative class are differentially situated because, for example, they purchased different products from different suppliers at different times, employed different procurement processes, exercised various degrees of bargaining power or engaged in individual negotiations, they may not be able to satisfy those requirements.

Thus, to defend against plaintiffs' claims as to liability and class certification, defendants must inquire into the direct purchaser and auto dealer plaintiffs' purchases and sales of each of the 13 wire harness products and, in the case of the auto dealer plaintiffs, every car that contained a wire harness product throughout the relevant period. Defendants will need to understand the processes that each plaintiff employed to acquire and sell each wire harness product or vehicle, and whether those processes differed depending on the type of product or vehicle purchased. Defendants will need to explore how each plaintiff calculated and negotiated prices with its suppliers for each product or vehicle, and examine the extent to which deep discounts, special rates, incentives, individual negotiations, or other factors affected the prices that each plaintiff paid or charged for each product or vehicle that it purchased or sold.

Obtaining all of this critical information will be no small task. To start, many of the direct purchaser and auto dealer plaintiffs are extremely large entities.[4] Some have hundreds of employees and/or are part of large franchises, and some purchase and sell cars manufactured by up to five different OEMs. For example, auto dealer plaintiff Commonwealth Motors sells cars manufactured by GM, Nissan, Honda, Kia, and Volkswagen and employs more than 300 people.[5] Auto dealer plaintiff VIP Motor Cars Ltd sells cars manufactured by BMW, Mercedes-

---

[4] Defendants plan to take the testimony that is necessary for their defenses. In the event that a corporate entity has so few employees and makes so few sales that less than five 30(b)(1) depositions or 21 hours is required to obtain the necessary information, defendants may not need to take the full 21 hours of 30(b)(6) testimony. Indeed, the protocol provides that each party can seek protection from the Court if a particular deposition or number of depositions are not appropriate for a specific party. See Stipulation And [Proposed] Order Regarding Deposition Protocol at Section III.A.7. But that possibility should not preclude defendants from limits that allow them the full discovery that they need and are entitled to from the numerous larger and more sophisticated entities, especially where that discovery is fair in light of the discovery defendants have agreed to provide to plaintiffs.

[5] Press Release, Commonwealth Motors, *Commonwealth Motors 20 Years of Sales, Community Service in Lawrence MA* (Oct. 24, 2014), *available at* http://www.pr.com/press-release/588653.

Benz, Infiniti, and Hyundai.[6]  And direct purchaser plaintiff Martinez Manufacturing has more than 150 employees.[7]  These are not "mom-and-pop shops," as plaintiffs would like the Court to believe.

It is likely that companies of this size have separate teams for procurement and sales, and within each, different groups of employees likely handle different types of products and different auto manufacturers' cars.  The same individuals who purchase cars from OEMs may not be the same people who are responsible for replacement parts, and the employees who are charged with managing inventory for replacement parts for new cars may not be the same employees who manage replacement parts for legacy cars.  Moreover, defendants will need to examine both corporate representatives and, potentially, individual witnesses, on all of these areas covering the entire 15 year time period during which plaintiffs' claim they were injured.[8]  One fact witness deposition and two Rule 30(b)(6) depositions is simply not enough time.

That is particularly true in light of the dearth of documentary discovery that defendants have received from the direct purchaser and auto dealer plaintiffs to date.  The direct purchaser plaintiffs have collectively produced only 106,549 pages (not documents, but pages), one has produced no documents, and two have produced less than 600 pages each.  The 46 auto dealer

---

[6] Third Consolidated CAC, ¶38.

[7] Manta.com, *Martinez Manufacturing Inc.,* http://www.manta.com/c/mmg7vkr/martinez-manufacturing-inc (last visited Jan. 12, 2015).

[8] Many of the auto dealer plaintiffs have been in operation for the entire class period.  *See e.g.* auto dealer plaintiff Bonneville & Son, Inc., operating for more than 50 years (Bonneville & Son, Inc., http://www.bonnevilleson.net/dealership/about.htm (last visited Jan. 12, 2015)); auto dealer plaintiff Hodges Imported Cars, Inc. d/b/a Hodges Subaru, operating for 40 years (Hodges Subaru, http://www.hodgessubaru.com/dealership/aboutus.htm (last visited Jan. 12, 2015)); direct purchaser plaintiff Craft-Co Enterprises, Inc., operating for 26 years (Bloomberg Businessweek, *Company Overview of Craft-Co Enterprises,* http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=6718602 (last visited Jan. 12, 2015)).

plaintiffs have collectively produced only 228,887 pages total, and 19 of them have produced no documents at all. Moreover, with limited exception, the auto dealer plaintiffs' combined production to date is responsive to only two of the defendants' 52 requests for production. With respect to transactional data, the auto dealer plaintiffs have not yet produced any data, nor have they even informed defendants whether the data that defendants have requested exists or will be produced. Thus, defendants have received very little discovery from plaintiffs thus far, and have no confidence based on representations made by plaintiffs to date, that they will receive sufficient written discovery at any point in the case. Thus, depositions will be critical.

The one direct purchaser plaintiff who has produced no documents provides an example of why depositions of plaintiffs are so important in this case. Direct purchaser plaintiff Findlay ("Findlay") is able to produce only a limited amount of transactional data, and due to document retention issues, no documents exist for Findlay to produce.[9] Given the dearth of written discovery available, the primary source of information for direct purchaser plaintiff Findlay will be deposition testimony. There are likely to be similar holes in the information that other corporate plaintiffs have managed to retain, and those holes will need to be filled through depositions.

Defendants' proposal of five 30(b)(1) depositions and 21 hours of 30(b)(6) depositions is reasonable and appropriate under the circumstances.

---

[9] Findlay maintained its electronically stored information ("ESI") on an outdated, unstable server, which failed. Prior to the failure, a limited amount of the company's ESI had been transferred to a virtual server. Direct purchaser plaintiffs' counsel is conducting a supplemental review to confirm that no responsive documents are contained therein, and they have confirmed that no hard copy documents exist. Findlay's counsel, with assistance from a vendor, was able to restore a limited amount of Findlay's transactional data, which direct purchaser plaintiffs produced.

## III. DISPUTE 3: NUMBER OF AUTO DEALER GROUP DEPOSITIONS THAT MAY OCCUR ON THE SAME DAY

The parties agree that to complete discovery in this case as promptly and efficiently as possible, the parties may need to conduct more than one deposition on any given day. Recognizing that double- and triple- tracking depositions of a single entity or corporate family would be logistically difficult and would unfairly burden that party, all parties except the auto dealer plaintiffs have agreed that no more than one witness from any related entity may be deposed on the same day. This proposal would allow the parties to depose more than one witness from the direct purchaser plaintiff group or from the defendants on the same day as long as the witnesses are not from the same or a related corporate entity.

The auto dealer plaintiffs agree that double-tracking and triple-tracking may be necessary, but they insist that no two auto dealer plaintiff depositions can occur on the same day, regardless of whether the witnesses are related to the same or different dealers. There are 46 auto dealers named as plaintiffs, and, although the number remains in dispute, there will be several depositions of each dealer. When combined with the 112 30(b)(1) depositions and 168 hours of 30(b)(6) depositions that defendants have agreed to give, the 55 end payor plaintiff depositions and the direct purchaser plaintiff depositions, the parties are expecting to take hundreds of depositions in this case. Imposing a restriction that no two auto dealer plaintiff witnesses may be deposed on the same day would accomplish nothing but delay.

Four law firms represent the auto dealer plaintiffs, and the Court appointed those firms as co-lead counsel for the auto dealer class because the Court concluded that they had the resources to adequately represent the class. In fact, those firms represented explicitly that they understood the "immense complexities of [this] litigation" and were "capable of committing the resources

needed" and had "the ability to dedicate significant staffing" to it."[10]   There is thus no basis for the restriction that the auto dealer plaintiffs have proposed.  The Special Master should enter the provision that all other parties propose.

## IV.   DISPUTE 4:      TIME  FOR  30(B)(6)  DEPOSITIONS  REQUIRING  AN INTERPRETER

The  Initial  Discovery  Plan  provides  that  Rule  30(b)(1)  depositions  that  require interpretation  will  be  expanded  from  seven  to  12  hours.   Defendants  propose  that  the  same arrangement apply to Rule 30(b)(6) depositions.  Inexplicably, however, plaintiffs have decided to treat Rule 30(b)(6) depositions differently, and are proposing doubling any time during a Rule 30(b)(6) deposition that requires translation. (*i.e.*, seven hours would be expanded to 14; 21 hours would be expanded to 42).

Plaintiffs  have  offered  no  basis  for  treating  Rule  30(b)(6)  depositions  differently,  nor demonstrated any need for the extension of this time.  Defendants have agreed to provide a significant amount of 30(b)(6) testimony to plaintiffs, and propose that the extension of time for any portions of the 30(b)(6) depositions that need to be translated should be in keeping with the ratio set forth in the Initial Discovery Plan for 30(b)(1) depositions.

---

[10] Mem. re Mot. to Consolidate Cases for Leave to File Consolidated Class Complaint Instanter and to Appoint Interim Class Counsel for Automobile Dealer Indirect Purchasers at 14, *In re Automotive Parts Antitrust Litig.,* No. 12-md-02311 (E.D. Mich. Feb. 27, 2012), ECF No. 6; Decl. of Jonathan W. Cuneo, Ex. E to Mem. re Mot. to Consolidate Cases for Leave to File Consolidated Class Complaint Instanter and to Appoint Interim Class Counsel for Automobile Dealer Indirect Purchasers at 3-4, *In re Automotive Parts Antitrust Litig.,* No. 12-md-02311 (E.D. Mich. Feb. 27, 2012), ECF No. 6-6; Decl. of Shawn M. Raiter, Ex. G to Mem. re Mot. to Consolidate Cases for Leave to File Consolidated Class Complaint Instanter and to Appoint Interim Class Counsel for Automobile Dealer Indirect Purchasers, *In re Automotive Parts Antitrust Litig.,* No. 12-md-02311 (E.D. Mich. Feb. 27, 2012), ECF No. 6-8.

## V. DISPUTE 5: 30(B)(6) NOTICES DEFENDANTS CAN SERVE ON AUTO DEALER PLAINTIFFS

All parties, except the auto dealer plaintiffs, agree that each side may serve on the parties on the other side two non-duplicative notices that identify the topics on which the serving side seeks Rule 30(b)(6) testimony. The auto dealer plaintiffs, however, maintain that they should be entitled to serve two such notices on any defendant group, but that defendants may only serve *one* notice on any auto dealer plaintiff. The auto dealer plaintiffs' position is, again, unreasonable.

As discussed above, Rule 30(b)(6) testimony will be critical to enable defendants to obtain the discovery necessary to determine, at a minimum, whether any auto dealer plaintiff was impacted by the alleged conspiracy, and whether the named auto dealer plaintiffs' claims are typical of those of the members of the putative auto dealer class. Despite that many of the auto dealer plaintiffs are large and sophisticated entities, they have produced very little, if any, discovery to date. If defendants were limited to a single notice covering all Rule 30(b)(6) topics for each auto dealer, defendants would have to wait until much later in discovery to even begin taking Rule 30(b)(6) testimony from these plaintiffs. They could not risk serving a notice now, only to be precluded from serving a later notice when they discover additional topics.

There is no basis to delay this critical discovery. The other parties have all agreed to a limit of two Rule 30(b)(6) notices, precisely so that the parties may begin to take these depositions now, without precluding themselves from taking additional depositions later after all parties have exchanged additional discovery. The same provision should apply to the auto dealer plaintiffs.

## VI.   DISPUTE   6:   PARTICIPATION   OF   CHECK   INTERPRETER   IN PREPARATION OF WITNESS FOR DEPOSITION

The parties dispute whether interpreters retained by defense counsel to perform interpretation services during preparation sessions relating to a witness's deposition may be retained by defense counsel to play any role in the deposition itself.  Plaintiffs maintain that any interpreter that is involved in any way in the preparation of a witness may play no role at all in that witness's deposition.  Because the role of any interpreter is to objectively and accurately interpret the words that a witness speaks, and no more, an interpreter's involvement in a witness's preparation should not have any bearing on that individual's ability to interpret during a deposition.  However, in the spirit of compromise, defendants only request that an interpreter that interprets during a witness's preparation be permitted to act as a *check* interpreter, not as a *lead* interpreter.

The distinction between the two types of interpreters is important.  A lead interpreter is responsible for creating the official record of the deposition and has the discretion to decide whether to correct any translation in the event that a dispute arises.  By contrast, a check interpreter's role during a deposition is confined to identifying potential inaccuracies in translations, assisting defense counsel with the permitted examination of foreign-language documents that the examining party attempts to use without translation, and assisting defense counsel with interpretation to the extent that counsel needs to consult with a witness during a deposition.  The parties' joint Protocol prohibits check interpreters from having any interaction with the lead interpreter except in the event that the check interpreter believes that a proposed correction to a translation is necessary.

Despite the limited role of check interpreters, plaintiffs' position is that even they should be prohibited from interpreting during the preparation of a witness. There is no legal support for plaintiffs' position, and it would be unduly expensive and extremely difficult to implement.

Defendants are not aware of a single case in which a court has prohibited an interpreter who interprets during a preparation session from participating in any way in the deposition. Courts either impose no restrictions at all on interpreters, *see* Order re Deposition Protocol at 7, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827, (N.D. Cal. Feb. 7, 2010), ECF No. 1546 (placing no restrictions on interpreter participation), or, at most, they limit an interpreter who interpreted during a witness's preparation from acting as the lead interpreter for that witness's deposition. Order re Deposition Protocol No. 2 at 3, *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143 (N.D. Cal. Sept. 23, 2013), ECF No. 1002 (preventing the *lead interpreter* from participating in the preparation of the deponent); Report and Recommendation re: Modification of Section VII.A. of Order re Discovery and Case Management Protocol (Deposition Interpreters) at 1, *In re Cathode Ray Tubes (CRT) Antitrust Litigation*, No. 3:07-cv-05944, (N. D. Cal. Mar. 12, 2013), ECF No. 1592 (prohibiting the "official interpreter" in a deposition from participating in preparation of that witness, but imposing no such restriction on check interpreters).

Plaintiffs' proposed restriction also would add unnecessary expense and complication to an already massive endeavor. Defendants have agreed to give up to 105 30(b)(1) depositions and up to 147 hours of Rule 30(b)(6) testimony of Japanese defendants. Plaintiffs' proposal would require not just 2, but 3 different interpreters – one lead, one check, and one for witness preparation – for every deposition. Because a check interpreter would not be permitted to interpret communications between counsel and the witness during breaks or during preparations

between deposition days, each defendant would have to have two interpreters on hand (a check interpreter and a preparation interpreter) for every deposition that requires interpretation. And to be effective, every interpreter, regardless of his or her role, will need to be educated on relevant names and commonly used terms in the wire harness industry, which will be time consuming and expensive enough without adding a third interpreter for every deposition.

Moreover, in addition to the enormous additional expense required, given the large number of depositions that the parties will take in this case and the condensed time period during which the parties need to complete them, double- and triple- tracking is likely, and defendants may have difficulty even identifying enough talented interpreters to fill this need.

The Court should reject plaintiffs' restriction on the participation of check interpreters in deposition preparation, and adopt defendants' proposed language.

LATHAM & WATKINS LLP

Dated: January 12, 2015    By:    /s/ Marguerite M. Sullivan (w/ consent)
Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Fax: (202) 637-2201
Marguerite.Sullivan@lw.com

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-0600
Fax: (415) 395-8095
dan.wall@lw.com

David D. Cross
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202-624-2500
Fax: 202-628-5116
dcross@crowell.com

16

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060
bhorton@gmhlaw.com

*Attorneys for Defendants Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; and Sumitomo Wiring Systems (U.S.A.) Inc.*

JONES DAY

By:  */s/ John M. Majoras* (w/ consent)
John M. Majoras
Carmen G. McLean
Kristen Lejnieks
Tiffany Lipscomb-Jackson
JONES DAY
51 Louisiana Ave. N.W.
Washington, D.C. 20001-2113
(202) 879-3939
(202) 626-1700 (facsimile)
jmmajoras@jonesday.com
cgmclean@jonesday.com
Michelle K. Fischer
Stephen J. Squeri
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939
(216) 579-0212 (facsimile)
mfischer@jonesday.com
sjsqueri@jonesday.com

*Attorneys for Defendants Yazaki Corporation and Yazaki North America, Inc.*

LANE POWELL PC

By:  */s/Larry S. Gangnes* (w/consent)
Larry S. Gangnes
LANE POWELL PC
1420 Fifth Ave., Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
gangnesl@lanepowell.com

17

Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Tanya Durkee Urbach
Peter D. Hawkes
Masayuki Yamaguchi
LANE POWELL PC
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
urbacht@lanepowell.com
hawkesp@lanepowell.com
yamaguchim@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone:  (248) 528-1111
Facsimile:  (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric Co., Ltd.; and American Furukawa, Inc.*

WILMER CUTLER PICKERING HALE AND DORR LLP

By:     */s/Steven F. Cherry*  (w/consent)
        Steven F. Cherry
        David P. Donovan
        Brian C. Smith
        Kurt G. Kastorf
        WILMER CUTLER PICKERING HALE AND DORR LLP
        1875 Pennsylvania Avenue, N.W.
        Washington, D.C. 20006
        Telephone: (202) 663-6000
        Fax: (202) 663-6363
        steven.cherry@wilmerhale.com
        david.donovan@wilmerhale.com
        brian.smith@wilmerhale.com
        kurt.kastorf@wilmerhale.com

18

*Attorneys for Defendants DENSO International America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International America, Inc.*

ARNOLD & PORTER LLP

By:      */s/James L. Cooper*  (w/consent)
James L. Cooper
Michael A. Rubin
Laura Cofer Taylor
Katherine Clemons
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
(202) 942-5000
(202) 942-5999 (facsimile)
james.cooper@aporter.com
michael.rubin@aporter.com
laura.taylor@aporter.com
katherine.clemons@aporter.com

Joanne Geha Swanson (P33594)
Fred Herrmann (P49519)
Matthew L. Powell (P69186)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI  48226
(313) 961-0200
(313) 961-0388 (facsimile)
jswanson@kerr-russell.com
fherrmann@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Defendants Fujikura Ltd. and Fujikura Automotive America LLC*

19

O'MELVENY & MYERS LLP

By:    */s/Michael F. Tubach*  (w/consent)
Michael F. Tubach
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Fax: (415) 984-8701
Mtubach@omm.com

Michael R. Turco (P48705)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1713
Fax: (248) 971-1801
turco@bwst-law.com

*Attorneys for Defendants Leoni Wiring Systems, Inc. and Leonische Holding Inc.*

BUTZEL LONG

By:    */s/David F. DuMouchel*  (w/consent)
David F. DuMouchel (P25658)
George B. Donnini (P66793)
BUTZEL LONG
150 West Jefferson, Suite 100
Detroit, MI 48226
Telephone: (313)225-7000
dumouchd@butzel.com
donnini@butzel.com

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Telephone: (202)663-7820
TMiller@bakerandmiller.com

*Attorneys for Defendants Tokai Rika Co., Ltd. and TRAM, Inc.*

PORTER WRIGHT MORRIS & ARTHUR LLP

By:   */s/ Donald M. Barnes* (w/consent)
Donald M. Barnes
Jay L. Levine
Salvatore A. Romano
John C. Monica
Molly S. Crabtree
Karri N. Allen
PORTER WRIGHT MORRIS & ARTHUR LLP
1900 K Street, NW, Ste 1100
Washington, DC 20006
Telephone: (202) 778-3054
Facsimile: (202) 778-3063
dbarnes@porterwright.com
sromano@porterwright.com
jmonica@porterwright.com
mcrabtree@porterwright.com
kallen@porterwright.com

*Attorneys for Defendants G.S. Electech, Inc., G.S.W. Manufacturing, Inc., and G.S. Wiring Systems, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2015, I caused the foregoing Defendants' Position Statement Regarding Disputed Provisions Contained in the Parties' Proposed Deposition Protocol to be electronically filed with the Clerk of the Court using the CM/ECF system and I have provided all other parties a copy of the proposed order by e-mail.

By: _/s/ Marguerite M. Sullivan_
Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
+1.202.637.2200
maggy.sullivan@lw.com