# Exhibit F

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3                            —   —   —

 4    IN RE:  AUTOMOTIVE PARTS
      ANTITRUST LITIGATION
 5                                     Case No. 12-md-02311
                    MDL NO. 2311
 6                                     Hon. Marianne O. Battani

 7
                   HEARING REGARDING DEPOSITION PROTOCOL
 8
                   BEFORE SPECIAL MASTER GENE J. ESSHAKI
 9            Theodore Levin United States Courthouse
                   231 West Lafayette Boulevard
10                      Detroit, Michigan
                     Wednesday, May 6, 2015
11

12

13    APPEARANCES:
      Direct Purchaser Plaintiffs:
14
      STEVEN A. KANNER
15    FREED, KANNER, LONDON & MILLEN, L.L.C.
      2201 Waukegan Road, Suite 130
16    Bannockburn, IL  60015
      (224) 632-4502
17

18    SARAH GIBBS LEIVICK
      KASOWITZ, BENSON, TORRES & FRIEDMAN, L.L.P.
19    1633 Broadway
      New York, NY  10019
20    (212) 506-1765

21
      EUGENE A. SPECTOR
22    SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
      1818 Market Street, Suite 2500
23    Philadelphia, PA  19103
      (215) 496-0300

24
            To obtain a copy of this official transcript, contact:
25              Robert L. Smith, Official Court Reporter
                (313) 964-3303 • rob_smith@mied.uscourts.gov
```

1          MR. CHERRY:  It is resolved by stipulation.

2          MASTER ESSHAKI:  Then that the dealerships' motion

3    to resolve defendants' motion to compel downstream is gone?

4          MS. ROMANENKO:  Same, resolved by stipulation.

5          MASTER ESSHAKI:  And that's in both the auto dealer

6    cases and the end payor cases?

7          MS. ROMANENKO:  Yes.

8          MASTER ESSHAKI:  So what's left before me today is

9    the defendants' expedited motion to compel DMS data?

10          MR. CHERRY:  That's also resolved by our

11    stipulation.

12          MASTER ESSHAKI:  So I have nothing on my original

13    agenda left, and the only thing that we are going to discuss

14    is the deposition protocol?

15          MR. CHERRY:  Yes.

16          MS. SULLIVAN:  Your Honor, Marguerite Sullivan on

17    behalf of the Sumitomo defendants.

18          We have a number of topics to go through with you

19    today but --

20          MASTER ESSHAKI:  Ms. Sullivan, before you start

21    I've been troubled by this and I want you to just -- let you

22    know my thoughts.  Okay.

23          My recollection is not always 100 percent clear but

24    as I remember we worked on a deposition protocol, we came

25    very clearly to a solution, there were some open issues that

1    I ruled upon, and subsequent to that we had our status

2    conference, and at the status conference quite frankly,

3    Judge Battani, in my mind, upset the apple cart of what I had

4    been doing, and I recognized it.  I want to read to you some

5    of the notes that I have from that proceeding because it

6    relates very much to what we are doing today.  It was you and

7    Ms. Romanenko that were arguing about the auto-dealer

8    plaintiffs and the end-payor plaintiffs, as well as

9    Mr. Williams.

10           With respect to the deposition protocol, the deps

11   of end payors, each plaintiff, each part, according to

12   Judge Battani, the deposition of each end payor for each part

13   is an impossibility.

14           Next, the end-payor plaintiffs and auto-dealer

15   plaintiffs buy cars, they do not buy parts, so that the basic

16   information needed across the board should be the same

17   whether it is for wire harness parts or it is for control

18   panels, such that an outline of questions could and should be

19   prepared for all parts, for all defendants, to be asked of

20   the end payors and the automobile dealers.  Take one dep of

21   an auto dealer and an end payor with pre-approved questions.

22   Need a script, pre-approved script.

23           She said discovery will be on hold until all

24   defendants are in the case.  As far as deps, no deps are to

25   go on as to any party.  They must be conducted on behalf of

1    all defendants in a single dep.  You will need to prepare a

2    template with common questions and determine who is going to

3    conduct the deps.  The defendants are to have 45 days within

4    which to prepare the template and decide who is going to

5    examine the witness.

6            The depositions will be useable in all of the

7    cases, and if there are any special questions that any

8    particular defendant wants to have asked they are to submit

9    them to me and to determine whether they should be included

10   in that particular person's deposition.

11           Now, those are the end of my notes with respect to

12   the deposition protocol.  I then issued what I thought was a

13   proper clarification order that said the prior order that I

14   made really was no longer valid because of what Judge Battani

15   indicated in our status conference, and that there is going

16   to be a deposition protocol that stretches across all cases,

17   literally that's what she said, there is not going to be a

18   wire harness protocol, there is not going to be a bearing

19   protocol, there is not going to be wipers protocol, it is one

20   protocol stretching across all cases when you are dealing

21   with the auto-dealer plaintiffs and dealing with end-payor

22   plaintiffs because all they did was buy, sell and purchase a

23   car.

24           So the data that you will receive from each of

25   those different parties, the dealers and the end payors, will

1    be the same no matter if you are asking the question on

2    behalf of the wire harness defendants or the bearings

3    defendants.  That's what we need to do.

4           MS. SULLIVAN:  So, Master Esshaki, I think the key

5    there is your statement just now that this all applies when

6    you are dealing with end-payor plaintiffs and auto-dealer

7    plaintiff witnesses.

8           So what the issue was that Judge Battani addressed

9    during the hearing, it was a concern that she had that the

10   end payors and the auto dealers had raised previously in our

11   October hearing, it was a concern about defendants in

12   multiple auto parts cases taking duplicative depositions of

13   the same plaintiff witnesses over and over and over again,

14   that was actually the words that the auto-dealer plaintiffs

15   used in October.  They were concerned about the same auto

16   dealer witness being examined over and over and over again in

17   29 cases.

18          And so Judge Battani raised the concern at the

19   January 28th status conference and the way she phrased it was

20   she said I'm concerned about an issue, do you take

21   depositions of these plaintiffs in each part case?  Again,

22   her concern was do you have duplicative, repetitive

23   depositions where you are asking the same plaintiffs the same

24   questions effectively over and over and over again.  And so

25   there was a back and forth really about that issue, and her

```
 1   ruling was no, you cannot do that, you cannot take
 2   duplicative depositions of the end-payor plaintiffs and the
 3   auto-dealer witnesses in multiple parts cases, and,
 4   defendants, you need to work together, you need to come up
 5   with a template and go forth with that instruction.
 6        And so the defendants have been doing that
 7   successfully and we are fine with that.  We prepared a
 8   protocol that covers end-payor plaintiffs and auto-dealer
 9   plaintiff witnesses.  It applies to all the defendants in all
10   auto parts cases, all the defendants have signed off on it,
11   and that was our understanding of that discussion.
12        Now, I will say at the very end of that hearing --
13   of that discussion during that hearing I got up and I said
14   this dispute about whether defendants in other auto parts
15   cases can take depositions of the same plaintiff witnesses
16   really only impacts a few of the provisions of the protocol
17   that we had all negotiated and that Your Honor had weighed in
18   on.
19        MASTER ESSHAKI:  I recall that.
20        MS. SULLIVAN:  Right.  And so I got up and I said I
21   think we can accomplish this fairly quickly, we can address
22   these provisions.  Mr. Williams agreed, and the auto dealers'
23   counsel also agreed.  So we then took those provisions that
24   were specifically impacted by that ruling and we prepared a
25   protocol.  We pulled them out of the wire harness protocol
```

1   and we prepared a separate protocol that covers those

2   depositions.  Those are the only depositions that apply to

3   all auto parts cases.  They were the only depositions that

4   Judge Battani was worried about, and they have been addressed

5   in that separate ADP or auto dealer -- I'm sorry, end-payor

6   plaintiffs' and auto-dealer plaintiffs' witness protocol.

7   But there are all of these other depositions that need to

8   happen in the wire harness case; direct purchasers, Ford,

9   truck dealers and all the defendants' depositions, and those

10  depositions don't apply and aren't even relevant in all of

11  the other cases, maybe with the exception of Ford but that's

12  a separate issue, but the -- so the protocol -- the wire

13  harness protocol took us ten months to negotiate, we reached

14  agreement on everything with the exception of a few

15  provisions that we raised with Your Honor -- or with you,

16  Master Esshaki, and that governs those depositions, and

17  that's separate and independent from this ruling that

18  Judge Battani made on the end-payor and auto-dealer witness

19  depositions.

20          From our perspective it is not appropriate,

21  necessary or warranted to have one single protocol that

22  governs all witness depositions in all auto parts cases for a

23  number of witnesses.  First, it is not necessary.  We don't

24  need one protocol for the entire auto parts MDL, we already

25  have these two protocols.  We have -- you know, as I said,

1    all the defendants have agreed on the one that applies to

2    them for all cases.  The wire harness protocol is close to

3    being final, it was close to being final in January, it is

4    still close to being final.

5          MASTER ESSHAKI:  When you say two protocols, what

6    do you mean?

7          MS. SULLIVAN:  There is a protocol that governs

8    end-payor plaintiff depositions and auto-dealer plaintiff

9    witness depositions, and what that means is that when there

10   is a deposition taken of an end-payor plaintiff in any case

11   it is governed by that protocol.  And so when we, the

12   defendants, in the wire harness case take a deposition of an

13   end-payor plaintiff we have to coordinate with all of the

14   defendants in all of the other cases, and then they cannot

15   take a deposition in any of their other cases of that same

16   plaintiff absent good cause.  That was the ruling that

17   Judge Battani made.

18         MASTER ESSHAKI:  What's the second protocol?

19         MS. SULLIVAN:  Well, and that same protocol governs

20   auto-dealer plaintiff witnesses.  Same thing on the

21   auto-dealer plaintiff witnesses, we have to coordinate with

22   all the other defendants.

23         MASTER ESSHAKI:  When you're saying two protocols,

24   one is -- you would refer to as the end-payor plaintiff

25   protocol, the other is the auto-dealer protocol?

1          MS. SULLIVAN:  No, I apologize.  So the first one

2     applies to the entire auto parts MDL, all cases, and it

3     governs end-payor plaintiffs and auto-dealer plaintiff

4     witnesses, that was Judge Battani's ruling.  So for those

5     depositions there cannot be duplicative depositions, all the

6     defendants have to coordinate, we all have to agree on our

7     list of questions, et cetera, that protocol governs those

8     depositions just as instructed and just as you ordered in

9     your March 19th ruling.

10          The second protocol is the wire harness deposition

11     protocol, and that does not govern the end-payor and

12     auto-dealer plaintiff witness duplication issue, what it

13     governs is direct purchasers, Ford, truck dealers, the City

14     of Richmond plaintiffs, so the public-entity plaintiffs and

15     all the defendants.  Those parties are not parties in all of

16     the 29 cases.  That is the protocol that is very detailed in

17     terms of -- for example, how many depositions do plaintiffs

18     get to take of each defendant?  We agreed after literally ten

19     months of negotiations that they could take 15 depositions of

20     all of the -- of each of the defendants, except for Leoni,

21     for Leoni they can only take seven.

22          Well, that was an agreement that was reached after

23     much compromise, after much discussion, and it is unique to

24     our case.  It is appropriate in our case.  We know who the

25     witnesses are at this point, we have been in discovery for

1  two years, it makes sense that we have been able to reach

2  agreement on that term.  The defendants in these much, much

3  later cases are years away from having depositions in their

4  cases, they don't necessarily know who the witnesses are,

5  there has been no discovery at all, and so for them, it is

6  not appropriate for them to be bound by the wire harness

7  deposition protocol when the defendants are not even in

8  those -- those defendants aren't even in our case.  They need

9  to take the time to negotiate their own terms in terms of how

10  many witnesses can be deposed and other terms that relate to

11  that, where the depositions should take place, et cetera.

12          The plaintiffs are concerned -- I think they will

13  get up and tell you that they don't want to have to negotiate

14  separate protocols --

15          MASTER ESSHAKI:  One moment please, Ms. Sullivan.

16  We have people calling in.

17          THE CASE MANAGER:  Counsel, can you hear me?  State

18  your appearances for the record?  Counsel?

19          Mr. Esshaki, they must have put it on mute.  You

20  can go ahead.

21          MASTER ESSHAKI:  They put us on mute?  Okay.

22  That's hardly acceptable, but please continue.

23          As I understand it, you had developed a deposition

24  protocol across all cases, as Judge Battani has instructed,

25  that deals with end-payor plaintiffs and auto-dealer

1    plaintiffs so that one deposition is going to taken, they are

2    not exposed to multiple deps.  You have also developed a wire

3    harness deposition protocol that will apply only in the wire

4    harness cases pertaining to non-end-payor plaintiffs and

5    non-automobile-dealer plaintiffs, and it is your posture that

6    that protocol should be confined presently to the wire

7    harness cases because they are unique, they are ready in a

8    stage to proceed, and that future plaintiffs who may not even

9    be in the case today should not be bound to a protocol that

10   they have had no opportunity to put any input into?

11          MS. SULLIVAN:  That's correct with one exception,

12   one minor clarification -- it is not so minor, with one

13   clarification, and that is that all automotive parts protocol

14   that we have developed applies to end-payor plaintiffs and

15   auto-dealer plaintiff witnesses.  So what it does is it says

16   that when an auto-dealer plaintiff witness deposition occurs

17   all defendants have to coordinate and that same witness can

18   then not be deposed in a later case.  What it does not do

19   though is it does not limit the wire harness defendants to

20   one deposition of an auto-dealer plaintiff entity, and that

21   is an important distinction because that was a separate

22   issue.

23          If you recall in January we presented -- we argued

24   and --

25          MASTER ESSHAKI:  We thought three.

1      MS. SULLIVAN:  That's correct, three 30(b)(1)

2  depositions and 18 hours of 30(b)(6) testimony, and that's in

3  the wire harness case, and those two rulings actually

4  complement each other perfectly well.  So when the wire

5  harness defendants take those --

6      MASTER ESSHAKI:  Would you please tell me again, it

7  was three 30(b)(1) --

8      MS. SULLIVAN:  Three 30(b)(1) depositions and

9  18 hours of 30(b)(6) testimony.

10     MASTER ESSHAKI:  Okay.

11     MS. SULLIVAN:  You were the one that gave us that

12  number of depositions and Judge Battani's ruling at the

13  January 28th status conference actually complement each other

14  quite well.  When the wire harness defendants take those

15  depositions we will coordinate with the other defendants,

16  they will participate if they choose to, and then they cannot

17  later redepose those same witnesses.

18      It can't be the case, however, that

19  Judge Battani -- well, first of all, she didn't intend to, I

20  don't believe, overrule your other ruling, which was the

21  three 30(b)(1) and 18 hours of 30(b)(6), that was not the

22  topic at all that she raised as something that was concerning

23  her.  What her concern was was the duplicative nature of

24  multiple depositions taken of the same witnesses in multiple

25  cases.  We need three 30(b)(1) depositions of the auto

1    dealers and 18 hours of 30(b)(6) testimony in the wire

2    harness case for all of the reasons that we argued in our

3    briefing and in our oral argument during our hearing on

4    January 21st.

5         MASTER ESSHAKI:  Okay.  Thank you.  Mr. Williams?

6         MR. WILLIAMS:  Master Esshaki, I'm going to be

7    brief now because I want to respond --

8         MASTER ESSHAKI:  Thank God somebody's going to be

9    brief today.

10        MR. WILLIAMS:  Well, I will try.  I want to respond

11   to what Ms. Sullivan said because some of it is not right and

12   much of it requires a response.

13        But in my view the threshold issue driving

14   everything else is the dispute between the defendants and the

15   auto dealers that Ms. Sullivan just alluded to, and in my

16   view until that is resolved the rest of this is going to be

17   held up, so I think it would make more sense for the auto

18   dealers to speak now.

19        MASTER ESSHAKI:  Sure.

20        MR. RAITER:  I'm Shawn Raiter on behalf of the auto

21   dealers.

22        Judge Battani was very clear on January 28th; she

23   did not say there will be one deposition per witness, she

24   said three or four times on this transcript, which you have

25   before you, there will be one deposition per plaintiff.  Now

1   the defendants ignore that because they want to come back to

2   really harassing and abusing the discovery process as it

3   relates to the automobile dealer plaintiffs.

4        Let me just give you the citations because they are

5   in the record, Mr. Special Master, they are very clear.

6   Judge Battani said at page 24, "and this can all be done in

7   one deposition of a named plaintiff", page 24.  Page 24

8   again, "I mean, if we have to be innovative we will be

9   innovative but that there will be one deposition", page 24

10  again.  Page 26, "I want you to have the opportunity to

11  ask -- to get the information that you need and at the same

12  time only do a single deposition of most of these named

13  plaintiffs", that's page 26.

14       So what they have done, the defendants have now

15  taken that, they ignore it, they don't want to abide by that.

16  They want to say well, what she really meant was no

17  duplicative depositions of the same witness.  That's not what

18  she said.  She made it very clear and you did when you

19  started this by reading your own notes that there should be a

20  single plaintiff for each -- a single deposition for each

21  named plaintiff unless there's good cause shown, and the

22  judge said that in her --

23       MASTER ESSHAKI:  What about the difference between

24  the 30(b)(1) and 30(b)(6)?

25       MR. RAITER:  They can choose how they wish to do

1    it.

2             MASTER ESSHAKI:  Don't you think they are entitled

3    to both?

4             MR. RAITER:  I think they can choose.

5             MASTER ESSHAKI:  If you were to take the deposition

6    of an owner of the automobile dealership, I dare say he could

7    not tell you how his backroom where they do all the paperwork

8    works, so you need to take the deposition of the head

9    financial controller of a dealership for that style

10   testimony.  They should not be limited to do I take the

11   controller or do I take the owner.

12            MR. RAITER:  And they can make that decision, Your

13   Honor, but when you started this you also talked about

14   questions --

15            MASTER ESSHAKI:  Wait, wait, wait, that's the point

16   I'm getting at.  They should not be limited to saying with

17   respect to this dealer, should I take the president or the

18   CFO.  They really need at a minimum to have both.

19            MR. RAITER:  Why?

20            MASTER ESSHAKI:  Because the CFO is going to be

21   critical to understanding the financial operations of the

22   dealership, purchasing and sales of vehicles, how profit is

23   calculated, rebates and so forth.  The owner is going to tell

24   you what his business is, how many cars he buys and so forth.

25   They shouldn't have to choose between the two.

1        MR. RAITER:  The CFO can say the same things, but

2   the owner could say on those topics.  And the stipulation

3   that you are going to see today provides them with all --

4   over 200 fields of transactional information, basically

5   everything they have asked for from us.  We have already

6   produced 250,000 pages of documents, we continue to produce

7   documents relating to the transactions, the acquisitions, the

8   sales of these vehicles.  They don't need any more than that

9   quite frankly in our opinion, but in the Optical Disk Drive

10   case, for example, there was an order, we presented that to

11   Your Honor, where the court said you get one deposition per

12   plaintiff, direct purchasers and indirect purchasers, and

13   that's what we believe should happen here.

14        Now, how they decide to do that is up to them, but

15   you started this today by saying what you should do is come

16   up with a set of questions that need to be answered, need to

17   be asked and answered, and then I suppose it would be

18   incumbent on us to identify who can answer those questions in

19   such a deposition, but what they have got before you, this

20   three 30(b)(1) and 18 hours of 30(b)(6) testimony.  We have

21   29 cases, we have 45 automobile dealer plaintiffs.  If you

22   look at wire harness only, only wire harness, 45 of those

23   plaintiffs, given what they are asking for, that's over

24   1,800 hours of depositions of automotive dealers, 1,800

25   hours.  So that would be a year, running consecutively, one

1    year of automobile dealer depositions when they are going to

2    have some much financial information they don't need to take

3    one-tenth of those depositions.  Now, that, of course,

4    doesn't include preparation of these witnesses, travel time

5    for everyone, but that's just one case.

6           Now, the protocol that Ms. Sullivan is talking

7    about, the second protocol, what they have actually said is

8    well, in wire harnesses we get to take three 30(b)(1)s and we

9    get 18 hours of 30(b)(6)s, but then in every other case the

10   number of depositions that we are going to take of your

11   automobile dealers would be subject to negotiation, so they

12   are not done there, they are going to come back over and over

13   and over again trying to ask for more depositions, again,

14   then hiding behind this rule of, well, you can't duplicate a

15   deposition for the same witness.  Well, there are a lot of

16   these dealerships and there are going to be a lot of these

17   people they could identify to take depositions, and that's

18   what they are going to do, they are going to harass us.

19           MASTER ESSHAKI:  Doesn't that fly in the face of

20   what the Judge wanted to do, which was to limit those

21   depositions?

22           MR. RAITER:  Which is exactly why we think there

23   should be one deposition per named plaintiff absent a showing

24   of good cause, that's what she said.  She didn't say one

25   deposition per automobile dealer witness or per witness, she

1    said per named plaintiff, she said it at least twice.  So,

2    Your Honor, you have before you, again, one of these kind of

3    crossroads moments where we'll embark on depositions that

4    will go on for years and years and years.  You've heard the

5    defendants here today say we want to get moving, we want to

6    get going forward and get headed toward class certification.

7    The proposal being made right now by Ms. Sullivan and the

8    defendants, at least as to the number of the automobile

9    dealers being subject to deposition or their witnesses

10   subject to deposition, will be completely contrary to what

11   they have said before you today.

12            MASTER ESSHAKI:  I have to go back.  As I

13   understand the protocol there is going to be -- let's not

14   focus on auto dealers but let's focus on end-payor

15   plaintiffs, there is going to be one deposition of an

16   end-payor plaintiff that is going to stretch across all

17   parts.  How many of the auto-dealer plaintiffs -- how many of

18   the auto-dealer plaintiffs' depositions is up in the air for

19   at least this moment but they are going to stretch across all

20   parts, so you are not going to go back to those auto-dealer

21   plaintiffs under that protocol, no one is going back to them

22   again, so the only question is should the auto-dealer

23   plaintiffs' depositions be limited to one per dealer or

24   should they be three 30(b)(1) and 18 hours of 30(b)(6) or

25   should they be something else?

1      MR. RAITER:  Yes and no.

2      MASTER ESSHAKI:  Give me a compromise.

3      MR. RAITER:  Yes and no.  Your point about are they

4  going to stretch across all the cases, not according to their

5  second protocol.

6      MASTER ESSHAKI:  Well, the second protocol, as I

7  understand it, dealt with -- according to Ms. Sullivan, dealt

8  with non-auto-dealer plaintiffs and non-end-payor plaintiffs.

9      MS. SULLIVAN:  May I clarify?

10      MR. RAITER:  That's not correct.

11      MASTER ESSHAKI:  You may clarify, Ms. Sullivan.

12      MS. SULLIVAN:  I think what we are talking about

13  here is the end-payor plaintiffs and auto-dealer plaintiffs

14  witness protocol, and that's the one I explained to you,

15  those witnesses will be covering -- apply to all auto parts

16  cases, all defendants will participate and will be bound by

17  that order.  That does not mean though is that the four

18  depositions that we take of the auto-dealer plaintiff

19  entities in the wire harness case will necessarily be the

20  same exact four that the defendants in some later case may

21  choose to take.  Let me explain that to you.

22      They cannot take those same four witnesses again,

23  that's correct, they cannot take those same four witnesses

24  again.  However, some of the cases are -- each of these cases

25  are unique, and what I mean by that is, for example, in the

```
 1    heater control panel case I represent Sumitomo and Sumitomo
 2    sold heater control panels only to Toyota.  The conduct at
 3    issue in that case I think the evidence will show relates to
 4    Toyota, and so in that case the defendants will be most
 5    focused on determining whether the auto dealers can prove
 6    that they were impacted with respect to purchases of cars
 7    that are Toyota cars.  There are other cases that don't
 8    involve sales to Toyota.  For example, the electric powered
 9    steering assemblies case, I don't know anything about that
10    case other than the fact that the guilty plea identifies
11    conduct relating to Honda.  Presumably in that case those
12    defendants when the time comes will be very focused on
13    determining whether the auto dealers can establish an
14    overcharge and a passthrough with respect to Honda cars, and
15    so the four auto dealers witnesses or depositions that we
16    make take in the HCP case relating to primarily Toyota may
17    not be the same witnesses --
18            MASTER ESSHAKI:  I think you are parsing and
19    slicing it very thin, and I do not see that's what the Judge
20    said.  The Judge said that the auto-dealer plaintiffs and the
21    end-payor plaintiffs because all they did was buy and sell
22    and buy an automobile should be subject to one deposition.
23    Clearly for the end-payor plaintiffs one deposition across
24    all parts is what she ruled.  The question is whether you
25    need more than one deposition for auto-dealer plaintiffs
```

1    because you need to get a 30(b)(6) and then you need to get

2    perhaps an owner.

3              MS. SULLIVAN:  May I address that then,

4    Master Esshaki?  We actually do need more than one deposition

5    of the auto-dealer plaintiffs' entities for all the reasons

6    we already argued, and frank --

7              MASTER ESSHAKI:  They are not going to go back

8    again, it is across all parts.

9              MS. SULLIVAN:  Understood, understood.  So for now

10   we are talking about how many, putting aside the duplication

11   issue, put that aside for now.  For now we are talking about

12   how many can we take?  Can we take one or can we take the

13   three 30(b)(1) depositions and the 18 hours of 30(b)(6)

14   testimony that you already ruled would be appropriate in the

15   case?

16             MASTER ESSHAKI:  Yes, but that ruling came out

17   before and --

18             MS. SULLIVAN:  That's correct, Your Honor, but the

19   Court said --

20             MASTER ESSHAKI:  As I said, she overturned the

21   apple cart with that ruling.

22             MS. SULLIVAN:  Respectfully we disagree with that.

23   What she was focused on is whether you take the same

24   witnesses over and over and over again.

25             MASTER ESSHAKI:  No, that's not what I got from it.

```
 1   I'm sorry, Ms. Sullivan.  What I got from it is you are not
 2   going to subject an auto-dealer plaintiff to 10, 12, 20
 3   depositions, and she wanted it strictly limited to one
 4   deposition across -- one deposition, I'm not going to say
 5   that for the auto-dealer plaintiffs, I said that clearly for
 6   the end payors, one deposition across all parts.  With
 7   auto-dealer plaintiffs I can see that there is a problem if
 8   you are limited to selecting one witness and one witness only
 9   because you may need to get the owner of the dealership and
10   you may need to get the CFO.
11        MS. SULLIVAN:  You may also need salespeople, and
12   the reason I say that is some of these dealer plaintiffs are
13   extremely large.  For example, McGrath Automotive Group,
14   Incorporated has hundreds of employees, it has four
15   dealerships, four separate dealerships, and it sells nine
16   different brands of cars.  Commonwealth Motors, for example,
17   has 300 employees, three dealerships, and it sells GM,
18   Nissan, Honda, Kia and VW cars.  We know that the OEMs are
19   very different and they sell their cars very differently;
20   some have certain incentives, others don't have those
21   incentives, and all of that makes a difference in terms of
22   whether the auto dealers will be able to establish that they
23   paid more for their cars and whether the end payors will be
24   able to establish that they paid more for their cars.  And
25   you may have different people in these dealerships that are
```

1    handling procurement from VW than procurement from Nissan,

2    two totally different OEMs.

3         And so, you know, again, we absolutely need a

4    30(b)(6) deposition and we believe that 18 hours, the

5    compromise that you ruled on back in January, was the

6    appropriate amount of time.  And we absolutely need 30(b)(1)

7    depositions, and we don't believe that one 30(b)(1)

8    deposition would be appropriate for these reasons --

9         MASTER ESSHAKI:  Counsel, I think she has conceded

10   that -- what Judge Battani's instruction was to limit the

11   number of depositions in the auto dealers, not four witnesses

12   in this -- in the wire harness cases and then four witnesses

13   in the heater cases and four witnesses in the windshield

14   cases, it is across the board.  The only question is how many

15   can you live with?

16        MR. RAITER:  Your Honor, again, let's just back up.

17   She has gone back to the three 30(b)(1)s and the 18 hours of

18   30(b)(6).  Just for a reference point, what the defendants

19   want for 30(b)(6) hours of their own people, the people who

20   engaged in these conspiracies and who went to jail and

21   pleaded guilty and paid fines, they want to give us 21 hours

22   of 30(b)(6), but yet they want 18 hours from some car

23   dealership about how you sold your cars.

24        Now, what's changed since then?  A couple of

25   things.  One, we withdrew parts from all cases, so parts

1   were a big part of the number of witnesses and how we

2   purchased parts and how we sold parts, those are out of all

3   of these cases, so that's a big change.  Number two, the

4   stipulation that will be entered soon later today or tomorrow

5   but what we are producing to them handles this information.

6   For example, every month a car dealership usually should be

7   making a report to an OEM which summarizes what they sold,

8   sales, profits, their monthly OEM reports, and we have agreed

9   to produce those.  They are going to have that information

10  across all the different brands, across all the different

11  makes.

12          We have agreed that we will use our own consultant

13  to go extract the DMS data that was the subject of obviously

14  the motions that have now been withdrawn before you.  So what

15  they are going to have is a ton of information that addresses

16  the vast majority of the legitimate issues that they could

17  raise at this point.  So from there what do we do?  I think

18  we could do a couple of different things; we could continue

19  to meet and confer about numbers, we could talk about styles

20  of depositions, whether they are 30(b)(1)s or 30(b)(6)s, or

21  we could look at a total number of hours, but right now our

22  position is 39 hours for a single automobile-dealer plaintiff

23  to be deposed in this case, in this setting, given the

24  direction of the Court is unreasonable, it is burdensome, and

25  it is abusive.

1           MASTER ESSHAKI:  All right.  Here is what I'm

2      thinking.  I would like the defendants to provide plaintiffs

3      with an outline of areas they intend to examine a witness on

4      in the automobile dealer cases, and I would like the

5      automobile-dealer plaintiffs to select the person within

6      their organization who can best respond to the areas that

7      will be covered in the examination.  However, I am going to

8      give with respect to automobile-dealer plaintiffs one

9      30(b)(6) and one 30(b)(1).  If you need more you come back

10     and give me good cause and I will do it.  Are we clear?  I

11     just want to be clear.

12          We have a deposition protocol that applies to

13     end-payor plaintiffs and automobile plaintiffs that will go

14     across the board on all parts, so that they will not be

15     deposed again, that with respect to the automobile dealer

16     plaintiffs there will be information exchanged from the

17     defendants to the plaintiffs before the deposition occurs and

18     the defendants will select the person within their

19     organization that has the most information to respond to the

20     questions.  They will be able to get one 30(b)(6), not

21     18 hours, I think eight hours is plenty, and one 30(b)(1).

22     If they want more or they need more they can file a motion

23     for good cause.

24          And then with respect to the -- it is understood

25     that the deposition protocol does not apply outside of the

```
 1   wire harness cases except for the limitations on the numbers
 2   of deps of the end payors and auto dealers, it does not apply
 3   to OEMs, it does not apply to suppliers, it does not apply
 4   to -- that is not before us, that has not been discussed.
 5           Mr. Williams, you look puzzled?
 6           MR. WILLIAMS:  No, I don't think I'm puzzled.  I
 7   think you clarified.  Yes, I think it explicitly reserves
 8   whatever we do with OEMs and others.
 9           MASTER ESSHAKI:  Right.
10           MR. WILLIAMS:  But the --
11           MASTER ESSHAKI:  Who is going to work on it?
12           MR. WILLIAMS:  That's what I wanted to come back
13   to.  You said we have a separate protocol for the end payors
14   and dealers, we don't yet because --
15           MASTER ESSHAKI:  I agree.
16           MR. WILLIAMS:  -- one of the things the defendants
17   did after they left last time was to increase the hours any
18   person who bought a car will be deposed to 14 hours so that
19   you, for example, would spend 14 hours being examined about
20   buying a car, and their witnesses are only subject to seven
21   hours, that is absurd, so that can't be.
22           Second, and this is an important point, and I
23   apologize because it is late, but in the colloquy before you
24   had with Ms. Sullivan I heard it said this protocol doesn't
25   bind any plaintiffs who come in the future.  That's not true.
```