# Exhibit O

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>              Plaintiff,<br><br>            v.<br><br>RAMEY MOTORS, INC., a West Virginia corporation,<br><br>RAMEY AUTOMOTIVE GROUP, INC., a West Virginia corporation,<br><br>RAMEY AUTOMOTIVE, INC., a Virginia corporation, and<br><br>RAMEY CHEVROLET, INC., a Virginia corporation,<br><br>              Defendants. | Case No. 1:14-29603 |

## COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its complaint alleges that:

1. Plaintiff brings this action under Sections 5($l$) and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45($l$) and 56(a), as amended; the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667, as amended; and its implementing Regulation Z, 12 C.F.R. § 226, as amended, to obtain monetary civil penalties and other relief for Defendants' violations of a final Commission order.

2. The Defendants are privately-held, common-owner companies that operate motor vehicle dealers in West Virginia and Virginia. Since the effective date of the Commission's final

1

order, April 19, 2012, Defendants, among other things, have been expressly required: (i) not to make misrepresentations about the costs and terms of financing or leasing vehicles; and (ii) to conform their consumer credit advertisements to TILA and Regulation Z. However, Defendants have routinely violated several provisions of the Commission's final order. These violations relate to both the core injunctive provisions – i.e., the provision prohibiting misrepresentations and the provision requiring TILA disclosures – and the provision requiring maintenance of records demonstrating compliance with the order.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(*l*), 56(a) and 1607(c).

4. Venue in this district is proper under 28 U.S.C. §§ 1391(b)-(d) and 1395(a).

## DEFENDANTS

5. Defendant Ramey Motors, Inc., ("Defendant-Respondent") is a West Virginia corporation with its principal place of business at 127 Frazier Drive, Princeton, West Virginia 24740. At all times material to this complaint, Defendant has participated in the acts and practices described in this complaint. Defendant transacts business in this district, including through a motor vehicle retail store located in Princeton, through television, print, or radio advertisements reaching consumers living in the district and through the rameycars.com and rameychryslerdodgejeep.com websites.

6. Defendant Ramey Automotive Group, Inc. ("Ramey Automotive"), is a West Virginia corporation with its principal place of business at 615 North Eisenhower Drive, Beckley, West Virginia 25801. At all times material to this complaint, Defendant has participated in the acts and practices described in this complaint. Ramey Automotive transacts

business in this district, including through motor vehicle retail stores located in Princeton and Beckley, through television, print, or radio advertisements reaching consumers living in the district and through the website rameycars.com.

7. Defendant Ramey Automotive, Inc. ("Ramey Automotive Virginia"), is a Virginia corporation with its principal place of business at 2850 Clinch Street, Richlands, Virginia 24641. At all times material to this complaint, Defendant has participated in the acts and practices described in this complaint. Ramey Automotive Virginia transacts business in this district, including through a motor vehicle retail store located in Princeton, through television, print, or radio advertisements reaching consumers living in the district, and through the website rameycars.com.

8. Defendant Ramey Chevrolet, Inc. ("Ramey Chevrolet"), is a Virginia corporation with its principal place of business at 27992 Governor Perry Highway, North Tazwell, Virginia 24651. At all times material to this complaint, Defendant has participated in the acts and practices described in this complaint. Ramey Chevrolet transacts business in this district, including through television, print, or radio advertisements reaching consumers living in the district and through the website rameycars.com.

9. Collectively, Defendant-Respondent, Ramey Automotive, Ramey Automotive Virginia, and Ramey Chevrolet are referred to herein as the Ramey Companies or Defendants.

## COMMERCE

10. At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## PRIOR COMMISSION PROCEEDING

11. In a Commission proceeding bearing Docket No. C-4354, the Commission charged Defendant-Respondent with, among other things:

   i. Making false or misleading representations that, when a consumer trades in a used motor vehicle in order to purchase another vehicle, [Defendant-Respondent] will pay off the balance of any loan on the trade-in such that the consumer will have no remaining obligation for any amount of that loan, in violation of the FTC Act; and

   ii. Disseminating consumer credit advertisements for vehicles that failed to disclose and/or failed to disclose clearly and conspicuously terms for financing the purchase of the advertised vehicles, in violation of Regulation Z and TILA.

12. On April 19, 2012, the Commission entered its decision and order ("Consent Order") approving a settlement with the Defendant-Respondent. In pertinent part, Parts I and II of the Consent Order state:

### I.

**IT IS HEREBY ORDERED** that [Defendant-Respondent], directly or through any corporation, subsidiary, division, or other device, in connection with any advertisement to promote, directly or indirectly, the purchase, financing, or leasing of automobiles, in or affecting commerce, shall not, in any manner, expressly or by implication: ...

   B. Misrepresent any material fact regarding the cost and terms of financing or leasing any newly purchased vehicle.

### II.

**IT IS FURTHER ORDERED** that [Defendant-Respondent], directly or through any corporation, subsidiary, division, or other device, in connection with an advertisement to promote, directly or indirectly, any extension of consumer credit, in or affecting commerce, shall not in any manner, expressly or by implication:

   A. State the amount or percentage of any down payment, the number of payments or period of repayment, the amount of any payment, or the amount of any finance charge, without disclosing clearly and conspicuously all of the following terms:

4

    1.    The amount or percentage of the down payment;

    2.    The terms of repayment; and

    3.    The annual percentage rate, using the term "annual percentage rate" or the abbreviation "APR." If the annual percentage rate may be increased after consummation of the credit transaction, that fact must also be disclosed; . . .

13.    The Consent Order defines "clearly and conspicuously" as:

    A.    In a print advertisement, the disclosure shall be in a type size, location, and in print that contrasts with the background against which it appears, sufficient for an ordinary consumer to notice, read, and comprehend it.

    B.    In an electronic medium, an audio disclosure shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it. A video disclosure shall be of a size and shade and appear on the screen for a duration and in a location sufficient for an ordinary consumer to read and comprehend it.

    C.    In a television or video advertisement, an audio disclosure shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it. A video disclosure shall be of a size and shade, and appear on the screen for a duration, and in a location, sufficient for an ordinary consumer to read and comprehend it.

    D.    In a radio advertisement, the disclosure shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it.

    E.    In all advertisements, the disclosure shall be in understandable language and syntax. Nothing contrary to, inconsistent with, or in mitigation of the disclosure shall be used in any advertisement or promotion.

14.    The Consent Order additionally states:

### III

**IT IS FURTHER ORDERED** that [Defendant-Respondent] and its successors and assigns shall, for five (5) years after the last date of dissemination of any

5

representation covered by this order, maintain and upon request make available to the Federal Trade Commission for inspection and copying . . .

   B.  All materials that were relied upon in disseminating the representation.

15. A copy of the Consent Order is attached hereto as Exhibit A. The FTC served the Consent Order on or about April 19, 2012, and it has remained in full force and effect ever since that date.

## DEFENDANTS' CONDUCT

16. The Ramey Companies, their predecessors, and owners have been in the motor vehicle retail industry for decades. According to their rameycars.com website, one or more Ramey Companies have been in business for more than 55 years.

17. Since at least April 19, 2012, the Ramey Companies have promoted, directly or indirectly, the purchase and financing of motor vehicles via television, radio, print as well as via the rameycars.com website, among others. Geographically, the Ramey Companies have operated motor vehicle retail stores and lots located in West Virginia, Tennessee and Virginia. Defendants' television, radio, and print advertisements have reached customers in at least those states.

### Defendants' Active Concert and Participation

18. In 2011, Defendant-Respondent stipulated to the Consent Order, specifically acknowledging potential liability for "civil penalties in the amount provided by law and other appropriate relief for each violation of the [Consent Order] after it becomes final."

19. James C. Ramey, Sr. is president of each of the four Ramey Companies; he signed the agreement that led to the Consent Order; and he acknowledged receipt of the Consent Order.

20. Because the Ramey Companies share a common president who received notice of the Consent Order and all such companies advertise motor vehicles on the rameycars.com website, all of the Defendants, whether or not named as Respondents in the Consent Order, have been in active concert and participation with the Defendant-Respondent in promoting the purchase, financing and leasing of motor vehicles.

### Advertisements with Hidden Conditions and Costs That Misrepresent Terms of Financing or Leasing Vehicles

21. Since April 19, 2012, Defendants have advertised numerous offers to finance or lease motor vehicles in television advertisements. However, Defendants frequently misrepresent the transaction by focusing only on a few attractive terms, such as a low monthly payment or a low annual percentage rate, while concealing other important terms such as a substantial down payments or a trade-in requirement.

22. A 30-second television advertisement disseminated by Defendants is an example of advertisements that hide required down payments in fine print.[1] A video copy of this advertisement is attached as Exhibit B and a screenshot capture is attached as Exhibit C. The advertisement contains the following statements and depictions:

---

[1] The comparative size of the images shown herein is similar to that which appears in advertisements provided to the FTC by the Defendant-Respondent.

7





While these representations appear on the screen, a statement consisting of smaller, blurred text appears near the bottom of the screen:



[Same text from the advertisement's TV script] STK#2k1277
PRICES INCLUDED ALL MANUFACTURER REBATES AND
INCENTIVES. PAYMENTS WITH $2,000 DOWN AND
APPROVED CREDIT. TAX, TITLE LICENSE AND $175
PROCESSING FEE NOT INCLUDED. 75 MONTHS @ 3.99%
APR. ENDS 7/31.

While the prominent representations of the vehicle's price and monthly payment, along with the smaller, blurred text, appear on the screen, a voice states: "Get a new 2012 Toyota Tundra for $27,989 or $389 per month." It is impossible to read and comprehend the smaller text referring to the $2,000 down payment. This text is indistinct and it, along with the prominent retail price and monthly payment claims, flashes on the screen for only three seconds. By emphasizing the purchase price and monthly payment while concealing the requirement for a substantial down

8

payment, this advertisement represents that the purchase price and monthly payment are inclusive of all material costs and terms of the transaction. In fact, however, material terms of the offer include the price, monthly payment and a $2,000 down payment. Defendants have published numerous other such offers since April 19, 2012.

23. A 15-second television advertisement disseminated by Defendants exemplifies how Defendants hide trade-in requirements in incomprehensible fine print. A video copy of this advertisement is attached as Exhibit D and a screenshot capture is attached as Exhibit E. The advertisement contains the following statements and depictions:




While these representations appear on the screen, a statement consisting of smaller, blurred text appears near the bottom of the screen:



[Same text from the advertisement's TV script] STOCK # 2L14262. PAYMENTS BASED ON 78 MONTHS @ 2% APR WITH APPROVED CREDIT. $1.00 DOWN, TAX, TAG, LICENSE AND $175 PROCESSING FEE NOT INCLUDED. PERCENTAGE OFF AND FULL REBATES REQUIRE TRADE AND OWNERSHIP OF 99 OR NEWER CHEVROLET OR GMC TRUCK PRODUCT. SEE DEALER FOR DETAILS.

It is impossible to read the smaller text referring to the requirement that the buyer trade in a 1999 or newer Chevrolet or GMC truck. This text is indistinct and it, along with the monthly payment, flashes on the screen for only two seconds. This advertisement misrepresents the material fact that the advertised monthly payment is available only to buyers who trade in a 1999 or newer Chevrolet or GMC truck. Defendants have published numerous other such offers since April 19, 2012.

### Television and Internet Advertisements of Consumer Credit Without Required Clear and Conspicuous Disclosures

24. In numerous instances since April 19, 2012, Defendants' advertisements offered consumer credit terms that, pursuant to Part II(A) of the Consent Order, required clear and conspicuous disclosures of other important terms relating to those offers. Many of these advertisements failed to include all of the required disclosures, or failed to convey them clearly and conspicuously, or both.

25. For example, a 30-second television advertisement disseminated by Defendants failed to include clear and conspicuous disclosures required by Part II(A) of the Consent Order. A video copy of this advertisement is attached as Exhibit F and a screenshot capture is attached as Exhibits G and H. The advertisement contains the following statements and depictions:





The monthly payment offered in the advertisement is a consumer credit term identified by Part II(A) of the Consent Order requiring clear and conspicuous disclosure of the amount or percentage of the down payment, the terms of repayment, and the annual percentage rate using the term "annual percentage rate" or "APR."

26. The advertisement contains these disclosures ("Zero Down" – " 75 months @ 1.99% APR for 75 Months"). The disclosures are buried in an eleven-line block of rotating text that appears on the screen for just two seconds and disappears:

> STK#2M163. PRICES AFTER
> ALL APPLICABLE
> MANUFACTURER REBATES
> AND INCENTIVES.
> PAYMENTS BASED ON
> ZERO DOWN AND 75
> MONTHS @ 1.99% APR
> WITH APPROVED CREDIT.
> TAX, TITLE , TAGS AND $175
> PROCESSING FEE NOT
> INCLUDED. SEE DEALER
> FOR DETAILS.

This disclosure flashes on and off the screen so quickly that consumers can neither read nor comprehend it.

27. Defendants' website (www.rameytoyota.com) provides another example of this failure to make required disclosures. A video copy of the advertisement is attached as Exhibit I, and a screenshot capture is attached as Exhibit J. The advertisement contains the following statements and depictions:





The period of repayment offered in the advertisement is a consumer credit term identified by Part II(A) of the Consent Order requiring clear and conspicuous disclosure of the amount or percentage of the down payment, the terms of repayment, and the annual percentage rate using the term "annual percentage rate" or "APR." The advertisement prominently features the annual percentage rate, but the terms of payment ("0% APR financing equals $16.67 per month per $1,000 financed . . .") appear in small-print text:

Because the advertisement appears on the screen for only a few seconds as part of a streaming video that rotates with six other images, consumers can neither read nor comprehend the fine-print disclosure.

28. Defendants published another advertisement with credit offers on a website that promotes local businesses in the Bluefield, West Virginia area, a copy of which is attached as Exhibit K. Immediately below each of nineteen of the twenty-two pictured models, text prominently states a monthly payment associated with an offer of consumer credit. Part II of the Consent Order requires that any representation of the amount of any consumer credit payment must be accompanied by a clear and conspicuous disclosure of the down payment and the annual percentage rate.



Only in only small type at the bottom of the advertisement, however, do Defendants present the required disclosures:

12

The print is so small and blurry that consumers can neither read nor comprehend the text.

### Defendant-Respondent's Recordkeeping and Reporting Failures

29. Part III of the Consent Order obligates Defendant-Respondent to retain and produce to the FTC, upon request, all advertisements and promotional materials containing representations covered by the Consent Order and all materials Defendant-Respondent relied upon in disseminating these representations. FTC staff's letter of August 28, 2013 requested advertisements containing such representations as well as the materials relied upon in making the representations. Although Defendant-Respondent submitted the advertisements, it admitted that it failed to keep records documenting its financing and lease offers.

### VIOLATIONS OF CONSENT ORDER

### FIRST CAUSE OF ACTION
### (CONSENT ORDER PART I(B) - MISREPRESENTATIONS)

30. In numerous instances, Defendants disseminated or caused the dissemination of advertisements containing material facts regarding the costs or terms of offers for financing or leasing a motor vehicle that represented, expressly or by implication, that prominent costs or terms are inclusive of all material costs and terms of the transaction.

31. In truth and in fact, the prominent costs or terms disseminated do not include costs and terms such as large down payments, vehicle trade-ins, security deposits, acquisition fees, or other up-front payments.

32. Defendants' representations described in Paragraph 30 above constitute misrepresentations in violation of Part I(B) of the Consent Order.

## SECOND CAUSE OF ACTION
## (CONSENT ORDER PART II - CONSUMER CREDIT)

33. In numerous instances, Defendants disseminated or caused the dissemination of advertisements to promote, directly or indirectly, the extension of consumer credit for vehicles, including the television advertisement attached as Exhibits F, G, H, I and J.

34. In numerous instances, the advertisements for the extension of consumer credit for vehicles described in Paragraph 33 stated the amount or percentage of any down payment, the number of payments or period of repayment, the amount of any payment, or the amount of any finance charge, but:

    A. Omitted some or all disclosures required by Part II(A) of the Consent Order; or

    B. Failed to state all required disclosures "clearly and conspicuously," as defined in the Consent Order.

35. By failing to make the disclosures required by Part II(A) of the Consent Order, or failing to make the required disclosures "clearly and conspicuously," Defendants violated Part II(A) of the Consent Order.

## THIRD CAUSE OF ACTION
## (CONSENT ORDER PART III – FAILURE TO RETAIN AND PRODUCE RECORDS)

36. Part III of the Consent Order requires Defendant-Respondent, "for five years after the last date of dissemination of any representation covered by [the Consent Order], [to] maintain and upon request make available to the Federal Trade Commission for inspection and copying . . . all materials that were relied upon in disseminating the representation."

37. In numerous instances in which Defendant-Respondent disseminated specific offers to provide consumer credit in connection with motor vehicles, Defendant-Respondent did

Case 1:14-cv-29603 Document 1 Filed 12/11/14 Page 15 of 16 PageID #: 15

not maintain materials such as time-relevant communications from the manufacturer or lender and internal documents verifying the existence of the advertised costs and terms, relied upon in extending the terms of the offers.

38. Defendant-Respondent's acts or practices, as described in Paragraph 37 above, violated Part III of the Consent Order.

## CIVIL PENALTIES

39. Each violation of the Consent Order constitutes a separate violation for which Plaintiff may seek civil penalties.

40. Each day Defendants have made, or have continued to make, representations in violation of the Consent Order constitutes a separate violation for which Plaintiff may seek civil penalties.

41. Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*), as modified by Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and Section 1.98(c) of the FTC's Rules of Practice, 16 C.F.R. § 1.98(c), authorizes the Court to award monetary civil penalties of up to $16,000 for each such violation of the Consent Order.

42. Under Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*), this Court is authorized to permanently enjoin Defendant from violating the Consent Order and grant ancillary relief.

## PRAYER FOR RELIEF

43. WHEREFORE, Plaintiff requests this Court, pursuant to 15 U.S.C. §§ 45(*l*), 49, 53(b), and 56(a), and pursuant to the Court's own equitable powers, to:

(1) Enter judgment against Defendants and in favor of the Plaintiff for each violation alleged in this Complaint;

(2) Award Plaintiff monetary civil penalties from Defendants for each violation of the Consent Order alleged in this Complaint;

(3) Enter a permanent injunction to prevent Defendants from violating the Consent Order;

(4) Award Plaintiff its costs and attorneys' fees incurred in connection with this action; and

(5) Award Plaintiff such additional relief as the Court may deem just and proper.

DATED:

        Respectfully submitted,

        JONATHAN E. NEUCHTERLEIN
        General Counsel

          s/ Lemuel Dowdy
        North Carolina Bar Number 1225
        Attorney for
        Federal Trade Commission
        Division of Enforcement
        600 Pennsylvania Avenue, NW,
        Mail Drop CC-9528
        Washington, DC 20580
        Telephone (202) 326-2981
        Fax: (202) 326-3197
        E-mail: Ldowdy@ftc.gov