REDACTED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases In Re: All Auto Parts Cases | : : : : : : : : : : : : | 2:12-cv-00100-MOB-MKM 2:12-md-02311-MOB-MKM |
| THIS DOCUMENT RELATES TO:  All Wire Harness Cases All Auto Parts Cases | | |

# DEALERSHIP PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTIONS TO AND MOTIONS TO MODIFY THE MASTER'S RULINGS

REDACTED

## STATEMENT OF ISSUES PRESENTED

Whether when the Master has granted Defendants 616 hours of Dealership Plaintiff depositions on top of the hundreds of thousands of pages of documents Dealership Plaintiffs have produced, the vast amount of data Dealerships and documents Dealerships are continuing to produce and the additional information Defendants have received and will receive from End-Payors and third parties did he commit an abuse of discretion?

Whether the Master's order that Defendants coordinate their questioning in indirect purchaser depositions and select three examining attorneys to ask all Defendants' questions, which order will significantly aid the deposing parties in avoiding confusion and duplication constitute an abuse of discretion?

Whether when he ordered Defendants to provide Dealership and End-Payor Plaintiffs with an outline of their areas of questioning before 30(b)(1) depositions in order to streamline said depositions and make certain that they proceed as efficiently as possible did the Master abuse his discretion?

REDACTED

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................................... 2

TABLE OF CONTENTS............................................................................................ 3

TABLE OF AUTHORITIES ...................................................................................... 5

TABLE OF CONTROLLING AUTHORITIES .......................................................... 7

Introduction ............................................................................................................. 1

Background .............................................................................................................. 4

Argument.................................................................................................................. 7

I.      Master Esshaki's Order Should Be Reviewed for Abuse of Discretion ................... 7

II.     Paragraph 1 of Master Esshaki's June 28 Order Permitting Defendants to Take Two Depositions of Each Plaintiff Was Not an Abuse of Discretion. .................................. 10

    A.      The Master Did Not "Misunderstand" This Court's Statements, and Even If He Had, It Would Not Render His Order Invalid .................................................. 10

    B.      Two Depositions Per Plaintiff Is More Than Enough for Defendants' To Adequately Defend Themselves ......................................................................... 12

        1.      Defendants Do Not Need Additional Depositions to Gather the Necessary Information on Dealers' Upstream and Downstream Transactions....................... 14

        2.      The Fact That Some Dealers Sell Cars from Different OEMs Does Not Necessitate Additional Depositions ........................................................ 18

        3.      Defendants' Predominance Argument Does Not Justify the Addition of over A Thousand Hours of Dealership Depositions ........................................... 19

        4.      Paragraph 1's Limitations on Dealer Depositions Is Consistent with Prior Precedent.................................................................................. 21

        5.      Defendants' Arguments Regarding Dealerships' Productions Are Unavailing 23

III.    Master Esshaki Did Not Abuse His Discretion by Requiring Defendants to Submit Examination Topics to Plaintiffs. ........................................................................ 24

IV.     Master Esshaki Did Not Abuse His Discretion By Limiting the Amount of Defense Counsel That Could Question Dealers to Three Examiners.................................. 25

Conclusion..................................................................................................... 26

REDACTED

REDACTED

# TABLE OF AUTHORITIES

## Cases

*Bush v. Dictaphone* , 161 F.3d 363, 367 (6th Cir. 1998) .................................................. 7

*Chang Lim v. Terumo Corp.*, No. 11-12983, 2013 WL 6896444, (E.D. Mich. Dec. 31, 2013) ..... 2

*Chattanooga Foundry & Pipe Works v. Atlant*a, 203 U.S. 390, 27 S.Ct. 65, L.Ed. 241 (1906) .. 15

*Comcast v. Behrend*, 133 S.Ct. 1426 (2013) ................................................................. 20

*Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front–Loading Washer Prods. Lia*b. *Litig.*), 722 F.3d 838, (6th Cir. 2013) ..................................................................... 20

*Government of the Virgin Islands v. 19.623 Acres of Land*, 602 F.2d 1130, (3d Cir. 1976).......... 9

*In re Airline Ticket Com'n Antitrust Litigation*, 918 F.Supp. 283 (D. Minn.1996) ................. 6, 16

*In re Cardizem CD Antitrust Litig.* 200 F.R.D. 326 (E.D.Mich. April 3, 2001)... 15, 16, 17, 20, 21

*In re Flat Glass Antitrust Litigation*, 191 F.R.D. 472 (W.D. Pa. 1999) ...................................... 19

*I
n re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 5654318, (D. Minn. Jan. 28, 2014) ....................................................................................................... 8

*In re Workers' Compensation*, 130 F.R.D. 99 (D. Minn.1990) ............................................ 20, 21

*In re: Credit Default Swaps Antitrust Litig.,* No. 13-md-2476-DLC, ECF No.326-1 (S.D.N.Y. Sept. 16, 2014) ................................................................................................... 21

*In re: Polyurethane Foam Antitrust Litig.,* No. 1:10-md-02196, ECF No. 241 (N.D. Ohio Sep. 15, 2011) ............................................................................................................ 22

*Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125 7th Cir. 2002) ............................................. 22

*Jones v. Robinson*, 37 F. App'x 761, 762 (6th Cir. 2002) ........................................................ 7

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) .................................................... 20

REDACTED

*Marsico v. Sears Holding Co.*, 370 F. App'x 658 (6th Cir. 2010) .................................................. 8

*McKinley v. City of Mansfield, et al.*, 404 F.3d 418(6th Cir. 2005) ............................................... 7

*Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528 (E.D. Mich. Sept. 13, 2013) ....................... 19

*Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450 (6th Cir. 1993) ............................................... 7

*Nippon Steel & Sumitomo Metal Corp. v. Posco*, No. CIV.A. 12-2429 SRC, 2014 WL 1266219, (D.N.J. Mar. 26, 2014) .......................................................................................................... 8

*Surles ex rel. Johnson v. Greyhound Lines*, 474 F.3d 288, (6th Cir. 2010) ........................... 12, 21

**Rules**

Fed. R. Civ. P. 23(b)(3) .................................................................................................................. 20

Fed. R. Civ. P. 30(b)(6) .......................................................................................................... passim

Fed. R. Civ. P. 53(f)(4) ................................................................................................................... 8

Fed. R. Civ. P. 53(f)(5) ................................................................................................................ 3, 7

Fed. R. Civ. P. Rule 30(b)(1) ................................................................................................. passim

Local Rule 5.1(3) ............................................................................................................................ 1

**Other Authorities**

ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues, Ch. 6, "Overcharges" (1996) ......................................................................................................... 15

REDACTED

## TABLE OF CONTROLLING AUTHORITIES

### Transcripts

May 6 Transcript of Hearing Before the Master

May 26 Hearing Transcript of Hearing Before the Master

### Cases

*In re Airline Ticket Com'n Antitrust Litigation*, 918 F.Supp. 283 (D. Minn.1996).

*Bush v. Dictaphone* , 161 F.3d 363, 367 (6th Cir. 1998)

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001)

*Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450 (6th Cir. 1993)

*In re Cardizem CD Antitrust Litig.* 200 F.R.D. 326 (E.D.Mich. April 3, 2001)

*Surles ex rel. Johnson v. Greyhound Lines*, 474 F.3d 288 (6th Cir. 2010).

REDACTED

## Introduction

Wire Harness and other Certain Defendants (together, "Defendants"), who paid hundreds of millions of dollars[1] in fines would have this Court believe that, were it to leave in place Master Gene J. Esshaki's June 18 Order governing the depositions of End-Payor Plaintiffs ("the End-Payors") and Auto Dealer Plaintiffs ("the Dealers"), which already requires 616 hours of Dealership depositions, Defendants would be unable to adequately defend themselves against the consequences of their criminal conduct. Indeed, they go so far as to insist that Master Esshaki's order runs afoul not only of the law, but also of "fundamental due process protections." Cert. Defs.' at 23. But despite the fact that Defendants have submitted two separate briefs, each of which is far longer than is permitted by the practice guidlines of this Court, [2] Defendants have

---

[1] For instance Bridgestone Corporation paid $425 million criminal fines, Furukawa Electric Corporation paid $200 million in fines, Mitsubishi Electric Corporation (MELCO) to pay a $190 million criminal fine. The list goes on.

[2] Both of Defendants' briefs are in 12 point font, not 14 point font, as is required by LR 5.1(3), but Defendants' briefs are both 25 pages in length, in violation of Judge Battani's Practice Guidelines, which specify that motions in 12 point font, and should not exceed 20 pages. Defendants have previously acknowledged that these guidelines govern the length of briefs in 12-point font. *See* (Doc # 290) in Case No. 2:12-cv-00102-MOB-MKM (Filed 03/30/15) at 4 attaching practice guidelines with the following portion highlighted "[d]ocuments should be prepared in 12 point type and double spaced. Motions and responses are allowed a maximum of *20 pages*." *See* (Doc # 290-1) in Case No. 2:12-cv-00102-MOB-MKM (Filed 03/30/15). Defendants have, in an attempt to put additional pages of briefing before this Court, skirted the rules of this Court, without obtaining Plaintiffs' assent for this modification. A court in this District has previously struck objections to a master's order for not complying with the brief

1

REDACTED

failed to demonstrate that Master Esshaki abused his discretion in setting forth any of the provisions of his Order, or even to cogently explain for what reason they require hundreds of additional Dealer depositions. In truth, each of the three provisions to which Defendants object serves an important purpose in ensuring that the Dealer depositions are conducted in a manner that is fair to Defendants but not unduly burdensome to the Dealers. Defendants may not like the balance struck by the Master in his Order, but that hardly constitutes grounds for this Court overturning it.

First and foremost, Defendants object to the limitation on depositions set forth in Paragraph 1, which provides in relevant part that Defendants "collectively may take no more than one (1) deposition under Rule 30(b)(1) and one (1) deposition under Rule 30(b)(6) of each Auto Dealer Plaintiff," each of which shall be seven hours in length. Doc # 1005 ("June 18 Order"), at 1-2. Defendants' principal argument against this provision is that it is the product of Master Esshaki's "erroneous" interpretation of this Court's statement during a conference on January 28, 2015. Wire Harness Defendants' Objections and Motion to Modify Master Esshaki's June 18, 2015, ECF No. 1008 and 1010 in Case No. 2:12-md-02311-MOB-MKM WH Defs.' Mem. at 9. But Defendants seek to have it both ways. On the one hand, they criticize the Master for failing to use his own discretion in devising his deposition protocol. On the other, they

---

page requirements mandated by the local rules. *See Chang Lim v. Terumo Corp.*, No. 11-12983, 2013 WL 6896444, at *1 (E.D. Mich. Dec. 31, 2013) (striking overlong brief).

REDACTED

criticize him for departing from the statements made by this Court. In fact, Defendants are wrong

on both counts: the Master's Order is not only sensitive to this Court's concern about the undue

burden of repeated Plaintiff depositions, but is self-evidently a compromise of the parties'

positions, fashioned by the Master using the discretion afforded him by Rule 53(f)(5) of Federal

Rules of Civil Procedure. More importantly, the Order, far from constituting an abuse of

discretion, is more than fair: two depositions of each of the forty-five Dealer Plaintiffs, running

616 hours and over 15 weeks in total length, are more than enough to ensure Defendants can

adequately defend themselves, particularly since they have failed to convincingly explain why

they require more. Defendants, on the other hand, seek an amount of depositions that is so

burdensome that it could well prevent Dealership Plaintiffs from being able to pursue their

claims in this litigation.

Defendants' objection to Paragraph 2 of the Order fairs no better. Paragraph 2 provides in

relevant part that that "In advance of a Rule 30(b)(1) deposition . . . Defendants collectively shall

serve an outline that identifies the general topics on which the Defendants reasonably and in

good faith expect to examine the witness." Special Master Esshaki's June 18, 2015 Order ("June

18 Order") June 18 Order at 2.  This provision was included to streamline indirect purchaser

depositions and is key in facilitating their efficient progress.

Finally, Defendants object to Paragraph 4 of the Order, which provides in relevant part

that "[n]ot more than three defense counsel may examine each . . . Auto Dealer Plaintiff witness

absent good cause." June 18 Order at 2.  In a case with fifty Defendant families, many of whom

will have predictably duplicative and overlapping questions for the indirect purchasers, all of

REDACTED

whom purchased a car, not specific parts, this coordination is necessary to avoid chaos and confusion at each deposition.

For these reasons, as well as additional reasons set forth below, this Court should overrule Defendants' objections to the Special Master's Order.

## Background

During a status conference on January 28, 2015, this Court, while not issuing any rulings on the depositions of the Dealers and End Payor Plaintiffs, "put in [its] two cents' worth" on the deposition protocol. Transcript of January 28, 2015 Status Conference, at 24, *see* Exhibit A. First, it stated its view that Defendants from the various cases would have to coordinate their depositions of Plaintiffs, so that depositions would not be duplicated across the various cases. *Id.* at 24 ("[D]o you take a deposition of each plaintiff in each part? That's impossible, that is not going to happen."). Second, this Court made clear its view that, for the most part, Defendants needed only one deposition of each Plaintiff, be it Dealer or End-Payor. *Id.* at 26 (explaining to Defendants that they could get the "information you need and at the same time only do a single deposition of most of these named plaintiffs"); *id.* at 24 (stating that Defendants could get the information they needed "in one deposition of a named plaintiff"); *id.* at 27-28 ("[T]here is not going to be duplication unless it comes to me first that you need a second deposition."). Finally, this Court explained that a template of Defendants' questions would aid the examination of Plaintiffs to proceed in an efficient manner. *Id.* at 33.

Immediately following this Court's comments on the deposition protocol, Master Esshaki, who was present at the conference, stated that he "agree[d] completely" with the

REDACTED

Court's suggestion that there be "one dep" across all parts, explaining that "I think otherwise you are going to have thousands of depositions in this case." *Id.* at 35.

On May 6, 2015, this Court held another status conference. There, with Master Esshaki present, this Court underscored that, despite its comments during January 28 Conference, the Master retained the discretion to issue whatever ruling on Plaintiff depositions he saw fit: "[W]hat I'm thinking on these issues right now is not really important, it is . . . the argument between the parties and the decision of the master that counts, and then if there is an objection I will deal with it." Transcript of May 6, 2015 Status Conference, at 28, *see* Exhibit B.

That afternoon, the Master held a lengthy conference on the deposition protocol for Dealers and End-Payors. At that conference, counsel for Defendants argued that Plaintiffs and Master Esshaki had misconstrued this Court's comments during the January 28 Conference. According to Defendants, this Court had simply meant to suggest that there should be one deposition per each witness across all the cases, not that there should be one deposition of each Plaintiff. Transcript of May 6, 2015 Conference Before Master Esshaki, at 13, *see* Exhibit C. Master Esshaki disagreed, explaining that this Court believed it was appropriate to "limit'" the number of depositions of each Plaintiff. *Id.* at 25. Nonetheless, the Master noted that, despite this Court's statements at the January 28 Conference, he had the discretion to decide how many depositions of each Dealer Plaintiff would be permitted:

> How many of the auto-dealer plaintiffs -- how many of the auto-dealer plaintiffs' depositions is up in the air for at least this moment . . . so the only question is should the auto-dealer plaintiffs' depositions be limited to one per dealer or should they be three 30(b)(1) and 18 hours of 30(b)(6) or should they be something else?

5

REDACTED

*Id*. at 20.

Defendants argued that there should be three Rule 30(b)(1) depositions and 18 hours of Rule 30(b)(6) depositions. [3] The Dealership Plaintiffs argued that there should be only one deposition of each Dealer. Ultimately, Master Esshaki took an intermediate position, concluding that Defendants would be permitted to take two depositions—one Rule 30(b)(1) deposition and one Rule 30(b)(6) deposition. *Id*. at 27.  This determination was based on the Master's own reasoning that Defendants may need to depose a witness who can explain what the dealership's "business is, how many cars he buys and so forth" and someone who speak to the dealership's "paperwork." Transcript of May 6, 2015 Hearing before the Master, at 17, *see* Exhibit C.  To make certain that these basis would be covered and because two deponents may be needed to testify on these topics the Master ruled that each Dealership Plaintiff would be subject to a 30(b)(1) deposition and a 30(b)(6) deposition.

Subsequently, on May 26, 2015, Master Esshaki made several other rulings clarifying the issues surrounding Plaintiff depositions. Specifically, he ruled that (1) the 30(b)(6) depositions of Dealer Plaintiffs would be eight hours in length, with one hour allocated to Plaintiffs, Transcript of May 26, 2015 Conference Before Master Esshaki, at 7, *see* Exhibit D; (2) that Defendants would be required to notify Plaintiffs in advance of the topics to be covered

_____

[3] Defendants erroneously state that Dealership Plaintiffs did not contest the 18 hours of 30(b)(6) Defendants have sought.  Dealerships have always taken the position that this amount of hours, which is equivalent to three 30(b)(6) depositions, is entirely unreasonable.

REDACTED

in all Rule 30(b)(1) depositions, *id*. at 25; and (3) that no more than three defense attorneys

would be permitted to examine indirect purchaser plaintiffs at the Plaintiff depositions, *id*. at 7.

On June 18, 2015, the Master issued an Order, memorializing the rulings he made during

the May 6 and May 26 conferences. Shortly thereafter, Defendants filed two separate,

overlapping sets of objections to that Order.

### Argument

## I.    Master Esshaki's Order Should Be Reviewed for Abuse of Discretion

Under Federal Rule of Civil Procedure 53(f)(5), "[u]nless the appointing order establishes

a different standard of review, the court may set aside a master's ruling on a procedural matter

only for an abuse of discretion." "Abuse of discretion is defined as a firm and definite conviction

that the [adjudicator to whom discretion is afforded] committed a clear error of judgment." *Jones

v. Robinson*, 37 F. App'x 761, 762 (6th Cir. 2002). Demonstrating abuse of discretion is

therefore a "heavy burden." *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1466 (6th Cir.

1993). *See, e.g.*, *Bush v. Dictaphone*, 161 F.3d 363, 367 (6th Cir. 1998) (limiting length and

subject matter of one corporate deposition and forbidding another corporate deposition was not

an abuse of discretion).[4]

---

[4] Certain Defendants cite *McKinley v. City of Mansfield, et al.*, 404 F.3d 418(6th Cir. 2005) as an
example of a case wherein an abuse of discretion occurred concerning a discovery issue. In
*McKinley*, the Sixth Circuit held that it was an abuse of discretion for a district court to "offer[]
no explanation for limiting discovery." *Id.* at 443. It can hardly be said that the Master here

REDACTED

The rulings on discovery matters addressed in Master Esshaki's June 18, Order are procedural matters—they concern the number, length, and ground rules for depositions of Dealers and End-Payors. Therefore, this Court may set aside Master Esshaki's order only if it constitutes an abuse of discretion. *See Nippon Steel & Sumitomo Metal Corp. v. Posco*, No. CIV.A. 12-2429 SRC, 2014 WL 1266219, at *1 (D.N.J. Mar. 26, 2014)("The rulings on discovery matters contained in the Order of August 22, 2013 are procedural matters, and they will be reviewed under an abuse of discretion standard."); *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (same).

Defendants do not dispute that Master Esshaki's June 18, 2015 Order, as it concerned both paragraph 1 and paragraph 2 was procedural in nature.[5] And yet, they insist that Master

---

offered no explanation for limiting discovery to two depositions per Dealer Plaintiff. Quite the contrary, the Master held a lengthy conference, where he balanced Plaintiffs concerns about the undue burden of subjecting Dealer Plaintiffs to multiple depositions against Defendants' concerns about being able to only depose one representative from each Dealer Plaintiff. It was through this process that the Court ultimately concluded, contrary to the wishes of both parties, to permit one Rule 30(b)(6) deposition and one Rule 30(b)(6) deposition of each Dealer. Other cases cited by Defendants as examples of abuses of discretion are equally inapposite. *See, e.g., Marsico v. Sears Holding Co.*, 370 F. App'x 658, 665 (6th Cir. 2010) (abuse of discretion to not allow plaintiff in an employment discrimination case to depose two executives who made arguably discriminatory statements about plaintiff, as no one but those witnesses could explain the motivation behind their statements).

[5] Defendants cite to Fed. R. Civ. P. 53(f)(4) for their argument that the order's requirement that they provide outlines of their 30(b)(1) areas of questioning to plaintiffs is subject to de novo review.  Fed. R. Civ. P. 53(f)(4) deals with conclusions of law made by a master.  But the Master's ruling concerning Defendants' outline not a conclusion of law, but a factual ruling,

REDACTED

Esshaki's rulings should be reviewed *de novo*, because "Master Esshaki did not use his discretion when he issued his June 18 rulings." WH Defs.' Mem. at 8; Cert. Defs.'s Mem. at 4 n.1.

Lacking any relevant authority for the proposition that *de novo* review is merited in such a circumstance, the Wire Harness Defendants liken this case to *Government of the Virgin Islands v. 19.623 Acres of Land*, 602 F.2d 1130, 1136 (3d Cir. 1976), which stands for the proposition that, where an adjudicator is unaware that it has the ability to exercise discretion, its actions are necessarily an improper exercise of that discretion. But Defendant's suggestion that Master Esshaki was unaware of his discretion in issuing his June 18 Order is false. It is belied by the transcripts of the two proceedings before him in May 2015, which demonstrate that Master Esshaki exercised discretion in setting forth the rulings in his July 18 Order. Indeed, this must be so, as Master Esshaki concluded that Defendants could depose two witnesses from each Dealer Plaintiff, a resolution different than the one deposition per Plaintiff raised by this Court at the January 28 Conference.

In short, Master Esshaki did not make his rulings in the June 18 order because he was bound by the Court's comments at the January 28 Conference. Rather, he did so because he believed that the indirect purchaser depositions should be targeted and streamlined. Exhibit A at

---

concerning a procedural issue, namely how best to streamline the depositions of indirect purchaser plaintiffs.

REDACTED

35. Thus, the Master's June 28 Order should not be disturbed unless it constitutes an abuse of discretion.[6]

## II.   Paragraph 1 of Master Esshaki's June 28 Order Permitting Defendants to Take Two Depositions of Each Plaintiff Was Not an Abuse of Discretion.

### A.   The Master Did Not "Misunderstand" This Court's Statements, and Even If He Had, It Would Not Render His Order Invalid

Defendants primary objection to Master Esshaki's Order is that it "is based solely on his erroneous" interpretation of this Court statements on January 28, 2015. WH Def.'s Mem. at 9; *see also id*. at 1 (arguing that Master Esshaki's decision to limit the number of depositions per Plaintiff was based upon his "misunderstanding" of this Courts comments at the January 28 Conference). For at least two reasons, this argument misses the mark.

First, a fair reading of this Court's January 28 statements reveals that it is Defendants, and not Master Esshaki, who misunderstand the Court's statements.[7] At the January 28 Conference, this Court repeatedly and unequivocally stated that one deposition of each Plaintiff was appropriate:

――――――――――――――――――

[6] Defendants argue that, aside from this Court's comments during the January 28 Conference, nothing has changed that could reasonably have altered Master Esshaki's view as to the appropriate number of depositions.  Not so.  For example, since Master Esshaki's initial protocol, Dealers have dropped their replacement claims in all cases. This greatly lessens the amount of discovery Defendants need to defend themselves against the Dealers' claims.
[7] Notably, Master Esshaki indicated that the Court was suggesting one deposition per Plaintiff directly after this Court's January 28 remarks, *see* Ex. A at 34 (noting, directly after this Court's January 28 statements, that this Court favored "one dep, one person").

10

REDACTED

- "[T]here [will] be one deposition." Ex. A at 24
- "[D]o a single deposition of most of these named plaintiffs." Id. at 26.
- "[T]here is not going to be duplication unless it comes to me first that you need a second deposition." *Id.* at 27-28.

In making these and other, similar statements at the January 28 Conference, this Court's clear thinking was that all plaintiffs should be subjected to one deposition across all parts. Indeed, this is made all the more evident by the fact that this Court did not disabuse the Master of his understanding expressed immediately thereafter, of the Court's view that there should be only "one dep" of each Plaintiff. *Id.* at 34.

Second, assuming for the sake of argument that Master Esshaki did misconstrue this Court's comments at the January 28 Conference, this would not render his rulings on the number of Dealer depositions, the number of examiners from the defense side and the provision by Defendants of an outline to plaintiffs an abuse of his discretion.  He issued these rulings not because this Court required him to—indeed, this Court reminded the Master before he issued his May 6 ruling that he was not bound by this Court's comments at the January 28 Conference. After this statement was made at the May 6 status conference, the Master held an extensive hearing on the issue of depositions and heard argument from both Plaintiffs and Defendants, at which he stated that "[h]ow many of the auto-dealer plaintiffs -- how many of the auto-dealer plaintiffs' depositions is up in the air for at least this moment."  He then, after hearing argument from both parties, ruled that defendants would receive two depositions from each Dealership Plaintiff, based on his own reasoning that defendants would want to explore the workings of each dealership as well as its "financials."  *See* Transcript of May 6 Hearing before the Master, at 17, Exhibit C.  Also, "to streamline the witnesses' examinations" he ruled that Defendants would

11

REDACTED

provide plaintiffs with an outline of their areas of questioning before 30(b)(1) depositions. Exhibit D, at 14. By this same token, the number of Defendants who may question an indirect purchaser was limited to three examiners.  Exhibit D, at 7. The Master also independently stated that he "agree[d] completely" with the concerns outlined by this Court, as he understood them. Exhibit A, at 34. Whether the Special Master addressed those concerns in the same manner as this Court would have is beside the point, as it is the job of the Special Master to develop the discovery procedures he sees fit.

For the reasons set forth below, Paragraph 1 of the Master's Order is far from an abuse of discretion; it is beyond fair. Thus, whatever meaning this Court ascribes to its comments during the January 28 Conference, the Master's decision is not abuse his discretion in limiting Defendants to taking two depositions per Dealer. Nor did the Master abuse his discretion in taking modest measures to streamline the indirect purchaser depositions by ordering that three defense attorneys may question the deponent and that Defendants were to provide an outline of their topics to Plaintiffs before deposing the fact witnesses.

### B.  Two Depositions Per Plaintiff Is More Than Enough for Defendants To Adequately Defend Themselves

Defendants argue that the Master's Order constitutes an abuse of discretion because the 600+ hours of depositions they have been granted are not enough time. WH Defs.' at 11. However, Defendants have failed to offer a compelling reason why this is insufficient.

As the Sixth Circuit has stated, "[d]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *See Surles ex rel. Johnson v. Greyhound Lines*, 474 F.3d 288, 305 (6th Cir. 2010).

12

REDACTED

"Specifically, the Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)). The burden of two days of depositions per Dealership is especially important to consider here, when there are forty-five Dealerships. Six days of depositions for each Plaintiff, as Defendants propose, would result in an enormous number of depositions. [8] The burden of participating in all of these depositions would be added to Dealerships' burden of producing over 300,000 pages of documents for over a year of this litigation, as well as the burden of the downstream production that the Dealers have recently

_____

[8] In addition to objecting to the Special Master's deposition protocol, Defendants ask this Court to grant them three Rule 30(b)(1) depositions and 18 hours of Rule 30(b)(6) depositions.  Cert. Defs.' Mem. at 6; WH Mem. at 9. Under this proposal, the forty-four Dealers would have only three hours of 30(b)(6) depositions fewer than the felonious international corporations that pleaded guilty to the criminal conspiracy in this case, and whose conduct is primarily at issue here. It would also be the same number as Direct Purchasers who interacted with Defendants with whose specific transactions with Defendants must be explored because their purchases constituted the transactions in which Defendants' price-fixed products passed into the stream of commerce. Moreover, excluding the preparation necessary to defend three days of Rule 30(b)(6) testimony and three days of 30(b)(1) depositions, the time commitment of the Dealership Plaintiffs would stretch into over two thousand hours, and would require an enormous outlay of Dealers' resources. The implementation of Defendants' plan would take well over a year of Dealers and Dealers' counsel's time, alone, not factoring in any of the time require to take defense or OEM depositions.

13

REDACTED

agreed to undertake. All of these burdens could very well prevent Dealerships from pursuing

their claims in this litigation.

In an attempt to demonstrate why this additional burden is justified, Defendants have put

forth several rationales for the hundreds of additional hours of depositions that seek. Ultimately,

however, none holds water.

### 1. Defendants Do Not Need Additional Depositions to Gather the Necessary Information on Dealers' Upstream and Downstream Transactions.

Defendants claim that they require over a thousand hours of depositions beyond those

they have already been granted in order to investigate various ancillary aspects of Dealerships'

businesses, and to move discovery far beyond the actual prices dealers paid for their new

vehicles.

The Master has made his opinion clear that ancillary topics, such as financing and

promotions, that concern the broader operations of each dealership's business are irrelevant here.

For instance, the Master ruled that "Defendants' request for financing and promotional

information relating to acquisition of Automotive Wire Harness Systems and vehicles is

DENIED as this information is irrelevant, not likely to lead to the discovery of relevant

information . . . ."  Order, Case No. 2:12-cv-00102-MOB-MKM (Doc # 214) (Filed 10/16/14)

(October 16 Order), at 1, Ex. E. The Master similarly ruled that "Defendants' request for

monthly payment information relating to acquisition of Automotive Wire Harness Systems and

vehicles is DENIED as this information is irrelevant, not likely to lead to relevant information . .

. ." *Id.* at 2.

REDACTED

It is clear that terms that were not the actual price of a vehicle are not relevant. And this makes sense;

████████████████████████████████████████████████████

Other judges, including in this District, agree. As Judge Edmunds stated in *Cardizem*, "[t]he typical measure of damages is the difference between the actual price and the presumed competitive price multiplied by the quantity purchased. This was the calculation that the Supreme Court approved in *Chattanooga Foundry & Pipe Works v. Atlant*a, 203 U.S. 390, 396, 27 S.Ct. 65, 51 L.Ed. 241 (1906) ]." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 309-310 (E.D. Mich. 2001) (citing ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues, Ch. 6, "Overcharges" at 172 (1996)).  *See also In re Cardizem CD*

15

REDACTED

*Antitrust Litig.* 200 F.R.D. 326, 349 (E.D.Mich. April 3, 2001) (accepting damage methodology measuring the difference between the but-for and actual prices). "Defendants, however, may not establish an absence of antitrust injury simply by showing plaintiffs secured alternative revenue sources." *In re Airline Ticket Com'n Antitrust Litigation*, 918 F.Supp. 283, 287 (D. Minn.1996). Defendants cannot avoid their liability by pointing to some other income the Dealership was able to obtain.

Despite the fact that this type of information is irrelevant, Dealership Plaintiffs have agreed to and are in the process of producing data and documents that speak to ███████. ███████████████████████████████████████ ████████ *See* Stipulation, Case No., 2:12-cv-00103-MOB-MKM (Doc # 312) (Filed 05/12/15), at ¶1, Attachment A ███████████████████████ ███████████████████████████████████████ ████████ ¶3 (Dealership Plaintiffs agreeing to produce "documents reflecting incentives, rebates, and promotions offered to Dealer Plaintiffs or consumers"; "documents reflecting monetary and non-monetary incentives offered to new car buyers"). Dealership Plaintiffs have also thus far produced nearly 300,000 pages of documents concerning Dealerships' purchases. This should more than cover the information Defendants state they need. However, if Defendants have additional inquiries regarding these topics after reviewing Dealership Plaintiffs' documents, 616 hours of testimony should more than suffice to respond to any questions they have.

16

REDACTED

Defendants also argue that they need over a thousand more depositions to explore Dealership Plaintiffs' "process and strategies for acquiring cars," Certain Defs.' Mem. at 10," and the strategies for selling cars, WH Defendants' brief, at 16.  The Master has already denied Defendants' document discovery requests "purchasing strategies" "as this information is irrelevant, not likely to lead to discovery of relevant information . . . ."  October 16 Order at 2. The same reasoning is applicable with regard to sales strategies.  Again, this is because Plaintiffs' damages are determined by looking at the "actual price" *Cardizem*, 200 F.R.D. at 309-301, they paid, not the mechanics of how the sale or purchase was facilitated.

Defendants emphasize that what they really seek is information about dealerships' interactions with consumers and OEMs.  But not only have Defendants obtained discovery from over fifty end-payors regarding their purchases from dealerships, they have also, in an action that Defendants have failed to disclose to this Court subpoenaed documents from each dealership where end-payors purchased their vehicles.  In addition, Defendants will take hundreds of hours of testimony from these end-payors regarding how they made their purchases from each dealership, what additional products they purchased, how any negotiations proceeded and how "other factors" such as "gender, race, income, education"  WH Def. Memo., at 18, affected sales. Defendants hardly have need to shift these discovery burdens to dealership plaintiffs.

In addition, Defendants have just recently obtained permission to subpoena OEM documents, after arguing that this information was not obtainable from Dealership Plaintiffs. Defendants will seek from the OEMs they subpoena information about the rebates, incentives, allocation of vehicles, and sales targets from OEMs to Dealerships, as well as the factors

17

REDACTED

affecting the Dealerships' purchase price, and Dealership sales information, among other topics. Defendants will also likely depose OEM employees to further explore this information. In conjunction with 90 Dealership Plaintiff depositions, this should be more than sufficient. In short, Defendants already have sufficient information on Dealers' purchases from OEMs, and have failed to explain why any additional data they want cannot be obtained through the allotted depositions.

What the foregoing descriptions underscore is that no matter how much discovery Defendants are granted they will always demand more.  At a certain point, limitations must be placed on this discovery so that the litigants are not burdened to the point of having to abandon their claims. Defendants seek to make discovery so burdensome as to require Dealerships to withdraw from the litigation.  This is something this Court has already stated it would not allow and it should not be allowed here.

      **2.**    **The Fact That Some Dealers Sell Cars from Different OEMs Does Not Necessitate Additional Depositions**

Wire Harness and Certain Defendants also argue that they need more than 616 hours of depositions from Dealers because there are multiple brands of vehicles at issue and multiple OEMs. WH Mem. at 8.

First, Defendants assume that, in such a situation, no employees at a multiple OEM dealer would have sufficient knowledge related to the various brands to serve as a useful witness to Defendants in all parts cases involved. Such an assumption is entirely unfounded. Dealership plaintiffs intend to offer a comptroller or owner who can speak to the functions of the entire dealership rather than focus on one brand to the exclusion of others.

18

REDACTED

Second, there are forty-five Dealers in this case, who sell vehicles made by every relevant OEM, meaning Defendants will have the ability to take forty-five Rule 30(b)(1) depositions, in addition to forty-five Rule 30(b)(6) depositions, covering the range of OEMs, most of whom are covered by a number of Dealership Plaintiffs. Surely, through these ninety depositions, Defendants will be able to ascertain all the information they require about a given OEM and its methods and procedures for selling cars to Dealers. Finally, as this Court explained on January 28, where there is good cause, Defendants can seek an additional deposition from the Court. Ex. A at 26. And to the extent Defendants can demonstrate that they will be prejudiced absent an additional Rule 30(b)(1) deposition of a given Dealer, they can seek leave from the Court to take that deposition.

It is also worth noting that Defendants raised the very argument they make here with the Special Master, at the May 6 hearing. The Special Master rejected it outright. *See* Exhibit C at 22.

### 3.   Defendants' Predominance Argument Does Not Justify the Addition of over A Thousand Hours of Dealership Depositions

Defendants' argument that they need thousands of hours of dealership depositions to explore vehicle purchase prices in order to defeat Dealers' or End-Payor's ability to show predominance is misplaced. As this Court has recognized, "common issues often predominate as to the liability element of an antitrust conspiracy claim because consideration of the conspiracy issue would, of necessity, focus on defendants conduct, not the individual conduct of the putative class members." *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 548 (E.D. Mich. Sept. 13, 2013) (quoting *In re Flat Glass Antitrust Litigation*, 191 F.R.D. 472, 484 (W.D. Pa. 1999)).

19

REDACTED

Thus, any minor differences in damages suffered by a certain Dealer will not undermine their ability to show that common questions predominate. *See Cardizem CD*, 200 F.R.D. at 347 (declining to address the defendant's pass-on defense in its class certification analysis because "[d]espite Defendants' claims to the contrary, the presence of individualized defenses, such as mitigation, going only to damages are generally regarded as no barrier to class certification" (internal quotation marks and citations omitted); *see also Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 513 (9th Cir. 2013) (noting that individualized "damage calculations alone cannot defeat certification"). [9]

Defendants state that they require more than the 600+ hours of dealership depositions allotted them to "analyze every factor that affects the prices at which the auto dealers bought and sold new cars." WH Def. Memo., at 13. But the argument that there are "multiple factors which affect rates" relates to "damages rather than impact or injury." *See In re Workers' Compensation*, 130 F.R.D. 99, 110 (D. Minn.1990).  As has been stated in this District in another indirect purchaser case, examination of "each class member's individual circumstance" "will

---

[9] Defendants suggest that, in the wake of the Supreme Court's decision in *Comcast v. Behrend,* 133 S.Ct. 1426 (2013), any discrepancies in the damages suffered by individual dealers are of heightened importance. Not so. As the Sixth Circuit explained in *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.),* 722 F.3d 838, 860–61 (6th Cir. 2013) , *Comcast* "premised on existing class-action jurisprudence," and it therefore "it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members."

REDACTED

relate to the quantum of damages; not the fact of injury." *In re Cardizem CD Antitrust Litig.* 200 F.R.D. 326, 341 (E.D.Mich. April 3, 2001). "Non-uniformity of the prices at which plaintiffs purchased their goods is not fatal to certification." *Workers' Compensation*, 130 F.R.D. at 108. "As long as the existence of a conspiracy is the overriding question, then the class has met its predominance requirement." *Id.* at 108-09. Because the details of Dealers' transactions will not affect the ultimate trajectory of this case, requiring additional depositions to uncover such information would be unnecessary and unjustifiably burdensome. *See Surles*, 474 F.3d at 305.

### 4. Paragraph 1's Limitations on Dealer Depositions Is Consistent with Prior Precedent.

The Master's order is entirely consistent with prior precedent. For example, in *Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS (JCS), 9/23/2013 Order Re Deposition Protocol No. 2, ¶ I(H), attached as Exhibit F, another antitrust class action against conspirators in a bid-rigging conspiracy, the court ordered one deposition of each indirect purchaser plaintiff.

Defendants note that in other cases, defendants have been permitted to conduct more than two depositions of a given plaintiff.  First, these cases are distinguishable.  The plaintiffs set forth the *In re: Credit Default Swaps Antitrust Litig.,* No. 13-md-2476-DLC, ECF No.326-1 (S.D.N.Y. Sept. 16, 2014), deposition protocol were all direct purchasers, such as public pension funds or pension fund management companies.  In fact, at least one of them engaged in transactions with almost every one of the fourteen Defendants.  Such plaintiffs would of course be subject to much greater amounts of depositions, given that each transaction with a defendant would potentially need to be explored as it was the point at which the overcharge entered the stream of commerce. Further, not in one of these cases were defendants permitted to take even

21

REDACTED

90 depositions of one indirect purchaser plaintiff group, as they are currently allowed to do here, amounting to over six hundred hours of depositions. *In re: Polyurethane Foam Antitrust Litig.,* No. 1:10-md-02196, ECF No. 241 (N.D. Ohio Sep. 15, 2011), there was a limit of 100 depositions total, as to all corporate plaintiffs, including the direct purchaser plaintiffs and the opt-out direct purchaser plaintiffs, who would likely account for the vast majority of depositions taken, given their contact with the defendants and their positions in the case.  There is no precedent that Dealership Plaintiffs are aware of for over two thousand hours of depositions of one group of indirect purchaser plaintiffs.

There were also far fewer corporate entity plaintiffs in each of the cases Defendants cite. None of these cases had forty-five small retailer indirect purchaser plaintiffs.  For instance, there is a total of two corporate indirect purchaser plaintiffs in named in the *CRT* indirect purchaser complaint operative at the time of that protocol.  Thus, the order on the number of corporate plaintiff depositions once again applied mainly to direct purchasers.  As asserted, direct purchaser depositions are not an appropriate corollary for indirect purchaser depositions.

Second, even if the cases Defendants cited were on point, the fact that the Master's protocol allowed for fewer plaintiff depositions than were permitted in other cases does not in any way suggest that Master Esshaki abused his discretion, as applied to the specific facts of this case. Indeed, the fact that there are protocols permitting a range of depositions of corporate plaintiffs demonstrates that the decision should be firmly within the discretion of the Special Master. *Accord Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1131 (7th Cir. 2002) (explaining that an abuse of discretion "standard means something more than [a court's] belief

22

REDACTED

that [it] would have acted differently if placed in the circumstances confronting the [adjudicator]. For an abuse of discretion to occur, the [adjudicator's] decision must strike [the court] as fundamentally wrong." (internal quotation marks and citations omitted)).

### 5. Defendants' Arguments Regarding Dealerships' Productions Are Unavailing

Defendants argue that Dealership Plaintiffs' transactional documents and data raise a number of questions that they will need answered. First, they do not explain why the 315 hours of 30(b)(6) depositions they have been granted will not be sufficient for them to obtain the explanations they seek. Second, it is unlikely that even someone familiar with a dealership's finances will be able to recall in the midst of a deposition ███████████████████████ ████████████████████████ Expanding depositions for these types of inquires will not result in a benefit that is likely to outweigh the burden of the additional depositions Defendants seek. Further, these questions may be posed to Dealerships in the same way that Plaintiffs have posed them to Defendants, via discovery letters. Defendants' argument thus provides no basis to triple the number of hours that Dealership Plaintiffs are subjected to depositions.

Defendants also argue that Dealerships' data and documents, despite ███████████ █████████████████████████████████████████████████████████ and hundreds of thousands pages, will in addition to 616 hours of depositions be insufficient to cover all of the information they say they need, because they do not cover all of the categories ██████ ███████ Defendants seek. But as Defendants acknowledge, they are subpoenaing additional information, to supplement Dealerships' productions, from the OEMs who sold vehicles to the dealerships and who will have copious amounts of documents and data including about

23

REDACTED

Dealerships' purchases.  The subpoena Defendants intend to serve covers all possible aspects of every purchase by a dealer and sale to consumer made during the class period and Defendants admit OEMs will have information about Dealership and consumer transactions.

Further, Defendants' production does not cover the entire time period for every category of information plaintiffs seek. If every lacking category of documents were a basis to increase deposition time, plaintiffs would be entitled to a far greater number of Defendant depositions.

## III.     Master Esshaki Did Not Abuse His Discretion by Requiring Defendants to Submit Examination Topics to Plaintiffs.

In issuing his orders on the indirect purchaser depositions, the Master sought to put procedures in place that would ensure these depositions proceeded efficiently and that the parties were adequately prepared, such that the depositions could be effectively limited as he and the Court had indicated they should be.  Thus, "to streamline the witnesses' examinations" he ruled that Defendants would provide Plaintiffs with an outline of their areas of questioning before 30(b)(1) depositions.  Exhibit D, at 14.  This requirement will aid in the depositions being kept to the allotted time limits and prevent them from running over because a plaintiff witness does not understand what information Defendants are seeking.  This requirement will hopefully also prevent depositions of already deposed indirect purchaser witnesses from later being re-opened.  If Defendants are required to determine together well before a deposition what topics they wish to cover, they will be much less likely to generate topics after a given plaintiff has been deposed that will require that plaintiff to be deposed once again.

24

REDACTED

Defendants argue that being asked to provide an outline to Plaintiffs will undermine the truth-seeking function of the depositions.  But the Master was clear that he would not require Defendants to submit their questions to Plaintiffs, but instead require an outline of topics on which Plaintiffs would be questioned.  A list of topics will not prevent Plaintiffs' witnesses from providing spontaneous answers to questions they have never seen before.  If Defendants' arguments were true, then parties also would not exchange document lists prior to depositions or 30(b)(6) outlines.  Some level of transparency and cooperation is required to ensure that depositions proceed efficiently.

Defendants express concern that the outline will give rise to objections, but their arguments assume that Defendants will not comply with the outline requirement, by for instance, including topics at a deposition that were not included in the outline.  If the parties comply with the requirements of the order, problems like these should not arise.

## IV.    Master Esshaki Did Not Abuse His Discretion By Limiting the Amount of Defense Counsel That Could Question Dealers to Three Examiners.

As part of his attempt to streamline depositions, the Master ordered that Defendants would choose three examiners to question indirect purchaser witnesses.  The Master did not accept Plaintiffs' position that there should be only one questioner, but instead struck a balance and allowed Defendants three questioners, ensuring adequate coverage and diversity of examining counsel.

25

REDACTED

This provision is needed to ensure that depositions do not run over the allotted time due to disagreements between defense counsel and that multiple duplicative questions are not asked by numerous examining attorneys.

Indeed, this makes sense and it would be surprising if Defendants had different questions for indirect purchaser plaintiffs, given that all indirect purchaser plaintiffs purchased the same relevant product, a vehicle, regardless of the part at issue.  In addition, many Defendants are in numerous cases, and many Defense Counsel overlap in different cases.  In light of all of this, coordination should not be an issue.

Defendants argue that some of them may be deprived of the ability to ask their questions, but if all Defendants coordinate as they have committed to doing, and include each Defendant's questions in the list of questions to be asked by the examiners, this should not transpire.

Defendants also incorrectly argue that Plaintiffs have never requested this restriction. The transcript from the May 26 transcript indicates otherwise.

## Conclusion

For all of the reasons stated above, this Court should uphold the Master's June 18 Order.[10]

Date:  June 29, 2015                     Respectfully submitted,

_____

_____

[10] Dealership Plaintiffs and Defendants have agreed that Dealership Plaintiffs could file a response brief up to 35 pages in length, in 12 point, given the volume of briefs to which Dealers now respond.

REDACTED

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Yifei Li
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

*s/ Shawn M. Raiter*
Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*/s/ Don Barrett*
Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel for the Proposed*

27

REDACTED

*Automobile Dealer Plaintiff Classes*

*/s/ Gerard V. Mantese*
Gerard V. Mantese
David Hansma
Joshua Lushnat
**MANTESE HONIGMAN ROSSMAN AND
WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
jlushnat@manteselaw.com

*Interim Liaison Counsel for the Proposed
Automobile Dealer Plaintiff Classes*

28

REDACTED

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 29, 2015 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

*/s/ Jonathan W. Cuneo*

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Yifei Li
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com