# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—    —    —

IN RE:  AUTOMOTIVE PARTS
ANTITRUST LITIGATION

MDL NO. 2311

Case No. 12-md-02311

Hon. Marianne O. Battani

**HEARING REGARDING DEPOSITION PROTOCOL**

BEFORE SPECIAL MASTER GENE J. ESSHAKI
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan
Wednesday, May 6, 2015

**APPEARANCES:**
**<u>Direct Purchaser Plaintiffs:</u>**

STEVEN A. KANNER
**FREED, KANNER, LONDON & MILLEN, L.L.C.**
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
(224) 632-4502

SARAH GIBBS LEIVICK
**KASOWITZ, BENSON, TORRES & FRIEDMAN, L.L.P.**
1633 Broadway
New York, NY  10019
(212) 506-1765

EUGENE A. SPECTOR
**SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA  19103
(215) 496-0300

To obtain a copy of this official transcript, contact:
Robert L. Smith, Official Court Reporter
(313) 964-3303 • rob_smith@mied.uscourts.gov

1   **APPEARANCES: (Continued)**
    **End-Payor Plaintiffs:**

2

3   STEVEN N. WILLIAMS
    **COTCHETT, PITRE & McCARTHY, L.L.P.**
    840 Malcolm Road

4   Burlingame, CA   94010
    (650) 697-6000

5

6   **Dealership Plaintiffs:**

7   SHAWN M. RAITER
    **LARSON KING, L.L.P.**

8   30 East Seventh Street, Suite 2800
    Saint Paul, MN   55101

9   (651) 312-6500

10  VICTORIA ROMANENKO
    **CUNEO, GILBERT & LaDUCA, L.L.P.**

11  507 C Street NE
    Washington, D.C.   20002

12  (202) 789-3960

13  ANDREW R. SPERL
    **DUANE MORRIS, L.L.P.**

14  30 South 17th Street
    Philadelphia, PA   19103

15  (215) 979-7385

16

    **For the Defendants:**

17

    STEVEN F. CHERRY

18  **WILMER, CUTLER, PICKERING, HALE and DORR, L.L.P.**
    1875 Pennsylvania Avenue NW

19  Washington, D.C.   20006
    (202) 663-6321

20

    MARGUERITE M. SULLIVAN

21  **LATHAM & WATKINS, L.L.P.**
    555 Eleventh Street NW, Suite 1000

22  Washington, D.C.   20004
    (202) 637-2200

23

24

25      (Listed appearances are only of attorneys making oral
        argument on the record before Special Master Esshaki.)

1    Detroit, Michigan

2    Wednesday, May 6, 2015

3    at about 2:55 p.m.

4                          —    —    —

5          MASTER ESSHAKI:  Ladies and gentlemen, we are

6    ready.  I understand that some agreement has been reached.

7          MR. CHERRY:  Yes, Special Master.  Steve Cherry

8    from Wilmer Hale representing Denso, and on this occasion

9    speaking on behalf of the defendants in the wire harness

10   cases.

11          As you know, there were three motions; I guess we

12   had two motions on behalf of the defendants, there was a

13   cross motion by the auto dealers that were before you today.

14   We have reached agreement with the auto dealers on a

15   stipulation.  There was a little discussion today about the

16   meeting of a particular provision that's confirmed in some

17   e-mails, and with that in mind we're comfortable going

18   forward with the stipulation, which I understand the auto

19   dealers are taking care of filing.

20          MS. ROMANENKO:  Correct.

21          MR. CHERRY:  And with that in mind, I think our

22   motions are off calendar.

23          MASTER ESSHAKI:  Am I to understand that the

24   defendants' motion to establish a schedule for auto-dealer

25   plaintiffs' production of ESI is gone?

1          MR. CHERRY:  It is resolved by stipulation.

2          MASTER ESSHAKI:  Then that the dealerships' motion

3   to resolve defendants' motion to compel downstream is gone?

4          MS. ROMANENKO:  Same, resolved by stipulation.

5          MASTER ESSHAKI:  And that's in both the auto dealer

6   cases and the end payor cases?

7          MS. ROMANENKO:  Yes.

8          MASTER ESSHAKI:  So what's left before me today is

9   the defendants' expedited motion to compel DMS data?

10         MR. CHERRY:  That's also resolved by our

11  stipulation.

12         MASTER ESSHAKI:  So I have nothing on my original

13  agenda left, and the only thing that we are going to discuss

14  is the deposition protocol?

15         MR. CHERRY:  Yes.

16         MS. SULLIVAN:  Your Honor, Marguerite Sullivan on

17  behalf of the Sumitomo defendants.

18         We have a number of topics to go through with you

19  today but --

20         MASTER ESSHAKI:  Ms. Sullivan, before you start

21  I've been troubled by this and I want you to just -- let you

22  know my thoughts.  Okay.

23         My recollection is not always 100 percent clear but

24  as I remember we worked on a deposition protocol, we came

25  very clearly to a solution, there were some open issues that

1    I ruled upon, and subsequent to that we had our status

2    conference, and at the status conference quite frankly,

3    Judge Battani, in my mind, upset the apple cart of what I had

4    been doing, and I recognized it.  I want to read to you some

5    of the notes that I have from that proceeding because it

6    relates very much to what we are doing today.  It was you and

7    Ms. Romanenko that were arguing about the auto-dealer

8    plaintiffs and the end-payor plaintiffs, as well as

9    Mr. Williams.

10           With respect to the deposition protocol, the deps

11   of end payors, each plaintiff, each part, according to

12   Judge Battani, the deposition of each end payor for each part

13   is an impossibility.

14           Next, the end-payor plaintiffs and auto-dealer

15   plaintiffs buy cars, they do not buy parts, so that the basic

16   information needed across the board should be the same

17   whether it is for wire harness parts or it is for control

18   panels, such that an outline of questions could and should be

19   prepared for all parts, for all defendants, to be asked of

20   the end payors and the automobile dealers.  Take one dep of

21   an auto dealer and an end payor with pre-approved questions.

22   Need a script, pre-approved script.

23           She said discovery will be on hold until all

24   defendants are in the case.  As far as deps, no deps are to

25   go on as to any party.  They must be conducted on behalf of

1    all defendants in a single dep.  You will need to prepare a

2    template with common questions and determine who is going to

3    conduct the deps.  The defendants are to have 45 days within

4    which to prepare the template and decide who is going to

5    examine the witness.

6            The depositions will be useable in all of the

7    cases, and if there are any special questions that any

8    particular defendant wants to have asked they are to submit

9    them to me and to determine whether they should be included

10   in that particular person's deposition.

11           Now, those are the end of my notes with respect to

12   the deposition protocol.  I then issued what I thought was a

13   proper clarification order that said the prior order that I

14   made really was no longer valid because of what Judge Battani

15   indicated in our status conference, and that there is going

16   to be a deposition protocol that stretches across all cases,

17   literally that's what she said, there is not going to be a

18   wire harness protocol, there is not going to be a bearing

19   protocol, there is not going to be wipers protocol, it is one

20   protocol stretching across all cases when you are dealing

21   with the auto-dealer plaintiffs and dealing with end-payor

22   plaintiffs because all they did was buy, sell and purchase a

23   car.

24           So the data that you will receive from each of

25   those different parties, the dealers and the end payors, will

1    be the same no matter if you are asking the question on

2    behalf of the wire harness defendants or the bearings

3    defendants.  That's what we need to do.

4            MS. SULLIVAN:  So, Master Esshaki, I think the key

5    there is your statement just now that this all applies when

6    you are dealing with end-payor plaintiffs and auto-dealer

7    plaintiff witnesses.

8            So what the issue was that Judge Battani addressed

9    during the hearing, it was a concern that she had that the

10   end payors and the auto dealers had raised previously in our

11   October hearing, it was a concern about defendants in

12   multiple auto parts cases taking duplicative depositions of

13   the same plaintiff witnesses over and over and over again,

14   that was actually the words that the auto-dealer plaintiffs

15   used in October.  They were concerned about the same auto

16   dealer witness being examined over and over and over again in

17   29 cases.

18           And so Judge Battani raised the concern at the

19   January 28th status conference and the way she phrased it was

20   she said I'm concerned about an issue, do you take

21   depositions of these plaintiffs in each part case?  Again,

22   her concern was do you have duplicative, repetitive

23   depositions where you are asking the same plaintiffs the same

24   questions effectively over and over and over again.  And so

25   there was a back and forth really about that issue, and her

1    ruling was no, you cannot do that, you cannot take

2    duplicative depositions of the end-payor plaintiffs and the

3    auto-dealer witnesses in multiple parts cases, and,

4    defendants, you need to work together, you need to come up

5    with a template and go forth with that instruction.

6          And so the defendants have been doing that

7    successfully and we are fine with that.  We prepared a

8    protocol that covers end-payor plaintiffs and auto-dealer

9    plaintiff witnesses.  It applies to all the defendants in all

10   auto parts cases, all the defendants have signed off on it,

11   and that was our understanding of that discussion.

12         Now, I will say at the very end of that hearing --

13   of that discussion during that hearing I got up and I said

14   this dispute about whether defendants in other auto parts

15   cases can take depositions of the same plaintiff witnesses

16   really only impacts a few of the provisions of the protocol

17   that we had all negotiated and that Your Honor had weighed in

18   on.

19         MASTER ESSHAKI:  I recall that.

20         MS. SULLIVAN:  Right.  And so I got up and I said I

21   think we can accomplish this fairly quickly, we can address

22   these provisions.  Mr. Williams agreed, and the auto dealers'

23   counsel also agreed.  So we then took those provisions that

24   were specifically impacted by that ruling and we prepared a

25   protocol.  We pulled them out of the wire harness protocol

1    and we prepared a separate protocol that covers those

2    depositions.  Those are the only depositions that apply to

3    all auto parts cases.  They were the only depositions that

4    Judge Battani was worried about, and they have been addressed

5    in that separate ADP or auto dealer -- I'm sorry, end-payor

6    plaintiffs' and auto-dealer plaintiffs' witness protocol.

7    But there are all of these other depositions that need to

8    happen in the wire harness case; direct purchasers, Ford,

9    truck dealers and all the defendants' depositions, and those

10   depositions don't apply and aren't even relevant in all of

11   the other cases, maybe with the exception of Ford but that's

12   a separate issue, but the -- so the protocol -- the wire

13   harness protocol took us ten months to negotiate, we reached

14   agreement on everything with the exception of a few

15   provisions that we raised with Your Honor -- or with you,

16   Master Esshaki, and that governs those depositions, and

17   that's separate and independent from this ruling that

18   Judge Battani made on the end-payor and auto-dealer witness

19   depositions.

20          From our perspective it is not appropriate,

21   necessary or warranted to have one single protocol that

22   governs all witness depositions in all auto parts cases for a

23   number of witnesses.  First, it is not necessary.  We don't

24   need one protocol for the entire auto parts MDL, we already

25   have these two protocols.  We have -- you know, as I said,

1   all the defendants have agreed on the one that applies to

2   them for all cases.  The wire harness protocol is close to

3   being final, it was close to being final in January, it is

4   still close to being final.

5        MASTER ESSHAKI:  When you say two protocols, what

6   do you mean?

7        MS. SULLIVAN:  There is a protocol that governs

8   end-payor plaintiff depositions and auto-dealer plaintiff

9   witness depositions, and what that means is that when there

10   is a deposition taken of an end-payor plaintiff in any case

11   it is governed by that protocol.  And so when we, the

12   defendants, in the wire harness case take a deposition of an

13   end-payor plaintiff we have to coordinate with all of the

14   defendants in all of the other cases, and then they cannot

15   take a deposition in any of their other cases of that same

16   plaintiff absent good cause.  That was the ruling that

17   Judge Battani made.

18        MASTER ESSHAKI:  What's the second protocol?

19        MS. SULLIVAN:  Well, and that same protocol governs

20   auto-dealer plaintiff witnesses.  Same thing on the

21   auto-dealer plaintiff witnesses, we have to coordinate with

22   all the other defendants.

23        MASTER ESSHAKI:  When you're saying two protocols,

24   one is -- you would refer to as the end-payor plaintiff

25   protocol, the other is the auto-dealer protocol?

1          MS. SULLIVAN:  No, I apologize.  So the first one

2     applies to the entire auto parts MDL, all cases, and it

3     governs end-payor plaintiffs and auto-dealer plaintiff

4     witnesses, that was Judge Battani's ruling.  So for those

5     depositions there cannot be duplicative depositions, all the

6     defendants have to coordinate, we all have to agree on our

7     list of questions, et cetera, that protocol governs those

8     depositions just as instructed and just as you ordered in

9     your March 19th ruling.

10          The second protocol is the wire harness deposition

11     protocol, and that does not govern the end-payor and

12     auto-dealer plaintiff witness duplication issue, what it

13     governs is direct purchasers, Ford, truck dealers, the City

14     of Richmond plaintiffs, so the public-entity plaintiffs and

15     all the defendants.  Those parties are not parties in all of

16     the 29 cases.  That is the protocol that is very detailed in

17     terms of -- for example, how many depositions do plaintiffs

18     get to take of each defendant?  We agreed after literally ten

19     months of negotiations that they could take 15 depositions of

20     all of the -- of each of the defendants, except for Leoni,

21     for Leoni they can only take seven.

22          Well, that was an agreement that was reached after

23     much compromise, after much discussion, and it is unique to

24     our case.  It is appropriate in our case.  We know who the

25     witnesses are at this point, we have been in discovery for

1    two years, it makes sense that we have been able to reach

2    agreement on that term.  The defendants in these much, much

3    later cases are years away from having depositions in their

4    cases, they don't necessarily know who the witnesses are,

5    there has been no discovery at all, and so for them, it is

6    not appropriate for them to be bound by the wire harness

7    deposition protocol when the defendants are not even in

8    those -- those defendants aren't even in our case.  They need

9    to take the time to negotiate their own terms in terms of how

10   many witnesses can be deposed and other terms that relate to

11   that, where the depositions should take place, et cetera.

12            The plaintiffs are concerned -- I think they will

13   get up and tell you that they don't want to have to negotiate

14   separate protocols --

15            MASTER ESSHAKI:  One moment please, Ms. Sullivan.

16   We have people calling in.

17            THE CASE MANAGER:  Counsel, can you hear me?  State

18   your appearances for the record?  Counsel?

19            Mr. Esshaki, they must have put it on mute.  You

20   can go ahead.

21            MASTER ESSHAKI:  They put us on mute?  Okay.

22   That's hardly acceptable, but please continue.

23            As I understand it, you had developed a deposition

24   protocol across all cases, as Judge Battani has instructed,

25   that deals with end-payor plaintiffs and auto-dealer

1    plaintiffs so that one deposition is going to taken, they are

2    not exposed to multiple deps.  You have also developed a wire

3    harness deposition protocol that will apply only in the wire

4    harness cases pertaining to non-end-payor plaintiffs and

5    non-automobile-dealer plaintiffs, and it is your posture that

6    that protocol should be confined presently to the wire

7    harness cases because they are unique, they are ready in a

8    stage to proceed, and that future plaintiffs who may not even

9    be in the case today should not be bound to a protocol that

10   they have had no opportunity to put any input into?

11           MS. SULLIVAN:  That's correct with one exception,

12   one minor clarification -- it is not so minor, with one

13   clarification, and that is that all automotive parts protocol

14   that we have developed applies to end-payor plaintiffs and

15   auto-dealer plaintiff witnesses.  So what it does is it says

16   that when an auto-dealer plaintiff witness deposition occurs

17   all defendants have to coordinate and that same witness can

18   then not be deposed in a later case.  What it does not do

19   though is it does not limit the wire harness defendants to

20   one deposition of an auto-dealer plaintiff entity, and that

21   is an important distinction because that was a separate

22   issue.

23           If you recall in January we presented -- we argued

24   and --

25           MASTER ESSHAKI:  We thought three.

1          MS. SULLIVAN:  That's correct, three 30(b)(1)

2    depositions and 18 hours of 30(b)(6) testimony, and that's in

3    the wire harness case, and those two rulings actually

4    complement each other perfectly well.  So when the wire

5    harness defendants take those --

6          MASTER ESSHAKI:  Would you please tell me again, it

7    was three 30(b)(1) --

8          MS. SULLIVAN:  Three 30(b)(1) depositions and

9    18 hours of 30(b)(6) testimony.

10          MASTER ESSHAKI:  Okay.

11          MS. SULLIVAN:  You were the one that gave us that

12   number of depositions and Judge Battani's ruling at the

13   January 28th status conference actually complement each other

14   quite well.  When the wire harness defendants take those

15   depositions we will coordinate with the other defendants,

16   they will participate if they choose to, and then they cannot

17   later redepose those same witnesses.

18          It can't be the case, however, that

19   Judge Battani -- well, first of all, she didn't intend to, I

20   don't believe, overrule your other ruling, which was the

21   three 30(b)(1) and 18 hours of 30(b)(6), that was not the

22   topic at all that she raised as something that was concerning

23   her.  What her concern was was the duplicative nature of

24   multiple depositions taken of the same witnesses in multiple

25   cases.  We need three 30(b)(1) depositions of the auto

1    dealers and 18 hours of 30(b)(6) testimony in the wire

2    harness case for all of the reasons that we argued in our

3    briefing and in our oral argument during our hearing on

4    January 21st.

5         MASTER ESSHAKI:  Okay.  Thank you.  Mr. Williams?

6         MR. WILLIAMS:  Master Esshaki, I'm going to be

7    brief now because I want to respond --

8         MASTER ESSHAKI:  Thank God somebody's going to be

9    brief today.

10        MR. WILLIAMS:  Well, I will try.  I want to respond

11   to what Ms. Sullivan said because some of it is not right and

12   much of it requires a response.

13        But in my view the threshold issue driving

14   everything else is the dispute between the defendants and the

15   auto dealers that Ms. Sullivan just alluded to, and in my

16   view until that is resolved the rest of this is going to be

17   held up, so I think it would make more sense for the auto

18   dealers to speak now.

19        MASTER ESSHAKI:  Sure.

20        MR. RAITER:  I'm Shawn Raiter on behalf of the auto

21   dealers.

22        Judge Battani was very clear on January 28th; she

23   did not say there will be one deposition per witness, she

24   said three or four times on this transcript, which you have

25   before you, there will be one deposition per plaintiff.  Now

1  the defendants ignore that because they want to come back to

2  really harassing and abusing the discovery process as it

3  relates to the automobile dealer plaintiffs.

4         Let me just give you the citations because they are

5  in the record, Mr. Special Master, they are very clear.

6  Judge Battani said at page 24, "and this can all be done in

7  one deposition of a named plaintiff", page 24.  Page 24

8  again, "I mean, if we have to be innovative we will be

9  innovative but that there will be one deposition", page 24

10 again.  Page 26, "I want you to have the opportunity to

11 ask -- to get the information that you need and at the same

12 time only do a single deposition of most of these named

13 plaintiffs", that's page 26.

14         So what they have done, the defendants have now

15 taken that, they ignore it, they don't want to abide by that.

16 They want to say well, what she really meant was no

17 duplicative depositions of the same witness.  That's not what

18 she said.  She made it very clear and you did when you

19 started this by reading your own notes that there should be a

20 single plaintiff for each -- a single deposition for each

21 named plaintiff unless there's good cause shown, and the

22 judge said that in her --

23         MASTER ESSHAKI:  What about the difference between

24 the 30(b)(1) and 30(b)(6)?

25         MR. RAITER:  They can choose how they wish to do

1  it.

2  MASTER ESSHAKI:  Don't you think they are entitled

3  to both?

4  MR. RAITER:  I think they can choose.

5  MASTER ESSHAKI:  If you were to take the deposition

6  of an owner of the automobile dealership, I dare say he could

7  not tell you how his backroom where they do all the paperwork

8  works, so you need to take the deposition of the head

9  financial controller of a dealership for that style

10  testimony.  They should not be limited to do I take the

11  controller or do I take the owner.

12  MR. RAITER:  And they can make that decision, Your

13  Honor, but when you started this you also talked about

14  questions --

15  MASTER ESSHAKI:  Wait, wait, wait, that's the point

16  I'm getting at.  They should not be limited to saying with

17  respect to this dealer, should I take the president or the

18  CFO.  They really need at a minimum to have both.

19  MR. RAITER:  Why?

20  MASTER ESSHAKI:  Because the CFO is going to be

21  critical to understanding the financial operations of the

22  dealership, purchasing and sales of vehicles, how profit is

23  calculated, rebates and so forth.  The owner is going to tell

24  you what his business is, how many cars he buys and so forth.

25  They shouldn't have to choose between the two.

1    MR. RAITER:  The CFO can say the same things, but

2  the owner could say on those topics.  And the stipulation

3  that you are going to see today provides them with all --

4  over 200 fields of transactional information, basically

5  everything they have asked for from us.  We have already

6  produced 250,000 pages of documents, we continue to produce

7  documents relating to the transactions, the acquisitions, the

8  sales of these vehicles.  They don't need any more than that

9  quite frankly in our opinion, but in the Optical Disk Drive

10  case, for example, there was an order, we presented that to

11  Your Honor, where the court said you get one deposition per

12  plaintiff, direct purchasers and indirect purchasers, and

13  that's what we believe should happen here.

14       Now, how they decide to do that is up to them, but

15  you started this today by saying what you should do is come

16  up with a set of questions that need to be answered, need to

17  be asked and answered, and then I suppose it would be

18  incumbent on us to identify who can answer those questions in

19  such a deposition, but what they have got before you, this

20  three 30(b)(1) and 18 hours of 30(b)(6) testimony.  We have

21  29 cases, we have 45 automobile dealer plaintiffs.  If you

22  look at wire harness only, only wire harness, 45 of those

23  plaintiffs, given what they are asking for, that's over

24  1,800 hours of depositions of automotive dealers, 1,800

25  hours.  So that would be a year, running consecutively, one

1  year of automobile dealer depositions when they are going to

2  have some much financial information they don't need to take

3  one-tenth of those depositions. Now, that, of course,

4  doesn't include preparation of these witnesses, travel time

5  for everyone, but that's just one case.

6      Now, the protocol that Ms. Sullivan is talking

7  about, the second protocol, what they have actually said is

8  well, in wire harnesses we get to take three 30(b)(1)s and we

9  get 18 hours of 30(b)(6)s, but then in every other case the

10  number of depositions that we are going to take of your

11  automobile dealers would be subject to negotiation, so they

12  are not done there, they are going to come back over and over

13  and over again trying to ask for more depositions, again,

14  then hiding behind this rule of, well, you can't duplicate a

15  deposition for the same witness. Well, there are a lot of

16  these dealerships and there are going to be a lot of these

17  people they could identify to take depositions, and that's

18  what they are going to do, they are going to harass us.

19      MASTER ESSHAKI: Doesn't that fly in the face of

20  what the Judge wanted to do, which was to limit those

21  depositions?

22      MR. RAITER: Which is exactly why we think there

23  should be one deposition per named plaintiff absent a showing

24  of good cause, that's what she said. She didn't say one

25  deposition per automobile dealer witness or per witness, she

1    said per named plaintiff, she said it at least twice.  So,

2    Your Honor, you have before you, again, one of these kind of

3    crossroads moments where we'll embark on depositions that

4    will go on for years and years and years.  You've heard the

5    defendants here today say we want to get moving, we want to

6    get going forward and get headed toward class certification.

7    The proposal being made right now by Ms. Sullivan and the

8    defendants, at least as to the number of the automobile

9    dealers being subject to deposition or their witnesses

10   subject to deposition, will be completely contrary to what

11   they have said before you today.

12        MASTER ESSHAKI:  I have to go back.  As I

13   understand the protocol there is going to be -- let's not

14   focus on auto dealers but let's focus on end-payor

15   plaintiffs, there is going to be one deposition of an

16   end-payor plaintiff that is going to stretch across all

17   parts.  How many of the auto-dealer plaintiffs -- how many of

18   the auto-dealer plaintiffs' depositions is up in the air for

19   at least this moment but they are going to stretch across all

20   parts, so you are not going to go back to those auto-dealer

21   plaintiffs under that protocol, no one is going back to them

22   again, so the only question is should the auto-dealer

23   plaintiffs' depositions be limited to one per dealer or

24   should they be three 30(b)(1) and 18 hours of 30(b)(6) or

25   should they be something else?

```
 1              MR. RAITER:  Yes and no.

 2              MASTER ESSHAKI:  Give me a compromise.

 3              MR. RAITER:  Yes and no.  Your point about are they

 4   going to stretch across all the cases, not according to their

 5   second protocol.

 6              MASTER ESSHAKI:  Well, the second protocol, as I

 7   understand it, dealt with -- according to Ms. Sullivan, dealt

 8   with non-auto-dealer plaintiffs and non-end-payor plaintiffs.

 9              MS. SULLIVAN:  May I clarify?

10              MR. RAITER:  That's not correct.

11              MASTER ESSHAKI:  You may clarify, Ms. Sullivan.

12              MS. SULLIVAN:  I think what we are talking about

13   here is the end-payor plaintiffs and auto-dealer plaintiffs

14   witness protocol, and that's the one I explained to you,

15   those witnesses will be covering -- apply to all auto parts

16   cases, all defendants will participate and will be bound by

17   that order.  That does not mean though is that the four

18   depositions that we take of the auto-dealer plaintiff

19   entities in the wire harness case will necessarily be the

20   same exact four that the defendants in some later case may

21   choose to take.  Let me explain that to you.

22              They cannot take those same four witnesses again,

23   that's correct, they cannot take those same four witnesses

24   again.  However, some of the cases are -- each of these cases

25   are unique, and what I mean by that is, for example, in the
```

1    heater control panel case I represent Sumitomo and Sumitomo
2    sold heater control panels only to Toyota.  The conduct at
3    issue in that case I think the evidence will show relates to
4    Toyota, and so in that case the defendants will be most
5    focused on determining whether the auto dealers can prove
6    that they were impacted with respect to purchases of cars
7    that are Toyota cars.  There are other cases that don't
8    involve sales to Toyota.  For example, the electric powered
9    steering assemblies case, I don't know anything about that
10   case other than the fact that the guilty plea identifies
11   conduct relating to Honda.  Presumably in that case those
12   defendants when the time comes will be very focused on
13   determining whether the auto dealers can establish an
14   overcharge and a passthrough with respect to Honda cars, and
15   so the four auto dealers witnesses or depositions that we
16   make take in the HCP case relating to primarily Toyota may
17   not be the same witnesses --

18        MASTER ESSHAKI:  I think you are parsing and
19   slicing it very thin, and I do not see that's what the Judge
20   said.  The Judge said that the auto-dealer plaintiffs and the
21   end-payor plaintiffs because all they did was buy and sell
22   and buy an automobile should be subject to one deposition.
23   Clearly for the end-payor plaintiffs one deposition across
24   all parts is what she ruled.  The question is whether you
25   need more than one deposition for auto-dealer plaintiffs

1    because you need to get a 30(b)(6) and then you need to get

2    perhaps an owner.

3            MS. SULLIVAN:  May I address that then,

4    Master Esshaki?  We actually do need more than one deposition

5    of the auto-dealer plaintiffs' entities for all the reasons

6    we already argued, and frank --

7            MASTER ESSHAKI:  They are not going to go back

8    again, it is across all parts.

9            MS. SULLIVAN:  Understood, understood.  So for now

10   we are talking about how many, putting aside the duplication

11   issue, put that aside for now.  For now we are talking about

12   how many can we take?  Can we take one or can we take the

13   three 30(b)(1) depositions and the 18 hours of 30(b)(6)

14   testimony that you already ruled would be appropriate in the

15   case?

16           MASTER ESSHAKI:  Yes, but that ruling came out

17   before and --

18           MS. SULLIVAN:  That's correct, Your Honor, but the

19   Court said --

20           MASTER ESSHAKI:  As I said, she overturned the

21   apple cart with that ruling.

22           MS. SULLIVAN:  Respectfully we disagree with that.

23   What she was focused on is whether you take the same

24   witnesses over and over and over again.

25           MASTER ESSHAKI:  No, that's not what I got from it.

1    I'm sorry, Ms. Sullivan.  What I got from it is you are not

2    going to subject an auto-dealer plaintiff to 10, 12, 20

3    depositions, and she wanted it strictly limited to one

4    deposition across -- one deposition, I'm not going to say

5    that for the auto-dealer plaintiffs, I said that clearly for

6    the end payors, one deposition across all parts.  With

7    auto-dealer plaintiffs I can see that there is a problem if

8    you are limited to selecting one witness and one witness only

9    because you may need to get the owner of the dealership and

10   you may need to get the CFO.

11        MS. SULLIVAN:  You may also need salespeople, and

12   the reason I say that is some of these dealer plaintiffs are

13   extremely large.  For example, McGrath Automotive Group,

14   Incorporated has hundreds of employees, it has four

15   dealerships, four separate dealerships, and it sells nine

16   different brands of cars.  Commonwealth Motors, for example,

17   has 300 employees, three dealerships, and it sells GM,

18   Nissan, Honda, Kia and VW cars.  We know that the OEMs are

19   very different and they sell their cars very differently;

20   some have certain incentives, others don't have those

21   incentives, and all of that makes a difference in terms of

22   whether the auto dealers will be able to establish that they

23   paid more for their cars and whether the end payors will be

24   able to establish that they paid more for their cars.  And

25   you may have different people in these dealerships that are

1   handling procurement from VW than procurement from Nissan,

2   two totally different OEMs.

3          And so, you know, again, we absolutely need a

4   30(b)(6) deposition and we believe that 18 hours, the

5   compromise that you ruled on back in January, was the

6   appropriate amount of time.  And we absolutely need 30(b)(1)

7   depositions, and we don't believe that one 30(b)(1)

8   deposition would be appropriate for these reasons --

9          MASTER ESSHAKI:  Counsel, I think she has conceded

10  that -- what Judge Battani's instruction was to limit the

11  number of depositions in the auto dealers, not four witnesses

12  in this -- in the wire harness cases and then four witnesses

13  in the heater cases and four witnesses in the windshield

14  cases, it is across the board.  The only question is how many

15  can you live with?

16         MR. RAITER:  Your Honor, again, let's just back up.

17  She has gone back to the three 30(b)(1)s and the 18 hours of

18  30(b)(6).  Just for a reference point, what the defendants

19  want for 30(b)(6) hours of their own people, the people who

20  engaged in these conspiracies and who went to jail and

21  pleaded guilty and paid fines, they want to give us 21 hours

22  of 30(b)(6), but yet they want 18 hours from some car

23  dealership about how you sold your cars.

24         Now, what's changed since then?  A couple of

25  things.  One, we withdrew parts from all cases, so parts

 1   were a big part of the number of witnesses and how we

 2   purchased parts and how we sold parts, those are out of all

 3   of these cases, so that's a big change.  Number two, the

 4   stipulation that will be entered soon later today or tomorrow

 5   but what we are producing to them handles this information.

 6   For example, every month a car dealership usually should be

 7   making a report to an OEM which summarizes what they sold,

 8   sales, profits, their monthly OEM reports, and we have agreed

 9   to produce those.  They are going to have that information

10   across all the different brands, across all the different

11   makes.

12        We have agreed that we will use our own consultant

13   to go extract the DMS data that was the subject of obviously

14   the motions that have now been withdrawn before you.  So what

15   they are going to have is a ton of information that addresses

16   the vast majority of the legitimate issues that they could

17   raise at this point.  So from there what do we do?  I think

18   we could do a couple of different things; we could continue

19   to meet and confer about numbers, we could talk about styles

20   of depositions, whether they are 30(b)(1)s or 30(b)(6)s, or

21   we could look at a total number of hours, but right now our

22   position is 39 hours for a single automobile-dealer plaintiff

23   to be deposed in this case, in this setting, given the

24   direction of the Court is unreasonable, it is burdensome, and

25   it is abusive.

1          MASTER ESSHAKI:  All right.  Here is what I'm

2     thinking.  I would like the defendants to provide plaintiffs

3     with an outline of areas they intend to examine a witness on

4     in the automobile dealer cases, and I would like the

5     automobile-dealer plaintiffs to select the person within

6     their organization who can best respond to the areas that

7     will be covered in the examination.  However, I am going to

8     give with respect to automobile-dealer plaintiffs one

9     30(b)(6) and one 30(b)(1).  If you need more you come back

10    and give me good cause and I will do it.  Are we clear?  I

11    just want to be clear.

12          We have a deposition protocol that applies to

13    end-payor plaintiffs and automobile plaintiffs that will go

14    across the board on all parts, so that they will not be

15    deposed again, that with respect to the automobile dealer

16    plaintiffs there will be information exchanged from the

17    defendants to the plaintiffs before the deposition occurs and

18    the defendants will select the person within their

19    organization that has the most information to respond to the

20    questions.  They will be able to get one 30(b)(6), not

21    18 hours, I think eight hours is plenty, and one 30(b)(1).

22    If they want more or they need more they can file a motion

23    for good cause.

24          And then with respect to the -- it is understood

25    that the deposition protocol does not apply outside of the

1    wire harness cases except for the limitations on the numbers

2    of deps of the end payors and auto dealers, it does not apply

3    to OEMs, it does not apply to suppliers, it does not apply

4    to -- that is not before us, that has not been discussed.

5            Mr. Williams, you look puzzled?

6            MR. WILLIAMS:  No, I don't think I'm puzzled.  I

7    think you clarified.  Yes, I think it explicitly reserves

8    whatever we do with OEMs and others.

9            MASTER ESSHAKI:  Right.

10           MR. WILLIAMS:  But the --

11           MASTER ESSHAKI:  Who is going to work on it?

12           MR. WILLIAMS:  That's what I wanted to come back

13   to.  You said we have a separate protocol for the end payors

14   and dealers, we don't yet because --

15           MASTER ESSHAKI:  I agree.

16           MR. WILLIAMS:  -- one of the things the defendants

17   did after they left last time was to increase the hours any

18   person who bought a car will be deposed to 14 hours so that

19   you, for example, would spend 14 hours being examined about

20   buying a car, and their witnesses are only subject to seven

21   hours, that is absurd, so that can't be.

22           Second, and this is an important point, and I

23   apologize because it is late, but in the colloquy before you

24   had with Ms. Sullivan I heard it said this protocol doesn't

25   bind any plaintiffs who come in the future.  That's not true.

1    This protocol explicitly bind plaintiffs who come in the
2    future because that's what the defendants wanted, and that's
3    not unusual.  When we do these cases frequently you can't
4    wait to see who shows up in six months because Ford is here
5    now but maybe someone comes later, you don't start over then,
6    so we build things in, as their draft does, that says a
7    plaintiff group means end payors, dealers, directs and any
8    other class case that's filed.  An individual means an
9    individual like Ford and any others who later join the case,
10   but they are bound.
11        So the reason I'm saying all of this is what's
12   being contemplated is this one protocol that applies to auto
13   dealers and end payors in every case so every defendant in
14   every case can depose us, but we are somehow supposed to
15   start all over again in every case and negotiate again, and
16   that's wrong.  So what we believe is there should be one
17   protocol now for everything, it applies to wire harness,
18   that's negotiated, that's done.  These are not unique cases.
19   Certainly as it relates to us and the auto dealers, we bought
20   a car.  As it relates to the number of depositions, we have
21   all done this so many times, I think it is 15, that's pretty
22   much the standard in all of these cases.  If any particular
23   party has a reason why it doesn't apply they can show cause
24   why it shouldn't apply.
25        So our proposal is rather than these two protocols,

1   one that applies to two plaintiff groups only in all cases,

2   we get deposed in all cases but we can't take depositions in

3   the other cases because we are supposed to start over again

4   and negotiate?  Let's use the product of what we did now,

5   make it a universal protocol that applies in each case and go

6   forward that way.

7           MASTER ESSHAKI:  How could you bind somebody to a

8   deposition protocol who is not involved in the case today?

9           MR. WILLIAMS:  You do it in the same way that the

10  defendants have sought and we have agreed to bind plaintiffs

11  who are not yet here.  You do it in the same way that in

12  numeral MDLs an order is entered at the beginning of the case

13  that says absent good cause this is the rule for all parties

14  here now or parties who join in the future, and if someone

15  has a good -- a real reason, they present it then, but you

16  can't start over again each time because then the wheels of

17  progress never move, you are just stuck because somebody says

18  well, I have some new, different, innovative idea.

19          We have talked since the case began and it is quite

20  some time ago about templates that would govern these cases.

21  All the work -- I can't even imagine the hours the defendants

22  and the directs and the dealers and we have spent on this

23  document.  The suggestion that we would do that all over

24  again 29 times, it doesn't make any sense and it isn't

25  consistent with rule one, it is not consistent with the 1407

1    transfer, these cases are not all unique, they are all part

2    of one MDL and all of us, and the Court more than any of us,

3    share the interest in getting this thing moving efficiently,

4    and the way to do that is we've got one set of rules and

5    anyone who has a good reason to deviate from it has an

6    opportunity to tell you, Master Esshaki, why that's the case,

7    but beyond that we now have the rules, we can all go forward

8    and take depositions because we know plaintiffs are entitled

9    to take depositions in 10, 12, 15 cases, but unless we get

10   protocols entered in those cases we can't, so it is just not

11   fair that they can depose us in all the cases and we can't

12   depose them, they are not years behind.  I mean, I'm somewhat

13   embarrassed to say but frankly wire harness discovery is not

14   significantly advanced beyond the other cases.  All the other

15   case have DOJ productions, we can start taking depositions in

16   many of these cases but for the lack of a protocol governing

17   those cases.

18          MASTER ESSHAKI:  Mr. Williams, would you tell me

19   what it is that you would -- we have agreed on this protocol

20   for auto dealers and end payors in the wire harness cases,

21   and you want another protocol in all cases for all

22   plaintiffs?

23          MR. WILLIAMS:  Not another.  I want one protocol

24   for all plaintiffs and all defendants for all cases.  That

25   doesn't mean I'm deposing you in five cases at once, it means

1    each case is governed by that universal protocol, the rules

2    in that protocol apply across the board.

3          MASTER ESSHAKI:  I have to take this in two bites

4    because of the way Judge Battani set this up.  I think there

5    has to be a protocol that applies to end payors and to

6    auto-dealer plaintiffs as we have discussed.  I would

7    entertain a motion to have a protocol for all plaintiffs, all

8    cases.

9          MR. WILLIAMS:  For all plaintiffs, all cases or all

10   parties all cases?

11         MASTER ESSHAKI:  All parties all cases.

12         MR. WILLIAMS:  So I think we are not far apart

13   because my suggestion is that protocol for the end payors and

14   the dealers it sounds to me may have just been completed.  I

15   don't know the compromises are final and maybe they are not

16   but --

17         MASTER ESSHAKI:  I don't either but I want to have

18   two of them because this one was specifically ordered.

19         MR. WILLIAMS:  Understood.  So if there are two,

20   have one that applies to end payors and auto dealers and one

21   that applies to everyone else.

22         MASTER ESSHAKI:  Ms. Sullivan?

23         MS. SULLIVAN:  Special Master Esshaki, the wire

24   harness defendants' primary concern about having effectively

25   the wire harness protocol be expanded to all cases is that

1    the other defendants have not had an opportunity to negotiate

2    for the ten months or longer now that we have been

3    negotiating the terms of that protocol.

4         MASTER ESSHAKI:  But put a carve-out that says if

5    they have got some reason to deviate they can come to me for

6    good cause shown.  All right.  There may be some out there

7    that doesn't fit within our mold, and we have to make an

8    exception.

9         Counsel?

10         MR. SPERL:  Good afternoon, Your Honor.  This is

11    Andrew Sperl for truck and equipment dealer plaintiffs.

12         Very quickly, we are negotiating with the

13    defendants the number of depositions for the truck and

14    equipment dealer plaintiffs because they are differently

15    organized than for instance the auto dealers.

16         Just as a brief point of clarification, it would be

17    our position that Judge Battani's reasoning that dealership

18    plaintiffs should only be subjected to one or limited

19    depositions across different actions would also apply to the

20    benefit of truck and equipment dealers even though we are now

21    in fewer actions, we are only in wire harnesses and bearings.

22    I just wanted to make the point that that principle of

23    non-duplicative discovery would apply even though we are also

24    in those fewer cases.

25         MASTER ESSHAKI:  If that comes up I think she has

```
 1   made clear it is going to be limited discovery, it is not
 2   going to be duplicative.
 3            MR. SPERL:  I agree.  I just wanted to make sure
 4   the record was clear.  Thank you.
 5            MASTER ESSHAKI:  Counsel?
 6            MR. SPECTOR:  Special Master Esshaki, Gene Spector
 7   on behalf of direct purchaser plaintiffs.
 8            MASTER ESSHAKI:  Yes, sir.
 9            MR. SPECTOR:  We agree with Mr. Williams that there
10   should be a single deposition protocol for all the cases.
11            MASTER ESSHAKI:  I understand that.
12            MR. SPECTOR:  It is the only thing that makes
13   sense.
14            MASTER ESSHAKI:  The only way -- the way this has
15   been teed up is it has been teed up so there has to be two.
16            MR. SPECTOR:  I understand that and I'm not
17   suggesting otherwise, but we also just wanted to make it
18   clear that our belief is there should be a single deposition
19   protocol.  When we were negotiating the wire harness protocol
20   it was clearly with the understanding that it will be the
21   template for everything else that followed in the other
22   cases.
23            MASTER ESSHAKI:  I assume that it will be.  I
24   assume you will take this and duplicate it in all other cases
25   with some tweaks.
```

1        MR. SPECTOR:  That is exactly what we think and

2   that is exactly what we had hoped, but now it has become a

3   matter of putting together a single deposition protocol that

4   will apply across the board because of what's happened with

5   the end payors and the auto dealers.

6        MASTER ESSHAKI:  Well, they may be identical but

7   one is going to say end payors and auto dealers, and the

8   other is going to say everyone else.  Okay.  Please.

9        MR. SPECTOR:  I'm fine with that.

10       MASTER ESSHAKI:  One other issue I need to address,

11  Ms. Sullivan, you are going to be angry with me again,

12  14 hours for a buyer of a car is excessive, 7 is going to be

13  the max.  That wasn't an invitation to negotiate.

14       MS. SULLIVAN:  No, no.

15       MASTER ESSHAKI:  I think we have completed

16  everything we need to complete.  I want to thank both --

17       MS. SULLIVAN:  May I clarify something?

18       MASTER ESSHAKI:  Yes.

19       MS. SULLIVAN:  I apologize for delaying everybody,

20  but I understand your order is that we have one end-payor and

21  auto-dealer protocol for all auto parts cases, right?

22  Second, we have a protocol that applies to all other

23  depositions that we enter in the wire harness case and then

24  it gets entered with some minor tweaks potentially in all the

25  other cases as well.

 1            MASTER ESSHAKI:  All other cases.

 2            MS. SULLIVAN:  So you will have a wire harness all

 3    other deposition protocol and then an HTCP one and et cetera.

 4            MASTER ESSHAKI:  With a backdoor.

 5            MS. SULLIVAN:  Correct.  Thank you.

 6            MASTER ESSHAKI:  Yes.

 7            MR. SQUERI:  Just one question.  Steve Squeri for

 8    Yazaki.

 9            With respect to the deposition protocol for the

10    wire harness parties, I would assume that we are talking

11    about trying to have perhaps a uniform protocol but issues

12    like the number of deps -- depositions per defendant, which

13    are going to vary from case to case, and issues like where

14    the depositions are going to take place, which are going to

15    involve a lot of clients' specific issues.

16            MASTER ESSHAKI:  I'm going to be busy this summer I

17    think.  You will have to come back to me if you can't agree.

18    Okay.  You will have to come back if you can't agree.

19            MR. SPECTOR:  The other issue that I wanted to

20    raise was one that came up during the hearing this morning,

21    and that is with regard to the subpoenas to the suppliers.

22    We talked about -- if you recall, I mentioned that we were

23    looking to try to seek coordination so that there would only

24    be one subpoena served.  If we have to do it by filing a

25    motion to stay that's what we will do.

1          MASTER ESSHAKI:  I think you need to do that.  It

2     has to be on the record.

3          MR. SPECTOR:  We are just trying to get a

4     negotiation going like the OEM subpoenas so that there is

5     only one.

6          MASTER ESSHAKI:  You file your motion for stay you

7     will be surprised how quick you will get a phone call.

8          MR. SPECTOR:  Fair enough.

9          MASTER ESSHAKI:  Counsel?  Counsel?

10         MS. LEIVICK:  Good afternoon, Master Esshaki.

11    Sara Leivick for Ford Motor Company.

12         I just wanted to raise one issue related to the OEM

13    subpoena that was discussed this morning.  Ford has not been

14    involved in the negotiations concerning the OEM subpoena, but

15    as you know, Ford is the only OEM that is a party in the MDL,

16    and Ford is in a unique position to offer insight to you and

17    the other parties concerning the proposed subpoena, the

18    information requested and the potential or likely burden that

19    would be imposed on Ford as a non-party OEM.

20         MASTER ESSHAKI:  Well, right now it is scheduled

21    that the plaintiffs are going to file their formal

22    objections, the defendants are going to respond, there will

23    be a reply.  I assume you are served and have access to it.

24    I would invite you to file your position statement as well.

25         MS. LEIVICK:  Thank you, Master Esshaki, and that

1    was what I was going to ask for.

2            MASTER ESSHAKI:  I think that would be helpful.

3            MS. LEIVICK:  I just want to clarify that the

4    subpoena has not been served on Ford yet.

5            MASTER ESSHAKI:  As far as I know it hasn't.

6            MS. LEIVICK:  Right, as far as I know.  So we would

7    propose we will submit our response on the same time line as

8    the direct purchaser plaintiffs.

9            MASTER ESSHAKI:  You can respond to whatever they

10   file, and I would welcome that.

11           MS. LEIVICK:  That we would respond to the subpoena

12   at the same time as the direct purchaser plaintiffs.

13           MASTER ESSHAKI:  Thank you.

14           MR. CHERRY:  I'm sorry.  Steve Cherry.

15           To be clear, Ford is going to offer objections at

16   the same time as the direct purchasers?

17           MASTER ESSHAKI:  Exactly, or she is going to review

18   shortly thereafter, she will see what the direct purchasers

19   have to say and she will add her comments.

20           MR. CHERRY:  Well, because I think the rest of us

21   are going to want to respond to the direct purchasers but we

22   may also want to respond to Ford, and so we are -- rather

23   than us file two briefs maybe she can file at the same time

24   as the direct purchasers.

25           MS. LEIVICK:  That's what I was proposing, that we

1    file on the same schedule.

2            MASTER ESSHAKI:  Are you suggesting that the

3    plaintiffs then file their objections in seven days, you file

4    your position in seven days, you file -- the defendants

5    respond in seven days?

6            MR. WILLIAMS:  The defendants and the indirect

7    plaintiffs.

8            MASTER ESSHAKI:  Right.

9            MR. CHERRY:  They will respond at the same time;

10   seven, seven, seven or --

11           MASTER ESSHAKI:  I think you want to respond to her

12   as well so it is seven, seven and seven.

13           MR. CHERRY:  And we will respond in 14 days.

14           MASTER ESSHAKI:  You will respond in 14 days from

15   the original filing, and seven days from Ford's filing.

16           MR. CHERRY:  Understood.

17           MASTER ESSHAKI:  Okay.

18           MS. LEIVICK:  So we will respond in 14 days.

19           MASTER ESSHAKI:  And remember, there's three days

20   for a reply.

21           MR. CHERRY:  Yes.  Thank you.

22           MASTER ESSHAKI:  To clarify it, the objections to

23   the OEM subpoenas are going to be filed in seven days, seven

24   days after that Ford is entitled to weigh in with their

25   position, seven days after that the defendants and the other

 1   plaintiffs will file their response, three days after that

 2   the objecting plaintiffs will file a reply.

 3            MS. LEIVICK:  Thank you.

 4            MASTER ESSHAKI:  Are you taking me to task again?

 5            MS. SULLIVAN:  I have two more requests.  One is

 6   that we submitted a wire harness deposition protocol just the

 7   other day to you, and I would to like request that that be

 8   entered today.

 9            MASTER ESSHAKI:  I need to get some concurrence

10   from opposing counsel.

11            MR. WILLIAMS:  I would want to review that and --

12            MASTER ESSHAKI:  Frankly, I haven't looked at it.

13            MR. WILLIAMS:  If it is the one about us then the

14   one you submitted is not --

15            MS. SULLIVAN:  No, no, it's just wire harness.

16            MR. WILLIAMS:  I just want to make sure it is the

17   right one.

18            MASTER ESSHAKI:  I haven't looked at it myself, and

19   I don't know who it goes to, but I need whoever it is

20   directed to to -- is it a stipulated order?

21            MS. SULLIVAN:  Okay.  So let me ask this then, may

22   we have a deadline of seven days from today to propose or to

23   submit both the auto-dealer and end-payor protocol and the

24   wire harness protocol, to submit both for entry?

25            MR. WILLIAMS:  And I would modify that as follows,

1   and I feel terrible for saying this to the court reporter, if

2   we could just have this afternoon's portion and then have

3   seven days from when we receive it to make sure we are all

4   doing things the way that these orders came?

5           MASTER ESSHAKI:  Yes, get the transcript.

6           MR. WILLIAMS:  Yes, so from when we get the

7   transcript, and just this end part, not the whole day.

8           MASTER ESSHAKI:  I have no problem.  I think that's

9   probably best.  There's been a lot of discussion today.

10          MR. KANNER:  All the pending motions or --

11          MR. WILLIAMS:  This is just the deposition

12  protocol.

13          MASTER ESSHAKI:  Ms. Romanenko, next time try not

14  to be so wordy, okay?  Thank you all.

15          (Proceedings concluded at 3:52 p.m.)

16                      _   _   _

17

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATION

 2

 3            I, Robert L. Smith, Official Court Reporter of

 4    the United States District Court, Eastern District of

 5    Michigan, appointed pursuant to the provisions of Title 28,

 6    United States Code, Section 753, do hereby certify that the

 7    foregoing pages comprise a full, true and correct transcript

 8    taken in the matter of Automotive Parts Antitrust Litigation,

 9    Case No. 12-02311, on Wednesday, May 6, 2015.

10

11

12                              s/Robert L. Smith
                                Robert L. Smith, RPR, CSR 5098
13                              Federal Official Court Reporter
                                United States District Court
14                              Eastern District of Michigan

15

16

17    Date:  05/08/2015

18    Detroit, Michigan

19

20

21

22

23

24

25
```