UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: Alternators | 2:13-cv-00701<br>2:13-cv-00703 |
| In Re: Windshield Wiper Systems | 2:13-cv-00901<br>2:13-cv-00903 |
| In Re: Radiators<br>In Re: Starters | 2:13-cv-01003<br>2:13-cv-01101<br>2:13-cv-01103 |
| In Re: Automotive Lamps<br>In Re: Ignition Coils | 2:13-cv-01203<br>2:13-cv-01401<br>2:13-cv-01403 |
| In Re: HID Ballasts<br>In Re: Electronic Powered Steering Assemblies<br>In Re: Fan Motors<br>In Re: Fuel Injection Systems | 2:13-cv-01703<br>2:13-cv-01903<br><br>2:13-cv-02103<br>2:13-cv-02201<br>2:13-cv-02203 |
| In Re: Power Window Motors<br>In Re: Valve Timing Control Devices<br>In Re: Windshield Washer Systems<br>In Re: Automotive Constant Velocity Joint Boot Products<br>In Re: Spark Plugs<br>In Re: Oxygen Sensors | 2:13-cv-02300<br>2:13-cv-02500<br>2:13-cv-02800<br>2:14-cv-02903<br><br>2:15-cv-03000<br>2:15-cv-03100 |
| This Document Relates to:<br>Direct Purchaser Actions<br>End-Payor Actions | |

**OPPOSITION ON BEHALF OF SUBMITTING DEFENDANTS TO PLAINTIFFS'
MOTION FOR UNIFORM DEPOSITION PROTOCOL ORDER**

i

## STATEMENT OF THE ISSUE PRESENTED

1. Whether the Special Master should order entry of a uniform deposition protocol that would govern thirty of the thirty-one product tracks and all future cases coordinated as part of this MDL when (1) the variations between and among cases illustrate that there is no benefit to imposing a "Uniform" protocol; (2) nothing would be gained by imposing a "Uniform" protocol rather than continuing to negotiate separate orders based on the protocol negotiated and agreed upon by the parties in the *Wire Harness* cases; and (3) Plaintiffs identify no reason to cut short such negotiations because deposition discovery cannot proceed in most of the product track cases in any event, including all cases to which the Submitting Defendants are named.

    Answer: No

## INTRODUCTION

This multidistrict litigation includes 31 separate groups of cases in which various plaintiffs are suing *different* defendants alleging the existence of *different* conspiracies with respect to *different* automotive parts. Notwithstanding these differences, certain Plaintiffs[1] seek to impose on all defendants in all groups of cases a "uniform" deposition protocol derived from the protocol entered in the *Wire Harness* cases. Plaintiffs do so with a motion for which they have chosen not to seek concurrence from other parties, as is required by this Court's local rules.[2]

Defendants submitting this opposition ("Submitting Defendants")[3] are parties in sixteen different groups of cases.[4] The Submitting Defendants had no input into the negotiation of the

---

[1] Counsel for the Auto Dealer Plaintiffs–and all other plaintiffs who are not classified as end-payors or direct purchasers–do not join in this motion. Nevertheless, despite the fact that the motion does not pertain to all cases, Submitting Defendants will file their opposition to Plaintiffs' motion in the master file case as Plaintiffs erroneously filed their opening motion in the same case.

[2] *See* Eastern District of Michigan Local Rule 7.1(a). Plaintiff's failure to comply with this rule is reason alone to strike or deny their motion.

[3] Robert Bosch LLC, Robert Bosch GmbH, and Bosch Electrical Drives Co., Ltd. (collectively, "Bosch"); Mitsuba Corporation and American Mitsuba Corporation (collectively, "Mitsuba"); Keihin North America, Inc. ("Keihin"); Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corp. (collectively, "Diamond Electric"); Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc. (collectively, "Stanley Electric"); Mikuni American Corporation ("Mikuni"); Aisan Industry Co., Ltd., Aisan Corporation of America and Franklin Precision Industry, Inc. (collectively, "Aisan"); Toyo Tire & Rubber Co., Ltd. and Toyo Automotive Parts (USA), Inc. (collectively, "Toyo"); Hitachi Automotive Systems, Ltd., Hitachi, Ltd. (joining for the DPP Starter case only) and Hitachi Automotive Systems Americas, Inc. (joining for the DPP Starter, Alternator, Ignition Coil and Fuel Injection Systems cases) (collectively, "HIAMS").

[4] Specifically, *Alternators* (Case No. 2:13-cv-00700); *Windshield Wipers* (Case No. 2:13-cv-00900); *Radiators* (Case No. 2:13-cv-01000); *Starters* (Case No. 2:13-cv-01100); *Lamps* (Case No. 2:13-cv-01200); *Ignition Coils* (Case No. 2:13-cv-01400); *HID Ballasts* (Case No. 2:13-cv-01700); *Electronic Powered Steering Assemblies* (Case No. 2:13-cv-01900); *Fan Motors* (Case No. 02100); *Fuel Injection Systems* (Case No. 2:13-cv-02200); *Power Window Motors* (Case No. 2:13-cv-02300); *Valve Timing Control Devices* (Case No. 2:13-cv-02500); *Washers* (Case No.

*Wire Harness* protocol, but understand that the *Wire Harness* protocol was the subject of extensive negotiations among the parties in that group of cases. Undoubtedly those negotiations were key to developing a suitable protocol for the *Wire Harness* matter. But, as outlined below, the culmination of those case-specific negotiations is in no way suitable for the remaining 30 distinct groups of cases in this multidistrict litigation proceeding.

Submitting Defendants are willing to start negotiating deposition protocols for the later-filed cases at the proper time. And we are happy to use the *Wire Harness* deposition protocol as a starting place for the necessary discussions among the parties in each of the various cases. But Submitting Defendants should not lose their rights to defend themselves and to participate meaningfully in the cases in which they have been sued simply because Plaintiffs sued *other* defendants for *other* alleged violations long before suing us.

This is not Plaintiffs' first attempt to short-cut negotiations and to railroad defendants in later-filed cases with orders negotiated in the *Wire Harness* matter, which may or may not have any feasible application outside that case. On a similar issue, Special Master Esshaki denied motions by certain plaintiffs to impose on the later cases pretrial orders negotiated between parties in early cases dealing with preservation, production and experts, noting "the distinct issues and characteristics of [each] class of case that sets it apart from all other classes of cases." *See* Order Denying Plaintiffs' Mot. for Submission of Global Orders at 3–4, *In re Automotive Parts Antitrust Litigation*, 2:13-cv-00900, , (E.D. Mich. July 16, 2015), Dkt. # 89. The same logic should apply here.

Submitting Defendants therefore respectfully request that the Special Master deny the Plaintiffs' request for a uniform deposition protocol.

---

2:13-cv-2800); *Spark Plugs* (Case No. 2:15-cv-03000), and *Oxygen Sensors* (Case No. 2:13-cv-03100).

2

**ARGUMENT**

I. **PLAINTIFFS' PROPOSED PROTOCOL IS UNWORKABLE, UNFAIR, AND WILL NOT OBVIATE THE NEED FOR NEGOTIATION**

   a. *The Special Master's July 16 order creates a principle that should be consistently applied*

The Uniform Deposition Protocol advanced by the Plaintiffs is plainly inconsistent with prior rulings on such global discovery issues and therefore should be rejected. On July 16, 2015, Special Master Gene Esshaki issued an order (the "July 16 Order") rejecting the very principle that the Plaintiffs now advance in their instant motion. In the July 16 Order, the Special Master analyzes the requests made by several plaintiff groups—including Plaintiffs—that three pretrial orders dealing with preservation, production, and experts negotiated in early cases be submitted to govern all current and future classes of cases. As here, the plaintiff groups argued that entry of these orders in all classes of cases would allow for a streamlined discovery process and would increase judicial efficiency.

The Special Master declined to enter the orders, noting instead that the creation of these discovery orders in a single class of cases indicated it is fully possible to negotiate similar orders within each class of cases. The Special Master held that "it would be much more efficient and fruitful" to use the orders advanced by the plaintiffs as templates rather than mandates, thereby "having a set of three Global Orders entered in each class of cases specifying and addressing the distinct issues and characteristics of that class of case that sets it apart from all other classes of cases." *See* July 16 Order at 3–4, 2:13-cv-00900, Dkt. # 89.

This same principle—that the "distinct issues and characteristics" of a class of cases should be used to craft orders that will direct the outcome of that class of cases—applies with even greater force to the current dispute. The same factors the Special Master relied upon in his July 16 Order exist in this situation: the classes of cases in which the Submitting Defendants are

3

currently named have "distinct issues and characteristics" that must be addressed in any deposition protocol that may eventually be adopted. Until the time arrives that such a protocol is necessary, however, adopting any protocol—including the proposed Uniform Deposition Protocol—would be neither efficient nor just.

      b. <u>The proposed Uniform Deposition Protocol is unworkable and unfair, and will not obviate the need for negotiation</u>

Plaintiffs propose imposing a modified *Wire Harness* protocol—a protocol designed to cover an alleged conspiracy covering twelve defendant groups and twelve different automotive parts—on all later-filed cases. Some of these later-filed cases involve only one or two defendants and cover only one or two automotive parts; many of the later-filed cases involve no defendants currently named in the *Wire Harness* matter. Applying Plaintiffs' proposal, which ignores these and other "distinct issues and characteristics" of the later-filed cases would result in a number of absurdities and inequities.

For example, the proposed protocol would allow an excessive number of depositions of at least one defendant, Mitsuba. Plaintiffs have proposed 15 depositions per defendant per case. But Plaintiffs have filed two lawsuits against Mitsuba that allege conspiracy with respect to *the same fan motor part*: *Fan Motors*, 2:13-cv-02103, and *Radiators*, 2:13-cv-1003. Mitsuba is a party to the *Radiators* case solely as a result of Plaintiffs' allegations that Mitsuba manufactures fan motors, the same product at issue in the *Fan Motors* case. *See* Op. and Order Denying Mitsuba Corp. and Am. Mitsuba Corp.'s Mot. to Dismiss the Dealership Plaintiffs' Consol. Amended Class Action Compl. and End-Payor Plaintiffs' Consol. Amended Class Action Compl. at 8, *In re Radiators*, 2:13-cv-1003 (E.D. Mich. Feb. 26, 2015), Dkt. # 71; *see also* Consol. Amended Class Action Compl. ¶ 3, *In re Fan Motors*, 2:13-cv-02103 (E.D. Mich. June 12, 2014), Dkt. # 13 (alleging "'Fan Motors' are small electric motors used to turn radiator cooling fans").

4

Nonetheless, despite the two complaints alleging the same underlying activity, Plaintiffs' uniform deposition protocol proposes to provide Plaintiffs with 30 depositions of Mitsuba's employees. Plaintiffs identify no reason why 30 depositions would be necessary to adequately investigate their allegations related to fan motors.

Plaintiffs' proposed "solution" to this double-counting is to suggest that Mitsuba can be deposed only 20 times (*i.e.*, 5 additional depositions) if it will stipulate that one conspiracy existed across these two parts. *See* Br. 14 (citing the proposed deposition protocol at ¶ III.A.1). In short, Plaintiffs are demanding that Mitsuba be subjected to an enormous number of depositions unless it will agree not to defend itself on this important issue. There is no basis for such a proposal, which is grossly unfair. The scope of discovery does not depend on whether defendants are willing to compromise their due process rights to present a defense.

Likewise, it is far from clear that it will be necessary or efficient for Plaintiffs to conduct 15 depositions of each of the defendants named in just one case.[5] The agreement reached in *Wire Harness* to conduct 15 depositions of each defendant "group"—regardless of the number of entities comprising each group or the extent to which the officers and employees of those entities overlap—should not govern later-filed cases with entirely different defendants. Many defendants in later-filed cases have much smaller business operations than the Wire Harness defendants and can therefore be expected to produce fewer relevant witnesses. And all the defendants in the later-filed cases have different business practices and are subject to very different factual

---

[5] The proposed protocol may also impact relatively smaller defendants differently from relatively larger defendants in cases for each product. The Submitting Defendants cannot be sure whether these differences in size were vetted in creating the original *Wire Harness* protocol. In any event, the parties within each product case should be entitled to reach their own accommodations, taking into account the impact of the proposed protocol on the specific parties in each case.

5

allegations regarding their purported conspiratorial conduct. Plaintiffs' one-size-fits-all approach to the number of defendant depositions is simply unworkable.

In addition, the Uniform Deposition Protocol is nonsensical and unfair when applied to defendants that are not based in Asia or the United States. The Uniform Deposition Protocol–a compromise reached between the *Wire Harness* plaintiffs and the Asia-based defendants in that case–mandates that the majority of depositions must take place in select cities in the United States or Asia. While this may be reasonable for some Asian-based and U.S.-based defendants, it does not make sense for companies that are based in Europe, such as Bosch. Further, the Uniform Deposition Protocol does not consider any of the non-U.S. issues that can arise in other jurisdictions outside the United States.

Indeed, the Uniform Deposition Protocol requires that a majority of deponents be made available for deposition outside of Japan. But this requirement is unfair as applied to many of the Submitting Defendants that are based in Japan, given that the default rule is that officers, directors and managing agents of a company must be deposed where the company is headquartered. *See*, e.g., 8A C. Wright & A. Miller, et al., Federal Practice & Procedure § 2112 (3d ed.); *Chris-Craft Indus. Products, Inc. v. Kuraru Co., Ltd.*, 184 F.R.D. 605, 607 (N.D. Ill. 1999) (requiring officers of Japanese company to be deposed in Japan); *Fausto v. Credigy Services Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008) ("general presumption [is] that the deposition of a defendant should be conducted in the district of his residence"). Many of the Japan-based Submitting Defendants would be prepared to demonstrate before the Court that most or all of the depositions of their company officials should take place in Japan; accordingly, these defendants would not necessarily agree to produce most of their deponents in the cities specified in the *Wire Harness* protocol. Plaintiffs want to deprive these defendants, however, of the chance

6

to even negotiate a voluntary resolution with Plaintiffs based on the strength of their individual arguments. Instead, they seek to make the Special Master the first stop for such disputes, a result that is neither just nor efficient.

Finally, Plaintiffs' proposal would allow Submitting Defendants to object to this uniform protocol—only on a showing of "good cause," *see* Br. at 13 (citing proposed protocol Section III.A.6)—but that procedure would nonsensically place the onus on each of the Submitting Defendants to try to carve themselves out of a rule that made no sense for the vast majority of defendants in the first place. Moreover, the need to raise and then negotiate these objections would simply result in the exact same case-by-case negotiation Plaintiffs insist will be avoided by use of their proposed protocol.

These examples underscore the need for individual examination of each case to determine the contents of an appropriate deposition protocol. Submitting Defendants would be happy to discuss a deposition protocol with Plaintiffs at the appropriate time, but forcing Plaintiffs' Uniform Deposition Protocol on sets of defendants who have not been consulted on its contents is inappropriate.

## II.  PLAINTIFFS SHOW NO REASON TO SHORT-CUT NEGOTIATION AND DENY SUBMITTING DEFENDANTS' RIGHT TO BE HEARD

In Plaintiffs' apparent haste to begin depositions, they seek to bypass the required consultation with any of the Submitting Defendants, thereby ignoring the clear mandates of Rule 26(f) of the Federal Rules of Civil Procedure and the due process rights it guards. Putting aside the attempt by Plaintiffs to do an end-run around the Federal Rules and the Local Rules of this district, discovery remains premature in all of the Submitting Defendants' cases with or without a uniform deposition protocol. There is no need to rush to enter Plaintiffs' proposed Uniform

Deposition Protocol. Instead, the Submitting Defendants should be permitted to meet and confer with Plaintiffs and other appropriate parties in each group of cases at the appropriate time.

All of the cases in which the Submitting Defendants are named are still in the initial stages of litigation: none of the Submitting Defendants have held the required conference pursuant to Federal Rule of Procedure Rule 26(f) in these later-filed cases. *See* Fed. R. Civ. P. Rule 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."). Many Submitting Defendants were not initially included in these later-filed cases, added only after amendments were made to the complaint. In a number of cases, motions to dismiss are still pending.[6] Notably, several of these motions to dismiss challenge personal jurisdiction; requiring such defendants to participate in discovery proceedings at this juncture as if they were subject to personal jurisdiction essentially denies these defendants the very rights they seek to vindicate in their motions. In others cases, operative complaints have not yet been served. In fact, two of the cases to which Bosch is a party involve parts that are not yet included as part of the multidistrict litigation docket, and one matter has not yet been transferred to this Court. *See* Case No. 2:15-cv-11831.

Additionally, the disparate impact that will occur should the Submitting Defendants be forced to adhere to the negotiations of the *Wire Harness* parties is undeniable. While the *Wire Harness* parties have spent years developing facts, trading discovery and creating a litigation strategy, many of the Submitting Defendants have only recently been named. Further, the involvement of the *Wire Harness* parties in government investigations differs significantly from

---

[6] The Court has already ruled that discovery prior to a decision on a motion to dismiss is improper. *See* Order Denying End-Payor Plaintiffs' Objections to Master's Order Regarding Motion to Modify Stipulated Order of Discovery, 2:12-md-02311 (E.D. Mich. Nov. 4, 2014), Dkt. # 854 ("The burden on the Defendants to produce discovery before they have challenged the viability of the claims against them turns the discovery rules upside down.").

many of the Submitting Defendants. To suggest that the Submitting Defendants must nevertheless develop in several months what the *Wire Harness* parties have had years to create is simply unfair.

Finally, as a result of the stay issued at the request of the Department of Justice, Plaintiffs may not depose any defendant with regard to any part other than wire harnesses, fuel senders, heater control panels, instrument panel clusters, occupant safety systems, bearings, or anti-vibrational rubbers. The Court's stay on deposition discovery continues for all parts other than those seven; any attempts by Plaintiffs to depose any of the Submitting Defendants on any matter other than those seven parts would violate the Court's order.

Simply put, there is no rush. Submitting Defendants welcome an opportunity to discuss a deposition protocol with Plaintiffs, as well as the other issues covered by Rule 26(f), at the proper time. Submitting Defendants do not wish to reinvent the wheel: they are willing to use the *Wire Harness* protocol as a starting point. Plaintiffs can demonstrate no reason to deny Submitting Defendants the right to be heard on this issue and to instead unilaterally impose Plaintiffs' proposed protocol.

## **CONCLUSION**

Plaintiffs identify no benefit to be gained by entry of their proposed "Uniform" deposition protocol or reason to exclude Submitting Defendants from the negotiation of a protocol to cover their respective cases. The Uniform Deposition Protocol Plaintiffs proffer is highly objectionable and is therefore likely to lead to the exact same party-by-party negotiations Plaintiffs purport to evade. Plaintiffs' proposal achieves nothing except to drag out those negotiations further.

For the foregoing reasons, the Submitting Defendants respectfully request that the Special Master deny Plaintiffs' Motion for Submission of a Uniform Deposition Protocol.

Dated: July 24, 2015                        Respectfully submitted,

*/s/ John Roberti*
John Roberti
Matthew R. Boucher
ALLEN & OVERY LLP
1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com
matthew.boucher@allenovery.com

Michael S. Feldberg
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
212-610-6360
michael.feldberg@allenovery.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Robert Bosch LLC, Robert Bosch GmbH and Robert Bosch Electrical Drives Co., Ltd.*

*/s/ George A. Nicoud III*
George A. Nicoud III
Austin Schwing
Stuart C. McPhail
Leslie A. Wulff
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105-0921
Tel.: (415) 393-8200
Fax: (415) 393-8306
TNicoud@gibsondunn.com

10

ASchwing@gibsondunn.com
SMcphail@gibsondunn.com
LWulff@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation and American Mitsuba Corporation*

*/s/ Matthew J. Reilly*
Matthew J. Reilly
Abram J. Ellis
SIMPSON THACHER & BARTLETT LLP
1155 F Street, N.W.
Washington, DC  20004
Telephone:  (202) 636-5500
Facsimile: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone:  (212) 455-2000
Facsimile: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Stanley Electric Co., Ltd.; Stanley Electric U.S. Co., Inc.; and II Stanley Co., Inc.*

*/s/ Matthew J. Reilly*
Matthew J. Reilly
Abram J. Ellis
SIMPSON THACHER & BARTLETT LLP
1155 F Street, N.W.
Washington, DC  20004
Telephone:  (202) 636-5500
Facsimile: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue

New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corp.*

*/s/ Bruce A. Baird*
Bruce A. Baird
Sarah L. Wilson
Michael A. Fanelli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Fax: (202) 662-6291
bbaird@cov.com
swilson@cov.com
mfanelli@cov.com

Anita F. Stork
COVINGTON & BURLING LLP
One Front Street
35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

Maureen T. Taylor
BROOKS WILKINS SHARKEY & TURCO PLLC
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com

*Attorneys for Defendant Keihin North America, Inc.*

*/s/ Barry Pupkin*
Barry A. Pupkin
Iain R. McPhie
Jeremy W. Dutra

12

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 626-6600
Fax: (202) 626-6780
Barry.Pupkin@squirepb.com
Iain.McPhie@squirepb.com
Jeremy.Dutra@squirepb.com

*Counsel for Aisan Industry Co., Ltd., Aisan Corporation of America and Franklin Precision Industry, Inc.*

  /s/ *William M. Sullivan Jr.*
William M. Sullivan Jr. (D.C. Bar No. 467269)
Michael L. Sibarium (D.C. Bar No. 390302)
Jeetander T. Dulani (D.C. Bar No. 976852)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036-3006
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
Email:  wsullivan@pillsburylaw.com
     michael.sibarium@pillsburylaw.com
     jeetander.dulani@pillsburylaw.com

*Attorneys for Defendants Mikuni American Corporation*

/s/ *David C. Giardina*
David C. Giardina
Courtney A. Hoffmann
SIDLEY AUSTIN LLP
One S. Dearborn St.
Chicago, IL 60603
Tel.: (312) 853-7000
Fax: (312) 853-7036
dgiardina@sidley.com
choffmann@sidley.com

/s/ *Bradley J. Schram*
Bradley J. Schram (MI Bar # P26337)
HERTZ SCHRAM PC
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
Tel.: (248) 335-5000

13

Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Toyo Tire & Rubber Co., Ltd., Toyo Automotive Parts (USA), Inc.*

/s/ *Craig P. Seebald*
Craig P. Seebald
Alden L. Atkins
Lindsey R. Vaala
VINSON & ELKINS LLP
2200 Pennsylvania Ave NW
Suite 500-W
Washington, DC  20037
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com
202-639-6500

*Counsel for Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc., and Hitachi, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2015, I caused the foregoing Memorandum of Law In Support of Mitsuba Corporation and American Mitsuba Corporations' Opposition to Plaintiffs' Motion for Uniform Deposition Protocol Order to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.

By: */s/ John Roberti*
John Roberti
ALLEN & OVERY LLP
1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com