**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani Master Gene J. Esshaki |
| ALL PARTS EXCEPT IN RE WIRE HARNESS SYSTEMS | : : : | Case No. 2:12-cv-00200-MOB-MKM – Case No. 2:14-cv-03000-MOB-MKM All Cases to be Filed |
| THIS DOCUMENT RELATES TO: ALL CASES | : : : : : | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION**
**FOR UNIFORM DEPOSITION PROTOCOL ORDER**

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT ...................................................................................................... 2

    1.    Plaintiffs sought concurrence in the Motion before filing it, thereby complying with Local Rule 7.1(a). ......................................................................... 2

    2.    The correct procedure for challenging specific provisions in the Uniform Depo Protocol is to make an objection for good cause shown to the Special Master—not to oppose the Uniform Depo Protocol wholesale. ............... 3

        a.    The number, length, and location of depositions set forth in the Uniform Depo Protocol are appropriate for the Auto Parts Cases. .......................... 5

        b.    Number of Rule 30(b)(1) depositions ......................................................... 5

        c.    Number and length of Rule 30(b)(6) depositions ...................................... 7

        d.    Location of depositions ............................................................................. 8

    3.    A Uniform Depo Protocol would support streamlining depositions of Defendants in multiple cases ................................................................................. 9

    4.    Provisions of the Uniform Depo Protocol are proportional relative to the needs of this unprecedented litigation. ................................................................ 10

    5.    Plaintiffs are not attempting to examine Defendants in Auto Parts Cases subject to a deposition stay or pending motions to dismiss at this time ........................... 11

    6.    The Uniform Deposition Protocol Order should not be rejected based on the Master's Order Denying Plaintiffs' Motion for Submission of Global Orders. ... 12

    7.    Initial Discovery Plans do not preclude a Uniform Depo Protocol. ..................... 14

    8.    The OSS Defendants failed to propose language for their requested modifications ........................................................................................................ 15

    9.    Plaintiffs should not be required to negotiate eight separate deposition protocol orders with the MELCO Defendants. ................................................................... 16

III.  CONCLUSION ................................................................................................... 17

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Callahan v. A.E.V. Inc.*
  947 F. Supp. 175 (W.D. Pa. 1996) ........................................................................... 10

*CFE Racing Prods. v. BMF Wheels, Inc.*
  2013 U.S. Dist. LEXIS 61087 ( E.D. Mich. Apr. 30, 2013) ....................................... 2

*Chris-Craft Indus. Prods., Inc. v. Kuraray Co.*
  184 F.R.D. 605 (N.D. Ill. 1999) ................................................................................. 8

*Fausto v. Credigy Servs. Corp.*
  251 F.R.D. 427 (N.D. Cal. 2008) ............................................................................... 8

*Goldberg v. Kelly*,
  397 U.S. 254 (1970) ................................................................................................... 7

*In re Domestic Drywall Antitrust Litig.*
  300 F.R.D. 234 (E.D. Pa. 2014) ............................................................................... 10

*Norton v. Zubkoff*
  2011 U.S. Dist. LEXIS 104836 (E.D. Mich. Sept. 15, 2011) ..................................... 3

*Taylor v. Sturgell*
  553 U.S. 880 (2008) ................................................................................................... 7


**Statutes**

28 U.S.C. § 1407 ............................................................................................................. 1

**Other Authorities**

E.D. Mich. LR 7.1(a)(1) ................................................................................................. 2

E.D. Mich. LR 7.1(a)(2)(A) ............................................................................................ 2

**Rules**

Fed. R. Civ. P. 1 .............................................................................................................. 1

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................... 10

Fed. R. Civ. P. 26(f) ................................................................................................... 11

Fed. R. Civ. P. 30(a)(2)(A)(i) ........................................................................................ 3

Fed. R. Civ. P. 30(b)(1) ............................................................................................ 5, 6

Fed. R. Civ. P. 30(b)(6) ............................................................................................... 7

I.    INTRODUCTION

On July 7, 2015, End-Payor and Direct Purchaser Plaintiffs ("Plaintiffs") moved the Special Master to adopt a Uniform Deposition Protocol Order ("Uniform Depo Protocol") that would govern all parties and all cases included in the *In re Automotive Parts Antitrust Litigation* ("Auto Parts Cases").[1] Defendants submitted seven oppositions thereto on July 24, 2015.[2] For the convenience of the Special Master, and in light of the extensive overlap and duplication in the Oppositions, Plaintiffs are responding to all seven oppositions in this single brief.

A Uniform Depo Protocol would facilitate the "just and efficient conduct" of this litigation pursuant 28 U.S.C. § 1407 and further "the just, speedy, and inexpensive determination of these actions in keeping with" Federal Rule of Civil Procedure ("Rule") 1. Individually negotiating and separately entering deposition protocols for the 30 cases following *Wire Harness* would do neither. In fact, this course of action would give rise to delay and inefficiencies, duplicative discovery, and improper and unnecessary burden on the Court, the Special Master, and the parties. In particular, given the number of Defendants involved in multiple cases, the parties should be able to conduct

---

[1] End-Payor and Direct Purchaser Plaintiffs' Motion for Uniform Deposition Protocol Order (Master File No. 12-md-02311, ECF No. 1027) ("Mot.").

[2] (1) Instrument Panel Clusters and Fuel Senders Defendants' Opposition to Direct Purchaser Plaintiffs' and End-Payor Plaintiffs' Notice of Motion and Motion for Uniform Deposition Protocol Order ("IPC & FS Defs.' Opp.") (ECF No. 1043); (2) Denso Defendants' Opposition to Certain Plaintiffs' Motion for Uniform Deposition Protocol Order ("Denso Opp.") (ECF No. 1044); (3) Occupant Safety Systems Defendants' Response to Plaintiffs' Motion for Uniform Deposition Protocol Order ("OSS Defs.' Opp.") (ECF No. 1045); (4) Defendants Alps' Joinder to Instrument Panel Clusters and Fuel Senders Defendants' Opposition to Direct Purchaser Plaintiffs' and End-Payor Plaintiffs' Notice of Motion and Motion for Uniform Deposition Protocol Order ("Alps Opp.") (ECF No. 1046); (5) Opposition on Behalf of Submitting Defendants to Plaintiffs' Motion for Uniform Deposition Protocol Order ("Certain Defs.' Opp.") (ECF No. 1047); (6) Bearings Defendants' Opposition to Certain Plaintiffs' Motion for Uniform Deposition Protocol Order ("Bearings Defs.' Opp.") (ECF No. 1048); and (7) the MELCO Defendants' Opposition to Motion for Entry of Uniform Deposition Protocol Order ("MELCO Defs.' Opp.") (ECF No. 1049).

depositions of Defendants usable in all of the cases in which that Defendant is named. The parties will not be able to do so if the Special Master entered a deposition protocol in some cases but not others.

## II.    ARGUMENT

### 1.    Plaintiffs sought concurrence in the Motion before filing it, thereby complying with Local Rule 7.1(a).

Defendants argue that Plaintiffs failed to meet-and-confer with them before seeking entry of a Uniform Depo Protocol.[3] Local Rule 7.1(a) mandates that the movant "must ascertain whether the contemplated motion . . . will be opposed." E.D. Mich. LR 7.1(a)(1). To meet this mandate, there must be "a conference between the attorneys . . . in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought." E.D. Mich. LR 7.1(a)(2)(A); *CFE Racing Prods. v. BMF Wheels, Inc.*, 2013 U.S. Dist. LEXIS 61087, *2 ( E.D. Mich. Apr. 30, 2013).

Here, there were two such conferences: the May 6, 2015 in-person conference and the May 26, 2015 telephonic conference before the Special Master. During these conferences, there were discussions between the parties in which Plaintiffs explained the nature of and need for a Uniform Depo Protocol[4] and did not obtain concurrence from Defendants[5]. Given that Defendants filed

---

[3] IPC & FS Defs.' Opp. at 4-7; OSS Defs.' Opp. at 2-3; Alps Opp. at 1.

[4] May 6, 2015 Hr'g Tr. 30:4-6 (Mr. Williams: "Let's use the product of what we did now, make it a universal protocol that applies in each case and go forward that way"); *Id.* 31:23-32:2 (Mr. Williams: "I want one protocol for all plaintiffs and all defendants for all cases. That doesn't mean I'm deposing you in five cases at once, it means each case is governed by that universal protocol, the rules in that protocol apply across the board").

[5] *See Id.* 9:20-23 (Ms. Sullivan: "From our perspective it is not appropriate, necessary or warranted to have one single protocol that governs all witness depositions in all auto parts cases for a number of witnesses"); 36:9-15(Mr. Squeri: " . . . I would assume that we are talking about trying to have perhaps a uniform protocol but issues like the number of deps -- depositions per defendant, which are going to vary from case to case, and issues like where the depositions are going to take place,

*seven oppositions* to the Motion, Plaintiffs' understanding that Defendants would not provide concurrence based upon their repeated prior statements saying exactly that was accurate. Based on the above, in compliance with Local Rule 7.1(a), Plaintiffs' Motion states that they sought concurrence in the relief requested from Defendants before filing the Motion. Mot. at 2; *Norton v. Zubkoff*, 2011 U.S. Dist. LEXIS 104836, *2 (E.D. Mich. Sept. 15, 2011).

> **2.    The correct procedure for challenging specific provisions in the Uniform Depo Protocol is to make an objection for good cause shown to the Special Master—not to oppose the Uniform Depo Protocol wholesale.**

Contrary to IPC and Fuel Sender Defendants' assertion[6], Plaintiffs are not obligated to meet-and-confer with each of the Defendant Groups in this litigation on every provision in a deposition protocol. Specifically, Plaintiffs are not required to meet-and-confer with Defendants to increase the number of depositions from 10 to 15 per Rule 30(a)(2)(A)(i) as IPC and Fuel Sender Defendants suggest. The Uniform Depo Protocol is consistent with the Wire Harness Deposition Protocol Order ("Wire Harness Depo Protocol"), which permits up to 15 depositions of each Defendant Group except one.[7]

Defendants first raised this issue at the May 6, 2015 in-person conference, to which the Special Master responded, "[P]ut a carve-out [in the Uniform Depo Protocol] that says *if [Defendants] have got some reason to deviate they can come to me for good cause shown*. All

---

which are going to involve a lot of clients' specific issues"). *See also* May 26, 2015 Hr'g Tr. 19:4-8, 20:25-21:2 ("Master Esshaki: Mr. Williams has suggested that there will be a single protocol on auto dealers and end payor plaintiffs, there will be a wire harness protocol, then there will be a protocol on all other defendants -- I mean in all other parties and all other cases. . . . Mr. Hemlock: . . . we recognize plaintiffs don't want to negotiate all 29 [deposition protocols], while I understand, but on the other hand each case is a separate case . . .").

[6] IPC & FS Defs.' Opp. at 8.

[7] The term "Defendant Group" refers to defendant companies that are affiliates of each other.

right. There may be some out there that doesn't fit within our mold, and we have to make an exception." May 6, 2015 Hr'g Tr. 33:4-8 (emphasis added). The Uniform Depo Protocol includes the carve-out contemplated by the Special Master: "Notwithstanding the above, each party reserves its right to object to any particular deposition or to object on the ground that the number of depositions for that particular party should be fewer than the number specified above." *See* Mot., Ex. A, Section III.A.6.

Defendants subsequently raised this issue at the May 26, 2015 phone conference, to which the Special Master replied, "[L]et me just say you've given a great argument against a motion that has not yet been filed." May 26, 2015 Hr'g Tr. 21:16-18. Plaintiffs have now filed this Motion, and Defendants should now file objections to the number of depositions for good cause, if necessary. Instead, IPC and Fuel Sender Defendants decided to focus on a meet-and-confer requirement rendered moot by the Special Master's statements above.[8] Moreover, IPC and Fuel Sender Defendants failed to offer any justification for fewer than 15 depositions for each Defendant Group.

Defendants should submit their objections to specific provisions in the Uniform Depo Protocol and propose alternative language on the same before the Special Master schedules a conference between the parties to mediate a resolution. By adhering to this correct procedure, the parties may engage in a meaningful meet-and-confer about specific disputed provisions before the conference. Defendants argue that the Uniform Depo Protocol places "unreasonable burden[s]" on the Court to "entertain objections" and Defendants to "engage in motion practice,"[9] but they do

---

[8] *Id.*

[9] Alps Opp. at 2.

not meaningfully substantiate this and their alternative—negotiating 31 separate deposition protocols for years to come—is the worst possible alternative.

> **a.    The number, length, and location of depositions set forth in the Uniform Depo Protocol are appropriate for the Auto Parts Cases.**

Defendants oppose the Uniform Depo Protocol due, in essence, to the provisions regarding the number, length, and/or location of depositions.[10] No Defendant has explained, however, why it should be carved out of these provisions—let alone, proposed alternative language. Defendants' Oppositions therefore serve no other purpose than to slow down this litigation.

The Uniform Depo Protocol is prudent given Defendants' history of delay with, and recent objections to, the Auto Dealer and End-Payor Plaintiff Deposition Protocol Order (Master File No. 2:12-md-02311, ECF No. 1009). Defendants are wrong that "there is no rush."[11] While there may be "no rush," there is the imperative to manage these cases in the interests of securing the "just, speedy, and inexpensive" determination of these proceedings. Fed. R. Civ. Proc. 1. This Court has emphasized the need to meet this goal repeatedly.

> **b.    Number of Rule 30(b)(1) depositions**

Regarding the number of Rule 30(b)(1) depositions, 15 per Defendant Group per Auto Parts Case is appropriate given what other Courts have ordered in antitrust class actions, and Defendants have not shown good cause for fewer depositions. Plaintiffs were allowed up to 15 fact witness depositions per defendant group in *In re Dynamic Random Access Memory Antitrust Litigation* ("*DRAM*") (Case No. 4:02-md-01486, ECF No. 731) (Ex. 1, ¶ 2) and *In re Optical Disk Drive Antitrust Litigation* ("*ODD*") (Case No. 3:10-md-02143, ECF No. 606) (Ex. 2, § (e)(v)).

---

[10] Alps Opp. at 2; Bearing Defs.' Opp. at 3-4; Certain Defs.' Opp. at 4-6; IPC & FS Defs.' Opp. at 12, 13-15.

[11] Certain Defs.' Opp. at 9.

Plaintiffs were permitted up to 12 fact witness depositions per defendant group in *In re Cathode Ray Tube Antitrust Litig.*, Case No. 3:07-cv-05944, ECF No. 1128 ("*CRT*") (Ex. 3, § VI), *In re Lithium-ion Batteries Antitrust Litig.*, Case No. 4:13-md-02420, ECF No. 593 ("*Batteries*") (Ex. 4, § III.B), *In re Static Random Access Memory Antitrust Litig.*, Case No. M:07-cv-01819, ECF No. 672 ("*SRAM*") (Ex. 5, ¶ 5), and *In re TFT-LCD Antitrust Litig.*, Case No. 3:07-md-01827, ECF No. 1546 ("*Flat Panel*") (Ex. 6, § V). The Auto Parts Cases are far larger than those cases in terms of parties, witnesses, and counsel and yet, Defendants appear to believe that 15 depositions per Defendant Group is disproportionate to the needs of this litigation.

Certain Defendants argue that the Uniform Depo Protocol would result in "an excessive number of depositions of at least one defendant, Mitsuba."[12] Pursuant to said Order, as Mitsuba is named as a Defendant in 10 Auto Parts Cases, Mitsuba would be subject to "***up to*** fifteen (15) depositions . . . in each Auto Part Product" or ***up to*** 150 Rule 30(b)(1) depositions. Mot., Ex. A, Section III.A.1 (emphasis added). Neither Mitsuba nor Defendants have explained why this is inappropriate. Mitsuba has pled guilty to fixing the prices of at least five different automotive parts. If Mitsuba maintains that the conspiracies it admittedly participated in were separate, and that there is no overlap, then Mitsuba should present sufficient deposition witnesses in each of these cases. If there is overlap—meaning a Mitsuba employee can speak to multiple parts—that will reduce the number of deponents that Mitsuba will have to present. Further, it would impose unnecessary expense on Plaintiffs and other parties to this litigation to require Plaintiffs to take depositions in far-flung locations. Furthermore, Plaintiffs will not take depositions that they believe will not be helpful to their case. But Mitsuba is not entitled to an arbitrary limit on the number of depositions just because its illicit conduct runs so deep and spreads so far. That is a problem that Mitsuba

---

[12] Certain Defs.' Opp. at 4-5.

created, and Plaintiffs are entitled to sufficient discovery under the rules to permit them to prove their case against Mitsuba at trial.

### c. Number and length of Rule 30(b)(6) depositions

Regarding the length of Rule 30(b)(6) depositions for Defendants, Defendants have not offered any reason to justify less than 21 hours for each Defendant Group per case. Even Leoni, which Defendants mention multiple times in their oppositions for its unique provisions in the Wire Harness Depo Protocol, is subject to 21 hours of Rule 30(b)(6) deposition testimony. Leoni is one of the smallest Defendants and had offices in 31 countries, 61,591 employees, and a net income of €105.9 million ($131.7 million) in 2013. The majority of Defendants are global automotive parts manufacturers with thousands of employees, dozens of locations, and hundreds of millions—if not, billions—of net profits. Twenty-one hours of Rule 30(b)(6) deposition testimony is not only reasonable but is the minimum that would be appropriate in this case.

Regarding the number and length of Rule 30(b)(6) depositions for Direct Purchaser Plaintiffs, Defendants have similarly not provided any reason to support more than 18 hours of Rule 30(b)(6) deposition testimony of each Direct Purchaser Plaintiff across the Auto Parts Cases. The Direct Purchaser Plaintiffs will be testifying about their purchases of Defendants' products. Defendants sold the products to them, which is information the Defendants already have. Defendants should not be permitted to take more and longer depositions of each Direct Purchaser Plaintiff in hopes of obtaining information to show that it has not met Rule 23(a)'s adequacy and typicality requirements for class certification. Imposing a limit on depositions is not tantamount to stripping Defendants of a "full and fair opportunity to litigate" their case per *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008), or "an opportunity to confront and cross-examine adverse witnesses" provided by *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).

### d.    Location of depositions

Regarding the location of depositions, the Uniform Depo Protocol—like the Wire Harness Depo Protocol—calls for Defendants to "arrange for the ***majority of their witnesses' depositions*** to occur in one of the following cities: Hong Kong; Seoul; Taipei; Honolulu; New York City; San Francisco; Los Angeles; Portland, OR; Seattle; Washington DC; Chicago or Detroit; or such other city to be agreed upon by the parties." *See* Mot., Ex. A, Section IV.B (emphasis added). Courts presiding over other antitrust multidistrict litigations have ordered depositions to presumptively take place in their respective districts. *See*, *e.g.*, *CRT* (Ex. 3, § VI); *Batteries* (Ex. 4, § III.B); *SRAM* (Ex. 5, ¶ 5); and *Flat Panel* (Ex. 6, § V). The deposition location provision in the Uniform Depo Protocol is consistent with these other antitrust class actions but includes additional U.S. and foreign cities to accommodate foreign-based fact witnesses.

The cases to which Defendants cite—*Chris-Craft Indus. Prods., Inc. v. Kuraray Co.*, 184 F.R.D. 605 (N.D. Ill. 1999) and *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427 (N.D. Cal. 2008)— are inapposite because neither are antitrust class actions. In antitrust class actions, courts have deviated from the general rule that the depositions should proceed at a defendant's principal place of business. As the court in *DRAM* expressed, "The Court expects, to the extent a witness has traveled to the United States for business, or otherwise does business in the United States, generally that those witnesses['] depositions will occur in the United States" (Case No. M:02-cv-012486, ECF No. 722 (Ex. 7, § B.6.b). And as the court in *ODD* stated, "It is the Court's experience that, and the parties should consider whether, the United States . . . is often the most efficient and inexpensive location for the depositions of foreign resident witnesses" (Case No. 3:10-md-02143, ECF No. 707) (Ex. 8, ¶ 1). All or a majority of Defendants' depositions should therefore not occur overseas. This concern is particularly important here because conducting depositions in the United

States would permit issues to be brought to the attention of the Master and the Court in real time during the conduct of the deposition, rather than after the deposition is completed and the witness has left which would be the case if the depositions happen in Asia while it is nighttime in the United States.

Certain Defendants find the Uniform Depo Protocol "nonsensical and unfair when applied to defendants that are not based in Asia or the United States."[13] Certain Defendants evidently overlooked that depositions may occur in "such other city to be agreed upon by the parties" under both the Wire Harness Depo Protocol and Uniform Depo Protocol (Sections IV.B)—a catch-all provision that contemplates Defendants who are based neither in Asia nor the United States.

### 3.      A Uniform Depo Protocol would support streamlining depositions of Defendants in multiple cases.

Defendants argue that a Uniform Depo Protocol would be inefficient.[14] More inefficient, however, is that Certain Defendants are unwilling to negotiate a deposition protocol with Plaintiffs at this time. *See* Certain Defs.' Opp. at 2 ("Submitting Defendants are willing ***to start negotiating*** deposition protocols for the later-filed cases ***at the proper time***"); *Id.* at 7 ("Submitted Defendants would be happy to dismiss a deposition protocol with Plaintiffs ***at the appropriate time***") (emphasis added).

Certain Defendants completely ignore the fact that many Defendants are named co-conspirators in multiple Auto Parts Cases, and the Wire Harness Depo Protocol directs the parties to "use their best efforts to coordinate so as to attempt to avoid multiple depositions of the same witness" (Case No. 2:12-cv-00100, ECF No. 315, Section IV.H). For example, Denso, MELCO,

---

[13] Certain Defs.' Opp. at 6.

[14] IPC & FS Defs.' Opp. at 13-15; OSS Defs.' Opp. at 2-3.

Sumitomo, Tokai Rika, and Yazaki are Wire Harness Defendants that are named in at least one other Auto Parts Case. Discovery thus far demonstrates that some of their executives were involved in more than one automotive parts conspiracy. It would be inefficient for the parties to coordinate depositions of witnesses who, for example, participated in four conspiracies if there were separate and unique deposition protocols for four Auto Parts Cases. A Uniform Depo Protocol ensures coordination by the parties while minimizing inefficiencies that would result from having 31 separate deposition protocols.

> **4.      Provisions of the Uniform Depo Protocol are proportional relative to the needs of this unprecedented litigation.**

Defendants claim that the provisions in the Uniform Depo Protocol are inconsistent with Rule 26(b)(2)(C)'s proportionality concerns. In this unprecedented case involving a massive, over a decade long globe-spanning antitrust cartel, the proportionality analysis weighs in Plaintiffs' favor, not Defendants'. Rule 26(b)(2)(C) only provides that "the court must limit the frequency or extent of discovery otherwise" in three situations where the discovery sought results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake. *See* Fed. R. Civ. P. 26(b)(2)(C)(i-iii). Moreover, there is a "general policy of allowing liberal discovery in antitrust cases." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 240 (E.D. Pa. 2014). Discovery in an antitrust case is necessarily broad because allegations involve improper business conduct; such conduct is generally covert and must be gleaned from records, conduct, and business relationships. *Callahan v. A.E.V. Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996). This is particularly important here where several Defendants have already pled to obstruction of justice charges, and where it is known that code words, subterfuge, and secret meetings were used to effectuate the conspiracy.

Depositions per the Uniform Depo Protocol are proportional relative to the discovery needs of this litigation. Defendants are many of the largest suppliers of automotive parts in the United States and have engaged in a massive, decade-long conspiracy to unlawfully fix and artificially raise the prices of these products. Plaintiffs have named 50 Defendant Groups across the Auto Parts Cases—the vast majority of which have agreed to plead guilty for price-fixing at least one automotive part.

Furthermore, the Uniform Depo Protocol is based on the Wire Harness Depo Protocol— the negotiations of which were continuously guided by proportionality. The Wire Harness Defendants consist of corporations that may have fixed prices for many automotive parts and others that may have only fixed prices for one automotive part (*compare* MELCO and G.S. Electech), yet the parties were able to agree on the same location and numbers of depositions for all Defendants except one. The Wire Harness Depo Protocol therefore exudes proportionality and is the result of compromise.

> **5.**    **Plaintiffs are not attempting to examine Defendants in Auto Parts Cases subject to a deposition stay or pending motions to dismiss at this time.**

Defendants argue that Plaintiffs may not seek depositions of Defendants' witnesses before the parties meet-and-confer pursuant to Rule 26(f).[15] Plaintiffs, however, are not doing what Defendants are complaining about. Plaintiffs are only seeking a Uniform Depo Protocol at present; that is, a ***procedure or system of rules*** governing depositions. Plaintiffs are aware that depositions may only proceed in Wire Harnesses, Instrument Panel Clusters, Fuel Senders, Heater Control

---

[15] Certain Defs.' Opp. at 8.

Panels, Bearings, Occupant Safety Systems, and Anti-Vibration Rubber Parts[16], and Plaintiffs are only seeking to depose witnesses of Defendants in these Auto Parts Cases at this time. If the Court resolves motions to dismiss in other Auto Parts Cases in favor of Plaintiffs, Plaintiffs may immediately depose Defendants per the Uniform Depo Protocol; if motions to dismiss are resolved in favor of Defendants, Defendants would simply not be bound by such an Order. Defendants have not provided a statute or case law to support their position that a deposition order may not precede a Rule 26(f) conference.

**6.  The Uniform Deposition Protocol Order should not be rejected based on the Master's Order Denying Plaintiffs' Motion for Submission of Global Orders.**

Defendants suggest that the Special Master should deny Plaintiffs' Motion for Uniform Depo Protocol because he denied Plaintiffs' Motion for Submission of Global Orders (*see*, *e.g.*, Case No. 2:12-cv-00601, ECF No. 112).[17] The Uniform Deposition Protocol Order should not be treated the same as orders governing electronically stored information (ESI), experts, and preservation ("Global Orders"), otherwise they would have been part of Plaintiffs' Motion for Submission of Global Orders (*see*, *e.g.*, Case No. 2:13-cv-00700, ECF No. 43).

The existing deposition protocols have been much more difficult to negotiate than Global Orders in this litigation because, as Defendants acknowledged in their Opposition to Plaintiffs' Motion for Submission of Global Orders, there is an "existing process" for the latter that "provides an efficient mechanism to address any case-specific issues" (*see*, *e.g.*, Case No. 2:13-cv-00700, ECF No. 45, p. 2). There is no such process for the deposition protocols.

---

[16] *See* Jan. 28, 2015 Hr'g Tr. 56:9-12 (". . . deposition discovery may proceed on wire harness, fuel sender, heating control panels, instrument panel clusters, bearings, occupant safety systems and anti-vibration rubber parts").

[17] Bearings Defs.' Opp. at 5-6; Certain Defs.' Opp. at 3-4;

Plaintiffs and the Wire Harness Defendants consequently spent *18 months* negotiating two deposition protocols: the Wire Harness Depo Protocol (Case No. 2:12-cv-00100, ECF No. 315) and the End-Payor Plaintiff and Auto Dealer Plaintiff Deposition Protocol Order (Master File No. 2:12-md-02311, ECF No. 1021), the latter of which remains unresolved due to the Wire Harness Defendants' objections to the Special Master's rulings (ECF No. 1010). That is, despite the Special Master's multiple conferences, the parties have only been able to reach agreement on a deposition protocol in one Auto Parts Case since the litigation started in 2012—and that deposition protocol does not even govern Auto Dealer and End-Payor Plaintiff depositions.

In contrast, as Defendants confirmed in the same Opposition, the parties were able to "quickly and efficiently negotiate ESI, Expert, and Preservation Orders modeled on the same template" (*see, e.g.*, Case No. 2:13-cv-00700, ECF No. 45, p. 1). The fact that the parties had negotiated Global Orders in five Auto Parts Cases supported the Special Master's ruling for separate Global Orders in each case (*see, e.g.*, Case No. 2:12-cv-00601, ECF No. 112, fn. 3). The Uniform Deposition Protocol Order should therefore not be rejected based on the Special Master's Order Denying Plaintiffs' Motion for Submission of Global Orders.

As discussed *supra*, the Uniform Depo Protocol would not contain multiple pages of footnotes or appendixes as Defendants suggested[18] because the number, length, and/or location of depositions of each defendant group—the only disputed issues based on Defendants' various oppositions[19]—may be built right into the provision of such an Order. Defendants with "distinct issues and characteristics" (Certain Defs.' Opp. at 3-4) concerning number, length, and/or location of depositions may object to the Special Master for good cause shown. *See* Section II.2, *supra*.

---

[18] Bearings Defs.' Opp. at 6.

[19] *See* Alps Opp. at 2; Bearings Defs.' Opp. at 3; Certain Defs.' Opp. at 4-7.

The Special Master should not order the parties to individually negotiate a deposition protocol for each Auto Parts Case as the collective process may take years for all Auto Parts Cases.

### 7.    Initial Discovery Plans do not preclude a Uniform Depo Protocol.

IPC and Fuel Sender Defendants contend that the Special Master should not enter a Uniform Depo Protocol because the deposition location provision contained therein conflicts with the same provision in the IPC and Fuel Sender Initial Discovery Plans ("IDPs").[20] The parties fashioned the Wire Harness Depo Protocol Order after lengthy negotiations and compromises, despite a similar provision in the Wire Harness IDP to the provision in the IPC and Fuel Sender IDPs. The Court entered the Wire Harness IDP on July 10, 2012 and the IPC and Fuel Sender IDPs on September 24, 2012, when the DOJ had charged no more than eight companies and 11 executives for their involvement in fixing the prices of five automotive parts in its ongoing investigation into bid-rigging and price-fixing in the automotive parts industry. It was significantly less burdensome for fact witness depositions to take place in the deponent's country of residence (*e.g.*, Japan) when there were only five Auto Parts Cases.

The landscape of this litigation, however, has drastically transformed. As of this filing, the DOJ has charged 35 companies and 55 executives for their involvement in fixing the prices of 31 automotive parts. Each of the 35 companies have agreed to plead guilty and to pay more than $2.5 billion in criminal fines. Twenty-nine of the 55 executives have been sentenced to serve time in a U.S. prison or have entered into a plea agreement. Given that this litigation has burgeoned significantly in terms of actions, parties, and witnesses since the Court entered the Wire Harness, IPC, and Fuel Sender IDPs, the deposition location provision contained therein is no longer

---

[20] IPC & FS Opp. at 7-8.

reasonable nor realistic. The Wire Harness Defendants accepted this fact and renegotiated deposition locations, and the IPC and Fuel Sender Defendants should follow suit.

Furthermore, in other antitrust class actions, courts have not ordered the deposing party to travel to the deponent's country of residence to take the deposition as Defendants suggest. In fact, as discussed *supra*, courts have ordered depositions to presumptively occur in their respective districts in the United States. The deposition location provision in the Uniform Deposition Protocol is therefore consistent with those in *CRT* (Ex. 1, § VI), *Batteries* (Ex. 2, § III.B), *SRAM* (Ex. 3, ¶ 5), and *Flat Panel* (Ex. 4, § V).

**8. The OSS Defendants failed to propose language for their requested modifications.**

The OSS Defendants acknowledge that Wire Harness Depo Protocol—which served as a template for the Uniform Depo Protocol—"is largely acceptable for use in the OSS action" given modifications to three provisions in the Wire Harness Deposition Protocol.[21] Specifically, OSS Defendants seek modifications to (1) account for OSS Defendants who are defendants in other cases; (b) decrease the time limit for interpreted depositions from 13 to 12 hours; and (c) handle pending objections to the End-Payor and Auto Dealer Plaintiff Deposition Protocol Order ("EPP & ADP Depo Protocol").[22] OSS Defendants failed to propose any language in their Opposition, however, concerning the first and third requested modifications. Regarding the second requested modification, the Special Master specifically ruled that depositions conducted with the use of an interpreter should have a presumptive 13-hour time limit.

---

[21] OSS Defs.' Opp. at 3.

[22] *Id.*

Additionally, the aforementioned *CRT* and *ODD* deposition protocol proceedings are informative as to depositions conducted with interpreters. In *CRT*, the deposition protocol provided, "To the extent an interpreter is used for all or nearly all of the deposition, the time limits set forth . . . shall be ***doubled***. In all other situations, the Parties will cooperate in good faith to extend the deposition time to account for the use of the interpreter, guided by the principle that deposition time during which an interpreter should be counted at ***50% or one half*** the actual amounts against the [] set limits" (emphasis added) (Ex. 3, § II.D). The deposition protocol in *ODD* includes virtually the same language (Case No. 3:10-md-02143, ECF No. 1002) (Ex. 9, § IV.D)

### 9.    Plaintiffs should not be required to negotiate eight separate deposition protocol orders with the MELCO Defendants.

While the MELCO Defendants' assertion that the Wire Harness Depo Protocol is silent on depositions of MELCO witnesses because Plaintiffs named MELCO as a Defendant many months after deposition negotiations had started[23], they fail to offer any compelling reason why the Order should not bind them. Future plaintiffs who are not currently named in this litigation will be bound by the End-Payor and Auto Dealer Deposition Protocol Order (*see* EPP & ADP Depo Protocol (Master File No. 2:12-md-02311, ECF No. 1021, Sections II)), and the principle of fairness would suggest that the Wire Harness Depo Protocol bind MELCO.

Furthermore, MELCO is named as a Defendant in eight Auto Parts Cases and has agreed to plead guilty and to pay a $190 million criminal fine for price-fixing and bid-rigging certain automotive parts. A federal grand jury returned a three-count indictment against three current and former executives of MELCO for the same anticompetitive conduct. MELCO should not be treated

---

[23] MELCO Opp. at 2.

any differently than Wire Harness Defendants like Denso and Yazaki, and Plaintiffs should not be obligated to negotiate eight deposition protocols with MELCO.

## III.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Special Master enter the Uniform Depo Protocol; instruct Defendants to submit to him their (1) objections to specific provisions (*e.g.*, number, length, and location of depositions) and (2) proposed alternative language on the same; and schedule a conference between the parties to mediate a resolution of disputed provisions.


Date: August 3, 2015                              Respectfully submitted,

                                                  */s/ E. Powell Miller*
                                                  E. Powell Miller
                                                  Devon P. Allard
                                                  **THE MILLER LAW FIRM, P.C**.
                                                  The Miller Law Firm, P.C.
                                                  950 W. University Drive, Suite 300
                                                  Rochester, MI 48307
                                                  Telephone: (248) 841-2200
                                                  Facsimile: (248) 841-2200
                                                  epm@millerlawpc.com
                                                  dpa@millerlawpc.com

                                                  *Interim Liaison Class Counsel for the Proposed*
                                                  *End-Payor Plaintiff Classes*

                                                  Steven N. Williams
                                                  Adam J. Zapala
                                                  Elizabeth Tran
                                                  **COTCHETT, PITRE & McCARTHY, LLP**
                                                  San Francisco Airport Office Center
                                                  840 Malcolm Road, Suite 200
                                                  Burlingame, CA 94010
                                                  Telephone: (650) 697-6000
                                                  Facsimile: (650) 697-0577
                                                  swilliams@cpmlegal.com
                                                  azapala@cpmlegal.com
                                                  etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed*
*End-Payor Plaintiff Classes*

David H. Fink (P28235)
Darryl Bressack (P67820)
**FINK + ASSOCIATES LAW**
100 West Long Lake Road, Suite 111
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
Facsimile: (248) 971.2600
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com

18

*Interim Liaison Counsel for the Proposed Direct Purchaser Plaintiff Classes*

Steven A. Kanner
William H. London
Michael E. Moskovitz
Michael L. Silverman
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
skanner@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com
msilverman@fklmlaw.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
**PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP**
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
Facsimile: (207) 791-3000
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector

19

**SPECTOR ROSEMAN KODROFF
& WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

*Interim Co-Lead Counsel for the Proposed Direct
Purchaser Plaintiff Classes*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 3, 2015, I caused the foregoing PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR UNIFORM DEPOSITION PROTOCOL ORDER to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ E. Powell Miller*
E. Powell Miller
