**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |

| | |
|---|---|
| In Re: Instrument Panel Clusters | 2:12-cv-00200 |
| In Re: Fuel Senders | 2:12-cv-00300 |
| In Re: Heater Control Panels | 2:12-cv-00400 |
| In Re: Bearings | 2:12-cv-00500 |
| In Re: Occupant Safety Systems | 2:12-cv-00600 |
| In Re: Alternators | 2:13-cv-00700 |
| In Re: Anti-Vibrational Rubber Parts | 2:13-cv-00800 |
| In Re: Windshield Wipers | 2:13-cv-00900 |
| In Re: Radiators | 2:13-cv-01000 |
| In Re: Starters | 2:13-cv-01100 |
| In Re: Automotive Lamps | 2:13-cv-01200 |
| In Re: Switches | 2:13-cv-01300 |
| In Re: Ignition Coils | 2:13-cv-01400 |
| In Re: Motor Generators | 2:13-cv-01500 |
| In Re: HID Ballasts | 2:13-cv-01700 |
| In Re: Inverters | 2:13-cv-01800 |
| In Re: Electronic Powered Steering Assemblies | 2:13-cv-01900 |
| In Re: Fan Motors | 2:13-cv-02100 |
| In Re: Fuel Injection Systems | 2:13-cv-02200 |
| In Re: Power Window Motors | 2:13-cv-02300 |
| In Re: Automatic Transmission Fluid Warmers | 2:13-cv-02400 |
| In Re: Valve Timing Control Devices | 2:13-cv-02500 |
| In Re: Air Conditioning Systems | 2:13-cv-02700 |
| In Re: Windshield Washer Systems | 2:13-cv-02800 |
| In Re: Constant Velocity Joint Boot Products | 2:14-cv-02900 |
| In Re: Spark Plugs | 2:15-cv-03000 |
| In Re: Oxygen Sensors | 2:15-cv-03100 |

This Document Relates to:
All Actions

**DEFENDANTS' COLLECTIVE SUBMISSION OF**
**GLOBAL DEPOSITION PROTOCOL DISPUTES**

## <u>STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Gering v. Fraunhofer USA, Inc.*, No. 05-CV-73458-DT, 2008 WL 4427608 (E.D. Mich. Sept. 30, 2008)

*Lomax v. Sears, Roebuck & Co*, No. 99-6589, 2000 WL 1888715 (6th Cir. Dec. 19, 2000)

*Thomas v. Int'l Bus. Machs.*, 48 F.3d 478 (10th Cir. 1995)

*United States v. Theresius Filippi*, 18 F.2d 244 (1st Cir. 1990)

Fed. R. Civ. P. 30(b)(1)

Fed. R. Civ. P. 30(b)(6)

Fed. R. Civ. P. 45

## TABLE OF CONTENTS

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................... i

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION .......................................................................................... 1

I. Issue 1: Number Of 30(b)(1) Depositions Of Defendants ....................................... 2

  A. Plaintiffs' One-Size-Fits-All Approach is Based on Inapt Comparisons to the *Wire Harnesses* Case ........................................................................................... 2

  B. Plaintiffs' Approach Would Result in Absurd Numbers of Depositions that Ignore Efficiencies Gained as These Cases Progress ............................................. 5

  C. Defendants' Approach is Case-Specific and Would Ensure that the Parties Do Not Spend Needless Resources on Endless Depositions ....................................... 6

II. Issue 2: Location Of Defendant Depositions ....................................................... 8

  A. Existing Law Mandates that Depositions Should Occur Where Witnesses Are Located. ..................................................................................................... 9

  B. Defendants' Position Has Already Been Ordered in the *Instrument Panel Clusters*, *Heater Control Panels*, and *Fuel Senders* Cases, and the Same Principles Should Apply to Later Cases. ................................................................. 10

III. Issue 3: Reciprocal Application of Special Master's Order Requiring List of Topics and Limitation on Number of Examining Counsel ........................................... 12

  A. Plaintiffs Should Provide a List of Topics for Rule 30(b)(1) Depositions of Defendants. ......................................................................................... 12

  B. Plaintiffs Should Be Limited to Three Examiners in Rule 30(b)(1) Depositions Of Defendants ......................................................................................... 13

IV. Issue 4: Testimony on Multiple Auto Parts ....................................................... 14

V. Issue 5: Numbers of Hours of 30(B)(6) Depositions Of Defendants ......................... 16

  A. Plaintiffs' Proposal Ignores Efficiencies to be Gained in Earlier Cases and Results in an Overly Burdensome Deposition Schedule. ................................... 16

  B. Defendants' Approach is More Reasonable and Presumes Fewer Depositions for Later Cases Due to Greater Efficiency. ..................................................... 18

VI. Issue 6: Assertions of Fifth Amendment Rights ................................................ 21

CONCLUSION.................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Gering v. Fraunhofer USA, Inc.*, No. 05-CV-73458-DT,
    2008 WL 4427608 (E.D. Mich. Sept. 30, 2008) .................................................................9

*Lomax v. Sears, Roebuck & Co.*, No. 99-6589,
    2000 WL 1888715 (6th Cir. Dec. 19, 2000) ......................................................................9

*Thomas v. Int'l Bus. Machs.*,
    48 F.3d 478 (10th Cir. 1995) ..............................................................................................9

*United States v. Theresius Filippi*,
    918 F.2d 244 (1st Cir. 1990) .............................................................................................10

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 1746 ..........................................................................................................................23

28 U.S.C. § 1783 ..........................................................................................................................10

Fed. R. Civ. P. 30(a)(2)(A)(i) ........................................................................................................3

Fed. R. Civ. P. 30(b)(1) .......................................................................................................*passim*

Fed. R. Civ. P. 30(b)(6) ..........................................................................................1, 16, 17, 18

Fed. R. Civ. P. 45 .........................................................................................................................10

Fed. R. Civ. P. 45(c)(1)(A) ..........................................................................................................10

Fed. R. Civ. P. 45(d)(3)(A)(ii) .....................................................................................................10

## OTHER AUTHORITIES

8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice
    and Procedure: Civil § 2112 (2d ed. 1994) .........................................................................9

## INTRODUCTION

Defendants[1] respectfully submit this memorandum in support of Defendants' proposals regarding the provisions contained in deposition protocols in the above-captioned actions on which the parties have not yet reached agreement.  On August 17, 2015, the Special Master denied Plaintiffs' Motion for Uniform Deposition Protocol Order, *see* 2:13-cv-00703-MOB-MKM, ECF No. 48 (Aug. 17, 2015) (hereinafter "Order Denying Uniform Deposition Protocol"), and directed that Defendants prepare separate deposition protocols in each case that address issues unique to each action.  Defendants did so in all cases by October 1, 2015, after which the parties in each case met and conferred within the thirty days required under the Order Denying Uniform Deposition Protocol.  The parties reached agreement on almost every issue.

The following issues remain in dispute in multiple cases: (1) the number of Rule 30(b)(1) depositions of Defendants; (2) the location of depositions of Defendants; (3) whether, like Defendants, Plaintiffs should also be required to provide a list of topics in advance of Rule 30(b)(1) depositions and be limited to three examining counsel who can question a particular witness; (4) the number of hours for Rule 30(b)(6) depositions of Defendants; (5) the amount of time afforded to Plaintiffs to examine Defendant witnesses when they are questioned about multiple auto parts cases; and (6) whether a witness may assert his or her Fifth Amendment rights in writing.

Defendants and Plaintiffs have consolidated briefing on these issues to avoid duplication for the convenience of the Special Master.  Additionally, some of these issues have already been resolved on a case-specific basis—and Defendants have noted when that is the case within each section.  Defendants' proposed deposition protocols in each of the above-captioned actions are

---

[1] The list of Defendants joining this motion is included at Ex. 1.

1

included as Exs. 2-26.  Defendants respectfully request that the Special Master enter Defendants' proposed deposition protocols for the reasons stated below.

## I.        ISSUE 1: NUMBER OF 30(B)(1) DEPOSITIONS OF DEFENDANTS

In all but five of these cases, the parties disagree on the number of 30(b)(1) depositions that Plaintiffs may take of Defendants.[2]  Defendants' case-specific proposals are premised on the principle, recognized by the Special Master, that each of the cases in which this issue has not been resolved has "distinct issues and characteristics" that set it apart.  *See* Special Master's Order Den. Pls.' Mot. for Submission of Global Orders at 4, 2:13-cv-00700-MOB-MKM, ECF No. 46 (July 16, 2015).   Accordingly, Defendants have proposed that the number of Rule 30(b)(1) depositions of Defendants vary from case to case based upon their distinguishing characteristics, including the alleged scope of the conspiracy at issue in the particular case (in particular the number of products at issue in the particular case) and number of OEMs (in the guilty pleas or any factual allegations in the complaints), the size of individual Defendants, and whether individual Defendants have pleaded guilty.  Plaintiffs, by contrast, have insisted on a one-size-fits-all approach, arguing that they are entitled to fifteen depositions of every Defendant group in each case other than the three in which the parties have reached agreement.

### A.        Plaintiffs' One-Size-Fits-All Approach Is Based on Inapt Comparisons to the *Wire Harnesses* Case.

Plaintiffs' insistence that they be allowed fifteen depositions of each Defendant group in each case is based solely on the parties' agreement in the *Wire Harnesses* case to allow that number of depositions for most Defendant groups.  The comparison to *Wire Harnesses,* however,

---

[2]  This issue needs to be resolved in all cases other than *Bearings*, *Motor Generators*, *Inverters*, and *Constant Velocity Joint Boot Products.*  The *Occupant Safety Systems* Defendants agreed to the number of depositions Plaintiffs proposed based on their understanding that Plaintiffs had agreed that a majority of depositions would take place in a list of designated cities and a minority of depositions would take place in the deponent's country of residence, unless otherwise agreed to by the parties.

is inapt.  After months of negotiations, the parties in *Wire Harnesses* ultimately settled on two tiers for the number of Defendant depositions: fifteen depositions for the first tier, which includes most Defendant Groups, and seven depositions for the second tier.  *See* Wire Harness Dep. Protocol Order ¶ III.A.1, 2:12-cv-00100-MOB-MKM, ECF No. 315 (June 30, 2015).  Those numbers were more than Defendants believed were necessary, but Defendants were willing to compromise given the scope of that case, which *covers over a dozen different products*.  *See* Corrected Fourth Am. Consol. Class Action Compl. (*Wire Harnesses*) ¶ 3, No. 2:12-cv-00103-MOB-MKM, ECF No. 233 (Oct. 17, 2014) ("'Automotive Wire Harness Systems' include the following: automotive wire harnesses, speed sensor assemblies, automotive electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, high voltage wiring, and power distributors.").  The agreement in *Wire Harnesses* allows Plaintiffs to take up to 157 Rule 30(b)(1) depositions of the Defendants (314 deposition days if an interpreter is used, which will be the case in most, if not all, depositions)[3] – more than fifteen times the ten depositions Plaintiffs would be entitled to take under the Federal Rules of Civil Procedure.  FED. R. CIV. P. 30(a)(2)(A)(i).

But this compromise is inappropriate for other cases in this diverse multi-district litigation, which have substantial factual distinctions from the *Wire Harnesses* case.  Unlike *Wire Harnesses*, which involves more than a dozen products, most of the other cases involve only a single product, greatly reducing the number of Defendant depositions needed.

And, whereas *Wire Harnesses* alleges sales concerning multiple OEMs, Plaintiffs have

---

[3]  This number assumes that Defendant Groups that are now parties to the *Wire Harnesses* case, but were not parties at the time the deposition protocols were negotiated, will be subject to fifteen depositions per Defendant Group.  Those Defendants have not necessarily agreed to that number, and reserve their rights to further negotiate the number of depositions for their respective Defendant Groups.

filed some cases—e.g., *Heater Control Panels* and *Fuel Senders*—that involve sales and conduct affecting only one OEM, Toyota.  By contrast, *Wire Harnesses* relates to sales concerning multiple OEMs, thus arguably giving rise to a need for additional depositions.  These factual distinctions are precisely what the Special Master had in mind when he denied Plaintiffs' motion for a uniform deposition protocol and ordered that each case should use the *Wire Harnesses* protocol only as a template from which to start the discussion, but adapt it for the "particularized need and size of the class of cases at issue."  Order Denying Uniform Deposition Protocol at 4.

Not all defendants are in identical procedural postures.  HIAMS, for example, has settled with the Auto Dealers ("ADPs") and End Payors ("EPPs").  HIAMS's settlements include provisions governing the number of depositions allowed of the settling Defendants by ADPs and EPPs, and HIAMS believes that those settlements should govern the number of depositions Plaintiffs may take of HIAMS, not an additional set of depositions requested by other Plaintiffs.  If HIAMS were required to defend the same number of depositions as non-settling Defendants, the value of its settlement would be undermined, which may serve as a disincentive for future settlements in this MDL.

Additionally, Plaintiffs' one-size-fits-all approach fails to account for the significant differences among Defendants.  Some of the Defendants in later-filed cases, such as Alps Electric Co., Ltd., Calsonic Kansei Corporation, Keihin Corporation, Keihin North America, Inc., and Mikuni American Corporation, have never pleaded guilty as to any product at issue in the multi-district litigation and/or sell products only to one OEM.  Some of those Defendants are quite small – for example, Mikuni American Corporation[4] has fewer than 100 employees.  Yet Plaintiffs have insisted on deposing fifteen individuals from each of those companies as well.

---

[4]  Mikuni American Corporation is the only Mikuni entity in the *Fuel Injection Systems* case that is not contesting personal jurisdiction.

Plaintiffs' agreement to a reduced number of Rule 30(b)(1) depositions of Defendants in a few cases is a tacit acknowledgment that not all of the cases are alike. The *Motor Generators* and *Inverters* cases, for example, each concern one product that is only installed in hybrid and electric vehicles. For these reasons, Plaintiffs agreed to seven Rule 30(b)(1) depositions of Defendants in each case. Defendants believe seven is beyond what is necessary for these two cases, but agreed to seven as a compromise. By contrast, the *Bearings* case is more complicated. It involves a number of very different products, including products for various industrial applications, in addition to automotive applications. For that reason, the parties agreed to a compromise similar to that reached in *Wire Harnesses*, adopting a two-tiered system: fifteen depositions for most Defendant Groups, and seven depositions for those *Bearings* Defendants located only in the United States.

### B.     Plaintiffs' Approach Would Result in Absurd Numbers of Depositions that Ignore Efficiencies Gained as These Cases Progress.

Plaintiffs' presumption of fifteen depositions of each Defendant in each case would create a massive burden on the parties and the Court for the foreseeable future. Allowing Plaintiffs to take fifteen depositions of every Defendant in every case under dispute (along with the agreed-upon numbers of depositions in *Wire Harnesses*, *Bearings*, *Motor Generators*, and *Inverters*), would result in more than *1,400* Rule 30(b)(1) depositions of Defendants in this litigation. If, as is likely, those depositions require an interpreter, they will require up to 2,800 business days. And, if one of these Rule 30(b)(1) depositions of a Defendant were conducted every single business day, it would take more than 11 *years* (assuming 250 business days per year) to complete all of them.

Plaintiffs' one-size-fits-all approach also underestimates the degree to which discovery will become more efficient as these cases progress. As the cases move forward, Plaintiffs will

have learned much more about Defendants' businesses, and all parties will have learned from the Court's rulings in the three initial cases the types of facts that may be particularly important to the Court's determination of class certification motions.

> **C.** **Defendants' Approach Is Case-Specific and Would Ensure that the Parties Do Not Spend Needless Resources on Endless Depositions.**

Defendants' approach would allow depositions to be completed in considerably less time, and would more accurately reflect the scope of specific cases and the efficiencies the parties should achieve in discovery as the various cases progress. The below table outlines Defendants' proposed numbers of depositions in each case, with a brief explanation for each proposal:

| **Case** | **Defendants' Proposal (Per Defendant Group)** | **Plaintiffs' Proposal (Per Defendant Group)** | **Explanation** |
|---|---|---|---|
| Fuel Senders | 3 | 7 | The case only involves a single product, with a very small amount of sales, that is sourced separately by one OEM. |
| Instrument Panel Clusters | 5 | 15 | This case only involves a single product. |
| Heater Control Panels | 5 | 15 | This case only involves a single product that is sourced separately by one OEM. |
| Radiators | 5 | 15 | This case only involves a single product. |
| Fan Motors | 0 | 15 | The Fan Motor is a subcomponent of the Radiator. The Mitsuba Defendants are the only named Defendant in *Fan Motors*, and they are also named in *Radiators* based on the same alleged conduct. There is no need to re-depose the same Mitsuba personnel about the very same conduct. The Mitsuba Defendants have filed a separate brief on this issue. |
| Windshield Wipers Systems | 5 | 15 | This case only involves a single product. |
| Ignition Coils | 5 (3 for HIAMS Defendants) | 15 | This case only involves a single product. The ADP and EPP class settlement agreements with HIAMS should govern the number of depositions that each of those classes may take of HIAMS. |

6

| **Case** | **Defendants' Proposal (Per Defendant Group)** | **Plaintiffs' Proposal (Per Defendant Group)** | **Explanation** |
|---|---|---|---|
| HID Ballasts | 5 | 15 | This case only involves a single product. |
| Power Window Motors | 5 | 15 | This case only involves a single product. |
| ATF Warmers | 5 | 15 | This case only involves a single product. |
| Valve Timing Control Devices | 5 | 15 | This case only involves a single product. |
| Windshield Washer Systems | 5 | 15 | This case only involves a single product. |
| Electronic Powered Steering Assemblies | 5 | 15 | This case involves a system of multiple different products, but not as many products as *Wire Harnesses*. |
| Anti-Vibrational Rubber Parts | 7 | 15 | This case only involves a single product, naming only four Defendants, and is brought by only two Plaintiff classes. |
| Switches | 8 (13 hours for translated depositions) or 12 (12 hours for translated depositions) | 15 | Switches are a limited product with a small number of employees involved.  Further, there is a significant overlap between the employees in *Heater Control Panels* and *Switches* for the Tokai Rika Defendants. |
| Alternators/Starters | 10 (3 for HIAMS Defendants) | 15 | This case involves only two products.  The ADP and EPP class settlement agreements with HIAMS should govern the number of depositions that each of those classes may take of HIAMS. |
| Automotive Lamps | 10 | 15 | This case only involves two products. |
| Fuel Injection Systems | 10 (5 for Aisan, Bosch, Keihin, MELCO, and Mikuni Defendants; 3 for HIAMS Defendants; 2 for Maruyasu Defendants) | 15 | This case involves a system of multiple different products, but many of the Defendants involved only make one or a small number of the products at issue.  Some will be subject to depositions in other product cases.  The ADP and EPP class settlement agreements with HIAMS should govern the number of depositions that each of those classes may take of HIAMS. Unique issues relating to the Keihin Defendants are explained in Keihin's supplemental brief. |

| Case | Defendants' Proposal (Per Defendant Group) | Plaintiffs' Proposal (Per Defendant Group) | Explanation |
|---|---|---|---|
| Air Conditioning Systems | 10 | 15 | This case involves a product system that is much simpler and involves significantly fewer parts than in *Wire Harnesses*. Moreover, some of the Defendants only make one or a few of the parts at issue. Some will be subject to depositions in other product cases. |
| Spark Plugs/Oxygen Sensors | 10 | 15 | This case only involves three products. |

## II.    ISSUE 2: LOCATION OF DEFENDANT DEPOSITIONS

The parties also disagree on the location of depositions of Defendants.  There is no legal basis for an employee of a corporation, not named as a party to the litigation, to be required or compelled to appear for a deposition in a location outside of his or her home country.  Instead, an individual non-party witness must be deposed in his or her country of residence absent agreement otherwise.  This rule is already reflected in the Initial Discovery Plans[5] that Plaintiffs agreed to and the Court entered in the *Heater Control Panels*, *Instrument Panel Clusters*, and *Fuel Senders* cases, which order that depositions are to take place in the witness's country of residence unless the parties agree on a different location.  The same legal rationale that supported the deposition location provisions in those Initial Discovery Plans applies equally to all cases in the MDL.

---

[5]  Initial Discovery Plan at ¶ 7 (*Instrument Panel Clusters*), No. 12-cv-00200, ECF No. 31 (Sept. 24, 2012) (emphasis added); Initial Discovery Plan at ¶ 7 (*Fuel Senders*), No. 12-cv-00300, ECF No. 30 (Sept. 24, 2012); Initial Discovery Plan at ¶ 7 (*Heater Control Panels*), No. 12-cv-00400, ECF No. 26 (Sept. 24, 2012)

Plaintiffs, on the other hand, ask this Court to enter an order that is not authorized by the Federal Rules and, at the same time, disregard the order – and agreement of the parties – found in the Initial Discovery Plans.  Plaintiffs seek to require that the majority of depositions take place in the United States, with the minority to take place in one of their identified locations *other than* Japan or Germany *without regard to where the witness resides or can be found*.  In other words, under Plaintiffs' proposal, many deponents could not have their depositions taken in their home country.  Not only is this position contrary to the position certain Plaintiffs have already advanced before this Court, it is contrary to their position in briefing *this very issue* before the Special Master and governing law.[6]

## A.   Existing Law Mandates that Depositions Should Occur Where Witnesses Are Located.

For depositions of individuals taken under Fed. R. Civ. P. 30(b)(1), the "general rule" in the Eastern District of Michigan and other courts is that "depositions should occur where the witnesses are located, particularly in light of the fact that plaintiff chose this forum." *Gering v. Fraunhofer USA, Inc.*, No. 05-CV-73458-DT, 2008 WL 4427608, at *1 (E.D. Mich. Sept. 30, 2008); *Lomax v. Sears, Roebuck & Co.,* No. 99-6589, 2000 WL 1888715 at *4 (6th Cir. Dec. 19, 2000); *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 483 (10th Cir. 1995) (noting the "normal procedure that the 'deposition of a corporation by its agents and officers should ordinarily be

---

[6] In their Motion for Uniform Deposition Protocol ("Uniform Order Motion"), certain Plaintiffs asked this Court to enter a modified version of the *Wire Harnesses* Deposition Protocol to govern in all subsequent cases.  *See* Notice of Motion and Motion for Uniform Deposition Protocol Order at 10, No. 12-md-02311, ECF No. 1027 (July 7, 2015).  One provision that Plaintiffs sought to have applied in all cases was the Defendant deposition location provision that the parties agreed to as a compromise in *Wire Harnesses*.  That protocol provides that a majority of depositions take place in one of several cities outside Japan, *with the remainder to be taken in the witness's home country (including Japan)*.  Now, for the first time, they seek to prevent *any* depositions from occurring in Japan or Germany, which is contrary to prior agreement and legally unsupportable.

taken at its principal place of business'" (quoting 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure: Civil § 2112 (2d ed. 1994))).  This is based, in part, on the fact that non-party witnesses, such as employees of a corporate party, must be subpoenaed for a deposition pursuant to Fed. R. Civ. P. 45, and even a properly served Rule 45 subpoena is geographically limited in its reach: Rule 45 requires a court to quash or modify a subpoena that requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed, or regularly transacts business.  FED. R. CIV. P. 45(d)(3)(A)(ii); *see* FED. R. CIV. P. 45(c)(1)(A).

Nowhere does Rule 45 – or any other federal rule or statute – require foreign nationals to appear for depositions outside their home countries.  *See, e.g.,* 28 U.S.C. § 1783 (authorizing the issuance of a subpoena only on "a national or resident of the United States who is in a foreign country" – not on a foreign national); *United States v. Theresius Filippi*, 918 F.2d 244, 247 (1st Cir. 1990) ("The government has no power to compel the presence of a foreign national residing outside the United States.").  Plaintiffs' position is simply inconsistent with what is authorized by the Federal Rules.

> **B.  Defendants' Position Has Already Been Ordered in the *Instrument Panel Clusters*, *Heater Control Panels*, and *Fuel Senders* Cases, and the Same Principles Should Apply to Later Cases.**

Consistent with the governing principles and laws of deposing non-party witnesses, the Initial Discovery Plan orders in the *Instrument Panel Clusters*, *Heater Control Panels*, and *Fuel Senders*, cases dictate that "depositions shall take place in *the deponent's country of residence*" absent agreement of the parties to hold the deposition in a different location.   Initial Discovery Plan at ¶ 7 (*Instrument Panel Clusters*), No. 12-cv-00200, ECF No. 31 (Sept. 24, 2012) (emphasis added); Initial Discovery Plan at ¶ 7, No. 12-cv-00400 (*Heater Control Panels*), ECF No. 26 (Sept. 24, 2012); Initial Discovery Plan at ¶ 7, No. 12-cv-00300 (*Fuel Senders*), ECF No.

30 (Sept. 24, 2012).[7]  These orders reflect governing law concerning deposition locations and the policies supporting that law; accordingly, the logic for requiring that depositions take place in a witness's country of residence applies with equal force to later cases that do not yet have Initial Discovery Plans.  Defendants' position (unlike Plaintiffs') is consistent with these orders and should be entered.

The fact that Plaintiffs are no longer satisfied with an agreement they reached cannot be a basis to disregard the legal principle that courts in the United States have no authority to order witnesses from another country to appear for a deposition in the United States or any other country.  Further, to allow Plaintiffs to avoid these prior agreements simply because they now seek a different outcome disincentivizes the parties to reach any agreements going forward.  All parties have known that many of the witnesses in these cases reside in Japan well before the Initial Discovery Plans were negotiated and entered.

Accordingly, the Court should reject Plaintiffs' attempt to circumvent both settled law and the logic of the standing orders with respect to the location of depositions, and enter Defendants' proposed deposition location language below:

> Depositions of the Defendant witnesses will take place in each witness's home country unless otherwise agreed by the parties.  Plaintiffs will pay said witnesses' economy class fares and reasonable travel costs incurred by witnesses, such as lodging and meal expenses up to a limit of $450 per day, associated with any such depositions that occur in a city within the United States, other than the depositions of witnesses identified in prior stipulations that certain Defendants have already agreed will take place in the United States.  No witness who lives in the United States at the time his deposition is noticed shall select a location for his deposition that is outside of the United States, and Plaintiffs will not be responsible for paying the expenses for witnesses who live in the United States.[8]

---

[7] In the *Bearings* cases, Plaintiffs agreed to this same provision during negotiations of the Initial Discovery Plan.

[8] Plaintiffs and Defendants have previously agreed that Plaintiffs will pay said costs if the parties agree that a witness will appear for a deposition in the United States.  Additionally, Defendants in the *Instrument Panel Clusters*, *Heater Control Panels*, and *Fuel Senders* have included additional language at the start of this provision noting that this approach was "As ordered in the Initial Discovery Plan".

III.  **ISSUE 3: RECIPROCAL APPLICATION OF SPECIAL MASTER'S ORDER REQUIRING LIST OF TOPICS AND LIMITATION ON NUMBER OF EXAMINING COUNSEL**

A.  **Plaintiffs Should Provide a List of Topics for Rule 30(b)(1) Depositions of Defendants.**

The Special Master's Order of June 18, 2015 required Defendants in advance of a Rule 30(b)(1) deposition of an Auto Dealer Plaintiff or an End Payor Plaintiff to provide "an outline that identifies the general topics on which the Defendants reasonably and in good faith expect to examine the witness," a list that is "separate from the notice identifying the deponent Defendants have chosen, and the place and time of the deposition." Order, 2:12-md-02311-MOB-MKM, ECF No. 1005. Fairness and due process, as well as the logic and purpose behind this requirement, dictate that it should be mandatory for both Plaintiffs and Defendants.

In requiring Defendants to provide ADPs and EPPs with a list of topics before their Rule 30(b)(1) depositions, the Court and Special Master sought to improve efficiency in these depositions. Judge Battani first suggested that a list of topics be provided "because this case has to move along with a little more swiftness." Jan. 28, 2015 Hearing Tr. at 24:18-19. The Special Master reaffirmed the Court's reasoning behind requiring the list of topics, stating that "what the Judge was trying to do is streamline the process so that there will be some advance notice to the witness" such that it would not be "objectionable to say these are the areas we are going to examine this witness on because it will help to streamline the witnesses' examinations." May 26, 2015 Hearing Tr. at 14:1-3,7-10.

If anything, the logic of providing a list of topics applies with much greater force with respect to depositions of Defendants, which can be significantly more complicated and cover a wider range of issues than the depositions of many Plaintiffs. Relevant testimony from an EPP, for example, is limited to some background information and the facts concerning the EPP's

12

purchase or lease of one or more new vehicles upon which his or her claim is based.  By contrast, a deposition of a Defendant witness could cover a vast array of complicated topics related to that Defendant's manufacture and sale of the parts at issue, including its costs, strategies, and pricing negotiations.  Defendants' counsel will be more equipped to prepare the witness, which will result in more efficient depositions, if Plaintiffs are required to follow the same procedure that Defendants are required to follow.

For these reasons, Defendants propose that the following language be included in protocols in each of the above-captioned actions, which simply imposes on Plaintiffs the same obligations imposed on Defendants:

> In advance of a Rule 30(b)(1) deposition of any Defendant witness, Plaintiffs collectively shall serve an outline that identifies the general topics on which the Plaintiffs reasonably and in good faith expect to examine the witness.  If further topics on which a Rule 30(b)(1) deponent will be examined arise after the outline is circulated, Plaintiffs will use reasonable efforts to notify Defendants of such topics reasonably in advance of the deposition.  The outline is for notification purposes only, and shall not by itself be subject to objections.  All objections that a party will have at a deposition shall be preserved. This outline will be separate from the notice identifying the deponent Plaintiffs have chosen, and the place and time of the deposition.

### B.    Plaintiffs Should Be Limited to Three Examiners in Rule 30(b)(1) Depositions of Defendants.

The Special Master's Order of June 18, 2015 also mandated that "[n]ot more than three defense counsel may examine each End Payor Plaintiff and Auto Dealer Plaintiff witness absent good cause."   Order, 2:12-md-02311-MOB-MKM, ECF No. 1005.   The Special Master explained that this ruling was made to ensure that different attorneys for each Defendant did not "replow the same ground."  May 26, 2015 Hearing Tr. at 24:4-5.  Again, efficiency, fairness, and due process dictate a reciprocal requirement for Rule 30(b)(1) depositions of Defendants.

Although there are numerous Defendants in each case, they share mostly the same interests when it comes to depositions of ADPs and EPPs.  For instance, all Defendants wish to

determine the same information concerning how an EPP bought her vehicle, how much she paid for her vehicle, and how the terms of that sale was determined.  Although any given Defendant might have a different preference as to how to handle the deposition, there is a shared interest in the end result.

Similarly, the various putative classes of Plaintiffs share the same interests in Defendant depositions.  All of the Plaintiff classes are seeking to obtain information about alleged collusive conduct in connection with each Defendant's sale of the particular auto parts at issue in each case, whether there was a conspiracy, the scope of that conspiracy, whether there was an overcharge as a result, and if so, the amount of that overcharge.  An order to limit the number of examining Plaintiff counsel in Defendant depositions, therefore, would similarly increase efficiency and avoid duplication and confusion.

For these reasons, Defendants propose the following language[9] to be included in protocols in all cases in which the parties are negotiating, which simply mirrors language in each protocol that applies to Defendants' counsel in examining Plaintiffs:

> Not more than three Plaintiffs' counsel may examine each Defendant witness absent good cause.  Plaintiffs' counsel shall use their best efforts to coordinate in advance of the depositions so as to avoid duplicative questioning, and no Plaintiffs' counsel shall repeat any questions asked by other Plaintiffs' counsel.

## IV.     ISSUE 4: TESTIMONY ON MULTIPLE AUTO PARTS

As the parties have largely agreed, in some instances where certain written discovery has been provided by Defendants in advance, it may be appropriate for Plaintiffs to question a particular witness about more than one product case in his or her deposition.  However, the parties have been unable to reach agreement on how that would impact the amount of time

---

[9]  The parties in the *Switches* case have agreed that this provision is inapplicable in that case.

afforded to Plaintiffs to question the witness.[10]   The difference between the parties' respective proposals is very simple – Defendants believe that the parties should meet and confer to agree on the amount of additional time Plaintiffs should have to question a witness who is testifying with respect to multiple products, and Plaintiffs believe that they are entitled to the same amount of time they would have if they were deposing the witness separately as to each such product in multiple depositions.

Inevitably, Rule 30(b)(1) depositions of Defendant witnesses will include examination of the employees' background, employment history, training, and general knowledge concerning the Defendant's organizational structure, business practices, and the auto parts industry in general.   Once asked, there will be little or no need to reexamine the witness on those subjects separately with respect to every product case for which his or her deposition testimony is being sought, which should enable the parties to significantly reduce the length of deposition time needed to question a witness about an additional product case.   Moreover, few witnesses will have the same amount of information about every product case on which their deposition testimony is sought, thus requiring less time for Plaintiffs to question him or her about some products.   Defendants' proposal recognizes this potential variability, and assumes that the parties will be able to work out the additional time required for questions concerning other product cases, allowing the parties to save time, money, and resources.   Plaintiffs, by contrast, seek to establish an inefficient baseline in which the parties will essentially have separate depositions for each product case (each for a full seven hours, thirteen if an interpreter is used), which will allow them to insist on numerous days, even weeks, of depositions for certain witnesses who worked on several products.   Given the size of this multi-district litigation and the number of depositions

---

[10]  The parties have reached agreement on this issue in *Bearings* and *Occupant Safety Systems*.

the parties must conduct, the parties simply cannot afford such unnecessarily lengthy and duplicative depositions.

Accordingly, Defendants propose that the following language be included in each protocol in which this issue remains under dispute:

> If a Defendant witness is to be questioned on multiple Auto Part products, the deposition shall count against the number of Defendant Group depositions afforded Plaintiffs in each Auto Part Product case concerning those products, and the amount of additional deposition time will be agreed upon in advance by the parties or, if the parties cannot agree, by the Special Master or the Court.[11]

## V.   ISSUE 5: NUMBERS OF HOURS OF 30(B)(6) DEPOSITIONS OF DEFENDANTS

The parties also disagree in most cases about the number of hours of Rule 30(b)(6) testimony Plaintiffs may take of each Defendant.[12]  As they did regarding the number of Rule 30(b)(1) depositions, Plaintiffs seek the same number of hours of Rule 30(b)(6) depositions that the parties agreed to in *Wire Harnesses*.  But as described above, many of these cases are much smaller in scope than the *Wire Harnesses* case, and should not be subject to the exact same compromise agreements from that case.  Moreover, most of the Defendants in this litigation are in multiple cases, and Rule 30(b)(6) depositions, in particular, will become much more efficient as the earlier cases progress in discovery, as Plaintiffs will learn more about Defendants' general business practices and will not need to ask those same questions in future depositions. Defendants' proposal accounts for these efficiencies and recognizes differences between smaller cases and the *Wire Harnesses* case.  Conversely, Plaintiffs' one-size-fits-all proposal would result in unnecessarily wasteful depositions.

### A.   Plaintiffs' Proposal Ignores Efficiencies to be Gained in Earlier Cases and Results in an Overly Burdensome Deposition Schedule.

---

[11] Defendants in the *Bearings* and *Occupant Safety Systems* case have proposed slightly different language on this issue, which is reflected in Ex. 5 and Ex. 6.

[12] The parties have reached agreements in the following cases on this issue: *Fuel Senders*, *Bearings*, *Occupant Safety Systems*, *Anti-Vibrational Rubber Parts*, *Switches*, *Motor Generators*, *Inverters*, and *Constant Velocity Joint Boot Products*.

As noted above, the parties will become more efficient in discovery as these cases progress, and nowhere is that more true than in the context of Rule 30(b)(6) depositions of Defendants in multiple cases.  Take, for example, Plaintiffs' Rule 30(b)(6) deposition notice to Defendants in the *Wire Harnesses* case.  That notice includes thirty-nine topics, many of them admittedly duplicative, covering Defendants' general business practices.  For example, Plaintiffs have asked Defendants to identify:

> The RFQ process, including but not limited to, how responses to RFQs are prepared, the costs of preparing responses to RFQs, your decision-making process for whether to submit a bid in response to an RFQ, and how prices submitted in response to an RFQ are determined," and "Relationship between responses by you to RFQs, and the mass production prices, for one vehicle manufacturer for a particular vehicle model and: (a) different model years of the same model; (b) different vehicle models made by the same manufacturer; and (c) vehicles made by other manufacturers.

Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) (Oct. 1, 2015) at 4, Ex. 27.  These topics, and many others similar to them, are not necessarily tied to the product-specific cases— once Plaintiffs obtain a general understanding of Defendants' business practices, they will not need to ask the same questions in subsequent depositions.

In spite of these obvious efficiencies, Plaintiffs have insisted on the exact same number of hours for Rule 30(b)(6) depositions of each *Wire Harnesses* Defendant Group in the later cases in which they are named, without regard for the size of the case, the size of the Defendant, or the number of Defendants they will have already deposed.  For example, the *Heater Control Panels* case, as noted above, is significantly smaller in scope than the *Wire Harnesses* case, and three out of four Defendants (DENSO, Sumitomo, and Tokai Rika) are also in the *Wire Harnesses* case.  Plaintiffs do not need to ask these Defendants the same questions about their

general business practices again, and will not need nearly as much time to depose Defendants concerning the specific product in question, given its significantly reduced scope compared to the *Wire Harnesses* case.

In a few of the cases, Plaintiffs have recognized the likelihood of these efficiencies, particularly in light of the size of a case, and have agreed to reduced hours of Rule 30(b)(6) depositions.   As with Rule 30(b)(1) depositions, Plaintiffs and Defendants have reached agreements in the *Motor Generators* and *Inverters* cases, both of which are very small in scope, agreeing on fourteen hours of Rule 30(b)(6) Defendant testimony.  Plaintiffs and Defendants also reached the same agreement in the even smaller *Fuel Senders* case.  These are substantially more hours of testimony than Defendants believe are necessary in these cases, but they, at least, reflect an acknowledgment by Plaintiffs that a one-size-fits all approach is inappropriate.

Plaintiffs' presumption of twenty-one hours of Rule 30(b)(6) deposition testimony in each case would create a massive burden on the parties and the court for the foreseeable future. If an interpreter is required for these depositions, which is highly likely, Plaintiffs' proposal would result in more than *3,700 hours* (529 days, assuming seven-hour days) of Rule 30(b)(6) deposition testimony of Defendants in this multi-district litigation, equivalent to over two years of depositions (assuming 250 business days a year) beyond the eleven years of Rule 30(b)(1) depositions that Plaintiffs are proposing.

**B.    Defendants' Approach Is More Reasonable and Presumes Fewer Depositions for Later Cases Due to Greater Efficiency.**

Defendants' approach accounts for case- and Defendant-specific differences and results in fewer hours of depositions overall in recognition of the efficiencies to be gained through multiple depositions of the same Defendant Group.  The below table outlines Defendants' proposed numbers of hours of depositions, with a brief explanation for each proposal:

| Case | Defendants' Proposal (Per Defendant Group) | Plaintiffs' Proposal (Per Defendant Group) | Explanation |
|---|---|---|---|
| Heater Control Panels | 7 | 21 | This case only involves a single product that is sourced separately by one OEM. And three of the four Defendants are in other cases in this litigation. |
| Instrument Panel Clusters | 14 | 21 | This case only involves a single product. And two of the three Defendants are in other cases in this litigation. |
| Alternators/Starters | 14 (7 for HIAMS Defendants) | 21 | This case involves only two products. HIAMS concluded settlement agreements with the ADP and EPP classes, and pursuant to those agreements provided substantial amounts of information, thorough attorney proffers, including covering categories of information relevant to 30(b)(6) depositions. And all of the Defendants are in other cases in this litigation. |
| Radiators | 14 | 21 | This case only involves a single product. And all three Defendants are in other cases in this litigation. |
| Fan Motors | 0 | 21 | The Fan Motor is a subcomponent of the Radiator. The Mitsuba Defendants are the only named Defendants in *Fan Motors*, and they are also named in *Radiators* based on the same alleged conduct. There is no need to re-depose the same Mitsuba personnel about the very same conduct. The Mitsuba Defendants have filed a separate brief on this issue. |
| Automotive Lamps | 14 | 21 | This case involves only two products. And all three Defendants are in other cases in this litigation. |
| Windshield Wipers Systems | 14 | 21 | This case only involves a single product. And all three Defendants are in other cases in this litigation. |

19

| **Case** | **Defendants' Proposal (Per Defendant Group)** | **Plaintiffs' Proposal (Per Defendant Group)** | **Explanation** |
|---|---|---|---|
| Ignition Coils | 14 (7 for HIAMS Defendants) | 21 | This case only involves a single product. HIAMS concluded settlement agreements with the ADP and EPP classes, and pursuant to those agreements provided substantial amounts of information, thorough attorney proffers, including covering categories of information relevant to Rule 30(b)(6) depositions.  And three of the five Defendants are in other cases in this litigation. |
| HID Ballasts | 14 | 21 | This case only involves a single product. And all four Defendants are in other cases in this litigation. |
| Electronic Powered Steering Assemblies | 14 | 21 | This case involves a system of multiple different products, but not as many products as *Wire Harnesses*.  And three of the four Defendants are in other cases in this litigation. |
| Fuel Injection Systems | 14 (7 for HIAMS and Keihin Defendants) | 21 | This case involves a system of multiple different products, but many of the Defendants involved only make one or small number of the products at issue. HIAMS concluded settlement agreements with the ADP and EPP classes, and pursuant to those agreements provided substantial amounts of information, thorough attorney proffers, including covering categories of information relevant to Rule 30(b)(6) depositions.  And six of the nine Defendants are in other cases in this litigation.  Unique issues relating to the Keihin Defendants are explained in Keihin's supplemental brief. |
| Power Window Motors | 14 | 21 | This case only involves a single product. And all three Defendants are in other cases in this litigation. |
| ATF Warmers | 14 | 21 | This case only involves a single product. And both Defendants are in other cases in this litigation. |

| Case | Defendants' Proposal (Per Defendant Group) | Plaintiffs' Proposal (Per Defendant Group) | Explanation |
|---|---|---|---|
| Valve Timing Control Devices | 14 | 21 | This case only involves a single product. And three of the four Defendants are in other cases in this litigation. |
| Windshield Washer Systems | 14 | 21 | This case only involves a single product. And both Defendants are in other cases in this litigation. |
| Air Conditioning Systems | 14 | 21 | This case involves a product system that is much simpler and involves significantly fewer parts than in *Wire Harnesses*. Moreover, some of the Defendants only make one or a few of the parts at issue. Some will be subject to depositions in other product cases. |
| Spark Plugs/Oxygen Sensors | 14 | 21 | This case only involves three products. And two of the three Defendants are in other cases in this litigation. |

## VI.    ISSUE 6: ASSERTIONS OF FIFTH AMENDMENT RIGHTS

Defendants and Plaintiffs have proposed different language for the section governing Fifth Amendment assertions by witnesses in each case.  The crux of the difference between the parties' proposals, however, is straightforward – whether a limited category of individuals who have been "carved out" from plea agreements with the U.S. Department of Justice ("DoJ") should be permitted to assert their rights under the Fifth Amendment of the U.S. Constitution in writing in response to a deposition notice, rather than being required to appear in person for the deposition.

Under the DoJ's plea agreements with certain Defendants in this litigation, certain employees of Defendant companies are "carved out," meaning that they are excluded from the non-prosecution guarantees of the plea agreement, unlike all other employees at the company. *See, e.g.*, *United States v. Yazaki Corp.*, ¶ 14(a), No. 2:12-cr-20064-GCS-PJK, ECF No. 6 (E.D.

Mich. Mar. 1, 2012) (". . . the United States will not bring criminal charges against any current or former director, officer or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement . . . with the exception that the protections granted in this paragraph shall not apply to [Yazaki's carved-out employees]."). Those employees are included in a sealed exhibit attached to the plea agreement under the DoJ's current policy. *See* Statement of Assistant Attorney General Bill Baer on Changes to Antitrust Division's Carve-Out Practice Regarding Corporate Plea Agreements (Apr. 12, 2013). Some of these employees have since negotiated their own plea agreements. But others have not. Those employees, on the advice of their own counsel, are understandably unwilling to travel to participate in a deposition (or to appear at a U.S. embassy or consulate, as is necessary for any deposition conducted in Japan or Germany) for fear that they will be arrested and held for potential extradition. Thus, Plaintiffs' insistence that witnesses appear in person in order to assert their rights under the Fifth Amendment will simply result in witnesses not appearing at all.

Moreover, if a witness is planning to assert his or her rights under the Fifth Amendment, whether he or she does so in person or in writing is of no practical consequence. Plaintiffs will receive, at worst, the exact same responses in writing as they would have received had the witness appeared in person, and the parties will have avoided the burden of traveling to a country where the witness resides. Indeed, Plaintiffs' only asserted reason for forcing these witnesses to appear in person is to capture the Fifth Amendment assertion on video. This is nonsensical because a jury does not need to assess a witness's demeanor or credibility in making a simple and straight-forward assertion of a Fifth Amendment privilege. Moreover, for employees advised by counsel not to travel to certain areas for deposition, Plaintiffs might obtain substantive answers on some topics via Defendants' proposal that would not be available via

Plaintiffs' proposal.

For these reasons, Defendants propose the following paragraph B be included in Section

XI of each protocol governing assertion of the Fifth Amendment:

> This paragraph applies only to a witness (a) who is not protected from criminal prosecution by the terms of the plea agreement of any defendant; (b) who is outside the United States; and (c) who, within his or her current country of residence, would be required to appear at the U.S. embassy, U.S. consulate, or other location under the control of the U.S. government for the deposition.  Instead of appearing at the deposition, the witness may respond in writing to the written questions by declaration under 28 U.S.C. § 1746.  All objections to the written questions are preserved for trial.  The parties agree that the use of the written questions and answers at trial will not be precluded on the basis that the written questions were not asked and answered individually at a deposition.

## CONCLUSION

For these reasons, Defendants respectfully request that the Special Master enter

Defendants' proposed deposition protocols in each of the above-captioned actions.

Dated: December 4, 2015                     Respectfully submitted,

                                            */s/  Steven F. Cherry*
                                            Steven F. Cherry
                                            David P. Donovan
                                            Brian C. Smith
                                            **WILMER CUTLER PICKERING HALE AND DORR LLP**
                                            1875 Pennsylvania Avenue, NW
                                            Washington, DC 20006
                                            Telephone: (202) 663-6000
                                            Facsimile: (202) 663-6363
                                            steven.cherry@wilmerhale.com
                                            david.donovan@wilmerhale.com
                                            brian.smith@wilmerhale.com

                                            *Counsel for Defendants DENSO Corporation,*
                                            *DENSO International America, Inc., DENSO*
                                            *International Korea Corporation, DENSO Korea*
                                            *Automotive Corporation, DENSO Products &*
                                            *Services Americas, ASMO Co., Ltd., ASMO North*

*America, LLC, ASMO Greenville of North*
*Carolina, Inc., and ASMO Manufacturing, Inc.*

Steven M. Zarowny
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Counsel for Defendant DENSO International*
*America, Inc.*

*/s/  Debra H. Dermody* (w/consent)
Debra H. Dermody
Michelle Mantine
**REED SMITH LLP**
Reed Smith Centre
225 Fifth Ave.
Pittsburgh, PA 15222-2716
412-288-3302
ddermody@reedsmith.com
mmantine@reedsmith.com

*/s/  Howard B. Iwrey* (w/consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0526
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for SKF USA Inc.*

*/s/  Barry A. Pupkin* (w/consent)
Barry A. Pupkin
Iain R. McPhie
Jeremy W. Dutra
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 457-6315
Barry.Pupkin@squirepb.com

24

Iain.McPhie@squirepb.com
Jeremy.Dutra@squirepb.com

*Counsel for Aisan Industry Co., Ltd., Aisan
Corporation of America and Franklin Precision
Industry, Inc.*


*/s/ Jeremy Calsyn* (w/consent)
Jeremy J. Calsyn
Bradley Justus
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
2000 Pennsylvania Ave., NW
Washington, DC 20006
Tel.: (202) 974-1500
Fax: (202) 974-1999
jcalsyn@cgsh.com
bjustus@cgsh.com


*/s/ Howard B. Iwrey* (w/consent)
Howard B. Iwrey (P39635)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel.: (248) 203-0526
Fax: (248) 203-0763
hiwrey@dykema.com

*Counsel for Defendants Aisin Seiki Co., Ltd.,
and Aisin Automotive Casting, LLC*


*/s/ Anita F. Stork* (w/consent)
Anita F. Stork
**COVINGTON & BURLING LLP**
One Front Street
35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

*/s/Maureen T. Taylor* (w/consent)
Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
**BROOKS WILKINS SHARKEY & TURCO
PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI  48009

25

Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Counsel for Alps Automotive, Inc., Alps Electric
(North America), Inc., and Alps Electric Co.,
Ltd.*

*/s/  Steve A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
Kajetan Rozga
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
kajetan.rozga@weil.com

*/s/  Frederick R. Juckniess* (w/consent)
Frederick R. Juckniess
**SCHIFF HARDIN LLP**
350 South Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1504
fjuckniess@schiffhardin.com

*Attorneys for Defendants Bridgestone
Corporation and Bridgestone APM Company*

*/s/  Steve A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

Fred K. Herrmann
Joanne G. Swanson
Matthew L. Powell
**KERR RUSSELL & WEBER PLC**
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200

26

Fax (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Defendants Calsonic Kansei*
*Corporation and Calsonic Kansei North*
*America, Inc.*

*/s/  Matthew J. Reilly* (w/consent)
Matthew J. Reilly
Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Diamond Electric*
*Mfg. Co., Ltd. and Diamond Electric Mfg. Corp.*

*/s/  Craig P. Seebald* (w/consent)
Craig P. Seebald
Alden L. Atkins
Lindsey R. Vaala
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave NW
Suite 500-W
Washington, DC 20037
Tel.: (202) 639-6500
Fax: (202) 639-6604
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

*Counsel for Hitachi Automotive Systems*
*Americas, Inc.*

*/s/  Heather L. Kafele* (w/consent)

27

Heather L. Kafele
Keith R. Palfin
**SHEARMAN & STERLING LLP**
801 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Tel.: (202) 508-8097
Fax: (202) 508-8100
heather.kafele@shearman.com
keith.palfin@shearman.com

Brian M. Akkashian
**PAESANO AKKASHIAN, PC**
132 N. Old Woodward Avenue
Birmingham, MI 48009
Tel.: (248) 792-6886
bakkashian@paesanoakkashian.com

*Counsel for Defendants JTEKT Corporation and JTEKT Automotive North America, Inc.*

 */s/ Anita F. Stork* (w/consent)
Anita F. Stork
**COVINGTON & BURLING LLP**
One Front Street
San Francisco, CA 94111-5356
Tel: (415) 591-7050
Fax: (415) 955-6550
Email: astork@cov.com

Maureen T. Taylor (P63547)
**BROOKS WILKINS SHARKEY & TURCO PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Tel: (248) 971-1721
Fax: (248) 971-1801
Email: taylor@bwst-law.com

*Attorneys for Defendants Keihin Corporation and Keihin North America, Inc.*

 */s/ Franklin R. Liss* (w/consent)
Franklin R. Liss
Barbara H. Wootton
Danielle M. Garten
Matthew Tabas
**ARNOLD & PORTER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5969
Fax: (202) 942-5999
frank.liss@aporter.com

barbara.wootton@aporter.com
danielle.garten@aporter.com
matthew.tabas@aporter.com

Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendants Koito Manufacturing
Co., Ltd. and North American Lighting, Inc.*


/s/  William M. Sullivan Jr. (w/consent)
William M. Sullivan Jr.
Michael L. Sibarium
Jeetander T. Dulani
**PILLSBURY WINTHROP SHAW
PITTMAN LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036-3006
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
wsullivan@pillsburylaw.com
michael.sibarium@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

*Counsel for Mikuni America Corporation*


/s/  George A. Nicoud (w/consent)
George A. Nicoud III
Austin Schwing
Caeli A. Higney
Brandon W. Halter
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105-0921
Tel.:  (415) 393-8200
Fax:  (415) 393-8306
TNicoud@gibsondunn.com
ASchwing@gibsondunn.com
CHigney@gibsondunn.com
BHalter@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation
and American Mitsuba Corporation*

*/s/  Terrence J. Truax* (w/consent)
Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
Jamie J. Janisch
**ZAUSMER, AUGUST & CALDWELL, P.C.**
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374
gaugust@zacfirm.com
jjanisch@zacfirm.com

*Counsel for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US Holdings,
Inc., and Mitsubishi Electric Automotive
America, Inc.*

*/s/  Kenneth R. Davis* (w/consent)
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi
**LANE POWELL PC**
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
503-778-2100
503-778-2200 (facsimile)
davisk@lanepowell.com
bachmanc@lanepowell.com
sandsd@lanepowell.com

*/s/  Larry S. Gangnes* (w/consent)
Larry S. Gangnes
Connor B. Shively
**LANE POWELL PC**
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338
206-223-7000
206-223-7107 (facsimile)
gangnesl@lanepowell.com

shivelyc@lanepowell.com

*Counsel for Nachi America Inc. and Nachi-Fujikoshi Corporation*

*/s/  Eric P. Enson* (w/consent)
Eric P. Enson
**JONES DAY**
555 S Flower St.
Los Angeles, CA  90071
epenson@jonesday.com

John M. Majoras
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001-2113
jmmajoras@jonesday.com

*Counsel for NGK Spark Plugs (U.S.A.) Holding, Inc., NGK Spark Plugs (USA) Inc., NGK Spark Plugs Co. Ltd., and NTK Technologies, Inc.*

*/s/  Jeremy J. Calsyn* (w/consent)
Jeremy J. Calsyn
Teale Toweill
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
jcalsyn@cgsh.com
ttoweill@cgsh.com

*Counsel for NSK Americas, Inc. and NSK Ltd.*

*/s/  Jeffrey L. Kessler* (w/consent)
Jeffrey L. Kessler
A. Paul Victor
Molly M. Donovan
Jeffrey J. Amato
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
jamato@winston.com

*Counsel for NTN Corporation and NTN USA Corporation*

*/s/ John Roberti* (w/consent)
John Roberti
Matthew Boucher
**ALLEN & OVERY LLP**
1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com
matthew.boucher@allenovery.com

Michael S. Feldberg
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
212-610-6360
michael.feldberg@allenovery.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
**WARNER NORCROSS & JUDD LLP**
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Defendants Robert Bosch LLC and Robert Bosch GmbH*

*/s/ Mark Ford* (w/consent)
Mark Ford
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6423
Facsimile: (617) 526-5000
mark.ford@wilmerhale.com

*Counsel for Schaeffler Group USA Inc.*

*/s/ J. David Rowe* (w/consent)
J. David Rowe
Millicent Lundburg
**DuBOIS, BRYANT & CAMPBELL LLP**
303 Colorado Street, Suite 2300

Austin, TX 78701
Washington, DC  20004
jrowe@dbcllp.com
mlundburg@dbcllp.com

*Counsel for Defendants Sanden International (U.S.A.) Inc.*

*/s/  J. Clayton Everett, Jr.* (w/consent)
J. Clayton Everett, Jr.
**MORGAN LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
jeverett@morganlewis.com

*Counsel for Defendants Showa Corporation and American Showa Inc.*

*/s/  Matthew J. Reilly* (w/consent)
Matthew J. Reilly
Abram J. Ellis
David T. Shogren
**SIMPSON THACHER & BARTLETT LLP**
1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com
dshogren@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc.*

*/s/  J. Clayton Everett, Jr.* (w/consent)

33

J. Clayton Everett, Jr.
Zarema A. Jaramillo
**MORGAN LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
jeverett@morganlewis.com
zarema.jaramillo@morganlewis.com

*Counsel for Defendants Sumitomo Riko*
*Company Limited and DTR Industries, Inc.*

*/s/  Marguerite M. Sullivan* (w/consent)
Marguerite M. Sullivan
Anna M. Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone:  (202) 637-2200
Fax:  (202) 637-2201
marguerite.sullivan@lw.com
anna.rathbun@lw.com

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  (415) 395-0600
Fax:  (415) 395-8095
dan.wall@lw.com

William H. Horton (P31567)
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone:  248-457-7060
bhorton@gmhlaw.com

*Counsel for Defendants Sumitomo Electric*
*Industries, Ltd.; Sumitomo Wiring Systems, Ltd.;*
*Sumitomo Electric Wiring Systems, Inc.*
*(incorporating K&S Wiring Systems, Inc.); and*
*Sumitomo Wiring Systems (U.S.A.) Inc.*

*/s/  David M. Zinn* (w/consent)
David M. Zinn

34

John E. Schmidtlein
Samuel Bryant Davidoff
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Takata Corporation and TK
Holdings, Inc.*


/s/  David C. Giardina (w/consent)
David C. Giardina
Courtney A. Hoffmann
**SIDLEY AUSTIN LLP**
One S. Dearborn St.
Chicago, IL 60603
Tel.: (312) 853-7000
Fax: (312) 853-7036
dgiardina@sidley.com
choffmann@sidley.com

Bradley J. Schram (MI Bar # P26337)
**HERTZ SCHRAM PC**
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
Tel.: (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Defendants Toyo Tire & Rubber
Co., Ltd., Toyo Tire North America
Manufacturing Inc., Toyo Tire North America
OE Sales LLC, and Toyo Automotive Parts
(USA), Inc.*


/s/  Randall J. Turk (w/consent)
Randall J. Turk
John Taladay
Mark Miller
Heather Souder Choi
Sterling A. Marchand
**BAKER BOTTS LLP**
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400
Phone: 202.639.7700
Fax: 202.639.7890
randy.turk@bakerbotts.com
john.taladay@bakerbotts.com

35

mark.miller@bakerbotts.com
heather.choi@bakerbotts.com
sterling.marchand@bakerbotts.com

*Counsel for Toyoda Gosei Co., Ltd., TG
Missouri Corporation, and Toyoda Gosei North
America Corporation*


*/s/ Sheldon H. Klein* (w/consent)
Sheldon H. Klein
David F. DuMouchel
**BUTZEL LONG**
150 West Jefferson, Suite 100
Detroit, MI 48226
Tel.: (313) 225-7000
Fax: (313) 225-7080
sklein@butzel.com
dumouchd@butzel.com

W. Todd Miller
**BAKER & MILLER PLLC**
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Tel.: (202) 663-7820
Fax: (202) 663-7849
TMiller@bakerandmiller.com

*Counsel for Defendants TRAM, Inc. and Tokai
Rika Co., Ltd.*


*/s/ Brian Byrne* (w/consent)
Brian Byrne
Ryan M. Davis
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
2000 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 974-1850
Facsimile: (202) 974-1999
bbyrne@cgsh.com
rmdavis@cgsh.com

*/s/ Howard B. Iwrey* (w/consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

36

*Counsel for Defendants Valeo Japan Co., Ltd.,
Valeo Inc., Valeo Electrical Systems, Inc., and
Valeo Climate Control Corp.*

*/s/ Marguerite M. Sullivan* (w/consent)
Marguerite M. Sullivan
Allyson M. Maltas
Thomas J. Humphrey
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com
allyson.maltas@lw.com
thomas.humphrey@lw.com

*/s/ Howard B. Iwrey* (w/consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Weastec, Inc.*

*/s/ James L. Cooper* (w/consent)
James L. Cooper
Danielle M. Garten
Adam Pergament
**ARNOLD & PORTER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
james.cooper@aporter.com
danielle.garten@aporter.com
adam.pergament@aporter.com

Fred K. Herrmann
Joanne G. Swanson
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388
fherrmann@kerr-russell.com

jswanson@kerr-russell.com

*Counsel for Defendants Yamashita Rubber Co., Ltd. and YUSA Corporation*

*/s/  John M. Majoras* (w/consent)

John M. Majoras
Michael R. Shumaker
Carmen G. McLean
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC  20001-2113
jmmajoras@jonesday.com
mrshumaker@jonesday.com
cgmclean@jonesday.com

Michelle K. Fischer
Stephen J. Squeri
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, OH  44114
mfischer@jonesday.com
sjsqueri@jonesday.com

Tiffany D. Lipscomb-Jackson
**JONES DAY**
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215-2673
Mailing Address:  P.O. Box 165017
Columbus, OH 43216-5017
Tel. (614) 281-3939
Fax (614) 461-4198
tdlipscombjackson@jonesday.com

*Counsel for Yazaki Corporation and Yazaki North America Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2015, I caused the foregoing Defendants' Collective

Submission of Global Deposition Protocol Disputes to be electronically filed with the Clerk of

the Court using the CM/ECF system, which will send notifications of such filings to all counsel

of record.

By:

*/s/  David C. Giardina*
David C. Giardina
**SIDLEY AUSTIN LLP**
One S. Dearborn St.
Chicago, IL 60603
Tel.: (312) 853-7000
Fax: (312) 853-7036
dgiardina@sidley.com