**REDACTED**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: ALL AUTO PARTS CASES | |
| THIS RELATES TO: All Dealership Actions All End Payor Actions | |

## DEFENDANTS' OPPOSITION TO
## DEALERSHIP PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

**REDACTED**

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1.  Whether Auto Dealers' objections to Defendants' revised Rule 30(b)(6) notice establish good cause to issue a protective order, notwithstanding that the information sought by Defendants' notice is both relevant to Auto Dealers' claims, Defendants' defenses, and the issue of class certification, and proportional to the needs of the case?

    **Answer:** No.

## <u>STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 26(b)(1)

Fed. R. Civ. P. 30(b)(6)

*Nix v. Sword*, 11 F. App'x 498 (6th Cir. 2001)

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 2015 WL 6181748 (D. Del. 2015)

*In re New Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2010)

*Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416 (5th Cir. 2004)

# <u>TABLE OF CONTENTS</u>

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................... ii

TABLE OF AUTHORITIES ................................................................................................v

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND .............................................................................................4

LEGAL STANDARD.......................................................................................................6

ARGUMENT .................................................................................................................7

    I.    The Topics In Defendants' Revised Notice Are Relevant To Auto
        Dealers' Claims, Defendants' Defenses, And Class Certification............................8

        A.    Testimony Concerning Topics In Defendants' Revised Notice
               Are Necessary To Understand The Auto Dealers' Actual Cost
               of Acquiring New Vehicles For Resale ........................................................11

        B.    Testimony Concerning Topics In Defendants' Revised Notice
               Is Necessary To Understand The Actual "Downstream" Sales
               Price Charged By Auto Dealers And How It Was Determined...................15

        C.    Deposition Testimony Is Necessary Because Auto Dealers'
               Document And Data Productions Are Incomplete And Insufficient............18

        D.    Courts Have Held That The Types Of Information Defendants
               Seek To Obtain In These Depositions Are Not Only
               Relevant To, But Dispositive Of, Antitrust Claims .....................................21

    II.    Auto Dealers Have Not Shown Undue Burden, And Any Burden Imposed
        Is Proportional To The Needs Of The Case.............................................................25

        A.    Auto Dealers' Conclusory Assertions of Burden Are Insufficient..............25

        B.    Any Burden Imposed By Defendants' Revised Notice
               Is Proportional.............................................................................................26

    III.    Auto Dealers' Remaining Global Objections Lack Any Merit ...............................28

        A.    Defendants' Revised Notice Is Not Overbroad ...........................................28

        B.    Auto Dealers' General Objections Anticipating Questions
               That Might Require Disclosure Of Privileged Information
               Are Premature. .............................................................................................30

IV. Auto Dealers' Topic-Specific Objections Lack Any Merit .......................................31

    A. Topic No. 1 ..............................................................................31

    B. Topic No. 2 ..............................................................................32

    C. Topic No. 3 ..............................................................................32

    D. Topic No. 4 ..............................................................................33

    E. Topic No. 5 ..............................................................................33

    F. Topic No. 6 ..............................................................................35

    G. Topic Nos. 7 and 8 ....................................................................36

    H. Topic No. 9. .............................................................................37

    I. Topic No. 10 .............................................................................39

    J. Topic Nos. 11 and 12. .................................................................40

    K. Topic No. 13 ............................................................................42

    L. Topic No. 14 ............................................................................43

    M. Topic No. 15 ............................................................................43

CONCLUSION..............................................................................................44

# TABLE OF AUTHORITIES

Page(s)

## CASES

*51382 Gratiot Ave. Holdings, LLC v. Chesterfield Dev. Co., LLC*,
    2011 U.S. Dist. LEXIS 108564 (E.D. Mich. Sept. 22, 2011)............................................29

*Adams v. Mills*,
    286 U.S. 397 (1932)......................................................................................................14

*Apple Inc. v. Samsung Elec. Co.*,
    2012 WL 1511901 (N.D. Cal. Jan. 27, 2012) .................................................................26

*Avirgan v. Hull*,
    118 F.R.D. 252 (D.D.C. 1987)........................................................................................6

*Bailey v. Kentucky Cmty.*,
    2015 WL 4886089 (W.D. Ky. Aug. 17, 2015) ...............................................................35

*Bank of Mongolia v. M & P Global Fin. Servs., Inc.*,
    258 F.R.D. 514 (S.D. Fla. 2009)....................................................................................25

*Banks v. Office of the Senate Sergeant-at-Arms*,
    222 F.R.D. 7 (D.D.C. 2004)...........................................................................................26

*Bell Atlantic Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) .........................................................................................22

*Blades v. Monsanto*,
    400 F.3d 562 (8th Cir. 2005) .........................................................................................24

*Bouldis v. US Suzuki Motor Corp.*,
    711 F.2d 1319 (6th Cir. 1983) .......................................................................................13

*Bunker's Glass Co. v. Pilkington, PLC*,
    206 Ariz. 9 (Ariz. 2003).................................................................................................16

*Cardinal Aluminum Co. v. Cont'l Cas. Co.*,
    2015 WL 4068405 (W.D. Ky. July 2, 2015) ..................................................................30

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013)....................................................................................10, 25

*Clark v. Prudential Ins. Co. of Am.*,
    940 F. Supp. 2d 186 (D.N.J. 2013) ................................................................................22

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010) ..................................................................................................16

v

*Comcast v. Behrend*,
  133 S. Ct. 1426 (2013)..........................................................................21, 22

*Convertino v. U.S. Dep't of Justice*,
  565 F. Supp. 2d 10 (D.D.C. 2008) .....................................................25

*Credit Lyonnaise SA v. SGC Int'l, Inc.*,
  160 F.3d 428 (8th Cir. 1998) ..............................................................10

*Deitchman v. E.R. Squibb & Sons, Inc.*,
  740 F.2d 556 (7th Cir. 1984) ..............................................................10

*Draper v. Univ. of Tenn.*,
  2010 WL 5634364 (W.D. Tenn. Apr. 13, 2010).............................30

*Dongguk Univ. v. Yale Univ.*,
  270 F.R.D. 70, 74 (D. Conn. 2010).............................................25–26

*E.E.O.C. v. HBE Corp.*,
  157 F.R.D. 465 (E.D. Mo. 1994) ...................................................31–32

*Elec. Co., Inc. v. Stern*,
  544 F.2d 1196 (3d Cir. 1976)...............................................................10

*Emon v. State Farm Mut. Auto. Ins. Co.*,
  2007 WL 216138 (E.D. Mich. Jan. 26, 2007).................................34

*Freeman Indus., LLC v. Eastman Chem. Co.*,
  172 S.W.3d 512 (Tenn. 2005)..............................................................16

*Gillham v. Tenn. Valley Auth.*,
  2010 WL 1543741 (W.D. Tenn. Mar. 18, 2010) ............................29

*Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*,
  251 F.R.D. 534 (D. Nev. 2008)................................................7, 18, 35

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981)....................................................................................6

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
  392 U.S. 481 (1968)................................................................................17

*Hawaii v. Standard Oil Co. of Cal.*,
  405 U.S. 251 (1972)................................................................................14

*In re Airline Ticket Comm'n Antitrust Litig.*,
  918 F. Supp. 283 (D. Minn. 1996)..............................................14, 17

*In re Brand Name Prescription Drugs Antitrust Litig.*,
123 F. 3d 599 (7th Cir. 1997) ...................................................................9

*In re Cardizem CD Antitrust Litigation*,
200 F.R.D. 297 (E.D. Mich. 2001) ...........................................................15

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
2015 WL 6181748 (D. Del. 2015) ................................................13, 20, 22, 24

*In re Flash Memory Antitrust Litig.*,
2010 WL 2332081 (N.D. Cal. June 9, 2010) ...................................................20

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008)...........................................................20, 24

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008)...................................................................22

*In re Methionine Antitrust Litig.*,
204 F.R.D. 161 (N.D. Cal. 2001) ...........................................................9, 16, 24

*In re New Motor Vehicles Can. Export Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2010)...................................................................20, 23, 24

*In Re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015)....................................................................14

*In re Nw. Airlines Corp.*,
208 F.R.D. 174........................................................................................22

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ....................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2012 WL 6709621 ................................................................................15, 17

*In re Urethane Antitrust Litig.*,
237 F.R.D. 454 (D. Kan. 2006)................................................................17

*In re Vitamins Antitrust Litig.*,
216 F.R.D. 168 (D.D.C. 2003)...................................................................7

*In re Vitamins Antitrust Litig.*,
259 F. Supp. 2d 1 (D.D.C. 2003)................................................................16

*In re W. Liquid Asphalt Cases*,
487 F.2d 191 (9th Cir. 1973) ....................................................................16

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ...........................................................22

*In re Wholesale Grocery Prods. Antitrust Litig.*,
    2012 WL 3031085 (D. Minn. July 25, 2012) .................................36

*Kane v. Metcalf*,
    2012 WL 983589 (M.D. Tenn. Mar. 19, 2012) ..............................25

*Lewis v. ACB Bus. Servs.*,
    135 F.3d 389 (6th Cir. 1998) ...........................................................6

*Marker v. Union Fid. Life Ins. Co.*,
    125 F.R.D. 121 (M.D.N.C. 1989) ....................................................7

*McNearney v. Washington Dep't of Corr.*,
    2012 WL 3155099 (W.D. Wash. Aug. 2, 2012)..............................34

*Memory Integrity, LLC v. Intel Corp.*,
    308 F.R.D. 656 (D. Or. 2015) .........................................................29

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) .........................................................22

*Meyer v. Photofax, Inc.*,
    2009 WL 1850609 (E.D. Ky. June 26, 2009) .................................28

*Miller v. Experian Info. Sols., Inc.*,
    2014 WL 7176620 (S.D. Ohio Sept. 18, 2014) ..............................31

*Murphy v. Kmart Corp.*,
    255 F.R.D. 497 (D.S.D. 2009) .......................................................29

*Nat'l Life Ins. Co. v. Hartford Accident and Indemnity Co.*,
    615 F.2d 595 (3d Cir.1980).............................................................7

*NetJets Large Aircraft, Inc. v. United States*,
    2014 WL 1672588 (S.D. Ohio Apr. 28, 2014) ..........................30–31

*Nix v. Sword*,
    11 F. App'x 498 (6th Cir. 2001) ..................................................6, 25

*P & G v. Bankers Trust Co.*,
    78 F.3d 219 (6th Cir.1996) ..............................................................6

*Patterson v. N. Cent. Tel. Co-op. Corp.*,
    2013 WL 5236645 (M.D. Tenn. Sept. 17, 2013).......................34–35

*Prokosch v. Catalina Lighting, Inc.*,
193 F.R.D. 633 (D. Minn. 2000).....................................................................7

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
277 F.R.D. 676 (S.D. Fla. 2012) ..................................................................30

*Robinson v. Tex. Auto. Dealers Ass'n*,
387 F.3d 416 (5th Cir. 2004) ...........................................................20, 23, 44

*Ruiz-Bueno v. Scott*,
2013 WL 6055402 (S.D. Ohio, Nov. 15, 2013)............................................34

*S2 Automation LLC v. Micron Tech., Inc.*,
2012 WL 3656454 (D.N.M. Aug. 9, 2012) ...................................................34

*Schiavone v. Ne. Utilities Serv. Co.*,
2009 WL 801744 (D. Conn. Mar. 25, 2009) .................................................26

*Serrano v. Cintas Corp.*,
699 F.3d 884 (6th Cir. 2012) ...........................................................................6

*Shaklee Corp. v. Gunnell*,
748 F.2d 548 (10th Cir. 1984) ......................................................................10

*Smith v. Gen. Mills, Inc.*,
2006 WL 7276959 (S.D. Ohio Apr. 13, 2006) ..................................28, 30, 31

*Smithkline Beecham Corp. v. Apotex Corp.*,
2000 WL 116082 (N.D. Ill. Jan. 24, 2000)...................................................32

*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*,
236 F.R.D. 524 (D. Kan. 2006)..................................................................7, 29

*State of Ala. v. Blue Bird Body Co., Inc.*,
573 F.2d 309 (5th Cir. 1978) ........................................................................23

*Strauss v. Credit Lyonnais, S.A.*,
242 F.R.D. 199 (E.D.N.Y. 2007) ..................................................................34

*Taylor v. KeyCorp*,
680 F.3d 609 (6th Cir. 2012) ........................................................................35

*Tucker v. Ohtsu Tire & Rubber Co., Ltd.*,
191 F.R.D. 495 (D. Md. 2000).......................................................................25

## FEDERAL RULES

Fed. R. Civ. P. 23 ....................................................................................22, 43

**REDACTED**

Fed. R. Civ. P. 26(b) ................................................................................................ 6, 27

Fed. R. Civ. P. 26(c) ..................................................................................................... 6

Fed. R. Civ. P. 30 ................................................................................................. *passim*

Fed. R. Evid. 803(6) .................................................................................................... 32

## STATUTES AND REGULATIONS

D.C. Code § 28-4509(b) (2001) ................................................................................. 16

Haw. Rev. Stat. § 480-13(c)(2) (2006) ...................................................................... 16

740 Ill. Comp. Stat. § 10/7(2) (2010) ........................................................................ 16

Minn. Stat. § 325D.57 (1984) ..................................................................................... 16

N.D. Cent. Code § 51-08.1-08(4) (1991) ................................................................... 16

N.M. Stat. Ann. § 57-1-3(C) (1979) .......................................................................... 16

Neb. Rev. Stat. § 59-821.01(1) (2002) ....................................................................... 16

S.D. Codified Laws § 37-1-33 (1991) ........................................................................ 16

Utah Code Ann. § 76-10-3109(6) (2013) ................................................................... 16

Vt. Stat. Ann. tit. 9, § 2465(b) (1999) ....................................................................... 16

**REDACTED**

## INTRODUCTION

Pursuant to their Rule 30(b)(6) notice, Defendants seek to take one seven-hour deposition of each named Auto Dealer Plaintiff ("Auto Dealer"), as ordered by the Special Master and the Court, regarding each Auto Dealer's purchases of the vehicles on which it bases its claims, the terms of those purchases, how those terms were determined, how the Auto Dealer in turn sold or leased those vehicles, the terms of those sales or leases, and how those terms were determined. Such information is highly relevant to Auto Dealers' claims and Defendants' defenses and should be known by or readily available to the Auto Dealers' representatives and easily provided in a deposition.

Auto Dealers' ostensible request for "reasonable limitations" on Defendants' Rule 30(b)(6) notice is, in reality, a demand that they be exempted from submitting to any Rule 30(b)(6) depositions at all. Auto Dealers objected to every topic in Defendants' notice and, after more than five hours of meet-and-confer calls with Defendants (during which Defendants made two rounds of substantial concessions), Auto Dealers still have refused to identify a single topic in Defendants' notice on which they would agree to provide testimony.

As with virtually every other aspect of discovery in this case, Auto Dealers' discovery tactics once again stand in sharp contrast to those of every other party. In almost no instance have Defendants, End Payors Plaintiffs, or Direct Purchaser Plaintiffs failed to find a way to resolve (or at least substantially narrow) their disputes. With respect to Rule 30(b)(6) depositions, Defendants and Direct Purchasers successfully negotiated the scope of Defendants' notices to Direct Purchasers in a single phone call and several of those depositions have now been completed without incident, with the others scheduled to be taken in the near future. Likewise, almost all issues concerning Plaintiffs' recent Rule 30(b)(6) notices to each Defendant (which dwarf the

notices at issue here) have been negotiated and those depositions will commence in early January, without any need thus far for motions practice.

Auto Dealers, by contrast, have fought tooth and nail over every aspect of discovery directed at them, refusing to produce the most relevant documents and data or respond to interrogatories without lengthy meet-and-confer sessions in which Auto Dealers' counsel typically resisted any meaningful compromise, at least until the eve of the hearings on Defendants' motions to compel, and then only after requiring the Defendants to incur the substantial costs associated with such motions.  Indeed, as the Special Master is aware, Defendants have had to move repeatedly to compel the Auto Dealer to comply with the Stipulated Orders under which Auto Dealers obligated themselves to produce key data and documents many months after they were originally requested.  So far, nothing has deterred Auto Dealers from pursuing their strategy to prevent Defendants from obtaining sufficient discovery into the merits of their claims and Defendants' defenses thereto, including Auto Dealers' pass-on to consumers of any overcharges they allegedly incurred, or to delay such discovery as long as possible in the hope that time runs out before the discovery can be taken and effectively used against them.

The crux of Auto Dealers' current objections is that essentially every topic on which Defendants seek testimony is "irrelevant."  According to the Auto Dealers, the *only* relevant fact is the nominal price listed on the invoices they received from OEMs or distributors in connection with their acquisition of new vehicles.  In line with that myopic view, Auto Dealers argue that evidence of any rebates, incentives, holdbacks, subsidies, or discounts they received from OEMs in connection with those upstream vehicle purchases is irrelevant, as is any evidence of the Auto Dealers' downstream sale or lease of those vehicles.  Auto Dealers are plainly wrong.

**REDACTED**

With respect to upstream discovery, Auto Dealers ignore the fact that the nominal prices on the invoices do not reflect the ultimate price they paid.  Indeed, many of the invoices expressly state that.  *See, e.g.*, Ex. A, July 2006 General Motors Invoice to Lee Pontiac-Oldsmobile-GMC Truck, Inc. (AD000280198) ("████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████.").  Auto Dealers also ignore the facts that the Special Master has already ordered them to produce such evidence, *see* Order on Certain Defs.' Mot. To Compel Disc. from Direct Purchaser and Auto Dealer Pls. (12-cv-00102, ECF No. 214) (Oct. 16, 2014) ("October 2014 Order"), and that Auto Dealers themselves have agreed to a separate, stipulated order also requiring them to produce such evidence, *see* Stip. & Order Regarding Auto Dealer Pls.' Produc. of Documents and Data  & Ex. A (12-cv-00102, ECF Nos. 310, 311) ("May 12 Order") (requiring production of data for fields such as ████████████████████████████████).

With respect to downstream discovery, Auto Dealers ignore the overwhelming legal authority in support of Defendants' right to assert a pass-on defense against Auto Dealers' claims. *See infra* Section I.B.  Indeed, numerous courts have rejected motions for class certification as to claims virtually identical to those asserted by Auto Dealers based on the type of evidence Defendants seek here.  *See infra* Section I.D.  Consistent with that authority, the May 12 Order requires Auto Dealers to produce evidence on these topics.  Auto Dealers also completely ignore that End Payors are asserting claims premised on the allegation that Auto Dealers passed on overcharges to them, which by itself would require the discovery Defendants seek.

**REDACTED**

With respect to burden, Auto Dealers improperly rely solely on their counsel's bald assertions. They have failed to identify, much less support with affidavits or other evidence, any facts that suggest that proceeding with the depositions as noticed would present any undue burden or be disproportional to the more than fifty Defendant families' need for that discovery for purposes of the more than thirty cases pending in this multi-district litigation. The information sought is central to how Auto Dealers conduct their businesses and should require minimal preparation by informed representatives. Each of these Auto Dealers is receiving at least $50,000 in "service payments" to date for fulfilling the obligations of a named plaintiff seeking to represent a class, which includes making themselves available for a Rule 30(b)(6) deposition.

Granting Auto Dealers' motion for a protective order would deny Defendants evidence that is critical to their defense, would be contrary to the Federal Rules, would violate Defendants' due process rights, and would constitute reversible error that could take years to correct.

For these and the reasons set forth herein, Auto Dealers' motion should be denied.

## FACTUAL BACKGROUND

Starting on October 27, 2015, Defendants collectively served on each of eleven Auto Dealers an initial Rule 30(b)(6) deposition notice calling for one or more of their representatives to testify for no more than seven hours concerning a list of twenty-six topics. Each notice was identical, except for the last topic, which calls for testimony regarding a relatively small number (between twenty and twenty-five) of specific vehicle transactions that are the subject of each respective Auto Dealer's claims. The topics in the Revised Notice relate primarily to the noticed Auto Dealer's particular practices and policies regarding its purchase and sale of new vehicles—all topics about which a knowledgeable representative of each Auto Dealer, with a very reasonable amount of preparation, should be able to testify.

**REDACTED**

Nonetheless, Auto Dealers made clear from the outset that they did not intend to provide such testimony.  Upon receiving Auto Dealers' objections, Defendants engaged Auto Dealers in a series of lengthy meet-and-confer sessions in an effort to negotiate a list of topics that would be acceptable to both sides—as had occurred with prior notices to other plaintiffs and to Defendants in this MDL.  Between November 11 and 18, there were three such sessions totaling more than five hours.  During those sessions, Defendants listened to Auto Dealers' stated concerns, explained the rationale and basis for certain topics, and repeatedly invited Auto Dealers to suggest counterproposals or to identify subjects that they considered appropriate for these Rule 30(b)(6) depositions, which Auto Dealers largely refused to do.

Nevertheless, based on these discussions, Defendants—on their own initiative—revised and narrowed the list of topics multiple times in an effort to accommodate Auto Dealers' stated concerns.  *See* Ex. B, E-mail from Steven Cherry to Counsel for Auto Dealers (Nov. 13, 2015) & E-mail from David Donovan to Counsel for Auto Dealers (Nov. 18, 2015).  Ultimately, Defendants cut the number of listed topics by almost half, substantially narrowed those that remain, and offered to omit several of the remaining topics entirely if Auto Dealers would agree to provide the information in a verified response to an interrogatory before the deposition.

Two days before Auto Dealers filed their Motion for a Protective Order, they for the first time provided counterproposals to a small handful of topics, to which Defendants immediately responded with still further concessions.  *See* Ex. C, E-mails Between Taylor Asen and Steven Cherry (Nov. 22–23, 2015).  For the majority of the topics in Defendants' re-revised notice, however, Auto Dealers never provided any proposal, only an outright objection.  The net result of these discussions is a list of topics that, while far more limited than what Defendants originally

5

proposed and believe would be appropriate, Defendants are prepared to live with. This pared down list, which we will refer to herein as the "Revised Notice," is Exhibit D to this Opposition.[1]

## LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). As revised, Rule 26(b)(1) permits a party to take "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Subject to the "careful dictates of Fed. R. Civ. P. 26," *P & G v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996), the Court may issue a protective order only upon a showing of "good cause" in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). The movant must show "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," that they will suffer one of Rule 26(c)(1)'s enumerated harms. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). These particular and specific facts must show a "'clearly defined and serious injury' resulting from the discovery sought . . . ." *Nix*, 11 F. App'x at 500 (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).

---

[1] Defendants previously sent the Revised Notice (Exhibit D) to the Special Master and counsel for Auto Dealers on November 24, 2015. For ease of reference, Exhibit D incorporates the various compromise proposals included in Steven Cherry's November 23 e-mail to Taylor Asen, *see* Ex. C, and is otherwise the same as the revised notice Defendants sent to Auto Dealers' counsel on November 18.

## ARGUMENT

Rule 30(b)(6) depositions are one of the most critical and effective tools of civil litigation. The Rule 30(b)(6) procedure was created to be "advantageous to both sides" by avoiding the need to depose an unnecessarily large number of corporate officers. Fed. R. Civ. P. 30(b)(6) advisory committee's note (1970). Rule 30(b)(6) depositions are highly favored because courts "are not aware of any less onerous means of assuring that the position of a corporation that is involved in the litigation, can be fully and fairly explored." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 639 (D. Minn. 2000); *see also Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006) ("[T]he burden upon such a responding entity [under Rule 30(b)(6)] is justified since a corporation can only act through its employees."). It is the best means to obtain the binding admissions of a corporation. *See In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003).

Rule 30(b)(6) depositions are often preferred over other forms of discovery because they typically allow a party to obtain more complete information. *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989); *see also Nat'l Life Ins. Co. v. Hartford Accident and Indemnity Co.*, 615 F.2d 595, 600 n.5 (3d Cir.1980) ("[T]here are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses."). "Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008).

Auto Dealers have not come even remotely close to showing good cause to limit (or outright prevent) Defendants from using this critical means of discovery. While Auto Dealers may prefer to avoid Rule 30(b)(6) depositions, "it is not up to [Auto Dealers] to determine what discovery [a Defendant] needs." *See In re Vitamins Antitrust Litig.*, 216 F.R.D. at 174. In order to

**REDACTED**

effectively defend themselves against Auto Dealers' claims and contest Auto Dealers' expected

motion to certify a class, Defendants need (among other necessary discovery) Rule 30(b)(6)

testimony from each Auto Dealer to discover information that has a critical bearing on whether

Auto Dealers can prove all of the elements of their claims, whether Defendants can establish

defenses to such claims, and whether Auto Dealers may represent a class.  This discovery is

equally important to Defendants' defense of all of the End Payor cases.  To bar Defendants from

taking a single Rule 30(b)(6) deposition of each Auto Dealer on the topics in the Revised Notice

would violate the due process rights of every one of the fifty-five families of Defendants being

sued by Auto Dealers, as well as by End Payors, in these MDL proceedings and raise a prospect for

every case litigated on such a basis to be overturned on appeal.

As discussed below, the information Defendants seek in their Revised Notice (Exhibit D)

is relevant (indeed, necessary) to determining liability, damages, and class certification (Section I);

Auto Dealers have failed to articulate with specific facts any undue burden (Section II.A);

Defendants' Revised Notice is not disproportionate to the needs of this case (Section II.B); the

topics set forth therein are neither overbroad (Section III.A) nor do they require disclosure of

privileged information (Section III.B); and the remainder of Auto Dealers' objections are meritless

(Section IV).  Auto Dealers' motion should therefore be denied, and Defendants should be

permitted to proceed with their Rule 30(b)(6) depositions of Auto Dealers.

## I.      THE TOPICS IN DEFENDANTS' REVISED NOTICE ARE RELEVANT TO AUTO DEALERS' CLAIMS, DEFENDANTS' DEFENSES, AND CLASS CERTIFICATION

Auto Dealers repeatedly assert that any fact beyond the nominal invoice prices for the

vehicles they purchased, as reflected on invoices sent to them by an OEM or distributor, is

irrelevant to their claims, Defendants' defenses, and class certification.  *See*, *e.g.*, Mem. at 6–7.

But Auto Dealers' antitrust claims require them to prove both the "fact of damage or injury"

(antitrust impact) traceable to the alleged antitrust violation, as well as measurable damages.  *See*, *e.g.*, *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 532 (6th Cir. 2008).  Auto Dealers are in the middle of a distribution chain—they are neither direct purchasers of the auto parts nor ultimate consumers.  Therefore, the inquiry into impact and damages as to each Auto Dealer is twofold:  (1) whether, and if so how much of, any alleged overcharge was passed on to it from an OEM; and (2) whether, and if so how much of, any such overcharge that reached the Auto Dealer was "absorbed" by it rather than passed on to its customer.  *In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 164 (N.D. Cal. 2001).[2]  Tracing any such overcharge "through successive resales is . . . famously difficult," *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F. 3d 599, 605 (7th Cir. 1997), and it requires consideration of the many factors that influence prices and costs at each level of the distribution chain, *see infra* Sections I.A–I.B.  Both of these steps require evidence beyond the nominal invoice price on which Auto Dealers solely rely, and the Rule 30(b)(6) depositions that Defendants seek are tailored to get at precisely such evidence.  Indeed, the Special Master has already explicitly recognized the importance of deposition testimony to Defendants' ability to understand "the financial operations of the dealership, purchasing and sale of vehicles, how profit is calculated, [and] rebates . . .," as well as what "[the Auto Dealer's] business is, how many cars [it] buys and so forth."  Ex. E, Hearing Tr., May 6, 2015 at 17:20–24.

---

[2] As Defendants have repeatedly explained at length, for indirect purchaser claims brought by an intermediary, pass-on both to the intermediary and from the intermediary to its customers is relevant.  *See* Certain Defs.' Mot. to Compel "Downstream" Disc. From Direct Purchaser and Auto Dealer Pls. at 9–18 (12-cv-00102, ECF No. 186); Certain Defs.' Reply Br. in Supp. of Mot. to Compel "Downstream" Disc. from Auto Dealer Pls. at 3–6 (12-cv-00102, ECF No. 211); Defs.' Opp'n to Dealer Pls.' Cross-Mot. to Resolve Mot. to Compel Downstream Disc. and Outstanding Reqs. at 10–12 (12-cv-00102, ECF No. 305); Defs.' Notice of Suppl. Authority in Supp. of Defs.' Opp'n to Dealer Pls.' Cross-Mot. to Resolve Defs.' Mot. to Compel Downstream Disc. (12-cv-00102, ECF No. 307).

**REDACTED**

Denying Defendants access to information necessary to defend themselves against Auto Dealers' claims with respect to impact and damages would be a violation of due process and reversible error.  *See Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (noting that a defendant in a class action "has a due process right to raise *individual challenges and defenses to claims*, and a class action cannot be certified in a way that eviscerates this right or *masks individual issues*." (emphasis added)); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 558, 561–65 (7th Cir. 1984) (vacating and remanding for failure to allow deposition of non-party witness, explaining that "there are many Americans who find drug companies in general to be objects they love to hate.  This being so, it is the special responsibility of courts to see to it that cases against them at least are fairly presented, and defense not unduly hobbled"); *Credit Lyonnaise SA v. SGC Int'l, Inc.*, 160 F.3d 428, 430–31 (8th Cir. 1998) (reversing and remanding ruling denying depositions; district court's discretion to "limit scope" is restricted by "presumption … in favor of full discovery of any matters arguably related" to claim at issue); *Shaklee Corp. v. Gunnell*, 748 F.2d 548, 548–50 (10th Cir. 1984) ("denial of discovery" on matters ultimately deemed relevant at trial "is ordinarily prejudicial"; setting aside judgment and remanding for failure to allow deposition testimony on topics ultimately deemed relevant at trial); *Elec. Co., Inc. v. Stern*, 544 F.2d 1196, 1199 (3d Cir. 1976) (granting defendant's request to take relevant class-related discovery because "to deny [defendant] the right to present a full defense on the issues would violate due process").

Given the importance of the information sought by Defendants in these depositions, as recognized by courts across the nation, *see infra* Section I.D, it would be legal error for the Special Master to foreclose Defendants from pursuing a line of defense, or a basis for opposing class certification, by denying them access to necessary evidence.

**REDACTED**

 A. <u>Testimony Concerning Topics In Defendants' Revised Notice Are Necessary To Understand The Auto Dealers' Actual Cost Of Acquiring New Vehicles For Resale</u>

Ultimately, to determine whether any alleged overcharge was passed through the distribution chain to an Auto Dealer in connection with its acquisition of a new vehicle and, if so, the amount of any such overcharge, it will be necessary to understand the economic terms of the purchase transaction, taking into account not merely a nominal price reflected on an invoice, but any rebates, allowances, incentives, holdbacks, credits, and other amounts that flowed between the Auto Dealer and the OEM in connection with the Auto Dealer's purchase of that particular vehicle.

As Defendants' expert has explained, "[a]nalysis of whether the first condition regarding impact is met for Auto Dealers, i.e., whether any alleged overcharges reached them, involves data on Auto Dealers' purchases of new vehicles.  These upstream costs depend on the purchases of each vehicle (or vehicles generally) as well as the other principal terms that would affect the vehicle cost to the Auto Dealer, including whether the OEM provided favorable financing terms, promotion funds, or other incentives."  Ex. F, Apr. 20, 2015 Decl. of Dr. Edward A. Snyder ¶ 5; *see also* Ex. G, June 19, 2015 Decl. of Dr. Edward A. Snyder ¶ 6–7 ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████; Ex. H, Oct. 29, 2015 Decl. of Professor Fiona Scott Morton ¶¶ 9, 13–22 (discussing the need to evaluate whether any overcharge was passed from the OEM to the Auto Dealer, as well as from the Auto Dealer to the End Payor, and describing the need to take into account factors such as incentive programs, dealer holdback, bundled products, financing, and others, in order to perform such an analysis).

**REDACTED**

In fact, many of the invoices Auto Dealers have produced in discovery explicitly state that the amounts shown on the invoices are *not* the actual amounts paid by the dealer to acquire the vehicle. For example, many contain, (typically in all caps) language such as: "███████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████" *See, e.g.*, Ex. A.[3] Industry experts have confirmed that rebates, allowances, incentives, holdback, and other factors greatly affect the price that auto dealers pay for new vehicles:

████████████████████████████████████

\* \* \*

████████████████████████████████████

Ex. K, Apr. 17, 2015 ████████████████ ¶¶ 17, 20; *see also* Ex. L, Oct. 28, 2015 Decl. of Jack Sayer ¶¶ 7, 18–19, 29 (discussing dealer incentive programs, dealer holdback, and bundled products and financing). The point is not whether these ████████████████████

████████████████████ Mem. at 32, but that they are part and parcel of the

---

[3] *See also, e.g.*, Ex. I, Oct. 2004 Toyota Invoice to Ramey Motors, Inc. (AD000223400) ("█████

████████████████████████████████████

████████████ ); Ex. J, Apr. 2008 Honda Invoice to Shearer Automotive Enterprises III, Inc. (AD000155158)████

████████████████████████████████ .

transaction in which Auto Dealers purchased the vehicle and must be taken into account to determine the net "price" Auto Dealers actually paid.

Auto Dealers attempt to sidestep this problem by mischaracterizing these essential terms *of the purchase itself* as "other streams of income" and citing several inapposite cases.  Mem. at 8–9.  The Sixth Circuit, however, has already recognized that the types of information Defendants seek are part of the Auto Dealer's purchase transaction itself and not some separate income stream.  Specifically, in *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1330–31 (6th Cir. 1983), the Sixth Circuit held both that "the extension of credit by Suzuki [a motorcycle OEM] to its dealers was such an inseparable part of the purchase price for the motorcycles that the transaction involved only a single product," and that "allowances appear to constitute an inseparable part of the purchase price."  Other courts have similarly found that these (and other) factors are necessary to understand prices paid in the context of motor vehicle purchases.  For example, *In re Class 8 Transmission Indirect Purchaser Antitrust Litigation*, --- F. Supp. 3d ---, 2015 WL 6181748, at *1–2, 9 (D. Del. 2015), involved claims that indirect purchasers paid supra-competitive prices for heavy-duty trucks because of conduct that allegedly affected the price of one component of those trucks:  the transmission.  The court found that a reduction in a truck's price might not be "reflected on an invoice" but instead may be reflected in an "increase[d] trade-in value," "preferred buy-back terms," or "special financing."  *Id.* at 10.  Particularly significant to the court was deposition testimony involving, for example, a "special finance rate" offered to one plaintiff; trade-ins of varying types and importance; evidence of "aggressive" negotiations; the presence of no negotiations at all; the use of a truck manufacturer's "captive finance company"; participation in a "special sales program" with its own associated discount; and the ability to lock in future trade-in terms for the newly purchased truck.  *Id.* at 10.  Auto Dealers' own invoices reflect that

such items are so integral to their purchases of new vehicles that they are explicitly identified as items that are not reflected on the invoice but that *are* necessary to accurately calculate "the dealer's ultimate cost." *See* Exs. A, I, & J.

In contrast, the cases cited by Auto Dealers are either entirely inapt or supportive of Defendants' position. In *In re Nexium Antitrust Litigation*, 777 F.3d 9, 26–29 (1st Cir. 2015), the court carefully considered evidence of offsets to the allegedly inflated prices paid by plaintiffs. With respect to rebates, in particular, the court held that if they were applied in the sales transaction they were relevant to the fact of injury, while if they were applied later in the form of a refund, they were relevant to the amount of damages. *See id.* at 28 & n.23. Either way, they were relevant to the plaintiffs' claims. And, of course, the *Nexium* court did not even question the defendants' right to discover such matters.[4]

In fact, discovery into the various factors that may have influenced the price was permitted in *Nexium*, as indicated by the First Circuit's reference to such evidence and its evaluation by the experts before it in the record of that appeal. *See id.* at 26–29 (discussing insurance reimbursements, insurance co-pays, rebates, fixed price agreements, and the use of coupons). Similarly, in *In re Airline Ticket Comm'n Antitrust Litigation*, the court allowed discovery similar to that requested by Defendants here. 918 F. Supp. 283, 287–88 (D. Minn. 1996) ("Therefore, if

---

[4] The cases cited in *Nexium*, *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972), and *Adams v. Mills*, 286 U.S. 397 (1932), upon which Auto Dealers also rely, are even further off point. The court in *Hawaii* merely observed, in a footnote, that later recoupment of a previously incurred loss (such as the State of Hawaii's collection of increased taxes paid by Standard Oil as a consequence of its increased profits) is not relevant to whether the plaintiff suffered antitrust damages. 405 U.S. at 262 n.14. *Adams* was not even an antitrust case, but rather addressed the issue of whether consignees had standing to sue under the Interstate Commerce Act. 286 U.S. at 406. It did not address the issue of antitrust injury or "impact" (much less with respect to indirect purchasers, such as Auto Dealers). And neither of these cases had anything whatsoever to do with discovery, much less anything related to Defendants' need for discovery as to Auto Dealers' ultimate costs for acquiring new vehicles.

only as a prophylactic, the Court will allow defendants to gather evidence to support an offer of

proof and possible appeal on a damages issue. . . . Discovery regarding cruise and other non-air

revenue sources, as well as revenues from service and management fees, will be permitted.").  The

Special Master should do the same here.

Plaintiffs' remaining citations are even further off target.  In *In re TFT-LCD (Flat Panel)*

*Antitrust Litigation*, the court rejected a summary judgment motion based on the argument that

plaintiff had reason to suspect the alleged cartel and failed to take reasonable steps to mitigate its

damages, *e.g.*, by reporting it to the U.S. Department of Justice.  *See* No. 07-md-01827, 2012 WL

6000154, at *3 (N.D. Cal. Dec. 26, 2012) (hereinafter "*In re TFT-LCD (Flat Panel)*").  That has

absolutely nothing to do with Defendants' need for discovery about the Auto Dealers' ultimate

costs of acquiring new vehicles.  Likewise, *In re Cardizem CD Antitrust Litigation* did not purport

to address which factors affected the purchase price of certain pharmaceutical drugs (much less a

vehicle purchase); rather, it rejected the defendants' theory that damages should be determined

through a "lost-profits" analysis, rather than through an "overcharge" analysis, 200 F.R.D. 297,

309–310 (E.D. Mich. 2001), which is entirely irrelevant here.  None of these cases have any

bearing on this discovery dispute and cannot be construed even remotely to prevent Defendants

from seeking deposition testimony to understand the factors affecting Auto Dealers' purchase

prices.

**B.**    **Testimony Concerning Topics In Defendants' Revised Notice Is Necessary To Understand The Actual "Downstream" Sales Price Charged By Auto Dealers And How It Was Determined**

Auto Dealers' motion also rests heavily on their now familiar refrain that information

concerning their downstream transactions—*i.e.*, their sales or leases of new vehicles to their

customers—is not relevant to either their claims or Defendants' defenses.  Mem. at 8–9, 30–36,

39–41.  But as Defendants have already repeatedly demonstrated, this is absolutely wrong.  The

laws of virtually every jurisdiction in which Auto Dealers have brought claims recognize a pass-on

defense.[5]  And even in those states with no explicit statute or definitive ruling on the pass-on

defense, it should be available at least whenever a statute granting relief to indirect purchasers

limits their recovery to the actual damages sustained.  *See, e.g.*, *In re Vitamins Antitrust Litig.*, 259

F. Supp. 2d 1, 8–9 (D.D.C. 2003).  Indeed, Auto Dealers themselves recognized the need to

establish the absence of pass-on to prove the elements of their claims, alleging in their own

Complaints that "automobile dealers did not 'pass on' all of the overcharges" attributable to

Defendants' alleged conduct.  *See, e.g.*, Dealership Third Consol. Class Action Compl. ("Auto

Dealers' 3d CAC") ¶¶ 233–234 (12-cv-00102, ECF No. 218).

Where an alleged overcharge to the plaintiff is passed on completely to a downstream

purchaser, that plaintiff may have no injury at all.  *See In re Methionine Antitrust Litig.*, 204 F.R.D.

at 164 (holding that under Wisconsin antitrust statute "plaintiff must prove that the reseller

absorbed the overcharge, that is, that it did not pass on the full amount of the overcharge to its

customers").  Where the overcharge is passed on partially, the plaintiff's damages are reduced by

the amount that was passed on.  *See, e.g.*, *In re W. Liquid Asphalt Cases*, 487 F.2d 191, 201 (9th

---

[5] *See, e.g.*, D.C. Code § 28-4509(b) (2001) ("[W]here both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial or complete defense . . . that the illegal overcharge has been passed on to others . . . ."); Haw. Rev. Stat. § 480-13(c)(2) (2006) (same); Neb. Rev. Stat. § 59-821.01(1) (2002) (same); N.M. Stat. Ann. § 57-1-3(C) (1979) (same); N.Y. Gen. Bus. § 340(6) (1999) (same); N.D. Cent. Code § 51-08.1-08(4) (1991) (same); Utah Code Ann. § 76-10-3109(6) (2013) (same); 740 Ill. Comp. Stat. § 10/7(2) (2010) ("[T]he court shall take all steps necessary to avoid duplicate liability . . . ."); Minn. Stat. § 325D.57 (1984) (same); S.D. Codified Laws § 37-1-33 (1991) (same); Vt. Stat. Ann. tit. 9, § 2465(b) (1999) (same); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) (holding that "defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages"); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 520 (Tenn. 2005) (instructing that trial courts should act to avoid duplication of recovery against the same defendant); *Bunker's Glass Co. v. Pilkington, PLC*, 206 Ariz. 9, 18 (Ariz. 2003) (same); *In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1, 9 (D.D.C. 2003) (denying motion to exclude downstream evidence for claims based on Michigan antitrust state law).

Cir. 1973).  Accordingly, for purposes of Auto Dealers' claims, discovery on downstream sales is relevant to both liability and damages.  *See, e.g.*, *In re TFT-LCD (Flat Panel)*, 2012 WL 6709621, at *1–7  (allowing downstream discovery related to pass-on defenses).  Such discovery also is relevant to whether a putative class can prove liability with common evidence as required to certify a class.  *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 462–64 (D. Kan. 2006) (allowing discovery of downstream data because relevant to class certification).  The same is true with respect to the litigation of the claims End Payors seek to assert on behalf of the members of their putative class, which are premised on there being pass-on by the Auto Dealers.

The cases on which Auto Dealers rely to support their argument that information concerning their downstream sales or leases of new vehicles is irrelevant are likewise wholly inapposite.  *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. at 287, is inapposite because pass-on is not available as a defense to liability or damages under federal antitrust law, *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968), and cases addressing that rule were central to the court's reasoning.  As discussed above, the pass-on defense is recognized in almost every state in which Auto Dealers purport to bring claims.  Auto Dealers' citation to *In re TFT-LCD (Flat Panel)* is particularly bizarre.  *See*, *e.g.*, Mem. at 9, 34.  In *LCD*, the Northern District of California *allowed* downstream discovery related to the pass-on defense.  *In re TFT-LCD (Flat Panel)*, 2012 WL 6709621, at *1–7 (holding that "defendants may assert a pass-on defense to plaintiffs' state law indirect purchaser claims," which included California, New York, Michigan, Illinois, and Minnesota, and allowing defendants to present evidence obtained during discovery related to "each plaintiff's downstream pass-on rates").

**REDACTED**

C.     <u>Deposition Testimony Is Necessary Because Auto Dealers' Document And
Data Productions Are Incomplete And Insufficient</u>

Contrary to Auto Dealers' assertion, it is not sufficient for Defendants to rely on the

documents Auto Dealers have produced, either with respect to upstream or downstream discovery.

It simply is not the case that if documents address an issue, then a party is prohibited from taking

depositions related to that issue. *See Great Am. Ins. Co. of N.Y.*, 251 F.R.D. at 541 ("Producing

documents and responding to written discovery is not a substitute for providing a thoroughly

educated Rule 30(b)(6) deponent.") In any event, Auto Dealers' document productions are grossly

incomplete. As set forth above, Auto Dealers rely only on invoices with respect to upstream

discovery for many of their purchases, which on their face make clear that they do not reflect the

Auto Dealers' actual upstream costs of purchasing new vehicles. *See supra* Section I.A.

Deposition testimony is needed to explain the few details set forth in the invoices, but also more

importantly to explain all that is missing from those invoices, so as to understand what Auto

Dealers' actual costs were for purchasing their new vehicles and how they were (or can be)

determined.

With respect to downstream discovery, the need for deposition testimony, as opposed to

unquestioning reliance on Auto Dealers' incomplete document productions, is even more

palpable. Auto Dealers have cherry-picked the invoices they have produced from the deal files for

their sale and lease transactions, while refusing to produce the remaining contents of those files,

which are highly relevant to Defendants' pass-on defense. The remainder of Auto Dealers'

productions to date consist primarily of largely incomplete dealer management system ("DMS")

data and OEM reports. Even where these documents and data have been produced, they do not

reflect all of the relevant details of the purchase, sale, and lease transactions to which they relate.

**REDACTED**

Most importantly, these documents and data do not explain how the final terms of those transactions were negotiated and determined.  *See* Ex. L  ¶ 10 (explaining that even deal files, which contain more detailed transaction-level information than the documents and data Auto Dealers have produced to date, "do not capture all the factors that often influence an automotive dealer's willingness to accept certain terms for a particular dealer"); Ex. H ¶ 24 (same). Deposition testimony concerning Auto Dealers' sales practices and policies is particularly important where, as here, those terms were individually negotiated in each transaction.  Ex. M, Charles Murry and Henry S. Schneider, The Economics of Retail Markets for New and Used Cars 17, in Handbook on the Economics of Retail and Distribution (2015) (forthcoming) (noting that the retail vehicle market is "unusual for being a large retail market where consumers pay what are essentially personalized prices."); *see also* Ex. L ¶¶ 5–8 (describing how auto dealers engage in complex, individualized negotiations with consumers not described in their data or reflected in the nominal purchase price); Ex. H ¶¶ 13–15 (explaining that pass-on cannot be determined using solely the nominal price).  The documents and data also do not reveal critical facts affecting the pass-on analysis, such as how the dealer determined the amount of its offers and final terms, its participation in incentive programs, or how market demand, the inclusion of bundled products (such as financing or insurance) in the transaction, or potential future profits from secondary revenue sources influenced the sale price.  Ex. L ¶ 10; *see also* Defs.' Mot. for Leave To Depose Non-Party Auto. Dealers from which End-Payor Pls. Purchased Vehicles at 12 (12-cv-00103, ECF No. 371).  All of these factors may affect whether any alleged overcharge was passed on to a customer.

Significantly, by granting Defendants' motion to depose certain non-party auto dealers, the Special Master has already recognized that this type of deposition testimony is critical to

Defendants' defenses.  *See* Special Master's Order Granting Defs.' Mot. For Leave to Depose

Certain Non-Party Automobile Dealers From Which End-Payor Pls. Purchased Vehicles at 3

(12-cv-00103, ECF No. 392) (granting motion after balancing "the rights of Defendants to obtain

critical information necessary to defense of the claims against them" against the burden of

non-party discovery) ("November 2015 Order").  It would be illogical to allow Defendants to

obtain this information from non-parties, but not from the Auto Dealers.

Numerous courts have recognized that details of individual negotiations in vehicle sales

are relevant to whether any overcharge has been passed on to consumers.  *See, e.g.*, *In re New*

*Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d 6, 29 (1st Cir. 2010) (vacating class

certification of a class of end payor vehicle purchasers because "[t]oo many factors play into an

individual negotiation" to determine pass-on with common evidence); *Robinson v. Tex. Auto.*

*Dealers Ass'n*, 387 F.3d 416, 423–24 (5th Cir. 2004) (finding "the class members' individual

negotiation styles" relevant to whether an improper charge actually affected the price paid); *In re*

*Class 8 Transmission*, at *23 (denying indirect purchasers' motion for class certification where

there was an inadequate "effort to correlate" the cost of an individual vehicle component to dealers

with the price paid by customers in each "separately negotiated and distinct" vehicle transaction);

*see also In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 505 (N.D. Cal. 2008)

(individual proof of impact was required because "the vast majority of sales were primarily

executed after customized negotiations"); *In re Flash Memory Antitrust Litig.*, No. C 07-0086

SBA, 2010 WL 2332081, at *8 (N.D. Cal. June 9, 2010) (because the "ultimate purchase price was

the result of an individualized negotiation," individualized proof of overcharge was required).

Even if the documents and data produced by Auto Dealers were sufficient to perform a

pass-on analysis (which they are not), deposition testimony on these topics still would be required

to address the extended periods of time for which nearly all of the Auto Dealers have produced no DMS data (and refused to produce gap-filling deal files or data from backup media). On average, each Auto Dealer has produced data for *less than half* of the sixteen-year class period, and *five* Auto Dealers still have failed to produce any data at all.[6] Testimony on Auto Dealers' sales practices during the relevant period may be the only source of information on other factors that may have affected their sales pricing.

It may be that Auto Dealers have no facts, and thus can provide no testimony, with respect to time periods for which they have no data, and perhaps even that they can add nothing with respect to time periods for which there *are* data. In either respect, however, Defendants are entitled to *know*, by obtaining binding testimony from each Auto Dealer's designee, that the dealership has no answer to questions reasonably within the scope of the topics in the Revised Notice.

**D.    Courts Have Held That The Types Of Information Defendants Seek To Obtain In These Depositions Are Not Only Relevant To, But Dispositive Of, Antitrust Claims**

The facts Defendants seek to elicit through the topics in the Revised Notice are critically important not only to the merits of Auto Dealers' claims, but also to the rigorous analysis the Court will have to conduct to determine whether Auto Dealers are able to "affirmatively demonstrate" through "evidentiary proof" that the requirements for class certification are "*in fact*" satisfied. *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks and citation omitted) (emphasis in original). Auto Dealers bear the burden as a preliminary matter to show that the issue

---

[6] These Auto Dealers are Beck Motors, Inc. ("Beck"); Dale Martens Nissan Subaru, Inc.; Landers of Hazelwood, LLC, d/b/a Landers Toyota of Hazelwood; and Martens Cars of Washington, Inc.; and SLT Group II, Inc. d/b/a Planet Nissan Subaru of Flagstaff ("SLT"). Beck and SLT moved to withdraw as named plaintiffs after their productions of DMS data were due, though their motions have yet to be decided by the Court.

of injury, *i.e.*, antitrust impact, "is capable of proof at trial through evidence that is common to the class rather than individual to its members."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311–12 (3d Cir. 2008); *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 816 (7th Cir. 2012); *In re Nw. Airlines Corp.*, 208 F.R.D. 174, 223 (E.D. Mich. 2002).[7]

In strikingly analogous cases involving the purchase and sale of vehicles, courts have found facts similar to those for which Defendants seek Rule 30(b)(6) testimony to be not only relevant to but dispositive of class certification.  For example,  in determining whether pass-on could be proved through common evidence, the court in *In re Class 8 Transmission Indirect Purchaser Antitrust Litigation* specifically relied on facts similar to those on which Defendants seek deposition testimony.  The court observed that the rebates received by some but not all putative class members operated to "complicate the damages issue … in terms of individualized transactions and the ability to account for them through common proof."  2015 WL 6181748, at *10.  And "[m]ore importantly," specific examples from plaintiffs' depositions illustrated the individual rather than common nature of the vehicle purchase transactions.  *Id.* at *10 & n.14. Particularly significant to the court was deposition testimony involving, for example, a "special finance rate" offered to one plaintiff; trade-ins of varying types and importance; evidence of

---

[7] As for damages, Auto Dealers will have to present a manageable method of determining damages to class members so that "[q]uestions of individual damages calculations" do not "overwhelm questions common to the class."  *Comcast*, 133 S. Ct. at 1433; *see Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 304 (5th Cir. 2003) (finding that the "need for . . . individualized damages inquiries" caused "individual issues concerning damages" to "predominate over questions common to the proposed class"); *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 194 (D.N.J. 2013) (holding that damages must be susceptible to classwide proof where impractical to bifurcate injury and damages issues).  The particular showing Auto Dealers will have to make with regard to damages may depend on whether the Court ultimately bifurcates liability and damages issues.  *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013).  But in addition to still being relevant to Auto Dealers' individual claims, their damages methodology will also be relevant at the class certification stage to determining superiority and manageability. Fed. R. Civ. P. 23(b)(3) & 23(b)(3)(D).

"aggressive" negotiations; the presence of no negotiations at all; the use of a truck manufacturer's

"captive finance company"; participation in a "special sales program" with its own associated

discount; and the ability to lock-in future trade-in terms for the newly purchased truck. *Id.* at *10.

Just as Defendants seek to do here with passenger vehicles, the court evaluated the many

"real-world facts surrounding . . . this complicated truck pricing market" before concluding that

the plaintiffs could not demonstrate class-wide antitrust impact using common evidence. *Id.*

Similarly, *In re New Motor Vehicles Canadian Export Antitrust Litigation* involved claims

that indirect purchasers overpaid for new passenger vehicles as a result of anticompetitive conduct

by vehicle manufacturers. 522 F.3d at 8–11. As here, the First Circuit observed that the

class-wide antitrust impact inquiry involved the "complex" task of linking plaintiffs' antitrust

theory first to an overcharge from the OEMs to the dealers and then from the dealers to the

plaintiffs. *Id.* at 27. Noting that "[t]oo many factors play into an individual negotiation" to

purchase a new vehicle, the court concluded that the plaintiffs' evidence was insufficient to show

that antitrust impact could be demonstrated for all class members. *Id.* at 29.

Likewise, in *Robinson v. Texas Auto Dealers Association,* the court concluded it "would

have to hear *evidence* regarding *each purported class member and his transaction*" to determine

antitrust impact because the facts about "the class members' individual negotiation styles"

impacted how and *whether* they were injured by the extra line-item charge. 387 F.3d at 424. This,

the court held, was fatal to the class certification predominance requirement. *Id.*

These cases and others recognize that transactions involving the purchase or sale of an

automobile are impacted by a wide variety of facts and circumstances, which the topics in

Defendants' Revised Notice are specifically targeted to elicit. *Compare* Revised Notice, Topics 7,

8, 9(e), 11(g) & 12(i) (seeking testimony about each Auto Dealer's competitors and marketplace)

**REDACTED**

*with, e.g.*, *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 327–28 (5th Cir. 1978) (discussing relevance of different features of numerous geographic markets to class-wide impact analysis) *and In re Methionine Antitrust Litig.*, 204 F.R.D. at 165 (discussing relevance of "evidence . . . that resellers do not act uniformly and that they operate in different markets with different competitive pressures"); *compare* Revised Notice, Topics 9, 10 & 15 (seeking testimony on how Auto Dealers purchased vehicles from OEMs) *with, e.g.*, *Blades v. Monsanto*, 400 F.3d 562 (8th Cir. 2005) (discussing relevance of "the varying factors affecting list prices" and of other evidence that would differ across product variations) *and In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. at 505 (discussing relevance of individual circumstances of different wholesalers and resellers in the distribution chain); *compare* Revised Notice, Topics 11, 12 & 15 (seeking testimony about how Auto Dealers sold or leased new vehicles to consumers) *with, e.g.*, *In re New Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d at 29 (discussing relevance of the "many factors [that] play into an individual negotiation" for a new vehicle) *and Blades*, 400 F.3d at 574 (discussing relevance of "varying factors affecting list prices") *and Robinson*, 387 F.3d at 423–24 & n.25 (discussing relevance of relationship between new vehicle's nominal cash price and other factors influencing transaction as well as evidence of "haggling" and other "individual negotiation styles").

These courts specifically required evidence about the "real-world facts" surrounding the complicated new vehicle "pricing market," *In re Class 8 Transmission Indirect Purchaser Antitrust Litigation*, 2015 WL 6181748, at *10, and the "many factors [that] play into an individual negotiation" for a new vehicle, *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d at 29. Prohibiting Defendants from seeking testimony on these matters would not only frustrate the Court's ability to conduct its rigorous class certification analysis but would also

24

**REDACTED**

violate Defendants' due process rights to defend themselves against Auto Dealers' claims and

constitute reversible error.  *See Carrera*, 727 F.3d at 307 (explaining that a defendant in a class

action "has a due process right to raise individual challenges and defenses to claims, and a class

action cannot be certified in a way that eviscerates this right or masks individual issues").

## II.   AUTO DEALERS HAVE NOT SHOWN UNDUE BURDEN, AND ANY BURDEN IMPOSED IS PROPORTIONAL TO THE NEEDS OF THE CASE

### A.   Auto Dealers' Conclusory Assertions Of Burden Are Insufficient

Auto Dealers also seek to avoid their obligation to provide testimony under Rule 30(b)(6)

on the ground that it would be "unduly burdensome" to prepare a witness to testify on the topics

listed in the Revised Notice, but in support of this assertion they offer nothing more than

boilerplate, conclusory, and generalized assertions without any evidentiary support whatsoever.

*See* Mem. at 6–16, 20–25, 27–28, 36.  The law requires far more.  To foreclose Defendants from

eliciting relevant testimony during a Rule 30(b)(6) deposition, Auto Dealers must make a specific

and particularized showing as to why preparation of, and testimony by, their representatives would

be unduly burdensome.  *See Nix*, 11 F. App'x at 500 ("[A] movant . . . must articulate specific

facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot

rely on mere conclusory statements."); *Kane v. Metcalf*, No. 3–10–0206, 2012 WL 983589, at *5

(M.D. Tenn. Mar. 19, 2012) (noting that a party must show with "specificity" why preparation of a

Rule 30(b)(6) witness would be unduly burdensome); *Convertino v. U.S. Dep't of Justice*, 565 F.

Supp. 2d 10, 14 (D.D.C. 2008) (requiring "affidavits or . . . evidence which reveals the nature of

the burden").[8]  Indeed, in *Dongguk Univ. v. Yale Univ.*, upon which Auto Dealers heavily rely, the

---

[8] *See also Bank of Mongolia v. M & P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) ("A party objecting on these grounds must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*,

court held that "[t]he party opposing the discovery sought must support its position with a particular and specific demonstration of fact."  270 F.R.D. 70, 74 (D. Conn. 2010) (internal quotation marks and citation omitted).

The cases cited by Auto Dealers for the proposition that the need for evidence substantiating claims of undue burden is relaxed where a Rule 30(b)(6) notice is "facially excessive,"  Mem. at 16, 49, are irrelevant here because the Revised Notice at issue is not remotely "overbroad."  It bears no resemblance to the massive Rule 30(b)(6) notices courts rejected in those cases.  *See Apple Inc. v. Samsung Elec. Co*., 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (granting a protective order to a single-spaced forty-six-page Rule 30(b)(6) notice listing over 600 subtopics for examination); *Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004) (requiring party to revise Rule 30(b)(6) notice that sought minute details about all conversations about the plaintiff by employees of the corporation that would reach "conversations about [the plaintiffs'] hair style or his new suit").  Because the topics identified in Defendants' Revised Notice are neither facially overbroad nor duplicative of other evidence produced in discovery, *see supra* Section I.C; *infra* Section III.A, Auto Dealers' failure to offer any semblance of evidentiary or specific support for their proclamations of undue burden precludes them from preventing their depositions from going forward on that ground.

### B.    Any Burden Imposed By Defendants' Revised Notice Is Proportional

Auto Dealers' invocation of Rule 26's proportionality standard, *see* Mem. at 3–5, 24, 41, is equally unavailing.  In fact, application of that standard counsels *heavily in favor* of allowing

---

191 F.R.D. 495, 498 (D. Md. 2000) (noting that when a "party claim[s] that a discovery request is unduly burdensome," that party "must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence.  A conclusory assertion of burden and expense is not enough"); *Schiavone v. Ne. Utilities Serv. Co.*, No. 3:08CV429 (AWT), 2009 WL 801744, at *2 (D. Conn. Mar. 25, 2009).

Defendants to proceed with these depositions.  As revised, Rule 26(b)(1) provides that a party may

seek discovery of:

> any nonprivileged matter that is relevant to any party's claim or defense and
> proportional to the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the importance of the discovery in
> resolving the issues, and whether the burden or expense of the proposed discovery
> outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

As previously discussed, the information Defendants seek by their Revised Notice is

critical to their ability to understand both the upstream and downstream prices at issue in this case,

and is the very type of information that has been found by numerous courts to be relevant to—and

indeed dispositive of—class certification in analogous antitrust cases.  *See supra* Section I.D.  The

"importance of the discovery" sought by Defendants, or the stakes of this litigation, cannot be

overstated.  Auto Dealers purport to represent a class of more than 16,000 auto dealers across

thirty-plus different class actions brought against more than fifty Defendant families, as well as

separate subclasses in each of the thirty states, including the District of Columbia, in which they

assert damages claims for each action.  *See, e.g.*, Auto Dealers' 3d CAC ¶¶ 236–238.  Their

putative class claims derive from *millions* of new vehicle transactions that occurred over a

seventeen-year class period nationwide, *id.* ¶ 2; Ex. N at 51, NADA Data 2008; Ex. O at 8, NADA

Data 2014, and they seek hundreds of millions of dollars in damages.

Notwithstanding these stakes, Defendants already are limited (absent a showing of good

cause) to only a single, seven-hour Rule 30(b)(6) deposition of each Auto Dealer, during which

Defendants must elicit testimony on a multitude of issues relevant to their defenses to Auto

Dealers' claims, damages, and their upcoming motion, briefing, and expert reports on class

certification.  *See* End Payor Pl. & Auto Dealer Pl. Deposition Protocol Order ¶ III(B)

(12-md-02311, ECF No. 1021).  This evidence will also be essential to the defense of the End

Payors' claims.  It is therefore critically important that Defendants be permitted to pursue lines of

questioning that they, and courts across the country, believe to be relevant to the claims and

defenses in this case.

Auto Dealers likewise have ample resources to prepare for and comply with their

obligations under Rule 30(b)(6).  The average U.S. Auto Dealer is a $49 million enterprise that

made $6.5 million gross profit and $1.1 million net profit in 2014.  Ex. O, National Automobile

Dealer Association, NADA DATA 2014, 3 (2014).  Even were this not the case, each Auto Dealer

will receive a $50,000 service payment in connection with the settlements reached to date for

fulfilling its obligations as a named plaintiff seeking to represent a class of other auto dealers.  *See*

Order Regarding Auto Dealers' Mot. for an Award of Attorneys' Fees, Reimbursement of Litig.

Expenses, & Service Awards at 5 (12-cv-00102, ECF No. 401).  These resources should be more

than sufficient for each Auto Dealer to "make a conscientious good-faith endeavor" to prepare a

designee to testify "fully, completely, [and] unevasively" about its business in a single seven-hour

deposition on the topics in Defendants' Revised Notice.  *See Smith v. Gen. Mills, Inc.*, No. C2

04-705, 2006 WL 7276959, at *3 (S.D. Ohio Apr. 13, 2006) (internal quotation marks and

citations omitted).

## III.    AUTO DEALERS' REMAINING GLOBAL OBJECTIONS LACK ANY MERIT

### A.    Defendants' Revised Notice Is Not Overbroad

Auto Dealers misrepresent the legal standard by which the Special Master is to evaluate

Defendants' Revised Notice.  Rule 30(b)(6) requires only that the party noticing the deposition

"must describe *with reasonable particularity* the matters for examination."  Fed. R. Civ. P. 30

(emphasis added); *see also Meyer v. Photofax, Inc.*, No. 08–143–HRW, 2009 WL 1850609, at *1

(E.D. Ky. June 26, 2009) (denying motion for protective orders because proposed topics met the

**REDACTED**

Rule's "reasonable particularity" standard); *51382 Gratiot Ave. Holdings, LLC v. Chesterfield Dev. Co., LLC*, No. 2:11-cv-12047, 2011 U.S. Dist. LEXIS 108564, at *2 (E.D. Mich. Sept. 22, 2011) (same); *Gillham v. Tenn. Valley Auth.*, No. 1:09–cv–01006–JDB, 2010 WL 1543741, at *2 (W.D. Tenn. Mar. 18, 2010) (same).

The "painstaking specificity" standard that Auto Dealers assert applies under Rule 30(b)(6), *see* Mem. at 1, 14, 17, 20, 47, has never been adopted by the Sixth Circuit, nor was even applied by the courts in the cases cited by Auto Dealers. The *Memory Integrity, LLC v. Intel Corp.* case, which Auto Dealers repeatedly cite, *see* Mem. at 14, 20, 47, did not apply a "painstaking specificity" standard at all; rather, it held that a proposed topic covering the factual bases supporting allegations of violations of 110 different "highly technical" patents was overly burdensome where an interrogatory would suffice. 308 F.R.D. 656, 661 (D. Or. 2015); *see also Sprint Commc'ns*, , 236 F.R.D. at 528 (holding the Rule 30(b)(6) notice "sufficiently states with reasonabl[e] particularity the subjects about which it wishes to inquire"); *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 505–06 (D.S.D. 2009) (stating "there is no evidence that the court [that first used the 'painstaking specificity' language] intended to supplant the 'reasonable particularity' standard" and rejecting "a more rigorous standard than that contemplated by Rule 30(b)(6)").

Further, Auto Dealers falsely assert that the Revised Notice requires their designated witnesses to testify to a ridiculous level of detail. *See* Mem. at 15 (arguing Defendants' notice requires Auto Dealers' witnesses to be prepared to discuss: "*every* detail of their 'transactional data,'" the "details of *each and every* promotion, financing plan, and/or ancillary service offered," "*every* detail concerning any variance in pricing and the reasons for those variances for *each* car sold," "*every* detail concerning the 'purchasing process,'" and "*each* piece of transaction datum it has produced, documenting thousands of transactions, often with over a hundred data points each"

(emphasis added)).  That is simply not true.  Not only does it mischaracterize the topics in the

Revised Notice, but it also suggests a burden beyond what the Rule requires.  Auto Dealers must

"make a conscientious good-faith endeavor" to prepare their designees to testify "fully,

completely, [and] unevasively."  *Smith*, 2006 WL 7276959, at *3 (internal quotation marks and

citations omitted).  If a question seeks information unknown or not reasonably available to the

organization, the deponent need simply so state at the deposition.  *QBE Ins. Corp. v. Jorda Enters.,*

*Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012) ("If a corporation genuinely . . . does not have the

information, cannot reasonably obtain it from other sources and still lacks sufficient knowledge

after reviewing all available information, then its obligations under the Rule cease.").

### B.   Auto Dealers' General Objections Anticipating Questions That Might Require Disclosure Of Privileged Information Are Premature.

Throughout their Motion, Auto Dealers object to topics based upon their speculation that

questions might be asked that *might* require the disclosure of attorney–client communications

and/or attorney–client work product.  *See, e.g.*, Mem. at 21–22.  The law is clear, however, that

where a proposed topic does not seek privileged information on its face, the proper course is to

object during the deposition, in response to specific questions, rather than seeking a blanket

protective order in advance.  *See, e.g., Cardinal Aluminum Co. v. Cont'l Cas. Co.*, No. 3:14–CV–

857–TBR–LLK, 2015 WL 4068405, at *4 (W.D. Ky. July 2, 2015) (denying a protective order

based on claims of invasion of attorney–client privilege and the work-product doctrine because

"the rules permit Defendant's counsel to instruct the corporate representative not to answer");

*Draper v. Univ. of Tenn.*, No. 1:08–cv–01125–JDB, 2010 WL 5634364, at *2 (W.D. Tenn. Apr.

13, 2010) ("[T]he claim of privilege cannot be a blanket claim; it 'must be made and sustained on

a question-by-question . . . basis.'") (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th

Cir.1983)); *NetJets Large Aircraft, Inc. v. United States*, No. 2:11–cv–1023, 2014 WL 1672588, at

*9 (S.D. Ohio Apr. 28, 2014), *objections overruled*, 2014 WL 3459645 (S.D. Ohio July 11, 2014)
(holding that it was premature to rule in advance of deposition on general assertions of privilege
and in light of the absence of evidence regarding the specific knowledge and likely testimony of
the potential deponents). Auto Dealers' general objections in this regard are premature and should
not be heard at this time.

## IV.  AUTO DEALERS' TOPIC-SPECIFIC OBJECTIONS LACK ANY MERIT

### A.  Topic No. 1:  "Your knowledge of the factual basis for the allegations in Dealership Plaintiffs' Class Action Complaints filed in the Litigation related to Defendants' conduct and any injury You sustained as a result of Defendants' alleged conduct."

Topic 1 of the Revised Notice (Exhibit D) is expressly limited to the "*[Auto Dealer's]*
*knowledge of the factual basis for the* allegations in Dealership Plaintiffs' Class Action
Complaints." Auto Dealers' objection, Mem. at 17, misleadingly omits the italicized portion. A
Rule 30(b)(6) notice "that seeks the factual bases for another party's claims or defenses is proper."
*Smith*, 2006 WL 7276959, at *3; *see also Miller v. Experian Info. Sols., Inc.*, No. 3:13–cv–90,
2014 WL 7176620, at *1–2 (S.D. Ohio Sept. 18, 2014) (rejecting overbreadth objections to a topic
that covered "allegations, facts, and/or exhibits" in the Complaint because it "construed the notice
as seeking the factual predicates of such"). On its face, this topic seeks no information implicating
either the attorney–client privilege or work product protections. *See Smith*, 2006 WL 7276959, at
*4 ("[A]ttorney–client privilege does not preclude inquiry into the factual bases" of the claims,
collecting cases from other circuits; work product protection not implicated unless questions
'improperly tend to elicit the mental impressions of the party's attorneys.") (internal quotations
omitted).

The cases cited by Auto Dealers, all from other circuits, are distinguishable. The court in
*E.E.O.C. v. HBE Corp.* granted a protective order to prevent a party from deposing their

31

opponent's *attorney*.  157 F.R.D. 465, 466 (E.D. Mo. 1994).  *Smithkline Beecham Corp. v. Apotex Corp.* focused entirely on whether information about the proposed topic was already being provided through an interrogatory.  No. 98 C 3952, 2000 WL 116082, at *10 (N.D. Ill. Jan. 24, 2000) ("The issue here is duplication.").

Topic 1 seeks only testimony on Auto Dealers' knowledge of the factual basis, if any, for those allegations related to Defendants' conduct and Auto Dealers' alleged injury.  This request is not premature—either the Auto Dealer has knowledge of a factual basis for its allegations or it does not.  The passage of time will not change that.

**B.**      **Topic No. 2:  "Any analysis or calculations You have performed or received relating to the amount of any damages You incurred as a consequence of the alleged anticompetitive conduct described in the Dealership Plaintiffs' Class Action Complaints, the amount of the alleged overcharges for Auto Parts Products, the amount of pass on of the alleged overcharges from Your OEMs to You, or the amount of any overcharge you passed on to end purchasers."**

Without waiving their right to seek evidence concerning Auto Dealers' alleged damages, Defendants agree to withdraw Topic 2 from their Rule 30(b)(6) Revised Notice.

**C.**      **Topic No. 3:  "Whether the invoices, . . . data, and . . . documents that You have produced in this Litigation . . . were routinely made and kept in the ordinary course of . . . business."**

In lieu of testimony on this topic, Defendants have offered to accept a verified interrogatory response or stipulation from each Auto Dealer at least seven days prior to the deposition that the referenced documents and data are authentic and satisfy the business records exception set forth in Fed. R. Evid. 803(6).  Auto Dealers have agreed to this proposal, Mem. at 18, which resolves any issue as to Topic 3.

**D.**      **Topic No. 4:  "The transactional purchase, sales, and cost data (including DMS data) You have produced."**

Auto Dealers object that it would be impossible to designate a witness to testify to each data point produced by Auto Dealers.  *See* Mem. at 19–20.  But Topic 4 does not require that level

**REDACTED**

of specificity, and obviously any post-deposition motion by Defendants to compel testimony about "each data point" would be futile.  In fact, Defendants expect many of their specific questions concerning Auto Dealers' transactional data will be addressed in written correspondence consistent with how Defendants have answered Auto Dealers' questions about Defendants' data. This topic is instead intended to require a witness, who is knowledgeable about the transactional data that each Auto Dealer has produced, including the source from which they were obtained, to testify generally as to how they were created, what information was intended to be captured, and the uses to which the data were put.  Moreover, Defendants have offered in meet and confers to provide notice at least a week before any deposition in the event Defendants have questions about any specific data entries.  *See* Ex. C, E-mail from Steven Cherry to Taylor Asen (Nov. 23, 2015). Auto Dealers have not responded to this offer, which Defendants believe is more than sufficient to resolve Auto Dealers' concerns.

> **E.      Topic No. 5:  "Your policies, procedures, and practices for creation and maintenance of invoices, deal files, DMS or equivalent electronic data, OEM reports, OEM portal documents, and data and/or documents reflecting incentive payments and other monies, credits, or offsets received from OEMs (*e.g.*, incentives, rebates, holdback, reserve, and/or other discounts) in connection with the purchase or sale of new vehicles, and an explanation of any gaps or absences in Your production of same."**

The Federal Rules permit Defendants to seek discovery into "the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . ."  *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015) (noting such discovery "is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples").  Defendants' request for testimony concerning each Auto Dealer's "policies, procedures, and practices for *creation and maintenance*" of a closed set of documents and data, including an explanation for the absence of data,  *see* Revised Notice, Topic 5 (emphasis added), is plainly within the scope of Rule 26.

33

Moreover, it is plainly reasonable for Defendants to seek testimony concerning the significant temporal gaps and other deficiencies in Auto Dealers' productions of documents and data. *See, e.g.*, *Ruiz-Bueno v. Scott*, No. 2:12–cv–0809, 2013 WL 6055402, at *1–2 (S.D. Ohio, Nov. 15, 2013) (finding such lines of questioning permissible where it "may aid a party in the preparation or presentation of his case" or where "a party's efforts to comply with proper discovery requests are reasonably drawn into question").[9] Auto Dealers assert claims for thousands of transactions for which they have provided no data at all, or only partial or inaccurate data or documents. *See supra* Section I.C. Given these deficiencies, Defendants must be permitted to inquire into the existence of other documents or data, which may be the sole evidence underlying Auto Dealers' claims.

Auto Dealers' assertion that Topic 5 requires their designees to "survey everyone in the dealership—from clerical employees to managers—who touche[d] these documents to determine what they do with them," *see* Mem. at 21, is patently absurd. Rule 30(b)(6) plainly requires testimony only about information reasonably known to the entity, and courts in this circuit have rejected unrealistic readings of Rule 30(b)(6) topics similar to Auto Dealers', holding that topics just like this are "reasonably particularized." *See, e.g.*, *Emon v. State Farm Mut. Auto. Ins. Co.*, No. 05-72638, 2007 WL 216138, at *1 (E.D. Mich. Jan. 26, 2007) (rejecting objection to topic covering "*documents, policies, procedure*, emails, . . . and other written documents" (emphasis added)); *Patterson v. N. Cent. Tel. Co-op. Corp.*, No. 2:11–0115, 2013 WL 5236645, at *4 (M.D.

---

[9] *See also Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 232 (E.D.N.Y. 2007); *McNearney v. Washington Dep't of Corr.*, No. C11–5930 RBL/KLS, 2012 WL 3155099, at *6 (W.D. Wash. Aug. 2, 2012); *S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11–0884 JB/WDS, 2012 WL 3656454, *32 (D.N.M. Aug. 9, 2012) (permitting such discovery).

Tenn. Sept. 17, 2013) (rejecting objection to topic covering "[a]ll facts and information about

NCTC's *policies, practices and procedures* for investigating [complaints]") (emphasis added).

     F.     **Topic No. 6: "Your organizational structure, any purchases or sales of Your business, mergers, acquisitions, bankruptcy or other cessation of business operations, that resulted in You gaining or losing any claims that You purport to assert in this litigation."**

Plaintiffs' challenge to this topic fails to acknowledge that this topic is expressly limited to

such purchases, sales, mergers, etc. "*that resulted in You gaining or losing any claims that You

purport to assert in this litigation*." *See* Mem. at 22 (emphasis added).  Auto Dealers have no basis

to object to this topic.

Whether Auto Dealers actually own the claims they assert in this litigation is undeniably

relevant both to their standing to bring individual claims and their ability to represent the putative

class.  *See, e.g.*, *Taylor v. KeyCorp*, 680 F.3d 609, 615 (6th Cir. 2012).  Each Auto Dealer should

easily be able to determine whether it engaged in a transaction in which it either acquired or

disposed of rights with respect to the claims at issue in this litigation.  Nor does the existence of

interrogatories related to this topic preclude questions at a deposition.  *See Bailey v. Kentucky

Cmty.*, No. 5:14-CV-143-TBR-LLK, 2015 WL 4886089, at *2 (W.D. Ky. Aug. 17, 2015)

(rejecting the argument that using a deposition to confirm interrogatory answers is unreasonably

cumulative, holding that if "any discovery seeking confirming or contradicting evidence should be

viewed as unreasonably cumulative and duplicative[,] . . . no litigant could ever revisit a topic in

discovery"); *see also Great Am. Ins. Co. of N.Y.*, 251 F.R.D. at 541.

     G.     **Topic Nos. 7 and 8: "Your competitors, including but not limited to their locations, businesses, pricing of new vehicles, and market share" and "Your knowledge of the marketplace for new vehicles, including price trends for such products during the relevant time period."**

Auto Dealers object to these topics on the grounds that information on Auto Dealers'

competitors and marketplace is irrelevant and unduly burdensome, and assert that their own DMS

data somehow provide all the information relevant to this litigation.  *See* Mem. at 23–25.  Once again, their objections are baseless.

Competition with other auto dealers is a key factor in setting prices and is highly relevant to the individual claims raised by Auto Dealers as well as to the issue of class certification.  *See In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09–MD–2090 ADM/AJB, 2012 WL 3031085, at *10 (D. Minn. July 25, 2012), *aff'd*, 752 F.3d 728 (8th Cir. 2014) (refusing to certify a class of retailers in an antitrust action brought against wholesalers because there were too many individualized factors affecting pricing, including the "local competitive market" and "proximity to [a] strong local competitor").  While Auto Dealers' own data may provide some insight into their own pricing practices, their data are incomplete and say nothing at all in any event about how their prices may have been affected by external market forces, including competition from nearby dealers.

Auto Dealers' arguments that these topics would require a witness be prepared to testify to "the pricing of every vehicle" sold by "each of its competitors" and an interview of "each and every employee over the past two decades," *see* Mem. at 24–25, are, on their face, absurd.  These topics simply seek general information *known to the Auto Dealer* about who its competitors are, where they are located, what their market share is, how they price their vehicles, and the marketplace in which they acquire and sell new vehicles.  It is inconceivable that these Dealers do not have management personnel who, with little or no additional preparation, know enough about their own marketplace to answer any questions within the scope of these topics or else (if true) state that such information is not known by the organization.

**REDACTED**

H.     **Topic No. 9: "Your purchases of new vehicles from any OEM or vehicle distributor," including subparts.**

Topic 9, seeks basic (who, what, and how) information about Auto Dealers' purchases of the vehicles on which they base their claims, information critical to assessing the fact and amount of any overcharge allegedly passed on to the Auto Dealer.

*First*, Defendants seek information on "the person(s) and/or entities principally responsible for negotiating vehicle purchases on Your behalf." Revised Notice, Topic 9(a). Auto Dealers' offer to provide by interrogatory response "the individual *now* employed at the dealership who was the principal individual responsible for the purchases of new vehicles during the class period," Mem. at 28 (emphasis added), is unacceptable. The person principally responsible for vehicle purchasing *today* likely did not have that role throughout the class period, and Defendants are appropriately seeking the identity of each such person. Auto Dealers have steadfastly refused to identify the persons responsible during the class period for vehicle purchases, and Defendants have separately moved to compel them to do so. *See* Defs.' Mot. To Compel Auto Dealers To Answer DENSO's Interrogatory No. 4 (12-cv-00102, ECF No. 396).

*Second*, Defendants seek testimony about "the factors that affected the Dealer Plaintiff's ultimate costs of acquiring vehicles, such as discounts, incentives, floor plan support, allowances, rebates, refunds, and holdback offered or paid by an OEM or distributor." Revised Notice, Topic 9(b). No prior rulings by the Court preclude discovery on this topic via a Rule 30(b)(6) deposition. Moreover, the Special Master granted Defendants' motion to depose certain non-party Auto Dealers on this topic. *See* November 2015 Order. Even with respect to document discovery, the Special Master explicitly ruled that Auto Dealers must produce documents relating to "the value of any trade-in-allowance, and monetary incentives, discounts and rebates." October 2014 Order at 2. These are precisely the subjects on which Topic 9(b) seeks deposition testimony. Floor plan

**REDACTED**

support and holdback both qualify as monetary incentives from the OEM to the dealer, and no prior ruling by the Special Master forecloses examination at a deposition on these matters.

*Third*, Defendants' Revised Notice requests testimony on the "volume of purchase, *to the extent not evidenced in the data or documents*." *See* Revised Notice, Topic 9(c) (emphasis added). Auto Dealers cannot explain how testimony about a Dealer's *knowledge* about vehicle purchases to the extent the Dealer has no data or documents reflecting those purchases could possibly "expand discovery beyond what the parties agreed [on]." *See* Mem. at 27. Their related objection that asking an Auto Dealer about its knowledge about vehicle purchases not reflected in data or documents requires "Dealerships to seek to find information and documents *not produced to Defendants*," *id.* (emphasis added), is equally absurd. If such documents or data exist, they should have already been produced to Defendants; if the Dealer has knowledge about facts not reflected in existing documents or data, then Defendants are entitled to discover it.

*Fourth,* Auto Dealers should require little or no preparation to testify about their "purchasing process." *See* Revised Notice, Topic 9(d). Auto Dealers' objections to this subtopic again misstate the Special Master's ruling in the October 2014 Order regarding "purchasing strategies." *See* Mem. at 27. In fact, Auto Dealers responded to Sumitomo's Interrogatory No. 12, which asked them to ███████████████████████████████ new vehicles. *See* Ex. P, Dealership Pls.' Responses to Sumitomo's First Set of Interrogatories at 19–36 (Nov. 4, 2013). And the Special Master, in the same October 2014 Order, ruled that Auto Dealers must produce the documents they relied on in responding to this interrogatory. October 2014 Order at 3. Their claim that a ruling concerning production of documents regarding purchasing *strategies* forecloses deposition questioning on their interrogatory answers and documents they have produced concerning their purchasing *processes* is meritless.

*Finally*, Topic 9(e) seeks testimony concerning Auto Dealers' "*knowledge* of similarities or differences" between [their] purchases and purchase processes and those of other automotive dealerships." Revised Notice, Topic 9(e) (emphasis added). As with Topics 7 and 8, Auto Dealers are required to testify only to the extent of their knowledge. *Obviously* no Dealer would be required by the Federal Rules to obtain knowledge it does not have by "interviewing every other dealership," as Auto Dealers absurdly suggest. *See* Mem. at 27. If information within the scope of this topic is not known by or reasonably available to the Auto Dealer entity, the designated witness can so testify.

**I.   Topic No. 10:  "The terms of any agreements with any OEM(s),  if any, that influenced, governed, or controlled Your purchasing process; the incentives, rebates, refunds, holdback, reserve, allowances, and floor plan support offered or paid to You by an OEM or distributor; and Your pricing and/or sale of vehicles to customers."**

Again, no prior Court Order forecloses Defendants' right to seek Auto Dealer testimony on this topic. The October 2014 Order denied a motion to compel production of Auto Dealers' "franchise agreements" *without prejudice* and provided that Defendants could revisit the issue at a later date. *See* October 2014 Order at 3. Separately, the Special Master *did* order Auto Dealers to produce documents that formed the basis of their response to Sumitomo Interrogatory No. 12, which explained Auto Dealers' purchasing processes by referencing Auto Dealers' contractual arrangements with automobile manufacturers. *See, e.g.*, Ex. P at 20 (asserting that the prices at which Apex Motor Company "procures . . . cars" are set by contracts with OEMs that are non-negotiable). The Special Master ruled that any agreement on which an Auto Dealer relied in its response to Sumitomo Interrogatory 12 was relevant and discoverable. *See* October 2014 Order at 3. To the extent Auto Dealers' agreements with OEMs or distributors impact "incentives, rebates, holdbacks, reserves, allowances and floor plan support," or Auto Dealers' "pricing and/or

sale of vehicles to customers," such information is plainly relevant to the key issues in this litigation and discoverable in a Rule 30(b)(6) deposition.

      **J.**      **Topic Nos. 11 and 12: "Your sales and leases of new vehicles," including subparts, and "Your pricing of sales and leases of new vehicles," including subparts.**

All of the claims by Auto Dealers and End Payors and the defenses thereto in this litigation turn on Auto Dealers' sales and leases of new vehicles. Nothing within the scope of Topics 11 and 12 was prohibited by the October 2014 Order. First, Topic 11(e), which seeks "costs associated with selling or leasing new vehicles," is not impacted at all by the Special Master's order denying discovery of "budgets and cost guidelines," contrary to Auto Dealers' assertion. *See* Mem. at 31. Obviously, actual costs associated with the sales or leases of vehicles are different than cost guidelines and budgets. Similarly, "financial documents" such as "profit and loss statements" and "general ledgers" are different than financing offered to customers on specific vehicles and an Auto Dealer's profits on the sale of such products. *Compare* Mem. at 31, *with* Revised Notice, Topics 12(h) & 11(d). Moreover, the October 2014 Order held that document discovery concerning incentives is relevant and required Auto Dealers to produce documents reflecting incentives. October 2014 Order at 2. Obviously, that ruling does not foreclose deposition testimony concerning "incentives" and "rebates."

Auto Dealers' objection to providing testimony about trade-ins, *see* Mem. at 30–33, is inexplicable. The credit for any trade-in associated with the purchase or lease of a new vehicle is one of a number of key terms that Auto Dealers negotiate with consumers that determines the ultimate economic outcome of the transaction. Ex. L ¶ 6; *supra* Section I.B. Indeed, the Special Master expressly ordered Auto Dealers to produce documents on "trade-in allowance." *See* October 2014 Order at 2. Defendants additionally emphasized the importance of understanding how trade-in credits were calculated in determining whether any alleged overcharge was passed on

40

**REDACTED**

to End Payors in their motion for leave to depose certain non-party Auto Dealers, which the

Special Master granted. *See* Defs.' Mot. For Leave to Depose Non-Party Automobile Dealers

From Which End-Payor Plaintiffs Purchased Vehicles at 17 (12-cv-00103, ECF No. 371);

November 2015 Order.

Nor is there anything duplicative about these topics. The transactional data Auto Dealers

produced do not begin to answer the question of *"how"* the Dealer calculates trade-in credits or the

impact that such negotiations have on the overall purchase or lease transaction. Moreover, Auto

Dealers' argument ignores the basic fact that most Auto Dealers have no data at all regarding most

of the alleged class period. Defendants seek testimony on the "make, model, and year" of new cars

sold and leases, for example, but only to the extent that this information is "not evidenced in the

data or documents [the Auto Dealer] produced." Revised Notice, Topic 11(b). Similarly, before

Auto Dealers filed the instant motion, Defendants had offered to omit subtopics 11(c) (make,

model, year of new cars sold) and 11(d) (revenue, profit margins, profits on new cars sold), for any

Auto Dealer who "represents in a verified interrogatory response that it does not know and cannot

ascertain this information for any time periods during the alleged class period for which it has not

produced DMS data." *See* Revised Notice, Topic 11(c)–(d ). Auto Dealers rejected that offer.

Likewise, as with their arguments concerning portions of Topics 7, 8, and 9, Auto Dealers'

argument that they cannot be required to testify to their "knowledge of similarities or differences"

between them and other auto dealers is meritless. Either they have such knowledge or they don't.

    **K.**     **Topic No. 13: "Your DMS provider(s) and a description of the data any DMS
    provider maintained, the periods for which any DMS provider maintained
    data, and the extent to which any data maintained by a DMS provider may be
    accessible to the Dealer Plaintiff or otherwise from the DMS provider."**

Auto Dealers' objections to Topic 13 are both incomprehensible and hypocritical.

Defendants' Revised Notice seeks testimony from *Auto Dealers* about the data their DMS provider

maintained and whether the data are "accessible *to the Dealer Plaintiff* or otherwise."  Obviously,

asking each Auto Dealer about its DMS data cannot (reasonably) be interpreted as an effort to

"circumvent Dealership Plaintiffs' counsel and improperly contact Dealership Plaintiffs' DMS

providers . . . ."  *See* Mem. at 41.  Moreover, Auto Dealers previously filed—and prevailed—on a

Motion to Quash subpoenas to their DMS providers, demanding that Defendants instead "deal

with the named plaintiffs" and not their DMS Providers, about their DMS data.  *See* Dealership

Pls.' Mot. To Quash at 1 (12-cv-00102, ECF No. 342).  Having made and prevailed on the

argument that Defendants had to ask the "named plaintiffs" directly about their DMS data, Auto

Dealers cannot now object to questions directed to "the named plaintiffs" about their DMS data.

Indeed, Auto Dealers previously insisted that the DMS data *belongs to them*, and that any

discovery concerning these data be directed solely to Auto Dealers, comparing DMS data

maintained by a third-party DMS provider to emails in Outlook.  *Id.* at 5.  Now, however, Auto

Dealers assert that no questions should be put to Auto Dealers *at all* because "there is no indication

that a Dealership would have the detailed information Defendants seek" about its DMS data.

Mem. at 43.  Auto Dealers cannot have it both ways—Defendants are entitled to discover whatever

the Auto Dealers know about their DMS and other data.

> **L.      Topic No. 14:  "The facts, issues, and circumstances of any other class actions
> in which You have participated involving Your purchase or sale of new
> vehicles (including the front and/or back end of the transaction), including the
> nature of the claims and defenses, and the disposition of the action."**

Each Auto Dealer must show that its claims are typical of those of the many thousands of

fellow auto dealers whose interests they seek to represent and that each Auto Dealer is capable of

"fairly and adequately protect[ing] the interests" of their fellow auto dealers were a class to be

certified.  Fed. R. Civ. P. 23(a).  To the extent any of them has been previously involved in a class

action, the nature of such cases and any determinations that were made about adequacy or

**REDACTED**

typicality could well be relevant to class certification issues here.  Auto Dealers' deficient interrogatory responses in the *Anti-Vibrational Rubber Parts* case, *see* Mem. at 44, barely begin to address these issues.  Not only did Dealers arbitrarily limit their responses to class actions occurring during the proposed class period here, but their substantive response was stunningly vague—Auto Dealers failed to identify *which* class representatives were involved in prior class action litigation, stating only that "certain Plaintiffs" had been so involved.  *See* Mem. at 44 & Ex. 12.

Auto Dealers' assertion that "[o]nly an attorney could provide a comprehensive explanation" in response to any questions on this topic is preposterous, as is their assertion that any inquiry into an Auto Dealers' prior litigation history "would clearly impinge on attorney-client privilege."  *See* Mem. at 44–45.  Nothing in Defendants' Revised Notice requires the "comprehensive explanation" that Auto Dealers decry, and the law is clear that factual and historical information about prior litigation that is *known to a party* is not privileged.

> **M.**    **Topic No. 15:  For each Auto Dealer, "The [identified] transactions and related documents, data, and records."**

Defendants' Revised Notice will not require Auto Dealers to prepare testimony on "thousands of individual transactions," as Auto Dealers claim.  *See* Mem. at 13; *see also id.* at 15, 19–20, 36.  Rather, Defendants have identified about two dozen specific transactions that they are asking Auto Dealers' designees to be prepared to discuss.  Nor do Defendants expect "Plaintiffs to commit this information to memory."  *See id.* at 46–47.  Rather, Defendants' inquiry on these transactions will be guided by the deal files for these transactions, which Auto Dealers (true to form) have refused to produce.  *See* Ex. Q, Automobile Dealer Pls. Responses to Certain Defs.' Requests for Prod. (Nov. 16, 2015).  Obviously, each Auto Dealer can avoid having to

"memorize" any of the relevant facts by simply producing these two dozen files and bringing them to the deposition.

Defendants identified the specific transactions in Topic 15 based upon Auto Dealers' DMS data as transactions particularly relevant to the issues in this case. The information Defendants seek is necessary to understand the Auto Dealer's purchase process and the actual prices they paid for the vehicles as well as sales process and the actual sales or lease price paid by the end payor. Precisely the types of information sought by this testimony—*i.e.*, context, details, and prices for carefully selected sample transactions—have been critical to courts' rigorous analysis and denials of class certification motions in similar contexts. *See, e.g.*, *Robinson*, 387 F.3d at 423 n.25 (relying on a "helpful real-life example of a bottom line negotiation" in the purchase of a specific car to demonstrate the lack of an overcharge, and ultimately denying class certification). Thus, Auto Dealers' attempt to minimize the importance of this information, by claiming that "the details of individual transactions are of little probative value," Mem. at 47, is simply wrong.

## CONCLUSION

For the foregoing reasons, Auto Dealers' motion for a protective order should be denied.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

December 11, 2015          By:   */s/ Steven F. Cherry*
                                 Steven F. Cherry
                                 David P. Donovan
                                 Patrick J. Carome
                                 Brian C. Smith
                                 Dyanne Griffith
                                 WILMER CUTLER PICKERING
                                  HALE AND DORR LLP

44

1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
patrick.carome@wilmerhale.com
brian.smith@wilmerhale.com
dyanne.griffith@wilmerhale.com

*Attorneys for Defendants DENSO Corporation
and DENSO International America, Inc.*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Tel.: (248) 372-8252
Fax: (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International
America, Inc.*
SQUIRE PATTON BOGGS (US) LLP

December 11, 2015            By:   */s/ Barry A. Pupkin* (w/consent)
                                  Barry A. Pupkin
                                  Iain R. McPhie
                                  Jeremy W. Dutra
                                  SQUIRE PATTON BOGGS (US) LLP
                                  2550 M Street, N.W.
                                  Washington, DC 20037
                                  Tel: (202) 626-6600
                                  Fax: (202) 626-6780
                                  Barry.Pupkin@squirepb.com
                                  Iain.McPhie@squirepb.com
                                  Jeremy.Dutra@squirepb.com

*Counsel for Aisan Industry Co., Ltd., Aisan
Corporation of America, Franklin Precision
Industry, Inc. and Hyundam Industrial Co., Ltd.*

45

**REDACTED**

COVINGTON & BURLING LLP

December 11, 2015        By:    */s/ Anita F. Stork* (w/consent)
Anita F. Stork
Gretchen Hoff Varner
Cortlin H. Lannin
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

Michael J. Fanelli
Ashley E. Bass
COVINGTON & BURLING LLP
One CityCenter
850 10th St., NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Fax: (202) 662-6291
Mfanelli@cov.com

*/s/ Maureen T. Taylor* (w/consent)
Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
BROOKS WILKINS SHARKEY & TURCO
PLLC
401 Old South Woodward, Suite 400
Birmingham, MI  48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Alps Electric Co., Ltd.;*
*Alps Electric (North America), Inc.; and Alps*
*Automotive, Inc.*

WEIL, GOTSHAL & MANGES LLP

December 11, 2015        By:    */s/ Steven A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
Kajetan Rozga
WEIL, GOTSHAL & MANGES LLP

46

767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
kajetan.rozga@weil.com

*/s/  Frederick R. Juckniess* (w/consent)
Frederick R. Juckniess
SCHIFF HARDIN LLP
350 South Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1504
fjuckniess@schiffhardin.com

*Attorneys for Defendants Bridgestone
Corporation and Bridgestone APM Company*


WEIL, GOTSHAL & MANGES LLP

December 11, 2015            By:    */s/ Steven A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

*/s/ Fred K. Herrmann* (w/consent)
Fred K. Herrmann
Joanne G. Swanson
Matthew L. Powell
KERR RUSSELL & WEBER PLC
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
Fax (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Calsonic Kansei Corporation and
CalsonicKansei North America, Inc. in* Radiators

47

*and* ATF Warmers *actions*

*/s/ Steven A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

*/s/ Michael A. Cox* (w/consent)
Michael A. Cox
THE MIKE COX LAW FIRM, PLLC
17430 Laurel Park Drive North, Suite 120 E
Livonia, MI 48152
Telephone:  (734) 591-4002
mc@mikecoxlaw.com

*Attorneys for Calsonic Kansei Corporation and CalsonicKansei North America, Inc. in the* Air Conditioning Systems *actions*

WARNER NORCROSS & JUDD LLP

December 11, 2015            By:   */s/ William R. Jansen* (w/consent)
William R. Jansen (P36688)
Michael G. Brady (P57331)
Amanda M. Fielder (P70180)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
Phone: 248-784-5000
wjansen@wnj.com
mbrady@wnj.com
afielder@wnj.com

Michael Martinez
Steven Kowal
Lauren Norris
Lauren Salins
K&L GATES LLP
70 W. Madison St., Suite 3100

**REDACTED**

Chicago, IL 60602
Phone: 312-807-4404
Fax: 312-827-8116
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.norris@klgates.com
lauren.salins@klgates.com

*Counsel for Chiyoda Manufacturing*
*Corporation and Chiyoda USA Corporation*


CALFEE, HALTER & GRISWOLD LLP

December 11, 2015          By:   */s/ Ronald M. McMillan* (w/consent)
                                 John J. Eklund (OH 0010895)
                                 Maura L. Hughes (OH 0061929)
                                 Ronald M. McMillan (OH 0072437)
                                 Alexander B. Reich (OH 0084869)
                                 CALFEE, HALTER & GRISWOLD LLP
                                 The Calfee Building
                                 1405 East Sixth Street
                                 Cleveland, OH 44114-1607
                                 (216) 622-8200 (Phone)
                                 (216) 241-0816 (Fax)
                                 jeklund@calfee.com
                                 mhughes@calfee.com
                                 rmcmillan@calfee.com
                                 areich@calfee.com

                                 *Attorneys for Defendant Continental Automotive*
                                 *Systems, Inc. and Continental Automotive*
                                 *Electronics, LLC*


SIMPSON THACHER & BARTLETT LLP

December 11, 2015          By:   /s/ Matthew J. Reilly (w/consent)
                                 Matthew J. Reilly
                                 Abram J. Ellis
                                 SIMPSON THACHER & BARTLETT LLP
                                 900 G Street, N.W.
                                 Washington, D.C. 20001
                                 Tel.: (202) 636-5500
                                 Fax: (202) 636-5502
                                 matt.reilly@stblaw.com

aellis@stblaw.com

George S. Wang
Shannon K. McGovern
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Diamond Electric Mfg.
Co., Ltd. and Diamond Electric Mfg. Corp. in*
Ignition Coils *actions*


LANE POWELL PC


*/s/ Larry S. Gangnes* (w/consent)

December 11, 2015                By:    Larry S. Gangnes
                                       LANE POWELL PC
                                       1420 Fifth Ave., Suite 4200
                                       P.O. Box 91302
                                       Seattle, WA 98111-9402
                                       Tel.: (206) 223-7000
                                       Fax: (206) 223-7107
                                       gangnesl@lanepowell.com

                                       Craig D. Bachman
                                       Kenneth R. Davis II
                                       Darin M. Sands
                                       Masayuki Yamaguchi
                                       Peter D. Hawkes
                                       LANE POWELL PC
                                       601 SW Second Ave., Suite 2100
                                       Portland, OR 97204-3158
                                       Tel.: (503) 778-2100
                                       Fax: (503) 778-2200
                                       bachmanc@lanepowell.com
                                       davisk@lanepowell.com
                                       sandsd@lanepowell.com
                                       yamaguchim@lanepowell.com
                                       hawkesp@lanepowell.com

                                       Richard D. Visio (P30246)

50

**REDACTED**

Ronald S. Nixon (P57117)
KEMP KLEIN LAW FIRM
201 W. Big Beaver, Suite 600
Troy, MI 48084
Tel.: (248) 528-1111
Fax: (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric Co.,*
*Ltd. and American Furukawa, Inc.*


PORTER WRIGHT MORRIS & ARTHUR LLP

*/s/ Donald M. Barnes (w/consent)*

December 11, 2015          By:   Donald M. Barnes
Molly S. Crabtree
Jay L. Levine
Christopher C. Yook
PORTER WRIGHT MORRIS & ARTHUR LLP
1900 K Street, NW, Ste. 1110
Washington, DC 20006
Tel.: (202) 778-3054
Fax: (202) 778-3063
dbarnes@porterwright.com
mcrabtree@porterwright.com
jlevine@porterwright.com
cyook@porterwright.com

*Attorneys for Defendants G.S. Electech, Inc.,*
*G.S.W. Manufacturing, Inc., and G.S. Wiring*
*Systems, Inc.*


SHEARMAN & STERLING LLP

December 11, 2015          By:   */s/ Heather L. Kafele (w/consent)*
Heather L. Kafele
SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, Ste. 900
Washington, DC 20004
Phone:  (202) 508-8000
Fax:  (202) 508-8100
hkafele@shearman.com

Elan DiMaio
Hugh C. Martin
SHEARMAN & STERLING LLP
599 Lexington Avenue
Phone:  (212) 848-4000
Fax:  (212) 848-7179
elan.dimaio@shearman.com
hugh.martin@shearman.com

*Attorney for Defendants JTEKT Corporation and JTEKT North America Corporation, formerly d/b/a Koyo Corporation of U.S.A.*

COVINGTON & BURLING LLP

December 11, 2015                    By:    */s/ Bruce A. Baird*  (with consent)
Bruce A. Baird
Sarah L. Wilson
Michael A. Fanelli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone:  (202) 662-6000
Fax: (202) 662-6291
bbaird@cov.com
swilson@cov.com
mfanelli@cov.com

Anita F. Stork
COVINGTON & BURLING LLP
One Front Street
35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

BROOKS WILKINS SHARKEY & TURCO PLLC

Maureen T. Taylor
BROOKS WILKINS SHARKEY & TURCO PLLC
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com

*Attorneys for Defendant Keihin North America, Inc.*

**REDACTED**

ARNOLD & PORTER LLP

December 11, 2015                 By:    */s/ Franklin R. Liss* (w/consent)
                                        Franklin R. Liss
                                        Barbara H. Wootton
                                        Danielle M. Garten
                                        ARNOLD & PORTER LLP
                                        555 Twelfth Street NW
                                        Washington, DC 20004
                                        Tel: (202) 942-5969
                                        Fax: (202) 942-5999
                                        frank.liss@aporter.com
                                        barbara.wootton@aporter.com
                                        danielle.garten@aporter.com

                                        */s/ Howard B. Iwrey* (w/consent)
                                        Howard B. Iwrey (P39635)
                                        Brian M. Moore (P58584)
                                        DYKEMA GOSSETT PLLC
                                        39577 Woodward Ave., Suite 300
                                        Bloomfield Hills, MI 48304
                                        Tel: (248) 203-0700
                                        Fax: (248) 203-0763
                                        hiwrey@dykema.com
                                        bmoore@dykema.com

                                        *Counsel for Defendants Koito Manufacturing Co.,*
                                        *Ltd. and North American Lighting, Inc. in*
                                        Lamps/Ballasts *actions*

O'MELVENY & MYERS LLP

December 11, 2015                 By:    */s/ Michael F. Tubach* (w/consent)
                                        Michael F. Tubach
                                        O'MELVENY & MYERS LLP
                                        Two Embarcadero Center, 28th Floor
                                        San Francisco, CA 94111
                                        Tel.: (415) 984-8700
                                        Fax: (415) 984-8701
                                        Mtubach@omm.com

                                        Michael R. Turco (P48705)
                                        BROOKS WILKINS SHARKEY & TURCO
                                        PLLC

**REDACTED**

401 South Old Woodward, Suite 400
Birmingham, MI 48009
Tel.: (248) 971-1713
Fax: (248) 971-1801
turco@bwst-law.com

*Attorneys for Defendants Leoni Wiring Systems,*
*Inc. and Leonische Holding, Inc.*

GIBSON, DUNN & CRUTCHER LLP

December 11, 2015          By:     */s/  George A. Nicoud* (w/consent)
                                   George A. Nicoud III
                                   Austin Schwing
                                   Caeli A. Higney
                                   Brandon W. Halter
                                   GIBSON, DUNN & CRUTCHER LLP
                                   555 Mission Street
                                   San Francisco, CA 94105-0921
                                   Tel.:  (415) 393-8200
                                   Fax:  (415) 393-8306
                                   TNicoud@gibsondunn.com
                                   ASchwing@gibsondunn.com
                                   CHigney@gibsondunn.com
                                   BHalter@gibsondunn.com

                                   *Counsel for Defendants Mitsuba Corporation and*
                                   *American Mitsuba Corporation*

JENNER & BLOCK LLP

December 11, 2015          By:     */s/ Terrance J. Truax* (w/consent)
                                   Terrence J. Truax
                                   Charles B. Sklarsky
                                   Michael T. Brody
                                   Gabriel A. Fuentes
                                   Daniel T. Fenske
                                   JENNER & BLOCK LLP
                                   353 N. Clark Street
                                   Chicago, IL 60654-3456
                                   ttruax@jenner.com
                                   csklarsky@jenner.com
                                   mbrody@jenner.com

**REDACTED**

gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
Jamie J. Janisch
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374
gaugust@zacfirm.com
jjanisch@zacfirm.com

*Counsel for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US Holdings,
Inc., and Mitsubishi Electric Automotive America,
Inc.*


CLEARY GOTTLIEB STEEN & HAMILTON
LLP

December 11, 2015             By:   */s/ Jeremy Calsyn* (w/consent)
                                    Jeremy Calsyn (DC Bar #467737)
                                    Steven J. Kaiser (DC Bar #454251)
                                    Teale Toweill (DC Bar #996061)
                                    Carl Lawrence Malm (DC Bar #1104489)
                                    CLEARY GOTTLIEB STEEN & HAMILTON
                                    LLP
                                    2000 Pennsylvania Avenue, NW
                                    Washington, DC 20006
                                    (202) 974-1500 (Phone)
                                    (202) 974-1999 (Facsimile)
                                    jcalsyn@cgsh.com
                                    skaiser@cgsh.com
                                    ttoweill@cgsh.com
                                    lmalm@cgsh.com

                                    *Counsel for Defendants NSK Ltd. and NSK
                                    Americas, Inc.*


WINSTON & STRAWN LLP

December 11, 2015             By:   */s/ Jeffrey L. Kessler* (w/consent)
                                    A. Paul Victor
                                    Jeffrey L. Kessler
                                    Jeffrey J. Amato

**REDACTED**

Molly M. Donovan
Elizabeth A. Cate
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
pvictor@winston.com
jkessler@winston.com
mmdonovan@winston.com
jamato@winston.com
ecate@winston.com

Fred K. Herrmann (P49519)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Attorneys for Defendants NTN Corporation and
NTN USA Corporation*


ALLEN & OVERY LLP

December 11, 2015          By:   */s/ John Roberti* (w/consent)
                                 John Roberti
                                 Matthew R. Boucher
                                 ALLEN & OVERY LLP
                                 1101 New York Avenue NW
                                 Washington, D.C. 20005
                                 202-683-3800
                                 john.roberti@allenovery.com
                                 matthew.boucher@allenovery.com

                                 Michael S. Feldberg
                                 ALLEN & OVERY LLP
                                 1221 Avenue of the Americas
                                 New York, NY 10020
                                 212-610-6360
                                 michael.feldberg@allenovery.com

                                 William R. Jansen (P36688)
                                 Michael G. Brady (P57331)
                                 WARNER NORCROSS & JUDD LLP

**REDACTED**

2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Robert Bosch LLC and Robert Bosch GmbH*

WILMER CUTLER PICKERING
 HALE AND DORR LLP

December 11, 2015          By:    */s/ Mark Ford* (w/consent)
Mark Ford
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6423
Fax: (617) 526-5000
mark.ford@wilmerhale.com

*Attorney for Defendant Schaeffler Group USA Inc.*

REED SMITH LLP

December 11, 2015          By:    */s/ Debra H. Dermody* (w/consent)
Debra H. Dermody
Michelle A. Mantine
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: (412) 288-3302/4268
Fax: (412) 288-3063
ddermody@reedsmith.com
mmantine@reedsmith.com

*/s/ Howard B. Iwrey* (w/consent)
Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304

57

Tel: (248) 203-0526
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendant SKF USA Inc. in* Bearings *actions*


SIMPSON THACHER & BARTLETT LLP

December 11, 2015                    By:     */s/ Matthew J. Reilly* (w/consent)
                                            Matthew J. Reilly
                                            Abram J. Ellis
                                            David T. Shogren
                                            SIMPSON THACHER & BARTLETT LLP
                                            900 G Street, N.W.
                                            Washington, D.C. 20001
                                            Tel.: (202) 636-5500
                                            Fax: (202) 636-5502
                                            matt.reilly@stblaw.com
                                            aellis@stblaw.com
                                            dshogren@stblaw.com

                                            George S. Wang
                                            Shannon K. McGovern
                                            SIMPSON THACHER & BARTLETT LLP
                                            425 Lexington Avenue
                                            New York, N.Y. 10017
                                            Tel: (212) 455-2000
                                            Fax: (212) 455-2502
                                            gwang@stblaw.com
                                            smcgovern@stblaw.com

                                            *Attorneys for Defendants Stanley Electric Co.,
                                            Ltd., Stanley Electric U.S. Co., Inc., and II Stanley
                                            Co., Inc. in* HID Ballasts/Automotive Lamps
                                            *actions*

58

**REDACTED**

MORGAN LEWIS & BOCKIUS LLP

December 11, 2015             By:    */s/ J. Clayton Everett, Jr.* (w/consent)
                                    J. Clayton Everett, Jr.
                                    MORGAN LEWIS & BOCKIUS LLP
                                    1111 Pennsylvania Avenue, NW
                                    Washington, DC  20004
                                    Telephone:  (202) 739-3000
                                    Facsimile:  (202) 739-3001
                                    jeverett@morganlewis.com

                                    *Counsel for Defendants Sumitomo Riko Company
                                    Limited and DTR Industries, Inc.*

                                    SCHIFF HARDIN LLP

December 11, 2015             By:    */s/ Robert J. Wierenga* (w/consent)
                                    Robert J. Wierenga (P59785)
                                    Suzanne L. Wahl (P71364)
                                    SCHIFF HARDIN LLP
                                    340 S. Main Street, Suite 210
                                    Ann Arbor, MI  48104
                                    734-222-1500
                                    Fax: (734) 222-1501
                                    rwierenga@schiffhardin.com
                                    swahl@schiffhardin.com

                                    David M. Zinn
                                    John E. Schmidtlein
                                    Samuel Bryant Davidoff
                                    WILLIAMS & CONNOLLY LLP
                                    725 Twelfth Street, N.W.
                                    Washington, DC 20005
                                    202-434-5000
                                    Fax: 202-434-5029
                                    dzinn@wc.com
                                    jschmidtlein@wc.com
                                    sdavidoff@wc.com

                                    *Counsel for Defendants Takata Corporation and
                                    TK Holdings Inc.*

                                    SIDLEY AUSTIN LLP

December 11, 2015             By:    */s/ David C. Giardina* (w/consent)
                                    David C. Giardina

**REDACTED**

Courtney A. Hoffmann
SIDLEY AUSTIN LLP
One S. Dearborn St.
Chicago, IL 60603
Tel.: (312) 853-7000
Fax: (312) 853-7036
dgiardina@sidley.com
choffmann@sidley.com

Bradley J. Schram (MI Bar # P26337)
HERTZ SCHRAM PC
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
Tel.: (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Defendants Toyo Tire & Rubber Co.,
Ltd., Toyo Tire North America Manufacturing
Inc., Toyo Tire North America OE Sales LLC, and
Toyo Automotive Parts (USA), Inc.*

BAKER BOTTS L.L.P.

December 11, 2015                 By:    */s/ Randall J. Turk* (w/consent)
                                         Randall J. Turk
                                         John Taladay
                                         Mark Miller
                                         Heather Souder Choi
                                         Sterling A. Marchand
                                         BAKER BOTTS L.L.P.
                                         1299 Pennsylvania Avenue., NW
                                         Washington, D.C. 20004-2400
                                         Phone: 202.639.7700
                                         Fax: 202.639.7890
                                         randy.turk@bakerbotts.com
                                         john.taladay@bakerbotts.com
                                         mark.miller@bakerbotts.com
                                         heather.choi@bakerbotts.com

*Counsel for Defendants Toyoda Gosei Co., Ltd.,
Toyoda Gosei North America Corp., and TG
Missouri Corp.*

60

**REDACTED**

BUTZEL LONG

December 11, 2015     By:   */s/ Sheldon H. Klein* (w/consent)
Sheldon H. Klein (P41062)
David F. DuMouchel (P25658)
BUTZEL LONG
150 West Jefferson, Suite 100
Detroit, MI 48226
Tel.: (313) 225-7000
Fax: (313) 225-7080
sklein@butzel.com
dumouchd@butzel.com

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Tel.: (202) 663-7820
Fax: (202) 663-7849
TMiller@bakerandmiller.com

*Attorneys for Defendants TRAM, Inc. and
Tokai Rika Co., Ltd.*

ARNOLD & PORTER LLP

December 11, 2015     By:   */s/ James L. Cooper* (w/consent)
James L. Cooper
Adam Pergament
Danielle Garten
ARNOLD & PORTER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5586
Facsimile: (202) 942-5999
James.Cooper@aporter.com
Adam.Pergament@aporter.com
Danielle.Garten@aporter.com

*Attorneys for Defendants Yamashita Rubber Co.,
Ltd. and YUSA Corporation*

**REDACTED**

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2015, I caused the foregoing **DEFENDANTS'**

**OPPOSITION TO DEALERSHIP PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**,

and supporting memorandum of law, to be electronically filed with the Clerk of the Court using the

CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven F. Cherry*
Steven F. Cherry
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com

*Counsel for DENSO Corporation and DENSO*
*International America, Inc.*