# EXHIBIT C

**From:** Cherry, Steven
**Sent:** Monday, November 23, 2015 12:57 PM
**To:** tasen@cuneolaw.com
**Cc:** Carome, Patrick; Donovan, David P; Griffith, Dyanne; bherrington@barrettlawgroup.com; sraiter@larsonking.com; Don Barrett; Jon Cuneo; Vicky Romanenko; Evelyn Li
**Subject:** FW: ADPs 30(b)(6) Notices


Counsel,

Below are Defendants' responses to the proposals you sent last night.

- **Topic #3**: Defendants will agree to omit this topic to the extent that any ADP has confirmed in a verified interrogatory response that the records are authentic and fall within the business records exception to hearsay in Rule 803.  We understand that ADPs reserve their other objections. Please see below for our revised proposed language.

Whether the invoices, OEM reports, DMS (or equivalent) data, and OEM portal documents that You have produced in this Litigation, and any documents on which you relied in responding to any of Defendants' interrogatories were routinely made and kept in the ordinary course of a regularly-conducted business activity, at or near the time of the events they record, by a person or persons with knowledge, or from information transmitted by a person with knowledge, and who reported such knowledge in the regular course of business. <u>Note that Defendants agree to omit this topic to the extent that the relevant Dealer Plaintiff confirms in a verified Interrogatory Response at least seven days prior to the deposition that invoices, OEM reports, DMS (or equivalent) data, and OEM portal documents that it has produced in this Litigation, including any documents on which it relied in responding to any of Defendants' interrogatories, are authentic and satisfy the business records exception set forth in Rule 803(6).  Such Interrogatory Response may state that the Dealer Plaintiff reserves any other objections.</u>

- **Topic #4**: Defendants expect that these issues will be primarily resolved informally by letter correspondence consistent with how Defendants have answered plaintiffs' questions about Defendants' data.  However, Defendants reserve their right to ask about transactional data in a deposition to the extent our questions are not fully resolved by informal discovery.  Defendants will further agree to provide notice of the topics we intend to ask any Dealer Plaintiff with respect to transactional data at least seven days before the deposition.

- **Topic #5**: This proposal is not acceptable to Defendants.

- **Topic #6**: This proposal is acceptable to Defendants if Plaintiffs will agree to provide a witness to testify to the matters set forth in Plaintiffs' proposal as well as bankruptcy proceedings and cessation of business.  Please see below proposed revised language for the deposition notice:

Your organizational structure, any purchases or sales of Your business, mergers, acquisitions, bankruptcy or other cessation of business operations, that resulted in You gaining or losing any claims that You purport to assert in this litigation.

- **Topic #9(a)**: This proposal is acceptable to Defendants if it is not limited to current employees; it should include employees for the entire class period alleged.

- **Topic #9(b)**: This proposal is not acceptable to Defendants.  The meaning of "applied" is not clear in this context.  In addition, floor plan support and allowances should be included.

1

- **Topic #9(c):** This proposal is not acceptable to Defendants.  To the extent that any Dealer Plaintiff cannot answer this question more specifically, we anticipate that it may only be able to provide "general" information as compared to other years for which it produced data.  We do not believe this requires us to revise the proposed language.

- **Topic #9(d):** This proposal is not acceptable to Defendants.  To the extent that any Dealer Plaintiff cannot answer this question more specifically, we anticipate that it may only be able to provide a "general" explanation of the purchasing process.  We do not believe this requires us to revise the proposed language.

- **Topic #9(e):** This is acceptable to Defendants if Dealership Plaintiffs also provide an explanation of those similarities/differences (*i.e.*, do not just provide a yes or no answer).  Below is Defendants' proposed language:

*Whether You knew of similarities or differences in Your purchasing processes and those of other new vehicle dealerships and, if so, an explanation of those similarities and differences.*

Regards,


**Steven F. Cherry | WilmerHale**
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6321 (t)
+1 202 663 6363 (f)
steven.cherry@wilmerhale.com

**Please consider the environment before printing this email.**

---

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

---

**From:** Taylor Asen [mailto:tasen@cuneolaw.com]
**Sent:** Sunday, November 22, 2015 5:54 PM
**To:** Cherry, Steven; Carome, Patrick; Donovan, David P; Griffith, Dyanne
**Cc:** Brian K. Herrington; Shawn Raiter; 'Don BarrettPA'; Jon Cuneo; Vicky Romanenko; Evelyn Li
**Subject:** ADPs 30(b)(6) Notices

Counsel,

Below are several proposed compromises from Auto Dealer Plaintiffs on several of the topics in Defendants most recent 30(b)(6) Notices. If Defendants are interested in discussing any of these compromises further, we ask that you let us know by noon EST. Please note that all of the below proposals are subject to and presented without waiver of our objections, including relevance.

----

**Topic 3:**

*Whether the invoices, OEM reports, DMS (or equivalent) data, and OEM portal documents that You have produced in this Litigation, and any documents on which you relied in responding to any of Defendants'*

2

*interrogatories were routinely made and kept in the ordinary course of a regularly-conducted business activity, at or near the time of the events they record, by a person or persons with knowledge, or from information transmitted by a person with knowledge, and who reported such knowledge in the regular course of business.<u>  Note that Defendants agree to omit this topic to the extent that a Dealer Plaintiff  stipulates to the admissibility of the invoices, OEM reports, DMS (or equivalent) data, and OEM portal documents that Dealership Plaintiffs have produced in this Litigation, including any documents on which they relied in responding to any of Defendants' interrogatories, and represent that these documents are authentic and satisfy the business records exception set forth in Rule 803(6) in a verified Interrogatory Response at least seven days prior to the deposition.</u>*

Proposal: ADPs will agree to an interrogatory, confirming that the records are authentic and created or obtained in the ordinary course of business, and are not hearsay, with the understanding that our clients do not themselves create or host many of these materials, such as the portal materials.  ADPs reserve their objections on issues other than authenticity and non-hearsay/business records status, including relevance, competency and materiality, as well as on substantive issues of whether these documents prove Defendants' position or should be considered in the litigation.

**Topic 4:**

*The transactional purchase, sales, and cost data (including DMS data) You have produced.*

Proposal: As currently phrased, this topic is far too broad and impossible to prepare for.  ADPs would agree to answer data questions by letter, on the condition that Defendants remove this topic from the Notices.  That would be most efficient and consistent with how ADPs and Defendants have dealt with questions about Defendants' data.

**Topic 5:**

*Your policies, procedures, and practices for creation and maintenance of invoices, deal files, DMS or equivalent electronic data, OEM reports, OEM portal documents, and data and/or documents reflecting incentive payments and other monies, credits, or offsets received from OEMs (e.g., incentives, rebates, holdback, reserve, and/or other discounts) in connection with the purchase or sale of new vehicles, and an explanation of any gaps or absences in Your production of same.*

Proposal: To the extent there is a valid reason to believe, with regard to a specific Dealer,  that a document that should have been produced has not been produced because of lack of preservation where there should have been preservation, ADPs would agree to provide an explanation of the reason for gaps or absences in that Dealer's production.  This topic would not be included in all Dealers' depositions and would only be included on a Dealer-by-Dealer basis, to the extent a showing is made that there is a good faith reason to believe that the Dealer failed to preserve one of the documents it agreed to produce, to the extent it was supposed to preserve such documents.

**Topic 6:**

*Your organizational structure, the makes of vehicles sold, products and services offered in connection with the sale of new vehicles, and any changes over time, including as a result of mergers, acquisitions, liquidation or winding down of Your business, and the disposition of any major assets (including in bankruptcy or other cessation of business operations) that resulted in the transfer of any claims the Dealer Plaintiff purports to assert in this litigation.*

3

Proposal: Plaintiffs will agree to provide information about purchases and sales of their businesses and portions of their businesses, and mergers, sufficient to explain whether they gained or lost their claims with regard to certain brands in such transactions.

**Topic 9:**

*Your purchases of new vehicles from any OEM or vehicle distributor, including:*

>   *(a)    the person(s) and/or entities principally responsible for negotiating vehicle purchases on Your behalf;*
>
>   *(b)    the factors that affected the Dealer Plaintiff's ultimate costs of acquiring vehicles, such as discounts, incentives, floor plan support, allowances, rebates, refunds, and holdback offered or paid by an OEM or distributor;*
>
>   *(c)    the volume of purchases, to the extent not evidenced in the data or documents You produced;*
>
>   *(d)    a description of Your purchasing process; and*
>
>   *(e)    Your knowledge of similarities or differences between Your purchases and purchasing process and those of other automotive dealerships.*

Proposal: ADPs are willing to provide the following:

1)   Interrogatory response stating the individuals now employed at the dealership who were the principal individual(s) responsible for the purchases of new vehicles during the class period;

2)   Items applied to the price paid for a new vehicle such as discounts, monetary incentives, rebates, refunds, and holdback, to the extent that they are applied;

3)   Generally speaking, to the extent the dealership knows, how the volumes of new vehicles purchased during the portion of the production period not covered by the data or documents produced compared to the volumes of new vehicle purchases covered by the data and the documents produced;

4)   Explanation of the general steps of the purchasing process;

5)   Whether the dealership knew of similarities or differences in its purchasing processes and those of other new vehicle dealerships.

Taylor Asen, Esq.
Cuneo Gilbert & LaDuca LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 929.258.7815
Fax: 202.789.1813

The information contained in this message may be attorney-client or work-product privileged and should be treated as confidential information intended only for the use of the individual or entity named above. If the

reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail, destroying the original message and any copies.