**REDACTED**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00203 |
| In Re: Fuel Senders | : | 2:12-cv-00303 |
| In Re: Heater Control Panels | : | 2:12-cv-00403 |
| In Re: Alternators | : | 2:13-cv-00703 |
| In Re: Windshield Wiper Systems | : | 2:13-cv-00903 |
| In Re: Radiators | : | 2:13-cv-01003 |
| In Re: Starters | : | 2:13-cv-01103 |
| In Re: Ignition Coils | : | 2:13-cv-01403 |
| In Re: Motor Generators | : | 2:13-cv-01503 |
| In Re: HID Ballasts | : | 2:13-cv-01703 |
| In Re: Inverters | : | 2:13-cv-01803 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02203 |
| In Re: Power Window Motors | : | 2:13-cv-02303 |
| In Re: Automatic Fluid Transmission Warmers | : : | 2:13-cv-02403 2:13-cv-02503 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02703 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02803 |
| In Re: Windshield Washer Systems | : | 2:15-cv-03003 |
| In Re: Spark Plugs | : : : | |
| THIS DOCUMENT RELATES TO: DEALERSHIP ACTIONS | : : | **[FILED UNDER SEAL – HIGHLY CONFIDENTIAL]** |

# AUTOMOTIVE DEALER PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CONSOLIDATE CLAIMS AND AMEND COMPLAINTS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

REDACTED

**PLEASE TAKE NOTICE** that as soon thereafter as it may be heard before the Honorable Marianne O. Battani, Automotive Dealer Plaintiffs ("ADP" or "Plaintiffs") will and do hereby respectfully move the Court for an order:

1. Consolidating claims in the ADP actions in the following cases:

   (a) *In Re: Instrument Panel Clusters*, Case 2:12-cv-00203;

   (b) *In Re: Fuel Senders*, Case 2:12-cv-00303;

   (c) *In Re: Heater Control Panels*, Case 2:12-cv-00403;

   (d) *In Re: Alternators*, Case 2:13-cv-00703;

   (e) *In Re: Windshield Wiper Systems*, Case 2:13-cv-00903;

   (f) *In Re: Radiators*, Case 2:13-cv-01003;

   (g) *In Re: Starters*, Case 2:13-cv-01103;

   (h) *In Re: Ignition Coils*, Case 2:13-cv-01403;

   (i) *In Re: Motor Generators*, Case 2:13-cv-01503;

   (j) *In Re: HID Ballasts*, Case 2:13-cv-01703;

   (k) *In Re: Inverters*, Case 2:13-cv-01803;

   (l) *In Re: Fuel Injection Systems*, Case 2:13-cv-02203;

   (m) *In Re: Power Window Motors*, Case 2:13-cv-02303;

   (n) *In Re: Automatic Fluid Transmission Warmers*, Case 2:13-cv-02403;

**REDACTED**

(o)     *In Re: Valve Timing Control Devices*, Case 2:13-cv-02503;

(p)     *In Re: Air Conditioning Systems*, Case 2:13-cv-02703;

(q)     *In Re: Windshield Washer Systems*, Case 2:13-cv-02803; and

(r)     *In Re: Spark Plugs*, Case 2:15-cv-03003 (collectively, with other cases, "Relevant Cases").

against the following defendants (by defendant group):

(a)     DENSO Corp., DENSO International America, Inc., DENSO International Korea Corp., DENSO Korea Automotive Corp., DENSO Products & Services Americas, ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., ASMO Manufacturing, Inc., and ASMO North Carolina Inc. (collectively, "DENSO");

(b)     Aisan Industry Co., Ltd., Aisan Corp. of America, Franklin Precision Industry, Inc., and Hyundam Industrial Co., Ltd. (collectively, "AISAN");

(c)     Aisin Seiki Co., Ltd. and Aisin Automotive Casting, LLC (collectively, "AISIN SEIKI");

(d)     Alps Automotive, Inc., Alps Electric (North America), Inc., and Alps Electric Co., Ltd. (collectively, "ALPS");

(e)     Calsonic Kansei Corp. and Calsonic Kansei North America, Inc. (collectively, "CALSONIC");

(f)     Continental Automotive Systems, Inc., Continental Automotive Electronics, LLC, and Continental Automotive Korea Ltd. (collectively, "CONTINENTAL");

(g)     Delphi Automotive LLP and Korea Delphi Automotive Systems Corp. (collectively, "DELPHI");

**REDACTED**

 (h) Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corp. (collectively, "DIAMOND");

 (i) Keihin Corp. and Keihin North America, Inc. (collectively, "KEIHIN");

 (j) Koito Manufacturing Co., Ltd. and North American Lighting, Inc. (collectively, "KOITO");

 (k) MAHLE Behr GmbH & Co. KG and MAHLE Behr USA Inc. (collectively, "MAHLE BEHR");

 (l) Mikuni America Corp. ("MIKUNI");

 (m) Mitsuba Corp. and American Mitsuba Corp. (collectively, "MITSUBA");

 (n) Mitsubishi Electric Corp., Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively, "MELCO");

 (o) Mitsubishi Heavy Industries, Ltd., Mitsubishi Heavy Industries America, Inc., and Mitsubishi Heavy Industries Climate Control, Inc. (collectively, "MITSUBISHI HEAVY");

 (p) NGK Spark Plugs (U.S.A.) Holding, Inc., NGK Spark Plugs (USA) Inc., NGK Spark Plugs Co. Ltd., and NTK Technologies, Inc. (collectively, "NGK");

 (q) Robert Bosch LLC and Robert Bosch GmbH (collectively, "BOSCH");

 (r) Sanden International (U.S.A.) Inc. ("SANDEN");

 (s) Showa Denko K.K. and Showa Aluminum Corp. of America (collectively, "SHOWA DENKO");

 (t) Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc. collectively ("STANLEY");

REDACTED

    (u)    Tokai Rika Co., Ltd. and TRAM, Inc. (collectively, "TOKAI RIKA");

    (v)    Toyo Denso Co. Ltd. and Weastec, Inc. (collectively, "TOYO DENSO"); and

    (w)    Valeo Japan Co., Ltd., Valeo Inc., Valeo Electrical Systems, Inc., and Valeo Climate Control Corp. (collectively, "VALEO") (collectively, "defendants").

2.    Granting Plaintiffs leave to file a consolidated amended class action complaint ("CAC") alleging claims against all defendants identified, *supra*, for having engaged in a conspiracy to unlawfully fix and artificially raise the prices of automotive parts sold in the United States and elsewhere as set forth in the Proposed CAC submitted with this Motion. *See* Ex. A (ADPs' Proposed CAC).

DENSO is currently named as a defendant in all of the Relevant Cases. Plaintiffs' Proposed CAC alleges an international price-fixing, bid rigging, and market allocation conspiracy coordinated by DENSO. In addition to DENSO, participants in the unlawful conspiracy included many of the largest automotive parts suppliers in the world. Defendants' unlawful conduct resulted in artificially inflated prices for automobiles from and including July 1, 1998 through such time as the anticompetitive effects of the defendants' conduct ceased. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, filings in *In re Automotive Parts Antitrust Litigation* ("*Auto Parts*"), and such other arguments as may be presented to the Court.

REDACTED

In accordance with Local Rule 7.1(a)(1), Plaintiffs have engaged in multiple meet-and-confers with defendants since November 2015 concerning Plaintiffs' intention to file a motion to consolidate the claims in the Relevant Cases. During the course of these meet-and-confers, Plaintiffs shared with defendants a draft of a CAC that is substantively similar to the Proposed CAC, and defendants have not concurred in the relief requested by Plaintiffs.

Date: December 18, 2015        Respectfully submitted,

                                 /s/ Jonathan W. Cuneo

                                 Jonathan W. Cuneo
                                 Joel Davidow
                                 Daniel Cohen
                                 Victoria Romanenko
                                 Evelyn Li
                                 **Cuneo Gilbert & LaDuca, LLP**
                                 507 C Street, N.E.
                                 Washington, DC 20002
                                 Telephone: (202) 789-3960
                                 jonc@cuneolaw.com
                                 joel@cuneolaw.com
                                 danielc@cuneolaw.com
                                 vicky@cuneolaw.com
                                 evelyn@cuneolaw.com

                                 Don Barrett
                                 David McMullan
                                 Brian Herrington
                                 **BARRETT LAW GROUP, P.A.**
                                 P.O. Box 927
                                 404 Court Square
                                 Lexington, MS 39095
                                 Telephone: (662) 834-2488
                                 Facsimile: (662)834-2628

**REDACTED**

dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON · KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone:  (651) 312-6500
Facsimile:  (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for
Dealership Plaintiffs*

Gerard V. Mantese
(Michigan Bar No. P34424)
**Mantese Honigman
and Williamson, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 607-9200
gmantese@manteselaw.com

*Interim Liaison Counsel for Dealership
Plaintiffs*

REDACTED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |

| | | |
|---|---|---|
| In Re: Instrument Panel Clusters | : | 2:12-cv-00203 |
| In Re: Fuel Senders | : | 2:12-cv-00303 |
| In Re: Heater Control Panels | : | 2:12-cv-00403 |
| In Re: Alternators | : | 2:13-cv-00703 |
| In Re: Windshield Wiper Systems | : | 2:13-cv-00903 |
| In Re: Radiators | : | 2:13-cv-01003 |
| In Re: Starters | : | 2:13-cv-01103 |
| In Re: Ignition Coils | : | 2:13-cv-01403 |
| In Re: Motor Generators | : | 2:13-cv-01503 |
| In Re: HID Ballasts | : | 2:13-cv-01703 |
| In Re: Inverters | : | 2:13-cv-01803 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02203 |
| In Re: Power Window Motors | : | 2:13-cv-02303 |
| In Re: Automatic Fluid Transmission Warmers | : | 2:13-cv-02403 2:13-cv-02503 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02703 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02803 |
| In Re: Windshield Washer Systems | : | 2:15-cv-03003 |
| In Re: Spark Plugs | : | |

| | | |
|---|---|---|
| THIS DOCUMENT RELATES TO: DEALERSHIP ACTIONS | : : | |

## AUTOMOTIVE DEALER PLAINTIFFS'
## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO CONSOLIDATE CLAIMS AND AMEND COMPLAINTS

REDACTED

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF THE ISSUES PRESENTED................................................... vii

CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT..................... viii

I. INTRODUCTION.....................................................................................1

II. RELEVANT FACTS ...............................................................................3

III. ARGUMENT ...........................................................................................7

    A. The Court should grant consolidation to further the goal of judicial economy. ....................................................................................... 7

        1. The standard for consolidation is broad and requires that cases simply involve common question of law or fact.....................7

        2. Courts have broad discretion to consolidate cases when a common question of law or fact exists.....................................9

        3. This Court also has broad powers to manage *Auto Parts* per 28 U.S.C. § 1407. .................................................................10

        4. Plaintiffs have met the standards for consolidation. ..............10

        5. The Relevant Cases have characteristics that are amenable to consolidation..........................................................................13

        6. Other factors considered influential in finding in favor of consolidation are present........................................................16

    B. The Court should grant Plaintiffs leave to amend their complaints in the Relevant Cases and to file their Proposed CAC............................ 18

        1. Courts freely grant leave to amend. ........................................19

        2. The standard permitting for amendment is a balancing test of several factors that militates in favor of Plaintiffs amending their complaints. ....................................................................19

        3. Plaintiffs have met the standard for amendment..................200

            a. Amendment would not result in undue prejudice. .........20

            b. There has been no undue delay.......................................21

i

**REDACTED**

          c.    There has been no bad faith. ............................................23

          d.    Amendment would not be futile. ....................................24

  III.  CONCLUSION .........................................................................24

REDACTED

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Advey v. Celotex Corp.,*
   962 F.2d 1177 (9th Cir. 1992) ...............................................................................8

*Bell v. Allstate Life Ins. Co.,*
   160 F.3d 452 (8th Cir. 1998) ...............................................................................19

*Bridgeport Music, Inc. v. Dimension Films,*
   410 F.3d 792 (6th Cir. 2005) ...............................................................................21

*C.T. v. Liberal Sch. Dist.,*
   562 F. Supp. 2d 1324 (D. Kan. 2008)..................................................................16

*Cantrell v. GAF Corp.,*
   999 F.2d 1007 (6th Cir. 1993).............................................................................2, 9

*Chatham Condominium Ass'ns v. Century Village, Inc.,*
   597 F.2d 1002 (5th Cir. 1979) .........................................................................9, 10

*Colvin v. Caruso,*
   605 F.3d 282 (6th Cir. 2010) ...............................................................................19

*EEOC v. Von Maur, Inc.,*
   237 F.R.D. 195 (S.D. Iowa 2006)........................................................................14

*Estes v. Kentucky Utilities Co.,*
   636 F.2d 1131 (6th Cir. 1980) .............................................................................20

*Foman v. Davis,*
   371 U.S. 178 (1962)...........................................................................................2, 19

*Garnett-Bishop v. New York Community Bancorp, Inc.,*
   49 F. Supp. 3d 321 (E.D.N.Y. 2014) ...................................................................18

*Hageman v. Signal L.P. Gas, Inc.,*
   486 F.2d 479 (6th Cir. 1973) ...............................................................................20

**REDACTED**

*Hanes Cos. v. Ronson*,
 712 F. Supp. 1223 (M.D.N.C. 1988) ...................................................................8

*Hayden v. Ford Motor Co.*,
 497 F.2d 1292 (6th Cir. 1974) ...........................................................................20
*Head v. Timken Roller Bearing*,
 486 F.2d 870 (6th Cir. 1980) .............................................................................20

*Hemlock Semiconductor Corp. v. Kyocera Corp.*,
 2015 U.S. Dist. LEXIS 138018 (E.D. Mich. Oct. 9, 2015).................................9

*In re Auto Parts Antitrust Litig.* (*HCP*),
 2014 U.S. Dist. LEXIS 61636 (E.D. Mich. April 30, 2014) ..............................25

*In re Macon Uplands Venture*,
 624 F.2d 26 (5th Cir. 1980) .................................................................................8

*In re Recticel Foam Corp.* (*In re San Juan Dupont Plaza Hotel Fire Litig.*),
 859 F. 2d. 1000 (1st Cir. 1988)..........................................................................10

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
 859 F.2d 1007 (1st Cir. 1998)............................................................................10

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*,
 953 F.2d 162 (4th Cir. 1992) .............................................................................10

*In re Wirebound Boxes Antitrust Litig.*,
 128 F.R.D. 256 (D. Minn. 1989) .................................................................. 13, 14

*Jamieson v. Shaw*,
 772 F.2d 1205 (5th Cir. 1985) ...........................................................................19

*Jet, Inc. v. Sewage Aeration Sys.*,
 165 F.3d 419 (6th Cir. 1999) .............................................................................19

*Johnson v. Celotex Corp.*,
 899 F.2d 1281 (2d Cir. 1990) ............................................................................16

REDACTED

*Katz v. Realty Equities Corp.*,
   521 F.2d 1354 (2d Cir. 1975) ................................................................17

*KFC Corp. v. Kazi*,
   29 F. Supp. 3d 945 (W.D. Ky. 2014) ....................................................17

*Lawson v. Truck Drivers, etc.*,
   698 F.2d 250 (6th Cir. 1983) ................................................................20

*Lloyd v. Industrial Bio-Test Lab., Inc.*,
   454 F. Supp. 807 (S.D.N.Y. 1978) .......................................................15

*Louisiana v. Litton Mortgage Co.*,
   50 F.3d 1298 (5th Cir. 1995) ................................................................24

*Milanese v. Rust-Oleum Corp.*,
   244 F.3d 104 (2d Cir. 2001) .................................................................25

*Mutual Life Insurance Co. v. Hillmon*,
   145 U.S. 285 (1892)................................................................... 2, 8, 16

*Ohio ex rel. Montgomery v. Louis Trauth Dairy*,
   163 F.R.D. 500 (S.D. Ohio 1995)...........................................................9

*Security Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*,
   64 F.3d 1001 (6th Cir. 1995) ................................................................21

*Somers v. Charter Twp. Of Clayton*,
   2014 U.S. Dist. LEXIS 28494 (E.D. Mich. Mar. 6, 2014)......................9

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*,
   775 F. Supp. 759 (D. Del. 1991)...........................................................18

*Werner v. Satterlee, Stephens, Burke & Burke*,
   797 F. Supp. 1196 (S.D.N.Y. 1992) .....................................................15

**Statutes**

15 U.S.C. § 1 note

28 U.S.C. § 1407(a) ......................................................................... 2, 10

**REDACTED**

28 U.S.C. § 1407(a). ..................................................................................3

**Other Authorities**

The Manual for Complex Litigation (Fourth), § 10 ..................................3

**Rules**

Fed. R. Civ. P. 1 ........................................................................................2

Fed. R. Civ. P. 15(a)............................................................................. 2, 17

Fed. R. Civ. P. 16(c)(2)(L) .......................................................................2

Fed. R. Civ. P. 42 ...................................................................................2, 9

Fed. R. Civ. P. 42(a)...................................................................................9

**REDACTED**

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether the Court should consolidate Plaintiffs' claims against defendants in the Relevant Cases because:

   (a)    The claims against each of the defendants in the Relevant Cases present common issues of law and fact such that the criteria of Federal Rule of Civil Procedure ("Rule") 42 are satisfied;

   (b)    No party would suffer undue prejudice from consolidation and amendment; and

   (c)    Consolidation would decrease costs and reduce delay, carry no risk of prejudice to any defendant, and best serve the interests of justice.

2.     Whether the Court should permit the Plaintiffs to amend their complaints in the Relevant Cases by filing the CAC because:

   (a)    The Sixth Circuit has a liberal policy of allowing amendments to complaints;

   (b)    Plaintiffs can plausibly allege that each of the defendants had a conscious commitment to a common scheme to fix the prices of automotive parts sold to Original Equipment Manufacturers ("OEMs"); and

   (c)     There is no prejudice to any defendant by virtue of the proposed consolidation and amendment.

**REDACTED**

## <u>CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT</u>

Fed. R. Civ. P. 1

Fed. R. Civ. P. 15(a)

Fed. R. Civ. P. 16(c)(2)(L)

Fed. R. Civ. P. 42

28 U.S.C. § 1407(a)

*Cantrell v. GAF Corp.*, 999 F.2d 1007 (6th Cir. 1993)

*Foman v. Davis*, 371 U.S. 178 (1962)

*Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285 (1892)

REDACTED

## I.   INTRODUCTION

For many years, defendants in the above-captioned automotive parts cases—led by DENSO, which is named as a defendant in more cases than any other defendant—have maintained that the almost three dozen cases before the Court involving conspiracies to fix the prices of automotive parts sold to OEMs are independent and have nothing to do with each other. Based on the information obtained to date, Plaintiffs now have a good faith basis to allege that DENSO was at the center of a large, multi-part conspiracy, which DENSO carried out with the other defendants who are the subject of this Motion. For this reason, Plaintiffs now bring this Motion to consolidate and to file a CAC with respect to the automotive parts involved in this conspiracy. The interests of justice and judicial economy support this Motion, and the authorities cited herein provide a firm basis for the requested relief. Plaintiffs bring this Motion:

(a)     To consolidate claims asserted in the 18 currently separate automotive parts cases into a single case; and

(b)     To file a CAC alleging a single conspiracy with DENSO at the center.

As alleged in the Proposed CAC filed herewith (Ex. A), DENSO and each co-conspirator named therein conspired to fix, raise, and maintain the prices of certain automotive parts[1] sold to OEMs in the United States and elsewhere. The illegal conspiracy began at least as early as July 1, 1998 and continued until at least February 2011. The unlawful conspiracy largely targeted large Japanese OEMs, such as like Toyota Motor Co., Honda Motor Co., Ltd., Nissan Motor Co., Ltd.,

---

[1] Instrument Panel Clusters ("IPC"), Fuel Senders, Heater Control Panels ("HCP"), Alternators, Windshield Wiper Systems, Radiators, Starters, Ignition Coils, Motor Generators, HID Ballasts, Inverters, Fuel Injection Systems, Power Window Motors, Automatic Fluid Transmission Warmers, Valve Timing Control Devices, Air Conditioning Systems, Windshield Washer Systems, and Spark Plugs.

**REDACTED**

and Fuji Heavy Industries, Ltd. (owner of Subaru). The conspiracy began in Japan, and like a flu spread around the world, adversely affecting other OEMs, including, but not limited to, Ford Motor Co., General Motors Co., FCA US LLC (Chrysler), Volkswagen, Daimler AG, and Bayerische Motoren Werke AG (BMW). The conspiracy was carried out through the same type of conduct, which included at least the following:

(1)    Respecting each co-conspirator's so-called "incumbency" or "commercial rights," referred to as "shōken" in Japanese;

(2)    Refraining from competing for customers;

(3)    Allocating customers;

(4)    Allocating geographic markets;

(5)    Coordinating responses to requests for quotation ("RFQs"); and

(6)    Coordinating responses to requests for price reductions.

Among the reasons why the Plaintiffs were not able to bring this Motion earlier is the fact that defendants, and especially DENSO, control the facts about the automotive parts conspiracy and have fought and substantially delayed disclosure of those facts. One defendant that is the leniency applicant in most of the Relevant Cases dribbled facts out[2]—maintaining the pretense that the coordinated conduct, simultaneously carried out by common means and common actors and involving common victims, was merely an extraordinary coincidence of conspiratorial conduct that just happened to arise and be carried out at the same time. It is now time to penetrate the silos that DENSO and its co-conspirators created as part of their joint defense group strategy to defend these cases. It is time

_____

REDACTED

to provide Plaintiffs—the real victims of this conspiracy—with the opportunity to prove their claims against defendants. It is time to provide the Court with a reasonable and practical means to bring these cases to final resolution. The Motion should be granted because Plaintiffs have met all of the requirements for consolidation and because the Proposed CAC is neither prejudicial nor futile.

All of the goals of this Motion are in accordance with the standards governing these actions. Section 1407 of Title 28 of the United States Code provides that multidistrict litigation should further the "convenience of parties and witnesses and promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Rule 1 also directs courts and parties to work towards the "just, speedy, and inexpensive determination of every action and proceeding." The Manual for Complex Litigation (Fourth), § 10, further provides that:

> Fair and efficient resolution of complex litigation requires at least that . . . the judge and counsel collaborate to develop and carry out a comprehensive plan for the conduct of pretrial and trial proceedings.

Now is the time to carry out these fundamental mandates. Plaintiffs have now developed sufficient information to permit them to plausibly allege the broader conspiracy set forth in the Proposed CAC. The Department of Justice ("DOJ")'s stay of discovery has been lifted, and discovery can proceed, in all of the Relevant Cases that are subject to this Motion.

## II.   RELEVANT FACTS

On February 7, 2012, the United States Judicial Panel on Multidistrict Litigation ("Judicial Panel" or "Panel") transferred actions sharing "factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems" to the Eastern District of Michigan. (12-md-02311, Doc. No. 2). In its transfer order, the Judicial Panel noted that the majority of cases were pending in the Eastern District, as was the first filed action, that several defendants were located in this district, and that a related criminal investigation was underway in this district. (*Id.*) The Panel determined that centralizing litigation in this District would eliminate duplicative discovery, prevent inconsistent pretrial rulings and conserve resources. (*Id.*) After complaints were filed alleging

REDACTED

> conspiracies to fix prices of three additional component parts, the Judicial Panel determined that including all actions in MDL No. 2311 would result in the most efficient handling of the case. ***The Judicial Panel noted the existence of similar conspiracies with overlapping defendants arising from the same government investigation as well as an overlap of parties and counsel.*** The additional component part cases were transferred to this Court for coordinated pretrial proceedings, and In re: Automotive Wire Harness Systems Antitrust Litigation was renamed "In re: Automotive Parts Antitrust Litigation." (Doc. No. 117 in 12-2311). There are now twenty-eight component part cases pending. (*See* Doc. No. 665 in 12-2311).

Opinion and Order Denying Defendants' Collective Motion to Dismiss ACAP's Consolidated Amended Class Action Complaint at 1-2, Case No. 2:12-cv-00201 (*IPC*), ECF No. 86 (Apr. 30, 2014) (emphasis added). There are currently over 30 automotive parts cases pending before this Court.

By this Motion, Plaintiffs seek to consolidate 18 ADP actions that are part of this multidistrict litigation and to file a CAC alleging a single conspiracy. The earliest of the actions subject to this Motion, *IPC*, was filed on January 31, 2012. The latest of the actions subject to this Motion, *Spark Plugs*, was filed on May 22, 2015. None of the Relevant Cases has progressed to the point that consolidation and amendment would be inappropriate or prejudicial. None of the Relevant Cases is subject to the present schedule for class certification motions. Only three of the Relevant Cases—*IPC*, *Fuel Senders*, and *HCP*—have case management orders, and the case management orders in these cases are only initial case management orders setting very basic parameters. None of them set a final date by which proposed amendments to the pleadings are subject to the higher standards of Rule 16 rather than the more liberal standards of Rule 15.

Few of these actions have proceeded to meaningful discovery and, other than the productions of DOJ documents, virtually none of the Relevant Actions filed after *Fuel Senders* has had any discovery take place whatsoever—in part, due to those defendants' refusal to participate in discovery and, in part, due to the stay

4

REDACTED

issued at the request of the DOJ. No depositions have yet been taken of any defendant in *Auto Parts*—let alone, the Relevant Cases.

Throughout this coordinated litigation, defendants have repeatedly sought to perpetuate the myth that all of these cases are separate and independent of each other, even while they controlled all of the facts and information that would have revealed that this was not true. For instance, as illustrated below, defendants made the following statements when Plaintiffs sought to coordinate the cases subject to this MDL to create efficiencies for the parties and the Court:

> This litigation "contains 29 sets of unrelated cases that each involves a unique set of facts, distinct products, different alleged conspiracies, and varying groups of defendants—yet all under the same MDL umbrella."[3]

> "IPC & FS Defendants agree with the arguments . . . in the Wire Harness Products Defendants' Opposition to Certain Plaintiffs' Motion to Coordinate All Actions in MDL 2311[.]"[4]

> "As the Court knows all too well, more than two dozen sets of cases, each involving claims by different sets of direct purchasers, auto dealerships, and end-payor plaintiffs, against different (although in some cases overlapping) defendants, based on different alleged conspiracies involving different products, have now been consolidated into this same MDL."[5]

> "By seeking to group these cases, plaintiffs also gloss over the fact that their complaints each allege a different conspiracy, among different defendants, at different time periods, involving different products."[5]

---

[3] Wire Harness Products Defendants' Opposition to Certain Plaintiffs' Motion to Coordinate All Actions in MDL 2311 at 1, Master File No. 2:12-md-02311, ECF No. 714 (May 27, 2014). DENSO was a signatory to this brief.

[4] IPC and Fuel Senders Defendants' Opposition to Motion for End-Payor Plaintiffs, Auto Dealer Plaintiffs, the State of Florida, and the City of Richmond to Coordinate All Actions in MDL 2311 at 1-2, Master File No. 2:12-md-02311, ECF No. 715 (May 27, 2014). DENSO was a signatory to this brief.

[5] HCP Defendants' Opposition to Certain Plaintiffs' Motion to Coordinate All Actions in MDL 2311 at 1, 3 5, 7, Master File No. 2:12-md-02311, ECF No. 708 (May 27, 2014). DENSO was a signatory to this brief.

**REDACTED**

"The proposal is based on the notion that all of these cases and defendants are similarly situated. There is no factual basis for that premise."[6]

"Each case involves different products and different alleged conspiracies, which took place at varied times and in different contexts and involved different targets and markets."[7]

"The dozens of cases consolidated here should not be thought of as single case just because they have some common plaintiffs and all concern automobile parts."[8]

"Not only do the different cases involve different direct purchaser plaintiffs, different defendants, and different alleged conspiracies with respect to different automobile parts—meaning different actors and alleged conduct regarding different transactions are at issue in each case—but the economic analyses affecting the various automobile parts differ, as well."[9]

" . . . each named plaintiff . . . chose to file a multiplicity of cases against unrelated defendants whose only common connection is that they all manufacture automobile parts."[10]

"The facts, documents, witness testimony, and other issues and considerations differ by each unique product because the conspiracies alleged[ly] differ by product" [sic].[11]

Defendants may argue that this Motion is a repeat of the Motion of ADPs, End-Payor Plaintiffs ("EPPs"), the State of Florida, and the City of Richmond to Coordinate All Actions in MDL 2311, Master File No. 2:12-md-02311, ECF No. 703 (May 9, 2014) ("Motion to Coordinate") previously filed by Plaintiffs to which the memoranda of law quoted above were responding—old wine in new bottles. This is not true because this motion seeks entirely different relief than that sought in the Motion to Coordinate. It is worth observing, however, that at least two

---

[6] *Id.*

[7] *Id.*

[8] Response by Certain Defendants Regarding Plaintiffs' Motion to Coordinate All Actions in MDL 2311 at 2, 11, 12, Master File No. 2:12-md-02311, ECF No. 712 (May 27, 2014). DENSO was a signatory to this brief.

[9] *Id.*

[10] *Id.*

[11] *Id.*

REDACTED

salutary procedures were put in place as a result of the Motion to Coordinate, both of which further the purposes of the present Motion.

*First*, it was largely as a result of the Motion to Coordinate that orders ultimately were entered providing that ADPs and EPPs class representatives would only be deposed once for all cases. These orders recognized that as to those two classes, the relevant conduct by plaintiffs was the same—purchasing and/or leasing new cars with price-fixed automotive parts. *Second*, as a result of the Motion to Coordinate, procedures were put in place to coordinate the massive task of seeking discovery from non-party OEMs. The OEM discovery process was based upon a similar rationale—that the discovery from OEMs was the same and was not differentiated based upon any particular case that is part of this MDL. Those orders, supported by the more complete facts now in possession of the Plaintiffs, laid the groundwork that supports this Motion.

## III.   ARGUMENT

### A.   The Court should grant consolidation to further the goal of judicial economy.

#### 1.   The standard for consolidation is broad and simply requires that cases involve common question of law or fact.

Plaintiffs seek an order joining for all pretrial and trial purposes the claims against defendants set forth in the Proposed CAC (Ex. A). Consolidation provides the Court with a powerful tool to expedite this litigation by drawing together currently separate actions that share common legal and factual questions. This managerial device would assure streamlined litigation of the above-captioned cases, obviating the need for multiple lawsuits and duplicative trials. The articulated standard for consolidating two or more cases is simply that they involve "a common question of law or fact." *Mutual Life Insurance Co. v. Hillmon*, 145

REDACTED

U.S. 285, 286 (1892) (*"Mutual Life"*).[12] This standard is an expansive one, allowing consolidation of a broad range of cases brought in federal court.[13] Common questions of law and fact do not have to predominate; all that is required is that the district court find they exist and that consolidation will prove beneficial.[14]

Furthermore, a common factual issue, such as two lawsuits pending in the same court and brought by the same plaintiff, is a sufficient basis for consolidation if combining the two cases will simplify the litigation process.[15] Especially if the alternative (to dismiss the second lawsuit and require the plaintiff to amend its first complaint to add the dismissed allegations) would be a complicated and unnecessary exercise of form over substance, consolidation is generally preferred.[16] Consolidation would unarguably streamline litigation in *Auto Parts*. All 18 Relevant Cases are pending before this Court, and ADPs have brought an action in each of them.

The purpose of consolidation is to "administer the court's business with expedition and economy while providing justice to the parties."[17] Further, under Rule 1, the Rules should be construed to "administer the court's business with expedition and economy while providing justice to the parties." *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 2015 U.S. Dist. LEXIS 138018, * 2 (E.D.

---

[12] The common question standard has a long history, figuring in such landmark decisions as *Mutual Life*, where the Supreme Court issued an order consolidating three separate lawsuits regarding the death of an insured, because the actions were "of like nature and relative to the same question." The Court justified its decision as one calculated to "avoid unnecessary cost and delay." *Id.* at 292.

[13] *In re Macon Uplands Venture*, 624 F.2d 26, 28 (5th Cir. 1980).

[14] *Hanes Cos. v. Ronson*, 712 F. Supp. 1223, 1230 (M.D.N.C. 1988) ("*Hanes*").

[15] *Id.* (court found consolidation of two cases filed by same plaintiff "enhance[d] efficiency and economy for all concerned").

[16] *Id.*

[17] *Advey v. Celotex Corp.*, 962 F.2d 1177, 1180 (9th Cir. 1992) (internal quotations omitted).

REDACTED

Mich. Oct. 9, 2015). A primary consideration in choosing to consolidate is whether consolidation will serve the interests of justice. *See, e.g.*, *Ohio ex rel. Montgomery v. Louis Trauth Dairy*, 163 F.R.D. 500 (S.D. Ohio 1995) ("*Louis Trauth Dairy*"). In *Louis Trauth Dairy*, the court found that consolidation is appropriate "if the risks of prejudice and confusion are outweighed by other factors including the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources." *Id.* at 503-504.

### 2. Courts have broad discretion to consolidate cases when a common question of law or fact exists.

Courts have broad discretion in determining whether or not consolidation is proper. *Somers v. Charter Twp. Of Clayton*, 2014 U.S. Dist. LEXIS 28494, *15 (E.D. Mich. Mar. 6, 2014). Courts exercising that discretion will seldom be overruled because the decision to consolidate cases will be upheld on appeal unless the court has committed a clear abuse of discretion. *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). S*ee also Chatham Condominium Ass'ns v. Century Village, Inc.*, 597 F.2d 1002, 1013–1014 (5th Cir. 1979) ("*Chatham Condominium*") (decision to consolidate four treble damages antitrust actions against same defendant involving identical questions of fact and law upheld absent claim of prejudice). Abuse of discretion is usually found only when there are insufficient common questions of law or fact. The standard for consolidation is broad, and simply requires that cases involve common questions of law or fact. Rule 42(a) provides:

> Consolidation. If actions before the court involve a common question of law or fact, the court may:
>
> (1) Join for hearing or trial any or all matters at issue in the actions;
> (2) Consolidate the actions; or
> (3) Issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

In deciding whether to consolidate, the Court should consider:

REDACTED

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.*, 999 F.2d at 1011.

### 3.    This Court also has broad powers to manage *Auto Parts* per 28 U.S.C. § 1407.

The aforementioned standards should be viewed through the prism of Section 1407(a) of Title 28 of the United States Code, which provides MDL transferee courts with broad powers to manage the cases before them. "[A] district court needs to have broad discretion in coordinating and administering multi-district litigation." 28 U.S.C. § 1407(a); *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165 (4th Cir. 1992) (*citing In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1019 (1st Cir. 1998). "In multi-party, multi-case litigation, the district court's success is largely dependent on its ability to uncomplicate matters." *In re Recticel Foam Corp.* (*In re San Juan Dupont Plaza Hotel Fire Litig.*), 859 F. 2d. 1000, 1004 (1st Cir. 1988). Consolidation of the Relevant Cases centralized before this Court, all of which involve the price-fixing of automotive parts, would result in more streamlined discovery, class certification, and resolution by way of settlement or trial.

### 4.    Plaintiffs have met the standards for consolidation.

Plaintiffs are asserting the same legal claims based upon the same conduct and seeking the same type of relief against all defendants. In *Chatham Condominium*, the Fifth Circuit upheld the district court's consolidation of four treble damages antitrust actions against the same defendant involving identical questions of fact and law absent claim of prejudice. 597 F.2d at 1013–1014.

**REDACTED**

Among the common issues of fact presented by each of the Relevant Cases subject to this Motion are whether each of the alleged co-conspirators agreed with DENSO to fix the prices of automotive parts sold to OEMs through various means, including:

a.   Respecting each other's "shōken", the so-called "incumbency" or "commercial rights" which entitled certain defendants to have their existing business with certain OEMs protected from competition[18];

b.   Refraining from competing for customers;[19]

c.   Allocating customers;[20]

d.   Allocating geographic markets;[21]



11

**REDACTED**

e.      Coordinating responses to RFQs;[22] and

f.      Coordinating responses to requests for price reductions.[23]

The examples given in the Proposed CAC and in this motion are only the tip of the iceberg, and more than sufficient for the purposes of pleading a claim. ADPs have learned of hundreds more instances of collusion by the defendants that are subject to this motion which are not set forth in the Proposed CAC.

Among the common questions of law presented by each of the Relevant Cases are:

1.      Whether DENSO and its alleged co-conspirators' conduct constitute a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of automotive parts sold in the United States in



REDACTED

> violation of the Sherman Antitrust Act and relevant state competition laws;
>
> 2. Whether DENSO and its alleged co-conspirators' conduct violate relevant state antitrust, unfair competition, and consumer protection laws;
>
> 3. Whether DENSO and its co-conspirators were unjustly enriched as a result of the alleged acts; and
>
> 4. Whether Plaintiffs are entitled to damages as a result of DENSO's and its co-conspirators' conduct.

These common factual and legal issues support consolidation. Further, the Relevant Cases are at a similar stage in the litigation. Other than *IPC*, *Fuel Senders*, and *HCP*, discovery is just beginning in the Relevant Cases. Even as to *IPC*, *Fuel Senders*, and *HCP*, meaningful discovery has not yet begun. No depositions of defendants have been taken in any of these cases, and other than DOJ productions, no defendant has made any substantial production of documents in response to Plaintiffs' discovery requests.

### 5. The Relevant Cases have characteristics that are amenable to consolidation.

The Relevant Cases—and generally, all cases in *Auto Parts*—have five characteristics that courts find amenable to consolidation. ***First***, all Relevant Cases involve ***like claims***. As discussed, *supra*, there are "causes of a like nature, or relative to the same question." *Mutual Life*, 145 U.S. at 292. The allegations in the Relevant Cases all stem from the same DOJ investigation into bid-rigging, price-fixing, and other anti-competitive conduct in the automotive parts industry. Claims arising pursuant to patterns of conduct, such as the ones here, are prototypical candidates for consolidation. *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 256, 259 (D. Minn. 1989) ("*Wirebound Boxes*") (price-fixing cases consolidated).

REDACTED

*Second*, the Relevant Cases have overlapping parties. The presence of overlapping parties in cases enhances the prospects for consolidation, assuming there are other common issues of law, fact, or both. *See EEOC v. Von Maur, Inc.*, 237 F.R.D. 195, 198 (S.D. Iowa 2006) (court consolidated two cases alleging race-based employment discrimination because of overlap in parties, claims and factual basis). Here, DENSO is named as a defendant in each of the 18 Relevant Cases; Mitsuba, in 10 Relevant Cases; MELCO, in eight Relevant Cases; and so on. DENSO is the hub that connects the other defendants together. Plaintiffs note that the presence of different parties does not prevent cases from being properly consolidated.

*Third*, the Relevant Cases involve *similar products*. Consolidation often is an attractive option in cases where there are multiple tort actions with common factual and legal questions, such as the pursuit of an illegal scheme or plan. *See Wirebound Boxes*, 128 F.R.D. at 259 (price-fixing). As stated above, the Relevant Cases all involve automotive parts that are sold to OEMs in the United States and elsewhere. This litigation is reminiscent of *In re Vitamins Antitrust Litigation*, which involved fixing prices and market allocation of multiple vitamin products *and* choline chloride. 209 F.R.D. 251, 254-55 (D.D.C. 2002). There, at class certification, plaintiffs argued the allegations across vitamin product lines in the vitamins products class and of price fixing in the choline chloride class rest on the same legal theories and allegedly arise out of the same respective courses of conduct by the defendants. *Id.* at 260. Defendants contended that the putative classes would be an amalgam of "diverse businesses, facing different competitive environments and paying widely different prices" and class representatives would not have the incentive to prove all of the elements of their claims because the class is "over broad and comprised of multiple conspiracies." *Id.* The court certified the two classes, finding typicality was met because plaintiffs' theory of an overarching

14

REDACTED

conspiracy to fix prices and allocate the markets for vitamin products and choline chloride in violation of antitrust laws was common to all class members. *Id.* at 260.[24] Here, Plaintiffs likewise allege an overarching conspiracy led by DENSO involving multiple automotive parts. The products here are arguably more similar than vitamins and choline chloride, the latter of which is not even a vitamin. Further, Plaintiffs are doing so at the early stages of discovery—before the Court set any class certification briefing schedule in the Relevant Cases.

*Fourth*, there will be substantial *discovery overlap* in the Relevant Cases. Discovery in one case that is applicable to discovery in another case is a practical benefit of consolidation, and a court will consider the usefulness of completed and planned discovery when deciding whether consolidation will expedite the cases without prejudice to the parties. *See Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211–1212 (S.D.N.Y. 1992) (securities violations cases involving same reports and documents). Here, both Plaintiffs and defendants have obviously contemplated discovery overlap. In fact, they have already met-and-conferred on the length of *depositions of witnesses testifying on multiple parts* during deposition protocol negotiations in October and November 2015.

*Finally*, as explained *supra*, none of the Relevant Cases is near trial. Cases at different stages of trial preparedness, generally, are not good candidates for consolidation, particularly if one case is ready for trial and one is not. *See Lloyd v. Industrial Bio-Test Lab., Inc.*, 454 F. Supp. 807, 812 (S.D.N.Y. 1978) (in consolidated securities violations cases, delay as result of consolidation considered minimal, and offset by avoidance of duplicative discovery and trial). Here,

---

[24] *See also In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480 ("The overarching scheme is the linchpin . . . regardless of the product purchased, the market involved or the price ultimately paid. Furthermore, the various products purchased and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provided the cause of action arises from a common wrong.")

REDACTED

Plaintiffs have served comprehensive discovery on defendants in all of the Relevant Cases (though most defendants have not responded thereto), and no depositions have as yet been taken in any of them. There is no question that none of the Relevant Cases are ready for trial. Now is the ideal time to consolidate while the parties are still in the early stages of discovery.

### 6.    Other factors considered influential in finding in favor of consolidation are present.

Furthermore, the factors considered influential in finding in favor of consolidation are met. *First*, consolidation serves the ***interests of justice***. Courts are most likely to approve consolidation when they find that it serves the interests of justice. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990). Here, the efficient resolution of the above-captioned cases through consolidation serves the interests of justice where 38 companies, including most of the defendant parent companies that are the subject of this Motion, and 58 executives, have already been charged in the DOJ's ongoing investigation into the automotive parts industry and have paid a total of more than $2.6 billion in criminal fines.

***Second***, consolidation will lead to ***expeditious and efficient results***. When courts find that consolidation will achieve significant savings of time or avoid serious duplication of effort, they are likely to embrace it. Avoiding delay and expediting the trial process are two factors frequently cited by courts in ordering consolidation. *See Mutual Life*, 145 U.S. at 286.[25] Here, many defendants are named in multiple cases. Consolidation will make case management more efficient. More importantly, DENSO is named as a defendant in all of the Relevant

---

[25] *See also C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1346 (D. Kan. 2008) (considerations of judicial efficiency weighed "overwhelmingly in favor of" consolidation because most evidence in these three cases would be identical, it would be undue burden on witnesses to present same testimony in three separate trials, and it would be "grossly inefficient use of the court's time and jury resources").

**REDACTED**

Cases; Bosch, in five Relevant Cases; Calsonic, in three Relevant Cases; and so on. Plaintiffs should be able to conduct depositions of each defense witness in one deposition related to all parts with which they were involved. Likewise, if the Relevant Cases are consolidated, each defense witness would only have to testify once—instead of once per case.

*Third*, consolidation *conserves resources*. As consolidation economizes both the resources of the parties and of courts, economy is a frequently cited justification for consolidation. *KFC Corp. v. Kazi*, 29 F. Supp. 3d 945, 955 (W.D. Ky. 2014) (consolidation would benefit judicial efficiency when cases arose from same operative facts and none of the parties would be unduly prejudiced). In *Katz v. Realty Equities Corp.*, for example, which featured 17 private Securities Act cases involving five classes, 21 plaintiffs, and 39 defendants before consolidation, the Court emphasized the substantial importance of conservation of resources as justifying its consolidation decision. 521 F.2d 1354, 1358 (2d Cir. 1975). Here, as in *Katz*, the savings resulting from consolidating Plaintiffs' claims in 18 automotive parts cases into one are significant and undeniable. Now that the Court has issued rulings on motions to dismiss in the vast majority of the Relevant Cases, much of the discovery negotiations completed and to be completed in *Wire Harnesses* now must be repeated, on separate tracks, in those cases if there is no consolidation. The parties have recognized the obvious inefficiencies as they agreed on language in all of the deposition protocols in the Relevant Cases that provides the parties should use "best efforts" to avoid multiple depositions of defendant witnesses if they are "likely to be deposed" in connection with

REDACTED

additional cases involving another part.[26] This can best be accomplished here through consolidation with the resulting coordination of discovery.

*Finally*, consolidation *avoids inconsistent results*. In some cases, consolidation is used to combine actions so as to avoid producing inconsistent or conflicting results. The danger of such results and the inequitable treatment they foster when parties are truly similarly situated have led courts, in a range of cases, to consolidate proceedings. *See Garnett-Bishop v. New York Community Bancorp, Inc.*, 49 F. Supp. 3d 321, 327 (E.D.N.Y. 2014) (one of the main considerations in deciding whether to consolidate is risk of inconsistent adjudications of common factual and legal issues).[27] Here, given the large number of Relevant Cases, consolidation ensures that the Court resolves the common questions of law and fact and common legal issues in a consistent and efficient manner. Having identified the common questions of fact and law among the Relevant Cases, *supra*, these factors plausibly favor the decision to consolidate here.

**B.     The Court should grant Plaintiffs leave to amend their complaints in the Relevant Cases and to file their Proposed CAC.**

A party may amend once "as a matter of course" within the time constraints set out by Rule 15(a)(1). After that time, a party may amend its pleading "only with the opposing party's written consent or the court's leave per Rule 15(a)(2). Fed. R. Civ. P. 15(a)(2). Because defendants did not consent to the relief sought by Plaintiffs, Plaintiffs now seek the Court's leave to amend their complaints in the Relevant Cases and to file their Proposed CAC (Ex. A.).

---

[26] *See, e.g.*, Instrument Panel Cluster Deposition Protocol Order at § IV.1, Defendants' Collective Submission of Global Deposition Protocol Disputes at Ex. 2 (*e.g.*, ECF No. 2:12-cv-00200, ECF No. 160-3) ("Defs. Global Br.").

[27] *See also Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991) (two lawsuits alleging various business torts, including fraudulent acquisition of trade secrets, shared same plaintiff, identity of facts, same witnesses and evidence; consolidation found to eliminate the risk of inconsistent results between two proceedings).

REDACTED

### 1. Courts freely grant leave to amend.

Although permission to amend a pleading is not automatic, court approval to amend should be given "freely … when justice so requires." *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("*Foman*") (courts should heed mandate of Rule 15(a) that leave be freely given when justice requires). In *Colvin v. Caruso*, the Sixth Circuit asserted that a motion to amend should be granted unless brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing part, or would be futile. 605 F.3d 282, 294 (6th Cir. 2010). Likewise, in *Jet, Inc. v. Sewage Aeration Sys.*, the Sixth Circuit stated that leave to amend should be freely given because cases should be tried on their merits rather than the technicalities of pleadings. 165 F.3d 419, 425 (6th Cir. 1999) ("*Jet*"). Determining whether to grant leave is an exercise of the court's discretion. *Foman*, 371 U.S. at 182. In exercising its discretion, the court should be guided by the underlying purpose of allowing amendments to facilitate a decision on the merits. *Jet* at 425.

### 2. The standard permitting for amendment is a balancing test of several factors that militates in favor of Plaintiffs amending their complaints.

In determining whether justice requires granting leave to amend, a court should balance the factors set forth by the Supreme Court in *Foman*. *Id.*, 371 U.S. at 182 (courts should freely grant leave to amend, absent specified factors "such as *undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment*, etc.") (emphasis added). Prejudice to the moving party if leave is denied should be considered, even if there is substantial reason to deny leave based on the other factors. *See Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985); *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). Plaintiffs will

REDACTED

discuss all factors, *infra*, except repeated failure to cure deficiencies, which does not apply here.

Much of the Sixth Circuit's balancing of the factors turns on substantial prejudice to the opposing party. *Lawson v. Truck Drivers, etc.*, 698 F.2d 250, 256 (6th Cir. 1983) ("*Lawson*"); *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973); *Head v. Timken Roller Bearing*, 486 F.2d 870 (6th Cir. 1980). "[I]n the absence of substantial prejudice to the opposing party," "[t]his Court, as well as others, has freely allowed the amendment of pleadings . . ." *Lawson*, at 256. "The determination of whether the circumstances of a case are such that justice would require the allowance of an amendment to an answer is left to the sound discretion of the district court, and review of such a decision by the district court is normally limited to the question of whether the district court abused its discretion in allowing the amendment." *Estes v. Kentucky Utilities Co.*, 636 F.2d 1131, 1133 (6th Cir. 1980), *citing Hayden v. Ford Motor Co.*, 497 F.2d 1292 (6th Cir. 1974).

### 3.     Plaintiffs have met the standard for amendment.

#### a.     Amendment would not result in undue prejudice.

One of the key factors considered by a court in ruling on a motion for leave to amend is whether permitting the amendment would result in undue prejudice to the non-moving party. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–331 (1971). Here, while *Wire Harnesses*, *Bearings*, and *Anti-Vibrational Rubber Parts* (cases not subject to this Motion) have been proceeding based on the schedules set by the Court in those cases, the Relevant Cases have been relatively "dormant," as indicated, *supra*. Plaintiffs have not begun meeting-and-conferring on custodians and search terms with defendants in the vast majority of the Relevant Cases or taken any depositions of defendant witnesses in any of them. Additionally, there are no Initial Discovery Plans or Initial Orders in any of these cases except *IPC*, *Fuel Senders*, and *HCP*. Defendants cannot demonstrate any

REDACTED

prejudice justifying the denial of this Motion. In fact, during Plaintiffs' many meet-and-confer sessions with defendants on this Motion, no defendant identified any prejudice, other than the general nature of being a defendant in the Proposed CAC. A defendant's status is no different whether a defendant is in one automotive parts case or in multiple cases, and it is not a basis to deny this Motion. To the extent that any defendant claims any prejudice in opposition to this Motion, Plaintiffs shall respond to those claims in their reply to be filed.

### b.      There has been no undue delay.

Prejudice may result from delay by the movant in requesting leave to amend, but the passage of time alone is usually not enough to deny leave to amend. In most cases, a court will deny leave to amend only if the non-moving party is in fact prejudiced by the delay. *Security Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). *In Bridgeport Music, Inc. v. Dimension Films*, the Sixth Circuit ruled that the defendant would be unfairly prejudiced if required to respond to a distinct new claim with only a few weeks of discovery remaining in the case. 410 F.3d 792, 805–807 (6th Cir. 2005) ("*Bridgeport*"). Unlike *Bridgeport*, however, discovery is in the early stages in the Relevant Cases, and there is no discovery schedule in any of those cases. Undue delay cannot be shown. There are no Rule 16 orders in any of the cases which are the subject of this Motion, no deadlines for the amendments of complaints, and no other scheduling orders in place that would be disturbed if the Motion were to be granted.

Further, since the automotive parts cases began, defendants have routinely and repeatedly advocated before the Court that these cases all involve separate conspiracies and have secured advantageous rulings from the Court on that basis. As a result of the timing of DOJ's announcements of various steps in its investigation such as indictments and guilty pleas and the stay of discovery that

**REDACTED**

was until recently in place, only piecemeal information was being made available to Plaintiffs concerning the massive breadth and scope of the interrelated conspiracy. As a result, only defendants knew the true nature of their unlawful conduct and, until recently, Plaintiffs lacked sufficient information to permit them to allege the facts and claims set forth in the Proposed CAC (Ex. A.). Additionally, as stated, *supra*, one defendant who is the leniency applicant in almost all of the cases at issue in this Motion chose to stagger its cooperation with Plaintiffs to support the joint defense group strategy. It is ADPs' contention that this applicant failed to provide full, timely, and satisfactory cooperation per the Antitrust Criminal Penalty Enhancement and Reform Act, 15 U.S.C. § 1 note ("ACPERA").[28] Moreover, the joint defense group in the Relevant Cases insisted that the conduct alleged in these cases involved separate conspiracies that ***just happened*** to arise during the same time period; involved the same actors; were directed at the same victims; and were carried out in the same way. It also sought to create the misleading impression that these cases are all separate and independent.

Only through painstaking analysis of information provided by certain defendants under the DOJ leniency program, information provided by certain settling defendants, and independent research and analysis have Plaintiffs recently been able to cut through DENSO's and defendants' smokescreen about the ostensible existence of separate conspiracies to allege the single conspiracy set forth in the Proposed CAC (Ex. A.). Because it was the conduct of DENSO and its co-conspirators which first created and concealed the conspiracy, and then misled

---

[28] For example, the leniency applicant's discussion of the collusive *tomoe-kai* meetings (*i.e.*, annual meetings of key officials of three of the top former *keiretsu*-type companies) described in the Proposed CAC – which description is ***not*** based upon information from the leniency applicant -- came many years after these cases commenced, and was cursory and failed to meaningfully describe the relevant conduct.

**REDACTED**

the Plaintiffs about its scope, these defendants should not be permitted to benefit from that conduct and now argue that there has been any undue delay in seeking to amend the complaints in the Relevant Cases.

Further, the goals of Rule 1 would be satisfied if the proposed amendments are permitted because, in many ways, the parties are already proceeding as if the cases were consolidated. For example, as set forth above, depositions of Plaintiffs are being taken by defendants for use in all automotive parts cases because, unlike Direct Purchaser Plaintiffs, their transactions are the same for the purposes of all cases. Likewise, ADPs, other plaintiff groups, individual plaintiffs, and defendants across *Auto Parts* are jointly working together to pursue discovery from nonparty OEMs. The next logical—and just—step is to permit Plaintiffs to be masters of their claims and to allege the overall conspiracy that they believe the facts support so that they may seek recoveries on behalf of the classes.

### c.      There has been no bad faith.

Some courts have denied leave to amend because the amendment is a reassertion of a previously abandoned claim or claims already dismissed. *Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1303–1304 (5th Cir. 1995) (plaintiff's attempt to reassert RICO claim that was abandoned was indicative of bad faith and dilatory motive, and at minimum, was inartful pleading). There is no, nor could any reasonable party suggest the existence of, bad faith or dilatory motive on the part of Plaintiffs. Plaintiffs' goal is to present this case to the Court and a jury that will hear it in the way that most accords with the facts. Plaintiffs have nothing to gain by intentionally delaying bringing this Motion; rather, they have done so in a considered and deliberate manner after ascertaining the information that supports the Motion and the allegations in the Proposed CAC (Ex. A.).

REDACTED

### d. Amendment would not be futile.

Some circuits have denied leave to amend if the amended complaint would not be able to withstand a dispositive motion. *See, e.g., Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Defendants may argue that the proposed amendments are futile because, among other reasons, the DOJ did not charge the defendants with the same conspiracy alleged here. This Court has already rejected that argument when made by defendants in *HCP*, and it should be rejected again for the same reasons:

> The fact that Defendants did not plead guilty to wide-ranging conduct does not limit the civil action. *Id.* at 1011. Relatively few defendants plead guilty to all of the charges against them, and the limitations on government resources may play as much a role in the agreement as the conduct involved. *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664-665 (7th Cir. 2002).

*In re Auto Parts Antitrust Litig.* (*HCP*), 2014 U.S. Dist. LEXIS 61636, * 125 (E.D. Mich. April 30, 2014). Given the size, scope, and complexity of *Auto Parts*, and the number of plea agreements and the amount of criminal fines, amendment would patently serve the ends of justice and efficiency.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Consolidate Claims and Amend Complaints.


Date: December 18, 2015                    Respectfully submitted,


                                           */s/* Jonathan W. Cuneo

                                           Jonathan W. Cuneo
                                           Joel Davidow
                                           Daniel Cohen
                                           Victoria Romanenko
                                           Evelyn Li
                                           **Cuneo Gilbert & LaDuca, LLP**

**REDACTED**

507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON · KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for
Dealership Plaintiffs*

Gerard V. Mantese
(Michigan Bar No. P34424)
**Mantese Honigman
and Williamson, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 607-9200
gmantese@manteselaw.com

25

**REDACTED**

*Interim Liaison Counsel for Dealership Plaintiffs*

**REDACTED**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2015, I caused the foregoing AUTO DEALER PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CONSOLIDATE CLAIMS AND AMEND COMPLAINTS to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
