# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | : | |
| THIS DOCUMENT RELATES TO: | : | |
| All Dealership Actions | : | 2:12-cv-00102 |
| All End-Payor Actions | : | 2:12-cv-00103 |

## NOTICE OF INTENT TO SERVE SUBPOENAS TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

TO: All counsel of record:

Notice is hereby given that defendants Fujikura Ltd. and Fujikura Automotive America LLC intend to subpoena the following to obtain the documents described in the attached subpoenas *duces tecum*:

Faulkner Motors, Inc. - Faulkner Organization
4437 E Street Rd.
Trevose, PA 19053

Sheehy Auto Stores, Inc.
c/o Registered Agent: Business Filings Incorporated
108 West 13th St.
Wilmington, DE 19801

Rosenthal Automotive Organization
Subsidiary of:
Geneva Enterprises, Inc.
c/o Registered Agent: J.H. Griffin
1902 Association Dr.
Reston, VA 20191

Geneva Enterprises, Inc.
Parent of:
Rosenthal Automotive Organization
c/o Registered Agent:  The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

DATED October 16, 2014:                    ARNOLD & PORTER LLP

By  /s/ Michael A. Rubin
James L. Cooper
Michael A. Rubin
Laura Cofer Taylor
Katherine Clemons
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Telephone: (202) 942-5000
Fax: (202) 942-5999
james.cooper@aporter.com
michael.rubin@aporter.com
laura.taylor@aporter.com
katherine.clemons@aporter.com

Joanne Geha Swanson (P33594)
Fred Herrmann (P49519)
Matthew L. Powell (P69186)
KERR, RUSSELL AND WEBER, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Fax: (313) 961-0388
jswanson@kerr-russell.com
fherrmann@kerr-russell.com
mpowell@kerr-russell.com

*Attorneys for Defendants Fujikura Ltd. and
Fujikura Automotive America LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2014, I caused the foregoing **NOTICE OF INTENT TO SERVE SUBPOENAS TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** to be served on the following by e-mail:

| Interim Liaison Counsel for the Direct Purchaser Plaintiffs | |
|---|---|
| David H. Fink<br>Darryl Bressack<br>FINK & ASSOCIATES LAW<br>100 West Long Lake Road, Suite 111<br>Bloomfield Hills, MI 48304<br>dfink@finkandassociateslaw.com<br>dbressack@finkandassociateslaw.com | |
| **Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs** | |
| Steven A. Kanner<br>William H. London<br>Michael E. Moskovitz<br>Michael L. Silverman<br>FREED KANNER LONDON & MILLEN LLC<br>2201 Waukegan Road, Suite 130<br>Bannockburn, IL 60015<br>skanner@fklmlaw.com<br>wlondon@fklmlaw.com<br>mmoskovitz@fklmlaw.com<br>msilverman@fklmlaw.com | Joseph C. Kohn<br>William E. Hoese<br>Douglas A. Abrahams<br>Craig W. Hillwig<br>KOHN, SWIFT & GRAF, P.C.<br>One South Broad Street, Suite 2100<br>Philadelphia, PA 19107<br>jkohn@kohnswift.com<br>whoese@kohnswift.com<br>dabrahams@kohnswift.com<br>chillwig@kohnswift.com |
| Gregory P. Hansel<br>Randall B. Weill<br>Michael S. Smith<br>PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP<br>One City Center<br>PO Box 9546<br>Portland, ME 04112-9546<br>ghansel@preti.com<br>rweill@preti.com<br>msmith@preti.com | Eugene A. Spector<br>William G. Caldes<br>Jonathan M. Jagher<br>Jeffrey L. Spector<br>SPECTOR ROSEMAN KODROFF & WILLIS, P.C.<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>espector@srkw-law.com<br>bcaldes@srkw-law.com<br>jjagher@srkw-law.com<br>jspector@srkw-law.com |
| **Interim Liaison Counsel for Auto Dealer Plaintiffs** | |
| Gerard V. Mantese<br>David Hansma | |

| | |
|---|---|
| Brendan Frey<br>Joshua Lushnat<br>MANTESE HONIGMAN ROSSMAN AND<br>WILLIAMSON, P.C.<br>1361 East Big Beaver Road<br>Troy, MI 48083<br>gmantese@manteselaw.com<br>dhansma@manteselaw.com<br>bfrey@manteselaw.com<br>jlushnat@manteselaw.com | |

| **Interim Co-Lead Class Counsel for Auto- Dealer Plaintiffs** | |
|---|---|
| Don Barrett<br>David McMullan<br>Brian Herrington<br>BARRETT LAW GROUP, P.A.<br>PO Box 927<br>404 Court Square<br>Lexington, MS 39095<br>dbarrett@barrettlawgroup.com<br>bherrington@barrettlawgroup.com<br>dmcmullan@barrettlawgroup.com<br><br>Shawn M. Raiter<br>LARSON • KING, LLP<br>2800 Wells Fargo Place<br>30 East Seventh Street<br>St. Paul, MN 55101<br>sraiter@larsonking.com | Jonathan W. Cuneo<br>Joel Davidow<br>Victoria Romanenko<br>CUNEO GILBERT & LADUCA, LLP<br>507 C Street NE<br>Washington, DC 20002<br>jonc@cuneolaw.com joel@cuneolaw.com<br>vicky@cuneolaw.com<br>joel@cuneolaw.com |

| **Interim Liaison Counsel for End-Payor Plaintiffs** | |
|---|---|
| E. Powell Miller (P39487)<br>Adam Schnatz (P72049)<br>THE MILLER LAW FIRM<br>950 West University Drive, Suite 300<br>Rochester, MI 48307<br>epm@millerlawpc.com<br>aschnatz@millerlawpc.com | |

| **Interim Co-Lead Class Counsel for End-Payor Plaintiffs** | |
|---|---|
| Terrell W. Oxford<br>Warren T. Burns<br>SUSMAN GODFREY LLP<br>901 Main Street, Suite 5100<br>Dallas, TX 75202<br>toxford@susmangodfrey.com | Frank C. Damrell, Jr.<br>Steven N. Williams<br>Adam J. Zapala<br>Elizabeth Tran<br>COTCHETT, PITRE & McCARTHY, LLP<br>San Francisco Airport Office Center |

| | |
|---|---|
| wburns@susmangodfrey.com<br><br>Marc M. Seltzer<br>Steven G. Sklaver<br>SUSMAN GODFREY LLP<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles, CA 90067-6029<br>mseltzer@susmangodfrey.com<br>ssklaver@susmangodfrey.com | 840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>fdamrell@cpmlegal.com<br>swilliams@cpmlegal.com<br>azapala@cmplegal.com<br>etran@cpmlegal.com<br><br>Hollis Salzman<br>Bernard Persky<br>William V. Reiss<br>ROBINS, KAPLAN, MILLER & CIRESI L.L.P.<br>601 Lexington Avenue, Suite 3400<br>New York, NY 10022<br>hsalzman@rkmc.com<br>bpersky@rkmc.com<br>wvreiss@rkmc.com |

**Attorneys for Ford Motor Company**

| | |
|---|---|
| Hector Torres<br>Harold G. Levison<br>Cindy C. Kelly<br>Edward E. McNally<br>Sarah Gibbs Leivick<br>KASOWITZ, BENSON, TORRES & FRIEDMAN LLP<br>1633 Broadway<br>New York, NY 10019<br>htorres@kasowitz.com<br>hlevison@kasowitz.com<br>CKelly@kasowitz.com<br>emcnally@kasowitz.com<br>sleivick@kasowitz.com | Eric J. Pelton (P40635)<br>Theodore R. Opperwall (P31374)<br>Ryan D. Bohannon (P73394)<br>KIENBAUM OPPERWALL HARDY &<br>PELTON, P.L.C.<br>280 North Old Woodward Avenue, Suite 400<br>Birmingham, MI 48009<br>epelton@kohp.com<br>topperwall@kohp.com<br>rbohannon@kohp.com |

**Attorneys for City of Richmond/Public Entity Plaintiffs**

| | |
|---|---|
| Rodger D. Young (P22652)<br>Jaye Quadrozzi (P71646)<br>YOUNG & ASSOCIATES<br>27725 Stansbury Boulevard, Suite 125<br>Farmington Hills, MI 48334<br>efiling@youngpc.com<br><br>Louise H. Renne<br>K. Scott Dickey<br>Steve Cikes<br>RENNE SLOAN HOLTZMAN SAKAI LLP<br>350 Sansome Street, Suite 300<br>San Francisco, CA 94104<br>lrenne@publiclawgroup.com<br>sdickey@publiclawgroup.com<br>scikes@publiclawgroup.com | Robert S. Green<br>James Robert Noblin<br>Lesley E.Weaver<br>GREEN & NOBLIN, P.C.<br>700 Larkspur Landing Circle, Suite 275<br>Larkspur, CA 94393<br>gnecf@classcounsel.ocm<br>lew@classcounsel.com<br><br>Karen L. Morris<br>Patrick F. Morris<br>R. Michael Lindsey<br>MORRIS AND MORRIS LLC<br>4001 Kennett Pike, Suite 300<br>Wilmington, DE 19807<br>kmorris@morrisandmorrislaw.com |

3

| | |
|---|---|
| Charles E. Tompkins<br>WILLIAMS MONTGOMERY & JOHN LTD.<br>233 S. Wacker Drive, Suite 6100<br>Chicago, IL 60606<br>cet@willmont.com | pmorris@morrisandmorrislaw.com<br>rmlindsey@morrisandmorrislaw.com |

**Attorneys for Defendants Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc.; K&S Wiring Systems, Inc.; and Sumitomo Wiring Systems (U.S.A.) Inc.**

| | |
|---|---|
| Marguerite M. Sullivan<br>LATHAM & WATKINS LLP<br>555 Eleventh Street NW, Suite 1000<br>Washington, DC 20004<br>Marguerite.Sullivan@lw.com | Daniel M. Wall<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>dan.wall@lw.com |
| William H. Horton (P31567)<br>GIARMARCO, MULLINS & HORTON, P.C.<br>101 West Big Beaver Road, Tenth Floor<br>Troy, MI 48084-5280<br>bhorton@gmhlaw.com | |

**Attorneys for Defendants Yazaki Corporation and Yazaki North America, Inc.**

| | |
|---|---|
| John M. Majoras<br>Carmen G. McLean<br>Michael R. Shumaker<br>Kristen Lejnieks<br>Tiffany Lipscomb-Jackson<br>JONES DAY<br>51 Louisiana Ave. N.W.<br>Washington, D.C. 20001-2113<br>jmmajoras@jonesday.com<br>cgmclean@jonesday.com<br>mrshumaker@jonesday.com<br>klejnieks@jonesday.com<br>tdlipscombjackson@jonesday.com | Michelle K. Fischer<br>Stephen J. Squeri<br>JONES DAY<br>North Point<br>901 Lakeside Avenue<br>Cleveland, OH 44114<br>mfischer@jonesday.com<br>sjsqueri@jonesday.com |

**Attorneys for Defendants DENSO International America, Inc. and DENSO Corporation**

| | |
|---|---|
| Steven F. Cherry<br>David P. Donovan<br>Brian C. Smith<br>Kurt G. Kastorf<br>WILMER CUTLER PICKERING HALE AND<br>DORR LLP<br>1875 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20006<br>steven.cherry@wilmerhale.com<br>david.donovan@wilmerhale.com<br>brian.smith@wilmerhale.com<br>kurt.kastorf@wilmerhale.com | |

| | |
|---|---|
| **Attorney for Defendant DENSO International America, Inc.** | |
| Steven M. Zarowny (P33362)<br>General Counsel<br>DENSO International America, Inc.<br>24777 Denso Drive<br>Southfield, MI 48033<br>steve_zarowny@denso-diam.com | |
| **Attorneys for Defendants Fujikura Ltd. and Fujikura Automotive America LLC** | |
| James L. Cooper<br>Michael A. Rubin<br>Laura Cofer Taylor<br>Katherine Clemons<br>ARNOLD & PORTER LLP<br>555 Twelfth Street NW<br>Washington, DC 20004<br>james.cooper@aporter.com<br>michael.rubin@aporter.com<br>laura.taylor@aporter.com<br>katherine.clemons@aporter.com | Joanne Geha Swanson (P33594)<br>Fred Herrmann (P49519)<br>Matthew L. Powell (P69186)<br>KERR, RUSSELL AND WEBER, PLC<br>500 Woodward Avenue, Suite 2500<br>Detroit, MI 48226<br>jswanson@kerr-russell.com<br>fherrmann@kerr-russell.com<br>mpowell@kerr-russell.com |
| **Attorneys for Defendants Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.** | |
| David F. DuMouchel (P25658)<br>George B. Donnini (P66793)<br>BUTZEL LONG<br>150 West Jefferson, Suite 100<br>Detroit, MI 48226<br>dumouchd@butzel.com<br>donnini@butzel.com | W. Todd Miller<br>BAKER & MILLER PLLC<br>2401 Pennsylvania Ave., NW, Suite 300<br>Washington, DC 20037<br>TMiller@bakerandmiller.com |
| **Attorneys for Defendants G.S. Electech, Inc.; G.S.W. Manufacturing, Inc.; and G.S. Wiring Systems, Inc.** | |
| Donald M. Barnes<br>Jay L. Levine<br>Salvatore A. Romano<br>John C. Monica<br>Molly S. Crabtree<br>Karri N. Allen<br>PORTER WRIGHT MORRIS & ARTHUR LLP<br>1900 K Street, NW, Suite 1110<br>Washington, DC 20006<br>dbarnes@porterwright.com<br>jlevine@porterwright.com<br>sromano@porterwright.com<br>jmonica@porterwright.com<br>mcrabtree@porterwright.com<br>kallen@porterwright.com | |

| Attorneys for Defendants Leoni Wiring Systems, Inc. and Leonische Holding, Inc. | |
|---|---|
| Michael F. Tubach<br>O'MELVENY & MYERS LLP<br>Two Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>Mtubach@omm.com | Michael R. Turco (P48705)<br>BROOKS WILKINS SHARKEY & TURCO<br>PLLC<br>401 South Old Woodward, Suite 400<br>Birmingham, MI 48009<br>turco@bwst-law.com |

| Attorneys for Defendants Furukawa Electric Co., Ltd. and American Furukawa, Inc. | |
|---|---|
| Larry S. Gangnes<br>LANE POWELL PC<br>1420 Fifth Ave., Suite 4200<br>P.O. Box 91302<br>Seattle, WA 98111-9402<br>gangnesl@lanepowell.com | Craig D. Bachman<br>Kenneth R. Davis II<br>Darin M. Sands<br>Masayuki Yamaguchi<br>Peter D. Hawkes<br>LANE POWELL PC<br>ODS Tower<br>601 SW Second Ave., Suite 2100<br>Portland, OR 97204-3158<br>bachmanc@lanepowell.com<br>davisk@lanepowell.com<br>sandsd@lanepowell.com<br>yamaguchim@lanepowell.com<br>hawkesp@lanepowell.com |
| Richard D. Bisio (P30246)<br>Ronald S. Nixon (P57117)<br>KEMP KLEIN LAW FIRM<br>201 W. Big Beaver, Suite 600<br>Troy, MI 48084<br>richard.bisio@kkue.com<br>ron.nixon@kkue.com | |

Dated: October 16, 2014       By: /s/ Stephanie I. Fine_____
                           Stephanie I. Fine

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re:  Wire Harness Cases |  |
| THIS DOCUMENT RELATES TO: |  |
| All Dealership Actions | 2:12-cv-00102 |
| All End-Payor Actions | 2:12-cv-00103 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

TO:  Faulkner Motors, Inc. - Faulkner Organization
4437 E Street Rd.
Trevose, PA 19053

☒ *Production:*  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

**See Attachment A**

| Place: | Faulkner Motors, Inc. - Faulkner Organization 4437 E Street Rd. Trevose, PA 19053 | Date and Time: | December 1, 2014, 10a.m. |
|---|---|---|---|

☐ *Inspection of Premises:*  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: |  | Date and Time: |  |
|---|---|---|---|

1

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

DATE:

DAVID J. WEAVER, CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Fujikura Ltd. and Fujikura Automotive America LLC, who issues or requests this subpoena, are:

> Michael A. Rubin
> Arnold & Porter LLP
> 555 Twelfth Street, N.W.
> Washington, D.C. 20004
> 202-942-6171
> michael.rubin@aporter.com

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are    $_____    for travel and    $_____    for services for a total of    $_____

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc.:

**(c) Place of Compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where
compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

**ATTACHMENT A**

**DOCUMENT REQUESTS**

**REQUEST NO. 1:**    Data or documents (in the absence of data) sufficient to show the following information for each Automobile purchased by You or on Your behalf:

a.    Seller (*e.g.*, OEM, Auto distributor or dealer, consumer) from whom the Auto was purchased, including name, address, and other identifiers; and

    (1)    Date of purchase;

    (2)    OEM and model, model year, and other identifiers of the Auto, including Vehicle Identification Number ("VIN");

    (3)    If the Auto was used, its mileage and condition when purchased;

    (4)    Terms and conditions of purchase, including but not limited to:

        (a)    Net price paid (before taxes and including currency and exchange rate, if applicable), and any adjustments to purchase price and incentives or allowances issued or applied at any time, including but not limited to, list price, taxes, commissions, rebates, discounts, refunds, or credit for returns;

        (b)    Amount paid at time of purchase, and any remaining balance due, terms of financing, and duration of monthly or installment payments; and

        (c)    Shipping or freight costs, and by whom such costs were paid;

    (5)    "Ship-from" and vendor "pay-to" address(es) from which the Auto and invoice for it were shipped or sent, date(s) the Auto and invoice were shipped or sent, "ship-to/delivery" and customer "bill/invoice-to"

address(es) where the Auto and invoice were shipped or received, and date(s) the Auto and invoice were received; and

(6)     Monetary or non-monetary components of, or incentives for, the purchase distinct from net price, including but not limited to, (a) any service, benefit, and/or product You received, or provided, in connection with the purchase of the Auto, including service agreements, warranties, or installation, and (b) the value of each such service, benefit, or product;

b.     Purchaser (*e.g.*, consumer, leasing company, *i.e.*, lessor, Auto distributor or dealer) to whom the Auto was sold, including name, address, and other identifiers; and

(1)     Date and place (including address) of sale;

(2)     Terms and conditions of sale, including but not limited to:

(a)     Net price paid by purchaser (before taxes and including currency and exchange rate, if applicable), and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, MSRP, list price, taxes, rebates, discounts, refunds, credits, or allowances for vehicle trade-ins, and OEM and model, model year, VIN, and other identifiers, and mileage of vehicle for which a trade-in allowance was provided; and

(b)     Amount paid at time of sale, and any remaining balance due, terms of financing, and duration of monthly or installment payments;

(3)     If the Auto was used, its mileage and condition when sold;

c.     For leases, lessee (*e.g.*, consumer) to whom the Auto was leased, including name, address, and other identifiers; and

(1)     Date and place (including address) of lease;

(2)     Terms and conditions of lease, including but not limited to:

(a)     Term of lease;

(b)     List and/or negotiated amount paid at inception of lease and monthly or periodic lease payments;

(c)     Money factor, or finance or interest rate;

(d)     Depreciation and finance charges;

(e)     Mileage allowance and any excess mileage charges;

(f)     Deposits and acquisition, disposition, termination, or other fees or charges;

(g)     Actual and/or proposed residual or resale value of Auto at conclusion of lease term; and

(h)     Net price paid (before taxes and after any adjustments to price), at inception of lease and at conclusion of lease term, and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, MSRP, list price, taxes, rebates, discounts, refunds, credits or allowances for vehicle trade-ins, and OEM and model, model year and other identifiers, and mileage of vehicle for which a trade-in allowance was provided;

(3)     If the Auto was used, its mileage and condition when leased;

7

d.      Monetary or non-monetary components of, or incentives for, the sale or lease distinct from net price, including but not limited to, (1) commissions, and any service, benefit, and/or product the purchaser or lessee received, or provided, in connection with the sale or lease, including service agreements, or warranties, and (2) the value of each such service, benefit, or product;

e.      Repairs or recalls with respect to the Auto, nature of repair or recall, whether the Auto was returned, and amount of any associated payment, refund or credit;

f.      Actual and/or estimated direct and indirect purchase, marketing, distribution, selling, leasing and other costs in connection with the purchase and sale or lease of the Auto, both fixed and variable, including but not limited to, direct and indirect costs of management, labor, commissions, real estate, financing, overhead, energy, and freight;

g.      Your gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements for the purchase, sale and any lease of the Auto;

h.      Monthly or periodic reports on Auto inventory levels; and

i.      Each contract or agreement concerning the purchase, sale and any lease of the Auto.

**REQUEST NO. 2:**   Data or documents (in the absence of data) sufficient to show the following information for each (a) Wire Harness Product, or (b) Auto Part purchased by You or on Your behalf:

a.      Date of purchase;

b.     Seller (*e.g.*, OEM, Auto parts manufacturer or distributor, or Auto dealer) from whom the WHP or Auto Part was purchased, including name, address, and other identifiers;

c.     Manufacturer, name or description, part number, and other identifiers of the WHP or Auto Part, including OEM and model, model year, and other identifiers of the Auto or other product in which the WHP or Auto Part was designed or intended to be installed, and quantity purchased (including measurement unit for quantity);

d.     Terms and conditions on which the WHP or Auto Part was purchased, including but not limited to:

    (1)    Net price of the WHP or Auto Part (including currency and exchange rate, if applicable), and any adjustments to purchase price and incentives or allowances issued or applied at any time, including but not limited to, taxes, amortization and amortization schedule, installment payments, financing, rebates, lump sum or other discounts, refunds, credit for returns, and currency or input cost adjustments; and

    (2)    Shipping or freight costs, and by whom such costs were paid;

e.     "Ship-from" and vendor "pay-to" address(es) from which the WHP or Auto Part and invoice for it were shipped or sent, date(s) the WHP or Auto Part and invoice were shipped or sent, "ship-to/delivery" and customer "bill/invoice-to" address(es) where the WHP or Auto Part and invoice were shipped or received, and date(s) the WHP or Auto Part and invoice were received;

f.     Monetary or non-monetary components of, or incentives for, the purchase of the WHP or Auto Part distinct from net price, including but not limited to, (1) any

service, benefit, and/or product that You provided, or received, in connection with the purchase, including service agreements, warranties, or installation, and (2) the value of each such service, benefit, or product;

g.    Purchaser (*e.g.*, consumer, Auto parts distributor, or Auto dealer), to whom the WHP or Auto Part was sold, including name, address, and other identifiers; and

(1)    Date and place (including address) of sale;

(2)    Terms and conditions of sale, including but not limited to:

(a)    Net price paid by purchaser (before taxes and including currency and exchange rate, if applicable), and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, list price, taxes, rebates, discounts, refunds, or credit for trade-ins or returns;

(b)    Amount paid at time of sale, and any remaining balance due, terms of financing, and duration of monthly or installment payments;

(c)    Monetary or non-monetary components of, or incentives for, the sale, including but not limited to, (i) commissions, and any service, benefit, and/or product the purchaser received, or provided, in connection with the sale, including service agreements or warranties, and (ii) the value of each such service, benefit, or product;

h.    Information sufficient to track each WHP or Auto Part after it was installed in another product and/or sold, including OEM and model, model year, VIN, and/or part number, and other identifiers of the specific Auto or other product in which

the WHP or Auto Part was installed or for which it was designed or intended to be installed;

i.      Actual and/or estimated direct and indirect purchasing, marketing, distribution or selling, and other costs of goods sold for the WHP or Auto Part, both fixed and variable, including but not limited to, direct and indirect costs of management, labor, overhead, energy, materials, sales and marketing, and freight;

j.      Your gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements for purchase and sale of the WHP or Auto Part;

k.      Each contract or agreement concerning the purchase of the WHP or Auto Part.

**REQUEST NO. 3:**   Documents (to the extent not produced in response to Request Nos. 1-2), including number, code, or data dictionaries or similar documents, sufficient to identify, describe, and explain the (a) manufacturer, supplier, vendor, and customer numbers or codes; (b) product, component, and part numbers or codes; (c) OEM and model, model platform, VIN, and model year numbers or codes; (d) contract or agreement and invoice numbers or codes; (e) transaction types, including standard credits, debits, returns, and other adjustments related to purchases, sales and any leases of Automobiles, WHPs, and Auto Parts; and (f) data fields, that are reflected in data or documents produced in response to Request Nos. 1-2.

**REQUEST NO. 4:**   Documents (to the extent not produced in response to Request Nos. 1-3) sufficient to disclose, identify, describe, and explain (a) the processes, policies, strategies, methods, formulas, factors, guidelines, and sales or price or margin targets used in

purchasing or acquiring the Automobiles, WHPs and Auto Parts later sold or leased by You or on Your behalf, including but not limited to, manuals, handbooks and documents concerning how the prices paid and terms and conditions of purchase were determined, whether prices and terms were negotiated in any way, and, if so, how prices and terms changed and the reasons for those changes, what factors were considered in deciding what Automobiles, WHPs and Auto Parts to purchase or acquire and from whom, and any proposed or actual changes in such processes, policies, strategies, methods, formulas, or factors and the reasons for such changes; and (b) the training or instruction of Your personnel regarding such processes, policies, strategies, methods, formulas, or factors.

**REQUEST NO. 5:**   Documents (to the extent not produced in response to Request Nos. 1-4) sufficient to disclose, identify, describe, and explain (a) the processes, policies, strategies, methods, formulas, factors, manuals and handbooks used in determining, setting, computing, quoting, negotiating, or modifying the prices and terms and conditions of sale or lease of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, and any proposed or actual changes in such processes, policies, strategies, methods, formulas, or factors and the reasons for such changes; (b) sales or price or margin targets, warranties, rebates, discounts, off-invoice discounts, credits, allowances, vehicle trade-in credits or allowances, promotional or incentive payments, or other price concessions in selling or leasing such Automobiles, WHPs and Auto Parts; and (c) any sales promotions or incentives offered or advertised in connection with the sale or lease of such Automobiles, WHPs and Auto Parts and the cost of such promotions or incentives.

12

**REQUEST NO. 6:**   Documents (to the extent not produced in response to Request Nos. 1-5) sufficient to disclose, identify, describe, and explain (a) the training or instruction of sales personnel involved in the sale or lease of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, including but not limited to policies (*e.g.*, sales personnel discretion in adjusting pricing and the parameters of that discretion), strategies, methods, formulas, sales or price or margin targets, guidelines, manuals, and handbooks for sales or lease negotiations with customers or potential customers; and (b) the monetary and non-monetary compensation of such sales personnel, including bonuses and commissions.

**REQUEST NO. 7:**   Documents (to the extent not produced in response to Request Nos. 1-6) sufficient to disclose, identify, describe, and explain the processes, policies, strategies, methods, and formulas regarding inventory management of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, including but not limited to, guidelines, manuals, handbooks, and strategy and planning presentations.

**REQUEST NO. 8:**   Documents (to the extent not produced in response to Request Nos. 1-7) concerning (a) Your competitors, including but not limited to, documents concerning competitors' locations, and descriptions of competitors' businesses, and competitors' pricing and promotions; (b) Your strategies, programs, and plans for competing against Your competitors, including but not limited to, price discounting, sales and promotions, and increased customer services; (c) supply and demand conditions that may affect sales or pricing of Automobiles, WHPs, and Auto Parts; and (d) Your advertising and marketing campaigns, and trade promotions, at the national, regional, and/or dealership levels.

**REQUEST NO. 9:**   Documents (to the extent not produced in response to Request Nos. 1-8) sufficient to show Your organizational structure, including but not limited to, the location of all Your building and operation sites, including corporate offices, warehouses, stores, showrooms, and other retail and wholesale locations.

**REQUEST NO. 10:**   Documents (to the extent not produced in response to Request Nos. 1-9) concerning each communication between You or Your counsel and any of the Plaintiffs or their counsel in the Wire Harness MDL.

**REQUEST NO. 11:**   Documents sufficient to disclose, identify, describe, and explain Your policies or practices regarding the retention, destruction, disposal, or preservation of documents and/or electronically stored information, and, if such policies or practices have been different with respect to any category of documents or over different time periods, documents sufficient to disclose, identify, describe, and explain each such category or time period and Your retention policy or practice with respect to each such category or time period.

**REQUEST NO. 12:**   Documents sufficient to disclose, identify, describe, and explain Your electronic database and data processing systems, programs, and outputs thereof, including all mainframe systems, linked area networks, or other applications used by You or on Your behalf to record, store, compute, analyze, or retrieve information concerning the pricing, purchase or acquisition, marketing, sale, lease, manufacturing or production, supply, or distribution of Autos, WHPs and Auto Parts.

## DEFINITIONS

1.     "Automobile" and "Auto" mean a motor vehicle that is principally used for transporting from one to eight passengers and is designed to operate primarily on roads, typically with four wheels, including sedans, pickup trucks, and sport utility vehicles, but excluding motorcycles, all-terrain vehicles, buses, and commercial trucks.

2.     "Auto Part" means an Automobile part in which a Wire Harness Product is a component or incorporated.

3.     "MSRP" means the manufacturer's suggested resale price.

4.     "OEM" means Automobile original equipment manufacturer and the OEM's respective officers, directors, current and former employees, agents, representatives, attorneys, or anyone else acting or who has acted on its behalf.

5.     "Wire Harness MDL" means the Class Cases, Miscellaneous Cases, and Individual Cases, as defined in the Electronic Case Management Protocol Order, ECF No. 665, 2:12-md-02311-MOB-MKM (filed December 23, 2013), entered in the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311, pending in the U.S. District Court for the Eastern District of Michigan, Southern Division, that are associated now or in the future with the Wire Harness Lead Case, Case No. 2:12-cv-00100, which is part of the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311.

6.     "Wire Harness Product(s)" and "WHP(s)" mean automotive wire harness electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in Automobiles, and the following components of such wire harnesses: automotive electrical wiring, automotive wire harnesses, automotive wiring connectors, automotive wiring terminals, cable bonds, electronic control units ("ECUs"), fuse boxes, high voltage wiring, junction blocks, lead wire assemblies, power distributors, relay boxes, and speed sensor wire assemblies.

7.     "You," "Your," and "Your Company" mean [Auto Dealer] and its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity that *is or was subject to its management, direction, or control*, together with its and their present and former directors, officers, employees, agents, representatives, or any Person acting or *purporting to act on its behalf.*

## INSTRUCTIONS

1.     Attached hereto is a copy of the Stipulation and Protective Order Governing Production and Exchange of Confidential Information, ECF No. 200, 2:12-md-02311-MOB-MKM (filed July 10, 2012), entered by the Court in the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311, pending in the U.S. District Court for the Eastern District of Michigan, Southern Division, that governs documents and information produced in the Wire Harness MDL. You may designate documents for protection under the Protective Order.

      2.     The relevant time period for each Request is (i) January 1, 1998 through and including October 31, 2011, excepting data extracted from electronic databases or data summaries for which the relevant time period is January 1, 1998 through and including December 31, 2013, or (ii) such broader time period(s) that the parties in any of the Class Cases, Miscellaneous Cases, and/or Individual Cases in the Wire Harness MDL agree, or the Court rules applies to such discovery from the parties, prior to Your production of documents and data in response to this subpoena.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re:  Wire Harness Cases | |
| THIS DOCUMENT RELATES TO: | |
| All Dealership Actions | 2:12-cv-00102 |
| All End-Payor Actions | 2:12-cv-00103 |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

TO:  Sheehy Auto Stores, Inc.
c/o Registered Agent: Business Filings Incorporated
108 West 13th St.
Wilmington, DE 19801

☒ *Production:*  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

**See Attachment A**

| Place: | Sheehy Auto Stores, Inc. 12701 Fair Lakes Cir. Ste. 250 Fairfax, VA 22033 | Date and Time: | December 1, 2014, 10 a.m. |
|---|---|---|---|

☐ *Inspection of Premises:*  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

1

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

DATE:

DAVID J. WEAVER, CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Fujikura Ltd. and Fujikura Automotive America LLC, who issues or requests this subpoena, are:

> Michael A. Rubin
> Arnold & Porter LLP
> 555 Twelfth Street, N.W.
> Washington, D.C. 20004
> 202-942-6171
> michael.rubin@aporter.com

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____ .

My fees are    $_____     for travel and    $_____      for services for a total of     $_____ .

I declare under penalty of perjury that this information is true.

Date: _____

                                  _____
                                            *Server's signature*

                                  _____
                                       *Printed name and title*

                                  _____
                                       *Server's address*

Additional information regarding attempted service, etc.:

**(c) Place of Compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

    **(i)** is a party or a party's officer; or

    **(ii)** is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where
compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;

    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and

    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

**ATTACHMENT A**

**DOCUMENT REQUESTS**

**REQUEST NO. 1:**   Data or documents (in the absence of data) sufficient to show the following information for each Automobile purchased by You or on Your behalf:

a.   Seller (*e.g.*, OEM, Auto distributor or dealer, consumer) from whom the Auto was purchased, including name, address, and other identifiers; and

(1)   Date of purchase;

(2)   OEM and model, model year, and other identifiers of the Auto, including Vehicle Identification Number ("VIN");

(3)   If the Auto was used, its mileage and condition when purchased;

(4)   Terms and conditions of purchase, including but not limited to:

(a)   Net price paid (before taxes and including currency and exchange rate, if applicable), and any adjustments to purchase price and incentives or allowances issued or applied at any time, including but not limited to, list price, taxes, commissions, rebates, discounts, refunds, or credit for returns;

(b)   Amount paid at time of purchase, and any remaining balance due, terms of financing, and duration of monthly or installment payments; and

(c)   Shipping or freight costs, and by whom such costs were paid;

(5)   "Ship-from" and vendor "pay-to" address(es) from which the Auto and invoice for it were shipped or sent, date(s) the Auto and invoice were shipped or sent, "ship-to/delivery" and customer "bill/invoice-to"

address(es) where the Auto and invoice were shipped or received, and date(s) the Auto and invoice were received; and

(6)     Monetary or non-monetary components of, or incentives for, the purchase distinct from net price, including but not limited to, (a) any service, benefit, and/or product You received, or provided, in connection with the purchase of the Auto, including service agreements, warranties, or installation, and (b) the value of each such service, benefit, or product;

b.     Purchaser (*e.g.*, consumer, leasing company, *i.e.*, lessor, Auto distributor or dealer) to whom the Auto was sold, including name, address, and other identifiers; and

(1)     Date and place (including address) of sale;

(2)     Terms and conditions of sale, including but not limited to:

(a)     Net price paid by purchaser (before taxes and including currency and exchange rate, if applicable), and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, MSRP, list price, taxes, rebates, discounts, refunds, credits, or allowances for vehicle trade-ins, and OEM and model, model year, VIN, and other identifiers, and mileage of vehicle for which a trade-in allowance was provided; and

(b)     Amount paid at time of sale, and any remaining balance due, terms of financing, and duration of monthly or installment payments;

(3)     If the Auto was used, its mileage and condition when sold;

6

c.   For leases, lessee (*e.g.*, consumer) to whom the Auto was leased, including name, address, and other identifiers; and

(1)   Date and place (including address) of lease;

(2)   Terms and conditions of lease, including but not limited to:

(a)   Term of lease;

(b)   List and/or negotiated amount paid at inception of lease and monthly or periodic lease payments;

(c)   Money factor, or finance or interest rate;

(d)   Depreciation and finance charges;

(e)   Mileage allowance and any excess mileage charges;

(f)   Deposits and acquisition, disposition, termination, or other fees or charges;

(g)   Actual and/or proposed residual or resale value of Auto at conclusion of lease term; and

(h)   Net price paid (before taxes and after any adjustments to price), at inception of lease and at conclusion of lease term, and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, MSRP, list price, taxes, rebates, discounts, refunds, credits or allowances for vehicle trade-ins, and OEM and model, model year and other identifiers, and mileage of vehicle for which a trade-in allowance was provided;

(3)   If the Auto was used, its mileage and condition when leased;

7

d.   Monetary or non-monetary components of, or incentives for, the sale or lease distinct from net price, including but not limited to, (1) commissions, and any service, benefit, and/or product the purchaser or lessee received, or provided, in connection with the sale or lease, including service agreements, or warranties, and (2) the value of each such service, benefit, or product;

e.   Repairs or recalls with respect to the Auto, nature of repair or recall, whether the Auto was returned, and amount of any associated payment, refund or credit;

f.   Actual and/or estimated direct and indirect purchase, marketing, distribution, selling, leasing and other costs in connection with the purchase and sale or lease of the Auto, both fixed and variable, including but not limited to, direct and indirect costs of management, labor, commissions, real estate, financing, overhead, energy, and freight;

g.   Your gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements for the purchase, sale and any lease of the Auto;

h.   Monthly or periodic reports on Auto inventory levels; and

i.   Each contract or agreement concerning the purchase, sale and any lease of the Auto.

**REQUEST NO. 2:**   Data or documents (in the absence of data) sufficient to show the following information for each (a) Wire Harness Product, or (b) Auto Part purchased by You or on Your behalf:

a.   Date of purchase;

b.      Seller (*e.g.*, OEM, Auto parts manufacturer or distributor, or Auto dealer) from whom the WHP or Auto Part was purchased, including name, address, and other identifiers;

c.      Manufacturer, name or description, part number, and other identifiers of the WHP or Auto Part, including OEM and model, model year, and other identifiers of the Auto or other product in which the WHP or Auto Part was designed or intended to be installed, and quantity purchased (including measurement unit for quantity);

d.      Terms and conditions on which the WHP or Auto Part was purchased, including but not limited to:

    (1)      Net price of the WHP or Auto Part (including currency and exchange rate, if applicable), and any adjustments to purchase price and incentives or allowances issued or applied at any time, including but not limited to, taxes, amortization and amortization schedule, installment payments, financing, rebates, lump sum or other discounts, refunds, credit for returns, and currency or input cost adjustments; and

    (2)      Shipping or freight costs, and by whom such costs were paid;

e.      "Ship-from" and vendor "pay-to" address(es) from which the WHP or Auto Part and invoice for it were shipped or sent, date(s) the WHP or Auto Part and invoice were shipped or sent, "ship-to/delivery" and customer "bill/invoice-to" address(es) where the WHP or Auto Part and invoice were shipped or received, and date(s) the WHP or Auto Part and invoice were received;

f.      Monetary or non-monetary components of, or incentives for, the purchase of the WHP or Auto Part distinct from net price, including but not limited to, (1) any

9

service, benefit, and/or product that You provided, or received, in connection with the purchase, including service agreements, warranties, or installation, and (2) the value of each such service, benefit, or product;

g.  Purchaser (*e.g.*, consumer, Auto parts distributor, or Auto dealer), to whom the WHP or Auto Part was sold, including name, address, and other identifiers; and

(1)  Date and place (including address) of sale;

(2)  Terms and conditions of sale, including but not limited to:

(a)  Net price paid by purchaser (before taxes and including currency and exchange rate, if applicable), and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, list price, taxes, rebates, discounts, refunds, or credit for trade-ins or returns;

(b)  Amount paid at time of sale, and any remaining balance due, terms of financing, and duration of monthly or installment payments;

(c)  Monetary or non-monetary components of, or incentives for, the sale, including but not limited to, (i) commissions, and any service, benefit, and/or product the purchaser received, or provided, in connection with the sale, including service agreements or warranties, and (ii) the value of each such service, benefit, or product;

h.  Information sufficient to track each WHP or Auto Part after it was installed in another product and/or sold, including OEM and model, model year, VIN, and/or part number, and other identifiers of the specific Auto or other product in which

the WHP or Auto Part was installed or for which it was designed or intended to be installed;

i.    Actual and/or estimated direct and indirect purchasing, marketing, distribution or selling, and other costs of goods sold for the WHP or Auto Part, both fixed and variable, including but not limited to, direct and indirect costs of management, labor, overhead, energy, materials, sales and marketing, and freight;

j.    Your gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements for purchase and sale of the WHP or Auto Part;

k.    Each contract or agreement concerning the purchase of the WHP or Auto Part.

**REQUEST NO. 3:**   Documents (to the extent not produced in response to Request Nos. 1-2), including number, code, or data dictionaries or similar documents, sufficient to identify, describe, and explain the (a) manufacturer, supplier, vendor, and customer numbers or codes; (b) product, component, and part numbers or codes; (c) OEM and model, model platform, VIN, and model year numbers or codes; (d) contract or agreement and invoice numbers or codes; (e) transaction types, including standard credits, debits, returns, and other adjustments related to purchases, sales and any leases of Automobiles, WHPs, and Auto Parts; and (f) data fields, that are reflected in data or documents produced in response to Request Nos. 1-2.

**REQUEST NO. 4:**   Documents (to the extent not produced in response to Request Nos. 1-3) sufficient to disclose, identify, describe, and explain (a) the processes, policies, strategies, methods, formulas, factors, guidelines, and sales or price or margin targets used in

purchasing or acquiring the Automobiles, WHPs and Auto Parts later sold or leased by You or on Your behalf, including but not limited to, manuals, handbooks and documents concerning how the prices paid and terms and conditions of purchase were determined, whether prices and terms were negotiated in any way, and, if so, how prices and terms changed and the reasons for those changes, what factors were considered in deciding what Automobiles, WHPs and Auto Parts to purchase or acquire and from whom, and any proposed or actual changes in such processes, policies, strategies, methods, formulas, or factors and the reasons for such changes; and (b) the training or instruction of Your personnel regarding such processes, policies, strategies, methods, formulas, or factors.

**REQUEST NO. 5:** Documents (to the extent not produced in response to Request Nos. 1-4) sufficient to disclose, identify, describe, and explain (a) the processes, policies, strategies, methods, formulas, factors, manuals and handbooks used in determining, setting, computing, quoting, negotiating, or modifying the prices and terms and conditions of sale or lease of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, and any proposed or actual changes in such processes, policies, strategies, methods, formulas, or factors and the reasons for such changes; (b) sales or price or margin targets, warranties, rebates, discounts, off-invoice discounts, credits, allowances, vehicle trade-in credits or allowances, promotional or incentive payments, or other price concessions in selling or leasing such Automobiles, WHPs and Auto Parts; and (c) any sales promotions or incentives offered or advertised in connection with the sale or lease of such Automobiles, WHPs and Auto Parts and the cost of such promotions or incentives.

**REQUEST NO. 6:**    Documents (to the extent not produced in response to Request Nos. 1-5) sufficient to disclose, identify, describe, and explain (a) the training or instruction of sales personnel involved in the sale or lease of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, including but not limited to policies (*e.g.*, sales personnel discretion in adjusting pricing and the parameters of that discretion), strategies, methods, formulas, sales or price or margin targets, guidelines, manuals, and handbooks for sales or lease negotiations with customers or potential customers; and (b) the monetary and non-monetary compensation of such sales personnel, including bonuses and commissions.

**REQUEST NO. 7:**    Documents (to the extent not produced in response to Request Nos. 1-6) sufficient to disclose, identify, describe, and explain the processes, policies, strategies, methods, and formulas regarding inventory management of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, including but not limited to, guidelines, manuals, handbooks, and strategy and planning presentations.

**REQUEST NO. 8:**    Documents (to the extent not produced in response to Request Nos. 1-7) concerning (a) Your competitors, including but not limited to, documents concerning competitors' locations, and descriptions of competitors' businesses, and competitors' pricing and promotions; (b) Your strategies, programs, and plans for competing against Your competitors, including but not limited to, price discounting, sales and promotions, and increased customer services; (c) supply and demand conditions that may affect sales or pricing of Automobiles, WHPs, and Auto Parts; and (d) Your advertising and marketing campaigns, and trade promotions, at the national, regional, and/or dealership levels.

13

**REQUEST NO. 9:**   Documents (to the extent not produced in response to Request Nos. 1-8) sufficient to show Your organizational structure, including but not limited to, the location of all Your building and operation sites, including corporate offices, warehouses, stores, showrooms, and other retail and wholesale locations.

**REQUEST NO. 10:**   Documents (to the extent not produced in response to Request Nos. 1-9) concerning each communication between You or Your counsel and any of the Plaintiffs or their counsel in the Wire Harness MDL.

**REQUEST NO. 11:**   Documents sufficient to disclose, identify, describe, and explain Your policies or practices regarding the retention, destruction, disposal, or preservation of documents and/or electronically stored information, and, if such policies or practices have been different with respect to any category of documents or over different time periods, documents sufficient to disclose, identify, describe, and explain each such category or time period and Your retention policy or practice with respect to each such category or time period.

**REQUEST NO. 12:**   Documents sufficient to disclose, identify, describe, and explain Your electronic database and data processing systems, programs, and outputs thereof, including all mainframe systems, linked area networks, or other applications used by You or on Your behalf to record, store, compute, analyze, or retrieve information concerning the pricing, purchase or acquisition, marketing, sale, lease, manufacturing or production, supply, or distribution of Autos, WHPs and Auto Parts.

## DEFINITIONS

1.      "Automobile" and "Auto" mean a motor vehicle that is principally used for transporting from one to eight passengers and is designed to operate primarily on roads, typically with four wheels, including sedans, pickup trucks, and sport utility vehicles, but excluding motorcycles, all-terrain vehicles, buses, and commercial trucks.

2.      "Auto Part" means an Automobile part in which a Wire Harness Product is a component or incorporated.

3.      "MSRP" means the manufacturer's suggested resale price.

4.      "OEM" means Automobile original equipment manufacturer and the OEM's respective officers, directors, current and former employees, agents, representatives, attorneys, or anyone else acting or who has acted on its behalf.

5.      "Wire Harness MDL" means the Class Cases, Miscellaneous Cases, and Individual Cases, as defined in the Electronic Case Management Protocol Order, ECF No. 665, 2:12-md-02311-MOB-MKM (filed December 23, 2013), entered in the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311, pending in the U.S. District Court for the Eastern District of Michigan, Southern Division, that are associated now or in the future with the Wire Harness Lead Case, Case No. 2:12-cv-00100, which is part of the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311.

6.      "Wire Harness Product(s)" and "WHP(s)" mean automotive wire harness electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in Automobiles, and the following components of such wire harnesses: automotive electrical wiring, automotive wire harnesses, automotive wiring connectors, automotive wiring terminals, cable bonds, electronic control units ("ECUs"), fuse boxes, high voltage wiring, junction blocks, lead wire assemblies, power distributors, relay boxes, and speed sensor wire assemblies.

7.      "You," "Your," and "Your Company" mean [Auto Dealer] and its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity that *is or was subject to its management, direction, or control*, together with its and their present and former directors, officers, employees, agents, representatives, or any Person acting or *purporting to act on its behalf*.

## INSTRUCTIONS

1.      Attached hereto is a copy of the Stipulation and Protective Order Governing Production and Exchange of Confidential Information, ECF No. 200, 2:12-md-02311-MOB-MKM (filed July 10, 2012), entered by the Court in the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311, pending in the U.S. District Court for the Eastern District of Michigan, Southern Division, that governs documents and information produced in the Wire Harness MDL.  You may designate documents for protection under the Protective Order.

2.      The relevant time period for each Request is (i) January 1, 1998 through and including October 31, 2011, excepting data extracted from electronic databases or data summaries for which the relevant time period is January 1, 1998 through and including December 31, 2013, or (ii) such broader time period(s) that the parties in any of the Class Cases, Miscellaneous Cases, and/or Individual Cases in the Wire Harness MDL agree, or the Court rules applies to such discovery from the parties, prior to Your production of documents and data in response to this subpoena.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness Cases | |
| THIS DOCUMENT RELATES TO: | |
| All Dealership Actions | 2:12-cv-00102 |
| All End-Payor Actions | 2:12-cv-00103 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

TO:     Rosenthal Automotive Organization
        Subsidiary of:
        Geneva Enterprises, Inc.
        c/o Registered Agent: J.H. Griffin
        1902 Association Dr.
        Reston, VA 20191

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

**See Attachment A**

| Place: | Rosenthal Automotive Organization 1902 Association Dr. Reston, VA 20191 | Date and Time: | December 1, 2014 10 a.m. |
|---|---|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

1

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

DATE:

DAVID J. WEAVER, CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Fujikura Ltd. and Fujikura Automotive America LLC, who issues or requests this subpoena, are:

> Michael A. Rubin
> Arnold & Porter LLP
> 555 Twelfth Street, N.W.
> Washington, D.C. 20004
> 202-942-6171
> michael.rubin@aporter.com

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I
have also tendered to the witness the fees for one day's attendance, and the mileage allowed by
law, in the amount of $_____.

My fees are      $_____      for travel and      $_____      for services for a total of      $_____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

3

**(c) Place of Compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where
compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

4

## ATTACHMENT A

## DOCUMENT REQUESTS

**REQUEST NO. 1:**   Data or documents (in the absence of data) sufficient to show the following information for each Automobile purchased by You or on Your behalf:

a.      Seller (*e.g.*, OEM, Auto distributor or dealer, consumer) from whom the Auto was purchased, including name, address, and other identifiers; and

      (1)      Date of purchase;

      (2)      OEM and model, model year, and other identifiers of the Auto, including Vehicle Identification Number ("VIN");

      (3)      If the Auto was used, its mileage and condition when purchased;

      (4)      Terms and conditions of purchase, including but not limited to:

            (a)      Net price paid (before taxes and including currency and exchange rate, if applicable), and any adjustments to purchase price and incentives or allowances issued or applied at any time, including but not limited to, list price, taxes, commissions, rebates, discounts, refunds, or credit for returns;

            (b)      Amount paid at time of purchase, and any remaining balance due, terms of financing, and duration of monthly or installment payments; and

            (c)      Shipping or freight costs, and by whom such costs were paid;

      (5)      "Ship-from" and vendor "pay-to" address(es) from which the Auto and invoice for it were shipped or sent, date(s) the Auto and invoice were shipped or sent, "ship-to/delivery" and customer "bill/invoice-to"

address(es) where the Auto and invoice were shipped or received, and date(s) the Auto and invoice were received; and

(6)    Monetary or non-monetary components of, or incentives for, the purchase distinct from net price, including but not limited to, (a) any service, benefit, and/or product You received, or provided, in connection with the purchase of the Auto, including service agreements, warranties, or installation, and (b) the value of each such service, benefit, or product;

b.    Purchaser (*e.g.*, consumer, leasing company, *i.e.*, lessor, Auto distributor or dealer) to whom the Auto was sold, including name, address, and other identifiers; and

(1)    Date and place (including address) of sale;

(2)    Terms and conditions of sale, including but not limited to:

(a)    Net price paid by purchaser (before taxes and including currency and exchange rate, if applicable), and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, MSRP, list price, taxes, rebates, discounts, refunds, credits, or allowances for vehicle trade-ins, and OEM and model, model year, VIN, and other identifiers, and mileage of vehicle for which a trade-in allowance was provided; and

(b)    Amount paid at time of sale, and any remaining balance due, terms of financing, and duration of monthly or installment payments;

(3)    If the Auto was used, its mileage and condition when sold;

c.  For leases, lessee (*e.g.*, consumer) to whom the Auto was leased, including name, address, and other identifiers; and

(1)  Date and place (including address) of lease;

(2)  Terms and conditions of lease, including but not limited to:

(a)  Term of lease;

(b)  List and/or negotiated amount paid at inception of lease and monthly or periodic lease payments;

(c)  Money factor, or finance or interest rate;

(d)  Depreciation and finance charges;

(e)  Mileage allowance and any excess mileage charges;

(f)  Deposits and acquisition, disposition, termination, or other fees or charges;

(g)  Actual and/or proposed residual or resale value of Auto at conclusion of lease term; and

(h)  Net price paid (before taxes and after any adjustments to price), at inception of lease and at conclusion of lease term, and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, MSRP, list price, taxes, rebates, discounts, refunds, credits or allowances for vehicle trade-ins, and OEM and model, model year and other identifiers, and mileage of vehicle for which a trade-in allowance was provided;

(3)  If the Auto was used, its mileage and condition when leased;

7

d.      Monetary or non-monetary components of, or incentives for, the sale or lease distinct from net price, including but not limited to, (1) commissions, and any service, benefit, and/or product the purchaser or lessee received, or provided, in connection with the sale or lease, including service agreements, or warranties, and (2) the value of each such service, benefit, or product;

e.      Repairs or recalls with respect to the Auto, nature of repair or recall, whether the Auto was returned, and amount of any associated payment, refund or credit;

f.      Actual and/or estimated direct and indirect purchase, marketing, distribution, selling, leasing and other costs in connection with the purchase and sale or lease of the Auto, both fixed and variable, including but not limited to, direct and indirect costs of management, labor, commissions, real estate, financing, overhead, energy, and freight;

g.      Your gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements for the purchase, sale and any lease of the Auto;

h.      Monthly or periodic reports on Auto inventory levels; and

i.      Each contract or agreement concerning the purchase, sale and any lease of the Auto.

**REQUEST NO. 2:**     Data or documents (in the absence of data) sufficient to show the following information for each (a) Wire Harness Product, or (b) Auto Part purchased by You or on Your behalf:

a.      Date of purchase;

b.      Seller (*e.g.*, OEM, Auto parts manufacturer or distributor, or Auto dealer) from whom the WHP or Auto Part was purchased, including name, address, and other identifiers;

c.      Manufacturer, name or description, part number, and other identifiers of the WHP or Auto Part, including OEM and model, model year, and other identifiers of the Auto or other product in which the WHP or Auto Part was designed or intended to be installed, and quantity purchased (including measurement unit for quantity);

d.      Terms and conditions on which the WHP or Auto Part was purchased, including but not limited to:

(1)      Net price of the WHP or Auto Part (including currency and exchange rate, if applicable), and any adjustments to purchase price and incentives or allowances issued or applied at any time, including but not limited to, taxes, amortization and amortization schedule, installment payments, financing, rebates, lump sum or other discounts, refunds, credit for returns, and currency or input cost adjustments; and

(2)      Shipping or freight costs, and by whom such costs were paid;

e.      "Ship-from" and vendor "pay-to" address(es) from which the WHP or Auto Part and invoice for it were shipped or sent, date(s) the WHP or Auto Part and invoice were shipped or sent, "ship-to/delivery" and customer "bill/invoice-to" address(es) where the WHP or Auto Part and invoice were shipped or received, and date(s) the WHP or Auto Part and invoice were received;

f.      Monetary or non-monetary components of, or incentives for, the purchase of the WHP or Auto Part distinct from net price, including but not limited to, (1) any

service, benefit, and/or product that You provided, or received, in connection with the purchase, including service agreements, warranties, or installation, and (2) the value of each such service, benefit, or product;

g.    Purchaser (*e.g.*, consumer, Auto parts distributor, or Auto dealer), to whom the WHP or Auto Part was sold, including name, address, and other identifiers; and

(1)    Date and place (including address) of sale;

(2)    Terms and conditions of sale, including but not limited to:

(a)    Net price paid by purchaser (before taxes and including currency and exchange rate, if applicable), and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, list price, taxes, rebates, discounts, refunds, or credit for trade-ins or returns;

(b)    Amount paid at time of sale, and any remaining balance due, terms of financing, and duration of monthly or installment payments;

(c)    Monetary or non-monetary components of, or incentives for, the sale, including but not limited to, (i) commissions, and any service, benefit, and/or product the purchaser received, or provided, in connection with the sale, including service agreements or warranties, and (ii) the value of each such service, benefit, or product;

h.    Information sufficient to track each WHP or Auto Part after it was installed in another product and/or sold, including OEM and model, model year, VIN, and/or part number, and other identifiers of the specific Auto or other product in which

the WHP or Auto Part was installed or for which it was designed or intended to be installed;

i.      Actual and/or estimated direct and indirect purchasing, marketing, distribution or selling, and other costs of goods sold for the WHP or Auto Part, both fixed and variable, including but not limited to, direct and indirect costs of management, labor, overhead, energy, materials, sales and marketing, and freight;

j.      Your gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements for purchase and sale of the WHP or Auto Part;

k.      Each contract or agreement concerning the purchase of the WHP or Auto Part.

**REQUEST NO. 3:**   Documents (to the extent not produced in response to Request Nos. 1-2), including number, code, or data dictionaries or similar documents, sufficient to identify, describe, and explain the (a) manufacturer, supplier, vendor, and customer numbers or codes; (b) product, component, and part numbers or codes; (c) OEM and model, model platform, VIN, and model year numbers or codes; (d) contract or agreement and invoice numbers or codes; (e) transaction types, including standard credits, debits, returns, and other adjustments related to purchases, sales and any leases of Automobiles, WHPs, and Auto Parts; and (f) data fields, that are reflected in data or documents produced in response to Request Nos. 1-2.

**REQUEST NO. 4:**   Documents (to the extent not produced in response to Request Nos. 1-3) sufficient to disclose, identify, describe, and explain (a) the processes, policies, strategies, methods, formulas, factors, guidelines, and sales or price or margin targets used in

purchasing or acquiring the Automobiles, WHPs and Auto Parts later sold or leased by You or on Your behalf, including but not limited to, manuals, handbooks and documents concerning how the prices paid and terms and conditions of purchase were determined, whether prices and terms were negotiated in any way, and, if so, how prices and terms changed and the reasons for those changes, what factors were considered in deciding what Automobiles, WHPs and Auto Parts to purchase or acquire and from whom, and any proposed or actual changes in such processes, policies, strategies, methods, formulas, or factors and the reasons for such changes; and (b) the training or instruction of Your personnel regarding such processes, policies, strategies, methods, formulas, or factors.

**REQUEST NO. 5:**   Documents (to the extent not produced in response to Request Nos. 1-4) sufficient to disclose, identify, describe, and explain (a) the processes, policies, strategies, methods, formulas, factors, manuals and handbooks used in determining, setting, computing, quoting, negotiating, or modifying the prices and terms and conditions of sale or lease of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, and any proposed or actual changes in such processes, policies, strategies, methods, formulas, or factors and the reasons for such changes; (b) sales or price or margin targets, warranties, rebates, discounts, off-invoice discounts, credits, allowances, vehicle trade-in credits or allowances, promotional or incentive payments, or other price concessions in selling or leasing such Automobiles, WHPs and Auto Parts; and (c) any sales promotions or incentives offered or advertised in connection with the sale or lease of such Automobiles, WHPs and Auto Parts and the cost of such promotions or incentives.

**REQUEST NO. 6:**   Documents (to the extent not produced in response to Request Nos. 1-5) sufficient to disclose, identify, describe, and explain (a) the training or instruction of sales personnel involved in the sale or lease of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, including but not limited to policies (*e.g.*, sales personnel discretion in adjusting pricing and the parameters of that discretion), strategies, methods, formulas, sales or price or margin targets, guidelines, manuals, and handbooks for sales or lease negotiations with customers or potential customers; and (b) the monetary and non-monetary compensation of such sales personnel, including bonuses and commissions.

**REQUEST NO. 7:**   Documents (to the extent not produced in response to Request Nos. 1-6) sufficient to disclose, identify, describe, and explain the processes, policies, strategies, methods, and formulas regarding inventory management of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, including but not limited to, guidelines, manuals, handbooks, and strategy and planning presentations.

**REQUEST NO. 8:**   Documents (to the extent not produced in response to Request Nos. 1-7) concerning (a) Your competitors, including but not limited to, documents concerning competitors' locations, and descriptions of competitors' businesses, and competitors' pricing and promotions; (b) Your strategies, programs, and plans for competing against Your competitors, including but not limited to, price discounting, sales and promotions, and increased customer services; (c) supply and demand conditions that may affect sales or pricing of Automobiles, WHPs, and Auto Parts; and (d) Your advertising and marketing campaigns, and trade promotions, at the national, regional, and/or dealership levels.

13

**REQUEST NO. 9:**   Documents (to the extent not produced in response to Request Nos. 1-8) sufficient to show Your organizational structure, including but not limited to, the location of all Your building and operation sites, including corporate offices, warehouses, stores, showrooms, and other retail and wholesale locations.

**REQUEST NO. 10:**   Documents (to the extent not produced in response to Request Nos. 1-9) concerning each communication between You or Your counsel and any of the Plaintiffs or their counsel in the Wire Harness MDL.

**REQUEST NO. 11:**   Documents sufficient to disclose, identify, describe, and explain Your policies or practices regarding the retention, destruction, disposal, or preservation of documents and/or electronically stored information, and, if such policies or practices have been different with respect to any category of documents or over different time periods, documents sufficient to disclose, identify, describe, and explain each such category or time period and Your retention policy or practice with respect to each such category or time period.

**REQUEST NO. 12:**   Documents sufficient to disclose, identify, describe, and explain Your electronic database and data processing systems, programs, and outputs thereof, including all mainframe systems, linked area networks, or other applications used by You or on Your behalf to record, store, compute, analyze, or retrieve information concerning the pricing, purchase or acquisition, marketing, sale, lease, manufacturing or production, supply, or distribution of Autos, WHPs and Auto Parts.

## DEFINITIONS

1.      "Automobile" and "Auto" mean a motor vehicle that is principally used for transporting from one to eight passengers and is designed to operate primarily on roads, typically with four wheels, including sedans, pickup trucks, and sport utility vehicles, but excluding motorcycles, all-terrain vehicles, buses, and commercial trucks.

2.      "Auto Part" means an Automobile part in which a Wire Harness Product is a component or incorporated.

3.      "MSRP" means the manufacturer's suggested resale price.

4.      "OEM" means Automobile original equipment manufacturer and the OEM's respective officers, directors, current and former employees, agents, representatives, attorneys, or anyone else acting or who has acted on its behalf.

5.      "Wire Harness MDL" means the Class Cases, Miscellaneous Cases, and Individual Cases, as defined in the Electronic Case Management Protocol Order, ECF No. 665, 2:12-md-02311-MOB-MKM (filed December 23, 2013), entered in the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311, pending in the U.S. District Court for the Eastern District of Michigan, Southern Division, that are associated now or in the future with the Wire Harness Lead Case, Case No. 2:12-cv-00100, which is part of the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311.

6.      "Wire Harness Product(s)" and "WHP(s)" mean automotive wire harness electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in Automobiles, and the following components of such wire harnesses: automotive electrical wiring, automotive wire harnesses, automotive wiring connectors, automotive wiring terminals, cable bonds, electronic control units ("ECUs"), fuse boxes, high voltage wiring, junction blocks, lead wire assemblies, power distributors, relay boxes, and speed sensor wire assemblies.

7.      "You," "Your," and "Your Company" mean [Auto Dealer] and its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity that *is or was subject to its management, direction, or control*, together with its and their present and former directors, officers, employees, agents, representatives, or any Person acting or *purporting to act on its behalf.*

## INSTRUCTIONS

1.      Attached hereto is a copy of the Stipulation and Protective Order Governing Production and Exchange of Confidential Information, ECF No. 200, 2:12-md-02311-MOB-MKM (filed July 10, 2012), entered by the Court in the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311, pending in the U.S. District Court for the Eastern District of Michigan, Southern Division, that governs documents and information produced in the Wire Harness MDL.  You may designate documents for protection under the Protective Order.

2.     The relevant time period for each Request is (i) January 1, 1998 through and including October 31, 2011, excepting data extracted from electronic databases or data summaries for which the relevant time period is January 1, 1998 through and including December 31, 2013, or (ii) such broader time period(s) that the parties in any of the Class Cases, Miscellaneous Cases, and/or Individual Cases in the Wire Harness MDL agree, or the Court rules applies to such discovery from the parties, prior to Your production of documents and data in response to this subpoena.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In Re: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

In Re: Wire Harness Cases

THIS DOCUMENT RELATES TO:

All Dealership Actions

All End-Payor Actions

Master File No. 12-md-02311
Honorable Marianne O. Battani

2:12-cv-00102

2:12-cv-00103

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

TO:   Geneva Enterprises, Inc.
      Parent of:
      Rosenthal Automotive Organization
      c/o Registered Agent: The Corporation Trust Company
      Corporation Trust Center
      1209 Orange St.
      Wilmington, DE 19801

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

**See Attachment A**

| Place: | Geneva Enterprises, Inc. 1902 Association Dr. Reston, VA 20191 | Date and Time: | December 1, 2014 10 a.m. |
|--------|--------|--------|--------|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and

1

location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|--------|----------------|
|        |                |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

DATE:

DAVID J. WEAVER, CLERK OF COURT

OR

_____          _____
    *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Fujikura Ltd. and Fujikura Automotive America LLC, who issues or requests this subpoena, are:

> Michael A. Rubin
> Arnold & Porter LLP
> 555 Twelfth Street, N.W.
> Washington, D.C. 20004
> 202-942-6171
> michael.rubin@aporter.com

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

      ☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____; or

      ☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are    $_____    for travel and    $_____    for services for a total of    $_____

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                   *Server's signature*

                                _____
                                   *Printed name and title*

                                _____
                                   *Server's address*

Additional information regarding attempted service, etc.:

3

**(c) Place of Compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where
compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

4

## ATTACHMENT A

## DOCUMENT REQUESTS

**REQUEST NO. 1:**   Data or documents (in the absence of data) sufficient to show the following information for each Automobile purchased by You or on Your behalf:

a.   Seller (*e.g.*, OEM, Auto distributor or dealer, consumer) from whom the Auto was purchased, including name, address, and other identifiers; and

(1)   Date of purchase;

(2)   OEM and model, model year, and other identifiers of the Auto, including Vehicle Identification Number ("VIN");

(3)   If the Auto was used, its mileage and condition when purchased;

(4)   Terms and conditions of purchase, including but not limited to:

(a)   Net price paid (before taxes and including currency and exchange rate, if applicable), and any adjustments to purchase price and incentives or allowances issued or applied at any time, including but not limited to, list price, taxes, commissions, rebates, discounts, refunds, or credit for returns;

(b)   Amount paid at time of purchase, and any remaining balance due, terms of financing, and duration of monthly or installment payments; and

(c)   Shipping or freight costs, and by whom such costs were paid;

(5)   "Ship-from" and vendor "pay-to" address(es) from which the Auto and invoice for it were shipped or sent, date(s) the Auto and invoice were shipped or sent, "ship-to/delivery" and customer "bill/invoice-to"

address(es) where the Auto and invoice were shipped or received, and date(s) the Auto and invoice were received; and

(6)     Monetary or non-monetary components of, or incentives for, the purchase distinct from net price, including but not limited to, (a) any service, benefit, and/or product You received, or provided, in connection with the purchase of the Auto, including service agreements, warranties, or installation, and (b) the value of each such service, benefit, or product;

b.     Purchaser (*e.g.*, consumer, leasing company, *i.e.*, lessor, Auto distributor or dealer) to whom the Auto was sold, including name, address, and other identifiers; and

(1)     Date and place (including address) of sale;

(2)     Terms and conditions of sale, including but not limited to:

(a)     Net price paid by purchaser (before taxes and including currency and exchange rate, if applicable), and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, MSRP, list price, taxes, rebates, discounts, refunds, credits, or allowances for vehicle trade-ins, and OEM and model, model year, VIN, and other identifiers, and mileage of vehicle for which a trade-in allowance was provided; and

(b)     Amount paid at time of sale, and any remaining balance due, terms of financing, and duration of monthly or installment payments;

(3)     If the Auto was used, its mileage and condition when sold;

c.    For leases, lessee (*e.g.*, consumer) to whom the Auto was leased, including name, address, and other identifiers; and

(1)    Date and place (including address) of lease;

(2)    Terms and conditions of lease, including but not limited to:

    (a)    Term of lease;

    (b)    List and/or negotiated amount paid at inception of lease and monthly or periodic lease payments;

    (c)    Money factor, or finance or interest rate;

    (d)    Depreciation and finance charges;

    (e)    Mileage allowance and any excess mileage charges;

    (f)    Deposits and acquisition, disposition, termination, or other fees or charges;

    (g)    Actual and/or proposed residual or resale value of Auto at conclusion of lease term; and

    (h)    Net price paid (before taxes and after any adjustments to price), at inception of lease and at conclusion of lease term, and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, MSRP, list price, taxes, rebates, discounts, refunds, credits or allowances for vehicle trade-ins, and OEM and model, model year and other identifiers, and mileage of vehicle for which a trade-in allowance was provided;

(3)    If the Auto was used, its mileage and condition when leased;

    d.      Monetary or non-monetary components of, or incentives for, the sale or lease distinct from net price, including but not limited to, (1) commissions, and any service, benefit, and/or product the purchaser or lessee received, or provided, in connection with the sale or lease, including service agreements, or warranties, and (2) the value of each such service, benefit, or product;

    e.      Repairs or recalls with respect to the Auto, nature of repair or recall, whether the Auto was returned, and amount of any associated payment, refund or credit;

    f.      Actual and/or estimated direct and indirect purchase, marketing, distribution, selling, leasing and other costs in connection with the purchase and sale or lease of the Auto, both fixed and variable, including but not limited to, direct and indirect costs of management, labor, commissions, real estate, financing, overhead, energy, and freight;

    g.      Your gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements for the purchase, sale and any lease of the Auto;

    h.      Monthly or periodic reports on Auto inventory levels; and

    i.      Each contract or agreement concerning the purchase, sale and any lease of the Auto.

**REQUEST NO. 2:**   Data or documents (in the absence of data) sufficient to show the following information for each (a) Wire Harness Product, or (b) Auto Part purchased by You or on Your behalf:

    a.      Date of purchase;

b.      Seller (*e.g.*, OEM, Auto parts manufacturer or distributor, or Auto dealer) from whom the WHP or Auto Part was purchased, including name, address, and other identifiers;

c.      Manufacturer, name or description, part number, and other identifiers of the WHP or Auto Part, including OEM and model, model year, and other identifiers of the Auto or other product in which the WHP or Auto Part was designed or intended to be installed, and quantity purchased (including measurement unit for quantity);

d.      Terms and conditions on which the WHP or Auto Part was purchased, including but not limited to:

    (1)      Net price of the WHP or Auto Part (including currency and exchange rate, if applicable), and any adjustments to purchase price and incentives or allowances issued or applied at any time, including but not limited to, taxes, amortization and amortization schedule, installment payments, financing, rebates, lump sum or other discounts, refunds, credit for returns, and currency or input cost adjustments; and

    (2)      Shipping or freight costs, and by whom such costs were paid;

e.      "Ship-from" and vendor "pay-to" address(es) from which the WHP or Auto Part and invoice for it were shipped or sent, date(s) the WHP or Auto Part and invoice were shipped or sent, "ship-to/delivery" and customer "bill/invoice-to" address(es) where the WHP or Auto Part and invoice were shipped or received, and date(s) the WHP or Auto Part and invoice were received;

f.      Monetary or non-monetary components of, or incentives for, the purchase of the WHP or Auto Part distinct from net price, including but not limited to, (1) any

service, benefit, and/or product that You provided, or received, in connection with the purchase, including service agreements, warranties, or installation, and (2) the value of each such service, benefit, or product;

g.   Purchaser (*e.g.*, consumer, Auto parts distributor, or Auto dealer), to whom the WHP or Auto Part was sold, including name, address, and other identifiers; and

(1)   Date and place (including address) of sale;

(2)   Terms and conditions of sale, including but not limited to:

(a)   Net price paid by purchaser (before taxes and including currency and exchange rate, if applicable), and any adjustments to sale price and incentives or allowances issued or applied at any time, including but not limited to, list price, taxes, rebates, discounts, refunds, or credit for trade-ins or returns;

(b)   Amount paid at time of sale, and any remaining balance due, terms of financing, and duration of monthly or installment payments;

(c)   Monetary or non-monetary components of, or incentives for, the sale, including but not limited to, (i) commissions, and any service, benefit, and/or product the purchaser received, or provided, in connection with the sale, including service agreements or warranties, and (ii) the value of each such service, benefit, or product;

h.   Information sufficient to track each WHP or Auto Part after it was installed in another product and/or sold, including OEM and model, model year, VIN, and/or part number, and other identifiers of the specific Auto or other product in which

the WHP or Auto Part was installed or for which it was designed or intended to be installed;

i.      Actual and/or estimated direct and indirect purchasing, marketing, distribution or selling, and other costs of goods sold for the WHP or Auto Part, both fixed and variable, including but not limited to, direct and indirect costs of management, labor, overhead, energy, materials, sales and marketing, and freight;

j.      Your gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements for purchase and sale of the WHP or Auto Part;

k.      Each contract or agreement concerning the purchase of the WHP or Auto Part.

**REQUEST NO. 3:**   Documents (to the extent not produced in response to Request Nos. 1-2), including number, code, or data dictionaries or similar documents, sufficient to identify, describe, and explain the (a) manufacturer, supplier, vendor, and customer numbers or codes; (b) product, component, and part numbers or codes; (c) OEM and model, model platform, VIN, and model year numbers or codes; (d) contract or agreement and invoice numbers or codes; (e) transaction types, including standard credits, debits, returns, and other adjustments related to purchases, sales and any leases of Automobiles, WHPs, and Auto Parts; and (f) data fields, that are reflected in data or documents produced in response to Request Nos. 1-2.

**REQUEST NO. 4:**   Documents (to the extent not produced in response to Request Nos. 1-3) sufficient to disclose, identify, describe, and explain (a) the processes, policies, strategies, methods, formulas, factors, guidelines, and sales or price or margin targets used in

purchasing or acquiring the Automobiles, WHPs and Auto Parts later sold or leased by You or on Your behalf, including but not limited to, manuals, handbooks and documents concerning how the prices paid and terms and conditions of purchase were determined, whether prices and terms were negotiated in any way, and, if so, how prices and terms changed and the reasons for those changes, what factors were considered in deciding what Automobiles, WHPs and Auto Parts to purchase or acquire and from whom, and any proposed or actual changes in such processes, policies, strategies, methods, formulas, or factors and the reasons for such changes; and (b) the training or instruction of Your personnel regarding such processes, policies, strategies, methods, formulas, or factors.

**REQUEST NO. 5:** Documents (to the extent not produced in response to Request Nos. 1-4) sufficient to disclose, identify, describe, and explain (a) the processes, policies, strategies, methods, formulas, factors, manuals and handbooks used in determining, setting, computing, quoting, negotiating, or modifying the prices and terms and conditions of sale or lease of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, and any proposed or actual changes in such processes, policies, strategies, methods, formulas, or factors and the reasons for such changes; (b) sales or price or margin targets, warranties, rebates, discounts, off-invoice discounts, credits, allowances, vehicle trade-in credits or allowances, promotional or incentive payments, or other price concessions in selling or leasing such Automobiles, WHPs and Auto Parts; and (c) any sales promotions or incentives offered or advertised in connection with the sale or lease of such Automobiles, WHPs and Auto Parts and the cost of such promotions or incentives.

**REQUEST NO. 6:**   Documents (to the extent not produced in response to Request Nos. 1-5) sufficient to disclose, identify, describe, and explain (a) the training or instruction of sales personnel involved in the sale or lease of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, including but not limited to policies (*e.g.*, sales personnel discretion in adjusting pricing and the parameters of that discretion), strategies, methods, formulas, sales or price or margin targets, guidelines, manuals, and handbooks for sales or lease negotiations with customers or potential customers; and (b) the monetary and non-monetary compensation of such sales personnel, including bonuses and commissions.

**REQUEST NO. 7:**   Documents (to the extent not produced in response to Request Nos. 1-6) sufficient to disclose, identify, describe, and explain the processes, policies, strategies, methods, and formulas regarding inventory management of Automobiles, WHPs and Auto Parts sold or leased by You or on Your behalf, including but not limited to, guidelines, manuals, handbooks, and strategy and planning presentations.

**REQUEST NO. 8:**   Documents (to the extent not produced in response to Request Nos. 1-7) concerning (a) Your competitors, including but not limited to, documents concerning competitors' locations, and descriptions of competitors' businesses, and competitors' pricing and promotions; (b) Your strategies, programs, and plans for competing against Your competitors, including but not limited to, price discounting, sales and promotions, and increased customer services; (c) supply and demand conditions that may affect sales or pricing of Automobiles, WHPs, and Auto Parts; and (d) Your advertising and marketing campaigns, and trade promotions, at the national, regional, and/or dealership levels.

13

**REQUEST NO. 9:**   Documents (to the extent not produced in response to Request Nos. 1-8) sufficient to show Your organizational structure, including but not limited to, the location of all Your building and operation sites, including corporate offices, warehouses, stores, showrooms, and other retail and wholesale locations.

**REQUEST NO. 10:**   Documents (to the extent not produced in response to Request Nos. 1-9) concerning each communication between You or Your counsel and any of the Plaintiffs or their counsel in the Wire Harness MDL.

**REQUEST NO. 11:**   Documents sufficient to disclose, identify, describe, and explain Your policies or practices regarding the retention, destruction, disposal, or preservation of documents and/or electronically stored information, and, if such policies or practices have been different with respect to any category of documents or over different time periods, documents sufficient to disclose, identify, describe, and explain each such category or time period and Your retention policy or practice with respect to each such category or time period.

**REQUEST NO. 12:**   Documents sufficient to disclose, identify, describe, and explain Your electronic database and data processing systems, programs, and outputs thereof, including all mainframe systems, linked area networks, or other applications used by You or on Your behalf to record, store, compute, analyze, or retrieve information concerning the pricing, purchase or acquisition, marketing, sale, lease, manufacturing or production, supply, or distribution of Autos, WHPs and Auto Parts.

## DEFINITIONS

1.     "Automobile" and "Auto" mean a motor vehicle that is principally used for transporting from one to eight passengers and is designed to operate primarily on roads, typically with four wheels, including sedans, pickup trucks, and sport utility vehicles, but excluding motorcycles, all-terrain vehicles, buses, and commercial trucks.

2.     "Auto Part" means an Automobile part in which a Wire Harness Product is a component or incorporated.

3.     "MSRP" means the manufacturer's suggested resale price.

4.     "OEM" means Automobile original equipment manufacturer and the OEM's respective officers, directors, current and former employees, agents, representatives, attorneys, or anyone else acting or who has acted on its behalf.

5.     "Wire Harness MDL" means the Class Cases, Miscellaneous Cases, and Individual Cases, as defined in the Electronic Case Management Protocol Order, ECF No. 665, 2:12-md-02311-MOB-MKM (filed December 23, 2013), entered in the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311, pending in the U.S. District Court for the Eastern District of Michigan, Southern Division, that are associated now or in the future with the Wire Harness Lead Case, Case No. 2:12-cv-00100, which is part of the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311.

6.     "Wire Harness Product(s)" and "WHP(s)" mean automotive wire harness electrical distribution systems used to direct and control electronic components, wiring, and circuit boards in Automobiles, and the following components of such wire harnesses: automotive electrical wiring, automotive wire harnesses, automotive wiring connectors, automotive wiring terminals, cable bonds, electronic control units ("ECUs"), fuse boxes, high voltage wiring, junction blocks, lead wire assemblies, power distributors, relay boxes, and speed sensor wire assemblies.

7.     "You," "Your," and "Your Company" mean [Auto Dealer] and its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity that *is or was subject to its management, direction, or control*, together with its and their present and former directors, officers, employees, agents, representatives, or any Person acting or *purporting to act on its behalf.*

## INSTRUCTIONS

1.     Attached hereto is a copy of the Stipulation and Protective Order Governing Production and Exchange of Confidential Information, ECF No. 200, 2:12-md-02311-MOB-MKM (filed July 10, 2012), entered by the Court in the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 12-md-02311, pending in the U.S. District Court for the Eastern District of Michigan, Southern Division, that governs documents and information produced in the Wire Harness MDL.  You may designate documents for protection under the Protective Order.

2.      The relevant time period for each Request is (i) January 1, 1998 through and including October 31, 2011, excepting data extracted from electronic databases or data summaries for which the relevant time period is January 1, 1998 through and including December 31, 2013, or (ii) such broader time period(s) that the parties in any of the Class Cases, Miscellaneous Cases, and/or Individual Cases in the Wire Harness MDL agree, or the Court rules applies to such discovery from the parties, prior to Your production of documents and data in response to this subpoena.