# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: All Auto Parts Cases | |
| THIS DOCUMENT RELATES TO: All Dealership Actions All End Payor Actions | |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants will take the deposition of Dealership Plaintiff John Greene Chrysler Dodge Jeep, LLC on the matters listed in the attached Schedule A on December 2, 2015 at Winston & Strawn, LLP, 100 N. Tryon St., Charlotte, NC 28202. In accordance with Fed. R. Civ. P. 30(b)(6), Defendants will take the deposition through one or more officers, directors, managing agents, or persons who consent to testify on the deponent's behalf with respect to the matters identified in Schedule A to this Notice of Deposition.

The depositions will be taken upon oral examination before a notary public or other person authorized by law to administer oaths. The depositions shall be recorded by stenographic and videotape methods. The depositions may be used for discovery, at the trial of this action, or for any other purposes permitted by the Federal Rules of Civil Procedure.

1

Date: October 27, 2015         By    /s/ Steven F. Cherry
                                     Steven F. Cherry
                                     WILMER CUTLER PICKERING
                                     HALE AND DORR LLP
                                     1875 Pennsylvania Avenue, NW
                                     Washington, DC 20006
                                     Telephone: (202) 663-6000
                                     Facsimile: (202) 663-6363
                                     steven.cherry@wilmerhale.com

## SCHEDULE A

### DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Schedule is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this Schedule, the following terms are to be interpreted in accordance with these definitions:

1. The terms "all" and "any" mean "any and all," as necessary to make a request inclusive rather than exclusive.

2. The terms "and" and "or" are both used in the inclusive sense, and both require all documents that meet the description of one or more of the disjunctive words or phrases.

3. The terms "include" and "including" denote a portion of a larger whole and are used without limitation.

4. The terms "relate," "refer," "reflect," "relating," "referring," or "reflecting" mean constituting or having some bearing on an indicated subject or mentioning the subject, even if only in passing, including, but not limited to, any document or communication that constitutes, evidences, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, involves or is in any way pertinent to that subject.

5. "Litigation" means all cases consolidated or coordinated with the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 2:12-md-02311-MOB-MKM, in the U.S. District Court for the Eastern District of Michigan, Southern Division.

6. "Auto Parts Product(s)" means the products and components included in any complaint associated with the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 2:12-md-02311-MOB-MKM, in the U.S. District Court for the Eastern District of Michigan, Southern Division. Defendants' use of the definition of "Auto Parts Product(s)" does not constitute an admission of any kind.

7. "Communication" and "communicate" include every manner of transmitting or receiving facts, information, opinions, thoughts, or images from one person to another person, whether orally, including by voice recording (*e.g.*, telephone voicemail system), or in writing.

8. "Concern" and "concerning" mean directly or indirectly supporting, mentioning, relating to, referring to, describing, evidencing, contradicting, comprising, or constituting.

9. "Dealership Plaintiffs' Class Action Complaints" means all complaints filed in, or associated with, this Litigation where an automotive dealership is a named plaintiff.

10. "Defendants" means all defendants in any complaint associated with the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 2:12-md-02311-MOB-MKM, in the

U.S. District Court for the Eastern District of Michigan, Southern Division, and includes each entity's officers, employees, agents, representatives, attorneys, or any individuals or entities acting or who has acted on its behalf.

11. "Document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of the terms "document" and "documents."

12. "Floor plan support" means any direct or indirect financial assistance that an OEM or vehicle distributor offered to You to reduce Your financing costs (*e.g.*, interest payments) for acquiring new vehicles.

13. "Holdback" means the portion of the nominal purchase price You paid for a new vehicle that an OEM returned to You after You sold that vehicle to Your customer.

14. "OEM" means vehicle original equipment manufacturer and its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, and their respective officers, directors, current and former employees, agents, representatives, attorneys, or anyone else acting or who has acted on its or their behalf.

15. "Person" is defined as any natural person or any business, legal or governmental entity, or association.

16. "Transactional Data" means the transactional data produced to or requested by Defendants in any case associated with the master case *In re: Automotive Parts Antitrust Litigation*, Case No. 2:12-md-02311-MOB-MKM, in the U.S. District Court for the Eastern District of Michigan, Southern Division.

17. The terms "You," "Your," and "Your company" shall mean each Dealership Plaintiff being deposed and, whether a private or public entity, includes the predecessors, persons, partners, present and former divisions, branches, authorized agents, servants, employees, officers, directors, representatives, and any other person acting on the Dealership Plaintiff's behalf.

## INSTRUCTIONS

In addition to the requirements set forth in the Federal Rules of Civil Procedure, the following instructions apply to each of the deposition topics set forth herein:

1. Any noun used in the singular form shall be construed and applied to include the plural form, and vice versa.

2. Each topic shall be construed independently, and no topic shall be viewed as limiting the scope of any other topic.

3. The terms defined above and in each individual topic should be construed broadly and to the fullest extent of their meaning to comply with the Federal Rules of Civil Procedure

4

and the Federal Rules of Evidence.

4. If You object to a portion or aspect of a deposition topic, state the grounds for Your objection with specificity.

## AREAS OF DESIGNATION AND INQUIRY

You are required pursuant to Rule 30(b)(6) to produce one or more officers, directors, or managing agents, or other person or persons who consent to testify on Your company's behalf, to testify to all facts known or reasonably available to Your company concerning the matters identified below. Unless otherwise specified, the time period for all matters is March 1, 1996, to the present (or, to the extent that You have asserted any longer time period(s) in connection with Your claims in the Litigation, such longer time period(s)).

1. Your knowledge of the factual basis for the allegations in Dealership Plaintiffs' Class Action Complaints filed in the Litigation related to Defendants' conduct and any injury You sustained as a result of Defendants' alleged conduct.

2. Any analysis or calculations You have performed or received relating to the amount of any damages You incurred as a consequence of the alleged anticompetitive conduct described in the Dealership Plaintiffs' Class Action Complaints, the amount of the alleged overcharges for Auto Parts Products, the amount of pass on of the alleged overcharges from Your OEMs to You, or the amount of any overcharge you passed on to end purchasers. Note that Defendants agree to omit this topic, to the extent that a Dealership Plaintiff represents in a verified interrogatory response at least seven days prior to the deposition that it has not performed or received any non-privileged analysis or calculations relating to the amount of any damages it incurred as a consequence of the alleged anticompetitive conduct described in the Dealership Plaintiffs' Class Action Complaints, the amount of the alleged overcharges for Auto Parts Products, the amount of pass on of the alleged overcharges from OEMs to it, or the amount of any overcharge you passed on to end purchasers in a verified Interrogatory Response.

3. Whether the invoices, OEM reports, DMS (or equivalent) data, and OEM portal documents that You have produced in this Litigation, and any documents on which you relied in responding to any of Defendants' interrogatories were routinely made and kept in the ordinary course of a regularly-conducted business activity, at or near the time of the events they record, by a person or persons with knowledge, or from information transmitted by a person with knowledge, and who reported such knowledge in the regular course of business. Note that Defendants agree to omit this topic to the extent that a Dealer Plaintiff confirms in a verified Interrogatory Response at least seven days prior to the deposition that invoices, OEM reports, DMS (or equivalent) data, and OEM portal documents that it has produced in this Litigation, including any documents on which it relied in responding to any of Defendants' interrogatories, are authentic and satisfy the business records exception set forth in Rule 803(6). Such Interrogatory Response may state that the Dealer Plaintiff reserves any other objections.

4. The transactional purchase, sales, and cost data (including DMS data) You have

5

produced.

5. Your policies, procedures, and practices for creation and maintenance of invoices, deal files, DMS or equivalent electronic data, OEM reports, OEM portal documents, and data and/or documents reflecting incentive payments and other monies, credits, or offsets received from OEMs (*e.g.*, incentives, rebates, holdback, reserve, and/or other discounts) in connection with the purchase or sale of new vehicles, and an explanation of any gaps or absences in Your production of same.

6. Your organizational structure, any purchases or sales of Your business, mergers, acquisitions, bankruptcy or other cessation of business operations, that resulted in You gaining or losing any claims that You purport to assert in this litigation.

7. Your competitors, including but not limited to their locations, businesses, pricing of new vehicles, and market share.

8. Your knowledge of the marketplace for new vehicles, including price trends for such products during the relevant time period.

9. Your purchases of new vehicles from any OEM or vehicle distributor, including:

    (a) the person(s) and/or entities principally responsible for negotiating vehicle purchases on Your behalf; Note that Defendants agree to omit this topic to the extent that a Dealer Plaintiff provides in a verified Interrogatory Response at least seven days prior to the deposition the identities of the individuals who have been principally responsible for the purchases of new vehicles during the class period.

    (b) the factors that affected the Dealer Plaintiff's ultimate costs of acquiring vehicles, such as discounts, incentives, floor plan support, allowances, rebates, refunds, and holdback offered or paid by an OEM or distributor;

    (c) the volume of purchases, to the extent not evidenced in the data or documents You produced;

    (d) a description of Your purchasing process; and

    (e) Whether You knew of similarities or differences in Your purchasing process and those of other new vehicle dealerships and, if so, an explanation of those similarities and differences.

10. The terms of any agreements with any OEM(s), if any, that influenced, governed, or controlled Your purchasing process; the incentives, rebates, refunds, holdback, reserve, allowances, and floor plan support offered or paid to You by an OEM or distributor; and Your pricing and/or sale of vehicles to customers.

11. Your sales and leases of new vehicles, including:

    (a) the person(s) and/or entities principally responsible for Your sales and leases (*i.e.*,

6

your sales managers);

(b) the make, model, and year of new vehicles that You sold or leased and the time period during which You sold and leased them, to the extent not evidenced in the data or documents You produced;

(c) Your revenue, profit margins, and profit on new vehicles sold or leased (*i.e.*, front end);

Note that Defendants agree to omit this topic if a Dealer Plaintiff represents in a verified interrogatory response at least seven days prior to the deposition that it does not know and cannot ascertain this information for any time periods during the alleged class period for which it has not produced DMS data.

(d) Your revenue, profit margins, and profits on financing, insurance, and warranty plans, and aftermarket products and services sold or offered in connection with the sale or lease of new vehicles (*i.e.*, back-end);

Note that Defendants agree to omit this topic if a Dealer Plaintiff represents in a verified interrogatory response at least seven days prior to the deposition that it does not know and cannot ascertain this information for any time periods during the alleged class period for which it has not produced DMS data,.

(e) Your costs associated with selling or leasing new vehicles, such as overhead, inspection fees, and delivery charges;

(f) The process and terms with respect to Your sales or transfers of vehicles between Your company and any other automotive dealership; and

(g) Your knowledge of similarities or differences between Your sales and leases and the sales and leasing behaviors of other automotive dealerships.


12. Your pricing of sales and leases of new vehicles, including:

    (a) the person(s) and/or entities principally responsible for setting and/or approving prices for new vehicle sales;

    (b) how You determine new vehicle pricing;

    (c) Reasons for variation in pricing among customers;

    (d) any promotions, rebates, discounts, and other monetary or non-monetary incentives, provided by You, an OEM or distributor to Your salespeople or Your customers, or by a governmental entity to You, Your salespeople, or Your customers;

(e) Your methods of assessing trade-in value in connection with the sales and leases of new vehicles, any promotions run in connection with trade-ins, and how those methods and promotions affected pricing decisions on the sale of new vehicles;

(f) Your participation in any automobile clubs (such as AAA), buying services and/or programs (such as Costco) in connection with the sales and leases of new vehicles;

(g) option packages or specials offered by You or Your OEM(s);

(h) any financing, insurance and warranty plans and aftermarket products and services sold or offered in connection with the sale or lease of new vehicles (*i.e.*, back-end); and

(i) Your knowledge of similarities and differences between Your sales and leasing pricing and that of other automotive dealerships.

13. Your DMS provider(s) and a description of the data any DMS provider maintained, the periods for which any DMS provider maintained data, and the extent to which any data maintained by a DMS provider may be accessible to the Dealer Plaintiff or otherwise from the DMS provider.

14. The facts, issues, and circumstances of any other class actions in which You have participated involving Your purchase or sale of new vehicles (including the front and/or back end of the transaction), including the nature of the claims and defenses, and the disposition of the action.

15. The following transactions and related documents, data, and records:

| VIN | Make | Model | Vehicle Year | Deal Book Date |
|---|---|---|---|---|
| 1C3CCCAB5FN622356 | CHRYSLER | 200 LIMITED | 2015 | 4/24/2015 |
| 2C3CCAET9DH670844 | CHRYSLER | 300 C | 2013 | 7/31/2013 |
| 2C3CDXCT9EH300501 | DODGE | CHARGER R/T | 2014 | 6/16/2014 |
| 2C3CDXHG7DH502618 | DODGE | CHARGER SXT | 2013 | 12/31/2012 |
| 1D8HD48N68F152874 | DODGE | DURANGO ADVENTURER / SLT | 2008 | 11/14/2008 |
| 1B4HS48Z52F215510 | DODGE | DURANGO SLT | 2002 | 10/30/2002 |
| 2D4FV47V16H124161 | DODGE | MAGNUM SE / SXT | 2006 | 2/28/2007 |
| 1D7HU18N83J647991 | DODGE | RAM 1500 LARAMIE / SLT / ST | 2003 | 5/30/2003 |
| 1C4NJCEA7ED821389 | JEEP | COMPASS LATITUDE | 2014 | 10/31/2014 |

| 1C4RJFBMXEC352404 | JEEP | GRAND CHEROKEE LIMITED | 2014 | 6/30/2014 |
| --- | --- | --- | --- | --- |
| 1J4GL58K65W559267 | JEEP | LIBERTY LIMITED | 2005 | 11/25/2005 |
| 3C6UR5DJ9EG266361 | RAM | 2500 SLT | 2014 | 7/18/2014 |
| 1B4GP44G6YB809945 | DODGE | GRAND CARAVAN SE / SPORT | 2000 | 9/28/2000 |
| 1B4GP44G2YB672583 | DODGE | GRAND CARAVAN SE / SPORT | 2000 | 10/6/2000 |
| 2D4GP44L85R354404 | DODGE | GRAND CARAVAN SXT | 2005 | 1/26/2005 |
| 2D4GP44L15R281005 | DODGE | GRAND CARAVAN SXT | 2005 | 2/28/2005 |
| 1D7HA18D13S329446 | DODGE | RAM 1500 LARAMIE / SLT / ST | 2003 | 10/27/2003 |
| 1D7HU18D23J602827 | DODGE | RAM 1500 LARAMIE / SLT / ST | 2003 | 11/28/2003 |
| 1D7HU18D94S696877 | DODGE | RAM 1500 LARAMIE / SLT / ST | 2004 | 4/21/2004 |
| 1D7HA18DX4J124523 | DODGE | RAM 1500 LARAMIE / SLT / ST | 2004 | 4/22/2004 |
| 1J4GW48S72C267500 | JEEP | GRAND CHEROKEE LAREDO | 2002 | 4/20/2002 |
| 1J4GW48S92C228505 | JEEP | GRAND CHEROKEE LAREDO | 2002 | 6/6/2002 |
| 1J8FT28WX8D683960 | JEEP | PATRIOT SPORT | 2008 | 4/9/2008 |
| 1J8FF28W68D602038 | JEEP | PATRIOT SPORT | 2008 | 5/2/2008 |