# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311 <br> Honorable Marianne O. Battani |
| In Re:  All Auto Parts Cases | 2:12-MD-02311-MOB-MKM |
| THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES | **Oral Argument Requested** |

## THE PARTIES' MOTION TO COMPEL DISCOVERY FROM NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS

Pursuant to Federal Rules of Civil Procedure 26(b)(1) and 45, the Parties ("Parties"[1]) move to compel certain subpoenaed OEMs and their affiliates ("Specified Subpoenaed Entities" or "SSEs"[2]) to produce data and documents responsive to certain narrowed discovery requests in the uniform subpoena served on OEMs and related to all Auto Parts cases in this MDL.

1.      The Parties' Motion is based on and supported by the accompanying Memorandum and the Declaration of Steven N. Williams ("Williams Decl."), oral argument of counsel, and such other materials as the Court may consider.

2.      The Parties, collectively, served on the SSEs uniform subpoenas, seeking data and documents relevant to all coordinated parts actions at issue in in the *Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM (E.D. Mich.), between mid-July and mid-August of 2015.

---

[1] The Parties consist of End Payor Plaintiffs, Automobile Dealer Plaintiffs, Truck and Equipment Dealer Plaintiffs, the State of Florida, the State of Indiana, and all Defendants in the Automotive Parts Antitrust Litigation, No. 2:12-md-02311-MOB-MKM (E.D. Mich.).

[2] *See* Williams Decl. Ex. B.

3.      Counsel for the Parties met and conferred with counsel for the SSEs by telephone on October 2, and by e-mail and letter correspondence multiple times over the following several months, but were unable to reach agreement that the SSEs would produce any of the requested discovery.  On December 24, 2015, the Parties informed SSEs of their intention to file a motion to compel.

4.      The Parties move to compel responses to the following narrowed requests of the subpoena: Requests 1(a)–(g), (l), (m); 3; 4(a)(1)–(2); 4(a)(3)(a)–(e), (h), (k); 4(a)(4); 4(a)(7), (8), (13); 4(b), (e), (h), (j); 5; 13; 14(c); 15; 16; 22; 23(2); 28 (last two sentences); 30; 33; and 34.

5.      As required by Local Rule 7.1(a), counsel for the Parties sought concurrence from counsel for the SSEs via e-mail conferences on January 13, 14, and 17, 2016. *See* Williams Decl. Exs. Q, R, S.  During these conferences, counsel for the Parties explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

Dated: January 19, 2016                          Respectfully submitted,

                                                **BUTZEL LONG**

                                                */s/ Sheldon H. Klein*
                                                Sheldon H. Klein (P41062)
                                                David F. DuMouchel (P25658)
                                                **BUTZEL LONG**
                                                150 West Jefferson, Suite 100
                                                Detroit, MI 48226
                                                Tel.: (313) 225-7000
                                                Fax: (313) 225-7080
                                                sklein@butzel.com
                                                dumouchd@butzel.com

                                                W. Todd Miller
                                                **BAKER & MILLER PLLC**
                                                2401 Pennsylvania Ave., NW, Suite 300
                                                Washington, DC 20037
                                                Tel.: (202) 663-7820

Fax: (202) 663-7849
TMiller@bakerandmiller.com

*Attorneys for Defendants TRAM, Inc. and Tokai Rika Co., Ltd.*

**WILMER CUTLER PICKERING HALE AND DORR LLP**

*/s/  Steven F. Cherry* (w/ consent)
Steven F. Cherry
Patrick Carome
David P. Donovan
Brian C. Smith
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
steven.cherry@wilmerhale.com
patrick.carome@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com

*Counsel for Defendants DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, DENSO Korea Automotive Corporation, DENSO Products & Services Americas, ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., ASMO Manufacturing, Inc., and ASMO North Carolina Inc.*

Steven M. Zarowny
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Counsel for Defendant DENSO International America, Inc.*

3

**LANE POWELL PC**

*/s/ Larry S. Gangnes* (w/consent)
Larry S. Gangnes
**LANE POWELL PC**
1420 Fifth Ave., Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Tel.: (206) 223-7000
Fax: (206) 223-7107
gangnesl@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
**LANE POWELL PC**
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Tel.: (503) 778-2100
Fax: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com
hawkesp@lanepowell.com

Richard D. Visio (P30246)
Ronald S. Nixon (P57117)
**KEMP KLEIN LAW FIRM**
201 W. Big Beaver, Suite 600
Troy, MI 48084
Tel.: (248) 528-1111
Fax: (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric Co., Ltd. and American Furukawa, Inc.*

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Barry A. Pupkin* (w/consent)
Barry A. Pupkin
Iain R. McPhie
Jeremy W. Dutra

**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 457-6315
Barry.Pupkin@squirepb.com
Iain.McPhie@squirepb.com
Jeremy.Dutra@squirepb.com

*Counsel for Defendants Aisan Industry*
*Co., Ltd., Aisan Corporation of America,*
*Franklin Precision Industry, Inc., and*
*Hyundam Industrial Co., Ltd.*

**CLEARY GOTTLIEB STEEN &**
**HAMILTON LLP**

*/s/ Jeremy Calsyn* (w/consent)
Jeremy J. Calsyn
Bradley Justus
**CLEARY GOTTLIEB STEEN &**
**HAMILTON LLP**
2000 Pennsylvania Ave., NW
Washington, DC 20006
Tel.: (202) 974-1500
Fax: (202) 974-1999
jcalsyn@cgsh.com
bjustus@cgsh.com

*Counsel for Defendants Aisin Seiki Co.,*
*Ltd., and Aisin Automotive Casting, LLC*

**COVINGTON & BURLING LLP**

*/s/ Anita F. Stork* (w/consent)
Anita F. Stork
Gretchen Hoff Varner
Cortlin H. Lannin
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com
ghoffvarner@cov.com
clannin@cov.com

Michael J. Fanelli
Ashley E. Bass
COVINGTON & BURLING LLP
One CityCenter

850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Fax: (202) 662-5383
mfanelli@cov.com
abass@cov.com

*Attorneys for Defendants Alps Electric
Co., Ltd.; Alps Electric (North America),
Inc.; and Alps Automotive, Inc.*

**BROOKS WILKINS SHARKEY &
TURCO PLLC**

*/s/Maureen T. Taylor* (w/consent)
Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
**BROOKS WILKINS SHARKEY &
TURCO PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Alps Electric
Co., Ltd.; Alps Electric (North America),
Inc.; and Alps Automotive, Inc.*

**WEIL, GOTSHAL & MANGES LLP**

*/s/ Steve A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
Kajetan Rozga
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com
kajetan.rozga@weil.com

*/s/ Frederick R. Juckniess* (w/consent)
Frederick R. Juckniess
**SCHIFF HARDIN LLP**
350 South Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1504
fjuckniess@schiffhardin.com

*Attorneys for Defendants Bridgestone Corporation and Bridgestone APM Company*

**WEIL, GOTSHAL & MANGES LLP**

*/s/  Steve A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com

Fred K. Herrmann
Joanne G. Swanson
Matthew L. Powell
**KERR, RUSSELL AND WEBER PLC**
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
Fax (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russell.com

*Counsel for Defendants Calsonic Kansei Corporation and Calsonic Kansei North America, Inc.*

**CALFEE, HALTER & GRISWOLD LLP**

*/s/  Ronald M. Mcmillan* (w/consent)
John J. Ekund (OH 0010895)
Maura L. Hughes (OH 0061929)
Ronald A. McMillan (OH 0072437)
Alexander B. Reich (OH 0084869)
**CALFEE, HALTER & GRISWOLD LLP**
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
jeklund@calfee.com
mhughes@calfee.com

rmcmillan@calfee.com
areich@calfee.com

*Counsel for Defendant Continental
Automotive Systems, Inc., Continental
Automotive Electronics, LLC and
Continental Automotive Korea Ltd.*

**McDONALD HOPKINS PLC**

*/s/Timothy J. Lowe*
Timothy J. Lowe (P68669)
39533 Woodward Ave., Ste. 318
Bloomfield Hills, MI 48304
Telephone: (248) 220-1359
Fax: (248) 646-5075
tlowe@mcdonaldhopkins.com

*Attorneys for Defendants Diamond
Electric Mfg. Co., Ltd.,
Diamond Electric Mfg. Corp., Stanley
Electric Co., Ltd.,
Stanley Electric U.S. Co., Inc., and II
Stanley Co., Inc.*

**SIMPSON THACHER & BARTLETT
LLP**

*/s/ Matthew J. Reilly* (w/consent)
Matthew J. Reilly
Abram J. Ellis
SIMPSON THACHER & BARTLETT
LLP
900 G Street, N.W.
Washington, D.C. 20001
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
SIMPSON THACHER & BARTLETT
LLP
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corp.*

**PORTER WRIGHT MORRIS & ARTHUR LLP**

*/s/ Donald M. Barnes* (w/consent)
Donald M. Barnes
Molly S. Crabtree
Jay L. Levine
Christopher C. Yook
PORTER WRIGHT MORRIS & ARTHUR LLP
1900 K Street, NW, Ste. 1110
Washington, DC 20006
Tel.: (202) 778-3054
Fax: (202) 778-3063
dbarnes@porterwright.com
mcrabtree@porterwright.com
jlevine@porterwright.com
cyook@porterwright.com

*Counsel for Defendants G.S. Electech, Inc., G.S.W. Manufacturing, Inc., and G.S. Wiring Systems, Inc.*

**VINSON & ELKINS LLP**

*/s/ Craig P. Seebald* (w/consent)
Craig P. Seebald
Alden L. Atkins
Lindsey R. Vaala
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave NW
Suite 500-W
Washington, DC 20037
Tel.: (202) 639-6500
Fax: (202) 639-6604
cseebald@velaw.com
aatkins@velaw.com
lvaala@velaw.com

*Counsel for Defendant Hitachi Automotive Systems Americas, Inc.*

**SHEARMAN & STERLING LLP**

*/s/ Heather L. Kafele* (w/consent)
Heather L. Kafele
Keith R. Palfin
**SHEARMAN & STERLING LLP**
801 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Tel.: (202) 508-8097
Fax: (202) 508-8100
heather.kafele@shearman.com
keith.palfin@shearman.com

Brian M. Akkashian
**PAESANO AKKASHIAN, PC**
132 N. Old Woodward Avenue
Birmingham, MI 48009
Tel.: (248) 792-6886
bakkashian@paesanoakkashian.com

*Counsel for Defendants JTEKT
Corporation and JTEKT Automotive
North America, Inc., JTEKT North
America Corporation*

**PILLSBURY WINTHROP SHAW
PITTMAN LLP**

*/s/ William M. Sullivan Jr.* (w/consent)
William M. Sullivan Jr.
Michael L. Sibarium
Jeetander T. Dulani
**PILLSBURY WINTHROP SHAW
PITTMAN LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036-3006
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
wsullivan@pillsburylaw.com
michael.sibarium@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

*Counsel for Defendant Mikuni America
Corporation*

**FARMER BROWNSTEIN JAEGER
LLP**

*/s/ William S. Farmer* (w/consent)
William S. Farmer
David C. Brownstein
FARMER BROWNSTEIN JAEGER
LLP

235 Montgomery Street, Suite 835
San Francisco, CA 94102
Tel.: (415) 795-2050
Fax: (415) 520-5678
wfarmer@fbj-law.com
dbrownstein@fbj-law.com

*Counsel for Defendants Mitsuba*
*Corporation and American Mitsuba*
*Corporation*

**FOLEY & LARDNER LLP**

*/s/ Scott T. Seabolt  (w/consent)*
Scott T. Seabolt
Foley & Lardner LLP
One Detroit Center
500 Woodward Avenue
Suite 2700
Detroit, MI 48226-3489
P 313.234.7115

*Counsel for Defendants Mitsubishi*
*Heavy Industries America, Inc. and*
*Mitsubishi Heavy Industries Climate*
*Control, Inc.*

**LANE POWELL PC**


*/s/  Kenneth R. Davis* (w/consent)
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi
**LANE POWELL PC**
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
503-778-2100
503-778-2200 (facsimile)
davisk@lanepowell.com
bachmanc@lanepowell.com
sandsd@lanepowell.com

**LANE POWELL PC**

*/s/  Larry S. Gangnes* (w/consent)
Larry S. Gangnes
Connor B. Shively
**LANE POWELL PC**
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338
206-223-7000

11

206-223-7107 (facsimile)
gangnesl@lanepowell.com
shivelyc@lanepowell.com

*Counsel for Defendants Nachi America
Inc. and Nachi-Fujikoshi Corporation*

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

*/s/  Jeremy J. Calsyn* (w/consent)
Jeremy J. Calsyn (DC Bar #467737)
Steven J. Kaiser (DC Bar #454251)
Teale Toweill (DC Bar #996061)
Carl Lawrence Malm (DC Bar #1104489)
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
jcalsyn@cgsh.com
skaiser@cgsh.com
ttoweill@cgsh.com
lmalm@cgsh.com

*Counsel for Defendants NSK Americas,
Inc. and NSK Ltd.*

**WINSTON & STRAWN LLP**

*/s/  Jeffrey L. Kessler* (w/consent)
Jeffrey L. Kessler
A. Paul Victor
Molly M. Donovan
Jeffrey J. Amato
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
jamato@winston.com

*Counsel for Defendants NTN
Corporation and NTN USA Corporation*

**ALLEN & OVERY LLP**

*/s/  John Roberti* (w/consent)
John Roberti
Matthew Boucher

**ALLEN & OVERY LLP**
1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com
matthew.boucher@allenovery.com

Michael S. Feldberg
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
212-610-6360
michael.feldberg@allenovery.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Defendants Robert Bosch
LLC and Robert Bosch GmbH*

**ICE MILLER LLP**


/s/ Matthew L. Fornshell (w/ consent)
Matthew L. Fornshell
**ICE MILLER LLP**
250 West Street
Suite 700
Columbus, OH 43215
Telephone: (614) 462-1061
Facsimile: (614) 222-3692
Matthew.Fornshell@icemiller.com

*Counsel for Defendants Showa
Corporation and American Showa Inc.*

**SIMPSON THACHER & BARTLETT
LLP**

*/s/  Matthew J. Reilly* (w/consent)
Matthew J. Reilly
Abram J. Ellis
David T. Shogren
**SIMPSON THACHER & BARTLETT
LLP**

1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com
dshogren@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT
LLP**
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Stanley Electric
Co., Ltd., Stanley Electric U.S. Co., Inc.,
and II Stanley Co., Inc.*

**MILLER, CANFIELD, PADDOCK &
STONE P.L.C.**

*/s/ Larry J. Saylor* (w/consent)
Larry J. Saylor
**MILLER, CANFIELD, PADDOCK &
STONE P.L.C.**
150 W. Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 496-7986
Facsimile: (313) 496-8454
Saylor@MillerCanfield.com

*Counsel for Defendants Sumitomo Riko
Company Limited and DTR Industries,
Inc.*

**GIARMARCO, MULLINS &
HORTON, P.C.**

*/s/ William H. Horton* (w/consent)
William H. Horton (P31567)
**GIARMARCO, MULLINS &
HORTON, P.C.**
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060
bhorton@gmhlaw.com

14

*Counsel for Defendants Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.); and Sumitomo Wiring Systems (U.S.A.) Inc.*

**WILLIAMS & CONNOLLY LLP**

*/s/  David M. Zinn* (w/consent)
David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Defendants Takata Corporation and TK Holdings, Inc.*

*/s/  Bradley J. Schram*  (w/consent)
**HERTZ SCHRAM PC**
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
Tel.: (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Defendants Toyo Tire & Rubber Co., Ltd., Toyo Automotive Parts (USA), Inc., Toyo Tire North America Manufacturing Inc., and Toyo Tire North America OE Sales LLC*

**BAKER BOTTS LLP**

*/s/  Randall J. Turk* (w/consent)
Randall J. Turk
John Taladay
Mark Miller
Heather Souder Choi
Sterling A. Marchand
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400
Phone: 202.639.7700
Fax: 202.639.7890

15

randy.turk@bakerbotts.com
john.taladay@bakerbotts.com
mark.miller@bakerbotts.com
heather.choi@bakerbotts.com
sterling.marchand@bakerbotts.com

*Counsel for Defendants Toyoda Gosei
Co., Ltd., TG Missouri Corporation, and
Toyoda Gosei North America
Corporation*

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

*/s/  Brian Byrne* (w/consent)
Brian Byrne
Ryan M. Davis
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2000 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 974-1850
Facsimile: (202) 974-1999
bbyrne@cgsh.com
rmdavis@cgsh.com

*Counsel for Defendants Valeo Japan Co.,
Ltd., Valeo Inc., Valeo Electrical
Systems, Inc., and Valeo Climate Control
Corp.*

**KERR, RUSSELL AND WEBER,
PLC**

*/s/ Joanne Geha Swanson* (w/consent)
Joanne Geha Swanson (P33594)
Fred K. Herrmann (P49519)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*Counsel for Defendants Yamashita
Rubber Co., Ltd. and YUSA Corporation*

**WHITE & CASE LLP**

*/s/ Christopher M. Curran*
Christopher M. Curran
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036

16

Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Counsel for Defendant Maruyasu
Industries Co., Ltd.*

**KERR, RUSSELL AND WEBER,
PLC**

*/s/ Joanne Geha Swanson (w/consent)*
Joanne Geha Swanson (P33594)
Fred K. Herrmann (P49519)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*Counsel for Defendants Fujikura Ltd. and
Fujikura Automotive America LLC*

*/s/ Steven N. Williams*    (w/consent)
Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY,
LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029

Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the
Proposed End-Payor Plaintiff Classes*

E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for End-Payor
Plaintiffs*

**DUANE MORRIS LLP**

*/s/ J. Manly Parks* (w/consent)
Wayne A. Mack
J. Manly Parks
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com

*Counsel for Truck and Equipment Dealer
Plaintiffs*

**MANTESE HONIGMAN, P.C.**

*/s/ Gerard Mantese*  (w/consent)
Gerard V. Mantese
(Michigan Bar No. P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road

Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com

*Interim Liaison Counsel for Dealership Plaintiffs*

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
**CUNEO, GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com

*Interim Co-Lead Class Counsel for Dealership Plaintiffs*

**Pamela Jo Bondi**
**Attorney General**
**State of Florida**

*/s/ Timothy M. Fraser* (w/consent)
**Office of the Attorney General**
**State of Florida**
PL-01 The Capitol
Tallahassee, FL 32399-1050

Timothy Fraser
Assistant Attorney General
Antitrust Division

Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399
Direct: 850-414-3733
timothy.fraser@myfloridalegal.com

**RYNBRANDT & ASSOCIATES, PLLC**

*/s/Kevin Abraham Rynbrandt (*w/consent)
Kevin Abraham Rynbrandt (P46699)
Business Address:
1000 Front Street, N.W.
Grand Rapids, MI  49504
(616) 915-9266
kar@rynbrandt.com

*Counsel for Plaintiffs*
*Indiana Attorney General's Office*
Indiana Government Building South
302 West Washington Street
5th Floor
Indianapolis, IN 46204
Phone:  (317) 232 6201
Fax:  (317) 232 7979

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION** | Master File No. 12-md-02311 <br> Honorable Marianne O. Battani |
| **In Re:  All Auto Parts Cases** | 2:12-MD-02311-MOB-MKM |
| **THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES** | **Oral Argument Requested** |

**MEMORANDUM IN SUPPORT OF THE PARTIES' MOTION TO COMPEL**
**DISCOVERY FROM NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS**

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUE ................................................................................... iii

TABLE OF AUTHORITIES ...................................................................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................. vi

SUMMARY OF ARGUMENT ....................................................................................1

BACKGROUND ........................................................................................................5

ARGUMENT ...........................................................................................................12

I.  The DISCOVERY SOUGHT IS Highly Relevant to the Parties' Claims and
    Defenses and to Class Certification ...............................................................14

    A.  Discovery Regarding OEMs' Purchases of Parts and Factors Affecting
    Part Prices ...............................................................................................14

        i   Defendants' Statement ..................................................................14

        ii  Plaintiffs' Statement.....................................................................17

        iii ADPs' Statement..........................................................................19

    B.  Discovery Regarding Each OEM's Sales of Vehicles to Dealers, the
    Effect, If Any, of Any Overcharge in the Price of Component Parts, and
    Other Factors Affecting the Vehicle Prices ............................................19

        i   Defendants' Statement ..................................................................19

        ii  EPPs' Statement...........................................................................22

        iii ADPs' Statement..........................................................................24

        iv  TEDPs' Statement........................................................................25

    C.  Discovery Regarding the Sales of Vehicles to End Payors and Factors
    Affecting the Vehicle Prices ...................................................................25

        i   Defendants' Statement ..................................................................25

        ii  EPPs' Statement...........................................................................27

        iii ADPs' Statement..........................................................................28

II. THE DISCOVERY SOUGHT IS, UNDER EVERY FACTOR THE COURT
    MUST CONSIDER, APPROPRIATE AND PROPORTIONATE TO THE
    NEEDS OF THIS CASE ...............................................................................28

    A.  The Issues at Stake and Amounts in Controversy in these Actions Weigh
    in Favor of Compelling this Discovery....................................................29

    B.  The Parties' Relative Access to the Discovery Sought Weighs in Favor of
    Granting this Discovery, as OEMs are Solely in Possession of the Majority
    of the Information Sought in the Narrowed Requests ...............................29

C.    OEMs Are Large, Sophisticated Entities with Substantial Resources...................30

D.    The Narrowed Requests Seek Information that is Very Important to the Parties' Claims and Defenses and to Class Certification......................................31

E.    In Light of the Parties' Numerous and Meaningful Concessions, OEMs Cannot Meet their "Particularly Heavy Burden" of Showing that the Value of the Discovery is Outweighed by Burden or Expense ........................................32

        i        OEMs May Prioritize Productions Relating to the Lead Three Cases ..................................................................................................32

        ii       The Parties Offer to Hold in Abeyance Requests to Various Smaller Subpoenaed Entities ....................................................33

        iii     The Parties Are Willing to Hold in Abeyance Subpoenas to All Non-Core Affiliated Entities....................................................34

        iv     The Parties Are Willing to Share Reasonable Costs and OEMs Cannot Continue to Delay Production Until All Cost Issues Are Resolved.........................................................................................35

CONCLUSION.........................................................................................................................36

## <u>STATEMENT OF THE ISSUE</u>

1.      Whether the Court should compel certain original equipment manufacturers ("OEMs") and affiliated entities to produce discovery responsive to a limited number of narrowed requests seeking data and information regarding pricing and key terms of the OEMs' purchases of vehicle parts, the OEMs' sales of vehicles to Dealers, and the sales or leases of those vehicles to End Payors—all of which are highly relevant to the claims and defenses in the auto parts litigations, as well as to class certification, and are proportional to the needs of the case.

**Answer:**  Yes

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. FBI*,
    194 F.R.D. 316 (D.D.C. 2000)...................................................................................12, 13, 28

*In re Auto. Parts Antitrust Litig.*,
    Nos. 12–cv–00102, 12–cv–00103, 2013 WL 2456612 (E.D. Mich. June 6, 2013)...............25

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
    2012 WL 4747441 (E.D.N.Y. Oct. 4, 2012).........................................................................35

*Bouldis v. U.S. Suzuki Motor Corp.*,
    711 F.2d 1319 (6th Cir. 1983)...............................................................................................21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2013 WL 5428139 (N.D. Cal. June 20, 2013).........................................................22, 23, 28

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
    No. 11-cv-00009, 2015 WL 6181748 (D. Del. Oct. 21, 2015)........................................20, 32

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    No. 2:06-MC-0034, 2006 WL 2871834 (S.D. Ohio Sept. 25, 2006).....................................13

*Covey Oil Co. v. Cont'l Oil Co.*,
    340 F.2d 993 (10th Cir. 1965) ..............................................................................................30

*In re CRT Antitrust Litig.*,
    2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ..............................................................23, 28

*Devault v. Isdale*,
    No. 6:15-CV-00135, 2016 WL 25956 (M.D. Fla. Jan. 4, 2016) ...........................................32

*Fosbre v. Las Vegas Sands Corp.*,
    No. 2:10-cv-00765, 2016 WL 54202 (D. Nev. Jan. 5, 2016) ................................................31

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008)..........................................................................................20

*In re Mushroom Direct Purchaser Antitrust Litig.*,
    No. 06-0620, 2012 WL 298480 (E.D. Pa. Jan. 31, 2012)...............................................13, 30

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008).....................................................................................................19

*In re Optical Disk Drive Antitrust Litig.*,
  303 F.R.D. 311 (N.D. Cal. 2014) ........................................................................15

*In re Polyurethane Foam*,
  2014 WL 6461355 (N.D. Ohio Nov. 17, 2014) ........................................23, 24, 32

*In re Processed Egg Prods. Antitrust Litig.*,
  No. 08-md-2002, 2015 WL 7067790 (E.D. Pa. Nov. 12, 2015) .....................15, 16

*State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*,
  No. CV-2007-0051 (ENV)(MDG), 2007 WL 2993840 (E.D.N.Y. Oct. 10, 2007) ................30

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  264 F.R.D. 603 (N.D. Cal. 2009) ........................................................................17

*In re Subpoenas to Plains All Am. Pipeline, L.P.*,
  No. H-13-2975, 2014 WL 204447 (S.D. Tex. Jan. 17, 2014) .................................12

*Taylor v. Universal Auto Grp. I, Inc.*,
  No. 14-mc-50, 2015 WL 1810316 (S.D. Ohio Apr. 17, 2015) ...............................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2012 WL 555090 (N.D. Cal. Feb. 21, 2012) .......................................................22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal 2010) ........................................................................22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07–1827 SI, 2012 WL 6709621 (N.D. Cal. Dec. 26, 2012), *aff'd*, No. 13-17408, 2016
  WL 145998 (9th Cir. Jan. 7, 2016) ....................................................................26

*United States v. Blue Cross Blue Shield of Mich.*,
  No. 10-CV-14155, 2012 WL 4513600 (E.D. Mich. Oct. 1, 2012) ...............12, 35, 36

*Wiwa v. Royal Dutch Petroleum Co.*,
  392 F.3d 812 (5th Cir. 2004) ............................................................................13

**Statutes**

Fed. R. Civ. P. 23 ...................................................................................................2, 32

Fed. R. Civ. P. 26 .............................................................................................12, 13, 28

Fed. R. Civ. P. 26(b)(1) .....................................................................................12, 13, 28

Fed. R. Civ. P. 45 ....................................................................................................12

Fed. R. Civ. P. 45(a)(1)(iii) .......................................................................................34

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*United States v. Blue Cross Blue Shield of Mich.*,
    No. 10-CV-14155, 2012 WL 4513600 (E.D. Mich. Oct. 1, 2012) ..............................12, 35, 36

## SUMMARY OF ARGUMENT

The Parties[1] respectfully move to enforce certain requests of a Subpoena[2] seeking the production of documents and data from certain members of a group of coordinating non-party OEMs and their affiliated entities ("Specified Subpoenaed Entities," or "SSEs"[3]).[4]  The SSEs are sixteen OEMs, and their affiliates, that have chosen to jointly negotiate with the Parties.

As ordered by Judge Battani, the Parties collaborated to serve OEMs with a targeted set of discovery requests seeking documents and information highly relevant to the auto parts cases. During the course of the four month long meet and confer process, the Parties substantially narrowed the scope of their requests and offered additional meaningful concessions to reduce the burdens on the SSEs.  Despite the Parties' meaningful offers of compromise, the SSEs ultimately offered to produce only two limited categories of documents.  This is in contrast to the approach of other non-SSEs, which have engaged in reasonable negotiations and, in some cases, have already begun producing documents and data.  In light of the SSEs' unreasonable position on discovery, the Parties had no choice but to file this motion.

---

[1] The Parties consist of End Payor Plaintiffs ("EPPs"), Automobile Dealer Plaintiffs ("ADPs"), Truck and Equipment Dealer Plaintiffs ("TEDPs"), the State of Florida, the State of Indiana, and all Defendants in the cases that make up *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM (E.D. Mich.).  *See* Attachment A.

[2] *See* Exhibit A to the Declaration of Steven N. Williams ("Williams Decl.") (containing a copy of the relevant subpoena, hereinafter, the "Subpoena").

[3] *See* Williams Decl. Ex. B.  The SSEs that are the subject of this motion are some, but not all, of the entities originally served with subpoenas by the Parties.  *See also* Attachment A.

[4] ADPs do not join all requests subject to this motion and do not agree or join in every statement made herein.  However, in the interest of the coordination and efficient resolution of the process to seek discovery from OEMs and their affiliated entities, ADPs join this brief in part, just as they did the Subpoena.  ADPs do not seek discovery in response to the following requests: Requests 4(a)(3)(b)–(c), (e), (k), 4(a)(4); 4(b), (e), (j), 5(e), 13 (in part), 15 (in part, including part 2), 16 (in part, including part 2) (as to "your retailers"), and 34.

The Parties' motion to compel seeks the production of documents and data related to the three categories of purchase and sales transactions that are at the heart of these cases: (1) OEMs' purchases of the vehicle parts at issue in these litigations, (2) OEMs' sales of vehicles to ADPs, and (3) the sales of new vehicles to EPPs,[5] and, for each of these transactions, prices and factors affecting those prices.[6]  This discovery is highly relevant to core issues in these cases, such as the existence of any overcharge, whether any overcharge was paid by purchasers of vehicles, and whether the requirements of class certification under Federal Rule of Civil Procedure 23 and governing case law have been met.  Indeed, Special Master Esshaki and Judge Battani have already recognized the relevance of many of these requests.

This motion follows significant efforts by the Parties to limit the burden on the SSEs. After serving the Subpoena, the Parties and SSEs negotiated over the course of several months, and the Parties agreed to substantially narrow their requests.  Consequently, the Parties are pursuing, in this motion, only fourteen of the Subpoena's original thirty-seven requests.  The Parties have also offered to accept initial production of documents and data related solely to the "Lead Three" cases that are currently scheduled for class certification motions in the summer of 2016 (*Wire Harnesses*, *Bearings*, and *Anti-Vibrational Rubber Parts*), and to stagger production of materials related solely to other parts cases.[7]  Similarly, the Parties offered to narrow the

---

[5] ADPs do not seek discovery from the OEMs regarding sales to EPPs.

[6] The Parties are moving on the following corresponding narrowed requests (the "Narrowed Requests"): Requests 1(a)–(g), (l), (m); 3; 4(a)(1)–(2); 4(a)(3)(a)–(e), (h), (k); 4(a)(4); 4(a)(7), (8), (13); 4(b), (e), (h), (j); 5; 13; 14(c); 15; 16; 22; 23(2); 28 (last two sentences); 30; 33; and 34.

[7] The Lead Three cases include *In re Wire Harnesses Antitrust Litig.* (2:12-cv-00100); *In re Automotive Bearings Antitrust Litig.* (2:12-cv-00500); and *In re Anti-Vibrational Rubber Parts Litig.* (2:13-cv-00800).  Plaintiffs' motions for class certification are currently due in *Wire Harnesses* on July 1, 2016, *Bearings* on July 29, 2016, and *Anti-Vibrational Rubber Parts* on August 12, 2016. EPPs (joined by other indirect plaintiffs) have moved for an extension of those class certification schedules; that motion is presently before the Court.

relevant time period for each request to the class periods as defined in each operative complaint, plus data for two years prior to the class start date and through the date of extraction.[8] Finally, the Parties offered to hold in abeyance the Subpoenas issued to the affiliated entities not involved in the purchase of parts, or the manufacture, distribution, and/or sale of automobiles ("Non-Core SSEs"[9]), subject to the reasonable caveat that if a core SSE—*i.e.*, an SSE that *is* involved in the purchase of parts, or the manufacture, distribution, and/or sale of automobiles—does not have certain transactional purchasing and sales data in its possession, but an affiliated Non-Core SSE does, the relevant Non-Core SSE is required to produce the data.

Despite the Parties' substantial concessions and the narrowed subset of highly relevant data and documents sought in the Parties' compromise offers, the SSEs conditionally offered to produce only some information (subject to further negotiation) responsive to only two narrow categories of documents: an incomplete set of limited data on non-Defendant parts purchases; and lists of their Manufacturers' Suggested Retail Prices ("MSRPs") for some unspecified subset of vehicle models, and for both categories only with respect to data from the last ten years. For SSEs that previously made productions to the Department of Justice ("DOJ"), those entities agree to provide only the same data as provided to the DOJ with respect to these two limited categories. In essence, these SSEs have refused to agree to any meaningful production. They have offered no legitimate basis to support their refusal to comply with the Subpoena. While the

---

[8] The relevant class periods are as follows: *Wire Harnesses* (January 1, 1999–alleged conspiracy ceased); *Bearings* (January 1, 2000–alleged conspiracy ceased); *Anti-Vibrational Rubber Parts* (March 1, 1996–alleged conspiracy ceased). *See* Williams Decl. Ex. J., Attachment A (listing the class periods in other auto parts cases). While these operative complaints define the class period end date as the time the anticompetitive conduct ceased, the Parties seek information and documents through 2014, and data through the date the SSEs perform their extraction.

[9] The Non-Core SSEs include certain insurance, finance and credit, banking and capital, research and development, and design entities that are affiliated with the core SSEs. *See* Williams Decl. Ex. B.

SSEs have claimed that the requests are burdensome, their arguments fall flat.  These are large, sophisticated corporations, routinely involved in complex litigation and well-equipped to respond to these reasonable requests.  Moreover, their refusal to search for, let alone produce, responsive discovery absent an advance agreement on costs is unreasonable—the law is clear that the burden is on the subpoenaed entity to first provide evidence of those costs before any cost-shifting evaluation can occur.

The Subpoena, and the Parties' subsequent narrowing of the requests in an effort to accommodate the SSEs, involved an unprecedented coordination of more than a hundred law firms nationwide, representing multiple groups of Plaintiffs and Defendants in thirty-two sets of complex antitrust actions involving thirty-two different types of vehicle parts.  The Parties exchanged numerous drafts and participated in several meet and confers before agreeing to the single, consolidated Subpoena, which the Parties served between mid-July and mid-August, 2015.  This process ensured that these requests were highly relevant to this case.  Further, this process was directed by Judge Battani as part of Her Honor's desire to avoid burdens on non-parties and to move forward with non-party discovery, and to have discovery move forward in a coordinated effort among the Parties.  Based on the SSEs' outright rejection of the Parties' reasonable offers of compromise, the Parties were forced to file this motion.  For the Lead Three cases, this motion seeks to compel production of transactional purchases and sales data to begin immediately after the Court's ruling and to be completed no later than thirty days after any such ruling, and to compel production of documents to begin immediately after, and to be completed

no later than sixty days after any such ruling.[10]  For the reasons set forth below, the Court should

grant the Parties' motion to compel this discovery.

**BACKGROUND**

**A.      Preparation and Service of the Subpoena**

The Parties are Plaintiffs and Defendants in thirty-two groups of coordinated antitrust

actions in which Plaintiffs allege that Defendants conspired to fix and raise the prices of various

vehicle parts.  At the January 28, 2015 Status Conference, the Parties noted the need for third

party discovery and their willingness to coordinate on it.[11]  The Court instructed the Parties to

cooperate on the preparation of a single subpoena to OEMs and certain of their affiliates, and

directed that Direct Purchaser Plaintiffs and Ford be allowed to comment on the negotiated

subpoena before it was served on third-party OEMs.[12]  The Parties—multiple groups of Plaintiffs

and Defendants, represented by counsel from over a hundred law firms—ultimately agreed on a

single, uniform subpoena on April 14, 2015, and a copy of that subpoena was provided to

counsel for Direct Purchaser Plaintiffs and Ford the same day, in accordance with the Court's

instructions.[13]  Direct Purchaser Plaintiffs thereafter submitted comments to Special Master

Esshaki by letter dated April 28, 2015.[14]  At the May 6, 2015 Status Conference, the Court

instructed Direct Purchaser Plaintiffs to raise their concerns by motion, and the Special Master

---

[10] The Parties are willing to discuss reasonable production schedules for production of data and documents relevant to only the later cases, *i.e.* the non-Lead Three cases.

[11] Status Conf./Mot. Hrg. Tr. 43–46, *In re Automotive Parts Antitrust Litig.*, 12-md-2311 (E.D. Mich. Jan. 28, 2015) (Battani, J.), ECF No. 892, Williams Decl. Ex. C.

[12] *Id.*

[13] *See* Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs, 2:12-md-02311 (May 13, 2015), ECF No. 967 (proposed OEM subpoena sent to Direct Purchaser Plaintiffs on April 14, 2015).  Note that one Request, No. 37, is unique to Nissan and Honda entities and was included only in those Subpoenas served on such entities.

[14] *See Id.*; Williams Decl. Ex. D.

5

set a briefing schedule at the hearing for the Direct Purchasers and Ford to file their oppositions to the Subpoena.[15]  Direct Purchaser Plaintiffs filed their motion to limit the uniform Subpoena on May 13, 2015, and Ford, similarly, filed a brief objecting to the issuance of the Subpoena seven days later, on May 20, 2015.[16]  However, the Special Master denied their motions on June 4, 2015, and the Parties proceeded to finalize and coordinate on the service of the Subpoena.[17]

Between mid-July and mid-August 2015, EPPs served the Subpoena on numerous OEMs and affiliates, including all of the "SSE" OEMs at issue on this motion.  Williams Decl. ¶ 4; Williams Decl. Ex. A.  The Parties assigned specific counsel to each subpoenaed entity or family of entities to lead communications regarding the Subpoena.  Williams Decl. ¶ 9.  Shortly thereafter, the Parties began reaching out to various served entities, including those in the SSE group, to offer extensions to respond to the Subpoena and to set up meet and confers to discuss timelines for responses and production.[18]  Various subpoenaed entities responded and objected to the Subpoena.[19]

---

[15] Status Conf./Mot. Hrg. Tr. 39–40, *In re Automotive Parts Antitrust Litig.*, 12-md-2311 (E.D. Mich. May 6, 2015) (Esshaki, S.M.), ECF No. 965, Williams Decl. Ex. E.

[16] *See* Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs, 2:12-md-02311 (May 13, 2015), ECF No. 967; *see also* Ford Motor Company's Response to the Proposed OEM Subpoena, 2:12-md-02311 (May 20, 2015), ECF No. 977.

[17] *See* Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoena to OEMs, 2:12-md-02311 (May 13, 2015), ECF No. 967; *see also*, Special Master's Order Regarding Direct Purchaser Plaintiffs' Motion to Limit Uniform Subpoenas as OEM, 2:12-md-02311 (June 4, 2015), ECF No. 992.

[18] Williams Decl. ¶ 9.  As of late August, 2015, there were multiple calls with subpoenaed entities calendared: Ford on August 31, 2015; Isuzu Finance on September 1, 2015; Subaru R&D on September 1, 2015; Nissan on September 2, 2015; Fiat Chrysler Automobile on September 3, 2015; Subaru/Fuji Heavy Entities for September 4, 2015; Volkswagen entities on September 8, 2015; Lotus on September 10, 2015; Suzuki Manufacturing of America on September 10, 2015; Daimler Entities for September 15, 2015; Mazda on September 15, 2015; Suzuki Motor of America on September 16, 2015; Ford Motor Co. and Ford Motor Credit on September 22, 2015; BMW, Land Rover/Jaguar, Rolls Royce, and Volvo on September 28, 2015.

[19] *See, e.g.*, Williams Decl. Ex. F.

**B.      Coordination of the SSEs and the OEM Summit**

On September 1, 2015, Colin Kass of Proskauer Rose LLP, counsel for Fiat Chrysler Automobiles US LLC, informed the Parties that "most" of the subpoenaed entities had designated Mr. Kass to propose: (1) a "summit meeting" between these entities and the Parties to discuss "global" issues, followed by (2) written objections to the Subpoena in late September or early October.  Williams Decl. ¶ 12.  Shortly thereafter, the Parties began receiving notices of cancellation of scheduled meet and confers from various OEMs, who stated they would join in the group negotiations led by Mr. Kass.  *Id*.  In a letter to the OEMs, the Parties emphasized that the OEMs' coordination should not interfere with setting a schedule or complying with the Subpoena.[20]  The coordinating OEMs and Parties eventually agreed to hold the "summit" on October 2, 2015.  *Id.* ¶ 13.

In the OEMs' September 17, 2015 letter, they identified a list of issues they intended to address at the summit and identified the entities that were coordinating at that time as the "SSEs," and circulated a formal agenda on September 30, 2015.[21]  On the call between the Parties and the SSEs, the SSEs articulated their high-level concerns with the Subpoena, focusing primarily on its scope.  *Id*.  The SSEs also requested that the Parties withdraw the Subpoena for multiple entities and stated that they would not even proceed with searching for documents until they had an agreement with the Parties to cover costs or a court order ordering reimbursement. *Id.* at Ex. H.

---

[20] September 10, 2015 letter from Parties to SSEs, Williams Decl. Ex. G ("September 10 Letter").

[21] September 17, 2015 letter from SSEs to Parties, Williams Decl. Ex. H ("September 17 Letter"); September 30, 2015 letter from SSEs to Parties, Williams Decl. Ex. I ("September 30 Letter").

C.      **Negotiations Between Serving Parties and SSEs to Narrow Requests**

On October 14, 2015, the Parties sent a letter to the SSEs offering to significantly narrow the Subpoena's requests for certain types of entities, to hold in abeyance Subpoenas issued to certain other entities, to narrow the Subpoena's time period, and to negotiate regarding cost sharing.[22]   Notwithstanding these numerous concessions, however, the SSEs responded on October 29, 2015 by inaccurately stating that the Parties had "made no meaningful effort to revise the subpoena."[23]   Despite recognizing that the Parties had withdrawn all but a short list of requests "for certain non-OEM SSEs," the SSEs refused to produce any information from these entities absent "clarity concerning the scope of the[] [remaining] requests."  Williams Decl. Ex. K at 2–3.  In addition, the SSEs proposed that the entire Subpoena be held in abeyance for many SSEs, including such major carmakers as Hyundai, Subaru, and Kia.  *See id*. at 4.  The SSEs refused to produce requests for quotation ("RFQ") documents.[24] and argued that sales data was neither "necessary to litigate the case, nor likely to be useful," while making various unsupported statements regarding what the Parties' experts would be able to accomplish with the data sought in the Subpoena.  *Id*. at 6–7.  In addition, the SSEs rejected the Parties' reasonable proposal for a narrowed date range, instead proposing an unreasonably abbreviated timeframe for productions—"the time period between January 2007 and the date of the Subpoena"—where most of the alleged class periods in the auto parts actions begin in the mid-1990s or early 2000s. *Id.* at 6–8.  The SSEs also refused to "search for or produce responsive documents absent an agreement on costs," a position they continue to hold.  *Id.* at 9.

---

[22] October 14, 2015 letter from Parties to SSEs, Williams Decl. Ex. J ("October 14 Letter").

[23] October 29, 2015 letter from SSEs to Parties, Williams Decl. Ex. K ("October 29 Letter").

[24] RFQs are types of purchasing documents issued by OEMs to invite suppliers to bid or submit proposals, and are sometimes referred to, including by SSEs in their correspondence, as RFPs, or requests for proposal.

In the Parties' November 24, 2015 letter to the SSEs, the Parties narrowed the scope of the Subpoena even further, offering to hold numerous requests in abeyance for all entities.[25]  Of the thirty-seven requests in the Subpoena, the Parties offered to hold nineteen requests in abeyance, along with numerous subparts of the remaining requests, representing well over half of all original requests.  Williams Decl. Ex. L at 2–5.  These concessions eliminated all but a few requests to the Non-Core SSEs.  *Id.* at 6.

For each category of information sought by the requests enumerated in the November 24 Letter, the Parties articulated thoroughly how the information was relevant to the Parties' claims and defenses, and gave examples of the types of data and documents sought in each category.  *Id.* at 2–5.  The Parties made clear that they did not possess certain OEM part numbers or data regarding purchases from non-Defendant suppliers, and emphasized the importance of this data in determining benchmark pricing and other issues.  *Id.* at 7.  The Parties stated that most RFQ-related documents were similarly in SSEs' sole possession, and offered to prioritize their requests to such documents to those relevant to the Lead Three cases.  *Id.* at 8.  As to costs, the Parties reiterated their willingness to discuss appropriate cost sharing once the SSEs had an opportunity to determine "what responsive information is in [their] possession and what reasonable costs will be associated with its production."  *Id.* at 9.  As to "smaller OEMs," the Parties agreed to hold in abeyance the Subpoena to two such OEMs (Rolls-Royce Motor Cars NA, LLC; and Maserati N.A., Inc.), but explained that an arbitrary 5% market share cut-off, which was proposed by the SSEs, was unacceptable because it would exclude OEMs highly

---

[25] November 24, 2015 letter from Parties to SSEs, Williams Decl. Ex. L ("November 24 Letter"). As of the November 24 Letter, the Parties offered to hold the following requests in abeyance for all SSEs: Requests 1(h)–(k); 2; 4(a)(3)(f)–(g), (i); 4(a)(5)–(6), (9)–(11); 4(c)–(d), (f)–(g), (i)–(l); 6–12; 14(a)–(b), (d)–(j); 17–21; 23(1), (3)–(5); 24–26; 29; 32; 35; 37; and Attachment B (concerning replacement parts).  The Parties continue to hold these Requests in abeyance.

relevant to the litigation, such as Hyundai, Subaru, Kia, and other OEMs referenced in certain of the Defendants' plea agreements with the DOJ.  *Id.* at 6.

On December 18, 2015, the SSEs sent the Parties a letter regarding the Subpoena, which offered virtually no concessions.[26]  Though the Parties had withdrawn nineteen requests in full, and various other requests in part, the SSEs incorrectly continued to maintain that the Parties had not "significantly narrowed the scope of the subpoena."  Williams Decl. Ex. M at 1.  The SSE OEMs again refused to search for any information possessed by their non-manufacturing affiliates "absent a further showing of relevance and need."  *Id.* at 4.  Contingent on reaching an agreement on the scope of the Subpoena and the costs of compliance, among other considerations, the SSEs agreed to produce only: (i) transactional data reflecting components purchased from a "reasonable number" of non-Defendant suppliers (which the Parties were expected to somehow identify) for the past ten years; (ii) the MSRPs for select vehicles, "to be negotiated with the Parties," that each SSE sold for the past ten years, and (iii) the purchasing and MSRP data from categories (i) and (ii) that were part of any SSE's production to the DOJ.  *Id.* at 1–2.  The SSEs' offer was not even a concrete commitment for production; rather, it was simply a proposal that would merely prolong negotiation of production.

From what the SSEs termed "Domestic Distributor SSEs,"[27] the SSEs agreed to produce only a "schedule of MSRPs for each make and model of vehicle they sold to dealers in the United States for up to the last 10 years."  *Id.* at 7.  With regard to "smaller SSEs," the SSEs proposed holding in abeyance, "at a minimum," subpoenas to SSE OEMs with under 3% of U.S.

---

[26] December 18, 2015 letter from SSEs to Parties, Williams Decl. Ex. M ("December 18 Letter").

[27] These entities include: Kia Motors America, Inc.; Hyundai Motor America; Nissan North America Inc.; and Mercedes-Benz USA, LLC.  Williams Decl. Ex. M at 7 n.14.

market share.  Again, this would have excluded major OEMs, including some OEMs that are specifically referenced in certain of the Defendants' plea agreements.[28]

With regard to purchasing data, the SSEs stated that if the Parties provide a "list, by component, of the specific non-Defendant entities that supply each component" (without providing any suggestion as to how the Parties could possibly obtain this competitor information), the SSEs would produce information for each entity for up to the last ten years identifying "(i) the date of component purchase, (ii) the part description, (iii) the quantity purchased, and (iv) price paid."  *Id.* at 10.  The SSEs refused to produce any RFQ documents and would agree to produce only a limited schedule of MSRPs as sales data.  *Id.* at 10–12.  The SSEs' final position regarding costs was that they would not begin searching for any documents until the Court issued an order on costs, showing that these SSEs likely never had any intention of reaching a resolution without court intervention.  *Id.* at 13.

**D.** **Other Non-Coordinating OEMs and their Affiliates Have Already Agreed to Produce, or Have Already Produced, Documents and Data Responsive to the Subpoena**

Throughout this process, non-SSE subpoenaed entities have also been meeting and conferring with the Parties.  Many of these entities have served responses and objections, and a few OEMs that are not a part of the SSE group have agreed to investigate and/or produce various categories of documents and data, with certain Isuzu entities already producing documents and data responsive to the Subpoena.  Williams Decl. ¶ 14.  For example, Isuzu and its related entities have agreed to produce documents and data responsive to eight of the Parties' fourteen Narrowed Requests, and have produced over 6,000 pages of documents to date, the first of rolling productions.  *Id.*  In addition, Isuzu's finance entity has produced certain data, and Isuzu

---

[28] *See, e.g.*, The U.S. Dept. of Justice, http://www.justice.gov/archive/justice-news-archive.html (last visited Dec. 30, 2015).

has agreed to discuss how its transactional data is stored and organized so that Isuzu and the Parties can reach an agreement on data production in the near future.  *Id.*

## ARGUMENT

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1) (as revised effective December 1, 2015) ("the new Rule 26").[29]  A subpoena to a third party under Rule 45 is governed by the same standards as Rule 26.  *See United States v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14155, 2012 WL 4513600, at *5 (E.D. Mich. Oct. 1, 2012).

Once the relevance of the subpoenaed discovery is established, the burden shifts to the objecting party to show why the discovery should not be permitted.  *Alexander v. FBI*, 194 F.R.D. 316, 325–26 (D.D.C. 2000).  A non-party seeking to modify a subpoena bears the burden of demonstrating that the discovery sought should be denied, and in doing so cannot merely assert that compliance would be burdensome and onerous without demonstrating the manner and extent of the burden and the injurious consequences of complying.  *Blue Cross*, 2012 WL 4513600, at *5.  Thus, where the Court finds that the information and documents are relevant, the non-party "bear[s] a *particularly heavy burden* in showing that [the] subpoena[] impose[s] an undue burden."  *Id.* at *6 (emphasis added); *see also Taylor v. Universal Auto Grp. I, Inc.*, No. 14-mc-50, 2015 WL 1810316, at *6 (S.D. Ohio Apr. 17, 2015) (granting motion to compel subpoena requests where non-party failed both to identify the type of burden and to provide anticipated compliance costs); *In re Subpoenas to Plains All Am. Pipeline, L.P.*, No. H-13-2975,

---

[29] Although the 2015 Amendments to Rule 26 were implemented after these cases at issue were filed, they should apply here "insofar as just and practicable."  *See* Order of the Supreme Court of the United States Adopting and Amending Rules, Order of April 29, 2015 (amending, *inter alia*, Fed. R. Civ. P. 26).

2014 WL 204447, at *3 (S.D. Tex. Jan. 17, 2014) ("Regarding burdensomeness, the movant bears the burden of persuasion that 'compliance with the subpoena would be unreasonable and oppressive.' . . . This showing has been described as 'heavy.'" (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818–19 (5th Cir. 2004)).

In evaluating a subpoenaed entity's argument that requested discovery should not be permitted, the new Rule 26 requires the Court to consider the proportionality of the discovery based on the following six factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The Advisory Committee made clear, however, that "[t]he change *does not place on the party seeking discovery the burden* of addressing all proportionality considerations." *See* Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note to 2015 Amendments (emphasis added). Rather, once the relevance of the material sought has been established, *the objecting party then bears the burden* of showing why discovery should not be permitted. *Alexander*, 194 F.R.D. at 325–26.

Furthermore, courts specifically recognize the importance and added value of non-party discovery in the antitrust context. *See In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 WL 298480, at *4–7 (E.D. Pa. Jan. 31, 2012) (approving a third party subpoena in an antitrust matter); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 2:06-MC-0034, 2006 WL 2871834, at *2 (S.D. Ohio Sept. 25, 2006) (approving a third party subpoena in an antitrust matter because "information from a non-party participant in the market may, from a tactical standpoint, present advantages in the litigation not easily realized from parties or experts").

13

I.     **THE DISCOVERY SOUGHT IS HIGHLY RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES AND TO CLASS CERTIFICATION**

The Parties seek highly relevant discovery based on the Narrowed Requests related to three key categories of transactions that form the basis of the auto parts litigations: (1) OEMs' purchases of parts; (2) OEMs' sales of vehicles to Dealers; and (3) the sales of vehicles to End Payors.  For each of these transactions, the Parties seek basic discovery regarding the prices and the factors affecting those prices, which are highly relevant for the adjudication of injury, class certification, and damages.[30]

A.     **Discovery Regarding OEMs' Purchases of Parts and Factors Affecting Part Prices[31]**

i     **Defendants' Statement[32]**

Defendants seek discovery on prices of parts sold to OEMs because the questions of what these prices were, how they were determined, how they impacted the ultimate price of the vehicle when sold to Dealers, and whether they were affected by Defendants' alleged conduct are directly relevant to Defendants' defenses and anticipated opposition to class certification. The Parties seek discovery regarding, for example, OEMs' implementation of annual price reductions; OEMs' use of "target" pricing; competing offers from non-Defendant suppliers; OEMs' commitment to purchasing from incumbent or other preferred suppliers; other non-price factors affecting OEM decision making; how the price of a particular component or assembly impacted the ultimate price of the vehicle; and OEMs' willingness to take into account fluctuations in the prices of inputs to the components or assemblies they purchased, including of

---

[30] Requests 1(a)–(g), (l), (m); 3; 4(a)(1)–(2); 4(a)(3)(a)–(e), (h) (k); 4(a)(4), (7), (8), (13); 4(b), (e), (h), (j); 5; 13; 14(c); 15; 16; 22; 23(2); 28 (last two sentences); 30, 33, 34.

[31] The following Requests are related to this category of information: Requests 1(a)–(g), (l)–(m), 3; 4(h); 14(c) 15; 23(2); 28; 30; and 33.

[32] The arguments and views expressed in Defendants' Statement Sections are those of Defendants and do not necessarily reflect those of Plaintiffs.

raw materials.[33]  Whether the prices OEMs paid for parts included any alleged overcharge, and if so, its size and whether that alleged overcharge was ultimately absorbed by an OEM or was instead passed on in whole or in part, also directly impacts the prices that Dealers, and ultimately End Payors, paid for vehicles.  *See In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 324 (N.D. Cal. 2014) (indirect purchasers must show overcharge at direct purchaser level and pass-through of overcharges to indirect purchasers).

RFQ documents, pursuant to which Plaintiffs allege that many of the parts at issue in this case were typically procured, are naturally relevant and therefore are sought under the Subpoena.[34]  These documents reflect potential suppliers and the extent of competition by parts suppliers not alleged to have been participants in any alleged conspiracy; contain the terms of proposals submitted by those potential suppliers; evidence key details of the procurement process; include terms and conditions of the transactions; reveal technical specifications, which may further inform the prices charged; and include revisions to the design of parts or products leading to price revisions.  This information will help show the manner in which the prices for parts and components were ultimately set, the factors affecting those prices, and provide an explanation for any price changes that are not attributable to the alleged concerted conduct by the Defendants.  *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2015 WL 7067790, at *14 (E.D. Pa. Nov. 12, 2015) (direct purchaser action) (discussing the effect "various exogenous factors" had on the price of eggs).

Defendants maintain that information regarding why an OEM chose to purchase parts from a Defendant, rather than a different supplier,[35] and other price and non-price factors an

---

[33] Requests 1(g); 1(l); 3; 15; 23(2).

[34] Requests 1(g); 14(c).

[35] Requests 14(c), 33.

OEM considered in making purchasing decisions, are relevant to determining whether an OEM was overcharged, and whether any such overcharge was passed on to Plaintiffs. The Parties' ability to compare the characteristics and prices of the parts that an OEM chose to purchase (parts affected by the alleged conspiracies) with those it did not (unaffected parts)[36] is key to determining (1) the factors informing an OEM's purchasing decisions, and (2) the difference in price and quality between affected and unaffected parts. This information may demonstrate the extent to which competition between suppliers, and variations among the proposals offered by different suppliers, affected the prices of parts, and thus the prices paid by Plaintiffs during the anticompetitive period (and within participating conspirators), as compared to estimates of the prices that would have prevailed absent the anticompetitive conduct. *See In re Processed Egg Prods.*, 2015 WL 7067790, at *20 (use of economic benchmarking analysis in antitrust case).

Similarly, agreements between an OEM and its parts suppliers are not only relevant to documenting the standard terms and conditions of each OEM's parts purchasing and modifications to those standard terms, but also to the existence and extent of competition for the supply of specific parts for a given OEM, brand, model, or vehicle, and that competition's effect on price.[37] This information is relevant to determining whether Defendants' alleged conduct extended to a particular part purchased by a particular OEM, and thus to vehicles and models into which the part was incorporated. These facts are critical for accurately determining the extent to which the prices paid by Dealers and End Payors were affected by competition among suppliers, or lack thereof.

---

[36] Request 33.

[37] Requests 1(l); 3.

ii       **Plaintiffs' Statement**[38]

Plaintiffs submit that transactional data and related information regarding OEMs' purchases of the auto parts at issue are highly relevant to proof of liability, impact and damages, and to class certification in these cases. *See, e.g.*, *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 608 (N.D. Cal. 2009) (acknowledging, at class certification, that indirect purchasers of SRAM will be able to identify products that contain Defendants' SRAM "by analyzing . . . third party transactional data, . . . BoMs [*i.e.*, Bill of Materials] from OEMs and contract manufacturers," among other information).

Plaintiffs require OEM transactional purchase data and information to, among other things, supplement and explain the transactional sales data productions of Defendants, which do not contain complete information in terms of (1) tying specific auto parts to the specific makes and models into which the parts were installed; (2) provision of specific auto part product characteristic information (*e.g.*, size, type, usage, etc.); and (3) time periods covered. Obtaining OEM data that allows the expert to, for example, link Defendants' parts to the vehicle makes/models into which they were ultimately installed will enable the expert to detect and measure the Defendants' overcharges and link overcharges on parts to the overcharges to indirect purchasers who purchased the new vehicles in which the parts were installed. Such information may also provide a link between OEM part numbers and product characteristics (*i.e.*, make and model into which the part is installed), which would help the experts interpret and utilize the Defendants' transactional sales data.

---

[38] This Statement is on behalf of EPPs, TEDPs, The State of Florida, and The State of Indiana. The arguments and views expressed in Plaintiffs' Statement Sections are those of Plaintiffs and do not necessarily reflect those of Defendants.

In addition, Plaintiffs will need to show whether and the extent to which Defendants' overcharges affected the prices paid by Plaintiffs.  To measure the overcharges, Plaintiffs' experts will measure the extent to which changes in auto parts prices translated into changes in the prices paid by Plaintiffs for new vehicles.  The data needed for these studies includes the prices at which parts and finished vehicles are bought—including data on finished vehicle cost of goods sold (COGs)—and prices at which new vehicles are sold at the OEM level.  By observing how OEMs respond to cost changes, economic experts are able to obtain a reasonable estimate of how OEMs would respond to the cartel overcharges.

Also, Plaintiffs submit that to the extent that OEMs maintain a dataset that tracks the issuing and bidding process/history for each RFQ and eventual outcomes of those RFQs, that dataset will provide key information for Plaintiffs' experts' analyses of whether Defendants' bid rigging and other conduct impacted parts prices to the OEMs.  Defendants have indicated that they are not in possession of a full dataset of this information or anecdotal evidence related to specific RFQs and do not have all of the relevant discoverable information that is in the possession of OEMs.   OEMs likely have extensive documents reflecting studies and/or evaluations of RFQs, as well as datasets reflecting the results of each of the RFQ.  This RFQ data and information will facilitate Plaintiffs' analyses (and the Court's analysis) of the overcharge and its impact on Plaintiffs.

Plaintiffs also seek this information to understand the details of the OEMs' auto part procurement, including how requests were made.  This will allow Plaintiffs to understand how discounts were implemented and determined, to contend with and respond to any Defendant arguments about how suppliers are chosen and how prices are agreed upon, to understand the

terms upon which suppliers and OEMs agreed automotive parts would be supplied and to understand and compare the automotive parts manufactured by Defendants.

### iii        ADPs' Statement

These documents and data are essential to ADPs, as this case requires ADPs to demonstrate that the OEMs were overcharged for their parts.  In addition, these documents and data are critical to ADPs' ability to understand and analyze the terms under which parts were supplied to OEMs, and to compare the terms offered by the various suppliers, including Defendants.

### B.        Discovery Regarding Each OEM's Sales of Vehicles to Dealers, the Effect, If Any, of Any Overcharge in the Price of Component Parts, and Other Factors Affecting the Vehicle Prices[39]

### i        Defendants' Statement

Discovery regarding the prices paid to OEMs for vehicles, and how each OEM set those prices, is central to whether ADPs and TEDPs suffered any injury and, even if so, whether any resulting damage was passed on to EPPs.  ADPs and TEDPs allege that overcharges attributable to specific parts were passed through by the OEMs in vehicle sales to the ADPs and TEDPs.  Therefore, the prices paid by ADPs and TEDPs to an OEM, and how those prices were determined by an OEM, is central to litigating the issue of whether there was any injury incurred by the ADPs and TEDPs (and, if so, whether it affected only some of the ADP and TEDP class members).  This discovery will also be central to class certification, since ADPs and TEDPs will be required to establish that there is a common methodology of determining impact, which in turn requires a study of what each OEM's prices would have been absent Defendants' alleged conduct and pass-through.  *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522

---

[39] The following Requests are related to this category of information: Requests 1(f); 4(a)(1)–(2), 4(a)(3)(a)–(e), (h), (k), 4(a)(4), (7), (8), (13), 4(e), 4(h); 4(j); 5; 13; 15; 16; 22; 28; and 34.

F.3d 6, 27 (1st Cir. 2008) (vacating certification of indirect purchaser class, based on plaintiffs' theory that "but for" the conspiracy MSRPs and prices would have been lower, noting that such a theory "must include some means of determining that each member of the class was in fact injured"). Discovery regarding sales by OEMs to ADPs is also relevant to the parties in the EPP actions because EPPs allege that the overcharge was passed on from ADPs to EPPs. Discovery regarding prices paid for vehicles by ADPs is relevant to whether a common methodology exists to show the impact of that alleged overcharge on EPPs. *See In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 499 (N.D. Cal. 2008) (recovery in an indirect purchaser case under state law requires common proof that a defendant "overcharged their direct purchasers for [the products] and that those direct purchasers passed on the overcharges to plaintiffs"). Variations in prices relate directly to, among other things, whether Plaintiffs' claims are typical of absent class members, whether Plaintiffs' claims are capable of class-wide proof, and whether individual issues will predominate over common issues. *See In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, No. 11-cv-00009, 2015 WL 6181748, at *9 (D. Del. Oct. 21, 2015) (explaining that analysis of alleged overcharge requires tracing the overcharge down the distribution chain, and that "determining what portion of the alleged overcharge was passed on . . . cannot be determined simply by the overall purchase price").

The discovery that Defendants seek regarding the terms of sales to ADPs and TEDPs is directly related to injury, class certification, and damages. Such terms include not only the invoice price, but also information regarding price adjustments, discounts, holdbacks, incentives, and financing costs.[40] This information is important to determining whether any overcharges allegedly paid by the OEMs affected the prices paid by Dealers and End Payors.

---

[40] *See, e.g.*, Requests 4(a)(3)(c)–(e).

Dealers allege that Defendants conspired to raise prices on auto parts, and that the resulting overcharges were passed through the distribution chain to Dealers when they purchased vehicles containing the parts from OEMs.  As an initial matter, the method by which OEMs determine the prices of vehicles charged to Dealers is vital to proving whether any alleged overcharge on a particular part actually impacted the price of the vehicle sold.[41]  Whether OEMs passed on the alleged overcharges on parts to Dealers by charging higher prices for vehicles sold is relevant to whether Dealers paid more as a result of Defendants' alleged conduct.  If a given OEM's decision-making process demonstrates that the invoice price charged to Dealers was discounted despite an increase in the price of parts, for example, that may bear on whether there was any overcharge to OEMs, and whether any overcharge was passed on to Dealers or End Payors.  In addition, Defendants seek information regarding whether OEMs price their vehicles according to their competitors' prices.[42]  This information is relevant to determine whether an OEM absorbed all, or a portion, of any alleged overcharge in order to remain competitive in the marketplace for vehicles, or for any other reason.

Defendants also seek information regarding the various methods by which the OEMs sold vehicles to Dealers. For example, the Defendants seek information regarding the different credit terms, payment plans, and rebates that OEMs offered to Dealers, which may have ultimately affected the prices paid by the Dealers and, in turn, the End Payors.[43]  *See Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1331 (6th Cir. 1983) (credit terms offered by OEM to dealers were "an inseparable part of the purchase price for the motorcycles").

---

[41] Request 13.

[42] *Id.*

[43] Requests 4(a)(3); 4(e)

Finally, the Defendants seek information regarding incentive agreements between OEMs and their customers.[44]  Under such agreements, the price charged for a vehicle by the OEM to the Dealer might vary, for example, according to the Dealer's sales history.  To encourage increased sales, such OEM agreements may provide discounts or other changes to sales prices for Dealers, or for End Payors, which could be relevant to whether any overcharge was passed on, partially passed on, or passed on in varying amounts to the indirect purchasers.  Accordingly, the extent to which various factors affect the prices at which OEMs sell vehicles to Dealers is highly relevant to determining the prices paid by the Plaintiff classes.

ii        EPPs' Statement

EPPs submit that third party discovery of intermediaries in the chain of distribution— including manufacturers that incorporate the products at issue into finished products—is routinely sought, obtained and used by end payor indirect purchaser plaintiffs' experts in class litigation; it is also relied upon by courts in deciding class certification for purposes of estimating pass-through, impact and damages in indirect purchaser class cases.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 602–05 (N.D. Cal 2010) (in which indirect purchaser plaintiffs and defendants presented evidence regarding pass-through based on analyses of transactional and other data derived from the chain of distribution at issue in the case); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 555090, at *9 (N.D. Cal. Feb. 21, 2012) ("the Court agrees with plaintiffs that they may establish pass-through by showing that companies in the manufacturing and distribution chains passed along cost increases in general"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5428139, at *6 (N.D. Cal. June 20, 2013) (Report and Recommendation of Special Master) ("*CRT R&R*") (indirect plaintiffs expert relied on sales data

---

[44] Request 4(a)(3)(b).

from large retailers to indirect purchasers to perform regression analyses and to calculate the pass-through rate of the overcharge to indirect purchasers).

Discovery regarding OEMs' sales is relevant to class certification, and is often relied upon by indirect purchasers' experts to support their class certification analyses and to calculate the pass-through rate for an overcharge. For example, in *CRT*, the Special Master issued a report and recommendation that relied upon the indirect purchaser plaintiffs' expert's use of "regression analysis to perform 47 separate studies of prices and costs in the distribution channel, using a wide variety of data, to calculate the pass-through rate." *Id*. In *CRT*, indirect purchaser plaintiffs' economic expert analyzed datasets from large, third-party retailers in the chain of distribution such as Best Buy, Kmart, and Sears, to perform their regression analyses and to calculate pass-through rates. *Id*. at \*7. Defendants also used this same third-party data to perform their own pass-through studies. *See id*. at \*10. The district court ultimately adopted and approved the Special Master's reliance on these studies in ruling on class certification. *See In re CRT Antitrust Litig*., 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) (Order adopting Special Master's Report and Recommendations) ("*CRT Order*").

Similarly, in *In re Polyurethane Foam Antitrust Litig*., the indirect purchasers of polyurethane foam relied on an expert to support their assertion that pass-through of defendants' overcharge may be assessed and measured on a common basis through analysis of data supplied from entities in the chain of distribution, including OEMs. 2014 WL 6461355, at \*58–59 (N.D. Ohio Nov. 17, 2014). The court noted, for example, that in the "bedding and furniture markets, Defendants typically sell foam products to OEM manufacturers, who in turn sell finished products to retailers, who then sell furniture and bedding products to indirect purchasers." *Id.* at 58. Part of the expert's pass-through analyses included regression models that measured pass-

through at various levels in the chain of distribution.  The experts used foam cost data from OEM bedding and furniture makers, as well as pricing data obtained from retailers downstream of the OEMs to perform these regressions.  *Id.* at 59.

Here, EPPs must show whether and the extent to which OEMs pass-through any overcharges in their sales to Auto Dealers, and to what extent that overcharge was passed on to EPPs.  To measure pass-through, EPPs' experts will take data regarding OEMs' sales to Auto Dealers and will measure the extent to which changes in parts prices translate into the prices charged by OEMs to Auto Dealers for new vehicles.  Detailed transactional data regarding those costs and the sales that then transpired, all go to providing support for such expert analysis.

In addition, with respect to vehicles that have been financed by OEMs or their affiliates, EPPs seek the OEMs' disaggregated datasets that will allow the expert to observe the costs of vehicles, the dealer invoice, the MSRP and the final sales price, *all in one, matched dataset*. Matched datasets are particularly helpful to economists estimating pass-through because they match cost inputs to sales prices, allowing a direct measurement of the relationship between vehicle costs and vehicle prices.  This highly useful information is only available from OEMs.

### iii    ADPs' Statement

ADPs seek a narrower subset of the documents and data in this category namely, those related to the prices of vehicles purchased from OEMs, the date of purchase, the types of vehicles purchased, the identification of the invoice containing those purchases, when the vehicles were distributed, and how prices for new vehicles were determined, analyzed and explained.  These documents and data are basic purchasing information that speaks to, among other things, the extent of the injuries sustained by ADPs.  This information regarding ADPs' prices paid for vehicles goes to ADPs' claims that they overpaid for vehicles as a result of Defendants' conduct. ADPs do not seek most of the other documents and data at issue in this

category and described in this section and will not repeat here any of the arguments surrounding those documents.

### iv    TEDPs' Statement

TEDPs join in these requests because of their importance in establishing the extent of the injuries sustained by TEDPs.  TEDPs also join in EPPs' statement regarding the importance of this discovery to expert analysis of the injury sustained by Plaintiffs, including TEDPs.

### C.    Discovery Regarding the Sales of Vehicles to End Payors and Factors Affecting the Vehicle Prices[45]

### i    Defendants' Statement

Finally, the discovery sought from OEMs regarding the prices of sales to EPPs, and how those prices were determined, is central to the Defendants' defenses against the EPPs' claims. First, EPPs will seek to establish that the members of their classes were impacted by the alleged conduct by the Defendants, which will require the EPPs to establish that any overcharge incurred by the OEMs and ADPs was passed on to the EPPs.  This will necessarily involve an examination of prices paid by EPPs and how those prices were determined.  The extent to which any overcharge was passed on also implicates whether class certification is appropriate, since the EPPs will be required to demonstrate that there is a common methodology, based on the evidence adduced, to determine whether their class members suffered the requisite impact.  The prices paid at each transaction level are crucial to determining damages, since damages depend on how much, if any, overcharge was ultimately passed down to the End Payors.  *See In re Auto. Parts Antitrust Litig.*, Nos. 12–cv–00102, 12–cv–00103, 2013 WL 2456612, at *8 (E.D. Mich. June 6, 2013) (Plaintiffs must show, at both class certification and merits stages, "that every

---

[45] The following Requests are related to this category of information: Requests 4(b)(1); 4(b)(2)(a)–(e); 4(e); 16; 34.

reseller in the chain passed on some or all of the alleged overcharge" to prove damages); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, 2012 WL 6709621, *1–7 (N.D. Cal. Dec. 26, 2012), *aff'd*, No. 13-17408, 2016 WL 145998 (9th Cir. Jan. 7, 2016) (defendant has a partial or complete defense under state law if it can show that the indirect purchaser plaintiff passed on some or all of the alleged overcharge to its own customers).  Finally, EPPs will rely on this data to present their damage claims, which will involve consideration of what the prices to EPPs would have been absent Defendants' alleged conduct and overcharge.

Defendants seek discovery, including transactional data and documents reflecting the terms and conditions of the sales to EPPs including unit price, the net sales price paid, and other monetary and non-monetary components of the transaction—such as insurance or warranties provided or sold to the purchaser, terms of retail purchase financing, and any retail price adjustments, incentives, rebates, trade-in allowances, or other credits.[46]  This information reaches beyond the nominal price reflected on the invoice or in the MSRP, and may impact the ultimate price paid by an End Payor.  Few, if any, End Payors actually pay the MSRP when they purchase a vehicle.  Thus, while the MSRP data that the SSEs have agreed to produce is partially responsive to certain requests, that data is of very limited utility and does not satisfy the Defendants' needs.

There are many factors that affect vehicle prices paid by End Payors.  For example, the terms and price under which a Dealer sold insurance or warranties to End Payors[47] may affect Dealer compensation, which in turn may affect the price at which Dealers sell vehicles to End Payors.  Relatedly, incentive payments made by OEMs and associated entities to the Dealers may be predicated on the volume of such sales, or on the profits made by the Dealers on the sale

---

[46] Requests 4(b)(2)(c)–(e); 4(e); 34.

[47] Request 4(b)(2)(e).

of insurance or warranties sold to End Payors. These factors will be highly relevant in demonstrating the many causes of price changes that would not be affected by Defendants' alleged concerted behavior.

Similarly, retail financing terms,[48] including incentives or rebates Dealers received from OEMs based on their sale of financing packages could also indirectly affect the price to the consumer. Two Dealers could pay the exact same price to an OEM for a vehicle, but if one purchases the vehicle for cash while the other uses floor plan financing (and pays interest), the two Dealers' actual costs for purchasing the vehicle may materially differ. The second Dealer might attempt to recoup all or part of that additional financing cost by charging a higher price for the vehicle to its customer. Conversely, interest associated with floor plan financing may cause the Dealer's costs to rise such that the Dealer may seek to sell the vehicle faster, perhaps even at a loss, in order to clear it from the lot.

Finally, to the extent that financing terms, including the size of monthly payments,[49] influenced how much a consumer was willing to pay or otherwise impacted their negotiations regarding the price of a car with the Dealer, these terms likely affected the price the End Payor ultimately paid for that vehicle. Differences in such terms could lead to different consumers paying different prices for the same vehicle. Therefore, the extent to which price and non-price variables affected End Payors' buying decisions and their ultimate price for a given vehicle is highly relevant.

### ii      EPPs' Statement

Discovery regarding retail sales, such as here from Auto Dealers to EPPs, is highly relevant to EPPs' claims regarding class certification, injury, and damages. EPPs' experts will

---

[48] Requests 4(a)(4); 4(b)(2)(d); 4(e).

[49] Requests 4(b)(2)(a)–(e).

utilize retail transaction data, including the terms and conditions of those sales transactions, to analyze the pass-through of the overcharge from Auto Dealers to EPPs. *See, e.g.*, *CRT R&R*, 2013 WL 5428139, at *10 (evaluating "retailer pass-through" and relying on plaintiffs' expert's studies "of transactions from 14 retailers over 17 years, and relating to large entities at all stages of the distribution channel"); *CRT Order*, 2013 WL 5391159, at *8. The terms and conditions of the vehicle purchase are important as they may affect the price, in real terms, at which the vehicle was purchased. By obtaining this information, the economic experts will be able to, if necessary, account for those terms and conditions in their pass-through estimations, and more accurately assess the sales price of the vehicle to the consumer or other end-purchaser.

### iii    ADPs' Statement

ADPs do not seek any of these materials, and do not join any of the above statements regarding these materials.

## II.    THE DISCOVERY SOUGHT IS, UNDER EVERY FACTOR THE COURT MUST CONSIDER, APPROPRIATE AND PROPORTIONATE TO THE NEEDS OF THIS CASE

In addition to being highly relevant, the discovery sought by the Parties is proportionate to the needs of the case under the new Rule 26 factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Though SSEs ultimately bear the burden of demonstrating that compliance is not proportional, *Alexander*, 194 F.R.D. at 326, the Parties submit that each of the new Rule 26 factors weighs heavily in favor of enforcing the Subpoena.

**A.      The Issues at Stake and Amounts in Controversy in these Actions Weigh in Favor of Compelling this Discovery**

The first two factors—the issues at stake and amount in controversy—both weigh heavily in favor of enforcing the Subpoena.  The scope of the auto parts litigations is unprecedented. These litigations involve multiple Plaintiff groups and more than a hundred Defendants in over sixty-five complex antitrust actions relating to thirty-two distinct auto parts.   These suits potentially impact millions of consumers throughout the United States and potentially implicate hundreds of millions of purchases and leases of vehicles over the last twenty years.  The amounts in controversy in the auto parts litigations are also substantial, potentially implicating billions of dollars of automotive sales and leases.  Settlements to date total over $298 million.  Thus, both the issues at stake and the amounts in controversy here weigh in favor of compelling the discovery sought.

**B.      The Parties' Relative Access to the Discovery Sought Weighs in Favor of Granting this Discovery, as OEMs are Solely in Possession of the Majority of the Information Sought in the Narrowed Requests**

The third proportionality factor—the relative access of the parties—also weighs heavily in favor of granting the requested discovery.  The Parties are primarily seeking information and documents that are in the sole possession of OEMs.  This includes, but is not limited to, documents containing OEMs' target prices, internal communications regarding the negotiation process for RFQs, other methods of procurement and price changes, the internal approval process for RFQs, the number and identity of suppliers submitting bids in response to RFQs, the internal criteria OEMs use to evaluate and select suppliers, the factors that OEMs consider to select their suppliers, what OEMs know about vehicle parts pricing, and the motivations behind any post-award price and specification adjustments.

In addition, the Parties seek certain identifiers, such as OEMs' internal part numbers and VIN numbers, to link component parts to the vehicle or models in which they are installed. Purchase data, OEMs' internal part numbers, and the particular vehicle models associated with each purchase are important to track the parts and vehicles through the chain of distribution  to determine the effects of the alleged anticompetitive conduct on prices and other terms of sale. Again, this information is within OEMs' possession.

OEMs have taken the position that the Parties must first identify what information the Parties truly need but either do not have, or cannot obtain from any source other than the SSEs. *See* Williams Decl. Ex. K at 1.  The Narrowed Requests, however, reflect a reasonable attempt to do this where possible.  Moreover, OEMs are simply incorrect that overlapping discovery may not be sought, since "nothing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas."  *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, No. CV-2007-0051 (ENV)(MDG), 2007 WL 2993840, at *1 (E.D.N.Y. Oct. 10, 2007); *see In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480, at *4 ("A plaintiff seeking to discover information from a third-party is not required to compel defendants to produce potentially overlapping information before seeking any third-party discovery."); *see also Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 998 (10th Cir. 1965) ("[A] person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another.").  Accordingly, the Parties' relative access to the requested discovery weighs in favor of granting this motion.

### C.    OEMs Are Large, Sophisticated Entities with Substantial Resources

The fourth factor focuses on the resources of the subpoenaed entities.  These OEMs are large, sophisticated corporations that are constantly involved in complex litigation, have large legal departments, and are well-equipped to respond to these requests.  The OEMs' legal

departments, both in-house and outside counsel, are litigating dozens, if not hundreds, of cases at any one time. In fact, six of these OEMs alone are currently a party to more than 1,400 active lawsuits, leaving no doubt that these companies routinely handle discovery requests and have the capability to respond to the reasonable requests presented here.[50]   Furthermore, OEMs are extremely powerful corporations with annual gross revenues in the billions of dollars that cannot plausibly claim that they lack the resources to respond to fourteen subpoena requests.[51]

### D.     The Narrowed Requests Seek Information that is Very Important to the Parties' Claims and Defenses and to Class Certification

The fifth proportionality factor—the importance of the requested discovery to the issues in the case—also weighs heavily in favor of granting this discovery.   The Parties have meaningfully narrowed their requests to include only those requests seeking information that is most important to proving their claims and defenses, and to addressing class certification.  *See also* Sections I.A.–I.C., *infra* (discussing in detail the relevance and importance of the requested discovery to the issues in this case). The discovery sought is relevant to the core issues of whether there was an overcharge to OEMs, and whether ADPs, TEDPs, and EPPs were overcharged for their vehicle purchases, *i.e.* to antitrust injury, class certification and damages. *See Fosbre v. Las Vegas Sands Corp*., No. 2:10-cv-00765, 2016 WL 54202, at *5 (D. Nev. Jan.

---

[50] These numbers represent the active lawsuits of General Motors, LLC (970); Daimler AG (129); FCA US LLC (95); American Honda Motor Co., Inc. (75); Hyundai Motor America (58); Nissan North America (87); and Toyota Motor North America (41).

[51] *See, e.g.*, General Motors Company (over $155 billion in revenue and $14 billion in gross profit in 2014); Nasdaq GM Co., http://www.nasdaq.com/symbol/gm/financials?query=income-statement (last visited Jan. 6, 2016); Nissan North America (1.3 million vehicles sold in U.S. in 2015); Nissan News, http://nissannews.com/en-US/nissan/usa/channels/U-S-Sales-Reports/releases/nissan-group-reports-december-and-2015-calendar-year-u-s-sales (last visited Jan. 6, 2016); FCA US LLC (operating profit of $3.5 billion in 2014) http://www.fcausllc.com/Investor/PressReleases/financial/ChryslerDocuments/Q4_2014_PressR elease.pdf (last visited Jan. 6, 2016); American Honda Motor Co. (over $4.3 billion in U.S. sales of automobiles in 2015) http://world.honda.com/investors/financial_data/segment/ (last visited Jan. 6, 2016).

5, 2016) (discovery sought is important to case where necessary to prove Plaintiffs' claims); *Devault v. Isdale*, No. 6:15-CV-00135, 2016 WL 25956, at *4 (M.D. Fla. Jan. 4, 2016) (discovery sought is important when needed to "effectively defend" against plaintiff's claims). Certain parties believe that this discovery is also relevant to assist with an analysis of the typicality, commonality, and predominance prongs of Federal Rule of Civil Procedure 23.  *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 2015 WL 6181748, at *9 (explaining that analysis of alleged overcharge requires tracing such overcharge down the distribution chain and in "determining what portion of the alleged overcharge was passed on"); *see also In re Polyurethane Foam*, 2014 WL 6461355, at *57–59 ("the portion of the overcharge borne by the proposed class member is the product of the pass-through rates measured at each link in the chain").  Even a cursory review of any operative complaint in these litigations will reveal the importance and substantial relevance of discovery of OEMs' part purchases and subsequent sales of the vehicles incorporating relevant parts.

### E.    In Light of the Parties' Numerous and Meaningful Concessions, OEMs Cannot Meet their "Particularly Heavy Burden" of Showing that the Value of the Discovery is Outweighed by Burden or Expense

The sixth and final factor examines whether the burden or expense of the proposed discovery outweighs its likely benefit.  Any claim OEMs make that either burden or expense would outweigh the benefits of this discovery cannot hold up under scrutiny.  Simply considering the size and sophistication of OEMs and their legal departments, such claims ring hollow.  And when the Parties' meaningful and significant concessions below are taken into account, OEMs cannot credibly maintain that the scale somehow tips in their favor.

### i    OEMs May Prioritize Productions Relating to the Lead Three Cases

While the Parties move to compel discovery with respect to all of the parts at issue in the thirty-two parts cases filed to date, they are willing to accept initial productions of documents

and data related solely to the Lead Three cases that are scheduled for class certification motions, with production of materials related solely to other parts cases to be staggered for later production.  With respect to documents relevant to the Lead Three cases, the Parties move to compel production of data to begin immediately after this ruling and to be completed no later than thirty days from that ruling date. And, for documents to begin production immediately after this ruling to be completed no later than sixty days from any such ruling.

EPPs further propose that the Special Master schedule an all-day, in-person session within one week of this matter being fully briefed to work through issues, if possible, followed promptly by a hearing on any issues that remain unresolved.  EPPs believe that this will expedite this process and may be the only way to meet the deadlines set by the Court.

### ii    The Parties Offer to Hold in Abeyance Requests to Various Smaller Subpoenaed Entities

In addition to the two "smaller OEM SSEs" for which the Parties already offered to hold the Subpoena in abeyance,[52] the Parties now offer to hold in abeyance the Subpoena for four additional SSEs that were not named in any plea agreement.[53]  In their December 18 Letter, the SSEs argue that, "at a minimum," subpoenas should be held in abeyance for all SSEs with less than a 3% share of the U.S. vehicle market—but this proposal would exclude (at least) four OEMs that are major vehicle manufacturers with a combined market share of over 9.4% of the market in 2014: Subaru of America (3.1%), BMW of North America, LLC/BMW (US) Holding

---

[52] Rolls-Royce Motor Cars NA, LLC and Maserati N.A., Inc.

[53] In total, the Parties offer to hold in abeyance subpoenas for the following "smaller SSEs": Bentley Motors Inc.; Automobili Lamborghini America, LLC; Aston Martin Lagonda of North America, Inc. and Aston Martin Lagonda Limited; Rolls-Royce Motor Cars NA, LLC; Maserati N.A., Inc.

Corp. (2.1%), Mercedes Benz USA (2.0%), and Volkswagen of America, Inc. (2.2%).[54]  These SSEs are clearly significant and relevant based on their market shares alone.   In addition, Subaru/Fuji Heavy, BMW, and Volvo[55] have been mentioned in DOJ press releases and guilty pleas as having been affected by the auto parts conspiracies, making their information even more relevant to the Parties' claims and defenses, and to class certification.[56]  Accordingly, the Court should grant the Parties' motion to compel with respect to all SSEs aside from those the Parties have offered to hold in abeyance.

### iii   The Parties Are Willing to Hold in Abeyance Subpoenas to All Non-Core Affiliated Entities

The Parties agree to hold in abeyance in full Subpoenas to all Non-Core SSEs[57] with one caveat:   to the extent that an SSE core entity, *i.e.* a purchasing, manufacturing, sales, or distribution entity, does not have certain transactional purchasing and sales data in their possession (including financing data), but one or more of their affiliated non-manufacturing entities do, the affiliated SSEs remain obligated to produce such data.  *See* Fed. R. Civ. P. 45(a)(1)(iii).  This is significant as it further relieves any burden on the Non-Core SSEs.

---

[54] Williams Decl. Ex. M at 8; *see* The Wall Street Journal.

http://online.wsj.com/mdc/public/page/2_3022-autosales.html#autosalesE  (last  visited  Jan.  2, 2016).

[55] Volvo 0.3% U.S. vehicle market share.

[56] *See, e.g.*, U.S. Dept. of Justice News, Sept. 26, 2013 http://www.justice.gov/opa/pr/nine-automobile-parts-manufacturers-and-two-executives-agree-plead-guilty-fixing-prices (last visited Jan. 3, 2016) (allegedly price fixed auto parts sold to U.S. subsidiary of Subaru); U.S. Dept. of Justice,  Nov.  14,  2014,  http://www.justice.gov/opa/pr/aisin-seiki-co-ltd-agrees-plead-guilty-customer-allocation-automobile-parts-installed-us-cars  (allegedly price fixed auto parts sold to BMW and Volvo).

[57] *See* Williams Decl. Ex. B (Non-Core SSEs include certain affiliated insurance, finance and credit, banking and capital, research and development, and design entities). Note that the Parties' willingness to do this is not a concession that there is merit to the related arguments set forth in the SSEs' December 18, 2015 letter.

34

  iv  **The Parties Are Willing to Share Reasonable Costs and OEMs Cannot Continue to Delay Production Until All Cost Issues Are Resolved**

The Parties have repeatedly expressed their willingness to discuss appropriate cost-sharing once SSEs have the opportunity to determine what responsive information is in their possession and what reasonable costs will be associated with their productions.  *See* Williams Decl. Ex. J at 5; Williams Decl. Ex. L at 9.

However, SSEs have stated that they "do not intend to begin searching for and producing documents until an agreement on costs has been reached."  Williams Decl. Ex. M at 13.  The law is clear that subpoenaed entities bear the burden to present a cost estimate before it can be determined whether the expense is significant enough to warrant cost-shifting.  *See Blue Cross*, 2012 WL 4513600, at *7 (ordering the subpoenaed entities to provide detailed estimates of the cost of complying with Plaintiffs' subpoenas so the court could determine whether the costs are significant, and if they are, what amount should be shifted); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 (BMC), 2012 WL 4747441, at *3 (E.D.N.Y. Oct. 4, 2012) (finding that the subpoenaed entity may, upon completing the production, submit to the court the amount and description of the costs incurred in complying with the subpoena, and the court shall determine, at that point, how much plaintiffs should reimburse the subpoenaed entity, if at all).  Accordingly, the Parties have been unable to engage in a productive conversation about costs or present a proposal without the requisite information for each SSE.  *See id.* at *4 (if the subpoenaed entity has not provided the parties or the court with the "faintest idea as to how much compliance with [the] subpoena will cost" them, the court cannot make a cost shifting determination).

SSEs have gone as far as saying that they "will not expend time, effort, and resources searching for or producing documents absent the Serving Parties' agreement to fully reimburse

[SSEs'] costs." Williams Decl. Ex. K at 9.  As noted in the Parties' November 24, 2015 letter, however, their legal obligation to comply with the Subpoena is not conditioned on guaranteed reimbursement of cost.  Rather, cost-shifting can be granted by courts, but in doing so courts consider a variety of factors including the subpoenaed entity's interest in the outcome of the case, whether the subpoenaed entity can more readily bear the cost of production, and whether the litigation is of public importance. *See Blue Cross*, 2012 WL 4513600, at *7.  SSEs are large, financially capable entities that can easily undertake the expense of production while cost allocations are resolved, whether by agreement or by the Court.

In sum, SSEs' unwillingness to even search for—let alone produce—responsive documents absent an agreement on costs is wholly unreasonable.  The Parties' contribution to each SSE's costs is highly dependent on the result of these searches and productions.  In any event, SSE's position indicating that they would not even begin the process until the Court had issued an order on costs suggests they lacked any intention to resolve the issue without the Court's intervention.  In light of this standstill, the Court should compel the SSEs to produce the requested discovery and to provide reasonable cost estimates so that the Parties can agree to reasonable cost sharing.

## CONCLUSION

For all of the reasons set forth above, this motion to compel discovery from the OEMs should be granted.

# ATTACHMENT A

In the foregoing Motion to Compel Discovery from Non-Party Original Equipment

Manufacturers (the "Motion") all Parties move against all SSEs except as clarified below:

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| **BMW** entities (BMW of North America, LLC; BMW Manufacturing Co., LLC; BMW Financial Services NA, LLC; BMW (US) Holding Corp.; BMW Bank of North America; BMW Insurance Agency, Inc.; BMW US Capital, LLC; Designworks/USA, Inc.) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC; Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Fujikura Defendants** (Kerr Russell and Weber, PLC); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC; Winston & Strawn LLP); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Sumitomo Riko Defendants** (Miller Canfield); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo** |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| | **Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **Chrysler** entities (FCA US LLC; Fiat Finance North America, Inc.; Chrysler Transport Inc.) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC; Winston & Strawn LLP); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **Daimler** entities (Daimler North America Corp. (MI); Daimler North America Corp. (NJ); Daimler Purchasing Coordination Corp.; Daimler Trucks North America LLC; Daimler Vans Manufacturing, LLC; Daimler Vans USA LLC; | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| Freightliner Custom Chassis Corp. MB-Technology NA LLC; Mercedes-Benz Advanced Design of North America Inc.; Mercedes-Benz Credit Corp.; Mercedes- Benz Financial Services USA LLC; Mercedes-Benz Research & Development North America, Inc. (CA); Mercedes-Benz Research & Development North America, Inc. (MI); Mercedes-Benz U.S. International, Inc.; Mercedes-Benz USA, LLC; Mitsubishi Fuso Truck of America, Inc.; Thomas Built Buses, Inc.; Western Star Trucks Sales, Inc.). | (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Fujikura Defendants** (Kerr Russell and Weber, PLC); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Sumitomo Riko Defendants** (Miller Canfield) (except Sumitomo Riko Defendants do not move as to Mitsubishi Fuso Truck of America, Inc.); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **GM** entities (General Motors Company; General Motors Financial Company, Inc.; General Motors Holdings LLC; General Motors LLC) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| | (Schiff Hardin LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Sumitomo Riko Defendants** (Miller Canfield); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **Honda** entities (American Honda Motor Co., Inc.; American Honda Finance Corp.; Honda Manufacturing of Indiana, LLC; Honda North America, Inc.; Honda of America Mfg., Inc.; Honda of South Carolina Mfg., Inc.; Honda Precision Parts of Georgia, LLC; Honda R&D Americas, Inc.; Honda Research Institute USA, Inc.; Honda Transmission Manufacturing of America, Inc.) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC; Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| | Simpson Thacher & Bartlett, LLP); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Tokai Rika Defendants** (Baker & Miller PLLC); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP) |
| **Hyundai / Kia** entities (Hyundai Capital America; Hyundai Motor America; Hyundai Motor Manufacturing Alabama, LLC; Hyundai America Technical Center, Inc.; Kia Motors Manufacturing Georgia, Inc.; Kia Motors America, Inc.; Hyundai Autoever America, LLC) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC; Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Fujikura Defendants** (Kerr Russell and Weber, PLC); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
|  | **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Sumitomo Riko Defendants** (Miller Canfield); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **Jaguar Land Rover** North America, LLC | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC; Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Fujikura Defendants** (Kerr Russell and Weber, PLC); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| | Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC; Winston & Strawn LLP); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Sumitomo Riko Defendants** (Miller Canfield); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **Mitsubishi** entities (Mitsubishi Motors North America, Inc.; Mitsubishi Motors Credit of America, Inc.; Mitsubishi Motors R&D of America, Inc.) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC; Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Fujikura Defendants** (Kerr Russell and Weber, PLC); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC; Winston & Strawn LLP); **Showa Defendants** (Ice Miller LLP); **Stanley** |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| | **Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **Nissan** entities (Nissan North America, Inc.; Nissan Design America, Inc.; Nissan Technical Center North America, Inc.; Nissan Diesel America, Inc.; Nissan Motor Acceptance Corp.) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Fujikura Defendants** (Kerr Russell and Weber, PLC); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
|  | Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **Porsche** Cars North America, Inc. | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Winston & Strawn LLP); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Sumitomo Riko Defendants** (Miller Canfield); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP) |
| **Subaru** entities (Subaru of America, Inc.; Subaru Leasing Corp.; Fuji Heavy Industries U.S.A., Inc.; Subaru of Indiana Automotive, Inc.) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| | (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC; Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC; Winston & Strawn LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **Toyota** entities (Toyota Motor North America, Inc.; Toyota Motor Sales, USA, Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; Toyota Motor Manufacturing Alabama, Inc.; Toyota Motor Manufacturing Indiana, Inc.; Toyota Motor Manufacturing Kentucky, Inc.; | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| Toyota Motor Manufacturing Mississippi, Inc.; Toyota Motor Manufacturing Texas, Inc.; Toyota Motor Manufacturing West Virginia, Inc.; Toyota Logistics Services, Inc.; Calty Design Research, Inc.; Hino Motors Manufacturing U.S.A., Inc.) | **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP) |
| **Volvo** Cars of North America, LLC | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Kerr Russell and Weber, PLC; Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Denso Defendants** (Steven M. Zarowny; Wilmer Cutler Pickering Hale and Dorr LLP); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Fujikura Defendants** (Kerr Russell and Weber, PLC); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| | **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Kerr Russell and Weber, PLC; Winston & Strawn LLP); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Sumitomo Riko Defendants** (Miller Canfield); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Yamashita Defendants** (Kerr Russell and Weber, PLC) |
| **VW** entities (Volkswagen Group of America, Inc., also d/b/a Audi of America LLC; Volkswagen Group of America Chattanooga Operations LLC; Volkswagen Credit Inc.) | **End Payor Plaintiffs** (Cotchett Pire & McCarthy, LLP; Robins Kaplan LLP; Susman Godfrey LLP); **Automobile Dealer Plaintiffs** (Barrett Law Group, PA; Cuneo Gilbert & La Duca, LLP; Larson King LLP); **Truck and Equipment Dealer Plaintiffs** (Duane Morris LLP); **the State of Florida** (Florida Office of the Attorney General); **the State of Indiana** (Rynbrandt & Associates, PLLC); **Aisin Defendants** (Cleary Gottlieb Steen & Hamilton LLP; **Aisan Defendants** (Cleary Gottlieb Steen & Hamilton LLP); **Alps Defendants** (Brooks Wilkins Sharkey & Turco PLLC; Covington & Burling LLP); **Bosch Defendants** (Allen & Overy LLP; Warner Norcross & Judd LLP); **Bridgestone Defendants** (Schiff Hardin LLP; Weil Gotshal & Manges LLP); **Calsonic Defendants** (Weil Gotshal & Manges LLP); **Continental Defendants** (Calfee, Halter & Griswold LLP; Brooks, Wilkins, Sharkey, Turco PLLC); **Diamond Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Furukawa Defendants** (Kemp Klein Law Firm; Lane Powell PC); **G.S. Electech Defendants** (Porter Wright Morris & Arthur LLP); **JTEKT Defendants** (Paesano Akkashian, PC; Shearman & Sterling LLP); **Maruyasu Industries Co., Ltd.** (White & Case LLP); **Mikuni Defendants** (Pillsbury Winthrop Shaw Pittman LLP); **Mitsuba Defendants** (Farmer Brownstein Jaeger LLP); **Mitsubishi Heavy Defendants** (Foley & Lardner LLP); **Nachi Defendants** (Kemp Klein Law Firm; Lane Powell PC); **NSK Defendants** (Cleary Gottlieb Steen & Hamilton LLP; |

| SSEs Subject to the Motion | Moving Parties |
|---|---|
| | Honigman, Miller, Schwartz and Cohn LLP); **NTN Defendants** (Winston & Strawn LLP); **Showa Defendants** (Ice Miller LLP); **Stanley Electric Defendants** (McDonald Hopkins PLC; Simpson Thacher & Bartlett, LLP); **Sumitomo Defendants** (Giarmarco, Mullins & Horton, PC); **Takata Defendants** (Williams & Connolly LLP); **Sumitomo Riko Defendants** (Miller Canfield); **Tokai Rika Defendants** (Baker & Miller PLLC; Butzel Long); **Toyo Defendants** (Hertz Schram PC); **Toyoda Gosei Defendants** (Baker Botts LLP); **Valeo Defendants** (Cleary Gottlieb Steen & Hamilton LLP) |

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2016, I caused the Parties' Motion To Compel Discovery From Non-Party Original Equipment Manufacturers as well as the Parties' Memorandum in Support of the Motion and Declaration in Support of the Motion to be served on the non-parties via FedEx.  The foregoing materials were also electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to the Parties' counsel of record.

Dated: January 19, 2016

                                        */s/ Sheldon H. Klein*
                                        Sheldon H. Klein (P41062)
                                        **BUTZEL LONG**
                                        150 West Jefferson, Suite 100
                                        Detroit, MI 48226
                                        Tel.: (313) 225-7000
                                        Fax: (313) 225-7080
                                        sklein@butzel.com
                                        dumouchd@butzel.com