REDACTED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | Honorable Marianne O. Battani |
| In Re: All Auto Parts Cases | : | 2:12-md-02311-MOB-MKM |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| All Dealership Actions | : | |

**DEALERSHIP PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTIONS TO AND MOTION TO REVERSE THE MASTER'S RULINGS GRANTING IN PART AND DENYING IN PART DEALERSHIP PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

REDACTED

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………...ii

TABLE OF AUTHORITIES……………………………………………....….iii

CONCISE STATEMENT OF ISSUES PRESENTED……………………….....v

MOST APPROPRIATE AUTHORITIES…………………………………………vi

I. PRELIMINARY STATEMENT……………………………………………1

II. ARGUMENT……………………………………………………………… 2

  A. Legal Standard for Review of a Special Master's Order…………………………… 2

  B. Legal Standard for Proportionality and Protective Orders…………………………..2

    1. Proportionality………………………………………………………… 2

    2. Protective Orders…………………………………………………… 3

  C. The Special Master Correctly Struck Topics 7, 8, 11(c), and 11(g)…………………..4

    1. Topic No. 11(c)…………………………………………………………..4

    2. Topic Nos. 7, 8 and 11(g) …………………………………………9

  D. Defendants' Other Attacks Are of No Moment…………………………………… 14

  III. CONCLUSION………………………………………………………….. 16

REDACTED

## TABLE OF AUTHORITIES

**Cases**

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) ................................................... 14

*Credit Lyonnaise SA v. SGC Int'l, Inc.*, 160 F.3d 428 (8th Cir. 1998) ......................................... 14

*Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984) ................................. 14, 15

*Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70 (D. Conn. 2010) ..................................... 3, 11

*Drug Mart Pharm. v. American Home Prods.*, 296 F. Supp. 2d 423 (E.D.N.Y. 2003) .................. 4

*Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889 (6th Cir. 1991) ..................... 2

*In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013) .................................................................................................... 8

*In re Carbon Dioxide Industry Antitrust Litigation*, 155 F.R.D. 209 (M.D.Fla.1993) ................. 5

*In re Independent Serv. Org. Antitrust Litig.*, 168 F.R.D. 651 (D. Kan. 1996) ........................... 11

*In re Processed Egg Products Antitrust Litig.*, No. 08-MD-2002, 2015 WL 6964281 (E.D. Pa. Nov. 10, 2015) .................................................................................................... 13

*In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578 (D. Minn. 1990) ................................. 5

*Jones v. Robinson,* 37 Fed. App'x 761(6th Cir. 2002). ................................................... 2

*Karofsky v. Abbott Labs.*, No. CV-95-1009, 1997 WL 34504652 (Me. Super. Oct. 16, 1997). .... 8

*Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656 (D. Or. 2015) ...................................... 11

*Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450 (6th Cir. 1993) ........................................ 2

*Reed v. Bennett*, 193 F.R.D. 689(D. Kan. 2000 ........................................................... 12

*RM Deam Farms v. Helena Chemical Co.*, 2012 WL 169889 (E.D. Ark. Jan. 19, 2002) ........... 12

*Scales v. J.C. Bradford & Co.*, 925 F.2d 901 (6th Cir. 1991) ................................................ 3, 16

*Shaklee Corp. v. Gunnell*, 748 F.2d 548 (10th Cir.1984) ...................................................... 15

*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524 (D. Kan. 2006)). ................. 12

*Straus et al. v. Victor Talking Mach. Co.*, 297 F. 791 (2d Cir. 1924) ....................................... 4

*Surles ex rel. Johnson v. Greyhound Lines*, 474 F.3d 288 (6th Cir. 2010) ................................. 3

*Tri–State Hosp. Supply Corp.*, 226 F.R.D. 118 (D.D.C.2005) ............................................. 11

*Western Electric Co., Inc. v Stern*, 544 F.2d 1196 (3d Cir. 1976) ......................................... 15

*Whiting v. Hogan*, No. 2013 WL 1047012 (D. Ariz. Mar. 14, 2013) ....................................... 12

REDACTED

**Rules**

Fed. R. Civ. P. 26(b)(1)........................................................................................3

Fed. R. Civ.P. 26(b)(2)(C) ...................................................................................3

Fed. R. Civ. P. 26(b)(2)........................................................................................4

Fed. R. Civ. P. 26(b)(2)(C)(iii) ............................................................................3

Fed. R. Civ. P. 26(c) .............................................................................................4

Fed. R. Civ. P. 26(c)(2)(4) ...................................................................................4

Fed. R. Civ. P. 30(b)(6).................................................................................passim

Fed. R. Civ. P. 53(f)(5) .........................................................................................2

REDACTED

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Whether the Master properly struck from Defendants' overbroad 30(b)(6) notice topics related to Dealership profits which he stated were "too far removed" to be relevant to this case, which is based on Dealership Plaintiffs' purchases of vehicles?

2.      Whether the Master properly struck topics related to 1) the marketplace for new vehicles over the course of 15 years, 2) all of Dealership Plaintiffs' competitors and their market shares and pricing practices and 3) the sales and leasing practices of any other dealerships, given that such topics are too speculative and overly broad?

REDACTED

## MOST APPROPRIATE AUTHORITIES

### <u>Cases</u>

*Bush v. Dictaphone*, 161 F.3d 363, 367 (6th Cir. 1998)

*Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70 (D. Conn. 2010)

*Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991).

### <u>Rules</u>

Fed. R. Civ. P. 26(b)

Fed. R. Civ. P. 30(b)(6)

REDACTED

## I.  PRELIMINARY STATEMENT

Defendants served immensely broad Rule 30(b)(6) notices on Dealership Plaintiffs, seeking everything from information about insurance and servicing contracts to the details of other lawsuits Dealership Plaintiffs have participated in.

ADPs moved for a protective order in the wake of the Court's admonition that the Rule 30(b)(6) depositions of Dealers should be narrow, relating to "how much they paid for the car and where they purchased the car, that type of thing." January 28, 2015 Status Conference Transcript, at 24, attached as Ex. 1.  The court repeatedly stated at the January 28, 2015 status conference that Indirect Purchaser depositions should be strictly limited.  *Id.* at 24, 26-28.  The Master similarly stated of 30(b)(6) depositions  that "this is going to be a relatively limited area."  *See* Transcript from May 26 Telephonic Hearing, at 6-7, attached as Ex.2.

The Special Master denied the vast majority of ADPs' motion, allowing Defendants to take 30(b)(6) testimony on most of their requested topics. ADPs disagree with the Special Master's ruling, but declined to appeal it in order to avoid delay and conserve the parties' and the Court's resources. Defendants, by contrast, object to even the slightest limits placed on the scope of their Rule 30(b)(6) notice.  While paradoxically claiming that the Master ruled "correctly" *see* Def. Memo., at 2, in granting them testimony on the topics he upheld and being perfectly happy with his statements on those topics, Defendants claim that the Master's rulings on the few topics he struck were "arbitrary." Def. Memo, at 2.  As has been their practice in appealing nearly every limitation the Master has placed on their sprawling discovery requests, Defendants once again demand that this Court strike down even the minor boundaries the Master has put in place.

Defendants' objections should be overruled. The Rule 30(b)(6) topics at issue go far beyond the simple issue of which vehicles each Dealership purchased and whether those vehicles

REDACTED

were purchased at an inflated price and should be rejected by this Court as they were by the Master.

## II.     ARGUMENT

### A.     Legal Standard for Review of a Special Master's Order

Under Federal Rule of Civil Procedure 53(f)(5), "[u]nless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion." "Abuse of discretion is defined as a firm and definite conviction that the [adjudicator to whom discretion is afforded] committed a clear error of judgment." *Jones v. Robinson*, 37 F. App'x 761, 762 (6th Cir. 2002). Demonstrating abuse of discretion is therefore a "heavy burden." *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1466 (6th Cir. 1993). *See, e.g.*, *Bush v. Dictaphone*, 161 F.3d 363, 367 (6th Cir. 1998) (limiting length and subject matter of one corporate deposition and forbidding another corporate deposition was not an abuse of discretion); *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991) (denying deposition not abuse of discretion).

### B. Legal Standard for Proportionality and Protective Orders

#### 1.     Proportionality

Rule 26(b)(2)(C) instructs courts to limit discovery to where "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Rule 26(b)(1), in turn, provides that discovery should be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

REDACTED

In determining whether discovery is proportional, "the court will consider the specific facts of the case to make a common sense decision about whether or not the discovery in question goes too far." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 73 (D. Conn. 2010); *see also Surles ex rel. Johnson v. Greyhound Lines*, 474 F.3d 288, 305 (6th Cir. 2010) ("[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii))).

## 2. Protective Orders

Federal Rule of Civil Procedure 26(c) provides that this Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "With regard to the 'undue burden and expense' provision, Rule 26(c) operates in tandem with the proportionality limits set forth in Rule 26(b)(2)." *Dongguk Univ.*, 270 F.R.D. at 73. Under Rule 26(c), a court may, among other things, issue an order providing "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(2)(4). The Sixth Circuit has noted that district courts have "wide discretion" in limiting discovery. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). Thus, this Court has the authority to limit the number and scope of Plaintiffs' proposed 30(b)(6) topics so as to render them more manageable, reasonable, and tailored to the claims at issue in these actions.

REDACTED

### C. The Special Master Correctly Struck Topics 7, 8, 11(c), and 11(g)

**1.      Topic No. 11(c)**

Topic No. 11(c) seeks testimony on "Your revenue, profit margins, and profit on new vehicles sold or leased (i.e., front end)."

Defendants claim that the Special Master "offer[ed] no reason at all for his decision to strike Topic 11(c)." Defs.' Mem. at 10. This is patently false. Defendants fail to mention that subsequent to the Special Master's ruling, Defense counsel sought reconsideration by way of email. *See* Ex. 3, December 30 Email Exchange Between Defense Counsel and the Master. The Special Master denied Defense counsel's renewed motion, explaining that "The revenue, profit margins and profits on vehicles are too far removed from the iss[]ues in the case to be relevant." *Id*.

This ruling is all the more reasonable as it is consistent with the Master's October 16, 2014 Order denying Defendants' request for the financial information sought in Sumitomo Request No. 36, including "income statements, balance sheets, profit and loss statements, general ledgers, and tax returns."  The Master stated that such information was "irrelevant" and "not likely to lead to relevant information." Order on Certain Defendants' Motion to Compel Discovery from Direct Purchaser and Auto Dealer Plaintiffs Case No. 2:12-cv-00102-MOB-MKM, (Doc # 214) (Filed 10/16/14) ("October 16, 2014 Order"), attached as Ex. 4. Defendants *did not* appeal that order or dispute it and clearly conceded its rulings. The Master has held, throughout his time presiding over this case, that profits and losses are not relevant.

As stated in another overcharge case, "[w]hether, then, plaintiffs sold to their customers at a profit or loss becomes immaterial in this case." *Drug Mart Pharm. v. American Home Prods.*, 296 F. Supp. 2d 423, 426 (E.D.N.Y. 2003) (citing *Straus et al. v. Victor Talking Mach.*

4

REDACTED

*Co.*, 297 F. 791, 803 (2d Cir. 1924)); *In re Carbon Dioxide Industry Antitrust Litigation*, 155

F.R.D. 209 (M.D.Fla.1993) (holding that plaintiffs' "cost and profits" were irrelevant and

rejecting defendants'' argument that they were entitled to compare plaintiffs' profitability to their

own); *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578 (D. Minn. 1990) (where damages

are calculated using overcharge, profits are irrelevant).

Defendants do not offer much of anything to the contrary. At most their expert states that

profits "may" provide information about costs. Def. Memo, at 9-10. Neither Defendants nor

their expert explain how profit figures will be used in their pass-on formula. Defendants' expert

does not elaborate on the types of circumstances that would trigger the situation where profits

"may" provide relevant information as opposed to circumstances when they will not provide

relevant information. Nor does Defendants' expert explain why the vast amount of data and

documents they have received regarding profits is insufficient or what he has already done with

the profits information he has received to merit more discovery on the topic. Beyond the non-

committal statement from their expert, who seems not to be concerned one way or the other

about whether he receives more profit information, Defendants have little argument to offer.

Defendants simply make the conclusory statement that profit is relevant to pass-on and

the degree of competition, but provide no explanation of how or why they believe that is so. Nor

does their expert declaration offer any help in this regard. Defendants have advanced no theory

to indicate that a particular profit level means that a dealership passed on an overcharge.

REDACTED

██████████████████████████████████████████████████

██████████████████████████████████████████████

███████ as their expert admits in the very same declaration they cite in support of their motion.
*See* Snyder Decl. ¶ 14, Ex. 4 to Defs.' Reply in Supp. of Mot. To Establish Schedule for Dealer
Pls.' Produc. of ESI (12-cv-00102, ECF No. 305-2). This is more than enough information to
analyze profits and prepare any analysis, economic model or argument they desire.

Even with these data and documents in hand at the time they briefed this issue,
Defendants could not make a showing in their opposition to Plaintiffs' Motion for Protective
Order to convince the Master that further discovery on this issue was necessary and that they
needed testimony on this issue, beyond the enormous amount of information they had already
received.

Defendants still, somehow, claim that all of these data and documents are not enough.
None of their arguments holds up.  They first assert that the data on profits do not include the
factors that went into the profit calculation. This is incorrect. ████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████ Next, Defendants claim
that, absent Dealer testimony, they will not understand why profits were made on some vehicles.
The need for information as to why profits were made is nowhere asserted in their expert's
declaration.  Further, a deponent will not be able to answer this question either.  It is extremely
unlikely that a dealership employee could explain to Defendants why, for example, a vehicle sold
in 2005, likely by someone who no longer works at the dealership, to a customer the deponent
has never met, made a certain profit.

REDACTED

Finally, Defendants claim that the data is insufficient because it does not go all the back to 1999. In fact, a number of the dealerships have produced OEM reports containing profit figures that cover a longer time period than their data. This compromise was agreed to partially because Defendants and their expert, in the declaration they cite in their motion, argued in seeking to compel production of these reports, that they were needed to cover time periods not covered by the data. Further, many Defendants have also not produced data covering the entire time period. Despite this, all parties have accepted that they will perform their analyses on the large amount of data that has been produced, and that even if certain years are missing the data provided is more than enough to create a viable model and to extrapolate regarding the period for which data is missing, if needed.

Moreover, Defendants fail to explain how, if a time period is not covered by responsive data and is from before the data begins, potentially over fifteen years in the past, a 30(b)(6) deponent will be able to provide competent testimony on that time period. The dealership would have to search all of its records and interview numerous employees to confirm whether it has any information on this issue, in the end leading to overwhelming burden and potentially no useable information. These are burdens the Master was not willing to impose in light of the fact that he determined profits were "too far removed" from the issues in this case to be relevant in any event. Requiring testimony on this topic would create the possibility for extensive additional briefing when the Defendants become unsatisfied with a dealership's answer, or do not believe it when it asserts lack of knowledge or memory. This will only lead to more disputes and motions to compel testimony.

Defendants make the same argument in their appellate brief that they made to Master the day after his ruling was rendered—namely that he permitted testimony on profits made from the

REDACTED

sale of financing, insurance, warranties and aftermarket products, but not profits made from the sale of vehicles.  When Defendants raised this argument in an email that they did not attach to their motion, the Master considered and rejected it.  *See* Email Exchange of December 30, 2015, Ex.3, *supra*.

Defendants, erroneously point to language not present in Dealerships' operative complaint, claiming that it somehow justifies overturning the Master's ruling.  But they fail to advise the Court that this language comes from an old complaint, filed years ago, that no longer controls here and was superseded several times over by later-filed complaints, including the current, operative complaint, the Third Amended Complaint, that does not contain the language they point to. *See* Doc. No. 218 in Case No. 2:12-cv-00102-MOB-MKM.  Defendants' argument in this regard falls flat.

Defendants also point to a statement by the Court in its decision on their Motion to Dismiss, but that statement does not mention or even refer to Dealership Plaintiffs.  Further, that quote refers not to the Court's "recogni[tion][] that the absorption of an overcharge may reduce a seller's profit margin," as Defendants claim but rather the Court's summary of arguments set forth in *Defendants'* briefs, which the Court described as "Collective Defendants' laundry list of missing allegations." *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612, at *9 (E.D. Mich. June 6, 2013).  Defendants' citation to *Karofsky* fares no better.  That case alleged pricing discrimination, and the plaintiffs in that case asserted that some purchasers were receiving favorable prices while others were not.  *Karofsky v. Abbott Labs.*, No. CV-95-1009, 1997 WL 34504652, at *1 (Me. Super. Oct. 16, 1997).  There is no such allegation in this action.  Plaintiffs have alleged that all dealerships have been affected.  Further, that case did not have

REDACTED

anything to do with the certification of a class of retailers. Finally, profitability did not appear to be used in a pass-on formula, and was not used by Defendants to mount a pass-on defense.

Defendants also misscite the Master's statement during the May 6, 2015 Status Conference.  The Master has never stated that information about profits is critical.  Indeed, that would be difficult to believe, given that when he was confronted with the issue of whether to allow discovery on profits, both before and after the status conference whose transcript Defendants selectively quote, he stated that it was not relevant.  *See* October 16, 2014 Order, *supra* (denying a request for, among other things, "profit and loss statements," and holding that such information was "irrelevant" and "not likely to lead to relevant information."); Order Dealership Plaintiffs' Motion for Protective Order, 2:12-md-02311-MOB-MKM Doc # 1169 (Filed 12/29/15) (denying the request for testimony on "revenue, profit margins, and profit on new vehicles sold or leased").

## 2.        Topic Nos. 7, 8 and 11(g)

Topic No. 7 seeks testimony on "competitors, including but not limited to their locations, businesses, pricing of new vehicles, and market share," while Topic Nos. 8 and 11(g) seek testimony on each Dealers' "knowledge" of "the marketplace for new vehicles," and of "the similarities or differences between Your sales and leases and the sales and leasing behaviors of other automotive dealerships," respectively.

Defendants claim to need testimony on these topics because "the extent of competition with other auto dealers is a key factor in setting prices and is highly relevant to . . .the issue of

9

REDACTED

class certification." Defs.' Mem. at 13.[1] But as the Special Master correctly noted, any testimony from the Dealers on its competitors, and the "marketplace for new vehicles," would be "pure speculation."  Order, Case No. 2:12-md-02311-MOB-MKM, (Doc # 1169), at 3-4, Filed 12/29/15.  The same thing is necessarily true of Topic 11(g), which asks for substantially similar information as Topics 7 and 8, seeking "your knowledge of similarities or differences between your sales and leases and the sales and leasing behaviors of other automotive dealerships."  It makes sense that the Master would be consistent in denying this request as well, given that it similarly sought for Dealership Plaintiffs to speculate about how all other dealers' practices compared to theirs.

The requests were so broad and far removed from the Dealerships' own businesses that to try to provide thorough testimony on them, Dealerships would have to take on extreme burdens to try to educate themselves about the topics at issue, or guess at the answers. Learning about the sales practices of every other dealership, price trends in the market over a 15+-year period and the market share of every competitor is an unreasonable burden and not one that could be justifiably imposed on Dealership Plaintiffs. Whatever anecdotal evidence Dealers have about their competitors or the "general marketplace in which [they] operated over time" (Defs' Mem. at 12) would not be empirical evidence that could be fed into an economic model.  Indeed, the

---

[1] Defendants also contend that these topics are relevant to the "claims raised by . . . End Payors." Defs'. Mem. at 13. But the notion that Defendants need deposition testimony of ADPs in order to probe the marketplace for new vehicles is absurd. In fact, Defendants successfully argued to the Master that they needed discovery of third-party dealerships because they could not obtain the necessary information from the Dealership Plaintiffs.  Defendants have now received third-party document and deposition discovery from the third-party dealerships who sold vehicles to the End-Payor Plaintiffs. It can hardly be argued, then, that the depositions of ADPs is critical to Defendants in defending themselves against the End Payors.

REDACTED

fact that Defendants withdrew their requests for documents concerning Auto Dealers' competitors suggests that Defendants know this to be true. *Compare* 12-cv-00102, Dkt. No. 184, Ex. B ("Dealer's Responses to Sumitomo's First Set of Document Requests") at 39 (Sumitomo seeking, and Dealers' objecting to, discovery on "competitors' locations, descriptions of competitors' businesses, and competitors' pricing") *with* May 12 Order and Stipulation 2:12-cv-00103-MOB-MKM, Doc # 312, Filed 05/12/15 (not pursuing any competitor discovery).  If Dealership Plaintiffs responded during a deposition that they did not know the answer to questions on these topics or that their response was a guess, Defendants would doubtless mount further challenges, leading to more disputes and more unneeded briefing.  Therefore the Master was right to strike these topics.

Defendants argue that the likely irrelevance of this testimony is no grounds for precluding these topics, as Rule 30(b)(6) requires each Dealer "to do [no] more than make a reasonable inquiry to ascertain the facts reasonably known or ascertainable by the Auto Dealer." Defs.' Mem. at 12. In other words, Defendants would have it that preparing to respond to these to the pics is of little burden to Auto Dealers. But this is simply not the case.

Apart and aside from appearing and sitting for a Rule 30(b)(6), simply preparing for a Rule 30(b)(6) deposition can be extremely onerous, particularly where the requesting party seeks testimony on broad topics. Thus, courts are particularly vigilant in protecting against Rule 30(b)(6) notices that unnecessarily intricate and unduly burdensome. *See Dongguk Univ.,* 270 F.R.D. at 73 (noting that, because a Rule 30(b)(6) deposition by "its nature can be time-consuming and inefficient," it is particularly important that the "be productive" (quoting *Tri–State Hosp. Supply Corp.*, 226 F.R.D. 118, 126 (D.D.C.2005)); *see also In re Independent Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (noting that even where a requesting

11

REDACTED

party "has a right to discover the facts" at issue in a noticed topic, the topic is nonetheless inappropriate where it is "inefficient" and "unreasonable" to "discover those facts through a Rule 30(b)(6) deposition"); *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015) (concluding that "'to allow the Rule to effectively function, the requesting party must take care to designate, *with painstaking specificity,* the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute'" (quoting *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006)). The topics at issue here are patently overbroad, making preparation extremely burdensome, if not impossible.

Topic No. 7, by its plain language, seeks testimony on, among other things, the pricing of every vehicle of each of its competitors; the time and expense necessary to prepare Dealers' representatives to testify on such a broad topic would be immense, and cannot possibly be justified in this instance, even if Dealerships could credibly speak to the issues. Second, it seeks testimony not on a finite list of topics, but topics "including but not limited to" those enumerated in Topic No. 7. It is well-established that Rule 30(b)(6) topics that employ such language are overbroad on their face. *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (a Rule 30(b)(6) notice indicating that the listed areas of inquiry would "include, but not be limited to" the areas specifically enumerated in the notice are *per se* insufficiently particular); *RM Deam Farms v. Helena Chemical Co.*, 2012 WL 169889, at *1 (E.D. Ark. Jan. 19, 2002) (30(b)(6) notice insufficiently particularly where "the testimony would include but not be limited to items listed"); *Whiting v. Hogan*, No. 2013 WL 1047012, at *11 (D. Ariz. Mar. 14, 2013) (same).

For their part, Topic Nos. 8 and 11(g) seek testimony on "Your knowledge" of the relevant marketplace and how the sales and leasing practices of Dealership Plaintiffs compare to

REDACTED

those of other dealerships. The Notice, however, defines "Your" to include *not only the*

*Dealership itself*, but also, among others, the "present and former . . . servants, employees,

officers, directors, [and] representatives" of the Dealers. (emphasis added). Accordingly, to

comply with the plain language of the Notice, Auto Dealers would be required to prepare a

witness as to *all these persons* knowledge—i.e., each and every employee over the past two

decades as to his or her knowledge of the new car marketplace. Needless to say, the topic is

overbroad and unduly burdensome.

Further, if Defendants wish to have discovery on these topics, they can have their expert

conduct his own analysis. For instance, in the *Eggs* case Defendants cite, the analysis of

competition was done by the Defendants' expert:

> Dr. Kevin Murphy, a professor of economics at the University of Chicago,
> testified on behalf of Defendants, and the Court credits his testimony. Dr. Murphy
> explained in his analysis that local competition heavily influences the pricing
> decisions of retailers and that any accurate measure of overcharge would require
> accounting for the effects of geography, competition, pricing strategy, and
> contract type—i.e., conducting individualized analyses that would overwhelm the
> common issues here. Defendants again give special attention to the cost-plus
> contracts on which some retailers purchased eggs. The Court finds persuasive
> Defendants' argument that cost-plus contracts would have affected not just the
> retailer with the cost-plus contract, but other retailers as well, who would have
> priced their eggs to compete with the local retailers who did have cost-plus
> contracts. For example, Dr. Murphy shows in his Declaration that retailers in five
> geographic areas had lower egg prices if located in close proximity to a Wal-Mart,
> which, at least for some portion of the class period, bought eggs on a cost-plus
> basis.

*In re Processed Egg Products Antitrust Litig.*, No. 08-MD-2002, 2015 WL 6964281, at

\*27 (E.D. Pa. Nov. 10, 2015). Further, Defendants say they seek information about pricing, but

they will already be receiving testimony about pricing in response to the following topic: "how

you determine new vehicle pricing." *See* Topic 12(b).

REDACTED

In short, Topic Nos. 7, 8, and 11(g) are, as the Special Master noted, unlikely to produce testimony on Dealers' competitors and markets that is anything but speculative.  Thus, given the burden of preparing to respond to Rule 30(b)(6) topics in general, and for preparing for these topics, as written, specifically, the burden of these topics far outweighs their benefit. The Special Master did not abuse his discretion in denying Topics Nos. 7, 8, and 11(g).

### D.  Defendants' Other Attacks Are of No Moment

With no real arguments remaining, Defendants threaten the Court, as they did the Master, with reversible error if they do not receive every last bit of the overbroad discovery they seek, citing the same cases they cited to the Master in their opposition.  Defendants first cite *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013), claiming that it is reversible error, and a violation of their due process rights, not to allow the raising of individual challenges and defenses. *See* Def. Memo at 8. But Defendants have received data on tens of thousands of individual sales and invoices showing tens of thousands of individual purchases. They have been permitted to explore fourteen sub-topics' worth of downstream discovery, as well as the ability to discuss ten specific transactions, per Dealership Plaintiff, which will enable them to raise any individual defenses they wish to Dealerships' claims.  This discovery includes "how you determine vehicle prices" and "reasons for variations in pricing among customers."  This is all in addition to the over one hundred deal files each covering an individual transaction, that Defendants received through third-party discovery and all of the depositions they intend to take (and have already begun taking) of the third-party dealerships who produced those deal files about those individual transactions. In any event, profits, competitors and the automotive market can hardly be characterized as leading to individual defenses, and the notion that the slightest

14

REDACTED

narrowing on their immense Rule 30(b)(6) notices constitutes an infringement of their due process rights is nonsense.

Defendants also cite to *Credit Lyonnaise*, and *Deitchman* for the propositions that denying depositions and refusing to allow third-party depositions can constitute reversible error. *Credit Lyonnaise SA v. SGC Int'l, Inc.*, 160 F.3d 428, 430–31 (8th Cir. 1998); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 558, 561–65 (7th Cir. 1984). That is not even remotely the situation here.  As is explained above, Defendants are being permitted vast amounts of third-party dealer depositions, in addition to third-party document discovery.  And they have certainly not been prevented from taking Dealership Plaintiff depositions.  In fact, they have been permitted to take Dealership Plaintiff depositions on an incredibly wide range of topics regarding vehicle purchases, vehicle sales, incentives, rebates, costs, trade-in, and even products that are not even vehicles, such as warranties, insurance and servicing agreements.  *Shaklee Corp. v. Gunnell*, 748 F.2d 548 (10th Cir.1984), a further case cited by Defendants, is entirely inapposite. There, the Court of Appeals found an abuse of discretion where the District Court severely limited discovery, to the extent that it precluded the defendant from seeking discovery on issues plainly relevant to the causes of action in the complaint. That can hardly be said to be true here, where the Special Master has permitted Defendants to pursue a wide range of topics through their Rule 30(b)(6) depositions, many of which have little, if any, relevance to this case at all. *Western Electric Co., Inc. v Stern*, 544 F.2d 1196 (3d Cir. 1976), another case relied on by Defendants, is even farther afield.  There, the plaintiff brought a putative class action alleging systemic gender discrimination, but the District Court refused to grant the defendant any discovery of plaintiff's assertions as to the nature of the defendant's discrimination against individual members of the class. *Id.* at 1198-99. The suggestion that the Special Master has

15

REDACTED

deprived Defendants of discovery to an analogous extent simply does not pass the straight face test.

In any event, this is a familiar argument by Defendants, which should be rejected here as it was when they made it in their previous objections to the Master's ruling in Indirect Purchaser depositions. *See* Objections to, and Motion to Modify, the Special Master's  June 18, 2015 Order, (arguing, unsuccessfully, that the disputed provisions in the Master's  order "would violate defendants' due process rights if left intact"). These arguments ring hollow now as they did then. Courts have "wide discretion" in limiting discovery. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991).

Despite claiming that they are being denied due process in response to the slightest limitation on their demands, Defendants ignore the fact that it would be reversible error to abrogate Dealerships' due process rights and bury them with discovery demands that make it impossible for them to pursue their claims.

## III.    CONCLUSION

For all of the reasons set forth above, Defendants' requests to reverse the Master's rulings and remove nearly all limits on their 30(b)(6) depositions of Dealership Plaintiffs should be denied.

Date:  January 25, 2016                    Respectfully submitted,


                                           */s/ Jonathan W. Cuneo*
                                           Jonathan W. Cuneo
                                           Joel Davidow
                                           Victoria Romanenko
                                           Yifei Li
                                           **CUNEO GILBERT & LADUCA, LLP**
                                           507 C Street, N.E.
                                           Washington, DC 20002
                                           Telephone: (202) 789-3960

REDACTED

Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

*s/ Shawn M. Raiter*
Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*/s/ Don Barrett*
Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel for the Proposed
Automobile Dealer Plaintiff Classes*

*/s/ Gerard V. Mantese*
Gerard V. Mantese
David Hansma
Joshua Lushnat
**MANTESE HONIGMAN ROSSMAN AND
WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
jlushnat@manteselaw.com

17

REDACTED

*Interim Liaison Counsel for the Proposed*
*Automobile Dealer Plaintiff Classes*

REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2016 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Yifei Li
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com