# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Case No.: 12-MD-02311<br>Honorable Marianne O. Battani |
| ALL PARTS | Special Master Gene J. Esshaki |
| THIS RELATES TO: ALL CASES | **Oral Argument Requested** |

**MEMORANDUM OF SMALLER SUBPOENAED ENTITIES IN OPPOSITION TO THE PARTIES' MOTION TO COMPEL DISCOVERY FROM NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS AND CERTAIN SERVING PARTIES' MOTION TO COMPEL DISCOVERY FROM NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS**

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUE..................................................................................................iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................................. iv

I.    INTRODUCTION ...............................................................................................................1

II.    BACKGROUND .................................................................................................................2

III.    ARGUMENT.......................................................................................................................4

        A.    Any Data or Documents the Parties Would Obtain from the
             Smaller SSEs Will Have No Impact on any Statistical Analyses
             the Parties Will Likely Attempt to Conduct ..........................................................5

        B.    The Smaller SSEs' Market Share is Even Smaller When Considered
             in the Context of the Procurement of Components and Assemblies for
             Installation into Vehicles Sold in the U.S., and Some Were Not Involved
             in Any Procurement ...............................................................................................9

        C.    The Unprecedented Scope of the Subpoena is Exponentially More
             Burdensome to the Smaller SSEs .........................................................................11

IV.    CONCLUSION..................................................................................................................12

CERTIFICATE OF SERVICE ...................................................................................................16

## STATEMENT OF THE ISSUE

1. Should non-party entities whose respective U.S. sales each represent less than 2.5% of the total U.S. vehicle sales market ("Smaller SSEs") be ordered to comply with a "Uniform OEM Subpoena" that is unprecedented in its breadth and scope and when expert testimony and the Parties' own admissions demonstrate that the documents and data being sought from the Smaller SSEs are statistically insignificant and would be of little to no benefit to the Parties?

**Answer:**   No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   No. 06-md-0620, 2015 U.S. Lexis 120892 (E.D. Pa. July 29, 2015) ...............................................8

**I.     INTRODUCTION**

The Parties provide no factual or evidentiary support demonstrating any need for documents and data from entities that have only minimal shares of the United States vehicle sales market. The Parties have arbitrarily agreed to hold the Subpoena in abeyance for a few smaller SSEs with less than 0.1% market share, but not for the Smaller SSEs joining in this opposition. The Smaller SSEs[1] each represent less than 2.5% (and some significantly less), and less than 7.5% in total of the overall U.S. vehicle market during the Subpoena period (1992-2015). The Parties' failure to explain how or why they drew the line at entities with less than 0.1% market share is telling. Traditional regression models in antitrust cases do not require complete datasets – far from it – and the Parties themselves have recognized that they can create viable economic models with less than 100% of the available data. As expert testimony submitted along with this opposition demonstrates, the Smaller SSEs' sales volume is too small to have any statistical significance.

Moreover, in referencing market share based upon total United States vehicle sales, the Parties ignore that the alleged conspiracy's central theme is the *purchase of auto parts*, not the sale of vehicles. In this context, the Smaller SSEs reflect an even smaller share of the market – representing just 1.7% of the total production of any vehicles sold in the U.S. – making any documents and data from them even less helpful.

---

[1] The "Smaller SSEs" joining in this opposition include BMW of North America, LLC ("BMW NA"); BMW Manufacturing Co. ("BMW MC"), LLC; Hino Motors Manufacturing U.S.A., Inc. ("Hino"); Jaguar Land Rover North America, LLC ("Jaguar Land Rover"); Mitsubishi Motors North America, Inc. ("MMNA"); Mitsubishi Motors Credit of America, Inc.; Mitsubishi Motors R&D of America, Inc.; Porsche Cars North America, Inc. ("Porsche"); Subaru of America, Inc. ("SOA"); Subaru of Indiana Automotive, Inc. ("SIA"); Volvo Cars of North America, LLC ("Volvo"); Volkswagen Group of America, Inc. d/b/a/ Volkswagen of America and d/b/a Audi of America ("VWGoA"); and Volkswagen Group of America Chattanooga Operations LLC ("VWCO").

The Parties have provided no justification for seeking to compel the Smaller SSEs to produce voluminous amounts of sensitive data and documents. The Smaller SSEs not only have insignificant market share, but none has the complete soup to nuts documents and data reflecting both the upstream purchase of the various auto parts at issue, and the downstream sales of the assembled vehicles containing those auto parts that the Parties claim they need.

In addition, the burden of complying with this unprecedented Subpoena is only magnified in relation to the Smaller SSEs that have fewer resources to comply with the Subpoena, and do not have large legal departments equipped to respond to these requests, contrary to the Parties' assumption. (*See* Parties' Motion at 30). Given the extraordinary and disproportionate burden this Subpoena poses on the Smaller SSEs, coupled with the Parties' failure to provide any support for their alleged need for documents and data from such a small percentage of the market, the Parties' attempt to enforce the Subpoena as to the Smaller SSEs defies reasonableness and is the antithesis of proportionality. As such, this Court should deny the Parties' Motions[2] to Compel as to the Smaller SSEs in their entirety.[3]

## II.  BACKGROUND

The Smaller SSEs participated in the global meet and confer between the SSEs and the Parties. In their October 14, 2015 correspondence, the Parties would not agree to withdraw the Subpoena as to any entity on the basis of sales volume in the United States, no matter how small.

---

[2] This memorandum is submitted in Opposition to both the Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers (ECF No. 1185) and the Certain Serving Parties' Motion to Compel Discovery From Non-Party Original Equipment Manufacturers (ECF No. 1187). Regardless, the following Smaller SSEs have submitted declarations that they do not have any documents responsive to Request Nos. 27 and 31 at issue in the Certain Serving Parties' Motion: Porsche, MMNA, Hino, VWGoA, VWCO, Jaguar Land Rover, Volvo, BMW NA. BMW MC has not located documents responsive to Request No. 31, and has previously offered to produce the limited documents it has in response to Request No. 27. (*See* Ex. 25 ¶¶ 8, 10 (Savrin BMW Decl.)).

[3] The Joint Opposition Brief on behalf of all SSEs indicates that some SSEs have made an offer of production. Because the Smaller SSEs' documents and data would be statistically insignificant, and, therefore, the Motions to Compel should be denied as to them, the Smaller SSEs have not joined in that offer of production.

(Ex.[4] 8 at 2).[5] Rather, they agreed to withdraw only a limited number of requests, and only for SSEs with annual United States sales volume of less than 10,000 vehicles, which would represent less than 1/100th of 1% of the U.S. vehicle sales market. (*Id.*).

In response, the SSEs proposed that the Subpoena be withdrawn in its entirety for all entities with less than 5% of the U.S. vehicle sales market, because the information from such entities will almost certainly have no impact on, among other things, the use of any statistical models in the case. (Ex. 9 at 4). In response, the Parties stated they would hold the Subpoena in abeyance as to only Rolls-Royce Motor Cars, NA, LLC and Maserati N.A., Inc. (Ex. 10 at 6). They provided no explanation for their offer to hold the Subpoena in abeyance for only those two entities, but not for others that also had a statistically insignificant market share. (*Id.*).

In their December 18, 2015 response, in a good faith attempt to reach an agreement, the SSEs lowered the threshold, and requested that the Subpoena be held in abeyance for SSEs with less than 3% of the U.S. vehicle sales market over the proposed production period. (Ex. 11 at 8). As identified, many of these entities had less than 0.5% market share (based upon 2014 only market share data relied upon by the Parties), including several of the Smaller SSEs joining in this motion. (*Id.*). The Parties only indicated, however, that they would not move to compel production from two additional entities, each of which had 1/100th of 1% market share or less. (Ex. 14 at 3).

The Parties provide no evidence or support, either during negotiations or to this Court, for needing documents and data from the Smaller SSEs. The Parties' Motions to Compel devote just

---

[4] "Ex." throughout this Opposition refers to the exhibits submitted along with the SSEs Opposition to the Parties' Motions to Compel by the Declaration of Scott M. Abeles.

[5] Certain Smaller SSEs highlighted their de minimis size and their inability to produce relevant documents well before the October correspondence was exchanged. (*See, e.g.,* Ex. 25 ¶¶ 4-6 (Savrin BMW Decl.); Ex. 76 ¶ 5 (Savrin Volvo Decl.); Ex. 48 ¶ 5 (Savrin Jaguar Land Rover Decl.)). No substantive response was received with respect to that correspondence.

one paragraph to the Smaller SSEs,[6] and provide no justification for drawing an arbitrary line at a miniscule 1/100th of 1% market share. For the reasons discussed below, the Motions to Compel as to the Smaller SSEs, which each have less than 2.5% market share over the proposed Subpoena period (and some with significantly less), should be denied.[7]

## III. ARGUMENT

As the Parties' recognize, Rule 26 requires the Court to analyze the proportionality of the discovery, including, among other factors, whether the burden or expense of discovery outweighs its likely benefit. (Parties' Motion at 13). When seeking information from a non-party, "even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by the production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002). All three factors apply to the Smaller SSEs. As to those entities, responding to the Subpoena would pose an immense burden, and that harm greatly outweighs what is at best the very limited utility of any such documents or data to the Parties.

---

[6] The Certain Parties' Motion seeking to compel production on Request Nos. 27 and 31 does not address the Smaller SSEs at all.

[7] As identified in the Joint SSE Opposition brief (*see* pg. 18, fn 15), the Subpoenas served on many of the SSEs were facially invalid under Fed. R. Civ. P. 45(c)(2) because they require production more than 100 miles from where the entity resides or regularly transacts business in person. This applies to the following Smaller SSEs: MMNA (and its related entities Mitsubishi Motors Credit of America, Inc. and Mitsubishi Motors R&D of America, Inc.); VWCO; BMW NA; BMW MC; Jaguar Land Rover; Volvo; Porsche; SOA, and SIA. Indeed, the Mitsubishi entities issued an objection letter to the Parties on this basis, but the Parties provided no response and did not re-serve a valid Subpoena on them. (Ex. 52 ¶ 3 (Weterrings MMNA Decl.)). For this reason, too, the Motions to Compel should be denied as to these Smaller SSEs.

### A.  Any Data or Documents the Parties Would Obtain from the Smaller SSEs Will Have No Impact on any Statistical Analyses the Parties Will Likely Attempt to Conduct.

Each of the Smaller SSEs represents less than 2.5% of the U.S. market during the Subpoena period (and some significantly less)[8]:

- BMW/MINI (1.6%)
- Subaru (1.4%)
- Jaguar/Land Rover (0.4%)
- Volvo (0.6%)
- Mitsubishi (1.1%)
- Volkswagen/Audi (2.1%)
- Porsche (0.2%)

(Declaration of Donald R. House ("House Decl.") at ¶¶ 8, 10, 11, 13, 14, 16, 18, attached to this Opposition as Ex. A).[9]  The Parties' reference to market share numbers from a static point in time (2014) is inappropriate given that the Subpoena seeks data and documents from 1992 to 2015.[10] (House Decl. ¶ 7).

---

[8] Because the Parties apparently wish to examine the U.S. market for cars and light trucks, the medium-duty trucks assembled by Hino should be excluded from their analysis, and Hino's market share would effectively be zero. Even if Hino's medium-duty trucks were counted as part of the overall market from 2003 through 2015, Hino's market share would be less than 0.05% (lower than the market share of other SSEs whose Subpoena obligations the Parties have agreed to hold in abeyance). (Ex. 33 ¶¶ 2-3 (Jung Hino Decl.)).

[9] Dr. House's declaration is also included in the Index of Exhibits submitted with the SSEs' Joint Opposition to the Motions to Compel at Exhibit 20.  Specific detail on vehicle sales and market share for the Smaller SSEs can be found in their individual declarations.  (*See, e.g.*, Ex. 23 ¶ 4 (McCullen BMW MC Decl.); Ex. 21 ¶ 14 (Schaeffer BMW NA Decl.); Ex. 75 ¶ 17 (Battaglia Volvo Decl.); Ex. 47 ¶ 16 (Weiner Jaguar Land Rover Decl.); Ex. 52 ¶¶ 11-14 (Weterrings MMNA Decl.); Ex. 70 ¶ 3 and attachment (Hannon VWGoA (Volkswagen) Decl.); Ex. 71 ¶ 3 and attachment (Schroth VWGoA (Audi) Decl.); Ex. 73 ¶ 3 and attachment (Hinson VWCO Decl.); Ex. 58 ¶ 3 (Folz Porsche Decl.); Ex. 62 ¶ 21 (Allen Subaru Decl.)).

[10] In the effort to justify their pursuit of smaller SSEs, the Parties not only use errant market share figures but also reference foreign OEMs who were not served with the Subpoena. (*See* Parties' Motion at 34 & n.56). The Parties refer to guilty pleas where BMW AG (a German entity) and Volvo Car Corporation (a Swedish entity) were identified as victims of price fixing involving variable valve timing.  BMW AG and Volvo Car Corporation are not the subjects of the Motions to Compel and the Volvo and BMW entities that are do not possess the referenced information.  (*See* Ex. 75 ¶ 18 (Battaglia Volvo Decl.); Ex. 22 ¶ 24 (Gipson BMW MC Decl.)).  Similarly, component parts for new Subaru vehicles are purchased primarily by Fuji Heavy Industries, Ltd. (a Japanese entity). *See, e.g.,* U.S. Dept. of Justice News, Sept. 19, 2013, available at http://www.justice.gov/opa/pr/two-fujikura-ltd-executives-indicted-roles-fixing-prices-automobile-parts-sold-subaru-be (last visited February 19, 2016).  In any event, Subaru of America, Inc., the primary distributor of Subaru vehicles in the United States does not purchase component parts for new Subaru vehicles sold in the United States. (*See* Ex. 62 ¶¶ 9-10 (Allen Subaru Decl.)).

5

The Parties' effort to compel production of documents and data from the Smaller SSEs each with market shares of less than 2.5% over the Subpoena period implies that the Parties need data from nearly 100% of the market so they can trace every single auto part at issue in this litigation that was purchased for assembly of a vehicle to be sold in the United States through the entire distribution process: from the supplier to the OEM, the OEM to the distributor, the distributor to the dealer, and the dealer to the consumer. But as discussed more fully in the SSEs' Joint Opposition to the Parties' Motions to Compel, that is not how antitrust models are constructed. And the Parties do not indicate that is how they intend on constructing a model in this case, or even that such a model exists and would be appropriate here. The Parties do not need data on 100% (or even 90%) of the U.S. vehicle market to construct their regression analyses – far from it.

On the contrary, the expert opinion of Dr. Donald R. House, Ph.D, submitted along with this Opposition demonstrates that, given their limited respective market shares, the data and documents the Smaller SSEs could even potentially produce (which, in all instances, is a discrete subset of that which the Parties seek in their Motions to Compel) are not material for the conduct of any regression analyses in this case. As Dr. House states: "The inclusion of the relatively few sales of vehicles among the Smaller SSEs would likely have no measurable influence upon the aggregate measures from the regression models designed to measure the impact of the alleged over-pricing of automobile parts on retail prices and sales of vehicles." (House Decl. ¶ 5). And, as discussed more fully below, the data becomes even more insignificant when a Smaller SSE does not have corresponding upstream[11] data on the procurement of any of the price-fixed parts that went into the vehicles.

---

[11] The same could also likely be said for entities that have only limited upstream information, but no sales documents or data.

6

Even if one were to agglomerate the data from each of the smaller SSEs, that would also not be a prudent exercise. Each of the smaller SSEs has a subset of data that is distinct from one another and not material to the conduct of a regression analysis. Adding those discrete, distinct and non-material subsets of data from entities with limited market share will not render that information material or necessary for the conduct of a regressions analysis.

Moreover, when aggregated, the market shares of the Smaller SSEs represent only 7.4% of the total U.S. vehicle sales market during the Subpoena period. (House Decl. ¶ 6). As Dr. House identifies,

> Based upon the above numbers, any documents or data the Smaller SSEs might be able to provide would not be statistically significant. In other words, even assuming regression models could be constructed in this case, such documents or data would not have any significant impact on any regression models the parties' experts would construct. Being statistically insignificant, the inclusion of the additional data from the Smaller SSEs is not expected to provide any meaningful benefit to the analysis.

(House Decl. ¶ 19). In other words, the sales data the Parties seek from the Smaller SSEs, even combined would not be statistically meaningful, or materially affect any industry-wide analysis in this case. (*Id.* ¶ 20).

The Parties' motions offer absolutely no justification for compelling responses from the Smaller SSEs to their unprecedented subpoena, probably because – as the Parties have admitted – there is no such need. For example, as the Dealership Plaintiffs recently explained in litigating issues over the scope of certain 30(b)(6) depositions:

> [A]ll parties have accepted that they will perform their analysis on the large amount of data that has been produced, and that even if certain years are missing the data provided is more than enough to create a viable model and to extrapolate regarding the period for which data is missing, if needed.

7

(Dkt. 1194 at 7). The Parties have subpoenaed the largest auto manufacturers. And, they have admitted that even without that information they have more than enough data to conduct their analysis.

The Parties' concession is also consistent with the law. Other courts have found expert opinions reliable and admissible despite not having data from a larger percentage of the market than the Smaller SSEs represent here. For example, in *In re Mushroom Direct Purchaser Antitrust Litig.*, plaintiffs brought antitrust claims against a mushroom cooperative relating to an agreement to set minimum prices for agaricus mushrooms and to restrict their supply. No. 06-md-0620, 2015 U.S. Lexis 120892 (E.D. Pa. July 29, 2015). In creating his regression analysis, the plaintiffs' expert used data from only 31% of class members representing just 71% of the total sales volume. Yet, the Court refused to disallow his opinion as unreliable. *Id.* at *51; *see also Rothe Development, Inc. v. Dept. of Defense*, 107 F. Supp. 3d 183, 198-99 (D.D.C. 2015) (rejecting challenge that expert's regression analysis was based on insufficient data and not reliable when analysis excluded certain industry groups and only "related to a subset of the relevant industry codes"). Here, the Smaller SSEs represent minute shares of the U.S. vehicle sales market and together represent less than 7.5% of the total U.S. vehicle sales market during the Subpoena period. The Parties present no evidence that they or their experts need such limited and incremental data to prepare any reliable regression models.

While the Smaller SSEs join in the Joint Opposition Brief submitted by all SSEs and agree that the Parties already have in their possession much of the information they seek, the Parties certainly do not need any information from the Smaller SSEs to create a viable model, and the Parties have offer no evidence, expert[12] or otherwise, to support their implicit conclusion.

---

[12] To the extent the Parties seek to admit new evidence, including any expert testimony, for the first time in their reply, it is improper and should be excluded. *See U.S. v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002); *Stamps.com*

8

The Parties have the burden of justifying the need to impose the significant burden on the Smaller SSEs to comply with the Subpoena – even as allegedly narrowed.[13] The single paragraph addressing the Smaller SSEs in the Motions to Compel utterly fails to meet that burden.

> **B.** **The Smaller SSEs' Market Share is Even Smaller When Considered in the Context of the Procurement of Components and Assemblies for Installation into Vehicles Sold in the U.S., and Some Were Not Involved in Any Procurement.**

The Parties state that they "are primarily seeking information and documents that are in the sole possession of OEMs." (Parties' Motion at 29). But many of the Smaller SSEs have no manufacturing or assembly operations in the U.S., and those that have any such operations do not supply more than a minimal percentage of U.S. vehicle sales. As they did throughout the meet and confer process, the Parties' Motion focuses on the Smaller SSEs' market share for the sale of vehicles in the U.S. While the Smaller SSEs have a negligible share of the total U.S. vehicle *sales* market, they represent an even smaller share of the parts purchasing for installation in new vehicles sold in the United States. For starters, some Smaller SSEs do not manufacture or assemble any vehicles and had no involvement in *any* such procurement: Porsche Cars North America, BMW of North America, LLC, Jaguar Land Rover North America, LLC, Volvo Cars of North America, LLC, Volkswagen Group of America d/b/a Volkswagen of America and d/b/a Audi of America, and Subaru of America, Inc.[14]

---

*Inc. v. Endicia Inc.*, 437 Fed. Appx. 897, 908-09 (Fed. Cir. 2011) (striking expert declaration offered for first time in reply brief).

[13] As the Joint SSE Opposition indicates, the narrowed requests were mostly cosmetic and did little to actually narrow the documents and data sought in the Subpoena. (Joint SSE Opp. at 8-10).

[14] Ex. 58 ¶ 4 (Folz Porsche Decl.); Ex. 75 ¶¶ 5-8 (Battaglia Volvo Decl.); Ex. 47 ¶¶ 4-7 (Weiner Jaguar Land Rover Decl.); Ex. 21 ¶¶ 3-6 (Schaeffer BMW NA Decl.); Ex. 62 ¶¶ 9-10 (Allen Subaru Decl.); Ex. 70 ¶¶ 3-4 (Hannon VWGoA Decl.); Ex. 71 ¶¶ 3-4 (Schroth VWGoA (Audi) Decl.)).

While some of the other Smaller SSEs do or did manufacture or assemble some vehicles in the United States, and engaged in a limited amount of parts procurement, only a percentage of that vehicle production was supplied to the U.S. market. The Smaller SSEs combined produced less than 1.7% of the vehicles sold in the U.S. during the Subpoena period (BMW MC (0.3%); MMNA (0.6%); SIA (0.8%)[15]; and Volkswagen (0.1%)). (House Decl. ¶¶ 6, 9, 12, 15, 17). Moreover, not all of the parts for those vehicles were procured by the Smaller SSEs. For example, while MMNA had a plant in Illinois that assembled vehicles (some of which were sold in the U.S. and others built for sale abroad), not all of the parts for those vehicles were procured by the Illinois plant; some were procured by its foreign parent in Japan. (Ex. 52 ¶¶ 13, 18, 27 (MMNA Weterrings Decl.)).[16] The documents relating to parts procured by MMNA's foreign parent do not reside with MMNA. (*Id.* ¶ 27).

Likewise, BMW Manufacturing Co., LLC ("BMW MC") operates an assembly plant in South Carolina. BMW MC began producing vehicles in 1994 when it produced 168 vehicles. BMW MC expanded its assembly plant in 2012. (Ex. 22 ¶ 3 (Gipson BMW MC Decl.); Ex. 23 ¶ 4 (McCullen BMW MC Decl.)). BMW MC does not design the vehicles it assembles, nor does it select the parts or parts suppliers. (Ex. 22 ¶ 7 (Gipson BMW MC Decl.)). All of the vehicles it assembles are sold to BMW AG, a German company, primarily for distribution outside the United States. (*Id.* at ¶¶ 4-5).[17]

---

[15] This percentage includes all vehicles manufactured by SIA from 1992-2015, but includes vehicles sold for export. Because Dr. House did not have the data to separately identify the number of SIA manufactured vehicles specifically sold for distribution in the U.S. he included all, but concluded that the number would likely be less. (House Decl. ¶ 15 fn 2).

[16] All declarations referenced in this Smaller SSE Opposition are attached to the Index of Exhibits submitted with the Joint SSE Opposition.

[17] Volkswagen Group of America Chattanooga Operations, LLC ("VWCO") also operates an assembly plant in Chattanooga Tennessee where it has assembled Volkswagen Passats since 2011. VWCO purchases parts that are unique to the Passat. (Ex. 72 ¶¶ 3, 6, 13 (Lovati VWCO Decl.)).

In short, for purposes of this litigation, the market share of the Smaller SSEs in terms of new vehicle sales is negligible and their share of parts purchasing for those vehicles is even smaller. While the lack of parts purchasing information is also addressed in the separate brief on behalf of Domestic Distributors of Foreign OEMs, it is magnified even more as to the Smaller SSEs that already have a negligible total market share of vehicle sales.

### C. The Unprecedented Scope of the Subpoena is Exponentially More Burdensome to the Smaller SSEs.

As more fully described in the Joint SSE Opposition Brief, the Subpoena is unprecedented in scope and represents an unworkable burden on all SSEs. But the burden on the Smaller SSEs is even more magnified beyond all reason when accounting for their smaller market share and fewer resources compared to the larger auto manufacturers and distributors. Despite having such limited documents and data relevant to the Parties' claims, compliance with the Subpoena would still be extremely onerous. Compliance with the requests would likely require hundreds, if not thousands of employee hours, impose substantial costs, and significantly interfere with regular business activities. Despite the Parties' assumptions, the Smaller SSEs do not have sizable legal departments equipped to handle such an exceptional Subpoena, requiring production of documents and data on over 55 different parts and components, from dozens, if not more, suppliers, and data and documents on the sale of every vehicle in the United States for the past 20+ years. (*See, e.g.*, Ex. 52 ¶¶ 5-6 (Weterrings MMNA Decl.); Ex. 22 ¶¶ 14-22 (Gipson BMW MC Decl.); Ex. 75 ¶¶ 22-23 (Battaglia Volvo Decl.) (Volvo has approximately 275 employees, only 3 of whom work in the legal department); Ex. 21 ¶ 19 (Schaeffer BMW NA Decl.); Ex. 47 ¶¶ 22-23 (Weiner Jaguar Land Rover Decl.) (Jaguar Land Rover has approximately 350 employees, only 8 of whom work in the legal department); Ex. 73 ¶ 4 (Hinson VWCO Decl.) (VWCO legal department has only two lawyers and one paralegal); Ex.

11

61 ¶ 15 (Meyer SIA Decl.) (SIA has three in-house attorneys, one of whom generally does not participate in legal matters, and one paralegal)).

Moreover, because the Subpoena covers a span of over 20+ years, it may involve legacy systems, vehicles that are no longer sold by the Smaller SSE, and, thus, knowledge of employees that are no longer with the company, and, in some cases, records of companies that no longer exists or whose ownership and control has dramatically changed. In particular, for historic documents and data, newer employees would have to educate themselves on the Smaller SSE's former vehicle models and systems, only amplifying an already immense burden. (*See, e.g.,* Ex. 52 ¶ 5, (Weterrings MMNA Decl.); Ex. 22 ¶¶ 14-22 (Gipson BMW MC Decl.)).

To avoid repetition, the Smaller SSEs incorporate the additional arguments submitted in the Joint SSE Opposition brief on the burdensome nature of the Subpoena, but emphasize that these burdens are only magnified as to the Smaller SSEs. That burden is not justified unless and until the Parties demonstrate a need for the documents and data from the Smaller SSEs. They have not.

## IV. CONCLUSION

For the reasons discussed herein, and for those also articulated in the SSEs' Joint Opposition to the Parties' Motions to Compel, which are incorporated herein by reference, the Parties have failed to meet their burden to demonstrate a need for any documents and information from Smaller SSEs with at best negligible market share, and, therefore, their Motions to Compel as to the Smaller SSEs should be denied in their entirety.

Dated: February 19, 2016                              Respectfully submitted:

### On Behalf of Certain BMW Entities

| /s/ Richard E. Kruger | /s/ Daniel S. Savrin |
|---|---|
| Richard E. Kruger (P57142) | Daniel S. Savrin |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Nathaniel Bruhn |
| 27777 Franklin Road, Suite 2500 | MORGAN LEWIS |
| Southfield, Michigan 48034 | One Federal Street |
| (248) 351.3000 | Boston, MA 02110-1726 |
| rkruger@jaffelaw.com | (617) 951.8674 |
|  | daniel.savrin@morganlewis.com |
|  | nathaniel.bruhn@morganlewis.com |

*Attorneys for BMW of North America, LLC and BMW Manufacturing Co., LLC*

### On Behalf of Hino

/s/ S. Thomas Wienner
S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
950 W. University Dr., Ste. 350
Rochester, MI 48307
(248) 841.9400
twienner@wiennergould.com

*Attorneys for Hino Motors Manufacturing U.S.A., Inc.*

### On Behalf of Jaguar Land Rover North America, LLC

/s/ Daniel S. Savrin
Daniel S. Savrin
Nathaniel Bruhn
MORGAN LEWIS
One Federal Street
Boston, MA 02110-1726
(617) 951.8674
daniel.savrin@morganlewis.com
nathaniel.bruhn@morganlewis.com

*Attorneys for Jaguar Land Rover North America, LLC*

**On Behalf of the Mitsubishi Entities**

/s/ Elizabeth A. McNellie
Elizabeth A. McNellie
Robert J. Tucker (co-signing under L.R. 83.20)
BAKER & HOSTETLER LLP
65 East State Street, Suite 2100
Columbus, OH 43215
(614) 228.1541
emcnellie@bakerlaw.com
rtucker@bakerlaw.com

*Attorneys for Mitsubishi Motors North America, Inc., Mitsubishi Motors Credit of America, Inc. and Mitsubishi Motors R&D of America, Inc.*

**On Behalf of Porsche**

/s/ William D. Meyer
Audra A. Dial (*admitted for MDL only*)
William D. Meyer (*admitted for MDL only*)
KILPATRICK TOWNSEND & STOCKTON LLP
Suite 2800, 1100 Peachtree Street NE
Atlanta, GA 30309-4528
(404) 815-6500
adial@kilpatricktownsend.com
bmeyer@kilpatricktownsend.com

*Attorneys for Porsche Cars North America, Inc.*

**On Behalf of the Subaru Entities**

| /s/ Thomas E. Mixdorf | /s/ Michael R. Carroll |
|---|---|
| Thomas E. Mixdorf | Neal Walters |
| Ice Miller LLP | Michael R. Carroll |
| One American Square | BALLARD SPAHR LLP |
| Suite 2900 | 210 Lake Drive East, Suite 200 |
| Indianapolis, IN 46282-0200 | Cherry Hill, NJ 08002-1163 |
| (317) 236.5832 | (856) 761.3452 |
| Thomas.mixdorf@icemiller.com | carrollm@ballardspahr.com |

*Attorneys for Subaru of Indiana Automotive, Inc.* | *Attorneys for Subaru of America, Inc.*

14

**On Behalf of Volvo Cars of North America, LLC**

/s/ Daniel S. Savrin
Daniel S. Savrin
Nathaniel Bruhn
MORGAN LEWIS
One Federal Street
Boston, MA  02110-1726
(617) 951.8674
daniel.savrin@morganlewis.com
nathaniel.bruhn@morganlewis.com

*Attorneys for Volvo Cars of North America, LLC*


**On Behalf of Volkswagen Group of America, Inc. d/b/a Volkswagen of America and d/b/a Audi of America, and Volkswagen Group of America Chattanooga Operations LLC**

| /s/ Paul T. Collins | /s/ Timothy J Fitzgibbon |
|---|---|
| Paul T. Collins | Timothy J. Fitzgibbon |
| NELSON MULLINS RILEY & SCARBOROUGH LLP | NELSON MULLINS RILEY & SCARBOROUGH LLP |
| Meridian, 17th Floor | 101 Constitution Avenue, N.W. |
| 1320 Main Street | Suite 900 |
| Columbia, SC  29201 | Washington, D.C. 20001 |
| (803) 255-9747 | (202) 712.2812 |
| Paul.Collins@nelsonmullins.com | Tim.Fitzgibbon@nelsonmullins.com |

*Attorneys for Volkswagen Group of America, Inc., d/b/a Volkswagen of America
and d/b/a Audi of America; Volkswagen Group of America Chattanooga Operations LLC*

**CERTIFICATE OF SERVICE**

I certify that on February 19, 2016, I caused a copy of the foregoing Memorandum of the Smaller SSEs in Opposition to the Parties' Motion to Compel Discovery from the Non-Party Original Equipment Manufacturers and the Certain Serving Parties' Motion to Compel Discovery from the Non-Party Original Equipment Manufacturers to be electronically filed via the Court's ECF system, which will serve notification of such filing to all counsel of record for the Parties.

/s/ Elizabeth A. McNellie
Elizabeth A. McNellie