# EXHIBIT 5

 Proskauer Rose LLP   1001 Pennsylvania Avenue, NW Suite 600 South   Washington, DC 20004-2533

September 17, 2015

Colin Kass
Member of the Firm
d 202.416.6890
f 202.416.6899
ckass@proskauer.com
www.proskauer.com

*<u>Via Email</u>*

Sheldon H. Klein
Butzel Long
Stoneridge West; 41000 Woodward Avenue
Bloomfield Hills, MI 48304

Re: *In re Automotive Parts Antitrust Litigation* (Master Case No. 2:12-md-02311)

Dear Sheldon:

We write on behalf of the Specified Subpoenaed Entities[1] to further our discussions about enhancing the coordination between the Parties to the litigation and the Specified Subpoenaed Entities.

The breadth and scope of the "Uniform OEM Subpoena" is unprecedented. By way of example, Request No. 1 alone spans over six pages and 150 categories of documents, data and

---

[1] The Specified Subpoenaed Entities consist of the following (i) Chrysler entities (FCA US LLC; Maserati N.A., Inc.; Fiat Finance North America, Inc.; and Chrysler Transport Inc.); (ii) Toyota entities (Toyota Motor North America, Inc.; Toyota Motor Sales, USA, Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; Toyota Motor Manufacturing Alabama, Inc.; Toyota Motor Manufacturing Indiana, Inc.; Toyota Motor Manufacturing Kentucky, Inc.; Toyota Motor Manufacturing Mississippi, Inc.; Toyota Motor Manufacturing Texas, Inc.; Toyota Motor Manufacturing West Virginia, Inc.; Toyota Logistics Services, Inc.; and Calty Design Research, Inc.); (iii) BMW entities (BMW of North America, LLC, BMW Manufacturing Co., LLC, and BMW Financial Services NA LLC); (iv) Porsche Cars North America, Inc.; (v) Hyundai / Kia entities (Hyundai Capital America; Hyundai Motor America; Hyundai Motor Manufacturing Alabama, LLC; Hyundai-Kia America Technical Center, Inc.; Kia Motors Manufacturing Georgia, Inc.; Kia Motors America, Inc.); (vi) GM entities (General Motors Company, General Motors Financial Company, Inc., General Motors Holdings LLC, and General Motors LLC); (vii) VW entities (Volkswagen Group of America, Inc., also d/b/a Audi of America LLC; Volkswagen Group of America Chattanooga Operations LLC; Volkswagen Credit Inc.; Automobili Lamborghini America LLC; and Bentley Motors, Inc.); (viii) Nissan entities (Nissan North America, Inc.; Nissan Design America, Inc.; Nissan Technical Center North America, Inc.; Nissan Diesel America, Inc.; and Nissan Motor Acceptance Corporation); (ix) Honda entities (American Honda Motor Co., Inc.; American Honda Finance Corp.; Honda Manufacturing of Indiana, LLC; Honda North America, Inc.; Honda of America Mfg., Inc.; Honda of South Carolina Mfg., Inc.; Honda Precision Parts of Georgia, LLC; Honda R&D Americas, Inc.; Honda Research Institute USA, Inc.; Honda Transmission Manufacturing of America, Inc.).

The Specified Subpoenaed Entities do not use the "OEM" terminology utilized by the Parties to the Litigation in serving the "Uniform OEM Subpoenas," as many of the entities served with these subpoenas are not OEMs and many are not involved in the manufacture, sale or distribution of automobiles.



Sheldon H. Klein
September 17, 2015
Page 2

information for a period covering over 23 years.  Accordingly, as your September 10th letter points out, we believe that it would be productive to have a joint meet and confer (or "summit" meeting) to discuss the scope of the "Uniform OEM Subpoena," and to ensure that all *common* issues relating to the "Uniform OEM Subpoena" are identified, addressed, and if necessary, briefed, on an agreed-upon common schedule.

We take your point that there may be one or more issues that "are more productively addressed in [individual] negotiations with each OEM."  We believe, however, that the great majority of issues are common to the Subpoenaed Entities, which is reflected by the identical subpoenas served on each Subpoenaed Entity without any effort to tailor the request to their specific business, the role of the company, if any, in the facts of the case, or the information already in the Parties' possession relating to such company.

Because many issues relating to the scope of the "Uniform OEM Subpoena" will be common to all or at least multiple Subpoenaed Entities, we should strive to identify those issues and address them at the outset.  Although your letter seeks to impose certain conditions on this process, which we address below, it appears that the Parties are amenable to this process. Accordingly, the Specified Subpoenaed Entities propose holding a summit teleconference at 2:00 pm E.S.T. on Thursday, September 24, 2015.[2]

As you requested, we will prepare an agenda in advance of our initial summit meeting. At the same time, however, we request that the Parties be prepared to describe generally by Component the information already in the Parties' possession; the gaps in the discovery record that the Parties reasonably believe that they need the Specified Subpoenaed Entities to fill; the efforts that the Parties have undertaken (vis-à-vis each other) with regard to these issues; the relative importance of the information for purposes of litigating the case, and the "reasonable steps" the Parties are prepared to take to fulfill their obligation to avoid imposing the undue burden and expense upon the Specified Subpoenaed Entities that is otherwise  imposed by the terms of the "Uniform OEM Subpoenas."   In this regard, we are well aware of the prior discovery orders in the case.  *E.g.*, ECF Nos. 214, 251, 313, 352, *In re Wire Harness Cases*, 2:12-cv-00102-MOB-MKM (E.D. Mich.).  While we understand (but do not agree with) your desire to cover the waterfront with the OEM subpoena, we will also want to hear from the Parties as to whether more limited universes of information will suffice, and whether there will be

---

[2] Although we have strived to accommodate your request to hold the summit meeting by September 18th, that date is not workable for a number of Subpoenaed Entities.  In any event, we do not believe that it is appropriate for the Parties to hold the subpoena response date, and coordination more generally, hostage to the Specified Subpoenaed Entities agreeing to hold the summit meeting with just one week's notice.  In that regard, we note that plaintiffs waited ***four weeks*** to get back to the Subpoenaed Entities to discuss the timing and scope of the subpoenas, and an additional week to get back to us regarding our request for coordination.  While your letter mentions the Parties' class certification briefing, that briefing is not scheduled to begin until ***July 2016***.  We do not fault the Parties for wanting to proceed deliberately and to ensure maximum coordination on their side, but we believe the same courtesy should extend to the Subpoenaed Entities.



Sheldon H. Klein
September 17, 2015
Page 3

recognition that certain Subpoenaed Entities simply do not possess such documents and/or information.

With respect to timing, you suggest that the Specified Subpoenaed Entities provide written responses and objections by September 30, 2015, and that such responses and objections reflect more than "boilerplate objections." Certainly our ability to evaluate the substance of the requests will depend in large part on the information that the Parties can provide during our summit meeting(s). The greater understanding we have of the Parties' needs, the greater will be our ability to develop a proposed scope of search (assuming that the Subpoenaed Entity has such documents or information) that accommodates those needs while minimizing both the burden to the Subpoenaed Entities and the reimbursement costs that the Parties will necessarily incur. Accordingly, we believe that the timing of our objections and responses should be addressed at the end of the first summit meeting.[3]

Sincerely,

/s/ *Colin Kass*

Colin Kass

cc: Katherine Van Dyck (via e-mail, kvandyck@cuneolaw.com)

---

[3] Your letter also demands that rolling production of documents begins by October 31st. In connection with discussing the scope of the subpoena, the Subpoenaed Entities will also be willing to discuss both the timing of any production(s) and, in keeping with Fed. R. Civ. P. 45, the reimbursement of the Specified Subpoenaed Entities' costs to prepare such productions.