# EXHIBIT 6

...



T 206.623.7292  F 206.623.0594

Ronnie S. Spiegel
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA  98101
www.hbsslaw.com
**Direct (206) 268-9343**
ronnie@hbsslaw.com

September 28, 2015

**VIA EMAIL**

Colin Kass
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, DC 20004-2533

    *Re:*    *In re Automotive Parts Antitrust Litigation*
           *(Master Case No. 2:12-md-02311)*

Dear Colin:

    I am writing on behalf of End-Payor Plaintiffs, Truck and Equipment Dealer Plaintiffs, Auto Dealer Plaintiffs, Public Entity Plaintiffs, and all Defendants (collectively "Parties") in further response to your letter of September 17, 2015 to Sheldon Klein.

    This MDL action is comprised of more than thirty separate part actions, each with its own complex mix of parties, and potentially involving billions of dollars in U.S. commerce.  In an effort to streamline third-party discovery in a case with such a massive scope, and to minimize the burden on subpoena recipients, the Court directed the Parties to coordinate in drafting one, comprehensive subpoena that could be served upon all. The purpose of using a comprehensive subpoena is to benefit subpoena recipients.  If a comprehensive subpoena were not used, each recipient might receive 30-60 different subpoenas, each involving different parts, parties, and years, with each entity having an obligation to negotiate and respond to each.  Serving a comprehensive subpoena necessarily contemplates that the Parties will need to sit down and meet and confer with each entity to learn what information it has and to learn what particular burdens it may face in producing available information.  The Parties' intention, to the greatest extent possible, is to resolve any concerns posed, and to move forward with as little burden as possible on subpoena recipients.

    Since the subpoenas were served on or about July 20, 2015, the Parties have been making best efforts to coordinate with each other to make this process as efficient as possible for each served entity.  For example, the Parties have appointed two point people (one representative from Plaintiffs and one from Defendants) to provide easy points of contact, to facilitate communication with the larger group, to set a reasonable schedule,

Colin Kass
September 28, 2015
Page 2

and to answer any questions.  As soon as the subpoena recipients identified their representatives (which in some cases did not happen right away and in other cases was delayed), the Parties reached out to each to discuss the schedule and to begin the process of meaningful meet and confer.  The entities that join in the summit request ("Specified Subpoenaed Entities")[1] have largely put scheduling and individual discussions of the subpoena on hold.  While the Parties welcome discussion at the summit, ultimately, individual discussions are necessary to adequately address the circumstances of each subpoenaed entity, and should not be delayed by the summit.  The Parties hope that each of the Specified Subpoenaed Entities will comply with its individual obligation to respond to the subpoena.

  Regarding costs, the Parties are not opposed to a discussion on costs, but cannot agree to pay any costs at this point, or to make payment of costs a condition of the summit.  Discussion of costs is particular to each entity and what it may or not have already gathered or have accessible, or where it can demonstrate that its production will cause significant expense.  To the extent any subpoena recipient would like to discuss costs, the Parties remain open to that discussion and ask that each of the Specified Subpoenaed Entities provide information to the Parties regarding whether, and to what extent, the categories of data and documents requested by the subpoena may have already been collected and gathered for other purposes and for which parts, such as transactional data collected in preparation for settlement, or data collected to respond to inquiries or requests for production of documents from the DOJ or other governmental organizations.

  The Parties will look forward to receiving the agenda for the summit, and will work with the Specified Subpoenaed Entities to productively address the topics identified as best as possible.  The Parties request that the Specified Subpoenaed Entities also be prepared to discuss substantive issues at the summit, including the types of transactional data that each may possess, and for which parts and time periods.  We hope that the Specified Subpoenaed Entities will make a good faith effort to work with us, and will move forward to set the schedule and to engage in meaningful meet and confer without further delay.

            Very truly yours,

            /s/ *Ronnie S. Spiegel*

            Ronnie S. Spiegel

RSS/rss

---

[1] The Parties have used the term "OEM" or "OEM Subpoena" in past correspondence for simplicity, and on the good faith belief that all entities subpoenaed are part of an OEM family of companies, and/or are subsidiaries or affiliates of other OEM companies, if not the manufacturing entity itself.