# EXHIBIT 17



Proskauer Rose LLP   1001 Pennsylvania Avenue, NW Suite 600 South   Washington, DC 20004-2533

January 19, 2016

Colin Kass
d 202.416.6890
f 202.416.6899
ckass@proskauer.com
www.proskauer.com

*<u>Via Email</u>*

Re: *In re Automotive Parts Antitrust Litig.*, 2:12-md-02311

Dear Sheldon:

As requested, the SSEs have considered the Issuing Parties' "final offer" – which essentially repeats your first, and only, prior offer from November 24th. For reasons previously explained, we continue to believe that this offer does not satisfy the Issuing Parties' obligations to meet and confer in good faith over subpoenas you now acknowledge are "***unprecedented***" in scale and scope.[1] It has been, and remains the position of the SSEs that these requests impose immense burdens that far exceed the bounds of proportionality and what the Parties' legitimately require for purposes of the litigation.

As with each of the Issuing Parties' prior letters, your January 13th letter fails to respond to the various SSEs' offers of production. Instead, you assert that the "Parties are under no obligation to continue the meet and confer process with the SSEs, … given how far apart the Parties and SSEs' positions still are and in light of the schedules set by the Court in the Lead Three cases."

As to timing, that is a problem of the Parties' making. As you may recall, most of the subpoenas were served in late July. After various SSEs approached the Parties about the path forward, the Parties informed those SSEs that they would get back to us and that the "***clock is not currently running***." The Parties waited until late August, over a ***full month*** later, to initiate discussions concerning these subpoenas. The Parties then took almost ***two additional weeks*** to respond to our immediate proposal to hold a summit conference to discuss the issues. After the summit conference, the Parties took ***two more weeks*** to regroup and consider their position. After we pointed out that the Issuing Parties' response letter failed to address most of the issues we raised at the summit conference, you took over ***three additional weeks*** to provide a substantive response to the issues we first raised almost a month-and-a-half earlier.

But even that letter, served the day before Thanksgiving, did little more than hold in abeyance a few wholly-duplicative requests that likely did not belong in the initial subpoena at all. Concerned about the Issuing Parties' failure to negotiate, the SSEs then took it upon themselves to make a substantial offer of production that addressed each major category of

---

[1] Your reference to the Special Master's denial of the Direct Purchasers' motion to strike the subpoena is misleading. The motion was denied because the challenge was either "premature" or because "the DPPs … lack standing." ECF 992 at 4-5 (2:12-md-02311). This does not mean a subpoena of such unprecedented scale and scope was "specifically contemplated by the Court."

**Proskauer** »

Page 2

information requested, balanced against the necessity and potential relevance of such documents, as well as the burden to the SSEs – the primary victims of this cartel. But rather than respond substantively or provide any counteroffer, a few (but not all) of the Issuing Parties then decided to wait an *additional week*, until Christmas Eve, to unilaterally declare impasse and request a briefing schedule for a motion to compel. In response, the SSEs quickly requested clarification, because it was not clear which parties were moving, which requests were still at issue, and which of the over 90 SSEs would be subject to the motion. The Issuing Parties (including ones that had been omitted from the Christmas Eve declaration) then waited *two additional weeks* to propose what you now claim to be a "final offer."

Thus, since the subpoenas were served, the SSEs have spent at least *three and half months waiting* for responses from the Issuing Parties, all while responding in a timely fashion and actively trying to reach compromise.

The other asserted basis for the Issuing Parties' refusal to "continue the meet and confer" is that the parties are still far apart. Again, that is a problem of the Parties' making. Meet and confers are designed to bring the parties closer together. But the Parties have done little more than make a few cosmetic changes that withdraw wholly-duplicative requests. In contrast, the SSEs have identified the information that may not be in the Parties' possession and have made substantial offers of production of both upstream and downstream information to fill any perceived gap. For example, as to upstream purchase data, the OEM SSEs acknowledged that the Parties may not have information relating to non-defendant suppliers. Although such information is unlikely to be material, these SSEs offered to produce transactional data relating to any such entity specifically identified by the Parties. As for downstream data, the OEM SSEs and certain distributor SSEs offered to produce information relating to their MSRP prices. The Issuing Parties never explained why that offer was insufficient. Nor did you provide a *counter offer*.

Instead, aside from a few inconsistencies,[2] your "final offer" simply repeats your first and only offer, made more than a month-and-half ago. The only substantive change between the first and final offers appears to be a decision not to move against certain SSEs, mostly on the condition that *identical* information is produced by an affiliated SSE. Eliminating a wholly-duplicative request, however, is not a compromise.

Finally, the Serving Parties have refused to meaningfully negotiate which of the "smaller SSEs" should be excluded, despite the representations about their market share during the proposed production period, and the fact that any information in their possession would almost certainly have no meaningful impact on a damages analysis.

---

[2] For instance, your list of requests on which you intend to move includes requests that had been held in abeyance as of November 24th, including Request Nos. 1(i), 14(a), and the first sentence of 28. Some of these are not small changes. For example, the first sentence of Request 28 seeks "all documents" relating to the "pricing of Component or Assemblies" in any car sold in the United States over the last 20 years. Such a request is facially ridiculous, which is probably why the Parties initially agreed to hold it in abeyance.



Page 3

     In any event, it is now abundantly clear that the Issuing Parties are unwilling to take a hard look at the information they already have, and work with the SSEs to find a mutually agreeable compromise to the subpoena. As we have explained, this not only violates your obligations under Rule 45 to limit the burden on third-parties and to meet and confer in good faith, it puts you in the position of seeking to enforce a facially overbroad subpoena. We look forward to the briefing.

     Sincerely,

     *Colin Kass*