# EXHIBIT 22

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------- X

In Re: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

ALL PARTS

Case No.: 12-MD-02311
Honorable Marianne O. Battani

THIS RELATES TO: ALL CASES

## DECLARATION OF DAWN GIPSON IN SUPPORT OF
## BMW MANUFACTURING CO., LLC'S OPPOSITION TO MOTION TO COMPEL

I, Dawn Gipson, hereby declare under penalty of perjury as follows:

1. I am employed as a Procurement Systems Specialist at BMW Manufacturing Co., LLC ("BMW MC"). I am the only person that holds that position at BMW MC. I have been employed by BMW MC since 2002. From 1998 through 2002, I was employed by a contractor and performed work on behalf of BMW MC.

2. In my current role, part of my responsibility is to oversee the computer systems in which purchasing data is stored. I make this declaration based upon personal knowledge and a review of business records and information concerning BMW MC.

I.  **BMW MC's Operations**

3. BMW MC operates a motor vehicle assembly plant in South Carolina. BMW MC began assembling vehicles in 1994.

DB3/ 200735432.4

4. All of the motor vehicles assembled by BMW MC are sold to Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), a corporation organized under the laws of Germany with its principal place of business in Munich, Germany.

5. A majority of the vehicles that BMW MC sells to BMW AG are destined for ultimate distribution outside the United States.

6. BMW MC has no business operations with respect to the distribution, sale, marketing or financing of BMW motor vehicles to distributors, dealers, or consumers either within or outside the United States.

7. BMW MC does not design the vehicles that it assembles. The components and parts that are included in the vehicles assembled by BMW MC are not specified or selected by BMW MC and, in many instances, are supplied by BMW AG to BMW MC. With respect to components and assemblies purchased from sources other than BMW AG, BMW MC does not play the primary and direct role in the selection of suppliers for components and assemblies incorporated into the vehicles that BMW MC assembles. BMW MC does not issue requests for quotations, review submissions, select suppliers, or, in the ordinary course of business, negotiate pricing for components and parts that are to be included in vehicles assembled by BMW MC.

8. BMW MC's role with respect to components and parts purchasing has primarily been limited to the functional purchase of components and assemblies from suppliers pre-selected by parties located outside the United States based on pricing terms established between those outside parties and the supplier.

9. In the ordinary course of business, BMW MC neither receives nor maintains information concerning the procurement process or the decision-making process with respect to pricing and/or supplier selection.

10. The information BMW MC maintains, in the ordinary course of business, on components and parts purchasing is primarily limited to the type of information contained on purchase orders issued by BMW MC. BMW MC suppliers to whom purchase orders were issued should have the identical information.

## II. Upstream Purchasing Information

11. I understand that the motions at issue concern, in part, 35 requests (including subparts) relating to upstream purchasing information of the components and assemblies at issue.

12. As detailed above, BMW MC is an assembler of BMW vehicles designed in Germany. BMW MC does not make the design, specification and supplier decisions, or, in the ordinary course of business, undertake pricing negotiations, concerning components and parts included in the vehicles BMW MC assembles. As such, most of the upstream information sought in the 35 requests is not in BMW MC's records.

13. Data or information that BMW MC may possess, as noted, is essentially identical to information maintained by the parties that sold components and parts to BMW MC.

14. The burden of searching for and producing upstream information that BMW MC may have in its possession is immense. Such a search would require reviewing data in multiple electronic databases, searching electronically archived records, and searching extensive hardcopy record collections, many of which, to the extent that they still exist, are in off-site storage and exceedingly difficult to locate and collect.

15. The documents, records and data that are sought are not maintained in a format that aligns with the requests and none of the documents, records or data, including those for more recent years, are maintained in a fashion that makes the data and documents sought readily accessible.

16. BMW MC does not maintain its purchasing data on a single computer system or on integrated computer systems. To locate and collect basic information on parts purchasing for non-archived information would require manual processing of data and reports from at least three different computer systems as information on, among other things, parts numbers and descriptions, purchase orders, and purchase order data, is currently maintained on three different systems. The effort to locate information is further complicated by the absence of uniform identifiers for parts such that parts within the same system, as well as within the different systems, may be described differently, often because the part selection may be described in German or in abbreviated German, or may be described in English or abbreviated English. I do not know of anyone else at BMW MC, besides me, who might have the ability to conduct an integrated search and analysis to locate and assemble such purchasing data.

17. Based on the efforts undertaken by me to collect a defined and small subset of the data sought with respect to one set of defined parts from specified suppliers in response to a grand jury subpoena, I have a direct understanding of the difficult, time-consuming and burdensome nature of the imposition presented by just one aspect of the current subpoena.

18. In 2012, in response to a grand jury subpoena issued by the U.S. Department of Justice, I undertook to identify and produce basic purchase order information for defined occupant safety system components for a twelve year period using the databases described above. In that instance, in the process of searching and producing transactional data on date of purchase, quantity, price, and supplier took me approximately three hundred (300) hours.

19. The search for occupant safety system components in 2012 was limited to three well defined sets of components sold to BMW MC by part suppliers who were specifically identified by the U.S. Department of Justice. Here, the subpoena requests information on a

4

multitude of components, many of which are not components with which I am familiar and which would prove difficult to identify using BMW MC systems. Moreover, there is no delimited vendor list, and the array of data and documents sought is far broader, though I expect that, for reasons noted herein, the broader volume of information will not be located in BMW MC's records.

20. In addition, the data searched in 2012 only covered a twelve (12) year period and was, with limited exceptions, not yet archived. Here, I anticipate that much of the upstream data requested that BMW MC actually possesses has been archived and will require the additional timely and costly step of bringing the data from the three different primary systems into a searchable environment before the search effort could even begin.

21. In addition to electronically archived data, potentially responsive upstream data may be located in off-site hard copy storage. I anticipate needing to review thousands of banker boxes to locate and produce responsive information that, as noted, I expect would be duplicative of information in the possession of BMW MC's parts suppliers.

22. I anticipate that the effort to simply locate and collect the upstream documents, records and data that are sought for the time period at issue would require thousands of hours. With respect to the data searches, I expect that it would require that I first train other personnel to assist in the process as others do not possess the understanding to conduct such searches in our complex and distinct systems. Such an undertaking would substantially interfere with BMW MC's business operations.

### III. Request Number 27

23. I understand that Request Number 27 concerns documents or data produced to a government authority as part of an investigation relating to components or assemblies installed in

5

new vehicles sold or leased in the United States. As detailed above, in 2012, BMW MC produced to the Department of Justice two spreadsheets detailing certain purchase information related to occupant safety system components.

24. I conducted a separate search for records related to purchases of a part described as "variable valve timing" from Aisin Seiki. I did not locate records relating to purchases of such a part, or the identified vendor, in BMW MC's systems.

25. It is my understanding that BMW MC has offered to produce the occupancy safety systems data in these proceedings, but has not received a response to that offer.

## IV. Downstream Purchasing Information

26. I understand that the motions at issue concern, in part, 28 requests primarily relating to (i) the distribution and sale of vehicles; and (ii) the resale of those vehicles by dealers. I refer to these requests as "downstream" requests.

27. As set out above, BMW MC's business is limited to the assembly of motor vehicles and sale of those vehicles to BMW AG. BMW MC has no business operations with respect to the distribution, sale, marketing or financing of BMW motor vehicles to distributors or consumers either within or outside the United States. As such, BMW MC does not, in the ordinary course, receive or maintain records concerning the requested downstream purchasing information.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief this 18th day of February, 2016.

*Dawn Gipson*
Dawn Gipson

6