# EXHIBIT 25

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In Re: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

ALL PARTS

THIS RELATES TO: ALL CASES

Case No.: 12-MD-02311
Honorable Marianne O. Battani
Special Master Gene Esshaki

## DECLARATION OF DANIEL S. SAVRIN IN SUPPORT OF BMW ENTITIES' OPPOSITION TO MOTIONS TO COMPEL

I, Daniel S. Savrin, hereby declare under penalty of perjury as follows:

1.      I am a partner at the law firm of Morgan, Lewis & Bockius LLP.

2.      I represent the following eight (8) BMW entities that were served with "Uniform OEM Subpoenas" in this consolidated action:  BMW of North America, LLC ("BMW NA"), BMW Manufacturing Co., LLC ("BMW Manufacturing"), BMW Financial Services NA, LLC ("BMW Financial Services), BMW (US) Holding Corp., LLC, BMW Bank of North America, BMW Insurance Agency, Inc., BMW US Capital, LLC, Designworks/USA, Inc. (collectively, the "BMW Entities").

3.      As set forth in the attachments hereto and in the accompanying declarations of Dawn Gipson, Lewis McCullen, Kenneth P. Schaeffer, Jr. and Christopher Chadwick, none of the BMW Entities qualify as OEMs and none of them, individually or collectively, possess the range of documents and data that the Parties assert, in their Motion to Compel, is required to conduct the contemplated analyses.

4.     On July 30, 2015, I wrote an email to counsel that signed correspondence that accompanied the "Uniform OEM Subpoenas," Jeniphr Breckenridge, detailing how five (5) of the BMW Entities (BMW (US) Holding Corp., LLC, BMW Bank of North America, BMW Insurance Agency, Inc., BMW US Capital, LLC, Designworks/USA, Inc.), due to their limited operations, are not in the business of creating or maintaining any of the types of records sought in the Subpoena and requested that they be released from the obligation to respond to the Subpoena. A true and correct copy of that email is attached as Exhibit A. I did not receive a substantive response to that email.

5.     On August 24, 2015, I had a call with counsel that were identified as assigned by the Parties as liaisons for the BMW Entities. During that call, I reiterated that the five BMW Entities that were the subject of my July 30, 2015 email were not in the business of creating or maintaining any of the types of records sought in the Subpoena, and explained that the remaining three BMW Entities (BMW NA, BMW Manufacturing, and BMW Financial Services) were not OEMs and did not have documents responsive to nearly every request in the Subpoena.

6.     On September 8, 2015, I resent my email of July 30, 2015 to Serving Party liaisons assigned to the BMW Entities, reiterating that five of the BMW Entities were not in the business of creating or maintaining any of the types of records sought in the Subpoena and requesting voluntary withdrawal of the Subpoena. A true and correct copy of that email is attached as Exhibit B. I did not receive a substantive response to that email.

7.     Following the Parties indication that they intended to move to compel, on January 15, 2016, I sent two letters to Sheldon Klein who was communicating on behalf of the Serving Parties, copying BMW Entity liaison Bradley Schram.

2

8.     The first letter, attached as <u>Exhibit C</u>, stated that a motion to compel as to BMW Manufacturing would amount to unwarranted and precipitous motion practice because, as we advised in earlier communications,  BMW Manufacturing is an assembler of vehicles that is not in the business of creating or maintaining most of the types of records sought in the Subpoena, and reiterating BMW Manufacturing's offer to produce spreadsheets previously produced to the Department of Justice in response to Subpoena Request No. 27.  The letter also detailed the burden it would impose on BMW Manufacturing to attempt to locate and produce the documents and data it might have.  I never received a response to that letter.

9.     The second January 15, 2016 letter, attached as <u>Exhibit D</u>, stated that a motion to compel as to BMW NA would amount to unwarranted and precipitous motion practice because, as we advised in earlier communications, BMW NA is a domestic distributor of vehicles (not an OEM) and not in the business of creating or maintaining most of the types of records sought in the Subpoena.  The letter also detailed the burden it would impose on BMW NA to attempt to locate and produce the documents and data it might have.  I never received a response to that letter.

10.     Having received no response to my January 15, 2016 letters (other than the filing of the Motion to Compel) on February 16, 2016, I sent a letter to the moving parties of Certain Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers (Dkt. No. 1188), which sought to compel responses to Subpoena Requests Nos. 27 and 31.  That letter sought the withdrawal of that Motion to Compel as to BMW NA and BMW Manufacturing and restated that: (1) BMW Manufacturing is prepared to produce documents in response to Request No. 27 (and requests directions for production of same), but has not located documents responsive to Request No. 31; and (2) BMW NA does not have documents responsive to either

3

Request No. 27 or 31.  A true and correct copy of the February 16, 2016 letter is attached as

Exhibit E.  As of the signing of this Declaration, I have not received a response to that letter.


I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief this 18th day of February, 2016.

Daniel S. Savrin

4

# Exhibit A

**Bruhn, Nathaniel Phillips**

| | |
|---|---|
| **From:** | Savrin, Daniel S. |
| **Sent:** | Thursday, July 30, 2015 6:10 PM |
| **To:** | jeniphr@hbsslaw.com |
| **Cc:** | Richard Kruger <rkruger@jaffelaw.com> (rkruger@jaffelaw.com) |
| **Subject:** | In re Auto Parts Subpoenas - BMW Group Entity Information |

Jeniphr-

Per my note of earlier today and as a follow-on to our discussion and email exchanges, I write to provide some additional information concerning the BMW Group entities that have been (or are in the process of being) served with the "uniform OEM subpoenas." As we discussed, by virtue of the nature of their operations, certain of these BMW Group entities are not in the business of creating, maintaining or storing the types of records that are sought in the subpoena and it would serve the interests of the serving and served parties, as well as judicial economy, not to expend additional resources on objections, responses or any further process related to these entities.

Of the entities that you listed, BMW (US) Holding Corp., BMW Bank of North America, BMW Insurance Agency, Inc., BMW US Capital, LLC and Designworks/USA, Inc. fall into the category of BMW Group entities that are not in the business of creating, maintaining or storing the types of records that are sought in the subpoena. As their names reflect, the listed entities have limited scopes of operations (if any) and are not in the business of assembling, marketing, selling or leasing automobiles.

BMW (US) Holding Corp. is a holding company for certain BMW Group operating entities in the United States. As is the case with most holding companies, it has no genuine operations, but simply serves a holding company function. It is not in the business of creating or maintaining on its own behalf, or on behalf of others, records concerning  automobile assembling, marketing, selling or leasing.

BMW US Capital LLC serves a treasury function for certain BMW Group operating entities in the United States. It sells capital instruments in public markets and maintains other operations that are akin to an internal banking operation. It has no operations involving assembling, marketing, selling or leasing automobiles and is not in the business of creating or maintaining on its own behalf, or on behalf of others, records concerning assembling, marketing, selling or leasing automobiles.

BMW Insurance Agency, Inc. is, as its name reflects, an insurance agency. It is in the business of selling affinity liability insurance (e.g., automobile and homeowner's insurance). It has a singular product line -- BMW Performance Insurance. BMW Insurance Agency is the exclusive agent for BMW Performance Insurance. BMW Performance Insurance policies are underwritten and provided by Liberty Mutual Insurance Company and its affiliates. A link to a Liberty Mutual site concerning the policies offered by BMW Insurance Agency follows: http://welcome.libertymutual.com/bmw/index.html?src=BMWFS. Given its insurance agency function, BMW Insurance Agency does not create or maintain on its own behalf, or on behalf of others, records concerning automobile assembling, marketing, selling or leasing.

BMW Bank of North America is a bank based in Utah. It is engaged in traditional banking activity, including issuing credit cards, certificates of deposit and the like. While some of its funds underwrite financing of motor vehicle loans, the entity that is in the business of dealing directly with consumers with respect to loans and leasing of vehicles is BMW Financial Services NA, LLC.

Designworks USA, Inc is a creative consulting firm, affiliated with the BMW Group. Designworks USA provides services to an array of companies and non-commercial entities (e.g., HP, Panasonic, Singapore Airlines, Hello Oral Care) in addition to the services that it provides for certain BMW Group entities. A link to a site that contains a portfolio of some of Designworks' work follows:

http://www.bmwgroupdesignworks.com/portfolio/?view=all.  Among the featured work is the design work performed for the U.S. Olympic bobsled team.  As the portfolio of work indicates, while Designworks may provide consulting services to some BMW Group entities, it is not in the business of assembling, marketing, selling or leasing automobiles.

   We would appreciate your review of the foregoing so that we can discuss releasing those five entities from the obligation to respond to the subpoenas and focus our discussion on the timing for objections and responses by BMW of North America LLC, Rolls-Royce Motor Cars NA, LLC, BMW Financial Services NA, LLC, and BMW Manufacturing Co., LLC, the BMW Group entities that would be expected to have some of the types of documents that are sought in the referenced subpoenas, and the substantive nature of their objections and responses (once provided pursuant to the to-be-agreed upon schedule).   If there are any questions or concerns upon your  review of the foregoing, we are available to address or discuss.  Regards,  Daniel


**Daniel S. Savrin**
**Morgan, Lewis & Bockius LLP**
One Federal Street | Boston, MA 02110-1726
Direct: +1.617.951.8674 | Main: +1.617.951.8000 | Fax: +1.617.428.6310
daniel.savrin@morganlewis.com | www.morganlewis.com
Assistant: Lottie Chojnowski | +1.617.951.8328 | lottie.chojnowski@morganlewis.com

# Exhibit B

**Bruhn, Nathaniel Phillips**

| | |
|---|---|
| **From:** | Savrin, Daniel S. |
| **Sent:** | Tuesday, September 08, 2015 10:43 AM |
| **To:** | Brad Schram; 'Timothy Fraser'; 'kvandyck@cuneolaw.com'; Matthew J. Turchyn; Liz C. Thomson |
| **Cc:** | Bruhn, Nathaniel Phillips; rkruger@jaffelaw.com |
| **Subject:** | FW: In re Auto Parts Subpoenas - BMW Group Entity Information |

Brad-

Per my note of this morning, I am re-sending my note of July 30, 2015 to Jeniphr Breckenridge with respect to the BMW Group entities as to whom subpoenas should be withdrawn as they are not, among other things, in the business of creating, maintaining or storing the types of records that are sought in the subpoena.  As indicated, we would appreciate your review of the July 30, 2015 email and voluntary withdrawal of the subpoenas as to the entities listed in the email below.

If there are any questions or concerns upon your review of the foregoing, we are available to address or discuss.  Regards,  Daniel

**Daniel S. Savrin**
**Morgan, Lewis & Bockius LLP**
One Federal Street | Boston, MA 02110-1726
Direct: +1.617.951.8674 | Main: +1.617.951.8000 | Fax: +1.617.428.6310
daniel.savrin@morganlewis.com | www.morganlewis.com
Assistant: Lottie Chojnowski | +1.617.951.8328 | lottie.chojnowski@morganlewis.com

---

**From:** Savrin, Daniel S.
**Sent:** Thursday, July 30, 2015 6:10 PM
**To:** jeniphr@hbsslaw.com
**Cc:** Richard Kruger <rkruger@jaffelaw.com> (rkruger@jaffelaw.com)
**Subject:** In re Auto Parts Subpoenas - BMW Group Entity Information

Jeniphr-

Per my note of earlier today and as a follow-on to our discussion and email exchanges, I write to provide some additional information concerning the BMW Group entities that have been (or are in the process of being) served with the "uniform OEM subpoenas."  As we discussed, by virtue of the nature of their operations, certain of these BMW Group entities are not in the business of creating, maintaining or storing the types of records that are sought in the subpoena and it would serve the interests of the serving and served parties, as well as judicial economy, not to expend additional resources on objections, responses or any further process related to these entities.

Of the entities that you listed, BMW (US) Holding Corp., BMW Bank of North America, BMW Insurance Agency, Inc., BMW US Capital, LLC and Designworks/USA, Inc. fall into the category of BMW Group entities that are not in the business of creating, maintaining or storing the types of records that are sought in the subpoena.  As their names reflect, the listed entities have limited scopes of operations (if any) and are not in the business of assembling, marketing, selling or leasing automobiles.

BMW (US) Holding Corp. is a holding company for certain BMW Group operating entities in the United States.  As is the case with most holding companies, it has no genuine operations, but simply serves a holding company function.  It is not in the business of creating or maintaining on its own behalf, or on behalf of others, records concerning  automobile assembling, marketing, selling or leasing.

BMW US Capital LLC serves a treasury function for certain BMW Group operating entities in the United States.  It sells capital instruments in public markets and maintains other operations that are akin to an internal banking operation.  It has no operations involving assembling, marketing, selling or leasing automobiles and is not in the business of creating or maintaining on its own behalf, or on behalf of others, records concerning assembling, marketing, selling or leasing automobiles.

BMW Insurance Agency, Inc. is, as its name reflects, an insurance agency.  It is in the business of selling affinity liability insurance (e.g., automobile and homeowner's insurance).  It has a singular product line -- BMW Performance Insurance.  BMW Insurance Agency is the exclusive agent for BMW Performance Insurance.  BMW Performance Insurance policies are underwritten and provided by Liberty Mutual Insurance Company and its affiliates.  A link to a Liberty Mutual site concerning the policies offered by BMW Insurance Agency follows: http://welcome.libertymutual.com/bmw/index.html?src=BMWFS.  Given its insurance agency function, BMW Insurance Agency does not create or maintain on its own behalf, or on behalf of others, records concerning automobile assembling, marketing, selling or leasing.

BMW Bank of North America is a bank based in Utah.  It is engaged in traditional banking activity, including issuing credit cards, certificates of deposit and the like.  While some of its funds underwrite financing of motor vehicle loans, the entity that is in the business of dealing directly with consumers with respect to loans and leasing of vehicles is BMW Financial Services NA, LLC.

Designworks USA, Inc is a creative consulting firm, affiliated with the BMW Group.  Designworks USA provides services to an array of companies and non-commercial entities (e.g., HP, Panasonic, Singapore Airlines, Hello Oral Care) in addition to the services that it provides for certain BMW Group entities.  A link to a site that contains a portfolio of some of Designworks' work follows: http://www.bmwgroupdesignworks.com/portfolio/?view=all.  Among the featured work is the design work performed for the U.S. Olympic bobsled team.  As the portfolio of work indicates, while Designworks may provide consulting services to some BMW Group entities, it is not in the business of assembling, marketing, selling or leasing automobiles.

We would appreciate your review of the foregoing so that we can discuss releasing those five entities from the obligation to respond to the subpoenas and focus our discussion on the timing for objections and responses by BMW of North America LLC, Rolls-Royce Motor Cars NA, LLC, BMW Financial Services NA, LLC, and BMW Manufacturing Co., LLC, the BMW Group entities that would be expected to have some of the types of documents that are sought in the referenced subpoenas, and the substantive nature of their objections and responses (once provided pursuant to the to-be-agreed upon schedule).   If there are any questions or concerns upon your  review of the foregoing, we are available to address or discuss.  Regards,  Daniel

**Daniel S. Savrin**
**Morgan, Lewis & Bockius LLP**
One Federal Street | Boston, MA 02110-1726
Direct: +1.617.951.8674 | Main: +1.617.951.8000 | Fax: +1.617.428.6310
daniel.savrin@morganlewis.com | www.morganlewis.com
Assistant: Lottie Chojnowski | +1.617.951.8328 | lottie.chojnowski@morganlewis.com

# Exhibit C

# Morgan Lewis

**Daniel S. Savrin**
Partner
+1.617.951.8674
daniel.savrin@morganlewis.com

January 15, 2016

**VIA E-MAIL**

Sheldon H. Klein, Esq.
Butzel Long
41000 Woodward Avenue
Bloomfield Hills, MI  48304

Re:     *In re Automotive Parts Antitrust Litigation*, 2:12-md-02311
         **BMW Manufacturing Co., LLC**

Dear Mr. Klein:

I write in response to your January 13, 2016 letter written on behalf of the Serving Parties in which you reiterate your declaration of impasse and state that you intend to file a motion to compel against almost all of the Specified Subpoenaed Entities (the "SSEs"), including my client, BMW Manufacturing Co., LLC ("BMW Manufacturing").  I wanted to set out some key points about BMW Manufacturing that we have shared with our assigned liaison counsel and that we wanted to make sure were known by the broader group before it undertook what we regard as unwarranted and precipitous motion practice.

As BMW Manufacturing has consistently communicated, and is set out in brief below, BMW Manufacturing's business is limited to the purchase of Components and Assemblies and the assembly of vehicles.  BMW Manufacturing, with limited exceptions, is not in possession, custody, or control of documents concerning the specification and procurement process for Components and Assemblies (including the bases for pricing and supplier selection which, as set out below, is handled by a foreign party), the prices—or bases for the prices—at which the vehicles which BMW Manufacturing assembles are thereafter sold for distribution and sale to dealers and consumers, or the distribution of BMW vehicles in the United States (where the minority of the limited number of vehicles that it assembles are sold).  Of the sixteen (16) document requests that are the subject of the contemplated motion to compel, BMW Manufacturing is not in a position to produce any documents in response to eleven (11) of them.[1]

---

[1] Our review indicates that BMW Manufacturing has not created and does not maintain, or has not located and is not aware of, any documents responsive to the following requests, which the Serving Parties identified as narrowed from the original subpoena in the January 13, 2016 letter: 1(h), 4, 5(d-e), 13, 14, 15, 16, 22, 28, 30, 31, 33, and 34.

**Morgan, Lewis & Bockius LLP**

One Federal Street
Boston, MA  02110-1726
United States

**T** +1.617.341.7700
**F** +1.617.341.7701

Sheldon H. Klein, Esq.
January 15, 2016
Page 2

To the extent BMW Manufacturing is in possession, custody, or control of any documents related to the limited remaining requests, they predominantly relate to purchase orders for Components and Assemblies without any relation to procurement, selection or pricing decisions, or vehicle costs. Those documents are, *inter alia*:

1. Not statistically relevant because of the limited number of vehicles assembled by BMW Manufacturing, and the even more limited number of those vehicles that are destined for sale in the United States;

2. Not relevant because, as a vehicle assembler, BMW Manufacturing has no information concerning the relationship between the costs of Components and Assemblies and vehicle prices that is the subject matter of this litigation; and

3. Accessible via serving parties (Defendants should have data on Component and Assembly sales), and, as BMW Manufacturing's limited response on one category of Components demonstrates, would be difficult and expensive for BMW Manufacturing to locate and produce given the breadth and timeframe of the requests.

Further, to the extent any relevance could be established for the limited scope of documents that BMW Manufacturing may possess, that relevance is outweighed by the burdens imposed on BMW Manufacturing.

In response to Request No. 27, BMW Manufacturing would be prepared to produce spreadsheets previously produced to the Department of Justice related to its Investigation of Components and Assemblies. That data relates only to the purchase of restraint system components—the only system that was the subject of a production to the Department of Justice and the only system components where BMW is referenced in any of the Department of Justice pleadings and charging documents. BMW Manufacturing did not produce procurement or selection documents as it did not possess them. The data, which due to system restrictions, dates back to 2000, reflects quantity, date, pricing, and supplier information. It took BMW Manufacturing employees, dedicated to the project of collecting this data, months to assemble and produce the referenced data to the Department of Justice. If information on restraint systems took months to collect, information on the extensive list of Components and Assemblies that are the subject matter of the Subpoena will take many more people many more months to collect, at an exceedingly high cost, and would be of minimal relevance for reasons addressed further herein.

BMW Manufacturing undertook to emphasize these points in earlier communications with its assigned liaison and in later group communications sent by Colin Kass of Proskauer Rose LLP on behalf of the SSEs. Below is a brief factual overview of BMW Manufacturing affirming both the points set out above and the information communicated previously.

### Overview of BMW Manufacturing's Scope and Size

BMW Manufacturing is a limited liability company that operates a motor vehicle assembly plant in South Carolina. The South Carolina plant was opened in 1994 with a limited production of BMW motor vehicles. All of the motor vehicles assembled by BMW Manufacturing are sold to Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), with the majority of those vehicles destined for

Sheldon H. Klein, Esq.
January 15, 2016
Page 3

ultimate distribution outside the United States. BMW Manufacturing's business is limited to the assembly of motor vehicles and sale of those vehicles to BMW AG. BMW Manufacturing has no business operations with respect to the distribution, sale, marketing or financing of BMW motor vehicles to distributors or consumers either within or outside the United States.

The vehicles assembled by BMW Manufacturing have always been designed by BMW AG in Germany. While, in its early years, BMW Manufacturing played a limited role with respect to the selection of suppliers for some of the Components and Assemblies incorporated into vehicles that BMW Manufacturing assembled, in later years, BMW AG assumed responsibilities for the overall selection of, and procurement processes for, Component and Assemblies for BMW motor vehicles manufactured by BMW Manufacturing and other manufacturing facilities. In the later years, the procurement process for selecting suppliers of Components and Assemblies, and the negotiation of terms and conditions for their purchase, was conducted by BMW AG in Germany. BMW Manufacturing's role was limited to purchasing the designated Components and Assemblies at prices determined or directed by BMW AG from suppliers pre-selected by BMW AG.

In the ordinary course of business, BMW Manufacturing does not receive information on BMW AG's procurement process, including its negotiations, its bases for pricing decisions, or its bases for supplier decisions. The information BMW Manufacturing does have on Components and Assemblies, therefore, is almost exclusively limited to information contained in purchase orders issued by BMW Manufacturing, including the supplier, quantity, price of a Component or Assembly—information that is also accessible from suppliers of Components and Assemblies to BMW Manufacturing.

The volume of vehicles assembled by BMW Manufacturing has always been limited, and represents only a small fraction of the vehicles assembled in the United States. Historically and currently, approximately 50% to 70% of the vehicles that BMW Manufacturing assembles are assembled for distribution outside the United States.

For example, in 1996, BMW Manufacturing assembled approximately 51,301 vehicles. Of those vehicles, only 24,534 or 48% were destined for distribution in the United States, representing approximately 16/100 of 1% of all vehicles sold in the United States. In 2000, BMW Manufacturing assembled approximately 83,672 vehicles. Of those vehicles, only 47,638 or 57% were destined for distribution in the United States, representing approximately 27/100 of 1% of all vehicles sold in the United States. In 2009, BMW Manufacturing assembled approximately 123,054 vehicles. Of those vehicles, only 33,354 or 27% were destined for distribution in the United States, representing approximately 20/100 of 1% of all vehicles sold in the United States. In 2015, following a recent plant expansion, BMW Manufacturing assembled approximately 400,904 vehicles. Of those vehicles, only 119,648 or 30% were destined for distribution in the United States, representing approximately 68/100 of 1% of all vehicles sold in the United States.

BMW Manufacturing has no information on the distribution and sale of BMW vehicles in the United States (e.g., pricing, pricing decisions, terms and conditions of sale, number of vehicles sold, financing, dealer sales and relationships) that occurs, outside of BMW Manufacturing's purview, after BMW AG purchases the assembled vehicles.

* * *

Sheldon H. Klein, Esq.
January 15, 2016
Page 4

As a result of BMW Manufacturing's limited operations, BMW Manufacturing does not, with very limited exceptions, create or maintain the types of documents sought in the Uniform OEM Subpoena. To the extent BMW Manufacturing may have documents responsive to the Subpoena, they are limited to: Component and Assembly purchase information responsive to Request No. 1 (excluding information on procurement, pricing, and supplier decisions); purchase orders and related documents responsive to Request No. 3; production dates for vehicles assembled by BMW Manufacturing responsive to Request No. 5 (a-c); limited information on Annual Price Reductions issued to suppliers or manufacturers of Components or Assemblies responsive to Request No. 23; and spreadsheets previously produced to the Department of Justice responsive to Request No. 27.

Even if BMW Manufacturing is in possession, custody, or control of any of the documents listed above that are responsive to the Subpoena, the Serving Parties have still not met their burden of showing the necessity of this discovery in light of BMW Manufacturing's position as an absent class member. "[A] party that seeks discovery from an unnamed, or 'absent,' class member has the burden to show the necessity of the proposed discovery," and therefore, requires them to "affirmatively show that there is a particularized need' for such discovery." Dkt. 338, 12-cv-102.

The burden of production on BMW Manufacturing, includes, but is not limited to, the costs associated with the identification and retrieval of such information, which may be in paper format, archived electronically, or in electronic records that do not contain data or information in the form in which it is sought. The exceedingly high burden is borne out by the time and effort it took BMW Manufacturing to produce data on restraint system components to the Department of Justice, as detailed above.

Moreover, assuming *arguendo* that any benefit of a limited BMW Manufacturing production to the Serving Parties could be shown, that benefit would, at most, be negligible. BMW Manufacturing assembles a relatively small number of vehicles in the United States, and in 2015, 70% of those vehicles were destined for distribution outside of the United States. In prior years, when BMW Manufacturing assembled fewer total vehicles, the number of vehicles destined for distribution outside the United States was approximately 50% or greater. BMW Manufacturing's resultant United States market share, therefore, has always been exceedingly small, and likely to be well within the margin of error for any statistical model the Serving Parties rely on. The burden on BMW Manufacturing of responding to the Uniform OEM Subpoena, on the other hand, far outweighs any benefit to be derived by the Serving Parties.

A motion to compel seeking discovery from BMW Manufacturing would be without merit. BMW Manufacturing is prepared, if necessary (notwithstanding the prior arrangements), to serve objections and responses on the Serving Parties and/or contest a motion to compel, but the reality will not change—BMW Manufacturing does not have the vast majority of documents sought in the Subpoena, and the documents it does possess are not relevant and, if sought, should first be sought from parties other than BMW Manufacturing.

While BMW Manufacturing reserves all rights and objections related to the Uniform OEM Subpoena, we would prefer that you afford careful consideration to the foregoing and the earlier communications and hold in abeyance your contemplated efforts with respect to BMW Manufacturing.

Sheldon H. Klein, Esq.
January 15, 2016
Page 5


Very truly yours,


*/s/ Daniel S. Savrin*


Daniel S. Savrin


c:    Richard Kruger, Esq.
      Bradley Schram, Esq.

# Exhibit D

# Morgan Lewis

**Daniel S. Savrin**
Partner
+1.617.951.8674
daniel.savrin@morganlewis.com

January 15, 2016

**VIA E-MAIL**

Sheldon H. Klein, Esq.
Butzel Long
41000 Woodward Avenue
Bloomfield Hills, MI  48304

Re:     *In re Automotive Parts Antitrust Litigation*, 2:12-md-02311
        **BMW of North America, LLC**

Dear Mr. Klein:

I write in response to your January 13, 2016 letter written on behalf of the Serving Parties in which you reiterate your declaration of impasse and state that you intend to file a motion to compel against almost all of the Specified Subpoenaed Entities (the "SSEs"), including my client, BMW of North America, LLC ("BMW NA").  I wanted to set out some key points about BMW NA that we have shared with our assigned liaison counsel and that we wanted to make sure were known by the broader group before it undertook what we regard as unwarranted and precipitous motion practice.

As BMW NA has consistently communicated, and is set out in brief below, BMW NA is not in possession, custody, or control of: (1) documents concerning the acquisition of Components and Assemblies or the pricing of Components and Assemblies; or (2) document concerning any relationship between component costs and the price BMW NA pays for vehicles that it distributes, the price that dealers may pay for those vehicles, or the price that dealers charge to consumers. Of the sixteen (16) document requests that are the subject of the contemplated motion to compel, BMW NA is not in a position to produce any documents in response to thirteen (13) of them.[1]

To the extent that BMW NA is in possession, custody, or control of any documents related to the limited remaining requests, they all relate to downstream pricing (in a manner that is disaggregated from component costs).  Those documents are, *inter alia*:

    1.  Not relevant per earlier decisions of the Special Master (Dkts. 338, 331, 352, 12-cv-102);

---

[1] Our review indicates that BMW NA has not created and does not maintain, or has not located and is not aware of, any documents responsive to the following requests, which the Serving Parties identified as the contemplated subject of their motion to compel in the January 13, 2016 letter:  1, 3, 13(b), 14, 15, 16, 23, 27, 28, 30, 31, 33, and 34.

**Morgan, Lewis & Bockius LLP**

One Federal Street
Boston, MA  02110-1726
United States

☎ +1.617.341.7700
🖷 +1.617.341.7701

DB3/ 200695951.4

Sheldon H. Klein, Esq.
January 15, 2016
Page 2

2. Not statistically relevant because of BMW NA's small United States vehicle sales (combined BMW and MINI sales of 0.5% of the market in 1992 to 2.3% of the market in 2015—the 24 year period covered by the subpoena);

3. Not relevant because of the limited scope of information that BMW NA possesses as a vehicle distributor without information concerning costs of Components and Assemblies that are the subject matter of this litigation; and

4. Either in the public record (e.g., production date, MSRP), or accessible via serving parties (Auto Dealer Plaintiffs should have data on their own costs), and would be difficult and expensive for BMW NA to locate and produce given the breadth and timeframe of the requests.

Further, to the extent any relevance could be established for the limited scope of documents that BMW NA may uniquely possess concerning downstream pricing, that relevance is outweighed by the burdens imposed on BMW NA.

BMW NA undertook to emphasize these points in earlier communications with its assigned liaison and in later group communications sent by Colin Kass of Proskauer Rose LLP on behalf of the SSEs. Below is a brief factual overview of BMW NA affirming both the points set out above and the information communicated previously.

### Overview of BMW NA's Scope and Size

BMW NA purchases fully assembled BMW and MINI motor vehicles and distributes the vehicles to authorized BMW centers and MINI dealers in the United States for sale or lease to consumers. BMW NA's primary business operations are limited to the purchase and distribution of BMW and MINI motor vehicles, and the marketing of those vehicles in the United States. BMW NA does not engage in the design, manufacture or assembly of BMW or MINI motor vehicles, the procurement of parts for the manufacture or assembly of BMW or MINI motor vehicles, the sale of motor vehicles to consumers, or the financing of BMW or MINI motor vehicles for consumers.

BMW NA purchases fully assembled vehicles from Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"). When BMW NA purchases vehicles from BMW AG, BMW NA does not receive information concerning the procurement or costs of Components and Assemblies (as those terms are used in the subpoena) installed in those vehicles. To the extent that BMW AG may factor the pricing of Components and Assemblies into prices charged to BMW NA for BMW or MINI vehicles, BMW NA does not receive information about that decision. In setting its own pricing, BMW NA does not consider the costs of Components and Assemblies as BMW NA does not have information concerning the costs of Components and Assemblies.

BMW NA understands that the vehicles that it purchases from BMW AG are manufactured in Germany, South Africa, or the United States. Vehicles that may be manufactured by BMW Manufacturing Co., LLC in the United States are not sold to BMW NA by BMW Manufacturing Co., LLC but, as noted, are acquired by BMW NA from BMW AG.

Sheldon H. Klein, Esq.
January 15, 2016
Page 3

The MINI vehicles that BMW NA acquires from BMW AG are fully assembled new vehicles manufactured in England or Austria.

After purchase from BMW AG, BMW NA sells the new vehicles to authorized dealers for retail sale or lease in the United States. BMW NA, like the authorized dealers, maintains certain information on the sale of the vehicles to the dealers, and typically obtains limited identification information on the purchasing consumer (primarily collected for purposes of product campaigns and recalls) from the dealer, but it is atypical for BMW NA to obtain information on the sale or lease price, or the terms and conditions of sale or lease, to the consumer. Dealers are not required to report, and typically do not report, the terms and conditions of retail transactions, including pricing, and pricing decisions, terms and conditions of sale, financing, or other dealer information, and that information is not, except for the prospect of limited incidental exceptions, in the possession, custody, or control of BMW NA.

Consistent with the limited scope of its operations, BMW NA does not purchase Components or Assemblies for initial installation in the vehicles that it distributes, has no role in the selection of suppliers of those Components and Assemblies, does not negotiate or enter into agreements with suppliers of those Components or Assemblies, and has no records concerning the procurement or cost of such Components or Assemblies. As noted, when BMW NA purchases vehicles from BMW AG, BMW NA does not receive information concerning the procurement or costs of Components and Assemblies installed in those vehicles.

Although the volume of BMW motor vehicles distributed in the United States varied between 1992 and 2015, it has always been limited. In 1992, a predecessor of BMW NA sold approximately 65,691 BMW vehicles in the United States. Approximately 12.9 million vehicles were sold in the United States in 1992. Those vehicles represented approximately 1/2 of 1% of the cars and light trucks sold in the United States in 1992. None of those vehicles were manufactured in the United States. In 2009, the total number of BMW vehicles sold by BMW NA was 196,502. Approximately 17 million vehicles were sold in the United States in 2009. Those vehicles represented approximately 1.2% of the cars and light trucks sold in the United States in 2009. Fewer than 33,000 of those vehicles were assembled in the United States. In 2015, the total number of BMW vehicles sold by BMW NA was 346,023. Approximately 17.5 million vehicles were sold in the United States in 2015. Those vehicles represented approximately 2% of the cars and light trucks sold in the United States in 2015. Fewer than 100,000 of those vehicles were assembled in the United States.

BMW NA began distributing MINI vehicles in the United States in 2002. Although the volume of MINI vehicles distributed in the United States varied between 2002 and 2015, it has always been very limited. In 2002, BMW NA sold 24,590 MINI vehicles in the United States. Approximately 16.9 million vehicles were sold in the United States in 2002. Those vehicles represented, approximately 15/100ths of 1% of the cars and light trucks sold in the United States in 2002. In 2009, BMW NA sold 45,225 MINI vehicles in the United States. Approximately 17 million vehicles were sold in the United States in 2009. Those vehicles represented, approximately 27/100ths of 1% of the cars and light trucks sold in the United States in 2009. In 2015, the total number of MINI vehicles sold by BMW NA was 58,514. Approximately 17.5 million vehicles were sold in the United States in 2015. Those vehicles represented approximately 34/100ths of 1% of the cars and

Sheldon H. Klein, Esq.
January 15, 2016
Page 4

light trucks sold in the United States in 2015.  None of these MINI vehicles were assembled or manufactured in the United States.

* * *

As a result of BMW NA's limited operations, as noted, BMW NA does not, with very limited exceptions, create or maintain the types of documents sought in the Uniform OEM Subpoena.  To the extent BMW NA does have documents responsive to the Subpoena, they are limited to documents responsive to the downstream discovery requests and pricing requests (i.e. the narrowed requests in Requests No. 4, 5, and 22).

As to downstream discovery, the Serving Parties have failed to adequately address the relevance of this information, especially in light of existing discovery orders in this case.  As discussed in detail in the SSEs' October 29, 2015 and December 18, 2015 letters to the Serving Parties, the request for downstream discovery conflicts with the clear import of the orders in this case that downstream information that is not directly tied to component prices "'is irrelevant, not likely to lead to the discovery of relevant information,' and its production would be unduly 'burdensome.'"  Dkts. 338, 331, 352, 12-cv-102.

Moreover, to the extent documents responsive to Request Nos. 4, 5, and 22 are obtainable from the Serving Parties, especially the Auto Dealer Plaintiffs, discovery from BMW NA—much less a motion to compel that discovery—is improper.

Even if BMW NA was in possession, custody, or control of additional documents responsive to the Subpoena, the Serving Parties have not met their burden of showing the necessity of this discovery in light of BMW NA's position as an absent class member.  "[A] party that seeks discovery from an unnamed, or 'absent,' class member has the burden to show the necessity of the proposed discovery," and therefore, requires them to "affirmatively show that there is a particularized need for such discovery."  Dkt. 338, 12-cv-102.  The burden of production on BMW NA, includes, but is not limited to, the costs associated with the identification and retrieval of such information, which may be in paper format, archived electronically, or in electronic records that do not contain data or information in the form in which it is sought.

Moreover, assuming *arguendo* that any benefit of a limited BMW NA production to the Serving Parties could be shown, that benefit would, at most, be negligible.  BMW NA's market share is exceedingly small, and likely to be within the margin of error for any statistical model the Serving Parties rely on.  The burden on BMW NA of responding to the Uniform OEM Subpoena, on the other hand, far outweighs any benefit to be derived by the Serving Parties.

A motion to compel seeking discovery from BMW NA would be without merit.  BMW NA is prepared, if necessary (notwithstanding the prior arrangements), to serve objections and responses on the Serving Parties and/or contest a motion to compel, but the reality will not change—BMW NA does not have the vast majority of documents sought in the Subpoena, and the documents it does possess are not relevant and, if sought, should first be sought from parties other than BMW NA.

Sheldon H. Klein, Esq.
January 15, 2016
Page 5

While BMW NA reserves all rights and objections related to the Uniform OEM Subpoena, we would prefer that you afford careful consideration to the foregoing and the earlier communications and hold in abeyance your contemplated efforts with respect to BMW NA.

Very truly yours,


*/s/ Daniel S. Savrin*


Daniel S. Savrin

cc:  Richard Kruger, Esq.
     Bradley Schram, Esq.

# Exhibit E

# Morgan Lewis

**Daniel S. Savrin**
Partner
+1.617.951.8674
daniel.savrin@morganlewis.com

February 16, 2016

**VIA E-MAIL**

Steven N. Williams, Esq.
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA  94010
swilliams@cpmlegal.com

J. Manly Parks, Esq.
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA  19103
jmparks@duanemorris.com

Timothy M. Fraser, Esq.
Office of the Florida Attorney General
PL-01 The Capitol
Tallahassee, FL  32399-1050
timothy.fraser@myfloridalegal.com

Kevin Abraham Rynbrandt, Esq.
Rynbrandt & Associates, PLLC
1000 Front Street, N.W.
Grand Rapids, MI  49504
kar@rynbrandt.com

Jonathan W. Cuneo, Esq.
Cuneo, Gilbert & Laduca, LLP
507 C Street, N.E.
Washington, D.C.  20002
jonc@cuneolaw.com

Re:     **In re Automotive Parts Antitrust Litigation, 2:12-mdl-02311**
        **BMW of North America, LLC**

Dear Signatories:

I write in response to the January 19, 2016 Motion to Compel[1] seeking documents responsive to Request Nos. 27 and 31 of the so called Uniform OEM Subpoena from, *inter alia*, BMW of North America, LLC ("BMW NA") and BMW Manufacturing Co., LLC ("BMW Manufacturing") (collectively, the "BMW Entities").[2]

---

[1] Certain Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, *In re Automotive Parts Antitrust Litigation*, Dkt. No. 1188, No. 12-mdl-02311 (E.D. Mich. Jan. 19, 2016) (the "Motion to Compel").

[2] The Motion to Compel also identifies BMW (US) Holding Corp. as a "Core SSE" subject to the Motion to Compel.  As I communicated to BMW's assigned liasons on July 30, 2015, BMW Holding has no genuine operations, but simply serves a holding company function.  It does not create or maintain records concerning automobile assembly, marketing, sales, or leasing.

**Morgan, Lewis & Bockius** LLP

One Federal Street
Boston, MA  02110-1726
United States

☎ +1.617.341.7700
🖷 +1.617.341.7701

Steven N. Williams, Esq.
J. Manly Parks, Esq.
Timothy M. Fraser, Esq.
Kevin Abraham Rynbrandt, Esq.
Jonathan W. Cuneo, Esq.
February 16, 2016
Page 2

BMW NA does not have documents responsive to Request Nos. 27 and 31, a fact that has been communicated to members of the Moving Parties[3] over the past six months.

BMW Manufacturing has not located documents responsive to Request No. 31, but BMW Manufacturing has stated that it is prepared to produce the two documents it has that are responsive to Request No. 27.  Earlier communications to that effect are attached hereto.  We have, to date, received no response with respect to that offer of production nor do we have an understanding as to how highly confidential information would be maintained.

In light of the foregoing facts, which have been set out in earlier communications and correspondence intended for dissemination to the Moving Parties, and the Moving Parties' assertion that they "have worked diligently with the SSEs to resolve disputes regarding productions of the two requests at issue," Motion to Compel at 2, I want to ensure that all Moving Parties were made aware of the BMW Entities' position.  My concern that this information has not been considered was heightened by the Moving Parties' arguments in the Motion to Compel that are wholly inapposite to an entity with no responsive documents in the first place (BMW NA) and an entity that has agreed to produce its only responsive documents (BMW Manufacturing).

Given the foregoing, I respectfully request that you withdraw the Motion to Compel as to the BMW Entities as soon as possible to avoid any unnecessary additional expense and provide us with directions concerning the manner of production for the two responsive documents that BMW Manufacturing is in a position to produce.  The BMW Entities reserve all rights with respect to this matter, including the right to pursue recovery of incurred costs and fees.

Very truly yours,

*/s/ Daniel S. Savrin*

Daniel S. Savrin

Cc:     Richard Kruger, Esq.

---

The July 30 email is attached hereto as Exhibit A.  Accordingly, as it appears that the inclusion of BMW (US) Holding Corp. in the "Core SSE" was in error, BMW (US) Holding Corp. will not separately respond to the Motion to Compel.

[3] Automobile Dealer Plaintiffs, End-Payor Plaintiffs, Truck and Equipment Dealer Plaintiffs, the State of Florida, and the State of Indiana (collectively, the "Moving Parties").

# Exhibit 1

**Bruhn, Nathaniel Phillips**

| | |
|---|---|
| **From:** | Savrin, Daniel S. |
| **Sent:** | Tuesday, September 08, 2015 10:43 AM |
| **To:** | Brad Schram; 'Timothy Fraser'; 'kvandyck@cuneolaw.com'; Matthew J. Turchyn; Liz C. Thomson |
| **Cc:** | Bruhn, Nathaniel Phillips; rkruger@jaffelaw.com |
| **Subject:** | FW: In re Auto Parts Subpoenas - BMW Group Entity Information |

Brad-

Per my note of this morning, I am re-sending my note of July 30, 2015 to Jeniphr Breckenridge with respect to the BMW Group entities as to whom subpoenas should be withdrawn as they are not, among other things, in the business of creating, maintaining or storing the types of records that are sought in the subpoena. As indicated, we would appreciate your review of the July 30, 2015 email and voluntary withdrawal of the subpoenas as to the entities listed in the email below.

If there are any questions or concerns upon your review of the foregoing, we are available to address or discuss. Regards, Daniel

**Daniel S. Savrin**
**Morgan, Lewis & Bockius LLP**
One Federal Street | Boston, MA 02110-1726
Direct: +1.617.951.8674 | Main: +1.617.951.8000 | Fax: +1.617.428.6310
daniel.savrin@morganlewis.com | www.morganlewis.com
Assistant: Lottie Chojnowski | +1.617.951.8328 | lottie.chojnowski@morganlewis.com

**From:** Savrin, Daniel S.
**Sent:** Thursday, July 30, 2015 6:10 PM
**To:** jeniphr@hbsslaw.com
**Cc:** Richard Kruger <rkruger@jaffelaw.com> (rkruger@jaffelaw.com)
**Subject:** In re Auto Parts Subpoenas - BMW Group Entity Information

Jeniphr-

Per my note of earlier today and as a follow-on to our discussion and email exchanges, I write to provide some additional information concerning the BMW Group entities that have been (or are in the process of being) served with the "uniform OEM subpoenas." As we discussed, by virtue of the nature of their operations, certain of these BMW Group entities are not in the business of creating, maintaining or storing the types of records that are sought in the subpoena and it would serve the interests of the serving and served parties, as well as judicial economy, not to expend additional resources on objections, responses or any further process related to these entities.

Of the entities that you listed, BMW (US) Holding Corp., BMW Bank of North America, BMW Insurance Agency, Inc., BMW US Capital, LLC and Designworks/USA, Inc. fall into the category of BMW Group entities that are not in the business of creating, maintaining or storing the types of records that are sought in the subpoena. As their names reflect, the listed entities have limited scopes of operations (if any) and are not in the business of assembling, marketing, selling or leasing automobiles.

BMW (US) Holding Corp. is a holding company for certain BMW Group operating entities in the United States.  As is the case with most holding companies, it has no genuine operations, but simply serves a holding company function.  It is not in the business of creating or maintaining on its own behalf, or on behalf of others, records concerning  automobile assembling, marketing, selling or leasing.

BMW US Capital LLC serves a treasury function for certain BMW Group operating entities in the United States.  It sells capital instruments in public markets and maintains other operations that are akin to an internal banking operation.  It has no operations involving assembling, marketing, selling or leasing automobiles and is not in the business of creating or maintaining on its own behalf, or on behalf of others, records concerning assembling, marketing, selling or leasing automobiles.

BMW Insurance Agency, Inc. is, as its name reflects, an insurance agency.  It is in the business of selling affinity liability insurance (e.g., automobile and homeowner's insurance).  It has a singular product line -- BMW Performance Insurance.  BMW Insurance Agency is the exclusive agent for BMW Performance Insurance.  BMW Performance Insurance policies are underwritten and provided by Liberty Mutual Insurance Company and its affiliates.  A link to a Liberty Mutual site concerning the policies offered by BMW Insurance Agency follows: http://welcome.libertymutual.com/bmw/index.html?src=BMWFS.  Given its insurance agency function, BMW Insurance Agency does not create or maintain on its own behalf, or on behalf of others, records concerning automobile assembling, marketing, selling or leasing.

BMW Bank of North America is a bank based in Utah.  It is engaged in traditional banking activity, including issuing credit cards, certificates of deposit and the like.  While some of its funds underwrite financing of motor vehicle loans, the entity that is in the business of dealing directly with consumers with respect to loans and leasing of vehicles is BMW Financial Services NA, LLC.

Designworks USA, Inc is a creative consulting firm, affiliated with the BMW Group.  Designworks USA provides services to an array of companies and non-commercial entities (e.g., HP, Panasonic, Singapore Airlines, Hello Oral Care) in addition to the services that it provides for certain BMW Group entities.  A link to a site that contains a portfolio of some of Designworks' work follows: http://www.bmwgroupdesignworks.com/portfolio/?view=all.  Among the featured work is the design work performed for the U.S. Olympic bobsled team.  As the portfolio of work indicates, while Designworks may provide consulting services to some BMW Group entities, it is not in the business of assembling, marketing, selling or leasing automobiles.

We would appreciate your review of the foregoing so that we can discuss releasing those five entities from the obligation to respond to the subpoenas and focus our discussion on the timing for objections and responses by BMW of North America LLC, Rolls-Royce Motor Cars NA, LLC, BMW Financial Services NA, LLC, and BMW Manufacturing Co., LLC, the BMW Group entities that would be expected to have some of the types of documents that are sought in the referenced subpoenas, and the substantive nature of their objections and responses (once provided pursuant to the to-be-agreed upon schedule).  If there are any questions or concerns upon your  review of the foregoing, we are available to address or discuss.  Regards,  Daniel

**Daniel S. Savrin**
**Morgan, Lewis & Bockius LLP**
One Federal Street | Boston, MA 02110-1726
Direct: +1.617.951.8674 | Main: +1.617.951.8000 | Fax: +1.617.428.6310
daniel.savrin@morganlewis.com | www.morganlewis.com
Assistant: Lottie Chojnowski | +1.617.951.8328 | lottie.chojnowski@morganlewis.com

# Exhibit 2

# Morgan Lewis

**Daniel S. Savrin**
Partner
+1.617.951.8674
daniel.savrin@morganlewis.com

January 15, 2016

**VIA E-MAIL**

Sheldon H. Klein, Esq.
Butzel Long
41000 Woodward Avenue
Bloomfield Hills, MI  48304

Re:     *In re Automotive Parts Antitrust Litigation*, **2:12-md-02311**
        **BMW of North America, LLC**

Dear Mr. Klein:

I write in response to your January 13, 2016 letter written on behalf of the Serving Parties in which you reiterate your declaration of impasse and state that you intend to file a motion to compel against almost all of the Specified Subpoenaed Entities (the "SSEs"), including my client, BMW of North America, LLC ("BMW NA").  I wanted to set out some key points about BMW NA that we have shared with our assigned liaison counsel and that we wanted to make sure were known by the broader group before it undertook what we regard as unwarranted and precipitous motion practice.

As BMW NA has consistently communicated, and is set out in brief below, BMW NA is not in possession, custody, or control of: (1) documents concerning the acquisition of Components and Assemblies or the pricing of Components and Assemblies; or (2) document concerning any relationship between component costs and the price BMW NA pays for vehicles that it distributes, the price that dealers may pay for those vehicles, or the price that dealers charge to consumers.  Of the sixteen (16) document requests that are the subject of the contemplated motion to compel, BMW NA is not in a position to produce any documents in response to thirteen (13) of them.[1]

To the extent that BMW NA is in possession, custody, or control of any documents related to the limited remaining requests, they all relate to downstream pricing (in a manner that is disaggregated from component costs).  Those documents are, *inter alia*:

   1.  Not relevant per earlier decisions of the Special Master (Dkts. 338, 331, 352, 12-cv-102);

---

[1] Our review indicates that BMW NA has not created and does not maintain, or has not located and is not aware of, any documents responsive to the following requests, which the Serving Parties identified as the contemplated subject of their motion to compel in the January 13, 2016 letter:  1, 3, 13(b), 14, 15, 16, 23, 27, 28, 30, 31, 33, and 34.

**Morgan, Lewis & Bockius LLP**

One Federal Street
Boston, MA  02110-1726
United States

☎ +1.617.341.7700
🖷 +1.617.341.7701

DB3/ 200695951.4

Sheldon H. Klein, Esq.
January 15, 2016
Page 2

2.  Not statistically relevant because of BMW NA's small United States vehicle sales (combined BMW and MINI sales of 0.5% of the market in 1992 to 2.3% of the market in 2015—the 24 year period covered by the subpoena);

3.  Not relevant because of the limited scope of information that BMW NA possesses as a vehicle distributor without information concerning costs of Components and Assemblies that are the subject matter of this litigation; and

4.  Either in the public record (e.g., production date, MSRP), or accessible via serving parties (Auto Dealer Plaintiffs should have data on their own costs), and would be difficult and expensive for BMW NA to locate and produce given the breadth and timeframe of the requests.

Further, to the extent any relevance could be established for the limited scope of documents that BMW NA may uniquely possess concerning downstream pricing, that relevance is outweighed by the burdens imposed on BMW NA.

BMW NA undertook to emphasize these points in earlier communications with its assigned liaison and in later group communications sent by Colin Kass of Proskauer Rose LLP on behalf of the SSEs. Below is a brief factual overview of BMW NA affirming both the points set out above and the information communicated previously.

*Overview of BMW NA's Scope and Size*

BMW NA purchases fully assembled BMW and MINI motor vehicles and distributes the vehicles to authorized BMW centers and MINI dealers in the United States for sale or lease to consumers. BMW NA's primary business operations are limited to the purchase and distribution of BMW and MINI motor vehicles, and the marketing of those vehicles in the United States. BMW NA does not engage in the design, manufacture or assembly of BMW or MINI motor vehicles, the procurement of parts for the manufacture or assembly of BMW or MINI motor vehicles, the sale of motor vehicles to consumers, or the financing of BMW or MINI motor vehicles for consumers.

BMW NA purchases fully assembled vehicles from Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"). When BMW NA purchases vehicles from BMW AG, BMW NA does not receive information concerning the procurement or costs of Components and Assemblies (as those terms are used in the subpoena) installed in those vehicles. To the extent that BMW AG may factor the pricing of Components and Assemblies into prices charged to BMW NA for BMW or MINI vehicles, BMW NA does not receive information about that decision. In setting its own pricing, BMW NA does not consider the costs of Components and Assemblies as BMW NA does not have information concerning the costs of Components and Assemblies.

BMW NA understands that the vehicles that it purchases from BMW AG are manufactured in Germany, South Africa, or the United States. Vehicles that may be manufactured by BMW Manufacturing Co., LLC in the United States are not sold to BMW NA by BMW Manufacturing Co., LLC, but, as noted, are acquired by BMW NA from BMW AG.

Sheldon H. Klein, Esq.
January 15, 2016
Page 3

The MINI vehicles that BMW NA acquires from BMW AG are fully assembled new vehicles manufactured in England or Austria.

After purchase from BMW AG, BMW NA sells the new vehicles to authorized dealers for retail sale or lease in the United States.  BMW NA, like the authorized dealers, maintains certain information on the sale of the vehicles to the dealers, and typically obtains limited identification information on the purchasing consumer (primarily collected for purposes of product campaigns and recalls) from the dealer, but it is atypical for BMW NA to obtain information on the sale or lease price, or the terms and conditions of sale or lease, to the consumer.  Dealers are not required to report, and typically do not report, the terms and conditions of retail transactions, including pricing, pricing decisions, terms and conditions of sale, financing, or other dealer information, and that information is not, except for the prospect of limited incidental exceptions, in the possession, custody, or control of BMW NA.

Consistent with the limited scope of its operations, BMW NA does not purchase Components or Assemblies for initial installation in the vehicles that it distributes, has no role in the selection of suppliers of those Components and Assemblies, does not negotiate or enter into agreements with suppliers of those Components or Assemblies, and has no records concerning the procurement or cost of such Components or Assemblies.  As noted, when BMW NA purchases vehicles from BMW AG, BMW NA does not receive information concerning the procurement or costs of Components and Assemblies installed in those vehicles.

Although the volume of BMW motor vehicles distributed in the United States varied between 1992 and 2015, it has always been limited.  In 1992, a predecessor of BMW NA sold approximately 65,691 BMW vehicles in the United States.  Approximately 12.9 million vehicles were sold in the United States in 1992.  Those vehicles represented approximately 1/2 of 1% of the cars and light trucks sold in the United States in 1992.  None of those vehicles were manufactured in the United States.  In 2009, the total number of BMW vehicles sold by BMW NA was 196,502.  Approximately 17 million vehicles were sold in the United States in 2009.  Those vehicles represented approximately 1.2% of the cars and light trucks sold in the United States in 2009.  Fewer than 33,000 of those vehicles were assembled in the United States.  In 2015, the total number of BMW vehicles sold by BMW NA was 346,023.  Approximately 17.5 million vehicles were sold in the United States in 2015.  Those vehicles represented approximately 2% of the cars and light trucks sold in the United States in 2015.  Fewer than 100,000 of those vehicles were assembled in the United States.

BMW NA began distributing MINI vehicles in the United States in 2002.  Although the volume of MINI vehicles distributed in the United States varied between 2002 and 2015, it has always been very limited.  In 2002, BMW NA sold 24,590 MINI vehicles in the United States.  Approximately 16.9 million vehicles were sold in the United States in 2002.  Those vehicles represented, approximately 15/100ths of 1% of the cars and light trucks sold in the United States in 2002.  In 2009, BMW NA sold 45,225 MINI vehicles in the United States.  Approximately 17 million vehicles were sold in the United States in 2009.  Those vehicles represented, approximately 27/100ths of 1% of the cars and light trucks sold in the United States in 2009.  In 2015, the total number of MINI vehicles sold by BMW NA was 58,514.  Approximately 17.5 million vehicles were sold in the United States in 2015.  Those vehicles represented approximately 34/100ths of 1% of the cars and

Sheldon H. Klein, Esq.
January 15, 2016
Page 4

light trucks sold in the United States in 2015. None of these MINI vehicles were assembled or manufactured in the United States.

\* \* \*

As a result of BMW NA's limited operations, as noted, BMW NA does not, with very limited exceptions, create or maintain the types of documents sought in the Uniform OEM Subpoena. To the extent BMW NA does have documents responsive to the Subpoena, they are limited to documents responsive to the downstream discovery requests and pricing requests (i.e. the narrowed requests in Requests No. 4, 5, and 22).

As to downstream discovery, the Serving Parties have failed to adequately address the relevance of this information, especially in light of existing discovery orders in this case. As discussed in detail in the SSEs' October 29, 2015 and December 18, 2015 letters to the Serving Parties, the request for downstream discovery conflicts with the clear import of the orders in this case that downstream information that is not directly tied to component prices "'is irrelevant, not likely to lead to the discovery of relevant information,' and its production would be unduly 'burdensome.'" Dkts. 338, 331, 352, 12-cv-102.

Moreover, to the extent documents responsive to Request Nos. 4, 5, and 22 are obtainable from the Serving Parties, especially the Auto Dealer Plaintiffs, discovery from BMW NA—much less a motion to compel that discovery—is improper.

Even if BMW NA was in possession, custody, or control of additional documents responsive to the Subpoena, the Serving Parties have not met their burden of showing the necessity of this discovery in light of BMW NA's position as an absent class member. "[A] party that seeks discovery from an unnamed, or 'absent,' class member has the burden to show the necessity of the proposed discovery," and therefore, requires them to "affirmatively show that there is a particularized need for such discovery." Dkt. 338, 12-cv-102. The burden of production on BMW NA, includes, but is not limited to, the costs associated with the identification and retrieval of such information, which may be in paper format, archived electronically, or in electronic records that do not contain data or information in the form in which it is sought.

Moreover, assuming *arguendo* that any benefit of a limited BMW NA production to the Serving Parties could be shown, that benefit would, at most, be negligible. BMW NA's market share is exceedingly small, and likely to be within the margin of error for any statistical model the Serving Parties rely on. The burden on BMW NA of responding to the Uniform OEM Subpoena, on the other hand, far outweighs any benefit to be derived by the Serving Parties.

A motion to compel seeking discovery from BMW NA would be without merit. BMW NA is prepared, if necessary (notwithstanding the prior arrangements), to serve objections and responses on the Serving Parties and/or contest a motion to compel, but the reality will not change—BMW NA does not have the vast majority of documents sought in the Subpoena, and the documents it does possess are not relevant and, if sought, should first be sought from parties other than BMW NA.

Sheldon H. Klein, Esq.
January 15, 2016
Page 5

While BMW NA reserves all rights and objections related to the Uniform OEM Subpoena, we would prefer that you afford careful consideration to the foregoing and the earlier communications and hold in abeyance your contemplated efforts with respect to BMW NA.

Very truly yours,


*/s/ Daniel S. Savrin*


Daniel S. Savrin

cc:  Richard Kruger, Esq.
     Bradley Schram, Esq.

# Exhibit 3

# Morgan Lewis

**Daniel S. Savrin**
Partner
+1.617.951.8674
daniel.savrin@morganlewis.com

January 15, 2016

**VIA E-MAIL**

Sheldon H. Klein, Esq.
Butzel Long
41000 Woodward Avenue
Bloomfield Hills, MI  48304

**Re:** *In re Automotive Parts Antitrust Litigation*, 2:12-md-02311
**BMW Manufacturing Co., LLC**

Dear Mr. Klein:

I write in response to your January 13, 2016 letter written on behalf of the Serving Parties in which you reiterate your declaration of impasse and state that you intend to file a motion to compel against almost all of the Specified Subpoenaed Entities (the "SSEs"), including my client, BMW Manufacturing Co., LLC ("BMW Manufacturing").  I wanted to set out some key points about BMW Manufacturing that we have shared with our assigned liaison counsel and that we wanted to make sure were known by the broader group before it undertook what we regard as unwarranted and precipitous motion practice.

As BMW Manufacturing has consistently communicated, and is set out in brief below, BMW Manufacturing's business is limited to the purchase of Components and Assemblies and the assembly of vehicles.  BMW Manufacturing, with limited exceptions, is not in possession, custody, or control of documents concerning the specification and procurement process for Components and Assemblies (including the bases for pricing and supplier selection which, as set out below, is handled by a foreign party), the prices—or bases for the prices—at which the vehicles which BMW Manufacturing assembles are thereafter sold for distribution and sale to dealers and consumers, or the distribution of BMW vehicles in the United States (where the minority of the limited number of vehicles that it assembles are sold).  Of the sixteen (16) document requests that are the subject of the contemplated motion to compel, BMW Manufacturing is not in a position to produce any documents in response to eleven (11) of them.[1]

---

[1] Our review indicates that BMW Manufacturing has not created and does not maintain, or has not located and is not aware of, any documents responsive to the following requests, which the Serving Parties identified as narrowed from the original subpoena in the January 13, 2016 letter: 1(h), 4, 5(d-e), 13, 14, 15, 16, 22, 28, 30, 31, 33, and 34.

**Morgan, Lewis & Bockius LLP**

One Federal Street
Boston, MA  02110-1726
United States

☎ +1.617.341.7700
🖷 +1.617.341.7701

DB3/ 200695956.5

Sheldon H. Klein, Esq.
January 15, 2016
Page 2

To the extent BMW Manufacturing is in possession, custody, or control of any documents related to the limited remaining requests, they predominantly relate to purchase orders for Components and Assemblies without any relation to procurement, selection or pricing decisions, or vehicle costs. Those documents are, *inter alia*:

1. Not statistically relevant because of the limited number of vehicles assembled by BMW Manufacturing, and the even more limited number of those vehicles that are destined for sale in the United States;

2. Not relevant because, as a vehicle assembler, BMW Manufacturing has no information concerning the relationship between the costs of Components and Assemblies and vehicle prices that is the subject matter of this litigation; and

3. Accessible via serving parties (Defendants should have data on Component and Assembly sales), and, as BMW Manufacturing's limited response on one category of Components demonstrates, would be difficult and expensive for BMW Manufacturing to locate and produce given the breadth and timeframe of the requests.

Further, to the extent any relevance could be established for the limited scope of documents that BMW Manufacturing may possess, that relevance is outweighed by the burdens imposed on BMW Manufacturing.

In response to Request No. 27, BMW Manufacturing would be prepared to produce spreadsheets previously produced to the Department of Justice related to its Investigation of Components and Assemblies. That data relates only to the purchase of restraint system components—the only system that was the subject of a production to the Department of Justice and the only system components where BMW is referenced in any of the Department of Justice pleadings and charging documents. BMW Manufacturing did not produce procurement or selection documents as it did not possess them. The data, which due to system restrictions, dates back to 2000, reflects quantity, date, pricing, and supplier information. It took BMW Manufacturing employees, dedicated to the project of collecting this data, months to assemble and produce the referenced data to the Department of Justice. If information on restraint systems took months to collect, information on the extensive list of Components and Assemblies that are the subject matter of the Subpoena will take many more people many more months to collect, at an exceedingly high cost, and would be of minimal relevance for reasons addressed further herein.

BMW Manufacturing undertook to emphasize these points in earlier communications with its assigned liaison and in later group communications sent by Colin Kass of Proskauer Rose LLP on behalf of the SSEs. Below is a brief factual overview of BMW Manufacturing affirming both the points set out above and the information communicated previously.

### *Overview of BMW Manufacturing's Scope and Size*

BMW Manufacturing is a limited liability company that operates a motor vehicle assembly plant in South Carolina. The South Carolina plant was opened in 1994 with a limited production of BMW motor vehicles. All of the motor vehicles assembled by BMW Manufacturing are sold to Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), with the majority of those vehicles destined for

Sheldon H. Klein, Esq.
January 15, 2016
Page 3

ultimate distribution outside the United States.  BMW Manufacturing's business is limited to the assembly of motor vehicles and sale of those vehicles to BMW AG.  BMW Manufacturing has no business operations with respect to the distribution, sale, marketing or financing of BMW motor vehicles to distributors or consumers either within or outside the United States.

The vehicles assembled by BMW Manufacturing have always been designed by BMW AG in Germany.  While, in its early years, BMW Manufacturing played a limited role with respect to the selection of suppliers for some of the Components and Assemblies incorporated into vehicles that BMW Manufacturing assembled, in later years, BMW AG assumed responsibilities for the overall selection of, and procurement processes for, Component and Assemblies for BMW motor vehicles manufactured by BMW Manufacturing and other manufacturing facilities.  In the later years, the procurement process for selecting suppliers of Components and Assemblies, and the negotiation of terms and conditions for their purchase, was conducted by BMW AG in Germany.  BMW Manufacturing's role was limited to purchasing the designated Components and Assemblies at prices determined or directed by BMW AG from suppliers pre-selected by BMW AG.

In the ordinary course of business, BMW Manufacturing does not receive information on BMW AG's procurement process, including its negotiations, its bases for pricing decisions, or its bases for supplier decisions.  The information BMW Manufacturing does have on Components and Assemblies, therefore, is almost exclusively limited to information contained on purchase orders issued by BMW Manufacturing, including the supplier, quantity, price of a Component or Assembly—information that is also accessible from suppliers of Components and Assemblies to BMW Manufacturing.

The volume of vehicles assembled by BMW Manufacturing has always been limited, and represents only a small fraction of the vehicles assembled in the United States.  Historically and currently, approximately 50% to 70% of the vehicles that BMW Manufacturing assembles are assembled for distribution outside the United States.

For example, in 1996, BMW Manufacturing assembled approximately 51,301 vehicles.  Of those vehicles, only 24,534 or 48% were destined for distribution in the United States, representing approximately 16/100 of 1% of all vehicles sold in the United States.  In 2000, BMW Manufacturing assembled approximately 83,672 vehicles.  Of those vehicles, only 47,638 or 57% were destined for distribution in the United States, representing approximately 27/100 of 1% of all vehicles sold in the United States.  In 2009, BMW Manufacturing assembled approximately 123,054 vehicles.  Of those vehicles, only 33,354 or 27% were destined for distribution in the United States, representing approximately 20/100 of 1% of all vehicles sold in the United States.  In 2015, following a recent plant expansion, BMW Manufacturing assembled approximately 400,904 vehicles.  Of those vehicles, only 119,648 or 30% were destined for distribution in the United States, representing approximately 68/100 of 1% of all vehicles sold in the United States.

BMW Manufacturing has no information on the distribution and sale of BMW vehicles in the United States (e.g., pricing, pricing decisions, terms and conditions of sale, number of vehicles sold, financing, dealer sales and relationships) that occurs, outside of BMW Manufacturing's purview, after BMW AG purchases the assembled vehicles.

* * *

Sheldon H. Klein, Esq.
January 15, 2016
Page 4

As a result of BMW Manufacturing's limited operations, BMW Manufacturing does not, with very limited exceptions, create or maintain the types of documents sought in the Uniform OEM Subpoena. To the extent BMW Manufacturing may have documents responsive to the Subpoena, they are limited to: Component and Assembly purchase information responsive to Request No. 1 (excluding information on procurement, pricing, and supplier decisions); purchase orders and related documents responsive to Request No. 3; production dates for vehicles assembled by BMW Manufacturing responsive to Request No. 5 (a-c); limited information on Annual Price Reductions issued to suppliers or manufacturers of Components or Assemblies responsive to Request No. 23; and spreadsheets previously produced to the Department of Justice responsive to Request No. 27.

Even if BMW Manufacturing is in possession, custody, or control of any of the documents listed above that are responsive to the Subpoena, the Serving Parties have still not met their burden of showing the necessity of this discovery in light of BMW Manufacturing's position as an absent class member. "[A] party that seeks discovery from an unnamed, or 'absent,' class member has the burden to show the necessity of the proposed discovery," and therefore, requires them to "affirmatively show that there is a particularized need' for such discovery." Dkt. 338, 12-cv-102.

The burden of production on BMW Manufacturing, includes, but is not limited to, the costs associated with the identification and retrieval of such information, which may be in paper format, archived electronically, or in electronic records that do not contain data or information in the form in which it is sought. The exceedingly high burden is borne out by the time and effort it took BMW Manufacturing to produce data on restraint system components to the Department of Justice, as detailed above.

Moreover, assuming *arguendo* that any benefit of a limited BMW Manufacturing production to the Serving Parties could be shown, that benefit would, at most, be negligible. BMW Manufacturing assembles a relatively small number of vehicles in the United States, and in 2015, 70% of those vehicles were destined for distribution outside of the United States. In prior years, when BMW Manufacturing assembled fewer total vehicles, the number of vehicles destined for distribution outside the United States was approximately 50% or greater. BMW Manufacturing's resultant United States market share, therefore, has always been exceedingly small, and likely to be well within the margin of error for any statistical model the Serving Parties rely on. The burden on BMW Manufacturing of responding to the Uniform OEM Subpoena, on the other hand, far outweighs any benefit to be derived by the Serving Parties.

A motion to compel seeking discovery from BMW Manufacturing would be without merit. BMW Manufacturing is prepared, if necessary (notwithstanding the prior arrangements), to serve objections and responses on the Serving Parties and/or contest a motion to compel, but the reality will not change—BMW Manufacturing does not have the vast majority of documents sought in the Subpoena, and the documents it does possess are not relevant and, if sought, should first be sought from parties other than BMW Manufacturing.

While BMW Manufacturing reserves all rights and objections related to the Uniform OEM Subpoena, we would prefer that you afford careful consideration to the foregoing and the earlier communications and hold in abeyance your contemplated efforts with respect to BMW Manufacturing.

Sheldon H. Klein, Esq.
January 15, 2016
Page 5

Very truly yours,

*/s/ Daniel S. Savrin*

Daniel S. Savrin

c:   Richard Kruger, Esq.
     Bradley Schram, Esq.