# EXHIBIT 43

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

--------------------------------------- X
:
In Re: AUTOMOTIVE PARTS :
ANTITRUST LITIGATION :
:
_____ :
:
ALL PARTS : Case No.: 12-MD-02311
: Honorable Marianne O. Battani
_____ :
:
THIS RELATES TO: ALL CASES :
:
_____ :
:
:

## DECLARATION OF HYUNDAI CAPITAL AMERICA IN SUPPORT OF OPPOSITION TO THE PARTIES' MOTION TO COMPEL BY NON-CORE SSE

I, Kimberly Ebright, hereby declare under penalty of perjury as follows:

1. I am employed as the Legal & Compliance/Director for Records & Information Management and Policy & Procedure Management of Hyundai Capital America ("HCA"). The facts set forth herein are based on information and belief and my personal knowledge.

2. I have reviewed the subpoena served on HCA. I have also reviewed the Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers.

3. These requests are incredibly broad in both burden and scope. During my time with HCA, I have never been asked to produce documents anywhere close to the scope requested here. Compliance with the requests would take many months, would require hundreds or thousands of employee hours, and would substantially interfere with our business duties and operations.

4. HCA's primary business is providing indirect vehicle financing and leasing solutions for Hyundai and Kia vehicles to consumers in the United States.

5. HCA currently does business with approximately 1,600 Hyundai and Kia Dealers nationwide.

6. As a financer of vehicles, HCA is in no way involved with the purchase or pricing of vehicle parts or components.

7. Two of HCA's main types of financing are: floor plan financing to the dealerships for the purchase of vehicles from distributors, and indirect financing for consumer purchases or leases of vehicles from the dealership. In both instances, the vehicle has already been priced without any input from HCA.

8. For floor plan financing, a form of a line of credit to dealerships, HCA receives information regarding 1) the VIN, 2) the date and amount of the draft on the line of credit, 3) identification of the dealer making the vehicle purchase, and 4) the purchase price /invoice amount paid by the dealer.

9. The information HCA receives as part of its floor plan financing business does not include the purchase price paid by the end-customer and does not include the price paid by the distributor.

10. For floor plan financing, the vehicle is sold directly to the dealer and HCA does not receive any manufacturer invoice or sales documents reflecting the transaction between the dealer and the distributor.

11. HCA does not automatically match its floor plan financing information with its consumer retail financing or leasing information. For each vehicle financed by HCA under a dealer floor plan, HCA would need to query each specific VIN to both its retail and lease

systems. HCA does not normally conduct such matching and would need to develop specialized programming or queries in order to attempt such a task.

12. For consumer financing of Hyundai and Kia vehicles, HCA would only have information relating to retail installment sale contracts ("RIC") and leases which were assigned by a dealership to HCA. In other words, not all vehicles financed under a dealer floor plan line of credit would be financed by HCA through its consumer indirect financing business. Dealerships may assign such financing contracts to other financial institutions or engage in a cash transaction with the consumer – all of which HCA would not have receive any information.

13. For HCA's portfolio of RICs and leases, which currently consists of approximately 1.5 million open accounts, HCA would need to design a specialized query of all accounts, over two different origination systems in order to match a VIN from its floor plan business. HCA would then need to perform additional specialized queries in order to determine whether a cash sale price (or leasing equivalent) exists for each VIN. If there is no match, HCA would need to manually review scanned documentation of each individual transaction to identify the disclosed cash sales prices of a vehicle on a RIC or lease contract. Because HCA has not previously conducted this type of search, HCA would still have to validate that this data exists and conduct quality control measures to ensure the integrity of the pricing information.

14. HCA estimates that there are over 1.5 million live accounts which would require this type of search. And, for the time period requested by the Parties, would include closed accounts, which would drastically increase the total number of accounts needing review.

15. The dealerships should also retain copies of all consumer financing documents, including those for transactions assigned to HCA.

3

16. Additionally, HCA has approximately 23,297 boxes in storage containing physical documents that could be related to this matter.

17. There are approximately 1,083 boxes that would apply to floor plan financing generally. HCA would have to manually review each box simply to see what type of information was included inside.

18. Generally, for at least the most recent dates, HCA believes they would include the daily balancing documents. This includes information regarding what amount is drafted by the distributor from the dealership's line of credit, what amount is paid off by the dealership, and the balance of the general ledger. Again, such information has no bearing on component costs and prices.

19. Additionally, HCA has approximately 22,214 boxes in storage that contain customer financing documents hard copy contracts.

20. The estimated price to simply have these 23,297 boxes pulled from storage, staged for review and refiled would be about $194,000.00. This cost includes a vendor pulling and refiling 750 boxes a day for 8 hours each day for a total of 32 days. This would have to be done on an expedited basis as 250 boxes per day is the normal rate. The vendor would pull the boxes stored at their facilities, stage them for review by HCA, and refile them once the review is completed.

21. The approximate $194,000.00 cost does not include the cost of anyone actually opening up the boxes, identifying what is inside or reviewing them. This cost does not include the man hours and expense of review, copying, organizing or bates labeling. This is only the cost to stage the boxes for review and also does not include the cost to search for or pull electronic financing documents.

4

22. The burden imposed by the subpoena would require HCA to search for and compile almost every piece of data for every new vehicle financed for over 23 years.

23. HCA estimates that there are approximately 400,000 Hyundai/Kia vehicles floor plan financed last year alone (figure excludes customer financing).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of February, 2016 at 10:30 am.

Kimberly Ebright

5