# EXHIBIT 72

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In Re: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

ALL PARTS

THIS RELATES TO: ALL CASES

Case No.: 12-MD-02311
Honorable Marianne O. Battani

# DECLARATION OF MICHAEL LOVATI IN SUPPORT OF VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS, LLC's OPPOSITION TO MOTION TO COMPEL

I, Michael Lovati, hereby declare under penalty of perjury as follows:

1. I am employed as the General Manager of Commodities Purchasing for Volkswagen Group of America Chattanooga Operations, LLC ("VWOC"). In my current role, I am responsible for purchasing of commodities (Interior, Exterior and Electric) at VWOC. Unless otherwise noted, the facts set forth herein are based on my personal knowledge. I have been employed by VWOC in that position since April, 2015.

2. I have reviewed the subpoena served on VWOC. I have also reviewed the Parties' "Motion to Compel Discovery from Non-Party Original Equipment Manufacturers" ("P. Br."). I understand the serving Parties seek information in response to the following requests: 1(a)-(g), (l), (m); 3; 4(a)(1)-(2); 4(a)(3)(a)-(e), (h), (k); 4(a)(4), (7), (8), (13); 4(b), (e), (h), (j); 5; 13; 14(c); 15; 16; 22; 23(2); 28 (last two sentences); 30; 33; and 34. *See* P. Br. at 2, n. 6.[1]

---

[1] I also understand that certain Plaintiff Parties have filed a separate "Motion to Compel Discovery from Non-Party Original Equipment Manufacturers," seeking documents in response to Requests 27 and 31 ("P. Br. II"). Request 27 seeks "documents, data and information produced to governmental authorities regarding the alleged conspiracy

3. VWOC operates an assembly plant in Chattanooga, Tennessee, where it assembles the Volkswagen Passat for sale in the United States and elsewhere. Passats assembled in Chattanooga are available in nine (9) different trim levels. The Chattanooga Plant, which is the only Volkswagen manufacturing plant in the United States, did not produce its first vehicle for sale until 2011.

## I. Overall Breadth of the Subpoena

4. These requests are incredibly broad in both burden and scope. The subpoena seeks, among other things: (a) all of our purchasing records concerning all of the various parts, Components and/or Assemblies identified in the subpoena; and (b) data, agreements, correspondence and other documents concerning all of our suppliers and potential suppliers of those parts, Components and Assemblies for a period from the very beginning of the Chattanooga Plant until 2015. Gathering that information would require search and review of data and documents from at least five (5) different departments, approximately ten (10) different data systems and more than 100 document custodians. VWOC has only two attorneys and one paralegal to manage all of the data and document gathering efforts required to respond to the subpoena -- in addition to their regular day-to-day duties and responsibilities.

5. I estimate that providing responsive information for just *one* of the components identified in the subpoena would likely take hundreds of hours of employee time in order to: (i) identify the specific part(s) at issue within each of our relevant purchasing, finance, logistics, assembly, IT, engineering, and sales databases for each of the nine (9) Passat trim levels; (ii) prepare reports and trace information for each of the nine (9) Passat trim levels from system to system; (iii) attempt to trace the component through the supply chain to installation in the vehicle

---

described in Plaintiffs' Complaints relating to parts installed in new vehicles for sale or lease in the U.S." P. Br. II at 1. Request 31 seeks documents relating to "communications between the OEMs and the Defendants or other parts suppliers regarding the parts conspiracy." *Id.* at 11.

2

for each of the nine (9) Passat trim levels; (iv) identify and interview relevant employees to determine location of any existing custodian information; and (v) search for, store, review and produce the responsive information. Multiplied by the numbers of component parts that VWOC purchases specifically for the Passat, the demands imposed on VWOC by the Parties' subpoena quickly become unrealistic, if not impossible, and that is before even considering the substantial volumes of information that would have to be gathered about most of the more than 500,000 vehicles assembled at the Plant since 2011.

6. To the extent that VWOC has purchased parts, Components or Assemblies from any of the Defendants, the Parties should already have access to that information through party discovery from those Defendants. Likewise, to the extent that any of the Defendants participated in any VWOC RFQ process, they should have the information about VWOC's RFQ process and their participation in it. The Parties do not need information from VWOC to determine which parts, Components or Assemblies purchased by VWOC were used in which vehicle models because VWOC produces only the Passat model. Consequently, any parts, Components or Assemblies purchased by VWOC are for use only in that single model.

7. The Parties seek compliance with 35 requests (including subparts) relating to upstream purchasing information of the components at issue.[2] Specifically, the subpoena requests upstream purchasing information relating to 29 listed categories of component parts and assemblies (although certain categories include multiple parts, bringing the actual total to more than 50).

---

[2] The upstream purchasing requests include 1(a), 1(b), 1(c), 1(d)(1), 1(d)(2), 1(d)(3), 1(e), 1(f), 1(g)(1), 1(g)(2), 1(g)(3), 1(g)(4), 1(g)(5), 1(g)(6), 1(g)(7), 1(g)(8), 1(g)(9), 1(g)(10), 1(g)(11), 1(g)(12), 1(g)(13), 1(g)(14), 1(g)(15), 1(g)(16), 1(g)(17), 1(g)(18), 1(g)(19), 1(l), 1(m), 3, 14(c), 23(2), 28 (1st two sentences), 30 and 33.

3

### A. Upstream Data

8. At least 9 requests in the subpoena seek transactional data relating to the purchase of the identified components.[3] Each of the identified components has its own definition in the subpoena.

9. However, the classifications the Parties have used in the Subpoena, do not necessarily correspond with the classification systems used by VWOC in the ordinary course of business. We would have to devote hundreds of hours just cross-referencing the requests (and the definitions of relevant components) in the subpoena to the classifications used by VWOC in its purchasing and other systems. For example, a simple component like a "seat belt" may have dozens of different part numbers assigned to it, due to variations like color or seat location, or to changes in specifications over time. One cannot gather all relevant information simply by plugging "seat belt" into a single computer system.

10. We would first need to identify all the product codes at issue. We would have to run reports for each of the approximately 140 defendant entities and review them to determine which product codes fell within the scope of the subpoena. Some of these may have changed over time, so additional time would be needed to identify and align these codes and systems. We would then need to run reports on each product code, identifying any non-defendant supplier who supplied products for each such product code. We would then need to determine which, if any, additional product codes those non-defendant suppliers sold to VWOC. Then, we would need to determine which of those additional codes fell within the definition of a relevant Component or Assembly. Then we would need to run those additional product codes to see if additional firms were selected. This initial process could take several weeks of employee time.

---

[3] See Requests 1(a), 1(b), 1(c), 1(d)(1), 1(d)(2), 1(d)(3), 1(e), 1(f), 1(m).

11. After this, we would still need to run reports to extract relevant purchasing information. This process is also more difficult than it seems, since it would require tracing component purchases across multiple systems, including purchasing, accounts payable and other databases. Simply obtaining upstream purchasing information – and ignoring the task of tracing that product through the manufacturing process and to delivery of a finished vehicle to the dealer – would take hundreds of hours of employee time.

12. The Parties already should have information about any purchases that VWCO has made from the Defendants, as well as any RFQs in which they have participated. However, I understand that the Parties also are seeking information about Components and Assemblies that VWOC may have purchased from non-defendant suppliers, but they have not provided any information about which non-defendant suppliers they claim are relevant to their analyses.

13. I also understand that although the Defendants have information concerning the price, quantity, and costs of the parts they sold to VWOC, they claim to need additional information from VWOC because they lack the internal product codes or part numbers that VWOC uses. But as discussed above, just identifying the product code is a time and resource intensive process. It is also not a particularly useful piece of information unless it links to information in other systems, a process which would take many additional hours of time.[4] In any event, they do not need this information to tie a component to a particular vehicle model because VWOC assembles only the Passat -- and it purchases only parts that are unique to that model.

---

[4] The purchase orders that VWOC issues contain part number information. Thus, the defendant suppliers do have access to this information.

### B. Upstream Documents

14. Many requests in the subpoena seek custodian documents relating to the purchase of components or assemblies.[5] In light of the (document and data) purchasing information that already is in the Parties' possession, such information is unlikely to provide significant additional benefit to the Parties and would impose an unreasonable and unrealistic burden on VWOC.

15. The upstream purchasing documents likely would concern information relating to the specific RFQs that VWOC has issued or agreements that it has entered into since the Chattanooga Plant opened.[6] Defendant suppliers are likely to have substantial information about RFQs that VWOC has issued and agreements that VWOC has entered into with such suppliers, regardless of whether the defendant supplier won the contract or simply participated in the RFQ.

16. Even if VWOC possessed non-cumulative or non-duplicative purchasing information, searching for and producing such information would be an enormous task. To produce such information, we would first need to identify each of the employees involved in any aspect of the purchasing process. Given the sheer number of parts at issue, and the length of time covered by the case, it would require a significant amount of time simply to identify a manageable universe of potential document custodians.

### II. Motion of Certain Plaintiffs Re Requests 27 and 31

17. Certain Plaintiffs have filed a separate motion to compel, seeking responses to Request Nos. 27 and 31. As set forth below, VWOC does not have information or documents responsive to those requests.

18. On its face, Request 27 seeks all information submitted to any regulatory or governmental authority anywhere in the world over the last 23 years, and is not limited to

---

[5] Requests 1(g)(1-19), 1(l), 3, 14(c), 23(2), 28, 39, 33 seek upstream purchasing information.
[6] See Request 1(g), 3, 14(c), 23(2), 30.

information submitted in connection with any alleged price-fixing. However, I understand that the Parties in their motion to compel have confined this request to "documents, data and information produced to governmental authorities regarding the alleged conspiracy described in Plaintiffs' Complaints relating to parts installed in new vehicles for sale or lease in the U.S." P. Br. II at 1. VWOC did not produce any such documents to DOJ or any other agency and, therefore, has no documents responsive to this request.

19. Certain Plaintiff Parties stated in their Motion to Compel that Request 31 seeks documents relating to "communications between the OEMs and the Defendants or other parts suppliers regarding the parts conspiracy." To the best of my knowledge, the Defendants have not communicated with VWOC about their conspiracy, and VWOC does not have documents that would be responsive to this Request.

20. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19 day of February, 2016 at Chattanooga.

_____
Michael Lovati