# EXHIBIT 73

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------X
:
In Re: AUTOMOTIVE PARTS :
ANTITRUST LITIGATION :
:
_____ :
:
ALL PARTS : Case No.: 12-MD-02311
: Honorable Marianne O. Battani
_____ :
:
THIS RELATES TO: ALL CASES :
:
_____ :

**DECLARATION OF BRENT HINSON IN SUPPORT OF
VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS, LLC's
OPPOSITION TO MOTION TO COMPEL**

I, Brent Hinson, hereby declare under penalty of perjury as follows:

1. I am employed as the General Manager, Corporate Controlling and Accounting for Volkswagen Group of America Chattanooga Operations, LLC ("VWOC"). I have been employed by VWOC since October 2009. In my current role, I am responsible for Finance, which encompasses Financial Planning, Accounting, Controlling, Compliance, Customs, Tax and Treasury functions that relate to VWOC. Unless otherwise noted, the facts set forth herein are based on my personal knowledge.

2. I have reviewed the subpoena served on VWOC. I have also reviewed the Parties' "Motion to Compel Discovery from Non-Party Original Equipment Manufacturers" ("P. Br."). I understand the serving Parties seek information in response to the following requests: 1(a)-(g), (l), (m); 3; 4(a)(1)-(2); 4(a)(3)(a)-(e), (h), (k); 4(a)(4), (7), (8), (13); 4(b), (e), (h), (j); 5; 13; 14(c); 15; 16; 22; 23(2); 28 (last two sentences); 30; 33; and 34. *See* P. Br. at 2, n. 6.[1]

---

[1] I also understand that certain Plaintiff Parties have filed a separate "Motion to Compel Discovery from Non-Party Original Equipment Manufacturers," seeking documents in response to Requests 27 and 31 ("P. Br. II"). Request 27

3. VWOC operates an assembly plant in Chattanooga, Tennessee, where it assembles the Volkswagen Passat for sale in the United States and elsewhere. Passats assembled in Chattanooga are available in nine (9) different trim levels. The Chattanooga Plant, which is the only Volkswagen manufacturing plant in the United States, did not produce its first vehicle for sale until 2011. The number of Passats assembled at the Chattanooga Plant each year since 2011 is set forth in the attachment to this Declaration, along with the number assembled for sale in the United States. VWOC's only operations are in Chattanooga, Tennessee. It does not regularly transact business in Burlingame, California.

4. The subpoena seeks, among other things: (a) detailed information concerning most of the more than 500,000 vehicles assembled at the Chattanooga Plant since it opened; and (b) sales records for every one of those vehicles that was sold in the United States. Gathering that information would require search and review of data and documents from at least four (4) different departments, eight (8) different data systems and approximately 50 to 100 document custodians. VWOC has only two attorneys and one paralegal to manage all of the data and document gathering efforts required to respond to the subpoena -- in addition to their regular day-to-day duties and responsibilities.

5. Passats assembled at the Chattanooga Plant that are to be sold in the United States are sold by VWOC solely to Volkswagen Group of America, Inc. ("VWGoA"). VWOC does not set the prices for the subsequent sale by VWGoA to dealers or for the subsequent sale by dealers to end purchasers. Unlike VWOC, the dealer plaintiffs have information about the prices they paid for their vehicles and other aspects of the relationship between VWGoA and the

---

seeks "documents, data and information produced to governmental authorities regarding the alleged conspiracy described in Plaintiffs' Complaints relating to parts installed in new vehicles for sale or lease in the U.S." P. Br. II at 1. Request 31 seeks documents relating to "communications between the OEMs and the Defendants or other parts suppliers regarding the parts conspiracy." *Id.* at 11.

dealers, and they also have information about the prices at which they sold those vehicles to end purchasers.

6. The Parties seek compliance with 28 requests relating to the (i) financial performance of VWOC; (ii) the manufacture, distribution, and sale of vehicles; and (iii) the resale of those vehicles by dealers.[2]

7. The subpoena seeks information which appears geared toward an attempt to trace a particular price-fixed component to a specific vehicle. While there may be some parts, relating to specific safety components, for which such tracing can be done with sufficient effort, there is no manageable way to do this for other parts. It would require hundreds, if not thousands of hours, of investigation time to identify by VIN number the specific vehicles that contain each part. Moreover, the sheer volume of information that would have to be gathered, stored, reviewed and produced to trace each part through purchase, production and assembly into a finished vehicle for nearly 500,000 vehicles would be exceptionally burdensome for VWOC.

8. The Parties contend that they need this information to determine which parts were used in which vehicle models. However, VWOC assembles only the Passat. Thus, to the extent that the defendants participated in any RFQ or sold any Component or Assembly to VWOC, they know that the part was intended for or was assembled into a Passat.

---

[2] The downstream sales requests include: 4(a)(1), 4(a)(2), 4(a)(3)(a), 4(a)(3)(b), 4(a)(3)(c), 4(a)(3)(d), 4(a)(3)(e), 4(a)(3)(h); 4(a)(3)(k); 4(a)(4); 4(a)(7), 4(a)(8), 4(a)(13), 4(b), 4(e), 4(h), 4(j), 5(a), 5(b), 5(c), 5(d), 5(e), 13(a), 13(b), 15, 16, 22, and 34. These requests include, among other things, the date of vehicle sale, purchaser contact information, model, model year, VIN number, invoice price, invoice date, invoice number, sale price, price adjustments, dealer holdback, quantity sold, financing terms, MSRP, terms and conditions, transaction numbers, insurance terms, warranty terms, associated incentives payments or bonuses, direct and indirect cost of each vehicle, production dates, floor plan financing and terms, vehicle trade-ins, trade-in mileage, trade-in VIN, trade-in model, sales tax, fees, incentives, subsidies, rebates, bonuses, service agreements, fixed and variable cost of goods sold, cost of each part or component in the vehicle, overhead costs, manufacturing costs, marketing costs, distribution costs, gross profit, operating profit, and projected profit. The subpoena also requests policies, procedures, standards, methods, standards, decision-making, guidelines, factors, and reasons for determining, setting or prices; studies, analyses, research, and evaluations of vehicle markets and competitive conditions; studies, reports, analyses, procedures, research, or evaluations concerning the extent if any that changes in costs relate to the manufacture, sale, and price of new vehicles; and it requests all communications with dealerships regarding price.

3

9. A number of requests focus on the relationship between VWOC and automobile dealers. As an initial matter, it should be noted that these requests seek information that should be in the possession of the dealer plaintiffs themselves. In any event, VWOC does not sell vehicles to dealers. Dealer relations and sales are handled through VWGoA, which I understand has received a separate subpoena from the Parties.

10. A number of the requests seek information concerning the relationship between dealers and their customers. This includes information about the final transaction price between the dealer and its customer, including trade-in allowances (and information about the used cars bought by the dealer), ancillary services, terms of any leases, terms of any warranties or insurance, and financing charges. As set forth above, VWOC does not sell vehicles to dealers and does not receive sales information from dealers. Consequently, for many requests, VWOC simply does not possess the relevant information.

11. Certain Plaintiffs have filed a separate motion to compel, seeking responses to Request Nos. 27 and 31. As set forth below, VWOC does not have information or documents responsive to those requests.

12. On its face, Request 27 seeks all information submitted to any regulatory or governmental authority anywhere in the world over the last 23 years, and is not limited to information submitted in connection with any alleged price-fixing. This would include safety, fuel economy, products liability, and other investigations that have no bearing on the issues in this case. However, I understand that the Parties in their motion to compel have confined this request to "documents, data and information produced to governmental authorities regarding the alleged conspiracy described in Plaintiffs' Complaints relating to parts installed in new vehicles

4

for sale or lease in the U.S." P. Br. II at 1. VWOC did not produce any such documents to DOJ or any other agency and, therefore, has no documents responsive to this request.

13. The Certain Plaintiff Parties stated in their Motion to Compel that Request 31 seeks documents relating to "communications between the OEMs and the Defendants or other parts suppliers regarding the parts conspiracy." To the best of my knowledge, the Defendants have not communicated with VWOC about their conspiracy, and VWOC does not have documents that would be responsive to this Request.

14. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18 day of Feb, 2016 at CHATTANOOGA TN.

Brent Hinson

5

## PRODUCTION OF VOLKSWAGEN PASSATS
## AT CHATTANOOGA PLANT

| Year | Production | Exports | U.S. |
| --- | --- | --- | --- |
| 2011 | 39,960 | 6,410 | 33,550 |
| 2012 | 152,712 | 20,992 | 131,720 |
| 2013 | 132,132 | 20,263 | 111,896 |
| 2014 | 117,001 | 22,757 | 94,244 |
| 2015 | 86,344 | 18,181 | 68,163 |