# EXHIBIT 74

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------X
:
In Re: AUTOMOTIVE PARTS :
ANTITRUST LITIGATION :
:
_____ :
:
ALL PARTS : Case No.: 12-MD-02311
: Honorable Marianne O. Battani
_____ :
:
THIS RELATES TO: ALL CASES :
:
_____ :
:
:

**DECLARATION OF DAVID RANDS IN SUPPORT OF**
**VOLKSWAGEN CREDIT INC.'S OPPOSITION TO MOTION TO COMPEL**

I, David Rands, hereby declare under penalty of perjury as follows:

1. I am employed as the Executive Vice President and Chief Financial Officer of Volkswagen Credit, Inc. ("VCI"). I have been employed by VCI since January, 2002. In my current role, I am responsible for VCI's financial operations and administration. Unless otherwise noted, the facts set forth herein are based on my personal knowledge.

2. I have reviewed the subpoena served on VCI. I have also reviewed the Parties' "Motion to Compel Discovery from Non-Party Original Equipment Manufacturers" and supporting memorandum ("P. Br."). I understand the serving Parties seek information in response to the following requests: 1(a)-(g), (l), (m); 3; 4(a)(1)-(2); 4(a)(3)(a)-(e), (h), (k); 4(a)(4), (7), (8), (13); 4(b), (e), (h), (j); 5; 13; 14(c); 15; 16; 22; 23(2); 28 (last two sentences); 30; 33; and 34. *See* P. Br. at 2, n. 6.[1]

---

[1] I also understand that certain Plaintiff Parties have filed a separate "Motion to Compel Discovery from Non-Party Original Equipment Manufacturers," seeking documents in response to Requests 27 and 31 ("P. Br. II"). Request 27 seeks "documents, data and information produced to governmental authorities regarding the alleged conspiracy

3. Although the Parties served VCI with what they referred to as a uniform "OEM Subpoena" and now move to compel discovery "from Non-Party Original Equipment Manufacturers," VCI is not an original equipment manufacturer ("OEM"). It does not manufacture or assemble vehicles, does not purchase parts, Components or Assemblies for installation in new vehicles, and does not sell or distribute new vehicles. Consequently, it does not maintain information on the purchasing of parts, Components or Assemblies for installation in new vehicles. Rather, VCI is one of many competing sources of financing available to dealers and consumers.

4. Although VCI does not have any information about parts purchasing, the subpoena also seeks, among other things, detailed information concerning the wholesale and retail sale or lease of every Volkswagen and Audi sold in the United States since 1992. Thus, VCI would be required to determine: (a) whether it financed the lease or sale of a particular vehicle over a 23-year span; and (b) if so, what responsive information it may have about that vehicle. In addition, the subpoena seeks voluminous information concerning the relationship of VCI and the dealers, including data and documents relating to floor plan financing and other arrangements. However, all of that information should be equally available from the dealers participating in those financing arrangements.

5. Compliance with the OEM subpoena would be extremely burdensome for VCI due to the sheer breadth of the information sought in the subpoena. Searching for responsive information likely would require gathering information from at least 10 different departments, 12 different data systems and more than 80 document custodians within VCI. Then, because of the

---

described in Plaintiffs' Complaints relating to parts installed in new vehicles for sale or lease in the U.S." P. Br. II at 1. Request 31 seeks documents relating to "communications between the OEMs and the Defendants or other parts suppliers regarding the parts conspiracy." *Id.* at 11.

2

particular "caveats" imposed by the Parties, VCI would then have to determine whether and to what extent that information is available from, and being produced by, other subpoenaed entities, such as Volkswagen Group of America, Inc. Contrary to what the Issuing Parties have stated about the size of the OEMs to whom they purported to direct their subpoenas, and the respective legal staffs of such OEMs, VCI is **not** an OEM and has only one attorney to manage all of the data and document gathering efforts required to respond to the subpoena -- in addition to their ongoing day-to-day duties and responsibilities. Thus, VCI likely would be required to outsource this work.

### A. Information Relating to VCI's Operations

6. The parties seek compliance with dozens of requests relating to the (i) financial performance of VCI; (ii) the manufacture, distribution, and sale of vehicles; and (iii) the resale of those vehicles by dealers.[2] These requests are geared to OEMs and have little to do with the business of VCI. For example, Request 4(j) seeks information concerning VCI's "gross profit, profit margin or level, operating profit, projected profit, net profit, and/or profit-and-loss statements." However, this information for VCI has nothing to do with component parts purchasing or new vehicle sales, because VCI does not engage in either of those activities.

---

[2] The downstream sales requests include: 4(a)(1), 4(a)(2), 4(a)(3)(a), 4(a)(3)(b), 4(a)(3)(c), 4(a)(3)(d), 4(a)(3)(e), 4(a)(3)(h); 4(a)(3)(k); 4(a)(4); 4(a)(7), 4(a)(8), 4(a)(13), 4(b), 4(e), 4(h), 4(j), 5(a), 5(b), 5(c), 5(d), 5(e), 13(a), 13(b), 15, 16, 22, and 34. These request includes, among other things, the date of vehicle sale, purchaser contact information, model, model year, VIN number, invoice price, invoice date, invoice number, sale price, price adjustments, dealer holdback, quantity sold, financing terms, MSRP, terms and conditions, transaction numbers, insurance terms, warranty terms, associated incentives payments or bonuses, direct and indirect cost of each vehicle, production dates, floor plan financing and terms, vehicle trade-ins, trade-in mileage, trade-in VIN, trade-in model, sales tax, fees, incentives, subsidies, rebates, bonuses, service agreements, fixed and variable cost of goods sold, cost of each part or component in the vehicle, overhead costs, manufacturing costs, marketing costs, distribution costs, gross profit, operating profit, and projected profit. The subpoena also requests policies, procedures, standards, methods, standards, decision-making, guidelines, factors, and reasons for determining, setting or prices; studies, analyses, research, and evaluations of vehicle markets and competitive conditions; studies, reports, analyses, procedures, research, or evaluations concerning the extent if any that changes in costs relate to the manufacture, sale, and price of new vehicles; and it requests all communications with dealerships regarding price.

7. Similarly, Request 4(h) seeks documents related to direct, indirect, and estimated manufacturing, marketing, distribution, selling, and other costs, both fixed and variable for each vehicle, including parts not at issue in the case, management costs, labor costs, tooling costs, energy costs, sales and marketing costs, leasing costs, and R&D costs. As set forth above, VCI does not manufacture, assemble, distribute or sell new vehicles, so these requests are not relevant to VCI.

**B.  Information Relating to Relations with Dealers**

8. Other requests focus on the relationship between VCI and automobile dealers. As an initial matter, it should be noted that these requests seek information that should be in the possession of the dealer plaintiffs themselves.

9. For example, Request 4(a) seeks information related to non-price elements of the relationship between VCI and dealers, including advertising subsidies, floor-plan assistance, fuel allowance, dealer inspection charges, and any other terms or conditions of the sale. Request 4(e) similarly seeks information concerning "monetary components" beyond unit price, such as for ancillary products and services, and the "value of each such [ancillary] service, benefit, or product." However, VCI does not sell vehicles to dealers and does not maintain this information. To the extent that VCI has any responsive information, with respect to floor plan financing, for example, that information is totally disconnected from any component parts pricing information, and should already be in the possession of dealers who participate in such financing arrangements.

**C.  Information Relating to Dealers' Relationships With Their Customers.**

10. A number of the requests seek information concerning the relationship between dealers and their customers. This includes information about the final transaction price between

the dealer and its customer, including trade-in allowances (and information about the used cars bought by the dealer), ancillary services, terms of any leases, terms of any warranties or insurance, and financing charges. To the extent that VCI has any such information, it would only be where the dealer has reported that information to VCI with respect to a transaction financed by VCI. With respect to those transactions, however, VCI maintains and tracks information about the amount financed, monthly payments, purchased ancillary product(s) (if financed), and the remaining balance due. If information concerning the actual purchase price paid by the consumer is included in any documentation received by VCI from the dealer: (a) the dealer should already have it; and (b) VCI would have to manually retrieve and review the actual physical documentation, and manually extract any data, as well as compile and produce any relevant materials.

## II. Motion of Certain Plaintiffs Re Requests 27 and 31

11. Certain Plaintiffs have filed a separate motion to compel, seeking responses to Request Nos. 27 and 31. As set forth below, VCI does not have information or documents responsive to those requests.

12. <u>Request 27</u>. On its face, Request 27 seeks all information submitted to any regulatory or governmental authority anywhere in the world over the last 23 years, and is not limited to information submitted in connection with any alleged price-fixing. This would include safety, fuel economy, products liability, and other investigations that have no bearing on the issues in this case. However, I understand that the Parties in their motion to compel have confined this request to "documents, data and information produced to governmental authorities regarding the alleged conspiracy described in Plaintiffs' Complaints relating to parts installed in new vehicles for sale or lease in the U.S." P. Br. II at 1. VCI did not produce any such

5

documents to DOJ or any other agency and, therefore, has no documents responsive to this request.

13. Request 31. The Certain Plaintiff Parties stated in their Motion to Compel that Request 31 seeks documents relating to "communications between the OEMs and the Defendants or other parts suppliers regarding the parts conspiracy." As set forth above, VCI is not an "OEM," and to the best of my knowledge, it has not had any communications with the Defendants that would be responsive to this Request.

14. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18 day of February, 2016 at Herndon, VA.

David Rands, EVP & CFO
VW Credit, Inc.