# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BEDFORD NISSAN, INC.<br>18115 Rockside Road<br>Bedford, OH 44146,<br><br>and<br><br>MMN, LLC /dba/ MENTOR NISSAN<br>6960 Center Street<br>Mentor, OH 44060<br><br>and<br><br>MD AUTO GROUP, LLC /dba/ I-90<br>NISSAN<br>5013 Detroit Road<br>Sheffield Village, OH 44070<br><br>and<br><br>NISSAN OF NORTH OLMSTED, LLC<br>28500 Lorain Road<br>North Olmsted, OH 44054<br><br>                Plaintiffs,<br>v.<br><br>NISSAN NORTH AMERICA, INC.<br>c/o Statutory Agent, LexisNexis Document<br>Solutions, Inc.<br>50 West Broad Street, Suite 1800<br>Columbus, OH 43215<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br>**<u>COMPLAINT</u>**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Bedford Nissan, Inc., MMN, LLC /dba/ Mentor Nissan, MD Auto Group, LLC /dba/ I-90 Nissan and Nissan of North Olmsted, LLC, for their Complaint against Nissan North America, Inc. ("NNA" or "Nissan") allege as follows:

## JURISDICTION AND VENUE

1. This Court possesses jurisdiction over this action pursuant to (i) 28 U.S.C. § 1332(a), by virtue of the diversity of the citizenship between Plaintiffs and NNA and the matter in controversy exceeds the $75,000.00, exclusive of interests and costs; and (ii) pursuant to 28 U.S.C. § 1331 because this Court has original jurisdiction of all civil actions arising under the laws of the United States, specifically 15 U.S.C. § 13(a), as amended by the Robinson-Patman Act.

2. This Court has supplemental jurisdiction of all state statutory and common law claims herein pursuant to 28 U.S.C. § 1367, as claims so related to the federal claims that they form a part of the same case and controversy under Article III of the United States Constitution.

3. Venue in this judicial district is proper under 28 U.S.C. § 1391(a) because each of the place of business for each of the Plaintiffs are located in this District and substantial part of the events giving rise to the Plaintiffs' claims occurred in this District. Venue is also proper in this District under 28 U.S.C. § 1391(c) because NNA is subject to personal jurisdiction at the time of the filing of this Complaint and because of its substantial contacts with this District.

## PARTIES

4. Plaintiff Bedford Nissan, Inc. ("Bedford Nissan") is an Ohio corporation and a duly licensed new motor vehicle dealer under the laws of Ohio. Bedford Nissan has its principal place of business at 18115 Rockside Road, Bedford, OH 44146. Bedford Nissan is an authorized

franchisee of NNA. As an authorized franchisee, a seminal purpose of Bedford Nissan is to purchase new motor vehicles from NNA for resale to the public.

5. Plaintiff MMN, LLC /dba/ Mentor Nissan ("Mentor Nissan") is an Ohio limited liability company and a duly licensed new motor vehicle dealer under the laws of Ohio. Mentor Nissan has its principal place of business at 6960 Center St, Mentor, OH 44060. Mentor Nissan is an authorized franchisee of NNA. As an authorized franchisee, a seminal purpose of Mentor Nissan is to purchase new motor vehicles from NNA for resale to the public.

6. Plaintiff MD Auto Group, LLC /dba/ I-90 Nissan ("I-90 Nissan") is an Ohio limited liability company and a duly licensed new motor vehicle dealer under the laws of Ohio. I-90 Nissan has its principal place of business at 5013 Detroit Rd, Village of Sheffield, OH 44054. I-90 Nissan is an authorized franchisee of NNA. As an authorized franchisee, a seminal purpose of I-90 Nissan is to purchase new motor vehicles from NNA for resale to the public.

7. Plaintiff Nissan of North Olmsted, LLC ("Nissan of North Olmsted") is a Delaware limited liability company and a duly licensed new motor vehicle dealer under the laws of Ohio. Nissan of North Olmsted has its principal place of business at 28500 Lorain Rd, North Olmsted, OH 44070. Nissan of North Olmsted is an authorized franchisee of NNA. As an authorized franchisee, a seminal purpose of Nissan of North Olmsted is to purchase new motor vehicles from NNA for resale to the public.

8. Upon information and belief, Defendant NNA was and is a corporation duly organized and existing under the laws of the State of Delaware. NNA has its principal place of business at One Nissan Way, Franklin, Tennessee 37067. NNA is a licensed manufacturer/distributor of new Nissan motor vehicles under the laws of Ohio. NNA sells its

motor vehicle products through a network of authorized franchisees. NNA's brands include Nissan and Infiniti. At all times herein, NNA established the prices for new Nissan motor vehicles it sold to its authorized franchisees. NNA's sale of its motor vehicles are made in interstate commerce among and between the States.

<u>**NATURE OF THE ACTION**</u>

9.    This action derives from NNA's secret and unlawful practice of forming alliances with select preferred dealers and providing them with financial incentive arrangements not reasonably available to all dealers ("Illegal Incentive Program").

10.    According to a recently published article in Automotive News dated February 8, 2016, the Illegal Incentive Program provides sales incentive payments to certain preferred dealers over a number of years. According to Automotive News, a preferred dealer receives annual or quarterly payments for reaching certain sale effectiveness levels, and may also receive initial lump sum payments. In essence, the Illegal Incentive Program permits preferred dealers to effectively purchase and sell new Nissan vehicles at substantially lower prices than non-preferred Nissan dealers. It is unknown how a Nissan dealer qualifies for the Illegal Incentive Program because it is not equally available to all Nissan franchisees.

11.    The Illegal Incentive Program provides preferred dealers with a significant advantage over their non-preferred competitors. NNA's Illegal Incentive Program constitutes patent discrimination and predatory practices against select non-preferred wholesale purchasers in direct competition with preferred purchasers.

12.    NNA's conduct has resulted in substantial damage to Plaintiffs who have been compelled to bring this action setting forth claims under the Robinson-Patman Act (15 U.S.C. §

13(a)), the Dealer Day in Court Act (15 U.S.C. § 1222, *et seq*.), the Ohio Dealer Act (R.C. § 4517.01, *et seq*.) and claims for declaratory judgment.

13. According to Automotive News, the purpose of NNA's Illegal Incentive Program is to transform NNA's dealer network by eliminating intra-brand competition among Nissan dealers in certain markets. NNA wants designated dealers in markets who have 3-5 stores in one market.

14. Specific to the Northeast Ohio market, NNA has unilaterally chosen Bernie Moreno as its "preferred dealer" for the markets, to the detriment of the Plaintiffs. Bernie Moreno operates two Nissan franchises in Northeast Ohio, namely: M6 Motors, Inc. /dba/ Airport Nissan and M14 Motors, Inc. /dba/ Nissan of Streetsboro (the "Preferred Dealerships").

15. Plaintiffs have suffered overt price discrimination and economic injury-in-fact and, upon information and belief, lost retail sales to the Preferred Dealerships and suffered a range of additional direct injuries which derive from the impact of the wholesale price discounts at issue. These direct injuries include, but are not limited to, lost sales, lost service, lost customers, lost profits, lost goodwill, lost reputation, lost allocable new product, and lost business opportunities which directly flow with the sale of new motor vehicles at retail.

16. The Illegal Incentive Program provided to the Preferred Dealerships violates the very essence of the Ohio Dealer Act: fair and equal treatment of all dealers.

## FACTS COMMON TO ALL CLAIMS

17. This action arises out of, among other things, NNA's secret illegal incentive program for certain handpicked preferred dealers, such Bernie Moreno, as reported by Automotive News.

18.     The Illegal Incentive Program is only available to certain preferred dealers, such as the Preferred Dealerships.

19.     The Illegal Incentive Program is secret, and therefore not available to Plaintiffs. NNA executives have acknowledged that it is critical that the Illegal Incentive Program remain top secret because they do not want non-preferred NNA dealers, such as Plaintiffs, learning of the Program.

20.     It is also a secret as to how a dealership qualifies for the Illegal Incentive Program.  Upon information and belief, there are no established criteria to qualify for inclusion in the Illegal Incentive Program, and if such criteria does exist it is unknown to anyone but NNA. In other words, Plaintiffs cannot qualify for the Illegal Incentive Program, and it is therefore, not available to Plaintiffs.

21.     The Plaintiffs first became aware of the Illegal Incentive Program on or about February 8, 2016, when an article was published by Automotive News detailing Bernie Moreno's involvement in the Illegal Incentive Program.

22.     NNA manufactures and/or distributes and sell, among other products, new and unused motor vehicles.

23.     NNA is engaged in interstate commerce in that it sells Vehicles through a network of franchised dealers located in every state throughout the United States.

24.     Each Plaintiff is a franchised NNA dealer engaged in, among other things, the business of purchasing vehicles from NNA and reselling those vehicles primarily to retail purchasers located in the in the Northeast Ohio market.

**Bernie Moreno's Purchase of North Coast Nissan**

25.     Bernie Moreno is the owner/president of Bernie Moreno Companies ("BMC"). BMC owns and operates 31 dealerships in Ohio, Massachusetts, and Kentucky, and Florida, including two (2) Nissan dealerships (Airport Nissan and Nissan of Streetsboro) and three (3) Infiniti dealerships (Airport Infiniti, Infiniti of Akron and Infiniti of Beachwood).

26.     In or about March 2012, M6 Motors, Inc. purchased North Coast Nissan's dealership assets in Middleburg Heights, Ohio.  M6 Motors, Inc. /nka/ Airport Nissan is owned by BMC and/or Bernie Moreno.  Airport Nissan was eventually relocated to Brookpark Road next door to Airport Infiniti.

27.     Upon information and belief, NNA approached and enticed Mr. Moreno to purchase North Coast Nissan's dealership assets by offering him financial incentive arrangements not reasonably available to other Nissan dealers.  On or about March 9, 2012, Mr. Moreno and NNA entered into an "Intervention Agreement" relative to Airport Nissan ("Airport Intervention Agreement"), whereby NNA reportedly agreed to provide Airport Nissan $3.75 million, paid quarterly over five years, should Airport Nissan achieve certain sales performance metrics. Upon information and belief, all payments made by NNA to Airport Nissan pursuant to the Airport Intervention Agreement are "incentive payments" completely contingent upon Airport Nissan selling a certain number of vehicles.

28.     Upon information and belief, Airport Nissan's participation in the Illegal Incentive Program is through the Airport Intervention Agreement.

29.     Plaintiffs Nissan of North Olmsted, I-90 Nissan and Bedford Nissan are the closest and most direct competitors of Airport Nissan.

**Bernie Moreno's Purchase of Classic Nissan**

30.     In or about April 2014, M14 Motors, Inc., purchased Classic Nissan's dealership assets in Streetsboro, Ohio.  M14 Motors, Inc. /nka/ Nissan of Streetsboro is owned by BMC and/or Bernie Moreno.

31.     Upon information and belief, NNA approached and enticed Mr. Moreno to purchase Classic Nissan's dealership assets by offering him financial incentive arrangements not reasonably available to other Nissan dealers.  Upon information and belief, in or about April 2014, Mr. Moreno and NNA entered into an "Intervention Agreement" relative to Nissan of Streetsboro ("Streetsboro Intervention Agreement"), whereby NNA agreed to provide Nissan of Streetsboro an unknown amount of money, paid over an unknown number of years, should Nissan of Streetsboro achieve certain sales performance metrics.  Upon information and belief, all payments made by NNA to Nissan of Streetsboro pursuant to the Streetsboro Intervention Agreement are "incentive payments" completely contingent upon Nissan of Streetsboro selling a certain number of vehicles.

32.     Upon information and belief, Nissan of Streetsboro's participation in the Illegal Incentive Program is through the Streetsboro Intervention Agreement.

33.     Plaintiffs Bedford Nissan and Mentor Nissan are the closest and most direct competitors of Nissan of Streetsboro.

**Illegal Incentive Program**

34.     Under the Illegal Incentive Program, certain preferred Nissan dealers, including, but not limited to the Preferred Dealerships, are provided sales incentives not offered to non-preferred dealers, such as Plaintiffs, resulting in a discriminatory pricing scheme.

35.     The preferred Nissan dealers, including, but not limited to the Preferred Dealerships, are able to effectively purchase and sell new Nissan vehicles at substantially lower prices that those purchased and sold by non-preferred dealers, such as Plaintiffs.

36.     At all times material, NNA, through the Illegal Incentive Program, sold the Preferred Dealerships highly discounted like kind and quality products which move in interstate commerce. The identical products which are substantially discounted by NNA for the Preferred Dealerships, have been simultaneously sold to Plaintiffs over the same time period at a substantially higher wholesale price for resale in the same geographic region and district in which Airport Nissan competes directly against Plaintiffs, and in which Nissan of Streetsboro competes directly against Plaintiffs.

37.     The substantial price difference has endured since at least April 1, 2012.  The price differential has been generally designed by NNA to negatively impact competition in every market, including the Northeast Ohio market, where the Illegal Incentive Program is offered to the Preferred Dealerships and denied to Plaintiffs.

38.     The price differential is specifically designed to substantially impair Plaintiffs' ability to fairly compete against the Preferred Dealerships and transform NNA's dealer network by eliminating intra-brand competition among Nissan dealers in certain markets.  According to Automotive News, in the short term the Illegal Incentive Program is aimed at increasing the U.S. market share of NNA's Nissan and Infiniti brands.

39.     Upon information and belief, the Preferred Dealerships' retail deal files and related records will demonstrate that the wholesale discount at issue is used to significantly reduce retail pricing on new vehicles offered simultaneously for sale by Plaintiffs which

Plaintiffs cannot match except by absorbing losses; to result in lost sales from Plaintiffs to the Preferred Dealerships; to subsidize and discount financing fees and interest rates which Plaintiffs must either refuse to customers or absorb at a loss; to subsidize direct consumer advertising which Plaintiffs must forego; to subsidize consumer value and other costs associated with trade-ins made in conjunction with new vehicle sales which Plaintiffs must either refuse to customers or absorb at a loss; and to enhance new vehicle sales and service profitability which Plaintiffs cannot achieve. The above list is but a partial explanation of the competitive advantages directly associated with NNA's Illegal Incentive Program.

40. As a result of the price discrimination, a preferred dealer can significantly undercut a neighboring or competing non-preferred dealer's prices with no negative impact on its bottom line because at the end of every quarter the preferred dealer will receive a quarterly incentive payment not received by the neighboring or competing non-preferred dealer. For example, the preferred dealer can sell vehicles at a loss in order to achieve whatever performance metric is required by the Illegal Incentive Program, but still end up profitable at the end of a quarter because it met its performance objective and received its incentive payment not received by the neighboring or competing non-preferred dealer.

41. Upon information and belief, although the incentive payments made by NNA to the Preferred Dealerships are labeled as "sales incentives," their dominant nature was to reduce the price that the Preferred Dealerships paid NNA for vehicles.

42. The fact that the Preferred Dealerships are receiving incentives from NNA and Plaintiffs are not has created a difference in the net prices that Plaintiffs and the Preferred

Dealers pay to NNA for vehicles of like grade and quality, with the net wholesale prices that the Preferred Dealers pay being significantly lower than the prices paid by Plaintiffs.

43.     Despite the overt price discrimination and resulting damage to competing dealers, according to Automotive News, NNA believes that "the arrival of a new financially backed dealer doesn't hurt neighboring stores but rather lifts sales for all Nissan or Infiniti retailers in the area."

44.     Further, there are no established criteria to qualify for inclusion in the Illegal Incentive Program.  According to Automotive News, Nissan subjectively looks to partner with dealers "who are true believers in Nissan and Infiniti products, have a knack for driving volume and are eager to beat key rivals Toyota, Honda, Audi, Lexus, BMW and Mercedes-Benz."

45.     For example, based on these criteria, Nissan of North Olmsted and I-90 Nissan dealer-principal Mike D'Amato is better qualified, based on the criteria set forth by NNA in the Automotive News article, than Berne Moreno.  Nissan of North Olmsted is the largest selling Nissan dealer in the State of Ohio and has won NNA's coveted Owner First Award of Excellence eight years in a row, and is the only Nissan dealership to do so.  Moreover, Mr. D'Amato has only two dealerships – both exclusive Nissan dealerships.  On the other hand, Mr. Moreno owns 31 dealerships, including 3 Mercedes-Benz dealerships; one of NNA's identified rivals.

## COUNT 1
## Violation of Robinson-Patman Act, 15 U.S.C. § 13(a)

46.     Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

47.     Plaintiffs have standing to sue under the Robinson-Patman Act, because they have suffered injury-in-fact as a result of NNA's violation of the Act.  Among other things, upon information and belief, Plaintiffs'

48.     NNA is a motor vehicle distributor engaged in the sale of motor vehicles in interstate commerce through motor vehicle dealers franchise by NNA under its dealer agreements.  NNA has sold such motor vehicles to Plaintiffs across state lines and has sold vehicles of the like grade and quality in contemporaneous sales to the Preferred Dealers for lower prices than those charged to Plaintiffs.

49.     NNA's Illegal Incentive Program results in illegal sales whereunder NNA provides sales incentives which effectively and realistically reduce the purchase price of the vehicle to NNA's preferred dealers.

50.     NNA covertly, unilaterally and arbitrarily controls every aspect of qualification, if such exists, for acceptance into its Illegal Incentive Program.  NNA has covertly, arbitrarily and illegally excluded Plaintiffs from the Illegal Incentive Program and will continue to do so.  The Illegal Incentive Program is secret, and thus not available to any of the Plaintiffs. There is no functional availability to Plaintiffs as the same prices paid to NNA by the Preferred Dealerships that are not available to Plaintiffs from a practical standpoint and on equal terms.

51.     Plaintiffs are Nissan motor vehicle dealers and competitors with the Preferred Dealerships on the same functional level who receive price discounts under the Illegal Incentive Program.  NNA has charged Plaintiffs significantly higher prices for similar or identical products than those charged by NNA to the Preferred Dealerships with whom Plaintiffs compete. NNA's

Illegal Incentive Program constitutes discriminatory pricing practices under the Robinson-Patman Act.

52.     The Preferred Dealerships provide no service or savings to NNA which is not provided in-like kind by Plaintiffs.

53.     The commodity at issue is a finished and fully consumable produce.  Lowering the price for such a finished commodity to a preferred dealer results, by definition, in loss profits to non-preferred dealers who lose the direct benefit of the lower purchase price.

54.     The motor vehicles that NNA sells across state lines to Plaintiffs and to the Preferred Dealerships and to other Nissan Dealers with whom Plaintiffs compete are of the same grade and quality.  However, Plaintiffs pay a higher price to NNA for the same make and model of a Nissan motor vehicle than the Preferred Dealerships against whom Plaintiff directly compete.

55.     Since the implementation of the Illegal Incentive Program, there have been substantial sales of illegally discounted vehicles sold by the Preferred Dealerships at illegally discounted prices, that, upon information and belief, resulted in direct losses of sales by Plaintiffs.  The relevant product market is the market for motor vehicles manufactured and sold by NNA to its franchise dealers and, in turn, sold by such dealers to consumers.

56.     With respect to Plaintiffs as a purchaser of new vehicles from NNA, the relevant geographic market is the respective region and district that NNA has established in their Dealer Sales and Service Agreement for the sale of motor vehicles to its dealer body in which Plaintiffs reside.

57.     For Plaintiffs as sellers to consumers of motor vehicles manufactured by NNA, the relevant geographic market is the area in, around and surrounding the Cleveland, Ohio and Akron, Ohio metropolitan markets in which Plaintiffs expressly compete against the Preferred Dealerships and others.

58.     NNA's Illegal Incentive Program favors Preferred Dealerships and is a direct attempt to consolidate its dealer network by economic attrition and constitutes a prohibited affect on conduct of commerce and eliminates any possibility that NNA's substantial price discounts will be available, functionally or otherwise to Plaintiffs.  The Illegal Incentive Program is a secret program not available to Plaintiffs.

59.     The conduct of NNA in devising and implementing the Illegal Incentive Program violates the Robinson-Patman Act, 15 U.S.C. § 13(E) and prevents legitimate and lawful competition.

60.     As a direct and proximate result of NNA's wrongful conduct, Plaintiffs have been damaged and have suffered real and actual injury in fact.  Plaintiffs have lost sales, service, warranty repairs, profits, income, working capital, customers, and goodwill as a result and cannot meet the lower prices the Preferred Dealerships can charge for a new and identical Nissan motor vehicle.

## COUNT 2
## Violation of Ohio Rev. Code § 4517.59(A)(8)

61.     Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

62.     Ohio Revised Code Chapter 4517 concerns, among other things, the relationship between motor vehicle franchisers (manufacturers) and motor vehicle franchisees (dealers) and is

commonly referred to as the Ohio Dealer Act (ODA). The ODA provides statutory protections for motor vehicle franchisees and their dealings with motor vehicle franchisors.

63. Plaintiffs are both "motor vehicle dealer" and "franchisee" within the meaning of the ODA.

64. NNA is both a "manufacturer" and "franchisor" within the meaning of the ODA.

65. Ohio Revised Code §4517.59(A)(8) states in relevant part:

> (A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:
>
> * * *
>
> (8)    Fail or refuse to make equally available to its same line-make franchisees all motor vehicles, motor vehicle parts, or other products manufactured for that line-make at the same actual price, or to utilize any device including, but not limited to, sales promotion plans or programs that result in such lesser actual price. Division (A)(8) of this section shall not apply to sales to a franchisee for resale to any unit of government or donation or use by a franchisee in a driver education program. Division (A)(8) of this section shall not prohibit the offering of incentive programs or other discounts so long as such incentives or discounts are reasonably available to all franchisees in this state on a proportionately equal basis and are based on the sale of individual vehicles and not increased for meeting a performance standard unless the standard is reasonable considering all existing circumstances

66. NNA's bad faith conduct and wrongful acts as set forth above, violates § 4517.59(A)(8).

67. NNA has failed or refused to make equally available to Plaintiffs the Illegal Incentive Program. Further, because the Illegal Incentive Program was secret and only made known and available to the Preferred Dealerships, the Illegal Incentive Program was not available, reasonably or otherwise, to the Plaintiffs.

15

68.     Upon information and belief, all payments made by NNA to the Preferred Dealerships pursuant to the Illegal Incentive Program were solely based on the sale of individual vehicles.

69.     Plaintiffs have been damaged by NNA's violations of § 4517.59(A)(8) of the ODA.

70.     Section 4517.65(A) of the ODA provides that "What a franchisors does, causes, or permits to be done anything prohibited by this Chapter, or fails to perform any duty imposed upon it by this Chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorneys fees."

71.     As a result of NNA's violation of § 4517.59(A)(8), Plaintiffs have sustained and will sustain substantial damages in an amount to be determined at trial.

**COUNT 3**
**Violation of Ohio Rev. Code § 4517.59(A)(1)**

72.     Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

73.     Ohio Revised Code § 4517.59(A)(1) states in relevant part: "Notwithstanding the terms and provisions or conditions of any agreement, franchise or waiver, no franchisor shall: "1. In acting or purporting to act under the terms, provisions, or conditions of a franchise or in terminating, cancelling, or failing to renew a franchise, fail to act in good faith."

74.     Section 4517.59(A)(1) of the ODA provides that "What a franchisors does, causes, or permits to be done anything prohibited by this Chapter, or fails to perform any duty imposed upon it by this Chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorneys fees."

16

75.     NNA's bad faith conduct and wrongful access set forth above, violates §
4517.59(A)(1) of the ODA.

76.     As a result of NNA's violation of § 4517.59(A)(1), Plaintiffs have sustained and
will sustain substantial damages in an amount to be determined at trial.

## COUNT 4
## Violation of Ohio Rev. Code § 4517.59(B)

77.     Plaintiffs hereby restate and incorporate by reference each of the allegations set
forth above as if fully rewritten herein.

78.     Ohio Revised Code § 4517.59(B) states in relevant part:  "(b) No franchisor shall
discriminate among the franchisor's dealers and any program that provides assistance to the
franchisor's dealers, including internet listing, sales leads, warranty and policy adjustments,
marketing programs and dealer recognition programs.  The franchisor shall not require a
franchisee to provide its customer list or service files to the franchisor, unless necessary for the
sale and delivery of a new motor vehicle to a consumer, to validate and pay consumer or dealer
incentives, or for the submission to the franchisor for any services supplied by the franchisee for
any claim, for warranty parts or repairs.  Nothing in this division shall limit the franchisor's
ability to require or use customer information to satisfy any safety or recall notice obligation.

79.     NNA's bad faith conduct and wrongful acts as set forth above, violates
§4517.59(B) of the ODA.

80.     As a result of NNA's violation of § 4517.59(B), Plaintiffs have sustained and will
sustain substantial damages in an amount to be determined at trial.

17

## COUNT 5
### Violation of Ohio Rev. Code § 4517.59(A)(15)

81.    Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

82.    Ohio Revised Code Section 4517.59(A)(15) states in relevant part:

"(A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:

(15) Engage in any predatory practice or discriminate against any new motor vehicle dealer including discriminating against a franchisee, as compared to a same line-make franchisee, with regard to motor vehicle allocation, motor vehicle sales expectations, motor vehicle market penetration, motor vehicle planning volume requirements, customer service satisfaction requirements, dealership facility requirements, or dealer capitalization requirements"

83.    NNA bad faith conduct and wrongful acts as set forth above, violates § 4517.59(A)(15) of the ODA.

84.    Section 4517.65(A) of the ODA provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

85.    Plaintiffs have been aggrieved by NNA's violations of the ODA.

86.    Plaintiffs, pursuant to the ODA are entitled to an award, as against NNA, of necessary costs and disbursements plus a reasonable attorney's fees.

87.    Plaintiffs have and will incur attorneys' fees, costs and expenses in connection with its enforcement of its rights under the ODA for all of which sums, as determined and allowed by the Court, Plaintiffs are entitled to judgment as against NNA.

88.     As a result of NNA's violation of § 4517.59(A)(15) of the ODA, Plaintiffs have sustained and will sustain substantial damages in an amount to be determined at trial.

## COUNT 6
### Violation of the Federal Automobile Dealers Day in Court Act

89.     Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

90.     The Automobile Dealers Day in Court Act ("ADDCA") (15 U.S.C. § 1221, *et seq.*) provides a dealer with a federal cause of action against an automobile manufacturer who has failed to act in good faith regarding a franchise.  Plaintiffs are each an "automobile dealer" within the meaning of § 1221(c) of the ADDCA.

91.     NNA is an "automobile manufacturer" within the meaning of § 1221(a) of the ADDCA.

92.     The Dealer Agreement between NNA and Plaintiffs are each a "franchise" within the meaning of § 1221(b) of the ADDCA.

93.     NNA's bad faith conduct and wrongful acts as set forth above, violate 15 U.S.C. § 1221 *et seq.*

94.     As a result of NNA's violation of 15 U.S.C. § 1221 *et seq.*, Plaintiffs have sustained and will sustain substantial damages in an amount to be determined at trial.

## COUNT 7
### Breach of Dealer Sales and Service Agreement

95.     Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

96.     NNA's conduct violates the express provisions of Plaintiffs' Nissan Dealer Sales and Service Agreements ("DSSA") which prescribe the specific causes for which NNA may seek to terminate Plaintiffs' franchise rights.

97.     By employing a discriminatory pricing scheme, NNA seeks to cause the effective or actual termination of Plaintiffs' franchise rights in order to transform the Nissan dealer network to achieve NNA's goals.

98.     NNA's desire to reconfigure and transform its dealer network to have preferred designated dealers in markets who have three to five stores does not constitute a permissible ground for termination of Plaintiffs' franchise rights.

99.     NNA is in express violation and open breach of its DSSA and has caused Plaintiffs to suffer past, present, and continuing damages.

**COUNT 8**
**Request for Declaratory Judgment**

100.     Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

101.     An actual dispute exists between Plaintiffs and NNA as to their rights and responsibilities.

102.     Plaintiffs request that this Court declare Plaintiffs' rights in the following manner:

A.     Declare that NNA's Illegal Incentive Program violates the Robinson-Patman Act; and

B.     Declare that NNA's Illegal Incentive Program violates Ohio Revised Code §4517.59(A)(8); and

C.   Alternatively, declare that Plaintiffs are entitled to receive the past and present incentives received by the Preferred Dealerships under the Illegal Incentive Program as of the year the Preferred Dealership began participating in the program; and

D.   Declare that Plaintiffs' preclusion from participation in the Illegal Incentive Program is tantamount to constructive termination of each Plaintiffs' franchise.

**COUNT 9**
**Request for Permanent Injunction**

103.   Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

104.   NNA's course of conduct as set forth above is, among other things, in violation of the Robinson-Patman Act, the ODA, and the ADCCA.

105.   In the event that NNA is permitted to continue to implement its illegal and discriminative pricing scheme in such a manner that it's program incentives are not available to Plaintiffs on a proportionately equal basis as they are to the Preferred Dealerships, Plaintiffs will suffer the loss of their entire business, their Dealer Agreements will be terminated, Plaintiffs will go out of business and thus will suffer irreparable injury.

106.   As a direct and proximate result of the forgoing, Plaintiffs are threatened with irreparable harm by the unlawful, discriminatory competitive advantage bestowed upon the Preferred Dealerships and/or other competing Nissan Dealers who are arbitrarily permitted to partake in the Illegal Incentive Program.

107.   Plaintiffs have no adequate remedy at law.

21

108.    Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs are entitled to a permanent injunction and join in restraining NNA from administering its Illegal Incentive Program in such an unlawful and discriminatory manner that its program incentives are not available to Plaintiffs on any level.

## COUNT 10
## Breach of Fiduciary Duty

109.    Plaintiffs hereby restate and incorporate by reference each of the allegations set forth above as if fully rewritten herein.

110.  The Nissan DSSA and resulting franchise relationship (1) place NNA in a position of disproportionate power and dominance over Plaintiffs, (2) require Plaintiffs to provide confidential and propriety information to NNA, creating a confidential relationship, and (3) make Plaintiffs dependent upon NNA for economic survival, forcing Plaintiff to repose special trust and confidence in NNA.

111.  The aforementioned effects of the Nissan DSSA upon the relationship between NNA and Plaintiffs, and also the obligations NNA owe Plaintiffs as a result of the ODA set forth in Ohio Revised Code 4517.01, *et seq*., and federal ADDCA set forth in 15 U.S.C. § 1221, *et seq*., establish a fiduciary relationship between NNA and Plaintiffs by the comprehensive statutory schemes.

112.  The wrongful acts of NNA as more-fully detailed *supra*, constitute a breach of the fiduciary duties NNA owes Plaintiffs.

113.  As a direct and proximate result of NNA's breaches of fiduciary duty, Plaintiffs have been damaged in an amount to be determined at trial of this matter.

WHEREFORE, Plaintiffs, Plaintiffs Bedford Nissan, Inc., MMN, LLC /dba/ Mentor Nissan, MD Auto Group, LLC /dba/ I-90 Nissan and Nissan of North Olmsted, LLC (collectively, "Plaintiffs") demand judgment against Defendant in its favor as permitted by law and equity as follows:

(a)    A declaratory judgment in its favor as follows:

(i) a declaration that NNA's Illegal Incentive Program violates the Robinson-Patman Act; (ii) a declaration that NNA's Illegal Incentive Program violates Ohio Revised Code §4517.59(A)(8); (iii) Alternatively, a declaration that that Plaintiffs are entitled to receive the incentives received by the Preferred Dealerships under the Illegal Incentive Program as of the year the Preferred Dealership began participating in the Illegal Incentive Program; (iv) a declaration that Plaintiffs' preclusion from participation in the Illegal Incentive Program is tantamount to constructive termination of each Plaintiffs' franchise.

(b)    An award of treble damages pursuant to 15 U.S.C. § 15(a) and the award of all compensatory, consequential and exemplary damages allowed by federal or state law with respect to the claims alleged herein which are in excess of $75,000.00;

(c)    An award of double damages pursuant to Ohio Revised Code § 4517.65 and the award of all compensatory, consequential and exemplary damages allowed by state law with respect to the claims alleged herein which are in excess of $75,000.00;

(d)    Permanent injunctive relief;

(e)    An award of pre-judgment and post-judgment interest thereon;

(f)     An award of punitive damages;

(g)     An award of reasonable attorneys' fees and costs pursuant to applicable federal and state law; and

(h)     The granting of such further relief as this Court may deem just and equitable in order to effectuate the rulings and declarations requested above.

Respectfully submitted,

*/s/ Matthew C. Miller*
**ROBERT A. POKLAR (0015685)**
*RPoklar@westonhurd.com*
**MATTHEW C. MILLER (0084977)**
*MMiller@westonhurd.com*
**GARY W. JOHNSON (0017482)**
*GJohnson@westonhurd.com*
**Weston Hurd LLP**
The Tower at Erieview
1301 East 9th Street, Suite 1900
Cleveland, OH  44114-1862
(216) 241-6602 / (216) 621-8369 (fax)
*Counsel for Plaintiffs*

-and-

**Christopher M. DeVito (0047118)**
*chrismdevito@gmail.com*
**Morganstern, MacAdams & DeVito Co., L.P.A.**
623 West Saint Clair Avenue
Cleveland, Ohio  44113-1204
(216) 687-1212 Office / (216) 621-2951 Fax

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues triable thereto.

*/s/ Matthew C. Miller*  
**MATTHEW C. MILLER (0084977)**