# EXHIBIT G

REDACTED

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Fuel Senders Cases |  |
| THIS DOCUMENT RELATES TO: All Automobile Dealer Actions All End-Payor Actions | 2:12-cv-00302 2:12-cv-00303 **ORAL ARGUMENT REQUESTED** |

## DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END PAYORS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE <u>AUTOMOBILE DEALERS' CONSOLIDATED CLASS COMPLAINT</u>

REDACTED

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6), Defendants[1] respectfully move to dismiss all claims in the End Payors' Consolidated Amended Class Action Complaint, (ECF No. 47 in 2:12-cv-00303) ("EP CAC"), and the Dealership Consolidated Class Complaint (ECF No. 40 in 2:12-cv-00302) ("AD CCC"), both filed under seal on April 15, 2013. (The EP CAC and AD CCC are collectively referred to herein as the "Complaints.")  In support of this motion, Defendants state as follows:

1.    Defendants base this motion upon the accompanying memorandum of law in support, oral argument of counsel, and such other and further material as the Court may consider.

2.    As required by E.D. Mich. Local Rule 7.1(a), counsel for Defendants sought concurrence from counsel for Automobile Dealer plaintiffs and counsel for End Payor plaintiffs on August 14, 2013, via telephone conference.  During that call, counsel for Defendants explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought (i.e., dismissal of the Complaints).

---

[1] "Defendants" refers to DENSO Corporation ("DENSO-Japan"), DENSO International America, Inc. ("DIAM" and, collectively with DENSO-Japan, "DENSO"), Yazaki Corporation ("YC") and Yazaki North America, Inc. ("YNA," and collectively with YC, "Yazaki").

REDACTED

Respectfully submitted,

JONES DAY

August 16, 2013    By:    */s/John M. Majoras*
John M. Majoras
Carmen McLean
Kristen A. Lejnieks
Tiffany D. Lipscomb-Jackson
JONES DAY
51 Louisiana Ave. N.W.
Washington, D.C. 20001-2113
Telephone (202) 879-3939
Fax (202) 626-1700
jmmajoras@jonesday.com
cgmclean@jonesday.com
kalejnieks@jonesday.com
tdlipscombjackson@jonesday.com

Michelle K. Fischer
Stephen J. Squeri
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone (216) 586-3939
Fax (216) 579-0212
mfischer@jonesday.com
sjsqueri@jonesday.com

*Attorneys for Defendants Yazaki Corporation and Yazaki North America, Inc.*

REDACTED

WILMER CUTLER PICKERING HALE AND DORR LLP

August 16, 2013     By:     */s/Steven F. Cherry*  (w/consent)
Steven F. Cherry
David P. Donovan
Brian C. Smith
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com
kurt.kastorf @wilmerhale.com

*Attorneys for Defendants DENSO International America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax: (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International America, Inc.*

REDACTED

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Fuel Senders Cases |  |
| THIS DOCUMENT RELATES TO: |  |
| All Automobile Dealer Actions All End-Payor Actions | 2:12-cv-00302 2:12-cv-00303 |
|  | **ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' COLLECTIVE MOTION TO DISMISS THE END PAYORS'
## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND
## THE DEALERSHIP CONSOLIDATED CLASS COMPLAINT

REDACTED

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.    Whether the Court should dismiss the Complaints of the End Payors ("EPs") and Automobile Dealers ("Auto Dealers" or "ADs") in their entirety because they have not satisfied the requirements of *Twombly* to allege facts sufficient to plead a plausible conspiracy.  (ADs and EPs are referred to collectively as "Plaintiffs" or "IPPs.")

2.    Whether the Court should dismiss the Plaintiffs' Complaints in their entirety because Plaintiffs have failed to plausibly allege an injury-in-fact, as required for constitutional standing.

3.    Whether (a) EPs have constitutional standing to assert claims under District of Columbia law, where no EP resides or allegedly suffered injury, and (b) ADs have constitutional standing to assert claims under the laws of Hawaii and North Dakota, where none of the ADs reside or allegedly suffered injury.

4.    Whether the Court should dismiss the Plaintiffs' unjust enrichment claims in their entirety because Plaintiffs have failed to identify the unjust enrichment laws of any particular jurisdiction.

5.    Whether Plaintiffs can maintain unjust enrichment claims under the laws of thirty-one states and the District of Columbia if there are no surviving antitrust or consumer protection claims under the laws of those states.

6.    Whether Plaintiffs who allegedly acquired a Fuel Sender ("FS") solely by purchasing or leasing a vehicle in which the system was just one of over 10,000 components ("Component IPPs") lack antitrust standing to bring their antitrust claims in Arizona, California, the District of Columbia, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

7.    Whether the Component IPPs lack standing to assert consumer protection claims under the laws of Arkansas, New York, and Vermont because their claims are too remote.

8.    Whether, as indirect purchasers, Plaintiffs are barred from bringing suit under Massachusetts and Rhode Island consumer protection laws because Massachusetts and Rhode Island follow *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*"), and bar indirect purchaser claims.

9.    Whether Plaintiffs are barred from maintaining claims as class actions under the antitrust law of Illinois and the consumer protection laws of Montana and South Carolina because the relevant statutes explicitly prohibit such suits.

10.    Whether, as businesses, the ADs are precluded from bringing consumer protection claims under the laws of the District of Columbia and Missouri.

REDACTED

11. Whether Plaintiffs are barred from recovering under the antitrust laws of Hawaii, Nebraska, New Hampshire, and Utah based on alleged anticompetitive conduct that occurred before the date that each of those states passed laws that "repeal" *Illinois Brick*.

12. Whether Plaintiffs' antitrust claims under the laws of the District of Columbia, Mississippi, Nevada, New York, North Carolina, and West Virginia, and consumer protection law claims under the laws of California, Massachusetts, Montana, New York, and North Carolina must be dismissed because Plaintiffs failed to allege the requisite sufficient nexus with intrastate commerce.

13. Whether ADs are barred from bringing claims under Arkansas consumer protection law because they failed to allege actual damage or injury cognizable under that statute.

14. Whether Plaintiffs' New York consumer protection claims must be dismissed because Plaintiffs failed to allege a deceptive act or practice directed at consumers that resulted in actual injury to them.

15. Whether Plaintiffs are barred from bringing their New Mexico consumer protection claims because they failed to allege "unconscionable" conduct, as defined and required by that statute.

16. Whether Plaintiffs are barred from maintaining unjust enrichment claims in twenty-one states (Arizona, Arkansas, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, and Utah) and the District of Columbia because Plaintiffs, ADs or EPs, voluntarily entered into purchasing arrangements for FSs or vehicles containing FSs and received the benefit of the bargains into which they entered.

17. Whether Plaintiffs' claims for unjust enrichment under the laws of Arizona, the District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, New York, North Carolina, North Dakota, Rhode Island, South Carolina, and Utah must be dismissed because Plaintiffs did not (and cannot) plead that they conferred a direct benefit on Defendants.

18. Whether Plaintiffs' claims for unjust enrichment under the laws of Florida, Kansas, Massachusetts, Missouri, Nevada, New Hampshire, South Dakota, Tennessee, Utah, Vermont, and Wisconsin must be dismissed because Defendants provided consideration for any benefit received.

19. Whether Plaintiffs' claims for unjust enrichment under California law must be dismissed because California does not recognize a cause of action for unjust enrichment.

20. Whether Plaintiffs' unjust enrichment claims under the laws of Arizona, Florida, Hawaii, Illinois, Massachusetts, Minnesota, Mississippi, North Dakota, South Carolina, Tennessee, Utah, and West Virginia must be dismissed because Plaintiffs have failed to meet the special pleading requirements of those states' laws.

REDACTED

21.  Whether the Court should dismiss Plaintiffs' claims for injunctive relief due to Plaintiffs'
     failure to plausibly allege a real or immediate threat of future injury.

Case 2:12-md-02311-SFC-RSW ECF No. 1256-7, PageID.21335 Filed 03/11/16 Page 10 of
127
2:12-cv-00303-MOB-MKM   Doc # 56-7   Filed 08/06/13   Pg 9 of 126   Pg ID 4180

REDACTED

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**I.     Plaintiffs' Failure To Plausibly Plead Conspiracy Under *Twombly***

- Fed. R. Civ. P. 12(b)(6)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

**II.    Plaintiffs' Failure To Sufficiently Plead Article III Constitutional Standing**

- Fed. R. Civ. P. 12(b)(1)
- *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982)
- *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir. 2011)
- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors I*"), No. 2:09–md– 02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) (Ex. J-9)
- *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
- *Nat'l ATM Council, Inc. v. Visa, Inc.*, __ F. Supp. 3d __, CA Nos. 1:11-cv-01803, 01831, 2013 WL 525463 (D.D.C. Feb. 13, 2013) (Ex. J-7)

**III.   Plaintiffs' Failure To Sufficiently Plead Antitrust Standing**

- *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983)
- *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM I*"), 516 F. Supp. 2d 1072 (N.D. Cal. 2007)
- *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM II*"), 536 F. Supp. 2d 1129 (N.D. Cal. 2008)
- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors I*"), No. 2:09–md– 02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) (Ex. J-9)

**IV.    Plaintiffs' Failure To Sufficiently Plead Any Claims For Unjust Enrichment**

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
- *In re Automotive Parts Antitrust Litig. (Wire Harness Cases – Indirect Purchasers)*, 2013 WL 2456612 (E.D. Mich. June 6, 2013) (Ex. J-1)
- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors I*"), No. 2:09–md– 02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) (Ex. J-9)

**V.     Plaintiffs Cannot Bring Autonomous Unjust Enrichment Claims**

- *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011)
- *In re Flonase Antitrust Litig.* ("*Flonase II*"), 692 F. Supp. 2d 524 (E.D. Pa. 2010)

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21836 Filed 03/14/16 Page 11 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 54-2 Filed 08/16/13 Pg 10 of 126 Pg ID 414

REDACTED

## VI. Plaintiffs' Failure To Sufficiently Plead State Antitrust Claims For Lack Of Standing Or Other Reasons

- 2002 Haw. Sess. L. Act 229
- 740 Ill. Comp. Stat. §§ 10/7, 10/11
- *Am. Council, Certified Podiatric Physicians v. Am. Board Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999)
- *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983)
- *Beckler v. Visa U.S.A. Inc.*, No. Civ. 09-04-C-00030, 2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) (Ex. J-49)
- *Cornelison v. Visa U.S.A. Inc.*, Hearing Transcript, No. CIV 03-1350 (S.D. Cir. Ct. 2004) (Ex. J-54)
- *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303 (Haw. 2010)
- *Fucile v. Visa U.S.A., Inc.*, No. 51560-03 CNC, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) (Ex. J-59)
- *Gutnayer v. Cendant Corp.*, 116 F. App'x 758 (7th Cir. 2004)
- *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ.5889 (DAB), 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005) (Ex. J-44)
- *Ho v. Visa U.S.A. Inc.*, No. 112316/00, 2004 WL 1118534 (N.Y. Sup. Ct. Apr. 21, 2004) (Ex. J-43)
- *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM II*"), 536 F. Supp. 2d 1129 (N.D. Cal. 2008)
- *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) (Ex. J-32)
- *In re Microsoft Corp. Antitrust Litig.*, No. MDL 1332, Civ. JFM 03-741 through 03-748, 2003 WL 22070561 (D. Md. Aug. 22, 2003) (Ex. J-42)
- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors I*"), No. 2:09–md–02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) (Ex. J-9)
- *In re Silk*, 937 A.2d 900 (N.H. 2007)
- *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882 (E.D. Ark. 2008), *aff'd*, 552 F.3d 659 (8th Cir. 2009)
- *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293 (Neb. 2006)
- *Knowles v. Visa U.S.A. Inc.*, No. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) (Ex. J-34)
- *Luscher v. Bayer AG*, No. 2004-01485, slip op. (Ariz. Super. Ct. Sept. 14, 2005) (Ex. J-21)
- *Minuteman v. Microsoft Corp.*, 795 A.2d 833 (N.H. 2002)
- *Nass-Romero v. Visa U.S.A., Inc.*, 279 P.3d 772 (N.M. Ct. App. 2012)
- Neb. Rev. Stat. §§ 59-821, 59-829
- Nev. Rev. Stat. Ann. § 598A.060
- N.C. Gen. Stat. § 75-1
- *N.W. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or., Inc.*, 794 P.2d 428 (Or. 1990)
- *Orr v. Beamon*, 77 F. Supp. 2d 1208 (D. Kan. 1999)

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.22337 Filed 03/14/16 Page 12 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 56 Filed 03/16/23 Pg 11 of 126 Pg ID 419

REDACTED

- *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004)
- *Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) (Ex. J-24)
- *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587 (W. Va. 2009)
- *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192 (Iowa 2007)
- *State ex rel. Palumbo v. Graley's Body Shop, Inc.*, 425 S.E.2d 177 (W. Va. 1992)
- *Strang v. Visa U.S.A., Inc.*, No. 03 CV 011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) (Ex. J-62)
- *Sun Dun, Inc. of Wash. v. Coca-Cola Co.* ("*Sun Dun II*"), 770 F. Supp. 285 (D. Md. 1991) *Teague v. Bayer AG*, 671 S.E.2d 550 (N.C. Ct. App. 2009)
- *Tenn. Med. Ass'n v. Blue Cross Blue Shield of Tenn., Inc.*, 229 S.W.3d 304 (Tenn. Ct. App. 2007)
- Utah Code Ann. § 68-3-3
- Utah Code Ann. § 76-10-3118
- *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811 (1995)

## VII.  Plaintiffs' Failure To Sufficiently Plead State Consumer Protection Claims

- *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140 (N.Y. 2004)
- *Ford v. ChartOne, Inc.*, 908 A.2d 72 (D.C. 2006)
- *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002)
- *In re Automotive Parts Antitrust Litig. (Wire Harness Cases – Indirect Purchasers)*, 2013 WL 2456612 (E.D. Mich. June 6, 2013) (Ex. J-1)
- *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM I*"), 516 F. Supp. 2d 1072 (N.D. Cal. 2007)
- *In re Graphics Processing Units Antitrust Litig.* ("*GPU I*"), 527 F. Supp. 2d 1011 (N.D. Cal. 2007)
- *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) (Ex. J-32)
- *In re MI Windows and Doors, Inc. Prods. Liab. Litig.*, 2:11–cv–00167–DCN, 2012 WL 5408563 (D.S.C. Nov. 6, 2012) (Ex. J-51)
- Mass. Gen. Laws ch. 93A, § 11
- *Merck & Co. v. Lyon*, 941 F. Supp. 1443 (M.D.N.C. 1996)
- *Meridian Project Sys. Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214 (E.D. Cal. 2005)
- Mo. Rev. Stat. § 407.025
- Mont. Code Ann. § 30-14-133
- S.C. Code Ann. § 39-5-140
- *Siena v. Microsoft Corp.*, 796 A.2d 461 (R.I. 2002)
- *Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005)

## VIII.  Plaintiffs' Failure To Sufficiently Plead State Unjust Enrichment Claims

- *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005)

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21838 Filed 03/14/16 Page 13 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/06/13 Pg 12 of 126 Pg ID 416

REDACTED

- *Am. Movie Classics v. Rainbow Media Holdings*, 508 F. App'x 826 (10th Cir. 2013)
- *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891 (N.D. 1999)
- *Arena Res., Inc. v. Obo, Inc.*, 238 P.3d 357 (N.M. Ct. App. 2010)
- *Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754 (N.H. 2013)
- *Baker Constr. Co. v. City of Burlington*, No. COA09-13, 2009 WL 3350747 (N.C. Ct. App. Oct. 20, 2009) (Ex. J-48)
- *Bouchard v. Price*, 694 A.2d 670 (R.I. 2001)
- *Britt v. Britt*, 359 S.E.2d 467 (N.C. 1987), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988)
- *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166 (Ariz. 1976)
- *Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021 (N.H. 2009)
- *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383 (Fla. Dist. Ct. App. 1997)
- *Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964 (Mass. App. Ct. 1998)
- *Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910 (Utah 1987)
- *Cnty. Asphalt Paving, Co., Inc. v. Mosley Constr., Inc.*, 239 S.W.3d 704 (Mo. Ct. App. 2007)
- *Dahlgren v. Audiovox Commc'ns Corp.*, No. 2002 CA 007884 B, 2012 WL 2131937 (D.C. Super. Ct. March 15, 2012) (Ex. J-26)
- *Dist. 1199P Health and Welfare Plan v. Janssen, LP*, 784 F. Supp. 2d 508 (D.N.J. 2011)
- *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400 (Fla. Dist. Ct. App. 2009)
- *Fernandes v. Havkin*, 731 F. Supp. 2d 103 (D. Mass. 2010)
- *Ferola v. Allstate Life Ins. Co.*, No. 050996, 2007 WL 2705534 (Mass. Super. Ct. Aug. 30, 2007) (Ex. J-20)
- *Fort Lincoln Civic Assoc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C. 2008)
- *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005)
- *Frein v. Windsor Weeping Mary LP*, 366 S.W.3d 367 (Ark. Ct. App. 2009)
- *High v. Davis*, 584 P.2d 725 (Or. 1978) (en banc)
- *Howard v. Turnbull*, 316 S.W.3d 431 (Mo. Ct. App. 2010)
- *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) (Ex. J-18)
- *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461 (D. Md. 2005)
- *In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV I*"), 350 F. Supp. 2d 160 (D. Me. 2004)
- *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th Cir. 2011)
- *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors I*"), No. 2:09–md–02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) (Ex. J-9)
- *Isom v. NE Lots LLC*, No. 288378, 2010 WL 143470 (Mich. Ct. App. Jan. 14, 2010) (Ex. J-40)

Case 2:12-md-02311-SFC-RSW ECF No. 4250-7 PageID.21839 Filed 03/14/16 Page 14 of
Case 2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/06/13 Pg 13 of 126 Pg ID 462
127

REDACTED

- *Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324 (N.D. 1982)
- *Johnston v. Brown*, 348 S.E.2d 391 (S.C. Ct. App. 1986), *rev'd on other grounds*, 357 S.E.2d 450 (S.C. 1987)
- *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188 (Ill. 1977)
- *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461 (Utah 1978)
- *Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017 (2009)
- *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347 (Ct . App. 2003)
- *Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 WL 5381866 (E.D. Mich. Dec. 17, 2008) (Ex. J-37)
- *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000)
- *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76 (Miss. 1992)
- *One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 925 N.Y.S.2d 61 (App. Div. 2011)
- *Parker v. W. Dakota Insurors, Inc.*, 605 N.W.2d 181 (S.D. 2000)
- *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150 (Tenn. 1966)
- *Peterson v. Cellco P'Ship*, 80 Cal. Rptr. 3d 316 (Ct. App. 2008)
- *Prohias v. Pfizer, Inc.* ("*Prohias I*"), 485 F. Supp. 2d 1329 (S.D. Fla. 2007)
- *Porter v. Hu*, 169 P.3d 994 (Haw. Ct. App. 2007)
- *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994 (Vt. 1987)
- *Rivers v. Amato*, No. CV-00-131, 2001 WL 1736498 (Me. Super. Ct. June 22, 2001) (Ex. J-35); *aff'd*, Mem. 02-51 (Me. Dec. 12, 2002) (unpublished table decision) (Ex. J-36)
- *Rosetta v. Moretti*, No. 98-89, 2005 WL 1109638 (R.I. Super. Ct. May 4, 2005) (Ex. J-50)
- *Schroeder v. Buchholz*, 622 N.W.2d 202 (N.D. 2001)
- *Schumacher v. Schumacher*, 627 N.W.2d 725 (Minn. App. 2001)
- *Senne & Co. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858 (Kan. Ct. App. Apr. 20, 2007) (Ex. J-19)
- *Smith v. Stowell*, 125 N.W.2d 795 (Iowa 1964), *overruled on other grounds by Lamp v. Am. Prothetics, Inc.*, 379 N.W.2d 909 (Iowa 1986)
- *S. Title Guar. Co. v. Bethers*, 761 P.2d 951 (Utah Ct. App. 1988)
- *Southard v. Visa U.S.A., Inc.*, LACV 031729, 2004 WL 3030028 (Iowa Dist. Nov. 17, 2004) (Ex. J-29)
- *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*, 493 N.W.2d 137 (Minn. Ct. App. 1992)
- *Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007)
- *Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269 (10th Cir. 2008)
- *Tri-State Mech., Inc. v. Northland Coll.*, 681 N.W.2d 302 (Wis. Ct. App. 2004)
- *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485 (Ariz. Ct. App. 2002)
- *Washa v. Miller*, 546 N.W.2d 813 (Neb. 1996)
- *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583 (Miss. 2012), *reh'g denied*, No. 2010-CA-01015-SCT, 2012 Miss. LEXIS 175 (Miss. Mar. 29, 2012) (Ex. J-15)
- *Winters v. Cnty. of Clatsop*, 150 P.3d 1104 (Or. Ct. App. 2007)
- *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011 WL 1357483 (N.D. W. Va. Apr. 11, 2011) (Ex. J-61)

REDACTED

- *Yee v. Nat'l Gypsum Co.*, CV-09-8189-PHX-DGC, 2010 WL 2572976 (D. Ariz. June 22, 2010) (Ex. J-22)
- *Zinter v. Univ. of Minn.*, 799 N.W.2d 243 (Minn. Ct. App. 2011)

## IX. Plaintiffs' Failure To State A Claim For Injunctive Relief

- *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138 (2013)
- *O'Shea v. Littleton*, 414 U.S. 488 (1974)
- *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1988)
- *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)
- *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969)

REDACTED

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ................................................................. i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. iv

TABLE OF AUTHORITIES ........................................................... xvi

INDEX OF EXHIBITS ............................................................. xxxi

INTRODUCTION ................................................................ 1

ARGUMENT ..................................................................... 5

    I.    IPPs Fail To Allege Facts Sufficient To Support A Claim. .................................... 5

    II.    In The Alternative, IPPs' Claims Should Be Dismissed Because IPPs Lack Constitutional Standing To Assert Them. .................................. 7

        A.    IPPs Fail To Plead Facts Establishing Article III Standing. ........................ 7

            1.    Component IPPs fail to sufficiently plead a causal connection between their claimed injury and the alleged unlawful conduct. .... 8

            2.    Replacement Part IPPs fail to sufficiently plead a causal connection between their claimed injury and the alleged unlawful conduct. ................................................................... 13

        B.    IPPs Lack Constitutional Standing To Invoke The Laws Of States In Which No Plaintiff Resides Or Allegedly Suffered Injury .................. 15

    III.    Alternatively, The Court Should Dismiss Component IPPs' Claims For Lack Of Antitrust Standing. ........................................ 18

    IV.    The Court Should Dismiss IPPs' Unjust Enrichment Claims. ........................ 27

        A.    IPPs Do Not Adequately Plead Their Claims For Unjust Enrichment. ................................................................ 27

        B.    IPPs Cannot Bring Autonomous Unjust Enrichment Claims. ................. 28

        C.    IPPs' Claims Fail Because IPPs Do Not Satisfy The Direct Benefit Requirement In Certain States. .................................... 30

        D.    IPPs' Claims Fail Because They Received The Benefit Of Their Bargains. ................................................................. 30

        E.    IPPs' Claims Fail Because Defendants Provided Consideration For Any Benefit. .............................................. 32

    V.    The Court Should Dismiss IPPs' Claims Under Various State Antitrust, Consumer Protection, And Unjust Enrichment Laws For Additional Reasons. ................................................................. 33

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21842 Filed 03/14/16 Page 17 of
1:12-md-02311-MOB-MKM Doc # 50 Filed 08/16/13 Pg 16 of 126 Pg ID 420
127

REDACTED

A.     Arizona..................................................................................33
    1.     Component IPPs' Arizona antitrust claims fail for lack of
           standing............................................................................ 33
    2.     IPPs' Arizona unjust enrichment claims fail for three reasons..... 34
B.     Arkansas...............................................................................35
    1.     Because ADs merely allege overpayment, they have no right of
           action under Arkansas consumer protection law. ........................ 35
    2.     Component ADs' ADTPA claim fails because it is too remote. .. 35
    3.     ADs' Arkansas unjust enrichment claim fails because ADs
           received the benefit of their bargains............................................ 36
C.     California ..............................................................................36
    1.     Component IPPs' California antitrust claims fail for lack of
           standing............................................................................ 36
    2.     An insufficient California nexus dooms EPs' consumer protection
           claim................................................................................ 36
    3.     IPPs' California unjust enrichment claims fail for two reasons. .. 37
D.     District of Columbia ...............................................................38
    1.     Component IPPs' District of Columbia antitrust claims fail for lack
           of standing........................................................................ 38
    2.     Because EPs fail to allege *intra*state-only sales or purchases, their
           District of Columbia antitrust claim fails...................................... 38
    3.     As businesses, ADs cannot bring a District of Columbia consumer
           protection claim. ................................................................ 39
    4.     IPPs' District of Columbia unjust enrichment claims fail for two
           reasons. ............................................................................ 39
E.     Florida .................................................................................40
    1.     IPPs' Florida unjust enrichment claims fail for four reasons. ...... 40
F.     Hawaii .................................................................................43
    1.     Component ADs' Hawaii antitrust claim fails for lack of
           standing............................................................................ 43
    2.     ADs cannot assert a retroactive Hawaii antitrust claim............... 43
    3.     IPPs' Hawaii unjust enrichment claims fail because IPPs have an
           adequate remedy at law........................................................ 43
G.     Illinois .................................................................................44
    1.     Component ADs' Illinois antitrust claim fails for lack of
           standing............................................................................ 44
    2.     ADs are barred from bringing an Illinois Antitrust Act class
           claim................................................................................ 44
    3.     ADs' Illinois unjust enrichment claim fails for two reasons. ....... 45
H.     Iowa.....................................................................................45

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21843 Filed 03/14/16 Page 18 of
1:12-cv-00803-MOB-MKM Doc # 56-2 Filed 08/16/13 Pg 17 of 126 Pg ID 421
127

REDACTED

1. Component IPPs' Iowa antitrust claims fail for lack of standing. 45
2. IPPs' Iowa unjust enrichment claims fail for two reasons............ 46

I. Kansas ........................................................................................ 47

1. Component IPPs' Kansas antitrust claims fail for lack of
standing. ................................................................................. 47
2. IPPs' Kansas unjust enrichment claims fail for two reasons. ....... 47

J. Maine ........................................................................................... 48

1. Component IPPs' Maine antitrust claims fail for lack of
standing. ................................................................................. 48
2. IPPs' Maine unjust enrichment claims fail because IPPs do not and
cannot allege a benefit conferred upon Defendants by IPPs......... 49

K. Massachusetts ............................................................................. 49

1. ADs lack standing to bring a Massachusetts consumer protection
claim. ..................................................................................... 49
2. An insufficient nexus with Massachusetts dooms IPPs' MCPA
claims. ................................................................................... 50
3. IPPs' Massachusetts unjust enrichment claims fail for three
reasons................................................................................... 50

L. Michigan ...................................................................................... 51

1. Component IPPs' Michigan antitrust claims fail for lack of
standing. ................................................................................. 51
2. IPPs' Michigan unjust enrichment claims fail for two reasons. ... 52

M. Minnesota.................................................................................... 52

1. IPPs' Minnesota unjust enrichment claims fail for three reasons. 52

N. Mississippi ................................................................................... 53

1. Component IPPs' Mississippi antitrust claims fail for lack of
standing. ................................................................................. 53
2. IPPs' Mississippi antitrust claims fail because IPPs do not allege
conduct by Defendants that took place wholly in Mississippi...... 53
3. IPPs' Mississippi unjust enrichment claims fail for two reasons. 54

O. Missouri ....................................................................................... 55

1. As businesses, ADs cannot bring a Missouri consumer protection
claim....................................................................................... 55
2. IPPs' Missouri unjust enrichment claims fail for two reasons. .... 55

P. Montana ....................................................................................... 56

1. EPs cannot bring a Montana consumer protection claim as a class
action...................................................................................... 56
2. EPs' MUTPA claim fails because EPs do not allege any conduct or
activity taking place in Montana................................................ 57

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21844 Filed 03/14/16 Page 19 of
2:12-cv-00803-MOB-MKM Doc # 50 Filed 03/10/13 Pg 18 of 126 Pg ID 428
127

REDACTED

Q.    Nebraska .................................................................................57

     1.    Component IPPs' Nebraska antitrust claims fail for lack of
standing. ................................................................................ 57
     2.    ADs cannot assert a retroactive Nebraska antitrust claim. ........... 57
     3.    IPPs' Nebraska unjust enrichment claims fail because IPPs
received the benefit of their bargains........................................... 58

R.    Nevada ...................................................................................58

     1.    Component IPPs' Nevada antitrust claims fail for lack of
standing. ................................................................................ 58
     2.    IPPs' Nevada antitrust claims fail because IPPs do not allege
conduct by Defendants that took place in Nevada....................... 59
     3.    IPPs' Nevada unjust enrichment claims fail because Defendants
provided consideration................................................................ 60

S.    New Hampshire ......................................................................60

     1.    Component IPPs' New Hampshire antitrust claims fail for lack of
standing. ................................................................................ 60
     2.    IPPs cannot assert retroactive New Hampshire antitrust claims... 60
     3.    IPPs' New Hampshire unjust enrichment claims fail for two
reasons. .................................................................................. 61

T.    New Mexico............................................................................61

     1.    Component IPPs' New Mexico antitrust claims fail for lack of
standing. ................................................................................ 61
     2.    IPPs' New Mexico consumer protection claims fail because IPPs
do not allege "unconscionable" conduct.................................... 62
     3.    IPPs' New Mexico unjust enrichment claims fail because IPPs
received the benefit of their bargains........................................... 63

U.    New York ...............................................................................63

     1.    Component IPPs' New York antitrust claims fail for lack of
standing. ................................................................................ 63
     2.    EPs' New York antitrust claim fails because EPs do not allege a
sufficient impact on intrastate commerce. .................................... 64
     3.    Component IPPs' New York consumer protection claims fail
because IPPs' injuries are too remote. .......................................... 64
     4.    IPPs' New York consumer protection claims fail because IPPs
have not alleged a deceptive act directed towards consumers. ...... 65
     5.    Because EPs do not allege that the deceptive transaction occurred
in New York, EPs' New York consumer protection claim fails... 66
     6.    IPPs' New York unjust enrichment claims fail for two reasons... 66

V.    North Carolina ........................................................................68

     1.    Component IPPs' North Carolina antitrust claims fail for lack of
standing. ................................................................................ 68

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21845 Filed 03/14/16 Page 20 of
1:12-cv-00803-MOB-MKM Doc # 56-2 Filed 08/30/13 Pg 19 of 126 Pg ID 429
127

REDACTED

2.  IPPs' North Carolina antitrust claims fail because IPPs do not allege conduct by Defendants that took place in North Carolina. 69
3.  EPs' North Carolina consumer protection claim fails because they do not allege a sufficient nexus with intrastate commerce. .......... 70
4.  IPPs' North Carolina unjust enrichment claims fail for two reasons ................................................................................ 71

W.  North Dakota ................................................................................. 72
1.  Component IPPs' North Dakota antitrust claims fail for lack of standing. ................................................................................. 72
2.  IPPs' North Dakota unjust enrichment claims fail for three reasons ................................................................................ 72

X.  Oregon ........................................................................................... 73
1.  Component IPPs' Oregon antitrust claims fail for lack of standing. ................................................................................. 73
2.  IPPs' Oregon unjust enrichment claims fail because IPPs received the benefit of their bargains. ........................................ 73

Y.  Rhode Island ................................................................................. 74
1.  As indirect purchasers, EPs lack standing to bring their Rhode Island consumer protection act claim. ......................................... 74
2.  EPs' Rhode Island unjust enrichment claim fails for two reasons. 74

Z.  South Carolina ............................................................................... 75
1.  South Carolina's consumer protection law bars ADs' class claim ................................................................................. 75
2.  ADs' South Carolina unjust enrichment claim fails for three reasons ................................................................................ 76

AA.  South Dakota ............................................................................... 77
1.  Component IPPs' South Dakota antitrust claims fail for lack of standing. ................................................................................. 77
2.  IPPs' South Dakota unjust enrichment claims fail because Defendants provided consideration to IPPs for any benefit received. ................................................................................. 77

BB.  Tennessee .................................................................................... 78
1.  Component IPPs' Tennessee antitrust claims fail for lack of standing. ................................................................................. 78
2.  IPPs' Tennessee unjust enrichment claims fail for two reasons ... 78

CC.  Utah .......................................................................................... 79
1.  Component IPPs' Utah antitrust claims fail for lack of standing. 79
2.  IPPs cannot assert retroactive Utah antitrust claims. ................... 79
3.  IPPs' Utah unjust enrichment claims fail for four reasons. .......... 80

DD.  Vermont ..................................................................................... 82

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21846 Filed 03/14/16 Page 21 of
127
2:12-cv-00303-MOB-MKM Doc # 56-25 Filed 08/16/13 Pg 20 of 126 Pg ID 724

REDACTED

1.    Component IPPs' Vermont antitrust and consumer protection
       claims fail for lack of standing.................................................... 82

2.    IPPs' Vermont unjust enrichment claims fail because Defendants
       provided consideration for any benefit received........................... 83

EE.   West Virginia .................................................................................83

1.    Component IPPs' West Virginia antitrust claims fail for lack of
       standing. ......................................................................................... 83

2.    EPs' West Virginia antitrust claim fails because EPs do not allege
       a sufficient impact on *intra*state commerce. ................................. 84

3.    IPPs' West Virginia unjust enrichment claims fail because they fall
       short of West Virginia's pleading requirements. ........................... 84

FF.   Wisconsin .......................................................................................85

1.    Component IPPs' Wisconsin antitrust claims fail for lack of
       standing. ......................................................................................... 85

2.    IPPs' Wisconsin unjust enrichment claims fail because Defendants
       provided consideration for any benefit received........................... 85

VI.   IPPs Have Failed To State A Claim For Injunctive Relief. ....................................85

CONCLUSION ....................................................................................................87

CERTIFICATE OF SERVICE ..............................................................................1

# TABLE OF AUTHORITIES

**Page**

CASES

*A & M Supply Co. v. Microsoft Corp.*,
   No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008) (Ex. J-38) ........................... 52

*Alabama v. Blue Bird Body Co.*,
   573 F.2d 309 (5th Cir. 1978) ......................................................................................... 7

*Allen v. Wright*,
   468 U.S. 737 (1984) ...................................................................................................... 7

*Am. Council of Certified Podiatric Physicians v. Am. Bd. Podiatric Surgery, Inc.*,
   185 F.3d 606 (6th Cir. 1999) ....................................................................................... 51

*Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*,
   390 F. Supp. 2d 1170 (M.D. Fla. 2005) .................................................................... 28, 40

*Am. Movie Classics v. Rainbow Media Holdings*,
   508 F. App'x 826 (10th Cir. 2013) ............................................................................... 82

*Am. Safety Ins. Serv., Inc. v. Griggs*,
   959 So. 2d 322 (Fla. Dist. Ct. App. 2007) ................................................................ 31, 42

*Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*,
   930 P.2d 1182 (Utah 1996) .......................................................................................... 80

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................... 18

*Antoine Garabet, M.D., Inc. v. Autonomous Techs. Corp.*,
   116 F. Supp. 2d 1159 (C.D. Cal 2000) ......................................................................... 14

*Apache Corp. v. MDU Res. Grp., Inc.*,
   603 N.W.2d 891 (N.D. 1999) ....................................................................................... 72

*Arena Res., Inc. v. Obo, Inc.*,
   238 P.3d 357 (N.M. Ct. App. 2010) ............................................................................. 63

*Arthur v. Microsoft Corp.*,
   676 N.W.2d 29 (Neb. 2004) ......................................................................................... 58

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. passim

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters ("AGC")*,
   459 U.S. 519 (1983) ............................................................................................. passim

*Axenics, Inc. v. Turner Constr. Co.*,
   62 A.3d 754 (N.H. 2013) .............................................................................................. 61

*Baker Constr. Co. v. City of Burlington*,
   No. COA09-13, 2009 WL 3350747 (N.C. Ct. App. Oct. 20, 2009) (Ex. J-48) ...................... 71

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21848 Filed 03/14/16 Page 23 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/16/13 Pg 22 of 126 Pg ID 420

REDACTED

*Beckler v. Visa U.S.A. Inc.,*
No. Civ. 09-04-C-00030, 2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004)
(Ex. J-49) .................................................................................................................72

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................... passim

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc. ("BC/BS of N.J."),*
818 N.E.2d 1140 (N.Y. 2004) ..............................................................................65, 66

*Bodie-Rickett & Assocs. v. Mars, Inc.,*
957 F.2d 287 (6th Cir. 1992) ................................................................................20, 24

*Bouchard v. Price,*
694 A.2d 670 (R.I. 2001) .....................................................................................74

*Boulware v. Nevada,*
960 F.2d 793 (9th Cir. 1992) ...............................................................................58

*Bowyer v. Davidson,*
584 P.2d 686 (Nev. 1978) ....................................................................................60

*Bray Lines Inc. v. Utah Carriers, Inc.,*
739 P.2d 1115 (Utah Ct. App. 1987) ...................................................................82

*Brenner v. Brenner,*
821 F. Supp. 2d 533 (E.D.N.Y. 2011) .................................................................67, 68

*Bristol Vill., Inc. v. La.-Pac. Corp.,*
No. 12-CV-2635, 2013 WL 55698 (W.D.N.Y. Jan. 3, 2013) (Ex. J-46) ...............67

*Britt v. Britt,*
359 S.E.2d 467 (N.C. 1987) .................................................................................72

*Brooks v. Valley Nat'l Bank,*
548 P.2d 1166 (Ariz. 1976) .................................................................................34

*Brown & Root Indus. Serv. v Indus. Comm'n,*
947 P.2d 671 (Utah 1997) ...................................................................................80

*California v. Infineon Techs. AG,*
531 F. Supp. 2d 1124 (N.D. Cal. 2007) ...............................................................53, 54

*California v. Infineon Techs. AG,*
No. C 06-4333 PJH, 2008 WL 1766775 (N.D. Cal. Apr. 15, 2008) (Ex. J-57) .....80

*Carmona v. Spanish Broad. Sys., Inc.,*
No. 08 Civ. 4475, 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) (Ex. J-45) ...........66

*Carrier Corp. v. Outokumpu Oyj,*
673 F.3d 430 (6th Cir. 2012) ................................................................................5

*Ciardi v. F. Hoffmann La Roche, Ltd.,*
436 Mass. 53 (2001) ............................................................................................49, 50

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ...............................................................................................86

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21849 Filed 03/14/16 Page 24 of 127
Case 1:12-cv-00803-MOB-MKM Doc # 54-29 Filed 08/16/13 Pg 23 of 126 Pg ID 422

REDACTED

*Clapp v. Goffstown Sch. Dist.*,
   977 A.2d 1021 (N.H. 2009) ................................................................. 61

*Clapper v. Amnesty Int'l*,
   133 S. Ct. 1138 (2013) ............................................................... 86, 87

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*,
   470 F.3d 286 (6th Cir. 2006) ......................................................... 11, 12

*Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*,
   692 N.E.2d 964 (Mass. App. Ct. 1998) ............................................... 51

*Cnty. Asphalt Paving, Co., Inc. v. Mosley Constr., Inc.*,
   239 S.W.3d 704 (Mo. Ct. App. 2007) ............................................ 55, 56

*Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*,
   695 So. 2d 383 (Fla. Dist. Ct. App. 1997) .......................................... 42

*Commercial Fed. Bank v. Qwest Corp.*,
   695 N.W.2d 41 (Iowa Ct. App. Oct. 14, 2004) (unpublished table decision) (Ex. J-30) ........ 46

*Concrete Prods. Co. v. Salt Lake Cnty.*,
   734 P.2d 910 (Utah 1987) ............................................................... 81

*Cornelison v. Visa U.S.A. Inc.*,
   Hearing Transcript, No. CIV 03-1350 (S.D. Cir. Ct. 2004) (Ex. J-54) ............ 77

*Cox v. Microsoft Corp.*,
   778 N.Y.S.2d 147 (App. Div. 2004) ................................................... 65

*Coyne v. Am. Tobacco*,
   183 F.3d 488 (6th Cir. 1999) ............................................................ 7

*Crandell v. Wall Lake View Auburn Bd. of Educ.*,
   No. 00-2013, 2002 WL 987665 (Iowa Ct. App. May 15, 2002) (Ex. J-31) ........... 46

*Dahlgren v. Audiovox Commc'ns Corp.*,
   No. 2002 CA 007884 B, 2012 WL 2131937 (D.C. Super. Ct. Mar. 15, 2012)
   (Ex. J-26) ...................................................................................... 40

*Davis v. Four Seasons Hotel Ltd.*,
   228 P.3d 303 (Haw. 2010) .............................................................. 43

*Davis v. Four Seasons Hotel Ltd.*,
   CIV. 08-00525 HG-BMK, 2011 WL 5025521 (D. Haw. Oct. 20, 2011) (Ex. J-28) ............ 44

*Dist. 1199P Health and Welfare Plan v. Janssen, LP*,
   784 F. Supp. 2d 508 (D.N.J. 2011) ................................................... 31

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) ............................................... 41, 76

*Duke Energy Int'l, L.L.C. v. Napoli*,
   748 F. Supp. 2d 656 (S.D. Tex. 2010) ............................................... 70

*Dunkel v. eBay, Inc.*,
   No. 5:12-cv-01452-EJD, 2013 WL 415584 (N.D. Cal. Jan. 31, 2013) (Ex. J-23) ............ 37

*Easter v. Am. W. Fin.*,
   381 F.3d 948 (9th Cir. 2004) ................................................................17

*Eivaz v. Edwards*,
   No. 12-C-910, 2013 WL 989843 (E.D. Wis. Mar. 13, 2013) (Ex. J-16) ...............28

*Embree Constr. Grp., Inc. v. Rafcor, Inc.*,
   411 S.E.2d 916 (N.C. 1992).................................................................71

*Emergency Physicians Integrated Care v. Salt Lake Cnty.*,
   167 P.3d 1080 (Utah 2007)..................................................................81

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
   1 So. 3d 400 (Fla. Dist. Ct. App. 2009) ....................................................41

*F.T.C. v. Mylan Labs, Inc.*,
   62 F. Supp. 2d 25 (D.D.C. 1999) ......................................................14, 81

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) ...........................................................16, 17

*Fernandes v. Havkin*,
   731 F. Supp. 2d 103 (D. Mass. 2010) .......................................................50

*Ferola v. Allstate Life Ins. Co.*,
   No. 050996, 2007 WL 2705534 (Mass. Super. Ct. Aug. 30, 2007) (Ex. J-20) ...........32, 51

*Ford v. ChartOne, Inc.*,
   908 A.2d 72 (D.C. 2006) ...................................................................39

*Fort Lincoln Civic Assoc. v. Fort Lincoln New Town Corp.*,
   944 A.2d 1055 (D.C. 2008) .................................................................39

*Freeman Indus. LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005)................................................................78

*Frein v. Windsor Weeping Mary LP*,
   366 S.W.3d 367 (Ark. Ct. App. 2009) ......................................................36

*Fucile v. Visa U.S.A., Inc.*,
   No. 51560-03 CNC, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) (Ex. J-59)...........82

*Georgia Malone & Co., Inc. v. Rieder*,
   19 N.Y.3d 511 (2012) ......................................................................67

*Glenwood Farms, Inc. v. Ivey*,
   228 F.R.D. 47 (D. Me. 2005)................................................................49

*Goshen v. Mut. Life Ins. Co.*,
   774 N.E.2d 1190 (N.Y. 2002) ...............................................................66

*Gutnayer v. Cendant Corp.*,
   116 F. App'x 758 (7th Cir. 2004) ..........................................................44

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*,
   No. 03 Civ.5889 (DAB), 2005 WL 323750 (S.D.N.Y. Feb. 9, 2005) (Ex. J-44)...........64

REDACTED

*Hakki v. Zima Co.*,
No. 03-9183, 2006 WL 852126 (D.C. Super. Mar. 28, 2006) (Ex. J-25) ...............................40

*Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*,
148 P.3d 1179 (Haw. 2006) .................................................................................................43

*Haz-Mat Response, Inc. v. Certified Waste Servs., Ltd.*,
910 P.2d 839 (Kan. 1996) ...................................................................................................47

*Henning v. Sec. Bank*,
564 N.W.2d 398 (Iowa 1997) ..............................................................................................46

*High v. Davis*,
584 P.2d 725 (Or. 1978) (en banc) ...............................................................................31, 74

*Hill v. Roll Int'l Corp.*,
128 Cal. Rptr. 3d 109 (Ct. App. 2011).................................................................................37

*Hillman Constr. Corp. v. Wainer*,
636 So. 2d 576 (Fla. Dist. Ct. App. 1994) ...........................................................................42

*Hinds Cnty. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009).....................................................................................3

*Ho v. Visa U.S.A. Inc.*,
No. 112316/00, 2004 WL 1118534 (N.Y. Sup. Ct. Apr. 21, 2004) (Ex. J-43).................63, 65

*Hoving v. Transnation Title Ins. Co.*,
545 F. Supp. 2d 662 (E.D. Mich. 2008)................................................................................17

*Howard v. Turnbull*,
316 S.W.3d 431 (Mo. Ct. App. 2010) ..............................................................................31, 55

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977).................................................................................................... passim

*Illinois Tool Works v. Independent Ink, Inc.*,
547 U.S. 28 (2006).................................................................................................................3

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) (Ex. J-18)......................... passim

*In re Automotive Parts Antitrust Litig. (Wire Harness Cases – Indirect Purchasers)*
("*WH*"), No. 12–md–02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013) (Ex. J-1) ... passim

*In re Automotive Parts Antitrust Litig. (Wire Harness Cases – Direct Purchasers)*,
No. 12-MD-02311, 2013 WL 2456584 (E.D. Mich. June 6, 2013) (Ex. J-4)...........................6

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009).............................................................................62, 63

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
691 F.2d 1335 (9th Cir. 1982) ..............................................................................................14

*In re CRT Antitrust Litig ("CRT I")*,
No. 07-cv-05944-SC, slip op. (N.D. Cal. Sept. 30, 2010) (Ex. J-11) .....................................18

*In re CRT ("CRT II")*,
No. 07-cv-05944-SC, slip op. (N.D. Cal. May 2, 2013) (Ex. J-12) ........................................20

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) ......................................................................29, 30, 45

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................................................................17, 18

*In re Dynamic Random Access Memory Antitrust Litig. ("DRAM I")*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................................ passim

*In re Dynamic Random Access Memory Antitrust Litig. ("DRAM II")*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ........................................................................ passim

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..............................................................................23

*In re Flonase Antitrust Litig. ("Flonase I")*,
610 F. Supp. 2d 409 (E.D. Pa. 2009) ..................................................................................16

*In re Flonase Antitrust Litig. ("Flonase II")*,
692 F. Supp. 2d 524 (E.D. Pa. 2010) ............................................................................ 30, 71

*In re Graphics Processing Units Antitrust Litig. ("GPU I")*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................................ passim

*In re Graphics Processing Units Antitrust Litig. ("GPU II")*,
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ........................................................................23, 54

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
768 F. Supp. 2d 961 (N.D. Iowa 2011) .................................................................................2

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................................................37

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MD 2262 (NRB), 2013 WL 1285338 (S.D.N.Y. Mar. 29, 2013) (Ex. J-13) .........21, 67

*In re Magnesium Oxide Antitrust Litig.*,
Civ. No. 10-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) (Ex. J-32) ...................... passim

*In re MI Windows and Doors, Inc. Prods. Liab. Litig.*,
2:11–cv–00167–DCN, 2012 WL 5408563 (D.S.C. Nov. 6, 2012) (Ex. J-51) ........................75

*In re Microsoft Corp. Antitrust Litig.*,
No. MDL 1332, Civ. JFM 03-741 through 03-748, 2003 WL 22070561 (D. Md. Aug.
22, 2003) (Ex. J-42) ..............................................................................................53, 54

*In re Microsoft Corp. Antitrust Litig.*,
401 F. Supp. 2d 461 (D. Md. 2005) ....................................................................................76

*In re N.J. Title Ins. Litig.*,
No. 08–1425, 2010 WL 2710570 (D.N.J. July 6, 2010) (Ex. J-5) ..........................................8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig. ("NMV I")*,
350 F. Supp. 2d 160 (D. Me. 2004) ......................................................................27, 31, 62

Case 2:12-md-02311-SFC-RSW ECF No. 250-7 PageID.21853 Filed 03/14/16 Page 28 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/06/13 Pg 27 of 126 Pg ID 430
REDACTED

*In re New Motor Vehicles Canadian Exp. Antitrust Litig. ("NMV II"),*
235 F.R.D. 127 (D. Me. 2006) ................................................................................48

*In re New Motor Vehicles Canadian Exp. Antitrust Litig. ("NMV III"),*
632 F. Supp. 2d 42 (D. Me. 2009) ............................................................................9

*In re Optical Disk Drive Antitrust Litig. ("ODD"),*
No. 3:10–md–2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) (Ex. J-52) ................75

*In re Packaged Ice Antitrust Litig.,*
779 F. Supp. 2d 642 (E.D. Mich. 2011).................................................................... passim

*In re Porsche Cars N. Am., Inc.,*
880 F. Supp. 2d 801 (S.D. Ohio 2012) ....................................................................41

*In re Potash Antitrust Litig.,*
667 F. Supp. 2d 907 (N.D. Ill. 2009) ........................................................................ passim

*In re Refrigerant Compressors Antitrust Litig. ("Compressors I"),*
No. 2:09–md–02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) (Ex. J-9) ...15, 16, 17, 18

*In re Refrigerant Compressors Antitrust Litig. ("Compressors II"),*
No. 2:09–md–02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) (Ex. J-6) .............. passim

*In re Relafen Antitrust Litig. ("Relafen I"),*
221 F.R.D. 260 (D. Mass. 2004) ..............................................................................71

*In re Relafen Antitrust Litig. ("Relafen II"),*
225 F.R.D. 14 (D. Mass. 2004)..........................................................................56, 73

*In re S.D. Microsoft Antitrust Litig.,*
707 N.W.2d 85 (S.D. 2005) ....................................................................................77

*In re Silk,*
937 A.2d 900 (N.H. 2007) .......................................................................................61

*In re Static Random Access Memory Antitrust Litig.,*
No. 07-md-01819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) (Ex. J-33).............47, 48

*In re Terazosin Hydrochloride Antitrust Litig.,*
160 F. Supp. 2d 1365 (S.D. Fla. 2001) ....................................................................29

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("LCD"),*
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...............................................................13, 23

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("LCD II"),*
599 F. Supp. 2d 1179, 1189 (N.D. Cal. 2009) .........................................................59

*In re Travel Agent Comm'n Antitrust Litig.,*
583 F.3d 896 (6th Cir. 2009) ..............................................................................6, 59

*In re Vitamins Antitrust Litig.,*
Nos. MISC. No. 99-197, 2001 WL 855463 (D.D.C. July 2, 2001) (Ex. J-8) ........................14

*In re Wellbutrin XL Antitrust Litig.,*
260 F.R.D. 143 (E.D. Pa. 2009) ............................................................................. passim

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21854 Filed 03/14/16 Page 29 of
Case 2:12-md-00803-MOB-MKM Doc # 56-2 Filed 03/06/13 Pg 28 of 126 Pg ID 432
127

REDACTED

*Independence Cnty. v. Pfizer, Inc.*,
   534 F. Supp. 2d 882 (E.D. Ark. 2008) ...............................................................................35

*INS v. Pangilinan*,
   486 U.S. 875 (1988) ...........................................................................................................29

*Isom v. NE Lots LLC*,
   No. 288378, 2010 WL 143470 (Mich. Ct. App. Jan. 14, 2010) (Ex. J-40) ...........................52

*Jerry Harmon Motors, Inc. v. Heth*,
   316 N.W.2d 324 (N.D. 1982) .............................................................................................73

*Johnston v. Brown*,
   348 S.E.2d 391 (S.C. Ct. App. 1986) .................................................................................77

*Judkins v. HSBC Mortg. Servs.*,
   No. 12-cv-14706, 2013 WL 141204 (E.D. Mich. Jan. 10, 2013) (Ex. J-2) .............................5

*Kanne v. Visa U.S.A., Inc.*,
   723 N.W.2d 293 (Neb. 2006)..............................................................................................57

*Kaufman v. Sirius XM Radio, Inc.*,
   474 F. App'x 5 (2d Cir. 2012) ............................................................................................66

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)........................................................................................67, 68

*Kessel v. Monongalia Cnty. Gen. Hosp. Co.*,
   648 S.E.2d 366 (W. Va. 2007) ...........................................................................................83

*Knowles v. Visa U.S.A. Inc.*,
   No. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) (Ex. J-34) ...................48

*Kunzelmann v. Wells Fargo Bank, N.A.*,
   No. 9:11-cv-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (Ex. J-53) ...............76

*La Throp v. Bell Fed. Sav. & Loan Ass'n*,
   370 N.E.2d 188 (Ill. 1977) .................................................................................................45

*Laborers' & Operating Engineers' Util. Agreement Health & Welfare Trust Fund for
   Ariz. v. Philip Morris, Inc.*,
   42 F. Supp. 2d 943 (D. Ariz. 1999) ...................................................................................34

*Laughlin v. Evanston Hosp.*,
   550 N.E.2d 986 (Ill. 1990) .................................................................................................44

*Lorenzo v. Qualcomm, Inc.*,
   603 F. Supp. 2d 1291 (S.D. Cal. 2009)...............................................................................20

*Luscher v. Bayer AG*,
   No. 2004-01485, slip op. (Ariz. Super. Ct. Sept. 14, 2005) (Ex. J-21)..................................33

*M+J Savitt, Inc. v. Savitt*,
   No. 08 Civ. 8535 (DLC), 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) (Ex. J-47)...............68

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ........................................................................................................68

*Mann v. Am. W. Life Ins. Co.*,
  586 P.2d 461 (Utah 1978) ........................................................................................... 80

*Martis v. Grinell Mut. Reinsurance Co.*,
  388 Ill. App. 3d 1017 (2009) ...................................................................................... 45

*McKee v. Meltech, Inc.*,
  No. 10-2730, 2011 WL 1770461 (W.D. Tenn. May 9, 2011) (Ex. J-55) ............... 79

*Melchior v. New Line Prods., Inc.*,
  131 Cal. Rptr. 2d 347 (Ct. App. 2003) ...................................................................... 37

*Merck & Co. v. Lyon*,
  941 F. Supp. 1443 (M.D.N.C. 1996) .......................................................................... 70

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*,
  404 F. Supp. 2d 1214 (E.D. Cal. 2005) ...................................................................... 36

*Merkle v. Health Options, Inc.*,
  940 So. 2d 1190 (Fla. Dist. Ct. App. 2006) ............................................................... 41

*Mid-West Paper Prods. Co. v. Cont'l Grp., Inc.*,
  596 F.2d 573 (3d Cir. 1979) ....................................................................................... 14

*Minebea Co., Ltd. v. Papst*,
  444 F. Supp. 2d 68 (D.C. Cir. 2006) .......................................................................... 39

*Minuteman v. Microsoft Corp.*,
  795 A.2d 833 (N.H. 2002) ........................................................................................... 60

*Morrisville Lumber Co., Inc. v. Okcuoglu*,
  531 A.2d 887 (Vt. 1987) .............................................................................................. 83

*Munson v. Countrywide Home Loans, Inc.*,
  No. 08-13244, 2008 WL 5381866 (E.D. Mich. Dec. 17, 2008) (Ex. J-37) ............ 52

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*,
  532 S.E.2d 868 (S.C. 2000) ........................................................................................ 76

*N.W. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or., Inc.*,
  794 P.2d 428 (Or. 1990) .............................................................................................. 73

*Nass-Romero v. Visa U.S.A., Inc.*,
  279 P.3d 772 (N.M. Ct. App. 2012) ........................................................................... 61

*Nat'l ATM Council, Inc. v. Visa, Inc.*,
  __ F. Supp. 3d __, CA Nos. 1:11-cv-01803, 01831, 2013 WL 525463 (D.D.C. Feb.
  13, 2013) (Ex. J-7) ........................................................................................... 11, 12, 13

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
  650 F.3d 1046 (6th Cir. 2011) ...................................................................................... 6

*Nickerson Co. v. Energy W. Mining Co.*,
  No. 20090221–CA, 2009 WL 4681778 (Utah Ct. App. Dec. 10, 2009) (Ex. J-58) ......... 80, 82

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) ............................................................................... 11, 19

*Niemi v. Am. Axle Mfg. & Holding. Inc.*,
    No. 269155, 2007 WL 29383 (Mich. Ct. App. Jan. 4, 2007) (Ex. J-39) ...............................52

*O'Regan v. Arbitration Forms, Inc.*,
    121 F.3d 1060 (7th Cir. 1997) ........................................................................................44

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)..................................................................................................86, 87

*Ockey v. Lehmer*,
    189 P.3d 51 (Utah 2008) .................................................................................................80

*Omnibank of Mantee v. United S. Bank*,
    607 So. 2d 76 (Miss. 1992).............................................................................................55

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*,
    925 N.Y.S.2d 61 (App. Div. 2011) .................................................................................68

*Orr v. Beamon*,
    77 F. Supp. 2d 1208 (D. Kan. 1999) ...............................................................................47

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ........................................................................................................17

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
    868 So. 2d 331 (Miss. 2004)...........................................................................................53

*Paltre v. Gen. Motors Corp.*,
    810 N.Y.S.2d 496 (App. Div. 2006) ..........................................................................65, 66

*Parker v. W. Dakota Insurors, Inc.*,
    605 N.W.2d 181 (S.D. 2000) ..........................................................................................77

*Paschall's v. Dozier*,
    407 S.W.2d 150 (Tenn. 1966) ............................................................................32, 78, 83

*Peterson v. Cellco P'ship*,
    80 Cal. Rptr. 3d 316 (Ct. App. 2008)..............................................................................37

*Peterson v. Visa U.S.A. Inc.*,
    No. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) (Ex. J-24)........................38

*Pitts v. Jackson Nat'l Life Ins. Co.*,
    574 S.E.2d 502 (S.C. Ct. App. 2002)...............................................................................76

*Porter v. Hu*,
    169 P.3d 994 (Haw. Ct. App. 2007) ................................................................................43

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ......................................................................................16

*Princeton Ins. Agency, Inc. v. Erie Ins. Co.*,
    690 S.E.2d 587 (W. Va. 2009).........................................................................................83

*Prohias v. Pfizer ("Prohias I")*,
    485 F. Supp. 2d 1329 (S.D. Fla. 2007) ......................................................................31, 42

REDACTED

*Prohias v. Pfizer, Inc. ("Prohias II")*,
  490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...................................................................40

*Province v. Cleveland Press Publ'g Co.*,
  787 F.2d 1047 (6th Cir. 1986) ...................................................................20, 21, 26

*Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*,
  537 A.2d 994 (Vt. 1987) ...............................................................................32, 83

*Rivers v. Amato*,
  No. CV-00-131, 2001 WL 1736498 (Me. Super. Ct. June 22, 2001) (Ex. J-35) *aff'd*,
  Mem. 02-51 (Me. Dec. 12, 2002) (unpublished table decision) (Ex. J-36); ...........................49

*Romero v. Philip Morris Inc.*,
  242 P.3d 280 (N.M. 2010) ...........................................................................61

*Rosetta v. Moretti*,
  No. 98-89, 2005 WL 1109638 (R.I. Super. Ct. May 4, 2005) (Ex. J-50) ..............................74

*Russell v. Zeemering*,
  No. 260660, 2006 WL 2382511 (Mich. Ct. App. Aug. 17, 2006) (Ex. J-41) .........................52

*S. Title Guar. Co. v. Bethers*,
  761 P.2d 951 (Utah Ct. App. 1988) ..................................................................81

*Schroeder v. Buchholz*,
  622 N.W.2d 202 (N.D. 2001) .......................................................................72

*Schumacher v. Schumacher*,
  627 N.W.2d 725 (Minn. Ct. App. 2001) ..............................................................53

*Senne & Co. v. Simon Capital Ltd. P'ship*,
  No. 93-302, 2007 WL 1175858 (Kan. Ct. App. Apr. 20, 2007) (Ex. J-19) .....................32, 48

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
  130 S. Ct. 1431 (2010) ...............................................................................56

*Shaw v. Marriott Int'l, Inc.*,
  605 F.3d 1039 (D.C. Cir. 2010) .....................................................................39

*Shepard v. DineEquity, Inc.*,
  No. 08–2416–KHV, 2009 WL 8518288 (D. Kan. Sept. 25, 2009) (Ex. J-17) ......................29

*Siena v. Microsoft Corp.*,
  796 A.2d 461 (R.I. 2002) .............................................................................74

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ...................................................................................10

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) .....................................................................................16

*Smith v. Lawyers Title Ins. Corp.*,
  No. 07–12124, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009) (Ex. J-10) ...................16, 17, 18

*Smith v. Stowell*,
  125 N.W.2d 795 (Iowa 1964) ........................................................................46

REDACTED

*Soukop v. ConAgra, Inc.*,
   653 N.W.2d 655 (Neb. 2002) ........................................................................................58

*Southard v. Visa U.S.A. Inc.*,
   LACV 031729, 2004 WL 3030028 (Iowa Dist. Ct. Nov. 17, 2004) (Ex. J-29) ................... 46

*Southard v. Visa U.S.A. Inc.*,
   734 N.W.2d 192 (Iowa 2007) ...............................................................................45, 46

*Southaven Land Co. v. Malone & Hyde, Inc.*,
   715 F.2d 1079 (6th Cir. 1983) ................................................................................19, 20

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*,
   493 N.W.2d 137 (Minn. Ct. App. 1992) ........................................................................52

*Sperry v. Crompton Corp.*,
   863 N.E.2d 1012 (N.Y. 2007) ......................................................................................67

*Spires v. Hosp. Corp. of Am.*,
   289 F. App'x 269 (10th Cir. 2008) ...............................................................................47

*Standard Oil Co. of Ky. v. State ex rel. Attorney General*,
   65 So. 468 (Miss. 1914) .............................................................................................54

*Stark v. Visa U.S.A., Inc.*,
   No. 03-055030, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) (Ex. J-14) ...............22, 51

*State ex rel. Palumbo v. Graley's Body Shop, Inc.*,
   425 S.E.2d 177 (W. Va. 1992) .....................................................................................84

*State v. Daicel Chem. Indus., Ltd.*,
   840 N.Y.S.2d 8 (App. Div. 2007) ..............................................................................65, 66

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1988) ....................................................................................................85

*Strang v. Visa U.S.A., Inc.*,
   No. 03 CV 011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) (Ex. J-62) ...................85

*Sun Dun, Inc. of Wash. v. Coca-Cola Co. ("Sun Dun I")*,
   740 F. Supp. 381 (D. Md. 1990) ..................................................................................38

*Sun Dun, Inc. of Wash. v. Coca-Cola Co. ("Sun Dun II")*,
   770 F. Supp. 285 (D. Md. 1991) ..................................................................................38

*Szymczak v. Nissan N. Am., Inc.*,
   No. 10 CV 7493, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) (Ex. J-27) ..........................41

*Teague v. Bayer AG*,
   671 S.E.2d 550 (N.C. Ct. App. 2009) ........................................................................68, 69

*Tenn. Med. Ass'n v. Blue Cross Blue Shield of Tenn., Inc.*,
   229 S.W.3d 304 (Tenn. Ct. App. 2007) .........................................................................78

*The "In" Porters, S.A. v. Hanes Printables, Inc.*,
   663 F. Supp. 494 (M.D.N.C. 1987) ...............................................................................70

Case 2:12-md-02311-SFC-RSW ECF No. 250-7 PageID.21859 Filed 03/14/16 Page 34 of 127
2:12-cv-00803-MOB-MKM    Doc # 56-2   Filed 08/06/13   Pg 33 of 126   Pg ID 432

REDACTED

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,*
   552 F.3d 430 (6th Cir. 2008) ..................................................................6

*Tradesmen Int'l, Inc. v. U.S. Postal Serv.,*
   234 F. Supp. 2d 1191 (D. Kan. 2002) ...................................................48

*Tri-State Mech., Inc. v. Northland Coll.,*
   681 N.W.2d 302 (Wis. Ct. App. 2004) ..................................................85

*Trustmark Ins. Co. v. Bank One, Ariz., NA,*
   48 P.3d 485 (Ariz. Ct. App. 2002) ........................................................34

*U.S. ex rel. Purcell v. MWI Corp.,*
   520 F. Supp. 2d 158 (D.D.C. 2007) ......................................................40

*Union Nat'l Life Ins. Co. v. Crosby,*
   870 So. 2d 1175 (Miss. 2004) ...............................................................54

*USLife Title Co. of Ariz. v. Gutkin,*
   732 P.2d 579 (Ariz. Ct. App. 1986) ......................................................34

*Variety Children's Hosp. v. Vigliotti,*
   385 So. 2d 1052 (Fla. Dist. Ct. App. 1980) ..........................................41

*Vinci v. Waste Mgmt., Inc.,*
   36 Cal. App. 4th 1811 (1995) ................................................................36

*Walker v. USAA Cas. Ins. Co.,*
   474 F. Supp. 2d 1168 (E.D. Cal. 2007) .................................................37

*Wallis v. Ford Motor Co.,*
   208 S.W.3d 153 (Ark. 2005) .................................................................35

*Warth v. Seldin,*
   422 U.S. 490 (1975) ..............................................................................16

*Washa v. Miller,*
   546 N.W.2d 813 (Neb. 1996) ................................................................58

*Weather Doctor Servs. Co., Inc. v. Stephens,*
   No. E2000-01427-COA-R3-CV, 2001 WL 849540 (Tenn. Ct. App. July 27, 2001)
   (Ex. J-56) ...............................................................................................79

*Weiler v. Draper Chevrolet Co.,*
   No. 12-12402, 2013 WL 388585 (E.D. Mich. Jan. 31, 2013) (Ex. J-3) ....5

*Will v. Mill Condo. Owners' Ass'n, Inc.,*
   No. 457-10-01 Wrcv, 2002 WL 34340312 (Vt. Sup. Ct. July 5, 2002) (Ex. J-60)..........83

*Willis v. Rehab Solutions, PLLC,*
   82 So. 3d 583, 588 (Miss. 2012), *reh'g denied*, No. 2010-CA-01015-SCT, 2012 Miss.
   LEXIS 175 (Miss. Mar. 29, 2012) (Ex. J-15) ...........................................28, 54

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)...................................................................................85

*Winters v. Cnty. of Clatsop*,
    150 P.3d 1104 (Or. Ct. App. 2007) .................................................................31, 74

*Wittenberg v. First Indep. Mortg. Co.*,
    No. 3:10–CV–58, 2011 WL 1357483 (N.D. W. Va. Apr. 11, 2011) (Ex. J-61) ....................84

*Yee v. Nat'l Gypsum Co.*,
    CV-09-8189-PHX-DGC, 2010 WL 2572976 (D. Ariz. June 22, 2010) (Ex. J-22) ...............34

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) ...........................................................................................85

*Zinter v. Univ. of Minn.*,
    799 N.W.2d 243 (Minn. Ct. App. 2011) ..............................................................53

*Zuccarini v. Hoescht (In re Cardizem CD Antitrust Litig.)*,
    200 F.R.D. 326 (E.D. Mich. 2001) .....................................................................51

STATUTES

Ariz. Rev. Stat. Ann. § 44-1412 ..............................................................................33

Ark. Code Ann. § 4-88-113(f) .................................................................................35

D.C. Code § 28-3901 ............................................................................................39

D.C. Code § 28-4515 ............................................................................................38

Haw. Rev. Stat. § 480-1 ........................................................................................43

Haw. Rev. Stat. § 480-2 ........................................................................................43

Haw. Rev. Stat. § 480-3 ........................................................................................43

2002 Haw. Sess. L. Act 229 ....................................................................................43

740 Ill. Comp. Stat. § 10/7 .....................................................................................45

740 Ill. Comp. Stat. § 10/11 ...................................................................................44

Mass. Gen. Laws Ch. 93A, § 11 ...............................................................................49

Mich. Comp. Laws Ann. § 445.784(2) .......................................................................51

Mo. Rev. Stat. § 407.025 .......................................................................................55

Mont. Code Ann. § 30-14-133 .................................................................................56

Mont. Code Ann. § 30-14-201 .................................................................................56

Neb. Rev. Stat. § 59-821 .......................................................................................57

Neb. Rev. Stat. § 59-829 .......................................................................................57

Nev. Rev. Stat. Ann. § 598A.050 .............................................................................58

Nev. Rev. Stat. Ann. § 598A.060 .........................................................................59, 60

N.H. Rev. Stat. Ann. § 356:11 .................................................................................60

N.H. Rev. Stat. Ann. § 356:14 .................................................................................60

REDACTED

N.M. Stat. Ann. § 57-1-15 ...................................................................................61

N.M. Stat. Ann. § 57-12-2(E) .............................................................................62

N.C. Gen. Stat. § 75-1 ..................................................................................69, 70

N.C. Gen. Stat. § 75-1.1 .......................................................................................70

Or. Rev. Stat. § 646.715 (2) ................................................................................73

S.C. Code Ann. § 39-5-140(a) .............................................................................75

Utah Code Ann. § 68-3-3 .....................................................................................79

Utah Code Ann. § 76-10-3109 .............................................................................79

Utah Code Ann. § 76-10-3118 .............................................................................79

W. Va. Code Ann. § 47-18-16 ..............................................................................83

OTHER AUTHORITIES

Nebraska Comm. On Judiciary, Statement of Intent, L.B. 1278 (2002)......................................58

Restatement (First) of Restitution § 107(1) ........................................................31

REDACTED

## INDEX OF EXHIBITS

| | |
|---|---|
| **EXHIBIT A** | Summary Of Defendants' Arguments For Dismissal Of Plaintiffs' (1) Individual State Law Antitrust Claims; (2) Individual State Law Consumer Protection Claims; And (3) Individual State Law Unjust Enrichment Claims |
| **EXHIBIT B** | Index Of Authorities Cited In Appendices |
| **EXHIBIT C** | Appendix Of Authority In Support Of Defendants' Argument That Plaintiffs Who Purchased Or Leased A Vehicle In Which A Fuel Sender Was A Component Part Cannot Demonstrate Antitrust Standing |
| **EXHIBIT D** | Appendix Of Authority In Support Of Defendants' Argument That Plaintiffs' Boilerplate Allegations Fail To Allege A Sufficient Nexus With *Intra*state Commerce As The Antitrust Laws Of Six States Require |
| **EXHIBIT E** | Appendix Of Authority In Support Of Defendants' Argument That Plaintiffs' Boilerplate Allegations Fail To Allege A Sufficient Nexus With *Intra*state Commerce As The Consumer Protection Laws Of Five States Require |
| **EXHIBIT F** | Appendix Of Authority In Support Of Defendants' Argument That Plaintiffs' Unjust Enrichment Claims Fail In The Twenty-Two States That Recognize The Benefit Of The Bargain Limitation |
| **EXHIBIT G** | Appendix Of Authority In Support Of Defendants' Argument That Plaintiffs' Unjust Enrichment Claims Fail In The Fourteen States That Require A Direct Benefit Conferred By Plaintiffs |
| **EXHIBIT H** | Appendix Of Authority In Support Of Defendants' Argument That Plaintiffs' Unjust Enrichment Claims Fail In The Eleven States Where Retention Of A Benefit Is Not Unjust Where The Defendant Has Provided Consideration For It |
| **EXHIBIT I** | Appendix Of Authority In Support Of Defendants' Argument That Plaintiffs Fail To Satisfy The Requirements For Pleading Unjust Enrichment Under The Laws Of Thirteen States |
| **EXHIBITS J-1-62** | Copies Of Unpublished Authority Cited In Memorandum In Support of Motion And Exhibits C–I |
| **EXHIBITS K-1-9** | Copies Of Court Documents Referenced In Memorandum In Support of Motion |

REDACTED

## INTRODUCTION

This is the fourth case in which Automobile Dealers ("ADs") and End-Payors ("EPs") allege they were indirectly injured when they bought parts or vehicles containing parts that were allegedly affected by price-fixing by auto parts makers directed at upstream auto manufacturers. Both groups of Indirect Purchaser Plaintiffs ("IPPs") allege that Defendants conspired to rig bids for, and fix the prices of, fuel senders ("FSs"), which are devices that sit inside a fuel tank and measure the amount of fuel within the tank. (AD CCC ¶ 3; EP CAC ¶ 2.) IPPs claim that Defendants fixed the price of *all* FSs sold to *all* auto manufacturers over a time period extending back to March 2001 for the ADs and March 2004 for the EPs. However, IPPs plead little more than a *single* FS-related plea agreement that concerns sales to a *single* automobile manufacturer, and ████████████████████████████████████████████████████ (AD CCC ¶¶ 145-47; EP CAC ¶¶ 100-02, 119.) This is in stark contrast to the facts pleaded in IPPs' complaints[1] at issue in *In re Automotive Parts Antitrust Litig.* (*Wire Harness Cases – Indirect Purchasers*) ("*WH*"), No. 12–md–02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013) (Ex. J-1) where, among many other differences, there were multiple plea agreements, some of which concerned sales to multiple automakers. As the Supreme Court made clear in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), to survive a motion to dismiss, IPPs' legal conclusion of a broad, all-encompassing FS conspiracy "must be supported by factual allegations." IPPs' Complaints are not.

---

[1] *See* End Payors' Consolidated Amended Class Action Complaint, 12-md-02311, ECF No. 174 (E.D. Mich. June 26, 2012) (Ex. K-1); Dealership Consolidated Class Complaint, 12-md-02311, ECF No. 85 (E.D. Mich. May 14, 2012) (Ex. K-2), *In re Automotive Parts Antitrust Litig. (Wire Harness Cases – Indirect Purchasers)* ("*WH*"), No. 12–md–02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013).

REDACTED

EPs plead *nothing* about what they actually bought – cars or replacement FSs – or from

whom, and no IPP pleads any facts to suggest that the product(s) they bought downstream were

affected by the alleged price-fixing of certain FSs sold to the single automaker that was the

subject of the FS plea they identify. Moreover, no EP even identifies any particular vehicle he

bought or leased, or where. Despite their extremely broad claims, EPs cite almost no facts in

support. Instead, EPs resort to (1) gross misrepresentations, falsely claiming (EP CAC ¶¶ 101,

103, 107) both that (a) a *FS-related* Criminal Information was filed against DENSO, and that

two of its employees entered *FS-related* plea agreements, *even though those documents have*

*nothing to do with FSs*,[2] and that (b) Yazaki's FS-related plea relates to FS sales to multiple auto

manufacturers when only "an" auto manufacturer is referenced;[3] (2) pointing to plea agreements

by *other* entities and individuals that, again, *are unrelated to FSs* (EP CAC ¶¶ 106, 109-12); and

(3) generically identifying characteristics of the FS market that allegedly make it conducive to

collusion (*id.* ¶¶ 83-92). Although ADs do not resort to mischaracterizing the plea, they largely

rely on the same "facts" to support their claims, adding only that the same companies and

employees that make and/or sell instrument panel clusters (as to which YC and a YC employee

pled guilty to price-fixing) "often" do the same for FSs. (AD CCC ¶¶ 118, 126-35, 145-52, 156-

57.) But IPPs' effort to support their broad FS conspiracy claims by arguing *without any factual*

*linkage* that "if it happened there (for other auto parts), it must have happened here (with respect

to FSs)" fails. *See, e.g.*, *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961,

---

[2] *See* Information, *United States v. Denso Corp.*, No. 12-cr-20063, ECF No. 1 (E.D. Mich. Jan. 30, 2012) (Ex. K-3); Plea Agreement, *United States v. Hattori*, No. 12-cr-20271, ECF No. 8 (June 27, 2012) (Ex. K-4); Plea Agreement, *United States v. Imai*, No. 12-cr-20185, ECF No. 7 (E.D. Mich. May 15, 2012) (Ex. K-5).

[3] *See* Plea Agreement ¶¶ 2, 4, *United States v. Yazaki Corp.*, No. 12-cr-20064, ECF No. 6 (E.D. Mich. Mar. 1, 2012) (Ex. K-6).

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21865 Filed 03/14/16 Page 40 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 56-2 Filed 08/16/13 Pg 39 of 126 Pg ID 448
REDACTED

975, 979 (N.D. Iowa 2011); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 515

(S.D.N.Y. 2009).

IPPs spout economic buzzwords like "barriers to entry" and "inelastic demand," but,

*unlike in WH*, allege nothing about Defendants' respective FS market shares or other participants

in that market.  IPPs likewise plead nothing about how the patents owned by some unnamed

Yazaki entity (AD CCC ¶ 129; EP CAC ¶ 85) could impede entry given IPPs' failure to plead

anything about what these patents protect or the existence (or not) of other patents or

technologies that accomplish the same thing.  Patent ownership does not establish market, much

less, monopoly, power (the power to control price or exclude competition).  *See Illinois Tool*

*Works v. Independent Ink, Inc.*, 547 U.S. 28, 45-46 (2006).  Yet, IPPs offer nothing more to

support their grossly overbroad, factually unsupported claims of a conspiracy allegedly affecting

*every* FS sold to *every* auto manufacturer over a roughly decade-long period.

Seeking to bolster their factually bereft claims, ADs conclusorily allege that any

conspiracy must have trickled down to cause them injury because FSs "comprise a not

insignificant portion of the cost of a vehicle."  (AD CCC ¶ 185.)  But even if that conclusion

were true (and ADs allege no facts to suggest it is), it says nothing about the size of the purported

overcharge on any FS when initially sold to the car maker, much less at the time that the car, of

which the FS is but one of thousands of parts, was bought by any IPP. ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21866 Filed 03/14/16 Page 41 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/16/13 Pg 40 of 126 Pg ID 444

REDACTED

IPPs' replacement FS claims fare no better. IPPs do not (and cannot) allege that the plea agreements on which they so heavily rely relate at all to FSs bought in the repair part market, nor a single fact to support their assertion that prices of replacement FSs are connected in any way to requests for quotation ("RFQs") by car makers, much less that prices of all replacement FSs for *every* make and model were affected by the RFQ pricing to the single auto manufacturer at issue in the single FS-related plea agreement they cite. While IPPs claim the prices of replacement FSs "were inflated by Defendants' collusion, either as a direct effect of their conspiracy, or through umbrella effects," (AD CCC ¶ 125; EP CAC ¶ 79), they allege not one fact to support that claim (which the courts have repeatedly rejected in any event). Thus, whether IPPs bought replacement FSs ("Replacement Part IPPs") or vehicles containing FSs ("Component IPPs"), their claims of injury are entirely conclusory and speculative, and their factually unsupported claims of an overarching conspiracy fall well short of the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

IPPs' claims for damages under the antitrust, consumer protection, and/or unjust enrichment laws of 31 states and the District of Columbia ("DC") are meritless for other reasons as well. As summarized in Exhibit A, IPPs have pled themselves out of, or failed to allege essential elements of, causes of action under most of the state laws they invoke. For example, among numerous other deficiencies, (1) ADs, as admitted businesses and indirect purchasers seeking to pursue class claims, have pled themselves out of antitrust or consumer protection claims in four states and DC, (2) all IPPs have failed to allege the nexus between Defendants' conduct and *intrastate* commerce necessary to state viable antitrust and/or consumer protection

claims in eight states and DC, and (3) all IPPs fail to identify the unjust enrichment laws of any

jurisdiction in which they seek recovery, thus requiring dismissal of all of their unjust

enrichment claims.  IPPs' federal injunctive relief claims likewise fail because IPPs have not

pled any real threat of future injury.[4]  IPPs' Complaints (which, as explained *infra*, differ from

those largely found sufficient in *WH*, a case involving different products, markets, conspiracy

allegations, time periods, and several different parties) thus require dismissal.

## ARGUMENT

## I.      IPPS FAIL TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM.

Because IPPs fail to specifically allege any facts in their Complaints to support their

claim that Defendants participated in a broad, decade-long conspiracy, their claims must be

dismissed under *Twombly* and *Iqbal*.  As noted above, the Supreme Court has made clear that, to

survive a motion to dismiss, the IPPs' conclusion of a broad, all-encompassing conspiracy "must

be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  The Sixth Circuit has interpreted

*Twombly* and *Iqbal* to require a plaintiff's complaint to "specify how *each* defendant was

involved in the alleged conspiracy." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th

Cir. 2012) (emphasis added; internal alterations and quotations omitted).  Plaintiffs must allege

"what happened, when it happened" and "the role of . . . the named defendants in harming

Plaintiff." *Judkins v. HSBC Mortg. Servs.*, No. 12-cv-14706, 2013 WL 141204, at *1 (E.D.

Mich. Jan. 10, 2013) (Ex. J-2); *cf. Weiler v. Draper Chevrolet Co.*, No. 12-12402, 2013 WL

388585, at *1 n.1 (E.D. Mich. Jan. 31, 2013) ("There is a 'new sheriff in town' . . . and his name

is '*Twiqbal*.'" (citation and internal quotations omitted)) (Ex. J-3).  Although decisions vary

---

[4] IPPs assert a federal claim only for injunctive relief because, in *Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977), the Supreme Court held that indirect purchasers cannot recover money
damages for federal antitrust violations because their injuries are too remote and speculative.

regarding the level of detail required to satisfy this pleading standard, *see In re Automotive Parts Antitrust Litig. (Wire Harness Cases – Direct Purchasers)*, No. 12-MD-02311, 2013 WL 2456584, at *7 (E.D. Mich. June 6, 2013) (Ex. J-4), there is no doubt that facts beyond the mere fact of a plea must be alleged to establish a nationwide price-fixing conspiracy impacting all indirect purchasers of automobiles, especially where (as here) one of those pleas does not even involve the product at issue in the alleged conspiracy and the other identifies conduct aimed at only a single automobile manufacturer.

*Iqbal* explains that Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. IPPs' legal conclusions of a broad-based conspiracy "must be supported by factual allegations." *Id*. at 679. Allegations that lump Defendants together – or with parties who are not even named in the Complaints – are not "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678; *In re Travel Agent Comm'n Antitrust Litig*., 583 F.3d 896, 905 (6th Cir. 2009); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436-37 (6th Cir. 2008) ("Generic pleading, alleging misconduct against defendants without specifics as to the role *each* played in the alleged conspiracy, was specifically rejected by *Twombly*." (emphasis added)). Here, IPPs plead only generic and conclusory facts about the market, point to the Defendants' pleas ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and rely on several vague allegations regarding other cases against other parties to conclude there was a decade-long conspiracy that affected *all* purchasers of *all* FSs everywhere. (AD CCC ¶¶ 116–64, EP CAC ¶¶ 72–119.) Having alleged no *specific* facts regarding any of the Defendants' sales of FSs, or their own purchases, the IPPs are not entitled to survive a motion to dismiss. *See New Albany*

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21869 Filed 03/10/16 Page 44 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/16/13 Pg 43 of 126 Pg ID 442
REDACTED

*Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) ("In this case that

means . . . that plaintiff must allege specific facts of [anticompetitive conduct] even if those facts

are only within the head or hands of the defendants. . . . The language of *Iqbal*, 'not entitled to

discovery,' is binding on the lower federal courts." (quoting *Iqbal*, 556 U.S. at 686)). Without

specific transactions or details to point to, IPPs' Complaints include only indicia of *possible*

wrongdoing by the Defendants and *nothing* to suggest that any such wrongdoing affected IPPs

themselves. That is simply not enough under *Twombly* and *Iqbal*.

## II. IN THE ALTERNATIVE, IPPS' CLAIMS SHOULD BE DISMISSED BECAUSE IPPS LACK CONSTITUTIONAL STANDING TO ASSERT THEM.

### A. IPPs Fail To Plead Facts Establishing Article III Standing.

Even if IPPs had pled facts sufficient to plausibly support the broad conspiracy they have

asserted, their claims would still fail because they have not alleged facts to establish they

suffered injury-in-fact *because of* any such conspiracy. *See, e.g.*, *Alabama v. Blue Bird Body*

*Co.*, 573 F.2d 309, 327 (5th Cir. 1978) ("'Whatever the nature of the alleged conspiracy . . .

injury is the *sine qua non* for stating a cause of action'"; "there c[an] be no recovery of any

amount of damage 'where the jury could only speculate either as to its occurrence or as to its

causal relationship to the anticompetitive activity'" (citation omitted)). To satisfy minimum

constitutional standing requirements, a plaintiff "must allege personal injury fairly traceable to

the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

*Allen v. Wright*, 468 U.S. 737, 751 (1984). As this Court recognized in *WH*, the injury alleged

must be "concrete and particularized" and "actual or imminent." 2013 WL 2456612, at *8

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Coyne v. Am.*

*Tobacco*, 183 F.3d 488, 494 (6th Cir. 1999) ("To satisfy Article III's standing requirement, a

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21870 Filed 03/14/16 Page 45 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/16/13 Pg 44 of 126 Pg ID 448

REDACTED

plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of
the defendant . . . .").

IPPs' allegations fall well short of establishing that they suffered *any* injury, much less
one fairly traceable to the Defendants' conduct. While IPPs claim repeatedly that they paid more
for their vehicles (whether leased or purchased) and replacement FSs than they would have in the
absence of the alleged conspiracy (*e.g.*, AD CCC ¶¶ 161, 170, 176-77, 188, 209, 212; EP CAC
¶¶ 82, 131, 141, 148, 161), ██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████ the facts IPPs allege regarding FSs, the
FS bidding process, and the FS distribution chain still provide no support for their conclusory
claims of remote and derivative injury.

> **1.** **Component IPPs fail to sufficiently plead a causal connection between
> their claimed injury and the alleged unlawful conduct.**

As self-described *indirect* purchasers that had no direct dealings with Defendants (AD
CCC ¶ 192; EP CAC ¶ 144), Component IPPs lack standing to bring a claim absent well-pled
allegations that (1) *all* resellers were subject to overcharges from the conspiracy, and (2) those
resellers then passed on any alleged overcharge at every one of the various intermediate levels of
the distribution chain until it caused injury to the named IPPs – i.e., that "the threatened loss or
damage proximately result[ed] from the antitrust violation." *In re N.J. Title Ins. Litig.*, No. 08–
1425, 2010 WL 2710570, at *5 (D.N.J. July 6, 2010) (Ex. J-5). Rather than doing so,
Component IPPs simply plead an elongated distribution chain for vehicles containing FSs. They
allege first that, three years before mass production of a new model, each auto manufacturer

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21871 Filed 03/14/16 Page 46 of 127
Case 2:12-cv-00303-MOB-MKM Doc # 56 Filed 08/16/13 Pg 45 of 126 Pg ID 449

REDACTED

("OEM") would issue an RFQ to auto parts suppliers, who would then bid to supply FSs made in "a design that is unique to a particular vehicle model."  (AD CCC ¶¶ 119, 133; EP CAC ¶¶ 75, 86.)  The winning bidder would supply FSs for that model typically for a four to six year period.  (AD CCC ¶¶ 119; EP CAC ¶¶ 75.)  The OEM would sell the finished vehicles incorporating the FS and thousands of other parts to downstream ADs (AD CCC ¶ 124), which would, in turn, sell or lease them to EPs.  (EP CAC ¶ 77.)  Thus, each Component IPP is not only multiple levels removed from the Defendants in the distribution chain, but also buys or leases, for a single price, a vehicle comprised of thousands of parts – the prices of all of which are subject to various outside influences.  *See, e.g.*, *In re Refrigerant Compressors Antitrust Litig.* ("*Compressors II*"), No. 2:09–md–02042, 2013 WL 1431756, at *14 (E.D. Mich. Apr. 9, 2013) (finished products containing price-fixed component "contain numerous other components, all of which collectively determine the final price paid") (Ex. J-6); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV III*"), 632 F. Supp. 2d 42, 59 n.21 (D. Me. 2009) ("[C]ar purchases generally are a product of individual negotiation and can often involve other issues such as trade-in allowances, below-market-rate financing, etc.").

IPPs plead no facts isolating any of these influences so as to give rise to a plausible claim that (1) every vehicle sold in America contained a FS whose original price to the OEM had been impacted by the alleged conspiracy; (2) the OEM and each subsequent reseller in the chain passed on some or all of the alleged overcharge that resulted from the initial FS sale to the OEM; and (3) the price that IPPs ultimately paid was higher *as a result of* the alleged FS overcharge to the OEM.  They allege only that FSs are "discrete physical products" that "follow a traceable physical chain of distribution from the Defendants to the Plaintiffs and the members of the Classes" and thus jump to the conclusion that "the prices paid by direct purchasers of [FSs]

affect prices paid by indirect purchasers of new motor vehicles containing [FSs]."  (AD CCC
¶ 179-80; EP CAC ¶ 133-34.)  But the fact that a FS can be traced from manufacturer to the
ultimate end user does not permit a reasonable conclusion that an overcharge to the OEM injured
*everyone* who ever bought a car.  *See, e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)
("[T]he 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that
the party seeking review be himself among the injured.").

IPPs must plead facts suggesting that there was an *overcharge on the FS in the car they
bought*, and it passed through *to them*, particularly given the commercial realities of the auto
industry making such pass-through unlikely.  ADs' conclusion that FSs "comprise a not
insignificant portion of the cost of a vehicle" (AD CCC ¶ 185) is legally insufficient, as it
provides no facts about the cost of a FS relative to the final price of a vehicle – of which the FS
is but one of thousands of parts.  Although the information is readily available, IPPs allege
nothing about the prices of FSs or how those prices compare to the prices they paid for their
vehicles.  Even at a price of $100 per FS, a 10% overcharge on the price paid by the OEM for the
FS would not amount to a significant portion of the cost of even a relatively inexpensive $10,000
new car.  Thus, IPPs' bald conclusion that the price paid by *every* AD was impacted by the
unspecified alleged overcharge is simply not plausible in the absence of facts to support it, and
their further legal conclusion that every EP *also* paid some portion of that overcharge is even less
plausible.  This is particularly true given the numerous factors that impact prices of finished cars,
whether sold to ADs, or further downstream to EPs, including:  the cost of other components, gas
prices (which may make the vehicle more or less in demand), interest rates, seasonality,
inventory levels, style, accessories, brand competition, and many more.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21873 Filed 03/14/16 Page 48 of
127
Case 2:12-cv-00303-MOB-MKM Doc # 56 Filed 08/16/13 Pg 47 of 126 Pg ID 451

Although IPPs assert that "it is possible" to prove they were impacted by Defendants'
conduct (AD CCC ¶ 186; EP CAC ¶ 139), they plead nothing to show that, even if the cars they
bought contained FSs impacted by the alleged price-fixing conspiracy, any overcharge was
passed on to them.  Their injury claims amount only to "unadorned, the-defendant-unlawfully-
harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678, which contain no "factual content that allows
the court to draw the reasonable inference" that Defendants' conduct caused *these specific IPPs*
any injury.  *Id.* (citing *Twombly*, 550 U.S. at 556); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d
442, 451 (6th Cir. 2007) (en banc) (A "'naked assertion' of antitrust injury . . . is not enough; an
antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent
with)' antitrust injury." (quoting *Twombly*, 550 U.S. at 557)); *Nat'l ATM Council, Inc. v. Visa,
Inc.*, __ F. Supp. 3d __, CA Nos. 1:11-cv-01803, 01831, 2013 WL 525463, at *6 (D.D.C. Feb.
13, 2013) (an antitrust "plaintiff must personally suffer the harm") (Ex. J-7).

Defendants are cognizant that the Court reached a different conclusion in *WH*, 2013 WL
2456612, at *8.  There, the Court acknowledged that the *WH* Component "IPPs face a difficult
challenge" because (as here) "[t]hey must show that every reseller in the chain passed on some or
all of the alleged overcharge to demonstrate that the price of their vehicle was higher than it
would have been because of the overcharge."  Nonetheless, it found Article III standing based on
two grounds:  (1) IPPs had alleged "economic injury," which the Court held was all that was
required under *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470
F.3d 286, 294 (6th Cir. 2006), *overruled on other grounds by Davis v. Prison Health Servs.*, 679
F.3d 433 (6th Cir. 2012); and, (2) defendants "cited no authority requiring an indirect purchaser
to allege the detailed mechanics of the pass-through process to plead injury-in-fact and causation

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21874 Filed 03/14/16 Page 49 of
127
1:12-cv-00303-MOB-MKM Doc # 54 Filed 08/16/13 Pg 48 of 126 Pg ID 432

REDACTED

for purposes of constitutional standing to survive a Rule 12(b)(6) motion." *WH*, 2013 WL
2456612, at *8.

However, *Club Italia* is a pre-*Twombly*, non-antitrust case that addressed whether a party
excluded from bidding on a government contract had constitutional standing given Supreme
Court precedent that "disappointed bidders" lack standing to seek relief in federal court. 470
F.3d at 293-94. In finding standing, the Sixth Circuit held both that the plaintiff's economic
injury in that case was a direct result of being precluded by defendant from consideration for the
contract, and that plaintiff had "no trouble" showing its injury was traceable to defendant's
action. *Id.* at 295. Here, far from having "no trouble" showing traceability, IPPs face, at the
very least, a "difficult challenge." By contrast to the bidder in *Club Italia*, whose injury from
being excluded from consideration was direct and obvious, IPPs have failed to plead any facts
suggesting that any impact from the alleged FS price-fixing on the purchase price of a finished
vehicle is even plausible.

Moreover, authority *does* exist requiring plaintiffs to allege "the detailed mechanics of
the pass-through process to plead injury-in-fact and causation for purposes of constitutional
standing to survive a Rule 12(b)(6) motion." *WH*, 2013 WL 2456612, at *8. In *Nat'l ATM*,
2013 WL 525463, at *8, the court rejected plaintiffs' argument that "[i]t is not required in an
antitrust complaint to plead the economics textbook that goes in between the allegation of the
competition injury and the actual injury . . . ." Rather, it held that "to have standing to sue on an
antitrust claim, a private plaintiff must show two things: (1) that the defendant's alleged
wrongdoing has caused him to suffer an injury in fact that affects his business or property; and
(2) that the injury is the kind of injury the antitrust laws were intended to prevent." *Id.* at *6.
The court made clear that mere allegations that competition has been restrained are insufficient

Case 2:12-md-02311-SFC-RSW ECF No. 1259-7 PageID.21875 Filed 03/14/16 Page 50 of
127
1:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 49 of 126 Pg ID 458

REDACTED

to satisfy the first prong of this test. Rather, "[a] plaintiff must personally suffer the harm. In
that aspect, the injury-in-fact prerequisite in antitrust cases mirrors the Article III constitutional
standing requirement that all plaintiffs in federal cases must satisfy." *Id.* The *Nat'l ATM* court
also rejected plaintiffs' effort to argue that *In re TFT-LCD (Flat Panel) Antitrust Litigation*
("*LCD*"), 586 F. Supp. 2d 1109 (N.D. Cal. 2008), stands "for the proposition that to plead
antitrust injury, all a claimant must allege is that he paid for a product at a supra-competitive
price." *Id.* at 9. Rather, it was *because* the LCD plaintiffs had pled detailed mechanics of the
pass-through process that they had established injury-in-fact. *Id.* (citing *LCD*, 586 F. Supp. 2d at
1124). By contrast, IPPs here have made only conclusory allegations of pass-through. *Compare*
IPP Complaints, *with LCD*, 586 F. Supp. 2d at 1124 (summarizing the indirect purchasers' pass-
through allegations). Component IPPs' Complaints must therefore be dismissed for lack of
Article III standing. *See Nat'l ATM*, 2013 WL 525463 at *8-9.

### 2. Replacement Part IPPs fail to sufficiently plead a causal connection between their claimed injury and the alleged unlawful conduct.

The Replacement Part IPPs plead even less than the Component IPPs, relying entirely on
their conclusory assertion that replacement FS prices "were inflated by Defendants' collusion,
either as a direct effect of their conspiracy or through umbrella effects." (AD CCC ¶ 125; EP
CAC ¶ 79.) But Replacement Part IPPs allege no facts to establish any conspiracy with respect
to *any* FSs sold for repair: they do not (and cannot) allege that the plea agreements they cite
have any factual connection to FSs bought in the market for repair parts. They allege nothing
about (1) who makes FSs sold for repair; (2) how such replacement FSs are priced; (3) how an
overcharge on an auto manufacturer's RFQ could translate to an ability to overcharge on FSs
sold for repair in the aftermarket; or much less (4) how the overcharge reflected in the single FS-

related plea agreement alleged here could have translated to higher prices of all replacement FSs

for every make and model in the United States since 2001 or 2004.

Replacement Part IPPs are thus left only with their conclusory assertion that the prices of

replacement FSs were "inflated . . . through umbrella effects" (AD CCC ¶ 125; EP CAC ¶ 79),

which rests on the theoretical premise that a conspiracy could raise the general price level in the

marketplace for the relevant product such that all buyers would pay a higher price than would

have prevailed absent the conspiracy. *See, e.g.*, *In re Coordinated Pretrial Proceedings in

Petroleum Products Antitrust Litig.*, 691 F.2d 1335, 1338-41 (9th Cir. 1982) (explaining and

rejecting theory). Courts have repeatedly rejected this theory as a basis for antitrust liability due

to its "highly speculative" nature. *F.T.C. v. Mylan Labs, Inc.*, 62 F. Supp. 2d 25, 39 (D.D.C.

1999); *see also Mid-West Paper Prods. Co. v. Cont'l Grp., Inc.*, 596 F.2d 573, 585 (3d Cir.

1979); *In re Vitamins Antitrust Litig.*, Nos. MISC. No. 99-197, 2001 WL 855463, at *2-3

(D.D.C. July 2, 2001) (Ex. J-8); *Antoine Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F.

Supp. 2d 1159, 1168 (C.D. Cal 2000) ("'[U]mbrella liability' necessarily involves unacceptable

processes of speculation and complexity in the award or calculation of damages."). This is

especially so where, as here, Plaintiffs are indirect purchasers, whose claims are already riddled

with the complexities of tracing the effects of a conspiracy through multiple levels of the

distribution chain. *See Petroleum Prods.*, 691 F.2d at 1341 (obstacles to tracing impact of price-

fixing through multi-tiered distribution system umbrella theory are "nearly insurmountable").

But even putting those concerns aside, Replacement Part IPPs have pled nothing to

suggest that "umbrella effects" are even theoretically plausible here. Unlike in *WH*,

Replacement Part IPPs here have alleged almost nothing about the "market" for FSs or the

relative market power of Defendants or their competitors in that market. ADs allege only that

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21877 Filed 03/10/16 Page 52 of
127
2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 51 of 126 Pg ID 458

REDACTED

"[a] small number of manufacturers supply Fuel Senders to OEMs" (AD CCC ¶ 134), and EPs

allege only that Yazaki and DENSO "dominate the Fuel Senders market" (EP CAC ¶ 91).

Neither alleges anything about how many other manufacturers of FSs there are, who or how

many are also involved in price-fixing of FSs, how they set their prices, or anything at all about

the number of manufacturers who compete to sell FSs in the aftermarket.  Even if "umbrella

effects" could give rise to an overcharge claim, Replacement Part IPPs have pled nothing to

support that theory, and dismissal of their claims for lack of Article III standing is therefore

warranted.

> **B.    IPPs Lack Constitutional Standing To Invoke The Laws Of States In Which
> No Plaintiff Resides Or Allegedly Suffered Injury.**

EPs' claims under DC law and ADs' claims under Hawaii and North Dakota laws must

also be dismissed because IPPs lack Article III standing to bring claims under the laws of states

in which none of them resides or allegedly suffered injury.  No named EP is alleged to reside or

have suffered injury in DC, and no named AD is alleged to reside, have a principal place of

business, or have suffered injury in either Hawaii or North Dakota.  IPPs thus lack Article III

standing to bring any claims under the laws of these states.  *See, e.g.*, *In re Refrigerant

Compressors Antitrust Litig.* ("*Compressors I*"), No. 2:09–md–02042, 2012 WL 2917365, at *7

(E.D. Mich. July 17, 2012) (dismissing claims under various states' laws because "no named

[indirect purchaser] Plaintiff resides in or was injured in those states") (Ex. J-9); *In re Packaged

Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-59 (E.D. Mich. 2011) (same as to indirect

purchaser claims under 26 states' laws); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924

(N.D. Ill. 2009) (dismissing state law claims in every state in which no named plaintiff resided),

*vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 657 F.3d 650 (7th

Cir. 2011); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 157 (E.D. Pa. 2009) (same as to indirect purchaser claims under 33 states' statutes).

The Court should dismiss these claims now because Article III standing "is the threshold question in every federal case [that] determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also Compressors I*, 2012 WL 2917365, at *4-5 (granting motion to dismiss non-resident state law claims after rejecting contention that Court should defer the issue until later and "'follow[ing] what it finds to be the better-reasoned opinions on this issue which recognize and refuse to abandon the fundamental prudential standing requirements of Article III'" (quoting *Packaged Ice*, 779 F. Supp. 2d at 654)); *accord Wellbutrin*, 260 F.R.D. at 155; *In re Graphics Processing Units Antitrust Litig.* ("*GPU I*"), 527 F. Supp. 2d 1011, 1026–27 (N.D. Cal. 2007); *In re Flonase Antitrust Litig.* ("*Flonase I*"), 610 F. Supp. 2d 409, 418-19 (E.D. Pa. 2009).

IPPs' potential representation of a class does not change this analysis. "[N]amed plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by other, *unidentified* members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (emphasis added; internal quotations and citations omitted); *see also Fallick v. Nationwide Mut. Ins. Co.* 162 F.3d 410, 423 (6th Cir. 1998) ("A potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action."). "[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise *to that claim*." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (internal quotations and citations omitted); *see also Smith v. Lawyers Title Ins.*

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7, PageID.21879 Filed 03/14/16 Page 54 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/06/13 Pg 53 of 126 Pg ID 452
REDACTED

*Corp.*, No. 07–12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009) (prior to class

certification, court must determine that at least one *named* plaintiff has Article III standing to

raise *each claim*) (Ex. J-10).

Although this Court ruled in *WH*, 2013 WL 2456612, at *9, that Rule 23 class

certification is antecedent to Article III concerns, citing *Hoving v. Transnation Title Ins. Co.*, 545

F. Supp. 2d 662 (E.D. Mich. 2008), and *Fallick*, 162 F.3d 410, Defendants respectfully submit

that the reasoning of those cases is inapplicable here.  *Hoving* erroneously extends *Ortiz v.*

*Fibreboard Corp.*, 527 U.S. 815, 831 (1999), beyond "the very specific situation" at issue in that

case – certification of "a mandatory global settlement class."  *Easter v. Am. W. Fin.*, 381 F.3d

948, 962 (9th Cir. 2004) (distinguishing *Ortiz*, and holding that *Ortiz* "does not require courts to

consider class certification before standing"); *see also Smith*, 2009 WL 514210, at *3 (rejecting

*Hoving*); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (citing

*Easter* in dismissing antitrust claims under 24 states' laws for lack of standing); *Wellbutrin*, 260

F.R.D. at 155 (finding *Ortiz* inapplicable because (1) "[e]very circuit to address the question has

agreed that a named plaintiff must have individual standing to pursue a class action claim," (2)

"[a] ruling as to the named plaintiffs' standing depends in no way upon the standing of proposed

class members," and (3) "[t]hus, the named plaintiffs' standing is not 'logically antecedent' to

the issue of class certification").  *Fallick* relied upon the specific "standing-related provisions of

ERISA" and expressly stated that each "potential class representative must demonstrate

individual standing vis-à-vis the defendant."  162 F.3d at 423.

Defendants thus urge the Court to revisit this issue.  In antitrust cases, the proper time to

decide whether constitutional standing has been pled for each asserted claim is on a motion to

dismiss.  *Compressors I*, 2012 WL 2917365, at *5-6 (citation omitted).  "[T]he better-reasoned

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21880 Filed 03/14/16 Page 55 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/16/13 Pg 54 of 126 Pg ID 458

REDACTED

opinions on this issue . . . recognize and refuse to abandon the fundamental prudential standing

requirements of Article III." *Packaged Ice*, 779 F. Supp. 2d at 656-57; *see also Smith*, 2009 WL

514210, at *3. No legal or efficiency basis justifies requiring Defendants and the Court to

"indulge in the prolonged and expensive implications of the plaintiffs' position only to be faced

with the same problem months down the road." *Packaged Ice*, 779 F. Supp. 2d at 655 (internal

citation omitted). IPPs' potential representation of a class cannot alter this conclusion because

"Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the

Rules Enabling Act [28 U.S.C. § 2072(b)]." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

612-13 (1997). That means that individual plaintiffs must still establish standing *for each claim*.

Defendants respectfully submit that the Court should follow the numerous cases,

including from this district, holding that Article III standing of individual plaintiffs should be

determined before class certification because no legal basis exists to subject Defendants to the

substantial burdens of litigation on state law claims for which no Plaintiff can establish standing.

*See Compressors I*, 2012 WL 2917365, at *7; *Smith*, 2009 WL 514210, at *3; *Packaged Ice*, 779

F. Supp. 2d at 657-59; *Potash*, 667 F. Supp. 2d at 924; *Wellbutrin*, 260 F.R.D. 143 at 157; *In re

CRT Antitrust Litig.* ("*CRT I*"), No. 07-cv-05944-SC, slip op. at *6 (N.D. Cal. Sept. 30, 2010)

(Ex. J-11); *Ditropan XL*, 529 F. Supp. 2d at 1107.

## III.   ALTERNATIVELY, THE COURT SHOULD DISMISS COMPONENT IPPS' CLAIMS FOR LACK OF ANTITRUST STANDING.

Distinct from *constitutional* standing, the doctrine of *antitrust* standing ensures that only

certain claimants may seek redress for an alleged antitrust injury. "Harm to the antitrust plaintiff

is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must

make a further determination *whether the plaintiff is a proper party to bring a private antitrust

action*." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459

U.S. 519, 535 n.31 (1983) (emphasis added); *see also NicSand, Inc.*, 507 F.3d at 449. Thus, even assuming – wrongly (*see* Section II, *supra*) – that the Component IPPs had sufficiently alleged injury-in-fact, the Court should still dismiss their antitrust claims for lack of *antitrust* standing.

In *AGC*, the Supreme Court identified the following five factors that courts must weigh to determine "whether the plaintiff is a proper party to bring a private [federal] antitrust action":

(1) the nature of the plaintiff's alleged injury, including the status of the plaintiff as a consumer or competitor in the relevant market;

(2) the directness of the claimed injury;

(3) whether the claimed damages are speculative;

(4) the complexity of apportioning damages; and

(5) the potential for duplicative recovery/whether more direct victims of the alleged antitrust violation exist.

459 U.S. at 536-45; *see also Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983). As explained *infra*, of the 25 state antitrust laws invoked by Component IPPs, all but Minnesota either explicitly apply the *AGC* factors to claims under their antitrust statutes, look to federal law to interpret such statutes, or apply a similar remoteness analysis to state antitrust claims – and all five factors weigh heavily against standing. *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *11; *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM I*"), 516 F. Supp. 2d 1072, 1089-93 (N.D. Cal. 2007); discussion and authority cited *infra*.

The Sixth Circuit considers the plaintiff's participation in the relevant market to be a "*significant element* of the . . . 'standing' inquiry." *Southaven*, 715 F.2d at 1086 (emphasis added). Component IPPs identify the relevant market as the "Fuel Senders Market." (EP CAC ¶¶ 83-85; AD CCC ¶¶ 126-28.) Component IPPs admittedly do not participate in the Fuel Senders Market, so, to evade the *AGC* bar, they allege that the markets for FSs and cars "are inextricably linked and intertwined because the market for Fuel Senders exists to serve the

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21882 Filed 03/14/16 Page 57 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 56 of 126 Pg ID 460

REDACTED

vehicle market." (EP CAC ¶ 132; AD CCC ¶ 178.) But this conclusory claim does not establish

that Component IPPs were manipulated to injure participants in the relevant market or that the

markets were inextricably intertwined for *AGC* standing purposes. *See Compressors II*, 2013

WL 1431756, at *12 (citing *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047, 1052 (6th

Cir. 1986)); *Bodie-Rickett & Assocs. v. Mars, Inc.*, 957 F.2d 287, 291-92 (6th Cir. 1992) ("'A

plaintiff is 'inextricably intertwined' when it is 'manipulated or utilized' by [defendant] as a

fulcrum, conduit or market force to injure competitors or participants in the relevant . . .

markets.'"; and finding that plaintiff was not "so manipulated" (quoting *Southaven*, 715 F.2d at

1086)); *see also Lorenzo v. Qualcomm, Inc.*, 603 F. Supp. 2d 1291, 1300-01 (S.D. Cal. 2009).

In *WH*, this Court held, in reliance on two Northern District of California cases, that

Component IPPs' allegations that (1) they paid higher prices for vehicles containing wire

harnesses as a result of the alleged price-fixing, (2) wire harnesses remain unchanged after

incorporation, and have no utility independent of the vehicles into which they are installed, and

(3) vehicle demand creates the demand for wire harnesses, were sufficient to satisfy *AGC*

factor 1. 2013 WL 2456612, at *15-16. But these allegations merely establish that Component

IPPs' alleged injuries are "at best, a result of – rather than a means to or cause of" – any injury

sustained by FS market participants. *Compressors II*, 2013 WL 1431756, at *12 (citing

*Province*, 787 F.2d at 1052). Thus, they do not support standing under the first *AGC* factor. To

satisfy *AGC*, "plaintiffs must be participants in the same allegedly restrained market in order to

prove antitrust injury." *In re CRT* ("*CRT II*"), No. 07-cv-05944-SC, slip op. at 10 (N.D. Cal.

May 2, 2013) (Ex. J-12). IPPs are not.

Given the significance of *AGC* factor 1 in the Sixth Circuit, Defendants urge the Court to

revisit this question and follow the decisions of the numerous federal courts, including this one,

that have applied *AGC* to *reject* similar antitrust claims by buyers of finished goods who did not
participate in, or whose injuries were not "inextricably intertwined" with, the market in which
component prices were allegedly fixed.[5]  *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *12
(citing *DRAM I*, 516 F. Supp. 2d at 1091; *Potash*, 667 F. Supp. 2d at 939-40); *In re Dynamic
Random Access Memory Antitrust Litig.* ("*DRAM II*"), 536 F. Supp. 2d 1129, 1141-42 (N.D. Cal.
2008); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2013 WL
1285338, at *11 (S.D.N.Y. Mar. 29, 2013) (Ex. J-13).  In *Compressors II*, for example, this
Court (J. Cox) analyzed allegations similar to those made by Component IPPs here – e.g., that
plaintiffs paid higher prices for their end products containing compressors than they would have
in the absence of defendants' price-fixing, that the price-fixed compressors existed to be
incorporated into the end products plaintiffs bought, and that, without the price-fixed products,
the end products themselves would not function – but found they did *not* support antitrust
standing under the "significant" first *AGC* factor.  2013 WL 1431756, at *12.  Specifically, after
determining in which of the asserted states the *AGC* factors would be applied, Judge Cox applied
those factors to conclude that the plaintiffs' alleged injuries were too remote and speculative to
find antitrust standing.

　　　With respect to the first *AGC* factor in particular, Judge Cox noted that (as here) plaintiffs
had effectively conceded they did not participate in the market in which the price-fixing
occurred, so he proceeded to evaluate whether their allegations plausibly suggested their alleged
injuries were "inextricably linked" with that market.  *Id.*  He held them to be "insufficient under
*Province* [because t]he IP Plaintiffs do not allege that they were manipulated in any way to injure

---

[5] If *WH* was meant to suggest that *AGC* does not require plaintiffs' participation in the relevant
market, Defendants respectfully urge the Court to reconsider that proposition, which is
inconsistent with the fundamental tenets of *AGC* and creates a split within this very district on
*AGC*'s meaning.

participants in the relevant market." *Id.* Other courts have reached the same result under similar

circumstances. *See, e.g., DRAM I*, 516 F. Supp. 2d at 1090-91; *DRAM II*, 536 F. Supp. 2d at

1140; *Stark v. Visa U.S.A., Inc.*, No. 03-055030, 2004 WL 1879003, at *2 (Mich. Cir. Ct. July

23, 2004) (indirect purchaser who was not a consumer in the price-fixed market lacked standing

under Michigan antitrust law) (Ex. J-14); *Potash*, 667 F. Supp. 2d at 939-40 (downstream buyers

of products containing potash "failed to show they are participants in the relevant market, and, as

a result, [did] not satisf[y] the antitrust injury requirement").

       Application of each of the other *AGC* factors also compels the conclusion that

Component IPPs lack antitrust standing to pursue their state antitrust claims. The second *AGC*

factor demands that IPPs show a clear chain of causation from Defendants' conduct to IPPs'

alleged injury. *AGC*, 459 U.S. at 540. "[V]aguely defined links" in the chain of causation are

insufficient to establish the directness of the claimed injury. *Id.* Component IPPs affirmatively

plead that there are many different layers – including manufacturing, distribution and retail

channels – separating their alleged injuries from any purported wrongful conduct in the FS

market. (*See, e.g.*, EP CAC ¶¶ 73-75, 77; AD CCC ¶¶ 117-18, 124.) That admission, coupled

with Component IPPs' failure to allege facts establishing that an overcharge, if any, was passed

down to them through every step of the distribution chain, bars their claims as too indirect.

       Component IPPs' conclusory allegations that FSs are discrete, removable and traceable

(both physically and in terms of cost) cannot salvage their claims. Both *Compressors II* and

*DRAM I* – each of which involved parts that, like FSs, were allegedly identifiable as part of a

finished good – dismissed similarly pled claims. *See Compressors II*, 2013 WL 1431756, at *14

(alleged injury "too remote and attenuated to support antitrust standing" because product must

pass through "multiple distribution and retail channels" before reaching plaintiff); *DRAM I*, 516

F. Supp. 2d at 1092 (directness factor not met because products containing DRAM contain many other components, all of which "collectively determine" the final product price paid for the final product, and no facts alleged to show that ultimate DRAM cost "is somehow directly traceable and/or distinguishable"); *see also Potash*, 667 F. Supp. 2d at 940 (directness factor did not support standing because plaintiffs did not allege "a chain of causation" between alleged restraint and their claimed injuries).  In *WH*, this Court eschewed such cases in favor of *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1155 (N.D. Cal. 2009), *LCD*, 586 F. Supp. 2d at 1123, and *In re Graphics Processing Units Antitrust Litig.* ("*GPU II*"), 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007).  But, those cases do not support standing here because, as this Court recognized in *WH*, they found the "'directness requirement met based on allegations that [the] cost of [the] component part comprised a substantial amount of the finished product cost and could be traced through the distribution chain.'"  2013 WL 2456612, at *17 (quoting *Flash Memory*, 643 F. Supp. 2d 1155); *see also Flash Memory*, 643 F. Supp. 2d at 1155 ("NAND Flash Memory allegedly 'makes up an overwhelming majority of the cost of NAND flash-based memory devices and a substantial portion of the consumer devices in which NAND flash memory is packaged to be sold as a component.'").  *No such facts are pled here*.  EPs plead nothing about the cost of FSs at all, and ADs plead only that the cost of an FS is "a not insignificant portion of the cost of a vehicle."  (AD CCC ¶ 185.)  Thus, *AGC* factor 2 also weighs against standing.

The inherently speculative nature of Component IPPs' injury claims also militates against standing.  In *AGC*, 459 U.S. at 542, the Supreme Court identified two indicators of unduly speculative harm:  (1) an *indirect* causal connection between the claimed injury and the anticompetitive conduct, and (2) the existence of many independent factors *other than* the

claimed overcharge that could have impacted the prices plaintiffs paid. Both indicators are present here. First, Component IPPs' claimed harm is based entirely on an alleged indirect causal connection between Defendants' conduct in the FS market and Component IPPs' claimed injuries in downstream vehicle markets. Thus, ascertaining Component IPPs' damages, *if any*, would require tracing the amount of any alleged overcharge through multiple levels of the supply chain – a task the Sixth Circuit has found to be inherently speculative in a case like this one. *See Bodie-Rickett*, 957 F.2d at 292.

Second, the ultimate prices Component IPPs paid for their vehicles are affected by countless factors having nothing to do with any alleged overcharge an OEM may have paid on a FS, which is just one of thousands of parts in those vehicles. The input costs of these thousands of other parts; the vehicles' production, assembly and distribution costs; the bargaining power of the parties at each step of the chain; the effect of geographic discrepancies on pricing, discounts, rebates and additional services offered by manufacturers and retailers; the cost of competing vehicles; the inventory status of each seller at the time of sale; and the timing of a plaintiff's purchase (e.g., just after or just before a new model release) are all independent influences on the final prices paid for the vehicles Component IPPs bought or leased, and render any claim that Defendants' FS-related conduct caused Component IPPs to pay more for their 10,000+ part vehicles inherently and unduly speculative. This Court recognized in *WH* "the difficulties" these hurdles present to Component IPPs but ultimately held *AGC* factor 3 satisfied because plaintiffs' allegations that wire harnesses are discrete, that they are separate and traceable (physically and cost-wise), and that Component IPPs paid higher prices for vehicles than they otherwise would have distinguished the case "from those . . . involving component part[s] that mingle with the finished product to the extent that the manufacturers could not be identified." 2013 WL

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21887 Filed 03/14/16 Page 62 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 50-2 Filed 08/16/13 Pg 61 of 126 Pg ID 468

REDACTED

2456612, at *17. But courts have held such allegations insufficient under *AGC* factor 3 in cases involving components that were identifiable parts of a finished good. *See Compressors II* and *DRAM I* and *II*. Defendants respectfully submit that the Court should do the same here.

The complexity of apportioning damages also weighs against antitrust standing. As just explained, it would be nearly impossible to demonstrate what portion of the final vehicle price resulted from the alleged FS conspiracy. Plus, before even considering the *vehicle* price, Plaintiffs would need to show what portion of the *FS* price was attributable to the alleged conspiracy and that any such overcharge – and, how much – was passed down at every step of the distribution chain. *See, e.g.*, *DRAM I*, 516 F. Supp. 2d at 1092 (damages apportionment would be exceedingly complex because any alleged pass-through must be traced through a multitude of distribution, manufacturing, and retail channels). As the Supreme Court expressly recognized in *AGC*, 459 U.S. at 545 n.51, "the task of disentangling overlapping damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial system." (internal quotations and citation omitted). Thus, *AGC* factor 4 also weighs against standing.

Finally, the risk of duplicative recovery is far from theoretical. Three different groups – the Direct Purchaser Plaintiffs and two different kinds of Indirect Purchasers (ADs and EPs) – seek overlapping damages for the same alleged FS-related conduct. The Direct Purchasers' case plainly involves more direct alleged injuries. "The existence of an "identifiable class of persons who would have the necessary incentives to vindicate the public interest by pursuing [an] antitrust claim . . . diminishe[s] the justification for allowing a more remote party to enforce the antitrust laws." *Potash*, 667 F. Supp. 2d at 941 (citing *AGC*, 459 U.S. at 542). As this Court has recognized, when "plaintiffs have only suffered an *indirect* injury as a result of the alleged antitrust violations, the danger of duplicative recovery is highly relevant." *Compressors II*, 2013

WL 1431756, at *14 (emphasis added; quoting *Province*, 787 F.2d at 1053). And even if, as IPPs claim, alleged FS overcharges are distinct and traceable so as to "lessen the risk of duplicative recovery," *WH*, 2013 WL 2456612, at *18, the risk still exists.

Because every *AGC* factor militates against antitrust standing, the Court should dismiss the Component IPPs' antitrust claims, as the courts did in the two most analogous cases – *Compressors II* (discussed above) and *DRAM I*. In *DRAM I*, indirect purchasers bought computers and/or other electronic products containing allegedly price-fixed DRAM chips. The *DRAM I* court determined that the *AGC* factors applied to the antitrust claims brought under the laws of 14 states and, upon application, concluded that they weighed against standing because: (1) plaintiffs participated in "a secondary market," not the market in which the price-fixing occurred, (2) no "direct link in the causation chain" existed between defendants' conduct and the allegedly higher prices for the finished goods plaintiffs bought, and (3) damages were both speculative and difficult to apportion given the myriad of factors that could have affected the price each plaintiff paid for the finished good it bought. *DRAM I*, 516 F. Supp. 2d at 1091-93. The court therefore dismissed plaintiffs' claims with leave to amend. Although plaintiffs amended their complaint to include allegations (like IPPs' here (*see* AD CCC ¶ 178, EP CAC ¶ 132)), that (1) the DRAM chips had no use independent of the electronics into which they were inserted, (2) the DRAM and computer chip markets were "intimately connected," and (3) DRAM demand was ultimately determined by demand for the finished goods, the court still concluded that plaintiffs lacked antitrust standing because the DRAM and finished product markets could not be viewed as a single market under established precedent. The court again dismissed plaintiffs' antitrust claims, this time without leave to amend. *DRAM II*, 536 F. Supp. 2d at 1136-37, 1141.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21889 Filed 03/14/16 Page 64 of 127
Case 2:12-cv-00803-MOB-MKM   Doc # 56-2   Filed 08/16/13   Pg 63 of 126   Pg ID 468

REDACTED

The same result is warranted here.  Thus, this Court should find that Component IPPs

lack standing under (a) *AGC* to bring their antitrust claims in Arizona, California, the District of

Columbia, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada,

New Hampshire, New Mexico, New York, North Dakota, Oregon, South Dakota, Tennessee,

Utah, Vermont, West Virginia, and Wisconsin, and (b) similar remoteness principles to bring

their North Carolina antitrust claim.  *See* Section V, *infra*.

## IV.    THE COURT SHOULD DISMISS IPPS' UNJUST ENRICHMENT CLAIMS.

### A.    IPPs Do Not Adequately Plead Their Claims For Unjust Enrichment.

IPPs' unjust enrichment allegations are deficient for multiple reasons and should be

dismissed in their entirety.  First, IPPs fail to adequately identify the state laws under which they

assert claims.  As this Court held in *WH*, "IPPs' failure to identify the unjust enrichment laws of

any particular jurisdiction subjects the causes of action to dismissal."  *WH*, 2013 WL 2456612, at

*31; *see also*, *e.g.*, *Compressors II*, 2013 WL 1431756, at *24 (dismissing claims with prejudice

because plaintiffs did not "identify which state or states' laws they [were] asserting an unjust

enrichment claim under"); *Packaged Ice*, 779 F. Supp. 2d at 667-68.[6]  The unjust enrichment

pleading here is identical to the pleading that led this Court to dismiss all unjust enrichment

claims in *WH*.  As such, IPPs' unjust enrichment claims must be dismissed.

Second, IPPs' barebones allegations that "Defendants have been unjustly enriched by the

receipt of, at a minimum, unlawfully inflated prices and unlawful profits"; that "Defendants have

---

[6] To the extent IPPs seek to recover for unjust enrichment under federal common law, the Court
should dismiss their claims because (1) courts do not recognize such claims and (2) to hold
otherwise would impermissibly circumvent the Supreme Court's ruling in *Illinois Brick*.  *See*
*Wellbutrin*, 260 F.R.D. at 167 ("Unjust enrichment is not a catch-all claim existing within the
narrow scope of federal common law."); *NMV I*, 350 F. Supp. 2d 160, 211 (D. Me. 2004)
("Certainly no restitutionary remedy can escape the limitations the United States Supreme Court
imposed on federal antitrust recovery in *Illinois Brick*.").

REDACTED

benefited from their unlawful acts"; and that "it would be inequitable" for Defendants to retain

any such benefit (AD CCC ¶¶ 267-68; EP CAC ¶¶ 214-15), are deficient as a matter of law.

Neither EPs nor ADs plead the specific elements of any state's unjust enrichment law or the

factual allegations that support recovery under those laws (and EPs do not even identify the

states under the laws of which they seek unjust enrichment recovery). Yet, the elements of these

claims vary from state to state. For example, to state a Florida unjust enrichment claim, a party

must plead, *inter alia*, "that no adequate legal remedy exists," *Am. Honda Motor Co., Inc. v.*

*Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005), and a Mississippi

unjust enrichment claim requires allegations that "[m]oney [was] paid to another by mistake of

fact." *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012) (citation omitted), *reh'g*

*denied*, No. 2010-CA-01015-SCT, 2012 Miss. LEXIS 175 (Miss. Mar. 29, 2012) (Ex. J-15).

IPPs include no such state-specific pleading. *Twombly* and *Iqbal* make clear that "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678; *see also Eivaz v. Edwards*, No. 12-C-910, 2013 WL 989843, at

*2-3 (E.D. Wis. Mar. 13, 2013) (unjust enrichment claim based on conclusory allegations that

were merely a formulaic recitation of the elements of the claim was insufficient) (Ex. J-16). IPPs

do not even offer "threadbare recitals" of the elements of their unjust enrichment claims and

those claims must, therefore, be dismissed. *See* Section I, *supra*; *Packaged Ice*, 779 F. Supp. 2d

at 667-68 (detailing differences in state unjust enrichment laws and dismissing those claims due

to inability to analyze the plaintiffs' claims based on the complaint); *Compressors II*, 2013 WL

1431756, at *24.

## B.     IPPs Cannot Bring Autonomous Unjust Enrichment Claims.

IPPs purportedly bring unjust enrichment claims under the laws of 31 states and DC, but

do not specify whether they assert "autonomous" unjust enrichment claims – claims independent

REDACTED

of IPPs' antitrust and consumer protection claims – or so-called "parasitic" unjust enrichment claims – claims that merely provide an alternative remedy for their underlying predicate antitrust and consumer protection claims. *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 411-12 (S.D.N.Y. 2011). Either way, IPPs cannot evade the restrictions of federal and state law by resorting to the doctrine of unjust enrichment.

It is axiomatic that, where the law precludes a plaintiff from seeking damages under a claim at law, that plaintiff may not seek those same damages vis-à-vis an equitable claim for restitutionary relief. *Cf. INS v. Pangilinan*, 486 U.S. 875, 883 (1988) ("[I]t is well established that courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." (internal alterations, quotations, and citation omitted)). Antitrust and consumer protection statutes reflect each state legislature's policy choices concerning how best to regulate economic conduct in that state. Courts do not permit plaintiffs to circumvent these legislative policy choices by repackaging failed antitrust or consumer protection theories under the common law of unjust enrichment. *See In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001) ("State legislatures and courts that adopted the *Illinois Brick* rule against indirect purchaser antitrust suits did not intend to allow an end run around the policies allowing only direct purchasers to recover." (internal quotations and citation omitted)).

Whether IPPs assert autonomous or parasitic unjust enrichment claims, the claims require dismissal where there is no surviving underlying claim. If IPPs seek to assert autonomous claims, any such claims fail because "unjust enrichment is not an independent cause of action." *See, e.g.*, *Shepard v. DineEquity, Inc.*, No. 08–2416–KHV, 2009 WL 8518288, at *11 n.14 (D. Kan. Sept. 25, 2009) (dismissing unjust enrichment claim where plaintiffs failed to allege an

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21892 Filed 03/14/16 Page 67 of
127
Case 2:12-cv-00503-MOB-MKM Doc # 56-2 Filed 08/16/13 Pg 66 of 126 Pg ID 470

REDACTED

underlying cause of action under the Kansas Consumer Protection Act) (Ex. J-17); *In re Flonase Antitrust Litig.* ("*Flonase II*"), 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010) (dismissing unjust enrichment claims where the predicate causes of action were dismissed). If, on the other hand, IPPs are asserting parasitic claims, then each of those claims fails for the same reasons that the underlying predicate antitrust and/or consumer protection claims fail. *See, e.g.*, *Digital Music*, 812 F. Supp. 2d at 412-13 (dismissing unjust enrichment claims brought under the laws of states that follow *Illinois Brick*); *Flonase II*, 692 F. Supp. 2d at 542.

### C. IPPs' Claims Fail Because IPPs Do Not Satisfy The Direct Benefit Requirement In Certain States.

IPPs' unjust enrichment claims under the laws of Arizona, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Utah, and the District of Columbia (collectively, the "Direct Benefit States") fail because IPPs do not and cannot plead that they conferred a "direct" benefit on Defendants. *See, e.g.*, *Potash*, 667 F. Supp. 2d at 948; *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010) (Ex. J-18). In these states, IPPs must allege that they conferred some "direct" advantage on Defendants. IPPs, however, admit they "had no direct contact or interaction with" any Defendants and "had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers." (AD CCC ¶¶ 192-93; EP CAC ¶¶ 144-45.) All IPPs offer is the general allegation that "Defendants have benefitted." (AD CCC ¶ 268; EP CAC ¶ 215.) But, as explained *infra*, that is insufficient to meet the pleading standards applicable in each of the Direct Benefit States.

### D. IPPs' Claims Fail Because They Received The Benefit Of Their Bargains.

As explained below, courts in Arizona, Arkansas, California, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New

Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, Utah and DC ("Benefit of the Bargain States") reject unjust enrichment claims in cases like this one, "where parties voluntarily have negotiated, entered into and fully performed their bargain" (the "BOTB Limitation"). *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV I*"), 350 F. Supp. 2d 160, 210 (D. Me. 2004) (rejecting unjust enrichment claims in case involving indirect purchasers of vehicles); *see also* Restatement (First) of Restitution § 107(1). This is because there can be no unjust enrichment where the plaintiff got the product or service he expected at the price he agreed to pay – i.e., the benefit of his bargain.

IPPs "paid their purchase prices and obtained their" products, *see NMV I*, 350 F. Supp. 2d at 210, under contracts they voluntarily negotiated and entered. (*See* AD CCC ¶¶ 20-105; EP CAC ¶ 3.) IPPs do not assert that they failed to receive the benefits for which they bargained, nor do they allege they sought to rescind their purchases. ADs concede they did not even try. (*See* AD CCC ¶ 270.) Rather, IPPs allege only that they overpaid for the products for which they bargained. (*See* AD CCC ¶10 ("As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Class paid artificially inflated prices for [FSs] or for vehicles containing [FSs]."); EP CAC ¶ 13 (same)). That assertion, however, is insufficient to sustain an unjust enrichment claim because IPPs obtained the products they bargained for at the prices they agreed to pay. *See, e.g.*, *Prohias v. Pfizer* ("*Prohias I*"), 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007); *Dist. 1199P Health and Welfare Plan v. Janssen*, *LP*, 784 F. Supp. 2d 508, 532-33 (D.N.J. 2011). This is true whether the plaintiff entered into the bargain with the defendant, or, as here, with a third party. *See, e.g.*, *Winters v. Cnty. of Clatsop*, 150 P.3d 1104, 1108 (Or. Ct. App. 2007); *High v. Davis*, 584 P.2d 725, 736 (Or. 1978) (en banc); *Howard v. Turnbull*, 316 S.W.3d 431, 438 (Mo. Ct. App. 2010); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-

REDACTED

32 (Fla. Dist. Ct. App. 2007). For these reasons, and as explained *infra*, IPPs' unjust enrichment

claims fail in the Benefit of the Bargain States.

> ### E.  IPPs' Claims Fail Because Defendants Provided Consideration For Any Benefit.

Florida, Kansas, Massachusetts, Missouri, Nevada, New Hampshire, South Dakota,

Tennessee, Utah, Vermont and Wisconsin (the "Consideration States") do not permit unjust

enrichment claims where the defendant has provided consideration for the benefit it received

because retention of the benefit under such circumstances is not considered to be "unjust" (the

"Consideration Limitation"). *See, e.g.*, *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537

A.2d 994, 995 (Vt. 1987) ("[I]f the [defendant] has given any consideration to any person for the

[benefit], it would not be unjust for him to retain the benefit without paying the furnisher."

(quoting *Paschall's v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966))); *Senne & Co. v. Simon*

*Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858, at *8 (Kan. Ct. App. Apr. 20, 2007)

(underlying premise of a claim for unjust enrichment is that the defendant received a benefit

without providing consideration) (Ex. J-19); *Ferola v. Allstate Life Ins. Co.*, No. 050996, 2007

WL 2705534, at *14 (Mass. Super. Ct. Aug. 30, 2007) (unjust enrichment will not lie where

defendant provided valuable consideration) (Ex. J-20).[7] IPPs expressly allege that Defendants

gave consideration – FSs – to their direct customers (AD CCC ¶¶ 120-21; EP CAC ¶ 75-76) for

any benefit (i.e., money) they received. Thus, as explained below, IPPs may not bring unjust

enrichment claims in the Consideration States.

---

[7] The Consideration Limitation recognizes that the retention of a benefit is not unjust when the defendant receiving the benefit provided consideration. The BOTB Limitation addresses the fact that a plaintiff is not injured when it received that for which it bargained.

Case 2:12-md-02311-SFC-RSW  ECF No. 4250-7  PageID.213895  Filed 03/16/16  Page 70 of
127
Case 2:12-cv-00803-MOB-MKM  Doc # 50  Filed 08/06/13  Pg 69 of 126  Pg ID 478

REDACTED

## V. THE COURT SHOULD DISMISS IPPS' CLAIMS UNDER VARIOUS STATE ANTITRUST, CONSUMER PROTECTION, AND UNJUST ENRICHMENT LAWS FOR ADDITIONAL REASONS.

In addition to failing for the reasons explained above, IPPs' state antitrust, consumer protection and unjust enrichment claims are deficient on numerous state-specific grounds that also require their dismissal in whole or in part. Defendants address these arguments below, and summarize in the Exhibits the support for their arguments that IPPs: (1) lack antitrust standing in states adopting *AGC* (or a similar standard) (Ex. C); (2) have failed to satisfy the intrastate nexus requirements of certain state antitrust (Ex. D) and consumer protection laws (Ex. E); and (3) have failed to state a claim for unjust enrichment in certain states because they cannot avoid the BOTB Limitation (Ex. F), avoid the Consideration Limitation (Ex. H), meet the direct benefit requirement (Ex. G), or meet special pleading requirements (Ex. I). Defendants summarize the claims IPPs assert and the reasons any claim may not proceed at Exhibit A. The Court need not address these alternative arguments, however, should the Court find dismissal of the state law claims appropriate for any of the reasons set forth in Sections I-IV, *supra*.

### A. Arizona

#### 1. Component IPPs' Arizona antitrust claims fail for lack of standing.

Arizona's harmonization statute authorizes courts to "use as a guide interpretations given by the federal courts to comparable federal antitrust statutes." Ariz. Rev. Stat. Ann. § 44-1412. *AGC* thus applies to Component IPPs' Arizona antitrust claims, as recognized by Arizona, this, and other courts. *See Luscher v. Bayer AG*, No. 2004-01485, slip op. at 2-3 (Ariz. Super. Ct. Sept. 14, 2005) (applying *AGC* to dismiss indirect purchaser Arizona antitrust claims) (Ex. J-21); *Compressors II*, 2013 WL 1431756, at *10-15 (same); *DRAM II*, 536 F. Supp. 2d at 1134-42 (N.D. Cal. 2008) (same). As explained in Section III, *supra*, because the *AGC* factors all weigh against standing, Component IPPs' Arizona claims should be dismissed.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21896 Filed 03/14/16 Page 71 of
127
2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 70 of 126 Pg ID 774

REDACTED

**2.   IPPs' Arizona unjust enrichment claims fail for three reasons.**

To state an Arizona unjust enrichment claim, a party must plead, *inter alia*, "the absence

of a legal remedy." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App.

2002).  Because IPPs have not done so, nor pled their unjust enrichment claims in the alternative,

they must be dismissed.

Additionally, Arizona unjust enrichment law requires IPPs to specially allege that they

conferred a benefit on Defendants.  *See Yee v. Nat'l Gypsum Co.*, CV-09-8189-PHX-DGC, 2010

WL 2572976, at *4 (D. Ariz. June 22, 2010) (dismissing unjust enrichment claim because

indirect purchaser's complaint "contain[ed] no allegation that Plaintiff conferred a benefit on

[defendant]") (Ex. J-22); *Laborers' & Operating Engineers' Util. Agreement Health & Welfare

Trust Fund for Ariz. v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 951 (D. Ariz. 1999) (dismissing

unjust enrichment claim where plaintiff union pension fund did not allege it conferred any

benefit on defendant cigarette manufacturer).  Absent such allegations, courts, including this one,

have dismissed Arizona unjust enrichment claims by indirect purchasers.  *See, e.g.*, *Compressors

II*, 2013 WL 1431756 at *25-26.  Because IPPs do not and cannot allege they conferred any

direct benefit on Defendants, *see* Section IV.C, *supra*, their Arizona unjust enrichment claims

must be dismissed.

IPPs' Arizona unjust enrichment claims also fail because, as explained in Section IV.D,

*supra*, IPPs received the benefit of their bargains:  properly functioning FSs at the prices they

agreed to pay.  *See, e.g.*, *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) ("A

person is not entitled to compensation on the grounds of unjust enrichment if he receives from

the other that which it was agreed between them the other should give in return."); *USLife Title

Co. of Ariz. v. Gutkin*, 732 P.2d 579, 585 (Ariz. Ct. App. 1986) (plaintiff not entitled to unjust

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21897 Filed 03/14/16 Page 72 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/10/13 Pg 71 of 126 Pg ID 775
REDACTED

enrichment recovery because "[u]pon delivery of the quitclaim deed [plaintiff] obtained that for which it bargained").

### B. Arkansas

#### 1. Because ADs merely allege overpayment, they have no right of action under Arkansas consumer protection law.

The Arkansas Deceptive Trade Practices Act ("ADTPA") provides a private right of action only if a plaintiff suffers "actual damage or injury." Ark. Code Ann. § 4-88-113(f). The Arkansas Supreme Court has made clear that this standard is not met where, as here, plaintiffs allege only that they overpaid for a product. *Compare Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005) ("Where the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA."), *with* (AD CCC ¶ 254(c) (alleging that ADs "paid supracompetitive, artificially inflated prices" for FSs and vehicles containing FSs)); *GPU I*, 527 F. Supp. 2d at 1029-30 (allegation that a product's price was too high insufficient to state an ADTPA claim). Because ADs' only claimed harm is the diminished value of their FSs – i.e., that they paid too much for them – ADs have not suffered the "actual damage or injury" required by the ADTPA, and their claim must be dismissed.

#### 2. Component ADs' ADTPA claim fails because it is too remote.

Component ADs' ADTPA claim also fails because "Arkansas law recognizes the remoteness doctrine." *Independence Cnty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 888 (E.D. Ark. 2008) (dismissing ADTPA claims), *aff'd*, 552 F.3d 659 (8th Cir. 2009). As explained in Section III, *supra*, Component ADs' alleged injuries are too remote to accord them standing, and their ADTPA claim must therefore be dismissed.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21898 Filed 03/16/16 Page 73 of
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/10/13 Pg 72 of 126 Pg ID 478
127

REDACTED

**3.      ADs' Arkansas unjust enrichment claim fails because ADs received the
benefit of their bargains.**

ADs' Arkansas unjust enrichment claim must be dismissed because, as explained in

Section IV.D, *supra*, there is no unjust enrichment where, as here, ADs received the benefit of

their bargains:  properly functioning FSs at the prices they agreed to pay.  *See*, *e.g.*, *Frein v.*

*Windsor Weeping Mary LP*, 366 S.W.3d 367, 371-72 (Ark. Ct. App. 2009) (upholding dismissal

of unjust enrichment claims because there was "no basis upon which damages could have been

awarded" when the agreement had been fulfilled).

**C.      California**

**1.      Component IPPs' California antitrust claims fail for lack of standing.**

"Because the Cartwright Act has objectives identical to the federal antitrust acts, the

California courts look to cases construing the federal antitrust laws for guidance in interpreting

the Cartwright Act."  *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 n.1 (1995).  In

*Vinci* and *Compressors II*, the courts applied *AGC* to determine plaintiffs' standing under the

Cartwright Act (California's antitrust law), and in each case found that plaintiffs had none.  *See*

*Vinci*, 36 Cal. App. 4th at 1814-16; *Compressors II*, 2013 WL 1431756, at *10-15 (dismissing

California antitrust claims by indirect purchasers of finished good containing price-fixed part).

Because, as explained in Section III, *supra*, every *AGC* factor weighs against standing here, the

Court should dismiss Component IPPs' California antitrust claims.

**2.      An insufficient California nexus dooms EPs' consumer protection claim.**

California consumer protection law requires that the "alleged misconduct or injuries

occur[] in California" and any "specific intrastate misconduct" be alleged in the complaint.  *See*

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005).

EPs do not allege *any* California misconduct by Defendants nor do they allege where any EP

Case 2:12-md-02311-SFC-RSW  ECF No. 1250-3  PageID.21899  Filed 03/14/16  Page 74 of
127
Case 2:12-cv-00303-MOB-MKM  Doc # 56  Filed 08/16/13  Pg 73 of 126  Pg ID 472

REDACTED

bought FSs or cars (see EP CAC at e.g., ¶¶ 26-28, 201) or, hence, where they suffered injury.

EPs' California consumer protection claim must therefore be dismissed.

### 3.  IPPs' California unjust enrichment claims fail for two reasons.

Although IPPs allege California unjust enrichment claims, *no such cause of action exists
under California law.  See Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct.
App. 2003) ("Unjust enrichment is a general principle, underlying various legal doctrines and
remedies, rather than a remedy itself." (internal quotations and citation omitted)); *Walker v.
USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) ("Because California law does
not recognize Plaintiff's claim for unjust enrichment, there are no facts Plaintiff could prove to
support this claim."), *aff'd sub nom.*, *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir.
2009).  Both the California Court of Appeals and California federal district courts recently
reiterated and reaffirmed that "unjust enrichment is not a proper cause of action under California
law."  *Dunkel v. eBay, Inc.*, No. 5:12-cv-01452-EJD, 2013 WL 415584, at *11 (N.D. Cal. Jan.
31, 2013) (Ex. J-23); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075-76 (N.D. Cal.
2012); *Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 118 (Ct. App. 2011).  Likewise, this Court
recently dismissed a California unjust enrichment claim on the same basis.  *See Compressors II*,
2013 WL 1431756, at *25.  These claims thus require dismissal.

Even assuming (wrongly) that IPPs can maintain this equitable claim as a stand-alone
cause of action, it still must be dismissed because IPPs received the benefit of their bargains.  *See
Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008) ("There is no equitable
reason for invoking restitution when the plaintiff gets the exchange which he expected."
(citation omitted)); Section IV.D, *supra*.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21400 Filed 03/14/16 Page 75 of
127
Case 2:12-cv-00303-MOB-MKM Doc # 56-2 Filed 08/06/13 Pg 74 of 126 Pg ID 478

REDACTED

### D. District of Columbia

#### 1. Component IPPs' District of Columbia antitrust claims fail for lack of standing.

The District of Columbia Antitrust Act ("DCAA") authorizes "a court of competent
jurisdiction . . . [to] use as a guide interpretations given by federal courts to comparable antitrust
statutes." D.C. Code § 28-4515. Because of the identical wording of the DCAA and its federal
counterpart, the District of Columbia Superior Court has held that *AGC* applies to DCAA claims.
*See Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761, at *4-6 (D.C. Super. Ct. Apr.
22, 2005) (applying *AGC* factors to dismiss DCAA claim: courts will "look at federal case law
to determine whether [a] D.C. plaintiff has standing under § 28-4508") (Ex. J-24). In reliance on
that authority and the DCAA harmonization provision, this Court likewise held that *AGC* applies
to, and requires dismissal of, DCAA claims under circumstances analogous to those here. *See
Compressors II*, 2013 WL 1431756, at *10-15. The Court should reach the same result here and
dismiss Component IPPs' DCAA claims for the reasons set forth in Section III, *supra*.

#### 2. Because EPs fail to allege *intra*state-only sales or purchases, their District of Columbia antitrust claim fails.

A claim does not lie under District of Columbia antitrust law unless the plaintiffs allege
"sales in the District of Columbia that d[o] not have an interstate aspect." *Sun Dun, Inc. of
Wash. v. Coca-Cola Co.* ("*Sun Dun II*"), 770 F. Supp. 285, 289 (D. Md. 1991). EPs make no
such claims here. Indeed, no named EP resides in the District of Columbia, (EP CAC ¶¶ 23-63),
nor alleges that he made an FS or car purchase in the District of Columbia. *See, e.g., id.* ¶ 175.
EPs' allegations thus establish no basis whatsoever to permit discovery in lieu of dismissal. *See
Sun Dun, Inc. of Wash. v. Coca-Cola Co.* ("*Sun Dun I*"), 740 F. Supp. 381, 396-97 (D. Md.
1990) (permitting discovery only because court found plaintiff's allegation that it did "*much of*

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21017 Filed 03/10/16 Page 76 of
127
2:13-cv-00803-MOB-MKM    Doc # 50    Filed 08/16/13    Pg 75 of 126    Pg ID 779

REDACTED

*its business*" *in the District of Columbia* sufficient to infer the "possib[ility]" that it suffered

injury there) (emphasis added). EPs' DCAA claim requires dismissal.

### 3. As businesses, ADs cannot bring a District of Columbia consumer protection claim.

As District of Columbia and federal courts, including this one, have recognized, the

District of Columbia consumer protection statute ("DCPPA") "does not protect merchants in

their commercial dealings with suppliers or other merchants." *Ford v. ChartOne, Inc.*, 908 A.2d

72, 83, 84 (D.C. 2006) ("If the purchaser is regularly engaged in the business of buying the

goods or service in question for later resale to another in the distribution chain, or at retail to the

general public, then a transaction in the course of that business is not within the Act." (citation

omitted)); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1044 (D.C. Cir. 2010) ("the [D]CPPA

does not protect businesses engaged in commercial activity"); *Compressors II*, 2013 WL

1431756, at *22 (relying on, e.g., *Ford* and *Shaw* to dismiss DCPPA claim by plaintiff who did

not allege he bought "primarily for personal, household, or family use"); *see also* D.C. Code

§ 28-3901. Because ADs expressly plead that they bought FSs for their "repair and service

business[es]," and vehicles and FSs to "sell" to customers, (AD CCC ¶¶ 20-21, 106), their

DCPPA claim must be dismissed.

### 4. IPPs' District of Columbia unjust enrichment claims fail for two reasons.

Under District of Columbia law, IPPs must allege that they conferred a "direct" benefit

on Defendants to establish an unjust enrichment claim. *See Fort Lincoln Civic Assoc. v. Fort

Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008) (rejecting unjust enrichment claim

of third party because it had no direct relationship with defendant developer); *Minebea Co., Ltd.

v. Papst*, 444 F. Supp. 2d 68, 186 (D.C. Cir. 2006) (denying District of Columbia unjust

enrichment claim where neither plaintiff "ever afforded any direct benefit to the defendant");

REDACTED

*Hakki v. Zima Co.*, No. 03-9183, 2006 WL 852126, at *3 (D.C. Super. Mar. 28, 2006)

(dismissing unjust enrichment claim by plaintiff-consumer against manufacturer because "the

complaint doe [sic] not allege that [plaintiff] has conferred a benefit on any Defendant" and thus

failed to specifically link plaintiff with defendant) (Ex. J-25); *U.S. ex rel. Purcell v. MWI Corp.*,

520 F. Supp. 2d 158, 173 (D.D.C. 2007) (dismissing unjust enrichment claim against

corporation's former president and majority stockholder because "any benefit was conferred on

the corporation and not the individual defendant"); Section IV.C, *supra*.  For this reason, IPPs'

District of Columbia unjust enrichment claims must be dismissed, as this Court recently

recognized in a similar context.  *See Compressors II*, 2013 WL 1431756 at *25-26.

IPPs' District of Columbia unjust enrichment claims must also be dismissed because, as

explained in Section IV.D, *supra*, there is no unjust enrichment where IPPs received the benefit

of their bargains:  properly functioning FSs at the prices they agreed to pay.  *See Dahlgren v.

Audiovox Commc'ns Corp.*, No. 2002 CA 007884 B, 2012 WL 2131937 (D.C. Super. Ct. Mar.

15, 2012) (dismissing unjust enrichment claim against phone manufacturer because plaintiff-

consumer "produced no evidence that the cell phones . . . failed to function as intended" and thus

received the benefit of her bargain with phone seller) (Ex. J-26).

     **E.**    **Florida**

       **1.**   **IPPs' Florida unjust enrichment claims fail for four reasons.**

First, to state a Florida unjust enrichment claim, a party must plead, *inter alia*, "that no

adequate legal remedy exists."  *Am. Honda*, 390 F. Supp. 2d at 1178 (dismissing unjust

enrichment claims predicated on same facts as FDUTPA claim because existence of FDUTPA

claim shows an adequate remedy at law); *Prohias v. Pfizer, Inc.* ("*Prohias II*"), 490 F. Supp. 2d

1228, 1236-37 (S.D. Fla. 2007) (same).  Because IPPs have not done so, nor pled their Florida

unjust enrichment claims in the alternative, they must be dismissed.

REDACTED

Second, IPPs' Florida unjust enrichment claims fail because IPPs do not allege that they conferred a "direct" benefit on Defendants. *See Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009) (affirming order dismissing unjust enrichment claim because plaintiff did not confer a benefit directly on defendant); *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493, 2011 WL 7095432, at *20 (S.D.N.Y. Dec. 16, 2011) (dismissing Florida unjust enrichment claim because claim requires a direct relationship between the parties, and plaintiff did not allege he bought car from defendant) (Ex. J-27); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842-44 (S.D. Ohio 2012) (dismissing unjust enrichment claim because "[w]ithout establishing a link between the unidentified seller of his vehicle and [the manufacturer], Florida [p]laintiff fails to allege that he conferred a direct benefit on [defendant] as Florida law requires"); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551-52 (D. Md. 2011) (dismissing Florida unjust enrichment claim by used car purchasers against car manufacturer for failure to allege they bought from manufacturer or otherwise conferred a benefit on it when they bought cars from independent dealerships).

A plaintiff may meet Florida's direct benefit requirement by pleading contractual privity or direct contact, or, in the absence of such a direct relationship, by alleging that: (1) it provided services, such as medical services, to a person to whom the defendant owes a legal or other duty to provide such services, *see, e.g.*, *Variety Children's Hosp. v. Vigliotti*, 385 So. 2d 1052, 1054 (Fla. Dist. Ct. App. 1980) (plaintiff hospital's provision of medical services to defendant's child benefited defendant, whose "duty to provide or procure necessary medical services for her daughter was fulfilled"); *Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1199 (Fla. Dist. Ct. App. 2006) (treatment of defendant-HMO's subscribers by plaintiff (provider of orthopedic services) is sufficient allegation that plaintiff conferred a benefit on defendant-HMO); or (2) it

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21404 Filed 03/14/16 Page 79 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/16/13 Pg 78 of 126 Pg ID 482

REDACTED

made real improvements to a defendant-landowner's property at the request of a tenant or lessee,
*see, e.g.*, *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994)
(plaintiff contractor's allegations that improvements contracted for by tenant "enhanced the
value of the premises and allowed the owner to relet them at an increased rent" sufficient to
satisfy the direct benefit element of a claim for unjust enrichment against defendant owner).
IPPs, however, have not alleged that they conferred a direct benefit of *any* kind on Defendants
(nor can they), *see* Section IV.C, *supra*, and their Florida unjust enrichment claims must
therefore be dismissed. *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25-26 (granting
motion to dismiss indirect unjust enrichment claims under Florida law); *Potash*, 667 F. Supp. 2d
at 948-49 (same).

Third, IPPs' Florida unjust enrichment claims fail because "to state a claim for unjust
enrichment . . . the plaintiffs must plead . . . at a minimum, that they did not get the 'benefit of
their bargain' when they purchased [the product]." *Prohias I*, 485 F. Supp. 2d at 1335; *see also*
*Am. Safety*, 959 So. 2d at 331-32. IPPs do not do so, *see* Section IV.D, *supra*, nor can they
because they received properly functioning FSs at the prices they agreed to pay.

Finally, as explained in Section IV.E, *supra*, there is no unjust enrichment under Florida
law when the defendant has provided consideration for the benefit conferred. S*ee Commerce
P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 390 (Fla. Dist. Ct. App.
1997); *see also Am. Safety*, 959 So. 2d at 331-32 ("When a defendant has given adequate
consideration to someone for the benefit conferred, a claim of unjust enrichment fails.").
Because IPPs expressly allege that Defendants gave consideration – FSs – to their direct
customers (AD CCC ¶¶ 120-21; EP CAC ¶ 76), their Florida unjust enrichment claims must be
dismissed.

### F.    Hawaii

#### 1.    Component ADs' Hawaii antitrust claim fails for lack of standing.

Hawaii's harmonization statute, Haw. Rev. Stat. § 480-3, expressly directs that Hawaii's

antitrust law "*shall* be construed in accordance with judicial interpretations of similar federal

antitrust statutes." *Id.* (emphasis added); *see also Davis v. Four Seasons Hotel Ltd.*, 228 P.3d

303, 324 (Haw. 2010) ("Pursuant to this instruction [HRS § 480-3] . . .  it is appropriate to look

to 'the guidance of similar federal antitrust statutes.'" (citation omitted)).  The *AGC* factors thus

apply to ADs' Hawaii antitrust claims, and, as explained in Section III, *supra*, all weigh against

standing.  Thus, Component ADs' Hawaii antitrust claim warrants dismissal.

#### 2.    ADs cannot assert a retroactive Hawaii antitrust claim.

Hawaii enacted its law allowing indirect purchaser antitrust plaintiffs to bring suit to

recover money damages *on behalf of a class* on June 28, 2002, Haw. Rev. Stat. § 480-1, -2, and

that law does *not* apply retroactively.  *See* 2002 Haw. Sess. L. Act 229, at 6 ("This Act shall take

effect on its approval."); *see also Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 148 P.3d

1179, 1209 (Haw. 2006) (claims based on defendants' conduct "*prior* to June 28, 2002 are barred

inasmuch as HRS § 480-2(e) does not apply retroactively" (emphasis in original)).  The Court

should therefore dismiss ADs' class claim to the extent it is based on alleged conduct occurring

before June 28, 2002.[8]

#### 3.    IPPs' Hawaii unjust enrichment claims fail because IPPs have an
#### adequate remedy at law.

Under Hawaii law, equitable remedies, like unjust enrichment, are only available when

legal remedies are inadequate.  *See, e.g.*, *Porter v. Hu*, 169 P.3d 994, 1006-07 (Haw. Ct. App.

---

[8] In *WH*, 2013 WL 2456612, at *18, the Court rejected an argument that Hawaii did not permit
*any* indirect purchaser claims prior to the date of enactment, but did not address whether Hawaii
permitted claims *on behalf of a class* prior to that date.

REDACTED

2007).  Where, as here, a statutory claim is available, Hawaii courts do not permit unjust

enrichment claims.  *Davis v. Four Seasons Hotel Ltd.*, CIV. 08-00525 HG-BMK, 2011 WL

5025521, at *6 (D. Haw. Oct. 20, 2011) (affirming summary judgment against unjust enrichment

claim because plaintiffs had adequate remedy in the form of a statutory claim) (Ex. J-28).

Because IPPs' Hawaiian statutory claims are premised on the same factual predicates as their

unjust enrichment claims, their unjust enrichment claims must be dismissed.

### G.      Illinois

#### 1.      Component ADs' Illinois antitrust claim fails for lack of standing.

Illinois' harmonization statute mandates that "[w]hen the wording of this [Antitrust] Act

is identical or similar to that of a federal antitrust law, the courts of this State *shall* use the

construction of the federal law by the federal courts as a guide in construing this Act."  740 Ill.

Comp. Stat. § 10/11 (emphasis added); *accord Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 990

(Ill. 1990).  *AGC* thus applies to Component ADs' Illinois antitrust claim.  *See O'Regan v.*

*Arbitration Forms, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules

apply under the Illinois Antitrust Act.");  *Gutnayer v. Cendant Corp.*, 116 F. App'x 758, 761 (7th

Cir. 2004) ("The Illinois Antitrust Act is modeled on the Sherman Act, and Illinois courts

interpret the state antitrust act in accordance with federal law." (citation omitted)).  As explained

in Section III, *supra*, *AGC* factors do not favor standing here; thus, Component ADs' Illinois

antitrust claim must be dismissed.

#### 2.      ADs are barred from bringing an Illinois Antitrust Act class claim.

ADs allege an antitrust claim on behalf of a putative class under the Illinois Antitrust Act

("IAA").  But, this claim must be dismissed because, as the Court recognized in *WH*, 2013 WL

2456612, at *21-22 (dismissing IAA claim), the IAA specifically prohibits private indirect

purchaser plaintiffs like ADs from bringing IAA claims as class actions, and does so within the

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21407 Filed 03/14/16 Page 82 of 127
1:12-cv-00803-MOB-MKM   Doc # 56-2   Filed 08/16/13   Pg 81 of 126   Pg ID 489

REDACTED

very statute that creates the antitrust right. *See* 740 Ill. Comp. Stat. § 10/7 (except for the state attorney general, "*no person shall be authorized to maintain a class action* in any court of this State for indirect purchasers asserting claims under th[e IAA]" (emphasis added)); *see also Digital Music*, 812 F. Supp. 2d at 414-16 (dismissing IAA claims).

### 3. ADs' Illinois unjust enrichment claim fails for two reasons.

"For a cause of action based on a theory of unjust enrichment to exist [under Illinois law], there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Martis v. Grinell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1025 (2009) (citing *Lewis v. Lead Industries Ass'n, Inc.*, 793 N.E.2d 869, 877 (2003)). Because ADs allege no duty owed to them by Defendants, their unjust enrichment claim requires dismissal. ADs' unjust enrichment claim under Illinois law also fails because they received the benefit of their bargains: properly functioning FSs at the prices they agreed to pay. *See La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977) ("A person is not entitled to compensation on the grounds of unjust enrichment if he receives . . . that which it was agreed between them the other should give in return."); Section IV.D, *supra*.

### H. Iowa

### 1. Component IPPs' Iowa antitrust claims fail for lack of standing.

The Iowa Supreme Court has held that *AGC* applies to determine standing under Iowa's antitrust law. *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198-99 (Iowa 2007); *accord Compressors II*, 2013 WL 1431756, at *9 (recognizing that the Iowa Supreme Court has ruled that the *AGC* test is to be applied). In *Southard*, the Iowa Supreme Court rejected plaintiffs' argument that Iowa has no limits on standing, finding that Iowa bars recovery for remote and derivative injuries. 734 N.W.2d at 197-98 ("[T]he Iowa legislature did not intend to allow every

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21408 Filed 03/16/16 Page 83 of
127
1:12-cv-00803-MOB-MKM Doc # 50 Filed 08/16/13 Pg 82 of 126 Pg ID 486

REDACTED

person tangentially affected by a violation of the statute to have a remedy in damages.").  As
explained in Section III, *supra*, all the *AGC* factors weigh against standing here, and this Court
should therefore dismiss Component IPPs' Iowa antitrust claims.

### 2.   IPPs' Iowa unjust enrichment claims fail for two reasons.

Under Iowa law, IPPs must allege a causal relationship between the benefit conferred on
Defendants and the harm IPPs allegedly sustained.  *Southard v. Visa U.S.A., Inc.*, LACV 031729,
2004 WL 3030028, at *5 (Iowa Dist. Ct. Nov. 17, 2004), *aff'd*, 734 N.W.2d 192 (Iowa 2007)
(dismissing consumers' unjust enrichment claims because their "damages are too remote and
derivative") (Ex. J-29); *Commercial Fed. Bank v. Qwest Corp.*, 695 N.W.2d 41, at *5 (Iowa Ct.
App. Oct. 14, 2004) (unpublished table decision) (rejecting unjust enrichment claim by
subcontractors against Qwest because of lack of direct relationship between them) (Ex. J-30); *cf.*
*Henning v. Sec. Bank*, 564 N.W.2d 398, 403-04 (Iowa 1997) (subcontractors not entitled to
recover against homeowner under an unjust enrichment theory due to lack of contractual privity).
Because IPPs do not and cannot allege such a causal relationship, their Iowa unjust enrichment
claims must be dismissed.

IPPs' Iowa unjust enrichment claims also fail because, as explained in Section IV.D,
*supra*, there can be no unjust enrichment where, as here, IPPs received the benefit of their
bargains:  properly functioning FSs at the prices they agreed to pay.  *See Smith v. Stowell*, 125
N.W.2d 795, 800 (Iowa 1964) ("[A] person is not entitled to compensation on the ground of
unjust enrichment if he received . . . that which it was agreed between them the other should give
in return." (quoting Restatement (First) of Restitution § 107 cmt. (1)a (1937))), *overruled on*
*other grounds by Lamp v. Am. Prothetics, Inc.*, 379 N.W.2d 909, 910 (Iowa 1986); *see also*
*Crandell v. Wall Lake View Auburn Bd. of Educ.*, No. 00-2013, 2002 WL 987665, at *1-2 (Iowa
Ct. App. May 15, 2002) (Ex. J-31).

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21409 Filed 03/14/16 Page 84 of
1:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 83 of 126 Pg ID 482
127

REDACTED

### I.    Kansas

#### 1.    Component IPPs' Kansas antitrust claims fail for lack of standing.

Numerous courts, including this one, have held that Kansas follows federal law when

interpreting its antitrust laws, and, thus, that the *AGC* factors apply to Kansas antitrust claims.

*See Compressors II*, 2013 WL 1431756, at *10-15 (applying *AGC* to dismiss Kansas antitrust

claims); *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211 (D. Kan. 1999) ("[S]tanding under the

Kansas antitrust statutes requires an antitrust injury similar to that required under the Sherman

and Clayton Acts."); *In re Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943, 2011 WL

5008090, at *7 n.9 (D.N.J. Oct. 20, 2011) (indirect purchasers lacked standing to assert Kansas

antitrust claims because they are construed in accordance with federal antitrust principles) (Ex.

J-32); *DRAM II*, 536 F. Supp. 2d at 1134-42 (same).  Because, as explained in Section III, *supra*,

the *AGC* factors all weigh against standing, this Court should dismiss Component IPPs' Kansas

antitrust claims.

#### 2.    IPPs' Kansas unjust enrichment claims fail for two reasons.

Under Kansas law, IPPs must allege that they conferred a "direct" benefit on Defendants

to establish an unjust enrichment claim.  *See Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269,

273 (10th Cir. 2008) (affirming dismissal of Kansas unjust enrichment claims because "nothing

in Kansas law . . . supports an indirect unjust enrichment claim"); *Haz-Mat Response, Inc. v.

Certified Waste Servs., Ltd.*, 910 P.2d 839, 847 (Kan. 1996) (under Kansas law, without privity,

an unjust enrichment claim can only be brought in very limited circumstances).  Federal courts,

including this one, thus have consistently dismissed Kansas unjust enrichment claims by indirect

purchasers in antitrust cases.  *See, e.g.*, *Compressors II*, 2013 WL 1431756 at *25-26 (granting

motion to dismiss "indirect" unjust enrichment claims under Kansas law); *Potash*, 667 F. Supp.

2d at 948-49 (same); *Aftermarket Filters*, 2010 WL 1416259, at *2-3 (same); *see also In re Static

REDACTED

*Random Access Memory Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5094289, at *6 (N.D. Cal. Dec. 8, 2010) (Ex. J-33). Because IPPs do not and cannot allege that they conferred any direct benefit upon Defendants, *see* Section IV.C, *supra*, their Kansas unjust enrichment claims must be dismissed.

IPPs' Kansas unjust enrichment claims also warrant dismissal because, as explained in Section IV.E, *supra*, there is no unjust enrichment where the defendant provided consideration for the benefit it received. *See, e.g.*, *Senne*, 2007 WL 1175858, at *8 (the premise of an unjust enrichment claim is that the defendant received a benefit without providing consideration); *Tradesmen Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191, 1205-06 (D. Kan. 2002) (dismissing unjust enrichment claim by sub-subcontractor against contractor because sub-subcontractor did not allege that contractor did not pay for the benefits it received). Because IPPs concede that Defendants provided consideration (FSs) for the benefit they received (money), (EP CAC ¶ 77; AD CCC ¶ 124), IPPs' Kansas unjust enrichment claims fail.

### J.   Maine

#### 1.   Component IPPs' Maine antitrust claims fail for lack of standing.

Maine and federal courts, including this one, apply the *AGC* factors to Maine antitrust claims. *See Knowles v. Visa U.S.A. Inc.*, No. CV-03-707, 2004 WL 2475284, at *8 (Me. Super. Ct. Oct. 20, 2004) (dismissing indirect purchaser claims for lack of standing: "the court has weighed the [*AGC*] factors and has concluded that notwithstanding Maine's enactment of an *Illinois Brick* repealer, the factors that militate against standing outweigh those in favor of standing") (Ex. J-34); *Compressors II*, 2013 WL 1431756, at *10-15 (applying *AGC* to dismiss indirect purchasers' Maine antitrust claims); *In re New Motor Vehicles Canadian Export Antitrust Litig.* ("*NMV II*"), 235 F.R.D. 127, 134 (D. Me. 2006) (noting that, in *Knowles*, Justice Warren "found that Maine would follow the factors set forth in [*AGC*]"). Because, as explained

Case 2:12-md-02311-SFC-RSW ECF No. 250-7 PageID.21411 Filed 03/14/16 Page 86 of
1:12-cv-00803-MOB-MKM Doc # 56-25 Filed 08/06/13 Pg 85 of 126 Pg ID 489
127

REDACTED

in Section III, *supra*, the *AGC* factors all weigh against standing, this Court should likewise

dismiss Component IPPs' Maine antitrust claims.

### 2. IPPs' Maine unjust enrichment claims fail because IPPs do not and cannot allege a benefit conferred upon Defendants by IPPs.

IPPs' Maine unjust enrichment claims must be dismissed because, as explained in

Section IV.C, *supra*, IPPs do not and cannot allege "a benefit conferred upon the defendant *by

the plaintiff*," as required under Maine law.  *Rivers v. Amato*, No. CV-00-131, 2001 WL

1736498, at *4 (Me. Super. Ct. June 22, 2001) (emphasis in original) (Ex. J-35); *aff'd*, Mem. 02-

51 (Me. Dec. 12, 2002) (unpublished table decision) (Ex. J-36); *see also Glenwood Farms, Inc.

v. Ivey*, 228 F.R.D. 47, 52 (D. Me. 2005) (denying leave to amend complaint because Maine

unjust enrichment law requires that benefit be conferred on defendant by plaintiff, not a third

party).  Federal courts, including this one, have dismissed Maine unjust enrichment claims by

indirect purchasers on this basis.  *See, e.g.*, *Compressors II*, 2013 WL 1431756, at *25-26

(granting motion to dismiss Maine unjust enrichment claim); *Aftermarket Filters*, 2010 WL

1416259, at *2-3 (same).

### K.    Massachusetts

### 1.    ADs lack standing to bring a Massachusetts consumer protection claim.

As indirect purchasers, ADs lack standing to assert their claim under Section 11 of the

Massachusetts Consumer Protection Act ("MCPA").  As recognized in *Ciardi v. F. Hoffmann La

Roche, Ltd.*, 436 Mass. 53, 62-63 (2001) (and by this Court in *WH*, 2013 WL 2456612, at *29),

"§ 11 . . . includes a specific provision that in any action brought under that section, the court

*shall* be guided in its interpretation of unfair methods of competition by [the corollary]

provisions of the [Massachusetts] Antitrust Act [('MAA')]" (emphasis added).  *See also* Mass.

Gen. Laws ch. 93A, § 11.  Because MCPA § 9 contains no such provision, the court held in

Case 2:12-md-02311-SFC-RSW  ECF No. 1250-7  PageID.21412  Filed 03/14/16  Page 87 of
127
Case 2:12-cv-00803-MOB-MKM  Doc # 56-7  Filed 08/16/13  Pg 86 of 126  Pg ID 430

REDACTED

*Ciardi* that its application of § 9, *unlike § 11*, was not to be guided by interpretations of the
Antitrust Act "and by association, *Illinois Brick*." *Id.* at 63; *see also WH*, 2013 WL 2456612, at
*29 ("'[T]he *Illinois Brick* approach is taken under the [MAA] and G. L. c. 93A, § 11.'" (citation
omitted)).  Thus, *Illinois Brick* applies here to bar ADs' § 11 claim.

## 2.    An insufficient nexus with Massachusetts dooms IPPs' MCPA claims.

To state a viable MCPA claim, IPPs must plead facts establishing that Defendants'
alleged "unlawful conduct affect[ed] trade and commerce in [Massachusetts]." *Magnesium
Oxide*, 2011 WL 5008090, at *25 (citing Mass. Gen. Laws ch 93A 1, 2).  Like the indirect
purchasers in *Magnesium Oxide*, IPPs here allege only that (a) Defendants restrained trade in a
market that "includes Massachusetts," by "affecting, fixing, controlling and/or maintaining at
artificial and noncompetitive levels" the prices at which FSs and cars containing FSs "were sold,
distributed or obtained in Massachusetts"; (b) FS "price competition was restrained, suppressed,
and eliminated in Massachusetts"; and (c) FS "prices were raised, fixed, maintained, and
stabilized at artificially high levels throughout Massachusetts."  *Compare* AD CCC ¶ 258, and
EP CAC ¶ 205, *with Magnesium Oxide*, 2011 WL 5008090, at *26.  Because such allegations
"are conclusory and do not tie [plaintiffs'] injuries to the alleged conspiracy's effect on trade and
commerce in [Massachusetts]," IPPs' MCPA claims require dismissal.  *Id.*

## 3.    IPPs' Massachusetts unjust enrichment claims fail for three reasons.

Under Massachusetts law, equitable remedies, like unjust enrichment, are not available to
a party with an adequate remedy at law.  *See, e.g.*, *Fernandes v. Havkin*, 731 F. Supp. 2d 103,
114 (D. Mass. 2010) (availability of Massachusetts negligence and Chapter 93A consumer
protection claims precluded unjust enrichment claim).  Here, IPPs allege statutory claims under
the very same statute (Chapter 93A) that *precluded* a claim for unjust enrichment in *Fernandes*.
IPPs' unjust enrichment claims must therefore be dismissed.  IPPs' Massachusetts unjust

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21413 Filed 03/16/16 Page 88 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 56-2 Filed 08/16/13 Pg 87 of 126 Pg ID 491
REDACTED

enrichment claims also warrant dismissal because, as explained in Section IV.D, *supra*, IPPs

received the benefit of their bargains: properly functioning FSs at the prices they agreed to pay.

*See Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc.*, 692 N.E.2d 964, 979 (Mass. App. Ct.

1998). Additionally, as explained in Section IV.E, *supra*, there is no unjust enrichment where, as

here, defendants provided consideration (FSs) for the benefit they received (money). *See, e.g.*,

*Ferola*, 2007 WL 2705534, at *14.

      **L.**    **Michigan**

          **1.**    <u>**Component IPPs' Michigan antitrust claims fail for lack of standing.**</u>

      Michigan's antitrust law requires courts to "give due deference to interpretations given by

the federal courts to comparable antitrust statutes." Mich. Comp. Laws Ann. § 445.784(2); *see

also Am. Council of Certified Podiatric Physicians v. Am. Bd. Podiatric Surgery, Inc.*, 185 F.3d

606, 619 n.4 (6th Cir. 1999) ("Because Michigan antitrust law follows federal precedents, our

reasoning regarding the federal antitrust claims applies equally to the state antitrust claims.");

*Zuccarini v. Hoescht* (*In re Cardizem CD Antitrust Litig.*), 200 F.R.D. 326, 331 n.4 (E.D. Mich.

2001) ("Michigan courts have observed that federal court interpretation of the Sherman Antitrust

Act is persuasive authority as to the meaning of the Michigan Antitrust Reform Act.").

Consistent with that directive, Michigan and federal courts, including this one, have held that the

*AGC* factors apply to Michigan antitrust law claims. *See, e.g.*, *Stark*, 2004 WL 1879003, at *2-4

(applying *AGC* to dismiss claims, and noting that "courts in other states that have repealed the

*Illinois Brick* rule have continued to apply antitrust standing requirements to dismiss the claims

of plaintiffs who assert only derivative or remote injuries"); *Compressors II*, 2013 WL 1431756,

at *10-15 (applying *AGC* factors to dismiss Michigan antitrust claim). Because the *AGC* factors

all weigh against standing here, *see* Section III, *supra*, the Court should dismiss Component

IPPs' Michigan antitrust claims.

### 2. IPPs' Michigan unjust enrichment claims fail for two reasons.

To maintain a claim for unjust enrichment under Michigan law, "the defendant must have received a benefit directly from the plaintiff," *Munson v. Countrywide Home Loans, Inc*., No. 08-13244, 2008 WL 5381866, at *9 (E.D. Mich. Dec. 17, 2008) (Ex. J-37). Because IPPs do not and cannot allege that they conferred a direct benefit on Defendants, *see* Section IV.C, *supra*, their Michigan unjust enrichment claims require dismissal as Michigan and federal courts, including this one, have recognized. *See Compressors II*, 2013 WL 1431756 at *25-26 (dismissing Michigan unjust enrichment claim because indirect purchaser plaintiffs could not allege that they directly conferred a benefit on defendants); *Aftermarket Filters*, 2010 WL 1416259, at *2-3 (same); *Potash*, 667 F. Supp. 2d at 948-49 (same); *A & M Supply Co. v. Microsoft Corp*., No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (same) (Ex. J-38); *Niemi v. Am. Axle Mfg. & Holding. Inc*., No. 269155, 2007 WL 29383, at *6 (Mich. Ct. App. Jan. 4, 2007) (dismissing plaintiffs' claim because any benefit was conveyed by plaintiff on an intermediary, not directly on defendant) (Ex. J-39).

Additionally, IPPs' Michigan unjust enrichment claims must be dismissed because, as explained in Section IV.D, *supra*, there can be no unjust enrichment where IPPs received the benefit of their bargains: properly functioning FSs at the prices they agreed to pay. *See Isom v. NE Lots LLC*, No. 288378, 2010 WL 143470, at *6 (Mich. Ct. App. Jan. 14, 2010) (Ex. J-40); *Russell v. Zeemering*, No. 260660, 2006 WL 2382511, at *5 (Mich. Ct. App. Aug. 17, 2006) (Ex. J-41).

### M. Minnesota

### 1. IPPs' Minnesota unjust enrichment claims fail for three reasons.

In Minnesota, a claim for unjust enrichment cannot survive when, as here, there is an available statutory remedy. *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc*., 493 N.W.2d

REDACTED

137, 140 (Minn. Ct. App. 1992) ("Relief under the theory of unjust enrichment is not available where there is an adequate legal remedy or where statutory standards for recovery are set by the legislature."). Dismissal of IPPs' Minnesota unjust enrichment claims is also required because IPPs must – but do not and cannot – allege that they conferred a direct benefit on Defendants. *See Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001); Section IV.C, *supra*. Finally, IPPs' Minnesota unjust enrichment claims fail because, as explained in Section IV.D, *supra*, IPPs received the benefit of their bargains: properly functioning FSs at the prices they agreed to pay. *See Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011) (unjust enrichment claim fails where plaintiff receives the benefit to which she was entitled under an agreement), *review denied* (Aug. 16, 2011).

### N. Mississippi

#### 1. Component IPPs' Mississippi antitrust claims fail for lack of standing.

Mississippi's Supreme Court has held that federal law applies to determine standing under Mississippi antitrust law. *See Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 344 (Miss. 2004) (applying federal law to find claims too remote to confer antitrust standing); *see also Potash*, 667 F. Supp. 2d at 945 (relying on *Owens Corning* to dismiss antitrust claim for lack of standing). Because, as discussed in Section III, *supra*, *AGC* factors do not favor standing here, the Court should dismiss Component IPPs' Mississippi antitrust claims.

#### 2. IPPs' Mississippi antitrust claims fail because IPPs do not allege conduct by Defendants that took place wholly in Mississippi.

A Mississippi antitrust claim requires that plaintiffs allege "at least *some* conduct by [defendant] which was performed wholly intrastate." *In re Microsoft Corp. Antitrust Litig.*, No. MDL 1332, Civ. JFM 03-741 through 03-748, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) (emphasis in original) (Ex. J-42); *see also California v. Infineon Techs. AG*, 531 F. Supp.

2d 1124, 1158-59 (N.D. Cal. 2007) (dismissing antitrust claims because complaint was "wholly

devoid of any allegations relating to intrastate trade or commerce" and "the Mississippi Antitrust

Act should be construed to require allegations of at least some activity or conduct occurring in

intrastate commerce or trade").  IPPs' boilerplate Mississippi claims neither allege *any* conduct

by Defendants in Mississippi, nor that any part of the alleged conspiracy took place in

Mississippi.  Instead, IPPs allege only that Defendants' conduct caused FS prices in Mississippi

to be fixed "at artificially high levels," deprived IPPs of "free and open competition," caused

them to pay "supracompetitive" prices, and "substantially affected Mississippi commerce."  (EP

CAC ¶ 181; AD CCC ¶ 234.)  While ADs (but not EPs) allege they bought cars and FSs in

Mississippi (AD CCC ¶¶ 23, 97), their claim still fails because these allegations say nothing

about where *Defendants'* conduct occurred.  *See Microsoft*, 2003 WL 22070561, at *2.  Nor are

IPPs' claims saved by *GPU II*, 540 F. Supp. 2d at 1099, or *Standard Oil Co. of Ky. v. State ex*

*rel. Attorney General*, 65 So. 468, 469-70 (Miss. 1914), *overruled in part on other grounds by*

*Mladinich v. Kohn*, 164 So. 2d 785 (Miss. 1964), to which this Court cited in finding the

intrastate nexus requirement satisfied in *WH*, 2013 WL 2456612, at *20.  *Unlike IPPs here*, the

*GPU II* and *Standard Oil* plaintiffs, respectively, met the standard by pleading that defendants

"promoted and sold GPUs and graphics cards in [Mississippi]," *GPU II*, 540 F. Supp. 2d at 1099,

and "engaged in the sale and distribution of petroleum products in [Mississippi]," 65 So. at 469-

70.  IPPs' failure to similarly plead a sufficient Mississippi nexus requires dismissal of their

Mississippi antitrust claims.

### 3.　IPPs' Mississippi unjust enrichment claims fail for two reasons.

In 2012, Mississippi's highest court ruled that unjust enrichment in Mississippi means

"[m]oney paid to another by mistake of fact."  *Willis,* 82 So. 3d at 588; *see also Union Nat'l Life*

*Ins. Co. v. Crosby*, 870 So. 2d 1175, 1180 (Miss. 2004) ("mistake" is the "ground on which

54

REDACTED

[unjust enrichment] recovery is allowed" (citation omitted)).  Because no such mistaken payment

is alleged here, IPPs' Mississippi unjust enrichment claims fail.

IPPs' Mississippi unjust enrichment claims also must be dismissed because, as explained

in Section IV.D, *supra*, IPPs received the benefit of their bargains:  properly functioning FSs at

the prices they agreed to pay.  *See Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92-93

(Miss. 1992) ("The mere fact that a third person . . . benefits from an arrangement between two

other persons . . . does not make such third person liable in . . . unjust enrichment . . . .").

### O.  Missouri

#### 1.  As businesses, ADs cannot bring a Missouri consumer protection claim.

Missouri's consumer protection law explicitly limits claims to individuals "who

purchase[] or lease[] merchandise primarily for personal, family or household purposes."  *See*

Mo. Rev. Stat. § 407.025.  ADs allege that they purchased FSs for their respective "repair and

service business[es]," and vehicles and FSs to "sell" to customers.  (*See, e.g.*, AD CCC

¶¶ 48-49, 106.)  As this Court recognized in *WH*, because ADs expressly plead that they made

their FS purchases for commercial purposes, their Missouri consumer protection claim requires

dismissal.  *See WH*, 2013 WL 2456612, at *30 (Missouri's consumer protection law "limits the

claims to the actual consumers, not the intermediaries").

#### 2.  IPPs' Missouri unjust enrichment claims fail for two reasons.

IPPs' Missouri unjust enrichment claims fail because, as explained in Section IV.D,

*supra*, there is no unjust enrichment where, as here, IPPs received the benefit of their bargains:

properly functioning FSs at the prices they agreed to pay.  *See Howard*, 316 S.W.3d at 438 (no

unjust enrichment because plaintiff got "precisely what he bargained for").  Moreover, as

explained in Section IV.E, *supra*, there is no unjust enrichment where Defendants provided

consideration (FSs) for the benefit they received (money).  *See, e.g.*, *Cnty. Asphalt Paving, Co.*,

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21418 Filed 03/14/16 Page 93 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 56-2 Filed 08/16/13 Pg 92 of 126 Pg ID 436

REDACTED

*Inc. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 710 (Mo. Ct. App. 2007) (no unjust enrichment where defendant provided third party the consideration due under their agreement even if defendant retained a benefit from plaintiff without further payment).

### P. Montana

#### 1. EPs cannot bring a Montana consumer protection claim as a class action.

EPs allege a class claim under Section 103 *et seq*. of the Montana Unfair Trade Practices Act ("MUTPA"). (EP CAC ¶ 207.)[9] This claim must be dismissed because the MUTPA specifically prohibits private indirect purchaser plaintiffs like EPs from bringing MUTPA claims as class actions, and does so within the very statute that creates the consumer protection right. Mont. Code Ann. § 30-14-133 ("A consumer who suffers any ascertainable loss of money or property . . . *may bring an individual but not a class action* . . . ." (emphasis added)). This Court has recognized both that "statutory restrictions on class actions which appear in the very statutes that define the substantive rights at issue survive *Shady Grove* [*Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010),] and should continue to be enforced" and that "after *Shady Grove*, class actions would likely continue to be barred in federal court under [Mont. Code. Ann. § 30-14-133]." *Packaged Ice*, 779 F. Supp. 2d at 661 n.4 (citing multiple cases). EPs' MUTPA class claim thus requires dismissal.

---

[9] EPs also purport to bring a claim for violation of Montana's consumer protection laws under Mont. Code Ann. §§ 30-14-201, *et seq*. (*see* EP CAC ¶ 207), but that section is Montana's antitrust law, comparable to Sections 1 and 2 of the Sherman Act. *See DRAM I*, 516 F. Supp. 2d at 1112. EPs do not make a Montana antitrust claim. *See* EP CAC ¶¶ 167-98 (no Montana law claim under Second Claim for Relief for "Violation of State Antitrust Statutes"). Nor could they, because indirect purchasers lack standing to bring antitrust claims for money damages under Montana law. *In re Relafen Antitrust Litig.* ("*Relafen II*"), 225 F.R.D. 14, 23 (D. Mass. 2004) (Montana indirect purchasers "lack recognized rights of action under . . . the [Montana antitrust] statutory scheme[]").

## 2. EPs' MUTPA claim fails because EPs do not allege any conduct or activity taking place in Montana.

To state a claim under MUTPA, EPs must allege some "conduct or activity taking place within [Montana]." *DRAM I*, 516 F. Supp. 2d at 1104. They do not. Nowhere do EPs allege that any part of the alleged conspiracy took place in Montana; instead, EPs simply repeat the refrain that Defendants' conduct caused FS prices in Montana to be fixed "at artificially high levels," deprived IPPs of "free and open competition," caused them to pay "supracompetitive" prices, and "substantially affected Montana commerce." (EP CAC ¶ 207.) Such claims do not satisfy the MUTPA standard. EPs' MUTPA claim must be dismissed.

### Q. Nebraska

#### 1. Component IPPs' Nebraska antitrust claims fail for lack of standing.

Nebraska's antitrust law mandates that when its provisions are "the same as or similar to the language of a federal antitrust law," courts, in construing such provisions, "shall follow the construction given to the federal law by the federal courts." Neb. Rev. Stat. § 59-829. Thus, Nebraska and federal courts, including this one, apply *AGC* to determine whether plaintiffs have antitrust standing under Nebraska law. *See, e.g.*, *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 297-301 (Neb. 2006) (applying *AGC* to dismiss Nebraska antitrust claims); *Compressors II*, 2013 WL 1431756, at *10-15 (same). Because, as explained in Section III, *supra*, all *AGC* factors weigh against standing, this Court should dismiss Component IPPs' Nebraska antitrust claims.

#### 2. ADs cannot assert a retroactive Nebraska antitrust claim.

Nebraska enacted its statute permitting indirect purchaser antitrust claims on July 19, 2002. Neb. Rev. Stat. § 59-821. In passing that law, Nebraska's legislature made clear that indirect purchasers did *not* have a cause of action before the amendment:

> Legislative Bill 1278 is introduced to permit indirect parties, or
> parties within a distribution chain transacting business indirectly

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21420 Filed 03/16/16 Page 95 of
127
1:12-cv-00803-MOB-MKM Doc # 56-25 Filed 08/16/13 Pg 94 of 126 Pg ID 798

REDACTED

> with a price-fixing party, who have been harmed by an antitrust
> violation, a right to a remedy in Nebraska. *Currently in Nebraska,
> such indirect parties have no remedy.*

Nebraska Comm. On Judiciary, Statement of Intent, L.B. 1278 (2002) (emphasis added).

Nebraska does not apply its substantive statutes retroactively "unless the legislative intent and

purpose that it should operate retrospectively is clearly disclosed." *Soukop v. ConAgra, Inc.*, 653

N.W.2d 655, 658 (Neb. 2002). No such clearly expressed legislative intent exists here.

Accordingly, notwithstanding the Court's contrary conclusion in *WH*, 2013 WL 2456612, at *19

(which seems to have been reached without consideration of the above-quoted Nebraska

Legislature's Statement of Intent),[10] Defendants respectfully submit that the Court should

dismiss ADs' Nebraska antitrust claim that is based on alleged conduct occurring before July 19,

2002.

### 3. IPPs' Nebraska unjust enrichment claims fail because IPPs received the benefit of their bargains.

IPPs' Nebraska unjust enrichment claims require dismissal because, as explained in

Section IV.D, *supra*, there can be no unjust enrichment where, as here, IPPs received the benefit

of their bargains: properly functioning FSs at the prices they agreed to pay. *See Washa v.

Miller*, 546 N.W.2d 813, 819 (Neb. 1996).

### R. Nevada

### 1. Component IPPs' Nevada antitrust claims fail for lack of standing.

Nevada's harmonization statute expressly mandates that its antitrust law "shall be

construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."

Nev. Rev. Stat. Ann. § 598A.050; *see also Boulware v. Nevada*, 960 F.2d 793, 800-01 (9th Cir.

---

[10] *Arthur v. Microsoft Corp.*, 676 N.W.2d 29 (Neb. 2004), to which this Court cited in *WH*, 2013
WL 2456612, at *19, also does not appear to have considered the Nebraska Legislature's
Statement of Intent.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21421 Filed 03/16/16 Page 96 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 95 of 126 Pg ID 430

REDACTED

1992) (Nevada Unfair Trade Practices Act "tracks . . . the Sherman Act" and "adopts by
reference the case law applicable to the federal antitrust laws"). Thus, *AGC* applies to Nevada
antitrust claims. *See, e.g.*, *Magnesium Oxide*, 2011 WL 5008090, at *7 n.9 (dismissing indirect
purchaser Nevada antitrust claims); *DRAM II*, 536 F. Supp. 2d at 1134-42 (same). Because all
the *AGC* factors weigh against standing here, *see* Section III, *supra*, Component IPPs' Nevada
antitrust claims should be dismissed.

## 2. IPPs' Nevada antitrust claims fail because IPPs do not allege conduct by Defendants that took place in Nevada.

Under Nevada antitrust law, IPPs must allege that at least some of the unlawful conduct
at issue (here, the alleged FS price-fixing conspiracy) took place in Nevada. *See* Nev. Rev. Stat.
Ann. § 598A.060 ("[I]t is unlawful to conduct any part of [a conspiracy in restraint of trade] *in
this State*." (emphasis added)). IPPs make no such allegations. While IPPs plead that
Defendants regularly attend an auto show in Nevada (AD CCC ¶ 135; EP CAC ¶ 92), "'mere
opportunity' to conspire, without more, cannot form the basis of a claim of conspiracy."
*Packaged Ice*, 723 F. Supp. 2d at 1017 (citing *GPU I*, 527 F. Supp. 2d at 1023); *see also Travel
Agent*, 583 F.3d at 911 (citing *Iqbal*, 129 S. Ct. at 1950). IPPs otherwise simply allege that
Defendants' conduct caused FS prices in Nevada to be fixed "at artificially high levels,"
deprived IPPs of "free and open competition," caused them to pay "supracompetitive" prices,
and "substantially affected Nevada commerce." (EP CAC ¶ 183; AD CCC ¶ 236.) Although
this Court, in reliance on *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD II*"), 599 F. Supp.
2d 1179, 1189 (N.D. Cal. 2009), found similar allegations sufficient in *WH*, 2013 WL 2456612,
at *21, the cases relied upon by *LCD II* all included allegations of sales of the price-fixed product
*in Nevada by the defendant* or its co-conspirators. IPPs make no such allegations here. ADs'
allegations that they bought FSs in Nevada, (AD CCC ¶ 63), cannot save their claims because

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21422 Filed 03/14/16 Page 97 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-7 Filed 08/16/13 Pg 96 of 126 Pg ID 500
REDACTED

they say nothing about *Defendants'* conduct, which is the focus of the statute. *See* Nev. Rev.

Stat. Ann. § 598A.060. IPPs' Nevada antitrust claims require dismissal.

### 3. IPPs' Nevada unjust enrichment claims fail because Defendants provided consideration.

IPPs' Nevada unjust enrichment claims must be dismissed because there is no unjust

enrichment where Defendants provided consideration (FSs) for the benefit they received

(money). *See, e.g.*, *Bowyer v. Davidson*, 584 P.2d 686, 687 (Nev. 1978) (no unjust enrichment

where defendant provided third party the consideration due under their agreement even if

defendant retained a benefit from plaintiff without making further payment); Section IV.E,

*supra*.

### S. New Hampshire

#### 1. Component IPPs' New Hampshire antitrust claims fail for lack of standing.

New Hampshire's harmonization provision authorizes courts to interpret its antitrust law

in accordance with federal law. *See* N.H. Rev. Stat. Ann. § 356:14 ("In any action or

prosecution under this chapter, the courts may be guided by interpretations of the United States'

antitrust laws."). Consistent with that directive, New Hampshire's Supreme Court has held that

New Hampshire's antitrust law "should be construed consistent with the *Illinois Brick* rule,"

*Minuteman v. Microsoft Corp.*, 795 A.2d 833, 839-40 (N.H. 2002) (affirming dismissal), and this

Court also has applied *AGC* to dismiss New Hampshire antitrust claims by indirect purchasers.

*Compressors II*, 2013 WL 1431756, at *10-15. As *AGC* factors do not favor Component IPPs'

standing here, *see* Section III, *supra*, their New Hampshire antitrust claims warrant dismissal.

#### 2. IPPs cannot assert retroactive New Hampshire antitrust claims.

New Hampshire enacted its statute permitting indirect purchaser antitrust plaintiffs to sue

for money damages on January 1, 2008. N.H. Rev. Stat. Ann. § 356:11. That statute does not

apply retroactively. *See In re Silk*, 937 A.2d 900, 904 (N.H. 2007) ("We have long held that

statutes are presumptively intended to operate prospectively."). Yet, ADs and EPs seek recovery

based on alleged conduct going back to March 2001 and March 2004, respectively. The Court

should therefore dismiss IPPs' New Hampshire antitrust claims based on alleged conduct

occurring prior to January 1, 2008, as it did in *WH*. *See WH*, 2013 WL 2456612, at *19 ("IPPs

cannot seek recovery under the New Hampshire statute for any conduct that occurred prior to

January 1, 2008.").

### 3. IPPs' New Hampshire unjust enrichment claims fail for two reasons.

IPPs' New Hampshire unjust enrichment claims require dismissal because, as explained

in Section IV.D, *supra*, IPPs received the benefit of their bargains: properly functioning FSs at

the prices they agreed to pay. *See Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021, 1025 (N.H.

2009). These claims also fail because New Hampshire does not permit unjust enrichment claims

where Defendants provided consideration (here, FSs) for the benefit they received (here, money).

*See, e.g.*, *Axenics, Inc. v. Turner Constr. Co.*, 62 A.3d 754, 766-67 (N.H. 2013) (once

defendant's financial obligation to a third party is fulfilled, plaintiff cannot use unjust enrichment

to rely on defendant to satisfy the relationship between plaintiff and third party); Section IV.E,

*supra*.

### T. New Mexico

### 1. Component IPPs' New Mexico antitrust claims fail for lack of standing.

New Mexico's harmonization provision mandates that its state antitrust act (the

"NMAA") "shall be construed in harmony with judicial interpretations of the federal antitrust

laws." N.M. Stat. Ann. § 57-1-15; *accord Romero v. Philip Morris Inc.*, 242 P.3d 280, 291

(N.M. 2010). Thus, as New Mexico and federal courts, including this one, have recognized,

*AGC* applies to determine standing under the NMAA. *See, e.g.*, *Nass-Romero v. Visa U.S.A.*,

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21424 Filed 03/14/16 Page 99 of 127
Case 2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 98 of 126 Pg ID 502
REDACTED

*Inc.*, 279 P.3d 772, 777-81 (N.M. Ct. App. 2012) (applying *AGC* to dismiss NMAA claims);

*Compressors II*, 2013 WL 1431756, at *10-15 (same). Because, as explained in Section III,

*supra*, *AGC* factors do not favor standing here, Component IPPs' NMAA claims require

dismissal.

### 2. IPPs' New Mexico consumer protection claims fail because IPPs do not allege "unconscionable" conduct.

IPPs plead no *facts* to establish that Defendants engaged in "unconscionable" conduct, as

defined and required by New Mexico's consumer protection law. *See* N.M. Stat. Ann. § 57-12-

2(E) (unconscionable conduct constitutes acts or practices that "take[] advantage of the lack of

knowledge, ability, experience or capacity of a person to a grossly unfair degree" or "result[] in a

gross disparity between the value received by a person and the price paid"). Pleading

unconscionability under New Mexico law "requires something more than merely alleging that

the price of a product was unfairly high." *GPU I*, 527 F. Supp. 2d at 1029. While IPPs parrot

the language of the statute (AD CCC ¶ 260, EP CAC ¶ 208), they have not alleged any *facts*

from which the Court could plausibly conclude that they were subjected to inequitable

bargaining power compared to Defendants, or that there existed a "gross disparity" between the

prices IPPs paid for FSs and the value they received. *Twombly*, 550 U.S. at 570. For example,

neither Complaint alleges *anything* about the specific prices that IPPs paid for FSs or vehicles

containing FSs, or the amount of the alleged overcharges on FSs. This failure distinguishes

IPPs' Complaints from both cases on which this Court relied in finding New Mexico's pleading

standards satisfied in *WH*, 2013 WL 2456612, at *27. In those cases, the plaintiffs quantified in

some way the alleged "gross disparity." *See In re Chocolate Confectionary Antitrust Litig.*, 602

F. Supp. 2d 538, 552-53 (M.D. Pa. 2009) (detailing three series of price increases and the

percentage by which each defendant increased price); *NMV I*, 350 F. Supp. 2d at 196 (prices up

REDACTED

to 30% higher). IPPs' "formulaic recitation" of the elements of New Mexico's consumer protection law is not enough to survive dismissal, and neither *Chocolate* nor *NMV* suggest otherwise.

Any effort by IPPs to argue that their New Mexico claims survive because they have pled unequal bargaining power likewise fails because IPPs admit that they purchased FSs exclusively from parties *other than* Defendants, and had *no* contact with Defendants. (AD CCC ¶¶ 124, 192-93; EP CAC ¶¶ 23-63, 144-45). Thus, despite IPPs' attempt to assert otherwise, (*see* AD CCC ¶ 260(b); EP CAC ¶ 208(b)), they cannot plausibly base their claims on unequal bargaining power between themselves and Defendants (since they had no contact). IPPs' legally deficient New Mexico consumer protection claims must therefore be dismissed.

### 3. IPPs' New Mexico unjust enrichment claims fail because IPPs received the benefit of their bargains.

IPPs' New Mexico unjust enrichment claims fail because, as explained in Section IV.D, *supra*, there can be no unjust enrichment where, as here, IPPs received the benefit of their bargains: properly functioning FSs at the prices they agreed to pay. *See Arena Res., Inc. v. Obo, Inc.*, 238 P.3d 357, 361 (N.M. Ct. App. 2010) (no unjust enrichment where plaintiff has received the benefit of the bargain (citing Restatement (First) of Restitution §107(1))).

### U. New York

### 1. Component IPPs' New York antitrust claims fail for lack of standing.

New York and federal courts, including this one, apply the *AGC* factors to New York antitrust claims to determine standing. *See Ho v. Visa U.S.A. Inc.*, No. 112316/00, 2004 WL 1118534, at *2-3 (N.Y. Sup. Ct. Apr. 21, 2004) (applying *AGC* to dismiss New York antitrust claim) (Ex. J-43), *aff'd*, 16 A.D.3d 256 (N.Y. App. Div. 2005); *Compressors II*, 2013 WL

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21426 Filed 03/11/16 Page 101 of
2:12-cv-00803-MOB-MKM Doc # 56 Filed 09/10/13 Pg 100 of 126 Pg ID 504
127

REDACTED

1431756, at *10-15 (same).  Because, as explained in Section III, *supra*, all *AGC* factors weigh

against standing here, this Court should dismiss Component IPPs' New York antitrust claims.

### 2.   **EPs' New York antitrust claim fails because EPs do not allege a sufficient impact on intrastate commerce.**

To state a cognizable claim under New York antitrust law (the Donnelly Act), it is *not*

sufficient to "alleg[e] that intrastate conduct [sic], or New York's local interests, were affected

by the challenged conduct."  *WH*, 2013 WL 2456612, at *21.  Rather, EPs must plead facts

establishing that the alleged conspiracy did not *principally* affect *interstate* commerce.  *See H-*

*Quotient, Inc. v. Knight Trading Grp., Inc*., No. 03 Civ.5889 (DAB), 2005 WL 323750, at *4

(S.D.N.Y. Feb. 9, 2005) ("Where the conduct complained of principally affects interstate

commerce, with little or no impact on local or intrastate commerce, it is clear that federal

antitrust laws operate to preempt the [New York state antitrust] field . . . ." (citation omitted))

(Ex. J-44).  EPs' Complaint affirmatively establishes that EPs cannot meet that standard, as it

reveals allegations of claimed (1) anticompetitive conduct that was "intended to, and did have, a

substantial effect on interstate commerce of the United States" (EP CAC ¶ 19; *accord* ¶¶ 18,

159); and, (2) anticompetitive effects in some 24 states, of which New York is merely one (*id.* at

¶¶ 173-195).  Indeed, EPs allege not one FS or car purchase by an EP in New York.  Nor do they

allege that any defendant is located or has a principal place of business within the state.  EPs thus

plead a conspiracy that principally affected *inter*state commerce.  As such, EPs' claim is outside

the scope of the Donnelly Act and requires dismissal.

### 3.   **Component IPPs' New York consumer protection claims fail because IPPs' injuries are too remote.**

Component IPPs lack standing to assert their claims under New York consumer

protection law ("Section 349") because their claimed injuries are too remote.  New York courts

have relied on *AGC* and its remoteness inquiry to dismiss Section 349 claims that, like

Component IPPs', sound in antitrust. *See, e.g.*, *Ho*, 2004 WL 1118534, at *4-5 (applying *AGC*

to dismiss "a general antitrust claim" brought under Section 349 because it was "too remote");

*State v. Daicel Chem. Indus., Ltd.*, 840 N.Y.S.2d 8, 12 (App. Div. 2007) (in price-fixing case,

trial court "properly dismissed the . . . § 349 claim [because] indirect purchasers on whose behalf

plaintiff is suing are too remote from defendants' alleged wrongdoing to support such a claim"

(citing *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140 (N.Y.

2004) ("*BC/BS of N.J.*"), and *Ho*, 16 A.D.3d 256)); *see also DRAM II*, 536 F. Supp. 2d at 1142-

43 (applying *AGC* in price-fixing case to dismiss indirect purchaser Section 349 claim).  Since

all the *AGC* factors weigh against standing, *see* Section III, *supra*, the Court should do the same

here and dismiss Component IPPs' claims.

> ### 4.    IPPs' New York consumer protection claims fail because IPPs have not alleged a deceptive act directed towards consumers.

IPPs' Section 349 claims also fail because Section 349 only confers a private right of

action on a "person who has been injured by reason of" a deceptive act or practice. *Id.* at

§ 349(h) (emphasis added).  Thus, as New York's highest court has held, IPPs must allege "both

a deceptive act or practice *directed toward consumers* and that such act or practice resulted in

actual injury to [them]."  *BC/BS of N.J.*, 818 N.E.2d at 1143 (emphasis added); *see also WH*,

2013 WL 2456612, at *28.  New York courts thus consistently dismiss Section 349 claims

where, as here, indirect purchasers allege they overpaid due to an antitrust violation but do not

allege any misrepresentations directed *at them*.  *See, e.g.*, *Daicel*, 840 N.Y.S.2d at 12; *Paltre v.

Gen. Motors Corp.*, 810 N.Y.S.2d 496, 498 (App. Div. 2006) (no viable § 349 claim where

misrepresentation not directed at consumers).  *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149

(App. Div. 2004), on which this Court relied in allowing EPs' Section 349 claims to proceed in

*WH*, 2013 WL 2456612, at *28, does not say otherwise.  First, *Cox* is an *intermediate* level

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21428 Filed 03/11/16 Page 103 of
2:12-cv-00803-MOB-MKM Doc # 56-25 Filed 09/16/13 Pg 102 of 126 Pg ID 306
127
REDACTED

decision that predates *BC/BS of N.J.*, as well as *Daicel* and *Paltre*, both antitrust cases. Second, IPPs' admission that they had no direct contact with Defendants, nor any means by which to obtain information from Defendants, is wholly inconsistent with New York's requirement that IPPs allege a misrepresentation directed *at them* to state a viable Section 349 claim. (*See* AD CCC ¶ 192-93; EP CAC ¶ 144-45). IPPs' references to unidentified public statements (AD CCC ¶ 261; EP CAC ¶ 209) cannot cure this fatal defect. IPPs' New York consumer protection claims must be dismissed.

### 5. Because EPs do not allege that the deceptive transaction occurred in New York, EPs' New York consumer protection claim fails.

The statutory language of Section 349 "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York" and, to be a prohibited act under the statute, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002); *see also Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8-9, n.1 (2d Cir. 2012) (applying *Goshen*'s requirement that plaintiffs allege that "that they were deceived in New York" and dismissing claims of non-New York plaintiffs in reliance not on "the non-New York plaintiffs' residency but on the lack of any plausible claim that they engaged in a transaction with [defendant] Sirius within New York"). EPs make no such allegations; they do not even allege where they made their allegedly price-fixed purchases. (EP CAC ¶ 209.) Their Section 349 claim thus requires dismissal.

### 6. IPPs' New York unjust enrichment claims fail for two reasons.

Under New York law, unjust enrichment only exists where the plaintiff either engaged in an "actual, substantive relationship" with the defendant *or* conferred a "direct" benefit upon it. *See Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475, 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009) (dismissing unjust enrichment claim because plaintiff lacked "direct dealings, or

an actual, substantive relationship" with defendant) (Ex. J-45); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (rejecting unjust enrichment claim by lender against borrower's wife because lender "[did] not establish the specific and direct benefit necessary to support an unjust enrichment claim" against the wife, a third party); *Brenner v. Brenner*, 821 F. Supp. 2d 533, 540-41 (E.D.N.Y. 2011) (dismissing unjust enrichment claim because defendant did not directly benefit from plaintiffs having paid off a loan made to defendant's son's company).

IPPs' relationship to Defendants is too attenuated to establish the "actual, substantive relationship" required to support a New York unjust enrichment claim. New York's highest court has made clear that New York law does not recognize unjust enrichment claims premised, as here, on an attenuated relationship between a manufacturer and the downstream buyer of a complex product of which the manufacturer's product is just a small part. In *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007), the plaintiff, purchaser of tires, brought antitrust and unjust enrichment claims against defendants, producers of chemicals used in rubber-processing. The court dismissed the unjust enrichment claims, concluding that "the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support such a claim." *Id.*; *see also LIBOR-Based Fin. Instruments*, 2013 WL 1285338, at *61 (dismissing New York unjust enrichment claim because allegations that plaintiffs paid supracompetitive prices due to defendants' conduct "d[id] not establish a relationship, of any sort, between plaintiffs and defendants"); *Bristol Vill., Inc. v. La.-Pac. Corp.*, No. 12-CV-2635, 2013 WL 55698, at *7 (W.D.N.Y. Jan. 3, 2013) (dismissing unjust enrichment claim: "[a] relationship is too attenuated where a plaintiff is an indirect purchaser of an item as part of a larger product") (Ex. J-46); *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 518-19 (2012) (no unjust enrichment because parties "simply had no dealings with each other" and

Case 2:12-md-02311-SFC-RSW   ECF No. 1250-7   PageID.21430   Filed 03/11/16   Page 105 of
127
2:12-cv-00803-MOB-MKM   Doc # 56-2   Filed 09/16/13   Pg 104 of 126   Pg ID 508

REDACTED

complaint did not allege that parties "had any contact regarding the purchase transaction");

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182-83 (2011) (affirming dismissal of

New York unjust enrichment claim due to lack of allegations indicating a relationship between

the parties).

As indirect purchasers of a product containing the component at issue, IPPs by definition

also cannot have conferred the "specific and direct benefit" required by New York law.  Federal

courts, including this one, have consistently dismissed New York unjust enrichment claims in

such circumstances.  *See, e.g.*, *Compressors II*, 2013 WL 1431756 at *25-26; *M+J Savitt, Inc. v.

Savitt*, No. 08 Civ. 8535 (DLC), 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) ("It is not

sufficient for defendant to receive some indirect benefit – the benefit received must be specific

and direct . . . ." (internal quotations and citation omitted)) (Ex. J-47); *Kaye*, 202 F.3d at 616;

*Brenner*, 821 F. Supp. 2d at 540-41.  For similar reasons and as explained in Section IV.C,

*supra*, this Court should do the same here.

IPPs' New York unjust enrichment claims also require dismissal because, as explained in

Section IV.D, *supra*, there can be no unjust enrichment where, as here, IPPs received the benefit

of their bargains:  properly functioning FSs at prices they agreed to pay.  *See One Step Up, Ltd.

v. Webster Bus. Credit Corp.*, 925 N.Y.S.2d 61, 70 (App. Div. 2011).

## V.      North Carolina

### 1.      Component IPPs' North Carolina antitrust claims fail for lack of standing.

Although North Carolina does not apply the *AGC* factors, North Carolina courts apply a

standing test that considers (1) whether plaintiff has adequately alleged causation, (2) the

speculative nature of plaintiff's claims, and (3) the complexity of apportioning damages.  *See

Teague v. Bayer AG*, 671 S.E.2d 550, 557-58 (N.C. Ct. App. 2009).  Thus, a component part

Case 2:12-md-02311-SFC-RSW   ECF No. 1250-7   PageID.21431   Filed 03/11/16   Page 106 of
127
2:12-cv-00303-MOB-MKM   Doc # 56   Filed 09/16/13   Pg 105 of 126   Pg ID 509

REDACTED

plaintiff lacks standing absent allegations that the price-fixed part is a "significant component" of

the product it bought.  *Id.*  In *Teague*, the court found "sufficient facts in [the] complaint" to

establish standing where the plaintiff alleged the price-fixed product was a "significant

component part," or 80-85%, of the finished good plaintiff bought.  *Id.*  Here, a FS is but one of

thousands of components in a vehicle, and no IPP pleads a single fact about the cost of a FS.

While ADs claim that FSs "comprise a not insignificant portion of the cost of a vehicle" (AD

CCC ¶ 185), that conclusory allegation is insufficient under *Twombly*.  *See Iqbal*, 556 U.S. at

664 (factual "allegations [that] are conclusory" are "not entitled to be assumed true").  Thus,

IPPs' North Carolina antitrust claims also warrant dismissal for lack of antitrust standing.

### 2.   IPPs' North Carolina antitrust claims fail because IPPs do not allege conduct by Defendants that took place in North Carolina.

Under North Carolina *antitrust* law, IPPs must allege that the conduct at issue –

Defendants' alleged price-fixing conspiracy – took place in North Carolina.  *See* N.C. Gen. Stat.

§ 75-1 ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint

of trade or commerce *in the State of North Carolina* is hereby declared to be illegal." (emphasis

added)).  IPPs do not do so.  Instead, they plead only that Defendants' conduct caused FS prices

in North Carolina to be fixed "at artificially high levels," deprived IPPs of "free and open

competition," caused them to pay "supracompetitive" prices, and "substantially affected North

Carolina commerce."  (EP CAC ¶ 187; AD CCC ¶ 240.)  That is not enough.  Nor are ADs'

allegations that they bought FSs (but *not* from Defendants) in North Carolina (AD CCC ¶ 59)

sufficient, because they say nothing about *Defendants*' conduct (which is the focus of the

statute).  *See* N.C. Gen. Stat. § 75-1.  Defendants are mindful that the Court held in *WH*, 2013

WL 2456612, at *21, that "effect" allegations like these are sufficient to meet the pleading

requirements of North Carolina antitrust law, but Defendants respectfully submit that the cases

on which the Court relied to reach that conclusion address *not* North Carolina *antitrust* law, but

North Carolina's unfair and deceptive trade practices law ("NCUDTPA").  (North Carolina's

antitrust law is codified at N.C. Gen. Stat. § 75-1, while NCUTDPA is codified at § 75-1.1.)

North Carolina's *antitrust* law requires in-state misconduct by Defendants, and IPPs' Complaints

allege none.  Their North Carolina antitrust claims thus require dismissal.

### 3. EPs' North Carolina consumer protection claim fails because they do not allege a sufficient nexus with intrastate commerce.

As this Court recently recognized, under the NCUDTPA, N.C. Gen. Stat. § 75-1.1, a

plaintiff must plead that the alleged conspiracy had "a 'substantial in-state effect on North

Carolina trade or commerce.'"  *WH*, 2013 WL 2456612, at *21 (citation omitted); *see also*

*Compressors II*, 2013 WL 1431756, at *18-19 (dismissing NCUDTPA claims because inflated

prices in NC resulting from alleged conspiracy were merely "incidental" in-state injury); *Merck*

*& Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing NCUDTPA claim where

"plaintiffs . . . failed to allege a substantial effect on any in-state business operations," and "[a]ny

injury plaintiffs may suffer in North Carolina will be incidental"); *Duke Energy Int'l, L.L.C. v.*

*Napoli*, 748 F. Supp. 2d 656, 676-77 (S.D. Tex. 2010) (dismissing NCUDTPA claim:  "courts

limit the scope of the NC UTPA to cases where the allegedly wrongful conduct caused a

substantial effect on a plaintiff's in-state business operation"; "[a] plaintiff who does not allege a

substantial effect on in-state North Carolina operations fails to state a claim under the NC

UTPA" (internal quotations and citation omitted)); *The "In" Porters, S.A. v. Hanes Printables,*

*Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (same).

EPs allege no facts plausibly suggesting that Defendants' conduct caused "substantial"

in-state injury or effects.  (EP CAC ¶ 210.)  No EP even alleges that he bought an FS or car in

North Carolina (and no inference is warranted that EPs bought big-ticket items like cars in their

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21433 Filed 03/11/16 Page 108 of
127
2:12-cv-00303-MOB-MKM Doc # 56 Filed 09/16/13 Pg 107 of 126 Pg ID 302

REDACTED

home states, especially when EPs easily could have pled such information, which is well within

their knowledge, and tax and/or price differences make out-of-state purchases plausible).  This

pleading failure distinguishes EPs' allegations from those in *Flonase II*, 692 F. Supp. 2d at 540-

41, on which this Court relied in upholding end payors' NCUDTPA claim in *WH*, 2013 WL

2456612, at *21.  There, the court found a "substantial in-state effect on North Carolina trade or

commerce" based on allegations "that Defendant maintains two large development and

production facilities in North Carolina, and sold large amounts of Flonase within the state,

*including to Plaintiffs*, at artificially inflated prices."  *Flonase II*, 692 F. Supp. 2d at 540-41

(emphasis added).

### 4.   IPPs' North Carolina unjust enrichment claims fail for two reasons.

North Carolina courts "ha[ve] limited the scope of a claim of unjust enrichment such that

the benefit conferred must be conferred directly from plaintiff to defendant, not through a third

party."  *Baker Constr. Co. v. City of Burlington*, No. COA09-13, 2009 WL 3350747, at *6 (N.C.

Ct. App. Oct. 20, 2009) (Ex. J-48).  North Carolina's "direct benefit" requirement has been

found satisfied in the absence of contractual privity or direct contact only in very limited

circumstances not present here.  *See, e.g.*, *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d

916, 922 (N.C. 1992) (bank unjustly enriched when it received the security it bargained for – a

completed building – but did not disburse funds for completing the building to the third party

construction company).  Because IPPs do not and cannot allege that they conferred a direct

benefit on Defendants, *see* Section IV.C, *supra*, their North Carolina unjust enrichment claims

require dismissal.  *See Aftermarket Filters*, 2010 WL 1416259, at *2-3 (dismissing indirect

purchasers' North Carolina unjust enrichment claim); *see also Flonase II*, 692 F. Supp. 2d at 546

(same); *cf. In re Relafen Antitrust Litig.* ("*Relafen I*"), 221 F.R.D. 260, 287 (D. Mass. 2004)

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21434 Filed 03/11/16 Page 109 of
127
2:12-cv-00803-MOB-MKM Doc # 56 Filed 09/16/13 Pg 108 of 126 Pg ID 502

REDACTED

(excluding North Carolina plaintiffs from exemplar classes because they "would be subject to an
individualized defense regarding the 'direct benefit' element of their unjust enrichment claims").

IPPs' North Carolina unjust enrichment claims also require dismissal because, as
explained in Section IV.D, *supra*, there can be no unjust enrichment where, as here, IPPs
received the benefit of their bargains: properly functioning FSs at prices they agreed to pay. *See
Britt v. Britt*, 359 S.E.2d 467, 471 (N.C. 1987), *overruled on other grounds by Myers &
Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988).

### W.     North Dakota

#### 1.     Component IPPs' North Dakota antitrust claims fail for lack of standing.

North Dakota courts apply the *AGC* factors to determine standing under North Dakota
antitrust law. *See Beckler v. Visa U.S.A. Inc.*, No. Civ. 09-04-C-00030, 2004 WL 2475100, at *4
(N.D. Dist. Ct. Sept. 21, 2004) (dismissing claims because "[p]laintiffs' alleged injuries do not
satisfy antitrust standing principles identified in [*AGC*]") (Ex. J-49). Because, as explained in
Section III, *supra*, the *AGC* factors all weigh against standing here, this Court should dismiss
Component IPPs' North Dakota antitrust claims.

#### 2.     IPPs' North Dakota unjust enrichment claims fail for three reasons.

IPPs' North Dakota unjust enrichment claims are deficient because IPPs fail to allege the
five required elements, including, *inter alia*, "a connection between the enrichment and the
impoverishment," "absence of a justification for the enrichment and the impoverishment," and
"absence of a remedy provided by law." *Schroeder v. Buchholz*, 622 N.W.2d 202, 207 (N.D.
2001); *see also Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 894-95 (N.D. 1999)
(same). IPPs' North Dakota unjust enrichment claims fail for the additional reason that IPPs
must allege that they conferred a "direct" benefit on Defendants, *see Apache Corp*, 603 N.W.2d

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21435 Filed 03/11/16 Page 110 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56-2 Filed 09/16/13 Pg 109 of 126 Pg ID 3108

REDACTED

at 895; *cf. In re Relafen Antitrust Litig.* ("*Relafen II*"), 225 F.R.D. 14, 28 (D. Mass. 2004)

(relying on *Apache* to preclude indirect purchasers' unjust enrichment claims due to absence of

direct benefit conferred by them on defendants), but IPPs do not and cannot do so here.  *See*

Section IV.C, *supra*.  Finally, IPPs' North Dakota unjust enrichment claims must be dismissed

because there can be no unjust enrichment where, as here, IPPs received the benefit of their

bargains:  properly functioning FSs at prices they agreed to pay.  *See Jerry Harmon Motors, Inc.

v. Heth*, 316 N.W.2d 324, 328 (N.D. 1982) (citing 17 CJS Contract § 6, 570-574)); Section IV.D.

## X. Oregon

### 1. Component IPPs' Oregon antitrust claims fail for lack of standing.

Oregon's harmonization statute requires courts to interpret Oregon antitrust law

consistent with federal law and, hence, in accordance with *AGC*.  *See* Or. Rev. Stat. § 646.715

(2) ("The decisions of federal courts in construction of federal law relating to the same subject

*shall be* persuasive authority in the construction of [Or. Rev. Stat. §] 646.705 to 646.805 and

646.990." (emphasis added)); *see also N.W. Med. Labs., Inc. v. Blue Cross & Blue Shield of Or.,

Inc.*, 794 P.2d 428, 433 (Or. 1990) (requiring courts to "look to federal caselaw" when

interpreting and applying Oregon antitrust law); *Magnesium Oxide*, 2011 WL 5008090, at *7 n.9

(dismissing indirect purchaser Oregon antitrust claims because Oregon antitrust law is

"construed in accordance with federal antitrust principles").  Thus, consistent with Oregon's

harmonization statute and because, as explained in Section III, *supra*, all *AGC* factors weigh

against standing here, this Court should dismiss Component IPPs' Oregon antitrust claims.

### 2. IPPs' Oregon unjust enrichment claims fail because IPPs received the benefit of their bargains.

IPPs' Oregon unjust enrichment claims fail because, as explained in Section IV.D, *supra*,

there can be no unjust enrichment where, as here, IPPs received the benefit of their bargains:

REDACTED

properly functioning FSs at the prices they agreed to pay.  *See High*, 584 P.2d at 736; *Winters*,

150 P.3d at 1108.

    **Y.**    **Rhode Island**

        **1.**    <u>**As indirect purchasers, EPs lack standing to bring their Rhode Island**</u>
            <u>**consumer protection act claim.**</u>

EPs allege a claim under the Rhode Island consumer protection statute ("RIUTPCPA").

(EP CAC ¶ 211.)  As indirect purchasers, however, they lack standing to bring claims under

Rhode Island law, which follows *Illinois Brick*.  *See Siena v. Microsoft Corp.*, 796 A.2d 461,

464-65 (R.I. 2002) (no indirect purchaser standing under Rhode Island's antitrust act; "standing

to litigate antitrust violations rests with the direct purchaser or the Attorney General as *parens

patriae*"); *GPU I*, 527 F. Supp. 2d at 1030-31 (dismissing plaintiffs' RIUTPCPA claims

sounding in antitrust partly because Rhode Island "does not permit state-law antitrust claims by

[private] indirect purchasers").  EPs' RIUTPCPA claim must therefore be dismissed.

        **2.**    <u>**EPs' Rhode Island unjust enrichment claim fails for two reasons.**</u>

To establish a Rhode Island unjust enrichment claim, EPs must allege that they conferred

a "direct" benefit on Defendants.  *See Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 2001)

(affirming dismissal of Rhode Island unjust enrichment claim because plaintiffs conferred no

benefit on defendants).  Consistent with this requirement, federal courts, including this one,

dismiss Rhode Island unjust enrichment claims brought by indirect purchasers like EPs.  *See,

e.g.*, *Compressors II*, 2013 WL 1431756 at *25-26.  For the reasons explained in Section IV.C,

*supra*, the Court should do the same here.

EPs' Rhode Island unjust enrichment claim also must be dismissed because, as explained

in Section IV.D**,** *supra*, there can be no unjust enrichment where, as here, EPs received the

benefit of their bargains:  properly functioning FSs at the prices they agreed to pay.  *See Rosetta*

*v. Moretti*, No. 98-89, 2005 WL 1109638, at *8 (R.I. Super. Ct. May 4, 2005) (granting motion for judgment as matter of law because plaintiffs failed to establish that allowing defendant to retain the negotiated purchase price would be inequitable) (Ex. J-50).

### Z.     South Carolina

#### 1.     South Carolina's consumer protection law bars ADs' class claim.

ADs allege a consumer protection claim on behalf of a putative class under the South Carolina Unfair Trade Practices Act ("SCUTPA").  (AD CCC ¶ 263.)  This claim must be dismissed because SCUTPA specifically prohibits private indirect purchaser plaintiffs like ADs from bringing their claims as class actions, and does so within the very statute that creates the consumer protection right at issue.  S.C. Code Ann. § 39-5-140(a) ("Any person who suffers an ascertainable loss of money or property . . . *may bring an action individually, but not in a representative capacity*, to recover actual damages." (emphasis added)); *In re MI Windows and Doors, Inc. Prods. Liab. Litig.*, 2:11–cv–00167–DCN, 2012 WL 5408563, at *5 (D.S.C. Nov. 6, 2012) (dismissing SCUTPA class claims) (Ex. J-51).  This Court acknowledged in *WH*, 2013 WL 2456612, at *30, that the language in SCUTPA barring class claims "is quite clear," but allowed the claim to proceed due to defendants' failure to cite post-*Shady Grove* authority supporting defendants' position, and because "more recent authority" – specifically, *In re Optical Disk Drive Antitrust Litig.* ("*ODD*"), No. 3:10–md–2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) (Ex. J-52) – rejected that position.  Here, however, Defendants have cited *MI Windows and Doors*, 2012 WL 5408563, at *5, which not only post-dates *Shady Grove* and *ODD*, but cites two other post-*Shady Grove* decisions likewise dismissing class claims as barred by SCUTPA.  *Id.* at *5 n.3.  Moreover, *ODD* is an outlier, and its cursory statement that "Defendants' attempts to distinguish *Shady Grove* are not persuasive," *ODD*, 2012 WL 1366718, at *8, adds nothing to the Court's analysis.

### 2. ADs' South Carolina unjust enrichment claim fails for three reasons.

ADs' South Carolina unjust enrichment claim fails because such a claim requires that "the plaintiff . . . establish the existence of a duty owed to him or her by the defendant." *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464-65 (D. Md. 2005); *see also Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502, 511-12 (S.C. Ct. App. 2002) (no unjust enrichment where defendant owed plaintiff no duty).  Because ADs allege no facts plausibly suggesting the existence of such a duty owed to them by Defendants, their South Carolina unjust enrichment claim fails.

Under South Carolina unjust enrichment law, ADs must also allege that they conferred a "direct" benefit on Defendants.  *See Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 873 (S.C. 2000) (no unjust enrichment claim could lie where defendant City did not have a duty to provide payment for, and therefore was not directly benefitted by, plaintiff's provision of medical care to pre-trial detainees); *see also Doll*, 814 F. Supp. 2d at 551-52 (dismissing South Carolina unjust enrichment claim by used car purchasers against vehicle manufacturer for failure to allege that they purchased from the manufacturer or otherwise conferred a benefit on it when they bought cars from independent dealerships); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM, 2013 WL 139913, at *10 (S.D. Fla. Jan. 10, 2013) (denying class certification because of variation in state unjust enrichment laws, including South Carolina's direct benefit requirement) (Ex. J-53).  Because, as explained in Section IV.C, *supra*, ADs do not and cannot allege that they conferred such a benefit, their South Carolina unjust enrichment claim must be dismissed.

Finally, ADs' South Carolina unjust enrichment claim must be dismissed because, as explained in Section IV.D, *supra*, there is no unjust enrichment where, as here, ADs received the benefit of their bargains:  properly functioning FSs at the prices they agreed to pay.  *See*

*Johnston v. Brown*, 348 S.E.2d 391, 395 (S.C. Ct. App. 1986) (no unjust enrichment where

plaintiff received agreed-to consideration for the benefit conferred), *rev'd on other grounds*, 357

S.E.2d 450 (S.C. 1987).

### AA.     South Dakota

#### 1.     Component IPPs' South Dakota antitrust claims fail for lack of standing.

South Dakota courts apply the *AGC* factors to determine antitrust standing.  *Cornelison v.

Visa U.S.A. Inc.*, Hearing Transcript, No. CIV 03-1350, at 54-55 (S.D. Cir. Ct. 2004) (applying

*AGC* to dismiss claims) (Ex. J-54); *see also In re S.D. Microsoft Antitrust Litig.*, 707 N.W.2d 85,

99 (S.D. 2005) ("'[B]ecause of the similarity of language between federal and state antitrust

statutes and because of the legislative suggestion for interpretation found in SDCL 37-1-22,

*great weight* should be given to the federal cases interpreting the federal statute.'" (quoting *Byre

v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985)) (emphasis added)); *DRAM II*, 536 F.

Supp. 2d at 1134-42 (dismissing claims under South Dakota state antitrust law based on *AGC*

factors).  Because, as explained in Section III, *supra*, all the *AGC* factors weigh against standing

here, this Court should dismiss the Component IPPs' South Dakota antitrust claims.

#### 2.     IPPs' South Dakota unjust enrichment claims fail because Defendants provided consideration to IPPs for any benefit received.

IPPs' South Dakota unjust enrichment claims must be dismissed because, as explained in

Section IV.E, *supra*, there can be no unjust enrichment where Defendants provided consideration

(here, FSs) for the benefit they received (here, money).  *See Parker v. W. Dakota Insurors, Inc.*,

605 N.W.2d 181, 187 (S.D. 2000).

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21440 Filed 03/11/16 Page 115 of
2:12-cv-00303-MOB-MKM Doc # 56-2 Filed 03/18/13 Pg 115 of 128 Pg ID 508
127

REDACTED

## BB.     Tennessee

### 1.     Component IPPs' Tennessee antitrust claims fail for lack of standing.

Tennessee courts apply *AGC* to determine antitrust standing.  *See Tenn. Med. Ass'n v. Blue Cross Blue Shield of Tenn., Inc.*, 229 S.W.3d 304, 311 (Tenn. Ct. App. 2007).  In *Tenn. Med. Ass'n*, Tennessee's court of appeals applied *AGC* to determine whether plaintiffs had standing to sue under Tennessee's consumer protection law, and stated, without regard to plaintiffs' status, that "[t]he same proximate cause standard governs Plaintiffs' statutory claims under the [Tennessee antitrust act]." *Id.* at 311 (quoting *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003)).  Because, as explained in Section III, *supra*, the *AGC* factors weigh against standing, this Court should also apply *AGC* to dismiss IPPs' Tennessee antitrust claims.

### 2.     IPPs' Tennessee unjust enrichment claims fail for two reasons.

IPPs' Tennessee unjust enrichment claims fail because Tennessee unjust enrichment claimants must, but IPPs do not, allege exhaustion of remedies against the party with whom the plaintiff had privity of contract, or plead facts sufficient to establish that attempts at exhaustion would have been futile.  *See Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525-26 (Tenn. 2005) (reversing denial of summary judgment to defendants on indirect purchasers' Tennessee unjust enrichment claim because plaintiffs did not allege exhaustion of remedies against their direct seller and only provided "bare allegation" that such efforts would be futile).  Here, ADs do no more than plead "bare allegations" (AD CCC ¶ 270), while EPs plead nothing at all regarding exhaustion.  Their Tennessee claims must therefore be dismissed.

Additionally, IPPs' Tennessee unjust enrichment claims fail because, as explained in Section IV.E, *supra*, an unjust enrichment claim will not lie where Defendants have provided consideration (here, FSs) for any benefit received (here, money).  *Paschall's,* 407 S.W.2d at 155 ("[I]f the [defendant] has given any consideration to any person for the [benefit], it would not be

78

Case 2:12-md-02311-SFC-RSW  ECF No. 1250-7  PageID.21441  Filed 03/11/16  Page 116 of
127
Case 2:12-cv-00803-MOB-MKM  Doc # 56  Filed 09/16/13  Pg 115 of 126  Pg ID 509

unjust for him to retain the benefit without paying the furnisher."); *McKee v. Meltech, Inc.*, No.

10-2730, 2011 WL 1770461, at *10 (W.D. Tenn. May 9, 2011) (dismissing unjust enrichment

claim because defendant had provided compensation for the services provided to plaintiff's wife

and thus "there [wa]s no injustice in allowing the defendant to retain th[e] benefit[]" (citation

omitted)) (Ex. J-55); *Weather Doctor Servs. Co., Inc. v. Stephens*, No. E2000-01427-COA-R3-

CV, 2001 WL 849540, at *2-3 (Tenn. Ct. App. July 27, 2001) (rejecting contractor's unjust

enrichment claim against homeowner because homeowner provided consideration to a third

party) (Ex. J-56).

    **CC.**   **Utah**

        **1.**   **Component IPPs' Utah antitrust claims fail for lack of standing.**

    Utah's harmonization statute, Utah Code Ann. § 76-10-3118, mandates that Utah's

antitrust laws "*will* be guided by interpretations given by the federal courts to comparable federal

antitrust statutes and by other state courts to comparable state antitrust statutes." *Id.* (emphasis

added). The *AGC* factors thus apply to Component IPPs antitrust claims under Utah law. *See,*

*e.g.*, *Magnesium Oxide*, 2011 WL 5008090, at *7 n.9 (dismissing indirect purchaser Utah

antitrust claims because Utah antitrust law is "construed in accordance with federal antitrust

principles"). Because, as explained in Section III, *supra*, each *AGC* factor weighs against

standing here, this Court should dismiss Component IPPs' Utah antitrust claims.

        **2.**   **IPPs cannot assert retroactive Utah antitrust claims.**

    Utah enacted its statute allowing indirect purchasers to bring claims to recover money

damages for antitrust violations on May 1, 2006. Utah Code Ann. § 76-10-3109 (formerly § 76-

10-919). This Court already found in *WH*, 2013 WL 2456612, at *19, that "*Illinois Brick* was

applied prior to the 2006 amendment." Like all Utah Code provisions, this statute "is not

retroactive, unless the provision is expressly declared to be retroactive." Utah Code Ann.

§ 68-3-3; *accord Brown & Root Indus. Serv. v Indus. Comm'n*, 947 P.2d 671, 675 (Utah 1997) (same). No such express provision exists; yet, ADs and EPs seek recovery based on alleged conduct going back to March 2001 and March 2004, respectively. The Court should therefore reach the same result it reached in *WH* and dismiss IPPs' Utah antitrust claims to the extent they are based on alleged conduct occurring prior to May 1, 2006. *See WH*, 2013 WL 2456612, at *19 (limiting claim to conduct post-May 1, 2006 on motion to dismiss); *California v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 1766775, at *5 (N.D. Cal. Apr. 15, 2008) (granting defendants' motion to dismiss because indirect purchasers could not bring claims under Utah's Antitrust Act before May 1, 2006) (Ex. J-57).

### 3. IPPs' Utah unjust enrichment claims fail for four reasons.

Under Utah law, a claim for unjust enrichment is permissible only where there is no adequate remedy at law. *See, e.g.*, *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978). When seeking an equitable remedy, a "plaintiff must affirmatively show a lack of an adequate remedy at law on the face of the pleading." *Ockey v. Lehmer*, 189 P.3d 51, 61 n.42 (Utah 2008) (citation omitted). Utah courts have explicitly applied this rule to bar unjust enrichment claims where there is a contract addressing the transaction at issue, even when the contract is not between the parties to the litigation. *See Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996) (dismissing unjust enrichment claim by condominium association against subcontractors because "[d]efendants all provided services and materials in exchange for their contract price" and the appropriate remedy is a breach of contract action between the contracting parties), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009); *Nickerson Co. v. Energy W. Mining Co.*, No. 20090221–CA, 2009 WL 4681778, at *2 (Utah Ct. App. Dec. 10, 2009) (rejecting unjust enrichment claim because plaintiff's contract with a third

party covered the sale of the product at issue) (Ex. J-58). Because IPPs' complaints do not allege the absence of an adequate legal remedy nor the absence of a contract governing their purchases of FSs, IPPs' Utah unjust enrichment claims must be dismissed.

In addition, to successfully plead a Utah unjust enrichment claim, IPPs must allege that they conferred a "direct" benefit on Defendants. *Concrete Prods. Co. v. Salt Lake Cnty.*, 734 P.2d 910, 911-12 (Utah 1987); *cf. Mylan Labs*, 62 F. Supp. 2d at 52 (finding no statutory or common law authority authorizing unjust enrichment claims by indirect purchasers under Utah law and dismissing these claims). Utah's direct benefit requirement has been found satisfied without contractual privity only in limited circumstances not present here, such as when the benefit provided by the plaintiff satisfied a duty owed by the defendant to the recipient. *See, e.g.*, *Emergency Physicians Integrated Care v. Salt Lake Cnty.*, 167 P.3d 1080, 1086 (Utah 2007) (defendant-county directly benefitted from plaintiffs' provision of medical services to county inmates because defendant had a constitutional duty to provide medical services to them); *cf. Aftermarket Filters*, 2010 WL 1416259, at *2-3 (although privity not required, any benefit plaintiffs conferred "would be on others in the chain of distribution from whom they purchased, not on defendants"). Because IPPs do not and cannot allege that they conferred a direct benefit of any kind on Defendants, *see* Section IV.C, *supra*, their Utah unjust enrichment claims fail.

IPPs' Utah unjust enrichment claims also require dismissal because, as explained in Section IV.D**,** *supra*, there is no unjust enrichment where, as here, IPPs received the benefit of their bargains: properly functioning FSs at the prices they agreed to pay. *See S. Title Guar. Co. v. Bethers*, 761 P.2d 951, 955 (Utah Ct. App. 1988) (no unjust enrichment when appellant received what it bargained for by voluntarily sending its check to respondents and receiving the

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21441 Filed 03/11/16 Page 119 of
127
2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 118 of 126 Pg ID 522

REDACTED

item which it sought); *Bray Lines Inc. v. Utah Carriers, Inc.*, 739 P.2d 1115, 1117 (Utah Ct.

App. 1987).

Finally, as explained in Section IV.E, *supra*, under Utah law, a claim for unjust

enrichment will not lie where the defendant provided consideration for the benefit it received.

*Am. Movie Classics v. Rainbow Media Holdings*, 508 F. App'x 826, 833-34 (10th Cir. 2013)

(rejecting unjust enrichment claim because defendant provided consideration to the third party

with whom it had contracted to purchase advertising from plaintiff even though the third party

had not paid plaintiff for the advertising); *Nickerson*, 2009 WL 4681778, at *2 (declining to hold

defendant liable for unjust enrichment because defendant had paid a third party and, therefore,

"did not receive or retain any benefit for which it did not pay"). Because IPPs concede that

Defendants provided consideration (FSs) for the benefit they received (money), (EP CAC ¶ 77;

AD CCC ¶ 124), IPPs' Utah unjust enrichment claims fail.

## DD. Vermont

### 1. Component IPPs' Vermont antitrust and consumer protection claims fail for lack of standing.

Vermont courts apply the *AGC* factors to determine standing under Vermont antitrust and

consumer protection law. *See Fucile v. Visa U.S.A., Inc.*, No. 51560-03 CNC, 2004 WL

3030037, at *2-4 (Vt. Super. Ct. Dec. 27, 2004) ("[I]n applying the general factors of [*AGC*], the

court holds that Mr. Fucile does not have standing in this case" because, *e.g.*, the causal chain

was too long and damages too speculative to allow his Consumer Fraud Act claims) (Ex. J-59).

Because, as explained in Section III, *supra*, the *AGC* factors all weigh against standing here, this

Court should dismiss Component IPPs' Vermont antitrust and consumer protection claims.

2.    **IPPs' Vermont unjust enrichment claims fail because Defendants**
      **provided consideration for any benefit received.**

IPPs' Vermont unjust enrichment claims fail because Defendants provided consideration

(FSs) for any benefit received (money).  *Ray Reilly's*, 537 A.2d at 995 ("[I]f the [defendant] has

given any consideration to any person for the [benefit], it would not be unjust for him to retain

the benefit without paying the furnisher." (quoting *Paschall's*, 407 S.W.2d at 155)); *Will v. Mill*

*Condo. Owners' Ass'n, Inc.*, No. 457-10-01 Wrcv, 2002 WL 34340312 (Vt. Sup. Ct. July 5,

2002) (defendant was not unjustly enriched when it bought a condominium for $3510.10 that

was worth $70,000 because "the defendant is not unjustly enriched when the defendant has paid

for the benefits received") (Ex. J-60); *Morrisville Lumber Co., Inc. v. Okcuoglu*, 531 A.2d 887,

889 (Vt. 1987); Section IV.E.

EE.    **West Virginia**

1.    **Component IPPs' West Virginia antitrust claims fail for lack of**
      **standing.**

West Virginia's harmonization statute dictates that West Virginia's antitrust statute "*shall*

*be construed . . . in harmony with ruling judicial interpretations of comparable federal antitrust*

*statutes.*"  W. Va. Code Ann. § 47-18-16 (emphasis added).  Thus, state and federal courts,

including this one, must (and do) construe West Virginia antitrust law in accordance with federal

law, including *AGC*.  *See Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 648 S.E.2d 366, 374 (W.

Va. 2007) (applying federal law to state antitrust claim analysis because "'the courts of this state

are directed by the legislature in W. Va. Code § 47-18-16 . . . to apply the federal decisional law

interpreting the Sherman Act, 15 U.S.C. 1, to our own parallel antitrust statute'" (citation

omitted)); *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587, 598-600 (W. Va. 2009)

(following federal law to hold that plaintiffs failed to demonstrate antitrust injury); *Compressors*

*II*, 2013 WL 1431756, at *10-15 (applying *AGC* to dismiss West Virginia antitrust claims).

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21461 Filed 03/11/16 Page 121 of
2:12-cv-00303-MOB-MKM Doc # 56 Filed 09/16/13 Pg 120 of 126 Pg ID 524
127

REDACTED

Because, as explained in Section III, *supra*, *AGC* factors do not favor standing here, the Court

should dismiss Component IPPs' West Virginia antitrust claims.

### 2. EPs' West Virginia antitrust claim fails because EPs do not allege a sufficient impact on *intra*state commerce.

"West Virginia's antitrust law is directed towards *intrastate* commerce." *State ex rel.*

*Palumbo v. Graley's Body Shop, Inc.*, 425 S.E.2d 177, 183 n.11 (W. Va. 1992) (emphasis in

original; citation omitted). EPs conclusorily plead only that Defendants' alleged conduct caused

FS prices in West Virginia to be fixed "at artificially high levels, deprived EPs of "free and open

competition," caused EPs to pay "supracompetitive [FS] prices," and "had a substantial effect on

West Virginia commerce." (EP CAC ¶ 194.) EPs do not plead a single act by Defendants, nor

FS purchase by any EP, in West Virginia (nor, as a result, any impact there). Thus, the premise

underlying this Court's holding in *WH* (that the requisite nexus had been established because

plaintiffs pled that the price-fixed products were "transported into [West Virginia] and purchased

by [plaintiffs there]," 2013 WL 2456612, at *21) does not exist here, and a different result –

dismissal – is therefore warranted.

### 3. IPPs' West Virginia unjust enrichment claims fail because they fall short of West Virginia's pleading requirements.

IPPs' West Virginia unjust enrichment claims fail because West Virginia requires a

plaintiff to specifically allege not only that a defendant's retention of a benefit is "inequitable

and unconscionable" but "how." *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011

WL 1357483, at *15 (N.D. W. Va. Apr. 11, 2011) (Ex. J-61). Because IPPs do not plead these

elements, their unjust enrichment claims require dismissal.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21447 Filed 03/11/16 Page 122 of
2:12-cv-00803-MOB-MKM Doc # 56 Filed 03/18/13 Pg 122 of 128 Pg ID 525
127

REDACTED

### FF.    Wisconsin

#### 1.    Component IPPs' Wisconsin antitrust claims fail for lack of standing.

Wisconsin and federal courts, including this one, apply the *AGC* factors to claims under

Wisconsin antitrust law.  *See Strang v. Visa U.S.A., Inc*., No. 03 CV 011323, 2005 WL 1403769,

at \*3-5 (Wis. Cir. Ct. Feb. 8, 2005) (recognizing, in dismissing Wisconsin antitrust claims under

*AGC*, that "[n]umerous state courts have analyzed these factors and concluded that injuries

identical to those claimed by Ms. Strang are too remote and speculative") (Ex. J-62);

*Compressors II*, 2013 WL 1431756, at \*10-15 (applying *AGC* to dismiss Wisconsin antitrust

claims).  Because, as explained in Section III, *supra*, each *AGC* factor weighs against standing

here, the Court should dismiss Component IPPs' Wisconsin antitrust claims.

#### 2.    IPPs' Wisconsin unjust enrichment claims fail because Defendants provided consideration for any benefit received.

In Wisconsin, an unjust enrichment claim will not lie where, as here, the defendant has

provided consideration (here, FSs) for the benefit received (here, money).  *Tri-State Mech., Inc.*

*v. Northland Coll.*, 681 N.W.2d 302, 305-06 (Wis. Ct. App. 2004) (unjust enrichment

unavailable if recipient of the benefit has already paid for it); Section IV.E.

## VI.    IPPS HAVE FAILED TO STATE A CLAIM FOR INJUNCTIVE RELIEF.

The Supreme Court has repeatedly stressed that an injunction is "an extraordinary remedy

that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  For that reason, the Court has

issued "clear precedent requiring that the allegations of future injury be particular and concrete."

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1988).  IPPs must "demonstrate a

significant threat of injury from an impending violation of the antitrust laws or from a

contemporary violation likely to continue or recur."  *Zenith Radio Corp. v. Hazeltine Research,*

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21448 Filed 03/11/16 Page 123 of
127
Case 2:12-cv-00803-MOB-MKM Doc # 56 Filed 09/10/13 Pg 123 of 126 Pg ID 526

REDACTED

*Inc.*, 395 U.S. 100, 130 (1969). Where plaintiffs rely on the possibility of a threatened future injury, that injury must be "certainly impending." *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1147 (2013). This "requirement . . . cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), and "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

IPPs fall far short of demonstrating a "certainly impending" injury because they allege neither a continuing conspiracy, nor facts supporting one. While EPs assert the conspiracy ran until "at least February 2010" (EP CAC ¶ 3), and ADs assert that it runs "to the present," neither alleges any facts supporting a conspiracy that continues to the present day or is likely to recur. The only examples of allegedly collusive conduct IPPs cite took place more than a decade ago, in 2002. (EP CAC ¶ 119; AD CCC ¶¶ 145-46.) Moreover, the Complaints allege several facts that *undermine* any claim of a conspiracy continuing to today, including:

- That each of the Defendants are or were the subject of criminal investigations in multiple jurisdictions, including the United States, Europe, and Japan, and have been raided and searched by the relevant authorities. (EP CAC ¶ 6; AD CCC ¶ 7.)

- That one of the Defendants has pled guilty to bid rigging FSs, and the other Defendant has pled guilty for similar crimes relating to other automotive parts. (EP CAC ¶¶ 7, 102; AD CCC ¶¶ 8, 156.)

- The plea agreements themselves require continuing cooperation with the United States Department of Justice, under the threat of subsequent criminal prosecution. Plea Agreement ¶ 19, *United States v. Yazaki Corp.*, No. 12-cr-20064, ECF No. 6 (E.D. Mich. Mar. 1, 2012); (AD CCC ¶ 148); Plea Agreement ¶ 11, *United States v. Denso Corp.*, No. 12-cr-20063, ECF No. 9 (E.D. Mich. Mar. 5, 2012) (Ex. K-7).

- That the investigations would have alerted Defendants' customers, such as the major automobile manufacturers, about the conspiracy. *E.g.*, EP CAC ¶¶ 143-45; AD CCC ¶ 190, 193, 195.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21491 Filed 03/11/16 Page 124 of
2:12-cv-00803-MOB-MKM Doc # 56 Filed 09/16/13 Pg 123 of 126 Pg ID 527
127

REDACTED

The very existence of the criminal investigations, guilty pleas, and, in particular, the

Defendants' obligation to continue to cooperate fully and truthfully with the government's

investigation, severely undercuts any ongoing conspiracy claim.  This was recognized by the

Defendants' sentencing judge, who found that the penalties were sufficient to deter the

Defendants from engaging in similar conduct in the future, without any term of probation.  *See,*

*e.g.*, Tr. of Guilty Plea and Sentencing Hr'g 31:17-25, *United States v. Yazaki Corp.*, No. 12-cr-

20064, ECF No. 10 (E.D. Mich. Mar. 1, 2012) ("[T]he size of this fine, and the many

consequences that go even beyond the fine imposed here, I think will be quite sufficient to deter

the company from making this mistake in the future, and will deter others from repeating the

mistake as well.") (Ex. K-8); Tr. of Guilty Plea and Sentencing Hr'g 25:20-25 – 26:1-3, *United*

*States v. DENSO Corp.*, No. 12-cr-20063, ECF No. 12 (E.D. Mich. Mar. 5, 2012) (Ex. K-9).

IPPs have alleged no facts to support their claim for injunctive relief, other than that

Defendants have allegedly violated antitrust laws in the past.  This allegation is insufficient to

survive a motion to dismiss, *O'Shea*, 414 U.S. at 495-96, and falls well short of establishing

"certainly impending" future injury, *Clapper*, 133 S. Ct. at 1147.

## **CONCLUSION**

For all the reasons set forth above, the Court should dismiss the IPPs' Complaints in their

entirety.  Alternatively, the Court should dismiss End Payors' and Automobile Dealers'

individual federal and state claims in accordance with Exhibit A.

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21450 Filed 03/11/16 Page 125 of
2:12-cv-00803-MOB-MKM Doc # 56 Filed 08/16/13 Pg 125 of 128 Pg ID 528
127

REDACTED

Respectfully submitted,

JONES DAY

August 16, 2013     By:     */s/John M. Majoras*
                                    John M. Majoras
                                    Carmen G. McLean
                                    Kristen A. Lejnieks
                                    Tiffany D. Lipscomb-Jackson
                                    JONES DAY
                                    51 Louisiana Ave. N.W.
                                    Washington, D.C. 20001-2113
                                    Telephone (202) 879-3939
                                    Fax (202) 626-1700
                                    jmmajoras@jonesday.com
                                    cgmclean@jonesday.com
                                    kalejnieks@jonesday.com
                                    tdlipscombjackson@jonesday.com

                                    Michelle K. Fischer
                                    Stephen J. Squeri
                                    JONES DAY
                                    North Point
                                    901 Lakeside Avenue
                                    Cleveland, OH 44114
                                    Tel. (216) 586-3939
                                    Fax (216) 579-0212
                                    mfischer@jonesday.com
                                    sjsqueri@jonesday.com

                                    *Attorneys for Defendants Yazaki Corporation and Yazaki North
                                    America, Inc.*

REDACTED

WILMER CUTLER PICKERING HALE AND DORR LLP

August 16, 2013     By:     /s/Steven F. Cherry  (w/consent)
Steven F. Cherry
David P. Donovan
Brian C. Smith
Kurt G. Kastorf
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com
kurt.kastorf @wilmerhale.com

*Attorneys for Defendants DENSO International America, Inc. and DENSO Corporation*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:  (248) 213-2551
steve_zarowny@denso-diam.com

*Attorney for Defendant DENSO International America, Inc.*

Case 2:12-md-02311-SFC-RSW ECF No. 1250-7 PageID.21452 Filed 03/11/16 Page 127 of
127
2:12-cv-00303-MOB-MKM Doc # 56 Filed 08/16/13 Pg 126 of 126 Pg ID 580

REDACTED

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2013, I caused the foregoing **DEFENDANTS'
COLLECTIVE MOTION TO DISMISS THE END PAYORS' CONSOLIDATED
AMENDED CLASS ACTION COMPLAINT AND THE AUTOMOBILE DEALERS'
CONSOLIDATED CLASS COMPLAINT** and **MEMORANDUM IN SUPPORT
THEREOF** to be electronically filed with the Clerk of the Court using the CM/ECF system,
which will send notification of such filing to all counsel of record.  I also provided counsel with
a copy of this filing via email.

*/s/ John M. Majoras*
John M. Majoras
