REDACTED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : : | Master File No. 2:12-md-02311 Honorable Marianne O. Battani Special Master Gene J. Esshaki |
| ALL AUTOMOTIVE PARTS CASES | : : : | ORAL ARGUMENT REQUESTED |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : : | |

**SUPPLEMENTAL DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF
END PAYOR PLAINTIFFS' REPLY IN SUPPORT OF
THE PARTIES' MOTION TO COMPEL DISCOVERY FROM
NONPARTY ORIGINAL EQUIPMENT MANUFACTURERS**

**[REDACTED]**

I, STEVEN N. WILLIAMS, declare as follows:

1. I am an attorney duly licensed to practice in the State of California, and I am admitted to this Court. I am a Partner with the law firm of Cotchett, Pitre & McCarthy, LLP and am Interim Co-Lead Counsel for the End Payor Plaintiffs ("EPPs") in the above-entitled action. I make this Declaration pursuant to 28 U.S.C. § 1746. I submit this Declaration in further support of the Parties' motions to compel[1] and of EPPs' Reply to the Specified Subpoenaed Entities ("SSEs")' oppositions to the Parties' motions to compel. I have personal knowledge of the facts set forth in this Declaration, and, if called upon, I could and would competently testify thereto.

2. Attached hereto as **Exhibit A** is a list of the subpoena requests (in full text) which reflects the compromises made by the Parties and the current position of the OEMs as to each request.

3. Attached hereto as **Exhibit C** is a chart summarizing my knowledge of nonparty discovery in similar indirect purchaser actions in which I or other EPP counsel have represented the plaintiffs and the class.

4. Attached hereto as **Exhibit G** is a true and correct copy of Defendants' Collective Motion to Dismiss the End-Payors' Corrected Consolidated Amended Class Action Complaint and the Automobile Dealers' Consolidated Class Complaint (*Fuel Senders*) at 25, Case No. 2:12-cv-00303, ECF No. 56 (Aug. 16, 2013).

5. Attached hereto as **Exhibit H** is a true and correct copy of the Wire Harness Stipulated Protective Order.

---

[1] This Reply is in further support of the Parties' Motion to Compel Discovery from Nonparty Original Equipment Manufacturers, Master File No. 2:12-cv-02311, ECF No. 1184 (E.D. Mich. Jan. 19, 2016) and Certain Parties' Motion to Compel Discovery from Nonparty Original Equipment Manufacturers, Master File No. 2:12-cv-02311, ECF No. 1216 (E.D. Mich. Jan. 19, 2016).

6. The OEMs have all been explicitly named as direct victims of the conspiracies in the cases brought by the Department of Justice ("DOJ"), and are named in Defendants' guilty pleas with the DOJ and/or in Defendants' proffers.

7. During the meet and confer process, the Parties offered the OEMs several rounds of significant compromises, offering to cut the subpoena down to only the most essential categories of requests. For each round of compromise that was offered, EPPs consulted their economics experts, and worked with them to pare down the requests as much as possible. The significance of the Parties' compromises, and magnitude of the OEMs' refusals is reflected in **Exhibit A**.

8. I have consulted with EPPs' economics experts regarding the methods they may wish to employ for their class certification analysis and reports. EPPs' experts may choose to employ common types of regressions to estimate overcharges and for their pass through studies as is typically used in indirect purchaser antitrust cases. All of the types of regressions and modeling being considered by EPPs' experts use the types of downstream data sought from the OEMs.

9. ███████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████

10. There are a number of areas where the OEMs' data would fill holes and gaps in Defendants' data, including the following deficiencies in Defendants' data: 1) a lack of sufficient data to cover the time periods alleged; 2) a lack of data regarding certain physical characteristics of the auto parts in relation to OEM sourcing decisions; and 3) a lack of product characteristics and vehicle information. OEMs are in possession of evidence that will help address these deficiencies and enhance EPPs' experts' ability to provide an accurate estimate of the initial overcharge to direct purchasers.

11. The "Smaller" OEMs have all been named as first-level victims in the Defendants' guilty pleas with the DOJ or in Defendants' proffers. Fuji Heavy/Subaru was named in at least 11 of Defendants' guilty pleas with the DOJ.

12. Based on my own experience in similar indirect purchaser cases as lead counsel or as a member of the executive committee, and from working closely with economics experts in those cases, I know the types of data and documents sought from the OEMs and their affiliated entities here are routinely sought and produced by companies of similar size and complexity to the SSEs here. In addition, while the OEMs and non-parties in other cases are similar in size and complexity to the OEMs here (*e.g.,* many were large multinational electronics companies, such as Apple, Dell, Hewlett Packard, and Microsoft), there were very few, if any, claims of undue burden or motions to compel in those cases (*see* **Ex. B**).

13. EPPs have consulted with the DOJ which has confirmed that it does not object to production of previously made productions by OEMs to the DOJ other than any summary documents or memos that were specially prepared by the OEMs at the request of DOJ.

14. In addition, see below for an explanation of the types of data and documents sought and produced in similar indirect purchaser actions:

3

15.     *In re Static Random Access Memory (SRAM) Antitrust Litigation ("SRAM")*:
In *SRAM*, I was lead counsel for the direct purchaser plaintiffs and worked closely with lead counsel for the indirect purchaser plaintiffs, Zelle LLP, which is also counsel for EPPs in this case. Approximately 90 no-parties in the distribution chain were served by indirect purchaser plaintiffs in *SRAM*. *SRAM*, Case No. 4:07-md-01819-CW, ECF No. 1375-1 (N.D. Cal. July 27, 2011). Productions from non-parties ran smoothly in *SRAM*, and big multinational corporations as well as smaller retailers, resellers, and distributors, produced responsive information, including transaction level purchase and sales data, and input-by-input and gross cost data. There was only one motion to compel regarding nonparty discovery in *SRAM*. Indirect purchaser plaintiffs brought a motion to compel nonparty, Jabil, to produce downstream data. The motion to compel was granted and the Special Master ordered Jabil to produce "in a format generally available and acceptable to IP Plaintiffs' counsel," the following categories of data and documents: (1) any available transaction level pricing information pertaining to Jabil's previously produced transactional level purchases of SRAM or SRAM-containing components which was purchased from one or more of the named Defendants, including transaction price; transaction type (*i.e.,* purchase, return, or exchange); and any rebate, credits or discounts given; (2) list of products manufactured or assembled by Jabil containing one or more of the named Defendants' SRAM that constitute or include the relevant products, including a product description; product code; and product SKU; (3) Bill of Materials ("BoM") cost data (*i.e.,* input by input cost data) for the SRAM components and/or SRAM-containing components in any products identified as relevant products and the total BoM cost (*i.e.,* gross cost data) for such products over the life of the product on a monthly basis, quarterly basis, or other reasonable time interval; and (4) sales data for the relevant products; "specifically, transactional level sales data

for those products, including invoice number; date of sales transaction; product code; product SKU; geographic indicator of sale (customer address, zip code or State); transaction price; units sold; net dollar unit cost; transaction type (*i.e.,* purchase, return or exchange); and any rebate, credits or discounts given. *See SRAM*, Case No. M:07-cv-01819-CW, ECF No. 967 (N.D. Cal. Mar. 1, 2010). A true and correct copy of this order is attached hereto as **Exhibit B**.

16. ***In re Lithium Ion Batteries Antitrust Litigation ("Batteries"):*** I am one of the co-lead counsel for indirect purchaser plaintiffs in *Batteries*. In *Batteries*, discovery is ongoing. So far, approximately 93 nonparties have been served with subpoenas, including large and small OEMs that make finished products that contain lithium ion batteries, distributor entities, and entities that only provide a specific set of functions for their corporate family. The OEMs subpoenaed include entities such as Apple and Dell – organizations at are that are equivalent in size, value, complexity of operations, and just as interested in the protection of their confidential information as are the OEMs that contest the subpoena here. While there was one motion to compel deposition testimony from a large retailer on its sales and procurement practices, the other 92 entities have been cooperative and production of the following types of data (both aggregated and disaggregated) has occurred: (1) downstream purchase level data (regarding an OEM's purchase from defendants and suppliers); (2) downstream sales level data (regarding sales by OEMs to their customers); and, (3) downstream retail level sales data (regarding retailer sales to end-consumers of products containing lithium ion batteries, such as phones and laptops). In addition, nonparties are producing extensive manufacturing cost data, including input-by-input cost data as well as gross cost data. Thus far, the estimated amount of data received for all nonparties is 2,419.17 GB. Nonparty discovery in *Batteries* is running smoothly with essentially no claims of undue burden or cost concerns, as claimed by the OEMs here.

17.     ***In re Cathode Ray Tube (CRT) Antitrust Litigation ("CRT")****:* I was a member of the executive committee in the direct purchaser action in *CRT*. Zelle LLP, counsel for EPPs in this case, was extensively involved in preparing the class certification motions and reports for the indirect purchaser class in *CRT* and they have been consulted with and provided input for this OEM discovery project and this motion. In *CRT*, approximately 53 nonparties were subpoenaed by indirect purchaser plaintiffs, including manufacturing and sales OEMs, as well as retailers and distributors. For example, in *CRT*, large manufacturing OEMs such as Apple, Dell, IBM, Hewlett Packard, Sanyo, and Sony produced the types of data and documents sought here. Smaller makers were also served and produced the same types of data and documents, such as Acer, Five Rivers, and UTI (*see* **Ex. D**). A number of retailers also were served, including Target, Wal-Mart, Office Depot, Costco, and Circuit City, and they produced responsive data for their level of the distribution chain. *Id.* Likewise, distributors complied with the subpoena and provided the downstream data sought for their level of purchase and sale. *Id.* Those entities produced aggregated and disaggregated purchase and sales data, and gross cost data. In *CRT*, many the same types of data were sought and produced, as sought from OEMs here.

18.     ***In re TFT-LCD (Flat Panel) Antitrust Litigation:*** Zelle LLP, one of the counsel for the EPPs here, was co-lead counsel for the indirect purchaser class in *Flat Panel*. I have consulted with the attorneys at Zelle who worked on the class certification motion and reports in that case, and they have been extensively involved in the OEM subpoena project and in this motion. In *Flat Panel*, the parties subpoenaed approximately 55 nonparties, including over 20 manufacturing OEMs with a range of sizes and functions, including Amazon, Apple, Best Buy, Dell, IBM, and Target (*see* **Ex. E**). The parties received productions from monitor makers, notebook makers, and television makers which included the types of downstream documents and

6

data sought here from OEMs, including transactional level cost and price data for purchases and sales. In *LCD*, only one motion to compel was filed regarding nonparty discovery. Defendant AUO moved to compel Hewlett Packard's production. The Special Master granted the motion concerning all requests that relate to the categories sought from by the Parties from the OEMs here. *See Flat Panel*, Amended Order Granting in Part and Denying in Part AUO's Motion to Enforce Subpoena Directed to Hewlett-Packard Company, Case No.3:07-md-01827-SI, ECF No. 1759 (N.D. Cal. May 19, 2010) (**Ex. F**).

19.     ***In re Optical Disk Drive (ODD) Antitrust Litigation:*** I was on the executive committee for direct purchaser plaintiffs in *ODD*, and Hagens Berman Sobol Shapiro LLP ("HBSS"), one of the counsel for EPPs in this case, is lead counsel for the indirect purchaser class in *ODD*. HBSS has been extensively involved in the OEM discovery project and in the preparation of this motion. In *ODD*, approximately 73 nonparties received subpoenas, including OEMs, distributors, and resellers in the distribution chain. The nonparties produced aggregated and disaggregated transactional purchase and sales data, as well as cost data (both input-by-input data and gross cost data). Additionally, OEMs also produced documents regarding their procurement from defendants and other suppliers, including documents regarding requests for quotation from defendants and suppliers and regarding their bidding and bid selection processes. The amount of data produced from all nonparties is estimated to be 173.91 GB.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of March, 2016.

*Steven N. Williams*
Steven N. Williams

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2016, I caused the foregoing SUPPLEMENTAL DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF END-PAYOR PLAINTIFFS' REPLY IN SUPPORT OF THE PARTIES' MOTION TO COMPEL DISCOVERY FROM NONPARTY ORIGINAL EQUIPMENT MANUFACTURERS to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.


Dated: March 11, 2016                          */s/ Steven N. Williams*
                                               Steven N. Williams