# EXHIBIT 2



T 206.623.7292  F 206.623.0594

Ronnie S. Spiegel
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA 98101
www.hbsslaw.com
**Direct (206) 268-9343**
**ronnie@hbsslaw.com**

October 14, 2015

**VIA EMAIL**

Colin Kass
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, DC 20004-2533

   Re: *In re Automotive Parts Antitrust Litigation*
     *(Master Case No. 2:12-md-02311)*

Dear Colin:

## INTRODUCTION

  I am writing on behalf of the serving parties ("Parties")[1] to follow up on the issues raised by certain subpoena recipients that participated in the summit ("Summit Group") on October 2, 2015.[2] At the summit, the Parties made best efforts to listen to the Summit Group's concerns and to understand the issues the Summit Group raised. As quickly as possible, the Parties have worked together to come up with a proposed path forward for each issue, or to give the Summit Group our straightforward position, so that we can all move forward toward cooperation or toward quick identification of disputes for the Special Master to resolve. Please see our proposals and responses below.[3]

  Please note that not all Parties join in all requests discussed below. The Defendants specifically object to the production of any documents in response to Request No. 31, as it seeks documents that would violate the settlement-communications privilege recognized in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) and *Allen Cnty. v. Reilly Indus.*, 197 F.R.D. 352, 354 (N.D. Ohio 2000). Plaintiffs disagree with Defendants' assertion of privilege based on *State v. Little River Band of Ottowa Indians*, 2007 WL 851282, at *2 (W.D. Mich. 2007), which makes clear that these documents are not privileged.

---

 [1] The Parties include: End Payor Plaintiffs; Auto Dealer Plaintiffs; Truck and Equipment Dealer Plaintiffs; Public Entity Plaintiffs; and, Defendants in all actions.

 [2] Please provide the Parties with a complete list of the entities and individuals that participated in the summit or that otherwise join in the group.

 [3] The Parties tried to address all items as we understood them from the summit, but please let us know if there are any we missed, and we will do our best to provide you with a quick response.

Parties' Ltr. to Colin Kass
October 14, 2015
Page 2

**PROPOSED SOLUTIONS AND RESPONSES**

1. **Proposal regarding entities that have no responsive information**

The Summit Group asked the Parties to clarify our position on subpoenas served on entities that have no responsive information. As we have been relaying through individual meet and confer with subpoena recipients over the past few months, we do not see any reason to pursue subpoenas for entities that have no responsive information. We see this category as including entities that truly possess no responsive information, such as entities where another member of a corporate family has the information we seek, or where none of the requests applies to the particular entity served.

For entities that fit this category, the Parties have outlined the following process:

We ask that counsel provide us with a short explanation (one or two short paragraphs) of the entity's function and why it does not have any responsive information. We ask that counsel also include a brochure or other summary document regarding the entity, to help us quickly confirm whether the entity fits this category. If the Parties agree that the entity has no responsive information and fits this category, we ask that counsel submit a short, formal written response. The subpoenaed entity would not need to respond or object to any of the subpoena requests, and the entity would reserve all objections. The requests would be held in abeyance, with the reservation that should any further information on this entity ever come to light or information submitted prove untrue, the Parties would have an opportunity to revisit the subpoena.

2. **Proposal regarding entities that only have a small amount of sales in the United States**

At this time, no subpoenas will be withdrawn on the basis of volume of sales in the United States, provided the subpoena recipient has responsive information. However, the Parties are mindful of striking a balance between discovery of highly relevant information and minimizing burden for third parties in this process. Accordingly, the Parties have provided a narrowed list of requests, to be tailored on an individual basis with each entity that wishes to further negotiate based on its small volume of sales. In order to facilitate meaningful conversations, the Parties request that those entities that wish to further negotiate based on sales volume provide documentation establishing their vehicle sales volume in the United States, regardless of place of manufacture or assembly.

For the smaller entities, the Parties agree to the following narrowed list of requests: Request Nos. 1, 3, 4, 5, 8, 12, 13, 14 (in part), 15 (in part), 16 (in part) 21 (in part), 22, 23 (in part), 27, 28 (in part), and 33. For automobiles, "smaller" is defined as those entities whose United States annual sales volume is less than 10,000 vehicles. For trucks and equipment, the Truck and Equipment Dealer Plaintiffs are prepared to discuss appropriate criteria with the truck and equipment entities.

Parties' Ltr. to Colin Kass
October 14, 2015
Page 3

### 3. Proposal to narrow the time period

The Summit Group expressed concern over the breadth of the time period stated in the subpoena. As the Parties explained on the summit call, the subpoena was not meant to impose a time period of 1992 to present for each part action. Rather, to accomplish the Court's order of serving one, comprehensive subpoena, we needed to identify a date range inclusive of all actions. The Parties have always had every intention of sitting down with subpoena recipients to clarify and tailor the time period to each part action.

The Parties can agree to narrow the time period to the conspiracy period alleged in each particular action, as well as a "before and after" period in each action. The before period would reach back two years prior to the alleged conspiracy period start date in each action. In addition, for the before period, the Parties can agree to limit the requests to production of transactional data. The after period for requested documents should extend to the date the Parties and Summit Group members complete their negotiations on the subpoena. The after period for requested data should extend to the date when subpoenaed entities perform their data extraction. Please see Attachment A to this letter for case-by-case list of the alleged conspiracy periods.

### 4. Proposal to narrow requests for certain types of entities

From our conversation during the summit, the Parties' understanding is that for certain types of entities, such as the types of entities listed in the chart below, the Summit Group believes that its members should not have to respond to the subpoenas, or that subpoenas should be withdrawn.

The Parties see these entities in a different category than those entities that truly have no responsive information for any request (as discussed in Section 1 of this letter). However, we understand that for certain types of entities, a more limited number of requests will apply, and the Parties can agree to narrow requests for each type of entity as per the chart below.

In addition, with respect to the categories below, such entities would only need to respond to the narrowed list of requests if the information sought cannot be found at any of the main entities subpoenaed in the same corporate family (such as the manufacturing, sales, and distributor entities). Regarding the finance and credit entities, we can agree to further narrow these requests for transactional data to only summary transactional data and, for non-transactional data, to summary analyses, reports, and memos, and not focus on individual transactional documents.

| Type of Entity | Narrowed List of Requests |
| --- | --- |
| Finance and credit | Request Nos. 4(a)(3)(e), 4(a)(4), 4(a)(6), 4(b)(2)(d), 4(c), 4(c)(2)(e), 4(c)(2)(f), 4(d), 4(i), 4(k), 7, 9 (limited to summary transactional data or summary documents only), 21, 29, 34, and 37 (applies only to Honda and Nissan) |

Parties' Ltr. to Colin Kass
October 14, 2015
Page 4

| Type of Entity | Narrowed List of Requests |
|---|---|
| Insurance | Request Nos. 4(b)(2)(e), 4(d), 4(k), and 9 (limited to summary transactional data or summary documents only) |
| Design | Request Nos. 1(g)(6)-(8), 1(g)(17), 14(a), 27, 32, 33, 35, and 37 (applies only to Honda and Nissan) |
| Research & Development | Request Nos. 1(g)(6)-(9), 1(g)(17), 1(k), 1(j), 1(l), 4(h), 5, 8, 12 13, 14, 15, 16, 17, 23(3)(a), 24, 26, 27, 28, 33, 35, and 36 |
| Banking and Capital | Request Nos. 9 (limited to summary transactional data or summary documents only), 10, 11, 13(a-b), 14, 16, 17, 18, 19, 21, 33, 34, and 37 (applies only to Honda and Nissan) |

**5.   Proposal for prioritization of requests for main entities**

With respect to the main entities that are involved in procurement, manufacturing, assembly, sales, marketing, pricing, and distribution, the Parties are willing to prioritize the subpoena requests. We ask that the "First Priority Requests" identified below be sequenced for initial production. We understand that there may be requests which focus heavily on transactional data and, therefore, may be easier to produce than non-transactional data requests. Each entity is in the best position to identify which categories may be transactional data or otherwise, and we hope to have individual discussions with each entity to better understand any burdens on production of non-transactional data. Here is the sequenced list:

| Category | Request Nos. |
|---|---|
| First Priority Requests | Request Nos. 1, 2, 3, 4, 5, 8, 10, 12, 13, 14, 15, 16, 17, 21, 22, 23, 24, 26, 27, 28, 30, 31, 32, 33, 34, and 36 |
| Second Priority Requests | Request Nos. 6, 7, 9, 11, 18, 19, 20, 25, 29, 35, and 37 |

In addition, to the extent it would be less burdensome, the Parties can also agree to frontload production for cases that will come up first for class certification briefing, including wire harnesses, anti-vibration rubber parts, and bearings, all with class certification briefing dates in July and August 2016. The Parties brought this up at the summit and met with resistance to this idea by the Summit Group. As the Parties expressed during the summit, to the extent any entity keeps data or documents separately by part, and this would lessen the burden of responding, the offer still stands.

Parties' Ltr. to Colin Kass
October 14, 2015
Page 5

**6.     Response regarding costs**

It is our understanding that the Summit Group is requesting that the Parties agree to pay all costs (or agree to share a large percentage of the costs) ahead of any conversations with the Parties regarding the types of information that any entity may have (or not have), whether that information is readily accessible or already gathered, and without any individual discussion of what burden any particular entity may face.

As the Parties expressed during the summit, we are not opposed to having a conversation with any entity on costs or to discuss where cost-sharing may be appropriate. However, we believe the issue of costs is particular to each entity, and can only occur after the Parties have an opportunity to understand what each particular entity may or may not have, and any burden it alone may face.

We do not believe it is reasonable for any entity to refuse to provide written responses or objections or to refuse to engage with us in conversation based on a demand for up-front costs. We request that each entity confirm with us the types of information it may already have gathered and to what extent, such as productions previously made to the DOJ, or information gathered for other purposes, such as settlement negotiations.

**7.     Response regarding whether the Parties are willing to limit the requests based on location of manufacture or assembly**

Plaintiffs' allegations center on claims of a worldwide conspiracy, bid rigging, and allocation of markets in the various markets for auto parts, that impacted prices paid for those parts, and that were passed on to purchasers in the prices that they paid for automobiles and other vehicles. Plaintiffs' claims are not limited to automobiles and vehicles manufactured or assembled in the United States. Defendants take an opposite position, and will need to defend against those claims. Under the circumstances, the Parties believe the information and documents requested are relevant to our claims and anticipated defenses within the meaning of Rule 26(b)(1) of the Federal Rules of Civil Procedure, and the Parties cannot agree to limit discovery sought based on location of manufacture or assembly.

We understand that not every entity will have responsive information to all requests or possess data and documents from the foreign entities within their corporate family. In that regard, we are willing to discuss tailoring the subpoena with each entity, based on the types of information each entity may possess (in line with each particular entity's position and role in the overall corporate structure).

**8.     Status of replacement part claims**

We are still trying to confirm the status of whether any party is seeking data and documents regarding replacement parts. Certain public entity plaintiffs have asserted replacement part claims for wire harness products. We will provide this information as soon as it can be confirmed.

Parties' Ltr. to Colin Kass
October 14, 2015
Page 6

## **MOVING FORWARD**

We hope that the each member of the Summit Group will consider the proposals in this letter, and that each will cooperate with us in moving forward with a schedule for providing written responses and objections, and for meaningful meet and confer.  We ask that each entity in the Summit Group confirm if it is willing to work with us in this regard.  To the extent that any entity in the Summit Group will continue to put off written responses and objections and does not agree to move forward, we ask that this be confirmed as well.

Please let us know your response as quickly as possible, so that we may know how to move forward and/or can set a plan for briefing any disputed issues with the Special Master.  Please feel free to contact us with any questions or if we can provide any further information.

                                                      Very truly yours,

                                                      /s/ *Ronnie S. Spiegel*

                                                      Ronnie S. Spiegel

**ATTACHMENT A**

| Case | Alleged conspiracy period |
|---|---|
| Air Conditioning Systems | 5/1/1999-until conspiracy ceased |
| Alternators & Starters (both products) | 6/1/2000- until conspiracy ceased |
| Anti-Vibration Rubber Parts (AVRP) | 3/1/1996- until conspiracy ceased |
| ATF Warmers | 11/1/2002- until conspiracy ceased |
| Automotive Hoses | 5/1/2003- until conspiracy ceased |
| Bearings | 1/1/2000- until conspiracy ceased |
| Brake Hoses | 2/1/2004- until conspiracy ceased |
| Constant Velocity Joint Boot | 1/1/2006- until conspiracy ceased |
| Electric Power Steering Assemblies (EPSA) | 1/1/2000- until conspiracy ceased |
| Fan Motors | 1/1/2000- until conspiracy ceased |
| Fuel Injection Systems/Air Flow Meters/Electronic Throttle Bodies (all three products) | 1/1/2000- until conspiracy ceased |
| Fuel Senders | 1/1/2001-until conspiracy ceased |
| HD Ballasts | 7/1/1998- until conspiracy ceased |
| Heater Control Panels | 1/1/2000-until conspiracy ceased |
| Ignition Coils | 1/1/2000- until conspiracy ceased |
| Instrument Panel Clusters | 1/1/2001- until conspiracy ceased |
| Inverters | 1/1/2000- until conspiracy ceased |
| Lamps | 7/1/2002- until conspiracy ceased |
| Motor Generators | 1/1/2000- until conspiracy ceased |
| Occupant Safety Systems (OSS) | 1/1/2003- until conspiracy ceased |
| Power Window Motors | 1/1/2000- until conspiracy ceased |
| Radiators | 1/1/2000- until conspiracy ceased |
| Spark Plugs | 1/1/2000- until conspiracy ceased |
| Steering Angle Sensors | 9/1/2000- until conspiracy ceased |
| Switches | 1/1/2000- until conspiracy ceased |
| Valve Timing Control Devices | 1/1/2000- until conspiracy ceased |
| Windshield Washers | 1/1/2000- until conspiracy ceased |
| Windshield Wipers | 1/1/2000- until conspiracy ceased |
| Wire Harnesses | 1/1/1999- until conspiracy ceased |