# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re:  **AUTOMOTIVE PARTS** **ANTITRUST LITIGATION** | Master File No.  12-md-02311 Hon. Marianne O.Battani Special Master Gene J. Esshaki |
| _____/ | |
| In Re:  **All Auto Parts Cases** | 2:12-MD-02311-MOB-MKM |
| _____/ | |
| **THIS DOCUMENT RELATES TO:** **ALL AUTO PARTS CASES** | **Oral Argument Requested** |
| _____/ | |

LARRY S. GANGNES
HEIDI BRADLEY
U. S. Bank Centre
1420 Fifth Avenue, Suite 4200
P. O. Box 91302
Seattle, WA  98111-9402
Telephone:  (206)-223-7000
Email:  gangnesl@lanepowell.com
_____/

CRAIG D. BACHMAN
KENNETH R. DAVID II
DARIN M. SANDS
MASAYUKI YAMAGUCHI
PETER D. HAWKES
MODA Tower
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
Telephone:  (503)778-2100
bachman@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com
hawkesp@lanepowell.com
Counsel for Furukawa/

JOSEPH E. PAPELIAN (P26582)
PAPELIAN LAW OFFICE PLLC
6 Woodward Heights, Suite B
Pleasant Ridge, MI  48069
Telephone:  (248)813-2535
Email:  joe@papelianlaw.com
Counsel For Delphi/

## MOTION OF NON-PARTY DELPHI AUTOMOTIVE SYSTEMS, LLC FOR PROTECTIVE ORDER AND REIMBURSEMENT OF COSTS FOR PRODUCTION

Non-Party, Delphi Automotive Systems, LLC, pursuant to Fed. R. Civ. P. 26(c) and 45, moves the court for a Protective Order and for an Order awarding costs regarding the subpoena to produce documents, information, or objects, or for inspection of premises in a civil action filed by Defendants, Furukawa Electric Company, Ltd. and American Furukawa, Inc. for the reasons stated in the attached supporting brief.

As required by Local Rule 7.1(a), counsel for Delphi sought concurrence in the relief sought from counsel for Furukawa on March 10 and 13, 2016 (via email), but concurrence was not received.

<div style="margin-left:40%">

Respectfully submitted:
PAPELIAN LAW OFFICE PLLC
/s/ Joseph E. Papelian
Joseph E. Papelian (P26582)
6 Woodward Heights, Suite B
Pleasant Ridge, MI  48069
248-797-6938
joe@papelianlaw.com
*Counsel for Defendant Delphi Automotive
Systems, LLC*

</div>

March 14, 2016

2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In Re:  **AUTOMOTIVE PARTS
ANTITRUST LITIGATION**

Master File No.  12-md-02311
Hon. Marianne O. Battani
Special Master Gene J. Esshaki

_____/

In Re:  **All Auto Parts Cases**

2:12-MD-02311-MOB-MKM

_____/

**THIS DOCUMENT RELATES TO:
ALL AUTO PARTS CASES**

**Oral Argument Requested**

_____/

LARRY S. GANGNES
HEIDI BRADLEY
U. S. Bank Centre
1420 Fifth Avenue, Suite 4200
P. O. Box 91302
Seattle, WA  98111-9402
Telephone:  (206)-223-7000
Email:  gangnesl@lanepowell.com

_____/

CRAIG D. BACHMAN
KENNETH R. DAVID II
DARIN M. SANDS
MASAYUKI YAMAGUCHI
PETER D. HAWKES
MODA Tower
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
Telephone:  (503)778-2100
bachman@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com
hawkesp@lanepowell.com
Counsel for Furukawa/

JOSEPH E. PAPELIAN (P26582)
PAPELIAN LAW OFFICE PLLC
6 Woodward Heights, Suite B
Pleasant Ridge, MI  48069
Telephone:  (248)813-2535
Email:  joe@papelianlaw.com
Counsel for Delphi/

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF NON-PARTY DELPHI AUTOMOTIVE SYSTEMS, LLC FOR PROTECTIVE ORDER AND REIMBURSEMENT OF COSTS FOR PRODUCTION

### CONCISE STATEMENT OF ISSUES PRESENTED

A.  Whether the subpoena issued to non-party, Delphi Automotive Systems, LLC, should be quashed or modified because the requests are overly broad and unduly burdensome, seek highly confidential and privileged information regarding Delphi's past, present and future business, are extremely burdensome and expensive to collect, shall result in significant financial harm to Delphi, and are not reasonable calculated to lead to the discovery of admissible evidence.

B.  Whether Furukawa Electric Company, Ltd. and American Furukawa, Inc. should be responsible for the payment of the production of any such documents because of the great expense of production due to the burden of time required to search, review, inspect, and redact the production of documents from Delphi Automotive Systems, LLC, a non-party to this litigation.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases:** Page

Atlantech, Inc. v Nexel Def. & Aerospace, Inc., 2011 U.S. Dist.    16
LEXIS 55214 at 4

American Electric Power Co., Inc. v U.S., 191 F.R.D. 132, 136    17
(S.D. Ohio 1999)

Surles Ex Rel. Johnson v Greyhound Lines, Inc. 474 Fed 3rd 288,    18
305 (6th Cir. 2007)

In Universal Delaware, Inc. v Comidata Network, Inc., 2001 U.S.    18
Dist. LEXIS 28963 at 3

In Laborers Pension Trust Fund-Detroit & Vicinity v CRS Poured    20
Concrete Walls, 2006 U.S. Dist. LEXIS 92781

American Standard, Inc. v Pzifer, Inc., 828 F.2nd 734, 741 (Fed. Cir.    20
1987

Coke Cola Bottling Co., v Coke Cola Co., 107 F.R.D. 288, 293, 299    20
(D.Del. 1985)

Bogosian v Woloohojian Realty Corp., 323 F.3rd 55, 66 (1st Cir. 2003)    20

Recycled Paper Greetings, Inc. v Davis, 2008 WL 440458 (N.D. Ohio    21
2008)

Guy Chem. Co. v Romaco AG, 243 F.R.D. 310 (N.D. Indiana 2007)    23


**Court Rules**

Fed.R.Civ.Pro. 45(d)(3)    12

Fed.R.Civ.Pro. 45(d)(3)(B)(i)    12

Fed.R.Civ.Pro. 45(d)(1)    13

Fed.R.Civ.Pro. 26(b)(1)    13

Fed.R.Civ.Pro. 45(c)(3)(A)(iv)    18

Fed.R.Civ.Pro. 26(b)(2)(C)(iii)    18

## I.  INTRODUCTION

Furukawa has criminally admitted its involvement in price fixing wire harnesses.  Yet it has the temerity to issue a harassing and patently unreasonable subpoena to Delphi – a competitor and non-party – seeking a host of highly confidential business information.  Delphi has spent substantial time over many months with all parties hoping to narrow the scope of their requests while safeguarding its proprietary information.  Delphi was successful in reaching an agreement with Fujikura, but inexplicably not with Furukawa.  It is noteworthy that Furukawa is the **only** party that has issued this subpoena; the plaintiffs are conspicuously absent.  As explained below, the Court should quash the subpoena.

## II.  STATEMENT OF FACTS

### A.  DOJ Investigation and Civil Cases

Delphi first became aware of the criminal investigation by the Antitrust Division of the U.S. Department of Justice (DOJ) in May 2010 upon receipt of a Grand Jury subpoena for wire harness documents.  Delphi made six document productions to the DOJ and, at Delphi's request, in May 2011 met with the DOJ. As a result of that meeting, the DOJ directed Delphi to suspend any further document production and, significantly, confirmed what Delphi had been advocating all along; that is, it was not involved in a price-fixing conspiracy (Exhibit A).

In September 2011, the DOJ announced the first of several guilty pleas, including the guilty plea of Furukawa and three of its executives (Exhibit B). Soon thereafter a flurry of class action cases were filed in various federal district courts naming various wire harness suppliers. The cases were consolidated and transferred to this Court in February 2012. Delphi was named in many of these cases and was included in the consolidated amended complaints that were filed on May 14, 2012.

## B. Delphi Reaches Agreement with Plaintiffs

As it did with the DOJ, in May 2012, Delphi met with selected lead plaintiffs' counsel (Lead Plaintiffs), explained that Delphi was not involved in a price fixing conspiracy, and urged them to dismiss Delphi. Lead Plaintiffs agreed. Delphi and Lead Plaintiffs entered into an agreement where Delphi agreed to provide a copy of the documents it had provided to the DOJ and other background information. Delphi also agreed to provide Lead Plaintiffs with documents related to a joint venture between Old Delphi and Furukawa.1 On June 14, 2012, Lead Plaintiffs filed Rule 41 Notices of Dismissal (Exhibit C).

---

1 Delphi was never part of the [Old] Delphi/Furukawa joint venture. The joint venture was one of the Old Delphi entities that filed for Chapter 11 bankruptcy in October 2005, and emerged from Chapter 11 bankruptcy on October 6, 2009 as a subsidiary of reorganized Old Delphi. It was renamed DPH Furukawa Wiring Systems LLC. DPH Furukawa's bankruptcy case closed on December 20, 2010 and the joint venture was dissolved on January 24, 2011. Delphi was formed in 2009 and purchased certain assets from Old Delphi; it was never part of a joint venture with Furukawa.

Delphi has met the letter and spirit of the agreement with Lead Plaintiffs.  In October 2012, Delphi provided Lead Plaintiffs with a copy of the documents it had produced to the DOJ.  In July 2013, Lead Plaintiffs met with Delphi for over eight hours at Delphi's Troy Offices.  At that meeting, Delphi provided an in-depth presentation and made key Delphi employees available to respond to Lead Plaintiffs' questions.

### C. Delphi Receives Informal Document Requests and Begins Negotiations with Furukawa and Lead Plaintiffs

In April 2014, Delphi received a broad informal document request from counsel for Furukawa.  Delphi and Furukawa participated in several calls to discuss the requests, and in May 2014 Delphi voluntarily provided Furukawa with a copy of the documents it had produced to the DOJ.  In July 2014, Delphi was contacted by Lead Plaintiffs noting they were communicating with defense counsel in coordinating discovery they would be seeking from Delphi.

There were many calls with Furukawa and Lead Plaintiffs over the next several months in an attempt to better define and limit the requests.  Key problems included the very broad scope and the ever-changing breadth of the requests for highly confidential pricing information, and notably a complete unwillingness to reimburse Delphi for its costs associated with any document collection efforts.

In February 2015, hoping to better direct the scope of document requests and to help educate Furukawa and Lead Plaintiffs regarding Delphi's disciplined and

robust internal pricing process – called Delphi Pricing Review Group (DPRG) –

Delphi again hosted a meeting at Delphi's Troy Offices.  This meeting also

included counsel for Furukawa.  At this meeting, Delphi had one of its high-

ranking Wire Harness Executives provide an in-depth presentation regarding the

DPRG.  The Executive also answered questions from Furukawa and Lead

Plaintiffs.

Surprisingly, after this meeting Delphi had no further contact from the

parties until June 1, 2015, when Lead Plaintiffs issued a slightly revised set of

document requests (Exhibit D).  On June 8, 2015, Furukawa emailed Delphi and

Lead Plaintiffs confirming they had no additional discovery requests (Exhibit E).

Also in June, Delphi received a request from counsel representing Fujikura

Ltd. and Fujikura Automotive America LLC (Fujikura) for documents relating to a

specific project.  Because Fujikura's request was reasonable and sufficiently

limited in scope and breadth, Delphi was able to collect, review, and produce

documents to Fujikura's counsel in early 2016.  Significantly, Fujikura appreciated

Delphi's position as a non-party and agreed to pay the costs associated with

Delphi's document collection efforts.

From June 2015 through February 2016, Delphi continued to communicate

with Furukawa and Lead Plaintiffs hoping to reach an agreement regarding

limitation and costs.  Significantly, in early 2016, Lead Plaintiffs stopped

participating in the conferences at which time Furukawa was the only party

seeking discovery from Delphi. It is the only party that has issued this subpoena.

### D. Due to Lack of Progress in Negotiations, Delphi Offers to Provide Significant Transactional Data

Delphi understood that transactional data was of significant value to

Furukawa, presumably because it might assist in damage calculations (but

surprisingly Furukawa never stated why it wanted Delphi's documents). For that

reason, in February 2016, after almost two years of negotiations and numerous

requests for confirmation for reimbursement of Delphi's costs, Delphi offered a

reasonable compromise; namely, to provide certain transactional data. Delphi sent

an email to Furukawa, accepting its recommendation that Ben Zenick of Zencos

Consulting review the 2006-2014 transactional data as it related to Delphi's

interpretation of the definition of "wire harnesses" (Exhibit F). This meant,

however, that Delphi would extract the data and provide it to Zencos for review –

not Zencos or any other third party rummaging around Delphi's files. Moreover, a

Delphi representative would be available to Mr. Zenick for guidance and questions

about the data, at $75 per hour to be paid by Furukawa.

### E. Furukawa Rejects Delphi's Proposal and Issues Subpoena

Furukawa rejected this proposal. Instead, it served the present subpoena

seeking any and all information regarding wire harness products, including all

transactional data concerning each sale of wire harness products, monthly part

10

number sales and standard cost report reports for the sale of wire harness products,

the reference codes for all documentation, DPRG packages of the actual proposed

manufacturing and/or sale of wire harness products, a power-point presentation,

documents concerning purchases of wire harness products to nine different

companies, Delphi's five-year revenue plans for the sale of wire harness products,

the purchase orders for the sale of wire harness products, documents regarding

Delphi pricing policies and training instructions provided to employees regarding

bidding and setting prices submitted to OEMs and other purchasers and potential

purchasers, and a list of custodians of the documents produced to the DOJ (Exhibit

G).

Furukawa's subpoena flatly ignores the considerable efforts Delphi has

expended over the last two years hoping to narrow the document requests.  Instead,

Furukawa seeks information regarding **all** aspects of Delphi's wire harness

business – a competitor and non-party.  Its subpoena is virtually limitless.  Further,

some of the requests seek information Delphi has indicated does not exist or would

be outside of its control to obtain (Exhibit J).

Also troubling is Furukawa's expansive definition of wire harness products

as "automotive wire harnesses used in Automobiles, and the following components

of such wire harnesses or use of such wire harnesses:  automotive electrical wiring,

automotive wiring connectors, automotive wiring terminals, cable bonds,

electronic control units ("ECUs"), fuse boxes, high voltage wiring, function blocks, lead wire assemblies, power distributors, relay boxes, and the speed sensor wire assemblies" (Exhibit G at 10). On many occasions, Delphi has tried to limit the definition of wire harnesses to a more relevant, manageable designation.

The requested information is voluminous and extremely confidential.2 It is the road map of how Delphi conducts its entire wire harness business (*see* Affidavit of Paul Falete, Exhibit J).

### III. ARGUMENT

This motion is brought pursuant to Rule 45 of the Federal Rules of Civil Procedure.

Fed.R.Civ.Pro. 45(d)(3)(B)(i) states that a non-party may move the court to quash or modify a subpoena where the subpoena fails to allow reasonable time to

---

2 While Furukawa has offered to keep Delphi proprietary information confidential pursuant to a protective order (Exhibit H), Delphi has good reason to question the sincerity of Furukawa's pledge. In 2004, Delphi Saginaw Steering, which was part of Old Delphi, experienced a very significant warranty claim from one of its OEM customers because of an unauthorized change to a sensor supplied by Furukawa Electric North America, APD, Inc. Old Delphi settled the claim with the OEM, and in 2004 sued Furukawa in Saginaw County Circuit Court. The complaint alleged Furukawa made a change to a sensor notwithstanding Old Delphi **twice** directing Furukawa not to do so. In 2008, Furukawa settled the claim (without admission) for over $16M (Exhibit I). Moreover, Delphi had concerns about Furukawa's involvement in price fixing of wire harnesses months **before** it knew about the DOJ investigation. Attached to Delphi's May 5, 2011 letter to the DOJ (Exhibit A) is a document Delphi counsel received from a Delphi Wire Harness executive during a meeting in March 2010 about concerns of price collusion involving Yazaki, Sumitomo and Furukawa. The document is titled "*Unfair Trade Practices by Yazaki, Sumitomo and Furukawa.*"

comply, requires disclosure of privileged or other protected matter, or subjects a person to undue burden. The rule further states that the court may quash or modify the subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information. Fed.R.Civ.Pro. 45(d)(3)(b)(i).

Fed.R.Civ.Pro. 45(d)(1) states that a party or attorney who is responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include loss earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

A subpoena issued under Fed.R.Civ.Pro. 45 is governed by Fed.R.Civ.Pro. 26(b)(1) as to the scope of discovery. The provision states:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Courts have noted that the parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes. Rule 26(b)(2)(C) states that the court must limit the

extended discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

## A. The Subpoena Issued To Non-Party Delphi Should Be Quashed Or Modified.

Furukawa and Delphi have negotiated over two years about the scope of documents to be produced. This was an on and off situation in that Delphi would be contacted by Furukawa (or one of the other parties who conspicuously have not joined in the subpoena) and then silence for months. When Delphi thought an agreement was close in limiting the discovery, Furukawa retreated back to the earlier overly-expansive view. Moreover, Furukawa balked about agreeing to reimburse Delphi for the considerable costs associated with the document production, and amazingly never explained why it needed Delphi's documents.

In February 2016, Delphi offered to produce certain North America transactional data and allow it to be reviewed by a third party chosen by Furukawa and approved by Delphi, **provided** Furukawa agreed to reimburse Delphi (Exhibit F). Furukawa rejected this offer in favor of serving the subpoena seeking the extensive information it originally sought two years ago.

## 1. The Requests Are Overly Broad And Unduly Burdensome.

Furukawa has made ten extensive requests for documents (Exhibit G). Furukawa has requested all transactional data concerning each sale of a wire

14

harness product, along with ten subheadings to the request that broadly seek every conceivable aspect of Delphi's wire harness business.  There are virtually no limits to the request.

Requests 1, 2, 3, 4, 6, 7, 8, and 9 seek any and all information regarding wire harness products which the subpoena broadly defines as any and all "automotive wire harnesses used in automobiles, and the following components of such wire harnesses are used with such wire harnesses:  automotive electrical wiring, automotive wire connectors, automotive wiring terminals, cable bonds, electronic control units ("ACUs"), fuse boxes, high voltage wiring, junction blocks, lead wire assemblies, power distributors, relay boxes, and speed sensor wire assemblies" (Exhibit G at 10).

These requests are directed not only to Delphi, but to its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organizational entity that is or was subject to its management, direction, or control, together with its and their present and former directors, officers, employees, agents, representatives, or any person acting or purporting to act on its behalf (Exhibit G at 10-11).  It also includes information over which it has no control (Exhibit J).

These requests seek to discover Delphi's management, labor, tooling, overhead, energy, materials, sales and marketing, freight, and research and

development of the product.  In short, Furukawa wishes to know everything about

its competitor, Delphi, broadly claiming it will "assist in their defense of Plaintiffs'

claims," but patently lacking further specificity.

To request this vast amount of documents from a non-party would likely

involve hundreds of thousands of documents involving countless review hours

(Exhibit J).   Plainly this is a huge burden and not proportional to the litigation.

Fed.R.Civ.Pro. 45(d)(3)(A)(iv).  Atlantech, Inc. v Nexel Def. & Aerospace, Inc.,

2011 U.S. Dist. LEXIS 55214, (E.D. Mich. 2011) at 4.

### 2.  The Request Seek Delphi's Highly Confidential And Privileged Information Regarding Its Wire Harness Business And Delphi Has Received No Sufficient Reason For The Request.

Significantly, Furukawa has provided no reason for seeking the documents

other than to broadly claim it will assist in its defense.  Presumably Furukawa

wants this information to show the impact of its price-fixing activities was

minimal; **but Delphi was not involved in these activities**.

Furukawa's subpoena seeks **all** transactional data concerning each sale of

the wire harness product as extensively defined in the subpoena, including ten

subparts of detailed data.  It also seeks monthly summary sales reports, as well as

the underlying data for the transactional data and monthly summary sales reports.

Among other things, the subpoena also requests  all documents prepared by

Delphi's DPRG, Delphi's five-year review plans, purchase orders, pricing policies,

documents related to Delphi's delegation of authority policy, training materials

regarding antitrust law compliance, and its code of conduct.  The relevant time

period identified in the subpoena is January 1, 1998 through December 31, 2015.

Delphi did not exist until October 2009

Of importance is the fact that Delphi is a non-party to this litigation.  The

status of a person as a non-party is a factor that weighs against disclosure.

American Electric Power Co., Inc. v U. S., 191 F.R.D. 132, 136 (S.D. Ohio 1999).

Furukawa should seek this information through its extensive discovery between the

named parties in the case.  It has failed to show why this information is needed

from Delphi.  Instead, these broad requests are now directed to a competitor and a

non-party.[3]

A protective order will not diminish the fact that highly confidential Delphi

information will be provided to its competitors with potential financial harm to

Delphi.  This is especially troubling in light of Delphi's past experience with

Furukawa (*see* footnote # 2).

The Federal Rules of Civil Procedure guide this court in determining the

appropriate scope of the records subpoena.  Fed.R.Civ.Pro. 45(d)(1) provides that a

party or attorney responsible for issuing and serving a subpoena must take

---

[3] In fact, Delphi believes it is also victim of the actions alleged in the Consolidated
Amended Complaints.

reasonable steps to avoid imposing an undue burden or expense. In this case, Furukawa is demanding Delphi expend an incredible amount of time to search, obtain, and review hundreds of thousands of documents that would result from the subpoena (Exhibit J). Delphi has offered a reasonable alternative to provide certain transactional data (Exhibit F), which Furukawa has rejected.

The court should quash or modify a subpoena that subjects a person to undue burden. Fed.R.Civ.Pro. 45(c)(3)(A)(iv). District Courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce. In considering whether the discovery sought is unduly burdensome, the court considers whether the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the party's resources, and the importance of the discovery in resolving the issues. Fed.R.Civ.Pro. 26(b)(2)(C)(iii); Surles Ex Rel. Johnson v Greyhound Lines, Inc. 474 Fed 3rd 288, 305 (6th Cir. 2007).

Furukawa's subpoena seeks Delphi's confidential commercial information. In Universal Delaware, Inc. v Comidata Network, Inc. 2011 U.S. Dist. LEXIS 28963 (M.D. Tenn. 2011) at 3, the court stated:

> In determining whether request information is a trade secret or otherwise confidential within the meaning of Rules 26 and 45, a court may consider if the request seeks the" 'type[ ]of information that courts have generally viewed as trade secrets or confidential information,' such as product formulas, marketing plans, or information relating to marketing decisions." Allen v Howmedica Leibinger, Inc. 190 F.R.D. 518, 526

(W.D.Tenn.1999) (quoting, <u>American Std., Inc. v. Pfizer, Inc.,</u> 828 F.2d 734, 740 (Fed.Cir.1987)). In this regard Tennessee courts have indicated that " 'a trade secret may consist of any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage [11] over competitors who do not use it.' "id. (quoting, <u>Hickory Specialties, Inc. v. B & L. Lab., Inc.</u> 592 S.W.2d 583, 586 (Tenn.Ct.App.1979)). In addition, a court may consider such things as the extent to which the information is known both inside and outside the business; the precautions taken to guard the secrecy of the information; the value of the information; and the amount of time and expense it would take for others to acquire and duplicate the information. <u>See Deegan v Strategic Azimuth, LLC,</u> 768 F. Supp. 2d 107, 2011 WL 778407 at *3 (D.D.C. 2011); <u>Johnson Serv. Group, Inc. v. Olivia France,</u> 763 F. Supp. 2d 819, 2011 WL111582 at *5 (N.D. Tex. 2011); <u>Hamilton-Ryker Group, LLC v Keymon,</u> 2010 Tenn. App. LEXIS 55, 2010 WL 323057 at *13 (Tenn.Ct.App. June 28, 2010).

<u>Universal Delaware</u> has pointed out that trade secrets or confidential information includes marketing plans or information relating to marketing decisions, compilation of information that is used in one's business and which gives the business an opportunity to obtain an advantage over competitors who do not use it, the precautions taken to guard the secrecy of the information, the value of the information, and the amount of time and expense it would take for others to acquire and duplicate the information.

In the present, Furukawa is seeking Delphi's revenue plans including information regarding the specific programs by customer for the sale of wire harness products, as well as pricing policies, training, and instruction it provides to its employees. This is highly confidential information (Exhibit J). The requests seek information that details every conceivable aspect of Delphi's wire harness

business which, if disclosed to its competitors, would give them direct and full knowledge of Delphi's entire wire harness business (Exhibit J).

In Laborers Pension Trust Fund-Detroit & Vicinity v CRS Poured Concrete Walls, 2006 U.S. Dist. LEXIS 92781 (E.D. Mich. 2006), non-party American argued that it and Defendant SRC were antagonistic, aggressive, competitors, not only for concrete wall customers, but for quality and reliable employees and trades people.  The court stated that courts have presumed that disclosure to a competitor is more harmful than disclosure to non-competitor.  American Standard, Inc. v Pzifer, Inc. 828 F.2nd 734, 741(Fed. Cir. 1987), citing Coke Cola Bottling Co., v Coke Cola Co., 107 F.R.D. 288, 293, 299 (D.Del. 1985).  The court agreed that the information requested was not substantially necessary under Fed.R.Civ.Pro. 45(c)(3)(B).  Any need that Defendants had for the information was outweighed by the potential harm of its release to American's business.  Laborer's Trust Fund at 10.

### 3.  The Subpoena Is A Fishing Expedition That Goes Beyond The Scope Of Discovery Under Fed.R.Civ.P. 26(b)(1)

In evaluating a motion to quash a subpoena, the Court may consider whether (1) the subpoena was issued primarily for the purposes of harassment, (2) there are other viable means to obtain the same evidence, and (3) to what extent the information sought is relevant, non-privileged, and crucial to the moving party's case.  Bogosian v Woloohojian Realty Corp., 323 F.3rd 55, 66 (1st Cir. 2003).   A

third party - especially a competitor - should not have to produce confidential documents unless there is a compelling, specific and relevant reason, and then only those documents that are tailored to address a specific, good cause that cannot be obtained from one of the parties in the case Laborers' supra at 9-10.

In Recycled Paper Greetings, Inc. v Davis, 2008 WL 440458 (N.D. Ohio 2008) at 3, the Court agreed with American Greetings (a non-party) that the subpoena should be quashed because it was unduly burdensome (requiring employees to search for and review thousands pages of documents) and require disclosure of trade secrets and confidential business information to its competitor. That is the situation here.

> [A]ny potential or actual:  (a) marketing and/or advertising proposals, plans, or strategies; (b) pricing proposals, plans or strategies; (c) proposals, plans or strategies for "refreshing" of cards or other products; (d) proposals, plans or strategies for presentation and layout of products, including use of shelf space of actual and/or potential customers and resellers, including Target;  pro forma, projection, and/or budget information; and/or (f) projections and analysis of sales

Davis at 5.

The Davis court stated:

> The Court thus finds that the subpoenas issued to American Greetings Corporation are overly broad and will result in an undue burden for the movement.  The range of materials sought by the Plaintiff far exceeds the scope of the Illinois lawsuit and the Plaintiffs contractual relationship with the Defendant, and instead attempts to gather substantial and specific information from American Greetings regarding its current and future business dealings with unrelated third party Target.  The relevant evidence before this Court suggests that the production of such confidential and

privileged information would not only be excessively burdensome to collect, but its disclosure could also result in significant financial harm to American Greetings.  The Court further notes that these overly broad discovery requests are particularly burdensome and costly given the short amount of time in which the movant was required to produce and/or testify regarding its findings.

This Court concludes that the subpoenas seek to obtain information regarding confidential business information from American Greetings, particularly with regard to its relationship with Target, and that company's employees should not be required to testify, for example, about potential or actual "(a) marketing and/or actual advertising proposals, plans, or strategies; (b) pricing proposals, plans or strategies; (c) proposals, plans are strategies for "refreshing" of cards or other products; (d) proposals, plans or strategies for presentation and layout of products, including use of shelf space or actual and/or potential customers and resellers, including Target." The overly broad and intrusive nature of these subpoena requests are not cured by Plaintiff RPG's claim that the movement can merely sign a proposed confidentiality order to ensure that the material remains for "Attorney's Eyes Only."  If the subpoena is unduly burdensome and unreasonable under Rule 45(c)(3), then the party from whom documents are sought is not required to disclose any information, even to the opposing party's attorneys.

Davis at 5-6.

## B.  Furukawa Should Pay For The Production Of Any Documents Produced By Delphi Because Of The Time Required To Search, Review, Inspect, Redact, And Produce The Documents.

As explained above, Delphi objects to the production of the documents

subpoenaed by Furukawa.  The subpoena is particularly annoying in light of

Delphi's offer to produce transactional data as it related to the wire harnesses from

2006 to 2014 **provided** Furukawa pay all costs and fees associated with Zencos

Consulting and reimburse Delphi for its time.  Delphi would extract the 2006

22

through 2014 transactional data as it related to the wire harnesses (using Delphi's definition), then would share that data with Zencos Consulting for review, with the guidance of a Delphi representative at a rate of $75 per hour at Furukawa's expense (Exhibit J).

The Court in <u>Guy Chem. Co. v Romaco AG</u>, 243 F.R.D. 310 (N.D. Indiana 2007), stated that there is a presumption that the responding party must bear the expense of complying with discovery requests.  There are a number of factors the Court may consider in ordering costs, such as how narrowly tailored the request is, cost, availability of the information, importance of the issue at stake, and the benefits to the parties to name a few Fed.R.Civ.Pro. 45 (d).

In ordering that the party issuing the subpoena was required to pay the costs of production, the <u>Romaco</u> court stated:

> The most crucial factor to this Court is the fact that ABRO is a non-party. Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.  <u>United States v Amerigroup, Ill., Inc.,</u> 2005 U.S. Dist. LEXIS 28482, 2005 WL 3111972 at 4 (N.D. Ill. 2005)(citations omitted).  It is clear that discovery in the hands of a non-party is subject to discovery under the Federal Rules.  See Fed. R. Civ. R. 26(b)(1); Fed. R. Civ. P. 45; <u>Seattle Times Co. V. Rhineheart,</u> 467 U. S. 20, 25, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984).  But that does not mean non-parties must yield discovery that causes undue burdens, as evidenced by the protections in the Federal Rules.  <u>See</u> Fed. R. Civ. P. 26(b),(c),; Fed. R. Civ. P. 45(d).  Non-parties understandably object to paying the litigation costs of other parties.  .  See Cusumano v Microsoft Corp., 162 F.3d 708, 717 [1]st Cir. 1998); <u>Dart Indus. Co. v Westwood Chem. Co.,</u> 649 F.2d 646, 649 (9th Cir. 1980); <u>Concord Boat Corp. v. Brunswick Corp.,</u> 169 F.D.R. 44, 49 (S.D.N.Y. 1996).  Simply put, it is not ABRO's lawsuit and they should not have to pay for the costs associated

with someone else's dispute. Not only is it fundamentally unfair for non-parties to beat the significant litigation costs of others, but also if this Court were to allow litigating parties like Romaco to impose such a burden on non-parties, then the likelihood of cooperation by non-parties in the future would be placed in jeopardy.

Romaco at 313.

Delphi has extended considerable time and effort trying to craft a reasonable scope of documents for Furukawa. Furukawa has flatly rejected these efforts. It would be unduly burdensome and costly for Delphi to provide the discovery sought in Furukawa's subpoena.

## V. RELIEF SOUGHT.

WHEREFORE, non-party Delphi Automotive Systems, LLC, requests this Court to grant the following relief:

A. Grant Delphi's Motion to Quash or Modify Furukawa's subpoena for production of documents dated February 19, 2016;

B. If the Court modifies the subpoena, to limit the subpoena to the production of the 2006 through 2014 transactional data as offered by Delphi to Furukawa;

C. If documents are ordered to be produced, order that Furukawa pay to Delphi the costs and attorney's fees in producing such documents;

D. Award Delphi the reimbursement of its costs and attorney's fees in filing this Motion.

Dated this 14th day of March, 2016.

Respectfully submitted:

PAPELIAN LAW OFFICE PLLC

_____/s/ Joseph E. Papelian_____

Joseph E. Papelian (P26582)
6 Woodward Heights, Suite B
Pleasant Ridge, MI  48069
248-797-6938
joe@papelianlaw.com

*Counsel for Defendant Delphi Automotive
Systems, LLC*

## CERTIFICATE OF SERVICE

I certify that on March 14, 2016, I electronically filed the foregoing Motion

and Brief with the Clerk of the Court via CM/ECF, which will send notification of

such filing to all counsel registered with CM/ECF in the above-captioned matter.

_/s/ Joseph E. Papelian_

Joseph E. Papelian (P26582)
Papelian Law Office PLLC
6 Woodward Heights, Suite B
Pleasant Ridge, MI  48069
248-797-6938
joe@papelianlaw.com