# Frantangelo, Barbara K

| | |
|---|---|
| **From:** | Papelian, Joseph E |
| **Sent:** | Thursday, February 11, 2016 10:08 AM |
| **To:** | Gangnes, Larry |
| **Cc:** | Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R. |
| **Subject:** | Wire Harness Defendants' Discovery Requests to Delphi - Clarification |
| **Importance:** | High |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Larry:

Larry:

I write to clarify my email below.

If we reach an agreement, Delphi will extract the 2006 – 2014 SAP data as it relates to wire harnesses, and then share that data with the 3rd party for review. We are not in a position to allow a 3rd party to extract data directly from SAP or install any 3rd party software for this purpose.

Thank you,

Joe Papelian
248 813-2535

---

**From:** Papelian, Joseph E
**Sent:** Monday, February 08, 2016 12:41 PM
**To:** 'Gangnes, Larry'
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi
**Importance:** High

Larry:

This is a follow-up to our telephone call this morning. I want to remind you that Delphi is **not** a party to this case. In fact, it is a victim! We have a business to run and your voluminous document requests would detract significantly from time spent running the business. The following is our final proposal in an effort to reach a compromise and supersedes all previous discussions. In other words, Delphi does not agree to provide the remainder of information outlined in the various telephone calls and emails regarding this subject.

1. Delphi agrees to allow Ben Zenick of Zencos Consulting with access to Delphi's SAP transactional data as it relates to wire harnesses from 2006 - 2014. You will pay all costs and fees associated with Zencos Consulting.

2. Delphi's definition of "Wire Harness" is as follows: automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies and high voltage wiring.

1

3. A Delphi representative will be made available to Mr. Zenick for guidance and questions, at a rate of $75 per hour, which you agree to pay.

4. Mr. Zenick's review of the data will be scheduled at the convenience of Delphi and its representative.

If you agree with this proposal we will draft a Confidentiality Agreement and forward it to you for your review.

Thank you,

Joe Papelian
248 813-2535

---

**From:** Gangnes, Larry [mailto:GangnesL@LanePowell.com]
**Sent:** Monday, February 08, 2016 11:52 AM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** RE: Wire Harness Defendants' Discovery Requests to Delphi

Joe,

As mentioned in my Dec. 14 email below, defendants' data vendor is Ben Zenick, co-founder and COO of Zencos Consulting (www.zencos.com) in Cary, North Carolina (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524. I understand that you will be advising us whether Delphi will approve Mr. Zenick and Zencos working with Delphi to extract Delphi's transactional data from its SAP database under an appropriate confidentiality agreement.

Regards.

**Larry Gangnes | Lane Powell PC**
**Shareholder** | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com


**From:** Gangnes, Larry
**Sent:** Monday, December 14, 2015 7:25 PM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; barbara.k.frantangelo@delphi.com; Fine, Stephanie
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi

Joe,

Thanks for speaking with me and Stephanie Fine this morning. Our proposal for moving forward with the Wire Harness Defendants' discovery requests to Delphi is summarized below, as you requested.

As discussed, we would like to proceed in two stages. First, we would like to get an estimate of the costs to retain a third-party vendor to extract Delphi's transactional data regarding its purchases of Wire Harness

Products ("WHPs") (as defined in plaintiffs' consolidated complaints) from its suppliers and sales of such Products to all OEM and other customers for whatever time periods Delphi maintains such data, as described in your July 30, September 28, and December 4 emails (attached).  This production would include the monthly KE30 summary sales reports, a sample of which was attached to your July 30 email.  Please let us know the time periods for which Delphi has the KE30 sales reports, including prior to 2006.  You also agreed to see whether Delphi has a monthly summary of its purchases of WHPs.  Finally, please explain the note in the spreadsheet attached to your December 4 email to the effect that:  "SAP data for DEEDS did not start until 2008 and was not completed until Nov 2009 – will have partial data until that time."

As I mentioned, we have located a vendor familiar with SAP databases that is available to extract Delphi's transactional data – Zencos Consulting (www.zencos.com) in Cary, North Carolina.  We have spoken with Ben Zenick, Zencos' co-founder and COO (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524), about obtaining a cost estimate for this project.  To that end, Mr. Zenick will be contacting you for information about the scope of work.  Once we have a cost estimate from Zencos, Defendants will be in a position then to decide whether and how best to proceed with production of the data.

The second discovery stage concerns the production of Delphi's electronic and other documents.  In this regard, we request that Delphi produce the categories of documents described in your July 30 email (attached).  In addition, we understand from our May 23, 2014 telephone conference with you and some of your Delphi colleagues that Delphi can print invoices from a database or produce the database.  You agreed to find out for us the time periods for which Delphi has invoices for its sales of WHPs.  Finally, we would request that Delphi produce any documents it has concerning purchases of WHPs from, or sales of WHPs to, the following Direct Purchaser Plaintiffs (or successors):

1. Mexican Industries in Michigan, Inc., a now bankrupt Michigan corporation with its principal place of business in Detroit, Michigan;

2. Paesano Connecting Systems, Inc., a Pennsylvania corporation with its principal place of business in Ridgway, Pennsylvania;

3. Craft-Co Enterprises, Inc., a Mississippi corporation with its principal place of business in Brandon, Mississippi;

4. Findlay Industries, Inc., an Ohio corporation with its principal place of business in Findlay, Ohio;

5. Cesar-Scott, Inc., a Texas corporation with its principal place of business in El Paso, Texas;

6. Martinez Manufacturing, Inc. ("Martinez"), an Illinois corporation with its principal place of business in Cary, Illinois;

7. Thermtrol Corporation, the successor to Martinez, an Ohio corporation with its principal place of business in North Canton, Ohio;

8. South Star Corporation, a Virginia corporation with its principal place of business in Elliston, Virginia; and

9. ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC, a defunct Michigan limited liability company formerly with its principal place of business in Michigan.

We understand that Delphi proposes to hire contract document reviewers to review Delphi's production to remove any privileged documents. We also understand from your September 28 email that Delphi has already conducted a search for its DPRG packages for the period prior to 2011 and located about 28,000 responsive documents for such a review.

Again, we would like to see if we and Delphi can come up with a more definitive estimate of the costs of reviewing and producing such documents before Defendants decide to proceed and commit to paying such costs. We are hopeful that the costs will not approach the $100,000 you estimated earlier.

To that end, we believe that the costs Delphi incurs in reviewing the 2,700 documents (7,500 pages) it has located regarding Ford's CD4 RFQ will be informative. One of the Defendants has already asked Delphi to proceed with that production. Once we know the costs of reviewing and producing the CD4 documents, Defendants and Delphi will be in a better position to estimate the costs of reviewing and producing the other documents described above, and Defendants will be able to decide whether and how best to proceed with production of those documents.

Finally, we should mention a few more caveats. First, our experience with WHP databases has been that there are always follow-up questions about the data and data fields produced. We would like to be able to pose such questions to Delphi informally and get answers. Second, Defendants would like to obtain a declaration from the appropriate person(s) at Delphi confirming that the data and documents produced are business records within the meaning of FRE 803(6). Third, you agreed in your September 28 email to provide us with a list identifying the custodians of the documents produced to the DoJ (which documents have been produced to both Plaintiffs and Defendants). Please provide us with this list identifying the custodians and the Bates number ranges of the documents produced from their files. Fourth, based on review of the DPRG packages produced, Defendants would like to reserve their rights to make further narrow, targeted requests for additional documents, if necessary, such as documents relating to a specific RFQ.

We will also be sending this email to Plaintiffs' counsel in an effort to see whether they wish to participate and whether they have any additional requests.

Thank you again for your attention to this matter. We look forward to hearing from you and moving forward.

Regards. Larry

**Larry Gangnes | Lane Powell PC**
**Shareholder** | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.