TOGUT, SEGAL & SEGAL LLP
Conflicts Counsel for DAS LLC Corporation, *et al.*,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Sean McGrath (SM-4676)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
    In re                                   :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05–44481 (RDD)
                                            :
                            Debtors.        :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SETTLEMENT STIPULATION AND AGREED ORDER AMONG THE DEBTORS OF FURUKAWA ELECTRIC NORTH AMERICA APD AND FURUKAWA ELECTRIC CO., LTD.

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, (collectively, the "Debtors") and Furukawa Electric North America APD, Inc. ("Furukawa North America") and Furukawa Electric Co., Ltd. (jointly, "Furukawa" and, together with the Debtors, the "Parties") respectfully submit this Settlement Stipulation And Agreed Order and agree and state as follows:



0544481080826000000000002

**WHEREAS,** on October 8, 2005 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), as then amended, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

**WHEREAS,** prior to the Petition Date, Delphi Automotive Systems, LLC ("DAS LLC") and Furukawa entered into a Long Term Contract dated September 7, 2000 (the "Long Term Contract"); and

**WHEREAS,** and pursuant to the Long Term Contract, DAS LLC issued Purchase Order No. SAG90I4710 to Furukawa North America (together with the Long Term Contract, the "Sensor Agreement"), and Furukawa agreed to sell to DAS LLC approximately 100% of DAS LLC's requirements for torque and position sensors (the "Sensors"); and

**WHEREAS,** also prior to the Petition Date, certain of the Debtors and Furukawa entered into Purchase Order Nos.  SAG90I4073, SAG90I5645, SAG50I5496, and SAG90I5497 (the "Purchase Orders") under which Furukawa would provide certain products other than the Sensors to the Debtors; and

**WHEREAS,** on October 14, 2004, DAS LLC filed a complaint (the "Complaint") against Furukawa in the Circuit Court for the County of Saginaw Michigan, the ("State Court") and asserted that Furukawa breached the Sensor Agreement and DAS LLC sought damages on account of that alleged breach; and

**WHEREAS,** on July 25, 2006, Furukawa filed proof of claim number 10574 against DAS LLC for goods sold under the Purchase Orders, and asserted an unsecured

2

non-priority claim in the amount of $4,756,206.56 (the "General Unsecured Claim") and a secured claim for $312,926.79 (the "Secured Claim" and, together with the General Unsecured Claim, "Claim 10574"); and

**WHEREAS**, on July 26, 2006 Furukawa filed proof of claim number 12347 and asserted an unsecured non-priority claim in the amount of $2,589,684.56 for alleged breach of contract damages in connection with the Sensor Agreement ("Claim 12347"); and

**WHEREAS**, on October 31, 2006, the Debtors objected to Claim 12347 pursuant to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, and (C) Claims Subject To Modification and (II) Motion to Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"); and

**WHEREAS**, on November 22, 2006, Furukawa responded and objected to the Debtors' Third Omnibus Claims Objection (Docket No. 5788); and

**WHEREAS**, Furukawa subsequently transferred the General Unsecured Claim to SPCP Group, L.L.C., as agent for Silver Point Capital Fund L.P. and Silver Point Capital Offshore Fund, Ltd. (collectively "SPCP"), as evidenced by that certain Notice of Transfer filed on January 31, 2007 (Docket No. 6766); and

**WHEREAS,** SPCP subsequently transferred $4,000,000 of the General Unsecured Claim to Goldman Sachs Credit Partners L.P. ("Goldman Sachs"), as

3

evidenced by that certain Notice of Partial Transfer filed on April 2, 2007 (Docket No. 7540);  and

**WHEREAS,** on July 13, 2007, the Debtors objected to Claim 10574 pursuant to the Nineteenth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Equity Claims, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Claims Subject To Modification That Are Subject To Prior Orders, And Modified Claims Asserting Reclamation That Are Subject To Prior Orders (Docket No. 9535) (the "Nineteenth Omnibus Claims Objection");  and

**WHEREAS,** on August 8, 2007, Furukawa filed a Response To the Nineteenth Omnibus Objection (Docket No. 8986);  and

**WHEREAS**, on September 26, 2007, the Debtors filed and served their Claim for Affirmative Relief against Furukawa pursuant to Bankruptcy Rule 3007 in connection with Claim 12347 and asserted a claim against Furukawa of not less than $24 million (the "Counterclaim");  and

**WHEREAS,** on December 10, 2007, the Debtors filed Debtors' Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date, (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets

4

Comprising Substantially All Assets Primarily Used In Debtors' Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities, And (C) Authorizing And Approving Transaction Facilitation Agreement (the "Steering Motion"); and

**WHEREAS,** on or about January 23, 2008, the Debtors served (i) Notices Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business (Docket No. 12323) (the "Assumption Notice") and (ii) Notice of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With Sale Of Steering And Halfshaft Business (Docket No. 12324) (the "Cure Notices"). The Cure Notices stated, among other things, that the Debtors seek to assume and/or assign the Purchase Orders to Steering Solutions Corporation and certain of its affiliates (the "Buyers"); and

**WHEREAS,** on January 25, 2008, the Court entered an order confirming the First Amended Joint Plan of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"); and

**WHEREAS,** on January 30, 2008, Furukawa Electric Co., Ltd. filed the Response of Furukawa Electric Company Ltd. To Debtors' Notices of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases to Buyers in Connection with Sale of Steering and Halfshaft Business and to Proposed Cure Amounts in Connection Therewith (Docket No. 12391); and

5

**WHEREAS,** on January 31, 2008, Furukawa Electric Co., Ltd. filed the Amended Response of Furukawa Electric Company Ltd. To Debtors' Notices of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases to Buyers in Connection with Sale of Steering and Halfshaft Business and to Proposed Cure Amounts in Connection Therewith (Docket No. 12424); and

**WHEREAS,** on January 31, 2008, Furukawa North America filed the Objection Of Furukawa North America To (I) Debtors' Notice of Cure Amount With Respect to Executory Contract Or Unexpired Lease to be Assumed and Assigned in Connection with Sale of Steering and Halfshaft Business and (II) Debtors' Notice of Cure Amount With Respect to Executory Contract to be Assumed and Assigned under Plan of Reorganization (Docket No. 12426) (Furukawa's responses to the Cure Notices, jointly the "Furukawa Cure Objections"); and

**WHEREAS,** on February 6, 2008, Furukawa filed and served its Response and Affirmative Defenses to the Counterclaim (the "Answer") (Docket No. 12537); and

**WHEREAS,** on February 25, 2008, the Court entered an Order Under 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (A) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Compromising Substantially All Of The Assets Of Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Lease, And (III) Assumption Of Certain Liabilities And (B) Authorizing And Approving Transaction Facilitation Agreement (Docket No. 12868) (the "Sale Approval Order"). The Sale Approval Order, among other things,

adjourned the Furukawa Cure Objections; and

**WHEREAS**, the Parties attended a mediation (the "Mediation") that was conducted and supervised by William Sankbiel with the goal of reaching a resolution of issues relating to Claim 12347, the Complaint, and the Counterclaim; and

**WHEREAS,** as a result of the Mediation and continued negotiations the Parties hereto have agreed to enter into this agreement and the agreements annexed hereto.

**NOW THEREFORE,** in consideration of the foregoing, the Debtors and Furukawa stipulate and agree as follows:

1. This Stipulation shall become effective on the eleventh day following the entry of an unappealed Order approving the terms hereto (the "Effective Date").

2. Not later than three (3) calendar days after the Effective Date, Furukawa will pay to the Debtors the sum of $16.5 million by wire transfer, using wire instructions that have been provided by the Debtors to Furukawa, in full and final settlement of the Counterclaim.

3. On the Effective Date, Claim No. 12347 shall be expunged.

4. As of the Effective Date, the Parties shall be deemed to release and discharge each other, their agents, attorneys and assignees and waive any right to assert any other claim, cause of action, demand, or liability of any kind and nature whatsoever against each other, their agents, attorneys and assignees, or hereafter shall have against each other whether known or unknown based upon, arising out of, related to, or by

7

reason of any event, cause, thing, act, statement, or omission which relate to Claim 12347, the Counterclaim, the Long Term Contract, the Sensor Agreement and/or the Sensors. Notwithstanding the foregoing, the preceding release shall not affect Furukawa's payment obligation pursuant to Paragraph 2 above or the Debtors' payment of the Cure Amounts as defined and described in Paragraph 6 and 7 below.

    5. Claim No. 10574 shall be allowed pursuant to and in accordance with the terms of the Parties' Stipulation annexed hereto as Exhibit "A" which is incorporated herein by reference.

    6. The cure amount for Purchase Order number SAG90I4073 is $2,752,655.73 (the "4073 Cure Amount"); the cure amount for Purchase Order number SAG90I5645 is $8,840.80 (the "5645 Cure Amount"); the cure amount for Purchase Order number SAG90I5496 is $3,550.71 (the "5496 Cure Amount"); the cure amount for Purchase Order number SAG90I5497 is $28,805.43 (the "5497 Cure Amount" and, together with the 4073 Cure Amount, the 5645 Cure Amount, and the 5496 Cure Amount, the "Cure Amount").

    7. If the closing of the sale of the Debtors' Steering and Halfshaft Business (the "Closing") occurs before the Selling Debtor Entities emerge from the Chapter 11 cases (the "Emergence Date"), then the Cure Amounts will be paid in cash to Furukawa under the terms of the Sale Approval Order. If the closing occurs after the Emergence Date, then the Cure Amounts will be paid in cash to Furukawa under the terms of the Plan, as it may be amended, modified or superceded.

8

8. Furukawa hereby acknowledges that upon the Debtors' payment of the Cure Amounts, Furukawa shall be forever barred from asserting any other claim under section 365 of the Bankruptcy Code relating to the Debtors' assumption of the Purchase Orders. To the extent that Furukawa has already asserted cure claims against any of the Debtors related to the Purchase Orders that arise prior to the Petition Date, such claims shall be deemed withdrawn with prejudice.

9. Prior to the earlier of the Closing Date or the Emergence Date, the Debtors may amend their decision with respect to the assumption and assignment of the Purchase Orders and provide a new notice to Furukawa amending the information relating to the assumption and assignment of the Purchase Orders, provided, however, that the provisions of paragraph 6 hereof shall apply in the event of the assumption of the Purchase Orders expressly listed therein. The 4073 Cure Amount and the 5645 Cure Amount will be credited against, and reduce, the Allowed Amount of Proof of Claim 10574 when the 4073 Cure Amount and the 5645 Cure Amount are paid to Furukawa and the 5496 Cure Amount and the 5497 Cure Amount will be credited against and satisfy the Allowed Amount of Proof of Claim 16555 when the 5496 Cure Amount and the 5497 Cure Amount are paid to Furukawa.

10. On the Effective Date, the Furukawa Cure Objections, the Answer and the Counterclaim shall be deemed to have been withdrawn with prejudice.

11. This Settlement shall be governed by, and construed and enforced in accordance with, as appropriate, the Bankruptcy Code and the laws of the state of Michigan without regard to conflicts of law principals. The Bankruptcy Court shall

have original and exclusive jurisdiction to interpret and enforce the terms of this Settlement Agreement and to adjudicate all questions and disputes hereunder.

12. Promptly after the Effective Date, each of the Parties hereto shall file such documents and do such things necessary to dismiss, with prejudice, the State Court Action, including, without limitation, all complaints, counter-claims, and cross-claims and they will stipulate the discontinuance of the State Court Action with prejudice, with each party thereto to bear its own costs and expenses, including, without limitation, attorneys' fees.

13. The Parties hereto acknowledge that they are executing this Settlement Agreement without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Settlement Agreement and the Stipulation that is annexed hereto as Exhibit "A."

14. The execution of this Settlement Agreement shall not be deemed in any respect to constitute an admission by Furukawa or the Debtors that any allegation or contention in Claim 12347, the Complaint, and/or Counterclaim is true and valid. In negotiating this Settlement Agreement, Furukawa and the Debtors specifically agree that the Settlement Agreement represents a negotiated agreement for the sole purpose of settling all issues and matters described herein.

15. This Settlement Agreement constitutes the entire understanding of the Parties in connection with the subject matter hereof. This Agreement may not be

modified, altered or amended except by an agreement in writing, signed by the Debtors and Furukawa.

      16.    This Settlement Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Furukawa, the Debtors, and their counsel.  Therefore, any ambiguous language in this Settlement Agreement will not be construed against any particular party as the drafter of such language.

      17.    This Settlement Agreement may be executed in any number of counterparts and by the Parties hereto in separate counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Agreement by facsimile or

*[Concluded on Following Page]*

electronic mail shall be equally as effective as delivery of an original executed counterpart of this Agreement.

AGREED TO AND
APPROVED FOR ENTRY
August 5, 2008:

/s/ Neil Berger

Neil Berger (NB-3599)
A Member of the Firm

TOGUT SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

Attorneys for Delphi Corporation, et al.
Debtors and Debtors-in-Possession

/s/ Dennis J. Connolly

Dennis J. Connolly
A Partner of the Firm

ALSTON & BIRD, LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000

Attorneys for Furukawa Electric North America APD and Furukawa Electric Co., Ltd.

**SO ORDERED**

This 26 day of August 2008
in New York, New York

_____/s/ Robert D. Drain_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE