```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3                         —    —    —

 4    IN RE: AUTOMOTIVE PARTS           Case No. 12-2311
      ANTITRUST LITIGATION
 5                                      Hon. Marianne O. Battani

 6    _____        _____

 7    ALL PARTS

 8    _____

 9

      THIS RELATES TO:
10
      ALL AUTO PARTS CASES
11    _____/

12

13              MOTION TO COMPEL DISCOVERY FROM
            NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS
14

15           BEFORE SPECIAL MASTER GENE ESSHAKI
          Theodore Levin United States Courthouse
16              231 West Lafayette Boulevard
                      Detroit, Michigan
17              Thursday, March 24, 2016

18

19

20

21

22

23

24      To obtain a copy of this official transcript, contact:
             Robert L. Smith, Official Court Reporter
25           (313) 964-3303 • rob_smith@mied.uscourts.gov
```

```
 1    APPEARANCES:

 2     For the Plaintiffs:    STEVEN N. WILLIAMS
                              COTCHETT, PITRE & McCARTHY, L.L.P.
 3
                              VICTORIA ROMANENKO
 4                            CUNEO, GILBERT & LaDUCA, L.L.P.

 5
       For the Defendants:    PATRICK J. CAROME
 6                            WILMER, CUTLER, PICKERING, HALE and
                              DORR, L.L.P.
 7
                              STEVEN F. CHERRY
 8                            WILMER, CUTLER, PICKERING, HALE and
                              DORR, L.L.P.
 9
                              DANIEL T. FENSKE
10                            JENNER & BLOCK

11
       For the Non-Party      ADAM C. HEMLOCK
12     Original Equipment     WEIL, GOTSHAL & MANGES, L.L.P.
       Manufacturers:
13                            ADAM WOLFSON
                              JOSEPH R. ASHBY
14                            DOMINIC SURPRENANT
                              QUINN, EMANUEL, URQUHART, OLIVER &
15                            SULLIVAN, L.L.P.

16                            COLIN R. KASS
                              PROSKAUER ROSE, L.L.P.
17
                              DANIEL S. SAVRIN,
18                            MORGAN LEWIS

19                            ROBERT J. TUCKER
                              BAKER HOSTETLER
20
                              JUSTINA K. SESSIONS
21                            KEKER & VAN NEST, L.L.P.

22                            MEREDITH JONES KINGSLEY
                              ALSTON & BIRD, L.L.P.
23


24
       (Please note, appearances of attorneys listed are only those
25          that presented argument before the Special Master.)
```

<pre>
 1                      TABLE  OF  CONTENTS

 2   MATTER                                          PAGE

 3   Argument on the Motion to Compel Discovery
     by Mr. Wolfson....................................... 5
 4   by Mr. Hemlock.......................................17
     by Mr. Kass..........................................23
 5   by Mr. Savrin........................................25
     by Mr. Tucker........................................32
 6   by Mr. Surprenant....................................35
     by Mr. Ashby.........................................40
 7   by Ms. Sessions......................................40

 8   Ruling by the Special Master........................41

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
</pre>

 1   Detroit, Michigan

 2   Thursday, March 24, 2016

 3   at about 3:15 p.m.

 4                          —    —    —

 5             (Special Master and Counsel present.)

 6             SPECIAL MASTER:  It is now 3:15.  We have been in

 7   discussions since approximately 9:30 trying to reach a

 8   resolution of some of the issues in the pending motions, and

 9   it is my hope that we will have a partial resolution shortly

10   which will permit me to adjourn the majority of the motions.

11             However, there is one matter that is going to

12   require a hearing, and that is with respect to the document

13   requests served by the serving parties on the OEMs concerning

14   the production of documents that the OEMs made to the

15   Department of Justice.  And as I understand the request now,

16   it is that the OEMs produce any documents they produced to

17   the Department of Justice in any case that is not subject to

18   the stay.  Some of those cases I understand are, in fact,

19   within this case and they are still stayed, some of them are

20   not in this case and are stayed.  That also excluded would be

21   any communications between the OEMs and the Department of

22   Justice in which the Department of Justice was asking for

23   analyses or projections or assistance in understanding the

24   data that had been produced by the OEMs to the DOJ, that

25   would be excluded as well.

Motion Hearing before the Special Master • March 24, 2016

1       Mr. Williams, have I hit everything there?

2           MR. WILLIAMS:  I believe you have, Your Honor.

3           SPECIAL MASTER:  Sir, it is your motion so would

4    you like to start?  Please let's try to keep it to five or

5    ten minutes.

6           MR. WILLIAMS:  Well, I will be very brief.  I will

7    try to start -- to be honest --

8           SPECIAL MASTER:  I have read everything.

9           MR. WILLIAMS:  -- I'm not quite sure what the

10   position of General Motors is, I will need to hear from them

11   to respond very briefly afterward, but --

12          SPECIAL MASTER:  Mr. Williams, I suggest you sit

13   and we'll have General Motors tell us their position.

14          MR. WILLIAMS:  Very well.

15          SPECIAL MASTER:  I have read your brief

16   extensively, I have notes of it and everything.

17          MR. WILLIAMS:  Thank you.

18          SPECIAL MASTER:  Counsel, would you identify

19   yourself?

20          MR. WOLFSON:  Yes, Special Master.  My name is

21   Adam Wolfson, I'm from Quinn, Emanuel, Urquhart & Sullivan on

22   behalf of General Motors.

23          SPECIAL MASTER:  All right.

24          MR. WOLFSON:  Special Master, the issue here is

25   that as we understand the serving parties' position is, well,

1   the OEMs have collected these documents already so they

2   should just be able to produce it to us.  Well, the problem

3   is that third-party subpoenas you don't just waive burden,

4   you look at substantial need, you look at relevance, you look

5   at confidentiality of the materials, whether they are highly

6   confidential, all of these play into the final decision of

7   whether to produce.

8         When producing to the Government, they are the good

9   guys, they are the ones trying to prosecute all of these

10  parts suppliers for their collusion against the OEMs, the

11  OEMs are going to be more willing to provide certain

12  highly-confidential information to the Government than they

13  otherwise might be willing to produce to the parties in this

14  case, and that's exactly what happened.

15        One major concern is that there is

16  highly-confidential information in these materials that

17  frankly the OEMs do not want to produce, when coupled with

18  that the plaintiffs or the serving parties have not

19  demonstrated that they absolutely need this information.

20        Now, they have the DOJ productions from the

21  defendants.  They have all of the documents that these

22  defendants who are the admitted or accused conspirators,

23  these documents establish their liability.  So to the extent

24  that additional documents were needed by the DOJ to prove

25  liability, to establish criminal liability, which is beyond a

1    reasonable doubt, and the OEMs helped with that process, that

2    shouldn't be used against them in saying now, okay, you have

3    to give all of that over to us simply because we are in civil

4    litigation.

5         Rule 45 is clear, if there is a not a substantial

6    need, if it is highly confidential, if it is marginally

7    relevant, and that weighs against production here and that's

8    why there is a serious concern on the part of the OEMs like

9    GM that have produced a fair amount of documents to the DOJ.

10        A wholesale production is going to create perverse

11   incentives for victims of conspiracies like this when there

12   are defendants that are more reticent to settle with the DOJ

13   or to admit their guilt and DOJ has to go out to the victims

14   and produce -- have them produce additional documents to help

15   establish that liability, those victims are going to be more

16   hesitant to do so if they know that their crown jewels, that

17   their highly-confidential documents are automatically going

18   to have to be produced to parties in other litigation.

19        We submit because there has not been a showing of

20   substantial need on this motion and because there are such

21   voluminous other DOJ productions from the actual wrongdoers,

22   a wholesale production here even with the limitations, not

23   subject to stay, no communication with DOJ.  I understand

24   that there was also something about ongoing investigations of

25   the DOJ not necessarily being produced, I may be wrong on

1    that.

2              SPECIAL MASTER:  No, that's correct.

3              MR. WOLFSON:  Okay.

4              SPECIAL MASTER:  There was a -- I didn't mention

5    though but there was a request for it to be a springing order

6    so that in the future if a -- if the stay is lifted as to any

7    particular part or part case, that without having to come

8    back here the moving parties could obtain that data if I rule

9    that they are entitled to that data.

10             MR. WOLFSON:  Well, I think in the context here is

11   what we have is the OEMs have offered to produce some

12   documents as a compromise.  They have offered to produce

13   documents to the extent that they were produced to the DOJ

14   would not be withheld on the fact that they were produced to

15   the DOJ.  We have offered to produce certain transactional

16   data related to non-defendant suppliers.  We have offered to

17   produce reasonably accessible information about MSRPs.  We

18   think that that is sort of the specifically tailored request

19   and specifically tailored production that is called for by

20   Rule 45 and that is appropriate in this case particularly

21   given that the OEMs are the primary direct victims that the

22   DOJ was consulting merely because they are trying to

23   establish liability of the actual wrongdoers.

24             SPECIAL MASTER:  Counsel, thank you very much.

25             MR. WOLFSON:  So that's our position.

1    SPECIAL MASTER:  That's a good argument on such

2  short notice.

3    MR. WOLFSON:  Thank you.

4    SPECIAL MASTER:  Mr. Williams?

5    MR. WILLIAMS:  Thank you, Your Honor.  I will try

6  to be brief.

7    It was a good argument on short notice but it is

8  not the argument that was in the opposition brief, so I would

9  suggest that argument was waived, none of that was in their

10  brief on the specific points.  If you look at pages 34 and 35

11  of the brief that GM signed on to you are not going to find

12  any of those arguments.

13    Now, it is instructive to look at footnote 33 where

14  they say to the extent that protection -- further production

15  is required it should be limited to ordinary course documents

16  and not communications, witness statements, summaries or

17  other materials prepared specifically for any DOJ Grand Jury

18  investigation.

19    So as you said at the outset, we are not seeking

20  their communications with the DOJ other than the pulls from

21  transactional data that the Department of Justice has told us

22  they are fine with us having.  We are not seeking specially

23  prepared documents and we are not seeking witness statements,

24  but you have not been provided any reason to deny production.

25    And I note among the very first orders

Motion Hearing before the Special Master • March 24, 2016

10

1    Judge Battani made in that case was that productions to the

2    DOJ would be given to the parties, and there is no reason

3    here to be different.  We don't have to show, quote, absolute

4    need.  We have a protective order in place, and there has

5    been no identification of how that protective order is

6    lacking or inadequate to protect the crown jewels.  And these

7    materials were produced to the department, they are not

8    privileged; they are compared, they have been gathered, have

9    been produced.

10           Case after case permits the production to civil

11   parties with very, very limited exceptions that I just talked

12   about from footnote 33 of documents in civil litigation that

13   were previously produced to a government entity.

14           These are core documents to us because we need to

15   go through the chain of distribution from defendants to OEMs

16   until the parts get to us.  This is a necessary part of that

17   chain, and in the discussion of burden that was just made it

18   seems this is less burdensome.  I mean, they had a compromise

19   to give us a subset of it but what we are saying is just give

20   us what you have already compiled.  They have not identified

21   any privileged, they have just identified a policy reason

22   that perhaps in the future victims of crimes would be less

23   willing to cooperate with the government if they thought in

24   future civil litigation such productions may be necessary.

25           That position has been rejected by courts.  There

12-02311

```
 1    is no such privilege like that, and otherwise these documents
 2    are in the core of discoverable information in this case.
 3    And the DOJ are good guys but we would like to think we are
 4    good guys too.  We represent the class in this case.  We have
 5    class cert dates coming.  We are here on a motion to compel
 6    today after seven and-a-half months of meeting and
 7    conferring, and to carve out one set of non-privileged
 8    relevant documents that are sitting on a drive and could be
 9    given to us in one week requires more of a showing then
10    perhaps in the future a crime victim won't cooperate with the
11    government if you permit us to have these documents here.
12    Thank you.
13            SPECIAL MASTER:  Would you agree -- I don't
14    remember the precise terms of the protective order, but would
15    you agree with an attorney-eyes-only designation?
16            MR. WILLIAMS:  Certainly, we have no concern about
17    that.
18            SPECIAL MASTER:  Okay.
19            MR. WILLIAMS:  And if our understanding is that the
20    concern is about not necessarily the parties having it but
21    competitors having it, we would be willing to confer with
22    General Motors about that concern as well.
23            SPECIAL MASTER:  Could you explain that a little
24    further?
25            MR. WILLIAMS:  I don't want to speak for
```

1  General Motors but I have an impression that their concern is

2  not as heightened as to me seeing it or counsel for

3  defendants seeing it, as much as it is another automaker

4  seeing this information.  There is only one other automaker

5  in this litigation, they are only in one case, and it would

6  seem that if that is really the core of the concern of the

7  confidential that there ought to be a way to address that

8  concern.

9          SPECIAL MASTER:  Okay.

10          MR. WILLIAMS:  Thank you.

11          MR. WOLFSON:  May I respond?

12          SPECIAL MASTER:  Yes, please do.

13          MR. WOLFSON:  Thank you, Special Master.

14          A couple points.  The point that Counsel just

15  raised about only being focused on Ford, that is -- that's

16  incorrect.  Their worry is that this is highly-sensitive

17  competitive but also just highly-confidential internal

18  information that will be going to parts suppliers, it will be

19  going to downstream purchasers, it will be in the hands of

20  dozens of law firms, that will be in the hands of even

21  more -- by multiple more attorneys.  This is all the sorts of

22  information where unless there is really a substantial need

23  for it, and I say substantial because that's actually the

24  words that are in the rule, not absolute, substantial need,

25  the -- if there has been no showing of substantial need then

1   having such confidential information placed into this

2   litigation where we are a non-party and do not participate in

3   the hearings, do not participate in the trial, do not

4   participate in negotiations between the parties that will be

5   using this information, that's where the concern arises, not

6   because Ford is one of the litigants in one of the cases.

7           To the extent that Mr. Williams talked about this

8   chain of distribution, we don't understand how the compromise

9   that we have offered fails to satisfy that.  There is the

10  MSRP data that we have offered to produce, there is the

11  costing data from -- the transactional data from

12  non-defendant suppliers, but the rest is all information that

13  should have been produced to the best of the parties'

14  abilities in this case and therefore we don't see the

15  equivalence of saying well, the DOJ production helps us track

16  the chain of distribution on down to the end payors.

17          I believe that is -- one minor point.  In our

18  briefs we did argue that the -- besides the documents that we

19  have provided, none are relevant and necessary and that's

20  what I'm arguing now, that it is not relevant or necessary to

21  produce them but it is a minor point.  Those are the issues I

22  would like to raise.

23          SPECIAL MASTER:  Thank you.  Ms. Romanenko, did you

24  have something you wanted to address?

25          MS. ROMANENKO:  Your Honor, just quickly, we wanted

1       to verify that attorneys' eyes only includes our experts?

2                   SPECIAL MASTER:  Yes.

3                   MS. ROMANENKO:  Thank you.

4                   SPECIAL MASTER:  Yes.  I'm going to -- I'm going to

5       rule that the productions by the OEM to the Department of

6       Justice have to be produced.  They -- every day in this

7       country major cases are litigated in which

8       highly-confidential competitive information is exchanged

9       under protective orders, and I understand the significance of

10      this but protective orders are designed exactly to prevent

11      leaking of that information, so I don't accept that as

12      argument for not producing the information.  I do think it is

13      relevant, it may also lead to relevant information.

14              I am going to order that it be produced.  I'm

15      asking Mr. Williams to draft the order with the exclusions

16      that we talked about.  The ones that you've quoted to me in

17      the footnote, the ones that exclude any information on an

18      ongoing investigation, whether that case is within this case

19      or outside of it, and that it be a springing order so that at

20      any time down the road when Judge Battani lifts the stay as

21      to any other part or case that is currently subject to the

22      stay it will automatically permit the moving parties to seek

23      that DOJ production from the original equipment

24      manufacturers.  And I would like that information to be

25      produced within seven days after entry of the order.

1           Now, Mr. Williams, as always you have to include in

2    the body of the order -- at the end of the order that it is

3    pursuant to the order appointing me Special Master, and it is

4    subject to review and appeal to Judge Battani.

5           MR. WILLIAMS:  Yes.

6           SPECIAL MASTER:  Understood?

7           MR. WILLIAMS:  Thank you, Your Honor.

8           SPECIAL MASTER:  That's all we have for now.

9           (Court recessed at 3:31 p.m.)

10                          _   _   _

11          (Court reconvened at 3:48 p.m.; Special Master and,

12             counsel present.)

13          SPECIAL MASTER:  All right.  We are on the record

14   at this point, and we are addressing the pending motion to

15   enforce the subpoena that was addressed to the OEMs by the

16   moving parties.

17          I have started -- I started conferencing with the

18   moving parties and the OEMs at approximately 9:30 this

19   morning, it is now ten minutes to 4:00.  After several hours

20   of discussions individually and jointly I reached the

21   conclusion that there simply isn't sufficient information

22   before me today to make a reasonable decision on to --

23   whether to enforce or not to enforce, to what extent to

24   enforce the subpoena.

25          As a consequence, I suggested to the moving parties

1   the best course of conduct -- and to the OEMs, that the best

2   course of conduct would be to conduct some 30(b)(6)

3   depositions of the OEMs in order to better understand what

4   information is available, reasonably accessible, and the

5   costs and burden that would be incurred in having to generate

6   that information.  With this information in hand it would be

7   easy then -- not easy, but it will be easier to assess

8   arguments on proportionality, arguments on burden, and so

9   forth.

10       So I have asked the moving parties to come up with

11  a proposal for dealing with taking 30(b)(6) depositions of

12  the OEMs, and adjourning this motion until those depositions

13  have been concluded and the parties -- all the parties,

14  including the OEMs, have had an opportunity to confer and in

15  an attempt to revise down the subpoena because at that point

16  they will know that certain information, such as pricing on a

17  VIN level, is simply not available, and so to ask for it is a

18  nullity.

19       So with that in mind, I ask that the moving parties

20  confer and come up with a proposal for conducting these

21  30(b)(6) depositions, including who they want to depose, a

22  list of areas where the OEMs can designate the 30(b)(6)

23  representative to be deposed.  When I say who I meant which

24  of the OEMs, including truck and equipment distributors,

25  small entities and non-core.  And at this point I would like

1  the moving parties to tell me what they have come up with.

2      MR. HEMLOCK:  Thank you, Your Honor.  Adam Hemlock

3  from Weil, Gotshal & Manges on behalf of the Bridgestone and

4  Calsonic defendants.

5      Your Honor, the moving parties have conferred and

6  came up with a list of five topics which I will read out for

7  the record right now.  These would be the 30(b)(6) topics

8  that would form the basis of the depositions of the OEM

9  family.

10      Number one would be transactional purchase data for

11  the parts at issue.  Number two, procurement process and

12  supplier selection and price adjustments for the parts at

13  issue, and documents related thereto.  Number three, vehicle

14  cost data and other information.  Number four, vehicle

15  pricing process including process for setting and adjusting

16  pricing, and documents related thereto.  Number five,

17  transactional sales data for sales of vehicles, and then

18  there are four subparts.  A, from OEMs to ADPs and TEDPs;

19  B, from OEMs to distributors; C, from distributors to ADPs

20  and TEDPs; and D, from ADPs and TEDPs to EPPs.

21      And then one last note, references above to

22  documents and data include information on format, where

23  maintained, time period, current and legacy systems, and

24  costs and burden of production.  So that would be -- those

25  would be the topics for the notice.

1    SPECIAL MASTER:  Understood.  And in the interest

2    of saving time, could you e-mail those to counsel for the

3    OEMs.

4    And then the next point that I have is who do you

5    want to take 30(b)(6) depositions of?  When do you want to

6    take those depositions?  How much time do you need to conduct

7    those depositions?

8    MR. WILLIAMS:  Excuse me.  I apologize.

9    SPECIAL MASTER:  Mr. Williams?

10    MR. WILLIAMS:  Steve Williams for the end payors.

11    There is one category that I should have and would

12    like to propose adding to this for this subcategories and

13    transactional sales data, which would be direct sales by OEMs

14    to customers such as fleet customers.  Thank you.

15    MR. HEMLOCK:  Thank you, Your Honor.  Our proposal

16    would be as follows.  In terms of the who, our thought would

17    be that there would be one -- there would be one deposition

18    for each what we will call OEM family.  So, for example, my

19    understanding is there are several -- two or three BMW

20    entities who are recipients of subpoenas, one of them may be

21    a manufacturing entity, one may be a sales entity, one may be

22    a finance entity.  We would be seeking one deposition of the

23    entire family, and the members of that family could decide

24    who would be deposed and who they want to educate on the

25    various topics, and obviously to the extent that certain of

1    those entities house certain data or information then perhaps

2    employees from those entities would be most appropriate but

3    we would leave it to them, but we would expect, however, that

4    that 30(b)(6) witness be prepared to testify on behalf of all

5    of the entities in the family.

6            SPECIAL MASTER:  And would you address -- identify

7    yourself, sir, for the record.

8            MR. CAROME:  Patrick Carome from Wilmer Hale on

9    behalf of the Denso defendants.

10           To the extent an OEM entity is -- has a -- is

11    substantially involved in the truck and equipment sales --

12    manufacturing and sales, there probably needs to be a second

13    30(b)(6) deposition for that entity because we don't think we

14    can cover both passenger vehicles and trucks and equipment in

15    the same deposition.

16           SPECIAL MASTER:  All right.  Is it your -- would

17    you please address the issue -- I think Mr. Carome addressed

18    truck and equipment, they want a 30(b)(6) dep of the truck

19    and equipment.  Would you please address non-core, small

20    entities and distributors.

21           MR. HEMLOCK:  Okay.  So our proposal regarding the

22    OEM families is meant to address the non-core entities, at

23    least based on the understanding that the non-core entities

24    are all affiliated with some core entity and thus they would

25    be treated as one family for the deposition.

1          Our position on the smaller OEMs is that there

2     should be no distinction.  In other words, the smaller OEM

3     family should also be subject to the same order and have

4     those OEM families deposed for the reasons that we have laid

5     out in the briefing.  They may be smaller relative to some of

6     the other entities but they nevertheless sell millions of

7     cars a year, they are some of the biggest corporations in the

8     world.

9          The plaintiffs -- the indirect plaintiffs premise

10    some of their damages and some of their claims on purchases

11    of those cars, so we think at least at this stage there is no

12    reason to distinguish.  That being said, we could probably

13    during the period that we propose to conduct the depositions

14    start with some of the larger ones and perhaps push the

15    smaller ones towards the tail end.

16         SPECIAL MASTER:  And what about distributors?

17         MR. HEMLOCK:  Distributors, our understanding, and

18    we could confirm this, is that the OEMs themselves may have

19    the data that we would otherwise seek from the distributors,

20    and obviously if that were the case we would have no interest

21    in doing two different depositions.  I think we would want to

22    explore whether an OEM family could cover whichever

23    distributor that they use, and if not then we would probably

24    have to take a deposition of --

25         SPECIAL MASTER:  My understanding, as I recall from

1     the briefs, that there are distributors for a foreign parent

2     where there is no manufacturing operations in the United

3     States, so the data may rest outside of the United States.

4     In a case like that, what do you envision doing with that

5     distributor?

6              MR. HEMLOCK:  I think -- well, at a minimum we

7     would want whatever information the distributor has.  If the

8     distributor is purchasing automobiles from a factory abroad

9     and then reselling them in the United States, they certainly

10    are going to have the downstream information we need.  I'm

11    assuming the distributor is either selling to another entity

12    who then distributes them out or distributing them directly

13    to ADPs, but in either instance they would have that sale

14    data.

15             As to the upstream, if it is just a distributor in

16    the United States I think it is highly unlikely that they

17    will have information related to the purchases of parts but

18    we can only get whatever they have.

19             SPECIAL MASTER:  All right.  Mr. Williams, you are

20    chomping at the bit.

21             MR. WILLIAMS:  One comment.  Steve Williams on

22    behalf of the end payors.

23             Of the smaller SCC group, as they refer to

24    themself, we would want to not defer Subaru of that group,

25    the others we could, as Mr. Hemlock suggested, move back in

1    the process, but Subaru -- those entities we think should be

2    in the front given their prominence in a number of the guilty

3    pleas.

4          SPECIAL MASTER:  I didn't hear Mr. Hemlock say he

5    would move them to the back.  Did I miss that?

6          MR. WILLIAMS:  I just wanted to be clear on that.

7          SPECIAL MASTER:  All right.  Next, how long do

8    you -- how much deposition time do you need?

9          MR. HEMLOCK:  So we have conferred, and looking

10   frankly at the topics and the number of subjects that need to

11   be addressed, we think a maximum of 14 hours.  Obviously as

12   with all depositions we would endeavor to be efficient, and

13   perhaps we won't need all 14 with all parties.  Some of the

14   families may be smaller or, as you pointed out, for a family

15   that doesn't have purchasing operations in the United States

16   we would likely need less time, but I think 14 hours per

17   family would be an appropriate maximum.

18         SPECIAL MASTER:  All right.  When would you propose

19   that this starts?

20         MR. HEMLOCK:  Our thought, Your Honor, is that we

21   would try to start in two weeks, two weeks from your order,

22   and that they should be completed within 45 days.

23         SPECIAL MASTER:  Okay.  I think you have covered

24   what I need to know.

25         MR. HEMLOCK:  I think that's it.

1          SPECIAL MASTER:  Who wants to address from the

2    opposing parties?

3          MR. KASS:  Your Honor --

4          SPECIAL MASTER:  Identify yourself, Counsel.

5          MR. KASS:  Colin Kass for Chrysler.

6          I don't want to address all the issues, I just want

7    to address a few of them, and then I think others will want

8    to address certain of the issues relating to the small SCCs,

9    the non-core, and distributor SCC, and the truck and

10   equipment as well.

11         A couple things.  We are just hearing this proposal

12   for the very first time so we have not yet had an

13   opportunity, so I think what we would request is that, first,

14   before the order gets entered, an opportunity to review the

15   proposal, they can share with us the Word version of this

16   proposal, and then we would commit to providing comments very

17   quickly, and then you can take those into account.

18         There are a couple of things --

19         SPECIAL MASTER:  Counsel, my general process is

20   that I would ask one of the moving parties to draft an order,

21   share it with you, you would then be permitted to make

22   suggestions for revisions, alterations or deletions, and then

23   if you are satisfied with it, it would then be signed.

24         MR. KASS:  Okay.  Thank you, Your Honor.  One thing

25   that we would like to -- I would like to address now is the

1   14 hours.  The federal rules put in a seven-hour presumptive

2   limit, and there has been no showing that we need to go

3   beyond the seven hours.  You know, I think we should -- that

4   should be the presumptive limit to start with, and then if

5   that doesn't work then we can address that later.

6        The last thing I just want to mention -- well, one

7   other thing first on procedure.  To start the depositions in

8   two weeks, I mean, with a list that is this long and getting

9   into the details, it is going to take a lot longer than two

10  weeks just to figure out exactly what all the various systems

11  are and to do our own due diligence.  So if they expect this

12  to be productive there needs to be an adequate time for us to

13  actually dig in and provide the -- to get our 30(b)(6)

14  deponent prepared, especially when this would be sort of a

15  novel approach where you're effectively requiring that one

16  spokesperson be designated on behalf of multiple entities,

17  usually it is an entity that designates a spokesperson, so

18  this is a departure from that and it requires multiple

19  different investigations and coordination.

20        The last thing I just had mentioned --

21       SPECIAL MASTER:  Would four weeks be sufficient?

22       MR. KASS:  I think four weeks is in the right

23  direction, Your Honor.

24       SPECIAL MASTER:  All right.  Thank you.

25       MR. KASS:  The last thing I would like to mention

1    is this entire process, while I understand based on our

2    session this morning that there are -- there's -- there may

3    not be enough information on a part of the issues, which is

4    what's available and what the burden is on our side, at least

5    in our view of the rule is that there needs to be a

6    substantial need that cannot otherwise be met, and the record

7    is completely absent in terms of what the parties' submission

8    was on what their substantial need was.

9           I mean, I don't believe that the Court would allow

10   us to take depositions of them, but I don't want to waive the

11   argument that at least in our view this process is only going

12   to get at what we believe to be half of the relevant

13   equation, and so I just wanted to note that for the record.

14          SPECIAL MASTER:  Thank you.  All right.  Who wants

15   to go next?

16          MR. SAVRIN:  Good afternoon.  Daniel Savrin from

17   Morgan Lewis rising to speak on behalf of the domestic

18   distributors.

19          For the record, I just want to set out that not

20   only did we just learn about this process moments ago, but we

21   just learned about the proposal that we sort of be pulled

22   back in kind of backwards into this process and be pulled

23   back into it with a very nebulous description of our

24   families.

25          We have taken this matter very seriously on behalf

1    of my clients, three, of Jaguar Land Rover North America,

2    Volvo Cars of North America, and the BMW group entities, and

3    they served eight BMW group entities.  At the outset when the

4    subpoena was served in July of last year we came forward and

5    we gave them information on our entities.  It is written, in

6    the record, there is a volume of information that we

7    provided.  We wrote letters, they didn't respond, providing

8    them information about the nature of our companies that we

9    represent and the background and their history.  That's all

10   attached to my declaration and my clients' declarations.

11        The other domestic distributors did the same thing.

12   They undertook their responsibility very seriously.  They had

13   the burden to prove that we had documents and information

14   that should be the subject of a motion to compel.  They did

15   not carry that burden.  We came forward and we produced

16   declarations that explained where documents and information

17   are, and they replied with two paragraphs directed to us,

18   none of which at all addressed the factual issues related to

19   our companies, most of which are very obvious because we are

20   consumer-facing companies and the nature of our operations

21   are very publicly disclosed.  So there is really no genuine

22   need I think here for any further information.

23        The concept that they will go and depose various

24   families of companies and just whatever they have they will

25   have to give to us, we have already answered those questions.

1    For a company like Jaguar Land Rover, and obviously I'm

2    speaking on behalf of a group but I will speak to the ones I

3    know best, they know because it is publicly disclosed, it is

4    on Monroney labels for heaven's sake, it is on every single

5    car, that the cars are made in Coventry, England and the

6    components come from Conventry, England, and if you want to

7    know what the cost of that car is the place to go is

8    Coventry, England.  That's information we provided to them

9    six or nine months ago.  They have done nothing to my

10   knowledge to try to get that information.  There is no reason

11   to burden a company like Jaguar Land Rover North America that

12   sells 14,000 or 15,000 Jaguars a year and 70,000 Land Rovers

13   with additional questions.  They have answered these

14   questions.  To have to go through a 30(b)(6) and an ongoing

15   process after that is inappropriate.

16          The same carries forward for other companies that

17   are similarly situated, Volvo, Porsche and others, who

18   basically have put forth in the record, the cars are made by

19   a company outside of the United States, they don't have

20   information on the component and assembly costs, they don't

21   factor them into their own setting of cost.  So in terms of

22   Mr. Williams' kind of notion what they need is the full chain

23   of information, these people can maybe put some information

24   in the middle but without that other information the record

25   is clear that it is divorced and not relevant, but they've

1    donated two paragraphs to try to address that point in their

2    reply briefs.  And the point there is that this information

3    isn't like hidden, it is very obvious.

4         To the extent that there may be a question, you

5    know, for a BMW or Mercedes has a plant physically here in

6    the United States, you know, for BMW I have told them -- I

7    told them going back into August and July of last year, I put

8    it in writing, and it is in the letters in the record, and

9    the reality is those cars that are manufactured in the United

10   States are primarily for sale outside of the United States

11   and they are sold to a German corporation which may allocate

12   some of them back to the United States at a price -- so there

13   is a whole disconnect between this organization but it is all

14   documented in the record that is before you.  And basically

15   they are trying to come back and say we want to burden these

16   folks who have taken their obligation seriously, put this

17   information before the Special Master, and say effectively

18   regardless of your de minimis size for those that -- and I

19   don't want to take Mr. Tucker's points away, but for those

20   who are really truly de minimis size, you know, selling

21   70,000 Volvos in a high water-mark year or less than 50,000

22   Porsches, this is not -- this is not the stuff they really

23   need.  They don't need to burden those companies.

24        And for the ones where the information is outside

25   of the United States, their responsibility when they served

1    these subpoenas was to serve the OEMs if they really wanted

2    that information.  They elected not to.  And frankly the

3    burden the domestic distributors who have come forward and

4    laid this all out at this point to say we need more

5    information, well, I mean, maybe they feel they need more

6    information because they don't believe what we have said or

7    what actually is out in the public record but, you know, as I

8    said, you go into any car lot, look at the Monroney label on

9    these cars, figure out where they are made, and understand

10   that they come from outside of the United States.  If you

11   want the information -- two-thirds of the information that

12   they want relates to outside of the United States.

13         The end payor information that they want is not

14   stuff that the domestic distributors would have, and to

15   burden them with depositions and then the concept that after

16   those depositions further discovery when it is pretty fairly

17   established on the record that is before you that what they

18   have is in the middle and they don't have any other pieces,

19   and that information divorced from the other pieces is just

20   one link in the chain and when they have no other parts of

21   the chain they don't need what we have.

22         SPECIAL MASTER:  What you are suggesting -- what

23   I'm hearing is the deposition of your people is going to be

24   very quick?

25         MR. SAVRIN:  Well, in one sense it might be but in

```
 1    the other sense the issue is now -- they have said -- they
 2    served eight BMW entities, they served a bank, they served an
 3    insurance company that all it does is resell a third-party's
 4    insurance, and I don't want to take too much away from what
 5    Mr. Ashby is going to say, and then they say, okay, bring
 6    them all together, bring in one designee for all of their
 7    records.
 8              SPECIAL MASTER:  I heard them say that with respect
 9    to non-core, which would be the bank?
10              MR. SAVRIN:  Right.
11              SPECIAL MASTER:  As long as they have got the
12    information from a parent they are fine with that?
13              MR. SAVRIN:  The parent is in Germany and they
14    didn't do anything.
15              SPECIAL MASTER:  The parent is in Germany so you
16    don't have it.  Like I said, I think the deposition is going
17    to be relatively quick, they don't have the information.
18              MR. SAVRIN:  It is a burden, it is a cost on my
19    client when they have already put forward -- put before you
20    in the record the answer to that, and so it is basically
21    something in my mind kind of a burden on us for no practical
22    purpose, and frankly I'm -- I would respond perhaps if they
23    had invited us and let us know they wanted to include us in
24    the mix for these depositions then we could have had a more
25    informed discussion on that point.  They basically stood up
```

```
 1   at the rostrum here and announced to us for the first time as
 2   we sat here that they were pulling us backward into this.
 3   Quite frankly that isn't the way I thought it was going, and
 4   if there is a sense that there is a need for some of these
 5   and these might be productive I would say let them go forward
 6   with the 30(b)(6)s against the other entities, the entities
 7   that had been talking to them earlier today, and hold those
 8   in abeyance as to us and see whether that process works and
 9   whether any of our information after that process is done is
10   at all necessary.  I think that would be the better course
11   here rather than to drag us into this maelstrom of
12   depositions in a very short period of time where our clients
13   would have to expend significant resources on counsel and
14   other matters unless -- even if they were going to bear the
15   cost I think it would be inequitable, but I don't hear them
16   saying they would bear the cost.
17           SPECIAL MASTER:  I heard Mr. Williams say that he
18   would hold -- with the exception of Subaru, he would hold the
19   small entities until the last, and it may be that he reaches
20   a point where he's gotten enough information in the 30(b)(6)
21   out of the main OEMs that he never gets to you.  I don't
22   know.
23           MR. SAVRIN:  Right.  And so I think maybe the
24   appropriate course here is to hold those in abeyance and then
25   after they have conducted those come back, and if we can't
```

1    agree to the conduct of the further ones, they come back and

2    request you to reconsider and open us up for those

3    depositions, but not to conduct them now.

4              SPECIAL MASTER:  Thank you, Counsel.

5              MR. SAVRIN:  Thank you.

6              SPECIAL MASTER:  Next?

7              MR. TUCKER:  Thank you, Special Master.

8    Robert Tucker with Baker Hostetler.  I represent the

9    Mitsubishi entities, but I'm here to argue on behalf of the

10   smaller SCC opposition.

11             We are here because you believe that there is

12   insufficient evidence before you to decide whether or not to

13   grant or deny various portions of the motions before you, and

14   therefore the parties want to proceed with 30(b)(6)

15   depositions of the various entities to find out what data

16   they have and what documents they have so that you can then

17   make a determination.

18             But the point of the smaller SCC argument is that

19   even if they took that deposition, they found every piece of

20   data we have, where it is, how far back it is maintained, and

21   then we even produced all of that data and documents, the

22   evidence that is before the Court is that that evidence is

23   going to be statistically insignificant to the parties.

24             The smaller SCCs each represent 2.1 percent of

25   total sales market, and when you look at what actually

1   matters here, the vehicles that those entities would have

2   even assembled in the United States that were then

3   substantially sold in the United States, they are less than

4   two percent of the entire market, and for those vehicles

5   those entities didn't even procure all the parts for those

6   vehicles.  So what we are talking about is documents and data

7   that does not only have huge holes in it but that is going to

8   be statistically irrelevant to any analysis that the experts

9   of the parties are going to conduct, and that is evidence

10  that is before the Court, and that is evidence that has gone

11  unrebutted by the parties.

12          It is the parties' burden here to demonstrate that

13  they have met -- that they need documents and data from the

14  SCCs.  We have demonstrated that they don't, and that

15  evidence that we have submitted hasn't indicated to the

16  contrary.

17          Now, I heard three points that were made as to why

18  they need documents from the smaller entities.  One is the

19  reasons were laid out in their brief.  We don't believe they

20  were.  In fact, the motion to compel devoted one paragraph to

21  the smaller entities.  Their replies, the defendants again

22  just one paragraph, and the end payor less than a page.  They

23  are not focusing us, they weren't in the briefs, they haven't

24  met their burden to demonstrate a need for documents from the

25  smaller SCCs, but not only have they not met that burden, and

1    we have put forth evidence to the Court, we have also put

2    forth evidence that demonstrates that these -- even sitting

3    for a 30(b)(6) deposition is going to be extremely burdensome

4    to our clients.  These topics are fairly broad and, in fact,

5    I heard at the end of a lot of topics "and others".  I'm not

6    even sure what that means and how broad that can be

7    interpreted, but essentially we are being asked to put forth

8    witnesses to testify about every single part that was

9    procured and some of these entities didn't even procure any

10   parts.  Every single sale of the vehicle downstream to the

11   dealers and then every single sale of every vehicle

12   downstream to the end payor when they haven't demonstrated

13   that even if they have that information from the smaller

14   entities it would be statistically relevant, the evidence is

15   to the contrary.

16        The second reason is that they said we sell

17   millions of vehicles a year.  That's simply untrue.  The

18   evidence that is also before the Court demonstrates that we

19   don't sell millions of vehicles a year.  For example, my

20   client, Mitsubishi, in 2014 sold around 76,000 vehicles, not

21   millions.  And last year they said they were some of the

22   largest corporations in the world.  Again, this is where the

23   parties want to connect the foreign parents of the smaller

24   distribution SCCs to be the OEMs here, but those aren't the

25   entities they subpoenaed.  They didn't subpoena Mitsubishi

 1   Motor Corporation, they didn't subpoena BMW's foreign parent

 2   in Germany, they subpoenaed the domestic distribution

 3   entities here in the United States.  The simple fact is that

 4   those entities are not very, very large entities.  My client,

 5   for example, has one attorney in its legal department that

 6   handles all of its litigation.  And in the declarations

 7   before the Court you have similar evidence from BMW, similar

 8   evidence from Porsche and Land Rover and Jaguar and Volvo and

 9   other entities that they don't have the sizable legal

10   departments to be able to comply even with this request for a

11   deposition.

12            SPECIAL MASTER:  Counsel, I think I have had enough

13   argument.  I understand and I think I know what I'm going to

14   do.

15            MR. TUCKER:  Thank you.

16            SPECIAL MASTER:  Mercedes.

17            MR. SURPRENANT:  Your Honor --

18            SPECIAL MASTER:  Please identify yourself.

19            MR. SURPRENANT:  Dominic Surprenant, Quinn Emanuel,

20   for the truck and equipment --

21            SPECIAL MASTER:  That's right.

22            MR. SURPRENANT:  And I represent seven Daimler

23   truck entities.  In our opposition, Your Honor, we pointed

24   out, quoting from page 3, here it is impossible to determine

25   whether the discovery that the truck and equipment direct

1    purchasers seek is, quote, proportional to the needs of the

2    case because there is not a line in the motion or memorandum

3    about why the truck and equipment direct purchasers need to

4    have the discovery sought.  It was ignored.  There was not a

5    line.

6         We also argued citing both an affidavit from

7    Mr. Hayes and a Supreme Court case that heavy trucks are

8    specially-ordered products and they are sold in a highly

9    customized way.  And the declaration that I will pull up,

10   Your Honor, from Mr. Hayes, who is the manager of application

11   engineering at Daimler Trucks North America, he first says in

12   paragraph three that the definitions in the subpoena make no

13   sense for heavy equipment manufacturers because it is highly

14   customized, paragraph three.

15        Paragraph four, it is a short declaration so I'm

16   going to read two paragraphs.  Similarly the parties' request

17   corresponds to a purchasing and sales process typical for

18   passenger vehicles but not for the highly customized process

19   used by the Daimler truck entities.  Unlike passenger

20   vehicles, Daimler's trucks are built according to

21   specifications designed on a case-by-case basis in close

22   collaboration with each particular dealer and customer.  Over

23   the past year truck sales orders have been generated from two

24   to six vehicles on average, and those orders include custom

25   requirements.  The most basic negotiations will require the

1    customer to select dozens of distinct option codes at the

2    highest level of customization.  There are hundreds of

3    customer-selectable options for each vehicle.  On the most

4    popular highway truck track model there are over 500 possible

5    configurations for just cylinder fuel tanks, for just the

6    fuel tanks.

7            And here is the most important paragraph.  As each

8    truck is customized to the particular needs of the customer,

9    manufacturing costs of different trucks can vary by tens of

10   thousands of dollars.  The prices charged to customers are

11   also individually negotiated and depend on a number of

12   customer-specific factors.  Given that they would have been

13   intimately involved in the design and the specification as

14   well as negotiations of the price of each truck, they likely

15   already have what information is relevant.

16           And so what we said is is the subpoena, which is

17   designed for automotive vehicles, makes little, if any, sense

18   when applied to heavy truck manufacturers, and there was not

19   a line -- not a line in -- they didn't carry their burden

20   whatsoever.  They don't dispute in their reply that there was

21   not a line in the moving papers why the information sought

22   from the truck and equipment subpoenaed parties was relevant,

23   why they needed it.  They can't possibly show its

24   proportionate needs of the case without a line of support,

25   and we called them on it in our opposition.

1      So what they say in their reply, Your Honor, is

2   really astonishing.  They don't respond to Mr. Hayes'

3   declaration, they ignore it.  What they say is the truck and

4   equipment respondents also assert that the motion must be

5   denied because there is not a line in the motion to compel

6   describing why the subpoenaed information is relevant

7   specifically to the truck and equipment direct purchaser

8   claims.

9      They then say, however -- this is their entire

10  discussion, Mr. Special Master.  However, the subpoenaed

11  documents and data are relevant to the truck and equipment

12  direct purchasers' claims for the same reasons they are

13  relevant to substantially similar claims raised by other

14  plaintiffs' classes, reasons that have been described at

15  length in the motion to compel.

16      That's no answer at all.  We called them on it.

17  This is very, very different.

18      SPECIAL MASTER:  Counsel, let me just interrupt you

19  at this point because the issue that is currently before me

20  now is no longer the motion to compel and the opposition to

21  the motion.

22      MR. SURPRENANT:  Okay.

23      SPECIAL MASTER:  The only issue before me now,

24  because I have dictated it, is go out, moving parties, and

25  explore from the opposing parties what data is available to

1  them that is readily accessible, that is relevant and that is

2  not burdensome.  You have been arguing the substance of the

3  opposition to the motion to compel.  All I am doing is I'm

4  working on creating a discovery program on discovery.  All

5  right.  That's -- so I understand your argument on the

6  substance of the opposition.  I'm not getting to it, I'm not

7  going to address that.

8              MR. SURPRENANT:  Respectfully, Special Master, you

9  are.  You are proposing to order my seven Daimler truck

10  entities to incur substantial burden preparing one witness to

11  describe what data exists for seven companies when the

12  plaintiffs -- when the issuing parties have totally failed,

13  totally failed, not a line, there is not a line explaining

14  why they get any discovery from the truck entities I

15  represent.  There must be some showing by the issuing parties

16  that there is some relevance to this.  This would be a

17  substantial burden, Your Honor, and at the very minimum -- I

18  mean, I just think it should be denied.  I understand your

19  Special Master's point, I understand it, and I think it might

20  be relevant for some of the other entities, but not for the

21  truck entities.

22              There has been a wholesale complete absence by the

23  issuing parties to justify any discovery whatsoever, so it is

24  not as if they say well, we justified discovery but we

25  haven't provided the Special Master with sufficient

1    information to where he can intelligently draw the line and

2    so we are going to get some more information.  I understand

3    that, that may be a sensible path forward but not for the

4    truck and equipment entities where they have completely

5    failed to say a single word why they need discovery from us.

6    This will not be simple, it will not be inexpensive, it will

7    be cumbersome, and they have to do something.  I mean, it has

8    just been a complete failure to justify any discovery.

9            SPECIAL MASTER:  Thank you, Counsel.  I appreciate

10   your argument.

11           MR. SURPRENANT:  Thank you.

12           SPECIAL MASTER:  All right.  Sir, your name and who

13   you represent.

14           MR. ASHBY:  Joseph Ashby of Quinn, Emanuel,

15   Urquhart & Sullivan.  I represent Hyundai AutoEver America

16   and Hyundai Motor America.  I'm rising to speak on behalf of

17   the non-core entities.

18           SPECIAL MASTER:  I don't need to hear your

19   argument, Counsel.  I know what I'm going to do.  All right.

20   Thank you.

21           MR. ASHBY:  Okay.

22           MS. SESSIONS:  Mr. Special Master, Justina Sessions

23   of Keker & Van Nest on behalf of the Honda entities.

24           On behalf of the larger OEMs that were in the

25   discussion with you this morning, this is the first that we

 1   have heard of this proposal, this is the first chance we are

 2   getting to digest these proposed deposition topics which I

 3   think as I have heard them are not limited to the

 4   availability of data but go into a lot of other substantive

 5   issues, but I would propose that as a way to start this

 6   process perhaps that we could begin the depositions as

 7   depositions on written questions because as the topics have

 8   been laid out right now Honda would need to prepare at least

 9   three witnesses, the three people from whom we submitted

10   declarations in the record on the motion to compel, so it is

11   not just a simple matter of putting up one person, so we are

12   talking at least three depositions, and I think that doing

13   this on written questions initially would also alleviate the

14   need to have 7- or even 14-hour depositions in a lot of these

15   cases if these are simple questions of what data do you have,

16   you know, where is it kept, how far back does it go.  We

17   could much more easily answer those in writing under oath,

18   which we could do, rather than doing this in a lengthy

19   deposition process live that would be far more burdensome to

20   the OEMs.

21          SPECIAL MASTER:  Thank you.  All right.  I have had

22   enough.  I know what I'm going to do.

23          Let me preface by stating as I said in my

24   individual meeting with all of the counsel this morning, I

25   have been advised and I believe it to be accurate that this

```
 1    is the largest case currently pending in the United States,
 2    and this subpoena is probably the largest subpoena that has
 3    ever been requested to be enforced anywhere in the United
 4    States.  The reason it is so broad is because the case is so
 5    big.  And as a consequence we have to engage in whatever
 6    measures are appropriate to accelerate the production of
 7    information to make sure we stay within our schedule, to do
 8    what is necessary to keep this case moving forward, and as to
 9    the parties that spoke in opposition I do apologize because
10    we were moving along a track to try to negotiate something
11    and in my estimation we simply ran out of time, we could have
12    been here another full day and we don't have another day to
13    give.
14         It is my decision to convert this into an order,
15    and as I said, I'm going to give you an opportunity to take a
16    look at what the order is and work with the moving parties to
17    come up with something that reflects what I'm about to order
18    and work in perhaps some of your concerns that the moving
19    parties will accept.
20         So that being the case I'm going accept the
21    proposal by the moving parties to take 30(b)(6) depositions.
22    I'm going to accept the fields of inquiry that were presented
23    by the moving parties.  I ask that the moving parties
24    immediately e-mail those fields of inquiry to all counsel in
25    this case so they can get a leg up on what they are going to
```

1    be looking for.  I'm going to cap the deposition time to

2    12 hours.  At this point I'm going to carve out or hold in

3    abeyance the small entities, the distributors, and the

4    non-core.  I'm keeping truck and equipment in.  I just feel

5    that this is only an inquiry into what data is available.

6          It is not a question of -- I'm not making a ruling

7    on whether this subpoena will ever be enforced as to truck

8    and equipment because they may be correct, it is so

9    individualized a transaction that it is inappropriate to put

10   them in this class.

11         On the other hand, I'm only asking that the parties

12   be allotted an opportunity to discover what information is

13   readily discoverable, how it is maintained, how easily

14   accessible it is so that they can make some good-faith

15   negotiations to whittle down the largest subpoena that has

16   ever been issued and perhaps alleviate some of the concerns

17   that have been raised by the OEMs that have to comply with

18   this subpoena.

19         With respect to the people that I have carved out,

20   you are not off the hook, you will be coming back.  There is

21   going to be clearly another motion on this matter after the

22   30(b)(6) depositions are concluded and the parties will

23   naturally reach an impasse on what discovery can and cannot

24   be produced.  You are going to be back, and at that time I

25   will address the entities that I have carved out.  I will

1   also entertain the truck and equipment manufacturers' motion

2   at that point to be carved out as well.

3           I believe that the request of four weeks to get the

4   witnesses prepared is reasonable.  And I think 45 days is

5   also a reasonable period of time within which to complete

6   these depositions.

7           I am sure with the caliber of counsel in this room

8   if you need another ten days there should be no problem in

9   getting an extension from opposing counsel to get these done

10  in 55 days instead of 45.

11          I would ask that somebody on the moving side

12  prepare an order to that effect, that it be given to the

13  opposing counsel for their review and their input, and that

14  if they can agree, that it be submitted to me for entry.  If

15  they cannot agree then I would ask that you give me the order

16  and that the opposing parties give me a red-lined proposition

17  where they set forth their arguments for or against an

18  addition or deletions, and I will finalize what I think the

19  most appropriate order at that time.  Please recall you have

20  to include the stipulation that this order will be subject to

21  appeal before Judge Battani pursuant to the order appointing

22  me Special Master in August of 19 -- it feels like 19 -- of

23  2014.  I feel like it is 19 something.  All right.  Are we

24  clear on that?

25          MR. WILLIAMS:  We are mostly clear.  One question,

1    Your Honor.  As to the small --

2              SPECIAL MASTER:  Wait, wait, I want Subaru in.

3              MR. WILLIAMS:  Thank you.

4              SPECIAL MASTER:  I'm sorry.  It is in my notes and

5    I didn't hit it.

6              MR. HEMLOCK:  Thank you very much, Your Honor.

7    Just two quick things.  One, we will prepare a draft of the

8    order, we will get that around as soon as possible.  Two, if

9    we could just ask that you order expedited briefing on any

10   objection from the OEMs that would be obviously helpful.

11             SPECIAL MASTER:  What is the normal -- so let's

12   assume that we get an order a week from today, it is entered,

13   what would be the normal objection period?

14             MR. CAROME:  Normally it would be 21 days.

15             SPECIAL MASTER:  What are you proposing?

16             MR. CAROME:  Ten days.

17             MR. KASS:  We would like at least 14, Your Honor.

18             SPECIAL MASTER:  All right.  14 days is fine.

19             Mr. Williams, is that indigestion you are

20   suffering?

21             MR. WILLIAMS:  Figuratively only because we

22   appreciate the rulings, our time is very constrained for the

23   auto dealers and the end payors.

24             SPECIAL MASTER:  It is four days, it is four days I

25   have given them.  Thank you, sir.

```
 1              Yes, ma'am?  Please identify yourself.

 2              MS. KINGSLEY:  Your Honor, Meredith Kingsley on

 3     behalf of Hatci, KMMG and HMMA.

 4              With respect to the one deponent who will be

 5     speaking on behalf of this OEM family, will they be required

 6     to speak on behalf of members of the family who you have said

 7     are now held in abeyance?

 8              SPECIAL MASTER:  No.  If we are talking non-core

 9     entities, no, they will not be required to speak on behalf of

10     non-core entities.

11              MS. KINGSLEY:  And domestic distributors and

12     small --

13              SPECIAL MASTER:  And domestic distributors and

14     small entities, that's right.

15              MS. KINGSLEY:  So they are only required to speak

16     on behalf of one or a part of the family, not the entire

17     family?

18              SPECIAL MASTER:  That's correct.

19              MS. KINGSLEY:  Okay.

20              SPECIAL MASTER:  That's correct.  Make sure that's

21     in the order, please, that they are carved out.

22              MR. CHERRY:  Your Honor, can I speak to that?

23              I don't think we anticipated one person.  I mean,

24     they may need an upstream person, a downstream person.  They

25     should bring whoever is necessary to address the topic.
```

1          SPECIAL MASTER:  I understand that.  I assume that

2    given the nature of her client one person may suffice in her

3    case, but you are correct, when you go through the list of

4    topics you may need an upstream person and a downstream

5    person, you may need a salesperson, you may need a procuring

6    person, you may need somebody in finance or accounting.

7          MR. CHERRY:  Yes.  And the same with respect to a

8    corporate family, if there is an entity that does the

9    procurement at a manufacturing level, there is an entity that

10   does the sales at a different level, they should bring people

11   who can address that for the corporate family.

12         SPECIAL MASTER:  Understood.

13         MR. CHERRY:  Yes.

14         SPECIAL MASTER:  That would be my intentions.

15         MR. CHERRY:  Thank you.

16         SPECIAL MASTER:  Yes, ma'am?

17         MS. SESSIONS:  I'm sorry.  Just to clarify, the

18   time limits, does that apply per family or does that apply

19   per witness, and then with the idea of bringing --

20         SPECIAL MASTER:  It is per witness.

21         MS. SESSIONS:  It is per witness?

22         SPECIAL MASTER:  Per witness, correct.

23         MS. SESSIONS:  Okay.  So if Honda has to put up

24   three --

25         SPECIAL MASTER:  They get 36 hours.

Motion Hearing before the Special Master • March 24, 2016

1          MS. SESSIONS:  Okay.

2          SPECIAL MASTER:  They get not more than 36 but not

3  more than 12 per witness, so if they take three they only

4  have 24 on the other two.

5          MS. SESSIONS:  Okay.  Understood.  Thank you.

6          SPECIAL MASTER:  Mr. Williams?

7          MR. WILLIAMS:  I am going to make two comments.

8  One, certainly I can speak for all of us, we will use as

9  little time as we can with these witnesses.

10          My next topic is on a different issue, which is if

11  we are done with the depositions one aspect of this motion

12  that we think could be resolved because it doesn't relate to

13  any of this is the Department of Justice productions, and we

14  would ask that be ordered.

15          SPECIAL MASTER:  Yes.  Mr. Williams, one of us is

16  having a senior moment because as I recall you stood up here

17  about an hour ago and argued the Department of Justice

18  production with the counsel for General Motors, and I ordered

19  it.

20          MR. WILLIAMS:  Correct, as to General Motors.  I

21  just want to be certain as to any of the others --

22          SPECIAL MASTER:  It is as to all of the OEMs, they

23  have to produce their DOJ information with the caveats that

24  we discussed in your order.

25          MR. WILLIAMS:  Thank you very much.

1          MR. KASS:  Your Honor, I just would like to address

2     the last -- not the DOJ but the time limit issue.  I think

3     that, you know, they need a set amount of information to

4     understand the systems.  The number of people we need to put

5     up really shouldn't change the total amount of time they need

6     to examine the witnesses, and it really does impact the

7     number of witnesses that frankly you are willing to put up if

8     you know each one is going to be subject to 12 hours.  We

9     would suggest there should be a cap.  It can be 12 -- you can

10    have 12 hours per witness but there needs a cap per OEM

11    family at least we believe, and we think that cap should be

12    not more than 14 hours.  There is no reason why they can't go

13    through all of the -- through all of the -- whatever

14    witnesses need to be put up and ask the questions that relate

15    to their area.

16          SPECIAL MASTER:  Can you understand, however, the

17    nature of the inquiry is such that with respect to Daimler

18    they would need somebody in the procurement area, they would

19    need somebody in the sales area, they would probably need

20    somebody in the pricing area, whether that's in accounting or

21    finance, whatever, they would need at least three different

22    individuals to address these topics.

23          MR. KASS:  I would expect them to need two, maybe

24    three, people.  I think when you asked originally how long --

25    you asked the parties how long they would need, they said

1    14 hours and that was with the concept they would address the

2    five areas that they needed to cover and they believed they

3    could cover those five areas in that amount of time.  So if

4    you want to give them a little bit extra, but to give them

5    12 hours to cover each one of those areas I think is

6    excessive.

7            SPECIAL MASTER:  Mr. Williams, your thoughts?

8            MR. WILLIAMS:  Your Honor, I think on behalf of all

9    the moving parties we would agree to 14 hours for all of the

10   topics we are talking about today, and if there is any

11   instance where we think there might be a need for more when

12   we talk --

13           SPECIAL MASTER:  So if there's three witnesses you

14   are dividing the 14 hours among the three?

15           MR. WILLIAMS:  We will divide the 14 hours and if

16   for any reason that's not sufficient then we will try to work

17   it out and bring it to you if we cannot.

18           SPECIAL MASTER:  Counsel, is that acceptable?

19           MR. KASS:  That is, Your Honor.

20           SPECIAL MASTER:  We will revise the order that way.

21   Anything else?  It has been a long -- oops.  Mr. Martini is

22   calling me.

23           MR. FENSKE:  Me too, Your Honor.  Dan Fenske from

24   Mitsubishi Electric.  Just one housekeeping matter.

25           I understand Your Honor is not entertaining

1    argument on the settlement privilege issue.  I just wanted to

2    understand, was your Your Honor planning to issue some sort

3    of ruling on that separately or --

4         SPECIAL MASTER:  No.  What is going to happen is

5    the reason I declined to address that is because it has been

6    my experience that ruling on it could have a cascading effect

7    on future negotiations.  It is my hope that when the moving

8    parties find out what is available in the system of the OEMs

9    that negotiations will begin in a professional manner, and my

10   hope is that the negotiations will go beyond not just the

11   data that is available but let's start talking about the

12   settlement privilege issue, let's start talking about the

13   attorney-client privilege issue.  I'm not going to rule on it

14   today because I want to encourage negotiations that are going

15   to occur in approximately 60 days or 75 days to be full and

16   robust, and that's why I'm deferring it.  I specifically am

17   not ruling on it.  I'm not ruling on the motion to compel.

18        MR. FENSKE:  Understood.  Thank you, Your Honor.

19        SPECIAL MASTER:  Are we done?  I want to thank you

20   all, it has been a long day, but you have been very

21   professional and I appreciate the way you have dealt with me.

22   Thank you.

23        (Proceedings concluded at 4:42 p.m.)

24                     _   _   _

25

*CERTIFICATION*

I, Robert L. Smith, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages comprise a full, true and correct transcript taken in the matter of Automotive Parts Antitrust Litigation, Case No. 12-2311, on Thursday, March 24, 2016.


                              *s/Robert L. Smith*
                              Robert L. Smith, RPR, CSR 5098
                              Federal Official Court Reporter
                              United States District Court
                              Eastern District of Michigan



Date:   03/25/2016

Detroit, Michigan