Exhibit O

**Gangnes, Larry**

| | |
|---|---|
| **From:** | Papelian, Joseph E <joseph.e.papelian@delphi.com> |
| **Sent:** | Friday, January 29, 2016 9:41 AM |
| **To:** | Gangnes, Larry |
| **Cc:** | Frantangelo, Barbara K; Yeager, Judy; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R. |
| **Subject:** | Antitrust Wire Harness - Discovery Requests / Response |

Larry:

I am responding to your 01/24/16 and 01/28/16 emails. I have included my comments after yours. I am **not** available next week and suggest we speak on **Tuesday, Feb 8 at 11:30 AM Eastern Time**. By copy of this email to Judy Yeager I am asking she schedule a conference call on Feb 8 at 11:30 AM Eastern Time.

Thank you,

Joe
248 813-2535

## Please note this information relates to Wire Harness documents / data in North America only.

1. Delphi to advise whether they have received approval from Finance to allow a 3rd party vendor to review and download 2006 – 2014 SAP data.

    *Gangnes Comment (01/24/16): meaning transactional data for all purchases and sales of Wire Harness Products (as defined in plaintiffs' complaints) for whatever period such data exists up to December 31, 2014.*

    **We never agreed to Wire Harness <u>Products</u> - just Wire Harnesses. We confirmed that pre-2006 data (which was stored by GM) no longer exists.**

2. Delphi to determine the timing and cost to review and produce the 2006 – 2014 SAP data in-house.

    *Gangnes Comment (01/24/16): same as above.*

    **We never agreed to Wire Harness <u>Products</u> - just Wire Harnesses. We confirmed that pre-2006 data (which was stored by GM) no longer exists.**

3. Delphi to determine the timing and cost to search for, review and produce KE30 sales summaries and, if they exist, similar purchase summaries, for 2006 – 2014.

    *Gangnes Comment(01/24/16): meaning monthly KE30 summaries of all sales of Wire Harness Products for whatever period such summaries exist or can be generated up to December 31, 2014, and similar summaries of monthly purchases of Wire Harness Products, if they exist or can be generated.*

> **We never agreed to Wire Harness <u>Products</u> - just Wire Harnesses.  We confirmed that pre-2006 data (which was stored by GM) no longer exists.**

4. Delphi to determine the timing and cost to search for, review, and produce DPRG packages from 2010 – 2014.

> *Gangnes Comment(01/24/16):  meaning DPRG packages pertaining to (a) all RFQ responses or bids for the sale of Wire Harness Products or (b) other sales of Wire Harness Products, including sales made on a sole sourcing basis.  In our January 19 call, you said that Delphi would conduct this search at no cost to the parties.  We understand from your Oct. 28, 2015 email to Omar Ochoa that Delphi has already conducted a search for such DPRG packages for the period prior to 2011 and located 28,000 documents.*

> **We never agreed to Wire Harness <u>Products</u> - just Wire Harnesses.  We agreed to provide responsive DRPG documents that were previously collected for the DOJ investigation (up through mid-2010), and advised there are approximately 28,000 documents.  However, those documents still need to be reviewed by contract attorneys at an hourly rate of approximately $32.00 an hour.  Using a fairly typical calculation:  28,000 documents divided by 37.5 documents an hour = 746.66 hours x $32.00 = approximately $24,000.  Delphi internal employees would search for mid-2010 – 2014 documents at no cost, but those documents would then have to be reviewed by contract attorneys at the rate noted above.**

5. Delphi to determine the period of time for which it has relevant invoices, as well as the timing and cost to search for, review, and produce such documents.  I mentioned we have a sample invoice that we will provide to you if an overall agreement is reached.

> *Gangnes Comment(01/24/16):  meaning invoices for all sales of Wire Harness Products for whatever period they exist up to December 31, 2014.*

> **We never agreed to Wire Harness <u>Products</u> - just Wire Harnesses.  We confirmed that pre-2006 data (which was stored by GM) no longer exists. .**

6. Delphi to respond regarding purchases or sales of Wire Harness[es] *Products* to the nine (9) companies identified in Larry Gangnes' 12/14/15 email.

> *Gangnes Comment(01/24/16):  meaning Wire Harness <u>Products</u>.*

> **We never agreed to Wire Harness <u>Products</u> - just Wire Harnesses.  We confirmed that pre-2006 data (which was stored by GM) no longer exists. .**

> **Please note the following:**

| Mexican Industries | Not a Delphi Packard customer |
| --- | --- |

| | |
|---|---|
| **Paesano Connecting Systems** | **Not a Delphi Packard customer** |
| **Craft-co** | **Not a Delphi Packard customer** |
| **Findlay Industries** | **In the early 2000s, there was a dedicated Tier One sales group and this was a small harness customer.  However, this was before 2007 when Delphi Packard began migrating SAP, so there would be available data** |
| **Cesar-Scott** | **Not a Delphi Packard customer** |
| **Martinez Manufacturing** | **Not a Delphi Packard customer** |
| **Thermtrol** | **Not a Delphi Packard customer** |
| **South Star** | **Not a Delphi Packard customer** |
| **Collins & Aikman** | **In the early 2000s, there was a dedicated Tier One sales group and this was  harness customer.  However, this was before 2007 when Delphi Packard began migrating SAP, so there would be available data** |

7. Delphi to advise whether it is willing to provide declarations from the business people as to the authenticity of its documents as business records.

8. Delphi to advise whether it is willing to provide a list of custodians for the documents it produced to the DOJ.

> *Gangnes Comment(01/24/16):  Please note that you agreed to provide such a list in your Oct. 28 email.*

> **In our September 28, 2015 email we agreed Delphi would create a list identifying the custodians of the documents produced to the DOJ in the wire harness matter.  But that assumes we reach closure on all open issues.**

Miscellaneous:

> *Gangnes Comment:  Please note also that we are still seeking the other categories of documents mentioned in your July 30, 2015 email, including Delphi's 5-year revenue plans for whatever period such plans exist up to December 31, 2014.*

> **Our email of July 30, 2015 indicated we would search for the following, assuming we reach closure on all open issues:**
> - **Purchase orders not included in the DPRG packages**
> - **Relevant 5-Year Revenue Plans**
> - **Delphi's Delegation of Authority Policy**

- **Training materials related to antitrust**
- **Delphi's Code of Conduct**
- **Delphi's DPRG Process**

**From:** Gangnes, Larry [mailto:GangnesL@LanePowell.com]
**Sent:** Thursday, January 28, 2016 6:27 PM
**To:** Papelian, Joseph E
**Cc:** Frantangelo, Barbara K; Yeager, Judy; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** RE: Antitrust Wire Harness - Discovery Requests

Joe,

We would propose a follow-up call next week on Tuesday, Feb. 2, at 8:30 a.m. ET or 4:30 p.m. ET.  Please let us know if either of these times work for you.

Regards.

**Larry Gangnes | Lane Powell PC**
**Shareholder | Bio | vCard**
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Friday, January 22, 2016 12:35 PM
**To:** Gangnes, Larry; blondon@fklmlaw.com; evelyn@cuneolaw.com
**Cc:** Frantangelo, Barbara K; Yeager, Judy
**Subject:** Antitrust Wire Harness - Discovery Requests

Larry, Billy and Evelyn:

This email follows the conference call this afternoon attended by:  Larry Gangnes (counsel for Furukawa), Billy London (counsel for Direct Purchasers) and Evelyn Li (counsel for Auto Dealers); and Barb Frantangelo and me on behalf of Delphi Automotive Systems, LLC (Delphi). This was one of several calls we have had over the last several months pertaining to documents you have requested from Delphi in the pending Wire Harness antitrust case before Judge Battani (Case No. 12-md-02311).  As you know, Delphi is **not** a party, and failing an agreement you will need to issue a third party subpoena if you want discovery from Delphi.

Here are the action items we noted from our call today:  Please note this information relates to Wire Harness documents / data in North America only.

1. Delphi to advise whether they have received approval from Finance to allow a 3rd party vendor to review and download 2006 – 2014 SAP data.

2. Delphi to determine the timing and cost to review and produce the 2006 – 2014 SAP data in-house.

3. Delphi to determine the timing and cost to search for, review and produce KE30 sales summaries and, if they exist, similar purchase summaries, for 2006 – 2014.

4. Delphi to determine the timing and cost to search for, review, and produce DPRG packages from 2010 – 2014.

5. Delphi to determine the period of time for which it has relevant invoices, as well as the timing and cost to search for, review, and produce such documents.  I mentioned we have a sample invoice that we will provide to you if an overall agreement is reached.

6. Delphi to respond regarding purchases or sales of Wire Harnesses to the nine (9) companies identified in Larry Gangnes' 12/14/15 email.

7. Delphi to advise whether it is willing to provide declarations from the business people as to the authenticity of its documents as business records.

8. Delphi to advise whether it is willing to provide a list of custodians for the documents it produced to the DOJ.

9. Larry Gangnes to provide Delphi the contact information for Colin Kass, counsel for GM in the Wire Harness matter.

10. Larry Gangnes to provide available dates for a follow-up call the week of February 1, 2016, understanding we are not available the morning of February 5, 2016.  Please coordinate the date with Judy Yeager, who is copied on this email.

Thank you,

Joe Papelian
248 813-2535

*************************************************************************

Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
*************************************************************************

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

*************************************************************************

Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
*************************************************************************

Exhibit P

**Gangnes, Larry**

| | |
|---|---|
| **From:** | Papelian, Joseph E <joseph.e.papelian@delphi.com> |
| **Sent:** | Thursday, February 11, 2016 7:08 AM |
| **To:** | Gangnes, Larry |
| **Cc:** | Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R. |
| **Subject:** | Wire Harness Defendants' Discovery Requests to Delphi - Clarification |
| | |
| **Importance:** | High |

Larry:

Larry:

I write to clarify my email below.

If we reach an agreement, Delphi will extract the 2006 – 2014 SAP data as it relates to wire harnesses, and then share that data with the 3rd party for review.  We are not in a position to allow a 3rd party to extract data directly from SAP or install any 3rd party software for this purpose.

Thank you,

Joe Papelian
248 813-2535


**From:** Papelian, Joseph E
**Sent:** Monday, February 08, 2016 12:41 PM
**To:** 'Gangnes, Larry'
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi
**Importance:** High

Larry:

This is a follow-up to our telephone call this morning.  I want to remind you that Delphi is **not** a party to this case.  In fact, it is a victim!  We have a business to run and your voluminous document requests would detract significantly from time spent running the business.  The following is our final proposal in an effort to reach a compromise and supersedes all previous discussions.  In other words, Delphi does not agree to provide the remainder of information outlined in the various telephone calls and emails regarding this subject.

1. Delphi agrees to allow Ben Zenick of Zencos Consulting with access to Delphi's SAP transactional data as it relates to wire harnesses from 2006 - 2014.  You will pay all costs and fees associated with Zencos Consulting.

2. Delphi's definition of "Wire Harness" is as follows:  automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies and high voltage wiring.

3. A Delphi representative will be made available to Mr. Zenick for guidance and questions, at a rate of $75 per hour, which you agree to pay.

1

4.  Mr. Zenick's review of the data will be scheduled at the convenience of Delphi and its representative.

If you agree with this proposal we will draft a Confidentiality Agreement and forward it to you for your review.

Thank you,

Joe Papelian
248 813-2535


**From:** Gangnes, Larry [mailto:GangnesL@LanePowell.com]
**Sent:** Monday, February 08, 2016 11:52 AM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** RE: Wire Harness Defendants' Discovery Requests to Delphi

Joe,

As mentioned in my Dec. 14 email below, defendants' data vendor is Ben Zenick, co-founder and COO of Zencos Consulting (www.zencos.com) in Cary, North Carolina (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524. I understand that you will be advising us whether Delphi will approve Mr. Zenick and Zencos working with Delphi to extract Delphi's transactional data from its SAP database under an appropriate confidentiality agreement.

Regards.

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com


**From:** Gangnes, Larry
**Sent:** Monday, December 14, 2015 7:25 PM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; barbara.k.frantangelo@delphi.com; Fine, Stephanie
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi

Joe,

Thanks for speaking with me and Stephanie Fine this morning. Our proposal for moving forward with the Wire Harness Defendants' discovery requests to Delphi is summarized below, as you requested.

As discussed, we would like to proceed in two stages. First, we would like to get an estimate of the costs to retain a third-party vendor to extract Delphi's transactional data regarding its purchases of Wire Harness Products ("WHPs") (as defined in plaintiffs' consolidated complaints) from its suppliers and sales of such Products to all OEM and other customers for whatever time periods Delphi maintains such data, as described

in your July 30, September 28, and December 4 emails (attached).  This production would include the monthly KE30 summary sales reports, a sample of which was attached to your July 30 email.  Please let us know the time periods for which Delphi has the KE30 sales reports, including prior to 2006.  You also agreed to see whether Delphi has a monthly summary of its purchases of WHPs.  Finally, please explain the note in the spreadsheet attached to your December 4 email to the effect that:  "SAP data for DEEDS did not start until 2008 and was not completed until Nov 2009 – will have partial data until that time."

As I mentioned, we have located a vendor familiar with SAP databases that is available to extract Delphi's transactional data – Zencos Consulting (www.zencos.com) in Cary, North Carolina.  We have spoken with Ben Zenick, Zencos' co-founder and COO (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524), about obtaining a cost estimate for this project.  To that end, Mr. Zenick will be contacting you for information about the scope of work.  Once we have a cost estimate from Zencos, Defendants will be in a position then to decide whether and how best to proceed with production of the data.

The second discovery stage concerns the production of Delphi's electronic and other documents.  In this regard, we request that Delphi produce the categories of documents described in your July 30 email (attached).  In addition, we understand from our May 23, 2014 telephone conference with you and some of your Delphi colleagues that Delphi can print invoices from a database or produce the database.  You agreed to find out for us the time periods for which Delphi has invoices for its sales of WHPs.  Finally, we would request that Delphi produce any documents it has concerning purchases of WHPs from, or sales of WHPs to, the following Direct Purchaser Plaintiffs (or successors):

1.  Mexican Industries in Michigan, Inc., a now bankrupt Michigan corporation with its principal place of business in Detroit, Michigan;

2.  Paesano Connecting Systems, Inc., a Pennsylvania corporation with its principal place of business in Ridgway, Pennsylvania;

3.  Craft-Co Enterprises, Inc., a Mississippi corporation with its principal place of business in Brandon, Mississippi;

4.  Findlay Industries, Inc., an Ohio corporation with its principal place of business in Findlay, Ohio;

5.  Cesar-Scott, Inc., a Texas corporation with its principal place of business in El Paso, Texas;

6.  Martinez Manufacturing, Inc. ("Martinez"), an Illinois corporation with its principal place of business in Cary, Illinois;

7.   Thermtrol Corporation, the successor to Martinez, an Ohio corporation with its principal place of business in North Canton, Ohio;

8.   South Star Corporation, a Virginia corporation with its principal place of business in Elliston, Virginia; and

9.   ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC, a defunct Michigan limited liability company formerly with its principal place of business in Michigan.

We understand that Delphi proposes to hire contract document reviewers to review Delphi's production to remove any privileged documents.  We also understand from your September 28 email that Delphi has already conducted a search for its DPRG packages for the period prior to 2011 and located about 28,000 responsive documents for such a review.

Again, we would like to see if we and Delphi can come up with a more definitive estimate of the costs of reviewing and producing such documents before Defendants decide to proceed and commit to paying such costs.  We are hopeful that the costs will not approach the $100,000 you estimated earlier.

To that end, we believe that the costs Delphi incurs in reviewing the 2,700 documents (7,500 pages) it has located regarding Ford's CD4 RFQ will be informative.  One of the Defendants has already asked Delphi to proceed with that production.  Once we know the costs of reviewing and producing the CD4 documents, Defendants and Delphi will be in a better position to estimate the costs of reviewing and producing the other documents described above, and Defendants will be able to decide whether and how best to proceed with production of those documents.

Finally, we should mention a few more caveats.  First, our experience with WHP databases has been that there are always follow-up questions about the data and data fields produced.  We would like to be able to pose such questions to Delphi informally and get answers.  Second, Defendants would like to obtain a declaration from the appropriate person(s) at Delphi confirming that the data and documents produced are business records within the meaning of FRE 803(6).  Third, you agreed in your September 28 email to provide us with a list identifying the custodians of the documents produced to the DoJ (which documents have been produced to both Plaintiffs and Defendants).  Please provide us with this list identifying the custodians and the Bates number ranges of the documents produced from their files.  Fourth, based on review of the DPRG packages produced, Defendants would like to reserve their rights to make further narrow, targeted requests for additional documents, if necessary, such as documents relating to a specific RFQ.

We will also be sending this email to Plaintiffs' counsel in an effort to see whether they wish to participate and whether they have any additional requests.

Thank you again for your attention to this matter.  We look forward to hearing from you and moving forward.

Regards.  Larry

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard

4

1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

_____

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

Exhibit Q

## Gangnes, Larry

| | |
|---|---|
| **From:** | Gangnes, Larry |
| **Sent:** | Tuesday, February 16, 2016 11:45 AM |
| **To:** | 'Papelian, Joseph E' |
| **Cc:** | Frantangelo, Barbara K; Davis, Kenneth R.; Bradley, Heidi B.; Hawkes, Peter |
| **Subject:** | Wire Harness Defendants' Discovery Requests to Delphi |
| **Attachments:** | Antitrust Wire Harness - Discovery Requests; Wire Harness Auto Parts - Response to Discovery Requests; 6597661_4.docx |

Joe,

When you and I began discussing the discovery Defendants (and later Plaintiffs) were seeking from Delphi in April 2014, it was our mutual goal to reach an agreement on the discovery Delphi would provide without resort to a subpoena.  That is still Defendants' goal.  However, your emails below last week withdrew all of the discovery Delphi had offered to provide earlier (and as recently as January 22, 2016) (see attached emails) without explanation, except for transactional data relating to wire harnesses.  Unfortunately, that limitation does not provide Defendants with the discovery they need.

Accordingly, we have drafted the enclosed subpoena to Delphi that encompasses all of the documents and data Delphi previously offered to provide.  Nevertheless, we would prefer to see if we can reach agreement with Delphi on the documents and data it will produce informally without a subpoena.  To that end, we are available to discuss the Requests in the draft subpoena with you promptly this week and as usual, ways in which the Requests can be refined to reduce the burden and expense to Delphi and Defendants.

For example, Request Nos. 1 and 4 seek transactional data and "DPRG packages" for the sale of Wire Harness Products as defined in Plaintiffs' operative Amended Complaints.  We are uncertain why it would be more burdensome for Delphi to produce this discovery for sales of all Wire Harness Products as opposed to sales of just wire harnesses, as defined by Delphi, but we are prepared to listen and if possible, attempt to accommodate Delphi's concerns.

Please let us know if Delphi is interested in trying to reach an agreement on providing this discovery without the necessity of a subpoena.

Regards.

**Larry Gangnes | Lane Powell PC**
**Shareholder | Bio | vCard**
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com


**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Thursday, February 11, 2016 7:08 AM
**To:** Gangnes, Larry
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.

1

**Subject:** Wire Harness Defendants' Discovery Requests to Delphi - Clarification
**Importance:** High

Larry:

Larry:

I write to clarify my email below.

If we reach an agreement, Delphi will extract the 2006 – 2014 SAP data as it relates to wire harnesses, and then share that data with the 3rd party for review.  We are not in a position to allow a 3rd party to extract data directly from SAP or install any 3rd party software for this purpose.

Thank you,

Joe Papelian
248 813-2535


**From:** Papelian, Joseph E
**Sent:** Monday, February 08, 2016 12:41 PM
**To:** 'Gangnes, Larry'
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi
**Importance:** High

Larry:

This is a follow-up to our telephone call this morning.  I want to remind you that Delphi is **not** a party to this case.  In fact, it is a victim!  We have a business to run and your voluminous document requests would detract significantly from time spent running the business.  The following is our final proposal in an effort to reach a compromise and supersedes all previous discussions.  In other words, Delphi does not agree to provide the remainder of information outlined in the various telephone calls and emails regarding this subject.

1. Delphi agrees to allow Ben Zenick of Zencos Consulting with access to Delphi's SAP transactional data as it relates to wire harnesses from 2006 - 2014.  You will pay all costs and fees associated with Zencos Consulting.

2. Delphi's definition of "Wire Harness" is as follows:  automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies and high voltage wiring.

3. A Delphi representative will be made available to Mr. Zenick for guidance and questions, at a rate of $75 per hour, which you agree to pay.

4. Mr. Zenick's review of the data will be scheduled at the convenience of Delphi and its representative.

If you agree with this proposal we will draft a Confidentiality Agreement and forward it to you for your review.

Thank you,

Joe Papelian
248 813-2535

**From:** Gangnes, Larry [mailto:GangnesL@LanePowell.com]
**Sent:** Monday, February 08, 2016 11:52 AM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** RE: Wire Harness Defendants' Discovery Requests to Delphi

Joe,

As mentioned in my Dec. 14 email below, defendants' data vendor is Ben Zenick, co-founder and COO of Zencos Consulting (www.zencos.com) in Cary, North Carolina (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524. I understand that you will be advising us whether Delphi will approve Mr. Zenick and Zencos working with Delphi to extract Delphi's transactional data from its SAP database under an appropriate confidentiality agreement.

Regards,

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

**From:** Gangnes, Larry
**Sent:** Monday, December 14, 2015 7:25 PM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; barbara.k.frantangelo@delphi.com; Fine, Stephanie
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi

Joe,

Thanks for speaking with me and Stephanie Fine this morning. Our proposal for moving forward with the Wire Harness Defendants' discovery requests to Delphi is summarized below, as you requested.

As discussed, we would like to proceed in two stages. First, we would like to get an estimate of the costs to retain a third-party vendor to extract Delphi's transactional data regarding its purchases of Wire Harness Products ("WHPs") (as defined in plaintiffs' consolidated complaints) from its suppliers and sales of such Products to all OEM and other customers for whatever time periods Delphi maintains such data, as described in your July 30, September 28, and December 4 emails (attached). This production would include the monthly KE30 summary sales reports, a sample of which was attached to your July 30 email. Please let us know the time periods for which Delphi has the KE30 sales reports, including prior to 2006. You also agreed to see whether Delphi has a monthly summary of its purchases of WHPs. Finally, please explain the note in the spreadsheet attached to your December 4 email to the effect that: "SAP data for DEEDS did not start until 2008 and was not completed until Nov 2009 – will have partial data until that time."

As I mentioned, we have located a vendor familiar with SAP databases that is available to extract Delphi's transactional data – Zencos Consulting (www.zencos.com) in Cary, North Carolina. We have spoken with Ben

Zenick, Zencos' co-founder and COO (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524), about obtaining a cost estimate for this project. To that end, Mr. Zenick will be contacting you for information about the scope of work. Once we have a cost estimate from Zencos, Defendants will be in a position then to decide whether and how best to proceed with production of the data.

The second discovery stage concerns the production of Delphi's electronic and other documents. In this regard, we request that Delphi produce the categories of documents described in your July 30 email (attached). In addition, we understand from our May 23, 2014 telephone conference with you and some of your Delphi colleagues that Delphi can print invoices from a database or produce the database. You agreed to find out for us the time periods for which Delphi has invoices for its sales of WHPs. Finally, we would request that Delphi produce any documents it has concerning purchases of WHPs from, or sales of WHPs to, the following Direct Purchaser Plaintiffs (or successors):

1. Mexican Industries in Michigan, Inc., a now bankrupt Michigan corporation with its principal place of business in Detroit, Michigan;

2. Paesano Connecting Systems, Inc., a Pennsylvania corporation with its principal place of business in Ridgway, Pennsylvania;

3. Craft-Co Enterprises, Inc., a Mississippi corporation with its principal place of business in Brandon, Mississippi;

4. Findlay Industries, Inc., an Ohio corporation with its principal place of business in Findlay, Ohio;

5. Cesar-Scott, Inc., a Texas corporation with its principal place of business in El Paso, Texas;

6. Martinez Manufacturing, Inc. ("Martinez"), an Illinois corporation with its principal place of business in Cary, Illinois;

7. Thermtrol Corporation, the successor to Martinez, an Ohio corporation with its principal place of business in North Canton, Ohio;

8. South Star Corporation, a Virginia corporation with its principal place of business in Elliston, Virginia; and

9. ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC, a defunct Michigan limited liability company formerly with its principal place of business in Michigan.

We understand that Delphi proposes to hire contract document reviewers to review Delphi's production to remove any privileged documents.  We also understand from your September 28 email that Delphi has already conducted a search for its DPRG packages for the period prior to 2011 and located about 28,000 responsive documents for such a review.

Again, we would like to see if we and Delphi can come up with a more definitive estimate of the costs of reviewing and producing such documents before Defendants decide to proceed and commit to paying such costs.  We are hopeful that the costs will not approach the $100,000 you estimated earlier.

To that end, we believe that the costs Delphi incurs in reviewing the 2,700 documents (7,500 pages) it has located regarding Ford's CD4 RFQ will be informative.  One of the Defendants has already asked Delphi to proceed with that production.  Once we know the costs of reviewing and producing the CD4 documents, Defendants and Delphi will be in a better position to estimate the costs of reviewing and producing the other documents described above, and Defendants will be able to decide whether and how best to proceed with production of those documents.

Finally, we should mention a few more caveats.  First, our experience with WHP databases has been that there are always follow-up questions about the data and data fields produced.  We would like to be able to pose such questions to Delphi informally and get answers.  Second, Defendants would like to obtain a declaration from the appropriate person(s) at Delphi confirming that the data and documents produced are business records within the meaning of FRE 803(6).  Third, you agreed in your September 28 email to provide us with a list identifying the custodians of the documents produced to the DoJ (which documents have been produced to both Plaintiffs and Defendants).  Please provide us with this list identifying the custodians and the Bates number ranges of the documents produced from their files.  Fourth, based on review of the DPRG packages produced, Defendants would like to reserve their rights to make further narrow, targeted requests for additional documents, if necessary, such as documents relating to a specific RFQ.

We will also be sending this email to Plaintiffs' counsel in an effort to see whether they wish to participate and whether they have any additional requests.

Thank you again for your attention to this matter.  We look forward to hearing from you and moving forward.

Regards.  Larry

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

Exhibit R

## Gangnes, Larry

| | |
|---|---|
| **From:** | Gangnes, Larry |
| **Sent:** | Friday, February 19, 2016 3:11 PM |
| **To:** | 'Papelian, Joseph E' |
| **Cc:** | 'Frantangelo, Barbara K'; Davis, Kenneth R.; Bradley, Heidi B.; Hawkes, Peter |
| **Subject:** | RE: Wire Harness Defendants' Discovery Requests to Delphi |
| **Attachments:** | Notice of Intent to Serve Subpoenas to Produce Documents.pdf; 2-19-16 L. Gangnes letter to Delphi Automotive Systems.pdf; 2-19-16 L. Gangnes letter to Delphi Connection Systems.pdf |

Joe,

Since we have not heard from you in response to my email below, we gave the enclosed Notice to all counsel in the *Wire Harness Cases* that we would be serving the subpoenas in the Notice on Delphi Automotive Systems, LLC and Delphi Connection Systems US, Inc.  We have also arranged for service of the subpoenas and the enclosed cover letters on the registered agent for Delphi Automotive Systems, LLC and Delphi Connection Systems US, Inc.

We regret that Delphi did not elect to engage with us and that we therefore were forced to issue the subpoenas.  Nevertheless, we renew our offer to discuss the Requests in the subpoenas with you or Delphi's outside counsel promptly next week along with ways in which the Requests can be refined to reduce any burden and expense to Delphi and Defendants.

Please let us know how and when Delphi would like to proceed.

Regards.

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

**From:** Gangnes, Larry
**Sent:** Tuesday, February 16, 2016 11:45 AM
**To:** 'Papelian, Joseph E'
**Cc:** Frantangelo, Barbara K; Davis, Kenneth R.; Bradley, Heidi B.; Hawkes, Peter
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi

Joe,

When you and I began discussing the discovery Defendants (and later Plaintiffs) were seeking from Delphi in April 2014, it was our mutual goal to reach an agreement on the discovery Delphi would provide without resort to a subpoena.  That is still Defendants' goal.  However, your emails below last week withdrew all of the discovery Delphi had offered to provide earlier (and as recently as January 22, 2016) (see attached emails)

1

without explanation, except for transactional data relating to wire harnesses.  Unfortunately, that limitation does not provide Defendants with the discovery they need.

Accordingly, we have drafted the enclosed subpoena to Delphi that encompasses all of the documents and data Delphi previously offered to provide.  Nevertheless, we would prefer to see if we can reach agreement with Delphi on the documents and data it will produce informally without a subpoena.  To that end, we are available to discuss the Requests in the draft subpoena with you promptly this week and as usual, ways in which the Requests can be refined to reduce the burden and expense to Delphi and Defendants.

For example, Request Nos. 1 and 4 seek transactional data and "DPRG packages" for the sale of Wire Harness Products as defined in Plaintiffs' operative Amended Complaints.  We are uncertain why it would be more burdensome for Delphi to produce this discovery for sales of all Wire Harness Products as opposed to sales of just wire harnesses, as defined by Delphi, but we are prepared to listen and if possible, attempt to accommodate Delphi's concerns.

Please let us know if Delphi is interested in trying to reach an agreement on providing this discovery without the necessity of a subpoena.

Regards.

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com


**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Thursday, February 11, 2016 7:08 AM
**To:** Gangnes, Larry
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi - Clarification
**Importance:** High

Larry:

Larry:

I write to clarify my email below.

If we reach an agreement, Delphi will extract the 2006 – 2014 SAP data as it relates to wire harnesses, and then share that data with the 3rd party for review.  We are not in a position to allow a 3rd party to extract data directly from SAP or install any 3rd party software for this purpose.

Thank you,

Joe Papelian
248 813-2535

**From:** Papelian, Joseph E
**Sent:** Monday, February 08, 2016 12:41 PM
**To:** 'Gangnes, Larry'
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi
**Importance:** High

Larry:

This is a follow-up to our telephone call this morning.  I want to remind you that Delphi is **not** a party to this case.  In fact, it is a victim!  We have a business to run and your voluminous document requests would detract significantly from time spent running the business.  The following is our final proposal in an effort to reach a compromise and supersedes all previous discussions.  In other words, Delphi does not agree to provide the remainder of information outlined in the various telephone calls and emails regarding this subject.

1. Delphi agrees to allow Ben Zenick of Zencos Consulting with access to Delphi's SAP transactional data as it relates to wire harnesses from 2006 - 2014.  You will pay all costs and fees associated with Zencos Consulting.

2. Delphi's definition of "Wire Harness" is as follows:  automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies and high voltage wiring.

3. A Delphi representative will be made available to Mr. Zenick for guidance and questions, at a rate of $75 per hour, which you agree to pay.

4. Mr. Zenick's review of the data will be scheduled at the convenience of Delphi and its representative.

If you agree with this proposal we will draft a Confidentiality Agreement and forward it to you for your review.

Thank you,

Joe Papelian
248 813-2535


**From:** Gangnes, Larry [mailto:GangnesL@LanePowell.com]
**Sent:** Monday, February 08, 2016 11:52 AM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** RE: Wire Harness Defendants' Discovery Requests to Delphi

Joe,

As mentioned in my Dec. 14 email below, defendants' data vendor is Ben Zenick, co-founder and COO of Zencos Consulting (www.zencos.com) in Cary, North Carolina (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524.  I understand that you will be advising us whether Delphi will approve Mr. Zenick and Zencos working with Delphi to extract Delphi's transactional data from its SAP database under an appropriate confidentiality agreement.

Regards.

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

**From:** Gangnes, Larry
**Sent:** Monday, December 14, 2015 7:25 PM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; barbara.k.frantangelo@delphi.com; Fine, Stephanie
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi

Joe,

Thanks for speaking with me and Stephanie Fine this morning.  Our proposal for moving forward with the Wire Harness Defendants' discovery requests to Delphi is summarized below, as you requested.

As discussed, we would like to proceed in two stages.  First, we would like to get an estimate of the costs to retain a third-party vendor to extract Delphi's transactional data regarding its purchases of Wire Harness Products ("WHPs") (as defined in plaintiffs' consolidated complaints) from its suppliers and sales of such Products to all OEM and other customers for whatever time periods Delphi maintains such data, as described in your July 30, September 28, and December 4 emails (attached).  This production would include the monthly KE30 summary sales reports, a sample of which was attached to your July 30 email.  Please let us know the time periods for which Delphi has the KE30 sales reports, including prior to 2006.  You also agreed to see whether Delphi has a monthly summary of its purchases of WHPs.  Finally, please explain the note in the spreadsheet attached to your December 4 email to the effect that:  "SAP data for DEEDS did not start until 2008 and was not completed until Nov 2009 – will have partial data until that time."

As I mentioned, we have located a vendor familiar with SAP databases that is available to extract Delphi's transactional data – Zencos Consulting (www.zencos.com) in Cary, North Carolina.  We have spoken with Ben Zenick, Zencos' co-founder and COO (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524), about obtaining a cost estimate for this project.  To that end, Mr. Zenick will be contacting you for information about the scope of work.  Once we have a cost estimate from Zencos, Defendants will be in a position then to decide whether and how best to proceed with production of the data.

The second discovery stage concerns the production of Delphi's electronic and other documents.  In this regard, we request that Delphi produce the categories of documents described in your July 30 email (attached).  In addition, we understand from our May 23, 2014 telephone conference with you and some of your Delphi colleagues that Delphi can print invoices from a database or produce the database.  You agreed to find out for us the time periods for which Delphi has invoices for its sales of WHPs.  Finally, we would request that Delphi produce any documents it has concerning purchases of WHPs from, or sales of WHPs to, the following Direct Purchaser Plaintiffs (or successors):

1. Mexican Industries in Michigan, Inc., a now bankrupt Michigan corporation with its principal place of business in Detroit, Michigan;

2.   Paesano Connecting Systems, Inc., a Pennsylvania corporation with its principal place of business in Ridgway, Pennsylvania;

3.   Craft-Co Enterprises, Inc., a Mississippi corporation with its principal place of business in Brandon, Mississippi;

4.   Findlay Industries, Inc., an Ohio corporation with its principal place of business in Findlay, Ohio;

5.   Cesar-Scott, Inc., a Texas corporation with its principal place of business in El Paso, Texas;

6.   Martinez Manufacturing, Inc. ("Martinez"), an Illinois corporation with its principal place of business in Cary, Illinois;

7.   Thermtrol Corporation, the successor to Martinez, an Ohio corporation with its principal place of business in North Canton, Ohio;

8.   South Star Corporation, a Virginia corporation with its principal place of business in Elliston, Virginia; and

9.   ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC, a defunct Michigan limited liability company formerly with its principal place of business in Michigan.

We understand that Delphi proposes to hire contract document reviewers to review Delphi's production to remove any privileged documents.  We also understand from your September 28 email that Delphi has already conducted a search for its DPRG packages for the period prior to 2011 and located about 28,000 responsive documents for such a review.

Again, we would like to see if we and Delphi can come up with a more definitive estimate of the costs of reviewing and producing such documents before Defendants decide to proceed and commit to paying such costs.  We are hopeful that the costs will not approach the $100,000 you estimated earlier.

To that end, we believe that the costs Delphi incurs in reviewing the 2,700 documents (7,500 pages) it has located regarding Ford's CD4 RFQ will be informative.  One of the Defendants has already asked Delphi to proceed with that production.  Once we know the costs of reviewing and producing the CD4 documents,

Defendants and Delphi will be in a better position to estimate the costs of reviewing and producing the other documents described above, and Defendants will be able to decide whether and how best to proceed with production of those documents.

Finally, we should mention a few more caveats. First, our experience with WHP databases has been that there are always follow-up questions about the data and data fields produced. We would like to be able to pose such questions to Delphi informally and get answers. Second, Defendants would like to obtain a declaration from the appropriate person(s) at Delphi confirming that the data and documents produced are business records within the meaning of FRE 803(6). Third, you agreed in your September 28 email to provide us with a list identifying the custodians of the documents produced to the DoJ (which documents have been produced to both Plaintiffs and Defendants). Please provide us with this list identifying the custodians and the Bates number ranges of the documents produced from their files. Fourth, based on review of the DPRG packages produced, Defendants would like to reserve their rights to make further narrow, targeted requests for additional documents, if necessary, such as documents relating to a specific RFQ.

We will also be sending this email to Plaintiffs' counsel in an effort to see whether they wish to participate and whether they have any additional requests.

Thank you again for your attention to this matter. We look forward to hearing from you and moving forward.

Regards. Larry

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue. Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

*****************************************************************************
Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
*****************************************************************************