Exhibit T

**Gangnes, Larry**

| | |
|---|---|
| **From:** | Gangnes, Larry |
| **Sent:** | Wednesday, February 24, 2016 5:20 PM |
| **To:** | 'Papelian, Joseph E' |
| **Cc:** | Davis, Kenneth R.; Frantangelo, Barbara K; Bradley, Heidi B.; Hawkes, Peter |
| **Subject:** | Wire Harness Defendants' Subpoena to Delphi |

Joe,

As mentioned in my prior emails, we are very interested in discussing with Delphi ways in which the time and expense to Delphi of producing the data and documents requested in the Subpoena can be minimized or mitigated, as well as a schedule for production of Delphi's data and documents that accomplishes those ends, including a reasonable extension of the March 14, 2016 Subpoena compliance date and a phased, rolling production of data and documents, along with a cost-sharing agreement.

One of the ways we believe we can minimize the time and expense to Delphi is to allow our consultant, Ben Zenick, and his firm, Zencos Consulting, access to Delphi's SAP transactional data so that they can extract the data requested with minimal time and expense to Delphi.  Earlier this month, you initially indicated that Delphi would grant Zencos Consulting such access for this purpose.  To that end, Mr. Zenick has asked for the following information about Delphi's SAP transactional data and database:

- What version of SAP has Delphi implemented?
- Has Delphi implemented MDM or BI/DW?
- Do all Wire Harness Products (as defined by Plaintiffs) exist in the same master data implementation?
- Can Delphi provide lookup tables for the product descriptive data mentioned as not available in SAP?
- Please provide or describe any customizations Delphi has added to the base implementation of SAP that may impact this data extraction, and provide any schema, or implementation documentation that Delphi has.
- What SAP components has Delphi licensed (i.e., SAP business connector, idocs, ETL tool, etc)?
- How does Delphi currently access the data today in SAP?
- What underlying database is being used?

This information will permit Mr. Zenick to estimate the time, effort, and expense for Zencos Consulting to extract the requested data and determine any assistance he will need from Delphi to do so.

Finally, in response to your email below, Mr. Zenick does **not** believe that he will have to install any "third-party software" in Delphi's SAP database since it is likely he will be able to use existing Delphi tools to extract the requested data.  The information requested above will help him confirm that this is the case.  He will need to hook up an external drive to extract the data, but Delphi can review the data extracted on the drive before it is sent to Zencos Consulting.  Thus, there is no security risk to Delphi.  And Mr. Zenick has already signed the Exhibit to the Protective Order agreeing to abide by its terms.

We look forward to hearing from you.

Regards.

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Thursday, February 11, 2016 7:08 AM
**To:** Gangnes, Larry
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi - Clarification
**Importance:** High

Larry:

Larry:

I write to clarify my email below.

If we reach an agreement, Delphi will extract the 2006 – 2014 SAP data as it relates to wire harnesses, and then share that data with the 3rd party for review.  We are not in a position to allow a 3rd party to extract data directly from SAP or install any 3rd party software for this purpose.

Thank you,

Joe Papelian
248 813-2535

**From:** Papelian, Joseph E
**Sent:** Monday, February 08, 2016 12:41 PM
**To:** 'Gangnes, Larry'
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi
**Importance:** High

Larry:

This is a follow-up to our telephone call this morning.  I want to remind you that Delphi is **not** a party to this case.  In fact, it is a victim!  We have a business to run and your voluminous document requests would detract significantly from time spent running the business.  The following is our final proposal in an effort to reach a compromise and supersedes all previous discussions.  In other words, Delphi does not agree to provide the remainder of information outlined in the various telephone calls and emails regarding this subject.

1. Delphi agrees to allow Ben Zenick of Zencos Consulting with access to Delphi's SAP transactional data as it relates to wire harnesses from 2006 - 2014.  You will pay all costs and fees associated with Zencos Consulting.

2. Delphi's definition of "Wire Harness" is as follows:  automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies and high voltage wiring.

3. A Delphi representative will be made available to Mr. Zenick for guidance and questions, at a rate of $75 per hour, which you agree to pay.

4. Mr. Zenick's review of the data will be scheduled at the convenience of Delphi and its representative.

If you agree with this proposal we will draft a Confidentiality Agreement and forward it to you for your review.

Thank you,

Joe Papelian
248 813-2535


**From:** Gangnes, Larry [mailto:GangnesL@LanePowell.com]
**Sent:** Monday, February 08, 2016 11:52 AM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; Frantangelo, Barbara K; 'Fine, Stephanie'; blondon@fklmlaw.com; evelyn@cuneolaw.com; Davis, Kenneth R.
**Subject:** RE: Wire Harness Defendants' Discovery Requests to Delphi

Joe,

As mentioned in my Dec. 14 email below, defendants' data vendor is Ben Zenick, co-founder and COO of Zencos Consulting (www.zencos.com) in Cary, North Carolina (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524.  I understand that you will be advising us whether Delphi will approve Mr. Zenick and Zencos working with Delphi to extract Delphi's transactional data from its SAP database under an appropriate confidentiality agreement.

Regards.

**Larry Gangnes | Lane Powell PC**
Shareholder | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com


**From:** Gangnes, Larry
**Sent:** Monday, December 14, 2015 7:25 PM
**To:** Papelian, Joseph E
**Cc:** Davis, Kenneth R.; barbara.k.frantangelo@delphi.com; Fine, Stephanie
**Subject:** Wire Harness Defendants' Discovery Requests to Delphi

Joe,

Thanks for speaking with me and Stephanie Fine this morning.  Our proposal for moving forward with the Wire Harness Defendants' discovery requests to Delphi is summarized below, as you requested.

As discussed, we would like to proceed in two stages.  First, we would like to get an estimate of the costs to retain a third-party vendor to extract Delphi's transactional data regarding its purchases of Wire Harness Products ("WHPs") (as defined in plaintiffs' consolidated complaints) from its suppliers and sales of such Products to all OEM and other customers for whatever time periods Delphi maintains such data, as described in your July 30, September 28, and December 4 emails (attached).  This production would include the monthly KE30 summary sales reports, a sample of which was attached to your July 30 email.  Please let us know the time periods for which Delphi has the KE30 sales reports, including prior to 2006.  You also agreed to see whether Delphi has a monthly summary of its purchases of WHPs.  Finally, please explain the note in the spreadsheet attached to your December 4 email to the effect that:  "SAP data for DEEDS did not start until 2008 and was not completed until Nov 2009 – will have partial data until that time."

As I mentioned, we have located a vendor familiar with SAP databases that is available to extract Delphi's transactional data – Zencos Consulting (www.zencos.com) in Cary, North Carolina.  We have spoken with Ben Zenick, Zencos' co-founder and COO (bzenick@zencos.com; 919-459-4600 x 103; mobile: 919-524-4524), about obtaining a cost estimate for this project.  To that end, Mr. Zenick will be contacting you for information about the scope of work.  Once we have a cost estimate from Zencos, Defendants will be in a position then to decide whether and how best to proceed with production of the data.

The second discovery stage concerns the production of Delphi's electronic and other documents.  In this regard, we request that Delphi produce the categories of documents described in your July 30 email (attached).  In addition, we understand from our May 23, 2014 telephone conference with you and some of your Delphi colleagues that Delphi can print invoices from a database or produce the database.  You agreed to find out for us the time periods for which Delphi has invoices for its sales of WHPs.  Finally, we would request that Delphi produce any documents it has concerning purchases of WHPs from, or sales of WHPs to, the following Direct Purchaser Plaintiffs (or successors):

1.  Mexican Industries in Michigan, Inc., a now bankrupt Michigan corporation with its principal place of business in Detroit, Michigan;

2.  Paesano Connecting Systems, Inc., a Pennsylvania corporation with its principal place of business in Ridgway, Pennsylvania;

3.  Craft-Co Enterprises, Inc., a Mississippi corporation with its principal place of business in Brandon, Mississippi;

4.  Findlay Industries, Inc., an Ohio corporation with its principal place of business in Findlay, Ohio;

5.  Cesar-Scott, Inc., a Texas corporation with its principal place of business in El Paso, Texas;

6. Martinez Manufacturing, Inc. ("Martinez"), an Illinois corporation with its principal place of business in Cary, Illinois;

7. Thermtrol Corporation, the successor to Martinez, an Ohio corporation with its principal place of business in North Canton, Ohio;

8. South Star Corporation, a Virginia corporation with its principal place of business in Elliston, Virginia; and

9. ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman Plastics, LLC, a defunct Michigan limited liability company formerly with its principal place of business in Michigan.

We understand that Delphi proposes to hire contract document reviewers to review Delphi's production to remove any privileged documents. We also understand from your September 28 email that Delphi has already conducted a search for its DPRG packages for the period prior to 2011 and located about 28,000 responsive documents for such a review.

Again, we would like to see if we and Delphi can come up with a more definitive estimate of the costs of reviewing and producing such documents before Defendants decide to proceed and commit to paying such costs. We are hopeful that the costs will not approach the $100,000 you estimated earlier.

To that end, we believe that the costs Delphi incurs in reviewing the 2,700 documents (7,500 pages) it has located regarding Ford's CD4 RFQ will be informative. One of the Defendants has already asked Delphi to proceed with that production. Once we know the costs of reviewing and producing the CD4 documents, Defendants and Delphi will be in a better position to estimate the costs of reviewing and producing the other documents described above, and Defendants will be able to decide whether and how best to proceed with production of those documents.

Finally, we should mention a few more caveats. First, our experience with WHP databases has been that there are always follow-up questions about the data and data fields produced. We would like to be able to pose such questions to Delphi informally and get answers. Second, Defendants would like to obtain a declaration from the appropriate person(s) at Delphi confirming that the data and documents produced are business records within the meaning of FRE 803(6). Third, you agreed in your September 28 email to provide us with a list identifying the custodians of the documents produced to the DoJ (which documents have been produced to both Plaintiffs and Defendants). Please provide us with this list identifying the custodians and the Bates number ranges of the documents produced from their files. Fourth, based on review of the DPRG packages produced, Defendants would like to reserve their rights to make further narrow, targeted requests for additional documents, if necessary, such as documents relating to a specific RFQ.

We will also be sending this email to Plaintiffs' counsel in an effort to see whether they wish to participate and whether they have any additional requests.

Thank you again for your attention to this matter. We look forward to hearing from you and moving forward.

Regards. Larry

**Larry Gangnes | Lane Powell PC**
**Shareholder** | Bio | vCard
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

*****************************************************************************
Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
*****************************************************************************

Exhibit U

**Gangnes, Larry**

| | |
|---|---|
| **From:** | Gangnes, Larry |
| **Sent:** | Friday, March 11, 2016 4:13 PM |
| **To:** | 'Papelian, Joseph E' |
| **Cc:** | Frantangelo, Barbara K; Davis, Kenneth R.; Bradley, Heidi B.; Hawkes, Peter |
| **Subject:** | RE: Furukawa Third Party Subpoena to Delphi |
| **Attachments:** | Wire Harness Defendants' Subpoena to Delphi |

Joe,

We were surprised to receive your email below yesterday.  As you know, we have offered to discuss with you, both before and after the Subpoena was issued, ways in which the time and expense to Delphi of producing the data and documents requested can be minimized or mitigated, as well as a schedule for production of Delphi's data and documents that accomplishes those ends, including a reasonable extension of the March 14, 2016, Subpoena compliance date and a phased, rolling production of data and documents, along with a cost-sharing agreement.

As you also know, the Subpoena encompasses all of the documents and data Delphi previously offered to provide.  For example, Request Nos. 1 and 4 seek transactional data and "DPRG packages" for the sale of "Wire Harness Products" as defined in Plaintiffs' operative Amended Complaints, and Delphi previously offered to provide such data and documents regarding "wire harnesses."  However, because Delphi declined to file objections to the Subpoena (due Tuesday, March 8), and because you have refused to discuss any of the Requests in the Subpoena with us, we simply do not know the extent, if any, that it would be more burdensome for Delphi to produce this discovery for sales of all Wire Harness Products as opposed to sales of just wire harnesses.

Accordingly, we reiterate once again our offer to engage in a meaningful meet/confer with you at your earliest convenience so that we may be informed of whatever objections Delphi may have to the Requests in the Subpoena and discuss ways in which any such objections may be accommodated and resolved.  If Delphi intends to move to quash the Subpoena, we would appreciate the courtesy of a discussion of the grounds for such a motion so that we are then in a position to determine whether concurrence under Local Rule 7.1(a) is warranted or not.

Regards.

**Larry Gangnes | Lane Powell PC**
**Shareholder | Bio | vCard**
1420 Fifth Avenue, Suite 4200
P.O. Box 91302 | Seattle, WA 98111-9402
Direct: 206.223.7036 | Mobile: 206.779.6745
GangnesL@LanePowell.com | www.lanepowell.com

**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Thursday, March 10, 2016 10:22 AM
**To:** Gangnes, Larry
**Cc:** Frantangelo, Barbara K

**Subject:** Furukawa Third Party Subpoena to Delphi
**Importance:** High

Larry:

We are in receipt of your Subpoena served on Delphi Automotive Systems, LLC on February 23, 2016. I write to you seeking concurrence under Local Rule 7.1(a) to either withdraw the Subpoena, or to accept Delphi's proposal in my email of February 11, 2016 (copy attached). In that email I proposed Delphi would extract the 2006 – 2014 SAP transactional data and allow Ben Zenick of Zencos Consulting access to the data. A Delphi representative would be made available to Mr. Zenick for guidance and questions, at a rate of $75 per hour, which you would agree to pay. Please note this offer included Furukawa reimbursing Delphi for its reasonable expenses.

I would appreciate receiving your response by the close of business tomorrow, March 11, 2016. If I don't hear from you I will assume you do not agree,

Sincerely,

Joe Papelian
248-813-2535

**********************************************************************************
Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
**********************************************************************************

2

Exhibit V

**Gangnes, Larry**

| | |
|---|---|
| **From:** | Rubin, Michael A. <Michael.Rubin@APORTER.COM> |
| **Sent:** | Wednesday, January 06, 2016 11:06 AM |
| **To:** | Frantangelo, Barbara K; Papelian, Joseph E |
| **Cc:** | Katherine.Clemons@aporter.com; Brenha, Christina |
| **Subject:** | RE: In re Automotive Parts Antitrust Litigation |

Thank you.  I am available after 3:30 p.m. tomorrow.

_____

Michael A. Rubin
**Arnold & Porter LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743

Office: +1 202.942.6171
michael.rubin@aporter.com
www.arnoldporter.com

**From:** Frantangelo, Barbara K [mailto:barbara.k.frantangelo@delphi.com]
**Sent:** Wednesday, January 06, 2016 1:20 PM
**To:** Rubin, Michael A.; Papelian, Joseph E
**Cc:** Clemons, Katherine; Brenha, Christina
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Mike:

We don't believe a subpoena will be necessary; Joe's email of December 14, 2015 indicated we agreed conceptually with your estimate and that we plan to review the documents for attorney-client privilege and/or highly confidential business information.

Are you free for a short call tomorrow afternoon?  At that time we can discuss the details and potential due dates.

Thanks,

Barb Frantangelo
Senior Legal Assistant – Litigation
Delphi Legal Staff

# DELPHI

5725 Delphi Drive
Troy, MI  48098-2815
MC:  483-400-554
barbara.k.frantangelo@delphi.com
Phone:  248-813-3358
Fax:     248-813-1122

**From:** Rubin, Michael A. [mailto:Michael.Rubin@APORTER.COM]
**Sent:** Tuesday, January 05, 2016 9:41 PM

1

**To:** Papelian, Joseph E
**Cc:** Clemons, Katherine; Frantangelo, Barbara K; Brenha, Christina
**Subject:** Re: In re Automotive Parts Antitrust Litigation

Joe

We have unfortunately run out of time.  Tomorrow we will begin drafting a subpoena to require Delphi to produce the documents Delphi proposes to produce and Fujikura has agreed to pay for Delphi to produce.

Please let us know tomorrow if a subpoena will be unnecessary by providing a date certain by which Delphi will substantially complete of the production of Ford documents.  Based on the volume you have described, we think Feb. 1st is a reasonable date to complete Delphi's review and production but are willing to work with you if Delphi needs a little extra time.  Where the parties agree on the substance, we really think it will be a waste to serve a subpoena but we cannot wait any longer.

Please note that Fujikura's requests are for the Ford case and are separate from the class action requests.   As such, tying them together is not appropriate.

Thank you.

Mike

Thank you and please let us


Michael A. Rubin, Esq.

Arnold & Porter LLP
601 Massachusetts Avenue, NW
Washington, DC. 20001-3743
202-942-6171

On Dec 14, 2015, at 11:43 AM, Papelian, Joseph E <joseph.e.papelian@delphi.com> wrote:

> Michael:
>
> Conceptually we agree with your estimate recognizing some documents may take more time (or less time) to review.  We need to identify those documents that are subject to the attorney client privilege and highly confidential business information.
>
> Earlier today we spoke with Larry Gangnes and Stephanie Fine about producing documents to Furukawa.  Larry promised to send a follow-up email that we will forward to you upon receipt.  Our hope is to combine all the requests into one.
>
> Please call if you have any questions.
>
> Thanks,
>
> Joe

**From:** Rubin, Michael A. [mailto:Michael.Rubin@APORTER.COM]
**Sent:** Friday, December 04, 2015 11:28 AM
**To:** Papelian, Joseph E; Taylor, Laura Cofer
**Cc:** Clemons, Katherine; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Joe

Thank you for the information. Initially, you suggested that the review would have a budget of about $100,000. When we budget a document review by contract attorneys, we estimate 37.5 documents per hour. That works out here to 72 hours, or $2,160. Recognizing that this is an approximation, please confirm that you are anticipating a budget of approximately the same amount.

You also estimated that it would take 2 months to review these documents. A single reviewer working 8 hours a day should get through these in about 2 weeks. Please confirm that is in line with what you are thinking as well.

Finally, subject to the responses above, I think we are in agreement as to the initial production. We obviously will have to review the production and see if there are areas that appear to be missing. As such, we would reserve our right to request follow up information and of course Delphi would reserve all of its rights as to those requests.

Thanks.

Mike

_____

Michael A. Rubin
**Arnold & Porter LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743

Office: +1 202.942.6171
michael.rubin@aporter.com
www.arnoldporter.com

**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Friday, December 04, 2015 11:21 AM
**To:** Taylor, Laura Cofer
**Cc:** Rubin, Michael A.; Clemons, Katherine; Frantangelo, Barbara K
**Subject:** In re Automotive Parts Antitrust Litigation

Laura:

In response to your email, please see the following comments in **bold**:

- We know that Delphi proposed a work plan for responding to the document requests for the broader litigation and estimated the costs of doing so. Is the work you propose to do for CD4 documents included in the work that will be done for the broader litigation, or is it separate from that work? How do the two work plans compare or relate?

- In order to assess the reasonableness of the costs Delphi proposes for the CD4 work, can you please clarify what you mean by "minimal" in terms of collecting the documents? We understood from our prior call that the collection had already occurred. If that understanding is correct, can you please let us know how many documents need to be reviewed and what the overall proposed budget is? What are the rates of your contract attorneys?

> **The CD4 documents have already been collected, and there are approximately 2,700 documents (7,500 pages) to be reviewed. We retain contract attorneys with an hourly fee of around $30.**

- With respect to the comment by Mr. Gruber, we did not understand that he said during the February 2015 meeting that Delphi did not need to submit a bid. Rather, we understood that Mr. Gruber stated that Ford had pre-determined that Delphi would win the CD4 RFQ and that the RFQ process -- in which Delphi did participate -- was used by Ford to test its new GAME model but that it was not a truly competitive process because Ford and Delphi knew in advance that Delphi would be selected as the winner. Can you confirm that this understanding is accurate and that documents concerning this explanation from Mr. Gruber will be included in the production?

> **As stated earlier, although Delphi later became an ABF supplier to Ford, Delphi did submit a quote for the CD4 business against several suppliers. Any information related to the quote process, as well as any documents we locate regarding Delphi's ABF supplier relationship with Ford related to the CD4 program, will be included in the documents to be produced assuming we reach an agreement.**

Thank you,

Joe
248 813-2535


**From:** Taylor, Laura Cofer [mailto:Laura.Taylor@aporter.com]
**Sent:** Monday, November 30, 2015 10:38 AM
**To:** Papelian, Joseph E
**Cc:** Rubin, Michael A.; Clemons, Katherine; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Joe,

I am writing to follow up with you again on my email below. Unfortunately, our deadline for needing these documents is quickly approaching. If we do not hear back from you within the next week, we will have no choice but to subpoena Delphi for the information we have requested and move to enforce the subpoena if necessary.

Please direct all future correspondence to the Fujikura defendants to Mike and my colleague, Katherine Clemons (cc'd). I am leaving the firm later this month.

Sincerely,
Laura

**From:** Taylor, Laura Cofer
**Sent:** Tuesday, October 20, 2015 3:03 PM
**To:** Papelian, Joseph E
**Cc:** Rubin, Michael A.; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Joe,

I wanted to follow up and ask whether you had a chance to consider my questions from August.  We would like to move this process forward as quickly as we can, and appreciate your response.

Thanks,
Laura


**From:** Taylor, Laura Cofer
**Sent:** Monday, August 31, 2015 12:50 PM
**To:** 'Papelian, Joseph E'
**Cc:** Rubin, Michael A.; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Joe,

Thank you for your update.   We have several questions:

- We know that Delphi proposed a work plan for responding to the document requests for the broader litigation and estimated the costs of doing so.   Is the work you propose to do for CD4 documents included in the work that will be done for the broader litigation, or is it separate from that work?   How do the two work plans compare or relate?

- In order to assess the reasonableness of the costs Delphi proposes for the CD4 work, can you please clarify what you mean by "minimal" in terms of collecting the documents?   We understood from our prior call that the collection had already occurred.  If that understanding is correct, can you please let us know how many documents need to be reviewed and what the overall proposed budget is?   What are the rates of your contract attorneys?

- With respect to the comment by Mr. Gruber, we did not understand that he said during the February 2015 meeting that Delphi did not need to submit a bid.  Rather, we understood that Mr. Gruber stated that Ford had pre-determined that Delphi would win the CD4 RFQ  and that the RFQ process -- in which Delphi did participate -- was used by Ford to test its new GAME model but that it was not a truly competitive process because Ford and Delphi knew in advance that Delphi would be selected as the winner.   Can you confirm that this understanding is accurate and that documents concerning this explanation from Mr. Gruber will be included in the production?

Thanks,
Laura


**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Monday, August 31, 2015 12:02 PM
**To:** Taylor, Laura Cofer

**Cc:** Rubin, Michael A.; Frantangelo, Barbara K
**Subject:** In re Automotive Parts Antitrust Litigation

Laura:

This responds to your June 8, 2015, letter (copy attached) and a follow-up to our July 24, 2015 telephone conversation. As we discussed, Delphi will conduct a reasonable search for documents relating to the Ford CD4 program during the 2008-2009 timeframe.

We anticipate the review of documents will take approximately two months, with an additional month to process and produce responsive documents. The cost to Delphi for collecting this information is minimal; the cost for the review will be based on the number of documents collected. As I mentioned during our call, we retain contract attorneys for a nominal fee to review the documents, and we will forward these costs on to you.

During our July 24th call, you also requested documents regarding the CD4 program and Ford's Aligned Business Framework (ABF) Program, which Doug Gruber discussed briefly during our meeting in February 2015. Your understood Mr. Gruber to say that, because Delphi was an ABF supplier, Delphi was not required to submit a bid for this program. That is not accurate. Although Delphi later became an ABF supplier to Ford, Delphi did in fact quote the CD4 business against several suppliers. Information related to this process will be included in the documents we will be producing.

Please contact me if you have additional questions or wish to discuss this further.

Thank you,

Joe Papelian
248 813-2535

**From:** Taylor, Laura Cofer [mailto:Laura.Taylor@aporter.com]
**Sent:** Monday, June 08, 2015 3:51 PM
**To:** Papelian, Joseph E
**Cc:** Rubin, Michael A.
**Subject:** In re Automotive Parts Antitrust Litigation

Joe,

Please see the attached correspondence and let me know if you have any questions.

Sincerely,
Laura Taylor

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com
*************************************************************************
********** Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If

you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
*****************************************************************************
**********

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com
*****************************************************************************
********** Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
*****************************************************************************
**********

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com
*****************************************************************************
********** Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
*****************************************************************************
**********

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com
*****************************************************************************
Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
*****************************************************************************

Exhibit W

**Gangnes, Larry**

| | |
|---|---|
| **From:** | Frantangelo, Barbara K <barbara.k.frantangelo@delphi.com> |
| **Sent:** | Monday, January 25, 2016 9:02 AM |
| **To:** | Michael.Rubin@aporter.com |
| **Cc:** | Papelian, Joseph E |
| **Subject:** | RE: In re Automotive Parts Antitrust Litigation |
| **Attachments:** | Delphi Invoice.pdf |

Mike:

With a hard copy of this email, we are sending to you via Federal Express a DVD containing documents bates numbered DEL_CD4_000001 – DEL_CD4_008234.  The documents are responsive to Laura Cofer Taylor's letter of June 8, 2015, as well as our subsequent discussions and correspondence, and are being produced under our agreement in lieu of a 3rd Party Subpoena in the Wire Harness Antitrust matter.

Please note the documents have been marked "Highly Confidential – Attorneys Eyes Only."  Although we agreed to produce documents on a rolling basis, we were able to complete the review and processing quickly so this will be Delphi's sole production as it relates to the CD4 program.

Attached please find a copy of the invoice from the contract attorney responsible for reviewing the documents.  The total amount is $1,426.00.  Please make the check payable to "Delphi Corporation" and send to my attention at the address below.

Thank you,

Barb Frantangelo
Senior Legal Assistant – Litigation
Delphi Legal Staff

# DELPHI

5725 Delphi Drive
Troy, MI  48098-2815
MC:  483-400-554
barbara.k.frantangelo@delphi.com
Phone:  248-813-3358
Fax:     248-813-1122

**From:** Rubin, Michael A. [mailto:Michael.Rubin@APORTER.COM]
**Sent:** Thursday, January 07, 2016 6:26 PM
**To:** Papelian, Joseph E
**Cc:** Taylor, Laura Cofer; Clemons, Katherine; Frantangelo, Barbara K
**Subject:** Re: In re Automotive Parts Antitrust Litigation

We agree.  Thank you.

Michael A. Rubin, Esq.

Arnold & Porter LLP
601 Massachusetts Avenue, NW
Washington, DC. 20001-3743
202-942-6171

1

On Jan 7, 2016, at 6:01 PM, Papelian, Joseph E <joseph.e.papelian@delphi.com> wrote:

Mike:

Thanks for speaking with us today.  Below is our understanding of what was agreed to during our call:

- Delphi will start its review of the CD4 program documents (approximately 2,700 docs) on Monday, January 11, 2016;
- Delphi estimates the review will take 2-3 weeks, but will contact you if it is determined the review will take longer than anticipated;
- You will let Delphi know your preferred production format;
- Delphi will mark the documents as "Highly Confidential – Attorney's Eyes Only";
- Delphi will make productions to you on a rolling basis;
- Under the Protective Order, you are permitted to share the documents with outside counsel representing parties in this matter with dissemination limited to outside counsel only who are attorney of record (the "Highly Confidential – Attorney's Eyes Only" will remain in place);
- Delphi will forward to you the invoices received by its contract attorney reviewer for reimbursement.  The contract attorney rate charged to Delphi is $31.00 per hour;
- You will reimburse Delphi promptly.

Please let me know if you agree with the above.

Thank you,

Joe Papelian
248-813-2535

**From:** Papelian, Joseph E
**Sent:** Monday, December 14, 2015 11:43 AM
**To:** 'Rubin, Michael A.'; Taylor, Laura Cofer
**Cc:** Clemons, Katherine; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Michael:

Conceptually we agree with your estimate recognizing some documents may take more time (or less time) to review.  We need to identify those documents that are subject to the attorney client privilege and highly confidential business information.

Earlier today we spoke with Larry Gangnes and Stephanie Fine about producing documents to Furukawa.  Larry promised to send a follow-up email that we will forward to you upon receipt.  Our hope is to combine all the requests into one.

Please call if you have any questions.

Thanks,

Joe

2

**From:** Rubin, Michael A. [mailto:Michael.Rubin@APORTER.COM]
**Sent:** Friday, December 04, 2015 11:28 AM
**To:** Papelian, Joseph E; Taylor, Laura Cofer
**Cc:** Clemons, Katherine; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Joe

Thank you for the information.  Initially, you suggested that the review would have a budget of about $100,000.  When we budget a document review by contract attorneys, we estimate 37.5 documents per hour.  That works out here to 72 hours, or $2,160.  Recognizing that this is an approximation, please confirm that you are anticipating a budget of approximately the same amount.

You also estimated that it would take 2 months to review these documents.   A single reviewer working 8 hours a day should get through these in about 2 weeks.  Please confirm that is in line with what you are thinking as well.

Finally, subject to the responses above, I think we are in agreement as to the initial production.  We obviously will have to review the production and see if there are areas that appear to be missing.  As such, we would reserve our right to request follow up information and of course Delphi would reserve all of its rights as to those requests.

Thanks.

Mike

_____

Michael A. Rubin
**Arnold & Porter LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743

Office: +1 202.942.6171
michael.rubin@aporter.com
www.arnoldporter.com

**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Friday, December 04, 2015 11:21 AM
**To:** Taylor, Laura Cofer
**Cc:** Rubin, Michael A.; Clemons, Katherine; Frantangelo, Barbara K
**Subject:** In re Automotive Parts Antitrust Litigation

Laura:

In response to your email, please see the following comments in **bold**:

- We know that Delphi proposed a work plan for responding to the document requests for the broader litigation and estimated the costs of doing so.   Is the work you propose to do for CD4 documents included in the work that will be done for the broader litigation, or is it separate from that work?   How do the two work plans compare or relate?

3

- In order to assess the reasonableness of the costs Delphi proposes for the CD4 work, can you please clarify what you mean by "minimal" in terms of collecting the documents?   We understood from our prior call that the collection had already occurred.  If that understanding is correct, can you please let us know how many documents need to be reviewed and what the overall proposed budget is?   What are the rates of your contract attorneys?

> **The CD4 documents have already been collected, and there are approximately 2,700 documents (7,500 pages) to be reviewed.  We retain contract attorneys with an hourly fee of around $30.**

- With respect to the comment by Mr. Gruber, we did not understand that he said during the February 2015 meeting that Delphi did not need to submit a bid.  Rather, we understood that Mr. Gruber stated that Ford had pre-determined that Delphi would win the CD4 RFQ  and that the RFQ process -- in which Delphi did participate -- was used by Ford to test its new GAME model but that it was not a truly competitive process because Ford and Delphi knew in advance that Delphi would be selected as the winner.   Can you confirm that this understanding is accurate and that documents concerning this explanation from Mr. Gruber will be included in the production?

> **As stated earlier, although Delphi later became an ABF supplier to Ford, Delphi did submit a quote for the CD4 business against several suppliers.  Any information related to the quote process, as well as any documents we locate regarding Delphi's ABF supplier relationship with Ford related to the CD4 program, will be included in the documents to be produced assuming we reach an agreement.**

Thank you,

Joe
248 813-2535


**From:** Taylor, Laura Cofer [mailto:Laura.Taylor@aporter.com]
**Sent:** Monday, November 30, 2015 10:38 AM
**To:** Papelian, Joseph E
**Cc:** Rubin, Michael A.; Clemons, Katherine; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Joe,

I am writing to follow up with you again on my email below.  Unfortunately, our deadline for needing these documents is quickly approaching.  If we do not hear back from you within the next week, we will have no choice but to subpoena Delphi for the information we have requested and move to enforce the subpoena if necessary.

Please direct all future correspondence to the Fujikura defendants to Mike and my colleague, Katherine Clemons (cc'd).  I am leaving the firm later this month.

Sincerely,
Laura

4

**From:** Taylor, Laura Cofer
**Sent:** Tuesday, October 20, 2015 3:03 PM
**To:** Papelian, Joseph E
**Cc:** Rubin, Michael A.; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Joe,

I wanted to follow up and ask whether you had a chance to consider my questions from August.  We would like to move this process forward as quickly as we can, and appreciate your response.

Thanks,
Laura

---

**From:** Taylor, Laura Cofer
**Sent:** Monday, August 31, 2015 12:50 PM
**To:** 'Papelian, Joseph E'
**Cc:** Rubin, Michael A.; Frantangelo, Barbara K
**Subject:** RE: In re Automotive Parts Antitrust Litigation

Joe,

Thank you for your update.   We have several questions:

- We know that Delphi proposed a work plan for responding to the document requests for the broader litigation and estimated the costs of doing so.   Is the work you propose to do for CD4 documents included in the work that will be done for the broader litigation, or is it separate from that work?   How do the two work plans compare or relate?

- In order to assess the reasonableness of the costs Delphi proposes for the CD4 work, can you please clarify what you mean by "minimal" in terms of collecting the documents?   We understood from our prior call that the collection had already occurred.  If that understanding is correct, can you please let us know how many documents need to be reviewed and what the overall proposed budget is?   What are the rates of your contract attorneys?

- With respect to the comment by Mr. Gruber, we did not understand that he said during the February 2015 meeting that Delphi did not need to submit a bid.  Rather, we understood that Mr. Gruber stated that Ford had pre-determined that Delphi would win the CD4 RFQ  and that the RFQ process -- in which Delphi did participate -- was used by Ford to test its new GAME model but that it was not a truly competitive process because Ford and Delphi knew in advance that Delphi would be selected as the winner.   Can you confirm that this understanding is accurate and that documents concerning this explanation from Mr. Gruber will be included in the production?

Thanks,
Laura

---

**From:** Papelian, Joseph E [mailto:joseph.e.papelian@delphi.com]
**Sent:** Monday, August 31, 2015 12:02 PM
**To:** Taylor, Laura Cofer

**Cc:** Rubin, Michael A.; Frantangelo, Barbara K
**Subject:** In re Automotive Parts Antitrust Litigation

Laura:

This responds to your June 8, 2015, letter (copy attached) and a follow-up to our July 24, 2015 telephone conversation.  As we discussed, Delphi will conduct a reasonable search for documents relating to the Ford CD4 program during the 2008-2009 timeframe.

We anticipate the review of documents will take approximately two months, with an additional month to process and produce responsive documents.  The cost to Delphi for collecting this information is minimal; the cost for the review will be based on the number of documents collected.  As I mentioned during our call, we retain contract attorneys for a nominal fee to review the documents, and we will forward these costs on to you.

During our July 24th call, you also requested documents regarding the CD4 program and Ford's Aligned Business Framework (ABF) Program, which Doug Gruber discussed briefly during our meeting in February 2015.   Your understood Mr. Gruber to say that, because Delphi was an ABF supplier, Delphi was not required to submit a bid for this program.  That is not accurate.  Although Delphi later became an ABF supplier to Ford, Delphi did in fact quote the CD4 business against several suppliers.  Information related to this process will be included in the documents we will be producing.

Please contact me if you have additional questions or wish to discuss this further.

Thank you,

Joe Papelian
248 813-2535

**From:** Taylor, Laura Cofer [mailto:Laura.Taylor@aporter.com]
**Sent:** Monday, June 08, 2015 3:51 PM
**To:** Papelian, Joseph E
**Cc:** Rubin, Michael A.
**Subject:** In re Automotive Parts Antitrust Litigation

Joe,

Please see the attached correspondence and let me know if you have any questions.

Sincerely,
Laura Taylor

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com
*******************************************************************************
********** Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If

you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\* Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\* Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*