UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | ) ) ) | 12-md-02311 Hon. Marianne O. Battani |
| _____ | ) ) | |
| ALL PARTS | ) | |
| _____ | ) ) | |
| THIS CASE RELATES TO: ALL CASES | ) ) | |
| _____ | ) | |

## DECLARATION OF PAUL FALETE

I, Paul Falete, declare as follows:

1. I am presently employed by Delphi Automotive Systems, LLC ("Delphi") as the Sales Director, Delphi Electrical Electronic Distribution Systems (DEEDS), North America. I have personal knowledge of the facts set forth in this Declaration and am competent to testify thereto. I make this Declaration pursuant to 28 U.S.C. § 1746 and submit it in support of Delphi's Reply Brief.

2. My responsibilities at Delphi include managing the Sales Function Group, approving all DEEDS quotation packages, developing and hiring talent, and developing processes for the customer business unit teams.

3. Automotive wire harnesses vary greatly by vehicle. The wire harness is proliferated by various features, such as engines, transmissions, fog lamps, power windows, vehicle body style and several other factors.

4. Each individual wire harness for each vehicle is quoted separately. For

example, Delphi's quote for a Toyota Camry wire harness would be completely different from its quote for a Chevrolet Malibu. And, as Larry Gangnes stated in his own Declaration supporting Furukawa's Opposition and Cross-Motion to Compel, Delphi identified for Furukawa the many factors that impact the bid Delphi submits to each customer, including: 1) annual operating income; 2) net present value; 3) payback; 4) anticipated annual price reductions; 5) first-year price per lead; and 6) other relevant factors.

5. The data and documentation comprising of Delphi's quote for each wire harness for the time scope outlined in the Subpoenas would essentially provide Furukawa with Delphi's entire wire harness business.

6. I participated in various meetings and calls regarding the Furukawa requests (Requests) and was part of a team tasked with determining whether the information sought by the Requests was available, where it would be located, and the effort that would be required to collect and provide information responsive to the Requests.

7. The team never informed Furukawa it would take a Delphi employee only two days to conduct a search for DPRG documents post-2011. In fact, we determined it would take two full days to search for the information, which equaled to three to four weeks for a Delphi employee to divert his/her efforts to search for the information in lieu of his/her normal work responsibilities.

8. In addition, I understand Delphi advised Furukawa that Delphi employees would search for mid-2010 – 2014 DRPG documents at no cost, but those documents would then have to be reviewed by contract attorneys and Delphi would require reimbursement of the contract attorney fees.

9. There was never an agreement as to the definition of "wire harness." Delphi identified wire harness as:

Automotive wire harnesses, speed sensor wire assemblies, automotive electrical wiring, lead wire assemblies, and high voltage wiring

This definition is Delphi's working understanding of a wire harness and is commonly used throughout the industry.  Furukawa's definition included several components not part of the wire harness that would have resulted in the search project to grow dramatically in complexity.

I declare under penalty of perjury under the laws of the United States that he foregoing is true and correct.

Executed this 7th day of April, 2016


_____/s/Paul Falete_____
Paul Falete