EXHIBIT "3"

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | **Master File No. 12-md-02311** |
| | Honorable Marianne O. Battani |
| IN RE: WIRE HARNESSES | Case No. 12-cv-00103 |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 12-cv-00203 |
| IN RE: FUEL SENDERS | Case No. 12-cv-00303 |
| IN RE: HEATER CONTROL PANELS | Case No. 12-cv-00403 |
| IN RE: OCCUPANT SAFETY RESTRAINT SYSTEMS | Case No. 12-cv-00603 |
| IN RE: ALTERNATORS | Case No. 13-cv-00703 |
| IN RE: RADIATORS | Case No. 13-cv-01003 |
| IN RE: STARTERS | Case No. 13-cv-01103 |
| IN RE: SWITCHES | Case No. 13-cv-01303 |
| IN RE: IGNITION COILS | Case No. 13-cv-01403 |
| IN RE: MOTOR GENERATORS | Case No. 13-cv-01503 |
| IN RE: STEERING ANGLE SENSORS | Case No. 13-cv-01603 |
| IN RE: HID BALLASTS | Case No. 13-cv-01703 |
| IN RE: INVERTERS | Case No. 13-cv-01803 |
| IN RE: AIR FLOW METERS | Case No. 13-cv-02003 |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 13-cv-02203 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 13-cv-02403 |

1

|  |  |
|---|---|
| IN RE: VALVE TIMING  CONTROL DEVICES | ) ) Case No. 13-cv-02503 ) |
| IN RE: ELECTRONIC  THROTTLE BODIES | ) ) Case No. 13-cv-02603 ) |

**THIS DOCUMENT RELATES TO**
**ALL END-PAYOR ACTIONS**

## OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT

Class members William Thompson, Benjamin Feury, Margaret Marasco, Shawn Odweyer and Sylvia Thompson, hereby object to the proposed class action settlements in the proceeding known as *In Re: Automotive Parts Antitrust Litigation* and in each of the above-named captioned cases (as to each of the settlements with each of the defendants named in each of the cases captioned above). Since there is insufficient information provided by the parties in the Class Notice, it is virtually impossible to identify the information requested for an objection as to specifying the specific price-fixed motor vehicle part and the specific applicable settlement and corresponding culpable settling defendant(s). This problem is exacerbated by the parties given their untenable class definition. The class members listed above have reviewed the Class Notice and settlements referenced in the Notice and find the settlements to be unfair, unreasonable and inadequate. Additionally, each of them purchased and/or leased a motor vehicle during the class period as detailed below:

### *William Thomspon*

Class member William Thompson resides at 8 Lawrence Road in Swampscott,

Massachusetts. His telephone number is (781)598-0683. On June 2, 2013, Mr. Thompson purchased from Prime Honda Saco in Portland, Maine a 2010 Honda Accord EXC, VIN # 5KBCP3F89AB012739, in the amount of $20,718.75, plus fees, maintenance contract, license, etc. for a total financed amount of $23,695.00. Attached is William Thompson's Finance Agreement as proof of his purchase during the relevant time period.

Additionally, on May 15, 2015, Mr. Thompson purchased from Honda Gallery in Massachusetts a 2012 Honda Pilot, VIN # 5FNYF4145XC8049270, in the amount of $28,200.00. Attached is William Thompson's Purchase Agreement as proof of his purchase during the relevant time period.

Additionally, he purchased a Honda Odyssey. Attached is a copy of the Purchase Agreement.

Additionally, during the class period, Mr. Thompson purchased a Ford truck in Massachusetts and will produce a copy of the purchase agreement as a supplement to this objection.

### *Benjamin Feury*

Class member Benjamin Feury resides in Naples, Florida. His telephone number is c/o his undersigned counsel. In 2015, Mr. Feury purchased a 2015 Toyota Corolla in the state of Florida. Mr. Feury also purchased a 2010 Hyundai. The documents supporting the purchases will be served as a supplement to this objection.

### *Margaret Marasco*

Class member Margaret Marasco resides at 5 Pirates Lane in Glouchester, Massachusetts. Her telephone number is (781)598-0683. On November 25, 2005, Mrs. Marasco purchased from Kelly Honda in Lynn, Massachusetts a 2006 Honda Civic Sedan, VIN # 2HGFA16866H501118, in the amount of $19,110. Attached is Margaret Marasco's Finance Agreement as proof of her purchase during the relevant time period.

### *Sean Odweyer*

Class member Shawn Odweyer resides at 207 Shannon Road in Salem, New Hampshire. His telephone number is c/o his undersigned counsel. In 2013, Mr. Odweyer purchased a 2013 Nissan Altima, VIN # set forth on Retail Installment Contract attached hereto, for $22,193. Attached is Sean Odweyer's Retail Installment Contract as proof of his purchase during the relevant time period.

### *Sylvia Thompson*

Class member Sylvia Thompson resides at 68 Shiloh Place in East Baldwin, Maine. Her telephone number is (207)642-4169. In late 2000, she purchased from Ira Toyota in Danvers, Massachusetts a 2000 Toyota Tundra in the amount of $28,000. Attached is Sylvia Thompson's purchase agreement as proof of her purchase during the relevant time period.

Additionally, in 2009, Sylvia Thompson purchased a 2009 Mercedes Benz E350 Wagon, VIN No. WDBUH87X99B389023, in Massachusetts for $61,395. Attached is a copy of her purchase agreement as proof of her purchase during the relevant time period.

4

Further, in 2014, Sylvia Thompson leased a 2014 Subaru Forester in Scarborough, Maine, VIN No. JF2SJAAC4FH460889. She will produce a copy of the lease agreement as a supplement hereto. Further, in 2001, Ms. Thompson purchased a Subaru Outback. She will produce a copy of the agreement as a supplement hereto.

The Court should deny Final Approval to the Settlements due to the many deficiencies and infirmities, including but not limited to the following:

1. The Class definition is so overbroad and grossly unrelated that it lacks any cohesion. Its unwieldy nature results in a huge dilution to persons such as the objectors and other class members that have legitimate claims. By including every single make and model of every motor vehicle purchased between 1998 and 2015, the class includes millions of persons who do not bear any reasonable relationship to the precise liability, causation and damages issues raised in the pending Complaints, and millions of class members, as defined, have not relation to each and every one of the Settlements with the Defendants. This is unfair and unreasonable and will result in enormous dilution to those persons, such as myself, who have legitimate related claims. This issue, alone, requires the denial of each of the Settlements at issue.

2. Because the proposed Settlements demand individualized procedures to determine class membership, the Class is neither ascertainable nor manageable and mini-trials would be necessary to determine class membership, which would overwhelm any reasonably efficient manageability class action mechanism. The inability to determine who is and is not an appropriately related Class Member also means that individual issues predominate over class issues. Defendants have no internal data to identify class member

5

status and, based on Sixth Circuit precedent, it would be an abuse of discretion to certify the Class and grant final approval when individual issues clearly predominate over class issues. The Court should deny Final Approval because the Court cannot ascertain and manage the proposed Class and because individual issues overwhelm and predominate over Class issues.

3. The Class definition is not sufficiently definite and is so overbroad as to not be administratively feasible for the court to determine whether a particular individual is a member of the proposed class. 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997). In the context of these settlements, for a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to specifically related reasonable objective criteria. Here, the Class is defined as anyone who at any time from 1998 to 2015: (1) bought or leased a new motor vehicle in the U.S. (not for resale), or (2) paid to replace one or more of the new motor vehicle parts identified in the settlement agreements (not for resale). The Class definition is overbroad, over inclusive and void of any objective criteria that would put an absent Class Member on notice that his or her rights are before the Court. Because the Class definition is not sufficiently definite, the Court should deny Final Approval.

4. The price-fixed parts which were manufactured by the Defendants, included but were not limited to automotive wire harnesses manufactured by Defendants Fujikura, Lear, KL Sales, Fujikura, Sumitomo and Yazaki for Toyota, Nissan, Honda and others;

alternators, airflow meters, electronic throttle bodies, fuel injection systems, ignition coils, inverters, motor generators, starters and valve timing control devices manufactured by Hitachi ("Hiams") and other settling Defendants for Nissan, Honda, General Motors, Ford, Toyota, Chrysler and Fuji; switches (as defined in the class notice), steering angle sensors and HID ballasts manufactured by Panasonic ("Panasonic") for Toyota and others; radiators and ATF warmers manufactured by T.R.A.D. ("T.RAD") for Honda and others; fuel senders manufactured by Yazaki for General Motors, Chrysler, Toyota and others; heater control panels manufactured by Sumitomo for Toyota and others; instrument panel clusters manufactured by Nippon Seiki and Yazaki; occupant safety systems manufactured by TRW and Autoliv for Toyota and others.

5. The Court should deny Final Approval pursuant to Rule 23(b)(3)(D) because the proposed Settlements create incurable manageability issues, even in the settlement context, that invite mini-trials and fraudulent claims. The function of the Class Action device is to aggregate individual claims for the purpose of judicial and economic efficiency. In order to do so, the Court must be able to ascertain the Class. *See e.g. Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000) (ascertainablity is "essential . . . for a court to decide and declare . . . who will share in any recovery"). "It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims." *Carrera v. Bayer Corp.*, 727 F.3d 300, 310 (3rd Cir. 2013); *see also Jenkins v. White Castle Mgmt. Co.*, No. 12 CV 7273, 2015 WL 832409, *3 (N.D. Ill. Feb. 25, 2015) ("[P]roceeding with an ascertainable class

safeguards the rights of both the parties and absent class members."). "A trial court should ensure that class members can be identified without extensive and individualized fact-finding or 'mini-trials,' a determination which must be made at the class certification stage." *Carrera* at 307 (quoting *Marcus v. BMW of North America LLC*, 687 F.3d 583, 594). Rule 23(b)(3) also requires a finding that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The Court cannot reasonably make such a finding.

The Court must gather the requisite information to ascertain and manage the proposed class. That is not possible here. If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is not appropriate. *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593. Here, the Settlement Administrator has no reliable, reasonable and administratively feasible method for verifying and processing claims, and calculating the amount of the recovery for each Claimant.

The Parties cannot rely on Claimants to self-identify as valid Class Members. *See e.g. Young v. Nationwide; see also Karhu v. Vital Pharmaceuticals, Inc.*, No. 14-11648, 2015 WL 3560722, at *2-4 (11th Cir. June 9, 2015) (holding that plaintiffs cannot satisfy the ascertainability requirement by proposing that class members self-identify, such as with sworn affidavits, without first establishing that self-identification would be administratively feasible and not otherwise problematic). The lack of internal data from Defendants means that the only way the Court and the Administrator could confirm class

8

membership is through the use of either claimant affidavits or mini-trials. Here, based on the Class definition in the proposed Settlement Agreements, anyone could claim class membership and take advantage of settlement relief, which harms valid legitimate Class Members, such as these objectors.

6. The Class Notice and Class Notice Program fail to meet due process requirements and violate the procedural and substantive due process rights of the objectors and other appropriate class members. It is unfair to subject people to a binding judicial proceeding in which their rights or interests are at stake without providing sufficient procedural and substantive safeguards. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). "Ascertainability . . . allow[s] potential class members to identify themselves for purposes of opting out of a class." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013); see also *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 325 (S.D. Ill. 2009) (finding that the ascertainability requirement "is necessary to provide the best notice that is practicable under the circumstances") (internal quotation marks omitted); Manual for Complex Litigation § 21.222 (4th ed. 2004) ("The membership of the class must be ascertainable . . . [b]ecause individual class members must receive the best notice practicable and have an opportunity to opt out . . . ."); 1 Rubenstein, supra note 14, § 3:2, at 157 (explaining that some courts impose an ascertainability requirement to facilitate notice). Since due process also requires the best notice practicable under the circumstances. "Ascertainability is needed for properly enforcing the preclusive effect of a final judgment. The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment,

9

that is, who gets the benefit of any relief and who gets the burden of any loss." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). Ascertainability is supposed to clarify claim preclusion not just for the court, but for potential litigants who need to reach their own conclusion about whether individual litigation is possible. The Third Circuit noted that "[i]f a class cannot be ascertained in an economical and 'administratively feasible' manner[,] significant benefits of a class action are lost." *Carerra*, 727 F.3d 300, 307 (3d Cir. 2013). Here, the Notice provided to the Class is not the best notice practicable because the Class is not clearly defined or related and potential legitimate class members cannot read it, determine class membership, determine specific relatedness issues and decide whether or not to participate in the settlement. The substantive Notice deficiencies are so egregious that they harm any party who may be entitled to participate in each and every one of the Settlements.

7. The Notice Program is also procedurally unfair and violates the due process rights of class members. The program that was designed and implemented was severely deficient, failed to provide individual notice and failed to be disseminated in a manner so as to reasonably reach and put all class members on notice of the existence of the pending Settlements and their rights to participate, object or exclude themselves.

8. The parties have failed to provide any meaningful basis or application of subclasses or reasonable means communicated to class members, for example, failing to identify what specific makes and models contain Defendants' price-fixed products. The Class Notice evidences a complete lack of reasonable cohesion between class members.

9. Class Counsel's request for attorneys' fees and costs should be denied as

excessive, unreasonable and unfair. Class counsel has not met its burden of demonstrating that its fee request of 30% of the settlement benefits is reasonable. *See Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1152 (6th Cir. 1998) ("The district court should pay particularly close attention to counsel's fee requests, because this money comes from the beneficiaries, not from the defendants."). If the Court approves the Settlements, which it should not, the Court should limit Class Counsel's fee award to the value attributed to it as opposed to the Department of Justice. *See, e.g., Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53-54 (2d Cir. 2000) (4% fee awarded, in part because counsel benefitted from work done by federal authorities); *see also Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1259 (C.D. Cal. 1997) (court reduced "benchmark" percentage to 10% due to government's involvement). Class Counsel owes the Department of Justice significant credit; the Department of Justice engaged in significant pre-complaint investigation efforts, prosecuted defendants for their antitrust violations, and secured convictions.

Moreover, as the Supreme Court cautioned in *Amchem, supra*, "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right." *Id.* At 613. Rather than inquiring into whether residents of non-*Illinois Brick*-repealer states share one or more issues in common with class members from repealer states (they do), the Court should first determine who has standing to allege claims for damages against the defendants, and then proceed to determine whether the claims of all such persons can be tried, or resolved, together in a cohesive manageable fashion.

Indeed, a proper class definition should permit a court to determine who is in the

class and who is not. Therefore, a class should be defined in terms of claims, not in broad, general terms, as was done here. The proposed class includes millions of persons who have no claims. Such a class definition guarantees that predominance will be lacking, and that the class is not sufficiently cohesive to warrant adjudication by representation.

Persons who reside in states that do not provide a right to relief are not properly included in a class with persons who reside in states that do. Where persons from both categories of states are combined in one class, commonality and predominance are lacking.

If this class was appropriately narrowed to include only those states that permit indirect purchaser recovery in some form, appropriate eligible class members with standing may recover at least 70% more from the settlement, closer to their maximum treble damages permitted by their state statutes.

The thirty percent (30%) fee award requested by Counsel is also excessive and unfair to class members, and is not based upon a lodestar approach or a lodestar cross-check, and tested for duplication. At thirty percent (30%) of gross recovery, Plaintiffs' Counsel's request also ignores the longstanding principle that fee awards should be reduced when class funds exceed $100 million so that class members can benefit from the economies of scale afforded by class treatment. *See In re Synthroid Marketing Litig.,* 325 F.3d 974, 980 (7th Circuit 2003)("*Synthroid II*"). This lawsuit is hardly the exception to the rule: class counsel's burden was significantly lightened thanks to the Government's cooperation; the case was never tried; and the lodestar has not been tested.

The case law supports the Objector's position. In *Wal-Mart Stores v. Visa U.S.A., Inc.,* (approving district court's fees award of 6.5%), the world's largest retailer led a class

of approximately five million merchants challenging the practices of Visa U.S.A. and MasterCard International as illegal tying arrangements and anti-competitive practices under the Sherman Act, 15 U.S.C. §§ 1, 2. The plaintiff's class sought billions of dollars in damages. *Wal-Mart*, 396 F.3d at 101.

Applying the same percentage methodology recovery to the present case would lead to a similar result. The chasm between 6.5% and 30% of fund fees is too wide not to bend even the tolerance level afforded by the abuse of discretion standard.

Federal Rule 23 promotes not only opportunities for – but efficiency in-class representation. While the size of the present fee request may create an incentive for other litigators to follow, it violates other policy considerations designed to protect absent class members.

Courts police fee awards to assure that the mere size of the class action does not create a fee, whether termed windfall, an improper request for a set aside for future costs, or not, that is based more on the arbitrary size of the class or the recovery, than on the efforts of counsel. *See Goldberger*, 209 F.3d at 52 ("Obviously, it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." (internal quotation omitted)); *In re Prudential Ins. Co.*, 148 F.3d 283, 339 (reducing percentage of fee due to size of fund, explaining "the basis for this inverse relationship is the belief in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel."). A fee reduction is warranted in a megafund case, especially given the unreasonable class definition, terms of the Settlements, and Plaintiffs' Class Counsel urging this unreasonable settlement so as to try

13

and realize an exorbitant fee at the expense of the class. *See, e.g., Six Mexican Workers v. Arizona Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (district courts may consider unusual circumstances that would "indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.").

To the extent that class counsel seeks to use its claimed lodestar amount to justify an upward departure from the megafund benchmark of 17%, the Court must perform a detailed review of class counsel's claimed hours and rates, and not simply accept their asserted lodestar total.

[THIS SPACE WAS INTENTIONALLY]

**CONCLUSION**