EXHIBIT "4"

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| | | |
| IN RE: WIRE HARNESS | : | Case No. 2:12-cv-00103-MOB-MKM |
| IN RE: INSTRUMENT PANEL CLUSTERS | : | Case No. 2:12-cv-00203-MOB-MKN |
| IN RE: FUEL SENDERS | : | Case No. 2:12-cv-00303-MOB-MKM |
| IN RE: HEATER CONTROL PANELS | : | Case No. 2:12-cv-00403-MOB-MKM |
| IN RE: OCCUPANT SAFETY RESTRAINT SYSTEMS | : | Case No. 2:12-cv-00603-MOB-MKM |
| IN RE: ALTERNATORS | : | Case No. 2:13-cv-00703-MOB-MKM |
| IN RE: RADIATORS | : | Case No. 2:13-cv-01003-MOB-MKM |
| IN RE: STARTERS | : | Case No. 2:13-cv-01103-MOB-MKM |
| IN RE: SWITCHES | : | Case No. 2:13-cv-01303-MOB-MKM |
| IN RE: IGNITION COILS | : | Case No. 2:13-cv-01403-MOB-MKM |
| IN RE: MOTOR GENERATORS | : | Case No. 2:13-cv-01503-MOB-MKM |
| IN RE: STEERING ANGLE SENSORS | : | Case No. 2:13-cv-01603-MOB-MKM |
| IN RE: HID BALLASTS | : | Case No. 2:13-cv-01703-MOB-MKM |
| IN RE: INVERTERS | : | Case No. 2:13-cv-01803-MOB-MKM |
| IN RE: AIR FLOW METERS | : | Case No. 2:13-cv-02003-MOB-MKM |
| IN RE: FUEL INJECTION SYSTEMS | : | Case No. 2:13-cv-02203-MOB-MKM |

| | | |
|---|---|---|
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | : | Case No. 2:13-cv-02403-MOB-MKM |
| IN RE: VALVE TIMING CONTROL DEVICES | : | Case No. 2:13-cv-02503-MOB-MKN |
| IN RE: ELECTRONIC THROTTLE BODIES | : | Case No. 2:13-cv-02603-MOB-MKM |

**THIS DOCUMENT RELATES TO**
**ALL END - PAYOR ACTIONS**

### OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT

Class Member, Thomas Saris, hereby objects to the proposed class action settlement in the proceeding known as *In Re: Automotive Parts Antitrust Litigation* as referenced above and as to the defendants with respect to the unique facts of this objector.

My name is Thomas Saris, and I reside at 24 Ames Street, Lynn, Massachusetts 01905, telephone no. (781)598-3531. On August 25, 2010, I purchased from Commonwealth Honda in Lawrence, Massachusetts a 2010 Honda CR-V 5DR 4WD EX-L, VIN # JHLRE4H76AC012755, in the amount of $28,525.00, plus fees, maintenance contract, license, etc. for a total financed amount of $19,866.60, plus a $10,000.00 deposit, for a total final cost in the amount of $29,866.60. Attached as Exhibit "A" is my Motor Vehicle Retail Installment Contract and Honda Automobile Sticker as proof of my purchase during the relevant time period. I am a Class Member. I have reviewed the Class Notice and settlements referenced in the Notice and find the settlements to be unfair, unreasonable and inadequate.

The Court should deny Final Approval due to the many deficiencies of the

Settlements, including:

    1.    The Class definition is not sufficiently definite and is not sufficiently definite so as to be administratively feasible for the court to determine whether a particular individual is a member of the proposed class. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) (citing 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997); see also *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). In the context of these settlements, for a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to specifically related objective criteria. Here, the Class is defined as anyone who at any time from 1998 to 2015: (1) bought or leased a new motor vehicle in the U.S. (not for resale), or (2) paid to replace one or more of the new motor vehicle parts identified in the settlement agreements (not for resale). The Class definition is overbroad, over inclusive and void of any objective criteria that would put an absent Class Member on notice that his or her rights are before the Court. Because the Class definition is not sufficiently definite, the Court should deny Final Approval.

    2.    The Court should deny Final Approval pursuant to Rule 23(b)(3)(D) because the proposed Settlement create incurable manageability issues, even in the settlement context, that invite mini-trials and fraudulent claims. The function of the Class Action device is to aggregate individual claims for the purpose of judicial and economic efficiency. In order to do so, the Court must be able to ascertain the Class. *See e.g. Kent*

*v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000) (ascertainablity is "essential . . . for a court to decide and declare . . . who will share in any recovery"). "It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims." *Carrera v. Bayer Corp.*, 727 F.3d 300, 310 (3rd Cir. 2013); *see also Jenkins v. White Castle Mgmt. Co.*, No. 12 CV 7273, 2015 WL 832409, *3 (N.D. Ill. Feb. 25, 2015) ("[P]roceeding with an ascertainable class safeguards the rights of both the parties and absent class members."). "A trial court should ensure that class members can be identified without extensive and individualized fact-finding or 'mini-trials,' a determination which must be made at the class certification stage." *Carrera* at 307 (internal quotation marks omitted) (quoting *Marcus v. BMW of North America LLC*, 687 F.3d 583, 594). Rule 23(b)(3) also requires a finding that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The Court cannot reasonably make such a finding.

The Court must gather the requisite information to ascertain and manage the proposed class. *See e.g. Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) (affirming class certification where there was a "reliable and administratively feasible" method for assessing class membership). If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is not appropriate. *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593. Here, the Settlement Administrator has no reliable, reasonable and administratively feasible

method for verifying and processing claims, and calculating the amount of the recovery for each Claimant.

The Parties cannot rely on Claimants to self-identify as valid Class Members. *See e.g. Young v. Nationwide; see also Karhu v. Vital Pharmaceuticals, Inc.*, No. 14-11648, 2015 WL 3560722, at *2-4 (11th Cir. June 9, 2015) (unpublished) (holding that plaintiffs cannot satisfy the ascertainability requirement by proposing that class members self-identify, such as with sworn affidavits, without first establishing that self-identification would be "administratively feasible and not otherwise problematic"). The lack of internal data from Defendants means that the only way the Court and the Administrator could confirm class membership is through the use of either claimant affidavits or mini-trials. Here, based on the Class definition in the proposed Settlement Agreements, anyone could claim class membership and take advantage of settlement relief, which harms valid legitimate Class Members. In addition, the Class is overbroad, unrelated, and not cohesive such that tis unwieldy nature results in a huge dilution of persons such as myself and other class members that have legitimate claims. Similarly, some Class Members may want to pursue litigation on their own. Because the proposed Settlements demand individualized procedures to determine class membership, the Class is neither ascertainable nor manageable and mini-trials would be necessary to determine class membership, which would suffocate any reasonably efficient manageability class action mechanism. The inability to determine who is and is not a related and appropriate Class Member also means that individual issues predominate over class issues. Defendants have no internal data to identify class member status and, based on Sixth Circuit

precedent, it would be an abuse of discretion to certify the Class and grant final approval. The Court should deny Final Approval because the Court cannot ascertain and manage the proposed Class and because individual issues predominate over Class issues.

  3. The Class Notice and Class Notice Program fail to meet due process requirements and violate the procedural substantive due process rights of myself and other appropriate class members. It is unfair to subject people to a binding judicial proceeding in which their rights or interests are at stake without providing sufficient procedural and substantive safeguards. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). "Ascertainability . . . allow[s] potential class members to identify themselves for purposes of opting out of a class." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013); see also *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 325 (S.D. Ill. 2009) (finding that the ascertainability requirement "is necessary to provide the best notice that is practicable under the circumstances") (internal quotation marks omitted); Manual for Complex Litigation § 21.222 (4th ed. 2004) ("The membership of the class must be ascertainable . . . [b]ecause individual class members must receive the best notice practicable and have an opportunity to opt out . . . ."); 1 Rubenstein, supra note 14, § 3:2, at 157 (explaining that some courts impose an ascertainability requirement to facilitate notice). Since due process also requires the best notice practicable under the circumstances. "Ascertainability is needed for properly enforcing the preclusive effect of a final judgment. The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss." *Xavier v. Philip Morris USA Inc.*, 787

F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). Ascertainability is supposed to clarify claim preclusion not just for the court, but for potential litigants who need to reach their own conclusion about whether individual litigation is possible. The Third Circuit noted that "[i]f a class cannot be ascertained in an economical and 'administratively feasible' manner[,] significant benefits of a class action are lost." *Carerra*, 727 F.3d 300, 307 (3d Cir. 2013). Here, the Notice provided to the Class is not the best notice practicable because the Class is not clearly defined or related and potential legitimate class members cannot read it, determine class membership, and decide whether or not to participate in the settlement. The Notice deficiencies are so egregious that they harm any party who may be entitled participate in the Settlements.

The parties have failed to provide any meaningful application of subclasses or means communicated to class member to, for example, identify what specific makes and models that contain Defendants' products. The Class Notice evidence a complete lack of reasonable cohesion between class members.

4. Class Counsel's request for attorneys' fees and costs is excessive, unreasonable and unfair. Class counsel has not met its burden of demonstrating that its fee request of 30% of the settlement benefits is reasonable. *See Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1152 (6th Cir. 1998) ("The district court should pay particularly close attention to counsel's fee requests, because this money comes from the beneficiaries, not from the defendants."). If the Court approves the Settlements, which it should not, the Court should limit Class Counsel's fee award to the value attributed to it as opposed to the Department of Justice. *See, e.g., Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53-54 (2d Cir.

2000) (4% fee awarded, in part because counsel benefitted from work done by federal authorities); *see also Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1259 (C.D. Cal. 1997) (court reduced "benchmark" percentage to 10% due to government's involvement). Class Counsel owes the Department of Justice significant credit; the Department of Justice engaged in significant pre-complaint investigation efforts, prosecuted defendants for their antitrust violations, and secured convictions.

As the Supreme Court cautioned in *Amchem, supra*, "Rule 23's requirements must be interpreting in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right." *Id.* At 613. Rather than inquiring into whether residents of non-*Illinois Brick*-repealer states share one or more issues in common with class members from repealer state (they do), the Court should first determine who has standing to allege claims for damages against the defendants, and then proceed to determine whether the claims of all such persons can be tried, or resolved, together.

Indeed, a proper class definition should permit a court to determine who is in the class and who is not. Therefore, a class should be defined in terms of claims, not in broad, general terms, as was done here. The proposed class includes persons who have no claims. Such a class definition guarantees that predominance will be lacking, and that the class is not sufficiently cohesive to warrant adjudication by representation.

Persons who reside in states that do not provide a right to relief are not properly included in a class with persons who reside in states that do. Where persons from both categories of states are combined in one class, commonality and predominance are

lacking.[1]

If this class is appropriately narrowed to include only those states that permit indirect purchaser recovery in some form, objectors stand to recover at least 60% more from the settlement, closer to their maximum treble damages permitted by their state statutes.

The thirty percent (30%) fee award requested by Counsel is excessive and unfair to class members, and is not based upon a lodestar. At thirty percent (30%) of gross recovery, their request also ignores the longstanding principle that fee awards should be reduced when class funds exceed $100 million so that class members can benefit from the economies of scale afforded by class treatment. *See In re Synthroid Marketing Litig.*, 325 F.3d 974, 980 (7th Circuit 2003)("*Synthroid II*"). This lawsuit is hardly the exception to the rule: class counsel's burden was significantly lightened thank to the Government's cooperation; the case was never tried; and the lodestar has not been tested.

The case law supports Objector position. In *Wal-Mart Stores v. Visa U.S.A., Inc.*, (approving district court's fees award of 6.5%), the world's largest retailer led a class of approximately five million merchants challenging the practices of Visa U.S.A. and MasterCard Internation as illegal tying arrangements and anti-competitve practices under the Sherman Acti, 15 U.S.C. §§ 1, 2. The plaintiff's class sought billions of dollars in

---

[1] The dilemma now confronting the Court could have been avoided by the prudent use of subclasses. The parties should have proposed an injunctive relief subclass that includes all indirect purchasers in all 50 states, and a smaller damages subclass that includes the indirect purchasers from the 25 repealer states, as was done in the LCD Litigation and all other indirect purchaser antitrust cases in the Ninth Circuit.

damages. *Wal-Mart*, 396 F.3d at 101.

Applying the same percentage methodology recovery protocol to the present case would lead to a similar result. The chasm between 6.5% and 30% of fund fees is too wide not to bend even the tolerance level affords by the abuse of discretion standard.

The point is that Civil Rule 23 promotes not only opportunities for – but efficiency in-class representation. While the size of the present fee request may create an incentive for other litigators to follow, it violates other policy consideration designed to protect absent class members.

Courts police fee awards to assure that the mere size of the class action does not create a fee, whether termed windfall, set aside for costs, or not, that is based more on the arbitrary size of the class or the recovery, than on the efforts of counsel. *See Goldberger*, 209 F.3d at 52 ("Obviously, it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." (internal quotation omitted)); *In re Prudential Ins. Co.,* 148 F.3d 283, 339 (reducing percentage of fee due to size of fund, explaining "the basis for this inverse relationship is the belief in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel."). While Objectors readily acknowledge a fee reduction is not mandated in every megafund case, neither is a formulaic application of the Ninth Circuit's benchmark. *See, e.g., Six Mexican Workers v. Arizona Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (district courts may consider unusual circumstances that would "indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."); *see also Vizcaino*, 290 F.3d at 1047

(fund size may make 25% benchmark rate "inappropriate…starting point for analysis…")

To the extent that class counsel seeks to use its claimed lodestar amount to justify an upward departure from the megafund benchmark of 17%, the Court must perform a detailed review of class counsel's claimed hours and rates, and not simply accept their asserted lodestar total.

## **CONCLUSION**

For the foregoing reasons, this Court should DENY approval of the proposed settlement class certification and the proposed settlement.