## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | ) ) ) ) | Master File No.:  12-md-02311 Honorable Marianne O. Battani |
| **In Re: All Auto Parts Cases** | ) ) ) | 2:12-MD-02311-MOB-MKM |
| **THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES** | ) ) ) ) | **Oral Argument Requested** |

## CERTAIN SSEs' OBJECTIONS TO THE SPECIAL MASTER'S ORDER REGARDING THE PARTIES' MOTION TO COMPEL DISCOVERY FROM NON-PARTY OEMS AND ORDERING NON-PARTY RULE 30(b)(6) DEPOSITIONS

## ISSUES PRESENTED

1.  Whether the Special Master has authority to dispense with Rule 45 subpoenas when compelling testimony from certain SSEs.

2.  Whether the Special Master has the authority to *sua sponte* compel testimony when there was no discovery dispute presented to the Court, or referred to the Special Master, concerning such depositions.

3.  Whether the Special Master has the authority to vitiate the SSEs' due process and procedural rights to object to a properly served deposition notice (if one could be served) or a Rule 45 subpoena.

4.  Whether the Special Master erred by failing to rule on the Parties' Motions to Compel, which was the only discovery issue properly before the Special Master.

5.  Whether the Special Master erred by not including in his order the provisions requested by the SSEs that would have required the Parties to describe the areas of inquiry with "reasonable particularity," as required by Rule 30(b)(6).

6.  Whether the Special Master erred by not limiting the deposition compulsion order to information necessary to resolve the Parties' Motions to Compel, namely information concerning the location, availability, and burden associated with document subpoena compliance (as opposed to examination relating to the merits of the case).

7.  Whether the Special Master erred by not carving out of his Order the requirement that certain domestic distributor and non-core SSEs provide deposition testimony.

8.  Whether the Special Master erred by not requiring the Parties to provide information needed to address whether there is a substantial need that cannot otherwise be met for the documents sought by their document subpoena, as required by Rule 45(d).

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 45

Fed. R. Civ. P. 53

*Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 960 (6th Cir. 1985)

*Mazur v. Wal-Mart Stores, Inc.*, 2006 WL 7344548 (E.D. Mich. 2006)

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................... 1

II.     THE SPECIAL MASTER LACKS THE AUTHORITY TO *SUA SPONTE*
        ORDER NON-PARTY DEPOSITIONS ........................................................ 5

        A.      The Special Master Lacks Authority to Compel Testimony from Non-
                Parties Without a Rule 45 Subpoena. ..................................................... 5

        B.      The Special Master Lacks Authority to Resolve Discovery Issues that
                Have Not Been Referred To Him. ........................................................... 7

        C.      The Special Master Exceeded His Authority in Denying the SSEs the
                Right to Object to the Deposition Notice............................................... 10

III.    THE SPECIAL MASTER'S DEPOSITION ORDER CONTAINS
        INAPPROPRIATE PROVISIONS AND OMITS NECESSARY ONES ...................... 11

        A.      The Order Fails to Resolve the Only Discovery Dispute Presented...................... 12

        B.      The Order Does Not Limit the Compelled Depositions to their Ostensible
                Purpose.............................................................................................. 13

        C.      The Order Dispenses with the Requirement that the Parties Describe the
                Topics for Examination with "Reasonable Particularity" and Improperly
                Rejects the SSEs' Request for Written Questions. ................................. 14

        D.      The Order Fails to Carve Out Entities Unlikely to Have Relevant
                Information and Whom the Special Master Orally Instructed Be Carved
                Out.................................................................................................... 16

IV.     CONCLUSION................................................................................................ 17

# <u>FULL TABLE OF AUTHORITIES</u>[1]

**CASES**                                                                              **PAGE(S)**

*Brown v. Wesley's Quaker Maid, Inc.*,
    771 F.2d 952 (6th Cir. 1985) ............................................................ 5

*Cremin v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    328 F. Supp. 2d 865 (N.D. Ill. 2004) .............................................. 10

*Gentile v. Mo. Dept. of Corrs. and Human Res.*,
    986 F.2d 214 (8th Cir. 1993) ............................................................ 9

*Hay & Forage Indus. v. Ford New Holland, Inc.*,
    132 F.R.D. 687 (D. Kan. 1990) ........................................................ 6

*Mazur v. Wal-Mart Stores, Inc.*,
    2006 WL 7344548 (E.D. Mich. 2006) ............................................ 6

*Shafer v. Army & Air Force Exch. Serv.*,
    376 F.3d 386 (5th Cir. 2004) ............................................................ 9

*U. S. v. Mandujano*,
    425 U.S. 564 (1976) ........................................................................ 9

**OTHER AUTHORITIES**
Wright, Miller, & Marcus,
    8A Fed. Prac. & Proc. § 2112 (3d ed. 2016) .................................... 5

**RULES**
Fed. R. Civ. P. 26 .................................................................................. 10

Fed. R. Civ. P. 30 ............................................................................ *passim*

Fed. R. Civ. P. 31 .................................................................................. 15

Fed. R. Civ. P. 32 .................................................................................. 10

Fed. R. Civ. P. 37 ............................................................................... 7, 10

Fed. R. Civ. P. 45 ............................................................................ *passim*

Fed. R. Civ. P. 53 ............................................................................... 5, 8

---

[1] Unless otherwise indicated, all emphasis added and internal citations and quotation marks omitted. Exhibits noted are attached to the Declaration of Scott M. Abeles.

## I.  INTRODUCTION

The Special Master's authority is cabined by Rule 53, the Order appointing him, and the Order referring the still-pending dispute over what he called "probably the largest subpoena that has ever been requested to be enforced anywhere in the United States." March 24, 2016 Hrg. Tr. at 41-42 (hereafter, "Hrg. Tr."). The April 20, 2016 Order that certain Specified Subpoenaed Entities ("SSEs") challenge exceeds on its face the bounds of that authority. *See* ECF 1294 (the "Order").[2] The Court should, accordingly, set aside the Order as *ultra vires*. And, to the extent any future order is entered compelling deposition testimony from the SSEs, it should be narrowly tailored to protect the SSEs' substantive and procedural rights.[3]

By way of background, the Specified Subpoenaed Entities, or SSEs, are a group of approximately 120 corporate entities that received the so-called "Uniform OEM Subpoena,"

---

[2] All ECF cites are to 2:12-MD-02311-MOB-MKM.

[3] The following entities join this brief in full: **Chrysler Entities:**  FCA US LLC and Fiat Chrysler Finance North America, Inc.; **Daimler Entities:**  Daimler North America Corp. (MI); Daimler North America Corp. (NJ); Daimler Purchasing Coordination Corp.; Daimler Trucks North America LLC; Daimler Vans Manufacturing, LLC; Daimler Vans USA LLC; Freightliner Custom Chassis Corp.; Mercedes-Benz Advanced Design of North America Inc.; Mercedes-Benz Credit Corp.; Mercedes- Benz Financial Services USA LLC; Mercedes-Benz Research & Development North America, Inc. (CA); Mercedes-Benz Research & Development North America, Inc. (MI); Mercedes-Benz U.S. International, Inc.; Mercedes- Benz USA, LLC; Mitsubishi Fuso Truck of America, Inc.; Thomas Built Buses, Inc.; Western Star Trucks Sales, Inc.; **GM Entities:** General Motors Company; General Motors Financial Company, Inc.; General Motors Holdings LLC; General Motors LLC;   **Honda Entities:** American Honda Motor Co., Inc.; American Honda Finance Corp.; Honda Manufacturing of Indiana, LLC; Honda North America, Inc.; Honda of America Mfg., Inc.; Honda of South Carolina Mfg., Inc.; Honda Precision Parts of Georgia, LLC; Honda R&D Americas, Inc.; Honda Research Institute USA, Inc.; Honda Transmission Manufacturing of America, Inc.; **Hyundai Entities:** Hyundai Motor Manufacturing Alabama, LLC; Hyundai America Technical Center, Inc.; Hyundai Motor America; Hyundai AutoEver America, LLC; Hyundai Capital America; **Kia Entities:** Kia Motors Manufacturing Georgia, Inc.; Kia Motors America, Inc.; **Subaru Entities:** Subaru of America, Inc., Subaru Leasing Corp., Fuji Heavy Industries U.S.A., Inc., Subaru of Indiana Automotive, Inc.; **Toyota Entities:** Toyota Motor Sales, USA, Inc.; and Toyota Motor Engineering & Manufacturing North America, Inc.

The following entities join this brief except as to Issue Presented 4:  **Nissan Entities:** Nissan North America, Inc.; Nissan Design America, Inc. (part of NNA); Nissan Technical Center North America, Inc. (part of NNA); Nissan Diesel America, Inc. (part of NNA); and Nissan Motor Acceptance Corp.

Entities affiliated with GM, Honda, Nissan, and Kia have also filed separate concurrences to this brief.

even though most of those entities are not actually OEMs. After the SSEs received the Subpoena, they collectively approached the Parties to address common concerns and to identify the information for which the Parties had a "substantial need … that cannot otherwise be met." Fed. R. Civ. P. 45(d)(3)(C)(i). The SSEs spearheaded the meet and confer process, organized a global "summit," and proposed a significant document production that would have satisfied the Parties' legitimate need for non-duplicative or cumulative discovery. As the Court has recognized, the SSEs' coordinated efforts were "probably [] very smart," and, indeed, engaging in them preserved the SSEs' own resources and, inevitably, those of the defendants, classes, government plaintiffs, and the Court. *See* ECF 1204, at 70.

Rather than work with the SSEs to identify the materials for which they had a substantial need, the Parties prematurely declared impasse and filed motions to compel.[4] In response, the SSEs explained the tremendous, costly – and unnecessary – burden the Parties sought to impose, since most of the discovery sought was duplicative, cumulative, or unnecessary in light of the information ***already in their possession***. To support this position, the SSEs submitted two expert declarations and ***fifty-six*** detailed and ***uncontested*** fact declarations. ECF 1227.

The instant objections arise out of the motions to compel filed by the Parties and referred to the Special Master, but they are *not* objections to the ruling on the motions referred (ECF 1191). At the hearing set to argue the motions, the Special Master stated that "there simply isn't sufficient information before me today to make a reasonable decision." Hrg. Tr. at 15.

---

[4] The SSE's Opposition to the Parties' Motion to Compel details the Parties' failure to satisfy the good faith conferral obligations imposed by Fed. R. Civ. P. 45(d)(1). *See* ECF 1227. In an email, the Special Master said that he planned to rule without regard to whether the Parties acted in good faith because any remedy for such a failure would merely "kick the can" down the road. Ex. 3. But a Special Master cannot reject an argument that is factually and legally well-grounded in favor of directly imposing his or her concept of what the appropriate amount of non-party discovery ought to be. Rather, as discussed *infra*, a Special Master's authority is limited to resolving the specific legal and factual disputes that have been presented via the parties' briefs and the order of reference.

Ordinarily, the disposition in such a circumstance – when the party with the burden of persuasion has failed to satisfy it – is denial of the motion, with or without leave to refile it.  The motions here, however, remain pending.

The Special Master instead *sua sponte* ordered certain non-party SSEs to provide deposition testimony. He did so even though no deposition subpoenas have been issued, no motions to compel deposition testimony have been filed, no order of reference encompassing deposition discovery has been entered, and no provision of the Order Appointing a Master (ECF 792) or Rule 53 endows the Special Master with this power.

Below we explain why the Special Master lacked the authority to order depositions.  But it bears emphasis that the issue is not academic, and the error is not a foot-fault.  The SSEs are being asked to bear an extraordinary burden, through the Uniform Subpoena, and now the deposition order.  We do understand, as direct victims of the conspiracies, that certain SSEs may have some – largely duplicative – discoverable information.  But the Rules afford the SSEs, as non-parties, certain procedural protections, which cannot be discarded simply because this is a large case.   The SSEs are being asked to bear a much larger discovery burden than any Party – perhaps by orders of magnitude – and this requires that special care be given to ensuring the SSEs' rights are protected, and the Court employ innovative procedures to minimize any unnecessary burden.   Fifty legal entities, organized into nine "OEM Deponent Groups," are subject to these depositions.  Order at § I.E.   At this stage, the SSEs simply ask that all relevant participants, including the Special Master, closely adhere to the Federal Rules and the jurisdictional, discovery, and procedural limits those rules impose.

Even aside from the jurisdictional limits on the Special Master's authority, the Order – a wholesale adoption of the Parties' proposed order – is deficient in many respects.  Many of these

deficiencies could have easily been avoided had he considered the modifications proposed by the SSEs.  *See* Ex. 1 (SSEs' proposed order); *see also* Ex. 2 (setting forth bases for proposed amendments to Parties' proposed order).  But without explanation, the Special Master rejected them all.  This included:

- A provision that would have ruled on the Parties' Motion to Compel, the ***only dispute properly before*** the Special Master.  That provision simply noted that the Special Master was holding the motion in abeyance, as he said he intended to do at the hearing. Ex. 1 at p.2-3.

- Clarification that the Special Master was merely *authorizing* the Parties to issue Rule 45 deposition subpoenas, and not directly compelling testimony from non-parties. Ex. 1, at § II.A.

- A preservation of the SSEs' procedural and due process rights that Rule 30 and 45 afford, including the right to object, which the Special Master has now stripped away. Ex. 1, at § II.A.

- A requirement that the Parties fulfill their obligation under Rule 30(b)(6) to describe the areas of inquiry with "reasonable particularity." Ex. 1, at § II.A-D.

- A limitation on the scope of any Rule 45 deposition subpoena to issues that were directly relevant to the Parties' document subpoena, namely the location, availability, and burden associated with compliance, as opposed to the substantive merits of the case. Ex. 1, at § II.B.  This would have conformed the Order to the Special Master's statements at the hearing and avoided the likelihood of duplicative deposition testimony. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii); (d)(1).

- A provision requiring the Parties also submit information needed to address whether there is any "substantial need" for the documents they have purported to subpoena. Ex. 1, at § III.

- A carve-out for distributor and non-core SSEs for which deposition testimony was unnecessary and unlikely to yield meaningful information concerning the proper scope of document subpoena.  Ex. 1, at § I.F, IV.

Each of these provisions is necessary, either for jurisdictional reasons, the protection of the SSEs' rights, or the efficient resolution of this dispute.  They should not have been disregarded.

## II.   THE SPECIAL MASTER LACKS THE AUTHORITY TO *SUA SPONTE* ORDER NON-PARTY DEPOSITIONS

The Special Master ordered certain SSEs to produce witnesses to testify on a broad range of subjects pursuant to 30(b)(6) deposition notices.  Order, at 8.  But the Special Master was not ruling on a motion to compel compliance with any deposition subpoena.  Nor was he merely *permitting* the Parties to serve Rule 45 deposition subpoenas, attendant with all of the procedural protections that they provide.  Rather, he dispensed with the rights and obligations granted under Rule 45 and then obviated the SSEs' due process rights to "object[] to the [improper] deposition notices" granted by Rule 30.  *Id.*  Doing so was impermissible.

### A.   The Special Master Lacks Authority to Compel Testimony from Non-Parties Without a Rule 45 Subpoena.

The Special Master, like the Court itself, may not depart from the black letter rule that if "the deponent is not a party, and does not consent to attend, his or her attendance must be enforced by a subpoena under Rule 45." Wright, Miller, & Marcus, 8A Fed. Prac. & Proc. § 2112 at 73 (3d ed. 2016).  Accordingly, the Court may not authorize the Special Master to compel non-party depositions without requiring the issuance of a Rule 45 subpoena.  *See Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 960 (6th Cir. 1985) ("parties may procure the attendance of witnesses before the master by the issuance and service of subpoenas as provided in Rule 45") (quoting prior Rule 53(d)).[5]

Compliance with Rule 45 is necessary because – not only is it jurisdictional in nature – it provides many procedural protections to non-parties.  Under the Rule, the subpoena must issue

---

[5] The legislative history of Rule 53 confirms the intuitive point that it was not intended to override Rule 45 protections for non-parties appearing before Special Masters.  Prior Rule 53(d) stated that "parties may procure the attendance of witnesses before the master by the issuance and service of subpoenas as provided in Rule 45." New Rules 53(c) and (d) intended no change.  *See* Rule 53, 2003 Advisory Comm. Notes (describing new Subdivisions (c) and (d) as "simplification[s]" of prior "extensive provisions" that had been "scattered throughout" the Rule).

5

from the court where the action is pending, may not compel compliance more than 100 miles from where the entity regularly transacts business, must be properly served, must include appropriate witness fees, and can only be enforced by the court where the compliance is required (unless transferred).  Fed. R. Civ. P. 45(a)(1)(B), 45(a)(2), 45(a)(3), 45(b), 45(c)(1), 45(d)(a), 45(f).  Without explanation, the Special Master dispensed with Rule 45 altogether, and purported to order depositions upon deposition "notice," a mechanism designed for parties, not non-parties.

Stated plainly, a "[d]eposition notice without a subpoena is not the proper procedure to depose a non-party."  *Mazur v. Wal-Mart Stores, Inc.*, 2006 WL 7344548, *1 (E.D. Mich. 2006) (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 691 (D. Kan. 1990)). Indeed, under Rule 30(g), the Court may not even award sanctions for failing to appear for a deposition if "the noticing party failed to … serve a subpoena on a nonparty."  Fed. R. Civ. P. 30(g).  Likewise, Rule 30(b)(6) itself states that a "*subpoena* must advise a nonparty organization of its duty" under the Rule.  Fed. R. Civ. P. 30(b)(6).  As the Advisory Committee Notes explain, this clarifies that, "[u]nder the rules, a subpoena rather than a notice of examination is served on a non-party to compel attendance at the taking of a deposition."  *Id.*, 1971 Advisory Comm. Notes.  There is no authority, under the Rules of Civil Procedure or elsewhere, to compel a deposition of a non-party through any mechanism other than a Rule 45 subpoena.  As such, the Special Master's Order is *ultra vires* and should be vacated.[6]

---

[6] The Parties claim that they "have agreed to travel to a location convenient to each OEM group to take the 30(b)(6) deposition, which obviates any concerns about convenience of the witness" and removes the need for Rule 45 subpoenas.  *See* April 15, 2016 Email from R. Spiegel to the Special Master.  The SSEs are unaware of the terms of this "agreement," and, in any event, the need for a Rule 45 subpoena is jurisdictional and cannot be obviated just because the Parties agree to *some* of the protections that Rule 45 confers.  In addition, it is worth noting that the Order lumps together entities into various "OEM Deponent Groups," though entities within those groups may be in various locations across the country.  A properly served subpoena would eliminate any ambiguity as to whether each entity within a "Group" will be afforded Rule 45's required protections.

### B.     The Special Master Lacks Authority to Resolve Discovery Issues that Have Not Been Referred To Him.

While the failure to proceed under Rule 45 may be curable with the issuance of such subpoenas, the *sua sponte* ordering of depositions – and the resolution of *potential* disputes concerning their scope – is not.  A Special Master may not resolve discovery disputes *before* they have been properly presented for resolution.  The **only** discovery dispute presented to the Special Master concerns the Parties' *document* subpoena.  Since no Rule 45 *deposition* subpoena has ever been served upon any SSE, neither the Parties nor the SSEs have a ripe dispute concerning any such deposition.  There has been no motion under Rule 45 or Rule 37 to enforce any (hypothetical) Rule 45 deposition subpoena.   As such, the Special Master lacked the authority to issue any ruling concerning the timing, scope, or content of such depositions.

Nor can the Special Master issue an order compelling depositions under the guise of resolving the Parties' motion to compel *documents*.  The Order Appointing A Master expressly limits the Master's "powers and duties … to those specifically" set forth in the order.  ECF 792, at § I.A.[7]  That Order limits any "Master's order … to the issues briefed in the parties' written submissions and/or addressed in their oral arguments."  *Id*., at § I.H.  While the Master has the "discretion to determine the timing and procedures for resolving scheduling and coordination of discovery and class certification *disputes*," he may not issue orders or resolve issues before they become disputes that have been properly submitted to the Court and then "referred to [the Master] by the Court with agreement of the parties."  *Id*., at § I.C.  Because the only dispute

---

[7] As the Advisory Committee explains, "[t]he order appointing a pretrial master is vitally important in informing the master and the parties about the nature and extent of the master's duties and authority."  Fed. R. Civ. P. 53, 2003 Advisory Comm. Notes.  Notably, the Appointment Order here limits the Special Master's "powers and duties … to those specifically" set forth in the order.  ECF 792, at § I.A.

referred to the Special Master was the dispute concerning the *document* subpoena, the Special Master could not anticipatorily resolve deposition disputes.[8]

Nor can the Special Master's order be sustained under Rule 53(c)'s delineation of authority.  That Rule states that "a master may: … *if conducting an evidentiary hearing*, exercise the appointing court's power to compel, take, and record evidence."  Fed. R. Civ. P. 53(c)(1)(C).  But the Special Master has not been tasked with conducting an "evidentiary hearing."  He has been charged with resolving the Parties' Motion to Compel based on the written submissions and oral argument presented.[9]

The Advisory Committee carefully distinguished the Special Master's role in an evidentiary hearing from his role as a discovery referee.  As it explains, "[t]he central function of a *trial* master is to preside over an evidentiary hearing on the merits of the claims or defense in the action.  This function distinguishes the trial master from most functions of pretrial and post-trial masters."  Fed. R. Civ. P. 53, 2003 Advisory Comm. Notes.  The Special Master here is a discovery master, not a trial master.  *See* Appointment Order, ECF 792, preamble ("The Court has determined that appointing a Master will facilitate the effective and expeditious coordination and management of discovery related issues in these proceedings.").  He is not conducting an

---

[8] While the scope of the deposition order did arise at the "hearing," it only arose after the Special Master informed the SSEs that he was going to order depositions, and then required the SSEs to spontaneously respond.  Hrg. Tr. at 15-16. While the Special Master allowed the Parties and the SSEs to later confer over the scope of the proposed order, the Special Master accepted the Parties' proposal virtually unchanged.  *Compare* Ex. 1 *with* the Order.

[9] It should be noted that the SSEs have never consented to or agreed that discovery disputes involving them may be submitted to the Special Master.  The lack of consent to have the issues determined in the first instance by a non-Article I or Article III judicial officer limits the "scope" of the Special Master's duties to those "pretrial … matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  Fed. R. Civ. P. 53(a)(1).  There has been no finding that the SSE discovery disputes cannot be "effectively and timely addressed" by any available district judge or magistrate judge.  More importantly, the Appointment Order *expressly* states that the "Court retains **sole authority** to issue rulings on all matters submitted to it, ***unless otherwise agreed*** to by the parties and the Court."  ECF 792, at § I.A.  While the order does not define "parties" for purposes of this section, the word "parties" should either be deemed, or should be amended, to include "non-parties" when addressing issues impacting non-parties' substantial rights.

evidentiary hearing.  There is no such thing as an "evidentiary hearing" spontaneously arising in the middle of a discovery dispute in which one side is authorized to obtain evidence that would assist it with winning its motion, while the other side is denied the same privilege.

If this were an evidentiary hearing, then *both sides* – the SSEs and the Parties – would have a right to obtain and present evidence.  It would not be a one-sided affair, in which the Parties may cross examine the SSEs, but the SSEs have no power compel testimony as to the Parties' lack of substantial need for information sought in their subpoenas.  The Eighth Circuit has explained this point cogently:

> If an evidentiary hearing is held, the moving party should first be asked to call witnesses or offer exhibits, followed by a *similar invitation* to the other side. *All this is basic.* What happened here seems more akin to a civil-law proceeding, in which the judge takes the initiative to determine the truth. This inquisitional method may have something to commend it, but *it is not our system.*

*Gentile v. Mo. Dept. of Corrs. and Human Res.*, 986 F.2d 214, 219 (8th Cir. 1993).  *See also U. S. v. Mandujano*, 425 U.S. 564, 587-88 (1976) ("Numerous opinions express the Court's determination to enforce the guarantee of an adversary system embodied in our Bill of Rights in the face of attempts, in the name of expediency and in ignorance of the lessons of history, to utilize inquisitional procedures.").

Here, the Special Master expressly rejected, without explanation, the SSEs' request that the Parties be ordered to submit evidence in support of their claim of "substantial need." Ex. 1 at § III.  Thus, he was not compelling evidence in connection with any evidentiary hearing; he was compelling depositions in the absence of any properly-referred (or even existent) discovery dispute concerning such depositions.  That is not allowed.  *See, e.g.*, *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 388 (5th Cir. 2004) (reversing district court's adoption of special master's recommendation where the special master "exceeded his authority by considering claims … which were never formally referred to the special master"); *Cremin v. Merrill Lynch,*

9

*Pierce, Fenner & Smith Inc.*, 328 F. Supp. 2d 865, 869 (N.D. Ill. 2004) ("In short, the Special Master exceeded his authority in his May 28, 2004 ruling; therefore we must reverse his decision.").[10]

### C.    The Special Master Exceeded His Authority in Denying the SSEs the Right to Object to the Deposition Notice.

The Special Master adopted the Parties' version of the Proposed Order, which states that "[s]o long as [the] Parties conform with the topics set forth in this Order, no objections to the deposition notices shall be permitted."   ECF 1294.   Nothing in any rule or order grants the Special Master the authority to deprive a non-party of the due process right to assert appropriate objections to a deposition notice.   Rule 32(d)(1) instructs that "[a]n objection to an error or irregularity in a deposition notice is waived unless promptly served in writing on the party giving notice."  Fed. R. Civ. P. 32(d)(1).  The rule obviously contemplates that a person may interpose objections after receiving a deposition notice.   Neither the Parties, nor the Special Master, cite any authority in which a non-party has "waived" the right to object to a notice before the notice has even been served.

We assume that the Special Master was trying to prevent further dispute concerning the content of the notice by setting forth the scope and procedures that would govern such depositions in his Order.  But nothing in the Rules gives a Special Master the authority to impose a prior restraint on the ability to object to the scope of compulsory process.  If an objection is meritless, then Rule 37 provides ample remedies to address it.

---

[10] If there is to be an evidentiary hearing on the Motion to Compel document production, some SSEs may file a motion to intervene for the limited purpose of cross-examining the Parties and taking discovery from them on relevant issues, such as "substantial need," the "parties relative access to relevant information," "the importance of discovery in resolving the issues," the "likely benefit" of the proposed discovery, and the appropriate limits of any requested discovery under Rules 26(b), 26(c), and 45.  Such an evidentiary hearing may be appropriate given the (Continued…)

More importantly, the concept that the Special Master has already considered – and implicitly rejected – all possible objections has no merit.   The Special Master concluded, at the end of the mediation session, that he intended to order 30(b)(6) depositions if the Parties wanted them (he did not ask the SSEs if they wanted them).  He instructed the Parties to draft topics over the lunch break.  Forty-five minutes later the Parties revealed their topics simultaneously to the Special Master and the SSEs.  The Special Master then generally approved them.  While the Special Master ordered the Parties to prepare a proposed order reflecting those topics and to share them with the SSEs for comment, he rejected all proposed SSE modifications.  As discussed below, the specific modifications were necessary to protect the rights of the SSEs, and to appropriate delineate the scope of the 30(b)(6) depositions.  The Special Master's refusal to consider the proposed modifications, to explain why he was rejecting them, and then his refusal to permit any objection to the notice, was error.

## III.   THE SPECIAL MASTER'S DEPOSITION ORDER CONTAINS INAPPROPRIATE PROVISIONS AND OMITS NECESSARY ONES

The SSEs were invited to propose changes to the order proposed by the Parties and entered by the Special Master, in theory.  Hrg. Tr. at 44 ("I would ask that you give me the order and that the opposing parties give me a red-lined proposition where they set forth their arguments for or against an addition or deletions, and I will finalize what I think the most appropriate order at that time.").  In practice, that invitation was illusory, as the Special Master rejected each of the SSE's proposed revision without explanation.  Those proposed revisions were necessary to protect the rights of the SSEs.

---

recognition by all parties and the Special Master that the Parties' subpoena is likely **the broadest one ever served in the history of America**.  Hrg. Tr. 41-42.

### A.    *The Order Fails to Resolve the Only Discovery Dispute Presented.*

The only ripe ***dispute*** before the Special Master concerned the Parties' Motion to Compel.  The Order's title – "Order Regarding The Parties' Motion to Compel Discovery from Non-Party OEMs [sic]…" – does not transform it into a resolution of that motion. In fact, the Special Master's Order neither grants nor denies the motion. Leaving it in limbo contravenes this Court's Appointment Order, which requires that "[a]bsent good cause, the Master shall provide an order for any dispute within 15 business days of a hearing."  ECF 792, at § I.H.

The failure to resolve the motion referred is not a minor or technical deficiency.  As the SSEs had explained in their briefing on this Motion, the Parties prematurely declared impasse, failed to meet and confer in good faith over the scope of the Subpoena, and failed to demonstrate a substantial need for the information they subpoenaed.  The SSEs position was supported by two economist affidavits and 56 fact affidavits.  Despite the wealth of information presented, the Special Master concluded that he had "insufficient information before him to rule on whether and/or to what extent to order the requested discovery from the OEMs and their affiliates." Order, at 2.  But if that was the case, the proper remedy would be to deny the Parties' motion without prejudice to renew it at an appropriate time.

At the hearing, the Special Master considered an alternative approach – one in which he "adjourned" the Parties' Motions to Compel, pending the ordered depositions, further meet and confers, and additional filings.  *See* Hrg. Tr. at 16.  For an unexplained reason, the Parties did not like this provision – perhaps because an adjournment was not within the Special Master's power, which requires a decision within 15 days after argument – and so they did not include it.  Nor did the Special Master, though the SSEs proposed revision did exactly what the Special Master said he intended – adjourn the Parties' motion.

12

Ultimately, by adopting the Parties' proposed order, the Special Master failed to issue a ruling on the only discovery dispute presented to him for resolution.  The Order, therefore, was not consistent with his obligations under the Appointment Order.

### B.    The Order Does Not Limit the Compelled Depositions to their Ostensible Purpose.

The purported purpose of the depositions – as articulated by the Special Master at the hearing – is to obtain testimony concerning the location and availability of responsive information and the burdens of obtaining it.  As he noted, the depositions should be "only an inquiry into what data is available" from the SSEs "in order to better understand what information is available, reasonably accessible, and the costs and burden that would be incurred in having to generate that information."  Hrg. Tr. at 16, 43.  Accordingly, these depositions are not a free pass to examine the SSEs on the substance of the lawsuit.  Such depositions – if they do take place – would occur *after* any document discovery, not before it, and certainly not twice.

The SSEs' proposed order, therefore, made the scope of the examination clear.  It provided that "[q]uestions on [the listed] topics shall be limited to inquiry into format, volume, physical location, time period, status of system on which the data is maintained (*i.e.,* current or legacy systems), and cost estimates and burden associated with production."  Ex. 1, § II.B.  It then, for avoidance of doubt, clarified that "no Party may ask any Deponent SSE Group *substantive* questions about the Auto Parts cases," such as "questions about price fixing, overcharges, pass-through, damages, internal investigations, or external discussions relating to these cases."  *Id.* at § II.C.  These provisions are necessary both to limit the scope of preparation under Rule 30(b)(6) and to prevent multiple depositions on these issues in this case in violation of Rule 30(d)(1).

The Order, however, does not include either of these limiting provisions. Instead, it includes broad **substantive** topics: "procurement **process** and supplier selection and price adjustments," "vehicle pricing **process**, including **process** for setting and adjusting pricing," and the like. Order, at § II.A.2, 4. And while it specifies that questions may "*include*" issues pertaining the "format" and availability of data, nothing in the Order specifically limits the question to such topics, as intended. *Id.* at § II.B. Because it is not appropriately cabined, the Order makes it practically impossible to prepare witnesses, since the broad topics listed include virtually every aspect of each company's operations. It also unfairly subjects the SSEs to the risk of multiple depositions on the same topics; at a minimum, any order requiring depositions should make clear that the Parties will not be permitted to take a second deposition on the same topics. Neither the Special Master nor the Parties ever explained why the limiting provisions the SSEs proposed were unreasonable.

> **C. The Order Dispenses with the Requirement that the Parties Describe the Topics for Examination with "Reasonable Particularity" and Improperly Rejects the SSEs' Request for Written Questions.**

As the Special Master has noted, the Parties' document subpoena is the broadest and most burdensome subpoena issued in history. The 30(b)(6) depositions are similarly breathtaking in scope, covering almost every car sold in America over the last 20 years and over 50 classes of components. As detailed in the SSEs' 56 fact declarations, this information spans many different information systems, different corners of each organization and company, and different employees and employee groups.

In order to properly prepare for such depositions, the SSEs made **two separate proposals**, both summarily rejected by the Special Master. *First*, the SSEs proposed that the Parties proceed via deposition by written questions under Rule 31. Under this procedure, written questions are first served upon the SSEs, and then the designated deponent provides an oral response to each

one.  *See* Fed. R. Civ. P. 31 (providing for service of questions, and then the subsequent taking of testimony, via an officer in the "manner provided" in Rule 30).  The Special Master gave this proposal no consideration, rejecting it without explanation.

*Second*, after Rule 31 depositions were rejected, the SSEs proposed a weaker version that might accomplish many of the same salutary benefits.  Specifically, the SSEs requested the inclusion of the following provisions:

> "The Parties are strongly encouraged (albeit not expressly ordered) to provide as much additional specific information as possible about their intended areas of inquiry as to each particular Deponent SSE Group, including specific questions, to the Deponent SSE Group's counsel with each deposition notice so as to maximize the efficiency of this process, reduce the burden on witnesses for the Deponent SSE Groups, and reduce the potential for disputes."

> "Unless the specific question was provided to the Deponent SSE Group's counsel two weeks in advance of the deposition, motion practice against any Deponent SSE unable to answer a given question or set of questions will *not* be well-taken. To the extent a witness does not know or is unable to recall certain information during a deposition, the Deponent SSE Group may supplement its response at a later time in an appropriate manner."

*See* Ex. 1, at §§ II.E, II.M.  Again, the Special Master summarily rejected these, with no explanation.

But there is no reason why the Parties could not provide the SSEs with basic information about the scope of the exam and a list of questions in advance of the deposition.  The Parties are likely to have a nearly uniform deposition outline that they will use to question each SSE.  By making this list available sufficiently in advance of the deposition, the SSEs can more efficiently prepare their witnesses and will be able to provide more thoughtful answers.  Notably, under the SSEs' second proposal, providing such a list does not cabin the questioner's ability to ask follow-up questions.  To the contrary, the SSE's proposal merely *invites* the Parties to present this list and then notes that the failure to unreasonably do so may impact their ability to later complain if, for whatever reason, the witness is unable to respond.

15

By rejecting both of the SSEs' proposals without explanation, the Special Master not only abused his discretion, he approved of topics and notices that violate the "reasonable particularity" requirement of Rule 30(b)(6). Under that rule, the noticing party must "describe with reasonable particularity the matters of examination." Fed. R. Civ. P. 30(b)(6). While either of the SSEs' proposals would have achieved this, the Order does not.

The Order simply requires the Parties to present a notice with 5 topics, covering virtually every aspect of component sourcing, component pricing, "other costs," vehicle pricing, vehicle sales, and any document or piece of information ancillary to such topics. Such broad topic listings provide no insights in the specific types of data the Parties are seeking, or the types of questions they may be asking. The Order thus contemplates the ***antithesis*** of "reasonable particularity," and leads to a situation in which the SSEs have to guess what questions the Parties might have about the locations, availability, and the burden of obtaining unspecified pieces of information. Since this should not be a game of "gotcha," the Special Master's unexplained refusal to include either of the SSEs' proposals should be rejected.

### D. The Order Fails to Carve Out Entities Unlikely to Have Relevant Information and Whom the Special Master Orally Instructed Be Carved Out.

As set forth in the objections brief filed on behalf of certain Non-Party Domestic Distributor and Non-Core SSEs, the Order entered did not reflect the oral ruling by the Special Master carving out certain entities from its province. Specifically, at the hearing, the Special Master decided to "carve out or hold in abeyance the small entities, the distributors, and the non-core" SSEs, and told the Parties to "[m]ake sure that's in the order, please, that they are carved out." Hrg. Tr. at 43, 46. The Parties' proposed order did not carve out the Domestic Distributors or Non-Core SSEs. Instead, the Parties limit the proposed carve-outs to certain smaller SSEs. The Special Master provided no basis for this course reversal.

## IV.     CONCLUSION

For the foregoing reasons, the SSEs' objections to the Special Master's order should be sustained.   Because the Special Master found the Parties had not met their burden on their motion to compel, the motion should be denied without prejudice to the Parties' right to seek discovery through Rule 45.

Dated:  May 4, 2016                                          Respectfully submitted:


### On Behalf of the Chrysler Entities


/s *Cheryl A. Bush*                                         /s *Colin R. Kass*
Cheryl A. Bush (P37031)                          Colin R. Kass
Susan M. McKeever (P73533)                   Scott M. Abeles
BUSH SEYFERTH & PAIGE PLLC                  PROSKAUER ROSE LLP
3001 W. Big Beaver Road, Suite 600          1001 Pennsylvania Ave., N.W.
Troy, MI 48084                                         Suite 600 South
(248) 822-7800                                          Washington, D.C. 20004
bush@bsplaw.com                                     (202) 416-6800
                                                              ckass@proskauer.com
                                                              sabeles@proskauer.com

                                                              David A. Munkittrick
                                                              PROSKAUER ROSE LLP
                                                              11 Times Square
                                                              New York, NY 10036
                                                              (212) 969-3000
                                                              dmunkittrick@proskauer.com

*Attorneys for FCA US LLC and Fiat Chrysler Finance North America, Inc.*

17

**On Behalf of the Daimler Entities**

/s *Dominic Surprenant*
Dominic Surprenant
Nithin Kumar
Q<small>UINN</small> E<small>MANUEL</small> U<small>RQUHART</small> & S<small>ULLIVAN</small>, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
dominicsurprenant@quinnemanuel.com

*Attorneys for Daimler North America Corp. (MI); Daimler North America Corp. (NJ); Daimler Purchasing Coordination Corp.; Daimler Trucks North America LLC; Daimler Vans Manufacturing, LLC; Daimler Vans USA LLC; Freightliner Custom Chassis Corp.; Mercedes-Benz Advanced Design of North America Inc.; Mercedes-Benz Credit Corp.; Mercedes- Benz Financial Services USA LLC; Mercedes- Benz Research & Development North America, Inc. (CA); Mercedes-Benz Research & Development North America, Inc. (MI); Mercedes-Benz U.S. International, Inc.; Mercedes- Benz USA, LLC; Mitsubishi Fuso Truck of America, Inc.; Thomas Built Buses, Inc.; and Western Star Trucks Sales, Inc.*

**On Behalf of the GM Entities**

/s *Stephen R. Neuwirth*
Stephen R. Neuwirth
Adam B. Wolfson
Richard T. Vagas
Q<small>UINN</small> E<small>MANUEL</small> U<small>RQUHART</small> & S<small>ULLIVAN</small>, LLP
51 Madison Avenue
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com

*Attorneys for General Motors Company; General Motors Financial Company, Inc.; General Motors Holdings LLC; and General Motors LLC*

**On Behalf of the Honda Entities**

/s *Daniel Purcell*
Daniel Purcell
Justina Sessions
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 676-2293
dpurcell@kvn.com
jsessions@kvn.com

*Attorneys for American Honda Motor Co., Inc.; American Honda Finance Corp.; Honda Manufacturing of Indiana, LLC; Honda North America, Inc.; Honda of America Mfg., Inc.; Honda of South Carolina Mfg., Inc.; Honda Precision Parts of Georgia, LLC; Honda R&D Americas, Inc.; Honda Research Institute USA, Inc.; and Honda Transmission Manufacturing of America, Inc.*

19

**On Behalf of the Hyundai/Kia Entities**

/s *Meredith Jones Kingsley*
Meredith Jones Kingsley
ALSTON & BIRD LLP
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
(404) 881-4793
meredith.kingsley@alston.com

*Attorney for Hyundai Motor Manufacturing*
*Alabama, LLC; Hyundai America Technical*
*Center, Inc.; and Kia Motors Manufacturing*
*Georgia, Inc.*

/s *Ernest L. Greer*
Ernest L. Greer
GREENBERG TRAURIG, LLP
Terminus 200 Building
3333 Piedmont Road NE, 25th Floor
Atlanta, GA 30305
(678) 553-2100
greere@gtlaw.com

*Attorney for Kia Motors Manufacturing*
*Georgia, Inc.*

/s *Shon Morgan*
Shon Morgan
Joseph R. Ashby
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com
Josephashby@quinnemanuel.com

*Attorneys for Hyundai Motor America; and*
*Hyundai AutoEver America, LLC*

/s *Susan R. Peck*
Susan R. Peck
Jessica B. Avery
LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, CA 92660
(949) 250-9954
susan.peck@lhlaw.com
Jessica.avery@lhlaw.com

*Attorneys for Kia Motors America, Inc.; and*
*Hyundai Capital America*

20

**On Behalf of the Nissan Entities**

/s *Anthony J. Anscombe*
Anthony J. Anscombe
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606
(312) 641-9050
anthony.anscombe@sedgwicklaw.com

*Attorneys for Nissan North America, Inc.; Nissan Design America, Inc. (part of NNA); Nissan Technical Center North America, Inc. (part of NNA); Nissan Diesel America, Inc.(part of NNA); and Nissan Motor Acceptance Corp.*

**On Behalf of the Subaru Entities**

/s *Thomas E. Mixdorf*
Thomas E. Mixdorf
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
(317) 236-5832
Thomas.mixdorf@icemiller.com

*Attorneys for Subaru of Indiana Automotive, Inc.*

/s *Neal Walters*
Neal Walters
Michael R. Carroll
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
(856) 761-3452
carrollm@ballardspahr.com

*Attorneys for Subaru of America, Inc.; Subaru Leasing Corp.; and Fuji Heavy Industries U.S.A., Inc.*

21

**On Behalf of the Toyota Entities**

/s *Thomas P. Branigan*
Thomas P. Branigan (P41774)
BOWMAN AND BROOKE LLP
41000 Woodward Avenue, Ste. 200 East
Bloomfield Hills, MI 48304
(248) 205-3300
tom.branigan@bowmanandbrooke.com

/s *Michael Schaper*
Michael Schaper
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6737
mschaper@debevoise.com

*Attorneys for Toyota Motor Sales, USA, Inc. and Toyota Motor Engineering & Manufacturing North America, Inc.*