Case 2:12-md-02311-SFC-RSW   ECF No. 1350, PageID.23861   Filed 05/13/16   Page 1 of 21
Motion for Protective Order Precluding Depositions • May 5, 2016

1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3                         —    —    —

 4
       IN RE:  AUTOMOTIVE PARTS
 5     ANTITRUST LITIGATION                MDL NO. 12-02311

 6     _____/

 7
            MOTION FOR PROTECTIVE ORDER PRECLUDING DEPOSITIONS
 8
              BEFORE THE HONORABLE MARIANNE O. BATTANI
 9                  United States District Judge
              Theodore Levin United States Courthouse
10                 231 West Lafayette Boulevard
                          Detroit, Michigan
11                    Thursday, May 5, 2016

12
       APPEARANCES:
13
       For the End Payors:    STEVEN N. WILLIAMS
14                            COTCHETT, PITRE & McCARTHY, L.L.P.
                              840 Malcolm Road
15                            Burlingame, CA  94010
                              (650) 697-6000
16
       For the Objectors:    MARLA LINDERMAN
17                           LINDERMAN LAW, P.L.L.C.
                             9524 Portage Trail
18                           White Lake, MI 48286
                             (734) 368-1209
19

20

21

22

23

24
            To obtain a copy of this official transcript, contact:
25              Robert L. Smith, Official Court Reporter
                (313) 964-3303 • rob_smith@mied.uscourts.gov
```

1  <u>Appearances:</u>  (Continued)

2  Also Present:

3  HOWARD B. IWREY
   **DYKEMA GOSSETT, P.L.L.C.**

4

5  SHELDON H. KLEIN
   **BUTZEL LONG, P.C.**

6

7  SCOTT T. SEABOLT
   **FOLEY & LARDNER, L.L.P.**

8

9  JOANNE GEHA SWANSON
   **KERR, RUSSELL & WEBER, P.L.C.**

10

11  MATTHEW L. POWELL
    **KERR, RUSSELL & WEBER, P.L.C.**

12

13  MICHAEL R. DEZSI
    **DETTMER & DEZI, P.L.L.C.**

14

15  NATHAN FINK
    **FINK & ASSOCIATES LAW**

16

17  DEVON ALLARD
    **THE MILLER LAW FIRM, P.C.**

18

19  RONALD NIXON
    **KEMP KLEIN LAW FIRM**

20

21

22

23

24

25

TABLE OF CONTENTS

                                                    Page

Motion..........................................  4

Response........................................  8

Ruling by the Court.............................18

1    Detroit, Michigan

2    Thursday, May 5, 2016

3    at about 10:09 a.m.

4                          —   —   —

5              (Court and Counsel present.)

6              THE LAW CLERK:  Please rise.

7              The United States District Court for the Eastern

8    District of Michigan is now in session, the Honorable

9    Marianne O. Battani presiding.

10             You may be seated.

11             THE COURT:  Good morning.

12             MR. WILLIAMS:  Good morning, Your Honor.

13             MS. LINDERMAN:  Good morning.

14             THE COURT:  Just one minute.  All right.  May I

15   have your appearances, please?

16             MS. LINDERMAN:  Marla Linderman, I'm appearing on

17   behalf of objectors Thompson, Thompson, Marasco, Sarris,

18   Odweyer, Feury and movant Attorney Dishman.

19             MR. WILLIAMS:  Good morning, Your Honor.

20   Steve Williams on behalf of the end payor classes.

21             THE COURT:  The others are just observing?

22             MR. WILLIAMS:  Correct.

23             THE COURT:  All right.  Okay.  Ms. Linderman?

24             MS. LINDERMAN:  Good morning, Your Honor.  Thank

25   you so much for getting us in here so quickly.  I appreciate

1    the Court's diligence on this.

2          The way I see this motion is we are just looking

3    for some sort of procedural instruction on how this is

4    supposed to go forward.  There is nothing in the notice that

5    talks about objectors being deposed, so I think the first

6    question is was this the Court's intention that objectors

7    would be deposed without any qualifiers, that they could just

8    be deposed in this manner for full days especially.  So that

9    is like the first question.

10          THE COURT:  Not each of them for a full day?

11          MS. LINDERMAN:  That's what -- I think they were

12    all set up for individual times so, I mean, that's one of the

13    things I was concerned about is there should be at least if

14    the depositions go forward some sort of limitation on how

15    long these are.

16          THE COURT:  I thought in reading their response

17    that it was all of them in a full day.  I don't know how they

18    do that, but to answer your question, I had no intentions of

19    anything, I didn't know there were going to be objectors

20    so --

21          MS. LINDERMAN:  Okay.  Well, but that's exactly it,

22    Your Honor, because there are we need some instruction.  You

23    know, you can't send out subpoenas at any time in a case, it

24    depends on is there open discovery or for deposition or for

25    trial, otherwise you have to come to the Court and ask for

1    permission.  I couldn't find anything that allowed that.  So

2    that's the first question, whether there is going to be

3    depositions.

4         The second question I think is if you are going to

5    let depositions happen, and we only have to get this if the

6    answer is yes to the first one, is when.  Does every objector

7    subject themselves to deposition, because that has a really

8    chilling deterrent effect to any objector?  If you are going

9    to go and say I object because I think the attorneys are

10   getting paid too much or I object because I don't think I'm

11   getting paid enough, if they are going to end up having to

12   miss a day of work and, you know, find an attorney, people

13   aren't going to object.  And I think objectors have a very

14   important role in class actions because they have different

15   views; they weren't part of the case, they didn't choose to

16   be here, they are included in this definition.

17        THE COURT:  They could opt out.

18        MS. LINDERMAN:  And they can opt out, right.  So,

19   you know, I do think objectors can have an important role, so

20   I'm not sure we should want to have that kind of chilling

21   deterrent.

22        The subpoena for the attorney is probably one of

23   the most concerning parts for me.  In practicing almost

24   20 years I haven't seen that, and I understand that they

25   attached an order from a Florida court, because that court

Motion for Protective Order Precluding Depositions • May 5, 2016

**7**

1    can only order those depositions if this Court said in this

2    case that we are going to allow depositions, right?  That

3    court is operating under the assumption that it is allowable.

4         And even in that case there is not -- it doesn't

5    say you can ask any question of this attorney.  It says let's

6    see where you are going and then we will make a determination

7    question by question, which I think is a very slippery slope

8    to start down.  You know, the question is if we start doing

9    counsel deps should objectors be allowed to do plaintiff

10   counsels' deps?  You know, you have done class-action work

11   before, how many people actually got paid?  I mean, do we

12   really want to go down that kind of slope where we start

13   adding all of these other layers of questions?  I can't

14   imagine anything that would be outside of the attorney-client

15   privilege.

16         And there's a question about whether Mr. Dishman is

17   a serial objector.  Now, there are serial objectors out there

18   but we are talking about people who are objecting hundreds of

19   times.  You were given a chart that has five, four are actual

20   cases where Mr. Dishman was involved.  He's been practicing

21   30 years, so we are talking about once every seven years he's

22   represented somebody who has objected.  I don't think that's

23   serial.  You know, I have had some class-action experience

24   myself, there's hardly any attorneys who do do it, and you

25   are going to see in states people who are representing people

1    over and over again because, you know, I don't know anyone

2    else to send them to; I heard he did this or she did this.

3    So I think that's a problem.

4         The last one -- question is, you know, I have never

5    seen a court that has allowed a deposition like in less than

6    three days without already being before the court and having

7    an order, so I think the time period was unreasonable to give

8    them notice if we are going to go forward with it, and so I

9    think there should be reasonable notice, and I think the time

10   limitation here should be a very limited time for the deps.

11   And if you are going to ask for documents, you have to give

12   them time, you know, to get them together.

13        So that's sort of the framework of what I'm here

14   for.  I'm not trying to obstruct, I'm trying to get

15   instruction.

16        THE COURT:  All right.  Thank you.  Mr. Williams?

17        MR. WILLIAMS:  Thank you, Your Honor.  I will try

18   to respond briefly to the points made by counsel.  And to the

19   effect the suggestion is we wanted instruction, I wish they

20   had worked with us before, instead we got a notice that we

21   are filing a motion to quash these subpoenas entirely and

22   then the motion was filed within a few hours after that.  No

23   one ever said can we work out a time for these depositions or

24   a time limit.

25        So to respond to some of those points, we submitted

1    to Your Honor with our response orders from three recent

2    cases where objectors were deposed.  Each of those cases put

3    three-hour limitations on the depositions, and we are happy

4    to put those limitations on the depositions here.

5          In our view, the Court, the class representatives

6    for the end payor classes, counsel, defense counsel, have

7    been working on this case for years.  We have come to the

8    point where a substantial part of the case can be resolved.

9    Those class representatives every day, dozens and dozens all

10   around the country, they have to sit for seven-hour

11   depositions and be examined by defense counsel.

12   Proportionally, there is really nothing inappropriate or

13   unfair in asking the objectors here who are the ones who now

14   seek to hold up finality, to deny the class the benefits of

15   the settlements, from sitting for a very short deposition,

16   and to answer a fairly limited set of questions.

17         THE COURT:  What do you want to find out from these

18   objectors?

19         MR. WILLIAMS:  There are several things.  So, first

20   of all, several of the objectors in the papers in their

21   objections they did not comply with what was required, which

22   involved demonstrating that you actually bought a new car

23   during the class period.  They haven't done it.  And in

24   colloquies with counsel before the hearing where I raised the

25   question, today I received some responses but they are

1    curious responses.  So part one is do these objectors

2    actually have standing to object?  Part two involves how they

3    came to object, because if the Court looks at the cases we

4    cited and there can be no doubt that in class actions an

5    unsavory part of the practice is those who object for

6    inappropriate purposes because the goal is and the strategy

7    is as follows:  I object, my objection is overruled, I then

8    appeal and I hold up the entire settlement for one or two

9    years until the Circuit Court can address the objection, and

10   I then contact counsel and say if you make a payment to me I

11   will withdraw my objection.

12         And I don't in any way mean to suggest that of

13   Ms. Linderman, I know of Ms. Linderman by reputation, I know

14   she is an outstanding attorney, but in the chart we have

15   given you I do know this is the case for Mr. Dishman, and it

16   is not once every seven years, it is five objections in the

17   last four years in major class actions in this country,

18   including those in which I can infer to the Court that he did

19   precisely what I just said, his objections were overruled and

20   then a payment was sought to withdraw those objections.

21         What that relates to then is how do these people

22   come to object?  This group of people Mr. Dishman represents,

23   do they object because they saw the notice, they had a

24   concern, or do they object because Mr. Dishman contacted them

25   and said I would like you be to an objector?  That's a

1    legitimate area of inquiry, and if the Court looks at what we

2    have cited to in our papers you will see District Courts and

3    Circuit Courts identifying this as an impediment to the

4    administration of justice that is suitable for inquiry and

5    that then relates to this Court's evaluation of the

6    objections.  And when you add to that the fact that a number

7    of the objections are just fundamentally incorrect or, as I

8    mentioned those objectors who don't have standing, we on

9    behalf of our class have a duty to them to have these

10   settlements approved and to ask those questions, did you

11   really buy a new car during this class period?  Is your

12   objection -- when you object to this part of the settlement

13   here is what it actually says, is that correct, do you still

14   object?  And I think what's important is that the time is

15   limited.

16           What I heard counsel argue today is that they seek

17   guidance.  They seek a limit on how long the depositions will

18   be.  We will agree to that.  We are prepared to go forward

19   with these depositions beginning tomorrow.  We would like to

20   complete them before the hearing next week.  This is a very

21   large case the Court knows, all the attorneys in this room

22   know that, this case has gone on for years, we all have an

23   interest in getting to finality and not letting a counsel,

24   Mr. Dishman, with a track record of engaging in the very

25   practice that has been condemned by District Courts and

1  Circuit Courts around the country, in holding up the gears of

2  justice here so that he has an opportunity to extract a

3  settlement payment to withdraw his objections.

4       All of those --

5       THE COURT:  Tell me a little bit about the

6  appellate process in a situation like this.  If the Court --

7  if the Court allows the deposition, and I assume the

8  depositions would go forward, though they could appeal, at

9  what point would they be able to appeal?  I mean, the case

10  has to be concluded which means I would have to have ruled --

11       MR. WILLIAMS:  Uh-huh.  So typically the way it

12  would work is as follows:  An objector files an objection,

13  they do it, as in this case, shortly before the date for the

14  final approval hearing because that is how the timing of the

15  notice to the class and the date for objections work.  On our

16  side we typically seek depositions for the reasons I have

17  stated to you today.  The final approval hearing takes place,

18  and if the Court overrules the objections judgment for those

19  settlements would be entered at some point shortly after,

20  that's a final judgment as to those defendants, and within

21  30 days of that a notice of appeal may be filed.  That's the

22  appeal process then that would go on in the 6th Circuit in

23  the event the Court were to overrule these objections, and

24  that could take six months, it could take a year, it could

25  take 18 months.

1     The idea that we may be held up on settlements that

2   defendants and the plaintiff classes have entered into on

3   finality and knowing whether they are final for that period

4   of time solely because of objectors represented by a counsel

5   who has five times in the last four years engaged in this

6   practice of either asserting meritless objections as found by

7   the District Courts or appealing from the overruling of

8   objections and then under circumstances which aren't

9   disclosed voluntarily dismissing those, and as I stated --

10     THE COURT:  None of them have actually had

11   appellate decisions?

12     MR. WILLIAMS:  As far as we can tell from the

13   Exhibit A we have done in the research we did, not one of

14   those ever went through to an appeal by the appellate court,

15   but they were dismissed in some cases a fairly substantial

16   time after the objections were overruled in the District

17   Court and while the appeal was pending.

18     So that's the leverage that objectors have in these

19   cases, which is the delay caused by the appellate process is

20   a period in which they can extract a payment to go away and

21   let the final judgment be entered.

22     THE COURT:  Well, why would you pay them?  Why

23   would you pay them?  Just wait.  This case has been going on,

24   so wait another year to get your money.

25     MR. WILLIAMS:  It would be our intention not to but

1    in many cases many attorneys do do that and the objectors

2    seek it.  I think the question really is is the very small

3    inconvenience of appearing for a deposition for a few hours

4    when these people, through Mr. Dishman, have decided to hold

5    this settlement up, is that too burdensome to permit under

6    these circumstances?  And given the fact, as we said, that

7    all of the class representatives have to sit for seven hours,

8    we don't think it is.

9              THE COURT:  And at these depositions would it be

10   your intent to find out why they are objecting in the sense

11   of what other information they have to show attorney fees are

12   too high or -- I mean, these bald statements that are the

13   objections do nothing for the Court because I have read them

14   already and I know we are not ready to discuss that today --

15             MR. WILLIAMS:  Yes.

16             THE COURT:  -- but my question is is your intent in

17   taking the depositions to provide information that would be

18   discussed if the Court were to -- the Court will hear the

19   objections obviously, the only issue today is whether you

20   take depositions?

21             MR. WILLIAMS:  Yes.

22             THE COURT:  So that's what I want to know is are

23   you getting information that would assist the Court come

24   Wednesday in ruling on the objections?

25             MR. WILLIAMS:  We believe so, Your Honor.  The

Motion for Protective Order Precluding Depositions • May 5, 2016

15

 1    objections are somewhat bare and conclusory, and we would

 2    like to explore that, as well as exploring the motives and

 3    intents of why these people chose to object, whether it is

 4    the objectors who chose to object or as we learned in a

 5    deposition we took last week of an objector and we allude to

 6    this in the paper but I will represent to the Court is what

 7    this objector told us was someone called me, told me there is

 8    this settlement, I want you to object.  We asked who, who was

 9    it that called you?  He said I won't tell you, I refuse to

10    tell you.  When the objector said okay, I will, this

11    undisclosed person then found an attorney for him and the

12    attorney decided what to object to, not the objector.  That's

13    the illicit practice that we want to cast a light on and see

14    whether or not that is what happened here with Mr. Dishman

15    and his clients.

16         THE COURT:  But are you saying if that's what

17    happened then they don't get to object?

18         MR. WILLIAMS:  They get to object but it goes into

19    the Court's evaluation of the legitimacy of the objections

20    and the merits of the objections.

21         THE COURT:  Okay.

22         MR. WILLIAMS:  In terms of the timing and the

23    permission and those arguments, fact discovery is open in

24    this case, there is nothing that required us to seek the

25    Court's leave before we could serve discovery in this

1    instance in our view.  We think all of this discovery was

2    timely appropriate, we did it pursuant to the rules, and we

3    did it in the same manner that is typically done with class

4    members.  I would suggest to the Court particularly if the

5    Court reviews the decisions that I cited, attached to our

6    papers in Exhibits J through O from the CRTs case, the S-RAM

7    case, the LCD case, they all engaged in this analysis, they

8    all permitted limited depositions of a few hours each.

9    That's all we seek here, and we would ask that those take

10   place before next Tuesday given that we are here before you

11   next Wednesday to present our argument, counsel are ready to

12   go.

13           There is also one somewhat confusing matter I would

14   like to bring to the Court's attention.  There are other

15   objectors in West Virginia, the York objectors, who they

16   objected and we have sought their depositions in

17   West Virginia.  They refused to appear.  They sent to us a

18   motion to quash to be filed in this Court but they have no

19   counsel in this Court, so they have asked us to bring that to

20   the Court's attention, we filed a brief responding to the

21   arguments they made.  They, again, yesterday said please

22   advise the Court that we join in the Dishman objections but

23   they have no counsel and since they have asked this I am

24   letting the Court know of this.  So to the extent the Court

25   rules on the Dishman objectors we would seek the same ruling

1    as to the York objectors in West Virginia which would again

2    be limited depositions of a few hours each to take place

3    before we have to be in front of Your Honor next Wednesday.

4         THE COURT:  Well, they don't have an attorney but

5    they are in the same stead as the Dishman objectors.

6         MR. WILLIAMS:  They do have an attorney, one of

7    them is a West Virginia attorney, and we did not seek their

8    depositions here, we sought their depositions in

9    West Virginia, so in our view the lack of an attorney was not

10   a reason not to appear but they don't have a Michigan

11   attorney who could file their papers for them.

12        THE COURT:  Well, the practical consequence of this

13   is that whatever ruling happens on the Dishman would apply to

14   them.

15        MR. WILLIAMS:  I think we and the York objectors

16   agree with that, and I just wanted to make sure that was

17   explicit with the Court.

18        THE COURT:  Would you address a little bit more

19   about the deposition of the attorney.

20        MR. WILLIAMS:  Yes, because when we talk about the

21   bona fides of the objectors, when we talk about an instance

22   where we believe attorneys actually find these plaintiffs or

23   these class members to ask them to object, which is something

24   they wouldn't have otherwise done but for the attorney

25   causing them to do it, what we are interested in is

```
 1    disclosing a history of receiving payments from class counsel
 2    to withdraw objections, so the inquiry is going to be focused
 3    on that issue.  We don't seek any attorney-client privilege
 4    information whatsoever, but what we want to know is when you
 5    filed an objection in the Toyota unintended accelerated class
 6    action, which was overruled, when you appealed from that and
 7    then withdrew it voluntarily five months later, was that
 8    because you asked for and received a payment as a condition
 9    of withdrawing that?  That is a tax on the class, that is
10    taking money out of class' pockets and that's the improper
11    purpose that we seek to disclose.  We don't want any
12    information about communication with his clients, we don't
13    want anything that's privileged, what we want to do is
14    demonstrate that, in fact, the motivation for these
15    objections is not to --
16           THE COURT:  Does this Court have any authority to
17    rule that this may not happen, that an attorney may not pay
18    an objector or an objector's attorney?
19           MR. WILLIAMS:  Your Honor, it is an interesting
20    question.  I'm not certain of the answer.  I think you could
21    order that it be disclosed if it takes place.  I think that,
22    in fact, might have been one of the amendments to Rule 23 in
23    the last year.  In terms of an order barring that, I don't
24    know the answer to that as I stand here, Your Honor.
25           THE COURT:  Okay.  Well, I think that these
```

1    depositions are not necessary.  I think they are not

2    necessary.  I think if there are valid objections they should

3    be heard.  If the attorneys are doing it just to get money

4    and work something out, I'm not going to allow that.  So the

5    Court will do two things, I will enter an order, if you

6    would -- an order that would deny the motion for -- excuse

7    me, that would grant the motion for protective order, so

8    there will be no depositions, and I will issue a second order

9    that no objector or objector's counsel can be paid any

10   additional sums -- any sums in addition to what every other

11   taker -- I don't know how to word that exactly, if you could

12   look at that, what every other --

13           MR. WILLIAMS:  Class member.

14           MS. LINDERMAN:  Class member.

15           THE COURT:  -- class member would get without

16   special approval of the Court.

17           If you would present that order because I don't

18   want those kinds of things going on.  If they go on in other

19   cases, they could very well go on here, but I see no reason

20   why I can't bar that at the very top.  Thank you.

21           MR. WILLIAMS:  Thank you, Your Honor.

22           MS. LINDERMAN:  Your Honor, thank you very much,

23   first of all.  Second of all, I just want to address one

24   thing.  I did contact another counsel on the plaintiffs' side

25   about working reasonableness.  It was said that I didn't, but

1    I spoke directly to Hollis, the person who did the subpoenas,

2    and I just want it clear to this Court that I work with

3    attorneys.  So that was said that I had not contacted them

4    about trying to come up with dates and times, so I did that

5    on Monday, which was our first opportunity.  I just want that

6    to be said.

7            THE COURT:  Okay.

8            MR. WILLIAMS:  There is one last thing, if I may?

9    Ms. Linderman before the hearing had confirmed to me as set

10   forth in the papers that Objector Marasco would be

11   withdrawing her objection, and if I could ask through the

12   Court to have that confirmed by counsel?

13           MS. LINDERMAN:  That is my understanding that I am

14   supposed to be working on a formal withdrawal.

15           THE COURT:  Okay.  We will see you Wednesday, and

16   we will get to the merits of these objections, and we will

17   see what happens.

18           MR. WILLIAMS:  Thank you, Your Honor.

19           MS. LINDERMAN:  Thank you, Your Honor.

20           THE LAW CLERK:  All rise.  Court is adjourned.

21           (Proceedings concluded at 10:33 a.m.)

22                        —    —    —

23

24

25

*CERTIFICATION*

I, Robert L. Smith, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages comprise a full, true and correct transcript taken in the matter of In re: Automotive Part Antitrust Litigation, Case No. 12-02311, on Thursday, May 5, 2016.


                         *s/Robert L. Smith*
                         Robert L. Smith, RPR, CSR 5098
                         Federal Official Court Reporter
                         United States District Court
                         Eastern District of Michigan



Date:  05/13/2016

Detroit, Michigan