# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **In Re:  AUTOMOTIVE** | :  Master File No. 12-md-02311 |
| **PARTS ANTITRUST** | :  Honorable Marianne O. Battani |
| **LITIGATION** | :  Special Master Gene J. Esshaki |
| | : |
| | : |
| **In Re: All Auto Parts Cases** | : |
| | : |
| | : |
| | : |
| **THIS DOCUMENT RELATES** | : |
| **TO: ALL AUTO PARTS CASES** | : |
| | : |

## THE PARTIES' RESPONSE TO OBJECTIONS
## TO THE SPECIAL MASTER'S APRIL 20, 2016
## ORDER REGARDING 30(B)(6) DEPOSITIONS

## [REDACTED]

## ISSUES PRESENTED

1. **Whether the Special Master has the authority to order 30(b)(6) depositions to obtain the information necessary for his resolution of the motion to compel?**

   **Suggested Answer:**      **Yes**

2. **Whether the Special Master's Order on 30(b)(6) depositions is sufficient?**

   **Suggested Answer:**      **Yes**

3. **Whether oral 30(b)(6) testimony is preferable to written testimony, where written testimony would cause unreasonable delay, additional motion practice, and would provide no opportunity for follow-up questions?**

   **Suggested Answer:**      **Yes**

4. **Whether the Distributor OEMs and Non-Core OEMs are properly included in the Order on 30(b)(6) depositions where, without them, there would be no opportunity to discover information necessary to resolve the motion to compel?**

   **Suggested Answer:**      **Yes**

5. **Whether the Hyundai and Kia manufacturing OEMs are properly included in the Order on 30(b)(6) depositions where their market share indicates they do not belong in the smaller OEM category and the information they possess is relevant to resolving the motion to compel?**

   **Suggested Answer:**      **Yes**

6. **Whether Hino should be subject to the Order on 30(b)(6) depositions where its market share indicates it does not belong in the smaller OEM category?**

   **Suggested Answer:**      **Yes**

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- Federal Rule of Civil Procedure 1

- Federal Rule of Civil Procedure 26

- Federal Rule of Civil Procedure 45

- Federal Rule of Civil Procedure 53

- Order Appointing A Master (ECF No. 792)

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................1

II.  PROCEDURAL BACKGROUND .................................................................3

III.  THE SPECIAL MASTER HAS THE AUTHORITY TO ORDER
30(B)(6) DEPOSITIONS AND THE ORDER  IS SUFFICIENT .................6

    A.  The Special Master Has The Authority To Order 30(b)(6)
Depositions Under Rule 53 And The Order Appointing A Master
In This Case ........................................................................................6

    B.  The Special Master Has The Authority To Order 30(b)(6)
Depositions To Seek Additional Discovery. .......................................8

    C.  Requiring A Rule 45 Subpoena For 30(b)(6) Depositions Would
Cause Extreme Delay And Prejudice The Overall Schedule ..............11

    D.  The OEMs' Objections Are Being Heard Now; There Is No
Reason To Cause Delay By Allowing Them To Object Again
Upon Deposition Notice ....................................................................11

    E.  The Special Master's Order Is Sufficient And Contains All
Necessary Provisions.........................................................................12

        1.  The 30(b)(6) topics are stated with sufficient particularity ......12

        2.  The OEMs' proposed revisions to the Order were
unreasonable and were correctly rejected by the Special Master13

IV.  THE DEPOSITIONS OF EACH OEM FAMILY WOULD BE
FAR MORE THOROUGH AND EFFICIENT IF CONDUCTED
BY ORAL EXAMINATION RATHER THAN BY WRITTEN
QUESTIONS ..........................................................................................15

V.  DEPOSITIONS OF THE DISTRIBUTOR AND NON-CORE OEM
ENTITIES ARE NECESSARY TO DETERMINE THE LOCATION
AND NATURE OF EACH OEM FAMILY'S DOCUMENTS AND
DATA ....................................................................................................19

VI.     THE KIA AND HYUNDAI MANUFACTURING ENTITIES SHOULD
        NOT BE EXCLUDED FROM THE ORDER AS SMALL OEMS AND
        EXEMPT FROM THE DEPOSITION PROCESS ......................................24

VII.    HINO SHOULD ALSO BE SUBJECT TO THE SPECIAL MASTER'S
        APRIL 20, 2016 ORDER ............................................................................29

VIII.   CONCLUSION............................................................................................30

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

**Cases**

*Brown v. Wesley's Quaker Maid, Inc.*,
   771 F.2d 952 (6th Cir. 1985) .................................................................11

*Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   328 F. Supp. 2d 865 (N.D. Ill. 2004) ....................................................10

*Daly v. Delta Airlines, Inc.*,
   1991 WL 33392 (S.D.N.Y. Mar. 7, 2011) ...........................................17

*EEOC v. Yenkin-Majestic Paint Corp.*,
   112 F.3d 831, 835 (6th Cir. 1997) .......................................................29

*Greenberg v. Safe Lighting Inc., Intertia Switch Div.*,
   24 F.R.D. 410 (S.D.N.Y. 1959) ..........................................................16

*Holt v. City of Dickson*,
   2011 WL 3850479 (M.D. Tenn. Aug, 30, 2011) .................................18

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   562 F. Supp. 2d 606 (D. Del. 2007) ......................................................9

*In re Urethane Antitrust Litig.*,
   237 F.R.D. 454 (D. Kan. Aug. 25, 2006) ............................................14

*Janko v. Long John Silver's, Inc.*,
   2014 U.S. Dist. LEXIS 185334 (W.D. Ky. Apr. 3, 2014) ..................13

*Johnson v. Ford Motor Co.*,
   2015 U.S. Dist. LEXIS 90108 (S.D. W.Va. July 8, 2015) ....................8

*Mazur v. Wal-Mart Stores, Inc.*,
   2006 U.S. Dist. LEXIS 20985 (W.D. Mich. Apr. 19, 2006) ...............11

*Mill-Run Tours, Inc. v. Khashoggi,*
    124 F.R.D. 547 (S.D.N.Y. Feb.17, 1989) .................................................... 17, 19

*Orleman v. Jumpking, Inc.,*
    2000 U.S. Dist. LEXIS 11081 (D. Kan. July 11, 2000) ....................................15

*Perry v. Edwards,*
    16 F.R.D. 131 (W.D. Mo. July 30, 1954) ..........................................................17

*Ruiz-Bueno v. Scott,*
    2013 U.S. Dist. LEXIS 162953 (S.D. Ohio Nov. 15, 2013) ...............................8

*Scott v. Chipotle Mexican Grill, Inc.,*
    306 F.R.D. 120 (S.D.N.Y. 2015) ............................................................... 17, 19

*Shafer v. Army & Air Force Exch. Serv.,*
    376 F.3d 386 (5th Cir. 2004) ............................................................................10

*Shaffer Tool Works v. Joy Mfg. Co.,*
    1970 WL 10106 (S.D. Tex. Aug. 12, 1970) .....................................................16

*Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
    2008 U.S. Dist. LEXIS 38297 (E.D. Mich. May 12, 2008) ...............................13

*Zito v. Leasecomm Corp.,*
    233 F.R.D. 395 (S.D.N.Y. 2006) ............................................................... 16, 19

## Other Authorities

8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure
    § 2132 (3d ed. 2014) .........................................................................................18

Charles Alan Wright, *Discovery*, 35 F.R.D. 39, 59 (1963) ....................................19

## Rules

Fed. R. Civ. P. 53(c) .........................................................................................7, 10

The Parties[1] respectfully submit this omnibus response in opposition to objections submitted by certain Original Equipment Manufacturers and their affiliated entities (collectively "OEMs") to the Special Master's April 20, 2016 Order Regarding the Parties' Motion to Compel Discovery from Non-Party OEMs and Ordering Non-Party OEM Rule 30(b)(6) Depositions, ECF No. 1294 (the "Order").[2]

## I.    INTRODUCTION

The Order requiring 30(b)(6) depositions merely requires the OEMs to do what they should have done in the first place – to disclose what relevant data and documents they have, where they are located, and what burdens exist to collect and produce this highly relevant material.

Certain Plaintiffs in the indirect purchaser actions allege that Defendants fixed prices on auto parts which resulted in illegal overcharges to OEMs that were then passed on through the chain of distribution and sale to end-consumers.  As the primary purchasers of auto parts, and as the makers and sellers of nearly all the

---

[1] The Parties as referred to in this brief include End-Payor Plaintiffs ("EPPs"), Automobile Dealer Plaintiffs ("ADPs"), Truck and Equipment Dealer Plaintiffs ("TEDPs"), The State of Indiana, and the State of Florida (collectively "Plaintiffs"), and Defendants in all actions in this MDL. Not all Defendants join with respect to all OEMs.  *See* ECF No. 1185 at Attachment A. ADPs do not join the statements in this brief, but concur in the result sought.

[2] This is an omnibus response to ECF Nos. 1314, 1315, 1316, 1317, 1318, 1319, 1327, 1328, and 1329.  All ECF cites herein are to 2:12-MD-02311-MOB-MKM.

vehicles containing them, the OEMs uniquely hold the key information regarding Plaintiffs' claims and Defendants' defenses.

Yet, instead of cooperating with the Parties to meaningfully meet and confer on discovery of this highly relevant information, the OEMs instead chose to obstruct the path to discovery – *by refusing to provide the Parties with basic facts about responsive data and documents, by forcing the Parties into unproductive group negotiations, by presenting the Parties with unreasonable all-or-nothing demands, and by refusing to accept the numerous meaningful compromises offered by the Parties* – leading to impasse, and nearly a year of delay in obtaining this highly important information.

At the mediation and hearing on March 24, 2016 on the motions to compel,[3] the Special Master experienced firsthand the unwillingness of the OEMs to cooperate. The Special Master expressly observed that the OEMs have thus far not provided any information regarding what data and documents exist on the categories at issue in the motion to compel, and took the logical step of using his authority as discovery master to order 30(b)(6) depositions. Without these depositions, it appeared that the OEMs would not provide information on what

---

[3] This motion to compel addressed in this response is the Parties' joint motion to compel discovery from OEMs. ECF No. 1185. Certain Plaintiff parties also filed a separate motion to compel on certain requests (ECF No.1188).

data and documents they hold, and the OEM discovery process would have been unable to move forward on any reasonable schedule.

The only realistic alternative would have been to hold that the OEMs had failed to demonstrate that the burdens of complying with the Parties' subpoena were unreasonable, and to order full compliance.

The OEMs now seek to further derail discovery by lodging a multitude of objections and challenging the Special Master's authority and the sufficiency of the Order itself.   The Court should deny the OEMs' objections and order the 30(b)(6) depositions to proceed without further delay so that the motion to compel can be resolved, and the auto parts litigation can remain on schedule as specifically ordered by this Court.

## II.   PROCEDURAL BACKGROUND

The OEMs' objection to the Order is the latest in a year's worth of efforts to stymie the discovery of the key information that they uniquely hold.[4]  As set forth in the motion to compel, The OEM discovery process began with service of the uniform subpoenas to the OEMs, as directed by the Court, in July and August 2015.  ECF No. 1185 ("Motion to Compel") at 5-6.  Shortly thereafter, the Parties began reaching out to various served entities to offer extensions and to set up meet

---

[4] The OEMs' characterization of the meet and confer process, including their claim that it was the OEMs and not the Parties that have led this process forward (ECF No. 1316 at 2, 12), is not accurate.  *See* ECF No. 1185 at 5-12 and the Williams Declaration in support of the Motion to Compel, ECF No. 1186 at ¶¶ 9-14.

and confers. *Id.* at 6. While some entities were initially responsive to setting schedules, on September 1, 2015, the Parties were informed that certain OEMs were joining together to negotiate with the Parties and those OEMs refused all efforts to individually meet and confer. *Id.* at 7. As outlined in the Motion to Compel in detail, the Parties patiently engaged in a series of letter communications with the OEMs, offering significant compromises to no avail. *Id.* at 8-11. On January 19, 2016, the Parties moved to compel as to certain requests. The OEMs filed oppositions to the Motion to Compel on February 19, 2016. *See* ECF Nos. 1223, 1224, 1227, and 1230. On March 11, 2016, the Parties filed their replies. *See* ECF Nos 1245, 1247, 1252, and 1254.

On March 24, 2016, a mediation and hearing was held before the Special Master on the Motion to Compel with both the Parties and the OEMs in attendance. As the Special Master summarized on the record:

> I started conferencing with the moving parties and the OEMs at approximately 9:30 this morning, it is now ten minutes to 4:00. After several hours of discussions individually and jointly I reached the conclusion that there **simply isn't sufficient information before me today to make a reasonable decision on to – whether to enforce or not to enforce, to what extent to enforce the subpoena**.

> … the best course of conduct would be to conduct some **30(b)(6) depositions of the OEMs in order to better understand what information is available, reasonably accessible, and the costs and burden that would be incurred in having to generate that information**. …

- 4 -

Ex. A (March 24, 2016 Hearing Tr. at 15-16 (*emphases added*)).

The Special Master further set forth his reasoning regarding the need for 30(b)(6) depositions to resolve the Motion to Compel:

> *… we have to engage in whatever measures are appropriate to accelerate the production of information to make sure we stay within our schedule, to do what is necessary to keep this case moving forward*, …
>
> …

Ex. A (Hrg. Tr. 41-45 (*emphases added*)).

Following the Special Master's instruction, the Parties conferred and came up with a list of five specific topics – which directly mirrored the motion to compel requests on which information is lacking – that were then read into the record at the request of the Special Master.  Ex. A (Hrg. Tr. at 17).  The Parties were instructed to email the list of topics to the OEMs, and did so promptly after the hearing.  Ex. A (Hrg. Tr. at 18); Ex. B (3/24/2016, Email from Adam Hemlock to Colin Kass).  On April 1, 2016, the Parties sent the proposed order to the OEMs for review and comment.  *See* Ex. C (4/1/2016 Email from Ronnie Spiegel to Scott M. Abeles).  On April 6, 2016, the OEMs provided the Parties with a markup of the order, crossing out large swaths of text and inserting new provisions that had never been referenced or discussed during the mediation with the Special Master.  *See* Ex. D (4/6/16 Email and redline from Scott M. Abeles to Ronnie Spiegel).  On April 15, 2016, the Parties and the OEMs submitted separate proposed orders to

the Special Master.  *See* Ex. E (4/15/16 Emails from the Parties to Special Master Esshaki with redlined and final versions of the proposed orders).   After taking these submissions into consideration along with editorial comments from both sides, on April 20, 2016, the Special Master issued an order that was consistent with his rulings at the March 24, 2016 hearing. *See* Order.  On May 4, 2016, the OEMs filed the instant objections to the Order.   The Parties now file this joint response.

### III.   THE SPECIAL MASTER HAS THE AUTHORITY TO ORDER 30(B)(6) DEPOSITIONS AND THE ORDER  IS SUFFICIENT

### A.   The Special Master Has The Authority To Order 30(b)(6) Depositions Under Rule 53 And The Order Appointing A Master In This Case

The OEMs have not been willing to meaningfully meet and confer about the discovery sought and have refused to explain, except in vague and conclusory terms, what documents and ESI they have and what they could produce without excessive burdens.  Recognizing the lack of information on the record as to what the OEMs have and to what extent it can be produced, the Special Master could have determined that the OEMs had failed to demonstrate that the burdens of complying with the Parties' subpoena were unreasonable and could have ordered full compliance.  Instead, he ordered 30(b)(6) depositions to obtain information that the OEMs should have already provided.

The OEMs incorrectly claim that the Special Master does not have the authority to order 30(b)(6) depositions in a legitimate effort to advance discovery in this case.  *See* ECF No. 1316 at 5-11.  The Special Master's authority to resolve disputes in the proceedings assigned to him and to take all appropriate measures to do so fairly and efficiently is clearly spelled out in Federal Rule of Civil Procedure 53:

> (c) Master's Authority.
>
> (1) In General.  Unless the appointing order directs otherwise, a master may:  (A) regulate all proceedings; ***(B) take all appropriate measures to perform the assigned duties fairly and efficiently***; and (C) if conducting an evidentiary hearing, exercise the appointing court's power to compel, take, and record evidence.

Fed. R. Civ. P. 53(c) (*emphasis added*); *see also* 9-53 Moore's Federal Practice – Civil S 53.30 (explaining the broad nature of the Special Master's authority under Rule 53 to resolve disputes and take evidence).

The Order Appointing A Master in this case (ECF No. 792) further endows the Special Master with the authority to resolve discovery disputes, and to employ the measures necessary to accomplish the same:

> C. The Master shall work with all parties and, as appropriate, non-parties to schedule and coordinate discovery and class certification matters …, ***as well as to assist in the resolution of any discovery disputes that arise in connection with these proceedings.*** … That discretion shall be generally guided by the Federal Rules

of Civil Procedure, the Court's Local Rules, and the case management orders.

ECF No. 792, §C.  In addition, the Special Master's authority here clearly extends to resolving disputes between the parties and non-parties.  *Id.*[5]

## B.    The Special Master Has The Authority To Order 30(b)(6) Depositions To Seek Additional Discovery.

The OEMs claim that the only ripe discovery dispute to be decided by the Special Master is the Motion to Compel documents and, therefore, the Special Master cannot issue an order regarding 30(b)(6) depositions, seeking further discovery.  ECF No. 1316 at 12.

The Special Master can order discovery that seeks further information for the record and as necessary to resolve a pending discovery dispute, and courts often allow "discovery on discovery."  *See, e.g., Ruiz-Bueno v. Scott*, 2013 U.S. Dist. LEXIS 162953, *6-9 (S.D. Ohio Nov. 15, 2013) (where defendants had not made any organized or directed effort to determine if they possessed emails relevant to the issues in the case, court issued an additional order to compel discovery about defendants' search methods to comply with existing discovery); *see also, e.g., Johnson v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 90108, *98-99 (S.D. W.Va. July 8, 2015) (where information was not forthcoming in discovery,

---

[5] The OEMs argue that as non-parties they are not bound by the Special Master's authority in this case, claiming that they did not consent to have any disputes involving them submitted to the Special Master for resolution.  *See* ECF No. 1316 at 8, fn. 9.  The Order Appointing A Master, however, specifically extends the Special Master's authority to disputes between parties and non-parties.  ECF No. 792, §§C, D.

Court ordered Ford to produce a Rule 30(b)(6) witness to provide an overview of its claims investigation process, to testify regarding its document retention and destruction policies, and to supply details regarding the document search performed by Ford to date); *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 615 (D. Del. 2007) (at motion to compel hearing, Special Master noted his dilemma of not having enough information upon which to rule and noted that to make a judgment there would need to be someone under oath who could testify about the data system on which information was lacking).

Here, the Special Master has ordered the 30(b)(6) depositions as a method to obtain the information necessary to decide the current discovery dispute on the Motion to Compel.  The Special Master has recognized (as do the Parties) that while the OEMs' submissions in opposition to the Motion to Compel are voluminous and the OEMs go to great lengths to claim in general why it would be impossible for each of them to comply with each and every item in the subpoena, they have not provided meaningful information – that is, any specific information – as to what they do possess, the scope of that information, where it is, and what portions of it may be reasonably accessible for discovery.

The OEMs take their argument further out into the weeds by claiming that the Order is improper because issues related to the 30(b)(6) depositions have not been properly "referred" to the Special Master for resolution.  ECF No. 1316 at 9.[6] This argument is also not persuasive.  Rule 53 and the Order Appointing A Master clearly give the Special Master authority to resolve discovery disputes and broad discretion to take the measures necessary to do so.  Fed. R. Civ. P. 53(c); ECF No. 792, §§C, D.   The Special Master does not need a separate "referral" to issue an order on 30(b)(6) depositions to supplement the record so that he can rule on the Motion to Compel.[7]   Resolution of the Motion to Compel and the Order are intertwined and both are squarely within the Special Master's authority to oversee and rule on as necessary.

---

[6] The cases cited by the OEMs supposedly to show that the Special Master  has exceeded his authority by his 30(b)(6) order are not applicable.  The court in *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386 (5th Cir. 2004) found that the special master in that case exceeded his authority by considering claims made by the plaintiff in an entirely separate lawsuit that was never formally referred to the special master or otherwise consolidated with the contempt proceeding that was properly before the special master.  This case has no bearing on the discovery dispute at issue here or the Order to seek more information to resolve that specific dispute.  Likewise, *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 328 F. Supp. 2d 865 (N.D. Ill. 2004) makes no point here.  In *Cremin*, the court found the special master exceeded his authority where he was a discovery master, but was ruling on a separate settlement issue.  *Id.* at 869.

[7] The OEMs also seem to be claiming a "foot fault" on the Special Master for some kind of procedural default in not "adjourning" the Motion to Compel while additional information is sought.  ECF No. 1316 at 13.  Yet, the 30(b)(6) depositions have been ordered specifically as a means for the Special Master to gather the information necessary to make his ruling on the Motion to Compel.  The Parties can find no requirement that a pending motion must be "adjourned" while such necessary information is sought.

**C.**     **Requiring A Rule 45 Subpoena For 30(b)(6) Depositions Would Cause Extreme Delay And Prejudice The Overall Schedule**

The OEMs argue that their 30(b)(6) depositions can only occur if new, duplicative Rule 45 subpoenas are served to compel their testimony, and that it is not sufficient to proceed on deposition notice alone.  ECF No. 1316 at 5-6.   The OEMs' argument is merely another attempt to delay, and their argument makes little sense as the testimony sought here is to provide information for resolution of a discovery dispute on already-pending Rule 45 subpoenas.  The Parties could find no case law that mandates a Rule 45 subpoena to be issued in this situation, where testimony is sought from a subpoena recipient only to resolve a discovery dispute regarding a pending subpoena.[8]

**D.**     **The OEMs' Objections Are Being Heard Now; There Is No Reason To Cause Delay By Allowing Them To Object Again Upon Deposition Notice**

The OEMs attempt to put up further obstacles to the process of gathering the necessary information by claiming that even if the 30(b)(6) depositions were to

---

[8] The cases cited by the OEMs to support this proposition do not provide any guidance. OEMs cite to *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952 (6th Cir. 1985) to claim that a Rule 45 subpoena is mandatory for 30(b)(6) depositions of non-parties.  *Id.* at 960.  However, *Brown* only recites the entire old text of Rule 53, and does not specifically address whether a Rule 45 subpoena would be necessary in the instant circumstances. Likewise, the OEMs' citation to *Mazur v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 20985 (W.D. Mich. Apr. 19, 2006) does nothing to further their argument that deposition notice is not sufficient for a non-party.  In *Mazur*, the documents and testimony being sought from the non-party in that case were not to inform the record to resolve a pending discovery dispute, rather, the deposition was intended to compel testimony for the merits of the case, and for trial.  *Id.* at *4.  In fact in *Mazur*, the non-party agreed to attend her deposition upon notice alone.  *Id.*

proceed on deposition notice, the Special Master has now deprived them of their rights to object to the notice itself.  ECF No. 1316 at 10.

However, the Special Master was careful in his Order to provide all necessary protections to the OEMs that a notice would provide by allowing objections to the Order up front.  They have been given the opportunity to raise objections to the Order, and they have already made their objections – there is no need for further delay so they can make them again in another context.  It is hard to imagine what additional or duplicative objections the OEMs would seek to lodge to any deposition notice that issues after resolution of the objections here. Allowing further objections once deposition notices are issued would do nothing but cause further, unreasonable delay.[9]

## E.  The Special Master's Order Is Sufficient And Contains All Necessary Provisions

### 1.    The 30(b)(6) topics are stated with sufficient particularity

The OEMs object to the Order as not describing the topics for 30(b)(6) examination with sufficient particularity.  ECF No. 1316 at 14-15.  The OEMs also complain that the topics are not sufficiently "cabined" and that the Parties will have a "free pass" to delve into the merits of the case.  ECF No. 1316 at 13-14.

---

[9] Notably, certain OEMs are now engaging in cooperative discussions with the Parties to provide the information that would be sought in the ordered depositions and to move toward production.  This process is running smoothly, and diminishes any arguments by the OEMs that this information cannot be provided or that production would be impossible, as they claim.

Yet, the topics in the Order directly mirror the requests in the Motion to Compel for which further information is needed in order for the Special Master to make his ruling, and the Order sufficiently clarifies that inquiry into these topics is pertaining to discovery of what information the OEMs have to produce and the accessibility or burdens associated with production.  The Order sufficiently states the topics and provides the OEMs with the information they need to produce representatives to testify.  Nothing more is required.  *See Janko v. Long John Silver's, Inc.*, 2014 U.S. Dist. LEXIS 185334, *14 (W.D. Ky. Apr. 3, 2014); *see also Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2008 U.S. Dist. LEXIS 38297, *7-8 (E.D. Mich. May 12, 2008) (30(b)(6) deposition notice of corporate representative was sufficient where list of topics corresponded  with the party's request for production of documents).

The topics are listed in the Order with reasonable particularity and no party has ever indicated a desire to expand the 30(b)(6) topics beyond the Special Master's Order.

### 2.    The OEMs' proposed revisions to the Order were unreasonable and were correctly rejected by the Special Master

The OEMs also argue that the Special Master rejected their proposed changes to the Order and, therefore, the Order is completely insufficient.  ECF No. 1316 at 11.  While the Parties' proposed order adhered closely to the direction given by the Special Master at the hearing, the OEMs' redline cut out large swaths

of text and added a number of provisions that were not referenced or contemplated by the Special Master at the hearing.  *See* Ex. E.  The OEMs' objections to the Order regarding those changes are equally as unpersuasive.

The OEMs object that the Order does not contain their suggestion that the Parties must prepare and file an inventory with the Court identifying all discovery they have received or that may be otherwise available to them.  ECF No. 1316 at 9.[10]  Such an obligation, however, was neither contemplated by the Special Master at the hearing nor ordered, and has no bearing on resolution of the Motion to Compel.

As explained in the Parties' replies to the OEMs' oppositions to the Motion to Compel, and as the Court has already recognized, the OEMs are in possession of highly relevant evidence to which the Parties are entitled to prosecute and defend their claims.  The OEMs cannot evade their duty to cooperate with the subpoena by pointing to evidence that they believe may be in the hands of certain Parties.  "[W]here information responsive to a discovery request is in a party's possession, 'it is obligated to produce the information' whether or not the requesting party has obtained or could obtain the information from an alternative source."  *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 460 (D. Kan. Aug. 25, 2006) (*quoting*

---

[10] The OEMs threaten that should there be an evidentiary hearing to resolve the Motion to Compel, they may intervene to cross-examine the Parties regarding their need for the discovery sought by the Motion to Compel.  ECF No. 1316 at 10, fn. 10.

*Orleman v. Jumpking, Inc.*, 2000 U.S. Dist. LEXIS 11081, *5 (D. Kan. July 11, 2000)).  In any event, the Parties explained in their briefing that the information sought by the Motion to Compel is *not* duplicative of data and information in the possession of the Parties.  EPPs' Reply re MTC at 20-22; Defs' Reply re MTC at 2.

Likewise, the OEMs' objection that the Order must include a requirement that the Parties provide a detailed script of questions to be asked no later than two weeks before the deposition (or else the right to ask those questions will be waived) has no basis in the Federal Rules of Civil Procedure or in the discovery process generally.  ECF No. 1316 at 15.  The areas of inquiry are clearly set forth in the noticed 30(b)(6) topics, which were read into the record at the March 24, 2016 hearing, and which the Special Master has already approved.   This list is sufficient and nothing more is required. The OEMs know what information is sought, and they should not have any problem preparing witnesses to respond to the Parties' reasonable questions.

## IV.   THE DEPOSITIONS OF EACH OEM FAMILY WOULD BE FAR MORE THOROUGH AND EFFICIENT IF CONDUCTED BY ORAL EXAMINATION RATHER THAN BY WRITTEN QUESTIONS

The OEMs' request that the depositions ordered by the Special Master proceed by written questions rather than by oral examination should also be denied.  *See, e.g.*, SSEs' Joint Obj. at Section III.C. (ECF 1316); Daimler

Statement at ¶ 4 (ECF 1329); Honda Statement at 3-4 (ECF 1314); GM Statement at Section II.A (ECF 1327). The Parties have already spent several months exchanging written correspondence with the OEMs. It is ironic that the OEMs now claim that drafting the very same written responses that the Parties sought repeatedly over the last several months is the most efficient way to proceed. Nevertheless, an oral examination during which answers to questions can be followed up and Parties' counsel can explore the volume and nature of the key documents and information held by the OEMs would be faster and far more efficient than written deposition responses that will merely create more questions than answers.

Depositions by oral examination are overwhelmingly preferred by the district courts and, in fact, "depositions upon written questions are *disfavored*" by the courts. *Zito v. Leasecomm Corp.,* 233 F.R.D. 395, 397 (S.D.N.Y. 2006) (emphasis added); *Greenberg v. Safe Lighting Inc., Intertia Switch Div.*, 24 F.R.D. 410 (S.D.N.Y. 1959) ("Experience has made it abundantly clear that the advantages of oral examination far outweigh the advantages of written interrogatories in carrying out the deposition procedures…."); *Shaffer Tool Works v. Joy Mfg. Co.,* 1970 WL 10106 (S.D. Tex. Aug. 12, 1970) ("[T]here is abundant authority for the proposition that…an oral deposition is the normal and preferable and indeed not the exceptional method."); *Perry v. Edwards*, 16 F.R.D. 131, 133

(W.D. Mo. July 30, 1954) ("I can readily agree that the device of taking a deposition upon written interrogatories under Rule 31…is a tool of discovery very inferior to oral examination."); accord *Daly v. Delta Airlines, Inc.*, 1991 WL 33392 (S.D.N.Y. Mar. 7, 2011), at *1 ("We reject the suggestion that a deposition on written questions is the functional equivalent of a face-to-face Rule 30 deposition."); *Lanigan v, LaSalle Nat'l Bank*, 1988 WL 37722 (N.D. Ill. Apr. 21, 1988), at *2 ("It is well-recognized that a deposition upon written questions is vastly inferior to a face-to-face examination.").

It would be highly inefficient to proceed with this inferior discovery mechanism under the circumstances.  First, the information gathered through this process is intended to guide the Special Master in resolving the Motion to Compel regarding some of the most critical discovery in the auto parts cases. The more detailed and thorough the information the Parties are able to gather on the relevant topics, the more support the Special Master will have in resolving this undeniably important discovery dispute.  Importantly, the written depositions proposed by the OEMs "[do] not permit the probing follow-up questions necessary in all but the simplest litigation." *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 549 (S.D.N.Y. Feb.17, 1989).[11]  The auto parts litigation, involving more than sixty-

---

[11] *See also Scott v. Chipotle Mexican Grill, Inc.,* 306 F.R.D. 120 (S.D.N.Y. 2015) ("One of the obvious difficulties with Rule 31 is that it is hard to formulate cross, redirect, or recross questions before the answers to earlier questions are known. This lack of flexibility…is

five complex antitrust actions, is far from simple and clearly lends itself to depositions by oral examination where follow-up questioning is possible. Further, the OEMs cannot argue that the Subpoena is unprecedented in scope and of immense proportions, while simultaneously arguing that an inferior discovery tool is appropriate to resolve the issues related thereto. Finally, questioning regarding potentially complex data systems, the sources and availability of data and documents maintained by several entities over the course of many years, and the costs and burdens associated with production, calls for the ability to follow-up with the deponents. Removing this flexibility would hinder the entire process ordered by the Special Master.

The Parties have already spent an exorbitant amount of time, money and good-faith effort drafting and serving the joint Subpoena, negotiating with the OEMs, and ultimately briefing the pending motion to compel and participating in the March 24th hearing. The class certification schedules in the Lead Three cases have now been extended twice primarily as a result of the delay in obtaining this important discovery from the OEMs. As this Court indicated at the May 11, 2016 hearing, it is imperative that OEM discovery move forward promptly. The lengthy

---

undoubtedly one of the reasons for the infrequent use of the procedure.") (*quoting* 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2132 (3d ed. 2014)); *Holt v. City of Dickson*, 2011 WL 3850479 (M.D. Tenn. Aug, 30, 2011) ("Part of the disadvantage of a deposition upon written questions is that the deponent cannot be asked follow-up questions.").

and time-consuming process under Rule 31 of serving questions, cross-questions, re-direct questions, and re-cross questions is not a viable option at this time.

Each question and response is also likely to raise a spectrum of objections and discovery disputes, which would further delay and burden the process. *Mill-Run*, 124 F.R.D. at 549 ("[W]ritten questions provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes."). Accordingly, the written deposition "procedure is more cumbersome than an oral examination," and would not alleviate burden or increase efficiency in this case. *See Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120 (S.D.N.Y. 2015) (*quoting* Charles Alan Wright, *Discovery*, 35 F.R.D. 39, 59 (1963)). Given the numerous advantages of oral depositions and the inability of the OEMs to overcome the "presumption in favor of oral depositions," *Zito v. Leasecomm Corp.,* 233 F.R.D. 395, 397 (S.D.N.Y. 2006), the Court should deny the OEMs' request for written depositions.

## V.    DEPOSITIONS OF THE DISTRIBUTOR AND NON-CORE OEM ENTITIES ARE NECESSARY TO DETERMINE THE LOCATION AND NATURE OF EACH OEM FAMILY'S DOCUMENTS AND DATA

The distributor and non-core OEM entities request that the Order be modified to hold in abeyance the 30(b)(6) depositions of these entities is completely at odds with the purpose of these depositions: to determine the location

and availability of responsive information from *each OEM family*.[12] Unless information on the data and documents held by these entities is captured as part of the ordered 30(b)(6) depositions, the Parties will not obtain a complete picture as to where this highly relevant information resides and the depositions will be, in essence, a waste of time. There is no doubt that at least many of these entities have highly relevant information on parts purchases and automobile sales.

In addition to being logical, the Order is also wholly consistent with the Special Master's statements at the March 24, 2016 hearing. The Special Master stated clearly that the deposition process was to include each subpoenaed entity within an *OEM family* that might possess knowledge and information pertaining to the areas of inquiry set forth in the Order. *See* ECF No. 1294. Specifically, the Special Master stated that "when you go through the list of topics you may need an upstream person and a downstream person, you may need a salesperson, you may need a procuring person, you may need somebody in finance or accounting." Ex. Hrg. Tr. at 47:3-6. Counsel for certain Defendants, on behalf of the Parties, then asked the Special Master to confirm that "if there is an entity that does the procurement at a manufacturing level, there is an entity that does the sales at a

---

[12] It is not clear from the face of the objection which entities seek relief. *See* ECF No. 1328. The objection appears to seek to carve out several Mercedes entities, but none of them are listed as parties to the objection. Subaru Leasing Corp. joined the objection, but does not explicitly seek to be carved out of the depositions. Nissan's separate statement notes that Nissan Motor Acceptance Corp. joins the non-core OEMs' objection, but it is not listed in the objection as joining, and does not explicitly seek to be carved out of the depositions. *See* ECF No. 1315.

different level, they should bring people who can address that for the corporate family." *Id.* at 47:8-11. The Special Master clearly stated "[t]hat would be my intentions." *Id.* at 47:14. Those were the Special Master's final words on the issue at the hearing, and are thus properly reflected in the Order.

The distributor and non-core OEMs also fail to provide any reasonable basis for being excluded from the 30(b)(6) deposition process. The distributors seek to be excluded on the grounds that they do not manufacture vehicles or purchase the component parts for such manufacture. *See* ECF 1328 at 7. However, the depositions are meant to cover, among other topics, automobile sales and purchases – transactions about which these entities clearly have data and documents. Those automobile transactions are the basis for the EPP and ADP claims in these cases, and thus their relevance is undisputed. The distributors are necessary for each OEM family to properly testify as to the fifth area of inquiry listed in the Order, which seeks information regarding transactional sales data for sales of vehicles from OEMs to *distributors*, and *distributors* to automobile dealers, truck and equipment dealers and end-consumers. *See* ECF 1294 at 7.

The distributors and non-core OEM entities' arguments regarding burden ignore the fact that the Parties agreed to hold in abeyance in full the subpoenas to all non-core entities *with one caveat*: "to the extent that … [a core] ... purchasing, manufacturing, sales, or distribution entity, does not have certain transactional

purchasing and sales data in their possession (including financing data), but one or more of their affiliated non-manufacturing entities do, the affiliated [entities] … remain obligated to produce such data." *See* ECF 1185 at 34.  Several entities have informed the Parties that they do not possess certain information sought by the subpoena or that any information they do possess is duplicative of that held by their associated core entities.  In those instances, the Parties offered to hold the subpoenas issued to those entities in abeyance.[13]  The Parties' offer was in no way an "acknowledgement of the incidental nature of the Non-Core SSEs," as they allege, but rather a reasonable attempt to relieve any unnecessary burden on these entities.  *See* ECF 1328 at 10.

At the hearing, the Special Master made it clear that each OEM family is to produce individuals who are able to testify as to various functions within the corporate family including "financing or accounting." *See* Ex. A (Hrg. Tr. at 47:6).  As the Non-Core SSEs concede in their declarations, at least some of these entities perform these very functions. *See*, *e.g.*, ECF 1328 at 9 (stating Non-Core SSEs, such as Hyundai Capital America, play roles in financing); ECF 1227 Ex. 43 ¶ 4 ("HCA's primary business is providing indirect vehicle financing....").

Any argument that the burden imposed by the subpoena and Rule 30(b)(6) depositions are disproportionate in relation to the "negligible potentially relevant

---

[13] *See* ECF 1246 Ex. 5 (Feb. 4, 2016 Letter from Parties to Hyundai/Kia Counsel); ECF 1246 Ex. 6 (Feb. 4, 2016 Letter from Toyota counsel to the Parties).

information the entities may have" has no merit.  *See* ECF 1328 at 13.  If these entities truly possess a negligible amount of potentially relevant information due to their limited business operations or otherwise, then there is no burden.  However, if these entities do in fact possess highly relevant information that is solely within their possession, it is clear that they should be subject to the depositions ordered.[14]

Finally, the OEMs' complaints about burden ring hollow in light of the fact that during the five month long meet and confer process, they generally declined to provide any meaningful information on their documents and data (and associated burdens of production).  It was their refusal to provide this information that required the Special Master to order these depositions, so that the Special Master could receive the requisite information in order to evaluate the Motion to Compel. *See* Hrg. Tr. at 15:20-24 ("I reached the conclusion that there simply isn't sufficient information before me today to make a reasonable decision on to— whether to enforce or not to enforce, to what extent to enforce the subpoena.").

---

[14]  Many of the distributor and non-core OEM entities have declared that they perform functions related to some requests and/or have access to at least some responsive information. *See*, *e.g.*, ECF No.1227, Ex. 44 ¶ 6, 8 ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ECF No.1227,  Ex.  45  ¶  8 ███████████████████████████████████████████ ████████████████ ECF No.1227, Ex. 46 ¶ 5 ██████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████ ECF No.1227, Ex. 51 ¶ 4 ("KMA distributes for further sale certain Kia brand vehicles to Kia authorized dealers…"); ECF No.1227, Ex. 41 ¶ 6 ██████ ███████████████████████████████████████████████████████████ ECF No.1227, Ex. 43 ¶ 4 ("HCA's primary business is providing indirect vehicle financing....").

The Special Master has also acknowledged that if an entity has minimal responsive information, the deposition should be quick, thereby decreasing the burden. *See* Hrg. Tr. at 29:22-24 ("What you are suggesting—what I'm hearing is the deposition of your people is going to be very quick?").

The distributor and non-core OEM entities must be included in the 30(b)(6) depositions ordered by the Special Master if any progress is to be made in OEM discovery in this litigation.

## VI.   THE KIA AND HYUNDAI MANUFACTURING ENTITIES SHOULD NOT BE EXCLUDED FROM THE ORDER AS SMALL OEMS AND EXEMPT FROM THE DEPOSITION PROCESS

Hyundai Motors Manufacturing Alabama, Inc. (HMMA) and Kia Motors Manufacturing Georgia, Inc. (KMMG) should not be excluded from the Order. The Hyundai and Kia brands are highly relevant to this litigation since over 430,000 Hyundai and Kia brand vehicles were sold in the United States in 2015 alone; six indirect plaintiffs base their claims on purchases of those cars; Hyundai and Kia, and KMMG in particular, were named in various Defendants' DOJ pleas;[15] and HMMA and KMMG have not demonstrated that they do not possess information relevant to the claims and defenses at issue.

---

[15] *See, e.g.*, DOJ Press Release, https://www.justice.gov/opa/pr/continental-automotive-electronics-and-continental-automotive-korea-agree-plead-guilty-bid (last visited May 11, 2016) (Continental Automotive pleads guilty to bid rigging on instrument panel clusters sold to Hyundai Motor Co., Kia Motors Corp. and Kia Motors Manufacturing Georgia); *see* THE WALL STREET JOURNAL, http://online.wsj.com/mdc/public/page/2_3022-autosales.html#autosalesA (last visited May 10, 2016) (OEM brand U.S. sales market shares in 2015).

HMMA and KMMG argue that their small market shares merit their exclusion from the order, but they rely on the "production share" of *specific plants*, which is not relevant for these purposes.  Hyundai and Kia's share of automobile sales in the U.S. is the relevant metric, and they each have a substantial share that merits inclusion in the discovery and deposition process.  In 2015, U.S. sales of Kia vehicles totaled 194,382, representing 3.6% of total light vehicle sales during that year, and 2015 sales of Hyundai vehicles in the U.S. totaled 240,038, representing 4.4% of total light vehicle sales in the U.S. that year, both market shares being too high to have been included in the Smaller OEM Group.[16]  Even Dr. Donald R. House, the economic expert who submitted a declaration in support of the "Smaller SSEs" opposition to the motion to compel, assessed market share based on an OEM family's aggregate sales in the U.S. during the relevant period, and not based on cars manufactured by specific OEM entities. *See* ECF No. 1227-21 at 3-5.  In keeping with this definition, and the OEM-based sales market share cut off of 3% employed by the SSEs, Dr. House did not include Hyundai or Kia in

---

[16]  *See* THE WALL STREET JOURNAL,  http://online.wsj.com/mdc/public/page/2_3022-autosales.html#autosalesA (last visited May 10, 2016); *see also* Ex. F at 6 (sales by Hyundai, Kia, and Subaru entities alone constitute more than 10% of the U.S. market); ECF No. 1223 at 1 (Smaller OEM brief, joined by OEMs with less than 2.5% U.S. market shares, and not Hyundai or Kia).

his analysis.  *See id.*  As such, HMMA and KMMGs' reliance on Dr. House's declaration is misplaced.[17]

Indeed, during the meet and confer process, the OEMs relied on U.S. sales shares by OEM family, and *not* the manufacturing shares of single plants, in the context of negotiating which OEMs would be subject to initial discovery.  For example, in the OEMs' December 18, 2015 letter to the Parties, the OEMs proposed a 3% U.S. market share threshold for the exclusion of Smaller OEMs from production responsibilities, and in determining which OEMs fit within that definition the SSEs used U.S. sales shares calculated by OEM family, a definition that notably did *not* include either Hyundai or Kia due to their meaningful market shares.  Ex. G *see also* ECF No. 1321 at 2.  And, most significantly, the definition used by the OEMs to define the group of OEMs joining the opposition brief regarding smaller entities included only those *OEM families* with less than a 2.5% share of the U.S. automotive *sales* market, and the SSEs joining that brief did not include (at the time of filing) any Hyundai or Kia entity, consistent with that principle.  *See* ECF No. 1223, at 1.  Given this history, the Court should not now

---

[17] *See* ECF No. 1321 at 3-4 (citing ECF No. 1227-21, Declaration of Donald H. House, Sr.); ECF No. 1320 at 4 (same).

relieve HMMA and KMMG of their deposition responsibilities under the Order on the basis of their newly concocted single-facility market share definition.[18]

In addition to their meaningful market shares and improper joinder of the opposition brief regarding smaller entities, the relevance of information possessed by HMMA and KMMG and the proportionality of the discovery sought, as compared to the burden of production, further support these entities' inclusion in the deposition process.   As declarations submitted by these very entities demonstrate, HMMA and KMMG possess information responsive to the Subpoena's requests and highly relevant to this litigation.   ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ *See* ECF No.1227, Ex. 40 at 5-8.

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[18] HMMA and KMMG also tout their joinder of the smaller OEM opposition to the Parties' motion to compel (ECF No. 1223), three months after that opposition was filed, as proof that they should be excluded from the Order.  *See* ECF No. 1292 (KMMG Joinder); ECF No. 1293 (HMMA Joinder).  But a motion for joinder is not a talisman; it does not grant these entities the right to escape deposition responsibilities without further examination of their circumstances, which demonstrate that their U.S. sales market shares far exceed the criteria for inclusion in the smaller OEM opposition brief.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████  *See* ECF No.1227, Ex. 49 at 4-8.  This information is highly

relevant to the issues of overcharge, damages, and pass through.

Further, the Hyundai and Kia brands are highly relevant to the claims at

issue in this litigation. Both OEMs (and KMMG in particular) have been

mentioned as having purchasing components subject to alleged bid rigging in

various Defendants' DOJ pleas,[19] and multiple Auto Dealer Plaintiffs and End-

Payor Plaintiffs have asserted claims based on the purchase of both Hyundai and

Kia vehicles.[20]  The Hyundai and Kia brands accounted for a total of 8% of U.S.

vehicle sales in 2015 alone and, as such the Special Master's inclusion of Hyundai

and Kia in the OEM families subject to deposition under the Order was proper and

should be upheld.

---

[19] *See, e.g.*, DOJ Press Release, https://www.justice.gov/opa/pr/continental-automotive-electronics-and-continental-automotive-korea-agree-plead-guilty-bid (last visited May 11, 2016) (Continental Automotive pleads guilty to bid rigging on instrument panel clusters sold to Hyundai Motor Co., Kia Motors Corp. and Kia Motors Manufacturing Georgia).

[20] Hyundai (ADPs V.I.P. Motor Cars Ltd. and Table Rock Automotive, Inc., d/b/a Todd Archer Hyundai; EPPs Gary Arthur Herr and Gregory Asken) Kia (ADPs Charles Daher's Commonwealth Motors, Inc., d/b/a Commonwealth Kia and McGrath Automotive Group, Inc.).

## VII.   HINO SHOULD ALSO BE SUBJECT TO THE SPECIAL MASTER'S APRIL 20, 2016 ORDER

Now that the OEMs have objected, the Parties respectfully request that Hino Motors Manufacturing USA, Inc. ("Hino"), which identified itself as a "Smaller SSE," also be included and subject to the Special Master's April 20, 2016 Order for two reasons: (1) TEDPs believe that Hino was impacted by certain of the parts conspiracies alleged in the Auto Parts litigations; and (2) Hino presented the Parties and the Special Master with market share data that is irrelevant to the medium-duty trucks it manufactures and sells.[21]

In the Smaller OEMs' opposition brief on the Motion to Compel, Hino argued that:

> "[b]ecause the Parties apparently wish to examine the U.S. market for cars and light trucks, the medium-duty trucks assembled by Hino should be excluded from their analysis, and Hino's market share would effectively be zero. Even if Hino's medium-duty trucks were counted as part of the overall market from 2003 through 2015, Hino's market share would be less than 0.05% (lower than the market share of other SSEs whose Subpoena obligations the Parties have agreed to hold in abeyance)."

ECF No. 1223 at 5, n.8.  First, Hino ignores that Hino's medium-duty trucks are within the definition of "Trucks and Equipment."[22]  More importantly, while Hino

---

[21]  The Parties have not waived this argument.  *See EEOC v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 835 (6th Cir. 1997).

[22]  TEDPs' *Wire Harnesses* Compl. at 2 (No. 2:14-cv-14451, ECF 64) ("[TEDPs] file this Complaint on behalf of themselves and all other similarly situated dealers (the 'Classes' as defined below) *of medium-duty (Class 4, 5, 6, & 7) trucks* and heavy-duty (Class 8) trucks, buses, commercial vehicles (excluding automobiles, light trucks, vans, sports utility vehicles,

might only represent 0.05% of the *entire automobile market*, it is a major player in the medium-duty truck market relevant to TEDPs' cases.  In fact, as of March 2013, Hino held 11% of the Class 6 and 7 medium-duty truck market.  *See* Ex. H (Tom Berg, *Medium-Duty Update: Winners, Losers and Overall Steady Growth*, TruckingInfo.com (August 2013), http://www.truckinginfo.com/article/story/2013/08/medium-duty-update.aspx) ("Hino conventionals continue to build strong sales momentum, ending the company's fiscal year in March with an 11% share of the Class 6 and 7 market.").

Thus, Hino's representations to the Special Master that it is a smaller entity with only 0.05% market share were extremely misleading in light of an analysis of the relevant market: the *medium-duty truck market*, in which Hino held 11% as of March 2013.  Accordingly, the Parties respectfully request that the Court include Hino as subject to the Special Master's April 20, 2016 Order.

## VIII. CONCLUSION

For the foregoing reasons, the OEMs' objections should be denied in their entirety and the 30(b)(6) depositions should be allowed to proceed, so that OEM discovery may also proceed without further delay.

---

and/or similar motor vehicles sold by automobile dealers), construction equipment, mining equipment, agricultural equipment, railway vehicles, and other similar vehicles (collectively, 'Trucks and Equipment').") (emphasis added); *see also* TEDPs' *Bearings* Compl. at 3 (No. 2:14-cv-13356, ECF 23); TEDPs' *OSS* Compl. at 2 (No. 2:15-cv-12050, ECF 1); TEDPs' *Radiators* Compl. at 2 (No. 2:15-cv-14097, ECF 1); TEDPs' *Starters/Alternators* Compl. at 1 (No. 2:15-cv-14096, ECF 1).

Date: May 16, 2016                    Respectfully submitted,

*/s/ Steven N. Williams*
Steven N. Williams
Demetrius Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C**.
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
**CUNEO, GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

Don Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com

*Interim Co-Lead Class Counsel for
Dealership Plaintiffs*

*/s/ J. Manly Parks (with consent)*
Wayne A. Mack
J. Manly Parks
Andrew R. Sperl
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA  19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com
arsperl@duanemorris.com

*Interim Class Counsel for Truck and
Equipment Dealer Plaintiffs*

*/s/ Adam C. Hemlock* (w/consent)
Adam C. Hemlock
Steven A. Reiss
Lara E. Veblen Trager
Kajetan Rozga
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com
kajetan.rozga@weil.com

*/s/ Frederick R. Juckniess* (w/consent)
Frederick R. Juckniess
**SCHIFF HARDIN LLP**
350 South Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1504
fjuckniess@schiffhardin.com

*Attorneys for Defendants Bridgestone*
*Corporation and Bridgestone APM*
*Company*

*/s/ Steve A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com

Fred K. Herrmann
Joanne G. Swanson
Matthew L. Powell
**KERR, RUSSELL AND WEBER PLC**
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
Fax (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russell.com

*Counsel for Defendants Calsonic Kansei Corporation and Calsonic Kansei North America, Inc.*

*/s/ Sheldon H. Klein* (w/consent)
Sheldon H. Klein (P41062)
David F. DuMouchel (P25658)
**BUTZEL LONG**
150 West Jefferson, Suite 100
Detroit, MI 48226
Tel.: (313) 225-7000
Fax: (313) 225-7080
sklein@butzel.com
dumouchd@butzel.com

W. Todd Miller
**BAKER & MILLER PLLC**
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Tel.: (202) 663-7820
Fax: (202) 663-7849
TMiller@bakerandmiller.com

*Attorneys for Defendants TRAM, Inc. and Tokai Rika Co., Ltd.*

*/s/ Steven F. Cherry* (w/ consent)
Steven F. Cherry
David P. Donovan
Brian C. Smith
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com

*Counsel for Defendants DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, DENSO Korea Automotive Corporation, DENSO Products & Services Americas, ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., ASMO Manufacturing, Inc., and ASMO North Carolina Inc.*

Steven M. Zarowny
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax:   (248) 213-2551
steve_zarowny@denso-diam.com

*Counsel for Defendant DENSO International America, Inc.*

/s/ Larry S. Gangnes (w/consent)
Larry S. Gangnes
Heidi B. Bradley
**LANE POWELL PC**
U.S. Bank Centre
1420 Fifth Ave., Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Tel.: (206) 223-7000
Fax: (206) 223-7107
gangnesl@lanepowell.com
bradleyh@lanepowell.com

Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
**LANE POWELL PC**

MODA Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
Tel.: (503) 778-2100
Fax: (503) 778-2200
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
**KEMP KLEIN LAW FIRM**
201 W. Big Beaver, Suite 600
Troy, MI 48084
Tel.: (248) 528-1111
Fax: (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Furukawa Electric
Co., Ltd. and American Furukawa, Inc.*

*/s/  Anita F. Stork*  (w/consent)
Anita F. Stork
Gretchen Hoff Varner
Cortlin H. Lannin
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-6000
Fax:  (415) 955-6550
astork@cov.com
ghoffvarner@cov.com
clannin@cov.com

Michael J. Fanelli
Ashley E. Bass
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Fax: (202) 662-5383
mfanelli@cov.com
abass@cov.com

- 37 -

*Attorneys for Defendants Alps Electric Co., Ltd.; Alps Electric (North America), Inc.; and Alps Automotive, Inc.*

/s/Maureen T. Taylor (w/consent)
Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
**BROOKS WILKINS SHARKEY & TURCO PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Alps Electric Co., Ltd.; Alps Electric (North America), Inc.; and Alps Automotive, Inc.*

/s/Timothy J. Lowe (w/consent)
Timothy J. Lowe (P68669)
39533 Woodward Ave., Ste. 318
Bloomfield Hills, MI 48304
Telephone: (248) 220-1359
Fax: (248) 646-5075
tlowe@mcdonaldhopkins.com

*Attorneys for Defendants Diamond Electric Mfg. Co., Ltd., Diamond Electric Mfg. Corp., Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc.*

/s/ Matthew J. Reilly (w/consent)
Matthew J. Reilly
Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
900 G Street, N.W.
Washington, D.C. 20001
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corp.*

*/s/ Donald M. Barnes* (w/consent)
Donald M. Barnes
Molly S. Crabtree
Jay L. Levine
Christopher C. Yook
**PORTER WRIGHT MORRIS & ARTHUR LLP**
1900 K Street, NW, Ste. 1110
Washington, DC 20006
Tel.: (202) 778-3054
Fax: (202) 778-3063
dbarnes@porterwright.com
mcrabtree@porterwright.com
jlevine@porterwright.com
cyook@porterwright.com

*Counsel for Defendants G.S. Electech, Inc., G.S.W. Manufacturing, Inc., and G.S. Wiring Systems, Inc.*

*/s/ Heather L. Kafele* (w/consent)
Heather L. Kafele
Keith R. Palfin
**SHEARMAN & STERLING LLP**
401 9th Street, NW, Suite 800
Washington, DC 20004
Tel.: (202) 508-8097
Fax: (202) 508-8100
heather.kafele@shearman.com
keith.palfin@shearman.com

Brian M. Akkashian
**PAESANO AKKASHIAN, PC**
132 N. Old Woodward Avenue
Birmingham, MI 48009
Tel.: (248) 792-6886
bakkashian@paesanoakkashian.com

*Counsel for Defendants JTEKT*
*Corporation and JTEKT Automotive*
*North America, Inc.*


/s/  William M. Sullivan Jr. (w/consent)
William M. Sullivan Jr.
Michael L. Sibarium
Jeetander T. Dulani
**PILLSBURY WINTHROP SHAW**
**PITTMAN LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036-3006
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
wsullivan@pillsburylaw.com
michael.sibarium@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

*Counsel for Mikuni America Corporation*

/s/  William S. Farmer (w/consent)
William S. Farmer
David C. Brownstein
**FARMER BROWNSTEIN JAEGER**
**LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94102
Tel.:  (415) 795-2050
Fax:  (415) 520-5678
wfarmer@fbj-law.com
dbrownstein@fbj-law.com

*Counsel for Defendants Mitsuba*
*Corporation and American Mitsuba*
*Corporation*

*/s/ Scott T. Seabolt (w/consent)*

Scott T. Seabolt
**SEABOLT LAW FIRM**
17199 N. Laurel Park Dr., Ste. 215
Livonia, Michigan 48152
(248) 717-1302
sseabolt@seaboltpc.com

*Counsel for Defendants Mitsubishi
Heavy Industries America, Inc. and
Mitsubishi Heavy Industries
ClimateControl, Inc.*

*/s/ Kenneth R. Davis* (w/consent)
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi
Peter D. Hawkes
**LANE POWELL PC**
MODA Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
503-778-2100
503-778-2200 (facsimile)
davisk@lanepowell.com
bachmanc@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com
hawkesp@lanepowell.com

Larry S. Gangnes
Heidi B. Bradley
**LANE POWELL PC**
1420 Fifth Avenue, Suite 4200
Seattle, WA 98111-9402
206-223-7000
206-223-7107 (facsimile)
gangnesl@lanepowell.com
bradleyh@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
**KEMP KLEIN LAW FIRM**
201 W. Big Beaver, Suite 600
Troy, MI 48084
Tel.: (248) 528-1111
Fax: (248) 528-5129
richard.bisio@kkue.com
ron.nixon@kkue.com

*Counsel for Nachi America Inc. and
Nachi-Fujikoshi Corporation*

*/s/ Jeremy J. Calsyn* (w/consent)
Jeremy J. Calsyn (DC Bar #467737)
Steven J. Kaiser (DC Bar #454251)
Teale Toweill (DC Bar #996061)
Carl Lawrence Malm (DC Bar #1104489)
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
jcalsyn@cgsh.com
skaiser@cgsh.com
ttoweill@cgsh.com
lmalm@cgsh.com

*Counsel for NSK Americas, Inc. and NSK Ltd.*

*/s/ Jeffrey L. Kessler* (w/consent)
Jeffrey L. Kessler
A. Paul Victor
Molly M. Donovan
Jeffrey J. Amato
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
jamato@winston.com

*Counsel for NTN Corporation and NTN USA Corporation*

*/s/ John Roberti* (w/consent)
John Roberti
Matthew Boucher
**ALLEN & OVERY LLP**
1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com
matthew.boucher@allenovery.com

Michael S. Feldberg
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
212-610-6360

michael.feldberg@allenovery.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
**WARNER NORCROSS & JUDD LLP**
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Defendants Robert Bosch
LLC and Robert Bosch GmbH*


/s/ Matthew L. Fornshell (w/ consent)
Matthew L. Fornshell
**ICE MILLER LLP**
250 West Street
Suite 700
Columbus, OH 43215
Telephone: (614) 462-1061
Facsimile: (614) 222-3692
Matthew.Fornshell@icemiller.com

*Counsel for Defendants Showa
Corporation and American Showa Inc.*


/s/  Matthew J. Reilly (w/consent)
Matthew J. Reilly
Abram J. Ellis
David T. Shogren
**SIMPSON THACHER & BARTLETT
LLP**
1155 F Street, N.W.
Washington, D.C. 20004
Tel.: (202) 636-5500
Fax: (202) 636-5502
matt.reilly@stblaw.com
aellis@stblaw.com
dshogren@stblaw.com

George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

*Attorneys for Defendants Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc.*

*/s/ Larry J. Saylor* (w/consent)
Larry J. Saylor
**MILLER, CANFIELD, PADDOCK & STONE P.L.C.**
150 W. Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 496-7986
Facsimile: (313) 496-8454
Saylor@MillerCanfield.com

*Counsel for Defendants Sumitomo Riko Company Limited and DTR Industries, Inc.*

*/s/  William H. Horton* (w/consent)
William H. Horton (P31567)
**GIARMARCO, MULLINS & HORTON, P.C.**
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone:  248-457-7060
bhorton@gmhlaw.com

*Counsel for Defendants Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.); and Sumitomo Wiring Systems (U.S.A.) Inc.*

*/s/  David M. Zinn* (w/consent)
David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Takata Corporation and TK Holdings, Inc.*

*/s/  Bradley J. Schram*  (w/consent)
**HERTZ SCHRAM PC**
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
Tel.: (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Toyo Tire & Rubber Co., Ltd., Toyo Automotive Parts (USA), Inc., Toyo Tire North America Manufacturing Inc., and Toyo Tire North America OE Sales LLC*

*/s/  Randall J. Turk* (w/consent)
Randall J. Turk
John Taladay
Mark Miller
Heather Souder Choi
Sterling A. Marchand
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400
Phone: 202.639.7700
Fax: 202.639.7890
randy.turk@bakerbotts.com
john.taladay@bakerbotts.com
mark.miller@bakerbotts.com
heather.choi@bakerbotts.com
sterling.marchand@bakerbotts.com

*Counsel for Toyoda Gosei Co., Ltd., TG Missouri Corporation, and Toyoda Gosei North America Corporation*

*/s/  Brian Byrne* (w/consent)
Brian Byrne
Ryan M. Davis
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
2000 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 974-1850
Facsimile: (202) 974-1999
bbyrne@cgsh.com
rmdavis@cgsh.com

*Counsel for Defendants Valeo Japan Co.,
Ltd., Valeo Inc., Valeo Electrical Systems,
Inc., and Valeo Climate Control Corp.*


*/s/ Joanne Geha Swanson* (w/consent)
Joanne Geha Swanson (P33594)
Fred K. Herrmann (P49519)
**KERR, RUSSELL AND WEBER,
PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*Counsel for Defendants Yamashita
Rubber Co., Ltd. and YUSA Corporation*

*/s/ Joanne Geha Swanson* (w/consent)
Joanne Geha Swanson (P33594)
Fred K. Herrmann (P49519)
**KERR, RUSSELL AND WEBER,
PLC**
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*Counsel for Defendants Fujikura Ltd. and
Fujikura Automotive America LLC*