# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | ) ) ) ) | Master File No.:  12-md-02311 Honorable Marianne O. Battani |
| **In Re: All Auto Parts Cases** | ) ) ) | 2:12-MD-02311-MOB-MKM |
| **THIS DOCUMENT RELATES TO:** **ALL AUTO PARTS CASES** | ) ) ) ) | **Oral Argument Requested** |

## REPLY IN SUPPORT OF CERTAIN SSEs' OBJECTIONS TO THE SPECIAL MASTER'S APRIL 20, 2016 ORDER REGARDING 30(b)(6) DEPOSITIONS

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 45

Fed. R. Civ. P. 53

*Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 960 (6th Cir. 1985)

*Mazur v. Wal-Mart Stores, Inc.*, 2006 WL 7344548 (E.D. Mich. 2006)

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     THE SPECIAL MASTER LACKS THE AUTHORITY TO SUA SPONTE
        ORDER NON-PARTY DEPOSITIONS .............................................................. 3

        A.      The Special Master Lacks Authority to Compel Testimony from Non-
                Parties Without a Rule 45 Subpoena. ..................................................... 4

        B.      The Special Master Lacks Authority to Resolve Discovery Issues that
                Have Not Been Referred to Him. .............................................................. 5

        C.      The Special Master Exceeded His Authority by Denying the SSEs the
                Right to Object to the Deposition Notice. ................................................ 7

III.    THE SPECIAL MASTER'S DEPOSITION ORDER CONTAINS
        INAPPROPRIATE PROVISIONS AND OMITS NECESSARY ONES ........................ 7

        A.      The Order Fails to Resolve the Only Discovery Dispute Presented. ....................... 8

        B.      The Order Does Not Limit the Compelled Depositions to their Ostensible
                Purpose. .................................................................................................... 8

        C.      The Order Dispenses with the Requirement that the Parties Describe the
                Topics for Examination with "Reasonable Particularity" and Improperly
                Rejects the SSEs' Request for Written Questions. ............................... 10

IV.     CONCLUSION .................................................................................................. 12

# FULL TABLE OF AUTHORITIES[1]

**CASES**                                                                                    **PAGES**

*Bell v. Woodward Governor Co.*,
    2005 WL 3829134 (N.D. Ill. 2005) ................................................................. 11

*Beloit Liquidating Trust v. Century Indem. Co.*,
    2003 WL 355743 (N.D. Ill. 2003) ................................................................. 11

*Brown v. Wesley's Quaker Maid, Inc.*,
    771 F.2d 952 (6th Cir. 1985) ......................................................................... 4

*Holcombe v. Helena Chem. Co.*,
    2016 WL 2897942 (D.S.C. 2016) ................................................................. 11

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    562 F. Supp. 2d 606 (D. Del. 2008) .............................................................. 6

*Johnson v. Ford Motor Co.*,
    2015 WL 4137707 (S.D. W.Va. 2015) .......................................................... 6

*Mazur v. Wal-Mart Stores, Inc.*,
    2006 WL 7344548 (E.D. Mich. 2006) ......................................................... 4

*Ruiz-Bueno v. Scott*,
    2013 WL 6055402 (S.D. Ohio 2013) ......................................................... 5, 6

*U.S. v. 2121 Celeste Rd. SW*,
    307 F.R.D. 572 (D.N.M. 2015) ..................................................................... 4

*U.S. v. Perry*,
    360 F.3d 519 (6th Cir. 2004) ......................................................................... 6

**Rules**

Fed. R. Civ. P. 30 ................................................................................... *passim*

Fed. R. Civ. P. 45 ............................................................................ 3, 4, 5, 12

Fed. R. Civ. P. 53 .......................................................................................... 6

---

[1] Unless otherwise noted, all emphasis added and internal citations and quotation marks omitted; and all ECF cites are to 2:12-md-02311.

## I.       INTRODUCTION

The theme of the Parties' opposition – that the SSEs have not cooperated in these proceedings – is false.[2]  The SSEs made a major offer of production to the Parties, which would have satisfied all of their reasonable needs, *five months ago*.  *See* Ex. 4. Rather than accept that offer, or respond with a reasoned counter, the Parties summarily declared impasse and filed their motions to compel, bringing us to where we are today.  Exs. 5, 6.  At the Court's latest hearing, the Special Master chided the Parties for their unrealistic expectations and all-or-nothing approach:

> "In the last motion [regarding] the OEMs, it was disclosed to me that we're talking about 1.5 billion documents being requested … You cannot … expect to get 1.5 billion documents,  at least not in one fell swoop. So one of the areas I would like you to focus on is *how do you eat an 800-pound elephant, and the answer is one bite at a time.* So if you can say … we agree that for right now we will take this subset of the documents and … see what those look like, and then come back and say we will take this subset, the other side agrees we will see what those look like, so if we take it in steps we can attack and concur [sic] this 1.5 billion pound elephant. So, please, think about how we can approach your motions on a step-by-step basis as opposed to all or nothing."  May 11, 2016 Hrg. Tr. at 20.

Instead of signaling in their response brief that they have received this message and are willing to work with the SSEs, the Parties use their pulpit to continue their string of misguided attacks – most *ex parte* – launched over the last several months. *See* Jan. 20, 2016 Hrg. Tr. at 53 (telling the Court, wrongly, that the SSEs' position is "until you agree ahead of time that you will pay every penny we spend to respond we won't do anything"); 12-cv-00103 ECF 456, at 2 (groundlessly asserting that "the OEMs have banded together and taken the unprecedented position that they will produce nothing"); ECF 1250, at 20 n.15 (groundlessly asserting that

---

[2] The entities listed in footnote 3 of the SSEs' opening brief join this reply.  The Nissan Entities join except as to Section III.A.

"most, if not all, of the OEMs have likely already settled with … the defendants"); ECF 1254, at 1-2, 4 (baselessly accusing SSEs of colluding with defendants to oppose requests for attorney work product and settlement communications).

This time, the Parties argue that the depositions that are the subject of the SSEs' objections were ordered because "the Special Master **expressly observed** that the OEMs have thus far not provided any information regarding what data and documents exist on the categories at issue in the motion to compel."  P. Br. 2.  The Parties make this contention without citation or quotation, and, as far as the SSEs know, the Special Master never uttered such a statement. The SSEs' fifty-six, highly detailed, sworn declarations from across their corporate families – many of which address the Subpoena request by request (or by groupings of requests) – negate the possibility of any such observation. ECF 1227, at Exs. 21-76; ECF 1229 (sealed submissions).[3]

The purpose of the depositions, as the Special Master **actually** "observed," was to "whittle down the largest subpoena that has ever been issued and perhaps **alleviate** some of the concerns that have been **raised by the OEMs** that have to comply with this subpoena."  March 24, 2016 Hrg. Tr. at 43.  We raised those concerns after organizing to efficiently address the largest subpoena in history.  Since then, we have not only satisfied our basic obligations as subpoena recipients, we have exceeded them – carefully describing and grouping each of the more than 100 served entities to help the Parties understand which SSEs may have responsive information and which do not; foregoing venue objections; making the offer noted above before

---

[3] For example, Toyota alone submitted five separate affidavits – fourteen pages of single-spaced paragraphs – describing the availability and burden of producing responsive materials.  ECF 1229, at Exs. 66-69.  Among other things, those affidavits discuss two separate systems used to track auto-parts purchases and a system used to track vehicle sales, as well as the **specific** burdens associated with collecting and producing data from those systems.  SSE declarations also identify the databases implicated by the Subpoena, the accessibility of the information, and the burden – in hours and dollars – involved in retrieving it.  These affidavits demonstrate that the Parties' repeated assertions that the OEMs have failed to produce specific information concerning document discovery are meritless.

impasse was declared; hiring **two** expert economists, after impasse was declared, to file affidavits explaining how the Parties could satisfy their data needs with information already in their possession (ECF 1227, at Exs. 19-20); and setting forth in detail highly confidential or proprietary information about the SSEs' cost, price, procurement, and other data systems. For their part, the Parties have not supported their ***need*** for the demanded information with anything but lawyers' argument.[4]

The briefing on the SSEs' Objections affords a window into these contrasting styles. We cite the law, they ignore it. We quote the record, they reimagine it. What little of substance they do put forward confirms that the SSEs' objections should be sustained.[5]

## II. THE SPECIAL MASTER LACKS THE AUTHORITY TO SUA SPONTE ORDER NON-PARTY DEPOSITIONS

The SSEs assert two categories of objections: one jurisdictional, the other focused on the efficiency and propriety of certain aspects of the Special Master's Order. As to the jurisdictional

---

[4] Just after the Special Master encouraged the Parties to be realistic in their demands of the SSEs, counsel for the Parties stated that, if the Court orders enforcement of the Subpoena, document production would take "ideally a month." May 11 Hrg. Tr. at 35. The "modified" Subpoena seeks nearly **ninety** categories of documents for time periods ranging from ***twelve to twenty-two years***. This would cover: (i) every part the SSEs have purchased for decades; (ii) every vehicle they have built; (iii) every vehicle they have sold; and (iv) every vehicle their customers, in turn, have sold. The SSEs' declarations illustrate the yawning gap between the Parties' Subpoena and rhetoric. Compliance, where possible, would require many SSEs to devote hundreds or thousands of hours of investigative work to determine if they even have the information requested. *See generally* ECF 1227, at Exs. 21-76 and ECF 1229; *see* in particular ECF 1227, at Exs. 32 ¶¶ 5-6; 46 ¶ 7; 50 ¶ 13; 56 (declaration of Ph.D. economist with years of experience with Nissan's systems); 75 ¶ 23. Just *partial* compliance would be "the equivalent of an 18-year company-wide recall investigation on steroids," one declarant noted, requiring the research and investigation needed to trace not just one part through the supply chain, but thousands. ECF 1227, at Ex. 29 ¶ 8. Databases never intended to jibe would need to be aligned and married. This is on top of the Parties' demands for virtually unlimited custodial information covering the purchasing and sales practices of each SSE family for the last two decades. Such demands could implicate hundreds of custodians, each of whom would need to be identified and searched. *E.g. id.* at Exs. 26 ¶ 26; 66 ¶ 8; 71 ¶ 21. If the Parties would like full production within 30 days – an aggressive timeframe for a garden-variety subpoena – the Court should order them to transform their Subpoena into a narrow, focused, and proportionate one.

[5] As for the schedule, the Parties waited until 2015 to seek what they call "the key information regarding Plaintiffs' claims and Defendants' defenses" for cases that were filed in 2012. P. Br. 1-2. The SSEs have no view about the causes of such delays, but note that since they became involved in these matters, the SSEs have consistently moved at a far brisker clip than the Parties.

issues, we do not contend that the Parties are jurisdictionally barred from *seeking* depositions, just that the Special Master had no authority to order them *sua sponte*, especially without the protections afforded by Rule 45.  But before discussing the Parties' response to our objections, we pause to explain why this issue is so important.  In the context of the broadest and most burdensome subpoena in the history of American litigation, it is especially important that the rules be followed to a "T."  We understand the desire to be "practical," and appreciate that vacating the Order on jurisdictional grounds may not afford much practical relief, as the Parties would likely respond by serving Rule 45 subpoenas.  But we are equally concerned about being run over roughshod as this process unfolds.  The Federal Rules at least offer a measure of protection.  By insisting at the outset on proper ***rules-based*** procedures that respect our due process and other procedural rights, the train will remain on the rails as SSE discovery proceeds.  Here, abiding by those procedures mandates that these objections be sustained.

### A.     The Special Master Lacks Authority to Compel Testimony from Non-Parties Without a Rule 45 Subpoena.

The SSEs' opening brief cited bedrock law showing that because ***non-party*** deposition testimony may be compelled only via Rule 45, the Special Master exceeded his (and the Court's) jurisdictional authority by dispensing with the subpoena requirement. SSE Br. 5-7 (citing cases); *see also, e.g.*, *U.S. v. 2121 Celeste Rd. SW*, 307 F.R.D. 572, 586-87 (D.N.M. 2015) (collecting cases where "courts have denied motions to compel non-parties to produce information where the moving party did not first attempt to subpoena the information").[6]

---

[6] The Parties do not deny that *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952 (6th Cir. 1985), and *Mazur v. Wal-Mart Stores, Inc.*, 2006 WL 7344548 (E.D. Mich. 2006), hold that a Rule 45 subpoena is required to compel non-party deposition testimony.  Instead, they argue those cases are distinguishable because the parties were seeking testimony relating to the merits of their cases.  That is a distinction without a difference.

In response, the Parties resort to an *ad hominem* attack, characterizing the SSEs' insistence on proper procedure as "merely another attempt to delay." P. Br. 11. But the Parties cannot avoid the rules – or the jurisdictional limits they impose – just because they find them bothersome. Nor is there merit to their argument that Rule 45 is dispensable if the testimony concerns "discovery on discovery." The Parties cite no authority where the Court's (much less the Special Master's) jurisdiction depends on the substance of the desired testimony. Nor do the Rules contain any such exception. As the Advisory Committee makes clear, "under the rules, a subpoena rather than a notice of examination" is necessary "to compel attendance at the taking of a [non-party] deposition." Fed. R. Civ. P. 30, 1971 Advisory Comm. Notes. Because there is no authority to compel deposition testimony absent a Rule 45 Subpoena, the Order must be vacated.

### B.   The Special Master Lacks Authority to Resolve Discovery Issues that Have Not Been Referred to Him.

The SSEs showed that that the Special Master exceeded his authority by *sua sponte* ordering deposition testimony, though no deposition discovery had been served on the SSEs, and no dispute about such testimony had been presented to the Court or referred to the Special Master for resolution. SSE Br. 7-10. In response, the Parties do not deny that the **only** dispute presented to the Special Master concerned **document** discovery, not deposition discovery.

Instead, the Parties claim that the Special Master "can order discovery that seeks further information … to resolve a pending discovery dispute." P. Br. 8. They are mistaken. Certainly, if the Parties were to move to compel compliance with a subpoena seeking deposition testimony, the Special Master could resolve that motion (if it were referred to him). But that is not what happened here. The Special Master *sua sponte* ordered testimony in the absence of any deposition request or any motion to compel compliance with such a request. That is impermissible.

None of the three cases the Parties cite support their position that a Special Master has free rein to order "discovery on discovery" absent a request and motion. In *Scott*, the court simply held that discovery on discovery was relevant for purposes of Rule 26, and granted the parties' motion to compel compliance with properly served interrogatories. *Ruiz-Bueno v. Scott*, 2013 WL 6055402, *1 (S.D. Ohio 2013). Similarly, in *Ford*, the court allowed *party* "discovery on discovery" depositions via Rule 30(b)(6). *Johnson v. Ford Motor Co.*, 2015 WL 4137707, *9-11 (S.D. W.Va. 2015). In *Intel*, the Special Master simply explained that he would like more information before deciding a separate motion to compel; he did not *compel* non-parties to provide additional discovery. *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 615 (D. Del. 2008). Here, the Special Master went beyond noting the need for additional information and *suggesting* that Parties use the available discovery tools to obtain such information.

The Rules do not allow this. The Parties do not contend that the Special Master is conducting an "evidentiary hearing," and thus, implicitly concede that Rule 53(c)'s grant of authority to "compel, take, and record evidence" in that limited circumstance does not apply. *See* Fed. R. Civ. P. 53(c)(1)(C). Seeking to end-run this limitation, the Parties rely on the catch-all provision that permits the Special Master to "take all ***appropriate*** measures to perform the assigned duties fairly and efficiently." Fed. R. Civ. P. 53(c)(1)(B). As an initial matter, the Parties' interpretation violates "the most basic canon[] of statutory interpretation … that a more specific provision takes precedence over a more general one." *U.S. v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004). If a Special Master can compel testimony in furtherance of any "assigned duty," then there would be no need for the provision limiting such authority to "evidentiary hearings." Moreover, the Parties' citation simply begs the question of whether the actions here were

"appropriate," *i.e.*, authorized by rule or statute. The SSEs' opening brief demonstrated that they were not.

Nor do the Parties cite any case in which the "appropriate measures" provision allows a Special Master to (i) resolve discovery disputes that have not been properly raised with the Court and referred to the Special Master, or (ii) *sua sponte* require non-parties to provide testimony. The "appropriate measures" provision may permit the Special Master to order supplemental briefs, hold oral argument, or even hold a pending motion in abeyance to allow the Parties to supplement the record. But the Special Master had no authority to directly compel testimony where no motion to compel such testimony has been properly filed and referred.

> **C.   The Special Master Exceeded His Authority by Denying the SSEs the Right to Object to the Deposition Notice.**

The Parties argue that nothing was lost in preventing the SSEs from objecting to the 30(b)(6) notice. P. Br. 12-13. They do not deny that the broad deposition topics were cobbled together over a 45-minute lunch break, revealed simultaneously to the Special Master and the SSEs, and generally approved by the Special Master on the spot (and later memorialized in his Order). SSE Br. 10-11. The SSEs' proposed revisions were then summarily rejected without explanation. The Order nonetheless deprives the SSEs of their right to lodge and preserve formal objections. There is no authority for this limitation of rights.

The Parties' only response is that maintaining the right to object may result in more delay. Following the Federal Rules is not delay, and, as set forth below, the Parties' arguments confirm that the notices they propose are objectionable on their face.

## III.   THE   SPECIAL   MASTER'S   DEPOSITION   ORDER   CONTAINS INAPPROPRIATE PROVISIONS AND OMITS NECESSARY ONES

The Parties' arguments confirm that the SSEs' proposed modifications to the Order were not only salutary, but necessary.

**A.      The Order Fails to Resolve the Only Discovery Dispute Presented.**

The SSEs explained that the Order is infirm because it does not resolve the only dispute presented to the Special Master.  SSE Br. 12-13.  Under the Appointment Order, the Special Master was required to resolve the dispute over the motion to compel within 15 days.  *Id.*  At the hearing, the Special Master recognized this, indicating that he would be "adjourning [the] motion" as to "all the parties, including the OEMs" because, he apparently hoped, that the depositions would ***finally*** convince the Parties to "make some good-faith negotiations" to "whittle" down the Subpoena.  March 24, 2016 Hrg. Tr. at 43.  After those negotiations, according to the Special Master, "[t]here is going to be clearly another motion on this matter." *Id.*

The Parties (apparently) concede that the Special Master's decision not to deny the motions without prejudice, or at least "adjourn" them, was a "foot-fault," though they otherwise contend that there is "no requirement" to adjourn or deny without prejudice.  P. Br. 10 n.7.  The authority, of course, is the Appointment Order.  Heeding that authority would have served two salutary purposes: (i) harmonizing the Order with the Appointment Order and (ii) encouraging the Parties to utilize the information they gained through the deposition process for its intended purpose – good faith negotiations to limit their overbroad Subpoena.

**B.      The Order Does Not Limit the Compelled Depositions to Their Ostensible Purpose.**

The Parties implicitly confirm that the Special Master had no basis for failing to include the SSEs' proposed language limiting the depositions to "testimony concerning the location and availability of responsive information and the burdens of obtaining it."  SSE Br. 13.  They now agree that the depositions are meant to be an "inquiry into … what information the OEMs have

to produce and the accessibility or burdens associated with production."  P. Br. 13.  They state further that "no party has ever indicated a desire to expand the" inquiry beyond that purpose.  *Id.*

That being the case, there is no reason why the Order should not reflect these (now) agreed-upon limitations.  As the SSEs explained, their proposed order provided that "[q]uestions on [the listed] topics shall be limited to inquiry into format, volume, physical location, time period, status of system on which the data is maintained (*i.e.,* current or legacy systems), and cost estimates and burden associated with production."  SSE Br. 13 (quoting Ex. 1, § II.B).  For avoidance of doubt, the SSEs' proposed order clarified that "no Party may ask any Deponent SSE Group **substantive** questions about the Auto Parts cases," such as "questions about price fixing, overcharges, pass-through, damages, internal investigations, or external discussions relating to these cases."  *Id.* (quoting Ex. 1, § II.C).  The Parties rejected these limits, as did the Special Master, each without explanation.

While the Parties contend that "the Order sufficiently clarifies that" these limits exist, they do not cite any provision that contains this clarification, and no provision does.  P. Br. 13.  Indeed, the SSEs are concerned that some Parties want to cover substantive topics at the depositions.  At the May 11th hearing, counsel for defendants stated "we think these Rule 30(b)(6) [depositions] will actually help to expedite things because … ***the whole point of them*** we believe is to get some initial discovery about ***how the OEMs do their procurement, how they price vehicles*** and to really target our discovery and to get what we need, as the Special Master suggested, in a more expeditious way …."  May 11 Hrg. Tr. at 40.  Given that the defendants signed the May 16th opposition brief, we presume they have rethought the position they espoused just five days earlier.  Either way, the depositions are ***not*** supposed to be about how the OEMs do their procurement or price their vehicles, but about how they maintain files containing related

information, as the Special Master made crystal clear.  March 24 Hrg. Tr. at 43 ("I just feel that this is *only* an inquiry into ***what data is available***").  Any future order should make that clear, especially since the failure to so clarify would cause the deposition topics to violate the reasonable particularity standard.  Doing so would provide any future Deponent SSEs with assurance that they may confine their preparation to the location, availability, and burden of producing data; prevent multiple depositions on these issues in violation of Rule 30(d)(1); and preclude the need – and perhaps inevitability, based on defense counsel's comments – for motion if these limits are not respected.

### C.    The Order Dispenses with the Requirement that the Parties Describe the Topics for Examination with "Reasonable Particularity" and Improperly Rejects the SSEs' Request for Written Questions.

The Parties' brief also confirms that the Special Master incorrectly dispensed with Rule 30's reasonable particularity requirement. The entirety of the Parties' defense as to the particularity of the topics is as follows:

> "[T]he topics in the Order directly mirror the requests in the Motion to Compel for which further information is needed in order for the Special Master to make his ruling … The Order sufficiently states the topics and provides the OEMs with the information they need to produce representatives to testify. Nothing more is required."  P. Br. 13.

The fact that the proposed topics "mirror" requests in the "Motion to Compel" (or the Subpoena, as this sentence should presumably be construed) does not mean that they are reasonably particular.  The requests in the *Subpoena* are the antithesis of reasonableness and particularity, calling for virtually every shred of paper in the SSEs' files over the last twenty-five years.  That the topics "mirror" the requests is the best reason to condemn them.

The SSEs proposed relatively minor tweaks to the topics to make them more comprehensible and amenable to preparation and testimony.  *See* SSE Br. at Ex. 1.  More importantly, the SSEs proposed two separate mechanisms for advancing the Parties' interests in

obtaining useful information, and reducing the SSEs' burdens in providing it.  Specifically, the SSEs proposed to conduct depositions on written questions; and, alternatively, to preclude wasteful motion practice based on an inability to respond to a given question unless presented in advance.  SSE Br. 14-16.

The Parties respond to the SSEs' written questions proposal with a laundry list of cases touting the benefits of oral examinations in ***contested, adversarial party*** discovery.  P. Br. 16-19. To be sure, the Parties seem to believe that these depositions will be highly charged affairs, as they anticipate a "spectrum of objections" to "[e]ach question and response." P. Br. 19.  Their expectation is puzzling, as these depositions are supposed to be about data repositories, not criminal price fixing.

For depositions of the type the Special Master contemplated, courts agree that written responses are more efficient and less burdensome.  *See Holcombe v. Helena Chem. Co.*, 2016 WL 2897942, *1-3 (D.S.C. 2016) (observing "written discovery will almost certainly be more efficient and cost-effective than taking a … corporate deposition" where the inquiry is how long the company used certain forms and the number of relevant employees over a four-year period); *Bell v. Woodward Governor Co.*, 2005 WL 3829134, *3 (N.D. Ill. 2005) (finding inquiry into "data base codes" "would be more efficient than a 30(b)(6) deposition"); *Beloit Liquidating Trust v. Century Indem. Co.*, 2003 WL 355743, *4 (N.D. Ill. 2003) (finding that "written responses are more efficient" for identification of employees and departments with discoverable information).

While the Parties complain of the inability to follow up on written questions, this is follow up.  They need only generate targeted questions about the systems and information already detailed in the declarations submitted by the SSEs.

The Parties' respond to the SSEs' second proposal by mischaracterizing it, calling it "a *requirement* that the Parties provide a detailed script of questions to be asked no later than two weeks before the deposition (or else the right to ask those questions *will be waived*)."  P. Br. 15. As an initial matter, the SSEs proposal *does not* say that the non-disclosed questions "will be waived."   It says that objections due to the failure of a witness's inability to answer such questions at a deposition "will not be well taken," and that a SSE "may supplement its response at a later time" if "a witness does not know or is unable to recall certain information during a deposition." SSE Br. at Ex. 1 § II(M).  This encourages to the Parties to be as forthcoming in advance of the deposition as possible, but preserves flexibility for both the Parties and the SSEs as long as neither abuses the process.

The Parties contend that the SSEs' proposal "has no basis in the Federal Rules of Civil Procedure or in the discovery process generally." P. Br. 15.  But Rule 30(b)(6)'s "reasonable particularity" requirement provides the *express* basis for, and in this instance mandates, this process.  Moreover, this process is also fully consistent with this Court's request for "innovative" solutions to the problems inherent in managing "this massive litigation." Jan. 20 Hrg. Tr. at 29-30 (Judge Battani: "[I]s there something innovative that we haven't even thought about with all of the brainpower in here as to how we can handle … the discovery in this massive litigation? Really that's what I'm looking for.").

## IV.    CONCLUSION

For these reasons, and the reasons stated in the SSEs' opening brief, the SSEs' objections to the Special Master's Order should be sustained.  The Parties' motion to compel should be denied without prejudice to the Parties' right to seek discovery through Rule 45.

Dated:  May 23, 2016                          Respectfully submitted:

**On Behalf of the Chrysler Entities**

/s *Cheryl A. Bush*                          /s *Colin R. Kass*
Cheryl A. Bush (P37031)                      Colin R. Kass
Susan M. McKeever (P73533)                   Scott M. Abeles
BUSH SEYFERTH & PAIGE PLLC                   PROSKAUER ROSE LLP
3001 W. Big Beaver Road, Suite 600           1001 Pennsylvania Ave., N.W.
Troy, MI 48084                               Suite 600 South
(248) 822-7800                               Washington, D.C. 20004
bush@bsplaw.com                              (202) 416-6800
                                             ckass@proskauer.com
                                             sabeles@proskauer.com

                                             David A. Munkittrick
                                             PROSKAUER ROSE LLP
                                             11 Times Square
                                             New York, NY 10036
                                             (212) 969-3000
                                             dmunkittrick@proskauer.com

*Attorneys for FCA US LLC and Fiat Chrysler Finance North America, Inc.*

### On Behalf of the Daimler Entities

/s *Dominic Surprenant*
Dominic Surprenant
Nithin Kumar
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
dominicsurprenant@quinnemanuel.com

*Attorneys for Daimler North America Corp. (MI); Daimler North America Corp. (NJ); Daimler Purchasing Coordination Corp.; Daimler Trucks North America LLC; Daimler Vans Manufacturing, LLC; Daimler Vans USA LLC; Freightliner Custom Chassis Corp.; Mercedes-Benz Advanced Design of North America Inc.; Mercedes-Benz Credit Corp.; Mercedes- Benz Financial Services USA LLC; Mercedes- Benz Research & Development North America, Inc. (CA); Mercedes-Benz Research & Development North America, Inc. (MI); Mercedes-Benz U.S. International, Inc.; Mercedes- Benz USA, LLC; Mitsubishi Fuso Truck of America, Inc.; Thomas Built Buses, Inc.; and Western Star Trucks Sales, Inc.*

### On Behalf of the GM Entities

/s *Stephen R. Neuwirth*
Stephen R. Neuwirth
Adam B. Wolfson
Richard T. Vagas
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com

*Attorneys for General Motors Company; General Motors Financial Company, Inc.; General Motors Holdings LLC; and General Motors LLC*

**On Behalf of the Honda Entities**

/s *Daniel Purcell*
Daniel Purcell
Justina Sessions
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 676-2293
dpurcell@kvn.com
jsessions@kvn.com

*Attorneys for American Honda Motor Co., Inc.; American Honda Finance Corp.; Honda Manufacturing of Indiana, LLC; Honda North America, Inc.; Honda of America Mfg., Inc.; Honda of South Carolina Mfg., Inc.; Honda Precision Parts of Georgia, LLC; Honda R&D Americas, Inc.; Honda Research Institute USA, Inc.; and Honda Transmission Manufacturing of America, Inc.*

**On Behalf of Hyundai and Kia Entities**

/s *Meredith Jones Kingsley*
Meredith Jones Kingsley
ALSTON & BIRD LLP
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
(404) 881-4793
meredith.kingsley@alston.com

*Attorney for Hyundai Motor Manufacturing
Alabama, LLC; Hyundai America Technical
Center, Inc.; and Kia Motors Manufacturing
Georgia, Inc.*

/s *Shon Morgan*
Shon Morgan
Joseph R. Ashby
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com
josephashby@quinnemanuel.com

*Attorneys for Hyundai Motor America; and
Hyundai AutoEver America, LLC*

/s *Susan R. Peck*
Susan R. Peck
Jessica B. Avery
LEE, HONG, DEGERMAN, KANG & WAIMEY
3501 Jamboree Road, Suite 6000
Newport Beach, CA 92660
(949) 250-9954
susan.peck@lhlaw.com

*Attorneys for Kia Motors America, Inc.; and
Hyundai Capital America*

**On Behalf of Kia Motors Manufacturing Georgia, Inc.**

/s *Meredith Jones Kingsley*

Meredith Jones Kingsley
  Georgia Bar No. 793726
Peter Kontio
  Georgia Bar No. 428050
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000
meredith.kingsley@alston.com
peter@kontio@alston.com

/s *Elliot H. Scherker*

Ernest L. Greer, Esq.
  Georgia Bar No. 309180
Richard J. Valladares
  Georgia Bar No. 61066
GREENBERG TRAURIG, LLP
Terminus 200 Building
3333 Piedmont Road NE, 25th Floor
Atlanta, Georgia 30305
(678) 553-2100
greere@gtlaw.com
valladaresr@gtlaw.com

Elliot H. Scherker
  Florida Bar No. 202304
Jay A. Yagoda
  Florida Bar No. 84811
GREENBERG TRAURIG, P.A.
Wells Fargo Center, Suite 4400
333 Southeast 2nd Avenue
Miami, Florida 33131
(305) 579-0500
scherkere@gtlaw.com
yagodaj@gtlaw.com

*Attorneys for Kia Motors Manufacturing Georgia, Inc.*

**On Behalf of the Nissan Entities**

/s *Anthony J. Anscombe*
Anthony J. Anscombe
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606
(312) 641-9050
anthony.anscombe@sedgwicklaw.com

*Attorneys for Nissan North America, Inc.; Nissan Design America, Inc. (part of NNA); Nissan Technical Center North America, Inc. (part of NNA); Nissan Diesel America, Inc.(part of NNA); and Nissan Motor Acceptance Corp.*

**On Behalf of the Subaru Entities**

/s *Thomas E. Mixdorf*
Thomas E. Mixdorf
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
(317) 236-5832
Thomas.mixdorf@icemiller.com

*Attorneys for Subaru of Indiana Automotive, Inc.*

/s *Neal Walters*
Neal Walters
Michael R. Carroll
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
(856) 761-3452
carrollm@ballardspahr.com

*Attorneys for Subaru of America, Inc.; Subaru Leasing Corp.; and Fuji Heavy Industries U.S.A., Inc.*

18

**On Behalf of the Toyota Entities**

/s *Thomas P. Branigan*

Thomas P. Branigan (P41774)
BOWMAN AND BROOKE LLP
41000 Woodward Avenue, Ste. 200 East
Bloomfield Hills, MI 48304
(248) 205-3300
tom.branigan@bowmanandbrooke.com

/s *Michael Schaper*

Michael Schaper
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6737
mschaper@debevoise.com

*Attorneys for Toyota Motor Sales, USA, Inc. and Toyota Motor Engineering & Manufacturing North America, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 23, 2016.  Any other counsel of record will be served by first class mail.

By:  /s/ Cheryl A. Bush