# Exhibit D

1 Martin Quinn
2 JAMS
Two Embarcadero Center, Suite 1500
3 San Francisco, CA 94111
Telephone: (415) 982-5267
4 Fax: (415) 982-5287

5 SPECIAL MASTER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATON | CASE NO. M:07-cv-01827-si<br><br>REPORT AND RECOMMENDATION OF SPECIAL MASTER RE OBJECTORS' MOTIONS [DKT. NOS. 6830, 7200, 7195 and 7211] FOR ATTORNEYS' FEES |
|---|---|
| This Order Relates to:<br><br>INDIRECT-PURCHASER CLASS ACTION | |

Objectors Geri Maxwell, Maria Marshall, Wayne Marshall and Gerri Maxwell ("Maxwell Objectors"), Andrea Pridham-Kane ("Pridham") and Margot Bradley, Alex Bradley and CBC, Inc. ("Bradley Objectors") have moved for awards of attorneys' fees from the Indirect-Purchaser Class settlement fund. Having considered all arguments and evidence submitted, I now recommend as follows:

//

1

## Contentions re Attorneys' Fees Motions

The three sets of Objectors seeking fees correctly note that under proper circumstances Objectors to a class action settlement may recover attorneys' fees and expenses from the common settlement fund. As they acknowledge, it has long been the law that they must show that "the settlement was improved as a result of their efforts." *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974). In order to recover fees, Objectors' actions must "increase the fund or otherwise substantially benefit class members." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1042, 1051-52 (9th Cir. 2002). *See also*, *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th. Cir. 2012) ("*Rodriguez 2*").

Maxwell Objectors [Dkt. Nos. 6830, 7195]. The Maxwell Objectors[1] argue that they were responsible for persuading the Court to alter the distribution plan so that each class member would receive not merely the amount of its damages, but would receive up to three times its actual damages, before any *cy pres* distribution took place. They contend that the IPP Plaintiffs' motion for preliminary approval of the Round 1 settlements [Dkt. No. 4424], the Court's order granting preliminary approval [Dkt. No. 4688], and the motion for final approval [Dkt. No. 5600] failed to provide for *pro rata* distributions based on trebling actual damages. The Maxwell Objectors raised this issue in their Objection to any "*cy pres* distribution of excess funds without trebling damages to successful claimants" [Dkt. No. 5497 at 4], and in oral argument at the May 17, 2012 fairness hearing. [Dkt. No. 5754 at 44-47] They claim that IPP Plaintiffs, through co-lead counsel Alioto, made a "dramatic about-face" as a result of the Maxwell objections and accepted the obligation to treble damages before making any *cy pres* distribution. The Maxwell Objectors seek a provisional award of an unspecified amount of fees to be calculated based on the extent to which ultimate distributions exceed the actual damages of claiming class members.

---

[1] Given my recommendation that the objection be denied on its merits, I need not address IPP Plaintiffs' standing arguments. However, I note that Geri Maxwell has corrected her deposition testimony and filed a new claim [Dkt. No. 7195-2] based on her purchase of an LCD-panel laptop, and that the remaining objectors withdrew their objections only as to the Round 2 settlements. In any event, I assume for purposes of this Report that they do have adequate standing.

2

IPP Plaintiffs deny that the Maxwell objection accomplished anything. None of the motions or orders regarding approval of the Round 1 settlement stated or contemplated limiting class members' recovery to their actual damages. Although the plan of distribution had not been finalized at the time of the May hearing, the motions, the class notice, and the proposed order all spoke in terms of a *pro rata* distribution without any set limit. Mr. Alioto filed a declaration [Dkt. No. 7164] stating that since the outset of the case and throughout all the settlement negotiations, he had insisted that the settlement be solely in cash (to the exclusion of product, coupons and *cy pres* amounts] that would all be paid *pro rata* to qualifying claimants without any limitation to single damages.

Pridham [Dkt. No. 7211]. Ms. Pridham asserts that her objection has benefited the class in three ways: by requiring IPP Plaintiffs to submit a precise plan of distribution that did not allow for any significant *cy pres* distribution; by requiring IPP Plaintiffs to correct the defective notice of their attorneys' fee request; and by requiring IPP Plaintiffs to provide documentation of their cost reimbursement request. She asserts that the motion for approval of the Round I settlements provided only a vague description of the plan of distribution, and that her objection to the failure to be specific about *cy pres* recipients of potentially "hundreds of millions of dollars" jeopardized the settlement. She further asserted that IPP Plaintiffs failed to give 45 days notice of their attorneys' fee request in their motions for approval of the Round I settlements, and that this defect was corrected only in the Round 2 settlement process – as a result of her objection. Finally, she asserts that she is responsible for the Court's requirement that IPP Plaintiffs submit invoices and other documentation of their request for reimbursement of costs. She had presented copies of attorney fee bills totaling in excess of $50,000, but she seeks an award of $30,000.

Bradley Objectors [Dkt. No. 7200]. The Bradley Objectors have objected [Dkt. No. 7199] to my November 9, 2012 Report and Recommendation re Motions for Attorneys' Fees and Other Amounts by Indirect-Purchaser Plaintiffs and State Attorneys General [Dkt. No. 7127]. To the extent that the Court should allow their Objection and reduce the amount of the attorney

3

fee or expense awards that I recommended, the Bradley Objectors claim they will be entitled to attorneys' fees. They do not seek a specific amount of fees or costs at this time.

Analysis

Maxwell Objectors. The fundamental basis for this claim is that the class notice and related papers in the Round 1 settlement did not explicitly require that class members receive *pro rata* distributions up to three times their actual damages before making any *cy pres* distribution, but the notice and related papers on the Round 2 settlement did contain that requirement. So, they argue, a treble damages distribution went from being <u>discretionary</u> in Round 1 to <u>mandatory</u> in Round 2. In between the Maxwell Objectors had filed their objection arguing for trebling of the recovery before any *cy pres* distribution. So their primary argument is that the chronology of the evolution of the treble damages distribution leads to an inference that they brought about that change. Their secondary argument is a disputed telephone call between Mr. Alioto and Objectors' Counsel, Mr. Cochran. Mr. Cochran states under oath that Mr. Alioto said that Cochran's argument on treble damages had "persuaded [Alioto] to eliminate *cy pres* from his final distribution plan." (Cochran Decl., ¶5 [Dkt. No. 7195-3]) Mr. Alioto states under oath that Mr. Cochran misunderstood him, and that from the outset of the case he had pressed for an all-cash, no *cy pres* settlement.

I conclude that the Maxwell Objectors have not sustained their burden to show that their actions brought about a substantial benefit to the class. The lack of precision in the Round 1 motion papers, in that they do not explicitly call for distributions up to three times actual damages, does not amount to proof that this was not the intention of IPP Class Counsel from the beginning. Those motion papers stated that the distributions would be *pro rata* and that <u>all funds</u> would be distributed, without regard to whether that resulted in one-time, three-time, or any other multiple of actual damages. *See*, Motion for Final Approval, [Dkt. No. 5600 at 8] ("all available proceeds" will be distributed) This intention is supported by Mr. Alioto's declaration in which he states that he had always insisted on full cash distributions with no meaningful *cy pres* payments. Many participants in the settlement negotiations have told me in the course of my investigation as to attorneys' fees that Mr. Alioto consistently made it a requirement of any

4

settlement that it be all-cash and that 100% of all amounts be distributed to claimants. The notion that all the settlement proceeds were to be distributed to class members with no cap of their single actual damages absolutely did not originate with the Maxwell Objectors.

The Maxwell Objectors point to *Rodriguez 2, supra*, as a parallel situation, but in fact there are important distinctions between that case and the present situation. In *Rodriguez 2*, the Ninth Circuit twice reversed the district court for failing to award attorneys' fees to an objector who had alerted the district court for the first time to the existence of an arrangement for an escalating incentive award agreed to between class counsel and the class representatives. The Ninth Circuit concluded that it was inescapable that the objector had ferreted out the incentive award plan, which it held created an impermissible conflict of interest, and brought the plan to the court's attention. Here, there is no evidence that the Maxwell Objectors ferreted out anything. They simply took advantage of the imprecision of the Round 1 motion papers, and suggested a more precise statement – but without any substantive change in the distribution plan. At most one could conclude that their objection made explicit what was already implicit in the settlement documents – that "all proceeds" would be distributed. They performed a "belt-and-suspenders" role; they did not endow the class with any enhanced rights.

Accordingly, I recommend that the claim of the Maxwell Objectors for an award of fees be denied.

Pridham. Pridham's claim for attorneys' fees is on even weaker grounds. Her first claim, that she forced the settlement to state precisely that there would be no meaningful *cy pres* distribution, parallels the Maxwell objection – and fails for the same reason. Her second and third claims are that she corrected an improper notice provision and required Class Counsel to document their expenses. Even if Pridham were responsible for such changes, which is far from clear, the changes amount to minor procedural tweaks to a $1.1 billion settlement. They neither increased the settlement amount nor provided a substantial benefit to the class. In *Vizcaino, supra* at 1051, the Ninth Circuit approved the denial of fees to an objector who had allegedly caused class counsel to submit time records and obtained other minor procedural changes. The

5

same reasoning applies to Pridham's claim. Accordingly, I recommend that her claim for an award of fees be denied.

<u>Bradley Objectors</u>: This claim is based on the hypothetical possibility that Judge Illston will sustain the Bradleys' Objection to my Report and Recommendation concerning the total award of fees to the Indirect-Purchaser Plaintiffs. Their Objection to my Report [Dkt. No. 7200] raises no unique factual or legal issues, but rather repeats the arguments that others have made that I incorrectly applied the familiar Ninth Circuit standards for an award of fees. Therefore, even were Judge Illston to lower the award of fees, the Bradley Objectors could not sustain their burden of proving that they were the moving force in bringing that about. At most, their Objection is cumulative and duplicative of several other Objections to my Report and Recommendation that are on file. A court may deny fees to objectors "whose work is duplicative, or who merely echo each other's arguments and confer no unique benefit to the class." *Rodriguez 2, supra* at 658-659. For this reason, I recommend that the Bradleys' Objection be denied.

## Recommendation

Good cause appearing, it is recommended that the Court DENY the Objections of Pridham, the Bradley Objectors and the Maxwell Objectors.

Dated: December 5, 2012

Martin Quinn, Special Master