# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| PRODUCT(S): ALL PARTS | : | |
| This Document Relates to: ALL DEALERSHIP ACTIONS | : | Hon. Marianne O. Battani |

## AUTO DEALERS' MEMORANDUM RESPONDING TO THE COURT'S REQUEST FOR INPUT REGARDING FUTURE PETITIONS FOR ATTORNEYS' FEES

Gerard V. Mantese (P34424)
**Mantese Honigman, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
gmantese@manteselaw.com
*Interim Liaison Counsel For The Automobile Dealer Plaintiffs*

Don Barrett
**Barrett Law Group, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com

Jonathan W. Cuneo
**Cuneo Gilbert & Laduca, LLP**
507 C Street, N.E.
Washington, Dc 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com

Shawn M. Raiter
**Larson King, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com

*Interim Co-Lead Counsel For The Automobile Dealer Plaintiffs*

## Statement of the Issues Presented

1. Should the Court currently set a predetermined percentage for common fund attorneys' fees awards for future Auto Dealer settlements?

2. Should the Court use a decreasing scale for attorneys' fees awards as the aggregate amount of Auto Dealer settlements increases?

**Table of Contents**

**Page**

Table of Authorities ........................................................................................................................... iii

Introduction ........................................................................................................................................ 1

Background ......................................................................................................................................... 2

    A.  Auto Dealer Settlements ............................................................................................. 2

    B.  Risk, Expenses, and Work Required to Reach the Auto Dealer Settlements. ............... 2

    C.  Prior Fee Award to Counsel for the Auto Dealers. ..................................................... 3

    D.  Ongoing Work Done by Counsel for the Auto Dealers. ............................................ 3

Analysis ............................................................................................................................................... 4

I.  The Percentage of the Fund Award Issued by the Court for the
Auto Dealers Was Appropriate and Consistent With Rule 23 ............................................ 4

II.  The Court Should Consider the Fee Awards for Future Settlements
as They Are Presented for Final Approval ........................................................................... 6

III.  A Declining Fee Scale Should Not be Used For Increased Settlement Amounts
and Even if it Were, it Should Not be Prospectively Applied ............................................. 7

Conclusion ......................................................................................................................................... 10

## Table of Authorities

**Cases**

*Bessey v. Packerland Plainwell, Inc.*,
    No. 4:06-CV-95, 2007 WL 3173972 (W.D. Mich. 2007) ................................................................ 4

*Gascho v. Global Fitness Holdings, LLC*, Nos. 14-3761, 14-3798,
2016 WL 2802473 (6th Cir. May 13, 2016) .......................................................................................... 9

*In re Ampicillin Antitrust Litig.*,
    526 F. Supp. 494 (D.D.C. 1981) .......................................................................................................... 5

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ....................................................................................... 5, 7, 8

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................................... 7, 8

*In re Cincinnati Gas & Elec. Co. Sec. Litig.*,
    643 F. Supp. 148 (S.D. Ohio 1986) .................................................................................................... 5

*In re Combustion, Inc.*,
    968 F. Supp. 1116 (W.D. La. 1997) .................................................................................................... 5

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ................................................................................................... 4, 8

*In re Folding Carton Antitrust Litig.*,
    84 F.R.D. 245 (N.D. Ill. 1979) ............................................................................................................. 7

*In re Linerboard Antitrust Litig.*,
    292 F.Supp. 2d 631 (E.D. Pa. 2003) ................................................................................................... 7

*In re National Century Financial Enterprises, Inc. Investment Litig.*,
    2009 WL 1473975 (S.D. Ohio, May 27, 2009) .................................................................................. 4

*In re Packaged Ice Antitrust Litig.*,
    08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ............................................ 4, 7, 8

*In re Prandin Direct Purchaser Antitrust Litig.*,
    2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) .............................................................................. 4, 5

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014) .................................................................................. 4

*In re Southeastern Milk Antitrust Litig.*,
   2013 WL 2155387 (E.D. Tenn. May 17, 2013) .................................................................. 4

*In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.*,
   137 F. Supp. 2d 1029 (S.D. Ohio 2001) ........................................................................... 5

*In re Trans Union Corp. Privacy Litig.*,
   629 F. 3d 741 (7th Cir. 2011) ............................................................................................ 8

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ........................................................................................... 5

*In re Vitamins Antitrust Litig.*,
   2001 WL 34312839 (D.D.C. 2001) .................................................................................. 5

*Kogan v. AIMCO Fox Chase, L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) ................................................................................... 4

*Kritzer v. Safelite Solutions, LLC*,
   2012 WL 1945144 (S.D. Ohio May 30, 2012) ................................................................. 8

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) ........................................................................................... 6

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ............................ 6

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   695 F.Supp. 2d 521 (E.D. Ky. 2010) ................................................................................ 4

*Waters v. Intern. Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ......................................................................................... 5

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 1, 4, 6, 7

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ......................... 5

**Introduction**

Interim Co-Lead Counsel for the Auto Dealers submit this memorandum in response to the Court's invitation for input about the consideration of future requests for attorneys' fees. The Court has rightly given thought to how attorneys' fees should be awarded as many of the Defendants in this litigation reach settlements with the Auto Dealers and the other Plaintiff groups.

For the reasons set forth in this submission and in the declarations of Professor Arthur Miller and former Michigan Attorney General Frank Kelley, the Auto Dealers respectfully suggest that the Court should not set a predetermined fee scale. The Auto Dealers instead believe that the Court should review future fee requests on a settlement-by-settlement basis. Doing so will provide the Court with specific information about the merits of the particular settlements, the time and expense involved to achieve those results, the merits and defenses of the particular claims, and the other information generally addressed by district courts when considering fees in Rule 23 class action settlements. *See* Declaration of Arthur J. Miller, ¶ 11.

The Auto Dealers also suggest that the Court should not use a declining scale of fee percentages as aggregate settlement amounts increase. As an initial matter, the Auto Dealer settlements are not sufficiently large to reach the point at which some courts have considered using reduced fee percentages. *See* Miller Decl., ¶ 34(a), 37. More importantly, the application of a declining fee award scale has been found to be "economically unsound" and "economically irrational." *Id.*, ¶ 34(d), (e). Some experts instead suggest that the attorneys' fee percentage should actually increase as the settlement funds increase. *Id.*, ¶ 34(e).

Although there are apparent administrative benefits from setting a predetermined fee scale, counsel for the Auto Dealers believe that the Court should maintain its current practice of reviewing fee petitions on a settlement-by-settlement basis. Doing so will ensure that the fee awards are appropriate and are made after a consideration of the Rule 23 factors for each settlement.

1

## Background

A.         **Auto Dealer Settlements.**

To date, the Court has granted final approval to Auto Dealer settlements totaling nearly $59 million. The Court has also granted preliminary approval to additional Auto Dealer settlements totaling another $32 million. While substantial, these settlements do not reach the "mega" settlement status at which some courts have considered awarding a lesser percentage of the fund as attorneys' fees. *See* Miller Decl., ¶ 34(a).

The Auto Dealer settlements provide significant cash and other benefits, like abundant cooperation from the settling Defendants. All of the net proceeds from these settlements will be paid to eligible new car automobile dealerships—there is no reversion to Defendants or *cy pre* transfers to third-party charities. The lack of a single objection to the first round of Auto Dealer settlements is a strong indicator that the settlements were fair and reasonable. *See* Miller Decl. ¶¶ 25, 33  Similarly, the fact that a high percentage of the dealerships eligible to receive money under the settlements have made claims provides good evidence of the quality of the settlements. *Id.*

B.         **Risk, Expenses, and Work Required to Reach the Auto Dealer Settlements.**

This litigation is unique in its size and complexity. Antitrust litigation is inherently risky. With high stakes, the outcome of this litigation has been far from certain and counsel for the Auto Dealers have worked on a contingent basis to advance the claims of automobile dealerships authorized by OEMs to sell new vehicles under the laws of 30 states and the District of Columbia. Nearly every Defendant brought a motion to dismiss the Auto Dealers' claims, while others challenged personal jurisdiction. For the most part, the Auto Dealers prevailed on those motions.

The Auto Dealer settlements have been reached in the face of formidable opposition from the Defendants, who have sharply focused their discovery efforts on the Auto Dealers. Responding to this discovery—and the discovery that remains ongoing—has consumed an enormous amount of

time and resources for Auto Dealers and their counsel. The Auto Dealers have responded to voluminous discovery that requested hard copy and electronic data regarding dealerships acquisition and sale of vehicles spanning a fourteen-year period. Counsel for the Auto Dealers had to negotiate these demands with Defendants and have brought and opposed numerous discovery motions.

Defendants have taken nearly one hundred depositions of absent class member automobile dealerships and have also been taking the depositions of the class representative Auto Dealers. The Auto Dealers face additional discovery demands and motion practice from the non-settling Defendants. Before being reimbursed for certain of their litigation expenses in the prior settlements, counsel for the Auto Dealers advanced nearly $2 million in litigation expenses for the Auto Dealer class members.

      **C.     Prior Fee Award to Counsel for the Auto Dealers.**

When they made their first request for a fee award in this litigation, the Auto Dealers' attorneys and their professional staff had already worked more than 47,000 hours in the cases involved in the settlements (up to September 15, 2015). Counsel for the Auto Dealers sought and the Court awarded fees of $18,500,158, which represented one-third of the funds remaining after deducting certain litigation expenses and the costs of notice and claims administration. That award represented a negative multiplier of .70 of the Auto Dealer counsel's "lodestar" for work done through September 15, 2015.

      **D.     Ongoing Work Done by Counsel for the Auto Dealers.**

Since the Court's final approval of the initial round of Auto Dealer settlements, counsel for the Auto Dealers have spent a considerable amount of time responding to Defendants' discovery, briefing and arguing innumerable motions and discovery appeals, and preparing for class certification and trial. This ongoing work has increased counsel for the Auto Dealers' lodestar by

millions of dollars since their first fee request. As required by the normal course of this litigation, the lodestar of Auto Dealer counsel increases every day.

**Analysis**

I.  **The Percentage of the Fund Award Issued to the Auto Dealers by the Court Was Appropriate and Consistent With Rule 23.**

In settlements of complex class actions like those the Court has overseen in this litigation, percentage-of-the-fund fee awards routinely equal one-third of the fund. *See* Miller Decl. The Court's award to the Auto Dealers' counsel for the first set of settlements was approximately 31 per cent of the funds secured for the benefit of the eligible class members. That award represented reimbursement of 70 per cent of the Auto Dealer's lodestar (or commonly stated as a .70 lodestar multiplier) for the work done through September 15, 2015.

The Court's use of the percentage-of-the-fund approach and the 31 per cent awarded to the Auto Dealers was well-supported in the Sixth Circuit where courts have often awarded one-third of the settlement fund as attorneys' fees. *See, e.g.*, *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (awarding one-third of the fund); *In re Packaged Ice Antitrust Litig.*, 08-MDL-01952, 2011 WL 6209188, *19 (E.D. Mich. Dec. 13, 2011); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d, 521, 528 (E.D. Ky. 2010); *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-CV-95, 2007 WL 3173972, *4 (W.D. Mich. 2007); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 502-03 (E.D. Mich. 2008); *In re National Century Financial Enterprises, Inc. Investment Litig.*, 2009 WL 1473975 (S.D. Ohio, May 27, 2009); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D. Mich. 2000); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) (one-third of a $73 million settlement fund, finding that a "counsel fee of one-third is fair and reasonable and fully justified" and "within the range of fees ordinarily awarded."); *see also In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (one-third fee

from settlements totaling $158.6 million).[1]

The Court's initial fee award to the Auto Dealers represented a negative .70 "multiplier" of the lodestar through September 15, 2015. That award was substantially lower than the positive multipliers approved in other cases. *See*, *e.g.*, *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767-68 (S.D. Ohio 2007) (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Prandin*, 2015 WL 1396473, at *4 (3.01 multiplier).

The results of the initial Auto Dealer settlements supported an award of one-third or more of the settlement funds rather than the 31 per cent the Auto Dealers requested and were awarded. *See* Kelley Decl. ¶¶ 39, 40; Miller Decl. ¶¶ 25, 37, 41. Interim Co-Lead Counsel for the Auto Dealers do not suggest that they were disappointed with the Court's initial award of attorneys' fees. The Auto Dealers requested a reasonable percentage of the common fund and did so at a point in these cases when their lodestar exceeded the fees they were requesting. In the nine months that have passed since September 15, 2015, counsel for the Auto Dealers have invested millions of dollars of additional time and expense in the continued representation of new car automobile dealerships. The total fees awarded to-date would total approximately .30 of the total lodestar incurred by counsel for the Auto Dealers.

---

[1] Larger fee awards are also common. *See, e.g., In re Combustion, Inc.*, 968 F. Supp. 1116, 1133, 1142 (W.D. La. 1997) (awarding fee of 36 per cent and noting that "50 percent of the fund is the upper limit on a reasonable fee award from a common fund . . . . [D]istrict courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee"); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (fee of 36 per cent); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1292-94 (11th Cir. 1999); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839 at * 10 (D.D.C. 2001) (awarding one third of $359 million antitrust recovery, which is "within the fifteen to forty-five percent range established in other cases."); *In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig.*, 137 F.Supp.2d 1029, 1046 (S.D. Ohio 2001); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986)*In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding fee of 45 per cent); Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002), §14:6 at 551 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

## II. The Court Should Consider the Fee Awards for Future Settlements as They Are Presented for Final Approval.

The Auto Dealers understand from the Court's comments that it is considering whether to establish a set scale for attorneys' fees for future settlements and whether the percentage of fees awarded should decline as the aggregate settlement amount increases. The Auto Dealers believe that the mandates of Rule 23 are better served by a settlement-by-settlement analysis of fee petitions and corresponding fee awards. *See* Miller Decl. ¶ 11. The Auto Dealers also believe that it would be premature to make fee percentage determinations before the Court has the benefit of reviewing the terms of the future settlements, the work done, and the fees being requested. *Id.* ¶¶ 38, 41.

The court has the discretion in determining the method for calculating attorneys' fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings,* 9 F.3d at 513, 516. In common fund cases, the award of attorneys' fees need only "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). When assessing common fund fee requests, the court analyzes and weighs the six factors described in *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974).

The Auto Dealers believe that setting a predetermined scale of fee percentages would be premature and would not give the Court the benefit of the information relating to the factors set out in *Ramey*. Having the terms of the settlements, the current lodestar information, and the input from the class members about the fee request will benefit the Court in making future fee awards. Setting a scale before having that information creates the potential that a particular fee award will not properly reflect what is reasonable under the circumstances for the settlement at hand. It is possible that the predetermined amount could be too high, too low, or just right. The Auto Dealers believe that waiting for information about each settlement reduces the likelihood of fee awards being criticized by class members or even class counsel.

### III. A Declining Fee Scale Should Not be Used For Increased Settlement Amounts and Even if it Were, it Should Not be Prospectively Applied.

The Auto Dealers do not believe a declining fee percentage scale should be used in this litigation. There are numerous policy reasons which support the conclusion that applying a declining percentage is not in the best interest of the members of the settlement classes. *See* Miller Decl. ¶¶ 34-39, 41. Some courts have concluded that the application of a declining fee award scale would be "economically unsound" and "economically irrational." *Id.*, ¶ 34(d), (e). Legal scholars like Professor Miller suggest that the attorneys' fee percentage could actually increase as the settlement size increases. *Id.*, ¶ 34(e).

As part of the Rule 23 final approval process, the Court must confirm that the fees requested are well "aligned with the amount of work the attorneys contributed" to the recovery, and do not constitute a "windfall." *Cardinal*, 528 F. Supp. 2d at 767. Part of that analysis requires a review of the risks of the litigation and the results achieved. The Court is well-familiar that "[a]ntitrust class actions are inherently complex . . . ." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.") (citations and internal quotation marks omitted).

There is a well-established "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (e.g., the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979). The declaration of former Michigan Attorney General Frank Kelley describes the public benefits and challenges in bringing consumer cases like the antitrust actions before the Court. *See generally* Kelley Decl. Similarly, courts in the Sixth Circuit weigh "society's stake in rewarding attorneys who [win favorable outcomes in antitrust class actions] in order to maintain an incentive to others . . . . Society's stake in

rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee . . . . Society also benefits from the prosecution and settlement of private antitrust litigation." *In re Cardizem*, 218 F.R.D. at 534 (internal quotation marks omitted); *Delphi*, 248 F.R.D. at 504.

As the Court considers future settlements, it will also consider the overall risk of non-payment (or underpayment) that counsel faced. *See In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (risk of non-payment a factor supporting the requested fee). The contingency factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *Cardinal*, 528 F. Supp. 2d at 766. Indeed, "'some courts consider the risk of non-recovery as the most important factor in fee determination.'" *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (quoting *Cardinal*, 528 F. Supp. 2d at 766). "[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F. 3d 741, 746 (7th Cir. 2011).

Antitrust litigation like this MDL is inherently risky for the Plaintiffs and their attorneys. The Plaintiffs must essentially sue an entire industry and doing so usually leads the Defendants to hire the largest law firms in the world. The defense firms have many more lawyers than the Plaintiffs' firms, are paid by the hour, and are reimbursed by their clients for the costs incurred in the litigation. The Plaintiffs' firms do not get paid for years, if at all, and at the same time advance millions of dollars in expenses with only the hope of being reimbursed. Some Plaintiffs' lawyers risk the future of their law firms when taking on high-stakes litigation. These dynamics create substantial risk for class counsel in significant litigation.

The risk that Plaintiffs' lawyers assume provides societal value and should be rewarded when the case results in a reasonable settlement. *See* Kelley Decl.; Miller Decl. The Sixth Circuit Court of Appeals recently noted:

8

> Consumer class actions, furthermore, have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated—even when significant compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small).

*Gascho v. Global Fitness Holdings, LLC*, Nos. 14-3761, 14-3798, 2016 WL 2802473, at *15 (6th Cir. May 13, 2016).

The size of a settlement, however, is not a surrogate for the risks assumed by the attorneys or the quality of the results achieved. *See* Miller Decl. ¶ 34(c). The trend among courts is away from reducing the fee percentage when there are large recoveries because many courts consider it a disincentive to plaintiffs to push harder or to litigate longer to obtain the largest recovery possible for their clients. *Id.*, ¶ 34(d). Professor Miller believes that decreasing percentages as settlements increase may serve as a disincentive for plaintiffs to obtain the highest possible recovery and would not recognize unique contributions to settlements. *Id.*, ¶ 34(e). He suggests that it makes more sense to increase fee percentages as the settlement values increase. *Id.*

Setting a pre-determined fee scale of any sort has the potential to either undercompensate or overcompensate the attorneys representing the Plaintiffs in future settlements. The Auto Dealers therefore suggest that the Court continue to review and consider the settlements reached by the Auto Dealers as they are presented. In doing so, the Court should continue to take into account both the percentage of the fund being requested as fees and the overall lodestar multiplier—as applied to the entire litigation—that counsel for the Auto Dealers would receive at the requested percentage. *See* Miller Decl. ¶ 41.

The Auto Dealers believe that setting a lower percentage for increasing settlements would be premature until the multiplier for the Auto Dealers' counsel becomes significantly

positive.  *See* Miller Decl. ¶ 41.  The Court would then have the opportunity to consider adjustments to fee percentages based on the information provided about settlement terms, lodestar amounts, litigation risks, and the benefits provided by the settlements.

**Conclusion**

For the foregoing reasons, Interim Co-Lead Counsel for the Auto Dealers respectfully suggest that the Court consider future settlements in this litigation, and any related fee awards, on a settlement-by-settlement basis.  The Auto Dealers also suggest that the Court should not use a pre-determined fee scale or declining percentage-of-the-fund approach.  Again, the Auto Dealers suggest that the better approach would be the Court determining those percentages based on the particular settlements—and the background of the work done and prior fee awards.

Dated: June 14, 2016

By: /s/ Gerard V. Mantese
Gerard V. Mantese (P34424)
Alexander E. Blum (P74070)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
Facsimile: (248) 457-9201
gmantese@manteselaw.com
ablum@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A**.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

## CERTIFICATE OF SERVICE

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **AUTO DEALERS' MEMORANDUM RESPONDING TO THE COURT'S REQUEST FOR INPUT REGARDING FUTURE PETITIONS FOR ATTORNEYS' FEES** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on June 14, 2016

/s/ Gerard V. Mantese
Gerard V. Mantese