**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                                           MASTER FILE NO. 12-md-02311

_____

In Re: ALL AUTO PARTS CASES

_____

THIS DOCUMENT RELATES TO:

Dealership Actions

_____/

**ORDER DENYING DEFENDANTS' OBJECTION TO, AND MOTION TO
REVERSE IN PART AND MODIFY THE SPECIAL MASTER'S ORDER
GRANTING IN PART AND DENYING IN PART AUTO DEALER PLAINTIFFS'
MOTION FOR PROTECTIVE ORDER CONCERNING RULE 30(b)(6)
DEPOSITIONS OF AUTO DEALER PLAINTIFFS**

Before the Court is Defendants' Objection To, and Motion to Reverse in Part and Modify the Special Master's Order Granting in Part and Denying in Part Auto Dealer Plaintiffs' Motion for Protective Order Concerning Rule 30(b)(6) Depositions of Auto Dealer Plaintiffs ("ADPs") (Doc. Nos. 1174, 1175 (sealed)).  The Court has reviewed all of the filings, and for the reasons that follow, the Court **DENIES** the Objection.

**I. BACKGROUND**

Auto Dealer Plaintiffs moved for a Protective Order as to topics Defendants had designated for Rule 30(b)(6) depositions.  The Master granted in part and denied in part

the motion. (Doc. No. 1169) Four topics are at issue in Defendants' Objection to the Master's Order: Topics 7, 8, 11(c) and 11(g). (See Doc. No. 1169, Ex. A).

Topic 7 seeks each Auto Dealer Plaintiff's knowledge of its "competitors, including but not limited to their locations, businesses, pricing of new vehicles, and market share." (Id.) In Topic 8, Defendants seek testimony on each Auto Dealer's "knowledge of the marketplace for new vehicles, including price trends for such products during the relevant time period." (Id.) Topic 11(c) covers each Auto Dealer's "revenue, profit margins and profit on new vehicles sold or leased (i.e. front end)." (Id.) Lastly, in Topic 11(g), Defendants seek to uncover each Auto Dealer's "knowledge of similarities or differences between [its] sales and leases and the sales and leasing behaviors of other automotive dealerships." (Id.)

## II. STANDARD OF REVIEW

Rule 53, Fed. R. Civ. P., governs review of a master's decision. Under Rule 53(f), a court reviews findings of fact and conclusions of law de novo, whereas a "court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5).

## III. ANALYSIS

The parties disagree as to whether the Master's rulings on these topics constituted legal error and abuse of discretion. The relief requested by Defendants in their Objection is grounded in their position that the information is critical to the merits of Auto Dealers' claims and class certification, especially relative to Defendants' pass-on defense.

In assessing the merits of the arguments, the Court is mindful of Rule 26(b)(1),

Fed. R. Civ. P., which addresses proportionality.

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 26(b)(2)(C) adds further limitations on the scope of discovery, where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Rule 26(b)(2)(C), Fed. R. Civ. P.

Discovery not only must be relevant; it must be proportional to the circumstances of the litigation. Further, the Court, in resolving Defendants' Objections, accords deference to the Master's assessment of these factors.

### A. Topic 11(c)--Profit Margins

The issue before the Court is whether the Master erred in excusing Auto Dealers from having to prepare and present testimony about "front end" profits, that is revenue, profit margins, and profits on new vehicles sold or leased. According to Defendants, Topic 11(c) goes to information they need to probe whether and to what extent the profit margins changed from sale to sale, and over time, and to explore whether the changes can be attributed to facts other than the alleged overcharge. (Doc. No. 1174 at 1). Defendants contend that the Master offered no rationale for his ruling, despite the relevance of this information to whether pass-on occurred. To support their position,

3

Defendants point to their expert's assertion that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (See Doc. No. 305-2 in 12-102, Ex. 4, Decl. of Dr. Edward A. Snyder at ¶ 14).

To the extent that Defendants' expert states that profits "may" provide information about costs, there is nothing before the Court as to how profit figures will be used in Defendants' pass-on formula. Neither Defendants nor their expert elaborates on the types of circumstances that render profits relevant. Nor do Defendants explain why the vast amount of data and documents already received regarding profits is insufficient. Notably, Defendants have documents ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (See Doc. No. 305 in 12-103, Ex. 4 at ¶ 14). The failure to put forth any specific need for the information at issue in Topic 11(c), combined with all of the information already in Defendants' hands render Defendants' complaints about the Master's ruling hollow.

Next, Defendants argue the data on profits do not include the factors that went into the profit calculation and that they cannot understand why profits were made on some vehicles. The Court finds it unlikely that a dealership employee could explain why a vehicle sold in 2005, for example, made a certain profit. The burdens imposed in

4

searching all of the records, interviewing numerous employees for a fifteen year period, for information on profits is too great in light of the usefulness of the information.

Finally, the Court observes that although ADPs' early complaint alleges that their "gross profits on new car sales declined sharply" during the conspiracy, that allegation is not part of the operative complaint, which now governs the litigation.  Therefore, any reliance by Defendants on this language to support their need is misplaced. <u>See</u> <u>In re Wirebound Boxes Antitrust Litig.</u>, 131 F.R.D. 578 (D. Minn. 1990) (determining that in a price-fixing action, where the direct purchaser plaintiffs stated they were not seeking lost profits and that their damages could be calculated by the amount of the defendants' unlawful overcharges, the plaintiffs' "financial information was irrelevant").  Although the parties disagree as to whether the transactional data given to Defendants offer sufficient information on revenues and profit margins on vehicle sales, the Court, after reviewing the Notice, data productions, and all of the discovery in this litigation, is satisfied Defendants have sufficient information to advance their defenses despite any gaps in the production.

**B. Knowledge of the Markets and Competitors in the Markets**

The remaining Topics, 7, 8 and 11(g), solicit information concerning competitors and markets during the class period.  (<u>Id.</u>)  Because the degree and nature of competition likewise is an important component of any determination of pass on, Defendants contend that the Master abused his discretion in precluding these deposition topics.

The Master characterized the testimony sought in Topics 7, and 8 as "pure speculation."  (Doc. No. 1169 at 3-4).  He found that Topic 11(g), which sought ADPs'

5

knowledge of the similarities or differences between their own sales and leases and those of competitors was not an appropriate area of inquiry for a Rule 30(b)(6) witness. (Id. at 4).

To challenge the Master's assessment that the information about competition was speculative, Defendants assert that any auto dealer would have knowledge about competitors, their locations, their relative market shares, and their practices. Further, Defendants contend that should a witness lack knowledge, he need not speculate, he can just indicate a lack of knowledge at the deposition. The Rule merely requires a witness to make a reasonable inquiry to ascertain the facts.

The Court agrees with the Master because these requests are broad and removed from ADPs' own businesses. Even if evidence about competitors and competition is relevant, anecdotal evidence about the local competition and stories about how competitors conduct their business is not likely to be productive. The Court's assessment aligns with the Master's that this information is certainly speculative. Further, the Court's assessment is not made in a vacuum. Defendants have received real world facts on tens of thousands of individual sales and invoices. They have been permitted to explore downstream discovery and to discuss ten specific transactions per dealership plaintiff. (See Doc. No. 1169). The discovery includes how a dealership determines vehicle prices and reasons for variations in pricing among customers. (Id.) Defendants also have over one hundred deal files, each covering an individual transaction. Defendant received third-party discovery.

This Court cannot sanction unlimited discovery. Under the circumstances before the Court, it finds that the Master has not abused his discretion by the boundaries he

6

established in his Order.  In sum, the Court agrees that the testimony would be speculative, and the burden of preparing to respond to the topic outweighs the benefit.

Lastly, the Court concludes that the Master did not abuse his discretion when he observed that Topic 8 was an inquiry better addressed by ADPs' experts.  (Id. at 4). Defendants disagree inasmuch as ADPs have no obligation to designate an expert to testify about the markets in which each operated during the class period, and even if they did, Defendants are entitled to explore the actual facts known to each Auto Dealer, not merely the opinions of an expert.

Case law support the proposition that the extent of competition among dealerships may be a key factor affecting pricing.  See in re Wholesale Grocery Prods. Antitrust litig., No. 09-MD-2090 ADM/ABJ, 2012 WL 3031085 at * 10 (D. Minn. July 25, 2012) , aff'd 752 F.3d 782 (9th Cir. 2014).  According to Defendants, the data provided do not reveal how prices may have been affected by external market forces such as the absence of competition from nearby auto dealers.  Nevertheless, the Master's conclusion that market force factors are matters left for the experts is borne out by case law.  See e.g. In re Class 8 Transmission Indirect Purchasers Antitrust Litig., 140 F. Supp. 3d 339, 352-56 (D. Del. 2015) (expert's analysis included examination of market forces).  See also In re Processed Egg Prods. Antitrust Litig., 312 F.R.D. 124, 158 (E. D. Pa. 2015) (crediting expert analysis that "local competition heavily influences pricing decision of retailers and. . .any accurate measure of overcharge would require accounting for the effects of geography, competition, pricing strategy, and contract types).

## IV. CONCLUSION

In sum, the Court finds the Master acted within his discretion in granting protection to ADPs from these Topics. Accordingly, Defendants' Objection is **DENIED**.

**IT IS SO ORDERED.**


Date: July 26, 2016                         s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 26, 2016.

                                            s/ Kay Doaks
                                            Case Manager