[REDACTED]

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| _____ : | |
| IN RE AUTOMOTIVE PARTS : | Master File No. 2:12-md-02311 |
| ANTITRUST LITIGATION : | Honorable Marianne O. Battani |
| _____ : | Magistrate Judge Mona K. Majzoub |
| : | |
| ALL PARTS : | |
| : | |
| : | |
| : | |
| | |
| THIS DOCUMENT RELATES TO: : | |
| ALL ACTIONS : | |
| : | |

# THE PARTIES' NOTICE OF MOTION AND RENEWED MOTION TO COMPEL DISCOVERY FROM CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS AND THEIR AFFILIATED ENTITITES[1]

[REDACTED]

---

[1] This motion is a renewal of the Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, Master File No. 2:12-cv-02311 (E.D. Mich. Jan. 19, 2016), ECF No. 1185 ("ECF No. 1185" or "January 19 Motion").

[REDACTED]

The Parties[2] hereby renew their motion to compel (ECF No. 1185) on a narrowed scope of the discovery sought by the uniform subpoena ("Subpoena") from certain original equipment manufacturers and their affiliated entities (the "Six Lead OEMs").[3] This motion is supported by the accompanying Memorandum of Law, the Declaration of Steven N. Williams in Support of the Parties' Renewed Motion to Compel Discovery From Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities ("Williams Decl."), the individual declarations and exhibits submitted herewith, oral argument of counsel, the Parties' previous motion to compel and supporting briefs and declarations,[4] and such other materials as the Court may consider.

---

[2] The "Parties" joining in this renewed motion include End-Payor Plaintiffs ("EPPs"), Truck and Equipment Dealer Plaintiffs ("TEDPs"), the State of Florida, the State of Indiana, and certain Defendants in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12- md-02311 (E.D. Mich.). Not all Defendants join this motion with respect to all OEMs. *See* ECF No. 1185 at Attachment A.

[3] The Six Lead OEMs (subject to this renewed motion) include the following entities: FCA USA LLC ("FCA"); General Motors Company, General Motors Holdings LLC, General Motors LLC (collectively, "GM"); American Honda Motor Company, Inc., Honda Manufacturing of Indiana LLC, Honda North America, Inc., Honda of America Mfg., Inc., Honda of South Carolina Mfg., Inc., Honda Precision Parts of Georgia, LLC, Honda R&D Americas, Inc., Honda Research Institute USA, Inc., Honda Transmission Manufacturing of America, Inc. (collectively, "Honda"); Nissan Design America, Inc., Nissan Diesel America, Inc., Nissan North America, Inc., Nissan Technical Center North America, Inc. (collectively, "Nissan"); Subaru of America, Inc., Subaru of Indiana Automotive, Inc. (collectively, "Subaru"); Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota").

[4] *See* ECF No. 1185; Declaration of Steven N. Williams in Support of the Parties' Joint Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, Master File No. 2:12-md-02311, ECF No. 1186 (Jan. 19, 2016) ("ECF No. 1186"); Defendants' Reply in Support of the Parties' Motion to Compel Discovery From Non-Party Original Equipment Manufacturers, Master File No. 2:12-md-02311, ECF No. 1246 (Mar. 11, 2016) ("ECF No. 1246"); End-Payor Plaintiffs' Reply in Support of the Parties' Motion to Compel Discovery From Non-Party Original Equipment Manufacturers, Master File No. 2:12-md-02311, ECF No. 1250 (Mar. 11, 2016) ("ECF No. 1250"); and Certain Serving Parties' Reply in Support of Motion to Compel Discovery From Non-Party Original Equipment Manufacturers, Master File No. 2:12-md-02311, ECF No. 1254 (Mar. 11, 2016).

**[REDACTED]**

As required by Local Rule 7.1(a), counsel for the Parties sought, but did not receive, concurrence from the Six Lead OEMs to the relief sought herein. Accordingly, the Parties respectfully request that the Court grant this renewed motion compelling discovery from the Six Lead OEMs.

Dated: November 7, 2016          Respectfully submitted,

                        */s/ E. Powell Miller*
                        E. Powell Miller
                        Devon P. Allard
                        **THE MILLER LAW FIRM, P.C.**
                        The Miller Law Firm, P.C.
                        950 W. University Dr., Ste. 300
                        Rochester, Michigan 48307
                        epm@millerlawpc.com
                        dpa@millerlawpc.com

                        *Interim Liaison Counsel for the Proposed End-Payor Plaintiff Classes*

                        [*Additional signatures following Memorandum of Law*]

[REDACTED]

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 2:12-md-02311 Honorable Marianne O. Battani Magistrate Judge Mona K. Majzoub |
| ALL PARTS | : : : : : | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' RENEWED MOTION TO COMPEL DISCOVERY FROM CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS AND THEIR AFFILIATED ENTITIES

[REDACTED]

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY.........................................................2

      A.    Initial Motion to Compel Briefing and Outcome.................................................2

      B.    Objections to Special Master's Order and Hearing on Objections .........................6

      C.    OEM Depositions and Meet and Confer Process .................................................8

III.  LEGAL STANDARDS ..........................................................................................11

      A.    Non-Parties Have a Duty to Cooperate to Produce Relevant Information ............11

            1.    When highly relevant information is sought, as here, a non-party
                  bears a heavy burden to show why it cannot comply with a subpoena. ....11

            2.    The categories of data and documents sought are routinely produced
                  in similar indirect purchaser antitrust cases. ...............................................13

      B.    Importance of Covering the Time Periods for All Parts Cases............................15

      C.    Importance of Covering the Vehicles at Issue in the Parts Cases........................16

      D.    The Protective Order is Sufficient ........................................................16

      E.    Cost-Shifting is Only Appropriate in Certain Circumstances..............................19

            1.    Cost-shifting is not offered as a matter of course. ....................................19

            2.    Costs must be significant. .........................................................................20

            3.    Cost-shifting is less warranted where the subpoenaed entity has an
                  interest in the outcome of the litigation ...................................................20

            4.    Cost-shifting is less warranted where the subpoenaed has the ability
                  to pay its own costs....................................................................................21

            5.    Cost-shifting is less warranted where the discovery sought is of great
                  public importance......................................................................................21

            6.    Reimbursement of attorneys' fees is not appropriate ...............................22

**[REDACTED]**

IV.     INDIVIDUAL DECLARATIONS ......................................................................23

V.      CONCLUSION....................................................................................................23

[REDACTED]

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. FBI*,
194 F.R.D. 316 (D.D.C. 2000) ................................................................. 12

*Apple v. Samsung Electronics Co., Ltd.*,
2013 U.S. Dist. LEXIS 67085 (N.D. Cal. May 9, 2013) ....................... 23

*Bell Inc. v. GE Lighting LLC*,
2014 WL 1630754 (W.D. Va. Apr. 23, 2014) ....................................... 22

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ........................................................................ 16

*Cornell v. Columbus McKinnon Corp.*,
2015 U.S. Dist. LEXIS 105450 (N.D. Cal. Aug. 11, 2015) ......... 20, 21, 23

*E 3 Biofuels, LLC v. Biothane Corp.*,
2013 U.S. Dist. LEXIS 100793 (S.D. Ohio July 18, 2013) ................... 17

*Heartland Surgical Specialty Hosp., LLC v. Midwest Division, Inc.*,
2007 U.S. Dist. LEXIS 53217 (D. Kan. July 20, 2007) ......................... 22

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
2012 WL 4747441 (E.D.N.Y. Oct. 4, 2012) ......................................... 20

*In re Exxon Valdez*,
142 F.R.D. 380 (D.D.C. 1992) ............................................................. 20

*In re SRAM Antitrust Litigation*,
No. 4:07-md-01819-CW, ECF No. 967 (N.D. Cal. Mar. 1, 2010) ......... 18

*In re Subpoenas to Plains All Am. Pipeline, L.P.*,
2014 WL 204447 (S.D. Tex. Jan. 17, 2014) ......................................... 12

*L.G. Philips LCD Co., Ltd. v. Tatung Co.*,
2007 WL 869700 (E.D. Cal. Mar. 21, 2007) ......................................... 18

*Maximum Human Performance v. Sigma-Tau Healthscience*,
2013 WL 4537790 (D.N.J. Aug. 27, 2013) ........................................... 22

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*,
294 F.R.D. 87 (S.D. Ohio 2013) ..................................................... 17, 18

[REDACTED]

*Nucorp, Inc. v. Does 1-24,*
   2012 U.S. Dist. LEXIS 187547 (E.D. Mich. Oct. 18, 2012) ................................... 17

*Taylor v. Universal Auto Grp. I, Inc.,*
   2015 WL 1810316 (S.D. Ohio Apr. 17, 2015) ......................................................... 12

*United States v. Blue Cross Blue Shield of Mich.,*
   2012 WL 4513600 (E.D. Mich. 2012) .................................................. 11, 12, 20, 21

*United States v. Blue Cross Blue Shield of Mich.,*
   2012 U.S. Dist. LEXIS 146403 (E.D. Mich. Oct. 11, 2012) ................................... 20

*Western Convenience Stores, Inc. v. Suncor Energy, Inc.,*
   2014 WL 1257762 (D. Colo. Mar. 27, 2014) .......................................................... 23

*Wiwa v. Royal Dutch Petroleum Co.,*
   392 F.3d 812 (5th Cir. 2004) .................................................................................. 12

**Other Authorities**

*The Sedona Conference Commentary on Non-Party Production & Rule 45 Subpoenas*, 9 SEDONA
   CONF. J. 197, 198-99 (2008) .................................................................................. 23

**Rules**

Federal Rules of Civil Procedure
   Rule 26 ................................................................................................................... 11
   Rule 26(b)(1) ..................................................................................................... 11, 12
   Rule 45 ............................................................................................................. 11, 20
   Rule 45(c)(1) .......................................................................................................... 19
   Rule 45(d)(1) .......................................................................................................... 22
   Rule 54(d) ............................................................................................................... 22

[REDACTED]

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Bell Inc. v. GE Lighting LLC*, 2014 WL 1630754 (W.D. Va. Apr. 23, 2014)

*Heartland Surgical Specialty Hosp., LLC v. Midwest Division, Inc.*, 2007 U.S. Dist. LEXIS 53217 (D. Kan. July 20, 2007)

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87 (S.D. Ohio 2013)

*Nucorp, Inc. v. Does 1-24*, 2012 U.S. Dist. LEXIS 187547 (E.D. Mich. Oct. 18, 2012)

*United States v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14155, 2012 WL 4513600 (E.D. Mich. 2012)

Fed. R. Civ. P. 26(b)(1)

[REDACTED]

## ISSUES PRESENTED

1.      Should the Court compel the Six Lead OEMs to produce data and documents related to the purchase and procurement of the vehicle parts at issue, vehicle costs, vehicle pricing, and vehicle sales, given that this information is highly relevant to the claims and defenses of the Parties and class certification, and is proportional to the needs of the case?

**Answer: Yes.**

2.      Should the Six Lead OEMs produce the data and documents sought for as full a period as possible to cover the relevant time periods (January 1, 1993 to present), where that information is reasonably accessible?

**Answer: Yes.**

3.      Does the strict Protective Order in place in this litigation sufficiently protect any highly confidential or proprietary information that may be produced by the Six Lead OEMs?

**Answer: Yes.**

4.      Is it unreasonable to ask the Parties to pay 100 percent of all costs associated with the subpoena requests—*carte blanche*—instead of focusing any cost-sharing determinations when significant costs and burdens exist, and can be estimated first?

**Answer: Yes.**

5.      Is it unreasonable for the Six Lead OEMs to ask for reimbursement of attorneys' fees at this stage rather than at a later stage by separate motion, after resolution of this renewed motion, and after the requested discovery has been produced?

**Answer: Yes.**

[REDACTED]

## MEMORANDUM OF LAW

The Parties respectfully submit this renewed Motion to Compel and Memorandum of Law, the Declaration of Steven N. Williams, and additional declarations, seeking to compel the Six Lead OEMs to produce a narrowed list of categories of data and documents pursuant to the Subpoena.

## I.      INTRODUCTION

This renewed Motion seeks the production of a discrete, focused body of discovery that is indisputably relevant to the key issues in these litigations. The Parties are unaware of any indirect purchaser antitrust case that has not involved the production of the same types of purchase, cost, pricing and sales information from intermediaries in the chain of distribution. Williams Decl. at ¶ 2. In cases involving computers, cell phones, gaming systems, televisions, and other products, entities of the same size and magnitude as those here, such as Apple, IBM, Microsoft, Best Buy, Dell, and many others, have produced the very same types of information being sought here without incident, delay, or unreasonable demands. *Id.*

The Parties have made every effort to engage in this process in the most reasonable way. The Parties have attempted to respect and minimize any possible burdens to the entities served, while attempting to seek discovery proportionate to the issues in dispute in the case. The record reflects that the Parties have done so, and that an order requiring production of the materials sought in this renewed motion is appropriate.

Since the Rule 30(b)(6) depositions of the Six Lead OEMs began, the Parties have made best efforts to negotiate with the Six Lead OEMs and to work toward a mutual resolution. *Id.* at ¶ 3. The Parties have provided each of the Six Lead OEMs with a narrowed list of requests ("Narrowed List") and have further specified what types of data and documents they seek in those categories, where this information could be gleaned from 30(b)(6) testimony and meet and

1

[REDACTED]

confer communications. *Id.* The Parties believe that they have made substantial progress with certain of the Six Lead OEMs and that a resolution might be reached with those OEMs at, or prior to, the mediation scheduled for November 15, 2016. *Id.*

This Memorandum addresses the general categories of data and documents that are sought from the Six Lead OEMs (to the extent not yet agreed) and sets forth the Parties' positions on common issues. The specific types of documents and data sought from each of the Six Lead OEMs are set forth in the individual declarations filed herewith. These individual declarations have been filed separately and under seal, as they contain information designated highly confidential by each of the Six Lead OEMs.

For the reasons set forth below, the Court should grant the Parties' renewed Motion to Compel discovery from the Six Lead OEMs based on the scope of the Narrowed List.

## II.      BACKGROUND AND PROCEDURAL HISTORY

### A.      Initial Motion to Compel Briefing and Outcome

The Parties are Plaintiffs and Defendants in 39 automotive parts cases, in which Plaintiffs allege that Defendants conspired to fix and raise the prices of various automotive parts. Almost one year after the initiation of efforts to obtain discovery from the Six Lead OEMs and certain other entities served ("Non-Lead OEMs") (collectively, "Opposing OEMs"),[5] on January 19, 2016, the Parties filed a joint motion to compel against the Opposing OEMs and moved on 14 out of 37 requests in the original Subpoena[6], and Plaintiffs filed a separate motion to compel

_____

[5]  A full list of Opposing OEMs can be found at Specified Subpoenaed Entities' Joint Opposition to the Parties' Motions to Compel, Master File No. 2:12-md-02311, ECF No. 1227-2 (Feb. 19, 2016). The Non-Lead OEMs include all entities that the Parties moved to compel discovery from in the January 19 Motion that are not included in this renewed Motion. The Parties plan to file a renewed motion as to the Non-Lead OEMs after direction from the Court on their status, which is currently on hold.

[6]  *See* ECF No. 1185 at 2.

**[REDACTED]**

regarding Request Nos. 27 and 31 of the Subpoena[7] on January 20, 2016 (collectively, the "Motions").

Prior to the January 19 Motion, the Opposing OEMs' sole offer (on behalf of only select entities) was to produce two categories of information, ignoring the Parties' reasonable, tailored requests for highly-relevant discovery. The Opposing OEMs offered only: (i) reasonably accessible transactional data reflecting components purchased from a "reasonable number" of non-defendant suppliers (which the Parties were expected to somehow identify) for up to the past 10 years; and (ii) reasonably accessible MSRPs for select categories of vehicles, "to be negotiated with the Parties," that each OEM sold for up to the past 10 years.[8]

The January 19 Motion made clear that: (1) the Parties had substantially narrowed the scope of their requests and offered additional meaningful concessions to reduce the burden on the Opposing OEMs (*i.e.*, seeking 14 requests instead of the original 37); (2) OEM discovery is highly relevant to core issues in these cases, such as the existence of any overcharge, whether any overcharge was paid by direct and indirect purchasers of vehicles, and whether the requirements of class certification have been met; and (3) that, with limited exceptions, the OEMs are the only source of this highly relevant information.[9]

Despite extensive negotiations, in which the Parties offered numerous compromises, the Opposing OEMs' joint opposition to the Parties' Motions argued that the Parties failed to

---

[7] *See* Certain Serving Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, Master File No. 2:12-md-02311, ECF No. 1188 (Jan. 20, 2016) ("ECF No. 1188").

[8] *See* ECF No. 1186 at Ex. M.

[9] *See* ECF Nos. 1185 and 1188.

[REDACTED]

sufficiently meet and confer.[10] In addition, the Opposing OEMs argued that the Subpoena was facially overbroad and should be quashed in its entirety or, in the alternative, that the Subpoena should be "sharply limited" and that the Parties should reimburse the Opposing OEMs for all costs and fees for compliance with the Subpoena[11]—despite clear case law in this Circuit dictating that cost-sharing is far from being an automatic right and that it is determined on a case-by-case basis. Various groups of Opposing OEM entities also filed separate oppositions to the Parties' Motions, arguing that those entities should not be required to produce any information responsive to the Subpoena.[12] Accompanying the oppositions were 36 fact declarations, filed by various Opposing OEM entities, which contained few specifics regarding what information each entity possessed and generalized assertions of burden, without specific estimate of the anticipated cost of compliance with the Subpoena.[13]

The Parties filed replies to the Opposing OEMs' oppositions on March 11, 2016.[14] The Parties' replies further emphasized the relevance of the information sought and its

---

[10] *See* ECF No. 1227.

[11] *Id*. at 15-40.

[12] *See* Memorandum of Smaller Subpoenaed Entities in Opposition to the Parties' Motion to Compel Discovery From Non-Party Original Equipment Manufacturers and Certain Serving Parties' Motion to Compel Discovery From Non-Party Original Equipment Manufacturers, Master File No. 2:12-md-02311, ECF No. 1223 (Feb. 19, 2016); Non-OEM Domestic Distributors' Opposition to the Parties' Motions to Compel Discovery From Non-Party Original Equipment Manufacturers, Master File No. 2:12-md-02311, ECF No. 1224 (Feb. 19, 2016); Opposition To Motion To Compel by Non-party Truck And Equipment Specified Subpoenaed Entities, Master File No. 2:12-md-02311, ECF No. 1226 (Feb. 19, 2016); and Opposition to the Parties' Motions to Compel by Specifically Subpoenaed Entities Whom the Parties Describe as "Non-Core," Master File No. 2:12-md-02311, ECF No. 1230 (Feb. 19, 2016).

[13] *See* ECF Nos. 1227-22-1227-52.

[14] *See* ECF Nos. 1246, 1250, 1254.

[REDACTED]

proportionality to the needs of this litigation, reiterated that the Parties were sympathetic to the Opposing OEMs' production burdens, interested in minimizing burdens to the extent possible, and explained that the Parties repeatedly sought to negotiate with each individual OEM entity or family to reduce the burdens they face in responding to the Subpoena.[15] The Parties' replies outlined how the Opposing OEMs' opposition briefing itself made clear that the Opposing OEMs alone possess certain information that is probative to core issues in these cases, such as how vehicle prices are determined.[16]

On March 24, 2016, the Special Master conducted a mediation and hearing regarding the Parties' Motions.[17] After several hours of discussions, both individually and jointly with Plaintiffs, Defendants, and Opposing OEMs, the Special Master concluded that there "simply [wasn't] sufficient information before" him to rule on whether and/or to what extent to order the requested discovery from the Opposing OEMs.[18] Given the lack of information provided by the Opposing OEMs, the Special Master decided that the best course of action would be to have the Parties conduct "30(b)(6) depositions of the OEMs in order to better understand what information is available, reasonably accessible, and the costs and burden" certain Opposing OEMs would incur in complying with the Subpoena.[19] Following the Special Master's ruling, the Parties worked together and with certain Opposing OEMs to draft an order implementing that

---

[15] *See*, *e.g.*, ECF No. 1246 at 1.

[16] *See id*. at 2.

[17] *See* Mot. Hrg. Tr., Master File No. 2:12-md-02311, ECF No. 1270 (Mar. 25, 2016) ("ECF No. 1270").

[18] *See id*. at 15.

[19] *See id*. at 16.

[REDACTED]

ruling, and the Special Master entered the Parties' proposed version of the Order on April 20, 2016.[20] In addition, the Special Master ordered the OEMs subject to the Motion to produce to the Parties any documents or data they had previously produced to the Department of Justice ("DOJ") in connection with the Auto Parts investigations.[21]

### B.   Objections to Special Master's Order and Hearing on Objections

On May 4, 2016, a number of Opposing OEMs filed statements and objections to the Order requiring Rule 30(b)(6) depositions on discovery.[22]

---

[20] *See* Special Master's Order Regarding the Parties' Motion to Compel Discovery From Non-Party OEMs and Ordering Non-Party OEM Rule 30(b)(6) Depositions, Master File No. 2:12-md-02311, ECF No. 1294 (Apr. 20, 2016).

[21] *See* ECF No. 1270 at 14. The Special Master's order regarding production of documents and data previously produced to the DOJ was entered on August 1, 2016. *See* Special Masters Order Regarding Certain Parties Motion to Compel Discovery From Non-Parties and Ordering Production of Certain Categories of Data and Documents Previously Produced to the DOJ, Master File No. 2:12-md-02311, ECF No. 1444 (Aug. 1, 2016).

[22] *See* Honda's Separate Statement Regarding Objections to the Special Master's Order Regarding the Parties' Motion to Compel Discovery From Non-Party OEMs and Ordering Non-Party Rule 30(b)(6) Depositions, Master File No. 2:12-md-02311, ECF No. 1314 (May 4, 2016); Nissan Entities' Joinder in Objection Filed by Certain SSEs, Master File No. 2:12-md-02311, ECF No. 1315 (May 4, 2016); Certain SSEs' Objections to the Special Master's Order Regarding the Parties' Motion to Compel Discovery From Non-Party OEMs and Ordering Non-Party Rule 30(b)(6) Depositions, Master File No. 2:12-md-02311, ECF No. 1316 (May 4, 2016); Non-Party Daimler Truck Entities' Objections to, and Motion to Modify, Special Master's April 20, 2016 Order, Master File No. 2:12-md-02311, ECF No. 1318 (May 4, 2016); Motion to Modify and Objections by Hyundai Motor Manufacturing Alabama, LLC, Master File No. 2:12-md-02311, ECF No. 1320 (May 4, 2016); Separately Filed Objections to Special Master's Order by Kia Motors Manufacturing Georgia, Inc., Master File No. 2:12-md-02311, ECF No. 1321 (May 4, 2016); General Motors' Separate Statement Regarding Objections to the Special Master's Order by General Motors LLC., Master File No. 2:12-md-02311, ECF No. 1327 (May 4, 2016); Non-Party Domestic Distributors and Non-Core SSE's Objections to and Motion to Modify Special Master's Order Regarding Motion to Compel Discovery From Non-party OEMs and Ordering Nonparty OEM Rule 30(b)(6) Depositions, Master File No. 2:12-md-02311, ECF No. 1328 (May 4, 2016); and Notice Of Joinder/Concurrence by Non-Party Domestic Distributors and Non-Core SSE's Objections to and Motion to Modify Special Master's Order Regarding Motion to Compel filed by Hyundai Autoever America, LLC, Hyundai Motor America by Daimler Entities, Master File No. 2:12-md-02311, ECF No. 1329 (May 4, 2016).

[REDACTED]

On June 23, 2016 the Court held a hearing to address the Objections to the Special Master's April 20, 2016 Order, and issued rulings on the Objections.[23] First, Judge Battani recognized that the OEM discovery process had been going on for over a year and that the Parties still did not "have the basic discovery that is at the core of this litigation."[24] Judge Battani set aside the Special Master's Order on procedural grounds, finding that the Federal Rules of Civil Procedure ("Rules") require that a Rule 45 subpoena be issued for non-party depositions but upheld the Special Master's ruling in large part.[25] Judge Battani ordered that the 30(b)(6) depositions on discovery go forward as to the Six Lead OEMs but required that the Parties submit the Rule 45 subpoenas with an outline of questions to be asked.[26] Judge Battani further ordered that the Parties begin with depositions of the Six Lead OEMs but was careful to state that the Court was not barring testimonial subpoenas for future 30(b)(6) depositions of the other Opposing OEMs at a later date.[27] Immediately after the Court's ruling, the Parties began working to schedule depositions for the Six Lead OEMs and to prepare a proposed order reflecting Judge Battani's orders. Williams Decl. at ¶ 4.[28]

---

[23] *See* Hrg. Tr., Master File No. 2:12-md-02311, ECF No. 1405 (July 1, 2016).

[24] *See id.* at 99.

[25] *See id.* at 99-100.

[26] *See id.*

[27] *See id.* at 100.

[28] On September 2, 2016, the Parties and Six Lead OEMs filed the Serving Parties and OEM Groups' Joint Motion for Entry of Order, Master File No. 2:12-md-02311, ECF No. 1453 (Sept. 2, 2016), regarding 30(b)(6) depositions of the Six Lead OEMs. Williams Decl. at ¶ 20. The Parties and the Six Lead OEMs' proposed orders differed as to the extent to which the Parties should be required to pay the Six Lead OEMs' costs and attorneys' fees related to the depositions. *Id.*   Neither the Parties nor the Six Lead OEMs' proposed versions of the Order implementing Judge Battani's rulings at the June 23, 2016 hearing have been entered.

7

[REDACTED]

### C.     OEM Depositions and Meet and Confer Process

After serving Rule 45 deposition subpoenas and a uniform detailed outline of questions on each entity for the Six Lead OEMs subject to Judge Battani's ruling, the Parties worked together to coordinate and take depositions of each entity, except the Honda entities, for which depositions were postponed pending the outcome of ongoing meet and confer negotiations. Williams Decl. at ¶ 4. The depositions of the FCA, GM, Nissan, Subaru, and Toyota entities occurred between August 16, 2016 and October 18, 2016, and another day of deposition for Honda will take place on November 10, 2016.[29] *Id*. at ¶ 6. The depositions enabled the Parties to gain a better understanding of what relevant data and documents responsive to the document Subpoena are in each entity's possession, how the information is kept, and a general idea of the burdens associated with the Six Lead OEMs' search for and production of relevant data and documents. *Id*. at ¶ 7. Shortly after each deposition concluded, the Parties began reaching out to the Six Lead OEMs to schedule meet and confers, and to offer a narrowed list of requests the Narrowed List. *Id*. at ¶ 8. The Narrowed List sent to the Six Lead OEMs contained the following requests:

- **Purchase and Procurement**

  o  Purchasing data for Defendant and non-Defendant suppliers (starting with the lead three automotive parts, if less burdensome);

  o  Data, or documents in the absence of data, reflecting annual price reductions or other price adjustments in isolation from other price elements for all automotive parts that are the subject of this litigation as well as communications/negotiations concerning such adjustments from select sources;

---

[29] The 30(b)(6) depositions took place on the following dates: FCA (August 30, 2016 and September 20, 2016); GM (August 25, 2016 and October 18, 2016); Nissan (August 31, 2016 and September 1, 2016); Subaru (August 16, 2016 and August 18, 2016) Toyota (September 20, 2016 and September 22, 2016 (TMS)) and Honda (November 3, 2016 with another day to follow on November 10, 2016). Williams Decl. at ¶ 6.

[REDACTED]

- o Request for Quotation ("RFQ") files and all documents associated with each RFQ to the extent reasonably available (*e.g.*, award justification memo); and

- o Agreements with auto parts suppliers (including master agreements).

- **Cost and Pricing Data and Documents**

  - o VIN level cost data or, if not tracked at a VIN level, cost data at the least aggregated level this information is tracked, or the most detailed level available for each year, make, model and trim combination, including costs for any options or accessories;

  - o Data, or documents in the absence of data, sufficient to track each part after it was installed into a vehicle, including model year, VIN, part number;

  - o Documents from central files and from a small number of custodian's files related to pricing, including back-up materials for internal determinations, internal evaluations, studies, manuals and instructions; and

  - o Selection from limited number of custodians or central files of internal studies and reports on vehicle cost, vehicle price, the vehicle market, analyses of invoice prices or MSRP, factors that affect cost and any relationship between cost and price.

- **Sales**

  - o Data, or documents in the absence of data, sufficient to show the following information for each model (and model year) for each new vehicle sold by the OEM: start of production date, year when sales began, year when sales ended, schedule of base model prices, schedule of MSRP (MSRP for all standard models offered, including base and other standard trim packages), and amounts paid by dealers to the OEMs, including but not limited to, invoice price, dealer invoice price, or factory invoice price;

  - o Sales data reflecting sales to auto dealers and end-purchasers (including off-invoice payments, incentives, rebates, etc.). If data reflecting off-invoice payments, incentives, rebates, etc. are not available, we request a schedule of off-invoice payments, incentives, rebates, etc. by model that were offered to dealers and end-purchasers; and

  - o Selection of letters to dealerships announcing invoice and MSRP prices for new models.

- **Other**

  - o For all categories requested above, we seek all data and documents that are within your possession, custody, or control, regardless of whether that information came from your own files or the files of a foreign entity or other entity within your

[REDACTED]

> corporate family, however we limit the requests to data or documents that pertain only to vehicles sold in the United States regardless of where they were manufactured.

Williams Decl. at ¶ 8.[30]

On October 10, 2016 Special Master Esshaki held a teleconference with counsel for the Parties and for the Six Lead OEMs during which counsel were permitted to share their views about the schedule proposed by the Parties. *Id.* at ¶ 9. The Special Master determined that renewed briefing would be submitted to the Special Master on November 7, 2016, short statements in opposition by the Six Lead OEMs shall be filed on November 11, 2016, and mediation shall be held before the Special Master on November 15, 2016. *Id.* To the extent the mediation is not successful, the Six Lead OEMs' responses to the Motion will be due on November 22, 2016. *Id.* The Parties' replies shall be due on December 2, 2016, and hearing will be held before the Special Master on December 9, 2016. *Id.* The Special Master also stated that for any categories of data and documents where the Parties and the Six Lead OEMs could reach agreement, production should begin immediately. *Id.* The Special Master noted there would be an expedited appeal schedule for Objections to Judge Battani if necessary. *Id.* The Parties have

---

[30] In negotiating with the Six Lead OEMs over the past few months, the Parties have offered to prioritize production for the "Lead Three Cases," which includes *Wire Harnesses*, *Bearings*, and *Anti-Vibrational Rubber Parts*. In light of the settlements between the Parties and all *Wire Harnesses* Defendants in the indirect purchaser actions, EPPs, TEDPs, the State of Florida, and the State of Indiana agree to drop the requests for information which solely relates to the *Wire Harnesses* action or to wire harness parts. The EPPs, TEDPs, the State of Florida and the State of Indiana do so without prejudice and reserve their rights to seek this information in the event any of the settlements are not finally approved or upheld on appeal. The Parties continue to offer to prioritize their requests as to *Bearings* and *Anti-Vibrational Rubber Parts*. Certain Defendants in the *Wire Harness* case take the position that production, and determination of the scope of discovery, as to wire harness parts should be deferred until after their pending motions for summary judgment in the direct purchaser action have been resolved. See Williams Decl. at fn. 4.

[REDACTED]

worked diligently to substantially complete meet and confer negotiations with each of the Six Lead OEMs and will continue to do so. *Id.*

At no point did the Special Master or Judge Battani indicate that the process of the discovery-on-discovery depositions or the meet and confer process should be conditioned on resolving cost-shifting issues, nor did any OEM ever indicate to the Special Master or Judge Battani that efforts to reach agreement on the scope of the OEM subpoenas would be conditioned on first resolving the subject of cost-shifting. *Id.* ¶ 10.

## III. LEGAL STANDARDS

### A. Non-Parties Have a Duty to Cooperate to Produce Relevant Information

#### 1. When highly relevant information is sought, as here, a non-party bears a heavy burden to show why it cannot comply with a subpoena.

The data and documents sought through this Motion are all highly relevant to the claims and defenses of some or all of the Parties. The Parties are seeking only the most important categories of documents related to purchase and procurement of the auto parts at issue, vehicle costs, vehicle pricing, and vehicle sales. Williams Decl. at ¶ 9. To date, the Six Lead OEMs have not provided any justification to avoid this discovery.[31]

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any parties' claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (as revised effective December 1, 2015) ("new Rule 26"). A subpoena to a third party under Rule 45 is governed by the same standards as Rule 26. *See United States v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14155, 2012 WL 4513600, at *5 (E.D. Mich. 2012) ("*Blue Cross*"). Once the relevance of the subpoenaed discovery is established, the burden shifts

---

[31] Please note the Parties incorporate the arguments previously set forth in their January 19 Motion papers. *See* ECF Nos. 1185, 1246, 1250, and 1254.

[REDACTED]

to the objecting party to show why the discovery should not be permitted. *Alexander v. FBI*, 194 F.R.D. 316, 325–26 (D.D.C. 2000).

A non-party seeking to modify a subpoena bears the burden of demonstrating that the discovery sought should be denied, and in doing so cannot merely assert that compliance would be burdensome and onerous without demonstrating the manner and extent of the burden and the injurious consequences of complying. *Blue Cross*, 2012 WL 4513600, at *5. Thus, where the Court finds that the information and documents are relevant, the non-party "bear[s] a *particularly heavy burden* in showing that [the] subpoena[] impose[s] an undue burden." *Id.* at *6 (emphasis added); *see also Taylor v. Universal Auto Grp. I, Inc.*, No. 14-mc-50, 2015 WL 1810316, at *6 (S.D. Ohio Apr. 17, 2015) (granting motion to compel subpoena requests where non-party failed both to identify the type of burden and to provide anticipated compliance costs); *In re Subpoenas to Plains All Am. Pipeline, L.P.*, No. H-13-2975, 2014 WL 204447, at *3 (S.D. Tex. Jan. 17, 2014) ("Regarding burdensomeness, the movant bears the burden of persuasion that 'compliance with the subpoena would be unreasonable and oppressive.' . . . This showing has been described as 'heavy,'" quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818–19 (5th Cir. 2004)).

The new Rule 26 requires the Court to consider the proportionality of the discovery based on six factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The Advisory Committee made clear, however, that "[t]he change *does not place on the party seeking discovery the burden* of addressing all proportionality considerations." *See* Fed. R. Civ. P.

[REDACTED]

26(b)(1) Advisory Committee's Note to 2015 Amendments (emphasis added). Rather, once the relevance of the material sought has been established, *the objecting party then bears the burden* of showing why discovery should not be permitted. *Alexander*, 194 F.R.D. at 325–26. The Six Lead OEMs have not set forth any basis to permit discovery from proceeding under the new Rule 26. Here, all categories of information sought are highly relevant to some or all of the Parties, especially in light of the Narrowed List.

### 2. The categories of data and documents sought are routinely produced in similar indirect purchaser antitrust cases.

The categories of data and documents sought by the Subpoena here (and now, in the Narrowed List) are routinely produced in indirect purchaser antitrust actions, and usually without any fanfare, protest, or requests for cost reimbursement.[32]

For example,

---

[32] *See* Supplemental Declaration Of Steven N. Williams In Support Of End Payor Plaintiffs Reply In Support Of The Parties Motion To Compel Discovery From Nonparty Original Equipment Manufacturers at Ex. C, Master File No. 2:12-md-02311, ECF No. 1251 (Mar. 11, 2016) (chart summarizing nonparty discovery in similar indirect purchaser actions).

**[REDACTED]**



[REDACTED]



There is no meaningful difference between the categories of data and documents sought from the Six Lead OEMs here, and the information that was produced by equivalent-level companies in the cases cited.

### B.    Importance of Covering the Time Periods for All Parts Cases

In a number of categories in the Narrowed List, some of the Six Lead OEMs have offered data and documents in the categories requested but have asked if the Parties would accept a sampling of years within the composite time period requested (1993-2016), rather than the full period for which data and documents may be available. *See* Williams Decl. at ¶ 12. For example, one OEM inquired as to whether six years (either consecutive or chosen one-by-one) could be sufficient. *Id.*[33] Although the Parties seek to make compromises if appropriate, and understand that in some cases information does not exist for certain years or is not reasonably accessible,

---

[33] A full list of the cases and time periods at issue is attached as Exhibit A to the Williams Declaration submitted herewith.

[REDACTED]

where an entity has the data and/or documents in its possession for the time period sought and that information is reasonably accessible, the Parties continue to request that it be produced.[34] *Id.*

### C.    Importance of Covering the Vehicles at Issue in the Parts Cases

Similarly, certain OEMs have offered data and documents for only certain vehicle model years rather than the fuller set of data or documents requested. Complaints in these cases allege that one of the primary means of effectuating the conspiracy at issue in these cases was bid-rigging. The allegations include that Defendants specifically targeted certain vehicles and reached agreements as to the prices they would charge OEMs for the parts that were components of those vehicles. Therefore, to prove liability, impact, pass-through of overcharges, and damages, discovery relating to the actual vehicles that were targeted is highly relevant. Nevertheless, the Parties are considering whether to accept a selected set of models (sufficient to cover each vehicle segment) if they receive that information for all model years for which data and documents may be available. *See* Williams Decl. at ¶ 14.

### D.    The Protective Order is Sufficient

Some of the Six Lead OEMs admit that they have accessible, highly relevant information in their possession, such as vehicle pricing information, but refuse to produce it on grounds that

---

[34] EPPs' Statement: Production of documents for the entire period at issue in these cases is very important to the pass-through analysis for each parts case. EPPs' experts will use the data and documents from OEMs to show impact over the time period when price-fixing is alleged to have taken place, rather than calculating impact for a relatively arbitrary year and then extrapolating from that analysis. Furthermore, EPPs are aware of the challenges that defendants typically raise in these types of cases at class certification– which commonly include challenges to the sufficiency of the data sets analyzed and the reliability of the methods employed. Defendants in these cases often attack the time period used for the pass-through analysis and attempt to point out gaps in coverage for a portion of the alleged class period. EPPs face the high burdens of rigorous analysis of class certification issues and the need for a damage model to fit the facts of the case as required by *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Therefore, EPPs would be remiss if they did not attempt to obtain as fulsome a set as is possible from the OEMs to conduct their pass-through analyses, to the extent that information is available. Williams Decl. at ¶ 13.

[REDACTED]

their business documents are too highly sensitive to provide it to the Parties, even under the strict protective order that is in place. *See* Williams Decl. at ¶ 15.

A privacy interest is not a privilege, and even where trade secrets and other proprietary information is requested, prohibition of discovery is not appropriate. *Nucorp*, *Inc. v. Does 1-24*, 2012 U.S. Dist. LEXIS 187547, at *19 (E.D. Mich. Oct. 18, 2012). Rather, the standard approach is to grant the discovery subject to a protective order. *Id.* at *19-20. *See also Med. Ctr. at Elizabeth Place*, *LLC v. Premier Health Partners*, 294 F.R.D. 87, 91 (S.D. Ohio 2013) (a non-party must produce information that it may believe to be highly sensitive or proprietary, where there is an appropriate protective order to provide the necessary safeguards); *E 3 Biofuels*, *LLC v. Biothane Corp.*, 2013 U.S. Dist. LEXIS 100793, at *3 (S.D. Ohio July 18, 2013) ("This court has routinely approved proposed protective orders seeking to protect both 'confidential' and 'highly confidential/attorney eyes only' material when, in addition to trade secret or other confidential research, development, or commercial information, particularly sensitive information of a similar nature may be disclosed through discovery and would cause competitive harm if publicly revealed").

Here, the protective order filed in the Master Docket ("Stipulated Protective Order") has the appropriate safeguards. *See* Stipulation and Protective Order Governing the Production and Exchange of Confidential Information, Master File No. 2:12-md-02311, ECF No. 200 (July 10, 2012). The order lays out a detailed plan for designating confidential documents, including a designation for "HIGHLY CONFIDENTIAL --- OUTSIDE ATTORNEYS ONLY," for the very types of pricing and business documents that some of the Six Lead OEMs have raised concern about, instructions on the strict confidentiality of such designated documents, strict prohibitions on using such documents, and instructions for filing under seal, among other things. *See Med.*

17

[REDACTED]

*Ctr. at Elizabeth Place*, 294 F.R.D. at 95 (non-parties ordered to produce subpoenaed information they claimed to be commercially sensitive, including where production was to occur from competitors in the same field, where an appropriate protective order was in place, and documents could be designated "Highly Confidential – Attorneys' Eyes Only").[35]

The Special Master has already indicated that he views the Protective Order as sufficient here, even to protect very sensitive information. At the March 24, 2016 hearing, the Special Master clearly stated that he did not view confidentiality concerns as a reason to refuse production of that information, noting that:

> [e]very day in this country major cases are litigated in which highly-confidential competitive information is exchanged under protective orders, and I understand the significance of this but protective orders are designed exactly to prevent the leaking of that information, ***so I don't accept that as an argument for not producing that information***.

ECF No. 1270 at 14 (emphasis added).[36]

To the extent any OEM fears producing information it believes to be sensitive, highly confidential or proprietary, it can produce under the Stipulated Protective Order. In addition, the Parties are willing to discuss what additional assurances OEMs may need to go forward with production, such as further description of how the data and documents would be transferred and

---

[35] *See also L.G. Philips LCD Co., Ltd. v. Tatung Co.*, No. Misc. F-07-0009 EFB, 2007 WL 869700, at *3 (E.D. Cal. Mar. 21, 2007) (finding protective order already in place, which allowed for documents pursuant to subpoena to be designated "highly sensitive confidential information," offered adequate protection).

[36] *See also In re SRAM Antitrust Litigation*, No. 4:07-md-01819-CW, ECF No. 967 (N.D. Cal. Mar. 1, 2010) (in granting indirect purchaser's motion to compel OEM's purchase, cost, and pricing data, the court shot down OEM's refusal to produce on confidentiality grounds, noting that "[c]ourts in this District and elsewhere have found that existing protective orders, such as the one in place here, afford adequate security for the production of commercially-sensitive information.").

[REDACTED]

kept amongst the Parties or assurances about security measures of databases. *See* Williams Decl. at ¶ 16.

### E.     Cost-Shifting is Only Appropriate in Certain Circumstances

The Parties have repeatedly expressed their willingness to discuss appropriate cost-sharing with the Six Lead OEMs (and others) once there has been an opportunity to determine what responsive information exists, and what burdens may be associated with production.[37] *See* Williams Decl. at ¶ 17. GM and FCA, however, take the unreasonable blanket position that just by fact of being served with the Subpoena, the Parties must pay all costs related to compliance, attorneys' fees, and employee time; barring such agreement from the Parties, they will not even begin to search for responsive information. *Id.* Furthermore, they have improperly relied upon the cost-shifting issue as a basis not to engage meaningfully in the meet and confer process. *Id.* This is not the standard for cost-sharing. The Parties urge this Court to defer any consideration of cost-sharing until the scope of OEM discovery has been determined, and the OEMs provide specific, concrete, and adequately supported information on costs and burdens of collection and production of the discovery.

### 1.     Cost-shifting is not offered as a matter of course.

Rule 45(c)(1) requires that the party issuing a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). To determine whether a burden is undue, a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it. *See United States v. Blue Cross Blue Shield of Mich.*, 2012 U.S.

---

[37] In the Parties' experience, the costs of non-party discovery in indirect purchaser class actions is not typically shifted to the Parties—even in large cases where huge companies such as Apple, Dell, Costco, and IBM, have responded to subpoenas. Williams Decl. at ¶ 18.

**[REDACTED]**

Dist. LEXIS 146403, at * 6 (E.D. Mich. Oct. 11, 2012). Yet, this does not mean that the party

seeking the information automatically must front all costs associated with compliance. To the

contrary, the costs must be significant, and courts look carefully at whether a non-party has an

interest in the outcome of the litigation, whether a non-party can readily bear the costs of

compliance, and whether the litigation is of public importance. *Id*. at *8-9. *See also In re Exxon*

*Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992); *Cornell v. Columbus McKinnon Corp*., 2015 U.S.

Dist. LEXIS 105450, at *13 (N.D. Cal. Aug. 11, 2015).

### 2. Costs must be significant.

The Six Lead OEMs' obligation to comply with the Subpoena is not conditioned on

guaranteed reimbursement of costs, and Rule 45 does not cut a blank check to nonparties.

When assessing whether any cost-shifting is appropriate, courts first look at whether the

costs involved are significant, and this is usually accomplished by having the subpoenaed entity

present a cost estimate. *See Blue Cross*, 2012 U.S. Dist. LEXIS 146403, at * 9-10 (ordering the

subpoenaed entities to provide detailed estimates of the cost of complying with Plaintiffs'

subpoenas so the court could determine whether the costs are significant, and if they are, what

amount should be shifted); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales*

*Practices Litig*., No. 09-md-2023 (BMC), 2012 WL 4747441, at *3 (E.D.N.Y. Oct. 4, 2012)

(finding that the subpoenaed entity may, upon completing the production, submit to the court the

amount and description of the costs incurred in complying with the subpoena, and the court shall

determine, at that point, how much plaintiffs should reimburse the subpoenaed entity, if at all).

### 3. Cost-shifting is less warranted where the subpoenaed entity has an interest in the outcome of the litigation.

Here, the Six Lead OEMs are deeply tied to the outcome of this litigation. Technically,

they are unnamed plaintiffs, as potential members of the putative direct purchaser class. Some

**[REDACTED]**

may have already settled their claims in this litigation for large sums. Further, these entities have a substantial relationship with Defendants in these automotive parts cases—as Defendants' main customers—and, with Auto Dealer Plaintiffs—and who are the primary customers of the Six Lead OEMs, as well as the End-Payors, who purchase billions of dollars of their products. *Blue Cross*, 2012 U.S. Dist. LEXIS 146403, at *9-10 (finding non-party should pay its own costs where its interest in the case was tantamount to that of a party and where it stood to recover more than its costs of compliance); *id.* at *4 (non-party required to bear 85 percent of the cost of compliance where it had some interest in the outcome of the case).

4. **Cost-shifting is less warranted where the subpoenaed has the ability to pay its own costs.**

The Six Lead OEMs are large, sophisticated, financially capable entities that can easily undertake the expense of production while cost allocations are resolved, whether by agreement or by the Court. They are some of the largest and most profitable companies in the world, potentially with yearly profits in the hundreds of millions of dollars, if not billions of dollars. *See Cornell*, 2015 U.S. Dist. LEXIS, at *10 (ordering non-party to pay its own costs to comply with a Rule 45 subpoena because it was a large multinational corporation, ranking 65th on the Fortune 500, and where its profits grossly dwarfed any discovery costs).

5. **Cost-shifting is less warranted where the discovery sought is of great public importance.**

Finally, these parts cases make up one of the largest MDLs on record, the outcomes of which potentially concern nearly every person who purchased a vehicle in the United States in the past 20-plus years. This case is of great public importance, and the Six Lead OEMs should be required to produce to the Parties because they are not only able to do so, but the information they possess is so clearly relevant, and is only in their hands. *Blue Cross*, 2012 U.S. Dist. LEXIS 146403, at *11 (finding that where plaintiff alleged that defendant violated the antitrust laws in a

21

[REDACTED]

manner that led to higher health-care costs to citizens in Michigan, issue was of great public importance in that it could impact every citizen in the State).

**6.     Reimbursement of attorneys' fees is not appropriate.**

In addition to demanding that the Parties pay all costs, some of the Six Lead OEMs demand that the Parties pay all of their attorneys' fees associated with their compliance with the Subpoena, and even all of their fees for the 30(b)(6) depositions. *See* Williams Decl. at ¶ 19. This position is not in line with case law and, in fact, it is those same OEMs who have derailed this discovery effort and caused the Parties to incur over a year's worth of costs and fees that would not have been incurred had they substantively agreed to meet and confer with the Parties as they should done in the first place.

The Parties understand "costs" to be distinct from 'attorneys' fees." *See*, *e.g*., Fed. R. Civ. P. 54(d). Courts routinely distinguish between costs and attorneys' fees when evaluating the appropriateness of cost-shifting, and typically make separate findings with respect to these two types of expenses. *See*, *e.g*., *Bell Inc. v. GE Lighting LLC*, 2014 WL 1630754, at *16 (W.D. Va. Apr. 23, 2014) (shifting only copying costs and costs incurred to load documents onto a database, and finding that no attorneys' fees were due); *Maximum Human Performance v. Sigma-Tau Healthscience*, 2013 WL 4537790, at *4 (D.N.J. Aug. 27, 2013) (ordering party to reimburse one-third of vendor costs to harvest ESI, and finding nonparty shall pay its own counsel fees).

The Parties should not be required to reimburse any of the Opposing OEMs for fees which would have been avoided had they not obstructed the meet and confer process that should have, and could have, taken place over a year ago. *See e.g*., *Heartland Surgical Specialty Hosp*., *LLC v. Midwest Division*, *Inc*., 2007 U.S. Dist. LEXIS 53217, at *50-52 (D. Kan. July 20, 2007) (declining to award attorneys' fees under Rule 45(d)(1) after noting that "a significant part of the

22

[REDACTED]

delay and expense concerning these subpoenas was self-imposed by [the non-parties] by refusing to comply with subpoenas and requiring briefing by the parties."); *Apple v. Samsung Electronics Co.*, *Ltd.*, 2013 U.S. Dist. LEXIS 67085, at *3 (N.D. Cal. May 9, 2013) (while conceding that a non-party should not be required to subsidize litigation, the court held that non-party subject to a subpoena is expect to "participate in transparent and collaborative discovery"); *Western Convenience Stores*, *Inc. v. Suncor Energy*, *Inc.*, 2014 WL 1257762, at *25 (D. Colo. Mar. 27, 2014) (courts have minimized cost-shifting where costs were incurred as a result of the subpoenaed entity's own avoidance and delay in complying with its discovery obligations); *Cornell*, 2015 U.S. Dist. LEXIS 105450, at *12-13 (recognizing that non-party unusually hard fought compliance may have unnecessarily increased the cost of compliance).[38]

To the extent the issue of attorneys' fees remains at issue, the Parties suggest that this be the subject of a separate motion to be addressed after the current discovery motion is resolved.

## IV.   INDIVIDUAL DECLARATIONS

Please see the individual declarations filed herewith as Exhibits A through G regarding specific types of data and documents sought from each of the Six Lead OEMs.

## V.   CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant the Parties' renewed motion to compel.

---

[38] *See also The Sedona Conference Commentary on Non-Party Production & Rule 45 Subpoenas*, 9 SEDONA CONF. J. 197, 198-99 (2008) (while a "[a non-party] should not be required to 'subsidize' litigation to which it is not a party, [the non-party cannot] confuse[ ] undue burden with its obligations, once subject to a subpoena, to participate in transparent and collaborative discovery. Third-party status does not confer a right to obfuscation or obstinacy").

[REDACTED]

Dated: November 7, 2016    Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiff Classes*

Steven N. Williams
Elizabeth Tran
Demetrius X. Lambrinos
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
etran@cpmlegal.com
dlambrinos@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100

**[REDACTED]**

Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

*/s/ J. Manly Parks*
Wayne A. Mack
J. Manly Parks
Andrew R. Sperl
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020

*Counsel for Truck and Equipment
Dealer Plaintiffs*

**WEIL, GOTSHAL & MANGES LLP**

*/s/ Adam C. Hemlock* (w/consent)
Adam C. Hemlock
Steven A. Reiss
Lara E. Veblen Trager
Kajetan Rozga
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com

[REDACTED]

lara.trager@weil.com
kajetan.rozga@weil.com

*/s/ Frederick R. Juckniess* (w/consent)
Frederick R. Juckniess
**SCHIFF HARDIN LLP**
350 South Main Street, Suite 210
Ann Arbor, MI 48104 (734)
222-1504
fjuckniess@schiffhardin.com

*Attorneys for Defendants Bridgestone*
*Corporation and Bridgestone APM Company*

**WEIL, GOTSHAL & MANGES LLP**

*/s/ Steve A. Reiss* (w/consent)
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com
Fred K. Herrmann
Joanne G. Swanson
Matthew L. Powell

**KERR, RUSSELL AND WEBER PLC**
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
Fax (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russell.com

*Counsel for Defendants Calsonic Kansei*
*Corporation and Calsonic Kansei North*
*America, Inc.*

[REDACTED]

**BUTZEL LONG**

*/s/ Sheldon H. Klein (w/consent)*
Sheldon H. Klein (P41062)
David F. DuMouchel (P25658)
**BUTZEL LONG**
150 West Jefferson, Suite 100
Detroit, MI 48226
Tel.: (313) 225-7000
Fax: (313) 225-7080
sklein@butzel.com
dumouchd@butzel.com

W. Todd Miller
**BAKER & MILLER PLLC**
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Tel.: (202) 663-7820
Fax: (202) 663-7849
TMiller@bakerandmiller.com

*Attorneys for Defendants TRAM, Inc. and Tokai Rika Co., Ltd.*

**COVINGTON & BURLING LLP**

*/s/ Anita F. Stork* (w/consent)
Anita F. Stork
Gretchen Hoff Varner
Cortlin H. Lannin
**COVINGTON & BURLING LLP**
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com
ghoffvarner@cov.com
clannin@cov.com

Michael J. Fanelli
Ashley E. Bass
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

[REDACTED]

Fax: (202) 662-5383
mfanelli@cov.com
abass@cov.com

*Attorneys for Defendants Alps Electric Co.,
Ltd.; Alps Electric (North America), Inc.;
and Alps Automotive, Inc.*

**BROOKS WILKINS SHARKEY &
TURCO PLLC**

*/s/Maureen T. Taylor* (w/consent)
Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
**BROOKS WILKINS SHARKEY &
TURCO PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Alps Electric
Co., Ltd.; Alps Electric (North America),
Inc.; and Alps Automotive, Inc.*

**SIMPSON THACHER & BARTLETT
LLP**

*/s/ George S. Wang* (w/consent)
George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT
LLP**
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

Abram J. Ellis
**SIMPSON THACHER & BARTLETT
LLP**
900 G Street, N.W.

28

[REDACTED]

Washington, D.C. 20001
Tel.: (202) 636-5500
Fax: (202) 636-5502
aellis@stblaw.com

*Attorneys for Defendants Diamond
Electric Mfg. Co., Ltd. and Diamond
Electric Mfg. Corp.*

**SIMPSON THACHER & BARTLETT
LLP**

/s/ *George S. Wang* (w/consent)
George S. Wang
Shannon K. McGovern
**SIMPSON THACHER & BARTLETT
LLP**
425 Lexington Avenue
New York, N.Y. 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
gwang@stblaw.com
smcgovern@stblaw.com

Abram J. Ellis
**SIMPSON THACHER & BARTLETT LLP**
900 G Street, N.W.
Washington, D.C. 20001
Tel.: (202) 636-5500
Fax: (202) 636-5502
aellis@stblaw.com

*Attorneys for Defendants Stanley Electric
Co., Ltd., Stanley Electric U.S. Co., Inc.,
and II Stanley Co., Inc.*

**SHEARMAN & STERLING LLP**

[REDACTED]

/s/ Heather L. Kafele (w/consent)
Heather L. Kafele
Keith R. Palfin
**SHEARMAN & STERLING LLP**
401 9th Street, NW, Suite 800
Washington, DC 20004
Tel.: (202) 508-8097
Fax: (202) 508-8100
heather.kafele@shearman.com
keith.palfin@shearman.com
Brian M. Akkashian
**PAESANO AKKASHIAN, PC**
132 N. Old Woodward Avenue
Birmingham, MI 48009
Tel.: (248) 792-6886
bakkashian@paesanoakkashian.com

Counsel for Defendants JTEKT
Corporation and JTEKT Automotive
North America, Inc.

**PILLSBURY WINTHROP SHAW
PITTMAN LLP**

/s/ William M. Sullivan Jr. (w/consent)
William M. Sullivan Jr.
Michael L. Sibarium
Jeetander T. Dulani
**PILLSBURY WINTHROP SHAW
PITTMAN LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036-3006
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
wsullivan@pillsburylaw.com
michael.sibarium@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

*Counsel for Mikuni Corporation and
Mikuni America Corporation*

**FARMER BROWNSTEIN JAEGER LLP**

/s/ William S. Farmer (w/consent)
William S. Farmer
David C. Brownstein

30

[REDACTED]

**FARMER BROWNSTEIN JAEGER LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94102
Tel.: (415) 795-2050
Fax: (415) 520-5678
wfarmer@fbj-law.com
dbrownstein@fbj-law.com

*Counsel for Defendants Mitsuba*
*Corporation and American Mitsuba*
*Corporation*

**SEABOLT LAW FIRM**

*/s/ Scott T. Seabolt (w/consent)*
Scott T. Seabolt
**SEABOLT LAW FIRM**
17199 N. Laurel Park Dr., Ste. 215
Livonia, Michigan 48152
248-717-1302
sseabolt@seaboltpc.com

*Counsel for Defendants Mitsubishi*
*Heavy Industries America, Inc. and*
*Mitsubishi Heavy Industries ClimateControl, Inc.*

**LANE POWELL PC**

*/s/ Kenneth R. Davis (w/consent)*
Kenneth R. Davis II
Craig D. Bachman
Darin M. Sands
Masayuki Yamaguchi
**LANE POWELL PC**
ODS Tower
601 SW Second Ave., Suite 2100
Portland, OR 97204-3158
503-778-2100
503-778-2200 (facsimile)
davisk@lanepowell.com
bachmanc@lanepowell.com
sandsd@lanepowell.com

**LANE POWELL PC**

*/s/ Larry S. Gangnes (w/consent)*

31

[REDACTED]

Larry S. Gangnes
Connor B. Shively
**LANE POWELL PC**
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338
206-223-7000
206-223-7107 (facsimile)
gangnesl@lanepowell.com
shivelyc@lanepowell.com

*Counsel for Nachi America Inc.*
*and Nachi-Fujikoshi Corporation*

**WINSTON & STRAWN LLP**

*/s/ Jeffrey L. Kessler* (w/consent) Jeffrey L. Kessler
Jeffrey L. Kessler
A. Paul Victor
Molly M. Donovan
Jeffrey J. Amato
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
jamato@winston.com

**KERR, RUSSELL AND WEBER, PLC**
Fred K. Herrmann
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Counsel for NTN Corporation and*
*NTN USA Corporation*

**ALLEN & OVERY LLP**

*/s/ John Roberti* (w/consent)
John Roberti
Matthew Boucher
**ALLEN & OVERY LLP**

32

[REDACTED]

1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com
matthew.boucher@allenovery.com

Michael S. Feldberg
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
212-610-6360
michael.feldberg@allenovery.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
**WARNER NORCROSS & JUDD LLP**
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Defendants Robert Bosch
LLC and Robert Bosch GmbH*

**MILLER, CANFIELD, PADDOCK &
STONE P.L.C.**

*/s/ Larry J. Saylor* (w/consent)
Larry J. Saylor
**MILLER, CANFIELD, PADDOCK &
STONE P.L.C.**
150 W. Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 496-7986
Facsimile: (313) 496-8454
Saylor@MillerCanfield.com

*Counsel for Defendants Sumitomo Riko
Company Limited and DTR Industries, Inc.*

**WILLIAMS & CONNOLLY LLP**

*/s/ David M. Zinn* (w/consent)
David M. Zinn
John E. Schmidtlein

[REDACTED]

Samuel Bryant Davidoff
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Takata Corporation and*
*TK Holdings, Inc.*

**HERTZ SCHRAM PC**

*/s/ Bradley J. Schram* (w/consent)
**HERTZ SCHRAM PC**
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
Tel.: (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Toyo Tire & Rubber Co., Ltd.,*
*Toyo Automotive Parts (USA), Inc., Toyo*
*Tire North America Manufacturing Inc.,*
*and Toyo Tire North America OE Sales LLC*

**BAKER BOTTS LLP**

*/s/ Randall J. Turk* (w/consent)
Randall J. Turk
John Taladay
Mark Miller
Heather Souder Choi
Sterling A. Marchand
**BAKER BOTTS LLP**
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400
Phone: 202.639.7700
Fax: 202.639.7890
randy.turk@bakerbotts.com
john.taladay@bakerbotts.com
mark.miller@bakerbotts.com
heather.choi@bakerbotts.com
sterling.marchand@bakerbotts.com

34

[REDACTED]

*Counsel for Toyoda Gosei Co., Ltd.,*
*TG Missouri Corporation, and Toyoda*
*Gosei North America Corporation*

**WHITE & CASE LLP**

*/s/ Christopher M. Curran* (w/consent)
Christopher M. Curran
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Counsel for Defendant Maruyasu*
*Industries Co., Ltd.*

**KERR, RUSSELL AND WEBER,**
**PLC**
*/s/ Joanne Geha Swanson* (w/consent)
Joanne Geha Swanson (P33594)
Fred K. Herrmann (P49519)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
Facsimile: (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*Counsel for Defendants Fujikura Ltd. and*
*Fujikura Automotive America LLC*

35

[REDACTED]

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2016 I caused the foregoing THE PARTIES' NOTICE OF MOTION AND RENEWED MOTION TO COMPEL DISCOVERY FROM CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS AND THEIR AFFILIATED ENTITITES to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ E. Powell Miller*
E. Powell Miller