# EXHIBIT B



T 206.623.7292  F 206.623.0594

Jerrod C. Patterson
Of Counsel
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA 98101
www.hbsslaw.com

**jerrodp@hbsslaw.com**

August 8, 2016

<u>**VIA ECF**</u>

Magistrate Judge Donna M. Ryu
United States District Court
Northern District of California
1301 Clay Street, Courtroom 1, 4th Floor
Oakland, CA 94612

      Re:    *In re Lithium Ion Batteries Antitrust Litig.*, 13-md-02420 YGR (DMR)
            <u>Joint Letter Brief re Production of Robert Bosch Tool Corporation Data</u>

Dear Judge Ryu:

      Indirect Purchaser Plaintiffs (IPPs) and third party Robert Bosch Tool Corporation (Bosch) respectfully submit this joint letter brief regarding IPPs' motion to compel production of Bosch's sales data. IPPs seek purchase and sales data for power tools containing cylindrical lithium-ion batteries (LIBs) and replacement batteries for those products.[1] The parties met and conferred several times, including via telephone on July 19, July 28, and August 1, 2016.

      On January 15, 2016, IPPs filed a motion for class certification. On May 24, 2016, defendants filed their opposition. IPPs' reply brief is due on August 23, 2016. No trial date is currently set. IPPs have also moved to compel Walmart to produce purchase and sales data; that motion is set for a hearing before this Court on August 25, 2016.

## INDIRECT PURCHASER PLAINTIFFS' POSITION

      Bosch is one of the largest power tool manufacturers in the world,[2] and indisputably one of the largest purchasers of LIBs globally among power tool manufacturers. The 2005 Annual Report for Bosch's parent company cites its "leading position in lithium-ion technology" with the introduction of "the world's first hammer drill with a 36-volt lithium-ion rechargeable battery."[3] The 2006 Annual Report states that "Bosch is one of the world's leading

---

    [1] *See* Ex. A (subpoena to Robert Bosch Tool Corporation).

    [2] *See* Elise Ackerman, "Global Maker of Power Tools Adds Wireless Charging," Forbes (Oct. 13, 2014), *available at* http://www.forbes.com/sites/eliseackerman/2014/10/13/global-maker-of-power-tools-adds-wireless-charging/#5f67c8359fa6

    [3] Robert Bosch GmbH 2005 Annual Report, at 52-53 (*available at* http://www.bosch.com/media/com/bosch_group/bosch_in_figures/publications/archive/GB2005_En.pdf).

SEATTLE BOSTON CHICAGO COLORADO SPRINGS LOS ANGELES NEW YORK PHOENIX SAN DIEGO SAN FRANCISCO WASHINGTON, D.C.

010330-11 891924 V1

Magistrate Judge Donna M. Ryu
August 8, 2016
Page 2

manufacturers of power tools," and that "[o]ur cordless devices based on innovative lithium-ion technology are extremely successful."[4] The 2007 Annual Report notes that "[a]s early as 2003, we were the first manufacturer to exploit this technology for power tools."[5]

**Relevance.** IPPs have requested (pursuant to Rule 45 subpoena and subsequent negotiations) purchase and sales data for power tools that contain cylindrical LIBs. This data is relevant not only to the pending motions for class certification but more broadly to the IPPs' demonstration of pass-through of overcharges to IPP class members. Bosch admits it can identify its power tools which contain cylindrical LIBs and will provide IPPs with this list, but has agreed only to produce purchase data for LIBs (and not power tools containing cylindrical LIBs).

A centerpiece of defendants' opposition to the IPP motion for class certification is that Dr. Leamer did not analyze sufficient data to demonstrate common methods to prove pass-through to IPP class members, and specifically, that IPPs had data from only one original manufacturer of power tools.[6] Defendants contend that the one tool manufacturer analyzed by IPPs is not representative of other manufacturers (without demonstrating otherwise). Transaction level purchase and sales data from Bosch is relevant to directly respond to this argument; and also for future merits expert reports.

Bosch's principal legal authority opposing production is its misplaced reliance on this Court's decision in the direct purchaser action, where this Court denied defendants' motion to compel downstream discovery from the direct purchaser plaintiffs. But this Court ruled only that given the limited relevance of downstream discovery in a <u>direct purchaser action</u>, defendants could not overcome the undue burden associated with production. As the Court explained, "just because the DPP's and IPP's are in the same case doesn't mean that you can force that kind of discovery on the DPP's in order to support <u>what is absolutely relevant</u> in the IPP case. And I couldn't find a single case that stood for that proposition."[7] For that reason, and because defendants did not issue a Rule 45 subpoena, the issue was not ripe for review.[8] Here, as the Court recognized, the Bosch data is directly relevant to analyzing pass-through, a central part of proving IPPs' claims in this litigation.

**Data Available from Other Sources.** Bosch is wrong in suggesting that the requested data is irrelevant (or that IPPs could get it through less burdensome means). *First*, Bosch says its

---

[4] Robert Bosch GmbH 2006 Annual Report, at 116 (*available at* http://www.bosch.com/media/com_bosch_group/bosch_in_figures/publications/archive/GB2006_En.pdf).

[5] Robert Bosch GmbH 2007 Annual Report, at 56 (*available at* http://www.bosch.com/media/com_bosch_group/bosch_in_figures/publications/archive/GB2007_EN.pdf).

[6] *See* Defendants' Opposition to Indirect Purchaser Plaintiffs' Motion for Class Certification, ECF No. 1282-3, at 2, 23 (filed under seal, May 24, 2016) ("Opp'n to Class Cert.").

[7] *See* Hearing Tr. at 15 (Apr. 28, 2016, ECF No. 1247); *see In re Urethane Antitrust Litig.*, 237 FRD 454 (D. Kan. 2006).

[8] Hearing Tr. at 17.

Magistrate Judge Donna M. Ryu
August 8, 2016
Page 3

data is not relevant because it does not sell power tools to end users. But the defendants are arguing that Dr. Leamer failed to present a reliable methodology because he "did not study enormous segments of the dozens of different retail and distribution channels through which the class purchased LIB Products."[9] That, is, defendants are claiming that the alleged overcharge may not have been passed down at each level of the distribution channel – *e.g.,* from Bosch to retailers. *Second,* Bosch suggests that IPPs could instead obtain the sales information from each of the buyers from Bosch. But Bosch's proposal is unduly burdensome and speculative. To take one example, there are 82 separate retailers within 25 miles of San Francisco that sell Bosch products.[10] To follow Bosch's approach, IPPs would have to subpoena all 82 retailers to obtain the data that Bosch has right now – and that is only for the San Francisco area. This makes no sense. And this presumes each retailer maintains these records – and also would require the burdensome process of normalizing all the different datasets that are likely maintained in varied forms from hundreds of different retailers. There is absolutely no justification to put IPPs through this burden and multiply the discovery burden onto likely dozens or hundreds of retailers.

**Burden**. Bosch admits that it can and will identify all power tools containing cylindrical lithium ion batteries. Having admitted that it is able to identify with specificity the products at issue in this case, however, Bosch then asserts it would be unduly burdensome to collect purchase and sales data for these products. (Bosch limits its production of purchase data to LIBs only, and refuses to produce sales data for the power tools containing those LIBs.) Despite repeated discovery conferences, Bosch has not articulated any specific burden associated with its claims of burden. For the first time in its letter brief, Bosch asserts that it does not have data available on active systems for the entire relevant period. IPPs would be willing to limit their request to purchase and sales data (at the transactional level) available on active servers, provided this would be a sufficient period of time. In support of its burden argument, Bosch attempts to submit a Declaration with this letter brief which contains information never previously provided to the IPPs, despite repeated conversations regarding their burden argument. IPPs accordingly oppose the submission of this Declaration.

Given Bosch's failure to articulate any specific burden associated with production, IPPs' willingness to limit the scope of production to the purchase and sales data available on active servers for power tools containing cylindrical lithium ion batteries (and replacement batteries) and the clear relevance of this data to IPPs' claims, IPPs respectfully request that this Court grant IPPs' motion to compel.

---

[9] Opp'n to Class Cert. at 2.

[10] *See* https://www.boschtools.com/us/en/dl/dealerlocator/dealersearch/?geoSearchEnable=false&fullQuery=&longitude=-122.41941550000001&latitude=37.7749295&start=0&pageSize=10&sorting=DISTANCE.asc&zoom=4&units=PTNA_DEALER&subunitSelector=PTNA_DEALER&PTNA_DEALER=&query=San+Francisco%2C+cA&radius=25.

Magistrate Judge Donna M. Ryu
August 8, 2016
Page 4

## NON-PARTY ROBERT BOSCH TOOL CORPORATION'S POSITION

**Discovery Irrelevant To Direct Purchaser.** The Supreme Court has made clear that where a seller overcharges a direct purchaser in violation of federal antitrust laws, whether the direct purchaser passed on overcharges to its customers is irrelevant. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 492-94 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977). Courts therefore routinely deny discovery relating to a direct purchaser's downstream sales. *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 4:02-md-01486-PJH-JCS at 1 (N.D. Cal. June 1, 2006), ECF No. 915. In particular, in this District, courts have affirmed that such downstream discovery is "not relevant to the claims raised by [direct purchasers]" and that "[w]hatever minimal relevance it may have to claims made by indirect purchasers, these direct purchasers are not a party to those claims." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143-RS-JCS at 1 (N.D. Cal. July 19, 2013), ECF No. 943. Accordingly, in this District, courts – including this Court – have recently denied motions to compel from direct purchasers downstream discovery, as irrelevant and unduly burdensome. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-JST at 10-12 (N.D. Cal. Mar. 25, 2016), ECF No. 4521. Courts in this District have also voiced concerns that "requiring production of downstream sales data would chill the bringing of antitrust cases." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI at 2 (N.D. Cal. Nov. 5, 2010), ECF No. 2123. *See also Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 434 (N.D. Cal. 2008).

Even where, as here, companion claims of indirect purchasers have been coordinated in a multidistrict litigation, courts have refused to require direct purchasers to produce downstream sales data. *See, e.g.*, *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000); *In re Aspartame Antitrust Litig.*, No. 2:06-cv-1732-LDD, 2008 WL 2275528, at *6 (E.D. Pa. Apr. 8, 2008). Indeed, this Court has already rejected compulsory production of downstream discovery from direct purchasers for use in the Indirect Purchaser Plaintiffs' (the "IPPs") case in this multidistrict litigation (the "MDL"). *See* Civil Law and Motion Minute Order (the "Prior Order"), *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR-DMR (N.D. Cal. Apr. 28, 2016), ECF No. 1225. In doing so, this Court specifically declined to "require [direct purchasers] . . . to produce downstream data in order to support the pass-through case for the IPPs." Transcript of Electronically Recorded Proceedings ("Tr.") at 40:12-14, *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR-DMR (N.D. Cal. Apr. 28, 2016). And this Court found that participation of both the Direct Purchaser Plaintiffs (the "DPPs") and the IPPs in the same MDL does not warrant downstream discovery from the DPPs – even "to support what is absolutely relevant in the IPP[s]' case." Tr. at 15:1-8. In fact, this Court expressly acknowledged that no case law supports such a proposition. *See* Tr. at 15:8-9.

Here, Robert Bosch Tool is a direct purchaser of lithium ion batteries and is ***not*** an indirect purchaser of lithium ion batteries. As such, consistent with its Prior Order, the Court should not force Robert Bosch Tool to produce downstream discovery for use in the IPPs' case. Indeed, the well-reasoned Prior Order and its underlying rationales apply doubly here. Robert


Magistrate Judge Donna M. Ryu
August 8, 2016
Page 5

Bosch Tool is not only not a member of the IPPs' class and thus *not* a party to the IPPs' case, Robert Bosch Tool is also *not* a party to this MDL.

**Discovery Unnecessary And Already Accessible To IPPs.** Even assuming that they have some relevance to the IPPs' case, Robert Bosch Tool's downstream sales are not proportional to the needs of the IPPs' case. A party "may obtain discovery regarding any nonprivileged matter" only where the matter is "proportional to the needs of the case, considering": (1) "the importance of the discovery in resolving the issues"; (2) "the parties' relative access to relevant information"; and (3) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Here, the importance of Robert Bosch Tool's downstream sales in resolving the extent to which the IPPs have been harmed from overcharges passed on to members of their class – namely, end-users – is minimal. Ultimately, to establish their damages, the IPPs must show that retailers that sold relevant products – specifically, power tools containing lithium ion batteries – to these end-users passed on overcharges to end-users. Robert Bosch Tool itself does not sell power tools to end-users. Its sales are thus unnecessary to this calculus. Moreover, the IPPs already have access to the downstream discovery that they seek to wrest – namely, the price at which Robert Bosch Tool sold power tools to retailers. That price is simply the price at which retailers purchased power tools from Robert Bosch Tool – information reflected in retailers' purchase data. The IPPs suggest that they have not obtained data from retailers; that to do so would involve issuing subpoenas to retailers; and that that would be "unduly burdensome" to the IPPs. Yet if the IPPs have not obtained data from retailers to demonstrate that those retailers passed on overcharges to the IPPs' class members, whether Robert Bosch Tool passed on overcharges to those retailers has no practical import, and Robert Bosch Tool's sales are, again, unnecessary. Nor do the IPPs cite any case law substantiating the view that a party may shift the onus of establishing its claims to a non-party. In fact, with "already 875,000 observations totaling over [$]133 [] billion in commerce from other sources to illustrate the IPP[s'] damage case and whether or not [an] overcharge was passed through" in this MDL, there is no justification for compelling downstream discovery from Robert Bosch Tool, a non-party to the MDL. Tr. at 19:17-21.

**Discovery Imposes Undue Burden On Non-Party.** Nor do the IPPs meet the "exacting" standards governing discovery from non-parties. Tr. at 20:2-6. A party that issues a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Where the person subject to the subpoena is a non-party to the litigation, "[t]his duty is heightened." *In re NCAA Student-Athlete* Name *& Likeness Licensing Litig.*, No. 09-cv-01967, 2012 WL 629225, at *8 (N.D. Cal. Feb. 27, 2012). Indeed, the Ninth Circuit "has long held that non-parties subject to discovery requests deserve extra protection from the courts." *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218-19 (N.D. Cal. 2015).

Here, the IPPs demand transaction-level data reflecting all of Robert Bosch Tool's sales of lithium ion batteries and power tools incorporating lithium ion batteries that transpired from

Magistrate Judge Donna M. Ryu
August 8, 2016
Page 6

January 1, 2000 through May 31, 2011 (the "Relevant Period"), a period spanning more than a decade. Robert Bosch Tool does not currently maintain transaction-level sales data accessible on an active data system, for the entire Relevant Period. To coordinate an effort to locate and retrieve transaction-level data reflecting 11 years of sales transactions will require a substantial amount of resources and time and will adversely impact Robert Bosch Tool's ability to support normal business activities and operations.[11] In fact, in its efforts to work cooperatively with the IPPs, Robert Bosch Tool has already expended significant resources and time to locate and gather readily accessible transaction-level data reflecting its purchases of lithium ion batteries during the Relevant Period, as well as readily accessible information sufficient to identify its power tools containing cylindrical lithium ion batteries sold during the Relevant Period – all of which Robert Bosch Tool has agreed to produce to the IPPs.

Even assuming that they can clear the relevance hurdle – and they cannot – the IPPs are not entitled to downstream discovery from Robert Bosch Tool because the importance of the downstream discovery in resolving the issue of the IPPs' overcharge damages is marginal; the IPPs already have access to the downstream discovery they demand; and the burden and expense of the downstream discovery outweighs its likely benefit – particularly given that Robert Bosch Tool is a non-party to this MDL. That is, Robert Bosch Tool's downstream sales are not proportional to the needs of the IPPs' case. This Court should therefore deny the IPPs' request, in step with its Prior Order.

Respectfully submitted,

DATED: August 8, 2016

| HAGENS BERMAN SOBOL SHAPIRO LLP | CROWELL & MORING LLP |
|---|---|
| By  s/ Jerrod C. Patterson    <br>    JERROD C. PATTERSON | By    s/ Daniel A. Sasse    <br>    DANIEL A. SASSE |
| Steve W. Berman (*Pro Hac Vice*)<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br>steve@hbsslaw.com<br>jerrodp@hbsslaw.com<br><br>Jeff D. Friedman (SBN 173886) | Angela J. Yu<br>Jerry N. Yang<br>3 Park Plaza<br>20th Floor<br>Irvine, CA 92614<br>Telephone: (949) 263-8400<br>Facsimile: (949) 263-8414<br>dsasse@crowell.com<br>ayu@crowell.com |

---

[11] To the extent that the Court finds it helpful or necessary to substantiate this undue burden, Robert Bosch Tool is filing a supporting Declaration of Dave Wheeler with an accompanying Administrative Motion for Leave to Submit Declaration of Dave Wheeler.

Magistrate Judge Donna M. Ryu
August 8, 2016
Page 7

| | |
|---|---|
| Shana E. Scarlett (SBN 217895)<br>715 Hearst Avenue, Suite 202<br>Berkeley, CA 94710<br>Telephone: (510) 725-3000<br>Facsimile: (510) 725-3001<br>jefff@hbsslaw.com<br>shanas@hbsslaw.com | jyang@crowell.com<br><br>***Attorneys for Non-Party***<br>***Robert Bosch Tool Corporation*** |

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

By     s/ Brandan P. Glackin
       BRENDAN P. GLACKIN

Elizabeth J. Cabraser (SBN 83151)
Richard M. Heimann (SBN 63607)
Eric B. Fastiff (SBN 182260)
Lin Y. Chan (SBN 255027)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com
rheimann@lchb.com
efastiff@lchb.com
bglackin@lchb.com
lchan@lchb.com

COTCHETT, PITRE & McCARTHY,
LLP

By     s/ Steven N. Williams
       STEVEN N. WILLIAMS

Joseph W. Cotchett (SBN 36324)
Demetrius X. Lambrinos (SBN 246027)
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
DLambrinos@cpmlegal.com

010330-11 891924 V1

Magistrate Judge Donna M. Ryu
August 8, 2016
Page 8

***Co-Lead Counsel for Indirect Purchaser***
***Plaintiffs***



T 206.623.7292  F 206.623.0594

Jerrod C. Patterson
Of Counsel
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA 98101
www.hbsslaw.com
**jerrodp@hbsslaw.com**

August 9, 2016

<u>VIA ECF</u>

Magistrate Judge Donna M. Ryu
United States District Court
Northern District of California
1301 Clay Street, Courtroom 1, 4th Floor
Oakland, CA 94612

      Re:    *In re Lithium Ion Batteries Antitrust Litig.*, 13-md-02420 YGR (DMR)
              Joint Letter Brief re Production of Canon Data

Dear Judge Ryu:

      Indirect Purchaser Plaintiffs (IPPs) and third party Canon USA, Inc. (Canon) respectfully submit this joint letter brief regarding IPPs' motion to compel production of Canon's sales and purchase data. IPPs request purchase and sales data for camcorders which contain cylindrical lithium ion batteries (LIBs) and replacement batteries for those products. The parties met and conferred on this topic several times, including via telephone on May 31, 2016 and July 12, 2016. Canon objects to production on relevance and commercial sensitivity grounds. No trial date is currently set. IPPs' reply brief in support of class certification is due August 23, 2016.

## <u>INDIRECT PURCHASER PLAINTIFFS' POSITION</u>

      To demonstrate antitrust impact, IPPs must be able to show that at least some portion of the overcharge imposed on direct purchasers was passed down the distribution chain to consumers (i.e. the IPP class members). Defendants, in opposing class certification, criticize plaintiffs for examining only one camcorder manufacturer.[1] Relying on public statements made by Canon, defendants' expert suggests that Canon was unable to pass through increases in price to its customers.[2]

      **Relevance.** Canon does not argue broadly that the data is not relevant to the pass-through analysis, nor does it contend that it cannot find and produce the data. Instead, Canon asserts that IPPs cannot use its data in its reply brief because this would be a "new argument" that the Court

---

[1] *See* Defendants' Opposition to Indirect Purchaser Plaintiffs' Motion for Class Certification at 2, 23, ECF No. 1282-3 (filed under seal, May 24, 2016); Expert Report of Margaret Guerin-Calvert ("Guerin-Calvert Report"), ¶ 128, ECF No. 1282-5 (criticizing Dr. Leamer for suggesting that the pass-through estimates of Sony camcorders would apply to Canon).

[2] *See* Guerin-Calvert Report, ¶ 72 n.74.

SEATTLE  BOSTON  CHICAGO  COLORADO SPRINGS  LOS ANGELES  NEW YORK  PHOENIX  SAN DIEGO  SAN FRANCISCO  WASHINGTON, D.C.

010330-11 892871V1

Magistrate Judge Donna M. Ryu
August 9, 2016
Page 2

would disregard. This is incorrect, and it is not appropriate for Canon to withhold production based on how it believes a Court should exercise its discretion. The issue of IPPs' data has been a central issue throughout this litigation, and one that defendants specifically raised in its opposition. In addition, courts routinely consider evidence and data, including expert reports, presented in plaintiffs' reply briefs, particularly in large class action antitrust cases.[3] More broadly, this argument does not address *whether* the data is relevant – only *when* it is relevant. The Court has not even set a discovery cutoff date yet, discovery is not limited to class certification, and accordingly any data from Canon can be used as part of IPPs' summary judgment pleadings, its Rule 26 expert report disclosures, and ultimately testimony at trial.

Canon faults IPPs for not providing it with information regarding its own market share. Canon fails to articulate how this relates to Rule 45(d)(3)(A) (outlining the requirements to quash a subpoena), and ignores it is aware of its own market share. Regardless, Canon represented to IPPs that Canon USA had a 12% market share in 2006.

**Trade Secrets.** Canon objects that the requested data is a trade secret. To withhold data on this basis, Canon must establish that this information is confidential, that "its disclosure would be harmful to the party's interest in the property," and that the Protective Order is not sufficient to protect its interests.[4] As the parties discussed during the meet and confer process, Canon can designate its materials "confidential" or "highly confidential" pursuant to the Protective Order in this case. Courts – including this Court, Judge Gonzalez Rogers, and other federal courts in California[5] – have routinely recognize that protective orders are a sufficient means to protect concerns about public disclosure of trade secrets. Canon makes no attempt to explain why the Protective Order will not sufficiently protect its data, as it has for the other third parties that have produced data in this case. Canon contends that IPPs have not identified the experts involved, ostensibly because of a concern that the experts would impermissibly use the data and their analysis against Canon in other case. On August 1, 2016, IPP counsel sent Canon the list of experts who have worked for any party on the class certification pleadings. However, as IPP counsel explained to Canon, this list is incomplete because it does not include experts that might enter the litigation later. In any event, to suggest that these experts would risk being held in contempt by improperly using information derived from this litigation is absurd. The experts

---

[3] *See Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-cv-04062, 2016 WL 3011797, at *22, *25-*26 (N.D. Cal. May 25, 2016); *In re CRT Antitrust Litig.*, MDL No. 1917, 2013 WL 5429718, at *8 (N.D. Cal. June 20, 2013); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 372-374 (C.D. Cal. July 25, 2011); *see also In re Google Adwords Litig.*, No. 08-cv-3369, 2012 WL 28068, at *7-*8 (N.D. Cal. Jan. 5, 2012) (*rev'd on other grounds*, *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (2015)).

[4] *See Edwards v. Cal. Dairies, Inc.*, No. 14-mc-00007, 2014 WL 2465934, at *4 (N.D. Cal. June 2, 2014).

[5] *See Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798, 2016 WL 787924, at *7 (N.D. Cal. Feb. 29, 2016) (Ryu, M.J.) ("Defendants provide no support for their claim that the information sought is protected from discovery, and no explanation why their privacy would not be sufficiently protected if sensitive financial information is designated as 'confidential' or 'highly confidential-attorneys' eyes only pursuant to the parties' protective order."); *Social Apps, LLC v. Zynga, Inc.*, No. 11-cv-04910, 2012 WL 2203063 (N.D. Cal. June 14, 2012) (Gonzalez Rogers, J.); *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-mc-80062, 2016 WL 3162218, at *5 (N.D. Cal. June 7, 2016) (an "attorneys' eyes only" protective order "alleviate any trade secret concerns" regarding a subpoena).

Magistrate Judge Donna M. Ryu
August 9, 2016
Page 3

are bound by the Protective Order, and would, like any other party to the Protective Order, face significant consequences if they were to fail to follow it. Canon relies on the *Edwards* case in support of its trade secret argument, but mischaracterizes the holding. *Edwards* held that plaintiffs must establish a "substantial need" for commercially sensitive information only if the responding party can demonstrate that it would be harmed by the release of this information.[6] Canon omits the second step entirely in its *Edwards* analysis, and makes no effort to show why this data would be publicly released. As IPPs have explained to Canon, under the Protective Order, defendants themselves will not see the data if it is designated "highly confidential." Its data will not be released publicly if it follows the designation requirements under the Protective Order.

Canon offers other non-relevant objections. Canon asserts that there is no evidence a named plaintiff purchased a Canon product, but for the pass-through analysis this does not matter. Whether the proposed class representatives are adequate to represent the class is an issue for Judge Gonzalez Rogers to decide. Canon also claims that IPPs did not assist in narrowing the scope by providing a list of UPC codes of the relevant products. Although Canon had not previously requested this, IPPs provided this list to Canon on August 4, 2016. Finally, Canon makes much of the IPPs' issuance of a subpoena in 2015, and issuance of an amended subpoena in May 2016. But the reason is simple – the May 2016 subpoena narrows the scope of the relevant data to cylindrical batteries, the ones in IPPs' pending motion for class certification.

Because data regarding Canon's purchase and sale of camcorders is clearly relevant to IPPs' theories of impact, and because Canon has failed to articulate any undue burden under Rule 45(d)(3), IPPs respectfully request that this Court grant IPPs' motion to compel.

## NON-PARTY CANON U.S.A., INC.'S POSITION

IPPs' motion must be denied for three (3) independent reasons. ***First***, the Subpoena unduly burdens non-party CUSA. IPPs seek CUSA's data for the express purpose of using it in their class certification reply. Yet any production now by CUSA – which has not furnished any declarations, documents, or data to any party in this action – would be inadmissible on reply. ***Second***, IPPs have not demonstrated "substantial need" for CUSA's commercially sensitive data under Rule 45. Instead, they admit *in this letter* that "Defendants' own documents" are sufficient. ***Third***, IPPs did not meet and confer in good faith. Despite multiple requests from CUSA for facts justifying IPPs' "substantial need" for CUSA's data, IPPs repeatedly stonewalled CUSA. Incredibly, the only specific basis offered herein – a purported statement about "Canon" from Defendants' sealed expert report to which CUSA has no meaningful opportunity to respond – was *never disclosed to CUSA during the meet-and-confer process*.

**Undue Burden**. CUSA has not produced any data to any party in this action. Although IPPs initially subpoenaed CUSA in 2015, they ended meet-and-confer negotiations and elected

---

[6] *See Edwards*, 2014 WL 2465934, at *5.

Magistrate Judge Donna M. Ryu
August 9, 2016
Page 4

to move for class certification without any discovery from CUSA.[7] It is well-settled that courts do not consider "new . . . evidence presented for first time in a reply." *See In re Flash Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 59491, at *68 (N.D. Cal. Mar. 31, 2010) (citation omitted). In *Flash Memory*, this Court declined to consider new evidence in the plaintiffs' expert's reply declaration: "Since it is Plaintiffs' initial burden to demonstrate" entitlement to class certification, "such evidence should have been proffered with Plaintiffs' moving papers in order to afford Defendants a full and fair opportunity to respond." *Id.*[8]

IPPs represented in meet-and-confer negotiations that they seek CUSA's data for the *exclusive* purpose of arguing in *reply* that their data is "robust." But any such use of CUSA data would constitute "evidence presented for first time in a reply" that "should have been proffered with [IPPs'] moving papers." Rule 45(d) protects non-parties from "undue burden or expense." Because any use of CUSA's data in support of class certification at this juncture would be improper, imposing any "burden or expense" upon CUSA would be "undue." Furthermore, no named plaintiff is alleged to have purchased a Canon-brand product. CUSA's data would therefore have no relevance to this action outside the class certification context.[9] As a non-party, CUSA should not bear the burden of producing documents[10] that may not be considered.

**Lack of Substantial Need**. Rule 45(d)(3)(B) provides that a subpoena may be quashed "if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." Sales, revenue, and pricing information are subject to protection. *See, e.g.*, *Edwards v. Cal. Dairies, Inc.*, 2014 U.S. Dist. LEXIS 74999, at *13 (E.D. Cal. May 30, 2014). When seeking confidential commercial information, a requesting party must "show[] a substantial need for the testimony or material." Rule 45(d)(3)(C)(i). To do so, it must establish that its "claim or defense virtually rises or falls with the admission or exclusion of the proffered evidence." *Edwards*, 2014 U.S. Dist. LEXIS 74999, at *15 (quotation omitted).[11] A subpoena

---

[7] IPPs served the Subpoena approximately nine (9) months after ending prior meet-and-confer negotiations.

[8] IPPs cite various cases in which reply reports or declarations were considered. But such cases do *not* condone the submission of *new* evidence on reply. Indeed, in *In re Google AdWords Litig.*, the Court only considered a reply report because it "[did] not contain additional expert opinions or evidence, but instead respond[ed] to the criticisms and evidence presented by Defendant's Opposition, *drawing upon [the expert's] previously disclosed expert reports and documents that Defendant produced during discovery*." 2012 WL 28068, at *7–8 (emphasis supplied).

[9] IPPs state that "any data from Canon can be used as part of IPPs' summary judgment pleadings, its Rule 26 expert report disclosures, and ultimately testimony at trial." Not only did IPPs fail to mention any of these purported uses in the meet-and-confer process, but they all appear to be predicated upon the speculative assumption that their class certification motion will be granted. If certification is denied, CUSA's data will certainly have no relevance.

[10] IPPs have made no meaningful effort to identify which Canon-brand products contain cylindrical lithium ion batteries. While IPPs provided a list of UPC codes to CUSA (after the conclusion of the meet-and-confer process), that list contains over 48,000 products, is not limited to Canon-brand products, and is not even limited to products within the class definition (it includes Canon-brand **digital cameras**, **digital camera bodies**, **digital camera flashes**, **digital camera carrying cases and bags**, **camera lens cleaning kits**, **battery grips**, **battery chargers**, **tripods**, **warranties**, **laser printers**, and **ink cartridges and tanks**). Such lack of specificity further burdens CUSA, which is the *not the manufacturer* of Canon-brand products (but is only the exclusive U.S. distributor).

[11] "The determination of substantial need is especially important in the context of enforcing a subpoena where confidential commercial information is sought from a non-party." *Id.* (citation omitted).

010330-11 892020 V1

Magistrate Judge Donna M. Ryu
August 9, 2016
Page 5

recipient's market share is pertinent in assessing "substantial need" in the antitrust context. In *Edwards*, the court held the plaintiffs failed to meet this burden where, *inter alia*, defendants' data covered roughly 35% of the market, while the non-party's share was far less.

The Subpoena seeks confidential, commercially sensitive data concerning all aspects of CUSA's purchases and sales. CUSA closely guards such data, which could be analyzed to discern further confidential aspects of CUSA's business, including profit margins. Disclosing such data, especially to competitors (many of which are Defendants), would jeopardize CUSA's business.

IPPs have not shown "substantial need." Instead, IPPs *admit in this letter* they can show antitrust impact based on "economic theory and Defendants' own documents." IPPs tellingly cite no market share statistics or data for CUSA or Defendants.[12] Rather, they make only a general, unsupported statement concerning CUSA's *parent*. IPPs' failure to establish substantial need is not surprising. IPPs moved for class certification without *any* discovery from CUSA. If IPPs did not consider CUSA's data sufficiently important to include it in their moving papers, they cannot now argue their claims "virtually rise[] or fall[] with [its] admission or exclusion." To divert attention from their lack of "substantial need," IPPs aver that the protective order should "sufficiently protect [CUSA's] data." This is a red herring. As the *Edwards* court held, "the fact that a protective order is in place in the underlying action does not resolve the issue of whether the non-party is required to produce information that is claimed to be confidential commercial information." *Edwards*, 2014 U.S. Dist. LEXIS 74999, at *10-11.

**Failure to Meet and Confer in Good Faith**. During the meet-and-confer process, CUSA repeatedly asked IPPs for information evidencing "substantial need," including, *inter alia*, CUSA's camcorder market share during the class period relative to (i) Defendants and (ii) non-parties that produced data. Additionally, because many of CUSA's interbrand competitors are Defendants, CUSA requested that IPPs disclose names and CVs of experts identified to date.[13] Yet, over multiple telephone conversations and rounds of correspondence, IPPs refused to offer *any* substantive information concerning "substantial need." Nor did they disclose experts' CVs.[14] Now, in an apparent attempt to sandbag CUSA, IPPs only cite, *for the first time in this letter*, a purported statement allegedly concerning "Canon"[15] from Defendants' expert report.[16]

---

[12] In good faith, CUSA conducted preliminary research regarding domestic camcorder market share, which reflects that its market share consistently paled in comparison to Defendants'. For instance, in 2006, CUSA's market share was 12%, whereas Defendants Sony, Panasonic, Samsung, and Hitachi collectively possessed 62% – almost double the market share noted in *Edwards*. CUSA's relatively minor market share, in comparison to that of Defendants that have presumably produced substantial data, further demonstrates IPPs' lack of substantial need.

[13] Courts have required disclosure of experts where commercially sensitive data would be disclosed to the producing party's competitors. *See, e.g.*, *Madanes v. Madanes*, 186 F.R.D. 279, 288-89 (S.D.N.Y. 1999).

[14] IPPs only first disclosed the experts' identities *after* the meet-and-confer process had concluded.

[15] It is unclear whether such statement concerns CUSA or its parent, Canon Inc., a Japanese company that has not been subpoenaed. Nevertheless, such statement cannot give rise to "substantial need" in light of IPPs' admission they have sufficient data from Defendants, and CUSA's relatively minor market share.

Magistrate Judge Donna M. Ryu
August 9, 2016
Page 6

This sharp practice makes a mockery of IPPs' good-faith obligation to meet and confer before filing a motion to compel. IPPs know full well that without being apprised of the factual basis and context for the expert's purported statement – which, notably, was made without any discovery from CUSA – CUSA is in no position to respond to the accuracy or relevance of such statement.

Respectfully submitted,

DATED: August 8, 2016

| HAGENS BERMAN SOBOL SHAPIRO LLP | DORSEY & WHITNEY LLP |
|---|---|
| By  s/ Jerrod C. Patterson  <br>     JERROD C. PATTERSON | By  s/ Richard H. Silberberg  <br>     RICHARD H. SILBERBERG |
| Steve W. Berman (*Pro Hac Vice*)<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br>steve@hbsslaw.com<br>jerrodp@hbsslaw.com | Dai Wai Chin Feman<br>51 West 52nd Street<br>New York, NY 10019<br>Telephone: (212) 415-9200<br><br>Martha C. Luemers<br>Patricia A. Welch<br>305 Lytton Avenue<br>Palo Alto, CA 94301<br>Telephone: (650) 857-1717 |
| Jeff D. Friedman (SBN 173886)<br>Shana E. Scarlett (SBN 217895)<br>715 Hearst Avenue, Suite 202<br>Berkeley, CA 94710<br>Telephone: (510) 725-3000<br>Facsimile: (510) 725-3001<br>jefff@hbsslaw.com<br>shanas@hbsslaw.com | ***Counsel for Non-Party Canon USA, Inc.*** |
| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP | |
| By  s/ Brendan P. Glackin  <br>     BRENDAN P. GLACKIN | |
| Elizabeth J. Cabraser (SBN 83151) | |

---

[16] IPPs have refused to provide CUSA with copies of Defendants' class certification opposition papers.

Magistrate Judge Donna M. Ryu
August 9, 2016
Page 7

Richard M. Heimann (SBN 63607)
Eric B. Fastiff (SBN 182260)
Lin Y. Chan (SBN 255027)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com
rheimann@lchb.com
efastiff@lchb.com
bglackin@lchb.com
lchan@lchb.com

COTCHETT, PITRE & McCARTHY, LLP

By  s/ Steven N. Williams
    STEVEN N. WILLIAMS

Joseph W. Cotchett (SBN 36324)
Demetrius X. Lambrinos (SBN 246027)
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
DLambrinos@cpmlegal.com

*Co-Lead Counsel for Indirect Purchaser Plaintiffs*

010330-11 892020 V1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## CIVIL LAW AND MOTION MINUTE ORDER

| **Date:** 10/13/16 | **Time:** 11:18-12:32 | **Judge:** DONNA M. RYU |
|---|---|---|
| **Case No.:** 4:13-md-02420-YGR | **Case Name:** In Re: Lithium Ion Batteries Antitrust Litigation | |

**For Direct Purchaser Plaintiffs:** See attached page 2
**For Indirect Purchaser Plaintiffs:** See attached page 2
**For Defendant:** See attached page 2

**Deputy Clerk:** Ivy Lerma Garcia          **Court Reporter:** Raynee Mercado

## PROCEEDINGS

1. Joint Discovery Letter Brief [Docket No. 1349], Defendants' Motion to compel re: James L. Kaschmitter
   Motion is denied.  By no later than 10/20/2016, DPPs shall produce to Defendants a sworn declaration by Kaschmitter stating unequivocally that in writing his report, he did not rely on anything he obtained from the undisclosed consultant that have not been disclosed to Defendants.  If Kaschmitter relied in any way on other consultant materials, DPPs shall immediately produce such materials.  He shall also authenticate the materials that he received from the undisclosed consultant and that he used in his report that purportedly came from Shenzhen Elite Electronics Co. Ltd.

2. Joint Discovery Letter Brief [Docket No. 1365], Indirect Purchaser Plaintiffs' (IPPs) Motion to Compel re: Third Party Canon USA, Inc. ("Canon")
   Motion is granted in part.  IPPs shall provide Canon with a list of relevant Canon UPC codes as soon as possible.  Canon shall produce purchase and sales data for relevant products for 1/1/2010 through 12/31/2011.  IPPs and Canon shall immediately meet and confer regarding a protective order and the timing of Canon's production, and shall finalize a protective order by no later than 10/20/2016.

3. Joint Discovery Letter Brief [Docket No. 1362], Indirect Purchaser Plaintiffs' (IPPs) Motion to compel re: Third Party Robert Bosch tool Corporation ("Bosch")
   Motion is granted in part.  By 11/7/2016, Bosch shall produce requested purchase and sales data for power tools containing cylindrical lithium ion batteries for 1/1/2010 through 12/31/2011.  IPPs agreed to pay reasonable costs of producing the requested data.  The parties shall immediately meet and confer regarding "reasonable costs" for production and a protective order, and shall finalize a protective order by no later than 10/20/2016.

**Order to be prepared by:**
( )    Plaintiff              ( )      Defendant           ( )      Court
cc:  Chambers

# IN RE LITHIUM ION BATTERIES
# ANTITRUST LITIGATION
# MDL 2420
## SIGN IN SHEET FOR COUNSEL

### FOR DIRECT PURCHASER PLAINTIFFS

| Counsel For: | Case Name/No: | Attorney Name | Firm Name |
|---|---|---|---|
| DPP | MDL 2420 | Judith Zahid | Zelle LLP |
| DPP | " | Qianwei Fu | Zelle LLP |
| DPP | MDL 2420 | Aaron M. Sheanin | Pearson, Simon & Warshaw LLP |

### FOR INDIRECT PURCHASER PLAINTIFFS

| Counsel For: | Case Name/No: | Attorney Name | Firm Name |
|---|---|---|---|
| Non-party Canon U.S.A | 13-md-2420 | Martha C. Luemers | Dorsey & Whitney LLP |
| IPPs | 13-2420 | Gerard Pettersen | Hogan Berry |
| Non-party Robert Bosch Tool | 13-md-2420 | Daniel Sasse | Crowell & Moring |
| Non-party Robert Bosch Tool Corp | 13-md-2420 | Ryan Wong | Crowell & Moring |

### FOR DEFENDANTS

| Counsel For: | Case Name/No: | Attorney Name | Firm Name |
|---|---|---|---|
| Toshiba Corp. | In re LIB 4:13-2420 | Frank Hogue | White & Case LLP |
| Toshiba Corp. | In re LIB 4:13-2420 | Aya Kobori | White & Case LLP |