# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In Re: **AUTOMOTIVE PARTS ANTITRUST LITIGATION** | ) ) ) ) | Master File No.:  12-md-02311 Honorable Marianne O. Battani Special Master Gene J. Esshaki |
| In Re: **All Auto Parts Cases** | ) ) ) | 2:12-MD-02311-MOB-MKM |
| **THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES** | ) ) ) ) | **Oral Argument Requested** |

## NON-PARTY FCA US LLC'S OPPOSITION TO THE PARTIES' RENEWED MOTIONS TO COMPEL

# ISSUES PRESENTED[1]

1.      Whether the Subpoena should be reasonably tailored to fill any material gaps in party discovery.

2.      Whether the Subpoena flunks the rule of proportionality because it seeks information of marginal incremental benefit and is unprecedented in its scope and burdens it imposes.

3.      Whether the parties have satisfied their obligation to avoid imposing undue burdens where (i) they have not shown a substantial need for the requested information; and (ii) they have made no effort to show what additional information they actually need beyond the information they already have or could obtain through party discovery.

4.      Whether FCA US's offer of production including (i) purchasing data from approximately 2001 forward; (ii) RFQ data from approximately 2003 forward; (iii) model-level cost data from approximately model year 2011 forward; (iv) pricing presentations from approximately 2009 forward; and (v) model- and trim-level MSRP and invoice prices from approximately 2007 forward, discharges FCA US's obligations under Fed. R. Civ. P. 45.

5.      Whether the parties' additional requests fail the rule of proportionality because they seek information of marginal incremental benefit and do not "avoid imposing an undue burden or expense" on non-party FCA US LLS ("FCA US") as required by Rule 45.

6.      Whether the parties should be ordered to pay FCA US's reasonable costs and attorneys' fees incurred in responding to the Subpoena.

7.      Whether the Plaintiffs' demands for internal and external settlement-related communications with Defendants are beyond the scope of permissible discovery, especially where – as here – some SSEs are potential opt-out plaintiffs in this very matter.

---

[1] Unless otherwise noted, all emphasis added and internal citations and quotation marks omitted.  All references to exhibits are to materials attached to the Declaration of David A. Munkittrick.  ECF citations are to the docket entries in 12-md-2311, unless otherwise noted.

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL BACKGROUND.......................................................................3

        A.      The Parties' Initial Motion to Compel ......................................................3

        B.      The Special Master's Order on the Initial Motion and Subsequent
                Depositions ...............................................................................................3

        C.      FCA US's Offer of Production ..................................................................4

III.    STANDARD OF REVIEW ....................................................................................6

IV.     THE SUBPEONA SHOULD BE QUASHED BECAUSE THE PARTIES
        HAVE MADE NO SHOWING OF SUBSTANTIAL NEED .............................7

V.      THE PARTIES' ADDITIONAL REQUESTS ARE UNNECESSARY AND
        UNDULY BURDENSOME ...................................................................................8

        A.      There is No Impasse as to Purchasing Data..............................................8

        B.      The "Additional" RFQ Data the Parties Request is Not Reasonably
                Available – It Does Not Exist ...................................................................9

        C.      Internal Pre-RFQ Target Prices Are Irrelevant and Would Impose
                Significant Burden .....................................................................................9

        D.      Internal, Pre-RFQ Sourcing Recommendations Are Irrelevant and
                Would Impose Significant Burden on FCA US........................................10

        E.      The Parties Have a Sufficient Sample of Supplier Agreements, and
                Searching for More Imposes Undue Burden ...........................................11

        F.      A Search for Additional Cost Studies, if Any Exist, Would Impose
                Undue Burden ...........................................................................................12

        G.      VIN-Level Cost Data is Unnecessary and Duplicative of What FCA
                US Has Offered to Produce.......................................................................13

        H.      Pre-MY2007 Downstream Pricing Information Does Not Exist ...........14

        I.      Transactional Vehicle Sales Data Is Not Reasonably Accessible .........14

        J.      Vehicles Received from FCA Italy...........................................................15

VI.     PLAINTIFFS' REQUEST NO. 31 CALLS FOR UNNECESSARY AND
        PRIVILEGED INFORMATION. ..........................................................................16

        A.      Internal Settlement Deliberation Documents...........................................16

        B.      External Settlement Communication Documents.....................................17

VII.   THE COURT SHOULD ORDER THE PARTIES TO REIMBURSE FCA US
        FOR   ITS   COSTS   AND   ATTORNEYS'   FEES   INCURRED   IN
        RESPONDING TO THE SUBPOENA ............................................................................. 18

VIII.  CONCLUSION ................................................................................................................ 20

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 26 .................................................................................................6, 16

Fed. R. Civ. P. 45 ................................................................................. *passim*

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,*
    332 F.3d 976 (6th Cir. 2003) ...................................................................16, 17, 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    2013 WL 5428139 ..................................................................................15, 16

*In re Vitamins Antitrust Litig.,*
    198 F.R.D. 296, 298-99 (D.D.C. 2000) .................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    No. M 07-1827 SI, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012)...........................................13

*Laethem Equip. Co. v. Deere and Co.,*
    2007 WL 2873981 (E.D. Mich. 2007)...................................................................7

*Moon v. SCP Pool Corp.,*
    232 F.R.D. 633 (C.D. Cal. 2005) ...........................................................................2

# FULL TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. F.B.I.*,
194 F.R.D. 316 (D.D.C. 2000)..................................................................7

*Chevron Corp. v. Snaider*,
78 F. Supp. 3d 1327, 1345 (D. Colo. 2015)...............................18

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998)......................................................6

*Falise v. Am. Tobacco Co.*,
258 F. Supp. 2d 63 (E.D.N.Y. 2000) ........................................15

*Georgia-Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*,
278 F.R.D. 187 (S.D. Ohio 2010) ..............................................20

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
332 F.3d 976 (6th Cir. 2003) ..........................................16, 17, 18

*In re Am. Hous. Found.*,
2013 WL 2422706 (N.D. Tex. 2013)...........................................19

*In re Am. Nurses Assn.*,
2016 WL 1381352 (4th Cir. 2016) ..............................................19

*In re Auto. Refinishing Paint Antitrust Litig.*,
229 F.R.D. 482 (E.D. Pa. 2005)..................................................20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2013 WL 5428139 ...............................................................15, 16

*In re First Am. Corp.*,
184 F.R.D. 234 (S.D.N.Y. 1998) ...............................................20

*In re Law Firms of McCourts & McGrigor Donald*,
2001 WL 345233 (S.D.N.Y. 2001)..........................................19, 20

*In re Lithium Ion Batteries Antitrust Litigation*,
No. 4:13-md-02420-YGR (N.D. Cal. Oct 13, 2016) ......................8

*In re Mushroom Direct Purchaser Antitrust Litig.*,
2015 WL 5767415 (E.D. Pa. 2015) .............................................16

*In re Subpoenas to Plains All Am. Pipeline, L.P.*,
  2014 WL 204447 (S.D. Tex. 2014) ....................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012) .............................13

*In re Vitamins Antitrust Litig.*,
  198 F.R.D. 296, 298-99 (D.D.C. 2000) .............................................................13

*Kean v. VanDyken*,
  2006 WL 374501 (W.D. Mich., 2006).................................................................20

*Kisser v. Coal. for Religious Freedom*,
  1995 WL 590169 (E.D. Pa. 1995) ....................................................................19

*Laethem Equip. Co. v. Deere and Co.*,
  2007 WL 2873981 (E.D. Mich. 2007)..................................................................7

*Lowe v. Vadlamudi*,
  2012 WL 3887177 (E.D. Mich. 2012)..................................................................6

*Moon v. SCP Pool Corp.*,
  232 F.R.D. 633 (C.D. Cal. 2005) ......................................................................2

*Pac. Gas & Elec. Co. v. Lynch*,
  2002 WL 32812098 (N.D. Cal. 2002) ................................................................19

*Richmond Health Facilities-Madison, LP v. Clouse*,
  473 S.W.3d 79 (Ky. 2015)..............................................................................17

*State v. Little River Band of Ottowa Indians*,
  2007 WL 851282 (W.D. Mich. 2007)............................................................17, 18

*Taylor v. Universal Auto Grp. I, Inc.*,
  2015 WL 1810316 (S.D. Ohio 2015)...................................................................7

*U.S. v. Blue Cross Blue Shield of Mich.*,
  2012 WL 4513600 (E.D. Mich. 2012)..................................................................7

*U.S. v. Columbia Broad. Sys., Inc.*,
  666 F.2d 364 (9th Cir. 1982) ...................................................................6, 7, 19

*W. Benefit Solutions, LLC v. Gustin*,
  2012 WL 4417190 (D. Idaho 2012)....................................................................20

*Williams v. City of Dallas*,
  178 F.R.D. 103 (N.D. Tex. 1998) .....................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(3)(A) ........................................................................................16

Fed. R. Civ. P. 26(b)(l) ................................................................................................6

Fed. R. Civ. P. 45(d)(1)....................................................................................1, 2, 6, 9

Fed. R. Civ. P. 45(d)(2)(C) ...........................................................................................7

Fed. R. Civ. P. 45(d)(3)(B)(i) .......................................................................................7

Fed. R. Civ. P. 45(d)(3)(C)(i) .......................................................................................6

## I.     INTRODUCTION

The Court is once again confronted with a subpoena of immense proportions. Unprecedented in scope and the burdens it thrusts upon FCA US LLC ("FCA US"), it covers nearly *every* vehicle sold in America over the last twenty years and millions of individual parts. It is no wonder that the Special Master described it as "probably the largest subpoena that has ever been requested to be enforced anywhere in the United States." March 24, 2016 Hrg. Tr. at 41-42 (ECF 1270). As FCA US argued in opposing the parties' first motion to compel, the parties failed their obligation to "avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Indeed, none of the parties are seeking discovery in the *Wire Harness* case, and the parties in most of the other cases have not even exchanged discovery. Here, the parties have made no effort to demonstrate what information they actually need to litigate beyond the wealth of information available through party discovery. From the defendants – the dominant suppliers of the parts at issue – they have comprehensive "upstream" information about sales made to every direct purchaser, including the OEMs. And at least one defendant participated in every RFQ at issue and signed almost every relevant sales agreement. From the Dealer Plaintiffs, the parties have the other side of the coin – "downstream" information – about vehicle sales to dealers. The parties have not identified any material gaps in their discovery record.

Still, in an effort to bring resolution to these issues, FCA US made a significant offer of production that covered all the categories of information the parties continue to seek. The offer would impose significant burdens, requiring over 750 hours of employee time to accomplish. Though they have what they need to reasonably estimate damages and pass-through – particularly with what FCA US has offered – the parties seek more. They seek incremental pieces of data and information that would only increase the already substantial burden on FCA

US while providing little, if any, benefit to the parties. By way of example, the parties seek to compel two additional years of RFQ data, though FCA US has informed the parties that its offer to produce over 13 years of such data exhausts the coverage of its systems; they ask for a sample of supplier agreements even though they admit they have such a sample from defendants; they ask for target price data without establishing relevance or justifying the hundreds of hours it would impose on FCA US to collect.

Rule 45 is designed to protect third parties from such unnecessary, irrelevant, and burdensome discovery. Throughout the meet and confer process, FCA US has asked the parties to identify the material gaps in the record so that FCA US could help fill them at a manageable burden. The parties rejected this, saying they had no obligation to avoid duplicative discovery. But duplication creates burden. The parties continue to shirk their obligation to "take reasonable steps to avoid imposing undue burden or expense" on non-parties. Fed. R. Civ. P. 45(d)(1); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (quashing subpoena that was "overbroad on its face and exceeds the bounds of fair discovery").

In sharp contrast to FCA US's offer, the parties have made no concrete offer at all to reimburse FCA US for the reasonable costs of production, including attorneys' fees. Instead, the parties repeat their refrain that they are "willing to discuss" cost sharing. FCA US has already incurred significant expense in its year-long attempt to engage the parties towards meaningfully narrowing their requests.

While the subpoena should be quashed in its entirety for violating Rule 45 and failing Rule 26's rule of proportionality, FCA US has come forward with an offer of production that would satisfy any legitimate need the parties may have, particularly in light of the immense well of party discovery at their disposal. The parties do not contest this. Instead, they seek to impose

additional burden without any showing of need.  Their motion should be denied.

## II.     PROCEDURAL BACKGROUND

### A.     The Parties' Initial Motion to Compel

The procedural history leading to the Parties' initial motion to compel (the "Initial Motion") is described in detail in the SSEs' opposition (the "Opposition").[2]  Ex. 11 (ECF 1227 at 5-13).  Along with the other SSEs, FCA US spent months attempting to engage with the parties to narrow what the Special Master described as "probably the largest subpoena that has ever been requested to be enforced anywhere in the United States."  March 24, 2016 Hrg. Tr. at 41-42 (ECF 1270).  To do so, FCA US and the SSEs repeatedly asked the parties to identify the gaps in the record that they needed non-party discovery to fill.

Instead of identifying any material gaps in party discovery or making efforts to meaningfully narrow the subpoena, the parties offered only cosmetic changes, proceeded to declare impasse, and filed their Initial Motion.  As detailed in the Opposition, accompanied by two expert declarations and *fifty-six* detailed and uncontested fact declarations, the requests impose tremendous, costly, and unnecessary burden.  Ex. 11.  Furthermore, most of the discovery sought was duplicative, cumulative, or unnecessary in light of the information already in the parties' possession.  *Id.*  In short, it failed Rule 45.

### B.     The Special Master's Order on the Initial Motion and Subsequent Depositions

The Special Master conducted a mediation and hearing on the Initial Motion, during which he stated that "there simply isn't sufficient information before me today to make a reasonable decision."  March 24, 2016 Hrg. Tr. at 15 (ECF 1270).  In other words, the parties

---

[2] The SSEs, or "Specified Subpoenaed Entities," are the approximately 120 non-party OEMs and non-OEM affiliates that were served with the subpoena.

failed to satisfy their burden of persuasion on their motion.  Instead of denying the motion, however, the Special Master ordered certain of the SSEs, including FCA US, to provide deposition testimony.

FCA US and others lodged objections to the Special Master's order, which were sustained.  The Court then ordered that the parties could issue Rule 45 deposition subpoenas to FCA US and five other OEMs.  The depositions were to be limited to the availability and burden of producing information in response to the subpoena.  June 23, 2016 Hrg. Tr. at 23-25 (ECF 1405).  The Court also ruled that "the costs of actually attending the depositions, that cost will *at a minimum* be split between the parties and the non-parties." *Id.* at 103-104.  The OEMs' request that attorneys' fees also be shifted is currently pending.  ECF 1453.

After being served with a deposition subpoena, FCA US produced two representatives, Michael Novak and Kelly Lynch, who sat for depositions on August 29th and September 20th, respectively.  Collectively, Mssrs. Novak and Lynch spent over 60 hours preparing to testify about the expansive requests in the parties' subpoena.  Ex. 1 at 23, 183; Ex. 2 at 20, 197-198. The parties have not identified any question or topic on which FCA US's witnesses were unable to provide responsive information.  Yet, the parties largely avoided one critical area of inquiry: the accessibility and burden of producing the information identified.

### C.      FCA US's Offer of Production

After the depositions, the parties' requested essentially every document or piece of data in every system or repository mentioned by FCA US's deponents, with no regard for burden or accessibility.  Their requests fell into three categories: (1) Purchase and Procurement; (2) Cost and Pricing; and (3) Sales.  Williams Decl. ¶ 8.  In response, FCA US identified the burden and inaccessibility issues implicated by the parties' requests, and made a substantial offer of

production.  The offer, while still imposing a significant burden, reduces what the parties sought

to impose through their subpoena.

FCA US's offer covers accessible information in each area of the parties' "Narrowed

List":

1.  <u>Purchasing</u>: data as far back as maintained in FCA US's PentaSAP and COMPASS systems – approximately 2001.

2.  <u>Procurement</u>: RFQ data as far back as maintained in FCA US's webRFQ system – approximately 2003.

3.  <u>Cost</u>: Product Cost Studies as far back as maintained in FCA US's PCS system – approximately model year 2011.

4.  <u>Pricing</u>: Product Committee PowerPoint presentations with pricing information as far back as maintained in FCA US's EMMS system – approximately 2009.

5.  <u>Pricing / Sales</u>: Code Guides with MSRP and invoice prices as far back as FCA US maintains them – approximately model year 2007.

Ex. 8.

This offer encompasses a substantial amount of information, going back as far as is

available in the systems from which FCA US has offered to produce.  In exchange, FCA US

asked for an agreement that its reasonable costs and attorneys' fees would be covered, as

provided by Rule 45, and that its offer would satisfy its obligations under the subpoena.[3]

But in their rush to establish an expedited briefing schedule, the parties approached the

meet and confer process with the purpose of reaching impasse rather than agreement.  Instead of

identifying any need for information beyond FCA US's offer, the parties declined the offer and

declared impasse.  As a result, the parties' renewed motion seeks nothing but unnecessary,

_____

[3] FCA US estimates that its offer would require over 750 hours of employee time to (a) develop parameters of the necessary searches through its systems; (b) conduct the collection from its systems; and (c) review the resulting data for accuracy before production.  Ex. 3 ¶ 4; Ex. 4 ¶ 4; *see also* Ex. 2 at 139, 143-44.  FCA US estimates that the dollar value of this lost employee time alone exceeds $90,000.  *Id.*

ancillary information that does not exist, is inaccessible, or would impose substantial burdens to search for and collect.  As a result, each additional request unjustifiably increases the burden on FCA US.  Fed. R. Civ. P. 45(d)(1).

FCA US's offer is more than enough to satisfy the parties' needs.  It would provide reasonably accessible purchasing and RFQ data, as well as cost and pricing information responsive to the parties' requests.  Conspicuously absent from the parties' renewed motion is a claim of need, let alone a substantial need, for anything more.  Consequently, the *only* open issue should be cost shifting.

## III.     STANDARD OF REVIEW

A party issuing a subpoena must take reasonable steps not to impose undue burden on recipients.  Fed. R. Civ. P. 45(d).  Indeed, production may be ordered under Rule 45 *only if* the issuing party "shows a **substantial need** for the … material that **cannot be otherwise met** without undue hardship."  Fed. R. Civ. P. 45(d)(3)(C)(i).  In making that determination, courts "balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it."  *Lowe v. Vadlamudi*, 2012 WL 3887177, at *2 (E.D. Mich. 2012).  In doing so, the Court should be mindful that the amended Rule 26 is intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."  *See* Fed. R. Civ. P. 26(b)(l), 2015 Advisory Committee Notes.

In assessing undue burden, non-party status is entitled to special consideration.  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("parties to a law suit must accept [discovery's] travails as a natural concomitant of modern civil litigation.  Non-parties have a different set of expectations").  That consideration extends equally to companies large and small.  *See U.S. v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 372 (9th Cir. 1982) ("Absent some compelling justification, even large nonparty corporations … should not be compelled to

subsidize the defense of other large corporations."). These considerations are magnified when competitively sensitive discovery is demanded. *Laethem Equip. Co. v. Deere and Co.*, 2007 WL 2873981, at *3-5 (E.D. Mich. 2007); Fed. R. Civ. P. 45(d)(3)(B)(i).[4]

## IV.   THE SUBPEONA SHOULD BE QUASHED BECAUSE THE PARTIES HAVE MADE NO SHOWING OF SUBSTANTIAL NEED

The parties make no mention – in their renewed motion or the FCA US-specific declaration of Sheldon Klein – of substantial need for any of their requests beyond what FCA US has offered. In contrast, FCA US submitted declarations in opposition to the Initial Motion that detailed the immense burdens that would be imposed by the subpoena. Exs. 5, 6. Mssrs. Lynch and Novak reiterated those burdens at deposition, and further detailed the burdens imposed by the parties' renewed motion in declarations filed with this opposition. Exs. 3, 4.

Rule 45 requires burden to be outweighed by need. Fed. R. Civ. P. 45(d)(2)(C). Denso's separate motion highlights the absence of substantial need. Denso moved to stay upstream OEM discovery in light of settlements and summary judgment motions in the *Wire Harness* case, making discovery there "entirely unnecessary." 12-cv-00101, ECF 323 at 4. Denso's premise is that any OEM discovery at this time would "waste judicial resources and impose potentially large expenses on the OEMs …." *Id.* at 4, 7. Indeed, Denso does not seek *any* OEM discovery at this point, conceding "the necessary scope of any such discovery is *highly uncertain* at this time because even party discovery in those cases has not started." *Id.* at 7. Denso further admits

---

[4] The Parties' citations to cases where a non-party's burden was light are readily distinguishable. *See* P. Br. 12-13. In *U.S. v. Blue Cross Blue Shield of Mich.*, 2012 WL 4513600, at *6 (E.D. Mich. 2012), the burden was only the time it would take to review documents for "responsiveness and privilege." In *Taylor v. Universal Auto Grp. I, Inc.*, 2015 WL 1810316, at *6 (S.D. Ohio 2015), the non-party offered just a "mere assertion" of burden. In *In re Subpoenas to Plains All Am. Pipeline, L.P.*, 2014 WL 204447, at *5 (S.D. Tex. 2014), the court found that "deposition preparation" time was not an undue burden. In *Alexander v. F.B.I.*, 194 F.R.D. 316, 330 (D.D.C. 2000), the court significantly cut back the number of custodians and search terms requested based on a declaration that full compliance "would cost approximately $1,051,482 and would take in excess of ten weeks to complete."

that, for many of the cases, the parties have not even conducted Rule 26(f) conferences or engaged in initial party discovery. *Id.* at 5. As the Court is well aware, Denso is no fringe defendant whose needs might be lighter than other defendants; the record discloses that Denso has frequently acted as *lead* defendant across these proceedings.[5]

Denso's motion shows that the parties lack substantial need for the information they requested. On that basis alone, the subpoena could be quashed. But FCA US is not interested in renewing this process over and over again as various parties come to the conclusion they might need some information. Instead, FCA US crafted an offer of production that would meet the parties' legitimate needs, and satisfy FCA US's obligations under the subpoena.[6]

## V. THE PARTIES' ADDITIONAL REQUESTS ARE UNNECESSARY AND UNDULY BURDENSOME

### A. There is No Impasse as to Purchasing Data

The parties accepted FCA US's offer of purchasing data. Exs. 8-9. Though listed as a "request at impasse," the parties identify no such dispute. They asked for a set of fields "to the extent available;" FCA US responded that it would be included "to the extent available." Klein

---

[5] Likewise, the direct purchaser plaintiffs ("DPPs") have *never* joined in the subpoena or these motions. If the discovery demanded was needed for class certification, liability, or damages, the DPPs surely would join these requests.

[6] In lieu of making a showing of need, the Parties try to make their point anecdotally by rehashing the same set of indirect purchaser cases they have described previously. P. Br. 13-15; Williams Decl. at ¶¶ 13, 21. The SSEs have already explained that the Parties' descriptions are inaccurate. ECF 1227 at 27 n.27. Indeed, in prior briefing discussing these very cases, the EPPs correctly observed that "while discovery was taken of certain intermediaries in the sales chains, *nearly all of those entities were parties* to the actions. In addition, the discovery of those intermediaries was generally on a *macro level – not individual transaction level*…" 12-cv-103, Dkt. 386 at 3. The SSEs' citations bear this out. ECF 1227 at 27 n.27. The parties' only new citation is to the *Lithium Ion Batteries* case, which is even more misleading. Williams Decl. at ¶ 21. The Parties contend that "[t]he court rejected [Bosch's burden and relevance] arguments and ordered production of the requested data." *Id.* In fact, the indirect purchasers there sought *more than ten years* of data from Bosch, which the Court cut back by 80%, to two years. *Compare id.* at Ex. B (parties' letter) at 5-6 ("the IPPs demand transaction-level data … from January 1, 2000 through May 31, 2011 (the "Relevant Period"), a period spanning more than a decade") *with* Ex. B (Order by Judge Ryu) ("Bosch shall produce requested purchase and sales data … for 1/1/2010 through 12/31/2011."). The Parties' attempt to use a decision some among their counsel *lost* should be disregarded.

8

Decl. ¶ 17.

**B.**     **The "Additional" RFQ Data the Parties Request is Not Reasonably Available – It Does Not Exist**

The parties also accepted FCA US's offer of RFQ data from its webRFQ system.  The only point of "impasse" is whether FCA US should be forced to search a second system called COMPASS for two additional years of data on top of the thirteen FCA US offered.

The data in FCA US's webRFQ system goes back to approximately 2003.  Mr. Lynch was asked, "Is there a predecessor system?"  Answer: "*No.*"  Ex. 2 at 70.  After the parties requested additional RFQ data in COMPASS, FCA US investigated its availability and informed the parties that RFQ information in COMPASS dates from 2004 and does not predate webRFQ. Ex. 10 at 2; Ex. 3 ¶ 2(b).

There is no basis for the parties to continue their insistence on RFQ data back to 2001. FCA US has offered to produce the most robust set of such RFQ reasonably available.  Ignoring their admitted obligation to "avoid imposing undue burden," Fed. R. Civ. P. 45(d)(1), the parties still declared impasse.

**C.**     **Internal Pre-RFQ Target Prices Are Irrelevant and Would Impose Significant Burden**

Neither the parties' renewed motion nor the accompanying Williams Declaration mention the "target prices" or the "pre-RFQ" sourcing recommendations that the parties seek from FCA US.  That is because such information is ancillary at best to the parties' claims and defenses. Indeed, they make no claim that this information is actually needed.  Klein Decl. ¶¶ 21-23.  Pre-RFQ target prices hold no relevance to the issues of the case: pass-through, or the existence of a price-fixing conspiracy.  Ex. 3 ¶¶ 11-12.

Target prices are unnecessary to the case.  It is the price at which the RFQ was awarded relative to the "competitive" price that matters, not an internally-set "target" price.  Such target

prices are used "for planning purposes before the RFQ process is started." Ex. 3 ¶ 11. They are short-lived. Once the actual purchase price is set through the RFQ process, target prices are replaced. *Id.* Thus, internal target prices would not shed any light on the prices FCA US actually paid or whether those prices were passed through to vehicle sales.

The parties do not deny that FCA US has offered to produce information that actually *is* relevant to the issues of pass-through and the existence of a conspiracy. Despite this, and recognizing the burden associated with searching for and producing target prices, the parties press their request.

The burden is significant. The parties request pre-RFQ target prices by part, which, as described in Mr. Lynch's initial declaration and at deposition, would require FCA US to undergo a mapping process to match the parties' part definitions to the classifications and descriptions used by FCA US. Ex. 3 ¶¶ 9-10; Ex. 2 at 139-40; Ex. 5 ¶¶ 14-16. Because of the scope of the subpoena – 59 component categories potentially covering thousands of parts – the necessary task of attempting to match the subpoena definition for just one component to FCA US's records would require several weeks of one employees' dedicated time. *Id.*

The parties continue to offer the purported solution of a phased production. Klein Decl. ¶ 21. But the offer only serves the Parties' interests in meeting their deadlines in their lead cases; it does not reduce FCA US's burden. Rather, a phased production would *increase* the burden by requiring multiple searches. Ex. 3 ¶ 10. The parties are well aware of this, as FCA US has informed them of that fact since negotiations began.

### D.   Internal, Pre-RFQ Sourcing Recommendations Are Irrelevant and Would Impose Significant Burden on FCA US

Like target prices, pre-RFQ sourcing recommendations are not mentioned in the parties' renewed motion or the accompanying Williams Declaration. That is because they have no

relevance to the existence of price fixing or to pass-through.  They would also be extremely burdensome to collect.  As Mr. Lynch testified, locating sourcing recommendations before 2013 is "part of [the] problem" because it would involve a massive custodian search over the past couple decades.  Ex. 2 at 80 ("that's part of our problem … a lot of people did things a lot differently … there was not consistency across those commodities …"); Ex. 3 ¶ 13.[7]

The parties do not point to any substantial need that could overcome such undue burden. Internal evaluations are extremely sensitive, and they are irrelevant.  "[S]ourcing recommendation documents" would reflect "reject[ion of] technical proposal[s]" or "quality problems."  Ex. 2 at 77-79.  By definition, these pre-RFQ recommendations are unrelated to the one thing these cases are about: price.  Ex. 3 ¶ 12.

What matters is what happens *after* an RFQ is issued.  Such *post*-RFQ recommendations would be included in the RFQ data FCA US has offered to produce.  Mr. Lynch explained: "[A] lot of that information that's in those sourcing recommendations is in webRFQ, so we can at least go back to webRFQ, and, as I mentioned before, you know, the buyers can enter in free text into webRFQ as well in terms of what supplier they're going to recommend and why."  Ex. 2 at 80.  The parties cannot demonstrate any legitimate need for an additional, burdensome search for sourcing recommendations.

### E.     The Parties Have a Sufficient Sample of Supplier Agreements, and Searching for More Imposes Undue Burden

The parties request all of FCA US's agreements with auto parts suppliers without regard to relevance, substantial need, or burden.  Klein Decl. ¶ 24.  The request would require a manual

---

[7] The parties claim Mr. Lynch can nonetheless locate sourcing recommendations, but that claim is conspicuously without citation.

search and review of systems like GEN-008 in order to locate documents the parties either already have or do not need.  Ex. 3 ¶ 14.

The parties concede they have agreements produced by defendants; but plaintiffs just do not trust that they have "all" such agreements.  Klein Decl. ¶ 24.  That is not a basis to impose discovery burdens on a non-party.  The parties' willingness to accept a "sample set" belies any claimed need for "all" supplier agreements, or even non-defendant supplier agreements.  The parties already have an adequate sample from party discovery, and there is no need to impose additional burden on a non-party simply to obtain more.

The parties argue FCA US's offer would not reflect "all relevant terms," but they do not contest that any payment or pricing terms – again, the terms of relevance – would be reflected in the purchasing and RFQ data FCA US has offered to produce.  Ex. 3 ¶ 8.  The parties do not identify what other "relevant terms" they could be missing given FCA US's offer of production and the fact that they already have agreements produced by defendants.

### F.    A Search for Additional Cost Studies, if Any Exist, Would Impose Undue Burden

There should be no dispute as to FCA US's offer of production regarding cost data.  The parties request "all reasonably available Product Cost Studies."  Klein Decl. ¶ 25.  That is what FCA US has offered.  The fact that the reasonably available cost studies do not cover the entire alleged class periods does not create impasse – it means FCA US has offered to produce what is reasonably available.

The parties' suggestion to "only" conduct a targeted search within FCA US's senior managers' files is without basis.  At deposition, Mr. Novak identified the FCA employee, Mr. Haas, with responsibility for product cost studies.  Ex. 1 at 113-14.  But he did *not* testify that Mr. Haas's files would contain any more product cost studies than FCA US has offered to

produce.  *Id.*; *see also* Ex. 4 ¶ 8.  To the contrary, Mr. Novak's testimony was that Mr. Haas has access to the system where product cost studies are housed – the system from which FCA US has offered to produce cost studies.  *Id.*

To search for additional information that may or may not exist would entail an incredibly burdensome and time consuming custodial search.  Ex. 4 ¶ 8.  The parties have identified no substantial need to overcome that burden.

### G.  VIN-Level Cost Data is Unnecessary and Duplicative of What FCA US Has Offered to Produce

The parties also seek VIN-level cost data, but they do not claim that FCA US's offer of cost data is insufficient.  Indeed, VIN-level cost data would be largely duplicative of the cost information FCA US has offered.  Ex. 4 ¶ 9.

The parties' only support for this request is that they are "seeking input-by-input data." Klein Decl. ¶ 26.  That is not a basis to impose discovery burdens on a non-party, particularly when those burdens implicate some of the most sensitive information in FCA US's files.  Indeed, the law and economics are to the contrary.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 555090, at *4 (N.D. Cal. 2012) ("[p]laintiffs need not identify the overcharge on each and every panel sold to direct purchasers, and they need not trace that specific overcharge through the manufacturing and retail chains to the ultimate purchaser."); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 298-99 (D.D.C. 2000) (observing that "no court has ever allowed production of individualized downstream data"); Dr. McDonald Decl. (ECF 1227-20) at ¶¶ 20-21 (explaining that an economic analysis of pass-through just requires estimating the relationship between price and *gross* cost, not input-by-input).

The parties do not address the law, or the economics.  They have shown no legitimate need for FCA US to search for, collect, review, and produce additional cost data.  Indeed, the

"input-by-input" data they request is only available for a few years.  Ex. 4 ¶ 7.  Furthermore, compiling the kinds of reports Mr. Novak described at deposition requires weeks of effort for just a handful of VINs.  *See* Ex. 1 at 139; Ex. 4 ¶ 10.  The parties have not identified any substantial need that could justify imposing the burden of producing this kind of data, which is extremely sensitive and does not begin to cover the alleged class periods.

### H.    Pre-MY2007 Downstream Pricing Information Does Not Exist

There should be no impasse regarding FCA US's offer to produce MSRP and invoice prices from model year 2007.  The parties request more, though they know from deposing Mr. Novak that FCA US's offer encompasses MSRP and invoice information as far back as maintained.  Ex. 1 at 45 ("Q. Is there any other data or system I can use to find out the MSRP and the wholesale price prior to the seven years? Prior to 2009? A. I do not believe so."); *see also* Ex. 4 ¶ 11.  There is no impasse here.

### I.    Transactional Vehicle Sales Data Is Not Reasonably Accessible

FCA US has offered to produce everything the parties could legitimately need to conduct a pass-through analysis: cost and price information at the model and trim levels.  The parties do not claim their experts are unable to use this information; yet they seek more.

At deposition, Mr. Novak answered all the parties' questions about the availability of transaction-level data of vehicle sales to dealers.  The answer, as the parties concede, is that such data exists but is not accessible in a reportable format.  Ex. 1 at 33, 145 (transactional sales data is maintained in CVI, "an old mainframe system" with no "reporting functionality"); Ex. 4 ¶ 12. That is simply the nature of FCA US's systems.  The burden of even attempting to make CVI do something it was not designed to do – recreate historical invoices – would be immense.  To recreate seven years of invoices would require over 500 hours of employee time.  Ex. 3 ¶ 4.

The parties fault FCA US for "fail[ing] to provide further information on whether an alternative system exists." Klein Decl. ¶ 29. There is nothing to fault. Mr. Novak testified that "CVI is the only place that would hold" VIN-specific sales data. Ex. 1 at 44-45. FCA US provided a knowledgeable deponent who personally spent 20 hours preparing, not including the work Mr. Novak's staff put in to gather information about the various systems that could possibly be implicated by the parties' subpoena. *Id.* at 23. The parties do not fault Mr. Novak's preparation or identify any question he did not adequately answer.

It is not FCA US's fault that the parties may not be happy with the reality that transactional sales data is not accessible, and it is certainly no basis for a motion to compel.

## J.     Vehicles Received from FCA Italy

FCA US has offered MSRP and invoice information for all models and trim levels for as far back as maintained. It has offered to produce model and trim-level cost data for as far back as maintained. Such a production would cover millions of vehicles. *See* Ex. 4 ¶¶ 2, 11.

Yet in seeking impasse rather than agreement, the parties continue to seek information relating to 150,000 vehicles from FCA Italy. They make no representation of need for this information. Not only would the information be largely duplicative of what FCA US has offered and impose additional burdens (Ex. 4 ¶ 15), such a small subset of data would have no impact on the regressions the parties' experts would run with the data FCA US has already offered. *See* Dr. McDonald Decl. at ¶¶ 12-14. Damages models do not need to be perfect. *See, e.g.*, *Falise v. Am. Tobacco Co.*, 258 F. Supp. 2d 63, 67 (E.D.N.Y. 2000) ("[m]odels are not the real world; rather, such models are a reasoned and educated attempt to describe reality … The process is not like a Pythagorean demonstration of a mathematical truth that can be revealed indisputably"); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2013 WL 5428139, at *9 ("it is simply wrong to say that an expert's analysis is inadmissible unless it analyzes every sale at the

15

transaction level").  Perceived gaps in data only matter if they give rise to "seriously biased results."  *In re Mushroom Direct Purchaser Antitrust Litig.*, 2015 WL 5767415, at \*12-14 (E.D. Pa. 2015).  There is no evidence, or claim, that this is the case here, particularly in light of FCA US's offer of production.

## VI.    PLAINTIFFS' REQUEST NO. 31 CALLS FOR UNNECESSARY AND PRIVILEGED INFORMATION.

Request 31 deals with two categories of information:  internal settlement deliberations by FCA US, and external communications with the defendants and others.  Neither is discoverable.

### A.    Internal Settlement Deliberation Documents

The plaintiffs make no effort to conceal their desire to discover the "internal communications within each one of the SSEs regarding the [settlement] discussion SSEs had with Defendants."  ECF 1497-2 at 13.  They cite no case entitling them to such clearly privileged information.  Since attorneys would be involved in any such communications, this information would invariably be protected by the attorney-client privilege.  These communications, and associated analyses, are also non-discoverable core work product.  *See* Fed. R. Civ. P. 26(b)(3)(A) ("a party may not discover documents … prepared in anticipation of litigation.").

Moreover, even if those privileges did not apply, the Sixth Circuit recognizes a distinct "settlement privilege," even in the context of external communications.  *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 982-83 (6th Cir. 2003).  This "settlement privilege is … necessary" to avoid "undesirable results" and to further the "strong public interest

in favor of secrecy of matters discussed by parties during settlement negotiations." *Id.*[8]

Seeking to side-step the core protections applicable to *internal* deliberations, Plaintiffs address only the *Goodyear* settlement privilege applicable to *external* communications. But neither of their attempts to distinguish *Goodyear* is persuasive. *First*, they say that *Goodyear* only applies if the Defendants are liars, claiming *Goodyear* turned on a finding that "the statements at issue were likely to be untrue." ECF 1497-2 at 13. *Goodyear* turned on no such thing. Thus, the space Plaintiffs devote to professing the honesty of Defendants they otherwise accuse of secret bid-rigging has no bearing on the privilege question. *Id*. *Second*, they argue that the settlement privilege does not apply because FCA US has not yet filed a case. *Id*. But that is irrelevant to *internal* communications, as Rule 26(b)(3) expressly protects documents prepared in "anticipation of litigation," and the attorney-client privilege applies regardless. Fed R. Civ. P. 26(b)(3). As to external communications, the fact that FCA US is a putative class member who will soon need to make opt-out decisions is sufficient to trigger the *Goodyear* protections.[9]

### B.   External Settlement Communication Documents

Request 31 also seeks two categories of external communications. *First*, it seeks documents the Defendants provided to FCA US in an effort to settle. Such documents are

---

[8] The Plaintiffs suggest that because the Sixth Circuit stated that privileges "should be judged on a case-by-case basis and weighed against the public interest" that district courts should *re-weigh* a privilege against the public interest in every case presented. C.P. Br. 13 (quoting *Goodyear*). That is wrong. The Sixth Circuit has done that weighing and its holding applies across-the-board. *Goodyear*, 332 F.3d at 980 ("we believe *a* settlement privilege serves a sufficiently important public interest, and therefore should be recognized"). As another court explained, "[t]he quoted language from *Goodyear Tire* is referring to the recognition of *new* privileges, not the construction of *existing* ones." *Richmond Health Facilities-Madison, LP v. Clouse*, 473 S.W.3d 79, 90 (Ky. 2015).

[9] Plaintiffs misplace reliance on *State v. Little River Band of Ottawa Indians*, 2007 WL 851282, at *2 (W.D. Mich. 2007). *First*, that case did not involve internal deliberations. *Second*, the communications did not relate to absent class members' participation in putative class actions that had already been filed. Thus, in the unlikely event that the Sixth Circuit were to dispense with the well-settled "anticipation of litigation" standard for purposes of "settlement privilege," the *Little River* standard would be satisfied here. Finally, that case concerned a letter sent to the Governor of Michigan, with no indicia of settlement negotiations or litigation attached to it; here, the request specifically seeks settlement materials involving actual absent class members (and potential opt-outs) in a *pending* case.

covered by the *Goodyear* settlement privilege. But even if they were not, the "Defendants in this litigation have agreed to produce documents in response" to an identical request. ECF 1497-2 at 11-12. Thus, if Plaintiffs want to know "how the Defendants explained the conspiracy to their major customers," they only need to review those documents. *Id*. Plaintiffs' only argument for requiring production of the same from FCA US is that there may be documents the Defendants "did not retain." *Id*. But unfounded speculation of spoliation is not a basis for duplicative discovery from the SSEs.

*Second*, Request 31 seeks communications about the case between the SSEs and non-Defendant suppliers. Such information is not relevant, if it even exists. Gossip about this case has no bearing on the truth or falsity of any allegation. *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1345 (D. Colo. 2015) (non-party communications about, but "not linked" to, the case "constitute pure fishing expeditions"); *Goodyear*, 332 F.3d at 982-83 (settlement "negotiation communications" are legally "irrelevant").

## VII. THE COURT SHOULD ORDER THE PARTIES TO REIMBURSE FCA US FOR ITS COSTS AND ATTORNEYS' FEES INCURRED IN RESPONDING TO THE SUBPOENA

The costs of compliance, including attorneys' fees, should be shifted to the Parties. Rule 45 requires serving parties "to avoid imposing undue … expense," and directs courts "to protect" such entities "from significant expense resulting from the inspection, copying, testing, or sampling commanded." Fed. R. Civ. P. 45(d) (requiring a party serving a burdensome subpoena to "ensure[] that the subpoenaed person will be reasonably compensated").

As the Court noted at the June 23rd hearing, "the party asking for the information is the one who pays." June 23, 2016 Hrg. Tr. at 103 (ECF 1405). To be sure, the parties keep saying that they are "willing[] to discuss appropriate cost-sharing … once there has been an opportunity to determine what responsive information exists, and what burdens may be associated with

production."   Williams Decl. ¶ 17.   The parties, through depositions, have now had that

opportunity.   It is time to engage in a meaningful discussion of cost and fee shifting, and it

should be part of an overall agreement regarding the subpoena.   The parties appear to agree: "[A

cost estimate] is necessary for the Parties' assessment of whether … to pursue certain discovery

in the first instance."   Klein Decl. ¶ 5.   Though FCA US has provided an estimate of the cost in

terms of employee time (Exs. 3-4, 11), the parties have not responded.   Klein Decl. ¶ 14.

Cost shifting should include attorneys' fees, as the true cost of responding to a subpoena,

particularly one of this magnitude, necessarily includes legal fees.   Courts around the country

recognize this reality.   *See, e.g.*, *In re Am. Nurses Assn.*, 2016 WL 1381352, at *2 (4th Cir. 2016)

("[W]e conclude that attorney's fees incurred by the non-party that are necessary to a discovery

proceeding under Rule 45 are expenses that may be shifted to the discovery-seeking party.");

*U.S. v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) (treating non-party legal

fees as reimbursable); *Pac. Gas & Elec. Co. v. Lynch*, 2002 WL 32812098, at *3 (N.D. Cal.

2002) ("legal work done to facilitate compliance may also be considered a cost of compliance

reimbursable under FRCP 45(c)(2)(B)"); *Kisser v. Coal. for Religious Freedom*, 1995 WL

590169 (E.D. Pa. 1995) ("In complying with the subpoena, it is understandable that [the non-

party] would seek the assistance of counsel [and] to disallow reimbursement would frustrate the

policy of Rule 45 – protecting non-parties …."); *In re Am. Hous. Found.*, 2013 WL 2422706, at

*2 (N.D. Tex. 2013) ("it is apparent that reimbursable legal fees are simply a component of the

expenses incurred by the non-party in complying with the dictates of the subpoena"); *see also*

*Williams v. City of Dallas*, 178 F.R.D. 103 (N.D. Tex. 1998) (ordering reimbursement of legal

fees under Rule 45(d)(2)(B)); *In re Law Firms of McCourts & McGrigor Donald*, 2001 WL

345233, at *3 (S.D.N.Y. 2001) (same); *W. Benefit Solutions, LLC v. Gustin*, 2012 WL 4417190, at *5 (D. Idaho 2012) (same).

Particularly where, as here, the non-parties' legal fees benefit the requesting parties, they are a reimbursable cost of compliance. *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 496 (E.D. Pa. 2005) ("especially where the work benefits the requesting party, [legal fees] have been considered a cost of compliance reimbursable"); *Georgia-Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187 (S.D. Ohio 2010) (same); *In re First Am. Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998), (same); *see also Kean v. VanDyken*, 2006 WL 374501, at *5-6 (W.D. Mich., 2006) (citing the preceding authorities with approval).

## VIII.   CONCLUSION

For the foregoing reasons, the Parties' motions to compel should be denied.

Dated:  November 22, 2016                          Respectfully submitted:

/s *Cheryl A. Bush*                                /s *Colin R. Kass*
Cheryl A. Bush (P37031)                            Colin R. Kass (admission pending)
Susan McKeever (P73533)                            Scott M. Abeles (admission pending)
BUSH SEYFERTH & PAIGE PLLC                          PROSKAUER ROSE LLP
3001 W. Big Beaver Road, Suite 600                 1001 Pennsylvania Ave., N.W.
Troy, MI 48084                                     Washington, D.C.  20004
(248) 822-7800                                     (202) 416.6800
bush@bsplaw.com                                    ckass@proskauer.com
                                                   sabeles@proskauer.com

                                                   David A. Munkittrick
                                                   PROSKAUER ROSE LLP
                                                   11 Times Square
                                                   New York, New York 10036
                                                   (212) 969.3000
                                                   dmunkittrick@proskauer.com

*Attorneys for FCA US LLC*

20

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 22, 2016.  Any other counsel of record will be served by first class mail.

By:  /s/ Cheryl A. Bush_____