# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
In Re: AUTOMOTIVE PARTS                          :
ANTITRUST LITIGATION                             :
_____           :
                                                 :
ALL PARTS                                        :   Case No.: 12-MD-02311
_____           :   Honorable Marianne O. Battani
                                                 :
THIS RELATES TO: ALL CASES                       :
_____           :
                                                 :
                                                 :
                                                 :

**DECLARATION OF KELLY LYNCH IN SUPPORT OF FCA US LLC's OPPOSITION TO THE PARTIES' RENEWED MOTION TO COMPEL**

I, Kelly Lynch, hereby declare under penalty of perjury as follows:

1. I am employed as Purchasing Director at FCA US LLC, formerly known as Chrysler Group LLC ("FCA"). I have been employed by FCA, or its predecessor or related entities for approximately 28 years. In my current role, I am responsible for purchasing and supplier quality processes and methods. Unless otherwise noted, the facts set forth herein are based on my personal knowledge.

2. I provided deposition testimony in this matter on September 20, 2016 regarding the Parties' requests for upstream information relating to the sale and pricing of vehicles. I understand that following the deposition, FCA US made the following offer of production:

    a. Reasonably available active purchasing data, from approximately 2001 to the present, from the PentaSAP and COMPASS systems for the suppliers, searched by name, listed in Attachment C to the subpoena;

    b. RFQ data reasonably available in the webRFQ system, from approximately 2003 to the present, for the suppliers, searched by name, listed in Attachment C to the subpoena

c. Reasonably available Product Cost Studies, from approximately model year 2011 to December 31, 2014;

d. Reasonably available Code Guides containing MSRP and invoice price at the model and trim levels, from approximately model year 2007 to December 31, 2014; and

e. Reasonably available Product Committee PowerPoint presentations, from approximately September 2009 to December 31, 2014.

3. I have reviewed the Parties' Renewed Motion to Compel Discovery from Non-Party Original Equipment Manufacturers and the accompanying Declaration of Sheldon Klein. The parties' requests fall into two broad categories: upstream information relating to the purchase of components and downstream information relating to the sale of vehicles. I discuss upstream information here.

4. I estimate that the upstream portions of FCA US's offer of production (items a and b above) would require over 550 hours of employee time to (i) develop the search parameters to pull data from PentaSAP, COMPASS, and webRFQ; (ii) conduct the data pulls; and (iii) review the resulting data for accuracy before production. This is a significant loss of time that would otherwise be used towards the day-to-day business operations of FCA US. I estimate that the dollar value of the lost employee time would exceed $80,000. *See* Dep. Tr. at 143-44.

5. I further note that, as I described in my previous declaration and at deposition, the parties already have most if not all of this purchasing and RFQ data available to them. Feb. 17th Decl. ¶¶ 19, 22-25. Defendants would have all the purchasing information for any model of vehicle for which they are a supplier, and they would have records of every RFQ in which they participated.

6. I understand that despite FCA US's substantial offer of production, the parties continue to seek additional upstream information: (i) two years of RFQ data from 2001 and 2002; (ii) pre-RFQ target prices; (iii) pre-RFQ sourcing recommendations; and (iv) FCA US's supplier agreements.

7. Because the parties did not ask about the accessibility or burden of these additional requests at deposition, I submit this declaration to provide that information. The additional information the parties continue seek either does not exist, is not accessible, or would impose substantial burdens to search for and collect.

**2001 and 2002 RFQ Data**

8. At my deposition I testified that FCA US's COMPASS system contains upstream purchase order data from approximately 2001. Dep. Tr. at 26-27. I also noted that COMPASS also contains some RFQ data, however it is not nearly as comprehensive as the RFQ data FCA maintains in webRFQ, which I understand FCA US has offered to produce. webRFQ data dates back to approximately 2003. RFQ data in COMPASS, however, extends back only to 2004. Searching COMPASS for RFQ data, consequently, would not provide any additional information and would only impose unnecessary burden on FCA US.

**Pre-RFQ Target Prices**

9. As I described in detail in my initial Declaration and at Deposition, the parties' requests for data by component as defined in the subpoena would require hundreds of hours of effort to match the parties' definitions to the part descriptions and classifications that FCA US uses. Feb. 17th Decl. ¶¶ 14-16; Dep. Tr. at 139-40. I estimate that completing that process for just one commodity in the subpoena would require several weeks of one employee's dedicated time.

10. I understand the parties have offered to accept production for two parts first followed by subsequent productions for the remaining parts. This would not reduce any of the burden imposed because it would not avoid the necessary burden of matching the parties' definitions to our internal classifications and systems. Rather, such a process would increase the burden by requiring multiple separate searches.

11. Still, I understand the parties continue to request target price information by component, which would impose the burdens I have described. While imposing significant burdens, such information is unlikely to be relevant to the question of whether the price of a particular component was impacted by an alleged price-fixing conspiracy. Internal target prices are general pricing parameters FCA uses for planning purposes before the RFQ process is started. They are replaced as soon as an actual purchase price is set. If the competitive price for a component is above or below a target price, it is that price, not the target price, that will govern how much FCA pays for the component. Moreover, the target price is often influenced by historical prices for the same or similar products. Thus, any price fixing conspiracy that affects the price of a component is also likely to affect the target price. Target prices accordingly do not have any bearing on either the existence of a conspiracy or the effect of such a conspiracy on prices.

**Pre-RFQ Sourcing Recommendations**

12. As I described at deposition, sourcing recommendations contain FCA US's evaluation of suppliers on technical or quality issues that have nothing to do with price. These are incredibly sensitive documents, and the recommendations would not reflect or be influenced by an alleged price-fixing conspiracy. They accordingly do not touch on the existence of a

4

conspiracy or its effect on prices. I understand that FCA US has offered to produce data from webRFQ, which would include any price-based recommendations.

13. A search for sourcing recommendations would also be incredibly burdensome because, given the time frame of the parties' request, it would require a custodial search. To conduct such a search would first require identifying the employees involved over the past couple decades. Given the sheer number of parts at issue, and the length of time covered by the case, this would involve weeks' worth of effort, including interviews of employees and coordination with the HR department. Importantly, however, even this effort is unlikely to be fruitful given the high level of turnover both at FCA US generally and in the specific positions at issue. Even if a manageable universe of custodians could be identified, it is unrealistic to think that such information would continue to be maintained long after an employee left FCA or that position.

**Supplier Agreements**

14. I understand the parties are requesting a sample of FCA US's non-standard supplier agreements. By definition, the defendant suppliers would have this information, which would provide the parties with a sufficient sample of any such agreements. Additionally, the request would impose substantial burdens on FCA US. The request would require a manual search, supplier by supplier, name by name, and contract by contract through FCA US's database. Given the number of parts and suppliers referenced in the subpoena, this would be a monumental task.

15. To the extent the defendants do not have information relating to certain agreements, any relevant pricing terms will exist in the transactional data that FCA US has offered to produce. In the event that a non-defendant supplier won a bid, the terms of purchase

5

and prices charged would similarly be reflected in the transactional data that FCA has offered to produce.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21 day of Nov., 2016 at Auburn Hills, MI.

Kelly Lynch