# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
In Re: AUTOMOTIVE PARTS :
ANTITRUST LITIGATION :
_____ :
:
ALL PARTS : Case No.: 12-MD-02311
_____ : Honorable Marianne O. Battani
:
THIS RELATES TO: ALL CASES :
_____ :
:
:
:

**DECLARATION OF MICHAEL NOVAK IN SUPPORT OF FCA US LLC's**
**OPPOSITION TO THE PARTIES' RENEWED MOTION TO COMPEL**

I, Michael Novak, hereby declare under penalty of perjury as follows:

1. I am employed as Vice President, Controlling, at FCA US LLC, formerly known as Chrysler Group LLC ("FCA US"). I have been employed by FCA US for approximately 33 years. In my current role, I am responsible for financial controlling and financial reporting activities for FCA US and the NAFTA region for FCA Group. Unless otherwise noted, the facts set forth herein are based on my personal knowledge.

2. I provided deposition testimony in this matter on August 29, 2016 regarding the parties' requests for downstream information relating to the sale and pricing of vehicles. I understand that following the deposition, FCA US made the following offer of production:

    a. Reasonably available active purchasing data, from approximately 2001 to the present, from the PentaSAP and COMPASS systems for the suppliers, searched by name, listed in Attachment C to the subpoena;

    b. RFQ data reasonably available in the webRFQ system, from approximately 2003 to the present, for the suppliers, searched by name, listed in Attachment C to the subpoena;

       c. Reasonably available Product Cost Studies, from approximately model year 2011 to December 31, 2014;

       d. Reasonably available Code Guides containing MSRP and invoice price at the model and trim levels, from approximately model year 2007 to December 31, 2014; and

       e. Reasonably available Product Committee PowerPoint presentations, from approximately September 2009 to December 31, 2014.

    3.    I have reviewed the parties' Renewed Motion to Compel Discovery from Non-Party Original Equipment Manufacturers and the accompanying Declaration of Sheldon Klein. The requests fall into two broad categories: upstream information relating to the purchase of components and downstream information relating to the sale of vehicles. I discuss downstream information here.

    4.    I estimate that the downstream portions of FCA US's offer of production (items c. through e. above) would require approximately 200 hours of employee time to (i) develop the search parameters; (ii) collect the data and documents; and (iii) review the collection for accuracy before production. This is a significant loss of time that would otherwise be used towards the day-to-day business operations of FCA US. I estimate that the dollar value of the lost employee time would exceed $10,000.

    5.    I understand that despite FCA US's substantial offer of production, the parties continue to seek additional downstream information: (i) Cost Studies earlier than Model Year 2011; (ii) additional cost data from the VAMR system; (iii) MSRP and invoice price information earlier than 2007; (iv) transaction-level sales data; and (v) information relating to the approximately 150,000 vehicles FCA US has purchased from FCA Italy over the past three years.

6. Because the parties did not ask about the accessibility or burden of these additional requests at deposition, I submit this declaration to provide that information. The additional information that the parties continue to seek does not exist, is not accessible, or would impose substantial burdens to search for and collect.

**Pre-MY2011 Cost Studies**

7. As I testified at my deposition, cost studies reflect an annual snapshot of parts and associated purchase order cost data for FCA US's vehicle models and internally manufactured components like engines and transmissions. Dep. Tr. at 111-13. From the Cost Studies, the parties would have the standard cost data at the input and purchase order level for each model year of FCA US vehicles. They are maintained in the PCS system back to model year 2011.

8. The parties request additional Cost Studies outside of the PCS system. FCA US does not maintain older Cost Studies than exist in PCS. If older Cost Studies even existed, it would require an incredibly burdensome custodial search. I mentioned Mr. Haas at my deposition, who currently is responsible for coordinating the creation of Cost Studies today. He has held that position for approximately three years and is unlikely to have any Cost Studies in his files that predate the PCS system. Identifying and interviewing other potentially relevant employees who might have a Cost Study in their files from the past couple of decades would be incredibly burdensome and would substantially interfere with our business duties and operations.

**Cost Information in VAMR**

9. The parties also ask for cost data from FCA US's VAMR system. This additional cost data would not add any value for the parties and only increases the burden on FCA US. First, VAMR is a relatively new system, and cost data is only available there for, at most, the past three years. Second, the only difference between the data in VAMR and in a Cost Study is that a Cost Study holds component and purchase order cost information for a particular model,

3

while VAMR holds the same cost information for the VINs in each model group.  Thus, the additional data would cover a small portion of the time period covered by the Cost Studies, and would be largely duplicative.

10. Furthermore, any search of VAMR increases the burden imposed on FCA US.  If the parties are requesting, for each of the millions of VINs in VAMR, the type of reporting I referenced at deposition regarding changes in cost over time, the task would take years because of the multiple data points that must be cross-referenced and compiled.  The creation of such reports for just 15 VINs would require a multi-week effort.

**Pre-MY2007 MSRP and Invoice Price Information**

11. I understand that FCA US has offered to produce MSRP and invoice price information going back to model year 2007.  I also understand the parties continue to ask for earlier MSRP and invoice information.  As I stated at deposition, FCA US does not maintain such dated MSRP and invoice information.  Dep. Tr. at 45.  Information concerning both MSRP and invoice price also would be in the possession of the dealer plaintiffs in the case.

**Transactional Sales Data**

12. I understand the parties continue to request transactional sales data at the VIN level.  As I described at my deposition, FCA's Central Vehicle Invoicing ("CVI") system is the place where such sales data would reside, but it is a 25-year-old old mainframe system that does not have reporting capabilities.  Dep. Tr. at 32-33, 145.  There are two problems with attempting to recreate historical transactional sales data from CVI: 1) accuracy and accessibility; and 2) the burden it would impose.

13. FCA US has never pulled reports of historical sales data out of CVI.  That is because attempting to re-run an invoice from a year ago would pull today's pricing.  Even if it

4

were possible to recreate invoices for vehicles sold over the past couple of decades, the process would be incredibly time-consuming. Because every invoice needs to be re-run individually, I estimate that seven years of invoices would require over 500 hours of employee time. To reiterate, that 500 hours would not result in the actual invoices that were issued over the past seven years because the system pulls in the current price for a particular vehicle configuration rather than historical prices.

14. By contrast, FCA US's offer to produce approximately eight years of MSRP and invoice price information would impose a tenth of that burden – approximately 50 hours. And, as I have explained previously, this MSRP and invoice information would provide the parties with sufficient information because all dealers are charged the same invoice price. There is no reason that historical invoices – to the extent they are relevant – cannot be obtained from the dealer plaintiffs in the case.

**Vehicles From FCA Italy**

15. FCA US sells about two million vehicles annually. FCA US has offered to produce MSRP and invoice information that applies to the vehicles FCA US sold over the past eight years. Still, I understand that the parties are requesting MSRP and transfer prices for less than one percent of those vehicles – the vehicles that FCA US has received from FCA Italy and sells in the United States (just four models over the past three years). FCA US's offer to produce MSRP information in code guides would provide the parties with the MSRP as to those models. Accordingly, searching for these 150,000 VINs would only add to the time and expense of FCA US's offer of production detailed above, with no added benefit to the parties.

5

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of November, 2016 at Auburn Hills, MI.

*[Signature]*