# EXHIBIT 7



44 MONTGOMERY STREET - SUITE 3400
SAN FRANCISCO, CALIFORNIA 94104
(415) 693-0700 MAIN    (415) 693-0770 FAX

QIANWEI FU
qfu@zelle.com
(415) 633-1906

October 13, 2016

<u>**Via E-Mail**</u>

Patrick G. Seyferth, Esq.
Bush Seyferth & Paige PLLC
3001 W. Big Beaver Rd., Suite 600
Troy, MI 48084

Colin Kass, Esq.
Proskauer Rose LLP
1001 Pennsylvania Ave., N.W., Suite 600 South
Washington, DC 20004-2533

RE:     *In Re: Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM

Dear Patrick and Colin:

In the interest of resolving the pending motion to compel (ECF No. 1185), we write to further meet and confer on the Parties' subpoena requests to FCA US LLC ("FCA"). This letter sets forth the Parties' renewed proposal for production in light of the information we learned from FCA's 30(b)(6) depositions. Notwithstanding these renewed requests, the Parties reserve their discovery rights to all relevant information that remains subject to the motion to compel.

As stated in Heather Novison's October 3, 2016 email, the Parties intend to make an earnest effort to reach a resolution with each OEM group so that a renewed motion is not required. The Special Master has accepted the Parties' proposal to complete the meet and confer process and identify any outstanding items by October 31. We would like to schedule a meet and confer call to discuss these requests on Monday, October 17.

**I.    General Notes**

Unless otherwise specified, all documents and data produced by FCA should meet the criteria and/or comply with the instructions set forth in the subpoena. We seek discovery relevant to each Component or Assembly for the class periods alleged in the relevant operative complaints, and two years prior for data only, up through December 31, 2014 for all documents,

Patrick Seyferth
Colin Kass
October 13, 2016
Page 2

and up through the date of extraction for data.[1]  To the extent that documents or data do not exist for the entire relevant time period, we seek all years reasonably available.  The data should be produced at the transactional level or lowest level of aggregation available in FCA's data systems.

## II.    Purchase and Procurement of Auto Parts

As an initial matter, we remain open to discussing with FCA the possibility of prioritizing the production of the requested purchase and procurement data for the lead three Components (Wire Harness Systems, Anti-Vibration Rubber Parts, and Bearings), in the hope that such initial production will expedite the process, lessen the burden on FCA, and enlighten the Parties' decision on further tailoring their requests.

- Purchase data reflecting FCA's purchases of Components or Assemblies from defendant and non-defendant suppliers for installation in new Vehicles sold or leased in the U.S.

  Mr. Lynch testified that PentaSAP and COMPASS are the two purchase data systems that FCA maintains.  According to Mr. Lynch, live purchase information goes back to 2001 and is "fairly easily accessible."  Please describe in what format and media the archived data before 2001 exist, how FCA would access the archived data, and any burdens or costs associated with retrieval and production of the archived data.

- Data, or documents in the absence of data, reflecting APRs or other price adjustments in isolation from other price elements for all Components or Assemblies, as well as communications/negotiations concerning such adjustments.

  Mr. Lynch testified that price adjustments are reflected in PentaSAP and COMPASS either as new purchase orders or amended purchase orders.  We understand that price adjustments (the so-called "CIP") are separately recorded in FAM, which system also generates an electronic notification to the buyer in advance regarding the price adjustment.  We would like all CIP records in FAM for all Components and Assemblies, to the extent the price adjustment information is not duplicative of the purchase data to be produced from PentaSAP and COMPASS.  Please also describe in what format and media the communications and negotiations concerning price adjustments exist.

- RFQs, source packages, External Balanced Scorecards (EBSC), sourcing recommendations, as well as communications concerning RFQ awards such as letters of intent, letters of agreement and other forms of award notifications.

---

[1] Please note that the earliest relevant period (AVRP) begins March 1, 1996.  The serving parties will be following up with a complete list of relevant time periods by part.

Patrick Seyferth
Colin Kass
October 13, 2016
Page 3

> Mr. Lynch testified that webRFQ, FastCAR and COMPASS capture all information related to the RFQ process and, between these systems, live data go back to at least 2001. He further testified that source packages and EBSCs reside in the Source Package System and GPSIS, respectively. We understand the GPSIS data only go back three years. It is unclear how far back the source packages exist. We would like RFQ files and all the aforementioned documents associated with each RFQ, including award prices, to the extent reasonably available.

- Agreements with auto parts suppliers, including master agreements, letters of agreement, and non-standard agreements to the extent the agreements or pertinent terms are not captured in PentaSAP or COMPASS.

## III.    Cost and Pricing Data and Documents

- VIN-level cost data or, if not tracked at a VIN level, cost data at the least aggregated level this information is tracked, or the most detailed level available for each year, make, model and trim combination, including costs for any options or accessories. This shall include Product Cost Studies, Cost of Sales data in PentaSAP, information from VAMR, and any relevant costed bill of materials information.

- Data, or documents in the absence of data, sufficient to track each part after it was installed into a vehicle, including model year, VIN, and part number.

- Documents related to vehicle pricing (MSRP), including back-up materials for internal determinations, internal evaluations, studies, manuals and instructions. This shall include the pricing process flow charts, the Product Committee PowerPoint or Excel presentations (including backup pages) in EMMS or other repositories for development approval for each vehicle offering designated for the U.S. market, and any other documents reflecting the pricing process and determinations.

  In addition, Mr. Novak stated in his deposition errata that FCA's pricing team use Vehicle Component Pricing System (VCPS) to enter MSRPs and VCPS passes the data to the Price File database which Central Vehicle Invoicing (CVI) uses to generate the invoice. We request that pricing data in VCPS and the Price File be produced as well.

- Competitive analyses comparing pricing and features of FCA vehicles vs. competitive vehicles. Mr. Novak testified that such comparative analyses were maintained in Excel format on a network server.

- Selection from limited number of custodians or central files of internal studies and reports on vehicle cost, vehicle price, the vehicle market, analyses of invoice prices or MSRP, factors that affect cost and any relationship between cost and vehicle price.

Patrick Seyferth
Colin Kass
October 13, 2016
Page 4

**IV.     Vehicle Sales**

- Data, or documents in the absence of data, sufficient to show the following information for each model (and model year) for each new vehicle sold by FCA: start of production date, year when sales began, year when sales ended, schedule of base model prices, schedule of MSRP (MSRP for all standard models offered, including base and other standard trim packages), and amounts paid by auto dealers to FCA, including but not limited to, wholesale dealer price, dealer invoice price, or factory invoice price.

    Mr. Novak testified that CVI holds all the MSRP and wholesale dealer prices (WSD) at VIN level.  Each VIN is associated with a sales code, which can be cross-referenced with code guides that define the features or content of each sales code. We request code guides to be produced as well.

- Sales data reflecting FCA's sales to auto dealers (including off-invoice payments and incentives).

    Mr. Novak testified that CVI records sales from FCA to dealers, with data going back 7 years.   He further testified that UPIC contains information regarding dealer incentive programs, although it is unclear how far back the data go.  To the extent the data reflecting off-invoice payments and incentives are not available, we request a schedule of off-invoice payments and incentives by model that were offered to auto dealers.

- A selection of letters to dealerships announcing invoice and MSRP prices for new models.

**V.     Other Information**

- For all categories requested above, we seek all data and documents that are within your possession, custody, or control, regardless of whether that information came from your own files or the files of FCA's parent company or other entity within FCA's corporate family.  However, we limit the requests to data or documents that pertain only to vehicles sold or leased in the United States regardless of where they were manufactured.

Please note that Auto Dealer Plaintiffs do not join in the request for sales data reflecting sales to end-purchasers or any rebates, incentives or other payments from OEMs to dealers. Also, please note that Plaintiffs continue to pursue Request No. 31.

Patrick Seyferth
Colin Kass
October 13, 2016
Page 5

We look forward to talking to you.  Thank you for your cooperation.

Best regards,

/s/  *Qianwei Fu*
Qianwei Fu
Zelle LLP
Counsel for the End-Payor Plaintiffs


/s/  *Evelyn Li*
Evelyn Li
Cuneo Gilbert & LaDuca LLP
Counsel for the Auto Dealer Plaintiffs


/s/  *Sheldon Klein*
Sheldon Klein
Butzel Long
Counsel for the Defendants


cc:     Ronnie Spiegel
        Heather Novison