# EXHIBIT 9



44 MONTGOMERY STREET - SUITE 3400  
SAN FRANCISCO, CALIFORNIA 94104  
(415) 693-0700 MAIN    (415) 693-0770 FAX

QIANWEI FU  
qfu@zelle.com  
(415) 633-1906

October 28, 2016

**<u>Via E-Mail</u>**

Colin Kass, Esq.  
Proskauer Rose LLP  
1001 Pennsylvania Ave., N.W., Suite 600 South  
Washington, DC 20004-2533

      RE:    *In Re: Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM

Dear Colin:

      This letter follows up on your correspondence dated October 23, 2016 and our recent meet-and-confer discussion on Monday, October 24. We appreciate FCA's effort in working with us and the general progress toward production. We set forth below the Parties' position on FCA's proposal in each requested category, each of which is contingent upon the Parties reaching agreement with FCA regarding the scope of its production. We are eager to reach a resolution with FCA so that a renewed motion is not required. Toward that end, we remain open to further discussing any pending issues with FCA and to resolve our disagreements promptly.

<u>Costs</u>

      The Parties are mindful of the cost issue. We understand that FCA's offer is contingent on the Parties' agreement to pay all costs associated with the pertinent production. We ask that FCA give us a cost estimate for each category of data it would agree to produce under its current proposed framework, including how many employee hours the production would entail and at what rate. This information will inform the Parties' overall decision on whether to accept FCA's proposal.

<u>Suppliers List</u>

      Per our discussion, we have enclosed in Appendix A an updated supplier list to reflect defendant suppliers named in all part cases filed to date. We also expect we will be able to provide a list of non-party suppliers of the various parts.

Colin Kass
October 28, 2016
Page 2

Purchase Data

You state that FCA only intends to produce purchase information in PentaSAP and COMPASS identifying the following: supplier, part, quantity, price, and manufacturing and shipping locations. We learned from Mr. Lynch that purchase data in PentaSAP contain the following highly relevant fields: supplier code, part number, part description, and payment amount. *See* Lynch Dep. Tr. 165:12-166:8. Please confirm that these fields are included in your offer. Please also advise if date of purchase, model, and model year will be included.

We understand that price changes (including reason codes and reason descriptors) are also recorded in PentaSAP and COMPASS. *See* Lynch Dep. Tr. 28:19-21, 29:25-30:6. We request that price changes, reason code, and reason descriptors also be produced. In addition, we understand that FCA classifies parts by Commodity Group and Material Group. We requests that those fields also be produced. Subject to an agreement from FCA that it would assist the Parties in understanding the purchase data (including understanding FCA's internal part classifications) and subject to an agreement on costs, the Parties accept FCA's proposal regarding purchase data with the modifications above.

RFQ Data and Documents

Under its current proposal, FCA does not agree to produce RFQ-related information other than webRFQ data. We would like to clarify that FCA's proposed webRFQ production will include the RFQ summary information mentioned by Mr. Lynch at deposition. *See* Lynch Dep. Tr. 100:3-6. Mr. Lynch testified that RFQ data were captured in COMPASS before webRFQ was launched in 2003. *See* Lynch Dep. Tr. 70:11-16. We request that RFQ data from 2001 to 2003 contained in COMPASS be produced, to the extent such data are not already reflected in webRFQ. We also request that target prices contained in FastCAR be produced for the lead three Components initially, with a subsequent production of target prices for the remaining parts to be made at a later date. The Parties remain open to discussing FCA's burden in producing the aforementioned COMPASS and FastCAR data. Subject to an agreement on those additional requests, the Parties are inclined to accept FCA's proposal regarding RFQ data.

FCA does not agree to produce Sourcing Recommendations under its current proposal. The Parties continue to request that FCA produce Sourcing Recommendations, which provide a narrative explanation as to why FCA made particular sourcing decisions. These Sourcing Recommendations are highly relevant to the Parties' cases because they contain FCA's reasons for disqualifying suppliers and for selecting suppliers; further, the "rationale for why a buyer is recommending that [FCA] go to company A versus companies B, C, or D, for example" is not contained in webFRQ. *See* Lynch Dep. Tr. 77:8-25, 78:1-16, 79:5-10. Based on Mr. Lynch's testimony, these documents are in the form of PowerPoint presentations and are, by policy, stored in SharePoint sites and in custodian files. *See* Lynch Dep. Tr. 77:8-12, 78:17-19. The Parties are open to discussing ways to lessen FCA's burden in producing these Sourcing Recommendations, including considering an initial production of a sample set, a limited number of custodians, and/or staggering production, with production for the lead 3 Components first.

Colin Kass
October 28, 2016
Page 3

We also understand that Mr. Lynch himself would be able to locate Sourcing Recommendations that existed before SharePoint came into effect in 2013. We further understand that FCA is making an internal effort to collect and move these types of documents into a centralized location. *See* Lynch Dep. Tr. 89:4-12. We are willing to discuss any proposal that FCA may have for conducting this search. We believe that files of managers for the material commodity groups during the relevant time period would be the most likely place for the requested information.

Agreements with Auto Parts Suppliers

In its current proposal, FCA does not agree to produce agreements with its suppliers, or information reflecting non-standard terms of supplier agreements not located in data FCA has agreed to produce from WebRFQ. The Parties continue to seek information responsive to this request, and in particular information regarding non-standard terms of supplier agreements. Based on Mr. Lynch's testimony, we understand that the GEN-008 system captures "all non-standard agreements" to the extent that a buyer enters this information into the system, which they are required to do by policy, and that PentaSAP identifies whether a contract contains non-standard terms. *See* Lynch Dep. Tr. 37:23-38:22. The Parties request that FCA produce its supplier agreements, or the equivalent, including information regarding non-standard terms and Long Term Agreements located in GEN-008 or any other appropriate database in which this information is kept. The Parties are open to accepting a sample set of this information, and FCA can prioritize the contracts for the lead 3 Components if that is less burdensome.

In addition, the Parties understand that FCA is engaged in directed buying relationships with some suppliers in which FCA establishes the piece price and directly issues a purchase order to a lower tier supplier. *See* Lynch Dep. Tr. 149:21-150:25. We understand from Mr. Lynch's testimony that information related to these directed buying relationships, including price setting terms, may be located in the MPAB system. *See* Lynch Dep. Tr. 149:21-150:1. We ask that FCA produce information reflecting the terms of such directed buying relationships, and if the MPAB system is not the best source of that information, that FCA inform us where this information is located. We remain open to discussing ways to lessen FCA's burden in producing its directed buying agreements, including considering a production of a sample set or staggering production, with production for the lead 3 Components first.

Cost Data

FCA proposes to produce only centrally located model-level Product Cost Studies, which you represented only go back to the 2011 model year. The Parties would like cost information prior to 2011. We note that the relevant time periods in this litigation are largely outside of the proposal by FCA. Please explain whether any Product Cost Studies exist before the 2011 model year, and if so, whether FCA would consider producing those. We understand that "an individual in Finance has the responsibility to coordinate" the generation of Product Cost Studies, and we inquire whether a reasonable search can be done within the coordinator's files to

Colin Kass
October 28, 2016
Page 4

locate Product Cost Studies that existed before the 2011 model year. *See* Novak Dep. Tr. 113:9-10.

FCA does not agree to produce VIN-level cost data in VAMR, stating that such data is not relevant to a pass-through analysis and the requested production is "extremely burdensome." The Parties need the input-by-input data costs in as disaggregated a fashion as possible for their own experts' analyses. Please provide an explanation with some detail as to why extracting VIN-level cost data from VAMR is overly burdensome. FCA's letter specifically refers to "15 reports" that could be generated from VAMR within three weeks. Please clarify what these 15 reports contain so that the Parties can further assess FCA's burden. Please also clarify whether FCA used other data systems to perform similar functions of VAMR before 2013.

Downstream Pricing Information

FCA agrees to produce Code Guides containing MSRP and invoice price at the model and trim level from model year 2007 to year end 2014. To the extent Code Guides older than model year 2007 are available, we would like them to be produced as well. We also request that FCA produce data containing dealer invoice prices, as far back as reasonably possible. We accept FCA's proposed production of Product Committee PowerPoint presentations from September 2009 to December 31, 2014. Please confirm that there are no PowerPoint presentations or similar documents showing how prices were worked up prior to 2009.

FCA does not agree to produce price announcement letters to dealerships, stating that Dealer Plaintiffs would have this information. However, Dealer Plaintiffs do not possess all the price announcement letters to all FCA dealerships in the U.S. for the relevant time period. Moreover, an MSRP out of the context or without the announcement to which it is attached is insufficient. Thus, we ask that FCA produce a sample of those letters covering a meaningful period of time during the relevant time period.

Vehicle Sales Data

FCA's letter does not address transactional data for vehicle sales to dealers. As certain parties explained on our call, the MSRPs and invoice prices in the Code Guides do not reflect accessories, add-ons, or other adjustments to price such as off-invoice payments like holdback, fuel allowance, and incentives paid to dealers. We understand that CVI may not be the right system for accessing such data. Please explain whether FCA maintains vehicle sales data in a different system with reporting functionality, for how long FCA keeps such data, and whether FCA intends to discuss with the Parties the production of such data. Dealer Plaintiffs do not join this request for anything aside from invoice prices.

Vehicles Received from FCA Italy

We understand that FCA also sets MSRPs for vehicles it purchases from its parent company FCA Italy for distribution in the U.S. FCA has VIN-level transfer prices in PentaSAP, for a total of 150,000 vehicles over the last three years. *See* Novak Dep. Tr. 54:2-4, 56:10-11,

Colin Kass
October 28, 2016
Page 5

56:25-57:24.  We further request that the MSRPs and transfer prices for those vehicles be produced.

      As we stated in our October 13, 2016 letter, Plaintiffs continue to pursue documents responsive to Request No. 31.  We understand that FCA has no offer to provide on this request.

      Please advise us of FCA's position on these issues.  The Parties remain hopeful that we can find resolution within the timeline set by the Special Master.  We are available to discuss the items in this letter at your earliest convenience.

      Sincerely,

/s/  *Qianwei Fu*
Qianwei Fu
Zelle LLP
Counsel for the End-Payor Plaintiffs

/s/  *Evelyn Li*
Evelyn Li
Cuneo Gilbert & LaDuca LLP
Counsel for the Auto Dealer Plaintiffs

/s/  *Sheldon Klein*
Sheldon Klein
Butzel Long
Counsel for the Defendants

cc:    Ronnie Spiegel
         Cameron Bonk

4818-8638-5467v1

# APPENDIX A

- AB SKF
- Aisan Corporation of America
- Aisan Industry Co., Ltd.
- Aisin Automotive Casting, LLC
- Aisin Seiki Co., Ltd.
- Alps Automotive Inc.
- Alps Electric (North America), Inc.
- Alps Electric Co., Ltd.
- American Furukawa, Inc.
- American Mitsuba Corporation
- American Showa, Inc.
- ASMO Co. Ltd.
- ASMO Greenville of North Carolina, Inc.
- ASMO Manufacturing, Inc.
- ASMO North America, LLC
- Asti Corporation
- Autoliv ASP, Inc.
- Autoliv B.V. & Co. KG
- Autoliv, Inc.
- Bosal Industries-Georgia, Inc.
- Bosal International N.V.
- Bosch Electrical Drives Co., Ltd. f/k/a Korea Automotive Motor Corporation
- Bridgestone APM Company
- Bridgestone Corporation
- Calsonic Kansei Corporation
- Calsonic Kansei North America, Inc.
- Chiyoda Manufacturing Corporation
- Chiyoda USA Corporation
- Continental Automotive Electronics LLC
- Continental Automotive Korea Ltd.
- Continental Automotive Systems, Inc.
- Corning Incorporated
- Corning International K.K.
- Curtis-Maruyasu America, Inc.
- Delphi Automotive LLP
- Delphi Powertrain Systems Korea Ltd.
- Denso Automotive Deutschland GMBH
- DENSO Corp.
- DENSO International America Inc.
- DENSO International Korea Corporation
- DENSO Korea Automotive Corporation
- DENSO Products & Services Americas, Inc.
- Diamond Electric Mfg. Co., Ltd.
- Diamond Electric Mfg. Corporation
- DTR Industries, Inc.
- Eberspächer Exhaust Technology GmbH & Co. KG
- Eberspächer North America Inc.
- Faurecia Emissions Control Technologies, USA, LLC
- Faurecia SA
- Franklin Precision Industry, Inc.
- Fujikura Automotive America, LLC
- Fujikura Ltd.
- Furukawa Electric Co., Ltd.
- G.S. Electech, Inc.
- G.S. Wiring Systems, Inc.
- G.S.W. Manufacturing Inc.
- Green Tokai Co., Ltd.
- GS Electech, Inc.
- Hitachi Automotive Systems America, Inc.
- Hitachi Automotive Systems, Ltd.
- Hitachi, Ltd.
- Hyundam Industrial Co., Ltd.
- Ichikoh Industries, Ltd.
- II Stanley Co.
- INOAC Corporation
- INOAC Group North America, LLC
- INOAC USA Inc.
- JTEKT Automotive North America, Inc.
- JTEKT Corporation
- K & S Wiring Systems, Inc.
- Kayaba Industry Co. Ltd., d/b/a KYB Corporation
- Keihin Corporation
- Keihin North America, Inc.
- Koito Manufacturing Co., Ltd.
- Koyo Corporation of U.S.A.
- KYB Americas Corporation
- Kyungshin-Lear Sales And Engineering LLC
- Lear Corp.
- Leoni Wiring Systems, Inc.
- Leonische Holding, Inc.
- MAHLE Behr GmbH & Co. KG
- MAHLE Behr USA Inc.
- Maruyasu Industries Co., Ltd.
- Meritor, Inc. f/k/a ArvinMeritor, Inc.
- Mikuni American Corporation
- Mikuni Corporation
- Mitsuba Corporation
- Mitsubishi Electric Automotive America, Inc.
- Mitsubishi Electric Corporation
- Mitsubishi Electric US Holdings, Inc.
- Mitsubishi Heavy Industries America, Inc.
- Mitsubishi Heavy Industries Climate Control, Inc.
- Mitsubishi Heavy Industries, Ltd.
- N.S. International, Ltd.
- Nachi America Inc.
- Nachi-Fujikoshi Corp.

# APPENDIX A

- New Sabina Industries
- NGK Automotive Ceramics USA, Inc.
- NGK Insulators Ltd.
- NGK Spark Plugs (USA) Inc.
- NGK Spark Plugs Co. Ltd.
- Nippon Seiki Co., Ltd.
- Nishikawa Cooper LLC
- Nishikawa of America, Inc.
- Nishikawa Rubber Company
- North American Lighting, Inc.
- NSK Americas, Inc.
- NSK Ltd.
- NSK Steering Systems America, Inc.
- NSK Steering Systems Co., Ltd.
- NTK Technologies, Inc.
- NTN Corporation
- NTN USA Corporation
- Omron Automotive Electronics Co., Ltd.
- Panasonic Corporation
- Panasonic Corporation of North America
- Robert Bosch GmbH
- Robert Bosch LLC
- Sanden Automotive Climate Systems Corporation
- Sanden Automotive Components Corporation
- Sanden International (U.S.A.) Inc.
- Schaeffler AG
- Schaeffler Group USA Inc.
- Showa Aluminum Corporation of America
- Showa Corporation
- Showa Denko K.K.
- SKF USA, Inc.
- Stanley Electric Co., Ltd.
- Stanley Electric U.S. Co., Inc.
- Sumitomo Electric Industries, Inc.
- Sumitomo Electric Industries, Ltd.
- Sumitomo Electric Wintec America, Inc.
- Sumitomo Electric Wiring Systems, Inc.
- Sumitomo Riko Company Limited (formerly Tokai Rubber Industries, Ltd.)
- Sumitomo Wiring Systems (U.S.A.) Inc.
- Sumitomo Wiring Systems, Ltd.
- T.RAD Co., Ltd.
- T.RAD North America, Inc.
- Takata Corp.
- Tenneco Automotive Operating Co., Inc.
- Tenneco GmbH
- Tenneco Inc.
- TG Fluid Systems USA Corporation
- TG Kentucky, LLC
- TG Missouri Corp.
- TK Holdings, Inc.
- Tokai Kogyo Co., Ltd.
- Tokai Rika Co., Ltd.
- Tokai Rubber Industries, Ltd.
- Toyo Automotive Parts (USA), Inc.
- Toyo Denso Co. Ltd.
- Toyo Tire & Rubber Co., Ltd.
- Toyo Tire North America Manufacturing, Inc.
- Toyo Tire North America OE Sales LLC
- Toyoda Gosei Co., Ltd.
- Toyoda Gosei North America Corp.
- TRAD Co., Ltd.
- TRAM Inc. d/b/a Tokai Rika U.S.A. Inc.
- TRW Automotive Holdings Corp.
- TRW Deutschland Holding GmbH
- Valeo Climate Control Corp.
- Valeo Electrical Systems, Inc.
- Valeo Inc.
- Valeo Japan Co., Ltd.
- Valeo S.A.
- Weastec, Inc.
- Yamada Manufacturing Co., Ltd.
- Yamada North America, Inc.
- Yamashita Rubber Co., Ltd.
- Yazaki Corporation
- Yazaki North America Inc.
- YUSA Corporation