# EXHIBIT 10

  Proskauer Rose LLP   1001 Pennsylvania Avenue, NW Suite 600 South   Washington, DC 20004-2533

November 6, 2016

Colin Kass
d 202.416.6890
f 202.416.6899
ckass@proskauer.com
www.proskauer.com

*Via Email*

Qianwei Fu
Zelle LLP
Counsel for EPPs

Evelyn Li
Cuneo Gilbert & LaDuca LLP
Counsel for ADPs

Sheldon Klein
Butzel Long
Counsel for Defendants

Re: *In re Automotive Parts Antitrust Litig.*, 2:12-md-02311

Dear Qianwei, Evelyn, and Sheldon:

We write in response to your October 28th letter, which followed our October 24th meet and confer regarding FCA US LLC's ("FCA") offer of production in response to the parties' "renewed requests."[1]

**1.    Costs**

As we noted in our prior letter, any agreement to search for and produce information is contingent on the Parties' agreement to compensate FCA for the full cost of compliance. During our meet and confer, and again in your letter, you have refused to agree to such compensation, and refused to discuss with us the categories of costs that the Parties will cover. Instead, you ask for a cost estimate from FCA for each category of data it has offered to produce, including

---

[1] As noted in our prior letter, all offers of production are contingent on reaching a global agreement concerning compliance with the subpoena, including costs. FCA expressly reserves its right to assert – as it has and will continue to do so – that (i) the Parties have propounded an overbroad subpoena in violation of their obligations under Rule 45, (ii) the Parties have failed to meet and confer in good faith, (iii) the Parties have failed to establish substantial need for the information they seek, especially in light of all of the information they already possess; (iv) the Parties' subpoena – and each request (including any modified requests) – fall outside the scope of permissible discovery under the Rule of Proportionality, and (v) any other ground or objection asserted by FCA in connection with the subpoena. As with any proposed agreement, FCA will deem any non-acceptance of the proposal made herein as a rejection of the offer, leaving FCA free to revert to any prior position.



Page 2

employee hours and rates.  While FCA is willing to consider investing the time and effort into such a cost estimate, your request puts the cart before the horse.

Do the parties agree that they will, as FCA has asked, pay FCA its reasonable costs, including attorneys' fees, of responding to the subpoena?  If the answer is yes, we are open to discussing what those reasonable costs and fees might look like.  To help guide such a discussion, while our estimates are necessarily preliminary at this point, we expect that the cost of employee time to produce information consistent with our current offer of production will likely be between $90,000 and $150,000.

**2.      Purchasing Data**

We understand the Parties' letter to agree with FCA's proposal regarding purchasing data, leaving details of fields and suppliers to be worked out.  The parties' revised list of suppliers is acceptable, though we note each additional supplier increases the burden and time required.  As to the data fields raised in your letter, FCA can include them to the extent available.

**3.      RFQ Data**

FCA offered to produce RFQ data reasonably available in the webRFQ system, from approximately 2003 to the present, by supplier name.  As with purchasing data, FCA is open to discussing which fields are reasonably available for production, provided the parties accept FCA's offer as fulfillment of the parties' RFQ and other non-data purchasing requests.

You do not, however, appear to have accepted FCA's offer.  You ask FCA to search a different system for three additional years of data, on top of the 13 years FCA has offered to produce.  At the meet and confer, we asked you to explain any substantial need for three more years of data that would warrant an additional search of a different system.  You did not provide that.  Nonetheless, we further investigated the availability of RFQ data in COMPASS.  COMPASS includes RFQ data from 2004.  As such, it would not provide anything more than what FCA has offered to produce from webRFQ.

In our October 23rd letter, we explained the substantial burden associated with producing component target prices from the FastCAR system.  It would involve the same burdensome mapping process described in Mr. Lynch's declaration and deposition.  Lynch Decl. ¶ 14.  Your continued request for FastCAR data reimposes that burden, yet you still have not offered an explanation of any substantial need for the target price data you request, or of any relevance it could hold to your pass-through analysis.[2]

You also continue to ask for sourcing recommendations, though you do not address their irrelevance to the issues of pass-through, conspiracy, or overcharge in the case.  Instead, you

---

[2] You request a piecemeal production of FastCAR data starting with the three lead parts.  As we have explained over the past year, turning a production into a rolling one does not reduce any burden but rather inflates it with successive searches.



Page 3

make the circular claim that sourcing recommendations are relevant because they show what they show ("FCA's reasons for disqualifying suppliers and for selecting suppliers"). You still have not explained the relevance of this information to the issues in the case, let alone any substantial need given that "some of that sourcing recommendation is available and resides in webRFQ" and suppliers "can see their scorecard any time they want." Lynch Tr. at 78, 97, 205-06. We explained the associated burden in our October 28th letter. Moreover, these are sensitive and confidential documents. Absent a substantial need and clear relevance to the central issues of the case, FCA does not agree to produce sourcing recommendations. FCA believes its offer of production relating to RFQ data more than covers any reasonable need the parties legitimately have.

**4.  Agreements With Suppliers**

You request "a sample set" of FCA's "supplier agreements … including information regarding non-standard terms and Long Term Agreements located in GEN-008 or any other appropriate database in which this information is kept." The wording of the request should tell you that the parties are asking for something they already have. Your letter does not provide any explanation of substantial need that would permit, under Rule 45, forcing FCA to look through its systems for "any appropriate database" and then collect, review, and produce a set of documents that the parties already have.

You also ask for "information reflecting the terms of such directed buying relationships, and if the MPAB system is not the best source of that information, that FCA inform us where this information is located." First, "MPAB" is not a separate system but a description of a type of contracting structure: "modular pay as built." Lynch Tr. at 149-50. Mr. Lynch testified that this kind of information "sometimes is and … sometimes isn't" captured in a system "depending upon the situation." Lynch Tr. at 151. Again, FCA does not intend to look through its systems for information that may or may not be there. Second, your request for direct buying contracts again asks for a set of documents that the parties should already have. You do not claim otherwise, or even detail any efforts to obtain the documents through party discovery.

**5.  Cost Data**

FCA offered to produce the corporate Product Cost Studies in its PCS system. *See* Novak Tr. at 115. Those studies go back to model year 2011 and provide "a snapshot of parts and associated purchase order cost numbers at a point in time" at the model level. Novak Tr. at 110-11, 127-28. In our October 23rd letter, we cited Dr. McDonald's explanation that this type of cost information is what is necessary to conduct a pass-through analysis, and we cited caselaw finding that plaintiffs do not need to conduct a VIN-level overcharge analysis. Accordingly, FCA's offer is more than sufficient for the parties' purposes. You have not refuted this.

Without explaining why FCA's offer does not suffice, your letter asks for more because you "would like" it. That is not a basis under Rule 45. You suggest a custodian search through Mr. Haas's files in case he may have more than what is in PCS. Mr. Novak did not testify that Mr. Haas has product cost studies in his files or that he would have any from earlier than 2011.



Page 4

Indeed, as Mr. Novak testified, FCA's e-mail retention policy is 3 years. Novak Tr. at 27. FCA does not agree to undertake the burden of a further search in the event that some older cost study may exist somewhere in someone's files.

As to VIN-level cost data in VAMR, you provide no explanation of substantial need for such sensitive and confidential information to conduct your pass-through analysis. You just claim that your experts need it for "analyses." In any event, VAMR has even less coverage than PCS, as it only goes back to 2013. Novak Tr. at 127. And part-level data in VAMR is available for only one to two years. Searching PCS provides the parties with more coverage and imposes less burden on FCA.

**6.     Downstream Pricing Information**

You repeat your request for dealer invoice prices, though the Code Guides FCA has offered to produce include the invoice prices that every dealer paid. *See* Novak Decl. ¶¶ 6, 11, 16 (all dealers are charged the same invoice price). We assume this offer satisfies the parties' request. The parties have also accepted FCA's offer to produce Product Committee PowerPoints that exist on EMMS. These offers should cover any legitimate need as to downstream pricing information.

Yet you also ask for price announcement letters to dealers. You ask for "a sample of those letters," again with no explanation of substantial need. There is no need, because you have a sample from plaintiff dealers. You concede that plaintiff dealers have at least some such letters; just not "all the price announcement letters to all FCA dealership in the U.S. for the relevant time period." Because you have your requested sample, there is thus no need to further burden FCA.

**7.     Vehicle Sales Data**

Your letter states that dealer plaintiffs are satisfied with FCA's offer to produce invoice prices. That should satisfy all parties, but your letter requests more.[3]

At the meet and confer, you claimed, incorrectly, that our October 23rd letter did not address transactional sales data. We pointed you to the discussion of CVI and the fact that it is not designed to report historical sales data and is extremely burdensome to do so. You make the same claim in your letter; we again point you to our October 23rd discussion of CVI.

You concede that "CVI may not be the right system" and ask FCA to "please explain whether FCA maintains vehicle sales data in a different system…." Mr. Novak already answered that question. When asked about vehicle sales data, Mr. Novak testified that "CVI is

---

[3] Though irrelevant, you mentioned holdback at the meet and confer and in your letter. We note that Mr. Novak provided all the information you need on holdback: "Holdback percentages are always 3 percent." Novak Tr. at 148.



the only place that would hold" VIN-specific sales data, and he answered all questions posed about it. *E.g.*, Novak Tr. at 32-38, 44-45. FCA does not agree to re-investigate his answers.

## 8. Vehicles Received from FCA Italy

You request MSRPs and VIN-level transfer prices for the 150,000 vehicles FCA purchased from its parent company and distributed in the United States over the last three years. You do not provide any reason why FCA's current offer does not suffice, or why you need transfer prices for 150,000 vehicles from the past three years, a fraction of the millions of vehicles FCA sold in that time period. FCA accordingly does not agree to conduct additional searches for data relating to specific vehicles purchased from FCA Italy.

\*   \*   \*   \*

Finally, as to Request No. 31, FCA does not agree to a request that the parties cannot agree on. Further, FCA continues to assert its objection to the request because the settlement documents and communications requested are not discoverable. *See* SSE Br. at 35-37 (ECF 1227).

FCA believes its offer is more than enough to cover the parties' legitimate needs. You have not presented any grounds to impose additional burdens on FCA. We have indicated above where we have further inquired into your questions, and we are, of course, open to discuss any issues that remain.

Sincerely,

*Colin Kass*