# EXHIBIT K

# KEKER & VAN NEST LLP

633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
kvn.com

**Justina Sessions**
(415) 676-2293
jsessions@kvn.com

November 2, 2016

**VIA ELECTRONIC MAIL**

Demetrius Lambrinos
Cotchett, Pitre & McCarthy, LLP
San Francisco Airport Office Center
840 Malcom Road
Burlingame, CA 94010

Re:   In re Automotive Parts Antitrust Litigation, Deposition Subpoenas to Honda

Dear Demetrius:

I write in response to your letter dated October 31, 2016.

As you are aware, Honda has been conferring with the serving parties for many months concerning the document subpoenas to Honda. On June 22, 2016, I sent Ronnie Speigel and Jeniphr Breckenridge a message discussing the several conversations I had with the serving parties before that date, answering questions about Honda's data, and making an offer of production. The serving parties never responded definitively to that offer. On August 30, 2016 I sent another detailed message answering the follow-up questions that the serving parties had posed on our various calls and expanding Honda's offer of production. The serving parties never responded definitively to that offer, either. I followed up and clarified on September 12. The parties next asked for a meet and confer on October 13, and Honda obliged. The October 13 conversation lasted over an hour, in part because several of the people on the phone were not familiar with the information Honda previously provided regarding its documents and data, and because the serving parties had not shared with Honda their list of purportedly narrowed categories of information that they were seeking. We then had another lengthy call on October 17 during which the serving parties asked several more follow up questions (including questions that are answered on Honda's website, such as MSRP and year and location of manufacture). And, although Honda had been asking for months whether there were any deposition topics that were unnecessary in light of Honda's extensive answers to your questions and offer of production, you insisted that Honda make a proposal regarding what deposition-on-data-availability topics seemed unnecessary.

1122508

Demetrius Lambrinos  
November 2, 2016  
Page 2

Via Electronic Mail

On October 24 we had another meet-and-confer call in which you suggested that the serving parties would consider taking deposition topics off the table only if Honda committed to producing documents by a certain date. Although, as explained below, Honda believes that serving parties' attempt to link the depositions and document productions is improper, Honda nonetheless stated that we would produce a significant volume of data (in addition to what Honda has already produced) by November 17. I note that the serving parties did not respond to Honda's inquiry regarding cost-shifting associated with such production. Honda reserves the right to seek full compensation for the costs of this production, especially in light of the serving parties' silence as to whether they would seek such production if cost-shifting were imposed.

Your letter states that the serving parties will not agree to forego a deposition about the data and documents that Honda maintains regarding "vehicle manufacturing costs information" because you are seeking "information on whether, and to what extent, Honda's cost information is maintained in disaggregated form, and whether there is VIN-level information." We do not understand your questions. With respect to "disaggregated" cost data, Honda has already offered to produce such data for the past 10 years of major model changes. The CSS reports that Honda has committed to producing list the cost of each individual part in a vehicle at the time prior to mass production. Your request for such information at a VIN level is puzzling because there is no VIN prior to production of a vehicle. To the extent that the serving parties seek cost information *after* a vehicle is manufactured, I have already explained that the manufacturing cost quotations do not vary on a vehicle-by-vehicle basis. Rather, each particular type of vehicle (i.e., trim level) sold by a factory within a given quarter is sold at one price. Honda has offered to produce all of those quarterly cost quotations. Furthermore, as I previously explained, the manufacturer-to-AHM (American Honda Motor Company, Inc.) invoice price is available for a particular VIN number as part of the "model master" data that Honda maintains prior to the sale to the dealer and for one year after that (the data is archived after a year). Thus, it is not clear to us what questions the serving parties still have regarding cost data or why the serving parties are insisting on a deposition.[1]

You also asked that Honda produce "samples" of various categories of data and documents prior to the depositions scheduled for November 3 and November 10. I previously provided you with the list of documents and data that Honda could produce by November 17. Honda has already made a significant document and data production (about which the serving parties have expressed their intention to ask questions). We cannot commit to providing sample documents while also preparing for depositions on the minutiae of Honda's data, documents, current and former employees, and practices dating back twenty years. Moreover, the purpose of the depositions is for the serving parties to obtain information about the types of data and documents

---

[1] Your assumptions about the witnesses who would cover Honda's data and documents regarding "cost information" are not correct. To the extent that the parties' questions relate to costs prior to vehicle production, the November 3 witness can cover those topics. To the extent that the parties' questions relate to data on costs during or after vehicle production, neither of the two previously designated witnesses will cover those topics.

Demetrius Lambrinos  Via Electronic Mail
November 2, 2016
Page 3

that Honda maintains—and the burdens associated with the serving parties extensive requests—not to ask Honda detailed questions about the substance and content of those data and documents. Indeed, questions "shall be limited to the format, volume, physical location, time period, status of system on which the data is maintained (i.e., current or legacy systems), individuals responsible for generating and maintaining data systems and documents, custodians likely to be in possession of documents at issue, and cost estimates and burden associated with production."[2]

Finally, your letter makes statements and demands regarding Honda's answers to your questions about the transactional data that Honda maintains regarding sales from Honda to dealers. As I explained, Honda maintains data on individual transactions from Honda to dealers for one year after the sale by Honda, and the data is archived on a rolling basis after one year. These data include payments to and from dealers (e.g., invoices and rebates) for all vehicles sold by Honda to an American dealer, regardless of the location of manufacture.[3] These data do not include purchases by end payors. As I have previously explained, Honda receives limited consumer purchase data directly from the dealers' DMS systems. The DMS data that Honda receives from the dealers do not include customer identifying information or VIN numbers.

Regards,

KEKER & VAN NEST LLP

Justina Sessions

JS:

---

[2] *See* Joint Mtn. for Entry of Order, D.I. 1453, Exs. A and B.

[3] AHM is the sole distributor of Honda and Acura vehicles in the United States.

1122508