# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re: All Auto Parts Cases** | 2:12-MD-02311-MOB-MKM |
| **THIS DOCUMENT RELATES TO:**<br>**ALL AUTO PARTS CASES** | **CERTAIN SERVING PARTIES'**<br>**REPLY IN SUPPORT OF MOTION TO**<br>**COMPEL DISCOVERY FROM**<br>**NON-PARTY ORIGINAL EQUIPMENT**<br>**MANUFACTURERS** |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................................. v

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

I.     THE DISCOVERY BEING SOUGHT IN REQUEST NO. 31 IS HIGHLY RELEVANT TO PLAINTIFFS' CASES ....................................................... 3

II.   THE SETTLEMENT PRIVILEGE DOES NOT APPLY TO INFORMATION REQUESTED BY RFP NO. 31 .......................................... 5

       A.    RFP No. 31 Seeks Non-Privileged Information Regarding the Conspiratorial Conduct Described in the Complaints ............................... 5

       B.    The "Settlement Privilege" is Not Broadly Applicable and is, as one of Defendants' Most Controlling Authorities Makes Clear, Applied on a Case-by-Case Basis .............................................................. 6

       C.    Defendants Have Not Identified Any Privileged Documents Or Applicable Privilege, given that the Governing Law Makes Clear that there is No Privilege Applicable to "[N]egotiations between members of the public who do not yet find themselves in a lawsuit with each other." ..................................................................................... 9

       D.    Responding to RFP No. 31 Promotes the Public Interest ........................ 13

       E.    Defendants in this MDL have agreed to respond to a request identical to RFP No. 31 .................................................................................. 15

       F.    The Remaining Arguments Against Request No. 31 Are of No Moment ....................................................................................................... 16

III.  REQUEST 27 SEEKS CLEARLY RELEVANT INFORMATION AND SSES' PROPOSED LIMITS ON THEIR PRODUCTION ARE UNREASONABLE ......................................................................................... 19

       A.    RFP No. 27 seeks clearly relevant Information related to the Conspiracy at the Center of this Case ..................................................... 19

       B.    SSEs' arbitrary limitation on RFP No. 27 is unreasonable ...................... 20

CONCLUSION ................................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Clarksville Montgomery Cty. Sch. Bd. & Sch. Dist.*, 229 F.R.D. 546 (M.D. Tenn. 2005) ................................................................................................................................. 16

*Bennett v. La Pere*, 112 F.R.D. 136 (D.R.I.1986) ....................................................................... 14

*BioLumix Inc. v. Centrus Int'l Inc.*, No. 08-11418, 2013 U.S. Dist. LEXIS 162002 (E.D. Mich. Nov. 14, 2013) ...................................................................................................................... 13

*Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327 (D. Colo. 2015) ............................................. 18

*Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir. 1965) ....................................... 19

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) .. passim

*In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1026 (D. Minn. 1997) .................... 7, 17, 18, 21

*In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012) .......................................................... 7, 13, 15

*In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201 (D.D.C. 2005) *aff'd in part on other grounds sub nom. In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) ............................. 13, 14

*Konyn v. Lake Superior & Ishpeming R.R. Co.*, No. 2:11-cv-51, 2015 WL 10276153 (W.D. Mich. Feb. 3, 2012) ........................................................................................................... 11

*Richmond Health Facilities-Madison, LP v. Clouse*, 473 S.W.3d 79 (Ky. 2015) ......................... 8

*Snap-On Bus. Sols., Inc. v. Hyundai Motor Am.*, No. 5:07-CV-1961, 2011 WL 6957594 (N.D. Ohio Feb. 3, 2011) .......................................................................................................... 8, 12

*State v. Little River Band of Ottawa Indians*, No. 5:05-CV-95, 2007 WL 851282 (W.D. Mich. Mar. 16, 2007) ................................................................................................................... passim

*Taylor v. Universal Auto Grp. I, Inc.*, No. 14-MC-50, 2015 WL 1810316 (S.D. Ohio Apr. 17, 2015) ......................................................................................................................... iv, 3

*Transportation Alliance Bank, Inc. v. Arrow Trucking Co.*, No. 10-CV-016-GKF-FHM, 2011 WL 4964034 (N.D. Oklahoma 2011) ................................................................................... 8

*United States ex rel. Shamesh v. CA, Inc.*, No. 09-1600-ESH, 2016 WL 74394 (D.D.C. Jan. 6, 2016) ................................................................................................................................. 3

*United States v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14155, 2012 WL 4513600 (E.D. Mich. Oct. 1, 2012) ................................................................................................ 22

*United States v. Bryan*, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950) .................................... 7

*United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ........................... 7

*Westlake Vinyls, Inc. v. Goodrich Corp.*, 2007 WL 1959168 (W.D.Ky., Jun.29, 2007) ........... iv, 7

*Winchester v. City of Hopkinsville*, 2014 WL 7005422 (W.D. Ky Dec. 10, 2014) ....................... 6

**Rules**

Fed. R. Civ. P. 26(b)(3) ................................................................................................................ 17

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*State v. Little River Band of Ottawa Indians*, No. 5:05-CV-95, 2007 WL 851282 (W.D. Mich. Mar. 16, 2007)

*Taylor v. Universal Auto Grp. I, Inc.*, No. 14-MC-50, 2015 WL 1810316 (S.D. Ohio Apr. 17, 2015)

*Westlake Vinyls, Inc. v. Goodrich Corp.*, 2007 WL 1959168 (W.D.Ky., Jun.29, 2007)

## <u>INTRODUCTION</u>

Certain Plaintiffs (collectively, "Plaintiffs") filed a motion to enforce two requests of a subpoena seeking from certain non-party original equipment manufacturers and their affiliated entities (herein "Specified Subpoenaed Entities," or "SSEs")[1] (1) documents, data and information produced to governmental authorities regarding the alleged conspiracy described in Plaintiffs' Complaints relating to parts installed in new vehicles for sale or lease in the U.S.; and (2) documents related to communications between the OEMs and any Defendants or other parts suppliers in connection with the facts described in Plaintiffs' Complaints and documents Defendants or other suppliers provided to OEMs, in connection with the facts described in any Plaintiffs' Complaints.

As Plaintiffs have stated in their Motion, it bears noting that a number of OEMs have already produced, investigated or agreed to produce documents in response to these Requests. With regard to Request No. 31, specifically, even the SSEs who filed a three-page opposition to this Request originally raised no such concerns. Even in their first major letter in response to the Serving Parties' subpoenas, the SSEs did not mention any "settlement privilege" concerns, and surely would not have done so, had it not been for Defendants' advocacy against the production of such documents. *See* Ex.1, Oct. 29 Ltr. from SSEs. The opposition to this production in reality comes from Defendants, who apparently do not wish to have these documents introduced in the litigation.

The Defendants, who are parties to the uniform subpoena, filed an opposition in response to Plaintiffs' motion on RFP No. 31 only. Defendants filed this opposition a few days prior to the

---

[1] "SSEs" stands for "Specified Subpoena Entities" and refers to the particular OEMs that have jointly negotiated with the parties that served the subpoena over its scope and who are subject to Plaintiffs' motion to compel.

deadline set for the SSE's oppositions—unsurprisingly, this filing invited the SSEs to incorporate the arguments Defendants provided. Defendants have gone out of their way to eliminate the possibility for Plaintiffs to obtain this highly relevant information. This behavior is contrary to the federal rules and the order of this Court.

Defendants, as serving parties to the uniform subpoena, should not have filed any opposition to any requests that they did not wish to join in this subpoena process. Certain Plaintiffs strongly oppose pursuing information sought in certain requests in the uniform subpoena. Contrary to what Defendants have done, Plaintiffs simply stated that they are not seeking this information. However, Defendants have made numerous attempts[2] to thwart Plaintiffs' reasonable request for the highly relevant information requested in RFP No 31. Notably, Defendants do not argue that the information sought by this request is not highly relevant. Nor do they argue that responding to this request will be overly burdensome for the SSEs. Instead, they simply object on the ground of a so-called "privilege." As Plaintiffs have explained in their motion, no such privilege exists.

The SSEs half-heartedly oppose RFP No. 27 and RFP No. 31 in The Specified Subpoenaed Entities' Joint Opposition to The Parties' Motions to Compel ("SSEs Joint Br.") at page 34-37. In direct contrast to Defendants, the SSEs, who are the responding parties to this subpoena, spent approximately three pages to address *both* requests. The SSEs barely make any

---

[2] In the serving parties' first letter to SSEs, rather than simply stating that they did not join Request No. 31, as certain Plaintiffs had done with some requests, Defendants insisted on preventing the Plaintiffs from pursuing that request by explicitly asserting objections to it so as to prevent the subpoena from moving forward as to Request No. 31. *See* Ex. 2 10/14/15 Letter from R. Spiegel to C. Kass, at 1 ("[d]efendants specifically object to the production of any documents in response to Request No. 31, as it seeks documents that would violate the settlement-communications privilege recognized in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003) . . . "); Ex. 3, 11/24/15 Letter from S. Klein to C. Kass, at 5 n.8 ("Defendants object to Request 31 on the ground that it seeks documents which Defendants believe are protected by the settlement-communications privilege.").

relevance arguments and do not argue at all that responding to both requests would be overly burdensome.

"Once the relevancy of the material sought has been established, the objecting party then bears the burden of [']showing why discovery should not be permitted.[']" *United States ex rel. Shamesh v. CA, Inc.*, No. 09-1600-ESH, 2016 WL 74394, at *8 (D.D.C. Jan. 6, 2016) (citations omitted). Here, neither the Defendants nor the SSEs argue that the discovery sought by RFP No. 27 or FRP. 31 is objectionable due to being burdensome. SSEs should respond to both requests. S*ee Taylor v. Universal Auto Grp. I, Inc.*, No. 14-MC-50, 2015 WL 1810316, at *6 (S.D. Ohio Apr. 17, 2015) (granting motion to compel where nonparty both failed to identify type of burden and to provide anticipated subpoena compliance costs).

As Plaintiffs have made clear, these two requests only seek information that is highly relevant to this case, and is likely already gathered for productions and/or is likely within certain designated repositories that would require a minimum effort to collect and produce. Neither SSEs nor Defendants have any basis to oppose these requests.

## ARGUMENT

**I. THE DISCOVERY BEING SOUGHT IN REQUEST NO. 31 IS HIGHLY RELEVANT TO PLAINTIFFS' CASES**

Request No. 31 seeks documents that are inarguably evidence in this case and which should not be withheld from the victims of this conspiracy. These documents—the discussions of the conspiracy between the colluders and the directly-affected entities who sold Defendants' products into the stream of commerce—are critical to developing an understanding of the conspiracy and its effects. These documents would, under normal circumstances, be summarily produced.

In seeking the OEMs' and Defendants' discussions of the conspiracy, Plaintiffs are not seeking peripheral, isolated documents about how two parties settled a case, as is often the situation in the caselaw Defendants rely on.  Plaintiffs are seeking explanations of, reactions to and discussions of the very conspiracy at issue in this case.  Plaintiffs seek a frank account of what the perpetrators of the conspiracy told the OEMs who were the targets of that conspiracy and whose sale of vehicles containing price-fixed parts was the very reason for Plaintiffs' filing of their cases and how those OEMs reacted.  No privilege was ever intended to keep such documents from coming to light.  Assertions of privilege are designed to protect conversations between attorney and client or two co-parties, not two separate (and separately represented) businesses engaging in the conduct that is at the heart of this case.  Defendants have not cited any cases where information about a victim's discussion of a crime with that crime's perpetrator was withheld from other victims, because no court has ever interpreted any privilege this way.

The objection to production of this information, largely engineered by Defendants, is an attempt to curtail the search for truth and Plaintiffs' attempts to gain an understanding of the parameters and effects of this conspiracy.  This is particularly concerning because Plaintiffs, who do not possess the information about the automotive manufacturing industry that Defendants and OEMs do and did not participate in the transactions that resulted in the manufacture of tens of thousands of overpriced vehicles, are at a serious informational disadvantage and have limited ways to obtain the information they need to prove their case. Plaintiffs' other attempts at obtaining the information they need have been repeatedly thwarted. For instance, during Defendants' depositions, numerous deponents have claimed that they could not remember the details of their collusive conduct and therefore could not provide the complete testimony needed. Plaintiffs' interrogatories to Defendants have also been met with opposition and a slew of

limitations.  Cutting off further avenues of discovery could severely prejudice Plaintiffs'

attempts at recovery and the balancing of the equities does not favor withholding the information

Plaintiffs request. SSEs possess unique information that is directly related to Plaintiffs' claims

and such information should be produced.

## II.    THE SETTLEMENT PRIVILEGE DOES NOT APPLY TO INFORMATION REQUESTED BY RFP NO. 31

### A. RFP No. 31 Seeks Non-Privileged Information Regarding the Conspiratorial Conduct Described in the Complaints

Defendants argue that Plaintiffs are seeking truly privileged information. But that

argument has no basis. Plaintiffs simply seek non-privileged information that directly relates to

the price-fixing and bid-rigging conspiracy.

For instance, a Defendant's explanation to an OEM of how it carried out its conspiracy,

how long the conspiracy lasted and which suppliers that Defendant colluded with, cannot

possibly be privileged and is not a settlement discussion.  Nor is an OEM's reaction to that

information. For instance, an OEM's statement to its supplier that the conspiracy hurt its dealers

could not possibly be a settlement discussion. Nor is a discussion between two OEM employees

of the way that the conspiracy affected their business a settlement discussion.  Nor is a

discussion between two different OEMs of how the conspiracy affected them and what they

think of Defendants' explanations of the conspiracy a settlement discussion. Similarly, an

OEM's discussion with a Defendant of what another Defendant or supplier told that OEM is also

not a settlement discussion.

A defendant speaking to an OEM might reveal how the conspiracy started, why it was

initiated or which conspirators played which roles.  It might shed light on how the conspiracy

was concealed from OEMs and authorities.  It might also explain nuances of the bidding and

price negotiation processes, and how those processes differed during the conspiracy. It may also

shed on light which products were subject to the conspiracy and aid plaintiffs in determining

how to go about identifying those products.  None of these are discussions about how to resolve

a lawsuit.

Furthermore, a supplier's business concession to a manufacturer following a

disagreement is not a settlement or a privileged settlement communication. If it were, then scores

of commercial discussions that occur on a daily basis would be potentially privileged and off-

limits to litigants.  There are innumerable instances when two entities in a relationship have a

disagreement that could at some point lead to litigation, if not resolved, and those entities work

out such disagreements through business discussions.  If every time such businesses discussed

their disagreements, a settlement privilege attached, this would render a search for evidence

completely impossible and there would be no reasonable limits on what could be withheld.  That

is why a Michigan district court has stated that no settlement privilege applies to "*ad hoc*

negotiations between members of the public who do not yet find themselves in a lawsuit with

each other." *State v. Little River Band of Ottawa Indians*, No. 5:05-CV-95, 2007 WL 851282, at

*2 (W.D. Mich. Mar. 16, 2007).

**B. The "Settlement Privilege" is Not Broadly Applicable and is, as one of Defendants'**
**Most Controlling Authorities Makes Clear, Applied on a Case-by-Case Basis**

Defendants argue that any communication between the SSEs and the Defendants about

the conspiracy is protected under the settlement privilege. Def. Br. at 3. Essentially, Defendants

attempt to assert a general broad privilege to sweep in any communications between the SSEs

and the Defendants regarding the auto parts conspiracy. Such attempts have been rejected by

courts.  *Winchester v. City of Hopkinsville*, 2014 WL 7005422, at *2-3 (W.D. Ky Dec. 10, 2014)

(rejecting "broadly asserted [] 'settlement privilege.'"); *Westlake Vinyls, Inc. v. Goodrich Corp.*,

2007 WL 1959168 *3 (W.D.Ky., Jun.29, 2007) ("*Goodyear* does not create a broad privilege protecting from discovery any document or communication arguably related to settlement negotiations, fruitful or otherwise.").

Defendants apparently believe that any discussion of their widely-publicized international conspiracy with OEMs who have in the four years of this MDL never initiated litigation against Defendants is a settlement discussion. Defendants' argument misconstrues the ruling in *Goodyear* and inappropriately applies the settlement privilege to cloak discoverable information.

As one court stated "in adhering to the principle that 'the public ... has a right to every man's evidence,' *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950), the Supreme Court has warned that evidentiary privileges 'are not lightly created nor expansively construed, for they are in derogation of the search for truth,' *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)." *In re MSTG, Inc.*, 675 F.3d 1337, 1343 (Fed. Cir. 2012).

Even one of the authorities cited by the SSEs holds that "[t]he party asserting . . . . privilege bears the burden of establishing the elements of the privilege." *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1026, 1028 (D. Minn. 1997) (citations omitted). Further, "[a] blanket statement that a privilege applies simply will not suffice; [party asserting this privilege] must provide this Court with enough information to determine whether the privilege truly applies to each individual document." *Id.* (citations omitted).

It is not true as the Defendants contend that the Sixth Circuit only applied the "case-by-case" method to determine creation of the settlement privilege, Def. Br. at 5. Authorities cited by Plaintiffs and Defendants show that courts determine the settlement privilege on a case-by-case basis. As Defendants' own case states "as the Sixth Circuit stated when it first adopted the

Settlement Privilege, *its use* must be 'judged on a case-by-case basis and weighed against the public interest.'" *Snap-On Bus. Sols., Inc. v. Hyundai Motor Am.*, No. 5:07-CV-1961, 2011 WL 6957594, at *1 (N.D. Ohio Feb. 3, 2011) (quoting *Goodyear*) (emphasis added).[3]

In this instance, when the documents at issue are evidence in a case concerning a more-than decade-long criminal conspiracy and will help the injured parties in prosecuting their case and remedying hundreds of millions of dollars of damages, the odds weigh heavily in favor of disclosure.

If Defendants contend that only the specific facts in *Goodyear* matter, because the Sixth Circuit only considered those facts in creating this privilege, and only those facts were the basis for the ruling in *Goodyear*, those specific facts also show that the privilege was strictly limited to situations like that in *Goodyear* where the settlement talks were part of a filed court case and therefore deemed off-limits in discovery, specifically because the court required confidentiality. *See Goodyear*, 332 F.3d at 977-78 ("The district court presided over settlement negotiations for the counterclaims, and admonished that all talks were to remain confidential."). *See also Transportation Alliance Bank, Inc. v. Arrow Trucking Co.*, No. 10-CV-016-GKF-FHM, 2011 WL 4964034, at * 1 (N.D. Oklahoma 2011) ("The present case is distinguishable from the *Goodyear* case insofar as the *Goodyear* case involved settlement discussions presided over by the Court under an admonishment that all talks were to remain confidential.").

---

[3] SSEs' quote from *Richmond Health Facilities-Madison, LP v. Clouse*, 473 S.W.3d 79, 90 (Ky. 2015), relegated to footnote 34 in their brief, comes from one judge's concurring opinion—not the governing majority opinion which constitutes the governing law. The quoted justice stated that "this Court should defer to the [']fundamental principle that the public ... has a right to every man's knowledge[,] ['] and that "[p]rivileges, being [']in derogation of the search for truth,['] are not [']expansively construed.[']" *Id.* (citations omitted).

**C. Defendants Have Not Identified Any Privileged Documents Or Applicable Privilege, given that the Governing Law Makes Clear that there is No Privilege Applicable to "[N]egotiations between members of the public who do not yet find themselves in a lawsuit with each other."**

As the Michigan district court that decided the *Little River* case has clearly stated, "nothing in the *Goodyear* opinion suggests, however, that the Sixth Circuit would venture to extend the settlement privilege it recognized in that case to *ad hoc* negotiations between members of the public who do not yet find themselves in a lawsuit with each other." *State v. Little River Band of Ottawa Indians*, No. 5:05-CV-95, 2007 WL 851282, at *2 (W.D. Mich. Mar. 16, 2007). The court stated that "the settlement privilege recognized by the Sixth Circuit in *Goodyear* has not been shown to apply in the absence of the existence of an actual case between the parties." *Id.* Faced with a situation like the one here, the *Little River* court stated "the *Goodyear* court was clearly discussing the settlement privilege *within the context of an action already before the courts*, defendant here seeks to push the reach of the so-called settlement privilege to cover documents exchanged between Chairman Ettawageshik and two public officials of the State of Michigan well prior to any lawsuit being instituted."  2007 WL 851282, at *2 (emphasis added). The court concluded that "Defendant seems to take the position that whatever documents came within the purview of those talks were protected by the settlement privilege." *Id.* It rejected this argument and stated that the settlement privilege does not apply to "negotiations between members of the public who do not yet find themselves in a lawsuit with each other."  *Id.*

As the *Little River* Court explained, the requirement that there be an actual lawsuit between parties asserting a settlement privilege is imperative because without it there would be no limits on what was covered by a purported "settlement privilege" and no way to tell when such a privilege was properly being applied. The court stated:

> As a practical matter, the use of a privilege fashioned to resolve existing cases subject to a court's supervisory authority, the parameters of which are already fixed by the pleadings, would be fraught with difficulties if the privilege was allowed to shield statements made in the course of everyday life, and outside the scope of litigation.
>
> For example, if a man said to his neighbor, "I knocked down your fence because it was on my side of the property line, but I will be happy to let you put it back up if you want to discuss some financial remuneration," could he reasonably expect this admission to be "privileged" when his neighbor sues him, merely because he offered to talk settlement at the same time? What about a parts supplier who says, "I am withholding this month's shipment of widgets to you. Let's tear up our present contract and negotiate a new one," or the man who says, "I shot your dog, but let's talk." Are these statements privileged?

*Little River*, 2007 WL 851282, at *2. Without the requirement of a filed case to which it must be linked, anything can be asserted to be a discussion in furtherance of settlement and any communications could potentially be subject to an assertion of a settlement privilege and withheld from discovery.  An existing lawsuit is the starting point for assessing the applicability of any settlement privilege, because without it, there no parameters against which to compare any purported settlement communication.  Absent such safeguards, as stated above, any discussion between a parts supplier and a manufacturer about a business dispute could be declared a settlement discussion and deemed off-limits. This would make the job of a fact-finder nearly impossible.

The requirement of an actual lawsuit makes sense from a policy perspective as well. Entities who are in litigation against one another might be hesitant to be completely upfront during settlement negotiations, given the adversarial positions they are already in. In a situation where there was no filed case, the parties would not have these concerns or need the additional protection of a settlement privilege.

Not only did the Defendants and the OEMs fail to identify any existing lawsuit[4] with one another to provide a basis for assertion of the settlement privilege, they even failed to point to any communications that were genuinely made in furtherance of any settlement negotiations to trigger the privilege.

Defendants incorrectly claim that Plaintiffs cited to "a single district court case in support of their argument," and completely fail to address any of Plaintiffs' authorities aside from *Little River*, which they wholly misconstrue. *See* Def. Br. at 5. *See* Certain Parties Motion to Compel, at 13-15. As is made clear above, *Little River* certainly enforces the pending lawsuit requirement and Defendants' suggestion to the contrary is disingenuous.

The cases cited in Defendants' brief do not help them either. For instance, in *Konyon*, a decision that is only two paragraphs and offers essentially no reasoning, the court ordered that any settlement agreement could be produced—contrary to the positon Defendants have taken. *Konyn v. Lake Superior & Ishpeming R.R. Co.*, No. 2:11-cv-51, 2015 WL 10276153, at *1 (W.D. Mich. Feb. 3, 2012). Further, in *Konyn*, the entity who engaged in the settlement negotiations was, at the time of the dispute, already named by the Defendant as the party liable for the injuries

---

[4] The SSEs, but not the Defendants, claim that SSEs are putative class members who will soon need to make opt-out decisions. Defendants have asserted that the OEMs are not represented in any of the filed cases. *See* Ex.4, October 8, 2014 Status Conference Transcript, at 54. In any event, SSEs' new argument fails for a number of reasons. First, the cases filed by the Direct Purchaser Plaintiffs, none of whom are OEMs, and to which no OEMs are parties, are filed in the minority of cases in this MDL. There are no settlements in most of these cases from which the OEMs could "opt out" because there is no applicable case on file. Second, as the SSEs admit, they still need to make "decisions" as to whether to file their cases. As they themselves say, they have largely not yet opted out and have filed no cases against the Defendants. There is no case on file by Honda or Toyota or any of the other OEMs who signed the opposition. Thus, they are in the same position as the parties in *Little River* who claimed they were involved in settlement negotiations before any lawsuit was filed and whose claim of privilege was therefore denied. In any event, this MDL has been going on for over four years and Plaintiffs are not aware of any cases being filed by the OEMs who oppose this motion.

at issue—they were not an outsider to the litigation, as OEMs are here. *See* Ex.5, excerpt from Defendants' Answer. The situation with regard to the OEMs here is very different.

As for *Snap-on*, it is not even a Michigan case, and has almost no discussion or reasoning regarding the applicability of the settlement privilege. *Snap-On Bus. Sols., Inc. v. Hyundai Motor Am.*, No. 5:07-CV-1961, 2011 WL 6957594, at *2 (N.D. Ohio Feb. 3, 2011). In any event, the court in *Snap-on* declined to apply the settlement privilege to an allegedly privileged document that "discusses the parties' continuing business relationship," as many of the documents Plaintiffs seek will do. It also refused to apply the privilege to a document containing "a suggestion that the parties meet to discuss settlement." *Snap-On*, 2011 WL 6957594, at *2.

*Biolumix* is distinguishable as well. The parties asserting the privilege in that case made clear that the history of adversarial conduct dated back to the time of the communications counsel sought to protect. *See* Ex.6 (Excerpt from *Biolumix* Defendants' Opposition to Motion to Compel, pages 1 and 6; and Special Master's Order, at 2 ("the history of conflicts, negotiations and litigations between the Eden Plaintiffs and Centrus and apparent efforts to resolve them drive this conclusion."). Further, the "non-party" at issue was the previous owner of one of the Defendant and essentially in privity with it for purposes of the lawsuit. This is in contrast to the OEMs who signed the opposition, who, over the four years of this litigation, have never even sued Defendants and have pointed to no adversarial conduct at or near the time of the communications here and are not in privity with any Defendants.

Defendants have not offered one Michigan district court case that even engages with *Little River*'s reasoning or contradicts its detailed rationale for requiring the existence of a lawsuit for the use of a settlement privilege, much less holds that a blanket settlement privilege can be properly asserted over documents in the possession of a non-party who has never sued

any parties in the case and has never been liable to any parties in the case for the conduct at issue.

The authority cited by Defendants also demonstrates that the party who claimed settlement privilege responded to the request for that information, and specifically identified privileged documents. *See BioLumix Inc. v. Centrus Int'l Inc.*, No. 08-11418, 2013 U.S. Dist. LEXIS 162002 (E.D. Mich. Nov. 14, 2013). OEMs have failed to do this.

As the authorities above demonstrate, the settlement privilege has been seriously criticized and extremely limited in its application.  As one court observed "Congress chose" to have "limits on the admissibility of settlement material rather than limits on their *discoverability*. In fact, the Rule on its face contemplates that settlement documents may be used for several purposes at trial, making it unlikely that Congress anticipated that discovery into such documents would be impermissible." *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 211 (D.D.C. 2005) *aff'd in part on other grounds sub nom. In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) (emphasis in original) (internal citations omitted). As another court stated "any settlement privilege would necessarily have numerous exceptions." *In re MSTG, Inc.*, 675 F.3d 1337, 1345 (Fed. Cir. 2012).

**D.  Responding to RFP No. 31 Promotes the Public Interest**

The public interest weighs heavily in favor of disclosure here, where victims of a wide-ranging conspiracy that the Justice Department has indicated affected $5 billion in vehicle sales are seeking discovery from the manufacturers of the vehicles they purchased about the information they received from Defendants regarding the conspiracy and how they reacted to that information.

Defendants claim that non-disclosure is necessary to promote settlements.  First, if documents responsive to RFP No. 31 contain confidential information, they will be designated as

"confidential" or "highly confidential-attorneys' eyes only" under the governing protective order, and afforded adequate protection. Further, it strains credulity to argue that two entities would decline to resolve disputes costing hundreds of millions of dollars and instead decide to engage in litigation that would cost them millions of dollars because some of their documents may be privately provided in one litigation under a Highly Confidential designation, to a finite number of attorneys.

Another court, in performing its careful analysis of this issue said as much. The court in *CFTC* stated "'[t]o suggest, as do these plaintiffs, that the prospect of revealing settlement terms to a narrowly limited audience (nonsettling codefendants and those in privity with them) might impede out of court dispositions seems wrongheaded, given that the alternative to settlement would be a double whammy: the loss of the benefit of the bargain and the more public airing occasioned by a fullblown trial.'" *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 212 (D.D.C. 2005) *aff'd in part on other grounds sub nom. In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) (quoting *Bennett v. La Pere*, 112 F.R.D. 136, 139 (D.R.I.1986)).

In *MSTG*, the court said that "while there is clearly an important public interest in favoring the compromise and settlement of disputes, disputes are routinely settled without the benefit of a settlement privilege. It is thus clear that an across-the-board recognition of a broad settlement negotiation privilege is not necessary to achieve settlement." *In re MSTG, Inc.*, 675 F.3d 1337, 1345 (Fed. Cir. 2012).

Given that the Sixth Circuit does not recognize a privilege for discussions between parties who "do not yet find themselves in a lawsuit with each other" and that the many other Circuits where these documents could be requested do not recognize any settlement privilege at

all, it is hard to believe that SSEs and Defendants ever thought that the highly relevant information they exchanged in their discussions of the conspiracy would remain under lock and key or that they relied on such an assumption.  *See Little River*, 2007 WL 851282, at *2 (No settlement privilege applies to parties "do not yet find themselves in a lawsuit with each other"); *In re MSTG, Inc.*, 675 F.3d 1337, 1342 (Fed. Cir. 2012) ("the Sixth Circuit in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979–83 (6th Cir.2003) . . . appears to be *the only one of our sister circuits* to adopt such a privilege.") (emphasis added).

Defendants cite to the certain Plaintiffs' settlement agreement with the Hitachi entities. However, the terms cited by Defendants make clear that the agreement *will* become publicly available once it is submitted to the Court for approval. Def. Br. at 6. Plaintiffs' settlement agreements are publicly filed.

**E.  Defendants in this MDL have agreed to respond to a request identical to RFP No. 31**

As Plaintiffs have stated in their motion, certain Defendants in this litigation have agreed to respond to an identical request served by certain plaintiffs groups. *See* Ex.10 to Motion to Compel, Automobile Dealership Plaintiffs' First Set of Requests for Production of Documents to All Defendants, dated March 17, 2014, Request No. 11 and Bearings Request No. 72, *infra*. Remarkably, not one Defendant has chosen to litigate this request, especially given that a number of Defendants had objected to the request initially. Plaintiffs met and conferred with the Defendants in good faith to work out this issue. *See also* NTN Corp.  Response to EPP Request No. 72, attached as Ex.7. A number of Defendants did not even assert any sort of settlement privilege in negotiating this request.

A number of Defendants started out by refusing to produce documents responsive to this request. If their positon had not changed, then it was entirely improper to represent that they were agreeing to make a production in response to it.

Moreover, Defendants cite to *Anderson v. Clarksville Montgomery Cty. Sch. Bd. & Sch. Dist.*, 229 F.R.D. 546, 547 (M.D. Tenn. 2005) to argue that they have the right to object to RFP No. 31 "even though it is only directed at the SSEs." Def. Br. at 3 n. 3. However, that case discussed only "whether a single plaintiff could in fact disclose the confidences of the entire group" that is represented by the same attorney. *Anderson*, 229 F.R.D. at 547. The court held in *Anderson* that "under the circumstances of this case it is inappropriate for a single plaintiff to be allowed to waive the attorney-client privilege for all plaintiffs through his act of disclosing attorney-client communications to the other side, even though his act may have been deliberate." Defendants' cite to *Anderson* is out of context, and does not support defendant' proposition.

## F. The Remaining Arguments Against Request No. 31 Are of No Moment

The SSEs argue that Plaintiffs are seeking documents prepared by attorneys or prepared in anticipation of litigation. SSEs Joint Br. at 35. This argument lacks any foundation. Plaintiffs never asked for information that is protected under attorney-client privilege, nor did they ask for any attorney work product. Further, it is difficult to understand how any of the OEMs' documents could have been prepared in anticipation of litigation when it has been over four years since the first Defendant admitted to conspiratorial conduct and there has been no litigation on behalf of the OEMs who signed the opposition. By now, many of the statutes of limitation have run.

The SSEs contend that any internal communications regarding the auto parts conspiracy would be protected under attorney-client privilege, but they simply cite to Rule 26(b)(3) without further authorities to support that argument. Under SSEs' theory, a communication between two employees in a sales department regarding how they should treat certain suppliers that admitted to rigging bids in certain business transactions would somehow qualify as "attorney-client communications." This is obviously implausible. It is of course beyond argument that OEMs'

employees other than just attorneys would discuss the conspiracy. The conspiracy was a major event in the industry and there is no doubt that employees of the same OEM or different OEMs would discuss what they had found out from different Defendants about the conspiracy and analyze those findings for purposes of understanding what to do and how to move forward, as well as for purposes of understanding future bids and price proposals. There would be communications between salespeople, between business planning people and between executives. None of these are attorneys and these employees' communications would be discoverable.

Even the authority previously cited by the SSEs held that "[t]he party asserting attorney-client privilege bears the burden of establishing the elements of the privilege." *Milk,* 84 F. Supp. 2d at 1028 (citations omitted). Further, "[a] blanket statement that a privilege applies simply will not suffice; [party asserting this privilege] must provide this Court with enough information to determine whether the privilege truly applies to each individual document." *Id.* (citations omitted).[5]

Further, SSEs misstate Plaintiffs' argument regarding the reliability of their responsive documents. As Plaintiffs explained in their motion, given that SSEs and Defendants are entities in an ongoing business relationship, it is unlikely that they their communications would be complete misrepresentations. Thus, the fear of complete unreliability would be unfounded here.

SSEs also argue that their communications with non-Defendant suppliers about the conspiracy are not relevant because they are "[g]ossip." SSEs Joint Br. at 37. This argument is meritless. Plaintiffs are not asking about any random unrelated conversations between the SSEs

---

[5] SSEs also misstate that there is an anticipation of litigation standard for the settlement privilege. That language appears nowhere in *Goodyear.* The anticipation of litigation standard is only applicable to work product, which Plaintiffs have already addressed above.

and non-Defendant suppliers. Instead, RFP No. 31 targets information relating to "conduct at issue in MDL No. 2311" and "facts described in any Plaintiffs' Complaints." For instance, if non-Defendant suppliers confess to their participation in the conspiracy, explain why they were not involved in the conspiracy, or advise an OEM as to how they can determine which suppliers were involved in the conspiracy, such information is highly relevant to Plaintiffs' claims and discoverable. Further, a non-Defendants' assessment of the conduct of Defendants is relevant and highly informative.

Further, the authorities cited by the SSEs do not support their argument. In *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1345 (D. Colo. 2015), the court found that "[t]here has been no showing whatsoever by [the requesting party] regarding the relevance of the requests for documents about these [non-parties]." Here, in contrast, as Plaintiffs explained, OEMs are the direct victims of the auto parts conspiracy that is at the core of this MDL, therefore their communications about the conspiracy are clearly relevant. SSEs also misconstrue the ruling in *Goodyear*. The court in *Goodyear* did not rule that settlement negotiation communications are legally irrelevant in the excerpt quoted by SSEs, but rather that "any statements made in the course of negotiation are irrelevant for the purpose of impeaching a witness." *Goodyear*, 332 F.3d at 983.

Finally, the SSEs, again, point to other parties for responsive information. *See* SSEs Joint Br. at 37. But, SSEs cannot avoid responding to this request by simply pointing to other possible sources of the requested information. *See Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 998 (10th Cir. 1965) ("[A] person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another."). In any event, there is no good reason to raise this

argument when SSEs have not asserted that there would be any burden associated with complying with this request.

Further, the argument that the relevant documents should have already been produced only applies to Defendants in the Wire Harness case—the only Defendants who have completed their comprehensive discovery negotiations with Plaintiffs and would have produced all information responsive to this request. There are thirty-one more cases in this MDL containing scores of Defendants.

Further, SSEs may have numerous responsive documents that Defendants do not have in their possession and did not produce. For instance, an OEM may have documented a communication that a Defendant did not. And even if some documents exist in the custody of both SSEs and Defendants, their existence in the productions of both is itself informative and demonstrates which documents were exchanged between the two entities and what SSEs knew about the conspiracy.

## III. REQUEST 27 SEEKS CLEARLY RELEVANT INFORMATION AND SSES' PROPOSED LIMITS ON THEIR PRODUCTION ARE UNREASONABLE

### A. RFP No. 27 seeks clearly relevant Information related to the Conspiracy at the Center of this Case

RFP No. 27 asks for information related to the investigation of the auto parts conspiracy that is at core of this MDL. Clearly, both the Plaintiffs and the SSEs understand that RFP No. 27 seeks "documents, data and information produced to governmental authorities regarding the alleged conspiracy described in Plaintiffs' Complaints relating to parts installed in new vehicles for sale or lease in the U.S," as stated on the first page of Plaintiffs' motion to compel. *See* Certain Parties Motion to Compel, at 1. SSEs interpreted this request to encompass documents relating to "safety, environment, fuel efficiency and other unrelated matters." *See* SSEs Joint Br. at 34. This interpretation has no basis. Plaintiffs have never indicated in that any requests in the

uniform subpoena seek information other than information relevant to this litigation, including RFP No. 27. Nor did the SSEs raise this concern during any previous communications to the Plaintiffs. It is clear from the productions of cooperating OEMs that they understand this Request seeks documents produced to the DOJ in connection with the Vehicle Parts conspiracy.

**B. SSEs' arbitrary limitation on RFP No. 27 is unreasonable**

SSEs state that they offered to produce "DOJ documents that would otherwise be responsive to the upstream and downstream information." *See* SSEs Joint Br. at 34-35. First, SSEs have only offered MSRP data and some data concerning their purchases from non-Defendant suppliers, in their December 18 letter to the serving parties. *See* Ex. 8, SSEs' December 18, 2015 Ltr, at 1-2. This is only a limited subpart of the data in SSEs' DOJ production, and is not the only responsive information Plaintiffs seek in RFP No. 27. SSEs made no real arguments as to why their production should be limited in this manner when no Defendants' DOJ production was.

SSEs further asked that RFP NO. 27 be limited to ordinary course business documents and information concerning Defendants who have pleaded guilty or been indicted. To the extent SSEs intend to impose restrictions beyond those imposed by Defendants and refuse to produce the documents they produced in response to the DOJ's subpoenas, Plaintiffs object to SSE's limitations. If these documents were properly producible by Defendants, the subjects of the investigation, there is no reason they should not be produced by SSEs.

Further, Plaintiffs have been receiving DOJ productions from Defendants in this MDL who did not plead guilty and were not charged with any misconduct by the DOJ. There is no reason the SSEs' productions should be subject to different parameters and Plaintiffs should be deprived of evidence relating to some Defendants.

The case cited by SSEs does not support their proposed limitations either. Nowhere in *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1026, 1026-27 (D. Minn. 1997) did the court state that only ordinary-course business documents should be produced. To the contrary, "the Court grant[][ed] Plaintiffs' Motion to Compel discovery as to Requests Nos. 2 and 3" that asked for "documents refer to pricing and market information provided by Defendants to state and federal entities, as well as to other third parties." *Milk,* 84 F. Supp. 2d at 1027-28. As to the order cited by the SSEs in the same footnote, it is easily distinguishable. The Special Master noted in his order that "no party filed any objection to KNA's request for a limited ruling." 13-cv-2203, Doc 159, at 6.

SSEs do not seem to argue that the limitation they seek here is related to any burden. But even if there were a burden argument, that argument should fail, because a nonparty seeking to modify a subpoena bears the burden of demonstrating that the discovery sought should be denied, and cannot rely on a mere assertion that compliance would be burdensome and onerous without demonstrating the manner and extent of the burden and the injurious consequences of having to comply. *United States v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14155, 2012 WL 4513600, at *5 (E.D. Mich. Oct. 1, 2012). As Plaintiffs have explained, SSEs' DOJ production relevant to this litigation is information likely already gathered for productions and/or is likely within certain designated repositories that would require a minimum effort to collect and produce.

## CONCLUSION

For all of the reasons set forth above, this motion to compel discovery from the SSEs should be granted.

Dated:  March 11, 2016                    Respectfully submitted,

                                          /s/ Jonathan W. Cuneo
                                          Jonathan W. Cuneo
                                          Joel Davidow
                                          Daniel Cohen
                                          Victoria Romanenko
                                          **CUNEO, GILBERT & LADUCA, LLP**
                                          507 C Street, N.E.
                                          Washington, DC 20002
                                          Telephone: (202) 789-3960
                                          jonc@cuneolaw.com
                                          joel@cuneolaw.com
                                          danielc@cuneolaw.com
                                          vicky@cuneolaw.com

                                          Shawn M. Raiter
                                          **LARSON KING, LLP**
                                          2800 Wells Fargo Place
                                          30 East Seventh Street
                                          St. Paul, MN 55101
                                          Telephone: (651) 312-6500
                                          Facsimile: (651) 312-6618
                                          sraiter@larsonking.com

                                          Don Barrett
                                          **BARRETT LAW GROUP, P.A.**
                                          P.O. Box 927
                                          404 Court Square
                                          Lexington, MS 39095
                                          Telephone: (662) 834-2488
                                          Facsimile: (662) 834-2628
                                          dbarrett@barrettlawgroup.com

                                          *Interim Co-Lead Class Counsel for Dealership
                                          Plaintiffs*

                                          **DUANE MORRIS LLP**

                                          /s/ J. Manly Parks (w/consent)_____
                                          Wayne A. Mack
                                          J. Manly Parks
                                          **DUANE MORRIS LLP**
                                          30 S. 17th Street
                                          Philadelphia, PA 19103
                                          Telephone: (215) 979-1000
                                          Facsimile: (215) 979-1020
                                          wamack@duanemorris.com
                                          jmparks@duanemorris.com

                                          *Counsel for Truck and Equipment Dealer Plaintiffs*

**MANTESE HONIGMAN, P.C.**

Gerard V. Mantese
(Michigan Bar No. P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com

*Interim Liaison Counsel for Dealership Plaintiffs*


**RYNBRANDT & ASSOCIATES, PLLC**

*/s/Kevin Abraham Rynbrandt* (w/consent)
Kevin Abraham Rynbrandt (P46699)
Business Address:
1000 Front Street, N.W.
Grand Rapids, MI  49504
(616) 915-9266
kar@rynbrandt.com

*Counsel for Plaintiffs*
*Indiana Attorney General's Office*
Indiana Government Building South
302 West Washington Street
5th Floor
Indianapolis, IN 46204
Phone:  (317) 232 6201
Fax:  (317) 232 7979

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2016 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com