```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MICHIGAN
 2                     SOUTHERN DIVISION

 3                       –   –   –

 4   IN RE: AUTOMOTIVE PARTS            Case No. 12-2311
     ANTITRUST LITIGATION
 5                                      Hon. Marianne O. Battani

 6   _____   _____

 7   ALL PARTS

 8

 9   _____/

10

11        MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THE
                     RUSH TRUCKS PLAINTIFFS

12
          BEFORE SPECIAL MASTER GENE ESSHAKI
13        Theodore Levin United States Courthouse
              231 West Lafayette Boulevard
14                  Detroit, Michigan
             Tuesday, November 15, 2016
15

16

17

18

19

20

21

22

23

24
        To obtain a copy of this official transcript, contact:
25           Robert L. Smith, Official Court Reporter
             (313) 964-3303 • rob_smith@mied.uscourts.gov
```

```
 1    APPEARANCES:

 2     For the Plaintiffs:    ANDREW R. SPERL
                              DUANE MORRIS, L.L.P.
 3                            30 South 17th Street
                              Philadelphia, PA  19103
 4                            (215) 979-7385

 5

 6     For the Defendants:    HOWARD B. IWREY
                              DYKEMA GOSSETT, P.L.L.C.
 7                            39577 Woodward Avenue, Suite 300
                              Bloomfield Hills, MI  48304
 8                            (248) 203-0526

 9

10     (Please note, appearances of attorneys listed are only those
                that presented argument before the Court.)
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<span style="text-align:center; display:block;">TABLE OF CONTENTS</span>

MATTER                                                          PAGE

Motion by Mr. Iwrey.................................. 4
Response by Mr. Sperl............................... 9

1    Detroit, Michigan

2    Tuesday, November 15, 2016

3    at about 9:09 a.m.

4                       —    —    —

5            (Special Master and Counsel present.)

6            SPECIAL MASTER ESSHAKI:  The first matter we are

7    going to address today is the dispute regarding the order

8    concerning the Rush Truck plaintiffs, and who is going to go

9    first on that?

10           MR. IWREY:  I think it was our motion.

11           SPECIAL MASTER ESSHAKI:  Okay.  Mr. Iwrey.

12           MR. IWREY:  Good morning, Special Master.

13   Howard Iwrey, Dykema Gossett, on behalf of the bearing

14   defendants.

15           Hopefully this will be a short under card to

16   today's event, probably around five minutes.

17           This relates to the motion to compel production of

18   documents from the Rush Trucks plaintiffs.  As you recall,

19   Your Honor -- or excuse me, Special Master, you ordered

20   production of ten deal files from each of the dealer

21   locations.  There are either 48 or 49 of these locations.

22   Defendants' proposed language that said that the documents

23   shall be produced consistent with what has happened in

24   discovery for almost all of the other parties in this action.

25           The Rush plaintiffs' proposed language would

1    potentially force defendants to engage in a prohibitively

2    expensive scavenger hunt to obtain only a handful of

3    documents from 49 locations.  There is really no

4    justification for this.  This isn't a situation where you

5    have thousands and thousands of meaningless expense reports

6    and you invite someone to come into one location and inspect

7    them.  These are a handful of documents in 49 locations that

8    the Rush plaintiffs already have to locate pursuant to what

9    you ruled in this case on this motion so they are already

10   going to the expense, and the only thing they are doing, they

11   are forcing us to come here or to come to their location and

12   copy ten files or have the option of doing so.  That's not

13   justified, and the only purpose is to frustrate defendants'

14   discovery efforts.

15       As I mentioned, it is also worth noting that all

16   the defendants produced images of their files.  The

17   automobile dealers who you requested produce ten deal files,

18   they too produced images of the ten files, they didn't force

19   us to go to the 50 or so dealership locations.

20       And, in fact, the Rush plaintiffs, as you know, are

21   being compensated because they have requested incentive

22   payments in their settlement agreements.  They specifically

23   said to compensate them for additional document discovery.

24       Rush doesn't deny our accusation that they are

25   attempting to frustrate discovery but simply says that

1    Rule 34 allows this as an option.  Well, that's true, but it

2    is equally true that Federal Rule 1 says that the rule should

3    be interpreted to facilitate the just, speedy and inexpensive

4    determination of every action, and Local Rule 1.2 allows the

5    court to suspend the application for good cause, and good

6    cause is shown here, as you know.

7         Rush doesn't satisfy their discovery obligations

8    that we -- that by requiring us to travel to 49 locations.

9    There is a case that was decided by the bankruptcy court here

10   in Michigan, In re:  Dow Corning bankruptcy case,

11   250 Bankruptcy Reporter 298, made this clear.  The court held

12   it would be okay to make documents available perhaps at one

13   location, but it was patently unreasonable to make documents

14   available at separate Department of Defense locations

15   throughout the world, and the Court said that, quote, this

16   was designed to frustrate the discovery process, and that's

17   exactly what Rush is proposing here.

18        Rush's cases don't really shed any light on this

19   because those cases said that you had the option to produce

20   documents and in those cases there were only -- there was

21   only one location, at counsel's office, they didn't talk

22   about 49 separate locations.

23        So, Mr. Special Master, defendants would propose

24   our version of the proposed order obligating Rush to produce

25   these 490 files -- 490 deal jackets or at most make them

1     available at one location.  Rush's language I would submit

2     would pave the way for some very unfavorable precedent

3     particularly for plaintiffs including Rush as defendants'

4     documents are located throughout the world.

5        The second issue is -- relates to your order that

6     the Rush plaintiffs do not have to produce pre-acquisition

7     deal documents if they disclaim their damages.  They have --

8     Your Honor said at the last hearing they don't have to

9     produce these documents if they, quote, disclaim any and all

10     damages or recovery in this matter or any matter included or

11     to be included within 12-md-2311.

12        SPECIAL MASTER ESSHAKI:  Mr. Iwrey, can you refresh

13     my recollection, was that based upon a stipulation received

14     from Rush?

15        MR. IWREY:  Right, under the propose language they

16     said we propose that they don't have to produce those

17     acquisition documents if they stipulate to disclaim those

18     damages.  Our dispute here is what are they proposing to

19     disclaim.  Rush wants to carve out from this this disclaimer

20     recovery as members of any class or including in connection

21     with settlements.  That's almost really 100 percent

22     consistent -- inconsistent with your ruling because it would

23     allow them to avoid discovery but still make claims for

24     pre-acquisition sales as class members.

25        The ruling didn't really differentiate between

1    claims made as class members and claims made on an individual

2    basis, and there is really no meaningful distinction between

3    those two types of claims.  Whether you are pursuing it on an

4    individual basis or a class member you are still pursuing

5    claims for recovery relating to the same pre-acquisition

6    sales, and whether the money is ultimately doled out by a

7    jury or by an administrator is not a meaningful distinction.

8          Rush says that it is not relevant to adequacy.  I

9    think that's a straw-man argument because you already found

10   that these documents are relevant if they don't disclaim

11   their damages claims for pre-acquisition sales.  I would also

12   argue that a plaintiff who only made purchases of a few

13   products during the class period would really not have the

14   same incentive to pursue claims of other -- on behalf of

15   other members in the class and therefore would fail to

16   satisfy the adequacy and typicality elements of Rule 23.

17         If Rush wants to avoid production of these

18   documents they must either -- they must disclaim pre --

19   claims for pre-acquisition sales of all types, whether it is

20   on an individual basis or a class basis.

21         And the final difference between our proposed

22   orders relates to whether they can have 45 or 60 days.

23         SPECIAL MASTER ESSHAKI:  Let's not worry about

24   that, sir.

25         MR. IWREY:  Yes.

1        SPECIAL MASTER ESSHAKI:  Thank you, Mr. Iwrey.

2        MR. IWREY:  Thank you.

3        SPECIAL MASTER ESSHAKI:  Counsel, please identify

4    yourself for the record.

5        MR. SPERL:  Good morning, Special Master.  My name

6    is Andrew Sperl with Duane Morris for truck and equipment

7    dealer plaintiffs.

8        First of all, I will deny and I do deny that the

9    truck and equipment dealer plaintiffs are trying to stonewall

10   discovery.  There doesn't seem to be any dispute that Rule 34

11   does permit either the inspection of documents or the

12   production of documents where appropriate.  Defendants'

13   concerns, I would submit, at this point really are premature,

14   we are not necessarily talking about going to 49 different

15   locations across the United States of America because we are

16   still in the process of locating the files that defendants

17   have previously identified, and there are a number of other

18   files that defendants have not yet identified that they have

19   the right to identify pursuant to the order.

20       Until we finish locating that we don't know which

21   files we would be producing versus which files we would

22   suggest be made available for inspection.  All we ask at this

23   point is that the order leave open the option of making the

24   files available for inspection if, in fact, it is reasonable

25   to do so.  Of course, we will be subject to the same rules of

1    reasonableness that applies to anyone in discovery.

2         For instance, the investigation that we have done

3    so far reveals that a lot of the files have been sent to

4    offsite storage and that those files are probably located in

5    nine or ten Iron Mountain locations across the United States.

6    Depending upon where those are located, how many locations,

7    how many files and how they are organized, it might be more

8    reasonable for defendants to go to some of those locations

9    rather than having the boxes all shipped from there to our

10   central legal department, gone through and shipped back, but

11   that's not really the issue before you right now.

12        The issue that is before you is just whether or not

13   the order that is entered leaves open the possibilities that

14   indisputably are permitted under Rule 34.  If defendants

15   determine after we make a proposal about what is to be

16   produced and what is to be made available for inspection, if

17   that's not reasonable that would be the time to take that up.

18        Secondly, regarding the disclaimer of --

19        SPECIAL MASTER ESSHAKI:  Please forgive me,

20   Counsel.  Just give me a minute.  I was just going to do this

21   thinking a call was going to come in and sure enough.  Try

22   and enter your 13-digit password with this type of pressure.

23        MR. SPERL:  I understand.

24        SPECIAL MASTER ESSHAKI:  Please continue.

25        MR. SPERL:  I was just beginning my second point

1    which is on the scope of the disclaimer.  Our understanding

2    of your ruling previously was that the reason for the named

3    plaintiffs to disclaim damages from dealerships if they are

4    not going to produce the acquisition documents for those

5    dealerships, and by the acquisition I mean Rush acquiring the

6    dealerships, not acquisition of individual units, is simply

7    because it would be unfair for defendants to have to defend

8    against the claim where they can determine through discovery

9    if we acquired a right to that claim, but that issue is not

10   implicated under the language we proposed because that deals

11   strictly with whether or not the named plaintiffs have the

12   right to basically submit claim forms in the same way as

13   every other member of the recovery class would be submitting

14   the claim forms.

15           Defendants have no legitimate interest in this

16   because it doesn't affect the amount the defendants would pay

17   either by settlement or by recovery after finding of

18   liability.  I don't believe any of the other members of the

19   class will have to submit the type of documentation

20   acquisition forms or acquisition documents that the Rush

21   plaintiffs are being asked to submit.  This is strictly a

22   matter of allocation of proceeds in whatever claims

23   administration process is entered, and that's not to say that

24   they eventually would recover for these dealerships in the

25   claims administration process, only that they should be able

1  to submit claims in the same way without having to produce

2  additional documentation that other members of the class

3  don't need to, and I will stand on the cases that we cited

4  for why this is irrelevant for questions of adequacy and

5  typicality.

6            Finally, really briefly on the number of days --

7            SPECIAL MASTER ESSHAKI:  Don't worry about that,

8  Counsel.

9            MR. SPERL:  Okay.

10            SPECIAL MASTER ESSHAKI:  Thank you.  I have had

11  sufficient argument.  Mr. Iwrey, no need for rebuttal.

12            MR. SPERL:  Thank you, Special Master.

13            SPECIAL MASTER ESSHAKI:  Thank you very much,

14  Mr. Sperl.

15            I have read all the materials and I understand the

16  issue in this case, and it is my ruling that the documents

17  shall be produced to the defendants and not to be made

18  available wherever they may be located, they shall be

19  produced to the defendants.

20            Secondly, we will have 60 days.

21            And third, the Rush Truck plaintiffs must disclaim

22  any pre-acquisition sales for any acquisitions that they

23  made, and as I envision this the question will become how

24  many vehicles did you purchase and/or sell during the

25  relevant conspiracy period.  That answer will only include

1    vehicles sold by dealerships that were acquired by Rush, the

2    sales occurred after the acquisition, so Rush is not entitled

3    to claim pre-acquisition sales.  So I believe the order as

4    Mr. Iwrey has drafted it, changing the 45 days to 60 days, is

5    in keeping with what I just said.  Would you agree,

6    Mr. Iwrey?

7              MR. IWREY:  Yes, Special Master.

8              SPECIAL MASTER ESSHAKI:  Now let me ask you, do you

9    have the magic language?  Yes, you do.  If you would revise

10   that, get it to me, we will have it entered.

11             MR. IWREY:  Thank you.

12             SPECIAL MASTER ESSHAKI:  All right.  Mr. Sperl,

13   thank you very much.

14             MR. SPERL:  Thank You, Special Master.

15             SPECIAL MASTER ESSHAKI:  Thank you, Counsel, both

16   of you.

17             I wanted to talk generally about what's going to be

18   occurring today.  I've got some concerns I want to share with

19   you, I've got some observations I want to share with you, and

20   obviously I'm going to get and entertain from you your

21   thoughts and your suggestions.

22             This is, in fact, a mediation.  We are going to be

23   conducting a mediation, and anything that is said during the

24   course of our discussions will be considered confidential,

25   and I don't want it seeing -- I don't want to see any of

 1    those discussions appear in any subsequently filed motions or

 2    briefs or whatever, so please keep that in mind.  Put a big

 3    note on your yellow pads, confidential, privileged

 4    discussions.

 5          Secondly, obviously weaving its way through the

 6    motion is the question of cost sharing, and we will discuss

 7    that today, and it will be the subject of the hearing that we

 8    have set for December 9th.  So it will be briefed, in the

 9    answer it has been briefed, I think touched upon in the

10    motion, it can be briefed in the reply.

11          Next, I want you to know that the auto-dealer

12    plaintiffs' motion for -- to compel request 31 will be set

13    for hearing on the 31st -- no, on the 9th, so the defendants

14    should be prepared to address -- strike that, the OEMs should

15    be prepared to address that motion as well so that it will be

16    teed up for hearing on the 9th of December.

17          I want to tell you my general reactions, this is

18    not a ruling, my general reactions as to how I think this

19    process should evolve.  I believe it was General Motors and

20    maybe even Toyota that have suggested that what should occur

21    is that the parties agree upon exemplars of documents that

22    they want, that the OEM will produce the exemplars.  That the

23    parties can then request samples of the data be filled in on

24    the exemplars for a limited number of vehicles, and that in

25    so doing the OEMs will be able to determine how much of the

1    data they have, how reasonably accessible that data is, what

2    the cost of producing the data will be, how long it will

3    take.

4         And then once that information is known the parties

5    can then decide what additional vehicles they would like to

6    request data upon knowing that the cost is going to be X

7    multiplied by the number of additional vehicles that they

8    want.  And in so doing that may, in fact, act as a tamper on

9    an unreasonable list of vehicles or unreasonable amount of

10   documents because we know that the cost is going to be

11   $500,000, and if there is going to be cost sharing that will

12   go into the decision-making of the serving parties on what

13   they ask for.

14        So those are just my concerns today.  It is my hope

15   we can work something out.  My biggest concern is that I am

16   estimating that we probably have five percent of the

17   documents from the OEMs that have been produced to date, and

18   we have a March class cert order and an April class cert

19   order or deadlines in the wire harness, bearings and

20   anti-vibrational parts.  As I sit here and just think about

21   the process that I have outlined for you about exemplars,

22   samples, final requests, I don't see how that can occur

23   because as a betting man I would bet a dollar to a doughnut

24   that my opinion on December 9th will be appealed to the

25   Judge, and that, because of the holidays, I do not believe

1    Judge Battani will be able to get to those appeals until

2    probably January 15th or so.

3          She will then take a couple weeks to issue an

4    order, so we are looking at the end of January before we

5    decide what documents are going to have to be produced and

6    how they are going to be produced, and as I said, we have a

7    March cert order that I don't think you are going to be able

8    to make, so I'm very worried about the deadlines that are

9    currently established and the documents that have yet to be

10   produced and how long it is going to take to produce them

11   because I'm concerned we are not going to meet that deadline.

12         So I indicated that I would -- I would speak with

13   anybody that wanted to speak with me in private before we

14   started our discussions, and I hate to do this to you but I

15   think what I'm going to do based upon my readings of

16   yesterday, which included all of the answers filed by the --

17   they are not really answers, they are short opposition

18   statements, filed by the OEMs, I didn't have this until

19   yesterday, I believe I might be more fruitful in starting

20   with Toyota.  So that's what I'm going to do but, please, can

21   somebody give me an indication of who would like to meet with

22   me before we start for a brief 10-, 15-minute conference?

23   All right.  Why don't you please stand up, come to the

24   podium, tell me who you are and who you represent.

25         MR. WALTERS:  Good morning, Your Honor.

1    Neil Walters from Ballard Spar for Subaru of America.

2                MR. KASS:  Good morning, Your Honor.  Colin --

3                SPECIAL MASTER ESSHAKI:  Good morning, Mr. Kass.

4                MR. KASS:  Colin Kass for Proskauer representing

5    Chrysler FCA.

6                SPECIAL MASTER ESSHAKI:  Thank you, sir.

7                MS. METZGAR:  Good morning.  Kim Metzgar from

8    Ice Miller for Subaru of Indiana Automotive.

9                SPECIAL MASTER ESSHAKI:  Thank you.

10               MR. HEMLOCK:  Good morning, Your Honor.

11   Adam Hemlock, Weil, Gotshal & Manges, on behalf of

12   defendants.

13        I would suggest that I meet with you along with

14   Mr. Cherry, who represents Denso, but I think he wants to

15   meet with you, sir.

16               SPECIAL MASTER ESSHAKI:  You have --

17               MR. HEMLOCK:  We have Bridgestone and Calsonic, but

18   it would be on behalf of the defendants generally.

19               SPECIAL MASTER ESSHAKI:  Okay.

20               MR. CHERRY:  Right.  I'm Steve Cherry from

21   Wilmer Hale on behalf of the Denso defendants.  My colleague,

22   Pat Carome, is here with me.

23        We filed a separate motion, but I believe we could

24   probably meet with you along with Mr. Hemlock.

25               SPECIAL MASTER ESSHAKI:  Okay.  Very good.

1    Everybody is obviously familiar with the Denso motion, which

2    is simply to defer ruling on the document requests, at least

3    as to Denso, for the time being because I believe they have

4    resolved their wire harness cases and they don't have a dog

5    in the anti-vibrational cases.

6            Please come up, sir.

7            MR. CHERRY:  Yes.  So in wire harnesses for -- so,

8    first of all, we have resolved all of our indirect purchaser

9    cases so we have no interest in any downstream discovery from

10   the OEMs.  As far as upstream discovery, in wire harnesses it

11   remains to be seen whether we will need that or not.  We

12   filed a summary judgment motion yesterday, which we are very

13   hopeful will be granted in which case we won't need any

14   discovery on wire harnesses for body ECUs but that there will

15   be no discovery needed for the wire harness case at all, and

16   so for that reason we have asked that that just be set aside

17   for right now.

18           SPECIAL MASTER ESSHAKI:  Now, what about

19   anti-vibrational parts and bearings, are you not in that

20   case?

21           MR. CHERRY:  We are not in either of those cases,

22   and I believe the parties will tell you they need that

23   discovery, but we are in 13 other direct purchaser cases that

24   don't have -- that aren't in -- as far along in discovery

25   yet, and what our motion proposes is what we are concerned

1    about is that some of those cases we may find ourselves in

2    the same situation as we are in wire harnesses where there is

3    a way we believe for the case to be decided without even

4    getting to class cert without the discovery that we are

5    talking about, and -- but that's all upstream.  And so the

6    downstream discovery, as I think Mr. Williams will tell you,

7    that applies to all cases so it needs to be done.

8            For upstream, we think that's more of a

9    case-by-case basis and while we may talk about sort of a

10   general understanding of what might be needed, we would

11   certainly ask that any production be stayed so that the

12   parties don't incur the burdens and the costs of that when it

13   may not be needed, and that there be some flexibility, some

14   understanding that when we get to that case it may be

15   possible to rein things in a little bit, we may learn we

16   don't need all that we were initially granted but we may also

17   find there is some targeted request for a particular case and

18   particularly a dispute with the direct purchasers that we

19   need a particular file about certain RFQs, that sort of

20   thing.

21           So I think we just -- what we are urging is there

22   be some staging for the efficiencies and the scheduling of

23   these cases and where they are in the process, and that while

24   we may discuss and agree upon sort of a template in terms of

25   what is to be produced we recognize that as we get to a case

1    there may be some need for some flexibility there.

2              SPECIAL MASTER ESSHAKI:  Now, a lot of -- I believe

3    a lot of the parties may disagree with you on staying this

4    matter right now, but what about the thought that I stay it,

5    as you request, just as to Denso and Furukawa and let it

6    continue, you will not share in the information that is

7    produced unless and until you change your mind and say we

8    need it, in which event you have to pay for your

9    proportionate share of the cost shifting that has been

10   imposed.

11             MR. CHERRY:  And, Your Honor, your suggestion goes

12   to all cases or to the wire harness case?

13             SPECIAL MASTER ESSHAKI:  Well, my initial reaction

14   would be -- you call it the wire harness case, I call it the

15   first three, okay, yes, the first three.

16             MR. CHERRY:  Well, for the first three --

17             SPECIAL MASTER ESSHAKI:  Because you don't have a

18   dog in two and three, it is just wire harness.

19             MR. CHERRY:  Well, in the wire harness case the

20   only parties in that case right now are the direct purchasers

21   and Denso, Furukawa and MELCO, Mitsubishi Electric.  The

22   direct purchasers are not a party to the subpoena.

23   Mitsubishi Electric was not a party to the motion to compel,

24   and Denso and Furukawa are both asking that we hold off on

25   this until there is rulings on summary judgment.  So there is

```
 1    nobody seeking that discovery -- well, let me say the only
 2    parties seeking discovery are in agreement that it should be
 3    held in abeyance until there is a ruling on summary judgment.
 4            SPECIAL MASTER ESSHAKI:  Okay.  Does anyone have
 5    opposition to that, please?
 6            (No response.)
 7            SPECIAL MASTER ESSHAKI:  All right.  Very good.
 8            MR. CHERRY:  Thank you, Your Honor.
 9            SPECIAL MASTER ESSHAKI:  All right.  Let's just go
10    in order.  Mr. Walters.
11            Robert, we are all set for now.
12            (Off-the-record mediation was held at 9:37 a.m.)
13                        -   -   -
14
15
16
17
18
19
20
21
22
23
24
25
```

*CERTIFICATION*

I, Robert L. Smith, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages comprise a full, true and correct transcript taken in the matter of Case No. 12-02311, on Tuesday, November 15, 2016.


*s/Robert L. Smith*
Robert L. Smith, RPR, CSR 5098
Federal Official Court Reporter
United States District Court
Eastern District of Michigan


Date:  12/06/2016

Detroit, Michigan