UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | : 12-md-02311<br>: Honorable Marianne O. Battani<br>: Special Master Gene J. Esshaki |
| **In Re: All Auto Parts Cases** | : 2:12-MD-02311-MOB-MKM |
| **THIS DOCUMENT RELATES TO: ALL AUTO PARTS CASES** | |

### SPECIAL MASTER'S ORDER REGARDING THE PARTIES' RENEWED MOTION TO COMPEL DISCOVERY FROM CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS AND THEIR AFFILIATED ENTITIES[1]

WHEREAS, on November 7, 2016, Plaintiffs and certain Defendants

(collectively, the "Parties"[2]) filed a Renewed Motion to Compel Discovery from

---

[1] The OEMs subject to this Order include the following entities: FCA USA LLC ("FCA"); General Motors Company, General Motors Holdings LLC, General Motors LLC; American Honda Motor Company, Inc., Honda Manufacturing of Indiana LLC, Honda North America, Inc., Honda of America Mfg., Inc., Honda of South Carolina Mfg., Inc., Honda Precision Parts of Georgia, LLC, Honda R&D Americas, Inc., Honda Research Institute USA, Inc., Honda Transmission Manufacturing of America, Inc.; Nissan North America, Inc.; Subaru of Indiana Automotive, Inc.; Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc.

[2] The "Parties" are End-Payor Plaintiffs ("EPPs"), Truck and Equipment Dealer Plaintiffs ("TEDPs"), the State of Florida, the State of Indiana, and certain Defendants in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.). *See* Case No. 2:12-md-02311-MOB-MKM, ECF Nos. 1495, 1500. Automobile Dealership Plaintiffs ("ADPs") filed a statement of concurrence, concurring in part with the requests and brief of the Parties. *See* Case No. 2:12-md-02311-MOB-MKM, ECF No. 1509. The Parties, together with the ADPs, are referred to collectively as the "Serving Parties" in this Order.

Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities (collectively, "OEMs"), seeking to compel responses to a narrowed list of requests from uniform subpoenas served on the non-party original equipment manufacturers and their affiliates (collectively "OEMs") pursuant to the Court's orders at ECF No. 277, Case No. 2:12-cv-00100 and ECF No. 949, Case No. 2:12-md-002311 (the "Renewed Motion").

WHEREAS, on November 22, 2016, the OEMs filed oppositions to the Renewed Motion;

WHEREAS, on December 2, 2016, the Parties filed a reply in support of the Renewed Motion;

WHEREAS, on November 15, 2016 and December 8, 2016, the Serving Parties and the OEMs participated in mediation sessions with Special Master Esshaki;

WHEREAS, after conducting several days of mediation with the Serving Parties and each OEM, a hearing was held by the Special Master on December 9, 2016, during which the Special Master heard argument and comments from the Parties and the OEMs, and issued rulings on the Renewed Motion.  This Order regarding the Parties' Renewed Motion memorializes the Special Master's rulings on these disputes.

**IT IS HEREBY ORDERED AS FOLLOWS:**

I. **DEFINITIONS**

    A.   "**Auto Part Product**" shall mean the specific automotive part to which each Lead Case (as defined in the March 22, 2106 Electronic Case Management Protocol Order, Master File No. 2:12-md-02311, ECF No. 1262), is related in the Auto Parts Cases.

    B.   "**Auto Parts Cases**" shall mean all cases that are consolidated or coordinated into In re Automotive Parts Antitrust Litigation and including, without limitation, and incorporating any cases that may be later-filed.[3]

    C.   "**Plaintiffs**" shall mean End Payors (EPPs), Automobile Dealer Plaintiffs (ADPs), Truck and Equipment Dealer Plaintiffs (TEDPs), the State of Florida, and the State of Indiana.

    D.   "**Defendants**" shall mean all Defendants in the Auto Parts Cases.

    E.   "**OEMs**" shall mean the entities defined in footnote 1 of this Order.

II. **RULINGS**

    A.   The Parties' Renewed Motion to Compel is granted, in part, and denied, in part.

---

[3] This Order applies to all Auto Parts Cases as defined in Section I.B., above.

    B.    The OEMs shall produce to the Serving Parties[4] data and documents in their possession, custody, or control that pertain to the categories in the Narrowed List,[5] with the following limitations, unless otherwise agreed among the Parties and an OEM prior to the date of this Order pursuant to discussion in mediation and/or meet and confer and/or pursuant to the Orders governing the scope of production for each of the OEMs, which represent negotiated agreements with each OEM.[6]

        a. The OEMs shall produce all data kept in live systems and any predecessor systems that are reasonably accessible and reasonably available. Where no data exists live or in reasonably accessible predecessor systems, the OEMs do not need to write code or take

---

[4] To the extent any non-Serving Parties seek to share in the discovery produced pursuant to this Order, or to any of the OEM-specific agreements or Orders, the Serving Parties reserve their rights to seek a share of those costs from such additional parties. [5] *See* ECF. Nos. 1495 & 1500 at pp. 8-9. Discovery specific to an Auto Part Product, *e.g.,* in the *Bearings* or *AVRP* cases, shall be produced only to Serving Parties (participating in (*i.e.,* not fully settled out of or otherwise dismissed from) the relevant Auto Parts Case at the time of production.

[5] *See* ECF. Nos. 1495 & 1500 at pp. 8-9. Discovery specific to an Auto Part Product, *e.g.,* in the *Bearings* or *AVRP* cases, shall be produced only to Serving Parties (participating in (*i.e.,* not fully settled out of or otherwise dismissed from) the relevant Auto Parts Case at the time of production.

[6] The Special Master is issuing contemporaneously with this Order a series of Orders governing the production obligations of each of the OEMs subject this Order. These OEM-specific Orders reflect the agreements reached between the Serving Parties and the OEMs during their meet-and-confer and mediation efforts. In the event of any conflict between this Order and any individual Order governing the scope of production for each of the OEMs, the individual Order specific to the OEM, shall prevail.

    steps to put non-reasonably accessible data into a reportable format.

b. There will be no wholesale custodial searches. Where responsive documents are believed to be kept in custodial files, each OEM and the Parties shall negotiate searches of the records for, at most, a small handful of custodians.

c. Regarding downstream information (or information that may be kept on a vehicle basis), the OEMs shall produce across all Auto Part Products at one time.

d. Regarding upstream information (or information that is kept on a part or supplier basis), the OEMs shall have the option to produce information for only the Bearings (2:12-cv-00500) and AVRP (2:12-cv-00800) Auto Parts Cases in the first instance, where doing so would be less burdensome and costly than a production across all Auto Part Products at one time, with production dates to be decided later for the remaining Auto Parts Cases.

e. Regarding information related to incentives and rebates offered by OEMs to dealers and end-consumers, no production will occur unless Judge Battani overturns the decision made by Special Master Esshaki on these issues in party discovery.

  f. As specified in the additional OEM Vehicle Pricing Information Confidentiality Order issued contemporaneously with this Order, the OEMs shall produce certain designated vehicle pricing methodology information subject to the terms of the protective orders in the Auto Parts Cases, as well as the additional OEM Vehicle Pricing Information Confidentiality Order issued contemporaneously with this Order.

  g. Regarding information to be produced by OEMs where such information comes from or belongs to dealerships or non-Defendant suppliers, notice must be given to any such dealership or non-Defendant supplier, and ten days must be given from the time of notice for such dealerships or non-Defendant suppliers to object to production. Production may not be made until any such objections are resolved.

C.  Regarding Cost-Sharing

  a. Regarding the Rule 30(b)(6) depositions that took place pursuant to Judge Battani's ruling at the June 23, 2016 hearing, the Serving Parties shall pay 60% of the OEMs' costs, including employee time for preparing and participating in the depositions, and reasonable outside counsel attorneys' fees, which will include legal

6

fees for preparing OEM witnesses to testify and outside counsel's attendance. The Serving Parties may object to the reasonableness of any claimed costs or fees.

b. Regarding the costs of the OEMs' compliance with this Order and the specific Orders governing the scope of production by each OEM, the Serving Parties shall pay 70% of the OEMs' costs, including employee time, costs of copying, and costs of collection and production.[7] The Serving Parties shall not pay any attorneys' fees. The OEMs shall work with the Serving Parties to find the lowest cost options available and will accept quotes provided by the Parties' vendors, if lower than quotes offered by the OEMs' selected vendors. The OEMs shall provide the Serving Parties with detailed cost estimates for each item to be produced, and the Serving Parties shall have the right to refuse to go forward with some or all of the production, if the Serving Parties so choose. No production shall take place before the Serving Parties have had a

---

[7] Costs associated with production of discovery specific to an Auto Part Product shall be borne by those Serving Parties participating in (*i.e.,* not fully settled out of or otherwise dismissed from) the relevant Auto Parts Case at the time of production. Costs associated with production of "downstream" discovery not specific to an Auto Part Product shall be borne by those Plaintiffs and Defendants participating in (*i.e.,* not fully settled out of or otherwise dismissed from) any individual Automobile Dealership or End-Payor action.

     chance to review cost estimates and until the Serving Parties understand exactly what information is to be produced.

  D. Neither this Order nor any agreement by any of the Serving Parties with respect to documents and data to be produced by the OEMs shall be deemed to waive or otherwise prejudice any arguments about the evidence and information obtained from the OEMs, including any argument that such evidence or information is irrelevant, inadmissible, or insufficient to establish any matter relevant to any claim or defense.  Each party expressly reserves its rights to assert any such arguments, without limitation, throughout the course of all cases in this MDL.

## III. AVAILABILITY OF APPEAL OF THIS ORDER

  This Order shall be subject to appeal to The Honorable Marianne O. Battani, pursuant to the Order Appointing A Master (ECF No. 792).  Any party that wishes to file an objection to this Order must do so within fourteen (14) days of the ECF filing date of this Order.  Responses shall be due ten (10) days after the date on which the objections are filed, and replies shall be due five (5) days after the date on which the responses are filed.  Failure to meet this deadline results in waiver of any objection to the Master's order, absent good cause shown.  Order Appointing A Master, § II.B.

DATED: January 3, 2017  /s/ Gene J. Esshaki  
GENE J. ESSHAKI, SPECIAL MASTER

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 4, 2017.

s/ Kay Doaks  
Case Manager