# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: Automotive Parts Antitrust Litigation<br><br>In re: All Parts<br><br>This document relates to:<br>All Cases | Master File No. 12-md-02311<br><br>Honorable Marianne O. Battani |

**TRUCK AND EQUIPMENT DEALER PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY HONDA'S OBJECTIONS TO SPECIAL MASTER'S DECEMBER 29, 2016 ORDER REGARDING MOTION TO COMPEL AGAINST HONDA**

**TABLE OF CONTENTS**

                                                                                                   **Page**

INTRODUCTION ............................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................1

I.      SERVING PARTIES' MOTION TO COMPEL AND RENEWED MOTION TO COMPEL ............................................................................................................................1

II.     SPECIFIC DISCUSSIONS ON ATVS AND SXSS BETWEEN HONDA AND TEDPS ..................................................................................................................................3

III.    SPECIAL MASTER'S DECEMBER 29, 2016 ORDER ......................................................6

ARGUMENT ...................................................................................................................................7

I.      THE SPECIAL MASTER CORRECTLY RULED THAT HONDA IS OBLIGATED TO PRODUCE DOCUMENTS AND DATA RELATING TO ATV'S AND SIDE BY SIDES. .............................................................................................8

         A.     The Subpoena's Definition of "Vehicle" Includes ATVs and SXSs ....................... 8

         B.     TEDPs' Class Action Complaints in Radiators, Starters and Alternators Specifically Mention ATVs as within TEDPs' Putative Class, and Honda Cannot Dispute that It Markets ATVs and SXSs for Agricultural Use .................. 9

         C.     Honda's Burden Arguments Fail ........................................................................... 11

II.     THE SPECIAL MASTER'S RULING THAT HONDA BEAR A PORTION OF THE COSTS OF PRODUCING THE DOCUMENTS AT ISSUE SHOULD BE UPHELD .............................................................................................................................12

CONCLUSION ..............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Federal Cases**

*In re: Bearings*, No. 2:12-cv-0050, ECF No. 212 (E.D. Mich. March 8, 2016) ............................. 8

*Dow Chem. Co. v. Reinhard*, 2008 WL 1968302 (S.D.N.Y. Apr. 29, 2008) ................................. 8

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002) ........................... 10

*United States v. Blue Cross Blue Shield of Mich.*, No. 10–CV–14155, 2012 WL
    4513600 (E.D. Mich. Oct. 1, 2012) ....................................................................................... 7

**Federal Statutes and Rules of Court**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 7

Fed. R. Civ. P. 45 ...................................................................................................................... 7, 10

Fed. R. Civ. P. 53(f)(5) .................................................................................................................. 8

## STATEMENT OF ISSUES PRESENTED

1. Did the Special Master properly exercise his discretion by compelling production of data and documents regarding Honda's purchase of parts for, and sale of, all-terrain vehicles ("ATVs") and side-by-side vehicles ("SXSs"), where (1) Honda markets such vehicles as agricultural vehicles and the definition of "Vehicle" in the Subpoena specifically includes agricultural vehicles, (2) ATVs are included within the definition of "Vehicles" in Truck and Equipment Dealer Plaintiffs' class action complaints, and (3) Honda has failed to substantiate its claims of burden?

Suggested Answer:   Yes

2. Did the Special Master properly exercise his discretion to order that Honda bear a portion of the cost of producing the documents at issue, where Honda has an interest in the litigation?

Suggested Answer:   Yes.

## **STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

- Fed. R. Civ. P. 26

- Fed. R. Civ. P. 45

Truck and Equipment Dealer Plaintiffs ("TEDPs") respond as follows to Non-Party Honda's Objections to Special Master's Order Regarding Motion to Compel Against Honda, Dated December 29, 2016 (ECF No. 1577, Case No. 12-2311).

## INTRODUCTION

Honda's Objections to the Special Master's December 29, 2016 Order compelling production of documents and data related to all-terrain vehicles ("ATVs") and side-by-side vehicles ("SXSs") should be overruled for three reasons: (1) Honda cannot dispute that it markets these vehicles for agricultural uses, and the Subpoena's definition of "Vehicle" and the definition of "Vehicle" in each of Truck and Equipment Dealers' class action complaints includes agricultural vehicles; (2) TEDPs' class action complaints in *Radiators*, *Starters* and *Alternators* specifically include ATVs in the definition of "Vehicle"; and (3) Honda fails to substantiate its claim of excessive burden.  Thus, TEDPs respectfully request that the Court overrule Honda's objections and affirm the Special Master's December 29, 2016 Order.

## FACTUAL BACKGROUND

### I. Serving Parties' Motion to Compel and Renewed Motion to Compel

This dispute arises from a Subpoena that was served on American Honda Motor Company, Inc. (as well as nine other Honda entities)[1] in late August 2015. That Subpoena resulted in the Serving Parties[2] bringing, and then renewing, a Motion to Compel against various OEMs, including Honda.  *See* ECF Nos. 1185, 1495, Case No. 12-md-2311.  TEDPs

---

[1] "Honda" collectively refers to the following entities: (1) American Honda Motor Company, Inc.; (2) American Honda Finance Corp.; (3) Honda Manufacturing of Indiana, LLC; (4) Honda North America, Inc.; (5) Honda of America Manufacturing, Inc.; (6) Honda of South Carolina Manufacturing, Inc.; (7) Honda Precision Parts of Georgia, LLC; (8) Honda R&D Americas, Inc.; (9) Honda Research Institute USA, Inc.; and (10) Honda Transmission Manufacturing of America, Inc.  *See* Honda's Objections, ECF No. 1598 at 1, n.2.

[2] "Serving Parties" collectively refers to End-Payor Plaintiffs, Truck and Equipment Dealer Plaintiffs, the State of Florida, the State of Indiana, and certain Defendants in Automotive Parts Antitrust Litigation, No. 2:12-md-02311-MOB-MKM (E.D. Mich.). Not all Defendants join this motion with respect to all OEMs. See ECF No. 1185 at Attachment A. The Auto Dealer Plaintiffs joined the original Motion to Compel but not the Renewed Motion to Compel.

1

incorporate by reference the factual background regarding the subpoena as described in the Serving Parties Renewed Motion to Compel (ECF No. 1495 at 2-11), and, in particular, the chronology of the Serving Parties' negotiations with Honda (Exhibit C to Renewed Motion to Compel ("Declaration of Lara E. Veblen Trager in Support of the Parties' Renewed Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, and in Particular Honda"), ECF No. 1495-3), which is also described below.

Through the Subpoena, TEDPs sought documents and data related to all vehicle parts in which TEDPs have filed cases: (1) *Wire Harnesses*;[3] (2) *Bearings*; (3) *Occupant Safety Systems*; (4) *Radiators*; and (5) *Starters* and *Alternators*. The definition of "Vehicle" in the Subpoena is as follows:

> an automobile or other motor Vehicle that is principally used for transporting from one to eight passengers and is designed to operate primarily on roads, typically with two or four wheels, including sedans, sport-utility Vehicles, motorcycles, and pickup trucks. In addition, to the extent that any of the Requests seek documents with respect to Wire Harness Systems or Bearings. Vehicle also includes medium-duty (Class 4, 5, 6, & 7) trucks, heavy-duty (Class 8) trucks, buses, commercial Vehicles, construction equipment, mining equipment, agricultural equipment, railway Vehicles, and other similar Vehicles.

*See* Subpoena to OEMs, ECF No. 1186, Ex. A at 10. As of August 17, 2015—the date of the Subpoena to Honda—TEDPs had not yet filed class action complaints in the *Radiators*, *Starters* or *Alternators* actions. Nevertheless, as more *Auto Parts* cases were filed (including three Truck and Equipment Dealer actions), the Serving Parties made it clear that the Subpoena to Honda was intended to cover later-filed parts cases, and Honda did not object. In particular, the Serving Parties stated that they "intend to move to compel discovery from the SSEs with respect to *all of the auto parts at issue in the MDL litigation* . . . ." Letter from Sheldon Klein to Colin

---

[3] Settlements with all Defendants in the Wire Harnesses case received Final Approval from the Court on December 28, 2016. *See* Case No. 14-cv-14451-MOB-MKM, ECF No. 127. TEDPs are no longer seeking responsive information for wire harness parts from Honda.

2

Kass dated January 13, 2016 at page 2, ECF No. 1186, Ex. P (emphasis added). Moreover, Honda was always on notice that TEDPs were seeking data and documents from Honda. The Serving Parties stated that "[w]ith respect to SSEs involved in the manufacture of Trucks and Equipment, the Serving Parties seek the same prioritized requests and intend to move to compel on the same items as other SSEs." *Id.*; *see also* chart attached to Original Motion to Compel listing all OEMs against whom Serving Parties were moving, ECF No. 1185 at Ex. A. Moreover, this is the only interpretation of the Subpoena that is consistent with this Court's direction to serve a single subpoena on the third party OEMs while still accommodating later filed parts cases, which have been filed not only by TEDPs but by other plaintiff groups since the Subpoena was served.

## II. Specific Discussions on ATVs and SXSs between Honda and TEDPs

From May 2, 2016 through November 18, 2016, TEDPs attempted to meet and confer with Honda in order to obtain data and documents related to Honda's purchase of parts for, and pricing and sale of, Honda ATVs and SXSs.[4] *See, e.g.*, Exhibit A (letter from TEDPs' counsel to Honda's counsel dated November 4, 2016, also attached to Serving Parties' Renewed Motion to Compel, filed Nov. 7, 2016 (ECF No. 1495-3, Ex. AA)).

On May 2, 2016, a meet-and-confer call was held between the Serving Parties and Honda. During that call, TEDPs asked about Honda's plan to produce documents, data, and/or a 30(b)(6) witness concerning Honda's ATVs and SXSs. At that point counsel for Honda stated

---

[4] ATVs, also known as "quads," are "four-wheel vehicles designed exclusively for use on off-road terrain, primarily for a single rider." The Handbook! of Michigan Off-Road Vehicle Laws at 7, *available at* https://www.offroad-ed.com/assets/pdf/handbook/mi_handbook_entire.pdf (2016 ed.) (last accessed Jan. 21, 2017).

Side-by-sides, also known as UTVs, are "a small 2-6 person four-wheel drive off-road vehicle . . . ." https://en.wikipedia.org/wiki/Side_by_Side_(UTV) (last accessed Jan. 21, 2017). Side-by-sides differ from ATVs in that side-by-sides "typically have a side-by-side seating arrangement, many have seat belts and roll-over protection, and most have a cargo box at the rear of the vehicle." *Id.* A side-by-side manufactured and sold by Honda is depicted at Exhibit C.

3

that she would get back to the Serving Parties on that topic, but noted that Honda's DOJ production was limited to passenger vehicles. *See* Ex. A.

During the next meet-and-confer call between the Serving Parties and Honda, on June 8, 2016, counsel for Honda stated that its ATV and SXS business is separate from Honda's passenger vehicle business. Counsel also noted that Honda had been unaware that its ATV and SXS businesses were at issue in TEDPs' cases, and stated that Honda does not agree that those businesses are properly a part of TEDPs' cases. In addition, counsel for Honda stated that the ATV and SXS businesses are "too small" relative to the other vehicles in TEDPs' cases. Accordingly, Honda objected to producing any documents concerning, or a 30(b)(6) witness to testify regarding its ATV and SXS businesses. *See id*.

Months thereafter but before Honda had sat for a Rule 30(b)(6) deposition, on October 13, 2016, Honda's counsel confirmed that Honda would not produce a 30(b)(6) witness and/or documents regarding its ATV and SXS vehicles. TEDPs responded by noting that these vehicles are specifically alleged in certain of TEDPs' complaints. Honda did not change its position. *See id*.

In their November 4, 2016 letter, TEDPs responded, first, by clarifying that ATVs and SXSs are part of TEDPs' cases because ATVs and SXSs are within the definition of "Vehicle" in the Subpoena and TEDPs' class action complaints. *See* TEDPs' *Starters & Alternators* Compl., 2:15-cv-14096-MFL-RSW, ECF Doc. No. 1 (Complaint), 2:15-cv-00707-MOB-MKM ECF Doc. No. 13 (First Amended Complaint) (TEDPs "file this Complaint on behalf of themselves and all other similarly situated dealers…of …agricultural equipment (*including ATVs designed and/or marketed for agricultural use*)….") (emphasis added); TEDPs' *Radiators* Compl., 2:15-cv-14097-MOB-MKM, ECF Doc No. 1 (same); *see also* TEDPs' *Bearings, Wire Harnesses*, and *Occupant Safety Restraint Systems* Compls. (pleading claims on behalf of dealers of agricultural

4

equipment). *See id*. Honda's ATVs and SXSs are clearly marketed and designed for agricultural applications, among others. *See id*.; *see also* Exhibit C (marketing material from hondanews.com showing a 2015 Honda Pioneer SXS specifically marketed for agricultural use).

Second, TEDPs explained that the information was relevant because TEDPs possessed information that Honda ATV and SXS vehicle components were the subject of the illegal bid-rigging and price-fixing that TEDPs have alleged in TEDPs' complaints. *See* Ex. A.

Third, TEDPs explained that because American Honda Motor Company, Inc., which is subject to Judge Battani's Order on the Motion to Compel and the Rule 30(b)(6) deposition subpoenas issued thereafter, is the Honda entity manufacturing and/or selling Honda's ATVs and SXSs, it was clear that Honda's obligations to produce documents and data included ATVs and SXSs. *Id*.

For these reasons, TEDPs informed Honda that it "would continue to pursue documents, data, and, if necessary, a Rule 30(b)(6) witness, from Honda for its ATV and SXS businesses." *See* Ex. A. But Honda never responded to TEDPs' November 4, 2016 letter. After Honda produced passenger car documents and data to TEDPs on November 16, 2016, representing that the production contained "[q]uarterly cost quotations for all vehicles sold by American Honda Motor Company, Inc. since 1998," TEDPs asked whether the production included information for Honda's ATVs and SXSs. *See* Emails from Justina Sessions to William Shotzbarger dated November 16-18, 2016, attached hereto as Exhibit B. At that point, in response to a question from TEDPs, Honda stated:

> In collecting and producing materials responsive to the subpoena, Honda used the definition of "Vehicle" provided in the subpoena, which is "an automobile or other motor Vehicle that is principally used for transporting from one to eight passengers and is designed to operate primarily on roads . . . ." As I have previously told you, ATVs and side-by-sides do not fall within the serving parties' definition of vehicle and, therefore, are outside the scope of the subpoena. Moreover, even if ATVs and side-by-sides did fall

5

> within the scope of the subpoena, Honda would object to the request as overbroad and unduly burdensome, as the additional effort to collect and produce data for ATVs and side-by-sides– which would be separate from and in addition to the already monumental burden posed by the requests with respect to "Vehicles" – is unjustified, particularly in light of the small number of ATVs and side-by-sides at issue in the case and Honda's even smaller share of that production.

See Ex. B.

### III. Special Master's December 29, 2016 Order

On December 9, 2016, the Special Master granted in part and denied in part the Serving Parties' Renewed Motion to Compel. During oral argument specifically on the ATVs and SXSs issue, TEDPs presented marketing material from hondanews.com showing that the 2015 Honda Pioneer SXS was specifically marketed for agricultural use. *See* Exhibit C; *see also* Dec. 9, 2016 Hrg. Tr. 87:4-23. After hearing oral argument from TEDPs and Honda, the Special Master ordered:

1. In accordance with the Special Master's Order on the Renewed Motion and/or Honda's agreement reached with the Parties with regard to the Renewed Motion [ECF Nos. 1607-1608], Honda shall produce otherwise responsive data and documents related to Honda ATVs and SXSs.

2. Honda shall produce this information to TEDPs and Defendants. The confidentiality of Honda's production shall be in accordance with the Order entered by the Special Master on the Renewed Motion [ECF No. 1579]. Any third-party notice issues shall be handled in accordance with the Order entered by the Special Master on the Renewed Motion [ECF No. 1584].

3. Data and documents regarding the upstream purchases of ATVs and SXSs vehicle parts by Honda can be limited to the five (5) active Auto Parts cases in which

6

  TEDPs have filed, i.e., (1) *Bearings*, (2) *Occupant Safety Systems*, (3) *Radiators*, (4) *Starters*, and (5) *Alternators*.

4. Data and documents regarding downstream sales of ATVs and SXSs shall be limited to documents and data that are (i) maintained in the ordinary course of Honda's business; and (ii) reasonably accessible, in accordance with the Order entered by the Special Master on the Renewed Motion [ECF No. 1584].

5. Honda shall have the option to first produce information for the *Bearings* case where doing so would be less burdensome and costly than a production across all five TEDPs' Auto Parts cases at one time, with production dates to be decided later for the remaining Auto Parts cases.

6. Cost-sharing shall be in accordance with the Order entered by the Special Master on the Renewed Motion [ECF No. 1584].

*See* December 29, 2016 Order Regarding Motion to Compel Against Honda, ECF No. 1577. Honda objected on January 12, 2017. *See* ECF No. 1598.

## ARGUMENT

  Honda's Objections attempt to distort the factual background surrounding this dispute and are a last-ditch effort to avoid producing data and documents it did not realize was within the scope of the Subpoena. Thus, the Court should overrule Honda's objections entirely.

  A subpoena to a non-party under Rule 45 is governed by the same standards as Rule 26, which states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also United States v. Blue Cross Blue Shield of Mich.*, No. 10–CV–14155, 2012 WL 4513600 at *5 (E.D. Mich. Oct. 1, 2012) ("A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26."). This is especially true

7

where, as here, Honda has a strong interest in and is deeply tied to the outcome of the litigation. *See, e.g.*, *Dow Chem. Co. v. Reinhard*, 2008 WL 1968302, at *2 (S.D.N.Y. Apr. 29, 2008) (recognizing that the Rules are intended to protect the "quintessential, innocent, disinterested bystander" who has no stake in the litigation).

Under Fed. R. Civ. P. 53(f)(5), the Court "may set aside a master's ruling on a procedural matter only for an abuse of discretion." *See also* Opinion and Order Denying Defendants' Objection to and Motion to Modify the Special Master's Order Regarding Locations of Depositions at 5, *In re: Bearings*, No. 2:12-cv-0050, ECF No. 212 (E.D. Mich. March 8, 2016) (reviewing the Special Master's decision for abuse of "the vast discretion afforded a district court in supervising discovery").

> **I.    The Special Master correctly ruled that Honda is obligated to produce documents and data relating to ATV's and Side by sides.**
>
> **A.    The Subpoena's Definition of "Vehicle" Includes ATVs and SXSs**

In its objections, Honda argues that "the subpoenas served on Honda did not cover ATVs and side-by-sides." *See* Honda Objections at 1.

As set forth above, the definition of "Vehicle" in the Subpoena is:

> an automobile or other motor Vehicle that is principally used for transporting from one to eight passengers and is designed to operate primarily on roads, typically with two or four wheels, including sedans, sport-utility Vehicles, motorcycles, and pickup trucks. *In addition, to the extent that any of the Requests seek documents with respect to Wire Harness Systems or Bearings. Vehicle also includes* medium-duty (Class 4, 5, 6, & 7) trucks, heavy-duty (Class 8) trucks, buses, commercial Vehicles, construction equipment, mining equipment, *agricultural equipment*, railway Vehicles, *and other similar Vehicles*.

*See* Subpoena to OEMs, ECF No. 1186, Ex. A at 10 (emphasis added).

The Subpoena's definition of Vehicle includes these vehicles. First, ATVs and SXSs are often used as a type of agricultural equipment. As Exhibit C shows, their features allow uses in

8

both recreational and agricultural settings. The Honda SXS depicted in Exhibit C is parked in a barn, surrounded by bales of hay, with fence-making materials secured to its flatbed on the back. Despite its arguments to the contrary, Honda itself clearly thinks that its ATVs and SXSs are multi-functional enough to allow farmers to traverse all types of terrain in order to perform agrarian tasks such as making a fence. Thus, they are a type of agricultural equipment.

ATVs and SXSs are also recognized in the industry to be used for agricultural purposes. For example, the Handbook! of Michigan Off-Road Vehicle Laws specifically contemplates the use of ATVs for agricultural tasks. The Handbook! States: "No one under the age of 10 may operate any 4-wheel ATV *except* on private land while performing farm-related work operations." *See* The Handbook! of Michigan Off-Road Vehicle Laws (2016 ed.) at 30, *available at* https://www.offroaded.com/assets/pdf/handbook/mi_handbook_entire.pdf (last accessed Jan. 21, 2017) (emphasis in original). Thus, the Michigan Department of Resources has contemplated the use of ATVs for "farm-related work operations." *Id*.

Further, the definition of "Vehicle" in the Subpoena also contains a catch-all provision: "and other similar vehicles." Even if the Court finds that ATVs and SXSs are not included within the definition of agricultural equipment, then an ATV or SXS would certainly fall within a catch-all category for "other similar vehicles." After all, these vehicles are clearly used on farms and ranches. Hence, there can be no dispute that the Subpoena's Definition of "Vehicle" was Sufficiently Broad to Encompass ATVs and SXSs.

    **B.**    **TEDPs' Class Action Complaints in *Radiators*, *Starters* and *Alternators* Specifically Mention ATVs as within TEDPs' Putative Class, and Honda Cannot Dispute that It Markets ATVs and SXSs for Agricultural Use**

The Court should also overrule Honda's objections because TEDPs' class action complaints filed in the *Radiators*, *Starters*, and *Alternators* cases expressly include ATVs among the definition of "Truck and Equipment" vehicles. And as stated in TEDPs' complaints, Honda

9

cannot dispute that it (and other OEMs) market ATVs and SXSs for agricultural uses.  *See* Ex. C.

Throughout the meet-and-confer process, TEDPs pointed out to Honda that ATVs and SXSs were included in the definition of "Truck and Equipment" vehicles as pleaded in TEDPs' complaints.  *See* Ex. A. Pursuant to TEDPs' *Starters & Alternators* Complaint, Case No. 2:15-cv-00707-MOB-MKM ECF No. 13 (First Amended Complaint), TEDPs filed their Complaint "on behalf of themselves and all other similarly situated dealers…of …agricultural equipment (*including ATVs designed and/or marketed for agricultural use*) . . . ." (emphasis added). This same definition appears in TEDPs' *Radiators* Complaint, 2:15-cv-14097-MOB-MKM, ECF Doc No. 1. Further, under TEDPs' *Bearings, Wire Harnesses*, and *Occupant Safety Restraint Systems* Complaints, TEDPs pled claims on behalf of dealers of agricultural equipment.  *See* Case No. 2:14-cv-14451-MOB-MKM, ECF No. 64 (Wire Harnesses); Case No. 2:14-cv-13356-MOB-MKM, ECF No. 23 (Bearings); and Case No. 2:15-cv-12050-VAR-APP, ECF No. 1 (Occupant Safety Systems).

With regard to how the definition of the TEDPs' class should be interpreted, "the plaintiff is the 'master of the complaint' . . . ."  *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). Accordingly, Honda should not be allowed to interpret the Subpoena—or TEDPs' complaints—in a way that runs afoul of its obligations to produce responsive information in response to the Subpoena under Rule 45.  Accordingly, TEDPs' interpretation of agricultural equipment should control, and the Court should uphold the Special Master's December 29, 2016 Order compelling production of information on Honda's ATVs and SXSs.

In addition, Honda cannot dispute that it markets ATVs and SXSs for agricultural uses as specifically pled in TEDPs' *Radiators* and *Starters* and *Alternators* complaints.  The picture of

10

the Honda SXS parked inside a barn in Exhibit C speaks for itself. Thus, despite Honda's arguments to the contrary, information for Honda's ATVs and SXSs was properly sought by the Subpoena, which the Special Master enforced.

### C. Honda's Burden Arguments Fail

Honda's arguments that the burden to produce ATV and SXS information would outweigh TEDPs' "purported" need for ATV and SXS data from Honda fall short of what is required by Rule 26. According to Honda, "Honda's ATV and side-by-side production is minuscule compared to its automobile production. From 2004 to 2015, Honda sold approximately 17 million cars and light trucks in the United States." Honda's Objections at 3. Nevertheless, Honda does admit that "[f]rom 2004 to 2015, Honda manufactured approximately 1.9 million ATVs and side-by-sides in the United States." *Id*. at 2. Approximately 10% of them were exported. *Id*. Based on these statistics, Honda argues that the "volume of Honda's ATV and side-by-side business is a small portion of the TEDPs' alleged market." *Id*. at 9.

Just because the ATV and SXS markets are smaller than the medium- and heavy-duty truck, commercial vehicle or tractor markets does not make this information irrelevant or unproportional. Under Rule 26, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). TEDPs recognize that Honda has produced a significant amount of data with regard to its passenger car business. 1.9 million vehicles, however, is a material number of ATVs and SXSs sold in an eleven-year period. As a comparison, in 2015, less than 230,000 ATVs were sold by all ATV OEMs combined, not just Honda. *See* Robin Hartfiel, ATV/UTV Market Overview (Feb. 25, 2016), *available at* http://www.motorcyclepowersportsnews.com/atv-utv-overview/ (last accessed Jan. 21, 2017).

11

Furthermore, as stated in TEDPs' November 4, 2016 correspondence to Honda and during oral argument, TEDPs possess information that *Honda-manufactured* ATVs and SXSs were the subject of illegal price-fixing and bid-rigging that TEDPs have alleged in its Auto Parts complaints. *See* Ex. A; Hrg. Tr. at 91:24-92:7. Therefore, information on Honda's 1.9 million ATVs and SXSs is undoubtedly proportional to the needs of TEDPs in prosecuting these cases on behalf of Truck and Equipment dealers that also sold ATVs and SXSs.

## II. The Special Master's Ruling that Honda Bear a Portion of the Costs of Producing the Documents at Issue Should be Upheld

First, Honda's objection to the Special Master's ruling on cost sharing is premature. In his December 29, 2016 ruling on Honda ATVs and SXSs, the Special Master ordered that "cost-sharing shall be in accordance with the Order entered by the Special Master on the Renewed Motion [to Compel]." ECF No. 1577 at 5. The Special Master did not enter an order ruling substantively on the cost sharing issue until January 4, 2017. *See* ECF No. 1584. The OEMs, including Honda, filed an objection to that order on January 18, 2017. *See* ECF No. 1602. The Serving Parties, including TEDPs, have until January 30, 2017 to respond to the OEMs' Objection, and TEDPs reserve their right to do so. In any case, Honda is wrong that it should not be required to bear any portion of the cost of producing the documents at issue.

The Special Master's order on cost sharing provides:

> Regarding the costs of the OEMs' compliance with this Order and the specific Orders governing the scope of production by each OEM, the Serving Parties shall pay 70% of the OEMs' costs, including employee time, costs of copying, and costs of collection and production. The Serving Parties shall not pay any attorneys' fees. The OEMs shall work with the Serving Parties to find the lowest cost options available and will accept quotes provided by the Parties' vendors, if lower than quotes offered by the OEMs' selected vendors. The OEMs shall provide the Serving Parties with detailed cost estimates for each item to be produced, and the Serving Parties shall have the right to refuse to go forward with some or all of the production, if the Serving Parties so choose. No production shall take place before the Serving Parties have had a

> chance to review cost estimates and until the Serving Parties understand exactly what information is to be produced.

ECF No. 1584 at 7-8. But now Honda argues that the Serving Parties' argument for cost-sharing—that Honda has an interest in the outcome of these cases as an absent member of the direct purchaser class—does not apply. This argument is meritless.

The direct purchaser class does not distinguish between direct purchasers of auto parts for passenger cars and direct purchasers of auto parts for trucks and equipment. Pursuant to the Direct Purchaser Plaintiffs' Second Consolidated Amended Class Action Complaint in *Bearings*, "Plaintiffs bring this lawsuit as a class action on behalf of direct purchasers who, during the Class Period, *purchased Bearings in the United States from one or more of the Defendants*." Case No. 2:12-cv-00501-MOB-MKM, ECF No. 136. "The term 'Bearings,' as used in this complaint, refers to both automotive and industrial machinery bearings. Examples include, but are not limited to, the following products: ball bearings, tapered roller bearings, roller bearings, and mounted bearings." *Id*. at 3. Based on TEDPs' own experience litigating the *Bearings* case, "automotive" bearings are not limited to solely passenger cars. In fact, automotive bearings often encompass Truck and Equipment bearings—including bearings that are used in ATVs and SXSs.

Hence, the Court should overrule Honda's objection to Special Master Esshaki's ruling on cost sharing.

13

## CONCLUSION

For these reasons, TEDPs respectfully request that Honda's Objections be overruled.

Dated: January 23, 2017

Respectfully submitted,

/s/ J. Manly Parks
Wayne A. Mack
J. Manly Parks
Andrew R. Sperl
Erica Lee Fruiterman
William Shotzbarger
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA   19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com
arsperl@duanemorris.com
efruiterman@duanemorris.com
wshotzbarger@duanemorris.com

*Class Counsel for Truck and Equipment Dealer Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that today I filed the foregoing Truck and Equipment Dealer Plaintiffs' Memorandum of Law in opposition to Non-Party Honda's Objections to Special Master's Order Regarding Motion to Compel Against Honda, Dated December 29, 2016 with the Clerk of the Court using the ECF system which will send notification of such filing to all of the ECF participants in this action.

Dated: January 23, 2017

/s/ J. Manly Parks
J. Manly Parks