# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | 2:12-md-02311<br>Honorable Marianne O. Battani<br>Special Master Gene J. Esshaki |
| In Re: All Auto Parts Cases | **FILED UNDER SEAL**<br><br>HIGHLY CONFIDENTIAL –<br>OUTSIDE ATTORNEYS ONLY |
| THIS RELATES TO:<br><br>ALL AUTO PARTS CASES | **ORAL ARGUMENT REQUESTED** |

## SERVING PARTIES' OPPOSITION TO GENERAL MOTORS' OBJECTION TO SPECIAL MASTER'S ORDERS COMPELLING PRODUCTION OF CERTAIN CONFIDENTIAL COMMERCIAL, TRADE SECRET PRICING DOCUMENTS

## REDACTED

## QUESTIONS PRESENTED

1. Whether the Special Master erred in compelling General Motors, (and other OEMs joining in their objection) to produce certain vehicle pricing documents.

Answer: No.

2. Whether the Special Master erred in going beyond the already-sufficient protective orders entered in these cases to impose additional restrictions on access to and handling of vehicle pricing documents, including limiting the Parties' counsel's access to the documents to in-person review in the office of, for each Lead Case, only one designated "custodian firm," thereby imposing significant costs and impractical limitations on counsel's ability to access information critical to their clients' claims and defenses.

Answer: Yes.

## STATEMENT OF CONTROLLING AND MOST APPROPRIATE AUTHORITY

*Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985)

*Deford v. Schmid Prod. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987)

*NuCorp, Inc. v. Does 1-24*, Case No. 2:11-CV-15222, 2012 U.S. Dist. LEXIS 187547, at *19-20 (E.D. Mich. Oct. 18, 2012)

Fed. R. Civ. P. 45(c)(3))

## TABLE OF AUTHORITIES

### Cases

*Applied Signal Tech., Inc. v. Emerging Mkts. Commc'n*,
 No. C-09-02180 SBA (DMR), 2011 WL 197811 (N.D. Cal. Jan. 20, 2011) ........................... 18

*Cherdak v. Koko Fitclub, LLC*,
 No. 14-10371-IT, 2015 U.S. Dist. LEXIS 54621 (D. Mass. Apr. 27, 2015) ........................... 19

*Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*,
 107 F.R.D. 288 (D. Del. 1985) ............................................................................................. 6

*Deford v. Schmid Prod. Co., a Div. of Schmid Labs.*,
 120 F.R.D. 648 (D. Md. 1987) ............................................................................................. 15

*Echostar Commc'ns Corp. v. News Corp.*,
 180 F.R.D. 391 (D. Colo. 1998) .......................................................................................... 5

*Elec. Books Antitrust Litig.*,
 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ..................................................................... 11

*In re Automotive Parts Antitrust Litig. (Wire Harness Sys.)*,
 No. 2:12-cv-102, Opinion and Order Granting in Part and Denying in Part Collective
 Defendants' Motion to Dismiss Indirect Purchaser Actions (E.D. Mich. June 6, 2013) ........... 7

*In re Domestic Drywall Antitrust Litig.*,
 2014 U.S. Dist. LEXIS 67762 (E.D. Pa. 2014) ................................................................... 13

*In re Lithium Ion Batteries Antitrust Litig.*,
 No. 4:13-md-02420-YGR, MDL No. 2420 (N.D. Cal.) (ECF 1553, field Oct. 31, 2016) ....... 11

*In re Mushroom Direct Purchaser Antitrust Litig.*,
 2012 WL 298480 (E.D. Pa. Jan. 31, 2012) ......................................................................... 13

*In re Ohio Execution Protocol Litig.*,
 __ F.3d __, 2016 WL 749863 (6th Cir. Dec. 30, 2016) ....................................................... 18

*In re Optical Disk Drive Antitrust Litig.*,
 2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ......................................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 267 F.R.D. 583 (N.D. Cal. 2010) ......................................................................................... 11

*Inventor Holdings, LLC v. Wal-Mart Stores, Inc.*
   2014 WL 4370320 (D. Del. 2014) ............................................................................. 20

*Jagex Ltd. v. Impulse Software,*
   273 F.R.D. 357 (D. Mass 2011) ................................................................................. 19

*Leader Technologies Inc. v. Facebook Inc.*
   2009 WL 3021168 (D. Del. September 4, 2009) ....................................................... 20

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners,*
   294 F.R.D. 87 (S.D. Ohio 2013) ................................................................................ 18

*Nucorp, Inc. v. Does 1-24,*
   No. 2:11-cv-15222, 2012 U.S. Dist. LEXIS 187547 (E.D. Mich. Oct. 18, 2012) ............... 6, 18

*Pause Tech., Inc. v. Tivo Inc.,*
   No. 01-11657-PBS, 2003 U.S. Dist. LEXIS 27253 (D. Mass. June 18, 2003) ....................... 19

*Pragmatus AV, LLC v. Citrix Sys., Inc.,*
   No. 11-62484-CIV, 2012 U.S. Dist. LEXIS 190856 (S.D. Fla. Jul. 18, 2012) ...................... 19

*Rensselaer Polytechnic Inst. v. Apple Inc.,*
   2014 WL 1871866 (N.D.N.Y. 2014) ......................................................................... 20

*Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*
   2005 WL 2045818 (W.D. Mich. Aug. 24, 2005) ..................................................... 12

*Steede v. Gen. Motors LLC,*
   No. 2:11-cv-02351-STA-dkv, 2012 U.S. Dist. Lexis 81103 (W.D. Tenn., Apr. 3, 2012) ....... 17

*Tinman v. Blue Cross & Blue Shield of Michigan,*
   176 F. Supp. 2d 743 (E.D. Mich. 2001) ................................................................... 15

*Universal Delaware, Inc. v. Comdata Network, Inc.,*
   2011 WL 1085180 (M.D. Tenn. Mar. 21, 2011) ............................................... 6, 12

*Waelde v. Merck, Sharp & Dohme,*
   94 F.R.D. 27 (E.D. Mich. 1981) ............................................................................... 16


Rules
Fed. R. Civ. P. 26(c)(1)(G) ................................................................................... 18
Fed. R. Civ. P. 53(f)(3), and (4) ............................................................................. 5

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

ARGUMENT ........................................................................................................ 5

I.  Legal Standard ........................................................................................... 5

II.  GM's Vehicle Pricing Documents are Relevant and Necessary .......................................... 6

III.  The Other Types of Documents Offered by GM are not Substitutable for GM's
Vehicle Pricing Documents ........................................................................... 8

    A.  GM's Testimony Regarding Price-Setting is Not a Substitute for Production
of GM's Vehicle Pricing Documents and the Parties' Analyses of Those
Documents ........................................................................................ 9

IV.  The Need for The GM Pricing Documents Outweighs Any Potential Harm .............. 13-14

V.  The Special Master's Order Goes Too Far Because GM Has Not Demonstrated A
Need For Protections Beyond Those Contained in The Protective Orders In These
Matters ...................................................................................................... 17

CONCLUSION ..................................................................................................... 21

The Parties[1] respectfully submit this response to General Motors' ("GM") Objection to Special Master's Orders Compelling Production of Certain Confidential Commercial, Trade Secret Pricing Documents (Highly Confidential – Attorneys' Eyes Only), *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-02311 (E.D. Mich. Jan. 12, 2017), ECF No. 1600 (hereinafter "GM Objection Br." or "ECF No. 1600").

## **INTRODUCTION**

Although GM uses , the Serving Parties' request for pricing-related documents is routine in indirect price-fixing actions, and these very same types of documents are produced without incident and without any of the resistance that has taken place here.

Without any support, GM claims that ("Vehicle Pricing Documents") are different from those sought in all other price-fixing cases, and that they are somehow more secret or more valuable and, therefore, GM should not be required to produce them at all.

Yet, every business must decide the prices at which it wishes to try to sell its products or services. Setting prices is an ordinary, everyday business function and it is at the heart of the claims and defenses in these cases.

---

[1] The Serving Parties that join in this response include End-Payor Plaintiffs ("EPPs"), Truck & Equipment Dealer Plaintiffs ("TEDPs"), and certain non-settled Defendants in all indirect parts cases in Automotive Parts Antitrust Litigation, No. 2:12-md-02311-MOB-MKM (E.D. Mich.). Please note that EPPs do not object to the additional provisions set forth in the Special Master's Order Regarding the Production of Certain Vehicle Pricing Information of Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities, *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. Dec. 29, 2016), ECF No. 1579, regarding production and handling of pricing documents, but join in this response as to Question Presented #1, and in the collective response against imposing any additional restrictions suggested by GM in its Objection.

███████████████████████████████████ The documents at issue in

this objection are not, ██████████████████████, the equivalent of the recipe for

Coca-Cola or the source code for a software program, the theft or disclosure of which would allow

competitors to replicate the company's unique product or invention.  GM makes no claim, for

example, that if its Vehicle Pricing Documents are disclosed, others will suddenly be able to make

and sell Corvettes, Impalas, Malibus, Cruzes, Escalades, and other GM vehicles, or copy any

engineering or technical developments in them.  Not only are GM's Vehicle Pricing Documents

the same kind of documents that are routinely produced in similar price-fixing cases all the time,

but they are the same kind that are routinely produced under the same kind of protective orders

that exist in the auto parts cases here.  In fact, the protective orders in these cases are crafted

specifically to protect the types of documents and information sought from GM and the other

OEMs, including the Vehicle Pricing Documents that GM attempts to withhold.

      The Special Master was correct to order the production of the Vehicle Pricing Documents.

Respectfully, however, certain Parties, including Defendants who would be most affected by the

proposed restrictions, do not agree that the additional unprecedented restrictions on access to those

documents are necessary here, where the protective orders are more than sufficient, and where

imposing such above-and-beyond, extraordinary measures is unprecedented.  Counsel for the

Parties cannot recall any case (and collectively they have been involved in nearly all indirect price-

fixing cases in recent history) where such measures were imposed.  While the Parties respect the

Special Master's decision to order additional provisions to allay GM's concerns, GM's claim that

*more* unprecedented restrictions should be imposed is beyond the pale, particularly, when most of

the requested documents relate to pricing decisions made years ago.  Indeed, the Serving Parties

did not even request *current* pricing information or pricing information within the last year.

Pricing documents, such as GM's Vehicle Pricing Documents, are highly relevant to these cases. They go to the very heart of issues of class certification, pass through, and damages, and will support the Parties' claims and defenses. Neither GM's other documents to be produced, nor the testimony of its employees, can take the place of the highly relevant information contained in its Vehicle Pricing Documents.

The Parties respectfully request that GM's Objection be denied and that the Court order GM's Vehicle Pricing Documents be produced with no additional restrictions beyond those already imposed by the Special Master.[2]

## BACKGROUND

In the interest of brevity, the Serving Parties will not recount the long history leading up to the renewed motion to compel considered by and argued before the Special Master in December 2016. Suffice it to say that after extended briefing, mediations, and argument, the Special Master ordered the OEMs subject to the renewed motion to compel to produce reasonably available Vehicle Pricing Documents, but imposed significant limitations on the Serving Parties' access to those documents. *See* Special Master's Order Regarding the Production of Certain Vehicle Pricing Information of Certain Non-Party Original Equipment Manufacturers and their Affiliated Entities, 2:12-md-02311 (E.D. Mich. Dec. 29, 2016), ECF No. 1579 (hereinafter "Order" or "ECF No. 1579").

---

[2]   Defendants Mitsuba Corporation and American Mitsuba Corporation, Panasonic Corporation of North America, Panasonic Corporation, TRAM, Inc., Tokai Rika Co., Ltd., NTN Corporation, NTN USA Corporation, and Sanden International (USA), Inc., contend that some of the restrictions imposed by the Master should be removed. *See* Certain Defendants' Objection to the Special Master's December 29, 2016 Order Regarding the Production of Certain Vehicle Pricing Information from Certain Non-Party Original Equipment Manufacturers and their Affiliated Entities, *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. Jan. 12, 2017), ECF No. 1599.

3

These limitations go far beyond those already in place under the protective orders in these cases.  Specifically, the Special Master's Order requires that Vehicle Pricing Documents produced by GM and the other OEMs:

- must be maintained at only *one* "custodian firm" out of all the Defendants' law firms in a given Lead Case. Order ¶ 2.C.1;

- can be viewed *only* inside that one law firm on a stand-alone computer not connected to the internet.  Order ¶¶ 2.C. 3, 4.;

- may not even reside at all in that one defense firm allowed in each Lead Case until "after entry of a class certification schedule" for those cases, *id.,* n. 9, potentially deferring some Defendants' access to these critical documents for years while giving Plaintiffs immediate access to the documents for use in preparing *any and all* of the cases in this MDL;

- may not be transferred to another defense firm if the "custodian firm" settles or is otherwise dismissed from the *Auto Parts* litigation without notice to and consent from the OEMs. Order ¶ C.3;

- may, if used in court filings, be filed only *in camera* and not included in any filings made through an electronic filing system.  (Use of the Court's system for filing highly confidential materials under seal is not even permitted.) Order ¶ C.5;

- may only be used, quoted, or referred to in court filings after giving seven days' notice to the producing OEM. Order ¶ C.6; and,

- all copies must logged, including information about "how the copy will be maintained, stored, and transferred." Order ¶ D.1.[3]

Yet, GM asserts that these onerous restrictions are not enough, and that the documents should be withheld entirely. 

## ARGUMENT

## I.    Legal Standard

The findings of fact and legal conclusions of the Special Master are reviewed *de novo*. *See* Fed. R. Civ. P. 53(f)(3), and (4). The analysis of whether materials claimed to be confidential need be produced in response to a subpoena is straightforward. "Once [movants] have presented evidence which establishes that the information sought is trade secret information, or otherwise confidential, the burden shifts to [the requesting party]. It must establish "'that disclosure of the trade secrets is both relevant and necessary[,]' . . . [that is,] that it has a 'substantial need' for the discovery which 'cannot be otherwise met without undue hardship . . . .'" *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998) (citing Fed. R. Civ. P. 45(c)(3)) (other citations omitted). Relevant materials are considered "necessary" if they are not meaningfully available from another source. "Necessity . . . entails an inquiry into whether there are other means to obtain the information and whether obtaining the information through those means would be

---

[3] Certain Defendants have objected to a portion of the Order limiting the number of firms that may host Vehicle Pricing Documents subject to all the other restrictions of the Order. *See* ECF No. 1599.

[4]

unduly burdensome." *Universal Delaware, Inc. v. Comdata Network, Inc.*, No. 3:10-MC-00104, 2011 WL 1085180, at *4 (M.D. Tenn. Mar. 21, 2011).

Once relevance and necessity are established, the Court must then "balance the need for the disclosure against the injury that would result from that disclosure." *Echostar*, 180 F.R.D. at 394. The balance is "tilted in favor of disclosure" when relevance and necessity have been shown. *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985) (emphasis added) (citations omitted). "As the Supreme Court has recognized, 'orders forbidding any disclosure of trade secrets or confidential commercial information are rare.'" *Id.* Rather, "discovery is *virtually always ordered* once the movant has established that the secret information is relevant and necessary." *Id.* Furthermore, when protections for confidential materials are in place, the risks of disclosure are substantially lessened, and disclosure with appropriate safeguards is the appropriate approach. *See, e.g., NuCorp, Inc. v. Does 1-24*, Case No. 2:11-CV-15222, 2012 U.S. Dist. LEXIS 187547, at *19-20 (E.D. Mich. Oct. 18, 2012) ("Even in the case of trade secrets and other proprietary information . . . a total prohibition on discovery is generally inappropriate. . . . Rather, the general approach is to grant the discovery subject to some sort of protective order."); *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 96-97 (S.D. Ohio 2013).

## II.    GM's Vehicle Pricing Documents are Relevant and Necessary

As set forth in the Parties' extensive earlier briefing on the motion to compel and renewed motion to compel, the relevance of this information sought in GM's Vehicle Pricing Documents and similar documents held by the other OEMs is indisputable.  These documents go to the very

heart of the Parties' claims and defenses.[5]  This information is vital to issues of class certification

and damages, and will inform the Parties' experts' pass through analyses and rebuttals.  The goal in

every indirect price-fixing action is to provide the best available evidence to the court for

determining the pass-through issue. ████████████████████████████████, are

highly important to that end.[6]

As this Court has repeatedly acknowledged, pass through is a question of fact, and is an

issue central to Plaintiffs' burden to meet the requirements of Rule 23.  *In re Automotive Parts*

*Antitrust Litig. (Wire Harness Sys.)*, No. 2:12-cv-102, Opinion and Order Granting in Part and

Denying in Part Collective Defendants' Motion to Dismiss Indirect Purchaser Actions (E.D. Mich.

June 6, 2013), ECF No. 99, at 15.



---

[5]      The Parties incorporate and refer the Court to their papers on the motion to compel and renewed motion to compel.  *See* The Parties' Notice of Motion and Renewed Motion to Compel Discovery from Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities, *In re Auto. Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. Nov. 7, 2016), ECF Nos. 1495, 1500; The Parties' Joint Reply to Certain Non-Parties' Oppositions to the Parties Renewed Motion to Compel Discovery, *In re Auto. Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. Dec. 2, 2016), ECF Nos. 1548, 1549; Joint Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, *In re Auto. Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. Jan. 19, 2016), ECF No. 1185; Reply to Joint Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, *In re Auto. Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. March 11, 2016), ECF Nos. 1246, 1247; End-Payor Plaintiffs' Reply In Support of The Parties Motion to Compel Discovery from Nonparty Original Equipment Manufacturers, *In re Auto. Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. March 11, 2016), ECF Nos. 1250, 1252.

[6]      *See* The Parties' Joint Reply to Certain Non-Parties' Oppositions to the Parties' Renewed Motion to Compel Discovery (Filed Under Seal), *In re Auto. Parts Antitrust Litig.*, No.2:12-md-02311 (E.D. Mich. Dec. 2, 2016), ECF No. 1549, at 19; Exhibit G, Supplemental Declaration of Steven N. Williams in Support of the Parties' Joint Reply to Certain Non-Parties' Oppositions to the Parties' Renewed Motion to Compel Discovery (Filed Under Seal), In re Auto. Parts Antitrust Litig., No. 2:12-md-02311 (E.D. Mich. Dec. 2, 2016) ECF No. 1459, at ¶ 9



This argument fails on every level.

To have the opportunity to most accurately measure pass through, the Parties should have the benefit of the Vehicle Pricing Documents, and the Parties would be prejudiced to not have this information to perform their analyses.

**A.**  ████████████████████████████████████
████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████  The Parties cannot rely on this statement in lieu of GM's Vehicle Pricing

Documents for several important reasons.[7]

From EPPs' perspective, ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████  *See* Exhibit G, Supplemental Declaration of

Steven N. Williams in Support of the Parties' Joint Reply to Certain Non-Parties' Oppositions to

the Parties' Renewed Motion to Compel Discovery (Filed Under Seal), *In re Auto. Parts Antitrust*

*Litig.*, No. 2:12-md-02311 (E.D. Mich. Dec. 2, 2016) , ECF No. 1459, at ¶ 9. █████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████  ████████████████

---

[7] As this Court commented, "I don't think at this point we need to simply take the affidavits and say the case is over."  Transcript of May 11, 2016 Status Conference at 54, *In re Auto. Parts Antitrust Litig.*, No. 2:12-md-2311.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Furthermore, EPPs' position is that pass-through is an empirical issue, shown through analyses of

data and documents, ████████████████████████████████████

███ For example, documents regarding price-setting will allow EPPs to understand the role of cost

in price-setting and to make inferences regarding how a cost change, such as the alleged

overcharges stemming from the alleged bid rigging and/or APR coordination, will impact price.

*Id.* EPPs should have every opportunity to measure pass-through and conduct their analyses, as is

routine in these types of cases, and should not be deprived of this highly relevant data in their effort

to do so. *Id.*

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████ It is based

on the Parties' and experts' analysis of data and documents.  To deny EPPs the opportunity to

analyze GM's Vehicle Pricing Documents, would also open the door for challenges by Defendants,

which are routine in these cases, ██████████████████████████████████

███████████████████ *See, e.g., In re Optical Disk Drive Antitrust Litig.*, Case No. 3:10-md-2143 RS, 2016 WL 467444, at *10 (N.D. Cal. Feb. 8, 2016); *Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1282293, at *21, n.32 (S.D.N.Y. Mar. 28, 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 605 (N.D. Cal. 2010); *see also* Notice of Motion and Motion to Exclude Proposed Expert Testimony of Edward E. Leamer in *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR, MDL No. 2420 (N.D. Cal.) (ECF 1553, filed Oct. 31, 2016).

Defendants believe that the Vehicle Pricing Documents ████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████
███████████████████████████████████████████████
████████████████████ GM conveniently forgets that this Court limited the scope of the 30(b)(6) depositions taken to date to testimony regarding the location of certain documents and the burden GM would face in producing them. *See* Special Master's Order Regarding the Parties' Motion to Compel Discovery From Non-Party OEMs and Ordering Non-Party OEM Rule 30(b)(6) Depositions, *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. Apr. 20, 2016), ECF No. 1294, at 6-7.  And GM forgets that ██████████████████████
████████████████████████████████████████████████████
████████████████ ████ ██████████████████████
████████████████████████████████████████
██████████████████████████████████████



The cases cited by GM provide no support for GM's argument that the Vehicle Pricing Documents are not necessary. GM cites *Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc.*, No. 1:05-MC-107, 2005 WL 2045818 (W.D. Mich. Aug. 24, 2005) for the proposition that the thought processes a competitor uses are not relevant in an antitrust case. GM Objection at 17-18. Indeed, in *Spartanburg*, the discovery sought about the thought-processes of a competitor was *not* relevant to the issue for which it was sought: whether there was actual competition for the sale of certain furniture for hospitals. 2005 WL 2045818, at *4. Here, by contrast, whether GM employs a "thought process" or not misses the point. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Those pricing decisions are at the core of the Plaintiff Serving Parties' arguments that an overcharge was passed on to them, and Defendant Serving Parties' countervailing argument that, even if such an overcharge existed, it was absorbed by the OEMs. *Spartanburg* is simply not on point.

*Universal Delaware, Inc. v. Comdata Network, Inc.*, No. 3:10-mc-00104, 2011 WL 1085180 (M.D. Tenn. Mar. 21, 2011), which GM also cites, is similarly unavailing. In that case, an issuer of "fleet cards" used by trucking fleets for purchases of fuel and other items at truck stops was sued by truck stop owners for violations of Sections 1 and 2 of the Sherman Act. *Id.* at *1. Defendant Comdata sought discovery from its competitor, Fleet One, on a variety of issues, and a

dispute about the scope of allowable discovery arose.  *Id.* at *1-2.  The court held that the discovery was sought only with respect to the issue of defendant's alleged market power, and information about how its competitor managed to win business from defendant was simply not relevant to that issue.  *Id.* at *5.  Further, the court stated that it was erring on the side of non-disclosure in that case, since discovery of competitively sensitive information was sought from Comdata's largest direct competitor.  *Id.* at *6.  The situation in *Universal Delaware* bears no relation to this MDL, other than the fact that antitrust claims were also brought in that case.  Here, ███████████ ███████████████ sought is directly relevant to a critically important issue in the case, and the request is narrowly tailored to seek only information that would help to resolve the question of pass-through.

Notably, the types of price-setting documents that ████████████████████ are routinely produced in indirect price-fixing actions without incident.  *See, e.g., In re Mushroom Direct Purchaser Antitrust Litig.*, Master File No. 06-0620, 2012 WL 298480, at *3 (E.D. Pa. Jan. 31, 2012) (parties sought nonparty's documents "relating to or reflecting the process by which Your selling prices for mushrooms were determined during the period 1999 through 2008"); *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 245 (E.D. Pa. 2014) (party had "substantial need" for reports and investigative notes that were the only contemporaneous communications about pricing decisions). ██████████████████████████████████ ██████████████████████████████

## IV.   The Need for The GM Pricing Documents Outweighs Any Potential Harm

███████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████

GM never claims, however, that confidential documents produced in this case would end up in a competitor's hands, nor is there any reason to believe it would occur, as GM's competitors are not parties to this MDL, and indeed, the record of the proceedings regarding the Serving Parties' renewed motions to compel suggests that both the Serving Parties and the Special Master have gone to great lengths to keep sensitive information separated on an OEM-by-OEM basis



Indeed, these cases and others teach that a showing of harm requires evidence of a real threat, yet there is none shown here by GM:

> Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires *specific demonstrations of fact*, supported where possible by affidavits and *concrete examples*, rather than broad, conclusory allegations of potential harm.

*Deford v. Schmid Prod. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987). Likewise, courts are clear that "speculative allegations of injury from the disclosure of years-old information are not sufficient to warrant issuance of a protective order. . . . While a document-by-document analysis is not required, it is relevant that [the resisting party] failed to provide this Court with ████████████████ ████████████████" *Id.* at 654 (citations omitted); *see also Tinman v. Blue Cross & Blue Shield of Michigan*, 176 F. Supp. 2d 743, 746 (E.D. Mich. 2001) (no harm shown where defendant failed to make particularized showing and instead relied on conclusory statement that documents revealed "policies and procedures relating to [defendant's] claims processing procedures" and "[defendant would be harmed if its competitors were able to have access to those documents").

15

Moreover, in contrast to the *Spartanburg* and *Universal Delaware* matters, the discovery here is not sought by GM's competitors. GM's competitors are not parties to the actions in which the Vehicle Pricing Documents are sought. Nor, under the terms of the Protective Orders in these matters, will any suppliers or customers of GM have access to ███████████████████. Instead, only outside counsel and experts of *parties, not competitor OEMs*, will be in a position to see the documents, and only under highly restrictive terms, as outlined above. This state of affairs fundamentally changes the nature of any risk arising from production of the documents, since "[a]s courts have long recognized, disclosure of sensitive business information to a competitor is 'more harmful than disclosure to a noncompetitor.'" *Spartanburg*, 2005 WL 2045818, at *4 (cited by GM); *see also Coca-Cola*, 107 F.R.D. at 293, 288-89 (court ordered production of secret soda recipes to Coca-Cola bottlers subject to "stringent protective orders and other safeguards" explaining that it was doing so in part "[b]ecause protective orders are available to limit the extent to which disclosure is made, *the relevant injury to be weighed in the balance is not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order*. In this regard, *it is presumed that disclosure to a party who is not in competition with the holder of the trade secret will be less harmful than disclosure to a competitor*." (emphasis added)); *Waelde v. Merck, Sharp & Dohme*, 94 F.R.D. 27, 29-30 (E.D. Mich. 1981) (the fact that the government and not a competitor was seeking the allegedly confidential information weighed in favor of denying a motion for a protective order).

The defendants in the various cases that make up this MDL are not competitors of the OEMs, and the indirect purchaser plaintiffs seeking discovery here are the downstream customers of the OEMs. Discovery in certain cases in this MDL has been going on for <u>more than three years</u>, and the defendants in many of these cases have turned over many terabytes of highly sensitive data

about their pricing, customers, customer relationships, marketing plans, and internal deliberations, all under the terms of the existing protective orders in these cases. So far as we are aware, there has been not a single instance in which any protective order has been violated, and no claim of any harm due to any improper or even inadvertent disclosure of confidential information. There is no reason to believe that this record of conscientious and careful adherence to the protective orders will end simply because OEM data is being produced, and no reason to conclude, as GM asks this Court to conclude, that there are great risks inherent in GM's production of its Vehicle Pricing Documents.[9]  The use of protective orders to protect confidential information is the normal approach courts use to protect confidential information, and this case is no exception *See*, *e.g.*, *Pragmatus AV, LLC v. Citrix Sys., Inc.*, No. 11-62484-CIV, 2012 WL 12094515, at *11 (S.D. Fla. July 18, 2012); *Steede v. Gen. Motors LLC*, No. 2:11-cv-02351-STA-dkv, 2012 U.S. Dist. Lexis 81103, at *18 (W.D. Tenn., Apr. 3, 2012).

**V.    The Special Master's Order Goes Too Far Because GM Has Not Demonstrated A Need For Protections Beyond Those Contained in The Protective Orders In These Matters**

For purposes of this Opposition, and indeed, throughout this litigation, the Serving Parties have accepted the proposition that OEM Vehicle Pricing Documents, including GM's, are highly confidential. The Special Master has afforded protections for the Vehicle Pricing Documents that are absolutely unprecedented for documents of this nature.[10]  And GM does not show how and why the protections in the Order are insufficient and create an unacceptable risk of disclosure of secrets.

---

■ ███████████████████████████████████████████████████████

[10] Certain Defendants' Objection to the Special Master's December 29, 2016 Order Regarding the Production of Certain Vehicle Pricing Information from Certain Non-Party Original Equipment Manufacturers and their Affiliated Entities, *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. Jan. 12, 2017), ECF No. 1599.

Courts routinely order the production of highly sensitive information relevant to litigation with a protective order to safeguard its sensitive nature. *Nucorp, Inc. v. Does 1-24*, 2012 U.S. Dist. LEXIS 187547, at *19-20.  Protective Orders, such as the one in place here, with "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" protections, are particularly powerful means of protecting the sensitive nature of that information. *See, e.g., Med. Ctr. at Elizabeth Place*, 294 F.R.D. at 96-97.  In order to implement even that level of protection, however, the law requires more than was shown here by the OEMs or found by the Special Master. *See* Fed. R. Civ. P. 26(c)(1)(G) ("The court may, for *good cause*, issue an order to protect a party or person [b] . . . requiring that a trade secret or other confidential research, development, or commercial information . . . be revealed only in a specified way."); *In re Ohio Execution Protocol Litig.*, __ F.3d __, 2016 WL 7494863, at *4 (6th Cir. Dec. 30, 2016).

GM does not cite a single case showing that the kind of ███████ documents at issue here require anything remotely like the protections that the Special Master has *already* ordered for the Vehicle Pricing Documents.  Indeed, the only cases that the undersigned have found, or that GM has cited, in which stringent protections for discovery materials anything like those ordered by the Special Master are in cases involving computer source code.

Computer source code is completely different from ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████ Financial information is part of nearly every business dispute.  Computer source code, on the other hand, is akin to a secret formula; it is the entire recipe for a unique and valuable product, in and of itself, so the risk of disclosure is heightened. *Applied Signal Tech., Inc. v. Emerging Mkts. Commc'n*, No. C-09-02180 SBA

(DMR), 2011 WL 197811, at *2 (N.D. Cal. Jan. 20, 2011).  The recipe for Coca Cola is a recipe akin to source-code.  ██████████████████████████  Pricing documents are fundamentally different in character from secret formulas or technical inventions.

Even as to source-code, when produced, courts routinely order that it be produced in a way convenient to the parties.  *See Pause Tech., Inc. v. Tivo Inc.*, No. 01-11657-PBS, 2003 U.S. Dist. LEXIS 27253, at *2 (D. Mass. June 18, 2003) (source code may be kept in locked room by counsel requesting it in discovery); *Cherdak v. Koko Fitclub, LLC*, No. 14-10371-IT, 2015 U.S. Dist. LEXIS 54621, at *9 (D. Mass. Apr. 27, 2015) (outside counsel and experts permitted to see source code which will be provided to outside counsel, *at the office closest to plaintiffs' business*); *Pragmatus*, 2012 U.S. Dist. LEXIS 190856, at *14 (source code afforded heightened protection, but available to opposing counsel and experts via server accessible online).  What is convenient to the parties and their counsel and, conversely, what constitutes an undue burden on them depends on the unique circumstances of the case, and courts determine what protections are reasonable in light of such circumstances.  *See, e.g., Jagex Ltd. v. Impulse Software*, 273 F.R.D. 357, 358-59 (D. Mass. 2011).  For example, in *Jagex*, the court ordered that source code would be produced in Massachusetts, where *both* plaintiff's counsel and defendants' counsel had offices.  *Id.*  The *Jagex* court reasoned that allowing the plaintiff to produce its source code in the United Kingdom, as they requested, would impose an unreasonable travel burden on defendants.  *Id.* at 359.  In contrast to *Jagex*, a review of the master docket here reveals that the present litigation involves more than 70 defendants, up to six putative classes of plaintiffs for each product track, and 88 different law firms, 57 of which do not have offices in the state of Michigan, let alone Detroit.  Any order providing for additional protections on the Vehicle Pricing Documents should accordingly consider the unreasonable burden that limiting production to a single city would have on all parties,

and fashion more reasonable relief.   Certain Defendants' Objection to the Special Master's December 29, 2016 Order Regarding the Production of Certain Vehicle Pricing Information from Certain Non-Party Original Equipment Manufacturers and their Affiliated Entities, *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-2311 (E.D. Mich. Jan. 12, 2017), ECF No. 1599.

GM's reliance on *Leader Technologies Inc. v. Facebook Inc.*, Civ. No. 08-862-JJF-LPS, 2009 WL 3021168 (D. Del. Sept. 4, 2009) for the proposition that extreme measures are routinely ordered for confidential information is seriously misplaced.   GM cites a discovery order that recites that Facebook's source code would be made available at one location on restrictive terms pursuant to protective order.   *See* GM Objection at 21.   But in its discussion of this case, GM does not disclose that the protective order governing access to source-code was *not litigated or imposed by the court in an adversary procedure* but was *stipulated* by agreement between the parties, both of which apparently had source-code that was relevant to the litigation.[11]   *See* Decl. of David Brownstein, Exhibit B, at ¶ 8.

As the Serving Parties have shown in their prior briefing on this topic, and as Certain Defendants stated previously in their Objection to the Special Master's Order regarding confidentiality of certain pricing documents, there is no reason even for the "supplemental protections" the Special Master ordered in his December 29, 2016 Order.   GM's suggestion that even these extraordinarily burdensome provisions are insufficient is unsubstantiated conjecture designed to deprive the Serving Parties of information critical to the resolution of the issues in this litigation, and should not be credited by this Court.

---

[11] The protective orders in *Inventor Holdings, LLC v. Wal-Mart Stores, Inc.*, No. 1:14-v-00096 (GMS), 2014 WL 4370320 (D. Del. 2014), and *Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 1:13-CV-0633 (DEP), 2014 WL 1871866 (N.D.N.Y. 2014) were similarly stipulated between the two parties.  Those cases contain no court decision on the appropriate terms for the protective orders there and thus have no precedential authority and provide no basis for entry of an order containing these restrictions.

## CONCLUSION

For the foregoing reasons, GM's objection to the Special Master's Order regarding Vehicle Pricing Documents has no merit, and should be denied.


Dated: January 23, 2017                     **FARMER BROWNSTEIN JAEGER LLP**


By: /s/ *William S. Farmer*_____

WILLIAM S. FARMER (SBN 46694)
DAVID BROWNSTEIN (SBN 141929)
**FARMER BROWNSTEIN JAEGER LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone (415) 962-2876
E-mail:(wfarmer@fbj-law.com)
        (dbrownstein@fbj-law.com)

*Attorneys for Defendants*
*Mitsuba Corporation and American Mitsuba Corp.*

**WINSTON & STRAWN LLP**

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
A. Paul Victor
Molly M. Donovan
Jeffrey J. Amato
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
jamato@winston.com

**KERR, RUSSELL AND WEBER, PLC**
Fred K. Herrmann
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Counsel for NTN Corporation and
NTN USA Corporation*

*/s/ Jeffrey L. Kessler (w/consent)*
Jeffrey L. Kessler
A. Paul Victor
Eva W. Cole
Jeffrey J. Amato
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700 (t)
(212) 294-4700  (f)
JKessler@winston.com
PVictor@winston.com
EWCole@winston.com
JAmato@winston.com

Brandon Duke
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002
(713) 651-2636 (t)
(713) 651-2700 (f)
BDuke@winston.com

*Counsel for Defendants Panasonic Corporation and
Panasonic Corporation of North America*

**BUTZEL LONG**

*/s/Sheldon Klein (w/consent)*
David F. DuMouchel
Sheldon Klein
BUTZEL LONG
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Telephone:  (313) 225-7000

Fax:  (313) 225-7080
dumouchd@butzel.com
klein@butzel.com

*Attorneys for Defendants TRAM, Inc. and Tokai
Rika Co., Ltd.*

**DUANE MORRIS LLP**

*/s/ J. Manly Parks (with consent)*

Wayne A. Mack
J. Manly Parks
Andrew R. Sperl
Erica Lee Fruiterman
William Shotzbarger

30 S. 17th Street
Philadelphia, PA  19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com
arsperl@duanemorris.com
efruiterman@duanemorris.com
wshotzbarger@duanemorris.com

*Class Counsel for Truck and Equipment
Dealer Plaintiffs*

**COTCHETT, PITRE & McCARTHY, LLP**

*/s/ Steven N. Williams (with consent)*

Steven N. Williams
Elizabeth Tran
Demetrius X. Lambrinos
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

23

swilliams@cpmlegal.com
etran@cpmlegal.com
dlambrinos@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiff Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2017, I caused the following document, which is being filed under seal, to be served on the following parties via electronic mail. I am over the age of 18 and not a party to this action.  My business address is 235 Montgomery St., Suite 835, San Francisco, CA 94104.

**SERVING PARTIES' OPPOSITION TO GENERAL MOTORS' OBJECTION TO SPECIAL MASTER'S ORDERS COMPELLING PRODUCTION OF CERTAIN CONFIDENTIAL COMMERICAL, TRADE SECRET PRICING DOCUMENTS**

Additionally, a redacted copy of the above-referenced document will be filed with the Clerk of the Court using the ECF system, which will send notification of such redacted filing to all ECF-registered counsel in this matter.  A separate certificate of service will accompany the Redacted Copy.

| | |
|---|---|
| Adam B. Wolfson<br>Jeremy Baldoni<br>Corey Worcester<br>Emanuel Urquhart & Quinn Sullivan<br>51 Madison Avenue<br>22nd Floor<br>New York NY 10010<br>coreyworcester@quinnemanuel.com<br>jeremybaldoni@quinnemanuel.com<br>adamwolfson@quinnemanuel.com | Ronnie Seidel Spiegel<br>Hagens Berman Sobol Shapiro LLP<br>1918 8th Avenue, Suite 3300<br>Seattle, WA 98101<br>Ronnie@hbsslaw.com |
| William Shotzbarger<br>Duane Morris LLP<br>30 South 17th Street<br>Philadelphia, PA 19103-4196<br>wshotzbarger@duanemorris.com | Trey Nicoud<br>Austin Schwing<br>Gibson Dunn & Crutcher LLP<br>555 Mission Street<br>San Francisco, CA 94105-0921<br>tnicoud@gibsondunn.com<br>aschwing@gibsondunn.com |
| | |

| | |
|---|---|
| Steven Williams<br>Cotchett Pitre & McCarthy LLP<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>swilliams@cpmlegal.com | Sloane Rosenthal<br>Gibson Dunn & Crutcher LLP<br>1881 Page Mill Road<br>Palo Alto, CA 94304-1211<br>srosenthal@gibsondunn.com |
| Victoria Romanenko<br>Evelyn Li<br>Jon Cuneo<br>Cuneo Gilbert & LaDuca LLP<br>507 C Street NE<br>Washington, DC 20002<br>vicky@cuneolaw.com<br>evelyn@cuneolaw.com<br>jonc@cuneolaw.com | Matthew Boucher<br>Allen & Overy LLP<br>1101 New York Avenue, NW<br>Washington, DC 20005<br>mboucher@allenovery.com |
| Patrick J. Carome<br>Steven F. Cherry<br>David Donovan<br>Matthew Worthington<br>April N. Williams<br>Steven Cherry<br>Wilmer Cutler Pickering Hale & Dorr LLP<br>1875 Pennsylvania Avenue, NW<br>Washington, DC 20006  Map<br>Patrick.Carome@wilmerhale.com<br>David.Donovan@wilmerhale.com<br>Matthew.Worthington@wilmerhale.com<br>April.Williams@wilmerhale.com<br>Steven.Cherry@wilmerhale.com | Lara E. Veblen Trager<br>Adam Hemlock<br>Cameron Bonk<br>Heather Novison<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Adam.hemlock@weil.com<br>Heather.novison@weil.com<br>Lara.trager@weil.com<br>Cameron.bonk@weil.com |
| Sheldon H. Klein<br>Butzel Long<br>41000 Woodward Avenue<br>Bloomfield Hills, MI 48304<br>klein@butzel.com | |

Dated:  January 23, 2017

By: /s/ David C. Brownstein

DAVID BROWNSTEIN (SBN 141929)
FARMER BROWNSTEIN JAEGER LLP
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone (415) 962-2876
E-mail: dbrownstein@fbj-law.com

*Attorneys for Defendants*
*Mitsuba Corporation and American Mitsuba*
*Corp.*