UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : | Master File No. 12-md-02311 |
| | : | |
| In Re: All Parts and All Cases | : : | Honorable Marianne O. Battani |
| | : | |
| THIS DOCUMENTS RELATES TO: | : : | |
| All Actions | : | |
| | : | |

**THE PARTIES' RESPONSE TO CERTAIN OEMS' OBJECTIONS TO SPECIAL MASTER'S ORDER ON RENEWED MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................... 1

II.    THE HISTORY REGARDING THIS COORDINATED DISCOVERY
       EFFORT .................................................................................... 1

       A.     The OEMs Failed to Properly Engage with the Parties, Delaying
              this Discovery and Making it Much More Expensive and
              Protracted .................................................................................... 2

       B.     The OEMs Refused Multiple Rounds of Compromises Offered by
              the Parties, Causing Impasse and Leaving the Parties No Choice
              but to Move to Compel ................................................................ 4

       C.     The OEMs Caused Further Delay with Objections to the Special
              Master's Order Regarding Rule 30(b)(6) Discovery-on-Discovery
              Depositions .................................................................................. 5

       D.     The Rule 30(b)(6) Discovery-on-Discovery Depositions Were
              Ordered to Remedy the OEMs' Refusal to Provide Basic
              Information that they Could Have and Should Have Provided From
              the Outset .................................................................................... 6

       E.     The OEMs Repeatedly Rejected All of the Parties' Compromises ...................... 7

       F.     The Renewed Motion to Compel and Further Delay Regarding the
              Draft Orders and Agreements ...................................................... 8

III.   THE OEMS SHOULD NOT BE AWARDED ANY FURTHER COSTS
       OR ATTORNEYS' FEES BEYOND THE UNPRECEDENTED COST-
       SHARING AWARD THAT THEY HAVE ALREADY RECEIVED .......................... 9

       A.     The Cost-Shifting Ordered by the Special Master is Already
              Unprecedented and No Further Costs Should be Awarded ................................ 10

              1.     The OEMs Should Not Be Awarded Further Non-Attorney
                     Costs for Post-Deposition Follow-Up Questions.................................... 11

       B.     The OEMs' Demand for Attorneys' Fees is Still Inappropriate and
              Unreasonable................................................................................ 13

              1.     It is Unreasonable and Inappropriate to Award Attorneys'
                     Fees for the OEMs' Delay of the Discovery Process ............................. 14

      2.      It is Unreasonable and Inappropriate to Award Attorneys'
Fees for Document Collection or Production ......................................... 17

IV.    CONCLUSION ......................................................................................... 18

EXHIBIT A ............................................................................................................. 19

EXHIBIT B ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ala. Aircraft Indus. v. Boeing Co.*,
  2016 U.S. Dist. LEXIS 161975 (N.D. Ala. Oct. 17, 2016) ....................................11

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975)..................................................................................................13

*Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*,
  313 F.R.D. 39 (N.D. Tex. 2015) ...............................................................................16

*In re Am. Hous. Found.*,
  2013 WL 2422706 (U.S. Bankr. N.D. Tex. June 4, 2013) .......................................17

*Apple v. Samsung Elec. Co., Ltd.*,
  2013 U.S. Dist. LEXIS 67085 (N.D. Cal. May 9, 2013) ..........................................15

*Bell Inc. v. GE Lighting LLC*,
  2014 WL 1630754 (W.D. Va. Apr. 23, 2014) ..........................................................17

*Cornell v. Columbus McKinnon Corp.*,
  2015 U.S. Dist. LEXIS 105450 (N.D. Cal. Aug. 11, 2015)......................................15

*Dow Chem. Co. v. Reinhard*,
  2008 WL 1968302 (S.D.N.Y. Apr. 29, 2008)............................................................9

*G & E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*,
  2016 WL 1258458 (D.D.C. March 30, 2016) ...........................................................18

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
  2007 U.S. Dist. LEXIS 53217 (D. Kan. July 20, 2007)............................................15

*Maximum Human Performance v. Sigma-Tau Healthscience*,
  2013 WL 4537790 (D.N.J. Aug. 27, 2013) ..............................................................17

*Mgmt. Compensation Group Lee, Inc. v. Oklahoma State Univ.*,
  2011 WL 5326262 (W.D. Okla. Nov. 3, 2011) ........................................................17

*Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of R.I.*,
  2016 U.S. Dist. LEXIS 154313 (E.D. Pa. Nov. 4, 2016)..........................................17

*Stormans, Inc. v. Selecky*,
  2015 U.S. Dist. LEXIS 5141 (W.D. Wash. Jan. 15, 2015)......................................14

*Straight Path IP Group, Inc. v. Blackberry Ltd.*,
  2014 U.S. Dist. LEXIS 92787 (N.D. Cal. Jul. 8, 2014)....................................................15, 16

*In re Subpoena to Schrader Bridgeport Int'l, Inc.*,
  2016 U.S. Dist. LEXIS 159377 (E.D. Mich. Aug. 26, 2016) ...................................................16

*United States v. Blue Cross Blue Shield of Mich.*,
  2012 U.S. Dist. LEXIS 146403 (E.D. Mich. Oct. 1, 2012) .........................................9, 11, 14

*United States v. Cardinal Growth, L.P.*,
  2015 U.S. Dist. LEXIS 22577 (N.D. Ill. Feb. 23, 2015) .......................................................11

*United States v. CBS, Inc.*,
  103 F.R.D. 365 (C.D. Cal. 1984) ...........................................................................................13

*W. Convenience Stores, Inc. v. Suncor Energy, Inc.*,
  2014 WL 1257762 (D. Colo. Mar. 27, 2014) ........................................................................15

### OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(1)....................................................................................................................9

Fed. R. Civ. P. 53(f)(5) .................................................................................................................10

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*United States v. Blue Cross Blue Shield of Mich.*, 2012 U.S. Dist. LEXIS 146403 (E.D. Mich. Oct. 1, 2012)

*Dow Chem. Co. v. Reinhard*, 2008 WL 1968302 (S.D.N.Y. Apr. 29, 2008)

*Ala. Aircraft Indus. v. Boeing Co.*, 2016 U.S. Dist. LEXIS 161975 (N.D. Ala. Oct. 17, 2016)

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)

*United States v. CBS, Inc.*, 103 F.R.D. 365 (C.D. Cal. 1984)

*Stormans, Inc. v. Selecky*, 2015 U.S. Dist. LEXIS 5141 (W.D. Wash. Jan. 15, 2015)

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 U.S. Dist. LEXIS 53217 (D. Kan. July 20, 2007)

*Cornell v. Columbus McKinnon Corp.*, 2015 U.S. Dist. LEXIS 105450 (N.D. Cal. Aug. 11, 2015)

*Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of R.I.*, 2016 U.S. Dist. LEXIS 154313 (E.D. Pa. Nov. 4, 2016)

## ISSUES PRESENTED

1.      Whether it is unreasonable for the OEMs to ask for reimbursement of attorneys' fees and other costs for their time spent in fighting the subpoena.

Answer:  Yes.

2.      Whether it is unreasonable for the OEMs to ask for reimbursement of attorneys' fees associated with document collection and production, where they are already being awarded an unprecedented 70 percent reimbursement of their costs in collecting and producing documents, and where OEMs routinely cooperate with similar subpoenas without demanding compensation from the serving parties.

Answer:  Yes.

3.      Whether it is unreasonable for the OEMs to seek reimbursement for additional costs for post-deposition follow-up questions made to their counsel when such questions are a normal part of discovery in any case, much less a case of this complexity and in which the Court and the Parties have long-recognized that OEM discovery is among the most critical parts of all discovery, and where the reason depositions were ordered in the first place was because of the OEMs' complete refusal to provide the basic information necessary for discovery to move forward, and where certain OEMs did not provide witnesses sufficient to cover the topics and time periods at issue in the depositions.

Answer:  Yes.

The Parties[1] respectfully submit this response to the objections of certain original equipment manufacturers and their affiliated entities (collectively the "OEMs") to the Special Master's January 4, 2017 Order on the Parties' Renewed Motion to Compel.[2]   The Parties incorporate their earlier briefing and arguments into this response.[3]

## I.   INTRODUCTION

The Special Master's Order should be affirmed and the OEMs' objections overruled.   The Order awards unprecedented and certainly generous costs, including reasonable outside counsel attorneys' fees to the OEMs at 60 percent (for preparation for and participation in Rule 30(b)(6) depositions) and costs, excluding attorneys' fees, to the OEMs at 70 percent (for collection and production of data and documents).   While the Parties have not objected to this provision because of their understanding of the overall need to have necessary discovery proceed without further delay, the OEMs seek even more.   For the reasons set forth below, the Court should deny the OEMs' objections and not award any further costs or attorneys' fees.

## II.   THE HISTORY REGARDING THIS COORDINATED DISCOVERY EFFORT

The OEMs attempt to support their arguments for *more* costs and attorneys' fees by once again grossly mischaracterizing the facts and course of events regarding this discovery effort. The OEMs blame the Parties for their own refusals to cooperate.   As Special Master Esshaki

---

[1] The Parties joining in this response include End Payor Plaintiffs, Truck and Equipment Dealer Plaintiffs, the State of Florida, the State of Indiana, and certain non-settled Defendants in the cases that make up *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM (E.D. Mich.).   All ECF Nos. cited herein fall under *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM (E.D. Mich.).

[2] This brief is submitted in response to Certain Non-Party Original Equipment Manufacturers' Objection to Order Regarding the Parties' Renewed Motion to Compel Discovery from Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities (ECF No. 1602) (Jan. 18, 2017) (hereinafter "Objections").   *See* Exhibit A attached hereto for a list of the OEMs subject to this response (and citation abbreviations).

[3] *See* Exhibit B attached hereto for a list of the Parties' previous briefing.

stated at the status conference on January 25, 2017, the Parties' efforts in coordinating OEM discovery in the most efficient way in this MDL involving 42 separate parts and 67 separate corporate families, have been extraordinary and unprecedented. The Parties' efforts have involved attorneys on opposing sides in these cases working together cooperatively for many thousands of hours and over two years – at great cost to the Defendants and the classes – to address the OEM discovery needs in **all** of these cases. The OEMs' alternative factual history is not correct. In addition to the highlights set forth below, the Parties refer the Court to the extensive briefing that has taken place to date, in which the true facts have been repeatedly set forth in great detail.[4]

### A.  The OEMs Failed to Properly Engage with the Parties, Delaying this Discovery and Making it Much More Expensive and Protracted

In January 2015, the Court ordered the Parties to draft a comprehensive subpoena that would cover all parts cases and all parties. This was done to ameliorate the burden on non-party OEMs. The goal was to save the OEMs from the burdensome alternative of being served with separate subpoenas in each parts case (now 42 separate cases), and to be subject to negotiating and producing discovery separately as to each. ECF No. 1185 at 5.

The Parties – multiple groups of Plaintiffs and Defendants (represented by hundreds of attorneys and law firms) – followed the Court's order, and worked together to ultimately reach agreement on a draft subpoena by April 14, 2015. *Id.*[5] From the outset, the Parties

---

[4] *See, e.g.,* ECF Nos. 1185, 1186, 1246, 1250, 1254, 1495, 1496, and 1548.

[5] As instructed by the Court, on April 14, 2015, the Parties provided a copy of the subpoena to counsel for Direct Purchaser Plaintiffs ("DPPs") and Ford Motor Company ("Ford") for comment. ECF No. 1185 at 5. On April 18, 2015, DPPs submitted comments to Special Master Esshaki by letter. *Id.* At the May 6, 2015 Status Conference, the Court instructed DPPs to raise their concerns by motion, and the Special Master set a briefing schedule. *Id.* at 5-6. The OEMs now point to DPPs' objections and Ford's comments regarding the subpoena as somehow justifying their own non-cooperation in this discovery effort. Objections 3-5. Yet, all of DPPs'

acknowledged the comprehensive nature of the subpoena and made clear to the OEMs their

desire to sit down with each OEM family to meet and confer to tailor the subpoena as to each.

*Id.* at 6. Although some of the OEMs initially set schedules for objections and to begin

discussions with the Parties, the OEMs soon cut off all individual communications with the

Parties and, instead, informed the Parties that they would now be negotiating as a group. *Id.* The

OEMs then rebuffed all further efforts by the Parties to meet and confer individually. *Id.* at 6-7.

The OEMs also requested that the Parties withdraw the subpoena for multiple entities (which the

Parties believed to hold highly relevant information) and stated that they would not even proceed

with searching for documents until they had an agreement to cover all costs or a court order

ordering reimbursement. *Id.* at 7.

Notably, while the subpoena was comprehensive, upon service, it did not require the

OEMs to do more than in any other case – namely, to meet and confer with the Parties to provide

information and negotiate over objections. Williams Response Decl. at ¶ 3. The OEMs claim

that the subpoena was so large it prevented them from cooperating at all. Objections at 2. In

reality, while some requests sought information to be produced part-by-part, most of the requests

involved production of data and documents by vehicle. ECF No. 1548 at 3. Therefore, for most

of the requests (on the downstream side), the OEMs, even from the very beginning, were only

being asked to produce one set of data and documents to satisfy discovery across all parts

---

objections were denied before the OEMs were even served with the subpoena, and Ford has not
even joined the other OEMs in protesting the subpoena. *See* Declaration of Steven N. Williams
in Support of the Parties' Response to Certain OEMs' Objections to the Special Master's Order
on Renewed Motion to Compel Discovery, at ¶ 2 (hereinafter "Williams Response Decl."), filed
herewith. To the contrary, Ford has been cooperating and has engaged in meet and confer
communications with the Parties since service of the subpoena. *Id.* Furthermore, these
proceedings put the OEMs on notice of what discovery was sought, as well as the fact that the
Court had authorized proceeding in this manner not once, but twice. *Id.* Had the OEMs engaged
with the Parties in good faith negotiations in the early Summer of 2015, it is likely that this
discovery would have been completed long ago at far less cost.

actions.  *Id.*  And, even if the OEMs ultimately would have a greater burden to collect and produce documents than in other cases, there was no greater burden on them to participate in individual meet and confers with the Parties regarding what they could produce (or not), or what burdens may have existed, from the outset.  Williams Response Decl. at ¶ 3.

**B.     The OEMs Refused Multiple Rounds of Compromises Offered by the Parties, Causing Impasse and Leaving the Parties No Choice but to Move to Compel**

Having no alternative and knowing that the OEMs were the only source of highly relevant information for class certification, the Parties attempted to work with the OEMs as a group, as they had demanded.  ECF No. 1185 at 7-8.  The Parties offered numerous rounds of significant compromises to the OEMs, to no avail.  *Id.*  After several months of going back and forth within the OEMs' desired group framework, impasse was clear.  *Id.* at 8-11.  At the time of the filing of the first motion to compel on January 19, 2016, the OEMs had offered to produce ***only*** the following information (and only from certain entities):  (i) reasonably accessible transactional data reflecting components purchased from a "reasonable number" of  non-defendant suppliers (which the Parties were expected to identify somehow) for up to the past 10 years (*i.e.,* 2006-2016, even though the class periods began in the mid-1990s); and (ii) reasonably accessible MSRPs for select categories of vehicles, "to be negotiated with the Parties," that each OEM sold for up to the past 10 years.  In addition, their offer was conditioned on the Parties agreeing to pay all costs and attorneys' fees.  *Id.* at 8-11.  This is true even despite the fact that most, if not all, of the OEM, had likely already gathered and produced this information to the Department of Justice (and likely this information was already compiled on a disk or thumb drive).  Williams Response Decl. at ¶ 4.  On January 19, 2016, the Parties had no choice but to move to compel on 14 of the original 37 requests.  ECF No. 1185 at 10-11; ECF No. 1495 at 2-3.

On March 24, 2016, the Special Master conducted a mediation and hearing regarding the Parties' motions. *Id.* at 5. After several hours of discussions, both individually and jointly with Plaintiffs, Defendants, and the opposing OEMs, the Special Master concluded that the OEMs had failed to provide the most basic information needed to determine the Parties' motions, and ruled that the Parties would be allowed to conduct Rule 30(b)(6) depositions of the OEMs to determine what relevant data and documents they possessed, where the information was located, and what burdens they faced to collect and produce the highly relevant discovery sought, information that until this point, the OEMs had refused to provide. *Id.* at 5-6.[6] The Parties were instructed to draft an order and, shortly thereafter, provided the OEMs with a draft memorializing the Special Master's rulings. The OEMs challenged the draft order, and submitted a competing draft order. On April 20, 2016, the Special Master issued an Order memorializing his ruling, adopting the Parties' version in its entirety. *Id.* at 6-7.

## C. The OEMs Caused Further Delay with Objections to the Special Master's Order Regarding Rule 30(b)(6) Discovery-on-Discovery Depositions

Following the Special Master's April 20, 2016 Order on Rule 30(b)(6) depositions, instead of letting the 30(b)(6) depositions proceed, the OEMs challenged the Special Master's Order with extensive objections. *Id.* at 5-6. On June 23, 2016, the Court held a hearing to address the OEMs' objections. *Id.* at 6-7. The Court set aside the Special Master's Order on procedural grounds, ruling that the Federal Rules of Civil Procedure required that a Rule 45 subpoena be issued for non-party depositions, but upheld the Special Master's ruling in large

---

[6] *See* Mot Hrg. Tr. (Special Master Esshaki) (ECF No. 1270) (Mar. 25, 2016) ("I reached the conclusion that there simply isn't sufficient information before me today to make a reasonable decision…" and "the best course of conduct would be to conduct some 30(b)(6) depositions of the OEMs in order to better understand what information is available, reasonably accessible, and the cost and burden that would be incurred in having to generate that information."); *see also* Hrg. Tr. (Judge Battani) (ECF No. 1405) (July 1, 2016) (ordering that the 30(b)(6) depositions on discovery go forward as to the OEMs).

part. *Id.* at 7.  The Court ordered that the 30(b)(6) depositions go forward as to the OEMs here (and Subaru of America, Inc., which has since reached agreement with the Parties and for which the renewed motion to compel was withdrawn), but required the Parties to serve new Rule 45 subpoenas for depositions, with an outline of questions to be asked.  *Id.*  The Court further ordered that the Parties begin depositions and immediately after the Court's ruling the Parties began working to schedule the depositions and to prepare a proposed order.  *Id.*  Once again, the Parties attempted to work with the OEMs to draft an order, but the OEMs differed with the Parties as to the Court's intentions as to costs and fees related to the depositions.  The OEMs demanded costs and attorneys' fees to now provide basic information that they could have and should have provided from the outset in a normal meet and confer process.  *Id.* at 6-7, n.28.[7]

**D.      The Rule 30(b)(6) Discovery-on-Discovery Depositions Were Ordered to Remedy the OEMs' Refusal to Provide Basic Information that they Could Have and Should Have Provided From the Outset**

The Rule 30(b)(6) depositions proceeded as ordered.  Prior to the depositions, each OEM received a detailed outline of the topics and questions that would be covered, so as to allow each OEM to bring appropriately prepared witnesses to testify.  *Id.* at 8.  The Parties traveled to each OEM's chosen location between August 16, 2016, and October 18, 2016 (plus an additional day for Honda on November 10, 2016).  *Id.*  The depositions enabled the Parties to gain a better understanding of what relevant data and documents exist in response to the subpoena at each OEM, how information is kept, and a general idea of the burdens associated with the OEMs' search for and production of relevant data and documents.  *Id.*  With this information in hand, the Parties began reaching out to each OEM to meet and confer, and the Parties worked together to craft a narrowed list of requests, based on what had been learned from the OEMs.  *Id.*  A

---

[7] Neither the Parties nor the OEMs' proposed versions of the Order implementing Judge Battani's rulings at the June 23, 2016 hearing have been entered.

narrowed list of requests, as well as a specific list (tailored to each OEM's particular systems and types of documents) was provided to each OEM. *Id.* at 8-10.

**E.      The OEMs Repeatedly Rejected All of the Parties' Compromises**

All along, the Parties offered multiple compromises to the OEMs.  At the time of the original Motion to Compel in January 2016, the Parties already had cut the subpoena drastically from 37 to 14 requests.  ECF No. 1548 at 5-6.  After depositions, the Parties finally had enough information in hand to narrow the subpoena down to bare bones, and the Parties presented each OEM with a short list of remaining requests, as well as compromises that reflected the particular information and systems of each OEM.  *Id.*

In addition, the Parties took discovery in *Wire Harnesses* entirely off the table, at least until after a decision by the Court on the Wire Harness Defendants' motions for summary judgment on the DPP claims in this case.  *Id.*  The Parties agreed to stagger production of upstream data and documents to begin with only the lead two cases (*Bearings* and *Anti-Vibrational Rubber Parts*).  *Id.*  For upstream discovery, where necessary, the Parties agreed to limit the number of non-defendant suppliers for whom information is sought to only a few suppliers.  *Id.* at 7.  The Parties agreed to limit their requests for certain categories of downstream information to only specific vehicle models.  *Id.*  The Parties agreed to make additional concessions for each OEM.  *Id.*  The Parties agreed to pay half of the OEMs' costs in collecting and producing information that is not readily accessible subject to the Parties' ability to assess what discovery to pursue in light of such costs.  *Id.* at 8.  While some OEMs said they would produce certain categories of data and documents from the tailored lists, all OEMs conditioned actual agreement on full reimbursement of their costs and payment of attorneys' fees.  *Id.*  This was unworkable and unacceptable given that the OEMs' cost demands were unprecedented and contrary to governing law.  *Id.*  As a result, while certain OEMs began

working with the Parties to find agreement on the requests, the entire effort was nevertheless still delayed by the OEMs' unreasonable demands for costs and attorneys' fees.  Williams Response Decl. at ¶ 7.

**F.     The Renewed Motion to Compel and Further Delay Regarding the Draft Orders and Agreements**

Because of the OEMs' unreasonable demands for costs and attorneys' fees, even where agreement had been reached on the scope of the subpoena, the Parties had no choice but to move forward with the Renewed Motion to Compel.  ECF No. 1548.  The OEMs contested certain aspects of the briefing schedule, causing further delay and necessitating a conference call with the Special Master on October 10, 2016.  Williams Response Decl. at ¶ 7.  The Special Master set the schedule and built in a day of mediation for the OEMs.  *Id.*  The Parties and certain OEMs participated in mediation with the Special Master on November 15, 2016.  *Id.*  A second day of mediation was held on December 8, 2016.  *Id.*  However, despite some progress in mediation on getting the OEMs to accept the Parties compromises, the OEMs would not accept the Parties' unprecedented offer to pay 50% of the OEMs' reasonable costs of collecting and producing any discovery that may not be readily accessible, and continued to hold up the process, demanding full payment of costs and full reimbursement of attorneys' fees.  *Id.*  In other words, the process still could not move forward, even where agreements on substance had been reached.  The Parties continued to meet and confer with the OEMs, offering further compromises up until the morning of the hearing with the Special Master on the Renewed Motion to Compel on December 9, 2016.  *Id.*

At the hearing, the Special Master affirmed the relevance of the information sought and granted the Renewed Motion to Compel in large part.  *Id.*  The Special Master also ruled in unprecedented fashion to award the OEMs 60 percent of their costs, including reasonable outside

counsel attorneys' fees, incurred in preparing for and participating in Rule 30(b)(6) depositions and 70 percent of their costs, excluding attorneys' fees, for collection and production of documents and data. *Id.* The remaining 40 percent and 30 percent was allocated to the OEMs. As instructed, the Parties drafted orders to accurately memorialize the Special Master's ruling and sent them to the OEMs. *Id.* Certain OEMs objected to various draft orders and submitted their own versions. *Id.* The Special Master entered the individual orders as submitted by the Parties. *Id.* The Special Master also entered the Orders submitted by the Parties regarding the main motion to compel ("Main Motion Order") (ECF No. 1584) as well as the handling and confidentiality of certain pricing documents ("Confidentiality Order") (ECF No. 1579). *Id.* The OEMs now object to both the Main Motion Order and the Confidentiality Order, necessitating yet another round of briefing and potential hearing. *Id.*

### III. THE OEMS SHOULD NOT BE AWARDED ANY FURTHER COSTS OR ATTORNEYS' FEES BEYOND THE UNPRECEDENTED COST-SHARING AWARD THAT THEY HAVE ALREADY RECEIVED

For the same reasons set forth in the Parties' Renewed Motion briefing, the OEMs' demands for additional costs and attorneys' fees (*see* Objections at 9-17) are unreasonable and contrary to governing law. *See* ECF No. 1548 at 34-43.

A subpoena to a non-party under Rule 45 is governed by the same standards as Rule 26, which states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also United States v. Blue Cross Blue Shield of Mich.*, 2012 U.S. Dist. LEXIS 146403, at *6 (E.D. Mich. Oct. 1, 2012) ("A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26."). This is especially true where, as here, the OEMs have a strong interest in and are deeply tied to the outcome of the litigation. *See, e.g., Dow Chem. Co. v. Reinhard*, 2008 WL 1968302, at *2 (S.D.N.Y. Apr. 29, 2008)

(recognizing that the Rules are intended to protect the "quintessential, innocent, disinterested bystander" who has no stake in the litigation).

Under Fed. R. Civ. P. 53(f)(5), the Court "may set aside a master's ruling on a procedural matter only for an abuse of discretion." *See also* Opinion and Order Denying Defendants' Objection to and Motion to Modify the Special Master's Order Regarding Locations of Depositions at 5, *In re: Bearings*, No. 2:12-cv-0050, ECF No. 212 (E.D. Mich. March 8, 2016) (reviewing the Special Master's decision for abuse of "the vast discretion afforded a district court in supervising discovery").

## A.     The Cost-Shifting Ordered by the Special Master is Already Unprecedented and No Further Costs Should be Awarded

Respectfully, the Parties believe that the costs already awarded by the Special Master in the amounts of 60 percent, including reasonable outside counsel attorneys' fees for Rule 30(b)(6) depositions, and 70 percent, excluding attorneys' fees, for collection and production of documents, are unprecedented and extremely generous.  In the interest of moving forward after 18 months of delay by the OEMs, the Parties do not object to what has already been ordered by the Special Master.  However, it would be inappropriate to award the OEMs any sums beyond those set forth in the Main Motion Order, and for that reason, the OEMs' objections should be overruled.

Collectively, the Parties' counsel includes hundreds of attorneys, many of whom specialize in litigating similar antitrust cases and have many years of experience in the field. Williams Response Decl. at ¶ 8.  In all of the Parties' collective experience, none can recall any similar price-fixing case where costs for third party discovery have been awarded in any

significant amount, if at all, let alone in such a high percentage. *Id.*[8] This is especially true in this Circuit, where the controlling case – *Blue Cross and Blue Shield of Michigan* – explicitly *rejects* cost-shifting where, as here, the OEMs have such deep ties and interest in the outcome of the litigation, where they are some of the largest and most well-resourced companies in the world with the ability to pay their own costs, and where the cases here are of such great public importance. *See United States v. Blue Cross Blue Shield of Mich.*, 2012 U.S. Dist. LEXIS 146403, at *4; *see also Ala. Aircraft Indus. v. Boeing Co.*, 2016 U.S. Dist. LEXIS 161975, at *15-19 (N.D. Ala.  Oct. 17, 2016) (finding that "non-party can be required to bear some or all of its expenses where the equities of a particular case demand it" and denying cost-shifting where nonparty was interested, and where it was fully capable of bearing its production costs); *United States v. Cardinal Growth, L.P.*, 2015 U.S. Dist. LEXIS 22577, at *6-11 (N.D. Ill. Feb. 23, 2015) (same).

1.      **The OEMs Should Not Be Awarded Further Non-Attorney Costs for Post-Deposition Follow-Up Questions**

Despite the unprecedented award of 60 percent of cost-shifting already awarded for the OEMs' participation in 30(b)(6) depositions, the OEMs now ask for additional cost reimbursement for non-attorney post-deposition follow up questions.  Objections at 13-15.  Yet, the OEMs could have entirely avoided the need for the Rule 30(b)(6) depositions, if they had simply cooperated to provide the information that could have and should have been provided to the Parties from the outset.

---

[8] *See also, e.g.,* Supplemental Declaration of Steven N. Williams in Support of End Payor Plaintiffs' Reply in Support of the Parties' Motion to Compel Discovery from Nonparty Original Equipment Manufacturers (ECF No. 1253) (Filed Under Seal) (Mar. 11, 2016), at Exhibit C attached thereto (Chart re Third Party Productions in Similar Indirect Purchaser Actions).

First, it is not unusual that where a witness is not able to provide complete answers or where technical systems are being discussed, questions may arise.  However, just as the need for the depositions was caused by the OEMs' refusal to otherwise cooperate to provide the information, so too are any reasonable questions that may stem from that process.  Second, the need for follow up was largely generated by the OEMs themselves.  Williams Response Decl. at ¶ 9.  The OEMs were provided with a detailed outline of topics and questions (at their request) so that they could sufficiently prepare and bring witnesses who could testify on those topics and answer those questions.  *Id.*  In several instances, the OEMs did not provide sufficient witness testimony to cover the topics and time periods on which information was needed.  For example, both GM and FCA did not bring witnesses to cover the topics and time period at issue.  For example, one GM witness, Mr. Hatto, was in his position at GM for only eight months and, before that, was not in a position that would have informed his testimony.  Christopher Hatto Transcript at 11:1-7 (dated August 25, 2016).  Mr. Hatto also had no knowledge of how the pricing process and data at GM changed over time.  *Id.* at 13:14-14:8.  Mr. Hatto also could not answer questions about GM's sales and marketing process systems.  *Id.* at 19:14-25.  Mr. Hatto could not testify regarding certain predecessor systems before he took his position in 2015.  *Id.* at 48:17-25, 58:7-59:10.  In certain instances, Mr. Hatto provided contradictory information, testifying in one instance one way, and in another instance, another way.  *Id.* at 28:7-18, 55:21-56:5.  *See also* FCA Deposition of Kelly Lynch at 25:6-11 (dated September 20, 2016) (when asked about FCA's retention policy, Mr. Lynch responded that the people who could best answer that question were in the "ICT" department, not involved in the deposition).  Gaps such as these left the Parties no choice but to pose follow up questions to OEM counsel.

The Parties should not be further forced to subsidize the providing of information by the OEMs to the Parties that could have, and should have, been provided at the outset. This applies equally to information that may have been provided during depositions, or any that may have been provided thereafter.

**B.      The OEMs' Demand for Attorneys' Fees is Still Inappropriate and Unreasonable**

As set forth in the Parties' briefing on the renewed motion to compel, there is no precedent or justification whatsoever for awarding the OEMs any attorneys' fees at all, and certainly not in light of the delay they have caused.  *See, e.g.,* ECF No. 1548 at 39-43.

The OEMs ignore the American Rule that litigants pay their own attorneys' fees absent statute or enforceable contract.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).  The American Rule has been extended to cases involving nonparties, including nonparties that were subpoenaed to produce documents and deposition testimony for use in antitrust suits.  *See, e.g., United States v. CBS, Inc.*, 103 F.R.D. 365, 374 (C.D. Cal. 1984) (citing *Alyeska* for the proposition that the Supreme Court "has foreclosed the ability of this Court to award fees," and denying reimbursement of counsel fees for counsel's review of documents, representation at depositions, negotiations of protective orders and other matters with party counsel, and to otherwise protect the nonparty witnesses' interests).

In addition, attorneys' fees incurred in connection with responding to a subpoena including, but not limited to, reviewing documents for privilege, confidentiality or relevance, or defending depositions, are not generally reimbursable.  *See* ECF No. 1548 at 39-43.  This is especially true where the conduct of a nonparty is the specific cause of the fees incurred, as is the case here.

1.    **It is Unreasonable and Inappropriate to Award Attorneys' Fees for the OEMs' Delay of the Discovery Process**

Aside from already receiving an unprecedented amount of cost reimbursement, the OEMs demand attorneys' fees as well.  Objections at 9-13.  The OEMs attempt to justify this demand by arguing that the subpoena was "monumentally broad" and, therefore, attorneys' fees should be paid for work in narrowing the subpoena.  *Id.* at 9.  As outlined above, even if the subpoena was big, it did not require a different level of cooperation than would exist in any other case.  Williams Response Decl. at ¶ 3.  Nor was it unworkable or void on its face.  *Id.*  There was no excuse for the OEMs' complete refusal to meet and confer with the Parties individually and to work toward understanding and, ultimately, negotiating an agreement on a narrowed list of requests, as has finally been achieved after 18 months of litigation.  *Id.*  This point is even clearer now in light of the fact that each OEM has ended up with a separate order and agreement based on the particular systems, information, and burdens pertaining to each.  *Id.*

A nonparty's attorneys' fees incurred in connection with litigating issues related to a subpoena, including whether attorneys' fees should be shifted, are not reimbursable compliance expenses.  *See, e.g., Stormans, Inc. v. Selecky*, 2015 U.S. Dist. LEXIS 5141, at *13-17 (W.D. Wash. Jan. 15, 2015) (holding that attorneys' fees related to litigating a subpoena are tenuous at best, and not what is intended to be included in Federal Rule 45(d)(2)(B)(ii)).  Even if a nonparty's attorneys' fees in certain instances theoretically could be considered reimbursable costs under Rule 45, courts deciding whether to shift fees to the serving parties, nevertheless apply the same balancing test as enunciated in *Blue Cross.  See Blue Cross*, 2012 U.S. Dist. LEXIS 146403, at *11.

Shifting of attorneys' fees is especially inappropriate here where instead of engaging in a meaningful meet-and-confer process with the Parties as the OEMs could have and should have

done from the very beginning, the OEMs chose to delay this discovery process and force the

Parties into 18 months of unnecessary litigation.[9]   The Parties should not have to pay any

attorneys' fees for this conduct, which could have all been avoided had the OEMs agreed to

cooperate in the first place.  *See, e.g., Heartland Surgical Specialty Hosp., LLC v. Midwest Div.,*

*Inc.*, 2007 U.S. Dist. LEXIS 53217, at *50-52 (D. Kan. July 20, 2007) (declining to award

attorneys' fees under Rule 45(d)(1) after noting that "a significant part of the delay and expense

concerning these subpoenas was self-imposed by [the non-parties]" by refusing "to comply with

the subpoenas … and requiring an initial round of briefing" by the parties); *Apple v. Samsung*

*Elec. Co., Ltd.*, 2013 U.S. Dist. LEXIS 67085, at *43 (N.D. Cal. May 9, 2013) (acknowledging

that a non-party should not be required to subsidize litigation, but holding that non-party subject

to a subpoena is expected to "participate in transparent and collaborative discovery"); *W.*

*Convenience Stores, Inc. v. Suncor Energy, Inc.*, 2014 WL 1257762, at *25 (D. Colo.  Mar. 27,

2014) (explaining that courts have minimized cost-shifting where costs were incurred as a result

of the subpoenaed entity's own avoidance and delay in complying with its discovery

obligations); *Cornell v. Columbus McKinnon Corp.*, 2015 U.S. Dist. LEXIS 105450, at *12-13

(N.D. Cal. Aug. 11, 2015) (recognizing that unusually hard fought compliance by a non-party

may have unnecessarily increased the cost of compliance).

    The cases offered by the OEMs do not persuade otherwise.  First, as the OEMs

acknowledge in their brief, clearly different facts support the order in *Straight Path IP Group,*

*Inc. v. Blackberry Ltd.*, 2014 U.S. Dist. LEXIS 92787 (N.D. Cal. Jul. 8, 2014).  In that case, the

serving party, Straight Path, had subjected a third party, Netflix, to multiple rounds of duplicative

---

    [9] It should also be considered that the OEMs' conduct has caused the Parties to incur a
monumental amount of expense and attorneys' fees.  At least on the Plaintiffs' side, this is likely
to diminish the net recovery to the plaintiff classes.

and repeated discovery requests in multiple related actions, including a prior subpoena in an International Trade Commission (ITC) investigation to which Netflix had responded with significant document productions without complaint by Straight Path. *Id*. at *1-3. The court's decision to impose sanctions and award Netflix its attorneys' fees and costs rested on "a parade of overbroad discovery abuse in four actions involving the same patents" and the fact that the serving party "twice propounded oppressive discovery requests only to ask for a broad subset once briefing is required." *Id*. at *19-20. In the present case, by contrast, the Parties narrowed the original subpoena even before the OEMs' lack of cooperation forced them to file a motion to compel, and then further narrowed the scope of the discovery demanded in the motion itself. The facts here are nothing like the egregious circumstances that merited fee-shifting in *Straight Path*.

The Parties' multiple efforts at narrowing the subpoena prior to the OEMs filing a single brief in response to the Motion to Compel similarly distinguish *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films*, LLC, 313 F.R.D. 39 (N.D. Tex. 2015). In that case, the serving party did not even offer to narrow its 46-page subpoena until it presented oral argument on its motion to compel. *Id*. at 58. That egregious conduct by the serving party is what led the court to find that the facially overbroad subpoena did not comply with Rule 45(d)(1)'s requirements and justified cost-shifting. *Id*. Given that the Parties in the present case agreed to narrow their subpoena multiple times as part of months of negotiations with the OEMs, *American Federation* is clearly inapt. Finally, *In re Subpoena to Schrader Bridgeport Int'l, Inc.*, 2016 U.S. Dist. LEXIS 159377 (E.D. Mich. Aug. 26, 2016), did not involve cost or fee shifting at all.

None of these cases offer any support for the extraordinary demand for attorney's fees that the OEMs now assert.

### 2. It is Unreasonable and Inappropriate to Award Attorneys' Fees for Document Collection or Production

In addition to the already-unprecedented award of 70 percent cost reimbursement for collection and production of discovery, the OEMs also continue to demand attorneys' fees for their compliance with document collection and production. Objections at 15-16. The OEMs cite **no authority** for an award of attorneys' fees in a price-fixing action like these here, where subpoenas seek the same types of documents and where efforts in collection and production would be the same. They cannot. They have also failed to describe what type of attorney work would be covered in their request. Presumably, they are claiming that the fees would be for privilege, confidentiality, and relevance review, but none of those are reimbursable under governing law. *See, e.g., Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of R.I.*, 2016 U.S. Dist. LEXIS 154313, at *11 (E.D. Pa. Nov. 4, 2016) (denying recovery of attorneys' fees incurred in connection with privilege, confidentiality, and relevance review); *Bell Inc. v. GE Lighting LLC*, 2014 WL 1630754, at *16 (W.D. Va. Apr. 23, 2014) (shifting only copying costs and costs incurred to load documents onto a database, and finding that no attorneys' fees were due); *Maximum Human Performance v. Sigma-Tau Healthscience*, 2013 WL 4537790, at *4 (D.N.J. Aug. 27, 2013) (ordering party to reimburse one-third of vendor costs to harvest ESI, and finding nonparty shall pay its own counsel fees); *Mgmt. Compensation Group Lee, Inc. v. Oklahoma State Univ.*, 2011 WL 5326262, at *4 (W.D. Okla. Nov. 3, 2011) (rejecting fee-shifting request for time spent by a nonparty's in-house counsel to review documents); *In re Am. Hous. Found.*, 2013 WL 2422706, at *2 (U.S. Bankr. N.D. Tex. June 4, 2013) (rejecting fee-shifting for a nonparty's attorneys' fees incurred to "review all aspects of its compliance" and

fees "for services that benefit the nonparty"); *G & E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 2016 WL 1258458, at *6 (D.D.C. March 30, 2016) (finding that the third party's attorneys' fees for its laborious document review process were not compensable).

## IV.   CONCLUSION

The OEMs have already been awarded an unprecedented amount of cost reimbursement. Given that the OEMs are deeply tied to this litigation, that they are massive corporations with annual gross revenues in the billions of dollars and have the ability to pay their own costs, the great importance of these litigations, and their own conduct in generating the costs and fees that have accrued, it would set a harmful precedent in this circuit and nationwide if the OEMs were to be awarded any further costs or attorneys' fees for their mere compliance and cooperation with the judicial process.  For the foregoing reasons, no further costs or attorneys' fees should be awarded to the OEMs beyond what has been ordered by the Special Master.

**EXHIBIT A**

The "OEMs" subject to this response include the following entities:

- FCA USA LLC ("FCA");

- General Motors Company, General Motors Holdings LLC, General Motors LLC (collectively, "GM");

- American Honda Motor Company, Inc., Honda Manufacturing of Indiana LLC, Honda North America, Inc., Honda of America Mfg., Inc., Honda of South Carolina Mfg., Inc., Honda Precision Parts of Georgia, LLC, Honda R&D Americas, Inc., Honda Research Institute USA, Inc., Honda Transmission Manufacturing of America, Inc. (collectively "Honda");

- Nissan Design America, Inc., Nissan Diesel America, Inc., Nissan North America, Inc., Nissan Technical Center North America, Inc. (collectively, "Nissan");

- Subaru of Indiana Automotive, Inc. ("SIA"); and

- Toyota Motor Sales USA, Inc. ("TMS") and Toyota Motor Engineering and Manufacturing North America, Inc. ("TEMA") (collectively "Toyota").

**EXHIBIT B**

The Parties' previous briefing includes:

- The Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers (ECF No. 1185) (Jan. 19, 2016);

- Declaration of Steven N. Williams in Support of the Parties' Joint Motion to Compel Discovery from Non-Party Original Equipment Manufacturers (ECF No. 1186) (Jan. 19, 2016);

- Defendants' Reply in Support of the Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers (ECF No. 1246) (Mar. 11, 2016);

- End-Payors Plaintiffs' Reply in Support of the Parties' Motion to Compel Discovery From Non-Party Original Equipment Manufacturers (ECF No. 1250) (Mar. 11, 2016);

- Certain Parties' Reply in Support of Motion to Compel Discovery from Non-Party Original Equipment Manufacturers (ECF No. 1254) (Mar. 11, 2016);

- The Parties' Renewed Motion to Compel Discovery from Certain Non-Party Original Equipment Manufacturers and their Affiliated Entities, (ECF No. 1495) (Nov. 7, 2016);

- Declaration of Steven N. Williams in Support of the Parties' Renewed Motion to Compel Discovery from Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities (ECF No. 1496) (Nov. 7, 2016); and

- The Parties' Joint Reply to Certain Non-Parties' Oppositions to the Parties' Renewed Motion to Compel Discovery, The Parties' Renewed Motion to Compel Discovery from Certain Non-Party Original Equipment Manufacturers and their Affiliated Entities (ECF No. 1548) (Dec. 2, 2016).

Dated:  January 30, 2017

Respectfully submitted,

By: /s/  *E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Tel: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiff Classes*

Steven N. Williams
Elizabeth Tran
Demetrius X. Lambrinos
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
etran@cpmlegal.com
dlambrinos@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

WILLIAM S. FARMER (SBN 46694)
DAVID BROWNSTEIN (SBN 141929)
**FARMER BROWNSTEIN JAEGER LLP**
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone (415) 962-2876
wfarmer@fbj-law.com
dbrownstein@fbj-law.com

*Attorneys for Defendants
Mitsuba Corporation and American Mitsuba Corp.*

**WINSTON & STRAWN LLP**

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
A. Paul Victor
Molly M. Donovan
Jeffrey J. Amato
**WINSTON & STRAWN LLP**
200 Park Avenue

New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
jamato@winston.com

**KERR, RUSSELL AND WEBER, PLC**
Fred K. Herrmann
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Counsel for NTN Corporation and*
*NTN USA Corporation*

/s/ Jeffrey L. Kessler (w/consent)
Jeffrey L. Kessler
A. Paul Victor
Eva W. Cole
Jeffrey J. Amato
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700 (t)
(212) 294-4700  (f)
JKessler@winston.com
PVictor@winston.com
EWCole@winston.com
JAmato@winston.com

Brandon Duke
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002
(713) 651-2636 (t)
(713) 651-2700 (f)
BDuke@winston.com

*Counsel for Defendants Panasonic Corporation and*
*Panasonic Corporation of North America*

**BUTZEL LONG**

*/s/David F. DuMouchel*  (w/consent)
David F. DuMouchel (P25658)
Sheldon Klein (P41062)
BUTZEL LONG
41000 Woodward
Bloomfield Hills, MI 48304
Telephone: (2498)258-1414
dumouchd@butzel.com
klein@butzel.com

W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Telephone: (202)663-7820
TMiller@bakerandmiller.com

*Attorneys for Defendants Tokai Rika Co., Ltd. and
TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc.*

**WEIL, GOTSHAL & MANGES LLP**

/s/ Adam C. Hemlock (w/consent)
Adam C. Hemlock
Steven A. Reiss
Lara E. Veblen Trager
Kajetan Rozga
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com
kajetan.rozga@weil.com

/s/ Frederick R. Juckniess (w/consent)
Frederick R. Juckniess
SCHIFF HARDIN LLP
350 South Main Street, Suite 210
Ann Arbor, MI 48104 (734) 222-1504
fjuckniess@schiffhardin.com

- 24 -

*Attorneys for Defendants Bridgestone Corporation and Bridgestone APM Company*

**WEIL, GOTSHAL & MANGES LLP**

/s/ Steve A. Reiss (w/consent)
Steven A. Reiss
Adam C. Hemlock
Lara E. Veblen Trager
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
lara.trager@weil.com

Fred K. Herrmann
Joanne G. Swanson
Matthew L. Powell
KERR, RUSSELL AND WEBER PLC
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
Fax (313) 961-0388
fherrmann@kerr-russell.com
jswanson@kerr-russell.com
mpowell@kerr-russell.com

*Counsel for Defendants Calsonic Kansei Corporation and Calsonic Kansei North America, Inc.*

**DUANE MORRIS LLP**

/s/ J. Manly Parks (with consent)
Wayne A. Mack
J. Manly Parks
Andrew R. Sperl
Erica Lee Fruiterman
William Shotzbarger
30 S. 17th Street

Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com
arsperl@duanemorris.com
efruiterman@duanemorris.com
wshotzbarger@duanemorris.com

*Class Counsel for Truck and Equipment Dealer Plaintiffs*

/s/ Kevin A. Rynbrandt
Kevin A. Rynbrandt
On Behalf of the Indiana Attorney General
1000 Front Street, NW
Grand Rapids, MI 49504
(615) 915 9266
kar@rynbrandt.com

*Counsel for the State of Indiana*

/s/ Timothy Fraser
Timothy Fraser
Assistant Attorney General
Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399
Direct: 850-414-3733
timothy.fraser@myfloridalegal.com

*Counsel for the State of Florida*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2017, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system which will send notification of such filing to ECF-

registered counsel in this matter.

By: /s/ E. Powell Miller
E. Powell Miller (P39487)
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com