# EXHIBIT C

| | |
|---|---|
| **From:** | Esshaki, Gene J. <gjesshaki@abbottnicholson.com> |
| **Sent:** | Wednesday, December 28, 2016 9:24 AM |
| **To:** | Justina K. Sessions; David Rowe |
| **Cc:** | Jackie Taylor; Emily Luthy; Millicent Lundburg; Robert E. Linkin; Daniel Purcell; Ian A. Kanig; Lara.Trager@weil.com; adam.hemlock@weil.com; Ronnie Spiegel; Demetrius Lambrinos; Steve Williams; Abram J Ellis; Patrick Carome; Steven Cherry; klein@butzel.com; Angela Smedley; Heather Novison; Trey Nicoud; Jeffrey J. Amato; WShotzbarger@duanemorris.com; heather.choi@bakerbotts.com; Sloane Kuney Rosenthal; Evelyn Li (evelyn@cuneolaw.com); Vicky@cuneolaw.com; Jill S. Casselman (JCasselman@RobinsKaplan.com); Cameron Bonk; Bradley Love; Elliot.Weingarten@stblaw.com |
| **Subject:** | RE: Proposed Orders re Honda |

As to the Honda Order, I rule as follows:
1. Appeal Period. The appeal period will be 14 days.
2. E-Quote Database. If these reports can be generated with all fields, all fields shall be produced. Honda shall advise the Serving Parties ASAP as to what fields are readily available and then produce them.
3. Cost Simulation System. Data for mid-year changes shall be produced.
4. Pricing Documents. Imbedded and hidden information shall be produced.
5. 30(b)(6) Witness. If the parties need another such witness, they can so advise Honda at the time with a list of topics to be covered. If Honda objects, it must be addressed to me via another motion. I will not order another 30(b)(6) witness without establishing the need and topics to be covered.

Serving parties are to redraft the Order, submit to Honda for review and return it to me for entry.

**From:** Justina K. Sessions [mailto:JSessions@kvn.com]
**Sent:** Monday, December 19, 2016 10:33 PM
**To:** David Rowe
**Cc:** Esshaki, Gene J.; Jackie Taylor; Emily Luthy; Millicent Lundburg; Robert E. Linkin; Daniel Purcell; Ian A. Kanig; Lara.Trager@weil.com; adam.hemlock@weil.com; Ronnie Spiegel; Demetrius Lambrinos; Steve Williams; Abram J Ellis; Patrick Carome; Steven Cherry; klein@butzel.com; Angela Smedley; Heather Novison; Trey Nicoud; Jeffrey J. Amato; WShotzbarger@duanemorris.com; heather.choi@bakerbotts.com; Sloane Kuney Rosenthal; Evelyn Li (evelyn@cuneolaw.com); Vicky@cuneolaw.com; Jill S. Casselman (JCasselman@RobinsKaplan.com); Cameron Bonk; Bradley Love; Elliot.Weingarten@stblaw.com
**Subject:** Re: Proposed Orders re Honda

Special Master Esshaki:

I write to briefly respond to the additional argument that the Serving Parties made in the cover letter accompanying today's submission.

<u>Time for appeal</u>

Honda submits that the default 21-day period for appeal is particularly appropriate here given the impending holidays. The Serving Parties' proposed schedule imposes a significant burden by forcing Honda to assess Your Honor's order and draft any appeal papers during the Christmas and New Year's holidays. Honda's United States offices shut down from December 24 through January 2, so we will be unable to obtain input from our client during this time period.

E-Quote database

The Serving Parties misapprehend the nature of the E-Quote database. While reports can be generated from E-Quote, running those reports is not a matter of simply running a script to return "all fields." Honda is willing to produce reports from E-Quote that show RFQs, dates, bids, price changes, and the reason codes for such changes. This should be more than sufficient for the Serving Parties' needs.

CSS Reports

Honda has already produced CSS data (including the supplier and price for every single part incorporated into a vehicle) for every major model change during the subpoena period. This is already a massive amount of data. The Serving Parties now demand the same data for mid-model changes simply because sourcing "can change." But this demand is speculative and does not outweigh the burden of producing significant additional reports for all model changes, no matter how minor. Further, as the concept of a "minor model change" is subjective, the Serving Parties' demand amounts to a demand for a CSS report for every single manufacturing year of every single Honda vehicle.

Pricing documents

Honda has already produced the checkpoint PowerPoint files and the vehicle invoice breakdown spreadsheets. The Serving Parties have identified no specific documents from this production for which they also would like source or backup data. Despite taking a deposition of Honda's pricing designee witness, they have not shown that such source or backup data would include any information not already contained in the checkpoint documents. Neither have the Serving Parties shown that source and backup data would be stored on the shared drive containing the checkpoint documents. Honda cannot be expected to conduct a wholesale document search for source data that may add nothing to the material already produced. Finally, the relevance of this hypothetical source/backup data is marginal at best, as the presentations themselves are what are used during Honda's pricing meetings and decision-making process, not any source or backup data. Honda's already significant production is more than sufficient.

30(b)(6) witness on downstream sales

Honda has already offered to produce the "downstream" transactional data that the serving parties requested – both the data on Honda's purchases from its own factories and transaction-by-transaction-level data on Honda's sales to its dealers. Honda will also produce the data on sales to end-consumers that it has, after the dealers are

notified. Honda has also already produced a schedule of its MSRP and dealer-invoice prices, samples of its pricing announcements (which do not vary significantly from announcement to announcement), and incentive information. Honda has answered the Serving Parties' numerous questions about downstream data. The Serving Parties don't even bother to identify a single piece of specific relevant information that they seek from yet another 30(b)(6) deposition on Honda's documents and data, and Honda maintains that an additional deposition would impose an unnecessary burden. To the extent the Special Master does order an additional deposition, Honda requests that the Serving Parties identify the topics with more specificity so that Honda can identify the proper witness.

Justina Sessions
Keker & Van Nest LLP

On Dec 19, 2016, at 6:35 PM, David Rowe <drowe@dbcllp.com> wrote:

> Special Master Esshaki:
> On behalf of the Parties (as defined in the attached, proposed Order), I write to submit the enclosed proposed Order regarding Honda, and to very briefly address the items that remain unresolved between the Moving Parties and Honda. The Parties are continuing to work with Honda to resolve these open items, but nevertheless offer this submission in accordance with the Special Master's instruction to submit proposed Orders, and where necessary, short letter briefs on or before December 19, 2016.
>     The enclosed Order is in two parts, a cover order with general, operative language, and an attached Exhibit A that includes references to specific data and/or document types. As for the cover order, Honda and the Moving Parties agree to the form with one exception: In accordance with the Special Master's instruction to expedite the appellate timeline for any objections to the Special Master's Order, the Parties are proposing a deadline of 14 days in which to file any appeals. Honda is asking for the default 21 day time to appeal.
>     As for the Exhibit A, the Parties and Honda agree to the form, except for four specific areas that have been highlighted. Honda's preferred language is in yellow; the Parties' preferences are in green. We also include a Word version of the cover order and the attached Exhibit A so the Special Master may edit and print a final version after deciding whether to adopt Honda's or the Moving Parties' proposed language.
>     Here is a brief summary of the four open areas, and the positions of each party:
> 1. **E-quote database**. The E-quote database is a portal based system in which Honda maintains information regarding its RFQs, bids, and price history for its parts acquisition. Honda proposes to produce only self-queried reports with unidentified but apparently limited fields. The Parties are amendable to accepting reports in lieu of a copy of the entire database, but ask the Court to Order Honda to include all fields in the reports that are produced so the Parties will have access to all of the relevant data. The information is obviously relevant, and the burden on Honda to include all fields is no more burdensome than producing a more limited report. Moreover, the Parties are seeking only the live data, which is consistent with the Special Master's general order regarding production of live data.

2. **Cost Simulation System database.** The Cost Simulation System ("CSS") database is what Honda uses to track its anticipated vehicle costs, including adjustments as the model is being developed. Honda has already produced reports from the CSS database for all full-model changes, but refuses to produce similar reports for mid-model changes. The Parties seek mid-model reports because some part sourcing can change during a model refresh cycle, as do actual part prices. And like the E-quote database, the Parties are seeking production of reports from live data only.

3. **Pricing documents.** Honda has agreed to produce only two specific types of documents from the pricing department's shared file server: (i) "checkpoint" PowerPoint files, and (ii) vehicle invoice breakdown spreadsheets. The Parties are willing to accept this offer, but only if Honda produces the files in their native format so that all imbedded and/or "hidden" information, including things such as speaker notes and spreadsheet formulas is included in the production. The Parties also ask that Honda produce the source documents, such as excel spreadsheets, from which the data is taken that appears in the PowerPoint files. The Parties submit that this data is not only highly relevant, but copying its contents does not represent any particular burden on Honda in light of Barron Umemoto's testimony that all of the pricing data resides on a single shared file server and can be readily accessed and copied.

4. **30b6 witness on downstream sales**. Honda has or will produce VIN level transactional data for (1) AHM purchases from the factory, and (2) AHM sales to dealers. Honda has refused, however, to present a corporate representative to testify as to the types of documents and data created and maintained by Honda relating to downstream sales, which prevents the Parties from knowing whether Honda possess additional, relevant information that should be produced. The Parties therefore ask the Court to compel Honda to comply with Judge Battani's original ruling by presenting a witness on this topic, and allowing the Parties to supplement their Motion to Compel, if necessary, based on information obtained from the deposition.

Thank you for your careful consideration of the Parties' position. We ask that you approve the form of Order as requested by the Parties, and order all other relief to which the Moving Parties may be entitled.

**J. David Rowe**
**DuBOIS BRYANT & CAMPBELL**
303 Colorado, Suite 2300
Austin, TX 78701
**D**:(512) 381-8020
**M**:(512) 923-5125
**F**:(512) 457-8008
bio



*Confidentiality Notice*

4

*This communication and any accompanying documents are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication or any attached document is strictly prohibited. Moreover, any such disclosure shall not compromise or waive the attorney-client or other privileges as to this communication or otherwise. If you have received this communication in error, please contact me by reply email and destroy all copies of the original message and any attached documents.*