UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Case No.: 12-MD-02311<br>Honorable Marianne O. Battani |
| ALL PARTS | 2:12-MD-02311-MOB-MKM |
| | **Oral Argument Requested** |
| THIS RELATES TO: ALL CASES | |

**CERTAIN NON-PARTY ORIGINAL EQUIPMENT MANUFACTURERS' REPLY IN SUPPORT OF THEIR OBJECTION TO ORDER REGARDING THE PARTIES' RENEWED MOTION TO COMPEL DISCOVERY**

The SSEs continue to incur substantial expenses related to the Parties' subpoena, which the Special Master described as "all encompassing and breathtaking in scope" (Dec. 9, 2016 Hrg. Tr. at 27 (ECF 1572)) – likely the largest in the history of the United States federal court system. The Parties cannot now wash their hands of the burdens *knowingly* imposed, and should reimburse substantial portions of the SSEs' costs, including attorneys' fees, for appropriately narrowing, responding to, and complying with the subpoena.

The subpoena's storied past put the Parties on notice that serving it would *necessarily* engender a vigorous response from the SSEs – who the Special Master acknowledged have a "vital interest" in limiting the burden and expense of compliance. (ECF 992 p. 5). The Court did not deny the strenuous pre-service objections to the subpoena on the merits – rather, they were denied as premature, or because the DPPs lacked standing to object. (ECF 992 pp. 4-5). The Court has *never* blessed the subpoena as reasonable or proportional to the needs of the case.

1

The Parties claim the SSEs delayed discovery with collective attorney conferences; however, they do not cite any statute, rule, or case obliging the SSEs to confer individually rather than collectively; ignore the fact that the Court itself deemed this approach "probably very smart" (Jan. 20, 2016 Hrg. Tr. at 70 (ECF 1204)); and do not even speculate as to how multiple individual attorney conferences would have been more efficient or effective in light of significant common threshold issues. The correspondence between the SSEs and the Parties (ECF 1227-5 through 1227-19) documents the SSEs' efforts to reach accord on common issues, and the Parties' response. That correspondence is already before the Court, and speaks for itself. The equities of the case strongly militate against requiring the SSEs to bear the expenses (including attorney's fees) related to narrowing the black hole that was the original subpoena.

### A. The Court Should Award Attorneys' Fees and Other Expenses Under FED.R.CIV.P. 45(d)(1)

The Parties inappropriately conflate awards under Federal Rules 45(d)(1) and 45(d)(2)(b)(ii). A Rule 45(d)(1) award is appropriate when an issuing party breaches its *affirmative duty* to serve a subpoena that is not unduly burdensome or expensive. *Stormans Inc. et al. v. Selecky et al.*, 2015 WL 224914, *5 (W.D. Wash. Jan. 15, 2015). It is a "sanction" imposed to enforce the party's duty, and may include "reasonable attorneys' fees." *Id.*; FED.R.CIV.P. 45(d)(1). A party's abuse of subpoena power is "exactly what Rule 45(d)(1) is meant to address." *Selecky*, 2015 WL 224914 at *6. By contrast, an award under Federal Rule 45(d)(2)(B)(ii) shifts a nonparty's "significant expense" incurred complying with an order to produce subpoenaed documents. *Id*. at *4. There is "no doubt" compliance expenses may include in house and outside attorneys' fees resulting from "production-related legal tasks." *Id*. at *5.

The Parties cite *Selecky* for the proposition that "[a] nonparty's attorneys' fees incurred in connection with litigating issues related to a subpoena, including whether attorneys' fees should

be shifted, are not reimbursable compliance expenses." (ECF 1625 p. 14). However, the court emphasized that such fees *are* reimbursable under Rule 45(d)(1). *Id*. at *5. Further, *Selecky* did *not* hold (as the Parties assert) that "attorneys' fees related to litigating a subpoena are tenuous at best …." (ECF 1625 p. 14). Rather, it stated "[i]t is a tenuous proposition, at best, that attorneys' fees incurred *resisting* a subpoena are expenses related to compliance." *Selecky*, 2015 WL 224914 at *5. Such fees instead fall "exactly" within Rule 45(d)(1). *Id* at *5-6.

The Parties cite various cases in support of their proposition that "there is no precedent or justification whatsoever for awarding the [SSEs] any attorneys' fees at all" (ECF 1625 p. 13), particularly as it pertains to a fee award under Rule 45(d)(1). However, none of those cases apply to the SSEs' request for relief. *Alyesaka Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975) involved a prevailing litigant's request for attorney fees and expenses. *United States v. CBS, Inc.*, 103 FRD 365, 367, 374 (C.D. Cal. 1984) denied a nonparty subpoena recipient's request for outside counsel fees incurred as *compliance costs*. Further, *Alyeska* and *CBS* were decided before the 1991 Amendments to Federal Rule 45, which added the provisions now set forth in subsection (d) and provide a basis for the Court to award attorney fees as a compliance-related expense. The Parties' other cases are also inapplicable to Rule 45(d)(1): each involved a request for *compliance-related* attorney fees; and each is factually distinguishable.[1]

The Parties' central tenet appears to be that regardless of a subpoena's burden or expense, any effort to narrow it is self-imposed delay that rules out Rule 45(d)(1) relief. That is not the

---

[1] *See Management Compensation Group Lee, Inc. et al. v. Oklahoma State Univ.*, 2011 WL 5326262, *4 (W.D. Okla. 2011) (nonparty admitted the document production work would not materially impact its operations or prevent cousel from providing necessary legal services, and would not result in additional out-of-pocket expense); *In re Amer. Housing Found.*, 2013 WL 2422706, *2 (N.D. Tex. 2013) (nonparty specifically disclaimed undue burden); *G&E Real Estate, Inc. v. Avison Young – Washington, D.C., LLC et al.*, 317 FRD 313 (D. D.C. 2016) (court determined that the nonparty incurred the fees to "serve[] its own interests"); *Maximum Human Performance, LLC v. Sigma-Tau Healthscience, LLC,* 2013 WL 4537790 at *4 (D. N.J. 2013) (denying without analysis the nonparty's request for compliance-related attorney fees (not holding that such fees are never recoverable)); *Cornell v. Columbus McKinnon Corp., et al.,* 2015 WL 4747260 (court could not conclude expenses were "significant" under the facts).

3

law. The Parties cite *Heartland Surgical Specialty Hosp., LLC v. Midwest Division, Inc.*, 2007 WL 2122437 (D. Kan. 2007) to support their claim that SSEs could have avoided incurring attorneys' fees by simply "cooperat[ing] in the first place." (ECF 1625 p. 15). The Parties' selective quotation from *Heartland* is misleading.[2] By ignoring their affirmative duty to take reasonable steps to avoid imposing and undue burden and expense on the SSEs, the Parties inappropriately shifted the burden of narrowing and properly tailoring the subpoena to the SSEs. Under Federal Rule 45(d)(1), the Parties should be required to pay the SSEs' attorneys' fees incurred in that process.

### B. The Court Should Award Expenses Under Rule 45(d)(1)(B)(ii)

The Parties' position on non-attorney costs for **post-deposition follow-up questions** ignores the Special Master's non-appealed decision to shift costs for deposition-related time. The Parties' complaint that they should not be "forced to subsidize" the provision of information they allege should have been provided at the outset is thus unavailing. The Parties offer no reason why the 60% cost-shift should not apply to substantial employee time spent researching and responding to additional questions the Parties posed after the depositions.

The Parties claim "it is not unusual" for there to be additional questions when technical systems are being discussed or a witness cannot provide "complete" answers. (ECF 1625 p. 12). If true, this provides more support for the view that such questions should be treated identically

---

[2] The *Heartland* court did *not* hold that the nonparties delayed discovery "by refusing 'to comply with the subpoenas … and requiring an initial round of briefing' by the parties." (ECF 1624 p. 15). The proper quotation is that the nonparties "are the ones who refused to comply with the subpoenas *after United settled*, thus requiring an initial round of briefing as to whether the subpoenas were enforceable by the remaining Defendant." *Heartland*, 2007 WL 2122437 *14 (emphasis added). United had served the subpoena, and the nonparties were "actively discussing … what documents could be produced and how to resolve some of their objections" when United was dismissed. *Id.* at n.14. The nonparties reversed course "[a]t the last minute" and refused to comply with the subpoena (*id.* at n.14), "thus requiring an initial round of briefing as to whether the subpoenas were enforceable …." *Id.* at *14. The nonparties' "self-imposed" delay and expense resulted from a last-minute course reversal, which does not – as the Parties intimate – encompass any and all refusals to immediately comply with an unduly burdensome and expensive subpoena.

to the deposition itself. The Parties also claim that the SSEs "largely generated" the need for follow-up; however, they do not address their decision to use their deposition time to ask substantive questions outside of the scope of the Court-ordered discovery. (ECF 1602 p. 14; ECF 1526 p. 5 and n.5 (filed under seal)). To support this assertion, they cite to limited purported examples from a single witness, but provide no support for the other SSEs causing a need for follow-up. Further, before their Response, the Parties raised no concerns about the level of SSE witness preparedness or their ability to provide responsive information.

The SSEs' cooperation in responding to follow-up questions served the same purpose as the depositions, and should be subject to the same cost-shifting.

The Parties' opposition to cost-shifting **attorney's fees for document collection and production** is flawed in suggesting this is never appropriate in antitrust cases. The Special Master has already exercised his non-appealed discretion to shift attorneys' fees in part to the Parties. The Parties state no logical basis for distinguishing between deposition-related attorney fees and those related to document collection and production. Instead, they claim that fees for "privilege, confidentiality, and relevance review" are not reimbursable under "governing law." That is patently incorrect. None of the cases the Parties cite are "governing law," and they merely stand for the general proposition that it is within the Court's discretion to award attorneys' fees (including those related to document production) to nonparty subpoena recipients. Several of the Parties' cases state this explicitly.[3] That the Parties have identified some cases where courts have exercised their discretion to *not* award attorneys' fees does not change the analysis.

---

[3] *See, e.g., Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of R.I.*, 2016 U.S. Dist. LEXIS 154313, at *8, 10-11 (E.D. Pa. 2016); *In re Am. Hous. Found.*, 2013 WL 2422706, at *2. Courts around the country have awarded attorneys' fees as compliance costs. *See, e.g., In re Am. Nurses Assn.*, 2016 WL 1381352, at *2 (4th Cir. 2016); *Pac. Gas & Elec. Co. v. Lynch*, 2002 WL 32812098, at *3 (N.D. Cal. 2002); *Kisser v. Coal. for Religious Freedom*, 1995 WL 590169 (E.D. Pa. 1995); *In re Am. Hous. Found.*, 2013 WL 2422706 at *2.

Respectfully submitted,

| | |
|---|---|
| /s/ Kimberly C. Metzger<br>Kimberly C. Metzger<br>Thomas E. Mixdorf<br>ICE MILLER LLP<br>One American Square, Suite 2900<br>Indianapolis, IN  46282-0200<br>Kimberly.Metzger@icemiller.com<br>Thomas.Mixdorf@icemiller.com<br>Telephone:  (317) 236-5832<br>Facsimile:  (317) 592-4708<br><br>*Attorneys for Subaru of Indiana Automotive, Inc.* | NISSAN NORTH AMERICA, INC.<br><br>By:  */s/E. Paul Cauley, Jr.*<br>E. Paul Cauley, Jr.<br>DRINKER BIDDLE & REATH LLP<br>1717 Main Street<br>Suite 5400<br>Dallas, TX 75201<br>Paul.cauley@dbr.com<br>(469) 357-2503<br><br>SEDGWICK LLP<br>Anthony Anscombe<br>anthony.anscombe@sedgwicklaw.com<br>One North Wacker Drive, Suite 4200<br>Chicago, IL 60606-2841<br>Telephone: 312-641-9050<br>Facsimile: 312-641-9530 |
| */s/* Michael Schaper<br>Michael Schaper<br>David B. Noland<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Ave<br>New York, NY 10022<br>Tel: 212-909-6000<br>mschaper@debevoise.com<br><br>Thomas P. Branigan (P41774)<br>BOWMAN & BROOKE LLP<br>41000 Woodward Avenue, Ste. 200 East<br>Bloomfield Hills, MI  48304<br>Tel: 248-205-3300<br>tom.branigan@bowmanandbrooke.com<br><br>*Attorneys for Toyota Motor Sales USA, Inc. and Toyota Motor Engineering & Manufacturing North America, Inc.* | /s/ *Colin R. Kass*<br>Colin R. Kass<br>Scott M. Abeles<br>PROSKAUER ROSE LLP<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C.  20004<br>(202) 416.6800<br>ckass@proskauer.com<br>sabeles@proskauer.com<br><br>David A. Munkittrick<br>PROSKAUER ROSE LLP<br>11 Times Square<br>New York, New York 10036<br>(212) 969.3000<br>dmunkittrick@proskauer.com<br><br>and |

|  | /s/ *Cheryl A. Bush* <br> Cheryl A. Bush (P37031) <br> Susan McKeever (P73533) <br> BUSH SEYFERTH & PAIGE PLLC <br> 3001 W. Big Beaver Road, Suite 600 <br> Troy, MI 48084 <br> (248) 822.7800 <br> bush@bsplaw.com <br><br> *Attorneys for FCA US LLC* |
|---|---|
| /s/ Daniel Purcell <br> Daniel Purcell <br> Justina Sessions <br> Ian Kanig <br> KEKER & VAN NEST LLP <br> 633 Battery Street <br> San Francisco, CA 94111-1809 <br> Telephone:  415 391 5400 <br> Facsimile:  415 397 7188 <br> dpurcell@kvn.com <br> jsessions@kvn.com <br> ikanig@kvn.com <br><br> *Attorneys for Non-Party HONDA* | By: /s/ *Adam B. Wolfson* <br>     Adam B. Wolfson <br> **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br> 865 S. Figueroa St., 10th Floor <br> Los Angeles, CA  90017 <br> Tel:  213-443-3000 <br> Fax:  213-443-3100 <br> adamwolfson@quinnemanuel.com <br><br> *Attorney for General Motors LLC, General Motors Company, General Motors Financial Company, Inc., and General Motors Holdings LLC* |

7

```
```

## CERTIFICATE OF SERVICE

I certify that on February 6, 2017, I caused a copy of the foregoing *Certain Non-Party Original Equipment Manufacturers' Reply In Support of Their Objection to Order Regarding the Parties' Renewed Motion to Compel Discovery* to be electronically filed via the Court's ECF system, which will serve notification of such filing to all counsel of record for the Parties.

/s/ Kimberly C. Metzger
Kimberly C. Metzger