**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| In Re:   AUTOMOTIVE PARTS | ) | 12-md-02311 |
| ANTITRUST LITIGATION | ) | Honorable Marianne O. Battani |
| | ) | |
| | ) | |
| In re:   All Auto Parts Cases | ) | 2:12-md-02311-MOB-MKM |
| | ) | |
| | ) | |
| THIS RELATES TO: | ) | |
| | ) | |
| ALL AUTO PARTS CASES | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S ORDER**
**COMPELLING THE OEMS TO PRODUCE CONFIDENTIAL SETTLEMENT**
**AGREEMENTS AND PRIVILEGED SETTLEMENT COMMUNICATIONS**

## STATEMENT OF THE ISSUES PRESENTED

1.      Did the Special Master err in compelling the OEMs to produce confidential settlement agreements with Defendants where Moving Plaintiffs did not request production of settlement agreements, much less demonstrate their relevance to Moving Plaintiffs' claims, where the Master never found them relevant and they are not relevant, where disclosure of the settlement agreements may reveal competitively sensitive and potentially compromising business information of the parties to the agreements, and where disclosure would impede ongoing and future settlement discussions between OEMs, Defendants, and class plaintiffs?

**Answer:  Yes**

2.       Did the Special Master err in compelling the OEMs to produce documents describing Defendants' statements to OEMs made at the outset of confidential settlement negotiations regarding the nature and scope of the alleged antitrust conspiracies, notwithstanding the Sixth Circuit's recognition of a settlement privilege covering "any communications made in furtherance of settlement" and where compelled production of these documents may reveal competitively sensitive and potentially compromising business information of the parties to the agreements and would impede ongoing and future settlement discussions between OEMs, Defendants, and class plaintiffs?

**Answer:  Yes**

3.      Did the Special Master err in compelling the OEMs to produce settlement agreements and settlement communications that relate to parts not subject to current litigation by Moving Plaintiffs either because all defendants in cases regarding those parts have settled with Moving Plaintiffs or because Moving Plaintiffs never filed a case regarding those parts?

**Answer:  Yes**

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ............................................................... i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. vi

INDEX OF EXHIBITS ...................................................................................... viii

INTRODUCTION .............................................................................................1

BACKGROUND ..............................................................................................3

STANDARD OF REVIEW ..................................................................................8

ARGUMENT ..................................................................................................8

I.   The Special Master Erred In Ordering The OEMs To Produce Confidential Settlement
     Agreements With Suppliers, Including Defendants ....................................................8

     A.   The Special Master Exceeded His Authority In Compelling Production Of
          Settlement Agreements. ...................................................................................9

     B.   The Settlement Agreements Are Irrelevant To Moving Plaintiffs' Claims. ......................11

     C.   Compelled Production Of Settlement Agreements Is Disproportionate And Will
          Impede Settlement. ........................................................................................13

II.  The Special Master Erred In Ordering The OEMs To Produce Privileged Settlement
     Communications. ..........................................................................................15

     A.   The Settlement Privilege Protects "All Communications Made in Furtherance of
          Settlement." ................................................................................................16

     B.   Communications Regarding The Alleged Misconduct Are Privileged Even When
          Made At An Initial Meeting In Furtherance Of Settlement. ........................................18

     C.   The Master's Order Conflicts with *Goodyear*'s Holding, This Court's Desire For
          Settlement, and the Strong Public Policy Encouraging Settlement. ...............................22

     D.   Neither The Special Master Nor Moving Plaintiffs Identified Any Legitimate,
          Admissible Use For The Settlement Communications. ..............................................23

III. The Special Master Erred In Ordering Production of Documents Regarding Products As To
     Which No Moving Plaintiff Has A Pending Case. ...................................................24

CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advance Publ'ns, Inc. v. United States (In re Antitrust Grand Jury)*,
    805 F.2d 155 (6th Cir. 1986) ....................................................................21

*Allen Cnty. v. Reilly Indus.*,
    197 F.R.D. 352 (N.D. Ohio 2000) ...........................................................19

*Anderson v. Clarksville Montgomery Cnty. Sch. Bd. & Sch. Dist.*,
    229 F.R.D. 546 (M.D. Tenn. 2005) ............................................................9

*Apex Oil Co. v. DiMauro*,
    110 F.R.D. 490 (S.D.N.Y. 1985) ......................................................13, 15

*Automated Solutions Corp. v. Paragon Data Sys., Inc.*,
    756 F.3d 504 (6th Cir. 2014) ....................................................................20

*Banner v. City of Flint*,
    99 F. App'x. 29 (6th Cir. 2004) ................................................................20

*Bottaro v. Hatton Assocs.*,
    96 F.R.D. 158 (E.D.N.Y. 1982) ........................................................12, 13

*Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*,
    687 F.2d 182 (7th Cir. 1982) ....................................................................23

*Burlington v. News Corp.*,
    No. 09-1908, 2015 WL 2070063 (E.D. Pa. May 4, 2015) ..................12, 13

*Chan v. City of Chi.*,
    No. 91 C 4671, 1992 WL 170561 (N.D. Ill. July 16, 1992) ....................24

*Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*,
    854 F.2d 900 (6th Cir. 1988) ....................................................................18

*Cook v. Yellow Freight Sys., Inc.*,
    132 F.R.D. 548 (E.D. Cal. 1990) .............................................................18

*FDIC v. Ernst & Ernst (In re Franklin Nat'l Bank Secs. Litig.)*,
    92 F.R.D. 468, 472 (E.D.N.Y. 1981) .......................................................17

*Flagg ex rel. Bond v. City of Detroit*,
    268 F.R.D. 279 (E.D. Mich. 2010) ...........................................................13

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
 332 F.3d 976 (6th Cir. 2003) .......................................................................... passim

*Herbert v. Lando*,
 441 U.S. 153 (1979)................................................................................................15

*Holly v. UPS Supply Chain Solutions, Inc.*,
 No. 3:13-cv-980-DJH-CHL, 2015 WL 3850103 (W.D. Ky. June 22, 2015) .........................23

*In re the Cincinnati Enquirer*,
 94 F.3d 198 (6th Cir.1996) ....................................................................................18

*Jeld-Wen, Inc. v. Agc Am., Inc.* (*In re Flat Glass Antitrust Litig.*),
 Misc. 9-180; MDL No. 1942; No. 11-658, 2013 WL 1703864 (W.D. Pa. Apr.
 19, 2013) .........................................................................................................12, 13

*Johnson v. Nyack Hosp.*,
 169 F.R.D. 550 (S.D.N.Y. 1996) .........................................................................13, 15

*Konyn v. Lake Superior & Ishpeming R.R. Co.*,
 No. 2:11-cv-51, 2012 WL 10276153 (W.D. Mich. Feb. 3, 2012) ..........................................10

*Lyondell Chem. Co. v. Occidental Chem. Co.*,
 608 F.3d 284 (5th Cir. 2010) .............................................................................17, 22

*Mann v. Univ. of Cincinnati*,
 114 F.3d 1188, 1997 WL 280188 (6th Cir. May 27, 1997).........................................8

*Mitchell v. Fishbein*,
 227 F.R.D. 239 (S.D.N.Y. 2005) ...........................................................................15

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978)................................................................................................24

*Palmieri v. New York*,
 779 F.2d 861 (2d Cir.1985)....................................................................................17

*Polec v. Northwest Airlines, Inc.* (*In re Air Crash Disaster*),
 86 F.3d 498 (6th Cir. 1996) ...................................................................................15

*Prudential Ins. Co. of Am. v. Curt Bullock Builders, Inc.*,
 626 F. Supp. 159 (N.D. Ill. 1985) .........................................................................23

*Robinson v. Shelby Cnty. Bd. of Educ.*,
 566 F.3d 642 (6th Cir. 2009) .................................................................................15

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*,
 No. 2:06-cv-899, 2007 WL 1723506 (S.D. Ohio June 11, 2007)..........................................19

*Sims v. Piper*,
    No. 07-14380, 2008 WL 3318746 (E.D. Mich. Aug. 8, 2008) ..............................................11

*Snap-On Bus. Solutions Inc. v. Hyundai Motor Am.*,
    No. 5:07-cv-1961, 2011 WL 6957594 (N.D. Ohio Feb. 3, 2011) ..........................................19

*State Farm Mut. Auto. Ins. Co. v. Hawkins*,
    No. 08-10367, 2010 WL 2287454 (E.D. Mich. June 4, 2010) ..............................................20

*Thornton v. State Farm Mut. Auto Ins. Co.*,
    No. 1:06-cv-00018, 2006 WL 3499986 (N.D. Ohio Dec. 5, 2006) ........................................19

*Trammel v. United States*,
    445 U.S. 40 (1980) ..................................................................................................................17

*United States v. 416.81 Acres of Land*,
    514 F.2d 627 (7th Cir. 1975) .................................................................................................24

*United States v. Contra Costa Cty. Water Dist.*,
    678 F.2d 90 (9th Cir. 1982) ...................................................................................................18

*Vamplew v. Wayne St. Univ. Bd. of Governors*,
    No. 12-14561, 2014 WL 266407 (E.D. Mich. Jan. 24, 2014) ..............................................11

*Wagner v. Circle W Mastiffs*,
    Nos. 08-431, 09-172, 2013 WL 2096655 (S.D. Ohio May 14, 2013) ...................................12

## OTHER AUTHORITIES

9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §
    2459, Westlaw (database updated Apr. 2016) ..........................................................................9

Fed. R. Civ. P. 26 ..........................................................................................................2, 8, 11, 13

Fed. R. Civ. P. 26(b)(1) ..........................................................................................................11, 13, 24

Fed. R. Civ. P. 26(b)(5) ..................................................................................................................16

Fed. R. Civ. P. 26(c)(1) ..................................................................................................................13

Fed. R. Civ. P. 53(f)(3)-(5) ..............................................................................................................8

Fed. R. Evid. 408 ....................................................................................................................17, 23

Fed. R. Evid. 408(a) ........................................................................................................................23

E.D. Mich. L.R. 16.3(d) ..................................................................................................................22

**STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

I.  The Special Master Erred In Ordering The OEMs To Produce Confidential
    Settlement Agreements With Suppliers, Including Defendants.

    A.  The Special Master Exceeded His Authority In Compelling Production Of
        Settlement Agreements

        •  Order Appointing a Master, ECF No. 792.

    B.  The Settlement Agreements Are Irrelevant To Moving Plaintiffs' Claims

        •  Federal Rule of Civil Procedure 26

        •  *Vamplew v. Wayne St. Univ. Bd. of Governors*, No. 12-14561, 2014 WL 266407
            (E.D. Mich. Jan. 24, 2014)

        •  *Jeld-Wen, Inc. v. Agc Am., Inc.* (*In re Flat Glass Antitrust Litig.*), Misc. 9-180;
            MDL No. 1942; No. 11-658, 2013 WL 1703864 (W.D. Pa. Apr. 19, 2013)

        •  *Wagner v. Circle W Mastiffs*, Nos. 08-431, 09-172, 2013 WL 2096655 (S.D. Ohio
            May 14, 2013)

    C.  Compelled Production Of Settlement Agreements Is Disproportionate And Will
        Impede Settlement.

        •  Federal Rule of Civil Procedure 26

        •  *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir.
            2003)

        •  *Polec v. Northwest Airlines, Inc. (In re Air Crash Disaster)*, 86 F.3d 498 (6th Cir.
            1996)

        •  *Flagg ex rel. Bond v. City of Detroit*, 268 F.R.D. 279 (E.D. Mich. 2010)

        •  *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490 (S.D.N.Y. 1985)

II.  The Special Master Erred In Ordering The OEMs To Produce Privileged Settlement
    Communications

    A.  The Settlement Privilege Protects "All Communications Made in Furtherance of
        Settlement."

        •  *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir.
            2003)

B.   Communications Regarding The Alleged Misconduct Are Privileged Even When Made At An Initial Meeting In Furtherance Of Settlement

- *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)

- *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-cv-899, 2007 WL 1723506 (S.D. Ohio June 11, 2007)

- *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3499986 (N.D. Ohio Dec. 5, 2006)

- *Advance Publ'ns, Inc. v. United States (In re Antitrust Grand Jury)*, 805 F.2d 155 (6th Cir. 1986)

C.   The Master's Order Conflicts with *Goodyear*'s Holding, This Court's Desire For Settlement, and the Strong Public Policy Encouraging Settlement.

- *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)

D.   Neither The Special Master Nor Moving Plaintiffs Identified Any Legitimate, Admissible Use For The Settlement Communications

- *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)

- Federal Rule of Evidence 408

III.   The Special Master Erred In Ordering Production of Documents Regarding Products As To Which No Moving Plaintiff Has A Pending Case

- Federal Rule of Civil Procedure 26

- *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)

# INDEX OF EXHIBITS

EXHIBIT 1      Subpoena, dated July 15, 2015

EXHIBIT 2      Hearing Transcript, March 24, 2016

EXHIBIT 3      Hearing Transcript, December 9, 2016

EXHIBIT 4      Moving Plaintiffs' Proposed Order

EXHIBIT 5      Defendants and OEMs' Proposed Order

EXHIBIT 6      Order of Special Master Granting in Part and Denying in Part Certain Serving
Parties Motion to Compel Production in Response to Request No. 31 in the Serving
Parties' OEM Subpoena, ECF No. 1622.

EXHIBIT 7      Order Appointing a Master, ECF No. 792.

EXHIBIT 8      Hitachi Auto. Sys, Ltd. Auto. Dealership Settlement Agreement

## INTRODUCTION

Over the OEMs' and Defendants' objections, and contrary to the Court's expressed desire to promote settlement discussions among all of the parties in this MDL, the Special Master compelled the OEMs to produce to the Automobile Dealership Plaintiffs, End-Payor Plaintiffs, Truck & Equipment Dealership Plaintiffs, and the States of Florida and Indiana (collectively, "Moving Plaintiffs") two categories of highly sensitive documents regarding settlement discussions: (1) final settlement agreements between an OEM and any Defendant; and (2) documents describing confidential communications between an OEM and a Defendant at "initial meetings" regarding settlement "concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent, as well as descriptions of parts involved and of the wrongful acts of the conspirators." The Special Master issued that decision despite the fact that Moving Plaintiffs did not move to compel production of settlement agreements, which are irrelevant to their claims. Equally troubling, the Master's blanket order requiring OEMs to produce confidential communications made at "initial meetings" with suppliers regardless of whether those communications were about settlement flies in the face of Sixth Circuit case law holding that *any* communication in furtherance of settlement is privileged. The Special Master's decision, if upheld, will impede Defendants, OEMs, and class plaintiffs from settling this and related litigation because they will be discouraged from engaging in the uninhibited communications that have led to the settlements reached to date and that are necessary to resolve disputes if they fear their agreements or statements will later be used against them by third-parties like Moving Plaintiffs.

The Special Master erred in ordering the production of OEM settlement agreements for several reasons. *First*, the Special Master exceeded his authority in compelling production of the settlement agreements because Moving Plaintiffs never mentioned, let alone sought production of, settlement agreements in their discovery request or motion to compel. Under this Court's Order

Appointing a Master, the Master's authority is limited to the dispute submitted to him, and he lacks power to decide other matters. *Second*, the Special Master never determined that the OEM settlement agreements are relevant to Moving Plaintiffs' claims, the Moving Plaintiffs never showed they are relevant, and they are not. Moving Plaintiffs are *indirect* purchasers. But the OEMs are absent members of the *direct* purchasers' purported class. The terms of Defendants' settlements with direct purchasers who are not members of Moving Plaintiffs' proposed classes have no relevance to Moving Plaintiffs' claims. *Third*, compelling production of settlement agreements conflicts with Rule 26's discovery standard given Moving Plaintiffs' lack of need for the agreements and the strong public policy favoring facilitation of settlement. Disclosure of the settlement agreements will heighten the parties' reluctance to make the compromises necessary to settle, lest those compromises be used against them later by third-parties.

The Special Master also erred in categorically compelling the production of communications at "initial meetings" regarding the scope of Defendants' alleged misconduct, without any analysis of whether such communications were in furtherance of settlement. In *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980, 983 (6th Cir. 2003), the Sixth Circuit held that "any communications made in furtherance of settlement are privileged," whether the communications were done "informally" or "under the auspices of the court." The Sixth Circuit based that decision on the public policy to encourage settlements, the lengthy tradition in this country of maintaining the confidentiality of settlement discussions, and its conclusion that communications made during settlement are not probative in litigation. The Special Master's order strikes at the heart of that privilege by discouraging Defendants from full and open settlement discussions with the OEMs and class plaintiffs, including communications regarding the alleged misconduct, because Defendants will know that any statements they make

2

may later be used against them by third-parties. The order thus discourages the full provision of information relevant to settlement discussions and heightens the possibility that the parties will have great difficulty negotiating appropriate settlements. Finally, and independently of the settlement privilege, the Special Master erred because Moving Plaintiffs offered no legitimate, admissible use for any settlement communications, and certainly none that outweighed the negative impact on settlement negotiations.

*Finally*, the Special Master's order is erroneous on the additional ground that it applies to settlement agreements and communications regarding products for which Moving Plaintiffs either have never asserted claims or have settled all their claims.  With no pending claims there can be no legitimate basis for discovery.[1]

## BACKGROUND

Request No. 31.  In July and August 2015, Moving Plaintiffs and defendants issued subpoenas to the OEMs. (The Direct Purchaser Plaintiffs opposed discovery from the OEMs.) Moving Plaintiffs—but not defendants—included Request No. 31 in the OEM subpoenas, which seeks "[a]ll Documents relating to Your or other OEMs' negotiations or Communications with any of the Defendants or other Components or Assemblies suppliers in connection with Defendants' and other Components or Assemblies suppliers' conduct at issue in MDL No. 2311 and Documents Defendants or other Components or Assemblies suppliers provided to You or other OEMs, in connection with the facts described in any Plaintiffs' Complaints." Ex. 1, Subpoena, at 34.

---

[1] The Special Master ordered the production of settlement agreements and possible settlement communications between OEMs and suppliers, including non-defendant suppliers.  Order ¶ 3. Because this brief is submitted on behalf of Defendants, this brief will focus solely on agreements and communications with Defendants.  However, the arguments made herein apply equally to any agreements and communications with non-defendant suppliers.

Defendants did not join in Request No. 31, but instead objected to it on the ground of the Sixth Circuit's settlement privilege. Defs.' Opp. 2-3.[2] The OEMs also objected to Request 31 on grounds of settlement privilege, attorney-client privilege, and the attorney work product doctrine. OEM Opp. 35-37; Mot. Compel, Ex. 7, at 13.

<u>Motion to Compel</u>. In January 2016, Moving Plaintiffs filed a motion to compel the OEMs to produce information responsive to Request 31. *See* Mot. Compel. In their motion, Moving Plaintiffs sought an order compelling the OEMs to produce documents relating to *negotiations and communications* between the OEMs and Defendants or other suppliers. *Id.* at 11-17. Moving Plaintiffs' motion—like the subpoena—makes no mention of *settlement agreements*. *See generally id.*

Both Defendants and the OEMs opposed that motion on the grounds of settlement privilege. *See generally* Defs.' Opp.; OEM Opp. Moving Plaintiffs filed a reply, arguing that the material regarding settlement communications they sought is not privileged. As in their original motion to compel, Moving Plaintiffs' reply did not ask the Master to order the production of settlement agreements and, accordingly, did not argue that those agreements are relevant to their claims. *See generally* Pls.' 1st Reply.

---

[2] Defendants will cite the briefing before the Special Master as follows: (1) "Mot. Compel" refers to Certain Serving Parties' Mot. to Compel Discovery from Non-Party Original Equipment Manufacturers, Case No. 2:12-md-02311-MOB-MKM, ECF Nos. 1188, 1189; (2) "Defs.' Opp." refers to Defs.' Opp. to Certain Serving Parties' Mot. to Compel Discovery from Non-Party Original Equipment Manufacturers, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1216; (3) "OEM Opp." refers to The Specified Subpoenaed Entities' Joint Opp'n to the Parties' Mots. to Compel, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1227; (4) "Pls.' 1st Reply" refers to Certain Serving Parties' Reply in Supp. Mot. to Compel Disc. from Non-Party Original Equipment Manufacturers, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1254; and (5) "Pls.' 2d Reply" refers to Certain Serving Parties' Reply in Supp. Mot. to Compel Discovery from Non-Party Original Equipment Manufacturers, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1550.

At the March 24, 2016 hearing on the Moving Plaintiffs' motion to compel, the Special Master declined to rule with respect to Request 31 pending resolution of the parties' motion to compel the OEMs to produce documents in response to the entire OEM subpoena. Ex. 2, Hr'g Tr. 50:25-51:17 (Mar. 24, 2016), ECF No. 1270. On November 7, 2016, Moving Plaintiffs filed a notice with the Court requesting oral argument on their motion to compel as to Request 31. *See* Pls.' Notice Re. Certain Parties' Mot. to Compel Req. No. 31, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1497. In response, the OEMs reiterated their opposition to Request 31.[3] Moving Plaintiffs then filed a second reply brief reiterating their previous arguments. *See generally* Pls.' 2d Reply. Once again, Moving Plaintiffs did not ask the Master to compel the production of OEM settlement agreements or attempt to show that those agreements are relevant to their cases. *Id*.

The Special Master's Oral Ruling. At a hearing on December 9, 2016, and after stating that he did not wish to hear oral argument, the Special Master granted in part and denied in part Moving Plaintiffs' motion to compel. The Master correctly held that, under *Goodyear*, the settlement privilege applies to settlement negotiations between Defendants and the OEMs and therefore documents regarding settlement negotiations are not discoverable. Ex. 3, Hr'g Tr. 9:2-7 (Dec. 9, 2016). Then, in tension with his ruling that the settlement privilege applies to settlement negotiations between Defendants and the OEMs, the Master categorically ruled that the settlement privilege does not extend to "initial meetings" between the OEMs and Defendants where the Defendants may have disclosed the existence, nature, scope, and extent of the conspiracy. *Id.* at

---

[3] *See, e.g.*, Non-Party FCA US LLC's Opp'n to the Parties' Renewed Mots. to Compel 16-18, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1519; Non-Party Honda's Opp'n to the Parties' Mot. to Compel Further Subpoena Resps. 23-25, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1533; Toyota's Resp. to the Parties' Renewed Mot. to Compel 17-18, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1528; Gen. Motors' Opp'n to Certain Parties' Mot. to Compel Request No. 31 1-2, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1536.

9:7-15.  In so doing, he gave no consideration to whether such disclosures were in furtherance of settlement.  Lastly, the Master *sua sponte* determined that *settlement agreements* between the Defendants and the OEMs are not privileged under *Goodyear*, and that the OEMs must produce them. *Id.* at 9:20-23, 13:3-7. The Special Master made no finding—and, indeed, was never presented any rationale, either in writing or orally—that OEM settlement agreements are relevant to Moving Plaintiffs' claims. *See generally id.*

Immediately following the Master's oral ruling at the hearing—when the topic of OEM settlement agreements first arose—Defendants objected on several grounds: (1) Request 31 sought documents regarding only *communications* with Defendants, not *settlement agreements*; (2) Moving Plaintiffs' motion to compel did not seek—or even mention—settlement agreements; and (3) settlement agreements are not relevant to Moving Plaintiffs' claims. *Id.* at 13:8-14, 14:17-16:1. Only at that point—*after* the Special Master had ruled—did Moving Plaintiffs first argue that settlement agreements were included in the scope of Request 31 and their motion to compel.  *Id.* at 13:16-14:6.  In response to Defendants' statements, the Special Master acknowledged that he could "see how you can take the position that the request 31 was limited to communications between the OEMs and any defendants or other part suppliers in connection with the facts described in plaintiffs' complaint," but nonetheless ordered the production of settlement agreements "[i]n the interest of saving time." *Id.* at 14:10-16; *see also id.* at 16:2-12 ("Again, my response would be that in the interest of time, because time is of the essence today in this case, I am going to order that the settlement documents be produced . . . you can take the entire matter before Judge Battani on the relevancy of the settlement production and my order that they be produced.").  After that hearing, the Moving Plaintiffs, on the one hand, and Defendants and the

OEMs, on the other, submitted draft orders to memorialize the Master's December 9 ruling.  Ex. 4 (Moving Plaintiffs' proposed order); Ex. 5 (Defendants and OEMs' proposed order).

> The Special Master's Written Order.  The Special Master held a conference regarding the language of his order on Moving Plaintiffs' motion to compel on January 24, 2017.  (The transcript of this hearing is not yet available.)  At the conference, the Special Master stated that Moving Plaintiffs had sufficiently raised the issue of the production of settlement agreements, although he failed to specify where or how they had done so.  The next day, the Special Master entered his order.  *See* Ex. 6, Order of Special Master Granting in Part and Denying in Part Certain Serving Parties' Mot. to Compel Prod. in Resp. to Request No. 31 in the Serving Parties' OEM Subpoena, Case No. 2:12-md-02311-MOB-MKM, ECF No. 1622 ("Order").  In particular, the Special Master ordered:

- "Documents evidencing discussions or exchanged between OEMs and automotive parts suppliers at initial meetings concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent, as well as descriptions of parts involved and of the wrongful acts of the conspirators are not privileged and will be produced by the OEMs." Order ¶ 2.

- "Documents analyzing damages caused by the conspiracy, created for the purpose of reaching a settlement, that were exchanged between OEMs and automotive parts suppliers, are settlement communications protected from production by the Sixth Circuit settlement privilege and will not be produced."  *Id.* ¶ 5.

- "Settlement agreements between the OEMs and automotive parts suppliers will be produced by the OEMs. This information is not privileged."  *Id.* ¶ 3.

- "This order does not require the production of any information responsive to Request No. 31 that concerns only Wire Harness Systems. If a responsive document contains information about Wire Harness Systems and other products that document will not be withheld or redacted." *Id.* ¶ 6.

## STANDARD OF REVIEW

This Court reviews the Special Master's conclusions of law and findings of fact *de novo*, and procedural decisions for abuse of discretion. Fed. R. Civ. P. 53(f)(3)-(5); Ex. 7, Order Appointing a Master, § II.C, No. 2:12-md-02311-MOB-MKM, ECF No. 792.

## ARGUMENT

### I.    The Special Master Erred In Ordering The OEMs To Produce Confidential Settlement Agreements With Suppliers, Including Defendants.

The Special Master ordered production of confidential settlement agreements solely on the ground that a settlement agreement "is not privileged," without finding that any settlement agreement is relevant to the Moving Plaintiffs' cases, much less giving any consideration to the chilling effect production would have on future settlements. Order ¶ 3. The Court should overrule the Special Master because: (A) the Master exceeded his authority in ordering production of documents Moving Plaintiffs did not move to compel; (B) Moving Plaintiffs failed to show that the settlement agreements are relevant to their claims, and the agreements are not relevant; and (C) compelling production of the settlement agreements runs afoul of Rule 26's proportionality requirement given the fact that compelling their production will impede, if not bring to a halt, ongoing and future settlement discussions, as well as reveal competitively sensitive business information that could harm the parties to the settlement agreements reached to date.[4]

---

[4] Defendants have standing to object to Request 31 for two reasons. *First*, any settlement agreements between defendants and an OEM would contain confidentiality provisions giving Defendants a personal interest in the information sought sufficient to confer standing. *See Mann*

**A. The Special Master Exceeded His Authority In Compelling Production Of Settlement Agreements.**

Under the Order Appointing a Master, the Special Master has "the power and duty to determine pretrial discovery motions." Ex. 7, § I.E. But that authority is limited to the dispute the parties put before the Master: "The Master's order should be limited to the issues briefed in the parties' written submissions and/or addressed in their oral arguments." *Id.* § I.H. Because Moving Plaintiffs never sought production of settlement agreements before the Master ruled—neither their Request nor the motion to compel even *mentions* settlement agreements—the Master exceeded his authority in compelling their production.

Request 31 did not seek settlement agreements. The Request sought documents relating only to "negotiations or communications" with any Defendant "in connection with suppliers' conduct at issue in MDL No. 2311," and any "Documents" a Defendant "provided [the OEM] in connection with the facts described in any Plaintiffs' Complaints." Ex. 1, Subpoena, at 34.

Consistent with the Request, in their motion to compel Moving Plaintiffs sought *only* "[in]formation regarding communications between OEMs and Defendants about the conspiracy," arguing that such information is "clearly relevant":

> Information regarding communications between OEMs and Defendants about the conspiracy is clearly relevant, and no OEM has disputed this. Specifically, Plaintiffs are looking for communications between the OEMs and the Defendants or other parts suppliers regarding the parts conspiracy. That information will assist Plaintiffs in conducting an analysis of the scope and the impact of the alleged conspiracy. That information will also allow Plaintiffs to understand how the direct victims evaluated the conspiracy's impact on them, how the conspirators

---

*v. Univ. of Cincinnati*, 114 F.3d 1188, 1997 WL 280188, at *4 (6th Cir. May 27, 1997) (per curiam) (unpublished); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2459, Westlaw (database updated Apr. 2016). *Second*, because the settlement privilege belongs to both parties in the settlement negotiations, either party may unilaterally invoke the privilege to prevent disclosure of privileged information. *See, e.g.*, *Anderson v. Clarksville Montgomery Cnty. Sch. Bd. & Sch. Dist.*, 229 F.R.D. 546, 547 (M.D. Tenn. 2005) ("[W]hen parties jointly are holders of the same privilege, neither of them may unilaterally waive the privilege for the other with respect to third parties over the others' objection.").

themselves described their wrongful conduct, and how the conspirators reacted to complaints from their major customers after the conspiracy was revealed. This understanding is clearly relevant to parties' claims and defenses in this litigation.

Therefore, Plaintiffs need this information from the SSEs to help them fully understand aspects of the conspiracy that remain unclear, for instance, how the Defendants explained the conspiracy to their major customers, the scope and impact of the conspiracy, and how long the effects of the conspiratorial conduct lasted. More information is also necessary for Plaintiffs to conduct their own analysis on arguments raised by Defendants, such as, how the Defendants and their co-conspirators transact business differently with their customers during the conspiracy and after the conspiracy was revealed.

Mot. Compel 11-12. Moving Plaintiffs' motion never *mentioned* settlement agreements, and because Moving Plaintiffs never asked for the production of settlement agreements, they never made a case for their production. *See generally id.* For that reason, neither Defendants nor the OEMs addressed settlement agreements in their briefs in opposition. *See generally* Defs.' Opp.; OEM Opp.; sources cited *supra* note 3. The first time that Moving Plaintiffs ever specifically stated that they were seeking settlement agreements was at the hearing on December 9, 2016, *after* the Special Master had issued his oral ruling ordering the production of settlement agreements and, even then, only in response to Defendants' argument that the motion to compel did not seek settlement agreements. Ex. 3, Tr. 13:16-14:6. At that point, it was far too late to properly put the issue before the Special Master.[5] The Master exceeded his authority.

---

[5] Even in their two reply briefs, Moving Plaintiffs never asked the Master to compel production of settlement agreements or explained how those agreements could be relevant to their claims. *See generally* Pls.' 1st Reply; Pls.' 2d Reply. In Moving Plaintiffs' first reply brief, the only mention of settlement agreements was in distinguishing a case Defendants cited. *See* Pls.' 1st Reply 11 (*distinguishing Konyn v. Lake Superior & Ishpeming R.R. Co.*, No. 2:11-cv-51, 2012 WL 10276153, at *1 (W.D. Mich. Feb. 3, 2012) on the ground that "the court ordered that any settlement agreement could be produced—contrary to the position Defendants have taken"). Similarly, in their second reply, Moving Plaintiffs focused on settlement communications throughout, and only briefly alluded to settlement agreements by (1) repeating nearly verbatim their argument from their first reply, and (2) noting that settlement agreements are not privileged, even though Defendants never argued they were. Pls.' 2d Reply 4 & Ex. 1 at 11. Thus, in neither brief did Moving Plaintiffs ask the Master to compel settlement agreements or offer *any* reason as to how OEM settlement agreements were relevant to their claims. And even if they had, that still

**B.  The Settlement Agreements Are Irrelevant To Moving Plaintiffs' Claims.**

Under Federal Rule of Civil Procedure 26, a party may seek discovery only of "any nonprivileged matter that is relevant to any party's claim or defense."   Fed. R. Civ. P. 26(b)(1). Moving Plaintiffs "bear[] the initial burden of proving that the information sought is relevant." *Vamplew v. Wayne St. Univ. Bd. of Governors*, No. 12-14561, 2014 WL 266407, at *1 (E.D. Mich. Jan. 24, 2014) (quotation omitted).  Here, Moving Plaintiffs did not meet their burden.

The only rationale that Moving Plaintiffs offered to demonstrate relevance in their motion to compel does not apply to settlement agreements.  As described above (at 9-10), Moving Plaintiffs set forth their rationale for seeking documents regarding communications between Defendants and OEMs in which Defendants may have described the scope of the conspiracy, its duration, and the parts involved.  Mot. Compel 11-17.  Specifically, Moving Plaintiffs' focus in Request 31 was on substantive descriptions of the Defendants' alleged conduct that would allow them to "conduct[] an analysis of the scope and the impact of the alleged conspiracy." *Id.* at 11. But that rationale does not support production of settlement agreements because, as Moving Plaintiffs well know, no settlement agreement will provide that kind of information.   One need only look at Moving Plaintiffs' own settlement agreements in this MDL, which provide none of the information Moving Plaintiffs sought in their motion to compel.   As in those settlement agreements, any settlement agreement with the OEMs would include no representations concerning the underlying facts.  To the contrary, the agreement would disclaim any admission of liability, would make clear that the Defendant believes it has good defenses, and would state that the Defendant is settling simply to avoid the burden, expense, and risks of litigation. *See, e.g.*,

---

would not have been sufficient to put the issue before the Master because a party cannot raise an issue for the first time in a reply brief. *Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *5 (E.D. Mich. Aug. 8, 2008).

Ex. 8, Hitachi Auto. Sys, Ltd. Auto. Dealership Settlement Agreement, at 4.  The reasons Moving Plaintiffs identified in their motion to compel are simply inapplicable to settlement agreements.

Nor do any of the reasons that courts have relied upon to compel the production of settlement agreements apply here.  For example, some courts have compelled production of settlement agreements (often only after a verdict) between defendants and *absent class members* or between the plaintiff and *other defendants in the same case* where necessary to offset damages judgments by the confidential settlement amounts.  *See Jeld-Wen, Inc. v. Agc Am., Inc.* (*In re Flat Glass Antitrust Litig.*), Misc. 9-180; MDL No. 1942; No. 11-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013); *Burlington v. News Corp.*, No. 09-1908, 2015 WL 2070063, at *4-5 (E.D. Pa. May 4, 2015); *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982).  But that rationale does not apply here because there is no chance that an OEM settlement agreement will be necessary to offset any damages awarded in the Moving Plaintiffs' cases.  The OEMs are absent members of the *Direct Purchaser Plaintiffs'* cases, but the Direct Purchaser Plaintiffs did not join Moving Plaintiffs' motion to compel.  Similarly, other courts have compelled production of settlement agreements when they are relevant to witness bias, but only when the moving party identifies a particular witness that will in fact testify and demonstrates how that specific witness may be biased by a settlement agreement.  *See, e.g.*, *Wagner v. Circle W Mastiffs*, Nos. 08-431, 09-172, 2013 WL 2096655, at *6 (S.D. Ohio May 14, 2013) ("[A] confidential settlement agreement [is not] relevant to the issue of bias or credibility where there is . . . no indication that particular witnesses will testify.").  Moving Plaintiffs have not even tried to meet that burden here.  Finally, given the sensitive nature of confidential settlement agreements, courts have generally waited until the settlement agreements *in fact* become relevant before ordering their production.  *See, e.g.*, *In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 (courts "have refused to permit discovery of

confidential settlement agreements on grounds that the amount will result in a set-off of damages, because set-off may be addressed after a verdict has been entered"); *Burlington*, 2015 WL 2070063, at *4-5; *Bottaro*, 96 F.R.D. at 160. Here, no OEM settlement agreement is relevant to class certification in Moving Plaintiffs' cases, and there is no need to consider any arguments about relevance at trial given that trials are years away and might never happen at all if the Court denies class certification.

### C. Compelled Production Of Settlement Agreements Is Disproportionate And Will Impede Settlement.

Relevance is not the only factor militating against compelling production of OEM settlement agreements here. Under Rule 26, discovery must also be "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and the Court should deny disclosure where necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1). Rule 26 demands a "balancing of competing interests" in determining if discovery is appropriate. *Flagg ex rel. Bond v. City of Detroit*, 268 F.R.D. 279, 284 (E.D. Mich. 2010) (Rosen, C.J.). "[W]here a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies, the discovering party will be required to demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would cause either the other party or the interests cited by it." *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985). Under that standard, courts have regularly declined to compel production of "sensitive, albeit unprivileged, material." *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996).

Here, the OEMs' and Defendants' legitimate interests in the confidentiality of their settlement agreements and the public policy encouraging settlement far outweigh the Moving

Plaintiffs' (lack of) need for the settlement agreements.  As discussed above, Moving Plaintiffs made no showing that the agreements are relevant to their claims.

Defendants and OEMs, by contrast, have powerful countervailing interests.  The settlement agreements here were each entered into by single defendants (along with their affiliates) and any one of their respective OEM customers.  As the Court would expect, each of these settlements will almost certainly be subject to its own provisions mandating confidentiality—and with good reason. For example, an OEM customer will not want the terms of its settlement with one supplier/defendant disclosed to another supplier/defendant who might later engage in settlement negotiations with that OEM customer, which would give the defendant unfair knowledge or leverage in conducting the negotiation.  At the same time, a defendant will not want its settlement with a valued OEM customer to be used by another defendant as leverage negotiating with that OEM.  Nor will a settling defendant want its codefendant suppliers to know the nature or extent of any consideration (including any possible business consideration negotiated as part of the resolution of the OEM's claims) given by the defendant to its OEM customer.

Moreover, compelling disclosure of settlement agreements would throw a monkey-wrench into any ongoing or future settlement discussions between Defendants and the OEMs. If the landscape changes such that negotiating parties know third-parties will have access to their confidential settlement agreements, settlement will be discouraged.  Defendants and OEMs will no longer be able to negotiate with confidence that any of the compromises necessary to settle will not be used against them in settlement discussions with another party.  Lest such concessions be used against them, OEMs may be forced to demand extravagant sums.  Defendants may be forced to dig in their heels.  Positions are more likely to become intractable and compromise impossible, and settlements that otherwise might have been reached may be lost. The Special Master's order

thus impairs the significant public policy interest in "a more efficient, more cost-effective, and significantly less burdened judicial system" through voluntary settlements that avoid litigation. *Goodyear*, 332 F.3d at 980; *see also Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) ("Public policy strongly favors settlement of disputes without litigation.") (alteration and quotation omitted).  As urged by the Sixth Circuit, this Court should be "mindful of the chilling effect on settlements that a contrary decision" would bring about when asked to issue a decision that would disincentivize or impair settlement.  *Polec v. Northwest Airlines, Inc. (In re Air Crash Disaster)*, 86 F.3d 498, 552 (6th Cir. 1996).

In sum, Defendants and OEMs have a significant interest in maintaining the confidentiality of their settlement agreements.  Compelled disclosure of OEM settlement agreements would impair the strong public policy to encourage settlements.  And the Moving Plaintiffs have no need for those documents.  Under these circumstances, the discovery should be denied. *See Apex Oil Co.*, 110 F.R.D. at 497 (declining to order production of materials from securities exchange investigation given strong public policy favoring exchange self-regulation); *Johnson*, 169 F.R.D. at 562 (declining to order production of certain confidential, but unprivileged, hospital records); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979) (declining to recognize newspaper editorial process privilege, but cautioning that courts "should not hesitate to exercise appropriate control over the discovery process" to avoid unnecessary disclosure of sensitive information); *Mitchell v. Fishbein*, 227 F.R.D. 239, 253 (S.D.N.Y. 2005) (discovery can be denied where "the 'burden'— including the need for confidentiality—of the proposed discovery 'outweighs its likely benefit'").

## II.  The Special Master Erred In Ordering The OEMs To Produce Privileged Settlement Communications.

The Special Master further erred in compelling, across-the-board, the production of any statements made during "initial meetings" between a Defendant and an OEM regarding the scope,

duration, nature, and extent of the conspiracies.  Order ¶ 2.  Those kinds of communications are privileged if "made in furtherance of settlement," and *Goodyear* did not carve out an exception for statements made at the outset of settlement discussions or for statements that describe misconduct. *Goodyear*, 332 F.3d at 983.  To Defendants' knowledge, no court applying the settlement privilege (or any other privilege) has ever drawn the line the Special Master drew here between (undefined) "initial meetings" and later meetings regarding settlement, much less issued a categorical decision that *all* statements at "initial meetings" regarding the alleged misconduct are not privileged.  There is no basis for such as drastic approach here, which conflicts with the general rule that before overruling a privilege objection a court must evaluate the context and circumstances of the communication to determine if it is in fact privileged.  Further, the Special Master's blanket order struck at the heart of the privilege, which is meant to protect the parties' ability to have the kinds of frank discussions of the underlying facts necessary to resolve disputes.  The Master's order thus impairs settlement discussions between not only Defendants and OEMs, but also Defendants and class plaintiffs.  Finally, neither Moving Plaintiffs nor the Special Master ever identified a legitimate, admissible use to which Moving Plaintiffs could put the settlement communications they seek.

A.      **The Settlement Privilege Protects "All Communications Made in Furtherance of Settlement."**

In *Goodyear*, the Court of Appeals established a settlement privilege within this Circuit. In recognizing that privilege, the Court applied "common law principles . . .  in the light of reason and experience," and asked whether a settlement "privilege . . . serve[s] some public interest 'transcending the normally predominant principle of utilizing all rational means for ascertaining truth,'" and "promote[s] a public interest that is 'sufficiently important . . . to outweigh the need

for probative evidence.'" *Goodyear*, 332 F.3d at 979-80 (quoting *Trammel v. United States*, 445 U.S. 40, 50, 51 (1980)) (ellipses in original).

Applying those principles, the Sixth Circuit declared: "[W]e believe a settlement privilege serves a sufficiently important public interest, and therefore should be recognized." *Id.* The Court identified several factors supporting the privilege. *First*, the Court recognized that "there [is] a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations . . . whether settlement negotiations are done under the auspices of the court or informally between the parties." *Id.* The Court noted that "[i]n order for settlement talks to be effective, parties must feel uninhibited in their communications," because "[p]arties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination . . . by some future third party." *Id.* Further, "[e]ffective dispute resolution requires frank and full discussion of relevant evidence." *Lyondell Chem. Co. v. Occidental Chem. Co.*, 608 F.3d 284, 299 (5th Cir. 2010). Compelled disclosure of settlement communications, *Goodyear* held, would cause parties to "more often forego negotiations for the relative formality of trial," causing "the entire negotiation process [to] collapse[] upon itself, and the judicial efficiency it fosters [to be] lost." 332 F.3d at 980. The Court further noted that under Federal Rule of Evidence 408 any statements made during settlement negotiations are not admissible at trial, showing further support for shielding settlement communications from discovery on public policy grounds. *Id.* at 981-82.

*Second*, the Court noted that "confidential settlement communications are a tradition in this country." *Id.* at 980 (citing *Palmieri v. New York*, 779 F.2d 861, 865 (2d Cir. 1985) (in turn citing *FDIC v. Ernst & Ernst (In re Franklin Nat'l Bank Secs. Litig.)*, 92 F.R.D. 468, 472 (E.D.N.Y. 1981))). Indeed, in the context of settlement communications done in official court proceedings,

where the public's First Amendment interest in access to judicial proceedings is at its zenith, the Sixth Circuit rejected the public's right to observe "pre-trial settlement procedures" because of "the historical secrecy in settlement talks." *Id.* at 980 (discussing *In re the Cincinnati Enquirer*, 94 F.3d 198, 199 (6th Cir.1996) and *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 854 F.2d 900, 903-04 (6th Cir. 1988)).

*Third*, the Court determined that settlement communications have little probative value given the "inherent questionability of the truthfulness of any statements made therein," which "may be motivated by a desire for peace rather than from any concession of weakness of position." *Id.* at 981, 983 (quoting, among others, *United States v. Contra Costa Cnty. Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982)). "Settlement negotiations are typically punctuated with numerous instances of puffing and posturing since they are motivated by a desire for peace rather than from a concession of the merits of the claim . . . . The discovery of these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement." *Id.* at 981 (quoting *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990), *overruled on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996)) (internal quotation marks omitted).

In light of those factors, *Goodyear* described the settlement privilege in broad terms: "any communications made in furtherance of settlement are privileged." *Id.* at 983.

**B.      Communications Regarding The Alleged Misconduct Are Privileged Even When Made At An Initial Meeting In Furtherance Of Settlement.**

A straightforward application of *Goodyear* shows that the Special Master erred.  The Master ordered the OEMs to produce documents regarding communications made "at initial meetings concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent, as well as descriptions of parts involved and of the wrongful acts of the conspirators" because they "are not privileged."  Order ¶ 2.  But there is no support for the Special

Master's categorical finding that documents describing communications regarding the "scope, duration, nature, and extent" of the conspiracies are not statements "made in furtherance of settlement" that are privileged under *Goodyear*. If made during discussions between the OEMs and Defendants for the purpose of exploring a potential settlement, the communications were made in furtherance of settlement and are privileged. *Goodyear*, 332 F.3d at 980, 983; *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-cv-899, 2007 WL 1723506, at *4 (S.D. Ohio June 11, 2007) (under *Goodyear*, "communications that led to [settlement] agreements" are not discoverable). Further, there is no basis for concluding that *all* statements at "initial meetings" are not privileged without considering the context of each communication, which the Special Master ignored.

The Special Master created out of whole cloth the line between substantive communications at an "initial meeting" and those made during settlement discussions. *Goodyear* certainly made no such distinction. Moving Plaintiffs did not argue for such a distinction, and for good reason: Defendants are aware of no case that draws it. In focusing on *when* the communications were made, the Special Master focused on the wrong issue. The proper inquiry is the *purpose* of the communication, *no matter when it was made*. The question is simply "whether the particular communication was authored or created for the purpose of settlement negotiations." *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3499986, at *3 (N.D. Ohio Dec. 5, 2006); *see also Goodyear*, 332 F.3d at 980, 983; *Allen Cnty. v. Reilly Indus.*, 197 F.R.D. 352, 354 (N.D. Ohio 2000) (holding that letters "generated in the course of settlement discussions between counsel" for each party were privileged).[6]

---

[6] The Special Master's order goes beyond the holding in cases like *Snap-On Business Solutions Inc. v. Hyundai Motor Am.*, No. 5:07-cv-1961, 2011 WL 6957594, at *2 (N.D. Ohio Feb. 3, 2011), which found that the mere "suggestion that the parties meet to discuss settlement" is not privileged. Revealing that one party invited another to discuss settlement does nothing more than reveal that parties may have engaged in settlement discussions, a fact which is not privileged. *See Goodyear*,

Focusing on the purpose of the communications, rather than arbitrarily focusing on when the communication was made, is consistent with how courts have analyzed other privileges. For example, the attorney-client privilege attaches to a communication that occurs even before a client formally retains the attorney if the communication was for the purpose of seeking legal advice. *See, e.g.*, *Banner v. City of Flint*, 99 F. App'x. 29, 36 (6th Cir. 2004) (per curiam) (unpublished) ("When a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client," and the privilege attaches if, among other things, the "purpose" of the communication was to seek "legal advice"); *State Farm Mut. Auto. Ins. Co. v. Hawkins*, No. 08-10367, 2010 WL 2287454, at *4 (E.D. Mich. June 4, 2010). Just as the attorney-client privilege attaches to communications at an "initial meeting" between an attorney and a prospective client if the purpose of the communication is to seek legal advice, so too should the settlement privilege apply to communications at an "initial meeting" between two parties where the purpose of the communication is to further settlement. That is especially so given that the attorney-client and settlement privileges exist for the same reason: to foster open and candid discussions without fear that the communications will later be used against one of the parties. *Compare Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 517 (6th Cir. 2014) ("The purpose of attorney-client privilege is to ensure free and open communications between a client and his attorney.") (quotation omitted), *with Goodyear*, 332 F.3d at 980 (recognizing settlement privilege because "for settlement talks to be effective, parties must feel uninhibited in their communications"). Any communications at an "initial meeting" describing the scope of a

---

332 F.3d at 981-82 ("as with other privileges, the relationship itself is not privileged, but only the underlying communications"). The Special Master went far beyond such an initial invitation to discuss settlement in compelling production of the very "underlying communications" that are privileged. *Id.*

Defendant's alleged misconduct to an OEM that were part or parcel of discussions made for the purpose of resolving the OEM's claims against that Defendant are privileged under the proper test.

The Special Master further erred in ordering across-the-board production of all settlement communications at "initial meetings" without evaluating whether particular communications were privileged. To the extent the Special Master was concerned that a communication to an OEM at an "initial meeting" describing misconduct may not have actually been made for the purpose of furthering settlement, even though both the OEM and Defendant have asserted privilege over that communication, the proper procedure should have been to inquire of the Defendant and OEM regarding the context of the communication and whether it was made in furtherance of settlement. For example, were the communications at the "initial meetings" made pursuant to an understanding that the parties were engaged in settlement discussions or that any statements made by either side could only be used for settlement purposes?  If the answer is yes, then the communications are privileged under *Goodyear*.  It was improper for the Master to arbitrarily determine that all settlement communications about alleged misconduct that occurred at "initial meetings" rather than at later meetings are categorically unprivileged regardless of context and the communications' purpose. *See Advance Publ'ns, Inc. v. United States (In re Antitrust Grand Jury)*, 805 F.2d 155, 168 (6th Cir. 1986) (holding it "plain error" to overrule a privilege objection "*en masse*" without considering each document).  The Master's decision "[o]rdering production *en masse* creates the potential that some material" that is privileged "could be ordered produced." *Id.* For that reason, inquiring as to the particular circumstances surrounding each communication "is mandated" before compelling production. *Id.*  The Master himself acknowledged that there were certain documents as to which he could not rule on whether they were privileged in the abstract

without understanding the nature of the communications or the context in which they were made. Ex. 3, Tr. 11:11-21.  The Master erred in not doing the same as to all settlement communications.

> **C.      The Master's Order Conflicts with *Goodyear*'s Holding, This Court's Desire For Settlement, and the Strong Public Policy Encouraging Settlement.**

*Goodyear* held that a "sufficiently important public interest" exists to encourage settlement, and that immunizing settlement discussions from third-party discovery was necessary because "[i]n order for settlement talks to be effective, parties must feel uninhibited in their communications."  332 F.3d at 980.

Nowhere is that statement more true than with respect to statements by a defendant disclosing its alleged wrongdoing to a plaintiff, or responding to allegations or questions by the plaintiff, in the context of settlement discussions.   "Effective dispute resolution requires frank and full discussion of relevant evidence."  *Lyondell*, 608 F.3d at 299.  This Court's own local rules make that clear by requiring confidentiality as to any court-sanctioned settlement discussions: "Communications in ADR proceedings are confidential. They are not subject to discovery, are not admissible in a proceeding, and may not be disclosed to anyone other than the ADR participants unless the court permits disclosure."  E.D. Mich. L.R. 16.3(d).  *Goodyear* holds that the same considerations apply to settlement discussions done "informally between the parties" rather than "under the auspices of the court."  332 F.3d at 980.  And for good reason: pre-litigation negotiations serve to reduce burdens on the Court; informal mediation and resolution do the same.

The Special Master's order directly impairs *Goodyear*'s objectives and this Court's stated desire to encourage settlement discussions in this MDL. If the Master's order is upheld, every Defendant will have to assess the relative risk and benefit associated with proffering information about alleged misconduct to any OEM or other plaintiff in the future. Thus, the Master's order creates collateral risks to any disclosures made during settlement discussions and thereby

22

decreases the incentives to resolve disputes quickly and informally.  That will make it harder to settle.  Further, that effect will not be limited to this MDL, as any party litigating in this district will take heed of the Court's decision and may refrain from engaging in candid discussions to reach settlements.  *See Holly v. UPS Supply Chain Solutions, Inc.*, No. 3:13-cv-980-DJH-CHL, 2015 WL 3850103, at *7 (W.D. Ky. June 22, 2015) ("Were a court to [disclose] truly confidential settlement communications, it might indeed be damaging to settlement prospects in that case and even to parties' willingness to share confidential information in other cases.").  Given this Court's recent comments encouraging settlement, adopting an order that *impedes* settlement simply does not make sense.

### D.   Neither The Special Master Nor Moving Plaintiffs Identified Any Legitimate, Admissible Use For The Settlement Communications.

In addition to establishing a settlement privilege, *Goodyear* also held that a plaintiff cannot discover settlement-related materials unless the plaintiff identifies a "legitimate, admissible use" for the sought-after information.  332 F.3d at 983.  That prohibition flows from Federal Rule of Evidence 408, which precludes the admission at trial of evidence regarding "conduct or a statement made during compromise negotiations about the claim" when offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  *Goodyear* noted that, to its knowledge, courts applying Rule 408 have never "allow[ed] settlement *communications* into evidence for any purpose."  *Goodyear*, 332 F.3d at 981 (emphasis in original) (quotation omitted).[7]  Because Moving Plaintiffs have not and cannot identify any legitimate, admissible use for any statements made at "initial meetings"

---

[7] Citing, among others, *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) (holding existence of settlement negotiations admissible to rebut claim that party had no knowledge of suit); *Prudential Ins. Co. of Am. v. Curt Bullock Builders, Inc.*, 626 F. Supp. 159, 165 (N.D. Ill. 1985) (holding occurrence of settlement talks admissible to establish agency relationship).

between Defendants and OEMs regarding settlement, the Special Master erred in compelling their production.

## III.   The Special Master Erred In Ordering Production of Documents Regarding Products As To Which No Moving Plaintiff Has A Pending Case.

The Special Master's order is also overbroad in that it extends to matters in which there is no actual case or controversy. That is error. For this reason, Defendants requested that the Special Master limit his order to documents relevant to product cases that Moving Plaintiffs are presently litigating. Ex. 5, ¶ 8. But the Special Master rejected that request, ordering OEMs to produce settlement communications and settlement agreements with any supplier and concerning any automotive part, except documents concerning only the Wire Harness case. Order ¶¶ 2, 3, 6.

The Special Master erred in ordering production of information that has no connection to any of Moving Parties' pending claims. Discovery must be tied to a "claim or defense" in litigation. Fed. R. Civ. P. 26(b)(1). It is improper to compel production of information regarding claims that are no longer subject to litigation or never were. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case."); *United States v. 416.81 Acres of Land*, 514 F.2d 627, 632 (7th Cir. 1975) (upholding district court order striking a request to compel answers to interrogatories where "most of the questions related to the various defenses and objections which had been stricken" previously); *Chan v. City of Chi.*, No. 91 C 4671, 1992 WL 170561, at *3 (N.D. Ill. July 16, 1992) ("[D]iscovery requests that are relevant only to dismissed claims should be denied").[8]

---

[8] This rule forecloses, for instance, production of settlement agreements or communications with the *automotive* OEMs in those cases where all automotive indirect purchaser plaintiffs' claims have been settled and only Truck & Equipment Dealership Plaintiffs' claims remain.

## CONCLUSION

For the reasons set forth above, the Court should sustain Defendants' objections to the Special Master's order compelling the production of settlement agreements and certain settlement communications in response to Request No. 31.

Respectfully submitted,

Dated:  February 8, 2017                    **JENNER & BLOCK LLP**

*/s/  Terrence J. Truax*
Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
**ZAUSMER, AUGUST & CALDWELL, P.C.**
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374
gaugust@zacfirm.com

*Counsel for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US Holdings, Inc.,*
*and Mitsubishi Electric Automotive America, Inc.*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

/s/ *Brian Byrne*  (w/ consent)
Brian Byrne
Ryan M. Davis
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2000 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 974-1850
Fax: (202) 974-1999
bbyrne@cgsh.com
rmdavis@cgsh.com

Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendants Valeo Japan Co., Ltd., Valeo Inc., Valeo Electrical Systems, Inc., and Valeo Climate Control Corp.*

**ARNOLD & PORTER KAYE SCHOLER LLP**

/s/ *Franklin R. Liss* (w/ consent)
Franklin R. Liss
Matthew Tabas
Emily J. Blackburn
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
frank.liss@apks.com
matthew.tabas@apks.com
emily.blackburn@apks.com

Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Defendants Koito Manufacturing Co.,*
*Ltd. and North American Lighting, Inc.*

**GIBSON, DUNN & CRUTCHER LLP**

/s/ *George A. Nicoud III* (w/ consent)
George A. Nicoud III (SBN 106111)
Rachel S. Brass (SBN 219301)
Austin V. Schwing (SBN 211696)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
tnicoud@gibsondunn.com
aschwing@gibsondunn.com
rbrass@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation and*
*American Mitsuba Corporation*

27

**COVINGTON & BURLING LLP**

*/s/ Anita F. Stork*  (w/ consent)
Anita F. Stork
Gretchen Hoff Varner
Cortlin H. Lannin
**COVINGTON & BURLING LLP**
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-6000
Fax:  (415) 955-6550
astork@cov.com
ghoffvarner@cov.com
clannin@cov.com

Michael J. Fanelli
Ashley E. Bass
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Fax: (202) 662-5383
mfanelli@cov.com
abass@cov.com

*Attorneys for Defendants Alps Electric Co., Ltd.;*
*Alps Electric (North America), Inc.; and Alps*
*Automotive, Inc.*

**BROOKS WILKINS SHARKEY & TURCO PLLC**

*/s/Maureen T. Taylor* (w/ consent*)*
Herbert C. Donovan (P51939)
Maureen T. Taylor (P63547)
**BROOKS WILKINS SHARKEY & TURCO PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI  48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com
donovan@bwst-law.com

*Attorneys for Defendants Alps Electric Co., Ltd.;*
*Alps Electric (North America), Inc.; and Alps*
*Automotive, Inc.*

**SQUIRE PATTON BOGGS (US) LLP**

*/s/  Barry A. Pupkin* (w/ consent)
Barry A. Pupkin
Iain R. McPhie
**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 457-6315
Barry.Pupkin@squirepb.com
Iain.McPhie@squirepb.com

*Counsel for Aisan Industry Co., Ltd.,*
*Aisan Corporation of America*
*Franklin Precision Industry, Inc.,*
*and Hyundam Industrial Co., Ltd.*

29

**WILMERHALE LLP**

*/s/ Steven F. Cherry* (w/ consent)
Steven F. Cherry
David P. Donovan
Brian C. Smith
**WILMERHALE LLP**
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
brian.smith@wilmerhale.com

*Counsel for Defendants DENSO Corporation,
DENSO International America, Inc., DENSO
International Korea Corporation, DENSO Korea
Automotive Corporation, DENSO Products &
Services Americas, ASMO Co., Ltd., ASMO North
America, LLC, ASMO Greenville of North Carolina,
Inc., ASMO Manufacturing, Inc., and ASMO North
Carolina Inc.*

Steven M. Zarowny
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Telephone: (248) 372-8252
Fax: (248) 213-2551
steve_zarowny@denso-diam.com

*Counsel for Defendant DENSO International
America, Inc.*

30

**BAKER BOTTS L.L.P.**

*/s/ Randall J. Turk* (w/ consent)
Randall J. Turk
John Taladay
Mark Miller
Heather Souder Choi
Sterling A. Marchand
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue., NW
Washington, D.C. 20004-2400
Phone: 202.639.7700
Fax: 202.639.7890

*Counsel for Defendants Toyoda Gosei Co., Ltd.,
Toyoda Gosei North America Corp., TG Missouri
Corp., TG Kentucky, LLC, and TG Fluid Systems
USA Corp.*

**JONES DAY**

*/s/ Michael R. Shumaker* (w/ consent)
Michael R. Shumaker
John M. Majoras
Carmen G. McLean
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC  20001-2113
Telephone: (202) 879-3939
Facsimile:  (202) 626-1700
mrshumaker@jonesday.com
jmmajoras@jonesday.com
cgmclean@jonesday.com

Michelle K. Fischer
Stephen J. Squeri
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, OH  44114
Telephone: (216) 586-3939
Facsimile:  (216) 579-0212
mfischer@jonesday.com
sjsqueri@jonesday.com

Tiffany D. Lipscomb-Jackson
**JONES DAY**
Mailing Address: P.O. Box 165017
Columbus, Ohio 43216-5017
Street Address: 325 John H. McConnell Boulevard
Suite 600
Columbus, Ohio 43215
Telephone: (614) 469-3939
Facsimile:  (614) 461-4198
tdlipscombjackson@jonesday.com

*Counsel for Defendants Yazaki Corporation and
Yazaki North America, Inc.*

**ALLEN & OVERY LLP**

*/s/ John Roberti* (w/ consent)
John Roberti
Matthew R. Boucher
**ALLEN & OVERY LLP**
1101 New York Avenue NW
Washington, D.C. 20005
202-683-3800
john.roberti@allenovery.com
matthew.boucher@allenovery.com

Michael S. Feldberg
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
212-610-6360
michael.feldberg@allenovery.com

William R. Jansen (P36688)
Michael G. Brady (P57331)
**WARNER NORCROSS & JUDD LLP**
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
wjansen@wnj.com
mbrady@wnj.com

*Counsel for Robert Bosch LLC and Robert Bosch GmbH*

33

**SHEARMAN & STERLING LLP**

*/s/ Heather L. Kafele*   (w/ consent)
Heather L. Kafele
Keith R. Palfin
Kyle M. Noonan
**SHEARMAN & STERLING LLP**
401 9th Street, NW
Washington, DC 20004
Phone: (202) 508-8000
Fax: (202) 508-8100
hkafele@shearman.com
keith.palfin@shearman.com
kyle.noonan@shearman.com

Brian M. Akkashian
**PAESANO AKKASHIAN & APKARIAN P.C.**
7457 Franklin Road, Suite 200
Bloomfield Hills, MI 48301
Phone: (248) 792-6886
Fax: (248) 792-6885
bakkashian@paalawfirm.com

*Counsel for Defendants JTEKT Corporation,*
*JTEKT Automotive North America, Inc., and JTEKT*
*North America Corporation, formerly d/b/a Koyo*
*Corporation of U.S.A.*

34

**LANE POWELL PC**

*/s/ Kenneth R. Davis II* (w/ consent)
Craig D. Bachman
Kenneth R. Davis II
Darin M. Sands
Masayuki Yamaguchi
MODA Tower
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
Telephone:  503.778.2100
bachmanc@lanepowell.com
davisk@lanepowell.com
sandsd@lanepowell.com
yamaguchim@lanepowell.com

Larry S. Gangnes
**LANE POWELL PC**
U.S. Bank Centre
1420 Fifth Avenue, Suite 4200
PO Box 91302
Seattle, WA  98111-9402
Telephone:  206.223.7000
gangnesl@lanepowell.com

Richard D. Bisio (P30246)
Ronald S. Nixon (P57117)
**KEMP KLEIN LAW FIRM**
201 W. Big Beaver, Suite 600
Troy, MI 48084
Telephone:  248.528.1111
richard.bisio@kkue.com
ron.nixon@kkue.com

*Attorneys for Defendants Nachi-Fujikoshi Corp.
and Nachi America Inc.*

**HERTZ SCHRAM PC**

*/s/ Bradley J. Schram* (w/ consent)
Bradley J. Schram
MI Bar # P26337
**HERTZ SCHRAM PC**
1760 S. Telegraph Road
Suite 3000
Bloomfield Hills, MI  48302
Tel.:  (248) 335-5000
Fax: (248) 335-3346
bschram@hertzschram.com

*Counsel for Toyo Tire & Rubber Co., Ltd., Toyo North America Manufacturing Inc., Toyo Tire North America OE Sales LLC, and  Toyo Automotive Parts (USA), Inc.*

**BUTZEL LONG**

*/s/ Sheldon H. Klein* (w/ consent)
Sheldon H. Klein (P41062)
David F. DuMouchel (P25658)
**BUTZEL LONG**
150 West Jefferson, Suite 100
Detroit, MI 48226
Tel: (313) 225-7000
Fax: (313) 225-7080
klein@butzel.com
dumouchd@butzel.com

W. Todd Miller
**BAKER & MILLER PLLC**
2401 Pennsylvania Ave., NW, Suite 300
Washington, DC 20037
Tel.: (202) 663-7820
Fax: (202) 663-7849
TMiller@bakerandmiller.com

*Attorneys for Defendants TRAM, Inc. and Tokai Rika Co., Ltd.*

36

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

*/s/ Steven J. Kaiser* (w/ consent)
Steven J. Kaiser
Jeremy Calsyn
Teale Toweill
Larry Malm
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 974-1554
Fax: (202) 974-1999
skaiser@cgsh.com
jcalsyn@cgsh.com
ttoweill@cgsh.com
lmalm@cgsh.com

David A. Ettinger (P26537)
**HONIGMAN, MILLER, SCHWARTZ AND COHN LLP**
660 Woodward Avenue, Suite 2290
Detroit, MI 48226-3506
Tel.: (313) 465-7368
Fax: (313) 465-7369
*dettinger@honigman.com*

*Counsel for Defendants NSK Ltd. and NSK Americas, Inc.*

**WINSTON & STRAWN LLP**

*/s/ Jeffrey J. Amato* (w/ consent)
A. Paul Victor
Jeffrey L. Kessler
Jeffrey J. Amato
Molly M. Donovan
Elizabeth A. Cate
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
Tel.: (212) 294-6700
Fax: (212) 294-4700
pvictor@winston.com
jkessler@winston.com
mmdonovan@winston.com
jamato@winston.com
ecate@winston.com

**KERR, RUSSELL AND WEBER, PLC**
Fred K. Herrmann (P49519)
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
Tel. (313) 961-0200
fherrmann@kerr-russell.com

*Attorneys for Defendants NTN Corporation and NTN USA Corporation*

**WINSTON & STRAWN LLP**

*/s/ Jeffrey L. Kessler* (w/ consent)
Jeffrey L. Kessler
A. Paul Victor
Eva W. Cole
Jeffrey J. Amato
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700 (t)
(212) 294-4700  (f)
JKessler@winston.com
PVictor@winston.com
EWCole@winston.com
JAmato@winston.com

Brandon Duke
**WINSTON & STRAWN LLP**
1111 Louisiana Street, 25th Floor
Houston, TX 77002
(713) 651-2636 (t)
(713) 651-2700 (f)
BDuke@winston.com

*Counsel for Panasonic Corporation and Panasonic
Corporation of North America*

**COVINGTON & BURLING LLP**

*/s/ Bruce A. Baird* (w/ consent)
Bruce A. Baird
Sarah L. Wilson
Michael A. Fanelli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Fax: (202) 662-6291
bbaird@cov.com
swilson@cov.com
mfanelli@cov.com

Anita F. Stork
**COVINGTON & BURLING LLP**
One Front Street
35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 955-6550
astork@cov.com

**BROOKS WILKINS SHARKEY & TURCO PLLC**

*/s/ Maureen T. Taylor* (w/ consent)
Maureen T. Taylor
**BROOKS WILKINS SHARKEY & TURCO PLLC**
401 Old South Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1721
Fax: (248) 971-1801
taylor@bwst-law.com

*Counsel for Defendants Keihin Corporation and Keihin North America, Inc.*

40

**LATHAM & WATKINS LLP**

*/s/ Marguerite M. Sullivan* (w/ consent)
Marguerite M. Sullivan
Allyson M. Maltas
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Fax: (202) 637-2201
Marguerite.Sullivan@lw.com
Allyson.Maltas@lw.com

Daniel M. Wall
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-0600
Fax: (415) 395-8095
dan.wall@lw.com

William H. Horton (P31567)
**GIARMARCO, MULLINS & HORTON, P.C.**
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Telephone: 248-457-7060
bhorton@gmhlaw.com

*Counsel for Defendants Sumitomo Electric
Industries, Ltd.; Sumitomo Wiring Systems, Ltd.;
Sumitomo Electric Wiring Systems, Inc.; K&S
Wiring Systems, Inc.; and Sumitomo Wiring Systems
(U.S.A.) Inc.*

41

**LATHAM & WATKINS LLP**

*/s/ Marguerite M. Sullivan* (w/ consent)
Marguerite M. Sullivan
Allyson M. Maltas
Thomas J. Humphrey
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 537-2201
marguerite.sullivan@lw.com
allyson.maltas@lw.com
thomas.humphrey@lw.com

Howard B. Iwrey (P39635)
Brian M. Moore (P58584)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
hiwrey@dykema.com
bmoore@dykema.com

*Counsel for Weastec, Inc.*

**WILLIAMS & CONNOLLY LLP**

*/s/ David M. Zinn* (w/ consent)
David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Defendants Takata Corporation and TK
Holdings, Inc.*

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ J. Clayton Everett, Jr.* (w/ consent)
J. Clayton Everett, Jr.
Zarema A. Jaramillo
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
clay.everett@morganlewis.com
zarema.jaramillo@morganlewis.com

Larry J. Saylor
**MILLER, CANFIELD, PADDOCK &
STONE P.L.C.**
150 W. Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 496-7986
Facsimile: (313) 496-8454
Saylor@MillerCanfield.com

*Counsel for Sumitomo Riko Company
Limited and DTR Industries, Inc.*

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ J. Clayton Everett, Jr.* (w/ consent)
J. Clayton Everett, Jr.
**MORGAN LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
clay.everett@morganlewis.com

*Counsel for Defendants Showa Corporation and
American Showa, Inc.*

**DYKEMA GOSSETT PLLC**

*/s/ Howard B. Iwrey* (w/ consent)

Howard B. Iwrey, MI Bar No. P39635
Cale A. Johnson, MI Bar No. P78032
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48302
(248) 203-0700
hiwrey@dykema.com
cjohnson@dykema.com

Roxann E. Henry, DC Bar No. 351569
**MORRISON & FOERSTER LLP**
2000 Pennsylvania Avenue, NW Suite 6000
Washington, DC 20006-1888 Tel: (202) 887-1595

*Counsel for Inoac Corporation, Inoac Group North America LLC and Inoac USA Inc.*

**BARNES & THORNBURG LLP**

*/s/ Bradley Love*  (w/ consent)
Kendall Millard
Bradley Love
11 South Meridian Street
Indianapolis, IN 46204-3535
Tel: 317-231-1313
Fax: 317-231-7433
Kendall.Millard@btlaw.com
Bradley.Love@btlaw.com

Valerie Mullican (# P74045)
171 Monroe Avenue N.W., Suite 1000
Grand Rapids, Michigan 49503
Tel: 616-742-3930
Fax: 616-742-3999
Valerie.Mullican@btlaw.com

*Attorneys for Defendant Green Tokai Co., Ltd*

44

**DYKEMA GOSSETT PLLC**

*/s/ Howard B. Iwrey* (w/ consent)
Howard B. Iwrey (P39635)
Cale A. Johnson (P78032)
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0526
Fax: (248) 203-0763
hiwrey@dykema.com
cjohnson@dykema.com

**BARNES & THORNBURG LLP**

*/s/ Bradley Love* (w/ consent)
Kendall Millard
Bradley Love
11 South Meridian Street
Indianapolis, IN 46204-3535
Tel: 317-231-1313
Fax: 317-231-7433
Kendall.Millard@btlaw.com
Bradley.Love@btlaw.com

*Attorneys for Defendants KYB Corporation, f/k/a
Kayaba Industry Co., Ltd., and KYB Americas
Corporation*

**WILLIAMS & CONNOLLY LLP**

*/s/ Samuel Bryant Davidoff* (w/ consent)
David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: 202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Defendants Takata Corporation and TK
Holdings, Inc.*

45

**SEABOLT LAW FIRM**

<u>/s/ Scott T. Seabolt</u>  (w/ consent)

Scott T. Seabolt (P55890)
17199 N. Laurel Park Dr., Ste. 215
Livonia, Michigan 48152
248-717-1302
sseabolt@seaboltpc.com

*Counsel for Defendants Mitsubishi Heavy Industries Ltd., Mitsubishi Heavy Industries America, Inc. and Mitsubishi Heavy Industries Climate Control, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2017, I caused a copy of DEFENDANTS'
OBJECTIONS TO THE SPECIAL MASTER'S ORDER COMPELLING THE OEMS TO
PRODUCE CONFIDENTIAL SETTLEMENT AGREEMENTS AND PRIVILEGED
SETTLEMENT COMMUNICATIONS to be electronically filed with the Clerk of the Court using
the CM/ECF system, which will send notifications of such filings to all counsel of record.

*/ s/ Daniel T. Fenske*
Daniel T. Fenske
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
312-222-9350

*Counsel for Mitsubishi Electric
Corporation, Mitsubishi Electric US
Holdings, Inc., and Mitsubishi Electric
Automotive America, Inc.*

47