# EXHIBIT 3

Case 2:12-md-02311-SFC-RSW   ECF No. 1650-3, PageID.30667   Filed 02/08/17   Page 2 of 17
Hearing before the Special Master - December 9, 2016

1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION

                              -  -  -


 IN RE: AUTOMOTIVE PARTS                Case No. 12-2311
 ANTITRUST LITIGATION
                                        Hon. Marianne O. Battani
 _____        _____


 THIS RELATES TO:

 In Re:  Wire Harness                   2:12-cv-00101
 In Re:  Instrument Panel clusters      2:12-cv-00201
 In Re:  Fuel Senders                   2:12-cv-00301
 In Re:  Heater Control Panels          2:12-cv-00401
 In Re:  Alternators                    2:12-cv-00701
 In Re:  Windshield Wipers systems      2:12-cv-00901
 In Re:  Starters                       2:12-cv-01101
 In Re:  Ignition Coils                 2:12-cv-01401
 In Re:  Fuel injection Systems         2:12-cv-02201
 In Re:  Power Window Motors            2:12-cv-02301
 In Re:  Air Conditioning Systems       2:12-cv-02701
 In Re:  Windshield Washer Systems      2:12-cv-02801
 In Re:  Spark Plugs                    2:12-cv-03001
 In Re:  Oxygen Sensors                 2:12-cv-03101

 _____/
```

                              MOTION HEARINGS

                 BEFORE SPECIAL MASTER GENE ESSHAKI
                 Theodore Levin United States Courthouse
                      231 West Lafayette Boulevard
                            Detroit, Michigan
                       Friday, December 9, 2016

*To obtain a copy of this official transcript, contact:*
*Robert L. Smith, Official Court Reporter*
*(313) 964-3303 • rob_smith@mied.uscourts.gov*

```
 1  APPEARANCES:
 2                    VICTORIA ROMANENKO
                      CUNEO, GILBERT & LaDUCA, L.L.P.
 3
 4                    STEVEN N. WILLIAMS
                      COTCHETT, PITRE & McCARTHY, L.L.P.
 5
 6                    STEVEN F. CHERRY
                      WILMER, CUTLER, PICKERING, HALE and
 7                    DORR, L.L.P.
 8
                      DANIEL T. FENSKE
 9                    JENNER & BLOCK
10
                      COLIN R. KASS
11                    PROSKAUER ROSE, L.L.P.
12
                      ADAM C. HEMLOCK
13                    WEIL, GOTSHAL & MANGES, L.L.P.
14
                      ADAM WOLFSON
15                    QUINN, EMANUEL, URQUHART, OLIVER &
                      SULLIVAN, L.L.P.
16
17                    ABRAM ELLIS
                      SIMPSON, THACHER & BARTLETT, L.L.P.
18
19                    SHELDON H. KLEIN
                      BUTZEL LONG, P.C.
20
21                    JEFFREY J. AMATO
                      WINSTON & STRAWN, L.L.P.
22
23                    J. DAVID ROWE
                      DUBOIS, BRYANT & CAMPBELL
24
25                    ANGELA A. SMEDLEY
                      WINSTON & STRAWN, L.L.P.
```

```
 1   APPEARANCES: (Cont.)    WILLIAM SHOTZBARGER
                             DUANE MORRIS, L.L.P.
 2

 3                           MICHAEL SHAPER
                             DEBEVOISE & PLIMPTON
 4

 5                           E. PAUL CAULEY
                             SEDGWICK LAW
 6

 7                           KIMBERLY C. METZGER
                             ICE MILLER, LLP
 8
```

TABLE OF CONTENTS

| MATTER | PAGE |
| --- | --- |
| Renewed Motion to Compel Discovery | 6 |
| Denso's Motion regarding Discovery | 17 |
| Motion to Compel Enforcement of Subpoenas | 24 |
| Motion to Compel Production of Documents | 67 |

```
 1    Detroit, Michigan
 2    Friday, December 9, 2016
 3     at about 9:16 a.m.
 4                          -  -  -
 5            (Special Master and Counsel present.)
 6            SPECIAL MASTER ESSHAKI:  Good morning everybody.
 7            The first matter on the docket this morning is the
 8    plaintiffs' motions to compel -- strike that.  This is In
 9    Re:  Automotive Parts Antitrust Litigation, Master File
10    No. 12-md-02311.  The first matter on the docket this morning
11    is plaintiffs' motion to compel, item number 1187 and 1188,
12    entitled the parties' renewed motion to compel discovery from
13    certain non-original equipment manufacturers, and this
14    concerns what I like to refer to as the request 31.  This is
15    a motion by the plaintiffs to ask the original equipment
16    manufacturers to disclose to them certain information sought
17    under request 31.
18            I indicated to a lot of the people that I met with
19    yesterday that I have had an opportunity to review at length
20    the motion, the response, the reply and, in fact, even
21    reviewed the case law with respect to this motion, so I do
22    not see a need for oral argument.
23            Does anyone out there feel a burning desire to
24    present something, oral argument on this case, or can we
25    simply -- can I proceed with my ruling?
```

1         (No response.)

2         SPECIAL MASTER ESSHAKI: All right. Seeing no
3  indication I'm going to proceed with my ruling. Let me just
4  start out discussing the plaintiffs' motion. On January 19th
5  of this year, in addition to the joint motion to compel filed
6  against the OEMs, plaintiffs filed an additional motion to
7  compel. That motion sought production of documents subject
8  to request 31 in the serving party's subpoena, which
9  requested communications between the OEMs and the vehicle
10 parts suppliers, including defendants, regarding the
11 conspiracy and documents provided to the OEMs by vehicle
12 parts suppliers, including defendants, concerning the
13 conspiracy.

14        On March 24th, 2016 the motion was presented to me
15 and I held it in abeyance preferring instead to address the
16 OEMs' original -- a motion to compel from the OEMs. The
17 defendants objected to this motion to produce documents
18 claiming that subject to settlement privilege, and they cited
19 the case of Goodyear Tire and Rubber vs. Child's Power
20 Supply, decision of 6th Circuit, our own Judge Suhrheinrich,
21 establishing a privilege that protects all communications
22 made in furtherance of settlement regardless of whether the
23 communications are informal or done under the auspices of the
24 Court.

25        Plaintiffs make the argument that in that case the

1  parties had not yet sued, and therefore -- there was a case
2  pending but in this case there was no case pending and
3  therefore the settlement privilege should not apply.
4       They also argue that defendants cannot assert a
5  settlement privilege over the communications between --
6  because the OEMs never filed a case.  Defendants come back
7  and assert that there is no need for a case to be pending for
8  the privilege to apply.  There are some additional cases that
9  have developed after Goodyear.
10      It was surprising to me that in the case law that
11 has been cited, some as close as the Western District of
12 Michigan, which is our sister district in this state, that
13 many district courts are failing to follow the dictates of
14 Goodyear Tire, are finding ways to distinguish the case from
15 their particular case, and other district courts are simply
16 ignoring it and calling it bad law.  I have not seen so many
17 cases challenging the rulings of an appellate court.
18      But some of the issues that I think all the parties
19 can agree upon are -- not issues but the rulings, evidentiary
20 privileges have to be narrowly construed.  Privileges are
21 exceptions to demand -- for everyman's evidence and are not
22 likely created nor expansively construed for they are in
23 derogation for the search of truth; United States vs. Nixon.
24      Even under Goodyear Tire a settlement agreement is
25 not subject to exclusion based upon privilege.  That's a

```
 1   Western District case, Connan vs. Lake Superior and Ishpeming
 2   Railroad Company.  Settlement privilege extends only to
 3   underlying discussions made during settlement negotiations
 4   and not to the occurrence of settlement talks, the terms of
 5   any settlement, or the settlement agreement itself; Ohio
 6   Consumer Council vs. Puco.
 7             Settlement privileges protect settlement
 8   negotiations from discovery but does not extend beyond actual
 9   negotiations to the terms of the final settlement agreement.
10             I am not going to go through the facts of Goodyear,
11   everyone knows the facts.  I am -- I am in a bit of a
12   quandary because Rule 48, which the privilege is based upon,
13   indicates that settlement negotiations -- evidence of
14   settlement negotiations are not admissible.  However, in the
15   discovery rule we know clearly that admissibility is not a
16   precondition to discovery, relevance is all that is
17   necessary.
18             In Goodyear, however, the Court indicated that
19   despite the clear language of Rule 408 that settlement
20   discussions are not admissible, the Court did, in fact,
21   create a new settlement privilege, and this Court, being
22   United States District Court for the Eastern District of
23   Michigan, and myself being the Master of Judge Battani --
24   strike that -- being Judge Battani's -- being the -- being a
25   master appointed by Judge Battani to address this case is
```

1    compelled to follow Goodyear.

2         As a consequence, I must hold that request
3    number 31 to the extent that it requests evidence of
4    settlement negotiations between the defendants and the
5    original equipment manufacturers will not be enforced, those
6    discussions and the evidence concerning those discussions are
7    barred.  However, in my view the discussions that occurred at
8    the initial meetings where the defendants disclosed to the
9    original equipment manufacturers the existence of a
10   conspiracy, the nature, the scope and the duration of this
11   conspiracy, the parts that may have been involved in the
12   conspiracy are not settlement negotiations, they are a
13   prelude to settlement negotiations, they are disclosing the
14   wrongful acts, and settlement negotiations occurred after
15   that disclosure.

16        So to the extent that request 31 seeks information
17   concerning the initial meetings where the disclosures of the
18   conspiracy, the scope, the nature, the extent and the
19   duration and the number of parts were involved or discussed
20   they are not privileged.  Additionally, I think even under
21   Goodyear the final settlement agreements that may have been
22   reached between the parties are not subject to settlement
23   privilege, so to that extent I am denying in part and
24   granting in part the plaintiffs' request to enforce rule
25   number 31.

*1*       The next matter on our agenda today is the -- I'm

*2* sorry.

*3*       MS. ROMANENKO: Just a quick point.

*4*       SPECIAL MASTER ESSHAKI: Please identify yourself.

*5*       MS. ROMANENKO: Victoria Romanenko for dealership

*6* plaintiffs.

*7*       Your Honor, I wanted to clarify, the request also

*8* sought documents exchanged between the OEMs and suppliers,

*9* suppliers in general, not just defendants, concerning the

*10* conspiracy as well as internal discussions and discussions

*11* with non-defendant suppliers regarding the conspiracy. It is

*12* our understanding that these were not settlement discussions.

*13*       SPECIAL MASTER ESSHAKI: I'm afraid I can't make

*14* that conclusion. Documents that were exchanged between the

*15* parties -- once -- once the conspiracy has been identified,

*16* once the wrong has been described, anything after that is

*17* settlement negotiations. So that if the defendants were to

*18* come back and say here is a spreadsheet describing all of the

*19* parts involved, describing the markups that we imposed, how

*20* long they went, where the parts were sold, what vehicles they

*21* went into, are, in fact, settlement negotiations.

*22*       Similarly, if the OEMs are responding with their

*23* own analyses of the damages that they calculate based upon

*24* the information that was conveyed to them, again, those are

*25* settlement negotiations and/or work products that are not

1   going to be subject to disclosures.
2              Your second point was?
3              MS. ROMANENKO:  So my second point was internal
4   discussions within the OEM as well as discussions between
5   OEMs and non-defendant suppliers, ones that didn't
6   participate in the conspiracy.
7              SPECIAL MASTER ESSHAKI:  Between defendants and
8   non-OEM suppliers?
9              MS. ROMANENKO:  Between OEMs and non-defendant
10  suppliers.
11             SPECIAL MASTER ESSHAKI:  Again, I'm going to fall
12  back on my ruling without knowing what this type of
13  information is.  If it is disclosing the wrongful conduct,
14  the scope, the duration, the extent, those are not
15  privileged.  If there are discussions that occurred regarding
16  here is a spreadsheet that shows what we think the damages
17  are and discussions occur internally at the OEMs saying this
18  is our analysis and this is how we should respond, I believe
19  those would be settlement negotiations, privileged and/or
20  work-product privilege, so once the dispute has been
21  identified the privilege in my mind attaches.
22             With respect to non-parties, I think the same thing
23  occurs, if a non-party -- a non-defendant comes in and says
24  to General Motors we have learned that this conspiracy
25  developed within our organization or we participated within

```
 1   this conspiracy, describes it to General Motors, how long it
 2   went, what parts were involved, so on and so forth, not
 3   privilege.  A settlement document with that non-party and
 4   General Motors, not privilege.  Anything between those two,
 5   privileged.
 6               MS. ROMANENKO:  Okay.  Understood.  I understand
 7   Snap-on states that a discussion about the ongoing business
 8   relationship --
 9               SPECIAL MASTER ESSHAKI:  Yes, I know, and while I
10   find Snap-on to be very attractive and to be an exceptional
11   decision that is issued by a special master, somebody of that
12   low character in the judicial system, it is not controlling,
13   we are required to follow Goodyear.
14               MS. ROMANENKO:  Okay.  Understood.  Thank you.
15               SPECIAL MASTER ESSHAKI:  Would you please prepare
16   an order and would you share it with defendants, and once it
17   is approved send it back to me for entry and be sure to
18   include magic language about the appeal rights?
19               MS. ROMANENKO:  As soon as we've got the transcript
20   available we will prepare an order and circulate it.
21               SPECIAL MASTER ESSHAKI:  All right.  Thank you.
22               MS. ROMANENKO:  Thank you.
23               MR. FENSKE:  Master, may I be heard?
24               SPECIAL MASTER ESSHAKI:  Please, identify yourself
25   counsel.
```

*1*         MR. FENSKE:  Dan Fenske for Mitsubishi Electric for

*2* the defendants.

*3*         I just wanted to clarify one aspect of your ruling,

*4* particularly on the settlement agreement point.  Is Your

*5* Honor ruling simply that the settlement agreements are not

*6* privileged or are you actually compelling production?

*7*         SPECIAL MASTER ESSHAKI:  I'm compelling production.

*8*         MR. FENSKE:  Your Honor, as to that point our

*9* position is if you read the plaintiffs' motion, in the motion

*10* they don't ask for settlement agreements anywhere in the

*11* initial motion, so our position -- we didn't address it in

*12* our response brief because we didn't believe that's what they

*13* were seeking, so our position is respectively that they

*14* waived their motion only as to settlement agreements.

*15*         SPECIAL MASTER ESSHAKI:  Ms. Romanenko?

*16*         MS. ROMANENKO:  Your Honor, we disagree.  We

*17* requested all communications and negotiations between the

*18* OEMs and suppliers concerning the conspiracy.  A settlement

*19* agreement is very clearly a communication between OEMs and

*20* suppliers concerning the conspiracy.  Defendants very clearly

*21* knew that settlement agreements were at issue because in

*22* their own cases that they cited, including Conlin, including

*23* Snap-on, the Court decided -- or the Master decided that

*24* settlement agreements were produceable.  These were clearly

*25* at issue, they clearly knew that this was going on, and if

Case 2:12-md-02311-SFC-RSW ECF No. 1650-3, PageID.30680 Filed 02/08/17 Page 15 of 17
Hearing before the Special Master - December 9, 2016

14

*1* they had anything further to say about it they would have
*2* said it.
*3*     And I also will note that I think Your Honor even
*4* mentioned that at the mediation, so if they had any further
*5* points to make they could have made them in this follow-up
*6* briefing that just occurred.
*7*     SPECIAL MASTER ESSHAKI: Give me a moment, please,
*8* Counsel.
*9*     MR. FENSKE: Of course.
*10*     SPECIAL MASTER ESSHAKI: Okay. I can see how you
*11* can take the position that the request 31 was limited to
*12* communications between the OEMs and any defendants or other
*13* part suppliers in connection with the facts described in
*14* plaintiffs' complaint. In the interest of saving time, I'm
*15* going to order that the settlement agreements be produced.
*16* You can appeal that to Judge Battani.
*17*     MR. FENSKE: Okay. Your Honor, just before we move
*18* on, we didn't brief this because it wasn't brought up in the
*19* opening brief. However, we have basic relevance objections
*20* to the production of settlement agreements at least as to the
*21* moving plaintiffs' cases. The -- there are some case law
*22* that says that settlement agreements are sometimes at some
*23* point in the case relevant when the settlement agreement is
*24* with an absent class member, for example. That would only be
*25* relevant to the DPP cases, Your Honor. The DPPs have not

*1* moved to compel production of these settlement agreements, so
*2* we have a basic just relevance objection to their production.
*3* I don't believe I have heard any discussion as to why the
*4* settlement agreement itself would even be relevant to the
*5* moving plaintiffs' cases.

*6* In addition, I just want to note that the
*7* production of these settlement agreements would potentially
*8* chill future settlements between OEMs and the defendants. As
*9* Goodyear notes, confidentiality is a critical component to
*10* achieving a settlement. And the plaintiffs noted in their
*11* briefing that no OEMs have filed the case but they never
*12* asked themselves why, and the likely reason why, of course,
*13* is the OEMs and the defendants are resolving their cases.
*14* They have been relying on Goodyear and they have been relying
*15* on the general respect that courts have for the
*16* confidentiality of settlement agreements that they only be
*17* produced, the actual settlement agreement, at the point which
*18* they are necessary in a case and not until then.

*19* So I would ask Your Honor to be mindful of that and
*20* respectfully ask Your Honor not to compel production of the
*21* settlement agreements, instead let the defendants and the
*22* plaintiffs discuss their potential relevance because we don't
*23* know what the relevance of the actual agreement might be as
*24* opposed to the briefing focused on which were the
*25* communications, and then we can bring it before Your Honor if

1   there is a further dispute.

2   　　　　SPECIAL MASTER ESSHAKI: Again, my response would
3   be that in the interest of time, because time is of the
4   essence today in this case, I am going to order that the
5   settlement documents be produced. There are two options; one
6   is you can engage in negotiations with the plaintiffs to see
7   if they are willing to negotiate something less than full
8   production of the settlement agreements or all of the
9   settlement agreements between now and the time that the
10  matter is presented before Judge Battani, or you can take the
11  entire matter before Judge Battani on the relevancy of the
12  settlement production and my order that they be produced.

13  　　　　MR. FENSKE: All right. Just so the record is
14  clear, our position would be because they didn't open it
15  in -- or address settlement agreements in their opening brief
16  that they waived their right to seek those, so the record is
17  clear on that. Thank you, Your Honor.

18  　　　　SPECIAL MASTER ESSHAKI: I don't see that would
19  prevent them from serving a subpoena tomorrow asking for
20  them, that's why I am saying it is in the interest of saving
21  time.

22  　　　　MR. FENSKE: Thank you.

23  　　　　SPECIAL MASTER ESSHAKI: Thank you. Okay. The
24  next issue that we have on our agenda today is Denso's motion
25  regarding discovery with respect to the original equipment