**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-MD-02311<br>HON. MARIANNE O. BATTANI |
| In Re:  ALL AUTO PARTS CASES | |
| THIS DOCUMENT RELATES TO:<br>ALL AUTO PARTS CASES | |

**NON-PARTY HONDA'S REPLY IN SUPPORT OF OBJECTIONS TO
SPECIAL MASTER'S ORDER
REGARDING HONDA DISCOVERY (DOC #1607)**

Daniel Purcell
Justina Sessions
Ian Kanig
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
dpurcell@kvn.com
jsessions@kvn.com
ikanig@kvn.com

Ronald C. Wernette, Jr.
THE WERNETTE LAW FIRM, PLLC
1877 Orchard Lake Rd, Suite 102
Sylvan Lake, MI 48320
Telephone:  248 977 3142
Facsimile:  248 977 3380
ron.wernette@wernettelawfirm.com

Dated:  February 21, 2017

The defendants and dealer-plaintiffs recognize that the demand for Honda's mid-model CSS data overreaches and no longer join in the serving parties' demand.  Only the end-payors and truck-and-equipment dealers now insist that Honda must produce *estimated*—not actual—individual part cost data for Honda minor model changes.[1]  But the additional burden to Honda of producing three to five times more estimated cost reports (in addition to the estimated cost reports Honda has already produced) is not justified by EPPs and TEDPs' generic statement that they would like their data to be as complete as possible.  Honda therefore requests that the Court vacate the portion of the Special Master's order requiring Honda to produce estimated cost (CSS) data for mid-model changes.

> A.   **Mid-model CSS data is not necessary or important to a pass-through analysis.**

EPPs and TEDPs repeat their well-worn assertion that they need as much data as possible to perform as thorough a pass-through analysis as possible.  But this principle has no limits, and fails to address the relevant Rule 26 and Rule 45 standards.  EPPs and TEDPs still make no effort to satisfy those standards by showing that the mid-model CSS data is proportional to the needs of the case under Rule 26 or not unduly burdensome to a non-party with no stake in the outcome of EPPs or TEDPs' cases under Rule 45.  They have done nothing to assist the Court in "weighing the probative value of the information sought against the burden of production on the non party."  *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013).  Instead, they have offered shifting, conclusory, and often nonsensical explanations for their overreaching demand.

*Initially*, EPPs and TEDPs claimed they needed the CSS data because "some part sourcing can change, as do actual part prices."  D.I. 1638 (Declaration of Justina K. Sessions) Ex. B.  Now they change tacks and argue in one part of their opposition brief that they "are not

---

[1] The truck and equipment dealers seek data regarding Honda's all-terrain vehicles and side-by-sides; Honda does not manufacture heavy trucks or equipment.  Honda objects to production of ATV and side-by-side data for the reasons provided in D.I. 1598 and 1624.

requesting information on design or supplier changes [*i.e.*, part sourcing], but instead seek information on *cost* changes." Opp'n Br. at 7.  Elsewhere they claim to need the CSS data because Honda uses estimated cost data during development before actual costs are known and, thus "the CSS data is highly relevant to the pass-through analyses that the Parties' experts will perform." Opp'n Br. at 7-8.

Neither of these newly asserted reasons justifies the burden to Honda of producing additional mid-model CSS data.  *First*, EPPs and TEDPs' insistence that they seek "cost data" proves Honda's point:  the CSS data is not actual cost data, it is estimated cost data.[2]  Honda has agreed to produce data showing its actual costs.  *Second*, EPPs and TEDPs' focus on pre-production cost estimates is entirely misplaced for their pass-through analysis.  The only data relevant to a pass-through analysis are the data that Honda actually used to set its prices.  Honda uses *actual* part costs, not estimated part costs or CSS data, when setting prices.  Reply Declaration of Justina K. Sessions, Ex. A (Deposition of Barron Umemoto) at 27:13-28:2, 69:11-70:21, 100:5-101:13.  Indeed, Honda's pricing 30(b)(6) witness testified that he did not know what CSS data was.  *Id.* at 75:1-9.  Further, when Honda considers costs during preliminary pricing discussions, Honda considers those costs in the aggregate, not part by part.  *See also id.* at 103:17-106:8; 108:4.  Honda has agreed to produce aggregate cost estimates.  Thus, Honda has already agreed to produce the cost information that Honda itself considers when setting its prices.

**B.    The production of additional CSS data would undisputedly add to Honda's already monumental production burdens.**

Honda does not generate or maintain part-by-part CSS reports in the ordinary course of business.  Honda's purchasing-document 30(b)(6) witness testified that Honda must create an Excel-based report out of the CSS system for every particular vehicle or stage of development.

---

[2] Contrary to EPPs and TEDPs' assertion, Honda did not "concede" the CSS data's relevance when Honda agreed, as a compromise, to produce some of it.

D.I. 1638 Ex. A (Willoughby Dep.) at 162:20-164:11.  The CSS reports that Honda has already produced--for Honda's major model changes back to 2005--consist of twenty-one different spreadsheets each consisting of approximately 2,000 individual part line items.  EPPs and TEDPs dispute that adding reports for additional model years would multiply Honda's workload and the data volume.  *See* Opp'n Br. at 10.  But the additional burden is matter of simple math: ordering Honda to produce reports for three to five times more model years means ordering Honda to create, review, and produce three to five times more reports that do not currently exist.

EPPs and TEDPs also claim that the burden to Honda is not "qualitatively different" than the burden Honda has already incurred in generating and producing major-model CSS reports.  But they do not explain why this matters in the Rule 26 and Rule 45 analysis.  The Special Master's order would require Honda to spend considerable time and resources generating additional CSS reports in addition to the burdens Honda has already incurred.  The fact that Honda has already incurred other burdens does not justify imposing new and additional ones.

C. **Full cost-shifting is appropriate in light of the marginal need for these data.**

Honda believes that the serving parties should reimburse Honda for the full cost of compliance with the third-party subpoenas, for the reasons provided in the OEMs' objections to the Special Master's order regarding the serving parties' renewed motion to compel.  EPP and TEDPs' insistence on mid-model CSS data illustrates why full cost shifting is appropriate.  Two sets of serving parties—defendants and dealer-plaintiffs—agree that these data are unnecessary.  EPPs and TEDPs nonetheless demand it not because of any showing that it is useful to any economic analysis, but simply because they want their data to be as complete as possible.  Rule 45 cost-shifting is designed to protect third parties against exactly this type of speculative, overreaching demand.  Litigants have no incentive to limit the burdens they impose on third parties—who in this case are the primary victims of the conspiracies at issue—unless the litigants themselves must shoulder some of the burden.

**D.     Conclusion**

For these reasons and the reasons provided in Honda's opening brief (D.I. 1637), Honda respectfully requests that the Court vacate the portion of the Special Master's order compelling Honda to produce CSS data relating to mid-model changes, and deny the serving parties' request for such data or, in the alternative, order that EPPs and TEDPs must reimburse Honda for the full cost of generating, collecting, reviewing, and producing such data.

Dated:  February 21, 2017

Respectfully submitted,

THE WERNETTE LAW FIRM, PLLC

 /s/ Ronald C. Wernette, Jr.
RONALD C. WERNETTE, JR.
1877 Orchard Lake Road, Suite 102 Sylvan Lake, MI  48320 Telephone: 248-953-5803
Facsimile: 248-977-3380

Attorneys for Non-Party HONDA

KEKER & VAN NEST LLP

s/ Daniel Purcell
DANIEL PURCELL
JUSTINA SESSIONS
IAN A. KANIG
633 Battery Street
San Francisco, CA 94111-1809 Telephone: 415 391 5400
Facsimile:  415 397 7188

Attorneys for Non-Party HONDA

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2017, I caused a true and correct copy of **NON-PARTY HONDA'S REPLY IN SUPPORT OF OBJECTIONS TO SPECIAL MASTER'S ORDER REGARDING HONDA DISCOVERY (DOC # 1607)** to be filed and served electronically via the CM/ECF system. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.

                                                        Respectfully submitted,

                                                        THE WERNETTE LAW FIRM, PLLC

                        By:    /s/ Ronald C. Wernette, Jr.
                                 RONALD C. WERNETTE, JR.
                                 1877 Orchard Lake Road, Suite 102
                                 Sylvan Lake MI  48320
                                 Telephone: 248-977-3142
                                 Facsimile: 248-977-3380

Dated: February 21, 2017            Attorneys for Non-Party Honda

1142952