**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION** | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| **In Re:  All Auto Parts Cases** | 2:12-MD-02311-MOB-MKM |
| **THIS DOCUMENT RELATES TO:**<br>**ALL AUTO PARTS CASES** | **CERTAIN SERVING PARTIES' OPPOSITION TO OBJECTION REGARDING SPECIAL MASTER'S ORDER ON REQUEST NO. 31 IN THE SERVING PARTIES' SUBPOENA** |

CONFIDENTIAL

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

STATEMENT OF ISSUE PRESENTED ............................................................................ v

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................................... vi

INTRODUCTION ............................................................................................................... 1

I.      STANDARD OF REVIEW-ABUSE OF DISCRETION ............................................... 2

II.     THE OPPOSING PARTIES FAIL TO PROVIDE ANY VALID REASON WHY
        CLEARLY RELEVANT DISCUSSIONS ABOUT AND DESCRIPTIONS OF THE
        CONSPIRACY SHOULD BE SHIELDED FROM THE CONSPIRACY'S VICTIMS  4

        A.      Descriptions of the Conspiracy are not Privileged ........................................ 5

        B.      The Opposing Parties' Late-Breaking Suggestion of a Privilege Log
                Review, after the Ruling Has Been Rendered is Both Impractical and
                Inefficient ...................................................................................... 10

        C.      As Rule 26 Makes Clear, "Information within this Scope of Discovery Need
                not be Admissible in Evidence to be Discoverable." ................................. 11

III.    SETTLEMENT AGREEMENTS ARE NOT PRIVILEGED AND ARE
        FREQUENTLY PRODUCED IN LITIGATION ......................................................... 14

        A.      Settlement Agreements Were Sought in Plaintiffs' Request No. 31 and
                Described in the Briefing ............................................................... 14

        B.      OEMs' Settlement Agreements are Relevant to this Litigation .................. 17

        C.      Confidentiality Agreements Have not been Found to be a Valid Basis to
                Withhold Settlement Agreements ..................................................... 18

IV.     PROVIDING THE INFORMATION PLAINTIFFS SEEK ABOUT THE
        CONSPIRACY THAT IS AT THE HEART OF THIS SUIT PROMOTES PUBLIC
        POLICY .......................................................................................... 19

V.      THE SCOPE OF THE MASTER'S ORDER IS APPROPRIATE .............................. 23

VI.     DAIMLER'S OBJECTION IS NOT WELL TAKEN ................................................ 24

CONCLUSION .................................................................................................................. 25

# **TABLE OF AUTHORITIES**

**Cases**

*Biolumix, Inc. v. Centrus Intern., Inc.*, 2012 WL 6015896 (E.D. Mich. Dec. 3, 2012)... 10, 12, 14, 23

*Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624 (6th Cir. 2009) ...................................... 3

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003).. passim

*Hagopian v. Smith*, No. 05-cv-74025, 2007 WL 2713835 (E.D. Mich. Sept. 18, 2007)............... 3

*In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 5654318 (D. Minn. Jan. 28, 2014) ................................................................................................................................... 2

*In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012) ........................................................ 6, 20, 21

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) .................................................................................................................. 12, 20

*In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201 (D.D.C. 2005) .................................................................................................................................... 12, 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-1064 SI, 2012 WL 4858998 (N.D. Cal. Oct. 11, 2012) ..................................................................................................................................... 2

*In re: EI DuPont de Nemours and Company C-8 Personal Injury Litigation*, Civil Action 2:13-md-2433, 2016 WL 5884964 (S.D. Ohio Oct. 7, 2016) .................................................... 10, 18

*Kelley v. Apria Healthcare, Inc.*, No. 3:13-CV-096, 2016 WL 737919 (E.D. Tenn. Feb. 23, 2016) ............................................................................................................................................... 7

*Nippon Steel & Sumitomo Metal Corp. v. Posco*, No. CIV.A. 12-2429 SRC, 2014 WL 1266219 (D.N.J. Mar. 26, 2014) ................................................................................................................ 2, 3

*Potluri v. Yalamanchili*, No. 06-CV-13517, 2008 WL 2566367 (E.D. Mich. June 24, 2008) 10, 18

*QSI-Fostoria, D.C., LLC v. BACM 2001-1 Cent. Park W., LLC*, No. 3:02CV07466, 2006 WL 2010791 (N.D. Ohio July 17, 2006) ......................................................................................... 7

*Rates Tech. Inc. v. Cablevision Sys. Corp.*, No. 05-CV-3583 DRH WDW, 2006 WL 3050879 (E.D.N.Y. Oct. 20, 2006) ......................................................................................................... 13

*State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-CV-10266, 2016 WL 6822014 (E.D. Mich. Nov. 18, 2016) ....................................................................................... 7

*State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. CV 14-10266, 2016 WL 6901379 (E.D. Mich. Oct. 27, 2016) ......................................................................................... 7

*United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ....................... 6, 8

*White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364 (N.D.Ill. 2001)....................................... 13

*Winchester v. City of Hopkinsville*, 2014 WL 7005422 (W.D. Ky Dec. 10, 2014)....................... 6

CONFIDENTIAL

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................... 12

Fed. R. Civ. P. 53(f) ......................................................................................................... 2

CONFIDENTIAL

## STATEMENT OF ISSUE PRESENTED

Should this Court order production of highly relevant information that would allow Plaintiffs to understand the scope, extent and nature of the automotive parts conspiracy, the wrongdoing involved and the parts at issue, when such information is not privileged and not burdensome to produce?

Should this Court order the production of highly relevant settlement agreements concerning the very conspiracy at issue in this action, when such agreements are admittedly not privileged?

CONFIDENTIAL

# <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

**Cases**

*Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 5654318 (D. Minn. Jan. 28, 2014)

*In re: EI DuPont de Nemours and Company C-8 Personal Injury Litigation*, Civil Action 2:13-md-2433, 2016 WL 5884964 (S.D. Ohio Oct. 7, 2016)

*In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012)

*In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 212 (D.D.C. 2005) *aff'd in part on other grounds sub nom. In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006)

*Nippon Steel & Sumitomo Metal Corp. v. Posco*, No. CIV.A. 12-2429 SRC, 2014 WL 1266219, (D.N.J. Mar. 26, 2014)

*Potluri v. Yalamanchili*, No. 06-CV-13517, 2008 WL 2566367, 2 (E.D. Mich. June 24, 2008)

*QSI-Fostoria, D.C., LLC v. BACM 2001-1 Cent. Park W., LLC*, No. 3:02CV07466, 2006 WL 2010791 (N.D. Ohio July 17, 2006)

*Rates Tech. Inc. v. Cablevision Sys. Corp.*, No. 05-CV-3583 DRH WDW, 2006 WL 3050879 (E.D.N.Y. Oct. 20, 2006)

*State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. CV 14-10266, 2016 WL 6901379 (E.D. Mich. Oct. 27, 2016), *adopted*, No. 14-CV-10266, 2016 WL 6822014 (E.D. Mich. Nov. 18, 2016)

*United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)

**Rules**

Fed. R. Civ. P. 26 (b)(1)

CONFIDENTIAL

# INTRODUCTION

One-and-a-half years after the Serving Parties served their subpoena on the OEMs, after two rounds of briefing, which began a year ago, two rounds of mediations and two hearings, Defendants and the OEMs are still fighting to prevent Plaintiffs[1] from obtaining the most basic facts about the more-than-decade-long conspiracy that affected the vehicles those OEMs manufactured and Plaintiffs purchased at artificially inflated prices, resulting in millions of affected vehicles, according to the Justice Department. *See* https://www.justice.gov/opa/pr/nine-automobile-parts-manufacturers-and-two-executives-agree-plead-guilty-fixing-prices

Defendants and OEMs remain unable to proffer any arguments that would justify depriving the victims of Defendants' conspiracy of the crucial information they require to understand Defendants' misconduct and litigate this action.

Defendants and OEMs do not allege any burden in producing these documents—indeed Defendants cannot, as they are not even Defendants' documents. Nor can they or do they argue that explanations of the conspiracy's scope, duration, nature and extent are irrelevant. Instead, they make clear that they simply do not want Plaintiffs to have this information because it is information they intended only to share with one another. That is not a legitimate basis to withhold critical information from the victims of this pervasive conspiracy.

The requesting Plaintiffs, as indirect purchasers, who are not part of the automotive manufacturing industry, have limited ways to learn about the conspiracy and attain an understanding of the automotive manufacturing industry where it took place. These subpoenas are one of the few key ways Plaintiffs have to attain this information, especially when many Defendant deponents claim to have forgotten the details of the conspiracy they participated in

---

[1] "Plaintiffs" in this brief refers to Automobile Dealership Plaintiffs.

CONFIDENTIAL

and Defendants have made great efforts to limit the information they share with Plaintiffs. Depriving Plaintiffs of this information would seriously handicap them in their search for truth and their attempts to prosecute this action. Plaintiffs thus request that the Court uphold the Master's Order granting Plaintiffs access to this crucial information.

## I.       STANDARD OF REVIEW-ABUSE OF DISCRETION

Under Rule 53(f)(5), "[u]nless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion." *See also* Order Appointing a Master at 4 (ordering "all objections to orders issued by the Master" reviewable under Fed. R. Civ. P. 53(f)). It is well established that "[a] decision regarding the scope of discovery is a procedural matter, reviewed for abuse of discretion." *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 5654318, at *1 (D. Minn. Jan. 28, 2014) (collecting cases); *see also Nippon Steel & Sumitomo Metal Corp. v. Posco*, No. CIV.A. 12-2429 SRC, 2014 WL 1266219, at *1 (D.N.J. Mar. 26, 2014) (denial of discovery requests reviewed for abuse of discretion); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-1064 SI, 2012 WL 4858998, at *2 (N.D. Cal. Oct. 11, 2012) (denying objection to Special Master's order requiring production of discovery on the grounds that "the Special Master did not abuse his discretion or commit clear error").

A decision about which discovery to allow "is a procedural matter, reviewed for abuse of discretion." *Hardieplank*, 2014 WL 5654318, at *1, also at * 3 (finding "[t]he Special Master was within his discretion to conclude that the discovery was relevant and that the relevancy outweighed the claimed burdens of production."); *see also Nippon Steel*, 2014 WL 1266219, at *2 ("Discovery of this area is not relevant to any claims or defenses in this case, and the Special Master did not abuse his discretion in denying these requests.").

CONFIDENTIAL

Accordingly, the Special Master's decision to order this highly relevant discovery should be reviewed for abuse of discretion, consistent with how the Court has reviewed numerous other discovery determinations by the Master in this action. *See* Order Denying Defendants' Objection, at 3, 2:12-md-02311-MOB-MKM, (Doc # 1443) (stating "[i]n sum, the Court finds the Master acted *within his discretion* in granting protection to ADPs from these Topics") (emphasis added); Order Denying Motion to Modify September 29, 2015 Order, Case No. 2:12-cv-00102-MOB-MKM Doc # 435 (Filed 03/09/16) (in an analogous situation determining that "the Master properly exercised his discretion" in ordering disclosures from non-testifying experts whose information one party argued was legally protected from discovery).

Neither the brief submitted on behalf of the primary OEMs nor the brief submitted by Defendants have much in the way or argument or analysis for a different standard of review. Defendants do not cite any caselaw aiding in their argument and the main OEM brief cites but one case, which only simply recites the standard. Main OEM Objection, at 3; Defendants' Objection, at 4.

A construction of Rule 53(f) that requires *de novo* review of discovery decisions like this would eviscerate the discretion granted to special masters for procedural determinations. *See Nippon Steel & Sumitomo Metal Corp.*, 2014 WL 1266219 at *2.

"An abuse of discretion exists only if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Hagopian v. Smith*, No. 05-cv-74025, 2007 WL 2713835, at *1 (E.D. Mich. Sept. 18, 2007) (citing *Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996)); *see also Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 634 (6th Cir. 2009). No such mistake has been made in the Master's considered ruling.

CONFIDENTIAL

## II. THE OPPOSING PARTIES FAIL TO PROVIDE ANY VALID REASON WHY CLEARLY RELEVANT DISCUSSIONS ABOUT AND DESCRIPTIONS OF THE CONSPIRACY SHOULD BE SHIELDED FROM THE CONSPIRACY'S VICTIMS

Defendants and OEMs do not deny that Defendants' descriptions of the very conspiracy at issue in this litigation to the direct victims of that conspiracy, whose products were purchased by Plaintiffs, is clearly relevant. As they know, this is unique, key information Plaintiffs may not be able to obtain from any other source.

Plaintiffs need this information to understand which products and vehicles were involved in the conspiracy, how long the conspiracy lasted, how exactly Defendants carried out the conspiracy, who was involved in the conspiracy and who played what role. Plaintiffs must also have this information in order to understand the conduct involved in the conspiracy, the negotiating, bidding, awarding and contracting practices of OEMs and Defendants, the ways in which the conspiracy was concealed and the differences between conspiratorial conduct and non-conspiratorial conduct.

Many Defendants have stated that they cannot remember or are simply unable to provide complete information about the conspiracy. A number of Defendants' employees who participated in the conspiracy have left Defendants' employ and are unable to provide cooperation or be deposed. Defendants' information is also often difficult or impossible to make sense of. For this, and many other reasons, Plaintiffs still do not have the complete information they need to understand the conspiracy. This makes the information requested in Request No. 31 that much more crucial to Plaintiffs' efforts to prosecute their case and formulate their class certification briefing.

CONFIDENTIAL

### A.     Descriptions of the Conspiracy are not Privileged

Defendants and OEMs do not deny the relevance of readily available information about the conspiracy itself.  They only claim that it is covered by the extremely limited, roundly criticized "settlement privilege." This privilege should be assessed, as explained in the case that created it, "on a case-by-case basis and weighed against the public interest." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003).

*Goodyear* involved a court-sponsored settlement negotiation, like that currently being put in place with the appointment of Judge Weinstein, where "district court presided over settlement negotiations for the counterclaims, and admonished that all talks were to remain confidential." *Goodyear*, 332 F.3d at 978.  After the negotiations proved unsuccessful, one of the parties told a media outlet of the settlement terms offered and requested by Goodyear, stating

> [T]he day before this trial began, Goodyear made us an offer. They said, we'll do away with this litigation, we'll give you cash, we'll indemnify you against lawsuits from homeowners and all you have to do is sign this paper and agree that the fault is with homeowners and contractors.

*Id.* In light of this, a party in another lawsuit against Goodyear moved to compel the production of information about this settlement offer. *Id.*  The request was denied by the district court, which ruled that "settlement talks are always confidential." *Id.* at 979.  The appellate court affirmed, stating that "confidential settlement communications are a tradition in this country." *Id.* at 980.  As the rationale for its decision, the Sixth Circuit explained that "[p]arties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination . . ."*Id.* at 980. The court reasoned that otherwise, parties who were in suit would "forego negotiations for the relative formality of trial." *Id.*

CONFIDENTIAL

What is clear from a review of the *Goodyear* opinion is that it dealt with a completely different circumstance than the one in the instant dispute.  The purpose of *Goodyear* was to protect the terms of settlement offers, "compromises" and "proposed solutions" in cases where the parties would otherwise proceed to trial. *Goodyear* never contemplated the expansive reading of the settlement privilege that the opposing parties seek here. It could never have done so, given that the Supreme Court has explicitly admonished that privileges are to be construed narrowly. *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (evidentiary privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth"); *In re MSTG, Inc.*, 675 F.3d 1337, 1343 (Fed. Cir. 2012).

The *Goodyear* court never intended to have this privilege expansively construed to shield descriptions of admitted criminal conduct from its victims, made before the parties even began trading proposed settlement terms.  The *Goodyear* opinion does not even discuss these types of documents or discussions, or any discussions about anything other than how to actually settle a pending case, which are the discussions its ruling withheld.

As has been explained, the settlement privilege must be narrowly construed in order to make certain that it is not used to deny access to legitimate evidence. Attempts to broadly assert the privilege have been rejected. *Winchester v. City of Hopkinsville*, 2014 WL 7005422, at *2-3 (W.D. Ky Dec. 10, 2014) (rejecting "broadly asserted [] 'settlement privilege.'").

Defendants and OEMs claim that the settlement privilege applies even to disclosures and explanations of Defendants' misconduct that occurred before OEMs and Defendants began negotiating any the terms of the settlement.  This is incorrect. A case within the Sixth Circuit, decided shortly after *Goodyear*, and applying the settlement privilege established by *Goodyear*, explained that "the Sixth Circuit recognizes a general 'settlement privilege' which protects

6

settlement *negotiations* from discovery." *QSI-Fostoria, D.C., LLC v. BACM 2001-1 Cent. Park W., LLC*, No. 3:02CV07466, 2006 WL 2010791, at *2 (N.D. Ohio July 17, 2006) (citing *Goodyear*, 332 F.3d at 980) (emphasis in original).

Similarly, a case in the Eastern District of Michigan, decided just last year, made clear that "[i]n *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (6th Cir. 2003), the Sixth Circuit recognized a settlement privilege that protects settlement negotiations from discovery." *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. CV 14-10266, 2016 WL 6901379, at *2 (E.D. Mich. Oct. 27, 2016), *adopted*, No. 14-CV-10266, 2016 WL 6822014 (E.D. Mich. Nov. 18, 2016), *see also Kelley v. Apria Healthcare, Inc.,* No. 3:13-CV-096, 2016 WL 737919, at *3 (E.D. Tenn. Feb. 23, 2016) ("the settlement privilege protects settlement *negotiations* from discovery") (emphasis added).

*Goodyear* also indicates that the privilege it created applies to actual settlement discussions. *Goodyear* mentions the words "settlement communications" and "settlement discussions" six times. *Goodyear*, 332 F.3d at 978, 980, 981. The court was clearly focused on the back and forth exchange of potential terms and conditions of settlement—not descriptions of the suppliers' conspiracy, which would come well before any settlement terms would be discussed. Indeed, even the passage that Defendants quote from *Goodyear* refers to "propos[][ing] the types of compromises that most effectively lead to settlement" and "proposed solutions" to the parties' issues. *See e.g.* Ds' Obj., at 17. This refers to the exchange of actual potential settlement terms. Not to descriptions of Defendants' crimes. This makes clear the court did not intend to shield statements that were not discussions about how to settle the case.

As the Master stated, explanations of the conspiracy and descriptions of its scope, durations and workings are not settlement negotiations. *See* Dec. 9 Hr'g Trans., at 9: 7-13,

CONFIDENTIAL

attached as Ex.1 ("However, in my view the discussions that occurred at the initial meetings where the defendants disclosed to the original equipment manufacturers the existence of a conspiracy, the nature, the scope and the duration of this conspiracy, the parts that may have been involved in the conspiracy are not settlement negotiations, they are a prelude to settlement negotiations . . . .").

This makes sense. A Defendant's explanation to an OEM of how it carried out its conspiracy, how long the conspiracy lasted and which suppliers that Defendant colluded with, is not a settlement negotiation and does not involve the terms of a settlement. Nor is a defendant's explanation of how the conspiracy started, why it was initiated, which conspirators played which roles, and how the conspiracy was concealed from OEMs and authorities.

The opposing parties rely on *Goodyear*'s use of the words "in furtherance." But it is clear from a review of *Goodyear* that the use of that language was not intended to extend the privilege beyond actual settlement negotiations—discussions of "compromises" and "proposed solutions,"—to pre-settlement discussions or descriptions of misconduct. Its use of those words was simply intended to be synonymous with settlement negotiations, which is consistent with the caselaw that followed *Goodyear*.

The attempt to extend the reach of the privilege even to explanations of misconduct that are not discussions of the terms on which the parties will settle the case is contrary to the Supreme Court's requirement that the privilege be construed narrowly,[2] not to cover everything arguably related to the OEMs' and Defendants' relationships following the conspiracy.

_____

[2] *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)

CONFIDENTIAL

███████████████████████████████████████████

████████████████████████████████████████████████

Of course simple descriptions of the conspiracy are not settlement discussions or settlement negotiations, as they do not broach the terms on which the parties may settle the case. The mere fact that the Defendants wanted to shield this information from Plaintiffs and the OEMs agreed to do so, in their own self-interest (while ignoring the interests of the indirect purchasers), does not make them settlement negotiations or impose a privilege on them.

Neither the main OEM nor Defendant brief offers any Sixth Circuit case withholding these types of discussions from discovery and from the very victims of such conduct. Indeed, withholding such information would seriously compromise the integrity of the discovery process.

Contrary to the opposing parties' arguments, the Master did not make an arbitrary distinction based on when the statements were made, but rather, he very deliberately relied on the content and purpose of such discussions, as Defendants and OEMs admit is the correct way to evaluate them. The Master made clear that documents or discussions "concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent, as well as descriptions of parts involved and of the wrongful acts of the conspirators are not privileged." Order Granting in Part Denying in Part Motion to Compel, at ¶2, Case No. 2:12-md-02311-MOB-MKM, Doc # 1622 (Filed 01/25/17).

OEMs and Defendants make much of the fact that they entered into their own confidentiality agreements concerning their initial communications about the misconduct in which the suppliers engaged. But the courts within the Sixth Circuit have made clear that these types of confidentiality agreements do not preclude discovery. *Pothuri v. Yalamanchili*, No. 06-

CONFIDENTIAL

CV-13517, 2008 WL 2566367, at *2 (E.D. Mich. June 24, 2008) (a "confidential settlement agreement is discoverable"); *In re: EI DuPont de Nemours and Company C-8 Personal Injury Litigation*, Civil Action 2:13-md-2433, 2016 WL 5884964 at *7 (S.D. Ohio Oct. 7, 2016) ("[C]ourts have not been persuaded by any claim of confidentiality as grounds for precluding the disclosure of a settlement agreement."). Defendants' and OEMs' private efforts to shield information about the conspiracy from injured parties are not relevant.

### B. The Opposing Parties' Late-Breaking Suggestion of a Privilege Log Review, after the Ruling Has Been Rendered is Both Impractical and Inefficient

The opponents of this Order argue that the Master should have examined each document one-by-one called through, presumably, a privilege log procedure, before ruling. Despite arguing this now, on appeal, none of these entities made this argument in the year-long litigation over this request, or submitted a single privilege log entry or a single document for review.  This new argument is inappropriate. Parties are not permitted to raise arguments for the first time in an objection to a Special Master's ruling. *Biolumix, Inc. v. Centrus Intern., Inc.*, 2012 WL 6015896, at *12 (E.D. Mich. Dec. 3, 2012) (*citing Murr v. U.S.*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). "Indeed, the purpose of appointment of the Special Master was to 'provide for a more efficient and orderly adjudication' of the claims of the parties and this purpose is poorly served by 'allowing parties to litigate fully their cases before the magistrate, and if unsuccessful, to change their strategy and present a different theory to the district court.'" *Id.* (quotation omitted).

It is clear from their conduct that Defendants and OEMs do not seriously make this argument and never intended for this to be carried out. That is because actually accepting this approach would have meant not granting the OEMs any right to withhold any of the materials sought under Request No. 31 based on privilege, until a review had been done over every responsive document.

CONFIDENTIAL

And if every document were reviewed the opposing parties may well not have received the privilege ruling in the Master's Order blocking some of their documents—those that are potentially settlement negotiations—from production. Order Granting in Part Denying in Part Motion to Compel, at ¶5, Case No. 2:12-md-02311-MOB-MKM, Doc # 1622 (Filed 01/25/17). In fact, a document-by-document review would potentially have resulted in a broader production of documents responsive to Request No. 31, under the standard in *Goodyear*, which is intended to cover exchanged settlement terms, and not other materials.

OEMs and Defendants cannot just now suggest a privilege log review for the category of documents on which they lost. And if there were a wholesale lengthy document-by-document review, they would likely lose more than they did in this ruling.

Further, a larger problem with the document-by-document review Defendants and OEMs have suggested is that it would have created another potential year-long delay, while Plaintiffs waited for OEMs to compile and produce logs, then reviewed logs and then spent months litigating challenges to those logs, while the Master performed *in camera* review. Then, after all that, there would likely be disagreements and appeals, causing further delay to this more-than-year-long process, more than five years into this litigation.

**C.    As Rule 26 Makes Clear, "Information within this Scope of Discovery Need not be Admissible in Evidence to be Discoverable."**

The opposing parties also claim, contrary to the standard set forth in Federal Rule of Civil Procedure 26, which governs these requests, that the requesting Plaintiffs must have shown that the information was admissible in order to demonstrate that it is discoverable.

CONFIDENTIAL

First, this is another argument neither group made in its original oppositions to the motion to compel, which were filed last February.[3]

Further, *Goodyear* does not hold that a moving party must prove admissibility of these types of materials in order to make a case for their discovery. It only says the moving party in that case did not do so. *Goodyear*, 332 F.3d at 983. The court does not state that this is the reason it upheld denial of the production sought. Nor would that make sense given that the production was denied on the basis of privilege. Defendants and OEMs misstate *Goodyear's* holding.

Further, such a holding would be contrary to Fed. R. Civ. P. 26 (b)(1), which clearly states that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." As one court observed "Congress chose" to have "limits on the admissibility of settlement material rather than limits on their *discoverability*." *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 211 (D.D.C. 2005) *aff'd in part on other grounds sub nom. In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) (emphasis in original) (internal citations omitted).

Objections to admissibility under FRE 408 are not valid objections to discovery. As one court explained, "[t]he premise of Plaintiff's objection—that these documents will be inadmissible at trial pursuant to FRE 408—is, as Judge Wall correctly pointed out, premature and irrelevant to the question of discoverability before the Court. [']While Rule 408 of the Federal Rules of Evidence limits the introduction at trial of evidence regarding settlement

---

[3] Parties are not permitted to raise arguments for the first time in an objection to a Special Master's ruling. *Biolumix, Inc. v. Centrus Intern., Inc.*, 2012 WL 6015896, at *12 (E.D. Mich. Dec. 3, 2012) (*citing Murr v. U.S.*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). "Indeed, the purpose of appointment of the Special Master was to 'provide for a more efficient and orderly adjudication' of the claims of the parties and this purpose is poorly served by 'allowing parties to litigate fully their cases before the magistrate, and if unsuccessful, to change their strategy and present a different theory to the district court.'" *Id.* (quotation omitted).

negotiations, this rule does not itself govern discovery.[']" *Rates Tech. Inc. v. Cablevision Sys. Corp.*, No. 05-CV-3583 DRH WDW, 2006 WL 3050879, at *3 (E.D.N.Y. Oct. 20, 2006) (citations omitted).  "[R]ule 408 [']does not require any special restriction on Rule 26 because discovery rules do not affect admissibility." *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368 (N.D.Ill. 2001) (internal citations omitted).

Further, the opposing parties' claim that discussions of Defendants' misconduct, and the duration, scope and extent of the conspiracy are inadmissible are incorrect, as they are based on the claim that these are settlement negotiations, which they are not. Indeed the Master made clear in his order that he disagreed that these were settlement negotiations. *See* Dec. 9 Hr'g Trans., at 9: 7-13, attached as Ex.1 ("However, in my view the discussions that occurred at the initial meetings where the defendants disclosed to the original equipment manufacturers the existence of a conspiracy, the nature, the scope and the duration of this conspiracy, the parts that may have been involved in the conspiracy are not settlement negotiations, they are a prelude to settlement negotiations . . . .").

Further, the information is admissible not just for purposes of establishing basic facts about the conspiracy, but also to establish how the businesses of these OEMs and Defendants worked and how basic bidding, negotiating, awarding and contracting processes functioned. In addition, these statements are relevant to establish bias of OEMs' statements thus far regarding vehicle pricing and manufacturing, made in their declarations and depositions, as will be explained *infra*.

Nor does the concern about inherently unreliable statements exist in communications between longtime business partners, who have relationships going back years in time and intend to work together for many more years. If either the OEMs or suppliers made misstatements in

these discussions, the other would quickly know they were untrue, given both sides' familiarity with the business.

### III.   SETTLEMENT AGREEMENTS ARE NOT PRIVILEGED AND ARE FREQUENTLY PRODUCED IN LITIGATION

#### A.   Settlement Agreements Were Sought in Plaintiffs' Request No. 31 and Described in the Briefing

As Defendants must admit, and, as the caselaw makes clear, settlement agreements are not privileged. Settlement agreements are often ordered produced and the opposing parties (mostly Defendants) have shown no reason why the outcome should be different here.

Once again launching into arguments they did not make before the Master, the opposing parties get nowhere.[4]

First, they argue that they somehow did not understand Plaintiffs to request settlement agreements.  But this makes no sense. Plaintiffs' Request No. 31 seeks "[a]ll Documents relating to Your or other OEMs' negotiations or Communications with any of the Defendants or other Components or Assemblies suppliers in connection with Defendants' and other Components or Assemblies suppliers' conduct at issue in MDL No. 2311 and Documents Defendants or other Components or Assemblies suppliers provided to You or other OEMs, in connection with the facts described in any Plaintiffs' Complaints." *See* Ex.2, Serving Parties' Request No. 31. Of course, as the synthesis and product of OEMs' and parts' suppliers' negotiations and communications, the settlement agreement or any document showing the result or resolution of those negotiations is clearly a "document[] relating to" them and was thus clearly requested in the subpoena.

---

[4] *See Biolumix, Inc. v. Centrus Intern., Inc.*, 2012 WL 6015896, at *12 (E.D. Mich. Dec. 3, 2012) (*citing Murr v. U.S.*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)) (new arguments inappropriate during Objection).

CONFIDENTIAL

The opposing parties quote a few snippets from one of Plaintiffs' briefs on this issue, but the Motion to Compel, clearly moved to compel on the entire request, attached it to the Motion and quoted it completely, on page 11 of the Motion to Compel, stating that Request 31 asks for "[a]ll Documents relating to Your or other OEMs' negotiations or Communications with any of the Defendants or other Components or Assemblies suppliers in connection with Defendants' and other Components or Assemblies suppliers' conduct at issue in MDL No. 2311 and Documents Defendants or other Components or Assemblies suppliers provided to You or other OEMs, in connection with the facts described in any Plaintiffs' Complaints." *See* Case No. 2:12-md-02311-MOB-MKM, Doc # 1188 (Filed 1/19/2016) at 1, fn 2 and at 11, Ex. 2 to same.

Further, the briefing on this request made clear that Plaintiffs were seeking settlement agreements and understood Defendants to oppose their production. *See* Case No. 2:12-md-02311-MOB-MKM Doc # 1254 Filed 03/11/16 Pg 16 of 29 ("the court ordered that any settlement agreement could be produced—contrary to the positon Defendants have taken."); Case No. 2:12-md-02311-MOB-MKM Doc # 1550 Filed 12/02/16 Pg 9 of 17 ("Agreements to resolve commercial disputes are clearly discoverable and implicate no privilege issues. The same is true of settlement agreements."). In addition, in correspondence explaining Plaintiffs' continuing pursuit of certain Requests in their Subpoena, after the OEM depositions had been completed, Plaintiffs made very clear that "Plaintiffs continue to pursue Request No. 31" without qualification. *See* Ex. 3, October 11, 2016 Email to General Motors. Indeed, Defendants knew even from the cases they cited in their own briefs, that requests like Request 31 seek settlement agreements and that such agreements are often ordered produced.

Further, this request was first served in 2015. Since then, the parties have had hours of meet and confers during which any question about whether Plaintiffs were requesting settlement

agreements could have been asked and addressed, if OEMs were not certain what the Request sought, or thought that the request, despite being quoted in full and attached to the Motion to Compel had been altered to remove settlement agreements. Any arguments against these agreements' production should have thus been raised by Defendants or OEMs in their briefs (of which many filed two rounds—one in February 2016 and one in November 2016), or at mediation. The opposing parties chose not to do so. Having made a choice to sit on their rights and refrain from raising the argument or even their questions during the multiple rounds of briefing and mediations that occurred over the course of a year, it is unfair for the opposing parties to now argue before the Court, on their Objection, that settlement agreements were not requested. Indeed, if settlement agreements were not requested, why would the Master have ordered their production?

In any event, if the issue were arguable, the Master was within his rights to use his discretion to grant the request to prevent a further waste of time that would result from serving a new subpoena and re-litigating just the issue of the settlement agreements, given that the caselaw already briefed demonstrated that they were producible. Given the Court's stated concern with the pace at which the subpoena process had been moving back in June and the Court's and the parties' desire to complete the subpoena process, the Master appropriately used his discretion to order the production of settlement agreements, even if it was arguable whether the request was made -though such an argument would have been baseless in light of the above.

Indeed, in the past, when the Master ordered something that was clearly not originally requested in a motion, but the Court believed there was good cause for the Master to do so, the Court upheld the Master's order. Case No. 2:12-cv-00102-MOB-MKM, Doc # 435 (Filed 03/09/16), at 4 (stating that the objection "is grounded in their position that Defendants never

CONFIDENTIAL

sought the relief ordered by the Master" but finding that "the Court concludes that the Master properly exercised his discretion").

### B. OEMs' Settlement Agreements are Relevant to this Litigation

OEMs' settlement agreements are undoubtedly relevant. First, these agreements will shed light on practices and mechanics of OEMs' commercial relationship with their suppliers, an ongoing, sometimes decades-long relationship that defined how parts contracts were bid out, negotiated, awarded and modified and that was at the center of this conspiracy. This information is very important to Plaintiffs' understanding of the conspiracy and Defendants' conduct.

Certain Defendants have, and others likely will, argue that Plaintiffs have may not have damages after the time that the conspiracy was disclosed to the OEMs, because collusive rates were modified or re-negotiated after disclosure. In order to explore this issue, Plaintiffs will require access to any documents containing the post-conspiracy modifications of collusive rates. These agreements are in fact commercial agreements, rather than agreements to resolve pending court cases. Surely Plaintiffs can discover regular business documents, just as they have obtained discovery of supplier agreements.

Further, the OEMs have made a number of statements in this case already, in declarations and depositions. Plaintiffs believe that some of these statements, such as ███████████████ ███████████████████████████████████████████████████████████ █████████████████████ are made with potential bias. OEMs' settlement agreements with Defendants can inform and establish that bias. Further, OEM witnesses who signed declarations or depositions that Defendants may try to use against Plaintiffs may later testify at hearings or at trial. If Plaintiffs wait until then to seek to compel production of these agreements, it may well be too late and Plaintiffs will be prejudiced.

CONFIDENTIAL

Settlement agreements may also be used for discovery purposes, to inform Plaintiffs' decisions as to what to request. Plaintiffs may review the documents suppliers agreed to produce to OEMs as part of the agreements and utilize such lists to information their own requests or simply to understand the sorts of documents and data that can possibly be produced.

These are some, of the many, reasons why settlement agreements are relevant here.

Defendants' speculation, without a declaration or any evidence, that these agreements will not contain any valid information about the workings and scope of the conspiracy cannot possibly extend to all of the settlement agreements being sought (as the Defendants presumably have not seen one another's settlements with the OEMs) and cannot be credited in light of the vague and speculative nature of the claim.

Ford's additional argument that its agreements and disclosures are irrelevant because it is a direct purchaser is a rehash of defendants' original arguments in this MDL that indirect purchasers could not recover in this action and ignores the fact that indirect purchasers purchased Ford's vehicles and thus bore the injuries caused by the conspiracy.

### C. Confidentiality Agreements Have not been Found to be a Valid Basis to Withhold Settlement Agreements

The opposing parties also argue these agreements should be withheld from production because they privately agreed among themselves that the agreements would be confidential. Courts have rejected this argument. *Potluri v. Yalamanchili*, No. 06-CV-13517, 2008 WL 2566367, at *2 (E.D. Mich. June 24, 2008) (a "confidential settlement agreement is discoverable"); *In re: E. I. Du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, No. CV 2:13-MD-2433, 2016 WL 5884964, at *8 (S.D. Ohio Oct. 7, 2016) ("the confidential settlement agreement is not privileged ... [and] is not protected from discovery simply because it has been denominated 'confidential' by the parties").

18

Given that private agreements to maintain the confidentiality of their settlement agreements are the primary countervailing reason the opposing parties cite for their position, and that they have not alleged any burden whatsoever, Defendants and OEMs have not established an interest in withholding production that outweighs Plaintiffs' need for these agreements.

Defendants provide various additional complaints that suppliers and OEMs would not "want" other suppliers to view their agreements. The fact that a party does not want its information disclosed is not a basis recognized by Rule 26 for withholding production and certainly does not outweigh Plaintiffs' need for the information. Defendants claim that they and OEMs must withhold agreements from suppliers who have not yet settled. But this makes no sense. Plaintiffs' settlement agreements are all made public to Defendants who have not settled, but this does not hurt their negotiations. In fact, it often helps other non-settling Defendants to see actions with their co-Defendants settled and renders them more inclined to settle. Frequently the same or similar strategies are used with different opposing entities and the fact that one entity has agreed to a particular process or formulation often helps another to do so. Nor can these agreements be used negatively against any OEM, as no OEMs are currently parties to this MDL.

## IV. PROVIDING THE INFORMATION PLAINTIFFS SEEK ABOUT THE CONSPIRACY THAT IS AT THE HEART OF THIS SUIT PROMOTES PUBLIC POLICY

The public interest weighs heavily in favor of disclosure here, where victims of a wide-ranging conspiracy that the Justice Department has indicated affected millions of vehicles are seeking discovery from the manufacturers of the vehicles they purchased about information the concerning the conspiracy.

Defendants claim that non-disclosure is necessary to promote settlements.  But it strains credulity to argue that two entities would decline to resolve disputes costing hundreds of millions

CONFIDENTIAL

of dollars and instead decide to engage in litigation that would cost them millions of dollars because some of their documents may be privately provided in one litigation under a Highly Confidential designation, to a finite number of attorneys.

Another court, in performing its careful analysis of this issue said as much.  The court in *CFTC* stated "'[t]o suggest, as do these plaintiffs, that the prospect of revealing settlement terms to a narrowly limited audience (nonsettling codefendants and those in privity with them) might impede out of court dispositions seems wrongheaded, given that the alternative to settlement would be a double whammy: the loss of the benefit of the bargain and the more public airing occasioned by a fullblown trial.'" *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 212 (D.D.C. 2005) *aff'd in part on other grounds sub nom. In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) (quoting *Bennett v. La Pere*, 112 F.R.D. 136, 139 (D.R.I.1986)).

In *MSTG*, the court said that "while there is clearly an important public interest in favoring the compromise and settlement of disputes, disputes are routinely settled without the benefit of a settlement privilege. It is thus clear that an across-the-board recognition of a broad settlement negotiation privilege is not necessary to achieve settlement."  *In re MSTG, Inc.*, 675 F.3d 1337, 1345 (Fed. Cir. 2012).

Given that the Sixth Circuit does not recognize a privilege for non-settlement discussions such as factual descriptions of the conspiracy, and that the many other Circuits where these documents could be requested do not recognize any settlement privilege, it is hard to believe that OEMs and Defendants ever thought that the highly relevant information they exchanged in their discussions of the conspiracy and their settlement agreements would remain under lock and key or that they relied on such an assumption.  *See e.g. In re MSTG, Inc.*, 675 F.3d 1337, 1342 (Fed.

CONFIDENTIAL

Cir. 2012) ("the Sixth Circuit in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332

F.3d 976, 979–83 (6th Cir.2003) . . . appears to be *the only one of our sister circuits* to adopt

such a privilege.") (emphasis added).

Defendants and OEMs claim that producing this crucial information will affect

settlements going forward.  But that allegation is rebutted by one of the OEMs themselves. In its

separate brief, Nissan states that it will continue to "control its own destiny," and resolve its

claims outside of court even with the order of these disclosures. Nissan Br. at 2. Nor has any

OEM indicated that it has forgone an out-of-court resolution as a result of this request or order.

Indeed, this motion was filed more than a year ago, and indications were given by the

Master as early as last March that he intended to grant it, at least in part. Yet there is no sign of

out-of-court resolutions having been stopped. Certainly neither Nissan nor the OEMs who joined

the main brief have filed any cases in court against suppliers concerning this conspiracy.

Nissan, without even a declaration or any specifics, vaguely complains of its ability to

memorialize agreements. But, it gives no explanation of any concrete consequences that have

actually taken place or how many suppliers or negotiations have actually been affected. It is thus

impossible to tell from Nissan's brief if any settlements or negotiations have been abandoned as

a result of the Master's ruling, which was forecasted almost a year ago, or if Nissan and its

suppliers simply do not like the ruling and are looking for ways to circumvent it. Instead, as

stated, Nissan gives every indication of intending to continue "control[ing] its own destiny" and

resolving the conspiracy issues outside of court, so clearly that path remains open and its best

option. The most that Nissan and any OEMs say is that they may modify their negotiation

strategies and take measures to circumvent the application of the Master's order, which is

inappropriate. Such statements should not be given any weight.

Nor does the OEMs' and Defendants' threat that production of descriptions of the conspiracy and settlement agreements will cause the OEMs to file cases in court even make logical sense. If the OEMs have a pending court action, their settlements are even more likely to become public and materials they receive about the conspiracy will certainly be produced to other Plaintiffs in this MDL, in whole or in part, as that is how an MDL functions.  Nor does filing in court mean that the parties would not have side negotiations like they are doing now, to settle the case. Filing in court would change nothing about the disclosures requested in Request No. 31 and would simply result in more attorneys' fees for the OEMs.  Thus, this would not be a reasonable solution to the problem the OEMs claim they now have.  There does not appear to be any real likelihood that now, years after the conspiracy, the OEMs will suddenly start filing cases against their suppliers.

At best, this argument seems like a toothless threat and a last-ditch effort to prevent the victims of the conspiracy from learning about its true nature. None of the opposing parties have given any valid reasons why the indirect purchaser victims who overpaid for vehicles as a result of the conspiracy should not benefit from the same disclosures about the conspiracy that the OEMs received.

Finally, Defendants cite to a rule concerning completely unrelated ADR proceedings before the Court. But the discussions between suppliers and OEMs were not in the midst of ADR proceedings, they were not even in the midst of a case before the Court. *Goodyear's* reference to informal negotiations refers to non-court sponsored settlements of existing cases that would have otherwise gone to trial, like the settlement negotiations the parties in this case were having prior to the appointment of Judge Weinstein. It does not refer to business discussions between OEMs and suppliers not linked to any pending case that has no risk of ever going to trial.

## V.      THE SCOPE OF THE MASTER'S ORDER IS APPROPRIATE

Only Defendants protest the parts to which the Master's order applies and, making a request and an argument they never made in their briefing below or even at the December 9 Hearing,[5] seek to carve out certain parts from the order.  This makes no sense given that no argument can be made that certain auto parts are subject to privilege and others are not and given that that neither OEMs—the actual producing parties—nor Defendants can claim any burden associated with producing this information for all parts in the MDL.  Thus, again, Defendants seek this information removed only because they do not wish Plaintiffs to have it.

But Plaintiffs need information about all parts so as to understand how the settlement agreements and disclosures functioned in this context, and obtain the full picture, with the full set of documents the Master ruled are properly producible. This way Plaintiffs can compare different documents, discern patterns and use provisions of certain documents to understand provisions of others. Without them, Plaintiffs will not be able to gain an understanding of how to interpret the documents they receive and to use them meaningfully.

A limitation like that Defendants seek will only serve to deprive Plaintiffs of evidence. If the opposing parties begin removing portions of the documents the Maser already ruled producible, such redactions may lead to purposeful or inadvertent removal of other evidence. Such redactions will also lead to extended fights between Plaintiffs, OEMs and Defendants, further putting off any final resolution of these issues.

---

[5] Parties are also not permitted to raise arguments for the first time in an objection to a Special Master's ruling. *Biolumix, Inc. v. Centrus Intern., Inc.*, 2012 WL 6015896, at *12 (E.D. Mich. Dec. 3, 2012) (*citing Murr v. U.S.*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

CONFIDENTIAL

## VI.    DAIMLER'S OBJECTION IS NOT WELL TAKEN

Unlike all of the other OEMs and Defendants, Daimler claims that the Master's Order should not apply to it. Daimler first attempts to hang its hat on the fact that the Court set aside the Master's order regarding OEM depositions, and carved out the smaller OEMs from that process.  But, in the transcript quoted by Daimler, the Court merely set aside the order requiring *depositions* that were needed to re-write and renew the Joint Motion to Compel, filed by all serving parties, which sought all upstream and downstream documents and data from the OEMs.

This process had nothing to do with the Plaintiffs' Motion to Compel, a separate motion which sought the documents encompassed in Request 31.  This motion was not subject to renewal, based on any depositions.  Neither the OEMs, nor the Master ever contended that depositions were needed to narrow the differences between the parties on that motion. The resolution of that motion had nothing to do with how and where OEMs store their upstream and downstream data and documents.  The Master simply elected to defer ruling on it, until the Joint Motion was ready to be re-heard. Thus, Daimler incorrectly conflates the two motions.

Therefore, Daimler's second complaint, that the Joint Motion was only renewed as to the six large OEMs, does not in any way address the Plaintiffs' Motion to Compel, which was not limited to six OEMs, because the application of the settlement privilege would not change based on the OEMs at issue and the privilege would apply to all OEMs in the same way.

Finally, Daimler acknowledges the Plaintiffs' Motion to Compel, which was re-presented to the Master once the Joint Motion was ready to be heard. But Daimler misleadingly points to the notice re-presenting this motion and claims that it does not apply to Daimler because it contains a reference to OEMs, and, based on an idiosyncratic definition, Daimler does not consider itself circumscribed by that term.

CONFIDENTIAL

This is a disingenuous position. The notice Plaintiffs filed indicated that the Plaintiffs were once more presenting their original motion to compel to the Master regarding Request No. 31. It simply stated: "Plaintiffs filed an additional Motion to Compel (Case No. 2:12-md-02311, ECF Nos. 1187 and 1188)." "That motion was fully briefed (Case No. 2:12- md-02311, ECF 1216; Case No. 2:12-md-02311, ECF 1227, pages 35-37) (Case No. 2:12-md- 02311, ECF 1254) and prepared to be argued." "Now that oral argument will be ripe as to the all of other requests on December 9, 2016, the argument on Request 31 is ready to be heard as well." The notice then attached the entire briefing on that request. The motion continued to apply to Daimler after it was re-presented for argument, just as Daimler implicitly admits it did when it was originally filed. If Daimler was confused, it could have asked Plaintiffs. The fact that it did not is telling.

The only thing that could be accomplished by carving out Daimler from this order at this stage, a year later, is more delay. The arguments have all been made. Given that this is an issue primarily of privilege, the outcome will be no different based on the OEM at issue.  Plaintiffs would just have to wait many extra months for Daimler's documents, and further delay resolution of this request. There is no basis for this.  Daimler should be compelled to produce its documents responsive to Request 31 just like its fellow subpoenaed entities.[6]

## **CONCLUSION**

For all of the reasons set forth above, Plaintiffs respectfully request that the Master's Order be upheld as the Master properly exercised his discretion in allowing Plaintiffs' discovery.

Dated:  February 22, 2017                    Respectfully submitted,

---

[6] Ford also filed an objection, largely reiterating what was in the Main OEM brief, but asserting that the Order does not apply to it and that it wishes a chance to re-argue the issues once it does. Plaintiffs are find with Ford's statement being considered now, but, if that occurs, Plaintiffs do not agree it may be revisited later in time.

CONFIDENTIAL

_/s/ Jonathan W. Cuneo_
Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
**CUNEO, GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com


Don Barrett
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com

_Interim Co-Lead Class Counsel for Dealership Plaintiffs_


**MANTESE HONIGMAN, P.C.**

Gerard V. Mantese
(Michigan Bar No. P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com

_Interim Liaison Counsel for Dealership Plaintiffs_

26

CONFIDENTIAL

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2017 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com