**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness | : | 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00203 |
| In Re: Fuel Senders | : | 2:12-cv-00303 |
| In Re: Heater Control Panels | : | 2:12-cv-00403 |
| In Re: Bearings | : | 2:12-cv-00503 |
| In Re: Alternators | : | 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | : | 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | : | 2:13-cv-00903 |
| In Re: Radiators | : | 2:13-cv-01003 |
| In Re: Starters | : | 2:13-cv-01103 |
| In Re: Ignition Coils | : | 2:13-cv-01403 |
| In Re: Motor Generator | : | 2:13-cv-01503 |
| In Re: HID Ballasts | : | 2:13-cv-01703 |
| In Re: Inverters | : | 2:13-cv-01803 |
| In Re: Electronic Powered Steering Assemblies | : | 2:13-cv-01903 |
| In Re: Fan Motors | : | 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02203 |
| In Re: Power Window Motors | : | 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | : | 2:13-cv-02603 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | 2:13-cv-02803 |
| In Re: Spark Plugs | : | 2:15-cv-03003 |
| In Re: Automotive Hoses | : | 2:15-cv-03203 |
| In Re: Ceramic Substrates | : | 2:16-cv-03803 |
| In Re: Power Window Switches | : | 2:16-cv-03903 |
| THIS DOCUMENT RELATES TO: End-Payor Actions | : : | |

1

## REPLY TO PLAINTIFFS' RESPONSE TO YORKS' OBJECTION TO ROUND TWO SETTLEMENTS AND REQUEST FOR ATTORNEYS' FEES

Predictably, End-Payor Plaintiffs come out swinging with half-truths and innuendo in hopes of sidestepping the merits of York's objection. Calling York's attorney a "serial objector," however, shows how far Plaintiffs are willing to go to sweep their motion under the rug. That scandalous title is reserved for lawyers who use boilerplate arguments to advance frivolous objections in order to extract unwarranted fees from fair settlements. See, Greenberg, Bruce D. (2011) "Keeping the Flies Out of the Ointment: Restricting Objectors to Class Action Settlements," *St. John's Law Review*: Vol. 84: Iss. 3, Article 4, at 964.

The problem is that Plaintiffs offer no evidence that attorney Cochran is actually ***guilty*** of the charge. The reason is simple**: *none exists*.** In reality, a class objector's role is shaped by a settlement's inherent tension—the defendant has shopped for a class release at the lowest price; class counsel now seeks the biggest fee in return. Standing between them is the court, charged with making the right decision as class fiduciary. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Consequently, objectors with experienced counsel "serve as a highly useful vehicle for class members, for the court and for the public generally" to bring adversarial scrutiny to proposed class action settlements. *Great Neck Capital Appreciation Inv. P'ship, LP v.*

*PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). As Judge Posner explained: "American judges are accustomed to presiding over adversary proceedings. They expect the clash of the adversaries to generate the information that the judge needs to decide the case." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (reversing approval of class action settlement based on objectors' arguments). Vigorous, articulate objections by competent counsel acting for individual class members allow a judge to overcome a "disadvantage in evaluating the fairness of the settlement to the class." *Id.*

York's objections to the auto parts settlements prove the point. Without experienced counsel, the Yorks would have assumed (like countless others) that the class notice in the first round of settlements meant what it says: "*If you can't identify a part, don't bother objecting.*" Neither could they have discerned the settlements' true fault lines. As demonstrated below, the issues raised extend far beyond the specific agreements under review.

### I. The Deprivation of York's Due Process Right Was Not Rendered Moot By the Law of the Case Doctrine.

Plaintiffs' response to York's due process objection has already been already addressed in York's reply in support of the Round One appeals (still awaiting the Sixth Circuit's ruling). For several reasons, the clerk's order dismissing York's appeal in the MDL Master Case has no effect on York's Round Two objections. First, the dismissal was based solely on procedural grounds pertaining to appellate

3

jurisdiction. Second, there has been no adjudication regarding the merits of York's claim. Third, the cases involve different issues and different parties. Fourth, the Sixth Circuit is not reconsidering a matter previously resolved in a continuing proceeding. Finally, the Court did not decide a rule of law governing the same issue in subsequent stages of the same case. The truth is that York's due process concern raises a substantial constitutional issue that demands this Court's close scrutiny. Summarily discarding his argument—based solely on the misapplication of a procedural doctrine bearing no relation to the issue at hand—would be a serious miscarriage of justice.

## II. York's Fee Objection Is Not Oblivious to the Sixth Circuit's Factors For Determining Reasonableness.

In the context of a class action settlement, a court has available "two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'" *Id.* (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

A percentage-of-the-fund request must be weighed against the ***actual results obtained*** for the class. *Id.* "A case-by-case analysis honors both the principles that undergird the abuse of discretion review standard and the practical realities of examining a settlement reached by particular parties in their specific circumstances." *Gascho, et al. v. Global Fitness Holdings, LLC,* 14-3761, 14-3798 at *13 (6th Cir. 2016). "Determining the appropriate relationship between fees and benefits to the class, however, can be significantly impacted by the facts of a case." *Id.* See also *Imwalle v. Reliance Med. Prods., Inc.* 515 F.3d 531, 551 (6th Cir. 2008).

Contrary to Plaintiffs' suggestion, the *size* of the settlements still matters. Even if the Sixth Circuit categorically refuses to recognize the megafund (which it never has), the rationale behind the principle is sound. Judge Marbley's excellent treatment of the subject in a well-known securities settlement from the Southern District of Ohio illustrates the point well:

> Another drawback of the percentage fee approach is that it can result in a windfall for the plaintiffs' attorneys because the size of the settlement does not necessarily reflect the skill, efficiency, and hard-work of counsel. [] [A] large settlement could result from the mere happenstance that the class is large, even though the liability issue would be the same regardless of whether there were 8,000 or 80,000 class members. [] The huge fees in a huge case might be less a function of the amount or quality of the attorneys' work, or even of the risk undertaken, and more simply a function of the fact that the lawyers managed to find and bring a case with huge damages. []
>
> In order to address this flaw of the percentage approach, the Court will follow the declining percentage principle, meaning the percentage of recovery allocated to attorneys' fees decreases as the size of the recovery

5

increases. [] Because recovery is partially the result of class size, and not just attorney skill, "the percentage awarded ordinarily should decrease as the amount of the recovery rises, particularly in `mega-fund' cases where the recovery is above $100 million." []

Accordingly, "district courts setting attorneys' fees in cases involving large settlements must avoid basing their awards on percentages derived from cases where the settlement amounts were much smaller." (citations omitted)

*In Re Cardinal Health Securities Litigations*, Case No. C2-04-575 (S.D. Ohio, Dec. 31, 2007) at *17-18. Based partly on the settlement's size, Judge Marbley then reduced class counsel's 24% fee request to an 18% award (still above the average 15% cited in the Logan Study of class settlements under $600 million). *Id.* at *31. In doing so, Judge Marbley demonstrated the superiority of rigorous analysis over categorical awards. In the first round, this Court has already awarded a higher percentage of the settlement pool without hinting when it will stop—or even *mentioning* the megafund principle. We trust the Court will give this important factor more attention the second time around.

Respectfully Submitted,

| | | |
|---|---|---|
| *s/ Olen York* | *s/ Amy York* | *s/ Nancy York* |
| Olen York, Esq. | Amy York | Nancy York |
| 15 Riverview Court | 15 Riverview Court | 9 Gable Drive |
| Milton, W.Va. 25541 | Milton, W.Va. 25541 | Milton, WV 25541 |
| 304.633.1178 | 304.633.1178 | 304.743.5949 |

*Class Members/Joint Objectors*

*s/ George W. Cochran*
LAW OFFICE OF GEORGE W. COCHRAN
1385 Russell Drive
Streetsboro, Ohio 44241
Tel: (330) 607-2187
Fax: (330) 230-6136
lawchrist@gmail.com
*Counsel to the York Objectors*

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the foregoing was served upon the parties electronically via CM/ECF on April 6, 2017.

      */s/ George W. Cochran*
      George W. Cochran
      Counsel to the York Objectors