# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIV.

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Wire Harness | 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | 2:12-cv-00203 |
| In Re: Fuel Senders | 2:12-cv-00303 |
| In Re: Heater Control Panels | 2:12-cv-00403 |
| In Re: Bearings | 2:12-cv-00503 |
| In Re: Alternators | 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | 2:13-cv-00903 |
| In Re: Radiators | 2:13-cv-01003 |
| In Re: Starters | 2:13-cv-01103 |
| In Re: Ignition Coils | 2:13-cv-01403 |
| In Re: Motor Generator | 2:13-cv-01503 |
| In Re: HID Ballasts | 2:13-cv-01703 |
| In Re: Inverters | 2:13-cv-01803 |
| In Re: Elec. Powered Steering Assemblies | 2:13-cv-01903 |
| In Re: Fan Motors | 2:13-cv-02103 |
| In Re: Fuel Injection Systems | 2:13-cv-02203 |
| In Re: Power Window Motors | 2:13-cv-02303 |
| In Re: Auto. Transmission Fluid Warmers | 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | 2:13-cv-02603 |
| In Re: Air Conditioning Systems | 2:13-cv-02703 |
| In Re: Windshield Washer Systems | 2:13-cv-02803 |
| In Re: Spark Plugs | 2:15-cv-03003 |
| In Re: Automotive Hoses | 2:15-cv-03203 |
| In Re: Ceramic Substrates | 2:16-cv-03803 |
| In Re: Power Window Switches | 2:16-cv-03903 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

**REPLY OF MARK RAY AND SEAN HULL TO EPPS' OMNIBUS RESPONSE TO OBJECTIONS**

## I. Class Counsel Have Yet to Commit that they *Will Not* Seek Incentive Awards.

Class counsel do not dispute (nor can they dispute) that any incentive award for the class representatives must be considered in the court's fairness inquiry. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013); *see also Pelzer v. Vassalle*, 655 Fed. Appx. 352, 356–57 (6th Cir. 2016).[1] Because the class notice and settlements suggest incentive awards may indeed be sought,[2] Objectors Mark Ray and Sean Hull urged that the settlement should not be approved without more information on what the representatives *will* take.[3]

The verbiage in class counsels' Response is carefully crafted. Class counsel claim Mr. Ray and Hull's argument is inapposite because "Class Counsel **have not** requested that the Court grant any incentive awards" and that "no incentive awards or special compensation *is being sought* for the named plaintiffs."[4]

What is missing is a prospective statement that no incentive awards *will be sought*. Without a judicial declaration by class counsel that no such awards will

---

[1] Objection of Mark Ray and Sean Hull, 2:12-md-02311-MOB-MKM, ECF Doc. 1717, at 11.

[2] The Class Notice indicates that during the fairness hearing, the Court will "decide whether to approve . . . any requests by Settlement Class Counsel for . . . class representative awards." And, the DENSO settlement agreement discusses possible incentive awards, and attempts to segregate any such awards from the court's consideration of the fairness, reasonableness, and adequacy of the settlement. Settlement Agreement, 2:13-cv-00703-MOB-MKM, ECF Doc. 106-1, at 39-40.

[3] Objection of Mark Ray and Sean Hull, 2:12-md-02311-MOB-MKM, ECF Doc. 1717, at 10.

[4] End-Payor Plaintiffs' Omnibus Response to Objections to Round 2 Settlements, 2:13-cv-01803-MOB, ECF Doc. 134, at 6 (emphasis added).

ever be sought, this Court should not approve the settlement because a proper fairness inquiry cannot be conducted. *See Baby Products*, 708 F.3d at 175. If incentive awards are sought later, any fairness inquiry now will necessarily be incomplete. There is no way of knowing whether the class representatives will take disproportionately more than the unnamed class members, a requisite consideration in the fairness analysis.

## II. There is Still Inadequate Information Concerning the Value of the Class Claims.

Class counsel misconstrue Mr. Ray's and Hull's objection concerning the lack of disclosure of the value of the claims released, a vital consideration in weighing the fairness of the settlement. *See e.g., Gascho v. Glob. Fitness Holdings, LLC*, 2:11-CV-436, 2014 WL 1350509, at *21 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016); *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 386 (D. Minn. 2013) ("[b]ecause 'the existing record does not provide any evidence or methodology by which the Court can determine the class members' potential ranges of recovery or their chances of collecting a verdict,' the Court is left 'unable to make any reasoned assessment of the value of the claims'" and, hence, is unable to approve the proposed settlement."); *People ex rel. Wilcox v. Eq. Funding Life Ins. Co.*, 335 N.E.2d 448, 456 (Ill. 1975) ("[b]asic to this process in every instance, of course, is the need to compare the terms of the compromise with

the likely rewards of litigation").

In signing off on the settlement, class counsel "considered the available evidence regarding the Round 2 Settling Defendant's conduct [and] the estimated dollar amount of commerce affected by that conduct[.]"[5] Yet, as Objectors Ray and Hull explained, class counsel never disclosed what evidence they considered, nor the estimated dollar amount of commerce impacted by the conduct.

They still have not disclosed that information. Their Response suggests class members look for it "in online court filings, the settlement website, and news articles."[6] That is not enough. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013) ("The burden of proving the fairness of the settlement is on the proponents"); *Baby Products*, 708 F.3d at 175 (fairness inquiry "needs to be, as much as possible, practical and not abstract. If 'the parties have not' on their own initiative 'supplied the information needed' to make the necessary findings, the court should 'affirmatively seek out such information'").

Nor is their reference to a plea agreement involving DENSO, which class counsel claim contains "much volume of commerce data[.]"[7] The Response does not indicate that this was the evidence class counsel considered in weighing the

---

[5] *See* End-Payor Plaintiffs' Motion for Orders Granting Final Approval of the Round 2 Settlements and Approving the Plan of Allocation in Connection with the Round 2 Settlements, 12-00103, ECF Doc. 558, at 6; Joint Declaration of Hollis Salzman, Steven N. Williams, and Marc M. Seltzer, ECF Doc. 559, at ¶ 15.

[6] Response to Objections to Round 2 Settlements, 2:13-cv-01803-MOB, ECF Doc. 134, at 7.

[7] *Id.*

3

settlement against the estimated value of impacted commerce. Did class counsel rely on the amounts stated therein, or other undisclosed evidence? Do the amounts discussed in that plea agreement cover all DENSO products at issue here? None of these questions are answered.

Of course, even if this information adequately apprised the class as to the value of their claims (it does not), it was provided too late in time. Class members had until March 16, 2017 to decide whether to participate in the settlement or opt out, and whether to object. Any information provided in the April 5, 2017 Response is too little, too late.

Class counsels' factual distinctions of *Shane* are misguided. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016). *Shane* held that class members "cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e)" when they have been denied "review the bases of the proposed settlement. . . ." *Shane Group*, 825 F.3d at 309.

The class members in *Shane* at least knew the evidence, though improperly under seal, which class counsel considered in valuing the claims relative to the settlement offer. Here, class counsel relied on evidence and "an estimated dollar amount of commerce affected[,]" yet never disclosed what that evidence was, or the estimated dollar amount, to the class. As in *Shane*, "[t]he Rule 23(e) objection

4

process seriously malfunctioned." *Id*. at 309.

### III. A Fee Award of Nearly 30% of $379 Million is Not Supported by Sixth Circuit Authority or Empirical Evidence.

Class counsel take objectors to task for failing to address their authority from beyond the Sixth Circuit which they claim would allow them to recover a fixed 27.5% of nearly $400 million. Yet, they cite a single, non-binding opinion from within the Sixth Circuit.

Remarkably, they fail to even mention Objector Hull and Ray's discussion of *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996), in which the Sixth Circuit upheld a 10% fee award where "the economies of scale involved in a class action of [that] size suggested that an award of 20% of the fund, *i.e.*, $33 million, would be excessive." *Bowling*, at the very least, suggests the Sixth Circuit approves of the reduced percentage approach.

The one case from within the Sixth Circuit which class counsel rely on, *Southeastern Milk,* is a true outlier. The class recovered a whopping 70% of total damages. *Southeastern Milk Antitrust Litig.*, 2:07-CV 208, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013). Class counsel represent that *Southeastern Milk* "did not rely on that percentage to approve the requested fees."[8] That is false. The 70% recovery was considered as part of *the very first factor* in determining the fee award. *Id.* at *3 ("All of the relevant factors here support the requested fee. First,

---

[8] Response to Objections to Round 2 Settlements, 2:13-cv-01803-MOB, ECF Doc. 134, at 21.

the result obtained by counsel for the plaintiff class is extraordinary. . . . The total settlement, when combined with the prior settlement, is over 70% of the total damages").

Class counsel also make no effort to discount the empirical data relied upon in Mr. Ray and Hull's objection, which confirms that attorneys' fees in cases like this decrease as the settlement increases. *See e.g.,* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study,* 1 J. Empirical Legal Studies 27, 28 (2004); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: 1993–2008,* 7 J. Empirical Legal Studies 248, 265 (2010) (mean award from settlements above $170 million is 12% and the median is 10.2%); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,* 7 J. Empirical Legal Studies 811, 839 (2010). Whatever approach is followed, class counsels' fees should be far less than the $104 million sought considering the economies of scale.

### IV. Mr. Ray and Hull's Objections Should Not be Discounted on the Basis of Class Counsels' *Ad Hominem* Attacks.

Finally, class counsels' labeling of objectors is an improper attempt to distract this Court from the merits. Class counsels' reference to a frivolous RICO lawsuit filed against Objectors' attorney, which is the subject of a Rule 12b6 motion, is telling. So is their failure to take note of the cases in which Objectors' attorney has been successful in assisting class members in overturning unfair

6

settlements or fee awards.[9] Regardless, prior representation of objecting class members "has no greater bearing on the merits of the objection raised than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010). "Merely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011). Ultimately, it is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when those outcomes are mixed.

## CONCLUSION

Objectors Mark Ray and Sean Hull thus find nothing in class counsels' Omnibus Response diminishing their objection in any respect, and for these and other reasons stated in the Objection, respectfully reiterate their prayer for relief therein with even greater confidence.

---

[9] *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ("The judgment [approving the settlement] is reversed and the case remanded for further proceedings"); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 181-82 (3d Cir. 2013) ("We vacate the District Court's orders approving settlement and the fund allocation plan[;] "[w]e vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement"); *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("we reverse the district court's order approving the settlement and dismissing the case, vacate the judgment and award of attorneys' fees, and remand for further proceedings"); *Litwin v. iRenew Bio Energy Sols., LLC*, 172 Cal. Rptr. 3d 328, 333 (Cal. App. 2d Dist. 2014) (in a case in which Mr. Bandas represented the objector in the lower court, the "the order granting final approval of the settlement must be reversed").

|  |  |
|---|---|
| Dated: March 18, 2017 | Respectfully submitted,<br><br>/s/ *Christopher A. Bandas*<br>Christopher A. Bandas<br>BANDAS LAW FIRM, P.C.<br>500 North Shoreline, Suite 1020<br>Corpus Christi, TX 78401<br>(361) 698–5200 (tel)<br>(361) 698-5222 (fax)<br>*Attorney for Objectors Mark Ray and Sean Hull* |

8

## Certificate of Service

The undersigned certifies that today he filed the foregoing Reply on ECF which will send electronic notification to all attorneys registered for ECF-filing

Dated: March 18, 2017 /s/ *Christopher A. Bandas*
Christopher A. Bandas