REDACTED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: All Parts | : : : : : : : | |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | : : : : : | |

**SUR-REPLY REGARDING PROPOSED PUBLIC DISCLOSURE OF HONDA DEALERS' SENSITIVE COMMERCIAL DATA**

REDACTED

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................................ii

**MOST APPROPRIATE AUTHORITIES**.......................................................................iii

**PRELIMINARY STATEMENT** ...................................................................................... 1

    I.    **OPPOSING PARTIES FAIL TO REBUT THE SHOWING THAT THE TREATMENT THEY SEEK HAS BEEN GRANTED FOR THIS TYPE OF DATA**.................................................................................................................... 1

    II.   **OPPOSING PARTIES FAIL TO REBUT DEALERSHIPS' SHOWING THAT THIRD-PARTIES' SENSITIVE BUSINESS DATA MUST BE REDACTED, PURSUANT TO PREVAILING CASELAW** .............................................................. 4

        A.    **Opposing Parties Do Not Rebut Caselaw Showing Sensitive Commercial Data is Properly Redacted**...................................................................... 4

        B.    **Opposing Parties Do Not Rebut Dealerships' Showing that Sensitive Data of Innocent Third-Parties is Properly Redacted** ...................................................... 7

REDACTED

# MOST APPROPRIATE AUTHORITIES

## Orders

Special Master's Order Regarding the Production of Certain Vehicle Pricing Information, Case No. 2:12-md-02311-MOB-MKM, Doc # 1579 (Filed 12/29/16)

## Cases

*ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, No. 1:10-CV-00362, 2010 WL 5230862 (N.D. Ohio Dec. 16, 2010)

*E.E.O.C. v. Abbott Labs.*, No. 10-C-833, 2012 WL 3842460 (E.D. Wis. Sept. 5, 2012)

*Formax Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-0298, 2013 WL 2452703 (E.D. Wis. June 5, 2013)

*NetJets Ass'n of Shared Aircraft Pilots v. NetJets, Inc.*, No. 2:14-CV-2487, 2016 WL 5349793 (S.D. Ohio Sept. 23, 2016)

*TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV 09-1531-PHX-JAT, 2011 WL 6182346 (D. Ariz. Dec. 13, 2011)

*United States v. Amodeo,* 71 F.3d 1044 (2d Cir. 1995)

*United States v. Nallani*, No. 11-CR-20365, 2016 WL 4138227 (E.D. Mich. Aug. 3, 2016)

REDACTED

# PRELIMINARY STATEMENT

The parties opposing dealerships' requests for standard Highly Confidential treatment of their commercially sensitive business data, despite having filed a 17-page reply brief, fail to rebut dealerships' arguments demonstrating that commercially sensitive pricing, profits and sales data, produced by innocent third parties, who have made clear that their businesses will be damaged if the data becomes public must be redacted in public filings.

Opposing parties fail to rebut the showing that data showing "pricing for a specific vehicle" has been ruled by the Master to be subject to Highly Confidential treatment and sealed filing. Order Regarding Production of Certain Vehicle Pricing Information, Doc # 1579 (Filed 12/29/16).

Nor do they rebut the showing that "[t]he privacy interests of innocent third parties" are an "exception to the presumption of access." *U.S. v. Amodeo,* 71 F.3d 1044, 1050-51 (2d Cir. 1995) (internal citations omitted); *U.S. v. Nallani,* 2016 WL 4138227, at *2 (E.D. Mich. Aug. 3, 2016) ("privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted.").

They also fail to respond to the showing that courts deciding cases after *Shane* continue to rule "confidential business information" must be filed under seal and "information [that] is proprietary and would harm" a party's interests if disclosed must be redacted. *ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.,* 2010 WL 5230862, at *3 (N.D. Ohio 2010); *NetJets Ass'n of Shared Aircraft Pilots v. NetJets, Inc.,* 2016 WL 5349793, at *2 (S.D. Ohio Sept. 23, 2016). Opposing parties also fail to rebut the Waikem declaration's showing [REDACTED]

This Court has never previously unsealed or declined to seal third-parties' information over their objections. Opposing Parties fail to provide any caselaw or facts that justify changing course.

## I.  OPPOSING PARTIES FAIL TO REBUT THE SHOWING THAT THE TREATMENT THEY SEEK HAS BEEN GRANTED FOR THIS TYPE OF DATA

Opposing parties offer no response in their reply to the fact that they agreed, less than 2 months before dealerships made their request, to provide the same type of data from OEMs with confidentiality

1

protections substantially similar to those dealerships seek. This order, entered by the Master, ruled that "transactional data reflecting an OEM's *pricing for a specific vehicle*" be designated Highly Confidential–Experts' Eyes Only, meaning that it could not be shown to the public or any attorney in the case---only the experts could see it. Order Regarding the Production of Certain Vehicle Pricing Information, Doc # 1579 (Filed 12/29/16), at I(F), II(B)(1)-(2) ("Pricing Order"). This ensured that the data would never make it into the public domain and would certainly never be filed publicly. In addition, the Pricing Order required that even information derived from the data be designated 'Highly Confidential –Outside Attorneys' Eyes Only" and, "given the protections set forth for documents bearing that designation in the Protective Orders," *id.* at II(B)(5). The Protective Orders state that "[a]ll documents, materials, or other information containing Confidential Information or Highly Confidential Information that are filed with the Court shall be filed under seal." *See e.g.* 2:12-md-02311-MOB-MKM, Doc No. 200, at ¶7(a). It is incomprehensible how Opposing Parties can argue this order does not require sealing of this pricing data if it is included in a filing, when the order specifically requires compliance with the Protective Orders, *supra*, which require the sealing of any Highly Confidential information used in a filing.

The Opposing parties do not engage with this reasoning or offer a reason why dealerships' data should be treated differently than the OEMs' data subject to this order. Instead, they attempt to shift attention away from this argument, stating that dealerships are seeking the same treatment as that granted to General Motors' *pricing documents*. That is untrue. Dealerships are not seeking the *in camera* filing and copy limitations applied to GM's documents, they are seeking the same treatment as that applied to *all OEMs' data* which shows "pricing for a specific vehicle."

The opposing parties also argue that the order on GM's pricing documents was entered several months before the sealing order. This is irrelevant; dealerships are not relying on the rulings on GM pricing documents. But in any event, the sealing order was already being drafted and, had been for months, at the time the order on GM documents was entered. *See* Ex.1 (correspondence from December 2016 regarding the drafting of the sealing order, which already taken place had been on-going for several months before the GM pricing order was entered). The sealing order was in the works long before the GM order. So of course all parties knew about the sealing order at the time they were agreeing to the GM

document pricing order and knew that the GM pricing order must be in compliance with the sealing order. Surely, the parties did not enter into the GM order to invalidate it shortly thereafter with their own stipulated sealing order. The parties could not have submitted the GM order unless they knew it would be in compliance with the sealing order that they were getting ready to submit and that they had started discussing with the court in September 2016. The parties also did not attempt to change the GM order after the sealing stipulation was entered, which they would have done if they believed its treatment was now out of compliance.

As dealerships explained in their original response, and the Opposing Parties did not dispute, the Master can select documents or data for specific treatment and require that they be redacted if placed in a public filing and the sealing order does not change that. For instance, the Master has already done that for discovery filings, which can be redacted upon filing if they contain confidential information. Case No. 2:12-md-02311-MOB-MKM, Doc # 1720 (Filed 03/27/17). The Master has also done so for OEM data showing "pricing for a specific vehicle"—the same type of data as the Honda dealer DMS data. Pricing Order, Doc # 1579, at I(F), II(B)(1)-(2).

The determination to treat third-parties' information as confidential and to order that it be redacted if used in a public filing makes sense to decide now, when the information is being produced. The alternative, that the Opposing Parties suggest, would require hundreds of non-party dealers to be notified each time a filing containing their data is made, and would require those third-parties to monitor every filing in this case, and to repeatedly litigate motions to seal, each time the data is used in any filing. This will cause errors, some dealerships will not receive proper notice, filings will be overlooked, and commercial data will risk being released, to severe detriment.

Instead, the Master has removed this burden where it would be unworkable: in discovery filings, which happen very frequently, making them very difficult to track and monitor, and with the information of third-party OEMs, who also cannot be expected to monitor every filing in the case and burdened with briefing new motions every time their data is used. This would be an unreasonable burden to impose on third-parties and would be inconsistent with Rule 45, which requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue

burden or expense on a person subject to the subpoena." The information here is a perfect candidate for this treatment. It is third-party data. It includes several, discrete categories of data that have already been revealed. To redact the information contained in that data would not involve sealing entire documents, but, instead, as required by *Shane*, certain narrowly-tailored, discrete redactions. The Master has the information needed to make a decision about redaction here.[1]

Other courts have ordered, at the time of production, that sensitive information be redacted, if used in a court filing. *ArcelorMittal Cleveland v. Jewell Coke,* 2010 WL 5230862, at *3 (N.D. Ohio Dec. 16, 2010); *Boards of Trustees of Ohio Laborers' Fringe Ben. Programs v. A2 Servs.,* 2013 WL 5723069, at *3 (S.D. Ohio Oct. 18, 2013); *Metcalf v. Yale*, 2017 WL 627423, at *7 (D. Conn. Feb. 15, 2017).[2]

### II. OPPOSING PARTIES FAIL TO REBUT DEALERSHIPS' SHOWING THAT THIRD-PARTIES' SENSITIVE BUSINESS DATA MUST BE REDACTED, PURSUANT TO PREVAILING CASELAW

#### A. Opposing Parties Do Not Rebut Caselaw Showing Sensitive Commercial Data is Properly Redacted

In their response to Opposing Parties' original filing, dealerships cited a dozen cases holding that "information [that] is proprietary and would harm" the producing party's "business interests if released" is appropriately redacted, including in the Sixth Circuit, including after *Shane*. *NetJets*, 2016 WL 5349793, at *2 (rejecting argument that *Shane* required unsealing of sensitive business information, stating "Plaintiff's argument asks too much of the authority on which it relies."). As dealerships explained

---

[1] Opposing Parties claim they do not know what information will be produced while also repeatedly listing the information that will be produced. We know from the Waikem letter, attached to Opposing Parties' original filing, and Honda's correspondence what categories of data will be produced and we know how they will look because they will come from the same types of DMSes from which Dealer Plaintiff data was produced several years ago.

[2] Opposing parties appear to claim that these cases are distinguishable because they call for sealing sensitive business information only in discovery. That is not true. *Arcelor* states "if any these documents are to be used to support future *motions*, the Court grants permission for them *to be filed* under seal." *ArcelorMittal*, 2010 WL 5230862, at *4 (emphasis added). The redactions in *Trustees* are also not limited in any way to discovery, nor does that case require new motions to seal every time confidential data is used in a filing. *Boards of Trustees*, 2013 WL 5723069, at *3. As for *Metcalf*, it also states "if any of the parties wish to include documents produced under this Order as part of any future filing submitted to the Court, the documents should be filed under seal." *Metcalf*, 2017 WL 627423, at *7. Opposing Parties also claim these cases had no protective order in place, but the exact issue here is that opposing parties refuse to adhere to the requirements of the Protective Orders in this case and redact information about the data from public filings they make, so the dealers are in the same situation as the parties in those cases.

REDACTED

"documents containing sensitive pricing information, sales figures, sales dollar amounts, profit and loss data" are properly filed under seal. *Formax Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-0298, 2013 WL 2452703, at *1 (E.D. Wis. June 5, 2013) (internal citations omitted). "Courts generally protect materials" containing "'commercial information' to prevent harm to a litigant's standing in the marketplace" by sealing information whose disclosure would hinder its "ability to negotiate effectively favorable terms on which it is willing to condition future sales and/or acquisitions." *Mars, Inc. v. JCM Am. Corp.*, 2007 WL 496816, at *2 (D.N.J. 2007). Dealerships provided caselaw stating that "product-specific pricing" ▮ was appropriately redacted. *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, 2011 WL 6182346, at *6 (D. Ariz. 2011).

    The Opposing parties made no effort to dispute that commercially sensitive business information is properly sealable under this caselaw, which specifically mentions pricing, profits and sales information, whose disclosure could affect the producing party's business and negotiations going forward. They largely ignored and failed to even distinguish these holdings or discuss most of the cases cited.[3] Instead, they repeated their argument that the data must be a trade secret. The prevailing caselaw shows that is not the case, and that courts, including this Court, regularly seal sensitive business information that is not a trade secret. Order on Motion to Seal, Case No. 2:12-cv-00502, Doc. No. 209 (Filed 11/4/2016) (Order of this Court sealing excerpts of depositions attached to motion on discovery objection concerning dealership business practices); Order on Motion to Seal, Case No. 2:12-md-02311, Doc. No. 1574 (12/28/2016) (granting motion of third party to file letter brief and declaration in response to motion to compel under seal that contained sensitive business information).

    Further, as dealerships explained, even if the information had to be a trade secret to be redacted, ▮▮▮▮▮ readily qualify as trade secrets. As the caselaw cited by dealerships and the Opposing Parties states, to show that its information is a trade secret a party must

---

[3] The Opposing Parties again cite a case not within the Sixth Circuit, that is not analogous. Please see page 23 of the Dealership Response to the Original Filing, which the Opposing Parties do not respond to.

5

show that "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic values from its disclosure or use. (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 854 (S.D. Ohio 2000). "[F]inancial information," including "pricing information" and "price files" have been found to be trade secrets. *Id., see also France Telecom S.A. v. Marvell Semiconductor Inc.*, 2014 WL 4965995, at *1 (N.D. Cal. 2014) (pricing terms and pricing data constitute trade secrets). Dealerships further explained the

[REDACTED]

*Avery*, 118 F. Supp. 2d at 854.

Opposing parties do not dispute the above is the criteria for trade secrets. Nor do they dispute that "financial information," including "pricing information" and "price files" are trade secrets or that protecting information with passwords, limited distribution and limited access meets the criteria for reasonable efforts to maintain secrecy. Nor can they argue with the Waikem Declaration, which explains:

[REDACTED]

The Opposing Parties do not offer any response to the statements or state any of them are inaccurate. The only thing they do, because they have no substantive response to the declaration is request that it be struck, claiming that it is not permitted. The Master never stated that the filing parties were not allowed to attach declarations. Indeed, Opposing Parties themselves submitted a declaration. The Master would not have ordered such one-sided treatment, that exclusively disadvantaged third parties, who had

6

not had a chance to make any filings in their defense. Such an order would also be a significant change of course from how objecting third parties have been treated in this case. The OEMs were permitted to submit numerous declarations in support of and in addition to their objections.[4] The dealerships have a right to make a complete filing in support of their objections, just like all other third parties. The dealerships were not advised in the Honda Order or letter that they would be deprived of the right to put in any declaration with their filing. They were not given a hearing, on the record, with sufficient notice to debate the issue. Thus, to take this right away now would be a violation of due process rights. Opposing Parties had the opportunity to respond to the declaration in their reply, and were in no way prejudiced. Further, opposing parties' filing contains no motion to strike or proposed order, nor did they make any attempt to meet and confer with Dealership counsel as is required by LR 7.1 for any motion.

Opposing parties also claim the Waikem declaration addresses information other than data at issue. Not true.  Opposing Parties also claim the Waikem declaration and the brief are limited to Waikem. That is also incorrect. Waikem's declaration is representative of the situation of all Honda dealerships and As for other objecting dealers who sought the same treatment, they are mentioned in the very first footnote in the brief, and the treatment is requested for them as well.

### B. Opposing Parties Do Not Rebut Dealerships' Showing that Sensitive Data of Innocent Third-Parties is Properly Redacted

Opposing Parties do not contest that disclosure of data showing would jeopardize a business.

---

[4] *Decl. Of Scott Abeles In Support Of Subpoenaed Entities' Oppositions To Motions To Compel*, 2:12-md-02311 Doc No. 1227-1 (Filed 02/19/16); *Decl. Of Michael McDonald*, Doc No. 1227-20 (Filed 02/19/16); *Decl. of Kelly Lynch, Purchasing Director at FCA*, Attachment No. 1 to *Sealed Ex.*, Doc No. 1229 (Filed 02/19/16); *Decl. Of Donald House, Sr.*, Doc No. 1223-1 (Filed 02/19/16).

They instead appear to say that none of that should not be taken into account because the data does not contain the name of each dealership. But the disclosure of each dealership's name is not the action damaging dealerships— ████████████████████████████████████████████ That is why Turner Honda stated: "[d]amage to the universe of North American Honda dealers is likely regardless of whether or not the data of one or more objecting dealers is withheld from public disclosure. Therefore, my objection applies to the totality of the disclosure by Honda ..." Ex.2. That is also why Waikem's declaration explains ███████ ████████████████ Further, the data ████████████████████████████████████████████████████████████████ Purcell Stmt, Ex. 1 to Original Response. Also contrary to Opposing Parties' misstatements ████████████████████████████████████████████████

Nor do the Opposing Parties cite any caselaw stating that sensitive commercial data of third parties concerning pricing and profits may be made public if the business' name is removed or that

---

[5] Contrary to the Opposing Parties' assertion, there was no ruling on relevance of the data. Instead, the Master simply ████████████████████████████████████████. Page 3 of Ex. A to Order Regarding Honda Discovery, 2:12-md-02311-MOB-MKM, Doc No. 1607 (Filed 01/19/17).

businesses lose all privacy protections if the data does not contain their names. That is not the law. What makes commercially sensitive data subject to confidential treatment is not the existence of names but that it divulges the heart of business' functions. When the issue has come up in analogous contexts, courts have ruled removal of a name and anonymity do not deprive a third party of privacy rights. In *Turk*, the court stated third parties' private information could not be produced just because their names were redacted. *Turk v. Oiler*, 732 F. Supp. 2d 758, 774 (N.D. Ohio 2010).

The Opposing Parties also claim some of this data may be public. The assertion is made with no citation to any evidence, save for one instance, where opposing parties cite to a post on Edmunds.com, which includes mostly general chatter, like any message board, and cannot be counted on for accuracy, or objective reporting of pricing data. It only contains prices for a small number of consumers, for one model. It does not contain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Abraham & Rose, v. U.S.*, 36 F. Supp. 2d 955, 957 (E.D. Mich. 1998) ("the issue ... is whether the compilation of otherwise hard-to-obtain information alters the privacy interest implicated by disclosure of that information. Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives ... and a computerized summary located in a single clearinghouse of information."). There is no allegation such a compilation exists in the public domain.

The claim that each consumer knows what they paid goes nowhere, as Opposing Parties are not subpoenaing every consumer. Nor does every consumer share with the whole world what he paid for his vehicle. Sharing some information with one other person does not strip it of privacy protections and opposing parties provide no caselaw to support such a proposition. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dec. 9 Hr'g Trans, 83:19-20, 23-24, Ex.3. ▮▮▮▮▮▮▮▮▮▮▮▮ nor the fact that one consumer knows information about one transaction, nor

providing portions of the information to a government agency[6] is *public* disclosure. If the information is public, opposing parties have pleaded themselves out of the right to subpoena it. A third-party cannot be burdened with production of information available in the public domain. *U.S. v. Kernell*, 2010 WL 1010011, at *4 (E.D. Tenn. 2010). The caselaw also states that the fact that some information may be public does not cause the owner to lose all privacy rights in it. *Abraham*, 36 F. Supp. 2d at 956.[7]

Finally, opposing parties argue redacting information of third-parties who sold vehicles to individuals who are not plaintiffs in this case, frequently in non-indirect purchaser states, ▮▮▮ ▮▮▮, that has never before been pertinent to any of the settlements in this case, will somehow impinge on settlement approval. They refer to the EPP final approval hearing. But, as they admit, the *Shane*-related objection was denied. The Court determined that, although there is sealed information on the docket, a sufficient amount is public. There are filings on the docket that remain redacted or sealed, based on business concerns, investigatory concerns and privacy concerns, among others. The information that has been unsealed is that which has been agreed-upon by the parties. There remains sealed information that parties and non-parties have not agreed to unseal and the Court has not forced any filer to unseal such information as a result of the objection. The Court's decision makes clear that every last filing does not have to be unsealed in order to grant settlement approval. In any event, it would be unfair to trade away the security of hundreds of dealerships' businesses for more expedient settlement approval.

Dated: May 1, 2017                      Respectfully submitted,


                                        /s/ Jonathan W. Cuneo
                                        Jonathan W. Cuneo

---

[6] Disclosure to government agency did not remove trade secret status and court ruled it was not dispositive. *Compuware v. Serena Software Int'l, Inc.*, 77 F. Supp. 2d 816, 822 (E.D. Mich. 1999).
[7] Opposing Parties also argue that it does not matter if the data is publicly released because someone wanting to see it needs to enter PACER. If that were truly a consideration, then none of the information required to be filed under seal would be sealed. The issue is that once information is public on the docket, there is a risk of disclosure to any member of the public. It can be viewed at the courthouse or online. An online search can bring up filings. Filings can also be pulled by someone with Pacer access and re-posted in a variety of public places. Media and websites possess access to court records. They can take information from filings and place it in articles that can be found through a Google search.

Joel Davidow
Daniel Cohen
Victoria Romanenko
Evelyn Li
Blaine Finely
**Cuneo Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Ste. 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com
bfinley@cuneolaw.com

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON · KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for Dealership Plaintiffs*

Gerard V. Mantese
(Michigan Bar No. P34424)
**Mantese Honigman
  and Williamson, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 607-9200
gmantese@manteselaw.com

*Interim Liaison Counsel for Dealership Plaintiffs*

11

REDACTED

        Brian Herrington
        **Herrington Law, PA**
        PO Box 3260
        Ridgeland, MS 39158
        601.376.9331
        brian@herringtonlawpa.com

*Counsel for Dealership Plaintiffs*

## CERTIFICATE OF SERVICE

  I hereby certify that on May 1, 2017, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

            /s/ Jonathan W. Cuneo
            Jonathan W. Cuneo
            Joel Davidow
            Daniel Cohen
            Victoria Romanenko
            Evelyn Li
            **Cuneo Gilbert & LaDuca, LLP**
            507 C Street, N.E.
            Washington, DC 20002
            Telephone: (202) 789-3960
            jonc@cuneolaw.com
            joel@cuneolaw.com
            danielc@cuneolaw.com
            vicky@cuneolaw.com
            evelyn@cuneolaw.com