UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

— — —

| | | |
|---|---|---|
| IN RE:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | ) ) ) ) | Master File No. 12-2311 Hon. Marianne O. Battani |
| IN RE: Wire Harness | ) | No. 12-00103 |
| IN RE: Instrument Panel Clusters | ) | No. 12-00203 |
| IN RE: Fuel Senders | ) | No. 12-00303 |
| IN RE: Heater Control Panels | ) | No. 12-00403 |
| IN RE: Bearings | ) | No. 12-00503 |
| IN RE: Alternators | ) | No. 13-00703 |
| IN RE: Anti-Vibrational Rubber Parts | ) ) | No. 13-00803 |
| IN RE: Windshield Wiper Systems | ) | No. 13-00903 |
| IN RE: Radiators | ) | No. 13-01003 |
| IN RE: Starters | ) | No. 13-01103 |
| IN RE: Ignition Coils | ) | No. 13-01403 |
| IN RE: Motor Generator | ) | No. 13-01503 |
| IN RE: HID Ballasts | ) | No. 13-01703 |
| IN RE: Inverters | ) | No. 13-01803 |
| IN RE: Electronic Powered Steering Assemblies | ) ) | No. 13-01903 |
| IN RE: Fan Motors | ) | No. 13-02103 |
| IN RE: Fuel Injection Systems | ) | No. 13-02203 |
| IN RE: Power Window Motors | ) | No. 13-02303 |
| IN RE:  Automatic Transmission Fluid Warmers | ) ) | No. 13-02403 |
| IN RE: Valve Timing Control Devices | ) ) | No. 13-02503 |
| IN RE: Electronic Throttle Bodies | ) | No. 13-02603 |
| IN RE: Air Conditioning Systems | ) | No. 13-02703 |
| IN RE: Windshield Washer Systems | ) | No. 13-02803 |
| IN RE: Spark Plugs | ) | No. 15-03003 |
| IN RE: Automotive Hoses | ) | No. 15-03203 |
| IN RE: Ceramic Substrates | ) | No. 16-03803 |
| IN RE: Power Window Switches | ) ) ) | No. 16-03903 |
| THIS RELATES TO: End Payor Actions | ) ) ) | |

MOTION TO STRIKE OBJECTIONS AND
FINAL APPROVAL OF ROUND 2 SETTLEMENTS

```
 1                    MOTION TO STRIKE OBJECTIONS AND
 2              FINAL APPROVAL OF ROUND 2 SETTLEMENTS

 3              BEFORE THE HONORABLE MARIANNE O. BATTANI
                     United States District Judge
 4             Theodore Levin United States Courthouse
                     231 West Lafayette Boulevard
 5                       Detroit, Michigan
                     Wednesday, April 19, 2017
 6

 7    APPEARANCES:

 8    For the Plaintiffs:

 9    MARC M. SELTZER
      SUSMAN GODFREY, L.L.P
10    190 Avenue of the Stars, Suite 950
      Los Angeles, CA  90067
11    (310) 789-3102

12
      HOLLIS L. SALZMAN
13    ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
      601 Lexington Avenue, Suite 3400
14    New York, NY  10022
      (212) 980-7405
15

16    STEVEN N. WILLIAMS
      COTCHETT, PITRE & McCARTHY, L.L.P.
17    840 Malcolm Road
      Burlingame, CA  94010
18    (650) 697-6000

19

20

21

22

23

24
             To obtain a copy of this official transcript, contact:
25               Robert L. Smith, Official Court Reporter
                 (313) 964-3303 • rob_smith@mied.uscourts.gov
```

1    APPEARANCES:   (Continued)

2    **For the Defendants:**

3    MICHAEL F. TUBACH
     **O'MELVENY & MYERS, L.L.P.**
4    Two Embarcadero Center, 28th Floor
     San Francisco, CA  94111
5    (415) 984-8700

6

7    STEVEN F. CHERRY
     **WILMER HALE**
8    1875 Pennsylvania Avenue NW
     Washington, D.C.  20006
     (202) 663-6321

9

10   DONALD M. BARNES
     **PORTER, WRIGHT, MORRIS & ARTHUR, L.L.P.**
11   1919 Pennsylvania Avenue, NW, Suite 500
     Washington, D.C.  20006
12   (202) 778-.3056

13

14   HOWARD B. IWREY
     **DYKEMA GOSSETT, P.L.L.C.**
15   39577 Woodward Avenue, Suite 300
     Bloomfield Hills, MI  48304
16   (248) 203-0526

17   CHARLES SKLARSKY
     **JENNER & BLOCK**
18   353 N. Clark Street
     Chicago, IL 60654-3456
19   (312) 923-2904

20

21   DANIEL T. FENSKE
     **JENNER & BLOCK**
22   353 N. Clark Street
     Chicago, IL 60654-3456
     (312) 222-9350

23

24

25

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

**4**

1    <u>APPEARANCES:    (Continued)</u>

2    **For the Defendants**

3    KENNETH R. DAVIS, II
     **LANE POWELL, P.C.**
4    601 SW Second Avenue, Suite 2100
     Portland, OR   97204
5    (503) 778-2100

6

7    J. CLAYTON EVERETT, JR.
     **MORGAN, LEWIS & BOCKIUS, L.L.P.**
     1111 Pennsylvania Avenue NW
8    Washington, D.C.   20004
     (202) 739-5860

9

10   CARL LAWRENCE MALM
     **CLEARY, GOTTLIEB, STEEN & HAMILTON, L.L.P.**
11   2000 Pennsylvania Avenue NW
     Washington, D.C.   20006
12   (202) 974-1500

13

14   BRADLEY JUSTUS
     **CLEARY, GOTTLIEB, STEEN & HAMILTON, L.L.P.**
     2000 Pennsylvania Avenue NW
15   Washington, D.C.   20006
     (202) 974-1500

16

17

18

19

20

21

22

23

24

25

1

## TABLE OF CONTENTS

2

3
Page

MOTION TO STRIKE OBJECTIONS........................ 5

4

APPROVAL OF ROUND 2 SETTLEMENTS....................25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Detroit, Michigan

 2   Wednesday, April 19, 2017

 3   at about 2:14 p.m.

 4                        _   _   _

 5           (Court and Counsel present.)

 6           THE LAW CLERK:  Please rise.

 7           The United States District Court for the Eastern

 8   District of Michigan is now in session, the Honorable

 9   Marianne O. Battani presiding.

10           You may be seated.

11           THE COURT:  Good afternoon.

12           THE ATTORNEYS:  (Collectively) Good afternoon.

13           THE COURT:  All right.  Let's start with

14   appearances.  Plaintiffs.

15           MR. SELTZER:  Your Honor, Mark Seltzer of

16   Susman Godfrey on behalf of the end payor plaintiffs.

17           MS. SALZMAN:  Hollis Salzman, Robins Kaplan, on

18   behalf of the end payor plaintiffs.

19           MR. WILLIAMS:  Good afternoon, Your Honor.

20   Steve Williams, Cotchett, Pitre & McCarthy, for the

21   end payors.

22           MR. TUBACH:  Good afternoon, Your Honor.

23   Michael Tubach on behalf of the Leoni defendants.

24           MR. CHERRY:  Good afternoon, Your Honor.

25   Steve Cherry of Wilmer Hale for the Denso defendants.
```

```
 1              MR. BARNES:  Good afternoon, Your Honor.
 2    Don Barnes on behalf of the GS Electech defendants.
 3              MR. IWREY:  Good afternoon.  Howard Iwrey on behalf
 4    of the Valeo defendants.
 5              MR. SKLARSKY:  Good afternoon, Your Honor.
 6    Charles Sklarsky and Dan Fenske on behalf Mitsubishi
 7    defendants.
 8              MR. DAVIS:  Ken Davis, Lane Powell, on behalf of
 9    the Furukawa defendants.
10              MR. EVERETT:  Clay Everett on behalf of Sumitomo.
11              MR. MALM:  Carl Lawrence Malm on behalf of the NSK
12    defendants.
13              MR. JUSTUS:  Bradley Justus on behalf of the Aisin
14    defendants.
15              THE COURT:  Anybody else we missed?  Okay.
16              I have a motion by end payor plaintiffs', a motion
17    to strike untimely objections.  Do you want to do that or do
18    you want to do the settlement?  Let me ask you, Counsel.
19              MR. SELTZER:  Your Honor, if I may, this is
20    Mark Seltzer on behalf of end payor plaintiffs.
21              We could take up the motions first or in the course
22    of discussion of the objections, whichever Your Honor would
23    like us to do?  There are three motions actually.
24              THE COURT:  Let's do the motions and then we will
25    do the objections.
```

1      MR. SELTZER:  Very well, Your Honor.

2      THE COURT:  I think that would work out better.

3      MR. SELTZER:  The first motion, Your Honor, is one

4  by the end payor plaintiffs to strike as untimely the

5  objections that were submitted by an attorney

6  Christopher Bandas on behalf of objectors Ray and Hull.  What

7  happened is that there was an objection that was timely

8  received --

9      THE COURT:  That was filed in the 2311?

10      MR. SELTZER:  In the master docket file, which we

11  believe is a nullity because that's not actually a case, it

12  is an administrative tool that the Court uses with respect to

13  an umbrella device for the overall cases but each case is an

14  individual separate case.

15      Then weeks after the Court's deadline for

16  submitting objections, which was March 16th, the Court

17  ordered that objections must be received by the Court and by

18  the claims administrator Garden City by that date.  On

19  April 4th evidently additional copies of the same objections

20  were submitted to the clerk and then filed in 27 individual

21  case files.  Those are untimely objections and they should be

22  stricken, and we have cited the authority for that

23  proposition most recently, for example, in the Lithium Ion

24  Batteries antitrust litigation the Court struck as untimely

25  objections, and there are other cases that we cite for that

1    proposition.  We think it is important that the Court do

2    that.  And there has been no justification, excuse or reason

3    given why the late filing occurred.

4         And Bandas is an attorney who is very well

5    experienced in submitting objections in class action cases,

6    which is one of the things I want to talk about.  He has a

7    long, notorious history of objecting to class actions, and he

8    also has a history of failing to abide by court orders in

9    cases.  So we think it is highly appropriate that the Court

10   strike those late submitted objections.  So that's the first

11   motion.

12        THE COURT:  Okay.  Is he here or anybody here to --

13        (No response.)

14        THE COURT:  No.  Okay.

15   MR. SELTZER:  He's not here, and there has been no

16   response to the motion.

17        THE COURT:  I am rather loath to strike this.  It

18   just goes against my sense of justice because it was filed

19   timely, the objections were filed timely, but they were filed

20   inappropriately.  And I read about this gentleman and his

21   record for not listening to court orders, but he did file it.

22        MR. SELTZER:  Let me see if I can persuade Your

23   Honor to the contrary.  First of all --

24        THE COURT:  I would like to be persuaded because I

25   would like not to deal with these but I just don't see it.

```
 1           MR. SELTZER:  Your Honor, you don't have to deal
 2   with it because he failed to comply with Your Honor's order.
 3   Here is what this --
 4           THE COURT:  He filed timely in the 2311.
 5           MR. SELTZER:  But that's a nullity, Your Honor.
 6   And, in fact, what happened when there were appeals taken
 7   from that case docket, the master file docket, the
 8   Sixth Circuit ruled that the appeal must be dismissed because
 9   it was not from a case, so that filing would not give him
10   appellate rights with respect to the settlements at issue
11   here.  That's very important because that's the only filing
12   he made that was timely.
13           These subsequent filings, if they are given the
14   time of day, he would argue gives him appellate rights with
15   respect to the settlements that are at issue before Your
16   Honor today.  He is an abuser of the system.  He takes
17   appeals for the purpose of trying to be bought off to go
18   away, that's his record.
19           THE COURT:  When he appealed -- he was one who
20   appealed in the Court of Appeals?
21           MR. SELTZER:  No, he was not.  There were other
22   appellants that appealed in the Court of Appeals, one was
23   represented by Marla Lindermann, that appeal was dismissed.
24   Then there was an appeal that was taken by Mr. Cochran on
25   behalf of the Yorks, and that appeal from the master docket
```

1  was dismissed by the Sixth Circuit as being without

2  jurisdiction.  So the only appeal that's left standing is the

3  one that he took from two of the individual case files, not

4  from the master docket.  So the Bandas appeal if you were to

5  take one from the master docket we would move to dismiss it

6  on the grounds that it's not from a case pending before Your

7  Honor, it is not a case, it is simply an administrative tool.

8         The late-filed objections, if he were to take

9  appeals from those, then he would argue he does have standing

10  to appeal from, but the Court should, I submit, strike those

11  objections so as not to give him those appellate rights.  We

12  would argue that he doesn't have them anyway, he's untimely,

13  and that the objections should be in the alternative

14  overruled as untimely and therefore not in compliance with

15  the Court's order but that in turn would give him arguably,

16  and we would fight against it, a basis to appeal from a

17  decision that rejected his objections on the grounds they are

18  untimely.

19         So the best course of action is to strike these

20  late-filed objections.  He knows how to file an objection,

21  this is a lawyer with a long track record of filing

22  objections and --

23         THE COURT:  But many other lawyers have filed in

24  the 2311.

25         MR. SELTZER:  That's correct.

2:12-md-02311-MOB-MKM   Doc # 1748   Filed 05/03/17   Pg 12 of 59   Pg ID 32429
Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

12

```
 1        THE COURT:  We have had a lot of orders to be filed
 2   in --
 3        MR. SELTZER:  And as to those we reserve our
 4   rights, but as particularly to Mr. Bandas he's the only one
 5   who filed subsequent identical objections in individual case
 6   files, that's the difference between him and the others.  So,
 7   Your Honor, again, I respectfully submit that here is
 8   somebody who did not follow the Court's orders, knew how to
 9   follow a court order, and whose late-filed objection should
10   be stricken so as not to give him a leg up on an argument
11   that he has appellate rights, that's the point, Your Honor.
12        THE COURT:  Okay.  So he filed objections timely in
13   the 2311, that was on what date?
14        MR. SELTZER:  It was before the 16th, I think it
15   was like the 14th or so.  I could look it up, Your Honor.  It
16   was maybe the 15th.  That was in the 2311 docket.
17        THE COURT:  Right.  And you saw that because you
18   filed a response to strike?
19        MR. SELTZER:  We did, we did.
20        THE COURT:  So there was no question that you
21   didn't see them?
22        MR. SELTZER:  No, we saw them and we saw the new
23   ones when they were also filed.  The new ones, by the way,
24   are simply word for word the same as the other objections,
25   they are just filed in the individual case dockets.
```

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

```
 1              THE COURT:  And when were those filed?

 2              MR. SELTZER:  April 4th.

 3              THE COURT:  And was there any discussion with him

 4     between the date -- what did you say, March 14th?

 5              MR. SELTZER:  March 16th was the original deadline,

 6     and there has been no discussions with him at all.

 7              THE COURT:  And then he refiled -- or he filed --

 8              MR. SELTZER:  Then he must have submitted

 9     additional copies to the clerk, and then they were filed in

10     27 individual case dockets, the same document.

11              THE COURT:  Okay.

12              MR. SELTZER:  By the way, the original filing was

13     on the last day for objections, which was March 16th.

14              THE COURT:  Yeah, I think that was stated in the

15     papers.  Okay.  If he's -- I'm trying to think of ways of

16     handling this.  Could the individual cases he filed, if I

17     wanted to accept them, be filed nunc pro tunc and then if he

18     appealed them he would have to appeal each of the individual

19     cases?

20              MR. SELTZER:  That's correct, Your Honor.  But I

21     don't know why it would serve the interest of justice to give

22     him those arguable appellate rights.  If -- Your Honor, may I

23     quote from what some other judges have said about this man?

24     Just a moment, Your Honor.

25              THE COURT:  I've read what you have in your
```

1  pleadings -- in your papers.

2          MR. SELTZER:  These are statements made by other

3  courts about his conduct in litigation as an objector.  One

4  federal judge said, this is in the Hydroxycut case, that his

5  objections were filed for the improper purpose of obtaining a

6  cash settlement in exchange for withdrawing the objections.

7          Another federal judge, and this is in the

8  General Electric Security case, said that he is a known

9  vexatious appellant who has been repeatedly admonished for

10 putting frivolous appeals to objections to class act

11 settlements.

12         Another federal judge, and this is in the Cathode

13 Ray Tube case, said he routinely represents objectors

14 purporting to challenge class action settlements, and does

15 not do so to effectuate changes to settlements but does so

16 for his own personal financial gain and has been excoriated

17 by courts for this conduct.

18         Just a couple of months ago in New York, Federal

19 Judge Caproni in the Southern District of New York said as

20 follows, and this is after holding a hearing in response to a

21 motion for sanctions against him and Hull, who is one of the

22 named objectors that he represents in this case.  This is

23 what Judge Caproni said:  This court joins the other courts

24 throughout the country in finding that Bandas has

25 orchestrated the filing of a frivolous objection in the

1    attempt to throw a monkey wrench into the settlement process
2    and to extort a payoff.  His plan was thwarted when the court
3    permitted discovery to proceed on the sanctions motions which
4    ultimately apparently created more risk for Bandas than he
5    was prepared to endure.
6         Bandas' client testified that in Bandas' numerous
7    representations of him in objections to class action
8    settlement, Bandas' clients have never received funds from
9    the settlement of any of his objections whereas Bandas has.
10   That's the deposition -- from the deposition of Shawn Hull,
11   who is one of the named objectors that he represents in this
12   case.
13        Judge Caproni went on to say:  That testimony, if
14   true, is gravely concerning.  It indicates that Bandas'
15   settlement of objections have been without any benefit to his
16   client, or to the class, supporting the conclusion that many,
17   if not most, of the objections being raised by Bandas are not
18   being pursued in good faith.
19        And these are just a sample, Your Honor, of
20   findings that courts have made across the country regarding
21   the misconduct of this man.  So I respectfully submit, Your
22   Honor, the last thing in the world that the Court should
23   consider doing is giving him a leg up on being able to take
24   an appeal from the Court's approval of these settlements
25   should we succeed in persuading Your Honor to approve the

2:12-md-02311-MOB-MKM   Doc # 1748   Filed 05/03/17   Pg 16 of 59   Pg ID 32433
Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

16

1    settlements before you and thereby delay the finality of the

2    litigation as to the plaintiffs and to the settling

3    defendants, interfere with the legitimate progress of this

4    case, all for some unsavory purpose to give his ability to

5    argue that he's entitled to proceed with the appeal to give

6    him leverage to try to exact a tax from the parties for

7    giving up his appellate rights.  That's who you are dealing

8    with, Your Honor.

9         So I submit, Your Honor, it would be in the best

10   interest of justice to strike the objections, the late-filed

11   objections, as being untimely so that we at least have that

12   argument if he tries to take an appeal that the appeal should

13   be dismissed for lack of jurisdiction or for non-compliance

14   with the Court's orders, and the Court most assuredly I think

15   would not be doing the litigation fair justice to treat these

16   objections as if they had been filed nunc pro tunc as of the

17   deadline the Court set, that would worsen the situation.

18        So I submit, Your Honor, the best course of action

19   is to strike these objections and we will then be confronted

20   with what happens when he tries to take an appeal from the

21   Court's orders in this case.

22        With respect to the master file case, we will argue

23   to the Sixth Circuit if he takes an appeal the appeal should

24   be dismissed for lack of jurisdiction.  If the Sixth Circuit

25   follows its prior ruling in this case that appeal would be

1    dismissed.

2         With respect to the subsequent appeals, if he takes

3    them from the individual case files we will argue they should

4    be dismissed as well because the objections are untimely and

5    the Court has so found and stricken the objections on that

6    basis.

7         That is what I respectfully submit and request the

8    Court should do in this instance.

9         THE COURT:  Defendants have anything to say?

10        MR. TUBACH:  Good afternoon, Your Honor.

11   Michael Tubach on behalf of the Leoni defendants only.

12        We do not in any way want to undercut at all what

13   counsel just said about the motion to strike.  Our only

14   request is in trying to get as much finality as possible as

15   soon as possible, and so we would ask that the Court in the

16   alternative address the substantive objections that

17   Mr. Bandas has made.  In the event that the Sixth Circuit

18   does not come to the same conclusion that it did with respect

19   to the prior appeals, we would hate to have the whole case

20   sent back just for the purpose of evaluating objections that

21   the Court can very well evaluate now.

22        THE COURT:  Okay.

23        MR. SELTZER:  And, Your Honor, I'm prepared to

24   address the objections on the merits, and we will do that so

25   that there is a record in the alternative in that event, but

1    I would point out that Mr. Bandas has not even requested

2    relief from the Court's March 16th deadline, he's not made a

3    motion saying please allow me to file these objections on an

4    untimely basis, he's not sought an order from the Court

5    allowing them to be filed nunc pro tunc.

6          THE COURT:  Well, why would he if he doesn't think

7    they are untimely?  I mean, that doesn't make any sense.  And

8    he objected -- he objected on time in the 2311.  I'm sorry, I

9    just don't see how I cannot recognize that, and the Court is

10    going to allow the objections, so let's go ahead with the

11    argument.

12          MR. SELTZER:  But, Your Honor, with respect to the

13    objection that was filed on the 2011 case, that was filed

14    timely just in the wrong file -- the wrong case docket.

15          THE COURT:  Right.

16          MR. SELTZER:  We don't know what he's thinking

17    about why he submitted these subsequent filings.  He just

18    likes to throw monkey wrenches in litigation.

19          THE COURT:  The subsequent filings the Court will

20    deem to be untimely, I have no problem with that, the

21    subsequent filings are untimely, but the 2311 -- the one in

22    the 2311 is timely.  Okay.

23          MR. SELTZER:  All right.  Very well.  With respect

24    to -- there are two other motions that were filed to bring

25    up.  One was filed by Bandas himself on behalf of Mark Ray

```
 1   and Shawn Hull, the two objectors, asking leave to file a
 2   late brief in reply -- in opposition to what we submitted to
 3   the Court.  And in this filing -- let me see if I have the
 4   motion paper itself.  At any rate, what he does is he
 5   basically repeats what he said previously and then also
 6   responds to the information we provided to the Court
 7   regarding his unsavory track record in other cases, many
 8   other cases, scores of other cases, and there is no basis for
 9   a reply under the Court's order.
10           THE COURT:  What is that docket number?
11           MR. SELTZER:  The docket number is 1717, Your
12   Honor, and he served it or filed it very late last night.  He
13   first sent an e-mail --
14           THE COURT:  In the 2311, in 2311?
15           MR. SELTZER:  I have no idea which --
16           THE COURT:  I don't have that.
17           MR. SELTZER:  I think it was in 2311, Your Honor.
18           THE COURT:  Okay.  Go ahead.  I'm going to allow
19   you to argue.  Go ahead.
20           MR. SELTZER:  At any rate, he sent an e-mail at
21   about 11:40 last night to yours truly saying he wants to file
22   this objection, he just learned that, according to him, there
23   was an omnibus response that we submitted to all of the
24   objections and he wanted to submit a reply to the omnibus
25   response, and then within a matter of one, two, three minutes
```

1    after that he then filed this motion for leave to file this

2    reply.

3         We oppose the motion, Your Honor.  There is no

4    justification shown for it.  He's got a duty to monitor the

5    docket in this case if he is going to be an objector as a

6    lawyer, and there is no reason why this late reply should be

7    allowed, and we would object to it being filed.

8         THE COURT:  Okay.  Tell me again -- I'm sorry, but

9    I did not read this, I didn't even know it was filed.  Of

10   course, it is in the 2311 file so maybe it should not be

11   considered.

12        MR. SELTZER:  I don't think it should be, Your

13   Honor.  In any event, what's before you is a motion for leave

14   to file the reply brief, and we would oppose the motion.

15        THE COURT:  And the reply brief is to the

16   objections?

17        MR. SELTZER:  Yes, to the objections.

18        THE COURT:  Who filed those objections?

19        MR. SELTZER:  Christopher Bandas, the same lawyer.

20        THE COURT:  Christopher Bandas, yes.  All right.

21   The Court is not going to allow that.

22        MR. SELTZER:  All right.  Then there's a third

23   motion that was filed, and this is by Sandra Singer, who is

24   an objector.

25        THE COURT:  I want you to know I just received, so

2:12-md-02311-MOB-MKM   Doc # 1748   Filed 05/03/17   Pg 21 of 59   Pg ID 32438
Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

21

```
 1   I do have this, although I see it was filed -- it wasn't
 2   filed, it must have been faxed this morning, and we don't --
 3   we can't take faxed motions, but today is the hearing so I
 4   would like to hear your comments on this.
 5          MR. SELTZER:  It is a very short, quote, emergency
 6   motion she filed to allow her an additional two weeks to
 7   reply to our omnibus response to the objections that were
 8   submitted by all of the objectors.  Your Honor, there's no
 9   reason why there should be a further delay in these
10   proceedings based on that request.
11          Let me just say this about Sandra Singer:  Her
12   principal objection, and this is all part of the record in
13   the Court, is that she was uncertain whether or not she had
14   to spend money to get proof from the state motor vehicle
15   bureau of purchase of a vehicle in order to make out a claim
16   as a claimant in this case.  She was -- the class notice
17   states that you should provide or must provide documentation
18   if you have it to submit a claim, and the idea is to prevent
19   claims that are fraudulent from being submitted, that's the
20   reason why you request documentation.
21          However, a claimant who doesn't have documentation
22   is told by the claims administrator you make your claim
23   anyway, we will go through a verification process later on in
24   the administration process and determine whether additional
25   documents are necessary.  No class member is being told that
```

1    they should go out and spend money to the motor vehicle

2    bureau to get proof of purchase in order to make out a claim.

3    And, in fact, in her case we examined the claim that she

4    submitted, so did the claims administrator, and have advised

5    her we would recommend her claim to be allowed, so there is

6    no reason for her to further object to the settlement, that's

7    the principal basis on which she was objecting.

8         I might tell you that the claims administrator

9    advises us that the majority of the claims that have been

10   filed have been filed without documentation, so people have

11   been filing claims and then there will be follow-up to see

12   whether or not there is any need to get further information

13   from them to verify the validity of their claims.

14        I mean, for example, and this is typical in a class

15   action case, as part of the claims administration process if

16   something looks out of order on a claim, an individual says

17   they bought 100 vehicles, that's going to excite further

18   inquiry to see whether or not that is true or not, whether or

19   not the person has the backup for that because that's out of

20   the ordinary for that to happen.

21        In the usual case if somebody supplies the

22   information, which is the make and model of the vehicle in

23   question with the VIN number, the date of purchase, where

24   they bought it, that's probably going to suffice if there is

25   nothing that appears out of the ordinary with respect to the

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

**23**

1   claim.  So what she was told is consistent with how the

2   claims process would be handled going forward, but the

3   process is ongoing right now and hasn't reached the stage of

4   determining whether additional documentation or any

5   documentation is required to have a claim be recommended for

6   allowance by the Court, and the Court is the ultimate

7   arbitrator of whether or not a claim is allowed or not,

8   that's the end result of the process we go through with the

9   claims administrator.

10          But as far as Sandra Singer is concerned, we have

11  told her it looks in order and that she need not be concerned

12  about spending money.  Her argument was well, I have to know

13  how much I'm going to get as a class member to decide whether

14  or not it is worth spending money to get something from the

15  motor vehicle bureau, and that means that it is unclear to me

16  whether the settlement is fair or not fair.  Of course,

17  that's a situation that is unique to her, no one else has

18  raised this question, it really doesn't go to the fairness

19  and adequacy of the settlements but that's her objection,

20  that's what she was talking about.

21          So with respect to her there is really no reason

22  why there should be any further briefing required from

23  Sandra Singer.  We've communicated with her, my co-counsel

24  Steve Williams has advised her in writing by e-mail that we

25  are recommending that the claim be allowed.  She hasn't

 1    responded.  So that's the situation as far as she is

 2    concerned.

 3          So I would submit, Your Honor, this motion by fax

 4    that came in early this morning that we received also early

 5    this morning for a two-week extension to reply to the omnibus

 6    objections, there's no basis for it and it should be denied.

 7          THE COURT:  I agree with you.  I just wonder in

 8    reading this does she have some connection as being an

 9    objector herself or --

10          MR. SELTZER:  Yes, she objected and that was the

11    principal basis of her objection.

12          THE COURT:  No, in other cases, I didn't mean in --

13          MR. SELTZER:  No, I'm unaware of her being an

14    objector in other cases, I'm not, unlike a couple other

15    people who have objected who do have a long track record of

16    objecting in other cases.

17          THE COURT:  Okay.  Granted -- well, I don't know if

18    granted.  This is her motion and I'm not going to grant her

19    motion.  Okay.

20          MR. SELTZER:  Now, Your Honor, I would like to

21    address the settlements and also deal with the objections

22    that have been filed, and I have, Your Honor, I must confess,

23    two outlines, a long-form version and a short-form version,

24    and I'm going to opt with Your Honor's permission for the

25    short-form version?

```
 1              THE COURT:  Please.

 2              MR. SELTZER:  And then be able to respond to any

 3    questions that you have on the settlements.

 4              THE COURT:  All right.

 5              MR. SELTZER:  We are here today to seek final

 6    approval of the round two settlements, also the plan of

 7    allocation of the settlement proceeds, and last our second

 8    fee and cost application.  The papers that have been

 9    submitted to Your Honor are voluminous, and I know the Court

10    is very familiar with the record in this case, and you've

11    carefully considered the record, and we went through this

12    before with the round one settlements where almost all the

13    same issues were considered thoroughly by the Court and

14    resulted in a written decision by Your Honor approving the

15    round one settlements, so I think I can -- I will try be very

16    brief in my remarks in light of that history.

17              THE COURT:  Okay.

18              MR. SELTZER:  The second round of settlements, just

19    for the record, there are separate settlements with 12

20    defendant groups and it is comprised of 41 settlement classes

21    covering 29 different automotive parts, and the settlement

22    class breakdown is by automotive part and some of the

23    defendants have multiple parts and that's why there are more

24    settlement classes than there are parts in question.

25              The benefits of the settlements taken collectively
```

1    and separately are very substantial and include monetary and

2    non-monetary relief including extensive discovery cooperation

3    provisions and, with the exception of one defendant,

4    injunctive relief.  The aggregate cash amount for the second

5    round is $379.4 million.  If we add that together with the

6    first round of settlements, which were approximately

7    $224.7 million, the total cash recovered for the class thus

8    far is $604.1 million.  And, Your Honor, this total recovery

9    is among the very largest recoveries ever achieved in the

10   history of class action litigation, it ranks up in the top

11   one or two percent of cases ever in the history of class

12   litigation, which is a truly remarkable result.

13           But as Your Honor knows, the litigation isn't over

14   and we are on the road to adding to this total.  There have

15   been additional settlements that have announced, there are

16   some that have been arrived at in principle and not yet

17   announced.  And as Your Honor knows, we are involved in an

18   intensive settlement process with a special master appointed

19   by Your Honor, Judge Weinstein, and we are engaged in

20   scheduling additional mediation sessions all with a view to

21   try to wrap up this litigation in an expeditious but fair and

22   reasonable fashion.

23           Now, the recoveries that we've obtained are

24   remarkable not just because of the amount but also because of

25   the extraordinary, if not completely unprecedented,

1   complexity of this litigation.  This litigation involves, as

2   Your Honor knows, multiple interrelated conspiracies, scores

3   of defendants, multiple different automotive parts and

4   approximately 40 separate class actions.  Managing this

5   litigation has to -- then to say the least a very daunting

6   task.

7          I'm not going to read you all of the benefits of

8   the settlements because the Court reviewed that with respect

9   to the first round, and the settlements follow essentially

10  the same format in terms of payment, payment of cash into

11  escrow, some of the money being allowed for notice costs, the

12  extensive discovery cooperation terms which detail

13  exquisitely the obligations of the settling defendants, and

14  those cooperation clauses have been very material to the

15  plaintiffs being able to move this litigation forward and

16  have been very helpful to us in terms of being able to

17  effectively make arguments with respect to non-settling

18  defendants as to why they should settle.

19         And for these reasons, if Your Honor would allow me

20  to I would like to incorporate the remarks I made at the

21  hearing on May 11th, 2016 with respect to the first round so

22  I won't have to repeat those comments, and I also rely upon

23  the Court's order granting final approval of the first round

24  of settlements.

25         THE COURT:  And I would note those orders are

```
 1    about -- and the settlements are about word for word with the

 2    exception of the individual parts so they follow a very

 3    precise protocol in terms of how they are laid out in their

 4    language.

 5          MR. SELTZER:  They are.  They are -- the settlement

 6    agreements are very detailed.  The first few settlement

 7    agreements were negotiated in excruciating detail over a

 8    period of months, and finally we got the format agreed to and

 9    then every time we have a new settlement settling defendants

10    say I have an idea, I would like to do this, I'd like to do

11    that, and then we have to fight off making those changes

12    saying we want to be as consistent as possible in following

13    the format, first of all, that the Court has found is

14    acceptable but also one that we think is fair and reasonable,

15    so that's part of the ongoing discussion.  There have been

16    some tweaks that have been made to the settlement agreements

17    and some of the final judgments, but by and large they have

18    been fairly standardized once we've got the template down for

19    the settlement agreements.

20          Now, on a preliminary note I want to note that

21    declarations have been filed by the claims and notice

22    administrators establishing that notice was given pursuant to

23    the Court's order of October 7th, 2016 regarding the

24    dissemination notice of the class, and that notice was many,

25    many layered, included mailed notice, paid and unearned or
```

```
 1    unpaid media notice, website notice, and other notices as
 2    well, including interviews with reporters, publications that
 3    are national publications carried the news of these
 4    settlements all in accordance with Your Honor's order of
 5    October 7th.
 6           And in response to this notice, the settlement
 7    website has been visited by more than 1.285 million unique
 8    visitors, and claims and registrations have been filed by
 9    approximately 85,000 persons, and that's without a deadline
10    for claims being established yet.  And in response to this
11    most recent notice there are only two class members that
12    opted out, one, Geico, which was an opt out from the first
13    round, one of the four, and then a new person -- an
14    individual but none of the four who opted out of the first
15    round opted out of the second round, and only five objections
16    have been received.  Many courts have said that that kind of
17    reaction to a class notice can be taken as a tacit
18    recognition by class members that these settlements are fair
19    and reasonable.
20           Now let me talk about the objections.  We talked
21    about Christopher Bandas already who has reportedly objected
22    to at least 80, and probably more, class action settlements.
23    The objections that he makes I will take them up very
24    briefly.  First of all, he says that effectively the Court
25    can't assess whether the settlements are fair and reasonable
```

1    because there is not a damages study that says what is the

2    likely recovery that would be obtained at a trial in this

3    case, and he cites to Shane Group vs. Blue Cross for that

4    proposition.

5            Now, Shane is very distinguishable, Your Honor.  In

6    that case what the Sixth Circuit said is that there was an

7    expert report prepared by Dr. Jeffery Litzinger which

8    estimated the total damages in the case, I think $118 million

9    single damages for the class, and the settlement was for

10   substantially less than that.  After deducting fees and

11   expenses the total amount would be 12 percent of the damages

12   estimated by Dr. Litzinger.  What the court said -- the

13   Sixth Circuit said is that there was an unexplained, quote,

14   analytical gap, close quote, in the district court's reliance

15   on this report and much of the report was under seal, which

16   was the major brunt of the decision that it shouldn't have

17   been under seal so the objector should have been able to see

18   it, and a conclusory statement that the settlement was fair.

19           And on remand the court is not directed to

20   disapprove the settlement but rather to explain, debtor, why

21   the settlement was fair and reasonable in light of the

22   damages report that both the court and the parties evidently

23   relied upon.  And in so doing the court didn't say that if a

24   damage report didn't exist one had to be prepared, rather he

25   was dealing with a record where a damages report did exist.

1    The -- as I said, what the court on remand is to do is to now

2    take the record and explain in greater detail why the court

3    thinks the settlement is fair and reasonable.

4         Now, in this case by contrast we didn't have a

5    damages report, we are very up front about that, the

6    litigation hasn't reached that stage.  Instead we describe

7    the information that we took into account in arriving at the

8    settlement.  We used volume of commerce information that came

9    from several sources, one was the settling defendants, one

10   was the information that was negotiated and made part of the

11   guilty pleas by those defendants who pled guilty because one

12   of the things that happens in the U.S. sentencing guidelines

13   in an antitrust case is that the fine is fixed by reference

14   to affected commerce, and affected commerce is laid out in

15   the guilty pleas, and then there is a percentage of that

16   which is the starting point for calculating the fine and then

17   there are upward or downward adjustments based on history of

18   recidivism or whether or not the person in question, you

19   know, destroyed documents or obstructed justice or whether or

20   not the person came forward and there was an acceptance of

21   responsibility, so those were all the factors that go into

22   play under the guidelines, which I know Your Honor is very

23   familiar with, so we have that information.

24        We also have information from third parties

25   regarding what was likely to be the commerce in question for

1    these defendants and for each part, and then we took that

2    information and we considered other factors; was the

3    defendant an ACPERA applicant because under ACPERA if the

4    defendant is allowed into the leniency program treble damages

5    aren't available to a plaintiff as opposed to a situation

6    where the defendant is not an ACPERA applicant whose

7    application has been accepted.

8         We also looked at the timing of the settlements.

9    You know, the idea was to ramp up settlement amounts over

10   time so an earlier settling defendant gets a break as

11   compared to a later settling defendant.  That concept of

12   having an icebreaker settlement is well enshrined in the

13   custom and practice and the jurisprudence of antitrust

14   litigation.

15        We also consulted with our experts on issues

16   related to damages and most particularly the questions having

17   to do with pass on and the ability to establish class wide

18   damages in this case.  Our experts are now consulting experts

19   because reports have not been required to be submitted so

20   these are all confidential matters between the plaintiffs and

21   their experts.

22        The -- we took into account other factors as well

23   including some variations in the cooperation that was given

24   to us and whether the timing of that cooperation would prove

25   helpful with respect to a subsequent non-settling defendant

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

1   with respect to the same part.  So all of these were the

2   factors that came into play.

3           We also took into account our experience in

4   litigating these cases.  I have more than 40 years of

5   practicing antitrust class action litigation going back to

6   the Corrugated Container case which began in 1977 in Houston,

7   Texas.  That was a case, by the way, where we had reached

8   settlements before we even had formal discovery, and we had

9   no expert reports, and the settlements were nonetheless

10  presented, were arrived at, negotiated and presented to the

11  Court, they were approved, and the Fifth Circuit ultimately

12  approved all of the settlements that we entered into.  I

13  mean, there was a point in time when they wanted additional

14  findings which were made by the trial judge and then they

15  were all ultimately approved.

16          So if discovery -- formal discovery is not the

17  ticket required in order to settle a case, much less so would

18  be a damage report.  And think of the policy question, think

19  if it was the other way around, that a case couldn't be

20  settled until a plaintiff had a damages report from his or

21  her expert in order to engage in settlement negotiations and

22  to defend a settlement, that would mean that no cases could

23  settle until they were very well along in the process.  And

24  as Your Honor knows, in this case we don't have damage

25  reports due on the merits until after class certification,

```
 1    and that's not going to happen for many, many months from now

 2    under the Court's original schedule in this case.  So it

 3    would be against public policy, it would preclude settlement

 4    if that were required in a case.  And the Sixth Circuit

 5    didn't say that was required.  It was dealing with a case

 6    where you had an expert report already on the table that was

 7    used after a class certification motion was filed to estimate

 8    damages in the case.

 9            And one case we cited, Your Honor, for this

10    proposition that you don't need to have that kind of an

11    estimate to settle a case is the Lane against Facebook case

12    in the Ninth Circuit, and that is at 696 F3rd 811, it's in

13    our papers.  But what the court said there, and this was in

14    response to an objection, how could you settle a case without

15    having an estimate of what the recovery would be after trial?

16    The court said a district court need not make a specific

17    finding of fact as to the potential recovery for each of the

18    plaintiff's causes of action, to do so would be onerous, if

19    not impossible, in many cases.  The circuit said, I think

20    correctly, that statutory or liquidated damages aside, the

21    amount of damages a given plaintiff or class of plaintiffs

22    have suffered is a question of fact that must be proven at

23    trial.  And, as I say, any other rule that you can't settle

24    until you are ready for trial would preclude settlements

25    until the end of litigation or close to the time that trial
```

1    commences.

2         So I think, Your Honor, looking at the information

3    that we had and that we took into account, and I would

4    submit, Your Honor, the sheer size of these settlements and

5    the benefits of these settlements speaks more than volumes

6    about the adequacy of the settlement amount that we have

7    achieved in this case.  It is, as I said at the outset, it is

8    among the highest recoveries ever in the history of class

9    action litigation.  So that really is the response I would

10   make to Bandas and any other objector who has said you need

11   to have a fuller record and findings regarding the estimated

12   range of recovery in this case in order to approve the

13   settlement.

14        And second, Your Honor, I would go back to what

15   Your Honor said in approving the first round of settlements,

16   if you look at all the factors that are at play here in terms

17   of the benefits of the settlement, the incalculable value of

18   the discovery cooperation in assisting the plaintiffs in

19   litigating the case, the fact that all of the sales of the

20   settling defendants remain in the case as against the

21   non-settling defendants, which is a critically important

22   point.  The cases like Shane that was the final and only

23   settlement in the case.

24        In this case it is ongoing, and that with respect

25   to many of the defendants there is still exposure based upon

1   the conduct of the settling defendants, and the way it works

2   under the antitrust laws is that if we were to get a verdict

3   against a non-settling defendant, hopefully we can settle

4   with everybody, but let's suppose there is a non-settling

5   defendant and we have to try the case, their verdict is first

6   trebled before there is a reduction to take into account the

7   amount of the settlement, so that means that the recovery of

8   a class is still open ended here with respect to many of the

9   claims at issue, and that's an important factor, this is not

10  the end of the case by any means, and it is one that

11  distinguishes this case from a case like Shane Group.

12          So having said that, Your Honor, I think that the

13  adequacy of the settlement is established beyond fairly well

14  and consistent with how Your Honor ruled previously there was

15  more than an adequate basis here to find the settlements

16  fair, reasonable and adequate.

17          Now let me talk about some of the other objections

18  that were made.  Bandas also says -- complains about the

19  sealing of the documents.  Well, Your Honor, there are no

20  particular documents he points to that he needed to see in

21  order to make an objection to the settlement.  Not a single

22  document has he pointed his finger to to say, aha, that's

23  something necessary to evaluate the settlement.  And, in

24  fact, in the end payor case very few documents were ever

25  sealed in the first case.  And based upon the Court's order

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

1  post Shane where we entered into a stipulation regarding the

2  handling of sealed documents, many documents that were sealed

3  in part have become unsealed.  What remains sealed in our

4  consolidated complaint in a particular case would be the

5  names of an individual who was an employee of one of the

6  defendants who was not indicted, not otherwise disclosed,

7  became known to us through a settlement proffer or is

8  otherwise available to us, those names were redacted.

9          THE COURT:  Okay.  I agree with you here.

10         MR. SELTZER:  And how knowing the name of that

11 person would change the analysis of this case is just --

12         THE COURT:  He didn't mention anything in his

13 objection that would -- that is sealed that would give him

14 any information necessary for the analysis of this.

15         MR. SELTZER:  Right, so unlike the Shane objectors

16 where they could point to more than 100 or so documents that

17 were sealed which were the key documents in the case, that's

18 not the situation here.

19         THE COURT:  Right.

20         MR. SELTZER:  Then he makes an argument that the

21 incentive payments that may be paid to named plaintiffs could

22 result in disproportionate benefit to those named plaintiffs.

23 Well, we are not seeking any incentive compensation awards

24 for the named plaintiffs, that's not part of this

25 application.  If we do in the future there will be time

1    enough for anybody, including Bandas if he so chooses, to

2    make an objection to an incentive compensation award, but we

3    are very mindful of the law in that area and what's an

4    appropriate award in light of the circumstances and what the

5    named plaintiffs have done in terms of making themselves

6    available for discovery, depositions, providing answers to

7    interrogatories, document requests, all the work that they do

8    as plaintiffs in the case, which many courts have found would

9    justify an incentive compensation award to them, but that's

10   not the issue here.

11           The cases that he cites are ones where a named

12   plaintiff gets a benefit that nobody else gets and it is

13   vastly disproportionate to what class members gets, that's

14   not a -- it is a moot question, it is not before Your Honor,

15   we haven't asked for it.

16           Then there is an argument that subclasses should be

17   established for different antitrust repealer states because

18   they have different remedies.  There is not a single court

19   that I know of that has found that that's necessary.  And, in

20   fact, in many indirect purchasers' antitrust class actions

21   the class members in all the indirect repeller states are

22   treated the same, in fact, there are even some courts that

23   have gone beyond that and treated class members in the

24   non-repeller states the same.  We haven't done that; we have

25   only had damages made available or money made available to

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

**39**

1   class members who made their purchase while they were

2   residents in the repeller states.  That's what we have done

3   here.

4         And as I say, you can look at all the cases that we

5   cited, a plan that treats all of those states the same way is

6   perfectly acceptable and the individual variations among the

7   claims are not important, and certainly don't rise to the

8   level of creating a potential conflict that would necessitate

9   subclasses.

10        Now, we turn to Mr. Cochran.  He only has one

11   objection to the settlement having abandoned his

12   ascertainability tact namely that the Court didn't

13   consolidate all the cases and thereby made it more difficult

14   or expensive for him to take appeals because he has to do it

15   from each individual case that he wants to appeal from.  That

16   was precisely the issue that was before the Sixth Circuit,

17   and of course this Court didn't engage in any kind of

18   machinations to make it harder for him to take an appeal, nor

19   did the defendants or the plaintiffs, it was the way these

20   cases got filed.  And as Your Honor will recall, we made a

21   motion to consolidate a number of the cases arguing that

22   Denso could be viewed as a central player in a conspiracy

23   that involved multiple other defendants and parts, and the

24   Court rejected that motion.

25        THE COURT:  I did reject it, and I have no

1    intention of reviewing it again here, so this objection is

2    denied.

3            MR. SELTZER:  I understand that.  But the idea that

4    not consolidating the cases so you can take an appeal from

5    one judgment and that constitutes a due process violation is,

6    to coin an expression, and this is a legal term of art,

7    that's ludicrous.  So that's his only objection as far as the

8    settlement this time around.

9            By the way, he's conceded in his reply brief in the

10   Sixth Circuit that by virtue of what we have done with the

11   website where there is now a drop-down feature available so

12   any class member who wants to can plug in their vehicle make

13   and model and year and find out which defendant made which

14   part which is in their vehicle.  So he now says you've done

15   what I say you should have done, and he says in a footnote by

16   the way, I should take credit for that.  Of course, that is

17   something we planned all along, as I explained to Your Honor

18   at the hearing in May, that that was the plan and we followed

19   through on our promise and done what we said we were going to

20   do.  So that's Mr. Cochran.

21           Then we have Marla Lindermann.  She makes an

22   objection to ascertainability, which is basically the same

23   one that Mr. Cochran made originally and that he now has

24   abandoned.  It doesn't make any sense particularly in the

25   light of what is available on the website about the ability

1    to ascertain which defendant made which part which is in

2    which vehicle.

3            And we have talked already about Sandra Singer.

4    She made one other kind of odd objection.  She complained

5    that the publications that were chosen upon the

6    recommendation of the expert notice administrator did not

7    include magazines that would be read by women and therefore

8    we were engaged in sex discrimination.  Now, first of all, it

9    did include magazines that are read by women and by everybody

10   and included the Wall Street Journal and other publications

11   that people of both genders read.  But the real point is the

12   claims administrator -- I should say the notice administrator

13   made a very careful choice as to what publications would

14   likely have the greatest reach to class members and they

15   concluded that the notice program that they established had

16   an 80 percent reach, which is very high in advertising terms,

17   and they use the terminology and the techniques that

18   advertisers use to reach potential customers, so it is a very

19   sophisticated process that is used to decide what

20   publications to use, what are the most cost effective, what

21   are the most likely to reach potential class members.  So

22   that objection is unsound.

23           THE COURT:  I like that objection though.

24           MR. SELTZER:  Sorry.

25           THE COURT:  I like that objection.

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

1    MR. SELTZER:  Your Honor, I have never seen it

2  before.

3    THE COURT:  It was fun reading that.

4    MR. SELTZER:  It showed some ingenuity, let me say

5  that.

6    So those are the objections.  I think I touched on

7  all of them.  There may be some minor points, but I think

8  they were responded to all in our papers and there is no need

9  to take the Court's time now.  So that's the settlement.  And

10  with respect to the settlement we would submit they are fair,

11  reasonable, adequate and should be approved.

12    Now, the next thing, we have the plan of

13  allocation.  As I read the objections, nobody has objected to

14  the plan of allocation.  The plan of allocation is one that

15  was designed I think very carefully to use a pro rata method

16  that we had previously described in general terms to Your

17  Honor.  What it does is it provides that each person who

18  bought a vehicle that has one of the parts in question gets

19  effectively a point for that vehicle, and then you add up all

20  of the total vehicles in a particular settlement class and

21  establish a ratio between the person who is the claimant and

22  the total number of allowed claims in that class, and then

23  they divide the settlement fund pro rata among them.

24    There is a tweak to that.  With respect to those

25  people who bought a vehicle that we, based upon the evidence

1    that is made available to us, had a part that was the subject

2    of -- or was a target of collusive activity, that vehicle

3    counts for four points, so we make that variation to take

4    into account the strengths and weaknesses of the claims.

5    Frankly, that kind of detail in the plan of allocation is one

6    that is designed to be sensitive to variations in claims that

7    plaintiffs have but also to be administratively feasible.

8    And that is how the plan of allocation works.

9         So ultimately what will happen is all the claims

10   will come in, they will be processed, the claims will be

11   recommended for allowance, the Court will be presented with

12   the claims for allowance or rejection, and then we will know

13   the total amount of the allowed claims for each settlement

14   class based upon the Court's order approving whatever it is

15   that is submitted and what the Court finds is reasonable.

16   Then you have a computation that is made calculating the

17   individual claim amount that class members will get.

18        All of the money that is in the class fund, the net

19   funds, will then be distributed to the claimants; no money

20   reverts to the defendants, it goes to the claimants.  And it

21   doesn't matter how many filed claims, they share and share

22   alike in those claims based upon that plan.

23        THE COURT:  Let me ask you this:  What about the

24   money that is there because these claimants do not cash the

25   checks they get?

1    MR. SELTZER:  Well, what will happen there, this

2  will again be subject to Your Honor's approval and oversight.

3  Typically in a case where that happens there are several

4  choices that can be made.  First of all, you need to know how

5  much money is left over.  Is it enough to justify a second

6  distribution to the people who filed allowed claims?

7  Oftentimes that's the case, sometimes it is not but

8  oftentimes it is.  What we do is we go back to the Court,

9  unless the Court has preauthorized it, and ask for permission

10  for a second distribution of those funds to the authorized

11  claimants who did submit claims.  We go through that process

12  once, sometimes it is an interim process and you do it a

13  couple times or two or three times until you exhaust the

14  funds or as much as you can.

15    If the amount is left over after that process is

16  too little as an economic matter to justify the expense of a

17  further distribution, then we come back to the Court and

18  there are two or three options that are available.  One is we

19  apply to the Court for approval to make what is known as

20  cy pres distribution to some organization or charity that is

21  one that is consistent with furthering the underlying cause

22  of action on behalf of the class.  That's one option that's

23  followed.  And the case law on that has been evolving over

24  recent years putting more and more meat on the bones, so to

25  speak, about what kind of organizations would qualify.

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

```
 1          THE COURT:  I'm familiar with that.  What's the
 2   other option?
 3          MR. SELTZER:  Another option is the money escheats
 4   as lost property and then it is available for all time to the
 5   claimant who didn't cash the check, they just have to make a
 6   file with their state controller or Secretary of State office
 7   to claim the money and it is available essentially forever.
 8          THE COURT:  Really?  I haven't heard of that one.
 9          MR. SELTZER:  That's done in a number of cases.
10   That's what we ended up doing in the Toyota case where we had
11   unclaimed checks we ended up escheating the money to various
12   states.  It is also possible to escheat to the United States
13   because this is a federal claim -- a federal antitrust claim
14   but usually it goes to the states, but that would be
15   something that would be decided way down the road --
16          THE COURT:  Right, right.
17          MR. SELTZER:  -- after the claims process has been
18   completed and we have gone through a distribution process.
19          So we submit that the plan is a fair and reasonable
20   plan, it is consistent with plans that have been approved
21   many times before, and we think it is a fair and reasonable
22   plan.
23          Then we turn to the last item, which is our fee
24   expense request.  As we advised the Court we would do in our
25   supplemental filing that we made in response to the Court's
```

```
 1    direction that we provide supplemental briefing after the
 2    last hearing regarding attorney fees, we told the Court we
 3    would apply for 27 and a half percent.  We had previously
 4    applied for 30 percent the first round, we applied for 27 and
 5    a half out of the second round.  If the Court were to grant
 6    our request and grant the prior request in full, and the
 7    Court has made two interim awards of ten percent each so
 8    20 percent award in total, that would be a 30 percent award
 9    and that would result in Loadstar multiplier of 1.56 of the
10    Loadstar reported as of the time of our fee application,
11    which was about $108 million or so.  That amount -- that
12    multiplier is well within the range and even below the range
13    in similar cases with very large recoveries.
14            Now, one of the main objections that we have had to
15    the fee request is that, well, if you are talking about a
16    very large settlement fund, this so called mega fund, there
17    is a scaling that should take place so that the greater the
18    fund the lower the percentage a class counsel should get.
19    And we pointed out, first of all, the Sixth Circuit has not
20    adopted any such rule, and that was something that was noted
21    in the Southwestern Milk case by the district judge in that
22    case that there is no such ruling and the judge there gave a
23    lot of reasons why it would be a bad rule.  But the fact is
24    if you look at the cases, and the objectors cite two studies
25    that have been done about class action settlements where
```

1    there is a reduced amount from the usual 30 percent or

2    28 percent or more, that's where the Loadstar multiplier is

3    very high, six, seven, eight, ten times the Loadstar, and in

4    that circumstance the courts scaled back the percentage

5    saying that the multiplier as a check -- as a crosscheck

6    shows that the percentage should be reduced.  That's not our

7    situation here, and we gave examples of cases where courts in

8    similar circumstances have awarded fees along the lines we

9    requested.

10             For example, in the TFT-LCD case in San Francisco,

11   there was a settlement there of $1.06 billion, and the court

12   awarded fees equal to 28 percent of that settlement amount

13   where the multiplier was --

14             THE COURT:  What was the percentage?

15             MR. SELTZER:  28.6 percent --

16             THE COURT:  28.6.

17             MR. SELTZER:  -- of the settlement fund, and the

18   multiplier in that case was between 2.4 and 2.6 for all of

19   the lawyers in the case and higher for the lead counsel, it

20   was in the threes for lead counsel in that case.

21             So there is a situation where a settlement larger

22   than the one we have before Your Honor, considering both of

23   them together even, where the court awarded 28.6 percent of

24   the settlement fund of the billion dollars plus and where the

25   multiplier is higher than the multiplier that we are asking

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

 1    for here.  We asked for that amount in light of what we saw

 2    other courts have done and what we think is fair and

 3    reasonable here given the time and effort that this

 4    litigation has taken.

 5            And I might advise Your Honor that there is

 6    actually a brand new academic study that came out which

 7    showed that contrary to what you hear in the objectors'

 8    papers that fee awards in large cases where the settlements

 9    are more than $100 million have ranged between 16.6 percent

10    and 25.5 percent depending on the year; the first one I think

11    was in 2009 and the other was in 2011.  So a fee award of a

12    mega fund, if you want to call it that, of more than

13    25 percent is the average.  In other words, it is not

14    something that is at the tiptop of what courts have done,

15    that's what these academics have written about.  The study,

16    by the way, is by three professors, I have it on the desk.

17            THE COURT:  Counsel, you can submit the study to

18    the Court when I do a final resolution on attorneys' fees.

19            MR. SELTZER:  Okay.  And what it shows, for

20    example, in antitrust cases the average awards are like

21    nationwide between about 28 and 30 percent roughly.  So the

22    request that we made here is in line with what has been

23    approved by courts across the country in antitrust class

24    action cases.

25            And we also cited cases, these are in our briefs,

1    where courts have awarded higher percentages of even still

2    higher settlements like the Allapattah case from Florida

3    which was, again, a billion dollar plus recovery where a

4    higher percentage was awarded than what we requested in this

5    case.

6         With respect to the aspect about our Loadstar, a

7    couple of the objectors say well, there is not sufficient

8    record regarding the Loadstar.  Well, we gave not just the

9    hours by lawyer, by professional, and the hourly rates for

10   the computation that individually -- by each firm of their

11   Loadstar and the overall Loadstars for the lawyers, there is

12   also a detailed declaration that was written by Ms. Salzman,

13   Mr. Williams and myself which lays out the tasks that we

14   performed, that's in our joint declaration.  So this is not

15   simply a situation where someone just submitted an

16   unvarnished conclusion, we spent this much time on the case

17   and the Court should award it.  And that was one of the

18   criticisms, as I understand it, by Judge Kethledge in the

19   Shane Group case in terms of what was not provided to the

20   court.  And in that case it is important to recognize, if I

21   recall correctly, that's one where the court chose to use the

22   Loadstar multiplier method, percentage of recovery method.

23        When the percentage of recovery method is used a

24   Loadstar is only a cross check and the cases are legion for

25   the proposition that the Court need not look at or see

1   detailed time records or do the kinds of painstaking analysis
2   that used to be done when fees were awarded on a Loadstar
3   multiplier basis.  Instead, the Court looks at that as kind
4   of a reality check, what is the overall effort that was
5   involved in the litigation, and what is appropriate in light
6   of all of that.

7           And, Your Honor, finally, the cases that have been
8   cited by the objectors, and we cite them as well, they are
9   all really interesting in one respect.  You have the Ramey
10  case, you have the Bowling case and you have one or two
11  others.  Those are cases all where the Sixth Circuit affirmed
12  trial court decisions to award attorneys fees as awarded by
13  the trial court saying it's really something that lies within
14  the discretion of the court to decide what's fair and
15  reasonable.

16          I mean, for example, in the Bowling against Pfizer
17  case, that was a products liability class action involving
18  the Shiley heart valve, and the court awarded a fee of ten
19  percent of an initial payment of about $102 million to the
20  lawyers with the right for them to go back for ten percent of
21  an additional $62 million that would be paid over time by
22  Pfizer where doing so would result in a two times
23  multiplier -- a little better than the two times multiplier
24  for the time out of the initial award, and then if the court
25  followed through and awarded the additional sum as the court

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

**51**

1   indicated that it would do it was a more than three times

2   multiplier based upon counsel's Loadstar and where the court

3   emphasized the fact that settlement was arrived at a very

4   early stage and counsel really were at risk for a lot of the

5   time.

6        That's not this case.  We've been at risk for all

7   of our time throughout the entire course of the litigation.

8   It's been a very hard fought case.  It has required an

9   investment of not just time and hours and work and long hours

10  but also a lot of money in prosecuting this case on behalf of

11  the class.  This is not a case where awarding a percentage

12  would result in a windfall because for very little effort

13  class counsel were able to achieve a result which was wildly

14  disproportionate to the amount of effort that was required to

15  achieve the result.  Here the effort is such that if the

16  court were to award everything we have asked for so far, as I

17  mentioned, it is only a 1.56 multiplier of our time.  If you

18  look at the contingency risk that we are confronted with I

19  think that's highly reasonable.

20       A lot of courts have awarded, as I mentioned what

21  Judge Ilston did in TFT LCDs, multipliers for all lawyers of

22  2.4 to 2.6 on average and higher numbers for the lead

23  counsel, and many courts have awarded multipliers three

24  times, four times in cases like these to take into account

25  not just the risk that counsel undertook but the results that

1    were obtained, the effort that the work required, the

2    complexity of the litigation, the skill that was required to

3    achieve the result, all of those are factors that go into

4    assessing whether an award is reasonable or not.  And, of

5    course, the touchstone is fair and reasonable.  That's what

6    we think we have asked for and that's all we are asking for

7    Your Honor.

8              THE COURT:  Okay.

9              MR. SELTZER:  With that, if you have any questions

10   I will be happy to answer them?

11             THE COURT:  No.

12             MR. SELTZER:  Okay.

13             THE COURT:  Thank you.

14             MR. SELTZER:  Thank you, Your Honor.

15             THE COURT:  Defense have any -- I'm talking the

16   settlement now, not final approval, anything?

17             MR. TUBACH:  Your Honor, I just have a housekeeping

18   matter.  This is Michael Tubach for Leoni again.

19             THE COURT:  Okay.

20             MR. TUBACH:  The end payors submitted a revised

21   final -- proposed final judgment for Leoni in an errata on

22   February 24th, and we just ask the Court to use that one

23   rather than the one that was submitted originally.

24             THE COURT:  Make sure you give that to my clerk so

25   we are sure we get the right one.

1    MR. TUBACH:  It was filed in court but I will hand

2  a copy to the clerk.

3    THE COURT:  All right.  Okay.  In terms of the

4  settlement in this case, I'm not going to repeat everything

5  that counsel said so I won't go through all of this, we have

6  done this before in the preliminary approval, but clearly we

7  are dealing with significant groups here, I think 12

8  defendant groups and 41 classes, settlement in the amount of

9  $379.4 million in this second round.

10    There -- the notice the Court finds was

11  appropriate.  I think it reached -- I think it was something

12  like 80 or 80.1 percent of the people who would be involved.

13  This is facetious but I do reject the sexist to be adequate

14  to reach as many people as possible.

15    The objections that were filed here had to do -- I

16  want to address this now with, first of all, the amount of

17  the settlement as to how do we know what the amount of the

18  settlement is or should be because there is not a damages

19  study.  And I think, Mr. Seltzer, you set out very well how

20  we know, and nobody knows exactly I don't think, but there

21  are many benefits to doing it this way and to considering all

22  of the information that you have gathered from others from

23  the plea regarding the volume of commerce, et cetera, from

24  third parties, from the ACPERA consideration regarding the

25  treble damages, et cetera.  I think every point you've made

1    is really smack on as to the best that could be done to make

2    a determination, and I would say that all of those factors

3    combined with the experience of counsel, which I have said

4    before, I think counsel are well experienced and well able to

5    come to these types of negotiations and determinations that

6    are done at arm's-length distance.

7              It is ridiculous to say that you can't settle

8    early.  I think there have been a number of cases not here

9    but in the automotive industry and in the gas mileage, the

10   seat belt, all the other parts, that have been settled very

11   early on, and the Court finds that there is a great benefit

12   to the class to have these things resolved at an early time,

13   that you get the benefit of the cooperation discovery with

14   the claims still proceeding against the non-settling

15   defendants, so I find that the amount of the settlement is

16   fair, reasonable and adequate.

17             Going to the other objections about the sealing of

18   documents, I think that that is an objection that perhaps

19   Mr. Bandas made out of ignorance having not been here to see

20   what we have done to make every effort to abide by the

21   requirements of the Sixth Circuit as set forth in Shane.  And

22   I noted specifically he didn't talk about what documents.

23   Now, of course, they are sealed so maybe he doesn't know what

24   documents but the Court is aware of the documents that have

25   been sealed and we know that many of them have been unsealed

1    if we feel that it was not -- did not abide by the current

2    case law, and that most of these things would have -- the

3    things that were sealed, they've actually been mostly

4    portions of documents and they would have nothing

5    particularly to do with the amount of the settlement.

6            The incentive to name plaintiffs is a moot issue

7    here as said.

8            Subclasses, this Court wouldn't even go there, we

9    have enough classes without going into subclasses.

10           Mr. Cochran's due process objection that the Court

11   didn't consolidate all the cases.  We, of course, considered

12   consolidation of a group of these cases some time ago and the

13   Court made a determination, and I would incorporate herein

14   what I ruled then, that it was not appropriate to consolidate

15   these cases.  It is unfortunate it is more expensive to

16   appeal but that issue has already been resolved by the

17   Sixth Circuit.

18           The objection by Marla Lindermann is one I think

19   which is already really handled with Mr. Cochran's -- it's

20   the same as his objection.

21           In terms of Ms. Singer, her objection the Court

22   already commented on, I don't find any discrimination as to

23   women in our notice.

24           Then we go on to the plan of allocation, and none

25   of -- the plan was not referenced by any of the objectors,

1    and I know of no other problem with it.  The Court finds that

2    the plan of allocation designed to give a pro rata share to

3    each plaintiff or member of the class is appropriate.  The

4    Court went through all of the parameters of that in the

5    preliminary hearing and the folks who were doing it are

6    experienced in this, and I find that this appears at this

7    point to be a very -- what can I say, a very good and

8    productive method of determining these claims.

9          The Court notes that in terms of the issues of the

10   class that, as I've have said already, it is fair, reasonable

11   and adequate.  We know, as has been said many times before,

12   that the Court has to look at the likelihood of success, and

13   the complexity, and the judgment of the experienced counsel,

14   et cetera, and I adopt what I have said before in detail

15   about all of this, I think it applies here, and that this is

16   most definitely a fair and reasonable settlement.

17         I would also note, I think, Mr. Seltzer, you did

18   mention this, but, you know, out of all of these people that

19   you notify you really only have a handful, not even, of

20   objectors, and I think that's a significant point.  We

21   don't -- you know, the Court sometimes in some cases even

22   gets a letter saying we object.  We've gotten nothing above

23   which have been formally filed here in court and that, as I

24   said, is just a handful.

25         I don't think we talked about this specifically but

2:12-md-02311-MOB-MKM   Doc # 1748   Filed 05/03/17   Pg 57 of 59   Pg ID 32474
Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

57

```
 1    you will be appointed class counsel in this matter.

 2            And in terms of the attorney fees there was a

 3    separate motion for the attorney fees which Mr. Seltzer

 4    argued.  I certainly -- I have no problem with the

 5    reimbursement for the expenses which I have asked counsel to

 6    submit to me on a regular basis.  I don't have a problem with

 7    awarding those, and I do so award them.

 8            The remainder of the money, the percentage of the

 9    fees for the attorney fees, I'm going to do what I have done

10    before, even though I think there were very good arguments

11    raised here, but give 20 percent of the amount after the

12    costs have been taken out to be awarded now, the rest to be

13    applied for later when we get all of these cases resolved.

14            Is there anything I am missing?  I feel it has been

15    kind of a long --

16            MR. SELTZER:  I don't think so, Your Honor.  I

17    think that covers it.

18            THE COURT:  Okay.  Plaintiff, any other comments?

19            (No response.)

20            THE COURT:  Defendants?

21            (No response.)

22            THE COURT:  No.  Okay.  Would you -- I don't know

23    what papers we have but I want to make sure we have the

24    latest documents.  I think we do but you might just check

25    with Molly to make sure we do so we can get these entered.
```

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

1          MR. SELTZER:  Yes, Your Honor.  We will check on

2     that with the final judgments for each of the settlements and

3     also the order regarding fees and expenses we will submit

4     that, as well as one on the plan of allocation and the

5     settlements.

6          THE COURT:  Okay.  Thank you.  Thank you very much.

7          MR. SELTZER:  Thank you, Your Honor.

8          THE LAW CLERK:  All rise.

9          (Proceedings concluded at 3:34 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Motion to Strike Objections and Final Approval of Settlement • April 19, 2017

| | |
|---|---|
| 1 | *CERTIFICATION* |
| 2 | |
| 3 | I, Robert L. Smith, Official Court Reporter of |
| 4 | the United States District Court, Eastern District of |
| 5 | Michigan, appointed pursuant to the provisions of Title 28, |
| 6 | United States Code, Section 753, do hereby certify that the |
| 7 | foregoing pages comprise a full, true and correct transcript |
| 8 | taken in the matter of Automotive Parts Antitrust Litigation, |
| 9 | Case No. 12-02311, on Wednesday, April 19, 2017. |
| 10 | |
| 11 | |
| 12 | *s/Robert L. Smith* |
| 13 | Robert L. Smith, RPR, CSR 5098 Federal Official Court Reporter |
| 14 | United States District Court Eastern District of Michigan |
| 15 | |
| 16 | |
| 17 | Date:  05/03/2017 |
| 18 | Detroit, Michigan |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |