UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

_____

In re: All Auto Parts Cases

_____

THIS DOCUMENT RELATES TO:

ALL AUTO PARTS CASES
_____/

MASTER FILE NO. 12-md-02311
HON. MARIANNE O. BATTANI

2:12-md-02311-MOB-MKM

# OPINION AND ORDER REGARDING DEFENDANTS' AND OEMs' OBJECTIONS TO THE SPECIAL MASTER'S ORDER COMPELLING PRODUCTION OR SETTLEMENT AGREEMENTS AND SETTLEMENT COMMUNICATIONS

This matter is before the Court on several objections to the Special Master's order of January 25, 2017. (Doc. 1649 (Daimler Domestic Entities' Objection); Doc. 1650 (Defendants' Objection); Doc. 1655 (Ford's Objection); Doc. 1656 (Certain OEMs' Objection)). With the exception of the objection filed by the Daimler Domestic Entities, which will be addressed separately, the objections consist of similar arguments, and the Court discusses them collectively for purposes of this opinion. Defendants and certain subpoenaed entities contend that the Special Master erred by directing production of settlement-related communications and settlement agreements. Pursuant to notice, interested parties appeared for a hearing on the objections on May 16, 2017. As discussed more fully below, the Special Master's Order is **REVERSED IN PART** and **AFFIRMED IN PART**.

**I.  BACKGROUND**

In July and August of 2015, a comprehensive subpoena was served on the Non-Party Original Equipment Manufacturers and their affiliated entities (collectively, "OEMs"). (Doc. 1187, Exh. 2). By Request No. 31 of the subpoena, the serving parties sought:

> All Documents relating to Your or other OEMs' negotiations or Communications with any of the Defendants or other Components or Assemblies suppliers in connection with Defendants' and other Components or Assemblies suppliers' conduct at issue in MDL No. 2311 and Documents Defendants or other Components or Assemblies suppliers provided to You or other OEMs, in connection with the facts described in any Plaintiffs' Complaints.

By a letter dated December 18, 2015, certain of the OEMs objected to Request No. 31 on the basis that any communications between OEMs and Defendants could be "obtained directly from the Defendants themselves." Further, the OEMs contended that, "to the extent the request goes beyond such communications, such information would be unequivocally privileged." (Doc. 1187, Exh. 7).

On January 19, 2016, Automobile Dealer Plaintiffs ("ADPs"), End-Payor Plaintiffs ("EPPs"), Truck and Equipment Dealer Plaintiffs ("TEDPs"), The State of Florida, and The State of Indiana (collectively, "Plaintiffs") moved to compel the OEMs to produce materials sought by Request No. 31 of the subpoena. (Doc. 1187). Defendants and certain OEMs responded (Docs. 1216, 1227), Plaintiffs replied (Doc. 1254), certain OEMs filed additional oppositions (Docs. 1519, 1528, 1534, 1536), Plaintiffs filed a supplemental statement (Doc. 1550), and a hearing was held before the Special Master on December 9, 2016.

The Special Master, noting that evidentiary privileges are to be narrowly construed, concluded that "the discussions that occurred at the initial meetings where

the defendants disclosed to the original equipment manufacturers the existence of a conspiracy . . . are not settlement negotiations." (Doc. 1572, pp. 7-9). In further explanation, the Special Master stated that "once the conspiracy has been identified, once the wrong has been described, anything after that is settlement negotiations." (Id., p. 10).

With regard to settlement agreements, the Special Master concluded that "[e]ven under Goodyear Tire [& Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 980 (6th Cir. 2003)] a settlement agreement is not subject to exclusion based upon privilege." (Id., p. 7). Acknowledging Defendants' and the OEMs' position that settlement agreements fall outside the scope of Plaintiff's motion to compel, the Special Master concluded that "in the interest of time . . . I am going to order that the settlement documents be produced." (Id., p. 16). The Special Master further held that Defendants and the OEMs "can take the entire matter before Judge Battani on the relevancy of the settlement production and my order that they be produced." (Id.).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 53(f) provides that the Court shall decide *de novo* all objections to the Special Master's findings of fact, unless the parties otherwise stipulate, and shall also decide *de novo* objections to the Special Master's conclusions of law. See Fed. R. Civ. P. 53(f)(3), (4). (See also Doc. 792 (Order Appointing Master)). In contrast, objections to the Special Master's rulings on procedural matters may be set aside only for abuse of discretion. Fed. R. Civ. P. 53(f)(5).

Issues regarding privilege are legal questions subject to *de novo* review. In re Grand Jury Proceedings Oct. 12, 1995, 78 F.3d 251, 253-54 (6th Cir. 1996). With

regard to the relevance of settlement agreements, the Special Master's ruling was made "in the interest of time" and with the express reservation that objections could be taken up before the Court. (Doc. 1572, p. 16). Accordingly, the Special Master did not address the substance of the Parties' contentions regarding the relevance of settlement agreements, and the Court reviews this issue *de novo*.

### III.    ANALYSIS

Plaintiffs seek materials relating to negotiations or communications between the OEMs and Defendants or other suppliers in connection with the allegations at issue in this dispute. Defendants and the OEMs object to producing communications made in furtherance of settlement, citing the "settlement privilege" adopted by the Goodyear Court. In addition, Defendants and OEMs object to producing settlement agreements on the basis that the OEMs' and Defendants' interests in the confidentiality of their settlement agreements and the public policy encouraging settlement outweigh the agreements' relevance to these proceedings.

Further, the Daimler Domestic Entities object to the Special Master's order, contending that all subpoenaed entities except the "core" OEMs were "carved out" by the Court during the June 23, 2016 hearing regarding the Special Master's order of April 20, 2016.

#### A.    Settlement Communications

Defendants and the OEMs assert that, by requiring production of materials evidencing discussions at "initial meetings," the Special Master's order misapplies the Sixth Circuit settlement privilege recognized in Goodyear. Plaintiffs assert that the "initial meetings" threshold is proper.

4

"[C]ommunications made in furtherance of settlement are privileged." Goodyear, 332 F.3d at 983. This "settlement privilege" serves an important public interest because "[p]arties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination." Id. at 980. Moreover, settlement communications are of dubious probative value. Id. at 981, 983 (observing the "inherent questionability of the truthfulness of any statements made [in settlement negotiations]," which "may be motivated by a desire for peace rather than from any concession of weakness of position").

In determining whether a communication is protected by settlement privilege, the question is "whether the particular communication was authored or created for the purpose of settlement negotiations." Thornton v. State Farm Mut. Auto Ins. Co., No. 1:06-cv-00018, 2006 WL 3499986, at *3 (N.D. Ohio Dec. 5, 2006). See also Allen Cnty. v. Reilly Indus., 197 F.R.D. 352, 354 (N.D. Ohio 2000) (holding that letters "generated in the course of settlement discussions between counsel" were privileged).

Goodyear protects settlement communications from discovery whether they "are done under the auspices of the court or informally between the parties." Snap-On Business Solutions, Inc. v. Hyundai Motor America, 2011 WL 6957594, at *1 n.2 (N.D. Ohio Feb. 3, 2011) (quoting Goodyear, 332 F.3d at 980). "There is no requirement that the privileged communication be between adverse parties." Biolumix, Inc. v. Centrus Int'l, Inc., No. 08-11418, 2012 WL 6015896, at *5 (E.D. Mich. Nov. 14, 2013).

The Special Master directed the OEMs to produce "[d]ocuments evidencing discussions or exchanged [*sic*] between OEMs and automotive parts suppliers at initial

meetings concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent, as well as descriptions of parts involved and of the wrongful acts of the conspirators." (Doc. 1622). In contrast, the Special Master ruled that "[d]ocuments analyzing damages caused by the conspiracy, created for the purpose of reaching a settlement, that were exchanged between OEMs and automotive parts suppliers, are settlement communications protected from production by the Sixth Circuit settlement privilege and will not be produced." (Id.).

On the basis of the law set forth above, the Court reverses the Special Master's order to the extent that it directs the OEMs to produce any materials reflecting "communications made in furtherance of settlement." The settlement privilege may encompass discussions "concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent," so long as those communications were made in furtherance of settlement.

While the Court sympathizes with the Special Master's attempt to craft a bright-line rule, the "initial meetings" threshold fails to ensure proper application of the Sixth Circuit settlement privilege. Speaking in generalities, the OEMs and Defendants contended that initial meetings, in which suppliers proffered facts regarding their role in the conspiracy, (i) were held only after execution of confidentiality agreements and (ii) were intended to resolve potential claims by the OEMs without litigation. Although the existence of a confidentiality agreement does not preclude discovery, such an agreement signals the negotiating parties' intent that communications made under the auspices thereof would not be made except in furtherance of settlement.

6

Moreover, Goodyear does not distinguish between factual proffers and discussions regarding damages. Plaintiffs assert that Goodyear protects "the back and forth exchange of potential terms and conditions of settlement" but does not protect "descriptions of the suppliers' conspiracy." (Doc. 1681, p. 7). This distinction does not comport with the rationales cited by the Goodyear Court, including the unreliable nature of factual assertions made during settlement negotiations. Goodyear, 332 F.3d at 980 ("What is stated as fact on the record could very well not be the sort of evidence which the parties would otherwise actually contend to be wholly true. That is, the parties may assume disputed facts to be true for the unique purpose of settlement negotiations. The discovery of these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement.") (quoting Cook v. Yellow Freight System, Inc., 132 F.R.D. 548, 554 (E.D.Cal.1990)).

Accordingly, the OEMs are entitled to assert settlement privilege over any communication made in furtherance of settlement. The order of the Special Master is reversed to the extent that it directs the OEMs to produce any such communication.

### B. Settlement Agreements

Defendants and the OEMs assert that the Special Master erred by requiring production of "settlement agreements between OEMs and automotive parts suppliers." The objecting parties contend that settlement agreements are outside the scope of Plaintiffs' motion to compel, that the agreements are irrelevant, and that Plaintiffs' need for the agreements is outweighed by the negative impact on present and future settlement negotiations.

7

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C). In addition, a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d).

The Goodyear settlement privilege does not extend to the settlement agreement itself. QSI–Fostoria, D.C., LLC v. BACM 2001–1 Central Park West, 2006 WL 2010791 at *2 (N.D.Ohio 2006) (the settlement privilege "does not extend beyond actual negotiations to the terms of the final [settlement] agreement").

Rule 26 demands a "balancing of competing interests" in determining if discovery is appropriate. Flagg ex rel. Bond v. City of Detroit, 268 F.R.D. 279, 284 (E.D. Mich. 2010). "[W]here a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies, the discovering party will be required to demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would

cause either the other party or the interests cited by it." Apex Oil Co. v. DiMauro, 110 F.R.D. 490, 496 (S.D.N.Y. 1985). The Court may decline to compel production of "sensitive, albeit unprivileged, material." Johnson v. Nyack Hosp., 169 F.R.D. 550, 562 (S.D.N.Y. 1996).

The Special Master directed the OEMs to produce "[s]ettlement agreements between OEMs and automotive parts suppliers." (Doc. 1622). During the hearing on Plaintiffs' motion to compel, the Special Master made clear that his ruling regarding settlement agreements was being made "in the interest of time" and with the understanding that the Parties could "take the entire matter before" this Court. (Doc. 1572). Accordingly, the Court will address *de novo* the relevance and proportionality of compelling production of the settlement agreements.

Plaintiffs assert that the requested settlement agreements are relevant to: (i) the "practices and mechanics of OEMs' commercial relationship with their suppliers," (ii) "post-conspiracy modifications of collusive rates," (iii) potential bias of OEM witnesses, (iv) discovery of additional materials referenced in the agreements. (Doc. 1680, pp. 17-18). In further explanation, Plaintiffs contend that the settlement agreements are likely to contain descriptions of Defendants' and the OEMs' commercial relationship, as well as Defendants' conduct at issue in the present case. Moreover, Plaintiffs submit that the term "burden" as used in Rule 26 does not encompass commercial confidentiality concerns.

In contrast, Defendants and the OEMs question Plaintiffs' relevance arguments and express concerns regarding the "chilling effect" of compelling OEMs to produce settlement agreements. In particular, Defendants assert that Plaintiffs "do not need

settlement agreements to show price changes in the 'post-collusion' period because that information is available from an alternative source: Defendants' and OEMs' transactional data." (Doc. 1692, p. 2). Further, Defendants and the OEMs assert that the settlement agreements "reflect a myriad of highly sensitive business considerations," the production of which would "serve to discourage such settlement in the future." (Doc. 1655, p. 9). Finally, the OEMs emphasize that a third party subpoena "must take reasonable steps to avoid imposing undue burden on the third party." (Doc. 1694, p. 6 (citing Fed. R. Civ. P. 45(d)(1)). Defendants and the OEMs contend that the term "burden" as used by Rule 26 and Rule 45 does take into consideration commercial confidentiality concerns.

Weighing Plaintiffs' need for the settlement agreements against the detrimental side-effects of compelling production, the Court finds that to order production would be disproportionate to the needs of this case, and would impose an undue burden on the subpoenaed entities. Plaintiffs fail to demonstrate that the settlement agreements contain relevant information that could not be obtained from a less obtrusive source. Accordingly, the Court declines to compel production of settlement agreements between the OEMs and suppliers. The order of the Special Master is reversed to the extent that it directs the OEMs to produce any such agreements.

### C. Daimler Entities' Objection

The Daimler Domestic Entities object to the Special Master's Order on the basis that the Court's June 23, 2016 Order from the bench "set aside" discovery against all the subpoenaed parties other than six "core" OEMs. (Doc. 1649, p. 2). Review of the June 23, 2016 hearing and the surrounding context reveals that the "carve-out" at issue

applied only to the Rule 30(b)(6) depositions that were the focus of the Special Master's order of April 20, 2016. (See Doc. 1294).

Oral argument during the June 23, 2016 hearing, including by counsel for the Daimler Entities, centered on the burden of preparing and producing Rule 30(b)(6) deponents. (See, e.g., Doc. 1405, pp. 58, 59). At the conclusion of this hearing, the Court directed the parties "to submit Rule 45 subpoenas with an outline of the questions to be asked to the larger non-party groups" but "exclude[d] the Daimler Trucks and all of the non-core groups and the rest of the manufacturers." In provisionally excluding the non-core groups from Rule 30(b)(6) depositions, the Court did not intend to impose a general embargo of all discovery directed to these entities.

For these reasons, the Special Master's Order remains applicable against all subpoenaed entities.

### IV. CONCLUSION

As discussed above, the OEMs are entitled to assert settlement privilege over any communication made in furtherance of settlement. In addition, the Court declines to compel production of settlement agreements between the OEMs and suppliers. The Special Master's Order is **REVERSED** to the extent that it directs otherwise. Finally, the Special Master's Order applies to all subpoenaed entities and is **AFFIRMED** in this regard.

**IT IS SO ORDERED.**

Date:  June 19, 2017                                    s/Marianne O. Battani
                                                        MARIANNE O. BATTANI
                                                        United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on June 19, 2017.

s/ Kay Doaks
Case Manager