```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION
                            —    —    —
 3
      IN RE: AUTOMOTIVE PARTS
 4    ANTITRUST LITIGATION
      _____
 5                                       Case No. 12-02311
      IN RE: OCCUPANT SAFETY SYSTEMS     Case No. 12-00600
 6    _____
                                         Hon. Marianne O. Battani
 7    THIS DOCUMENT RELATES TO:

 8    All Actions
      _____/
 9

10         OCCUPANT SAFETY SYSTEMS DISCOVERY PLAN AND CLASS
                      CERTIFICATION SCHEDULE
11
                BEFORE SPECIAL MASTER GENE ESSHAKI
12           Theodore Levin United States Courthouse
                  231 West Lafayette Boulevard
13                      Detroit, Michigan
                     Friday, August 25, 2017
14

15    APPEARANCES:

16    For the Plaintiffs:   VICTORIA ROMANENKO
                            CUNEO, GILBERT & LaDUCA, L.L.P.
17                          507 C Street NE
                            Washington, D.C.   20002
18                          (202) 789-3960

19
                            WILLIAM REISS
20                          ROBINS KAPLAN, L.L.P.
                            399 Park Avenue,Suite 3600
21                          New York, NY 10022
                            (212) 980-7400
22

23

24

25
```

Motion Hearing • August 25, 2017

**2**

```
 1    APPEARANCES:
      (Continued)
 2
      For the Defendants:   MARK A. MILLER (via telephone)
 3                          BAKER BOTTS, L.L.P.
                            1299 Pennsylvania Ave NW
 4                          Washington, D.C. 20004
                            (202) 639-7714
 5
                            STERLING MARCHAND
 6                          1299 Pennsylvania Ave NW
                            Washington, D.C. 20004
 7                          (202)639-1113

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
              To obtain a copy of this official transcript, contact:
25                Robert L. Smith, Official Court Reporter
                  (313) 964-3303 • rob_smith@mied.uscourts.gov
```

12-02311

1 | TABLE OF CONTENTS

2 |

3 |                                                    Page

4 | Objections to Discovery Schedule

5 | Motion by Ms. Romanenko............................ 5
6 | Response by Mr. Marchand..........................14
   | Reply by Ms. Romanenko............................19
7 | Ruling by the Special Master......................23

8 | ARGUMENT REGARDING DISPUTE NO. 3

9 | Motion by Mr. Reiss...............................27
   | Response by Mr. Miller............................33
10 | Reply by Mr. Reiss................................37
   | Ruling by the Special Master......................41

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1    Detroit, Michigan

2    Friday, August 25, 2017

3    at about 10:03 a.m.

4                          —   —   —

5              (Special Master and Counsel present.)

6              SPECIAL MASTER ESSHAKI:  Good morning.  This is

7    Gene Esshaki.  Who is on the line please?

8              MR. MILLER:  Good morning.  This is Todd Miller,

9    Your Honor, from Baker & Miller, for Defendant Tokia Rika.

10             SPECIAL MASTER ESSHAKI:  Okay.  All right.  Before

11   we start, how do you want to address this?

12             (An off-the-record discussion was held at

13             10:03 a.m.)

14             SPECIAL MASTER ESSHAKI:  All right.  Then we will

15   commence.

16             MR. MILLER:  Your Honor, if I may, I can't hear the

17   others when they speak, and that may be okay because -- well,

18   no, it won't be if they are --

19             SPECIAL MASTER ESSHAKI:  They were not speaking

20   into the microphone so that maybe you will be able to hear

21   them once they speak into the microphone.

22             Ms. Romanenko, would you please identify yourself

23   for the record?

24             MS. ROMANENKO:  Yes, Your Honor.

25   Victoria Romanenko for automobile dealer plaintiffs.

1        SPECIAL MASTER ESSHAKI:  Can you hear that?

2        MR. MILLER:  Yes, Your Honor, not well, but I can

3  hear it.

4        SPECIAL MASTER ESSHAKI:  All right.  Very good.

5  There's not much I can do at this point so --

6        MR. MILLER:  Understood.

7        SPECIAL MASTER ESSHAKI:  This is the matter of

8  In re: Automotive Parts Antitrust Litigation, Master

9  Case 12-md-02311; In re: Occupant Safety Restraint Systems.

10  This matter relates to direct purchaser action, dealership

11  action, end payor action, Case Nos. 2:12-cv-00600, 00601,

12  00602, 00603.  And this concerns the occupant safety

13  restraint systems defendants' discovery program.

14        We have Ms. Romanenko at the podium ready to

15  address on behalf of the automobile dealer plaintiffs their

16  position with respect to the proposed discovery program.

17        So, Ms. Romanenko, would you please proceed?

18        MS. ROMANENKO:  Sure.  Your Honor, we are here

19  today on a very simple premise.  Four years of discovery is

20  enough.  It is much more than enough when we are talking

21  about a group of small businesses who neither carried out the

22  conspiracy here nor even interacted with any of the

23  conspirators.  Four years is four times the amount allowed

24  for in Judge Battani's practice guidelines which calls for

25  6 to 12 months of discovery even in complex cases.  It's

1    certainly enough time to have taken all of the discovery

2    defendants could possibly come up with.

3           And the dealership plaintiffs have produced an

4    enormous amount to the defendants in this case.  They have

5    made 68 document productions and five rounds of data

6    productions.  They have produced close to a million pages of

7    documents and hundreds of thousands of data points.  And

8    these are documents often covering over 15 years of business

9    operations that frequently had to be gathered and copied by

10   hand.

11          They are documents that contain sensitive customer

12   and business information that took hundreds of hours to

13   review and redact, and on top of all of this, dealership

14   plaintiffs have also given hundreds of hours of depositions

15   which is in addition to everything defendants got from over

16   100 depositions in deal files in third-party dealer

17   discovery.

18          So every time any of these discovery events

19   occurred over the course of the last four years, dealership

20   employees have gotten pulled off of their jobs, the

21   dealerships' businesses have been interrupted, they have lost

22   enormous amounts of time and resources running around getting

23   this information for defendant.

24          Over the course of the last four years my clients

25   have had to answer numerous sets of duplicative discovery

1    requests, they have had to litigate often duplicative and

2    ultimately unsuccessful motions to compel from the

3    defendants, all of which have taken up hundreds of needless

4    hours of interviews, briefing and hearings.

5          And so in light of all of this burdensome discovery

6    that the dealerships have already undertaken and all of the

7    time and expense that have accompanied it, I ask the

8    defendants what more do you need?  Nothing, they came up with

9    nothing.  And I have been asking them that question for

10   months and they have no answer, and that's particularly

11   notable because they had been taking my clients' depositions

12   since July of last year.  They know what's happening in this

13   case.  They have participated in discovery, they've obviously

14   reviewed the documents and data, and yet they can't come up

15   with anything else that they need.

16          Typically, by the time depositions are taken, a

17   litigant should know what evidence he has, what he's going to

18   say in his summary judgment and class certification motions,

19   and, of course, what else he needs, if anything.  So the only

20   conclusion that we can come to when the defendants have

21   nothing to say on the topic of what else they need is that

22   there is nothing.  And that doesn't surprise me, Your Honor,

23   because these defendants said at our very first meet and

24   confer that indirect purchaser discovery was essentially

25   over, and I agree.

1    Well, now they say, well, even though we haven't

2    identified anything else we need and we haven't been diligent

3    in pursuing dealer discovery, we want an extra year of

4    discovery, and we don't have to identify what else we need

5    that time for.

6    Well, as Your Honor would anticipate, the courts in

7    this district disagree.  For instance, the Court in Sango v.

8    Johnson in the Eastern District of Michigan denied further

9    discovery because, quote, while Sango argues he needs

10   additional discovery in order to properly respond, he does

11   not identify what that discovery might be.

12   The Court in Dott Acquisition, another Eastern

13   District of Michigan case, denied a request for additional

14   discovery when discovery had been open 16 months, that's less

15   than half the time that dealer discovery has been open here,

16   saying the party asking for more, quote, does not identify

17   with specificity exactly what additional discovery it needs

18   to take, and, quote, there has already been an

19   extraordinarily long discovery period.

20   That's exactly the situation here.  They haven't

21   identified what else they need, so they cannot demand another

22   year of discovery.

23   And if there was something they really needed, they

24   would have asked for it by now rather than saying that they

25   needed a year to come up with it.

1          As one judge has said in one of the cases we cited

2     to Your Honor in our brief, my experience has been that when

3     parties don't get what they want in discovery, they seldom

4     let a day pass, let alone two months, and certainly not a

5     year, Your Honor.  When they needed something in the past, we

6     heard about it right away.  They were requesting and

7     litigating discovery, they were taking depositions, things

8     were going on every day.  Now all of that has nearly come to

9     a stop.

10          As the Court in English v. Cowell said about

11     discovery that comes late in the case like they are

12     proposing, the vast bulk of plaintiffs' discovery requests

13     are either irrelevant, duplicative, or attempts at

14     discovering information previously denied in a prior motion

15     to compel.  And this is important, the insistence of a

16     trickle of valid discovery requests does not warrant

17     plaintiffs to continue what has no doubt become an unduly

18     oppressive and burdensome pattern of discovery tactics.

19     That's exactly the same thing we have here.  All we can

20     expect from another year of discovery is more unfounded,

21     irrelevant requests that arrive too late in the litigation,

22     more duplicative requests, more duplicative motions to compel

23     that don't gain anything of value for them and cost the

24     dealerships money and time to litigate.

25          And Judge Battani obviously agrees, otherwise she

1   wouldn't have stated in her practice guidelines that

2   discovery, even in complex cases, should last no more than

3   6 to 12 months because she understands, as we all do, as the

4   other judges in this district do, that after discovery gets

5   past a certain point, there is nothing new left to request or

6   litigate.

7           If there was a legitimate request, it would have

8   been made by now.  They have had our discovery plans since

9   April, so even that time period has passed and we haven't

10  gotten anything from them.  Any discovery made past that

11  particular point is merely oppressive rather than productive.

12  It is just a tactic, it is no longer a search for truth.

13          And if we want proof that that's the case, we need

14  to look no further than the AVPR action where the motions to

15  compel were all denied but only after attorneys and

16  plaintiffs spent hundreds of hours on interviews,

17  investigations, briefing and arguing in addition to having to

18  hire an expensive expert.  And it is notable that in that

19  case, the major motion made, the one demanding the general

20  ledger production, which we all remember, just sought to

21  relitigate the same issue already decided twice in wire

22  harness, whether incentives were relevant.

23          Even in AVRP the defendants made what they called

24  their supplemental request a month after the discovery plan

25  was entered.  They didn't ask for another whole year as the

1    OSS defendants are doing here.

2         So there's no doubt that the dealerships would be

3    unjustifiably burdened by the extension of discovery for yet

4    another year until October of 2018 which would again require

5    hundreds of hours of interviews and research as well as

6    gathering and reviewing sensitive documents and data in

7    addition to lost employee time once again taken from running

8    the business.

9         The dealerships aren't able to properly organize or

10   store their documents because they could be requested at any

11   time.  They have to make every long-term plan around the

12   possibility that they could get hit with another meritless

13   discovery request.  This influences every decision about

14   issues ranging from document storage to employee training and

15   hiring to sales.

16        In addition, dealerships would be burdened in

17   trying to prepare for class certification briefing and could

18   likely be prevented from meeting the deadlines that the Court

19   has set, which, as Your Honor will recall, has been something

20   that Your Honor has said you can't change.

21        Letting defendants wait until the eve of dealers'

22   class certification motions to start serving more requests

23   is, of course, going to derail the dealers' work on class

24   certification motions and force them to focus on these new

25   requests if they wait until sometime next year, two weeks

 1    before or four weeks before the motions for class

 2    certification are due.  And what's going to happen is that

 3    this is simply going to be allowing pure gamesmanship to

 4    undermine the dealers' preparation of their class certificate

 5    brief.

 6            As one court said, nor would it be fair to require

 7    defendants to respond to further discovery at this late date.

 8    The purpose of setting a limit on discovery is to assure both

 9    sides an opportunity immediately before trial to engage in

10    ordinary final trial preparation uninterrupted by a flurry of

11    midnight discovery.  Allowing further discovery would both

12    frustrate this purpose and the obligation of the court to

13    secure the just, speedy, and inexpensive determination of

14    every action.

15            So if a litigant has discovery that it's seeking,

16    it needs to ask for it long before the parties are trying to

17    prepare dispositive motions for which that discovery is being

18    sought.  And frankly, if they ask for it so close to class

19    certification, they may not even get it in time to use it in

20    class certification briefing.  It is just going to be

21    something with no value to outweigh the burden.  They can't

22    save it up for a year and drop it on us as we are trying to

23    brief class certification.  It is just extremely burdensome

24    and not fair.

25            All of which is to say, Your Honor, discovery has

1    to have reasonable limits.  As the Supreme Court said,

2    discovery, like all matters of procedure, has ultimate and

3    necessary boundaries.  And as another court stated, the

4    discovery rules are not an excursion ticket to an unlimited,

5    never-ending exploration of every conceivable matter that

6    captures an attorney's interest.  And, Your Honor, after four

7    years, we've reached those necessary boundaries that the

8    Supreme Court is talking about.  We can't just have another

9    year of this.

10           We have agreed to give the defendants a discovery

11   deadline that's 7.5 months, that's within Judge Battani's

12   range, from the time they first got our discovery plan.

13   That's more than enough time, Your Honor.

14           Thank you.

15           SPECIAL MASTER ESSHAKI:  Thank you very much.

16           Anyone else on the plaintiffs' side wish to address

17   this?

18           (No response.)

19           SPECIAL MASTER ESSHAKI:  Okay.  Counsel, would you

20   please approach the -- and identify yourself.

21           Mr. Miller, can you still hear us?

22           (A recording from the conference call stated the

23           chairperson has disconnected, the conference will

24           now end.)

25           SPECIAL MASTER ESSHAKI:  Ms. Romanenko, I think you

Motion Hearing • August 25, 2017

**14**

```
 1    have insulted him.
 2            MS. ROMANENKO:  I thought I put him to sleep.
 3            MR. MARCHAND:  Okay.  Well, good morning, Your
 4    Honor.  My name is Sterling Marchand.  I'm counsel for the
 5    Toyoda Gosei defendants, but I'm also arguing these ADP
 6    discovery issues on behalf of Tokai Rika as well.
 7            Your Honor, we actually agree that this issue
 8    before the Court is very simple.  There is no dispute that
 9    defendants are entitled to additional discovery in this case,
10    and there is no dispute that whatever that additional
11    discovery is cannot duplicate what has already come before it
12    in terms of what has been certified on the ADPs.
13            The only dispute before this Court and for Your
14    Honor to decide is how long is a reasonable window for the
15    OSS defendants to have to conduct that additional discovery.
16    The plaintiffs propose -- the ADPs propose a cutoff that is
17    three months from now while the OSS defendants propose a
18    cutoff 12 months from now.  We are not talking about
19    limitless discovery.  We are not talking about years and
20    years of additional discovery by the OSS defendants.  We are
21    talking about three months versus 12 months.
22            Your Honor, I want to briefly discuss some of the
23    cases that the ADPs cited because frankly they are all
24    inapposite to the case here.  The ADP's counsel cited Sango
25    and In re Dott, both instances where the party seeking
```

1    additional discovery did so in the midst of motion for

2    summary judgment.  The party was arguing that they needed

3    additional discovery to rebut a motion for summary judgment.

4         In Sango, immediately following the language that

5    was quoted by ADP's counsel, the court said this is

6    insufficient to rebut a properly supported motion for summary

7    judgment, similarly to In re Dott.

8         That's not the case here.  There is no motion for

9    summary judgment before the Court.  We are not seeking to

10   prolong a decision on class certification because we need

11   additional discovery.  We are here trying to set the

12   discovery schedule at the outset.

13        For the same reason, the other cases cited by the

14   ADP counsel don't apply here.  They cite cases where the

15   parties sought extra discovery beyond the scheduled cutoff

16   date or the day before the cutoff date.  Again, we are here

17   to negotiate the discovery schedule at the outset, not to

18   seek additional time.

19        Counsel also cited to a case where the party asked

20   for discovery to be open literally indefinitely and, again,

21   we seek 12 months recognizing that there is a cutoff in

22   August of 2018 so that we can all be ready for the class

23   certification motion briefing that is due in October 2018.

24        Now, what the ADPs are essentially asking this

25   Court to do is to rule today without seeing any actual

1    additional discovery requests, that no matter how reasonable

2    and relevant those requests may be, they are too burdensome

3    merely because they were served after November 30th.  That is

4    neither fair nor appropriate, especially given the fact that

5    the ADPs have failed to articulate a real prejudice or burden

6    that would arise if the OSS defendants are entitled to

7    another nine months.

8            On the other hand, the burden to the defendants is

9    very real.  The plaintiffs' proposal gives us only three

10   months from today to complete supplemental discovery,

11   additional non-expert depositions and other discovery on the

12   ADPs.  This cuts off discovery for the ADPs merely 11 months

13   before the start of class certification briefing.

14           And, Your Honor, I'm not proposing that we save all

15   of our discovery and file it on the eve of the close of fact

16   discovery or on the eve of class certification, but what we

17   are asking for is a reasonable amount of time as discovery

18   proceeds in this case, as our depositions are taken, as other

19   discovery is collected, for us to assess what is needed to

20   defend our case both at class cert and at trial so that we

21   have sufficient facts that we are entitled to in this case.

22           The plaintiffs' proposal also cuts off discovery of

23   the ADPs while discovery on the other parties is ongoing.

24   So, again, they get the benefit of seeking additional

25   discovery on the defendants while we are not entitled to the

 1    same.

 2          This Court, Your Honor, has already struck the

 3    right balance between the defendants' rights to evidence to

 4    defend itself and the burden on the ADPs.  This Court has

 5    instructed us that we cannot issue duplicative discovery and

 6    that there be one 30(b)(6) deposition of each ADP across all

 7    40-plus cases.  That is the right balance.  But adopting the

 8    ADP proposal would unfairly tip the scales against the

 9    defendants.

10          The second point I want to make, Your Honor, is

11    that even if you were to adopt the ADPs' proposal of cutting

12    off their discovery in this case in three months, it would

13    have no effect on the burden on the ADPs.  They have cited

14    repeatedly a lack of predictability, that not knowing if a

15    discovery request is going to come across their desk results

16    in a burden, but they remain subject to discovery in dozens

17    of later filed cases.  So that lack of predictability would

18    exist whether the OSS defendants in this case have the rights

19    to seek it or whether it be a defendant in a later filed

20    case.

21          Additionally, the mere potential of an additional

22    discovery is not a real burden.  Only when actual discovery

23    is filed should this Court consider whether the actual

24    request is burdensome, weighing, as the rules dictate, the

25    needs of the parties against the burden, but there is no

1    motion to quash additional discovery, there are no additional

2    discovery requests before the ADPs presently.

3           And the other burdens that they describe lie in

4    what they have done to date in response to prior discoveries,

5    and there is certainly no dispute they have produced many,

6    many pages of documents and that discovery is burdensome in

7    litigation.

8           What I would point out to Your Honor is that this

9    case, at least in my experience, is unlike any other, and

10   that while Judge Battani's guidelines may dictate 6 to 12

11   months for typical discovery even in complex cases, we are

12   facing a situation where there are 40-plus cases and the

13   defendants are expected to coordinate certainly and to reduce

14   the burden, but the question is for these OSS defendants who

15   are now negotiating their discovery schedule what is a

16   reasonable time frame.

17          So the last point I want to make, Your Honor, and I

18   would welcome any questions if you have them, but we as OSS

19   defendants should not be required to identify what we need

20   ahead of time.  We certainly haven't identified anything to

21   date.  If we had, we would have served it.  And what we are

22   asking for is a reasonable amount of time not just to assess

23   all of the materials that the ADPs have produced to date and

24   the depositions that they have been subject to as recently as

25   a week ago, but also to see how this discovery proceeds, and

```
 1   if in the midst of a defendant -- an OSS defendant deposition
 2   a new fact is raised, or as our experts begin to engage on
 3   the data in preparation for class certification, if they have
 4   questions, we should be entitled to the right to seek the
 5   additional discovery.  And if it is duplicative or too
 6   burdensome, then certainly the ADPs have the right to come
 7   back and seek protection from that, but this Court should not
 8   rule prematurely that all additional discovery is
 9   automatically burdensome.
10           Thank you.
11           SPECIAL MASTER ESSHAKI:  Thank you, Mr. Marchand.
12           MS. ROMANENKO:  Your Honor, just very quickly?
13           SPECIAL MASTER ESSHAKI:  Yes, please,
14   Ms. Romanenko.
15           MS. ROMANENKO:  It's not the case that there is no
16   dispute that defendants aren't entitled to -- that defendants
17   are entitled to more discovery.  It's that in order to try to
18   compromise with them, we offered them a date that was seven
19   and a half months from the time that we started negotiating
20   the discovery plan in order to try to reach an agreement with
21   them, and they were obviously not amenable to it.
22           We don't think that the defendants are entitled to
23   more discovery after four years of litigation and after they
24   have already stopped basically serving anything new or coming
25   up with anything new or seeking more discovery.
```

1       They mention one deposition which took place later

2  because the designee was in the hospital, and that one

3  deposition is completed.  So there is nothing else that they

4  have identified that is going on that could possibly produce

5  more discovery requests from them.

6       Discovery requests can continue to flow while

7  discovery continues to flow because it's possible that that

8  discovery is going to give rise to more requests, but here

9  there is no discovery flowing, there is no discovery that's

10 been flowing.  Most of our documents and data were produced

11 in 2014 and 2015.  The depositions were taken last year, most

12 of them.  So anything that really flows from the discovery

13 that's been produced would have been asked about already.

14      They say that they want their experts to analyze

15 our documents and data.  Well, they have had it for years.

16 There's no reason that their experts shouldn't have analyzed

17 all of that.  And they have known for years that in this MDL

18 the dealers and the end payors, they buy cars, they don't buy

19 the parts, we are not litigating parts claims, they know that

20 these cases are coordinated.  The Judge said I can allow

21 discovery to start and I am.  The Judge said I need this to

22 move with more swiftness.  They've known that all of this has

23 been going on, and I'm sure they have had been looking at

24 this.  There is no reason to tack on another year to four

25 years in order to prolong this discovery.

```
 1              They say they are not asking for indefinite
 2     discovery, but five years of discovery on indirect purchasers
 3     like the dealers is basically indefinite.  I haven't seen
 4     that length of discovery in any of the cases that we looked
 5     at when we were researching this.  And, in fact, much shorter
 6     periods of discovery in some of the cases that we cited to
 7     Your Honor have been deemed to be too long, even less than
 8     two years.  So four years -- going past four years, the five
 9     years that they want, that is far, far too long.
10              And they keep saying we are only giving them three
11     more months.  Well, it is not just three more months.  First
12     of all, they knew about this four months ago, so we are
13     offering them seven and a half months from the time that we
14     started negotiating, and they knew that we were going to come
15     in here with this position when we first started negotiating.
16     They could have taken a look at anything else they felt like
17     they needed to look at and come up with any more requests.
18     And, you know, we are still here months later and we don't
19     have one single example from them of what it is that they
20     think they might need in the upcoming year, and the law is
21     you just can't get more time for discovery unless you say
22     what it is that you want it for because courts don't just
23     write a blank check to litigants; there must be some
24     boundaries and some level of predictability.  If they had
25     come up with something, that would be different, but they
```

1    simply haven't.

2         And in addition to the fact that they knew about

3    this four months ago, as I said, they have had the four

4    years, and the Judge has spoken to them, she has made clear

5    that this indirect purchaser discovery needs to all happen

6    together.  And it would be just disingenuous to think that

7    there are going to be 40 separate discovery periods after the

8    Judge said dealers and end payors buy cars, not parts, and so

9    it is going to be impossible to split things up into 40

10   discovery periods.

11        Now, they also say that we haven't identified a

12   burden, but basically what they are saying is they want

13   another year to try to generate discovery that will

14   inevitably, as in the case law that I read to Your Honor

15   earlier, be irrelevant, too late, duplicative.  That's just

16   what happens when you are four years into discovery on a

17   bunch of small businesses and you've run out of things to ask

18   for.  You know, the only thing you can do is relitigate

19   issues.  Like I said, that's what we saw in at least one of

20   the prior cases -- two of the prior cases, the AVRP and

21   bearings.

22        As far as discovery from other defendants, you

23   know, they could have put in their own statements.  They

24   knew -- I'm sure they knew this is going on.  The defendants

25   again have been told to coordinate.  We haven't heard from

```
1   any other defendants.  So it may well be that if there are
2   other defendants that we come across, they will agree that
3   there is nothing more to ask for unless they have identified
4   something.  So we can't say that it is acceptable to extend
5   discovery for another year for these defendants who haven't
6   identified anything else that they need because maybe some
7   other defendant will also want future discovery.  We have no
8   reason to believe that that's the case.
9           I think that's it.
10          SPECIAL MASTER ESSHAKI:  All right.  Ms. Romanenko,
11  thank you so much.
12          I have had an opportunity to review all of the
13  submissions by counsel, they were superbly prepared, as were
14  the oral arguments that were presented today, and have given
15  this a great deal of thought.
16          Some of the observations that I have are that there
17  had been an exceptional amount of discovery that has been
18  conducted in this case to date.  On the other hand, I must
19  concur with the defendants that having an open discovery
20  period is not in and of itself burdensome.  It is discovery
21  that may arise during that discovery period that is or could
22  be burdensome, but that can only be judged on a case-by-case
23  basis as the matters arise.
24          It may be that during the course of taking the
25  depositions of the occupant safety people an issue does arise
```

1    that was not known before that requires some discovery, a

2    document, something, an interrogatory.  To foreclose that now

3    in my mind is prejudicial to the OSS defendants.  We don't

4    know.  There may, in fact, be no discovery whatsoever taken

5    of the auto dealer plaintiffs during the discovery period

6    that is being requested by the OSS defendants.  I would

7    imagine if there is, it is going to be extremely limited.

8            Similarly, in the dozens of cases that will follow

9    the OSS defendants, the potential for additional discovery

10   goes down, will be much more limited, much more laser

11   focused.  Judge Battani and I have already ruled that there

12   will not be duplication of discovery in these cases.  So if

13   an issue arises in the OSS case that is discrete, that has

14   not been considered before, they need to have the right to

15   explore that issue.

16           On the other hand, if the OSS defendants want to

17   send out general interrogatories, or additional requests to

18   produce, or try and schedule a general deposition, I'm the

19   first barrier against that occurring and I will not permit

20   that.  I believe Judge Battani will absolutely withhold my

21   decision in that regard.

22           The issue today is not is discovery burdensome --

23   additional discovery burdensome.  The issue is the length of

24   discovery that the OSS defendants should receive.  If there

25   is burdensome discovery, we will address it when it arises.

1        Defendant has stated, and I intend to hold them to

2    this, that there will be reasonable rolling discovery with no

3    last-minute dumps on the plaintiffs in this case; 30 days

4    before the cert motion you are not going to be permitted to

5    do a discovery dump.

6        This is, in fact, the precedent-setting ruling

7    because there are other defendants that will be coming up and

8    they will also have the potential of having a small, discrete

9    issue arise in their particular case for which they should

10   have discovery, and to not have discovery would be highly

11   prejudicial in my mind and it should not be permitted.

12       Counsel for OSS defendants have indicated, and I

13   think he's absolutely accurate, there may be no new

14   discovery.  He does not know.  He cannot predict today.  In

15   fact, there may never be another request.  On the other hand,

16   there may be one, and I believe that request will be strictly

17   limited, laser focused, designed to catch a small, discrete

18   issue that was not previously known or touched upon in the

19   general discovery in this case.  And for that reason, I'm

20   going to accept the proposal of the OSS defendants, adopt

21   their discovery program, and deny the objections that were

22   filed by the automobile dealer plaintiffs in this regard.

23       Now, counsel, Mr. Marchand, would you please draft

24   an order, would you please include the magic language that it

25   is pursuant to the order appointing Special Master,

| | |
|---|---|
| 1 | appealable to Judge Battani within the time period provided? |
| 2 | I would like to ask anybody at this point while |
| 3 | everybody is still in the room, does this transcript need to |
| 4 | be sealed? |
| 5 | MS. ROMANENKO:  No. |
| 6 | MR. MARCHAND:  No. |
| 7 | SPECIAL MASTER ESSHAKI:  Sealing has been waived. |
| 8 | All right.  I thank you all for coming in.  I will see you I |
| 9 | guess it is the second Tuesday or third Tuesday in September. |
| 10 | The weather will be a little different then.  Thank you |
| 11 | everybody. |
| 12 | MR. MARCHAND:  Thank you. |
| 13 | SPECIAL MASTER ESSHAKI:  Ms. Romanenko, would you |
| 14 | please give my best regards to Mr. Cuneo? |
| 15 | MS. ROMANENKO:  I will. |
| 16 | SPECIAL MASTER ESSHAKI:  Thank you. |
| 17 | MR. REISS:  Your Honor, we have some couple issues |
| 18 | for the discovery plan. |
| 19 | SPECIAL MASTER ESSHAKI:  Oh, I'm sorry.  I'm sorry. |
| 20 | Please.  I thought we -- I thought this was the only issue. |
| 21 | I'm sorry. |
| 22 | MR. REISS:   Well, I think you will be happy to |
| 23 | hear that we at least with one of the defendants have |
| 24 | resolved one of the issues, so hopefully -- |
| 25 | SPECIAL MASTER ESSHAKI:  Identify yourself. |

```
 1          MR. REISS:  Yes.  My name is Will Reiss.  I
 2   represent the end payor plaintiffs.  I'm going to be speaking
 3   collectively today for the direct purchaser plaintiffs and
 4   the automobile dealer plaintiffs.
 5          MR. MARCHAND:  I don't mean to interrupt, but I
 6   understand that counsel for Tokai Rika did fall off the
 7   phone.  If you could dial back in, I think he should be able
 8   to listen into this portion.
 9          MR. REISS:  Let's keep him off -- I'm kidding.
10          (Telephone conference reconnected at 10:37 a.m.)
11          SPECIAL MASTER ESSHAKI:  Mr. Miller?
12          MR. MILLER:  Yes.  I'm very, very sorry.
13          SPECIAL MASTER ESSHAKI:  Well, Ms. Romanenko was
14   taken aback because she thought she insulted you.
15          MR. MILLER:  No, no, not today.
16          SPECIAL MASTER ESSHAKI:  Okay.  So obviously in the
17   past.  Okay.  You're back on.
18          Mr. Reiss is -- let me just catch you up to date.
19   I have denied the motion by -- the objections by the
20   automobile dealer plaintiffs to the discovery schedule
21   proposed by the OSS defendants.
22          Now Mr. Reiss is standing at the podium about to
23   make an argument on behalf of all of the plaintiffs, the
24   subject matter which I'm about to learn.
25          MR. REISS:  Great.  Yeah, and I will just summarize
```

 1    the issue.  This was actually in our discovery plan, this was

 2    issue number --

 3            MR. MILLER:  Will, can you somehow move closer?  I

 4    really cannot hear counsel when they are at the lectern.

 5            SPECIAL MASTER ESSHAKI:  You can step forward.  We

 6    are going to put the telephone by the speaker and see if that

 7    helps, Mr. Miller.

 8            Sir, identify yourself, please.

 9            MR. REISS:  Sure.  Again, my name is Will Reiss.

10            SPECIAL MASTER ESSHAKI:  Mr. Miller, is that

11    better?

12            MR. MILLER:  Much better.  Thank you very much.

13            SPECIAL MASTER ESSHAKI:  Please proceed.

14            MR. REISS:  Again, I represent the end payor

15    plaintiffs, and I'm speaking on behalf of all of the

16    plaintiffs, and this is in connection with what we have

17    labelled as dispute number three, it is in Roman numeral

18    Section II, number 2-C.  The gravamen of the dispute is the

19    date by which defendants should be required to produce all

20    documents pursuant to the discovery plan.

21            And as I alluded to earlier, we reached an

22    agreement earlier today with Toyoda Gosei, one of the two

23    remaining defendants, and I would like, if I could, to

24    briefly summarize the terms of that agreement, and if I

25    misstate something, I'm certain my colleague will correct me,

1   but we reached it kind of at the early morning stages so I

2   will do my best.

3        But the agreement is that Toyoda Gosei will be

4   obligated to produce documents in tranches.  And so the first

5   tranche or the first trigger date would be October 16th of

6   this year, and they would be required to produce all of their

7   central file documents, they would be required to produce all

8   documents from custodians who they have identified as

9   30(b)(6) witnesses.  We have noticed 30(b)(6) depositions of

10  both Toyoda Gosei and Tokai Rika.  And they would also be

11  required to produce full custodian productions from five

12  individuals who have been currently noticed in 30(b)(1)

13  depositions.  And then in addition, based on our choosing,

14  two additional -- they would produce full documents from two

15  additional custodians, and they would be limited to the 25

16  custodians that Toyoda Gosei had provided us with about a

17  year ago.

18       And then there would be a second tranche of

19  document production, and this would be ten additional

20  custodians to be named by plaintiffs and, again, this would

21  be limited to this initial list of custodians that Toyoda

22  Gosei provided us with.  And we would have a date by which

23  Toyoda Gosei is committing to produce all of its documents

24  and that would be by January 8th.

25       And we have also agreed to a deposition schedule of

1   sorts, and this is the part if I again get confused, please

2   correct me, but my understanding is we would commit to taking

3   our 30(b)(1) -- our 30(b)(6) depositions at some point after

4   November 15th.  We would take one 30(b)(1) deposition after

5   November 15th, two 30(b)(1) depositions after December 15th,

6   and then after January 15th it would be fair game for all of

7   our remaining 30(b)(1) depositions.

8           Did I get everything right?

9           MR. MARCHAND:  Very close.  I just want to clarify

10  one thing, which is that in that tranche one we agree to

11  seven custodians.

12          MR. REISS:  Correct.

13          MR. MARCHAND:  Seven custodians from the 25.  There

14  was one custodian that has been identified in the 30(b)(1)s

15  that has not been collected yet and so it would be very

16  difficult for us to meet that first date for that one

17  individual, but we have agreed to provide seven custodians

18  from the 25 that have been collected by that date.

19          MR. REISS:  So for the seventh we could perhaps

20  negotiate who the custodian is, and that's fine with us.

21          MR. MARCHAND:  Yes.

22          MR. REISS:  With respect to Tokai Rika, we were

23  disappointed that we were unable to reach an agreement with

24  them, and I will certainly let them speak to their position,

25  but my understanding is they suggested that they were okay in

1   principle but were not prepared to commit to certain dates,
2   and from our perspective that's troubling.  I mean, we spent
3   significant time and resources coming out today to argue to
4   the extent that we have disputes, and it sounds like those
5   disputes haven't been resolved.  And with Your Honor's
6   indulgence, I just wanted to explain why we think this is, in
7   fact, a generous deal.

8          So we served defendants, and in particular
9   Tokai Rika, with document requests back in 2015, so they have
10  had our document requests for well over two years.  They have
11  conceded that they identified a list of 35 custodians to us;
12  this is back a year ago in 2016.  And all we are asking for
13  here, as you have heard our arrangement with Toyoda Gosei, is
14  to produce a subset of those custodians of our choosing.
15  Again, Tokai Rika has conceded that they have collected
16  documents from these custodians, they've reviewed them, and
17  so they should certainly be ready to produce -- frankly be
18  ready to produce all of them but at a minimum a reasonable
19  subset, which for us reflects a significant compromise.  So
20  the prejudice to them from our perspective is non-existent.

21         And to the extent that there is an argument made
22  they didn't collect these documents or didn't produce these
23  documents, I think that is their own responsibility and their
24  own fault because they knew these custodians, they identified
25  them themselves, and we have been negotiating, we have

Motion Hearing • August 25, 2017

**32**

1    engaged in meet and confers.

2          Now, there is some allusion that Tokai Rika draws

3    in their papers that we somehow dropped the ball.  We served

4    document requests back in 2015 and we initially met and

5    conferred and then there was a succession of meet and confers

6    and that we stopped for a short period of time, and I'm not

7    going to deny that.  I mean, the Court entered discovery

8    orders and class cert orders in other cases and so we were

9    forced to prioritize those other cases.  But the fact of the

10   matter is that we reengaged with Tokai Rika back in May of

11   this year, so we have been negotiating with them for months.

12   And, again, these 35 custodians are custodians that Tokai

13   Rika has already selected and reviewed.  So it is not as if

14   we are asking for much more.  I think we have proposed some

15   additional custodians but it is not a significant additional

16   number.  We don't want to be in a position where we are here

17   today spending the Court's time and resources as well as ours

18   and we don't have a definitive agreement.  This works for

19   Toyoda Gosei, it frankly should work for Tokai Rika, and we

20   really don't see any good reason why it wouldn't.

21          And the last point that I want to make is when you

22   are looking at prejudice, there is really potential prejudice

23   for us.  So we have got a class cert deadline of October

24   17th, and I know that seems like that's a long time away, but

25   the fact of the matter is that these defendants are Japanese

 1   defendants, many of the documents are going to be produced in

 2   Japanese, so that requires us to translate the documents, to

 3   review the documents, and then get ready to notice

 4   depositions and take these depositions.

 5        And there was an argument that was made I think in

 6   the papers that this is a relatively small case, there are

 7   only two defendants left, but that's not quite accurate.  I

 8   mean, there are actually five defendants in the case right

 9   now.  Takata there is a stay because they have declared

10   bankruptcy, but we have two settling defendants, and

11   Tokai Rika and Toyoda Gosei are subject to joint and several

12   liability, which means that we have to take discovery of the

13   settling defendants, and the depositions we take of the

14   non-settling defendants and the documents we receive will

15   inform our depositions and discovery with the settling

16   defendants.

17        So it is still a quite large and complicated case,

18   and we should be entitled to sufficient discovery so that we

19   can meet our class cert deadlines and responsibilities.

20        Thank you, Your Honor.

21        SPECIAL MASTER ESSHAKI:  Thank you.

22        Mr. Miller, would you like to respond?

23        MR. MILLER:  Yes.  Thank you, Your Honor.  I won't

24   spend a lot of time correcting the very many

25   misrepresentations that were just made to you.  There are a

1      couple of salient points.

2             Tokai Rika has not indicated at any time that it

3      was not willing to work out an agreement with the plaintiffs

4      in a manner at this point similar to the ones that Toyoda

5      Gosei was suggesting.  But if you look at our papers, we were

6      suggesting that we would produce a number of custodians by a

7      certain date, it was by year end, and then finish up our

8      production, you know, after that.  So we had actually been

9      the one who had put in our papers a proposal to stagger and

10     prioritize.

11            The issue here right now -- and I do apologize

12     about spending the Court's time, I do apologize that I'm not

13     there live.  The idea originally had been that these

14     discussions just had taken place in the last couple days.

15     Plaintiffs just reached out to us late last night at 7:00

16     p.m.  They have yet to make a concrete proposal about how to

17     make this tranche thing work, and so we were not willing to

18     agree because, Your Honor, that would be buying a pig in a

19     poke.

20            But the real point here was that -- so I wasn't

21     there because Toyoda Gosei was going to handle the argument.

22     We were going to have counsel present but not someone who was

23     intimately involved in this, so I do apologize.  I have a

24     court hearing this afternoon in another state.

25            But anyway, the real point is that we are happy to

 1    discuss this with plaintiffs.  There is some practical

 2    realities.  We are not similarly situated to Toyoda Gosei.

 3    Each of us have our own issues and concerns when it comes to

 4    document review.  We don't have 25 custodians, Your Honor; we

 5    actually have 31.  Plaintiff has not just proposed a couple

 6    additional; they have actually proposed I believe it's 18

 7    additional custodians.

 8          But if we are just talking about our current scope

 9    of discovery, we left a meet and confer with just two open

10    issues essentially, and that was geographic scope and time.

11    And we decided to start because we knew we had an obligation

12    to respond to discovery, so we went ahead and started a year

13    and a half, 18 months ago to proceed to collect our documents

14    and start reviewing them.  So we are in the midst of that,

15    and it is just a matter of when can we be done with various

16    custodians.  We didn't do it on a -- we haven't been doing

17    our review sort of saying, okay, let's go get Mr. X's or

18    Ms. Y's documents, let's just review those and then move on.

19    It has been sort of a much bigger, you know, mass of

20    documents, if you will, electronically, and we are moving

21    forward, and we will have to adjust that somewhat, and we are

22    not complaining about that, we can, to focus in on whatever

23    custodians that we and plaintiffs may work out in terms of a

24    schedule.

25          But it just comes down to plaintiffs pull a date

 1   and time out of the air and say, okay, you have to be done by

 2   middle of September.  We were proceeding the pace with the

 3   schedule that we had proposed well over a year ago now, back

 4   in June of last year we had made a proposal, the defendants

 5   had, to the plaintiffs saying let's have our documents done

 6   by January, and so we committed those resources to have that

 7   done.  And I think, standing here today, I think we would be

 8   very close to that.  I don't know if we would hit it exactly,

 9   there might be a little bit of slippage, but, you know,

10   that's why our proposal was designed to address that

11   potential.

12          So having said all of this, again, I am sorry we

13   are in front of you today.  I don't think that, you know,

14   having just heard from plaintiff at 7:00 last night, having

15   told them that we need to have a more -- we can't just say

16   you can pick any custodians and have them done by X date.  We

17   need to know who you need because different custodians have

18   different volume of documents.  One of our key custodians

19   here has an incredible number of documents that have to be

20   gone through, and so we suspect that's someone they want

21   early and that would be an impossible task.

22          So that's really all we are talking about, Your

23   Honor, is just practicalities.  If plaintiffs are willing to

24   be flexible and work with us through those practicalities, we

25   are happy to work through with them and develop a tranching

1    schedule, if not identical to, at least broadly similar to

2    the agreement they have reached with Toyoda Gosei.

3                SPECIAL MASTER ESSHAKI:  Thank you, Mr. Miller.

4                MR. REISS:  May I respond?

5                SPECIAL MASTER ESSHAKI:  Mr. Reiss, please.

6                MR. REISS:  Thank you.  So just to be clear, when

7    we came here today originally, and we set this out in our

8    papers, we were prepared to argue that both Toyoda Gosei and

9    Tokai Rika should produce all of its custodial production by

10   the middle of September, and we still believe that's a

11   reasonable position.

12               Now, we negotiated with Toyoda Gosei and we reached

13   a compromise because we didn't want to burden the Court, and

14   frankly compromises are made and negotiations are made.  So I

15   just don't quite understand Mr. Miller's argument that we

16   somehow sandbagged him last night by requesting something

17   that was actually a better deal for him than what our

18   original position is.

19               And we are not asking him to reinvent the wheel on

20   custodians.  We are requesting that we be entitled to select

21   a subset.  I mean, we are talking about seven custodians

22   coming up in the next month and a half that are a subset of

23   the custodians that he proposed, that he says he's reviewed

24   and collected.  And if he hasn't reviewed and collected those

25   custodians, that frankly I think is his responsibility and we

1   shouldn't be forced to pay a price for that.  These are not

2   new custodians that are subject to some new list and

3   newfangled negotiations.  These are custodians that Tokai

4   Rika of its own volition chose to offer over a year ago, and

5   so the prejudice to them is minimal.

6        In fact, about a year ago, and they say this in

7   their papers, they proposed a discovery plan, it was actually

8   in the context of our negotiations with another defendant,

9   but they proposed a plan, and they in their plan offered to

10   produce all documents by January.  So we are not -- that's

11   what we are asking for.  We are not asking for anything

12   different.  We are just saying give us productions from some

13   of these custodians who you have already collected for and,

14   yes, allow us to chose from the list that you have given us.

15        So frankly I just don't understand the burden.  As

16   I alluded to, the burden for us is quite significant because

17   if we are not able to prioritize important custodians early

18   on in litigation, we could get sandbagged, and this has

19   happened in this litigation before.  In the auto bearings

20   case, the direct purchaser plaintiffs were in a situation

21   where just several months before class certification the

22   defendants produced millions of pages of documents and the

23   defendants requested the Court to extend the class

24   certification deadline, and I think we all know very well

25   that Judge Battani is not going to be inclined to do that and

 1    we don't want to be in a position to have to request that.
 2    We want a schedule that's going to be reasonable to both
 3    parties but that frankly gives us sufficient time to review
 4    the documents, to translate the documents, and we think that
 5    this offer that we have made to Toyoda Gosei that they have
 6    accepted is certainly more than reasonable and should be more
 7    than applicable to Tokai Rika.
 8                    SPECIAL MASTER ESSHAKI:  Stay right there, sir.
 9                    MR. REISS:  Sure.
10                    SPECIAL MASTER ESSHAKI:  Mr. Miller, response?
11                    MR. MILLER:  Yes, if I may, just a couple
12    sentences, Your Honor.  I think Mr. Reiss -- the big fallacy
13    in his statements are, first, he acts as if we should be done
14    by -- again, we're planning to be done by the middle of
15    September anyway.  We are not.  We didn't put on those
16    resources.  We don't think we should be prejudiced by the
17    fact that we never heard from them about our schedule which
18    is ahead of being completed in January for a year.  So the
19    company has spent an enormous amount of money, well over a
20    million -- we are in a million -- well over a million at this
21    point, I don't know the exact number but it may be in the
22    millions, to respond to their discovery, and we are doing it
23    in good faith and are using appropriate due diligence.  So
24    that's broad point one.
25                    Broad point two is we do have our custodians

```
 1    loaded.  I don't know why he keeps saying that.  We have
 2    collected their documents.  It is just that, as I explained,
 3    we didn't review them in a way that plaintiffs now find
 4    convenient.  That's not how we have been reviewing it.  We
 5    have to switch that a little bit, and again, as I said
 6    before, we are not complaining about that, we can switch that
 7    over.
 8            But there is a practical issue is that if you pick
 9    seven custodians, I mean, you could end up asking us to
10    produce 70 percent, I don't know if it is quite that high but
11    it might be close, 65 percent of all of our documents may
12    come from seven custodians only.  So if that's who plaintiffs
13    happen to pick, then we've got a problem in that we can't get
14    that done.  That's all we have been saying to plaintiff is
15    that we have to be practical here, and we are happy to be
16    flexible and practical and work it out consistent with both
17    of our needs.
18            We don't think we should -- we should be bearing
19    the cost of their silence while we went ahead and moved
20    forward.  We have been collecting and reviewing documents
21    throughout this period, but, again, we haven't done it on a
22    custodial basis.  So to the extent that they now say we want
23    Mr. X, we have to go determine is that something that can be
24    reasonably done in that time frame that they have identified.
25    That's all we are saying.  We are happy to work with them to
```

1   come up with that, but there has to be some recognition that,

2   you know, this isn't -- we don't just wake up tomorrow and

3   all of the documents are reviewed and ready to produced.

4           SPECIAL MASTER ESSHAKI:  Thank you, sir.

5           Mr. Reiss, how long would it take you identify the

6   seven custodians that you would be asking?

7           MR REISS:  I have my co-counsel here.  I think we

8   could come up with a list within the next week.

9           SPECIAL MASTER ESSHAKI:  All right.  That's what I

10  wrote down.  I'm going to give you one week to identify the

11  custodians that you want to take.  Then I want you to confer

12  with Mr. Miller and see if you cannot -- if you can come up

13  with a tranched system similar to the Toyota tranched system

14  that you just put on the record.

15          And, Mr. Miller, you talk about picking an

16  arbitrary deadline.  The problem is that what I'm left with

17  is having to pick an arbitrary deadline.  And as a

18  consequence, what I'm going to do is once the custodians have

19  been selected and you have been notified, I'm giving you one

20  more week to come up with a tranched plan in agreement with

21  Mr. Reiss.  If you cannot reach that agreement, I'm going to

22  tell you right now I'm going to take the Toyota agreement and

23  extend it by two weeks and that will be the final agreement.

24          Do you understand, Mr. Miller?

25          MR. MILLER:  I think I do, Your Honor.  So, again,

```
 1    I think our practical problem, if they identify -- again,
 2    they want to identify all Japanese custodians.  We obviously
 3    have a number of custodians who are in the U.S., our
 4    salespeople in the U.S., et cetera, and, you know, just
 5    because we don't have the same language difficulties with
 6    them, we are further along with review of them, we did
 7    suggest to them last night that we ought to be balancing that
 8    out in terms of number of the custodians they pick.
 9            So as long as -- we are happy to work that out as
10    long as there is flexibility in precisely the -- the precise
11    custodians that they pick.  If they want to just insist that
12    we -- you know, that they can just  lay down seven custodians
13    and we have to be done with those even by late October, that
14    could be a real problem for us, Your Honor, because that
15    could end up being -- that's almost all of our production.
16            SPECIAL MASTER ESSHAKI:  All right.  Well, if that
17    issue arises, then I suggest you bring that back to me and
18    let me know.  I have always found Mr. Reiss to be a
19    reasonable man.  And I've given both of you a roadmap of how
20    this is to proceed, and it is my hope that you can work that
21    out.  If you hit a bump and you hit a hiccup, I would
22    encourage you to negotiate around that and, if necessary, you
23    come back you come back to me.
24            MR. REISS:  Can I ask one point of clarification?
25    I understand we are going to be negotiating --
```

```
 1              SPECIAL MASTER ESSHAKI:  Seven days you identify
 2     the custodians.
 3              MR. REISS:  Yes.
 4              SPECIAL MASTER ESSHAKI:  Seven days you will have
 5     discussions with Mr. Miller about creating the tranched plan,
 6     and he will discuss with you if there is any particular
 7     custodian that presents a problem for him.  And I would
 8     like -- if he has identified somebody that presents a
 9     particular problem, I would like you to consider moving that
10     person or compromising in some way how you deal with that
11     custodian.  But at the end of that second seven-day period,
12     you are to come up with a tranched plan that is acceptable to
13     both sides, and if you do not, then the Toyota tranched plan
14     will be utilized adding two weeks to each tranche in the
15     Toyota plan.
16              MR. REISS:  Okay.  And just, again, to be clear, in
17     terms of the ultimate date by which the defendants have
18     committed to produce documents, I don't hear --
19              SPECIAL MASTER ESSHAKI:  In the Toyota plan I
20     believe you said that date was --
21              MR. REISS:  January the 8th.
22              SPECIAL MASTER ESSHAKI:  -- January 8th.  Add two
23     weeks.
24              MR. REISS:  Add two weeks.  Understood.  Okay.
25     Thank you.
```

Motion Hearing • August 25, 2017

```
 1          SPECIAL MASTER ESSHAKI:  Mr. Miller, are we all set
 2   sir?
 3          MR. MILLER:  Yes, Your Honor.
 4          SPECIAL MASTER ESSHAKI:  Any reason to have this
 5   record sealed?
 6          MR. REISS:  None here.
 7          SPECIAL MASTER ESSHAKI:  Is there any reason for an
 8   order at this point -- I guess we better prepare an order,
 9   submit it to Mr. Reiss so we've got it in writing.
10          MR. REISS:  Okay.
11          SPECIAL MASTER ESSHAKI:  Mr. Miller, we are going
12   to do an order, it will be submitted, we will have it in
13   writing so there a record of this.
14          Ms. Romanenko is looking to approach the bench
15   again so just hold on Mr. Miller.
16          MS. ROMANENKO:  Your Honor, I was looking back
17   through the deadlines that had been proposed by defendants in
18   light of Your Honor's ruling.  What they have proposed --
19   Your Honor said there wouldn't be any requests served four
20   weeks before class cert.  What they have proposed is that
21   fact discovery close --
22          SPECIAL MASTER ESSHAKI:  Wait, Counsel, I don't
23   believe I said that.  I think what I said is there is going
24   to be no dump, there is no discovery dump a month before the
25   class cert.  If they sent out a single interrogatory a month
```

1    before the class cert, I don't consider that to be a document

2    dump.  A document dump is where they would say we want

3    another hundred thousand documents or here is a set of 25

4    interrogatories all at once.  That's what -- I did not say

5    there will be no requests for the month preceding the cert

6    hearing, the cert motion.

7            MS. ROMANENKO:  So I think the concern is if we

8    stick with that plan, they -- let's say they propound a

9    couple of interrogatories or requests.  We are going to have

10   to research that, talk to almost 40 of our clients and give

11   them a response on the date that we also have to file all of

12   our class cert papers and our expert reports.  So these

13   things would be on top of one another and it would be another

14   thing to --

15           SPECIAL MASTER ESSHAKI:  What do you propose?

16           MS. ROMANENKO:  What I would request is to make the

17   date July 7th, 2018, which would allow us not to have to

18   respond to requests on the date that class cert things are

19   due and then to have to meet and confer and get motions to

20   compel while we are trying to brief class cert.  And I would

21   ask that we make July 7th, 2018 the date on which we would

22   end fact discovery, receive any additional supplemental

23   requests and have any dealer depositions be completed.

24           SPECIAL MASTER ESSHAKI:  Under the existing

25   schedule, when would that be?

1    MS. ROMANENKO:  Well, under the schedule that the

2    defendants have proposed, fact discovery wouldn't close until

3    two weeks before class cert, and additional requests could be

4    made five weeks before class cert, which means that we would

5    basically be looking at having to answer them right as we are

6    briefing class cert, and depositions wouldn't end until six

7    weeks before class cert.  So we are just asking to move it

8    back a few months.  It would still be next year, but it

9    wouldn't conflict as much with the class cert briefing.  And

10   we think in any event --

11       SPECIAL MASTER ESSHAKI:  So the class cert is

12   October?

13       MS. ROMANENKO:  October 18th.

14       SPECIAL MASTER ESSHAKI:  October 18th of 2018?

15       MS. ROMANENKO:  Yes.

16       SPECIAL MASTER ESSHAKI:  Okay.  So what you are

17   asking is under the existing proposal, approximately

18   October 12th -- October 2 -- oh, I guess five weeks prior to

19   that discovery would close, six weeks deps would end, and you

20   are asking to take that from a September time frame to a July

21   time frame?

22       MS. ROMANENKO:  Essentially, yes.  We are asking to

23   take the additional requests from a September time frame and

24   the end of depositions from -- they have proposed August 31st

25   to July, the beginning of July.

```
 1            SPECIAL MASTER ESSHAKI:  Sir?

 2            MR. MARCHAND:  If I can just have a minute here,

 3   Your Honor, to discuss?

 4            SPECIAL MASTER ESSHAKI:  Please.

 5            MR. MARCHAND:  Thank you.

 6            (An off-the-record discussion was held at

 7            11:07 a.m.)

 8            SPECIAL MASTER ESSHAKI:  Mr. Marchand.

 9            MR. MARCHAND:  Yes.  Thank you, Your Honor.  It

10   might be helpful, just so I understand, you are proposing to

11   moving all of the dates back eight weeks?

12            MS. ROMANENKO:  Well, you have three different

13   dates here so --

14            MR. MARCHAND:  Right.

15            MS. ROMANENKO:  -- we are proposing to move all the

16   dates back to July 7th, 2018 so that we would know that we

17   would receive your requests and you would be done with

18   depositions by that date.

19            MR. MARCHAND:  I see.  Your Honor, I think you've

20   ruled already and, you know, have recognized that we are

21   entitled to reasonable additional discovery and that the

22   parties will do so in a way that is not duplicative and

23   certainly not in a malicious way of saving all of the

24   discovery to the end and dumping it on the ADPs in an effort

25   to delay, and that's certainly correct.
```

```
 1          So I don't -- it is a bit of an awkward position to
 2   be negotiating again on this point, I would just point out
 3   that, you know, if the deadlines were to change, I think that
 4   back to July is too far, and that whatever the deadlines are,
 5   they should apply to all of the parties in the case so that
 6   the ADPs are not being treated to a separate earlier deadline
 7   from the rest of the parties.  As Your Honor recognized, you
 8   know, certainly in that late stage of discovery, I wouldn't
 9   expect a lot to come up, but if something were to come up, we
10   should be entitled to seek it in a reasonable fashion.  So I
11   would say that we believe that Your Honor's ruling is the
12   correct one and that these dates are reasonable already and
13   staggered in the appropriate fashion.
14          SPECIAL MASTER ESSHAKI:  All right.  Thank you.
15          Ms. Romanenko does raise a good point that with 45
16   dealers asking for documents at the same time when she has
17   got to be preparing for the class certification motion could
18   be burdensome, and as a consequence what I'm going to do,
19   again, it simply has to be arbitrary, I'm going to say that
20   all discovery for the OSS defendants must be concluded by
21   August 15.
22          MS. ROMANENKO:  Discovery on auto dealer
23   plaintiffs?
24          SPECIAL MASTER ESSHAKI:  On all plaintiffs.
25          MS. ROMANENKO:  Okay.
```

1          SPECIAL MASTER ESSHAKI:  The order -- I'm not --

2    there is going to be no carveout for auto dealer plaintiffs.

3    All plaintiffs are going to be 8/15 on a cutoff.

4          MR. MARCHAND:  Okay.

5          SPECIAL MASTER ESSHAKI:  Again, that will have to

6    be worked into an order, counsel.

7          MR. MARCHAND:  Yes, thank you.

8          SPECIAL MASTER ESSHAKI:  All right.  Do we have

9    anything else?

10         (No response.)

11         SPECIAL MASTER ESSHAKI:  Mr. Miller, are you with

12   us?

13         MR. MILLER:  I am.  Thank you, Your Honor.

14         SPECIAL MASTER ESSHAKI:  Do you have anything else,

15   sir?

16         MR. MILLER:  I don't.  Thank you.

17         SPECIAL MASTER ESSHAKI:  I wish you luck at your

18   hearing this afternoon, sir.

19         MR. MILLER:  Thank you.

20         SPECIAL MASTER ESSHAKI:  Thank you.  Thank you

21   everybody.

22         MS. ROMANENKO:  Thank you, Your Honor.

23         SPECIAL MASTER ESSHAKI:  See you in a few weeks.

24         (Proceedings concluded at 11:11 a.m.)

25                        _   _   _

```
 1                        CERTIFICATION

 2

 3            I, Robert L. Smith, Official Court Reporter of

 4     the United States District Court, Eastern District of

 5     Michigan, appointed pursuant to the provisions of Title 28,

 6     United States Code, Section 753, do hereby certify that the

 7     foregoing pages comprise a full, true and correct transcript

 8     taken in the matter of In re: Automotive Parts Antitrust

 9     Litigation, Case No. 12-02311, on Friday, August 25, 2017.

10

11

12                           s/Robert L. Smith
                             Robert L. Smith, RPR, CSR 5098
13                           Federal Official Court Reporter
                             United States District Court
14                           Eastern District of Michigan

15

16

17     Date:  09/22/2017

18     Detroit, Michigan

19

20

21

22

23

24

25
```