# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : |
| | :     Master File No. 12-md-02311 |
| | : |
| | :     Honorable Marianne O. Battani |
| In Re: All Cases | : |
| | : |
| | : |
| THIS DOCUMENTS RELATES TO: | : |
| | : |
| END-PAYOR ACTIONS | : |
| DEALERSHIP ACTIONS | : |
| TRUCK AND EQUIPMENT DEALER ACTIONS | : |
| | : |

## INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER DIRECTING DEFENDANTS TO PAY HALF OF THE PARTIES' COSTS RELATING TO OEM DISCOVERY

Plaintiffs[1] respectfully submit this motion for an order directing Defendants[2] in the remaining *IPP Parts Cases* to pay their half of the Parties'[3] court-ordered costs related to OEM discovery,[4] as they come due, and to reimburse Plaintiffs, by half, for any costs paid by Plaintiffs pending the outcome of this motion.  Plaintiffs also request that the Court order Plaintiffs and

---

[1]  "Plaintiffs," as used herein, refers to the indirect purchaser plaintiff parties in the parts cases that are coordinated in *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM (E.D. Mich.) ("*IPP Parts Cases*"), including:  End-Payor Plaintiffs ("EPPs"); Automobile Dealer Plaintiffs ("ADPs"); and Truck and Equipment Dealer Plaintiffs.

[2]  "Defendants," as used herein, refers to entities that have been Defendants in the *IPP Parts Cases* at any point in time since the Court ordered coordination on third-party discovery on or about January 28, 2015.  *See* Status Conf./Mot. Hrg. Tr. 43-46, *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311 (E.D. Mich. Jan. 28, 2015) (Battani, J.) ECF No. 892 ("ECF No. 892"). The Defendants that are subject to this motion include: 1) Bosal Industries-Georgia, Inc.; 2) Tokai Kogyo Co., LTD, and Green Tokai Co., LTD; 3) Hitachi, Ltd., and Hitachi Automotive Systems, Ltd., and Hitachi Automotive Systems Americas, Inc.; 4) Kayaba Industry Co., Ltd. d/b/a KYB Corporation, and KYB Americas Corporation; 5) Maruyasu Industries Co., Ltd., and Curtis-Maruyasu America, Inc.; 6) Mikuni Corporation, and Mikuni American Corporation; 7) Mitsubishi Heavy Industries, Ltd., Mitsubishi Heavy Industries America, Inc., and Mitsubishi Heavy Industries Climate Control, Inc.; 8) Panasonic Corporation, and Panasonic Corporation of North America; 9) Sanoh Industrial Co., Ltd, and Sanoh America, Inc.; 10) Showa Corporation, and American Showa, Inc.; and 11) Toyoda Gosei Co., Ltd, Toyoda Gosei North America Corp., and TG Missouri Corp. (collectively, "Toyoda Gosei").

[3] "Parties," as used herein, refers collectively to Plaintiffs and Defendants in the *IPP Parts Cases*.

[4] In July and August 2015, Plaintiffs and certain Defendants served over 100 subpoenas on Original Equipment Manufacturers and their affiliated entities (collectively "OEMs"), across 17 corporate families.  Reiss Decl. at ¶ 3.  As the subpoenas were litigated between the Parties and OEMs, OEM discovery was prioritized to focus on six OEM families (the "Six Lead OEMs"): FCA USA LLC ("FCA"); General Motors Company, General Motors Holdings LLC, and General Motors LLC (collectively "GM"); American Honda Motor Company, Inc., Honda Manufacturing of Indiana LLC, Honda North America, Inc., Honda of America Mfg., Inc., Honda of South Carolina Mfg., Inc., Honda Precision Parts of Georgia, LLC, Honda R&D Americas, Inc., Honda Research Institute USA, Inc., and Honda Transmission Manufacturing of America, Inc. (collectively "Honda"); Nissan Design America, Inc., Nissan Diesel America, Inc., Nissan North America, Inc., and Nissan Technical Center North America, Inc. (collectively "Nissan"); Subaru of Indiana Automotive, Inc. ("SIA") and Subaru of America, Inc. ("SOA") (collectively "Subaru"); and, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota").  Reiss Decl. at ¶ 3.  The Parties' coordinated discovery effort related to the remaining OEMs is ongoing.  *Id.*  The Parties also served subpoenas on eight independent distributor entities, for which discovery is still ongoing. *Id.*

Defendants to respond to any future cost estimates provided by OEMs within seven days of receipt.  In support of this Motion, Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law, the Declaration of William V. Reiss ("Reiss Decl."), filed herewith, and any oral argument that may be held.

Date: May 1, 2018                              Respectfully submitted,


                                               /s/ Hollis Salzman
                                               Hollis Salzman
                                               Bernard Persky
                                               William V. Reiss
                                               Noelle Feigenbaum
                                               **ROBINS KAPLAN LLP**
                                               399 Park Avenue, Suite 3600
                                               New York, NY 10022
                                               Telephone: (212) 980-7400
                                               Facsimile: (212) 980-7499
                                               HSalzman@RobinsKaplan.com
                                               BPersky@RobinsKaplan.com
                                               WReiss@RobinsKaplan.com
                                               NFeigenbaum@RobinsKaplan.com

                                               Adam J. Zapala
                                               Elizabeth T. Castillo
                                               **COTCHETT, PITRE & McCARTHY, LLP**
                                               San Francisco Airport Office Center
                                               840 Malcolm Road, Suite 200
                                               Burlingame, CA 94010
                                               Telephone: (650) 697-6000
                                               Facsimile: (650) 697-0577
                                               azapala@cpmlegal.com
                                               ecastillo@cpmlegal.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiffs Classes*

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the Proposed
End-Payor Plaintiffs Classes*

/s/ *Jonathan W. Cuneo*
Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
Evelyn Li
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square, P.O. Box 927
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON · KING, LLP**
30 East Seventh Street
Suite 2800
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for Dealership*
*Plaintiffs*

/s/ *J. Manly Parks*
Wayne A. Mack (PA Bar #46654)
J. Manly Parks (PA Bar #74647)
Sean P. McConnell (PA Bar #307740)
Andrew R. Sperl (PA Bar #311467)
Erica Lee Fruiterman (PA Bar #317289)
William Shotzbarger (PA Bar #320490)
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com
spmcconnell@duanemorris.com
arsperl@duanemorris.com
efruiterman@duanemorris.com
wshotzbarger@duanemorris.com

*Counsel for Truck and Equipment Dealer Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
|  | : |  |
|  | : | Honorable Marianne O. Battani |
| In Re: All Cases | : |  |
|  | : |  |
| THIS DOCUMENTS RELATES TO: | : |  |
|  | : |  |
| END-PAYOR ACTIONS | : |  |
| DEALERSHIP ACTIONS | : |  |
| TRUCK AND EQUIPMENT DEALER ACTIONS | : |  |
|  | : |  |

## INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN ORDER DIRECTING DEFENDANTS TO PAY HALF OF THE PARTIES' COSTS RELATING TO OEM DISCOVERY

# TABLE OF CONTENTS

**Page**

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................................. iii

ISSUES PRESENTED ................................................................................................................. iv

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND FACTS ................................................................................................ 3

        A.      The Parties Were Ordered to Coordinate on OEM Discovery ............................. 3

        B.      The Parties Have Shared Equal Responsibility for the OEM Discovery
                Effort ................................................................................................................... 4

        C.      Orders on OEM Discovery .................................................................................. 5

        D.      Current Effort to Seek Production from OEMs and Pay Costs ............................ 6

III.    ARGUMENT ................................................................................................................ 10

        A.      The Parties Have Been Ordered to Collectively Pay Costs for OEM
                Discovery, and Defendants Must Pay Half the Parties' Share ........................... 10

                1.      The Court Ordered the Parties to Coordinate on OEM discovery
                        and to Collectively Pay Costs .................................................................. 11

                2.      Plaintiffs and Defendants Have Equally Shared the Responsibility
                        for Pursuing OEM Discovery All Along .................................................. 12

                3.      Plaintiffs and OEMs Will Be Prejudiced Because the Final Orders
                        Incorporate the Requests of Both Party Sides for the Express
                        Purpose of Avoiding a Dual-Track OEM Discovery Process ................. 12

                4.      The Discovery Sought from OEMs Is Necessary to Both Party
                        Sides, and Will Benefit Both Party Sides, So Both Sides Should
                        Pay ......................................................................................................... 13

                5.      Defendants Have Made No Showing That the OEMs' Cost
                        Estimates Are Unreasonable or Otherwise Inconsistent with the
                        Court's Orders ........................................................................................ 15

                6.      Plaintiffs Have in Good Faith Relied upon the Mutual
                        Understanding That Costs Would Be Split Equally ................................. 15

                7.      The Fact That Some *IPP Parts Cases* Are Now Settled Does Not
                        Release Defendants from Their Obligation to Pay Costs ........................ 17

        B.      Defendants Must Reimburse Plaintiffs for Costs Already Paid to OEMs ........... 18

        C.      All Plaintiffs and Defendants Must Respond to OEMs' Future Cost
                Estimates within Seven Days ............................................................................. 19

IV.     CONCLUSION ............................................................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*,
  240 F.R.D. 401 (N.D. Ill. 2007)..............................................................................................11

*Clean Harbors Envtl. Servs. v. ESIS, Inc.*,
  No. 09 C 3789, 2011 U.S. Dist. LEXIS 53212 (N.D. Ill. May 17, 2011) ..................11, 14, 17

*Schweinfurth v. Motorola, Inc.*,
  No. 1:05-cv-0024, 2008 U.S. Dist. LEXIS 82772 (N.D. Ohio Sept. 30, 2008) ......................11

*Universal Del., Inc. v. Comdata Corp.*,
  No. 07-1078, 2010 U.S. Dist. LEXIS 32158 (E.D. Pa. Mar. 31, 2010)...................................16

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Clean Harbors Envtl. Servs. v.ESIS, Inc.*, No. 09 C 3789, 2011 U.S. Dist. LEXIS 53212 (N.D. Ill. May 17, 2011)

*Universal Del., Inc. v. Comdata Corp.*, No. 07-1078, 2010 U.S. Dist. LEXIS 32158 (E.D. Pa. Mar. 31, 2010)

## ISSUES PRESENTED

1.  Should the Court order Defendants in the *IPP Parts Cases* to pay half of the Parties' ordered costs related to OEM discovery, and to pay them as they come due?

    **Answer: Yes.**

2.  Should Defendants in the *IPP Parts Cases* be ordered to reimburse Plaintiffs for half of any costs incurred by Plaintiffs related to OEM discovery that Plaintiffs have paid pending the outcome of this motion?

    **Answer: Yes.**

3.  Should the Court order all Plaintiffs and Defendants in the *IPP Parts Cases* to respond to any future cost estimates from OEMs within seven days of receiving such cost estimates?

    **Answer: Yes.**

# I.    INTRODUCTION

For over three years, the Parties have worked together in a close and coordinated effort to obtain key discovery from OEMs.  At the January 28, 2015 Status Conference, the Court ordered the Parties to coordinate on third-party discovery to spare OEMs the great burden of having to respond to a multitude of different subpoenas.  The Court ordered that the Parties work together to draft and serve a uniform subpoena on OEMs that would encompass the requests and needs of all Parties, across all *IPP Parts Cases*.  Accordingly, counsel for the Parties organized as a group, and co-drafted a uniform subpoena, as instructed.

In July and August 2015, the Parties served the subpoena on over 100 OEMs and, until recently, shared equal responsibility for negotiating and litigating those subpoenas.  Today, nearly all disputes between the Parties and the Six Lead OEMs are resolved.[1]  Orders are now in place for the Six Lead OEMs, detailing the specific categories of data and documents to be produced by each, and reflect the needs of both Plaintiffs and Defendants to support their claims and defenses.[2]

---

[1] GM has continued to challenge the terms for production of its "Vehicle Pricing Documents," including certain confidentiality terms related to the handling of those documents. *See* Special Master's Order Regarding the Production of Certain Vehicle Pricing Information of Certain Non-Party Original Equipment Manufacturers and Their Affiliated Entities, No. 2:12-md-02311, ECF No. 1579.  GM has been ordered to produce all other categories of data and documents listed in Order Regarding Discovery from Non-Party Original Equipment Manufacturer General Motors and Exhibit A, No. 2:12-md-02311, ECF No. 1575 ("GM Order").

[2] *See* GM Order; Order Regarding Motion to Compel Against Honda and Exhibit A, No. 2:12-md-02311, ECF No. 1577 and No. 2:12-md-02311, ECF No. 1607 ("Honda Orders"); Order Regarding Subaru of Indiana Automotive, Inc. Discovery and Exhibit A, No. 2:12-md-02311, ECF No. 1576 ("SIA Order"); Order Regarding Toyota Discovery and Exhibit A, No. 2:12-md-02311, ECF No. 1578 ("Toyota Order"); Order Regarding FCA US LLC Discovery and Exhibit A, No. 2:12-md-02311, ECF No. 1592 ("FCA Order"); and, Order Regarding Nissan North America, Inc.'s Production in Response to the Parties' Renewed Motion to Compel Discovery and Exhibit A, No. 2:12-md-02311, ECF No. 1582 ("Nissan Order").  The Parties and SOA resolved all issues through mediation, and the Parties' and SOA's agreement was memorialized by email.  Reiss Decl. at ¶ 7 & fn. 5, and Exhibit A.  All orders listed in this

The issue of cost-sharing between the Parties and OEMs has also been resolved.  On May 5, 2017, the Court upheld the Special Master's ruling of January 4, 2017, and, *inter alia*, **ordered the Parties to collectively pay 70% of the OEMs' costs related to collection and production of data and documents**.[3]

From the beginning of this coordinated effort, it has always been Plaintiffs' understanding that third-party discovery was a joint and equal effort amongst Plaintiffs and Defendants and, as ordered by the Court, encompassed the requests and needs of all.  Plaintiffs have also always understood (and believe that Defendants clearly understood) that any costs that the Parties were ultimately ordered to pay for OEM discovery would be **split equally** between Plaintiffs and Defendants; thus, Plaintiffs and Defendants would each pay their half of the Parties' ordered portion of costs (*i.e.,* each would pay 50% of the total 70% of costs ordered related to collection and production), with each side to allocate payment within their own party group, as they see fit.

Now, in the eleventh hour of this coordinated process, as production details and detailed cost estimates are being finalized with OEMs, and as the first class certification date is looming for Plaintiffs in *OSS* on October 17, 2018,[4] Defendants say they no longer seek the OEM discovery that they have jointly pursued with Plaintiffs all along and have refused to pay their

footnote, and the email agreement on SOA discovery, are collectively referred to herein as the "Final Orders."

[3] *See* Special Master's Order Regarding the Parties' Renewed Motion to Compel Discovery from Certain Non-Party Original Equipment Manufacturers ad their Affiliated Entities, No. 2:12-md-02311, ECF No. 1584 ("ECF No. 1584" or "OEM Cost Order"); Order Granting in Part and Denying in Part Certain Nonparty Original Equipment Manufacturers' Objection to Order Regarding the Parties' Renewed Motion to Compel Discovery from Certain Nonparty Original Equipment Manufacturers and their Affiliated Entities, No. 2:12-md-02311, ECF No. 1752 ("ECF No. 1752").  The Special Master also ordered that the Parties pay 60% of the OEMs' costs related to Rule 30(b)(6) depositions.  *See* ECF No. 1584 at 6-7.

[4] EPPs and ADPs are due to file their opening class certification motions on October 17, 2018, in *Occupant Safety Restraint Sys.*, No. 2:12-cv-0603 ("*OSS*").

2

fair share of costs.  Rather, they say they will buy in later, if it ever becomes necessary for any of

them to access the information (*i.e.,* if they do not settle their claims), placing all of the up-front

cost burden and financial risk of non-settlement on Plaintiffs.  In addition, because the Final

Orders are a composite of this coordinated process, with the needs and wishes of all Parties

incorporated, it would be nearly impossible, at this point, to unscramble the egg, separate out

which requests or categories belong to which Parties, and, essentially, undo all of the

coordination that has taken place.

Plaintiffs have no interest in how Defendants wish to internally allocate payment of their

portion of ordered OEM discovery costs, but it is fundamentally unfair to allow Defendants to

simply opt out of their cost obligation, while they wait to see if they can settle their cases, and

escape payment altogether.  Plaintiffs have agreed to pay their half of OEM discovery costs in

accordance with the OEM Cost Order.  So too must Defendants.  Accordingly, the Court should

order Defendants to pay their half of ordered OEM discovery costs, and reimburse Plaintiffs for

any costs that are paid pending the outcome of this motion.

## II.        BACKGROUND FACTS

### A.        The Parties Were Ordered to Coordinate on OEM Discovery

At the January 28, 2015 Status Conference, the Parties noted the need for third party

discovery, and their willingness to coordinate with each other on serving subpoenas.  ECF No.

892 at 43-46.  The Court instructed the Parties to cooperate in the preparation of a

comprehensive subpoena to OEMs and certain of their affiliates.  *Id.*[5]  The Parties did just that,

and immediately began to work together to co-draft a subpoena that encompassed the requests

and needs of all Parties across all live *IPP Parts Cases* at the time.  Reiss Decl. at ¶ 2.  In July

---

[5] *See also* Stipulation and Order Regarding OEM Subpoenas, No. 2:12-md-02311, ECF No.
923 ("ECF No. 923").

and August 2015, the Parties served the uniform subpoena on over 100 OEMs (across 17 corporate families), and have worked together to litigate those subpoenas in a closely coordinated effort ever since.  *Id.* at ¶ 3.

**B.      The Parties Have Shared Equal Responsibility for the OEM Discovery Effort**

Shortly after coordination was ordered by the Court in January 2015, Plaintiffs and Defendants began to organize as a group.  *Id.* at ¶ 4.  Weekly all-party conference calls were held.  *Id.*  The Parties formed "OEM teams," made up of point people from each party, to negotiate with each OEM.  *Id.*  These OEM teams were often led by attorneys representing certain Defendants.  *Id.*  Because Defendants in the *IPP Parts Cases* were so numerous, certain counsel for Defendants acted as liaisons for the other Defendants, so as to make communication easier between the Plaintiffs and Defendants.  *Id.*  Defendants' liaisons would communicate with Plaintiffs and take any messages back to the other Defendants for approval, and would relay any messages from Defendants back to Plaintiffs.  *Id.*  When Defendants worked on briefing or proposed edits to letters or briefs, they usually did so collectively through a liaison.   *Id.*

Plaintiffs and Defendants negotiated with OEM counsel together (co-writing numerous emails and letters).  *Id.* at ¶ 5.  The Parties co-wrote the motions to compel, and a number of other briefs, working late into the evening on their joint filings.  *Id.* at ¶ 7.  The Parties worked together in opposing and responding to the OEMs' many objections.  *Id.*  Most Defendants, including a number of the Defendants subject to this motion, joined and signed those motions and briefs.  *Id.*  Plaintiffs and Defendants met before hearings, and before the OEM mediations presided over by the Special Master, to prepare and craft their joint positions and arguments.  *Id.* On several occasions, Plaintiffs and Defendants met in hotel conference rooms, and on one occasion at a Defendant's law firm in Detroit, to plan their collective strategy for overcoming the many obstacles posed by OEMs to obtain the discovery sought.  *Id.*  Plaintiffs and Defendants

collectively participated in numerous phone calls with OEM counsel to negotiate and prepare draft orders. *Id.* As a result, the orders that are now in place reflect the needs and wishes of both sides to support their claims and defenses. *Id.* Plaintiffs and Defendants sat on the same side of the table in the courtroom for hearings and presented common arguments to the Court, including common arguments as to cost-sharing. *Id.*

## C.     Orders on OEM Discovery

After several years of continuous litigation between the Parties and OEMs, nearly all objections to the Final Orders were resolved, and discovery listed in the Final Orders was cleared to move forward.[6]  In the end, the Six Lead OEMs were ordered to produce two basic categories of data and documents:  1) part-specific data and documents ("upstream" information); and 2) data and documents that relate to the whole vehicle ("downstream" information). *See* Final Orders.  The specific items to be produced within each category vary, depending on the particulars of each OEM. *Id.* at ¶ 8.

For the upstream, part-specific information, the Parties and OEMs agreed to prioritize production for those cases having class certification deadlines – currently only *OSS*, which has a class certification date of October 17, 2018. *Id.* at ¶ 9; *see also* ECF No. 1584 at 5.  Regarding the downstream information, relating to the whole vehicle, OEMs will make production only one time for all *IPP Parts Cases*, *i.e.,* it will be produced once for *OSS* and will not need to be produced again.  ECF No. 1584 at 5.

On May 5, 2017, the Court provided its ruling on cost-sharing and affirmed the Special Master's Order of January 4, 2017. *See* ECF Nos. 1584, 1752.  The Court ordered that the

---

[6] *See* Final Orders. The only issue that remains is the one raised by GM, referenced in fn. 1, *supra*.

*Parties must collectively pay 70% of the OEMs costs related to collection and production of*

*OEM discovery*. ECF No. 1584 at 6-7.

D.    **Current Effort to Seek Production from OEMs and Pay Costs**

While objections to Final Orders were pending, through November 2017,[7] the OEM

discovery effort was temporarily put on hold. Reiss Decl. at ¶ 12. In addition, settlement

negotiations were ongoing, and all Parties have hoped to see whether certain cases could be

resolved without the need to cause the OEMs and parties unnecessary effort and expense. *Id.*

This decision proved fruitful, as a number of cases for which OEMs would ultimately have to

collect and produce data were completely resolved. *Id.* When it became clear that a number of

cases would not be resolved, the Parties had no choice but to return to the OEM discovery effort

so that productions could be made with enough time for the Parties to prepare for class

certification, especially with respect to *OSS*. *Id.* The *OSS* timeline is particularly pressing for

Plaintiffs, who must file their opening class certification motion on October 17, 2018. *Id.*

Beginning in November, 2017, the weekly calls resumed and the "OEM team" system of

working groups was put back in place. *Id.* at ¶ 13. Each working group reached out to OEM

---

[7] On November 2, 2017, the Court issued an order on the last outstanding objection to the
Parties' renewed motion to compel. *See* Sealed Order Denying General Motor's Objection to the
Master's Orders Compelling Production of Certain Confidential Commercial, Trade Secret
Pricing Documents and Denying Certain Defendants' Objections to Special Master's December
29, 2016 Order Regarding the Production of Certain Vehicle Pricing Information from Certain
Nonparty Original Equipment Manufacturers and the Affiliated Entities and Modifying Order
Regarding Discovery from Nonparty Original Equipment Manufacturer General Motors No.
2:12-md-02311, ECF Nos. 1837, 1838. On April 25, 2018, the Court ordered that ECF Nos.
1837 and 1838 would be entered on the Master Docket 2:12-md-02311, clarifying previous
docket entries. *See* Order Regarding Entry of Order Regarding GM's Vehicle Pricing
Documents in All End-Payor, Auto Dealer, Truck and Equipment Dealer, and State of Indiana
Actions, No. 2:12-md-02311, ECF No. 1882 ("ECF No. 1882"). In ECF No. 1882, the Court
also ordered that each party in the subject actions shall receive access to GM's Vehicle Pricing
Documents, where there is an order setting a class certification schedule for that action. *See id.*at
3. GM has indicated that it will further challenge production of its Vehicle Pricing Documents
and confidentiality terms. Reiss Decl. at ¶ 8 & fn. 6.

counsel to start working on completing any outstanding issues needed for production, and to obtain cost estimates from OEMs. *Id.*

A number of OEMs now stand ready to produce some or all of the information that has been ordered and are working with the Parties to finalize the details. *Id.* at ¶ 14. They have provided detailed cost estimates in accordance with the Court's orders.[8] *Id.* FCA has provided a cost estimate to the Parties for its production with specific line items for upstream and downstream information. *Id.* Toyota has also provided a detailed cost estimate with specific line items for upstream and downstream information. *Id.* SOA also stands ready to make its production of certain sales data, pending approval of its cost estimate, and pending finalization of the language for its "Expert Acknowledgment" to govern the handling of its data by the Parties' experts and counsel. *Id.*

Over the past few months, Plaintiffs have sought confirmation from Defendants on the cost estimates provided by OEMs, and have tried to work with Defendants to hammer out the details needed for production to begin. *Id.* at ¶ 15. But Defendants have suddenly limited their participation in the OEM discovery process. *Id.* Defendants are not always in attendance on weekly calls among the Parties, and they have not attended all calls with OEM counsel. *Id.* As cost estimates have been provided over the last month or so, Plaintiffs have tried to work with counsel for Defendants to get their approval for the cost estimates so that production can begin, but to no avail. *Id.* Defendants have consistently stalled in their responses and, as a result, have stalled the timelines for production. *Id.* Defendants have also failed to respond to questions from Plaintiffs and OEMs regarding outstanding items, such as supplier lists, that need to be provided to OEMs before production can begin. *Id.* With respect to SOA's "Expert

---

[8] *See* Reiss Decl. at Ex. B for an itemized list of estimates provided by the Six Lead OEMs to date.

Acknowledgment," Defendants have not been able to agree on the language for the document, holding up production. *Id.* The cost estimates from FCA, Toyota, and SOA (*i.e.*, all of those received to date), have been responsive to the Parties' requests, and Defendants have not posed any specific objections to those estimates as being either unreasonable in cost or inconsistent with the Court's orders. *Id.*

Over the past several months, in anticipation of the payment of costs to OEMs, Plaintiffs have asked Defendants to confirm their agreement to split the costs that the Parties have been ordered to pay, 50/50. *Id.* at ¶ 17. Defendants have not confirmed their agreement, and instead have remained vague on the issue whenever it has been raised. *Id.* Plaintiffs have tried to push forward and have expressed to Defendants the growing need to speed up the process so that Plaintiffs' experts will have time to analyze what is produced in time for their opening class certification motion on October 17, 2018 in *OSS. Id.*

On April 11, 2018, Plaintiffs sent Defendants a draft cost-sharing agreement with the hope that an agreement could be memorialized and production could move forward. *Id.* at ¶ 16.

On the April 20, 2018 weekly call, counsel for certain Defendants informed Plaintiffs that, at present, they do not want to move forward in seeking OEM discovery and will not pay any costs for that discovery at this time. *Id.* at ¶ 18. Defendants explained that they do not expect to have access to the OEM discovery unless they later decide that they need it. *Id.* They also expressed that they do not object if Plaintiffs move forward without them in obtaining discovery from FCA and Toyota, where cost estimates and productions are pending. *Id.*

On April 23, 2018, Plaintiffs and Defendants attempted to meet and confer to resolve this cost-sharing dispute, but no agreement was reached. *Id.* at ¶ 19. Plaintiffs agreed to wait for Defendants' edits to the proposed cost-sharing agreement before filing this motion. *Id.* Also, on

April 23, 2018, counsel for Toyoda Gosei, the only remaining non-settling Defendant in *OSS*,

confirmed Toyoda Gosei's position on costs:

> As stated during the Serving Parties call on April 20, 2018, the Toyoda Gosei Defendants (1) do not join in any request for discovery from Toyota or FCA (based on current estimates from these OEMs) at the present time because the cost sharing agreement among the Serving Parties remains unresolved, (2) do not object to any other Serving Party requesting discovery from Toyota and/or FCA, but (3) will not share in the costs associated with that discovery unless and until a cost sharing agreement among the Serving Parties is reached and the Toyoda Gosei Defendants join in the discovery requests or otherwise seek access to the discovery.

*See id.* at ¶ 26 & Ex. F (4/23/18, Email from Heather Choi to William Reiss).

On April 26, 2018, Defendants provided their collective proposed edits to the proposed

cost-sharing agreement to Plaintiffs.  *Id.* at ¶ 20.  In doing so, Defendants confirmed that they do

not agree to pay any costs as they come due, and proposed an unworkable cost-sharing proposal

that would apply only when and if they ever decide they want to come back to buy in to portions

of OEM discovery and not as production costs come due in the first instance.  *Id.*  Also on April

26, 2018, Defendant Toyoda Gosei, the only remaining Defendant in the *OSS* case, confirmed

that Toyoda Gosei will now be withdrawing from negotiations with Toyota to finalize costs and

production.  *Id.* at ¶ 20 & Ex. D (4/26/2018, Email from Heather Choi).

The Parties were not able to reach agreement as Defendants would not agree to commit to

paying ***any*** share of the ordered costs, let alone 50% of such costs.  *Id.* at ¶ 21.  Due to the

impending class certification deadline in *OSS*, Plaintiffs now file this motion to have the issue of

cost-sharing between the Parties resolved so that productions may move forward without any

further delay.

## III.     ARGUMENT

### A.     The Parties Have Been Ordered to Collectively Pay Costs for OEM Discovery, and Defendants Must Pay Half the Parties' Share

After three years of this coordinated discovery effort, the Parties have been ordered to collectively pay a portion of OEM discovery costs – ***70% of the costs of collection and production.***  ECF No. 1584 at 6-7.  It has always been Plaintiffs' understanding that these costs would be ***split equally*** between Plaintiffs and Defendants, *i.e.,* each party side would pay an equal share of the 70% (*i.e.*, 50% of the total 70%) of the costs incurred by an OEM for collection and production.  Also, it was understood that each party side would allocate payment within its own side of the litigation, in the discretion of that party side. Plaintiffs have always believed that Defendants and the Court, in ordering the Parties to pay costs, had the same understanding.

Now, at this late stage of the game, when OEMs are ready to produce their documents and data pursuant to the Court's Order, and are providing the Parties with detailed cost estimates, Defendants say they no longer wish to seek the OEM discovery (which they have sought all along, and which is now incorporated into the Final Orders) or pay any costs for that discovery. They say they will come back and pay for it later, if it is ever needed (*i.e.,* if they do not settle their claims).  Defendants cannot be allowed to act in bad faith and simply back out of what they have been ordered to pay, leaving Plaintiffs to pay all costs and take all the financial risk, while Defendants hedge their bets that their cases will settle and therefore will never have to pay at all.

For the following reasons, the Court should order Defendants to pay half of the Parties' portion of ordered costs as they come due, and reimburse Plaintiffs for any costs they pay so that production will not be delayed while this motion is pending.

1.      **The Court Ordered the Parties to Coordinate on OEM discovery and to Collectively Pay Costs**

The Court ordered the Parties to coordinate on OEM discovery, and to collectively pay costs. *See* ECF No. 892 at 43-46; ECF No. 923; ECF No. 1584; ECF No. 1752. In the OEM Cost Order, it was ordered that the ***Parties*** would, *inter alia*, collectively pay 70% of the OEMs' costs related to collection and production. ECF No. 1584 at 7.

The Court also explained how the Parties were to share costs on upstream and downstream categories of discovery:

> Costs associated with production of discovery specific to an Auto Part Product shall be borne by those Serving Parties participating in (*i.e.*, not fully settled out of or otherwise dismissed from) the relevant Auto Parts Case at the time of production. Costs associated with the production of "downstream" discovery not specific to an Auto Part Product shall be borne by those Plaintiffs and Defendants participating in (*i.e.,* not fully settled out of or otherwise dismissed from) any individual Automobile Dealership or End-Payor action.

ECF No. 1584 at 7, fn. 7.  On the upstream side, the Court clearly stated that non-settled parties in the particular *IPP Parts Cases* will share costs.  On the downstream side the Court clearly explained that it would be split between Plaintiffs and non-settled Defendants *across all IPP Parts Cases.  See id.*

It is common practice where cost-sharing is ordered that parties are ordered to share costs equally.  *See, e.g., Schweinfurth v. Motorola, Inc.*, No. 1:05-cv-0024, 2008 U.S. Dist. LEXIS 82772, at *7 (N.D. Ohio Sept. 30, 2008) (ordering parties to split costs 50/50); *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 412 (N.D. Ill. 2007); *Clean Harbors Envtl. Servs. v. ESIS, Inc.*, No. 09 C 3789, 2011 U.S. Dist. LEXIS 53212, at *19 (N.D. Ill. May 17, 2011) (ordering plaintiffs and defendants to share costs equally).  A 50/50 split between Plaintiffs and Defendants is appropriate here too.

**2.      Plaintiffs and Defendants Have Equally Shared the Responsibility for Pursuing OEM Discovery All Along**

This three-year long OEM discovery effort was equally pursued and shared by Plaintiffs and Defendants.  As detailed in Section II., *supra*, Plaintiffs and Defendants co-drafted the subpoenas to encompass the requests and needs of both party sides.  The Parties shared equal responsibility for negotiating the subpoenas, narrowing the subpoenas, briefing two motions to compel, and addressing the many objections posed by OEMs.  Reiss Decl. at ¶ 7.  Those motions and briefs were signed onto by all Parties, including the Defendants that are subject to this motion.  *Id.*  The Parties even co-briefed and co-argued the Parties' collective position on cost-sharing with OEMs.  *Id.*  Ultimately, the Parties' subpoena requests were narrowed down to bare bones, with all Parties agreeing to what would be included in the Final Orders.  *Id.*  This coordination and equal sharing of responsibility between the Parties should be reflected in an equal sharing of the Parties' portion of costs.

**3.      Plaintiffs and OEMs Will Be Prejudiced Because the Final Orders Incorporate the Requests of Both Party Sides for the Express Purpose of Avoiding a Dual-Track OEM Discovery Process**

Because this has been an equal effort all along between the Parties, the end result – the Final Orders – is a composite of what is needed to support Plaintiffs' claims and Defendants' defenses.  At this point, it would be impracticable to go back and re-write the Final Orders to reflect only Plaintiffs' requests and needs.

Should Defendants be allowed to opt out of OEM discovery and not pay costs at this time, it potentially would require a re-write of the Final Orders to reflect only those requests that pertain to Plaintiffs' claims.  In addition, most of the Final Orders call for the Parties to collectively provide OEMs with the suppliers, models years, and time periods to be produced. For example, as set forth in the Toyota Order, the Parties must collectively provide Toyota with

their collective list of seven model years for which they would like certain downstream information, and provide their agreed list of years for which they would like certain downstream sales data.  *See* Exhibit A to Toyota Order.  The Parties have already negotiated this list, and have already provided that information to Toyota.   Reiss Decl. at ¶ 11.  Likewise, for FCA, GM, and SIA, the Parties have been asked to identify lists of suppliers and/or parts for which production will be made.  These lists are currently being formed to include the input of both Plaintiffs and Defendants, and would need to be re-written to exclude Defendants if they will no longer be involved.

If Defendants are allowed to opt out of cost-sharing, it will not only be a logistical nightmare for Plaintiffs, cause unreasonable delay, and place additional burdens on OEMs to comply, but it would also violate all that the Court intended to achieve when it ordered the Parties to coordinate in the first place.

### 4.    The Discovery Sought from OEMs Is Necessary to Both Party Sides, and Will Benefit Both Party Sides, So Both Sides Should Pay

Defendants have not given a specific reason as to why they no longer wish to pursue the OEM discovery that they jointly sought with Plaintiffs, much of which was incorporated into the Final Orders.  In fact, they cannot offer any such reason because they know that they will necessarily receive any information that Plaintiffs need to support Plaintiffs' arguments and claims and that Defendants also need to access for their own arguments and defenses.  It is hard to imagine a scenario where Plaintiffs' experts will base their reports on analysis of what is produced in OEM discovery, and where Defendants and their experts would not ultimately want access to that same discovery as well in preparing their defenses.

Any OEM discovery relied upon by Plaintiffs and their experts in class certification briefing or expert reports will be provided to Defendants pursuant to the Expert Discovery

Stipulations, among other things.  For instance, the expert discovery stipulations require that "[w]ithin 3 business days of any party serving expert witness reports in the Actions, the party or parties proffering the expert witness shall produce in the format prescribed in the Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents entered in the Actions: documents containing the facts, data or assumptions that the expert witness considered or relied on in forming the opinions to be expressed by such expert witness . . . ."  Stipulation and Order Regarding Non-Discoverability of Certain Expert Materials and Communications, at ¶2, *Occupant Safety Restraint Sys.*, 2:12-cv-00600, ECF No. 76.

The same will hold true for any documents Plaintiffs use in their class certification motions.  Plaintiffs will be required to be produce these documents to Defendants so that they may respond to Plaintiffs' motions.  What this means is that Defendants will receive these materials and can use them for their defenses.  That is exactly why Defendants were required to coordinate with Plaintiffs on the subpoena and why the Court contemplated that Plaintiffs and Defendants would share equally in the costs of OEM discovery.  Without an appropriate cost-sharing order, Defendants will simply receive these materials for free, which would be untenable.  Because there is no way to segregate these materials so as to keep them from Defendants, Defendants must be made to pay their fair share for the production of these materials.

Where the discovery sought will benefit both Plaintiffs and Defendants, each side should pay its equal share.  *See Clean Harbors*, 2011 U.S. Dist. LEXIS 53212, at *19 (where the parties discussed costs, but no formal agreement was reached, the court ordered the parties to split costs 50/50, as Plaintiffs would be "equally benefited by this discovery to prove its case").

Defendants are not backing out because they no longer need the OEM discovery they have sought all along (and undoubtedly will need if their cases do not settle).  Rather, they just

want Plaintiffs to pay all the costs while they bide their time and hope that settlement will take away the need for them to pay at all.  It would be fundamentally unfair to Plaintiffs if this were allowed to happen.

**5.      Defendants Have Made No Showing That the OEMs' Cost Estimates Are Unreasonable or Otherwise Inconsistent with the Court's Orders**

Defendants have not cited specific objections to the cost estimates from OEMs as a reason that they will not pay their portion of costs.  Reiss Decl. at ¶ 15.  Indeed, they cannot.  To date, most estimates, *e.g.*, FCA, Toyota, and SOA, have all been very detailed and responsive to the input from the Parties.  *See Id.* at ¶ 14 & Ex. B (list of estimates and specific amounts).

While the OEM Cost Order provides that the Parties collectively may challenge the OEMs' cost estimates, it does not provide grounds for individual party-by-party rejection of any estimates.  *See* ECF No. 1584 at 7.  Where the OEMs' cost estimates appear to be entirely reasonable—especially when reduced to the 70% collectively due from the Parties, and then further cut in half when split between Plaintiffs and Defendants—there is no basis for Defendants to pull out of paying their share of costs based on the estimates to date.

**6.      Plaintiffs Have in Good Faith Relied upon the Mutual Understanding That Costs Would Be Split Equally**

It has always been Plaintiffs' understanding that if the Parties were ordered to pay a portion of the OEMs' costs, the Parties' collective portion would be ***split equally*** between Plaintiffs and any Defendants with each party-side allocating payment within its own group as that party-side sees fit. In other words, Plaintiffs would allocate their 50% of the Parties' total cost (for collection and production) among the Plaintiffs, and Defendants would allocate their 50% of the Parties' total cost among the Defendants, each side as it sees fit.  Reiss Decl. at ¶ 22.

Plaintiffs have always believed that Defendants had that same understanding. Defendants' understanding is reflected in the equal sharing of responsibility for OEM discovery

throughout this three-year process, but also in direct statements by Defendants' counsel to Plaintiffs' counsel during the OEM discovery effort. *Id.* at ¶ 23.

For example, during and adjacent to mediation sessions between the Parties and OEMs before the Special Master on November 15, 2016 and December 8, 2016, counsel for Plaintiffs and Defendants spoke to each other about how costs might be split and agreed that they would be split equally. *Id.* at ¶ 24. At the time, the Court's order on cost-sharing had not yet issued. During the mediation sessions with OEMs, the Parties were asked if they could agree to certain cost proposals made by OEMs for cost-sharing, and it was in the context of these discussions with OEMs and the Special Master, and trying to find agreement, that the Parties discussed and consented to an equal split as to various items. *Id.*

The understanding that the Parties would split costs equally is further evidenced by an email sent on November 16, 2016, a day after mediation with Toyota. In an email from Ronnie Spiegel (counsel for EPPs) to the other Parties, including the point people for Defendants at the time, it was proposed that the Parties offer to collectively split costs with Toyota 50/50. The email expresses the intention that the Parties split their 50% share, with Plaintiffs and Defendants each paying 25% (and internally allocating as each side saw fit):

> As to the 50% on costs to be paid by the Parties, while not in the email to [Toyota counsel], the deal would be to then split 25/25 between plaintiffs and defendants (and allocate within each as we see fit).

*Id.* at ¶ 25 & Ex. E (11/16/2016 Email from Ronnie Spiegel to other Parties).

While the obvious may not be cemented in a formal agreement, the Parties all understood that costs would be split equally. Defendants cannot be allowed to simply back out of what they knew all along they would need to pay, and try to get a free ride. *See Universal Del., Inc. v. Comdata Corp.*, No. 07-1078, 2010 U.S. Dist. LEXIS 32158, at *16, 25 (E.D. Pa. Mar. 31, 2010)

(where Plaintiffs had previously agreed to pay costs to a non-party and then refused to honor that agreement, non-party moved to compel payment or halt production; court ordered Plaintiffs to pay what they had previously agreed to pay).

At the same time, Plaintiffs should not be forced to take on the entire cost burden for what was negotiated, discussed, and contemplated by the Parties, including Defendants, all along. *See Clean Harbors*, 2011 U.S. Dist. LEXIS 53212, at *19. In *Clean Harbors*, the parties contemplated and discussed cost-sharing all along. *Id.* at *17-18. At the end of discovery, the defendant then argued that it should not be required to share in any of the costs. *Id.* at *18. The court noted that the plaintiff should not be punished for relying on defendant's indications that it might consider cost-sharing. *Id.* at *19. Even where there was no meeting of the minds between the parties on cost-sharing, the court found it appropriate to order the parties to split costs 50/50. *Id.*

Here, even if it was never explicitly formalized on paper that the Parties would split their ordered portion of costs equally, all knew it to be true, all along, and the Parties discussed as much. Defendants should not be allowed to escape that understanding now, while they gamble that settlement will make it unnecessary for them to pay at all.

### 7. The Fact That Some *IPP Parts Cases* Are Now Settled Does Not Release Defendants from Their Obligation to Pay Costs

The Parties' cost obligations have not changed because certain *IPP Parts Cases* have settled or because some Defendants are no longer involved due to settlement or dismissal. The categories of data and documents to be produced by OEMs—categories that the Parties agreed were necessary to their claims and defenses—remain the same. For the upstream, part-specific categories, the only difference in the OEM discovery to be produced is that the OEMs will now prioritize the production of information related to *OSS* (instead of *Bearings* and *AVRP*).

17

Presumably, Defendants that remain in *OSS* will pay for the OSS-upstream information, as they always would have per the OEM Cost Order (see ECF No. 1584 at 7, fn. 7).  When it comes to deciding whether or not to settle, it cannot be fairly said that Defendants were unaware of these specific potential costs of continued litigation.  Furthermore, while the costs are not all trivial, they likely pale in comparison to other litigation-related expenses.

On the downstream side, where information relates to the whole vehicle, nothing has changed.  The information that the Parties negotiated to be produced by OEMs is the same for all remaining cases, regardless of which cases remain, and regardless of which Defendants remain in each case.  The downstream information is needed by both sides in *OSS*, the only case with a currently scheduled class certification deadline, as well as all cases that remain thereafter.[9] Plaintiffs take no position on how Defendants seek to allocate their own share of costs, but the overall plan to split costs with Plaintiffs, equally, does not change simply because the list of current Defendants may have changed.

For all of these reasons, Defendants must pay their equal share of ordered costs as they come due.

## B.    Defendants Must Reimburse Plaintiffs for Costs Already Paid to OEMs

The Six Lead OEMs are required to provide the Parties with cost estimates for collection and production.  ECF No. 1584 at 8.  Several OEMs have provided these estimates, and have indicated that they can begin production once they get consent from the Parties on those estimates.  Reiss Decl. at ¶ 27.  Plaintiffs have been ready to pay, and thereby move forward to receive the OEM productions, for over a month.  *Id.*  Despite Plaintiffs' repeated requests for

---

[9] Plaintiffs have engaged Defendants in virtually all of the remaining cases to negotiate class certification and discovery schedules.  Defendants in several cases have objected to entry of a schedule.  Plaintiffs expect to submit schedules in other cases in the near future.  Reiss Decl. at ¶ 27.

Defendants to provide confirmation on an equal split of the Parties' ordered costs, Defendants have not done so.   *Id.*

Due to the looming class certification schedule in *OSS*, Plaintiffs have no choice but to move forward and pay the reasonable estimates on the table.  Defendants should be required to pay half of any costs that Plaintiffs pay pending the resolution of this motion.

**C.     All Plaintiffs and Defendants Must Respond to OEMs' Future Cost Estimates within Seven Days**

To prevent delay on future cost estimates, Plaintiffs ask that the Court order all Parties still litigating the *IPP Parts Cases*[10] to respond to any cost estimate provided by an OEM within seven days of receipt of the estimates.  Where cost estimates from OEMs are reasonable, Plaintiffs and Defendants can all give their consent within seven days.  To the extent one or more parties object to the cost estimate, the objecting party should be required to set forth the basis for its objection in writing.  Where OEMs provide cost estimates that still need to be negotiated, Plaintiffs and Defendants can confirm with each other the need for further negotiation with OEMs, and negotiate with OEMs as a group to provide cross-quotes or to otherwise meet and confer.

## IV.     CONCLUSION

Plaintiffs request that Defendants be ordered to pay their fair and equal share (half) of the Parties' costs on all currently ordered OEM discovery.  Plaintiffs also request that Defendants be ordered to reimburse Plaintiffs for their half of any costs incurred by Plaintiffs to OEMs pending the resolution of this motion, and that all remaining parties in the *IPP Parts Cases* respond to any new cost estimates provided by OEMs within seven days of receipt of those estimates.

---

[10] "Parties still litigating," is meant to include Plaintiffs and the Defendants subject to this Motion for which settlements have not yet been preliminarily approved by the Court.

For the foregoing reasons, the Parties respectfully request that the Court grant Plaintiffs' motion.

Date: May 1, 2018                                   Respectfully submitted,

                                                    */s/ Hollis Salzman*
                                                    Hollis Salzman
                                                    Bernard Persky
                                                    William V. Reiss
                                                    Noelle Feigenbaum
                                                    **ROBINS KAPLAN LLP**
                                                    399 Park Avenue, Suite 3600
                                                    New York, NY 10022
                                                    Telephone: (212) 980-7400
                                                    Facsimile: (212) 980-7499
                                                    HSalzman@RobinsKaplan.com
                                                    BPersky@RobinsKaplan.com
                                                    WReiss@RobinsKaplan.com
                                                    NFeigenbaum@RobinsKaplan.com

                                                    Adam J. Zapala
                                                    Elizabeth T. Castillo
                                                    **COTCHETT, PITRE & McCARTHY, LLP**
                                                    San Francisco Airport Office Center
                                                    840 Malcolm Road, Suite 200
                                                    Burlingame, CA 94010
                                                    Telephone: (650) 697-6000
                                                    Facsimile: (650) 697-0577
                                                    azapala@cpmlegal.com
                                                    ecastillo@cpmlegal.com

                                                    Marc M. Seltzer
                                                    Steven G. Sklaver
                                                    **SUSMAN GODFREY L.L.P.**
                                                    1900 Avenue of the Stars, Suite 1400
                                                    Los Angeles, CA 90067-6029
                                                    Telephone: (310) 789-3100
                                                    Facsimile: (310) 789-3150
                                                    mseltzer@susmangodfrey.com
                                                    ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiffs Classes*


/s/ E. Powell Miller
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the Proposed
End-Payor Plaintiffs Classes*


/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
Evelyn Li
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON · KING, LLP**
30 East Seventh Street
Suite 2800
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for Dealership Plaintiffs*

/s/ *J. Manly Parks*
Wayne A. Mack (PA Bar #46654)
J. Manly Parks (PA Bar #74647)
Sean P. McConnell (PA Bar #307740)
Andrew R. Sperl (PA Bar #311467)
Erica Lee Fruiterman (PA Bar #317289)
William Shotzbarger (PA Bar #320490)
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com
spmcconnell@duanemorris.com
arsperl@duanemorris.com
efruiterman@duanemorris.com
wshotzbarger@duanemorris.com

*Counsel for Truck and Equipment Dealer Plaintiffs*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2018, I caused the foregoing to be electronically, filed

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to all counsel of record.

*/s/E. Powell Miller*
E. Powell Miller