UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| In Re: All Cases | Honorable Marianne O. Battani |
| THIS DOCUMENTS RELATES TO:<br><br>END-PAYOR ACTIONS<br>DEALERSHIP ACTIONS<br>TRUCK AND EQUIPMENT DEALER ACTIONS | |

**DECLARATION OF WILLIAM V. REISS IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER DIRECTING DEFENDANTS TO PAY HALF OF THE PARTIES' COSTS RELATING TO OEM DISCOVERY**

I, WILLIAM V. REISS, declare as follows:

1. I am an attorney duly licensed to practice in the State of New York. I am a Principal with the law firm of Robins Kaplan LLP, and am counsel for the End-Payor Plaintiffs ("EPPs") in the above-entitled action. I make this Declaration pursuant to 28 U.S.C. § 1746 in support of the Indirect Purchaser Plaintiffs' Motion for an Order Directing Defendants to Pay Half of the Parties' Costs Relating to OEM Discovery. I have personal knowledge of the facts set forth in this declaration and, if called upon, I could and would competently testify thereto.

2. At the January 28, 2015 Status Conference, the Parties[1] were ordered to coordinate in their efforts to seek third-party discovery. *See* Status Conf./Mot. Hrg. Tr. 43-46, No. 12-md-02311, ECF No. 892. Accordingly, Plaintiffs[2] and Defendants[3] set to the task of drafting a uniform subpoena that would encompass the needs of all to support the various Parties' claims and defenses. The Parties have worked in a closely coordinated effort ever since.

---

[1] "Parties," as used herein, refers collectively to Plaintiffs and Defendants in the indirect purchaser parts cases that are coordinated in *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM (E.D. Mich.) ("*IPP Parts Cases*").

[2] "Plaintiffs," as used herein, refers to the indirect purchaser plaintiff parties in the *IPP Parts Cases*, including: End-Payor Plaintiffs ("EPPs"); Automobile Dealer Plaintiffs ("ADPs"); and, Truck and Equipment Dealer Plaintiffs ("TEDPs").

[3] "Defendants," as used herein, refers to entities that have been Defendants in the *IPP Parts Cases* at any point in time since the Court ordered coordination on third-party discovery on or about January 28, 2015. *See* ECF No. 892 at 43-46. The Defendants that are subject to this motion include: 1) Bosal Industries-Georgia, Inc.; 2) Tokai Kogyo Co., LTD, and Green Tokai Co., LTD; 3) Hitachi, Ltd., and Hitachi Automotive Systems, Ltd., and Hitachi Automotive Systems Americas, Inc.; 4) Kayaba Industry Co., Ltd. d/b/a KYB Corporation, and KYB Americas Corporation; 5) Maruyasu Industries Co., Ltd., and Curtis-Maruyasu America, Inc.; 6) Mikuni Corporation, and Mikuni American Corporation; 7) Mitsubishi Heavy Industries, Ltd., Mitsubishi Heavy Industries America, Inc., and Mitsubishi Heavy Industries Climate Control, Inc.; 8) Panasonic Corporation, and Panasonic Corporation of North America; 9) Sanoh Industrial Co., Ltd, and Sanoh America, Inc.; 10) Showa Corporation, and American Showa, Inc.; and 11) Toyoda Gosei Co., Ltd, Toyoda Gosei North America Corp., and TG Missouri Corp. (collectively, "Toyoda Gosei").

3. In July and August 2015, after several months of co-drafting the subpoena requests to reflect the wishes and needs of all Parties, subpoenas were served by the Parties on over 100 Original Equipment Manufacturers and their affiliated entities (collectively "OEMs"), across 17 OEM families. Over time, the coordinated effort to seek OEM discovery became focused on six OEM families (the "Six Lead OEMs").[4] The Parties' coordinated discovery effort related to the remaining OEMs is ongoing. In or about September 2015, the Parties also coordinated to draft and serve subpoenas on eight independent distributor entities, for which discovery is still ongoing.

4. Shortly after coordination was ordered by the Court, Plaintiffs and Defendants began to organize as a group. Weekly all-party conference calls were set up and held. The Parties formed "OEM teams," made up of point people from each party, to negotiate with each OEM. These OEM teams were often led by Defendants. Because Defendants in the *IPP Parts Cases* were so numerous, certain attorneys for Defendants acted as liaisons for the other Defendants, so as to make communication easier between the Plaintiffs and the Defendants. Defendants' liaisons communicated with Plaintiffs, took any messages back to the other Defendants for approval and relayed any messages from Defendants back to Plaintiffs. When

---

[4] The "Six Lead OEMs" include: FCA USA LLC ("FCA"); General Motors Company, General Motors Holdings LLC, and General Motors LLC (collectively "GM"); American Honda Motor Company, Inc., Honda Manufacturing of Indiana LLC, Honda North America, Inc., Honda of America Mfg., Inc., Honda of South Carolina Mfg., Inc., Honda Precision Parts of Georgia, LLC, Honda R&D Americas, Inc., Honda Research Institute USA, Inc., and Honda Transmission Manufacturing of America, Inc. (collectively "Honda"); Nissan Design America, Inc., Nissan Diesel America, Inc., Nissan North America, Inc., and Nissan Technical Center North America, Inc. (collectively "Nissan"); Subaru of Indiana Automotive, Inc. ("SIA") and Subaru of America, Inc. ("SOA") (collectively "Subaru"); and Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota").

Defendants worked on briefing with Plaintiffs, or proposed edits to letters or briefs that Plaintiffs had drafted, they usually did so collectively through a liaison.

5. Plaintiffs and Defendants negotiated with OEM counsel together (co-writing numerous emails and letters). When it became clear that the Parties were not able to get the information they needed from OEMs regarding each one's particular situation and systems, the Court ordered that the Parties be allowed to take Rule 30(b)(6) depositions of the Six Lead OEMs. After objections on the Rule 30(b)(6) depositions were denied on June 23, 2016, the Parties worked together to serve Rule 45 deposition subpoenas and schedule dates for the depositions. *See* ECF No. 1405.

6. Plaintiffs and Defendants also worked together to prepare a common list of topics for taking the Rule 30(b)(6) depositions of OEMs, and used a common outline. For the Rule 30(b)(6) depositions, the Court ordered that Plaintiffs and Defendants would have equal time to question each OEM's witnesses. Plaintiffs and Defendants had at least one representative for their party side at each Rule 30(b)(6) deposition, and took turns taking the lead in questioning the OEM witnesses.

7. In the course of this discovery effort, the Parties worked together on two rounds of motions to compel against OEMs, and the many OEM objections that followed. The Parties co-wrote the motions to compel, and a number of other briefs, working late into the evening on their joint filings. The Parties worked together in opposing and responding to the OEMs' many objections. Most Defendants, including Defendants subject to the instant motion, joined and signed those motions and briefs. Plaintiffs and Defendants, including Defendants counsel, met before hearings and before the mediations with OEMs to prepare and craft their joint positions and arguments. On several occasions, Plaintiffs and Defendants met in hotel conference rooms

and, on one occasion, at a Defendant's law firm in Detroit, to plan their collective strategy for getting through the many obstacles posed by OEMs to obtain the discovery sought. Plaintiffs and Defendants collectively participated in numerous phone calls with OEM counsel to negotiate and prepare draft orders and, as a result, the orders that are now in place incorporate the needs and wishes of both sides to support their claims and defenses.[5] And, Plaintiffs and Defendants sat on the same side of the table in the courtroom for hearings, presenting common arguments to the Court, including common arguments as to cost-sharing. Ultimately, the Parties' subpoena requests were narrowed down to bare bones, with all Parties agreeing to what would be included in the Final Orders.

8. After several years of non-stop litigation between the Parties and OEMs, nearly all objections to the Final Orders were resolved, and the discovery listed in the Final Orders was cleared to move forward.[6] In the end, the Six Lead OEMs were ordered to produce two basic categories of data and documents: 1) part-specific data and documents ("upstream"

---

[5] *See* Order Regarding Discovery from Non-Party Original Equipment Manufacturer General Motors and Exhibit A, No. 2:12-md-02311, ECF No. 1575 ("GM Order"); Order Regarding Motion to Compel Against Honda and Exhibit A, No. 2:12-md-02311, ECF No. 1577 and No. 2:12-md-02311, ECF No. 1607 ("Honda Orders"); Order Regarding Subaru of Indiana Automotive, Inc. Discovery and Exhibit A, No. 2:12-md-02311, ECF No. 1576 ("SIA Order"); Order Regarding Toyota Discovery and Exhibit A, No. 2:12-md-02311, ECF No. 1578 ("Toyota Order"); Order Regarding FCA US LLC Discovery and Exhibit A, No. 2:12-md-02311, ECF No. 1592 ("FCA Order"); and Order Regarding Nissan North America, Inc.'s Production in Response to the Serving Parties' Renewed Motion to Compel Discovery and Exhibit A, No. 2:12-md-02311, ECF No. 1582 ("Nissan Order"). The Parties and SOA resolved all issues through mediation with the Parties, and the Parties' and SOA's agreement was memorialized by email. *See* Exhibit A, attached hereto (11/18/2016, Email from R. Spiegel to N. Walters memorializing Parties/SOA agreement made at mediation on 11/15/2016). All orders listed in this footnote, and the email agreement on SOA discovery, are collectively referred to herein as the "Final Orders."

[6] *See* Final Orders. Note that there is an outstanding item with respect to the GM Order regarding GM's Vehicle Pricing Documents and confidentiality terms. While the Court has ordered production on these items (*see* Orders, No. 2:12-md-02311, ECF Nos. 1837, 1838, and 1882) GM has indicated that it will further challenge production of its Vehicle Pricing Documents and confidentiality terms.

information); and 2) data and documents that relate to the whole vehicle ("downstream" information). *See* Final Orders. The specific items to be produced within each category vary, depending on the particulars of each OEM.

9. On the upstream, part-specific categories, the Parties and OEMs agreed to prioritize production for those cases with class certification deadlines – currently, only *OSS* in the ADP and EPP actions, with a class certification date of October 17, 2018. Regarding the downstream categories, which relate to the whole car, OEMs will make production only one time for all *IPP Parts Cases*, *i.e.*, it will be produced once for *OSS* and will not need to be produced again.

10. As a result of OEM discovery being a joint and equal effort by the Parties, the Final Orders incorporate the requests and negotiating points from all Parties over the years, and it is hard to distinguish, at this point, which bits of text or requests are attributable to each particular party-side.

11. In addition, the Final Orders call for certain information to be provided by the Parties. For example, the Parties must collectively provide to certain OEMs the names of suppliers from which they seek discovery, the model (and model years), and time periods to be produced. For example, as set forth in the Toyota Order, the Parties must provide Toyota with their collective list of seven model years for which they would like certain downstream information, and provide their agreed list of years for which they would like certain downstream sales data. *See* Exhibit A to Toyota Order. The Parties have already negotiated this list, and have provided it to Toyota. Should Defendants be allowed to back out of discovery and not pay costs, Plaintiffs would be required to pay for discovery that reflects the concerns and input of Defendants. Likewise, for FCA, GM, and SIA, the Parties have been asked to identify lists of

suppliers and/or parts for which production will be made. These lists are currently being formed to include the input of both Plaintiffs and Defendants.

12. While objections were pending on the Final Orders through November 2017, the OEM discovery effort was on temporary hold. In addition, settlement negotiations were ongoing, and none of the Parties wanted to subject themselves and the OEMs to the effort and expense of producing documents unnecessarily, if settlements could be achieved. This decision proved fruitful as a number of cases for which OEMs would ultimately need to collect and produce data were completely resolved. When it became clear that a number of cases would not be resolved, the Parties had no choice but to return to the OEM discovery effort so that productions could be made with enough time for the Parties to prepare for class certification, especially with respect to *OSS*. The *OSS* timeline is even more pressing for Plaintiffs (EPPs and ADPs) who must file their opening class certification motion on October 17, 2018.

13. In approximately October 2017, the Parties reengaged. The weekly calls resumed and the "OEM team" system of working groups was put back in place. Each working group reached out to OEM counsel to start working on completing any outstanding issues needed for production, and to obtain cost estimates from OEMs.

14. A number of OEMs now stand ready to produce some or all of the information that has been ordered and are working with the Parties to finalize the details. They have provided detailed cost estimates. *See* Exhibit B, attached hereto (list of current cost estimates at time of filing). FCA has provided a cost estimate to the Parties for its production, as has Toyota (for a most categories). SOA also stands ready to make production of certain sales data pending approval of its cost estimate by the Parties, and pending finalization of the language for its "Expert Acknowledgment" to govern the handling of its data by the Parties' experts and counsel.

15. Over the past few months, Plaintiffs have sought confirmation from Defendants on the cost-estimates provided by OEMs, and have tried to work with them to hammer out the details needed for production to begin. It appears to Plaintiffs, however, that Defendants have suddenly slowed their participation in the OEM discovery process, now that payment of costs are on the table. Defendants are not always in attendance on weekly calls between the Parties, and have not attended all calls with OEM counsel. As cost estimates have been provided by OEMs, over the last month or so, Plaintiffs have tried to work with counsel for Defendants to get their approval for the cost estimates so that production can begin, to no avail. Defendants have consistently stalled on their responses and, as a result, have stalled the timelines for production. Defendants have not posed any objection to those cost estimates. Defendants have also failed to respond to questions from Plaintiffs and OEMs regarding outstanding items, such as supplier lists, that need to be provided to OEMs before production can begin. With respect to SOA's "Expert Acknowledgment," Defendants have not been able to agree on the language for the document, also holding up production. Defendants have not posed any specific objections to those estimates -- being either unreasonable in cost or inconsistent with the Court's orders.

16. On April 11, 2018, Plaintiffs sent Defendants a draft cost-sharing agreement, with the hope that an agreement could be memorialized and production can move forward. *See* Exhibit C, attached hereto (draft cost-sharing agreement).

17. Over the past several months, and anticipating the payment of costs to OEMs, Plaintiffs have asked Defendants to confirm their agreement to split costs that the Parties have been ordered to pay, 50/50. Defendants have not confirmed their agreement and have remained vague on the issue whenever it has been raised. Plaintiffs have tried to push forward, and have expressed to Defendants the growing need to speed up the process so that Plaintiffs' experts will

have sufficient time to analyze what is produced in advance of the filing of their class certification motion in *OSS*, which is due on October 17, 2018.

18. On the April 20, 2018 weekly call, counsel for certain Defendants informed Plaintiffs that they do not want to go forward in seeking OEM discovery, and will not pay any costs for that discovery at this time. Defendants explained that they do not expect to have access to the OEM discovery unless they later decide that they need it. They also expressed that they do not object if Plaintiffs go forward without them on FCA and Toyota, where cost estimates and productions are pending.

19. On April 23, 2018, Plaintiffs and Defendants met and conferred by conference call to attempt to resolve this cost-sharing dispute, but no agreement was reached. Plaintiffs agreed to wait for Defendants' edits to the cost-sharing agreement before filing this motion.

20. On April 26, 2018, Defendants provided their collective proposed edits to Plaintiffs. In doing so, Defendants confirmed that they do not agree to pay any costs as they come due. Instead, Defendants proposed an unworkable cost-sharing structure that would apply only if and when Defendants elect, in their sole discretion, to pay for portions of OEM discovery. Also on April 26, 2018, Defendant Toyoda Gosei, the only remaining Defendant in the *OSS* case, confirmed that it will now be withdrawing from negotiations with Toyota to finalize costs and production. *See* Exhibit D, attached hereto (4/26/2018, Email from Heather Choi).

21. The Parties were not able to reach agreement prior to filing this motion, as Defendants would not agree to pay their 50% of ordered costs as they come due.

22. It has always been Plaintiffs' understanding that if the Parties were ordered to pay a portion of the OEMs' costs, the Parties' collective portion would be ***split equally*** between Plaintiffs and any non-settled Defendants, with each party-side allocating payment within their

own group, as they see fit, *i.e.*, each party-side allocating their 35% (for collection and production).

23. Plaintiffs believe that Defendants had that same understanding. Defendants' understanding is reflected in the equal sharing of responsibility for OEM discovery throughout this three-year process, but also in direct statements by Defendants' counsel to Plaintiffs' counsel during the OEM discovery effort.

24. During and adjacent to mediation sessions between the Parties and OEMs, before the Special Master on November 15, 2016, and December 8, 2016, counsel for Plaintiffs and Defendants spoke to each other about how costs might be split between them and agreed that they would be split equally. At the time, the Court's order on cost-sharing had not yet been issued. During the mediation sessions with OEMs, the Parties were asked if they could agree to certain cost proposals made by OEMs for cost-sharing, and it was in the context of these discussions with OEMs and the Special Master, and trying to find agreement, that the Parties discussed and consented to proposing an equal split as to various items.

25. The understanding that the Parties would split costs equally is further evidenced in an email that was sent on November 16, 2016, a day after mediation with Toyota. In an email from Ronnie Spiegel (counsel for EPPs) to the other Parties, including the point people for Defendants at the time, it was proposed that the Parties offer to collectively split costs with Toyota 50/50. The email expresses the intention that the Parties split their 50%, with Plaintiffs and Defendants each paying 25% (and internally allocating as they each see fit):

> As to the 50% on costs to be paid by the Parties, while not in the email to [Toyota counsel], the deal would be to then split 25/25 between plaintiffs and defendants (and allocate within each as we see fit).

Exhibit E, attached hereto (11/16/2016, Email from Ronnie Spiegel to Parties).

26. On April 23, 2018, counsel for Toyoda Gosei, the only remaining Defendant in *OSS*, confirmed Toyoda Gosei's position on costs:

> As stated during the Parties call on April 20, 2018, the Toyoda Gosei Defendants (1) do not join in any request for discovery from Toyota or FCA (based on current estimates from these OEMs) at the present time because the cost sharing agreement among the Parties remains unresolved, (2) do not object to any other Serving Party requesting discovery from Toyota and/or FCA, but (3) will not share in the costs associated with that discovery unless and until a cost sharing agreement among the Parties is reached and the Toyoda Gosei Defendants join in the discovery requests or otherwise seek access to the discovery.

*See* Exhibit F, attached hereto (April 23, 2018, Email from Heather Choi to William Reiss).

27. Plaintiffs have been ready to pay their portion of costs and thereby move forward to receive the OEM productions for over a month. Several OEMs have indicated that production can begin shortly after payment is received. Due to the looming class certification schedule in *OSS*, Plaintiffs have no choice but to move forward and pay the reasonable estimates on the table, so as to not endanger the timeline, which could be delayed further if Plaintiffs were to wait for resolution of this motion. Plaintiffs have informed Defendants of their intentions to move forward and have given them ample opportunity to respond. Plaintiffs have engaged Defendants in virtually all of the remaining cases to negotiate class certification and discovery schedules. Defendants in several cases have objected to entry of a schedule. Plaintiffs expect to submit schedules in other cases in the near future.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this First day of May, at New York, New York.

William V. Reiss