# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

|  |  |
|---|---|
| **IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | Master File Case No. 12-md-02311 <br><br> Honorable Marianne O. Battani |
| **IN RE: ALL CASES** |  |
| **THIS RELATES TO:** <br> **DEALERSHIP ACTIONS** <br> **END-PAYOR ACTIONS** <br> **TRUCK AND EQUIPMENT DEALER ACTIONS** |  |

# DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER DIRECTING DEFENDANTS TO PAY HALF OF THE PARTIES' COSTS RELATING TO OEM DISCOVERY

## STATEMENT OF ISSUES

1.      Do the Court's Orders relating to OEM Discovery, which held that any parties seeking discovery from OEMs must pay a total of 70% of the OEMs' costs related to collection and production of data and documents, require Defendants to pay an equal share of such costs even if they are not pursuing such discovery?

Answer: No.

2.      Did the Defendants enter into an enforceable agreement with the Plaintiffs to pay an equal share of any OEM discovery that the Plaintiffs pursue?

Answer: No.

3.      Does it violate due process, fundamental fairness, and the Federal Rules of Civil Procedure to require Defendants to pay 50% of the costs of OEM discovery that Plaintiffs alone are pursing in order to try and establish their burden on class certification against certain defendants in this MDL?

Answer: Yes.

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

III.    ARGUMENT ........................................................................................................ 5

    A.    Plaintiffs' Motion Is Inconsistent with the Court's Cost-Sharing Order. ............... 5

    B.    There Is No Agreement Establishing A 50/50 Split. .............................................. 9

    C.    Compelling Defendants to Pay for Discovery They Do Not Seek Violates Due Process and Fundamental Fairness. .................................................................... 13

    D.    Defendants' Cost-Sharing Proposal Adheres to This Court's Rulings and Is Reasonable. ...................................................................................................... 18

IV.     CONCLUSION .................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*,
  2011 WL 1897213 (N.D. Ill. May 17, 2011) ...........................................................10

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-02311 (E.D. Mich. Jan. 28, 2015) ...........................................................3

*Christian v. 43rd Dist. Court for Michigan*,
  No. 13-cv-12618, 2014 WL 7100499 (E.D. Mich. Dec. 12, 2014) ...........................6

*Colosi v. Jones Lang LaSalle Americas, Inc.*,
  781 F.3d 293 (6th Cir. 2015) ...................................................................................17

*Last Atlantis Capital, LLC v. AGS Specialist Partners*,
  No. 04 C 0397, 2011 WL 6097769 (N.D. Ill. Dec. 5, 2011)……………………15, 16-17

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ...................................................................................13

*In re Puerto Rico Elec. Power Authority*,
  687 F.2d 501 (1st Cir. 1982) ...................................................................................14

*Robinson v. Gen. Elec. Co.*,
  No. 09-cv-11912, 2016 WL 4988013 (E.D. Mich. Sept. 19, 2016) ........................15

*Schweinfurth v. Motorola Inc.*, *Clean Harbors Envtl. Servs. v. ESIS, Inc.*,
  240 F.R.D. 401 (N.D. Ill. 2007)..........................................................................10, 11

**Statutes & Rules**

U.S. Code Section 1920 ................................................................................................17

## I.      INTRODUCTION

Indirect Purchaser Plaintiffs ("Plaintiffs"[1] or "IPPs") make the extraordinary request to compel certain Defendants[2] in the MDL to pay half of the costs associated with third-party OEM discovery that EPPs and ADPs, and *only* the EPPs and ADPs, are currently seeking in order to prosecute their claims.  No defendants is requesting OEM discovery at this time, has agreed to split any costs with the Plaintiffs, or is required to pay for such costs under any of the Court's OEM discovery rulings.  Moreover, it would be a violation of Defendants' due process rights and fundamental notions of fairness to be forced to fund the IPPs' litigation efforts by paying for their OEM discovery when any Defendant decides it is not necessary for the defense of the claims asserted.  The motion should be denied.

The Special Master is intimately familiar with the OEM discovery issues in this MDL.  None of the OEM orders require a party that does not wish to receive OEM discovery to pay for such discovery.  Indeed, the Special Master already and expressly provided a safeguard to prevent such injustice by stating that each party has "the right to refuse to go forward with some or all of [an OEM's] production, if the Serving Parties so choose."  Special Master's Order Regarding the Parties' Renewed Motion to Compel Discovery from Certain Non-Party Original Equipment

---

[1] "Plaintiffs," as used herein, refers to the indirect purchaser plaintiff parties in the parts cases that are coordinated in *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311-MOB-MKM (E.D. Mich.) ("IPP Parts Cases"), including: End-Payor Plaintiffs ("EPPs"); Automobile Dealer Plaintiffs ("ADPs"); and, Truck and Equipment Dealer Plaintiffs ("TEDPs").

[2] "Defendants," as used herein, refers to those that are subject to this motion, including: Bosal Industries-Georgia, Inc.; Tokai Kogyo Co., LTD, Green Tokai Co., LTD; KYB Corporation, KYB Americas Corporation; Maruyasu Industries Co., Ltd., Curtis-Maruyasu America, Inc.; Mikuni Corporation, Mikuni American Corporation; Mitsubishi Heavy Industries, Ltd., Mitsubishi Heavy Industries America, Inc., Mitsubishi Heavy Industries Climate Control, Inc.; Panasonic Corporation, Panasonic Corporation of North America; Sanoh Industrial Co., Ltd, Sanoh America, Inc.; Showa Corporation, American Showa, Inc.; Toyoda Gosei Co., Ltd, Toyoda Gosei North America Corp., and TG Missouri Corp.

Manufacturers and their Affiliated Entities, No. 2:12-md-02311, ECF No. 1584 at 7 (March 30, 2015) (the "General Order").  Plaintiffs' motion improperly seeks to "upset the apple cart" and have the Special Master reconsider these rulings after they have been affirmed by Judge Battani.

Plaintiffs try to sidestep this Court's Orders by attempting to engineer an "understanding" among the parties to split costs 50/50.  But even Plaintiffs' evidence of this "understanding" makes clear that it was only "Plaintiffs' understanding" and "Defendants have not confirmed their agreement."  Declaration of William V. Reiss in Support of IPPs' Motion for An Order Directing Defendants to Pay Half of the Parties' Costs Relating to OEM Discovery ("Reiss Decl.) ¶¶ 17, 22.  Despite this express recognition, Plaintiffs boldly claim Defendants are acting "in bad faith" and are "back[ing] out" by not submitting to Plaintiffs' demands for money.  Mot. at 10.  Those disparaging claims are both wildly untrue and irrelevant to the instant motion.  As the Special Master well knows, the sheer number of settlements in the IPP cases has drastically altered the landscape of the MDL, and the Defendants currently subject to this motion were not participants in most of the initial OEM discovery process, and they are not acting in bad faith now.  Plaintiffs cannot impute an agreement by the current Defendants, most of whom were not even defendants in the MDL when the OEM subpoenas were served, to share costs based on the actions of now-settled defendants.

It would be fundamentally unfair to require any Defendant to pay for OEM discovery that it chooses not to pursue, whether because of cost considerations or because it is not necessary to that Defendant's defenses.  The IPPs have decided to request OEM discovery now, after admittedly not seeking it for many months, in order to try and meet IPPs' daunting burden on class certification in the *OSS* cases.  While such "downstream" OEM discovery may also be potentially relevant to Plaintiffs' claims in other *Auto Parts* cases, it does not mean that any Defendant is

required to fund Plaintiffs' class certification motion.  Defendants are not standing in the way of IPPs' OEM discovery; they just are not obligated to fund Plaintiffs' OEM discovery.  IPPs have collected over a billion dollars in settlements and can well afford to fund their own discovery pursuits.  Demanding that the remaining Defendants further fund Plaintiffs' litigation efforts is improper and should be rejected.

## II.    BACKGROUND

In the interest of brevity, Defendants will not recount the long multi-year history of OEM discovery in the *Auto Parts* cases.  As the Special Master knows, pursuant to the Court's January 2015 directive that the Parties work together, Status Conf./Mot. Hrg. Tr. 43-46, *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311 (E.D. Mich. Jan. 28, 2015) (Battani, J.) ECF No. 892, Plaintiffs and certain defendants jointly sought comprehensive document and data discovery from third-party OEMs by serving a unified subpoena.  Service began in July 2015, at a time when several Defendants subject to the Motion were not even named (Sanoh, CMA, Bosal Industries-Georgia, and Kayaba) or served (Maruyasu) in any case in the MDL, and others including Mikuni, had motions to dismiss pending and had no involvement in discovery.  During the three years since the subpoena was served, Plaintiffs and certain defendants, nearly all of whom have now settled completely out of the IPP cases, worked together to negotiate with the OEMs, and eventually jointly moved to compel discovery from the OEMs.  During that process, counsel for Plaintiffs and certain defendants conducted weekly status calls to discuss OEM discovery before and after the Parties' renewed motion to compel OEM discovery was decided by the Special Master in December 2016.

The Court considered three objections to the Special Master's OEM discovery orders over the course of several months in 2017.  During this time, Plaintiffs unilaterally put the Parties' weekly OEM discovery calls on indefinite hold.  *See* Email from R. Spiegel to OEM Subpoenas

Listserv (August 3, 2017) (with subject line "No more weekly calls until further notice"), attached hereto as Ex. A.  After the Court resolved the last of the objections, Plaintiffs resumed calls with Defendants in late November 2017.  It should be noted that, by this time – nearly two and a half years since the parties served the subpoena in July 2015 – there had been 111 total settlements between Defendants and IPPs: 45 Defendants have settled with EPPs, 49 with ADPs, and 17 with TEDPs.

Weeks after volunteering to do so, Plaintiffs for the first time circulated a proposed stipulation regarding cost-sharing for OEM discovery between Plaintiffs and Defendants on April 11, 2018.  Plaintiffs' Stipulation stated that Plaintiffs and all defendants in the MDL (even those that had settled with IPPs) would each pay 50% of the Parties' share of OEM discovery costs.  On April 20, 2018, Plaintiffs and Defendants conferred about Plaintiffs' proposal.  Defendants explained their position that a Party should not have to pay for any OEM discovery costs until that Party is at an appropriate stage to seek that discovery and opts to do so.

A follow-up call was held on April 23, 2018, during which a similar discussion took place with a larger number of defendants participating.  Plaintiffs informed Defendants that they would likely file a motion seeking costs if Defendants did not agree to a 50/50 cost split.  Defendants reiterated they had never agreed to a 50/50 split and did not think it was appropriate or equitable.  Defendants thereafter circulated a revised cost-sharing proposal to Plaintiffs on April 26, 2018, pursuant to which costs would be shared equally by Defendants and each of the three Plaintiff groups, but, consistent with the Court's orders, only to the extent those Parties sought access to OEM discovery.  Plaintiffs did not respond to Defendants' proposal.  Plaintiffs instead filed the instant Motion for an Order Directing Defendants to Pay Half of the Parties' Costs Relating to OEM Discovery ("Motion for Costs" or "Motion") on May 1, 2018.

The Parties have thus far received estimates from five OEMs: Toyota, FCA, Subaru of America, Honda, and Nissan.  The parties are still negotiating with Honda and Nissan, whose current estimates are the largest at nearly ███████████████ respectively.  The parties have not received any cost estimates from GM.  As the Special Master found in his recent order, these discovery costs are not insignificant.  *See* Order Denying Plaintiffs' Motion to Set an Expedited Briefing and Hearing Schedule, No. 2:12-md-02311, ECF No. 1898 at 2 (May 9, 2018) (OEM discovery will involve "significant expense").

## III.   ARGUMENT

### A.   Plaintiffs' Motion Is Inconsistent with the Court's Cost-Sharing Order.

Plaintiffs' motion seeks relief that is at odds with the cost-sharing order entered by the Special Master and affirmed by the Court (the "General Order") that established the 30/70 split of costs between the producing OEMs and the "Serving Parties."  The General Order consistently refers to the moving Plaintiffs and Defendants, collectively, as the "Serving Parties" and does not address how costs will be split among the "Serving Parties."  Plaintiffs argue, remarkably, that the General Order's silence concerning the split among the Serving Parties, and its failure to differentiate among the "Serving Parties," is tantamount to an order that all OEM production costs will be "split equally" between Plaintiffs and Defendants.  *See* Mot. at 2-5; Reiss Decl. ¶¶ 4-7.  Plaintiffs also presume that the Special Master, in issuing the General Order on cost sharing, and the Court in affirming it, hold the same view with respect to the splitting of cost-sharing expenses.  *See* Mot. at 5-6.

But the plain language of the Special Master's cost-sharing order cannot be reconciled with Plaintiffs' interpretation.  The Special Master expressly provided a safeguard to prevent any Party from having to pay for any discovery it chooses not to seek or assesses to be more costly than it is worth, as long as that Party forgoes requesting that the discovery be produced.  *See* General Order

at 7.  This safeguard is available to Plaintiffs and Defendants alike:  Each has "the right to refuse to go forward with some or all of [an OEM's] production if the Serving Parties so choose."  *Id.*

Plaintiffs nonetheless argue that the General Order "does not provide grounds for individual party-by-party rejection" of the OEMs' cost estimates, and that the Parties may thus only "collectively . . . challenge" them.  Mot. at 15 (citing General Order at 7).  First, as discussed below, cost estimates are not the only appropriate basis for rejecting OEM discovery.  Second, Plaintiffs' position is simply wrong:  it is contradicted by the plain language of the General Order.  While ostensibly invoking the Order's provisions, Plaintiffs quietly insert their own preferred cost-sharing terms into their submission and proposed order, even where clearly at odds with the final terms of the Order entered by the Special Master.  *See, e.g.*, Mot. at 11, 15, 19.  Plaintiffs' attempt at revising the cost-sharing order now is completely improper. A motion to reconsider the OEM discovery orders of 2016 and 2017 is long since time-barred, and Plaintiffs' poorly disguised attempt to circumvent that time bar – this Motion for Costs – should be denied.  *See Christian v. 43rd Dist. Court for Michigan,* No. 13-cv-12618, 2014 WL 7100499, at *1 n.1 (E.D. Mich. Dec. 12, 2014) (construing a motion to disqualify as a motion to reconsider and denying the motion as untimely in violation of the Court's local rules); E.D. Mich. LR 7.1(h)(1) ("a motion for . . . reconsideration must be filed within 14 days after entry of the judgment or order"); *see also* General Order at 8.

Plaintiffs also contend that Defendants "have made no showing that the OEMs' cost estimates are unreasonable or otherwise inconsistent with the Court's orders."  Mot. at 15.  But there is no such requirement that Defendants do so when refusing OEM productions.  *See* General Order at 6-7.  The General Order contains two separate provisions regarding cost-sharing. Subsection (a) applies to costs for the 30(b)(6) depositions that had already taken place and

subsection (b) applies to the OEMs' collection and production costs, i.e., the subject matter of this Motion. *See id.* While section (a) permits the Parties only to "object to the reasonableness" of the deposition costs and fees; section (b) has no such limitation. *See id.* The reason for this is clear: at the time this Order was issued, the depositions discussed in subsection (a) had already taken place and OEMs had already incurred the costs, so the optional relief in subsection (b), "rejection" of the OEMs' cost estimates and productions, was not available for the deposition costs. Plaintiffs erroneously seek to conflate the provisions and import the "reasonableness" language from subsection (a) into their request for relief in this motion. *Id.* at 7. But subsection (b) unambiguously transitions to a separate category of prospective discovery, imposing a different cost-shifting split on the parties, excluding attorneys' fees where subsection (a) had included them, and making available to Plaintiffs and Defendants the option to "refuse to go forward with some or all of [any OEM's] production," unqualified by any reasonableness assessment. *Id.* The reason for this is also clear: the costs involved in subsection (b) have not yet been incurred by the OEMs and any Party should only be required to pay for the costs it is asking the OEMs to incur. If a Party does not want the discovery, the Order does not require that Party to pay for it.

Moreover, Plaintiffs' interpretation would strip the provision of any real utility, for it is only when there *is* a disagreement about what information to pursue that the provision of the Order becomes allowing a Party to "opt out" of receiving discovery that it deems either unnecessary or too costly becomes necessary. In other scenarios, all parties would either be in agreement as to the OEM discovery that should be produced, or in agreement that no party will request production at all. In those scenarios, however, production decisions are self-effectuating. It is only where the Parties are *not* in accord that one or more of them would need to invoke the safeguard provision

7

and "refuse to go forward" with, rather than receive and pay a share of costs for, the disputed production.

In fact, Plaintiffs' position that any one Party can impose on all other Parties the costs of pursuing OEM discovery that only that Party wants—which is the effect of Plaintiffs' "unanimity" principle—would necessarily turn this safeguard on its head. In this scenario, the Special Master would have ordered the opt-out safeguard only for it to be invoked when the Parties are in full agreement – precisely when it is not needed – while at the same time allowing one party to force other parties into the exact circumstance the safeguard seemingly exists to prevent: the hijacking of the cost-sharing process and the compelled payment for discovery that Parties neither want nor need, and have not requested. In short, the interpretation Plaintiffs seek to superimpose on the cost-shifting order would provide *no* mechanism for Defendants to opt out of taking, and paying for, OEM productions they have rightfully "refuse[d]" under the General Order unless all other Parties agreed to do so.[3] This interpretation effectively renders a key provision of the General Order a nullity and should be rejected by the Court.[4]

---

[3] The Special Master previously recognized the importance of keeping Parties free from paying undue costs for discovery they do not wish to obtain and do not plan to use, carving out the DENSO Defendants from terms governing OEM discovery they did not wish to pursue. *See* Order, No. 2:12-cv-00101, ECF No. 370 (Dec. 29, 2016).

[4] Likewise, Plaintiffs' proposal reads out of the General Order the provision which permits later (non-Serving) Parties to opt in to OEM discovery and cost-sharing, should they wish to do so. General Order at 4 n.4. Plaintiffs' interpretation requires all Defendants, whether a Serving Party or not, to pay for the costs of OEM discovery regardless of whether they ever requested it. This renders the Special Master's footnote meaningless. Together, the presence of these provisions makes clear that a Party should only pay for OEM discovery if the party requests production after receiving the OEM's cost estimate.

**B.      There Is No Agreement Establishing A 50/50 Split.**

Plaintiffs attempt to manufacture a cost-sharing "understanding" that they claim was just shy of being "cemented in a formal agreement," but which never existed.  Mot. at 16.  The Parties have not reached any agreement as to how the 70% share of OEM production costs will be allocated.  That it "has always been Plaintiffs' understanding" that these expenses would be split equally between Plaintiffs and Defendants, or that Plaintiffs unilaterally "believed that Defendants had that same understanding," is of no moment.  *See* Mot. at 2, 15.  Nor is this narrative supported by Plaintiffs' conduct over the last eighteen months, during which EPP counsel in particular posed numerous inquiries to the Parties, including Defendants, to determine whether there was yet consensus on the apportionment of the 70% share.  *See infra* page 11.  No defendant provided its consent to the split that Plaintiffs now claim was "agreed" in response to any of these inquiries.

Indeed, as plaintiffs concede in their own declaration, "Defendants have *not* confirmed" any agreement to split the Parties' share of OEM production costs 50/50.  Reiss Decl. ¶ 17 (emphasis added); Reiss Decl. ¶¶ 20-21 ("The Parties were not able to reach agreement prior to filing this motion . . . .").  And when Plaintiffs did formally propose their preferred 50/50 split in a draft stipulation and order provided to Defendants on April 11, 2018, Defendants conferred internally and rejected this proposal in no uncertain terms. Defendants sent a revised version of the stipulation and explained to Plaintiffs why the 50/50 split and required payment of costs "as they come due" on Plaintiffs' timeline were inequitable and untenable for the vast number of Defendants currently in the MDL, some of whom are new to the MDL and have not previously had the chance to participate in these OEM discovery efforts.  *See* Email from J. Amato to OEM Subpoenas Listserv (April 26, 2018) (attaching Defs.' revised stipulation), attached hereto as Ex. B.

Indeed, communications from Plaintiffs themselves since the General Order was issued have also made clear that no agreement was made, and that the Parties did not "all underst[an]d that costs would be split equally." *Contra* Mot. at 16. This reality is abundantly clear in EPP counsel's written and oral communications with the Parties' OEM working groups, in which she repeatedly acknowledged that the cost-sharing issue remained unresolved amongst the Parties. *See, e.g.,* Email from R. Spiegel to OEM Subpoenas Listserv (June 22, 2017) (listing "Cost-sharing" on the Parties' June 23 call agenda), attached hereto as Ex. C; Email from R. Spiegel to OEM Subpoenas Listserv (Dec. 14, 2017) (seeking responses from all Parties regarding EPPs' proposed cost-sharing agreement), attached hereto as Ex. D; Email from R. Spiegel to OEM Subpoenas Listserv (Mar. 16, 2018) (stating in recap of weekly OEM call that "EPPs will draft and circulate *potential* cost-sharing agreement between the Parties.") (emphasis added), attached hereto as Ex. E.

Nor would Defendants have agreed that a 50/50 split of third-party costs in a multi-district litigation in which three independent proposed classes of IPPs have each brought suit against Defendants. Plaintiffs cite *Schweinfurth v. Motorola Inc.*, *Clean Harbors Envtl. Servs. v. ESIS, Inc*., and *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.* for their claim that it is "common practice" to apply a 50/50 split when cost-sharing is ordered. *See* Mot. at 11 (citing No. 1:05-cv-0024, 2008 WL 4449081 (N.D Ohio Sept. 30, 2008); No. 09 C 3789, 2011 WL 1897213 (N.D. Ill. May 17, 2011); and 240 F.R.D. 401 (N.D. Ill. 2007)). None of these authorities are decisions in multi-district litigations like the *Auto Parts* matters, which involve distinct claims against different defendants all with varying discovery schedules. Although a 50/50 split may have been appropriate in a single action with few litigating parties, it is hard to see how a rubber-stamp

application of the outcome of such cases would be instructive to a sprawling MDL like *Auto Parts*, consisting of 43 separate parts cases consolidating actions filed by numerous plaintiff classes.

Moreover, Plaintiffs' authorities are factually inapposite.  In each of these cases, the court imposed cost-sharing (or -shifting) because one party required another party to produce or collect highly burdensome discovery for the *first party's* benefit, and the court wanted to ensure that the producing party was not being unduly burdened or, as one court put it, subjected to discovery "as a weapon to compel settlement."  *Schweinfurth*, 2008 WL 4449081, at *2.  .  Here, however, it is the OEMs that are subject to discovery, not Plaintiffs.  Plaintiffs are asking Defendants to pay for third-party discovery even though Defendants are not currently seeking that discovery, are not requesting access to it, and thus will not be receiving any "benefit" from it.  As there will be no benefit to Defendants from the production of OEM discovery they neither receive nor access, the cases cited by Plaintiffs actually support Defendants' position that cost-sharing should not be required unless and until a party opts to request an OEM's production.

Plaintiffs incorporate into their Motion numerous mischaracterizations of Defendants' position and allegations that Defendants have acted in bad faith, claiming in absolute terms that Defendants "no longer wish to seek OEM discovery . . . or pay any costs for that discovery."  Mot. at 10.  Defendants have repeatedly explained to Plaintiffs that Defendants remain participants in the OEM discovery process but are not seeking OEM discovery *at this time*.  For many Defendants, who are in very early stages of later-filed cases, which have not entered into discovery yet, the reason is self-evident.  Defendants are by no means required to seek discovery on Plaintiffs' schedule and make premature discovery decisions merely because Plaintiffs, who are in all Parts Cases, have an early need for the OEMs' information.  Even in the *OSS* case, which has the nearest

11

class certification deadline, many *OSS*-specific cost estimates have not been finalized and the Serving Parties disagree on the scope of discovery to be produced.[5]

Each Defendant is entitled to make informed decisions about what discovery to seek at the appropriate stage of its proceedings and, in some instances in this MDL, Defendants are *required* to stagger their access to certain OEM discovery until an appropriate time. *See* OEM Confidentiality Order, No. 2:12-cv-02311, ECF No. 1579 (Dec. 29, 2016). Part-specific upstream discovery has also been ordered to proceed on a staggered, case-by-case basis, such that requiring Defendants to determine whether they want downstream discovery from the OEMs now will force all Defendants not in *OSS* to evaluate the usefulness of downstream discovery in the absence of final negotiated terms of the upstream discovery that will be available. Accordingly, there are any number of Defendants who may still determine that OEM discovery would be of use to their cases, but they won't be able to make that determination on Plaintiffs' schedule or on Plaintiffs' command. Instead, each Defendant, and each case, is differently situated, and the Parties' cost-sharing plan must take into account that, at the time Plaintiffs decide to make a given production request, some Defendants will not have been privy to nearly enough information so as to be able to conduct an informed assessment of their need for third-party discovery.

---

[5] As of May 15, 2018, Subaru, Honda, Nissan, and General Motors have not yet provided complete OSS upstream discovery cost estimates. Further, the OEM Orders do not contemplate which types of OSS products to include in upstream discovery requests, and the Parties presently disagree on this point. Plaintiffs' purported OSS-product class includes seat belts and sensors, which Toyoda Gosei, the only remaining Defendant in the *OSS* case, contests and does not manufacture or sell. If Toyoda Gosei were required to pay for all discovery sought by Plaintiffs, as proposed in the Plaintiffs' Motion for Costs, discovery could not move forward until the Parties agreed on the types of OSS to be included, which could significantly delay OEM production. *See also infra* fn. 6. Toyoda Gosei in the *OSS* case, and defendants in other cases, have the right under the General Order to not pursue some or all of the requested discovery from OEMs as the cases develop over time. *See, e.g.*, General Order at 7. By contrast, Defendants' proposal allows Plaintiffs to move forward to obtain the discovery they seek from OEMs.

For instance, one issue Defendants must be well equipped to assess is the appropriateness of costs for what they will receive in return. In this regard, Plaintiffs' suggestion that the current OEM estimates are all objectively reasonable, a determination they are not permitted to make on behalf of Defendants, must be cabined by the incomplete list of estimates provided with the Motion. Reiss Decl. Ex. B (listing estimates from only Toyota, FCA, and Subaru of America). Plaintiffs failed to include the largest estimates proposed to the Parties to this point, by Honda ███████ and Nissan ███████ which are still under negotiation. It should also be noted that the OEM cost estimates received to date only account for a small fraction of upstream discovery costs, which is expected to be more labor-intensive for the OEMs to produce, as it is part-specific, and therefore may add significant costs to the totals for the various part cases. Accordingly, Plaintiffs' Exhibit B provides little insight into the final amount of costs to be shared and is not enough to provide recently added Defendants the information necessary to make such an assessment.

### C. Compelling Defendants to Pay for Discovery They Do Not Seek Violates Due Process and Fundamental Fairness.

Plaintiffs' proposed stipulation and order would frustrate Defendants' ability to litigate vigorously in their own defense. Here, IPPs' counsel themselves have previously characterized the cost-shifting provisions in this matter as "unprecedented." See May 4, 2017 Hearing Tr. at 19, No. 2:12-md-02311, (ECF No. 1761) ("So this cost-sharing decision, the 60 percent, the 70 percent, this was a procedural decision and it is unprecedented. In fact . . . none of the hundreds of attorneys that represent plaintiffs and defendants in auto parts are aware of such significant cost shifting in similar price-fixing cases."). Further requiring that Defendants pay for OEM discovery they choose not to pursue, and worse – to fund Plaintiffs' use of that discovery in pursuit of claims against Defendants – is not only unprecedented, it is grossly and fundamentally unfair. Indeed,

"[a] defendant has a due process right to *challenge* the plaintiffs' evidence at any stage of the case," not an obligation to fund its acquisition. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015) (emphasis added).

To be clear, Defendants do not contest that parties who intend to utilize discovery may be required to share in the costs of procuring it. But where, as here, one or more parties has not requested and has no present use for the discovery, they should not be coerced into complying with a production schedule dictated by opposing parties who are differently situated. For many Defendants, the time is not yet ripe for any decision to be made with respect to downstream discovery. Due process forbids compelling those Defendants to blindly decide whether and what OEM discovery they should seek, particularly when Plaintiffs acknowledge that many of the remaining cases do not even have a discovery schedule. *See* Mot. at 18 fn. 9 ("Plaintiffs expect to submit [discovery] schedules in other cases in the near future."). Requiring Defendants to pay for discovery that they do not affirmatively seek or want is fundamentally unfair and finds no support in this Court's Orders or the Federal Rules of Civil Procedure. *See, e.g., In re Puerto Rico Elec. Power Authority*, 687 F.2d 501, 506 (1st Cir. 1982) (discussing the "well-accepted principle that each party bear the ordinary burden of financing his or her own suit" embodied in the Federal Rules).

Of equal concern is the fact that Plaintiffs and Defendants are not similarly situated in terms of need for these productions, and it is disingenuous for Plaintiffs to claim otherwise.[6] While

---

[6] In the *OSS* case, for example, where Toyoda Gosei would be the sole Defendant required to pay upstream discovery costs, Plaintiffs are seeking discovery relating to seat belts—a product Toyoda Gosei has never sold or manufactured. *See* Ex. F, attached hereto, Email from Floyd Short to Richard Vargas (May 19, 2018) (providing counsel for General Motors with a list of *OSS* parts to be used in identifying data for production, including "all types of seat belts, lap belts, seat belt and lap belt assemblies, seat belt and lap belt modules (and including their component parts, such as fabric, anchors, buckles, buckle assemblies, plate assemblies, force limiters, height adjusters, pre-

Defendants might choose to utilize OEM data in the course of asserting their defenses, Plaintiffs

bear the burden of proof at both the class certification and merits stages, and they accordingly *need*

OEM discovery analysis in order to succeed on their claims.  For this reason, the Court should find

Plaintiffs' claims that the OEM discovery is "[n]ecessary to [b]oth [p]arty [s]ides" and "will

benefit both Plaintiffs and Defendants," Mot. At 13, 14, to be "futile, for it is indeed Plaintiffs'

burden to prove what they have alleged against Defendants, and whatever costs are incurred in

doing so, these costs must be borne by the party seeking the information – Plaintiffs." *Last Atlantis*

*Capital, LLC v. AGS Specialist Partners*, No. 04 C 0397, 2011 WL 6097769, at *3 (N.D. Ill. Dec.

5, 2011); *see also Robinson v. Gen. Elec. Co.*, No. 09-cv-11912, 2016 WL 4988013 at *6 (E.D.

Mich. Sept. 19, 2016).

Defendants are not standing in the way of Plaintiffs taking whatever OEM discovery they

deem it is in their interest to pursue; to the contrary, Defendants have made clear that Plaintiffs

should proceed independently with their requests for production if they so desired.  *See* Mot. at 9

(citing Toyoda Gosei's position that it "do[es] not object to any other Serving Party requesting

discovery . . .").  Defendants have other options for defending their cases, and thus more to

evaluate.  Defendants may choose, for example, to oppose class certification based solely on the

OEMs' declarations that any cost increases of auto parts were not passed on to auto dealers, or that

the unique, individualized nature of consumer automotive purchases defeats predominance.

---

tensionsers, retractors, bolts, adjusters)"); Ex. G, attached hereto, Email from Paul Cauley to
William Reiss (May 1, 2018) (providing information regarding seat belt assemblies for Nissan
vehicles, per requests from counsel for EPPs).  Under Plaintiffs' cost-sharing proposal, Toyoda
Gosei would not only be forced to share in discovery requests for products it does not make, it
would be required to pay half of the Serving Parties' costs relating to that discovery while Plaintiffs
would divide their costs between two plaintiff class groups.  Thus, Toyoda Gosei would be forced
to pay twice what each plaintiff class group (ADPs and EPPs) would pay for discovery that solely
benefits Plaintiffs.

Contrary to the Plaintiffs' assertions, Defendants did not cede control over their individual litigation strategies by coordinating on OEM discovery in 2015.  Nothing in the final OEM orders *requires* Defendants to accept the discovery ordered by the Special Master.  In circumstances such as these, far from requiring non-requesting Parties to subsidize those Parties who need or choose to pursue the OEMs' productions, principles of fundamental fairness and equity require that only those Parties who opt to invoke the OEMs' production efforts should be held financially responsible for those choices.

Plaintiffs ring the alarm to accuse Defendants of pulling back from the OEM discovery process in an attempt to "get a free ride" and access, by way of the underlying documents and data Plaintiffs will turn over along with their class certification motions and expert reports, the OEM production materials for which Defendants "knew all along they would need to pay."  Mot. at 13-16.  Defendants are engaged in none of these tactics.  Rather, Defendants' response reflects the vastly different situations each Defendant, and each parts case, is in and considers the need for each Defendant to be positioned to adequately assess case information and strategy before determining whether any OEM discovery can be useful, and at what cost.

Plaintiffs contend Defendants should be required to pay for OEM discovery because certain defendants may receive the information when Plaintiffs rely on the information in their expert reports when moving for class certification.  But just because Plaintiffs may use such information in one case does not obligate every Defendant to pay for their discovery efforts. Nor does it even require the Defendants in the action where Plaintiffs proffer such information in support of their motion to fund their efforts at carrying out their litigation burden.

The standard procedures and protections built into the MDL by the Parties, including protective orders and expert stipulations, and the Federal Rules do not cease to apply because a

party has to expend resources for the discovery it opts to pursue.  Despite Plaintiffs' unfounded accusations, the OEM discovery process is no different than typical third-party discovery efforts, in which a party may seek to depose a third-party witness, and another party cross-moves to do the same.  The parties may jointly coordinate the logistics of the deposition, but typically each pays costs *only if it participates* taking the deposition.  *See Last Atlantis*, 2011 WL 6097769, at *2 (rejecting request that Defendants pay 50% of all costs incurred by Plaintiffs in pursuing third-party discovery because "between a requesting party and a non-requesting, nonproducing opponent in the underlying litigation, . . . the Court finds the normal approach that each party bears its own burden of litigation most appropriate").  Moreover, the parties then pick and choose what evidence they will seek at the deposition and use to support their case.  They are not then entitled to reimbursement from an opposing party because the deposition generated costs and the opponent may get access to some of the testimony via expert discovery.  The OEM discovery structure, fortified by the orders of the Special Master and the Court, allows Plaintiffs nothing more.

Plaintiffs' Motion appears even more of an overreach in light of the possibility that, should Plaintiffs prevail in these actions, some or all of Plaintiffs' costs in seeking OEM discovery would be recoverable by Plaintiffs under Section 1920 of the U.S. Code.  *See* 28 U.S.C. § 1920; *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 295 (6th Cir. 2015).  Further, IPPs have released from "costs and expenses associated with discovery" all Defendants with whom they have entered into settlements, by way of a near-identical provision in each agreement:

> Other than as set forth in this Paragraph 26, Panasonic shall not be liable for any of the costs or expenses of the litigation incurred by Automobile Dealership Plaintiffs in the Actions, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Settlement Class administration and costs.

Automobile Dealer Plaintiff Settlement Agreement with Panasonic Corporation and Panasonic Corporation of North America, No. 2:13-cv-01702, ECF No. 115 at 19 (March 30, 2015). Settled defendants should be referenced in no part of IPPs' Motion.

> **D.    Defendants' Cost-Sharing Proposal Adheres to This Court's Rulings and Is Reasonable.**

In response to Plaintiffs' proposal that would shift 50% of all Plaintiffs' OEM discovery costs—whether Defendants requested the discovery or agreed to such costs—the Defendants counter-proposed a reasonable stipulation that would only charge each party in the MDL an equitable share to access OEM discovery when and if requested. *See* Ex. B. Under Defendants' proposal, consistent with the Court's Order, once an OEM provides cost estimates, only those parties who agree to move forward with discovery would pay for and access such information.

Moreover, any similarly situated Parties seeking OEM discovery, whether it be additional plaintiffs' groups such as GEICO or the Direct Purchaser Plaintiffs, or other defendants, would pay an equal share for such discovery at the time it is sought. For example, in the hypothetical scenario where EPPs, ADPs, TEDPs, and Defendants in a particular *Auto Parts* case sought OEM discovery, each of those groups would pay for an equal share of the OEM discovery costs (4 groups @ 25%). This allocation is fair and reasonable given that each of the Plaintiff class groups are prosecuting multiple actions against defendants in each *Auto Parts* track, and defendants are generally only involved in one or two parts cases. Moreover, Defendants' stipulation also provides for a mechanism whereby parties who wish to opt into OEM discovery at a later point in time (after it had been produced and paid for) would reimburse the other Parties for access. This not only fairly treats defendants in later-filed (or as-yet-filed) cases who wish to decide later whether to join the OEM discovery process, but would also provide a mechanism for other plaintiff groups like

the DPPs, State AGs, or GEICO to access such discovery without further Court rulings, as contemplated by the Special Master in the General Order.  *See* General Order at 4 n.4.

The defendants' stipulation provides a workable path for all parties interested in OEM discovery[7] to share in the costs and continue efficiently working together when their interests are aligned.

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiffs' Motion be denied.

DATED:          May 15, 2018

By:                                                                          */s/ Jeffrey J. Amato*
                                                                            Jeffrey L. Kessler
                                                                            Eva W. Cole
                                                                            Jeffrey J. Amato
                                                                            Angela A. Smedley
                                                                            **WINSTON & STRAWN LLP**
                                                                            200 Park Avenue
                                                                            New York, NY 10166
                                                                            (212) 294-4685 (Telephone)
                                                                            (212) 294-4700 (Facsimile)
                                                                            jkessler@winston.com
                                                                            ewcole@winston.com
                                                                            jamato@winston.com
                                                                            asmedley@winston.com

                                                                            Brandon W. Duke
                                                                            **WINSTON & STRAWN LLP**
                                                                            1111 Louisiana Street, 25th Floor
                                                                            Houston, TX 77002
                                                                            (713) 651-2636 (Telephone)
                                                                            (713) 651-2700 (Facsimile)
                                                                            bduke@winston.com

                                                                            *Counsel for Defendants Panasonic Corp. and*
                                                                            *Panasonic Corp. of North America*

---

[7] Defendants' stipulation also imposes no additional burden on the OEMs, as all that would likely be required is making a copy of a flash drive on which the OEM's materials had already been produced.

*/s/ Sterling A. Marchand*
Sterling A. Marchand
John Taladay
Mark Miller
Heather Souder Choi
**Baker Botts L.L.P.**
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
202-639-7700
Fax: 202-639-7890
sterling.marchand@bakerbotts.com
john.taladay@bakerbotts.com
mark.miller@bakerbotts.com
heather.choi@bakerbotts.com

*Counsel for Defendants Toyoda Gosei Co. Ltd., Toyoda Gosei North America Corp. and TG Missouri Corp.*

*/s/Gary J. Mouw*
Ronald G. DeWaard (P44117)
Gary J. Mouw (P69236)
Matthew T. Anderson (P79846)
**VARNUM LLP**
Bridgewater Place, P.O. Box 352
Grand Rapids, MI  49501-0352
616/336-6000
rgdewaard@varnumlaw.com
gjmouw@varnumlaw.com
mtanderson@varnumlaw.com

*Attorneys for Bosal Industries-Georgia, Inc.*

*/s/William M. Sullivan Jr.*
William M. Sullivan Jr.
Michael L. Sibarium
Jeetander T. Dulani
Adya S. Baker
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036-3006
Telephone: (202) 663-8000
Facsimile: (202) 663-8007

20

Email: wsullivan@pillsburylaw.com
michael.sibarium@pillsburylaw.com
jeetander.dulani@pillsburylaw.com
adya.baker@pillsburylaw.com

*Counsel for Mikuni Corporation and Mikuni
American Corporation*

/s/   Bradley Love
**BARNES & THORNBURG, LLP**
Bradley Love
Kendall Millard
11 South Meridian Street
Indianapolis, IN 46204-3535
Tel: 317-231-7461
Bradley.Love@btlaw.com
Kendall.Millard@btlaw.com

**DYKEMA GOSSETT PLLC**
Howard B. Iwrey (P39635)
Cale A. Johnson (P78032)
39577 Woodward Avenue
Bloomfield Hills, Michigan 48304
Tel: (248) 203-0526
hiwrey@dykema.com
cjohnson@dykema.com

*Counsel for KYB Corporation (f/k/a Kayaba Industry
Co. Ltd.) and KYB Americas Corporation*

/s/   Bradley Love
**BARNES & THORNBURG, LLP**
Bradley Love
Kendall Millard
11 South Meridian Street
Indianapolis, IN 46204-3535
Tel: 317-231-7461
Fax: 317-231-7433
Kendall.Millard@btlaw.com
Bradley.Love@btlaw.com

Valerie Mullican (# P74045)
171 Monroe Avenue N.W., Suite 1000
Grand Rapids, Michigan 49503
Tel: 616-742-3930
Fax: 616-742-3999
valerie.mullican@btlaw.com

*Counsel for Defendant Green Tokai Co., Ltd.*

/s/ Patrick F. Linehan
Patrick F. Linehan (DC Bar No. 472183)
Rachel B. Peck (DC Bar No. 998673)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202) 429-3000
Facsimile:  (202) 429-3902
plinehan@steptoe.com
rpeck@steptoe.com

Rudiger L. Breitenecker
**BREITENECKER & ASSOCIATES**
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
Telephone:  (212) 332-7592
Facsimile:  (212) 202-5482
rudi@balaw.us

*Counsel for Defendants Sanoh Industrial Co., Ltd
and Sanoh America, Inc.*

/s/ Eileen M. Cole
Eileen M. Cole
Christopher M. Curran
Email: ccurran@whitecase.com
Eileen M. Cole
Email: ecole@whitecase.com
Samuel J. Sharp
Email: samuel.sharp@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:  (202) 626-3600
Facsimile:   (202) 639-9355

*Counsel for Maruyasu Industries Co., Ltd. and
Curtis-Maruyasu America, Inc.*

/s/ William Monts
William Monts
Benjamin F. Holt
**HOGAN LOVELLS US LLP**
555 Thirteenth Street NW

22

Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
benjamin.holt@hoganlovells.com
william.monts@hoganlovells.com

Scott T. Seabolt
**SEABOLT LAW FIRM**
17199 N. Laurel Park Drive
Suite 215
Livonia, MI  48152
(248) 717-1302
sseabolt@seaboltpc.com

*Counsel for Mitsubishi Heavy Industries, Ltd and
Mitsubishi Heavy Industries Climate Control, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2018, I caused the foregoing *Defendants' Memorandum In Opposition To Plaintiffs' Motion For An Order Directing Defendants To Pay Half Of The Parties' Costs Relating To OEM Discovery* to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.

DATED:    May 15, 2018                              */s/ Angela A. Smedley*
                                                   Angela A. Smedley
                                                   WINSTON & STRAWN LLP
                                                   200 Park Avenue
                                                   New York, NY 10166
                                                   (212) 294-5348 (Telephone)
                                                   (212) 294-4700 (Facsimile)
                                                   asmedley@winston.com

24