## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : |
| | :     Master File No. 12-md-02311 |
| | : |
| | :     Honorable Marianne O. Battani |
| In Re: All Cases | : |
| | : |
| | : |
| THIS DOCUMENTS RELATES TO: | : |
| | : |
| END-PAYOR ACTIONS | : |
| DEALERSHIP ACTIONS | : |
| | : |

## PLAINTIFFS' OMNIBUS REPLY IN FURTHER SUPPORT OF MOTION FOR AN ORDER DIRECTING DEFENDANTS TO PAY HALF OF THE PARTIES' COSTS RELATING TO OEM DISCOVERY

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  FACTS ............................................................................................................4

    A.  Subject Defendants' Participation in the Coordinated OEM Discovery Effort ........................................................................................................4

    B.  Toyoda Gosei, the Only Remaining Defendant in the *OSS* Case, Was Active in the OEM Discovery Effort From the Beginning.....................................6

III.  ARGUMENT ....................................................................................................6

    A.  The OEM Cost Order Explicitly States That Subject Defendants Must Share the Parties' Collective Portion (70%) of Ordered Costs, and Does Not Provide an Escape Clause for Subject Defendants to Opt Out or Pay Later ........................................................................................................6

        1.  The OEM Cost Order Requires Subject Defendants to Share Costs ...........7

        2.  There Is No Provision in the OEM Cost Order That Allows Subject Defendants to Opt Out with an Option to Buy Back in Later.....................7

        3.  The OEM Cost Order Does Not Exempt Subject Defendants from Their Cost Sharing Obligations Because They Are Parties to "Later-Filed Cases" or Chose Not to Participate in Some or All of the OEM Discovery Process ........................................................................9

    B.  Subject Defendants Have Repeatedly Stated How Critical OEM Discovery Is to Their Defenses ................................................................................14

    C.  Given That OEM Discovery Equally Reflects the Input and Requests of Plaintiffs and Defendants Alike, Subject Defendants Should Split Costs Equally ......................................................................................................18

        1.  The Discovery Orders for the Six Lead OEMs Equally Reflect the Requests of Both Party Sides....................................................................18

        2.  Defendants' Cost Sharing Proposal Is Inequitable ...................................20

    D.  The Arguments in the Supplemental Briefs Also Fail to Identify Any Basis to Exempt Defendants from Their Cost-Sharing Obligations...............................21

        1.  Plaintiffs' Settlement in Principle with Green Tokai Does Not Absolve Green Tokai of Its Obligations to Comply with the OEM Cost Order ................................................................................................21

2.      Bosal Must Contribute to the Parties' Share of All OEM Costs ................ 22

3.      Regardless of Whether Maruyasu Joined the Motions to Compel in Error, They are Still Obligated to Share in the Costs of OEM Discovery ................................................................................................. 23

IV.     CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Auto. Parts Antitrust Litig.*,
   No. 2:12-md-02311, 2015 U.S. Dist. LEXIS 24550
   (E.D. Mich. Mar. 2, 2015) ...................................................................................................21

*Nat'l Union Fire Ins. Co. v. Arioli*,
   No. 92-CV-40587-FL, 1996 U.S. Dist. LEXIS 15390
   (E.D. Mich. Mar. 29, 1996) .................................................................................................24

*Watkins v. Bailey*,
   484 F. App'x 18 (6th Cir. 2012) ..........................................................................................12

**Rules**

Federal Rule of Civil Procedure 30(b)(6) ............................................................................2, 5, 18

Federal Rule of Civil Procedure 45 ...............................................................................................9

**Court Orders**

Special Master's Order Re: the Parties' Renewed Mot. to Compel Discovery from
   Certain Non-Party OEMs and their Affiliated Entities,
   2:12-md-02311-MOB-MKM, (E.D. Mich. Jan. 4, 2017), ECF No. 1584 ...................... passim

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

Special Master's Order Re: the Parties' Renewed Mot. to Compel Discovery from Certain Non-Party OEMs and their Affiliated Entities, 2:12-md-02311-MOB-MKM, (E.D. Mich. Jan. 4, 2017), ECF No. 1584 ("OEM Cost Order")

Plaintiffs[1] respectfully submit this omnibus reply to certain Defendants'[2] oppositions to Indirect Purchaser Plaintiffs' Motion for an Order Directing Defendants to Pay Their Equal Share of the Parties' Costs Relating to OEM Discovery.[3]  This reply is supported by the Supplemental Declaration of William V. Reiss ("Supp. Reiss Decl." or "Decl."), filed herewith.

## I.   INTRODUCTION

On May 5, 2017, the Court upheld the Special Master's ruling of January 4, 2017, and,

---

[1]  Indirect Purchaser Plaintiffs ("IPPs"), as used herein, refers to the indirect purchaser plaintiffs in the parts cases that are coordinated in *In re Automotive Parts Antitrust Litigation*, No. 2:12- md-02311 (E.D. Mich.) ("*IPP Parts Cases*"), including:  End-Payor Plaintiffs ("EPPs"); Automobile Dealer Plaintiffs ("ADPs"); and Truck and Equipment Dealer Plaintiffs ("TEDPs").  Only EPPs and ADPs ("Plaintiffs") join in this reply.

[2]  "Defendants," as used herein, refers to Defendants in the *IPP Parts Cases*.  The Defendants that are subject to Plaintiffs' motion are the following non-settled Defendants in the *IPP Parts Cases* (collectively, the "Subject Defendants"):  Bosal Industries-Georgia, Inc. ("Bosal"); Green Tokai Co., LTD ("Green Tokai"); Kayaba Industry Co., Ltd. d/b/a KYB Corporation and KYB Americas Corporation (collectively, "KYB"); Maruyasu Industries Co., Ltd. and Curtis-Maruyasu America, Inc. (collectively, "Maruyasu"); Mikuni Corporation and Mikuni American Corporation (collectively, "Mikuni"); Mitsubishi Heavy Industries, Ltd., Mitsubishi Heavy Industries America, Inc. and Mitsubishi Heavy Industries Climate Control, Inc. (collectively, "Mitsubishi Heavy"); Panasonic Corporation and Panasonic Corporation of North America (collectively, "Panasonic"); Sanoh Industrial Co., Ltd. and Sanoh America, Inc. (collectively, "Sanoh"); Showa Corporation and American Showa, Inc. (collectively, "Showa"); and Toyoda Gosei Co. Ltd., Toyoda Gosei North America Corp. and TG Missouri Corp. (collectively, "Toyoda Gosei").  Plaintiffs inadvertently named Tokai Kogyo as a Subject Defendant in their opening brief.  Plaintiffs previously dismissed Tokai Kogyo from this litigation and it is therefore not subject to the motion.  Hitachi, Ltd., Hitachi Automotive Systems, Ltd., and Hitachi Automotive Systems Americas, Inc. are no longer subject to the motion pursuant to a stipulation they entered into with TEDPs.

[3] *See* Indirect Purchaser Plaintiffs' Motion for an Order Directing Defendants to Pay Their Equal Share of the Parties' Costs Relating to OEM Discovery, 2:12-md-02311 (E.D. Mich. May 1, 2018), ECF No. 1884.  This reply responds to the following oppositions submitted by Defendants on May 15, 2018:  ECF Nos. 1901, 1902, 1904, 1905, 1906, and 1907.  Certain settled Defendants filed a statement to confirm that they are not subject to Plaintiffs' motion. *See* Statement of Certain Defendants in Response to Indirect Purchaser Plaintiffs' Motion for an Order Directing Defendants to Pay Half of the Parties' Costs Relating to OEM Discovery, 2:12-md-02311 (E.D. Mich. May 15, 2018).  To avoid any doubt, Plaintiffs' motion, and the relief requested therein, is limited to the "Subject Defendants" as defined and identified in footnote 2, *supra*.  Plaintiffs' motion does not extend to any other Defendant.

*inter alia*, ordered the Parties[4] to collectively pay 70% of the OEMs' costs related to collection and production of data and documents to be produced by the Six Lead OEMs.[5]  **The Court's OEM Cost Order is not directed to Plaintiffs alone.  Rather, it is explicitly directed to all Parties (*Plaintiffs and Defendants across all live IPP Parts Cases*).**  The OEM Cost Order dictates that with respect to upstream discovery (part-specific information), Plaintiffs and non-settled Defendants in the action for which upstream discovery is sought must pay the Parties' collective 70% of ordered costs.  With respect to downstream discovery (whole vehicle information that will be produced once for the benefit of all remaining cases), the OEM Order provides that Plaintiffs and all non-settled Defendants, across all live *IPP Parts Cases*, must pay the Parties' collective 70% of ordered costs.  Accordingly, all non-settled Defendants across the remaining *IPP Parts Cases* (*i.e.*, those that the Court directed to pay costs), are subject to Plaintiffs' motion and are collectively referred to herein as "Subject Defendants."

Despite their co-equal participation in three years of coordinated OEM discovery, and their many statements on the record as to why OEM discovery is critical to their defenses, Subject Defendants at the 11th hour now incredibly claim that they are no longer seeking the ordered OEM discovery.  They contend that they will not pay any costs now, and will simply decide later if they need the discovery, and buy-in at that time.  *In other words, Subject*

---

[4] "Parties," as used herein, refers collectively to Plaintiffs and Defendants in the *IPP Parts Cases*.

[5] *See* Special Master's Order Re: the Parties' Renewed Mot. to Compel Discovery from Certain Non-Party OEMs and their Affiliated Entities, 2:12-md-02311, (E.D. Mich. Jan. 4, 2017), ECF No. 1584 ("OEM Cost Order"), *aff'd*, Order Granting in Part and Denying in Part Certain Nonparty OEMs' Obj. to Order Re: the Parties' Renewed Mot. to Compel Discovery from Certain Nonparty OEMs and their Affiliated Entities, 2:12-md-02311 (E.D. Mich. May 5, 2017), ECF No. 1752.  The Special Master also ordered the Parties to collectively pay 60% of the OEMs' costs related to Rule 30(b)(6) depositions.  *See* ECF No. 1584 at 6-7.  As defined in footnote 4 of Plaintiffs' opening brief, the Six Lead OEMs are FCA, GM, Honda, Nissan, Subaru, and Toyota.

*Defendants will hedge their bets and defer seeking discovery on the off chance they settle, thereby leaving Plaintiffs to pay the full bill as it comes due, now.*

Subject Defendants claim they are not seeking a free ride at the expense of Plaintiffs, and provide a variety of hollow arguments, collectively and individually, as to why they should not be required to pay any costs for OEM discovery at this time. Among other things, Subject Defendants claim that the OEM Cost Order provides that they can selectively opt out of any portion of OEM discovery, piecemeal, for any reason they choose. Yet, the provision that Subject Defendants refer to was written to protect the Parties, collectively, and to allow them to decline certain categories if OEM cost estimates are too high. It was not meant as a loophole for parties to altogether opt out of paying their fair share of costs.

Subject Defendants also claim that they are no longer sure if they need the OEM discovery after all and, therefore, they should not have to pay for what they do not want. This argument is not credible given the hard-fought effort by Defendants to obtain OEM discovery from the inception of this process, and their many statements as to why this discovery is so critical to their defenses.

Certain Subject Defendants claim they should not have to pay any costs because they chose not to participate in certain aspects of OEM discovery or were named in later-filed cases, and were therefore not part of the earlier negotiations or motions to compel. This argument fails too, not only because the OEM Cost Order specifically governs *all* Defendants in the IPP Parts Cases, but also in light of Defendants' admissions that all Defendants, including those in later-filed cases, will need the same OEM discovery, and that Defendants would be at a great disadvantage if they were not to have access at the same time as Plaintiffs.

In any event, Plaintiffs should not be required to weigh the degree of involvement of each

Subject Defendant in the OEM discovery process. It is up to Subject Defendants to allocate their share of costs amongst themselves, as they see fit, just as Plaintiffs have done. Plaintiffs simply move for an order requiring Subject Defendants to pay their share of ordered costs as they come due, so that it is equitable, and ordered OEM discovery can move forward without delay. While the OEM Cost Order does not expressly provide for the 50/50 split that Plaintiffs believe was well-understood among the Parties, the Court should order this split now. It is only fair given the *joint* OEM discovery effort that has taken place for the equal benefit of both party sides. To hold otherwise would enable Subject Defendants to escape their obligations while requiring Plaintiffs to front all of the costs for discovery that has been sought and negotiated by both sides for years. Plaintiffs respectfully submit that such a result would fly in the face of Court-ordered coordinated third-party discovery for which the Special Master has devoted significant time and effort. Accordingly, Plaintiffs' motion should be granted.

## II.    FACTS

### A.    Subject Defendants' Participation in the Coordinated OEM Discovery Effort

As itemized in Exhibit A,[6] a number of Subject Defendants were involved in the joint OEM discovery effort from the outset, including by signing on to the July and August 2015 subpoenas to the OEMs and the January 19, 2016 motions to compel discovery from the OEMs.

Due to the massive number of Parties involved in OEM discovery, the Parties formed an email listserv to facilitate communication among one another. Decl. ¶ 3. The Parties used the listserv to communicate plans for OEM discovery to all Parties, including scheduled weekly all-party calls, which often included updates on negotiations with OEMs and the Parties' joint

---

[6] All references to exhibits are those attached to the Supplemental Reiss Declaration.

arguments and filings.  *Id.*  Plaintiffs have on record a number of the Subject Defendants'

counsel as joining the listserv, some from when it began in approximately August 2015.  *Id.*

Because the *IPP Parts Cases* include dozens of unique Defendants (approximately 74

different Defendant entities at the outset of the OEM discovery effort), Defendants also

appointed "liaisons" to help facilitate communication.  *Id.* ¶ 4.  For the Subpoenas, motions to

compel, and the various negotiations with OEMs, Defendants' liaisons at all times represented to

Plaintiffs that they were in consultation with the "joint defense group," in providing collective

requests, edits, and agreements to join and sign off on decisions and filings.  *Id.*  Defendants

provided their signature blocks for joint filings through their liaisons.  *Id.*  Plaintiffs did not ever

make joint filings without final confirmation from Defendants' or their liaisons.  *Id.*

As they prepared their requests for production to the OEMs, Plaintiffs and Defendants

collaborated on what categories of data and discovery they should request.  *Id.* ¶ 5.  At various

points in litigating OEM discovery, the Special Master or the Court ordered Plaintiffs and

Defendants to collaborate in drafting proposed orders and negotiating proposed orders with

OEMs, including the OEM Cost Order and the final orders which specify the exact categories of

data and documents to be produced by the Six Lead OEMs ("OEM-Specific Orders").  *Id.*  They

did so.

Counsel for Subject Defendants also attended a number of the Rule 30(b)(6) depositions

of OEMs, and participated in the questioning of certain witnesses, sharing time equally with

Plaintiffs.  For example, counsel for Subject Defendants Green Tokai and KYB attended the

30(b)(6) deposition of the Honda parties and examined the witness.  Ex. B at 216.  Counsel for

KYB also attended the 30(b)(6) deposition of the Nissan parties and examined the witness.  Ex.

C at 194–206.

**B.** **Toyoda Gosei, the Only Remaining Defendant in the *OSS* Case, Was Active in the OEM Discovery Effort From the Beginning**

Counsel for Toyoda Gosei has been involved in the joint OEM discovery effort since its inception. Decl. ¶12. Toyoda Gosei is listed on the Subpoena and joined both rounds of the Parties' motions to compel. Decl. of Steven N. Williams at 51, Att't C to Ex. A (Subpoena, List of Defendants), ECF No. 1186; Joint Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, ECF No. 1185; Renewed Motion to Compel, ECF No. 1495. Notably, Toyoda Gosei also signed Defendants' reply in support of the Parties' first motion to compel, in which Defendants laid out their specific arguments as to why OEM discovery was so critical to their defenses. *See* ECF No. 1246.

Heather Choi, the primary counsel identified to Plaintiffs for Toyoda Gosei, was particularly involved in the joint OEM discovery effort. Decl. ¶¶ 13-18, Ex. D. Ms. Choi joined the listserv upon its inception in August 2015 and communicated frequently with Plaintiffs' counsel over the course of the three-year joint effort. *Id.*

## III. ARGUMENT

Despite filing six separate briefs consisting of approximately 60 pages, Subject Defendants fail to provide the Court with a single legitimate justification to excuse them from paying their fair share of the Parties' collective court-ordered portion of OEM discovery costs. For the following reasons, Plaintiffs' motion should be granted.

**A.** **The OEM Cost Order Explicitly States That Subject Defendants Must Share the Parties' Collective Portion (70%) of Ordered Costs, and Does Not Provide an Escape Clause for Subject Defendants to Opt Out or Pay Later**

Subject Defendants argue that the OEM Cost Order provides them an escape hatch through which any and all Defendants can selectively opt out of any portion of ordered OEM discovery, for any reason they choose and simply buy back in later if, in their sole discretion,

they deem it necessary.  Defs.' Response at 5, No. 2:12-md-2311, ECF No. 1907 ("ECF No. 1907").  This argument rings hollow.

### 1. The OEM Cost Order Requires Subject Defendants to Share Costs

The OEM Cost Order explicitly defines which Plaintiffs and which Defendants must pay the costs of upstream and downstream discovery:

> Costs associated with production of discovery specific to an Auto Part Product shall be borne by those Serving Parties participating in (*i.e.,* not fully settled out of or otherwise dismissed from) the relevant Auto Parts Case at the time of production.  Costs associated with production of "downstream" discovery not specific to an Auto Part Product shall be borne by those Plaintiffs and Defendants participating in (*i.e.,* not fully settled out of or otherwise dismissed from) any individual Automobile Dealership or End-Payor Action.

ECF No. 1584 at § II.C.b., n.7.

Accordingly, for upstream discovery, Plaintiffs and non-settled Defendants in the auto part action at issue are ordered to pay the Parties' collective costs.  *Id.*  For upstream discovery, the Parties agreed with OEMs to prioritize those cases with class certification schedules.  Decl. ¶ 19.  Currently, only the *OSS* case has a class certification schedule, with Plaintiffs due to file their opening brief on October 17, 2018.  This means that for upstream discovery in *OSS* that is currently ordered to be produced, Plaintiffs and the only remaining non-settled Defendant in that part case, Toyoda Gosei, must pay the Parties' collective costs.  For downstream discovery, Plaintiffs and non-settled Defendants in all remaining *IPP Parts Cases* are ordered to pay the Parties' collective costs.

### 2. There Is No Provision in the OEM Cost Order That Allows Subject Defendants to Opt Out with an Option to Buy Back in Later

Nothing in the OEM Cost Order allows any Defendant to opt out of paying now, as costs come due, and buy back in later, if they ever think it necessary, *i.e.*, if their cases do not settle.

Despite the fact that they are unequivocally "Parties" to this litigation, Subject Defendants claim each of them can selectively opt out of OEM discovery (either in whole or in part) for any reason they choose. *See* ECF 1907 at 5. In support of this argument, Subject Defendants point to Section II.C.b. of the OEM Cost Order, which states:

> Regarding the costs of the OEMs' compliance with this Order and the specific Orders governing the scope of production by each OEM, the Serving Parties shall pay 70% of the OEMs' costs, including employee time, costs of copying, and costs of collection and production. The Serving Parties shall not pay any attorneys' fees. The OEMs shall work with the Serving Parties to find the lowest cost options available and will accept quotes provided by the Parties' vendors, if lower than quotes offered by the OEMs' selected vendors. The OEMs shall provide the Serving Parties with detailed cost estimates for each item to be produced, and the Serving Parties shall have the right to go forward with some or all of the production, if the Serving Parties so choose. No production shall take place before the Serving Parties have had a chance to review cost estimates and until the Serving Parties understand exactly what information is to be produced.

ECF No. 1584 at § II.C.b. Read in context, this provision does not grant Subject Defendants the unilateral right to defer their obligations to bear their fair share of costs of Court-ordered coordinated discovery at the expense of Plaintiffs, as Subject Defendants assert. To the contrary, the provision provides the Parties – collectively – with a mechanism to exclude the production of certain categories of information where an OEM's cost estimates may be too high. Decl. ¶ 6. Any contrary interpretation of the Order would be entirely untenable as the OEM-specific orders explicitly incorporate categories of information sought by both Plaintiffs and Defendants. Decl.

¶ 5.[7]  It would be virtually impossible to parse through the costs attributable to categories of information sought by Plaintiffs versus those sought by Defendants.[8]

### 3. The OEM Cost Order Does Not Exempt Subject Defendants from Their Cost Sharing Obligations Because They Are Parties to "Later-Filed Cases" or Chose Not to Participate in Some or All of the OEM Discovery Process

Certain Subject Defendants claim that sharing in the costs of OEM discovery sought jointly by Plaintiffs and Defendants "would frustrate Defendants' ability to litigate vigorously in their own defense." ECF No. 1907 at 13. Some say that because they were named in later-filed cases, they did "not previously have the chance to participate in these OEM discovery efforts," *id.* at 9. Others contend they *chose* not to sign onto the subpoena or the motions to compel the OEM discovery because they cannot yet make a decision as to what they will need from OEM discovery at this time, *id.* at 12–13. They argue that it would be unfair to make them pay for Plaintiffs' use of discovery they chose not to pursue and to use that discovery to support claims against Defendants. *Id.* at 13–14 .[9] Five defendants—Bosal, Green Tokai, KYB, Maruyasu, Sanoh—have submitted supplemental briefs (the "Supplemental Briefs") in which they lay out

---

[7] As discussed above, Defendants played a co-equal role in negotiating and litigating the discovery issues with the OEMs that resulted in the Court-Ordered OEM-specific orders.

[8] Defendants also argue that they are allowed to opt out based on an order regarding the DENSO Defendants ("DENSO"). *See* ECF No. 1907 at 8, n.3 (citing ECF No. 370, 2:12-cv-00101 (Dec. 29, 2016)). Contrary to Defendants' brief, the Special Master's order as to DENSO does not "carv[e] out the DENSO Defendants from the terms governing OEM discovery they did not wish to pursue." *Id.* The Special Master issued the order as to DENSO before he issued the OEM Cost Order and it is therefore not controlling here. In any event, DENSO settled with Plaintiffs prior to the carve out. Here, Plaintiffs are only seeking to enforce the OEM Cost Order against non-settling Defendants.

[9] Subject Defendants mischaracterize Plaintiffs' statement that cost sharing in the amounts ordered is unprecedented in these kinds of cases. ECF No. 1907 at 13. Plaintiffs' statement merely confirmed the undisputed fact that cost sharing has not been commonly ordered in price-fixing cases between parties and third parties subject to Rule 45 subpoenas. ECF No. 1884 at 11. Plaintiffs' statement did not address the novel situation posed here, where the Parties have been working jointly for years to pursue third-party discovery, and costs must now be shared collectively.

the specific ways in which they claim these arguments apply to them.[10] These Subject

Defendants contend that their "unique" positions entitle them to opt out and pay later. These

arguments defy credulity given that Defendants, including a number of Subject Defendants, have

sought this information all along, and have always argued that this information is critical to their

defenses.[11]

The OEM Cost Order specifically defines the "Auto Parts Cases" to which it applies as

"all cases that are consolidated or coordinated into In re Automotive Parts Antitrust Litigation

and including, without limitation, and incorporating any cases that may be later-filed." ECF No.

1584 at § I.B. It further specifies that it applies to "Defendants" in the "Auto Part Cases," which,

by definition, include not only any non-settled Defendants in the *IPP Parts Cases* at the time of

the Order, but those in later-filed cases as well (*i.e.*, all Subject Defendants). *Id.* at § I.D.

---

[10] *See* Green Tokai Co., Ltd.'s Opp'n To Pls.' Mot for an Order Directing Defs. to Pay Half of the Parties' Costs Relating to OEM Discovery (the "Green Tokai Opp'n"), 2:12-md-02311, ECF No. 1901; KYB Defs' Opp'n to Pls.' Mot. for an Order Directing Defs. to Pay Half of the Parties' Costs Relating to OEM Discovery (the "KYB Opp'n"), 2:12-md-02311, ECF No. 1902; Bosal Industries-Georgia, Inc.'s Supp. in Support of Defs.' Mem in Opp'n to Pls.' Mot. for an Order Directing Defs.' [sic] to Pay Half of the Parties' Costs Relating to OEM Discovery (the "Bosal Opp'n"), 2:12-md-02311, ECF No. 1904; Sanoh Industrial Co., Ltd. and Sanoh Am., Inc.'s Mem. in Opp'n to Pls.' Mot. for an Order Directing Defs. to Pay Half of the Parties' Costs Relating to OEM Discovery (the "Sanoh Opp'n"), 2:12-md-02311, ECF No. 1905; and Maruyasu Industries Co., Ltd. and Curtis-Maruyasu America, Inc.'s Opp'n to IPPs' Mot. for an Order Directing Defs. to Pay Half of The Parties' Costs Relating to OEM Discovery (the "Maruyasu Opp'n"), 2:12-md-02311, ECF No. 1906.

[11] Subject Defendants also make the curious argument that because Plaintiffs have received monies from defendants in the auto parts cases that have settled, Plaintiffs are better situated to pay costs than non-settled Defendants. ECF No. 1907 at 3. In essence, Subject Defendants contend that Plaintiffs, the victims of the unlawful conspiracies for which many of the Subject Defendants have pleaded guilty, should fund Defendants' discovery with monies that Plaintiffs have recovered from Subject Defendants' co-conspirators. Subject Defendants are more than capable of funding their own defense without further encroaching on the wallets of the victims of their unlawful conduct.

Furthermore, Defendants, including some of the Subject Defendants, have already negotiated and moved to compel the information they wish to receive in OEM discovery. *See infra* § III.B. That information is spelled out in the final production orders for the Six Lead OEMs, which reflect categories of data and documents that Plaintiffs and Defendants developed together. *See* infra, § III.C.

Importantly, Defendants have repeatedly argued how critical this information is to their defenses, and that they would be at a great disadvantage if they do not have the same access to discovery as Plaintiffs, and at the same time. For example, certain Subject Defendants[12] filed a separate reply in support of the Parties' joint motion to compel, in which they emphasized the importance of OEM discovery sought to later-filed cases:

> Defendants note that Plaintiffs have filed additional cases involving other parts since the subpoenas were issued last year. . . . ***The OEMs' materials will be equally relevant in the later-filed cases.*** Therefore, to minimize the burden on the OEMs and the need for serial discovery or motion practice, the Court may wish to rule that the subpoenas on the OEMs and its order on the present motions should be deemed to apply to the parts and defendants in these later cases.

*Id.* at 1, n.1 (emphasis added). Defendants also represented that they planned to be "more than accommodating when it comes to sharing the OEMs' costs of complying with the subpoena." *Id.* at 1. Subject Defendants asked for this discovery and have no basis to avoid paying for it as it comes due now.

---

[12] Toyoda Gosei, Mikuni, Mitsubishi Heavy, Maruyasu, and Showa signed this pleading. *See* Defendants' Reply in Support of the Parties' Motion to Compel Discovery from Non-Party Original Equipment Manufacturers, 2:12-md-02311 (E.D. Mich. Mar. 11, 2016), ECF No. 1246 (Filed Under Seal) ("Defs' MTC Reply").

In addition, because later-filed Defendants will inevitably receive much of the information in connection with Plaintiffs' expert disclosures and on summary judgment, they should be required to pay their fair share now, when the OEMs produce it.

Subject Defendants also claim they should not be required to seek discovery on Plaintiffs' schedule merely because Plaintiffs have an earlier need for the information. ECF No 1907 at 11. First, Defendants made the exact opposite argument on repeated occasions and should therefore be estopped from taking a contrary position here. *See infra* at § III.B; *Watkins v. Bailey*, 484 F. App'x 18, 20 (6th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . ."). Defendants argued for simultaneous production of the OEM discovery and the Court agreed; they may not now argue for staggered productions.

Second, it is simply not correct that Plaintiffs have an earlier need for the information. For instance, Toyoda Gosei—like Plaintiffs—must prepare for class certification briefing in the *OSS* case that begins less than six months from now. It has the same need for upstream and downstream discovery as Plaintiffs in that case, which discovery it will necessarily receive once Plaintiffs use it in any class certification-related filing, and should pay for it now. If other Subject Defendants take the position that they do not yet need downstream discovery because their cases have later schedules, Defendants can allocate payment or contribute among themselves. That does not excuse Subject Defendants from paying costs.

This situation is very much analogous to the circumstances the Court addressed concerning the depositions of EPP class representatives. There, the Court ordered that absent good cause, each EPP class representative would be subject to one deposition among all

defendants in all parts cases. *See* Tr. of Jan. 28, 2015 Status Conf., at 32-33, 2:12-md-02311, ECF No. 892; *see also* Ruling by Special Master Upon Def.'s Mot. for Clar. of the Court's Rulings Re: Depositions of Pls. in Multi-Auto Parts Cases at 1-2, 2:12-md-02311, ECF No. 912. The Court's order applied across all cases regardless of each case's procedural posture, and, as a practical matter, the order has applied to Defendants that were not named parties at the time. The same considerations apply here. In the interests of efficiency, fairness to the parties, and fairness to the third-party OEMs, all defendants and all plaintiffs should be bound by the Court's OEM discovery orders and the OEM Cost Order requiring the Parties to pay 70% of the OEM discovery costs.

Whether a Defendant requested OEM discovery or not does not excuse Subject Defendants from the same obligations that the Special Master and the Court imposed on ***all*** Parties in ***all*** Auto Parts actions to pay 70% of the costs of the OEM discovery that has been ordered by the Court. Nothing in the Court's orders defining the discovery that is due from the OEMs or imposing cost-sharing excused parties who did not participate in the subpoena or motion to compel. To the contrary, as discussed above, those Orders apply to all non-settled Parties.

Moreover, this argument ignores that *Auto Parts* is a coordinated litigation in which all of the remaining cases involve and require the same OEM discovery—namely, downstream discovery. From the beginning of the OEM discovery dispute, the Court has rightfully expressed and acted on the concern that OEMs should not be burdened with multiple, uncoordinated discovery requests.[13] The position taken by these Defendants that they should be excluded from

_____

[13] As noted above, Defendants acknowledged the risk of a burden on OEMs and called on the Court to minimize it. ECF No. 1246 at 1.

the Court's orders would undermine the solution ordered by the Court to address that concern. Like all Defendants in the *Auto Parts* MDL, these Defendants should be required to pay their share for downstream discovery that is just as applicable to their cases as it is to the other parts cases. These Defendants should not be allowed to avoid their payment obligations now, opt in later when it suits them, and thereby take a free ride on the very Parties who already have expended tremendous time and resources to work with the OEMs and the Court to achieve the plan for discovery that is embodied in the Court's many orders.

**B.     Subject Defendants Have Repeatedly Stated How Critical OEM Discovery Is to Their Defenses**

Subject Defendants have informed Plaintiffs that despite some of them joining the Subpoena, moving to compel alongside Plaintiffs, *twice*, and the many ways in which they participated and joined in the coordinated OEM discovery effort, they no longer currently seek the ordered OEM discovery. ECF No. 1907 at 11. Subject Defendants go on to claim that they can unilaterally elect to wait to determine what discovery they wish to obtain, at a later point in their cases, ECF No. 1907 at 12, and that it would violate their due process rights and fundamental fairness if they were forced to pay for discovery they do not currently want, but will likely later receive. ECF No. 1907 at 13. Remarkably, Subject Defendants attempt to minimize the importance of OEM discovery to their defenses. They even claim that they may choose to forego all OEM discovery to rely on conclusory statements by OEMs as to how they consider costs or simply claim, without any analysis of data or documents, that Plaintiffs' purchases were individualized. ECF No. 1907 at 15.[14]

---

[14] When GM raised the identical arguments in opposition to OEM discovery sought by the Parties, the Court explicitly rejected them, stating, "GM's position notwithstanding, the information itself is necessary to confirm or defend against the claims." Sealed Order Denying GM Objection, 2:12-md-2311, Dkt. #1838 at 8.

None of Subject Defendants' arguments are persuasive (or credible) given the history of this joint OEM discovery effort and the many arguments and statements they have made to the contrary. For example, at the January 28, 2015 Status Conference, counsel for DENSO explained that OEM data would be "very important to both [ Plaintiffs and Defendants], I think to our respective experts' analysis and to our motions." Tr. of Jan. 28, 2015 Hr'g at 42.

In the Parties' opening motion to compel, Defendants (signed by Subject Defendants Maruyasu, Mikuni, Mitsubishi Heavy, Showa, and Toyoda Gosei) specifically stated the reasons why OEM discovery was important to their group. For example, regarding upstream purchase data, Defendants stated:

> Defendants seek discovery on prices of parts sold to OEMs because the questions of what these prices were, how they were determined, how they impacted the ultimate price of the vehicle when sold to Dealers, and whether they were affected by Defendants' alleged conduct are directly relevant to Defendants' defenses and anticipated opposition to class certification.

ECF No. 1185 at 14.

Similarly, Defendants asserted the need for downstream discovery:

> Discovery regarding the prices paid to OEMs for vehicles, and how each OEM set those prices, is central to whether ADPs and TEDPs suffered any injury . . . . [T]he prices paid by ADPs and TEDPs to an OEM, and how those prices were determined by an OEM, is central to litigating the issue of whether there was any injury incurred by the ADPs and TEDPs . . . . This discovery will also be central to class certification.

*Id.* at 19. As to downstream information related to sales from ADPs to EPPs, Defendants argued:

> . . . EPPs will seek to establish that the members of their classes were impacted by the alleged conduct by the Defendants, which will require the EPPs to establish that any overcharge incurred by the OEMs and ADPs was passed on to the EPPs. This will necessarily involve an examination of prices paid by EPPs and how those prices were determined. The extent to which any overcharge was passed

> on also implicates whether class certification is appropriate. . . . The prices paid at each transaction level are crucial to determining damages, since damages depend on how much . . . overcharge was ultimately passed down.

*Id.* at 25 (citation omitted).

In Defendants' separate reply in support of the Parties' first motion to compel (signed by Subject Defendants Toyoda Gosei, Mikuni, Mitsubishi Heavy, Maruyasu, and Showa), Defendants repeatedly asserted the importance of OEM discovery to their defenses. ECF No. 1246. For instance, Defendants asserted that if the OEMs refused to provide the discovery sought, it would "impede the truth-seeking that is at the core of our litigation process," "impair the ability of the finder of fact to do its job," and be "neither fair to any of the Parties in this case nor reasonable given the crucial information in the sole possession of the OEMs," including information relevant to overcharge, pass through and class certification. *Id.* at 1, 2, 7. Defendants walked through – *category by category* – the importance to their defenses of each particular item sought. *Id.* at 7–13. Regarding upstream information, Defendants argued that ***"[t]he materials sought are precisely those that litigants and experts use in our adversary system to establish facts or support opinions at the core of these cases."*** *Id.* at 7 (emphasis added). Defendants reiterated that pass through of overcharges would be the central issue that Plaintiffs will need to show for class certification and damages. *Id.*

At the June 7, 2017 hearing before Judge Battani, counsel for NTN (now counsel for Panasonic) spoke for Defendants on the matter of obtaining GM's Vehicle Pricing Documents (a downstream category):

> I wanted to touch on the very critical issue of passthrough . . . [because] just as plaintiffs need to demonstrate that the alleged overcharges were passed through to them, we [Defendants] need to have the opportunity to demonstrate that there is an absence of that passthrough. . . . [I]t is really the underlying data that we need to be able to give our experts so that we can provide it to you and show

> that there is support for those statements that there is an absence of passthrough from a contemporaneous source. So the data and the pricing methodology documents are very central to this case. . . . And the spreadsheets and the other documentation of GM's methodology when they are pricing their vehicles is what's going to enable us to make those – make arguments about those issues. So in terms of defending our clients in these cases, having access to this sort of information is really critical for us.

Tr. of June 7, 2017 Hr'g at 121-122, No. 2:12-md-02311, ECF No. 1780 (Statements by Angela Smedley). Ms. Smedley further explained the need to obtain the discovery right away, rather than staggering it as GM proposed:

> So we also have significant concerns about staggered discovery based on the class cert schedules and largely because with respect to defendants, it produces an inequitable result. The downstream discovery from the OEMs is not part specific . . . it's data related to the total vehicle . . . . That's being produced at one time when it is ready, probably shortly after these objections are resolved. ***And because defendants are limited to accessing that information only when the class cert schedule is set but plaintiffs who are in every single case will have access to it right away, it could be years before a later parts case defendant is able to see this discovery, and meanwhile plaintiffs have had it the whole time and are able to use it to prepare, you know, to support their claims of passthrough. Meanwhile the defendants who are in . . . a later case against the same plaintiffs, you know, are not permitted to access that information until a class cert schedule was set, and . . . sometimes that takes a very long time, where basically plaintiffs will be getting a head start in litigating this very critical issue of passthrough against those later case defendants*** . . . . [W]e are engaged in mediation right now, some of the later case defendants, and this is critical information that would really help us be able to evaluate the claims, our defenses, and hopefully move mediation along and further a speedy resolution.

*Id.* at 124-25, 128 (Emphases Added).

Given Subject Defendants' pursuit of OEM discovery and statements as to why it is critical to receive sooner rather than later, their new arguments – *that they are no longer seeking this discovery and should not be forced to pay for what they do not want* – are nothing more than an attempt to avoid paying costs while they try to settle their claims.

## C. Given That OEM Discovery Equally Reflects the Input and Requests of Plaintiffs and Defendants Alike, Subject Defendants Should Split Costs Equally

As Plaintiffs explained in their opening brief, it was understood that Plaintiffs and Defendants would split the parties share of OEM discovery costs equally between them. ECF No. 1884 at 10. Subject Defendants argue there was no agreement as to how the Parties would split their 70% share of ordered costs. ECF No. 1907 at 9. Regardless, even if the OEM Order did not explicitly state a 50/50 split, it is the only equitable split for the following reasons.[15]

### 1. The Discovery Orders for the Six Lead OEMs Equally Reflect the Requests of Both Party Sides

As Plaintiffs explained in their opening brief, the orders that are now in place for the Six Lead OEMs are the product of three years of coordination by both party sides and, as a result, equally reflect the requests and needs of both Plaintiffs and Defendants. ECF No. 1884 at 12. The Court's Order regarding Rule 30(b)(6) depositions also indicates that OEM discovery reflects the equal needs of both sides. For example, regarding the Rule 30(b)(6) depositions, the Court ordered that the "allotted time for each deposition shall be divided equally between Plaintiffs (collectively) and Defendants (collectively)." Special Master's Order Re: the Mot. to Compel Discovery from Non-Party OEMs and Ordering Non-Party OEM Rule 30(b)(6) Depositions at § II.C, 2:12-md-02311, ECF No. 1294. The Court further noted that "[t]he Parties collectively shall serve on each OEM Deponent Group from which the Parties seek Rule 30(b)(6)

---

[15] Defendants argue that Plaintiffs are trying to change the OEM discovery orders of 2016 and 2017 in asking for an order that costs be split 50/50, and that such an effort would be time-barred. ECF No. 1907 at 6. If what Subject Defendants claim is true, that the OEM Cost Order does not reflect the agreement by the party sides to split costs 50/50, then this issue has not yet been addressed, and is properly the subject of Plaintiffs' motion now. In fact, where Subject Defendants have been ordered to pay costs and are refusing to do so, Plaintiffs' motion for an order directing Subject Defendants to pay costs is simply seeking to enforce the OEM Cost Order.

testimony a deposition notice . . . ." *Id.* at § II.F.  This is recognition that both party sides were seeking the information equally.[16]

If Subject Defendants were allowed to escape payment now, and Plaintiffs were forced to cover the full bill, fairness would require that Plaintiffs be permitted to seek and pay for only the discovery they want to consider for their own claims (and exclude categories of discovery that Defendants have identified but which Plaintiffs did not pursue).[17]  Yet, it would be virtually impossible to unscramble the egg at this late stage and separate the information sought by Plaintiffs from the information sought by Defendants in the heavily negotiated and litigated orders.  It is also untenable to allow Subject Defendants to come back for a second bite at the apple at a later date.  It would place the burden on OEMs to then address requests that had already been litigated and negotiated, and to make subsequent productions and potentially face new subpoenas and motions to compel.  To require Plaintiffs to front all costs for the discovery needed and requested by all party sides is neither fair nor workable on any level, for Plaintiffs or the OEMs.

Because the OEM discovery effort has reflected the needs of both party sides equally, and the discovery will benefit both sides equally, a 50/50 split of ordered costs between Plaintiffs and Defendants should be ordered.

---

[16] Defendants argue that "the OEM discovery process is no different than" the context of deposing a third party witness, in which "[t]he parties may jointly coordinate the logistics of the deposition, but typically each pays costs only if it participates taking the deposition."  ECF No. 1907 at 17.  Following Defendants' own analogy to its logical conclusion, the requests to the OEMs already reflect Defendants' input into the categories of data and documents—so it is as if they have already participated in the deposition.  Thus, by their own logic, Defendants must contribute to the costs of OEM discovery.

[17] Subject Defendants make this same argument by claiming that they should not have to pay for discovery that will benefit or further Plaintiffs' litigation.  ECF No. 1907 at 14.

## 2.     Defendants' Cost Sharing Proposal Is Inequitable

After repeatedly asking Subject Defendants to confirm what Plaintiffs understood to be a 50/50 split, and repeatedly being ignored, Plaintiffs proposed a cost-sharing agreement so that production could proceed smoothly.[18]  Declaration by William V. Reiss, ECF No. 1885 (May 1, 2018) ("Orig. Decl.").  Subject Defendants rejected Plaintiffs' cost-sharing agreement and now refuse to pay any costs.  Instead, Defendants propose that if they do ever opt-in, they should pay only 25% of the Parties' costs, collectively.  ECF No. 1907 at Ex. B.

Subject Defendants claim that a 50/50 split would be unfair where there are three indirect plaintiff groups who have brought suit against Defendants.  ECF No. 1907 at 10.  Presently, however, there are only two Plaintiff groups (EPPs and ADPs) and ten Defendant families.  On the upstream side, there are 1-2 Subject Defendants in each remaining case which, pursuant to the OEM Cost Order, would split payment with Plaintiffs.  As the Court has already apportioned 30% of the cost to the OEMs, the most that any Defendant could pay is 35% of the upstream cost.  Currently, the only case where upstream data is being sought is in *OSS*.  There, Defendant Toyoda Gosei has been actively involved in OEM discovery throughout.  *See supra*, § II.B.  On the downstream side, there are two Plaintiff groups and eleven Subject Defendants who are obligated to split costs.

The Subject Defendants' cost-sharing proposal– 75% (Plaintiffs) and 25% (Defendants) on downstream discovery – is extremely unbalanced, especially when Defendants' 25% would be split between many Subject Defendants.  In any event, Subject Defendants have made clear

---

[18] Defendants claim repeated emails from Ronnie Spiegel (EPP counsel who generally managed the all-party OEM discovery effort) demonstrate that there was no agreement between the Parties for a 50/50 split of the Parties' collective costs.  ECF No. 1907 at 9.  Yet, these repeated requests, and Defendants' repeated non-responses to them, were viewed by Plaintiffs as Defendants belatedly trying to avoid payment of costs, not as proof of lack of any agreement.  Decl. ¶ 20.  Plaintiffs' suspicions have been borne out.

their intent to avoid sharing in costs altogether in the hope that Plaintiffs will cover their court-ordered portion while they see if they can settle their claims.

**D.    The Arguments in the Supplemental Briefs Also Fail to Identify Any Basis to Exempt Defendants from Their Cost-Sharing Obligations**

As noted above, five defendants have submitted Supplemental Briefs challenging their cost sharing obligations.  For the most part, the Supplemental Briefs rehash two arguments that appear in the joint brief.  *See supra*, § I.A.3.[19]  Green Tokai, Bosal and Maruyasu each offer brief arguments that do not appear in the joint submission.  They fail for the following reasons.

**1.    Plaintiffs' Settlement in Principle with Green Tokai Does Not Absolve Green Tokai of Its Obligations to Comply with the OEM Cost Order**

Green Tokai argues that it has no obligation to pay for discovery because Plaintiffs and Green Tokai have entered an agreement in principle to resolve the actions against them.[20]  Green Tokai Opp'n at 1.  The parties' settlement in principle, however, does not exempt Green Tokai from its obligation to comply with the Court's orders, including the OEM Cost Order.

Nonetheless, Plaintiffs offered to exclude Green Tokai from this motion on the condition that Green Tokai agree that doing so would be without prejudice to Plaintiffs should the

---

[19] *See* KYB Opp'n at 1; Bosal Opp'n at 2; Sanoh Opp'n at 2; Maruyasu Opp'n at 12. Maruyasu Industries Co., Ltd. is scheduled to appear for a plea and sentencing hearing next week in the parallel criminal action in *Steel Tubes*.  *See* Notice of Plea and Sentencing Hearing, *United States v. Maruyasu Industries Co., Ltd.*, No. 1:16-cr-00064 (S.D. Ohio Apr. 16, 2018). Further, Maruyasu's arguments for dismissal merely repeat arguments that the Court has already rejected in the coordinated actions.  *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 2:12-md-02311, 2015 U.S. Dist. LEXIS 24550, at *190 (E.D. Mich. Mar. 2, 2015) (rejecting personal jurisdiction challenge after noting the "magnitude" of the "alleged antitrust conspiracy" and the fact that this case arose under a "transfer order of the United States Judicial Panel on Multidistrict Litigation.").  Therefore, there is no reason to believe Maruyasu's case will not go forward so as to absolve it from paying OEM discovery costs.

[20] Green Tokai is a defendant in the *Body Sealing Products* cases, 2:16-cv-03402 and 2:16-cv-03403.

settlement fall through.  Decl. ¶12.  Green Tokai refused.  Decl. ¶ 12.[21]  In short, Green Tokai

cites to no authority, nor are plaintiffs aware of any, in support of its argument that it is not

subject to the Court's OEM Cost Order.[22]

       **2.**       **Bosal Must Contribute to the Parties' Share of All OEM Costs**

Bosal argues that it should not be compelled to contribute to OEM discovery costs

because the allegations against it involve only one OEM and two vehicle platforms. Bosal Opp'n

at 3.  But Plaintiffs' complaints, which have been affirmed by the Court, are not so limited.

The *Exhaust Systems* complaints define the class to include not just vehicles from a single

OEM, but any vehicle "which included one or more Exhaust System(s) as a component part,

which were manufactured or sold by a Defendant." *See, e.g.*, Amended Class Action Complaint

at ¶¶ 3, 172-73, *Exhaust Systems*, No. 2:16-cv-3702, ECF No. 80.

Bosal moved to dismiss the *Exhaust Systems* complaints in part because they claimed the

"illustrative examples," which were limited to certain OEMs, did not render Plaintiffs'

allegations of a conspiracy affecting all OEMs plausible.  Motion to Dismiss, *Exhaust Systems*,

No. 2:16-cv-3702, ECF No. 22.  The Court rejected this argument and upheld Plaintiffs'

allegations, without confining them to the OEMs referenced in Plaintiffs' illustrative examples.

Opinion and Order Denying Bosal Motion to Dismiss, *Exhaust Systems*, No. 2:16-cv-3702, ECF

---

[21] Green Tokai suggest in their opposition that one reason they did not agree to the stipulation is because the stipulation listed Tokai Kogyo, "a former defendant that [IPPs] had already dismissed."  Green Tokai Opp'n at 1.  Green Tokai never expressed this to Plaintiffs, and Plaintiffs' inclusion of Tokai Kogyo was inadvertent.

[22] Contrary to Green Tokai's opposition, Plaintiffs do not "agree that there is no present basis to compel Green Tokai."  Green Tokai Opp'n at 2.  The Court has ordered the OEMs to produce downstream data once for all cases, including *Body Sealing Products*.  Given that the *Body Sealing Products* cases are not "fully settled," and absent their agreement to the stipulation, now is precisely the time Plaintiffs should seek contribution, consistent with Plaintiffs' arguments above.

No. 76.  Like Bosal, other defendants in this MDL have unsuccessfully attempted to limit

Plaintiffs' complaint to the OEMs referenced in the illustrative examples or subject to

Defendants' guilty pleas, but each time the Court has rejected this argument out of hand.  As the

court explained in denying Green Tokai's motion to dismiss, for example, "the identification of

certain OEMs in the complaints does not limit the claims to those OEMs. . . . [L]imitation of

claims to only those OEMs identified in a guilty plea or used as an illustrative example is

inappropriate at this early stage, particularly, where IPPs have not had discovery."  Order

Denying Green Tokai Co. Motion to Dismiss, *Body Sealing Products*, No. 2:16-cv-03403, ECF

No. 57 at 6-7.[23]  The same logic applies here.

### 3. Regardless of Whether Maruyasu Joined the Motions to Compel in Error, They are Still Obligated to Share in the Costs of OEM Discovery

Maruyasu claims that they did not authorize the inclusion of their signature on the

Parties' joint motion to compel and renewed motion to compel and, therefore, they should not

have to pay any OEM discovery costs.  Maruyasu Opp'n at 14-16.[24]  Even if Maruyasu did not

intend to participate in the various motions to compel, they do not deny that they participated in

the OEM discovery process.  For instance, they are listed on the "Defendants List" that the

Parties attached to the Subpoenas served on OEMs in July 2015.[25]  Maruyasu also joined in the

Parties' response to Toyota's objections on the renewed motion to compel.  *See* ECF No. 1631.

---

[23] Similarly, Defendants in *Wire Harness* argued that because guilty pleas they entered in the related criminal case "describe conspiracies entirely different from the overarching conspiracy alleged," the Court should dismiss the private complaints against them as implausible. Defs.' Collective Mot. to Dismiss at 4, *Wire Harness*, No. 2:12-md-02311, ECF No. 230. The Court denied the motion and allowed claims of "a broad industry-wide conspiracy" to proceed. Order Denying Defs.' Collective Mot. to Dismiss at 12, No. 2:12-cv-00103, ECF No. 119.

[24] For the reasons discussed in Section III.A.3, this is a distinction without a difference as Maruyasu is liable to share in costs irrespective of whether they signed onto the motion.

[25] *See* ECF No. 1186, Ex. A (Subpoena), Att't C (Defs. List).

Maruyasu does not claim that those signatures were erroneous. And perhaps most importantly, Maruyasu does not suggest that they will not seek to avail themselves of the documents produced pursuant to the OEM Cost Order should they not settle.

Plaintiffs have no idea whether Maruyasu authorized their signature to the motions to compel. For any pleadings drafted by Plaintiffs on behalf of Plaintiffs and Defendants, Defendants provided their own signature blocks and had multiple opportunities to confirm their participation. Decl. ¶ 4. For the motions to compel, all joint papers, negotiations with OEMs where agreements were made, joint objections, edits and, ultimately, the final orders for the Six Lead OEMs, Plaintiffs always sought—and, to the best of their knowledge, always received— confirmation from all Parties. *Id.* To the extent Defendants may have deferred to their liaisons, those liaisons represented that they acted on the authority of the other defendants. *Id.* ¶ 5. Plaintiffs were not privy to Defendant-only communications. *Id.*

If Maruyasu believed they signed the motions to compel in error, they had months, if not years, to correct the purported error. The Parties filed the initial motion to compel on January 19, 2016. ECF No. 1185. However, Maruyasu did not raise the issue until they filed their notice of withdrawal from the motion to compel on April 25, 2018. No. 12-md-2311, ECF No. 1883. In other words, it is only now, as they face the prospect of having to comply with their cost-sharing obligations, that they claim they are not bound by their signatures. They have waived any opportunity to object at this late date. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Arioli*, No. 92-CV-40587-FL, 1996 U.S. Dist. LEXIS 15390, *46 (E.D. Mich. Mar. 29, 1996) ("[W]hether under a waiver or ratification analysis, a party may not avoid an agreement on grounds of fraud if, after acquiring knowledge of the fraud, he affirms the contract by accepting a benefit under it.") (quotation marks and citation omitted).

In any case, it is not for Plaintiffs to determine whether Defendants submitted Maruyasu's signature in error. Although all factors seem to point otherwise, even if Maruyasu's inclusion on some or all of the papers was in error, the OEM Cost Order still mandates that they share in OEM discovery costs for the reasons above.

## IV.    CONCLUSION

For the foregoing reasons, Parties respectfully request that the Court grant Plaintiffs' motion.

Dated:  May 22, 2018                    Respectfully submitted,

/s/ Hollis Salzman
Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com

Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

/s/ E. Powell Miller
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the*
*Proposed End-Payor Plaintiffs Classes*

/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
Evelyn Li
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON · KING, LLP**
30 East Seventh Street
Suite 2800
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for Dealership Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2018 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ E. Powell Miller*
E. Powell Miller
