## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | No. 12-md-02311 Hon. Marianne O. Battani |
| In Re: Spark Plugs | : | Case No. 2:15-cv-03003 |
| THIS DOCUMENT RELATES TO: End-Payor Actions | : : | |

**END-PAYOR PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE OBJECTION OF CAITLIN AHEARN TO THE FINAL APPROVAL OF THE SETTLEMENT IN THE SPARK PLUGS ACTION, THE PLAN OF ALLOCATION IN CONNECTION WITH THOSE SETTLEMENTS, AND APPLICATION FOR AN AWARD OF <u>ATTORNEYS FEES AND EXPENSES</u>**

**<u>Statement of the Issues</u>**

1. Whether a class member who leased a vehicle with parts that are the subject of two settlements reached in a single case can object to settlements reached with other defendants involving other parts reached in 18 other cases?

   No.

2. Whether an objector who disregards the instructions in the class notice and files an objection to two settlements in a single case docket and the master docket has asserted valid objections as to other settlements in separate cases within an MDL?

   No.

3. Whether a court considering certification of a settlement class of end payors must weigh the relative strength of claims under *Illinois Brick* repealer states' laws in determining whether to certify a settlement class?

   No.

4. Whether a court must reduce the attorneys' fees recoverable by class counsel based solely on the overall aggregate amount of settlements achieved in the litigation, despite the relative low resulting lodestar/multiplier applicable to the requested fee award?

   No.

5. Whether class members had an adequate opportunity to object to a motion for attorneys' fees when the class settlement notice stated the precise amount of the fee award class counsel will apply for, and the motion, together with all supporting papers, was filed in every applicable case docket well in advance of the objection deadline?

   Yes.

**<u>Controlling or Most Appropriate Authorities</u>**

1.      *Devlin v. Scardelletti*, 536 U.S. 1, 13 (2002)

2.      *In re: Windshield Wiper Systems,* 6th Cir. Order, Appeal No. 16-2025, Dkt. 62

3.      *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011)

4.      *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 287 (E.D. Mich. 2017)

5.      Order Regarding End-Payor Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Spark Plugs Dkt. 79

6.      *In re Se. Milk Antitrust Litig.*, No. 08-md-1000, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013)

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................5

I.     The Objection Is Effective Only as to the *Spark Plugs* Settlements....................................5

       A.     Ms. Ahearn Is Only a Member of the *Spark Plugs* Settlement Classes,
              and Lacks Standing to Object to Any Other Settlement. .........................................5

       B.     The Attempt to Object to Additional Settlements Is Both Procedurally
              and Substantively Defective. ...................................................................................6

II.    Courts Are Not Required to Distinguish Between Residents of *Illinois Brick*
       Repealer States in Certifying a Settlement Class or Approving a Plan of
       Allocation.......................................................................................................................8

III.   Notice of the Motion for Attorneys' Fees Was Directed to Class Members in a
       Reasonable Manner......................................................................................................11

IV.    The Requested Fee Award Is Reasonable and Appropriate in the
       Circumstances of this Litigation. ................................................................................14

CONCLUSION...................................................................................................................19

## TABLE OF AUTHORITIES

**CASES**                                                                                       **Page(s)**

*Allapattah Servs. Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...........................................................15, 16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) .........................................................18

*In re Apollo Grp. Inc. Securities Litig.*,
   2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ..........................................................16

*In re BankAmerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ............................................................................10

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) .........................................................................18

*Cassese v. Williams*,
   503 F. App'x 55 (2d Cir. 2012) ..............................................................................12

*In re Cathode Ray Tube Antitrust Litig.*,
   No. C-07-5944-JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016)..........................15

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).....................................................................................15

*In re CertainTeed Fiber Cement Siding Litig.*,
   303 F.R.D. 199 (E.D. Pa. 2014)..............................................................................13

*In re Combustion Inc.*,
   968 F.Supp. 1116 (W.D. La. 1997)..........................................................................16

*In re Credit Default Swaps Antitrust Litigation*,
   No. 13 Md 2476 (DLC) (Apr. 18, 2016 S.D.N.Y.)..................................................18

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002)........................................................................................................5

*In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab.
Litig.*.
   2002 WL 32154197 (E.D. Pa. Oct. 3, 2002)............................................................3

*In re Ferrero Litigation*,
   583 Fed. App'x 665 (9th Cir. July 16, 2014)..........................................................12

iv

*Gemelas v. Dannon Co., Inc.*,
   2010 WL 3703811 (N.D. Ohio Aug 31, 2010) ..........................................................3

*Gemelas v. The Dannon Company, Inc.*,
   08-cv-00236, Dkt. No. 60 (E.D. Ohio May 24, 2010) ...............................................2

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................8

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................10

*In re Hyundai & Kia Fuel Economy Litigation*,
   881 F.3d 679 (9th Cir. 2018) ...................................................................................10

*In re Ikon Office Solutions, Inc. Securities Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)...............................................................................16

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ...................................................................................13

*Kurzwell v. Philip Morris Cos.*,
   1999 WL 1076105 (S.D.N.Y., Nov. 30, 1999)........................................................16

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
   No. 08-1999, 2010 WL 4386552 (E.D. Wis. Oct. 28, 2010).............................13, 14

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa., June 2, 2004) ...........................................................16

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ...................................................................................12

*In re Mex. Money Transfer Litig.*,
   267 F.3d 743 (7th Cir. 2001) .....................................................................................8

*N.Y. Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ............................................................................5

*In re NASDAQ Market-Makers Antitrust Litigation*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................18

*In re Oracle Sec. Litig.*,
   No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ......................10

*In re Packaged Ice Antitrust Litig.*,
   322 F.R.D. 276 (E.D. Mich. 2017) ....................................................................10, 11

*In re Packaged Ice Antitrust Litig.*,
     No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13, 2011) ...................18

*Parsons v. Brighthouse Networks, LLC*,
     No. 2:09-cv-267-AKK, 2015 WL 13629647 (S.D. Ala. Feb. 5, 2015) ...................................12

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
     991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................................17

*Redman v. RadioShack Corp.*,
     768 F.3d 622 (7th Cir. 2014) .................................................................................................12

*In re Relafen Antitrust Litig.*,
     225 F.R.D. 14 (D. Mass. 2004) .................................................................................................9

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
     297 F.R.D. 683 (S.D. Fla. 2014) ............................................................................................13

*In re Scrap Metal Antitrust Litig.*,
     527 F.3d 517 (6th Cir. 2008) ..................................................................................................11

*In re Se. Milk Antitrust Litig.*,
     No. 08-md-1000, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ..........................................16

*Sullivan v. DB Investments, Inc.*,
     667 F.3d 273 (3d Cir. 2011)....................................................................................................10

*In re TFT LCD (Flat Panel) Antitrust Litig.*,
     No. 07-md-01827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013)........................................16

*Tornes v. Bank of Am.*,
     830 F. Supp. 2d 1330 (S.D. Fla.2011) ...............................................................................2, 16

*Torres v. Mercer Canyons Inc.*,
     835 F.3d 1125 1134 (9th Cir. 2016) .........................................................................................8

*Tyson Foods, Inc. v. Bouaphakeo*,
     136 S. Ct. 1036 (2016)...........................................................................................................8, 9

*In re United Health Group Inc. PSLRA Litig.*,
     643 F. Supp. 2d 1107 (D. Minn. 2009) .....................................................................................3

*In re Visa Check/MasterMoney Antitrust Litig.*,
     297 F. Supp. 2d 503 (S.D.N.Y 2003)......................................................................................18

*In re Vitamins Antitrust Litig.*,
     2001 WL 34312839 (D.D.C. July 16, 2001).............................................................................16

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
    2010 WL 786513 (D. Nev. Mar. 8, 2010) ..............................................................3

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................18

**RULES**

Fed. R. Civ. P. § 23 ............................................................................................ *passim*

**OTHER AUTHORITIES**

*Automotive Parts Litigation: $1.04 Billion Settlements,*
    https://www.autopartsclass.com/included_round_3.php ...........................................5

*Automotive Parts Litigation: $1.04 Billion Settlements*,
    www.AutoPartsClass.com ......................................................................................2

Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal
    Practice*, 47 DePAUL L. REV. 267, 286 (1998) ......................................................17

Hon. Marianne Battani, *MDL Training Guide,  available at*
    https://www.mied.uscourts.gov/PDFFiles/MDLTraining.pdf (last accessed
    July 26, 2018)........................................................................................................6

Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics
    Walks*, 65 FORDHAM L. REV. 247, 248 (1996) ......................................................17

## INTRODUCTION

Plaintiffs' Settlement Class Counsel ("Class Counsel") for the End-Payor Plaintiffs ("EPPs") submit this brief in response to the objection of Caitlin Ahearn to the settlements with the Bosch and NGK defendants in the *Spark Plugs* action, Case No. 2:15-cv-03003, and the plan of allocation and motion for attorneys' fees as applicable to these two settlements – the ***only*** objection made to any of the Round 3 settlements.[1]

As an initial matter, Ms. Ahearn's objection only applies to the Bosch and NGK settlements made in the *Spark Plugs* action.  Indeed, the caption of the objection states that it only "relates to *Spark Plugs*" and gives the case number for that action.  The objection was not filed in any other case included in this MDL litigation.  The Round 3 settlements relate to 19 different actions involving 19 different conspiracies to fix prices of and rig bids for different automotive parts.  Each of the Round 3 settlements settles the claims of class members who are members of separate and distinct settlement classes.  This Court and the Sixth Circuit have both made clear that the cases included in this MDL, while being coordinated for pretrial purposes, retain their separate character.  Further, the Round 3 Settlement Notice ("Class Notice") makes it absolutely clear that for an objection to effective as to a particular settlement, the objection must be filed in the docket of the action being settled, and specify the settlement that is the subject of the objection. Ms. Ahearn's counsel, Edward Cochran, an Ohio attorney and notorious serial objector to class action settlements, did not follow the Court-mandated procedures to object to any other settlements.  The Class Notice clearly provides as follows:

> To object to or comment on a Round 3 Settlement, the Plan of Allocation, or the motion for attorneys' fees, you must do so in writing.  ***Your letter must specify***

---

[1] The objection purports to apply to all of the Round 3 settlements, but, as discussed *infra*, it applies only to the Bosch and NGK settlements reached in the *Spark Plugs* action.

1

***which Settlement (including the specific vehicle part) you are objecting to and
include the following in your objection letter:***

- Your name, address, and telephone number;
- Documents reflecting your purchase or lease of a new eligible vehicle
  and/or purchase of the application replacement part.  Purchase or lease
  documentation should include: (a) the date of purchase or lease, (b) the
  make and model year of the new vehicle, and (c) the date of purchase, (b)
  type of replacement part purchased, and (c) the state where the
  replacement part was purchased;
- ***The name of the Settling Defendant whose Settlement you are objecting
  to or commenting on;***
- ***The vehicle part case, including the case name and case number, that is
  the subject of your objection(s) or, comments.***  (You can find the case
  numbers on the website, www.AutoPartsClass.com. Go to the "Class
  Action Complaints" under the "Court Documents" tab to find the cases by
  part.);
- The reasons you object to the Settlement, Plan of Allocation, or motion for
  attorneys' fees, along with any supporting materials; and
- Your signature.

****

Any objection or comment must also be timely filed with the Court (i.e., on or
before July 13, 2018) ***in the case file (or docket) of the specific automotive parts
case or cases that are the subject of your objection or comments***.  Objections or
comments filed only in *In re Automotive Parts Antitrust Litigation* (the Master
Docket, 2:12-md-02311), will not satisfy this requirement.

Ex. 1 (Class Notice) at 17 (emphasis added).

Nor should Cochran be granted leeway in the interpretation of his objections.  Cochran

has a long and sordid history of acting as a serial objector to class action settlements and has

been previously admonished by the courts for his vexatious conduct.[2]  He is part of an unsavory

group of serial objectors whose goal is to divert a portion of the settlement proceeds to

themselves without in any way benefiting the classes in question.  *See Tornes v. Bank of Am.*,

830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla.2011) (often, the "sole purpose" of a serial objector

---

[2] Edward Cochran routinely files objections on behalf of his family members.  He – not his purported "clients" – are
the driving force behind the objections.  *See, e.g., Gemelas v. The Dannon Company, Inc.,* 08-cv-00236, Dkt. No. 60
(E.D. Ohio May 24, 2010) (Cochran representing a family member objecting, appealing and then abandoning
appeal).

2

"is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto" and levy "what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors."); *Gemelas v. Dannon Co., Inc.*, 2010 WL 3703811, at *1 (N.D. Ohio Aug 31, 2010), at *2 (noting that objector "appears to be making a business of objecting to, and appealing, class action settlements in order to obtain some financial reward" and holding that his "form appeal" was meritless).

Cochran has been repeatedly reprimanded for filing frivolous objections. *See In re United Health Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009) (finding that Cochran's clients' objections "contributed nothing . . . in a pleading which may charitably be described as disingenuous"; denying his "outlandish fee requests"; and noting that the objections were motivated by an attempt to "hijack as many dollars . . . as they can wrest from a negotiated settlement"); *In re Wal-Mart Wage & Hour Employment Practices Litig.*, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (finding objection had "no merit" and that Cochran and other attorneys representing objectors have "a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when [he] and [his] clients were compensated by the settling class or counsel for the settling class"), *In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*. 2002 WL 32154197, at *15 (E.D. Pa. Oct. 3, 2002) ("[T]he court finds that Objectors' Counsel are not entitled to an award of fees and expenses because they have failed to show that their supplemental objections actually conferred a benefit on the settlement class.").

For counsel so experienced in class action objections, it is not unduly burdensome to ask him to follow the procedures set forth in the Class Notices to object to any of the other Round 3 settlements. But even if Cochran had attempted to object to any of other Round 3 Settlements,

such objections would have been ineffective because, as noted below, Ms. Ahearn is not a member of any of the other settlement classes and therefore would lack standing to object to any of the other Round 3 settlements.

With respect to her substantive objections, Ms. Ahearn objects to the certification of the settlement classes on the grounds that the settlements fail to take into account the relative strength of claims brought under various states' *Illinois Brick* repealer statutes. Yet courts have repeatedly certified settlement classes and approved plans of allocation that do not even distinguish between *Illinois Brick* repealer states and non-repealer states, let alone among repealer states. There simply is no predominancy issues that would defeat certification of the settlement classes now at issue. A settlement providing for monetary relief only for residents of repealer states is *a fortiori* certifiable and presents no fairness issue whatsoever when residents of non-repealer states will not share in the settlement funds and will not release any claims for damages against the settling defendants, as is the case here.

Second, Ms. Ahearn objects to Class Counsel's failure to post the motion for a fee award to the class settlement website before the objection deadline. In fact, it was posted, albeit on the day of the deadline. *See* Declaration by Brian A. Pinkerton, *Spark Plugs* Dkt. 96 at ¶ 17. Regardless of the date of the posting, the motion for a fee award (1) was fully previewed in the Class Notice, which identified the precise amount that would be sought (the only basis for Ms. Ahearn's objection); (2) was filed and available on PACER on the docket of each affected case 30 days prior to the settlement objection deadline; and (3) was, per the Class Notice, available to any class member who requested it (none did). *See id.* Cochran fails to show any prejudice based on date when the motion was posted to the website given his access to the docket and his "megafund" argument being the only stated grounds to object to the requested fee award.

Third, Ms. Ahearn argues that Class Counsel's request for 25% of the settlement amount in fees is excessive under the so-called "megafund" principle.  This Court has previously rejected the notion that fee award percentages must decline in proportion to the settlement amount, and courts have repeatedly approved comparable fee awards for similarly-sized settlements.  The lodestar cross-check further confirms that the requested award is reasonable and will fairly compensates class counsel for the hundreds of thousands of hours of work they have devoted to this litigation in order to obtain the truly historic settlements in this massive and very complex MDL proceeding.

## ARGUMENT

## I.      The Objection Is Effective Only as to the *Spark Plugs* Settlements.

### A.      Ms. Ahearn Is Only a Member of the *Spark Plugs* Settlement Classes, and Lacks Standing to Object to Any Other Settlement.

Ms. Ahearn's objection attached her lease agreement for a 2016 Hyundai Tucson at Exhibit A.  *See Spark Plugs* Dkt. 94 at PAGE ID 35887-35888.  As is plainly indicated on the Auto Parts Settlement website, purchasers or lessees of 2016 Hyundai Tucsons are only members of the *Spark Plugs* settlement class of those included in the Round 3 settlements.  *See Automotive Parts Litigation: $1.04 Billion Settlements,* https://www.autopartsclass.com/included _round_3.php.  It is black letter law that a person cannot object to a class settlement in which he is not a class member.  *See Devlin v. Scardelletti*, 536 U.S. 1, 13 (2002) (noting that objections should be disallowed or appeals dismissed "where the objector is not actually a member of the settlement class"); *N.Y. Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 239 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) (an objector who fails to submit documentation showing her membership in the class "fails to establish his or her standing to object to the Settlement").  Ms.

Ahearn therefore *cannot* object to any settlement other than those reached with Bosch and NGK in the *Spark Plugs* action.

      **B.**    **The Attempt to Object to Additional Settlements Is Both Procedurally and Substantively Defective.**

Even if Ms. Ahearn *could have* objected to any other settlements, her attorney, Mr. Cochran, did not do so in a way that complies with this Court's orders or the Class Notice.

Both this Court and the Sixth Circuit have previously confirmed that the cases included in this MDL retain their separate identities, such that any motion or notice must be made in an individual case docket in order to apply to that case. The Court has issued a Protocol Order, which provides: "[p]apers only applicable to a specific action relating to a particular part shall be filed only in the appropriate Class Case . . . ." Protocol Order, 12-md-02311, Dkt. 1448, ¶9, PAGE ID# 25615 (Aug. 8, 2016). If the Protocol Order was not clear enough (it is very clear), the Court gives additional guidance in its *MDL Training Guide*, which is posted on the Court's individual website. *See* Hon. Marianne Battani, *MDL Training Guide*, *available at* https://www.mied.uscourts.gov/PDFFiles/MDLTraining.pdf (last accessed July 26, 2018). The *MDL Training Guide*, like the Protocol Order, makes clear that the documents that relate to specific component parts case (like Ms. Ahearn's objections) "must be filed separately . . . instead of just once in the main suit. Do not take short cuts. You will have to refile!" *MDL Training Guide*, at 20 (explaining filing error in Master Docket, 12-md-2311, Dkt. 1306, PAGE ID# 23156, which should have been filed separately in several different individual actions). And the Court further confirmed this understanding in the context of objections to the Round 2 Settlements, finding that an objection posted to the Master Docket "is thus ineffective as to any of the individual settlements." Order Approving Settlements and Striking Objections, Case No. 13-cv-903 (*In re: Windshield Wiper Systems*), Dkt. 159, at PAGE ID# 4704. The Sixth

Circuit approved this interpretation in finding an absence of appellate jurisdiction where a notice of appeal was filed in the Master Docket:

> The consolidation of cases for pretrial purposes by the MDL Panel under 28 U.S.C. § 1407 is to promote efficient judicial administration and does not merge the actions into a single case.  *See Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 905 (2015).  The nineteen cases that have been settled have not been consolidated for all purposes, but retain their individual identity.  The notice of appeal filed in the Master Docket is ineffective to appeal the orders entered in the individual cases.

6th Cir. Order, Appeal No. 16-2025, Dkt. 62; Appeal No. 16-2085, Dkt. 43 (same); Appeal No. 16-2086, Dkt. 36 (same).

Here, Cochran styled his objection as "relating to the *Spark Plugs"* action and filed it in the docket for that case and the master docket, and then claimed in the body of the objection that it was effective as to all of the Round 3 settlements. The Court's requirements are abundantly clear, and the Sixth Circuit has made clear that each *Auto Parts* case is separate and distinct. Accordingly, a class member seeking to object to a specific settlement of a specific auto parts cases must file his or her objection in the docket for the specific Auto Parts case or cases to which his or her objection applies.  *See* Order Granting Final Approval to the Round 2 Settlements, *Spark Plugs* Dkt. 77 at 18-20 (citing to and quoting from previous orders from this Court and the Sixth Circuit explaining that "each of the nineteen cases at issue in the Round 1 Settlements 'retain their individual identity' and centralization of those cases for pretrial purposes by the MDL Panel 'does not merge the actions into a single case'").

Furthermore, as noted above, Cochran failed to follow the procedure clearly set out in the Class Notice to make an objection applicable to any other settlement:

> Any objection or comment must also be timely filed with the Court (i.e., on or before July 13, 2018) *in the case file (or docket) of the specific automotive parts case or cases that are the subject of your objection or comments*.  Objections or comments filed only in *In re Automotive Parts Antitrust Litigation* (the Master Docket, 2:12-md-02311), will not satisfy this requirement.

7

Ex. 2 (Class Notice).at 17 (emphasis added).  Instead, Mr. Cochran filed only in the *Spark Plugs*

case docket and the Master Docket – as a result, Ms. Ahearn has only objected to the two *Spark*

*Plugs* settlements.

## II.   Courts Are Not Required to Distinguish Between Residents of *Illinois Brick* Repealer States in Certifying a Settlement Class or Approving a Plan of Allocation.

Ms. Ahearn objects that the settlement should have considered the relative strength of the

*Illinois Brick* repealer states' legal regimes in certifying the settlement classes and allocating the

settlement funds, rather than allocating the settlement funds on a *pro rata* basis to qualified end-

purchasers in repealer states.  (In reality, this is an objection that goes to the Plan of Allocation,

not the certification of settlement classes or the settlements.)

The courts have long held that a nationwide class action cannot be decertified simply

because there are "differences between state consumer protection laws." *Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998); *In re Mex. Money Transfer Litig.,* 267 F.3d 743,

747 (7th Cir. 2001) ("[N]ationwide classes are certified routinely even though every state has its

own [laws.]").  Far from imposing geographic limitations, the predominance inquiry under Rule

23(b)(3) simply tests whether questions common to the class "are more prevalent or important"

than individual ones, *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016) (citation

omitted), a standard which is "readily met" in consumer and antitrust class actions, *Amchem*

*Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).  "Predominance is not, however, a matter of

nose-counting.  Rather, more important questions apt to drive the resolution of the litigation are

given more weight in the predominance analysis over individualized questions which are of

considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835

F.3d 1125 1134 (9th Cir. 2016) (citation omitted). Therefore, even if just one common question

predominates, "the action may be considered proper under Rule 23(b)(3) even though other

important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some such as individual damages class members." *Tyson*, 136 S. Ct. at 1045 (citation omitted).

Here, it can hardly be disputed that common questions predominate over individualized issues: whether the defendants conspired to fix prices and rig bids in violation of the antitrust laws, and, if so, whether plaintiffs were harmed, are plainly the predominating issues in this litigation.

The settlements here are carefully structured to require releases of claims for damages only by class members who reside in *Illinois Brick* repealer states – those states that have a common framework of antitrust and consumer protection law to afford relief to indirect purchasers from antitrust violations.  Ms. Ahearn cites to *In re Relafen Antitrust Litig.*, 225 F.R.D. 14 (D. Mass. 2004), in arguing that Class Counsel must go further and precisely map the relative strength of each repealer state's legal regime in apportioning relief to its residents in order to certify a settlement class.[3]  Yet the primary concern of the *Relafen* court was the dilution of the claims of repealer-state residents by inclusion of non-repealer states' residents in the recovery – a concern that is not present here because residents of non-repealer states will not be entitled to share in the settlement funds and will not release whatever claims they have for damages.  Any notion that *Refalen*'s state-by-state evaluation is required does not apply to the circumstances here and has, in any event, been rejected by other courts, which have found that declining to distinguish between repealer and non-repealer states does not defeat predominance

---

[3] Importantly, while Ms. Ahearn makes claims about the relative strength of California and Hawaii consumer protection law, she does not actually identify what features creates this purported distinction.

or the fairness of the allocation.[4]   The Third Circuit's *en banc* opinion in *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011), directly refutes Ms. Ahearn's argument.   There the court held:

> It may be entirely reasonable to apply the same damages calculation to claimants from all states [including non-*Illinois Brick* repealer states] because . . . [i]t is purely speculative that claimants from indirect purchaser states could anticipate a greater recovery than claimants from other states.   And only by engaging in the type of fact-intensive merits and choice-of-law analyses that we have rejected could a district court attempt to assay the 'varying strengths and weaknesses' of asserted state claims.   We can find no support in our case law for differentiating within a class based on the strength or weakness of the theories of recovery. Accordingly, we decline to require such an analysis.

> *Id.* at 327 (alteration in original) (internal quotation marks and citations omitted).

For these reasons, *Sullivan*'s pragmatic approach to settlement class certification in antitrust litigation is the dominant one, including in this Circuit.   *See In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 287 (E.D. Mich. 2017), *appeal dismissed*, No. 17-2139, 2017 WL 8236039 (6th Cir. Oct. 11, 2017) ("The allegations of market and customer allocation will not vary among the class members and issues regarding the amount of damages do not destroy predominance. 'Nothing in [the] case law or the language of Rule 23 commands that everyone

---

[4] Ms. Ahearn's remaining citations are entirely inapposite.   *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018), cited by her as *Espinosa v. Ahearn*, concerned the trial court's certification of a nationwide class under California law without conducting an appropriate choice of law analysis – here, Class Counsel have structured the litigation and claims brought under the laws of each individual state at issue, and no one has contested that each state's antitrust laws would apply to purchasers within its borders.   Thus, no choice of law issues are presented at all.   Ms. Ahearn's other cases concern whether the proposed settlement considered *factual* distinctions among plaintiffs rather than *legal* distinctions based upon choice of law considerations.   *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) (approving *pro rata* distribution plus additional distribution based upon specific rounds of bond purchases); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 712 (E.D. Mo. 2002) (rejecting plan of allocation allocating zero dollars to certain purchasers based upon date cutoffs while nonetheless extinguishing their claims); *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *2 (N.D. Cal. June 18, 1994) (approving plan of allocation based upon timing of share purchases that distinguished share of price movements during the class period).

in a class must allege precisely identical or uniform causes of action and statutory variations do not defeat predominance in the presence of other exceedingly common issues.' These observations are particularly true in the context of a settlement-only class, where the Court need not be concerned with 'intractable [case] management problems.'" (alterations in *Packaged Ice*) (internal quotation marks and citations omitted) (quoting *Sullivan*, 667 F.3d at 302-04)); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("[P]roof of the *conspiracy* is a common question thought to predominate over the other issues of the case.").

Finally, even if the Plan of Allocation *were* defective in failing to evaluate the relative strength of *Illinois Brick* repealer states' legal remedies (and it is not), that would be a reason to require the parties to redo the Plan of Allocation; it would not be a reason to reject class certification or withhold approval of any of the Round 3 settlements. The Plan of Allocation is entirely separate and apart from the settlements. *See* Bosch Settlement Agreement (Ex. 2) ¶ 30 ("After this Agreement becomes final within the meaning of Paragraph 22, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court."); NGK Spark Plugs Settlement Agreement (Ex. 3) ¶ 31 (same).

## III. Notice of the Motion for Attorneys' Fees Was Directed to Class Members in a Reasonable Manner.

Rule 23(h)(1) requires that "[n]otice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Ms. Ahearn complains that fee motion was not posted on settlement website prior to the settlement objection deadline. In fact, it was posted by the deadline. But she does not claim that Cochran could not obtain it from PACER or request it from the Claims Administrator. Further, the cases cited in support of this argument speak only to situations in which the fee motion has not been ***filed*** prior

11

to the objection deadline.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ("The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been ***filed***." (emphasis added)); *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) ("Class counsel did not ***file*** the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired." (emphasis added)).  No authority stands for the proposition that the fee motion must not only be filed, but be posted on a website to comply with Rule 23(h) – even the Ninth Circuit has subsequently made clear that when a fee motion is filed before the objection deadline, the standard of *Mercury Interactive* is met.  *See In re Ferrero Litigation*, 583 Fed. App'x 665, 667-68 (9th Cir. July 16, 2014) ("The settlement in this case was preliminarily approved on January 23, 2012, the motion for attorneys' fees was filed on May 25, 2012, and the objectors filed their opposition on June 8, 2012.  This is in stark contrast to *In re Mercury Interactive*, where the motion for attorneys' fees was filed two weeks after the deadline for filing objections to the settlement agreement.  The objectors have not shown that they were denied the notice required by Rule 23(h) and *In re Mercury Interactive*.").

In fact, many courts have rejected even the ***filing*** rule announced by the Ninth Circuit in *Mercury Interactive*.  The Second Circuit has explicitly rejected the rule.  *See Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012).  There, as here, class members received a notice stating what the fee request would be and then had the opportunity to review the filed fee motion prior to fairness hearing (whereas here the motion was filed and available for inspection more than four weeks before the objection deadline).  Other courts have similarly approved fee requests where fee motions were filed after the objection deadline and before the fairness hearing.  *See, e.g.*, *Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267-AKK, 2015 WL

13629647 (S.D. Ala. Feb. 5, 2015); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 222 (E.D. Pa. 2014).

And even courts that have agreed that fee motions must be *filed* before the objection deadline have found the error harmless where counsel for the objector was unable to articulate any basis on which a meritorious objection would have been made with access to the motion:

> [T]he four objectors now have had an ample opportunity on appeal to respond to the specific arguments contained within class counsel's fee motion. Despite raising a number of objections, none of their arguments are meritorious. As explained previously, the objectors' arguments do not convince us that the attorneys' fees were unreasonable. Nor do we believe that any of their arguments would have persuaded the district court to award a lower fee. The court awarded the requested fee because it was in line with awards from other cases, the relevant Johnson factors supported it, and the hourly rates and time expended by class counsel were reasonable. None of the objectors' arguments undermine these reasons or even identify any reasonable basis for reducing the requested fee. Thus, even if class members had an opportunity to object to the fee motion, there is no reasonable probability that their objections would have resulted in the court awarding a lower fee.

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, No. 08-1999, 2010 WL 4386552, at *2 (E.D. Wis. Oct. 28, 2010) (holding that any Rule 23(h) error was harmless because there was no "reasonable probability that the scheduling error resulted in the non-assertion of an objection that would have been successful and would have resulted in class counsel receiving less in fees and costs than [was] ultimately awarded").

Here, Class Counsel fully complied with Rule 23(h). First, the fee motion was filed well in advance of the objection deadline, and was further available from the Claims Administrator upon request. Further, the hours and the lodestar derived therefrom stated in the motion cannot but provide *support* for the requested fee award. Indeed, Cochran has entirely ignored the

13

lodestar of plaintiffs' counsel in making his objection because if he did, it would show that his

"megafund" argument is wide of the mark.

IV.     **The Requested Fee Award Is Reasonable and Appropriate in the Circumstances of this Litigation.**

Ms. Ahearn objects to the fee award on so-called "megafund" principle, arguing that the

aggregate size of the settlements mandates a smaller fee award as a percentage of the total

recovery.[5]   The Court has previously rejected this "megafund" or "declining fee percentage"

approach.  *See* Order Regarding End-Payor Plaintiffs' Motion for an Award of Attorneys' Fees

and Reimbursement of Litigation Expenses, Spark Plugs Dkt. 79 at ¶ 8 ("[T]here is no

requirement that the Court necessarily apply a declining fee percentage based on the absolute

dollar amount of any of the settlements at issue.  The Court notes that other federal courts have

also rejected the so-called 'mega fund' adjustment to fee awards based solely on the size of a

settlement.   Instead, consideration must be given to, among other things, the stage of the

litigation when a settlement has been achieved and the labor and expense that were required to be

incurred in order to achieve the settlement.").  Other courts have similarly rejected the so-called

---

[5] The Objection is somewhat inconsistent as to whether the fee award should be evaluated against the aggregate settlement amounts of all of the settlements in this litigation, or only the Round 3 settlements.  *See* Objection 3-4.  Class Counsel agree that it is appropriate, as the Court noted in granting the Round 2 fee award, to compare the total fees to the total settlements in light of the cumulative work contributing to the Round 3 settlements.   *See* Order Regarding End-Payor Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Spark Plugs Dkt. 79 at ¶¶ 18, 20-21 (performing lodestar cross-check by reference to total hours and settlement amounts, and reserving ruling on requests for additional fees).  *See id.* at n.2 ("In calculating the lodestar for purposes of the cross-check, it would be impractical to compartmentalize and isolate the work that EPPs' counsel did in any particular case at any particular time because all of their work assisted in achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the EPPs classes." (citing *Southeastern Milk*, 2013 U.S. Dist. LEXIS 70167, at *26-27 (rejecting objection based on the proposition that the calculation of class counsel's lodestar should be limited to work performed after the period covered by a prior fee award); *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (same))).

'mega fund' limitation on percentage fees. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 284 n. 55 (3d Cir. 2001) ("[The megafund] position . . . has been criticized by respected courts and commentators, who contend that such a fee scale often gives counsel an incentive to settle cases too early and too cheaply."); *Allapattah Servs. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006) ("By not rewarding Class Counsel for the additional work necessary to achieve a better outcome for the class, the sliding scale approach creates the perverse incentive for Class Counsel to settle too early for too little.").

As the Court has previously noted, a 27.5% fee award (and perforce a 25% fee award) falls well within the range of fee awards that courts in this Circuit have found reasonable. *See* Order Regarding End-Payor Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Spark Plugs Dkt. 79 at ¶ 8 (citing, *inter alia*, *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (awarding one-third of the common fund); *In re Se. Milk Antitrust Litig.*, No. 08-md-1000, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19; *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d, 521, 528 (E.D. Ky. 2010); *In re Nat'l Century Fin. Enters., Inc. Investment Litig.*, 2009 WL 1473975 (S.D. Ohio, May 27, 2009); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008); *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-CV-95, 2007 WL 3173972, at *4 (W.D. Mich. 2007); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D. Mich. 2000)).

Ms. Ahearn argues that fee awards for similarly-sized settlements are uniformly lower than the 25% requested here. That is incorrect. Many courts have awarded fees much greater than 20% of large so-called "megafund" recoveries. *See, e.g., In re Cathode Ray Tube Antitrust*

*Litig.*, No. C-07-5944-JST, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% of *gross* recovery of $577 million settlement fund); *In re TFT LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827 SI, 2013 WL 1365900, at *8 & n. 11 (N.D. Cal. Apr. 3, 2013) (expressly rejecting suggestion that fees should be reduced based on "megafund" concept and awarding indirect purchaser plaintiffs in antitrust price-fixing case 28.6% of a $1.08 billion settlement, plus $8.7 million in expenses); *In re Apollo Grp. Inc. Securities Litig.*, 2012 WL 1378677, at *9 (D. Ariz., Apr. 20, 2012) (awarding 33% of $145 million settlement fund); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011) (30% of $410 million settlement fund); *Allapattah Servs.*, 454 F. Supp. 2d at 1210-11 (awarding 31.5% of a $1.06 billion settlement fund and citing fourteen cases involving settlement funds between $40-696 million with fee awards between 25 and 35% of the fund); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *1 (E.D. Pa., June 2, 2004) (30% of $202 million settlement fund); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (34.06% of $359 million settlement fund); *In re Ikon Office Solutions, Inc. Securities Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (30% of $111 million settlement fund); *Kurzweil v. Philip Morris Cos.*, 1999 WL 1076105, at *1 (S.D.N.Y., Nov. 30, 1999) (30% of $123 million settlement fund); *In re Combustion Inc.*, 968 F.Supp. 1116, 1142 (W.D. La. 1997) (36% of $127 million settlement fund).

And as noted in *Southeastern Milk*, the Sixth Circuit has declined to endorse a reduced percentage fee approach in so-called "megafund" cases. *See* 2013 U.S. Dist. LEXIS 70167 at *14 (stating that the "Court has not found any Sixth Circuit case endorsing [a reduced percentage] approach. Indeed, the notion that a court should necessarily apply reduced percentages to a particularly large settlement fund—regardless of the time and expense incurred

16

by class counsel, the results achieved for the class, or the risk and complexity of the case—contradicts the very principle under which a court is permitted to award attorneys' fees.  That is, the court must 'make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'" (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993))).

It is also well known that standard contingency-fee percentages in individual litigation are usually at least 33-1/3%, which is far above the percentage awarded here.  *See, e.g.*, Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 FORDHAM L. REV. 247, 248 (1996) (noting that "standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries" (emphasis omitted)); Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal Practice*, 47 DEPAUL L. REV. 267, 286 (1998) (reporting the results of a survey of Wisconsin lawyers, which found that "[o]f the cases with a [fee calculated as a] fixed percentage [of the recovery], a contingency fee of 33% was by far the most common, accounting for 92% of those 2 cases").

Moreover, even courts that employ reduced percentages to very large settlement funds emphasize that the attorneys' fee awarded by the court must nonetheless be commensurate with the results achieved and the work performed by class counsel.  *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 444-48 & n.6 (E.D.N.Y. 2014) (awarding fees resulting in 3.41 multiplier, plus expenses of more than $27 million, and noting, that in an appropriate case, a fee award of one-third of a $510 million settlement fund could be justified and not constitute a "windfall"), *vacated on other grounds by*

17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016).[6]

As this Court has repeatedly recognized, the EPP class actions are extraordinarily complex, involving over 70 defendant groups in 41 separate but coordinated, antitrust class actions alleging violations of 31 separate antitrust and consumer protection laws.  *See* Transcript of May 11, 2016 Fairness Hearing, at 72-73 (noting the complexity of the EPP action and referring to the difficulty of the case as "extraordinary"); *see also In re Packaged Ice*, No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (stating that antitrust class actions are "arguably the most complex action(s) to prosecute" given the "legal and factual issues" which are "numerous and uncertain in outcome"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ("Antitrust class actions are inherently complex.").  The fee award is reasonable in light of this extraordinary complexity, the amount of work invested by counsel, and the result achieved for the class, and should not be reduced based

---

[6] If the Court were to consider a reduced percentage approach, it is further worth noting that, in cases where courts have followed that approach, the lodestar multipliers have been significantly larger than in this case.  For example, in *In re Credit Default Swaps Antitrust Litigation*, No. 13 Md 2476 (DLC) (Apr. 18, 2016 S.D.N.Y.), the court awarded $253,758,000 in attorneys' fees, an amount equal to 13.61% of a nearly $1.9 billion settlement fund, plus $10.2 million in expenses, resulting in a 6.36 multiplier.  In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998), the court awarded 14% of a $1.027 billion settlement, but the multiplier was 3.97.  Similarly, the cases to which Cochran cites include much higher lodestar/multipliers than is present here.  *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503 (S.D.N.Y 2003) (court awarded $220 million, which was 6.5% of a $3.3 billion settlement, but the lodestar/multiplier amounted to 3.5); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) (5.9% fees awarded on $2.65 billion settlement; multiplier of 3.69); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) (fees of 5.5% of $6.133 billion settlement; multiplier of 4).  In contrast, the lodestar/multiplier here is less than 2.  *See* Notice of Errata to End-Payor Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Certain Expenses in Connection with the Round 3 Settlements, *Spark Plugs* Dkt. 95 (multiplier of 1.63).

upon a mechanistic "mega fund" or "declining percentage fee" approach that has been rejected by this Court and others within this Circuit.

## CONCLUSION

For the foregoing reasons, and for the reasons articulated in Class Counsel's prior briefing, Class Counsel respectfully request that the Court: Class Counsel respectfully request that the Court: (1) grant final approval of the Round 3 Settlements; (2) grant final certification of the Round 3 Settlement Classes for settlement purposes only; (3) confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 3 Settlements; (4) approve the Plan of Allocation in connection with the Round 3 Settlements; (5) grant the requested attorneys' fees and reimbursement of certain litigation costs and expenses; and (6) overrule the Objection filed by Ms. Ahearn.

Dated: July 26, 2018                                   Respectfully submitted,

                                                      */s/ Hollis Salzman*
                                                      Hollis Salzman
                                                      Bernard Persky
                                                      William V. Reiss
                                                      Noelle Feigenbaum
                                                      **ROBINS KAPLAN LLP**
                                                      601 Lexington Avenue, Suite 3400
                                                      New York, NY 10022
                                                      Telephone: (212) 980-7400
                                                      Facsimile: (212) 980-7499
                                                      hsalzman@robinskaplan.com
                                                      bpersky@robinskaplan.com
                                                      wreiss@robinskaplan.com
                                                      nfeigenbaum@robinskaplan.com

                                                      */s/ Adam Zapala*

19

Adam J. Zapala
Elizabeth Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Steven M. Shepard
Lucas Issacharoff
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, Floor 32
New York, New York 10019

20

Telephone: (212) 729-2010
sshepard@susmangodfrey.com
lissacharoff@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiff Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 26, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Lucas Issacharoff*
Lucas Issacharoff
