# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | No. 12-md-02311 Hon. Marianne O. Battani |

| | |
|---|---|
| IN RE:  HEATER CONTROL PANELS | Case No. 2:12-cv-00403 |
| IN RE:  OCCUPANT SAFETY SYSTEMS | Case No. 2:12-cv-00603 |
| IN RE:  SWITCHES | Case No. 2:13-cv-01303 |
| IN RE:  IGNITION COILS | Case No. 2:13-cv-01403 |
| IN RE:  STEERING ANGLE SENSORS | Case No. 2:13-cv-01603 |
| IN RE:  ELECTRIC POWERED STEERING ASSEMBLIES | Case No. 2:13-cv-01903 |
| IN RE:  FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203 |
| IN RE:  VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503 |
| IN RE:  AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02703 |
| IN RE:  AUTOMOTIVE CONSTANT VELOCITY JOINT BOOT PRODUCTS | Case No. 2:14-cv-02903 |
| IN RE:  AUTOMOTIVE HOSES | Case No. 2:15-cv-03203 |
| IN RE:  SHOCK ABSORBERS | Case No. 2:15-cv-03303 |
| IN RE:  BODY SEALING PRODUCTS | Case No. 2:16-cv-03403 2:16-cv-10456 |
| IN RE:  INTERIOR TRIM PRODUCTS | Case No. 2:16-cv-03503 |
| IN RE:  AUTOMOTIVE BRAKE HOSES | Case No. 2:16-cv-03603 |
| IN RE:  EXHAUST SYSTEMS | Case No. 2:16-cv-03703 |
| IN RE:  CERAMIC SUBSTRATES | Case No. 2:16-cv-03803 2:16-cv-11804 |
| IN RE:  POWER WINDOW SWITCHES | Case No. 2:16-cv-03903 |
| IN RE:  AUTOMOTIVE STEEL TUBES | Case No. 2:16-cv-04003 2:16-cv-12949 |
| IN RE:  SIDE-DOOR LATCHES | Case No. 2:16-cv-04303 2:17-cv-11637 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

**OBJECTION OF 113 CLASS MEMBERS TO REVISED PLAN OF ALLOCATION CONTAINED IN END-PAYOR PLAINTIFFS' MOTION FOR AUTHORIZATION TO DISSEMINATE JUNE 2019 NOTICE TO THE END-PAYOR PLAINTIFF SETTLEMENT CLASSES**

## TABLE OF CONTENTS

I.      The Revised Plan Of Allocation Is Not Fair, Reasonable, or Adequate ...........................2

        A.      The Revised Plan Would Not Distribute Funds Equitably Among Class
                Members .................................................................................................................4

                1.      The Original Plan's Pro Rata Distribution Meets "Fair and
                        Reasonable" Standards ..............................................................................5

                2.      Class Counsel's Rationale That A Per Claimant Minimum
                        Payment Will Spur Claim Submissions Contradicts Class
                        Counsel's Previous Statements, As Well As The Class Reaction To
                        Settlement ..................................................................................................6

                3.      The Revised Plan's $100 Minimum Per Claimant Payment Gives
                        An Unequitable Windfall to Certain Class Members And Raises
                        Adequacy of Representation Concerns.....................................................10

II.     Class Counsel's Revised Plan Should Be Rejected in Order to Preserve Class
        Members' Due Process Rights and Avoid the Time and Expense of Implementing
        New Opt-Out Periods for Prior Settlements ..................................................................12

        A.      Approval of The Revised Plan Would Violate Due Process By Rendering
                the Notices Provided In Prior Settlement Rounds Defective Without
                Providing a New Opportunity to Opt Out ............................................................13

                1.      Information About a Plan of Allocation Is A Material Part of
                        Reasonable Notice Because It Informs a Class Member's Decision
                        to Opt Out. ...............................................................................................14

                2.      If The Court Adopts the Revised Plan, Previous Notices Will
                        Violate Due Process, As They Will Have Contained Material
                        Misinformation.........................................................................................15

III.    Class Members Relied on Specific and Detailed Information About the Allocation
        Plan In Prior Notices In Deciding Whether to Opt Out..................................................17

IV.     The Court Should Reject the Revised Plan to Avoid a Due Process Violation or
        the Expense and Delay of Instituting A New Opt-Out Period.........................................19

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*,
193 F.3d 415 (6th Cir. 1999) ................................................19

*Cty. of Monmouth, New Jersey v. Fla. Cancer Specialists*, P.L.,
No. 2:18-cv-201-FtM-23MRM, 2019 WL 1487340, (M.D. Fla. Apr. 4, 2019) ....................14

*Dowling v. Select Portfolio Servicing Inc.*,
No. 2:05-CV-0049, 2007 WL 928639 (S.D. Ohio Mar. 27, 2007)........................................14

*Downes v. Wisconsin Energy Corp. Retirement Account Plan*,
No. 09-C-0637, 2012 WL 1410023 (E.D. Wis. 2012) ...........................................................8

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .............................................................................................................14

*Georgine v. Amchem Prods., Inc.*,
83 F.3d 610 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................................3, 12

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................................2

*Hege v. Aegon USA, LLC*,
780 F. Supp. 2d 416 (D.S.C. 2011)...............................................................................15, 16

*In re Auto. Parts Antitrust Litig.*,
No. 12-md-02311, 2016 WL 8200513 (E.D. Mich. Oct. 7, 2016)...................................1, 19

*In re Brand Name Prescription Drugs Antitrust Litig.*,
No. 94 C 897, 1999 WL 639173 (N.D. Ill. Aug. 17, 1999)...................................................5

*In re Calif. Micro Devices Sec. Litig.*,
965 F. Supp. 1327 (N.D. Cal. 1997) ..................................................................................10

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003)........................................................................................5

*In re Cathode Ray Tube (CRT) Antitrust Litigation ("CRT I")*
No. 3:07-cv-5944 JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .............................16, 17

*In re Cathode Ray Tube (Crt) Antitrust Litig. ("CRT II")*,
No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) .................................16, 17

*In re Cathode Ray Tube (Crt) Antitrust Litig.* ("CRT III"),
    No. C-07-5944-SC, 2016 WL 3763382 (N.D. Cal. Feb. 29, 2016) ...................................... 16

*In re Citric Acid Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) .................................................................................. 5

*In re Dynamic Random Access Memory Antitrust Litig.*,
    No. M-02-1486-PJH, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) .................................... 10

*In Re Enron Corp. Secs., Derivative and ERISA Litig.*,
    No. H-01-3624, 2008 WL 4178151 (S.D. Tex. Sept. 8, 2008) ............................................... 5

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................................ 3, 10, 11, 12

*In re Global Crossing Securities and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................ 9

*In re HealthSouth Corp. Sec. Litig.*,
    334 F. App'x 248 (11th Cir. 2009) ....................................................................................... 15

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ........................................................................................ 8, 14

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013) ................................................................................................ 8

*In re Lease Oil Antitrust Litig.*,
    (No. II) 186 F.R.D. 403, 429 (S.D. Tex. 1999) .................................................................... 15

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ........................... 2, 5, 6

*In re Polyurethane Foam Antitrust Litig.*,
    135 F. Supp. 3d 679, 686 (N.D. Ohio 2015) .......................................................................... 5

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) .............................................................................................. 9

*Mehling v. N.Y. Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008) ............................................................................................ 8

*Slipchenko v. Brunel Energy, Inc.*,
    No. CIV.A. H-11-1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ................................ 8, 9

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) .................................................................................................. 6

*Swinton v. SquareTrade, Inc.*,
  No. 4:18-cv-00144-SMR-SBJ, 2019 WL 617791 (S.D. Iowa, Feb. 14, 2019) .......................5

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) .............................................................................................18

*Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................................14

**Rules and Statutes**

Fed. R. Civ. P. 23(e)(2) ...............................................................................................................3

Fed. R. Civ. P. 23......................................................................................................... 11, 14, 19

Objectors,[1] who together represent claims for as many as 15 million vehicles, object to the new Plan of Allocation ("Revised Plan") submitted by class counsel during the latest round of settlement—which applies retroactively to all previous settlement rounds[2]—because the new $100 per claimant threshold fails to fairly and reasonably compensate all class members, resulting in inequitable treatment of multi-vehicle claimants in favor of single-vehicle claimants, and because it violates class members' due process rights by applying new standards for distribution different than those outlined in prior class notices and long past the deadline for class members to opt out. By imposing an unreasonably high minimum guaranteed claim payment and applying that payment *per claimant* regardless of the number of vehicles claimed, the Revised Plan unfairly favors single-vehicle class members over all other class members— including not just Objectors but families, small businesses, and any class members with more than one vehicle to claim. Only after all minimum payments have been allocated will any remaining funds be distributed *pro rata*, leaving substantially less compensation for multi-vehicle claimants under the Revised Plan.

Through three separate settlement rounds and three prior notice periods, class counsel proposed and recommended a Plan of Allocation that would distribute funds to claimants on a strictly *pro rata* per vehicle basis. In what amounts to a "bait and switch" for the victims of Defendants' unlawful conduct, class counsel's Revised Plan drastically diminishes the potential recovery for multi-vehicle claimants without any recourse for the change because the opt-out

---

[1] Objectors have been identified through their claimant identification numbers attached hereto at Exhibit A to the Declaration of Stacy M. Dominguez ("Dominguez Decl."). In addition, as required by the Round 4 Settlement Notice, Objectors also notice their intent to appear at the Fairness Hearing. Dominguez Decl., Ex. B.

[2] Declaration of Shannon R. Wheatman, Ph.D. On Adequacy Of Notice And Notice Plan, Ex. 1, ¶ 37 [hereinafter "Wheatman Decl."]. To assist the Court in its review of this Objection, Objectors have provided courtesy hard copies of all filings in this case that have been cited in this Objection. *See* Appendix of Exhibits. Citations to these filings will reference the exhibit number contained in the Appendix of Exhibits. In addition, courtesy copies of these same filings have also been filed in the main docket for this proceeding, *In re Automotive Parts Antitrust Litigation*, No. 12-md-02311.

periods have already expired. Objectors respectfully urge the Court to reject the Revised Plan and require class counsel to uphold the strictly *pro rata* distribution methods outlined in the original Plan approved during the first three settlement rounds—a Plan which class counsel has multi-times over recommended as "fair, reasonable, and adequate" and "designed to minimize the burden on Settlement Class Members in making a claim." End-Payor Plaintiffs' Am. Mot. and Mem. in Supp. of. Am. Mot. For Approval of Plan of Allocation of Settlement Proceeds, Ex. 2 at 16-17 [hereinafter "Settlement Round 1 Plan of Allocation Mot. and Mem."].[3] Rejection of the Revised Plan would preserve Objectors' due process rights and avoid the lengthy and costly process of reopening all three prior Settlement Rounds for an additional opt-out period. Alternatively, should this Court determine that a minimum payment is warranted, Objectors respectfully suggest a substantially lower amount would be appropriate to reduce the disparity between single- and multi-vehicle compensation.

## I. The Revised Plan of Allocation Is Not Fair, Reasonable, or Adequate.

In approving a settlement fund's plan of allocation, courts must use "the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) (internal citations omitted); *see also Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 6619983, at *3-4 (N.D. Cal. Dec. 18, 2018). To determine what constitutes "fair, reasonable and adequate," courts are directed to consider multiple factors, including most relevant to this case whether (1) "the proposal treats class

---

[3] *See also* End-Payor Pls.' Mot. and Mem. in Supp. of Mot. For Orders Granting Final Approval of the Round 2 Settlements & Approving the Plan of Allocation in Connection with the Round 2 Settlements, Ex. 3, at 24, 27 [hereinafter "Settlement Round 2 Plan of Allocation Mot. and Mem."]; End-Payor Pls.' Mot. and Mem. in Support of Mot. For Orders Granting Final Approval of the Round 3 Settlements & Approving the Plan of Allocation in Connection with the Round 3 Settlements, Ex. 4, at 12, 17 [hereinafter "Settlement Round 3 Plan of Allocation Mot. and Mem."] (both Motions requesting approval of "an identical Plan of Allocation" as was previously approved by the court).

members equitably relative to each other"; and (2) "class representatives and class counsel have adequately represented the class." *See* Fed. R. Civ. P. 23(e)(2).[4]

By instituting a $100 minimum payment per claimant, the Revised Plan no longer "treat[s] all members of the class equitably." Instead, it overcompensates individual vehicle class members at the expense of multi-vehicle class members. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 818 (3d Cir. 1995) [hereinafter, *GM Trucks*]. The Revised Plan's new distribution scheme leaves multi-vehicle claimants with "significantly less value" relative to individual vehicle claimants. *Id.* at 801. For example, under the Revised Plan, a single-vehicle claimant stands to recover $100, whereas a family with four vehicles recovers just $25 per vehicle and a small business with 10 vehicles recovers just $10 per vehicle—a fraction per vehicle of the $100 awarded to the individual vehicle claimant. The minimum $100 award per claimant instituted so late in this process makes clear that the interests of the named plaintiffs are not adequately aligned with the interests of all class members, including Objectors, who have claims for hundreds, thousands, and in some cases millions of vehicles each. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ("serious intra-class conflicts preclude this class from meeting the adequacy of representation requirement").

Because the Revised Plan "affords the least relief to those class members with the most valuable claims, i.e., the fleet owners" it must be rejected in favor of the original, more equitable *pro rata* distribution of settlement funds. *GM Trucks*, 55 F.3d at 818.

---

[4] Other factors include whether the settlement was negotiated at arm's length and whether the relief was adequate, including the costs and risks associated with trial, and the effectiveness of the proposed method for distributing relief. Fed. R. Civ. P. 23(e)(2)(A)-(D).

A.   **The Revised Plan Would Not Distribute Funds Equitably Among Class Members.**

The Revised Plan—with its new $100 per claimant payout—will drastically reduce the potential compensation to multi-vehicle claimants as compared to single-vehicle claimants, despite the per vehicle harm being no different across claimants. The result is a substantial disparity in the treatment of class members under the Revised Plan.

Although it is difficult to estimate potential *pro rata* awards per vehicle this early in the proceeding, Objectors conservatively estimate an average *pro rata* award of roughly $2 *per vehicle*.[5] With the proposition of a $100 minimum award *per claimant*, a single-vehicle claimant would receive an award potentially 50 times greater than under a strictly *pro rata* distribution. Only after all of the initial $100 awards have been distributed will the remaining funds be distributed *pro rata* per vehicle, leaving relatively little compensation left for Defendants' most affected victims.  Although class counsel would likely argue that the multi-vehicle claimants will receive additional compensation through the second stage *pro rata* distribution of any remaining funds, it is clear from the number of likely claimants that the remaining fund will be greatly diminished by the $100 awards to single-vehicle claimants leaving relatively little for *pro rata* distribution.

Although the original Plan of Allocation met the required standards for fairness, adequacy and reasonableness, the Revised Plan introduces a substantial guaranteed minimum award that provides an inequitable windfall to certain class members and raises new adequacy of representation issues within the class.

---

[5] Objectors base this rough estimate on published estimates of vehicle sales in the U.S. supporting approximately 510 million vehicles sold over the 30-year relevant time period at 17 million a year—and dividing that number into the approximately $1 billion settlement fund (after attorney's fees and administrative costs).   This estimate is necessarily conservative as it assumes a 100 percent claims rate and includes vehicles that likely are not eligible.  Dominguez Decl. ¶¶5-6, Ex. C.

1.      **The Original Plan's *Pro Rata* Distribution Meets "Fair and Reasonable" Standards.**

A distribution plan that "reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Citric Acid Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001); *In re Packaged Ice*, 2011 WL 6209188, at *15.  In developing a fair and reasonable plan, counsel's methodology should take "into consideration the unique facts and circumstances" of the litigation, including such factors as "interclass distinctions based on the relative strength and weaknesses of the different claims . . . [and] the magnitude of the loss."  *See In Re Enron Corp. Secs., Derivative and ERISA Litig.*, No. H-01-3624, 2008 WL 4178151, *5 (S.D. Tex. Sept. 8, 2008) (approving *pro rata* distribution of funds in proportion that each claimant's "'Recognized Claim' bears to the total of all Recognized Claims.").  In addition, although "[t]here is no requirement that all class members in a settlement be treated equally," the plan must still "provide[] relief commensurate to the value of their . . . claims." *Swinton v. SquareTrade, Inc.*, Case No. 4:18-cv-00144-SMR-SBJ, 2019 WL 617791, at *8 (S.D. Iowa, Feb. 14, 2019) (approving settlement with multiple tiers of recovery based on extent of damages underlying each claim and where certain class members "suffered greater, clearly ascertainable losses").

In reviewing these factors, courts routinely approve straight *pro rata* distributions of funds as "fair and reasonable" because this type of distribution "will provide the most accurate measure of the damages suffered by each class member." *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1999 WL 639173, at *4 (N.D. Ill. Aug. 17, 1999) (approving *pro rata* distribution where class members ranged from small, independent pharmacies to large chains);  *see In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 686 (N.D. Ohio 2015) (citation omitted) ("[P]roposal to allocate net settlement funds on a pro rata basis is both reasonable and rational."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich.

2003); *see also In re Packaged Ice*, 2011 WL 6209188, *15 (quoting 3 Newberg on Class Actions, § 8:45 (4th ed. 2011)) ("Typically, a class recovery in antitrust or securities suits will divide the common fund on a *pro rata* basis among all who timely file eligible claims.").

Indeed, class counsel's earlier motions to approve the first three plans of allocations echoed precisely this rationale in seeking approval of a *pro rata* distribution *without* any per claimant minimum:

> ***The purpose of a plan of allocation is to create a method that will permit the equitable distribution of settlement proceeds to all eligible members of the class.*** According, as courts have observed, "[a] district's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)); *see also In Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 539 (3d Cir. 2004). "'Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'" *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15.

Settlement Round 1 Plan of Allocation Mot. and Mem., Ex. 2, at 12 (emphasis added).

Now with the institution of the new $100 *per claimant* minimum payment, class counsel has inexplicably reversed its position—an original position that was overwhelmingly supported by existing case law. Without this Court's intervention to restore the original, straight *pro rata* distribution, any hope of an equitable distribution of funds to class members will be lost.

**2.    Class Counsel's Rationale That a Per Claimant Minimum Payment Will Spur Claim Submissions Contradicts Class Counsel's Previous Statements, As Well As the Class Reaction To Settlement.**

Despite inequitable treatment of certain class members, class counsel nevertheless attempts to justify the new $100 per claimant minimum payment as necessary to "stimulate additional claims activity by alleviating the concern of potential claimants that the settlement proceeds would not be worthwhile." End Payor Pls.' Mem. Of Law In Support Of Am.

Unopposed Mot. For Authorization To Disseminate June 2019 Notice To The End-Payor Plaintiff Settlement Classes, Ex. 5, at 21.   However, this argument directly contradicts class counsel's earlier statements in this case, as well as the class members' positive reactions to the previous Plans of Allocation.

For the first three rounds of settlements and three identical Plans of Allocation—all distributing funds on a strictly *pro rata* basis—class counsel declared the distribution method "fair, reasonable and adequate" in requesting approval of the plans from this Court.[6]   At the same time, no class members lodged objections to the *pro rata* distribution outlined in those three previous, identical allocation plans.   For example, as class counsel itself noted in a previous settlement round, "The Reaction of Members of the Round 2 Settlement Classes Has Been Positive" and notice has been effective, "reaching an estimated 80.1% of new Vehicle owners or lessees, with an average frequency of 2.5 times."   Settlement Round 2 Plan of Allocation Mot. and Mem., Ex. 3, at 21; *see also* Settlement Round 3 Plan of Allocation Mot. and Mem., Ex. 4, at 12 ("The response from members of the Round 3 Settlement Classes has been positive.").   Yet, inexplicably, class counsel has now apparently determined that a minimum guaranteed award per claimant—of no less than $100—is necessary to spur claims activity, despite previous assurances to the Court that claims were "likely to increase" once a claims deadline was set and that notice had been "more than adequate." Fairness Hr'g Tr. (Aug. 1, 2018), Ex. 6, at 9:19-24, 20:1-3.

None of the minimum threshold cases cited by class counsel in their Motion as justification for the $100 minimum are appropriate for these proceedings.[7]   In those cases, a

---

[6] Settlement Round 1 Plan of Allocation Mot. and Mem., Ex. 2 at 16-17; Settlement Round 2 Plan of Allocation Mot. and Mem., Ex. 3, at 24, 27; Settlement Round 3 Plan of Allocation Mot. and Mem, Ex. 4, at 12, 17.

[7] Minimum thresholds are often used where the cost of claims submission (*i.e.*, postage and paper) could potentially cost more than a claim was actually worth. However, class counsel already rejected this rationale in response to a Round 2 Settlement objector who argued that the settlement itself should be rejected due to a (Continued...)

small threshold—nothing like the $100 payment here—was used to spur on claims. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007). The cases referenced in class counsel's Motion are distinguishable based on either class size or size of minimum payment relative to the overall fund. For example, the $250 minimum payout in *Downes v. Wisconsin Energy Corp. Retirement Account Plan*, No. 09-C-0637, 2012 WL 1410023 (E.D. Wis. 2012), was payable to a class of only 4,100 beneficiaries of a retirement plan and a $45 million settlement fund. *See* Mot. For Prelim. Approval Of Class Action Settlement, Recommended Plan Of Allocation, Class Certification And Appointment Of Class Representatives And Class Counsel, at 4, *Downes v. Wisconsin Energy Corp. Retirement Account Plan*, No. 09-C-0637-LA, (E.D. Wis. Nov. 22, 2011), ECF No. 132 (attached hereto at Exhibit D to Dominguez Decl.). *See also Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *21 (S.D. Tex. Jan. 23, 2015) ($100 minimum for only 70 class members sharing $350,000 settlement); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 463-64 (E.D. Pa. 2008) ($50 minimum for only 30,000 class members and a $14 million settlement (less attorney's fees)); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 143 (D.N.J. 2013) ($10 minimum for only 20,000 claimants).

By contrast, this case involves "tens of thousands" of claimants and millions of potentially affected vehicles. In addition, there is wide disparity between claimants with single vehicles and those with multiple affected vehicles—sometimes thousands, even millions of vehicles. Indeed, the very cases cited by class counsel in support of minimums clearly identify

---

"restrictive claims process." End-Payor Pls.' Omnibus Resp. To Objections To Round 2 Settlements, Ex. 7, at 18. In order to verify her claim, the objector noted that the cost to obtain documentation (*e.g.*, from the department of motor vehicles) "*may be more than what she would receive as a class member*." *Id.* (emphasis added). However, class counsel assured the Court that although the "notice requests proof of purchase from potential class members, *documentation will not be required if it is not reasonably available*" and therefore that the objector's argument was "not a proper basis to reject the Round 2 Settlements." *Id.* (emphasis added). As class counsel has already assured claimants that the costs of submitting their claim will be minimal, a minimum payment for cost purposes would be unnecessary.

the need for differentiation among types of claimants in order to achieve equitable resolution: ""[D]isparate treatment of class members may be justified by a demonstration that the favored class members have different claims or greater damages." *Slipchenko*, No. CIV.A. H-11-1465, 2015 WL 338358, at *12 (citing *Petruzzi's, Inc. v. Darling–Del. Co.*, 880 F.Supp. 292, 300–01 (M.D.Pa. 1995)).

Objectors recently requested an explanation from class counsel of how the $100 figure was derived and what consideration was given, if any, to the disproportionate impact on multi-vehicle claimants. Class counsel failed to provide Objectors with an explanation and instead attempted to support their new minimum payment position with inapposite legal authority. For example, in support of a guaranteed minimum payment, class counsel cited two cases that had a minimum *threshold* for payment by which claimants would receive no compensation if their damages did not reach a certain minimum level. *See In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (any claim valued at less than $10 would not be paid out); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 63 (D. Mass. 2005) (no checks issued to claimants not meeting the $10 threshold, with money returned to fund for *pro rata* distribution to remaining claimants). Although the *Relafen* case also had a minimum $35 payment for consumers, the "significant incentive" for filing referenced by that court was not the minimum payment but rather that parties had agreed to separate settlement funds for consumers and third-party payors. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 63. In addition, the *Global Crossing* court held that "**[p]ro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach**." 225 F.R.D. at 462 (emphasis added).[8]

---

[8] In a third case identified by class counsel, a $10 minimum payment was guaranteed, but as part of a "small claimant" fund that was capped at $50 million under the larger settlement fund. All small claimants were (Continued...)

Class counsel also pointed to a securities fraud class action to assert that even though a plan of allocation could have unjust results, "[a]dministrative convenience requires . . . that allocation plans incorporate some theoretically unjustified simplification." *In re Calif. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1336 (N.D. Cal. 1997). But the "simplification" in that case involved streamlining complex calculations involving closing day share prices vs. intraday trading prices and the court accepted the simplified calculations "in the absence of a workable alternative." *Id.* Here, there is clearly a workable alternative—for three rounds of settlements, class members had an approach that was fair, reasonable and adequate and the very essence of simplification—the original *pro rata* distribution. Class counsel has no credible rationale for imposing this new guaranteed minimum payment per claimant, and their attempts to justify the change through ill-fitting case law fall flat.

### 3.     The Revised Plan's $100 Minimum Per Claimant Payment Gives An Unequitable Windfall to Certain Class Members And Raises Adequacy of Representation Concerns.

None of the named plaintiffs in this case are vehicle-fleet owners like the Objectors. With the new late-stage introduction of the $100 per claimant payout, the interests of single-vehicle owners now necessarily diverge from those of multi-vehicle class members such as Objectors, creating a serious conflict: "the negotiated settlement treats fleet owners differently from individual owners, a fact with serious implications for the fairness of the settlement and the adequacy of representation of the class." *GM Trucks*, 55 F.3d at 777.

---

entitled to a minimum of $10, but "[i]f the total dollar amount of all small claimant recovery, after each claimant is raised to $10, exceeds $50 million, no distribution of individual checks will be made to this group. Rather, $40 million will be distributed *cy pres* to the benefit of small claimants." *In re Dynamic Random Access Memory Antitrust Litig.*, No. M-02-1486-PJH, 2013 WL 12333442, at *14 (N.D. Cal. Jan. 8, 2013).

For single-vehicle claimants, the new $100 per claimant minimum payment represents a payout that is approximately 50 times what the claimant would otherwise receive under a strictly pro rata distribution.  Because the minimum payment is both unusually high and allocated *per claimant*, any class member with more than one vehicle will have their compensation substantially diminished by the Revised Plan—an inequity that will apply retroactively across all four settlement rounds.

For claimants such as Objectors, who may have as many as 15 million vehicles affected, the $100 per claimant payout would leave them with a *de minimis* payout per vehicle. With so many claims anticipated here, the $100 per claimant payout will likely drastically reduce the fund itself, leaving little remainder available for *pro rata* distribution to multi-vehicle claimants. The result is a windfall payout for single-vehicle claimants, leaving multi-vehicle claimants with little compensation per vehicle despite their full release of claims against Defendants.

The facts here are markedly similar to the Third Circuit's analysis in *GM Trucks*, in which the court found similar issues with individual owners' inability to represent the interests of fleet owners and a potential for conflict between the needs of individual owners and fleet owners: "[W]e must be concerned that the individual owners had no incentive to maximize the recovery of [larger claimants]; they could skew the terms of the settlement to their own benefit. Not surprisingly, the *settlement leaves fleet owners with significantly less value than individual owners*." 55 F.3d at 801 (emphasis added).  The same is true here: Single-vehicle claimants will receive approximately 50 times more than they would have received in a strict *pro rata* distribution scheme, while simultaneously drastically reducing the pool of compensation to which multi-vehicle claimants would be entitled for their additional vehicles.

-11-

The new $100 payout necessarily creates the intra-class conflict that the *GM Trucks* court warns of and that Rule 23(e) was intended to prevent, namely "whether the named plaintiffs' interests are sufficiently aligned with the absentees." 55 F.3d at 800. Although the three previous Plans of Allocation "sufficiently aligned" the entire class with an equitable distribution method, the Revised Plan—like the settlement in *GM Trucks*— necessarily "create[s] antagonism within the class" by introducing a large "disparity in the prospective value to the different sections of the class." *Id.* at 800, 801. Further, where "serious intra-class conflicts" exist, a class necessarily fails the adequacy of representation requirement because "the interests of different types of class members are at odds." *See Georgine*, 83 F.3d at 630

Class counsel may argue—notwithstanding the class conflict apparent here—that multi-vehicle claimants such as Objectors should have opted-out if they feared their interests would not be adequately represented. In addition to the due process issues discussed in Sections II to IV *infra*, the ability to opt out is not sufficient to cure the divergent interests present here. Indeed, class members' ability to opt out "does not relieve the court of its duty to safeguard the interests of the class and to withhold approval from any settlement that creates conflicts among the class." *GM Trucks*, 55 F.3d at 809. The starting point of any settlement is that it should be fair to all class members, without regard for their ability to opt out. It would be unfair to require absentee class members to opt out and bear the burden of their own litigation simply because class counsel has now placed the named plaintiffs' interests above those of multi-vehicle class members like Objectors.

## II.     Class Counsel's Revised Plan Should Be Rejected in Order to Preserve Class Members' Due Process Rights and Avoid the Time and Expense of Implementing New Opt-Out Periods for Prior Settlements

Adoption of the Revised Plan would also violate class members' due process rights. As Objectors have noted, throughout three settlement rounds, three prior notices to the class, and

-12-

multiple filings before this Court, class counsel has unequivocally represented that the settlement fund would be distributed to claimants on a *pro rata* basis. The Court has approved such an allocation plan three times. Now, when opt-out deadlines have passed, class counsel has proposed a Revised Plan that would disadvantage multi-vehicle claimants in all four settlements. Having chosen to make specific representations about the Plan of Allocation in its prior notices to the class, class counsel now makes an about-face by imposing an inequitable allocation plan across the class after the opt-out deadline has passed. Imposing the Revised Plan, however, renders the information in prior notices both misleading and inaccurate and violates class members' due process rights.  Objectors therefore urge the Court to further reject the Revised Plan in order to preserve class members' constitutional rights while avoiding the lengthy and costly process of reopening prior Settlement Rounds for an additional opt-out period.

> **A.**    **Approval of The Revised Plan Would Violate Due Process By Rendering the Notices Provided In Prior Settlement Rounds Defective Without Providing a New Opportunity to Opt Out**

Class counsel's recently filed Revised Plan would apply not only to Settlement Round 4, but to all previous Settlement Rounds. Declaration of Shannon R. Wheatman, PH.D. On Adequacy Of Notice And Notice Plan, Ex. 1, ¶ 37 (hereinafter Wheatman Decl. Ex. 1") ("The revised Plan of Allocation will apply to all prior settlements.").  Should the Court approve the Revised Plan, notices in the prior settlement rounds would violate due process because the information they contained would no longer be accurate.  Class members, including Objectors, made their decision about whether to opt out based in part on their expected recovery, as outlined in the Plan of Allocation described in the previous notices, which was strictly *pro rata*.  Without a new

opportunity to opt out of previous settlement classes based on the new allocation plan—which the Revised Plan does not propose[9]—claimants' due process rights will continue to be violated.

        **1.**        **Information About a Plan of Allocation Is A Material Part of Reasonable Notice Because It Informs a Class Member's Decision to Opt Out.**

Due process requires that class members receive reasonable notice of a settlement agreement to enable them to evaluate whether to remain in a class—and release their claims—or to opt out and bring their own suit. *See, e.g.*, *Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005) ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."). Under Federal Rule of Civil Procedure 23(e), class members are entitled to receive notice of a settlement agreement that comports with due process. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174732 (1974); Fed. R. Civ. P. 23(e), advisory committee's note to 1966 amendment. A reasonable notice must contain sufficient detail to "permit class members to determine the potential costs and benefits" of remaining in the class. *Dowling v. Select Portfolio Servicing Inc.*, No. 2:05-CV-0049, 2007 WL 928639, at *9 (S.D. Ohio Mar. 27, 2007).

Allocation is a material part of adequate notice to a class and courts have recognized that such information ensures that class members are able to make a truly informed decision on whether to opt out. *Cty. of Monmouth, New Jersey v. Fla. Cancer Specialists*, P.L., No. 2:18-cv-201-FtM-23MRM, 2019 WL 1487340, at *5 (M.D. Fla. Apr. 4, 2019); *In re Initial Pub. Offering*

---

[9] In its memorandum in support of the latest round of notice, class counsel writes that "[t]he proposed Long-Form Notice also describes the right of Settlement Class Members to opt-out of some or all of the Settlement Classes . . . ." End-Payor Pls.' Am. Mot. and Mem. Of Law In Support of Second Am. Unopposed Mot. For Authorization to Disseminate July 2019 Notice to the End-Payor Pl. Settlement Classes, Ex. 8, at 24. The proposed Long-Form Notice specifically states "[i]f you did not timely request to be excluded from the Round 1, Round 2 or Round 3 Settlement Classes, you may not request to be excluded from those Settlement Classes at this time. You may only request to be excluded from the Settlement Classes for the Round 4 Settlements." Exhibit B to Wheatman Decl., Ex. 9, at 19.

*Sec. Litig.*, 243 F.R.D. at 94.   With respect to allocation, a notice "should include enough information to allow a class member to estimate the likely individual recovery after deducting for expenses and the attorney's fees." *Cty. of Monmouth, New Jersey*, No. 2:18-cv-201-FrM-23MRM, 2019 WL 1487340, at *5. A notice without such information may be deemed deficient. *See In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 94 (deeming a proposed Notice defective because it did "not advise a potential claimant of the amount of its recovery . . . undoubtedly an important factor in a class member's decision of whether to opt out of a class settlement.").

Generally, adequate notice includes some information about the allocation formula. *In re Lease Oil Antitrust Litig.* (No. II), 186 F.R.D. 403, 429 (S.D. Tex. 1999) ("Notice is adequate where the class member is notified of the formula of allocation.")  Even information that there is *no* allocation plan would be relevant, as class members may also use the absence of information to make opt-out decisions. For example, in  *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 253-54 (11th Cir. 2009) the court approved a notice which did not disclose Plan of Allocation and exclusion date, because "[t]he Class Notice expressly informed class members that the Plan of Allocation would be determined at a later date" and if members "needed to obtain the Plan of Allocation before agreeing to participate in the settlement, then [they] could have opted out based on the Settling Parties failure to finalize the Plan of Allocation prior to the Class Notice." Thus, the Court should presume that potential claimants rely on representations about allocation in the notice.

### 2.    If The Court Adopts the Revised Plan, Previous Notices Will Violate Due Process, As They Will Have Contained Material Misinformation.

In this case, notice to class members advising them of Settlement Rounds 1 through 3 included information that settlement funds would be distributed on a *pro rata* basis. Having chosen to provide specific details about the allocation plan in previous notices, class counsel now

has an obligation to ensure those notices remain accurate. *See Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 431 n. 10 (D.S.C. 2011) (stating "[t]he party producing the notice documents has the burden of providing informative, accurate notice to class members" and holding a notice violated due process when it contained incorrect information about the value of the members' rights if they opted out).

Previous class notices would no longer be accurate if the Revised Plan is adopted for the net Settlement Funds. Changing the plan now would contravene the purpose of the notices—to provide accurate information in advance of the opt-out deadline—and doing so does not comport with due process.

Due process concerns have arisen in other cases when alteration to a plan of allocation would have rendered a prior settlement notice inaccurate. For example, in *In re Cathode Ray Tube (CRT) Antitrust Litigation ("CRT I")*, the court had approved a 2012 settlement agreement with Chunghwa Picture Tubes, Ltd. No. 3:07-cv-5944 JST, 2016 WL 721680, at *8, 27 (N.D. Cal. Jan. 28, 2016). Then, four years later, plaintiffs sought approval of a comprehensive settlement agreement with six other defendants in the litigation. *See id.* However, the court received due process objections to the comprehensive settlement because the comprehensive settlement's allocation plan would have conflicted with and altered the previously-approved allocation under the Chunghwa settlement.[10] If the comprehensive settlement were approved, it would have overridden the allocation plan in the Chunghwa settlement and the prior notice

---

[10] Specifically, "(1) the Chunghwa settlement permits resellers of CRT products to recover damages but the current Plan of Allocation does not, and (2) the Chunghwa settlement distributes the net settlement proceeds to 24 states *pro rata* in accordance with their respective populations in 2000, but the current Plan of Allocation distributes funds *pro rata* to all eligible claimants without regard to state populations." *CRT I*, No. 3:07-CV-5944 JST, 2016 WL 721680, at *27.

provided to the Chunghwa plaintiffs would have been inaccurate. *Id.* at *29 ("But if the current Plan of Allocation is adopted, the Chunghwa notice will have been inaccurate.").

The court in *In re Cathode Ray Tube* cured the issue by refusing to adopt the comprehensive settlement's Plan of Allocation as proposed, and instead altered it so that it no longer conflicted with the Chunghwa settlement. *In re Cathode Ray Tube (Crt) Antitrust Litig. ("CRT II")*, No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016); *In re Cathode Ray Tube (Crt) Antitrust Litig. ("CRT III")*, No. C-07-5944-SC, 2016 WL 3763382, (N.D. Cal. Feb. 29, 2016). The court also reopened the claims period for the Chunghwa class for an additional 120 days.  *CRT II*, No. C-07-5944 JST, 2016 WL 3648478, at *20.

Similar due process concerns are at play here.  As in *In re Cathode Ray Tube*, the Revised Plan will alter the allocation process that was advertised in previous settlement notices. Such conflicts between settlement plans raise "troublesome due process issues." *CRT I*, No. 3:07-CV-5944 JST, 2016 WL 721680, at *27.

## III.    Class Members Relied on Specific and Detailed Information About the Allocation Plan In Prior Notices In Deciding Whether to Opt Out.

In its previous Plans of Allocation, which were all approved by the Court, class counsel advanced identical Plans of Allocation, all the while assuring the Court that this plan was "fair, reasonable, and adequate."[11] *E.g.*, Settlement Round 1 Plan of Allocation Mot. and Mem., Ex. 2, at 16-17.  Not only did every prior notice contain express language that the settlement funds would be distributed *pro rata*, but class counsel represented that "[i]t is expected that the Plan of

---

[11] Class counsel's first Plan of Allocation requested a *pro rata* distribution. Settlement Round 1 Plan of Allocation Mot. and Mem., Ex. 2, at 14. Subsequently, for both Settlement Rounds 2 and 3, class counsel moved for approval of "the identical Plan of Allocation" as was approved in Settlement Round 1.  Settlement Round 2 Plan of Allocation Mem. and Mot., Ex. 3, at 2; Settlement Round 3 Plan of Allocation Mot. and Mem., Ex. 4, at 2. The Court approved the Plan of Allocation for Settlements Rounds 1, 2, and 3. Order Granting End-Payor Pls.' Am. Mot. for Approval of Plan of Allocation of Settlement Proceeds, Ex. 10; Order Approving End-Payor Pls.' Plan of Allocation of the Settlements, Ex. 11; Order Granting Final Approval to the Round 3 Settlements, Ex. 12.

Allocation would apply to any future settlements adjusted to take into account any additional automotive parts that are encompassed by those settlements." *Id.*, Ex. 2, at 2.

In addition, all of class counsel's notices to the class members provided specific information about allocation. In its Round 1 Notice to the class members, class counsel wrote "[p]ayments will be determined on a *pro rata* basis. This means payments will be based on the number of valid claims filed by all Class members as well as on the number and type of motor vehicle component parts you purchased indirectly." Initial Notice, Round 1, http://www.autopartsclass.com/courtdocs.php, Ex. 13, at 8; *see also* Mem. of Law in Supp. of Mot. For Authorization to Disseminate Notice to the End-Payor Pls. Settlement Classes, Ex. 14, at 14.  In its Round 2 and Round 3 Notices to Class members, Class Counsel advised "[t]he amount of your recovery will be determined by the Plan of Allocation, the terms of which are posted on the website www.AutoPartsClass.com. Class Counsel has proposed a Plan of Allocation to distribute the Net Settlement Funds from the Round 1 and Round 2 Settlements to the members of the Settlement Classes. If the Court approves the Plan of Allocation, ***payment will be made on a pro rata basis to Settlement Class members who submit claims that are allowed by the Court, which will be based on a ratio consisting of the claimant's total number of vehicles purchased or leased or replacement parts purchased, and the total number of vehicles purchased or leased and replacement parts purchased by other claimants.***"  Am. Sept. 2016 Notice, Round 2, http://www.autopartsclass.com/courtdocs.php, Ex. 15, at 14; March 2018 Notice, Round 3, http://www.autopartsclass.com/courtdocs.php, Ex. 16, at 14 (emphasis added).

There was no mention of a minimum award value in prior notices, let alone a $100 minimum. Such additional information would have undoubtedly been vital to members deciding whether to remain in the class versus opt out.

Class members also did not receive any warning that the Plan of Allocation would be subject to change. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012) (holding no new notice or opt-out period was required after the court altered a Plan of Allocation because, *inter alia*, the notice explicitly stated that the allocation plan was subject to change without further notice). Indeed, the opposite occurred—class counsel assured the Court that it intended that "***the Plan of Allocation would apply to any future settlements*** adjusted to take into account any additional automotive parts that are encompassed by those settlements." Settlement Round 1 Plan of Allocation Mot. and Mem., Ex. 2, at 2 (emphasis added). The Court should presume that class members made decisions based on these representations.

## IV. The Court Should Reject the Revised Plan to Avoid a Due Process Violation or the Expense and Delay of Instituting A New Opt-Out Period.

"The purpose of notice in a class action is to 'afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment.'" *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 8200513, at *7 (E.D. Mich. Oct. 7, 2016). In this case, should the Court approve the Revised Plan, it would render the information in previous notices inaccurate and approving the Revised Plan without providing members with another opportunity to opt out would deprive class members of due process. *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 425 (6th Cir. 1999) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 2974, 86 L. Ed. 2d 628 (1985)) ("Due process concerns mandate the opt-out mechanism."). Yet providing members with another opt-out period would be costly, confusing, and further delay distribution. The more equitable path forward to protecting the rights of all class members is to reject the Revised Plan and implement

-19-

the "fair, reasonable, and adequate" *pro rata* allocation plan that class counsel previously requested, and this Court previously approved.

For the forgoing reasons, Objectors respectfully urge the Court to reject the Revised Plan of Allocation in favor of the Original Plan approved in the first three rounds of settlement, thereby enabling equitable treatment of all class members.


November 19, 2019                                        Respectfully submitted,


                                                        By: */s/ John S. Gibson*
                                                        John S. Gibson
                                                        Daniel A. Sasse
                                                        Shane Wagman Romero
                                                        Crowell & Moring LLP
                                                        3 Park Plaza, 20th Floor
                                                        Irvine, CA 92614-8505
                                                        Telephone: (949) 263-8400
                                                        Facsimile:  (949) 263-8414
                                                        Email: jgibson@crowell.com
                                                               dsasse@crowell.com
                                                               sromero@crowell.com

                                                        Emma K. Burton
                                                        Ann L. Rives
                                                        Crowell & Moring LLP
                                                        1001 Pennsylvania Avenue, NW
                                                        Washington, DC 20004
                                                        Telephone: (202) 624-2500
                                                        Facsimile:  (202) 628-5116
                                                        Email: eburton@crowell.com
                                                               arives@crowell.com

                                                        *Attorneys for 113 Class Member Objectors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2019, a copy of the foregoing was filed electronically using the Court's ECF system, which will send notification to each attorney of record by electronic means.  Parties may access this filing through the Court's system.

Dated: November 19, 2019                    By: */s/ John S. Gibson*
                                                                    John S. Gibson