# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | No. 12-md-02311<br>Hon. Marianne O. Battani |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403 |
| IN RE: OCCUPANT SAFETY SYSTEMS | Case No. 2:12-cv-00603 |
| IN RE: SWITCHES | Case No. 2:13-cv-01303 |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403 |
| IN RE: STEERING ANGLE SENSORS | Case No. 2:13-cv-01603 |
| IN RE: ELECTRONIC POWERED STEERING ASSEMBLIES | Case No. 2:13-cv-01903 |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203 |
| IN RE: VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503 |
| IN RE: AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02703 |
| IN RE: AUTOMOTIVE CONSTANT VELOCITY JOINT BOOT PRODUCTS | Case No. 2:14-cv-02903 |
| IN RE: AUTOMOTIVE HOSES | Case No. 2:15-cv-03203 |
| IN RE: SHOCK ABSORBERS | Case No. 2:15-cv-03303 |
| IN RE: BODY SEALING PRODUCTS | Case No. 2:16-cv-03403<br>2:16-cv-10456 |
| IN RE: INTERIOR TRIM PRODUCTS | Case No. 2:16-cv-03503 |
| IN RE: AUTOMOTIVE BRAKE HOSES | Case No. 2:16-cv-03603 |
| IN RE: EXHAUST SYSTEMS | Case No. 2:16-cv-03703 |
| IN RE: CERAMIC SUBSTRATES | Case No. 2:16-cv-03803<br>2:16-cv-11804 |
| IN RE: POWER WINDOW SWITCHES | Case No. 2:16-cv-03903 |
| IN RE: AUTOMOTIVE STEEL TUBES | Case No. 2:16-cv-04003<br>2:16-cv-12949 |
| IN RE: SIDE-DOOR LATCHES | Case No. 2:16-cv-04303<br>2:17-cv-11637 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

## DECLARATION OF SHANNON R. WHEATMAN, PH.D. ON ADEQUACY OF NOTICE AND NOTICE PLAN

I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

1. I am president of Kinsella Media, LLC ("Kinsella"), an advertising and notification consulting firm in Washington, D.C. specializing in the design and implementation of notification

programs. My business address is 2101 L Street, NW Suite 800, Washington, D.C. 20037. My telephone number is (202) 686-4111.

2. In the above-referenced matter, *In re: Automotive Parts Antitrust Litigation*, I was asked to design a notice and notice plan to inform Settlement Class Members about the Round 4 Settlements.

3. Katherine Kinsella, founder and former president of Kinsella, previously submitted a declaration executed September 3, 2015, outlining my and the firm's credentials. I previously submitted a declaration describing the September 2016 Notice Program, for the Round 2 Settlements, which was also designed by Kinsella ("September 2016 Notice Program Declaration"), and an amended declaration on October 26, 2016 describing a change in one publication. The Court subsequently approved the September 2016 Notice Program on October 7, 2016, *see, e.g.*, *Wire Harness Systems*, 2:12-cv-00103, Dkt. 535, and the amendment on October 31, 2016, *see, e.g.*, *Wire Harness Systems*, 2:12-cv-00103, Dkt. 542. Also, I previously submitted a declaration describing the March 2018 Notice Program, for the Round 3 Settlements, designed by Kinsella ("March 2018 Notice Program Declaration"). The Court subsequently approved the March 2018 Notice Program on March 13, 2018, *see, e.g.*, *Wire Harness Systems*, 2:12-cv-00103, Dkt. 601.

4. This declaration will describe the July 2019 notices (the "July 2019 Notice") and notice plan (the "July 2019 Notice Plan") (collectively referred to as the "July 2019 Notice Program") proposed here for *In re: Automotive Parts Antitrust Litigation*, including how they were developed, how they differ from the previous notice programs, and why they are effective.

5. This declaration is based upon my personal knowledge and upon information provided by Settlement Class Counsel and my associates and staff. The information is of a type

reasonably relied upon in the fields of advertising, media, and communications.

## JULY 2019 NOTICE PROGRAM OVERVIEW

6. Kinsella proposes implementing a two-phased July 2019 Notice Program to provide notice to Settlement Class Members. The first phase will inform Settlement Class Members about their rights and options in the case. The second phase will be a simple reminder about the upcoming claims deadline.

7. Although some of the individual components differ from the previous notice programs, Settlement Class Members will be exposed to the updated information about the litigation through the most effective media channels.

8. The July 2019 Notice Program is described in detail in the plan for the program, attached as **Exhibit A** to this Declaration.

9. I have been involved in drafting the various forms of Notice described below. Each form is noticeable, clear, concise, and written in plain, easily understood language.

10. As detailed below, in my opinion, the July 2019 Notice Program represents the best notice practicable under the circumstances and satisfies due process requirements.

11. The dates in the July 2019 Notice Program are based on the assumption that the Court approves the Motion to Disseminate Notice by August 9, 2019. If there is a delay in that approval, then that delay may require pushing back the dates.

### PHASE 1: DUE PROCESS COMPONENTS

*Individual Notice*

12. The Settlement Administrator, Epiq (formerly Garden City Group, LLC),[1] will send

---

[1] Garden City Group was acquired by Epiq on June 15, 2018 and is now continuing operations as part of Epiq. All references herein to either Epiq or Garden City Group are used interchangeably to refer to the integrated Epiq organization.

3

an email or mailed notice to those individuals who previously registered on the website, www.AutoPartsClass.com, or who filed a claim. Potential Settlement Class Members who provided a valid email address will receive an email alert that notifies them about the Round 4 Settlements and directs them to visit the website to read information about the Settlements and file a claim (if they haven't already). Epiq will mail a postcard to Potential Settlement Class Members who provided only a mailing address.

13. Additionally, contact lists, including emails for potential Settlement Class Members and mailing addresses for fleet companies, can be purchased from a third-party list company.

### *Paid Media*

14. Similar to the process described in the Initial Notice Program Declaration, Kinsella used syndicated data available from GfK MediaMark Research, Inc.'s ("GfK MRI") *2018 Doublebase Study*[2] to select a target audience with demographics that encompass the characteristics of Settlement Class Members and design the paid media segment of the July 2019 Notice Program.

15. When considering which media to use for this case, Kinsella evaluated the latest media survey to determine the media consumption habits of the following target audience: Adults

---

[2] GfK MRI is a nationally-accredited media and marketing research firm that provides syndicated data on audience size, composition, and other relevant factors pertaining to major media, including broadcast, magazines, newspapers, and outdoor advertising. It provides a single-source measurement of major media, products, services, and in-depth consumer demographic and lifestyle/psychographic characteristics. GfK MRI produces the annual *Doublebase Study*, a study of over 50,000 adults consisting of two full years of data. The sample consists of 25,000 respondents. Fieldwork is done in two waves per year, each lasting six months and consisting of 13,000 interviews. At the end of the interview, the fieldworker presents a self-administered questionnaire that measures approximately 600 product/service categories, 6,500 brands, and various lifestyle activities.

4

18 years of age and older who currently own or lease a new vehicle ("New Vehicle Owners/Lessees"). Kinsella also reviewed historical media survey data for New Vehicle Owners/Lessees over the entire class period and found that the demographics of this target audience have not changed significantly during this time.

16. Using New Vehicle Owners/Lessees for media selection and measurement purposes is appropriate for this case because it is the closest measurable target to the Settlement Classes (individuals who bought or leased a new vehicle or paid to replace a qualifying part in their vehicle from 1990 to 2019).

17. The Settlement Classes are made up of individual purchasers/lessees as well as fleet purchasers of new vehicles. In general, qualifying vehicles include new four-wheeled passenger automobiles, vans, sports utility vehicles, crossovers, and pickup trucks. As discussed previously, New Vehicle Owners/Lessees are measured in GfK MRI; however, fleet owners and replacement part purchasers are not measured in the survey data. In my opinion, the target audience of New Vehicle Owners/Lessees is still appropriate for all Settlement Class Members because it is highly likely that fleet owners and replacement part purchasers (or their households) personally purchased or leased a new vehicle during the relevant class periods.

18. To effectively reach the Settlement Classes, the broad-based July 2019 Notice Program utilizes the media that is commonly consumed by New Vehicle Owners/Lessees — magazines and the Internet — to meet due process standards and provide the best notice practicable under the circumstances.

19. The Publication Notice will appear in the following consumer magazines:

    a. Two half-page ads in *People* – estimated circulation of 3,400,000.

    b. A half-page ad in *Sports Illustrated* – estimated circulation of 2,700,000.

   c. A half-page ad in *Time* – estimated circulation of 2,000,000.

 20. The July 2019 Notice Program includes Internet advertising to provide Settlement Class Members with additional notice opportunities beyond the print placements. Internet advertising delivers an immediate message and allows the viewer of an advertisement to instantly click through to the website for further information.

 21. Banner advertisements will appear on the following online networks:

   a. *Conversant* – an online advertising company and comScore top 20 ad Network.

   b. *Facebook* – a free, global social networking website that helps people communicate with friends, family, and coworkers.

   c. *Instagram* – a free, global social networking website that enables users to take, edit, and share photos and videos with other users.

   d. *RhythmOne* – an ad network providing programmatic, enterprise, and mobile platform solutions.

   e. *Verizon Media Group* – (previously named Oath Inc.) a Verizon subsidiary that serves as the umbrella company of its digital platforms. It contains AOL, Yahoo!, and other media brands (such as HuffPost, TechCrunch, Engadget, and many others).

### *Effectiveness of July 2019 Notice Program*

 22. The *reach*[3] and *frequency*[4] of the July 2019 Notice Program was measured against the target audience to evaluate the strength and efficiency of the paid media (magazine and Internet

---

[3] *Reach* is the estimated percentage of a target audience that is exposed one or more times through a specific media outlet or combination of media outlets within a given period.
[4] *Frequency* is the estimated average number of opportunities an audience member has to see the notice.

advertising). The July 2019 Notice Program will reach an estimated 70.1% of New Vehicle Owners/Lessees with an average frequency of 2.3 times.[5] In my opinion, the July 2019 Notice Program adequately reaches New Vehicle Owners/Lessees.[6]

## PHASE 2: CLAIMS REMINDER COMPONENTS

23. In addition to the due process components required by Federal Rule of Civil Procedure 23(c)(2) ("Rule 23"), the Notice Program will include extensive media and individual mail to encourage Class Members to file claims. Kinsella has used these claims reminders in other class action cases to increase Class Member participation, including: *In re Volkswagen "Clean Diesel" Marketing, Sales Practs., and Prods. Liability Litig.*, MDL No. 2672 (N.D. Cal.); *Jabbari v. Wells Fargo*, No. 15-CV-02159 (N.D. Cal.); *Trammell v. Barbara's Bakery, Inc.*, No. 12-CV-02664 (N.D. Cal.); *In re Dynamic Random Memory (DRAM) Antitrust Litig.* MDL No. 1486 (N.D. Cal.); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.); *In re Sony Gaming Networks & Customer Data Security Breach Litig.*, MDL No. 2258 (S.D. Cal.); *Anderson v. Trans Union, LLC*, No. 16-CV-00558 (E.D. Va.) and *Clark v. Trans Union, LLC*, No. 15-CV-00391 (E.D. Va.); *In re LIBOR-Based Financial Instruments Antitrust Litig.* (Barclays Bank, Citibank, Deutsche Bank and HSBC settlements), MDL No. 2262 (S.D.N.Y.); and *Precision Associates, Inc. v. Panalpina World Transport*, No. 08-CV-00042 (E.D. N.Y.).

---

[5] The claims reminder components are not measured for this target audience, and their contribution to the overall reach of the media is not calculated.

[6] The Federal Judicial Center Notice Checklist states,"[a] high percentage (e.g., between 70–95%) can often reasonably be reached by a notice campaign." *Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, available at www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0 (last visited July 24, 2019).

24. The message will be simple and focus on the upcoming claims deadline. Individual notice methods will focus on Settlement Class Members who have not yet filed a claim as set forth below.

### *Individual Notice*

25. At least a month before the claims deadline, Epiq will email or mail a Reminder Notice to individuals who previously registered on the website who have not already filed a claim, potential Settlement Class Members, and fleet companies.

26. Epiq will also email individuals who have already filed a claim to ask them to share information about the Settlements and upcoming claims deadline with their friends and family.

### *Paid Media*

27. A multi-layered media program will be used that includes television and targeted Internet. This paid media program will be significantly more extensive than that associated with the prior Notice Programs.

28. A 30-second television ad will run on local and cable TV. Local TV will reach media markets in the 30 affected states and D.C. Television ads will run for approximately four to five weeks.

29. Targeted Internet advertising also will be used to reach potential Settlement Class Members on the Internet across different ad networks and publisher websites and through Facebook, Instagram, and LinkedIn. Banner ads will be targeted to reach specific car owners; individuals interested in automotive topics, car parts, or repair; individuals who purchased automotive products and aftermarket accessories; and individuals who clicked on banner ads for the prior notice programs or previously visited the litigation website.

30. A third-party ad management platform will be used to audit the digital components. This platform will combat ad fraud, viewability issues, and brand safety. By tackling ad fraud, Kinsella will have the opportunity to ensure that ads are not served in environments with fake news, sex, drugs, and violence while reducing the investment wasted on fraudulent traffic (ads being seen by 'bots' or non-humans, ads not viewable, etc.).

### PHASE 1 & 2: EARNED MEDIA

31. An earned media program also will be implemented to amplify the paid media and provide additional notice to Settlement Class Members. This earned media program will be significantly more extensive than that associated with the prior Notice Programs. The earned media program will run during both phases and will include:

    a. A multichannel news release ("MNR") will be distributed on PR Newswire's US1 National Circuit, reaching approximately 5,000 media outlets and 5,400 websites. The MNR will blend text, audio, video, photos, related documents, and social media to make the story more appealing.

    b. Media outreach to targeted media outlets to solicit their interest in the story and generate free media coverage. Attorneys for the class will be available to talk with media outlets that are interested in writing a story about the settlements and the claims submission deadline.

    c. A Satellite Media Tour where television and radio interviews with Class Counsel would be aired to an audience of over six million across the United States.

    d. Kinsella will implement sponsored keywords and phrases with all major search engines, including: Google AdWords, Bing (Microsoft Advertising), and their

9

search partners. When a user searches for one of the specified search terms or phrases, sponsored links will appear on the results page.

## OTHER

32. The Settlement Administrator will update the website, www.AutoPartsClass.com, to enable Settlement Class Members to get current information on the Settlements, including the July 2019 Long-Form Notice and the Round 4 Settlement Agreements.

33. The Settlement Administrator will update the recording associated with the toll-free phone number that allows Settlement Class Members to call and request that a Long-Form Notice be mailed to them or listen to answers to frequently asked questions.

34. The Settlement Administrator will maintain the post office box that allows Settlement Class Members to contact Co-Lead Class Counsel by mail with any specific requests or questions.

## COST OF NOTICE PROGRAM

35. The July 2019 Round 4 Notice Program[7] is estimated to cost $3.31 million. In comparison, the March 2018 Round 3 Notice Program cost was $1,851,980. Now that the claims deadline has been set, the additional expenditure is being spent on the claims reminder components.

## NOTICE FORM AND CONTENT

36. Attached to this Declaration are **Exhibit B**, the proposed Long-Form Notice, and **Exhibit C**, the proposed Short-Form Notice (or Publication Notice), as well as **Exhibit D**, the proposed Claim Form.

---

[7] This amount includes the cost of media and individual notice.

37.     The primary distinction between the July 2019 Notices and the prior Notices is that they will include a claim submission deadline and a $100 minimum claim amount per claimant that is subject to pro ration and based on the number of valid claims that are ultimately filed. The revised Plan of Allocation will apply to all prior settlements. In consultation with Class Counsel, Kinsella recommends this approach and believes that the minimum claim amount will boost claims activity, as previous experience has suggested that many potential claimants are reluctant to proceed with the claims process because they believe they will not obtain a meaningful recovery.

38.     The Notices effectively communicate information about the Settlements.

39.     Rule 23(c)(2) requires class action notices to be written in "plain, easily understood language." Kinsella applies the plain language requirement in drafting notices in federal and state class actions. The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Settlement Class Members.

40.     The Short-Form Notice (or Publication Notice) is designed to capture Settlement Class Members' attention with clear, concise, plain language. It directs readers to the website or toll-free number for more information. The plain language text provides important information regarding the subject of the litigation, additional Settlements, the Settlement Class definitions, and the legal rights available to Settlement Class Members. No important or required information is missing or omitted. In fact, this Notice states all required information without omitting significant facts that Settlement Class Members need to understand their rights.

41.     The Long-Form Notice will be available at the website, by calling the toll-free number, or by mailing or emailing a request to the Settlement Administrator. The Long-Form Notice provides substantial information, including background on the issues in the case and all

specific instructions Settlement Class Members need to follow to properly exercise their rights. It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.

## CONCLUSION

42.　　In my opinion, the July 2019 Notice Program will satisfy due process. In addition, the program includes enhanced communication methods, beyond the requirements of Rule 23, to reach Class Members and encourage them to file claims.

43.　　It is my opinion that the reach of the target audience, number of exposure opportunities to the notice information, and content of the Notices are adequate and reasonable under the circumstances. It is consistent with the standards employed by Kinsella in notification programs designed to reach class members. The July 2019 Notice Program, as designed, is fully compliant with Rule 23.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C. this 29th day of July 2019.

_____
Shannon R. Wheatman, Ph.D.