# EXHIBIT 4

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : <br> : <br> : | No. 12-md-02311 <br> Hon. Marianne O. Battani |

| | | |
|---|---|---|
| In Re: Wire Harness | : | Case No. 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : | Case No. 2:12-cv-00203 |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00403 |
| In Re: Bearings | : | Case No. 2:12-cv-00503 |
| In Re: Anti-Vibrational Rubber Parts | : | Case No. 2:13-cv-00803 |
| In Re: Windshield Wipers | : | Case No. 2:13-cv-00903 |
| In Re: Radiators | : | Case No. 2:13-cv-01003 |
| In Re: Starters | : | Case No. 2:13-cv-01103 |
| In Re: Automotive Lamps | : | Case No. 2:13-cv-01203 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01403 |
| In Re: HID Ballasts | : | Case No. 2:13-cv-01703 |
| In Re: Electronic Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In Re: Fan Motors | : | Case No. 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In Re: Power Window Motors | : | Case No. 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | Case No. 2:13-cv-02403 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | Case No. 2:13-cv-02803 |
| In Re: Constant Velocity Joint Boot Products | : | Case No. 2:14-cv-02903 |
| In Re: Spark Plugs | : | Case No. 2:15-cv-03003 |
| In Re: Shock Absorbers | : | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | : | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | : | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | : | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | : | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-03803 |
| In Re: Automotive Steel Tubes | : | Case No. 2:16-cv-04003 |
| In Re: Access Mechanisms | : | Case No. 2:16-cv-04103 |
| In Re: Door Latches | : | Case No. 2:17-cv-11637 |

| | | |
|---|---|---|
| THIS DOCUMENT RELATES TO: <br> End-Payor Actions | : <br> : | |

# END-PAYOR PLAINTIFFS' MOTION FOR ORDERS GRANTING FINAL APPROVAL OF THE ROUND 3 SETTLEMENTS AND APPROVING THE PLAN OF ALLOCATION IN CONNECTION WITH THE ROUND 3 SETTLEMENTS

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, End-Payor Plaintiffs ("EPPs") respectfully move the Court for Orders: (1) finally approving the settlements between EPPs and thirty-three additional settling defendants ("Round 3 Settlements"); (2) granting final certification, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), of the settlement classes included in the Round 3 Settlements, which were previously provisionally certified by the Court for settlement purposes only; (3) confirming the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 3 Settlement Classes; and (4) approving the identical Plan of Allocation in connection with the Round 3 Settlements that was previously approved by the Court in connection with the first two rounds of settlements. *See Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473; *Wire Harnesses*, 2:13-cv-00103, ECF No. 577.

Dated: June 14, 2018

Respectfully submitted,

*/s/ Hollis Salzman*
Hollis Salzman
Bernard Persky
William V. Reiss
Noelle Feigenbaum
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
bpersky@robinskaplan.com
wreiss@robinskaplan.com
nfeigenbaum@robinskaplan.com

*/s/ Adam Zapala*
Adam J. Zapala
Elizabeth Castillo
**COTCHETT, PITRE & McCARTHY, LLP**

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com


*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Steven M. Shepard
Lucas Issacharoff
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, Floor 32
New York, New York 10019
Telephone: (212) 729-2010
sshepard@susmangodfrey.com

3

lissacharoff@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : <br> : <br> : | No. 12-md-02311 <br> Hon. Marianne O. Battani |

| | | |
|---|---|---|
| In Re: Wire Harness Systems | : | Case No. 2:12-cv-00103 |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00403 |
| In Re: Automotive Bearings | : | Case No. 2:12-cv-00503 |
| In Re: Anti-Vibrational Rubber Parts | : | Case No. 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | : | Case No. 2:13-cv-00903 |
| In Re: Radiators | : | Case No. 2:13-cv-01003 |
| In Re: Starters | : | Case No. 2:13-cv-01103 |
| In Re: Automotive Lamps | : | Case No. 2:13-cv-01203 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01403 |
| In Re: HID Ballasts | : | Case No. 2:13-cv-01703 |
| In Re: Electric Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In Re: Fan Motors | : | Case No. 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In Re: Power Window Motors | : | Case No. 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | Case No. 2:13-cv-02403 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | Case No. 2:13-cv-02803 |
| In Re: Automotive Constant Velocity <br>      Joint Boot Products | : <br> : | Case No. 2:14-cv-02903 |
| In Re: Spark Plugs | : | Case No. 2:15-cv-03003 |
| In Re: Shock Absorbers | : | Case No. 2:15-cv-03303 |
| In Re: Body Sealings | : | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | : | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | : | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | : | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-03803 |
| In Re: Automotive Steel Tubes | : | Case No. 2:16-cv-04003 |
| In Re: Access Mechanisms | : | Case No. 2:16-cv-04103 |
| In Re: Side Door Latches | : | Case No. 2:16-cv-04303 |
| | : | |

| | | |
|---|---|---|
| THIS DOCUMENT RELATES TO: <br> End-Payor Actions | : <br> : | |

**END-PAYOR PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ORDERS GRANTING FINAL APPROVAL OF THE ROUND 3 SETTLEMENTS AND APPROVING THE PLAN OF ALLOCATION IN CONNECTION WITH THE ROUND 3 SETTLEMENTS**

Case 2:13-md-02311-SFC-RSW ECF No. 2037-41 PageID.37108 Filed 04/19/19 Page 7 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 293-41 PageID.7187 Filed 08/14/18 Page 8 of 45

**Statement of Issues**

1. Whether the settlements between End-Payor Plaintiffs ("EPPs") and thirty-three additional settling defendants ("Round 3 Settlements") are fair, reasonable, and adequate, and should be granted final approval under Federal Rule of Civil Procedure 23?

   Yes.

2. Whether the Court should grant final certification of the settlement classes provided for by the Round 3 Settlements, which it previously conditionally certified?

   Yes.

3. Whether the Court should confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 3 Settlement Classes?

   Yes.

4. Whether the Court should approve EPPs' Plan of Allocation in connection with the Round 3 Settlements where the Court previously approved the identical Plan of Allocation in connection with the first two rounds of settlements, *see* Order Granting End-Payor Plaintiffs' Amended Motion for Approval of Plan of Allocation of Settlement Proceeds, *Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473; Order Granting End-Payor Plaintiffs' Plan of Allocation of the Settlements, 2:13-cv-00103, ECF No. 577?

   Yes.

### Controlling or Most Appropriate Authorities

- *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

- *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

- *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

- *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

- *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

# **TABLE OF CONTENTS**

Case 2:12-md-02311-SFC-RSW ECF No. 2027-11, PageID.37114 Filed 11/19/19 Page 10 of 108
Case 2:15-cv-03005-MOB-MKM ECF No. 93-11 filed 00/14/18 PageID.4071 Page 996 46 of
108

**TABLE OF AUTHORITIES**

**Introduction**

Interim Co-Lead Counsel ("Class Counsel") for the End-Payor Plaintiffs ("EPPs") respectfully seek final approval of the settlements between EPPs and thirty-three additional settling defendants ("Round 3 Settlements") in the above-captioned actions ("Actions").

The Round 3 Settlements collectively provide $432,823,040 in cash for the benefit of the settlement classes included in the Round 3 Settlements ("Round 3 Settlement Classes") and require all 33 additional settling defendant families ("Round 3 Settling Defendants") to provide significant cooperation to the EPPs in the continued prosecution of EPPs' claims against the non-settling defendants in this litigation (the "Non-Settling Defendants"). The Round 3 Settlements also provide that, with five exceptions, each of the Round 3 Settling Defendants will for a period of two years refrain from engaging in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue in the Actions.

The Round 3 Settlements are the product of Class Counsel's ongoing and very successful efforts to resolve their claims against the Defendants in *In re Automotive Parts Antitrust Litigation*, MDL No. 12-md-2311 ("*Auto Parts Litigation*"). This Court previously granted EPPs' Motion for Final Approval of Settlements with Certain Defendants ("Round 1 Settlements"), *see, e.g.*, Amended Opinion and Order Granting Final Approval of Class Action Settlement, *Wire Harness*, 12-cv-00103, ECF No. 512 ("Round 1 Final Approval Order"), and EPPs' Motion for Orders Granting Final Approval of the Round 2 Settlements and Approving the Plan of Allocation in Connection with the Round 2 Settlements ("Round 2 Settlements"), *see, e.g.*, Order Granting Final Approval to the Round 2 Settlements, *Wire Harness*, 12-cv-00103, ECF No. 576 ("Round 2 Final Approval Order").

The Round 1 Settlements made available $224,668,350 in cash for the benefit of the settlement classes included in the Round 1 Settlements ("Round 1 Settlement Classes"). They also required the 11 Defendants that were parties to those settlements ("Round 1 Settling Defendants") to provide cooperation relevant to EPPs' ongoing claims against the remaining Defendants in those Actions. In granting final approval of the Round 1 Settlements, the Court concluded that: (1) the Round 1 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 1 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 1 Final Approval Order at 15-26; 26-27.

The Round 2 Settlements made available $379,401,268 in cash for the benefit of the settlement classes included in the Round 2 Settlements ("Round 2 Settlement Classes"). They also required the Defendants that were parties to those settlements ("Round 2 Settling Defendants") to provide cooperation relevant to EPPs' ongoing prosecution of their claims against the remaining Defendants in those Actions. In granting final approval of the Round 2 Settlements, the Court concluded that: (1) the Round 2 Settlements were fair, reasonable, and adequate and provided significant benefits to the Round 2 Settlement Classes; and (2) the requirements of Rule 23 were met for settlement purposes. *See, e.g.*, Round 2 Final Approval Order at 8-23; 23-26.

As set forth below, the Round 3 Settlements likewise provide an excellent result for the Round 3 Settlement Classes, especially in light of the substantial risks of this massive and exceptionally complex litigation. In negotiating the Round 3 Settlements, Settlement Class Counsel[1] took into account the amounts of the respective Round 3 Settlements, available

---

[1] In granting preliminary approval of each of the Round 3 Settlements, the Court preliminarily appointed Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel. *See, e.g.*, Order Granting End-Payor Plaintiffs' Motion for

evidence supporting EPPs' claims, the relevant dollar volume of the commerce underlying the particular Round 3 Settling Defendant's conduct, the defenses that the Round 3 Settling Defendants raised or were expected to raise, and the substantial value provided by the Round 3 Settling Defendants' agreements to cooperate with EPPs in the continued prosecution of their claims against other defendants that had not yet settled. Class Counsel therefore respectfully submit that the proposed Round 3 Settlements are fair, reasonable, and adequate, and should be granted final approval.

Notice of the Round 3 Settlements was provided through the notice plan approved by the Court ("March 2018 Notice Program"). *See* Declaration of Shannon R. Wheatman, Ph.D. on Implementation of the March 2018 Notice Program ("Wheatman Decl."), ¶¶ 6-23 & Ex. 2 (confirming that publication notice was given to potential class members in the manner approved by the Court); Declaration of Brian A. Pinkerton Regarding March 2018 Notice Dissemination and Settlement Administration ("Pinkerton Decl.") ¶¶ 17-24 & Exs. A, B (confirming notice was mailed and/or emailed to potential class members previously registered). The response from members of the Round 3 Settlement Classes has been positive. As of June 14, 2018, there have been no objections to, or requests for exclusion from, the Round 3 Settlements. *See* Pinkerton Decl. ¶¶ 26-27. As set forth in the March 2018 Notice Program, Round 3 Settlement Class Members have until July 13, 2018 to object to or request exclusion from the Round 3 Settlement Classes. *See, e.g.*, *Wire Harness*, 12-cv-00103, ECF No. 600.

To effectuate the Round 3 Settlements, it is also respectfully submitted that the Court grant final certification to the Round 3 Settlement Classes, which it has already provisionally certified for settlement purposes. The Round 3 Settlement Classes meet all of the requirements

Preliminary Approval of Proposed Settlement with Chiyoda Defendants and Provisional Certification of Settlement Class at ¶ 7, *Wire Harness*, 2:12-cv-00103, ECF No. 567.

for certification as settlement classes and should be granted final certification. The Court should also confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 3 Settlement Classes.

Finally, Co-Lead Class Counsel respectfully request that the Court approve the Plan of Allocation for the Round 3 Settlements. This Plan of Allocation is virtually identical to EPPs' Plan of Allocation for the Round 1 Settlements, which the Court previously approved. ("Plan of Allocation Order") (*see Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473), and for the Round 2 Settlements, which the Court also approved (*see, e.g.*, Order Granting End-Payor Plaintiffs' Plan of Allocation of the Settlements, 2:13-cv-00103, ECF No. 577). EPPs respectfully request that, upon granting final approval of the Round 3 Settlements, the Court also enter Orders approving EPPs' Plan of Allocation in connection with each of the Round 3 Settlements.

## Background

## I.      The Round 3 Settlements Provide Substantial Benefits to EPPs

### A.      Cash Components of the Round 3 Settlements

The Round 3 Settlements include thirty-three defendant groups. The Round 3 Settling Defendants are: (1) Aisan Industry Co., Ltd., Franklin Precision Industry, Inc., Aisan Corporation of America, and Hyundam Industrial Co., Ltd. (collectively, "Aisan"); (2) ALPHA Corporation and Alpha Technology Corporation (collectively, "ALPHA"); (3) Alps Electric Co., Ltd., Alps Electric (North America), Inc., and Alps Automotive Inc. (collectively, "Alps"); (4) Robert Bosch GmbH and Robert Bosch LLC (collectively, "Bosch"); (5) Bridgestone Corporation and Bridgestone APM Company (collectively, "Bridgestone"); (6) Calsonic Kansei Corporation and Calsonic Kansei North America, Inc.

(collectively, "Calsonic"); (7) Chiyoda Manufacturing Corporation and Chiyoda USA Corporation (collectively, "Chiyoda"); (8) Continental Automotive Electronics LLC, Continental Automotive Korea Ltd, and Continental Automotive Systems, Inc. (collectively, "Continental"); (9) Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corporation (collectively, "Diamond Electric"); (10) Eberspächer Exhaust Technology GmbH & Co. KG and Eberspächer North America Inc. (collectively, "Eberspächer"); (11) Faurecia Abgastechnik GmbH, Faurecia Systèmes d'Échappement, Faurecia Emissions Control Technologies, USA, LLC, and Faurecia Emissions Control Systems, N.A. LLC f/k/a Faurecia Exhaust Systems, Inc. (collectively, "Faurecia"); (12) Hitachi Automotive Systems, Ltd. ("HIAMS"); (13) Hitachi Metals, Ltd., Hitachi Cable America Inc., and Hitachi Metals America, Ltd. (collectively, "Hitachi Metals"); (14) INOAC Corporation, INOAC Group North America, LLC, and INOAC USA Inc. (collectively, "INOAC"); (15) JTEKT Corporation, JTEKT Automotive North America, Inc., and JTEKT North America Corp. (formerly d/b/a Koyo Corporation of U.S.A.) (collectively, "JTEKT"); (16) Kiekert AG and Kiekert U.S.A., Inc. (collectively, "Kiekert"); (17) Koito Manufacturing Co., Ltd. and North American Lighting, Inc. (collectively, "KOITO"); (18) MAHLE Behr GmbH & Co. KG and MAHLE Behr USA Inc. (collectively, "MAHLE Behr"); (19) MITSUBA Corporation and American Mitsuba Corporation (collectively, "MITSUBA"); (20) Nachi-Fujikoshi Corp. and Nachi America Inc. (collectively, "Nachi"); (21) NGK Insulators, Ltd. and NGK Automotive Ceramics USA, Inc. (collectively, "NGK Insulators"); (22) NGK Spark Plug Co., Ltd. and NGK Spark Plugs (U.S.A.), Inc. (collectively, "NGK Spark Plugs"); (23) Nishikawa Rubber Company, Ltd. ("Nishikawa"); (24) NTN Corporation and NTN USA Corporation (collectively, "NTN"); (25) Sanden Automotive Components Corporation, Sanden

5

Automotive Climate Systems Corporation, and Sanden International (U.S.A.) Inc. (collectively, "Sanden"); (26) SKF USA Inc. ("SKF"); (26) Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc. (collectively, "Stanley"); (28) Tenneco Inc., Tenneco GmbH, and Tenneco Automotive Operating Co., Inc. (collectively, "Tenneco"); (29) Toyo Tire & Rubber Co. Ltd., Toyo Tire North America OE Sales LLC, and Toyo Automotive Parts (USA), Inc. (collectively, "Toyo"); (30) Usui Kokusai Sangyo Kaisha, Ltd and Usui International Corporation (collectively, "Usui"); (31) Valeo S.A. ("Valeo"); (32) Yamada Manufacturing Co. Ltd. and Yamada North America, Inc. (collectively, "Yamada"); and (33) Yamashita Rubber Co., Ltd. and YUSA Corporation (collectively, "Yamashita").

The Round 3 Settlements involve 19 automotive parts cases that EPPs contend were the subject of illegal bid rigging and price-fixing ("Settled Parts"). The Round 3 Settling Defendants, relevant case(s), and amounts of the Round 3 Settlements are set forth in the following chart:

| Auto Parts Round 3 Settlements and Settlement Funds | | |
| --- | --- | --- |
| Round 3 Settling Defendant | Automotive Parts Case | Settlement Fund |
| Aisan | Fuel Injection Systems | $4,560,000.00 |
| ALPHA | Access Mechanisms | $2,698,000.00 |
| Alps | Heater Control Panels | $3,230,000.00 |
| Bosch | Fuel Injection Systems | $2,892,560.00 |
| | Spark Plugs | $28,999,168.00 |
| | Starters | $1,039,984.00 |
| | Windshield Wiper Systems | $508,288.00 |
| Bridgestone | Anti-Vibrational Rubber Parts | $29,640,000.00 |
| Calsonic | Air Conditioning Systems | $5,153,860.65 |
| | Automatic Transmission Fluid Warmers | $380,366.93 |
| | Radiators | $5,587,612.42 |
| Chiyoda | Wire Harness | $1,915,200.00 |
| Continental | Instrument Panel Clusters | $3,800,000.00 |
| Diamond Electric | Ignition Coils | $5,396,000.00 |
| Eberspächer | Exhaust Systems | $1,368,000.00 |
| Faurecia | Exhaust Systems | $1,482,000.00 |

| Auto Parts Round 3 Settlements and Settlement Funds | | |
|---|---|---|
| **Round 3 Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** |
| HIAMS | Shock Absorbers | $13,300,000.00 |
| Hitachi Metals | Automotive Brake Hoses | $1,140,000.00 |
| INOAC | Interior Trim Products | $2,470,000.00 |
| JTEKT | Automotive Bearings | $43,418,819.00 |
| | Electric Powered Steering Assemblies | $4,081,181.00 |
| Kiekert | Side Door Latches | $2,280,000.00 |
| Koito | Automotive Lamps | $21,654,653.10 |
| | HID Ballasts | $1,335,346.90 |
| MAHLE Behr | Air Conditioning Systems | $1,482,000.00 |
| MITSUBA | Automotive Lamps | $241,876.05 |
| | Electric Powered Steering Assemblies | $169,313.23 |
| | Fan Motors | $3,664,422.11 |
| | Fuel Injection Systems | $1,378,693.47 |
| | Power Window Motors | $19,180,770.52 |
| | Radiators | $3,664,422.11 |
| | Starters | $9,457,353.43 |
| | Windshield Washer Systems | $1,548,006.70 |
| | Windshield Wiper Systems | $32,895,142.38 |
| Nachi | Automotive Bearings | $3,230,000.00 |
| NGK Insulators | Ceramic Substrates | $12,160,000.00 |
| NGK Spark Plugs | Spark Plugs | $12,730,000.00 |
| Nishikawa | Body Sealings | $37,620,000.00 |
| NTN | Automotive Bearings | $6,574,000.00 |
| Sanden | Air Conditioning Systems | $7,600,000.00 |
| SKF | Automotive Bearings | $7,600,000.00 |
| Stanley | Automotive Lamps | $12,316,880.00 |
| | HID Ballasts | $2,883,120.00 |
| Tenneco | Exhaust Systems | $17,480,000.00 |
| Toyo | Anti-Vibrational Rubber Parts | $34,343,309.00 |
| | Automotive Constant-Velocity-Joint Boot Products | $1,756,691.00 |
| Usui | Automotive Steel Tubes | $5,320,000.00 |
| Valeo | Access Mechanisms | $760,000.00 |
| Yamada | Electric Powered Steering Assemblies | $2,356,000.00 |
| Yamashita | Anti-Vibrational Rubber Parts | $6,080,000.00 |
| | **Total** | **$432,823,040.00** |

The Round 3 Settlement Classes are made up of 51 separate settlement classes. As part of

each settlement negotiation, EPPs considered the available evidence regarding the Round 3

7

Settling Defendant's conduct as to each relevant class, the estimated dollar amount of commerce affected by that conduct, and the value of the other settlement terms (such as the value of the cooperation offered by the Round 3 Settling Defendant). *See* Joint Declaration of Hollis Salzman, Adam J. Zapala, and Marc M. Seltzer in Support of End-Payor Plaintiffs' Motion for Orders Granting Final Approval of the Round 3 Settlements and Approving the Plan of Allocation in Connection With the Round 3 Settlements ("Joint Decl.") ¶ 15, submitted herewith. In the opinion of Settlement Class Counsel, the Round 3 Settlements are an excellent result for the Round 3 Settlement Classes and are fair, reasonable, and adequate. *Id.* ¶ 16.

Given the complexity of the Actions and the barriers to final relief, the Round 3 Settlements provide substantial relief relative to the affected commerce. Class Counsel were able to access the affected volume of commerce attributable to each defendant for those who pleaded guilty to a DOJ Indictment (which volume was subsumed within, but was not necessarily coterminous with, the volume identified by Class Counsel), as well as the fine calculated from that commerce based upon the United States Sentencing Guidelines. Co-Lead Class Counsel also obtained sales information from Defendants and third parties; academic studies regarding cartel overcharges and typical recovery, *see, e.g.*, John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less than Single Damages*, 100 Iowa L. Rev. 1997, 2010 (2015) (analyzing successful antitrust recoveries and finding a weighted average recovery for all plaintiffs (not just, as here, EPPs) of 37% of estimated overcharges); John M. Connor, *Cartel Overcharges*, in 26 The Law and Economics of Class Actions 249, 290 (James Langenfeld ed., 2014) (estimating a median average of overcharges of 20.2% of international cartels from 2000-2013, approximately the period at issue in these cases); and expert analysis of likely damages, *cf.* Declaration of Janet S. Netz, Ph.D., in Support of

Case 2:12-md-02311-SFC-RSW ECF No. 2027-41 PageID.37120 Filed 11/19/19 Page 19 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 93 filed 09/14/18 PageID.4031 Page 19 of 45

Automobile Dealership and End-Payor Plaintiffs' Opposition to KYB Defendants' Motion for
Summary Judgment on the Pass-Through Issue, *Shock Absorbers*, No. 15-cv-03303, ECF No.
59-2. *See* Joint Decl. ¶ 16. Based on this information, Class Counsel believe that the settlements
represent a very substantial proportion of the overcharges suffered by EPPs.

###### B.  Cooperation and Other Terms of the Round 3 Settlements

In addition to very substantial cash payments (totaling $432,823,040), the Round 3
Settling Defendants are required to provide (and have already begun to provide) EPPs with
various forms of valuable cooperation.[2] Those terms were described in EPPs' preliminary
approval motions and are set forth at length in the written settlement agreements.[3] In general, the
Round 3 Settling Defendants agreed to provide the following cooperation: (1) producing
documents and other information relevant to EPPs' ongoing claims against the Non-Settling
Defendants; (2) providing attorneys' proffers; (3) making witnesses available for interviews,
depositions, and trial; (4) providing assistance in understanding information provided to EPPs;
and (5) facilitating the use of information at trial. With five exceptions, the Round 3 Settling
Defendants also agreed not to engage in certain specified conduct for a period of two years that
would violate the antitrust laws involving the Settled Parts. *See, e.g.*, Settlement Agreement with
Chiyoda at ¶ 50, *Wire Harness*, 2:12-cv-00103, ECF. No. 553-1.[4] This cooperation has proven

---

[2] For those Settling Defendants who were the last Defendant to settle in their given parts case,
the settlement agreement in some cases only requires cooperation to the extent that one or more
settlements does not receive final approval.

[3] All relevant documents are publicly available on the Settlement website at
www.autopartsclass.com.

[4] EPPs' settlements with Eberspächer, Hitachi Metals, MAHLE Behr, NGK Spark Plugs, and
NTN do not provide for injunctive relief. EPPs settlement agreements with these defendants,
however, expressly provide that the release does not apply to, *inter alia*, claims the state or local
laws of any jurisdiction other than an Indirect Purchaser State. *See, e.g.*, Eberspächer Settlement
Agreement ¶ 24.

extremely valuable to counsel for EPPs in pursuing claims against other defendants. *See* Joint Decl. ¶ 18.

In exchange for the cash payments, cooperation, and equitable relief described above, EPPs have agreed to release their claims against the Round 3 Settling Defendants and their affiliates (together, the "Releasees," who are further defined in the settlement agreements). However, the Round 3 Settlements will not affect the Non-Settling Defendants' joint and several liability for the Round 3 Settling Defendants' alleged wrongdoing. That is, each of the Round 3 Settling Defendants' sales remain in their respective cases, and, where otherwise applicable, the Non-Settling Defendants remain jointly and severally liable for the damages applicable to those sales after trebling, less only the amounts paid in settlement. *See, e.g.*, Settlement Agreement with Chiyoda at ¶ 48, *Wire Harness*, 2:12-cv-00103, ECF. No. 553-1 ("All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than Chiyoda and the other Releasees, for sales made by Chiyoda and Chiyoda's alleged illegal conduct are specifically reserved by End-Payor Plaintiffs and Settlement Class Members. Chiyoda's sales to the Settlement Class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Chiyoda and the other Releasees."). Thus, the Round 3 Settlements will not limit EPPs' right to recover the full amount of their damages from the Non-Settling Defendants, against whom EPPs continue to prosecute their claims.

The Round 3 Settlements are the product of lengthy arm's-length negotiations between counsel who are experienced in prosecuting and defending complex antitrust class action cases.

Joint Decl. ¶ 12. The Round 3 Settlements were all negotiated over an extended period of time by Settlement Class Counsel and counsel for the Round 3 Settling Defendants, through multiple in-person and telephonic meetings and correspondence. *Id*. A number of these negotiations were assisted by experienced mediators. *Id*. In preparation for these negotiations, Settlement Class Counsel undertook a diligent and thorough investigation of the legal and factual issues presented by this litigation. *Id*. ¶¶ 15-16. Thus, Settlement Class Counsel were well informed as to the relevant facts and the strengths of EPPs' claims when the Round 3 Settlements were negotiated.

## II. The March 2018 Notice Program Was Carried Out and Provided Adequate Notice of the Round 3 Settlements

The Round 3 Settlements provide monetary and non-monetary benefits for members of the Round 3 Settlement Classes who: (1) purchased or leased a qualifying new Vehicle[5] in the U.S. (not for resale), which contains one or more of the Settled Parts; or (2) indirectly purchased one or more of the Settled Parts as a replacement part. The monetary benefits of the Round 3 Settlements will be made available to the members of the Round 3 Settlement Classes in the following jurisdictions that allow EPPs to seek money damages or restitution: Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

---

[5] In general, qualifying vehicles include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles"). *See, e.g.*, Settlement Agreement with Chiyoda at ¶ 16, *Wire Harness*, 2:12-cv-00103, ECF. No. 553-1 ("'Vehicles' shall refer to four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.").

Case 2:12-md-02311-SFC-RSW   ECF No. 2027-41   PageID.37123   Filed 11/19/19   Page 22 of
108
Case 2:13-cv-03003-MOB-MKM   ECF No. 931   filed 09/14/18   PageID.40331   Page 21 of 45

Through a preeminent class action notice consultant, Kinsella Media, LLC ("Kinsella"),
EPPs implemented the March 2018 Notice Program,[6] which the Court previously approved.[7] *See*
*Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473. Kinsella and Garden City Group
("GCG"), the Court-appointed settlement administrator, implemented each element of the March
2018 Notice Program. *See* Wheatman Decl. ¶ 5; Pinkerton Decl. ¶¶ 12-25. The Court-approved
March 2018 Notice Program included individual notice to potential members who had previously
registered on the website. Pinkerton Decl. ¶¶ 17-24; Wheatman Decl. ¶ 10. The March 2018
Notice Program also included paid media (including published notice in national publications
and Internet advertising), earned media, sponsored keywords with all major search engines, and
continued use of and updates to the settlement website and toll-free telephone number.
Wheatman Decl. ¶¶ 11-23 & Ex. 2. The March 2018 Notice Program was effective, reaching an
estimated 80.5% of new Vehicle owners or lessees, with an average frequency of 2.9 times. *Id.*
¶ 24.

Members of the Round 3 Settlement Classes can contact a toll-free helpline or register
online at the settlement website, www.AutoPartsClass.com, both of which are maintained by

---

[6] Pursuant to the Court's Order granting EPPs' Motion for Authorization to Disseminate
Combined Notice to the EPP Settlement Classes ("Combined Notice Order"), Kinsella
previously implemented a notice program to provide notice of the Round 1 Settlements
("Combined Notice Program") to potential members of the Round 1 Settlement Classes, *see, e.g.*,
Combined Notice Order, *Wire Harness,* 2:13-cv-00103, ECF No. 421, and notice of the Round 2
Settlements to potential members of the Round 2 Settlement Classes, *see, e.g.*, Order Granting
End-Payor Plaintiffs' Unopposed Motion for Authorization to Disseminate September 2016
Notice and Claim Form to the End-Payor Plaintiffs Settlement Classes, *Wire Harness,* 2:13-cv-
00103, ECF No. 535.

[7] In addition to approving the September 2016 Notice Program, the Court authorized EPPs to
disseminate a Claim Form to potential members of the Round 1 and Round 2 Settlement Classes.
*See Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473. Potential members of the Round 3
Settlement Classes may submit claims electronically by completing the Claim Form online at
www.AutoPartsClass.com or in paper form by downloading the form and completing and
mailing it to GCG. Pinkerton Decl. ¶¶ 12, 25.

GCG. *See* Pinkerton Decl. ¶¶ 12-16. The website provides answers to frequently asked questions, important deadlines, a list of the Round 3 Settling Defendants, and access to important documents, such as the long form notice and relevant Court filings. *Id* ¶¶ 12-15. The website contains a list of all of the vehicles known to be within any of the Round 3 Settlement Classes. *Id.* ¶ 12. The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week. *Id.* To date, the website has received 1,932,134 visits from 1,673,788 unique visitors. *Id.* ¶ 15. GCG also sent an email notice to each of the 57,420 individuals who previously registered on the settlement website[8] and provided an email address and mailed a postcard notice to each of the 31,280 individuals who had previously registered on the settlement website but did not provide an email address. *Id.* ¶¶ 23-24.

## III. The Reaction of Members of the Round 3 Settlement Classes Has Been Positive

The reaction of the members of the Round 3 Settlement Classes has been positive. Members of the Round 3 Settlement Classes have until July 13, 2018 to object to the Round 3 Settlements or Plan of Allocation or exclude themselves from the Round 3 Settlement Classes. As of June 14, 2018, GCG has not received any: (1) objections to or requests for exclusion from the Round 3 Settlements, *id.* ¶¶ 26-27; or (2) objections to the Plan of Allocation, *id.* ¶ 27.

All persons or businesses that purchased or leased one of the categories of Vehicles or replacement parts described in the Notice Programs[9] were placed on notice that they may be members of the Round 1, Round 2, or Round 3 Settlement Classes, and that they should come forward, object or exclude themselves as they see fit. No potential claimant has ever been

---

[8] The email alert was deliverable to only 33,132 individuals. For all individuals for whom the email alert bounced back as undeliverable, GCG mailed them a postcard notice. Castaneda Decl. ¶ 18.

[9] The March 2018 Notice Program is referred to collectively with the Initial Notice Program and the Combined Notice Program as the ("Notice Programs").

Case 2:13-md-02311-SFC-RSW ECF No. 2037-41 PageID.37125 Filed 11/19/19 Page 24 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 93-7 filed 09/14/18 PageID.4035 Page 25 of 45

required to identify what part was in his or her Vehicle in order to object or opt out and no
objection has ever been rejected on that basis.

### Legal Standard

"[T]he law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp,
Inc.*, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013). As a
result, "the role of the district court is limited to the extent necessary to reach a reasoned
judgment that the agreement is not the product of fraud or overreaching by, or collusion between,
the negotiating parties, and that the settlement taken as a whole is fair, reasonable and adequate
to all concerned." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)
(internal quotation marks and citations omitted).

After preliminary approval, notice of the proposed settlement must be given to the
settlement class members, and the court must hold a hearing before granting final approval. *In re
Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v.
Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). The ultimate question is "whether the interests of
the class as a whole are better served if the litigation is resolved by the settlement rather than
pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation
omitted). In reaching that determination, the court has broad discretion to approve a class action
settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). In exercising this
discretion, courts give considerable weight and deference to the view of experienced counsel
regarding the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283,
297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated
with the case, who have assessed the relative risks and benefits of litigation.").

14

Because a settlement represents an exercise of judgment by the negotiating parties, a court reviewing a settlement will not "substitute [its] judgment for that of the litigants and their counsel." *IUE-CWA*, 238 F.R.D. at 593 (quotations omitted). Nor will it "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Instead, courts evaluate the plaintiffs' recovery in light of the fact that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, UAW v. Ford Motor Co.*, No. 05-cv-74730, 2006 U.S. Dist. LEXIS 70471, at *68 (E.D. Mich. July 13, 2006).

## <u>Argument</u>

### I. The Round 3 Settlements Are Fair, Reasonable, and Adequate and Should Receive Final Approval

The Round 3 Settlements meet the criteria for final approval under Federal Rule of Civil Procedure 23. They provide meaningful benefits to the members of the Round 3 Settlement Classes, and they were reached after arm's-length negotiations between experienced counsel who had sufficient background about the merits of, and defenses to the claims asserted in the Actions. The Round 3 Settlements reflect a reasonable compromise in light of the procedural, liability, and damages questions facing both EPPs and the Round 3 Settling Defendants.

Courts in the Sixth Circuit consider the following factors when determining whether to grant final approval of a class action settlement: (1) the likelihood of success on the merits, weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and the class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 U.S. Dist. LEXIS 17255, at *46-47 (E.D. Mich. Feb. 22,

Case 2:12-md-02311-SFC-RSW ECF No. 2037-41 PageID.37127 Filed 11/19/19 Page 26 of
Case 2:13-cv-03003-MOB-MKM ECF No. 937 filed 09/14/18 PageID.40374 Page 25 of 45
108

2011). The district court has wide discretion in assessing the weight and applicability of these

factors. *Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).

> **A.      The Likelihood of EPPs' Success on the Merits, Weighed Against the Relief
> Provided by the Round 3 Settlements, Supports Final Approval**

Courts assess class action settlements "with regard to a 'range of reasonableness,' which

'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs inherent in taking any litigation to completion.'" *Sheick v. Auto. Component Carrier LLC*,

No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *40 (E.D. Mich. Oct. 18, 2010) (quoting

*IUE-CWA*, 238 F.R.D. at 594). "[S]ettlement avoids the costs, delays, and multitude of other

problems associated with them." *Telectronics*, 137 F. Supp. 2d at 1013. When considering the

likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether

the interests of the class as a whole are better served if the litigation is resolved by settlement

rather than pursued to trial and judgment. *Sheick*, 2010 U.S. Dist. LEXIS 110411, at *45. In

answering that question, the district court "must carefully scrutinize whether the named plaintiffs

and counsel have met their fiduciary obligations to the class and whether the settlement is fair,

reasonable, and adequate." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 309 (6th

Cir. 2017) (internal citations omitted).

EPPs believe they will prevail in the Actions. EPPs nonetheless recognize that success at

trial is not guaranteed. Although EPPs believe they can prove the existence of Defendants'

illegal bid-rigging and price-fixing conspiracies, Defendants, represented by some of the leading

law firms across the country, have vigorously defended these cases. Absent the Round 3

Settlements, the Round 3 Settling Defendants would oppose EPPs' motions for class

certification, move for summary judgment on numerous issues, and raise defenses to EPPs'

claims at trial, should the Actions proceed to trial. Even if EPPs successfully established the

Round 3 Settling Defendants' violations of the law, the Round 3 Setting Defendants would offer expert testimony challenging the impact of their conduct and suggesting that damages were nonexistent or far less than those sought by EPPs. EPPs would have to show that the Round 3 Settling Defendants' illegal overcharges were passed on through multiple levels of indirect purchasers. EPPs believe they would prevail on all of these issues at trial and appeal, but the Round 3 Settlements avoid the risks of further litigation and ensure a large recovery for members of the Round 3 Settlement Classes. Given these risks, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, the discovery cooperation that the Round 3 Settling Defendants have agreed to provide is a substantial benefit to the Round 3 Settlement Classes and "strongly militates toward approval" of the settlements. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). This cooperation will enhance and strengthen EPPs' prosecution of claims against the Non-Settling Defendants. *Id.*; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *51 (noting that cooperation by the settling defendant "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"). In addition, the agreement by all but five of the Round 3 Settling Defendants not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts provides value to the members of Round 3 Settlement Classes.[10]

While Class Counsel have consulted with their experts about damages issues in connection with the Round 3 Settlements, expert analysis of potential damages is not required in order to settle a class action. *See* Newberg on Class Actions § 13:49 (citing *Marshall v. Nat'l*

---

[10] *See* footnote 4, *supra*.

*Football League*, 787 F.3d 502, 517-18 (8th Cir. 2015) (holding that the district court could approve settlement without finding a specific value for expected recovery of class); *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8 (2013) (rejecting objectors' argument "that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award" and holding that "[w]hile a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action. Not only would such a requirement be onerous, it would often be impossible—statutory or liquidated damages aside, the amount of damages a given plaintiff (or class of plaintiffs) has suffered is a question of fact that must be proved at trial. Even as to statutory damages, questions of fact pertaining to which class members have claims under the various causes of action would affect the amount of recovery at trial, thus making any prediction about that recovery speculative and contingent.")); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (rejecting the suggestion that a precise damages model is always required; noting that the requirement of an expert damages report "would have resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class—exactly the type of litigation the parties were hoping to avoid by settling"; and distinguishing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)).

Class counsel consulted with their experts about damages issues, examining the dollar volume of commerce affected; the likely overcharges, *see* Connor, *Cartel Overcharges*, *supra* at 8, at 290 (identifying average overcharge of 20.2% of affected commerce for recent international cartels); typical antitrust recoveries, *see* Connor & Lande, *Not Treble Damages: Cartel*

*Recoveries Are Mostly Less than Single Damages*, *supra* at 8, at 2010 (finding a weighted average recovery of 19% of total cartel overcharges in successful antitrust actions); and damages issues unique to each case. *See* Joint Decl. ¶ 16. Class counsel believes that the Round 3 Settlements, which reflect only a portion of the recoveries for the class in each parts case, compare favorably to other antitrust recoveries. *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. . . . In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Settlement Class Counsel believe that the Round 3 Settlements represent an excellent recovery for EPPs. Weighing the benefits of the Round 3 Settlements against the risks of continued litigation tilts the scale heavily toward final approval of the Round 3 Settlements.

### B. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval

"Settlement should represent a compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Cardizem*, 218 F.R.D. at 523 (quotation omitted). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.*

Antitrust cases are notoriously protracted and difficult to litigate. Given the complexity of the Actions, any final adjudicated recovery for the Round 3 Settlement Classes would almost certainly be years away. Should EPPs' claims proceed to trial, the trial would be expensive, time-consuming, and complex, and it would involve testimony from multiple expert witnesses.

Moreover, given the high stakes of this litigation, a favorable trial outcome would most definitely be contested on appeal. Each subsequent step in the litigation process would require the Round 3 Settlement Classes to incur additional expenses without any assurance of a more favorable outcome than currently provided by the Round 3 Settlements.

This Court has had substantial opportunity to consider the claims and defenses raised in the *Auto Parts Litigation* and has recognized that complex antitrust litigation of this scope and magnitude has many inherent risks that can be extinguished through settlement. *See, e.g.*, Round 1 Final Approval Order at 13; Round 2 Final Approval Order at 10-11. The fact that EPPs achieved exceptional recoveries to date, which eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the members of the Round 3 Settlement Classes, supports final approval of the settlements. Upon final approval, the Round 3 Settlements would bring EPPs' total recovery in this litigation up to $1,084,696,658[11]—in addition to the potential recoveries in each unsettled case. *See, e.g.*, Settlement Agreement with Chiyoda at ¶ 48, *Wire Harness*, 2:12-cv-00103, ECF. No. 553-1.

C. **The Judgment of Experienced Counsel Who Have Evaluated the Strength of the Claims, Defenses, and Risks Supports Approval**

"The Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the class settlement." *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *55 (quotation omitted). In a

---

[11]    In addition to the Round 1, Round 2, and Round 3 Settlements, EPPs have secured an additional $47,804,000 in settlements with five defendant families, as well as further additional settlements to be made public shortly.  EPPs have moved or will soon move for preliminary approval of each additional public settlement.  EPPs will file their motions to disseminate notice and for final approval of these settlements at a later date.

complex class action litigation such as this, the "Court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Date v. Sony Elecs., Inc.*, No. 07-cv-15474, 2013 U.S. Dist. LEXIS 108095, at *28-29 (E.D. Mich. Jul. 31, 2013) (quotation omitted); *see also Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arm's-length settlement negotiations, is appropriate.") (quotation omitted).

Settlement Class Counsel have decades of experience litigating antitrust class actions and other complex litigation. Similarly, defense counsel are some of the most experienced and skilled antitrust litigators. Joint Decl. ¶ 9. Settlement Class Counsel believe that each of the Round 3 Settlements provides an excellent result for the Round 3 Settlement Classes in light of the circumstances of each Round 3 Settling Defendant's conduct and potential liability. *See id.* ¶¶ 16-17.

In determining whether the judgment of counsel supports final approval of the settlements, a court should consider the amount of discovery completed in the action. *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *55. There is no baseline required to satisfy this requirement; the "question is whether the parties had adequate information about their claims." *Griffin*, 2013 U.S. Dist. LEXIS 173702, at *10 (quotation omitted). That standard is met here. Although formal discovery in each of the Actions has varied, when negotiating each of the Round 3 Settlements, Settlement Class Counsel reviewed documents produced by many Defendants, attended attorney proffers from certain cooperating Defendants, analyzed the volume of commerce affected by the particular Round 3 Settling Defendant's conduct, and analyzed information from parties and non-parties concerning impact, overcharge, and pass-through. This information allowed Settlement Class Counsel to evaluate the strengths and

weaknesses of the claims and defenses asserted in the Actions and the benefits of the Round 3
Settlements. Thus, the judgment of Settlement Class Counsel supports final approval of the
Round 2 Settlements. *See Sheick*, 2010 U.S. Dist. LEXIS 110411, at *51-52.

### D. The Reaction of Class Members Weighs in Favor of Final Approval

The deadline for class members to object to the Round 3 Settlements or Plan of
Allocation or to exclude themselves from the Round 3 Settlement Classes is July 13, 2018. *See,
e.g.*, *Wire Harness*, 2:12-cv-00103, ECF No. 601. To date, the website has received visits from
1,673,788 unique visitors, the automated toll-free helpline has received 24,823 calls, and, of
those 24,823 calls to the automated toll-free helpline, GCG has fielded 8,675 live calls from
potential settlement class members. Pinkerton Decl. ¶¶ 15-16. Yet, to date, Settlement Class
Counsel have received no objections to the Round 3 Settlements or Plan of Allocation, or
requests for exclusion from, any of the Round 3 Settlements. *Id.* ¶¶ 26-27.

The absence of any objections, to date, from members of the Round 3 Settlement Classes
supports the adequacy of the Round 3 Settlements. *See, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897
F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors
settlement"); *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982)
(approving settlement despite objections of large number of class members); *In re Auto.
Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) ("The fact that an
overwhelming majority of the Class did not file objections is a significant element to consider in
determining the overall fairness of the settlements."); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D.
Ind. 1994) (approving class settlement despite objections from more than 10% of class). To the
extent any objections are received after the filing of this motion, Settlement Class Counsel will
address those objections separately for the Court.

### E. The Round 3 Settlements Are Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quotation omitted). The private enforcement of the antitrust laws is facilitated by the Round 3 Settlements, which will pay hundreds of millions of dollars to consumers and other end-payors.

### F. The Round 3 Settlements Are the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *58. The Round 3 Settlements here were reached after adversarial litigation and often contentious discovery. The negotiations leading to the Round 3 Settlements were conducted entirely at arm's length, in some instances before a neutral mediator, and often took many months of hard bargaining to arrive at agreements. *See* Joint Decl. ¶ 12. The Round 3 Settlements were negotiated in good faith, with counsel on each side zealously representing the interests of their clients.

## II. Notice of the Round 3 Settlements Satisfied the Requirements of Rule 23(e) and Due Process

Under Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). In Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 812 (1985); *UAW*, 497 F.3d at 629. The "best notice practicable" standard does not require actual notice, nor does it require direct notice when class members' individual addresses are not readily available or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Manual for Complex Litigation (Fourth) § 21.311, at 288 (2004). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

The March 2018 Notice Program was multi-faceted and utilized multiple means of communication. The March 2018 Notice Program used both paid and earned media. Wheatman Decl. ¶ 9. It included the following elements: (1) individual notice; (2) extensive published notice in several national publications; (3) online media efforts through targeted and Internet advertising on various websites, social media sites, and search engines; (4) earned media efforts through a multimedia news release, state press releases, and media outreach; and (5) a dedicated settlement website. *See id.* This notice program easily satisfied the requirements of Rule 23 and due process. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *66; *Sheick*, 2010 U.S. Dist. LEXIS 110411, at *31.

In terms of content, the class notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quotation omitted). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for

Case 2:12-md-02311-SFC-RSW ECF No. 2027-41, PageID.37136 Filed 11/19/19 Page 35 of
108
Case 2:13-cv-03003-MOB-MKM ECF No. 931 filed 08/14/18 PageID.40961 Page 34 of 55

requesting; and (7) the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B).

That standard is met here. The Court previously approved the March 2018 Notice Program, which is substantially similar to the notice program implemented in connection with the Round 1 and Round 2 Settlements. *See* Round 1 Final Approval Order at 21 ("The Court finds that the [Round 1] Notice satisfied Rule 23(e)(1), in that it informed the class members of the nature of the pending actions, the terms of the settlement, and how to proceed to get more information."); *Wire Harness*, 2:12-cv-00103, ECF No. 535 (approving substantially similar notice of Round 2 Settlements). The March 2018 Notice Program contained both a short and long form notice (together, "Notices"). The Notices were written in simple, plain language to encourage readership and comprehension, and no important information was omitted or missing. *See* Wheatman Decl. ¶¶ 33. The Notices provided substantial information, including background on the issues in the case, a description of the Plan of Allocation, and specific instructions for members of the Round 3 Settlement Classes to follow to properly exercise their rights, such as their right to opt out or to object to the Round 3 Settlements or Plan of Allocation. *Id.* ¶ 34.

## III. The CAFA Notice Requirement Has Been Satisfied by Each of the Round 3 Settling Defendants

The Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA"), requires settling defendants to serve notice of a proposed settlement on the appropriate state and federal officials after a proposed class action settlement is filed with the court. 28 U.S.C. § 1715(b). All but one of the Round 3 Settling Defendants has provided Settlement Class Counsel with written notice that it has satisfied the CAFA notice requirement. Joint Decl. ¶ 23.[12]

---

[12] It recently came to Settlement Class Counsel's attention that the Sanden Defendants inadvertently failed to fulfill their notice obligations under the Class Action Fairness Act

## IV.    The Court Should Certify the Round 3 Settlement Classes

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified each of the Round 3 Settlement Classes. It is well-established that a class may be certified for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The settlement class must meet the requirements of Rule 23(a) and at least one subsection of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013). Previously, the Court gave final approval and certified the substantially similar settlement classes relating to the Round 1 and Round 2 Settlements. *See* Round 1 Final Approval Order; Round 2 Final Approval Order. The Court should reach the same result here.

### A.    The Round 3 Settlement Classes Satisfy Rule 23(a)

Rule 23(a) is satisfied if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 U.S. Dist. LEXIS 173702, at *16-17. The Round 3 Settlement Classes met all of the requirements of Rule 23(a).

#### 1.    Numerosity

---

of 2005, 28 U.S.C. § 1715.  Counsel for Sanden has represented to Settlement Class Counsel that it will cause the requisite notice to be disseminated by the end of the week.

In order to ensure compliance with the statute, Settlement Class Counsel respectfully request that the Court delay entering final judgment with respect to the Sanden Defendants until 90 days after the Sanden Defendants cause the requisite notice to be disseminated.  Any delay attendant to the Sanden Defendants' oversight should have no impact on the timing of the Court's final approval of the other settlements subject to the Round 3 Settlements.

To establish numerosity, a class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). Courts in the Sixth Circuit have recognized that "more than several hundred" class members can satisfy numerosity based simply on the number of potential litigants. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Here, there are many tens of thousands of members of the Round 3 Settlement Classes, including persons and entities, geographically distributed throughout the United States. Thus, joinder would be impracticable, and numerosity is easily present in the Actions.

### 2. Commonality

Commonality requires only "one issue whose resolution will advance the litigation by affecting a significant number of the proposed class." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 404 (S.D. Ohio 2007). "Price-fixing conspiracy cases by their very nature deal with common legal and factual questions about the existence, scope, and extent of the alleged conspiracy." *Id.* at 405; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) ("Where an antitrust conspiracy has been alleged, courts have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.") (internal citation omitted).

The following common questions of law and fact are present in these cases: (1) whether Defendants engaged in a conspiracy to rig bids, fix prices, or allocate the markets for the Settled Parts incorporated into Vehicles sold in the United States; (2) the duration of such illegal contracts, combinations, or conspiracies; (3) whether Defendants' conduct resulted in unlawful overcharges on the prices of the Settled Parts; and (4) whether such unlawful overcharges were passed on to EPPs. Under settled case law, any one of these issues would suffice to establish

Case 2:12-md-02311-SFC-RSW ECF No. 2027-41 PageID.37139 Filed 11/19/19 Page 38 of
Case 2:13-cv-03003-MOB-MKM ECF No. 93-7 filed 06/14/18 PageID.4091 Page 30 of 85
108

commonality. *See, e.g.*, *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). Accordingly, the commonality element is satisfied here.

### 3. Typicality

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3). "In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants." *Foundry Resins*, 242 F.R.D. at 405. In these cases, EPPs and the absent class members are all alleged victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for the Settled Parts. The same evidence will prove Defendants' liability, and whether Defendants' conduct resulted in unlawful overcharges to EPPs. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41 (holding that "even if there are factual distinctions among named and absent class members," typicality is met when "all Class Members' claims arise from the same course of conduct, *i.e.* a conspiracy to allocate markets in violation of the Sherman Act").

### 4. Adequacy

Finally, the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the class representatives to "have common interests with unnamed members of the class" and to "vigorously prosecute the interests of the class through qualified counsel." *Foundry Resins*, 242 F.R.D. at 407.

There are no conflicts between EPP class representatives and the members of the Round 3 Settlement Classes because they all have the same interest in establishing liability as a result of their purchases or leases of Vehicles or purchases of replacement parts. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *41 ("Plaintiffs' interests are aligned with the Class Members because they all possess the same interests and have suffered the same type of injury and the class is represented by competent and experienced Class Counsel."). EPP class representatives and the members of the Round 3 Settlement Classes also share a common interest in obtaining the Round 3 Settling Defendants' cooperation in prosecuting the claims against the Non-Settling Defendants, as well as the injunctive relief obtained from virtually all of the Round 3 Settling Defendants.

Courts also must examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class under Federal Rule of Civil Procedure 23(g). *Foundry Resins*, 242 F.R.D. at 407. Here, EPPs are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the claims of the Round 3 Settlement Classes, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation."). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel on behalf of EPPs in all actions coordinated as part of the *Auto Parts Litigation*. Leadership Orders, *Auto Parts Master Docket*, 2:12-md-02311, ECF Nos. 65, 271. The Court also appointed these same firms as Settlement Class Counsel in each of the orders preliminarily approving the Settlement Agreements (*see, e.g.*, Order Granting Preliminary Approval of

Settlement with DENSO at ¶ 7, *Wire Harness*, 2:12-cv-00103, ECF No. 534), and appointed them as Settlement Class Counsel in its order granting final approval of the Round 1 Settlements and Round 2 Settlements. *See, e.g.*, Round 1 Final Approval Order at 26; Round 2 Final Approval Order at 25. For the same reasons, the Court should confirm their appointment as Settlement Class Counsel here.

### B. The Round 3 Settlement Classes Satisfy Rule 23(b)(3)

In addition to the requirements of Rule 23(a) discussed above, common questions must predominate over questions affecting only individual class members, and a class action must be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

#### 1. Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is met when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). But plaintiffs need not "prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, predominance is satisfied "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *Foundry Resins*, 242 F.R.D. at 408.

Common questions must predominate, but they do not have to be dispositive of the litigation. *Id.* "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does

not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 535 (E.D. Mich. 2013) (quotation omitted). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013).

Horizontal price-fixing cases are particularly well suited for class certification because proof of the conspiracy presents a common, predominating question. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("[P]roof of the *conspiracy* is a common question thought to predominate over the other issues of the case."); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43 ("The allegations of market and customer allocation will not vary among the class members and issues regarding the amount of damages do not destroy predominance."). This is true even if there are individual state law issues, as long as the common issues still outweigh the individual issues—that is, if a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *Whirlpool*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class action may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citations omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, the fact that damages calculation may involve individualized issues does not defeat predominance).

Here, the same sets of core operative facts and theories of liability apply to all the Round 3 Settlement Classes' claims. Whether the Settling Defendants entered into illegal agreements to artificially fix prices of the Settled Parts is a question common to all members of the Round 3 Settlement Classes because it is an essential element of proving an antitrust violation. Common

Case 2:12-md-02311-SFC-RSW ECF No. 2037-41, PageID.37143 Filed 11/19/19 Page 42 of
Case 2:13-cv-03003-MOB-MKM ECF No. 931, filed 09/14/18 PageID.4108 Page 42 of 45
108

questions also include whether, if such an agreement was reached, the Round 3 Settling

Defendants violated the antitrust laws, and whether their acts caused anticompetitive effects. *See,*

*e.g.*, *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40. If EPPs and the absent class members

brought individual actions, they would each have to prove the same claims in order to establish

liability. For settlement purposes, common issues predominate here.

### 2. Superiority

In determining whether a class action is the superior method to employ, courts should

consider:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already begun by or against class members; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Foundry Resins*, 242 F.R.D. at 411.

The *Auto Parts Litigation* has been centralized in this Court. To date, no members of the

Round 3 Settlement Classes have requested exclusion from the Round 3 Settlements. Thus,

consideration of the factors listed in subsections (A), (B), and (C) demonstrates the superiority of

the Settlement Classes. The last factor, meanwhile, is irrelevant because the potential difficulties

in managing a trial are extinguished by the fact of settlement. *Amchem*, 521 U.S. at 620.

In addition, the scope and complexity of the *Auto Parts Litigation*—and as a result, the

cost to litigate these claims—is enormous. The Round 3 Settlement Classes are largely

comprised of individual consumers who purchased or leased a new Vehicle or purchased a

replacement part, none of whom could rationally be expected to spend the millions of dollars

necessary to pursue their claims resulting from the unlawful overcharges. *See Paper Sys. Inc. v.*

*Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wis. 2000) ("Given the complexities of antitrust

litigation, it is not obvious that all members of the class could economically bring suits on their own."). Even if class members could afford individual litigation, however, that leaves the alternatives to the Settlement Classes as a multiplicity of separate lawsuits at high cost to the judicial system and private litigants, or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996). Thus, certification of the Settlement Classes is superior to the alternatives in this litigation.

**V.      The Court Should Approve the Plan of Allocation in Connection With the Round 3 Settlements**

On October 11, 2016, the Court granted EPPs' Amended Motion for Approval of Plan of Allocation "to distribute all settlement funds as to which the Court has granted final approval," and "direct[ed] the EPPs to give notice of the Plan of Allocation to the Settlement Classes." *Auto Parts Master Docket*, 2:12-md-2311, ECF No. 1473. On July 10, 2017, the Court further approved EPPs' Plan of Allocation for Round 1 Settlements and Round 2 Settlements. *Wire Harness*, 2:12-cv-00103, ECF No. 577. On March 13, 2018, the Court approved EPPs' Motion for Authorization to Disseminate March 2018 Notice to the End-Payor Plaintiffs Settlement Classes, *Wire Harness*, 2:12-cv-00103, ECF No. 601. The Round 1, Round 2, and Round 3 Settlement Classes have had the opportunity to review, comment, and/or object to the Plan of Allocation. Since EPPs' Plan of Allocation for the Round 3 Settlements is identical to the Plan previously approved for the Round 1 and Round 2 Settlements, EPPs request that the Court again approve this Plan of Allocation.

Case 2:13-md-02303-SFC-RSW ECF No. 2037-41 PageID.37145 Filed 11/19/18 Page 44 of
Case 2:13-cv-03003-MOB-MKM ECF No. 937 filed 06/14/18 PageID.41051 Page 45 of
108

## Conclusion

For the foregoing reasons, Class Counsel respectfully request that the Court: (1) grant final approval of the Round 3 Settlements; (2) grant final certification of the Round 3 Settlement Classes for settlement purposes only; (3) confirm the appointment of Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P. as Settlement Class Counsel for the Round 3 Settlements; and (4) approve the Plan of Allocation in connection with the Round 3 Settlements.

Dated: June 14, 2018                          Respectfully submitted,

*/s/ Hollis Salzman*
Hollis Salzman
Bernard Persky
William V. Reiss
Noelle Feigenbaum
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@robinskaplan.com
bpersky@robinskaplan.com
wreiss@robinskaplan.com
nfeigenbaum@robinskaplan.com

*/s/ Adam Zapala*
Adam J. Zapala
Elizabeth Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Steven M. Shepard
Lucas Issacharoff
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, Floor 32
New York, New York 10019
Telephone: (212) 729-2010
sshepard@susmangodfrey.com
lissacharoff@susmangodfrey.com

*Interim Co-Lead Class Counsel for the
Proposed End-Payor Plaintiff Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Lucas Issacharoff
Lucas Issacharoff

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : <br> : <br> : | No. 12-md-02311 <br> Hon. Marianne O. Battani |
| In Re: Wire Harness | : | Case No. 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : | Case No. 2:12-cv-00203 |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00403 |
| In Re: Bearings | : | Case No. 2:12-cv-00503 |
| In Re: Anti-Vibrational Rubber Parts | : | Case No. 2:13-cv-00803 |
| In Re: Windshield Wipers | : | Case No. 2:13-cv-00903 |
| In Re: Radiators | : | Case No. 2:13-cv-01003 |
| In Re: Starters | : | Case No. 2:13-cv-01103 |
| In Re: Automotive Lamps | : | Case No. 2:13-cv-01203 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01403 |
| In Re: HID Ballasts | : | Case No. 2:13-cv-01703 |
| In Re: Electronic Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In Re: Fan Motors | : | Case No. 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In Re: Power Window Motors | : | Case No. 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | Case No. 2:13-cv-02403 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | Case No. 2:13-cv-02803 |
| In Re: Constant Velocity Joint Boot Products | : | Case No. 2:14-cv-02903 |
| In Re: Spark Plugs | : | Case No. 2:15-cv-03003 |
| In Re: Shock Absorbers | : | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | : | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | : | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | : | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | : | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-03803 |
| In Re: Automotive Steel Tubes | : | Case No. 2:16-cv-04003 |
| In Re: Access Mechanisms | : | Case No. 2:16-cv-04103 |
| In Re: Door Latches | : | Case No. 2:17-cv-11637 |
| THIS DOCUMENT RELATES TO: <br> End-Payor Actions | : <br> : | |

# JOINT DECLARATION OF HOLLIS SALZMAN, ADAM J. ZAPALA, AND MARC M. SELTZER IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION FOR ORDERS GRANTING FINAL APPROVAL OF THE ROUND 3 SETTLEMENTS AND APPROVING THE PLAN OF ALLOCATION IN CONNECTION

**WITH THE ROUND 3 SETTLEMENTS**

Hollis Salzman, Adam J. Zapala, and Marc M. Seltzer jointly declare as follows:

1.      Hollis Salzman is an attorney licensed to practice law in the States of New York, New Jersey, and Florida, and a partner at the law firm of Robins Kaplan LLP.  Adam J. Zapala is an attorney licensed to practice law in the State of California and a partner at the law firm of Cotchett, Pitre & McCarthy, LLP.  Marc M. Seltzer is an attorney licensed to practice law in the State of California and a partner at the law firm of Susman Godfrey L.L.P.  They are each admitted to practice before this Court, and collectively they are Interim Co-Lead Class Counsel ("Settlement Class Counsel") for the End-Payor Plaintiffs ("EPPs") in *In re Automotive Parts Antitrust Litigation*, MDL No. 12-md-2311 ("*Auto Parts*").

2.      Each declares that she or he has personal knowledge of the matters set forth herein, and if called upon to testify thereto, could do so competently.  Each makes this declaration pursuant to 28 U.S.C. § 1746.

**The Action**

3.      In general, the EPPs in the *Auto Parts Litigation* are persons or entities who purchased or leased a qualifying new Vehicle[1] in the U.S. (not for resale), which contains one or more of the automotive parts that EPPs contend were the subject of illegal bid rigging and price-fixing ("Auto Parts").  EPPs have alleged that the defendants in the *Auto Parts Litigation*, who are some of the largest automotive parts manufacturers in the world, conspired with each other and other co-conspirators to fix the price of, rig bids for, and allocate the markets of automotive parts incorporated into new Vehicles manufactured by automobile manufacturers.

---

[1] In general, qualifying vehicles include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles").

5864285V1/013283

4.      The first case in the *Auto Parts Litigation* alleging price fixing and bid rigging in the automotive parts industry was *Wire Harness*, Case No. 2:12-cv-00100.  On February 7, 2012, the United States Judicial Panel on Multidistrict Litigation ("Judicial Panel" or "Panel") transferred actions sharing "factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems" to the Eastern District of Michigan. *See* Conditional Transfer Order, Case No. 2:12-md-02311 (E.D. Mich. 2012), ECF No. 2.

5.      After complaints were filed alleging conspiracies to fix prices of additional component parts, including *Instrument Panel Clusters* (Case No. 2:12-cv-00200), *Heater Control Panels* (Case No. 2:12-cv-00400), and *Fuel Senders* (Case No. 2:12-cv-00300), the Judicial Panel determined that including all actions involving price fixing in the automotive parts industry in MDL No. 2311 would result in the most efficient handling of the litigation.  The additional component part cases were transferred to this Court for coordinated pretrial proceedings, and *In re: Automotive Wire Harness Systems Antitrust Litigation* was renamed *In re: Automotive Parts Antitrust Litigation*.  To date, more than 40 class action antitrust price-fixing cases involving over 165 defendants have been filed with the Court.

6.      On March 23, 2012, the Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP,[2] and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in the *Wire Harness* action and made the same appointment on August 7, 2012, for all the other automotive parts antitrust cases.  *See* Master File No. 2:12-md-2311, ECF No. 65, Order Granting End-Payor

---

[2] The lawyers at Robins Kaplan LLP were previously at another firm when originally appointed Co-Lead Class Counsel.  *See* Master File No. 2:12-md-2311, ECF No. 65.  That Order has since been amended to reflect those lawyers' current firm affiliation. *See* Master File No. 2:12-md-2311, ECF No. 505.

Plaintiffs' Application for Appointment of Interim Co-Lead Class Counsel and Liaison Counsel, and ECF No. 271, Case Management Order No. 3.

7.      Since our appointment as Interim Co-Lead Class Counsel for End-Payor Plaintiffs ("Class Counsel"), our firms have together supervised the activities of all counsel for the EPPs in prosecuting the *Auto Parts Litigation*. This litigation is unique in its size and complexity. From the outset, our firms have diligently worked to advance the claims of members of the proposed EPP classes, and have performed the following services on behalf of the proposed EPP classes:

- Performing extensive research into the worldwide automotive parts industry, as well as the federal antitrust laws and the antitrust, consumer protection, and unjust enrichment laws of at least 30 states and the District of Columbia;

- Researching and drafting scores of class action complaints, including more than 70 amended complaints, incorporating extensive new factual information obtained as a result of additional factual investigation, document review, and proffers and interviews of witnesses made available by certain settling and cooperating Defendants;

- Successfully opposing scores of motions to dismiss filed by Defendants through extensive briefing and oral argument before the Court;

- Reviewing and analyzing millions of pages of English and foreign language documents (many of which Class Counsel were required to translate) produced by Defendants, including 143,604 documents across three cases in the least year alone;

- Drafting and coordinating discovery by all Plaintiff groups against well over 100 Defendants, as well as preparing and arguing numerous contested discovery motions;

- Meeting with Defendants' counsel in connection with factual proffers obtained pursuant to the cooperation provisions of settlement agreements or the Antitrust Criminal Penalty Enhancement Reform Act, and interviewing key witnesses from various Defendant groups, including abroad and in federal prison in the United States;

- Coordinating the actions of EPPs, and sometimes of all Plaintiff groups, with the Department of Justice ("DOJ");

- Obtaining, analyzing and producing thousands of pages of documents and data from more than 50 EPP class representatives, and responding to multiple rounds of detailed Interrogatories from 10 separate sets of Defendants;

- Spearheading the drafting and negotiation of written discovery, discovery plans, protocols, and stipulations with Defendants and Plaintiffs' groups;

- Exchanging information and coordinating with counsel for Direct Purchaser Plaintiffs, Automobile Dealer Plaintiffs, Truck and Equipment Dealer Plaintiffs, and State Attorneys General regarding various issues;

- Preparing for and defending more than 50 EPP class representative depositions;

- Preparing for and taking the depositions of more than 190 defendant witnesses in the U.S. and abroad;

- Participating in more than 140 depositions of automotive dealer class representatives and third-parties;

- Meeting and coordinating with EPP economic and industry experts to analyze facts learned through investigation and discovery;

- Working with experts to discuss and craft appropriate damages methodologies in preparation for class certification, motion practice, and computation of class-wide damages for purposes of trial;

- Drafting, serving, negotiating, and engaging in non-party discovery directed to at least 17 Original Equipment Manufacturer ("OEM") families including service of over 100 subpoenas, depositions, extensive discovery-related motion practice before the Special Master and the Court, and mediations-all performed in collaboration with Defendants and other Plaintiffs' groups over the course of several years;

- Preparing for class certification motions by, among other things, analyzing thousands of documents and other discovery, conducting numerous depositions and interviews, working closely with experts and economists, and coordinating with both Plaintiffs' groups and Defendants to obtain essential discovery from OEM families;

- Performing the numerous settlement-related tasks necessary to achieve more than 60 settlements totaling over $1 billion in the Auto Parts litigation, such as: analyzing, to date, economic evidence and data and formulating settlement demands; engaging in extensive arm's-length negotiations with Defendants, dozens of in-person meetings, countless other communications, and in many instances, working with the assistance of outside neutral mediators; negotiating and preparing drafts of settlement agreements; and preparing

4

Case 2:12-md-02311-SFC-RSW ECF No. 2027-11 PageID.37453 Filed 11/19/19 Page 52 of
108
Case 2:15-cv-03803-MOB-MKM ECF No. 293-1 filed 06/14/16 PageID.11119 Page 6 of 15

preliminary approval motions and escrow agreements for each settlement; and,

- Crafting, in consultation with the class-notice expert, three extensive notice programs that were approved by the Court, including the most recent March 2018 program.

8.      All of this work has been done on an entirely contingent-fee basis in what is, without a doubt, one of the most complex antitrust cases in the history of the antitrust laws.

## Settlement Negotiations and Preliminary Approval

9.      Beginning in the fall of 2012, Class Counsel engaged in good faith, arm's-length discussions and negotiations with experienced defense counsel regarding the potential resolution of EPPs' claims.  Over the next few years, Class Counsel had numerous discussions, including by email, conference calls, in-person meetings, and mediations.  The efforts of Class Counsel resulted in settlements totaling $224,668,350 between EPPs and eleven settling defendants ("Round 1 Settlements"), and additional settlements totaling $379,401,268 between EPPs and twelve settling defendants ("Round 2 Settlements"), all of which have been finally approved. *See, e.g.*, *Wire Harness*, 2:12-cv- 00103, ECF Nos. 497, 512; *Wire Harness*, No. 2:12-cv-00103, ECF No. 576.

10.     EPPs have now reached settlements with an additional 33 settling defendants ("Round 3 Settlements"), making available an additional $432,823,040 million for the benefit of the settlement classes included in the Round 3 Settlements ("Round 3 Settlement Classes").[3]

11.     The Defendants included in the Round 3 Settlements ("Round 3 Settling Defendants") are:

---

[3] In addition to the Round 1, Round 2, and Round 3 Settlements, EPPs have secured an additional $39,368,000 in settlements with two defendant families, as well as further additional settlements that are not yet public.  Class Counsel have moved for preliminary approval of each additional public settlement.  Class Counsel will file their motion to disseminate notice and their motion for final approval of these settlements at a later date.

5864285V1/013283

a.    Aisan Industry Co., Ltd.; Franklin Precision Industry, Inc.; Aisan Corporation of America; and Hyundam Industrial Co., Ltd. (collectively, "Aisan") in *Fuel Injection Systems*;

b.    ALPHA Corporation and Alpha Technology Corporation (together, "ALPHA") in *Access Mechanisms*;

c.    Alps Electric Co., Ltd.; Alps Electric (North America), Inc.; and Alps Automotive Inc. (collectively, "Alps") in *Bearings*;

d.    Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch") in *Fuel Injection Systems*, *Spark Plugs*, *Starters*, and *Wipers*;

e.    Bridgestone Corporation and Bridgestone APM Company (together, "Bridgestone") in *Anti-Vibrational Rubber Parts*;

f.    Calsonic Kansei Corporation and Calsonic Kansei North America, Inc. (together, "Calsonic") in *Air Conditioning Systems*, *Radiators*, and *Automatic Transmission Fluid Warmers*;

g.    Chiyoda Manufacturing Corporation and Chiyoda USA Corporation (together, "Chiyoda") in *Wire Harness*;

h.    Continental Automotive Electronics LLC, Continental Automotive Korea Ltd, and Continental Automotive Systems, Inc. (collectively, "Continental") in *Instrument Panel Clusters*;

i.    Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corporation (together, "Diamond Electric") in *Ignition Coils*;

j.    Eberspächer Exhaust Technology GmbH & Co. KG and Eberspächer North America Inc. (together, "Eberspaecher") in *Exhaust Systems*;

k.    Faurecia Abgastechnik GmbH; Faurecia Systèmes d'Échappement; Faurecia Emissions Control Technologies, USA, LLC; and Faurecia Emissions Control Systems, N.A. LLC f/k/a Faurecia Exhaust Systems, Inc. (collectively, "Faurecia") in *Exhaust Systems*;

l.    Hitachi Automotive Systems, Ltd. ("HIAMS") in *Shock Absorbers*;

m.    Hitachi Metals, Ltd.; Hitachi Cable America Inc.; and Hitachi Metals America, Ltd.; (together, "Hitachi Metals") in *Brake Hoses*;

n.    INOAC Corporation; INOAC Group North America, LLC; and INOAC USA Inc. (collectively, "INOAC") in *Interior Trim*;

6

o.  JTEKT Corporation; JTEKT Automotive North America, Inc.; and JTEKT North America Corp. (formerly d/b/a Koyo Corporation of U.S.A.) (collectively, "JTEKT") in *Bearings* and *Electronic Powered Steering Assemblies*;

p.  Kiekert AG and Kiekert U.S.A., Inc. (together, "Kiekert") in *Latches*;

q.  Koito Manufacturing Co., Ltd. and North American Lighting, Inc. (together, "KOITO") in *Automotive Lamps* and *HID Ballasts*;

r.  MITSUBA Corporation and American Mitsuba Corporation (together, "Mitsuba") in *Windshield Wiper Systems*, *Radiators*, *Starters*, *Automotive Lamps*, *Electric Powered Steering Assemblies*, *Fan Motors*, *Fuel Injection Systems*, *Power Window Motors*, *and Windshield Washer Systems*;

s.  MAHLE Behr GmbH & Co. KG and MAHLE Behr USA Inc. (together, "MAHLE Behr") in *Air Conditioning Systems*;

t.  Nachi-Fujikoshi Corp. and Nachi America Inc. (together, "Nachi") in *Bearings*;

u.  NGK Insulators, Ltd. and NGK Automotive Ceramics USA, Inc. (together, "NGK Insulators") in *Ceramic Substrates*;

v.  NGK Spark Plug Co., Ltd. and NGK Spark Plugs (U.S.A.), Inc. (together, "NGK Spark Plugs") in *Spark Plugs*;

w.  Nishikawa Rubber Company, Ltd. ("Nishikawa") in *Body Sealing Products*;

x.  NTN Corporation and NTN USA Corporation (together, "NTN") in *Bearings*;

y.  Sanden Automotive Components Corporation, Sanden Automotive Climate Systems Corporation, and Sanden International (U.S.A.) Inc. (collectively, "Sanden") in *Air Conditioning Systems*;

z.  SKF USA Inc. ("SKF") in *Bearings*;

aa. Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co. (collectively, "Stanley") in *Automotive Lamps* and *HID Ballasts*;

bb. Tenneco Inc., Tenneco GmbH and Tenneco Automotive Operating Co., Inc. (collectively, "Tenneco") in *Exhaust Systems*;

7

    cc. Toyo Tire & Rubber Co. Ltd.; Toyo Tire North America OE Sales LLC; and Toyo Automotive Parts (USA), Inc. (collectively, "Toyo") in *Anti-Vibrational Rubber Parts* and *Constant Velocity Joint Boots*;

    dd. Usui Kokusai Sangyo Kaisha, Ltd. and Usui International Corporation (together, "Usui") in *Steel Tubes*;

    ee. Valeo S.A. ("Valeo") in *Access Mechanisms*;

    ff. Yamada Manufacturing Co. Ltd. and Yamada North America, Inc. (together, "Yamada") in *Electronic Powered Steering Assemblies*; and

    gg. Yamashita Rubber Co., Ltd. and YUSA Corporation (together, "Yamashita") in *Anti-Vibrational Rubber Parts*.

12.    Each of the settlements was reached after litigation was well underway and was negotiated by experienced counsel on all sides. The settlements are the result of arm's length negotiations by the parties, some of which took months and involved numerous rounds of discussion. For each proposed settlement before the Court, counsel on each side had a strong understanding of the discovery obtained to date and the claims and defenses asserted.

13.    The Round 3 Settlements involve 29 automotive parts that EPPs contend were the subject of illegal bid rigging and price-fixing ("Settled Parts"). The Round 3 Settling Defendants, relevant case(s), and amounts of the Round 3 Settlements are set forth in the following chart:

| Auto Parts Round 3 Settlements and Settlement Funds | | |
|---|---|---|
| **Round 3 Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** |
| Aisan | Fuel Injection Systems | $4,560,000 |
| ALPHA | Access Mechanisms | $2,698,000 |
| Alps | Heater Control Panels | $3,230,000 |
| Bosch | Fuel Injection Systems | $2,892,560 |
| | Spark Plugs | $28,999,168 |
| | Starters | $1,039,984 |
| | Windshield Wiper Systems | $508,288 |
| Bridgestone | Anti-Vibrational Rubber Parts | $29,640,000 |
| Calsonic | Air Conditioning Systems | $5,153,860.65 |
| | Automatic Transmission Fluid Warmers | $380,366.93 |
| | Radiators | $5,587,612.42 |

8

| Auto Parts Round 3 Settlements and Settlement Funds | | |
|---|---|---|
| **Round 3 Settling Defendant** | **Automotive Parts Case** | **Settlement Fund** |
| Chiyoda | Wire Harness | $1,915,200 |
| Continental | Instrument Panel Clusters | $3,800,000.00 |
| Diamond Electric | Ignition Coils | $5,396,000 |
| Eberspächer | Exhaust Systems | $1,368,000 |
| Faurecia | Exhaust Systems | $1,482,000 |
| HIAMS | Shock Absorbers | $13,300,000 |
| Hitachi Metals | Automotive Brake Hoses | $1,140,000 |
| INOAC | Interior Trim Products | $2,470,000 |
| JTEKT | Automotive Bearings | $43,418,819 |
| | Electric Powered Steering Assemblies | $4,081,181 |
| Kiekert | Side Door Latches | $2,280,000 |
| Koito | Automotive Lamps | $21,654,653.10 |
| | HID Ballasts | $1,335,346.90 |
| MAHLE Behr | Air Conditioning Systems | $1,482,000 |
| MITSUBA | Automotive Lamps | $241,876.05 |
| | Electric Powered Steering Assemblies | $169,313.23 |
| | Fan Motors | $3,664,422.11 |
| | Fuel Injection Systems | $1,378,693.47 |
| | Power Window Motors | $19,180,770.52 |
| | Radiators | $3,664,422.11 |
| | Starters | $9,457,353.43 |
| | Windshield Washer Systems | $1,548,006.70 |
| | Windshield Wiper Systems | $32,895,142.38 |
| Nachi | Automotive Bearings | $3,230,000 |
| NGK Insulators | Ceramic Substrates | $12,160,000 |
| NGK Spark Plugs | Spark Plugs | $12,730,000 |
| Nishikawa | Body Sealings | $37,620,000 |
| NTN | Automotive Bearings | $6,574,000 |
| Sanden | Air Conditioning Systems | $7,600,000 |
| SKF | Automotive Bearings | $7,600,000 |
| Stanley | Automotive Lamps | $12,316,880 |
| | HID Ballasts | $2,883,120 |
| Tenneco | Exhaust Systems | $17,480,000 |
| Toyo | Anti-Vibrational Rubber Parts | $34,343,309 |
| | Automotive Constant-Velocity-Joint Boot Products | $1,756,691 |
| Usui | Automotive Steel Tubes | $5,320,000 |
| Valeo | Access Mechanisms | $760,000 |
| Yamada | Electric Powered Steering Assemblies | $2,356,000 |
| Yamashita | Anti-Vibrational Rubber Parts | $6,080,000 |
| | **Total** | **$432,823,040** |

9

14.     The Court preliminarily approved each of the Round 3 Settlements.  *See* Orders

approving settlements between EPPs and Aisan, *Fuel Injection Systems*, No. 2:13-cv-02203,

ECF No. 274; ALPHA, *Access Mechanisms*, No. 2:16-cv-04103, ECF No. 11; Alps, *Heater

Control Panels*, No. 2:12-cv-00403, ECF No. 246; Bosch, *Windshield Wipers*, No. 2:13-cv-

00903, ECF No. 169; *Starters*, No. 2:13-cv-01103, ECF No. 185; *Fuel Injection Systems*, No.

2:13-cv-02203, ECF No. 299; *Spark Plugs*, No. 2:15-cv-03003, ECF No. 84; Bridgestone, *Anti-

Vibration Rubber Parts*, No. 2:13-cv-00803, ECF No. 223; Calsonic, *Radiators*, No. 2:13-cv-

01003, ECF No. 209; *Automatic Transmission Fluid Warmers*, No. 2:13-cv-02403, ECF No.

126; *Air Conditioning Systems*, No. 2:13-cv-02703, ECF No. 174; Chiyoda, *Wire Harnesses*, No.

2:12-cv-00103, ECF No. 567; Continental, No. 2:12-cv-00203, ECF No. 248; Diamond Electric,

*Ignition Coils*, No. 2:13-cv-01403, ECF No. 173; Eberspächer, *Exhaust Systems*, No. 2:16-cv-

03703, ECF No. 99; Faurecia, *Exhaust Systems*, No. 2:16-cv-03703, ECF No. 101; HIAMS,

*Shock Absorbers*, No. 2:15-cv-03303, ECF No. 41; Hitachi Metals, *Automotive Brake Hoses*, No.

2:16-cv-03603, ECF No. 11; INOAC, *Interior Trim Products*, No. 2:16-cv-03503, ECF No. 18;

JTEKT, *Bearings*, No. 2:12-cv-00503, ECF No. 223; *Electronic Powered Steering Assemblies*,

No. 2:13-cv-01903, ECF No. 169; Kiekert, *Door Latches*, No. 2:17-cv-11637, ECF No. 9; Koito,

*Automotive Lamps*, No. 2:13-cv-01203, ECF No. 90; *HID Ballasts*, No. 2:13-cv-01703, ECF No.

225; MAHLE Behr, *Air Conditioning Systems*, No. 2:13-cv-02703, ECF No. 167; MITSUBA,

*Windshield Wiper Systems*, No. 2:13-cv-00903, ECF No. 113; *Radiators*, No. 2:13-cv-01003,

ECF No. 204; *Starters*, No. 2:13-cv-01103, ECF No. 188; *Automotive Lamps*, No. 2:13-cv-

01203, ECF No. 91; *Electronic Powered Steering Assemblies*, No. 2:13-cv-01903, ECF No. 216;

*Fan Motors*, No. 2:13-cv-02103, ECF No. 102; *Fuel Injection Systems*, No. 2:13-cv-02203, ECF

No. 302; *Power Window Motors*, No. 2:13-cv-2303, ECF No. 124; *Windshield Washer Systems*, No. 2:13-cv-02803, ECF No. 113; NGK Insulators, *Ceramic Substrates*, No. 2:16-cv-11804, ECF No. 39; NGK Spark Plugs, *Spark Plugs*, No. 2:15-cv-03003, ECF No. 86; NTN, *Bearings*, No. 2:12-cv-00503, ECF No. 228; Nachi, *Bearings*, No. 2:12-cv-00503, ECF No. 266; Nishikawa Rubber, *Body Sealing Products*, No. 2:16-cv-10456, ECF No. 26; SKF, *Bearings*, No. 2:12-cv-00503, ECF No. 256; Sanden, *Air Conditioning Systems*, No. 2:13-cv-02703, ECF No. 176; Stanley, *Automotive Lamps*, No. 2:13-cv-01203, ECF No. 97; *HID Ballasts*, No. 2:13-cv-01703, ECF No. 231; Tenneco, *Exhaust Systems*, No. 2:16-cv-03703, ECF No. 108; Toyo, *Anti-Vibrational Rubber Parts*, No. 2:13-cv-00803, ECF No. 219; *Constant Velocity Joint Boot Products*, No, 2:14-cv-02903, ECF No. 54; Usui, *Steel Tubes*, No. 2:16-cv-04003, ECF No. 35; Valeo, *Access Mechanisms*, No. 2:16-cv-04103, ECF No. 12; Yamada, *Electronic Powered Steering Assemblies*, No. 2:13-cv-01903, ECF No. 180; Yamashita, *Anti-Vibrational Rubber Parts*, No. 2:13-cv-00803, ECF No. 164.

15.     Before entering into substantive settlement negotiations with the Round 3 Settling Defendants, Class Counsel had substantial information to help them assess the claims and defenses, the strengths of EPPs' claims, and the scope of the conduct at issue for the particular Defendant(s). This information was gathered from multiple sources including their own investigation, discovery in these cases, public information from the DOJ and other enforcement authorities, cooperating Defendants, and pursuant to their own discussions with the Round 3 Settling Defendants.

16.     In particular, Class Counsel analyzed, among other things, affected volume of commerce attributable to each defendant for those who pleaded guilty to a DOJ Indictment, as well as the fine calculated from that commerce based upon the United States Sentencing

Case 2:12-md-02311-SFC-RSW   ECF No. 2027-14   PageID.37160   Filed 11/09/19   Page 59 of
108
Case 2:15-cv-03303-MOB-MKM   ECF No. 39-7   filed 09/14/18   PageID.4120   Page 19 of 19

Guidelines.   Counsel also analyzed sales and other information from Defendants and third
parties, and academic studies regarding cartel overcharges and typical recoveries.   Based on this
information, Class Counsel believes that the settlements represent a very substantial proportion
of the overcharges suffered by EPPs.

17.   As part of these negotiations, Class Counsel considered the particular Defendant's
conduct, information regarding the estimated amount of commerce affected by that conduct, and
the value of other settlement terms, including the nature of the discovery cooperation offered by
the Round 3 Settling Defendant.

18.   The cooperation provided by Settling Defendants has proven valuable.   In
addition to the Round 1, Round 2, and Round 3 Settlements, EPPs have secured an additional
$47,804,000 in settlements with five defendant families, as well as further additional settlements
to be made public shortly.   EPPs have moved or will soon move for preliminary approval of each
additional public settlement.   EPPs will file their motions to disseminate notice and for final
approval of these settlements at a later date.

19.   Collectively and individually, Class Counsel believe that the Round 3 Settlements
are fair, reasonable, and adequate given the merits of the claims and defenses, the risks
associated with the litigation, and the certainty provided by settlements and early cooperation in
these cases.

20.   Class Counsel believe that the Round 3 Settlements are fair, reasonable, and
adequate for the respective settlement classes they represent.

21.   On March 13, 2018, the Court granted EPPs' Unopposed Motion for
Authorization to Disseminate March 2018 Notice to the End-Payor Plaintiffs Settlement Classes.
*See*, *e.g.*, *Wire Harness*, 12-cv-00103, ECF No. 601.   The March 2018 Notice Order:   (1)

approved the proposed March 2018 Notice Program; (2) approved the long form notice, short (publication) form notice (together, "March 2018 Notices"), and the Claim Form; and (3) authorized EPPs to disseminate the March 2018 Notices and Claim Form and notice of the plan of allocation of the settlement proceeds ("Plan of Allocation")

22.     Pursuant to the March 2018 Notice Order, Class Counsel oversaw the efforts of Kinsella Media, LLC ("Kinsella") and Garden City Group, LLC ("GCG"), the court-appointed class notice expert and claims administrator, respectively, to establish and maintain the comprehensive March 2018 Notice Program, which includes a website, a toll-free telephone number, direct mail, and paid and earned media efforts.  The details of the March 2018 Notice Program are included in the declarations of Brian A. Pinkerton, on behalf of GCG, and Shannon R. Wheatman, on behalf of Kinsella, filed concurrently herewith.

23.     With one exception, each of the Round 3 Settling Defendants has provided EPPs with written notice that they have complied with the notice requirement pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.  It recently came to Class Counsel's attention that the Sanden Defendants inadvertently failed to fulfill their notice obligations under CAFA.  Counsel for Sanden has represented to Class Counsel that it will cause the requisite notice to be disseminated by the end of the week.  In order to ensure compliance with the statute, Class Counsel respectfully request that the Court delay entering final judgment with respect to the Sanden Defendants until 90 days after the Sanden Defendants cause the requisite notice to be disseminated.  Any delay attendant to the Sanden Defendants' oversight should have no impact on the timing of the Court's final approval of the other settlements subject to the Round 3 Settlements.

Case 2:12-md-02311-SFC-RSW ECF No. 2027-14, PageID.37162 Filed 11/29/19 Page 61 of
108
Case 2:15-cv-03303-MOB-MKM ECF No. 93-7 filed 08/14/18 PageID.4122 Page 15 of 19

24.     We declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.


Dated: June 14, 2018             /s/ Hollis Salzman
                                 _____
                                 Hollis Salzman
                                 **ROBINS KAPLAN LLP**


                                 /s/ Marc M. Seltzer
                                 _____
                                 Marc M. Seltzer
                                 **SUSMAN GODFREY L.L.P.**


                                 /s/ Adam J. Zapala
                                 _____
                                 Adam J. Zapala
                                 **COTCHETT, PITRE & McCARTHY, LLP**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | No. 12-md-02311<br>Hon. Marianne O. Battani |

| | |
|---|---|
| IN RE: WIRE HARNESS SYSTEMS | Case No. 2:12-cv-00103 |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203 |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403 |
| IN RE: AUTOMOTIVE BEARINGS | Case No. 2:12-cv-00503 |
| IN RE: ANTI-VIBRATIONAL RUBBER PARTS | Case No. 2:13-cv-00803 |
| IN RE: WINDSHIELD WIPER SYSTEMS | Case No. 2:13-cv-00903 |
| IN RE: RADIATORS | Case No. 2:13-cv-01003 |
| IN RE: STARTERS | Case No. 2:13-cv-01103 |
| IN RE: AUTOMOTIVE LAMPS | Case No. 2:13-cv-01203 |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403 |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703 |
| IN RE: ELECTRIC POWERED STEERING ASSEMBLIES | Case No. 2:13-cv-01903 |
| IN RE: FAN MOTORS | Case No. 2:13-cv-02103 |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203 |
| IN RE: POWER WINDOW MOTORS | Case No. 2:13-cv-02303 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403 |
| IN RE: AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02703 |
| IN RE: WINDSHIELD WASHER SYSTEMS | Case No. 2:13-cv-02803 |
| IN RE: AUTOMOTIVE CONSTANT VELOCITY JOINT BOOT PRODUCTS | Case No. 2:14-cv-02903 |
| IN RE: SPARK PLUGS | Case No. 2:15-cv-03003 |
| IN RE: SHOCK ABSORBERS | Case No. 2:15-cv-03303 |
| IN RE: BODY SEALINGS | Case No. 2:16-cv-03403 & 16-cv-10456 |
| IN RE: INTERIOR TRIM PRODUCTS | Case No. 2:16-cv-03503 |
| IN RE: AUTOMOTIVE BRAKE HOSES | Case No. 2:16-cv-03603 |
| IN RE: EXHAUST SYSTEMS | Case No. 2:16-cv-03703 |
| IN RE: CERAMIC SUBSTRATES | Case Nos. 2:16-cv-03803 & 16-cv-11804 |
| IN RE: AUTOMOTIVE STEEL TUBES | Case Nos. 2:16-cv-04003 & 16-cv-12949 |
| IN RE: ACCESS MECHANISMS | Case No. 2:16-cv-04103 |
| IN RE: SIDE DOOR LATCHES | Case Nos. 2:16-cv-04303 & 2:17-cv-11637 |

| | |
|---|---|
| THIS DOCUMENT RELATES TO:<br>End-Payor Actions | :<br>:<br>:<br>: |

DECLARATION OF
BRIAN A. PINKERTON

### DECLARATION OF BRIAN A. PINKERTON REGARDING MARCH 2018 NOTICE DISSEMINATION AND SETTLEMENT ADMINISTRATION

I, BRIAN A. PINKERTON, declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am an Assistant Director at Garden City Group, LLC ("GCG"). The following statements are based on my personal knowledge and information provided by other experienced GCG employees working under my supervision, and, if called on to do so, I could and would testify competently thereto.

### PROCEDURAL HISTORY

2.    On October 13, 2015, GCG was appointed as the Settlement Administrator[1] pursuant to Paragraph 5 of the Court's Corrected Order Granting End-Payor Plaintiffs' ("EPPs") Motion for Authorization to Disseminate Notice to the End-Payor Plaintiff Settlement Classes ("Initial Notice Order") in connection with the settlements between EPPs and Hitachi Automotive Systems, Ltd. ("HIAMS"), T.RAD Co., Ltd., and T.RAD North America, Inc. (together "T.RAD"). *See, e.g., Alternators*, 2:13-cv-00703, ECF No. 55. The Initial Notice Order (i) approved the initial notice program; and (ii) authorized EPPs to disseminate notice concerning settlements reached with HIAMs and T.RAD ("Initial Notice").

3.    As set forth in the Initial Notice Order, GCG's responsibilities include, among other things: (1) creating and maintaining a toll-free helpline for potential members of the settlement classes; and (2) creating and maintaining a dedicated Settlement Website, which houses pertinent information including important deadlines and answers to frequently asked

---

[1] All capitalized terms not otherwise defined in this document shall have the meaning ascribed to them in the applicable EPP settlement agreements.

DECLARATION OF
BRIAN A. PINKERTON

questions, where individuals can view documents relevant to the Settlements and can register online to have a copy of the long form notice mailed to them directly. GCG's duties also include mailing direct notice to individuals who request direct notice as well as establishing a dedicated P.O. Box for the Settlements and handling mail received, such as objections, exclusion requests, requests for direct notice, and inquiries from potential members of the settlement classes.

4.     On January 13, 2016, Lori L. Castaneda executed a declaration to update the Parties and the Court as to the status of the dissemination of the notice program in connection with EPPs' settlements with HIAMs and T.RAD ("Initial Notice Program"), in compliance with the Initial Notice Order.

5.     On January 26, 2016, the Court entered an Order granting EPPs' Motion for Authorization to Disseminate Combined Notice to the EPP Settlement Classes ("Combined Notice Order"): (i) approving the combined notice program ("Combined Notice Program"); and (ii) authorizing EPPs to disseminate an updated, combined notice ("Combined Notice") concerning settlements reached with nine defendant families and their affiliates, in addition to HIAMs and T.RAD (collectively, "Round 1 Settlements"). *See, e.g., Wire Harness,* 2:13-cv-00103, ECF No. 421;

6.     Similarly, in accordance with the Combined Notice Order, on March 25, 2016, Lori L. Castaneda executed a supplemental declaration reporting on the status of dissemination of the updated long form notice ("Updated Long Form Notice") and updated summary form notice concerning EPPs' settlements with the Defendants included in the Round 1 Settlements.

7.     On October 7, 2016, the Court entered an Order Granting EPPs' Unopposed Motion for Authorization to Disseminate September 2016 Notice and Claim Form to the End-Payor Plaintiffs Settlement Classes ("September 2016 Notice Order") in connection with EPPs'

DECLARATION OF
BRIAN A. PINKERTON

settlements with an additional 12 defendant families and their affiliates (collectively, "Round 2 Settlements"). The September 2016 Notice Order: (i) approved the proposed September 2016 notice program ("September 2016 Notice Program"), long form notice ("September 2016 Long Form Notice"), and summary form notice ("September 2016 Summary Notice") (together, "September 2016 Notice Forms"); (ii) approved the proposed Claim Form ("Claim Form"); and (iii) authorized EPPs to disseminate the Claim Form and September 2016 Notice Forms. *See, e.g., Wire Harness*, Case No. 2:12-cv-00103, ECF No. 535.

8. In compliance with the September 2016 Notice Order, GCG's responsibilities include, but are not limited to: (1) publishing relevant documents on the Settlement Website; and (2) sending direct email or mail notice to those individuals who previously registered on the Settlement Website, notifying them about the Round 2 Settlements and EPPs' plan to distribute proceeds from the Round 1 and 2 Settlements ("Plan of Allocation"), and directing them to visit the Settlement Website to read updated information about the Round 2 Settlements and Plan of Allocation.

9. In accordance with the September 2016 Notice Order, on February 9, 2017, Lori L. Castaneda executed a declaration regarding dissemination of the September 2016 Notice and compliance with the Court's September 2016 Notice Order.

10. Similarly, in accordance with the September 2016 Notice Order, on April 5, 2017, Lori L. Castaneda executed a supplemental declaration to update the Parties and the Court as to the status of GCG's performance of its duties as Settlement Administrator, including handling communications relating to the Settlements, and disseminating notice to potential members of the Settlement Classes in accordance with the Court's September 2016 Notice Order.

11. On March 13, 2018, the Court entered an Order Granting EPPs' Unopposed

DECLARATION OF
BRIAN A. PINKERTON

Motion for Authorization to Disseminate March 2018 Notice to the End-Payor Plaintiffs Settlement Classes ("March 2018 Notice Order") in connection with EPPs' settlements with an additional 32 Defendants and their affiliates (collectively, "Round 3 Settlements"). The March 2018 Notice Order: (i) approved the proposed March 2018 notice program ("March 2018 Notice Program"), long-form notice ("March 2018 Long Form Notice"), and short-form notice ("March 2018 Summary Notice") (together, "March 2018 Notice Forms"); (ii) approved the proposed Claim Form ("Claim Form"); and (iii) authorized EPPs to disseminate the Claim Form and March 2018 Notice Forms. *See, e.g., Wire Harness*, Case No. 2:12-cv-00103, ECF No. 601.

I submit this Declaration, in compliance with Paragraph 8 of the Court's March 2018 Notice Order, to update the Parties and the Court about the status of GCG's performance of its duties as Settlement Administrator, including handling communications relating to the Settlements, receiving and reviewing claims, and disseminating notice to potential members of the Settlement Classes in accordance with the Court's March 2018 Notice Order.

## SETTLEMENT WEBSITE

12.     Pursuant to Paragraph 7 of the Initial Notice Order, GCG established and maintains a website for the Settlements, www.AutoPartsClass.com, to answer frequently asked questions, receive online registrations and claims, as well as provide Settlement information and important deadlines to potential members of the Settlement Classes. Users of the Settlement Website can review documents relevant to the Settlements, including the Initial Notice, Combined Notice, September 2016 Notice, and March 2018 Notice. A list of all of the non-settling Defendants is also available on the Settlement Website as is a list of all of the included auto parts and list of the vehicles that are currently known to be included in the Rounds 1, 2, and 3 Settlements. Visitors to the Settlement Website can also file claims or register to have a copy

DECLARATION OF
BRIAN A. PINKERTON

of the notice mailed directly to them by providing their contact information on the Settlement Website. In connection with the Round 1 and Round 2 Settlements, 87,593 potential members of the Settlement Classes registered or filed claims on the Settlement Website or by contacting GCG directly. As of June 12, 2018, GCG has received 94,940 registrations or claims from potential members of the Settlement Classes who provided their contact information through the Settlement Website or by contacting GCG through other means. The Settlement Website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week.

13. In connection with the September 2016 Notice Order, on November 28, 2016, GCG updated the Settlement Website's online portal so that it receives both registrations and Claim Forms, and updated the front page of the Settlement Website to include a video summary of the Settlements, a drop down menu that allows potential class members to confirm whether they are a member of any of the settlement classes by inputting their Vehicle or replacement part purchase information, an eligibility map, and selections linking the user to the online registration and claims portal.

14. Pursuant to Paragraph 5 of the March 2018 Notice Order, on April 16, 2018, GCG updated the Settlement Website to include the Complaints, Settlement Agreements, and Preliminary Approval Orders applicable to the Round 3 Settlements, as well as the Motion to Disseminate March 2018 Notice, March 2018 Notice, and the March 2018 Notice Order. The previously approved Claim Form and Plan of Allocation are also still available on the Settlement Website.

15. On April 16, 2018, GCG implemented additional updates to the Settlement Website, so that the homepage, frequently asked questions page, court documents page, and the video summary all include information pertaining to the Round 3 Settlements. GCG further

DECLARATION OF
BRIAN A. PINKERTON

Case 2:12-md-02311-SFC-RSW ECF No. 2022-11 PageID.37169 Filed 11/19/19 Page 68 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 93-2 filed 06/14/18 PageID.4129 Page 9 of 16

updated the Settlement Website by adding a list of vehicles included in the Round 3 Settlements on April 23, 2018, the date that the Notice Administrator commenced the media portion of the March 2018 Notice Program. GCG will continue to maintain and update the Settlement Website throughout the administration of the Settlements. As of June 12, 2018, the Settlement Website has received 1,932,134 visits from 1,673,788 unique visitors.

## **TOLL-FREE TELEPHONE NUMBER**

16.     In accordance with Paragraph 7 of the Initial Notice Order, GCG reserved a designated toll-free telephone number, 1-877-940-5043, in order to accommodate inquiries regarding the Settlements. On October 16, 2015, GCG made the toll-free hotline operational with an Interactive Voice Response ("IVR") system. Callers have the ability to listen to important information about the Settlements 24 hours a day, seven days per week. If callers have additional questions or wish to request a copy of the March 2018 Notice or the Claim Form, they also have the ability to speak to a live customer service representative Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m. Eastern Time. In compliance with the March 2018 Notice Order, on April 16, 2018, GCG updated the IVR to notify callers of the Round 3 Settlements. As of June 12, 2018, there have been 24,823 calls to the IVR totaling 135,410 minutes. As of June 12, 2018, GCG fielded 8,675 live calls from potential members of the settlement classes. GCG will continue to maintain and update the IVR throughout the administration of the Settlements.

## **MAILING DIRECT NOTICE**

17.     As part of its role as Settlement Administrator, GCG routinely mails copies of the current version of the long form notice to all individuals who request to have a copy of the notice mailed to them directly. GCG established a secure online registration portal on the dedicated Settlement Website where individuals can enter their contact information and register to have a

DECLARATION OF
BRIAN A. PINKERTON

notice mailed to them.

18.    In connection with the Round 1 and Round 2 Settlements, GCG mailed 67,992 copies of the prior versions of the long form notice to potential members of the Settlement Classes who registered on the Settlement Website or provided their contact information by contacting GCG directly through other means.

19.    As of April 15, 2018, GCG discontinued mailing previous versions of the long form notice, and began mailing the March 2018 Long Form Notice to all individuals who provided their name and address and requested to have a copy mailed to them. As of June 12, 2018, GCG has mailed a total of 917 copies of the March 2018 Long Form Notice to individuals who registered on the Settlement Website to receive one or who requested a copy by contacting the toll-free number or by contacting the Settlement Administrator through other means. As of June 12, 2018, there are 35 additional individuals who have registered to receive notice since the last mailing, and GCG will mail a copy of the March 2018 Long Form Notice to each of them.

20.    As of June 12, 2018, GCG has received three March 2018 Long Form Notices returned by the U.S. Postal Service ("USPS") with forwarding address information. March 2018 Long Form Notices returned by the USPS with forwarding address information were promptly re-mailed to the updated addresses provided.

21.    As of June 12, 2018, GCG has received 22 March 2018 Long Form Notices returned by the USPS without forwarding address information as undeliverable mail. For all notices returned by the USPS without a forwarding address, GCG compares the undeliverable address against the National Change of Address ("NCOA") database maintained by the U.S. Post Office to locate a more current mailing address. When a more current address is located, GCG re-mails the notice to the updated address.

DECLARATION OF
BRIAN A. PINKERTON

Case 2:12-md-02323-SFC-RSW ECF No. 2027-11 PageID.87171 Filed 11/19/19 Page 70 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 93-2 filed 06/14/16 PageID.1132 Page 9 of 16

## NOTICE UPDATE

22.     In accordance with the March 2018 Notice Program, GCG's responsibilities include notifying individuals who previously registered on the Settlement Website about the Round 3 Settlements and Plan of Allocation, and directing them to visit the Settlement Website for updated information about the Round 3 Settlements and Plan of Allocation. In compliance with the March 2018 Notice Order, GCG provided direct notice of the Round 3 Settlements and Plan of Allocation to all individuals who had previously registered on the Settlement Website and were mailed a copy of the Initial Notice, the Updated Long Form Notice, and/or the September 2016 Long From Notice. Direct notice of the Round 3 Settlements and Plan of Allocation was sent by email where a potentially valid email address was available ("Email Notice") and by mail to those individuals who had not provided an email address or whose Email Notice was determined to be undeliverable.

23.     Commencing on April 16, 2018, GCG caused the Email Notice (attached hereto as **Exhibit A**) to be sent to each of the 57,420 individuals who previously registered or filed a claim for whom GCG had a valid email address. Of those 57,420 Email Notices, 46,078 were delivered. 11,342 Email Notices could not be delivered for one or more of the following reasons: the email address no longer existed; the email account was closed inactive, or disabled; the email address had a bad domain name or address error; the recipient's mailbox was full; or the recipient server was busy or unable to deliver.

24.     GCG also prepared and formatted a postcard notice ("Postcard Notice") to be mailed to individuals who previously registered or filed a claim for whom GCG did not have a valid email address or whose attempted Email Notice was undeliverable. On April 16, 2018, GCG disseminated the Postcard Notice to each of the 31,280 individuals for whom GCG did not

have a valid email address but did have a valid mailing address. Attached hereto as **Exhibit B** is a sample of the Postcard Notice that GCG disseminated. As of June 12, 2018, GCG has received 513 postcards returned by the USPS with forwarding address information. Postcards returned by the USPS with forwarding address information were promptly re-mailed to the updated addresses provided. As of June 12, 2018, GCG has received 1,048 postcards returned by the USPS without forwarding address information as undeliverable mail. For postcards returned by the USPS without a forwarding address, GCG compares the undeliverable address against the NCOA database maintained by the U.S. Post Office to locate a more current mailing address. When a more current address is located, GCG re-mails the postcard to the updated address.

**SETTLEMENT P.O. BOX**

25.     On February 19, 2015, GCG reserved a designated P.O. Box for the administration of the Settlements: Auto Parts Settlements, c/o GCG, P.O. Box 10163, Dublin, OH 43017-3163. GCG monitors the Settlement P.O. Box for Settlement-related mail such as objections, exclusion requests, requests for direct notice, inquiries about the Settlements, and the submission of Claim Forms and supporting documents. GCG promptly handles all mail received at the Settlement P.O. Box.

**EXCLUSIONS**

26.     Pursuant to Paragraph 10 of the March 2018 Notice Order, individuals who wish to exclude themselves from any or all of the Round 3 Settlement Classes are required to submit a written request for exclusion, received no later than July 13, 2018, to the Settlement Administrator. As of June 12, 2018, GCG has not received any requests for exclusion from Round 3 Settlements.

///

DECLARATION OF
BRIAN A. PINKERTON

## **OBJECTIONS**

27.     Pursuant to Paragraph 11 of the March 2018 Notice Order, in order to object to one or more of the Round 3 Settlements or to the Plan of Allocation, a member of the Round 3 Settlement Classes must submit a written objection to both the Settlement Administrator and the Court, received no later than July 13, 2018. As of June 12, 2018, GCG has not received any objections to Round 3 Settlements and/or Plan of Allocation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 13th day of June 2018, in Seattle, Washington.

_____
Brian A. Pinkerton

DECLARATION OF
BRIAN A. PINKERTON

Case 2:12-md-02311-SFC-RSW   ECF No. 2027-14   PageID.37174   Filed 11/19/19   Page 73 of
108
Case 2:15-cv-03003-MOB-MKM   ECF No. 93-7   filed 06/14/18   PageID.4134   Page 12 of 10

# Exhibit A

**From:**      DoNotReply-autopartsclass @tgcginc.com
**To:**
**Subject:**      Auto Parts Settlements Update
**Date:**

### SETTLEMENTS NOW TOTAL APPROXIMATELY $1.04 BILLION.
### FILE A CLAIM NOW!

You are receiving this email because you registered to receive updated information about the Automotive Parts Antitrust Litigation Settlements.

Thirty-three defendant groups have agreed to additional Settlements resolving claims that they fixed the price of certain vehicle components. A new Settlement Notice is available for your review on the website, www.AutoPartsClass.com.

People or entities that reside in 30 states and the District of Columbia that bought or leased a qualifying new vehicle or bought a qualifying replacement part since 1995, may now submit a Claim Form online or by mail to get a payment.

You can file a claim now. Submitting a claim is easy. Click on the link below to file a claim. If you already filed a claim, you do not need to submit another claim for the same vehicle (or part) to get a payment.

### FILE A CLAIM

If you wish to UNSUBSCRIBE from future email messages from the Settlement Administrator with regard to the Automotive Parts Antitrust Litigation Settlements, please click on this link.

# Exhibit B

Auto Parts Settlement
c/o GCG
P.O. Box 10163
Dublin, OH 43017-3163

## Update: Auto Parts Settlements Total Approximately $1.04 Billion

1234567890

Claimant ID: MMMMM011111111

Control No: 1234567890

JANE CLAIMANT
123 4TH AVE
APT 5
SEATTLE, WA  67890

# You Could Get Money from Auto Parts Settlements

## *File a Claim Now*

| **What is This About?** | You are receiving this notice because you registered to receive updated information about the Automotive Parts Antitrust Litigation Settlements. You can file a claim now if you qualify. |
| --- | --- |
| | If you already filed a claim, you do not need to file one again for the same vehicle or part to get a payment. |
| | Thirty-three defendant groups have agreed to new Settlements resolving claims that they fixed the price of certain vehicle components. A new Settlement Notice is now available for your review on the website, www.AutoPartsClass.com. |

| **How to File a Claim?** | **Submitting a claim is easy.  Go to www.AutoPartsClass.com to file a claim online.  You can also file a claim by mail.** |
| --- | --- |

## **For More Info or a Claim Form:**

### **www.AutoPartsClass.com    1-877-940-5043**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | No. 12-md-02311<br>Hon. Marianne O. Battani |

| | |
|---|---|
| IN RE: WIRE HARNESS SYSTEMS | Case No. 2:12-cv-00103 |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203 |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403 |
| IN RE: AUTOMOTIVE BEARINGS | Case No. 2:12-cv-00503 |
| IN RE: ANTI-VIBRATIONAL RUBBER PARTS | Case No. 2:13-cv-00803 |
| IN RE: WINDSHIELD WIPER SYSTEMS | Case No. 2:13-cv-00903 |
| IN RE: RADIATORS | Case No. 2:13-cv-01003 |
| IN RE: STARTERS | Case No. 2:13-cv-01103 |
| IN RE: AUTOMOTIVE LAMPS | Case No. 2:13-cv-01203 |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403 |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703 |
| IN RE: ELECTRIC POWERED STEERING ASSEMBLIES | Case No. 2:13-cv-01903 |
| IN RE: FAN MOTORS | Case No. 2:13-cv-02103 |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203 |
| IN RE: POWER WINDOW MOTORS | Case No. 2:13-cv-02303 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403 |
| IN RE: AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02703 |
| IN RE: WINDSHIELD WASHER SYSTEMS | Case No. 2:13-cv-02803 |
| IN RE: AUTOMOTIVE CONSTANT VELOCITY JOINT BOOT PRODUCTS | Case No. 2:14-cv-02903 |
| IN RE: SPARK PLUGS | Case No. 2:15-cv-03003 |
| IN RE: SHOCK ABSORBERS | Case No. 2:15-cv-03303 |
| IN RE: BODY SEALINGS | Case No. 2:16-cv-03403<br>2:16-cv-10456 |
| IN RE: INTERIOR TRIM PRODUCTS | Case No. 2:16-cv-03503 |
| IN RE: AUTOMOTIVE BRAKE HOSES | Case No. 2:16-cv-03603 |
| IN RE: EXHAUST SYSTEMS | Case No. 2:16-cv-03703 |
| IN RE: CERAMIC SUBSTRATES | Case No. 2:16-cv-03803<br>2:16-cv-11804 |
| IN RE: AUTOMOTIVE STEEL TUBES | Case No. 2:16-cv-04003<br>2:16-cv-12949 |
| IN RE: ACCESS MECHANISMS | Case No. 2:16-cv-04103 |
| IN RE: SIDE DOOR LATCHES | Case No. 2:16-cv-04303<br>2:17-cv-11637 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

## DECLARATION OF SHANNON R. WHEATMAN, PH.D. ON IMPLEMENTATION OF THE MARCH 2018 NOTICE PROGRAM

I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

1.      I am president of Kinsella Media, LLC ("Kinsella"), an advertising and notification consulting firm in Washington, D.C. specializing in the design and implementation of notification programs.

2.      I declare that I have personal knowledge of the matters set forth herein, and if called upon to testify thereto, could do so competently.  I make this declaration pursuant to 28 U.S.C. § 1746.

3.      I submit this declaration in connection with the above referenced matter, *In re Automotive Parts Antitrust Litigation*.  Katherine Kinsella, founder and former president of Kinsella, previously submitted a declaration executed September 3, 2015, outlining the firm's and my credentials.  I previously submitted a declaration describing the March 2018 Notice Program designed by Kinsella ("March 2018 Notice Program Declaration").  The Court subsequently approved the March 2018 Notice Program on March 13, 2018.  This declaration describes the implementation of the March 2018 Notice Program and measures taken to provide the best notice practicable under the circumstances for the Round 3 Settlements.

4.      This declaration is based upon my personal knowledge and upon information provided by Settlement Class Counsel and my associates and staff.  The information is of a type reasonably relied upon in the fields of advertising, media, and communications.

5.      Each element of these Notice Programs[1] was implemented by Kinsella and Garden City Group ("GCG").

---

[1]  The March 2018 Notice Program is referred to collectively with the Initial Notice Program, Combined Notice Program, and September 2016 Notice Program as the "Notice Programs."

## **March 2018 Notice Program Overview**

6.       The Court-approved March 2018 Notice Program, designed and implemented for this case, achieved each of the planned objectives.

7.       All persons or businesses that purchased or leased one of the categories of vehicles[2] or replacement parts described in the Notice Programs were placed on notice that they may be members of the Round 3 Settlement Classes, and they should come forward or object or exclude themselves as they see fit.  No potential claimant has ever been required to identify what part was in his or her vehicle to object or opt out, and no objection has ever been rejected on that basis.

8.       In my opinion, the March 2018 Notice Program provided the best notice practicable under the circumstances of this case and satisfied due process.  The details of the March 2018 Notice Program and the basis for my opinion on its adequacy are outlined below.

9.       The following four-part notice program was designed and implemented:

a.       Individual notice to website registrants;

b.       Broad notice through the use of paid media, including magazines, newspaper supplements, a national newspaper, trade publications, trade organization websites, and Internet advertising;

c.       Earned media through a national multimedia news release, statewide press releases, and media outreach; and

d.       Electronic notice through an informational website listed with major search engines.

---

[2]  In general, qualifying vehicles include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles.

Case 2:12-md-02311-SFC-RSW ECF No. 2027-1 PageID.37182 Filed 11/12/19 Page 81 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 93-3 filed 06/14/18 PageID.1142 Page 2 of 31

### *Individual Notice*

10.     As set forth in the "Declaration of Brian A. Pinkerton Regarding March 2018 Notice Dissemination and Settlement Administration" ("Pinkerton Decl."), beginning April 16, 2018, the Settlement Administrator, GCG, caused an email alert to be sent to those individuals who previously registered on the Settlement Website, www.AutoPartsClass.com, and who provided a valid email address.  Pinkerton Decl. ¶ 23.  The email alert notified potential members of the settlement classes ("Round 3 Settlement Class Members") about the Round 3 Settlements and directed them to visit the website to read updated information or file a claim. *Id.*  On April 16, 2018, GCG caused to be mailed a postcard alert to potential Round 3 Settlement Class Members who provided only a mailing address and those whose attempted email alert bounced back as undeliverable. *Id.* ¶ 24.

### *Paid Media*

11.     The paid media portion of the March 2018 Notice Program was designed to provide notice of the Round 3 Settlements to potential Round 3 Settlement Class Members.  The paid media was, in accordance with best practices, designed by choosing a target audience that encompasses the characteristics of Round 3 Settlement Class Members.

12.     As described in the March 2018 Notice Program Declaration, Kinsella used GfK MediaMark Research, Inc.'s ("GfK MRI") *2017 Doublebase Study*[3] to select a target audience. The target audience selected was adults 18 years of age or older who currently own or lease a new motor vehicle ("New Vehicle Owners/Lessees").  New Vehicle Owners/Lessees are measured in

---

[3] GfK MRI produces the annual *Doublebase Survey*, a study of over 50,000 adults consisting of two full years of data. The sample consists of over 26,000 respondents.  Fieldwork is done in two waves per year, each lasting six months and consisting of 13,000 interviews.  At the end of the interview, the fieldworker presents a self-administered questionnaire that measures approximately 500 product/service categories, 6,000 brands, and various lifestyle activities.

Case 2:12-md-02311-SFC-RSW ECF No. 2023-11 PageID.37183 Filed 11/19/19 Page 82 of
Case 2:15-cv-03003-MOB-MKM ECF No. 93-3 filed 06/14/18 PageID.1143 Page 9 of 31
108

GfK MRI; however, fleet owners and replacement part purchasers are not measured in the survey data.

13.     As indicated in the March 2018 Notice Program Declaration, the target audience of New Vehicle Owners/Lessees is still appropriate because it is highly likely that fleet owners and replacement part purchasers (or their households) personally purchased or leased a new Vehicle during the relevant class periods.   In addition, supplemental paid media opportunities were included in the March 2018 Notice Program to target fleet owners.

14.     Kinsella utilized media outlets based on their ability to provide effective and efficient penetration of the target audience.  Further details are available in the detailed Notice Program document filed with my March 2018 Notice Program Declaration.

15.     The Publication Notice appeared in the following consumer magazines: *ESPN The Magazine*, *People*, *Reader's Digest*, and *Motor Trend*.

16.     The Publication Notice appeared in the following newspaper supplements: *Relish* and *Parade*.

17.     To specifically reach fleet owners, the Publication Notice appeared in the following national newspaper and trade publications, respectively: *The Wall Street Journal*, *Automotive News*, and *Automotive Fleet*.[4]

18.     In addition to published notice, Kinsella used Internet banner advertising to provide Round 3 Settlement Class Members with additional notice opportunities beyond the print placements.  The banner advertisement was designed to alert potential Round 3 Settlement Class Members to the Round 3 Settlements through the use of a bold message and graphics.  The simple

---

[4] The Publication Notice appeared in color in *Automotive Fleet*.  When Kinsella contacted this publication, they offered to publish the Publication Notice in color at no additional charge.

Case 2:12-md-02311-SFC-RSW ECF No. 2027-11 PageID.37184 Filed 11/19/19 Page 83 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 293-3 filed 06/14/18 PageID.11449 Page 8 of 31

message enabled potential Round 3 Settlement Class Members to quickly determine if they might
be affected by the Round 3 Settlements. When visitors clicked on the banner advertisement, they
were connected directly to the Settlement Website. Samples of the banner advertisements as they
appeared on several websites are attached as **Exhibit 1**.

19.     Banner advertisements appeared on the following networks between April 23,
2018, and May 31, 2018: *Collective* (now known as *Zeta Global*), *Conversant*, *Facebook*, *Oath,*
and *Xaxis*. Each network partners with thousands of websites to distribute online advertisements
across their network. The banner advertisements ran across the partner websites, and 328,183,941
total gross impressions[5] were delivered.

20.     To specifically reach fleet owners, banner advertisements appeared for one month
on the National Association of Fleet Administrators ("NAFA") website (www.nafa.org) and the
website for the trade magazine *Auto Rental News* (www.autorentalnews). They also appeared in
the NAFA electronic newsletters ("eNewsletters") that were released on May 7, 2018, and May
21, 2018, respectively.[6]

21.     Targeted Internet advertising was also used to reach potential Round 3 Settlement
Class Members across different ad networks and publisher websites, and through Facebook and
LinkedIn. Banner ads were targeted to reach specific car owners; individuals interested in
automotive topics, car parts or repair; individuals who purchased automotive products and
aftermarket accessories; and individuals who clicked on previous banner ads for these or the prior
Settlements or previously visited the litigation website.

---

[5] *Gross impressions* are the total number of times a form of media containing the Notice is seen. This figure does not
represent the total number of unique viewers of the Notice, as some viewers/readers will see the Notice in more than
one media vehicle.
[6] When Kinsella contacted NAFA to place the banner advertising on the NAFA website, NAFA offered to include the
banner advertisement in their eNewsletters for no additional charge.

Case 2:12-md-02311-SFC-RSW ECF No. 2027-11 PageID.37185 Filed 11/19/19 Page 84 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 93-3-11 filed 06/14/18 PageID.1149 Page 9 of 31

22.     Kinsella used a third-party ad management platform, Sizmek, to audit the digital
portion of the Notice Program.  The digital campaign that Kinsella designed, planned, and
implemented measured impressions across all platforms for accuracy.

23.     An Implementation Report for the March 2018 Notice Program is attached as
**Exhibit 2** and confirms that the Court-approved March 2018 Notice Program was implemented.
The report details each print publication and the date and page number upon which the Publication
Notice appeared.  The report confirms that Kinsella has received a true and correct copy of the
advertisement, or "tearsheet," from each publication.  The report also details the delivered gross
impressions for the Internet advertisements.[7]

### Effectiveness of March 2018 Notice Program

24.     The *reach*[8] and *frequency*[9] of the March 2018 Notice Program were measured
against the target audience to evaluate the strength and efficiency of the paid media (magazine,
newspaper supplements, newspaper, and Internet advertising).  The March 2018 Notice Program
delivered an estimated reach of 80.5% of New Vehicle Owners/Lessees with an average frequency
of 2.9 times.[10]  In my opinion, the March 2018 Notice Program adequately reached individual car
owners/lessees, replacement part purchasers, and fleet owners.

### Earned Media

25.     The March 2018 Notice Program featured an earned media program to amplify the
paid media.  All materials contained a message that highlighted the benefits of the Round 3

---

[7] Copies of the notices as they appeared in each publication are available to the Court upon request.

[8] *Reach* is the estimated percentage of a target audience that is exposed one or more times through a specific media outlet or combination of media outlets within a given period.

[9] *Frequency* is the estimated average number of opportunities an audience member has to see the notice.

[10] The trade publications (*Automotive News* and *Automotive Fleet*), Internet advertising on the NAFA and *Auto Rental News* websites, and Targeted Internet advertising are not measured for this target audience, so their contribution to the overall reach of the media is not calculated.

Settlements, encouraged potential Round 3 Settlement Class Members to file a claim, and featured the toll-free telephone number and website address that Round 3 Settlement Class Members could visit for complete information. The earned media program included:

a.    A multimedia news release ("MNR") distributed on PR Newswire's US1 National Circuit on April 23, 2018. The release can be viewed at www.multivu.com/players/English/8262551-auto-parts-class-action/. As of June 14, 2018, the release generated 250 postings of the full text of the release which resulted in a potential audience of 115,507,270.[11] The MNR received over 13,708 views. A total of 152 journalists engaged with the MNR. This engagement contributed to coverage of the Round 3 Settlements in major news outlets.

b.    Statewide press releases distributed on PR Newswire in the 30 states and the District of Columbia (in which End-Payor Plaintiffs have asserted damages claims) on April 23, 2018.

c.    Media outreach to targeted media outlets to solicit their interest in the story and generate free media coverage beginning on April 16, 2018. A media pitch team conducted outreach to 275 national and local reporters for print and television outlets that focus on automotive, law, and consumer interest stories. This outreach generated 12 unique stories, including features on *Rubber & Plastics News*, *North Carolina Lawyers Weekly*, and *South Carolina Lawyers Weekly*, as well as nearly 20 social media posts. Media outreach will continue through July 13, 2018.

---

[11] Exact matches are full text postings of the content found online and in social media.

**Electronic Notice**

26.     As further set forth in the Pinkerton Decl., GCG, updated the Settlement Website at www.AutoPartsClass.com to enable potential Round 3 Settlement Class Members to get current information on the Round 3 Settlements, file a claim, and/or register for future information. Pinkerton Decl. ¶ 14-15.

27.     Beginning on April 23, 2018, Kinsella registered sponsored keywords and phrases (*e.g.*, "Auto Parts Settlement") with all major search engines, including: Google AdWords, Bing Microsoft Advertising, and their search partners.  When a user searched for one of the specified search terms or phrases, sponsored links may have appeared on the results page.  For example, Google showed pages and ads in response to the keywords that were typed in the search box.  The keyword advertisement then directed potential Round 3 Settlement Class Members to the Settlement Website.

**Other**

28.     GCG updated the answers to the frequently asked questions on the toll-free phone number. Pinkerton Decl. ¶ 16.

29.     More specific information about the administration components is included within the Pinkerton Decl.

**Performance and Design of Notice Plan**

30.     ***Objectives were met.***  The primary objective of the March 2018 Notice Program in this case was to effectively reach the greatest practicable number of Round 3 Settlement Class Members with "noticeable" Notices of the Round 3 Settlements and provide them with every reasonable opportunity to understand that their legal rights are affected.  This objective was successful.

Case 2:12-md-02311-SFC-RSW ECF No. 2023-14 PageID.37188 Filed 11/19/19 Page 87 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 923-14 filed 08/14/18 PageID.4148 Page 10 of 31

31. ***The Notice reached Class Members effectively.*** The March 2018 Notice Program, as implemented, reached approximately 80.5% of potential Round 3 Settlement Class Members. Although not included in the reach percentage above, the Settlement Website, trade publication advertising, Internet advertising on the NAFA and *Auto Rental News* websites, Targeted Internet advertising, and earned media and outreach efforts further enhanced coverage among the potential Round 3 Settlement Class Members. Based on our calculations, I can confidently state that the potential Round 3 Settlement Class Members were adequately reached with notice of the Round 3 Settlements.

32. ***Notices were designed to increase noticeability and comprehension.*** The Court-approved Notices were designed to get the attention of Round 3 Settlement Class Members by, for example, including bold and informative headlines. After the Notices caught the interest of the Round 3 Settlement Class Members, it was critical that they could understand the content.

33. The Publication Notice was worded with simple, plain language text to encourage readership and comprehension. No important or required information was missing or omitted. The Notice refers readers to the availability of more information via the website or toll-free number.

34. The Long Form Notice was available via the website or the toll-free number. The Long Form Notice provided substantial information, including specific instructions Round 3 Settlement Class Members needed to follow to properly exercise their rights and background on the issues in the case. This Notice was designed to encourage readership and understanding with a well-organized and reader-friendly design. The question and answer format made it easy for Round 3 Settlement Class Members to find answers to common questions.

35.     The final appearance of the Publication Notice was on May 25, 2018, which allowed plenty of time for members of the Round 3 Settlement Classes to see the Notice and respond accordingly before the July 13, 2018, exclusion and objection deadlines.  This timing ensures that Round 3 Settlement Class Members are allotted more than adequate time to act on their rights.

### <u>Conclusion</u>

36.     The March 2018 Notice Program effectively reached an estimated 80.5% of New Vehicle Owners/Lessees and provided an estimated average of 2.9 opportunities to see the Notice. Although not included in the reach percentage, the trade publication advertising, Internet advertising on the NAFA and *Auto Rental News* websites, Targeted Internet advertising, earned media and outreach efforts, and the Settlement Website provided other opportunities for potential Round 3 Settlement Class Members to learn and obtain information about the Round 3 Settlements.

37.     It is my opinion that the reach of the target audience, number of exposure opportunities to the notice information, and content of the Notices was adequate and reasonable under the circumstances.  It is consistent with the standards employed by Kinsella in notification programs designed to reach class members.  The March 2018 Notice Program, as designed and implemented, is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Souderton, PA this 14th day of June 2018.

Shannon R. Wheatman, Ph.D.

Case 2:12-md-02311-SFC-RSW ECF No. 2027-14 PageID.37196 Filed 11/19/19 Page 89 of
108
Case 2:15-cv-03003-MOB-MKM ECF No. 99-3 filed 08/14/18 PageID.4150 Page 12 of 31

# EXHIBIT 1

# Timeanddate.com: Leaderboard



# Xe.com: Halfpage



# Carsoup.com: Rectangle



# Cooks.com: Skyscraper



300X250



300X600



# 728X90







# Important News

### NAFA's New Institute & Expo Conference Website Focuses on User Experience

NAFA Fleet Management Association, the vehicle fleet industry's largest trade association, launches an all-new NAFAInstitute.org website for the Association's annual conference, the Institute & Expo (I&E). Key additions to the site offer easier access to information with customization options, intuitive navigation, and exclusive, first-look access to I&E details.

# Upcoming Events

**MAY 16** Essential KPIs All Fleet Managers Need To Track

**JUN 06** Leveraging your Fleet Telematics data for Insurance Savings

## Wheels, Inc. to Offer Uber to Fleet Customers

May 3, 2018 in Rental Operations

Wheels, Inc. will begin offering commercial fleet clients access to Uber for Business to allow drivers to utilize the ride-hailing service and centralizing billing of the trips.

Read more...

## Avis Sues for Vehicle Damage, Breach of Contract

May 3, 2018 in Rental Operations



Avis is seeking payment for the damages, attorney fees, and court costs.

Read more...

## Toronto Approves Carsharing Pilot Program

May 3, 2018 in Rental Operations, Green Fleet



reality to theory, peer-to-peer platforms are being redefined, China has the biggest room for growth, while Sixt's U.S. aspirations have only just begun.

### The Irony of Customer Service in the Digital Age

Sure, any company would jump at the chance to use technology to reduce labor costs. But it also comes with some big, red, flashing warning lights.

view all posts



### Popular Tags

Airport Rentals  Avis  Avis Budget Group  Awards  Battery-Electric Vehicles  Carsharing  Customer Service  Dollar Thrifty Automotive Group  Enterprise Holdings  Enterprise Rent-A-Car  Financial Report  Hertz  International Rentals  Mobile Apps  Rental Rates  Ride-Hailing  Sixt  Travel Industry  Used Vehicle Values  Zipcar

view all tags

RAISING STANDARDS FOR CUSTOMER SERVICE AT THE RENTAL CAR COUNTER



The Auto Rental Industry's Only International Certification Program

### Job Finder



Access Top Talent. Fill Key Positions.



› Fleet Experimentation Planner, Senior in Norfolk, VA at Booz Allen Hamilton

Norfolk, VA
Booz Allen Hamilton

Offshore Fleet Manager

Kinsella Media Washington DC : 160x600
Site : Bmwblog.com







Kinsella Media Washington DC : 300x600
Site : Autoworldnews.com



Kinsella Media Washington DC : 300x250
Site : Autoguide.com





Kinsella Media Washington DC : 728x90
Site : Autoweek.com







**Placement:** Class Action Lawsuit | Kinsella Media-AutoParts-4 2018 | MultiScreen Display

**Site:** Road & Track

### Screenshot



### Advertiser Ad



### Advertiser Landing Page



2017 Zeta Global Proprietary & Confidential

1

**Placement:** Class Action Lawsuit | Kinsella Media-AutoParts-4 2018 | MultiScreen Display



**Site:** Time

Screenshot　　　　　　　　　　　　　　Advertiser Ad

Advertiser Landing Page

2017 Zeta Global Proprietary & Confidential

# EXHIBIT 2

Case 2:12-md-02311-SFC-RSW ECF No. 2027-11 PageID.37208 Filed 11/19/19 Page 107 of
Case 2:15-cv-03003-MOB-MKM ECF No. 93-6 filed 06/14/18 PageID.4163 Page 30 of 31
108

**Implementation Report**

*In re Automotive Parts Antitrust Litigation* - Round 3
June 7, 2018



| Media | | | | | |
|---|---|---|---|---|---|

| **Print Media** | | | | | |
|---|---|---|---|---|---|
| | Unit Type/Size | Issue Date | Date Ad(s) Ran | Page # of Ad | Tearsheet Received |
| **Magazines** | | | | | |
| *ESPN The Magazine* | Half Page (3.875" x 11") | 4-Jun | 25-May | 77 | Yes |
| *People* | Half Page (3.375" x 10") | 14-May | 4-May | 43 | Yes |
| *People* | Half Page (3.375" x 10") | 21-May | 11-May | 62 | Yes |
| *Reader's Digest* | Full Page (4.687" x 6.75") | June | 16-May | 101 | Yes |
| *Motor Trend* | Half Page (6.875" x 4.813") | July | 25-May | 105 | Yes |
| | | | | | |
| **Newspaper - National** | | | | | |
| *Wall Street Journal* | 1/6 Page (5.35" x 7") | 2-May | 2-May | B2 | Yes |
| **Newspaper Supplements** | | | | | |
| *Relish* | Digest (4.562" x 6.562") | May | 1-May | 13 | Yes |
| *Parade* | 2/5 Page (4.562" x 6.562") | 6-May | 6-May | 8 | Yes |
| **Trade Magazines** | | | | | |
| *Automotive Fleet* | Full Page (7" x 10") | May | 2-May | 55 | Yes |
| *Automotive News* | Half Page (5.4375" x 10") | 7-May | 7-May | 26 | Yes |

| **Online Media** | | |
|---|---|---|

| **Trade Websites** | | Status |
|---|---|---|
| Auto Rental News | Banners | Completed |
| www.NAFA.org | Banners | Completed |

| | Ad Type/Size | Est. Delivered Impressions |
|---|---|---|
| **Web** | | 328,183,941 |
| Collective | 728x90, 300x250, 160x600 | |
| Conversant | 728x90, 300x250, 160x600 | |
| Facebook | 254x133 | |
| Oath | 728x90, 300x250, 160x600 | |
| Xaxis | 728x90, 300x250, 160x600 | |

| **Online Media - Targeted Internet** | Ad Type/Size | Est. Delivered Impressions |
|---|---|---|
| **Web** | | 64,334,842 |
| Look A Like Targeting | 728x90, 300x250, 160x600, 300x600 ; 30s Video | |
| Advanced Third-Party Data Targeting | 728x90, 300x250, 160x600, 300x600 ; 30s Video | |
| Channel Targeting | 728x90, 300x250, 160x600, 300x600 ; 30s Video | |
| Behavioral Targeting | 728x90, 300x250, 160x600, 300x600 ; 30s Video | |
| Past Purchase | 728x90, 300x250, 160x600, 300x600 ; 30s Video | |
| Re-Targeting | 728x90, 300x250, 160x600, 300x600 ; 30s Video | |

**Social Media - Targeted Internet**

| | Ad Type/Size | Status |
|---|---|---|
| **Web** | | |
| Facebook | Text and Image | Completed |
| LinkedIn | Text and Image | Completed |

**Earned Media and Outreach**

| | Status |
|---|---|
| Keyword Search Campaign | Ongoing - until July 13, 2018 |
| Multimedia News Release | Completed (Issued April 23, 2018) |
| Statewide Press Releases | Completed (Issued April 23, 2018) |
| Media Outreach & Pitching | Ongoing - until July 13, 2018 |