# EXHIBIT 12

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| | : | |
| In Re: Wire Harness Systems | : | Case No. 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : | Case No. 2:12-cv-00203 |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00403 |
| In Re: Automotive Bearings | : | Case No. 2:12-cv-00503 |
| In Re: Anti-Vibrational Rubber Parts | : | Case No. 2:13-cv-00803 |
| In Re: Windshield Wipers | : | Case No. 2:13-cv-00903 |
| In Re: Radiators | : | Case No. 2:13-cv-01003 |
| In Re: Starters | : | Case No. 2:13-cv-01103 |
| In Re: Automotive Lamps | : | Case No. 2:13-cv-01203 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01403 |
| In Re: HID Ballasts | : | Case No. 2:13-cv-01703 |
| In Re: Electronic Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In Re: Fan Motors | : | Case No. 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In Re: Power Window Motors | : | Case No. 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : | Case No. 2:13-cv-02403 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : | Case No. 2:13-cv-02803 |
| In Re: Constant Velocity Joint Boot Products | : | Case No. 2:14-cv-02903 |
| In Re: Spark Plugs | : | Case No. 2:15-cv-03003 |
| In Re: Shock Absorbers | : | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | : | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | : | Case No. 2:16-cv-03503 |
| In Re: Automotive Break Hoses | : | Case No. 2:15-cv-03603 |
| In Re: Exhaust Systems | : | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-03803 |
| In Re: Automotive Steel Tubes | : | Case No. 2:16-cv-04003 |
| In Re: Access Mechanisms | : | Case No. 2:16-cv-04103 |
| In Re: Side Door Latches | : | Case No. 2:17-cv-11637 |
| | : : | |
| THIS DOCUMENT RELATES TO: | : | |
| END-PAYOR ACTIONS | : | |

## ORDER GRANTING FINAL APPROVAL

## TO THE ROUND 3 SETTLEMENTS

Before the Court are End-Payor Plaintiffs' ("EPPs") motions for final approval of settlements with certain defendants described below. Pursuant to notice given to the Settlement Classes[1] in accordance with the Court's orders, a hearing was held on EPPs' motions on August 1, 2018, and at the conclusion of the hearing, the Court granted EPPs' motions. For the reasons stated by the Court at the hearing and as provided in this Order, the Court finds the settlements provide an excellent result for each of the Settlement Classes given, among other factors, the substantial risks of litigation and that each of the settlements is fair, reasonable, and adequate to the respective Settlement Classes. Although described collectively in this Order for purposes of administrative convenience, each settlement is independent of the others and this Order applies separately to each of the settlements. This Order will accordingly be separately entered as an order in each specific case docket to which it applies.

## I.    BACKGROUND

These actions arise from alleged conspiracies amongst the automotive industry's largest manufacturers, marketers, and sellers of numerous component parts to fix the prices, rig bids, and allocate the markets and customers in the United States for their products. EPPs assert claims for relief under the Sherman Antitrust Act, 15 U.S.C. § 1, and various state antitrust, unjust enrichment, and consumer protection laws.

The Court preliminarily approved each of the settlements (referred to herein as the "Round 3 Settlements") in separate orders of the Court. The Round 3 Settlements were made with thirty-three defendants and their affiliates (collectively, "Settling Defendants") named in twenty-nine cases involving different component parts (the "Settled Parts"). The Settling

---

[1]  Defined terms not otherwise defined herein shall have the meanings ascribed to those terms as noted in Plaintiffs' Motion for Final Approval of the Round 3 Settlements and the papers associated with that motion.

Defendants are: (1) Aisan Industry Co., Ltd., Franklin Precision Industry, Inc., Aisan Corporation of America, and Hyundam Industrial Co., Ltd. (collectively, "Aisan"); (2) ALPHA Corporation and Alpha Technology Corporation (collectively, "ALPHA"); (3) Alps Electric Co., Ltd., Alps Electric (North America), Inc., and Alps Automotive Inc. (collectively, "Alps"); (4) Robert Bosch GmbH and Robert Bosch LLC (collectively, "Bosch"); (5) Bridgestone Corporation and Bridgestone APM Company (collectively, "Bridgestone"); (6) Calsonic Kansei Corporation and Calsonic Kansei North America, Inc. (collectively, "Calsonic"); (7) Chiyoda Manufacturing Corporation and Chiyoda USA Corporation (collectively, "Chiyoda"); (8) Continental Automotive Electronics LLC, Continental Automotive Korea Ltd., and Continental Automotive Systems, Inc. (collectively, "Continental"); (9) Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corporation (collectively, "Diamond Electric"); (10) Eberspächer Exhaust Technology GmbH & Co. KG and Eberspächer North America Inc. (collectively, "Eberspächer"); (11) Faurecia Abgastechnik GmbH, Faurecia Systèmes d'Échappement, Faurecia Emissions Control Technologies, USA, LLC, and Faurecia Emissions Control Systems, N.A. LLC f/k/a Faurecia Exhaust Systems, Inc. (collectively, "Faurecia"); (12) Hitachi Automotive Systems, Ltd. ("HIAMS"); (13) Hitachi Metals, Ltd., Hitachi Cable America Inc., and Hitachi Metals America, Ltd. (collectively, "Hitachi Metals"); (14) INOAC Corporation, INOAC Group North America, LLC, and INOAC USA Inc. (collectively, "INOAC"); (15) JTEKT Corporation, JTEKT Automotive North America, Inc., and JTEKT North America Corp. (formerly d/b/a Koyo Corporation of U.S.A.) (collectively, "JTEKT"); (16) Kiekert AG and Kiekert U.S.A., Inc. (collectively, "Kiekert"); (17) Koito Manufacturing Co., Ltd. and North American Lighting, Inc. (collectively, "KOITO"); (18) MAHLE Behr GmbH & Co. KG and MAHLE Behr USA Inc. (collectively, "MAHLE Behr"); (19) MITSUBA Corporation and

American Mitsuba Corporation (collectively, "MITSUBA"); (20) Nachi-Fujikoshi Corp. and Nachi America Inc. (collectively, "Nachi"); (21) NGK Insulators, Ltd. and NGK Automotive Ceramics USA, Inc. (collectively, "NGK Insulators"); (22) NGK Spark Plug Co., Ltd. and NGK Spark Plugs (U.S.A.), Inc. (collectively, "NGK Spark Plugs"); (23) Nishikawa Rubber Company, Ltd. ("Nishikawa"); (24) NTN Corporation and NTN USA Corporation (collectively, "NTN"); (25) Sanden Automotive Components Corporation, Sanden Automotive Climate Systems Corporation, and Sanden International (U.S.A.) Inc. (collectively, "Sanden"); (26) SKF USA Inc. ("SKF"); (26) Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc. (collectively, "Stanley"); (28) Tenneco Inc., Tenneco GmbH, and Tenneco Automotive Operating Co., Inc. (collectively, "Tenneco"); (29) Toyo Tire & Rubber Co. Ltd., Toyo Tire North America OE Sales LLC, and Toyo Automotive Parts (USA), Inc. (collectively, "Toyo"); (30) Usui Kokusai Sangyo Kaisha, Ltd and Usui International Corporation (collectively, "Usui"); (31) Valeo S.A. ("Valeo"); (32) Yamada Manufacturing Co. Ltd. and Yamada North America, Inc. (collectively, "Yamada"); and (33) Yamashita Rubber Co., Ltd. and YUSA Corporation (collectively, "Yamashita").

These settlements collectively make available approximately $432.8 million in cash for the benefit of the Settlement Classes. Those classes are comprised of persons and entities who, at any time during the last ten or more years, depending on the terms of the respective Settlement Agreements, purchased or leased a new vehicle[2] in the United States not for resale that included at least one of the Settled Parts, or indirectly purchased one or more of the Settled Parts as a replacement part, which were manufactured or sold by a Defendant, any current or former parent, subsidiary, or affiliate of a Defendant or any co-conspirator of a Defendant. Further, the

---

[2] In general, vehicles in question include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans, and sport utility vehicles (collectively, "Vehicles").

Round 3 Settling Defendants must provide significant cooperation[3] to the EPPs in the continued prosecution of EPPs' claims against the non-settling defendants. The settlements also provide that, with certain exceptions, the Round 3 Settling Defendants will not engage for a period of two years in certain specified conduct that would violate the antitrust laws involving the automotive parts that are at issue in these lawsuits.

### A. Settlement Amounts

The following chart summarizes the Round 3 Settlements, and identifies the respective Round 3 Settling Defendants, Settled Parts cases, and settlement amounts.

| Round 3 Settling Defendant | Automotive Parts Cases | Settlement Fund |
| --- | --- | --- |
| Aisan | Fuel Injection Systems | $4,560,000.00 |
| ALPHA | Access Mechanisms | $2,698,000.00 |
| Alps | Heater Control Panels | $3,230,000.00 |
| Bosch | Fuel Injection Systems | $2,892,560.00 |
| | Spark Plugs | $28,999,168.00 |
| | Starters | $1,039,984.00 |
| | Windshield Wipers | $508,288.00 |
| Bridgestone | Anti-Vibrational Rubber Parts | $29,640,000.00 |
| Calsonic | Air Conditioning Systems | $5,153,860.65 |
| | Automatic Transmission Fluid Warmers | $380,366.93 |
| | Radiators | $5,587,612.42 |
| Chiyoda | Wire Harness | $1,915,200.00 |
| Continental | Instrument Panel Clusters | $3,800,000.00 |
| Diamond Electric | Ignition Coils | $5,396,000.00 |
| Eberspächer | Exhaust Systems | $1,368,000.00 |
| Faurecia | Exhaust Systems | $1,482,000.00 |
| HIAMS | Shock Absorbers | $13,300,000.00 |
| Hitachi Metals | Automotive Brake Hoses | $1,140,000.00 |
| INOAC | Interior Trim Products | $2,470,000.00 |
| JTEKT | Automotive Bearings | $43,418,819.00 |

---

[3] Cooperation obligations of certain defendants have in certain cases been deemed mostly satisfied once final judgment as to all defendants in those cases has been entered and all appeals, if any, have been exhausted. However, even in these circumstances, the settling defendants are still required to provide cooperation in the form of providing vehicle lists and to produce documents that they produce to other parties.

| | Electric Powered Steering Assemblies | $4,081,181.00 |
|---|---|---|
| Kiekert | Side Door Latches | $2,280,000.00 |
| Koito | Automotive Lamps | $21,654,653.10 |
| | HID Ballasts | $1,335,346.90 |
| MAHLE Behr | Air Conditioning Systems | $1,482,000.00 |
| MITSUBA | Automotive Lamps | $241,876.05 |
| | Electric Powered Steering Assemblies | $169,313.23 |
| | Fan Motors | $3,664,422.11 |
| | Fuel Injection Systems | $1,378,693.47 |
| | Power Window Motors | $19,180,770.52 |
| | Radiators | $3,664,422.11 |
| | Starters | $9,457,353.43 |
| | Windshield Washer Systems | $1,548,006.70 |
| | Windshield Wipers | $32,895,142.38 |
| Nachi | Automotive Bearings | $3,230,000.00 |
| NGK Insulators | Ceramic Substrates | $12,160,000.00 |
| NGK Spark Plugs | Spark Plugs | $12,730,000.00 |
| Nishikawa | Body Sealing Products | $37,620,000.00 |
| NTN | Automotive Bearings | $6,574,000.00 |
| Sanden | Air Conditioning Systems | $7,600,000.00 |
| SKF | Automotive Bearings | $7,600,000.00 |
| Stanley | Automotive Lamps | $12,316,880.00 |
| | HID Ballasts | $2,883,120.00 |
| Tenneco | Exhaust Systems | $17,480,000.00 |
| Toyo | Anti-Vibrational Rubber Parts | $34,343,309.00 |
| | Automotive Constant-Velocity-Joint Boot Products | $1,756,691.00 |
| Usui | Automotive Steel Tubes | $5,320,000.00 |
| Valeo | Access Mechanisms | $760,000.00 |
| Yamada | Electric Powered Steering Assemblies | $2,356,000.00 |
| Yamashita | Anti-Vibrational Rubber Parts | $6,080,000.00 |
| | **Total** | **$432,823,040.00** |

As part of the settlement negotiations, EPPs considered several factors, including the evidence regarding Settling Defendants' alleged conduct and the estimated dollar amount of commerce affected by that conduct, including the volume of commerce data used in calculating the amount of criminal fines imposed on certain of the defendants, and information from parties

and non-parties, and EPPs' consulting experts, concerning impact, the overcharges, and pass-through rates, as well as their knowledge about potential recoveries that might be available in this litigation obtained through many years of experience in litigating and settling antitrust class actions, as well as academic studies on these subjects. EPPs also considered the value of the other settlement terms, especially the value of discovery cooperation offered by Settling Defendants.

### B.  Cooperation and Other Terms

Under the terms of the settlements, the Settling Defendants must provide cooperation to the EPPs. Specifically, they must (1) produce documents and data relevant to the ongoing claims of EPPs against the non-settling defendants, if they have not already done so; (2) provide attorney proffers; (3) make witnesses available for interviews, depositions, and trial; (4) provide assistance in understanding certain data and other information produced to EPPs; and (5) facilitate the use of the data and information at trial. Further, with certain exceptions, the Round 3 Settling Defendants have agreed not to engage in certain specified conduct for a period of two years that would violate the antitrust laws involving the Settled Parts.

In exchange for the settlement payments and cooperation, EPPs and members of the respective Settlement Classes will release the "Released Claims" against the Round 3 Settling Defendants. The Settlement Agreements will not affect other current or future defendants' joint and several liability for the Round 3 Settling Defendants' alleged wrongdoing. Round 3 Settling Defendants' sales remain in their respective cases. Non-settling defendants, with the exception of those that are ultimately determined to be entitled to the reduced liability provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Pub. L. No. 108–237, 118 Stat. 237, 661, 665 (2004), as amended, remain jointly and severally liable for

treble damages applicable to the sales of all of the co-conspirators, less only the amounts paid in settlement. Consequently, the Settlement Agreements will not limit the Settlement Classes' right to recover the full amount of the damages available under the law from any non-settling defendants remaining in particular cases against whom EPPs continue to prosecute their claims.

### C. Notice Plan

In these cases, the Round 3 Settlements provide substantial cash benefits to consumers and other class members, who purchased or leased new vehicles, not for resale, containing the automotive parts subject to the settlements, or who indirectly purchased one or more of those automotive parts as a replacement part. The Round 3 Settlements identify those jurisdictions that allow EPPs, who are indirect purchasers, to seek money damages or restitution, namely, Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "EPP States"). EPPs, through EPPs' class action notice expert consultant, Kinsella Media, LLC ("Kinsella"), implemented a class-notice program utilizing paid and earned media. *See, e.g.*, Declaration of Shannon R. Wheatman, Ph.D., on Implementation of the March 2018 Notice Program ("Wheatman Decl."), 12-cv-00103, ECF No. 605-3. Notice was published in *ESPN The Magazine*, *People, Reader's Digest*, *Motor Trend*, *Relish*, *Parade*, *The Wall Street Journal*, *Automotive News*, *Automotive Fleet,* and online media efforts through banner advertisements on outlets like Facebook. *Id.* The March 2018 Notice Program was effective, reaching an estimated 80.5% of new Vehicle owners or lessees, with an average frequency of 2.9 times. *Id.* ¶ 24. The earned media component of this notice program included a multimedia news release distributed

on PR Newswire's US1 National Circuit on April 23, 2018. *Id.* ¶ 25. As of June 14, 2018, the release generated 250 postings, which resulted in a potential audience of 115,507,270 and the multimedia news release received over 13,708 views. *Id.* A total of 152 journalists engaged with the multimedia news release, and major national outlets covered the Settlements. *Id.* Kinsella also registered sponsored keywords and phrases (e.g., "Auto Parts Settlement") with all major search engines, including Google AdWords, Bing Microsoft Advertising, and their search partners. *Id.* ¶ 27. Members of the Settlement Classes are able to contact a toll-free helpline or register online at the settlement website, www.AutoPartsClass.com. *Id.* The website provides answers to frequently asked questions, deadlines, a list of the Settling Defendants, court filings, and the long form notice. The website has been operational since October 12, 2015, and is accessible 24 hours a day, seven days a week.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(e) governs class action settlements, and under the rule, "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Moreover, when a proposed settlement binds class members, "the court may approve it only after a hearing and on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also In re Packaged Ice Antitrust Litig*, No. 08-MD-1952, 2011 WL 717519, at *8 (E. D. Mich. Feb. 22, 2011). Approval involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001)

(citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 2:08-md-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). In the third step, the court assesses whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich*, 720 F.2d at 921–23). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick*, 2010 WL 4136958, at *14–15.

In exercising its discretion, the court gives deference to the view of experienced counsel as to the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014). Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), or "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Because the purpose of settlement is to avoid the determination of contested issues, the approval process is not simply an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at *15 (citation omitted). A court considering whether to approve a settlement should be mindful that a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement*

*Workers of Am. v. Ford Motor Co.*, No. 2:05-cv-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted).

## III.   ANALYSIS

At the outset, the Court observes that courts within the Sixth Circuit "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice*, 2011 WL 717519, at *7; *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *IUE–CWA*, 238 F.R.D. at 594 (internal quotation marks and citations omitted).

### A.  Factors Governing Final Approval

The Round 3 Settlements meet the criteria required for final approval under Federal Rule of Civil Procedure 23. They provide meaningful benefits and were reached as a result of arm's-length negotiations conducted in good faith by experienced counsel for EPPs and Settling Defendants, who were knowledgeable about EPPs' claims and the defenses that might be asserted to those claims. The settlements reflect a reasonable compromise in light of the liability, damages, and uncertainties of continued litigation facing both EPPs and Settling Defendants.

Here, the Court has considered a number of factors in reaching its conclusion that the settlements should be granted final approval: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class

representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *In re Packaged Ice*, 2011 WL 717519, at *8. No one factor is determinative; each is discussed below.

### 1.    Likelihood of Success on the Merits

Courts assess class action settlements "with regard to a 'range of reasonableness,' an assessment that 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); *Int'l Union*, 2006 WL 1984363, at *21. When the interests of the class as a whole are better served by settlement, the standard is met. *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595).

Even though many of the Settling Defendants pled guilty in criminal proceedings brought by the United States Department of Justice ("DOJ") to the very conduct alleged by EPPs in their complaints and EPPs believe that they will prevail in the respective actions, the Court recognizes that EPPs' success is not assured. EPPs must prove several critical issues unique to their actions that the DOJ did not, including, but not limited to, (1) the amount of any overcharges resulting from the alleged conspiracies, (2) the nature and impact of the economic and business relationships between parties occupying different places in the chain of distribution and the relationship of defendants' sales to original equipment manufacturers ("OEMs"), OEMs' sales to automobile dealers, and dealers' automobile sales to end-users, (3) the pass-through of overcharges, and (4) class-wide impact and the standing to sue of indirect purchasers. The resolution of these issues will turn in large measure on a battle of experts—at great cost, and at great risk to the class members' chances of success. EPPs must show they suffered damages as a result of the defendants' conduct, and given the nature of the automobile industry, the damages

methodologies advanced by the parties are expected to vary greatly.

In addition, EPPs' cases are also significantly broader than the government's cases, including claims against some defendants that did not plead guilty and involving time periods that were not part of the indictments or guilty pleas that resulted from the government's investigation.

Moreover, absent the Round 3 Settlements, the Round 3 Settling Defendants would oppose EPPs' motions for class certification, move for summary judgment on numerous issues, and raise defenses to EPPs' claims at trial, should the actions proceed to those states of the case. In sum, EPPs face significant challenges to proving class-wide impact and the amount of damages they sustained. The Round 3 Settling Defendants have vigorously and ably defended these cases and will continue to do so in the event the Court were to reject the settlements. These settlements avoid the many risks of further litigation and ensure recovery for members of the Settlement Classes.

Of great importance in the Court's assessment of the benefits to the respective Settlement Classes of the Round 3 Settlements is the provision in the settlements requiring discovery cooperation of the Round 3 Settling Defendants. The cooperation agreed to includes, for example, identification of all current and former employees, directors, and officers interviewed by government entities investigating antitrust activity in the automobile industry, document production, including English translations, regarding the investigations, not only by the DOJ, but by government entities in other countries, production of information and documents concerning pricing, employee training on bidding and pricing, production of transactional data regarding sales to OEMs, bids, attorney proffers, witness interviews, depositions, and trial testimony. *See, e.g.*, *In re Wire Harness*, Case No. 2:12-cv-00102 (E.D. Mich.), ECF No. 354. These benefits to

the Settlement Classes "strongly militates toward approval" of the settlements. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). Those cooperation provisions have strengthened and continue to strengthen EPPs' ability to prosecute their claims against those defendants that continue to litigate these cases, and assisted EPPs in arriving at the settlements now before the Court. *Id.* Finally, with certain exceptions, the Round 3 Settling Defendants have agreed not to engage for a period of two years in certain specified conduct that would violate the antitrust laws involving the automotive parts at issue.

Therefore, the Court finds that after weighing the benefits of the settlements against the risks of continued litigation, the scale tilts heavily toward final approval.

### 2.    Complexity, Expense, and Likely Duration of Continued Litigation

A settlement "should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *In re Cardizem*, 218 F.R.D. at 523 (quotation omitted). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.*

The Court agrees with Settlement Class Counsel's assessment that antitrust class actions of the size and the magnitude of this very complicated litigation make this among the most difficult and complex actions to prosecute. EPP Counsel represent nearly sixty class representatives, pursuing claims under federal law and the laws of thirty states and the District of Columbia on behalf of classes of consumers and businesses that purchased or leased new vehicles containing certain automotive parts and replacement parts manufactured by the defendants. Given the well-known difficulty and protracted nature of antitrust cases in general, the Court finds that any final adjudicated recovery for the EPPs would almost certainly be many years away. Further, continued litigation would be expensive, time consuming, complex, and likely involve conflicting testimony from multiple expert witnesses. The Court is cognizant that

even if EPPs achieve favorable trial outcomes, appeal is likely. Furthermore, each subsequent step in the litigation process would require EPPs to incur substantial additional expense without any assurances of a more favorable outcome than achieved by these settlements.

The Court itself has had a substantial opportunity to consider the claims and defenses in this litigation and is very cognizant that complex antitrust litigation of this scope and magnitude has many inherent risks that the settlements eliminate. Here, EPPs have negotiated substantial recoveries that eliminate all risks of continued litigation while ensuring substantial payments for the benefit of the Settlement Classes. An analysis of this factor, therefore, overwhelmingly supports final approval of the settlements.

### 3.    Judgment of Experienced Counsel

In deciding whether a proposed settlement warrants approval, the courts consider "the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsels' judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18).

In this case, the settlements were reached by experienced counsel, with decades of experience, after arm's-length negotiations, conducted, in most instances, with the assistance and under the supervision of very experienced mediators. Settlement Class Counsel have stated that they believe that the settlements each provide an excellent result for the respective Settlement Classes given the circumstances of each Settling Defendant's conduct and potential liability. Settlement Class Counsel thoroughly investigated the legal and factual issues regarding EPPs' claims and discovery has been extensive. *See, e.g.*, Joint Decl. of Hollis Salzman, Adam J. Zapala, and Marc M. Seltzer, *In re Wire Harness*, Case No. 2:12-cv-00103 (E.D. Mich.), ECF

No. 605-1 ¶¶ 9-13. The information revealed in the discovery process is useful to all the subsequently filed cases, and the records demonstrate that the parties have thoroughly explored the strength and weaknesses of the claims asserted by EPPs and the expected defenses to those claims. *See Sheick*, 2010 WL 4136958, at *19. The Court finds that the judgment of experienced counsel strongly supports final approval of the Round 3 Settlements.

        **4.**     Discovery

Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[F]ormal discovery [is not] a necessary ticket to the bargaining table."). The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)).

Progress in discovery varies in each case. In some cases, such as *Wire Harness Systems*, discovery is complete. In all cases, however, EPPs' counsel have had access to voluminous documents produced to the DOJ, and also have considered the guilty pleas of certain defendants, which in many instances set forth the volume of commerce data used in calculating the amount of criminal fines imposed, and proffers of information by cooperating defendants. The Court is satisfied that they had sufficient information to reach these settlements.

### 5.     Reaction of Absent Class Members

The deadline for class members to exclude themselves from the proposed Settlement Classes passed with only two requests for exclusion.[4] In addition, there was only one objection, from Caitlin Ahearn, made to any of the Round 3 Settlements. That objection, dated July 12, 2018, was voluntarily withdrawn with prejudice and without costs as to any party on August 1, 2018, and is thus moot. The Court nonetheless determines that the objection was meritless.

The Court finds that the notice of both the settlements and the application for approval of the Plan of Allocation of Settlement proceeds and a fee award satisfied both due process and Federal Rule of Civil Procedure 23(e)(1), in that it adequately informed members of the Settlement Classes of the nature of the pending actions, the terms of the Round 3 Settlements, and how to obtain more information. The notice explained how to object to the settlements and how to request exclusion. It informed members of their right to attend the final approval hearing. After careful review, the Court finds that the notice given was the best notice practicable, given the circumstances of this case in that it was reasonably calculated to inform class members of the existence of the action and how to raise any objections to the settlements and, as determined above, fully comported with the requirement of Rule 23 of the Federal Rules of Civil Procedure and due process under the United States Constitution. *UAW v General Motors Corp.*, 479 F.3d 615, 629 (6th Cir. 2007).

### 6.     Risk of Fraud or Collusion

Courts presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *In re Packaged Ice*, 2011 WL 717519, at *12; *Sheick*, 2010 WL 4136958, at *19-20. Here, the parties

---

[4] The validity of one of these requests, namely, the request for exclusion by GEICO and certain of its expressly identified affiliates, is disputed.

have been engaged in adversarial and protracted litigation and discovery. The negotiations leading to the settlements were conducted entirely at arm's length and the agreements were reached only after many months of hard bargaining, often with the assistance of highly experienced mediators. The settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients.

### 7. Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quotation omitted). In light of the conduct at issue and guilty pleas related to the claims here, there is no countervailing public interest that provides a reason to disapprove the settlements. *Griffin*, 2013 WL 6511860, at *5. This factor also supports final approval.

In addition to addressing the merits of the proposed settlements, the Court must determine that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) are met. In its preliminary approval orders, the Court found that Federal Rule of Civil Procedure 23's requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the settlements. It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Int'l Union*, 2006 WL 1984363, at *3, *18; *In re Cardizem*, 218 F.R.D. at 516‑19. The settlements meet the requirements of Federal Rule of Civil Procedure 23(a) as well as the requirements of Federal Rule of Civil Procedure 23(b)(3) for settlement purposes.

### B.  The Settlement Classes Satisfy Federal Rule of Civil Procedure 23(a)

To certify a class, Federal Rule of Civil Procedure 23(a) and one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 850–51 (6th Cir. 2013). Certification is appropriate under Federal Rule of Civil Procedure 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. Pro. 23(a).

The Court finds that each factor is met for the reasons summarized below.

### 1.       Numerosity

Class certification under Federal Rule of Civil Procedure 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Here, the Settlement Classes include millions of end-payors, geographically dispersed throughout the United States. The number and the geographical distribution throughout the United States makes joinder impracticable. Therefore, this factor is satisfied.

### 2.       Commonality

Next, a class action must implicate "questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). "A certifiable class claim must arise out of the same legal or remedial theory," *Patterson v. General Motors Corp*., 631 F.2d 476, 481 (7th Cir. 1980) (citation omitted), which can be satisfied if the class members' claims share "[a] common nucleus of operative fact," that is, some "common question. . . at the heart of the case," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992) (citation omitted).

Antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope, and effect of the alleged conspiracy. These cases are no different. For example, an issue common to each of the Settlement Classes is whether Settling Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of the automotive parts at issue in each of the cases. The Court finds that the commonality requirement is met here.

### 3.    Typicality

To satisfy the third prerequisite to class certification, "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. Pro. 23(a)(3). A proposed class representative can satisfy this prerequisite if his or her claim arises "from the same event or practice or course of conduct that gives rise to the claims of other class members." *Beattie v. Century Tel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007). Here, typicality is satisfied because EPPs' injuries arise from the same wrong that allegedly injured each of the Settlement Classes as a whole. Each member of a Settlement Class was a victim of the same conspiracy alleged in the applicable class complaint.

### 4.    Adequacy of Representation

To satisfy the fourth prerequisite for class-action status, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This two-pronged inquiry requires the Court to assess "the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general, and the adequacy of class counsel's representation." *In re Ready-Mixed Concrete Antitrust Litig*., 261 F.R.D. at 154, 168 (S. D. Ind. 2009) (citation omitted).

The class representatives share the same interests as other class members and will fairly and adequately protect the interests of the classes. In addition, class counsel are qualified, experienced and able to conduct the litigation. They have vigorously prosecuted these cases and have fairly and adequately represented each of the Settlement Classes. Accordingly, the Court finds that the named plaintiffs are adequate class representatives and that their counsel, Cotchett Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P., should be appointed to represent the Settlement Classes pursuant to Federal Rule of Civil Procedure 23(g).

### C. The Settlement Classes Satisfy Federal Rule of Civil Procedure 23(b)(3)

Because EPPs meet the requirements of Federal Rule of Civil Procedure 23(a), the Court turns to the additional requirement of Federal Rule of Civil Procedure 23(b)(3)—that class plaintiffs demonstrate that common questions predominate over questions affecting only individual members and that class resolution is superior to other methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615. Horizontal price-fixing cases are well-suited for class certification because proof of a conspiracy presents a common, predominating question, *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008), that forms the basis from which all proposed Settlement Class members' alleged injuries arise. The antitrust claims alleged herein involve the existence of shared issues related to liability, the scope of the conspiracy, and impact. Common issues predominate over any individual questions. Notably, the alleged anticompetitive conduct at issue in these cases is not dependent on the separate conduct of the individual Settlement Class members.

Finally, a class action is the superior method to adjudicate these claims. The interest of Settlement Class members in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Therefore, for purposes of these

Settlements, the Court finds that the prerequisites for a class action pursuant to Federal Rule of Civil Procedure 23 have been met as to each of the Settlement Classes.

## IV.    CONCLUSION

For the reasons stated above, the Court hereby **CERTIFIES** the Settlement Classes for EPPs. The Court's certification of the Settlement Classes as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class proposed in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12- md-02311. No party may cite or refer to the Court's approval of any Settlement Class as persuasive or binding authority in support of any motion to certify any class.

**IT IS FURTHER ORDERED** that the terms of the parties' Settlement Agreements for the Settlements are hereby incorporated as Orders of this Court.

**IT IS FURTHER HEREBY ORDERED** that Cotchett, Pitre & McCarthy, L.L.P., Robins Kaplan LLP, and Susman Godfrey L.L.P. are appointed class counsel.

Finally, the Court **GRANTS** final approval of each of the Settlements.

**IT IS SO ORDERED.**

Date: November 7, 2018                                  s/Marianne O. Battani
                                                        MARIANNE O. BATTANI
                                                        United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 7, 2018.

s/ Kay Doaks
Case Manager