**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT MICHIGAN**
**SOUTHERN DIVISION**

| | : | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | No. 12-md-02311 |
| | : | Hon. Marianne O. Battani |
| | : | |
| In Re: Heater Control Panels | : | Case No. 2:12-cv-00403 |
| In Re: Occupant Safety Systems | : | Case No. 2:12-cv-00603 |
| In Re: Switches | : | Case No. 2:13-cv-01303 |
| In Re: Ignition Coils | : | Case No. 2:13-cv-01403 |
| In Re: Steering Angle Sensors | : | Case No. 2:13-cv-01603 |
| In Re: Electric Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In Re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In Re: Valve Timing Control Devices | : | Case No. 2:13-cv-02503 |
| In Re: Air Conditioning Systems | : | Case No. 2:13-cv-02703 |
| In Re: Automotive Constant Velocity Joint Boot Products | : | Case No. 2:14-cv-02903 |
| In Re: Automotive Hoses | : | Case No. 2:15-cv-03203 |
| In Re: Shock Absorbers | : | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | : | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | : | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | : | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | : | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | : | Case No. 2:16-cv-03803 |
| In Re: Power Window Switches | : | Case No. 2:16-cv-03903 |
| In Re: Automotive Steel Tubes | : | Case No. 2:16-cv-04003 |
| In Re: Side-Door Latches | : | Case No. 2:17-cv-04303 |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| End-Payor Actions | : | |
| | : | |

**ORDER GRANTING END-PAYOR PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER APPROVING THE PROPOSED FURTHER REVISED PLAN OF ALLOCATION AND FOR AUTHORIZATION TO DISSEMINATE SUPPLEMENTAL <u>NOTICE TO THE SETTLEMENT CLASSES</u>**

The above matter is duly before the Court on the unopposed motion of End-Payor Plaintiffs ("EPPs") for approval of the proposed revised Plan of Allocation and for authorization to disseminate supplemental notice to the Settlement Classes.

The Court has reviewed the memorandum submitted by EPPs in support of their motion and has also reviewed the various declarations and submissions relating to that motion. The Court has also considered the July 2019 Notice Program and notice given to the Settlement Classes in accordance with the Court's orders, and the proposed Supplemental Notice.

Based on the entire record of these proceedings, and good cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1. The notice provided to the Settlement Classes advised the Settlement Classes of the motion and of the date, time, and place of the hearing to consider the motion for approval of the Plan of Allocation.[1] The notice further advised that any objections to the Plan of Allocation were required to be received by the Court and the Claims Administrator by November 19, 2019. Given that there are no pending objections to the Plan of Allocation and that the proposed Plan of Allocation, as revised, is fair, reasonable and adequate, the Court hereby approves the revised Plan of Allocation and gives EPPs authorization to disseminate supplemental notice to the settlement classes for the reasons stated below.

2. Pursuant to and in compliance with Rule 23 of the Federal Rule of Civil Procedure, and the requirements of constitutional due process, the Court finds that due and adequate notice was directed to the Settlement Classes of the proposed Plan of Allocation and of the right of

---

[1] The hearing was originally scheduled for December 10, 2019, but was continued to March 18, 2020. The website and notice forms have been updated to reflect this change.

Settlement Class members to be heard or object thereto, and a full and fair opportunity was accorded to Settlement Class members to be heard with respect to the Plan of Allocation.

3. Under Rule 23, "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *15-16 (E.D. Mich. Dec. 13, 2011) (quoting *Meijer, Inc. v. 3M*, Civ. No. 04-5871, 2006 WL 2382718, at*17 (E.D. Pa. 2006)); *In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)). The purpose of a plan of allocation is to create a method that will permit the equitable distribution of settlement proceeds to all eligible members of the class.

4. Accordingly, as courts have observed, "[a] district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)).

5. "Typically, a class recovery in antitrust or securities suits will divide the common fund on a *pro rata* basis among all who timely file eligible claims, thus leaving no unclaimed funds." *In re Packaged Ice Antitrust Litig.*, at *12 (quoting 3 Newberg on Class Actions, § 8:45 (4th ed. 2011)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531 (E.D. Mich. 2003) (approving a plan of allocation that adopted a *pro rata* method for calculating each class member's share of the settlement fund as fair and reasonable). As a result, courts in this district have previously held that using a *pro rata* formula for calculating each class member's share of a settlement fund is fair and reasonable.

6. Courts have also determined that a Plan of Allocation providing for a minimum payment, to incentivize claims distribution and avoid *de minimis* settlement payments, can be fair and reasonable. *See, e.g.*, *Downes v. Wis. Energy Corp. Ret. Account Plan*, No. 09-C-0637, 2012 WL 1410023, at *3 (E.D. Wis. Apr. 20, 2012) ($250 minimum); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 498 (S.D.N.Y. 2009) ($10 minimum); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 143 (D.N.J. 2013) ($10 minimum); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 463-64 (E.D. Pa. 2008) ($50 minimum); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *21 (S.D. Tex. Jan. 23, 2015) ($100 minimum).

7. Here, EPPs propose allocating the net settlement funds on a modified *pro rata* basis, subject to the adjusted weighting of certain purchases or leases, based on the purchases or leases of new vehicles not for resale which contain automotive parts manufactured or sold by a defendant and purchases of replacement automotive parts which contain parts manufactured or sold by a defendant. Under the Plan of Allocation, certain purchases or leases would be weighted more heavily based on the evaluation by EPP's Co-Lead Counsel of the vehicles that were specifically targeted by the collusive conduct of defendants. Such weightings are appropriate in class action cases. *See, e.g., In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997). This *pro rata* allocation would be modified by initially distributing $100 to all eligible class members and then distributing the remaining funds to all class members whose weighted *pro rata* allocation exceeds $100 (subject to their being sufficient funds for each class member claimant to receive at least $100). If the net settlement funds are insufficient to allow a minimum payment of $100 to each eligible class member claimant, the amount to be paid to all claimants shall be adjusted so that claimants share in the net settlement funds on a *pro rata* basis based on the amounts of their respective net allowed claim amounts.

8. Additionally, the Court determines that inclusion of the place of purchase or lease as an alternative criterion of eligible transactions is consistent with the law followed in some jurisdictions that would allow a claimant, at his or her option, to invoke state antitrust laws favorable to the claimant based on the laws of the state in which the injury was sustained. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276–77 (D. Mass. 2004). Courts overseeing antitrust actions have applied choice of law principles to conclude that the place of injury is the place of purchase, which may or may not be the purchaser's home state. *See*, *e.g.*, *In re Flonase Antitrust Litig.,* 815 F.Supp.2d 867 (E.D. Pa. 2011) (holding that the law of the "purchase state" should be applied); *In re Wellbutrin XL Antitrust. Litig.,* No. 08–2433, 2011 WL 3563835, at *6-7 (E.D. Pa. Aug. 15, 2011) ("The statutory language of the laws at issue here contain no prohibitions that would indicate that a state has a policy of only covering transactions that involve in-state citizens, rather than in-state transactions."); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,* 737 F.Supp.2d 380, 390–93 (E.D. Pa. 2010); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 64 F.Supp.3d 665 (E.D. Pa. Dec. 3, 2014) (purchaser could sue under either the law of the home state or of the purchase state). This is consistent with the general rule that choice of law principles take into account the facts and circumstances of a particular case. Under those principles, a resident of a state that does not provide a damages remedy to indirect purchasers who made purchases in a "non-repealer" or "non-damages" state may properly invoke the more favorable antitrust laws of the state where the defendant resides or engaged in conduct that violated the laws of the state where the conduct took place. In appropriate circumstances, based on applicable choice-of-law rules, the laws of a single "repealer" state may also be applied on a nationwide basis to all purchasers, regardless of where they reside or where they made their purchases. These cases, however, involve multiple

conspiracies with domestic and foreign defendants who participated in price-fixing and bid-rigging conduct in various countries around the world.

9. It is well-settled that "a Plan of Allocation need not be, and cannot be, perfect." *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 272 (D.N.J. 2000), aff'd, 264 F.3d 201 (3d Cir. 2001), *cert. denied*, 535 U.S. 929 (2002); *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("As many courts have held, a plan of allocation need not be perfect. Instead, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." (internal quotations omitted)). Although the satisfaction of everyone is generally unobtainable, *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 258 (E.D. Del. 2002), aff'd, 391 F.3d 516, 534 (3d Cir. 2004), a plan of allocation should strive to obtain a delicate balance between precision and administrative convenience, *see, e.g.*, *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 326 (3d Cir. 2011).

10. Here, EPPs propose to revise the Plan of Allocation to allow Settlement Class members who purchased or leased a new qualifying vehicle or purchased a replacement automotive part in a damages state to be entitled to share in the Net Settlement Funds. The Court finds that this is appropriate and consistent with the above-referenced case law. Pursuant to the Plans of Allocation approved in connection with the Rounds 1, 2, and 3 settlements and the preliminarily approved Plan of Allocation submitted in connection with the motion for approval of the Round 4 settlements, individuals would be entitled to share in the Net Settlement Funds only if they resided in, and businesses would be entitled to share in the Net Settlement Funds only if their principal place of business was located in, a damages state at the time of such purchase or lease. Under the further revised Plan of Allocation, Settlement Class members would be able to seek to share in the monetary recovery provided by a settlement based on the place of purchase or

lease in addition to their state of residence or principal place of business at the time of such purchase or lease.

11. EPPs also propose to further revise the Plan of Allocation by requiring potential Settlement Class members who file claims based on their place of purchase or lease to provide satisfactory evidence demonstrating that the purchase or lease took place in a damages state. The Court finds this requirement to be appropriate given the broadened eligibility.

12. Finally, EPPs propose extending the deadline for the submission of Claim Forms from December 31, 2019 to March 16, 2020. This would provide additional time for the notice and claims administrators to disseminate the Supplemental Notice to the Settlement Classes. The Court finds that this is appropriate and provides sufficient time for Settlement Class members to submit claims to share in the Net Settlement Funds.

13. The Court hereby finds and concludes that the revised Plan of Allocation provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Funds among members of the respective Settlement Classes with due regard having been given to considerations of administrative convenience.

14. The Court now hereby approves the further revised Plan of Allocation and authorizes EPPs to disseminate the Supplemental Notice to the Settlement Classes. EPP Co-Lead Counsel are hereby authorized to carry out all steps, including dissemination of the Supplemental Notice, as necessary to effectuate the revised Plan of Allocation.

**IT IS SO ORDERED.**

s/PAUL D. BORMAN for<br>MARIANNE O. BATTANI<br>United States District Judge