**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | : : : : : : : : : : : : | END-PAYOR PLAINTIFFS RESPONSE TO FINANCIAL RECOVERY STRATEGIES' REQUEST FOR DECLARATORY RELIEF REGARDING AUTOMOBILE INSURER'S CLAIMED RIGHT TO SHARE IN THE PROCEEDS OF THE END-PAYOR PLAINTIFFS' SETTLEMENTS |

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

A.    Auto Insurers Are Not Class Members and Have No Antitrust Standing in Their Capacity as Insurers. ...................................................................... 3

B.    Auto Insurance Policies Do Not Provide Coverage for the Antitrust Injuries Alleged in these Actions. ........................................................... 4

    1.    Auto Insurers Only Extend Coverage for "Property Damage" to Vehicles. ............................................................................................. 5

    2.    Auto Insurers Do Not Extend Coverage for Overcharges Caused by Antitrust Violations. ............................................................ 6

    3.    Auto Insurers Do Not Compensate Insureds for Overcharges Caused by Antitrust Violations. ................................................ 8

C.    Auto Insurers' Subrogation Rights Do Not Extend to Overcharges Caused by Antitrust Violations. ...................................................................... 10

D.    Property Damage Losses Caused by Automobile Accidents Are Completely Unrelated to Overcharges Caused by Antitrust Violations. .............. 14

    1.    Antitrust Defendants Are Not Primarily Liable for any of the Property Damage Losses Covered by Auto Insurers. .............................. 15

    2.    Antitrust Defendants Are Not Joint Tortfeasors with Third Parties Legally Liable for the Property Damage Losses Covered by Auto Insurers. ............................................................................................. 16

    3.    Property Damage Losses and Overcharges Caused by Antitrust Violations are Demonstrably Different and Not the Same Loss. .............. 18

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Air Crash Disaster*,
  86 F.3d 498 (6th Cir. 1996) ..................................................................................................15

*Allstate Ins. Co. v. Mazzola*,
  175 F.3d 255 (2d Cir. 1999) .................................................................................................16

*Ambassador Hotel Co., Ltd. v. Wei-Chuan Inc.*,
  189 F.3d 1017 (9th Cir. 1999) .............................................................................................17

*Autoliv v. GEICO*,
  345 F. Supp. 3d 799 (E.D. Mich. 2018) ...........................................................................3, 4, 9

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*,
  No. 13-13804, 2015 WL 3541905 (E.D. Mich. Apr. 30, 2015) ...........................................19

*Burgess v. Premier Corp.*,
  727 F.2d 826 (9th Cir. 1984) ...............................................................................................17

*Counihan v. Allstate Ins. Co.*,
  827 F. Supp. 132 (E.D.N.Y. 1993) .......................................................................................19

*Employers' Liab. Assur. Corp., Ltd., of London v. Daley*,
  51 N.Y.S.2d 567, *aff'd*, 67 N.Y.S.2d 233 (N.Y. 1944) .........................................................13

*Fair Oaks Trans. Co v. Central Mfrs' Mut. Ins. Co.*,
  127 F. Supp. 507 (S.D.N.Y. 1954) .......................................................................................17

*FDIC v. First Mort. Inv.*,
  485 F. Supp. 445 (E.D. Wis. 1980) ..................................................................................19, 20

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*,
  77 Cal. Rptr. 2d 296 (1998).. ..............................................................................................14

*Fireman's Fund Ins. Co. v. Morse Signal Devices*,
  198 Cal. Rptr. 756 (Cal. App. 1984) ..................................................................................8, 12

*Grant Thronton v. Syracuse Sav. Bank*,
  961 F.2d 1042 (2nd Cir. 1992) .............................................................................................15

*Guardo v. Buzzuro*,
  No. 1905 EDA 2017, 2018 WL 3133679 (Pa. Super. Ct. June 27, 2018) ..............................19

*Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*,
    208 F.3d 579 (7th Cir. 2000) ........................................................................................11

*Hoyos v. Hammer Homes, Inc.*,
    717 F. Supp. 819 (S.D. Fla. 1989) .................................................................................17

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*,
    196 F.3d 818 (7th Cir. 1999) .................................................................................10, 11

*J&R Elec. Inc. v. One Beacon Ins. Co.*,
    824 N.Y.S.2d 763 (N.Y. Sup. Ct. Dec. 13, 2005) ..........................................................18

*Kassman v. American Univ.*,
    546 F.2d 1029 (D.C. Cir. 1976) ....................................................................................16

*Klug v. Watts Regulator Co.*,
    No. 8:15-cv-00061, 2016 WL 7156480 (D. Neb. Dec. 07, 2016) ....................................7

*Livingston v. Shelton*,
    537 P.2d 774 (Wash. 1975), *cert. denied*, 424 U.S. 958 (1976) ....................................15

*Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*,
    493 F.3d 752 (6th Cir. 2007) ...........................................................................................7

*Phila. Indem. Ins. Co. v. Pace Suburban Bus Serv.*,
    67 N.E.3d 556 (Ill. App. 2016) .....................................................................................15

*Rausch v. Allstate Ins. Co.*,
    882 A.2d 801 (Md. App. 2005) ......................................................................................15

*Redfield v. Continental Cas. Corp.*,
    818 F.2d 596 (7th Cir. 1987) .........................................................................................19

*Roberts v. Electrolux Home Prods.*,
    No. SACV12-1644-CAS, 2014 WL 4568632 (Sept. 11, 2014).........................................7

*Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*,
    749 F.2d 1277 (9th Cir. 1984) .......................................................................................15

*Russell v. Williams*,
    374 P.2d 827 (Cal. 1962) ..............................................................................................18

*Schultz v. American Airlines, Inc.*,
    No. 18-80633, 2019 WL 3000448 (S.D. Fla. July 10, 2019)..........................................19

*Shockley v. Harleysville Mutual Insurance Co.*,
    553 A.2d 973 (Pa. Super. 1988).............................................................................13, 14

*Snowden v. D.C. Transit Sys., Inc.*,
    454 F.2d 1047 (D.C. Cir. 1971) ...........................................................................16

*Sorge v. Nat'l Car Rental Sys.*,
    512 N.W.2d 505 (Wis. 1994) ..........................................................................7, 8

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013) ...........................................................................................16

*Zaghi v. State Farm Gen'l Ins. Co.*,
    77 F. Supp. 3d 974 (N.D. Cal. 2015) .................................................................18

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ...........................7

**Statutes**

28 U.S.C. § 1441(c) ....................................................................................................17

# INTRODUCTION

End-Payor Plaintiffs ("EPPs") respectfully request that the Court deny the request of Financial Recovery Strategies ("FRS") for a declaration determining that automobile insurers FRS purports to represent ("Auto Insurers") are entitled to share in the End-Payor Plaintiffs' Settlements as subrogees of class member insureds to whom Auto Insurers made indemnity payments for vehicles that were damaged in automobile accidents and deemed a total loss. [1]

FRS does not claim that it is a class member, or that Auto Insurers are class members in their capacity as insurers. Instead, the sole basis for its contention that Auto Insurers have a right to file a claim to share in the settlements is that Auto Insurers somehow became equitably or contractually subrogated to the antitrust claims of their insureds who are class members because Auto Insurers indemnified their insureds for property damages the insureds sustained when their insureds' vehicles were physically damaged in automobile collisions.

The Auto Insurers, however, did not indemnify their insureds for any antitrust injuries their insureds suffered when they were overcharged as a result of defendants' price-fixing conspiracy when they purchased or leased new vehicles. The Auto Insurers did not provide any insurance coverage for antitrust injuries suffered by their insureds. Had any insured tendered to their Auto Insurer a claim to be indemnified for that overcharge, the Auto Insurer would not have adjusted or paid their insureds anything on that claim. Nor is there any evidence that the Auto Insurers did, in fact, make any such payments. In short, the injuries caused by the antitrust violations are not the "same loss" an insured suffered when his or her vehicle sustained physical damage due to an

---

[1] On December 13, 2019, FRS sent a letter to the Court via Federal Express and listed the Master Docket number. Although FRS did not actually file its letter with the Court, EPPs have filed this response out of an abundance of caution.

automobile accident.  Thus, Auto Insurers were not subrogated to any claims a class member had against any of the defendants in these actions.

Nor are any of the defendants in these cases joint tortfeasors with whomever might be legally liable to an insured for causing an automobile accident to take place.  The defendants had no responsibility for causing any physical damage to any vehicles.

The mere fact that indemnifying an insured for physical property damage may result in paying for the depreciated value of a vehicle at the time of the accident does not make that payment compensation for any antitrust injuries that occurred at the time when the vehicle was purchased or leased as a new vehicle.  FRS's argument is, in reality, based on a play on words and ignores the fact that two distinct "losses" are at issue and that Auto Insurers only covered losses sustained as a result of physical damage to the vehicles in question.[2]

The Auto Insurers' policies provide no coverage to an insured for the "loss" or "injury" sustained at the point of purchase due to an overcharge caused by an antitrust violation. The rights that an insurer may have under the law of subrogation against the person who is at fault for an accident based on the payment the insurer made to its insured have nothing to do with the antitrust claims that class members have as a result of being overcharged at the time when he or she purchased or leased a new vehicle due to violations of the antitrust laws.

Further, indemnity payments for the property damage claims of insureds occur in a private transaction with the named insured, and do not occur in the automotive part markets in which

---

[2] Further, the classes only include purchasers or leases of new vehicles.  By definition, all the vehicles for which any indemnity was provided by their Auto Insurers would have been used. Once a new vehicle is purchased or leased and driven off the dealer's lot, it becomes a used vehicle whose value is instantaneously depreciated.

defendants allegedly conspired. Indemnity payments were not made based on any harm caused by the defendants due to the antitrust violations at issue in this litigation.[3]

Further, FRS has neither claimed nor provided any evidence that Auto Insurers actually compensated or reimbursed insureds for any overcharges caused by price-fixing or other antitrust violations. FRS's argument that the indemnity payments made to insureds must necessarily include compensation for those overcharges simply ignores the fact that those payments did not indemnify an insured for those overcharges. In short, when Auto Insurers compensated their insureds for property damages to vehicles deemed total losses, Auto Insurers did not compensate their insureds for the "same losses" at issue in this litigation. Accordingly, Auto Insurers have no subrogation rights (equitable or otherwise) to the unrelated antitrust claims of any class members against any of the defendants in this litigation.

**A. Auto Insurers Are Not Class Members and Have No Antitrust Standing in Their Capacity as Insurers.**

Auto Insurers, in their capacity as subrogees, are not class members and therefore have no rights as class members. In *Autoliv v. GEICO*, 345 F. Supp. 3d 799, 829-30 (E.D. Mich. 2018) ("*GEICO*")—a case on which FRS relies—this Court found that GEICO lacks antitrust standing in its capacity as an insurer for "payments to insureds or third-party claimants for the full value of vehicles declared a total loss" because "Total Loss Payments are not made in connection with the purchase of auto parts," and "the injury allegedly inflicted on GEICO does not occur in the auto part markets in which Defendants allegedly conspired." *Id.* at 822, 829.

---

[3] Additionally, it should be noted that Auto Insurers' indemnity payments also failed to compensate insureds based on the prices they paid for their vehicles (*i.e.*, the full purchase price of a new vehicle, including anticompetitive overcharges), because indemnity payments for physical damage losses—reduced for depreciation, deterioration, and obsolescence—only represent a fraction of new vehicle purchase prices.

This Court further found that GEICO lacked standing to assert antitrust claims arising from indemnity payments for total loss vehicles because "some of these vehicles might have passed through multiple, intervening, *used* vehicle transactions," and GEICO failed to acknowledge "the myriad complicating factors that must be considered when Total Loss Payments are made for *used* vehicles." *Id.* at 830.[4] This Court also noted the remoteness of any potential recovery for GEICO when there is no indication whatsoever that defendant's alleged overcharges somehow affect the claim-adjustment process for determining the amount of indemnity payments, or somehow produce any actual increase in indemnity payments. *Id.* at 829.

Throughout its letter to the Court, FRS relies upon GEICO policy language on subrogation and relies upon this Court's decision in *GEICO*. FRS Ltr. at 2, 3, 6-9, 12. Thus, FRS acknowledges that it stands in very similar posture as GEICO and that this Court's reasoning in *GEICO* equally applies here. Yet, FRS does not challenge this Court's order in *GEICO*.  Indeed, FRS fails to address this Court's concerns about the remoteness of any potential recovery by Auto Insurers. Instead, FRS wrongly contends it is irrelevant that auto insurance policies do not cover antitrust losses, and it is irrelevant that indemnity payments were made for vehicles that are not new. FRS Ltr. at 7. FRS is wrong.

**B. Auto Insurance Policies Do Not Provide Coverage for the Antitrust Injuries Alleged in these Actions.**

Despite our request, FRS did not provide copies of any auto insurance policies that purportedly apply to the claims of Auto Insurers until the day before we filed this brief. FRS purportedly represents Liberty Mutual, Mercury Insurance, MAPFRE, Utica National Insurance Group, and AIG, but FRS has only provided insurance policies for Liberty Mutual and Mercury

---

[4] All emphases in this brief are added.

Insurance. Accordingly, EPPs have reviewed the auto insurance policies that FRS provided, in addition to the GEICO policy that FRS references in its letter.

None of the auto insurance policies that EPPs have reviewed extend any coverage for injuries suffered by an insured at the point of purchase for overcharges paid due to price-fixing or other antitrust violations. Instead, every auto insurance policy that EPPs reviewed expressly limits coverage to bodily injury and property damage.

### 1. *Auto Insurers Only Extend Coverage for "Property Damage" to Vehicles.*

Every auto insurance policy provided to EPPs makes clear that covered losses are limited to property damage losses caused by an automobile accident, vehicle collision, or theft—not antitrust injury. For example:

- Liberty Mutual's LibertyGuard Auto Policy and Geico's Personal Automobile Insurance Policy both provide:[5]

  - "We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident."

  - "We will pay for direct and accidental loss to 'your covered auto' or any 'non-owned auto', including their equipment, minus any applicable deductible shown in the Declarations."

  - "We will pay for loss to 'your covered auto' caused by: Other than 'collision' only if the Declarations indicate that Other Than Collision Coverage is provided for that auto. 'Collision' only if the Declarations indicate that Collision Coverage is provided for that auto."

- Mercury Insurance Group's Policy provides:[6]

  - "the company makes the following agreements with the named insured: . . . To pay on behalf of the insured all sums, except punitive or exemplary damages, which the insured shall become legally obligated to pay as damages because of: A. bodily injury sustained by any person other than an insured; B. property damage; caused

---

[5] X-1 ("Liberty Policy") at 2, 6; X-2 ("GEICO Policy") at 4, 9 (The GEICO Policy is the same policy referenced in FRS's letter and contains the same policy language as the Liberty Policy).

[6] X-3 ("Mercury Policy") at 1, 6.

by accident, arising out of the ownership, or use, of an owned automobile by an insured or arising out of the use of a non-owned automobile by an insured."

- o "The company, at its option, will repair, replace or pay for the owned automobile, or part thereof, for loss caused by theft or for loss caused by direct and accidental damage to the owned automobile other than damage caused by collision."

- o "The company, at its option, will repair, replace or pay for the owned automobile or part thereof, for loss caused by collision but only for the amount of each loss in excess of the deductible stated in the declarations."

Even when the GEICO and Liberty Mutual policies reference coverage for damages "other than collision," that coverage is limited to property damage caused by "missiles or falling objects; fire; theft or larceny; explosion or earthquake; hail, water, flood; malicious mischief or vandalism; riot or civil commotion; or breakage of glass."[7] In the auto insurance policies EPPs have been provided, no coverage exists for any antitrust injuries.

**2. *Auto Insurers Do Not Extend Coverage for Overcharges Caused by Antitrust Violations.***

Nothing in FRS's letter or the auto insurance policies themselves suggests that Auto Insurers extend coverage to their insureds for any losses sustained due to overcharges caused by price-fixing, bid rigging, market allocation or any other violations of the antitrust laws. Had an insured actually filed a claim against an Auto Insurer to recover overcharges caused by price-fixing, nothing in any insurance policy even remotely suggests that an Auto Insurer would have adjusted, accepted, allowed, or processed such a claim. In fact, FRS's letter concedes this point and claims, "That the Insurance Policies Do Not Cover Antitrust Losses is Irrelevant to Auto Insurers' Rights to Equitable Subrogation." FRS Ltr. at 7. Thus, FRS seeks equitable subrogation for a type of loss that it admits the Auto Insurers do not insure against and which the terms of the insurance policies do not contemplate.

---

[7] X-1 at 7; X-2 at 9.

FRS claims that Auto Insurers should recover as subrogees anyway because Auto Insurers essentially stand in the shoes of the insured vehicle purchaser as the vehicle "owner" after making the indemnity payment. *See* FRS Ltr. at 6. But, even assuming *arguendo*, that is true, it would only make the Auto Insurers used vehicle purchasers, who are excluded from the settlement classes.

FRS references several cases that discuss the general concept of subrogation. But none of its cited cases support equitable subrogation of an insured's antitrust claims, especially when such claims are not covered under any applicable policy of insurance. *See* FRS Ltr. at 7 (noting that "the Insurance Policies Do Not Cover Antitrust Losses"). For example, each of the cases cited by FRS involved subrogation of personal injury, property damage, or tort liability claims that insurers unquestionably covered under applicable insurance policies. FRS Ltr. at 3, n.6 (citing *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2012 WL 5055810, *4-5 (D. Minn. Oct. 18, 2012) (involving property damage and corrosion claims allegedly caused by brass plumbing fittings that insurers covered under applicable insurance policies); *Roberts v. Electrolux Home Prods.*, No. SACV12-1644-CAS, 2014 WL 4568632, *5-6 (Sept. 11, 2014) (involving property and fire damage claims allegedly caused by defective dryers that insurers covered under applicable insurance policies); *Klug v. Watts Regulator Co.*, No. 8:15-cv-00061, 2016 WL 7156480 (D. Neb. Dec. 07, 2016) (involving product liability and property damage claims allegedly caused by defective water heaters covered under applicable insurance policies)).

Each of the cases FRS cites about the prevention of unjust enrichment likewise involved subrogation of claims that policies unquestionably covered. FRS Ltr. at 3, n.7 (citing *Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 753 (6th Cir. 2007) (involving claims of excess insurer against primary insurer for bad faith in failing to settle a tort claim against mutual insured who faced personal injury and property damage claims that both insurers covered); *Sorge v. Nat'l*

*Car Rental Sys.*, 512 N.W.2d 505, 506 (Wis. 1994) (involving personal injury claims allegedly caused by a vehicle collision the insurer covered)).

In *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 198 Cal. Rptr. 756, 757 (Cal. App. 1984)—a case relied on by FRS—the court rejected the insurer's equitable subrogation claim because the insurer "has not compensated its insureds for the same losses contemplated under the antitrust claim." In so holding, the Court noted that equitable subrogation requires that "the insurer . . . ***has compensated the insured*** for the ***same loss*** for which [the defendant] is liable." *Id.* at 691. FRS has not, as a matter of its policy, compensated insureds for any antitrust injuries and FRS cannot establish, as addressed more fully below, that any compensation provided to insureds included any compensation for antitrust overcharges. *Fireman's Fund* therefore hurts rather than helps FRS's position.

### 3. Auto Insurers Do Not Compensate Insureds for Overcharges Caused by Antitrust Violations.

FRS does not point to any provisions of an insurance policy that supports the application of subrogation in this litigation. Instead, FRS claims that equitable subrogation "does not depend on the extent of coverage" and "depends solely on whether the indemnity payment compensated the insured for the losses that the insurer seeks to recover from the responsible party." FRS Ltr. at 9.

FRS, however, fails to provide evidence that any Auto Insurer was obligated to or actually compensated or reimbursed any class member for anticompetitive overcharges caused by price-fixing or other antitrust violations suffered at the point of purchase. FRS also fails to explain how indemnity payments for ***used*** vehicles could possibly compensate class members for anticompetitive overcharges sustained at the time they purchased or leased a new vehicle, in many

cases years before any automobile accident occurred. *See GEICO*, 345 F. Supp. 3d at 829-30. It is therefore, not just far from "self-evident" (as FRS claims) that the indemnity payments paid to insureds "compensated Total Loss Insureds for their Antitrust Losses" FRS Ltr. at 6, that contention is baseless.

Instead, FRS makes entirely conclusory claims. It states: "Even though the policies did not cover Antitrust Losses, Auto Insurers' indemnity payments, which equaled the market value of the property damaged, compensated Total Loss Insureds for their entire lost interests in their Total Loss Vehicles, which necessarily included their Antitrust Losses." FRS Ltr. at 9. This is wrong for multiple reasons. First, FRS relies on the incorrect premise that Auto Insurers actually compensated insureds for antitrust losses when no insurance policy extended coverage for such antitrust injuries. Second, FRS's argument that the indemnity payments made to insureds must necessarily include compensation for anticompetitive overcharges simply ignores the fact that those payments did not indemnify insureds for those overcharges. Third, FRS ignores the limited policy terms upon which an Auto Insurer would have compensated insureds for their property damage losses.

For example, every Auto Insurer limits payment to the actual current value of the damaged vehicle. [8] This actual current value considers physical wear and tear, deterioration and depreciation.[9] This means that any Total Loss Payments made to an insured will greatly differ from (and be substantially less than) the price an insured would have paid at the time she

---

[8] X-1 at 9; X-2 at 11; X-3 at 16.

[9] *Id. See e.g.* X-3 at 7-8 ("If an owned automobile sustains a total loss . . . the company shall not pay more than twenty-five (25%) of the agreed or appraised value of the owned automobile at the time of the total loss.").

"purchased or leased a new Vehicle in the United States."[10] This is important because, under the class definition, each class member would have paid the entire purchase price of a new vehicle at the time of purchase or lease, including the supra-competitive prices imposed by defendants and passed on by manufacturers and auto dealers to the classes. By contrast, Auto Insurers do not compensate insureds for any, let alone the entire purchase price of a new vehicle because—much like used car purchasers who are excluded from the class—Auto Insurers only pay "actual cash value" at the time of the accident, reduced by depreciation, physical deterioration, obsolescence, and any repair costs for pre-existing damage.[11] Given these reductions, indemnity payments in no way compensate insureds for their "entire lost interests," let alone compensate insureds for anticompetitive overcharges.[12]

## C. Auto Insurers' Subrogation Rights Do Not Extend to Overcharges Caused by Antitrust Violations.

Auto Insurers never insured against, never pursued and never paid any insureds for any antitrust overcharges sustained at the time of purchase. Several courts have determined that a claim for subrogation in these circumstances would be contrary to the law of subrogation and have rejected similar attempts by insurers to assert subrogation rights.

For example, in *International Brotherhood of Teamsters, Local 734 Health & Welfare*

---

[10] *See e.g.*, No. 2:12-cv-00603, Dkt. 192-1 (Apr. 2, 2018) (defining class as "All persons and entities that, from January 1, 2000 through the Execution Date, **purchased or leased a new Vehicle** in the United States not for resale, which included one or more Heating Control Panel(s) as a component part . . .")

[11] X-1 at 9; X-2 at 11; X-3 at 10, 16.

[12] FRS incorrectly concludes that it is "self-evident" that Auto Insurers compensated insurers for antitrust losses. FRS Ltr. at 6. But FRS fails to explain how a payment for "actual cash value" at the time of loss would put Auto Insurers in any greater position than purchasers of **used** cars – who are expressly excluded from the class.

*Trust Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) (Easterbrook, J.), several insurance companies brought actions alleging that defendant tobacco companies collusively misrepresented the health effects of tobacco and conspired to increase the cost of cigarettes. *Id.* at 823. They claimed that this resulted in insurance companies paying excessive benefits to smokers, in violation of state and federal antitrust law. *Id.* at 823-824. The Seventh Circuit held the insurance companies could only recover to the extent that their contracts subrogated them to the rights of the smokers as the real victims. *Id.* at 827. Since the insurance companies were not immediate purchasers of tobacco products and their injury was remote from any antitrust violation, the insurance companies could not maintain a private antitrust action. *Id.* at 823-824, 828.

In *Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581 (7th Cir. 2000) (Easterbrook, J.), the Seventh Circuit again rejected the insurers' subrogation claims. Following *International Brotherhood of Teamsters*, several insurance companies filed new complaints, identical in all material respects to the old, except they added "as subrogees" or an equivalent phrase every time they mentioned themselves. *Id.* at 580. The court observed that the insurers may have been subrogated to their insured's tort claims related to the health effects of tobacco but questioned the ability of insurance companies to pursue antitrust claims that the insurance companies never covered and never paid on behalf of insureds. *Id.* at 581. Judge Easterbrook, writing for the Seventh Circuit, explained:

> Doubtless the Blues are subrogated to their insureds' tort claims. Yet this complaint is dominated by claims under the antitrust laws, RICO, and state consumer-fraud statutes. It is unclear why health insurers are entitled to pursue these claims, when (for example) the complaint does not give any reason to believe that the insurers have compensated the insured for antitrust injury or purchased the right to pursue smokers' antitrust claims.

*Id.* at 581 (affirming dismissal of amended complaints).

11

In *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 198 Cal. Rptr. 756, 757 (Cal. App. 1984), the California Court of Appeal similarly rejected a subrogation claim when the insurance company only compensated its insureds for fire damage and burglaries but sought subrogation for alleged antitrust injuries caused by anticompetitive price fixing. In that case, separate incidents of fire or burglary occurred at the insured's premises. *Id.* at 759. The alarm system failed to function properly, either because of mechanical failure or because the alarm company personnel failed to notify police or fire departments upon receiving signals from otherwise properly functioning systems. *Id.* The insurance company alleged causes of action based on breach of contract and negligence. *Id.* at 757. It also alleged violations for conspiracy to fix prices by inclusion of liquidated damages provisions in the alarm companies' service contracts. *Id.*

The court held that the insurance company was not equitably subrogated to any claim for alleged anticompetitive price fixing because none of the compensation paid by the insurer to its insureds was related to pricing terms of the alarm systems. *Id.* at 762. In rejecting subrogation for the antitrust claims, the court found that equitable subrogation requires a showing that "the insurer, in whole or in part, has compensated the insured for the ***same loss*** for which the party to be charged is liable." *Id* (emphasis added). The court then explained:

> The loss [under any purported price-fixing scheme], if any, to the insured consists either of higher priced alarm services or compelled costs such as the additional insurance premiums the insured may be burdened with to gain similar pricing terms.
>
> Fireman's [the insurer] has not compensated its insureds for the same losses contemplated under the antitrust claim. None of Fireman's compensation paid to its insured is related to pricing terms of the alarm systems.

*Id.* Thus, the insurance company was not equitably subrogated to the potential claim of its insureds that the anticompetitive inclusion of liquidated damage provisions in alarm industry contracts

amounted to a conspired price-fixing scheme. The insurance company did not extend coverage or compensate insureds for such claims and could not assert equitable subrogation for claims it did not cover.[13]

In *Shockley v. Harleysville Mutual Insurance Co.*, 553 A.2d 973 (Pa. Super. 1988), the Superior Court of Pennsylvania rejected a similar subrogation claim by an insurer, Harleysville, because the fire damage to insured's vehicle was completely unrelated to the monies received by the insured in a breach of warranty of title action. In that case, the plaintiff's car was destroyed in a fire. *Id*. at 974. After the fire, the plaintiff sued the dealer who sold the vehicle for breach of warranty of title and won a recovery. *Id*. When the plaintiff sued her insurer to recover the car's value under her insurance policy, Harleysville refused to pay and sought subrogation for plaintiff's recovery in the breach of warranty action. *Id*.

The court rejected the insurer's subrogation claim and explained that "although the insurer may 'stand in the shoes of the insured' upon paying a claim, it does so only to the extent and with regard to the loss it covered. The insurer does not magically acquire every conceivable right of the insured by virtue of meeting its contractual obligation." *Id*. at 975-76. Because the breach of warranty of title recovery was unrelated to the fire loss, "there are no grounds for [the insurer] to be subrogated to the proceeds of [its insured's] breach of warranty of title action against Tornetta." *Id*. at 976. This was so, even though the same economic harm to the insureds, namely, the loss of

---

[13] *See also Employers' Liab. Assur. Corp., Ltd., of London v. Daley*, 51 N.Y.S.2d 567, *aff'd*, 67 N.Y.S.2d 233 (N.Y. 1944) (rejecting insurer's subrogation claim where policy covered town's liability to volunteer firemen for medical services and lost time caused by injuries while performing their firemen duties, but settlement payments made to firemen by third party were for injuries unrelated to medical services and lost time, the court found the insurer had no subrogation rights, since the insured loss was not the same loss for which the firemen recovered).

the value of the vehicle in question, occurred by two entirely separate invasions of the insured's rights.

The court further found the "subrogation argument unconvincing" because not only was Shockley's title warranty recovery "for a different loss than that being claimed under the insurance contract," the recovery was also "for a loss that [Harleysville] apparently did not even extend coverage for." *Id*. at 294. The court "hardly believe[d] that [Harleysville] would have provided any kind of coverage had [Shockley] suffered a loss related to a lack of good title" and noted that permitting subrogation "would not only allow a subrogation right of sorts against monies received by [an insured] for a loss different than that which [an insurer] is being asked to cover, it would also allow subrogation against monies received by [an insured] for a loss the type of which [an insurer] had not even extended any insurance coverage to appellant for." *Id*. The court concluded that this result would "contravene[] the entire concept of subrogation." *Id*.

These cases are directly on point here FRS admits that the Auto Insurers do not extend coverage for anticompetitive overcharges caused by antitrust violations. FRS has not presented evidence that the compensation paid to insureds is related to overcharges imposed on class members or the antitrust violations alleged in this litigation. Indeed, had an insured filed a claim against an Auto Insurer to recover overcharges caused by price-fixing, FRS does not even remotely suggest that an Auto Insurer would have paid (or even considered adjusting or paying) such a claim.

**D. Property Damage Losses Caused by Automobile Accidents Are Completely Unrelated to Overcharges Caused by Antitrust Violations.**

FRS admits that equitable subrogation requires that "the insurer has compensated the insured in whole or in part for ***the same loss for which the defendant is primarily liable***."

14

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296, 302-03 (1998). FRS Ltr. at 3, n.5. To establish a right to equitable subrogation, therefore, Auto Insurers bear the burden of establishing that the defendants are "primarily liable to the insured for a loss under a policy of insurance." *Phila. Indem. Ins. Co. v. Pace Suburban Bus Serv.*, 67 N.E.3d 556, 565 (Ill. App. 2016); *see also Rausch v. Allstate Ins. Co.*, 882 A.2d 801, 807 (Md. App. 2005) (explaining that rationale for equitable subrogation is "to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt").

In *In re Air Crash Disaster*, 86 F.3d 498, 549 (6th Cir. 1996), the Sixth Circuit explained that "[e]quitable subrogation is a legal fiction, which permits a party who satisfies another's obligation to recover from the party 'primarily liable' for the extinguished obligation." Therefore, "[s]ubrogation is available only when the subrogee pays or discharges a debt for which another is primarily liable." *Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*, 749 F.2d 1277, 1282 (9th Cir. 1984). "One cannot seek subrogation for paying one's own debts." *Id.* (citing *Livingston v. Shelton*, 537 P.2d 774, 777 (Wash. 1975), *cert. denied*, 424 U.S. 958 (1976)); *see also, Grant Thronton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1048 (2nd Cir. 1992) (affirming dismissal of equitable subrogation claim because plaintiff failed to establish it paid a debt for which the defendant was primarily liable); *In re New England Fish Co.*, 749 F.2d at 1282 (finding plaintiff was not entitled to subrogation because it did not pay a debt for which any defendant was primarily liable).

### 1. *Antitrust Defendants Are Not Primarily Liable for any of the Property Damage Losses Covered by Auto Insurers.*

Here, the defendants in this litigation are, to say the least, not *primarily liable* for the auto accidents, vehicle collisions, or theft that Auto Insurers insured under their insurance policies.

Indeed, they are not liable at all for those losses. Defendants are auto parts suppliers accused of fixing the prices of auto parts and causing class members to pay anticompetitive overcharges that were passed on by vehicle manufacturers and then by automobile dealers. There is no allegation that the overcharges imposed by defendants contributed in any way whatsoever to the property damage losses covered by Auto Insurers. FRS does not even assert that defendants are *partially liable* for the types of loss that Auto Insurers covered under automobile insurance policies. Thus, when Auto Insurers compensated insureds for property damage caused by auto accidents, vehicle collision, or theft, the Auto Insurers did not and could not extinguish any debts attributable to antitrust injuries caused by the defendants.

### 2. *Antitrust Defendants Are Not Joint Tortfeasors with Third Parties Legally Liable for the Property Damage Losses Covered by Auto Insurers.*

In support of its argument that property damage losses and anticompetitive overcharges constitute one loss, FRS mistakenly relies upon case law about joint tortfeasors. FRS Ltr. at 5, n.10 and 7, n.14 (citing *Kassman v. American Univ.*, 546 F.2d 1029 (D.C. Cir. 1976) (involving two lawsuits against joint tortfeasors in libel and wrongful interference action, where the court found a settlement by one tortfeasor must offset a verdict against the other joint tortfeasor); *Snowden v. D.C. Transit Sys., Inc.*, 454 F.2d 1047, 1048 (D.C. Cir. 1971) (finding verdict against one tortfeasor in a vehicle collision incident must be reduced by the settlement of another alleged joint tortfeasor); *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999) (involving action by insurer against third-party tortfeasors legally responsible for the vehicle collision and medical expenses the insurer paid the insured under applicable insurance policy); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 97 (2013) (involving action by insurer against insured for reimbursement of medical expenses paid to the insured and later recovered by the insured in settlement with a third-party tortfeasor legally

responsible for the car accident and medical expenses the insurer paid and covered under applicable insurance policy)).

In FRS's cited cases, the incidents and injuries arose from an interlocking, common nucleus of facts, which caused one loss. Each tortfeasor played a role and bore responsibility for the same losses at issue in those lawsuits. FRS's cited cases also involved incidents and injuries that an insurer actually covered under its applicable policy of insurance.

By contrast, none of the defendants in this case could possibly be jointly or severally liable for any property damages caused by someone who was at fault for causing an accident or collision. None of the facts necessary to prove liability against tortfeasors responsible for accidents or collisions is dependent upon facts necessary to recover against the defendants in this action. And none of the facts surrounding alleged property damage caused by automobile accidents overlap with the facts necessary to prove overcharges caused by antitrust violations. Tellingly, FRS does not even suggest that the defendants in this action bear any responsibility whatsoever for the accidents that Auto Insurers covered under applicable insurance policies. In short, the defendants in this litigation are not joint tortfeasors with any person or entity that caused an automobile accident, and defendants are not legally responsible for any of the losses caused by an automobile accident.[14]

---

[14] FRS cited several cases for the proposition that a plaintiff is only entitled to receive one recovery. FRS, however, fails to explain how the referenced cases are analogous to the facts or the legal questions at issue here. *See, e.g.* FRS Ltr. at 5, n.10 (citing *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inc.*, 189 F.3d 1017, 1031-32 (9th Cir. 1999) (involving securities fraud, fraudulent inducement, and breach of contract action in which the court reached the unremarkable conclusion that "the prevailing plaintiff may not recover tort damages and contract damages for the same wrong"); *Burgess v. Premier Corp.*, 727 F.2d 826, 837 (9th Cir. 1984) (remitting jury award to plaintiffs because "rescission was an appropriate remedy for the doctors' claims," and "the jury improperly calculated the negligent misrepresentation damage awards"); *Hoyos v. Hammer*

### 3. Property Damage Losses and Overcharges Caused by Antitrust Violations are Demonstrably Different and Not the Same Loss.

FRS incorrectly contends, without any support, that "[i]t is fundamental economics that, whether Eligible Vehicles became Total Loss Vehicles as a result of fires, floods or collisions, total Loss Insureds suffered one loss—namely, their interests in those Eligible Vehicles." None of the cases cited by FRS stand for the proposition that FRS proposes. FRS Ltr. at 4, n.9. Indeed, none of the cases cited by FRS in support of its statement discuss subrogation. None say that total loss insureds suffered one loss. None discuss the "fundamental economics" of Total Loss Payments. And none even remotely resemble the facts or legal questions at issue.  This is not a question of "fundamental economics" at all. The question is whether the "losses" covered by the policies include economic harm due to antitrust injuries. It is beyond peradventure that the policies do not provide any coverage for antitrust injuries.

Each of the cases cited by FRS stand for the entirely inapposite proposition that a contract of insurance is a personal contract and is generally limited to the named insureds. *See, e.g.*, *Zaghi v. State Farm Gen'l Ins. Co.*, 77 F. Supp. 3d 974, 978 (N.D. Cal. 2015) (dismissing breach of contract action against insurer because plaintiff admitted he was not a named insured on the policy on the date of loss and "recovery of proceeds under an insurance contract is generally limited to the named insureds"); *Russell v. Williams*, 374 P.2d 827, 829 (Cal. 1962) (affirming judgment

---

*Homes, Inc.*, 717 F. Supp. 819, 821 (S.D. Fla. 1989) (remanding case to state court under 28 U.S.C. § 1441(c) because alleged third-party claim was not "separate and independent" from the main action); *Fair Oaks Trans. Co v. Central Mfrs' Mut. Ins. Co.*, 127 F. Supp. 507, 508 (S.D.N.Y. 1954) (remanding action because "the crucial facts in the controversy with both defendants are the circumstances surrounding the disappearance of the tractor and trailer from the lot"); *J&R Elec. Inc. v. One Beacon Ins. Co.*, 824 N.Y.S.2d 763 (Table) (N.Y. Sup. Ct. Dec. 13, 2005) (dismissing breach of contract action because the insurance company already paid for the business interruption loss for which the plaintiff sought coverage)).

against plaintiff in action to recover from the estate of her former husband the proceeds of a fire insurance policy in which she was not named and explaining "the proceeds of a policy issued to and paid for by the named insured on his separate insurable interest are not subject to the claims of others who also have an interest in the property covered by the policy"); *Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 608 (7th Cir. 1987) (finding unnamed beneficiary could bring an action under the insurance policy because the land trustee was barred from bringing an action and the insurance company was on notice that the unnamed beneficiary was the real party in interest); *Counihan v. Allstate Ins. Co.*, 827 F. Supp. 132, 134 n.3 (E.D.N.Y. 1993) (finding the government, a non-party to the insurance contract, could not seek compensation under insurance contract because "A contract of insurance is a personal contract between the property owner and the insurer"); *Guardo v. Buzzuro*, No. 1905 EDA 2017, 2018 WL 3133679, *3 (Pa. Super. Ct. June 27, 2018) (finding decedent's personal interest in insurance proceeds passed to her estate and not the remaining owner of the home because "a party's right to recover under an insurance policy is determined by the terms of the policy and not the ownership of the underlying insured asset").

FRS incorrectly concludes: "That Auto Insurers' indemnity payments compensated Total Loss Insureds for their Antitrust Losses—the same losses that the settling defendants, the parties alleged to have caused them, are compensating via the EP Settlements—is, therefore, self-evident." FRS Ltr. at 6. As shown above, FRS's conclusory contention is nothing more that FRS's *ipse dixit,* entirely unsupported by the facts and law, including the entirely inapposite case law FRS cites. *Id.* at n.13 (citing *Schultz v. American Airlines, Inc.*, No. 18-80633, 2019 WL 3000448 (S.D. Fla. July 10, 2019) (dismissing breach of contract action because advertisement of a specific ticket price did not constitute a binding offer); *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13-13804, 2015 WL 3541905 (E.D. Mich. Apr. 30, 2015) (denying motion to amend counter-

complaint because even if insurer reduced payment for estimated lost "net profits" by the amount of "rents paid," it still had to cover those rents as "continuing normal operating expenses"); *FDIC v. First Mort. Inv.*, 485 F. Supp. 445 (E.D. Wis. 1980) (mentioning the words "self-evident" and "insurance" but otherwise having no connection to the pertinent arguments or issues here)).

It is clear, that the antitrust defendants in this action are not liable at all for the losses suffered due to automobile accidents that Auto Insurers covered under their policies. It is also clear that the anticompetitive overcharges alleged in this action arise from an entirely different conduct and are based on entirely different legal claims than any claims for physical property damage losses covered by Auto Insurers. This stark difference—combined with the fact that Auto Insurers do not extend coverage or compensate insureds for alleged antitrust violations—is fatal to Auto Insurers purported subrogation claims.

### CONCLUSION

This Court should deny FRS's request for a declaration determining that Auto Insurers are entitled to share in the End-Payor Plaintiffs' Settlements as purported subrogees of insureds to whom Auto Insurers made indemnity payments for vehicles that were deemed a total loss.

Dated:  January 16, 2020                                    Respectfully submitted,

                                                                        SUSMAN GODFREY L.L.P.

                                                                        */s/ Chanler A. Langham*
                                                                        Marc M. Seltzer
                                                                        Steven G. Sklaver
                                                                        1900 Avenue of the Stars, Suite 1400
                                                                        Los Angeles, California 90067-6029
                                                                        Telephone: (310) 789-3100
                                                                        mseltzer@susmangodfrey.com
                                                                        ssklaver@susmangodfrey.com

                                                                        Terrell W. Oxford

Chanler A. Langham
SUSMAN GODFREY LLP
1000 Louisiana Street, 5100
Houston, Texas 77002
Telephone: (713) 651-9366
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Adam J. Zapala
Elizabeth Castillo
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
fdamrell@cpmlegal.com
azapala@cmplegal.com
ecastillo@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
399 Park Avenue, Suite 3600
New York, New York 10022
Telephone: (212) 980-7400
hsalzman@rkmc.com
bpersky@rkmc.com
wreiss@rkmc.com

***Interim Co-Lead Class Counsel for End-Payor Plaintiffs***

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2020, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to all parties of record.

*/s/ Chanler A. Langham*
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**