## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Hon. Sean F. Cox Mag. Judge R. Steven Whalen |
| THIS DOCUMENT RELATES TO: | |
| ALL END-PAYOR ACTIONS | |

## <u>FINANCIAL RECOVERY SERVICES, LLC'S MOTION TO INTERVENE</u>

PLEASE TAKE NOTICE that, upon the accompanying memorandum,

Financial Recovery Services, LLC d/b/a/ Financial Recovery Strategies ("FRS"),

by its undersigned attorneys, will move this Court, before the Honorable Sean F.

Cox, at the United States District Court for the Eastern District of Michigan, at a

time and place set by the Court, for an Order pursuant to Federal Rule of Civil

Procedure 24(a), permitting FRS to intervene in this action and for such other and

further relief as the Court deems just and proper.[1]

In a telephonic conference on June 15, 2020, counsel for FRS explained to

Class Counsel the nature of the motion and its legal basis and requested Class

---

[1] In particular, FRS respectfully requests that the Court docket FRS's letter briefs dated December 13, 2019, and January 30, 2020, which are attached hereto as Exhibits A and B.

Counsel's consent to the relief sought.  Class Counsel responded via email that

Class Counsel object to FRS's motion.  Defendants take no position on the motion.

Dated:  June 18, 2020                    Respectfully submitted,

　 /s/ *Laura S. Faussié*
Jonathan T. Walton, Jr. (P32969)
Michael P. Donnelly (P45221)
Laura S. Faussié (P48933)
FRASER TREBILCOCK
　 DAVIS & DUNLAP, P.C.
One Woodward Avenue, Suite 1550
Detroit, MI 48226
(313) 237-7300
jwalton@fraserlawfirm.com
mdonnelly@fraserlawfirm.com
lfaussie@fraserlawfirm.com

Aaron M. Panner
Matthew R. Huppert
Daniel S. Severson
Christine A. Bonomo
KELLOGG, HANSEN, TODD,
　 FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
mhuppert@kellogghansen.com
dseverson@kellogghansen.com
cbonomo@kellogghansen.com

*Counsel for Financial Recovery
Services, LLC*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Hon. Sean F. Cox Mag. Judge R. Steven Whalen |
| THIS DOCUMENT RELATES TO: | |
| ALL END-PAYOR ACTIONS | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>FINANCIAL RECOVERY SERVICES, LLC'S MOTION TO INTERVENE</u>

# **TABLE OF CONTENTS**

Page

ISSUE PRESENTED ................................................................................. ii

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ...................................................................................... 1

BACKGROUND ......................................................................................... 4

I.   Nature and Current Status of the End-Payor Actions ..................... 4

II.  FRS's and the Insurers' Subrogation Interests ............................... 5

III. FRS's Attempts To Resolve Its Disagreements with Class
     Counsel and FRS's Motion for Declaratory Relief ......................... 6

LEGAL STANDARD ................................................................................. 10

ARGUMENT .............................................................................................. 11

I.   FRS May Intervene As of Right ...................................................... 11

     A.   FRS and the Insurers Have a Substantial Legal Interest in
          This Case ............................................................................... 11

     B.   FRS Will Not Be Able To Protect Its Interests Absent
          Intervention Because Class Counsel Do Not Represent
          Those Interests ...................................................................... 12

     C.   FRS's Motion Is Timely ......................................................... 16

II.  The Insurers Should Be Permitted To Further Document Their
     Claims After the Court Rules on FRS's Motion for Declaratory
     Relief ............................................................................................. 18

CONCLUSION ........................................................................................... 19

## ISSUE PRESENTED

Should Financial Recovery Services, LLC d/b/a/ Financial Recovery Strategies

("FRS") be permitted to intervene in the End-Payor Actions?

FRS says "Yes."

# TABLE OF AUTHORITIES

Page

## CASES

*Allstate Ins. Co. v. Mazzola*, 175 F.3d 255 (2d Cir. 1999) ........................................5

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...........................................14

*Boettcher v. Loosier*, 2016 WL 2654384 (W.D. Tenn. May 4, 2016)....................17

*Crazy Eddie Sec. Litig.*, *In re*, 906 F. Supp. 840 (E.D.N.Y. 1995) ........................19

*Elec. Carbon Prods. Antitrust Litig.*, *In re*, 622 F. Supp. 2d 144
    (D.N.J. 2007) ........................................................................................19

*GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799
    (E.D. Mich. 2018).................................................................................1, 5

*Jansen v. City of Cincinnati*, 904 F.2d 336 (6th Cir. 1990)....................................16

*Krueger v. Cartwright*, 996 F.2d 928 (7th Cir. 1993) .............................................11

*Lemaster v. Taylor Indus., LLC*, 2011 WL 1577808
    (E.D. Ky. Apr. 26, 2011) .................................................................12

*Maricco v. Meco Corp.*, 316 F. Supp. 2d 524 (E.D. Mich. 2004)....................11, 17

*McDonald v. E.J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1970) ...............................12

*Mich. State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997).................10, 11, 13

*Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54 (S.D.N.Y. 2013)...................17

*Schmid v. Bui*, 2020 WL 377821 (N.D. Ohio Jan. 22, 2020) ..................................12

*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013).........................................11

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977)........................................16

*Weaver v. Univ. of Cincinnati*, 970 F.2d 1523 (6th Cir. 1992) ...............................13

iii

**RULES**

Fed. R. Civ. P.:

Rule 1 ................................................................................................3, 15

Rule 6(b)(1) ............................................................................................19

Rule 24(a)(2)....................................................................................10, 11, 12

**OTHER AUTHORITIES**

16 *Couch on Insurance* (3d ed.)................................................................5

3 *Newberg on Class Actions* (5th ed.)...............................................12, 14

## **INTRODUCTION**

Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS") has been retained by several automobile insurers (the "Insurers") that are members of the End-Payor Settlement classes in this MDL to pursue recovery of settlement amounts that are due to the Insurers as a result of the payments they made to class members for eligible vehicles that were deemed a total loss ("Total Loss Vehicles").[2] As alleged in this MDL, the settling Defendants' anticompetitive conduct increased the market price of class members' vehicles. The Insurers' payments to their insureds for Total Loss Vehicles included compensation for the overcharges that their insureds incurred as a result of the alleged antitrust conspiracy when they purchased those vehicles. Accordingly, under principles of equitable subrogation recognized in *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799 (E.D. Mich. 2018), the Insurers "succeed[ ] to the rights of [their] insureds in order to require [Defendants] to reimburse" the Insurers "for the payment[s] [they] ha[ve] made to [their] insureds arising from the losses they sustained in purchasing [vehicles] at supra-competitive prices." *Id.* at 832.

---

[2] The End-Payor Settlement classes include those who, during the class periods, purchased or leased a new vehicle that contained at least one automotive part alleged to have been impacted by Defendant's anticompetitive conduct. *See, e.g.*, Order Granting Final Approval to the Round 3 Settlements, *In re Wire Harness Sys.*, No. 2:12-cv-00103, PageID.20398-20419, ECF No. 628.

FRS has pursued these claims on behalf of the Insurers by submitting claims and through discussions and correspondence with Counsel for End-Payor Plaintiffs ("Class Counsel"). In the course of those communications, Class Counsel made clear that they did not agree that the Insurers were entitled to any recovery on account of payments made to insureds for Total Loss Vehicles. The difficulty and expense associated with fully documenting the Insurers' claims – covering many thousands of vehicles and claims paid over more than two decades – will be substantial, to say the least. FRS and Class Counsel therefore agreed that the threshold legal issue – that is, whether the Insurers are subrogated to insureds' claims for Total Loss Vehicles to the extent of the Insurers' indemnity payments to the insureds – would be submitted to the Court for resolution. Pursuant to that agreement, FRS submitted a letter motion to the Court on December 13, 2019, setting forth the legal basis for the Insurers' claims; Class Counsel submitted a response on January 16, 2020, and FRS replied on January 30, 2020.[3]

Although the Court docketed Class Counsel's January 16 response, it did not docket the letter briefs FRS had submitted. When FRS inquired, Judge Battani's staff suggested to FRS that, in order to obtain the Court's resolution of the issue, it may need to intervene in the action. As set forth below, under the circumstances,

---

[3] The FRS submissions are attached as Exhibits A and B to the Leibell Declaration, filed herewith. At the Court's direction, those submissions may be refiled upon the granting of this motion to intervene.

the requirements for intervention as of right are met:  FRS and the Insurers assert an interest in the End-Payor Settlements; the ability to protect that interest may be impaired if the Court does not rule on FRS's motion for declaratory relief; Class Counsel (which oppose the Insurers' recovery) do not represent FRS's or the Insurers' interests; and the motion – which comes before the current claim filing deadline, before the Settlement Administrator has completed processing proofs of claim,  and before any settlement funds have been distributed – is timely.  *See infra* pp. 11-18.  Furthermore, intervention is intended solely to give effect to the procedure to which Class Counsel already agreed:  submission for the Court's determination of the discrete *legal* issue concerning the Insurers' subrogation rights, thus paving the way for the appropriate resolution of any claims.  That procedure will contribute to "the just, speedy, and inexpensive determination" of this action.  Fed. R. Civ. P. 1.

Class Counsel have nevertheless informed FRS that they oppose intervention.  Accordingly, FRS respectfully requests that the Court grant FRS's request to intervene; declare that the Insurers, as subrogees to their insureds, may recover for Total Loss Vehicles from the End-Payor Settlements; and clarify that the Insurers may supplement their claims in accordance with the Court's resolution of the threshold legal issue.

# BACKGROUND

## I.    Nature and Current Status of the End-Payor Actions

This MDL consists of class actions alleging that Defendants, who are manufacturers and suppliers of automotive parts, unlawfully agreed to fix the prices of those parts.  Consumers and businesses purchased or leased vehicles containing those parts, or indirectly purchased replacement parts, at prices elevated as a result of Defendants' conduct.

Those consumers and businesses – so-called End-Payor Plaintiffs – have settled with 73 Defendants in four groups, or "rounds."  The Court has already entered final judgments approving each of the Round 1, Round 2, and Round 3 Settlements.  In August 2019, the Court authorized Class Counsel to disseminate notice of the Round 4 Settlements to class members, and ruled that "all members of the Round 1, 2, 3, and 4 Settlement Classes who have not previously filed claims" could do so on or before December 31, 2019.[4]  The Court subsequently extended that deadline twice, and the current claims-filing deadline is the date of this filing, June 18, 2020.[5]  The Court also originally scheduled a fairness hearing for the

---

[4] *See* Order Granting Authorization to Disseminate July 2019 Notice, *In re Heater Control Panels*, No. 2:12-cv-00403, PageID.10398-10399, 10401, ECF No. 291.

[5] *See* Order, PageID.37511, ECF No. 2032; Order, PageID.37658, ECF No. 2044.

Round 4 Settlements to take place on December 10, 2019, but that hearing was postponed indefinitely,[6] and the End-Payor Plaintiffs' motion for final approval of the Round 4 Settlements remains pending.

## II.   FRS's and the Insurers' Subrogation Interests

The Insurers retained FRS to file and manage their claims in this MDL's End-Payor Settlements.  Leibell Decl. ¶ 3.[7]  As discussed in briefing previously submitted to the Court, the doctrine of subrogation permits the Insurers to recover from the End-Payor Settlements.  *See* Exs. A-B.  Subrogation is an equitable doctrine which "allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." *GEICO*, 345 F. Supp. 3d at 831 (quoting *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999)); *see also*, *e.g.*, 16 *Couch on Insurance* § 222:5 (3d ed.).

The Insurers' subrogation claims relate to many thousands of vehicles covered by the End-Payor Settlements, each of which the Insurers deemed a total

---

[6] The Court has notified the parties that a new date will be scheduled for the fairness hearing once all cases have been reassigned.

[7] Citations to "Leibell Decl." refer to specific paragraphs of the Declaration of Jeffrey N. Leibell, dated June 18, 2020, and attached hereto as Exhibit 1.  All citations to "Ex. __" refer to the exhibits attached to the Leibell Declaration. Citations to "Alarcon Decl." refer to the Declaration of Randi E. Alarcon, dated June 18, 2020, and attached hereto as Exhibit 2.

loss over a 23-year period.  Leibell Decl. ¶ 4.  The Insurers benefit from

subrogation here because, pursuant to insurance contracts, they indemnified

members of the End-Payor Settlement classes for Total Loss Vehicles, the prices of

which had been unlawfully inflated by Defendants' conduct.  *See* Ex. A at 2-7.

Those indemnity payments were reduced only to reflect depreciation and wear and

tear; any overcharge reflected in the vehicle purchase prices was not deducted from

the indemnity payments.  Ex. B at 4.  Accordingly, by virtue of those payments,

the Insurers compensated their insureds for those overcharges, and the Insurers are

subrogated to those class members' claims to recover from the End-Payor

Settlements, which are designed to compensate the overcharges that the Insurers

paid.  *See*, *e.g.*, Ex. A at 4-7.

## III.  FRS's Attempts To Resolve Its Disagreements with Class Counsel and FRS's Motion for Declaratory Relief

Over the course of more than a year, FRS attempted to reach agreement with

Class Counsel regarding the Insurers' right to recover claims from the End-Payor

Settlements and to establish an efficient mechanism for collecting and submitting

documentation of those claims.  In November 2018, FRS contacted Class Counsel

to discuss an efficient process for the Insurers to collect and submit the data to

supplement the preliminary claims that FRS had previously filed on behalf of the

Insurers, which claims did not yet contain any vehicle-specific information.[8]  *See* Ex. C at 1.  In December 2018, FRS continued to discuss these issues with Class Counsel, including the legal bases for the Insurers' subrogation claims.  *See* Ex. D.

In January 2019, FRS and Class Counsel met and conferred by phone about the parties' positions and the best way to proceed.  Leibell Decl. ¶ 5.  In anticipation of that call, FRS provided to Class Counsel a research memorandum in support of FRS's position.  *Id*.; Ex. D.  During that call, Class Counsel disagreed with FRS that the Insurers, as subrogees, may recover from the End-Payor Settlements, and they referred FRS to legal authority they believed supported their position.  *See* Ex. E at 1; Leibell Decl. ¶ 6.  The parties also "discussed the mechanism for bringing this issue to the attention of the Court in the event that

---

[8] The Insurers' claims for Total Loss Vehicles did not include descriptions of the vehicles because of the substantial burden and expense that would be required to identify, collect, and marshal the data and documents necessary to prepare each of the Insurers' full proofs of claim for thousands, if not tens of thousands, of Total Loss Vehicles.  *See* Leibell Decl. ¶ 6.  With respect to Total Loss Vehicles, FRS supplemented those claims by letter dated March 9, 2020, in which FRS advised the Settlement Administrator, with copies sent to Class Counsel, that, should the Court grant FRS's request to recognize the Insurers as subrogees as to Total Loss Vehicles, FRS would further supplement the claims. *See id.* ¶ 10; Ex. H.  FRS asked the Settlement Administrator to "advise FRS immediately" if it has "any objection" to the supplementation process proposed by FRS.  Ex. H at 1-3.  Neither the Settlement Administrator nor Class Counsel has ever advised FRS of any objection to the supplementation process proposed in FRS's March 9 letter.  *See* Leibell Decl. ¶ 10.  By email dated June 18, 2020, FRS supplemented the proofs of claim previously submitted by two Insurers that had retained FRS after March 9.  *See id*. ¶ 11; Ex. I.

[they] continued to disagree." Ex. E at 1. Class Counsel suggested that the Insurers should file claims, wait for them to be rejected, and then appeal that rejection to the Court. *Id.*; Leibell Decl. ¶ 6. In response, FRS explained why it would not be practical to submit claims for many thousands of Total Loss Vehicles before resolving the threshold legal question whether such claims would be permitted. Ex. E at 1; Leibell Decl. ¶ 6. In the interest of avoiding litigation, the sides "agreed to discuss the matter further at a later point." Ex. E at 1; Leibell Decl. ¶ 6.

In June 2019, Class Counsel sought authorization to disseminate notice of the Round 4 Settlements to potential class members and asked the Court to set a deadline for the filing of Round 4 Settlement claims. *See* Mot. for Authorization to Disseminate June 2019 Notice, *In re Heater Control Panels*, No. 2:12-cv-00403, PageID.10087-10117, ECF No. 288. In September 2019, the Court authorized that dissemination and set a deadline of December 31, 2019 to file proofs of claims in the Round 4 Settlements. *See* Order Granting Authorization to Disseminate July 2019 Notice at 4-5, 7, *In re Heater Control Panels*, No. 2:12-cv-00403, PageID.10398-10399, 10401, ECF No. 291. In October 2019, "[w]ith the December 31, 2019 filing deadline approaching," FRS once again contacted Class Counsel "to reach an agreement or to seek the Court's assistance" regarding "whether auto insurers may recover from the [End-Payor] settlements the

indemnity payments they made for eligible vehicles that were deemed a total loss." Ex. E at 1-2.  FRS tried one last time to persuade Class Counsel of its position, providing them with a draft letter FRS intended to submit to the Court about the Insurers' subrogation claims.  *Id*. at 1.  On November 2, 2019, however, Class Counsel responded that "there is no question that Auto Insurers are not class members and therefore have no rights as class members or as subrogees of class members."  Ex. F, Letter at 1.  By late November 2019, it had become clear that the two sides were at an impasse and that their dispute would need to be submitted to the Court.  To facilitate resolution of that dispute, FRS and Class Counsel agreed on a briefing schedule.  *See* Ex. G at 1-2.

Pursuant to that schedule, FRS submitted a letter motion to the Court on December 13, 2019, requesting an order declaring that the Insurers may recover from the End-Payor Settlements as subrogees.  Ex. A at 1-2.  On January 16, 2020, Class Counsel filed their opposition to FRS's motion.  *See* End-Payor Pls.' Resp. to Financial Recovery Strategies' Req. for Declaratory Relief, PageID.37513-37539, ECF No. 2034.  They asserted, *inter alia*, that the Insurers, "in their capacity as subrogees, are not class members," *id.* at PageID.37520, and that the total-loss payments Insurers made to class members do not cover the "same loss" as the antitrust injury suffered by those class members, *id.* at PageID.37518.  On

January 30, 2020, FRS submitted a reply letter brief refuting those arguments. Ex. B.

Neither of FRS's letter briefs was docketed (though Class Counsel's response was docketed). After FRS's initial letter brief was not docketed, FRS contacted Judge Battani's Chambers to inquire regarding the status of its motion, including whether FRS's letter briefs would be docketed. Alarcon Decl. ¶ 3. At that time, Chambers advised that FRS may need to intervene to perfect the submission of its motion and obtain the relief it sought. *Id.* FRS accordingly seeks to intervene for that purpose.

## LEGAL STANDARD

"On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to intervene as of right under Rule 24(a)(2), one must show (1) a substantial legal interest in the case, (2) possibility of the impairment of the ability to protect that interest in the absence of intervention, (3) inadequate representation of that interest by the parties already before the court, and (4) timeliness of the application. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). "Members of a class have a

right to intervene if their interests are not adequately represented by existing parties." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (brackets omitted).

## ARGUMENT

### I.   FRS May Intervene As of Right

FRS satisfies all of the requirements of Rule 24(a)(2) and therefore "must [be] permit[ted] . . . to intervene."

#### A.   FRS and the Insurers Have a Substantial Legal Interest in This Case

FRS and the Insurers have a substantial legal interest in this case because the Insurers have claims, as subrogees, to funds in the End-Payor Settlements, and FRS has a contractual right to share in the proceeds of those claims.  The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention [as] of right." *Miller*, 103 F.3d at 1245.  Thus, for example, "an intervenor need not have the same standing necessary to initiate a lawsuit," and "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Id*. at 1245, 1247.  This case, moreover, is not a "close" one because it is well settled that a "subrogation interest warrants . . . intervention under Rule 24(a)." *Maricco v. Meco Corp.*, 316 F. Supp. 2d 524, 527 (E.D. Mich. 2004).[9]

_____

[9] *See also*, *e.g.*, *Krueger v. Cartwright*, 996 F.2d 928, 932 (7th Cir. 1993) ("[An] insurer who is partially subrogated may intervene . . . to protect its pro rata

And, on behalf of the Insurers, FRS claims a right to be paid a portion of the End-Payor Settlements, which is part of the "the property or transaction that is the subject of the action."  Fed. R. Civ. P. 24(a)(2); *see also* Leibell Decl. ¶ 3 (explaining FRS's contingent interest in Insurers' recovery).

### B.   FRS Will Not Be Able To Protect Its Interests Absent Intervention Because Class Counsel Do Not Represent Those Interests

FRS will not be able adequately to protect its interests in the Settlements absent intervention, given Class Counsel's opposition to the Insurers' recovery. Where, as here, a subrogee standing in the shoes of absent class members alleges that class counsel do not adequately represent its interests, the second and third elements of the intervention test – possibility of impairing the movant's interests and inadequacy of representation – collapse into a single inquiry.  *See 3 Newberg on Class Actions* § 9:34 (5th ed.) ("[A]n allegation of inadequate representation should be sufficient to meet the test that the intervenor show her interests will be *impaired* absent intervention.").  Both elements require only a "minimal" showing

---

share of the potential recovery."); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1071 (5th Cir. 1970) ("Since [insurer's] purpose in moving to intervene was to protect its subrogation interest . . . , it is clear that the proposed intervention was cognizable as intervention of right under Rule 24(a)(2)."); *Schmid v. Bui*, 2020 WL 377821, at *4 (N.D. Ohio Jan. 22, 2020) (insurer seeking to protect its subrogation interest "easily satisfies" Rule 24(a)(2)); *Lemaster v. Taylor Indus., LLC*, 2011 WL 1577808, at *1 (E.D. Ky. Apr. 26, 2011) (holding insurer had "an identifiable interest in funds that are the subject of litigation – namely, the damages it hopes to collect as a subrogee").

that impairment and inadequacy of representation are merely possible. *Miller*, 103 F.3d at 1247. FRS need not show actual impairment or "that the representation will in fact be inadequate." *Id*.

In this case, Class Counsel have already acknowledged that they do not represent the interests of FRS or the Insurers because Class Counsel do not consider FRS or the Insurers, in their capacity as subrogees, to be members of the End-Payor Settlement classes. *See* Ex. F, Letter at 1 ("there is no question that Auto Insurers are not class members"); ECF No. 2034, PageID.37520 ("Auto Insurers, in their capacity as subrogees, are not class members . . . ."). Indeed, Class Counsel are adverse to the interests of FRS and the Insurers and are seeking to impair those interests by attempting to exclude Insurers from the End-Payor Settlements. In light of these facts, it is beyond dispute that Class Counsel disclaim any representation of FRS's or the Insurers' interests, let alone representation that would be adequate to protect those interests.

Moreover, FRS and the Insurers (as subrogees) are not adequately represented by the current plaintiffs because the former seek to vindicate interests that are at least partially "divergent from" the latter. *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1531 (6th Cir. 1992). Namely, the Insurers seek to stand in the shoes of class members whom the Insurers indemnified, and they thereby seek to recover money that might otherwise be claimed by the already-

13

indemnified class members.[10]  Accordingly, the interests of FRS and the Insurers "are not aligned" with the interests of the existing parties, and those parties do not adequately represent the interests of FRS or the Insurers.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997).

The inadequacy of the existing parties' representation of FRS's interests is alone "sufficient" to establish the possibility of those interests being "impaired absent intervention."  3 *Newberg on Class Actions* § 9:34 (emphasis omitted).  But that conclusion is even clearer here, where there can be no dispute that FRS and the Insurers will be unable to protect their interests unless and until they are permitted, formally or otherwise, to intervene.  The only dispute is *when* that intervention must occur.

Class Counsel have suggested that the Insurers could obtain a ruling from this Court on their rights to recovery after their claims are rejected by the Settlement Administrator.  *See* Leibell Decl. ¶ 6.  The Court should reject that suggestion for two reasons.

*First*, the complete documentation and submission of the claims at issue here will be an extremely complex, burdensome and expensive process:  at issue are

---

[10] As FRS has previously explained, payment of settlement funds to class members who have already received total loss payments that included compensation for overcharges would constitute a double recovery by those class members.  *See* Ex. A at 11-12; Ex. B at 1-2.

14

indemnification payments for many thousands of eligible Total Loss Vehicles spanning more than two decades in 31 repealer jurisdictions.  Leibell Decl. ¶ 4.  And because Class Counsel do not recognize the Insurers' right to recover for these claims, Class Counsel have refused to reach any agreement on a fair and efficient process for estimation of these claims.  FRS is confident that, should the threshold legal issue be resolved in favor of the Insurers, FRS will be able to come to agreement with Class Counsel and the Settlement Administrator on a reasonable process for resolution of the Insurers' claims.  And, of course, were the legal question resolved against Insurers, no unnecessary expense would be incurred.  Accordingly, by granting intervention and resolving this question, the Court would promote "the just, speedy, and inexpensive determination of [this] action," Fed. R. Civ. P. 1, and permit resolution of the threshold legal issue in the manner to which Class Counsel agreed.

*Second*, to the extent the Settlement Administrator rejects the Insurers' claims, intervention might still be required to challenge that rejection.[11]  Under any circumstances – and whether or not intervention is ever required to obtain the Court's ruling – there should be no artificial delay of this Court's resolution of the

---

[11] The settlement agreements do not set forth any procedure that specifically permits claimants to appeal the Settlement Administrator's determinations.  Therefore, unless the Court creates an alternative procedure, intervention may be the only procedure available for claimants to seek judicial review of those determinations.

threshold question of the Insurers' subrogation rights.  Resolving that issue now would ensure that the Insurers' claims can be administered expeditiously and appropriately, avoid potential delay in the distribution of the settlement funds, and move the End-Payor actions one step closer to a final resolution.

### C.    FRS's Motion Is Timely

FRS's motion is timely because FRS has diligently pursued the Insurers' claims as subrogees and because it comes before the claim-filing deadline, before the Settlement Administrator has completed processing proofs of claim (audit and deficiency letters have not yet been sent), and before the Court has authorized the distribution of any settlement funds.

The timeliness of a motion to intervene is determined by "the context of all relevant circumstances." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).  The relevant circumstances presented here demonstrate that FRS diligently worked for months with Class Counsel to try to reach an agreement about the Insurers' subrogation rights, only to reach impasse.  Once it became clear in November 2019 that Class Counsel were refusing to protect the Insurers' interests or advance legal arguments to the Court on the Insurers' behalf, FRS came to the Court less than one month later to protect those interests and raise those legal arguments itself.  *See*, *e.g.*, *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (intervention timely where it occurred "as soon as it became clear to the

16

[movant] that the interests of the unnamed class members would no longer be protected by the named class representatives"); *see also Maricco*, 316 F. Supp. 2d at 527 (intervention timely despite four-month delay).

FRS did not believe formal intervention was necessary once it reached agreement with Class Counsel to present (and did present) the dispute to the Court. *See* Leibell Decl. ¶ 7.  However, FRS received contrary guidance from Judge Battani's Chambers, Alarcon Decl. ¶ 3, and when its letter briefs remained undocketed, it retained undersigned counsel and now moves for formal intervention in deference to the Court's directions.  Under these circumstances, FRS's motion should be considered timely.  *See Boettcher v. Loosier*, 2016 WL 2654384, at *3 (W.D. Tenn. May 4, 2016) (insurer's intervention timely where it had "participated . . . as if it were a party" before moving to intervene, and intervention "would . . . allow the case . . . to conclude in a timely manner"); *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 58 (S.D.N.Y. 2013) (six-month delay in seeking intervention was "not . . . excessive" where delay was attributable to intervenors' "good faith belief that they were required to follow" an alternative procedure prior to intervening).

Due to the ongoing public-health crisis and other exigencies, this litigation remains in substantially the same place it was when FRS filed its letter motion in December:  the Court has not yet held a fairness hearing regarding the Round 4

Settlements or entered final approval of those settlements, the deadline to file

claims in the End-Payor Settlements has not yet elapsed, and no settlement funds

have yet been distributed. Therefore, FRS's intervention at this time would not

prejudice any other party's interests and should be permitted.

## II. The Insurers Should Be Permitted To Further Document Their Claims After the Court Rules on FRS's Motion for Declaratory Relief

In granting intervention, the Court should also make clear that the Insurers

may supplement their claims consistent with the Court's resolution of the

subrogation issue. To date, the Insurers have submitted in connection with Total

Loss Vehicles claims that do not yet include vehicle-specific information because

gathering and submitting data regarding the many thousands of specific vehicles

that underlie their subrogation claims would be an enormous task, particularly

absent guidance from the Settlement Administrator as to what information will be

adequate. *See* Leibel Decl. ¶ 4. As discussed above, it would be inefficient and

impractical to require FRS and the Insurers to undertake that task before the Court

decides the threshold question whether the Insurers have subrogation rights; by

contrast, if the Court rules in the Insurers' favor, FRS is confident that it will be

able to work cooperatively with the Settlement Administrator to develop an

appropriate mechanism for submission of claims.

Such circumstances constitute "good cause" for the Insurers to defer

supplementation of their claims until after the Court rules on FRS's motion for

declaratory relief.  *See* Fed. R. Civ. P. 6(b)(1).  For example, in *In re Electrical Carbon Products Antitrust Litigation*, 622 F. Supp. 2d 144, 165 (D.N.J. 2007), certain claimants "filed blank [claim] forms" and completed them after the deadline; the district court held that the claims administrator had appropriately treated such claims as timely, so long as the claimants acted promptly to supplement their claims.  The district court noted that it was "certainly understandable and likely that a claimant would become aware of its class membership before it was able to calculate its claims," *id.*; the same is true here.  Accordingly, the Court should clarify that the Insurers' claims filed to date are sufficient to satisfy the June 18, 2020 deadline for filing of claims.  *See also In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (noting that a reasonable time was permitted to cure deficiencies in submitted claims).

## CONCLUSION

The Court should permit FRS to intervene in this action, resolve the legal issue presented in FRS's December 13, 2019 letter motion to the Court, and clarify that the Insurers may complete the documentation of their claims after the Court rules.

Dated:  June 18, 2020                    Respectfully submitted,

   /s/ *Laura S. Faussié*    
Jonathan T. Walton, Jr. (P32969)
Michael P. Donnelly (P45221)
Laura S. Faussié (P48933)
FRASER TREBILCOCK
  DAVIS & DUNLAP, P.C.
One Woodward Avenue, Suite 1550
Detroit, MI 48226
(313) 237-7300
jwalton@fraserlawfirm.com
mdonnelly@fraserlawfirm.com
lfaussie@fraserlawfirm.com

Aaron M. Panner
Matthew R. Huppert
Daniel S. Severson
Christine A. Bonomo
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
mhuppert@kellogghansen.com
dseverson@kellogghansen.com
cbonomo@kellogghansen.com

*Counsel for Financial Recovery*
*Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 18, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record.


  /s/ *Laura S. Faussié*
Laura S. Faussié