# Exhibit A



Jeffrey N. Leibell
**Chief Legal & Financial Officer**
(201) 853-1246
jleibell@frsco.com

December 13, 2019

**BY FEDERAL EXPRESS**
Honorable Marianne O. Battani
United States District Judge
United States District Court for the Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 252
Detroit, MI 48226

*In re Automotive Parts Antitrust Litigation*, End-Payor Actions
Master File No. 12-md-02311 (E.D. Mich.)

Dear Judge Battani:

Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS") has been retained by certain members of the Settlement Classes ("EP Class Members") to manage their proofs of claim to recover from the End-Payor settlements (the "EP Settlements").[1] We write to ask the Court to enter an order declaring that, under the longstanding and universally-recognized equitable subrogation doctrine, FRS's auto insurer clients ("Auto Insurers") that, to or on behalf of EP Class Members ("Total Loss Insureds"), made indemnity payments for "Eligible Vehicles" that were deemed a total loss ("Total Loss Vehicles"),[2] are subrogees, and thus stand in the shoes, of Total Loss Insureds, and, therefore, may recover from the EP Settlements to the extent of their

---

[1] FRS's clients have determined that, rather than manage their own claims, it is more cost effective to retain FRS so that they may focus on operating their own businesses. Since its founding in 2008, FRS has adhered to the highest ethical and professional standards in its sector (for FRS's "Code of Conduct & Professional Ethics," *see* www.frsco.com/about/code-of-ethics) to provide its clients, which number in excess of 18,000 and include "Fortune" household-name multinational conglomerates, with industry-leading class action claims consulting services. FRS's services include enhancing the likelihood that all eligible business units are included; advising on required data; developing innovative alternatives for unavailable documents; and addressing claims administrator or class counsel questions (for case studies, *see* www.frsco.com/about/success). FRS's professionals include seven attorneys and fifteen former claims administrators (for brief biographies, *see* www.frsco.com/teams) that together have spent decades prosecuting and settling class actions, administering class action settlements and managing class action claims. FRS is contractually required to send clients their distributions within thirty days (FRS audits all distributions); until then, funds are deposited in a segregated non-interest-bearing distribution account.

[2] "Eligible Vehicles" are those that meet the requirements set forth in the several notices approved by the Court. *E.g.,* Combined Notice, ECF 60-2 ("Round 1 Notice"), "Question 7. How do I know if I may be included in the Classes?," at 6-8, 13,-cv-00703 (E.D. Mich.).



FINANCIAL
RECOVERY
STRATEGIES

Honorable Marianne O. Battani
December 13, 2019
Page 2

indemnity payments.[3] FRS and Settlement Class Counsel have been unsuccessful in their attempts to resolve this matter. Because the claim deadline is December 31, 2019, and because identifying, collecting and marshaling the data necessary for Auto Insurers' proofs of claim will be a considerable undertaking, FRS seeks the Court's intervention.[4]

## PRELIMINARY STATEMENT

Auto Insurers, by paying the market values of Total Loss Vehicles, have compensated Total Loss Insureds for their entire lost interests in them, which necessarily included any supra-competitive prices for auto parts ("Antitrust Losses") that the End-Payor Plaintiffs ("EPPs") allege were included in the prices of Eligible Vehicles. Substituting Auto Insurers for Total Loss Insureds as claimants to recover from the EP Settlements the payments they made for Total Loss Vehicles is thus a textbook application of the equitable subrogation doctrine. Indeed, as the Court explained in *GEICO Corp. v. Autoliv, Inc.*, and as courts throughout the U.S. routinely hold, the *sine qua non* of equitable subrogation is a payment by an insurer (Auto Insurers) to its insured (Total Loss Insureds) for losses (Antitrust Losses) that were caused by the party (settling defendants) from which the insurer seeks its recovery (the EP Settlements they funded):

> [T]he doctrine of equitable subrogation, "as applied in the insurance context, allows an insurer to sue a third party for injuries that the third party caused to the

---

[3] Because auto insurance policies include subrogation provisions, *see, e.g.*, GEICO Pers. Auto. Ins. Policy at 13, 12-cv-00403, ECF 266-7 (E.D. Mich.) ("GEICO Policy") ("If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right."), Auto Insurers also are entitled to contractual subrogation. *See, e.g.*, *Millennium Hold'g LLC v. Glidden Co.*, 53 N.E.3d 723, 728 (N.Y. 2016) ("Subrogation, generally, may arise either contractually or under the doctrine of equitable subrogation.") (N.Y. 2016). And because Total Loss Insureds, as consideration for indemnity payments, have assigned to Auto Insurers their rights in Total Loss Vehicles, *see, e.g.*, 5 WILLISTON ON CONTRACTS 4th, *Forms* §73F:8, WILLSTN-FM §73F:8 (2019), Auto Insurers own the right to submit claims to recover from the EP Settlements.

[4] FRS and Settlement Class Counsel have agreed, subject to the Court's approval, that EPPs' opposition to the relief sought in this letter and FRS's reply in further support thereof shall be submitted to the Court on January 16, 2020 and on January 31, 2020, respectively.



**FRS** FINANCIAL
RECOVERY
STRATEGIES

Honorable Marianne O. Battani
December 13, 2019
Page 3

insured, ***when the insurer compensated the insured for those injuries***." *Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.,* 493 F.3d 752, 756 (6th Cir. 2007).[5]

Indeed, settlements of class actions in which the alleged damages may have been insured often expressly include the subrogation rights of insurers to file claims.[6] Applying equitable subrogation to Auto Insurers also furthers that doctrine's *raison d'être*: the prevention of an insured's unjust enrichment:[7] If Auto Insurers are not subrogated, Total Loss Insureds will recover twice – once from Auto Insurers and again from the EP Settlements – for the same Antitrust Losses.[8]

---

[5] 345 F. Supp.3d 799, 831 (E.D. Mich. 2018) ("GEICO"); *e.g., Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr.2d 296, 302-03 (1998) (Equitable subrogation requires that "the insurer ***has compensated the insured*** ... for the ***same loss*** for which the defendant is primarily liable;"); *see also* 16 COUCH ON INS. ("COUCH") §222:8 ("When the ***insurer has made payment for the loss*** ... the insurer should be reimbursed ***for its payment*** ... ."); cases cited in **Appendix A**. Unless otherwise indicated, emphasis herein is added.

[6] *See, e.g., In re Zurn Pex Plumb. Prods. Liab. Litig.*, No. 08-md-1958, 2012 WL 5055810, at *3 (D. Minn. Oct. 18, 2012) ("Insurance carriers are members of the Settlement Class ... if they paid insurance claims ... ."). Even when insurers are not expressly included, courts still assure that they are provided with notice of their right to submit claims. *See, e.g., Klug v. Watts Regulator Co.*, 8:15-cv-00061, 2016 WL 7156480, at *1-*2; *5 (D. Neb. Dec. 07, 2016) ("notice plan ... apprise[d] ... subrogated insurers) of the pendency of the Action ..."; proof of claim sent to insurers). And when insurers are excluded from the class, neither their subrogation rights, nor the claims of their insureds on which their subrogation rights depended, are released. *See, e.g., Roberts v. Electrolux Home Prods., Inc.*, Master File No. SACV12-1644, 2014 WL 4568632, at *13 (C.D. Cal. Sept. 11, 2014) ("Class Members' property damage or personal injury claims are ***not*** released under the Settlement: they (or their insurers) are still able to pursue those claims.").

[7] *See, e.g., Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 756 (6th Cir. 2007) ("[E]quitable subrogation 'has a long and rich tradition of benevolence and fairness, ... [that] is irrevocably anchored in principles of natural justice.' ... [It] is '***designed to prevent unjust enrichment*** ... .'") (quotation omitted); *Sorge v. Nat'l Car Rental Sys., Inc.*, 512 N.W.2d 505, 507 (Wis. 1994) ("The purpose of subrogation is to ***prevent a double recovery by the insured***. ... ***The insured is to be made whole, but no more than whole***.") (quotation omitted); 16 COUCH §222:8 ("[S]ubrogation has the objective of ***preventing the insured from recovering twice for one harm***, as would be the case if he or she could recover from both the insurer and from a third person who caused the harm."); cases cited in **Appendix B**; *accord Fireman's Fund Ins. Co. v. Morse Signal Devices*, 151 Cal. App.3d 681, 686 (Ct. App. 1984) (subrogation "depends upon ***the superiority of the equities***'").

[8] Nevertheless, if an Auto Insurer and its Total Loss Insured each submit a claim for the same Total Loss Vehicle, the Auto Insurer has the business discretion to yield in favor of its Total Loss Insured.



FINANCIAL
RECOVERY
STRATEGIES

Honorable Marianne O. Battani
December 13, 2019
Page 4

<u>ARGUMENT</u>

**Because Auto Insurers Have Compensated Total Loss Insureds' Antitrust Losses,
Auto Insurers Are Entitled to the Benefits of the Equitable Subrogation Doctrine**

Equitable subrogation applies perforce to Auto Insurers because, although EP Class Members, when they leased or purchased Eligible Vehicles, paid supra-competitive prices, those EP Class Members, when their Eligible Vehicles became Total Loss Vehicles, were fully indemnified by Auto Insurers. As a result of those indemnity payments, the Antitrust Losses that are the subject of this multidistrict indirect purchaser class action, and that are being compensated by the EP Settlements, are no longer borne by the EP Class Members-turned-Total Loss Insureds, but, instead, by the Auto Insurers that paid for them.

It is fundamental economics that, whether Eligible Vehicles became Total Loss Vehicles as a result of fires, floods or collisions, Total Loss Insureds suffered one loss – namely, their interests in those Eligible Vehicles[9] – and that, by indemnifying the market value of those Total Loss Vehicles, Auto Insurers compensated Total Loss Insureds for their entire lost interests in them. For instance, if an EP Class Member's Eligible Vehicle (a) was carjacked, and, (b) while attempting to evade state police that were pursuing at a dangerously high speed, (c) the carjacker collided with a truck that was being driven the wrong way on a one-way street, and, (d) because the

---

[9] *Cf. Zaghi v. State Farm Gen'l Ins. Co.*, 77 F.Supp.3d 974, 977 (N.D. Cal. 2015) ("insurance does not insure the property covered thereby, but is a personal contract *indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property*.") (quoting *Russell v. Williams*, 374 P.2d 827, 829 (Cal. 1962) (per curiam) ("It is a principle of long standing that a policy of fire insurance does not insure the property covered thereby, but is a personal contract *indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property*.")); *Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 606 (7th Cir. 1987) ("A property insurance contract is a personal contract between the named insured and the insurer to indemnify the insured against loss resulting from the destruction of or damage *to his interest in property covered by the contract*."; *Counihan v. Allstate Ins. Co.*, 827 F. Supp. 132, 134 n.3 (E.D.N.Y. 1993) ("It cannot be said that when the property is destroyed, triggering the insurer's contractual obligation to pay money, that money is substituted for the property; *the money merely compensates the policyholder for loss of the insured object*."), *rev'd on other grounds*, 25 F.3d 109 (2d Cir. 1994); *Guardo v. Buzzuro*, No. 1905 EDA 2017, 2018 WL 3133679, at *3 (Pa. Super. Ct. June 27, 2018) ("[T]he indemnity is provided for the insured *and for his interest in the property*[.]'") (quoting *In re Gorman's Est.*, 184 A. 86, 87 (Pa. 1936), *quoted in AIG Cen'l Ins. Co. v. O'Neill*, 782 F.3d 1296, 1310 (11th Cir. 2015)).



Honorable Marianne O. Battani
December 13, 2019
Page 5

municipality's department of public works neglected properly to fence off an embankment, the Eligible Vehicle slid into a lake, (e) after which it was recovered and taken to a private salvage yard and, (f) while there, burst into flames when it was struck by lightning, the now-Total Loss Insured may recover for the loss of what will have become a Total Loss Vehicle an amount that is not more than its market value. In other words, even though an assortment of acts – theft, recklessness, collision, fire, flood, act of nature and negligence – led to that loss, and even though the Total Loss Insured may pursue a recovery from a large cast of tortfeasors – the carjacker, the wrong way driver, the state police, the municipal department of public works and the owner of the salvage yard – not to mention the Total Loss Insured's Auto Insurer, the Total Loss Insured lost but one Total Loss Vehicle. Accordingly, should the insurer of the wrong way motorist pay the Total Loss Insured the market value of the Total Loss Vehicle, the Total Loss Insured may not recover anything from any of the other tortfeasors or from the Auto Insurer because the Total Loss Insured may recover for that one Total Lost Vehicle only once.[10]

---

[10] Support for this venerable principle is ubiquitous. In *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, for example, the Ninth Circuit vacated a damage award that compensated a plaintiff twice for the same loss:

> Ambassador did suffer two separate harms. Still, ***Ambassador suffered only one loss, the loss of its investment, and therefore could not have received separate compensatory damage awards for its fraud claim and for its contract claim***. Since Ambassador could not have received separate damage awards for its single loss, the district court erred by awarding both punitive damages, which sound in tort, and the higher interest rate, which sounds in contract.

189 F.3d 1017, 1032 (9th Cir. 1999); *accord Kassman v. American Univ.*, 546 F.2d 1029, 1033 (D.C. Cir. 1976) ("'[A] cardinal principle of law is that … *a plaintiff can recover no more than the loss actually suffered*.' For 'when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come,' we said, "he is so far affected in equity and good conscience, that *the law will not permit him to recover again for the same damages*.' … *Where there has been only one injury, the law confers only one recovery, irrespective of the multiplicity of parties whom or theories which the plaintiff pursues*.") (quoting *Snowden v. D.C. Transit Sys., Inc.*, 454 F.2d, 1047, 1048 (D.C. Cir. 1971)); *Burgess v. Premier Corp.*, 727 F.2d 826, 837 (9th Cir. 1984) ("Although the jury found for the doctors on claims under the Washington Securities Act, under federal securities laws, under the Washington Consumer Protection Act and pursuant to principles of common law fraud and negligent representation, *the doctors are entitled to only one recovery for their out of pocket losses*, … ."); *see Hoyos v. Hammer Homes, Inc.*, 717 F. Supp. 819, 821 (S.D. Fla. 1989 ("In this case, *Plaintiffs have suffered only one loss: faulty construction and improper installation of a modular home*. While Plaintiffs have two possible sources of recovery, *they are entitled to but one recovery, regardless of the theory of recovery*."); *Fair Oaks Trans. Co v. Central Mfrs' Mut. Ins. Co.*, 127 F. Supp. 507, 508 (S.D.N.Y. 1954) ("Here *only a single injury is alleged by*



Honorable Marianne O. Battani
December 13, 2019
Page 6

As in that hypothetical example, Total Loss Insureds in this case also suffered one loss—their interests in their Total Loss Vehicles; and that loss has been compensated by Auto Insurers' indemnity payments: Throughout the time periods set forth in the Court-approved notices that Settlement Class Counsel disseminated to EP Class Members, the market values of Eligible Vehicles were inflated by Antitrust Losses;[11] and under the property damage provisions of the applicable auto insurance policies, Auto Insurers were obligated to pay "actual cash values" adjusted only for "depreciation and physical condition," not for any losses, such as Antitrust Losses, that were not covered—in other words, their market values.[12] That Auto Insurers' indemnity payments compensated Total Loss Insureds for their Antitrust Losses – **the same losses that the settling defendants, the parties alleged to have caused them, are compensating via the EP Settlements** – is, therefore, self-evident.[13] Equitable subrogation thus applies to Auto

---

*the plaintiff, the loss of his property*; and although he seeks to hold each defendant liable for the entire loss on a different basis, *he may recover, if at all, only once, to the extent of his loss*."); *J&R Elec. Inc. v. One Beacon Ins. Co.*, 824 N.Y.S.2d 763 (Table), 2005 WL 4257996, at *2 (N.Y. Sup. Ct. Dec. 13, 2005) ("The Policy covers the insured for 'loss.' *Once the insurance company covers that loss, the insured cannot again recover for the same damaged merchandise because a different section of the Policy may cover that same loss*."), *aff'd*, 825 N.Y.S.2d 462 (N.Y. App. Div. 2006); cases cited in **Appendix B**.

[11] *See, e.g.*, Round 1 Notice, "Question 2. What are these lawsuits about?," at p4 ("[B]usinesses and consumers who purchased or leased new motor vehicles (not for resale) containing those parts or who indirectly purchased replacement parts (not for resale) from the Defendants may have paid more than they should have."); Round 4 Notice, ECF 251-6 at 4, 10-13, 13-cv-02503 (E.D. Mich.) (same; supra-competitive pricing is ongoing as demonstrated by the time periods ending in 2018 and 2019).

[12] *See, e.g.*, GEICO Policy, ECF 266-7, at 9-12 ("Limit of Liability"; Antitrust Losses not listed among "Exclusions"); *accord* 7A AM. JUR. 2d *Auto. Ins.* §402 (2019) ("[I]nsurer's liability [for a total loss vehicle] generally is limited to the value of the vehicle prior to the accident."); 12A COUCH §177:7 (3d ed. 2019) (market value of total loss vehicle "has been held to be the measure of recovery.").

[13] *Cf. Schultz v. American Airlines, Inc.*, No. 18-80633, 2019 WL 3000448, at *3 n.3 (S.D. Fla. July 10, 2019) (finding to be self-evident that airline ticket prices increase as their supply is reduced); *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13-13804, 2015 WL 3541905, at *5 (E.D. Mich. Apr. 30, 2015) ("It is self-evident that any overstatement of 'profits' in the financial statement was offset dollar for dollar by the understatement of 'expenses' that were left out"); *FDIC v. First Mort. Inv.*, 485 F. Supp. 445, 450 (E.D. Wis. 1980) ("It is self-evident that a note payable on demand is more valuable than one for the same principal sum which is due at some uncertain date in the future."); *see generally* FED. R. EVID. 201, Judicial Notice of Adjudicative Facts.



Honorable Marianne O. Battani
December 13, 2019
Page 7

Insurers, and, therefore, they "stand in the shoes" of Total Loss Insureds and succeed to all of the latter's rights and remedies: If Total Loss Insureds, but for total losses, would have been entitled to recover for Eligible Vehicles, Auto Insurers, as their subrogees, are entitled to recover for Total Loss Vehicles.[14]

### That the Insurance Policies Do Not Cover Antitrust Losses is Irrelevant to Auto Insurers' Right to Equitable Subrogation

Settlement Class Counsel, to support EPPs' opposition to applying equitable subrogation to Auto Insurers, referred FRS to Round 3 Defendants' opposition to GEICO's exclusion request. Round 3 Defendants' opposition was based entirely on their *ipse dixit* that, **because** GEICO's insurance policies did not **cover** Antitrust Losses, GEICO "**never paid a penny for alleged antitrust losses** of its insureds."[15] That argument, which focuses entirely on **why** the indemnity payments were made, may be facially appealing, but in fact is a red herring: While it is irrefutable both that

---

[14] *See, e.g., GEICO*, 345 F. Supp.3d at 831 ("In pursuing this recovery, the insurer (or subrogee) '*succeeds to the rights of*' its insured (the subrogor), and seeks to '*require the party who caused the damage to reimburse the insurer for the payment the insurer has made*' to its insured.") (quoting *Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir. 1999) ("The doctrine of equitable subrogation allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing *any claims that the insured may have had against third parties legally responsible for the loss*."); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 97 n.5 (2013) (Under "[s]ubrogation ... one person is allowed to *stand in the shoes of another ... .*") (quotation omitted); *U.S. v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947) ("[O]ne who rests on subrogation *stands in the place* of one whose claim *he has paid* ... ."), *quoted in U.S. v. California*, 507 U.S. 746, 756 (1993); *Am. Sur. Co. of N.Y. v. Bethlehem Nat. Bank*, 314 U.S. 314, 317 (1941) ("Succeeding to the creditor's right, the surety *also succeeds to the creditor's means for enforcing it*[, and is] *subrogate[d] to the remedies* of th[at] creditor ... ."); 16 Couch §222:5("Subrogation ... gives to the substitute *all the rights, priorities [and] remedies*, ... of the [subrogor,] ... *regardless of whether the insurer would have been entitled to bring such an action in its own right*."); cases cited in **Appendix C**. Because the insurer "is substituted for and succeeds to the rights of [its insured]," *Allstate*, 175 F.3d at 258, all the rights and remedies that Total Loss Insureds, as EP Class Members, would have had to recover for Eligible Vehicles prior to them becoming Total Loss Vehicles, are, for Total Loss Vehicles, possessed by Auto Insurers. Because Auto Insurers' subrogation rights are thus the same as Total Loss Insureds' eligibility under the definitions of the Settlement Classes, *see, e.g., GEICO*, 345 F. Supp.3d at 831 ("a subrogation claim by an insurer depends upon the claim of the insured"), as long as Total Loss Vehicles were Eligible Vehicles, it is irrelevant that, when Auto Insurers indemnified Total Loss Insureds for them, they were not "new."

[15] *See* Defs.' Br. Supp. Mot. Den. GEICO's Excl. Req. ..., 12-cv-00403, ECF 266, at 17 (E.D. Mich.) ("Round 3 Defs.' GEICO Opp.").



Honorable Marianne O. Battani
December 13, 2019
Page 8

the indemnity payments for Total Loss Vehicles were made solely because of covered total loss events – indeed, without a covered total loss event to trigger the indemnity provisions, no payments to Total Loss Insureds would have been made – and that those indemnity payments compensated Total Loss Insureds for the property losses covered by the insurance policies, Round 3 Defendants conveniently ignore **what** those payments compensated – namely, Total Loss Insureds' entire lost interests, ***including Antitrust Losses***, in their Total Loss Vehicles.

Round 3 Defendants' diversion also is directly contradicted by the legal foundation for EPPs' antitrust claims: EP Class Members are entitled to recover from the EP Settlements because defendants "agreed to unlawfully raise the price of certain motor vehicle component parts," and, therefore, when EP Class Members purchased or leased Eligible Vehicles, they "paid more than they should have" for them.[16] In other words, and contrary to Round 3 Defendants' position, even though EP Class Members did not purchase the unlawfully overpriced parts individually as "parts," when they paid for Eligible Vehicles they nonetheless paid supra-competitive prices for those parts. That identical premise also confirms that Auto Insurers paid Total Loss insureds' Antitrust Losses: Auto Insurers, by paying the market values of Total Loss Vehicles, paid for the Antitrust Losses that necessarily were included in those market values, and, therefore, "paid more than they should have" for Total Loss Vehicles. Round 3 Defendants' attempt to elevate form over substance.

Round 3 Defendants read the coverage provisions of the auto insurance policies, point out the obvious – they do not expressly include (nor do they expressly exclude) Antitrust Losses[17] – and on that fact alone argued that any indemnity payments that Auto Insurers made for Total Loss Vehicles had to have been for **covered** property damages, not for **uncovered** Antitrust

---

[16] *See, e.g.*, Round 1 Notice, "Question 2. What are these lawsuits about?," at p.4.

[17] *See* Round 3 Defs.' GEICO Opp. at 3 ("GEICO's potential subrogation rights – arising from its payments under automobile policies for covered losses – extend **only** to those covered losses."); *id.* at 16 ("GEICO is simply wrong that payments under an ***automobile insurance policy*** for damage to a vehicle from, for example, a collision can ***ever*** create subrogation rights of any kind against ***antitrust*** losses or any other loss for which GEICO did not make a payment and did not even offer insurance.") (emphasis original).



Honorable Marianne O. Battani
December 13, 2019
Page 9

Losses, and, therefore, that equitable subrogation does not apply. But that approach, as explained above, misconstrues the underpinnings of equitable subrogation. That doctrine does not depend on the extent of insurance coverage, but, instead, and as this Court aptly explained, equitable subrogation depends solely on whether the indemnity payment **compensated** the insured for the losses that the insurer seeks to recover from the responsible party.[18] Labelling those payments based on **why** they were made is thus irrelevant: Even though the policies did not **cover** Antitrust Losses, Auto Insurers' indemnity payments, which equaled the market value of the property damaged, **compensated** Total Loss Insureds for their entire lost interests in their Total Loss Vehicles, which necessarily included their Antitrust Losses. Deprived of its foundation – Auto Insurers did compensate Total Loss Insureds for their Antitrust Losses – this argument falls of its own weight.

Round 3 Defendants' primary legal precedent, *Shockley v. Harleysville Mut. Ins. Co.*,[19] does not help their position. It does not, as they argued in opposition to GEICO's opt out request, rely on the coverage provisions of an insurance policy to deny subrogation to an insurer that had indemnified its insured for the losses that the insurer then sought to recover from the responsible party.[20] Rather, the majority opinion in *Shockley* supports the opposite proposition: Whenever an insurer has paid its insured for losses, even losses that were not covered by the applicable policy, that insurer has the right to be subrogated to recover its payment from the party responsible for the losses the insurer indemnified.[21] In *Shockley*, an insured who, via a false title,

---

[18] *GEICO*, 345 F. Supp.3d at 831 (quoting *Nat'l Sur.,* 493 F.3d at 756); *e.g.*, *Fireman's Fund*, 77 Cal. Rptr.2d at 302-03; cases cited in **Appendix A**.

[19] 553 A.2d 973, 974 (Pa. Super. Ct. 1988) (2-1 decision; Pennsylvania is not a state "entitled to monetary recovery" from the EP Settlements).

[20] *See* Round 3 Defs.' GEICO Opp. at 17-18.

[21] *See* 553 A.2d at 976. Round 3 Defendants cite two other cases that, like *Shockley*, also support the application of equitable subrogation when, as did Auto Insurers, insurers pay for the same losses they seek to recover from the parties that caused them. In *Morse Signal*, the court relied on the universally applied requirement that an insurer must "ha[ve] compensated the insured **for the same loss**" for which the party to be charged is liable" to reject a property insurer's antitrust claims against alarm companies because the insurer paid only for the property lost by fire or theft, which, unlike Auto Insurers' payments

**FRS** **FINANCIAL RECOVERY STRATEGIES**

Honorable Marianne O. Battani
December 13, 2019
Page 10

had purchased a vehicle that later was destroyed by fire, reached with the auto dealer a settlement that fully compensated the insured for her lost car.[22] The insured, notwithstanding her full recovery for the lost car, then sought to compel the insurer to indemnify the fire loss; the insurer, "point[ing] to the subrogation provision of the insurance contract to excuse its obligation to pay,"[23] refused to do so and to thereby provide the insured with a double recovery. Although the *Shockley* majority reversed the trial court's denial of the insured's request for relief,[24] the

---

for Total Loss Vehicles, did not include any price fixing costs that its insureds allegedly suffered when they paid for the alarm systems. *See* 151 Cal. App.3d at 691 ("What is the loss under any purported price-fixing scheme to the insured? The loss, if any, to the insured consists either of higher priced alarm service or compelled costs such as the additional insurance premiums the insured may be burdened with to gain similar pricing terms."); *accord ACSTAR Ins. Co. v. Clean Harbors, Inc.*, 783 F. Supp.2d 312, 317 (D. Conn. 2011) (equitable subrogation exists "where an insured is entitled to receive recovery **for the same loss** from more than one source") (quotation omitted). Round 3 Defendants also quoted Judge Easterbrook's opinion in *Health Care Service Corp. v. Brown & Williamson Tobacco Corp.*, but that opinion only addressed a pleading deficiency concerning subrogation for insureds' antitrust claims, not whether subrogation was appropriate under those facts. *See* 208 F.3d 579, 581 (7th Cir. 2000) ("[T]he complaint does not give any reason to believe that the insurers have compensated the insureds for antitrust injury or purchased the right to pursue smokers' antitrust claims. But we need not pursue these issues, for **the amended complaint that the Blues sought leave to file did none of these things**."); *U.S. v. Baxter Int'l, Inc.*, 345 F.3d 866, 884 n.14 (11th Cir. 2003) (*Brown & Williamson* complaint deficient primarily because "it failed to plead … [*inter alia*] a right to recovery."). Whether GEICO sufficiently "pleaded" that it compensated its Total Loss Insureds for Antitrust Losses is not relevant to whether Auto Insurers are subrogees entitled to recover for Total Loss Vehicles.

[22] *See* 553 A.2d at 974.

[23] *See* 553 A.2d at 974-75.

[24] This 1988 decision from a divided Pennsylvania Superior Court has not, with respect to requiring an insurer to compensate an insured that already had been fully compensated via a prior settlement, been cited by any court in the over thirty years since its issuance. Even though the *Shockley* majority determined that "[t]he settlement to [the insured] completely covered her loss," *id.* at 974, and that the dealer "essentially paid the full value of the automobile," *id.* at 976, it nevertheless reversed the lower court because "it would also allow subrogation against monies received by appellant for a loss the type of which appellee had not even extended any insurance coverage to appellant for." *Id.* The majority cited the correct standard, but failed to understand a most basic economic reality: The insured suffered only one loss for which she had already been fully compensated. But as the *Shockley* dissent explained, and as courts throughout the U.S. have held, an insured may recover for its loss only once:

Reduced to fundamentals, property insurance is an agreement to indemnify against economic loss in a case where property is damaged or destroyed. A policy of fire insurance is a contract of indemnity which does not pertain to the property as such, but rather **covers the interest of the insured in the**



**FRS** **FINANCIAL RECOVERY STRATEGIES**

Honorable Marianne O. Battani
December 13, 2019
Page 11

majority, after noting that "the recovery [on which the insurer relied for subrogation] was for a loss that [the insurer] apparently did not even extend coverage for," stated nevertheless that, "***[h]ad appellee [insurer] paid for this [uncovered title-related] loss***[,]" as have Auto Insurers for Antitrust Losses, "***then it would have had an equitable right or subrogation right*** to monies received from appellant's breach of warranty of title action."[25] Even according to the *Shockley* majority, therefore, Auto Insurers, because they paid for Antitrust Losses, have the right to equitable subrogation to recover their payments. And as the *Shockley* majority also recognized, to do otherwise would have provided the insured a double recovery at the expense of the insurer.[26] Without application of the equitable subrogation doctrine here, Total Loss Insureds will

---

*property*. … ***The object of the property insurance contract is not to provide a gain for the insured, but only to compensate him for an economic loss***. ***Thus, where there is no economic loss by virtue of recoupment against a third party, there is no right to an additional recovery against the insurance company.*** …

…

It is well settled that[, although] a plaintiff may select a form of action when more than one is appropriate to the facts, he cannot, by so doing, change the measure of his recovery from that fixed by the settled law as flowing from the same facts. ***Although a plaintiff may sue in two separate causes of action, he may only obtain one recovery for a single loss and this is so even though the recovery sought is against two different persons.***

553 A.2d at 978 (Cercone, J., concurring and dissenting) ("I must respectfully disagree with the determination by the majority that ***where such an insured sustains a single loss, she is entitled to a double recovery***.") (citations omitted). Notably, the Supreme Court of Pennsylvania agrees. *See, e.g.*, *AAA Mid-Atlantic Ins. Co. v. Ryan*, 84 A.3d 626, 634 (Pa. 2014) ("there exists ***a long-standing prohibition in this Commonwealth against double recoveries for a single injury***. … [A] court will not allow [a victim] more than one satisfaction in damages. ***An injured party cannot recover twice for the same injury.***") (citing *Brown v. City of Pittsburgh*, 186 A.2d 399, 402 (Pa. 1962) ("It has long been the law that ***for the same injury, an injured party may have but one satisfaction***.").

The absurdity of *Shockley* majority's "double recovery" holding also is evident in its observation that the tortfeasor would escape liability as well: "[Q]uite ironically, if appellee's logic is utilized and the individual responsible for the fire damage is found, he or she would be immune from liability to [the insured] or [the insurer] for the fire damage because [the insured] has already been compensated." 553 A.2d at 976.

[25] 553 A.2d at 976.

[26] *See Shockley*, 553 A.2d at 975 (citing *Allstate Ins. Co. v. Clarke*, 527 A.2d 1021, 1024 (Pa. Sup. Ct. 1987) ("[W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from



Honorable Marianne O. Battani
December 13, 2019
Page 12

obtain a double recovery at the expense of Auto Insurers that already have compensated them for the same Antitrust Losses that the settling defendants are compensating via the EP Settlements.[27]

<u>**CONCLUSION**</u>

For the foregoing reasons, FRS requests that the Court enter an order declaring that Auto Insurers are equitable and contractual subrogees of Total Loss Insureds, and, therefore, that Auto Insurers may stand in the shoes of Total Loss Insureds to recover from the EP Settlements to the extent of the indemnity payments they made for Total Loss Vehicles.

Respectfully submitted,

Jeffrey N. Leibell

Copy (via email) to:    Marc M. Selzer, Esq.
                         Hollis Salzman, Esq.
                         Adam J. Zapala, Esq.

---

a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a 'double recovery' at the indemnifying party's expense.").

[27] The releases provided to the settling defendants, *see GEICO*, 345 F. Supp.3d at 831-32, are irrelevant to Auto Insurers' subrogation claims. First, because the policies prohibit Total Loss Insureds from prejudicing Auto Insurers' contractual rights to subrogate, *see, e.g.*, GEICO Policy, ECF 266-7 at 13, applying those releases would impermissibly rewrite the explicit terms of the policies. *See, e.g., Upjohn Co. v. N.H. Ins. Co.*, 476 N.W.2d 392, 397 (Mich. 1991) ("[W]e reject the temptation to rewrite the plain and unambiguous meaning of the policy … . Rather, we enforce the terms of the contract as written."), *cited in Wausau Und. Ins. Co. v. Ajax Paving Indus., Inc.*, 671 N.W.2d 539, 544 (Mich. Ct. App. 2003). And those releases, which are fundamental to every class action settlement, *e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) ("[b]road class action settlements are common"), only bar EP Class Members from asserting claims *against settling defendants*, *e.g.*, Order Grant. Final App. Round 3 Settles., 12-cv-00103, ECF 628 at 7 (E.D. Mich.) (EP Class Members "will release the 'Released Claims' *against the Round 3 Settling Defendants*."); *GEICO* at 831-32 (EP Class Members "*release[d] the defendants*"); they do not, indeed, they cannot, bar EP Class Members *from recovering from the EP Settlements*, *e.g.*, Round 3 Notice at 1, "Your Legal Rights and Options" (EP Class Members "*are eligible to file a claim*"). As Total Loss Insureds' subrogees, Auto Insurers' rights to recover from the EP Settlements are the same as their subrogors'. *See, e.g., GEICO* at 832 (GEICO's subrogation claims "are subject to *the same defense* of release"); Br. Supp. Defs.' Coll. Mot. Dismiss GEICO's 2d Am. Compl., ECF 62, at 26, 16-13189 (E.D. Mich.) ("[o]nce [subrogation] attached, GEICO ha[d] *the same rights* to recover against third parties as the insured"). Accordingly, the releases may not bar Auto Insurers.

# APPENDIX A

**EQUITABLE SUBROGATION ALLOWS AN INSURER TO RECOVER FOR ITS INSURED'S LOSS WHEN THE INSURER COMPENSATED ITS INSURED FOR THAT LOSS**



FINANCIAL
RECOVERY
STRATEGIES

**APPENDIX A**

**Equitable Subrogation Allows an Insurer to Recover for Its Insured's Loss
When the Insurer Compensated Its Insured for that Loss**
**(All emphasis supplied unless otherwise indicated.)**

***Arizona:***
*Hartford Unders. Ins. Co. v. Fluidmaster, Inc.*, No. 1 CA–CV 07–0545, 2008 WL 4885732, at *3 (Ariz. Ct. App. Nov. 10, 2008) ("It is well settled that where an insured contracts with a third party requiring the latter to pay for loss or damage to insured property, the insurer, ***upon payment of the loss***, is subrogated to the rights of the insured under the contract.") (quoting *Title Ins. Co. of Minn. v. Costain Ariz., Inc.,* 791 P.2d 1086, 1089 (Ariz. Ct. App. 1990)); *Monterey Homes Ariz., Inc. v. Federated Mut. Ins. Co.*, 212 P.3d 43, 47 (Ariz. Ct. App. 2009) ("[G]enerally, when an ***insurer has paid a loss*** suffered by its insured, the ***insurer becomes subrogated*** to the insured's claim against the party primarily liable for the loss and ***may enforce that claim against that party*** … .").

***Arkansas:***
*EMC Ins. Cos. v. Entergy Arkansas, Inc.*, 924 F.3d 483, 487 (8th Cir. 2019) ("Under Arkansas law, … an ***insured who has been paid*** in full is not the real party in interest, and the insurer must sue the third party tortfeasor in its own name.") (citing *McGeorge Cont'g Co. v. Mizell*, 226 S.W.2d 566 (1950)); *Ark-Homa Foods, Inc. v. Ward*, 473 S.W.2d 910, 911 (1971) ("an ***insured who has been paid*** in full for a loss by his insurer is not the real party in interest and cannot maintain an action in his (the insured's) name against the tort-feasor causing the loss.").

***California:***
*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr.2d 296, 302-03 (Ct. App. 1998) ("The essential elements of an insurer's cause of action for equitable subrogation are as follows: … (c) ***the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable;*** … .") (citing *Caito v. United Cal. Bank,* 576 P.2d 466, 471 (1978).

***District of Columbia:***
*London Guar. & Acc. Co. v. Enterprising Svces., Inc.*, 192 A.2d 292, 293 (D.C. 1963) ("Equity confers 'instanter' upon ***the insurer who has paid*** the same rights that belong to the policyholder."); *Trinity Univ. Ins. Co. v. Moore*, 134 A.2d 333, 335 (D.C. 1957) (same).

***Florida:***
*Monte de Oca v. State Farm Fire & Cas. Co.*, 897 So.2d 471, 472 n.2 (Fl. Ct. App. 2004) (Defining subrogation as "the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured ***for a loss paid by the insurer***.").

***Hawaii:***
*State Farm Fire and Cas. Co. v. Pacific Rent-All, Inc.*, 978 P.2d 753, 766-67 (Haw. 1999) ("[A]n insurer which ***pays a claim*** against an insured for damages ***caused by the default or wrongdoing of a third party*** is entitled to be subrogated to the insured's rights ***against such third party*** … .") (quoting 8B John A. Appleman and Jean Appleman, Ins. Law & Prac. §4941, at 31-38 (1981)); *Taylor v. GEICO*, 978 P.2d 740, 748 (Haw. 1999) ("[O]nce the [insurer] has ***paid benefits to the injured insured***, the [insurer] succeeds to the insured's rights against the tortfeasor.").

# FRS | FINANCIAL RECOVERY STRATEGIES

**APPENDIX A**

**Equitable Subrogation Allows an Insurer to Recover for Its Insured's Loss
When the Insurer Compensated Its Insured for that Loss**
**(All emphasis supplied unless otherwise indicated.)**

**Iowa:**

*Wilson v. Farm Bureau Mut. Ins. Co.*, 770 N.W.2d 324, 328 (Iowa 2009) ("In the insurance context, the doctrine permits '**an insurer who has paid a loss to an insured** to become "subrogated in a corresponding amount to the insured's right of action **against any other person responsible for the loss**."'") (quoting *Allied Mut. Ins. Co. v. Heiken*, 675 N.W.2d 820, 824 (Iowa 2004) (in turn quoting, 6A John A. Appleman & Jean Appleman, Ins. Law & Prac. §4051, at 103 (rev. ed. 1972))).

**Kansas:**

*Farm Bureau Mut. Ins. Co. v. Progressive Direct Ins. Co.*, 190 P.3d 989, 992 (Kan. Ct. App. 2008) ("The insurer's right of subrogation **against third persons causing the loss paid by the insurer to the insured** is derived from the insured alone.") (quoting *Farmers Ins. Co., Inc. v. Farm Bureau Mut. Ins. Co.*, 608 P.2d 923, 928 (Kan. 1980)).

**Maine:**

*Bazinet v. Concord General Mut. Ins. Co.*, 513 A.2d 279, 282 (Me. 1986) ("no subrogation rights in favor of [insurer] had yet arisen" because insurer "refused to indemnify [insured] for her losses and **never paid any benefits to her under the policy**."); *Unity Tel. Co. v. Design Svce. Co.*:

> This doctrine as expressed in the general rule that an insurer, **on paying a loss**, is subrogated in a corresponding amount to the assured's right of action **against any other person responsible for the loss**, has been recognized in *Leavitt v. Canadian Pacific Railway Company*, 90 Me. 153, 160, 37 A. 886, 38 L.R.A. 152, and in *Home Insurance Co. v. Bishop*, 140 Me. 72, 78, 34 A.2d 22, and instances of a liability or collision insurer, **having paid off a claimant**, proceeding in subrogation against a third party are common.

201 A.2d 177, 179-80 (Me. 1964).

**Massachusetts:**

*WESCO Ins. Co. v. Berube*, ESCV201501442A, 2018 WL 1384932, at *2 (Mass. Sup. Ct. Jan. 29, 2018) ("An **insurer who has paid** all or part of a loss may sue in the name of the assured to whose rights it is subrogated."); *Bunker Hill Ins. Co. v. G.A. Williams & Sons, Inc.*, 116 N.E.3d 47, 50 (Mass. Ct. App. 2018) ("Because Bunker Hill **paid for the remediation** of its insured's damaged property, it is **entitled to seek subrogation for the payments it made to [its insured]**.") (citing, *inter alia, New Eng. G&E. Ass'n v. Ocean Acc. & Guar. Corp.*, 116 N.E.2d 671, 683 (Mass. 1953) ("The general rule is well established that **upon the payment of a loss the insurer is entitled to be subrogated** pro tanto to any right of action which the insured may have **against a third person whose negligence or wrong caused the loss**.").

**Michigan:**

*Titan Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, Dkt. No. 321112, 2015 WL 4746240, at *3 (Mich. Ct. App. Aug. 11, 2015) ("Equitable subrogation is a legal fiction through **which a person who pays a debt** for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other.") (quoting *Commercial Union Ins. Co. v. Med Protective Co.*, 393 N.W.2d 479, 482 (Mich. 1986) (per curiam).



**APPENDIX A**

**Equitable Subrogation Allows an Insurer to Recover for Its Insured's Loss
When the Insurer Compensated Its Insured for that Loss**
(All emphasis supplied unless otherwise indicated.)

**Minnesota:**

*Melrose Gates, LLC v. Chor Moua*, 875 N.W.2d 814, 818 (Minn. 2016) ("[W]hen an ***insurer has paid a loss***, 'the insurer is subrogated in a corresponding amount to the insured's right of ***action against any third party whose wrongful conduct caused the loss***.'") (quoting *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 5-6 (Minn. 2012).

**Mississippi:**

*Armstrong v. Miss. Farm Bureau Cas. Ins. Co.*, 66 So.3d 188, 190-91 (Miss. Ct. App. 2011) ("When an insurer ***makes payments to an insured*** to cover a loss and the insured has a claim against a third party to recover ***for that same loss***, the insurer steps into the shoes of the insured and acquires the right to recover from that third party the amount paid to the insured.") (citing *St. Paul Prop. and Liab. Ins. Co. v. Nance*, 577 So.2d 1238, 1240-41 (Miss. 1991)).

**Missouri:**

*Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 831 (Mo. 2014) (en banc) ("[S]ubrogation arises when ***the insurer pays*** its insured's loss and allows the insured to recover from ***any third party who may have caused the loss***."); *McDonald v. Insurance Co. of Penn.*, 460 S.W.3d 58, 65 n.1 (Mo. Ct. App. 2015) ("When an ***insurer pays an insured*** for a claim that the insured has ***against a tortfeasor***, … the insurer has a right to subrogation.") (citing *Knob Noster R-VIII School Dist. v. Dankenbring*, 220 S.W.3d 809, 816 (Mo. Ct. App. 2007)).

**Montana:**

*Skauge v. Mountain States Tel. & Tel. Co.*, 565 P.2d 628, 630 (Mont. 1977) ("A property insurer who ***has indemnified the insured*** is usually subrogated to any rights the insured may have against ***the third party who is responsible for the loss***."), *cited in Van Orden v. United Svces. Auto. Ass'n*, 318 P.3d 1042, 1045 (Mont. 2014) ("An insurer who has ***indemnified its insured*** usually is subrogated to the insured's rights of recovery ***against a third party who is responsible for the loss***.").

**Nebraska:**

*SFI Ltd. P'ship 8 v. Carroll*, 851 N.W.2d 82, 88 (Neb. 2014) ("Subrogation applies to ***an insurer's right to proceed against a third party responsible for a loss which the insurer has compensated pursuant to its contractual obligation under a policy***, and which depends, inter alia, on the existence of the insured's right to proceed against that entity.") (citing 16 COUCH ON INSURANCE §222:2 (3d ed. 2005)).

**Nevada:**

*Duboise v. State Farm Mut. Auto. Ins. Co.*, 619 P.2d 1223, 1224 (Nev. 1980) (per curiam) ("[A]n ***insurer that pays*** its insured in full for claimed losses is subrogated by operation of law to the rights, if any, which the insured may have had ***against the tortfeasor before payment was made***."), *cited in Arguello v. Sunset Station, Inc.*, 252 P.3d 206, 208 (Nev. 2011) (per curiam) ("'In such a case the ***insurer … is the sole party in interes***t, and the only one who may assert a claim against those thought to be ultimately liable.'") (quoting *Valley Power Co. v. Toiyabe Supply*, 396 P.2d 137, 138 (1964)).



**APPENDIX A**

**Equitable Subrogation Allows an Insurer to Recover for Its Insured's Loss
When the Insurer Compensated Its Insured for that Loss**
(All emphasis supplied unless otherwise indicated.)

*New Hampshire:*

*Allstate Ins. Co. v. Reserve Ins. Co.*, 373 A.2d 339, 340-41 (N.H. 1977) (Subrogation action by "insurer which had **paid an insured** for collision damage against a **third party who negligently caused the damage**" is proper.).

*New Mexico:*

*Southwest Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 148 P.3d 806, 809 (N.M. Ct. App. 2006) ("Subrogation encompasses the right of an insurance company, who has **paid an insured's claim**, to step into the shoes of its insured and **pursue recovery from the party who is legally responsible for the insured's losses**.); *Health Plus of N.M., Inc. v. Harrell*, 958 P.2d 1239, 1242 (N.M. Ct. App. 1998) ("When an **insurance company pays** the claim of its insured, it is considered subrogated to recovery of its money **against the person who caused the injury**.").

*New York:*

*Millennium Holdings LLC v. Glidden Co.*, 53 N.E.3d 723, 728 (N.Y. 2016) ("Equitable subrogation 'entitles an insurer to stand in the shoes of its insured **to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse**.'") (citing *ELRAC, Inc. v. Ward*, 748 N.E.2d 1, 8 (N.Y. 2001) (quoting *North Star Reins. Corp. v. Continental Ins. Co.*, 624 N.E.2d 647, 653 (N.Y. 1993))); *Fasso v. Doerr*, 903 N.E.2d 1167, 1170 (N.Y. 2009) ("It is well established that **when an insurer pays for losses sustained by its insured** that were occasioned by a wrongdoer, the **insurer is entitled to seek recovery** of the monies it expended under the doctrine of equitable subrogation.").

*North Carolina:*

*Group Health Plan for Emp. Barnhill Cont'g Co. v. Integon Nat. Ins. Co.*, 714 S.E.2d 866 (Table), 2011 WL 3570054, at *5 (N.C. Ct. App. Aug. 16, 2011) ("[E]quitable subrogation is a mechanism whereby **an insurer that pays for the claims of its insured** becomes subrogated to the rights of the insured **against the tortfeasor that caused the injuries**.") (citing *Moore v. Beacon*, 284 S.E.2d 136, 138 (N.C. Ct. App. 1981); *Hardware Dealers Mut. Fire Ins. Co. v. Sheek*, 158 S.E.2d 635, 637 (N.C. 1968) ("[W]hen an **insurer of property pays the insured's loss**, he is subrogated to the extent of the payment to insured's claim **against the wrongdoer who caused the damage**.").

*North Dakota:*

*Tri-State Ins. Co. of Minn. v. Commercial Group West, LLC*, 698 N.W.2d 483, 487 (N.D. 2005) ("[W]hen an **insurer pays its insured for a loss**, the insurer is subrogated to the insured's right of action **against any third party responsible for the loss**.") (quoting *American Nat. Fire Ins. Co. v. Hughes*, 658 N.W.2d 330, 333 (N.D. 2003)).

*Oregon:*

*Koch v. Spann*, 92 P.3d 146, 148 (Or. Ct. App. 2004) ("'In the insurance context, subrogation permits an insurer in certain instances **to recover what it has paid to its insured** by, in effect, standing in the shoes of the insured and pursuing **a claim against the wrongdoer**.'") (citing *Furrer v. Yew Creek Logging Co.*, 292 P.2d 499, 502 (1956) (en banc), *quoted in Mid-Century Ins. Co. v. Turner*, 182 N.W.3d 855, 863 n.6 (Or. Ct.



FINANCIAL
RECOVERY
STRATEGIES

**APPENDIX A**

**Equitable Subrogation Allows an Insurer to Recover for Its Insured's Loss**
**When the Insurer Compensated Its Insured for that Loss**
**(All emphasis supplied unless otherwise indicated.)**

App. 2008); *Safeco Ins. Co. v. Russell*, 13 P.3d 519, 522 (Or. Ct. App. 2000) ("Subrogation is the right of the insurer to be put in the position of the insured in order to pursue recovery from ***third parties legally responsible*** to the insured ***for the loss paid by the insurer***.") (quotation omitted).

**Rhode Island:**
*Lombardi v. Merchants Mut. Ins. Co.*, 429 A.2d 1290, 1291 (R.I. 1981) ("The right of [the insurers] against the tortfeasor, Joseph Silva, would arise as a result of the doctrine of subrogation pursuant to which ***an insurer, if it pays a loss incurred by its insured***, is entitled to assert the rights that its insured would have ***against the third party who was responsible for the injury***.").

**South Carolina:**
*Shumpert v. Time Ins. Co.*, 496 S.E.2d 653, 656 (S.C. Ct. App. 1998) ("The general rule is that ***when an insurer pays its insured*** for a loss resulting from the tortious conduct of a third party, ***the insurer is subrogated*** to the rights of its insured against the third party.") (quoting *Frank B. Hall & Co., Inc. v. Vic Bailey Lincoln-Mercury, Inc.*, 379 S.E.2d 892, 894 (1989) (per curiam)).

**South Dakota:**
*James v. State Farm Mut. Auto. Ins. Co.*, 929 N.W.2d 541, 543 (S.D. 2019) ("'[S]ubrogation is a time-honored theory [in which] ***insurers who pay a loss*** [for insureds] are entitled, within the limits of [the] subrogation doctrine, ***to pursue the actual wrongdoer***." 16 Steven Plitt *et al.*, COUCH ON INSURANCE §222:4 (3d ed. Supp. 2018).'").

**Tennessee:**
*Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 724 (Tenn. Ct. App. 2008) ("The Tennessee Supreme Court has held that ***an insurer was subrogated*** to the rights its insured had ***against others when the insurer paid its insured's claim***.") (quoting *Almany v. Nationwide Ins. Co.*, No. 85-341-II, 1987 WL 4745, at *4 (Tenn. Ct. App. Jan 29, 1987) (citing *Lancaster Mills v. Merchants Cotton-Press & Storage Co.*, 14 S.W. 317, 330 (1890)), *cited in Great Am. Ins. Co. of New York v. Federal Ins. Co.*, No. M2009-00833-COA-R3-CV, 2010 WL 1712947, at *4 (Tenn. Ct. App. Apr. 28, 2010).

**Utah:**
*Potomac Ins. Co. v. Nickson*, 231 P. 445, 448 (Utah 1924) ("A person liable for and ***who has paid for a loss or injury caused by fault of another*** is subrogated to the rights of the injured party ***against the wrongdoer***."); *National Union Fire Ins. Co. of Pitt., PA v. Smaistrala*, 436 P.3d 249, 251 n.2 (Utah Ct. App. 2018) ("'The doctrine of subrogation allows an insurer, ***having paid a loss*** resulting from a peril insured against, to ***step into the shoes of its insured*** and recoup its losses from a tort-feasor whose negligence ***caused the loss***.'") (quotation omitted).

**Vermont:**
*Utica Nat. Ins. Co. v. Cyr*, 945 A.2d 361, 363 (Vt. 2008) ("The [subrogation] doctrine allows an insurer ***who has reimbursed its insured for a loss*** to be 'subrogated in a corresponding amount to the insured's right



**APPENDIX A**

**Equitable Subrogation Allows an Insurer to Recover for Its Insured's Loss
When the Insurer Compensated Its Insured for that Loss**
**(All emphasis supplied unless otherwise indicated.)**

of ***action against any other person responsible for the loss***.' 6A J. Appleman, INSURANCE LAW & PRACTICE §4051, at 103 (rev. ed. 1972).").

***West Virginia:***
*Kittle v. Icard*, 405 S.E.2d 456, 460 (W. Va. 1991) ("[S]ubrogation gives ***the payor*** a right to collect what it has paid ***from the party who caused the damage***."), *superseded on other grounds by statute*, W. VA. CODE §9-5-11, *as stated in In re E.B.*, 729 S.E.2d 270, 283 (W. Va. 2012).

***Wisconsin:***
*Steadfast Ins. Co. v. Greenwich Ins. Co.*, 922 N.W.2d 71, 80 (Wis. 2019) ("'The doctrine of subrogation enables ***an insurer that has paid an insured's loss*** ... to recoup that payment ***from the party responsible for the loss***.'") (quoting *Dufour v. Progressive Classic Ins. Co.*, 881 N.W.2d 678, 683 (W. Va. 2016)).

# APPENDIX B

**EQUITABLE SUBROGATION PREVENTS
AN INSURED'S UNJUST ENRICHMENT OR DOUBLE RECOVERY**



**APPENDIX B**

**Equitable Subrogation Prevents**
**An Insured's Unjust Enrichment or Double Recovery**
**(All emphasis supplied unless otherwise indicated.)**

***Arizona:***
*Weitz Co. L.L.C. v. Heth*, 333 P.3d 23, 27 (Ariz. 2014) ("One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage ***to the extent necessary to prevent unjust enrichment***. … [T]his doctrine [will apply to] prevent an intervening lienholder from receiving ***an unearned windfall***.") (quotation omitted); *Sourcecorp, Inc. v. Norcutt*, 274 P.3d 1204, 1207 (Ariz. 2012) (*en banc*) ("[A] person who 'fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary ***to prevent unjust enrichment***.'").

***Arkansas:***
*Southern Farm Bureau Cas. Ins. Co. v. Tallant,* 207 S.W.3d 468, 471 (Ark. 2005) ("[B]ecause insurers pay the obligations of their insureds, a right in equity to subrogation in the insurer arises. ***This assures against unjust enrichment by way of double recovery***.") (citing *Sentry Ins. Co. v. Stuart*, 246 Ark. 680, 439 S.W.2d 797 (1969) ("'Subrogation serves to ***limit the chance of double recovery or windfall to the insured***, … .'")); *Newberry v. Scruggs*, 986 S.W.2d 853, 857 (Ark. 1999) ("The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties without regard to form, and ***its purpose and object is the prevention of injustice***. … ***It rests upon the maxim that no one shall be enriched by another's loss*** ….") (quotation omitted).

***California:***
*Bank of N.Y. Mellon v. Citibank, N.A.*, 214 Cal. Rptr.3d 504, 520 (Cal. Ct. App. 2017) ("Equitable subrogation may be used '***to enforce restitution in order to prevent unjust enrichment*** … .'") (quoting *Estate of Kemmerer*, 251 P.2d 345, 347 (Cal. Ct. App. 1952)); *21st Cent. Ins. Co. v. Superior Court*, 213 P.3d 972, 976 (Cal. 2009) ("If insureds must reimburse their insurers once they recover from the tortfeasors, ***they are prevented from receiving double recovery*** and the financial responsibility for their loss is placed on the tortfeasor.") (citing *Helfend v. So. Cal. Rapid Transit Dist.*, 465 P.2d 61, 68 n.17 (Cal. 1970) (in bank) ("[S]ubrogation (or refund of benefits) is the means by which ***double recovery by the owner is prevented*** and the ultimate burden shifted to the wrongdoer where it belongs.)).

***District of Columbia:***
*Eastern Sav. Bank, FSB v. Pappas*, 829 A.2d 953, 957 (D.C. 2003) ("'The basic principles underlying subrogation are … ***restitution to prevent forfeiture and unjust enrichment***.'") (quotation omitted); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Riggs Nat. Bank of Wash., D.C.*, 646 A.2d 966, 968 (D.C. 1994) ("Where one party has paid the debt of another, justice requires that the payor be able to recover his loss from the one who should have paid it***, to prevent unjust enrichment***.") (citing Appleman, Ins. Law & Prac., §6502 (1981)).

***Florida:***
*Continental Cas. Co. v. Ryan Inc. Eastern*, 974 So.2d 368, 376-77 (Fla. 2008) ("[E]quitable subrogation, '***the object of which is to prevent injustice***,' is governed by principles of equity.") (quotation omitted); *Florida Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So.3d 194, 197 (Fl. Ct. App. 2015) ("'The policy behind the doctrine [of equitable subrogation] is to ***prevent unjust enrichmen***t … .'"); *Gortz v. Lytal, Reiter, Clark,*



**APPENDIX B**

**Equitable Subrogation Prevents**
**An Insured's Unjust Enrichment or Double Recovery**
**(All emphasis supplied unless otherwise indicated.)**

*Sharpe, Roca, Fountain & Williams*, 769 So.2d 484, 486 (Fla. Ct. App. 2000) ("Equitable subrogation … ***exists to prevent unjust enrichment.***'") (quoting *Benchwarmers, Inc. v. Gorin*, 689 So.2d 1197, 1199 (Fla. Ct. App. 1997)).

**Hawaii:**
*Yukumoto v. Tawarahara*, 400 P.3d 486, 492-93 (Haw. 2017) ("Subrogation is a 'creature of equity,' and is premised on the notion that an insured should not be able to '***unduly benefit from a loss and thereby enjoy a "double recovery" from both the insurer and the tortfeasor***.'") (quoting *St. Paul Fire & Mar. Ins. Co. v. Liberty Mut. Ins. Co.*, 353 P.3d 991, 994 (Haw. 2015), *quoted in Rudel v. Hawaii Mgmt. Alliance Assoc.*, Civ. No. 15-00539 JMS-RLP, 2017 WL 4969331, at *3 n.5 (D. Haw. Oct. 31, 2017).

**Iowa:**
*State Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.,* 637 N.W.2d 142, 154 (Iowa 2001) (Subrogation is "equitable in nature and ***employed to correct or prevent unjust enrichment***."); *Principal Cas. Ins. Co. v. Norwood*, 463 N.W.2d 66, 67-68 (Iowa 1990) ("At common law in Iowa and elsewhere, the recognized purpose of subrogation is '***to prevent unjust enrichment of one party at the expense of another***.'") (quoting *Ludwig v. Farm Bureau Mut. Ins. Co.*, 393 N.W.2d 143, 146 (Iowa 1986)); *Lumbermens Mut. Cas. Co. v. State, Dept. of Rev. & Fin.*, 564 N.W.2d 431, 434 (Iowa 1997) (same).

**Kansas:**
*Henson v. Davis*, 402 P.3d 1161, 1166-67 (Kan. Ct. App. 2015) ("An essential element of this subrogation relationship … [is that it] ***prevents a double recovery by the person to whom the payment was owed … .***"); *National City Mortg. Co. v. Ross*, 117 P.3d 880, 888 (Kan. Ct. App. 2005) ("the doctrine of subrogation is based on the theory of ***unjust enrichment***") (quotation omitted).

**Maine:**
*Nappi v. Nappi Distribs.*, 691 A.2d 1198, 1199 (Me. 1997) (Equitable subrogation "is 'a concept derived from principles of restitution and ***unjust enrichment***.'"), *quoted in MMG Ins. Co. v. Podiatry Ins. Co. of Am.*, 263 F. Supp.3d 327, 340 (D. Me. 2017); *Maine Mun. Emp. Health Trust v. Maloney*, 846 A.2d 336, 339 n.1 (Me. 2004) ("***Equitable subrogation is itself based on principles of unjust enrichment*** and restitution.").

**Massachusetts:**
*Ditech Fin., LLC v. Kennedy*, 103 N.E.3d 767 (Table), 2018 WL 1371094, at *2 (Mass. Ct. App. Mar. 19, 2018) ("We are guided by 'the purpose of equitable subrogation[, which] is to ***prevent unjust enrichment***.'") (alteration in original) (quoting *Wells Fargo Bank, N.A. v. Comeau*, 87 N.E.3d 577, 582 (Mass. App. Ct. 2017)); *Frost v. Porter Leasing Corp.*, 436 N.E.2d 387, 389 (Mass. 1982) ("The reason for implied subrogation under contracts of insurance is to ***prevent an unwarranted windfall to the insured***. If the insured recovers from both the insurer and the tortfeasor, his compensation may exceed his actual loss. ***Duplicative recovery is 'a result which the law has never looked upon with favor***.'") (citation and quotation omitted), *cited in Suffolk Const. Co., Inc. v. Benchmark Mech. Sys.*, Inc., 56 N.E.3d 138, 142



**APPENDIX B**

**Equitable Subrogation Prevents**
**An Insured's Unjust Enrichment or Double Recovery**
**(All emphasis supplied unless otherwise indicated.)**

(Mass. 2016) ("The underlying principle of implied subrogation is *to prevent an unwarranted windfall*, something disfavored in the law.").

***Michigan:***

*Badran v. Household Finance Corp, III*, No. 279026, 2008 WL 4335098, at *5 n.6 (Mich. Ct. App. Sept. 23, 2008) ("[O]ne 'who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of … the mortgage to the extent necessary *to prevent unjust enrichment*.'") (quoting Restatement Property (Mortgages), 3d, §7.6); *Eastern Sav. Bank v. Monroe Bank & Trust*, No. 231886, 2002 WL 31941034, at *5 (Mich. Ct. App. Nov. 26, 2002 (per curiam) ("One who fully performs an obligation of another, … becomes by subrogation the owner of the obligation … *to the extent necessary to prevent unjust enrichment*.") (quotation omitted).

***Minnesota:***

*Time Ins. Co. v. Opus Corp.*, 519 N.W.2d 470, 472 (Minn. Ct. App. 1994) ("[T]he purpose of subrogation is to *prevent unjust enrichment* by a tortfeasor."); *Group Health, Inc. v. Heuer*, 499 N.W.2d 526, 530 (Minn. Ct. App. 1993) ("Subrogation is an equitable concept arising out of payment of another's obligation, and *its purpose is to prevent unjust enrichment*.") (citing *Westfield Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 515 F. Supp. 38, 40 (D. Minn. 1981) ("Subrogation is an equitable doctrine, the purpose of the doctrine is to *avoid unjust enrichment*.") (citing in turn *Garrity v. Rural Mut. Ins. Co.*, 253 N.W.2d 512 (Wis. 1977) ("The purpose of the [subrogation] doctrine is to *avoid unjust enrichment*.")).

***Mississippi:***

*Armstrong v. Mississippi Farm Bureau Cas. Ins. Co.,* 66 So.3d 188, 190-91 (Miss. Ct. App. 2011) ("The purposes of subrogation are *to prevent the insured from recovering twice for the same loss* and to reimburse the insurer when a third party should be required to pay for the loss."); *Tighe v. Walton*, 103 So.2d 8, 13 (Miss. 1958) ("'The *right to subrogation is particularly appropriate* where the circumstances under which the application is made results in *unjust enrichment*.'") (quotation omitted).

***Missouri:***

*Missouri Pub. Entity Risk Mgmt. Fund v. American Cas. Co. of Reading*, 399 S.W.3d 68, 74 (Mo. Ct. App. 2013) ("Unjust enrichment is related to the doctrine of equitable subrogation. '*Subrogation exists to prevent unjust enrichment*.'") (quoting *Keisker v. Farmer*, 90 S.W.3d 71, 75 (Mo. 2002) (en banc)).

***Montana:***

*Montana Petrol. Tank Release Comp. Bd. v. Capitol Indem. Co.*, 137 P.3d 522, 528 (Mont. 2006) ("Subrogation is an equitable adjustment of rights used *to avoid unjust enrichment*."); *Skauge v. Mountain States Tel. & Tel. Co.*, 565 P.2d 628, 630 (Mont. 1977) ("The theory behind this principle [of subrogation] is that absent repayment of the insurer *the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer*, … .").



**FRS** | **FINANCIAL RECOVERY STRATEGIES**

**APPENDIX B**

**Equitable Subrogation Prevents
An Insured's Unjust Enrichment or Double Recovery**
**(All emphasis supplied unless otherwise indicated.)**

**Nebraska**

*Rawson v. Omah*a, 322 N.W.2d 381, 385 (Neb. 1982) (6 to 1 decision) ("[T]o hold [subrogation inapplicable] ***would result in unjust enrichment*** to the City and was the very reason for creating the doctrine of equitable subrogation."); *Universal Unders. Ins. Co. v. Farm Bureau Ins. Co. of Neb.*, 498 N.W.2d 333, 335-36 (Neb. 1993) ("Subrogation is an equitable doctrine ***applied in order to avoid unjust enrichment*** … .").

**Nevada:**

*Houston v. Bank of Am. Fed. Sav. Bank*, 78 P.3d 71, 74 (Nev. 2003) ("Equitable subrogation is an equitable remedy ***to avoid a person's receiving an unearned windfall at the expense of another***."), *quoted in United States v. Belshaw*, 3:07-cv-00080-RCJ-VPC, 2010 WL 11590133, at *4 D. Nev. Mar. 30, 2010).

**New Hampshire:**

*Wolters v. American Republic Ins. Co.*, 827 A.2d 197, 200 (N.H. 2003) (Subrogation "***prevents the insured from recouping a windfall double recovery***.") (citing *Cunningham v. Metropolitan Life Ins. Co.*, 360 N.W.2d 33, 36 (Wis. 1985)).

**New Mexico:**

*Amica Mut. Ins. Co. v. Maloney*, 903 P.2d 834, 838 (N.M. 1995) ("The doctrine of subrogation is 'founded upon the relationship of the parties and upon equitable principles, for ***the purpose of accomplishing the substantial ends of justice***.'") (quotation omitted); *Seaboard Fire & Mar. Ins. Co. v. Kurth*, 633 P.2d 1229, 1236 (N.M. Ct. App. 1980) ("'Subrogation is a remedy which courts of equity employ ***to prevent unjust enrichment***.'") (quotation omitted); *Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 51 P.3d 1172, 1179 (N.M. Ct. App. 2002) ("Subrogation developed as ***an equitable doctrine intended to avoid unjust enrichment***.").

**New York:**

*Teichman v. Community Hosp. of Western Suffolk*, 663 N.E.2d 628, 631 (N.Y. 1996) ("This right of subrogation, ***formulated to prevent unjust enrichment***, is based upon 'principles of equity and natural justice.'") (quotation omitted), *cited in In re September 11 Litigation*, 802 F.3d 314, 351 (2d Cir. 2015) (Straub, J., concurring in part and dissenting in part); *Citimortgage, Inc. ex rel. Principal Res. Mortg., Inc. v. Chouen*, 154 A.D.3d 914, 916 (N.Y. App. Div. 2017) ("the doctrine of equitable subrogation applies to ***prevent unjust enrichment*** by subrogating the mortgagee to the position of the senior lienholder") (quotation omitted).

**North Carolina:**

*Hogan v. Johnson Motor Lines,* 248 S.E.2d 61, 65 (N.C. Ct. App. 1978) ("'The underlying basis of the employer's right to subrogation is ***the prevention of an unjust enrichment on the part of the employee in the form of a double recovery for the same injury***.'") (quotation omitted).



FINANCIAL
RECOVERY
STRATEGIES

**APPENDIX B**

**Equitable Subrogation Prevents
An Insured's Unjust Enrichment or Double Recovery
(All emphasis supplied unless otherwise indicated.)**

***North Dakota***:

*Kunkel v. First Nat. Bank of Devils Lake*, 393 N.W.2d 265, 268 (N.D. 1986) (subrogation designed "***to prevent unjust enrichment***").

***Oregon:***

*Koch v. Spann,* 92 P.3d 146, 148 (Or. Ct. App. 2004) ("Subrogation is an equitable doctrine that is based on theory of restitution and ***unjust enrichment***.") (citing *Maine Bonding v. Centennial Ins. Co.,* 693 P.2d 1296, 1299 & n.4 (Or. 1985) (Equitable subrogation "rests upon the maxim that ***no one should be enriched by another's loss*** … .") (quotation omitted)); *Ochoco Lumber Co. v. Fibrex & Ship'g Co., Inc.*, 994 P.2d 793, 796 (Or. Ct. App. 2000) ("The purpose of subrogation is ***to prevent unjust enrichment***.").

***Rhode Island:***

*Rhode Is. Hosp. Trust Nat. Bank v. Feriole*, No. C.A. 79-2785, 1980 WL 340218, at *2 (R.I. Super. Ct. Mar. 13, 1980) ("Legal subrogation arises by operation of law … ***to prevent unjust enrichment***."), *quoted in Cullen, Inc. v. Capital Crossing Pfd. Corp.*, No. Civ. A. PC 01-5337, 2004 WL 877634, at *4 (R.I. Super. Ct. Apr. 15, 2004).

***South Carolina:***

*Shumpert v. Time Ins. Co.*, 496 S.E.2d 653, 657 (S.C. Ct. App. 1998) (In property insurance context, equitable subrogation should apply to avoid insured's windfall)

***South Dakota:***

*Amert v. Continental Cas. Co*., 409 N.W.2d 660, 663 (S.D. 1987) ("The purpose of subrogation is to … ***prevent[] the insured from recouping a windfall double recovery.***") (quotation omitted).

***Tennessee:***

*Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999) (Equitable subrogation "'is based on two fundamental premises: 1) that ***an insured should not be permitted recovery twice for the same loss***, which would be the potential result if the insured recovers from both its insurer and a tortfeasor … .'") (quoting *York v. Sevier County Ambulance Auth.*, 8 S.W.3d 616, 619 (Tenn. 1999); *Abbott v. Blount County*, 207 S.W.3d 732, 734 (Tenn. 2006) ("[T]he primary purpose of subrogation is '***to prevent either the unjust enrichment of the insured through a double recovery*** or a windfall benefit to the principal tortfeasor.'") (quoting *Wimberly v. Am. Cas. Co.*, 584 S.W.2d 200, 203 (Tenn. 1979)).

***Utah:***

*Birch v. Fire Ins. Exch.*, 122 P.3d 696, 697 (Utah Ct. App. 2005) ("The doctrine of equitable subrogation enforces the principle that ***the insured is not entitled to double recove***ry, and the insurer is equitably entitled to recover any amounts from the insured that the insured recovered that the insured recovered from the tortfeasor.").



**APPENDIX B**

**Equitable Subrogation Prevents**
**An Insured's Unjust Enrichment or Double Recovery**
**(All emphasis supplied unless otherwise indicated.)**

*Vermont:*

*Town of Stowe v. Stowe Theatre Guild*, 908 A.2d 447, 449 (Vt. 2006) ("As explained in *United Mutual Fire Insurance Co. v. Joerg,* 824 A.3d 586, 589 (Vt. 2003), the doctrine of subrogation is premised on theories of promoting restitution and ***avoiding unjust enrichment****. Id.* ¶6. … ***Subrogation prevents unjust enrichment to the insured that would result from double recovery,*** … .").

*West Virginia:*

*Farmers & Mechs. Mut. Ins. Co. v. Allen*, 778 S.E.2d 718, 727 (W. Va. 2015) (Davis, J. concurring) ("***'The object of subrogation is the prevention of injustice****.* … It is an appropriate means of ***preventing unjust enrichment****.*'") (quoting 23 Richard A. Lord, *Williston on Contracts* §61:51 (4th ed. 2011)); *Porter v. McPherson*, 479 S.E.2d 668, 162 n.8 (W. Va. 1996) ("Subrogation is related closely, if not directly, to 'the equitable principles of "restitution" and "***unjust enrichment****."'") (quotation omitted).

*Wisconsin:*

*Fischer v. Steffen*, 797 N.W.2d 501, 515 & n.24 (Wis. 2011) ("The rules of subrogation … ***prevent an injured party from receiving a double recovery***.")## (citing *Koffman v. Leichtfuss*, 630 N.W.2d 201, 212 (Wis. 2001) ("Subrogation exists … ***to prevent the subrogor from being unjustly enriched through a double recovery***, *i.e.*, a recovery from the subrogated party and the liable third party."); *Sorge v. National Car Rental Sys.,* 512 N.W.2d 505, 507 (Wis. 1994) ("The purpose of subrogation is to ***prevent a double recovery by the insured***. … The insured is to be made whole, ***but no more than whole***.") (quotation omitted).

# APPENDIX C

**A SUBROGATED INSURER "STANDS IN THE SHOES" OF ITS INSURED**



**APPENDIX C**

**A Subrogated Insurer "Stands in the Shoes" of Its Insured**
**(All emphasis supplied unless otherwise indicated.)**

*Arizona:*

*Monterey Homes Ariz., Inc. v. Federated Mut. Ins. Co.*, 212 P.3d 43, 47 (Ariz. 2009) ("The insurer essentially **stands in the shoes of the insured**, taking on the insured's rights and remedies as against the third party … .") (citing, *inter alia, Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999)); *Weitz Co. L.L.C. v. Heth*, 333 P.3d 23, 28 (Ariz. 2014) (Under equitable subrogation, rights "are not discharged but are instead assigned by operation of law to the one who paid the obligation.").

*Arkansas:*

*Hartford Ins. Co. of Midwest v. Mullinax*, 984 S.W.2d 812, 817 (Ark. 1999) ("Because Hartford Insurance **stands in the shoes** of Mullinax, its claim is no greater than that of its insured.").

*California:*

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr.2d 296, 303 (Cal. Ct. App. 1998) ("The subrogated insurer is said to "'**stand in the shoes**'" of its insured, … .") (quoting *Truck Ins. Exch. v. Superior Court (Transco Syndicate No. 1),* 70 Cal. Rptr.2d 255, 259 (Cal. Ct. App. 1997), *cited in Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1217 (9th Cir. 2003) (California law) (also citing *Brown v. Rouse*, 58 P. 267, 269 (Cal. 1899) (A subrogee "is put in all respects *in the place of the party to whose right he is subrogated*.")); *Allstate Ins. Co. v. Loo,* 54 Cal. Rptr.2d 541, 543 (Cal. Ct. App. 1996) ("In the action for subrogation the insurer as subrogee **stands in the shoes of the insured**/subrogor."); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.,* 26 Cal.Rptr.2d 762, 767-68 (Cal. Ct. App. 1994) ("In the insurance context, the [equitable subrogation] doctrine permits the paying insurer to be placed *in the shoes* of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid.").

*District of Columbia:*

*HSBC Bank USA, N.A. v. Mendoza*, 11 A.3d 229, 235 (D.C. 2010) ("Under the doctrine of equitable subrogation, a lender who pays off a pre-existing mortgage … **steps into the shoes** of the mortgagee whom it has paid off and receives that mortgagee's priority over subsequent liens.") (citing *Eastern Sav. Bank v. Pappas*, 829 A.2d 953, 955-59 (D.C. 2003).

*Florida:*

*Holmes Regional Med. Ctr., Inc. v. Allstate Ins. Co.*, 225 So.3d 780, 784 (Fla. 2017) ("[S]ubrogation is an equitable doctrine that allows the initial tortfeasor to be placed in '**the shoes of' the plaintiff**.'") (citing *Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So.2d 702, 704 (Fla. 1980)).

*Hawaii:*

*St. Paul Fire & Mar. Ins. Co. v. Liberty Mut. Ins. Co.*, 353 P.3d 991, 994 (Haw. 2015) ("Through subrogation, the subrogee '*is put in all respects in the place of the party whose rights he is subrogated*.'") (quoting *Peters v. Weatherwax,* 731 P.2d 157, 161 (Haw. 1987) (quoting in turn *Kapena v. Kaleleonalani*, 6 Haw. 579, 583 (Haw. Kingdom 1885)).



**FINANCIAL RECOVERY STRATEGIES**

<u>APPENDIX C</u>

**A Subrogated Insurer "Stands in the Shoes" of Its Insured**
**(All emphasis supplied unless otherwise indicated.)**

**Iowa:**

*Allied Mut. Ins. Co. Heiken*, 675 N.W.2d 820, 825 (Iowa 2004) ("At the time subrogation attaches, the insurer becomes subrogated to the insured's rights of recovery against the responsible tortfeasor, 'and ***the insurer succeeds to all the procedural rights and remedies possessed by the insured***.'") (citing *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992) (Once an insurer pays its insured's loss, "the insurer is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, and ***the insurer succeeds to all the procedural rights and remedies possessed by the insured***.); *Grinnell Mut. Reins. Co. v. Recker*, 561 N.W.2d 63, 69 (Iowa 1997) ("In the context of insurance law, subrogation has been defined as "the right of the ***insurer to be put in the position of the insured*** in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer." … The principles of subrogation provide that … 'The subrogee merely ***steps into the shoes of the subrogor***.") (citations and quotations omitted).

**Kansas:**

*Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 597 P.2d 622, 628-29 (Kan. 1979) (finding that the subrogor "***stands in the shoes***" of the subrogee: "Subrogation is the substitution of another person in the place of the creditor so that the person in whose favor it is exercised succeeds to the rights of the creditor in relations to the debt.").

**Maine:**

*Maine Mun. Emp. Health Trust v. Maloney,* 846 A.2d 336, 339 (Me. 2004) (Subrogation is the substitution of one party for another. As the subrogee, [plaintiff] ***steps into the shoes*** of [the subrogor].") (citing *Unity Tel. Co. v. Design Serv. Co.*, 201 A.2d 177, 179 (Me. 1964).

**Massachusetts:**

*Liberty Mut. Ins. Co. v. National Consol. Warehouse, Inc.*, 609 N.E.2d 1243, 1246 (Mass. Ct. App. 1993) ("A subrogee ***stands in the shoes*** of the subrogor in whose name the action is brought.") (citing *Harvard Trust Co. v. Racheotes*, 147 N.E.2d 817, 818 (Mass. 1958)); *McCabe v. Braunstein*, 439 B.R. 1, 6 (Bankr. D. Mass. 2010) ("By ***stepping into the shoes*** of the subrogor, the subrogee is bound by the timing of the original claim, the date upon which it arose and the date upon which it expires under a statute of limitations.").

**Michigan:**

*Foremost Life Ins. Co. v. Waters,* 278 N.W. 2d 688, 689-90 (Mich. Ct. App. 1979) ("Subrogation is defined as … [t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted ***succeeds to the rights*** of the other in relation to the debt or claim, and its rights, remedies, or securities.") (citations omitted), *rev'd on other grounds*, 329 N.W.2d 688 (1982) (per curiam) (reversing denial of subrogation); *Acuity v. Nick's Trucking & Excavating, LLC*, Civil Case No. 15-11907, 2016 WL 4060975, at *3 (E.D. Mich. July 29, 2016) ("as subrogee of Killam, [subrogee] ***stands in Killam's shoes***").



FINANCIAL
RECOVERY
STRATEGIES

**APPENDIX C**

**A Subrogated Insurer "Stands in the Shoes" of Its Insured**
**(All emphasis supplied unless otherwise indicated.)**

*Minnesota:*

*Auers v. Progressive Direct Ins. Co.*:

> "Subrogation 'is the substitution of another person in place of the creditor to whose rights he or she succeeds in relation to the debt, and ***gives to the substitute all the rights, priorities, remedies, liens, and securities of the person for whom he or she is substituted***.'" Subrogation in the insurance context "involves the substitution of an insurer (subrogee) to the rights of the insured (subrogor). ***Upon payment of a loss***, the insurer is subrogated in ***a corresponding amount*** to the insured's right of action against any third party whose wrongful conduct caused the loss."

878 N.W.2d 350, 355 (Minn. Ct. App. 2016) (second and third emphasis in original) (quoting *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 4-5 (Minn. 2012) (quotation omitted) and *Medica, Inc. v. Atlantic Mut. Ins. Co.*, 566 N.W.2d 74, 76 (Minn. 1997)); *Melrose Gates, LLC v. Chor Moua*, 875 N.W.2d 814, 817 (Minn. 2016) ("Subrogation is the substitution of one party for another whose debt the party pays, which entitles the paying party to ***step into the shoes***, or be substituted to all the rights, priorities, remedies, liens, and securities of, the other party.")

*Mississippi:*

*Armstrong v. Mississippi Farm Bureau Cas. Ins. Co.,* 66 So.3d 188, 190-91 (Miss. Ct. App. 2011) ("When an insurer makes payments to an insured to cover a loss and the insured has a claim against a third party to recover for that same loss, ***the insurer steps into the shoes of the insured*** and acquires the right to recover from that third party the amount paid to the insured.") (citing *St. Paul P&L Ins. Co. v. Nance*, 577 So.2d 1238, 1240-41 (Miss. 1991).

*Missouri:*

*Continental Ins. Co. v. Washeon Corp.*, 524 F. Supp. 34, 36-37 (E.D. Mo. 1995) ("As subrogee to plaintiff's insured's interest, ***plaintiff may assert the same rights*** and is subject to the same defenses as plaintiff's insured.") (citing *U.S. v. United Serv. Auto. Ass'n*, 238 F.2d 364, 366 (8th Cir. 1956) ("The subrogee ***stands in the place*** of one whose claim he has paid."); *Holt v. Myers,* 494 S.W.2d 430, 444 (Mo. Ct. App. 1973) ("To the extent of its payment, the insurance company ***stood in the shoes*** of [its insured] ... .").

*Montana:*

*Montana Petrol. Tank Release Bd. v. Capitol Indem. Co.*, 137 P.3d 522, 525 (Mont. 2006) (insurer "would stand in the shoes of" its insured); *id.* at 528 ("Subrogation is an equitable adjustment of rights used to avoid unjust enrichment. In many instances this is accomplished by ***substituting one person or entity in place of another*** in regard to some claim or right the second person or entity has against a third party."); *Talbot v. WMK-Davis, LLC*, 380 P.3d 823, 832 (Mont. 2016) (McKinnon, J., dissenting) ("Under Montana law, one who asserts the right of subrogation must ***step into the shoes*** of, or be substituted for, one whose claim or debt he or she paid.") (citing*, inter alia, Skauge v. Mountain States Tel. & Tel. Co.*, 565 P.2d 628, 630 (Mont. 1977) ("the person substituted ***will succeed to the rights*** of the creditor in relation to the debt or claim.").



**FINANCIAL**
**RECOVERY**
**STRATEGIES**

### APPENDIX C

## A Subrogated Insurer "Stands in the Shoes" of Its Insured
**(All emphasis supplied unless otherwise indicated.)**

### Nebraska

*Thrower v. Anson*, 752 N.W.2d 555, 562 (Neb. 2008) ("Subrogation involves the **substitution of one person in the place of another** with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies, or securities.") (citing *Blue Cross and Blue Shield of Neb., Inc. v. Dailey*, 687 N.W.2d 689, 696 (Neb. 2004) ("Subrogation involves a substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted **succeeds to the rights of the other** in relation to the debt or claim and its rights, remedies, or securities."); *Querrey & Harrow v. Transcontinental Ins.,* 885 N.E.2d 1235, 1237 (Ind. 2008) (Sullivan, J., dissenting,) ("[o]ne who asserts a right of subrogation must **step into the shoes of, or be substituted for**, the one whose claim or debt he has paid")).

### Nevada:

*Arguello v. Sunset Station, Inc.* , 252 P.3d 206, 208 (Nev. 2011) ("[A]n insurer that pays its insured **in full** for claimed losses is subrogated by operation of law … [and] **is the sole party in interest**, and the only one who may assert a claim against those thought to be ultimately liable.") (quotations omitted; first emphasis in original); *Laffranchini v. Clark*, 153 P. 250, 254 (Nev. 1915) (recognizing that a subrogated party "**stepped into the shoes** [of the subrogee] … as of the date of the payment"), *cited by American Home Assur. Co. v. Eighth Jud. Dist. Court ex rel. County of Clark*, 147 P.3d 1120, 1127 n.34 (Nev. 2006).

### New Hampshire:

*Wolters v. American Republic Ins. Co.,* 827 A.2d 197, 199-200 (N.H. 2003) ("The doctrine of subrogation … [vests in the subrogee] **all the rights which the creditor had** against him (the principal debtor).") (quotation omitted).

### New Mexico:

*Amica Mut. Ins. Co. v. Maloney,* 903 P.2d 834, 838 (N.M. 1995) ("Ordinarily the right of subrogation allows an insurer who has fully compensated the insured **to step into the shoes of the insured** and collect what it has paid from the wrongdoer.") (citing *White v. Sutherland*, 585 P.2d 331, 334 (N.M. Ct. App. 1978) ("[S]ubrogation gives the payor a **right to collect what it has paid** from the party who caused the damage.").

### New York:

*North Star Reins. Corp. v. Continental Ins. Co.*, 624 N.E.2d 647, 82 N.Y.2d 281, 294 (1993) ("Subrogation, an equitable doctrine, entitles an insurer to '**stand in the shoes**' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse."); *Great Am. Ins. Co. of N.Y. v. Advance Ocean Inc.*, 07 Civ. 6421 (PAC), 2008 WL 11399095, at *3 (S.D.N.Y. July 8, 2008 (citing, *inter alia*, *U.S. v. California*, 507 U.S. 746, 756 (1993) ("When proceeding by subrogation, the subrogee 'stands in the place of one whose claim he has paid.'") (quoting *U.S. v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947))).

### North Carolina:

*Milwaukee Ins. Co. v. McLean Trucking Co.,* 125 S.E.2d 25, 29 (N.C. 1962) ("The general rule is that upon payment of a loss, pursuant to the terms of its contract of insurance, **the insurer, or insurers in the case**



**APPENDIX C**

**A Subrogated Insurer "Stands in the Shoes" of Its Insured**
**(All emphasis supplied unless otherwise indicated.)**

*of coinsurance, are entitled to be subrogated pro tanto to any right of action which the insured may have against a third party* whose negligence or wrongful act caused the loss."); *Nationwide Mut. Ins. Co. v. Erie Ins. Co.*, 720 S.E.2d 30 (Table), 2011 WL 6046898, at *3 (N.C. Ct. App. Dec. 6, 2011) (Insurer "***stepped into the shoes*** of the drivers through subrogation, … .").

**North Dakota**:

*Haugenoe v. Workforce Safety & Ins.*, 748 N.W.2d 378, 393 (N.D. 2008) ("Under the concept of subrogation, [Insurer] '***stands in the shoes***' of the claimant for any recovery.") (citing *Ness v. St. Aloisius Hosp.*, 313 N.W.2d 781, 783 (N.D. 1981) (insurer "stands in the shoes" of insured).

**Oregon:**

*Koch v. Spann,* 92 P.3d 146, 148 (Or. Ct. App. 2004) ("In the insurance context, subrogation permits an insurer in certain instances to recover what it has paid to its insured by, in effect, ***standing in the shoes*** of the insured and pursuing a claim against the wrongdoer."); *Certain Underwriters at Lloyd's London and Excess Ins. Co., Ltd. v. Massachusetts Bonding and Ins. Co.*, 230 P.3d 103, 112 (Or. Ct. App. 2010) (under a subrogation theory, ***an insurer "stands in the shoes of its insured***.").

**Rhode Island:**

*Hawkins v. Gadoury*, 713 A.2d 799, 804 (R.I. 1998) ("Otherwise described, '[s]ubrogation ***places the subrogated party in the shoes of the creditor and entitles him to the rights which the creditor had*** in respect to the debt or obligation.'").

**South Carolina:**

*Kuznik v. Bees Ferry Assoc.*, 538 S.E.2d 15, 31 (S.C. Ct. App. 2000) ("Under equitable subrogation, *[subrogee] would step into the shoes of the original creditor*.") (citing *Dodge City of Spartanburg, Inc. v. Jones*, 454 S.E.2d 918, 920 (S.C. Ct. App. 1995) ("through doctrine of equitable subrogation, a ***subsequent creditor can assume rights and priority of prior creditor***")).

**South Dakota:**

*National Farmers Union P&C Co. v. Farm and City Ins. Co.,* 689 N.W.2d 619, 625 (S.D. 2004) ("Equitable subrogation applies when 'an insurer has paid the principal debtor's obligation to the common underlying claimant, and thereafter ***succeeds to the claimant's rights against the principal debtor***… .'"); *Street v. Farmers Elevator Co. of Elkton*, 149 N.W. 429, 433 (S.D. 1914) ("the bailee by equitable assignment and subrogation ***steps into the shoes*** of the paramount owner as to the rights and ownership of the bailed property.").

**Tennessee:**

*Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999) ("Subrogation allows ***an insurer to 'stand in the shoes' of an insured*** and assert the rights of the insured had against a third party.") (citing *Wimberly v. Am. Cas. Co.*, 584 S.W.2d 200, 203 (Tenn. 1979) ("The purpose of insurance subrogation is to prevent either the unjust enrichment of the insured through a double recovery or a windfall benefit to the principal tortfeasor by ***allowing the insurer to stand in the shoes of the insured*** once the insurer has fully indemnified the insured.")); *York v. Sevier County Amb. Auth.*, 8 S.W.3d 616, 618-19 (Tenn. 1999) ("In the



FINANCIAL
RECOVERY
STRATEGIES

**APPENDIX C**

**A Subrogated Insurer "Stands in the Shoes" of Its Insured**
**(All emphasis supplied unless otherwise indicated.)**

context of insurance, ***subrogation allows the insurer to 'stand in the shoes' of the insured*** and assert the rights the insured had against a third party.") (original emphasis removed).

*Utah:*

*Birch v. Fire Ins. Exch.,* 122 P.3d 696, 697 (Utah Ct. App. 2005) ("'The doctrine of subrogation allows an insurer, "having paid a loss resulting from a peril insured against, to ***step into the shoes*** of its insured … ."'") (quoting *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1160 (Utah Ct. App. 1994) ("The doctrine of subrogation allows an insurer, 'having paid a loss resulting from a peril insured against, to ***step into the shoes*** of its insured and recoup its losses from a tort-feasor whose negligence caused the loss.'") (quoting *Board of Educ. v. Hales*, 566 P.2d 1246, 1247 (Utah 1977)).

*Vermont:*

*Town of Stowe v. Stowe Theatre Guild,* 908 A.2d 447, 449 (2006) ("Subrogation allows an insurer to '***stand[ ] in the shoes***' of the insured in a lawsuit and thereby collect the amounts the insurer has been compelled to pay for losses caused by the actual wrongdoer, … .'") (quoting *United Mut. Fire Ins. Co. v. Joerg,* 824 A.3d 586, 589 (Vt. 2003)).

*West Virginia:*

*Farmers & Mech. Mut. Ins. Co. v. Allen*, 778 S.E.2d 718, 722 (W. Va. 2015) ("a subrogated insurer ***stands in the shoes*** of an insured") (citing Steven Plitt *et al.*, 16 COUCH ON INSURANCE 3d §222:5 (2015)).

*Wisconsin:*

*Fischer v. Steffen*, 797 N.W.2d 501, 507 (Wis. 2011) ("In the insurance context, subrogation is a derivative right that permits an insurer to ***step into the shoes*** of the insured and to pursue recovery from the tortfeasor to the extent of the insurer's payments to the subrogor (the insured).") (citing, *inter alia*, *Muller v. Society Ins.*, 750 N.W.2d 1, 6 (Wis. 2008) ("In the insurance context, subrogation is a purely derivative right that permits an insurer who has been contractually obligated to satisfy a loss created by a third party to ***step into the shoes of its insured*** and to pursue recovery from the responsible wrongdoer.") (citing 73 AM. JUR.2d *Subrogation* §1 (2007)); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp.2d 1072, 1075 n.3 (W.D. Wis. 2013) ("One who rests on subrogation ***stands in the place*** of one whose claim he has paid, … .") (quoting *U.S. v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947)).