# Exhibit B



Jeffrey N. Leibell
**Chief Legal & Financial Officer**
(201) 853-1246
jleibell@frsco.com

January 30, 2020

**BY FEDERAL EXPRESS**
Honorable Marianne O. Battani
United States District Judge
United States District Court for the Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 252
Detroit, MI 48226

*In re Automotive Parts Antitrust Litigation*, End-Payor Actions
Master File No. 12-md-02311 (E.D. Mich.)

Dear Judge Battani:

FRS respectfully submits this reply letter in further support of its request that, as set forth in its December 13, 2019 letter (the "FRS Letter"), the Court order that Auto Insurers are subrogees of Total Loss Insureds, and, therefore, may recover from the EP Settlements to the extent of the indemnity payments they made for Total Loss Vehicles.[1] Auto Insurers present a textbook example for the application of the equitable subrogation doctrine: It is irrefutable that they paid to Total Loss Insureds the Antitrust Losses that Defendants are compensating through the EP Settlements. And to deny equitable subrogation would, contrary to the *sine qua non* of the doctrine, undeniably result in a double payment

---

[1] Terms with initial capitalization not specifically defined in this letter shall have the meaning provided for such terms in the FRS Letter (cited herein as "Ltr."). Prior to FRS submitting the FRS Letter, EPPs advised FRS that any proofs of claim that FRS submitted on behalf of Auto Insurers would be rejected to the extent that they included Total Loss Vehicles. Auto Insurers, by and through the FRS Letter, properly objected to that rejection. Just as nonnamed class members have the right to object to the terms of a settlement, *see, e.g.*, *Devlin v. Scardelletti*, 536 U.S. 1, 8 (2002) ("Petitioner objected to the settlement at the District Court's fairness hearing, as nonnamed parties have been consistently allowed to do under the Federal Rules of Civil Procedure."), so, too, claimants to a class action settlement fund have the right to object to the rejection of their claims, *see, e.g., In re Diet Drugs*, MDL No. 1203, 2013 WL 2351054, at *1 (E.D. Pa. May 29, 2013) (class members may appeal rejected claims). And as with a nonnamed class member's right to appeal without intervention, *see Devlin*, 536 U.S. at 14 ("[N]onnamed class members like petitioner who have objected in a timely manner … have the power to bring an appeal without first intervening."), class members whose objections to the rejection of their claims are not favorably resolved have the right, without intervention, to have the Court resolve them, *see, e.g.*, *Skeen v. BMW of No. Am., LLC*, Civ. No. 2:13-cv-1531, 2016 WL 4033969, at *13 (D.N.J. July 26, 2016) ("Class members whose claims are denied by the Settlement Administrator … may appeal the decision to a Special Master, giving them some recourse for unreasonable denials."). Unless otherwise indicated, emphasis herein is added.



Honorable Marianne O. Battani
January 30, 2020
Page 2

to Total Loss Insureds.[2] EPPs, in their attempt to avoid equitable subrogation, deliberately confuse or appear not to understand that doctrine's basic premises or the difference between an insurer pursuing its own claims and, as a subrogee, pursuing the claims of its insureds, and thus present arguments that are designed to obfuscate what is a very simple analysis. EPPs strawmen and non sequiturs, which are as irrelevant as they are facially appealing, contradict this Court's holdings in *GEICO*,[3] as well as almost two centuries of judicial precedent from hundreds if not thousands of courts throughout the U.S.[4]

Each of EPPs arguments and FRS's corresponding responses is presented in the table below.

| **EPP Response** | **Auto Insurer Reply** |
|---|---|
| "Auto Insurers, in their capacity as subrogees, have no rights as class members" and must, but do not, have antitrust standing. EPP 3-4. | EPPs erroneously argue as if Auto Insurers, as did GEICO, are pursuing their own claims. But Auto Insurers *are not* pursuing their own claims; they *are* invoking subrogation. Ltr. 1-2 & n.3.[5] Accordingly, Auto Insurers' right to recover from the EP Settlements does not consider, let alone rely upon, their own status as EP Class Members or whether they have antitrust standing. Rather, Auto Insurers have the right to recover because they satisfy the elements of equitable and contractual subrogation.<br><br>• EPPs mistakenly rely on the section of *GEICO* in which the Court, after noting that "GEICO has elected to opt out of the settlement classes," addressed only GEICO's attempt to "pursue its own claims as, in |

---

[2] EPPs do not address unjust enrichment other than to dismiss the vast precedent cited in the FRS Letter. Ltr. 3 & App. B. They do not explain why, if Total Loss Insureds have already received indemnity payments that necessarily included Antitrust Losses, and then are allowed also to recover from the EP Settlements those same Antitrust Losses, Total Loss Insureds would not be unjustly enriched.

[3] *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp.3d 799 (E.D. Mich. 2018) ("*GEICO*").

[4] ECF 2034, Master File No. 12-md-02311.

[5] For example, Auto Insurers' "theory of harm with respect to Total Loss Payments" *is* that their indemnity payments included Antitrust Losses; it is *not* that their indemnity payments were "inflated by virtue of Defendants' overcharges for the component parts of the vehicles." *GEICO*, 345 F. Supp.3d at 829. Accordingly, and unlike GEICO, Auto Insurers (a) do *not* assert that Antitrust Losses affected the amounts of their indemnity payments; and (b) do *not* assert that "the supra-competitive prices allegedly charged by Defendants somehow pass into the insurance market and produce increased Total Loss Payments." *Id.*



Honorable Marianne O. Battani
January 30, 2020
Page 3

| **EPP Response** | **Auto Insurer Reply** |
|---|---|
| | effect, an indirect purchaser."[6] EPPs ignore entirely the separate section of *GEICO*, a portion of which was quoted by Auto Insurers, in which the Court directly addressed GEICO's attempt to invoke subrogation.[7] |
| | • EPPs also ignore this Court's ruling in *GEICO*, as well as the centuries-old and universally-held premise that insurers, as subrogees, "stand in the shoes" of their insureds; thus, Auto Insurers' "rights" *are* the rights of EP Class Members-turned-Total Loss Insureds. Ltr. 12, n.27 & App. C. |
| Even if Auto Insurers stand in the shoes of EP Class Members, "it would only make the Auto Insurers used vehicle purchasers, who are excluded from the settlement classes." EPP 7. "[A]ll the vehicles for which any indemnity was provided … would have been used." EPP 2, n.2. | Though they ***recite*** the inarguable principle that a subrogee "stands in the shoes" of its subrogor, EPP 7, EPPs ***argue***, contrary to almost two centuries of jurisprudence,[8] the opposite: Auto Insurers may not recover because, even though their insureds purchased "new" Eligible Vehicles, they acquired "used" Total Loss Vehicles. But "stand in the shoes" admits of only one meaning: As this Court held in *GEICO*, subrogees are entitled to all of their |

---

[6] 345 F. Supp.3d at 808. Although EPPs' reliance on *GEICO* is misplaced, they are correct that, with respect to subrogation, Auto Insurers "stand[] in very similar posture as GEICO." EPP 4. And as to subrogation, Auto Insurers note that, as set forth in the "Stipulation Regarding the GEICO Entities Opting into the Settlement Classes …" (submitted Nov. 20, 2019), GEICO "settled their claims against all of [the settling] defendants." While FRS has no information concerning the terms of that settlement, FRS does understand (a) that in the over 3 years since commencing its case, GEICO must have devoted substantial effort and expense to pursue its subrogation claims for Total Loss Vehicles; (b) that GEICO had been granted leave to replead, and did replead, its subrogation claims; and (c) that GEICO's settlement did not include any recovery from Defendants for its fleet vehicles. It would not strain credulity, therefore, for GEICO, which, according to S&P Global Market Intelligence (Sep. 16, 2019), is the second largest U.S. writer of auto insurance and an indirect wholly-owned subsidiary of Berkshire Hathaway Inc., which, in 2019, was ranked by Fortune as the fourth largest U.S. company by revenue, not to have accepted mere nuisance value.

[7] *See* 345 F. Supp.3d at 830-34 (section entitled "To the Extent That GEICO Seeks to Recover from Defendants Under a Theory of Subrogation, … .") (Ltr. 2-3).

[8] *See, e.g.*, *Aetna Fire Ins. Co. v. Tyler*, 16 Wend. 385, 397 (N.Y. 1836) (Insurers "are in equity ***entitled to all [the insured's] rights and remedies*** if they pay the amount of his loss. This principle of equitable subrogation or substitution of the underwriters in the place of the assured, ***is recognized by every writer on the subject of insurance, and is constantly acted upon in courts of law as well as in equity***; … .").



Honorable Marianne O. Battani
January 30, 2020
Page 4

| **EPP Response** | **Auto Insurer Reply** |
|---|---|
|  | subrogor's rights and remedies. Ltr. 6-7 &n.14. Thus, Auto Insurers' right to recover *is* that of EP Class Members-turned Total Loss Insureds: Every Total Loss Vehicle was an Eligible Vehicle, and, therefore, Auto Insurers may recover for it. |
| FRS's "contention" that Auto Insurers' paid for Antitrust Losses is "baseless. … Indemnity payments in no way compensate insureds for their 'entire lost interests,' let alone compensate insureds for [Antitrust Losses]." EPP 9-10. FRS "fails to explain how indemnity payments for *used* vehicles could possibly compensate class members for [Antitrust Losses] sustained at the time they purchased or leased a new vehicle." EPP 8 (emphasis original).[9] "FRS has not presented evidence that the compensation paid to insureds is related to [Antitrust Losses]." EPP 14. "[N]one of the cases cited by FRS … say that total loss insureds suffered one loss. None discuss the 'fundamental economics' of Total Loss Payments. This is not a question of 'fundamental economics' at all." EPP 18. | EPPs argue, in effect, that 2+2=5. The foundation for EPPs' antitrust claims and the recovery thus far of $1.2 billion in settlements, is that, throughout the class periods, Antitrust Losses were in the prices of Eligible Vehicles. Ltr. 8. And as EPPs correctly note, the only reductions allowed to indemnity payments are for depreciation and wear and tear, EPP 9; EPPs do not argue, nor could they, that any indemnity payment was reduced to eliminate Antitrust Losses. So, if Antitrust Losses were in the prices of Eligible Vehicles, and if indemnity payments were not reduced to eliminate Antitrust Losses, where did they go?[10] Because 2+2=4, not 5, the unavoidable answer is that Antitrust Losses *must* have been in Auto Insurers' indemnity payments. In the same vein, EPPs also do not explain how any Total Loss Insured suffered an economic loss greater than the purchase price of a Total Loss Vehicle. |
| Auto Insurers may not recover from the EP Settlements because their insurance policies did not extend coverage for Antitrust Losses. EPP 4-10. "FRS seeks equitable subrogation for a type of loss that it admits the Auto Insurers | This false flag – subrogation is unavailable because the insurance policies do not cover Antitrust Losses – permeates EPPs' response. And because it is based on the accurate statement that the policies do not cover Antitrust Losses, it is the most facially |

---

[9] EPPs make much of the obvious fact that Auto Insurers' indemnity payments are less than each Eligible Vehicle's purchase price. *See, e.g.*, EPP 9. What EPPs ignore, however, is that, from the time an Eligible Vehicle was purchased until it became a Total Loss Vehicle, each EP Class Member derived a benefit from it. The value of that benefit is what is considered in arriving at market value. EPPs also do not explain how Auto Insurers' consideration of "physical wear and tear, deterioration and depreciation," EPP 9, would remove from indemnity payments any Antitrust Losses. EPPs' argument thus proves too much: EP Class Members that did not pay at least full MSRP, suffered less than full Antitrust Losses or none at all.

[10] *Cf., e.g., Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-45 (2005) (artificial inflation remains in market prices until confirmatory disclosure of the inflation causes the market to correct itself).



Honorable Marianne O. Battani
January 30, 2020
Page 5

| **EPP Response** | **Auto Insurer Reply** |
|---|---|
| do not insure against and which the terms of the insurance policies do not contemplate." EPP 6. "[H]ad an insured filed a claim against an Auto Insurer to recover overcharges caused by price-fixing, FRS does not even remotely suggest that an Auto Insurer would have paid (or even considered adjusting or paying) such a claim." EPP 14. "The question is whether the "losses" covered by the policies include economic harm due to antitrust injuries. It is beyond peradventure that the policies do not provide any coverage for antitrust injuries." EPP 18. | appealing of EPPs' strawmen; after all, why would an insurer indemnify a loss that its policy did not cover? While EPPs have facial appeal, they lack substance.<br><br>• As set forth in the FRS Letter, the dispositive factor is not "coverage"; rather, and as this Court held in *GEICO*, it is "compensation." Ltr. 2-3, 3-7 & App. A. ***Even the cases that EPPs cite stand for this proposition. EPP 15.*** [11] Accordingly, EPPs' facially appealing false flag is no more than a non sequitur.<br><br>• EPPs then pose a similarly appealing but equally misleading hypothetical. While it is correct that, had an insured claimed Antitrust Losses unrelated to a Total Loss Vehicle, Auto Insurers would have rejected that claim, Auto Insurers are not seeking subrogation other than for Total Loss Vehicles. Subrogation is only being sought, and is only proper, when Auto Insurers have indemnified Antitrust Losses.<br><br>• Contrary to the abundance of caselaw cited by Auto Insurers, Ltr. 7-12 & App. A, the only other cases EPPs muster either contradict their position or are irrelevant to it:<br><br>➢ *Shockley v. Harleysville Mut. Ins. Co.*: This case has already been addressed in detail. Ltr. 9-12. And while EPPs devote much ink to it, they ignore its only relevant point: "***Had appellee [insurer] paid for this [uncovered title-related] loss then it would have had an*** |

---

[11] *E.g., In re Air Crash Disaster*, 86 F.3d 498, 549 (6th Cir. 1996) (Equitable subrogation includes "every instance in which **one party pays the debt** for which another is primarily answerable.") (quotation omitted); *In re New England Fish Co.*, 749 F.2d 1277, 1282 (9th Cir. 1984) ("A right to subrogation exists **only when the subrogee pays or discharges a debt** for which another is primarily liable."); *Livingston v. Shelton*, 537 P.2d 774, 777 (Wash. 1975) ("Subrogation is allowed only in favor of one who … **pays the debt of another**; … . [I]t is only in cases where the person **advancing money to pay the debt of a third person** … is compelled to **pay it** to protect his own rights, that a court of equity substitutes him in the place of the creditor, … .") (quotations omitted); *Grant Thronton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1048 (2nd Cir. 1992) (affirming dismissal of equitable subrogation claim because **plaintiff failed to establish it paid a debt** for which the defendant was primarily liable).



Honorable Marianne O. Battani
January 30, 2020
Page 6

| **EPP Response** | **Auto Insurer Reply** |
|---|---|
| | *equitable right or subrogation right*.[12] Auto Insurers, because they paid for Antitrust Losses, are entitled to equitable subrogation. |
| | ➢ *Int'l Broth. of Teamsters, Local 734 H&W Trust Fund v. Philip Morris Inc.*: EPPs' reliance on this case is another attempt to cast Auto Insurers' subrogation claims as direct ones: "Insurers … want to recover **directly from tobacco producers precisely in order to bypass the elements of subrogation actions** … **By suing directly**, plaintiffs seek to recover even if none of their beneficiaries could prevail … ." The only relevant statement in *Philip Morris* contradicts EPPs' position: "The three appellate decisions … hold that **insurers may recover only to the extent that they can step into the shoes of their insureds.**"[13] |
| | ➢ *Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*: As explained in the FRS Letter, Ltr. 9-10 n.21, but ignored by EPPs, the Seventh Circuit affirmed dismissal solely because of pleading deficiencies." EPP 11. But like *Philip Morris*, the Court notes (as quoted by EPPs) that insurers have subrogation claims: "Doubtless the Blues **are subrogated to their insureds' tort claims**." EPP 11. |
| | ➢ *Fireman's Fund Ins. Co. v. Morse Signal Devices*: This case, too, was addressed in the FRS Letter. Ltr. 9-10 n.21. EPPs ignore that, in *Morse* but unlike Auto Insurers' indemnity payments, the payments for property damage did not include the costs of "higher priced alarm service … ." |
| | ➢ *Employers' Liab. Assur. Corp., Ltd., of London, England v. Daley*: Unlike Auto Insurers' |

---

[12] Ltr. 11 (quoting 553 A.2d 973, 976 (Pa. Super. Ct. 1988) (2-1 decision).

[13] 196 F.3d 818, 821 (7th Cir. 1999).



Honorable Marianne O. Battani
January 30, 2020
Page 7

| EPP Response | Auto Insurer Reply |
|---|---|
| | indemnity payments, which included compensation for the same losses being sought via subrogation, the insurer's payments in *Daley* were, according to statute, solely for "medical services and lost time," not the compensation for "personal injury" recovered by the firemen.[14] |
| Auto Insurers may not recover because property damage and Antitrust Losses are not the same losses. EPP 14-20. | EPPs present yet another facially appealing false flag that both relies on the obvious – clearly, Antitrust Losses are not the same as property losses – and then presents a series of non sequiturs. The issue is not whether the losses are the same; rather, and as described above and in the FRS Letter, it is whether Auto Insurers' indemnity payments included the Antitrust Losses that Defendants compensated via the EP Settlements. Ltr 4-7. And of course, it is irrelevant to subrogation that Defendants are not primarily liable for any property losses and are not joint tortfeasors with those who were. |

For the foregoing reasons and those set forth in the FRS Letter, FRS requests that the Court enter an order declaring that Auto Insurers are equitable and contractual subrogees of Total Loss Insureds, and, therefore, that Auto Insurers may stand in the shoes of Total Loss Insureds to recover from the EP Settlements to the extent of the indemnity payments they made for Total Loss Vehicles.

Respectfully submitted,

*[signature]*
Jeffrey N. Leibell

---

[14] 51 N..S.2d 567, 569-70 (N.Y. Sup. Ct. 1944), *aff'd*, 271 A.D. 662 (N.Y. App. Div. 1947) (4 to 1 decision) ("The Bramleys' tort did not subject them to liability under section 205, nor did the town, by its payment, satisfy the Bramleys' tort liability to the firemen."), *aff'd*, 77 N.E.2d 515 (N.Y. 1948).



Honorable Marianne O. Battani
January 30, 2020
Page 8

Copy (via email) to:    Chanler A. Langham, Esq.
                          Marc M. Selzer, Esq.
                          Hollis Salzman, Esq.
                          Adam J. Zapala, Esq.