# Exhibit D

## Jeffrey N. Leibell

| | |
|---|---|
| **From:** | Robin Niemiec |
| **Sent:** | Monday, January 14, 2019 10:19 AM |
| **To:** | Reiss, William V. |
| **Cc:** | Jeffrey N. Leibell |
| **Subject:** | FRS - Auto Parts Indirect Research Memo |
| **Attachments:** | FRS Research Memorandum - Auto Parts Indirect (2019-01-11).pdf |

Dear Will:

Attached is the FRS research memo that we discussed last month. FRS's insurer clients each intend to file, at a minimum, a claim for fleet vehicles and for the vehicles they purchased as the result of an insured total loss. More than likely, their claims also will include individual auto part purchases made by the insurer pursuant to the contracts of insurance issued; however, we are currently reviewing accessibility of data for this portion of the claim.

I have cc'd our general counsel, Jeff Leibell, on this email because he and his department created the attached memo. Per our last phone conversation, I believe your intent was to circulate this among your co-lead counsel and then get back to us.

Thank you,
Robin

**Robin Niemiec**
Executive Vice President Operations
561.231.5332 | rniemiec@frsco.com | **LinkedIn**



**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*

*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*

*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*



# R E S E A R C H   M E M O R A N D U M

## Insurers Are Eligible to Participate in the End Purchaser Settlements of the
### *In re Automotive Parts Antitrust Litigation*

## <u>INTRODUCTION</u>

An automobile insurer that, under a policy of insurance, acquires a total loss vehicle by compensating the purchaser or lessee (whether an insured or a third-party claimant) of that vehicle, is a member of the End Purchaser classes certified by the court (the "EPP Classes"), and, therefore, is eligible to recover from the End Purchaser Settlements (the "EPP Settlements") of the *In re Automotive Antitrust Litigation* ("*Auto Parts*").[1] As a member of the EPP Classes, that insurer need not, as must GEICO, which excluded itself from all three rounds of EPP Settlements and commenced its own actions, establish that it could have stated its own antitrust claim.[2] As long as an insurer satisfies the court-certified definitions for the EPP Classes concerning each total loss vehicle – that is, that the insured/claimant purchased the qualifying vehicle new or leased it, that the insured/claimant did so not for resale and during the appropriate timeframe and in the appropriate location – therefore, the insurer, with respect to each such total loss vehicle, is a member of the EPP Classes. And because the insurer paid for total loss vehicles and made the insured/claimant whole, the insurer, under principles of contractual and equitable subrogation, satisfies those definitions of the EPP Classes because:

- If the insured/claimant is determined to be the only member of the EPP Classes and, even though the insured/claimant was compensated by the insurer, entitled to recover 100% of the recovery provided by the EPP Settlements, the insured/claimant, contrary to the principles of equitable subrogation that exist to prevent unjust enrichment, would be unjustly enriched by that portion of the recovery caused by the antitrust loss already compensated by the insurer's payment; and

---

[1] This memo focuses on an insurer's eligibility to recover for total loss vehicles. The same premises demonstrate that insurers also are members of the EPP Classes with respect to, and, therefore, may participate in the EPP Settlements for, every eligible part they purchased.

[2] For example, an insurer member of the EPP Classes need not allege that it has standing under antitrust laws, which, as the *Auto Parts* court held, "is a threshold, pleading-stage inquiry[,] and when a complaint by its terms fails to establish this requirement[,] [the court] must dismiss it as a matter of law.'" *GEICO Corporation v. Autoliv, Inc.*, --- F.Supp.3d ---, 2018 WL 5077767, at *12 (E.D. Mich. Aug. 30, 2018) (hereinafter "*GEICO*") (alterations in original) (quoting *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007). As such, the *Auto Parts* court's determinations that non-class member "GEICO has not put forward any allegations or authority to support a finding that the insurance market in which Total Loss Payments are made is inextricably linked with the market for auto parts," *id.* at *18, and that "GEICO's effort to recover for its Total Loss Payments introduces still more levels of uncertainty into the process of attributing fault to particular Defendant suppliers and quantifying the resulting harm to GEICO," *id.* at *19, and the court's resulting holding that "GEICO lacks standing to assert antitrust claims arising from this type of payment," *id*. at *19, are irrelevant to whether an insurer, with respect to each total loss vehicle that it acquires via compensating the purchaser or lessee of that vehicle, may recover as a member of the EPP Classes.

---

## FRS | FINANCIAL RECOVERY STRATEGIES

# R E S E A R C H   M E M O R A N D U M

- If the insured/claimant is deemed to be the only member of the EPP Classes entitled to recover, but only for the antitrust loss not compensated by the insurer, and the insurer is not deemed also to be a member of the EPP Classes entitled to recover for the antitrust loss compensated through the insurance policy, the other members of the EPP Classes who submit claims would, solely at the expense of the excluded insurer, obtain a windfall because the settlement fund will be allocated among fewer claimants.

The Round 1 defendants, in seeking to dismiss GEICO's subrogation claims, tacitly agreed that insurers that have not opted out are members of the EPP Classes. Specifically, the only argument that the Round 1 defendants proffered to dismiss GEICO's subrogation claims was that, because GEICO had opted out of the Round 1 EPP Class, and, therefore, was not a member of that EPP Class, GEICO's subrogation claims were barred by the releases that GEICO's insureds, as members of the Round 1 EPP Class, provided as part of the Round 1 EPP Settlements. Each member of the EPP Classes – including insurers that have not opted out – has settled and released its claims in exchange for a distribution from the EPP Settlements. *See id.* at *19-*20.[3] Unlike GEICO, which opted out and, therefore, may be subject to those releases,[4] an insurer that has not opted out is still a member of the EPP Classes, and, as such, is releasing its claims against defendants in exchange for the right to participate in the settlement recoveries. Thus, once insurers fall within the court-certified definitions for the EPP Classes – which, as set forth below, they do under principles of contractual and equitable subrogation – and

---

[3] It is a fundamental tenet of class action settlement law that the consideration for class members' release of the defendants is their right to participate in settlement recovery. *See, e.g.*, Settlement Agreement (Yamashita Rubber Co.) (Dkt. No. 145-1) at ¶ 22 ("[i]n consideration of payment of the Settlement Amount, … the Releasees shall be completely released … [from any claims] that Releasors … ever had … on account of, or in any way arising out of, [the Released Claims]"). Accordingly, the release may not bar a class member from participating in the recovery.

[4] And even non-class member GEICO's subrogation claims are unlikely to be barred by the releases:

> Yet, while the releases granted by the EPPs in their settlements ordinarily would operate to defeat GEICO's right of subrogation, this rule is subject to a recognized exception that arguably might apply here. Specifically, "[w]here a third party obtains a release from an insured with knowledge that the latter has already received payment from the insurer or with information that, reasonably pursued, should give him knowledge of the existence of the insurer's subrogation rights, such a release does not bar the [insurer's] right of subrogation."

*GEICO* at *21 (quoting *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 107 (2d Cir. 1992)). Given the nature of automobile insurance and the state requirements that every vehicle must be insured, not to overlook that GEICO provided to the Round 1 defendants notice that it had paid its insureds, defendants, which bear the burden on the affirmative defense of release, will not be able to refute their knowledge, and, therefore, the releases will not bar GEICO's – or any insurer's – subrogation claims.

# FRS | FINANCIAL RECOVERY STRATEGIES

## RESEARCH MEMORANDUM

have not opted out of the EPP Classes, those insurers' eligibility as members of the EPP Classes to recover from the EPP Settlements is not affected by the releases provided to defendants in each EPP Settlement. *See id.*

Because an insurer, pursuant to its contractual obligations, will have paid the insured/claimant the total loss vehicle's approximate market value immediately prior to the total loss event, permitting the insured/claimant to obtain 100% of the recovery from the EPP Settlements would, to the extent of the payment received from the insurer, unjustly provide the insured/claimant with a double recovery. And if the insured/claimant may recover only its portion of the antitrust loss, but the insurer nevertheless is excluded, the other eligible claimants will receive a windfall. As described below, however, the cases from every "Eligible Location" hold that equitable subrogation is broad enough to apply so that the insurer may recover from the EPP Settlements its portion of the antitrust loss and thus avoid the grossly inequitable results that would obtain if the insurer was excluded. And under basic subrogation concepts, the insurer would "stand in the shoes" of the insured/claimant – that is, if the vehicle in issue, but for the total loss, would have been eligible for the insured/claimant to claim, it is eligible for the insurer to claim – and would have the same rights and be subject to the same defenses as the insured/claimant. *See, e.g.*, *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 97 n.5, 133 S. Ct. 1537, 1546 n.5 (2013).

## BACKGROUND

Four rounds of EPP Settlements have been reached with 60 of the defendants. The publicly disclosed total amount of the EPP Settlements obtained thus far is approximately $1.22 billion. The EPP Settlements in the first three rounds, which total approximately $1.037 billion, have been finally approved by the court. Additional EPP Settlements, which thus far total approximately $182 million, also have been filed with the court. Over 20 defendants have not yet settled. A qualifying vehicle – as set forth in the class notices, qualifying vehicles include four-wheeled passenger automobiles, cars, light trucks, pickup trucks, crossovers, vans, mini-vans and sport utility vehicles[5] – is eligible to participate in all three rounds if it:

---

[5] Qualifying vehicles and the Class Period related to each are listed on the official EPP Settlements website, www.autopartsclass.com, as follows:

| | |
|---|---|
| Rounds 1 and 2 | http://www.autopartsclass.com/included |
| Round 3 | http://www.autopartsclass.com/included_round_3.php |
| Latest Settlements | Not yet published |



FINANCIAL
RECOVERY
STRATEGIES

# R E S E A R C H   M E M O R A N D U M

- was purchased or leased at any time from 1995 to 2018 (the "Class Period");

- was purchased or leased in the District of Columbia or one in of the following 30 states: Arizona, Arkansas, California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia or Wisconsin (each, an "Eligible Location"); and

- was not purchased for resale.

Once a vehicle meets these eligibility criteria, the only issues remaining for an insurer are as follows: (a) whether, in a total loss situation, an insurer, to the extent of its payment to an insured/claimant, is a member of the EPP Classes entitled to recover from the EPP Settlements; and (b) whether the vehicle remains eligible when claimed by the insurer.

## LEGAL ANALYSIS

### Insurers are Members of the EPP Classes Entitled to Recover from the EPP Settlements

There is no legal principle that addresses directly how an insurer's, an insured's or a claimant's rights to recover from a class action settlement may be affected when, as is the case here, the insured/claimant, pursuant to a policy of insurance, has received from an insurer compensation for damages alleged to have resulted from illegal conduct resolved via that settlement. That said, when basic principles of equitable subrogation that, in analogous situations in every Eligible Location, have been applied to prevent unjust enrichment so as to reach a fair result, are applied, the insurer is a class member, and is entitled to recover from the settlement to the extent of the losses the insurer suffered as a result of its payment to the insured/claimant.

To summarize the factual predicate for this analysis:

- the insured/claimant satisfies the above-described eligibility criteria such that, but for the total loss, the insured/claimant would be a class member entitled to recover from the EPP Settlements;

- the insurer, pursuant to the provisions of a policy of insurance, (a) has paid to the insured/claimant an amount equal to the total loss vehicle's approximate market value immediately prior to the total loss event; and (b) has taken title to the total loss vehicle; and

- the End Purchaser claims have been resolved through non-reversionary common fund settlements that, among other things, are "zero-sum games" – that is, the payment to one claimant necessarily diminishes the payments to every other claimant such that the fewer the number of claimed eligible vehicles, the greater the recovery for each approved claimant – in which the net recovery (after paying attorneys' fees and expenses and the cost of administrating the settlements) will be allocated among approved claimants based on the information in their claim forms.

# FRS FINANCIAL RECOVERY STRATEGIES

## R E S E A R C H   M E M O R A N D U M

These facts fit squarely within the doctrine of equitable subrogation. "[T]he doctrine of equitable subrogation, 'as applied in the insurance context, allows an insurer to sue a third party for injuries that the third party caused to the insured, when the insurer compensated the insured for those injuries.'" *National Surety Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 756 (6th Cir. 2007), *quoted in GEICO* at \*19. And according to Couch on Insurance, subrogation traditionally was an equitable principle invoked to align the rights and responsibilities of the parties concerning the discharge of a debt so that (a) the insured is prevented from recovering twice, and (b) the tortfeasor does not escape liability simply because the victim had insurance that covered the loss caused by the tortfeasor. *See* 16 COUCH ON INSURANCE (hereinafter, "COUCH"), § 222:8 (3d ed. 2018). Thus, if an automobile purchaser or lessee, but for the total loss of that automobile, would be deemed the proper member of the EPP Classes entitled to recover from the EPP Settlements, the payment by the insurer causes the insurer, to the extent of its payment, to fit within the court-certified definition for the EPP Classes such that the insurer becomes entitled to recover from the EPP Settlements for the losses the insurer sustained. **Appendix A** of this memorandum sets forth for the Eligible Locations a selection of caselaw that follows or is consistent with concept that equitable subrogation prevents "double recovery" or "unjust enrichment."[6] Also supporting the application of equitable subrogation here is the judicial recognition that, because equitable subrogation has a "broad equitable foundation," it should be "applied without regard to technicality." *See* COUCH § 222:9. **Appendix B** of this memorandum sets forth for the Eligible Locations a selection of caselaw in which courts have broadly applied, or acknowledged the broad application of, equitable subrogation.

### **If a Vehicle is Eligible for an Insured/Claimant, the Vehicle is Eligible for the Insurer**

One of the most fundamental principles of subrogation is that the insurer succeeds to all rights, priorities, remedies and liens of the insured/claimant with respect to losses incurred by the latter for which the

---

[6] Contractual provisions also lead to the conclusion that an insurer is a member of the EPP Classes entitled to recover. Once the insurer pays on the policy, takes title to the total loss vehicle, which "passes when the parties intend that it pass," *e.g., Nationwide Insurance Co. of Amer. v. Porter,* 995 N.Y.S.2d 235 (2014) (citing *Dallura v. Rubicco,* 772 N.Y.S. 2d 532 (2004)), and takes possession of the vehicle, the right to file a claim likely passes with it when, as is the case with at least some insurers, a "Release of Insurer" or other similar document is executed by which the insured/claimant, for the consideration received from the insurer, expressly transfers and assigns to the insurer all rights, title, equity and interest in the total loss vehicle, and all claims, demands, rights and causes of action that the insured/claimant may have against all persons, firms or corporations on account of that vehicle, through the date of the event that caused the vehicle to become a total loss. *See generally*, 5 WILLISTON ON CONTRACTS 4th, Forms, §73F:8 (Release of insurer—Release of claim by insured under automobile insurance policy, with assignment).



# R E S E A R C H   M E M O R A N D U M

latter is compensated by former; thus, the insurer, once it compensates the insured/claimant for the loss, "stands in the shoes" of the insured/claimant. *See* Couch § 222:5. As the U.S. Supreme Court held in *U.S. v. Munsey Trust Co. of Washington, D.C.*, for example:

> One who rests on subrogation **stands in the place of one whose claim he has paid**, as if the payment giving rise to the subrogation had not been made.

332 U.S. 234, 242, 67 S. Ct. 1599, 1603 (1947) (emphasis added; citation omitted), *quoted in U.S. v. California*, 507 U.S. 746, 756, 113 S. Ct. 1784, 1790 (1993); *accord US Airways, Inc. v. McCutchen*, 569 U.S. 88, 97 n.5, 133 S. Ct. 1537, 1546 n.5 (2013) ("'Subrogation simply means substitution of one person for another; that is, **one person is allowed to stand in the shoes of another and assert that person's rights against' a third party**.") (emphasis added) (quoting 1 Dobbs §4.3(4), at 604; citing 8B Appleman, Ins. Law & Prac., §4941, at 11 ("'Subrogation' involves the substitution of the insurer … to the rights of the insured")). And as the *GEICO* court already has held:

> [t]he doctrine of equitable subrogation allows insurers to "stand in the shoes" of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss. In pursuing this recovery, the insurer (or subrogee) "succeeds to the rights of" its insured (the subrogor), and seeks to "require the party who caused the damage to reimburse the insurer for the payment the insurer has made" to its insured.

*GEICO* at *19 (quoting *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999) (internal quotation marks and citations omitted). **Appendix C** of this memorandum sets forth for the Eligible Locations a selection of caselaw in which courts have held that a subrogee "stands in the shoes" of its subrogor. Because the insurer, as subrogee to the insured/claimant, stands in its subrogor's shoes, if the vehicle would qualify in the hands of the insured/claimant but, it is a deemed a total loss by an insurer, which compensated the purchaser or lessee and took title to the vehicle, that vehicle qualifies in the hands of the insurer. That is, if it is an eligible vehicle that, during the Class Period, an insured/claimant, purchased new or leased in one of the Eligible Locations, in each instance not for resale, the vehicle is for the insurer an eligible vehicle that, during the Class Period, was purchased new or leased in one of the Eligible Locations not for resale.



# R E S E A R C H   M E M O R A N D U M

**Insurers Are Eligible to Participate in the End Purchaser Settlements of the**
***In re Automotive Parts Antitrust Litigation***

## APPENDIX A
**Equitable Subrogation Prevents Unjust Enrichment or Double Recovery**

***Arizona:***
*Weitz Co. L.L.C. v. Heth*:

Arizona applies "equitable subrogation" as set forth in Restatement (Third) of Property: Mortgages §7.6(a) (1997) ("Restatement"):

One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage ***to the extent necessary to prevent unjust enrichment***. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

*See Sourcecorp, Inc. v. Norcutt*, 274 P.3d 1204, 1207 (Ariz. 2012) (adopting the Restatement approach). Under this doctrine, for example, a junior lienholder who fully satisfies a debt secured by a superior mortgage on real property may be equitably subrogated to that mortgage to the extent necessary to prevent an intervening lienholder from receiving ***an unearned windfall*** afforded by an advancement in lien priority.*2 See id.* at 1209-10; Restatement §7.6 cmt. a. If equitable subrogation is permitted, the junior lienholder, now the subrogee, is entitled to obtain and record a written assignment of the superior lienholder's rights to place others on notice of the subrogation. Restatement §7.6 cmt. a.

333 P.3d 23, 27 (Ariz. 2014) (emphasis added); *Sourcecorp, Inc. v. Norcutt*, 274 P.3d 1204, 1207 (Ariz. 2012) (*en banc*) ("[A] person who 'fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary ***to prevent unjust enrichment***.'") (emphasis added) (citing Restatement (Third) of Property (Mortgages) §7.6 comment). *Monterey Homes Arizona, Inc. v. Federated Mut. Ins. Co.*, 212 P.2d 43, 47 (Ariz. 2009) ("[G]enerally, when an insurer has paid a loss suffered by its insured, the insurer becomes subrogated to the insured's claim against the party primarily liable for the loss and may enforce that claim against that party ...."); *Liberty Mut. Ins. Co. v. Thunderbird Bank*, 542 P.2d 39, 49-50 (Ariz. Ct. App. 1975) (Jacobson, P.J., dissenting) ("As can be seen the equitable doctrine of subrogation had its origins in the debtor/creditor relationship, ***to avoid unjust enrichment***.") (emphasis added), *vacated on other grounds by Liberty Mut. Ins. Co. v. Thunderbird Bank*, 555 P.2d 333 (Ariz. 1976).



# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
### Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

**Arkansas:**

*Southern Farm Bureau Cas. Ins. Co. v. Tallant:*

Subrogation is the substitution of one party for another. *Welch Foods, Inc. v. Chicago Title Ins. Co.*, 341 Ark. 515, 17 S.W.3d 467 (2000). The party asserting subrogation is making demand under the right of another. *Cooper v. Home Owners' Loan Corp.*, 197 Ark. 839, 126 S.W.2d 112 (1939); *Chaffe & Bros. v. Oliver*, 39 Ark. 531 (1882). Subrogation is a normal incident of indemnity insurance. *Sentry Ins. Co. v. Stuart*, 246 Ark. 680, 439 S.W.2d 797 (1969). That is to say that because insurers pay the obligations of their insureds, a right in equity to subrogation in the insurer arises. *Id.* **This assures against unjust enrichment by way of double recovery.** *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992).

…

In the context of automobile insurance, an insurer is entitled to subrogation because, while not primarily responsible for paying for injuries and damages suffered by the insured at the hands of a third person, it is under an obligation to pay by reason of the policy of insurance. *Farm Bureau Mut. Ins. Co. v. Riverside Marine Remanufacturing, Inc.*, 278 Ark. 585, 647 S.W.2d 462 (1983). Thus, under these facts, the right to subrogation arises by operation of law; however, if there is a subrogation provision in the policy, then it also arises by convention.

207 S.W.3d 468, 471 (Ark. 2005) (emphasis added): *Newberry v. Scruggs*, 986 S.W.2d 853, 857 (Ark. 1999) ("The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties without regard to form, and ***its purpose and object is the prevention of injustice.*** … ***It rests upon the maxim that no one shall be enriched by another's loss*** ….") (emphasis added) (quoting *Southern Cotton Oil Co. v. Napoleon Hill Cotton Co.*, 158 S.W. 1082 (Ark. 1913)).

**California:**

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*:

The essential elements of an insurer's cause of action for equitable subrogation are as follows: (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured had an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.



**F R S**  FINANCIAL RECOVERY STRATEGIES

# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

77 Cal. Rptr.2d 296, 302-03 (1998) (citing *Caito v. United California Bank,* 144 Cal. Rptr.751, 576 P.2d 466 (1978); *Fireman's Fund Ins. Co v. Wilshire Film Ventures, Inc.*, 60 Cal. Rptr.2d 591 (1997); *Patent Scaffolding Co. v. William Simpson Constr. Co.,* 64 Cal. Rptr. 187 (1967); *Grant v. de Otte*, 122 Cal. App.2d 724,728, 265 P.2d 952 (1954); 11 Witkin, Summary of Cal. Law (9th ed.)*,* Equity, §169, p. 849.); *Bank of New York Mellon v. Citibank, N.A.*, 214 Cal. Rptr.3d 504, 520 (Cal. Ct. App. 2017) ("Equitable subrogation may be used '"***to enforce restitution in order to prevent unjust enrichment*** ….'") (emphasis added) (quoting *Estate of Kemmerer*, 251 P.2d 345, 347 (Cal. Ct. App. 1952)); *21st Century Ins. Co. v. Superior Court*, 213 P.3d 972, 976 (Cal. 2009) ("If insureds must reimburse their insurers once they recover from the tortfeasors, ***they are prevented from receiving double recovery and the financial responsibility for their loss is placed on the tortfeasor***.") (emphasis added) (citing *Helfend v. So. Cal. Rapid Transit Dist.*, 465 P.2d 61, 68 n.17 (Cal. 1970 (in bank) ("[S]ubrogation (or refund of benefits) is the means by which ***double recovery by the owner is prevented and the ultimate burden shifted to the wrongdoer where it belongs***.) (emphasis added)).

***District of Columbia:***
*Harbor Ins. Co. v. Schnabel Found. Co.*:

> Plaintiff Harbor, as an insurer which has paid the full amount of its loss, is subrogated to the full extent of the insured's claim against the responsible party. *Link Aviation, Inc. v. Downs,* 325 F.2d 613, 614 (D.C. Cir. 1963). Subrogation is the substitution of one person for another in litigating a claim, demand, demand, or right-the substituted party succeeds to the rights of the other. 11 John Alan Appleman and Jean Appleman, INS. LAW & PRAC., §6501 (1981). The subrogee is entitled to the amount paid to the insured, but is not entitled to be unjustly enriched by receiving money in excess of what it actually paid. *Beacon Bowl v, Wisconsin Electric Power Company,* 176 Wis.2d 740, 501 N.W.2d 788, 801 (1993).

992 F. Supp. 419, 431 (D.D.C. 1997), *vacated as a result of settlement by Harbor Ins. Co. v. Schnabel Foundation Co.*, 992 F. Supp. 437 (D.D.C. 1997); *Eastern Sav. Bank, FSB v. Pappas*, 829 A.2d 953, 957 (D.C. 2003) ("'The basic principles underlying subrogation are the same as those in constructive trusts, prevention of merger, and equitable liens, *i.e.*, ***restitution to prevent forfeiture and unjust en***richment.'") (quotation and citations omitted) (emphasis added); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Riggs Nat. Bank of Washington, D.C.*, 646 A.2d 966, 968 ("Where one party has paid the debt of another, justice requires that the payor be able to recover his loss from the one who should have paid it*, to prevent unjust enrichment*.") (footnote omitted; emphasis added) (citing Appleman, INS. LAW & PRAC., §6502 (1981); *Washington Mechanics' Sav. Bank v. District Title Ins. Co.*, 65 F.2d 827, 829 (1933) ("The title companies, therefore, ***were not entitled in their own right to recover a second reimbursement for the same loss***.") (emphasis added)).



# FINANCIAL RECOVERY STRATEGIES

# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

**Florida:**

*Continental Cas. Co. v. Ryan Inc. Eastern*:

> Unlike conventional subrogation, which is created by express agreement, equitable (sometimes referred to as legal) subrogation arises by operation of law. *See DeCespedes v. Prudence Mut. Cas. Co.,* 193 So.2d 224, 227 (Fla. 3d DCA 1966); 31A Fla. Jur.2d Insurance §3295 (2002). Equitable subrogation has been defined as "the substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." BLACK'S LAW DICTIONARY 1467. Basically, it is an equitable remedy created "by the legal consequences of the acts and relationships of the parties." *Dade County Sch. Bd. v. Radio Station WQBA,* 731 So.2d 638, 646 (Fla.1999). Accordingly, equitable subrogation, "**the object of which is to prevent injustice**," is governed by principles of equity. 22 Eric Mills Holmes, *Holmes' Appleman on Insurance* 2d, §141.1 [C][1].

974 So.2d 368, 376-77 (Fla. 2013) (emphasis added); *Florida Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So.3d 194, 197 (Fl. Ct. App. 2015) ("'The policy behind the doctrine [of equitable subrogation] is to **prevent unjust enrichmen**t by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge.'") (citations omitted; emphasis added); *Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams*, 769 So.2d 484, 486 (Fla. Ct. App. 2000) ("Equitable subrogation is 'founded on the proposition of doing justice without regard to form. **The doctrine exists to prevent unjust enrichment.**'") (emphasis added) (quoting *Benchwarmers, Inc. v. Gorin*, 689 So.2d 1197, 1199 (Fla. Ct. App. 1997)) (internal quotation marks omitted).

**Hawaii:**

*Yukumoto v. Tawarahara*:

> Subrogation is a "creature of equity," and is premised on the notion that an insured should not be able to "**unduly benefit from a loss and thereby enjoy a 'double recovery' from both the insurer and the tortfeasor**." *St. Paul Fire & Mar. Ins. Co. v. Liberty Mut. Ins. Co.*, 353 P.3d 991, 994 (Haw. 2015); Roger Baron, *Subrogation: A Pandora's Box Awaiting Closure*, 41 S.D. L. REV. 237, 241 (1996); *see also* Johnny C. Parker, *The Made Whole Doctrine: Unraveling the Enigma Wrapped in the Mystery of Insurance Subrogation*, 70 MO. L. REV. 723 (2005). Subrogation exists to provide insurers with a mechanism "to recover the costs of reimbursing injured insured parties." Parker, *supra*, at 723; *see St. Paul*, 353 P.3d at 994.

400 P.3d 486, 492-93 (Haw. 2017) (emphasis added), *quoted in Rudel v. Hawaii Mgmt. Alliance Assoc.*, Civ. No. 15-00539 JMS-RLP, 2017 WL 4969331, at *3 n.5 (D. Haw. Oct. 31, 2017).



**FINANCIAL RECOVERY STRATEGIES**

# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

***Iowa:***

*Allied Mut. Ins. Co. v. Heiken*:

> Subrogation is a doctrine that originated in equity to give relief to a person or entity that pays a legal obligation that should have, in good conscience, been satisfied by another. *See* 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance *3d* §222:8, at 222-30 (2000) [hereinafter Couch]; *see also State Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.,* 637 N.W.2d 142, 154 (Iowa 2001) (discussing principles related to unjust enrichment). The doctrine has emerged to play a vital role in insurance law by permitting an insurer who has paid a loss to an insured to become "subrogated in a corresponding amount to the insured's right of action against any person responsible for the loss." 6A John Alan Appleman & Jean Appleman, Ins. Law & Prac., §4051, at 103 (rev. ed. 1972) ...; *see also Kapadia v. Preferred Risk Mut. Ins.*, 418 N.W.2d 848, 851 (Iowa 1988). The doctrine is needed in the insurance field "to preserve the principle of indemnity". 4 Rowland H. Long, *The Law of Liability Insurance* §23.01, at 23-3 (1998).

675 N.W.2d 820, 824-25 (Iowa 2004); *State Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.,* 637 N.W.2d 142, 154 (Iowa 2001) ("The right of one party, who has satisfied a claim, to seek reimbursement from another party can generally be pursued by three interrelated common law principles: indemnity, contribution, and subrogation. ... ***All three principles are equitable in nature and employed to correct or prevent unjust enrichment***.") (emphasis added); Principal Cas. Ins. Co. v. Norwood, 463 N.W.2d 66, 67-68 (Iowa 1990) ("At common law in Iowa and elsewhere, the recognized purpose of subrogation is '***to prevent unjust enrichment of one party at the expense of another***.'") (emphasis added) (quoting *Ludwig v. Farm Bureau Mut. Ins. Co.*, 393 N.W.2d 143, 146 (Iowa 1986), in turn citing Restatement of Restitution §162, at 653 (1937)); *Lumbermens Mut. Cas. Co. v. State, Dept. of Rev. & Fin.*, 564 N.W.2d 431, 434 (Iowa 1997) (same).

***Kansas:***

*Hartford Fire Ins. Co. v. Western Fire Ins. Co.*:

> There are two kinds of subrogation, one of which is termed "conventional," and the other, in contradistinction, "legal," or by reason of its origin and basis "equitable." 73 Am. Jur.2d, Subrogation §2, p. 599; *see also Kansas City Title & Trust Co. v. Fourth Nat'l Bank*, 135 Kan. 414, 10 P.2d 896 (1932). In *United States Fidelity & Guaranty Co. First State Bank,* 208 Kan. 738, 749, 494 P.2d 1149, 1157-8 (1972), this court said:
>
> > We have long recognized the distinction between "conventional" subrogation, based on contract, and "legal" or "equitable" subrogation which arises by operation of law without regard to any contractual relationship. ...

597 P.2d 622, 629 (Kan. 1979); *Henson v. Davis*, 402 P.3d 1161, 1166-67 (Ct. App. Kan. 2015) ("An essential element of this subrogation relationship ... [is that it] ***prevents a double recovery by the person to whom***



# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

*the payment was owed*—in our case, the injured party, Henson.”) (emphasis added); *Witmer v. Brosius' Estate*, 336 P.2d 455, 459-60 (Kan. 1959) (“'The general principles with reference to **unjust enrichment** which are at the basis of constructive trusts and the analogous equitable remedies of equitable lien and subrogation are also at the basis of quasi-contractual obligations.'”) (quotation omitted; emphasis added); *Nat'l City Mortg. Co. v. Ross*, 117 P.3d 880, 888 (Kan. Ct. App. 2005) (“the doctrine of subrogation is based on the theory of **unjust enrichment**”) (emphasis added).

*Maine:*
*MMG Ins. Co. v. Podiatry Ins. Co. of Am.*, 263 F. Supp.3d 327, 340 (D. Me. 2017) (“The Maine Supreme Judicial Court has stated that equitable subrogation is 'a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it.'”) (quoting *Nappi v. Nappi Distribs.*, 691 A.2d 1198 (Me. 1997), in turn quoting *United Carolina Bank v. Beesley*, 663 A.2d 574, 576 (Me. 1995)).); *Id.* (Equitable subrogation “is 'a concept derived from principles of restitution and **unjust enrichment**.'”) (emphasis added) (quoting *Nappi*, 691 A.2d 1198, in turn citing *North East Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 433 A.2d 715, 719 (Me. 1981)); *Maine Mun. Emp. Health Trust v. Maloney*, 846 A.2d 336, 339 n.1 (Me. 2004) (“***Equitable subrogation is itself based on principles of unjust enrichment*** and restitution.” (emphasis added) (citing *North East Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 433 A.2d 715, 719 (Me.1981)).

*Massachusetts:*
*Travelers Ins. Co. v. Graye*:

> The right of subrogation is not dependent on contract but “rest[s] upon natural justice and equity.” *Amory v. Lowell*, 1 Allen, 504, 507 (Mass. 1861). *See Massachusetts Hosp. Life Ins. Co. v. Shulman*, 12 N.E.2d 856, 858 (Mass. 1938). The doctrine is expounded in Arnould on Marine Insurance (14th ed.) §1225: “Subrogation is an equitable arrangement incident to all contracts of indemnity and to all payments on account thereof.” …

> …

> We are of the opinion that the attempted salvage of the yacht by the plaintiff was not inconsistent with subrogation, and therefore did not estop the plaintiff from pursuing that remedy.

263 N.E.2d 442, 443-44 (Mass. 1970); *Ditech Fin., LLC v. Kennedy*, No. 17-P-324, 2018 WL 1371094, at *2 (Mass. Ct. App. Mar. 19, 2018) (“We are guided by 'the purpose of equitable subrogation[, which] is to **prevent unjust enrichment**.'”) (emphasis added; alteration in original) (quoting *Wells Fargo Bank, N.A. v. Comeau*, 87 N.E.3d 577, 582 (Mass. App. Ct. 2017)); *Frost v. Porter Leasing Corp.*, 436 N.E.2d 387, 389 (Mass. 1982) (“The reason for implied subrogation under contracts of insurance is to **prevent an unwarranted windfall to the insured**. If the insured recovers from both the insurer and the tortfeasor, his



# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

compensation may exceed his actual loss. ***Duplicative recovery is 'a result which the law has never looked upon with favor*.'")** (emphasis added) (citing and quoting *Graye*, 263 N.E.2d 443-44), *cited in Suffolk Const. Co., Inc. v. Benchmark Mech. Sys.*, Inc., 475 Mass. 150, 154 (Mass. 2016) ("The underlying principle of implied subrogation is ***to prevent an unwarranted windfall***, something disfavored in the law.") (emphasis added).

**Michigan:**
*Foremost Life Ins. Co. v. Waters*:

> [Equitable subrogation is a] legal fiction through which a person who, not as a volunteer or in his own wrong, and in absence of outstanding and superior equities, pays debt of another***, is substituted to all rights and remedies of the other, and the debt is treated in equity as still existing for his benefit***, …

278 N.W. 2d 688, 689-90 (Mich. Ct. App. 1982) (emphasis added), *rev'd on other grounds by Foremost Life Ins. Co. v. Waters*, 329 N.W.2d 688 (Mich. 19820 (per curiam); *Badran v. Household Finance Corp, III*, No. 279026, 2008 WL 4335098, at *5 n.6 (Mich. Ct. App. Sept. 23, 2008) ("[O]ne 'who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of … the mortgage to the extent necessary ***to prevent unjust enrichment*.'")** (emphasis added) (quoting Restatement Property (Mortgages), 3d, §7.6).

**Minnesota:**
*Auers v. Progressive Direct Ins. Co.,* 878 N.W.2d 350, 355 (Minn. 2016) ("A subrogation lien is 'an equitable lien impressed on moneys on the ground that they ought to go to the insurer.'") (citing *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 368, 126 S. Ct. 1869, 1877, 164 L.Ed.2d 612 (2006), in turn citing 4 Palmer, Law of Restitution §23.18(d), at 470)); *Time Ins. Co. v. Opus Corp.*, 519 N.W.2d 470, 472 (Minn. Ct. App. 1994) ("[T]he purpose of subrogation is to ***prevent unjust enrichment*** by a tortfeasor.") (emphasis added); *Group Health, Inc. v. Heuer*, 499 N.W.2d 526, 530 (Minn. Ct. App. 1993) ("Subrogation is an equitable concept arising out of payment of another's obligation, and ***its purpose is to prevent unjust enrichment***.") (emphasis added) (citing *Westfield Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 515 F. Supp. 38, 40 (D. Minn. 1981); *id.* ("equity will not permit a tortfeasor to benefit by receiving a windfall.") (citing *Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn. 1983)).

**Mississippi:**
*Armstrong v. Mississippi Farm Bureau Cas. Ins. Co.,*

> Subrogation can be either contractual or equitable. *St. Paul Prop. & Liab. Ins. Co. v. Nance* 577 So.2d 1238, 1240 (Miss. 1991). ***The purposes of subrogation are to prevent the insured from***



**FINANCIAL RECOVERY STRATEGIES**

# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

*recovering twice for the same loss and to reimburse the insurer when a third party should be required to pay for the loss*. 83 C.J.S. *Subrogation* §3 (2000).

66 So.3d 188, 190-91 (Miss. Ct. App. 2011) (emphasis added); *Tighe v. Walton*, 103 So.2d 8, 13 (Miss. 1958) ("'The right to subrogation is particularly appropriate where the circumstances under which the application is made results in unjust enrichment.'") (emphasis and quotation omitted).

*Missouri:*

*Missouri Pub. Entity Risk Mgmt. Fund v. American Cas. Co. of Reading*, 399 S.W.3d 68, 74 (Mo. Ct. App. 2013) ("Unjust enrichment is related to the doctrine of equitable subrogation. '***Subrogation exists to prevent unjust enrichment***.'") (emphasis added) (quoting *Keisker v. Farmer*, 90 S.W.3d 71, 75 (Mo. 2002) (*en banc*)).

*Montana:*

*Montana Petroleum Tank Release Comp. Bd. v. Capitol Indem. Co.*, 137 P.3d 522, 528 (Mont. 2006) ("Subrogation is an equitable adjustment of rights used ***to avoid unjust enrichment***. In many instances this is accomplished by substituting on person or *entity* in place of another in regard to some claim or right the second person or entity has against a third party.") (emphasis added) (citing *Swingley v. Riechoff*, 112 P.2d 1075, 1077 (Mont. 1941)); *Skauge v. Mountain States Tel. & Tel. Co.*, 565 P.2d 628, 630 (Mont. 1977) ("The theory behind this principle [of subrogation] is that absent repayment of the insurer ***the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with loss***.") (emphasis added) (citing 16 COUCH ON INSURANCE 2d, Subrogation, §61.18; *Standard Acc. Ins. Co. v. Pellecchia*, 104 A.2d 288, 292 (N.J. 1954); *Fidelity & Cas. Co. of N. Y. v. First Nat. Bank in Ft. Lee*, 397 F. Supp. 587, 589 (D.N.J. 1975).

*Nebraska*

*Rawson v. City of Omaha*, 322 N.W.2d 381, 385 (Neb. 1982) ("[T]o hold [subrogation inapplicable] ***would result in unjust enrichment*** to the City and was the very reason for creating the doctrine of equitable subrogation.") (emphasis added); *Universal Underwriters Ins. Co. v. Farm Bureau Ins. Co. of Nebraska*, 498 N.W.2d 333, 335-36 (Neb. 1993) ("Subrogation is an equitable doctrine ***applied in order to avoid unjust enrichment*** when one party has discharged an obligation which should have been satisfied in whole or in part by another.") (emphasis added) (citing *Reese v. AMF-Whitely*, 420 F. Supp. 985, 989 (D. Neb.1976)).

*Nevada:*

*Arguello v. Sunset Station, Inc.,* 252 P.3d 206, 208 (Nev. 2011) ("Subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging



# RESEARCH MEMORANDUM

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

to the insured against a third party with respect to any loss covered by the policy. BLACK'S LAW DICTIONARY 1563-64(9th ed. 2009)."); *Houston v. Bank of Am. Fed. Sav. Bank*, 78 P.3d 71, 74 & n.11 (Nev. 2003) ("Equitable subrogation is an equitable remedy ***to avoid a person's receiving an unearned windfall at the expense of another***.") (emphasis added) (citing Restatement (Third) of Property: Mortgages §7.6 cmt a).

***New Hampshire:***
*Wolters v. American Republic Ins. Co.*:

> The doctrine of subrogation has its origins in equity. *Dimick v. Lewis*, 497 A.2d 1221, 1223 (N.H. 1985). A party's right to subrogation can arise either by contract, statute, or common law or equitable principles. *Moulton v. Groveton Papers Co.*, 323 A.2d 906, 910 (N.H. 1974); *see also* 16 L. Russ & T. Segalla, COUCH ON INSURANCE 3d §222:6, at 222–27 (2000).

> ...

> The purpose behind subrogation "is to place the responsibility where it ultimately should rest by compelling payment by the one who in good conscience ought to pay it" *Security Fence Co. v. Manchester Fed. S&L Ass'n*, 136 A.2d 910, 912 (N.H. 1957) (quotation omitted). ***It also prevents the insured from recouping a windfall double recovery***." *Cunningham v. Metropolitan Life Ins. Co.*, 360 N.W.2d 33, 36 (Wis. 1985).

827 A.2d 197 (N.H. 2003) (emphasis added).

***New Mexico:***
*Amica Mut. Ins. Co. v. Maloney*:

> It is well settled that when an insurer pays a claim of the insured under the insured's policy, it "is deemed to be subrogated by operation of law to recovery of its payments against the person who cause the who caused the loss. *Safeco Ins. Co. of Am. v. U. S. Fid. & Guar. Co.*, 679 P.2d 816, 817 (N.M. 1984); *see also U. S. Fid. & Guar. Co. v. Raton Nat'l Gas Co.*, 521 P.2d 122, 124-25 (N.M. 1974). The doctrine of subrogation is "founded upon the relationship of the parties and upon equitable principles, for ***the purpose of accomplishing the substantial ends of justice***." *Raton*, 521 P.2d at 124-25 (quoting 6A Appleman, INS. LAW & PRAC., §4054 at 142-44).

903 P.2d 834, 838 (N.M. 1995) (emphasis added); *Seaboard Fire & Mar. Ins. Co. v. Kurth*, 633 P.2d 1229, 1236 (N.M. Ct. App. 1980) ("'Subrogation is a remedy which courts of equity employ ***to prevent unjust enrichment***.'") (emphasis added; quotation omitted); *Quality Chiropractic, PC v. Farmers Ins. Co. of Arizona*, 51 P.3d 1172, 1179 (N.M. Ct. App. 2002) ("Subrogation developed as ***an equitable doctrine intended to avoid unjust enrichment***.") (emphasis added).



# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

**New York:**

*North Star Reins. Corp. v. Continental Ins. Co.*:

> Subrogation allocates responsibility for the loss to the person who in equity and good conscience ought to pay it, in the interest of avoiding absolution of a wrongdoer from liability simply because the insured had the foresight to procure insurance coverage (*see* 16 COUCH, INSURANCE 2d §61:18 [rev. ed.]. The right arises by operation of law when the insurer makes payment to the insured (*see* 16 COUCH, Insurance 2d §61:4 [rev. ed.)

82 N.Y.2d 281, 294 (1993); *Teichman by Teichman v. Community Hosp. of Western Suffolk*, 663 N.E.2d 628, 631 (N.Y. 1996) ("This right of subrogation, **formulated to prevent unjust enrichment**, is based upon 'principles of equity and natural justice.'") (emphasis added; quotation omitted), *cited in In re September 11 Litigation*, 802 F.3d 314, 351 (2d Cir. 2015) (Straub, J., concurring in part and dissenting in part).

**North Carolina:**

*Milwaukee Ins. Co. v. McLean Trucking Co.*:

> The right of an insurer to be thus subrogated to the rights of the insured may be either the right of conventional subrogation—that is, subrogation by agreement between the insurer and the insured—or the right of equitable subrogation, by operation of law, upon the payment of the loss.

125 S.E.2d 25, 29 (N.C. 1962) (citing *Smith v. Pate,* 97 S.E.2d 457, 460 (N.C. 1957); *Underwood v. Dooley,* 147 S.E. 686, 690 (N.C. 1929); *Lumberman's Mut. Ins. Co. v. Southern Ry. Co.*, 102 S.E. 417, 421 (N.C. 1920); *Cunningham & Hinshaw v. Seaboard Air Line Ry.*, 51 S.E. 1029, 1031-32 (N.C. 1905); 29 AM. JUR., Insurance, §1719); *Hogan v. Johnson Motor Lines,* 248 S.E.2d 61, 64-65 (N.C. Ct. App. 1978) ("'The underlying basis of the employer's right to subrogation is **the prevention of an unjust enrichment on the part of the employee in the form of a double recovery for the same injury**.'") (emphasis added; quotation omitted).

**North Dakota**:

*Tschider v. Burtts,* 149 N.W. 2d 710, 711 (N. D. 1967) ("We have held an insurer may be subrogated to the rights of its insured against one primarily responsible, either in equity (*Weber v. United Hardware & Imp. Mut. Co.*, 75 N.D. 581, 31 N.W.2d 456, 459 (N.D. 1948)), or by contract (*Farmers Ins. Exch. v. Arlt*, 61 N.W.2d 429, 433-34 (N.D. 1953)); *Kunkel v. First Nat. Bank of Devils Lake*, 393 N.W.2d 265, 268 (N.D. 1986) (subrogation designed "**to prevent unjust enrichment**") (emphasis added; citations omitted).

**Oregon:**

*Koch v. Spann,* 92 P.3d 146, 148 (Or. Ct. App. 2004) ("Subrogation is an equitable doctrine that is based on theory of restitution and **unjust enrichment**. *Maine Bonding v. Centennial Ins. Co.,* 298 Or. 514, 520-21 n.4, 693 P.2d 1296 (1985). It enables a secondarily liable party who has been compelled to pay a debt to



# RESEARCH MEMORANDUM

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

be made whole by collecting the debt from the primarily liable party who, in good conscience, should be required to pay. *Id.* at 520-21 n.4, 693 P.2d 1296.") (emphasis added); *Ochoco Lumber Co. v. Fibrex & Shipping Co., Inc.*, 994 P.2d 793, 796 (Or. Ct. App. 2000) ("The purpose of subrogation is **to prevent unjust enrichment**.") (emphasis added) (citing *Barnes v. Eastern & Western Lbr. Co.*, 287 P.2d 929, 951 (Or. 1955)).

***Rhode Island:***
*Hawkins v. Gadoury,* 713 A.2d 799, 804 (R.I. 1998) ("[I]n its broadest sense, [subrogation] is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities.") (*quoting Silva v. Home Indem. Co.*, 416 A.2d 664, 667 (R.I. 1980), in turn quoting *May Trucking Co. v. Int'l Harvester Co.*, 543 P.2d 1159, 1161-62 (Idaho 1975) (quotation omitted)); *Rhode Is. Hosp. Trust Nat. Bank v. Feriole*, No. C.A. 79-2785, 1980 WL 340218, at *2 (R.I. Mar. 13, 1980) ("Legal subrogation arises by operation of law when there is a debt or obligation owed by one person which another person, who is neither a volunteer nor an intermeddler, pays or discharges under such circumstances as in equity entitle him to reimbursement **to prevent unjust enrichment**.") (emphasis added; citation omitted), *quoted in Cullen, Inc. v. Capital Crossing Pfd. Corp.*, No. Civ. A. PC 01-5337, 2004 WL 877634, at *4 (R.I. Apr. 15, 2004).

***South Carolina:***
*Calvert Fire Ins. Co. v. James*:

> Legal subrogation is not dependent on contract. The doctrine is an equitable one, founded not upon any fixed law, but upon principles of natural justice; its purpose is to require the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it; and it is to be applied according to the dictates of equity and good conscience in light of the actions and relationship of the parties. 50 AM. JUR., Subrogation, §§5, 6; *Gadsden v. Brown & Wellsman*, 17 S.C. Eq. 37 (Speers Eq. 1843); *Livingstain v. Columbian Banking & Trust Co.*, 57 S.E. 182, 183 (S.C. 1907); *American Surety Co. v. Hamrick Mills*, 4 S.E.2d 308, 313-14 (S.C. 1939); *Powers v. Calvert Fire Ins. Co.*, 57 S.E.2d 638, 642 (S.C. 1950); *St. Paul-Mercury Indem. Co. v. Donaldson*, 83 S.E.2d 159, 162 (S.C. 1954).

> "Where the tortious conduct of a third person is the cause of a loss covered by an insurance policy, the insurer, upon payment of the loss, becomes subrogated pro tanto by operation of law to whatever rights the insured may have against the wrongdoer.*" Globe & Rutgers Fire Ins. Co. v. Foil*, 200 S.E. 97, 100 (S.C. 1938); *Lucas v. Garrett*, 41 S.E.2d 212, 214 (S.C. 1947); *Pringle v. Atlantic Coast Line R. Co.*, 47 S.E.2d 722, 724 (S.C. 1948); Appleman, INS. LAW & PRAC., §4051.

114 S.E.2d 832, 834-35 (S.C. 1960); Shumpert v. Time Ins. Co.,



**FINANCIAL
RECOVERY
STRATEGIES**

# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
## Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

***South Dakota:***

*National Farmers Union P&C Co. v. Farm and City Ins. Co.*, 689 N.W.2d 619, 625 (S.D. 2004) ("Equitable subrogation applies when 'an insurer has paid the principal debtor's obligation to the common underlying claimant, and thereafter succeeds to the claimant's rights against the principal debtor…'") (Citations omitted); *Amert v. Continental Cas. Co.*, 409 N.W.2d 660, 663 (S.D. 1987) ("The purpose of subrogation is to place the loss ultimately on the wrongdoers. … ***It also prevents the insured from recouping a windfall double recovery.***") (emphasis added) (quoting *Cunningham v. Metropolitan Life Ins. Co.*, 360 N.W.2d 33, 36 (Wis. 1985)).

***Tennessee:***

*Blankenship v. Estate of Bain*:

> Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (Tenn. 1968) (citation omitted). …
>
> A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal; subrogation") or by application of a statue ("statutory subrogation"). It is based on two fundamental premises: 1) that ***an insured should not be permitted recovery twice for the same loss***, which would be the potential result if the insured recovers from both its insurer and a tortfeasor; and 2) that the tortfeasor should compensate the insurer for payments the insurer made to the insured. *York v. Sevier County Ambulance Auth.*, 8 S.W.3d 616, 619 (Tenn. 1999).

5 S.W.3d 647, 650 (Tenn. 1999) (emphasis added); *Abbott v. Blount County*, 207 S.W.3d 732, 734 (Tenn. 2006) ("[T]he primary purpose of subrogation is '***to prevent either the unjust enrichment of the insured through a double recovery or a windfall benefit to the principal tortfeasor***.'") (emphasis added) (quoting *Wimberly v. Am. Cas. Co.*, 584 S.W.2d 200, 203 (Tenn. 1979)).

***Utah:***

*Birch v. Fire Ins. Exch.*:

> "Subrogation is an equitable doctrine; hence, equitable principles apply in determining its availability." *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1159 (Utah Ct. App.1994) (citation omitted). … The doctrine of equitable subrogation enforces the principle that ***the insured is not entitled to double recove***ry, and the insurer is equitably entitled to recover any amounts from the insured that the insured recovered that the insured recovered from the tortfeasor. *See id.*



**FINANCIAL RECOVERY STRATEGIES**

# R E S E A R C H   M E M O R A N D U M

## APPENDIX A
### Equitable Subrogation Prevents Unjust Enrichment or Double Recovery

122 P.3d 696, 697 (Utah Ct. App. 2005) (emphasis added); *Valley Bank & Trust Co. v. Weyerman* Feathers, 514 P.2d 1282, 1283 (Utah 1973) (subrogation necessary to the extent need "**to prevent unjust enrichment**") (emphasis added).

***Vermont:***
*Town of Stowe v. Stowe Theatre Guild*:

> As explained in *United Mutual Fire Insurance Co. v. Joerg,* 824 A.3d 586, 589 (Vt. 2003), the doctrine of subrogation is premised on theories of promoting restitution and ***avoiding unjust enrichment****. Id.* ¶6. … ***Subrogation prevents unjust enrichment to the insured that would result from double recovery, and it prevents unjust enrichment to the tortfeasor that would result if the tortfeasor were absolve from liability***, despite its wrongful actions, just because of the insured's foresight in obtaining insurance protection. 16 L. Russ & T. Segalla, COUCH ON INSURANCE 3d §222:8, at 222-31 to 222-32 (3d ed. 2000).

908 A.2d 447, 449 (Vt. 2006) (emphasis added).

***West Virginia:***
*Old Republic Insurance Co. v. O'Neal*:

> [E]ven though we accepted the differences between statutory and equitable subrogation, we acknowledged that "[t]he doctrine originated from equity rather than out of statute or common law …." *Bush v. Richardson*, 484 S.E.2d 490, 493-94 (1997). We further stated that "[t]he purpose of subrogation is 'to compel the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it.' 83 C.J.S. Subrogation §2 at 582 (1953) (footnote omitted). Bush, 484 S.E.2d at 494."

788 S.E.2d 40, 54 (W. Va. 2016) (footnote omitted); *Farmers & Mechanics Mut. Ins. Co. v. Allen*, 778 S.E.2d 718, 727 (W. Va. 2015) ("***The object of subrogation is the prevention of injustice****.* … It is an appropriate means of **preventing unjust enrichment**.'") (emphasis added) (quoting 23 Richard A. Lord, *Williston on Contracts* §61:51 (4th ed. 2011)).

***Wisconsin:***
*Fischer v. Steffen*:

> The rules of subrogation provide for the substitution of one party, the subrogee, for another, the subrogor. In the insurance context, subrogation is a derivative right that permits an insurer to step into the shoes of the insured and to pursue recovery from the tortfeasor to the extent of the insurer's payments to the subrogor (the insured). Subrogation ensures that the loss is ultimately placed upon the tortfeasor and ***prevents the subrogor (the injured party) from being unjustly enriched through double recovery***.



# RESEARCH MEMORANDUM

**APPENDIX A**
**Equitable Subrogation Prevents Unjust Enrichment or Double Recovery**

797 N.W.2d 501, 507 & n.24 (Wis. 2011) (emphasis added) (citing *Koffman v. Leichtfuss*, 630 N.W.2d 201, 212 (Wis. 2001).



# RESEARCH MEMORANDUM

**Insurers Are Eligible to Participate in the End Purchaser Settlements of the**
***In re Automotive Parts Antitrust Litigation***

## APPENDIX B
**Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured**

***Arizona:***

*Mosher v. Conway*:

> [Subrogation] has been applied much more extensively in American than in English jurisprudence, and ***the modern tendency is to extend its use rather than to restrict it***. While it was originally limited to transactions between principals and sureties, ***it now has a very liberal application, its principle being modified to meet the circumstances of cases as they arise.***

46 P.2d 110, 112 (Ariz. 1935) (emphasis added), *quoted in Sourcecorp, Inc. v. Norcutt*, 274 P.3d 1204, (Ariz. 2012) (*en banc*) (as amended on denial of reconsideration); *Hartford Underwriters Ins. Co. v. Fluidmaster, Inc.*, No. 1 CA–CV 07–0545, 2008 WL 4885732, at *3 & n.1 (Ariz. Ct. App. Nov. 10, 2008) (Reversing and remanding dismissal on technical pleading grounds of insurer's equitable subrogation claim, even though there was no adequate remedy at law: "The trial court erred in granting judgment as a matter of law on Hartford's claim for equitable subrogation.") (citing *Mosher v. Conway*, 46 P.2d 110, 114 (Ariz. 1935) (where independent ground of equity jurisdiction exists, existence of adequate legal remedy does not prevent equity from giving complete relief)).

***Arkansas:***

*Newberry v. Scruggs*, 986 S.W.2d 853, 857 (Ark. 1999):

> "***The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties without regard to form, and its purpose and object is the prevention of injustice***. … It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked whenever justice and good conscience demand ***its application in opposition to the technical rules of law***, which liberate securities with the extinguishment of the original debt."

986 S.W.2d 853, 857 (Ark. 1999) (emphasis added) (quoting *Southern Cotton Oil Co. v. Napoleon Hill Cotton Co.*, 158 S.W. 1082 (Ark. 1913)).

***California:***

*W.B. Contractors, Inc. v. Bramalea Cal., Inc.*, Nos. E026852, E026998, 2001 WL 1240674, at *5 (Cal. Ct. App. Oct. 17, 2001) ("The doctrine of equitable subrogation '***is to be liberally applied to promote justice***….'") (emphasis added) (quoting *St. Paul Fire & Mar. Ins. Co. v. Murray Plumb'g & Heat'g Corp.*, 65 Cal. App.3d 66, 72 (Cal. Ct. App. 1976)); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr.2d 296,



**FINANCIAL RECOVERY STRATEGIES**

# RESEARCH MEMORANDUM

## APPENDIX B
## Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured

302 (Cal. Ct. App. 1998) ("As now applied [the doctrine of equitable subrogation] *is broad enough to include every instanc*e in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.' [Citations].") (emphasis added) (citing *Caito v. United Cal. Bank*, 144 Cal. Rptr. 751, 576 P.2d 466 (1978)).

***District of Columbia:***
*Trinity Universal Ins. Co. v. Moore*:

> "***The right of subrogation is based upon principles of equity and natural justice, and courts have liberally applied the principle of subrogation*** for the protection of those who are its natural beneficiaries*." Bahn to Use of Farm Bureau Mut. Auto. Ins. Co. v. Shalev*, 125 A.2d 678, 679 D.C. Mun. App. 1956). Thus is compelled the ultimate discharge of an obligation by the one who in good conscience ought to pay it. Otherwise, either the insured would be unjustly enriched, or the guilty third party would be freed of his obligation to pay. *Standard Acc. Ins. Co. v. Pellecchia*, 15 N.J. 162, 104 A.2d 288

> To effectuate this time-honored policy of the law, ***courts have consistently ignored technicalities*** and held that an insurer may enforce its rights against a tortfeasor, independently of a subrogation provision in the insurance contract.

134 A.2d 333, 335 & n.1 (D.C. 1957) (emphasis added; quotation omitted) (citing *National Garment Co. v. New York, C. & St. L. R. Co.*, 173 F.2d 32, 37 (8th Cir. 1949); *Atlas Factors v. Ocean Acc. & Guarantee Corp.*, 121 N.Y.S.2d 175, 176 (Sup. Ct. N.Y. Cty. 1953); *Contractors, Pac. Naval Air Bases v. Pillsbury*, 105 F. Supp. 772, 774 (N.D. Cal. 1952); Appleman, Ins. Law & Prac., §4931 & cases cited in Note 2 thereof & §4052; 3 Blashfield, Cyclopedia of Automobile Law, at 2616; 6 Berry on Automobiles (7th ed.), §6.542); *London Guarantee & Acc. Co. v. Enterprising Services, Inc.*, 192 A.2d 292, (D.C. Cir. 1963) (same); *Ford v. Snowden*, 145 A.3d 509, 513 (D.C. 2015) ("More generally, subrogation is an equitable remedy designed to protect an insurer's right to recover monies from the party ultimately responsible ***for any injury caused to the insured***. *See District of Columbia v. Aetna Ins. Co.*, 462 A.2d 428, 431 (D.C. 1983) ("[Subrogation] is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties.") (internal quotation marks and citation omitted).") (emphasis added).

***Florida:***
*Holmes Reg. Med. Ctr., Inc. v. Allstate Ins. Co.*, 225 So.3d 780, 784-85 (2017) (Subrogation "is a legal device '***founded on the proposition of doing justice without regard to form***, and was designed to afford relief



# RESEARCH MEMORANDUM

## APPENDIX B

### Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured

where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another.'") (citing *Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So.2d 702, 704 (Fla. 1980) (citations omitted)).

***Hawaii:***
*St. Paul Fire & Mar. Ins. Co. v. Liberty Mut. Ins. Co.*:

> Subrogation is a "creature of equity jurisprudence," and is "***so administered as to secure real and essential justice without regard to form[.]***" *Peters v. Weatherwax,* 731 P.2d 157, 161 (Haw. 1987) (quoting *Kapena v. Kaleleonalani*, 6 Haw. 579, 583 (Haw. Kingdom 1885) (alteration in original; internal quotation mark and citation omitted).

> ***Equitable subrogation has a broad scope*** and we have defined the doctrine as "***broad enough to include every instance*** in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter[.]" *Id.* (alteration in original; citation omitted and internal quotation mark omitted).

353 P.3d 991, 994 (Haw. 2015) (emphasis added).

***Iowa:***
*Iowa P&L Co. v. Bd. of Water Works Trustees of Des Moine*s, 281 N.W.2d 827833-34 (Iowa Ct. App. 1979) (refusing to adopt a technical definition for the application of subrogation); *Andrew v. Bevington Sav. Bank*, 221 N.W. 668, 671 (Iowa 1928) ("'Subrogation' in equity is ***broad and expansive*.") (emphasis added) (citing *Heuser v. Sharman*, 56 N. W. 525, 526 (Iowa 1893); *Kent v. Bailey*, 164 N.W. 852, 853 (Iowa 1917) ("The authorities are also agreed that the doctrine since first recognized has been ***steadily expanding*** and growing in importance and extent in its application ***to various subjects and classes of persons*.") (emphasis added); *Wilkins v. Gibson*, 38 S.E. 374, 379-84 (Ga. 1901)).

***Kansas:***
*Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 597 P.2d 622, 629 (Kan. 1979) ("'Subrogation is a creature of equity invented to prevent a failure of justice and is ***broad enough to include an instance in which one party is required to pay what is, between them, the debt of another***. It does not depend on contract nor the absence of contract, but is founded upon principles of natural justice. (Citations omitted.)'") (emphasis added) (quoting *United States Fidelity & Guar. Co. v. First State Bank*, 494 P.2d 1149, 1157-8 (Kan. 1972), in turn quoting *Blitz v. Metzger*, 241 P. 259, 262 (Kan. 1925)).



# R E S E A R C H   M E M O R A N D U M

## APPENDIX B
### Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured

**Maine:**
*Stevens v. King*, 24 A. 850 (Me. 1892) (Subrogation "applies to a great variety of cases, and *is broad enough to include every instance* in which one party pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter; not, however, in the interest of mere volunteers and intermeddlers, nor is it allowed so as to do injury to the rights of others. *It ignores the form, and looks to the substance*.") (emphasis added), *quoted in Home Ins. Co. v. Bishop*, 34 A.2d 22, 24 (Me. 1943), *in turn cited in MMG Ins. Co. v. Podiatry Ins. Co. of Am.*, 263 F.Supp.3d 327, 340 (D. Me. 2017)).

**Massachusetts:**
*Ditech Fin., LLC v. Kennedy*, No. 17-P-324, 2018 WL 1371094, at *2 (Mass. Ct. App. Mar. 19, 2018) ("The remedy of **equitable subrogation '*is a broad equitable remedy*.'**") (emphasis added) (quoting *East Boston Sav. Bank v. Ogan*, 428 Mass. 327, 330 (1998)).

**Michigan:**
*Foremost Life Ins. Co. v. Waters*:

> [Equitable subrogation] is **broad enough to include every instance** in which one party pays the debt for which another is primarily answerable, and which equity and good conscience should have been discharged by such other.

278 N.W. 2d 688, 689-90 (Mich. Ct. App. 1982) (emphasis added) (citing *Home Owners Loan Corp. v. Sears Roebuck & Co.,* 193 A. 769, 772 (Ct. 1937); BLACK'S LAW DICTIONARY (4th ed.), *rev'd on other grounds by Foremost Life Ins. Co. v. Waters,* 329 N.W.2d 688 (1982) (per curiam), *quoted with approval in Hartford Acc. & Indem. Co. v. Used Car Factory, Inc.,* 600 N.W.2d 630, 632-33 (Mich. 1999) ("Equitable subrogation is a **flexible, elastic doctrine of equity**. *Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 521, 475 N.W.2d 294 (1991) (opinion of Brickley, J.). Its application 'should and must proceed on the case-by case- analysis characteristic of equity jurisprudence.' *Id.* at 516, n. 1, 475 N.W.2d 294.") (emphasis added).

**Minnesota:**
*Citizens State Bank v. Raven Trading Partners, Inc.*, 786 N.W.2d 274, 299 (Minn. 2010) (Page, J., dissenting) ("We have consistently **liberally applied the doctrine of equitable subrogation for over 100 years**, even in the face of serious, unexplained mistakes by plaintiffs and their agents.") (citations omitted; emphasis added); *Regie de l'assurance Auto. du Quebec v. Jensen*, 389 N.W.2d 537, (Minn. Ct. App. 1986) ("The doctrine of subrogation … is **broad enough to include every instance** in which a person not acting as a mere volunteer pays a debt for which another is primarily liable, and which in equity and good conscience



**R E S E A R C H   M E M O R A N D U M**

## APPENDIX B
### Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured

should have been discharged by the latter. ***The doctrine embraces all cases where, without it, complete justice cannot be done. There is no limit to the circumstances in which the doctrine may be applied.***") (emphasis added) (citing 73 Am. Jur.2d Subrogation §6 (1974)), *rev'd on other grounds by Regie de l'assurance Auto. du Quebec v. Jensen*, 399 N.W.2d 85 (Minn. 1987).

***Mississippi:***
*National Surety Corp. v. Edwards House Co.*, 4 So.2d 340, 341 (Miss. 1941) ("[T]he doctrine [of subrogation] as now applied is ***broad enough to include every instance*** in which one person, not acting voluntarily, pays a debt or discharges an obligation for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter, …") (emphasis added).

***Missouri:***
*Netherton v. Farmers' Exch. Bank of Gallatin*, 63 S.W.2d 156, 158 (Mo. Ct. App. 1933) ("The doctrine of subrogation ***… is broad enough to include every instance*** in which one person pays the debt of another for which the other is primarily liable and should in good conscience have been paid by the other, provided, of course, that there are circumstances present which take the transaction out of the sphere of a purely volunteer payment.") (emphasis added); *Missouri Pub. Entity Risk Mgmt. Fund v. American Cas. Co. of Reading*, 399 S.W.3d 68, 74 (Mo. Ct. App. 2013) ("Subrogation is ***broadly defined*** ….") (emphasis added).

***Montana:***
*Bower v. Tebbs*:

> "The object of subrogation is the ***prevention of injustice***. It is designed to ***promote and to accomplish justice***, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. It is appropriate means of preventing unjust enrichment. ***The doctrine of subrogation is applied to subserve the ends of justice, to do equity in the particular case under consideration***, and to prevent fraud or relieve from mistake."

314 P.2d 731, 736 (Mont. 1957) (emphasis added) (quoting 83 C.J.S. Subrogation §2c, pp. 581, 583), quoted in *Youngblood v. American States Ins. Co.*, 866 P.2d 203, 205 (Mont. 1993), *in turn quoted in DeTienne Assoc. Ltd. P'ship v. Farmers Union Mut. Ins. Co.*, 879 P.2d 704,707 (Mont. 1994); *Swingley v. Riechoff*, 112 P.2d 1075, 1077 (Mont. 1941) (expanding application of subrogation because "subrogation really involves equitable principles").



# R E S E A R C H   M E M O R A N D U M

## APPENDIX B

## Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured

**Nebraska**
*J.J. Schaefer Livestock Hauling, Inc. v. Gretna State Bank*, 428 N.W.2d 185, 193 (Neb. 1988) ("Subrogation is **broad enough to include every instance** in which one party pays a debt for which another party is primarily answerable.") (emphasis added).

**Nevada:**
*Laffranchini v. Clark*, 153 P. 250, 252 (Nev. 1915) (Subrogation "**applies to a great variety of cases**, and is **broad enough to include every instance** in which one party pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter; not, however, in the interest of mere volunteers and intermeddlers; nor, is it allowed so as to do injury to the rights of others. **It ignores the form and looks to the substance**.") (emphasis added).

**New Hampshire:**
*Chase v. Ameriquest Mortg. Co.*, 921 A.2d 369, 376 (N.H. 2007) ("Equitable subrogation, in particular, is a **broad doctrine, which is given liberal application**.") (emphasis added) (citing 73 AM. JUR.2d Subrogation §2 (2001)).

**New Mexico:**
*State Farm Mut. Auto. Ins. Co. v. Foundation Res. Ins. Co.*, 431 P.2d 737, 741 (N.M. 1967) ("subrogation is an equitable remedy … for the benefit of one secondarily liable who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor.") (citing *Fidelity & Dep. Co. v. Atherton*, 144 P.2d 157 (N.M. 1943)); *George H. Sasser & Co. v. Chuck Wagon Sys.*, 172 P.2d 818, 821 (N.M. 1946) ("**No general rule** can be laid down which will afford a test in every case in which subrogation is sought. The underlying principle is that the right flows from principles of justice and equity. **Every case depends upon its particular facts**, …") (emphasis added) (quoting *Fidelity & Dep. Co. of Maryland v. Atherton*, 144 P.2d 157, 161 (N.M. 1943)).

**New York:**
*Winkelmann v Excelsior Ins. Co.*, 650 N.E.2d 841, 626 (1995) ("The doctrine [of subrogation] **is liberally applied for the protection of those who are its natural beneficiaries**--insurers that have been compelled by contract to pay the loss caused by the negligence of another.") (emphasis added; citation omitted), *quoted in In re September 11 Litig.*, 649 F. Supp.2d 171, 177 (S.D.N.Y. 2009).



# RESEARCH MEMORANDUM

## APPENDIX B
### Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured

**North Carolina:**

*Boney v. Central Mut. Ins. Co. of Chicago*:

> [T]he doctrine of subrogation may be ***expansively and liberally applied***. "It [the doctrine of subrogation] is a remedy which is ***highly favored and is not so restricted in its application as formerly. The courts are inclined rather to extend than to restrict the principle*** so that although formerly the right was limited to transactions between principals and sureties, now ***it is broad and expansive and has a very liberal application***. It is no longer confined to cases of suretyship, but ***the doctrine has been steadily growing and expanding in importance, and becoming more general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances of cases as they have arisen***."

197 S.E. 122, 126 (N.C. 1938) (emphasis added) (quoting 60 C.J., "Subrogation," §17); *John Alden Life Ins. Co. v. North Carolina Ins. Guar. Ass'n*, 589 S.E.2d 908, 910 (N.C. Ct. App. 2004) ("[T]his Court has held that … equitable subrogation is a 'remedy [which] is ***highly favored and liberally applied***.'") (emphasis added) (quoting *North Carolina Ins. Guar. Ass'n v. Century Indem. Co.*, 444 S.E.2d 464, 473 (N.C. Ct. App. 1994)).

**North Dakota**:

*State Farm Mut. Auto. Ins. Co. v. Wee*, 196 N.W.2d 54, 59 (N.D. 1971) ("***Equitable subrogation is founded upon principles of equity and justice***, intended to afford protection of the rights of a creditor. It is based on the theory that the one invoking it has rightfully discharged debt at the instance and for the benefit of the debtor and that he may be substituted as creditor.") (emphasis added), *cited in American Nat. Fire Ins. Co. v. Hughes*, 658 N.W.2d 330, 333 (N.D. 2003) ("Subrogation is an equitable remedy which provides for an adjustment between parties to secure the ultimate discharge of a debt by the person who, in equity and good conscience, ought to pay for it.") (citing *St. Paul Fire & Mar. Ins. Co. v. Amerada Hess Corp.*, 275 N.W.2d 304, 308 (N.D. 1979)).

**Oregon:**

*United Pac. Ins. Co. v. Schetky Equip. Co.*, 342 P.2d 766, 772 (Or. 1959) ("[T]he principle of subrogation ought to be ***liberally applied for the protection of those who are its natural beneficiaries***.") (emphasis added; quotation omitted), *quoted in State, By and Through Healy v. Smither*, 626 P.2d 356, 359 (Or. 1981); *Northwestern Mut. Ins. Co. v. Peterson*, 572 P.2d 1023, 1027 (Or. 1977) ("'Subrogation "is a remedy which is ***highly favored***. The courts are ***inclined to expand rather than to restrict the principle***. Although formerly the right was limited to transactions between principals and sureties, it is now ***broad and expansive, and has a very liberal application*** … the principle being modified to meet the circumstances



# R E S E A R C H   M E M O R A N D U M

## APPENDIX B
## Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured

of the individual case."'") (emphasis added) (quoting *Schetky Equip. Co.*, 342 P.2d at 772; 16 Couch on Insurance 2d §61:4 at 239 (2d ed. 1966)).

***Rhode Island:***
*Merchants' & Miners' Transp. Co. v. Robinson-Baxter-Dissosway Towing & Transp. Co.*, 191 F. 769, 772 (1st Cir. 1911) (Rhode Island law) ("the law of subrogation … **rests on broad equities**, and is **entirely aside from any technicalities.**") (emphasis added).

***South Carolina:***
*Calvert Fire Ins. Co. v. James,* 114 S.E.2d 832, 834-35 (S.C. 1960) ("Legal subrogation … is to be **applied according to the dictates of equity and good conscience** in light of the actions and relationship of the parties.") (emphasis added) (citing 50 Am. Jur., Subrogation, §§5, 6; *Gadsden v. Brown & Wellsman*, 17 S.C. Eq. 37 (Speers Eq. 1843); *Livingstain v. Columbian Banking & Trust Co.*, 57 S.E. 182, 183 (S.C. 1907); *American Surety Co. v. Hamrick Mills*, 4 S.E.2d 308, 313-14 (S.C. 1939); *Powers v. Calvert Fire Ins. Co.*, 57 S.E.2d 638, 642 (S.C. 1950); *St. Paul-Mercury Indem. Co. v. Donaldson*, 83 S.E.2d 159, 162 (S.C. 1954)).

***South Dakota:***
*Application of Mach*, 25 N.W.2d 881, 883 (S.D. 1947) ("As now applied, **subrogation is broad enough to include every instance** in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.") (emphasis added) (citing 50 Am. Jur. Subrogation §7), *cited in Met Life Auto & Home Ins. Co. v. Lester*, 719 N.W.2d 385, 388 n.1 (S.D. 2006).

***Tennessee:***
*Fitts v. Terminal Warehousing Corp.*, 93 S.W.2d 1265, (Tenn. 1936) (Tennessee Supreme Court "is committed to the doctrine of subrogation, or equitable assignment, and is **desirous to extend and broaden the rule**, 'unless rights of third parties have intervened.'") (emphasis added; quotation omitted).

***Utah:***
*Bingham v. Walker Bros., Bankers*:

> Subrogation is a remedy **highly favored in equity**. … "Subrogation, an equitable doctrine taken from the civil law, is **broad enough to include every instance** in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the



# R E S E A R C H   M E M O R A N D U M

## APPENDIX B

## Equitable Subrogation is Broad Enough to Include Every Instance in which an Insurer Indemnifies an Insured

protection of some interest of the party making the payment, and in discharge of an existing liability."

283 P. 1055, 1062-63 (Utah 1929) (emphasis added) (citing (Seldon on Subrogation (2d ed.) pp. 2, 4)).

**Vermont:**
*Hall v. Windsor Sav. Bank*:

> The doctrine of subrogation is ***much broader in its scope and application*** …. It is ***highly equitable in character***, and is regarded as one of the "benevolences of the law," created, fostered, and applied in the interests and for the promotion of natural justice. … ***The right is a favorite of the law, and the tendency is to extend rather than restrict its application***. It is not confined to the ordinary relation of principal and surety, but arises whenever, in the complex relations of business affairs, one man is compelled to pay a debt for which another is primarily liable and which, in equity and good conscience, should have been discharged by the latter. *National Bank v. Cushing*, 53 Vt. 321 (1881).
>
> … Subrogation operates … ***without regard to form or technicalities***, ….

121 A. 582, 584 (Vt. 1923) (emphasis added); *Canty v. Vermont Nat. Bank*, No. S 1507-91 CnC, 1995 WL 473486, at *3 (Vt. Nov. 2, 1994) ("As the right of subrogation has 'particular approval' under our law, *Lopez v. Concord Gen'l Mut. Ins. Group*, 583 A.2d 602 (Vt. 1990), we conclude that its value should not be diluted by requiring banks to first recredit accounts in order to gain the benefits of this venerable doctrine of equity.").

**West Virginia:**
*Old Republic Insurance Co. v. O'Neal,* 788 S.E.2d 40, 526 (W. Va. 2016) ("As we recognized in syllabus point two of *Bush v. Richardson,* 484 S.E.2d 490 (W. Va. 1997), 'The right ***of subrogation depends upon the facts and circumstances of each particular case***.") (emphasis added; citations omitted).

**Wisconsin:**
*Farmers & Merch. State Bank v. Hildebrandt*, 268 N.W. 212, 212-13 (Wis. 1936) ("'The doctrine of subrogation, by means of which a debt once paid or a security discharged is kept alive as against the principal debtor for the benefit of a third person who, not being a mere volunteer, has paid the debt, is ***an equitable doctrine, favored by the law because it accomplishes the ends of justice and fair dealing***.'") (emphasis added) (quoting *Reddington v. Franey*, 111 N.W. 725, 726 (Wis. 1907)).



**FINANCIAL RECOVERY STRATEGIES**

# R E S E A R C H   M E M O R A N D U M

## Insurers Are Eligible to Participate in the End Purchaser Settlements of the *In re Automotive Parts Antitrust Litigation*

## APPENDIX C
## An Insurer "Stands in the Shoes" of Its Insured

**Arizona:**

*Monterey Homes Arizona, Inc. v. Federated Mut. Ins. Co.*:

> [B]ecause an insurer's right to subrogation derives from its insured's right to recover against the third party, the actions of the insured may affect the insurer's right to subrogation. *Allied Mut. Ins. Co. v. Heiken*, 675 N.W.2d 820, 824 (Iowa 2004). **The insurer essentially stands in the shoes of the insured**, taking on the insured's rights and remedies as against the third party but also becoming subject to the defenses the third party could assert against the insured. *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 260; (2d Cir. 1999); *Heiken*, 675 N.W.2d at 824–25.

212 P.3d 43, 47 (Ariz. 2009) (emphasis added); *Weitz Co. L.L.C. v. Heth*, 333 P.3d 23, 28 (Ariz. 2014) (Under equitable subrogation, rights "are not discharged but are instead assigned by operation of law to the one who paid the obligation.") (citing Restatement (Third) of Property: Mortgages §7.6 cmt. a).

**Arkansas:**

*Hartford Ins. Co. of Midwest v. Mullinax*, 984 S.W.2d 812, 817 (Ark. 1999) ("Because Hartford Insurance **stands in the shoes** of Mullinax, its claim is no greater than that of its insured.") (emphasis added).

**California:**

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*:

> The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to "'**stand in the shoes**'" of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have.

77 Cal. Rptr.2d 296, 303 (1998) (emphasis added) (quoting *Truck Ins. Exch. v. Superior Court (Transco Syndicate No. 1*, 70 Cal. Rptr.2d 255, 259 (Cal. Ct. App. 1997); *Allstate Ins. Co. v. Loo*, 54 Cal. Rptr.2d 541, 543 (Cal. Ct. App. 1996); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 26 Cal.Rptr.2d 762, 767 (Cal. Ct. App. 1994); *Patent Scaffolding Co. William Simpson Constr. Co*, 64 Cal.Rptr.187 (Cal. Ct. App. 1967); 16 COUCH ON INSURANCE (2d ed. 1983), Subrogation, §§61:36-61:38, at pp. 118-122; Witkin, Summary of Cal. Law (9th ed. 1990), Equity, §§169-174, pp. 848-857); *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1217 (9th Cir. 2003) (California law) (citing *U.S. v. California*; *Brown v. Rouse*, 158 P. 267 (Cal. 1899) (A subrogee "is put in all respects **in the place of the party to whose right he is subrogated**.")



# R E S E A R C H   M E M O R A N D U M

## APPENDIX C
## An Insurer "Stands in the Shoes" of Its Insured

(emphasis added); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr.2d 296 (1998) (The insurer "**stand[s] in the shoes**" of the insured) (emphasis added; quotation omitted)).

***District of Columbia:***
*HSBC Bank USA, N.A. v. Mendoza*, 11 A.3d 229, 235 (D.C. 2010) ("Under the doctrine of equitable subrogation, a lender who pays off a pre-existing mortgage and takes a new mortgage as security for the loan … **steps into the shoes** of the mortgagee whom it has paid off and receives that mortgagee's priority over subsequent liens.") (emphasis added; footnote omitted).

***Florida:***
*Holmes Regional Med. Ctr., Inc. v. Allstate Ins. Co.*, 225 So.3d 780, 784 (2017) ("In order to 'preclude a negligent doctor from escaping the responsibilities for his actions,' we provided the remedy of equitable subrogation. We explained that subrogation is an equitable doctrine that allows the initial tortfeasor to be placed in '**the shoes of' the plaintiff**.'") (emphasis added) (citing *Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So.2d 702, 704 (Fla. 1980), in turn citing 30 Fla. Jur. Subrogation §11).

***Hawaii:***
*St. Paul Fire & Mar. Ins. Co. v. Liberty Mut. Ins. Co.*, 353 P.3d 991, 994 (Haw. 2015) ("Through subrogation, the subrogee '**is put in all respects in the place of the party whose rights he is subrogated**.' *Peters v. Weatherwax*, 731 P.2d 157, 161 (Haw. 1987) (quoting *Kapena v. Kaleleonalani*, 6 Haw. 579, 583 (Haw. Kingdom 1885) (emphasis added; internal quotation mark omitted).").

***Iowa:***
*Allied Mut. Ins. Co. Heiken*:

> The insurer's subrogation rights rest on the "viability of the insured's claim against the tortfeasor." 4 Rowland H. Long, THE LAW OF LIABILITY INSURANCE §23.03, at 23-13 to -14 (1998). Consequently, when an insurer asserts a subrogation claim against a third-party tortfeasor, the insurer's rights are limited to the rights of recovery possessed by the insured. *Employers Mut. Cas. Co. v. Hanshaw*, 176 N.W.2d 653, 655 (Iowa 1970). At the time subrogation attaches, the insurer becomes subrogated to the insured's rights of recovery against the responsible tortfeasor, "and **the insurer succeeds to all the procedural rights and remedies possessed by the insured**." *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992) (emphasis added).

675 N.W.2d 820, 824-25 (Iowa 2004); *Grinnell Mut. Reins. Co. v. Recker*:

> In the context of insurance law, subrogation has been defined as "the right of the **insurer to be put in the position of the insured** in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer." *Hermeling v. Minnesota Fire & Cas. Co.*, 548 N.W.2d



# R E S E A R C H   M E M O R A N D U M

## APPENDIX C
## An Insurer "Stands in the Shoes" of Its Insured

270, 273 (Minn. 1996) (quoting 16 George J. Couch, Couch Cyclopedia of Insurance Law §61:1 (2d ed. 1983)). The principles of subrogation provide that … "The subrogee merely **steps into the shoes of the subrogor**." … *Id.* (citations omitted).

561 N.W.2d 63, 69 (Iowa 1997) (emphasis added).

**Kansas:**
*Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 597 P.2d 622, 629 (Kan. 1979) (finding that the subrogor "**stands in the shoes**" of the subrogee: "Subrogation is the substitution of another person in the place of the creditor so that the person in whose favor it is exercised succeeds to the rights of the creditor in relations to the debt…") (emphasis added).

**Maine:**
*Maine Mun. Emp. Health Trust v. Maloney,* 846 A.2d 336, 339 (Me. 2004) (Subrogation is the substitution of one party for another. *Unity Tel. Co. v. Design Serv. Co.*, 201 A.2d 177, 179 (Me. 1964). As the subrogee, [plaintiff] **steps into the shoes** of [the subrogor].") (emphasis added).

**Massachusetts:**
*Liberty Mut. Ins. Co. v. Nat'l Consol. Warehouse, Inc.*, 609 N.E.2d 1243, 1246 (Mass. Ct. App. 1993) ("A subrogee **stands in the shoes** of the subrogor in whose name the action is brought.") (emphasis added) (citing *Harvard Trust Co. v. Racheotes*, 147 N.E.2d 817, 818 (Mass. 1958)); *McCabe v. Braunstein*, 439 B.R. 1, 6 (Bankr. D. Mass. 2010) ("By **stepping into the shoes** of the subrogor, the subrogee is bound by the timing of the original claim, the date upon which it arose and the date upon which it expires under a statute of limitations.") (emphasis added).

**Michigan:**
*Foremost Life Ins. Co. v. Waters,* 278 N.W. 2d 688, 689-90 (Mich. 1982) ("The substitution of one person in the place of another with reference to a lawful claim, demand or right, *Whyel v. Smith,* 134 So.2d 552, 554 (Fl. 1931), so that he who is substituted **succeeds to the rights** of the other in relation to the debt or claim, and its rights, remedies, or securities. *Home Owners' Loan Corp. v. Baker*, 12 N.E.2d 199, 201 (Mass. 1937); *Gerken v. Davidson Grocery Co.*, 69 P.2d 122, 126 (Idaho 1937).") (emphasis added; quotation omitted), *rev'd on other grounds by Foremost Life Ins. Co. v. Waters*, 329 N.W.2d 688 (1982) (per curiam); *Acuity v. Nick's Trucking & Excavating, LLC*, Civil Case No. 15-11907, 2016 WL 4060975, at *3 (E.D. Mich. July 29, 2016) ("as subrogee of Killam, [subrogee] **stands in Killam's shoes**") (emphasis added).



**R E S E A R C H   M E M O R A N D U M**

**APPENDIX C**
**An Insurer "Stands in the Shoes" of Its Insured**

**Minnesota:**
*Auers v. Progressive Direct Ins. Co.,* 878 N.W.2d 350, 355 (Minn. 2016) ("*Upon payment of a loss,* the insurer is subrogated in *a corresponding amount* to the insured's right of action against any third party whose conduct caused the loss.") (emphasis in original) (citing *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 5 (Minn. 2012); *Melrose Gates, LLC v. Chor Moua*, 875 N.W.2d 814, 817 (Minn. 2016) ("Subrogation is the substitution of one party for another whose debt the party pays, which entitles the paying party to *step into the shoes*, or be substituted to all the rights, priorities, remedies, liens, and securities of, the other party.") (emphasis added) (citing *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 5 (Minn. 2012), in turn citing 16 Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE §222:5 (3d ed. 1995) and BLACK'S LAW DICTIONARY 1654-55 (10th ed. 2014)).

**Mississippi:**
*Armstrong v. Mississippi Farm Bureau Cas. Ins. Co.,* 66 So.3d 188, 190-91 (Miss. Ct. App. 2011) ("When an insurer makes payments to an insured to cover a loss and the insured has a claim against a third party to recover for that same loss, *the insurer steps into the shoes of the insured* and acquires the right to recover from that third party the amount paid to the insured.") (citing *St. Paul Prop. & Liab. Ins. Co. v. Nance*, 577 So.2d 1238, 1240-41 (Miss. 1991) (emphasis added).

**Missouri:**
*Continental Ins. Co. v. Washeon*, 524 F. Supp. 34, 36-37 (E.D. Mo. 1995) ("As subrogee to plaintiff's insured's interest, *plaintiff may assert the same rights* and is subject to the same defenses as plaintiff's insured.") (emphasis added) (citing *U.S. v. United Serv. Auto. Ass'n,* 238 F.2d 364, 366 (8th Cir. 1956); *Holt v. Myers,* 494 S.W.2d 430, 444 (Mo. Ct. App. 1973) ("To the extent of its payment, the insurance company *stood in the shoes* of the Holts and was therefore subject to the same defenses.") (emphasis added).

**Montana:**
*Montana Petroleum Tank Release Bd. v. Capitol Indem. Co.*, 137 P.3d 522, 528 (Mont. 2006) ("Subrogation is an equitable adjustment of rights used to avoid unjust enrichment. In many instances this is accomplished by *substituting one person or entity in place of another* in regard to some claim or right the second person or entity has against a third party.") (emphasis added) (*citing Swingley v. Riechoff*, 112 P.2d 1075, 1077 (Mont. 1941); *Talbot v. WMK-Davis, LLC*, 380 P.3d 823, 832 (Mont. 2016) (McKinnon, J., dissenting) ("Under Montana law, one who asserts the right of subrogation must *step into the shoes* of, or be substituted for, one whose claim or debt he or she paid.") (emphasis added) (citing, *inter alia*, *Skauge v. Mountain States Tel. & Tel. Co.*, 565 P.2d 628, 630 (1977) ("the person substituted *will succeed to the rights* of the creditor in relation to the debt or claim.") (emphasis added).



FINANCIAL
RECOVERY
STRATEGIES

# R E S E A R C H    M E M O R A N D U M

## APPENDIX C
## An Insurer "Stands in the Shoes" of Its Insured

**Nebraska**
*Thrower v. Anson*:

> Subrogation involves the ***substitution of one person in the place of another*** with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies, or securities. *Blue Cross and Blue Shield v. Dailey*, 687 N.W.2d 689 (Neb. 2004). An insurer's subrogation rights can be no greater than the rights of an insured against a third party …. (citations omitted) …. *See also Querry & Harrow v. Transcontinental Ins.*, 885 N.E.2d 1235, 1237 (Ind. 2008) (Sullivan, J., dissenting, stating that "[o]ne who asserts a right of subrogation must ***step into the shoes of, or be substituted for***, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce.").

752 N.W.2d 555 (Neb. 2008) (emphasis added).

**Nevada:**
*Arguello v. Sunset Station, Inc.*:

> "[A]n insurer that pays its insured *in full* for claimed losses is subrogated by operation of law to the rights, if any, which the insured may have had against the tortfeasor before payment was made." *Duboise v. State Farm Mut. Auto. Ins.,* 619 P.2d 1223, 1224 (Nev. 1980) (emphasis added). Such a circumstance is known as "total subrogation." *Valley Power Co. v. Toiyabe Supply,* 396 P.2d 137, 138 (Nev. 1964). "In such a case the insurer … ***is the sole party in interest***, and the only one who may assert a claim against those thought to be ultimately liable." *Id.*

252 P.3d 206, 208 (Nev. 2011) (emphasis added); *Laffranchini v. Clark*, 153 P. 250, 254 (Nev. 1915) (recognizing that a subrogated party "***step[s] into the shoes***" of the subrogee), *cited by American Home Assur. Co. v. Eighth Jud. Dist. Court ex rel. County of Clark*, 147 P.3d 1120, 1127 (Nev. 2006) (emphasis added).

**New Hampshire:**
*Wolters v. American Republic Ins. Co.*:

> "The doctrine of subrogation has its origins in equity. *See Dimick v. Lewis*, 497 A.2d 1221 (N.H. 1985). A party's right to subrogation can arise either by contract, statute, or common law or equitable principles. *Moulton v. Groveton Papers Co.*, 323 A.2d 906, 910 (N.H. 1974); *see also* 16 L. Russ & T. Segalla, Couch on Insurance 3d §222:6, at 222–27 (2000).
>
> …
>
> … The purpose behind subrogation "***is to place the responsibility where it ultimately should rest*** by compelling payment by the one who in good conscience ought to pay it." *Security Fence Co. v. Manchester Fed. S&L Ass'n*, 136 A.2d 910, 912 (N.H. 1957) (quotation omitted).



# RESEARCH MEMORANDUM

## APPENDIX C
## An Insurer "Stands in the Shoes" of Its Insured

827 A.2d 197, 199-200 (N.H. 2003) (emphasis added); *In re Estate of Raduazo*, 814 A.2d 147, 156 (N.H. 2002) (In an "action in subrogation, *[the subrogee] stepped into [the subrogor's] shoes* to enforce a right she would have enjoyed had she decided to bring suit.") (emphasis added; citation omitted).

**New Mexico:**
*Amica Mutual Ins. Co. v. Maloney,* 903 P.2d 834, 838 (N.M. 1995) ("Ordinarily the right of subrogation *allows the insurer to step into the shoes of the insured* and collect what it has paid from the wrongdoer.") (citing *White v. Sutherland*, 585 P.2d 331, 334 (N.M. Ct. App. 1978) (emphasis added).

**New York:**
*North Star Reins. Corp. v. Continental Ins. Co.*, 82 N.Y.2d 281, 294 (1993) ("Subrogation, an equitable doctrine, entitles an insurer to '*stand in the shoes*' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.") (emphasis added) (citing *Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 502 N.E.2d 982, 68 N.Y.2d 465, 471 (1986); 16 COUCH, INSURANCE 2d §61:37 (rev ed.); Keeton and Widiss, INSURANCE LAW §3.10 [a] (Practitioner's ed.)); *Great Am. Ins. Co. of N.Y. v. Advance Ocean Inc.*, 07 Civ. 6421 (PAC), 2008 WL 11399095, at *3 (S.D.N.Y. July 8, 2008 (citing *U.S. v. California*).

**North Carolina:**
*Milwaukee Ins. Co. v. McLean Trucking Co.,* 125 S.E.2d 25, 28 (N.C. 1962) ("The general rule is that upon payment of a loss, pursuant to the terms of its contract of insurance, *the insurer, or insurers in the case of coinsurance, are entitled to be subrogated pro tanto to any right of action which the insured may have against a third party* whose negligence or wrongful act caused the loss.) (emphasis added); *Nationwide Mut. Ins. Co. v. Erie Ins. Co.*, 720 S.E.2d 30 (Table), 2011 WL 6046898, at *3 (N.C. Ct. App. Dec. 6, 2011) ("Plaintiff, having *stepped into the shoes* of the drivers through subrogation, acquired no greater rights than those of the drivers.") (emphasis added).

**North Dakota**:
*Haugenoe v. Workforce Safety & Ins.*, 748 N.W.2d 378, 393 (N.D. 2008) ("Under the concept of subrogation, WSI '*stands in the shoes*' of the claimant for any recovery.") (citing *Ness v. St. Aloisius Hosp.*, 313 N.W.2d 781, 783 (N.D. 1981) (emphasis added).

**Oregon:**
*Koch v. Spann,* 92 P.3d 146, 148 (Or. Ct. App. 2004) ("In the insurance context, subrogation permits an insurer in certain instances to recover what it has paid to its insured by, in effect, *standing in the shoes* of the insured and pursuing a claim against the wrongdoer.") (emphasis added) (citing *Furrer v. Yew Creek*



# RESEARCH MEMORANDUM

## APPENDIX C
## An Insurer "Stands in the Shoes" of Its Insured

*Logging Co.*, 292 P.2d 499, 502 (Or. 1956); *Safeco Ins. Co. of Am. v. Russell*, 13 P.3d 519, 521 (Or. Ct. App. 2000)); *Certain Underwriters at Lloyd's London and Excess Ins. Co., Ltd. v. Massachusetts Bonding and Ins. Co.*, 230 P.3d 103, 112 (Or. Ct. App. 2010) (under a subrogation theory, **an insurer "stands in the shoes of its insured**.") (emphasis added).

**Rhode Island:**
*Hawkins v. Gadoury*:

> The doctrine [of subrogation] is derived from the civil law from which it has been adopted by the courts of equity. *Silva v. Home Indem. Co.*, 416 A.2d 664, 667 (R.I. 1980) (quoting *May Trucking Co. v. Int'l Harvester Co.*, 543 P.2d 1159, 1161 (Idaho 1975). Otherwise described, "[s]ubrogation **places the subrogated party in the shoes of the creditor and entitles him to the rights which the creditor had** in respect to the debt or obligation. Defenses which would not have been available against the creditor or obligor cannot, as a rule, be interposed against the subrogee….

713 A.2d 799, 804 (R.I. 1998) (emphasis added); *Credit Union Cent. Falls v. Groff*, 966 A.2d 1262, 1274 (R.I. 2009) ("subrogation allows the title insurer to '**stand in the shoes**' of the insured creditor when it pays an obligation in satisfaction of the express terms of their policy.") (emphasis added; citation omitted).

**South Carolina:**
*Kuznik v. Bees Ferry Assoc.*, 538 S.E.2d 15, 31 (S.C. 2000) ("Under equitable subrogation, **[subrogee] would step into the shoes of the original creditor**.") (emphasis added) (citing *Dodge City of Spartanburg, Inc. v. Jones*, 454 S.E.2d 918, 920 (S.C. Ct. App. 1995) (through doctrine of equitable subrogation, **subsequent creditor can assume rights and priority of prior creditor**) (emphasis added)).

**South Dakota:**
*Nat'l Farmers Union Prop. and Cas. Co. v. Farm and City Ins. Co.,* 689 N.W.2d 619, 625 (S.D. 2004) ("Equitable subrogation applies when 'an insurer has paid the principal debtor's obligation to the common underlying claimant, and thereafter **succeeds to the claimant's rights against the principal debtor**…'".) (emphasis added); *Street v. Farmers Elevator Co. of Elkton*, 149 N.W. 429, 433 (S.D. 1914) ("the bailee by equitable assignment and subrogation **steps into the shoes** of the paramount owner as to the rights and ownership of the bailed property.") (emphasis added).

**Tennessee:**
*Blankenship v. Estate of Bain*, 5 S.W.2d 647, 650 (Tenn. 1999) ("Subrogation allows **an insurer to 'stand in the shoes' of an insured** and assert the rights of the insured had against a third party.") (emphasis added) (citing *Wimberly v. Am. Cas. Co.*, 584 S.W.2d 200, 203 (Tenn. 1979)); *York v. Sevier County Amb. Auth.*, 8 S.W.3d 616, 618-19 (Tenn. 1999) ("In the context of insurance, **subrogation allows the insurer to 'stand**



# R E S E A R C H    M E M O R A N D U M

## APPENDIX C
## An Insurer "Stands in the Shoes" of Its Insured

*in the shoes' of the insured and assert the rights the insured had against a third party*.") (original emphasis removed; emphasis added).

**Utah:**
*Birch v. Fire Ins. Exch.,* 122 P.3d 696, 697 (Utah Ct. App. 2005) ("'The doctrine of subrogation allows an insurer, having paid a loss resulting from a peril insured against, to **step into the shoes** of its insured and recoup its losses from a tortfeasor whose negligence caused the loss.'") (emphasis added) (quoting *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1160 (Utah Ct. App. 1994) (citations omitted)).

**Vermont:**
*Town of Stowe v. Stowe Theatre Guild,* 908 A.2d 447, 449 (2006) ("Subrogation allows an insurer to '**stand[ ] in the shoes**' of the insured in a lawsuit and thereby collect the amounts the insurer has been compelled to pay for losses caused by the actual wrongdoer, 'who, in good conscience, should be required to pay.'") (emphasis added) (quoting *United Mut. Fire Ins. Co. v. Joerg*, 824 A.3d 586, 589 (Vt. 2003)).

**West Virginia:**
*Farmers & Mech. Mut. Ins. Co. v. Allen*, 236 W.Va. 269, 273 (W. Va. 2015) ("a subrogated insurer **stands in the shoes** of an insured") (emphasis added) (citing Steven Plitt *et al*., 16 COUCH ON INSURANCE 3d §222:5 (2015) (footnotes omitted).

**Wisconsin:**
*Fischer v. Steffen*:

> The rules of subrogation provide for **the substitution of one party, the subrogee, for another, the subrogor**. In the insurance context, subrogation is a derivative right that permits an insurer to **step into the shoes** of the insured and to pursue recovery from the tortfeasor to the extent of the insurer's payments to the subrogor (the insured). Subrogation ensures that the loss is ultimately placed upon the tortfeasor and prevents the subrogor (the injured party) from being unjustly enriched through double recovery.

797 N.W.2d 501, 507 (Wis. 2011) (emphasis added); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp.2d 1072, 1075 n.3 (W.D. Wis. 2013) ("One who rests on subrogation **stands in the place** of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made.") (quoting *U.S. v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 242, 67 S. Ct. 1599 (1947) (emphasis added)).