# Exhibit F

**Jeffrey N. Leibell**

| | |
|---|---|
| **From:** | Chanler A. Langham <clangham@SusmanGodfrey.com> |
| **Sent:** | Saturday, November 2, 2019 10:20 PM |
| **To:** | Jeffrey N. Leibell |
| **Cc:** | Adam Zapala; Hollis Salzman (hsalzman@rkmc.com); Marc Seltzer |
| **Subject:** | Auto Parts - EPP Ltr to Financial Recovery Strategies |
| **Attachments:** | 2019-11-02 - EPP Ltr to Financial Recovery Strategies.pdf |

Counsel,

Please see the attached correspondence.

Regards,

CHANLER A. LANGHAM
PARTNER | SUSMAN GODFREY LLP
713-653-7839 (OFFICE)
713-377-2320 (MOBILE)
CLICK HERE FOR BIO

THIS MESSAGE MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION. IF YOU'RE NOT THE INTENDED RECIPIENT, PLEASE DELETE THIS MESSAGE.

**COTCHETT PITRE & McCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577

**ROBINS ▪ KAPLAN L.L.P.**
399 Park Avenue, Suite 3600
New York, NY 10022
Tel: (212) 980-7400
Fax: (212) 980-7499

**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

## PRIVILEGED
## ATTORNEY-CLIENT COMMUNICATION,
## ATTORNEY WORK PRODUCT,
## AND FOR SETTLMENT PURPOSES ONLY SUBJECT TO FRE 408

*Via E-Mail*

November 2, 2019

Re:   *In re Automotive Parts Antitrust Litigation*
("*Auto Parts Litigation*"), **Case No. 2:12-md-02311 (E.D. Mich.)**

Mr. Jeffrey N. Leibell
Financial Recovery Strategies
80 Wesley Street
South Hackensack, NJ 07606
jleibell@frsco.com

Dear Jeffrey:

In response to your draft letter, we wish to note at the outset that we have spent a considerable amount of time discussing with you and your colleagues the issues you raised in your letter concerning Financial Recovery Strategies' stated desire to submit claims on behalf of auto insurers ("Auto Insurers") based on the contention that they are equitably subrogated to the rights of class members who were their insureds at the time the Auto Insurers made indemnity payments for the current value of their insured's used vehicles that were deemed a total loss as a result of a collision or accident involving those vehicles. In our conversations, we explained in great detail why Auto Insurers are not entitled to share in the settlements reached in this litigation based on any subrogation rights they might have. They may have subrogation rights against a third party who is at fault for the accidents in question, but not the defendants sued in this case.

Indeed, there is no question that Auto Insurers are not class members and therefore have no rights as class members or as subrogees of class members. *See Autoliv v. GEICO*, No. 2:16-cv-13189-MOB-MKM, Dkt. 74 at 43-45 (E.D. Mich. Aug. 30, 2018) (finding GEICO lacks antitrust standing in its capacity as an insurer for "payments to insureds or third-party claimants for the full value of vehicles declared a total loss" because "Total Loss Payments are not made in connection with the purchase of auto parts" and "the injury

November 2, 2019
PAGE 2                                                                    VIA E-MAIL

allegedly inflicted on GEICO [an auto insurer] does not occur in the auto part markets in which Defendants allegedly conspired").

     You do not claim that the Auto Insurers are class members. Instead, the sole basis for your contention that Auto Insurers have a the right to file a claim to share in the settlements is that they are somehow equitably subrogated to the antitrust claims of their insureds because they have indemnified them for property damage losses they sustained when their vehicles were deemed to be total losses due to an accident. Your argument is also not based on any express contractual rights that an Auto Insurer may have under a policy it issued to an insured. Your argument is based on the incorrect contention that the property damage loss is the same "loss" that was sustained when an insured purchased a vehicle, possibly years before an accident took place, and was overcharged as a result of the antitrust violations at issue in this case. That contention is without merit because, among other things, the losses and injuries are not the same. The Auto Insurers indemnified their insureds for property damages claims. The insurance policies provide no coverage to an insured for the "loss" or "injury" sustained at the point of purchase due to an overcharge caused by an antitrust violation. The rights that an insurance carrier may have under the law of subrogation against the person who is at fault for an accident based on the payment it made to its insured have nothing to do with the antitrust claims an insured may have based on being overcharged for a part incorporated in a vehicle.

     Importantly, auto insurance policies limit coverage to property damage caused by auto accident, vehicle collision, or theft and do not insure against the same loss that class members suffered due to overcharges caused by price-fixing and other antitrust violations. Despite our request, however, you have not identified the auto insurers you claim to represent, and you have not provided us with copies of the automobile insurance policies you claim apply to their insureds. None of the auto insurance policies we have reviewed insure against losses or damages caused at the point of purchase by overcharges due to price-fixing or other antitrust violations.

     Further, you have not provided any evidence that any Auto Insurer actually compensated or reimbursed any insured for anticompetitive overcharges caused by price-fixing or other antitrust violations. The argument that the indemnity payments made to insureds must necessarily include compensation for those overcharges simply ignores the fact that those payments did not indemnify an insured for those overcharges.  And in the cases discussed below, that fact means that there is no right of subrogation in these circumstances as to the claims of class members against the defendants in this litigation.  In short, when Auto Insurers compensated their insureds for property damage to a vehicle deemed a total loss, Auto Insurers did not compensate their insureds for the same losses involved in this antitrust matter. Accordingly, Auto Insurers have no subrogation right (equitable or otherwise) to the unrelated antitrust claims of any class member in this litigation.

     Your letter does not identify any specific Auto Insurer client or auto insurance policy that purportedly applies to your claims in this matter, but the auto insurance policies of every

November 2, 2019
PAGE 3                                                              VIA E-MAIL

Auto Insurer we have reviewed clearly limit coverage to property damage caused by auto accident, vehicle collision, or theft. For example:

- Geico's Personal Automobile Insurance Policy provides:[1]

    o "We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident."

    o "We will pay for direct and accidental loss to 'your covered auto' or any 'non-owned auto', including their equipment, minus any applicable deductible shown in the Declarations."

    o "We will pay for loss to 'your covered auto' caused by: Other than 'collision' only if the Declarations indicate that Other Than Collision Coverage is provided for that auto. 'Collision' only if the Declarations indicate that Collision Coverage is provided for that auto."

- Farmers' Personal Auto Policy provides:[2]

    o "We will pay damages for bodily injury or property damage that any insured person is legally liable to pay as a result of an accident to which this coverage applies."

    o "Subject to the limits of liability, we will pay for a loss to your insured car, its additional equipment and any non-owned car caused by any direct, sudden and accidental means other than collision, less any applicable deductibles, if Comprehensive Coverage is shown on your Declarations Page."

    o "Subject to the limits of liability, we will pay for loss to your insured car, its additional equipment and any non-owned car caused by any direct, sudden and accidental collision, less any applicable deductibles, if Collision Coverage is shown on your Declarations Page."

- State Farm's Car Policy Booklet provides:[3]

    o "We will pay damages an insured becomes legally liable to pay because of: (1) bodily injury to others; and (2) damage to property caused by an accident that involves a vehicle for which that insured is provided Liability Coverage by this policy."

---

[1] X-1 at 4, 9.
[2] X-2 at 3, 14.
[3] X-3 at 6, 16, 17.

November 2, 2019
PAGE 4                                                                         VIA E-MAIL

> o  "We will pay for loss, except loss caused by collision, to a covered vehicle; and transportation expenses incurred by an insured as a result of the total theft of your car or a newly acquired car."
>
> o  "We will pay for loss caused by collision to a covered vehicle."

The auto insurance policies make clear that the type of loss covered is limited to property damage caused by accidents, collisions, or theft—not antitrust injury. Even when an auto insurance policy references coverage for damages "other than collision," that coverage is limited to property damage caused by "missiles or falling objects; fire; theft or larceny; explosion or earthquake; hail, water, flood; malicious mischief or vandalism; riot or civil commotion; or breakage of glass."[4]

Nothing in your letter or the auto insurance policies themselves suggests that Auto Insurers extend coverage for anticompetitive overcharges caused by price-fixing, bid rigging, or market allocation. Indeed, had an insured filed a claim against an Auto Insurer to recover overcharges caused by price-fixing, nothing in your letter or any written auto insurance policy even remotely indicates that an Auto Insurer would have adjusted, accepted, allowed, or processed such a claim. In fact, your letter concedes this point and claims "[i]nsurance coverage is irrelevant to Auto Insurers' rights to equitable subrogation" because payments "were not reduced for 'uninsured' Antitrust Losses." Thus, you and the Auto Insurers you claim to represent seek equitable subrogation for a type of loss that you admit the Auto Insurers do not insure against, and which the specific terms of the auto insurance policies do not contemplate.

As you know, and as expressly stated in your letter, equitable subrogation requires that "the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296, 302-03 (1998). To establish a right to equitable subrogation, therefore, Auto Insurers bear the burden of establishing that the defendants are "primarily liable to the insured for a loss under a policy of insurance." *Phila. Indem. Ins. Co. v. Pace Suburban Bus Serv.*, 67 N.E.3d 556, 565 (Ill. App. 2016). *See also Rausch v. Allstate Ins. Co.*, 882 A.2d 801, 807 (Md. App. 2005) (explaining that rationale for equitable subrogation is "to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt"). In this case, the defendants in this litigation are, to say the least, not *primarily liable* for the auto accidents, vehicle collisions, or theft that Auto Insurers insured under their insurance policies. Nor would any of the defendants in this case possibly be jointly or severally liable for any property damages caused by someone who was at fault for causing an accident or collision. And you do not contend that any Auto Insurer insured against antitrust injuries caused by the defendants. Thus, when Auto Insurers compensated insureds for property damage caused by auto accidents, vehicle collision, or theft, the Auto Insurers did not and could not extinguish any debts attributable to antitrust injuries caused by the defendants—because no applicable policy insured against antitrust injury.

---

[4] X-1 at 9.

November 2, 2019
PAGE 5                                                                                    VIA E-MAIL

In addition, your letter incorrectly contends that "Auto Insurers, by paying Total Loss Insureds the market value of their Total Loss Vehicles, have already compensated Total Loss Insureds for their entire lost interests," which you assume "necessarily included paying supra-competitive prices for auto parts." This is wrong for multiple reasons. First, you rely on the incorrect premise that Auto Insurers actually compensated insureds for being charged supra-competitive prices when no auto insurance policy extends insurance coverage for supra-competitive prices. Because any payment to insureds whose vehicles were deemed a total loss would have been made solely for property damage, such compensation is completely unrelated to any antitrust violations.  Second, you ignore the limited pricing terms upon which any Auto Insurer would have paid insureds for their property damage loss.

As you know, every Auto Insurer limits payment to the actual current value of the damaged vehicle, which takes into account physical wear and tear, deterioration and depreciation. Thus, payments made to any insured greatly differ from (and are substantially less than) the price that same insured would have paid at the time the insured "purchased or leased a new Vehicle in the United States." This is important because your letter incorrectly posits that "[a]s long as Total Loss Vehicles were Eligible Vehicles, it is irrelevant that, when Auto Insurers indemnified Total Loss Insureds for them, they were not 'new.'" This of course ignores the class definition and is inconsistent with the purpose of restricting the class to those who "purchased or leased a *new* Vehicle."[5] Under the class definition, each class member would have paid the entire purchase price of the *new* Vehicle at the time of sale, including the supra-competitive prices imposed by defendants and passed on by vehicle manufacturers and automobile dealers to class members. By contrast, Auto Insurers *do not* (and contractually could not) compensate insureds for the entire purchase price of a new Vehicle because—much like a used vehicle purchase which is excluded from the class— Auto Insurers only pay "actual cash value" at the time of the accident which is necessarily reduced by depreciation, physical deterioration, obsolescence, and repair costs for pre-existing damage.[6] Given these reductions, Auto Insurers' payouts in no way compensate insureds for their "entire lost interests," let alone compensate insureds for supra-competitive prices.

An auto insurance subrogation claim in this antitrust action would not only allow subrogation against monies received by insureds for losses different than the property

---

[5] For example, the "Heating Control Panels Settlement Class" is defined as:

> All persons and entities that, from January 1, 2000 through the Execution Date, purchased or leased *a new Vehicle* in the United States not for resale, which included one or more Heating Control Panel(s) as a component part, or indirectly purchased one or more Heating Control Panel(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

[6] *See, e.g.,* X-1 at 11; X-2 at 14.

November 2, 2019
PAGE 6                                                                          VIA E-MAIL

damage losses covered under auto insurance policies, it would also allow subrogation against monies received by insureds for a class of loss that Auto Insurers never insured, never paid, and never contemplated under any policy of insurance. Several courts have determined that such a claim would totally contravene the concept of subrogation and have rejected similar attempts to assert equitable subrogation. *See Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581 (7th Cir. 2000) (Easterbrook, J.) (affirming dismissal of insurer subrogation claims because although insurers may have been subrogated to their insured's tort claims "this complaint is dominated by claims under the antitrust laws" and further noting "[i]t is unclear why health insurers are entitled to pursue these claims, when (for example) the complaint does not give any reason to believe that the insurers have compensated the insured for antitrust injury or purchased the right to pursue smokers' antitrust claims"); *Shockley v. Harleysville Mutual Ins. Co.*, 553 A.2d 973, 975-76 (Pa. Super. Ct. 1988) (rejecting insurer's equitable subrogation claim because "although the insurer may 'stand in the shoes of the insured' upon paying a claim, it does so only to the extent and with regard to the loss it covered," and because the insured's settlement for breach of warranty was unrelated to the fire loss covered under the insurance policy, there were "no grounds for [insurer] to be subrogated to the proceeds of [insured's] breach of warranty of title action" against the dealership that sold a stolen car); *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 198 Cal. Rptr. 756, 757 (Cal. App. 1984) (rejecting insurer's equitable subrogation claim where insureds suffered property damage losses from fires and burglaries after fire alarm systems failed to function properly, and insureds brought separate antitrust claims for anticompetitive price-fixing among the fire alarm companies; court found the insurer "has not compensated its insureds for the same losses contemplated under the antitrust claim," because "[n]one of [insurer's] compensation paid to its insured is related to pricing terms of the alarm systems"); *Employers' Liab. Assur. Corp., Ltd., of London v. Daley*, 51 N.Y.S.2d 567, *aff'd*, 67 N.Y.S.2d 233 (N.Y. 1944) (rejecting insurer's equitable subrogation claim where policy covered town's statutory liability to volunteer firemen for medical services and lost time caused by injuries while performing firemen duties, but third-party settlement was for personal injuries unrelated to medical services and lost time; court found the insurer had no subrogation right because "[i]f the loss insured against is not the same loss for which defendants recovered against the Bramleys [in settlement], neither the Town of Amherst nor the plaintiff [insurer] has a right of subrogation").

While your letter references several cases that address the general concept of subrogation, none of your cited cases support equitable subrogation to an insured's antitrust claims when no applicable insurance policy extended coverage for antitrust injuries. To the contrary, each of your cited cases involved subrogation of personal injury, property damage, or tort liability claims that were expressly insured under applicable insurance policies. *See, e.g. Millennium Hold'g LLC v. Glidden Co.*, 53 N.E.3d 723, 725 (N.Y. 2016) (involving personal injury and property damage claims insured under applicable insurance policy); *Roberts v. Electrolux Home Prods.*, 2014 WL 4568632, *5-6 (Sept. 11, 2014) (involving property and fire damage claims insured under applicable insurance policy); *AAA Mid-Atlantic Ins. Co. v. Ryan*, 84 A.3d 626, 628 (Pa. 2013) (involving personal injury and property damage claims insured under applicable auto insurance policy); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) (involving

property damage and corrosion claims insured under applicable insurance policy); *Jones v. Nationwide Prop. & Cas. Ins. Co.*, 32 A.3d 1261, 1264 (Pa. 2011) (involving collision and property damage claims insured under applicable auto insurance policy); *Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 753 (6th Cir. 2007) (involving claims of excess insurer against primary insurer for bad faith in failing to settle a tort claim against their mutual insured); *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 257 (2d Cir. 1999) (involving personal injury and medical benefit claims insured under applicable insurance policy); *Sorge v. Nat'l Car Rental Sys.*, 512 N.W.2d 505, 506 (Wis. 1994) (involving personal injury claims insured under applicable insurance policy).

Your reliance on the <u>dissent</u> in *Shockley* is further misplaced—not only because it is a dissent—but also because the anticompetitive overcharges suffered by EPPs and the property damage covered under auto insurance policies are completely unrelated, and not a "single loss." The majority decision which you characterize as "absurd," is in fact directly on point and correctly held that the fact that the same vehicle suffered harm by two very distinct violations of the law does not make them the same "loss" in the eyes of the law.

As explained in State Farm's insurance policy, the term "loss" means "direct, sudden, and accidental damage to" or "total or partial theft of a covered vehicle." And "Loss Caused by Collision" means "a loss caused by a covered vehicle hitting or being hit by another vehicle or other object" or "the overturning of a covered vehicle."[7] These property damage losses have nothing to do with and are completely unrelated to the overcharges that End-Payor Plaintiffs suffered due to price-fixing, bid rigging, and market allocation. Moreover, you rely on wholly inapposite cases that have no application to the present dispute and don't even mention the words "insurance" or "subrogation." *See, e.g.*, *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inc.*, 189 F.3d 1017, 1031-32 (9th Cir. 1999) (involving securities fraud, fraudulent inducement, and breach of contract action in which the court reached the unremarkable conclusion that "the prevailing plaintiff may not recover tort damages and contract damages for the same wrong."); *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. 321, 348 (1971) (noting joint tortfeasor rule concerning recover from coconspirators; but not addressing situation here in which Antitrust Defendants are not joint tortfeasors with the persons or objects that caused auto accidents).

In summary, the Auto Insurers you claim to represent do not have a basis for asserting equitable subrogation claims in this litigation. We would be happy to further discuss these matters if you would like, but we disagree with the statements made in your letter.

Sincerely,

*/s/ Adam J. Zapala*                    */s/ Hollis Salzman*                    */s/ Marc M. Seltzer*
Adam J. Zapala                          Hollis Salzman                          Marc M. Seltzer

---

[7] X-3 at 16.

# EXHIBIT 1



**ONE GEICO PLAZA**
**Washington, D. C. 20076-0001**
**Telephone: 1-800-841-3000**

# Personal Automobile Insurance Policy

**4300-60-55-59**

*2000014300605559450720043394*

# READ YOUR POLICY CAREFULLY

# YOUR POLICY INDEX

Page

Definition of Terms..................................................... 3

**PART A - LIABILITY COVERAGE**
Insuring Agreement ................................................. 4
Supplementary Payments........................................ 4
Exclusions................................................................ 4
Limit of Liability....................................................... 5
Out of State Coverage............................................. 5
Financial Responsibility........................................... 6
Other Insurance....................................................... 6

**PART B - MEDICAL PAYMENTS COVERAGE**
Insuring Agreement ................................................. 6
Exclusions................................................................ 6
Limit of Liability....................................................... 7
Other Insurance....................................................... 7

**PART C - UNINSURED MOTORISTS COVERAGE**
Insuring Agreement ................................................. 7
Exclusions................................................................ 7
Limit of Liability....................................................... 8
Other Insurance....................................................... 8
Arbitration................................................................ 8

Page

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**
Insuring Agreement ................................................. 9
Transportation Expenses......................................... 9
Exclusions................................................................ 9
Limit of Liability....................................................... 10
Payment of Loss...................................................... 11
No Benefit to Bailee................................................. 11
Other Sources of Recovery..................................... 11
Appraisal.................................................................. 11

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS**
General Duties......................................................... 11
Additional Duties for Uninsured Motorists.............. 11
    Coverages
Additional Duties for Coverage for Damage.......... 11
    to Your Auto

**PART F - GENERAL PROVISIONS**
Bankruptcy .............................................................. 12
Changes................................................................... 12
Fraud........................................................................ 12
Legal Action Against Us.......................................... 12
Our Right to Recover Payment................................ 12
Policy Period and Territory....................................... 12
Termination.............................................................. 12
Transfer of Your Interest in this Policy.................... 13
Two or More Auto Policies....................................... 13

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

**1.** The "named insured" shown in the Declarations; and

**2.** The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

**1.** The end of 90 days following the spouse's change of residency;

**2.** The effective date of another policy listing the spouse as a named insured; or

**3.** The end of the policy period.

**B.** "We", "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

**1.** Under a written agreement to that person; and

**2.** For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means:

**1.** In;

**2.** Upon; or

**3.** Getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

**1.** Private passenger auto; or

**2.** Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above.

**J.** "Your covered auto" means:

**1.** Any vehicle shown in the Declarations.

**2.** A "newly acquired auto".

**3.** Any "trailer" you own.

**4.** Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

This Provision (**J.4.**) does not apply to Coverage For Damage To Your Auto.

**K.** "Newly acquired auto":

**1.** "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

**a.** A private passenger auto; or

**b.** A pickup or van, for which no other insurance policy provides coverage, that:

**(1)** Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

**(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

**(a)** Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

**(b)** For farming or ranching.

**2.** Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

**a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

**b.** Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

**(1)** 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

*20000143000605569450720043995*

(2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

**c.** Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day re quirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

**2.** Any person using "your covered auto".

**3.** For "your covered auto", any person or or-ganization but only with respect to legal re-sponsibility for acts or omissions of a person for whom coverage is afforded under this Part.

**4.** For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (**B.4.**) applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

We will pay on behalf of an "insured":

**1.** Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

**2.** Premiums on appeal bonds and bonds to release attachments in any suit we defend.

**3.** Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

**4.** Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

**5.** Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any "insured":

**1.** Who intentionally causes "bodily injury" or "property damage".

**2.** For "property damage" to property owned or being transported by that "insured".

**3.** For "property damage" to property:

**a.** Rented to;
**b.** Used by; or
**c.** In the care of;
that "insured".

This Exclusion (**A.3.**) does not apply to "property damage" to a residence or private garage.

**4.** For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (**A.4.**) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

**5.** For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (**A.5.**) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:
   a. Selling;
   b. Repairing;
   c. Servicing;
   d. Storing; or
   e. Parking;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (**A.6.**) does not apply to the ownership, maintenance or use of "your covered auto" by:
   a. You;
   b. Any "family member"; or
   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion **A.6.**

   This Exclusion (**A.7.**) does not apply to the maintenance or use of a:
   a. Private passenger auto;
   b. Pickup or van; or
   c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**A.8.**) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":
   a. Is an insured under a nuclear energy liability policy; or
   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:
   a. Has fewer than four wheels; or
   b. Is designed mainly for use off public roads.

   This Exclusion (**B.1.**) does not apply:
   a. While such vehicle is being used by an "insured" in a medical emergency;
   b. To any "trailer"; or
   c. To any non-owned golf cart.

2. Any vehicle, other than "your covered auto", which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:
   a. Owned by any "family member"; or
   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (**B.3.**) does not apply to you while you are maintaining or "occupying" any vehicle which is:
   a. Owned by a "family member"; or
   b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:
   a. Competing in; or
   b. Practicing or preparing for;

   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

    **1.** A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

    **2.** A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to **the extent required.**

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

---

## PART B - MEDICAL PAYMENTS

**INSURING AGREEMENT**

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

    **1.** Caused by accident; and

    **2.** Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

    **1.** You or any "family member":

        **a.** While "occupying"; or

        **b.** As a pedestrian when struck by:

        a motor vehicle designed for use mainly on public roads or a trailer of any type.

    **2.** Any other person while "occupying" "your covered auto".

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

    **1.** Sustained while "occupying" any motorized vehicle having fewer than four wheels.

    **2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (**2.**) does not apply to a share-the-expense car pool.

    **3.** Sustained while "occupying" any vehicle located for use as a residence or premises.

    **4.** Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

    **5.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

        a. Owned by you; or

        b. Furnished or available for your regular use.

    **6.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

        **a.** Owned by any "family member"; or

        **b.** Furnished or available for the regular use of any "family member".

    However, this Exclusion (**6.**) does not apply to you.

    **7.** Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**7.**) does not apply to a "family member" using "your covered auto" which is owned by you.

    **8.** Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (**8.**) does not apply to "bodily injury" sustained while "occupying" a:

        **a.** Private passenger auto;

        **b.** Pickup or van; or

        **c.** "Trailer" used with a vehicle described in **a.** or **b.** above.

    **9.** Caused by or as a consequence of:

        **a.** Discharge of a nuclear weapon (even if accidental);

        **b.** War (declared or undeclared);

        **c.** Civil war;

        **d.** Insurrection; or

        **e.** Rebellion or revolution.

    **10.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

        **a.** Nuclear reaction;

        **b.** Radiation; or

        **c.** Radioactive contamination.

    **11.** Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

        **a.** Competing in; or

        **b.** Practicing or preparing for;

    any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part C of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

1. You or any "family member".
2. Any other person "occupying" "your covered auto".
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.
3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
   a. You or any "family member";
   b. A vehicle which you or any "family member" are "occupying"; or
   c. "Your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Owned by any governmental unit or agency.
4. Operated on rails or crawler treads.
5. Designed mainly for use off public roads while not on public roads.
6. While located for use as a residence or premises.

### EXCLUSIONS

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

**B.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.
2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (**B.2.**) does not apply to a share-the-expense car pool.

"20000143006055594507200043 97"

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**B.3.**) does not apply to a "family member" using "your covered auto" which is owned by you.

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   **a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   **b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**ARBITRATION**

**A.** If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or
2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

## INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

**1.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

**2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

**1.** Missiles or falling objects;

**2.** Fire;

**3.** Theft or larceny;

**4.** Explosion or earthquake;

**5.** Windstorm;

**6.** Hail, water or flood;

**7.** Malicious mischief or vandalism;

**8.** Riot or civil commotion;

**9.** Contact with bird or animal; or

**10.** Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

**C.** "Non-owned auto" means:

**1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

**2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

## TRANSPORTATION EXPENSES

**A.** In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

**1.** Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

**a.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

**b.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

**2.** Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

**a.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

**b.** "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

However, the most we will pay for any expenses for loss of use is $20 per day.

**B.** Subject to the provisions of Paragraph **A.**, if the loss is caused by:

**1.** A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

**a.** Beginning 48 hours after the theft; and

**b.** Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

**2.** Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

## EXCLUSIONS

We will not pay for:

**1.** Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (**1.**) does not apply to a share-the-expense car pool.

**2.** Damage due and confined to:

**a.** Wear and tear;

**b.** Freezing;

**c.** Mechanical or electrical breakdown or failure; or

**d.** Road damage to tires.

This Exclusion (**2.**) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

*20000143006055694507200438B*

3. Loss due to or as a consequence of:
   a. Radioactive contamination;
   b. Discharge of any nuclear weapon (even if accidental);
   c. War (declared or undeclared);
   d. Civil war;
   e. Insurrection; or
   f. Rebellion or revolution.

4. Loss to any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:
   a. Radios and stereos;
   b. Tape decks;
   c. Compact disk systems;
   d. Navigation systems;
   e. Internet access systems;
   f. Personal computers;
   g. Video entertainment systems;
   h. Telephones;
   i. Televisions;
   j. Two-way mobile radios;
   k. Scanners; or
   l. Citizens band radios.

   This Exclusion (4.) does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records, disks or other media used with equipment described in Exclusion 4.

6. A total loss to "your covered auto" or any "non-owned  auto" due to destruction or confiscation by governmental or civil authorities.

   This Exclusion (6.) does not apply to the interests of Loss Payees in "your covered auto".

7. Loss to:
   a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or
   b. Facilities or equipment used with such "trailer", camper body or motor home.  Facilities or equipment include but are not limited to:
      (1) Cooking, dining, plumbing or refrigeration facilities;
      (2) Awnings or cabanas; or
      (3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

   This Exclusion (7.) does not apply to a:
   a. "Trailer", and its facilities or equipment, which you do not own; or
   b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:
      (1) Acquire during the policy period; and
      (2) Ask us to insure within 14 days after you become the owner.

8. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

9. Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any custom furnishings or equipment in or upon any pickup or van.  Custom furnishings or equipment include but are not limited to:
    a. Special carpeting or insulation;
    b. Furniture or bars;
    c. Height-extending roofs; or
    d. Custom murals, paintings or other decals or graphics.

    This Exclusion (10.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:
    a. Selling;
    b. Repairing;
    c. Servicing;
    d. Storing; or
    e. Parking;

    vehicles designed for use on public highways.  This includes road testing and delivery.

12. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:
    a. Competing in; or
    b. Practicing or preparing for;

    any prearranged or organized racing or speed contest.

13. Loss to, or loss of use of, a "non-owned auto" rented by:
    a. You; or
    b. Any "family member";

    if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:
   1. Actual cash value of the stolen or damaged property; or
   2. Amount necessary to repair or replace the property with other property of like kind and quality.

   However, the most we will pay for loss to:
   1. Any "non-owned auto" which is a trailer is $1500.

2. Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or
2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";
2. Any other applicable physical damage insurance;
3. Any other source of recovery applicable to the loss.

**APPRAISAL**

**A.** If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state seperately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

---

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, set-tlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
   a. To physical exams by physicians we select. We will pay for these exams.
   b. To examination under oath and subscribe the same.

4. Authorize us to obtain:
   a. Medical reports; and
   b. Other pertinent records.
5. Submit a proof of loss when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.
2. Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.
2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.
3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

  **1.** The number, type or use classification of insured vehicles;

  **2.** Operators using insured vehicles;

  **3.** The place of principal garaging of insured vehicles;

  **4.** Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph (**C.**) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

  **1.** A subsequent edition of your policy; or

  **2.** An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

  **1.** We agree in writing that the "insured" has an obligation to pay; or

  **2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

### OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

  **1.** Whatever is necessary to enable us to exercise our rights; and

  **2.** Nothing after loss to prejudice them.

However, our rights in this Paragraph (**A.**) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

  **1.** Hold in trust for us the proceeds of the recovery; and

  **2.** Reimburse us to the extent of our payment.

### POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

  **1.** During the policy period as shown in the Declarations; and

  **2.** Within the policy territory.

**B.** The policy territory is:

  **1.** The United States of America, its territories or possessions;

  **2.** Puerto Rico; or

  **3.** Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

### TERMINATION

**A.** Cancellation

This policy may be cancelled during the policy period as follows:

  **1.** The named insured shown in the Declarations may cancel by:

    **a.** Returning this policy to us; or

    **b.** Giving us advance written notice of the date cancellation is to take effect.

  **2.** We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

    **a.** At least 10 days notice:

      **(1)** If cancellation is for nonpayment of premium; or

      **(2)** If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

    **b.** At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   **a.** For nonpayment of premium; or

   **b.** If your driver's license or that of:

      **(1)** Any driver who lives with you; or

      **(2)** Any driver who customarily uses "your covered auto";

   has been suspended or revoked. This must have occurred:

      **(1)** During the policy period; or

      **(2)** Since the last anniversary of the original effective date if the policy period is other than 1 year; or

   **c.** If the policy was obtained through material misrepresentation.

**B.** Nonrenewal

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each an-niversary of its original effective date.

**C.** Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D.** Other Termination Provisions

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

W. C. E. Robinson
Secretary

William E. Roberts
President

Copyright, ISO Properties, Inc., 2003
PP 00 01 01 05

# EXHIBIT 2

# Personal Auto Policy



---

## Index

**Insuring Agreement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Definitions Used Throughout This Policy** . . . . . . . 2

**Part I - Liability Coverage** . . . . . . . . . . . . . . . . . . . 3

A. Insuring Agreement - Bodily Injury and Property Damage Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
B. Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . 4
C. Additional Definitions Used in This Part Only . . . . . . . . . . . . 4
D. Exclusions - What is not Insured in Part I . . . . . . . . . 4
E. Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . 5
F. Legal Action Against Us . . . . . . . . . . . . . . . . . . . . . . 6
G. Conformity with Financial Responsibility Laws . . . . . . . . . . . . 6
H. Out of State Coverage . . . . . . . . . . . . . . . . . . . . . . 6
I. Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Part II - Uninsured Motorist Coverage** . . . . . . . . . . 7

A. Insuring Agreement - Uninsured Motorist Bodily Injury Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
B. Additional Definitions Used in this Part Only . . . . . . . . . . . . 7
C. Exclusions - What is not Insured in Part II . . . . . . . . . . 7
D. Additional Duties for Part II - Uninsured Motorist Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
E. Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . 9
F. Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Part III - Medical Expense Coverage** . . . . . . . . . . . 10

A. Insuring Agreement - Medical Expense Coverage . . . . . . . . . 10
B. Unreasonable or Unnecessary Medical Expenses . . . . . . . . 10
C. Additional Definitions Used in this Part only . . . . . . . . . . . 11
D. Exclusions - What is Not Insured in Part III . . . . . . . . . . . . . . 11
E. Additional Duties for Part III - Medical Expense Coverage . . 12
F. Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . 13
G. Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . 13
H. Our Right to Recover Payment . . . . . . . . . . . . . . . . . . . 13

**Part IV - Damage to Your Car** . . . . . . . . . . . . . . . . 14

A. Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . 14
B. Additional Definitions Used in This Part only . . . . . . . . . . . . 14

C. Supplementary Payments . . . . . . . . . . . . . . . . . . . . . . . . 16
D. Exclusions - What is Not Insured in Part IV . . . . . . . . . . . . . . 16
E. Additional Duties for Part IV - Damage to Your Car . . . . . . . . 17
F. Payment of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
G. Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
H. Preservation of Salvage . . . . . . . . . . . . . . . . . . . . . . . . 19
I. No Benefit to Bailee . . . . . . . . . . . . . . . . . . . . . . . . . . 19
J. Legal Action Against Us . . . . . . . . . . . . . . . . . . . . . . . . 19
K. Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
L. Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Part V - Duties After an Accident and General Conditions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

A. Duties After an Accident . . . . . . . . . . . . . . . . . . . . . . . . 19
B. General Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
  1. Policy Period and Territory . . . . . . . . . . . . . . . . . . . . . 20
  2. Your Duty to Report Changed Circumstances . . . . . . . . 20
  3. Coverage Changes . . . . . . . . . . . . . . . . . . . . . . . . . 20
  4. Legal Action Against Us . . . . . . . . . . . . . . . . . . . . . . 20
  5. Transfer of Your Interest . . . . . . . . . . . . . . . . . . . . . 21
  6. Our Right to Recover Payment . . . . . . . . . . . . . . . . . 21
  7. Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
  8. Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
  9. Misrepresentation or Fraud . . . . . . . . . . . . . . . . . . . 22
  10. Terms Conformed to Statutes . . . . . . . . . . . . . . . . . 23
  11. Proof of Mailing . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  12. Membership Fee . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  13. Additional Benefits and Services . . . . . . . . . . . . . . . . 23
  14. Policy Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  15. Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  16. Joint and Individual Interests . . . . . . . . . . . . . . . . . . 23
  17. Loss Payable Provisions . . . . . . . . . . . . . . . . . . . . . 23
  18. Limited Material Damage Coverage in Mexico . . . . . . . 24
  19. Car Sharing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Reciprocal Provisions** . . . . . . . . . . . . . . . . . . . . . . . . 24

**Special Provisions** . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**farmers.com**

56-5658   1st Edition   12-14

## Personal Auto Policy (continued)

### Insuring Agreement

In return for **your** premium payment and based upon the representations **you** made in the application for this insurance, **we** agree to insure **you** for each of the coverages listed on the **Declarations Page** subject to all the terms, limits and conditions of the application, the **Declarations Page**, this policy and all of its endorsements.

### Definitions Used Throughout This Policy

A.  Certain words and phrases are defined in this policy. Defined words and phrases appear in boldface type and have special meaning. Refer to the definition sections for the meanings. The defined terms have the same meaning whether in the singular, plural, or any other form of the same term.

B.  **We**, **us** and **our** mean the Company named on the **Declarations Page** that provides this insurance.

C.  **You** and **your** mean the **named insured** shown on the **Declarations Page** and **your** spouse, if a resident of **your** household.

1.  **Your** spouse includes a registered domestic partner, civil union or similar union under applicable state law:

    a.  If the person is a resident of the same household with **you** during the policy period, and

    b.  If the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

2.  If **your** spouse or partner defined above is no longer a resident in the same household during the policy period, the spouse or partner will be considered insured by this policy until the earlier of:

    a.  The end of ninety (90) days following the change of residency;

    b.  The effective date of another policy listing **your** spouse or partner as a named insured;

    c.  The end of the policy period; or

    d.  Cancellation of this policy.

D.  **Definitions**

1.  **Accident** means a sudden, unexpected and unintended event. An **accident** must occur during the policy period, arise out of the ownership, maintenance or use of a **car** and cause **bodily injury** or **property damage**.

2.  **Additional car** means a **car** that **you** acquire by purchase or by a written lease of at least six (6) continuous months.

a.  For coverage to apply **you** must:

  (1)  Acquire the **car** during the policy period; and

  (2)  Notify **us** within thirty (30) days of its acquisition.

b.  An **additional car** will have the broadest coverage **we** provide for any **car** shown on the **Declarations Page**.

c.  Coverage does not continue after thirty (30) days if **you** fail to notify **us** of its acquisition.

3.  **Bodily injury** means accidentally sustained bodily harm to an individual including any resulting illness, disease or death.

4.  **Business** means any full or part-time profession, occupation, trade or commercial enterprise.

5.  **Car** means a four-wheeled private passenger car of the coupe, sedan, station wagon, pick-up truck, van or sport utility type, with gross vehicle weight of 14,000 pounds or less, and licensed for and used only upon public highways. It does not include a motorhome, a step van, parcel delivery van, cargo cutaway van, or other van with the cab separate from the cargo area.

6.  **Commercial Ride-Sharing Program** means an arrangement or activity through which persons or property are transported for compensation, regardless of the amount or form of compensation charged or paid and includes the time:

    a.  commencing when a driver of a **car** is available to accept transportation requests for passengers or property for compensation;

    b.  between the driver accepting a transportation request and the passengers or property entering into or being loaded upon the **car** used for this request;

    c.  passengers or property are in or upon the **car** used for this request; and

    d.  between the passengers or property exiting or unloading from the **car** and the driver is no longer available to accept transportation requests.

7.  **Damages** mean compensation in the form of compensatory damages that can be recovered by those who suffer **bodily injury** or **property damage** as a result of an **accident**. **Damages** do not mean punitive or exemplary damages or any restitution, fines or penalties that are required to be paid as the result of any civil or criminal proceedings brought against any person.

8.  **Declarations Page** means the document from **us** listing:

    a.  The type of coverages **you** have elected;

    b.  The limit for each coverage;

**farmers.com**

## Personal Auto Policy (continued)

c.  The premium for each coverage;

d.  The **cars** insured by this policy;

e.  The **named insured**; and

f.  Other policy information.

9.  **Family member** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption, including a ward or foster child. This also includes a minor in the custody of **you** or of a person related to **you** who resides with **you**.

10. **Named insured** means the person or persons listed on the **Declarations Page** as the **named insured**.

11. **Non-owned car** means any **car** or **utility trailer**, other than **your insured car**, which is not owned by, furnished or available for regular use by **you** or a **family member** while in the custody of or being operated by **you** or a **family member**.

12. **Occupying** means:

a.  In;

b.  On;

c.  Getting into; or

d.  Getting out of.

13. **Personal Car Sharing Program** means a **business** in which persons or legal entities are engaged in the **business** of facilitating the sharing of **cars** for temporary use by individuals.

14. **Property damage** means physical injury to or destruction of tangible property, including loss of its use.

15. **Rental car** means any **car** or a **utility trailer** that is rented by **you** on a daily or weekly basis not to exceed thirty (30) consecutive days, provided that this **car** or **utility trailer** is not owned by, furnished or available for regular use by **you** or a **family member**.

16. **Replacement car** means a **car** that **you** acquire to replace any **car** listed on the **Declarations Page**, either by purchase, or by a written lease of at least six (6) continuous months.

a.  **You** must:

(1) acquire the **car** during the policy period; and

(2) notify **us** within thirty (30) days of its acquisition.

b.  A **replacement car** will have the same coverage as **your insured car** that it replaces.

c.  Coverage does not continue after thirty (30) days if **you** fail to notify **us** of the replacement.

17. **Substitute car** means a **car** not **owned** by **you** or a **family member**, but being temporarily used by **you** or a **family member** as a substitute for a **car** listed on the **Declarations Page** only when that listed **car** is withdrawn from normal use because of breakdown, repair, servicing, loss or destruction.

18. **Utility trailer** means a non-motorized vehicle that is designed to be towed by **your insured car** and it includes a farm wagon or farm implement while towed by a **car** on public roads. **Utility trailer** does not mean:

a.  A trailer used as an office, store, display or any other **business** for commercial purposes;

b.  A passenger trailer;

c.  A trailer used as a primary residence; or

d.  A travel trailer or camper trailer.

19. **Your insured car** means:

a.  Any **car** listed on the **Declarations Page** of this policy;

b.  A **replacement car**;

c.  A **substitute car**;

d.  A **rental car**;

e.  An **additional car**; and

f.  Any **utility trailer**:

(1) that **you** own, or

(2) if not owned by **you**, while attached to **your insured car**.

## *Part I – Liability Coverage*

**Coverage A - Bodily Injury**

**Coverage B - Property Damage**

A.  **Insuring Agreement - Bodily Injury and Property Damage Coverage**

**We** will pay **damages** for **bodily injury** or **property damage** that any **insured person** is legally liable to pay as a result of an **accident** to which this coverage applies. **We** will defend an **insured person** against any covered suit or settle any claim or lawsuit as **we** deem appropriate. Subject to the limits of liability, **damages we** pay will include prejudgment interest awarded in a judgment against an **insured person**. **Our** duty to defend or settle any suit will end after **we** have exhausted the limits of liability through payment of judgments or settlements.

## Personal Auto Policy (continued)

B. **Additional Payments**

**We** will also pay the following benefits for an **insured person**:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend; however, **we** are not obligated to apply for, furnish, or provide collateral or security for any of the above bonds. **We** are not required to purchase a bond in an amount greater than **our** limit of liability.

2. Up to $300 for the cost of bail bonds required because of an **accident** or traffic law violation arising out of the use of **your insured car**; however, **we** are not obligated to apply for, furnish, or provide collateral or security for any bonds. **We** are not required to purchase a bond in an amount greater than **our** limit of liability.

3. Actual loss of wages or salary up to $50 a day, but not other income, when **we** ask an **insured person** to attend a trial or hearing.

4. Reasonable expenses incurred by an **insured person** for first aid provided by the **insured person** to others at the time of an **accident** involving any **car** insured under **Part I - Liability Coverage.**

5. Post judgment interest that accrues on any **damages** awarded in any suit **we** defend, which interest has accrued after judgment is entered and before **we** have paid, offered to pay, or deposited with the court that portion of the judgment that is not in excess of **our** limit of liability. **We** will not pay post judgment interest on any portion of the judgment that exceeds **our** limits of liability.

6. All costs **we** incur in settling any claim or defending any lawsuit.

7. Other reasonable expenses, if incurred at **our** request.

C. **Additional Definitions Used in This Part Only**

**Insured person** in Part I means:

1. **You** or any **family member** or a **listed driver**;

2. Any person using **your insured car** with **your** permission; or

3. Any other person or organization with respect only to legal liability for acts or omissions of:

   a. Any person insured under Part I while using **your insured car**, or

   b. **You** or any **family member** insured under Part I while using any **car**, other than **your insured car**, if not owned or hired by that person or organization.

**Insured person** does not mean:

1. The United States of America or any of its agencies;

2. Any person for **bodily injury** or **property damage** arising from the operation of a **car** by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply;

3. Any named excluded driver; or

4. Any person while operating a **car** that is available for hire or while using a **car** that is part of a **Personal Car Sharing Program**, a **Commercial Ride-Sharing Program** or a similar arrangement.

**Listed driver** means a driver expressly rated on this policy to operate **your insured car** and for whom a premium has been paid to operate **your insured car**.

D. **Exclusions - What is Not Insured in Part I**

1. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

   a. Products;

   b. Documents;

   c. Newspapers; or

   d. Food.

   This exclusion does not apply to a share-the-expense car pool.

2. **We** do not insure **bodily injury** or **property damage** caused intentionally by or at the direction of any **insured person**, whether or not any person intended to cause damage or injury of any nature.

3. **We** do not insure **bodily injury** or **property damage** with respect to which any person is insured under a nuclear energy insurance policy. This exclusion applies even if the limits of that policy are exhausted.

4. **We** do not insure **bodily injury** to an employee of an **insured person** arising in the course of employment. This exclusion does not apply to **bodily injury** to a domestic employee except when workers' compensation benefits are required or available for that domestic employee.

5. **We** do not insure **bodily injury** or **property damage** resulting from an **insured person's** employment, or other involvement, in the **business** or occupation of:

## Personal Auto Policy (continued)

a. transporting,

b. selling,

c. repairing,

d. servicing,

e. storing, or

f. parking

**cars**. This exclusion includes road testing and delivery of the **cars**.

6. **We** do not insure **bodily injury** or **property damage** resulting from the use of a **car** by an **insured person** in an emergency occupation on a full-time, part-time, or volunteer basis. Such occupations include, but are not limited to, fire-fighting, police or ambulance activities. However, this exclusion does not apply to a **car** listed on the **Declarations Page** or any **replacement car**.

7. **We** do not insure **property damage** to property:

a. owned by;

b. being transported by;

c. rented to; or

d. in the charge of

an **insured person**. This exclusion does not apply to **property damage** to a residence or private garage rented by that person.

8. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any motorized vehicle with less than four wheels.

9. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **car**, other than **your insured car**, which is owned by, furnished or available for regular use by **you** or a **family member**.

10. **We** do not insure **bodily injury** or **property damage** resulting from liability assumed under any contract or agreement. This exclusion does not apply to liability **you** assume in a written contract relating to the use of a **rental car** or a **substitute car**.

11. **We** do not insure **bodily injury** or **property damage** resulting from an **insured person** participating, or **your insured car** being used, in any racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

12. **We** do not insure charges, fees and administrative expenses for services performed by law enforcement and municipal personnel when responding to an **accident**.

13. **We** do not insure **bodily injury** or **property damage** for any **insured person** who is using a **car** without a reasonable belief the **insured person** is entitled to do so. This exclusion does not apply to a **family member** using **your insured car** that is owned by **you**.

14. **We** do not insure loss due to theft or conversion of **your insured car**, a **non-owned car**, or trailer:

a. By **you**, a **family member**, or any resident of **your** household;

b. Prior to its delivery to **you** or a **family member**; or

c. While in the care, custody, or control of anyone engaged in the **business** of selling the **car** or trailer.

15. **We** do not insure **bodily injury** or **property damage**:

a. Caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with or convicted of a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations;

b. Arising out of the use or operation by an **insured person** of any **car** while it is being used to flee a law enforcement agent or crime scene.

16. **We** do not insure **bodily injury** or **property damage** for any **accident** that occurs while **your insured car** or any **car** is in a **Personal Car Sharing Program**, a **Commercial Ride-Sharing Program** or a similar arrangement. This exclusion does not apply to a share-the-expense car pool.

E. **Limits of Liability**

The limits of liability shown on **your Declarations Page** apply subject to the following:

1. The **bodily injury** liability limit for "Each Person" is the maximum for **bodily injury** sustained by one person in one **accident**. All claims of others derived from such **bodily injury**, including but not limited to, emotional injury, mental anguish, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death are included in the "Each Person" limit.

2. Subject to the **bodily injury** liability limit for "Each Person", the **bodily injury** liability limit for "Each Accident" is the maximum combined amount for **bodily injury** sustained by two or more persons in one **accident**.

**farmers.com**

## Personal Auto Policy (continued)

3. The **property damage** liability limit for "Each Accident" is the maximum for all **property damage** sustained to all property in any one **accident**.

4. The limits of liability shown on the **Declarations Page** for **bodily injury** and **property damage** are the most **we** will pay regardless of the number of:
   a. Claims made;
   b. **Your insured cars**;
   c. **Insured persons**;
   d. Lawsuits brought;
   e. **Cars** involved in the **accident**; or
   f. Premiums paid.

5. If the **Declarations Page** shows that a combined single limit or "CSL" applies, the amount shown is the most **we** will pay for all **bodily injury** and **property damage** resulting from any one **accident** regardless of the number of:
   a. Claims made;
   b. **Your insured cars**;
   c. **Insured persons**;
   d. Lawsuits brought;
   e. **Cars** involved in the **accident**; or
   f. Premiums paid.

   All claims of others derived from such **bodily injury**, including, but not limited to, emotional injury, mental anguish, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death are included in the "CSL" limit.

6. No person is entitled to duplicate payments for the same elements of **damages** from this policy or any other policy. Any amount payable to a person for liability coverage shall be reduced by all sums paid or payable to that person or for their benefit under any uninsured or underinsured motorist coverage, medical payments coverage, or physical damage coverage.

7. Stacking or aggregation of liability coverage limits for **bodily injury** or **property damage** is not permitted by this policy.

F. **Legal Action Against Us**

1. Under **Part I - Liability Coverage**, no legal action may be brought against **us** until:
   a. **we** agree in writing that the **insured person** has an obligation to pay; or

   b. the amount of that obligation has been finally determined by judgment after trial.

2. No person or organization has any right under this policy to bring **us** into any action brought to determine the liability of an **insured person**.

G. **Conformity with Financial Responsibility Laws**

   When **we** certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by law.

H. **Out of State Coverage**

1. If an **accident** to which this policy applies occurs in any state or province other than the one in which **your insured car** is principally garaged, and if a statute of that **accident** state or province that is applicable to **us** deems out-of-state vehicle liability policies issued by **us** to provide particular forms or limits of coverage not provided for in this policy when **your insured car** is involved in an **accident** in that state, then for purposes of that **accident** only, **we** will interpret **your** policy as providing the additional minimum coverage(s) deemed to be provided, at the minimum amounts permitted by law, and subject to the exclusions set forth in this policy.

2. **Our** obligation to pay such coverage shall be reduced by all other available insurance, to the extent permitted by the law of the other state.

3. Nothing contained herein constitutes a choice of law provision or consents to the application of the law of any particular state or province.

I. **Other Insurance**

1. If there is other applicable auto liability insurance on any other policy that applies to an **accident** insured under Part I, **we** will pay only **our** share. **Our** share is the proportion that **our** limits of liability bear to the total of all applicable limits. However, the total amount payable among all such policies will not exceed the limits provided by the single policy with the highest limits of liability.

2. Any insurance **we** provide under this policy for a **non-owned car** shall be excess over any other collectible insurance. The highest limits of liability shown on the **Declarations Page** of this policy for any one **your insured car** will apply.

## Personal Auto Policy (continued)

### Part II - Uninsured Motorist Coverage

**Coverage C - Uninsured Motorist Coverage**

A.  **Insuring Agreement - Uninsured Motorist Bodily Injury Coverage**

If a limit for this coverage is shown on **your Declarations Page**, **we** will pay **damages** an in**sured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by an **insured person**, caused by an accident, and arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

B.  **Additional Definitions Used In This Part Only**

1.  **Insured person** in Part II means:

    a.  **You** or any **family member**;

    b.  Any person while **occupying your insured car,** or

    c.  Any person who is entitled to recover **damages** covered by Part II because of **bodily injury** sustained by a person described in a or b above.

    But, no person shall be considered an **insured person** if the person uses a vehicle without having sufficient reason to believe that the use is with permission of the owner.

    **Insured person** does not mean:

    Any person while operating a **car** that is available for hire or while using a **car** that is part of a **Personal Car Sharing Program**, a **Commercial Ride-Sharing Program** or a similar arrangement.

2.  **Uninsured motor vehicle** means a motor vehicle of any type:

    a.  To which no **bodily injury** liability bond or policy applies at the time of the accident;

    b.  To which a **bodily injury** liability bond or policy applies at the time of the accident, but the bonding or insuring company:

        (1)  denies coverage, or

        (2)  is or becomes insolvent or otherwise unable to pay motor vehicle liability insurance claims;

    c.  Which is a hit-and-run vehicle whose owner or operator cannot be identified and which causes an accident resulting in **bodily injury**; or

    d.  To which a bodily injury liability bond, policy, or security applies at the time of the accident, but the sum of all applicable limits of liability under all valid and collectible bonds, policies and securities provides coverage in amounts less than the **damages** to which

the **insured person** is legally entitled from the owner or operator of that vehicle.

An **uninsured motor vehicle** does not mean any vehicle:

a.  Owned by **you** or a **family member** or furnished or available for the regular use of **you** or a **family member**;

b.  That is **your insured car**;

c.  Owned or operated by a self-insured as contemplated by any financial responsibility law, or similar law, except

    i.  a self-insured who is or becomes insolvent; or

    ii.  a self-insured which is a governmental unit or agency;

d.  Operated by a person who intentionally causes the **accident** or occurrence and whose liability insurance coverage is denied because of an intentional act exclusion;

e.  Operated on rails or crawler treads;

f.  That is a farm-type tractor or equipment designed principally for use off public roads, except while being used upon public roads;

g.  While located for use as a residence or premises or office; or

h.  That is not required to be registered as a motor vehicle.

C.  **Exclusions - What is Not Insured in Part II**

We do not provide uninsured motorist coverage for any **insured person** for:

1.  The direct or indirect benefit of any insurer or self-insurer under any of the following or similar laws or funds:

    a.  Workers' compensation law;

    b.  Disability benefits law; or

    c.  The State Accident Insurance Fund.

2.  **Bodily injury** sustained by any **family member** while **occupying** or when struck by any vehicle owned by **you** that is insured for uninsured motorist coverage on a primary basis under any other policy.

3.  **Bodily injury** sustained by an **insured person** while using, **occupying** or when struck by a **car** of any type that is designed to be operated on the public roads and that is owned by **you** or a **family member** or furnished for or available for regular use if that **car** is uninsured for this coverage.

## Personal Auto Policy (continued)

4. **Bodily injury** arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

    a. Products;

    b. Documents;

    c. Newspapers; or

    d. Food.

    This exclusion does not apply to a share-the-expense car pool.

5. **Bodily injury** when an **insured person** is using a **car** without a reasonable belief that the person is entitled to do so. This exclusion does not apply to a **family member** using **your insured car** that is owned by **you**.

6. **Bodily injury** for which insurance is afforded under a nuclear energy liability insurance policy or would be afforded under a nuclear energy liability insurance policy but for its termination upon exhaustion of its limit of liability.

7. **Bodily injury** resulting from an **insured person** participating in or **your insured car** being used in any racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

8. **Bodily injury**:

    a. Caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

    b. Arising out of the operation of any **car** by an **insured person** while it is being used to flee a law enforcement agent or crime scene.

9. **Bodily injury** for any accident that occurs while **your insured car** or any **car** is in a **Personal Car Sharing Program**, a **Commercial Ride-Sharing Program** or a similar arrangement. This exclusion does not apply to a share-the-expense car pool.

10. Punitive or exemplary damages.

11. Attorney's fees or litigation expenses including those that result from any lawsuit where punitive or exemplary damages were awarded.

D. **Additional Duties for Part II - Uninsured Motorist Coverage**

An **insured person** must comply with the following provisions:

1. Any judgment or settlement for **damages** against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us** unless **we**:

    a. Received from the **insured person** reasonable notice of the suit that resulted in the judgment; and

    b. Had a reasonable opportunity to protect **our** interests in the suit.

2. When the **insured person** informs **us** of a settlement offer, if any, proposed by or on behalf of the owner or driver of the **uninsured motor vehicle**, the **insured person** must request **our** written consent to accept such settlement offer.

    a. If **we** consent in writing, then the **insured person** may accept such settlement offer.

    b. If **we** inform the **insured person** in writing that **we** do not consent, then the **insured person** may not accept such settlement offer and:

        (1) **We** will make payment to the **insured person** in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the **uninsured motor vehicle**; and

        (2) Any recovery from or on behalf of the owner or driver of the **uninsured motor vehicle** shall first be used to repay **us**.

3. An **insured person** must take all necessary steps to protect **our** right of subrogation, which may include the filing of a suit against an uninsured motorist. Any suit filed by an **insured person** must be filed within the applicable statute of limitations. If **we** make a payment and the **insured person** recovers from another party, the **insured person** shall hold the proceeds in trust for **us** and pay **us** back the amount **we** have paid.

4. A person seeking Uninsured Motorist Coverage under this policy must also submit to physical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require.

## Personal Auto Policy (continued)

5. Any action brought against **us** pursuant to this coverage must be brought in the county in which the person seeking benefits resides or in the United States District Court serving that county.

E. **Limits of Liability**

1. If **your Declarations Page** shows a "split limit" for Uninsured Motorist Coverage:

   a. The amount shown for "Each Person" is the most **we** will pay for all **damages** due to **bodily injury** to an **insured person**.

   b. All claims of others derived from such **bodily injury**, including, but not limited to:

      (1) Emotional injury;

      (2) Mental anguish;

      (3) Loss of society;

      (4) Loss of companionship;

      (5) Loss of services;

      (6) Loss of consortium; and

      (7) Wrongful death

      are included in the "Each Person" limit.

   c. Subject to the "Each Person" limit, the amount shown for "Each Accident" is the most **we** will pay for all **damages** due to **bodily injury** sustained by two or more **insured persons** in any one accident.

   d. The limits of liability shown on the **Declarations Page** for Uninsured Motorist Coverage are the most **we** will pay regardless of the number of:

      (1) Claims made;

      (2) Insured **cars**;

      (3) **Insured persons**;

      (4) Lawsuits brought;

      (5) Motor vehicles involved in the accident; or

      (6) Premiums paid.

2. **We** will not pay under Part II any expenses paid or payable under any medical or disability benefits coverage applicable to the **uninsured motor vehicle** and collectible from the insurer of such vehicle.

3. If an **insured person** suffers actual **damages** for **bodily injury** caused by an accident with a motor vehicle owned by a governmental unit or agency, whether self-insured or not, that is subject to the statutory limitation of damages contained in NRS 41.035, then **we** will pay up to the limits of this coverage for the actual **damages** suffered by the

**insured person** that exceed this statutory limitation of liability.

4. No one will be entitled to duplicate payments for the same elements of **damages** under this or any other policy. Additionally, the limits of liability under Part II will be reduced by all sums paid or payable:

   a. Because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;

   b. Under **Part I - Liability Coverage**;

   c. Under **Part III - Medical Expense Coverage**;

   d. As a result of **bodily injury** under any workers' compensation law, disability benefits law or any similar law.

5. **LIMITATIONS ON STACKING COVERAGES**

   IF **YOU** HAVE MORE THAN ONE MOTOR VEHICLE INSURED WITH **US** AND, IF **YOU** OR ANY OTHER **INSURED PERSON** IS IN AN **ACCIDENT**:

   A) IN **YOUR INSURED CAR** - **WE** WILL NOT PAY MORE THAN THE UNINSURED MOTORIST LIMIT OF COVERAGE SHOWN ON THE **DECLARATIONS PAGE** FOR THAT PARTICULAR INSURED **CAR**.

   B) IN A MOTOR VEHICLE OTHER THAN **YOUR INSURED CAR** OR WHILE A PEDESTRIAN - **WE** WILL NOT PAY FOR MORE THAN THE UNINSURED MOTORIST LIMIT OF COVERAGE WHICH **YOU** HAVE ON ANY ONE OF **YOUR INSURED CARS**.

   COVERAGE ON OTHER MOTOR VEHICLES INSURED BY **US** CANNOT BE ADDED TO OR STACKED ON THE COVERAGE OF **YOUR INSURED CAR** THAT COVERS THE LOSS.

   THESE LIMITS OF COVERAGE APPLY REGARDLESS OF THE NUMBER OF POLICIES, **INSURED PERSONS**, **YOUR INSURED CARS**, CLAIMS MADE, CLAIMANTS, OR MOTOR VEHICLES INVOLVED IN THE **ACCIDENT**.

   **WE** WILL PAY NO MORE THAN THE MAXIMUM LIMITS OF THIS COVERAGE, AS SHOWN IN THE **DECLARATIONS PAGE** OF THIS POLICY, FOR ANY PERSON OR VEHICLE INSURED UNDER THIS PART FOR ANY ONE **ACCIDENT** OR OCCURRENCE REGARDLESS OF THE NUMBER OF:

   1. VEHICLES OR PREMIUMS SHOWN IN THE **DECLARATIONS PAGE**;

   2. VEHICLES INSURED;

   3. **INSURED PERSONS**;

## Personal Auto Policy (continued)

4. CLAIMS OR CLAIMANTS;

5. POLICIES; OR

6. VEHICLES INVOLVED IN THE **ACCIDENT** OR OCCURRENCE.

THE LIMITS PROVIDED BY THIS POLICY FOR THIS COVERAGE MAY NOT BE STACKED, AGGREGATED, OR OTHERWISE COMBINED WITH THE LIMITS PROVIDED BY ANY OTHER POLICY ISSUED TO **YOU** OR A **FAMILY MEMBER** BY US OR BY ANY OTHER MEMBER OF THE FARMERS INSURANCE GROUP OF COMPANIES.

THE LIMITS ARE NOT INCREASED BY INSURING ADDITIONAL VEHICLES, EVEN THOUGH A SEPARATE PREMIUM FOR EACH VEHICLE IS SHOWN ON THE **DECLARATIONS PAGE**.

F. **Other Insurance**

1. If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance being provided under Part II of this policy, any recovery for **damages** under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one motor vehicle under any one policy providing coverage on either a primary or excess basis.

2. The coverage provided by this policy is excess over any other collectible auto uninsured motorist insurance coverage provided by any other policy which applies to the same **accident** or occurrence.

## Part III - Medical Expense Coverage

A. **Insuring Agreement - Medical Expense Coverage**

1. Subject to the limit of liability shown on **your Declarations Page**, if **you** have paid the premium for this coverage, **we** will pay the **reasonable expenses** for **necessary medical services** and funeral services:

   a. Because of **bodily injury**;

   b. Caused by an **accident**; and

   c. Sustained by an **insured person**.

   Medical services must be provided within three (3) years from the date of the **accident**.

2. **We** have the right to review all medical expenses submitted on behalf of an **insured person** and to determine what are **reasonable expenses** and **necessary medical services**. **We** have the right to also use third party sources of information selected by **us**, and sources may include, but are not limited to:

   a. Medical record reviews;

   b. Computer databases;

   c. Published sources of medical expense information;

   d. Utilization reviews;

   e. Peer reviews;

   f. Medical bill reviews; or

   g. Medical examinations by physicians that **we** will select.

   At **our** expense, **we** may employ or enter into contract with an independent medical consultant(s) to assist us in determining whether all or any portion of any claim are **reasonable expenses** and **necessary medical services**. **We** may submit to such a consultant any medical records, reports, bills, statements, results of tests and examinations, and any other documentation or material **we** deem appropriate.

3. Additionally, **we** have the right to enter into a contract with a third party who has an agreement with the **insured person's** medical provider to charge fees as determined by that agreement.

B. **Unreasonable or Unnecessary Medical Expenses**

1. Upon conclusion of **our** review of medical expenses, **we** may refuse to pay for medical expenses that **we** determine to be unreasonable or unnecessary because:

   a. The fee for the services is greater than the fee for **reasonable expenses**; or

   b. The services provided for the treatment of **bodily injury** are not **necessary medical services**.

2. If a medical service provider files suit against an **insured person** after **we** have determined their fees are unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage if:

   a. The **insured person** has paid the entire disputed amount to the provider; or

   b. The provider has begun collection activity against the **insured person** for the amounts that **we** determined were unnecessary or unreasonable.

   When **we** defend, **we** will choose counsel and **we** will pay reasonable expenses that the **insured person** incurs at **our** request, including loss of earnings up to $50 per day for the **insured person** to attend any court hearing.

## Personal Auto Policy (continued)

C. **Additional Definitions Used in This Part Only**

1. **Insured person**, in Part III, means:

   a. **You** or any **family member**:

      (1) While **occupying** any **car**; or

      (2) When struck as a pedestrian by a **car**; or

   b. Any other person while **occupying your insured car** with permission of the owner.

   **Insured person** does not mean:

   Any person while operating a **car** that is available for hire or while using a **car** that is part of a **Personal Car Sharing Program**, a **Commercial Ride-Sharing Program** or a similar arrangement.

2. **Necessary medical services** mean prescribed medical services which are reasonable, customary and necessary for treatment of the **bodily injury**, including the number and duration of treatments in the region in which those services are provided. The services are limited to medical, surgical, dental, x-ray, ambulance, hospital and professional nursing, and funeral services; and include the cost of pharmaceuticals, orthopedic and prosthetic devices, eyeglasses, and hearing aids. **We** will reimburse **you** for any **necessary medical services** covered under this Part already paid by **you**.

   **Necessary medical services** do not mean:

   a. Treatment, services, products, or procedures that are:

      (1) Experimental in nature, for research, or not primarily designed to serve a medical purpose, or

      (2) Not commonly and customarily recognized throughout the medical profession and within the United States as appropriate for the treatment of **bodily injury**; or

   b. The use of:

      (1) Thermography or other related procedures of a similar nature; or

      (2) Acupuncture or other related procedures of a similar nature; or

   c. Purchase, rental cost, or use of:

      (1) Hot tubs, spas, water beds,

      (2) Exercise equipment,

      (3) Heating or vibrating devices,

      (4) Furniture or equipment not primarily designed to serve a medical purpose,

      (5) Memberships in health clubs, or

      (6) Medical reports unless requested by **us**.

3. **Reasonable expenses** mean an amount for a medical service that is the lowest of:

   a. The charges that are usual and customary among providers of similar **necessary medical services** in the region in which those services are provided;

   b. Any fee schedule applicable to the type of **necessary medical services** that were provided in the State where the services were provided, including but not limited to, fee schedules applicable to no-fault benefits, personal injury protection benefits and medical payments coverage;

   c. The amount agreed upon between the **insured person's** medical provider and any third party concerning charges for medical expenses, if **we** have a contract with that third party;

   d. The fees that are agreed to by the medical provider and **us**;

   e. If applicable, the amount that Medicare paid to the **insured person's** health care provider for medical expenses; or

   f. The amount that the **insured person's** medical provider agreed to accept from the **insured person's** health insurance carrier.

   **We** will reimburse **you** for any **reasonable expenses** covered under this Part already paid by **you**.

D. **Exclusions - What Is Not Insured In Part III**

   **We** do not provide Medical Expense Coverage for any **insured person** for **bodily injury**:

1. Arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

   a. Products;

   b. Documents;

   c. Newspapers; or

   d. Food.

   This exclusion does not apply to a share-the-expense car pool.

2. Sustained while **occupying** any **car** while it is being used as a residence or premises.

## Personal Auto Policy (continued)

3. Sustained while **occupying** a motorized vehicle other than a **car.**

4. Sustained while **occupying** or when struck by any **car** other than **your insured car** that is owned by **you** or a **family member** or furnished or available for **your** or a **family member's** regular use.

5. Sustained while **occupying** any **your insured car** while used in employment in an emergency occupation, including but not limited to fire fighting, police, and ambulance activities.

6. Sustained while **occupying** any vehicle, other than a car listed on the **Declarations page**, which is one of a fleet or pool of vehicles provided for the use of an **insured person** in the course of his or her employment.

7. Due to medical conditions or illnesses not causally related to an **accident**.

8. Occurring during the course and scope of employment if workers' compensation or disability benefits are required or available for the **bodily injury**.

9. Caused by:
   a. war (declared or undeclared);
   b. civil war;
   c. insurrection;
   d. rebellion;
   e. revolution;
   f. nuclear reaction, radiation, or radioactive contamination;
   g. chemical or biological contamination; or
   as a consequence of any of these.

10. Caused during active participation in any racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

11. When medical expenses are paid or payable by any governmental entity.

12. Caused by or resulting from mold, fungi or bacteria.

13. Caused intentionally by, or at the direction of, an **insured person**, whether or not such person intended to cause damage or **bodily injury** of any nature.

14. To any person while in the commission of a felony or while attempting to flee a law enforcement agent or crime scene.

15. Sustained by any person while **occupying your insured car** without the express or implied permission of **you** or a **family member**. This exclusion does not apply to a **family member** using **your insured car** which is owned by **you**.

16. Sustained by **you** or a **family member** while **occupying** a **non-owned car** without the express or implied permission of the owner.

17. Sustained while **your insured car** or any **car** is in a **Personal Car Sharing Program**, a **Commercial Ride-Sharing Program** or a similar arrangement. This exclusion does not apply to a share-the-expense car pool.

18. Sustained while **occupying** a **car** other than a **car** listed on the **Declarations Page** while the **car** is being used in the **business** of an **insured person**.

E. **Additional Duties for Part III - Medical Expense Coverage**

In addition to the terms and conditions of this policy and in addition to compliance with **Part V - Duties After an Accident and General Conditions**, an **insured person** seeking coverage under Part III of this policy must also comply with the following provisions:

1. Authorize **us** to obtain:
   a. Medical records or reports;
   b. Any documents **we** indicate are necessary to investigate and process the claim; and
   c. Event data recorders and/or sensing and diagnostic modules or any other recording device for the purpose of retrieving data following an **accident**.

2. Submit, as often as **we** reasonably require, to a request for production of documents at the time of an examination under oath and any other time, and allow the copying of any documents **we** or **our** designated representative requests. This includes, but is not limited to, all documents concerning **your** income (payroll records, profit and loss statements, etc.), finances, credit, and any other documents **we** indicate are reasonable and necessary to investigate and process **your** claim. Such documents must be provided to **us** or **our** designated representative in a timely manner, and if requested, prior to an examination under oath.

3. As required by the law of the state in which this policy was issued, submit to physical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require.

Any expense, if reasonable and incurred by an **insured person** at our request, will be paid by **us**.

56-5658   1st Edition   12-14

## Personal Auto Policy (continued)

F.  **Limits of Liability**

1.  The limit of liability for the coverage provided by Part III to any one **insured person** is the limit shown for this coverage on the **Declarations Page**.

2.  The limit of liability for funeral expenses shall not exceed $2,000 per person.

3.  No one will be entitled to receive duplicate payments for the same elements of loss under this Part and any other Part of this policy. Additionally, the limits of liability under Part III will be reduced by all sums paid and payable:

    a.  Because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;

    b.  Under **Part I - Liability Coverage**;

    c.  Under **Part II - Uninsured Motorist Coverage**; or

    d.  As a result of **bodily injury** under any workers' compensation law, disability benefits law or any similar law.

4.  **LIMITATIONS ON STACKING COVERAGES**

    IF **YOU** HAVE MORE THAN ONE MOTOR VEHICLE INSURED WITH **US** AND, IF **YOU** OR ANY OTHER **INSURED PERSON** IS IN AN **ACCIDENT**:

    A)  IN **YOUR INSURED CAR** - **WE** WILL NOT PAY MORE THAN THE MEDICAL EXPENSE LIMIT OF COVERAGE SHOWN ON THE **DECLARATIONS PAGE** FOR THAT PARTICULAR INSURED **CAR**.

    B)  IN A MOTOR VEHICLE OTHER THAN **YOUR INSURED CAR** OR WHILE A PEDESTRIAN - **WE** WILL NOT PAY FOR MORE THAN THE MEDICAL EXPENSE LIMIT OF COVERAGE WHICH **YOU** HAVE ON ANY ONE OF **YOUR INSURED CARS**.

    COVERAGE ON OTHER MOTOR VEHICLES INSURED BY **US** CANNOT BE ADDED TO OR STACKED ON THE COVERAGE OF **YOUR INSURED CAR** THAT COVERS THE LOSS.

    THESE LIMITS OF COVERAGE APPLY REGARDLESS OF THE NUMBER OF POLICIES, **INSURED PERSONS**, **YOUR INSURED CARS**, CLAIMS MADE, CLAIMANTS, OR MOTOR VEHICLES INVOLVED IN THE **ACCIDENT**.

    **WE** WILL PAY NO MORE THAN THE MAXIMUM LIMITS OF THIS COVERAGE INDICATED FOR THIS COVERAGE IN THE **DECLARATIONS PAGE** REGARDLESS OF THE NUMBER OF:

1.  **CARS** DESCRIBED IN THE **DECLARATIONS PAGE**;

2.  **YOUR INSURED CARS**;

3.  **INSURED PERSON(S)**;

4.  CLAIMS;

5.  CLAIMANTS;

6.  POLICIES; OR

7.  **CARS** INVOLVED IN THE **ACCIDENT** OR OCCURRENCE THAT TRIGGERS THIS COVERAGE.

THE LIMITS OF THIS COVERAGE INDICATED FOR THIS COVERAGE IN THE **DECLARATIONS PAGE** MAY NOT BE STACKED, AGGREGATED, OR OTHERWISE COMBINED WITH THE LIMITS OF THIS OR SIMILAR COVERAGE PROVIDED BY ANY OTHER POLICY ISSUED TO ANY **INSURED PERSON** BY **US** OR BY ANY OTHER MEMBER OF THE FARMERS INSURANCE GROUP OF COMPANIES.

THE LIMITS ARE NOT INCREASED BY INSURING ADDITIONAL **CARS**, EVEN THOUGH A SEPARATE PREMIUM FOR EACH **CAR** IS SHOWN ON THE **DECLARATIONS PAGE**.

G.  **Other Insurance**

If there is other applicable medical insurance on any other policy that applies to a loss insured under Part III, **we** will pay only **our** share. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits for the Medical Expense Coverage. Any Medical Expense Coverage **we** provide to any **insured person** for an accident involving a **non-owned car** or trailer will be excess over any other collectible insurance.

If any applicable insurance other than this policy is issued to an **insured person** by **us** or any other insurer, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limit of liability.

H.  **Our Right to Recover Payment**

When an **insured person** has been paid medical expenses by **us** under this policy and also recovers medical expenses from another, to the extent that state law permits, the amount recovered from the other must be held by that **insured person** in trust for **us** and reimbursed to **us** to the extent of **our** payment.

## Personal Auto Policy (continued)

### Part IV - Damage to Your Car

A. **Insuring Agreement**

1. **Coverage F - Comprehensive Coverage**

   Subject to the limits of liability, **we** will pay for a loss to **your insured car**, its **additional equipment** and any **non-owned car** caused by any direct, sudden and accidental means other than **collision**, less any applicable deductibles, if Comprehensive Coverage is shown on **your Declarations Page**. Any deductible amount will apply separately to each loss. If loss to more than one **your insured car** or **non-owned car** results from the same insured loss, only the lowest applicable deductible will apply.

   If breakage of glass results, **you** may elect to have it treated as loss caused by **collision**.

2. **Coverage G - Collision Coverage**

   Subject to the limits of liability, **we** will pay for loss to **your insured car**, its **additional equipment** and any **non-owned car** caused by any direct, sudden and accidental **collision**, less any applicable deductibles, if Collision Coverage is shown on **your Declarations Page**. Any deductible amount will apply separately to each loss. If loss to more than one **your insured car** or **non-owned car** results from the same **collision**, only the lowest applicable deductible will apply.

   In addition, **we** will pay, without applying the deductible, the reasonable cost to replace any child safety seat damaged in an **accident** to which this coverage applies.

3. **Coverage H - Towing and Road Service Coverage**

   a. If **your Declarations Page** shows Towing and Road Service Coverage, then subject to a maximum limit of $150 for each disablement and subject to the Service Call Conditions and exceptions in this Insuring Agreement, if **your insured car** becomes disabled and **you** need help, **we** are providing **you** access to 24-hour toll-free assistance. Service includes the towing and labor costs related to a mechanical disablement for:

      (1) Towing;

      (2) Jump starts;

      (3) Tire changes;

      (4) Lock-out service; and

      (5) Fluid delivery, including the cost of fuel, oil, water or other fluids. **We** will pay for the cost of fuel, once per **your insured car** per policy period.

   b. Service Call Conditions are as follows:

      (1) Towing to dislodge the **car** from its place of disablement must be within 100 feet of a public street or highway;

      (2) Labor must be performed at the place of mechanical disablement;

      (3) **We** do not pay for the cost of fuel that exceeds more than once per **your insured car** per policy period;

      (4) **We** do not pay for the cost for tires, fuel, belts, keys, parts or tools associated with the service or labor being performed; and

      (5) Any service costs in an amount in excess of **our** maximum per disablement limit must be paid directly to the service provider by **you** at the time of service.

   c. Towing and Road Service Coverage does not apply to:

      (1) recreational vehicles,

      (2) motorhomes,

      (3) towed **cars**,

      (4) motorcycles, or

      (5) stored **cars**

      even if the **car** is considered to be **your insured car**.

B. **Additional Definitions Used in This Part Only**

1. **Actual Cash Value** means the fair and reasonable cash price for which property can be repaired or replaced in the marketplace at the time of loss. The price includes an allowance for depreciation, physical deterioration and obsolescence.

2. **Additional equipment** means any furnishing or **equipment** that is permanently attached to **your insured car** and common to its use, but is not the **car's** factory available furnishing or **equipment**.

   a. This includes, but is not limited to:

      (1) Any video, electronic sound reproducing or transmitting **equipment**, and its component parts, media and data, including but not limited to DVD, Game System or MP3 player;

      (2) Any painted, chrome or finished surface, whether refinished in whole or in part, of any **car** insured

## Personal Auto Policy (continued)

under this Part where the claim exceeds the cost of duplicating the **car's** factory applied surface finish;

(3) Tires, wheels, rims, spinners, grilles, louvers, side pipes, hood scoops or spoilers or any exterior surface, body or exhaust **equipment**, or modification thereto, which exceeds the cost of repairing or replacing the **car's** factory available **equipment**;

(4) Any engine, transmission or suspension parts, or modification thereto, which exceeds the cost of repairing or replacing the **car's** factory available **equipment**;

(5) GPS navigational systems;

(6) Special carpeting, insulation, wall paneling, furniture or bars;

(7) Facilities for cooking or sleeping including enclosures or bathroom facilities;

(8) Height-extending roofs; or

(9) Custom murals, paintings or other decals or graphics.

b. **Additional equipment** does not mean:

(1) **Additional equipment** not permanently installed that is designed for the reproduction of sound, or any radio receiving or radio receiving and transmitting **equipment**. This applies to such **equipment** as a tape player, tape recorder, citizens band radio and two-way mobile radio, telephone, television, or **equipment** designed or used for the detection or location of radar or laser. It also applies to any electronic device incorporating any of this **equipment**, as well as accessories, component parts and antennae;

(2) Tapes, discs, records, reels, cassettes, cartridges, media, data, carrying cases or other devices for the use with **equipment** designed to reproduce, record, receive, play or transmit audio, visual or data signals;

(3) A camper body or trailer;

(4) Awnings, cabanas, or **equipment** designed to create additional living facilities;

(5) Wear and tear losses to **additional equipment** including, but not limited to:

(a) scorching,

(b) marring,

(c) scratching, or

(d) breakage, except breakage to glass permanently attached to **your insured car** or breakage of internal **additional equipment**, whether attached or not; or

(6) Newly acquired **additional equipment** unless **you** report such items to **us** within thirty (30) days after **you** have taken delivery and **we** agree to provide coverage.

3. **Collision** means the upset of **your insured car** or **non-owned car** or its impact with another **car** or object. **Collision** does not mean loss caused by or due to:

a. Missiles;

b. Falling objects;

c. Fire;

d. Theft or larceny;

e. Explosion;

f. Earthquake;

g. Windstorm;

h. Hail, water or flood;

i. Malicious mischief or vandalism;

j. Riot or civil commotion;

k. Colliding with a bird or animal; or

l. Breakage of glass.

4. **Diminution in value** means the actual or perceived loss in market or resale value that results from a sudden, direct and accidental loss.

5. **Equipment** means **equipment** permanently attached to **your insured car** and common to its use.

6. **Household Pet** means a fully domesticated animal owned by **you** for personal companionship, such as a dog, a cat, a reptile, a bird or a rodent. **Household Pet** does not include any type of horse, cow, pig, sheep, goat, chicken, turkey, or captive fur-bearing animal, or any animal commonly kept for food or profit.

7. **Like kind and quality parts** means parts similar in type, condition and quality to those parts made for or by the original **car** manufacturer. These parts may be made for or by the original **car** manufacturer or may come from other sources such as manufacturers or suppliers of rebuilt parts, quality recycled (used) parts suppliers and non-original **equipment** manufacturers.

## Personal Auto Policy (continued)

C. **Supplementary Payments**

1. **Transportation Expense Due to Theft**

   If **your Declarations Page** shows Comprehensive Coverage, **we** will pay for transportation expenses incurred by **you** because of the total theft of **your insured car**. **We** will pay up to $30 per day, but no more than $900 each loss. This coverage begins 48 hours after the theft has been reported to **us** and to the police and ends when the **car** is returned to use or when **we** offer settlement for the loss.

2. **Clothing or Luggage**

   **We** will pay up to, but not more than, $200 for loss of clothing or luggage in **your insured car** and belonging to **you** or a **family member** if the loss is caused by:

   a. **Collision** of **your insured car**, if Collision Coverage is shown on **your Declarations Page**;

   b. Fire, lightning, flood, earthquake, explosion, falling aircraft, or the entire theft of **your insured car**; if loss occurs to **your insured car** from the same cause and Comprehensive Coverage is shown on **your Declarations Page**.

3. **Household Pets**

   a. If **your Household Pets** are inside **your insured car** during a total theft and Comprehensive Coverage is shown on **your Declarations Page** for that **your insured car**, **we** will pay reasonable amounts up to $600 for the loss of any and all such **Household Pets** because of that covered total theft loss.

   b. If **your Household Pets** are inside of **your insured car** at the time of a loss due to **collision**, and Collision Coverage is shown on **your Declarations Page** for that **your insured car**, **we** will pay reasonable amounts up to a total of $600 for the veterinary care, burial, and/or disposal of all such **Household Pets** arising out of their injury or death during an insured loss.

D. **Exclusions - What is Not Insured in Part IV**

   **We** do not insure loss:

1. Arising out of the ownership, maintenance or operation of **your insured car** or **non-owned car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

   a. Products;

   b. Documents;

   c. Newspapers; or

   d. Food.

   This exclusion does not apply to a share-the-expense car pool.

2. Caused by:

   a. war (declared or undeclared);

   b. civil war;

   c. insurrection;

   d. rebellion;

   e. revolution;

   f. nuclear radiation exposure or contamination;

   g. radioactive contamination or exposure;

   h. biological contamination, exposure or attack; or any consequence of any of these.

3. Caused by theft to **equipment** designed for the reproduction of sound, or any radio receiving or radio receiving and transmitting **equipment**.

   a. This applies to such **equipment** as a tape player, tape recorder, citizens band radio and two-way mobile radio, telephone, television, or **equipment** designed or used for the detection or location of radar or laser.

   b. It also applies to any electronic device incorporating any of this **equipment**, as well as accessories and antennas.

   c. This exclusion does not apply to that **equipment** which is permanently installed in **your insured car**.

4. Consisting of the theft of tapes, records, reels, cassettes, cartridges, discs, carrying cases or other devices for use with **equipment** designed for the reproduction of sound.

5. To a **utility trailer** owned by **you** or a **family member** and not listed on the **Declarations Page**. But, coverage does apply to a **utility trailer** ownership of which **you** acquire during the policy period if **you** ask **us** to insure it within thirty (30) days after **you** acquire it.

6. Due to and confined to:

   a. wear and tear;

   b. freezing; or

   c. mechanical or electrical breakdown or failure.

   This exclusion does not apply if damage results from the total theft of **your insured car** or the burning of wiring.

## Personal Auto Policy (continued)

7. To permanently attached or detachable camper body, slide-on camper, tonneau covers, or a camper shell.

8. To **your insured car** or **non-owned car** due to increased cost of repair or replacement of the following furnishings or equipment:

   a. Special carpeting, insulation, wall paneling, furniture or bars;

   b. Dining, kitchen and sleeping facilities including enclosures or bathroom facilities;

   c. Height-extending roofs;

   d. Murals, special paint and/or methods of painting, decals or graphics.

9. Due to lack of routine maintenance including but not limited to lack of lubricant, coolant, or loss resulting from seepage of water.

10. To any **non-owned car** being maintained or used by any person while employed or otherwise engaged in the **business** of:

    a. selling,

    b. repairing,

    c. servicing,

    d. storing, or

    e. parking

    **cars**. This includes the road testing and delivery of any **non-owned car**.

11. Resulting from an insured person participating in, or **your insured car** or **non-owned car** being used in racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

12. Caused by or consisting of mold, fungi or bacteria regardless of the factors causing or contributing to its growth.

13. Due to theft or conversion of **your insured car**:

    a. By **you**, a **family member** or any resident of **your** household;

    b. Prior to its delivery to **you** or a **family member**; or

    c. While in the care, custody or control of anyone engaged in the **business** of selling **cars**.

14. From theft or unlawful conversion by any person after custody of **your insured car** has been entrusted to

another party for the purpose of selling or leasing **your insured car**.

15. To tires, unless caused by fire, malicious mischief, vandalism, theft, or unless the damage occurs at the same time and from the same cause as other covered damage.

16. Caused intentionally by, or at the direction of, an insured person, whether or not such person intended to cause damage of any nature. However, this exclusion does not apply to a loss to **your insured car** to the extent of the legal interest of **you** or a **family member** who:

    a. Sustains the loss as the result of family violence by:

       (1) **You**,

       (2) A **family member**,

       (3) A former spouse or person who entered into a civil union with the **named insured**, or

       (4) Any person who resides in or has resided in **your** household;

    b. Did not direct, participate in, or consent to the intentional act causing the loss; and

    c. Filed a family violence complaint against the person who caused the violence resulting in the loss.

17. Due to destruction or confiscation by governmental or civil authorities.

18. To any **non-owned car** with less than four wheels.

19. To **Household Pets** that are injured or die from heat, dehydration, or exposure to weather or to other animals from any covered loss under Part IV.

20. To **car** parts and **equipment** that are illegal. There is also no coverage for parts and **equipment** that are installed at a location on the insured **car** that would make the use of such parts or **equipment** illegal. However, **we** will pay for the legal version of such parts or **equipment** if they are necessary for the safe operation of the insured **car**.

21. To **your insured car** or any **car** while that **car** is in a **Personal Car Sharing Program**, a **Commercial Ride-Sharing Program** or a similar arrangement. This exclusion does not apply to a share-the-expense car pool.

22. To **your insured car** due to **diminution in value**.

23. To **your insured car** while it is leased or rented to others.

E. **Additional Duties for Part IV - Damage to Your Car**

In addition to the terms and conditions of this policy a person seeking coverage under Part IV of this policy must also comply with the following provisions:

## Personal Auto Policy (continued)

1. Take reasonable steps after loss to protect **your insured car**, or any **non-owned car**, and its **equipment** from further loss. **We** will pay reasonable expenses incurred to do this.

2. Notify the police within 24 hours or as soon as practicable if **your insured car** or any **non-owned car** is stolen.

3. Permit **us** to inspect and appraise the damaged property before it is repaired or disposed of.

F. **Payment of Loss**

1. **We** will pay the loss in money, or repair or replace damaged or stolen property.

   a. **We** may, at any time before the loss is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **Declarations Page** with payment for the resulting damage.

   b. **We** may keep all or part of the property at the agreed or appraised value.

   c. If **we** pay for loss in money, **our** payment will include, where required by law, the applicable sales tax and fees for the damaged or stolen property.

2. **We** may settle any loss with **you**, the owner, or the lienholder of the property shown on the **Declarations Page**.

G. **Limits of Liability**

1. **Our** limits of liability for an insured loss to **your insured car**, **non-owned car** or its **equipment** will not exceed the cost that is necessary to repair or replace the damaged or stolen property or parts with **like kind and quality parts** less an adjustment for physical deterioration and depreciation. The limits are also subject to all other adjustments set forth in this section.

2. The cost to repair or replace will be calculated based on the lowest of:

   a. The **actual cash value** of the stolen or damaged property at the time of the loss, reduced by the applicable deductible; or

   b. The amount necessary to repair or replace the stolen or damaged property, reduced by the applicable deductible.

   Any amount payable by **us** to repair or replace damaged property or parts will be reduced by the cost of labor, parts, and materials to repair prior damage, deterioration and defects to the property or parts that had not been repaired prior to the loss.

3. The limits of liability shall be reduced by any amount of loss that has been paid under any other insurance that insured this same loss.

4. The most **we** will pay for

   a. Loss to a **utility trailer** not owned by **you** or a **family member** is $500;

   b. Loss to **additional equipment** is a total of $1,000 for repair or replacement for any one loss, unless indicated otherwise on the **Declarations Page**. Multiple items of **additional equipment** lost or damaged in the same event are considered to be one loss;

   c. Loss to **Household Pets** for any one insured loss is $600 regardless of how many **Household Pets** were stolen, injured or killed as a result of that insured loss.

5. **We** will pay reasonable and necessary storage costs for **your insured car**, its **equipment** and **additional equipment** following an insured loss.

6. If **you** purchased coverage for **additional equipment** that is identified on a Customization Report, **our** limits of liability for loss to that covered **additional equipment** shall be the lesser of:

   a. The amount of coverage shown on the Customization Report;

   b. The **actual cash value** of the stolen or damaged **additional equipment**; or

   c. The amount necessary to repair or replace that stolen or damaged **additional equipment**.

   The amount **you** receive will not include any reduction in the value of that **additional equipment** after it has been repaired, as compared to the value before it was damaged.

7. If repair or replacement results in better than **like kind and quality parts**, **we** will not pay for the amount of the betterment. Betterment for which **you** will be responsible includes the value relating to the increase in the useful life of replaced parts that have a limited useful life and the increase in value from the repair of the prior damage. Any deductions that **we** take for betterment will be taken only for parts or a specific repair process normally subject to repair or replacement during the useful life of **your insured car**. Deductions will be limited to an amount equal to the proportion that the expired life of the part or specific repair process to be repaired or replaced bears to the normal useful life of that part or repair process.

## Personal Auto Policy (continued)

8. If a loss to auto safety glass is repaired rather than replaced, the deductible applying to this coverage is waived. If the auto safety glass is replaced, the deductible applying to this coverage will remain in force.

9. Any payment **we** make will be reduced by the value of the salvage when **you** or the owner of the **car** retains the salvage.

10. No one will be entitled to duplicate payments for the same elements of loss.

11. Payments for loss covered under Part IV are subject to no more than one deductible for any one insured loss. If two or more deductibles apply to any one insured loss, only the lowest deductible will apply.

12. A **car** and attached **utility trailer** for which coverage is provided under this Part are considered one **your insured car**, and for any insured loss to such **car you** will only pay one applicable deductible.

### H. Preservation of Salvage

If **we** retain the salvage after a loss, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

### I. No Benefit to Bailee

This coverage shall not directly or indirectly benefit any carrier or other bailee for hire.

### J. Legal Action Against Us

No legal action related to this policy or the claims that **you** have presented may be brought against **us** under Part IV unless filed within two (2) years of the date of the **accident**.

### K. Other Insurance

If other insurance also insures the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable insurance, self-insurance, and/or protection limits or amounts regardless of source. However, any insurance **we** provide with respect to a **rental car**, **substitute car**, or non-owned **utility trailer** shall be excess over any other collectible insurance, self-insurance, and any other source of recovery applicable to the loss.

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance being provided under Part IV of this policy, the total amount payable among all such policies shall not exceed the limit of liability of the single policy providing the highest limit of liability.

### L. Appraisal

If **we** and **you** do not agree on the amount of loss, then **we** and **you** may agree to an appraisal of the loss. If **we** and **you** agree to an appraisal, each party will select a competent appraiser and notify the other party in writing of the appraiser's identity within thirty (30) days of the request for appraisal. The two appraisers will select an umpire. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A written decision agreed to by any two will be binding.

Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

**We** and **you** do not waive any of our rights under this policy by agreeing to an appraisal.

## Part V - Duties After an Accident and General Conditions

### A. Duties After an Accident

In addition to the terms and conditions of this policy, an insured person claiming any coverage under any Part of this policy must:

1. Upon **our** request at any time before or during the policy term, make any **car**, or **utility trailer** that **you** insure or intend to insure available for inspection by **us** to the extent permitted by law.

2. Refrain from voluntarily making any payment, assuming any obligation, or incurring any expenses except for bail bonds and first aid expenses for others.

3. Report all theft losses to the police within 24 hours or as soon as reasonably practicable.

4. As soon as reasonably practicable, inform **us** of any **accident** or loss and of all details, including the date and time it occurred, the location where it occurred, the facts and circumstances of the **accident**, the identity of persons involved, the license plate information of the **cars** involved, and injury and witness information.

5. Protect **your insured car** from further loss. **We** will pay reasonable expenses to guard against further loss. If **you** don't protect **your insured car**, further loss is not covered.

6. Cooperate with **us** and assist **us** in the investigation and settlement of any claim or defense of any claim or lawsuit. If **we** ask, that insured person must also help **us** obtain

## Personal Auto Policy (continued)

payment from anyone who may be jointly responsible for the **accident**.

7. Allow **us** to inspect and appraise the damaged property before it is repaired, destroyed or discarded.

8. Allow **us**, with **your** consent, to move **your insured car**, at **our** expense, to a storage facility of our choice. If **you** do not give **us** your consent, **we** will pay only the storage costs which would have resulted if **we** had moved **your insured car** to a storage facility of **our** choice.

9. Submit to statements and or examinations under oath as often as **we** reasonably require, separately and apart from others, and to sign the transcript.

10. Provide **us** with copies of any documents that **we** reasonably require at the time of the examination  under oath and any other time, and allow the copying of any documents **we** or **our** designated representative requests. This includes producing any documents that **we** identify as being reasonable and necessary to investigate and process **your** claims. Such documents must be provided to **us** or **our** designated representative in a timely manner, and if requested, prior to an examination under oath.

11. Authorize **us** to obtain:

    a. Medical reports and records;

    b. Any documents **we** indicate are necessary to investigate and process **your** claim; and

    c. Event data recorders and/or sensing and diagnostic modules or any other recording device for the purpose of retrieving data following an **accident** or loss.

12. Provide any written sworn proofs of loss **we** require, including all details **we** may need to determine the amounts payable.

13. Send or provide **us**, as soon as reasonably practicable, copies of all legal papers **you** receive relating to any claim or suit.

14. If Claiming Medical Expense Coverage under Part III, submit receipts or bills for these services no later than 60 days following treatment date.

B. **General Conditions**

1. **Policy Period and Territory**

   This policy applies only to **accidents** occurring during the policy period shown on the **Declarations Page** if the **accidents** occur within the United States, its territories or possession, Puerto Rico and Canada, or while **your insured car** is being shipped between their ports.

2. **Your Duty To Report Changed Circumstances**

   a. **Your** policy was issued in reliance on the information **you** provided **us** at time of application, including information concerning any **cars** and persons insured by the policy. **You** agree to cooperate with **us** in determining if the information **you** provided and upon which **we** relied to issue this policy is correct and complete. **You** agree by acceptance of this policy that all information shown on the **Declarations Page** of **your** policy and on the Application is accurate.

   b. **You** agree that if any information changes, is incorrect or incomplete, **you** will notify **us** as soon as reasonably practicable to change it. If **we** determine any information is incorrect or incomplete, **we** may change it. Based upon any new information **you** report or **we** may discover **we** may adjust **your** coverage and premium accordingly during the policy period. Any recalculation by **us** of **your** premium, or any changes **we** make to **your** coverage, based on new information acquired, will be made using the rules, rates and forms used in **your** state as of the date of the change.

   c. Some of the types of information **you** must notify **us** about include but are not limited to:

      (1) A change of **your** mailing address or the principal garaging of any **your insured car**;

      (2) New drivers residing in **your** household;

      (3) Any persons who become new regular users of **your insured car(s)**;

      (4) **You** or any **family member** obtains a driver's license or operator's permit;

      (5) Changes in the use of **your insured cars**; or

      (6) Changes in **your** discount eligibility.

3. **Coverage Changes**

   When **we** broaden coverage during the policy period without charge, the policy will automatically provide the broadened coverage when effective in **your** state. **We** may make other changes or replace this policy, to conform to coverage currently in use at the next policy period.

4. **Legal Action Against Us**

   No legal action may be brought against **us** until there has been full compliance with all the terms and conditions of this policy. No person or organization has any right under this policy to bring **us** into any action brought to determine the liability of an insured person.

farmers.com

## Personal Auto Policy (continued)

5. **Transfer of Your Interest**

Interest in this policy may not be assigned without **our** written consent. But, if the **named insured** on the **Declarations Page** dies, the policy will insure, until the end of the policy period:

a. Any **family member**;

b. The legal representative of the deceased **named insured** while acting within the scope of duties of a legal representative; or

c. Any person having proper custody of **your insured car** until a legal representative is appointed.

6. **Our Right to Recover Payment**

a. If **we** make a payment under this policy and the person to or for whom payment was made has a right to recover **damages** from another **we** shall be subrogated to that right. That person shall do:

(1) whatever is necessary to enable **us** to exercise **our** rights, and

(2) nothing after loss to prejudice **our** rights.

However, **our** rights in this paragraph do not apply under Part IV, against any person using **your insured car** with a reasonable belief that the person is entitled to do so.

b. If **we** make a payment under this policy and the person to or for whom payment is made recovers **damages** from another, that person shall:

(1) hold in trust for **us** the proceeds of the recovery; and

(2) reimburse **us** to the extent of **our** payment.

c. If **we** exercise **our** right to recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy. **We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** reserve the right to reduce reimbursement of the deductible by the proportion that the amount **we** recover bears to the total amount of **our** subrogated claim. **We** will also reduce reimbursement of the deductible by the proportionate share of the collection expenses including attorney fees incurred with **our** recovery efforts. **We** will not recover the deductible if **you** instruct **us** not to.

7. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any insured person.

8. **Termination**

a. **Cancellation**

This policy may be cancelled during the policy period as follows:

(1) The **named insured** shown on **your Declarations Page** may cancel by:

(a) Returning this policy to **us** or the **named insured's** agent; or

(b) Giving **us** or the **named insured's** agent advance notice of the date cancellation is to take effect.

(2) **We** may cancel this policy for any reason if the notice is mailed within the first 69 days of the initial policy period.

(3) After this policy is in effect for 69 days, or if this is a renewal or continuation policy, **we** may cancel only for the following reasons:

(a) Failure to pay a premium when due;

(b) Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

(c) Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

(d) Discovery of:

(1) An act or omission; or

(2) A violation of any condition of the policy, which occurred after the first effective date of the current policy and substantially and materially increases the hazard insured against;

(e) A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(f) A determination by the Commissioner that continuation of the insurer's present volume

## Personal Auto Policy (continued)

of premiums would jeopardize the insurer's solvency or be hazardous to the interests of policyholders of the insurer, its creditors or the public; or

(g) A determination by the Commissioner that the continuation of the policy would violate, or place the insurer in violation of, any provision of the Code.

b. **Nonrenewal**

If **we** decide not to renew or continue this policy, **we** will mail notice to **you** at the address shown in **our** records. Notice will be mailed at least 30 days before the end of the policy period.

c. **Automatic Termination**

(1) If **we** offer to renew or continue this policy and **you** or **your** representatives do not accept, this policy will automatically terminate at the end of the current policy period.

(2) Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

(3) If **you** obtain other insurance on **your insured car**, any similar insurance provided by this policy will terminate as to **your insured car** on the effective date of the other insurance.

(4) If **your insured car** is sold or transferred to someone other than **you** or a **family member**, any insurance provided by this policy will terminate as to that **your insured car** on the effective date of the sale or transfer.

d. **Reduction of Coverage**

**We** may reduce coverage limits, increase any deductible, or increase the premium rate of all or any portion of the policy at the time of renewal. **We** will provide **you** the offer to renew with these altered terms at least 30 days prior to renewal. **You** shall have 30 days from the date **you** receive notice of the altered terms of the policy to cancel the policy. If **you** elect to cancel under these circumstances, **we** will refund the pro rata premium of the unexpired portion of the new term.

e. **Other Termination Provisions**

(1) The effective date and time of cancellation stated in the notice shall become the end of the policy period.

(2) Any cancellation will be effective for all coverages for all persons and **cars** insured under this policy.

(3) If this policy is canceled, **you** may be entitled to a premium refund. If **we** cancel the policy, any refund due will be computed on a daily pro rata basis. If **you** cancel the policy, any refund due will be computed in accordance with the customary short rate table and procedure, except as provided for in subsection (d).

(4) **Our** making or offering to make a refund is not a condition of cancellation.

9. **Misrepresentation or Fraud**

a. This policy was issued in reliance on the information provided on **your** insurance application, including, but not limited to information regarding the license and driving history of **you**; **family members**; all persons of driving age residing in **your** household; the description of the **cars** to be insured; the location of the principal place of garaging; and **your** place of residence.

b. **We** may void this policy if **you** or any insured person have engaged in fraudulent conduct or have concealed, omitted, or misrepresented any material fact or circumstance concerning the application, issuance, renewal or continuation of this policy.

c. **We** may void this policy or deny coverage for an **accident** if **you** or any insured person have concealed, omitted or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

d. Each and every statement of fact made by any insured person in the application or any subsequent application for insurance or renewal, which is made part hereof, is agreed to be material.

e. **We** may void this policy for fraud or misrepresentation even after the occurrence of an **accident**. This means that **we** will not be liable for any claims or **damages** that would otherwise be covered, except to the extent **we** are required to provide coverage under this state's minimum Financial Responsibility laws.

f. If **we** void this policy, it will be void from its inception (void ab initio), and no coverage will be provided whatsoever.

## Personal Auto Policy (continued)

g. To the extent that **we** make payments to **you** under this policy and **our** subsequent investigation reveals **your** involvement in fraud or misrepresentation in the presentation of a claim, **you** must indemnify **us** for all payments made.

10. **Terms Conformed to Statutes**

a. This policy shall be deemed amended to conform to the statutes of the state listed in **your** application if any provision fails to conform to such statutes. Any dispute as to coverages or the provisions of this policy shall be determined and governed by the law of the state listed in **your** application as **your** residence.

b. Policy terms, which conflict with the laws of the state in which this policy issued, are hereby amended to conform to such laws.

11. **Proof of Mailing**

**We** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

12. **Membership Fee**

A Membership Fee applies to this policy, if set forth on the **Declarations Page**. The fees are fully earned and are not refundable, unless required by state law. However, if **we** cancel **your** policy during the initial policy period, membership fees will be refunded to **you** in full.

13. **Additional Benefits and Services**

**We** may work with independent merchants to try to provide **you** with the best possible value for services and replacement of **your** property. If **we** are able to negotiate any benefits or discounts with these merchants, **we** may extend those benefits to **you** by advising **you** of their availability. **You** will have to contact any identified merchants yourself and deal directly with them. **We** would never provide any information about **you** to them. **You** are under no obligation to ever contact any of the merchants. **We** are not obligated to expand or continue to make available any such benefits.

14. **Policy Notices**

**We** may mail or, unless prohibited by law, deliver policy notices to **you**. If a lienholder is named in this policy, any notices **we** give to the lienholder may be mailed or delivered. When mailed, the United States Postal Service or its licensed agents or vendors may forward such notices to an updated address per any change of address that **you** have presented to or filed with the United States Postal Service. In addition, **we** may update **our** policy records

to reflect this updated address and/or **we** may address future policy notices to this updated address. Except where prohibited by law, a policy notice under this Policy Notices condition will be deemed "mailed" or "delivered" if it is delivered by electronic transmittal or facsimile.

15. **Payment**

At the policy's inception, if **you** make a premium payment using a nonnegotiable instrument such as a check or debit card with insufficient funds, the policy is null and void and is not subject to the Cancellation provisions of the policy. If **you** make a premium payment for a renewal of **your** policy using a nonnegotiable instrument, **our** offer of policy renewal is deemed rejected by **you** and the policy terminated without renewal.

16. **Joint and Individual Interests**

If there is more than one **named insured** on this policy, any **named insured** may cancel or change this policy. The action of one **named insured** will be binding on all persons provided coverage under this policy.

17. **Loss Payable Provisions**

a. It is agreed that at **our** option, any payment for damage to the **car** listed in this policy shall be paid as interest may appear to the **named insured** and the lienholder shown on the **Declarations Page**, or through the repair of the damaged **car**.

(1) When **we** provide payment to the lienholder, the payment will be the lowest of the actual cash value of **your insured car** or the existing loan balance, whichever is less.

(2) Any change in title or ownership of the **car**, or error in its description shall not void coverage afforded to the lienholder.

b. The policy does not insure **you** or any lienholder for **damages** due to:

(1) conversion;

(2) embezzlement;

(3) secretion;

(4) fraudulent acts;

(5) material misrepresentation or omission; or

(6) intentional damages

by **you**, any **family member** or anyone acting under the direction of either of you.

c. When a payment is made to the lienholder, **we** are entitled to all the rights of the lienholder to the extent of such payment.

## Personal Auto Policy (continued)

(1) The lienholder shall do whatever is necessary to secure such rights.

(2) No subrogation shall impair the right of the lienholder to recover the full amount of its claim.

d. **We** reserve the right to cancel this policy at any time as provided by its terms.

(1) In case of cancellation or lapse **we** will give notice to the lienholder as required under the law.

(2) Cancellation will terminate the policy and this agreement as to any interest of the lienholder.

18. **Limited Material Damage Coverage in Mexico**

WARNING - LIMITED COVERAGE IN MEXICO - READ THIS WARNING CAREFULLY

A. **Car accidents** in Mexico are subject to the laws of Mexico only - NOT the United States of America.

1. With respect to **car accidents**, the laws of the United States and of Mexico are different. For example, in Mexico all **car accidents** are a criminal matter. In the United States, most **car accidents** are only a civil matter. If **you** do not have valid Mexican automobile liability insurance and **you** have an **accident**, **you** may spend time in a Mexican jail or have **your car** impounded.

2. This policy does not provide liability insurance in Mexico. **You** only have coverage for material damage to **your insured car**. It does not provide valid automobile liability coverage in Mexico. **You** should purchase valid automobile liability coverage from a licensed Mexican insurance company before driving into Mexico.

B. **Limited Mexico Coverage**

1. If **your insured car** includes Coverage F - Comprehensive Coverage and Coverage G - Collision Coverage as shown on the **Declarations Page**, then Coverage F and Coverage G are extended on a limited basis when **your insured car** is within Mexico.

2. This limited coverage applies only when:

a. The loss occurs while **your insured car** is within 50 miles of the United States border;

b. **Your insured car** is in Mexico for infrequent trips that do not exceed five (5) consecutive days at any one time, and do not exceed twenty-three (23) days in any calendar month;

c. **Your insured car** is garaged only in the United States;

d. **Your insured car** is maintained, operated, driven or used in Mexico only by **you** or a **family member** who lives in the United States; and

e. **Your insured car** is returned to the United States after a loss for **our** inspection. Any cost for towing and transportation that is required to return **your insured car** to the United States for **our** inspection, or for salvage operations of the **car** while within Mexican territory, are not covered under this policy.

The insurance provided by this provision will be excess over any other collectible insurance.

19. **Car Sharing**

**You** must disclose in writing to **us your** participation as either a driver or **car** owner, in any **Personal Car Sharing Program**, **Commercial Ride-Sharing Program** or other similar arrangement. Failure to do so may result in the rescission, cancellation or nonrenewal of **your** policy. This duty does not apply to a share-the-expense car pool.

## Reciprocal Provisions - Farmers Insurance Exchange

This policy is made and issued in consideration of **your** premium payment to **us**. It is also issued in consideration of the information **you** gave to **us** during the application process, some of which is set out on the **Declarations Page**, and in consideration of the Subscription Agreement, which is provided to **you** and incorporated herein by reference. **You** acknowledge that **you** have read, understood and agree to all the terms and conditions of the Subscription Agreement. Among other things, the Subscription Agreement appoints **your** Attorney-in-Fact, authorizes **your** Attorney-in-Fact to execute interinsurance policies between **you** and other subscribers and to perform various functions, and addresses compensation of the Attorney-in-Fact. Membership fees which **you** pay as a subscriber are not part of the premium and are not returnable.

We hold the Annual Meeting of the members of the Farmers Insurance Exchange at our Home Office at Los Angeles, California, on the first Monday following the 15th day of March of each year at 2:00 p.m. The Board of Governors may elect to change the time and place of the meeting. If they do so, **you** will be mailed a written or printed notice at **your** last known address

# Personal Auto Policy (continued)

at least ten (10) days before such time. Otherwise, no notice will be sent to **you**.

The Board of Governors shall be chosen by subscribers from among yourselves. This will take place at the Annual Meeting or at any special meeting which is held for that purpose. The Board of Governors shall have full power and authority to establish such rules and regulations for our management as are not inconsistent with the Subscription Agreement.

Your premium for this policy and all payment made for its continuance shall be payable to **us** at **our** Home Office or such location named by **us** in **your** premium notice.

This policy is non-assessable.

## *Special Provisions*

The Company named on the **Declarations Page** has caused this policy to be signed by the officers shown below.

*Secretary*

*Vice President*

# EXHIBIT 3



Please read the policy carefully. If there is
an accident, contact your State Farm agent
or one of our Claim Offices at once. (See
"INSURED'S DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Nevada**
Policy Form 9828A

# CONTENTS

**THIS POLICY** ............................................... 3

**DEFINITIONS** ............................................... 4

**LIABILITY COVERAGE** ................................. 5

Additional Definition ......................................... 5

Insuring Agreement ............................................ 6

Supplementary Payments .................................... 6

Limits ................................................................. 6

Nonduplication .................................................. 7

Exclusions ........................................................ 7

If Other Liability Coverage Applies ................... 8

Required Out-of-State Liability Coverage ........ 9

Financial Responsibility Certification .............. 9

**MEDICAL PAYMENTS COVERAGE** ............ 9

Additional Definitions ...................................... 9

Insuring Agreement ........................................ 10

Determining Medical Expenses ....................... 10

Limit ............................................................... 10

Exclusions ...................................................... 10

If Other Medical Payments Coverage or Similar Vehicle Insurance Applies .................. 11

Our Payment Options ...................................... 12

**UNINSURED MOTOR VEHICLE COVERAGE** ................................................... 12

Additional Definitions .................................... 12

Insuring Agreement ........................................ 13

Consent to Settlement .................................... 13

Deciding Fault and Amount ............................ 13

Limits ............................................................. 13

Nonduplication ............................................... 14

Exclusions ...................................................... 14

If Other Uninsured Motor Vehicle Coverage Applies ........................................... 15

Our Payment Options ...................................... 15

**PHYSICAL DAMAGE COVERAGES** .......... 15

Additional Definitions .................................... 16

Insuring Agreements ....................................... 16

Supplementary Payments – Comprehensive Coverage and Collision Coverage .................. 17

Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage .................. 18

Limits – Car Rental and Travel Expenses Coverage ........................................................ 19

Nonduplication ............................................... 19

Exclusions ...................................................... 19

If Other Physical Damage Coverage or Similar Coverage Applies ............................... 21

Financed Vehicle ............................................ 21

Our Payment Options ...................................... 21

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ................... 22

Additional Definition ...................................... 22

Insuring Agreement ........................................ 22

Benefit ............................................................ 22

Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage .......................................... 23

Our Payment Options– Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage .......................................... 24

**LOSS OF EARNINGS COVERAGE** ............ 23

Additional Definitions .................................... 23

Insuring Agreement ........................................ 23

Limit ............................................................... 23

Exclusions– Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage .......................................... 23

Our Payment Options – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage .......................................... 24

**INSURED'S DUTIES** ................................... 24

Notice to Us of an Accident or Loss ............... 24

Notice to Us of a Claim or Lawsuit ................ 24

Insured's Duty to Cooperate With Us ............. 24

Questioning Under Oath ................................. 24

Other Duties Under the Physical Damage Coverages ....................................... 24

Other Duties Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage .......................................... 25

**GENERAL TERMS** .......................................... 25

    When Coverage Applies ................................. 25

    Where Coverage Applies ................................ 25

    Newly Owned or Newly Leased Car .............. 26

    Changes to This Policy ................................... 26

    Premium ......................................................... 26

    Renewal ......................................................... 27

    Nonrenewal .................................................... 27

Cancellation ..................................................... 27

Assignment ...................................................... 27

Bankruptcy or Insolvency of the Insured ........ 28

Concealment or Fraud ...................................... 28

Our Right to Recover Our Payments ............... 28

Legal Action Against Us ................................... 28

Choice of Law .................................................. 29

Severability ..................................................... 29

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds and applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in EXCEPTIONS, POLICY BOOKLET, AND ENDORSEMENTS on the Declarations Page, in reliance on the following statements:

      (1) The named insured is the sole owner of *your car*.

   (2) Neither *you* nor any member of *your* household has, within the past three years, had:

      (a) vehicle insurance canceled or nonrenewed by an insurer; or

      (b) either:

         (i) a license to drive; or

         (ii) a vehicle registration

         suspended, revoked, or refused.

   (3) *Your car* is used for pleasure and business.

4. All named insureds and applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by the named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the *State Farm Companies*, subject to their applicable eligibility rules.

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

   a. Mycotoxins;

   b. Spores;

   c. Scents; or

   d. Byproducts.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date *newly acquired car* is delivered to *you*.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:

   a. *you*;

   b. any *resident relative*;

   c. any other *person* who resides primarily in *your* household; or

   d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

   a. *you*; or

   b. any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. that is not used for:

      (1) wholesale; or

      (2) retail

      pick up or delivery; and

   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

4
9828A

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a **person** described in 1. above.

**State Farm Companies** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

**Temporary Substitute Car** means a **car** that is in the lawful possession of the **person** operating it and that:

1. replaces **your car** for a short time while **your car** is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither **you** nor the **person** operating it own or have registered.

If a **car** qualifies as both a **non-owned car** and a **temporary substitute car**, then it is considered a **temporary substitute car** only.

**Trailer** means:

1. only those trailers:

   a. designed to be pulled by a **private passenger car**;

   b. not designed to carry **persons**; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a **car**.

**Us** means the Company issuing this policy as shown on the Declarations Page.

**We** means the Company issuing this policy as shown on the Declarations Page.

**You** or **Your** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a **person**, then "**you**" or "**your**" includes the spouse of the first **person** shown as a named insured if the spouse resides primarily with that named insured.

**Your Car** means the vehicle shown under YOUR CAR on the Declarations Page. **Your Car** does not include a vehicle that **you** no longer own or lease.

If a **car** is shown on the Declarations Page under YOUR CAR, and **you** ask **us** to replace it with a **car** newly **owned by you**, then the **car** being replaced will continue to be considered **your car** until the earliest of:

1. the end of the 30th calendar day immediately following the date the **car** newly **owned by you** is delivered to **you**;

2. the date this policy is no longer in force; or

3. the date **you** no longer own or lease the **car** being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

**Insured** means:

1. **you** and **resident relatives** for:

   a. the ownership, maintenance, or use of:

      (1) **your car**;

      (2) a **newly acquired car**; or

      (3) a **trailer**; and

   b. the maintenance or use of:

      (1) a **non-owned car**; or

      (2) a **temporary substitute car**;

2. the first **person** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a **car** that is **owned by**, or furnished by an employer to, a **person** who resides primarily in **your** household, but only if such **car** is neither **owned by**, nor furnished by an employer to, the first **person** shown as a named insured on the Declarations Page or that **person's** spouse;

3. any other **person** for his or her use of:

   a. **your car**;

b. a ***newly acquired car***;

c. a ***temporary substitute car***; or

d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

Such vehicle must be used within the scope of ***your*** consent; and

4. any other ***person*** or organization vicariously liable for the use of a vehicle by an ***insured*** as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither ***owned by***, nor hired by, that other ***person*** or organization.

***Insured*** does not include the United States of America or any of its agencies.

### Insuring Agreement

1. ***We*** will pay:

   a. damages an ***insured*** becomes legally liable to pay because of:

      (1) ***bodily injury*** to others; and

      (2) damage to property

      caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy;

   b. attorney fees for attorneys chosen by ***us*** to defend an ***insured*** who is sued for such damages; and

   c. court costs charged to an ***insured*** and resulting from that part of a lawsuit:

      (1) that seeks damages payable under this policy's Liability Coverage; and

      (2) against which ***we*** defend an ***insured*** with attorneys chosen by ***us***.

   ***We*** have no duty to pay attorney fees and court costs incurred after ***we*** deposit in court or pay the amount due under this policy's Liability Coverage.

2. ***We*** have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an ***insured*** in any claim or lawsuit, with attorneys chosen by ***us***; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

### Supplementary Payments

***We*** will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above, the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the ***insured*** that accrues:

   a. before a judgment, where owed by law, but only on that part of the judgment ***we*** pay; and

   b. after a judgment. ***We*** will not pay interest on damages paid or payable by a party other than the ***insured*** or ***us***.

   ***We*** have no duty to pay interest that accrues after ***we*** deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by ***us***, required to appeal a decision in a lawsuit against an ***insured***. ***We*** have no duty to:

   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after ***we*** deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an ***insured***:

   a. Loss of wages or salary, but not other income, up to $200 for each day an ***insured*** attends, at ***our*** request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an ***insured*** at ***our*** request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an ***insured*** must be reported to ***us*** before ***we*** will pay such incurred costs or expenses.

### Limits

The Liability Coverage limits for ***bodily injury*** are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most ***we*** will pay for all damages resulting from ***bodily injury*** to any one ***person*** injured in any one accident, including all damages sustained by other ***persons*** as a result of that ***bodily injury***. The limit shown under "Each Accident" is the most ***we*** will pay, subject to the limit for "Each Person", for all damages resulting from ***bodily injury*** to two or more ***persons*** injured in the same accident.

6
9828A

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or
2. that have already been paid under Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;
2. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
3. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;
4. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;
7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer*;
8. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;
9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;
10. FOR DAMAGE TO PROPERTY WHILE IT IS:
    a. *OWNED BY*;
    b. RENTED TO;
    c. USED BY;
    d. IN THE CARE OF; OR
    e. TRANSPORTED BY

    *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an *insured* or damage to a private garage while rented to or leased to an *insured*;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

13. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

   a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILLCLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.

   This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving;

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* apply to the same accident, then:

   a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it, and for the use of a *temporary substitute car*, which is loaned by a garageman engaged in the business of repairing or servicing motor vehicles.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

   b. If:

      (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada,

and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

***Insured*** means:

1. ***you*** and ***resident relatives***:
   a. while ***occupying***:
      (1) ***your car***;
      (2) a ***newly acquired car***;
      (3) a ***temporary substitute car***;
      (4) a ***non-owned car***; or
      (5) a ***trailer*** while attached to a ***car*** described in (1), (2), (3), or (4) above; or
   b. if struck as a ***pedestrian*** by a motor vehicle or any type of trailer; and

2. any other ***person*** while ***occupying***:
   a. ***your car***;
   b. a ***newly acquired car***;
   c. a ***temporary substitute car***; or
   d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

   Such vehicle must be used within the scope of ***your*** consent.

***Medical Expenses*** mean ***reasonable expenses*** for ***medical services***.

***Medical Services*** mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the ***bodily injury***;

2. rendered by a healthcare provider:
   a. who is licensed as a healthcare provider if a license is required by law; and
   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the ***bodily injury***;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

***Reasonable Expenses*** mean the lowest one of the following charges:

1. The usual fees charged by a majority of healthcare providers who provide similar ***medical services*** in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:
   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where ***medical services*** are provided; and

9
9828A

b. as prescribed or authorized by the law of the state where *medical services* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and *us*; or

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident. *We* will only pay such *medical expenses*:

   a. if any of the *medical services* are provided within one year immediately following the date of the accident; and

   b. for *medical services* provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person".

SUBJECT TO **IF OTHER MEDICAL PAYMENTS COVERAGE OR SIMILAR VEHICLE INSURANCE APPLIES,** THIS LIMIT IS THE MOST *WE* WILL PAY FROM THIS POLICY FOR THE *MEDICAL EXPENSES* AND FUNERAL EXPENSES COMBINED, INCURRED BY OR ON BEHALF OF ANY ONE *INSURED* AS A RESULT OF ANY ONE ACCIDENT, REGARDLESS OF THE NUMBER OF:

1. POLICIES;

2. *INSUREDS*;

3. CLAIMS MADE;

4. *CARS* OR MOTOR VEHICLES INSURED; OR

5. *CARS* OR MOTOR VEHICLES INVOLVED IN THE ACCIDENT.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A *CAR* OR MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*. This exclusion applies whether or not the required benefit has been reimbursed to the payer in whole or in part by or on behalf of the injured *person*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*; or

   b. any *resident relative*

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY ANY MOTOR VEHICLE OR ANY TYPE OF TRAILER THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY ANY MOTOR VEHICLE OR ANY TYPE OF TRAILER THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR

14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.

       This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. IF MEDICAL PAYMENTS COVERAGE PROVIDED BY THIS POLICY AND ONE OR MORE OTHER VEHICLE POLICIES ISSUED TO *YOU* OR ANY *RESIDENT RELATIVE* BY ONE OR MORE OF THE *STATE FARM COMPANIES* APPLY TO THE SAME *BODILY INJURY*, THEN:

   a. THE MEDICAL PAYMENTS COVERAGE LIMITS OF SUCH POLICIES SHALL NOT BE ADDED TOGETHER (NOT STACKED) TO DETERMINE THE MOST THAT MAY BE PAID; AND

   b. THE MOST *WE* WILL PAY IF AN *INSURED* SUSTAINS *BODILY INJURY* IN AN ACCIDENT WHILE *OCCUPYING*:

      (1) *YOUR CAR*, IS THE MEDICAL PAYMENTS COVERAGE LIMIT SHOWN ON THE DECLARATIONS PAGE OF THIS POLICY; OR

      (2) A *CAR* OTHER THAN *YOUR CAR* OR WHILE A *PEDESTRIAN*, IS THE MEDICAL PAYMENTS COVERAGE LIMIT WHICH *YOU* HAVE ON ANY ONE *CAR* OR MOTOR VEHICLE OWNED BY *YOU*. *WE* WILL MAKE PAYMENT FROM THE POLICY WHICH PROVIDES THE HIGHEST MEDICAL PAYMENTS COVERAGE LIMITS.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car* or a *trailer* attached to it.

   IF MEDICAL PAYMENTS COVERAGE OR OTHER SIMILAR VEHICLE INSURANCE PROVIDED BY ONE OR MORE SOURCES OTHER THAN THE *STATE FARM COMPANIES* ALSO APPLIES AS PRIMARY COVERAGE, THEN *WE* WILL PAY THE PROPORTION OF *MEDICAL EXPENSES* AND FUNERAL EXPENSES PAYABLE AS PRIMARY THAT *OUR* APPLICABLE LIMIT BEARS TO THE SUM OF *OUR* APPLICABLE LIMIT AND THE LIMITS OF ALL OTHER MEDICAL PAYMENTS COVERAGE OR SIMILAR VEHICLE INSURANCE THAT APPLY AS PRIMARY.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

   IF MEDICAL PAYMENTS COVERAGE OR OTHER SIMILAR VEHICLE INSURANCE PROVIDED BY ONE OR MORE SOURCES OTHER THAN THE *STATE FARM COMPANIES* ALSO APPLIES AS EXCESS COVERAGE, THEN *WE* WILL PAY THE PROPORTION OF *MEDICAL EXPENSES* AND FUNERAL EXPENSES PAYABLE AS

11
9828A

EXCESS THAT *OUR* APPLICABLE *LIMIT* BEARS TO THE SUM OF *OUR* APPLICABLE LIMIT AND THE LIMITS OF ALL OTHER MEDICAL PAYMENTS COVERAGE OR SIMILAR VEHICLE INSURANCE THAT APPLY AS EXCESS COVERAGE.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;
2. The *insured's* surviving spouse;
3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;
4. A *person* authorized by law to receive such payment; or
5. Any *person* or organization that provides the *medical services* or funeral services.

## UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;
2. *resident relatives*;
3. any other *person* while *occupying*:
   a. *your car*;
   b. a *newly acquired car*; or
   c. a *temporary substitute car*.

   Such vehicle must be used within the scope of *your* consent. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is:
   a. not insured or bonded for bodily injury liability at the time of the accident; or
   b. insured or bonded for bodily injury liability at the time of the accident; but
      (1) the limits are less than required by the Nevada Motor Vehicle Safety Responsibility Act; or
      (2) the insuring company:
         (a) denies that its policy provides liability coverage for compensatory damages that result from the accident; or
         (b) is or becomes insolvent;

2. the owner and driver of which remain unknown and which strikes:
   a. the *insured*; or
   b. the vehicle the *insured* is *occupying*,

   and causes *bodily injury* to the *insured*; or

3. an *underinsured motor vehicle*.

*Uninsured Motor Vehicle* that is not an *underinsured motor vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;
2. *owned by*, rented to, or furnished or available for the regular use of *you* or any *resident relative*;
3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;
4. *owned by* or rented to any government or any of its political subdivisions or agencies;
5. designed for use primarily off public roads except while on public roads; or
6. while located for use as a dwelling or other premises.

*Underinsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, or use of which is either:
   a. insured or bonded for bodily injury liability at the time of the accident; or
   b. self-insured under any motor vehicle financial responsibility law, a motor carrier law, or any similar law; and
2. for which the total limits of insurance or self-insurance for bodily injury liability from all sources is less than the amount needed to compensate the *insured* for the compensatory damages the *insured* is legally entitled to collect from the owner or operator of the other vehicle.

12
9828A

***Underinsured Motor Vehicle*** does not include a land motor vehicle:

1. insured under Liability Coverage of this policy;

2. ***owned by***, rented to, or furnished or available for the regular use of ***you*** or any ***resident relative***;

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. defined as an ***uninsured motor vehicle*** in 1. and 2. under "***Uninsured Motor Vehicle*** means:".

**Insuring Agreement**

***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***. The ***bodily injury*** must be:

1. sustained by an ***insured***; and

2. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle*** as a motor vehicle.

**Consent to Settlement**

The ***insured*** must inform ***us*** of a settlement offer, if any, proposed by or on behalf of the owner or driver of the ***uninsured motor vehicle***, and the ***insured*** must request ***our*** written consent to accept such settlement offer.

If ***we***:

1. consent in writing, then the ***insured*** may accept such settlement offer.

2. inform the ***insured*** in writing that ***we*** do not consent, then the ***insured*** may not accept such settlement offer and:

   a. ***we*** will make payment to the ***insured*** in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the ***uninsured motor vehicle***; and

   b. any recovery from or on behalf of the owner or driver of the ***uninsured motor vehicle*** shall first be used to repay ***us***.

**Deciding Fault and Amount**

1. a. The ***insured*** and ***we*** must agree to the answers to the following two questions:

   (1) Is the ***insured*** legally entitled to recover compensatory damages from the owner or driver of the ***uninsured motor vehicle***?

   (2) If the ***insured*** and ***we*** agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the ***insured*** is legally entitled to recover from the owner or driver of the ***uninsured motor vehicle***?

   b. If there is no agreement on the answer to either question in 1.a. above, then:

   (1) if the amount in issue does not exceed $50,000, the ***insured*** shall submit the disagreement to nonbinding arbitration in accordance with the provisions of NRS 38.250 through NRS 38.259; or

   (2) if the amount in issue exceeds $50,000 or if there is no agreement after submission to nonbinding arbitration, the ***insured*** shall:

      (a) file a lawsuit, in a state or federal court that has jurisdiction, against:

         (i) ***us***;

         (ii) the owner and driver of the ***uninsured motor vehicle*** unless ***we*** have consented to a settlement offer proposed by or on behalf of such owner or driver; and

         (iii) any other party or parties who may be legally liable for the ***insured's*** damages;

      (b) consent to a jury trial if requested by ***us***;

      (c) agree that ***we*** may contest the issues of liability and the amount of damages; and

      (d) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. ***We*** are not bound by any:

   a. judgment obtained without ***our*** written consent; and

   b. default judgment against any ***person*** or organization other than ***us***.

3. Regardless of the amount of any award, including any judgment or default judgment, ***we*** are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Limits**

1. The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

SUBJECT TO **IF OTHER UNINSURED MOTOR VEHICLE COVERAGE APPLIES,** THE LIMIT SHOWN UNDER "EACH PERSON" IS THE MOST *WE* WILL PAY FROM THIS POLICY FOR ALL DAMAGES RESULTING FROM *BODILY INJURY* TO ANY ONE *INSURED* INJURED IN ANY ONE ACCIDENT, INCLUDING ALL DAMAGES SUSTAINED BY OTHER *INSUREDS* AS A RESULT OF THAT *BODILY INJURY*. THE LIMIT SHOWN UNDER "EACH ACCIDENT" IS THE MOST *WE* WILL PAY FROM THIS POLICY, SUBJECT TO THE LIMIT FOR "EACH PERSON", FOR ALL DAMAGES RESULTING FROM *BODILY INJURY* TO TWO OR MORE *INSUREDS* INJURED IN THE SAME ACCIDENT.

2. THESE UNINSURED MOTOR VEHICLE COVERAGE LIMITS ARE THE MOST *WE* WILL PAY REGARDLESS OF THE NUMBER OF:

   a. POLICIES;

   b. *INSUREDS*;

   c. CLAIMS MADE;

   d. *CARS* OR MOTOR VEHICLES INSURED; OR

   e. *CARS* OR MOTOR VEHICLES INVOLVED IN THE ACCIDENT.

3. Any amount payable under Uninsured Motor Vehicle Coverage will be reduced by amounts that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law. If the *insured* is *your* employee, this does not apply to workers' compensation insurance purchased by *you*, or provided by *you*, if *you* are a self-insurer under any workers' compensation law.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that have already been paid:

   a. as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

   b. as benefits under any disability insurance including Loss of Earnings Coverage of this or any policy issued by the *State Farm Companies*.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A *CAR* OR MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*, TO THE EXTENT THE LIMITS OF THIS COVERAGE EXCEED THE MINIMUM LIMITS REQUIRED BY LAW FOR BODILY INJURY LIABILITY COVERAGE. THE MINIMUM LIMITS REQUIRED BY LAW FOR BODILY INJURY LIABILITY COVERAGE IN NEVADA IS $15,000 PER PERSON AND, SUBJECT TO THE PER PERSON LIMIT $30,000 PER ACCIDENT.

   This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* a motor vehicle not *owned by* one or both of them;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY; OR

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW.

   This exclusion does not apply to workers' compensation insurance purchased by *you*, or provided by *you*, if *you* are self-insured under any workers' compensation law, for an *insured* who is *your* employee;

5. TO THE EXTENT IT BENEFITS ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

parliament

6. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

7. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. IF UNINSURED MOTOR VEHICLE COVERAGE PROVIDED BY THIS POLICY AND ONE OR MORE OTHER VEHICLE POLICIES ISSUED TO *YOU* OR ANY *RESIDENT RELATIVE* BY ONE OR MORE OF THE *STATE FARM COMPANIES* APPLY TO THE SAME *BODILY INJURY*, THEN:

    a. THE UNINSURED MOTOR VEHICLE COVERAGE LIMITS OF SUCH POLICIES WILL NOT BE ADDED TOGETHER (NOT STACKED) TO DETERMINE THE MOST THAT MAY BE PAID; AND

    b. THE MOST *WE* WILL PAY IF AN *INSURED* SUSTAINS *BODILY INJURY* IN AN ACCIDENT WHILE *OCCUPYING*:

        (1) *YOUR CAR*, IS THE UNINSURED MOTOR VEHICLE COVERAGE LIMITS SHOWN ON THE DECLARATIONS PAGE OF THIS POLICY.

        (2) A *CAR* OTHER THAN *YOUR CAR* OR WHILE A *PEDESTRIAN*, IS THE HIGHEST UNINSURED MOTOR VEHICLE COVERAGE LIMITS WHICH *YOU* HAVE ON ANY ONE *CAR* OR MOTOR VEHICLE OWNED BY *YOU*. *WE* WILL MAKE PAYMENT FROM THE POLICY WHICH PROVIDES THE HIGHEST UNINSURED MOTOR VEHICLE COVERAGE LIMITS.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

IF UNINSURED MOTOR VEHICLE COVERAGE PROVIDED BY ONE OR MORE SOURCES OTHER THAN THE *STATE FARM COMPANIES* ALSO APPLIES AS PRIMARY COVERAGE FOR THE SAME ACCIDENT, THEN *WE* WILL PAY THE PROPORTION OF DAMAGES PAYABLE AS PRIMARY THAT *OUR* APPLICABLE LIMIT BEARS TO THE SUM OF *OUR* APPLICABLE LIMIT AND THE LIMITS OF ALL OTHER UNINSURED MOTOR VEHICLE COVERAGE THAT APPLY AS PRIMARY COVERAGE.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

IF UNINSURED MOTOR VEHICLE COVERAGE PROVIDED BY ONE OR MORE SOURCES OTHER THAN THE *STATE FARM COMPANIES* ALSO APPLIES AS EXCESS COVERAGE FOR THE SAME ACCIDENT, THEN *WE* WILL PAY THE PROPORTION OF DAMAGES PAYABLE AS EXCESS THAT *OUR* APPLICABLE LIMIT BEARS TO THE SUM OF *OUR* APPLICABLE LIMIT AND THE LIMITS OF ALL OTHER UNINSURED MOTOR VEHICLE COVERAGE THAT APPLY AS EXCESS COVERAGE.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1";

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

15
9828A

**Additional Definitions**

***Covered Vehicle*** means:

1. ***your car***;
2. a ***newly acquired car***;
3. a ***temporary substitute car***;
4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;
5. a ***non-owned car*** while it is:

   a. being driven by an ***insured***; or

   b. in the custody of an ***insured*** if at the time of the ***loss*** it is:

      (1) not being driven; or

      (2) being driven by a ***person*** other than an ***insured*** and being ***occupied*** by an ***insured***; and

6. a ***non-owned trailer*** and a ***non-owned camper*** while it is being used by an ***insured***;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of ***trailers*** and campers must be securely fixed as a permanent part of the ***trailer*** or camper.

***Daily rental charge*** means the sum of:

1. the daily rental rate;
2. mileage charges; and
3. related taxes.

***Insured*** means ***you*** and ***resident relatives***.

==***Loss*** means:==

1. ==direct, sudden, and accidental damage to; or==
2. ==total or partial theft of==

==a ***covered vehicle***.== ***Loss*** does not include any reduction in the value of any ***covered vehicle*** after it has been repaired, as compared to its value before it was damaged.

==***Loss Caused By Collision*** means a ***loss*** caused by:==

1. ==a ***covered vehicle*** hitting or being hit by another vehicle or other object; or==
2. ==the overturning of a ***covered vehicle***.==

Any ***loss*** caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a ***Loss Caused By Collision***.

***Non-Owned Camper*** means a camper designed to be mounted on a pickup truck that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:

   a. an ***insured***;

   b. any other ***person*** who resides primarily in ***your*** household; or

   c. an employer of any ***person*** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the ***loss***.

***Non-Owned Trailer*** means a ***trailer*** that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:

   a. an ***insured***;

   b. any other ***person*** who resides primarily in ***your*** household; or

   c. an employer of any ***person*** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the ***loss***.

**Insuring Agreements**

**1. Comprehensive Coverage**

==***We*** will pay:==

a. ==for ***loss***, except ***loss caused by collision***, to a ***covered vehicle***; and==

b. ==transportation expenses incurred by an ***insured*** as a result of the total theft of ***your car*** or a ***newly acquired car***.== These transportation expenses are payable:

   (1) during the period that:

      (a) starts on the date ***you*** report the theft to ***us***; and

      (b) ends on the earliest of:

         (i) the date the vehicle is returned to ***your*** possession in a drivable condition;

         (ii) the date ***we*** offer to pay ***you*** for the ***loss*** if the vehicle has not yet been recovered; or

         (iii) the date ***we*** offer to pay ***you*** for the ***loss*** if the vehicle is recovered, but is a total loss as determined by ***us***; and

   (2) during the period that:

      (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to ***your*** possession in a drivable

condition, and has unrepaired damage that resulted from the total theft; and

(b) ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

**2.** <mark>**Collision Coverage**

*We* will pay for *loss caused by collision* to a *covered vehicle*.</mark>

**3.** **Emergency Road Service Coverage**

*We* will pay the fair cost incurred by an *insured* for:

a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

**4.** **Car Rental and Travel Expenses Coverage**

**a.** **Car Rental Expense**

*We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay the *daily rental charge* incurred during a period that:

(1) starts on the date:

(a) the vehicle is not drivable as a result of the *loss*; or

(b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

(a) the date the vehicle has been repaired or replaced;

(b) the date *we* offer to pay *you* for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

(c) five days after *we* offer to pay *you* for the *loss* if the vehicle is:

(i) a total loss as determined by *us*; or

(ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

**b.** **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

**c.** **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If Symbol "D" is shown on the Declarations Page and the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage, or if Symbol "G" is shown on the Declarations Page

and the *covered vehicle* sustains *loss* for which *we* make a payment under Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

   a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

   b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable.

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

   a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; or

   b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

   If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

   a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

      (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

         (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

         (b) A bid or repair estimate approved by *us*; or

         (c) A repair estimate that is written based upon or adjusted to:

            (i) the prevailing competitive price;

            (ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

            (iii) a combination of (i) and (ii) above.

            The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

         *You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

         *You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

      (2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

      (3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

      (4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced.

   b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

      (1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

18
9828A

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*.

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

**1. Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

**2. Travel Expenses**

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

**3. Rental Car – Repayment of Deductible Expense**

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

a. INTENTIONALLY DAMAGED; OR

b. STOLEN

BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

a. THEFT;

b. CONVERSION;

c. EMBEZZLEMENT; OR

d. SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE

19
9828A

*COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

       (1) WEAR AND TEAR;

       (2) FREEZING; OR

       (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

       OF THAT PART OR EQUIPMENT.

    This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

    a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

    b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

    However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

    a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

    b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR

20
9828A

THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

    a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

    b. *OWNED BY* AN *INSURED*; AND

    c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING

       This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

## If Other Physical Damage Coverage or Similar Coverage Applies

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by one or more of the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the

sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

## Financed Vehicle

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

## Our Payment Options

**1. Comprehensive Coverage and Collision Coverage**

    a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

       (1) *You*;

       (2) The repairer; or

21
9828A

(3) A creditor shown on the Declarations Page, to the extent of its interest.

b. **We** may, at **our** option, make payment to one or more of the following for **loss** to a **covered vehicle** not **owned by you**:

(1) **You**;

(2) The owner of such vehicle;

(3) The repairer; or

(4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

**We** may, at **our** option, make payment to one or more of the following:

a. **You**;

b. The **insured** who incurred the expense; or

c. Any party that provided the service for which payment is owed.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definition

**Insured** means a **person** whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

### Insuring Agreement

**We** will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an **insured**:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The **insured** must be **occupying** or be struck as a **pedestrian** by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days after the date of the accident.

### Benefit

The applicable benefit shown in the schedule is the most **we** will pay for any one **insured** in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT BENEFITS SCHEDULES

If the amount shown on the Declarations Page for the **insured** is $5,000, then **we** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb & a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the **insured** is $10,000, then **we** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb & a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

The benefits shown in the schedules are doubled for an **insured** who at the time of the accident was **occupying** a **private passenger car** and using a seat belt in the manner recommended by the vehicle's manufacturer.

22
9828A

## LOSS OF EARNINGS COVERAGE

This policy provides Loss of Earnings Coverage if "Z" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definitions

*Insured* means a *person* whose name is shown under "Loss of Earnings Coverage – Persons Insured" on the Declarations Page.

*Total Disability* means the *insured's* inability to work, either full or part time, in his or her occupation or any other similar occupation for which he or she is reasonably fitted by education, training, or experience.

*Weekly Earnings* means 85% of all earnings for the *insured's* services before any deductions. When *weekly earnings* cannot be determined on a weekly basis an average will be used. The average is 85% of the total earnings for the 52 weeks just prior to the accident divided by 52.

### Insuring Agreement

*We* will pay the *insured* his or her loss of *weekly earnings*, which occur while the *insured* is living, due to continuous *total disability* that:

1. is the direct result of *bodily injury* caused by an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause. At the time of the accident, the *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer; and

2. starts within 20 days after the date of the accident and lasts for a period of at least 30 consecutive days. *We* will not pay for the first seven days of the 30 day period.

### Limit

The most *we* will pay any one *insured* is:

1. $250 for each full workweek of *total disability*; and

2. a pro rata portion of $250 for less than a full workweek of *total disability*.

Subject to the workweek limit, the most *we* will pay any one *insured* for all loss of *weekly earnings* due to any one accident is $15,000.

*We* will pay once every two weeks the *insured's* loss of *weekly earnings* owed.

### Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE DO NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UNLOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

      (1) *INSURED'S* BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

      This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION

23
9828A

FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

c. THE DISCHARGE OF A FIREARM;

d. EXPOSURE TO *FUNGI*;

e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

# INSURED'S DUTIES

**1. Notice to Us of an Accident or Loss**

The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

a. *your* name;

b. the names and addresses of all *persons* involved in the accident or *loss*;

c. the hour, date, place, and facts of the accident or *loss*; and

d. the names and addresses of witnesses to the accident or *loss*.

**2. Notice to Us of a Claim or Lawsuit**

a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

**3. Insured's Duty to Cooperate With Us**

a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

(1) making settlements;

(2) securing and giving evidence; and

(3) attending, and getting witnesses to attend, depositions, hearings, and trials.

b. The *insured* must not, except at his or her own cost, voluntarily:

(1) make any payment to others; or

(2) assume any obligation to others

unless authorized by the terms of this policy.

c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

**4. Questioning Under Oath**

Under:

a. Liability Coverage, each *insured*;

b. Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

**5. Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft;

c. allow *us* to:

24
9828A

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage**

A *person* making claim under:

a. Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. Uninsured Motor Vehicle Coverage must:

(1) report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police within 24 hours and to *us* within 30 days;

(2) send *us* immediately a copy of all:

(a) lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

(b) submissions to nonbinding arbitration or any other form of alternate dispute resolution.

c. Loss of Earnings Coverage must:

(1) make a claim under this policy;

(2) report to us when that *person* has a *total disability*; and

(3) provide proof of continued *total disability* when *we* ask for it.

## GENERAL TERMS

**1. When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

**2. Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

25
9828A

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

**3. Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

**4. Changes to This Policy**

**a. Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Nevada without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

**b. Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

**c. Joint and Individual Interests**

If "*you*" consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

**d. Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

**5. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the **State Farm Companies**.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

   (1) **Your car**, or its use, including annual mileage;

   (2) The **persons** who regularly drive **your car**, including newly licensed family members;

   (3) **Your** marital status; or

   (4) The location where **your car** is primarily garaged.

   If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

## 6. Renewal

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

## 7. Nonrenewal

If *we* decide not to renew this policy, then *we* will mail or deliver a nonrenewal notice to the most recent policy address *we* have on record for the named insured, at least:

a. 30 days before the end of the current policy period if **your car**:

   (1) is not a commercial vehicle; and

   (2) is not used in business; or

b. 60 days before the end of the current policy period if **your car**:

   (1) is a commercial vehicle; or

   (2) is used in business.

## 8. Cancellation

### a. How You May Cancel

**You** may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

### b. How and When We May Cancel

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address *we* have on record for the named insured. The notice will provide the date cancellation is effective.

(1) If *we* mail or deliver a cancellation notice:

   (a) during the first 69 days following this policy's effective date; or

   (b) because the premium is not paid when due,

   then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

   Otherwise, the date cancellation is effective will be at least 30 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 69 days, *we* will not cancel this policy before the end of the current policy period unless:

   (a) the premium is not paid when due; or

   (b) *we* discover:

      (i) an act or omission; or

      (ii) a violation of any condition of this policy,

      which occurred after the effective date of the policy and substantially and materially increases the hazard insured against.

### c. Return of Unearned Premium

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

## 9. Assignment

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

**10. Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

**11. Concealment or Fraud**

There is neither Liability Coverage above the minimum limits required by NRS 485.3091 nor any other coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy. The *person* making such false statements agrees to repay *us* for any payment we made.

**12. Our Right to Recover Our Payments**

Payments made from Medical Payments Coverage, Uninsured Motor Vehicle Coverage if the accident arose out of the operation, maintenance, or use of an *underinsured motor vehicle*, Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage are not recoverable by *us*. Under all other coverages the following apply:

**a. Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

**b. Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then that *person* or organization to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

**13. Legal Action Against Us**

Legal action may not be brought against, nor may arbitration be demanded of, *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against, or arbitration may be demanded of, *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us* with or without the use of nonbinding arbitration as required by NRS 38.250.

b. Medical Payments Coverage if the legal action relating to this coverage is brought against, or the arbitration relating to this coverage is demanded of, *us* within six years immediately following the date of the accident.

c. Uninsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative:

(1) presents either an Uninsured Motor Vehicle Coverage claim to *us*; and

(2) files a lawsuit or demands nonbinding arbitration in accordance with the **Deciding Fault and Amount** provision of the involved coverage.

Except as provided in c.(2) above, no other legal action may be brought against, nor any arbitration be demanded of, *us* relating to Uninsured Motor Vehicle Coverage for any other causes of action that arise out of or are related to these coverages until there has been full compliance with the provisions titled **Consent to Settlement** and **Deciding Fault and Amount**.

d. Physical Damage Coverages if the legal action relating to these coverages is brought against, or the arbitration relating to these coverages is demanded of, *us* within six years immediately following the date of the accident or loss.

28
9828A

**14. Choice of Law**

Without regard to choice of law rules, the law of the State of:

a. Nevada will control, except as provided in item b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

    (1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

    (2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

**15. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

Policy Form 9828A