# Exhibit 5

**524**         **316 FEDERAL SUPPLEMENT, 2d SERIES**

IT IS ALSO ORDERED that Petitioner's Motion for Discovery is hereby DENIED WITH PREJUDICE. His Motion to Stay adjudication of his 28 U.S.C. § 2255 Motion pending the outcome of his Motion for Discovery is hereby DENIED AS MOOT.

**IT IS SO ORDERED.**



**Delphine MARICCO and Robert Maricco, Plaintiffs,**

**and**

**Blue Cross Blue Shield of Michigan, Proposed Intervening Plaintiff,**

v.

**MECO CORPORATION, Defendant.**

No. 03–71719.

United States District Court,
E.D. Michigan,
Southern Division.

May 3, 2004.

**Background:** Consumer brought products liability action against corporation. Insurer moved to intervene as plaintiff, seeking reimbursement for health care benefits paid to consumer.

**Holdings:** The District Court, Rosen, J., held that:

(1) insurer established sufficient interest in action to warrant intervention;

(2) court had jurisdiction over insurer's subrogation claim against corporation;

(3) court lacked jurisdiction over insurer's cross-claim against consumer; and

(4) insurer's claims would not be separately adjudicated.

Motion granted in part, and denied in part.

**1. Federal Civil Procedure ⚖340**

Insurer established sufficient interest in products liability action brought by consumer against corporation to warrant intervention, where insurer paid health care benefits to consumer as a result of injuries claimed in complaint, and insurer's health care contract with consumer included subrogation clause, under which it was granted right to recover health care payments from prospective tortfeasors. Fed.Rules Civ.Proc.Rule 24(a), 28 U.S.C.A.

**2. Federal Civil Procedure ⚖340**

If insured brings suit against tortfeasor, insurer who is partially subrogated may intervene in action to protect its pro rata share of potential recovery.

**3. Federal Courts ⚖295**

Insurer's intervention in products liability action brought by consumer against corporation would not destroy existing diversity of citizenship in action, to extent that insurer sought judgment against corporation as subrogee of consumer, where insurer and consumer were Michigan residents, while corporation identified Tennessee as state of incorporation and principal place of business. 28 U.S.C.A. § 1367(b).

**4. Federal Courts ⚖24**

Federal court may adjudicate cross-claim because of its relationship to main action for which federal jurisdiction is proper, even though independent basis for jurisdiction is lacking. 28 U.S.C.A. § 1367(b).

**5. Federal Courts ⚖295**

Insurer's intervention in products liability action brought by consumer against corporation would destroy existing diversi-

**MARICCO v. MECO CORP.** 525
Cite as 316 F.Supp.2d 524 (E.D.Mich. 2004)

ty of citizenship in action, to extent that insurer sought cross-claim judgment against consumer as reimbursement for monies paid under health care plan, since parties on both sides were Michigan residents. 28 U.S.C.A. § 1367(b).

**6. Federal Civil Procedure ⚖1956**

District court would properly deny request of insurer intervening in products liability action brought by consumer against corporation to have its claims adjudicated in separate proceeding, where such separation would defeat court's interest in ensuring that insurer's distinct interests were protected and adequately represented. Fed.Rules Civ.Proc.Rule 42(b), 28 U.S.C.A.

---

Michael D. Weaver, Esq., Bloomfield Hills, MI, for Meco Corp.

Mark D. Willmarth, Esq., Detroit, MI, for Target Corp.

**OPINION AND ORDER GRANTING IN PART MOTION FOR INTERVENTION AND JOINDER**

ROSEN, District Judge.

By motion filed on September 22, 2003, proposed intervening party Blue Cross Blue Shield of Michigan ("BCBSM") seeks leave to intervene in this product liability suit pursuant to Fed.R.Civ.P. 24(a) or, alternatively, requests to be joined as a necessary party under Fed.R.Civ.P. 19(a). As support for this motion, BCBSM states that it paid health care benefits to Plaintiff Delphine Maricco, and it claims a right to reimbursement of these proceeds from any damage award Plaintiffs might recover from Defendant Meco Corporation in this case. Plaintiffs have not responded to this motion, but Defendant has filed a brief opposing this relief. Having reviewed these submissions and the record as a whole, the Court finds that BCBSM is entitled to intervene in this action, albeit not on all of the grounds identified in its motion and proposed intervening complaint.

**[1]** BCBSM's motion rests principally upon Rule 24(a), which provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). BCBSM does not claim a right to intervene under a federal statute,[1] but instead appeals to the second prong of the Rule 24(a) inquiry. Specifically, BCBSM states that it has paid health care benefits to Plaintiff Delphine Maricco as a result of the injuries claimed in Plaintiffs' complaint. BCBSM further asserts that its health care contract with Plaintiffs includes a subrogation clause, under which it is granted a right to recover its health care payments from Defen-

---

1. BCBSM does cite a Michigan statute, Mich. Comp. Laws § 550.1401(6), as purportedly conferring a right to intervene in this case. As Defendant points out, however, intervention is a matter of federal procedural law, which a state statute cannot displace. *See* *Public Service Co. of New Hampshire v. Patch,* 136 F.3d 197, 208(1st Cir.1998); *Krueger v. Cartwright,* 996 F.2d 928, 931 (7th Cir.1993). At most, the Michigan statute merely "inform[s] the ... calculus" under the second prong of Rule 24(a). *Patch,* 136 F.3d at 208.

dant. This right of subrogation, in BCBSM's view, creates a sufficient interest to warrant intervention under Rule 24(a).

**[2]** The courts have consistently recognized that an insurer who has a right of subrogation and pays a portion of the insured's loss—otherwise referred to as "partial subrogation"—possesses a separate and distinct substantive right of recovery against the defendant tortfeasor who allegedly caused the loss. *See, e.g., United States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 381, 70 S.Ct. 207, 215, 94 L.Ed. 171 (1949); *Krueger,* 996 F.2d at 932; *Agri–Mark, Inc. v. Niro, Inc.,* 190 F.R.D. 293, 296 (D.Mass.2000). "Thus, if an insured brings suit against a tortfeasor, the insurer who is partially subrogated may intervene in the action to protect its pro rata share of the potential recovery." *Krueger,* 996 F.2d at 932 (citing 6A Charles A. Wright *et al.,* Federal Practice & Procedure § 1546 (2d ed.1990)). Under this principle, and accepting as true the allegations of its proposed intervening complaint,[2] BCBSM would be entitled to intervene as a party-plaintiff along with its insured, Delphine Maricco.

Defendant, however, suggests three reasons why BCBSM should not be permitted to intervene under Rule 24(a). First, Defendant argues that BCBSM has offered only idle speculation, and not evidence, that "the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest," Fed.R.Civ.P. 24(a), in a portion of any tort recovery obtained by Plaintiffs. Defendant maintains, for example, that Plaintiffs might very well elect to voluntarily reimburse BCBSM out of any judgment they obtain, and that BCBSM has no specific basis for any concern that Plaintiffs might instead dispose of these proceeds before BCBSM has an opportunity to seek reimbursement. Defendant further contends that any such concern, should it arise, could be easily obviated through the prompt filing of a separate subrogation claim following the entry of judgment in this action.

Next, in a related argument, Defendant contends that intervention is unnecessary here because BCBSM's claimed interest "is adequately represented by existing parties," Fed.R.Civ.P. 24(a), the current Plaintiffs. In support of this asserted identity of interests, Defendant notes that Plaintiffs have specifically identified the medical expenses paid by BCBSM as an element of the damages they seek to recover in this case. Further, Defendant points out that Plaintiffs apparently have never denied the existence of BCBSM's claimed interest in a portion of their eventual recovery. Accordingly, Defendant reasons that Plaintiffs and BCBSM share similar interests in obtaining an award that encompasses the medical benefits paid by BCBSM to Plaintiffs.

Both of Defendant's first two contentions fail on similar grounds. Defendant has failed to identify any support for the proposition that a party with a claimed—and, at this point, undisputed—interest in a potential tort recovery may not intervene so long as there is ***any*** prospect that an existing party might vindicate this interest. Assuming that Plaintiffs do not dispute BCBSM's right to reimbursement of the medical expenses it has paid them, Plaintiffs have no particular incentive to seek these expenses as an element of damages. While they *might* do so nonetheless,

---

**2.** In particular, the Court is not called upon here to decide whether BCBSM actually possesses a valid and enforceable right of subrogation under the terms of its health care contract with Plaintiffs.

**MARICCO v. MECO CORP.** **527**
Cite as 316 F.Supp.2d 524 (E.D.Mich. 2004)

this Court cannot foretell the likelihood that Plaintiffs might instead, perhaps for strategic reasons, seek to downplay or ignore this element of their claimed losses. Moreover, if Plaintiffs, for whatever reason, fail to present evidence encompassing all of the medical expenses paid by their insurer, BCBSM likely would confront considerable obstacles in seeking to recover this shortfall in a subsequent proceeding.[3] BCBSM need not run these risks, but rather is entitled to participate in this action to ensure that its unique interest as subrogee is properly protected. Under the allegations of the proposed intervening complaint, BCBSM's interests are not so closely aligned with Plaintiffs' that it can be said that the insurer's intervention is unnecessary to protect these interests.

Third, Defendant argues that BCBSM has failed to satisfy Rule 24(a)'s requirement of a "timely application" to intervene, where the insurer purportedly learned of this suit within a few weeks after it was filed, but did not file the present motion until about four months later, or about two months before the close of discovery. While the Court agrees that BCBSM could have acted more promptly, it discerns no prejudice to the existing parties as a result of this delay. First, if Defendant had agreed to BCBSM's request to intervene, it is likely that BCBSM immediately would have been joined as a party by stipulated order, with ample opportunity for the insurer to participate in the remaining period of discovery. In any event, BCBSM does not claim in its motion that it wishes to pursue additional discovery, and the Court certainly will take the insurer's lack of diligence into account should further discovery be sought at this juncture. Accordingly, the Court finds that BCBSM's partial subrogation interest warrants its intervention under Rule 24(a).

Apart from these challenges under Rule 24(a), Defendant also suggests that the joinder of BCBSM as a party triggers a potential jurisdictional concern. As noted by Defendant, because this case lies within the Court's diversity jurisdiction, the Court may not exercise supplemental jurisdiction over claims brought by BCBSM as an intervening plaintiff if this joinder would destroy the existing diversity of citizenship among the current parties. *See* 28 U.S.C. § 1367(b). BCBSM has not aided the Court in this inquiry, as its proposed intervening complaint does not even list the insurer in the caption, much less indicate whether it should be aligned as a plaintiff or defendant. In addition, this proposed complaint lacks any jurisdictional allegations whatsoever, whether regarding citizenship of the parties or the possible existence of a federal question.

[3] Nonetheless, upon performing the inquiry that BCBSM should have (but did not), the Court finds that this insurer's intervention will not destroy the existing diversity of citizenship, at least as to one of the claims advanced in the proposed intervening complaint. In Count II of this proposed pleading, BCBSM seeks a judgment against Defendant as a subrogee of the Plaintiff subscribers to a BCBSM health care plan. Under this theory of recovery, BCBSM is properly characterized as an intervening plaintiff, seeking its purported share of the judgment sought against Defendant in this product liability action. In addition, this proposed joinder seemingly does not threaten the Court's diversity jurisdiction, as BCBSM and Plaintiffs alike are Michigan residents,[4]

---

3. One of these obstacles is discussed below.

4. More accurately, the Court *assumes* that BCBSM is properly characterized as a citizen of the State of Michigan. In filing its intervening complaint in accordance with the rulings in this Opinion and Order, BCBSM must

while Defendant has identified Tennessee as both its state of incorporation and the location of its principal place of business.

**[4, 5]** Matters are far different, however, as to the claim advanced in Count I of the proposed intervening complaint. Here, BCBSM seeks a judgment against *Plaintiffs* as reimbursement for all amounts paid to them under their health care plan. This is properly characterized as a cross-claim brought by intervening plaintiff BCBSM against the current Plaintiffs. Diversity of citizenship would be lacking as to this cross-claim, with the parties on both sides being Michigan residents. Ordinarily, "even though an independent basis for jurisdiction is lacking, the federal court may adjudicate a cross-claim because of its relationship to the main action for which federal jurisdiction is proper." *Coleman v. Casey County Board of Education*, 686 F.2d 428, 430 (6th Cir.1982). Yet, because BCBSM has intervened in this action as a plaintiff under Rule 24, its cross-claim against the original Plaintiffs seemingly runs afoul of the exclusionary language of § 1367(b), which mandates that claims asserted by an intervening plaintiff in a diversity suit must independently satisfy the requirements for federal court jurisdiction. *See TIG Insurance Co. v. Reliable Research Co.*, 334 F.3d 630, 633–34 (7th Cir.2003). BCBSM has failed to identify such a jurisdictional basis for its proposed claim against Plaintiffs.[5]

In addition, the law of this Circuit suggests that BCBSM cannot state a viable claim for reimbursement. Although BCBSM's submissions are notably silent on the subject, it appears that Plaintiff Delphine Maricco received medical benefits from BCBSM under a health care plan provided by her husband's employer, Michigan Credit Union. (*See* Defendant's Response, Ex. A, Plaintiff's Answers to Interrogatories at 8.) Presumably, this plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* If so, the Supreme Court's recent decision in *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), under facts somewhat analogous to those presented here, holds that ERISA does not authorize an insurer's action to enforce a reimbursement provision of an ERISA plan. Thus, to the extent that Count I of BCBSM's proposed intervening complaint asserts an ERISA claim for reimbursement, this avenue of recovery seemingly is foreclosed by *Knudson*.

In so ruling, however, the Supreme Court declined to consider whether the insurer in that case might have been able to secure its desired relief through some other means. The Court stated, in particular, that "[w]e express no opinion as to whether [the insurer] could have intervened in the state-court tort action brought by [its insured] or whether a direct action by [the insurer] against [its

---

confirm this characterization by including the appropriate jurisdictional allegations.

**5.** Further, it is far from clear, in this Court's view, that this claim could satisfy the standards for intervention as of right under Rule 24(a). BCBSM's claim against Plaintiffs rests upon a right to reimbursement from any judgment Plaintiffs might obtain in their underlying suit against Defendant. This claimed right will not be adjudicated in the course of the underlying action, but will arise, if at all, only *after* Plaintiffs secure a judgment in their favor. Thus, it is not essential that BCBSM intervene in this action in order to preserve this claimed right, because BCBSM's interest in this regard may be adequately protected through the commencement of a separate action—assuming, of course, that Plaintiffs fail to voluntarily reimburse BCBSM from any award in their favor.

**MARICCO v. MECO CORP.** **529**
Cite as 316 F.Supp.2d 524 (E.D.Mich. 2004)

insureds] asserting state-law claims such as breach of contract would have been preempted by ERISA." *Knudson,* 534 U.S. at 220, 122 S.Ct. at 718. In this case, of course, the Court has now permitted the first of these two courses of action, allowing BCBSM to intervene in order to protect its partial subrogation interest in any recovery obtained from Defendant.[6]

As to the second possible avenue of recovery, a state-law breach of contract claim, a subsequent Sixth Circuit ruling has cast considerable doubt on the viability of this option. In *Community Ins. Co. v. Morgan,* 54 Fed.Appx. 828, 2002 WL 31870325 (6th Cir.2002), the plaintiff insurer under an ERISA health care plan sought reimbursement from its insured, Troy Morgan, and Morgan's automobile insurer, Liberty Mutual, for benefits paid to cover Morgan's medical expenses for injuries he incurred in an automobile accident. The plaintiff characterized its claim against Morgan as brought under ERISA, and the Sixth Circuit readily concluded that this claim "for reimbursement under the terms of the plan is squarely precluded by *Knudson.*" *Morgan,* 54 Fed.Appx. at 830, 2002 WL 31870325, at *2; *see also Community Health Plan of Ohio v. Mosser,* 347 F.3d 619, 623 (6th Cir.2003) (citing *Knudson* for the proposition that "ERISA does not provide jurisdiction for fiduciaries seeking to enforce a contract's reimbursement provisions through money damages").

The Court then turned to the plaintiff's claim against Liberty Mutual, which was pled as arising under state law. The Sixth Circuit rejected this characterization, finding that this claim was preempted by ERISA because it required "resort to the terms of the ERISA plan" in order to adjudicate the respective rights of the two insurers. *Morgan,* 54 Fed.Appx. at 831–32, 2002 WL 31870325, at *3. From this conclusion, it readily followed that this claim was foreclosed by the holding in *Knudson,* because the plaintiff insurer, like the insurer in *Knudson,* sought "a declaration that its contractual rights under the plan entitle it to the payment of money," a type of relief that is not available to a plan fiduciary under § 502(a)(3) of ERISA. *Morgan,* 54 Fed.Appx. at 831–33, 2002 WL 31870325, at *3–*4.

The decision in *Morgan* indicates, and general principles of ERISA preemption tend to confirm, that BCBSM could not seek reimbursement from Plaintiffs under a state-law breach of contract theory. This being the case, the *sole* remaining avenue of recovery available to BCBSM seemingly is to intervene in Plaintiffs' underlying tort suit against Defendant on the basis of the insurer's alleged partial subrogation interest. This is all the more reason, in the Court's view, to grant BCBSM's motion to intervene over the objection of Defendant, because the disposition of the underlying tort action might well "as a practical matter impair or impede," Fed.R.Civ.P. 24(a), BCBSM's ability to recoup any medical expenses that Plaintiffs might recover as part of a damage award in this case. BCBSM's usual past practice of asserting a lien upon its insured's tort recovery might no longer be effective, as any action to collect upon this lien might run afoul of *Knudson.* In apparent recognition of this potential pitfall, BCBSM has sought to intervene in this action. Under these circumstances, the

---

**6.** In so ruling, however, this Court has not resolved the substantive portion of the issue left open in *Knudson.* In particular, while the Court finds that BCBSM has satisfied the procedural dictates of Rule 24(a) as to its claim for partial subrogation, the Court expresses no view as to whether or how the reasoning or result in *Knudson* might affect the substantive law governing this claim.

**530**          **316 FEDERAL SUPPLEMENT, 2d SERIES**

Court finds that the standards for intervention under Rule 24(a) have been satisfied, but only as to the subrogation theory advanced in Count II of the proposed intervening complaint.

**[6]** Finally, BCBSM requests in its motion that it not be required to participate in the trial on Plaintiffs' underlying product liability claims, and that its claims instead be adjudicated in a separate proceeding under Fed.R.Civ.P. 42(b). As should be apparent from the foregoing discussion, this request runs counter to the Court's principal basis for ordering intervention—namely, to ensure that BCBSM's distinct interests are protected and adequately represented. It is wholly incongruous, in the Court's view, to conclude that BCBSM's interests may not be adequately represented by the existing Plaintiffs, and yet find, as BCBSM now invites the Court to do, that the insurer should be exempt from participating at trial because it is content to rest upon Plaintiffs' proofs in support of its own claims against Defendant.

To be sure, BCBSM might well elect, on strategic or other grounds, to remain largely in the background at trial, and to rely on Plaintiffs' proofs of their damages rather than introducing separate evidence of its own. Nonetheless, it is essential that BCBSM be present and ready to participate at trial, in order to determine whether its distinct interests as subrogee are properly served. As BCBSM recognizes, it will be bound by the outcome of the underlying product liability suit—"[f]or example, in the event of a no-cause verdict at the trial of the case in chief, BCBSM would be prohibited from going forward on its claim for damages based on principles of *res judicata*." (BCBSM's Motion, Br. in Support at 6.) The same would hold true if, whether for lack of proof or otherwise, the jury returned a verdict that lacked a component of medical expenses. Because of this dispositive impact upon its claimed subrogation interest, BCBSM must accept the consequences of its requested intervention, and must appear along with the other parties at all pretrial proceedings and at trial.[7]

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Blue Cross Blue Shield of Michigan's September 22, 2003 Motion for Intervention and Joinder is GRANTED IN PART, in accordance with the rulings in this Opinion and Order. IT IS FURTHER ORDERED that, within ***seven (7) days*** of the date of this Opinion and Order, Blue Cross Blue Shield of Michigan shall file and serve an intervening complaint that comports with the Court's rulings.



---

7. There is one exception to this ruling. In the event that Plaintiffs seek to challenge BCBSM's right of subrogation under the parties' health care contract, this purely legal issue of contract interpretation can be resolved in a separate proceeding before the Court. To the extent that BCBSM is requesting that it not be required to offer proofs at trial in support of its claimed right of subrogation, the Court agrees that this matter is more appropriately addressed in a separate proceeding. BCBSM's participation at trial will be limited to matters concerning the damages suffered by Plaintiffs under their product liability claims against Defendant.