**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| | : | |
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | Honorable Sean F. Cox |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | END-PAYOR PLAINTIFFS' |
| | : | MEMORANDUM IN OPPOSITION |
| ALL END-PAYOR ACTIONS | : | TO FINANCIAL RECOVERY |
| | : | STRATEGIES, LLC'S UNTIMELY |
| | : | MOTION TO INTERVENE |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

# TABLE OF CONTENTS

BACKGROUND FACTS ........................................................................................5

ARGUMENT .......................................................................................................8

    I.    This Court Should Deny FRS's Untimely and Futile Request for
Intervention .............................................................................................8

        A.    FRS Has No Protectable Interest Relating to the Subject of this
Antitrust Action ............................................................................9

            1.    Automobile insurance companies do not extend
coverage for antitrust injuries. .....................................10

            2.    Property damage caused by auto accidents is unrelated
to antitrust overcharges. ...............................................11

        B.    The Disposition of this Action Will Not Impair or Impede Any
Substantial Interest .....................................................................13

        C.    FRS's Motion to Intervene is Untimely...................................14

            1.    This complex class action has progressed for over eight
years. ............................................................................14

            2.    Intervention is entirely inappropriate to accomplish
FRS's stated purpose.....................................................15

            3.    FRS has known of its interest in this case since August
2018................................................................................15

            4.    Intervention would delay settlement distribution and
severely prejudice the class............................................17

        D.    Settlement Class Counsel Adequately Represent the Interests of
Class Members.............................................................................19

    II.    Permissive Intervention Would Be Wholly Improper ...........................20

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. White*,
   320 F. App'x 364 (6th Cir. 2009) ..........................................................................15

*Blount-Hill v. Zelman*,
   636 F.3d 278 (6th Cir. 2011) ..............................................................................14

*Deutsche Bank Nat. Trust Co. v. F.D.I.C.*,
   717 F.3d 189 (D.C. Cir. 2013) ..............................................................................9

*Fireman's Fund Ins. Co. v. Morse Signal Devices*,
   198 Cal. Rptr. 756 (Cal. App. 1984)................................................................3, 11

*GEICO Corp. v. Autoliv, Inc.*,
   345 F. Supp. 3d 799 (E.D. Mich. 2018)......................................................... *passim*

*Grant Thornton v. Syracuse Sav. Bank*,
   961 F.2d 1042 (2nd Cir. 1992)..............................................................................11

*Grubbs v. Norris*,
   870 F.2d 343 (6th Cir. 1989) ..........................................................................9, 20

*Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*,
   208 F.3d 579 (7th Cir. 2000) (Easterbrook, J.)................................................3, 11

*In re Air Crash Disaster*,
   86 F.3d 498 (6th Cir. 1996) ................................................................................11

*Jansen v. City of Cincinnati*,
   904 F.2d 336 (6th Cir. 1990) ..............................................................................14

*Johnson v. City of Memphis*,
   73 F. App'x 123 (6th Cir. 2003) ..........................................................................14

*Jordan v. Michigan Conf. of Teamsters Welfare Fund*,
   207 F.3d 854 (6th Cir. 2000) ..............................................................................16

*Meyer Goldberg, Inc. v. Goldberg*,
   717 F.2d 290 (6th Cir. 1983) ..............................................................................19

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
   2010 U.S. Dist. LEXIS 130104 (E.D. Mich. Dec. 9, 2010) (Tarnow, J.)................16

*Reliastar Life Insurance Co. v. MKP Investments*,
     565 F. App'x 369 (6th Cir. 2014) ...............................................................................9, 10, 19

*Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*,
     749 F.2d 1277 (9th Cir. 1984) .......................................................................................11

*Stotts v. Memphis Fire Dep't*,
     679 F.2d 579 (6th Cir. 1982) .........................................................................................17

*Stupak-Thrall v. Glickman*,
     226 F.3d 467 (6th Cir. 2000) .........................................................................................16

*United States v. Michigan*,
     424 F.3d 438 (6th Cir. 2005) .....................................................................................9, 20

*Velsicol Chemical Corp. v. Enenco, Inc.*,
     9 F.3d 524 (6th Cir. 1993) .............................................................................................20

## Rules

Fed. R. Civ. P. 24.................................................................................................................8, 20

End-Payor Plaintiffs ("EPPs"), by and through their Court-appointed counsel ("Settlement Class Counsel"), respectfully submit this memorandum in opposition to Financial Recovery Strategies, LLC's ("FRS") untimely motion for leave to intervene.[1] EPPs note that FRS's motion for leave to intervene has no bearing on EPPs' motion for final approval and motion for an award of attorneys' fees in connection with the Round 4 Settlements, which are fully briefed, subject to no objections, and pending before the Court.

FRS seeks leave to intervene for two stated purposes: (1) to determine whether certain automobile insurance companies it claims to represent are entitled to share in the class settlement funds based on the assertion that they have been subrogated to the rights of unidentified class member insureds who may have received insurance payments for vehicles the insurance companies deemed a total loss due to automobile accidents; and (2) to belatedly identify the "many thousands of vehicles and claims paid over two decades" allegedly subject to subrogation *after* the deadline to submit claims previously expired on June 18, 2020—the same day FRS filed its motion. For the reasons set forth below, the motion for leave to intervene should be denied.

First of all, FRS has no legally cognizable interest in this action. Its motion relies upon case law that allows *class members* to intervene in a class action when their rights are not adequately represented. FRS, however, does not claim that it is a class member, or that its insurance company clients are class members. The class is limited to persons who purchased or leased vehicles for themselves and not for resale. By contrast, FRS claims the insurance companies are somehow subrogated to the rights of class members to share in the class settlements. But that purported claim does not make the insurance companies members of any of the end-payor classes.

---

[1] *In Re: Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311-SFC-RSW, Dkt. 2060, filed on June 18, 2020. Unless otherwise stated, all docket references are to the Master File.

At most, FRS seeks intervention so the insurance companies may assert subrogation claims against class members who were their insureds to require some undefined and unknown portion of the settlement payments made to the insureds to be paid over to the insurance companies. However, FRS, a third-party filer, cannot have any conceivable claim that it is subrogated to any payments made to class members. And no insurance company has sought leave to intervene. FRS may argue that it can assert subrogation rights on the basis of an assignment agreement, but the agreement FRS provided does not confer standing on FRS to assert subrogation rights and is nothing more than window dressing. *See* Dkt. 2064-3. It does not change the economic substance of the principal-agent relationship between FRS, a third-party filer, and its insurance company clients, and does not give FRS ownership of claims asserted by or against insureds.

Critically, for the reasons explained more fully below and in EPPs' response to FRS's letter brief, the insurance companies have no right to be subrogated to any class settlement payments to their insureds. *See* Dkt. 2034. It is a fundamental principle of the law of subrogation that subrogation rights only apply when an insurance company indemnifies and pays an insured for the same loss specified in the contract of insurance. For example, an automobile insurance company could be subrogated to the claims against someone who is legally responsible for a collision that caused the insured's vehicle to be declared a total loss. But that is not the case here. No automobile insurance company indemnified any of its insureds for an overcharge made at the time of purchase of a vehicle due to an antitrust price-fixing conspiracy.

Suppose an insured submitted a claim to his or her insurer to be indemnified for that overcharge. It would not be adjusted or paid pursuant to an insurance policy that protected an insured against physical damage sustained by a vehicle in a collision. FRS does not even suggest that the antitrust defendants in this case bear any responsibility whatsoever for the physical damage

to vehicles that the insurance company may have insured. That is exactly why courts that have considered this question have rejected subrogation of antitrust claims. *See, e.g., Fireman's Fund Ins. Co. v. Morse Signal Devices*, 198 Cal. Rptr. 756, 757 (Cal. App. 1984) (rejecting subrogation of antitrust claim because the insurer "has not compensated its insureds for the same losses contemplated under the antitrust claim"); *Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581 (7th Cir. 2000) (Easterbrook, J.) (denying subrogation claims of health insurers in an antitrust action because "the complaint does not give any reason to believe that the insurers have compensated the insured for antitrust injury or purchased the right to pursue smokers' antitrust claims").

In a case related to this very litigation, an insurance company, namely, GEICO, sued the defendants claiming it had the right to recover from them in its capacity as insurer. Although the Court did not finally adjudicate whether GEICO could assert claims against the defendants based on subrogation principles, the Court dismissed GEICO's complaint, holding that GEICO lacked standing to sue for any injury it allegedly suffered in compensating insureds. GEICO also sought leave to intervene in the class case. In response to the parties' arguments, GEICO actually disclaimed that it would rely in the first instance on any subrogation rights. 2:12-cv-00403, Dkt. 267 at 18-19. EPPs successfully opposed intervention and the motion was denied. 2:12-cv-00403, Dkt. 280. FRS has been on notice of the proceedings involving GEICO since at least August 2018. FRS also admits it knew since at least as early as January 2019 that EPPs, through class counsel, would oppose any insurance company claims to share in the settlement funds based on any claimed theory of subrogation. Dkt. 2060-2 at ¶ 6; Dkt. 2060, Ex. E. In Jaunary 2019, class counsel also referred FRS to legal authority directly supporting EPPs' position. *Id.*; 2:12-cv-00403, Dkt. 266.

However, the Court need not resolve the question of whether FRS, or more accurately, its insurance company clients, have any subrogation rights to the proceeds of the class settlements, because the motion is untimely. If FRS truly wanted this Court to determine a "threshold legal issue" concerning its insurance company clients' ability to recover for total loss vehicles as subrogees, FRS should have sought intervention 18 months ago. Instead, FRS remained silent and sat on its hands for over a year. Then, in November 2019, FRS asked EPPs to agree to a briefing schedule to seek a ruling as to whether its insurance company clients could submit claims based on its its argument that they were subrogated to the claims of class members who were their insureds. But FRS failed to follow proper procedures to obtain the ruling.

FRS knew in December 2019 that the Court had not filed its letter brief and that what FRS had filed was insufficient to raise the issue. FRS says its counsel called the Chambers of the Court shortly after its letter brief was sent by Federal Express to the Court to find out why its papers had not been filed, and was told in December 2019 that FRS would have to file a motion for intervention to be heard. Rather than follow that course, FRS waited another six months until June 18, 2020—the last day to file claims—before it filed the instant motion. That delay is inexplicable and inexcusable. It is also prejudicial to the class.

If FRS's motion is heard on the merits and its insurance company clients are granted leave to submit claims to share in the settlements, FRS says it will thereafter supplement its "placeholder" claims with information about "many thousands of vehicles and claims paid over two decades." Dkt. 2060 at 2. That procedure has never been authorized by the Court or agreed to by class counsel or the claims administrator. The claims administration process is now underway in light of the expiration of the claims deadline. To allow claims for many thousands of vehicles to be submitted long after the claims deadline will substantially delay the completion of that

4

process and adversely affect the interests of true class members. Moreover, class plaintiffs never agreed that FRS could submit "placeholder" claims. FRS's unilateral decision to do so is entirely a function of the choice it made to avoid incurring expenses on its part—expenses that would not be borne by its insurance company clients. FRS's failure to timely and properly submit its request for a ruling on the asserted subrogation is entirely its own fault. Accordingly, the motion for leave to intervene should be denied on timeliness grounds alone.

## BACKGROUND FACTS

On February 21, 2012, the Judicial Panel on Multidistrict Litigation issued a transfer order to this Court centralizing two actions pending in the Eastern District of Michigan and the Northern District of California that alleged a price-fixing conspiracy relating to automotive wire harness systems. *See In re Automotive Parts Antitrust Litigation*, No. 2:12-md-2311, Dkt. 1. This litigation has grown to include 41 separate actions filed against scores of defendant groups.

On June 20, 2016, this Court entered an Order Granting Final Approval of Class Action Settlements involving nine defendants and their affiliates (the "Round 1 Settlements"). *See, e.g.,* 2:13-cv-00703, Dkt. 102. On September 25, 2017, this Court entered an Order Granting Final Approval of Class Action Settlements involving twelve defendants and their affiliates (the "Round 2 Settlements"). *See, e.g.,* 2:12-cv-00403, Dkt. 239.

On May 4, 2018, FRS submitted its first claim on behalf of an automobile insurance company. Dkt. 2060-2 at ¶ 9. On August 30, 2018, this Court found that GEICO—an auto insurance company—lacked antitrust standing in its capacity as an insurer for "payments to insureds or third-party claimants for the full value of vehicles declared a total loss." *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 829-30 (E.D. Mich. 2018). This Court reasoned that "Total Loss Payments are not made in connection with the purchase of auto parts," and "the injury

allegedly inflicted on GEICO does not occur in the auto part markets in which Defendants allegedly conspired." *Id.* at 829. This Court further recognized that "the releases granted by the EPPs in their settlements ordinarily would operate to defeat GEICO's right of subrogation," but found "the Court cannot determine the viability of this potential avenue of recovery under the present record." *Id.* at 830-833. FRS clearly knew of its interest in this case by August 2018, and knew the issue of whether insurance companies could submit claims in this litigation based on subrogation rights was very much in question.

On November 8, 2018, this Court entered an Order Granting Final Approval of Class Action Settlements involving thirty-three defendants and their affiliates (the "Round 3 Settlements"). *See* Dkt. 2:12-cv-103, Dkt. 628. In 2018 and 2019, this Court entered another series of Orders Granting Preliminary Approval of Proposed Settlements involving thirteen defendants and their affiliates (the "Round 4 Settlements").[2] On November 14, 2018, FRS sought permission from EPPs to file "placeholder" claims for its insurance company clients. Dkt. 2060, Ex. C. EPPs flatly rejected that request and instructed FRS that it must identify the claimed vehicles before the claim submission deadline. Dkt. 2060-2 at ¶ 6

On January 14, 2019—over 18 months ago—FRS wrote EPPs a letter raising the same subrogation arguments that FRS raises in its present motion to intervene. Dkt. 2060, Ex. D. As FRS acknowledges, on January 24, 2019, in a call that took place with EPPs' class counsel and FRS, EPPs responded that FRS's insurance company clients could not assert subrogation rights against the EPP settlements, and directed FRS to briefing submitted in opposition to GEICO's request to recover settlement funds under a theory of subrogation. Dkt. 2060, Ex. E. That briefing explained that "GEICO is simply wrong that payments under an ***automobile insurance policy*** for

---

[2] *See* http://www.autopartsclass.com/courtdocs.php (Preliminary Approval Orders, Round 4 Settlements).

damage to a vehicle from, for example, a collission can *ever* create subrogation rights of any kind against ***antitrust*** losses or any other loss for which GEICO did not make a payment and did not even offer insurance." *See* 2:12-cv-00403, Dkt. 266. Following this exchange, FRS sat on its hands and went silent for another nine months.

Then, on October 17, 2019, FRS sent class counsel a draft letter that FRS claimed it would send to the Court. Dkt. 2060, Ex. E. On November 2, 2019, class counsel responded in writing and unequivocally informed FRS that its insurance company clients "have no rights as class members or as subrogees of class members," and extensively cited authority supporting that position. Dkt. 2060, Ex. F. Settlement Class Counsel explained:

> Your argument is based on the incorrect contention that the property damage loss is the same "loss" that was sustained when an insured purchased a vehicle, possibly years before an accident took place, and was overcharged as a result of the antitrust violations at issue in this case. That contention is without merit because, among other things, the losses and injuries are not the same. The Auto Insurers indemnified their insureds for property damages claims. The insurance policies provide no coverage to an insured for the "loss" or "injury" sustained at the point of purchase due to an overcharge caused by an antitrust violation. The rights that an insurance carriermay have under the law of subrogation against the person who is at fault for an accident based on the payment it made to its insured have nothing to do with the antitrust claims an insured may have based on being overcharged for a part incorporated in a vehicle.
> . . .
>
> Further, you have not provided any evidence that any Auto Insurer actually compensated or reimbursed any insured for anticompetitive overcharges caused by pricefixing or other antitrust violations. The argument that the indemnity payments made to insureds must necessarily include compensation for those overcharges simply ignores the fact that those payments did not indemnify an insured for those overcharges. And in the cases discussed below, that fact means that there is no right of subrogation in these circumstances as to the claims of class members against the defendants in this litigation. In short, when Auto Insurers compensated their insureds for property damage to a vehicle deemed a total loss, Auto Insurers did not compensate their insureds for the *same* losses involved in this antitrust matter. Accordingly, Auto Insurers have no subrogation right (equitable or otherwise) to the unrelated antitrust claims of any class member in this litigation.

*Id.* (citing supporting cases).

7

On November 25, 2019, FRS inquired about a briefing schedule "subject of course to the Court's approval." Dkt. 2060, Ex. G. However, FRS did not seek approval to submit its brief to the Court. FRS did not seek leave to intervene. FRS did not even attempt to file its brief on the Court's docket. Instead, on December 13, 2019, FRS simply sent a letter to the Court "by Federal Express." Dkt. 2060, Ex. B. Even then, FRS did not seek intervention, did not seek permission to submit placeholder claims, and did not request permission to identify claimed vehicles (or the information substantiating claims based on amounts paid to any insureds) after the claim submission deadline. Dkt. 2060, Ex. A.

On December 20, 2019, FRS claims it contacted the Court to inquire about the status of its December 13, 2019 letter. Dkt. 2060-12 at ¶ 2. FRS further claims that someone in Judge Battani's chambers advised FRS that, in order to seek a ruling, FRS would need to file a motion seeking leave to intervene to perfect its submission. *Id.* In apparent disregard of this advice, FRS failed to seek intervention at that time. Worse, FRS sent a reply letter to the Court on January 30, 2020 "by Federal Express", and still did not move for intervention. Dkt. 2060, Ex. B.

The deadline to submit claims to participate in the EPP Settlements expired on June 18, 2020, the same day FRS filed its motion.

## ARGUMENT

## I.    This Court Should Deny FRS's Untimely and Futile Request for Intervention

Federal Rule of Civil Procedure 24 governs intervention in federal civil litigation. Intervention may be allowed as of right or permissively. To intervene as of right under Rule 24(a)(2), a proposed intervenor must establish four elements: (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the

action may as a practical matter impair or impede [its] ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *See United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). "The proposed intervenor must prove each of the four factors; *failure to meet one of the criteria will require that the motion to intervene be denied*." *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) (emphasis added).

### A.  FRS Has No Protectable Interest Relating to the Subject of this Antitrust Action

In *Reliastar Life Insurance Co. v. MKP Investments*, 565 F. App'x 369, 372 (6th Cir. 2014), the Sixth Circuit held that "the applicant for intervention must have a direct and substantial interest in the litigation such that it is a real party in interest in the transaction which is the subject of the proceeding." The Sixth Circuit explained that Courts of Appeal "have generally concluded that a party may not intervene . . . solely to protect judgment funds that the party wishes to recover itself." *Id.* (citing *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 717 F.3d 189, 195 (D.C. Cir. 2013)). The Sixth Circuit also has concluded that "an applicant is not due intervention as a matter of right where the applicant seeks only to protect the assets of a party to the litigation in order to ensure that its own contingent claims to those assets remain valuable in the future." *Reliastar*, 565 Fed. App'x at 372 (collecting cases).

Here, FRS has no standing to seek intervention. FRS does not claim that it is a class member. FRS does not even contend that it has subrogation rights against any class member. Instead, FRS seeks intervention based on its potential contingent fee interest in the recovery of insurance companies based on subrogation rights to the claims of certain unidentified class members *if* this Court determines that the insurance companies may recover from the EPP Settlements as subrogees. Indeed, the assignment agreement that FRS attached to its motion purports to transfer to FRS the insurance company's "interest in receiving any settlement or other

funds as a result of the EP Claim," but the agreement is merely window dressing. Dkt. 2064-3 at ¶ 1. It does not change the substance of FRS's contingent fee arrangement with any insurance company. *See* Dkt. 2060-2 (describing FRS's "contingent right to recover proceeds in connection with each claim it files"). On its face, the agreement simply confirms that FRS will retain a 33% contingent interest in any funds recovered, and its insurance company client will retain the 67% balance. *Id.* at ¶ 2. That is exactly the type of contingent interest that intervention rules reject. *See Reliastar*, 565 Fed. App'x at 372.

Even assuming *arguendo* that FRS could have standing to seek intervention on behalf of an insurance company—it cannot—FRS does not contend that any insurance company is a class member in its capacity as an insurer. Instead, FRS claims its insurance company clients are somehow subrogated to the antitrust claims of unidentified class member insureds who may have received insurance payments for property damages sustained by vehicles that the insurance companies deemed to be a total loss. While insurance companies may have subrogation rights against a third party who is found to be at fault for the accidents in question, they do not have any such rights against the defendants in this antitrust litigation, and have no right to share in the proceeds of the antitrust settlements paid by those defendants in this litigation.

**1. Automobile insurance companies do not extend coverage for antitrust injuries.**

FRS has not identified a single automobile insurance policy that extends coverage for overcharges caused by price-fixing, bid rigging, market allocation or any other violations of the antitrust laws. Had an insured actually submitted a claim to his or her insurance company to recover overcharges caused by price-fixing, nothing in any insurance policy remotely suggests that an insurance company would have adjusted, accepted, or processed such a claim. In fact, FRS has conceded that "the Insurance Policies Do Not Cover Antitrust Losses," and thus seeks equitable

subrogation for a type of loss the insurance companies do not insure and do not compensate. Dkt. 2060, Ex. B at 7.

In *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 198 Cal. Rptr. 756, 757 (Cal. App. 1984), the court rejected an insurer's equitable subrogation claim in an antitrust action because the insurer "has not compensated its insureds for the same losses contemplated under the antitrust claim." In so holding, the Court noted that equitable subrogation requires that "the insurer . . . ***has compensated the insured*** for the ***same loss*** for which [the defendant] is liable." *Id.* at 691.

As a matter of their insurance policies, FRS's insurance company clients have not compensated insureds for any antitrust injuries and they cannot establish that any compensation provided to insureds included compensation for antitrust overcharges. *See* 2:12-md-02311, Dkt. 2034 at 5-6, Exs. 1-3. *See also Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581 (7th Cir. 2000) (Easterbrook, J.) (denying subrogation claims of health insurers because "the complaint does not give any reason to believe that the insurers have compensated the insured for antitrust injury or purchased the right to pursue smokers' antitrust claims").

**2. Property damage caused by auto accidents is unrelated to antitrust overcharges.**

In *In re Air Crash Disaster*, 86 F.3d 498, 549 (6th Cir. 1996), the Sixth Circuit explained that "[e]quitable subrogation is a legal fiction, which permits a party who satisfies another's obligation to recover from the party 'primarily liable' for the extinguished obligation." Therefore, "[s]ubrogation is available only when the subrogee pays or discharges a debt for which another is primarily liable." *Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*, 749 F.2d 1277, 1282 (9th Cir. 1984) (finding plaintiff was not entitled to subrogation because it did not pay a debt for which any defendant was primarily liable). *See also Grant Thornton v. Syracuse Sav. Bank*,

961 F.2d 1042, 1048 (2nd Cir. 1992) (affirming dismissal of equitable subrogation claim because plaintiff failed to establish it paid a debt for which the defendant was primarily liable).

Here, the defendants in this litigation are, to say the least, not *primarily liable* for the losses due to property damages sustained in automobile accidents that any insurance company insured against. Indeed, they are not liable at all for those losses. Defendants are automobile parts suppliers accused of fixing the prices of auto parts and causing class members to pay anticompetitive overcharges that were passed on by vehicle manufacturers to automobile dealers and then passed on to the members of the EPP classes. There is no allegation that the overcharges imposed by defendants contributed in any way whatsoever to the property damage losses covered by an insurance company. FRS does not even assert that defendants are *partially liable* for the types of loss that its insurance company clients covered under applicable insurance policies.

As GEICO was forced to concede in its motion to intervene—which EPPs successfully opposed and this Court denied—subrogation rights by insurance companies providing coverage for automobile accidents arise in a completely different context. Subrogation rights are only derived to recoup payment "from the party responsible for the loss. For instance, upon payment to an insured who has been in an automobile accident, [the insurance company] may then seek to recover its payment from the **at-fault driver** who caused the accident." *See* 2:12-cv-00403, Dkt. 267 at 18-19 (emphasis added); Dkt. 281 (denying motion to intervene). That is clearly not the case here. None of the defendants in this case could possibly be jointly or severally liable for any property damages caused by someone who was at fault for causing an automobile accident.

Thus, its is clear that the anticompetitive overcharges alleged in this action arise from an entirely different conduct than any claims for property damage losses covered by an insurance company. This stark difference—combined with the fact that FRS's insurance company clients do

not compensate insureds for alleged antitrust violations—is fatal to FRS's request for intervention and purported subrogation claims on behalf of its clients.[3]

**B. The Disposition of this Action Will Not Impair or Impede Any Substantial Interest**

In *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 829-30 (E.D. Mich. 2018), this Court found an insurance company lacks antitrust standing in its capacity as an insurer for "payments to insureds or third-party claimants for the full value of vehicles declared a total loss." This Court further noted the remoteness of any potential recovery for an insurance company when there is no indication whatsoever that defendants' alleged overcharges somehow affect the claim-adjustment process, or somehow produce any actual increase in indemnity payments. *Id.* at 829.

Since this Court's August 2018 order in *GEICO*, FRS's insurance company clients have had plenty opportunity to seek intervention in this litigation to assert their claim to participate in the settlements. FRS's strategic decision to delay seeking intervention cannot support an impairment of any substantial interest. As explained above, FRS has not identified a single automobile insurance policy that provides coverage for overcharges caused by antitrust violations. FRS has not identified a single case that allows an insurance company to recover overcharges caused by antitrust violations. FRS also has not identified a single case that allowed intervention for subrogation of a type of loss not covered by the insurance policy itself. Because FRS cannot establish that it compensated any class member for the antitrust violations alleged in this action, FRS has no substantial interest that can be impaired by the disposition of this litigation.

---

[3] In footnote 9 of its motion, FRS includes a string cite to cases that generally suggest that intervention is proper to protect a subrogation interest. However, none of the cases involves potential subrogation of antitrust claims that an underlying insurance policy never covered. Thus, each cited case is inapposite.

### C. FRS's Motion to Intervene is Untimely

The Sixth Circuit has articulated five factors in determining whether intervention is timely: "1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention." *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

#### 1.   This complex class action has progressed for over eight years.

The first timeliness factor heavily weighs against intervention. EPPs filed their initial complaint in this litigation in 2011, and subsequently filed over 40 additional actions in the years since then. The parties have taken hundreds of depositions and engaged in discovery of millions of pages of hard copy and electronically stored information. Across this sprawling litigation, this Court has ruled on dozens of motions to dismiss, motions for judgment on the pleadings, motions to compel, motions to strike, motions for preliminarily approval, motions for final approval, and motions for final judgment.

Indeed, in the EPP actions, FRS's motion to intervene comes ***after*** final judgment has been entered against the Round 1, Round 2, and Round 3 Settlement Defendants, ***after*** this Court granted preliminary approval concerning the Round 4 Settlements, and on the very same day the deadline to submit claims expired. *See, e.g.,* 2:12-cv-00403, Dkt. 291. Given the progress of this litigation, and the untimeliness of FRS's motion, intervention would not be proper. *See Johnson v. City of Memphis*, 73 F. App'x 123, 132 (6th Cir. 2003) (finding extensive progress in the case counsels

against intervention). *See also Bailey v. White*, 320 F. App'x 364, 366 (6th Cir. 2009) (affirming denial of motion to intervene because the class action suit had progressed through seventeen months of litigation before the intervention motion was filed).

### 2.   Intervention is entirely inappropriate to accomplish FRS's stated purpose.

The second timeliness factor—the purpose for which intervention is sought—likewise weighs against intervention. FRS says it seeks to intervene to "declare that the Insurers, as subrogees to their insureds, may recover for total loss vehicles from the End-Payor Settlements." Dkt. 2060 at 3. However, FRS has failed to identify any automobile insurance policy that extends coverage for the antitrust injuries alleged in this action. FRS has failed to provide any evidence that any insurance company actually compensated class members for anticompetitive overcharges caused by price-fixing or other antitrust violations suffered at the point of purchase. FRS also fails to explain how payments for ***used*** vehicles (that suffered property damage many years after purchase) could possibly compensate class members for anticompetitive overcharges sustained at the time of purchase or lease of a new vehicle. *See* Dkt. 2034 at 13-14; *GEICO*, 345 F. Supp. 3d at 829-30 (finding *speculative* the apparent theory of harm related to total loss payments).

FRS also says it seeks to "clarify that the Insurers may supplement their claims in accordance with the Court's resolution of the threshold legal issue." Dkt. 2060 at 3. FRS raised the issue of "placeholder" claims in November 2018. Dkt. 2060, Ex. C. Settlement Class Counsel flatly rejected that notion over 18 months ago. Dkt. 2060-2 at ¶¶ 4-7.

### 3.   FRS has known of its interest in this case since August 2018.

The third timeliness factor—the time when FRS knew or should have known of its interest in the case—also militates against intervention. By August 2018, FRS knew this Court denied antitrust standing to GEICO for "payments to insureds or third-party claimants for the full value

of vehicles declared a total loss," and knew this Court found the viability of any recovery under a theory of subrogation could not be determined on the record before it. *See* Dkt. 2060 at 1 (quoting *Autoliv v. GEICO*, 345 F. Supp. 3d 799, 829-30 (E.D. Mich. 2018)).

By November 2018, FRS knew it needed to seek permission from the Court to submit "placeholder" claims. Dkt. 2060, Ex. C. By January 2019, FRS knew that Settlement Class Counsel rejected any contention that insurance companies could assert subrogation rights against the EPP settlement funds. Dkt. 2060-2 at ¶¶ 5-6. By December 2019, FRS also knew that it needed to seek intervention with the Court if it wanted to get any of its legal issues heard. Dkt. 2060-12.

Now over 22 months have passed since FRS either knew or should have known of its interest in this matter, over 18 months have passed since FRS knew Settlement Class Counsel disagreed with its position, over 7 months have passed since it knew its papers hadn't been filed with the Court and a court employee advised FRS that it would need to file a motion to be heard, and the claims submission deadline expired the same day FRS filed its present motion to intervene.

This is a clear-cut case of untimeliness. *See e.g., Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 2010 U.S. Dist. LEXIS 130104 (E.D. Mich. Dec. 9, 2010) (Tarnow, J.) (denying intervention as untimely because "[t]here is no reason it should have taken eight months to take action in this matter. If the Commissioner was interested in intervening, he should have promptly attempted to do so."); *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000) (affirming denial of motion to intervene as untimely because the proposed intervenor "had numerous opportunities to intervene in this litigation in order to safeguard its interests" but waited over seven months before seeking intervention); *Stupak-Thrall v. Glickman*, 226 F.3d 467, 474 (6th Cir. 2000) (affirming denial of motion to intervene as untimely when the intervenor failed to file the motion until seven months after learning its interest in the

16

action, and waited until after the discovery period had closed); *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584-85 (6th Cir. 1982) (affirming denial of motion to intervene as untimely in a class action when the motion was filed after preliminary approval of a consent decree in settlement of the class action).

### 4.   Intervention would delay settlement distribution and severely prejudice the class.

The fourth timeliness factor—prejudice to the existing parties—clearly weighs against intervention. Intervention by FRS would undoubtedly delay this action, delay the settlement distribution, and severely prejudice class members who timely filed claims.

EPPs and Defendants have vigorously litigated these actions, briefed multiple motions and responses, attended lengthy negotiations and mediations, negotiated complex settlement agreements, negotiated extensive cooperation terms, obtained multiple preliminary approvals, administered costly nationwide class notice, briefed extensive motions on final approval, and defeated a motion to intervene filed by an insurance company with near identical claims.

Despite the history of this action, and clear instructions from the Court and Claims Administrator, FRS has never identified any of the vehicles or class members for which its alleged subrogation claims would apply. All class members would be unquestionably prejudiced by FRS's attempt to submit claims *after* the claim submission deadline because—unlike FRS—they timely submitted claims, and the addition of "many thousands" of late-filed claims would substantially delay claims processing and further delay distribution of the settlement funds.

Critically, FRS has never identified an automobile insurance policy that compensates insureds for overcharges caused by antitrust violations, and FRS has not identified a mechanism for determining whether or how much an insurance company may have compensated a class member for such overcharges. Even for class members who do have a relationship with FRS's

insurance company clients, and who did receive some compensation for total loss vehicles, those class members—which are yet to be identified—will be prejudiced because they will have no opportunity to conduct discovery against the insurance company, no opportunity to refute the allegations that an insurance company may assert, and have received no warning that an insurance company could take away the recovery of class members when the insurance policy itself provides no coverage for overcharges caused by antitrust violations.

FRS claims no prejudice exists because it filed its motion on the same day as the claims deadline and before the claims administrator completed processing proofs of claim. Dkt. 2060 at 3. However, the claims administration process is now underway in light of the expiration of the claims submission deadline. To allow claims for "many thousands" of vehicles to be submitted long after the claims deadline will substantially delay the completion of the claims administration process and adversely affect the interests of the true class members. Moreover, EPPs never agreed that FRS could submit "placeholder" claims. FRS's unilateral decision to do so is entirely a function of the choice it made to avoid incurring expenses on its part—expenses that would not be borne by its insurance company clients.[4]

There is no basis for FRS to prejudice class members in this manner. Indeed, FRS provides no explanation whatsoever for its failure to seek intervention over 18 months ago, and provides no excuse for its failure to seek intervention over 6 months ago when a Court clerk instructed FRS to do so. FRS's dilatory conduct is inexplicable and will undoubtedly prejudice class members who

---

[4] FRS's false suggestion that class counsel somehow acquiesced to its request to supplement claims after the claim submission deadline is entirely incorrect. As FRS itself admits, class counsel repeatedly rejected any notion that FRS could submit "placeholder" claims that it would later supplement. Dkt. 2060-2 at ¶¶ 5-7. Class counsel and the Claims Administrator did not need to reject their prejudicial proposal again. If FRS wanted clarity on that dispute, it should have timely submitted the dispute to this Court—but it didn't.

timely submitted claims and have waited years to recover settlement funds. For these reasons alone, FRS's motion to intervene should be denied.

## D.  Settlement Class Counsel Adequately Represent the Interests of Class Members

Applicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit. *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 293 (6th Cir. 1983). This Court has repeatedly determined that the class representatives and Settlement Class Counsel "fairly and adequately protect the interests of the class." *See, e.g.,* 2:13-cv-703, Dkt. 102 at 26 (Final Approval of Round 1 Settlements); 2:12-cv-403, Dkt. 239 at 26 (Final Approval of Round 2 Settlements); 2:12-cv-103, Dkt. 628 (Final Approval of Round 3 Settlements). At the August 1, 2018 Final Fairness Hearing for the Round 3 Settlements, this Court further explained:

> there's adequate representation here, and that goes both to not only the individual plaintiffs but specifically, and I think more importantly in this case, to the attorneys, and that the attorneys are well versed in the action and also in the procedural mountain in Rule 23 class action cases of this size and nature. So, the Court confirms the appointment of counsel, first of all, for the class . . .

Transcript of August 1, 2018 Final Fairness Hearing, at 21-22.

For claims concerning the insurance companies' own fleet vehicle purchases, there is no question that Settlement Class Counsel adequately represent the interests of the insurance companies as end-payor purchasers. *See, e.g., Reliastar*, 565 F. App'x at 373 (denying intervention where proposed intervenor and named plaintiff "share the same ultimate objective . . . to defeat the insurers' attempt to rescind the policies and avoid payout").

With respect to the subrogation claims, however, Settlement Class Counsel informed FRS in January 2019 that they rejected any notion that an insurance company could recover from the EPP Settlements as subrogees. FRS's failure to seek intervention for over 18 months after it learned of this disagreement does not support intervention. Rather, FRS's untimeliness is sufficient on its

19

own to deny intervention. *See Grubbs*, 870 F.2d at 345 (finding "failure to meet one of the [intervention] criteria will require that the motion to intervene be denied").

## II.   <u>Permissive Intervention Would Be Wholly Improper</u>

To intervene permissively, a proposed intervenor must file a timely motion that alleges at least one common question of law or fact between the action and its alleged claim. *Michigan*, 424 F.3d at 445. If it does, the district court must then consider whether intervention will unduly delay or prejudice the adjudication of the parties' rights. *Id.*; Fed. R. Civ. P. 24(b)(3). In this case, FRS has not identified a common question of law or fact between this action and FRS's claims. FRS also has not requested permissive intervention.

Even if FRS had requested permissive intervention—it did not—permissive intervention requires that the motion be filed timely. *See Velsicol Chemical Corp. v. Enenco, Inc.*, 9 F.3d 524, 531 (6th Cir. 1993). As discussed above, FRS's motion was clearly untimely. Thus, any potential consideration of permissive intervention should be denied.

## <u>CONCLUSION</u>

This Court should deny FRS's untimely motion to intervene.

Dated:   July 2, 2020                    Respectfully submitted,

                                        SUSMAN GODFREY L.L.P.

                                        <u>/s/ Chanler A. Langham</u>
                                        Marc M. Seltzer
                                        Steven G. Sklaver
                                        1900 Avenue of the Stars, Suite 1400
                                        Los   Angeles,   California   90067-6029
                                        Telephone: (310) 789-3100
                                        mseltzer@susmangodfrey.com
                                        ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
SUSMAN GODFREY LLP
1000 Louisiana Street, 5100
Houston, Texas 77002
Telephone: (713) 651-9366
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Adam J. Zapala
Elizabeth Castillo
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
fdamrell@cpmlegal.com
azapala@cmplegal.com
ecastillo@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
399 Park Avenue, Suite 3600
New York, New York 10022
Telephone: (212) 980-7400
hsalzman@rkmc.com
bpersky@rkmc.com
wreiss@rkmc.com

***Interim Co-Lead Class Counsel for End-
Payor Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Chanler A. Langham*      
Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
