# Exhibit 1

Wayne E. DUHA, Plaintiff–
Appellant/Cross–
Appellee,

v.

AGRIUM, INCORPORATED, Agrium
U.S., Incorporated, and Agroservicios
Pampeanos, S.A., Defendants–Appel-
lees/Cross–Appellants.

Nos. 04–2505, 04–2548.

United States Court of Appeals,
Sixth Circuit.

Argued: Jan. 31, 2006.

Decided and Filed: May 23, 2006.

**Background:** A U.S. citizen sued his for-
mer employer, asserting a number of
causes of action related to his employment
in Argentina and termination. The United
States District Court for the Eastern Dis-
trict of Michigan, David M. Lawson, J., 340
F.Supp.2d 787, denied employer's motion
to supplement the record, and dismissed
the complaint on grounds of forum non
conveniens, and parties cross-appealed.

**Holding:** The Court of Appeals, Rogers,
Circuit Judge, held that district court
erred in failing to apply the deference
required for a forum choice made by a
U.S. plaintiff, in its weighing of the rela-
tive ease of access to documents and live
testimony, and in disregarding a substan-
tial portion of employee's claims in balanc-
ing the convenience of the alternative fo-
rums.

Vacated and remanded.

R. Guy Cole, Jr., Circuit Judge, filed dis-
senting opinion.

**1. Federal Courts ⟵45**

A dismissal on forum non conveniens
grounds is appropriate when the defendant
establishes, first, that the claim can be
heard in an available and adequate alter-
native forum and, second, that the balance
of private and public factors listed in *Gulf*
*Oil* reveals that trial in the chosen forum
would be unnecessarily burdensome for
the defendant or the court.

**2. Federal Courts ⟵45**

In dismissing, on forum non conve-
niens grounds, U.S. citizen's causes of ac-
tion against American employer related to
his employment in Argentina and termi-
nation, district court erred in failing to
apply the deference required for a forum
choice made by a U.S. plaintiff, in its
weighing of the relative ease of access to
documents and live testimony, and in dis-
regarding a substantial portion of employ-
ee's claims in balancing the convenience of
the alternative forums; district court did
not specifically weigh the locations of docu-
ments and the impact of foreign languages
when evaluating the ease-of-access factor,
gave little regard to the difference be-
tween interstate and international travel in
considering cost of obtaining attendance of
witnesses, and dismissed distinct claims
effectively omitted from the forum non
conveniens analysis.

**3. Federal Courts ⟵45**

In general, the standard of deference
for a U.S. plaintiff's choice of a home
forum permits dismissal on forum non con-
veniens grounds only when the defendant
establishes such oppressiveness and vexa-
tion to a defendant as to be out of all
proportion to plaintiff's convenience, which
may be shown to be slight or nonexistent.

**4. Federal Courts ⟵45**

With regard to forum non conveniens
analysis, although the availability of com-
pulsory process is properly considered
when witnesses are unwilling, it is less
weighty when it has not been alleged or
shown that any witness would be unwilling
to testify.

**5. Federal Courts ⚊45**

Dismissal of distinct claims effectively omitted from the forum non conveniens analysis is not within the district court's discretion.

**6. Federal Courts ⚊45**

District court should have waited to deny motion to supplement the record until after the deadline to file reply brief had passed on underlying forum non conveniens motion.

**7. Federal Courts ⚊45**

Movant did not show good cause to supplement the record after the time for supplementation had expired since movant's new materials contained nothing that could have exerted great influence on underlying forum non conveniens motion.

————

**ARGUED:** Stuart H. Deming, Deming PLLC, Kalamazoo, Michigan, for Appellant. Andrew S. Rosenman, Mayer, Brown, Rowe & Maw, Chicago, Illinois, for Appellees. **ON BRIEF:** Stuart H. Deming, Deming PLLC, Kalamazoo, Michigan, for Appellant. Andrew S. Rosenman, Danuta Bembenista Panich, Mayer, Brown, Rowe & Maw, Chicago, Illinois, for Appellees.

Before: COLE, GIBBONS, and ROGERS, Circuit Judges.

1. Agrium, Inc. is a Canadian parent company that owns an American subsidiary, Agrium U.S., Inc., and an Argentine subsidiary, Agroservicios Pampeanos, S.A.

2. The complaint sets forth claims based on breach of contract, breach of express covenant of good faith and fair dealing, promissory estoppel, wrongful termination, intentional

ROGERS, J., delivered the opinion of the court, in which GIBBONS, J., joined.

COLE, J. (pp. 882–887), delivered a separate dissenting opinion.

**OPINION**

ROGERS, Circuit Judge.

In this diversity action the district court dismissed the complaint on grounds of *forum non conveniens*, concluding that a more convenient forum was in Argentina, where the plaintiff worked at the time of his dismissal. The plaintiff, Wayne Duha, sued his former employer, Agrium, Inc.,[1] asserting a number of causes of action related to his employment and termination. Duha appeals, and Agrium cross-appeals the district court's order denying Agrium's motion to file an updated declaration stating that some of its potential witnesses are no longer employed by Agrium.

Duha's complaint contains 45 counts, asserting various contract and tort theories.[2] The district court dismissed many of Duha's claims without including them in its *forum non conveniens* analysis, and gave U.S. citizen Duha's choice of forum too little deference, particularly in light of a proper consideration of the private interest factors governing the law of *forum non conveniens*. We therefore vacate the district court's order dismissing the complaint on *forum non conveniens* grounds and remand for further proceedings. We decline to supplement the record on appeal because the district court's order denying its

infliction of emotional distress, breach of employment agreement for benefits earned and expenses incurred, unjust enrichment, quantum meruit, misrepresentation, silent fraud, fraud, intentional interference with prospective business advantage, and violations of the Michigan Bullard–Plawecki Employee Right to Know Act.

motion to file the updated declaration was not an abuse of discretion.

## I. BACKGROUND

This case arose out of Agrium's termination of Duha's employment in Argentina. In 1998, Duha agreed to move to Argentina for an extended time to help improve Agrium's Argentine operations. Duha negotiated a contract with his employer, the terms of which make up part of this dispute. In reliance on this contract, Duha moved to Argentina. While there, Duha alleges that he discovered that employees of Agrium's Argentine subsidiary were engaging in bribery and other unsavory practices. He says that he informed his superiors of these practices and also reported them to U.S. authorities. Agrium subsequently fired him, giving as a reason that Duha had offered the services of prostitutes as a work incentive to a subordinate. Duha was terminated within two days of his comment about prostitution. Duha's suit seeks recovery pursuant to legal theories related to the alleged wrongfulness of his termination, and based on contractual and other asserted obligations arising in one way or another out of the fact of his termination.

Defendant Agrium is composed of three entities relevant to this lawsuit, incorporated in three different countries: first, the parent company Agrium, Inc. (Agrium) is Canadian; second, Agrium U.S., Inc. (Agrium US) is American; third, Agroservicios Pampeanos, S.A. (ASP) is Argentine. Agrium International (Agrium Int'l) is a strategic business unit of Agrium. Agrium U.S. and ASP are Agrium's wholly-owned subsidiaries.

### A.  Duha as an Agrium U.S. Employee

In 1993, Agrium U.S. bought Duha's employer, Crop Production Service, Inc. (Crop Production). Duha had worked for Crop Production since April of 1980. At that time, Duha lived in Bay City, Michi-

gan. In 1996, Agrium U.S. transferred Duha to its regular staff, where he served until 1998 as Marketing Services Manager. Duha alleges that as an Agrium U.S. staff member he "was given credit for a number of years of service that would bear on benefits and ultimately my severance." According to Duha, Agrium's president sent Duha a letter promising that he would be awarded "3,000 stock options" for his contributions to Agrium.

### B.  The Assignment to Argentina and Agrium's Offer Letter

In 1998, while he was still in Michigan, Duha accepted a long-term assignment that would require him to relocate to Argentina for at least 25 months. An email from Ron Wilkinson, the General Manager of Agrium's operations in South America, to Kathy Kopelchuk, a Human Resources Manager, on July 3, 1998, noted: "Wayne Duha has accepted [the offer to work in Argentina]." JA 792. Although Duha moved to Argentina to take this job, he maintained a residence in Bay County, Michigan. Duha took the position in reliance on inducements held out by Agrium. Agrium presented many of these inducements to Duha in a letter offering him the Argentina position, dated July 30, 1998. It described Duha's job title as "Manager, ASP." The letter also said that "[y]our base benefits will continue to be administered to the benefit levels available to you under the Agrium U.S. benefits program." JA 198.

The letter informed Duha that he would "be placed on an Expatriate Program." JA 198. This program included a "foreign service premium," living allowances, and adjustments to these payments for "additional Argentine or American tax liability." JA 198. Duha would also be eligible, if repatriated, for the company's "normal relocation policy." JA 199. In consideration

for these promises, Agrium expected Duha to "devote your time, energy, and skill to the" company and not to hold any other job during the performance period "without the express written permission of the Vice President, International."   JA 199. Wilkinson concluded the letter by noting that Agrium "will utilize common sense and fairness in resolving" any "needs and issues" that arise regarding his employment terms.   JA 200.

Duha claims that, at the time he was sought out for the long-term foreign assignment, he was entitled to severance pay amounting to one month of his base pay for each year of service for up to 18 years of service.

### C.   The Use of Duha's Michigan Home to Further Agrium's Business Interests

During his time in Argentina and before then, Duha alleges that Agrium used his home in Michigan "as a means for purchasing equipment and supplies for ASP." JA 133, 2351.   "It was my understanding," Duha stated in an affidavit,

> that the purpose for having someone in the United States acquire equipment, supplies and provision of services was to save Agrium and ASP the problems and costs associated with letters of credit as well as a 'turnover tax' of six percent in Argentina.   U.S. vendors were assured of payment by doing business with me from a U.S. point of purchase as a representative of Agrium.

JA 2351 (citation omitted).   Duha estimates that more than $20 million of goods were purchased in connection with this arrangement.

### D.   Duha's Experience in Argentina

Duha alleges that, while he was in Argentina, he discovered that ASP was engaging in shady record-keeping and business practices, including bribery in violation of the Foreign Corrupt Practices Act, 15 U.S.C.  § 78dd *et seq.* Duha reported relevant violations to U.S. authorities.   He also reported such behavior to his superiors, including Robert Rennie, Greg McGlone, and Wilkinson. Agrium commissioned an investigation of these alleged practices by Zachary Greenhill of Greenhill Partners, P.C. This investigation showed that Duha's concerns were well-founded, according to Duha. Duha has also produced an email from Richard Gearheard, Agrium's Senior Vice President for North American Retail, indirectly substantiating Duha's claims:

> I think most of the improvement in the ASP are [sic] due to Duha's efforts.   He developed a marketing plan and ensured that it was followed.   He is making the trips to the retail sites and confirming that the plans are being implemented. As you know, these trips are not fun. He is the person that complained about the accounting and data processing.   He was right.

JA 136.   Gearheard was based in Denver.

### E.   Duha's Termination and Attempted Conciliation With Agrium in Argentina

Around February 1, 2000, Rennie, a Vice President for South American operations, sent an email to McGlone, General Manager of ASP, alleging that Duha "had made a commitment on behalf of the company" to "pay for the best hooker in Buenos Aires" as an incentive to Manuel Ron, a Farm Center Manager.   JA 138, 2419.   On the morning of February 3, 2000, Ronald Delaney, an ASP Human Resources Manager, informed Rennie and McGlone via email that Ron had said that Duha's comment about a hooker was "made within a context of fun," and that it should not be taken seriously.   JA 138, 2419.   Later that day, according to Duha, McGlone gave Duha written notice of termination for cause,

based on the hooker comment. Duha insists that he received no warning or any other discipline.

After his termination, Duha discovered that he previously had been named "Director suplente" of ASP without his knowledge, and that ASP continued to hold him out as a "Director suplente" after his termination until February of 2001. Moreover, Duha alleges that his "stock options" were cancelled on April 3, 2000. Duha moved back to Michigan in late June 2000. He received no severance pay (not even the severance pay he claims he was entitled to as a result of his U.S.-based employment), nor did he receive pay for unused vacation that had accrued prior to his time in Argentina. Duha argues that Agrium owes him money for business expenses incurred before his termination that had not yet been paid.[3]

While still in Argentina Duha sought legal conciliation with Agrium, which in Argentina "is a mandatory preliminary procedure leading to litigation." *Duha v. Agrium, Inc.*, 340 F.Supp.2d 787, 794 (E.D.Mich.2004). Duha reached a tentative settlement with ASP that unraveled when Agrium required a release of claims against Agrium and Agrium U.S. in addition to ASP. *See id.*

### F. Duha's Move to Indiana

Duha moved back to Michigan in June of 2000, where he remained until September of 2000. He then moved to Fort Wayne, Indiana, to take a new job (with less compensation) with Yargus Manufacturing, Inc. Duha alleges that, due to the intervention of Agrium U.S. Board of Directors member Thomas Warner, a business opportunity that was intended to have been awarded to Yargus was awarded to a competitor, potentially depriving Duha of the commission for the project. According to Duha, Warner had earlier said at a meeting that Agrium should "not engage in business with" Duha "as a result of" this lawsuit. JA 141.

### G. Commencement of the Action and Location of the Evidence

Duha subsequently brought this suit in the United States District Court for the Eastern District of Michigan in January of 2003. Duha filed a 30–count complaint, which he ultimately expanded by amendment to 45 counts. The complaint sets forth many claims under various contract and tort theories, including: claims centering on theories of breach of contract, breach of the covenant of fair dealing, wrongful termination, fraud or misrepresentation, unjust enrichment, tortious interference with business relations, and statutory claims related to Agrium's handing of Duha's employment records. The district court authorized limited discovery on the issues of *forum non conveniens* (termed "venue" in the pretrial scheduling order) and personal jurisdiction, with a cutoff date of July 31, 2003. The parties engaged in various methods of discovery that produced some 4,000 documents. The district court also permitted the taking of some additional depositions beyond the initial discovery cutoff date. The parties engaged in discovery, motions practice, and briefing which culminated in the district court's 2003 published opinion conditionally dismissing the complaint on grounds of *forum non conveniens. See Duha*, 340 F.Supp.2d at 801.

As the district court's opinion indicates, the evidence in this case so far generally consists of documents and potential witness testimony. "[M]ost of the relevant

---

**3.** Duha acknowledges that Agrium U.S. sent him a check labeled "Termination Benefit" for $2,451.36.

documents are in the possession of" Agrium. *Id.* at 797. Relevant witnesses reside in Canada, the United States, and Argentina. The parties have submitted long lists of potential witnesses, totaling over one hundred. Some of the people named appear to have little or no information relevant to this action.

Approximately 27 party and eight nonparty witnesses with potentially relevant information reside in Argentina. Approximately 22 party and 67 nonparty witnesses with potentially relevant information reside in the United States. Approximately 39 party and three nonparty witnesses with potentially relevant information reside in Canada. No potential nonparty witness has been alleged or shown to be unwilling to testify. A roughly equal number of the most crucial witnesses—a handful—reside in each of the three countries (i.e., the United States, Canada, and Argentina).

### H. The District Court's Opinion and Order Dismissing the Complaint

The district court dismissed the complaint, holding that Argentina is a reasonable and available alternative forum and that the balance of private and public interests favors dismissal. *See id.* at 793–801. The district court observed that Argentina was an available and adequate forum because Duha could bring his claims there, Agrium was amenable to service of process there, and Duha had already resorted to Argentina as a forum to attempt to resolve his claims with ASP. *See id.* at 793–94.

After holding that Argentina is an acceptable alternative forum, the district court balanced the private and public interests and found that they weighed in favor of dismissal. *See id.* at 794–801. Applying the private interest factors prescribed by *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the district court held that Argentina offered easier access to witnesses. *See Duha*, 340 F.Supp.2d at 795–96. The district court also held that the Argentina was a better forum than Michigan because Agrium intended to call nonparty witnesses in Argentina that were "central" to its defense. *See id.* at 796. These nonparties could not be compelled to testify in Michigan. *See id.* An Argentine court, however, could compel these nonparties to testify. *See id.*

The district court further held that Argentina was a more convenient forum because compulsory document discovery from Argentine sources would not be available to Agrium in Michigan, although this factor did not weigh "heavily" in favor of dismissal because Agrium possesses "most of the relevant documents." *Id.* at 797. Most of the documents are in English, but the district court held that this did not adequately weigh in favor of retaining the case because Agrium had agreed to translate documents into Spanish. *See id.*

The district court also held that the *Gulf Oil* public interest factors favored dismissal of this action. *See id.* at 799–801. Applying the public interest factors, the district court held that Michigan has little or no interest in this case, but Argentina has a strong interest in alleged wrongdoing by ASP, a company domiciled there. *See id.* at 799–800. The Foreign Corrupt Practices Act, the district court observed, creates no private cause of action and thus does not supply a federal interest in retaining the suit. *See id.* Argentine citizens stand to be more affected by a trial than Michiganders. *See id.* at 800. Finally, it is "likely" that Argentine law would apply. *See id.* at 800–01. These factors weigh in favor or dismissal, the district court held. *See id.* at 799–801.

In its Conclusion section, the district court permitted Duha to sever his claim

for tortious interference with business relations. The district court stated:

> The Court is mindful that a minor portion of the plaintiff's second amended complaint contains allegations that defendants other than Agroservicios interfered with the plaintiff's business opportunities after he returned from Argentina, and Argentina may not be an appropriate forum for those claims. However, the plaintiff may sever those claims and file them in an appropriate American forum, although likely not in Michigan, if he chooses.

*Id.* at 801.

I. *Agrium's Motion to Supplement the Record with Linda Dalgetty's Updated Declaration*

Agrium moved to supplement the record with an updated declaration from Linda Dalgetty on May 19, 2004. This updated declaration stated that the employment of several Argentine employees of ASP who were potential witnesses had been terminated. Noting that the time to file supplementary record evidence had expired on February 13, 2004, the district court denied the motion. Agrium had not established "good cause" to file additional record evidence. The district court denied the motion on June 17, 2004, before Agrium filed its reply brief on June 21, 2004, and it is undisputed that Agrium's reply brief, as opposed to Linda Dalgetty's updated declaration, was not late.

II. FORUM NON CONVENIENS

[1] The district court's *forum non conveniens* determination cannot be upheld, even under the deferential clear-abuse-of-

discretion scope of review that we are to apply. *See Stewart v. Dow Chemical Co.*, 865 F.2d 103, 105 (6th Cir.1989). A dismissal on *forum non conveniens* grounds is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors listed in *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839, reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 n. 23, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The district court properly found that there was an available and adequate alternative forum in the Argentine courts,[4] but erred in its application of the *Gulf Oil* factors.

[2] Three considerations lead us to this conclusion. First, the district court did not apply the deference required for a forum choice made by a U.S. plaintiff under *Koster v. American Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). Second, the district court erred in its weighing of the relative ease of access to documents and live testimony. Third, the district court, in balancing the convenience of the alternative forums, disregarded a substantial portion of plaintiff's claims.

A. *The Heightened Deference Accorded a Home Plaintiff's Selection of a Home Litigation Forum*

[3] First, the district court appears to have given too little deference to Duha's choice of forum in light of Duha's status as a U.S. citizen. In general, the standard of

---

**4.** Duha challenges the district court's reasoning on the first issue—the availability and adequacy of the Argentine forum—for the first time on appeal. *Compare* JA 1699–1705, 2332–46 *with* First Br. at 23–25, Third Br. at 3–12. He may not do so. *See Saylor v. United States*, 315 F.3d 664, 669 (6th Cir.

2003). We therefore assume the availability and adequacy of the Argentine forum. Duha did say that he felt that he would be put in danger if he went back to Argentina, but the district court correctly found the evidence supporting this allegation "unsubstantiated." *See Duha*, 340 F.Supp.2d at 794.

deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant "establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Koster,* 330 U.S. at 524, 67 S.Ct. 828; *see also Piper,* 454 U.S. at 255–56 n. 23, 102 S.Ct. 252 ("In *Koster,* we stated that '[in] any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.' "); *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 30 (2d Cir.2002) (stating in a suit brought by U.S. plaintiffs that "plaintiffs should not have been deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience").

In this case, the district court never indicated that it was giving heightened deference by virtue of the U.S. status of plaintiff.[5] More significantly, the degree of deference given by the district court resembles the degree of deference generally given to the forum selections of foreign plaintiffs. For example, in *Piper,* a case involving foreign plaintiffs, the Su-

preme Court upheld a district court's dismissal of an action where the balance of private and public interest factors "clearly point[ed] towards trial in the alternative forum." 454 U.S. at 255, 102 S.Ct. 252. Similarly, the district court dismissed Duha's action because the *Gulf Oil* factors "weigh in favor" of the Argentine forum. *Duha,* 340 F.Supp.2d at 801.

The *Piper* Court implied that the degree of deference given "ordinarily" applies to foreign plaintiffs' choice of forum "with less force." *See* 454 U.S. at 255, 102 S.Ct. 252. This court has on many occasions applied less deference in cases involving foreign plaintiffs. *See, e.g., Stewart,* 865 F.2d at 106 (affirming dismissal of foreign plaintiffs' suit and stating that less deference is owed to their choice of forum); *Dowling v. Richardson–Merrell, Inc.,* 727 F.2d 608, 615 (6th Cir.1984) (affirming dismissal of foreign nationals' action where "on balance" the *Gulf Oil* factors favored the alternative forum); *Rustal Trading US, Inc. v. Makki,* 17 Fed.Appx. 331, 338 (6th Cir.2001) ("[T]he district court was not required to defer to Rustal's choice of forum in this case, inasmuch as Rustal is . . . a foreign plaintiff."). This lesser standard of deference should presumptively not apply for a U.S. plaintiff's choice of forum. *See Koster,* 330 U.S. at 524, 67

---

5. The district court did not clearly state precisely how much deference it was giving to Duha's choice of forum, but it did not give the required level of deference. It nowhere required Agrium to establish vexatiousness and oppressiveness out of proportion to slight or nonexistent relative convenience of the plaintiff. *See Koster,* 330 U.S. at 524, 67 S.Ct. 828.

   The district court noted that "the court should give deference to the plaintiff's choice and dismiss only when 'the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court.' " *Duha,* 340 F.Supp.2d at 792 (quoting *Piper* ). This "unnecessarily burdensome" language from *Piper* does not incorporate the heightened defer-

ence for U.S. plaintiffs because the *Piper* Court used this language to describe cases involving all deference levels. *See Piper,* 454 U.S. at 256 n. 23, 102 S.Ct. 252 ("*As always,* if the balance of conveniences suggests . . . .") (emphasis added).

   Other language used by the district court is consistent with the lack of particular deference based on the U.S. status of Duha: "[t]he Court finds that the defendants have met their burden of demonstrating that there is a reasonable alternative forum in Argentina for the adjudication of the plaintiff's claims, and both the private and public interest factors weigh in favor of the alternate forum." *Duha,* 340 F.Supp.2d at 801.

S.Ct. 828; *Piper,* 454 U.S. at 255–56 & n. 23, 102 S.Ct. 252; *DiRienzo,* 294 F.3d at 30.

It is true that in a case involving a U.S. citizen, this court has held that the district court did not need to make a "finding" that trial in the U.S. forum would be "oppressive" or "vexatious" to the defendants.[6] *Kryvicky v. Scandinavian Airlines Sys.,* 807 F.2d 514, 517 (6th Cir.1986). We explained that the fact that a plaintiff has filed suit in his home forum would not automatically bar dismissal on *forum non conveniens* grounds. *Id.* (citing *Piper Aircraft,* 454 U.S. at 255 n. 23, 102 S.Ct. 252). Our analysis in that case was consistent, however, with a substantially higher degree of deference for the choice of home-forum plaintiffs. Moreover, the actual ties to the home forum were much weaker in *Kryvicky* than in the present case. In *Kryvicky,* the plaintiff had lived outside the United States for about nine years prior to her action. *See id.* at 515 (observing that the plaintiff had moved from Michigan to Brazil in 1975, from Brazil to Spain in 1983, from Spain back to Michigan after November 1983, and filed her action on May 23, 1984). Duha was absent from the U.S. for far less than nine years; he did not even complete his 25 months in Argentina. Moreover, while Duha was out of the U.S. he maintained a residence in Michigan where his immediate family lived, but the court in *Kryvicky* nowhere indicated similar facts anchoring the *Kryvicky* plaintiff to the U.S. forum. *See id.*

Accordingly, we read *Kryvicki* not to equate the deference accorded U.S. and foreign plaintiffs, but rather to reject a specific requirement that district courts make a finding of "vexation" or "oppression," especially where the U.S. connection of the plaintiff is somewhat attenuated. *Kryvicki* does not eliminate the significantly higher deference accorded home plaintiffs in U.S. courts, and apart from any technical requirement of an explicit finding of "vexation" or "oppression," the district court's dismissal of a home plaintiff's suit on *forum non conveniens* grounds should reflect a balancing against the home forum that is the substantial equivalent of "oppressiveness and vexation to a defendant . . . out of all proportion" to slight or nonexistent relative convenience for the plaintiff. *Koster,* 330 U.S. at 524, 67 S.Ct. 828. The district court's balancing does not appear, either by its terms or in its application on the record before us, to have accorded the heightened deference legally required by the Supreme Court in *Koster.*

**B. *Gulf Oil Private Interest Factors***

Our conclusion that the district court did not give proper deference to the home plaintiff's choice of forum is supported by a review of the court's actual balance of the *Gulf Oil* private interest factors. Three aspects of the district court's analysis in particular support this conclusion: (1) "the relative ease of access to sources of proof"; (2) "availability of compulsory process for attendance of unwilling" witnesses; (3) and "the cost of obtaining attendance of willing witnesses." *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839.

**1. *Ease–of–Access***

First, on this record, the U.S. forum offers greater ease of access to the rele-

---

**6.** Our statement in *Stewart* that "[s]uch a high standard would constitute a misreading of *Piper* and its progeny," 865 F.2d at 106, does not change the degree of deference for cases involving home plaintiffs. *Stewart,* unlike this case, involved foreign plaintiffs. *See id.* at

104. It would indeed misread *Piper*—and *Koster*—to give to a foreign plaintiff the heightened deference intended for a domestic plaintiff's choice of forum. That has not occurred in this case, as Duha is American, not Canadian, as were the *Stewart* plaintiffs. *Id.*

vant documents than the Argentine forum because to date most documents have been produced from the U.S. or Canada and are written in English. In addition, the ease-of-access factor supports a determination that a trial in the U.S. forum would not vex and oppress Agrium out of proportion to slight relative convenience for Duha, because most documents are in Agrium's possession and the mere shipment of them to the U.S. forum in this case can hardly be vexatious or oppressive.

The opinion below briefly treated documents under the "other problems" *Gulf Oil* factor (i.e., other problems that make trial less convenient and more expensive). *See Duha,* 340 F.Supp.2d at 797. But there the district court examined only whether Agrium could compel document discovery from Argentine sources if the U.S. remained the forum. The district court did not specifically weigh the locations of documents and the impact of foreign languages when evaluating the ease-of-access factor. *See id.*

Such an evaluation is required in this case as part of the ease-of-access analysis. Access to non-witness sources of proof, including documents in particular, is properly considered as part of the ease-of-access factor. *See, e.g., DiRienzo,* 294 F.3d at 29–30 (considering documents in ease of access analysis and examining witnesses under separate *Gulf Oil* factors); *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.,* 955 F.2d 368, 374 (5th Cir.1992) (examining only the access to and location of documents, not witnesses, under the "access to proof sources" heading); *HD Brous & Co. v. Synthesys Secure Techs.,* 229 F.Supp.2d 191, 197 (E.D.N.Y.2002) (holding that because "the only significant item of *documentary evidence* appears to be the Agreement ... the *access to evidence factor* does not favor Synthesys.") (emphasis added).

The district court also appeared to give insufficient consideration to the language of the relevant documents. Cases involving foreign language documents normally consider their impact and perhaps the cost of translation in the balance of convenience. *See, e.g., ESI, Inc. v. Coastal Power Prod. Co.,* 995 F.Supp. 419, 426 (S.D.N.Y.1998) (evaluating the language and location of documents when determining ease of access); *HSBC USA, Inc. v. Prosegur Paraguay, S.A.,* No. 03 Civ. 3336(LAP), 2004 WL 2210283 at *4, 2004 U.S. Dist. LEXIS 19750, at *12 (S.D.N.Y. Sept. 30, 2004) (examining the cost of translation of documents as part of ease-of-access analysis).

In this case, discovery on jurisdictional and *forum non conveniens* issues has already produced 4,000 pages of materials. The lion's share of it, if the record is representative, is in English and has likely been produced from Canada or the United States, with far less coming from Argentina. Agrium's attorney at oral argument insisted that many documents are in Argentina and written in Spanish, but Agrium provided no record evidence substantiating this allegation. Significantly, the district court observed that most of the relevant documents are in Agrium's possession. *Duha,* 304 F.Supp.2d at 797. Requiring Agrium to ship them to the U.S. would not substantially vex or oppress Agrium. *Cf. DiRienzo,* 294 F.3d at 30 ("The defendants have failed to explain how transporting the documents or copies of them would be 'oppressive' or 'vexatious,' nor does the district court offer a satisfactory explanation.").

We recognize that Agrium has agreed, as a condition of dismissal, to translate needed English-language documents into Spanish. *See Duha,* 340 F.Supp.2d at 798. This of course would improve the ease of access to these documents for the Spanish-

speaking Argentine court. But the need to get Agrium's agreement to translate potentially thousands of English-language documents at considerable expense attests to the inherently superior ease of access to such documents in an English-speaking U.S. forum.

The limited extent to which the district court considered ease of access to documents thus supports our conclusion that overall the relevant factors were not properly weighed under the *Koster* standard.

### 2. Availability of Compulsory Process

[4] Second, although the availability of compulsory process is properly considered when witnesses are unwilling, it is less weighty when it has not been alleged or shown that any witness would be unwilling to testify. *See Peregrine Myanmar v. Segal*, 89 F.3d 41, 47 (2d Cir.1996) (observing that the compulsory process factor weighed against dismissal when "neither side claims than any witness would be unwilling to testify"). Here Agrium did not allege, much less carry its burden to show, that any witness was unwilling to testify and that compulsory process was consequently needed. When no witness' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor.

Agrium did not carry its burden to show that *unwilling* witnesses exist. *See Manela v. Garantia Banking*, 940 F.Supp. 584, 592–93 (S.D.N.Y.1996). Agrium was obligated to "provide enough information to enable the District Court to balance the parties' interests." *Piper*, 454 U.S. at 258, 102 S.Ct. 252. That means Agrium should

have given the district court enough information to conclude that some witnesses should be categorized as unwilling rather than willing (willing witnesses are covered by a separate *Gulf Oil* factor). *See, e.g., Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 428 (1st Cir.1991) (approving of a district court's analysis where "[i]t found that [defendant] Sheraton had failed to establish that these witnesses would be unwilling to come to the United States or to provide depositions on a voluntary basis"). Agrium can carry its burden by providing circumstantial evidence, for example, that an ongoing "criminal investigation provid[es] a major disincentive to voluntary testimony." *First Union Nat'l Bank v. Banque Paribas*, 135 F.Supp.2d 443, 450 (S.D.N.Y.2001). But Agrium made no attempt to use circumstantial evidence.[7]

### 3. The Cost of Obtaining Attendance of Willing Witnesses

Finally, the weighing of the costs of witness attendance should take into account the practical difficulties between interstate and international travel, and focus on witnesses whose relevance has been established by record evidence. The factor regarding the cost of obtaining attendance of willing witnesses favors the U.S. forum because it would not vex and oppress Agrium to transport its witnesses to the U.S. forum. In fact, overall travel costs for witnesses can be expected to be lower if the case is heard in the U.S. rather than Argentina.

---

7. This case's circumstances indicate the probable willingness of the one crucial nonparty witness in Argentina, Ronaldo Delaney: he is a former employee of ASP. Some courts assume, absent contrary evidence, that former employees are willing to testify. *See, e.g., Critikon, Inc. v. Becton Dickinson Vascular Access*, 821 F.Supp. 962, 967 (D.Del.1993)

("Because Dr. Ring is a retired employee of BDVA, ... the Court must assume that he would be willing to testify absent a subpoena."); *Manela*, 940 F.Supp. at 592 n. 14 (same). Delaney's status as a former ASP employee, without contrary evidence, supports an inference that he would be willing.

### a. Differences Between Interstate and International Travel

The cost of obtaining willing witnesses' attendance weighs in favor of keeping this trial in the U.S. forum because witnesses in the U.S. and Canada can travel more cheaply to the U.S. forum than to Argentina. A much larger number of potential witnesses reside in the continental U.S. and Canada than in Argentina, and about an equal number of crucial witnesses reside in each of these three countries. Overall witnesses' travel costs, therefore, can be expected to be comparatively lower if the U.S. forum hosts this litigation than if a trial takes place in Argentina. It would therefore appear not to vex or oppress Agrium to require it to bring its willing witnesses to the U.S. forum.

Other courts when balancing the cost of obtaining factor have noted that the proper analysis is not to focus "on the number of witnesses in each location" but on willing witnesses' "accessibility and convenience to the forum." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir.1984). That includes an appreciation for the greater cost of international, as opposed to interstate, travel. The district court appears to have given little regard to the difference between interstate and international travel, *see Duha*, 340 F.Supp.2d at 796–98, as the district court examined only the *locations* of witnesses when weighing the ease-of-access factor. *See id.* at 794–96. The district court considered only those witnesses located in Michigan as a factor weighing against dismissal. *See id.* at 796. It surmised that Adrian Fuller's presence in Oklahoma, as opposed to Michigan, favored holding the trial in Argentina. *See id.* If it had focused on witnesses' "accessibility and convenience to the forum," *Gates Learjet*, 743 F.2d at 1335–36, and not solely on location, the district court would not have automatically weighed the location of witnesses outside Michigan in favor of dismissal. A plane ticket to Michigan from Oklahoma in Fuller's case can be expected to be cheaper than travel to Argentina.

The same is true for the large number of potentially willing witnesses in Canada and the United States. The cost of obtaining attendance of witnesses is consequently lower for the U.S. forum for willing witnesses located in Canada and the United States. These witnesses outnumber those in Argentina, making the U.S. forum more convenient in terms of witness travel costs. It would of course not vex and oppress Agrium out of proportion to Duha's convenience for Agrium to transport the smaller group of potential witnesses to the U.S. instead of requiring Duha and Agrium to transport a larger group of witnesses to Argentina. Similarly, in *In re Air Crash over the Taiwan Strait on May 25, 2002*, the court weighed the cost-of-obtaining factor "slightly" in favor of dismissal in part because overall witness travel costs would have been far lower in the Taiwanese forum. *See* 331 F.Supp.2d 1176, 1199–1200 & nn. 93–94 (C.D.Cal. 2004).

### b. Consideration of Witnesses Whose Relevance Has Not Been Established by Record Evidence

Moreover, the district court's analysis that a determinative number of relevant potential witnesses reside in Argentina appears to take into account witnesses whose relevance has not been established by record evidence. But as the Supreme Court noted in *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), courts considering dismissal for *forum non conveniens* have a duty to determine which witnesses "are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action."

In this case, the district court weighed in favor of dismissal the locations of many Argentine witnesses whose relevance to this action had been asserted in Agrium's brief but not by affidavit or in any other record evidence. *See Duha*, 340 F.Supp.2d at 795. For example, the district court considered the location of Carlos Gasparutti, Duha's Argentine former landlord, *see id.*, even though no record evidence established his relevance to this action. With the exception of Greg McGlone, whose relevance is established by Duha's complaint, JA 138, Agrium in its brief before this court did not cite record evidence establishing the relevance of *any* of the over thirty Argentine potential witnesses listed in its affidavits and relied upon by the district court. *See* Second Br. at 26–30. In its affidavits listing these potential witnesses, Agrium merely recited their names, addresses, and job titles, and sometimes not that much. Agrium fully explained these potential witnesses' relevance only in its briefs before the district court and this court. *See* Second Br. at 27–29; JA 262–66. Arguments in parties' briefs are not evidence. *See Braden v. Univ. of Pittsburgh*, 477 F.2d 1, 6 (3d Cir.1973); *Diversified Numismatics, Inc. v. City of Orlando*, 949 F.2d 382, 384 (11th Cir.1991). While the relevance of some Argentine witnesses has been established by record evidence supplied by Duha, the district court appears to have given undue weight to information about witnesses supplied only in Agrium's brief.

In short, while we recognize our obligation to defer to the discretion of the district court in balancing the relevant factors, Supreme Court case law requires that the district court give appropriate heightened deference to a plaintiff's choice of a home forum. Our review of the district court's application of the relevant private factors leads inescapably to the conclusion that the district court did not apply a sufficiently deferential standard in this case.

*C.   Unconsidered Claims*

**[5]**   Even if the district court had properly dismissed Duha's claims related to his allegedly wrongful termination in Argentina, many of his claims have little or no relation to the termination, and the district court consequently could not dismiss these analytically distinct claims without expanding its *forum non conveniens* analysis to balance convenience with respect to these claims as well. The dismissal of distinct claims effectively omitted from the *forum non conveniens* analysis is not within the district court's discretion.

District courts must consider all relevant public and private interest factors, and do so reasonably. *See Piper*, 454 U.S. at 257, 102 S.Ct. 252. This obligation to consider all factors applies to each analytically distinct set of claims. Where causes of action A and B differ so much that B cannot be dismissed for the same reason as A, a district court may not dismiss B on *forum non conveniens* grounds merely because A appears in the same complaint. If that were permitted, a district court could dismiss a plethora of convenient claims because it correctly dismissed one inconvenient claim. *Forum non conveniens* motions could become a search by defendants for the most inconvenient claim. The least convenient claim might then serve as the standard by which every other claim in the complaint, no matter how clearly distinct, could be judged.

Other courts have warned that it is error to "simply characteriz[e] the case as one in negligence, contract, or some other area of law"; instead, the district court "should focus on the *precise* issues that are likely to be actually tried." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir.2001) (en banc) (emphasis added). A

court cannot focus on the precise issues to be tried if it oversimplifies the case as a "wrongful termination" case without taking into account the comparative convenience of analytically distinct claims, and in this case that means claims not related to wrongful termination.

We derive support in this regard from the law of interdistrict transfer of federal cases under 28 U.S.C. § 1404. When interpreting the transfer statute, 28 U.S.C. § 1404, courts have weighed the comparative convenience of analytically distinct causes of action separately, even when they appear in the same complaint. Courts have asserted broad leeway under the transfer statute to define which subsets of claims qualify as separate civil actions. *See Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir.1968) ("... we do not agree that an entire action must mean the action as originally brought. Where certain claims are properly severed, the result is that there are then two or more separate 'actions,' and the district court may, pursuant to § 1404(a), transfer certain of such separate actions while retaining jurisdiction of others."); *see also LG Elecs. v. First Int'l Computer*, 138 F.Supp.2d 574, 584 (D.N.J.2001).

The district court saw this case as primarily concerning wrongful termination. *See Duha*, 340 F.Supp.2d at 792. It accordingly focused on the part of the story about Duha's prostitution comment, job performance, and the events immediately leading up to his termination that occurred in Argentina. *See id.* at 794–95 (examin-

ing, in part, potential witnesses testimony regarding "plaintiff's job performance as a manager at Agroservicios or the events giving rise to his termination ..."). The district court, however, dismissed many claims having little or nothing to do with the merits of Duha's termination and which in all likelihood have no connection with Argentina.

For instance, Duha seeks relief for breach of employment agreement for benefits earned and expenses incurred (Counts 29–31). Duha wants his accrued vacation, severance pay, stock options, and as-yet unreimbursed business expenses. These claims have little or nothing to do with the merits of Duha's termination; they depend on the *fact* of termination, but that is undisputed.[8]

Duha's claims for unjust enrichment and quantum meruit also have little or nothing to do with the alleged wrongfulness of his termination (Counts 32–33). Duha wants compensation for the benefit he conferred on Agrium by letting ASP use his Michigan home to purchase and ship goods to Argentina—thereby avoiding the use of costly letters of credit and the six percent Argentine "turnover" tax. The district court's rationale for dismissing the wrongful termination claims, even if assumed to be valid, does not justify dismissing Counts 32 and 33.

Likewise, Duha has alleged two counts of silent fraud related to Agrium's plan to name him "Director suplente" of ASP without his knowledge or consent (Counts

---

**8.** While these particular claims do not turn on the alleged wrongfulness of Duha's termination, Agrium's defense or rebuttal to some part of these claims may concern the alleged wrongfulness of Duha's termination. Agrium's attorney at oral argument suggested that the amount of severance pay owed to Duha might be contractually affected by the cause of his termination. Agrium's attorney did not allege, however, that Duha's unreimbursed

business expenses, accrued vacation, stock options, reimbursement for tax preparation expenses, or reimbursement for additional taxes incurred as a result of relocation to Argentina could be withheld due to the cause of his termination. We express no opinion about the *forum non conveniens* ramifications of Duha's potential defense or rebuttal to Counts 29–31.

37–38), two counts of misrepresentation deriving from his employment-related insurance coverage (Counts 39–40), two counts of fraud that resemble his misrepresentation claims in Counts 39–40 (Counts 41–42), one count of intentional interference with prospective economic advantage for the post-termination time period (Count 43), and two counts related to the Michigan Bullard–Plawecki Employee Right to Know Act premised on Agrium's handling of his personnel files (Counts 44–45). None of these claims requires Duha to prove that his termination was in any way wrongful, except perhaps Count 45, which alleges that Agrium knowingly put false information in Duha's personnel file, but that is debatable and deserves further examination on remand. All told, Duha has claimed over $1.7 million [9] for injuries ostensibly having little or nothing to do with the circumstances of his allegedly wrongful termination in Argentina.

The district court effectively omitted each of these counts from its balancing. The district court should have engaged in a *forum non conveniens* balancing regarding these claims.

In this regard it was not sufficient for the district court to sever Duha's tortious interference claim from the dismissed complaint and permit him to file it in another U.S. jurisdiction. *See Duha*, 340 F.Supp.2d at 801. The issue in this appeal is not whether Duha could bring his action somewhere else in the United States but whether he could bring it in the U.S. forum he chose—the Eastern District of Michigan. The availability of other U.S. forums, assuming that any are in fact available, at most justifies a transfer but not a dismissal on grounds of *forum non conveniens*.[10] *See Collins v. Am. Auto. Ins. Co.*, 230 F.2d 416, 418–19 (2d Cir.1956) (reversing a district court's *forum non conveniens* dismissal of an action where the district court had held that the plaintiff could pursue his case in Louisiana, and noting that transfer, not dismissal, is the proper procedure in such circumstances).

## III.  ORDER DENYING MOTION TO SUPPLEMENT THE RECORD

Agrium has filed a cross-appeal, seeking reversal of the district court's denial of Agrium's motion to supplement the record with Agrium's proffered materials. The district court's decision in this regard was not an abuse of discretion. *See Banknote Corp. v. United States*, 365 F.3d 1345, 1358 (Fed.Cir.2004) (noting that the abuse of discretion standard governs the denial of a motion to supplement the record).

**[6]** It is undisputed that the district court denied the motion before Agrium's reply brief was due. The district court should have waited to deny the motion until after the deadline to file the reply brief had passed. Had it done so, the district court's denial of this motion would have been unquestionably proper. Nevertheless, Agrium's reply brief did not say anything important that had not already been presented to the district court in Agrium's May 18th motion to supplement the record. *Compare* JA 1967–74 (May 18, 2004, motion to supplement the record) *with* JA 2084–86 (reply brief).

**[7]** Moreover, the district court properly determined that Agrium had not

---

9.  Severance ($171,900.00), unreimbursed expenses ($4,319.19), accrued vacation ($18,-000.00), unjust enrichment/quantum meruit ($1,500,000.00), interference with advantageous business relationship ($12,000.00), total more than $1.7 million. JA 1910–11, 1913–14.

10.  The district court's order of dismissal cannot be interpreted as a transfer. It designated no transferee district and quite explicitly dismissed the action.

shown "good cause" to supplement the record after the time for supplementation had expired. Agrium's supplementary materials contained nothing that could have exerted great influence on the underlying *forum non conveniens* motion. Agrium's new materials, for instance, did not allege or support the notion that any of the former ASP employees named in the material would be unwilling to testify, or were any more important to Duha's lawsuit than had been established previously. The district court's order denying Agrium's motion to supplement the record was therefore not an abuse of discretion, and we decline to supplement the record on appeal.

## IV.  CONCLUSION

For the foregoing reasons, the district court's order of dismissal is VACATED. This case is REMANDED for further proceedings consistent with this opinion.

R. GUY COLE, JR., Circuit Judge, dissenting.

I believe that the majority incorrectly applies the clear abuse-of-discretion standard of review and does not properly follow the Supreme Court's and our precedent in *forum non conveniens* cases. Therefore, I respectfully dissent.

## I.  Standard of Review

While the majority opinion acknowledges that we review a district court's *forum non conveniens* determination for abuse of discretion, it then proceeds, in my view, to engage in a *de novo* review. I believe that, while the majority acknowledges the proper standard of review, they have "lost sight of this rule," and improperly "substituted [their] own judgment for that of the District Court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

In *Piper*, the Supreme Court held that "[t]he *forum non conveniens* determina-

tion is committed to the sound discretion of the trial court. It may be reversed only when there has been a *clear* abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.* (emphasis added). Accordingly, we review *forum non conveniens* cases for *clear* abuse of discretion. *Dowling v. Richardson–Merrell, Inc.,* 727 F.2d 608, 616 (6th Cir.1984) (citing *Piper,* 454 U.S. at 257, 102 S.Ct. 252; *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 531, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511–12, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). *See also Stewart v. Dow Chem. Co.,* 865 F.2d 103, 105 (6th Cir.1989) (citing *Kryvicky v. Scandinavian Airlines Sys.,* 807 F.2d 514, 516 (6th Cir. 1986); *Dowling v. Richardson–Merrell Dow Pharm., Inc.,* 727 F.2d 608, 612 (6th Cir.1984)). Our role is merely supervisory; we are not to "substitute[ ][our] own judgment for that of the District Court." *Piper,* 454 U.S. at 257, 102 S.Ct. 252. Therefore, a "district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (citing *Piper,* 454 U.S. at 249, 102 S.Ct. 252). Under our precedent, "[a] district court abuses its discretion 'when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *United States v. Lineback,* 330 F.3d 441, 443 (6th Cir. 2003) (quoting *United States v. Spikes,* 158 F.3d 913, 927 (6th Cir.1998)).

In *forum non conveniens* cases, the decision-making is committed "to the discretion of the district courts" to balance "'all relevant public and private interest factors' and to balance those factors reasonably." *United States v. Taylor,* 487 U.S. 326, 336,

108 S.Ct. 2413, 101 L.Ed.2d 297 (1988) (quoting *Piper*, 454 U.S. at 257, 102 S.Ct. 252). *Forum non conveniens* cases tend to turn on their facts. *Van Cauwenberghe*, 486 U.S. at 529, 108 S.Ct. 1945 (citing *Williams v. Green Bay & Western R. Co.*, 326 U.S. 549, 557, 66 S.Ct. 284, 90 L.Ed. 311 (1946)). *See also id.* ("[T]he issues that arise in *forum non conveniens* determinations will substantially overlap factual and legal issues of the underlying dispute."); *Dowling*, 727 F.2d at 616 (in *forum non conveniens* cases "[t]he factual setting in each case prescribes" the course of action for the district court). Insofar as the determination of the district court relies on factual findings, we accord the district court "substantial deference" and will only reverse for "clear error." *Id.* at 337, 108 S.Ct. 2413 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). When the relevant factors "are properly considered, and the supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.*

## II. The Deference Due to a Domestic Plaintiff's Choice of Forum

The majority cites to *Koster* for the proposition that, unless a defendant can "establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience," *Koster* 330 U.S. at 525, 67 S.Ct. 828, a case cannot be dismissed on *forum non conveniens* grounds. I believe that the majority's reliance on *Koster* in cases involving a domestic plaintiff does not give proper deference to *Piper* and its progeny in this circuit. In doing so, the majority misconstrues the amount of deference due to a domestic plaintiff.

In *Piper*, the Supreme Court determined that "[a] citizen's forum choice should not be given dispositive weight . . . ." *Piper*, 454 U.S. at 258, 102 S.Ct. 252.

"Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, *if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant* or the court, dismissal is proper." *Id.* (emphasis added). In discussing the heightened deference due to a domestic plaintiff, the *Piper* Court ignored *Koster*'s language requiring a finding of oppressiveness and vexatiousness, and instead only cites *Koster* for the proposition that "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Id.* at 255 (citing *Koster*, 330 U.S. at 524, 67 S.Ct. 828). *See also id.* at n. 23 ("In *Koster*, we stated that '[in] any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.'" (quoting *Koster*, 330 U.S. at 524, 67 S.Ct. 828)).

Interestingly, so-called *Koster* deference arose in a legal landscape that is no longer applicable. In *Koster*, federal jurisdiction was diversity-based and both the plaintiff and the defendant were United States citizens. *Koster*, 330 U.S. at 520, 67 S.Ct. 828. *Koster*, therefore, did not involve an analysis of the degree of deference that was due to a domestic plaintiff's choice of forum when suing a foreign defendant; *Koster*, involved what level of deference was due to *all* plaintiffs when choosing a forum. In today's climate, the doctrine of *forum non conveniens* is only applicable in situations involving foreign plaintiffs insofar as domestic *forum non conveniens* has been replaced with a statute. *See* 28 U.S.C. § 1404(a) ("[F]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."); *Piper*, 454 U.S. at 253, 102 S.Ct. 252 (Section 1404(a) replaced common-law *forum non conveniens* for cases involving only domestic parties).

In accordance with *Piper*, this Court has reaffirmed that "the 'central focus of the . . . inquiry is convenience . . . .' Thus, there is no requirement in *Piper* . . . that the burden be 'oppressive,' . . . Such a high standard would constitute a misreading of *Piper* and its progeny." *Stewart*, 865 F.2d at 106 (citing *Piper*, 454 U.S. at 249, 102 S.Ct. 252). Further, this Court had previously followed *Piper* and rejected a requirement that a district court find oppressiveness or vexation to a defendant. *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir.1986). While we held that greater deference is due to a domestic plaintiff, we likewise held that when a district court accords a domestic plaintiff's choice of forum "due deference" and balances the relevant factors, the court has not abused its discretion. *Id.* Contrary to the majority's assertion, it was not central to *Kryvicky*'s holding that the plaintiff had less-than-substantial ties with the chosen forum—*Kryvicky* stands for the proposition that the ultimate decision is vested in the discretion of the district court.

Further, unlike the majority, I believe that *Kryvicky* and *Stewart* cannot be read so as to require a district court to find oppressiveness and vexation to a defendant, but not to require a technical recitation of those words. *Kryvicky* and *Stewart* are clear in their requirement that a "high standard would constitute a misreading of *Piper* and its progeny." *Stewart*, 865 F.2d at 106. *See also Iragorri, Etc. v. Int'l Elevator, Inc.*, 203 F.3d 8, 15 (1st Cir.2000) ("a [foreign] defendant's right to obtain dismissal on *forum non conveniens* grounds hinges on whether it can show that considerations of convenience and ju-

dicial efficiency *strongly favor* the proposed alternative forum. . . . the '*strongly favors*' language has deep roots in Supreme Court precedent . . . and the [Supreme] Court's subsequent mentions of the *Koster* dictum lend no support that the dictum somehow supplanted the '*strongly favors*' test." (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Norwood v. Kirkpatrick*, 349 U.S. 29, 35, 75 S.Ct. 544, 99 L.Ed. 789 (1955)) (emphasis added)).

I further believe that, along with *Stewart* and *Kryvicky*, we should follow *Piper*'s mandate that a district court give a domestic plaintiff "greater deference," but "if the balance of conveniences"—a balance that "is committed to the sound discretion of the trial court"—"suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court," then we should not disturb a dismissal on *forum non conveniens* grounds. *Piper*, 454 U.S. at 256–57, 102 S.Ct. 252. There is no requirement in our caselaw that the district court make a finding, either explicitly or implicitly, that the burden on the defendant must rise to an oppressive and vexatious level before *forum non conveniens* dismissal is proper.

## III. The District Court's Opinion

Contrary to the majority's assertion, the district court did indicate that it was giving greater deference to the domestic plaintiff's choice of forum. *See* Maj. Op at 874 ("In this case, the district court never indicated that it was giving heightened deference by virtue of the U.S. status of plaintiff."). *See also id.* at 875 ("The district court's balancing does not appear, either by its terms or in its application on the record before us, to have accorded the heightened deference legally required . . ."). First, the district court properly cited to *Piper* and articulated its position

**DUHA v. AGRIUM, INC.** 885
Cite as 448 F.3d 867 (6th Cir. 2006)

on the greater deference due to the domestic plaintiff's choice of forum:

The defendants' motions based on *forum non conveniens* present the question whether an American employee of an international corporation who is fired while on temporary assignment to a foreign country must litigate his wrongful termination claims in that foreign country when some of the witnesses who may have evidence of the employee's job performance are located there. *The plaintiff's choice of forum in such circumstances "should rarely be disturbed" absent a strong showing by a defendant supporting transfer or dismissal. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Nonetheless, dismissal is not "automatically barred" when a plaintiff brings suit in his home forum; rather, *the court should give deference to the plaintiff's choice* and dismiss only when "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 n. 23, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

*Duha v. Agrium, Inc.*, 340 F.Supp.2d 787, 792–93 (E.D.Mich.2004) (emphasis added). Nothing else in the district court's opinion leads me to the conclusion that the district court failed to give the domestic plaintiff's choice of forum heightened deference.

The district court then correctly identified the relevant law in determining whether a *forum non conveniens* dismissal was proper:

As this Court has previously observed, "an action may be dismissed on the basis of *forum non conveniens* if the defendant demonstrates that (1) there is a reasonable alternative forum available

and (2) the balance of private and public interests favors transfer." *Ramakrishna v. Besser Co.*, 172 F.Supp.2d 926, 929 (E.D.Mich.2001) (citing *Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106 (6th Cir.1989)). The defendant bears the burden of persuading the Court on both elements.

*Duha*, 340 F.Supp.2d at 793. After finding that a reasonable alternative forum existed,[1] the district court correctly identified the private factors it had to weigh:

When balancing the relative merits of the alternate forum against the plaintiff's chosen forum, courts generally consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of witnesses; (3) the possible need to view the premises; and (4) all other practical problems that make a trial more convenient and less expensive. *Ramakrishna*, 172 F.Supp.2d at 930 (citing *Gulf Oil Co.*, 330 U.S. at 508–09, 67 S.Ct. 839; *Kryvicky*, 807 F.2d at 516).

*Id.* at 794. The district court also correctly identified the public factors it had to weigh:

In a *forum non conveniens* motion, "the public interests that must be balanced include any administrative difficulties of courts with clogged dockets; the burden of jury duty on people of a community having no connection with the litigation; the desirability of holding a trial near those most affected by it; and the appropriateness of holding a trial in a diversity case under a foreign state's law." *Ramakrishna*, 172 F.Supp.2d at 930 (cit-

---

1. I agree with the majority that the Argentine courts are "an available and adequate alter-

native forum." Maj. Op at 886.

ing *Gulf Oil Co.,* 330 U.S. at 508–09, 67 S.Ct. 839; *Kryvicky,* 807 F.2d at 516). *Id.* at 799.

Nothing in the district court's opinion suggests that the district court clearly abused its discretion in balancing the relevant factors. *See id.* at 793–94 (discussing availability of a "Reasonable Alternate Forum"); *id.* at 794–96 (discussing private factor of "Relative Ease of Access to Sources of Proof"); *id.* at 796–97 (discussing private factor of "Availability of Compulsory Process for Attendance of Witnesses"); *id.* at 797–99 (discussing private factor of "Other Problems That Make Trial Less Convenient and More Expensive" which included a discussion of document discovery, Plaintiff's familiarity with Argentina's legal system, the size and resources of the parties, and the hardship to the parties); *id.* at 799–802 (discussing "Public Interests" factors which included a discussion of "Local Burdens," "Desirability of Holding a Trial Near Those Most Affected By It," and "Appropriateness of Holding a Trial in a Diversity Case in a Court Which is Familiar with the Governing Law"). The district court accorded the proper deference to the plaintiff's choice of forum, weighed the relevant information, determined that the majority of the plaintiff's complaint revolved around conduct in Argentina, with documents and witnesses in Argentina, and with Argentinian courts capable of adjudicating the complaint.

While the majority, relying entirely on out-of-circuit caselaw, disagrees with the district court's analysis of these factors, our burden is clear: we should not revisit the district court's determinations and substitute our judgment and factual determinations for those of the district court. *Piper,* 454 U.S. at 257, 102 S.Ct. 252. We are required to find a "clear abuse of discretion," which, on these facts, I cannot do.

## IV. The Dismissal of Plaintiff's Domestic Claims

I also do not believe that the district court abused its discretion in dismissing the entirety of plaintiff's complaint while only discussing *forum non conveniens* as to part of the complaint. The district court said that it was:

> mindful that a minor portion of the plaintiff's second amended complaint contains allegations that defendants other than Agroservicios interfered with the plaintiff's business opportunities after he returned from Argentina, and Argentina may not be an appropriate forum for those claims. However, the plaintiff may sever those claims and file them in an appropriate American forum, although likely not in Michigan, if he chooses.

*Duha,* 340 F.Supp.2d at 801. I have found no requirement that a district court, when faced with a motion on *forum non conveniens* grounds, either dismiss the entire complaint on *forum non conveniens* grounds or none of it. Here, the district court, exercising its discretion, determined that the majority of the complaint revolved around conduct and witnesses located in Argentina. The district court left it up to the plaintiff whether or not to re-file his severable causes of action and where to re-file them.

Under 28 U.S.C. § 1404(a), a district court has discretion to transfer cases to other judicial districts "in the interest of justice." The deference given to a district court under § 1404(a) is even greater than what we give under *forum non conveniens* review. *See Piper,* 454 U.S. at 253, 102 S.Ct. 252 ("District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens.*" (citing *Norwood,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789)). The district court would not have erred if it

MILLER v. ADMINISTRATIVE OFFICE OF COURTS          887
Cite as 448 F.3d 887 (6th Cir. 2006)

chose to transfer the severed portions of plaintiff's complaint.  Likewise, the district court, in allowing the plaintiff to re-file the severed claims was dismissing without prejudice.  Therefore, I cannot find, applying the required high level of deference, that the district court abused its discretion.

### V.  Conclusion

I believe that *Piper*, and our subsequent precedent, stand for the proposition that domestic plaintiffs are due greater deference in choosing a forum, but that a domestic plaintiff's choice of forum is not dispositive.  There is no requirement that this greater deference require a finding that not to transfer would oppress or be vexatious to the foreign defendant.

Further, and perhaps more importantly, *forum non conveniens* cases require us, as a reviewing court, only to reverse a dismissal if the district court *clearly* abused its discretion.  The district judge is closer to the facts of a case and a *forum non conveniens* dismissal is, necessarily, a factually intense inquiry.  It is not our role to substitute our judgment for that of the district court.

Because I believe that the majority fails to give proper deference to the Supreme Court's and our precedent, and improperly substitutes its judgment for that of the district court, I respectfully dissent.



Beverly L. MILLER, Plaintiff–
Appellant,

v.

ADMINISTRATIVE OFFICE OF THE COURTS, Judge Thomas B. Wine, in his individual capacity, Tim Vize, in his individual and official capacities, and Judge James M. Shake, in his official capacity, Defendants–Appellees.

No. 05–5981.

United States Court of Appeals,
Sixth Circuit.

Argued:  April 26, 2006.

Decided and Filed:  May 23, 2006.

**Background:**  County jury-pool administrator brought action against various county officials following her discharge.  The United States District Court for the Western District of Kentucky, Charles R. Simpson III, J., dismissed plaintiff's claims, and she appealed.

**Holdings:**  The Court of Appeals, Ronald Lee Gilman, Circuit Judge, held that:

(1) plaintiff's email did not involve a matter of public concern, as required to support her claim that she was terminated in retaliation for exercising her First Amendment free speech rights;

(2) county officials responsible for terminating plaintiff without a hearing were entitled to qualified immunity;

(3) Kentucky Whistleblower Act did not give plaintiff claims against county officials in their individual capacities; and

(4) denial plaintiff's request to amend her complaint a second time was not an abuse of discretion.

Affirmed.