UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Case No. 12-md-2311<br><br>Sean F. Cox<br>United States District Court Judge |

**OPINION AND ORDER DENYING FINANCIAL RECOVERY SERVICES, LLC'S MOTION TO INTERVENE**

Financial Recovery Services, LLC ("FRS") seeks to intervene in this long-running multidistrict antitrust litigation. FRS—which says it was retained by several auto insurers from the end-payor settlement classes—filed its motion on June 18, 2020, more than a year and a half after the Court granted Round 3 settlement approval. FRS argues that it may intervene as of right and that the insurers should be permitted to further document their claims after the Court's ruling. By contrast, end-payor plaintiffs ("Plaintiffs") object and say that the request is both untimely and futile and that permissive intervention would be improper.

The parties have briefed the issues and the Court concludes that oral argument is not necessary. Thus, the Court orders that the motion will be decided without a hearing. *See* E.D. Mich. LR 7.1(f). For the reasons explained below, the Court denies the motion to intervene.

**I.**

To recap, the Court approved settlements on June 20, 2016 (Round 1), September 25, 2017 (Round 2), and November 8, 2018 (Round 3). Between the final approvals of the Round 2 and Round 3 settlements, the Court issued an opinion regarding automobile insurers in this litigation. *See GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799 (E.D. Mich. 2018). As for FRS, it contacted

1

Class Counsel via email on November 14, 2018, seeking a method for submitting documentation of the insureds' claims. (ECF No. 2060-5.) In response, Class Counsel for Plaintiffs suggested that FRS file claims and then appeal rejections. (ECF No. 2060-2, PageID.37727.) Instead, in January 2019, FRS sent a letter to Class Counsel regarding the subrogation arguments that it later explained in its motion to intervene. (ECF No. 2060-6.) At that point, Class Counsel disputed FRS's contention that FRS had a right to settlement proceeds. (ECF No. 2060-2, PageID.27727.)

It took nine more months—until October 2019—for FRS to contact Class Counsel again. (ECF No. 2060-7.) In that email, FRS's chief legal and financial officer stated: "With the December 31, 2019 filing deadline approaching, we believe that it is now time either to reach an agreement or to seek the Court's assistance." (*Id.*) FRS and Class Counsel agreed on a briefing schedule relative to their dispute. However, rather than filing anything to the docket, FRS sent a letter to chambers via Federal Express. Randi Alarcon, a research analyst at FRS, was told on a phone call with Court staff that FRS may need to intervene. (ECF No. 2060-12.)

Class Counsel docketed a response "out of an abundance of caution" on January 16, 2020. (ECF No. 2034, PageID.37518.) But once again, FRS mailed its filing rather than docketing it—this time the reply brief—on January 30, 2020. Many more months passed without FRS actually filing a motion to intervene. It was not until June 18, 2020, which was the eventual claims deadline, that FRS filed the motion at issue. The matter is now fully briefed. The Court also grants the motion for leave to supplement the record (ECF No. 2098) and has considered that material in its opinion.

## II.

### A.

The court must permit intervention to any party that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). When a party applies to intervene as of right, the Sixth Circuit has mandated four requirements: "the application was timely filed," "the applicant possesses a substantial legal interest in the case," "the applicant's ability to protect its interest will be impaired without intervention," and "the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011).

Furthermore, five criteria apply when a district court determines the timeliness of an application to intervene. Namely, the court must consider

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.* at 284 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the 'determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances.'" *Id.* (quoting *Stupak–Thrall v. Glickman*, 226 F.3d 467, 472–73 (6th Cir. 2000)).

3

**B.**

FRS argues that it meets each of the four elements articulated by the Sixth Circuit. First, they say the insurers have a substantial legal interest in this case "because the Insurers have claims, as subrogees, to funds in the End-Payor Settlements, and FRS has a contractual right to share in the proceeds of those claims." (ECF No. 2060, PageID.37712.) Next, FRS and the insurers argue that they are not adequately represented by the current plaintiffs and that their ability to protect its interest will be impaired otherwise. (*Id.* at PageID.37713.) Finally, they say the motion is timely. (*Id.* at PageID.37717.)

Plaintiffs dispute these points. First, they say that FRS does not have a substantial legal interest here; rather, its only interest is "based on its potential contingent fee interest in the recovery of insurance companies based on subrogation rights to the claims of certain unidentified class members if this Court determines that the insurance companies may recover from the EPP Settlements as subrogees." (ECF No. 2066, PageID.38044.) Second, Plaintiffs say there is no impairment because "FRS has not identified a single automobile insurance policy that provides coverage for overcharges caused by antitrust violations." (*Id.* at PageID.38048.) Plaintiffs also argue extensively that the timeliness factors weigh against the motion. (*Id.* at PageID.38049.) Finally, they assert the Class Counsel adequately represents the class members' interests. (*Id.* at PageID.38054.)

**C.**

Based on the factors articulated in *Blount-Hill* and other Sixth Circuit opinions, the Court holds that the motion is untimely and, therefore, does not require the Court to permit intervention

by FRS. Since FRS is unable to meet its burden of demonstrating timeliness, the Court need not analyze the remaining three factors.[1]

As discussed above, the Sixth Circuit counsels consideration of five factors regarding timeliness. FRS does not explicitly analyze these factors. Rather, its brief argues that the motion's timeliness is clear based on "the context of all relevant circumstances." The Court disagrees.

FRS argues that this case is analogous to an unpublished out-of-district case: *Boettcher v. Loosier*, No. 14-2796, 2016 WL 2654384 (W.D. Tenn. May 4, 2016). However, that case does not help FRS. In *Boettcher*, the party seeking to intervene had "participated in all proceedings thus far, as if it were a party." *See* 2016 WL 2654384, at *3. That court acknowledged the "unique posture" of the case, in which a misunderstanding occurred regarding which state's law controlled. *See id.* at *5. Indeed, *Boettcher* noted that because 18 months had passed since the case was filed, "[o]rdinarily, this factor would weigh against intervention." *Id.* at *3. As that court cogently explained: "Often, the intervention of a third party late in proceedings would disrupt the schedule or delay the conclusion of the case." *Id.* In that case, the court placed "minimal weight" on that factor since intervention "would not delay the resolution of this matter, but would, in fact, allow the case to proceed to trial and to conclude in a timely manner." *Id.*

---

[1] To be sure, Plaintiffs also make a compelling argument that FRS lacks sufficient interest to intervene. FRS devotes less than a page to this key issue in its brief; they argue that subrogees can have a sufficient interest to invoke intervention as of right. But while some subrogees may have such an interest in some cases, *see, e.g.*, *Maricco v. Meco Corp.*, 316 F. Supp. 2d 524, 527 (E.D. Mich. 2004), it is unclear whether *these* subrogees have such an interest. Plaintiffs' brief notes that FRS has not identified any insurance policy that covers the overcharges at issue here or any insured members who submitted such claims to their insurance companies. Nor did *GEICO* explicitly "determine the viability" of the subrogation theory in that context. *See* 345 F. Supp. 3d at 830–34.

5

Here, FRS plainly has not participated in all proceedings as if it were a party. Nor does FRS explain how its intervention at this late stage would allow this case to conclude in a timely matter. According to its brief, "FRS did not believe formal intervention was necessary once it reached agreement with Class Counsel to present (and did present) the dispute to the Court." (ECF No. 2060, PageID.37718.) But in the next sentence, FRS acknowledges that it "received contrary guidance" when it contacted court chambers. (*Id.*) As Randi Alarcon recalls, she was advised on that December 2019 phone call "that FRS may need to intervene to perfect the submission of its motion and obtain the relief it sought." (ECF No. 2060-12, PageID.37922.) FRS recognized that "its letter briefs"—which had been mailed to the Court—"remained undocketed." (ECF No. 2060, PageID.37718.)

Yet, FRS did not file this motion until June 18, 2020. This was the very last day of the deadline to file claims in the first three rounds, which itself had been delayed twice since December 31, 2019. The hearing also had been adjourned before finally taking place on September 17, 2020, at which time the Court granted final approval for Round 4 settlements in the end-payor plaintiffs' action. That litigation is completely resolved with the exception of one defendant in one part. FRS did not participate in the final approval hearing or file any objection to the settlements. FRS notes that the litigation has slowed down because of the COVID-19 pandemic. However, there was no stipulation and order entered on the docket regarding the briefing schedule; after the Court informed FRS that a letter sent to chambers was not a proper means by which to proceed, seven months passed before FRS got around to taking action. This situation clearly is not analogous to another case cited by FRS, which applied to a situation in which intervenors "assert[ed] a good-faith position that they could not have moved to intervene any earlier." *Peterson v. Islamic*

6

*Republic of Iran*, 290 F.R.D. 54, 59 (S.D.N.Y. 2013). By contrast, FRS does not give any good-faith explanation for its failure to intervene before June 18, 2020.

Applying the *Blount-Hill* factors here clearly indicates that the motion was untimely. For one, the suit has progressed to a very advanced stage after years of litigation. Likewise, the length of time between FRS' knowledge of its interest in the case and the June 18 motion weighs against intervention; FRS does not point to any unusual circumstances that prevented it from docketing the motion several months earlier. Furthermore, the prejudice to the original parties is clear: intervention would delay the distribution of settlement proceeds. Claims processing has been ongoing, and completion would be delayed if the Court were to allow potentially thousands of claims to be submitted after the deadline.

So after evaluating the relevant circumstances, the Court concludes that the application to intervene is untimely.

### III.

For the reasons stated above, FRS' motion to intervene is untimely. Since FRS does not meet the standard for intervention as of right, the application under Rule 24 is hereby **DENIED**.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: November 17, 2020