## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Hon. Sean F. Cox |
| | Mag. Judge R. Steven Whalen |
| THIS DOCUMENT RELATES TO: | |
| ALL END-PAYOR ACTIONS | |

## FINANCIAL RECOVERY SERVICES, LLC'S EMERGENCY MOTION TO COMPEL ACCEPTANCE AND PROCESSING OF VEHICLE DATA

PLEASE TAKE NOTICE that, upon the accompanying memorandum, Financial Recovery Services, LLC d/b/a/ Financial Recovery Strategies ("FRS"), by its undersigned attorneys, will move this Court, before the Honorable Sean F. Cox, at the United States District Court for the Eastern District of Michigan, at a time and place set by the Court, on an emergency basis for an Order forthwith requiring Class Counsel and the Claims Administrator in the above-captioned End-Payor Actions to accept and process as timely vehicle data that FRS submits in support of timely filed claim forms and for such other and further relief as the Court deems just and proper.

FRS respectfully requests that the Court resolve this Motion on an expedited basis for the following reasons:

1.     FRS is informed and believes that the Claims Administrator's review of claims by members of the End-Payor Settlement classes in the above-captioned litigation is currently ongoing.  Inclusion of vehicle data submitted by FRS and its automobile insurer clients ("Insurers") in that process as soon as possible will serve the orderly administration of claims and otherwise promote the efficient disposition of this action.

2.     Resolution of this Motion may affect briefing FRS must submit to the U.S. Court of Appeals for the Sixth Circuit by March 22, 2021.  *See In re Automotive Parts Antitrust Litig.,* No. 20-2261 (6th Cir.).

In a letter dated January 28, 2021, counsel for FRS explained to counsel representing the End-Payor Settlement classes ("Class Counsel") the nature of the motion and its legal basis, and requested that Class Counsel direct the Claims Administrator to process and consider timely supplemental vehicle data submitted by FRS in support of timely filed claim forms.  On February 12, 2021, counsel for FRS sought Class Counsel's concurrence in the relief sought herein, but Class Counsel did not respond.

WHEREFORE, FRS requests that the Court grant the following relief:

A.     Place resolution of this Motion on an expedited schedule, and require Class Counsel to file any response by February 24, 2021, with any reply by FRS to be filed within three (3) days after the filing and service of Class Counsel's response;

B.      Take up this Motion for determination as soon as the Court's schedule permits;

C.      Enter an order compelling Class Counsel and the Claims Administrator to (1) permit FRS and the Insurers a reasonable opportunity to submit vehicle data in support of their timely filed claim forms, and (2) deem that data timely for the purpose of evaluating FRS and Insurers' eligibility to recover under the End-Payor Settlements; and

D.      Grant such further relief as the Court determines to be appropriate.

Dated:  February 17, 2021          Respectfully submitted,

/s/ *Laura S. Faussié*
Jonathan T. Walton, Jr. (P32969)
Michael P. Donnelly (P45221)
Laura S. Faussié (P48933)
FRASER TREBILCOCK
  DAVIS & DUNLAP, P.C.
One Woodward Avenue, Suite 1550
Detroit, MI 48226
(313) 237-7300
jwalton@fraserlawfirm.com
mdonnelly@fraserlawfirm.com
lfaussie@fraserlawfirm.com

Aaron M. Panner
Matthew R. Huppert
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
mhuppert@kellogghansen.com

*Counsel for Financial Recovery*
*Services, LLC*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

Master File No. 12-md-02311

Hon. Sean F. Cox
Mag. Judge R. Steven Whalen

THIS DOCUMENT RELATES TO:

ALL END-PAYOR ACTIONS

## BRIEF IN SUPPORT OF
## FINANCIAL RECOVERY SERVICES, LLC'S EMERGENCY MOTION
## TO COMPEL ACCEPTANCE AND PROCESSING OF VEHICLE DATA

## **ISSUE PRESENTED**

Should Class Counsel and the Claims Administrator be required to accept and process as timely vehicle data that a class member submits in support of timely filed claim forms?

FRS says "Yes."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Dry Max Pampers Litig., In re*, 724 F.3d 713 (6th Cir. 2013)

*Hazard Coal Corp. v. Ky W. Va. Gas Co.*, 311 F.3d 733 (6th Cir. 2002)

*Van v. Zahorik*, 597 N.W.2d 15 (Mich. 1999)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………...…………iv

BACKGROUND ........................................................................................................3

    I.      FRS and the Insurers Attempt to Clarify Their Rights ........................3

    II.     Class Counsel and the Claims Administrator Acquiesce in FRS's Proposal to Defer Submission of Vehicle Information........................5

    III.    Class Counsel and the Claims Administrator Refuse to Accept or Process Supplemental Data ..................................................................7

ARGUMENT ...........................................................................................................10

    I.      Class Counsel Is Estopped From Considering Insurers' Data Untimely ...........................................................................................10

    II.     This Court's Orders Require the Claims Administrator to Process Vehicle Data Submitted in Support of Timely Filed Claim Forms ....15

CONCLUSION ........................................................................................................18

# TABLE OF AUTHORITIES

**CASES**                                                                              **Page(s)**

*Alameda Cnty. Deputy Sheriff's Ass'n v. Alameda Cnty. Empls.' Retirement Ass'n*,
470 P.3d 85 (Cal. 2020) ........................................................................................12

*Allianz Underwriters Ins. Co. v. Landmark Ins. Co.*,
787 N.Y.S.2d 15 (App. Div. 1st Dep't 2004) ......................................................10

*Citizens Ins. Co. of Am. v. Midwest Interiors, LLC*,
2020 WL 1649773 (Mich. App. Apr. 2, 2020) ....................................................15

*Commercial Union Ins. Co. v. Medical Protective Co.*,
393 N.W.2d 479 (Mich. 1986) .............................................................................10

*Crazy Eddie Sec. Litig., In re*,
906 F. Supp. 840 (E.D.N.Y. 1995) .......................................................................13

*Dahingo v. Royal Caribbean Cruises*,
312 F. Supp. 2d 440 (S.D.N.Y. 2004) ..................................................................11

*Dry Max Pampers Litig., In re*,
724 F.3d 713 (6th Cir. 2013) ................................................................................10

*Electrical Carbon Products Antitrust Litigation, In re*,
622 F. Supp. 2d 144 (D.N.J. 2007) .......................................................................13

*Estate of Williams, In re*,
417 N.W.2d 556 (Mich. App. 1987) .....................................................................15

*Gardner v. League Life Ins. Co.*,
210 N.W.2d 897 (Mich. App. 1973) .....................................................................12

*Hazard Coal Corp. v. Ky W. Va. Gas Co.*,
311 F.3d 733 (6th Cir. 2002) ................................................................................14

*Imaging LLC v. Soterion Corp.*,
352 F. App'x 59 (6th Cir. 2009) ...........................................................................10

ix

*Knorr v. Smeal*,
    836 A.2d 794 (N.J. 2003) ....................................................................12

*Mich. Paneling Mach. & Mfg. Co. v. Parsell*,
    38 Mich. 475 (1878) ...........................................................................12

*Nassau Trust Co. v. Montrose Concrete Prods. Corp.*,
    436 N.E.2d 1265 (N.Y. 1982) ...............................................................12

*Shields Ltd. P'ship v. Bradberry*,
    526 S.W.3d 471 (Tex. 2017) .................................................................12

*State ex rel. Cities Serv. Oil Co. v. Orteca*,
    409 N.E.2d 1018 (Ohio 1980) ..............................................................12

*Van v. Zahorik*,
    597 N.W.2d 15 (Mich. 1999) ................................................................12

*Winterhalter v. Watson Wyatt & Co.*,
    87 F. App'x 513 (6th Cir. 2004) ...........................................................11

**RULE**

Fed. R. Civ. P. 23(e)(2)(D) .......................................................................18

**OTHER AUTHORITY**

Restatement (Second) of Torts (2020).......................................................11

Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS") is assisting several automobile insurers (the "Insurers") in securing the recoveries due to them as members of the End-Payor Settlement classes in this MDL. The Insurers seek recovery, at least in part, on the basis of equitable subrogation, which allows one who makes an injured party whole to assume the right to recover the amount of that payment from any third person who is responsible for the compensated losses. The Insurers' subrogation rights implicate many thousands of vehicles that are the subject of the End-Payor Settlements.

In late 2019, counsel representing the End-Payor Settlement classes ("Class Counsel") disputed Insurers' subrogation rights, which created uncertainty regarding whether Insurers' subrogation-based claims would be permitted. In the face of that uncertainty, FRS requested that the parties brief the subrogation issue (a pure question of law) to the Court in December 2019, before the claims-administration process began, so that FRS and the Insurers could obtain clarity about their legal rights before undertaking the costly step of collecting, evaluating, and submitting the data necessary for each of the thousands of vehicles underlying the Insurers' subrogation-based claims. Class Counsel agreed. Letter briefs were submitted, and Class Counsel's letter brief was docketed, over the next few weeks.

As the then-current March 2020 deadline for filing claim forms approached without a ruling from the Court, FRS notified Class Counsel that the Insurers would

continue to defer submission of vehicle data for their timely filed subrogation claims until the Court ruled on the threshold subrogation issue, and it asked Class Counsel to notify FRS if they had any objection to that course of action.  FRS expected no objection, given the prior agreement to have the legal issue decided before the submission of vehicle data, and it received none.  Class Counsel instead remained silent.

Shortly before the claim-filing deadline passed, FRS sought to intervene to press its request for a ruling on the validity of its subrogation claims.  In opposing that motion, Class Counsel contended for the first time (and contrary to fact) that they had, all along, opposed FRS's proposal to defer submission of vehicle data. ECF No. 2066, PageID.38041, 38050.[1]  FRS submitted evidence rebutting Class Counsel's unsupported assertion.  ECF No. 2073-1.  Following the Court's denial of FRS's intervention motion in November 2020, Class Counsel and the Claims Administrator have tried to block FRS and the Insurers from submitting vehicle data for their timely filed claims because that data was not submitted before the claim-filing deadline.

Class Counsel's conduct over the course of several months—especially Class Counsel's failure to object to FRS's express statement that it would supplement its

---

[1] Unless otherwise specified, all references herein to docket entries are to the docket in 12-md-02311.

claims once this Court had resolved the legal status of the Insurers' claims—induced FRS to believe that it could defer submission of vehicle data until the Court adjudicated FRS and Insurers' subrogation rights, and FRS justifiably relied on that belief. Accordingly, Class Counsel and the Claims Administrator are now estopped from refusing to accept or to process the data on the basis that it is untimely. Similarly, the Plan of Allocation does not permit Class Counsel or the Claims Administrator to refuse to accept or process vehicle data submitted in support of timely filed claim forms. Accordingly, the Court should order Class Counsel and the Claims Administrator to (1) permit FRS and the Insurers a reasonable opportunity to submit vehicle data in support of their timely filed claim forms, and (2) deem that data timely for the purpose of evaluating FRS and Insurers' eligibility to recover from the End-Payor Settlements.

## **BACKGROUND**

### I. **FRS and the Insurers Attempt to Clarify Their Rights**

Several of the Insurers are settlement class members because they owned or leased eligible vehicles (the "Fleet Vehicles") and incurred overcharges at the time of purchase or lease. There is no dispute that those Insurers are members of the End-Payor Settlement classes.

All of the Insurers seek (or also seek) recovery as a result of certain indemnity payments made to their insureds for vehicles that were deemed a total loss ("Total

Loss Vehicles").  When a vehicle is stolen or wrecked beyond repair, the Insurer

may make a payment to the insured based on the market value of the vehicle.  There

is apparently no dispute that such payments included amounts attributable to the

overcharges imposed by the settling defendants.  Accordingly, the Insurers maintain

that they are *subrogated* to the claims of End-Payor Settlement class members to the

extent those class members were already compensated, by virtue of the

indemnification payments they already received, for the antitrust overcharges at

issue.[2]  In other words, the Insurers submit that, with respect to Total Loss Vehicles,

they stand in the shoes of class members vis-à-vis the End-Payor Settlements and

are class members for that reason.

Between May 4, 2018, and March 12, 2020, FRS submitted claim forms to

the End-Payor Actions Claims Administrator on behalf of the Insurers.  Those claim

forms encompassed claims for both Total Loss Vehicles and, where applicable, Fleet

Vehicles.  ECF No. 2060-02 ¶ 9.  FRS submitted all of those claim forms well in

advance of the Court-imposed deadline for filing claims, which was June 18, 2020.

Order, PageID.37658, ECF No. 2044.

During the time FRS was submitting claim forms on behalf of the Insurers, a

dispute arose between FRS and Class Counsel regarding the right of the Insurers, as

---

[2] FRS previously submitted to the Court additional facts and legal arguments
supporting Insurers' right to recovery as subrogees.  12-md-02311, ECF Nos. 2060,
2060-02 to 2060-11.  FRS fully incorporates those materials here.

subrogees of class members, to recover from the End-Payor Settlements.  *See* ECF No. 2060 at 6-10; ECF No. 2060-2 ¶¶ 5-8.  FRS and Class Counsel exchanged correspondence and conferred by phone about this subrogation issue on multiple occasions, but could not agree.  ECF No. 2060-2 ¶¶ 5-8; ECF Nos. 2060-5 to 2060-9.  They were able to agree, however, on a procedure for presenting their dispute to the Court.  Class Counsel originally "suggested that the Insurers should file claims, wait for them to be rejected, and then appeal that rejection to the Court," but FRS objected to that approach, explaining "why it would not be practical to submit claims for many thousands of total loss vehicles before resolving the threshold legal question whether such claims would be permitted."   ECF No. 2060-2 ¶ 6.  Ultimately, the parties agreed to submit the threshold issue to the Court before FRS and the Insurers would have to submit their vehicle data.  Accordingly, on December 13, 2019, FRS sought clarification from this Court as to the Insurers' rights as subrogees.  ECF Nos. 2060-03, 2060-04.  Though FRS's letter motion and later reply were not docketed, Class Counsel's opposition to FRS's letter motion was docketed. ECF No. 2034.

## II.   Class Counsel and the Claims Administrator Acquiesce in FRS's Proposal to Defer Submission of Vehicle Information

On March 9, 2020, several weeks after the parties had completed briefing FRS's request for declaratory relief, but before the then-current deadline for filing claim forms, FRS sought to confirm once more that it could defer submission of

vehicle data until the Court ruled on the threshold subrogation issue. To that end, FRS notified the Claims Administrator and Class Counsel that FRS would "supplement the timely-filed proof of claim for each Auto Insurer" with vehicle information once the Court ruled that the Insurers could recover as subrogees. ECF No. 2060-10. FRS proposed this course of action in light of (1) the pending threshold dispute about Insurers' subrogation rights, (2) the "considerable undertaking" required to "identify[ ], collect[ ], and marshal[ ] the Total Loss Vehicle data necessary to update each Auto Insurer's proof of claim," and (3) the "rapidly approaching" claim-filing deadline (which the Court later extended). ECF No. 2060-10, PageID.37916. FRS asked that, if the Claims Administrator or Class Counsel "has any objection" to FRS's proposed course of action, they should "advise FRS immediately so that we may advise the Court as soon as possible." *Id*. On June 18, 2020, FRS provided similar notice to the Claims Administrator and Class Counsel for two additional Insurers. ECF No. 2060-11. Neither Class Counsel nor the Claims Administrator ever responded to either communication, though they did respond to communications from FRS on unrelated matters. For example, FRS inquired on June 19, 2020, whether "late claims (subject to approval of course)" were "being accepted" in the End-Payor Actions, and the Claims Administrator responded two hours later that such claims would "be treated in accordance with the Court's direction based on recommendations from the Parties." Ex. D.

6

In reliance on the lack of any objection from Class Counsel or the Claims Administrator to FRS's proposed course of action, FRS deferred submission of vehicle data in support of the Insurers' claims pending the Court's legal ruling as to whether the Insurers could recover as subrogees.

### III.    Class Counsel and the Claims Administrator Refuse to Accept or Process Supplemental Data

On June 18, 2020, when FRS's request for declaratory relief had been pending for several months, FRS sought to intervene in a further attempt to obtain a ruling on FRS's and the Insurers' legal rights.  ECF No. 2060.  On November 17, 2020, the Court denied FRS's motion to intervene as untimely.  ECF No. 2101; *see also* ECF No. 2105 (notice of appeal).  In the wake of that ruling, FRS and the Insurers have undertaken the process of obtaining, analyzing, and submitting data associated with hundreds of thousands of eligible vehicles (recognizing that there is a risk that this Court will ultimately reject the Insurers' subrogation claims).  FRS is doing so before the Claims Administrator begins contacting claimants to notify them of deficient claim forms and providing them an opportunity to submit additional vehicle information and before the Claims Administrator begins calculating claim amounts or *pro rata* shares.  *See* ECF No. 2098-1 ¶ 9 (describing nine steps of claims administration process; Claims Administrator is at step four or earlier).

In December 2020, FRS submitted to the Claims Administrator supplemental vehicle data for claim forms timely filed on behalf of claimants other than the

Insurers, and it received no response to those submissions.  Leibell Decl. ¶ 19.  On January 4, 2021, FRS made another submission of supplemental vehicle data for timely filed claim forms, but this time the Claims Administrator responded the same day that "we are no longer accepting new data for the settlements," and "any new data will be considered untimely."   Ex. B.   FRS promptly asked the Claims Administrator for clarification because "this is data for claims that were submitted timely," and the Claims Administrator reiterated that, even though "the claims may have been submitted timely, *any data* submitted after the claims deadline will be considered untimely."  *Id.* (emphasis added).

This statement turned out to be false.  Counsel for FRS brought the Claims Administrator's response to the attention of Class Counsel on January 8, 2021, and asked to meet and confer about it.  Ex. G.  Class Counsel responded on January 11, 2021, by offering to confer and stating that claimants "may submit additional [vehicle] information" if they "previously submitted vehicle data and have some deficiency in the information or documentation that was submitted."  *Id*.  However, Class Counsel said that if "claimants . . . identified no vehicle information before the claims deadline expired," Class Counsel would consider such timely filed claim forms "late," and would "not . . . allow[]" them.  *Id*.

The next day, January 12, Class Counsel and counsel for FRS conferred by phone to clarify Class Counsel's position about the submission of supplemental

8

vehicle data.  During that call, Class Counsel (Chanler Langham and Jenna Farleigh) stated that the Claims Administrator would accept supplemental vehicle data for all timely filed claim forms unless the form is deemed a "placeholder" claim form, which Class Counsel defined as a claim form that does not contain information sufficient to identify the vehicle(s) being claimed.  Huppert Decl. ¶ 4.[3]  For any claim form deemed a "placeholder," Class Counsel stated the Claims Administrator would not process any vehicle data, *i.e.*, would not evaluate whether or to what extent the data is associated with eligible vehicles.  *Id*. ¶ 4(b).  Instead, Class Counsel have indicated that the Claims Administrator will disregard such data and that Class Counsel will categorically reject all "placeholder" claims.  *Id*. ¶ 4(d)-(e).

On January 28, 2021, counsel for FRS wrote Class Counsel to explain why it is improper for Class Counsel to instruct the Claims Administrator to disregard vehicle information for timely filed claims and to reject such claims summarily.  Ex. H.  It asked that Class Counsel "immediately direct that Insurers' supplemental vehicle data is processed when submitted and considered timely."  *Id*. at 2.  Class

---

[3] Class Counsel were unable or unwilling to specify how much information would be considered sufficient.  For example, Mr. Langham and Ms. Farleigh appeared to disagree whether a claim form identifying only "five Toyota Camrys" would be a "placeholder."  Huppert Decl. ¶ 4d.  Rather than provide a generally applicable definition of "placeholder," they offered to review specific claim forms and opine whether they contained sufficient information.  *Id*.

Counsel once again did not respond.  Accordingly, counsel for FRS notified Class

Counsel on February 12, 2021, that FRS would be filing the present motion.  Ex. I.

FRS respectfully requests expedited briefing and expedited consideration of

this motion because resolution of this motion stands to affect the orderly

administration of the Insurers' claims.  Resolution of this motion may also affect

briefing FRS must submit to the U.S. Court of Appeals for the Sixth Circuit on

March 22, 2021.  *See In re Automotive Parts Antitrust Litig.*, No. 20-2260 (6th Cir.).

## ARGUMENT

### I.  Class Counsel Is Estopped From Considering Insurers' Data Untimely

Because of Class Counsel's failure to speak in response to FRS's proposal to

defer submission of vehicle data, Class Counsel are equitably estopped from now

asserting that such vehicle data is untimely.  "[C]lass representatives and, especially,

class counsel" have "'fiduciary obligation[s]'" of loyalty and care "to protect the

interests of the persons most affected by the litigation—namely, the class."  *In re*

*Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013).  "Those duties, famously

described by Judge Cardozo as demanding '[n]ot honesty alone, but the punctilio of

an honor the most sensitive,'" *Acad. Imaging LLC v. Soterion Corp.*, 352 F. App'x

59, 62 (6th Cir. 2009), extend to subrogated insurers.  *See*, *e.g.*, *Commercial Union*

*Ins. Co. v. Medical Protective Co.*, 393 N.W. 2d 479, 486 (Mich. 1986); *Allianz*

*Underwriters Ins. Co. v. Landmark Ins. Co.*, 787 N.Y.S.2d 15, 17-18 (App. Div. 1st Dep't 2004).

Accordingly, Class Counsel owe fiduciary duties to FRS and the Insurers as subrogees of class members, and they doubly owe those duties to the Insurers that owned or leased Fleet Vehicles.  Because of this fiduciary relationship, Class Counsel have a duty to disclose "matters [that they] ha[ve] reason to know will be regarded by [FRS and the Insurers] as important in determining [their] course of action in the transaction in hand."  Restatement (Second) of Torts § 551 & cmt. c (2020); *accord Winterhalter v. Watson Wyatt & Co.*, 87 F. App'x 513, 519 (6th Cir. 2004) ("The existence of a fiduciary relationship gives rise to an affirmative duty to disclose material facts.").  Moreover, the Claims Administrator cannot "in good faith, remain inert" when it knows a class member's course of action may result in prejudice; rather, it is "obligated to take reasonable steps to give those claimants the opportunity to correct the deficiency in their claims."  *Dahingo v. Royal Caribbean Cruises*, 312 F. Supp. 2d 440, 448 (S.D.N.Y. 2004).  Accordingly, Class Counsel and the Claims Administrator had a duty to speak in the face of FRS's March 2020 proposal to defer submission of vehicle data.

Under well-settled legal principles, Class Counsel and the Claims Administrator are now estopped from asserting that FRS and Insurers' submission of vehicle data after the claim-filing deadline is untimely.  "Equitable estoppel arises

where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v. Zahorik*, 597 N.W.2d 15, 22 (Mich. 1999); *see also*, *e.g.*, *Gardner v. League Life Ins. Co.*, 210 N.W.2d 897, 578 (Mich. App. 1973) ("Estoppel may arise when one's silence, when he ought to speak, results in reliance and prejudice to another."); *Mich. Paneling Mach. & Mfg. Co. v. Parsell*, 38 Mich. 475, 480 (1878) ("If one maintain silence when in conscience he ought to speak, the equity of the law will debar him from speaking when in conscience he ought to remain silent.").[4]  All of those elements are satisfied here.

*First*, the silence of Class Counsel and the Claims Administrator induced FRS and the Insurers to believe that they could supplement timely filed claim forms after the claim-filing deadline.  Leibell Decl. ¶¶ 16-17.  FRS reasonably understood Class Counsel's silence as reflecting that they had no objection to the proposal because (1) FRS's proposed course of action was consistent with customary class-action

---

[4] The elements of equitable estoppel are essentially the same in New Jersey (where FRS is domiciled); Ohio (where the Claims Administrator was domiciled); and New York, California, and Texas (where Class Counsel are domiciled).  *See Alameda Cnty. Deputy Sheriff's Ass'n v. Alameda Cnty. Empls.' Retirement Ass'n*, 470 P.3d 85, 106 (Cal. 2020); *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 486 (Tex. 2017); *Knorr v. Smeal*, 836 A.2d 794, 799 (N.J. 2003); *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 436 N.E.2d 1265, 1269 (N.Y. 1982); *State ex rel. Cities Serv. Oil Co. v. Orteca*, 409 N.E.2d 1018, 1020-21 (Ohio 1980).

practice, where so-called "placeholder" claims are a necessary and commonly accepted occurrence,[5] *see id.* ¶ 17; (2) FRS and Class Counsel had previously agreed not to require the submission of Total Loss Vehicle data until after the Court ruled on the equitable subrogation issue, *id*. ¶ 15; (3) FRS explicitly asked Class Counsel and the Claims Administrator to advise FRS of any objection if they disagreed with FRS's proposal; and (4) Class Counsel were undisputedly fiduciaries to the Insurers who had purchased or leased Fleet Vehicles, giving them an independent duty to speak if they disagreed.

*Second*, Class Counsel knew or should have known under the circumstances that their silence would induce FRS and the Insurers to believe that they could proceed with their proposed course of action.  Following multiple exchanges of correspondence and telephonic conferrals, FRS and Class Counsel had reached an impasse in November 2019 on the threshold legal question whether Insurers could recover as subrogees with respect to Total Loss Vehicles.  ECF No. 2060-2 ¶¶ 5-7; ECF Nos. 2060-5 to 2060-8.  At that point, FRS insisted that the subrogation question should be briefed and decided before FRS was required to submit data for thousands of vehicles, rather than raising the legal issue after the data was submitted and rejected, ECF No. 2060-2 ¶ 6, and it was in that context that FRS and Class

---

[5] *See In re Electrical Carbon Products Antitrust Litigation*, 622 F. Supp. 2d 144, 165 (D.N.J. 2007); *In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995).

Counsel mutually agreed to brief the threshold legal question to the Court in December 2019, ECF No. 2060-9. Accordingly, when FRS approached Class Counsel in March 2020 and asked, in light of the still-pending legal dispute and the approaching claim-filing deadline, to defer submission of vehicle data for Total Loss Vehicles, Class Counsel either knew or should have known that their silence would cause FRS and the Insurers to believe that they could wait until the threshold dispute was resolved before assuming the significant burden of collecting, evaluating, and submitting data for thousands of vehicles. *See Hazard Coal Corp. v. Ky W. Va. Gas Co.*, 311 F.3d 733, 741 (6th Cir. 2002) (plaintiffs' "failure to raise any objections up to now . . . was reasonably taken by [defendant] as acquiescence in the practice and [defendant] relied on that acquiescence"; plaintiffs estopped).

*Third*, FRS acted in reliance on Class Counsel's silence by deferring submission of vehicle data, and that reliance was justified under the circumstances. As discussed above, the premise of Class Counsel agreeing to brief FRS's request for declaratory relief months before the claim-filing deadline was to clarify the Insurers' legal rights *before* they and FRS incurred significant costs documenting the disputed Total Loss Vehicle claims. *See* ECF No. 2060-2 ¶¶ 6-7. More fundamentally, FRS invited Class Counsel to raise any objections at a time when FRS would have been able to act on those objections; during the parties' extensive course of conduct, Class Counsel has otherwise been prompt and vocal in stating

14

their disagreement with FRS.  Leibell Decl. ¶ 16.  Therefore, given FRS's express invitation to speak and the parties' course of conduct, FRS was justified in construing Class Counsel's months-long silence as acquiescence, or at least an absence of objection.  *See*, *e.g.*, *Citizens Ins. Co. of Am. v. Midwest Interiors, LLC*, 2020 WL 1649773, at *3-4 (Mich. App. Apr. 2, 2020) (party's interpretation of other party's silence as acquiescence was reasonable under "[t]he totality of the circumstances"); *In re Estate of Williams*, 417 N.W.2d 556, 609 (Mich. App. 1987) (party who "had the opportunity to bring [a] defect to [other party's] attention" before defect would prejudice other party was estopped from relying on that defect to her advantage).

*Fourth*, FRS and the Insurers would be prejudiced if Class Counsel and the Claims Administrator were permitted to assert now, only after the claim-filing deadline has passed, that FRS and the Insurers are barred from recovering because vehicle data supporting their timely filed claims should have been submitted before the deadline.  Accepting such an assertion would deprive FRS and the Insurers of significant monetary recoveries that they would have been entitled to receive, had they not relied on the conduct of Class Counsel and the Claims Administrator.

## II.   This Court's Orders Require the Claims Administrator to Process Vehicle Data Submitted in Support of Timely Filed Claim Forms

The Plan of Allocation approved by the Court for the End-Payor Actions defines "Authorized Claimants" as members of the settlement classes "who submit

15

timely and valid Claim Forms and whose claims are allowed by the Court." 12-cv-403, ECF No. 301-2, PageID.11012.[6]   It further provides that "[t]he Claims Administrator *will* use the information you provide in your Claim Form regarding the Vehicle you purchased or leased to determine whether your Vehicle contains one or more of the Automotive Parts." *Id.* at PageID.11014 (emphasis added). Therefore, the Plan of Allocation requires the Claims Administrator to process information provided by a claimant in support of a timely filed claim form.

Contrary to the Plan, Class Counsel has purported to grant itself authority to adjudicate which claims are entitled to recovery and to direct the Claims Administrator to ignore data associated with claim forms Class Counsel believes should be rejected.  The Plan of Allocation does not grant Class Counsel that power. Only the Court has the power to authorize or reject disbursement of settlement funds. *Id*. at PageID.11012 ("The distribution will take place after," *inter alia*, "approval by the Court . . . as to the amounts to be paid"); *id*. (claimants authorized if their "Claims are allowed by the Court").  The role of Class Counsel and the Claims Administrator is advisory.  They can make "recommendations as to amounts to be paid," *id*., but they cannot take it upon themselves to *adjudicate* class members' rights; by the same token, they cannot refuse to evaluate vehicle data submitted in

---

[6] The Court approved this proposed plan on December 20, 2019.  12-cv-403, ECF No. 302.

support of timely filed claim forms on the basis that they do not believe that the class members submitting that data are entitled to recover. This Court should order Class Counsel and the Claims Administrator to comply with their obligations under the Plan of Allocation and process vehicle data submitted in support of timely filed claim forms.

Class Counsel's newfound justification for their refusal to process the Insurers' vehicle data is that the Insurers' claim forms, though timely filed, are nevertheless "late" because they "identified no vehicle information before the claims deadline expired." Ex. C. Class Counsel are estopped from making that argument, as discussed *supra* Point I. Moreover, Class Counsel's position cannot be squared with the Plan of Allocation, which requires claimants to "submit timely and valid *Claim Forms*." 12-cv-403, ECF No. 301-2, PageID.11012 (emphasis added); *see also id*. at PageID.11016 (setting "deadline for the submission of *Claim Forms*" (emphasis added)). It does not state, as Class Counsel now contend, that a timely filed claim form lacking vehicle information that Class Counsel deem sufficient as of the claim-filing deadline will be ineligible to recover.

The Plan of Allocation also makes no distinction between claim forms containing "no vehicle information" and claim forms containing "deficien[t]" vehicle information, which is the distinction Class Counsel now rely upon to refuse to process Insurers' vehicle data. Ex. C. Class Counsel have invented this

distinction as a fulcrum for eligibility long after the claim-filing deadline to deprive the Insurers of the right to recover.  Class Counsel have acknowledged that they will permit some class members to "submit additional [vehicle] information to correct . . . deficienc[ies]" in their claim forms, *id*., but that they will not grant the Insurers that same opportunity.  That differential treatment is arbitrary and inconsistent with both the Plan of Allocation and Class Counsel's duty to treat all eligible claimants "equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  This Court should require Class Counsel and the Claims Administrator to treat all claimants alike and to permit all claimants a reasonable opportunity to supplement timely filed claim forms after the claim-filing deadline.

## CONCLUSION

For the reasons discussed above, the Court should order Class Counsel and the Claims Administrator to (1) permit FRS and the Insurers a reasonable opportunity to submit vehicle data in support of their timely filed claim forms, and (2) deem that data timely for the purpose of evaluating FRS and Insurers' eligibility to recover under the End-Payor Settlements.

18

Dated:  February 17, 2021 Respectfully submitted,

/s/ *Laura S. Faussié*
Jonathan T. Walton, Jr. (P32969)
Michael P. Donnelly (P45221)
Laura S. Faussié (P48933)
FRASER TREBILCOCK
  DAVIS & DUNLAP, P.C.
One Woodward Avenue, Suite 1550
Detroit, MI 48226
(313) 237-7300
jwalton@fraserlawfirm.com
mdonnelly@fraserlawfirm.com
lfaussie@fraserlawfirm.com

Aaron M. Panner
Matthew R. Huppert
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
mhuppert@kellogghansen.com

*Counsel for Financial Recovery
Services, LLC*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 17, 2021, I electronically filed the foregoing documents with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record.

/s/ *Laura S. Faussié*
Laura S. Faussié