# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| THIS DOCUMENT RELATES TO: <br><br> ALL END-PAYOR ACTIONS | Hon. Sean F. Cox <br> Mag. Judge R. Steven Whalen |

**DECLARATION OF MATTHEW R. HUPPERT IN SUPPORT OF FINANCIAL RECOVERY SERVICES, LLC'S EMERGENCY MOTION TO COMPEL ACCEPTANCE AND PROCESSING OF VEHICLE DATA**

I, Matthew R. Huppert, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that:

1. I am a member of the bar of this Court. I submit this declaration in support of FRS's Emergency Motion to Compel Acceptance and Processing of Vehicle Data.

2. I am an associate with the law firm Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C, which represents Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS") in this litigation. The following facts are based on my personal knowledge. If called upon as a witness, I could and would testify competently to them.

3. On January 6, 2021, Epiq Class Action & Claims Solutions, the Claims Administrator for the End-Payor Settlements, communicated to FRS via email that it would not accept any vehicle data submitted after the June 18, 2020 claim-filing deadline, even if such data were submitted in support of timely filed claim forms.[1] Two days later, I sent an email to counsel for the End-Payor Settlement classes ("Class Counsel") asking to meet and confer about the Claims Administrator's emails. Class Counsel (Chanler A. Langham) responded on January 11, 2021 with his availability to confer and with a two-paragraph statement disputing one of the statements in my original email. A true and correct copy of the foregoing email exchange is attached as **Exhibit G**.

4. On January 12, 2021, my colleague Daniel S. Severson and I conferred by telephone with Mr. Langham and his colleague Jenna Farleigh. During that call, I asked Mr. Langham and Ms. Farleigh several questions about the meaning of and basis for the Claims Administrator's statements to FRS on January 4 and January 6 and Mr. Langham's statements in his January 11 email. In particular:

    a. I asked Mr. Langham to cite the basis for his claim that "Class Counsel repeatedly rejected any notion that FRS could submit 'placeholder' claims." He pointed only to (1) an unsupported assertion in Class Counsel's July 2, 2020 brief opposing FRS's motion to intervene, ECF No. 2066, PageID.38053, (2) paragraphs 5-9 of Jeffrey N. Leibell's declaration filed in support of FRS's motion to intervene, ECF No.

---

[1] FRS's January 2020 correspondence with the Claims Administrator is attached as Exhibit B to the Declaration of Jeffrey N. Leibell dated February 17, 2021 ("Leibell Declaration").

2

    2060-2, (3) the Declaration of Brian A. Pinkerton dated November 12, 2020, ECF No. 2098-1, and (4) the Court's order denying FRS's motion to intervene on November 17, 2020, ECF No. 2101. None of those sources reflect any statement from Class Counsel prior to the June 18, 2020 claim-filing deadline regarding so-called "placeholder" claims or the submission of vehicle data after the claim-filing deadline.

b.  Mr. Langham and Ms. Farleigh stated that the Claims Administrator would treat so-called "placeholder" claims filed before the claim-filing deadline as if they had been filed after the claim-filing deadline and would not process any vehicle data associated with such claims. Specifically, they stated that the Claims Administrator would not make any determination whether or to what extent that data reflect vehicles eligible for recovery in the End-Payor Settlements and would not "intermingle" such data with the data of non-"placeholder" claims.

c.  I stated that, by refusing even to process vehicle data for timely filed claim forms, Class Counsel was prejudicing FRS's auto insurer clients ("Insurers") because Class Counsel could later try to oppose compensation for those claims on the basis that the data underlying the claims had not been taken into account in calculating the claims and *pro rata* shares of other claimants. Accordingly, I asked whether Class Counsel would be willing to agree to process vehicle data for the purpose of preserving Insurers' practical ability to recover. Mr. Langham and Ms. Farleigh refused to agree.

d.  I asked Mr. Langham and Ms. Farleigh to state which claim forms Class Counsel and the Claims Administrator would consider "placeholder" claim forms. They responded that a claim form would be considered a "placeholder" if it did not contain information sufficient to identify the vehicle(s) being claimed. I then asked them how much information they considered sufficient to identify a vehicle, and they were unable or unwilling to provide an answer. In a further attempt to obtain an answer to my question, I posed a hypothetical claim form that identified "five Toyota Camrys," and asked whether that would be a "placeholder" claim form. Ms. Farleigh initially responded that my hypothetical would constitute a "placeholder" claim form because a make and model was insufficient to identify a vehicle, but then Mr. Langham interrupted Ms. Farleigh and said that they would not comment on hypotheticals. I understood Mr. Langham's interruption to indicate his disagreement with Ms. Farleigh on this point. In the end, Mr. Langham and Ms.

3

    Farleigh offered only to review individual claim forms and offer their personal opinions as to whether the forms were "placeholder" claim forms. I understood this offer to mean that the "placeholder" status of a claim form could be determined, if at all, on a form-by-form basis.

e. I asked Mr. Langham and Ms. Farleigh what the source of their authority was to instruct the Claim Administrator to disregard vehicle data for timely filed claim forms. The only authority they cited was the portion of the Plan of Allocation for the End-Payor Settlements, which defines "Authorized Claimants" as those who, *inter alia*, "submit timely and valid Claim Forms." 12-cv-403, ECF No. 301-2, PageID.11012.

5. On January 28, 2021, my colleague Aaron M. Panner sent a letter to Class Counsel elaborating on why we believed it was improper for them to instruct the Claims Administrator not to process vehicle data for timely filed claim forms and to consider the Insurers' vehicle data untimely. Among other things, that letter stated: "If you do not immediately direct that Insurers' supplemental vehicle data is processed when submitted and considered timely, FRS will seek appropriate relief." A true and correct copy of that letter is attached as **Exhibit H**.

6. On February 12, 2021, I sent an email to Class Counsel following up on Mr. Panner's January 28 letter and stating, *inter alia*: "If you do not confirm by 5 pm ET on Wednesday, February 17 that Insurers' supplemental vehicle data will be processed when submitted and considered timely, then FRS will seek relief from the court on that issue." Class Counsel did not respond to that email. A true and correct copy of that email correspondence is attached as **Exhibit I**.

4

5

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 17th day of February 2021, in Arlington, Virginia.

*M. Huppert*

Matthew R. Huppert