# EXHIBIT H

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

January 28, 2021

*Via Electronic Mail*

William Reiss
Robins Kaplan LLP
399 Park Avenue, Suite 3600
New York, NY 10022
wreiss@robinskaplan.com

Adam J. Zapala
Cotchett Pitre & McCarthy LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
AZapala@cpmlegal.com

Marc M. Seltzer
Susman Godfrey L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
MSeltzer@SusmanGodfrey.com

      Re:    *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311

Dear Messrs. Reiss, Seltzer, and Zapala:

      I write regarding your apparent instruction to the Claims Administrator in the End-Payor Actions in the above-referenced multi-district litigation that supplemental data submitted by Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS") on behalf of its automobile insurance company clients (the "Insurers") after the claim-filing deadline will not be processed. That instruction is improper. FRS notified you ("Class Counsel") and the Claims Administrator in March 2020 that it intended to supplement timely filed claim forms after the claim-filing deadline, and received no response. As a fiduciary to the members of the End-Payor settlement classes in this litigation, including the Insurers, your failure to speak at that time prevents you now from challenging as untimely FRS's supplementation of its clients' timely filed proofs of claim. If you persist in your timeliness objections to FRS's supplementation, you risk legal liability for any resulting losses to FRS or the Insurers.

      As you know, we maintain that Insurers made indemnification payments to insureds (the "Total Loss Insureds") for the value of their eligible vehicles that were deemed a total loss ("Total Loss Vehicles"), that those payments included compensation for the overcharges that their insureds incurred at the time of purchase due to the alleged antitrust conspiracy, and that, by virtue of those payments, Insurers are subrogees that stand in the shoes of Total Loss Insureds, many of whom are members of the settlement classes. If we are correct about that—and we

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

William Reiss, Marc M. Seltzer & Adam J. Zapala
January 28, 2021
Page 2

understand that you disagree with our subrogation analysis—Insurers are entitled to recover from the End-Payor settlements the antitrust losses that were originally suffered by Total Loss Insureds and later paid by the Insurers. If the Insurers are subrogees, Class Counsel owes them a fiduciary duty in connection with their claims. Moreover, several of the Insurers who are seeking recovery for Total Loss Vehicles are also settlement class members because they directly owned or leased eligible vehicles (the "Fleet Vehicles"); there can be no dispute that you owe these Insurers a fiduciary obligation even if they are not subrogees. Your actions vis-à-vis the Insurers appear to be in breach of your duties. If you do not immediately direct that Insurers' supplemental vehicle data is processed when submitted and considered timely, FRS will seek appropriate relief.

    **I.    Class Counsel Acquiesced to FRS's Proposal to Supplement Proofs of Claim After the Claim Deadline**

As you know, the Insurers retained FRS to manage their proofs of claim to recover from the End-Payor settlements. FRS has filed several timely proofs of claim on behalf of the Insurers, which included claims for both Fleet Vehicles and Total Loss Vehicles.

By letter dated March 9, 2020, FRS notified you and the Claims Administrator why it was not filing vehicle information for Total Loss Vehicles at that time and that, should the Court grant FRS's request to recognize the Insurers as subrogees entitled to recover from the End-Payor Settlements for Total Loss Vehicles, FRS would further supplement the claims. With the then-current March 16, 2020, claim deadline rapidly approaching, FRS asked that if there were "any objection to the foregoing, please advise FRS immediately so that we may advise the Court as soon as possible." ECF No. 2060-10 at 4. Neither you nor the Claims Administrator ever responded to that communication.

Instead, only *after* the claim-filing deadline did you inform FRS and the Insurers that vehicle data submitted after the claim-filing deadline would not be processed, and that "placeholder" claims would be categorically rejected. In opposition to FRS's motion to intervene, you asserted—incorrectly and without support—that you previously "flatly rejected" the use of timely filed "placeholder" claims followed by supplemental vehicle data. *See* Reply Decl. of Jeffrey N. Leibell ¶¶ 3-7, ECF No. 2073-1 (disputing these assertions). On January 4, 2021, the Claims Administrator notified FRS by email that it was "no longer accepting new data for the settlements," and that "any new data will be considered untimely." Then, by letter dated January 12, 2021, you stated that "the Claims Administrator has been instructed"—presumably by you—"to deny both late-filed claims and claims filed with a place-holder." That same day, your colleagues, Chanler Langham and Jenna Farleigh, stated in a telephone conversation with my colleagues Matt Huppert and Daniel Severson that the Claims Administrator would not process any timely filed "placeholder" claim forms or process supplemental vehicle information associated with such claims.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

William Reiss, Marc M. Seltzer & Adam J. Zapala
January 28, 2021
Page 3

> II. **You Are Estopped from Refusing FRS's Supplementation of the Insurers' Proofs of Claim and Will Be Liable If You Succeed, on the Basis of Timeliness, in Preventing the Insurers from Recovering**

Your failure to disclose, in response to FRS's inquiry, how you planned to treat "placeholder" claims was improper and will impose significant harm on FRS and the Insurers unless you process the Insurers' vehicle data, instead of insisting that such data is untimely. We understand that you disagree as a legal matter as to whether the Insurers have a valid subrogation interest in the End-Payor settlement funds, and FRS has endeavored to resolve that legal dispute, which was fully briefed to the district court more than one year ago. But it is inappropriate—and, we believe, a violation of your duties as class counsel—to attempt to avoid that threshold issue by seeking to bar the supplementation of timely filed claims.

"[C]lass representatives and, especially, class counsel" have "'fiduciary obligation[s]'" of loyalty and care "to protect the interests of the persons most affected by the litigation—namely, the class." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). "Those duties, famously described by Judge Cardozo as demanding '[n]ot honesty alone, but the punctilio of an honor the most sensitive,'" *Acad. Imaging LLC v. Soterion Corp.*, 352 F. App'x 59, 62 (6th Cir. 2009) (citation omitted), extend to subrogated insurers. *See Commercial Union Ins. Co. v. Medical Protective Co.*, 393 N.W. 2d 479, 486 (Mich. 1986) (subrogated insurer "can claim damages for injuries resulting from [defendant's]" breach of duties of good faith and as fiduciary); *Allianz Underwriters Ins. Co. v. Landmark Ins. Co.*, 787 N.Y.S.2d 15, 17-18 (App. Div. 1st Dep't 2004) (subrogated insurer can assert breach of fiduciary claim against insured's law firm); *see Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 2002 WL 1466806, at *7 (N.D. Ill. July 8, 2002) (holding subrogee's claim for breach of fiduciary duty survives summary judgment).

One in "a fiduciary or other similar relation of trust and confidence" to another has a duty to disclose "matters [that] he has reason to know will be regarded by the other as important in determining his course of action in the transaction in hand." Restatement (Second) of Torts § 551 & cmt. c (2020). Here, FRS made clear to you and to the Claims Administrator months before the eventual claim-filing deadline that it was submitting Insurers' claims to you in a manner that it understood would preserve Insurers' ability to recover from the End-Payor settlements. Accordingly, Class Counsel and the Claims Administrator, as fiduciaries, had a duty to disclose to FRS (which was acting on Insurers' behalf) that they would decline to process data submitted after the claim-filing deadline and/or that they would categorically recommend rejection of all "placeholder" claims. As discussed above, they did nothing of the kind.

Your failure to speak in these circumstances has two consequences. *First*, you are equitably estopped from refusing to accept Insurers' supplemental data on the basis of timeliness or from recommending non-payment of Insurers' claims on that basis. Your silence induced FRS and the Insurers to believe that they could supplement "placeholder" claims after the claim-filing deadline, in light of the still-pending dispute regarding the validity of Insurers' subrogation

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

William Reiss, Marc M. Seltzer & Adam J. Zapala
January 28, 2021
Page 4

interest. FRS justifiably relied on that belief by deferring submission of data for "placeholder" claims, and your categorical refusal now to process "placeholder" claims or data associated with them obviously stands to prejudice FRS and the Insurers. *See Van v. Zahorik*, 597 N.W.2d 15, 22 (Mich. 1999) (setting out elements of equitable estoppel). If you persist in your refusal to accept supplemental data for the Insurers' "placeholder" claims on the basis that they are untimely, we will seek to preclude you from doing so.

*Second*, you risk financial liability for any losses Insurers suffer because of your inequitable conduct. Where a fiduciary fails to disclose information he "has reason to know will be regarded by the other as important in determining his course of action," he "is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose." Restatement (Second) of Torts § 551 & cmt. c. Accordingly, your silence in these circumstances makes you liable as though you had represented affirmatively to FRS that it could supplement "placeholder" claims after the claim-filing deadline, and that implied representation was false and misleading in light of your current contrary position. *See, e.g., MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 665 (6th Cir. 2013) (silent fraud lies where plaintiff's inquiry gives rise to legal duty to disclose); *Connelly v. Balkwill*, 174 F. Supp. 49, 56 (N.D. Oh. 1959) ("Where the parties sustain a fiduciary or quasi fiduciary relationship towards each other the duty to make full disclosure is imperative."), *aff'd*, 279 F.2d 685 (6th Cir. 1960) (internal quotation marks omitted); *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 569 (Mich. 2012) ("[W]hen there is a legal or equitable duty of disclosure, a fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood . . . .") (internal quotation marks omitted); *see also Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 448 (S.D.N.Y. 2004) (claims administrator "could not, in good faith, remain inert" in the face of timely but incomplete claim forms). To whatever extent your implied misrepresentations cause FRS or the Insurers harm, you bear the risk of liability for that harm.

As noted, we understand you disagree that FRS and the Insurers stand in the shoes of settlement class members. Nevertheless, we do not think it is in anyone's best interest, including that of the other class members, for you to attempt to obstruct class members' efforts to obtain recovery that is legally warranted. The better and more efficient course would be for you to instruct the Claims Administrator to process the Insurers' supplemental vehicle data when it is submitted. We remain willing to discuss with you in good faith the most efficient way to process and compensate Insurers' claims, but if you persist in your current efforts to impede FRS and the Insurers from recovering, we intend to pursue all available avenues of relief.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

William Reiss, Marc M. Seltzer & Adam J. Zapala
January 28, 2021
Page 5

      Please do not hesitate to contact me if you would like to discuss these matters further.

                                Sincerely,

                                Aaron M. Panner