# EXHIBIT 4

311 F.3d 733
United States Court of Appeals,
Sixth Circuit.

HAZARD COAL CORPORATION, Perry County Coal Corporation, and Locust Grove, Inc., Plaintiffs–Appellants,

v.

KENTUCKY WEST VIRGINIA GAS COMPANY, L.L.C., Defendant–Appellee.

No. 01–5179.
|
Argued: Aug. 8, 2002.
|
Decided and Filed: Nov. 13, 2002.

**Synopsis**

Owner of mineral rights, its lessee, and coal mining company brought action against gas pipeline company, asserting that defendant had to pay for the relocation of its pipelines when such pipelines needed to be moved in order for plaintiffs to mine underlying coal. On parties' cross-motions for summary judgment, the United States District Court for the Eastern District of Kentucky, Joseph M. Hood, J., granted summary judgment to defendant, and plaintiffs appealed. The Court of Appeals, Merritt, Circuit Judge, held that: (1) defendant's "sister" corporation, not defendant, owned the gas flowing through the pipelines, for purposes of the subject deeds and leases, and (2) plaintiffs acquiesced in defendant's practice of transporting its affiliate's gas through the pipelines, and so were estopped from now objecting to that practice or from refusing to pay the cost of relocating the pipelines when they had done so previously.

Affirmed.

**Attorneys and Law Firms**

*734 Jay E. Ingle (argued and briefed), JACKSON & KELLY, Lexington, Kentucky, for Appellants.

Wayne F. Collier (argued and briefed), Kinkead & Stilz, Lexington, Kentucky, for Appellee.

Jeffrey J. Yost (briefed), Jackson & Kelly, Lexington, Kentucky, for Appellants.

Shelby C. Kinkead, Jr. (briefed), Kinkead & Stilz, Lexington, Kentucky, for Appellee.

Before: MERRITT and DAUGHTREY, Circuit Judges; WEBER, District Judge.[*]

*735 **OPINION**

MERRITT, Circuit Judge.

In this Kentucky diversity case, the question on appeal is whether plaintiffs or defendant must pay for the relocation of defendant's existing gas pipelines where plaintiffs wish to mine areas underlying these pipelines. Plaintiffs are Hazard Coal Corporation, the owner of surface and mineral rights on the contested property, its lessee, Perry County Coal Corporation, and Locust Grove, Inc., the mining company hired by Perry County Coal. Defendant is a gas pipeline company, Kentucky West Virginia Gas Company, L.L.C., the holder of pipeline easements across the property in question. The district court granted summary judgment to Kentucky West, holding that the easements granted to Kentucky West are sufficient to give it the right to require plaintiffs to pay for relocating the pipelines pursuant to Kentucky law. Unlike the district court, we find that the easements, by their terms, do not explicitly require plaintiffs to pay for the relocation because Kentucky West is using the pipelines to transport gas belonging to a sister company, Equitable Production Company, a separate corporate entity, an arrangement not contemplated by the express terms of the easements. However, because the parties have had extensive prior dealings over a number of years in which the plaintiffs have acquiesced to the use of the pipelines to transmit gas owned by a company other than Kentucky West, we find that the plaintiffs have waived any claim to invoke the easement language alone as a bar to paying for the cost of relocating the pipelines. We therefore AFFIRM the decision of the district court.

**I. Background**

The facts in this case are basically undisputed. Hazard Coal owns mineral rights on certain lands in Perry County, Kentucky. Hazard Coal has leased some of these interests to Perry County Coal, which in turn hired Locust Grove to mine these properties. Kentucky West is a gas pipeline operating company that owns and operates pipelines over Hazard Coal's

Case 2:12-md-02311-SFC-RSW ECF No. 2114-14, PageID.38409 Filed 02/17/21 Page 3 of 8

Hazard Coal Corp. v. Kentucky West Virginia Gas Co., L.L.C., 311 F.3d 733 (2002)
159 Oil & Gas Rep. 1, Util. L. Rep. P 14,429, 33 Envtl. L. Rep. 20,106...

mineral interests, and Kentucky West also provides well services to Equitable Production Company, the company that owns the gas flowing through Kentucky West's pipelines across the property in question. Kentucky West and Equitable Production are "sister corporations," that is, they are both subsidiaries of the parent company, Equitable Resources Energy Company, making them corporate affiliates. Each company is a separate corporate entity under Kentucky law.

Kentucky West's rights to develop oil and gas on the lands in question were conveyed via three separate instruments. In the first instrument, executed on November 18, 1926, Hazard Coal conveyed certain oil and gas interests by deed to R.J. Graf and his wife, and their heirs, representatives, successors and assigns. [1] ***736** The Grafs subsequently sold their interest in this property to the predecessor of Kentucky West—Kentucky West Virginia Gas Company, Inc.—on December 1, 1927. In the second instrument, executed on June 6, 1927, William and Anthony Vizard conveyed by deed certain oil and gas interests to R.J. Graf, his heirs, representatives, successors and assigns. [2] On December 1, 1927, Graf and his wife also sold these interests to Kentucky West's predecessor, Kentucky West Virginia Gas Company. ***737** In the third instrument, executed on November 1, 1963, Hazard Coal leased additional gas and oil rights on another tract of land to Kentucky West Virginia Gas Company, the predecessor to Kentucky West. [3] In all cases, Hazard Coal retained the underground and surface coal estates in the property and retains those rights today. These are the three instruments out of which all of Kentucky West's rights arise concerning the pipelines at issue.

These instruments expressly grant to Kentucky West's predecessor the right to drill for oil and gas and the right to build pipelines to transport the gas produced. In the 1960s, Kentucky West's predecessors began developing the property at issue. At that time, Hazard Coal was not actively coal mining the area. Over time, Kentucky West or its predecessor built an interconnected system of wells and pipelines over the property. Some of the pipelines gather and collect gas to service wells drilled on that property, others transmit gas across the property from wells drilled on other property. The pipelines at issue here are five transmission lines that do not directly connect to any wells on the property and are not used to pump gas from other wells owned by Kentucky West.

On January 1, 1986, Kentucky West's predecessor, Kentucky West Virginia Gas Company, conveyed the wells and natural gas to Equitable Production's predecessor in a corporate restructuring. Subsequently, Kentucky West Virginia Gas Company became Kentucky West Virginia Gas Company, L.L.C. No physical changes occurred to the wells or pipelines, but the gas that flows through the pipelines at issue that was previously owned by Kentucky West is now owned by Kentucky West's corporate affiliate, Equitable Production, due to the corporate restructuring.

When the pipelines needed to be moved in order for plaintiffs to mine underlying coal, Locust Grove requested that Kentucky West remove or relocate the pipelines. Kentucky West refused to do so unless plaintiffs paid the costs of relocation. Plaintiffs initiated this action in a Kentucky state court, which was removed to federal court based on diversity jurisdiction. Both sides motions for summary judgment. The district court granted defendant's motion and this appeal followed.

## II. Analysis

Plaintiffs maintain that Kentucky West has never obtained the right to maintain and operate transmission lines across the property for the purpose of transporting gas owned by a company other than Kentucky ***738** West. Plaintiffs main argument is that the deeds and lease grant the right to build and maintain collection and gathering lines to serve gas owned by Kentucky West *only,* and do not give Kentucky West the right to build transmission lines to serve the gas market generally, even a company that is a corporate affiliate. In other words, plaintiffs argue that the transmission lines across the property for the purpose of transporting Equitable Production's gas exceed the rights granted in the original conveyances and, therefore, plaintiffs should not be responsible for relocation of unauthorized pipelines.

Plaintiffs contend that Kentucky West should have obtained authorization to transmit gas belonging to other companies or, alternatively, that the district court should have undertaken to determine if using the transmission lines to transport gas that does not belong to Kentucky West is a "reasonable use," as that term is defined under Kentucky law. In either event, plaintiffs contend that the because Kentucky West did not receive authorization under the original conveyances to build the larger transmission lines and because no analysis has been undertaken to determine if such lines are a reasonable use within the parameters of the original conveyances, Kentucky West must bear the cost of relocating the contested pipelines.

Case 2:12-md-02311-SFC-RSW ECF No. 2114-14, PageID.38410 Filed 02/17/21 Page 4 of 8

Hazard Coal Corp. v. Kentucky West Virginia Gas Co., L.L.C., 311 F.3d 733 (2002)
159 Oil & Gas Rep. 1, Util. L. Rep. P 14,429, 33 Envtl. L. Rep. 20,106...

We first look to the express terms of the three instruments under which Kentucky West's rights arise. Although plaintiffs are correct that transmission lines across the property for the purpose of transporting gas not owned by Kentucky West is not expressly authorized, neither do we see where it is expressly prohibited. As discussed below, plaintiffs may be correct when they argue that the ownership of the wells by a separate and distinct legal entity may change the relationship under the original grants. However, to the extent that the deed language and the lease permit Kentucky West to "assign" its rights to transport gas across the property to another entity, that right of assignment might cover the current situation if Kentucky West has or could assign its rights under the deeds and lease to Equitable Production. To date, no assignment has ever been made as far as we can tell from the record. Because the parties have not fully addressed this issue and because, as discussed below, we find that equitable principles require plaintiffs to pay for the relocation, we do not rest our holding on the assignment issue. But we note that the language in the deeds and the lease, standing alone, seems to allow Kentucky West to assign its rights under the instruments to an assignee.

In addition, as a Kentucky court recently held, public policy also supports allowing Kentucky West to assign the right to use a leasehold to transport oil and gas from other properties for economic reasons. *Lucas v. Equitable Resources Exploration,* No. 98–CI–00014 (Pike Cty. Cir. Ct. Aug. 24, 2000). Based on the language in the deeds and lease, and Kentucky law, it is likely that an assignment could be made and would be upheld by the Kentucky courts in this situation.

Because the documents do not answer the question of which party should pay for the pipeline relocation, we look to Kentucky law. Both parties rely on *Elk Horn Coal Corp. v. Kentucky–West Virginia Gas Co.,* 317 S.W.2d 472 (Ky.1957), to support their positions. In *Elk Horn,* the court relied on the "correlative rights" doctrine to hold that when both the mineral owner and the oil and gas owner have rights attendant to their operations on the property, and they are using them reasonably, the mineral owner, as the holder of the dominant estate, generally must pay for **\*739** the relocation of the gas lines. Plaintiffs rely on *Elk Horn* by pointing out that Kentucky West has exceeded its rights under the plain language of the deeds and lease conveying rights to gather oil and gas on the property and that Kentucky West never obtained an easement or a right-of-way to allow such transmission of gas it does not own across the property at issue. Kentucky West relies on *Elk Horn* by claiming that because the gas transported across the property is owned by a "sister" corporation, Equitable Production, it has the necessary ownership interest in the gas to satisfy the terms of the deeds, lease and the holding in *Elk Horn*.

To the extent Kentucky West argues that it "owns" the gas flowing through the pipelines due its relationship as a "sister" or affiliate company to Equitable Production, that argument must fail. Equitable Production and Kentucky West are two entirely separate corporate entities. Under Kentucky law, separate corporate interests, including subsidiaries and affiliates such as Kentucky West and Equitable Production, are separate legal entities and must be recognized and treated as such unless there is some reason to pierce the corporate veil, which is not the case here. *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir.1979); *Square D. Co. v. Kentucky Bd. of Tax Appeals,* 415 S.W.2d 594, 601 (1967). As noted by plaintiffs, if a business wishes to reap the benefits of establishing separate corporations, it must also accept the burdens. The companies cannot be separate for some purposes and lumped together for others at their whim or convenience. Accordingly, Kentucky West cannot rely on the fact that the gas flowing through the pipelines belongs to an affiliated company to rely on *Elk Horn*.

Because neither the conveyance instruments nor the case law answer the question of who is responsible for relocation in this case, we look for further evidence from the record of the parties' intentions and subsequent course of dealings. While plaintiffs contend that it was never the parties' intention to allow transmission lines across the property to transport gas not owned by Kentucky West, all or some of the plaintiffs have known about the existence of these pipelines for many years and, in fact, plaintiffs Perry County Coal and Locust Grove have paid to relocate portions of some of the lines in question on previous occasions within the last ten years, well after the time when Equitable Production started transmitting gas through Kentucky West pipelines. The plaintiffs have known that Kentucky West and Equitable Production are two separate corporate entities, and yet at least two of the plaintiffs, Perry County Coal and Locust Grove, have entered into many previous agreements to pay Kentucky West to relocate its pipelines even when they knew that the gas being transported in the pipelines by Kentucky West was owned by Equitable Production. The plaintiffs cannot be heard to complain at this late date that Kentucky West is in violation of the contracts. *See, e.g.,* letter agreements and pipeline relocation agreements between Kentucky West and Whitaker Coal [4] or Locust Grove, Kentucky West's Memorandum in

Case 2:12-md-02311-SFC-RSW ECF No. 2114-14, PageID.38411 Filed 02/17/21 Page 5 of 8

Hazard Coal Corp. v. Kentucky West Virginia Gas Co., L.L.C., 311 F.3d 733 (2002)
159 Oil & Gas Rep. 1, Util. L. Rep. P 14,429, 33 Envtl. L. Rep. 20,106...

Support of Its Motion for Summary Judgment, No. 99–87 (E.D.Ky. Dec. 22, 2000).

Furthermore, in addition to the pipeline relocations referenced above, plaintiffs dealt with Equitable Production Company, ***740** or its predecessor Equitable Resources Energy Company, not with Kentucky West, to raise or shut-in certain wellheads in connection with pipeline relocations. Again, a lengthy list of agreements dated between 1997 and 2000 exist between Locust Grove or Whitaker Coal and Equitable Production Company concerning these wells. *See, e.g.,* letter agreements between Equitable production Company and either Whitaker Coal or Locust Grove, Kentucky West's Response to Hazard Coal's Motion for Summary Judgment, No. 99–87 (E.D.Ky. Dec. 22, 2000). Plaintiff Hazard Coal admits that it was informed by letter when all the contested pipelines were built, during the 1960s and 1970s, but claims that it did not know that due to a corporate restructuring in 1986 that the gas being transported in these pipelines was owned by Kentucky West's "sister" corporation, Equitable Production. What Hazard Coal does not address is the fact that its lessee, plaintiff Perry County Coal, and the company Perry County Coal hired to mine the property, plaintiff Locust Grove, had full knowledge that the gas being transported was owned by Equitable Production and not by Kentucky West for at least ten years before this action was filed. We impute this knowledge to Hazard Coal and find that it had at least constructive knowledge of the owner of the gas flowing through the contested lines since at least the early 1990s. For any of the plaintiffs, including Hazard Coal, to deny that they had notice of the fact that at least some of the gas being transported through the pipelines across the property in question was owned by Equitable Production and not Kentucky West is either disingenuous or negligent. We find no record that any of the plaintiffs objected to Kentucky West's use of its pipelines to pump Equitable Production's gas.

The evidence here, in the form of the letters and agreements between plaintiffs and defendant (or their respective predecessors) over a number of years, shows a sufficient degree of repetition or continuity of practice to warrant the conclusion that a custom or course of dealing exists with the consent and approval of plaintiffs. Despite plaintiffs' arguments, the record demonstrates that the parties' intentions were to allow Equitable Production's gas to flow through the contested pipelines and to pay for the relocation of those pipelines.

In addition to the parties' intentions as demonstrated by their actions, Kentucky West raises many equitable doctrines as defenses to plaintiffs' claims. To the extent that the original terms and understanding of the parties to the deeds and lease restricted the size and use of the pipelines across the property, any right to enforce those restrictions, or to claim that they are not responsible for the cost of relocating the pipelines, has been lost through a variety of equitable principles, including waiver, acquiescence, laches and estoppel.

Although all of the equitable defenses raised by Kentucky West may have some merit, this situation presents a classic case of waiver by acquiescence. Acquiescence consists of assent by words or conduct on which the other party relies. Acquiescence may serve as a basis for asserting the defense of estoppel

> [w]hen a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject matter under the belief that the transaction has been recognized or freely abstains for a considerable length of ***741** time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence and the transaction, although originally impeachable, becomes unimpeachable in equity....

J. Pomeroy, 2 Equity Jurisprudence § 965, at p.2094 (5th ed.1941); *see also* J. Pomeroy, 3 Equity Jurisprudence §§ 816–818 (5th ed.1941) (equity will debar a party from recovery when he stands by and knowingly permits another to deal with his property as though it were rightfully his or he was rightfully dealing with it and makes no objection).

Case 2:12-md-02311-SFC-RSW ECF No. 2114-14, PageID.38412 Filed 02/17/21 Page 6 of 8

Hazard Coal Corp. v. Kentucky West Virginia Gas Co., L.L.C., 311 F.3d 733 (2002)
159 Oil & Gas Rep. 1, Util. L. Rep. P 14,429, 33 Envtl. L. Rep. 20,106...

In response to this equitable defense, plaintiffs, specifically Hazard Coal, claim that they were not aware of, and therefore could not have objected to, the transport of Equitable Production's gas through the pipelines. Plaintiffs rightly claim that "mere silence," standing alone, cannot constitute waiver by acquiescence. However, what we have here is not mere silence. As described above, the letters and agreements between the parties show Hazard Coal or its representatives actively engaged in negotiation with defendant or Equitable Production. Hazard Coal cannot deny that it knew or should have known about these many agreements. These agreements served as ratification of, or at least acquiescence in, Kentucky West's practice of transporting Equitable Production's gas through the pipelines. The plaintiffs cannot be heard to complain now. The failure to raise any objections up to now about the transport of Equitable Production gas through Kentucky West pipelines was reasonably taken by Kentucky West as acquiescence in the practice and Kentucky West relied on that acquiescence.

In sum, Hazard Coal or its representative received notice of the construction, including size, of every contested pipeline. Hazard Coal or its representatives knew of the corporate restructuring of Equitable and Kentucky West if not in 1986 when it occurred, at least by the early 1990s. Perry County Coal and Locust Grove dealt directly with Equitable. The plaintiffs, including Hazard Coal, are sophisticated companies, and knew or should have known the location, size, and ownership status of both the contested pipelines and the gas flowing through them long ago. There is nothing in the record to indicate that this fact was hidden from them. If they did not believe from the beginning that the conveyance instruments allowed Equitable Production gas to flow through Kentucky West pipelines under the terms of the original conveyances, they should not have paid for relocation of any pipelines previously and they should have relayed their concerns about the practice to Kentucky West or Equitable. Under the law they have waived the right to now complain about the practice they have allowed for some time. [5]

For the foregoing reasons, the judgment of the district court is affirmed.

**All Citations**

311 F.3d 733, 159 Oil & Gas Rep. 1, Util. L. Rep. P 14,429, 33 Envtl. L. Rep. 20,106, 2002 Fed.App. 0393P

## Footnotes

| | |
|---|---|
| * | The Honorable Herman Weber, United States District Judge for the Southern District of Ohio, sitting by designation. |
| 1 | The language of the Graf deed is as follows:<br>[T]he Hazard Coal Corporation, does hereby grant, give alien and convey unto said R.J. Graf, party of the second part, his heirs, representatives, successors and assigns, all the oils and gases, and all rights thereto, insofar as said party of the first part may now own the same, in, upon or under, or hereafter found, in, upon, or under the hereinafter described tracts and boundaries of land, together with the exclusive right to enter upon said land and drill thereupon for oil and gas and pump for and store the same upon said land, and remove, pipe and transport the same therefrom, with all rights of way deemed necessary or convenient, and to use and operate the said land and surface thereof, and any and all parts thereof, including the right to use, divert, dam, and pollute water courses thereon in every and any manner that may, by party of the second part, his successors, representatives or assigns, be deemed necessary or convenient for the full and free exercise and enjoyment of any and all of the property rights and privileges hereby bargained, sold, granted or conveyed, including but not limiting to that of drilling, pumping and therefrom removing or otherwise utilizing the said pipe lines for the transportation therefrom of said articles; and also the right to build, erect, alter, repair, maintain and operate on said land and, at his option, to build thereon and remove therefrom any and all houses, tanks, derricks, pipe lines, machinery and any and all equipment that may be part of the second part, his successors or assigns, be deemed necessary ro [sic] convenient for the full and free exercise and enjoyment of any and all the property rights and privileges herein bargained, granted, sold or conveyed, and the right thereupon |

Case 2:12-md-02311-SFC-RSW ECF No. 2114-14, PageID.38413 Filed 02/17/21 Page 7 of 8

Hazard Coal Corp. v. Kentucky West Virginia Gas Co., L.L.C., 311 F.3d 733 (2002)
159 Oil & Gas Rep. 1, Util. L. Rep. P 14,429, 33 Envtl. L. Rep. 20,106...

    convert, reduce, refine, store, pump and manufacture the said, or any and all of said property or the products in, upon or under said lands, or other land owned or hereafter acquired by said party of the second part, his successors or assigns, by purchase, lease or otherwise, and the right to pump, store and leave upon said land any and all muck, bone, shale, water or refuse from said wells or houses, and any and all matter or products that may be excavated or produced by the exercise and enjoyment of any and all of the property rights or privileges hereby bargained, sold, granted or conveyed, subject, however, to the provisions hereinafter stated.

    Def. Brief at 6–7.

2    The Vizard deed provides as follows:

    [T]he said William Vizard, and the said Anthony Vizard, Trustees, do hereby grant, give alien and convey unto the said R.J. Graf, party of the second part, his heirs, representatives, successors and assigns, all the oils and gases, and all rights thereto, in so far as said party of the first part may now own the same, in, upon, or hereafter found, in, upon or under the hereinafter described tracts and boundaries of land, together with the exclusive right to enter upon said land and drill thereupon for oil and gas and to pump for and store the same upon said land, and remove, pipe and transport the same therefrom, with all rights of way deemed necessary or convenient, and to use and operate the said land and surface thereof, and any and all parts thereof, including the right to use, divert, dam and pollute water courses thereon in every and any manner that may, by party of the second part, his successors, representatives or assigns, be deemed necessary or convenient for the full and free exercise and enjoyment of any and all of the property rights and privileges hereby bargained, sold, granted or conveyed, including but not limiting that to drilling, pumping and therefrom removing or other wise utilizing the said pipe lines for the transportation therefrom of said articles; and also the right to build, erect, alter, repair, maintain and operate on said land, and, at his option, to build thereon and remove therefrom any houses, tanks, derricks, pipe lines, machinery and any and all equipment that may, by party of the second part, his successors or assigns, be deemed necessary or convenient for the full and free exercise and enjoyment of any and all the property rights and privileges herein bargained, granted, sold or conveyed, and the right to thereupon convert, reduce, refine, store, pump and manufacture the said or any and all of said property or products in, upon or under said lands, or other land owned or hereafter acquired by said party of the second part, his successors or assigns, by purchase, lease or otherwise, and the right to pump, store and leave upon the land any and all muck, bone, shale, water or refuse from said wells or houses, and any and all matter or products that may be excavated or produced by the exercise and enjoyment of any or all of the property rights or privileges hereby bargained, sold, granted or conveyed, subject, however, to the provisions hereinafter stated.

    Def. Brief at 8–9.

3    The Hazard Coal lease provides in relevant part as follows:

    [T]he Lessor, in consideration of One Dollar ($1.00), in hand paid by the Lessee, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, hereby grants, demises, leases and lets unto the Lessee, its successors and assigns, all that certain tract of land hereinafter described, for the sole and only purpose, and with the exclusive right, of operating for, producing and marketing therefrom, together with the right-of-way and servitudes for pipe lines, telephone and telegraph lines, structures, houses, and buildings, and all other rights and privileges necessary, or deemed necessary, incident to or convenient for the economic operation of this land, and any other lands, the oil and gas rights in which, or the control thereof, Lessee now has or owns, or which may be hereafter acquired by Lessee, successors or assigns, by any manner of conveyance or contract, for oil or gas, with the right to use, for such purposes, free of charge, oil, gas and water, produced from or on the premises, and with the right, but without the obligation, either during or after the term hereof, to remove all and any property or improvements which Lessee, successors or assigns, may place or erect on the premises....

    Def. Brief at 9–10.

**Hazard Coal Corp. v. Kentucky West Virginia Gas Co., L.L.C., 311 F.3d 733 (2002)**
159 Oil & Gas Rep. 1, Util. L. Rep. P 14,429, 33 Envtl. L. Rep. 20,106...

| | |
|---|---|
| 4 | Whitaker Coal has "certain interests in the property rights claimed by [plaintiffs]." Because Whitaker was not a party, the parties entered into an agreement whereby Whitaker agreed to be bound by the proceedings. Def. Br. at 16 n. 2. |
| 5 | To the extent that what plaintiffs are actually complaining about in this lawsuit is the long-standing practice in Kentucky whereby the coal companies can receive consent to mine near gas pipelines only after agreeing to pay for their relocation, we will not alter that practice here. That is a matter of public policy best left to state law, Kentucky legislators or the interested parties through negotiation. |

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.