# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | Honorable Sean F. Cox |
| | : | |

|  |  |  |
|---|---|---|
| | : | |
| THIS DOCUMENT RELATES TO: | : | END-PAYOR PLAINTIFFS' |
| ALL END-PAYOR ACTIONS | : | MEMORANDUM IN |
| | : | OPPOSITION TO FINANCIAL |
| | : | RECOVERY SERVICES, |
| | : | LLC'S IMPROPER MOTION |
| | : | TO COMPEL ACCEPTANCE |
| | : | AND PROCESSING OF |
| | : | VEHICLE DATA |
| | : | |
| | : | |

## <u>STATEMENT OF ISSUE PRESENTED</u>

1. Should non-party FRS be allowed to file untimely vehicle claims more than eight months after expiration of the claims-filing deadline where the addition of those claims would prejudice the class and delay payment and where FRS has not intervened in this litigation and is not itself a class member?

   No.

## <u>TABLE OF MOST CONTROLLING AUTHORITIES</u>

*Jennings v. Fuller*, 659 F. App'x 867 (6th Cir. 2016)

*Lewis v. Alexander*, 987 F.2d 392 (6th Cir. 1993)

*Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983 (11th Cir. 2020)

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

BACKGROUND FACTS .....................................................................6

ARGUMENT .....................................................................................13

    I.    FRS' Motion is Procedurally Improper...............................13

        A.    This Court Has No Jurisdiction to Hear this Motion...............14

    II.    Even if the Merits Are Considered, FRS Is Still Not Entitled to Relief ...............................................15

        A.    FRS' Improperly Attempts to Submit Late Claims .................16

        B.    This Court's Prior Orders Do Not Allow FRS to Submit Late Claims, Particularly Claims Based on a Subrogation Theory....................................20

        C.    Estoppel Is Not Warranted Since FRS Has Long Been On Notice that Late Claims Would Not Be Accepted and that "Placeholder" Claims Could Not Be Used .................22

        D.    Class Counsel Has Fulfilled Its Fiduciary Duties....................25

    III.    Allowing FRS to Submit Late Claims Would Delay Settlement Distribution and Severely Prejudice the Class.................26

CONCLUSION ...................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acuity Ins. Co. v. Higdon's Sheet Metal & Supply Co., Inc.*,
No. 3:06–CV–162–H, 2007 WL 1034986 (W.D. Ky. Apr. 3, 2007)................22

*GEICO Corp. v. Autoliv, Inc.*,
345 F. Supp. 3d 799 (E.D. Mich. 2018) ..............................................................6

*In Re: Automotive Parts Antitrust Litigation*,
Master File No. 2:12-md-02311-SFC-RSW, ECF No. 2060 ..............................1

*Jennings v. Fuller*,
659 F. App'x 867 (6th Cir. 2016) .....................................................................14

*Lewis v. Alexander*,
987 F.2d 392 (6th Cir. 1993) ...........................................................................14

*Med. & Chiropractic Clinic, Inc. v. Oppenheim*,
981 F.3d 983 (11th Cir. 2020) .........................................................................25

*Meyer Goldberg, Inc. v. Goldberg*,
717 F.2d 290 (6th Cir. 1983) ...........................................................................16

*Pioneer Inv. Servs. v. Brunswick Assoc. Ltd.*,
507 U.S. 380 (1993).........................................................................................25

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................14

**Other Authorities**

www.autopartsclass.com.................................................................................10, 22

## INTRODUCTION

On June 18, 2020, more than eight months ago, non-party Financial Recovery Services, LLC ("FRS"), on the last day permitted for class members to submit claims to participate in the settlements reached in this exceptionally complex litigation, moved for leave to intervene. The stated purpose for requesting intervention was as follows: First, to obtain a ruling from this Court that automobile insurance companies would have the right to submit claims to participate in those settlements based on the contention that their rights were subrogated to the rights of unidentified class members who were their insureds. ECF No. 2060 at 25.[1] Second, to allow FRS on behalf of those insurers to supplement their claims "consistent with the Court's resolution of subrogation issue." *Id.* FRS admitted in its motion that it had not submitted any vehicle-specific subrogation information because it had chosen not to do so to avoid doing that work until it had obtained a ruling in favor of the insurance companies on the subrogation issue. *See id.* Indeed, as noted below, by the June 18, 2020 claims-filing deadline, FRS had submitted direct-purchase (non-subrogation) claims information on behalf of five insurance companies to the claims administrator. Pinkerton Decl. ¶ 24. For another insurance company, it had failed to provide any vehicle information whatsoever. Pinkerton Decl. ¶ 25. For the seventh

---

[1] *In Re: Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311-SFC-RSW, ECF No. 2060. All references to "ECF No." that do not denote a particular case number are in reference to the main case number.

insurance company, it submitted general information for a single vehicle—the same exact vehicle submitted by FRS in conjunction with 147 other purported claimants. *Id.* The submission of such scant and likely fraudulent "placeholder" information by FRS on behalf of two of the insurance companies did not satisfy the claim submission requirements established by this Court's orders, such as providing the make, model and year of the specific new vehicles purchased or leased by a class member, the date of purchase or lease, and the place of purchase or residence at the time the vehicle was purchased or leased. FRS also did not submit anything close to that which would be necessary to assess and process a subrogation claim for any claimant, if such claims were even allowed: It did not expressly state that subrogation was the theory under which recovery was based. It did not provide information (e.g., policy information) that would imply that the claim was based on a subrogation theory. And it did not provide any documentation that would support a subrogation claim, such as which insured class member' vehicles were declared a total loss. *See* Pinkerton Decl. ¶ 50.

Class counsel opposed FRS' motion to intervene on multiple grounds, including because allowing claims to be submitted on behalf of insurance companies would prejudice the rights of the classes they represent and delay completion of the claims administration process by many months. ECF No. 2066. Class counsel also believed that the motion for leave to intervene should be denied as untimely. *Id.*

Class counsel explained why allowing such claims would prejudice the claims administration process, supported by a detailed declaration from the Court-appointed claims administrator. *See* ECF No. 2097. In its reply in support of the motion, FRS admitted that class counsel had never agreed that FRS could submit so-called "placeholder claims" on behalf of insurance carriers, which could later be supplemented if the Court were to allow claims based on subrogation rights to be submitted at all. ECF No. 2073 at 9 & n. 6. Instead, FRS argued that its motion for leave to intervene should not be denied on untimeliness grounds because class counsel did not reject its proposal made in its letter of March 9, 2020 to allow FRS to further supplement insurance company claims if it were allowed to submit claims based on subrogation rights. *Id.* & ECF No. 2060-2 at 5. FRS neglected to mention that class counsel had long since rejected the proposal made by FRS to allow it to submit placeholder claims. ECF No. 2066 at 26. FRS did not argue that class counsel's lack of response to the March 9, 2020, letter somehow estopped class plaintiffs from opposing intervention or arguing that the proposal to supplement "placeholder claims" should be rejected as untimely.

In its order of November 17, 2020, the Court denied FRS' motion for leave to intervene because it was untimely. ECF No. 2101. That order is now on appeal to the Sixth Circuit. In January of this year, FRS filed a motion before the Sixth Circuit asking the Court to stay the appeal based on the proposition that it would be

supplementing claims on behalf of insurers and that, if those claims were subsequently denied by this Court, it would have a second right of appeal from that denial, rendering the current appeal unnecessary. Class counsel opposed the motion and pointed out why the premise of the motion was unsound and that FRS had no right to supplement the claims in question. The Sixth Circuit denied the motion.

The instant motion should be denied for several independently sufficient reasons.

First, FRS isn't a party to these proceedings and has no right to file any motions absent being granted intervenor status.

Second, this motion seeks the same relief it sought in FRS' motion to seek to leave to intervene. That motion was denied and is now on appeal. Having lost the motion for leave to intervene, this motion cannot be acted upon, much less granted, unless FRS is granted intervenor status. However, that issue is now on appeal and is subject to the jurisdiction of the Sixth Circuit. For this reason, this Court lacks jurisdiction to revisit its order denying the motion for leave to intervene, which would be a necessary predicate to considering the instant motion.

Third, the stated basis of the motion, namely, that class plaintiffs and the claims administrator are estopped from contending that the submission of vehicle-specific data after the June 18, 2020 claim submission deadline would be untimely is not only incorrect as a matter of law and fact, it is based on many of the same

arguments made in FRS' motion for leave to intervene, which this Court denied. Indeed, given the passage of time, it would, if anything, be even more prejudicial to the classes to allow claims to be supplemented than it was when intervention was denied last year.

Fourth, so-called "placeholder claims" were not allowed by this Court's prior orders regarding class notice and claims-administration matters. And, in fact, the submissions made by FRS that it calls "placeholder claims" were wholly insufficient to constitute claims at all. All that was submitted were the names of certain companies (only five of whom were insurance companies), using the Florida address of FRS as each if their places of business. Pinkerton Decl. ¶¶ 24-37. The submissions contained none of the required information about the vehicles upon which the claims were based, with one incredible exception: As to three groups of unrelated companies, the "placeholder claims" are based on the same vehicle. For example, as set for forth in the accompanying declaration from the Brian Pinkerton, the case manager of this litigation for the claims administrator, FRS identified a "1996 Mercedes-Benz M-Class" automobile purchased in Florida as providing the sole basis of the claims of 148 different claimants. *See* Pinkerton Decl. ¶¶ 24, 33. And all of these cars submitted by FRS on behalf of claimants were allegedly purchased on January 1st. *Id.* ¶ 34. Worse yet, some of the claimants were not even in existence when the supposed purchase took place. *Id.* ¶ 35. Of course, all of this is impossible

and are obvious badges of fraud. The small set of late "supplements" provided by FRS further prove the fraud in the so-called "placeholder" claims since none of the supplements, which appear to list the actual vehicles associated with a particular claimant, contain the Florida-purchased vehicle named in the original submission. *Id.* ¶ 41. In other words, the "placeholder claims" may and properly should be considered a nullity.

For all of these reasons, and as demonstrated below, it is respectfully submitted that the motion should be denied.

## BACKGROUND FACTS

In this long-running multidistrict antitrust litigation, this Court approved settlements on June 20, 2016 (Round 1); September 25, 2017 (Round 2); November 8, 2019 (Round 3); and September 23, 2020 (Round 4). ECF No. 2101 at p. 1. On August 30, 2018, this Court issued an order that automobile insurers lacked antitrust standing to recover payments made to insureds for vehicles declared a total loss. *See GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 829-30 (E.D. Mich. 2018). With knowledge of this order, FRS—a third-party claims-filing company that says it represents automobile insurers—contacted class counsel in November 2018, contending it could nonetheless recover payments the insurers made to insured settlement class members for vehicles declared a total loss. ECF No. 2101 at 2. FRS does not contend that it or the automobile insurers are settlement class members.

Instead, FRS contends that the insurers made payments to End-Payor settlement class members for eligible vehicles that were deemed a total loss and that the insurers are entitled to recover under principles of subrogation. *See* ECF No. 2114; ECF No. 2060.

During its contact with class counsel on the subrogation issue, FRS also asked if it could submit so-called "placeholder" claims that it would later supplement on behalf of subrogation claimants. *See also* ECF No. 2060-2 ¶¶ 5-7. EPPs flatly rejected FRS' request to file these null claims in an effort to preserve the right to augment them later. ECF No. 2060-2 ¶ 6. Class counsel instructed FRS to identify the claimed vehicles and comply with the remaining claims-filing procedures before the claim submission deadline. ECF No. 2060-2 ¶ 6. Instead, in January 2019, FRS sent a letter to EPPs regarding the subrogation arguments. ECF No. 2010 at 2. Class counsel disputed FRS had any right to settlement proceeds based on subrogation. *Id.*

Another nine months passed—until October 17, 2019—before FRS contacted class counsel again. *Id.* FRS sent class counsel a draft letter that FRS claimed it would send to the Court. ECF No. 2060-7. On November 2, 2019, class counsel responded in writing and unequivocally informed FRS that its insurance company clients "have no rights as class members or as subrogees of class members," and extensively cited authority supporting that position. ECF No. 2060-8.

On November 25, 2019, FRS inquired about a briefing schedule "subject of course to the Court's approval." ECF No. 2060-9. FRS and class counsel conferred on November 26, 2019, and generally agreed on a briefing schedule regarding the subrogation issue. But FRS never sought approval to submit any brief to the Court. FRS did not seek leave to intervene. And FRS did not even attempt to file its brief on the Court's docket. Instead, on December 13, 2019, FRS simply sent a letter to the Court "by Federal Express." ECF No. 2060-4. Even then, FRS did not seek intervention, did not seek permission to submit placeholder claims, and did not request permission to identify claimed vehicles or information substantiating subrogation claims after the claim submission deadline. ECF No. 2060-3.

On December 20, 2019, FRS claims it contacted the Court to inquire about the status of its December 13, 2019 letter. ECF No. 2060-12 ¶ 2. FRS further claims that someone in Judge Battani's chambers advised FRS that, in order to seek a ruling, FRS would need to file a motion seeking leave to intervene to perfect its submission. *Id.* In apparent disregard of this advice, FRS failed to seek intervention at that time. Class counsel opposed FRS' letter but, unlike FRS, EPPs filed that opposition with the Court. ECF No. 2034. Ignoring its own prior procedural misstep, FRS then sent a reply letter to the Court on January 30, 2020 "by Federal Express," and still did not move for intervention. ECF No. 2060, Ex. B. None of FRS' letters were ever docketed.

8

A few months later, on March 9, 2020, FRS sent the claims administrator a letter stating that FRS would not be able to comply with the then-in-effect claims administration deadline (set to expire on March 16, 2020) "because identifying, collecting, and marshaling the Total Loss Vehicle data necessary to update each Auto Insurer's proof of claim will be a considerable undertaking." ECF No. 2060-10. It then went on to state, not seek permission, that FRS would "supplement[] each Auto Insurer's proof of claim" after the claims-filing deadline even though that procedure had previously been rejected by EPPs. *Id.* EPPs did not respond: FRS had not moved the Court for relief, EPPs had already made their position on so-called "placeholder" claims clear, and FRS' legal questions could not be answered as part of the claims administration process. Even when the Court extended the claims submission deadline by two months, from March 16, 2020 to June 18, 2020, FRS did nothing to timely supplement its claims. Instead, FRS sat on its hands until days before the final deadline to submit claims to participate in the EPP Settlements—June 18, 2020.

On June 15, 2020, FRS' counsel called class counsel asking the following questions: (1) whether EPPs class counsel would oppose a motion to intervene by FRS; (2) whether EPP class counsel would object to FRS submitting so-called "place holder" claims; and (3) whether there was liaison counsel for the Defendants who FRS could contact about the intervention issue. That same day, class counsel

responded by email and confirmed that EPPs did oppose FRS' proposed motion to intervene, that EPPs objected to the use of so-called "placeholder" claims, and that EPPs were not aware of any liaison counsel. Langham Decl. ¶ 11, Ex. A.

The claims-filing deadline, which was set by the Court, expired on June 18, 2020. *See* ECF No. 2097 ¶¶ 11, 19 (noting that "any proof of claim information submitted now would be several months late and properly treated as untimely"). The official claims website was updated that same day to state the following: "The deadline to file a claim has passed. All claims must have been submitted online or postmarked by June 18, 2020." *See* www.autopartsclass.com.

On the day the claims-filing deadline lapsed, FRS filed a Motion to Intervene for the express purpose of obtaining an order from the Court permitting FRS to submit and recover on claims in this litigation based on subrogation rights, and to allow "Insurers . . . to complete the documentation of their claims" ***after*** the now-passed claims-filing deadline. ECF No. 2060 at 19. EPPs opposed that motion. ECF No. 2066. On November 11, 2020, EPPs filed a declaration of the claims administrator in opposition to FRS' Untimely Motion to Intervene. ECF No. 2097. That declaration noted that "FRS has not submitted any proof of claims information on behalf of any insurance company in support of any subrogation claim." *Id.* ¶ 19. In his declaration, the claims administrator reiterated that FRS could not "supplement" any of its information to add new vehicles because "any proof of claim

information submitted now would be several months late and properly treated as untimely." *Id.* Following a hearing, on November 17, 2020, the Court denied FRS' motion to intervene as untimely. ECF No. 2101.

Following the adverse decision, FRS appealed the Court's decision. ECF No. 2105. Curiously, shortly after filing its notice of appeal, FRS filed a motion in the Court of Appeals for the Sixth Circuit seeking to hold the appeal in abeyance pending the anticipated denial of its so-called "supplemental" subrogation claims— claims FRS still has not submitted to the claims administrator. Langham Decl. ¶ 20. EPPs opposed that motion and the Sixth Circuit denied the request.

During the pendency of the motions discussed above, at the end of 2020 and into early 2021, FRS attempted to submit thousands of untimely vehicle claims to the claims administrator. Pinkerton Decl. ¶ 38. First, on December 22, 2020, FRS sent the claims administrator a link to an FTP site with claims data for seven non-insurance company claimants. *Id.* ¶ 39. Second, on January 4, 2021, FRS sent the claims administrator a link to an FTP site with claims data for fourteen non-insurance company claimants. *Id.* ¶ 40. Although these so-called placeholder registrations had been filed prior to the claims-filing deadline for all twenty-one claimants for whom "supplements" were received, nineteen of those original registrations had claimed a single vehicle (one of the three vehicles claimed for virtually all claimants, which is clearly fraudulent) and two of the original

11

registrations failed to provide any vehicle information at all. Pinkerton Decl. ¶ 44.
Accordingly, the late-provided vehicle claims dwarfed the timely (and seemingly,
fraudulent) ones. *See id.* Third, on January 7, 2021, FRS sent the claims
administrator an email with a "claim addendum" for the insurance company WR
Berkley. *Id.* ¶ 43. But besides receipt of this "addendum," Epiq had never received
any substantive submission for this entity. *Id.* All of these late submissions attempted
to identify previously unidentified vehicles and go well beyond correcting errors or
deficiencies. *Id.* ¶ 45.

In response to receipt of some of this late information, a Project Coordinator
from Epiq responded to FRS and noted that "we are no longer accepting new data
for the settlements" and said that although Epiq would "file the records submitted"
"any new data will be considered untimely." ECF No. 2114-5. On January 8, 2021,
counsel for FRS emailed class counsel and claimed (incorrectly) that FRS learned
"for the first time on Wednesday, January 6 that 'any data submitted after the claims
deadline will be considered untimely.'" ECF No. 2114-10. Class counsel responded
by naming all of the instances in which FRS was put on notice that late claims or so-
called "placeholder" claims would not be accepted. *Id.* Contrary to FRS' revisionist
recitation of the facts, EPP class counsel ***did not*** note that FRS could "'submit
additional [vehicle] information' if they 'previously submitted vehicle data and have
some deficiency in the information or documentation that was submitted.'" ECF No.

2114 at 18. Instead class counsel said that only deficiencies in vehicle information for vehicles that were timely identified could be corrected:

> Claimants who have previously submitted vehicle data and have some deficiency in the information or documentation that was submitted for those claims, may submit additional information to correct the deficiency. However, claimants who merely registered their name with no vehicle information, and did not identify the requisite vehicle information by the June 18, 2020 claims deadline have not timely submitted a valid claim, and late-filed claims will not be accepted.

ECF No. 2114-10.

Around the same time, EPPs learned that FRS had been sending out misleading solicitations telling would-be claimants, including insurance companies, that "[l]ate claims are still being accepted in the Automobile /Automotive Parts Class Action Settlment." Langham Decl. ¶ 16, Exs. B & C. That was entirely false and contrary to all the information the claims administrator had provided FRS. Class counsel sent a cease and desist letter regarding this issue on January 12, 2021. *Id*.

That same day, the parties held a meet and confer. Consistent with all of EPPs prior filings and representations, class counsel once again stated that so-called "placeholder" claims would not be accepted. Langham Decl. ¶ 19. On February 17, 2021, FRS then proceeded to file this improper motion. ECF No. 2114.

## ARGUMENT

## I.   FRS' Motion is Procedurally Improper.

FRS' motion is already foreclosed by this Court's previous denial of its motion

to intervene.[2]

In addition, to the degree FRS is seeking permission to file late claims on behalf of non-insurance clients, this motion is likewise an improper vehicle for that request. FRS has never before sought this type of relief and has never attempted to intervene on that basis. Once again, intervention is the appropriate mechanism through which a non-party can attempt to seek such relief. FRS has failed to pursue that avenue and any attempt to do so now would be untimely.

### A.   This Court Has No Jurisdiction to Hear this Motion

Worse yet, this Court has no jurisdiction to even entertain FRS' motion. "As a general rule, the district court loses jurisdiction over an action once a party files a notice of appeal, and jurisdiction transfers to the appellate court." *Lewis v. Alexander*, 987 F.2d 392, 394 (6th Cir. 1993); *see also Jennings v. Fuller*, 659 F. App'x 867, 868 (6th Cir. 2016). Here, FRS filed its notice of appeal on the denial of its motion to intervene on December 16, 2020. ECF No. 2105. At that point, jurisdiction over FRS' request to intervene in order to compel the claims

---

[2] To the extent FRS is relying on the fact that this is a class action, such an argument similarly fails. As an initial matter, it is undisputed that FRS, and the alleged subrogation insurers it represents, are not settlement class members. Moreover, while Rule 23 permits class members to object to the fairness and reasonableness of a proposed settlement, it does not otherwise grant putative class members wide-ranging party rights to file motions and take other actions before the district court. *See* Fed. R. Civ. P. 23 (permitting objecting class members only the right to object to a proposed settlement).

administrator to accept FRS' late-filed claims transferred to the Sixth Circuit. Accordingly, this Court cannot now entertain non-party FRS' improper motion without invading the jurisdiction of the Court of Appeals.

## II.   Even if the Merits Are Considered, FRS Is Still Not Entitled to Relief

Even if this Court could consider FRS' improper motion, FRS is still not entitled to relief. By way of its motion, FRS seeks an order from the Court that would direct the claims administrator to accept belated "[new] vehicle data" from FRS, at least on behalf of companies for whom FRS identified the claimant name prior to June 18, 2020.[3] ECF No. 2114 at 18. Creatively recasting the past, FRS argues that— despite the consistent position taken by the claims administrator and class counsel over years of litigating this class action—the Court should force the claims administrator to accept these late claims because FRS ignored the ample notice informing it that such late claims and "placeholder" claims would not be accepted. *See id.* at 10-15. FRS' argument boils down to an untrue and unsubstantiated accusation that class counsel breached some sort of fiduciary duty owed to non-class member FRS by failing to futilely repeat that FRS' late claim information for wholly new vehicles would not be accepted. Not only is no fiduciary duty owed to FRS but even assuming *arguendo* one was, class counsel in no way breached any duty, and

---

[3] Notably, this request extends even beyond FRS' request for relief in its motion to intervene, which appeared to be limited to a request to consider late-filed information relating only to subrogation claims.

estoppel is not warranted. *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 293 (6th Cir. 1983) (noting that FRS bears the burden of proving inadequate representation by class counsel).

### A.     FRS' Improperly Attempts to Submit Late Claims

At the outset, it is important to acknowledge that FRS' argument is based entirely on chicanery. In an attempt to dodge a determination that FRS' late submissions amount to late claims, FRS contends that it merely wishes to "supplement[] vehicle data . . . in support of timely filed claim forms." ECF No. 2114 at ii. This is blatantly false.

What FRS is really seeking to do is to sneak in thousands of new vehicle claims under the cloak of timely filed "claim forms." But FRS overlooks that each claim form it seeks to "supplement" is invalid as not complying with the Court's orders and thus are not "claims" themselves. As a result, there is no "claim" to "supplement." And the "supplementation" FRS seeks, is really a dump of entirely late claims. Pinkerton Decl. ¶¶ 31, 34, 36. The data demonstrates the reality.

First, FRS filed claim forms on behalf of only seven insurance companies prior to the deadline. Pinkerton Decl. ¶ 24. Five claims submitted for insurance companies identified purchases or leases of vehicles made by the insurance companies for their own account; nothing indicated that the claims information contained any assertion of subrogation rights, which is the basis for the claims FRS

16

now seeks to make. *Id.* ¶ 24; *see also* ECF No. 2114 (noting that FRS seeks to file claims on behalf of insurance companies "at least in part, on the basis of equitable subrogation"). FRS still has not attempted to provide any subrogation claims to the claims administrator and any purported "supplementation" for subrogation claims have no connection whatsoever to vehicle previously identified as purchases made by insurance companies for their own account. *See* Pinkerton Decl. ¶ 24.

In addition, it remains the case that, even if submitted and deemed timely, the subrogation claims would still be invalid. FRS did not claim that the insurance companies qualify as class members in their capacity as insurers or that any class definition included insurance companies that made insurance payments to class members for total loss vehicles. Irrespective of the claims' untimeliness, the claims themselves would be denied on the merits. FRS cannot demonstrate that subrogation claims qualify for payment. Under the Court's prior orders, no insurance company is entitled to a share in the settlements based upon payments made by the insurance company to a class member pursuant to the terms of an insurance policy. *Id.* at ¶ 22. Accordingly, even if granted the relief it seeks on the placeholder issue, FRS will not recover on subrogation claims.

Second, FRS filed pre-deadline claim forms on behalf of 303 other clients— filing one claim form for each claimant. Pinkerton Decl. ¶ 31. Fifty-eight provided only the name of the claimant and FRS' address. *Id.* They did not provide *any*

vehicle information whatsoever and are therefore null registrations that do not qualify as claims complying with the Court's notice. *Id.* Moreover, they contained no VIN numbers, no purchase data, no make/model information, and no supporting documentation. *Id.* The remaining 245 claims only provided non-compliant, basic information (e.g., no VIN numbers) for ***a single vehicle***, listing only make, model, model year, place of purchase, and date of purchase for that single vehicle. *Id.* ¶ 32. Suspiciously, 242 of the 245 single-vehicle claims identified one of three vehicles types with only slight variations in "Date of Purchase" and "Model Year." *Id.* ¶ 33. For example, FRS identified a "1996 Mercedes-Benz M-Class" as the single vehicle purchased by 147 different claimants; a "1995 Chevrolet Camaro" as the vehicle purchased by 83 different claimants; and a "1990 Mazda MPV" as the vehicle purchased by 12 different claimants. *Id.* ¶ 33. This was a red-flag for the claims administrator, as it appears highly unlikely that the claimants would have all purchased these same vehicles.

All 242 claims listed a Florida purchase place for the vehicle. *Id.* Florida is conveniently the home of FRS. This was odd since the vast majority of the companies with ownership of the claim are not based in Florida and are not known to have a Florida location. *Id.* ¶ 34. This was also a red-flag for the claims administrator who views the purchase of a vehicle far from the location of use to be a badge of fraud. *Id.* Worse yet, the purchase date for at least 22 of the vehicles

predated the formation of the claimant company, calling into question the legitimacy of the claims. *Id.* ¶ 35. And *all* vehicles were allegedly purchased on January 1st of the years in question. *Id.* ¶ 33. Based on the information provided, Epiq determined that the submissions with the same three sets of recycled vehicle information did not qualify as compliant claims because they either contained insufficient information or contained factually suspicious information that facially undermined the claim. *Id.* ¶ 36. FRS elected to provide information that was a nullity at best and fraudulent at worst when it submitted its original claims. Accordingly, FRS simply does not have valid claims that it can "supplement."

Third, FRS admits that its self-described "supplementation" would dwarf its original claims. *See* ECF No. 2060 at 2. On December 22, 2020, FRS sent Epiq a link to an FTP site with claims data for non-insurance company claimants. Pinkerton Decl. ¶ 39. Similarly, on January 4, 2021, FRS sent Epiq a link to an FTP site with claims data for more non-insurance company claimants. *Id.* ¶ 40. In total, FRS has provided brand new claims data for 12,204 vehicles when it only identified 19 total cars for those same claimants prior to the June 18, 2020 claim-submission deadline.[4] *Id.* ¶ 41. Notably, none of the tardy "supplements" for the 21 claimants includes the vehicle initially listed on the "placeholder" submission for the claimant. *Id.*

---

[4] The actual number is even higher since one of the spreadsheets sent by FRS could not be opened by the claims administrator. Pinkerton Decl. ¶ 32 n.2.

And that is only the tip of the iceberg. This does not include the many thousands more vehicles that FRS says it will submit if the claims administrator is forced to accept additional late claims, including subrogation claims. Such late submissions are improper.

**B.      This Court's Prior Orders Do Not Allow FRS to Submit Late Claims, Particularly Claims Based on a Subrogation Theory**

FRS next contorts the plan of allocation in order to incorrectly contend that the claims administrator is somehow obligated to accept vehicle data submitted after the claims-filing deadline. ECF No. 2114 at 15-16. The plain text of the plan of allocation undermines rather than supports FRS' position. As noted by FRS, the Court-approved plan of allocation expressly defines the term "Authorized Claimants" as "members of one or more of the Automotive Parts Settlement Classes." Case 2:13-cv-01303, ECF No. 147-2; *see also* ECF No. 2114 at 15 (noting that Authorized Claimants are "members of the settlement classes"). Here, both FRS and several of its clients, namely insurance companies, do not qualify as "Authorized Claimants" because insurers seeking to recover payments from insureds for vehicles declared a total loss are not included within any definition of the settlement classes. *See* Case 2:12-md-02311, ECF No. 2097 at 98.

FRS does not argue that it or the insurers for whom it seeks to file subrogation claims are settlement class members. Rather, FRS claims the insurers made "payments to their insureds for vehicles that were deemed a total loss." ECF No.

2114 at 3. That is exactly why FRS sought intervention in the first place—to advocate their untenable position that subrogation claims for total loss vehicles should receive recovery from the settlement classes—a position this Court rejected. Put simply, this Court's order denying intervention finally resolved and rejected FRS' claimed entitlement to recover on the subrogation theory. With the subrogation theory foreclosed, there is no need to permit untimely claims.

FRS' additional argument that the filing of a timely claim form, even one identifying a single (seemingly fraudulent) vehicle (or none), satisfies the timeliness standard under the Court's prior orders is built on sand. ECF No. 2114 at 15-16. FRS' position is illogical: it would give any registration claimant carte blanche to add more vehicle claims in perpetuity, resulting in a never-ending claims administration process that would delay claim payments indefinitely. But FRS' position is also completely unsupported by the Court's orders. FRS is correct that an Authorized Claimant is one who "submits a timely ***and valid*** Claim Form and whose claims are allowed by the Court." *Id.* at 16 (emphasis added). Yet it overlooks that the claim form itself required the identification of the specific vehicle being claimed, including the make, model, year, VIN, and place of purchase. *See* Pinkerton Decl. ¶ 11. This was required by the plan of allocation. *Id.* Any vehicles claimed after the deadline are properly considered untimely because they were not included in any timely filed claim form in the first place. *Id.*

21

FRS cannot feign ignorance that late claims would not be accepted. The Further Revised plan of allocation clearly stated that "[a]ll Class Members who fail to complete and submit a valid and timely Claim Form shall be barred from participating in distributions from the Net Settlement Funds." Pinkerton Decl. ¶ 14. The Court-approved Round 4 notice highlighted the June 18, 2020 deadline to submit a claim form and stated: "You need to submit satisfactory evidence (e.g. purchase records) for vehicles you purchased or leased . . . ." Once the claims deadline passed, the official website was updated to read: "The deadline to file a claim has passed. All claims must have been submitted online or postmarked by June 18, 2020." *See* www.autopartsclass.com; *see also* Langham Decl. ¶ 12.

## C. Estoppel Is Not Warranted Since FRS Has Long Been On Notice that Late Claims Would Not Be Accepted and that "Placeholder" Claims Could Not Be Used

Building upon its false factual narrative, FRS argues that "class counsel [is] equitably estopped form now asserting that such vehicle data is untimely." ECF No. 2114 at 10. But FRS does not even cite to the correct legal standard for estoppel, let alone establish facts sufficient to satisfy the requisite standard. *Acuity Ins. Co. v. Higdon's Sheet Metal & Supply Co., Inc.*, No. 3:06–CV–162–H, 2007 WL 1034986, at *6 (W.D. Ky. Apr. 3, 2007) (noting that, to obtain estoppel, an entity must show "conduct, including acts, language and silence, amounting to a representation of facts"). To manufacture support for its estoppel theory, FRS incorrectly suggests that

22

it was led to believe until this year that it would be able to "supplement" previously filed "placeholder" claims after the deadline by identifying a spate of new vehicles. But this is false. *See* Langham Decl. ¶ 5.

More than two years ago, on November 14, 2018, FRS sought permission from EPPs to file "placeholder" claims for its insurance company clients. ECF No. 2060-5. EPPs flatly rejected that request and instructed FRS that it must identify the claimed vehicles before the claim submission deadline. ECF No. 2060-2 at ¶ 6. Despite later making noise about the subrogation issue, FRS has not—until now— explicitly asked the Court to allow it to submit placeholder claims or to allow it to identify claimed vehicles (especially for non-insurance companies) after the long-elapsed claims-filing deadline.

Each time FRS inquired about the effect of the claims-filing deadline, it was told that information submitted after June 18, 2020, would "be marked late." ECF No. 2114-6. And, when FRS ultimately submitted late claims data, it was again informed that where claimants "identified vehicles for the first time after the claims deadline expired, the submission of such claims are late and will not be allowed." ECF No. 2114-5; *see also* ECF No. 2114-4 (noting that "any data submitted after the claims deadline will be considered untimley" and that the administrator is "no longer accepting new data for the settlements").

Also, contrary to the allegations made by FRS, class counsel and the claims administrator have always taken the position that any vehicle data submitted after June 18, 2020, is late and would be treated as untimely. ECF No. 2097 ¶ 19. Class counsel never agreed that FRS could submit "placeholder" claims and did not state that the claims administrator would "accept supplemental vehicle data for all timely filed claim forms unless the form [was] deemed a 'placeholder.'" ECF No. 2114 at 9; *see generally* Langham Decl. Class counsel has taken this same position with all class members, not just FRS. It is further the case that placeholder claims are "not routinely allowed in the claims administration process." Pinkerton Decl. ¶ 47 (noting only one instance in the claims administrator's long career where such claims have been accepted). Nor is there any merit to FRS' contention that class counsel "should have known that their silence would induce FRS and the Insurers to believe they could proceed with their propsoed course of action." ECF No. 2114 at 13. EPPs repeatedly told FRS that placeholder claims would not be allowed and that late-submitted data for an otherwise unsupported initial claim would be rejected. In light of the facts, FRS also cannot have justifiably relied on any silence from class counsel—a required element of estoppel.

FRS made the unilateral decision to submit invalid "placeholder" claims. That decision was a function of the choice it made to avoid incurring expenses on its

part.[5] FRS' failure to properly submit its request for a ruling on the asserted subrogation as well as on its ability to file placeholder claims is entirely its own fault. It alone should bear the consequences of its decision to submit incomplete claims prior to the June 18, 2020 deadline.

### D.      Class Counsel Has Fulfilled Its Fiduciary Duties

Adding insult to injury, FRS misprepresents both the facts and the law when it suggests that class counsel is misbehaving by rejecting late vehicle claims filed on behalf of non-class members. ECF No. 2114 at 11. That is far from the truth. First, FRS implies for the first time that class counsel has breached some "fiduciary duty to FRS and the Insurers as subrogees as class members" allegedly by failing to repeatedly inform FRS that vehicle data supplied after the claims-filing deadline would not be accepted. *Id.* But class counsel *did* provide notice that late-supplied information would not be accepted and FRS did not heed those warnings. FRS is also wrong that class counsel owned it a fidiciary duty. The duty owed by class counsel is to the class as a whole. *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 985-991 (11th Cir. 2020) (noting that class counsel owes a fiduciary duty to the class as a whole not to the individual class members or the class plaintiff).

_____

[5] FRS does not even contend that its tardiness was the result of excusable neglect so it cannot make that claim now. That said, under the facts here, FRS would be unable to establish excusable neglect. *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 395 (1993).

The cases FRS cites to in its brief are inopposite and do not state otherwise. ECF No. 2114 at 10-11. In any event, as stated above, neither FRS nor subrogree insurance claimants are class members, which FRS has recognized. Thus, class counsel could not have violated a fiduciary duty to entities that even FRS concedes are not class members. The class is limited to persons who purchased or leased vehicles for themselves (not vehicles they insured). FRS' reliance on case law that allows *class members* to intervene in a class action where their rights are not adequately represented is also out of place.

## III.   Allowing FRS to Submit Late Claims Would Delay Settlement Distribution and Severely Prejudice the Class

As previously recognized by this Court, granting FRS its requested relief would undoubtedly delay this action, delay the settlement distribution, and severely prejudice class members who timely filed claims. *See* ECF No. 2101 at 7 (noting that "claims processing has been ongoing, and completion would be delayed if the Court were to allow potentially thousands of claims to be submitted after the deadline"). FRS' renewed request, made even later in this claims administration process, would cause even more mischeif than that which this Court previously sought to avoid. EPPs and Defendants have vigorously litigated these actions, briefed multiple motions and responses, attended lengthy negotiations and mediations, negotiated complex settlement agreements, negotiated extensive cooperation terms, obtained multiple preliminary approvals, administered costly

nationwide class notice, briefed extensive motions on final approval, and defeated a motion to intervene filed by an insurance company with near identical claims.

Despite the history of this action, and clear instructions from the Court and claims administrator, FRS has never identified any of the vehicles or class members for which its alleged subrogation claims would apply and it has ***still not*** submitted any detailed vehicle information for the vast majority of companies it claims to represent. It has also given zero estimate regarding how long—after 9-long months of delay—it would take to submit this information. Waiting for FRS to submit this information is not even the end of the process. Once received, the claims administrator would need to compare the claims with the claims submitted by all class members to avoid duplicate payments. This could require contacting the class members to obtain additional information about their vehicles, and informing them of their right to challenge duplicate claims and/or the insurance company's claim of subrogation. The claims administrator estimates that this could delay the distribution of funds by up to one year. This would unquestionably prejudice all class members as it would hold-up claims procesing and substantially delay the ultimate distribution of settlement funds. Worse yet, it would require the class members who timely submitted claims to bear the additional expense of addressing the late-filed claims.

## CONCLUSION

For the above reasons, this Court should deny FRS' improper motion.

Dated:   March 3, 2021

Respectfully submitted,

SUSMAN GODFREY L.L.P.

*/s/ Jenna G. Farleigh*
Terrell W. Oxford
Chanler A. Langham
SUSMAN GODFREY LLP
1000 Louisiana Street, 5100
Houston, Texas 77002
Telephone: (713) 651-9366
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Marc M. Seltzer
Steven G. Sklaver
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Steven M. Shepard
1301 Avenue of the Americas, Floor 32
New York, New York 10019
Telephone: (212) 729-2010
sshepard@susmangodfrey.com

Frank C. Damrell, Jr.
Adam J. Zapala
Elizabeth Castillo
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
fdamrell@cpmlegal.com

azapala@cmplegal.com
ecastillo@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
399 Park Avenue, Suite 3600
New York, New York 10022
Telephone: (212) 980-7400
hsalzman@rkmc.com
bpersky@rkmc.com
wreiss@rkmc.com

***Interim Co-Lead Class Counsel for End-Payor Plaintiffs***

E. Powell Miller (P39487)
Devon P. Allard (P71712)
THE MILLER LAW FIRM
950 W. University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com

***Interim Liaison Counsel for End-Payor Plaintiffs***

Don Barrett
David McMullan
Brian Herrington
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Yifei (Evelyn) Li

CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, D.C. 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Shawn M. Raiter
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, Minnesota 55101
Telephone: (651) 312-6500
sraiter@larsonking.com

***Interim Co-Lead Class Counsel for Auto-
Dealer Plaintiffs***

Gerard V. Mantese (P34424)
David Hansma (P71056)
Brendan Frey (P70893)
MANTESE HONIGMAN ROSSMAN
AND WILLIAMSON, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

***Interim Liaison Counsel for Auto Dealer
Plaintiffs***

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that on March 3, 2021, an in accordance with Court's Order dated November 19, 2014, a copy of the foregoing *Opposition* has been submitted to chambers via U.S. mail.

*/s/ Jenna G. Farleigh*
Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Jenna G. Farleigh*
Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
