UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Sean F. Cox |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | : : : : : : : : : : : | DECLARATION OF CHANLER LANGHAM IN SUPPORT OF END-PAYOR PLAINTIFFS' OPPOSITION TO FINANCIAL RECOVERY SERVICES, LLC'S MOTION TO COMPEL ACCEPTANCE AND PROCESSING OF VEHICLE DATA |

**DECLARATION OF CHANLER LANGHAM IN OPPOSITION TO FINANCIAL RECOVERY SERVICES, LLC'S MOTION TO COMPEL ACCEPTANCE AND PROCESSING OF VEHICLE DATA**

I, Chanler Langham, hereby declare the following in accordance with the provisions of 28 U.S.C. § 1746:

1. I am a partner at the law firm of Susman Godfrey L.L.P., Interim Co-Lead Counsel for the End-Payor Plaintiff Classes. I submit this declaration in support of End-Payor Plaintiffs' Opposition to Financial Recovery Services, LLC's Motion to Compel Acceptance and Processing of Vehicle Data.

1

2. The following facts are based on my personal knowledge and knowledge acquired in my role as Co-Lead Class Counsel in this litigation. If called upon as a witness, I could and would testify competently to them.

3. I have also reviewed the Declarations of Jefferey N. Leibell and Matthew Huppert filed in Support of Financial Recovery Services, LLC's Emergency Motion to Compel Acceptance and Processing of Vehicle Data and take issue with their characterization of certain facts.

4. EPP Class Counsel's first contact with Financial Recovery Services, Inc. ("FRS") was in November 2018. At that time, the district court had already issued an order that automobile insurers lacked antitrust standing to recover payments made to insureds for vehicles declared a total loss. *See GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 829-30 (E.D. Mich. 2018). The Round 1 and Round 2 settlements had also already been approved. *See* Case 2:12-md-02311, Dkt. 2101 at p. 1.

5. On November 14, 2018, FRS, who is a third-party claims-filing company, reached out to Class Counsel by email contending that it could recover payments made to insured class members for vehicles declared a total loss under a subrogation theory. *Id.* at p. 2 (citing Dkt. 2060-5). FRS specifically sought a method for submitting document of the insured's claims. *Id.* A meet and confer was held between FRS and Class Counsel by telephone on January 24, 2019. Dkt. 2060-2 ¶¶

5-6. During that call, Class Counsel suggested that FRS file claims and then appeal rejections. *Id.* (citing Dkt. 2060-2). Class Counsel also noted that it opposed FRS' subrogation theory in part because FRS did not contend that either it or its insurance company clients who wanted to recover on a subrogation theory qualified as Class Members under the approved settlements. FRS explicitly sought permission to file "placeholder" claims for its insurance company clients with the intention of supplementing them with specific vehicle information after the claims-filing deadline. Class Counsel flatly rejected FRS' request to file these null claims during that discussion. I believe the Declaration of Jefferey N. Leibell filed in support of FRS's Motion to Intervene, Dkt. 2060-2 ¶¶ 5-6, admits these facts.

6. Class Counsel did not hear from FRS again until October 17, 2019. Dkt. 2101. At this point in time, FRS sent class counsel a draft letter that FRS claimed it would send to the Court. Dkt. 2060, Ex. E. On November 2, 2019, class counsel responded in writing and unequivocally informed FRS once again that its insurance company clients "have no rights as class members or as subrogees of class members," and extensively cited authority supporting that position. Dkt. 2060, Ex. F.

7. Following this exchange of letters, FRS inquired about a briefing schedule. Dkt. 2060, Ex. G. FRS and class counsel conferred on November 26, 2019, and generally agreed on a briefing schedule regarding the subrogation issue. But

FRS never sought approval to submit any brief to the Court. FRS did not seek leave to intervene. And FRS did not even attempt to file its brief on the Court's docket.

8. Instead, on December 13, 2019, FRS simply sent a letter to the Court "by Federal Express." Dkt. 2060, Ex. B. Even then, FRS did not seek intervention, did not seek permission to submit placeholder claims, and did not request permission to identify claimed vehicles or the information substantiating claims based on amounts paid to any insureds after the claim submission deadline. Dkt. 2060, Ex. A.

9. I was responsible for preparing a response to FRS' letter, which EPPs filed on the main docket, and noted that FRS had failed to file its letter on the Court's docket. Dkt. 2034. FRS sent a reply to the Court on January 30, 2020, again "by Federal express," but still did not file the letter with the Court and did not move to intervene. Dkt. 2060, Ex. B.

10. EPPs did not hear from FRS again until March 9, 2020, when FRS sent the claims administrator a letter stating that FRS would not be able to comply with the then-in-effect claims administration deadline "because identifying, collecting, and marshaling the Total Loss Vehicle data necessary to update each Auto Insurer's proof of claim will be a considerable undertaking." Dkt. 2060-10. It then went on to state, not ask, that FRS would "supplement[] each Auto Insurer's proof of claim" after the claims-filing deadline even though that procedure had previously been rejected by EPPs. *Id.*

4

Class Counsel did not further respond to FRS because Class Counsel did not need to respond. The Plan of Allocation already informed FRS that "All Class Members who fail to complete and submit a valid and timely Claim Form shall be barred from participating in distributions from the Net Settlement Funds (unless otherwise ordered by the Court)." *See* 2:12-cv-403, Dkt. 301-2. But FRS never moved the Court for relief, EPPs had already made their position on "placeholder" claims clear to FRS, and FRS' legal questions regarding the validity of subrogation claims could not be answered as part of the claims administration process. FRS never followed up on its letter to the claims administrator and Class Counsel did not hear from FRS until days before the final deadline to submit claims to participate in the EPP Settlements—which had been extended to June 18, 2020.

11. On June 15, 2020, FRS' counsel, Aaron Panner, called Class Counsel asking the following questions: (1) whether EPPs class counsel would oppose a motion to intervene by FRS; (2) whether EPP class counsel would object to FRS submitting so-called "place holder" claims; and (3) whether there was liaison counsel for the Defendants who FRS could contact about the intervention issue. I responded to Mr. Panner that same day and stated that EPPs did oppose FRS' proposed motion to intervene, that EPPs objected to the use of so-called "placeholder" claims, and that EPPs were not aware of any liaison counsel. A true and correct copy of my response to Mr. Panner is attached at Exhibit A.

5

12. The claims-filing deadline passed on June 18, 2020. Class Counsel made sure that the claims administrator updated the official claims website that same day to state: "The deadline to file a claim has passed. All claims must have been submitted online or postmarked by June 18, 2020." *See* www.autopartsclass.com.

13. The same day the claims-filing deadline lapsed, FRS filed a Motion to Intervene for the express purpose of obtaining an order from the Court permitting FRS to submit and recover on claims in this litigation based on subrogation rights as well as to allow "Insurers . . . to complete the documentation of their claims" ***after*** the now-passed claims-filing deadline. Dkt. 2060, p. 19. EPPs opposed that motion. Dkt. 2066. On November 11, 2020, EPPs filed a declaration of the claims administrator in opposition to FRS' Untimely Motion to Intervene. Dkt. 2097. The Court denied FRS' motion to intervene as untimely. Dkt. 2101.

14. FRS appealed the district court's denial of its Motion to Intervene. Dkt. 2105. Shortly after that, FRS filed a motion in the Sixth Circuit Court of Appeals seeking to hold the appeal in abeyance pending the anticipated denial of its so-called "supplemental" subrogation claims—claims FRS has still not submitted.

15. I prepared EPPs opposition to that motion, which was denied by the Sixth Circuit.

16. In January 2021, EPPs learned that FRS had been sending out solicitations misleadingly telling would-be claimants, including insurance

6

companies, that "[l]ate claims are still beign accepted in the Automobile /Automotive Parts Class Action Settlment." A true and corect copy of that solicitation is attached at Exhibit B. Class Counsel prepared a cease and desist letter that it sent to FRS on January 12, 2021. A true and corerect copy of that letter is attached at Exhibit C.

17. Around the same time, FRS' counsel, Matthew Huppert, reached out to me by email and incorrectly stated that FRS was notified "for the first time on Wednesday, January 6 that 'any data submitted after the claims deadline will be considered untimely.'" Dkt. 2114-10. I responded and informed Mr. Huppert as follows:

> Claimants who have previously submitted vehicle data and have some deficiency in the information or documentation that was submitted for those claims, may submit additional information to correct the deficiency. However, claimants who merely registered their name with no vehicle information, and did not identify the requisite vehicle information by the June 18, 2020 claims deadline have not timely submitted a valid claim, and late-filed claims will not be accepted.

18. In his declaration, Mr. Huppert incorrectly states that I informed FRS that they could "'submit additional [vehicle] information' if they 'previously submitted vehicle data and have some deficiency in the information or documentation that was submitted.'" Dkt. 2114 ¶ 18. That is not true.

19. On January 12, 2021, Jenna Farleigh and I had a call with FRS' counsel Matthew Huppert and Daniel Severson. Consistent with all of EPPs prior filings and

7

messaging, Class Counsel once again stated on that call that so-called "placeholder" claims would not be accepted.'

20. Since FRS continues to raise this issue, Class Counsel has performed an in-depth analysis of the claims that FRS filed both before and after the claims-filing deadline. It has discovered the following about the claims submitted by FRS before the deadline:

- FRS submitted claims for five insurance companies before the June 18, 2020 deadline. Those were: AIG, Utica Mutual Insurance Company, Mapfre USA Corporation, Mercury Insurance Services, and Selective Insurance. The claims information submitted for these five insurance companies were for purchases or leases of vehicles made for the company's own account. Nothing indicates that the claims information submitted for these five insurance companies contains any assertion of subrogation rights.

- FRS identified the claimant names of 303 additional companies before the June 18, 2020 deadline. For all of these 303 claimants, FRS provided its own Florida-based address on the claim form. With the exception of a handful of companies for which it included a read only .pdf copy of its representation agreement, FRS did not provide any address associated with the company for whom it purported to file the claim. Class Counsel has run an internet search for each of the named companies. Class Counsel was only been able to

confirm that 13 of these claimants are headquartered in Florida. The vast majority do not even appear to have any location in Florida.

- o Of the 303 additional companies that FRS identified, FRS submitted no information whatsoever identifying any vehicle or part for 58 companies. The claims contained no VIN numbers, no purchase data, no make/model information, and no supporting documentation. These claims are facially unsupported submissions and do not qualify as claims complying with the Court's notice.

- o For the remaining 245 companies, FRS identified only a single vehicle and included only the following information for that single car: make, model, model year, place of purchase, and date of purchase. No VIN numbers were provided for any of these claims. All but three of these claims (242 of them) were universally comprised of one of the following three sets of information, with only slight variations in "Date of Purchase" and "Model Year":

| Make | Model | Model Year | Place of Purchase | Date of Purchase |
|---|---|---|---|---|
| Mercedes-Benz | M-Class | 1996 | Florida | 1/1/1995 |
| Chevrolet | Camaro | 1995 | Florida | 1/1/1994 or 1/1/1995 |
| Mazda | MPV | 1990 | Florida | 1/1/1990, 6/1/1990, or 1/1/1995 |

>   For example, FRS identified a "1996 Mercedes-Benz M-Class" as the single vehicle purchased by 147 different claimants; a "1995 Chevrolet Camaro" as the vehicle purchased by 83 different claimants; and a "1990 Mazda MPV" as the vehicle purchased by 12 different claimants. In addition, at least 22 companies were not even in existence during the year the single vehicle associated with their claim was purchased. These inconsistencies raised red flags suggestive of fraud.

21. Regarding vehile information that FRS has submitted after the claims-submission deadline, Class Counsel has discovered the following:

- FRS has attempted to provide untimely or new vehicle information in the form of twenty-one different "supplements" made on behalf of 21 different claimants. In these so-called supplements, FRS identified (for the very first time) at least 12,204 additional vehicles. Prior to the deadline it had only identified 19 (likely illegitimate) vehicles on behalf of these same 21 claimants. Indeed, a review of the "supplement" information indicates that FRS never submitted in vehicle identification numbers (VINs) to support alleged purchases of the vehicles FRS originally identified.

- FRS has also attempted to file a late "claim addendum" for insurance company WR Berkley. No vehicle or parts purchase data had previously been claimed for that insurance company.

22. FRS is trying to add new vehicle claims through "placeholders" that it has long known would not be accepted by Class Counsel. FRS' failure to submit timely claims data is its own fault.

23. The claims administration process has been underway since June 18, 2020. Receiving late claims and late vehicle information after the claims-submission deadline is problematic and delays distribution of settlement funds.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 3rd day of March 2021, in Houston, Texas.

*/s/ Chanler Langham*
Chanler Langham

**CERTIFICATE OF SERVICE**

     I hereby certify that on March 3, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

                                      */s/ Jenna G. Farleigh*
                                      Jenna G. Farleigh
                                      **SUSMAN GODFREY L.L.P.**