UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | **Master File No. 12-md-02311**<br>**Honorable Sean F. Cox** |
| THIS DOCUMENT RELATES TO:<br>ALL END-PAYOR ACTIONS | **REPLY MEMORANDUM IN SUPPORT OF ACCEPTANCE OF POST-DEADLINE CLAIM SUBMISSIONS** |

## **STATEMENT OF THE ISSUE PRESENTED**

1. Whether post-deadline submission of vehicle information—for class members who submitted timely claim forms—should be processed and accepted where claimants are valid members of the settlement class, when even true late claims have already been approved in other parts of this MDL, and are routinely approved in other settlements, and where approval of such submissions would neither delay distribution nor prejudice the class:

    **Answer:** Yes.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*In re Wire Harness Cases*, No. 12-00101, ECF Nos. 566-1, 570 (E.D. Mich. 2018)

*In re Occupant Safety Sys. Cases*, No. 12-0601, ECF Nos. 144, 145 (E.D. Mich. 2017)

*In re Lithium-Ion Batteries Antitrust Litig.*, No. 13-02420, ECF No. 2681 (N.D. Cal. 2020)

# **TABLE OF CONTENTS**

Page

STATEMENT OF THE ISSUE PRESENTED ............................................................................... i
CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................................................. ii
    INTRODUCTION ................................................................................................................ 1
    ARGUMENT ........................................................................................................................ 2
        I.     END-PAYOR PLAINTIFFS' POSITION WOULD DENY VALID CLASS MEMBERS THEIR RIGHTFUL SHARE OF THE SETTLEMENT AND CONTRADICTS EVEN TRUE LATE CLAIMS TREATMENT IN THIS MDL .................................................. 2
        II.    THE END-PAYOR PLAN OF ALLOCATION DOES NOT PROHIBIT ACCEPTANCE OF POST-DEADLINE SUBMISSIONS ....................................................................................... 4
        III.   ACCEPTANCE OF POST-DEADLINE SUBMISSIONS NEITHER DELAYS DISTRIBUTION OF FUNDS NOR PREJUDICES THE CLASS ....................................................................... 5

## **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
   689 F.Supp. 1250 (E.D.N.Y. 1998) ...................................................................................6

*In re Authentidate Holding Corp. Sec. Litig.*,
   No. 05 CIV. 5323 LTS, 2013, WL 324153 (S.D.N.Y. Jan. 25, 2013).....................................2

*In re Cendant Corp. Prides Litig.*,
   233 F.3d 188 (3d Cir. 2000)................................................................................................7

*In re Cendant Corp. Prides Litig.*,
   311 F.3d 298 (3d Cir. 2002)................................................................................................5

*In re Folding Carton Antitrust Litig.*,
   557 F.Supp. 1091 (N.D. Ill. 1983), *aff'd in part*, 744 F.2d 1252 (7th Cir. 1984).....................2

*In re Lithium-Ion Batteries Antitrust Litig.*,
   No. 4:13-md-02420-YGR, ECF No. 2681 (N.D. Cal. 2020)............................................ ii, 4, 6

*In re Occupant Safety Sys. Cases*,
   No. 12-0601, ECF Nos. 144, 145 (E.D. Mich. 2017) ........................................................ ii, 3

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   246 F.3d 315 (3d Cir. 2001)............................................................................................6, 7

*In re Polyurethane Foam Antitrust Litig.*,
   No. 10-2196, ECF Nos. 2086, 2095, 2172, 2184 (N.D. Ohio 2016) ........................................2

*In re Refrigerant Compressors Antitrust Litig.,*
   No. 09-md-2042-SFC (E.D. Mich. 2017) .........................................................................3, 5

*In re Urethane Antitrust Litig.*,
   No. 04-md-1616, 2008 WL 5215980 (D. Kan. Dec. 12, 2008) ..............................................6

*In re Wire Harness Cases*,
   No. 12-00101, ECF Nos. 566-1, 570 (E.D. Mich. 2018)..................................................... ii, 3

*Zients v. LaMorte*,
   459 F.2d 628 (2d Cir. 1972)................................................................................................5

**Other Authorities**

Manual for Complex Litig.
   (3d Ed. 1995) § 30.47 .......................................................................................................2

**INTRODUCTION**

This Reply is respectfully submitted by 25 members of the Auto Parts End-Payor class ("Claimants")[1] in response to End-Payor Plaintiffs' ("EPPs") position denying all post-deadline submissions as contained in EPPs' Memorandum in Opposition to Financial Recovery Services, LLC's ("FRS") Motion.[2] With the claims review process still in its early stages, Claimants urge the Court to instruct EPPs to process Claimants' post-deadline submissions and wait until the filing of a Motion for Distribution to recommend a more appropriate cut-off date for the consideration of true late claims, as is routine in class settlement proceedings and consistent with past processing of claims in this multidistrict litigation. Otherwise, these Claimants—undisputed class members— must forfeit their claims against Defendants without any compensation for the damages incurred.

Over the course of the nearly 30-year relevant time period in this matter, Claimants together purchased and leased more than 70,000 qualifying vehicles, incurring significant overcharges due to defendants' price-fixing conspiracy. Burton Decl. ¶ 2. Upon learning of their eligibility for this settlement, Claimants submitted timely claim forms. *Id.* ¶ 3. Claimants then worked diligently to compile data spanning multiple decades and tens of thousands of vehicles, and most amended their claims with complete vehicle information *within 1-2 weeks, or at most 10 weeks,* of the claim filing deadline. *Id.* ¶¶ 4-5. Claimants first became aware of EPPs' intention to reject all post-deadline

---

[1] *See* Declaration of Emma K. Burton (Burton Decl.).
[2] Prior to filing this Reply, and in an effort to avoid delaying these proceedings, Claimants requested a meet and confer with EPPs on February 24, 2021, and ultimately met with EPPs on March 5, 2021, followed by e-mailing EPPs the same day with pertinent case law on the acceptance of post-deadline submissions. Burton Decl. ¶¶8-9. Claimants and EPPs were unable to reach resolution, forcing Claimants to file here to preserve their claims in this action. *Id.* ¶10.

submissions from review of EPPs' correspondence to FRS appearing as exhibits to FRS' present Motion.[3] *Id.* ¶¶ 6-7.

EPPs refuse to accept post-deadline amendments to Claimants' timely claim forms, despite the fact that courts routinely accept *even true late claims* submitted months after the deadline—including in this very MDL. EPPs' position here is an inequitable outlier and Claimants respectfully urge the Court to reject it and order the acceptance of these post-deadline submissions.

## ARGUMENT

I. **END-PAYOR PLAINTIFFS' POSITION WOULD DENY VALID CLASS MEMBERS THEIR RIGHTFUL SHARE OF THE SETTLEMENT AND CONTRADICTS EVEN TRUE LATE CLAIMS TREATMENT IN THIS MDL**

Post-deadline submissions are routinely approved in complex class actions such as the present case. In fact, courts have recognized that so-called "late claims"—in which, unlike Claimants, *no filing of any kind* was made prior to the claim filing deadline—"should ordinarily be considered in the administration of a settlement." *In re Authentidate Holding Corp. Sec. Litig.*, No. 05 CIV. 5323 LTS, 2013, WL 324153, at *2 (S.D.N.Y. Jan. 25, 2013) (citing Manual for Complex Litig. (3d Ed. 1995) § 30.47). Indeed, as courts have held, "every opportunity should be afforded [to] class members . . . to come forward and collect their rightful share of the settlement." *In re Folding Carton Antitrust Litig.*, 557 F.Supp. 1091, 1104 (N.D. Ill. 1983), *aff'd in part*, 744 F.2d 1252 (7th Cir. 1984). It would be "unfair to prevent otherwise valid claims from participating in the distribution of . . . funds solely because they were submitted after the cut-off dates." *In re Polyurethane Foam Antitrust Litig.*, No. 10-2196, ECF Nos. 2086, 2095, 2172, 2184 (N.D. Ohio

---

[3] Claimants take no position here on subrogation or related issues raised in FRS' Motion or EPPs' Response. Claimants have nothing to do with the subrogation issue currently on appeal, nor is there any question that Claimants are squarely members of the settlement class. However, EPPs' position with respect to post-deadline submissions as articulated in its Response has implications for the class—well beyond FRS alone—including Claimants, and thereby necessitated this Reply.

2016) (plaintiffs' distribution motion approved by orders dated May 16, 2016 and Oct. 30, 2017). (App. Ex. 1 at 11; Ex. 2; Ex. 3 at 3, Ex. 4 at 8.)

Acknowledging these distribution goals, counsel for class members and claims administrators routinely recommend the approval of even true late claims in settlement distribution—and do so for claims received much later than the couple of weeks, or at latest 10 weeks at issue here. In fact, in the Auto Parts Direct Purchaser actions *in this very MDL*, the Court has approved late claims in *7 settlements* based in part on the recommendations of both class counsel and Epiq Global—the same claims administrator processing End-Payor claims. For example, in *In re Wire Harness Cases*, direct purchaser plaintiffs' motion for distribution was supported by a declaration from Epiq "recommend[ing] that the 55 late-filed Claim Forms be considered timely because they did not materially delay the ultimate processing of the Claim Forms submitted on or before [the claim deadline]." No. 12-cv-00101-SFC-RSW, ECF No. 566-1. (App. Ex. 5 at 2; Ex. 6 at 1.) Some of these 55 late-filed claims were filed more than 10 *months* after the deadline. Likewise, in *In re Occupant Safety Systems Cases*, the court approved claims filed more than 5 months after the deadline based in part on Epiq's statement "that the 66 late-filed Claim Forms be considered timely because they did not materially delay the ultimate processing of the Claim Forms submitted on or before [the claim deadline]."[4] No. 12-0601-SFC-RSW, ECF No. 144. (App. Ex. 7 at 2; Ex. 8 at 1.)

Similarly, in *In re Refrigerant Compressors Antitrust Litigation*, this Court approved late claims based on the claims administrator's statement that "[n]one of [the late] claims were received

---

[4] Other Direct Purchaser actions in this MDL approving late claims include *In re Alternators*, *In re Heater Control Panels*, *In re Instrument Panel Clusters*, *In re Radiators*, and *In re Windshield Wiper Systems* (pending).

3

so late as to interfere with the claims administration process." No. 09-md-2042-SFC, ECF Nos. 607-1, 610 (2017). (App. Ex. 9 at 2-3; Ex. 10.)

Claimants have identified at least 17 additional recent cases in which courts approved late claims without an individualized analysis of prejudice to the class or excusable neglect. In each of these cases, late claims were approved *en masse* where they did not delay the claims distribution process nor prejudice the class. In the most recent example, the court ordered—over the initial objection of class counsel—the approval of almost 1,300 late claims, including claims received **17 months** after the claim filing deadline. The court emphasized that "including these late claims will not delay the claims and distribution process in any substantial way" and that "principles of equity and fairness support allowing the [late claims.]" *In re Lithium-Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR, ECF No. 2681 at 27-28 (N.D. Cal. 2020). (App. Ex. 11 at 27-28.) Details of 17 additional cases allowing late claims are provided at Appendix Exhibit 1-A.

Even if Claimants' post-deadline submissions are considered actual late claims, both precedent in this very MDL and abundant case law favors the acceptance of these claims.

## II. THE END-PAYOR PLAN OF ALLOCATION DOES NOT PROHIBIT ACCEPTANCE OF POST-DEADLINE SUBMISSIONS

In refusing to accept any post-deadline submissions, EPPs rely heavily on the text of the Further Revised End-Payor Plan of Allocation ("Plan"). Opp'n at 22. However, nothing in the Plan explicitly bars post-deadline submissions or even late claims. In fact, settlements with substantially similar, if not identical, language regarding timeliness in their allocation plans—*including in this MDL*—still ultimately approved and funded late claims.

Here, although the Plan states that Class Members who "fail to complete and submit a valid and timely Claim Form shall be barred from participating in distributions," the Plan also explicitly allows for Court intervention by including the phrase "unless otherwise ordered by the Court."

4

Pinkerton Decl. ISO Opp'n ¶ 14.  In addition, in the Auto Parts Direct Purchaser actions in this MDL that have allowed late claims, language in their respective plans of allocation was functionally identical to the End-Payor Plan, providing that "[a]ny Settlement Class member that did not previously submit a valid Claim Form or does not complete and timely submit a valid and timely Claim Form at this time will not be entitled to share in the . . . settlement proceeds." *Occupant Safety Sys.*, Ex. A to Mot. for Final Approval, ECF 163-1 (App. Ex. 12 at 4.); *Wire Harness*, Ex. A to Mot. for Final Approval, ECF 563-1. (App. Ex. 13 at 4.)  As discussed in Part I above, despite this language, late claims were approved by this Court in both actions.

Further, in *Refrigerant Compressors*, this Court approved late claims despite language in the plan of allocation that net settlement funds would be distributed "among all Settlement Class Members who submit valid and timely claims forms."  Ex. A to Keough Decl., ECF No. 488-3 (May 14, 2014). (App. Ex. 14 at 4.)  EPPs' reliance on the Plan to reject post-deadline submissions is misplaced and nothing in the Plan prohibits the processing and acceptance of such submissions.

### III. ACCEPTANCE OF POST-DEADLINE SUBMISSIONS NEITHER DELAYS DISTRIBUTION OF FUNDS NOR PREJUDICES THE CLASS

Acceptance of post-deadline submissions, or even true late claims, filed by undisputed class members will not delay this proceeding, nor will it delay the ultimate distribution of settlement funds.  Courts typically find no delay for claims filed during the claims review process. *See, e.g., Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972).  For claimants filing post-deadline amendments to their claims, the court's protection extends even further, namely because "the justification for imposing unyielding time limits on [claim amendments] is even less obvious than that for filing a proof of claim." *In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 302 (3d Cir. 2002).  Where, as here, the review and audit process is nowhere near complete, acceptance of

5

vehicle information submitted within 10 weeks of the claim filing deadline—and more than 6 months ago—cannot reasonably be said to delay the administration of claims.

The claims review process here is still in its early stages. Claimants have not, nor to their knowledge have any other class members, received deficiency notices, meaning that the audit process has not begun in earnest. *See Batteries*, ECF No. 2681 (where claims process in early stages, late claims "will not delay the claims and distribution process in any substantial way"). (App. Ex. 11 at 27-28.) In addition, the Sixth Circuit has not yet heard the appeal on the separate subrogation issue in this case. With claims review still in early stages and no expectation for distribution of funds in the near-term, post-deadline submissions and even late claims submitted to date cannot be deemed the cause of any unreasonable delay to the claims process.

In addition, even if Claimants' submissions are considered late claims, allowing such claims by undisputed class members will not prejudice the class. Timely claimants have no justifiable expectation to any particular pay-out and, therefore, are not prejudiced by the approval of late claims. *In re "Agent Orange" Prod. Liab. Litig.*, 689 F.Supp. 1250, 1263 (E.D.N.Y. 1998); *see also In re Urethane Antitrust Litig.*, No. 04-md-1616, 2008 WL 5215980, *2 (D. Kan. Dec. 12, 2008) (no prejudice where "the remaining members would receive no less in settlement than they would have received" if additional class members participated). Instead, excluding late claimants from the settlement unjustly gives the remaining claims "what is essentially a 'windfall,' comprised of some portion of the recovery that would be owed to the otherwise deserving late registrants." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 324 (3d Cir. 2001).

Although deadlines are an important part of case management, courts recognize that "rigid and unquestioned adherence" to those same deadlines runs contrary to the "court's role as fiduciary in class actions when allowing a claimant participation in a settlement works no harm on the

6

conduct of the proceedings and does not significantly prejudice the interests of the parties." *Id.* at 316-17. Further, "[u]ntil the fund created by settlement is actually distributed, the court retains its traditional equity powers . . . to protect unnamed but interested persons . . . a [c]ourt may assert this power to allow late-filed claims." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194-197 (3d Cir. 2000). Indeed, this Court has exercised its inherent power and duty to protect late claimants in this MDL and other recent class settlements as noted above. Claimants acted quickly and in good faith to amend their claims with complete vehicle information; accepting their submissions will in no way interfere with the expedient distribution of settlement funds.

For the forgoing reasons, Claimants respectfully request that the Court reject EPPs' position denying post-deadline submissions and order such submissions processed and accepted by the claims administrator, without which Claimants and those similarly situated are subject to the release in the settlement without any compensation. Moreover, Claimants respectfully urge the Court to instruct EPPs to wait until the filing of a Motion for Distribution to recommend an appropriate cut-off date for the consideration of late—but otherwise valid—claims, as is routine in class action settlement proceedings and consistent with past claims processing in this MDL.

| | |
|---|---|
| March 10, 2021 | Respectfully submitted, |
| | By: */s/ Lawrence J. Lines III* |
| | Lawrence J. Lines III |
| | Crowell & Moring LLP |
| | 3454 Shakespeare Drive |
| | Troy, MI 48084 |
| | Telephone: (313) 920-2935 |
| | Email: jlines@crowell.com |
| Emma K. Burton | |
| Ann L. Rives | Daniel A. Sasse |
| Crowell & Moring LLP | Crowell & Moring LLP |
| 1001 Pennsylvania Avenue, NW | 3 Park Plaza, 20th Floor |
| Washington, DC 20004 | Irvine, CA 92614-8505 |
| Telephone: (202) 624-2500 | Telephone: (949) 263-8400 |
| Email: eburton@crowell.com | Email: dsasse@crowell.com |
| arives@crowell.com | Attorneys for Claimants |

## CERTIFICATE OF SERVICE

      I hereby certify that on March 10, 2021, a copy of the foregoing was filed electronically using the Court's ECF system, which will send notification to each attorney of record by electronic means.  Parties may access this filing through the Court's system.

Dated:  March 10, 2021                      By: */s/ Lawrence J. Lines III*
                                                                Lawrence J. Lines III