# EXHIBIT 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 13-MD-02420 YGR (DMR)<br><br>MDL No. 2420<br><br>**ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH HITACHI, LG CHEM, AND NEC AND *REVISED* PLAN OF ALLOCATION (DKT. NO. 2613);**<br><br>**GRANTING IN PART IPPS' RENEWED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; OVERRULING OBJECTIONS (DKT. NO. 2588);**<br><br>**DENYING ADMINISTRATIVE MOTION TO FILE MOTION TO STRIKE LATE FILINGS (DKT. NO. 2637); AND**<br><br>**GRANTING MOTION OF SHIYANG HUANG RE: LATE CLAIM (DKT. NO. 2645)**<br><br>**SETTING COMPLIANCE DEADLINE RE: DISTRIBUTION STATUS REPORT** |
| This Documents Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | |

i

1

# TABLE OF CONTENTS

I. BACKGROUND AND PROCEDURAL HISTORY ...................................................... 2
    A. Round 2 Settlements and their Approval................................................ 2
    B. Denial of Motion for Class Certification and Choice-of-Law Guidance ............... 3
    C. Motion for Final Approval of Round 2 Settlement Agreements ........................ 4
    D. Round 3 Settlements ...................................................................... 6
    E. Court's Approval of Round 3 and 90/10 Distribution Formula ......................... 7
    F. Vacatur and Remand of Final Approval Order of Round 2 Settlements ............... 8

II. SUMMARY OF THE ROUND 2 SETTLEMENTS .................................................... 9
    A. Settlement Terms ........................................................................ 10
    B. The Settlement Fund .................................................................... 10
    C. Release of Claims ........................................................................ 10
    D. Plan of Allocation ....................................................................... 10

III. MOTION FOR FINAL APPROVAL OF ROUND 2 SETTLEMENTS ............................ 11
    A. The Court Certifies the Settlement Classes for the Round 2 Settlements ........... 11
        1. The Settlement Class Meets the Requirements of Rule 23(a).................... 12
        2. Common Issues Predominate Under Rule 23(b)(3) .............................. 14
            a. Predominance is readily shown in antitrust cases. ....................... 14
            b. Predominance is met despite variations in state law ..................... 15
        3. The Settlement Class Satisfies Superiority Under Rule 23(b)(3).............. 18
    B. Plan of Distribution ..................................................................... 19
    C. Appointment of Class Counsel Under Rule 23(g) .................................... 21
    D. The Proposed Settlements Are Fair, Adequate, and Reasonable ..................... 21
        1. Representation of the Class ...................................................... 22
        2. Arm's Length Negotiation ....................................................... 23
        3. Adequacy of Relief to the Class ................................................ 24
            a. Risks and Costs of the Litigation .......................................... 24
            b. Effectiveness of Distribution .............................................. 25
            c. Terms of Proposed Attorney's Fees ....................................... 26
            d. Other Agreements .......................................................... 26
        4. Equitable Treatment of Class Members ........................................ 26
            a. Plan of Allocation .......................................................... 27
            b. Late Claims ................................................................. 27
    E. Additional Approval Factors ........................................................... 28
        1. Notice ............................................................................. 28
        2. Reaction of Class Members and Objections.................................... 29

IV. IPPS' REQUEST FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS ................. 31
    A. Reasonableness of Attorneys' Fees Sought ........................................... 31
    B. Objections to Attorneys' Fees ......................................................... 34
        1. Bednarz's Objection to Fees..................................................... 34
        2. Morgan's Objection to Attorneys' Fees ........................................ 37
        3. Andrews' Objection to Attorneys' Fees ........................................ 37
    C. Attorneys' Fee Award .................................................................. 38
    D. Expenses ................................................................................. 39
    E. Service Awards .......................................................................... 40
    F. Settlement Administrator Fees ......................................................... 41

V. PLAN OF DISTRIBUTION AS TO SONY SETTLEMENT (ROUND 1) ........................ 41

VI. CONCLUSION ....................................................................................... 44

This matter comes before the Court on motions of indirect purchaser plaintiffs ("IPPs") for Final Approval of Class Action Settlements with defendants Hitachi Maxell, Ltd., and Maxell Corporation of America, LG Chem, Ltd. and LG Chem America, Inc., and NEC Corporation ("Round 2 Settlements") (Dkt. No. 2613) and for attorneys' fees, reimbursement of expenses, and service awards (Dkt. No. 2588). As explained more fully herein, these motions followed the Ninth Circuit's decision vacating the Court's prior approval of the Round 2 Settlements and remanding for further proceedings. (Dkt. No. 2531.) A hearing on these motions was held May 20, 2020, at which counsel for IPPs, for class members, for defendants, for objectors, and objectors *in pro se* appeared via a videoconference platform. Thereafter, and at the direction of the Court, the Hagens Berman firm submitted a copy of the sealed portions of a bid submitted in connection with the contested proceedings regarding appointment of interim class counsel (Dkt. No. 2630) and IPPs and objectors submitted supplemental briefing addressing the effect of the sealed bid on the pending motions.

On August 14, 2020, this Court issued an Order to Show Cause Re: further notice to the class concerning a revised/clarified allocation and distribution plan for all settlement funds in this matter including the settlement the Court had previously approved in connection with the Sony Defendants. (Dkt. No. 2648.)

After considering responses filed thereto, the Court issued its Order Directing Further Notice Regarding Settlement Distribution Plan and an Order Approving the form of notice of the revised settlement distribution plan. (Dkt. Nos. 2651, 2654.) After dissemination of the approved class notice and an opportunity for class members to submit objections to the revised distribution plan, the Court held a hearing via videoconference on December 8, 2020, to consider final approval of that revised distribution plan. IPPs and objectors Michael Frank Bednarz, Steven Helfand, Edwin Orr, and Gordon Morgan appeared via videoconference.

The Court has carefully reviewed and considered the record in this matter, including: the memoranda and supporting declarations; the proposed settlement agreements between IPPs and Hitachi, LG Chem, and NEC (collectively, "the Settlements"); the objections submitted by

1   Christopher Andrews (Dkt No. 2604), Edward W. Orr (Dkt. No. 2605); Michael Frank Bednarz

2   (Dkt. No. 2606), and Gordan Morgan (Dkt. No. 2607); IPPs' responses to those objections (Dkt.

3   No. 2614); the supplemental filings of IPPs and objectors (Dkt. Nos. 2636, 2643, 2644, 2646); the

4   responses to the August 14, 2020 OSC and additional objections and responses thereto filed with

5   respect to the revised distribution plan (Dkt. Nos. 2649, 2650, 2653, 2659, 2662, 2663, 2666, 2668,

6   2669, 2671); and the previously sealed bid information from Hagens Berman. The Court has also

7   reviewed prior proceedings bearing on the issues, including the hearing transcripts.

8       Good cause appearing, the Court **ORDERS** that the motion for final approval is **GRANTED**

9   and the motion for attorneys' fees, expenses, and service awards is **GRANTED IN PART**, on the

10  terms and for the reasons stated herein. Further, the revised settlement distribution plan is

11  **APPROVED**.

12  **I.    BACKGROUND AND PROCEDURAL HISTORY**

13      **A.    Round 2 Settlements and their Approval**

14      IPPs reached settlement agreements with defendants LG Chem, Hitachi, and NEC in

15  November 2016, December 2016, and January 2017, respectively (hereinafter, "Round 2

16  Settlements"). Those settlement agreements included provisions that the distribution of the

17  settlement funds therein, net of attorneys' fees, costs, and taxes, would be distributed to authorized

18  claimants according to a distribution plan approved by the Court. (*See* LG Chem, Hitachi and NEC

19  Settlement Agreements at ¶¶ 19(e), 20(c).) The Round 2 Settlement Agreements specifically stated

20  that a plan of distribution to claimants was not part of the settlement agreement, like the Round 1

21  Sony Settlement before it, and left a determination of the appropriate distribution plan to the Court

22  at a later date after final approval. (*See, e.g.*, LG Chem, Hitachi and NEC Settlements at ¶¶ 23 and

23  A(1)(h) [" 'Distribution Plan' means any plan or formula of allocation of the Gross Settlement

24  Fund, to be approved by the Court, whereby the Net Settlement Fund shall in the future be

25  distributed to Authorized Claimants. ***Any Distribution Plan is not part of this Agreement***."]

26  (emphasis supplied); *see also* Sony Settlement Agreement, Dkt. No. 1505-1 at ¶¶ E.20 [funds to be

27  distributed after final approval and "the Distribution Plan and such further approval and further

28

order(s) of the Court as may be necessary or as circumstances require"], A.1(h) [" 'Distribution Plan' means any plan or formula of allocation of the Gross Settlement Fund, to be approved by the Court, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants. *Any Distribution Plan is not part of this Agreement*."].)  At the time the agreements were executed, IPPs' original motion for class certification had been fully briefed but not yet decided.[1]

IPPs filed motions for preliminary approval of the settlements on December 6, 2016 (Dkt. No. 1652 [LG Chem]); and January 24, 2017 (Dkt. No. 1672 [Hitachi and NEC]).  The Court heard argument on the motions for preliminary approval on February 28, 2017.[2]  On March 20, 2017, with the IPPs' motion for class certification still under submission, the Court granted the motions for preliminary approval of the Round 2 Settlements and directed notice to the Settlement Classes and a schedule for filing of objections and a hearing on final approval.  (Dkt. No. 1714.)

**B.      Denial of Motion for Class Certification and Choice-of-Law Guidance**

On April 12, 2017, the Court issued its order denying without prejudice IPPs' motion for class certification as to the non-settling defendants which, at the time, were Samsung, Sanyo, Toshiba and Panasonic.  (Dkt. No. 1735 at 1 fn.1.)  In denying class certification, the Court found that the numerosity, adequacy, typicality and commonality requirements of Rule 23(a) were met with respect to the claims against the non-settling defendants, but that IPPs had failed to offer a reliable method of common proof for class-wide impact and damages, specifically because the expert report of Dr. Edward Leamer was insufficient to that task.  (*Id*. at 10-11, 14, 19.)  The Court also offered, as guidance for IPPs' renewed motion for class certification, a choice of law analysis based upon the then-available evidence proffered by IPPs concerning defendants' significant contacts with California versus New Jersey.  (*See id.* at 21:19-22:2.)  Based on evidence of

---

[1] The Court held oral argument on IPPs' original motion for class certification on November 15, 2016.  Defendant LG Chem executed its settlement agreement on November 14, 2016, the day before the Court held oral argument.  (*See* LG Chem Settlement Agreement at p. 33, 34.)

[2] Supplemental post-hearing briefing on the motions for preliminary approval, concerning electronic payments on claims and updated versions of the class notices, was filed on March 9, 2017 (Dkt. No. 1700).

defendants' substantial contacts with California, the Court considered the choice-of-law question under the California test, finding:

> the interests of *Illinois Brick*[3] non-repealer states in precluding indirect purchaser claims would be impaired more significantly by applying the Cartwright Act than California's interests would be impaired by limiting its application to *Illinois Brick* repealer states, the Court finds that a nationwide class under the Cartwright Act would not be appropriate. However, as to the *Illinois Brick* repealer states, California's interests would prevail over less significant issues of whether a state follows some or all of the standing factors in *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983), statute of limitations differences, and the like. Any renewed motion for class certification should take this determination into account.

(*Id*. at 24:1-9.)[4]

## C. Motion for Final Approval of Round 2 Settlement Agreements

IPPs filed their motion for final approval of the Round 2 settlements on August 28, 2017. (Dkt. No. 1921.) Mssrs. Andrews, Morgan, and Bednarz filed objections to the final approval motion. (Dkt. Nos. 1753, 1787, 1833, 1834, 1900 [Andrews' objections]; 1902, 1907 [Bednarz objections]; 1906, 1915 [Morgan objections].)[5]

On October 3, 2017, the Court heard arguments on the original motion for final approval of the Round 2 Settlements. (*See* Dkt. No. 1984.)[6] Objector Frank Bednarz argued that the pro rata distribution plan that was part of the settlements therein was unfair. The Court noted at oral argument that Bednarz's objections to the distribution plan were not actually ripe, given that the Court had not yet considered or approved a distribution plan. (*Id*. at 4:16-20, 22-23 [Court stating "each of the agreements gives [the Court] the ability to distribute the gross settlement fund" and

---

[3] *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977) (prohibiting claims that consumer was injured by defendant's unlawful overcharge passed on to the consumer by an intermediary purchaser). Following *Illinois Brick*, certain state courts or legislatures have changed their state law to permit such claims, *i.e.* "repealer" states.

[4] IPPs filed their renewed motion for class certification against the non-settling defendants on September 26, 2017. (Dkt. No. 1960.)

[5] The additional objection of William H. Yoes was withdrawn. (*See* Dkt. Nos. 1843, 1886.)

[6] The Court initially set a fairness hearing for final approval of the Round 2 Settlements for August 1, 2017, but modified the schedule to set the fairness hearing for October 3, 2017, pursuant to an unopposed motion of IPPs due to an error in processing and delivering notice to the class. The time to request exclusion and file objections was extended to August 11, 2017. (Dkt. No. 1835.)

1    "given that we aren't distributing yet and there isn't a very specific plan in front of me that I can

2    approve . . . I can take the objections under advisement"].)  Mr. Bednarz's counsel acknowledged

3    that the distribution plan had only been suggested at that point, but nevertheless believed that it

4    raised an issue of adequacy of representation under Rule 23(a)(4), meaning that there needed to be

5    separate representation of those class members.  (*Id*. at 5:22-6:2; 6:10-15.)  He argued that the

6    adequacy issue was one that the *Sullivan* court did not specifically address.  (*Id*. at 6:10-15.)

7         IPPs' counsel confirmed that the Court had the discretion to determine the final distribution

8    plan, arguing that the Court did not need to determine the final plan in order to approve the

9    settlements with the Round 2 defendants.  (*Id*. at 5:6-12.)  IPPs' counsel argued that the Third

10   Circuit's decision in *Sullivan*[7] addressed the practical problem underlying Bednarz's objection to

11   the certification of a nationwide class before deciding the merits of non-repealer state residents'

12   claims: "if you aren't going to allow settlements of claims . . . before the legitimacy of those claims

13   is resolved as a practical matter, there are never going to be settlements."  (*Id*. at 7:13-16.)  The

14   settlements had been negotiated based on a nationwide class and a nationwide damages number at

15   a time when the Court had not yet given any indication on the choice of law issue.  (*Id*. at 9:14-

16   10:5.)  Indeed, he argued, the Court had not resolved the issue finally even at the time of final

17   approval, begging the question of when such a settlement would be permissible under objector's

18   logic.  (*Id*. at 9:25-10:5.)  After hearing the arguments, the Court took the matter under submission.

19        On October 27, 2017, the Court issued its order granting final approval of the Round 2

20   Settlement Agreements.  (Dkt. No. 2003.)  The Court specifically noted that "a pro rata plan of

21   distribution, *the specifics of which the Court shall approve at a later date*" was approved.  (*Id*. at 1,

22   3, emphasis supplied.)  The Court certified a single nationwide settlement class, citing *Sullivan* as

23   well as *In re Transpacific Passenger Air Transportation Antitrust Litigation*, No. 15-16280, 2017

24   WL 2772177 (9th Cir. June 20, 2017); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-

25   CV-5944 JST, 2016 WL 721680, at *15 (N.D. Cal. Jan. 28, 2016).  The Court acknowledged the

26   objections regarding "intraclass conflicts between consumers that reside in *Illinois Brick* repealer

27   ───────────────

28   [7] *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 300 (3d Cir. 2011).

states and those that reside in other states, which the allocation plan must take into account" but found that, for purposes of settlement, common issues predominated despite variations in state law might have affected some settlement class members' right to recover had the case proceeded to trial. (*Id.* at 4:4-5, 13-20, citing *Sullivan*, 667 F.3d at 302-303 ("in the settlement context, variations in state antitrust, consumer protection and unjust enrichment laws did not present 'the types of insuperable obstacles' that could render class litigation unmanageable").) The Court concluded that the settlements, and the general plan of a pro rata distribution among the members of the settlement classes therein, were fair and adequate despite intragroup differences. (*Id.* at 4:19-20.) Finally, the Court stated that,

> Without affecting the finality of the order and Judgment in any way, the Court **ORDERS** that IPPs submit a proposed distribution plan at the close of the claims period and that it submit quarterly reports directly to the Court on the progress and status of the claims program. The proposed distribution plan and first quarterly claims report shall be lodged with the Court no later than **14 days prior to the close of the claims period**.

(*Id.* at 5:4-8, emphasis in original and supplied.)

### D. Round 3 Settlements

On November 20, 2017, Mr. Bednarz filed an appeal of the final approval order for the Round 2 Settlement Agreements. (Dkt. No. 2034.) Subsequent to Mr. Bednarz's appeal, on January 5, 2018, IPPs notified the Court that they had reached settlements in principle with the Tokin and Toshiba defendants. (Dkt. No. 2124.)

IPPs were denied class certification on their renewed motion by Order issued March 5, 2018. (Dkt. No. 2197.) The Ninth Circuit denied IPPs' request to file a direct appeal of the denial of the renewed class certification motion on June 27, 2018. (Dkt. No. 2347.) Thereafter, IPPs entered into a settlement with the Samsung defendants. (*See* Dkt. No. 2312.) They requested that the Court delay any motion for preliminary approval of the Tokin, Toshiba, and Samsung settlements while the Ninth Circuit considered whether it would grant rehearing *en banc* in *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018). (*Id.*; *see also* Dkt. No. 2365 [noting that *en banc* review was granted].)

Finally, after the Court ordered IPPs' unauthorized third motion for class certification stricken (Dkt. No. 2407), on November 20, 2018, IPPs reported that they had reached a settlement in principle with the Panasonic defendants, the only defendants remaining in the IPP case. (Dkt. No. 2444.)

### E. Court's Approval of Round 3 and 90/10 Distribution Formula

With the appeals of the Round 2 Settlements still pending before the Ninth Circuit, on January 24, 2019, IPPs filed their motion to direct notice to the class regarding the settlements with defendants SDI, Tokin, Toshiba, and Panasonic ("the Round 3 Settlements"). (Dkt. No. 2459.) In the context of that motion, IPPs also first proposed an allocation plan they asserted "meaningfully reflects the greater settlement value of claims by residents of states that have passed laws allowing recovery by indirect purchasers (so-called '*Illinois Brick* repealer states') versus residents of states that have not done so ('non-repealer states')." (*Id*. at 1:16-19.) The proposed distribution plan was to allocate 90% of the settlement fund to class members in *Illinois Brick* repealer states and the remaining 10% of settlement funds to class members in non-repealer states. IPPs made this recommendation based upon the parties' stipulated adversarial process before the Honorable Rebecca J. Westerfield (Ret.), in which Judge Westerfield considered extensive analysis and rendered findings and recommendations concerning an appropriate allocation as between the two groups of putative class members. With that recommendation in hand, IPPs argued the Court should allocate the 10% nominal amount to non-repealer state residents in recognition of the value of their releases of claims, even if nominal. (*Id*. at 18.) The Court heard arguments on March 5, 2019, and entered its Order Directing Notice to the class regarding the Round 3 Settlements and proposed distribution plan on March 11, 2019. (Dkt. No. 2475.) Therein, the Court found, based upon its review of the proposed distribution plan, that it was likely to approve the distribution plan as fair, reasonable, and adequate. The Court found the plan appeared appropriate given that non-repealer state class members had claims that had not been finally resolved on their merits and the Court's guidance regarding the application of California choice-of-law rules would have been subject to appeal. (*Id*. at 3.) The Court set a final approval hearing for July 16, 2019. (*Id*. at 6.)

1    The motion for final approval of the Round 3 Settlement and the proposed distribution plan

2    was filed June 11, 2019 (Dkt. No. 2501) and set for hearing along with IPPs' motion for attorneys'

3    fees (Dkt. No. 2487).  Objections were filed by Mssrs. Bednarz, Morgan, and Andrews. (Dkt. Nos.

4    2495, 2496, 2497.)

5    On August 16, 2019, after carefully considering the parties' request, Judge Westerfield's

6    analysis, and the objectors' briefing and arguments, the Court granted final approval of the Round

7    3 Settlements and approval of the 90/10 distribution plan.  (Dkt. No. 2516.)  At that same time, the

8    Court ordered that IPPs were entitled to attorneys' fees in the amount of $29,334,176.00 which,

9    together with a prior Interim Award of $4,495,000.00, totaled $33,829,176.00 or just under 30% of

10   the total fund.  The Court also ordered reimbursement of expenses in the amount of $5,891,547.34

11   ($6,751,735.84 minus the $860,188.50 already awarded by the Court in the Interim Award), and

12   additional service awards of $225,500.00 ($8,500 for each of the twenty-one individual class

13   representatives and $23,500 for each of two governmental entity class representatives) beyond

14   those awarded in the Interim Award.  Thereafter, objectors Christopher Andrews and Gordon

15   Morgan appealed the attorney fee award.  (*See* Dkt. No. 2527, 2534.)

16   **F.    Vacatur and Remand of Final Approval Order of Round 2 Settlements**

17   On September 16, 2019, the Ninth Circuit vacated this Court's final approval order of the

18   Round 2 Settlements.  (Dkt. No. 2531.)  The Ninth Circuit's memorandum stated that the Court

19   "did not explain why a nationwide class should be certified and a pro rata distribution plan

20   approved despite substantial differences in state law between repealer and non-repealer states," and

21   had summarily overruled Mr. Bednarz's objections in finding the pro rata allocation fair and

22   adequate.  (*Id*. at 3.)  The Ninth Circuit noted this Court's "suggestion in a previous order denying

23   certification of a nationwide class that California's *Illinois Brick* repealer law likely would not

24   apply to class members from non-repealer states."  (*Id.* at 4.)  The memorandum went on to express

25   that the Circuit's "concerns are also magnified by the district court's recent approval of another set

26   of settlement agreements whose [*sic*] distribution plans specifically account for the difference

27   between repealer and non-repealer states."  (*Id*. at 4.)

28

Upon remand, IPPs moved to direct a new notice to the classes in the Round 2 Settlements regarding the 90/10 plan of allocation, giving them a new opportunity to object or to request exclusion. (Dkt. No. 2566.)[8] On January 10, 2020, this Court provisionally approved that plan of allocation for the purposes of the Round 2 Settlements, and directed a new notice be provided to the Settlement Class regarding the settlement and distribution plan. (Dkt. No. 2571.) In so doing, the Court again carefully considered Judge Westerfield's recommendation and the assurances of fairness related to the proceedings before her, and found that it was likely to grant final approval of the distribution plan since it treated class members equitably relative to one another based on the relative strength of the subgroups' claims. (*Id*. at 1-2.) The Court further found that it was likely to certify these Round 2 Settlement classes as meeting Rule 23(a)'s requirements and establishing that common questions of law and fact predominate regardless of interclass distinctions in the distribution formula. (*Id*. at 4.)

## II. SUMMARY OF THE ROUND 2 SETTLEMENTS

IPPs now move again for final approval of their Round 2 Settlements, attached hereto as **Exhibits 1 through 3**. In the Court's January 10, 2020 Order, IPPs were directed to provide additional notice to the class regarding the Settlements and the distribution plan. (Dkt. No. 2571.) Epiq, the Court-appointed class administrator, provided notice in accordance with this Court's order. Only 21 class members requested exclusion from the class, and a total of four objections were filed. A list of those persons or entities who validly requested exclusion from the Settlement Class is attached hereto as **Exhibit 4**. Such persons or entities are not entitled to any recovery of the settlement proceeds obtained in connection with the Settlements.

//

//

---

[8] On December 12, 2019, the Court granted the motion of objector Michael Frank Bednarz for an indicative ruling concerning his pending appeal, Ninth Circuit Case No. 19-16855, such that this Court could consider whether the attorneys' fee award, issued at the same time as the Round 3 final approvals should be modified. (Dkt. No. 2567.) By order issued January 30, 2020, the Ninth Circuit agreed that it was "appropriate to vacate the district court's fee award" and therefore vacated the portion of the Court's August 16, 2019 Order on the Round 3 settlements awarding attorneys' fees. (Dkt. No. 2579.) Thus, the issue of attorneys' fees for IPPs' counsel is properly before the Court.

**A.      Settlement Terms**

The proposed Settlements resolve all claims against the Round 2 Settling Defendants stemming from the alleged conspiracy to restrain competition for lithium-ion batteries.  The Settlement Class in each of the settlements is substantially similar and is defined as follows:

> All persons and entities who, as residents of the United States and during the period from January 1, 2000 through May 31, 2011, indirectly purchased new for their own use and not for resale one of the following products which contained a lithium-ion cylindrical battery manufactured by one or more defendants or their coconspirators: (i) a portable computer; (ii) a power tool; (iii) a camcorder; or (iv) a replacement battery for any of these products.

**B.      The Settlement Fund**

Under the proposed Round 2 Settlements, the Round 2 Settling Defendants will pay a total of $44.95 million in cash: LG Chem will pay $39 million, Hitachi will pay $3.45 million, and NEC will pay $2.5 million.  The settlement funds are non-reversionary to the defendants.  Inclusive of the settlements previously approved between IPPs and other defendants in this case, IPPs have secured settlements of $113.45 million for the IPP class.

**C.      Release of Claims**

Each Settlement Agreement provides that upon final approval and entry of judgment, Class Members will release state and federal law claims against the Round 2 Settling Defendants relating to purchases of lithium-ion batteries or products containing lithium-ion batteries up through May 31, 2011.  The proposed Settlement Class includes only purchasers of portable computers, power tools, camcorders, and replacement batteries, consistent with the class for which IPPs originally sought certification.  As to these settlement class members, the Settlements will release all antitrust claims based on all lithium-ion battery types (*i.e.*, cylindrical, prismatic, and polymer batteries) and additional products (*e.g.*, mobile phones, smart phones, cameras, digital video cameras, and digital audio players), consistent with the scope of claims originally pleaded.

**D.      Plan of Allocation**

IPPs propose to distribute the settlement funds in two steps.  *First*, 90 percent of the settlement funds will be allocated toward Class Members who made purchases in *Illinois Brick* repealer jurisdictions, and the remaining 10 percent will be allocated toward Class Members who

made purchases in non-repealer states. *Second*, within each allocation, the funds will be distributed *pro rata* to claimants based on the total number of covered products purchased from January 1, 2000 through May 31, 2011. Should a balance remain after distribution to the class (whether by reason of tax refunds, uncashed checks, or otherwise), those funds shall escheat to federal or state governments. Accordingly, no settlement funds will revert to the Round 2 Settling Defendants.

## III.   MOTION FOR FINAL APPROVAL OF ROUND 2 SETTLEMENTS

At final approval, this Court must decide whether: (1) the proposed settlement class meets Rule 23's requirements; (2) the settlements are fair, reasonable, and adequate; and (3) appropriate notice and other procedural requirements are met. The new amendments to Rule 23 provide that in determining whether a proposed settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### A.   The Court Certifies the Settlement Classes for the Round 2 Settlements.

At final approval, this Court must decide whether the proposed Settlement Class meets Rule 23's requirements. To certify this proposed settlement class, IPPs must show that the requirements of Rule 23(a) and 23(b)(3) are met. The Ninth Circuit Court has confirmed that "[t]he criteria for class certification are applied differently in litigation and settlement classes." *Hyundai*, 926 F.3d at 556. In *Hyundai*, the Ninth Circuit clarified the application of the Rule 23 criteria in the settlement class action context, which informs the analysis here. As discussed below, the Court certifies the proposed settlement class for settlement purposes under Rule 23(b)(3) and (e).

### 1. The Settlement Class Meets the Requirements of Rule 23(a)

Under Rule 23(a), the proponent of class certification must show that the proposed class meets the requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Those requirements are met here.

As the Court found in connection with IPPs' original motion for class certification (Dkt. No. 1735), those same classes (now Settlement Classes herein), satisfy Rule 23(a)'s requirements. (*Id*. at 10-12.) As to numerosity, the class numbers in the million, which would make joinder impracticable, if not impossible. With respect to commonality, a common question "must be of such a nature that it is capable of class[-]wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350. "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Id*. at 359. Here, a central, common question underlying each of the Settlement Classes' claims is whether defendants participated in a conspiracy to raise, fix, stabilize or maintain the prices of lithium ion batteries sold in the United States. Thus, Rule 23(a)(2) is satisfied.

Rule 23(a)(3) requires a showing that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality means that the named plaintiffs "suffer the same injury as the class members." *Dukes*, 564 U.S. at 348. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (*quoting Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)). The requirement is "permissive" and the representatives' claims need only be "reasonably co-extensive with those of absent class members." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, IPPs alleged that the defendants engaged in a common price-fixing scheme affecting all members of the Settlement Classes in the same way. The Court finds, as it did in considering IPPs' motion for class certification (Dkt. No. 1735 at 10-12), that the IPP named plaintiffs' claims here are reasonably co-

12

1    extensive with the claims of members of the Settlement Classes. *Cf. In re Transpacific Passenger*

2    *Air Transportation,* 2015 WL 3396829, at \*3 (finding antitrust settlement fair and adequate despite

3    potential differences in application of *Illinois Brick*, since court had not reached the merits of those

4    issues and court's role was not to "differentiat[e] within a class based on the strength or weakness

5    of the theories of recovery." (citing *Sullivan,* 667 F.3d at 328 and *Lane v. Facebook, Inc.*, 696 F.3d

6    811, 824 (9th Cir. 2012)).

7          Finally, Rule 23(a)(4)'s adequacy requirement considers whether a class representative will

8    "fairly and adequately protect the interests of the class," meaning that the representative does not

9    have any conflicts of interest with other class members and will prosecute the action vigorously on

10    their behalf. Fed. R. Civ. P. 23(a)(4); *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th

11    Cir. 2011). "To determine legal adequacy, [courts must] resolve two questions: "(1) do the named

12    plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

13    named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

14    *Hyundai*, 926 F.3d at 566.

15          Here, the Court does not believe the potential state law variations applicable to some class

16    members create a conflict of interest, or that the class representatives cannot fairly represent all

17    class members. As in *Hyundai*, for purposes of certification of a settlement class, class

18    representatives can adequately represent the absent class members if their claims "revolved around

19    a 'common nucleus of facts' . . . [and a] common course of conduct," even if state law variations

20    might affect the relative viability of certain absent class members' claims. *Hyundai*, 926 F.3d at

21    563–64; *see also In re Transpacific Passenger Air Transportation,* 2015 WL 3396829, at \*3 (N.D.

22    Cal. May 26, 2015) (rejecting claim of intraclass conflict and finding that the court need not "wade

23    into the *Illinois Brick* issue" or make distinctions in the strength or value of some members claims

24    in order to approve settlement). In this case, the nature of the claims alleged and relief sought—

25    that *all* class members could bring claims under California's Cartwright Act—were the

26    predominant issues in this case and identical as to *all* class members. As such, for purposes of

27    settlement, the class representatives and counsel could represent *all* those class members' interests

28

fairly and adequately. The question of whether class members could bring claims under California's Cartwright Act had not been finally resolved at the time of settlement or subsequently. Further, the Class Counsel and the Class Representatives have litigated this action competently and vigorously since 2013 and have achieved an excellent result for *all* class members. These factors, along with the structural assurances of fairness inherent in the proposed distribution plan, satisfy the Court that class counsel and class representatives have no conflict with the class and have represented all members' interests fairly.

### 2. *Common Issues Predominate Under Rule 23(b)(3)*

The Settlement Class satisfies Rule 23(b)(3) because common questions predominate over questions affecting individual class members. "The predominance inquiry under Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Hyundai*, 926 F.3d at 557 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The Ninth Circuit in *Hyundai* emphasized that Rule 23(b)(3) does not require that all elements of a claim be susceptible to class-wide proof; rather, "even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, _U.S._, 136 S.Ct. 1036, 1045 (2016)).

### a. *Predominance is readily shown in antitrust cases.*

In horizontal price-fixing cases, questions as to the existence of the alleged conspiracy and as to the occurrence of price-fixing are readily found to predominate. *See, e.g.*, *Sullivan*, 667 F.3d at 300; *see also Amchem*, 521 U.S. at 625 (predominance under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). The court in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 291, 310 (N.D. Cal. 2010) collected cases and explained: "Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members."

This price-fixing case is no different. Resolution of IPPs' claims depends principally on whether defendants participated in a price-fixing conspiracy, and whether the conspiracy caused an artificial increase to the market price of lithium ion batteries. If IPPs were to prove these elements based on common evidence, a jury could reasonably infer that every class member suffered some injury as a result. Antitrust cases, like consumer fraud cases, are ones in which predominance is "readily met" because the class is comprised a "cohesive group of individuals [who] suffered the same harm in the same way because of the [defendants'] alleged conduct." *Hyundai*, 926 F.3d at 559 ("We have held that these types of common issues, which turn on a common course of conduct by the defendant, can establish predominance in nationwide class actions."). Had the Settlement Class members brought their claims individually, each would have had to rely on the same evidence of cartel behavior, and prove damages using the same economic modeling on which IPPs relied.[9]

### b. Predominance is met despite variations in state law

IPPs move to certify a nationwide Settlement Class of consumers—including residents of both *Illinois Brick* repealer states and non-repealer states. The Court finds that, for purposes of certifying a settlement class, the variations in state law with respect to *Illinois Brick*'s repeal or non-repeal do not foreclose a finding that common issues predominate.

In its April 12, 2017 order denying that motion without prejudice (Dkt. No. 1735), the Court denied certification on the grounds that IPPs had not presented a sufficient model of class-wide proof of pass-through liability and damages. The Court provided plaintiffs with "guidance. . . should [they] elect to renew their motion" in the form of an analysis, based on the evidence then-presented, of the applicability of California's Cartwright Act to a nationwide class.[10]

---

[9] Although this Court denied IPPs' renewed motion for class certification, courts "will certify settlement classes although they had previously denied certification of the same class for litigation purposes." 3 NEWBERG ON CLASS ACTIONS § 7:35 (5th ed.); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 WL 12333442, at *56 (N.D. Cal. Jan. 8, 2013); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 269 F.R.D. 80, 81-82 (D. Me. 2010).

[10] IPPs' subsequent renewed motion for class certification limited the proposed class to states they identified as repealer states. That motion, too, was denied, but not for reasons having to do

1   (*Id*. at 20-24.)  The Court did not provide a final resolution of the *Illinois Brick* issue, nor did it

2   resolve the parties' dispute over which states qualified as *Illinois Brick* repealers.  (*Id*. at 24 and fn.

3   11.)

4          The settlements herein originally were reached and preliminarily approved **prior** to the

5   Court's ruling on IPPs' first motion for class certification.  Moreover, this Court's analysis in its

6   order denying without prejudice IPPs' first attempt to certify a nationwide litigation class does not

7   foreclose certification of a nationwide **settlement** class.

8          Mr. Bednarz, in connection with the *original* fairness hearing on these settlements, argued

9   that intraclass conflicts between those who purchased in *Illinois Brick* repealer states and those

10  who did not precluded certification of the settlement classes.  Although Mr. Bednarz does not raise

11  that objection to the present motion, Mr. Orr raises the argument for him as an objection here.

12  Essentially, the objection is that claims with "vastly different litigation value" (Dkt. No. 1902 at

13  6:7-8)—or as Mr. Orr contends, zero value—cannot be unified fairly in a single class for settlement

14  purposes.

15         To the extent *Illinois Brick* variations in state law might weigh against predominance, the

16  Court finds they are counterbalanced by the common issues here: the price-fixing conspiracy and

17  cartel, and whether that resulted in increased market price of lithium ion batteries, based on a

18  cohesive set of facts causing harm to all class members.  On this point, the Court finds persuasive

19  the Third Circuit's analysis in *Sullivan,* 667 F.3d 273.  There the circuit court observed that, even

20  in a nationwide litigation class, variations in state law would not necessarily defeat predominance

21  and certification where a constellation of common issues binds the class together and state law

22  variations can be sorted into groups with similar legal doctrines.  *Id.* at 302 (citing *Klay v. Humana,*

23  *Inc.,* 382 F.3d 1241, 1262 (11th Cir.2004); *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017

24  (D.C.Cir.1986).)  Such concerns were greatly diminished when presented with certification of a

25  *settlement* class where state law variations are rendered irrelevant "since a settlement would

26

27  ───────────────────
    with whether variations in state law applicable to the class members' claims or any choice of law
    question.

28

eliminate the principal burden of establishing the elements of liability under disparate laws." *Id.* at 303.[11]  Further, the court in *Sullivan* held that certification for settlement purposes did not require plaintiffs to demonstrate that they possessed viable claims despite *Illinois Brick* in order to establish predominance:

> The question is not what valid claims can plaintiffs assert; rather, it is simply whether common issues of fact or law predominate.  Contrary to what the dissent and objectors principally contend, there is no "claims" or "merits" litmus test incorporated into the predominance inquiry beyond what is necessary to determine preliminarily whether certain elements will necessitate individual or common proof.  Such a view misreads Rule 23 and our jurisprudence as to the inquiry a district court must conduct at the class certification stage.  An analysis into the legal viability of asserted claims is properly considered through a motion to dismiss under Rule 12(b) or summary judgment pursuant to Rule 56, not as part of a Rule 23 certification process.

*Sullivan*, 667 F.3d at 305 (internal citation omitted).

As the Ninth Circuit has held, the choice of law issue in the context of class certification for purposes of litigation bears largely on trial management concerns rather than predominance of common questions *per se*.  *Hyundai*, 926 F.3d at 562; *Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020) (9th Cir. July 20, 2020) ("*Hyundai* made clear that it generally is not legal error to forego a choice-of-law analysis in a settlement-class predominance inquiry").  While "[t]he prospect of having to apply the separate laws of dozens of jurisdictions present[s] a significant issue for trial manageability, weighing against a predominance finding [in litigation]. . . . [i]n settlement cases, such as the one at hand, the district court need not consider trial manageability

---

[11]  As Judge Scirica noted in his concurrence:

Objectors view the indirect purchaser class as composed of members who either have valid claims under the laws of states with *Illinois Brick* repealers or members who have invalid claims under the laws of non-repealer states.  But a claim cannot be declared invalid without proper analysis, which would require a choice-of-law examination for each class member's claim.  Such analyses may pose difficulties in cases where the residence of the class member is not the sole consideration; modern choice-of-law standards often consider an array of factors particular to individual plaintiffs.  Consequently, individual 12(b)(6) inquiries for settlement class certification could present serious difficulties in administration and greatly increase costs and fees, and may deplete rather than increase the recovery of even successful plaintiffs.

*Sullivan*, 667 F.3d at 337 (Scirica, J., concurring).

issues." *Hyundai*, 926 F.3d at 563 (citing *Amchem*, 521 U.S. at 620); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (choice of law analysis in nationwide class affected question of manageability at trial).[12]  Moreover, courts have recognized that individualized damages determinations, particularly when they are based upon a common formula, do not defeat predominance.  *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (reaffirming "the proposition that differences in damage calculations do not defeat class certification").

  Thus, the Court finds, like others before it, that state law variations between members of a nationwide class do not defeat a finding of predominance of common issues for purposes of settlement.  *In re Transpacific Passenger Air Transportation,* 2015 WL 3396829, at *3 (finding antitrust settlement fair and adequate despite potential differences in application of *Illinois Brick*, since court had not reached the merits of those issues and court's role was not to "differentiat[e] within a class based on the strength or weakness of the theories of recovery") (citing *Sullivan,* 667 F.3d at 328; *Lane*, 696 F.3d at 824); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12333442, at *79 (N.D. Cal. Jan. 8, 2013), *report and recommendation adopted sub nom. In re Dynamic Random Access Memory Antitrust Litig.*, No. C 06-4333 PJH, 2014 WL 12879520 (N.D. Cal. June 27, 2014) (approving settlement with pro rata distribution plan regardless of *Illinois Brick* differences based upon *Sullivan* court's analysis).

### 3. *The Settlement Class Satisfies Superiority Under Rule 23(b)(3)*

  Resolution of IPPs' claims through a class action is superior to alternative methods. Litigating every class member's claims separately would waste both judicial and party resources, given that the vast majority of evidence of liability would be identical.  *See Hanlon*, 150 F.3d at 1023.

---

[12] Further, no objector here offers contrary evidence or analysis regarding the appropriate choice of law analysis, such that the Court is not obligated to perform such an analysis in order to approve settlement.  *Hyundai*, 926 F.3d at 562 (where objectors offered no choice-of-law analysis, "neither the district court nor class counsel were obligated to address choice-of-law issues beyond those raised by the objectors, and we will not decertify a class action for lack of such analysis").

1  **B.  Plan of Distribution**

2      "Approval of a plan of allocation of settlement proceeds in a class action is governed by the

3  same standards of review applicable to approval of the settlement as a whole: the plan must be fair,

4  reasonable and adequate." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1045 (N.D. Cal.

5  2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1285 (9th Cir. 1992).  Allocation of the

6  settlement funds based on the extent of class members' injuries or the strength of their claims on

7  the merits represents a fair, reasonable, and adequate allocation.  *Omnivision,* 599 F.Supp.2d at

8  1045; *see also, In re Oracle Sec. Litig.,* No. 90–cv–00931–VRW, 1994 WL 502054, at *1 (N.D.

9  Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of

10  their injuries is generally reasonable.").  A proposed allocation "need only have a reasonable,

11  rational basis, particularly if recommended by experienced and competent counsel." *In re: Cathode*

12  *Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-JST, 2016 WL 3763382, at *6 (N.D. Cal. Feb. 29,

13  2016), *report and recommendation adopted in part,* No. C-07-5944 JST, 2016 WL 3648478 (N.D.

14  Cal. July 7, 2016), *dismissed sub nom. In re CRT,* 2017 WL 3468376 (9th Cir. Mar. 2, 2017)

15  (quoting *Rieckbom v. Velti PLC,* No. 13-cv-03889, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3,

16  2015)).

17      Consistent with the settlements approved in Round 3, IPPs here recommend that the Court

18  allocate 10 percent of the settlement funds for distribution to Class Members in non-repealer states,

19  based on considerations of the risk-discounted value of the claims those class members release

20  under the terms of the Settlement Agreements.  Mssrs. Andrews and Orr object to the distribution

21  plan on the same basis that they object to certification of the Settlement Classes—that permitting

22  class members in non-repealer states to receive a portion of the funds, even if only a nominal 10%

23  of the fund, unfairly dilutes the claims of those in repealer states.

24      The Court has considered the distribution plan here, which takes account of the relative

25  strength of class members' claims depending upon the *Illinois Brick* repealer issue.  The

26  settlements do not require individualized damage determinations, but simply prescribe a formula

27  for allocating proceeds as between two sub-groups within the settlement class.  The proposed 90/10

28

allocation in this case is appropriate in light of the fact that both residents of repealer and non-repealer jurisdictions released claims as part of this settlement, albeit with a risk-discounted value as to the non-repealer state class members. While the Court had ruled that only class members in repealer states could be part of a class alleging violation of the Cartwright Act, non-repealer state class members retained rights to appeal that decision.

A plan which "fairly treats class members by awarding a pro rata share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims" should be approved as fair and reasonable. *In re MicroStrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654, 669 (E.D. Va. 2001) (citation omitted). Indeed, distribution models that acknowledge the relative strengths and values of the various claims within the Settlement Class and distribute smaller relative awards certain subgroups have been approved within this Circuit. *See, e.g., Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *10 (C.D. Cal. June 9, 2008) (approving distinctions in plan of allocation as reasonably reflecting likelihood of recovery of subgroups within the class); *In re Biolase, Inc. Sec. Litig.*, No. SA-CV-13-1300-JLS-FFMX, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (variable pro rata distribution plan based upon relative injuries of class members approved); *In re Oracle Sec. Litig.*, 1994 WL 502054, at *2 (approving plan "reasonably calculated to allow class members with more meritorious claims to recover a correspondingly larger portion of the settlement" based upon class counsel's appraisal of relative merits of subgroups).

As the Court found in connection with the Round 3 settlements, it is appropriate for class members from non-repealer states to receive a limited share of the total recovery given that their claims had not been dismissed nor amended out of the pleadings *before* the settlements agreeing to release those claims were reached. Indeed, the settlements reached with these three sets of defendants were executed *prior* to the Court's orders denying class certification and its choice-of-law analysis. That analysis was subject to further litigation and appeal had the case not settled.

Thus, in recognition of the fact that such releases themselves have some value, even if nominal, the Court finds the 90/10 allocation plan is fair and reasonable and does not preclude

20

certification of a settlement class. To infer that those claims have *no* value would be to ignore the practical realities of litigation including the right to appeal. The parties and lawyers here are sophisticated. They are entitled to continue to pursue litigation. They are also entitled to "buy peace," even where some claims are not as strong as others. *Cf. Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits."); *see also Sullivan*, 667 F.3d at 311 ("achieving global peace is a valid, and valuable, incentive to class action settlements" and making proof of validity of all claims a prerequisite would prevent "the parties from seriously getting to, and engaging in, settlement negotiations").

### C. Appointment of Class Counsel Under Rule 23(g)

Pursuant to Rule 23(g), this Court appoints Cotchett, Pitre & McCarthy, LLP, Hagens Berman Sobol Shapiro LLP, and Lieff Cabraser Heimann & Bernstein, LLP, as Class Counsel to represent the certified Settlement Class. At the outset of this action, the Court appointed these firms as Interim Co-Lead Counsel for IPPs after a competitive application process. (Order Appointing Interim Co-Lead Counsel & Liaison Counsel for Indirect Purchaser Plaintiffs, Dkt. No. 194.) Considering counsel's work in this action, their collective expertise and experience in handling similar actions, and the resources they have committed to representing the class, they are appointed as class counsel for the settlement class under Rule 23(g)(1).

### D. The Proposed Settlements Are Fair, Adequate, and Reasonable

Rule 23 provides that, in determining whether a proposed settlement is fair, reasonable, and adequate, a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).[13]  Recognizing that "[c]ourts have generated lists of factors," the Advisory Committee emphasizes that these new provisions are intended to "focus" the inquiry on "the primary considerations that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

Taking these factors into consideration, and as set forth below, the Court finds that the proposed Settlement Agreements are fair, reasonable, and adequate under the Rule 23(e) factors and other relevant considerations identified by the Ninth Circuit.

### 1.    *Representation of the Class*

The Court finds that the class representatives and class counsel have more than adequately represented the Class.  The Advisory Committee Notes explain that this subsection, in conjunction with subsection (B), "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  *See* Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision (e)(2), Paragraphs (A) and (B) (2018).

As an "example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base."  *Id.*  Ninth Circuit law, too, instructs court to consider the "extent of discovery completed and the stage of the proceedings."  *See Bluetooth*, 654 F.3d at 946 (factor five).  The extent of the discovery conducted to date and the stage of the litigation are both indicators of counsel's familiarity with the case and of IPPs having enough information to make

---

[13] Prior to the recent Rule 23 amendments, the Ninth Circuit instructed courts to weigh some or all of the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

informed decisions. *See, e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

IPPs here, during nearly seven years of hard-fought litigation, survived multiple rounds of dispositive motions and conducted extensive discovery, thoroughly testing the claims and defenses in this case. During fact discovery, IPPs took and defended over eighty depositions, served voluminous discovery, reviewed millions of pages of documents (mostly in Japanese, Korean, and Chinese), and analyzed enormous electronic data files produced by defendants and third parties. To obtain this discovery, IPPs brought and prevailed, at least in part, on fourteen contested motions to compel, including orders compelling defendants to produce worldwide transactional sales and cost data for battery cells and packs, detailed interrogatory responses, recalcitrant LG Chem witness Seok Hwan Kwak to appear for deposition. IPPs also engaged in extensive expert discovery and motion practice, and with the help of expert analyses, synthesized large amounts of evidence to show the conspiracy's substantial and universal impact on consumers. As a result of their work, IPPs obtained substantial recoveries for the Settlement Class from all but one of the Defendant families prior to the Court's final denial of class certification. These facts make clear that the Class Representatives and Class Counsel had the information they needed to negotiate intelligently on behalf of the class.

### 2. *Arm's Length Negotiation*

Rule 23(e)(2)(B) instructs courts to consider whether "the proposal was negotiated at arm's length." The Settlements were negotiated at arm's length among experienced and sophisticated counsel. The Advisory Committee Notes state that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Here, the Settlements resulted from iterative negotiations directly between counsel and with the assistance of retired Chief Judge Vaughn Walker.

As a final procedural consideration, the Advisory Committee Notes to the federal rules directs courts to consider the "treatment of any award of attorney's fees, with respect to both the

manner of negotiating the fee award and its terms." The Ninth Circuit has identified three related signs as troubling and potentially indicative that a proposed settlement is not in the class's interests: (a) when class counsel receive a disproportionate distribution of the settlement; (b) when the parties negotiate a "clear sailing" arrangement that provides for the payment of attorneys' fees separate and apart from class funds; or (c) when the parties arrange for fees not awarded to plaintiffs' counsel to revert to the defendants rather than the class. *Hyundai*, 926 F.3d at 569; *Bluetooth*, 654 F.3d at 946. Here, none of these typical signs of collusive behavior are present. Specifically, (a) the funds will be used to cover costs and fees and compensate the class based on a *pro rata* formula, (b) there is no "clear sailing" provision, no payment of fees separate and apart from the class funds, and (c) the proposed settlement is a common fund, all-in settlement with no possibility of reversion, and no "kicker" provision which would allow unawarded fees to revert to the defendants. The class notice informed class members that class counsel would make a request for attorneys' fees up to 30 percent of the settlement fund. In sum, all procedural considerations support a conclusion that negotiations occurred at arm's length.

### 3. *Adequacy of Relief to the Class*

Rule 23(e)(2)(C) asks the court to consider whether "the relief provided for the class is adequate" taking into account four enumerated factors.

#### a. *Risks and Costs of the Litigation*

The first factor – "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i) – is analogous to the Ninth Circuit's consideration of the risk, expense, complexity, and likely duration of further litigation, while also examining the strength of plaintiffs' case, the risk of maintaining class action status throughout the trial, and the amount offered in settlement. *Bluetooth*, 654 F.3d at 947-48 (identifying these factors).

Antitrust cases are particularly risky, challenging, and widely acknowledge to be among the most complex actions to prosecute. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible

damages, at trial, or on appeal.'" (quoting *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 475 (S.D.N.Y. 1998))); *see also In re Super. Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990) ("The 'best' case can be lost and the 'worst' case can be won, and juries may find liability but no damages. None of these risks should be underestimated."); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004) (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)) (internal quotation marks omitted); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) (the "antitrust class action is arguably the most complex action to prosecute[;] [t]he legal and factual issues involved are always numerous and uncertain in outcome") (internal quotation marks and citation omitted). This case in particular was intrinsically difficult to litigate due to the scope and length of the conspiracy alleged, the complexity associated with proving the existence of overcharges, and the measure of the pass-through overcharge to the end-consumer. The sheer scale of this litigation required extensive coordination among Class Counsel and the supporting firms in developing pleadings, engaging in motion practice, conducting discovery, and creating economic models to demonstrate damages.

Recovery of $44.95 million in settlements for the indirect purchaser class from these Round 2 Settling Defendants represents a strong result given the sizeable risks, challenges, and costs faced. These Settlements, while compromises, represent a robust result for the Settlement Class, particularly given the risk of nominal or no recovery by the Settlement Class. Indeed, subsequent to reaching these settlement agreements, the Court denied IPPs' initial and renewed motions for class certification, potentially limiting IPPs' recovery to the damages of the Class Representatives only. Recovery of $44.95 million is a significant result given the risks the Settlement Class faced.

### b. *Effectiveness of Distribution*

Rule 23(e)(2)(C) also instructs the Court to take into account the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." IPPs' proposed distribution plan will maximize the effectiveness of the distribution of the settlement proceeds. After any outreach requested by the parties to review the

validity of claims is complete, and the Court approves the Settlements and enters final judgment (which may take several months, pending appeals and Court availability), settlement administrators will send an email to all valid claimants.  The email will provide instructions on how to receive payments electronically via PayPal, Google Wallet, Amazon Balance, and other popular methods. Epiq also will mail physical checks to Settlement Class Members who have requested to receive compensation in that manner.  The Court has worked actively with Class Counsel to ensure that electronic means can be used to increase participation rates.

<em>c.    Terms of Proposed Attorney's Fees</em>

The third factor to be considered under Rule 23(e)(2)(C) is "the terms of any proposed award of attorney's fees, including timing of payment."  Here, the Settlement Agreements do not contemplate a specific award of attorney's fees but provide that any Court-awarded fees will be paid from the Gross Settlement Fund.  IPPs requested a total award of $33,829,176 in attorneys' fees plus interest, just under 30% percent of the total recovery in this case, subject to this Court's approval.

<em>d.    Other Agreements</em>

The final factor of Rule 23(e)(2)(C) instructs courts to consider "any agreement required to be identified under Rule 23(e)(3)." This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."  Fed. R. Civ. P. 23(e) 2003 Advisory Committee Notes.  IPPs have entered into no such agreements.

<strong><em>4.    Equitable Treatment of Class Members</em></strong>

The Court finds that the settlements treat class members equitably relative to each other, consistent with Rule 23(e)(2)(D).  Rule 23(e)(2)(D) requires a court to consider whether members of the settlement class are treated equitably relative to one another, including "whether apportionment of relief among class member takes appropriate account of differences among their claims." Fed. R. Civ. P. 23(e)(2) 2018 Advisory Committee Notes.  The proposed Settlement Agreements do not contemplate any unwarranted preferential treatment of class representatives or

26

segments of the class, a consideration identified by Rule 23(e)(2)(D). While the distribution plan treats the repealer and non-repealer subgroups differently, it does so on reasonable and equitable grounds.

### a. Plan of Allocation

Under the terms of the Settlements, the plan of allocation is left for determination by the Court. After remand, IPPs recommend allocating ninety percent of the settlement funds to Class Members making purchases in repealer states, and the remaining ten percent to Class Members making purchases in non-repealer states, and the plan of allocation as to settlements with other defendants to the litigation.

As previously stated, the Court agrees with this recommendation. It is appropriate for class members from non-repealer states to receive a limited recovery because, although their claims were relatively weak compared to repealer state class members, they were still active litigants in the case, and their claims were not finally foreclosed. Thus, in recognition of the fact that such releases themselves have some risk-discounted value, the Court finds the distribution plan allocating 90 percent of the settlement funds to purchases made by Class Members in repealer states and ten percent of the settlement funds to purchases made by Class Members in non-repealer state to be proper.

### b. Late Claims

In their motion for approval, IPPs' argued that the 1,289 paper claims that the Class Administrator received after the claims filing deadline, should not be allowed because they would dilute the existing timely claims. Counsel appearing on behalf of 228 members of the Settlement Class who submitted late claims argued that class members were not aware of their eligibility to participate prior to the July 19, 2019 claims deadline, but diligently pursued their claims once they were aware. (Dkt. No. 2623.)[14]

Here, the history of the case has been convoluted, including the necessity of renoticing the settlement and distribution plan for the settlements post-remand. These claimants would be subject

---

[14] At the December 8, 2020 hearing, IPPs' objections to the late claims were withdrawn.

to the release in the settlement without any compensation. Moreover, including these late claims will not delay the claims and distribution process in any substantial way. Thus, the Court finds that principles of equity and fairness support allowing the 1,289 claims identified in Class Counsel's motion for final approval.

The Court **ORDERS** that the 1,289 claims identified in Class Counsel's motion for final approval shall be deemed timely submitted. Further, **all claims submitted prior to December 15, 2020** shall be deemed timely submitted.

### E.    Additional Approval Factors

#### 1.    Notice

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(l)(B). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice [of particular information] to all members who can be identified through reasonable effort[.]" Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (*See* Dkt. No. 2571.) The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website[15] has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors

---

[15]  The case website is found at www.ReverseTheCharge.com.

1    to the website.  In the same period, the toll-free telephone number available to class members

2    received 515 calls.

3                  **2.        *Reaction of Class Members and Objections***

4            The Northern District Procedural Guidance, as well of the law of this Circuit, provide that

5    the reaction of class members to the proposed settlement should be considered.  IPPs' notice

6    program reached millions of consumers who purchased the consumer products involved in this

7    case.  Over one million class members filed claims.  Only four objections were received out of

8    millions of class members, and only twenty-one class members requested exclusion[16] from the

9    class.  The reaction of the class favors approval of the settlement.

10           Four objections to the settlements and/or attorneys' fees were filed by objectors Michael

11   Frank Bednarz and Gordon Morgan, Christopher Andrews, and Edward Orr.  The bulk of their

12   objections (and the entirety of those filed by Bednarz and Morgan) concerned the request for

13   attorneys' fees and will be addressed in connection with the ruling on the renewed motion for

14   attorneys' fees, below.  (*See* section IV(B), *infra*.)

15           **Andrews:**  On the merits of settlement approval itself, Mr. Andrews contends that the

16   settlements should be rejected in their entirety because IPPs' counsel failed in their fiduciary duties

17   to class members in the 30 repealer states.  Mr. Andrews asserts that non-repealers' claims were

18   never viable and they should recover nothing, since their recovery would dilute the claims of

19   repealer state class members.  In addition, Mr. Andrews argues that class representative incentive

20   awards amount to "selling out" unnamed class members, particularly with respect to the higher

21   incentive awards to the City Entity plaintiff representatives.  Finally, Mr. Andrews contends that

22   the settlement agreements are defective in that they do not detail the rights, duties, and obligations

23

24

25

26           [16]  The Court notes that, on March 26, 2020, Paul Schultz filed a letter requesting to rescind his
     February 14, 2020 request for exclusion and to rejoin the class so that his claims would be
27   considered.  (Dkt. No. 2593.)  Mr. Schultz's name does not appear on the exclusion list provided
     by IPPs, and the Court presumes his claims have not been excluded.
28

1    of the Class Settlement Administrator, including handling of personal identifying information, and

2    that there are discrepancies in the signature dates by defendants' representatives.[17]

3        **Orr:** Objector Mr. Orr asserts that a single settlement class is unlawful where there are

4    substantial material differences in state law. More specifically, he objects that recovery by non-

5    repealer class members under the 90/10 distribution plan makes the settlement unjust and improper.

6        First, as set forth more fully above, the Court does not find merit in Mssrs. Andrews' and

7    Orr's objections to class certification or to the distribution plan based upon intraclass differences as

8    to *Illinois Brick*. The objections appear to be directed to the typicality, adequacy, and

9    predominance factors discussed by the Court above and are overruled for the reasons stated herein.

10   Non-repealers' claims were subject to continued litigation, including on appeal, regardless of their

11   relative weakness or value. Certification of a class encompassing those claims for purposes of

12   settlement is permissible, and a distribution plan taking those relative strengths and risks into

13   account is fair and adequate.

14       Mr. Andrews' objection to the service awards for named plaintiffs is without merit. Such

15   awards are a typical feature of class action settlements, granted at the discretion of the court as

16   compensation for the special role played by class representatives, to make up for the additional

17   work and responsibilities of the role and the financial or reputational risks it might involve. *See*

18   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing multiple authorities).

19       Finally, the Court rejects Mr. Andrews' objections that the Settlement Agreements are

20   otherwise defective. The Court does not find the Settlement Agreements suspect due to the

21   signature dates, nor are they deficient for failure to include a more detailed statement of the Class

22   Administrator's claims and data-handling procedures. However, for purposes of clarification, the

23   Court **ORDERS** that the Class Administrator shall ensure that personal identifying information of all

---

[17] Mr. Andrews offered additional objections in a supplemental filing after the hearing on this matter. (Dkt. No. 2644.) Objectors were given leave to respond to the information in the previously sealed Hagens Berman bid. Mr. Andrews' new objections fall out the scope of the supplemental briefing permitted by the Court. Moreover, Mr. Andrews' claims that the Settlement Administrator and Class Counsel have permitted the class website to include tracking "cookies" that illegally "spy" on class members and violate their privacy lack evidentiary support. These new objections are **OVERRULED**.

class members is destroyed within 30 days after the IPPs' submission of its final accounting on the distribution of settlement funds and shall file a certification with the Court to that effect.

In summary, the Court finds that the proposed Round 2 Settlements are fair, reasonable, and adequate, and they are **APPROVED**.

Likewise, the distribution plan as set forth above as to the Round 2 Settlements is **APPROVED** and claims submitted by **December 15, 2020**, are **DEEMED TIMELY**.

## IV. IPPs' REQUEST FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

IPPs have submitted a renewed motion for an award of attorneys' fees, expenses, and class representative awards from the total $113.45 million dollar settlement fund as follows:

(1) a total of $33,829,176 in attorneys' fees—just under 30 percent of the settlement fund;

(2) reimbursement of expenses incurred in connection with this litigation totaling $6,751,735.84; and

(3) service awards for each of the class representatives—$10,000 for each of the twenty-one individual class representatives and $25,000 for each of two governmental entity class representatives.

These amounts are identical to what the Court previously awarded in its original decision on fees for IPP Class Counsel.[18]  (*See* Dkt. 2516.)  No additional costs or fees incurred in the course of the appeals are sought.  Objectors submitted arguments against the attorneys' fees sought here, as detailed below.

### A.    Reasonableness of Attorneys' Fees Sought

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

---

[18]  These total amounts sought include the $4,495,000.00 this Court already awarded as interim attorneys' fees and the $860,188.50 awarded as interim costs.  *See* October 27, 2017 Order Granting In Part And Denying In Part, Without Prejudice, Motion For An Award Of Attorneys' Fees, Reimbursement Of Expenses, and Service Awards ("Interim Award"). (Dkt. No. 2005.) Likewise, the total amount sought in this motion reduced the request by the $205,824.00 in fees for the unauthorized third motion for class certification as previously disallowed by the Court. (*See* Dkt. Nos. 2513 at ¶ 1 and 2516.)

already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). A district court must adequately explain its reasoning in reaching a fee award determination such that a reviewing court can conduct a meaningful review of the award's reasonableness. *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) (per curiam); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

"Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" in determining an award of attorneys' fees. *In re Bluetooth,* 654 F.3d at 942. "Because the benefit to the class is easily quantified in common-fund settlements," courts in the Ninth Circuit typically employ the percentage of the common fund method and a benchmark rate of 25%. *Id.*; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) ("the primary basis of the fee award remains the percentage method," with the lodestar used "as a cross-check on the reasonableness of a percentage figure.").

However, that 25% benchmark may not be reasonable if it would result an award "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Particularly "where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the [low] hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). The preliminary question, however, is whether a given percentage of the fund would constitute an unreasonable multiplier of counsel's lodestar. *See Vizcaino*, 290 F.3d at 1052-54 (citing survey of "megafund" cases finding that 83% of fee awards in such cases amounted to multipliers on top of counsel's lodestar ranging from 1.0-4.0). Here, the concerns that class counsel will receive a windfall if awarded fees at or near the normal benchmark do not arise. Counsel's request for an award just under 30% of the fund amounts to a negative multiplier (approximately 0.82) of Class Counsel's $41,458,223.50 total lodestar request for the case; a 25% benchmark award would result in an even greater negative multiplier. Further, as noted, the Court

has already ordered Class Counsel not to submit fees for certain actions taken.

In determining the reasonableness of a fee request, the Ninth Circuit has directed courts to consider these additional factors: (1) the market rate for the particular field of law; (2) whether counsel achieved exceptional results for the class; (3) whether the case was risky for class counsel; (4) whether the case was handled on a contingency basis; and (5) the burdens class counsel experienced while litigating the case. *Online DVD*, 779 F.3d at 955. The Ninth Circuit has held that a fair fee award must include consideration of the contingent nature of the fee and the risk counsel assumed. *See, e.g.*, *id.* at 954-55 & n. 14; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

The Court has conducted a review of the declarations, summaries, and records submitted and finds that the lodestar calculation is reasonable. IPPs' lodestar calculation was made using a blended rate of $467.10 per hour for attorneys, well below the average blended billing rate of $528.11 per hour for forty approved class action settlements in the Northern District of California in 2016 and 2017. (*See* Joint Decl. [Dkt. No. 2487-2] at Exh. 2, William B. Rubenstein Declaration, at 16-18.) The total hours among the 40 firms was 101,048, with the three lead counsel's hours comprising over 70% of those hours and the next largest portion incurred by the group of firms primarily engaged in managing class representative discovery, high-level document translation and foreign-language document analysis. (*Id.* at ¶ 71, Exh. 1.)

Here, in light of the circumstances of the case, the results achieved for the class are excellent. Based upon IPPs' estimates, the common fund of the settlement equates to 11.7 percent of the single damages a nationwide class would have sustained during the eleven-and-a-half-year class period. Further, the litigation entailed a great deal of risk and cost shouldered by counsel on a contingency basis for seven years. The Court, concerned with the role of litigation funders, met with Class Counsel to ensure that no such funders were involved in the litigation and that Class Counsel themselves were financing the litigation. The record before the Court demonstrates that Class Counsel devoted substantial time to the litigation, foregoing other work. These factors all

weigh in favor of finding IPP Class Counsel's fee request to be reasonable.[19]

### B.  Objections to Attorneys' Fees

#### 1.  *Bednarz's Objection to Fees*

First, Mr. Bednarz argues that an award of 30% of the settlement fund is unreasonable as a general matter and particularly due to the megafund nature of the settlement fund here which should lead to economies of scale and a lower percentage award of fees. However, for the reasons set forth above, the concerns about awarding an amount that would constitute a windfall to counsel here are removed by the fact that the amount sought would be less than counsel's reasonable lodestar.

Second, Mr. Bednarz contends that IPP Class Counsel's baseline fee award should be limited in accordance with the fee bid submitted by Hagens Berman in connection with its motion to be appointed sole interim class counsel at the start of this litigation. Mr. Bednarz contends that IPP counsel, or at a minimum Hagens Berman, should be held to the bid it submitted at the beginning of the case and, from this baseline, the Court should make deductions to account for class counsel's failed Round 2 settlement proposals. Bednarz further contends that the bid represents an appropriate market rate for calculating the fees here.

As stated in the Court's previous order of November 18, 2019, the fee bid information was redacted from the declaration submitted by Steve W. Berman to the Court in support of the Hagens Berman motion (Dkt. No. 108-1) and, despite an order granting a motion to seal, no unredacted version of the declaration was docketed as part of the Court's records. (*See* Dkt. No. 2560 [Order Denying Motion for Clarification re: Unredacted Bid]; *see also* Dkt. No. 216.) In connection with the current motion, the Court ordered Hagens Berman to submit the unredacted version of the declaration and has permitted objectors to respond to that new information. They have done so.

---

[19] Courts in this district in similar antitrust litigation have awarded attorneys' fees constituting similar percentages of the total fund as sought here. *See, e.g.*, *In re CRT*, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) (30 percent for IPP settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) (28.6 percent for IPP settlement); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819-CW (N.D. Cal. Oct. 14, 2011), Dkt. No. 1407 (33 percent for IPP settlement).

Where "class counsel secures appointment as interim lead counsel by proposing a fee structure in a competitive bidding process, that bid becomes the starting point for determining a reasonable fee." *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 934–35 (9th Cir. 2020). Here, however, class counsel did not secure appointment based upon a competitive fee bidding process. Rather, the Court determined that a tripartite leadership structure was the more reasonable approach for this litigation given its size and complexity. The Court further ordered that all counsel abide by specified guidelines to "balance[e] efficiency with the need to maintain quality and thoroughness in prosecuting this case." (Dkt. No. 202, Exh. A at 2; *see also* Dkt. Nos. 145, 148, 194.) As the Court previously clarified, it did not consider the redacted portion of the Berman declaration in reaching its decision to appoint interim lead counsel. Rather, the Court engaged in a lengthy and robust proceeding, hearing from counsel from across the United States with respect to the appropriate nature and membership of the leadership structure. (*See* Transcript of Proceedings April 3, 2013, Dkt. No. 148, at 50:4-85:16.) By the end of the proceeding, Mr. Berman himself withdrew his request to proceed alone and agreed to the tripartite leadership. (*Id.* at 78:13-80:14.) Likewise, as previously indicated, the Court does not consider the bid to be relevant to the present motion to determine the reasonableness of the request for attorneys' fees now before it.

Third, Mr. Bednarz argues that fees should be reduced based upon IPPs' counsel's continued advocacy for an equal pro rata distribution to all class members which he contends was unfair to those in the repealer states and created a representational conflict of interest. Mr. Bednarz contends that this conflict supports a reduction, if not outright denial of fees, citing *Rodriguez v. Disner*, 688 F.3d 645, 653, 655 (9th Cir. 2012) ("*Rodriguez* II") ("The representation of clients with conflicting interests and without informed consent is a particularly egregious ethical violation that may be a proper basis for complete denial of fees," and the court has the power to deny or reduce fees based thereon). Mr. Bednarz contends class counsel pressed the proposed pro rata distribution, contrary to a majority of similar, state-law antitrust settlements in this district.[20]

---

[20] Bednarz cites three decisions from this district, all of which are arguably distinguishable. In *ODD*, the settlement class was limited to the class previously certified by the court. *In re ODD*,

35

1    Further, IPPs' counsel continued to press that position in opposition to his appeal of the Round 2

2    settlements, even though they were proposing a 90/10 split to the Court in connection with the

3    Round 3 settlements before this Court. Bednarz argues that this resulted in the entire class paying

4    increased notice costs after remand, which reduced and delayed their recovery.

5         The Court finds this objection without merit. Counsel acted as zealous advocates in

6    opposing to Mr. Bednarz's appeal seeking to vacate the Round 2 settlements. As the Court

7    specifically noted in its original order granting final approval of the Round 2 settlements, *no

8    distribution order had yet been approved nor details of a plan provided.* Indeed, the order

9    specified when such details were to be provided to the Court for its determination of what plan

10   would be fair, reasonable, and adequate. To the extent Bednarz rested his appeal on a premature

11   objection to the not-yet determined distribution plan, it was he, not class counsel that occasioned

12   delay. Moreover, class counsel does not seek attorneys' fees for its time defending Bednarz's

13   appeal, nor for the additional hours incurred upon remand to provide additional notice to the class

14   of the specifics of the allocation plan, but only a reinstatement of the fee award the Court

15   previously entered. (*See* Motion for Attorneys' Fees, Dkt. No. 2588, at 1:9-11; 2:25-26.) Further,

16   as stated above, the Court finds no intraclass conflict and thus no breach of Counsel's fiduciary

17   duties to represent all members of the class, in contrast to *Rodriguez*.[21] Even if counsel argued for

18

---

19   2016 WL 7364803, at *2 (N.D. Cal. Dec. 19, 2016), *vacated and remanded,* 959 F.3d 922 (9th Cir.
     2020), and *aff'd,* 804 F.App'x 445 (9th Cir. 2020). Similarly, the TFT-LCD approval order cited by
20   Bednarz concerned settlement approval after the court granted class certification. *In re TFT-LCD
     (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *2 (N.D. Cal. Apr. 3, 2013).
21   In the *CRT* litigation, plaintiffs contended the complaint alleged only injunctive relief for non-
     repealer state class members, which they contended was valueless at the time of settlement due to
22   the "unlikelihood of future violations" as to a nearly obsolete product. *In re: CRT Antitrust Litig.*,
     2016 WL 721680, at *5, 23-25 (N.D. Cal. Jan. 28, 2016) (concluding that, regardless of ambiguity
23   in the prayer, a reasonable reading of the operative complaint limited non-repealer class members
     to valueless claims that could be released without compensation).

24
         [21] In *Rodriguez*, the Ninth Circuit held that a conflict in representation arose from counsel's
25   agreements with individual class representatives at the outset of the litigation, establishing
     progressively increasing incentive payments tied to settlement. The Ninth Circuit found that these
26   agreements incentivized settlement of the case over further litigation, putting class representatives'
     interests at odds with those of unnamed class members and creating a conflict in counsel's
27   representation and duty of loyalty to unnamed class members. *See Rodriguez v. West Publ'g Corp*,
     563 F.3d 948, 959, 968 (9th Cir. 2009) ("*Rodriguez* I").

28

simple pro-rata distribution in opposition to Bednarz's appeal, the Court had not entertained or decided the details of such a proposal.

### 2. Morgan's Objection to Attorneys' Fees

Mr. Morgan also objects that the Hagens Berman bid should be taken into account as a measure of the market rate, at a minimum with respect to any award to that firm. He also asserts an objection to the percentage of the fund sought here on the grounds that it is a megafund and that it is out of step with the empirical data on other similar class settlements. For the reasons set forth above, the Court finds these objections without merit.

In addition, Mr. Morgan objects that class counsel's declarations do not clearly address whether they have taken interest on the prior fee award or refunded that interest after the award was vacated. The Court finds Class Counsel's verification on the record during the May 20, 2020 hearing sufficient. (Dkt. No. 2632 at 18.) Nevertheless, Class Counsel is directed to account for any interest as part of the final accounting of distribution of funds required by the Court, *infra*.

### 3. Andrews' Objection to Attorneys' Fees

In addition to his objections to elements of the settlement, Mr. Andrews lodged objections to class counsel's attorneys' fee request. Andrews echoes the objections of Bednarz regarding the megafund nature of the case and the impropriety of such a large percentage of the fund as fees.[22] He objects that hours are inflated or insufficiently accounted for, including excessive rates, block billing, vague entries, improper rounding, clerical work, excessive time spent (which in some cases Andrews characterizes as "mathematically impossible"), inefficiency, and overstaffing. He further objects to the demand for interest. The Court further rejects Mr. Andrews' objection that Steve W. Berman should be disqualified as incompetent as lacking in a substantial factual or legal basis.[23]

---

[22] Andrews contends that he, not Bednarz, raised this issue first, and therefore he is entitled to attorneys' fees for his objection benefitting the class. Even if that were the case, Mr. Andrews is self-represented and therefore not entitled to attorneys' fees.

[23] Mr. Berman appeared and was granted *pro hac vice* status in this action well over seven years ago. Mr. Andrews' objection that his *pro hac vice* status should now be revoked because he has appeared *pro hac vice* an excessive number of times in this district is **OVERRULED**. Not only is the case nearly complete, but MDL courts routinely allow *pro hac vice* status for the efficient management of these nationwide cases.

Finally, Andrews objects that numerous attorneys billed for time who were "never given permission to join the litigation and bill the class in the first place," and any firms representing the non-repealers should not be paid.

The objections are without merit. The Court has already addressed most. The Court notes also that a protocol was implemented from the outset to manage billings and Class Counsel provided quarterly reports regarding billings to the Court. This allowed a mechanism for Class Counsel themselves to challenge any firm seeking ultimate payment for inefficient or unauthorized work on an ongoing basis. Further, the Court's appointment of interim lead counsel in this multi-district litigation does not preclude payment of attorneys' fees to counsel for the classes alleged in the member cases in this multi-district litigation. (*See* Dkt. No. 194, Order Appointing Interim Co-Lead Counsel and Liaison Counsel.)

## C. Attorneys' Fee Award

Based upon the foregoing, the Court finds that a total attorneys' fee award of $33,829,176.00, is fair and reasonable. The award amounts to just under 30 percent of the settlement fund. Courts in this district in similar antitrust litigation have awarded attorneys' fees constituting similar percentages of the total fund as sought here. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) (30 percent for IPP settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) (28.6 percent for IPP settlement); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819-CW (N.D. Cal. Oct. 14, 2011), Dkt. No. 1407 (33 percent for IPP settlement).

The Court therefore awards Class Counsel the amount of **$33,829,176.00** (less the $4,495,000.00 from the Interim Award), together with a proportional share of interest earned on the Settlement Fund for the time period until dispersed. Co-Lead Class Counsel shall allocate the fees and reimbursement of expenses among themselves and supporting counsel in a fair and equitable manner that, in Co-Lead Class Counsel's good-faith judgment, reflects each firm's contribution to the institution, prosecution, and resolution of the litigation.

**D.      Expenses**

IPP Class Counsel request reimbursement of $6,751,735.84 in unreimbursed expenses (less the $860,188.50 the Court previously ordered as an interim award).  The bulk of the total consists of three types of expenses – economic experts and consultants ($4,857,677.85), online document database services ($951,168.46), and payment for translations and interpreters ($239,037.66).  (*See* summaries at Dkt. No. 2487-4 [Berman Decl.] at Exh. 5; Dkt. No. 2487-5 [Glackin Decl.] at Exh. 6; Dkt. No. 2487-6 [Zapala Decl.] at Exh. F; Dkt. No. 2487-2 [Joint Decl.] at Exhs. 4, 15, summarizing expenses paid from the litigation fund and directly by Class Counsel.)

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  A request for such expenses should be supported by an itemized list of expenses by category and the amount advanced for each.  *See Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, with respect to the request for expenses, Mr. Andrews objected that Class Counsel improperly sought the following: large amounts not covered by receipts; non-taxable costs; double billing for experts; and recovery of *pro hac vice* application fees.  The Court rejects these arguments.  The claimed expenses are documented sufficiently and are reasonable.  While there is a split of authority concerning whether such fees are taxable costs under 28 U.S.C. section 1920, class counsel are not limited to recovery of only taxable costs.  *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); *Competitive Techs. v. Fujitsu Ltd.*, No. C-02-1673 JCS, 2006 WL 6338914, at *4 (N.D. Cal. Aug. 23, 2006) (describing split of authority and noting that the Ninth Circuit has not addressed question but agreeing with other district courts that such costs are not taxable); *see also* 5 NEWBERG ON CLASS ACTIONS § 16:10 (5th ed.) (class counsel can recover reasonable nontaxable costs including counsel's out-of-pocket expenses).

The Court finds that the expenses sought here are fair and reasonable. The Court further notes that it required Class Counsel to explain and confirm that it negotiated with experts to obtain the discounts and other reductions on behalf of the class. Class Counsel shall be reimbursed for their out-of-pocket expenditures as requested.

### E.      Service Awards

IPPs also request that the Court approve service awards for each of the class representatives--$10,000 for each of the twenty-one individual class representatives and $25,000 for each of two governmental entity class representatives, to be deducted from the common settlement fund. The class representatives have spent a significant amount of time assisting in the litigation of this case, including time spent in depositions and responding to discovery. Named plaintiffs are eligible for reasonable incentive payments to compensate them for their participation in the litigation, including discovery, and the personal financial or reputational risk they may suffer in bringing the action on behalf of the unnamed class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Here, the named class members invested a substantial amount of time and effort in the litigation, continuing to pursue the litigation through adverse determinations to settlement and declining incentives to settle individually. The Court finds the service awards appropriate in the circumstances of this long-running litigation. The class representatives were awarded $1,500.00 in the Interim Award. Therefore, an additional $225,500.00 ($8,500 for each of the twenty-one individual class representatives and $23,500 for each of two governmental entity class representatives) shall be distributed from the common settlement fund.[24]

//

---

[24] The Court notes that the objections of Christopher Andrews, filed October 13, 2020 (Dkt. No. 2663) with respect to class representative service awards are both untimely and wholly without merit. Reasonable service awards have long been approved in the Ninth Circuit. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019) (reasonable incentive awards are permitted to compensate class representatives for work on behalf of the class, financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general) (citing cases). The Court declines to follow the recent holding of the Eleventh Circuit suggesting such awards are unlawful. *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020).

**F. Settlement Administrator Fees**

This Court previously approved payment of taxes, tax expenses, notice, and administrative costs as set forth in the Settlement Agreements. (Order Directing Notice to the Class, Dkt. No. 2475, ¶ 9.) The Administrator has estimated that there will be a need for up to an additional $10,000.00 to pay for future costs of distribution, including issuance of checks. The Court **GRANTS** IPPs' request to pay up to $10,000.00 in additional costs from the settlement fund.

**V. PLAN OF DISTRIBUTION AS TO SONY SETTLEMENT (ROUND 1)**

As set forth in this Court's Order of August 27, 2020, directing further notice to all class members regarding the plan of distribution for the settlements in this action (Dkt. No. 2651), the Court has conducted a searching review of the record herein and Court finds that allocation and distribution for all settlement funds in this matter should be consistent with its August 16, 2019 Order, that is the 90/10 proportionate pro rata distribution plan distinguishing between class members in *Illinois Brick* repealer vs. non-repealer states. As stated therein, the Court previously expressed concerns regarding approval of generalized distribution plans in the context of early settlements in these complicated, multi-defendant cases litigated over the span of many years. While a general plan of distribution—pro rata based on the number of claimed devices—supported a finding of fairness of the settlement itself, consideration of a more specific plan at the time of distribution was contemplated in each of the settlement agreements and final fairness orders approving those agreements. (*See, e.g.,* Dkt. No. 1712, Sony Final Approval Order, at ¶ 15 [expressly retaining jurisdiction over the plan of allocation].)

Class members were given notice of the Court's intention to order such a distribution plan and to submit objections. Six individuals submitted objections regarding the plan of distribution: Matthew Erickson, Steven F. Helfand, Christopher Andrews, Aryeh Katz, Michael Frank Bednarz, and Edward Orr. (Dkt. Nos. 2659, 2662, 2663, 2666, 2668, 2669.) All are self-represented save for Mr. Bednarz. The Court summarizes the objections as follows:

(1) Mssrs. Erickson and Katz, as residents of non-repealer states, object that the 90/10 proportionate pro rata distribution plan treats them unfairly and an equal pro rata

distribution should be ordered. Mr. Katz specifically requests the option to opt out of the
class absent an equal pro rata distribution plan.

(2) Mr. Andrews contends that those in non-repealer states had no right to recover,
that no changes to the distribution plan should be made on their behalf, and that residents of
repealer states should not have their recovery diluted by the non-repealer state class
members. He, too, indicates that class members should be permitted opt-out if the 90/10
distribution plan is approved.

(3) With respect to the class notice regarding the distribution plan, Mssrs. Helfand
and Andrews each raise arguments that the notice concerning the Court's revision to the
distribution plan was misleading because it focused only on that distribution plan and did
not provide an opportunity to object to other terms of, or request exclusion from, the
settlement agreements.

(4) Mr. Bednarz raises the additional objection that the Court has no authority to
revise the distribution plan absent an order voiding the judgments entered in connection
with the final fairness approvals of the prior settlements.

(5) Both Mssrs. Bednarz and Orr object that class counsel should bear the expense of
the additional, Court-directed notice concerning the distribution plan.

The Court has considered the objections and concludes that they do not overcome the
reasons, as stated herein, for finding a 90/10 proportionate distribution represents the fairest
allocation among class members for all settlement funds in this matter, including the Round 1
Settlement with the Sony Defendants. The Court has discretion to determine an appropriate plan of
allocation without setting aside its orders or judgments granting final approval of the settlements
themselves, both by the terms of the settlement agreements and under relevant authorities. *See
Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1275 (9th Cir. 1992) (affirming final approval of
class action settlement entered one year prior to final approval of plan of allocation); *Union Asset
Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012) (where settlement terms made
approval of settlement terms separate from determination of distribution plan "[a] change in the

plan . . . gives no reason to reject the settlement"); *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 170 (2d Cir. 1987) *cert. denied,* 484 U.S. 1004 (1988) (approval of settlement fund can be granted prior to adoption of a distribution scheme "so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement" and to require otherwise "would immensely complicate settlement negotiations and might so overburden the parties and the district court as to prevent either task from being accomplished."); *see also* 2 MCLAUGHLIN ON CLASS ACTIONS (16th ed.) § 6:23 ("court approval of a settlement as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of allocation . . . courts frequently approve them separately"); MANUAL COMPLEX LIT. (4th ed.) § 21.312 ("Often . . . the details of allocation and distribution are not established until after the settlement is approved."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, No. MDL 551, 1988 WL 158947, at *3–4 (W.D. Wash. July 28, 1988) ("deferral of allocation decisions is routinely followed in partial settlements where the appropriate allocation among class members can best be determined when further settlements have been achieved or the litigation is completely resolved."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 480 (S.D.N.Y. 1998) ("it is appropriate, and often prudent, in massive class actions to follow a two-stage procedure, deferring the Plan of Allocation until after final settlement approval, as here."). Thus, Mr. Bednarz's argument that the Court must void the prior settlement approval in order to revise the allocation plan as to the Sony settlement is without merit.

Further, prior to final approval of all of the settlements herein, all class members were given notice that the amount they would receive from the settlement distribution was unknown, that the Court had authority to determine the details of the claims and distribution plan at a later time, and that they must request to exclude themselves from the settlements by a date certain before that distribution. Alterations to the distribution plan do not alter the finality of the certification decision nor the finality of a class member's decision not to request exclusion. No new opportunity to opt-out, years later, was required. *Cf. Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) ("we have found no authority of any kind suggesting

43

that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out" after learning what individual remedy they would obtain); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("Neither due process nor Rule 23(e)(3) requires, however, a second opt-out period whenever the final terms change after the initial opt-out period. Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached").

Finally, no objector offers any authority indicating that class counsel should bear the expense of the notice plan directed by the Court with respect to the revised distribution plan and the Court finds no reason to so order.

## VI.  CONCLUSION

Based upon the foregoing, the Court **ORDERS**:

(1) The proposed Round 2 Settlements are fair, reasonable, and adequate and are approved.

(2) The Court finds the distribution plan to allocate 90% of settlement funds to class members from repealer states and 10% of settlement funds to class members from non-repealer states as to all settlement funds contributed by *all* defendants in this matter to be fair and equitable.

(3) All late claims submitted prior to **December 15, 2020** shall be deemed timely.

(4) IPPs' counsel are awarded a total of **$33,829,176.00**, less the $4,495,000.00 from the Interim Award, together with a proportional share of interest earned on the Settlement Fund for the time period until dispersed.

(5) IPPs shall be reimbursed their out-of-pocket expenditures in the amount of $**6,751,735.84**, less the $860,188.50 interim award;

(6) the class representatives shall be paid total service awards of $260,000, less the prior interim awards, which constitutes a service of award of $10,000 for each of 21 individual class representatives and $25,000 for each of two governmental entity class representatives.

(7) the class administrator shall be paid additional administrative costs up to $10,000.00 from the settlement fund.

44

(8) The Court **SETS** a compliance deadline of **January 29, 2021**, at which time IPPs are directed to submit a status update on the distribution process and guidelines to be provided to the class concerning contesting ineligibility, and a proposed form of final distribution order.

(9) Within 60 days of the final distribution, IPPs shall submit an accounting of the distribution, including distribution of interest on the settlement fund. Within 30 days thereafter, IPPs shall certify that they have destroyed personal identifying information of all class members.

(10) IPPs' administrative motion (Dkt. No. 2637) to strike the late, duplicative filings of Mr. Orr in at Docket No. 2631, filed May 19, 2020, is **DENIED AS MOOT**. The Court reviewed Mr. Orr's filings in reaching the decision herein.

(11) the unopposed motion of Shiyang Huang to file a late claim (Dkt. No. 2645) is **GRANTED**. The claim shall be considered to have been submitted timely.

This terminates Docket Nos. 2588, 2613, 2637, 2645.

**IT IS SO ORDERED.**

Dated: ___December 10, 2020___

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**