# EXHIBIT 15

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:   jsaveri@saverilawfirm.com
         swilliams@saverilawfirm.com
         areddy@saverilawfirm.com
         cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>THE DIRECT PURCHASER CLASS ACTION | Master File No. 3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**DECLARATION OF KENDALL S. ZYLSTRA IN SUPPORT OF THE DIRECT PURCHASER CLASS'S MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS FOR SECOND ROUND SETTLEMENTS WITH HITACHI CHEMICAL AND SOSHIN** |

Master File No. 3:17-md-02801-JD
Civil Action No. 3:14-cv-03264-JD

**DECLARATION OF KENDALL S. ZYLSTRA ISO THE CLASS'S MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS FOR SECOND ROUND SETTLEMENTS**

I, Kendall S. Zylstra, hereby declare as follows:

1. I am a Senior Vice President at Rust Consulting, Inc. ("Rust"). I submit this declaration in connection with the above-captioned matter at the request of the Joseph Saveri Law Firm, Inc., Lead Class Counsel for the Direct Purchaser Class (the "Class"). I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts set forth herein. Under my direction, Rust has been responsible for reviewing, analyzing, auditing and processing claim forms to the Class members in the above captioned litigation, including in relation to the First Round of Settlements in this litigation.

2. Under the supervision of, and at the direction of Class Counsel, Rust has complied with the allocation plan as approved by the Court, providing that Settlement Funds should be distributed based on each claimant's *pro rata* share of Capacitors directly purchased from Defendants during the relevant time period (the "Allocation Plan"). MDL ECF No. 249, ¶ 12. In so doing, Rust "calculate[d] the dollar value of each Settlement Class member's claim in proportion to the total claims submitted." MDL ECF No. 1989, at 31. In addition, and at the direction of Class Counsel, Rust has also calculated the value of valid incorporated capacitor claims consistent with Special Master's Report and Recommendation Regarding the Valuation of Incorporated Capacitors Claims (the "Valuation R&R"), MDL ECF No. 1440, and calculated and review each claimant's *pro rata* share accordingly.

3. Under my supervision of the work Rust performed in processing and auditing claim forms submitted by the Settlement Class, Rust has fully complied with the Allocation Plan and conducted a thorough review and audit of all claims submitted by members of the Settlement Class, including claims for purchases of incorporated capacitors. Rust reviewed all submissions and notified claimants in writing of any denials or adjustment. Rust also provided every claimant with an opportunity to dispute any such denials or adjustments.

4. In connection with the audit process:

    a. Rust checked whether claim forms were timely submitted and ensured that they were signed by an appropriate representative.

    b. If a submitted claim form accepted the amount of U.S. purchases that were pre-populated in the claim form based on Defendants' transactional data (or was based on

Master File No. 3:17-md-02801-JD
Civil Action No. 3:14-cv-03264-JD

1

**DECLARATION OF KENDALL S. ZYLSTRA ISO THE CLASS'S MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS FOR SECOND ROUND SETTLEMENTS**

submitted commerce that had already passed audit for the First Round Settlements), the reported amount was used in calculating the submitting Settlement Class member's distribution under the Allocation Plan.

    c. If a submitting Settlement Class member claimed purchases in excess of the amount reported in Defendants' transactional data (or the amount that passed audit in the First Round Settlements), and such increase would have resulted in an increased distribution from the Settlement Fund less than $1,000, before accepting the claim, Rust required a (i) summary report from the Settlement Class members' business records and (ii) certification that the claimed transactions related to direct purchases of aluminum, tantalum or film capacitors ("Capacitors") from Defendants that were shipped to or invoiced to an address in the United States from January 1, 2002 through July 22, 2015 (the "Settlement Class Period").

    d. If a submitting Settlement Class member claimed purchases in excess of the amount reported in Defendants' transactional data (or the amount that passed audit in the First Round Settlements), and such increase would have resulted in an increased distribution from the Settlement Fund greater than $1,000, then in addition to the report and certification required under paragraph (c) above, Rust and/or Class Counsel requested relevant back-up (such as invoices, purchaser orders, payment receipts, or screenshots from the company's accounting or purchasing software) for a random sampling of the reported transactions. For each of these claims, Class Counsel reviewed the randomly selected back-up to (i) verify the integrity of the submitting Class Member's business report and (ii) confirm that the reported transactions related only to direct purchases of capacitors from Defendants that were shipped to or invoiced to an address in the United States during the Settlement Class Period. In addition, Class Counsel reviewed certain back-up submitted by Settlement Class Members to double-check the work performed by Rust to ensure accuracy and compliance.

    e. If a submitting Settlement Class member provides satisfactory proof or a sworn declaration that: (i) documentary evidence or business records substantiating qualifying purchases of Capacitors have been destroyed for prior years (the "Gap Period"); (ii) there is a reasonable explanation for such destruction; and (iii) the Settlement Class member made qualifying purchases of Capacitors during the Gap Period reasonably consistent with the volume of purchases

Master File No. 3:17-md-02801-JD
Civil Action No. 3:14-cv-03264-JD

2

**DECLARATION OF KENDALL S. ZYLSTRA ISO THE CLASS'S MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS FOR SECOND ROUND SETTLEMENTS**

|   |   |
|---|---|
| 1 | made during the closes years where documentary evidence of qualifying purchases are available, then a reasonable extrapolation for purchases during the Gap Period will be permitted based on the average qualifying purchases for the closest years with documented qualifying purchases. |

5. In light of the Valuation R&R, MDL ECF No. 1440, and at Class Counsel's direction, Rust notified Settlement Class members via email and certified mail of their right to supplement their Second Round Settlement claims based on claims of incorporated capacitors. Rust received no supplemental claims for incorporated capacitors.

6. Class Counsel also directed Rust to review, analyze and audit each claimant's *pro rata* share in light of claims for incorporated capacitors. Rust followed substantially similar audit procedures as set forth in Paragraph 4, *supra*.

7. Rust has received 723 claim forms. Of these, 458 have been deemed valid and have passed audit as required. Rust rejected 90 duplicate claims as well as 169 that claimed $0 in purchases and failed to respond to any inquiries for further information (46 of which had no purchase history and were submitted by third-parties that failed to provide authorization for submitting them). A total of two entities submitted claims requesting distributions greater than $1,000 above the allocable amount as calculated from the purchases pre-populated on the claim forms, including claims for both incorporated capacitors and supplemental claims for direct purchases of capacitors. Based on the Special Master's Valuation R&R, Rust has assigned a value of 65% as to Cisco and Aptiv's incorporated capacitors claims. The remaining submissions have been denied for other reasons, such as withdrawn claims.

8. Rust calculated the allocations for each Settlement Class member that submitted valid claim forms as determined by the audit procedures set forth in Paragraph 4, *supra*, in strict accordance with the Court-approved Allocation Plan and consistent with the Valuation R&R. In making their allocation calculations, Rust multiplied (a) the net amount available in the settlement fund by (b) a quotient calculated by dividing (i) the total amount of Capacitors purchased directly from Defendants during the Settlement Class Period by the specific Settlement Class member submitting a valid claim form, with (ii) the total amount of Capacitors purchased directly from Defendants during the Settlement Class Period by all Settlement Class members submitting valid claim forms. Rust has further adjusted the calculations to account for claims of incorporated capacitors by applying the 65% valuation

Master File No. 3:17-md-02801-JD
Civil Action No. 3:14-cv-03264-JD 3

**DECLARATION OF KENDALL S. ZYLSTRA ISO THE CLASS'S MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS FOR SECOND ROUND SETTLEMENTS**

1  as set forth in the Valuation R&R. Rust will further adjust the amount based on the Court's approval of
2  their requested administrator fees.

3    9.  ==Rust recommends that the Court should approve payment of late-submitted claims that
4  are otherwise valid and eligible for payment.==

5    10.  ==A total of 48 claimants submitted claims that were otherwise eligible for payment after
6  the April 23, 2018, filing deadline set by the Court in its March 2, 2018, Preliminary Approval Order
7  (and allowing for one week for mail delivery). MDL ECF No. 98, at ¶ 16. The amount of valid
8  commerce represented by the late claims is less than 3% of the commerce represented by timely claims.
9  Because there is no evident prejudice to other Settlement Class members from recognizing these claims
10  as valid, we perceive no reason to deny them.==

11    11.  Rust has provided Class Counsel with an invoice in the amount of $188,038.58 in
12  administration fees and $71,472.00 in expenses for publication notice ordered by the Court. After the
13  Court authorized partial payment of $253,729.70 of Rust's invoices, MDL ECF No. 1178, Rust has
14  $5,780.88 in administration fees outstanding and estimates an additional set fee of $5,000 for expenses
15  associated with administering the settlement fund to completion, including for disbursement of
16  settlement funds to Settlement Class members. The administration fees include fees Rust has incurred
17  to date in effectuating the Court-approved notice plan; processing, analyzing, and auditing submitted
18  claim forms; calculating distributions to Settlement Class members in accordance with the Allocation
19  Plan; reviewing each claimants' *pro rata* share consistent with the Valuation R&R; and taking the
20  necessary steps to disburse settlement proceeds to each member of the Settlement Class that has
21  submitted a valid claim form. It also includes a negotiated set fee for future work in administering the
22  settlement fund to completion, including sending payment to class members. I attach a true and correct
23  copy of Rust's statement of account and publication expense invoice as **Exhibit A**.

24  I declare under penalty of perjury that the foregoing is true and correct to the best of my
25  knowledge.
26  Executed on January 7, 2021.

27  /s/ *Kendall S. Zylstra*
    Kendall S. Zylstra
28

Master File No. 3:17-md-02801-JD
Civil Action No. 3:14-cv-03264-JD         4

**DECLARATION OF KENDALL S. ZYLSTRA ISO THE CLASS'S MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS FOR SECOND ROUND SETTLEMENTS**