# EXHIBIT 31

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- x
:
IN RE CREDIT DEFAULT SWAPS ANTITRUST :
LITIGATION :
: 13 Md. 2476 (DLC)
This Document Relates To: All Actions :
:
:
:
:
------------------------------------------------------------------- x

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
# FOR APPROVAL OF LATE FILED CLAIMS

I.  **INTRODUCTION**

Plaintiffs, through Co-Lead Counsel, respectfully move for Approval of Late Filed Claims ("Late Claims Approval Motion").

Co-Lead Counsel, along with its economic consultants from the Berkeley Research Group and Garden City Group, the Court-appointed Claims Administrator, have worked diligently over the past six months to ensure the fair and timely processing of claims in this action. We are pleased to report to the Court that we are in the final stages of that work. Our goal is to pay out claims to class members by the end of this calendar year — a goal that we understand is important to many class members. In order to do so, there are several outstanding issues that must be resolved.

First is the issue of how to treat late-filed claims. The claims deadline in this matter was May 27, 2016. A relatively small number of claimants, however, filed claims after this deadline. Co-Lead Counsel recommend that the Court order that these claims be accepted because their acceptance will not cause delay or prejudice to the class. At the same time, it is essential to set a firm deadline after which further claims will *not* be accepted. Accordingly, we ask the Court to establish October 27, 2016 as that firm deadline after which claims will no longer be accepted. As discussed below, this same deadline should also apply to any "challenges" filed in connection with existing claims.

Second is the Court's approval of the distribution of the net settlement funds to all eligible class members. The Claims Administrator is in the final stages of making determinations on the validity of claims and challenges and will finish that process within a matter of weeks. Once that process is complete, we will promptly file a motion seeking the Court's approval to distribute the proceeds to claimants ("Final Distribution Motion").

2

The Final Distribution Motion will also propose a process by which class members can appeal the determinations of the Claims Administrator rejecting their claims or challenges. At the April 15, 2016 hearing regarding final approval of the settlement, the Court explained that it wanted to create a system "that would allow a class member to always appeal to the court" if it disagreed with the final determination of the Claims Administrator. Dkt. No. 563, Final Approval Hrg. Trans., April 15, 2016, at 50:18-19. Accordingly, the Court "retain[ed] jurisdiction to hear disputes arising from the claims administration process, including determinations of the [Claims] Administrator regarding additional Covered Transactions." Dkt. No. 553, Order, April 18, 2016. At a high level, Co-Lead Counsel anticipate proposing a streamlined process under which class members seeking to appeal a claims determination will have an opportunity to file a short submission with this court. Co-Lead Counsel will then have an opportunity to respond. Consistent with the goal of distributing by year-end, we are hopeful the entire process could be completed in a matter of weeks.

## II.     THE LATE CLAIMS AND CHALLENGES

Pursuant to the Preliminary Approval Order entered on October 29, 2015, the Court set May 27, 2016 as the deadline for class members to submit claims in order to participate in the distribution of the net settlement funds. (Dkt. No. 405.) Through the discovery process, Co-Lead Counsel had endeavored to obtain a robust set of relevant CDS transactions for purposes of class certification and the computation of damages. Ultimately, Co-Lead Counsel were able to obtain a relatively comprehensive, albeit not fully complete, set of transactional data, which we then used to identify the transactions that potentially qualified for settlement claims for each and every class member.

3

Working with the Berkeley Research Group and the Garden City Group throughout early 2016, Co-Lead Counsel setup a process under which a class member could login to a secured website portal and submit a claim by affirming the transactions pre-identified by Co-Lead Counsel as transactions covered under the settlement. Thousands of class members elected to file their claims using this simple process.

Class members also had the right to submit *additional* transactions that were not pre-identified by Co-Lead Counsel through a process known as a "challenge." A challenge consists of a submission by a Settlement Class Member who believed they had identified one or more "Covered Transactions" as defined in the settlement agreements that were *not* identified in the initial set of "Covered Transactions" identified by Co-Lead Counsel through the discovery process. Class members electing to submit challenges were directed to use a spreadsheet created by the Garden City Group to provide details on the proposed additional Covered Transactions. The bulk of the work in the past few months has been verifying whether the submitted trade records are in fact valid Covered Transactions meriting payment. In some cases, this determination has been straightforward. In other cases, it has been complex.

As set forth in the Declaration of Loree Kovach (the "Kovach Declaration"), 7245 timely claims and 2344 timely challenges have been submitted to the Claims Administrator. Kovach Declaration at ¶ 3, 12. Since May 27, 2016 through October 27, 2016, 236 untimely claims and 46 untimely challenges have been received by the Claims Administrator. *Id*.

### III. ARGUMENT

#### A. The Allowance of Late Claims and Challenges Is Within the Equitable Discretion of the Court

"The determination of whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court." *In re*

4

*Crazy Eddie Securities Litigation*, 906 F.Supp. 840, 843 (E.D N.Y. 1995). *See also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (allowing late claimants to participate in settlement "[b]ecause there is no showing of delay or prejudice"); *Zients v. LaMorte,* 459 F.2d 628, 630 (2d Cir. 1972) (reversing and remanding the district court's ruling that it did not have the discretion to accept late claims since "[u]ntil the fund created by the settlement is actually distributed, the court retains its traditional equity powers").

As shown in the Kovach Declaration, in addition to the 7,245 timely claims filed, 236 untimely but otherwise valid Claims have been submitted. Kovach Declaration at ¶ 3. The percentage of the untimely claims to total claims, measured by notional value, is just over 3% (3.068%) of the total covered notional in the settlement class. Because the untimely filing of these Claims has not caused significant delay in the distribution of the net settlement proceeds or otherwise prejudiced any class member, and because the late claims comprise a relatively small percentage of total covered notional, Co-Lead Counsel recommend that the Court approve the acceptance of the untimely but otherwise proper Claims that GCG received through October 27, 2016. Kovach Declaration at ¶ 7. Co-Lead Counsel further recommend that the Court approve all late submitted challenges, subject to the Claims Administrator's determination that the challenged transactions are within the definition of "Covered Transactions," submitted on or before October 27, 2016.

### B. Allowing Additional Claims After October 27, 2016, Will Delay Distribution to Timely Class Members

While Co-Lead Counsel recommend that late claims submitted *before* October 27, 2016 be accepted, accepting claims and challenges submitted *after* this date will be prejudicial to the class at large and will delay the distribution of claims. At this late stage, the processing of

5

additional claims risks delaying the final computation of each class member's pro-rata share, which in turn delays the final stages of the claims process and the ultimate payout of settlement funds to class members.

These concerns are especially significant in the case of submitted challenges. The Kovach Declaration lays out the detailed and time consuming process necessary to process challenge submissions. *See* Kovach Declaration at ¶¶ 9 – 17. Approximately 85% of the challenge submissions received to date had deficiencies that required follow up by the claims administrator and, in many cases, the claims model expert (Berkeley Research Group) had further questions once it received the challenge transaction files. *Id*. at ¶ 10. The process in some cases has taken months with claims administrator repeatedly having to send further deficiency notices to class members. *Id*. at ¶16. The class members have had over four months to submit their challenges since the claims and challenge deadline passed. Further time is not warranted and will prejudice those class members who have been diligent in submitting both claims and additional challenge transactions. A firm cutoff of October 27, 2016 for any claims or challenges will ensure that the claims administrator can efficiently finish the claims process.

## V. **RELIEF REQUESTED**

As set forth in the proposed order submitted with the filing of the Late Claims Approval Motion, Co-Lead Counsel requests the following relief:

1. Approve the acceptance of all claims and challenges received by the Claims Administrator on or before October 27, 2016;

2. Establish October 27, 2016, as the firm date after which any newly submitted claims or challenges will not be reviewed and will be denied.

| | |
|---|---|
| DATED: October 27, 2016 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |

By: */s/ Daniel L. Brockett*
Daniel L. Brockett
Steig D. Olson
Sascha N. Rand
Jonathan Oblak
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
steigolson@quinnemanuel.com
sascharand@quinnemanuel.com
jonoblak@quinnemanuel.com

Jeremy D. Andersen
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

**Lead Counsel for Plaintiffs**

| | |
|---|---|
| DATED: October 27, 2016 | **PEARSON, SIMON & WARSHAW, LLP** |

By: */s/ George S. Trevor*
Bruce L. Simon
Clifford Pearson
George S. Trevor
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Fax: (415) 433-9008
bsimon@pswlaw.com
cpearson@pswlaw.com
gtrevor@pswlaw.com

**Co-Lead Counsel for Plaintiffs**

7