# EXHIBIT 39

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: AFTERMARKET FILTERS ANTITRUST LITIGATION<br>_____<br>**This Document Relates to:**<br>**All Direct Purchaser Actions** | Master Docket No. 08-cv-4883<br>MDL Docket No. 1957<br><br>Honorable Robert W. Gettleman<br>Magistrate Geraldine Soat Brown |

**MOTION OF DIRECT PURCHASER PLAINTIFFS TO AUTHORIZE DISTRIBUTION
<u>OF NET SETTLEMENT FUND</u>**

Plaintiffs Central Warehouse Sales Corporation, Neptune Warehouse Distributors, Inc., William C. Bruene d/b/a Lone Star Lube, and A&L Systems Inc., on behalf of themselves and the Settlement Class (collectively, "Direct Purchaser Plaintiffs"), submit this memorandum of law in support of their Motion to Authorize Distribution of the Net Settlement Fund.

## I. BACKGROUND

### A. Procedural History of the Litigation

This litigation was commenced on March 31, 2008, with the filing of a class action lawsuit by a direct purchaser of Filters[1] from some of the largest filters manufacturers in the United States. Eventually, sixty (60) cases were filed in five federal district courts. On August 18, 2008, the Judicial Panel for Multidistrict Litigation transferred the cases to this Court, which consolidated all actions under the above caption. By Order dated September 4, 2008, the Court appointed Freed Kanner London & Millen LLC, Labaton Sucharow LLP, Fine Kaplan & Black, R.P.C. and Susman Godfrey LLP[2] to serve as Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs.

Direct Purchaser Plaintiffs alleged that Defendants – Champion Laboratories, Inc. ("Champion"), Baldwin Filters, Inc. ("Baldwin"), Purolator Products NA, LLC, Purolator Products Company, LLC, ArvinMeritor, Inc. (together, "Purolator"), Honeywell International ("Honeywell"), Wix Filtration Corp. LLC, Affinia Group Inc. (together, "Wix"), Cummins Filtration Inc. ("Cummins"), and Donaldson Company, Inc. ("Donaldson") (collectively, "Defendants") – conspired to fix the price of Filters in the United States from 1999 through the present. The case has been settled in its entirety against all of the Defendants.

---

[1] The term "Filters" includes oil, air and fuel filters sold in the aftermarket for light duty vehicles, *i.e.*, cars and light trucks. It does not include products for sale to original equipment manufacturers, such as vehicle manufacturers.

[2] On October 12, 2011, Susman Godfrey LLP withdrew as Co-Lead Counsel. (Dkt. #839).

B.     **The Settlements**

On October 10, 2012, the Court entered the Amended Order Granting Final Approval of Settlements, which included entry of the Rule 54(b) final judgment, approving settlements with the following Defendants: Baldwin ($406,250), Cummins ($406,250), Donaldson ($406,250), Wix, ($1,300,000), Honeywell ($2,112,500), and Champion ($5,037,500). (Dkt. #1027).

On February 22, 2013, the Court entered the Order Granting Final Approval of Settlement, which included entry of the Rule 54(b) final judgment, approving the settlement with Defendant Purolator ($8,300,000). (Dkt. #1065).

The prosecution of this action by Direct Purchaser Plaintiffs resulted in a total Settlement Fund of $17,968,750.[3]

Kurtzman Carson Consultants LLC ("KCC"), the claims administrator retained by Settlement Class Counsel and approved by the Court, has been administering the settlements. *See* Affidavit re: Claims Processing ("Robin Aff."). attached as Exhibit 1 to the Declaration of Michael J. Freed ("Freed Decl.") submitted herewith. KCC has received, processed and validated the claims submitted by Settlement Class members, and it is now ready to make a distribution of the Settlement Fund to Settlement Class members who have submitted valid claims.

II.    **CLAIMS ADMINISTRATION PROCESS**

As of February 3, 2014, the deadline for submitting Claim Forms, KCC received 4,006 Claim Forms from individuals and entities who purchased Filters directly from Defendants from

---

[3] These funds have been paid by Defendants and deposited in an escrow account at Huntington Bank and have been accruing interest since being deposited.

3

March 1, 1999 to March 8, 2012.[4]  Robin Aff. ¶ 16.  ==Of these 4,006 claims, 3,256 were received on or before the February 4, 2013 deadline, and 750 were received after the deadline.  *Id*. ¶ 17.  In its discretion, KCC accepted the 750 late claims for one or more of the following reasons:  (1) the Claim Form was received soon after the deadline; and (2) acceptance of the claim did not delay the validation and distribution process.  *Id*.==

Various claimants filed one or more Claim Form and requested that their claims be consolidated into one payment.  Of the 4,006 Claim Forms received, KCC consolidated 733 claims, resulting in a total of 3,273 unique claims.  *Id*. ¶ 18.

Of the 3,273 unique claims, 2,330 were determined to be valid.  *Id*. ¶ 19.  The 943 claims that were determined to be invalid were for the following reasons:  (1) 860 Claim Forms were withdrawn by the claimant; (2) 69 Claim Forms were duplicative of a valid Claim Form; (3) five Claim Forms were filed by individuals or entities that did not meet the Class definition; and (4) nine Claim Forms were blank.  *Id*.

In addition, of the 4,006 Claim Forms received, 49 class members disputed the pre-populated purchase amounts on their Claim Form (which was derived from Defendants' transaction records).  *Id*. ¶ 20.  KCC conducted a preliminary review of the validity of these disputes and then provided its findings to Settlement Class Counsel.  *Id*.  Based upon further review of the disputed claims by Settlement Class Counsel, 28 were deemed to be valid based on the submission of sufficient proof of purchases.  *See* Declaration of Adam J. Pessin, ¶ 4, attached as Exhibit 2 to the Freed Declaration.

---

[4] The details of the Notice Program, including the mailing process, can be found in paragraphs 4-15 of the Robin Affidavit, which supplements the previously-filed affidavits on the mailing process of Katie Horton. (Dkt. ## 991-1, 1049-1).

4

The remaining 21 of the 49 disputed claims were denied. *Id.* ¶ 5. Of those 21 claims, 14 were submitted by unique claimants after consolidation. *Id.* The 14 unique claims were denied for the following reasons: (1) one claimant (the largest) voluntarily withdrew its dispute after Settlement Class Counsel determined (and the claimant agreed) that the disputed purchases did not correspond to products covered in the litigation; (2) seven claimants did not submit any supporting documentation; (3) four claimants submitted documentation for heavy duty filters (not light duty filters), products not covered by the litigation; (4) one claimant submitted documentation for foreign purchases, which were not covered by the litigation; and (5) one claimant submitted documentation showing purchases of a lesser amount than was reflected in Defendants' records, and this "dispute" was denied and the class member credited for the higher amount, as reflected in Defendants' records. *Id.* ¶¶ 6-10.

The total net revenue from purchases by the 12,658 Class Members that were mailed Notice Packets was $9,588,491,099. *Id.* ¶ 9. The total amount of purchases by the 2,330 valid claimants was $7,311,757,890.40. *Id.* ¶ 19. This accounted for over 76% of the total value of class purchases. *Id.*

## III. PROPOSED DISTRIBUTION

### A. Net Settlement Fund

The Net Settlement Fund to be distributed to valid claimants is **$11,276,653.83**, which was calculated as follows:

| | |
|---|---|
| Gross Settlement Fund | $17,968,750.00 |
| Interest earned on Settlement Fund | $13,437.22 |
| Attorneys' fees (as awarded by Court) | ($5,390,625.00) |
| Attorneys' expenses (as reimbursed by Court) | ($1,215,039.39) |
| Class representative incentive awards (as awarded by Court) | ($20,000.00) |
| Cost of settlement administration | ($71,869.00) |

5

Cost of income tax preparation ..................................................................($8,000.00)

**NET SETTLEMENT FUND**............................................................**$11,276,653.83**

B.     **Pro Rata Distribution**

The distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms will be pro rata (as set forth in the Notice and approved by the Court). Thus, the funds available for distribution to Settlement Class Members are divided among the Settlement Class Members who have submitted valid Claim Forms in proportion to the dollar amount of sales made to each such Settlement Class Member.

A complete list of the 2,330 approved claims and associated distribution amounts to Settlement Class Members is attached as Exhibit A to the Robin Affidavit (filed under seal).

## CONCLUSION

For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request that the Court authorize distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid claims in the amounts set forth in Exhibit A to the Robin Affidavit.

Dated: March 11, 2014                         Respectfully submitted,

/s/ *Michael J. Freed*
Michael J. Freed
Steven A. Kanner
FREED KANNER LONDON & MILLEN, LLC
2201 Waukegan Rd. – Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Fax: (224) 632-4521

/s/ *Gregory Asciolla*
Gregory Asciolla
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477

6

/s/ *Roberta D. Liebenberg*
Roberta D. Liebenberg
Adam J. Pessin
FINE KAPLAN & BLACK, R.P.C.
1835 Market Street –28th Floor
Philadelphia, PA 19103
Telephone: (215) 567-6565
Fax: (215) 568-5872

**Co-Lead Counsel for Direct Purchaser Plaintiffs**

7