# EXHIBIT 45

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE<br><br>AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION<br><br>MDL No. 1775 | Master File 06-MD-1775 (JG) (VVP)<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS<br><br>DECLARATION OF LANCE P. BLAIR RE: LUFTHANSA SETTLEMENT CLAIM ADMINISTRATION |

I, Lance P. Blair, hereby declare as follows:

1.  I am a Director of Operations for The Garden City Group, Inc. ("GCG"). The following statements are based on my personal knowledge and information provided by other GCG employees working under my supervision, and, if called on to do so, I could and would testify competently thereto.

2.  GCG is serving in this matter as the Claim Administrator to assist with various administrative tasks, including: disseminating Notices; publishing Summary Notices; receiving and processing claims and requests for Exclusion; responding to class member inquiries; establishing and maintaining a Settlement website; and performing such other duties as may be directed by the Court or the Parties. This declaration discusses the work that has been

DECLARATION OF LANCE P. BLAIR

1

1 performed by GCG with respect to the processing of claims filed against the Lufthansa
2 Settlement Fund.
3       3. <u>Claims Received.</u> The deadline for class members to file claims against the
4 Lufthansa Settlement Fund was a postmarked deadline of February 12, 2009. GCG received a
5 total of 6,118 claims, with 284 of these claims received after the deadline. These are the gross
6 totals of claims received prior to the removal of ineligible or duplicate claims or claims being
7 combined or removed for any other reason. To make a claim, class members were required to
8 complete the approved claim form and provide the following information:

- Contact information;
- Summary of Airfreight Shipping Services purchased by the claimant during the class period, broken down into four categories:
    - Outbound/Direct
    - Outbound/Indirect
    - Inbound/Direct
    - Inbound/Indirect
- Purchase details for each category, including:
    - Total Purchase Amount
    - Number of Airbills (transactions)
    - Currency
    - All entities from whom Airfreight Shipping Services were purchased (to the best of the claimant's ability)
- Indication of whether the claimant was a U.S. Person or Entity
- Certification under penalty of perjury as to accuracy of the claim.

Class members had the option of submitting this information on a completed claim form via U.S. or international mail or through an online claim process available on the settlement website. Attached hereto as **Exhibit 1** is a true and correct copy of a blank claim form.

      4. <u>Data Entry.</u> GCG reviewed all claim forms and collected this information in GCG's proprietary database.

DECLARATION OF LANCE P. BLAIR

2

1  5. <u>Deficiency Process.</u>  GCG reviewed all claim data to identify claims that were deficient due to the failure to provide required information.  The deficiencies included:

- missing signature
- failure to provide purchase amount or purchase amount illegible
- failure to provide category for purchases of shipping services
- failure to provide currency or currency illegible
- failure to provide taxpayer ID
- failure to provide claims preparer contract

For each deficient claim, GCG mailed a notice to the class member identifying all deficiencies and providing an opportunity to cure the deficiencies.  GCG reviewed each response and updated the claim data accordingly.  Class members who did not respond to the first deficiency letter, or who responded but still failed to cure all deficiencies, were mailed a second letter and provided a second opportunity to cure their claim.  The second deficiency letter clearly stated that if the class member did not cure the noted deficiencies, the claim would be denied without further notification.  Four hundred ninety-seven (497) class members did not respond to these requests, and their claims were therefore deemed invalid.

6.  <u>Currency Conversion.</u>  Pursuant to the Plan of Allocation, GCG is required to convert purchase amounts submitted in currencies other than U.S. dollars to the equivalent U.S. dollar amounts using the currency exchange rates applicable on September 11, 2006.  In consultation with Class Counsel and SunTrust, which served as Escrow Agent, GCG compiled the applicable exchange rates.  Attached hereto as **Exhibit 2** is a listing of the exchange rates used to make the conversions.  GCG programmed the claim processing database to convert all non-U.S. dollar claim data to U.S. dollars using these rates.

7.  <u>Supporting Documentation.</u>  Class members were not required to submit supporting documentation with the claim form.  However, one of the certifications on the claim form stated: "I have documentation to support my claim and agree to provide additional information to Settlement Class Counsel or the Claims Administrator to support my claim if necessary."  GCG selected a statistically reliable sampling of claims and mailed letters to the

DECLARATION OF LANCE P. BLAIR
3

1  class members requesting they provide documentation to support their claim. GCG reviewed
2  the class members' responses to these requests for supporting documentation and, when deemed
3  necessary, GCG engaged in follow-up discussions via telephone with class members concerning
4  their responses to the letter and the supporting documentation provided. For those class
5  members who did not respond to the initial letter, GCG sent a second letter providing them with
6  a second opportunity to provide supporting documentation. GCG also reached out to these class
7  members by phone and email. Forty-four (44) class members did not respond to these requests,
8  and their claims were therefore deemed invalid.

9  8.  <u>Late Claims.</u>  As stated above, there were 284 late filed claims. All such claims
10  were included in the claim review process. All of the late filed claims that were also deficient
11  were filed prior to the initial mailing of deficiency letters. None of the late claims interfered
12  with or delayed the claim administration process.

13  9.  <u>Withdrawn and Duplicate Claims.</u>  During the claim administration process, 228
14  claims were withdrawn because they were duplicative of another claim or because one or more
15  of a variety of other reasons.

16  10.  <u>Settlement Fund.</u>  The settlement amount paid by Lufthansa was $85 million.
17  According to information from SunTrust, and not including net gains from currency hedging
18  discussed below, the Settlement Fund earned interest income of $6,543,644.34. Pursuant to the
19  Court's order approving attorneys' fees and expenses, $14,322,100.94 was disbursed to counsel.
20  GCG has also been advised that there is a pending invoice from JAMS in the amount of
21  $118,269.33 that has been requested to be paid from the Settlement Fund.

22  11.  <u>Currency Hedging and Allocation.</u>  GCG has been advised that Class Counsel
23  engaged in currency hedging so as to protect foreign claimants against currency fluctuation. For
24  example, a class member who submitted a claim in Euros would be protected from losses
25  resulting from declines in the U.S. Dollar relative to the Euro. If this occurred (as it did during
26  the period that the currency hedging program was in effect), the hedging would have resulted in
27  U.S. Dollar gains that could be used toward making those claimants whole. According to
28  information from SunTrust, this currency hedging resulted in gains for Swiss Francs

DECLARATION OF LANCE P. BLAIR
4

1  ($358,035.17), Euros ($140,816.13), Hungarian Forints ($50,276.09), Indian Rupees
2  ($510,463.74), Japanese Yen ($92,509.79), Swedish Krona ($14,461.74), and South African
3  Rand ($94,337.40) and losses for British Pounds ($43,719.30), Chinese Yuan ($22,276.43) and
4  Hong Kong Dollars ($7,100.81). These hedging gains and losses are calculated as of March 15,
5  2011, the date when the hedging program was terminated in preparation for the upcoming
6  distribution of funds. (The hedges for Hungarian Forints and South African Rand were
7  terminated on July 13, 2010, following an analysis of the currencies in which claims were
8  actually submitted.) In finalizing the recommended allocations, GCG has ensured that the
9  hedging gains or losses are allocated to those claimants who filed claims in the particular
10 currencies pursuant to the instruction of counsel for the parties.

11       12. <u>Exclusion Valuations.</u> Pursuant to the terms of the Settlement, the Lufthansa
12 Settlement Fund is to be reduced by the amount that Settlement class members who exclude
13 themselves from the Lufthansa Settlement Class ("the opt-outs") would have received had they
14 stayed in the Lufthansa Settlement Class and submitted a claim form. Counsel for the parties
15 has jointly provided GCG with agreed-upon amounts that would have been claimed by the opt-
16 outs had they filed a claim. Using these values, GCG has determined that the imputed value of
17 all the opt-outs is $4,535,164.49.

18       13. <u>Taxes, Tax Expenses and Reserves.</u> While Lufthansa was responsible under the
19 Settlement Agreement for payment of notice and administration costs, the Settlement Fund is
20 responsible for payment of its own taxes and tax-related expenses. To date, the Settlement Fund
21 has paid $189,513.71 in taxes and has incurred (but has not yet paid) $39,600.50 in tax-related
22 expenses (including for tax preparation and tax advice). In addition, GCG recommends
23 retaining $50,100.00 as a reserve for anticipated future taxes and tax-related expenses.

24       14. <u>Net Settlement Fund.</u> Taking into account the adjustments to the Settlement
25 Fund described above, the total amount available for distribution to claimants at this time is
26 $78,011,863.36. Of this amount, $1,187,803.52 is attributable to net gains from currency
27 hedging and has been allocated as described in Paragraph 11 above. The remaining amount has
28 been allocated in accordance with the Plan of Allocation approved by the Court. In consultation

DECLARATION OF LANCE P. BLAIR

5

with the parties, GCG recommends that all claimants receive a minimum payment of $5.00, except that those claimants with approved purchases of less than $5.00 will not receive a payment larger than the total of their approved purchases.

15. <u>Recommended Allocations.</u> Attached as **Exhibit 3** is a chart showing information about each claimant's purchases and GCG's recommended allocations, pursuant to the Plan of Allocation previously approved by the Court and with the recommended minimum payment. The chart identifies each claimant by number, notes whether it is a U.S. entity, and provides the amounts in U.S. dollars of its approved inbound/direct, inbound/indirect, outbound/direct, and outbound/indirect purchases. It also notes whether the claim was received after the deadline and, if so, by how many days.

I declare under penalty of perjury pursuant to the laws of the United States of America and the State of New York that the foregoing is true and correct.

Executed on this 18th day of July 2011, at Seattle, Washington.

_____
LANCE P. BLAIR

DECLARATION OF LANCE P. BLAIR
6