EXHIBIT 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| THIS DOCUMENT RELATES TO:<br><br>ALL END-PAYOR ACTIONS | Hon. Sean F. Cox<br>Mag. Judge R. Steven Whalen |

## DECLARATION OF ROBIN M. NIEMIEC IN SUPPORT OF FINANCIAL RECOVERY SERVICES, LLC'S EMERGENCY MOTION TO COMPEL ACCEPTANCE AND PROCESSING OF VEHICLE DATA

I, Robin M. Niemiec, declare:

1.     I am Chief Operating Officer of Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS").[1]  I submit this declaration in support of FRS's Emergency Motion to Compel Acceptance and Processing of Vehicle Data. This declaration is based on my personal knowledge, as well as my extensive experience with class action settlement administrations and distributions.

---

[1] Unless otherwise specified, all references herein to docket entries are to the docket in 12-md-02311.  All terms with initial capitalization that are not defined in this declaration have the same meanings as those set forth in the Memorandum of Law in Support of Financial Recovery Services, LLC's Motion to Intervene (PageID.37697, ECF No. 2060).

## RELEVANT EXPERIENCE

2.      I joined FRS in 2015 from Rust Consulting, Inc. ("Rust"), a leading class action claims administrator that, for more than 40 years, has designed, implemented, or managed more than 6,500 time-sensitive projects of all sizes and types.  I managed Rust's over 30-person Florida office and I directed the operation of Rust's antitrust claims administration practice.

3.      In my ten years of managing antitrust class action settlements at Rust, I oversaw more than 160 direct purchaser and indirect purchaser antitrust class action settlements—including some of the largest, most complex and data intensive in U.S. history—many of which involved hundreds of thousands of class members, and that collectively involved settlement funds of more than $15 billion and the processing of 6 million proofs of claim.

## PLACEHOLDER CLAIMS

4.      In my experience, both at Rust and at FRS, it has been and continues to be commonplace for timely filed blank claim forms to be treated in the exact same manner as timely filed partially incomplete claim forms.  In the hundreds of settlements that I directly oversaw at Rust, and in the hundreds of others of which I have personal knowledge, Rust customarily sent the same deficiency notice to claimants that timely filed blank claim forms as was sent to claimants that had timely filed partially incomplete claim forms.  That deficiency notice provided the claimant

an opportunity to cure the missing data deficiency in their claim form, without distinguishing between claim forms containing some data for some claimed units and those that provided no data for any entries.  If a claimant that had received such a deficiency notice submitted the required data by the deadline established in the deficiency notice or any extensions thereof, the claim, whether it was blank or partially complete when it was originally filed, was accepted to the extent of the data provided.

5.      On January 24, 2019, I, together with Jeffrey N. Leibell, FRS's Chief Legal & Financial Officer, participated in a meet and confer telephone conference with Class Counsel represented by Marc Seltzer and William V. Reiss.  On behalf of FRS, I requested that conference to discuss how "to address now any data collection issues that may exist so that the process is more efficient, both for our clients and for the claims administrator."[2]  At no time during that call was the subject of placeholder claims discussed.  Neither Mr. Leibell nor I requested permission from Class Counsel to submit placeholder claims, and at no time did either Mr. Seltzer or Mr. Reiss explicitly or implicitly state that the placeholder claims that FRS had already filed, or any that FRS might file in the future, would be rejected.

---

[2] Ex. C to Declaration of Jeffrey N. Leibell at 1 (June 18, 2020), PageID.37777, ECF No. 2060-5; *see* Declaration of Jeffrey N. Leibell (June 18, 2020), PageID.37726, ECF No. 2060-2.

## PLACEHOLDER CLAIM DATA

6.      Hardcopy placeholder claim forms are usually blank, other than including the identity and contact information of the claimant.  When claim forms also may be filed electronically, as was the case for the End-Payor Settlements, the required fields must be populated for the form to be submitted.   In this administration, model year, make, model, place of purchase and date of purchase needed to be populated for the electronic form to be submitted.  Accordingly, any placeholder claim that FRS filed electronically populated the required fields for a single placeholder vehicle.

7.      In the hundreds of settlements that I administered in which business entities filed blank hardcopy claim forms or electronically filed claim forms with only one placeholder unit, I understood those claims to be placeholder claims. Accordingly, those claimants were sent deficiency notices.  I knew from experience that, in response to the deficiency notice that would be sent, either the claim form would be updated by the deadline set forth in the deficiency notice or extensions thereof, or it would not.  If the claimants responded in time to those notices, their supplemental data was processed as timely.  If a claimant had submitted a blank claim form and did not timely respond to the deficiency notice, its claim was rejected; if a claimant had electronically submitted a claim form with one unit and did not timely respond to the deficiency notice, the claim was processed if the data

for that one unit was sufficient.  The class counsel with whom I worked in connection with those settlements were well aware of this process, and none directed me to reject placeholder claims as untimely or fraudulent.

8.      Given the ubiquitous nature of placeholder claims, it would surprise me to see a claims administrator waste time researching the one placeholder unit included on electronically submitted claim forms to determine whether it was legitimate.  As mentioned above, such placeholder claim forms, if they are not timely supplemented with credible data, would be processed only to the extent that the data for the one claimed unit was sufficient.  If they were timely supplemented, that supplemental data, not the original placeholder data, would be processed and evaluated.

9.      When FRS files placeholder claims, as we did in this MDL, we never intend anything other than to establish the timeliness of the claim and to make the claims administrator aware of our intent to supplement the placeholder claim before any deadline established for doing so.  With respect to placeholder claims for Insurers, FRS was careful to make sure that Class Counsel and the claims administrator were aware that placeholder claims would be supplemented.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of March 2021, in Palm Beach Gardens, Florida.

Robin M. Niemiec