# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : : | Master File No. 12-md-02311 Hon. Sean F. Cox Mag. Judge R. Steven Whalen |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | : : : : : : : : : : : | DECLARATION OF BRIAN A. PINKERTON IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION TO STRIKE FINANCIAL RECOVERY SERVICES, LLC'S MOTION FOR RECONSIERATION OF THE COURT'S APRIL 28 OPINION AND ORDER |

I, BRIAN A. PINKERTON, declare under penalty of perjury:

1. I am a Senior Project Manager at Epiq Class Action & Claim Solutions, Inc. ("Epiq") and a former Assistant Director of the Court-appointed claims administrator, Garden City Group, LLC ("GCG"). GCG was acquired by Epiq in 2018. All references to "Epiq" herein incorporate the work performed while operating as either GCG or Epiq.

2. As the Project Manager for settlements reached by the End-Payor Plaintiffs, I am responsible for the day-to-day supervision and management of the claims-administration process. I am an attorney admitted to practice in the State of

1

Washington and have personally managed dozens of class action settlement administrations, including consumer, wage and hour, and large antitrust class actions. I have extensive experience handling large data sets and developing creative strategies for reviewing and assessing complex data. I have served as the Project Manager on this matter since October 2015, when the Court appointed Epiq to serve as the claims administrator.

3. I submit this declaration in support of End-Payor Plaintiffs' Motion to Strike Financial Recovery Services, LLC's Motion for Reconsideration of the Court's April 28 Opinion and Order. No. 2:12-md-2311, Dkt. 2137 The following statements are based on my personal knowledge and/or information provided by other experienced Epiq employees working under my supervision and, if called on to do so, I could and would testify competently thereto.

4. I incorporate by reference my prior declarations submitted in these proceedings, including those dated November 11, 2020 (ECF No. 2097) and March 3, 2021 (ECF No 2020-1).

5. Now that the final claims submission deadline passed in this matter on June 18, 2020, Epiq's duties further include: (1) receiving and processing claims, (2) determining whether claims have been timely filed, (3) determining whether claims qualify for payment under any of the terms of the settlements and plan of allocation, (4) analyzing whether claims are deficient or compliant with the Court's orders, (5)

sending and handling notices of deficiency, (6) calculating the claim amounts of qualifying claimants, (7) determining the qualifying claim amounts available to all claimants, (8) determining the *pro rata* share of each qualifying claimant to be paid out of the settlements, and (9) making recommendations for the payment or disallowance of settlement shares to each qualifying claimant.

6. Under this Court's Orders, only class members are entitled to submit claims to share in the settlements. Specifically, only persons or entities who purchased or leased a qualifying new vehicle, not for resale, or purchased a qualifying replacement part during the applicable class periods can submit a claim.

7. Under this Court's Orders, the last day to submit a claim was June 18, 2020. Specifically, in order to participate in the settlements, this Court's Orders required a class member to timely provide the following information regarding the class member's purchase or lease of a qualifying new vehicle by June 18, 2020:

    (1) The make, model, model year, and VIN number of the qualifying new vehicle the class member purchased or leased;

    (2) The date the class member purchased or leased the qualifying new vehicle; and

    (3) The state where the purchase or lease was made or in which the class member resided or, for businesses that are class members, the state or state where the principal place of business was located at the time of the purchase or lease.

8. The June 18, 2020, claims deadline was the third final claims deadline as two prior extensions had been granted by the Court.

## Claims Filed by FRS

9. Financial Recovery Services ("FRS") is a third-party claims-filing company. FRS does not claim to have purchased or leased any qualifying vehicle or replacement part. FRS has not submitted any claim on its own behalf. FRS has not asserted that it is a class member, only that it represents the interests of some class members.

10. Instead, prior to the passage of the June 18, 2020 claims-filing deadline, FRS submitted claim forms on behalf of several companies, some of whom were insurance companies. Correspondence from FRS indicates that the claims information submitted for these insurance companies is for purchases or leases of vehicles made for their own account. Nothing indicates that the claims information submitted for these insurance companies contains any assertion of subrogation rights.

11. Despite this, FRS has asserted in briefing that it has insurance company clients who seek to share in the settlements as subrogees of class member insureds whose vehicles were declared a total loss due to a collision or other accident. However, FRS, has yet to submit any of the information that would be needed to substantiate any claims based on subrogation.

12. FRS does not claim that the insurance companies are class members in their capacity as insurers, or that any class definition includes insurance companies

asserting subrogation claims based on insurance payments to class members for vehicles declared a total loss. Thus, under the terms of the settlements and the plan of allocation, FRS does not qualify as a class member, and no insurance company is entitled to a share in the settlements based upon payments made by the insurance company to a class member pursuant to the terms of an insurance policy.

13.     In addition, neither the settlements, nor the Plan of Allocation makes any provision for insurance companies to submit claims to share in the settlements as subrogees of class member insureds who may have received insurance payments relating to vehicles that an insurance company deemed a total loss. Thus, under the terms of the settlements and the plan of allocation, there is no provision for any insurance company to share in the settlements as a subrogee of any class member.

14.     To date, nearly a year after the expiration of the claims-filing deadline, FRS has not submitted any information on behalf of any insurance company in support of any subrogation claim. Thus, any proof of claim information submitted now would be nearly a year late and properly treated as untimely. This Court has already held that "claims processing has been ongoing, and completion would be delayed if the Court were to allow potentially thousands of [subrogation] claims to be submitted after the deadline." ECF No. 2101 at 38270.

15.     FRS has, however, continued to provide new vehicle information for both insurance-company and non-insurance company clients for purchases or leases

of vehicles made for their own account. Nothing indicates that the claims information submitted for these insurance companies contains any assertion of subrogation rights. This claims information received after the June 18, 2020 claims-filing deadline, is being processed although it is late. This will be dealt with in the ordinary course of the claims administration process.

### Prejudice to Administration Process and Actual Class Members

16. Allowance of late claims has never been authorized by any order of the Court and requires Court-approval.

17. To allow the submission of subrogation claims or information that for the first time provides any information to substantiate subrogation claims now—much less at some indefinite time in the future as FRS seeks—would substantially delay and prejudice the claims administration process. Putting to one side the fact that the Plan of Allocation does not include any provisions for accepting or administering claims based on subrogation rights, the additional expense of administering and processing subrogation claims would also substantially reduce the recoveries to be paid to qualifying class member claimant because the additional administration costs would have to be paid out of the settlement funds.

18. Validation of subrogation claims by an insurance company would at least require satisfactory proof of the following:

- the identification of each vehicle owned by an insured class member, including the year, make, and model of the vehicle, the VIN number,

- the identity and name of the purchaser, the time and place where the purchase occurred, the residence or principal place of business of the purchaser at the time of purchase, and the date when the vehicle was declared a total loss;

- the existence of a policy of insurance between the insurance company and the class member covering each vehicle in question, including proof that the insurance policy provided for subrogation in the event that a vehicle was declared a total loss;

- proof that the vehicle that was insured at the time of the loss was purchased or leased as a new vehicle by the insured, and had not been acquired by the insured as a used vehicle;

- proof that a qualifying vehicle was in an accident and declared a total loss;

- proof that the insurance carrier made a payment to a class member for the vehicle that was declared a total loss;

- documentation showing the purchase price paid by an insured class member, or agreed-value of the vehicle at the time of lease;

- documentation showing the value of the vehicle at the time of the loss;

- documentation of the payments made to a class member by the insurance company;

- documentation of any payments the insurance company obtained from a third-party or tortfeasor regarding the collision or accident that caused the total loss, because any such payments would reduce the amount of any subrogation claim.

19. If subrogation claims were allowed at this late date, such claims and the information necessary to support such claims would necessarily be provided more than a year after the claims submission deadline has passed. In addition, Epiq would still need to compare any additional claims information submitted by FRS to the claims already submitted by class members to avoid duplicate claims and ensure that

7

subrogation claims are only applied to class members that (a) submitted valid claims, (b) were insured by one of the insurance companies identified by FRS, (c) received a payment from one of those insurance companies for a qualifying vehicle that was declared a total loss, and (d) have not reduced or eliminated any subrogation claim.

20. This additional claims administration process would likely require the Court to approve additional procedures for Epiq to apply in (1) evaluating whether any subrogation claim would be eligible for any payment under the terms of the settlements, and (2) creating a proportionate sharing calculation for the potential split of the settlement payment between the class member insured who purchased a qualifying new vehicle at the full purchase price, and the insurance company that made a total loss payment for the "actual cash value" of the vehicle, adjusted for depreciation, physical deterioration, and obsolescence. Because the *pro rata* distribution of settlement funds assumes that each class member has purchased a qualifying new vehicle at the purchase price charged for the qualifying new vehicle, and an insurance company would have only paid the actual cash value of a used vehicle at the time of loss (adjusted for depreciation and deterioration), an insurance company seeking to recover as a subrogee would have no claim based on the purchase price a class member insured paid for a qualifying new vehicle.

21. Due to significant differences in a claims administration process for subrogation claims, Epiq would need to contact class members whose claims were

potentially affected by a subrogation claim and obtain additional information about their vehicles, including vehicle identification numbers, purchase price information, agreed-upon lease values, and vehicle valuations at the time of loss. Out of fairness to class members, Epiq would also need to provide notice to class members that an insurance company has claimed that it is entitled to receive all or a portion of the settlement payments that would otherwise be paid to the class member, and provide the class member an opportunity to challenge the insurance company's claim. This would add additional complexity and expense to the claims-administration process.

22. Processing subrogation claims would further require Epiq to create procedures for handling subrogation claims that do not currently exist under the plan of allocation as approved by the Court. If subrogation claims were allowed, Epiq would need to:

- Create and implement procedures for matching subrogation claims to class members who submitted claims;

- Create and implement procedures for reviewing documentation concerning auto insurance coverage and total loss payments, including procedures for requesting additional documentation and information that is missing or incomplete;

- Create and implement procedures for comparing the new vehicle purchase price to the depreciated, actual cash value of the vehicle declared to be a total loss;

- Create and implement procedures for determining a proportional or pro-rated payment for subrogation claims that appropriately considers the depreciated, actual cash value of the vehicle at the time of loss;

- Create and implement procedures for determining whether an insurer previously obtained subrogation payments from a third-party tortfeasor involved in the loss, and determine how and in what proportions such payments should reduce the proportional recovery of any subrogation claim;

- Create and implement procedures for class members to challenge the alleged subrogation claims of insurance companies, including a process for adjudicating or resolving such challenges;

- Create and implement a secondary settlement payment calculation that excludes subrogation claims from the initial calculation in which each claimant is entitled to a minimum payment of $100 because the proportional payment required for subrogation claims would necessarily affect claims already included in the initial calculation.

23. The creation and implementation of each of these additional processes and procedures will require significant time, expense, and resources. Currently, it is difficult to assess the amount of additional time, expense, and resources it would take to create and implement the above processes and procedures. It is also difficult to estimate the additional time, expense, and resources it will require to process subrogation claims that FRS might submit. However, Epiq anticipates that the time, expense, and resources required to create and implement additional procedures for subrogation claims would be significant. It may delay the claims administration process a year or more.

24. At a minimum the processing and verification of subrogation claims would add many additional months to the claims-administration process. Distribution of the settlement funds would be further, and indefinitely, delayed by

any objections or appeals filed by class members or Class Counsel to address subrogation claims that are not contemplated by the existing plan of allocation.

25. If a new notice to the classes of a revised Plan of Allocation and informing class members that subrogation clams will now be allowed for the first time would be required by the Court, the cost of the new notice would be substantial. The additional administrative expenses would also cost many hundreds of thousands of dollars. Indeed, the information required to validate subrogation claims would be extensive and require considerable time and effort that goes well beyond the time and effort required to vet the claims of individual class members who complied with the Court's order by timely submitting claims in accordance with the Court's notice requirements and the Court-ordered claims deadline.

26. Accordingly, the resources needed to process and verify late-filed subrogation claims would be significant, require substantial additional expenses to be paid out of the class settlement funds, and prejudice the efficient and cost-effective administration of this already complex claims administration process.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 14th day of May 2021, in Seattle Washington.

                                                Brian A. Pinkerton

12

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Jenna G. Farleigh*
Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
