# Exhibit 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| THIS DOCUMENT RELATES TO:<br><br>ALL END-PAYOR ACTIONS | Hon. Sean F. Cox<br>Mag. Judge R. Steven Whalen |

### DECLARATION OF JEFFREY N. LEIBELL
### IN RESPONSE TO THE
### DECLARATION OF BRIAN A. PINKERTON[1]

I, JEFFREY N. LEIBELL, declare:

1. I am Chief Legal and Financial Officer of Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS"). I previously submitted two declarations in support of FRS's motion to intervene in this litigation (the "Intervention Motion"),[2] and two declarations in support of FRS's Emergency

---

[1] Declaration of Brian A. Pinkerton in Support of End-Payor Plaintiffs' Motion to Strike Financial Recovery Services, LLC's Motion for Reconsideration of the Court's April 28, 2021 Opinion and Order, ECF No. 2138-1, PageID.39315 (the "Pinkerton Declaration"). All terms with initial capitalization that are not defined in this declaration have the same meanings as those set forth in the Memorandum of Law in Support of FRS's Intervention Motion, ECF No. 2060, PageID.37697, or in Declaration of Daniel W. Shoag, Ph.D., Concerning Total Loss Vehicle Data Submitted by Financial Recovery Services, LLC, ECF No. 2137-5, PageID.39225 (the "Shoag Declaration"). Unless otherwise specified, all references herein to docket entries are to the docket in 12-md-02311.

[2] Declaration of Jeffrey N. Leibell, ECF No. 2060-2, PageID.37726; Reply Declaration of Jeffrey N. Leibell, ECF No. 2073-1, PageID.38083.

Motion to Compel Acceptance and Processing of Vehicle Data (the "Data Motion").[3] This declaration, the primary purpose of which is to respond to the Pinkerton Declaration, is based on my personal knowledge and, as described in the declaration that I submitted in support of the Data Motion, the expertise that I gained in my two-and-a-half decades of experience in class action settlements and their distributions.[4]

## TOTAL LOSS VEHICLE DATA

2.      In his declaration of May 7, 2021, Professor Shoag described the process that, as of that date, he had undertaken to identify, process, and compile the Total Loss Vehicle Data that, for each Total Loss Vehicle, would be submitted to Epiq in support of the proof of claim form that, on or before June 18, 2020, FRS submitted on behalf of each Insurer.[5] At that time, Professor Shoag had identified from among the over 3.5 million Indemnified Vehicles those that are Total Loss Vehicles,[6] but he had not yet completed his analysis of the data provided by the

---

[3] Declaration of Jeffrey N. Leibell in Support of Financial Recovery Services LLC's Emergency Motion, ECF No. 2114-2, PageID.38335 ("Leibell Declaration"); Declaration of Jeffrey N. Leibell in Further Support of Financial Recovery Services, LLC's Emergency Motion, ECF No. 2126-2, PageID.39113 ("Leibell Further Reply Declaration").

[4] Leibell Declaration ¶¶ 2-6, PageID.38336-39.

[5] *See* Shoag Declaration ¶¶ 20-26, PageID.39237-39240.

[6] *See* Shoag Declaration ¶ 26, PageID.39240.

2

Salvage Vendors and Experian to provide the Total Loss Vehicle Data necessary to complete for each Insurer the fields requested by the Claim Form.[7]

3.  I previously represented to the Court that FRS would submit to Epiq, for all Total Loss Vehicles, the data requested by the proof of claim form within 90 days of March 10, 2021, or by June 8, 2021.[8] On May 17, 2021, well-before that date, FRS submitted to Epiq, together with a supplemental declaration from Professor Shoag, an Excel workbook that, in a separate tab for each of six Insurers, provides complete Total Loss Vehicle Data.[9] As requested by the proof of claim form, the Excel workbook provides, for each of 627,880 Total Loss Vehicles, the VIN; the vehicle's year, make and model; its approximate date of purchase or lease; whether it was purchased or leased; the state of residence or principal place of business of the purchaser or lessee at the time it was purchased or leased; and that it was new when purchased or leased.

4.  The highly reliable and independent sources for 100% of that Total Loss Vehicle Data are records maintained by the Salvage Vendors in the ordinary

---

[7] *See* Shoag Declaration ¶ 27, PageID.39240. The Total Loss Vehicle Data provided in the Shoag Declaration is based upon the data available to Professor Shoag as of the date of his declaration. He may review, analyze, and evaluate information that becomes available to him in the future.

[8] *See* Leibell Further Reply Declaration ¶ 22, PageID.39129.

[9] Those six Insurers are Liberty Mutual Holding Company, Inc.; CSAA Insurance Group; Mercury Insurance Services, LLC; American International Group, Inc.; Utica Mutual Insurance Company; and W.R. Berkley Corporation.

course of their businesses, and the Experian AutoCheck® platform. That Total Loss Vehicle Data, which has now been submitted before Epiq disseminated audit or deficiency letters, is easily uploaded by Epiq into its database for the administration of the End-Payor Settlements, and, notwithstanding its volume, should require little, if any, additional work.

## THE PINKERTON DECLARATION

5.  This is the fourth declaration that Mr. Pinkerton has submitted in support of Class Counsel's attempts improperly to prevent Insurers from exercising the most fundamental of rights afforded to members of a class certified under Rule 23(b)(3): obtaining from this Court a determination of their membership in the End-Payor Settlement classes.[10]

6.  Mr. Pinkerton presents no new information, other than stating for the first time (at ¶ 15, PageID.39319-39320), and in direct contradiction to each of Epiq's previous communications that data submitted after June 18, 2020 in support

---

[10] Declaration of Brian A. Pinkerton in Support of End-Payor Plaintiffs' Opposition to Financial Recovery Strategies, LLC's Untimely Motion to Intervene, ECF No. 2097, PageID.38193; Declaration of Brian A. Pinkerton in Support of End-Payor Plaintiffs' Opposition to Financial Recovery Strategies, LLC's Untimely Motion to Intervene, ECF No. 2098-1, PageID.38210 (this declaration was filed to replace ECF No. 2097, which Class Counsel had filed improperly); Declaration of Brian A. Pinkerton in Support of End-Payor Plaintiffs' Opposition to Financial Recovery Services, LLC's Motion to Compel Acceptance & Processing of Vehicle Data, ECF No. 2120-1, PageID.38479.

of timely filed "placeholder" claims would not be processed,[11] that Epiq is processing all vehicle data submitted after the claim-filing deadline except the Insurers' Total Loss Vehicle Data. Though he repeats, again, purported concerns about the delays that processing Total Loss Vehicle Data will cause, he does not provide any facts to support that contention. Although Mr. Pinkerton surely has access to relevant information, he does not state, for example, how many proof of claim forms have been submitted to date and how many vehicles have been claimed on them; how many claim forms have been completely processed, partially processed, and not processed at all; how many will be sent deficiency notices and, given the current status of Epiq's administration, when he expects to disseminate audit and deficiency notices; and when he expects Epiq's administration to be completed such that Epiq will be ready to make recommendations about the distribution of settlement proceeds. And although he and Class Counsel have had my Reply Declaration since March 10, 2021, he has never responded to it, including to my point-by-point explanation about why his purported concerns regarding the processing of the Insurers' vehicle information are unfounded.[12]

---

[11] Declaration of Robin M. Niemiec in Support of Financial Recovery Services, LLC's Motion for Reconsideration of the Court's April 28 Opinion and Order ¶¶ 2-3, ECF No. 2137-2, PageID.39206-39207, & Ex. A, ECF No. 2137-3, PageID.39210-39220.

[12] *See* Leibell Reply Declaration ¶¶ 15-22, PageID.39124-39133.

7. Now that Total Loss Vehicle Data has been submitted, it is even clearer that none of the specific concerns posited by Mr. Pinkerton have factual support. Set forth below are point-by-point supplements to the responses provided in the Leibell Reply Declaration.

| Complaint | Response |
|---|---|
| a. The submission of Total Loss Vehicle Data after June 18, 2020 would cause delay; FRS provided no estimate on its timing. ECF No. 2120-1, ¶¶ 49, 51, PageID.38495-38496, 38497. | As described above, the Total Loss Vehicle Data is now submitted. Given its format, its completeness and accuracy, and its independent and reliable sources, as well as the fact that Epiq still has not disseminated deficiency or audit letters, and, therefore, is nowhere near competing its administration of the End-Payor Settlements, no delay or prejudice will occur as a result of processing the Total Loss Vehicle Data. |
| b. Subrogees will need to submit additional information. ECF No. 2120-1, ¶ 50, PageID.38496-38497. | The Total Loss Vehicle Data provides for each Total Loss Vehicle all of the information requested by the Claim Form approved by the Court. Moreover, each component of that information was provided by a reputable and reliable independent source. In addition to the requested information, the Total Loss Vehicle Data includes, as independently provided by the Salvage Vendors, the VIN for each Total Loss Vehicle. That confirms that the Insurer identified by the Salvage Vendor paid that Salvage Vendor to process that Total Loss Vehicle, which is evidence that the |

6

| Complaint | Response |
|---|---|
|  | vehicle was insured by that Insurer, it was deemed a total loss by that Insurer, and the Insurer indemnified the vehicle.[13] |
| c. Epiq will need to establish, and the Court will need to approve, additional procedures to create a proportionate sharing process to address the splitting of recoveries if both an owner/lessee and one of the Six Insurers claim the same Eligible Vehicle. ECF No. 2120-1, ¶ 53, PageID.38498. | As previously represented,[14] should Epiq determine that a VIN submitted by one of the Insurers also was claimed by another class member, that Insurer will withdraw its claim for that Total Loss Vehicle. In such an event, only the owner/lessee will recover, and, therefore, there is no need for any proportionate sharing process. |
| d. Because of a potential reduced payment to owners/lessees as a result of claimed Total Loss Vehicles, Epiq must contact and provide notice to any owner/lessee that claimed the same vehicle claimed by an Insurer to get from any such owner/lessee additional information, including its VIN. ECF No. 2120-1, ¶ 54, PageID.38498-38499. | As stated above and previously, each Insurer will withdraw its claim for any Total Loss Vehicle that also is claimed by the owner/lessee. Accordingly,<br><br>• there is no need for Epiq to contact, and potentially to confuse, the owner/lessee;<br><br>• there is no need for the owner/lessee to challenge a claim by an Insurer; and |

---

[13] *See* Shoag Declaration ¶ 14, PageID.39232 ("The only VINs provided by the Salvage Vendors were for Indemnified Vehicles that, because one of the Insurers had a contractual obligation to indemnify it, the Salvage Vendors fully processed. Therefore, I find it reasonable to conclude that, for the vehicles identified by the Salvage Vendors for each of the Insurers, it was insured by the Insurer identified by the Salvage Vendor, it was deemed a total loss by that Insurer, and the Insurer indemnified the vehicle.").

[14] *See, e.g.*, Leibell Further Reply Declaration ¶ 22.b.i, PageID.39129.

7

| Complaint | Response |
|---|---|
| | • there is no need to establish a procedure to address such a challenge.<br><br>Moreover, Epiq presumably already has in place procedures to assure that, when the same vehicle is claimed by multiple claimants, only the original purchaser/lessee recovers. |
| e. Processing claims for Total Loss Vehicles would require Epiq to develop procedures for handling claims based on equitable subrogation:<br><br>i. to match vehicles to those claimed by owners/lessees, ECF No. 2120-1, ¶ 55, PageID.38499; | Because FRS has provided VINs for every Total Loss Vehicle, there is nothing further that Epiq needs from any of the Insurers in order to enable Epiq to identify any overlap between Total Loss Vehicles and vehicles claimed by other class members. |
| ii. to review documentation concerning insurance coverage and indemnity payments, ECF No. 2120-1, ¶ 55, PageID.38499; | Because insurance coverage and indemnity payments for each Total Loss Vehicle are conclusively established by reliable information provided by independent sources—the Salvage Vendors and Experian's AutoCheck® platform—there is no need for the Insurers to undertake the additional burden to provide, and no need for Epiq to review, any additional documentation. |
| iii. to compare new vehicle purchase price to the indemnity payment and determine a | Neither the Plan of Allocation nor the Claim Form contemplates submission or review of information |

8

| Complaint | Response |
|---|---|
| proportional payment for subrogated claims, No. 2120-1, ¶ 55, PageID.38499; | about the original purchase price of claimed vehicles or any payment or benefit that a class member later received in connection with the vehicle, such as by selling it, trading it in, donating it to charity, or being indemnified for its value. The Plan of Allocation contemplates distributing to one claimant 100% of the prorated antitrust losses for each claimed eligible vehicle without considering the price paid. Accordingly, if no owner/lessee also claims a Total Loss Vehicle, 100% of the prorated antitrust losses for that Total Loss Vehicle must be paid to the Insurer. |
| iv. to determine whether an Insurer received any value from a tortfeasor or another insurance company, No. 2120-1, ¶ 55, PageID.38499; | *See* Item (e)(iii) above. |
| v. to permit an owner/lessee to challenge an Insurer's claim to the same Eligible Vehicle, No. 2120-1, ¶ 55, PageID.38499; and | Because the Insurers will withdraw any claim for a Total Loss Vehicle that, based on VINs, also was claimed by an owner/lessee, there is no need to implement a procedure for an owner/lessee to challenge a claim by one of the Insurers. |
| vi. to create a secondary settlement payment calculation that excludes subrogation claims, No. 2120-1, ¶ 55, PageID.38500. | Based on the foregoing responses, there is no basis on which to exclude Total Loss Vehicles from any calculation of settlement payments. |
| f. The creation and implementation of the additional | As explained above, there is no need for any of the procedures |

9

| Complaint | Response |
|---|---|
| procedures will (i) require significant time, expense, and resources; (ii) add many additional months to the administration process; (iii) delay indefinitely the distribution as a result of appeals or objections made by owners/lessees; and require the dissemination of notice to owners/lessees. No. 2120-1, ¶¶ 56-60, PageID.38500-38501. | Mr. Pinkerton hypothesizes. FRS has provided for each Total Loss Vehicle all of the information requested by the proof of claim form, as well as additional information that, though not requested, conclusively establishes Insurers' indemnity payments, which is all that is required to entitle an Insurer to equitable subrogation. Therefore, contrary to Mr. Pinkerton's position, Epiq will not need to expend any time and effort, let alone "significant resources" or "substantial expenses," to process claims for Total Loss Vehicles. |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of May 2021, in Great Neck, New York.

_____<br>Jeffrey N. Leibell

11