# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

---

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

No. 12-md-02311
Hon. Sean F. Cox

---

| | |
|---|---|
| IN RE : WIRE HARNESS | CASE NO. 2:12-CV-00103 |
| IN RE : INSTRUMENT PANEL CLUSTERS | CASE NO. 2:12-CV-00203 |
| IN RE : FUEL SENDERS | CASE NO. 2:12-CV-00303 |
| IN RE : HEATER CONTROL PANELS | CASE NO. 2:12-CV-00403 |
| IN RE : BEARINGS | CASE NO. 2:12-CV-00503 |
| IN RE : OCCUPANT SAFETY SYSTEMS | CASE NO. 2:12-CV-00603 |
| IN RE : ALTERNATORS | CASE NO. 2:13-CV-00703 |
| IN RE : ANTI-VIBRATIONAL RUBBER PARTS | CASE NO. 2:13-CV-00803 |
| IN RE : WINDSHIELD WIPERS | CASE NO. 2:13-CV-00903 |
| IN RE : RADIATORS | CASE NO. 2:13-CV-01003 |
| IN RE : STARTERS | CASE NO. 2:13-CV-01103 |
| IN RE : AUTOMOTIVE LAMPS | CASE NO. 2:13-CV-01203 |
| IN RE : SWITCHES | CASE NO. 2:13-CV-01303 |
| IN RE : IGNITION COILS | CASE NO. 2:13-CV-01403 |
| IN RE : MOTOR GENERATOR | CASE NO. 2:13-CV-01503 |
| IN RE : STEERING ANGLE SENSORS | CASE NO. 2:13-CV-01603 |
| IN RE : HID BALLASTS | CASE NO. 2:13-CV-01703 |
| IN RE : INVERTERS | CASE NO. 2:13-CV-01803 |
| IN RE : ELECTRONIC POWERED STEERING ASSEMBLIES | CASE NO. 2:13-CV-01903 |
| IN RE : AIR FLOW METERS | CASE NO. 2:13-CV-02003 |
| IN RE : FAN MOTORS | CASE NO. 2:13-CV-02103 |
| IN RE : FUEL INJECTION SYSTEMS | CASE NO. 2:13-CV-02203 |
| IN RE : POWER WINDOW MOTORS | CASE NO. 2:13-CV-02303 |
| IN RE : AUTOMATIC TRANSMISSION FLUID WARMERS | CASE NO. 2:13-CV-02403 |

| | |
|---|---|
| IN RE :  VALVE TIMING CONTROL DEVICES | CASE NO. 2:13-CV-02503 |
| IN RE :  ELECTRONIC THROTTLE BODIES | CASE NO. 2:13-CV-02603 |
| IN RE :  AIR CONDITIONING SYSTEM | CASE NO. 2:13-CV-02703 |
| IN RE :  WINDSHIELD WASHER | CASE NO. 2:13-CV-02803 |
| IN RE :  AUTOMOTIVE CONSTANT VELOCITY        JOINT BOOT PRODUCTS | CASE NO. 2:14-CV-02903 |
| IN RE :  SPARK PLUGS | CASE NO. 2:15-CV-03003 |
| IN RE :  AUTOMOTIVE HOSES | CASE NO. 2:15-CV-03203 |
| IN RE :  SHOCK ABSORBERS | CASE NO. 2:15-CV-03303 |
| IN RE :  BODY SEALING PRODUCTS | CASE NO. 2:16-CV-03403 |
| IN RE :  INTERIOR TRIM PRODUCTS | CASE NO. 2:16-CV-03503 |
| IN RE :  BRAKE HOSES | CASE NO. 2:16-CV-03603 |
| IN RE :  EXHAUST SYSTEMS | CASE NO. 2:16-CV-03703 |
| IN RE :  CERAMIC SUBSTRATES | CASE NO. 2:16-CV-03803 |
| IN RE :  POWER WINDOW SWITCHES | CASE NO. 2:16-CV-03903 |
| IN RE :  AUTOMOTIVE STEEL TUBE | CASE NO. 2:16-CV-04003 |
| IN RE :  ACCESS MECHANISMS ACTIONS | CASE NO. 2:16-CV-04103 |
| IN RE :  DOOR LATCHES | CASE NO. 2:17-CV-04303 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

## MOTION TO ENFORCE END PAYOR SETTLEMENTS AND STRIKE CONTRADICTORY AND IMPROPER STIPULATION

Enterprise Fleet Management, Inc. ("EFM") respectfully moves the Court to enforce the express terms of the End Payor settlements, strike the contradictory and improper Class Action Capital, LLC Stipulation from the record, and instruct the Claims Administrator to process EFM's claim according to the Court-approved Plans of Allocation.

In support of this Motion, EFM relies upon and incorporates by reference herein the facts and legal arguments set forth in the accompanying Memorandum.

In accordance with E.D. Mich. LR 7.1(a)(2), counsel for EFM explained the nature of the present motion to Class Counsel. Class Counsel has advised that they oppose the motion; Defendants take no position on the motion.

March 17, 2022                                    Respectfully submitted,


                                                  By: */s/ Lawrence J. Lines III*
                                                  Lawrence J. Lines III
                                                  Crowell & Moring LLP
                                                  3454 Shakespeare Dr.
                                                  Troy, MI 48084
                                                  Telephone: (949) 798-1389
                                                  Facsimile: (949) 263-8414
                                                  Email: jlines@crowell.com

Deborah E. Arbabi                                 Emma K. Burton
Daniel A. Sasse                                   Ann L. Rives
Crowell & Moring LLP                              Crowell & Moring LLP
3 Park Plaza, 20th Floor                          1001 Pennsylvania Avenue, NW
Irvine, CA 92614-8505                             Washington, DC 20004
Telephone: (949) 263-8400                         Telephone: (202) 624-2500
Facsimile: (949) 263-8414                         Facsimile: (202) 628-5116
Email:  darbabi@crowell.com                       Email: eburton@crowell.com
        dsasse@crowell.com                               arives@crowell.com


                                                  *Counsel for Enterprise Fleet*
                                                  *Management, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

IN RE: AUTOMOTIVE PARTS                              No. 12-md-02311
ANTITRUST LITIGATION                                 Hon. Sean F. Cox

IN RE :  WIRE HARNESS                         CASE NO. 2:12-CV-00103
IN RE :  INSTRUMENT PANEL CLUSTERS            CASE NO. 2:12-CV-00203
IN RE :  FUEL SENDERS                         CASE NO. 2:12-CV-00303
IN RE :  HEATER CONTROL PANELS                CASE NO. 2:12-CV-00403
IN RE :  BEARINGS                             CASE NO. 2:12-CV-00503
IN RE :  OCCUPANT SAFETY SYSTEMS              CASE NO. 2:12-CV-00603
IN RE :  ALTERNATORS                          CASE NO. 2:13-CV-00703
IN RE :  ANTI-VIBRATIONAL RUBBER PARTS        CASE NO. 2:13-CV-00803
IN RE :  WINDSHIELD WIPERS                    CASE NO. 2:13-CV-00903
IN RE :  RADIATORS                            CASE NO. 2:13-CV-01003
IN RE :  STARTERS                             CASE NO. 2:13-CV-01103
IN RE :  AUTOMOTIVE LAMPS                     CASE NO. 2:13-CV-01203
IN RE :  SWITCHES                             CASE NO. 2:13-CV-01303
IN RE :  IGNITION COILS                       CASE NO. 2:13-CV-01403
IN RE :  MOTOR GENERATOR                      CASE NO. 2:13-CV-01503
IN RE :  STEERING ANGLE SENSORS               CASE NO. 2:13-CV-01603
IN RE :  HID BALLASTS                         CASE NO. 2:13-CV-01703
IN RE :  INVERTERS                            CASE NO. 2:13-CV-01803
IN RE :  ELECTRONIC POWERED                   CASE NO. 2:13-CV-01903
STEERING ASSEMBLIES
IN RE :  AIR FLOW METERS                      CASE NO. 2:13-CV-02003
IN RE :  FAN MOTORS                           CASE NO. 2:13-CV-02103
IN RE :  FUEL INJECTION SYSTEMS               CASE NO. 2:13-CV-02203
IN RE :  POWER WINDOW MOTORS                  CASE NO. 2:13-CV-02303
IN RE :  AUTOMATIC TRANSMISSION               CASE NO. 2:13-CV-02403
FLUID WARMERS

i

| | | |
|---|---|---|
| IN RE : | VALVE TIMING CONTROL DEVICES | CASE NO. 2:13-CV-02503 |
| IN RE : | ELECTRONIC THROTTLE BODIES | CASE NO. 2:13-CV-02603 |
| IN RE : | AIR CONDITIONING SYSTEM | CASE NO. 2:13-CV-02703 |
| IN RE : | WINDSHIELD WASHER | CASE NO. 2:13-CV-02803 |
| IN RE : | AUTOMOTIVE CONSTANT VELOCITY    JOINT BOOT PRODUCTS | CASE NO. 2:14-CV-02903 |
| IN RE : | SPARK PLUGS | CASE NO. 2:15-CV-03003 |
| IN RE : | AUTOMOTIVE HOSES | CASE NO. 2:15-CV-03203 |
| IN RE : | SHOCK ABSORBERS | CASE NO. 2:15-CV-03303 |
| IN RE : | BODY SEALING PRODUCTS | CASE NO. 2:16-CV-03403 |
| IN RE : | INTERIOR TRIM PRODUCTS | CASE NO. 2:16-CV-03503 |
| IN RE : | BRAKE HOSES | CASE NO. 2:16-CV-03603 |
| IN RE : | EXHAUST SYSTEMS | CASE NO. 2:16-CV-03703 |
| IN RE : | CERAMIC SUBSTRATES | CASE NO. 2:16-CV-03803 |
| IN RE : | POWER WINDOW SWITCHES | CASE NO. 2:16-CV-03903 |
| IN RE : | AUTOMOTIVE STEEL TUBE | CASE NO. 2:16-CV-04003 |
| IN RE : | ACCESS MECHANISMS ACTIONS | CASE NO. 2:16-CV-04103 |
| IN RE : | DOOR LATCHES | CASE NO. 2:17-CV-04303 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE END PAYOR SETTLEMENTS AND STRIKE CONTRADICTORY AND IMPROPER STIPULATION

## **STATEMENT OF THE ISSUES PRESENTED**

1.    Whether Fleet Management Companies (FMCs) who purchased qualifying new vehicles not for resale and held title to those vehicles are Settlement Class Members:

**Answer:** Yes. As Class Counsel has acknowledged in writing, and consistent with the clear Settlement Class definition, FMCs who purchased qualifying new vehicles and held title to those vehicles during the duration of any subsequent lease to FMC customers are Settlement Class Members, and their timely, valid claims should be processed according to the Court-approved Plans of Allocation.

2.    Whether the stipulated resolution regarding FMC class eligibility that Class Counsel negotiated privately with four FMCs and their third-party filer, but intends to apply to EFM and all other class members, is contrary to the Court-approved settlements and Plans of Allocation, and in violation of *Illinois Brick* jurisprudence as well as privity of contract principles:

**Answer:** Yes. The Stipulation is improper and must be struck as it (a) denies FMCs the recovery to which they are entitled by purporting to exclude them from the Settlement Class, while simultaneously binding them to the class release; (b) excludes FMCs from the Settlement Class, but nonetheless provides a "service fee" payment to FMCs from the settlement fund, thereby diluting recovery for all class members who filed valid, timely claims; and (c) requires FMCs to pass on a portion of their claimed vehicle recovery to their own customers regardless of the customers' nexus to a qualifying state under the settlements, and regardless of whether their customers filed valid, timely claims—thereby violating the approved Plans of Allocation that provide compensation only to eligible class members who submitted timely and valid claims.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*In re Auto. Parts Antitrust Litig. (Anti-Vibration Rubber Parts)*, 997 F.3d 677 (6th Cir. 2021)

*Stromberg v. Qualcomm, Inc.*, 14 F.4th 1059 (9th Cir. 2021)

*In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016)

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF THE ISSUES PRESENTED.....................................................iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES...........................iv

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

ARGUMENT......................................................................................................5

I. EFM is a member of the Settlement Class.................................5

    A. Class Counsel acknowledged—in writing—as early as 2019 that fleet management companies are class members...............................................................5

    B. The plain language of the settlements explicitly includes EFM as a member of the Settlement Class..................................................................................7

    C. The express terms of EFM's lease agreements place EFM squarely within the Settlement Class as EFM clearly owns its vehicles and holds title to those vehicles for the entire duration of any lease to its customers. ............................................................9

    D. The Court-approved class definition includes both owners and lessees, and the fact that valid claims were filed to the same vehicles by both is a product of the clear and unambiguous Settlement Class definition......................................................................10

II. The CAC Stipulation violates the approved Plans of Allocation by compensating non-class members and class members who failed to file valid, timely claims, and raises serious concerns about the scope of the class release....................................................................................12

    A. The CAC Stipulation diminishes qualifying state claims in violation of Illinois Brick by allowing—in fact, requiring—FMCs to pass on settlement funds to their non-qualifying state customers. .............13

## **TABLE OF CONTENTS**
### (continued)

**Page**

**B**.     The CAC Stipulation violates the approved Plans of Allocation by allowing—in fact, requiring—FMCs to pass on settlement funds to class members who failed to file timely claims, or any claim at all......................................................17

**C**.     Class Counsel is improperly attempting to enforce the CAC Stipulation against EFM, as well as other FMCs not a party to the stipulation negotiations, in violation of basic privity of contract principles.............19

**D**.     The CAC Stipulation raises significant questions about application of the class release, increasing the likelihood of protracted litigation and threatening to further delay distribution. ......................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Auto Parts Antitrust Litig. (Air Conditioning Systems)*,
No. 2:13-cv-02703-SFC (E.D. Mich.)............................................................7, 15

*In re Auto. Parts Antitrust Litig. (Anti-Vibration Rubber Parts)*,
997 F.3d 677 (6th Cir. 2021) ...............................................................8, 9

*In re Auto Parts Antitrust Litig. (Heater Controls)*,
No. 12-cv-00403-SFC (E.D. Mich.) ...........................................................11

*In re Auto Parts Antitrust Litig. (Wire Harness)*,
No. 12-cv-00103-SFC (E.D. Mich.) ........................................................16, 17

*E.E.O.C. v. Frank's Nursery & Crafts, Inc.*,
177 F.3d 448 (6th Cir. 1999) ................................................................20

*Hege v. Aegon USA, LLC*,
780 F.Supp. 2d 416 (D.S.C. 2011) ...........................................................18

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)....................................................................*passim*

*In re Navistar Maxxforce Engines Marketing, Sales Practices and
Products Liability Litigation*,
No. 1:14-cv-10318 (N.D. Ill.)...............................................................12

*In re Optical Disk Drive Antitrust Litig.*,
No. 3:10-MD-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016)...........14, 15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................20

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003).......................................................................15

*Stromberg v. Qualcomm, Inc.*,
14 F.4th 1059 (9th Cir. 2021) ...............................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 10-cv-4945, 2013 WL 4175253 (N.D. Cal. July 11, 2013) ......................... 15

**State Cases**

*Rockwood v. Hugg*,
  129 N.W.2d 380 (Mich. 1964) ............................................................................. 20

**Other Authorities**

Ann. Manual Complex Lit. § 21.312 (4th ed.) ........................................................ 18

Trial Handbook for Michigan Lawyers § 13:7 ........................................................ 20

# **INTRODUCTION**

Automotive Parts End Payor Settlement Class member Enterprise Fleet Management, Inc. ("EFM") brings this motion to respectfully request that the Court enforce the express terms of the End Payor settlements, strike the contradictory and improper Class Action Capital, LLC ("CAC") Stipulation from the record, and instruct the Claims Administrator to process EFM's claim according to the Court-approved Plans of Allocation.[1]

Under the clear class definition, EFM is a valid member of the Settlement Class, having purchased over a million qualifying new vehicles during the settlement time period. Not surprisingly, Class Counsel confirmed EFM's class membership in written correspondence more than two years ago, and prior to EFM's filing of a timely, valid claim. Now, in a complete reversal of its 2019 position, Class Counsel is attempting to exclude EFM and other similarly situated fleet management companies ("FMCs") from the class. Class Counsel cannot unilaterally do this as the Settlement Class definition clearly and unambiguously includes EFM and other FMCs as entities that "purchased or leased a new Vehicle in the United States not for resale." Had the settling parties wanted to exclude FMCs, they could have done

---

[1] This Motion relates to the distribution of settlement funds in all of the End Payor Actions and has, accordingly, been filed in Master File No. 12-md-02311. All citations are to the Master File unless otherwise noted. Should the Court prefer to receive separate Motions in each action, EFM will file in the individual cases, as well.

so by including them in the list of express exclusions in the Settlement Agreements. They did not, and because the settlement language is "clear and unambiguous," Class Counsel is now prohibited from attempting to remove EFM and other FMCs from their rightful place in the class.

Equally, if not more, improper are the terms of the January 10, 2022, Stipulation that Class Counsel reached with CAC and four of its FMC clients to try to resolve any perceived issue with FMC eligibility. Despite negotiating with only a subgroup of FMCs, Class Counsel reached a stipulated resolution that requires *all* FMCs who submitted timely, valid claims to "pass on" 80% of any recovery from the settlement fund to their lessee customers, regardless of whether the customer filed a claim, or was ever even eligible to file a claim without any nexus to a qualifying state under *Illinois Brick*. In so doing, the CAC Stipulation clearly violates the Court-approved Plans of Allocation and the rights of all eligible class members who filed timely, valid claims.

The CAC Stipulation also raises serious questions about the class release as to FMCs, who together purchased tens of millions of qualifying vehicles during the class period. If, as Class Counsel maintains, FMCs are simply indirect purchasers that passed costs through to their own customers and are thus excluded from the End Payor Settlement Class, they should not be paid any settlement proceeds and cannot be bound by the class release. But the CAC Stipulation provides a 20% "service fee"

payment to FMCs from the class settlement fund, in direct contradiction to Class Counsel's position that FMCs are not class members. Class Counsel cannot have it both ways; the flawed stipulated resolution they reached with a subgroup of FMCs and their third-party claim filer is no resolution at all, and will undoubtedly lead to further litigation concerning class membership and the scope of the class release, together with further associated delay.

## **BACKGROUND**

Class member EFM purchased over a million qualifying new vehicles during the settlement time period and filed a valid and timely claim in advance of the June 18, 2020, claim filing deadline. Declaration of Emma K. Burton attached as Exhibit A ("Burton Decl.") ¶ 3; Declaration of Ryan C. Koenig attached as Exhibit B ("Koenig Decl.") ¶ 3. Prior to claim filing, counsel for EFM corresponded with Class Counsel in 2019 to confirm fleet management companies' inclusion in the settlement class, and EFM relied on Class Counsel's acknowledgment in pursuing its claim to the End Payor settlements. Burton Decl. ¶ 4.

Accordingly, after the September 15, 2021, filing of a Motion to Enforce the Settlement by four other FMCs referencing Class Counsel's intent to now exclude FMCs from the class (ECF No. 2149), EFM moved quickly to contact Class Counsel to confirm that Class Counsel's position with respect to FMC membership in the End Payor class was unchanged from its 2019 correspondence. *Id*. ¶¶ 6-7. To be

3

clear, the other FMCs' motion was the first time EFM learned that Class Counsel even had any question as to FMC membership in the End Payor class, given the fact that the class definition plainly included FMCs and particularly given Class Counsel's 2019 written confirmation.[2]  Burton Decl. ¶ 12. Over the course of the nearly four months that followed, counsel for EFM contacted Class Counsel no less than ten times in an effort to be included in resolution of any perceived issues with FMC inclusion in the class. *Id.* ¶ 10. During this time, Class Counsel moved for five separate extensions to the briefing deadlines for Response and Reply to the original FMC motion to enforce, each time assuring EFM that filing its own motion to enforce the settlements would be premature.

Significantly, Class Counsel refused to disclose to EFM any details of its discussions with the other FMCs or their third-party filer CAC, and disclosed none of the terms of what ultimately became CAC's Stipulation, despite the fact that Class Counsel later revealed its intent to apply the Stipulation terms to *all* FMCs, EFM

_____

[2]  EFM has received no correspondence or other communication from the Claims Administrator denying or otherwise limiting its claim and the present Motion is necessitated by communications with Class Counsel and the CAC Stipulation entered January 10, 2022. Burton Decl. ¶ 5. It is worth noting that the Motion to Enforce the Settlements filed by four other FMCs on September 15, 2021, advocated for FMC inclusion in the End Payor class and raised substantially similar arguments to those raised here by EFM. *Id.* ¶ 6. The other FMCs withdrew that Motion only after negotiating what would ultimately become the CAC Stipulation with Class Counsel. *Id.* ¶ 10.

included. *Id*. ¶¶ 10-11, 13. In so doing, Class Counsel effectively locked EFM out of negotiating resolution of the FMC issue and now seeks to enforce against EFM a Stipulation that it was afforded no part in crafting, and which contradicts both the class definition and Class Counsel's prior written representations concerning FMC class membership. In fact, the first EFM learned of the terms of the CAC Stipulation was when it was docketed with the accompanying Order.[3] *Id*. ¶ 12. Following the filing of the CAC Stipulation, EFM again made numerous attempts to negotiate with Class Counsel, but the parties were unable to reach a resolution. *Id*. ¶¶ 13-14.

Accordingly, the present Motion is the timely culmination of months of good faith effort by EFM to confirm its inclusion in the End Payor class with Class Counsel, consistent with their prior representation and the Court-approved class definition—and raising serious concerns about the inequity of the CAC Stipulation once it was docketed—to no avail.

## **ARGUMENT**

### I.     **EFM is a member of the Settlement Class.**

#### A.     **Class Counsel acknowledged—in writing—as early as 2019 that fleet management companies are class members.**

Class Counsel explicitly acknowledged in written correspondence in 2019 that FMCs who purchase new vehicles and hold title to those vehicles are members of

---

[3] The proposed CAC Stipulation was not docketed or otherwise made available for public review prior to the Court's January 10, 2022, Order. Burton Decl. ¶ 12.

the End Payor class. In response to a written request to confirm that FMCs who purchase and hold title to new vehicles are within the class definition and not otherwise excluded from the class by virtue of leasing their vehicles out to customers under long term leases, Class Counsel wrote:

> "As discussed on our call, we will address many of the issues related to fleet management companies on a case-by-case basis. However*, assuming for purposes of this response that the fleet management company at issue purchased new vehicles and retained title to those new vehicles while leasing them to customers under long term leases, those fleet management companies would be included in the class.*"

Exh. 1 to Burton Decl. (emphasis added).

Class Counsel's position in 2019 was clear and unambiguous, and it was consistent with the class definition. EFM relied on Class Counsel's representation in pursuing claims to the End Payor settlements as EFM indisputably satisfied Class Counsel's conditions by (a) purchasing new vehicles, and (b) retaining title to those new vehicles while leasing them to customers under long term leases. Koenig Decl. ¶¶ 4, 7. Now, despite the clear class definition and prior explicit representation confirming FMC class membership, Class Counsel is taking the opposite position, claiming that FMCs are simply indirect purchasers that passed costs through to their own customers and are therefore somehow excluded from the Settlement Class. *See* Element Fleet Corp. et al.'s Mem. ISO Mot. to Enforce Settlement Agreements, ECF No. 2149, PageID.39514. Not only is Class Counsel's current position diametrically

6

opposite its express written position in 2019, but it is contrary to the clear language of the End Payor settlements and EFM's own lease agreements.

**B.     The plain language of the settlements explicitly includes EFM as a member of the Settlement Class.**

The End Payor settlements clearly define Settlement Class Members as: "All persons and entities that . . . purchased or leased a new Vehicle in the United States not for resale, which included one or more [of the applicable component parts]." *E.g.*, Round 4 Mitsubishi Settlement Agreement, *In re Air Conditioning Sys.*, No. 2:13-cv-02703-SFC, ECF No. 184-2, PageID.4681. It is undisputed that all of EFM's claimed vehicles were purchased new. Koenig Decl. ¶ 4. Likewise, there is no dispute that any of EFM's claimed vehicles were purchased for resale—they were not. *Id.* EFM took title to its claimed vehicles, and held title for the entirety of its period of ownership, including for the duration of any lease of those vehicles to its own customers. *Id.* ¶ 7

Class Counsel does not dispute that EFM's claimed vehicles were purchased new.  Likewise, Class Counsel does not attempt to assert that EFM's claimed vehicles were purchased for resale. Nevertheless, Class Counsel now seeks to exclude EFM from the Settlement Class based solely on their new theory that FMCs are not "end payors" under antitrust law.

But whether FMCs are "end payors" under antitrust law is wholly irrelevant here in light of the approved class definition in the Settlement Agreements, which

renders moot the question of whether FMCs are or are not "end payors."  As the Sixth Circuit recently noted, "Whether Plaintiffs can maintain their direct-purchaser lawsuit under the ownership-or-control exception of *Illinois Brick* is a question of antitrust standing. ***It is not a question that bears on our interpretation of the settlement agreements.***" *In re Auto. Parts Antitrust Litig. (Anti-Vibration Rubber Parts)*, 997 F.3d 677, 683 (6th Cir. 2021) ("*Rubber Parts*") (emphasis added). The settling parties reached settlements precisely to avoid litigating such questions of law (and fact), and the Settlement Agreements approved by this Court include a clear and unambiguous definition of the Settlement Class. There is no question that EFM fits squarely within that Settlement Class definition, which should end any dispute as to whether EFM is a class member entitled to the compensation it is rightly due for its timely, valid claim.

Moreover, the settling parties here knew how to draft express exclusions from the Settlement Class and from the class-wide release—neither of which expressly exclude FMCs or, to invoke Class Counsel's new theory, indirect purchasers that passed costs through to other individuals or entities. In fact, the release includes express exclusions that permit only expressly-identified indirect purchasers to bring federal antitrust claims against Defendants, and FMCs are not among those expressly identified exclusions. Surely Defendants did not agree to billion-dollar settlements only to continue to face potential litigation from FMCs who together purchased tens

8

of millions of qualifying vehicles during the relevant period. Class Counsel's position here is untenable.

Further, under Michigan law, where—as here—contractual language is clear and unambiguous, terms are to be taken and understood in their plain, ordinary, and popular sense, and courts interpreting such contracts "look only within the four corners of the relevant contracts to accomplish [that] task." *Rubber Parts*, 997 F.3d at 681 (citing the Michigan Court of Appeals). Accordingly, the Court must look no further than the Settlement Agreements and the clear and unambiguous definition of the Settlement Class to find that EFM is a valid Class Member.

**C.   The express terms of EFM's lease agreements place EFM squarely within the Settlement Class as EFM clearly owns its vehicles and holds title to those vehicles for the entire duration of any lease to its customers.**

The terms of EFM's lease agreements make clear that it is a member of the Settlement Class. EFM, like most FMCs, purchases and takes title to its vehicles, maintaining exclusive ownership while its customers are granted only the right to use and possession of the vehicle during the term of the lease. Koenig Decl. ¶¶ 6-7. EFM's standard lease language includes express terms consistent with EFM's ("Lessor's") position as vehicle owner and limitation of its customer's ("Lessee's") rights:

- "Lessor is the sole legal owner of each Vehicle."

9

- "This Agreement is a lease only and Lessee will have no right, title or interest in or to the Vehicles except for the use of the Vehicles as described in this Agreement."

- "This Agreement shall be treated as a true lease for federal and applicable state income tax purposes with Lessor having all benefits of ownership of the Vehicles."

- "Each Vehicle will be titled and licensed in the name designated by Lessor."

Ex. 1 to Koenig Decl.

Like most FMCs, the vast majority of EFM's leases are open-ended TRAC (Terminal Rental Adjustment Clause) leases, commonly used for titled equipment like vehicles, and different from the leases used by automotive dealerships in leasing vehicles to individual consumers. Koenig Decl. ¶ 5. Importantly, TRAC leases like EFM's are not considered sales and there is no basis in statute or precedent to treat EFM's lease of its vehicles to its customers as resale. Accordingly, EFM's lease of its vehicles to its customers does not exclude it from the Settlement Class.

**D. The Court-approved class definition includes both owners and lessees, and the fact that valid claims were filed to the same vehicles by both is a product of the clear and unambiguous Settlement Class definition.**

The Settlement Class consists of "[a]ll persons and entities that . . . ***purchased or leased*** a new Vehicle in the United States not for resale, which included one or more [of the applicable component parts]." *E.g.*, Round 4 Mitsubishi Settlement Agreement, No. 2:13-cv-02703-SFC, ECF No. 184-2, PageID.4681 (emphasis added). In recent discussions with EFM, Class Counsel has raised concerns that the

10

parties could not have anticipated duplicate claims filed to the same vehicle—one by an FMC owner and the other by the FMC's customer lessee. Burton Decl. ¶ 8. But Class Counsel clearly knew at the time of its November 2019 correspondence—acknowledging FMC inclusion in the End Payor class—that FMCs lease vehicles out to their customers and intended to pursue claims to the settlement fund, and yet Class Counsel continued to include both owners and lessees in the class definition.[4] That the clear language of the Settlement Class provides recovery to both the owner and lessee of the same vehicle is a consequence of the approved class definition, negotiated by the parties and approved by the Court.

Nothing in the Settlement Agreements or the Plans of Allocation provides any basis for apportioning funds on a per-vehicle basis as the CAC Stipulation would now require. Had the settling parties intended to apportion funds for a single vehicle between valid claimants—for example, between an FMC owner and its customer lessee—they could have drafted plans of allocation that provided for a *pro rata* distribution based on the number of eligible *vehicles* claimed, rather than the number

---

[4] The *Proposed Further Revised Plan of Allocation and Distribution of the Automotive Parts Settlement Funds*, filed in December 2019—just weeks after Class Counsel's correspondence acknowledging FMC inclusion in the class—clearly defined the settlement class as including "Persons or entities who purchased or leased a new Vehicle," and specifying that, "[a]s to businesses. . . those . . . who purchased or leased a new Vehicle . . . will be entitled to share in the Net Settlement Funds." *In re Heater Control Panels*, 12-cv-00403-SFC, ECF No. 301-2, PageID.11012-11013.

of *claimants*, as the parties did in *In re Navistar Maxxforce Engines Marketing, Sales Practices and Products Liability Litigation*, Case No. 1:14-cv-10318 (N.D. Ill.) (explaining in settlement notice that "both the lessor (owner) and lessee of the Class Vehicle are Class Members and are each eligible for half of" the funds awarded for certain compensation options). Because the parties here negotiated a Settlement Class that expressly includes both owners and lessees, and proposed Plans of Allocation that compensate on a per-claimant basis, the practical—indeed required—consequence is the potential for recovery to both the owner and lessee of the same vehicle who file otherwise valid claims.

## II.    The CAC Stipulation violates the approved Plans of Allocation by compensating non-class members and class members who failed to file valid, timely claims, and raises serious concerns about the scope of the class release.

Despite clear evidence of EFM's proper inclusion in the Settlement Class, Class Counsel has attempted to strip away EFM's rights as a class member through its negotiated stipulation with four other FMCs and their third-party filer—a negotiation in which class counsel denied EFM the chance to participate despite repeated requests to do so.

But the CAC Stipulation is unfair not just to EFM but to the entire Settlement Class, in violation of *Illinois Brick* principles and its distinction between repealer and non-repealer states, *i.e.*, states that allow indirect purchaser actions to be brought

versus those states that do not. By obligating FMCs to "pass on" 80% of any settlement recovery to their customers, regardless of the customer's nexus to a qualifying state, Class Counsel does an end-run around non-repealer states' antitrust laws, which do not provide a mechanism for indirect purchaser recovery. Further, the CAC Stipulation violates the Court-approved Plans of Allocation by providing compensation to FMC customers regardless of whether the customer filed a timely, valid claim, or filed any claim at all. The CAC Stipulation also violates basic principles of contract privity by including language that would allow Class Counsel and the Claims Administrator to enforce the stipulation against FMCs such as EFM that had no part in the stipulation negotiations. Simply put, a subgroup of class members (or non-class members as Class Counsel apparently now maintains) cannot negotiate away the rights of other class members, let alone the entire class. And the CAC Stipulation raises serious questions about the class release with respect to all FMCs that, if allowed to stand, will lead to further litigation before this Court.

A.   **The CAC Stipulation diminishes qualifying state claims in violation of *Illinois Brick* by allowing—in fact, requiring—FMCs to pass on settlement funds to their non-qualifying state customers.**

The End Payor Settlement Class approved by this Court in each round of settlements includes class members with a nexus to 30 qualifying states plus the District of Columbia—each jurisdiction having passed a form of a repealer statute following the Supreme Court's decision to prohibit antitrust actions by indirect

purchasers in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Notably, Class Counsel did not attempt to certify a nationwide class, likely due to the inherent conflict multiple courts have noted between the laws of repealer and non-repealer states. *See, e.g., In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, *13 (N.D. Cal. Feb. 8, 2016) (IPPs conceding as a "true conflict" the issue of repealer vs. non-repealer jurisdictions; further, "IPPs would lack standing to pursue this action in the non-repealer jurisdictions, absent application of California law."). Rather, Class Counsel chose to create a class consisting of class members who had a nexus to states that allow indirect purchasers to bring claims—and excluding potential class members without such a connection.

Nevertheless, the language of the CAC Stipulation ignores the inherent repealer/non-repealer distinction by allowing—in fact, requiring—FMCs to pass on settlement funds to their FMC customers, regardless of a customer's nexus to a qualifying state. See CAC Stipulation ¶ 5, ECF No. 2182, PageID.39704 ("FMC Claimants shall be required to pass on the recoveries they obtain from the net settlement funds to the FMC Claimants' customers."). The pass on provision in the CAC Stipulation is in no way limited to FMC customers with a nexus to a qualifying state and does not require FMCs to provide any proof that the customers they have distributed settlement funds to actually have any such nexus to a qualifying state. *Id.* In so doing, the CAC Stipulation runs contrary to the settlements themselves by

14

allowing FMC customers with no nexus to a qualifying state, who could not have filed a claim of their own, to receive settlement funds to which they are not entitled.[5] The CAC Stipulation thereby does an end-run around the laws applicable in non-repealer states and dilutes the recovery of all valid claimants.

Courts generally reject plaintiffs' attempts to use one jurisdiction's more favorable *Illinois Brick* repealer provisions to rope in class members with non-repealer state connections. *See, e.g., In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *13 (N.D. Cal. Feb. 8, 2016) ("Given that the action simply could not go forward in non-repealer states, however, it is too much of a stretch to employ California law as an end run around the limitations those states have elected to impose on standing.").[6] Recognizing the importance of the repealer/non-repealer distinction, Class Counsel moved to certify a settlement class composed only of 31

---

[5] Notably, the class release includes an express exclusion for claims in jurisdictions other than those in an Indirect Purchaser State. *E.g.,* Round 4 Mitsubishi Settlement Agreement, *In re Air Conditioning Sys.*, No. 2:13-cv-02703-SFC, ECF No. 184-2, PageID.4686-4687. Accordingly, not only does the CAC Stipulation improperly provide compensation to entities with no nexus to a qualifying state, but does so without the recipient releasing any potential claim against the Defendants.

[6] Courts recognize and respect states' "explicit decision to follow the reasoning of the federal courts in precluding indirect purchasers from bringing suit based on the concerns outlined in Illinois Brick." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 4175253, at *2 (N.D. Cal. July 11, 2013). It is a well-established principle that "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).

repealer jurisdictions. In granting final approval of the settlements, the Court noted that the Settlement Class included only "those jurisdictions that allow [end payor plaintiffs], who are indirect purchasers, to seek money damages or restitution." Am. Op. and Order Granting Final Approval of Class Action Settlements, *In re Wire Harness*, No. 12-cv-00103-SFC, ECF No. 512, PageID.17218 (Aug. 9, 2016).

But the CAC Stipulation circumvents this material difference by not only allowing, but requiring, FMCs to pass on 80% of their settlement proceeds to their customers regardless of whether the customer has any nexus to a qualifying/repealer jurisdiction. In doing so, the CAC Stipulation not only contravenes the Settlement Class definition, but also contravenes applicable state laws, allowing indirect purchasers who would not otherwise be permitted to recovery to do so. That, in turn, will undoubtedly lead to additional challenges by valid claimants concerned over the dilution of the settlement fund.

When the End-Payor Settlements were negotiated, they were negotiated not for a nationwide class but for the *Illinois Brick* repealer jurisdictions only. Class Counsel clearly recognized then the "material differences" that exist between repealer and non-repealer states, namely "the difference between success and failure of a claim." *See Stromberg v. Qualcomm, Inc.*, 14 F.4th 1059, 1068 (9th Cir. 2021) (vacating district court's certification of a nationwide class because "the district court erred in its analysis at the first step because it overlooked variations in the

16

antitrust laws of *Illinois Brick*-repealer states."). The CAC Stipulation pass on requirement does an end run around those settlement negotiations and the Court-approved Settlement Class. Allowing the CAC Stipulation to stand risks upending the entire claims process.

> **B.    The CAC Stipulation violates the approved Plans of Allocation by allowing—in fact, requiring—FMCs to pass on settlement funds to class members who failed to file timely claims, or any claim at all.**

By requiring FMCs to pass on settlement funds to their customers, regardless of whether the customer filed a timely claim, or any claim at all, the CAC Stipulation contradicts the Court-approved Plans of Allocation and Notices from each round of settlements. In so doing, class members' due process rights have been violated, having relied on Notices that the CAC Stipulation has now rendered inaccurate.

The Plans of Allocation clearly define "Authorized Claimants" as Settlement Class members "who submit timely and valid claim forms." *E.g.*, Plan of Allocation, *In re Wire Harness*, No. 12-cv-00103, ECF No. 523-1, PageID.17592. And from the very first round of settlements in 2015, Class Counsel put potential claimants on notice that settlements claims would be paid on a *pro rata* basis, "based on the number of valid claims ***filed*** by all Class members." Initial Notice at 8, Round 1, http://www.autopartsclass.com/courtdocs.php#Notice (emphasis added). Similarly, the December 2019 Notice in the fourth round of settlements provides, "you will be required to submit a Claim Form to be eligible to receive a payment from any of the

Settlement Funds." Am. Dec. 2019 Notice, Round 4, at 1, 12, http://www.autopartsclass.com/courtdocs.php#Notice ("SUBMIT A CLAIM: The only way to get a payment.").

The CAC Stipulation, however, requires FMCs to pass on 80% of any recovery from the settlement fund to their customers irrespective of whether the customer filed any claim, let alone a timely, valid claim. Accordingly, the CAC Stipulation violates the clear language of the Plans of Allocation and class Notices, which require a class member to submit a timely, valid claim in order to receive payment.

It is well established that class counsel "has the burden of providing informative, accurate notice to class members," and where the notice contains incorrect information about the value of members' rights, that notice violates due process. *See Hege v. Aegon USA, LLC*, 780 F.Supp. 2d 416, 431 n. 10 (D.S.C. 2011); *see also* Ann. Manual Complex Lit. § 21.312 (4th ed.) (adequate notice should "explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set forth those variations"). Here, in determining not only whether to file a claim, but whether to opt-out of the Settlement Class, class members relied on the statements in the Notices from various rounds—namely that only class members **who filed claims** would be paid from settlement funds. The CAC

18

Stipulation upends those statements and potential claimants' expectations based on the approved Notice, allowing—indeed, requiring—class members who never filed a claim to be compensated from the settlement funds merely because they were an FMC customer.  Because the CAC Stipulation provides settlement funds to non-class members with no nexus to a qualifying state, as well as class members who failed to file valid, timely claims, it renders the Notices inaccurate, thereby violating the due process rights of all claimants. Unless the parties wish to re-notice the entire class consistent with the terms of the CAC Stipulation, the Stipulation must be struck from the record to protect all claimants' essential rights to due process.

**C.     Class Counsel is improperly attempting to enforce the CAC Stipulation against EFM, as well as other FMCs not a party to the stipulation negotiations, in violation of basic privity of contract principles.**

In negotiating the CAC Stipulation, Class Counsel engaged solely with CAC and its FMC clients and shut out EFM despite repeated attempts by EFM to engage in good faith discussions. *See* Burton Decl. ¶ 10. Nevertheless—and in disregard of basic contract privity principles—the CAC Stipulation makes clear that Class Counsel intends to apply the terms of the CAC Stipulation to *all* FMCs regardless of their participation in the negotiations:

> The Stipulating Parties further acknowledge and understand that Settlement Class Counsel and the Claims Administrator intend to apply the guidelines and procedures set forth below to ***all claims that have been submitted by or on behalf of any FMC or customer of an FMC***

*in the Auto Parts Litigation.*" CAC Stipulation ¶ J, ECF No. 2182, PageID.39702 (emphasis added).

It is well recognized that "courts cannot bind a non-party to a contract, because that party never agreed to the terms set forth therein." *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 460 (6th Cir. 1999) (applying Michigan law); *see also* Trial Handbook for Michigan Lawyers § 13:7 ("[p]arties cannot, by stipulation, affect any rights but their own, so that persons not parties to the stipulation are not bound thereby") (citing *Rockwood v. Hugg*, 129 N.W.2d 380, 382 (Mich. 1964)). Here, EFM made multiple attempts to engage with Class Counsel in the negotiations but to no avail. As EFM was not a party to the negotiations, it cannot be bound to the terms of the CAC Stipulation. In fact, Class Counsel cannot impose the CAC Stipulation's requirements on EFM or any other FMC class member that was not a party to the negotiations.

The dangers of allowing a subgroup of class members (or here, according to Class Counsel, non-class members) to negotiate away the rights of valid class members is real and not only violates basic principles of contract privity, but also runs contrary to the fiduciary duty Class Counsel owes to the entire class. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("class counsel's fiduciary duty is to the class as a whole"). The CAC Stipulation cannot be allowed to stand.

**D.    The CAC Stipulation raises significant questions about application of the class release, increasing the likelihood of protracted litigation and threatening to further delay distribution.**

The CAC Stipulation provides a 20% "service fee" be paid directly to FMCs from the class settlement fund by allowing the FMCs to deduct that amount before they pass on the remaining recoveries to their customers. ECF No. 2182, PageID.39705. Yet Class Counsel continues to maintain that FMCs are not class members, begging the question of why they are entitled—according to Class Counsel and the CAC Stipulation—to 20% "service fees" from the class settlement proceeds. Either they are class members entitled to full recovery for their valid claims and are bound by the class release (which they are by the clear and unambiguous language of the Settlement Agreements), or they are not class members, not entitled to any settlement funds, and not bound by the class release, thereby exposing Defendants to claims for tens of millions of qualifying vehicles purchased by FMCs despite billion-dollar settlements intended to provide certainty and resolution.

Not only is Class Counsel and CAC's Stipulation in direct conflict with the approved class definition, it is also internally inconsistent.  It provides FMCs with only a fraction of the recovery to which they are entitled by purporting to exclude them from the Settlement Class, but at the same time seemingly seeks to bind them to the class release. The stipulation is facially inconsistent, and inherently

indefensible. It violates the clear and unambiguous language of the Settlement Agreements, the Plans of Allocation, and the rights of all class members. The CAC Stipulation also creates very serious questions about the application of the class release as to FMCs and, if allowed to stand, will lead to further litigation before this Court and the potential for appeals.

*     *     *     *     *

For the forgoing reasons, EFM respectfully urges the Court to enforce the End Payor settlements by (1) recognizing EFM and other FMCs as eligible class members; (2) striking the CAC Stipulation as improper; and (3) instructing the Claims Administrator to process EFM and other FMC claims according to the Court-approved Plans of Allocation.

March 17, 2022                              Respectfully submitted,


                                           By: */s/ Lawrence J. Lines III*
                                           Lawrence J. Lines III
                                           Crowell & Moring LLP
                                           3454 Shakespeare Dr.
                                           Troy, MI 48084
                                           Telephone: (949) 798-1389
                                           Facsimile: (949) 263-8414
                                           Email: jlines@crowell.com

22

Deborah E. Arbabi
Daniel A. Sasse
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
Email: darbabi@crowell.com
        dsasse@crowell.com

Emma K. Burton
Ann L. Rives
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: eburton@crowell.com
        arives@crowell.com

*Counsel for Enterprise Fleet
Management, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2022, a copy of the foregoing was filed electronically using the Court's ECF system, which will send notification to each attorney of record by electronic means. Parties may access this filing through the Court's system.

Dated:  March 17, 2022                    By: */s/ Lawrence J. Lines III*
                                                          Lawrence J. Lines III