# EXHIBIT 1

| | |
|---|---|
| **From:** | Chanler A. Langham <clangham@SusmanGodfrey.com> |
| **Sent:** | Saturday, November 9, 2019 11:17 PM |
| **To:** | Burton, Emma; Sasse, Daniel; Dominguez, Stacy |
| **Cc:** | HSalzman@RobinsKaplan.com; Marc Seltzer; Adam Zapala; Reiss, William V.; Elizabeth Castillo; Jenna Farleigh; Feigenbaum, Noelle; Richard A. Wojtczak |
| **Subject:** | RE: Automotive Parts - End Payor -- follow-up to 10.16.19 call |

External Email

Emma,

I work with Marc and Will on the Auto Parts matter. Thank you for speaking with us about the claim submission process and plan of allocation for the End-Payor Plaintiff (EPP) settlements. We believe we previously discussed most of the items raised in your follow-up email, but would like to provide specific responses to each of your inquiries below:

1. Will a VIN be required for each claimed vehicle?

    - Yes, the VIN will be used to confirm ownership and title of the vehicle at the time of purchase. The VIN is also used to confirm whether the vehicle was new or used at the time of purchase, as well as the vehicle's unique features, specifications, and manufacturer. Therefore, we request that all claim submissions include the VIN.

2. What, if any, alternate information may be considered in the absence of a VIN for each claimed vehicle?

    - The Plan of Allocation requests the "make, model, model year, and VIN number of the new Vehicle you purchased or leased." Among this requested information, the VIN is the most critical for our claim verification process. With that said, please feel free to let us know what additional or alternate information you have, and we will evaluate whether the alternate information is sufficient.

3. What recommendations do you have for claimants who have quantity and/or spend data for replacement part purchases but incomplete or missing part manufacturer information?

    - For replacement parts, the EPP claim form requests an identification of the replacement part purchased, the manufacturer of the replacement part, the date of purchase, and the state in which you resided, or for businesses, where the principal place of business was located, at the time of purchase. If you are unable to identify the part manufacturer at this time, we recommend that you provide the part number that corresponds with the replacement part purchase, the entity or location from which you made the purchase, and any supporting documentation.

    - Please note that in the event this information is insufficient, you may be required to provide documentary proof of or additional information regarding your purchase of a qualifying replacement part, as explained in the Plan of Allocation.

4. Will an extrapolation methodology for parts purchases be considered here, *e.g.*, based on total number of parts in some fraction of total claimed vehicle count as was employed in the *Auto Parts Dealership* claims process?

    - If the class member purchased qualifying replacement parts, we request that the class member submit claim form information for each replacement part purchased. Extrapolation of replacement parts purchased based on the number of new vehicles purchased will not be considered.

1

5. Please confirm that fleet management companies who purchase (and hold title to) new vehicles are within the class definition and not otherwise excluded from the class by virtue of leasing their vehicles out to customers under long term leases.

    - As discussed on our call, we will address many of the issues related to fleet management companies on a case-by-case basis. However, assuming for purposes of this response that the fleet management company at issue purchased new vehicles and retained title to those new vehicles while leasing them to customers under long term leases, those fleet management companies would be included in the class.

6. Please confirm that insurers who incurred the cost of replacement part purchases and new vehicle purchases (for total loss claims by their insureds) are eligible to file claims to the End Payor settlements.

    - Auto insurers that purchased replacement parts for insureds or made payments for total loss vehicles under a policy of insurance are not eligible to file claims to the End Payor Settlements. However, auto insurers that purchased qualifying new vehicles for their own account, and not for resale, and purchased replacement parts for those vehicles, would be eligible to file claims to the End Payor settlements.

    - *See Autoliv v. GEICO*, No. 2:16-cv-13189-MOB-MKM, Dkt. 74 at 27-45 (E.D. Mich. Aug. 30, 2018) (finding GEICO "has sufficiently pleaded its antitrust standing to pursue claims in its roles as fleet owner and direct purchaser of auto parts, but not in its capacity as an insurer making claim payments to its insureds or third-party claimants" and explaining that GEICO lacks standing in its capacity as an insurer for the following: "(i) payments to auto repair professionals on behalf of insureds and third-party claimants for replacement auto parts installed by the repair shop (referred to by Defendants as 'Repair Payments'); (ii) reimbursement payments to insureds or third-party claimants to settle automotive damage or repair claims that potentially involved the purchase and installation of replacement auto parts ('Reimbursement Payments'); and (iii) payments to insureds or third-party claimants for the full value of vehicles declared a total loss ('Total Loss Payments').").

7. With respect to the $100/claimant guarantee, how was the $100 figure derived and what consideration, if any, was given to the disproportionate payout to individual vehicle claimants as compared to multi-vehicle claimants (i.e., those with a substantial number of vehicles)?

    - The minimum payment amount was added to encourage the filing of claims and to address the Court's prior concern that the number of claims already filed was fewer than desired. *See* Transcript of August 1, 2018 Fairness Hearing at 8:25-10:6, 2:12-md-2311, ECF No. 1937 (noting among other things that the low number of claims filed as of last summer "just didn't ring well with me"). The addition of a minimum payment amount serves to stimulate claims and has been found by other courts to be "extremely important" in part because it "creat[es] a significant incentive for consumers to file proofs of claim." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 63 (D. Mass. 2005) (approving an allocation plan that ensured a minimum payment of $35 to $100 to consumers who filed a proof of claim, but noting there are no minimum payments for third party payor claimants). *See also All Indirect Purchaser Actions v. Infineon Techs. AG* (*In re Dynamic Random Access Memory Antitrust Litig.*), No. 4:02-md-1486-PJH, 2013 U.S. Dist. LEXIS 188116, at *98 (N.D. Cal. Jan. 7, 2013) (recommending a minimum payment of $10 up to $50 million total to each small claimant that filed a proof of claim), *approved over objections*, No. 4:02-md-1486, Dkt. 2235 (N.D. Cal. June 27, 2014); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 463 (E.D. Penn. 2008) (approving $50 minimum payment for each eligible class member). As the court explained in *In re Relafen*:

        > One of the challenges for a court in a class action is to ensure that *consumers* actually receive compensation for the damages they have suffered, and not just the attorneys *or institutional plaintiffs*. Ofttimes, tremendous funds are spent in trying to reach the harmed consumers, with little in the way of results.

2

231 F.R.D. at 64 (emphasis in the original). *See also In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (noting concern that "[c]laimants who are entitled to receive only small settlement amounts can impose additional costs on the settlement fund, because such persons are less likely to cash their checks than are those claimants who receive larger amounts").

- In this case, Class Counsel achieved tremendous results for the class and proposed an allocation plan that is fair and reasonable to all members of the class. Your email suggests that the $100 minimum payment would create a "disproportionate payout to individual vehicle claimants as compared to multi-vehicle claimants." Your suggestion is incorrect. First, the Court made it clear that we must do more to increase the number of claims submitted—the $100 minimum payment is a reasonable and fair method of accomplishing that goal. Second, you ignore the limitation in the plan of allocation that says "[if] the net settlement funds are insufficient to allow a minimum payment of $100 to each Authorized Claimant, the amount to be paid to all Authorized Claimants shall be adjusted so that claimants share in the net settlements on a *pro rata* basis." Third, you have not articulated how a $100 minimum payment might be unreasonable or unfair to multi-vehicle claimants when the *pro rata* payment per vehicle could ultimately exceed $100 once the total number of claims is determined. Given that the *pro rata* payment provides more settlement funds in the aggregate to multi-vehicle claimants than to any individual vehicle claimant, we do not see how multi-vehicle claimants would be prejudiced by the proposed plan of allocation.

- Moreover, courts have recognized that a plan of allocation need not treat all class members equally. Courts have held that even where "[t]he manner in which the plan of allocation simplifies reality clearly works an injustice in his case," that injustice may be outweighed because "[a]dministrative convenience requires . . . that allocation plans incorporate some theoretically unjustified simplification." *In re California Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1336 (N.D. Cal. 1997); *see also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 112 (E.D. Ill. 2011) (addressing objectors cross-subsidization concern and noting that "there is no rule that settlements benefit all class members equally" (quoting source omitted)).

Regards,
- Chanler

CHANLER A. LANGHAM
PARTNER | SUSMAN GODFREY LLP
713-653-7839 (OFFICE)
713-377-2320 (MOBILE)
CLICK HERE FOR BIO

THIS MESSAGE MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION. IF YOU'RE NOT THE INTENDED RECIPIENT, PLEASE DELETE THIS MESSAGE.

---

**From:** Burton, Emma <EBurton@crowell.com>
**Sent:** Thursday, October 17, 2019 1:25 AM
**To:** HSalzman@RobinsKaplan.com; mseltzer@susmangodfrey.com; Adam Zapala <AZapala@cpmlegal.com>
**Cc:** Sasse, Daniel <DSasse@crowell.com>; Dominguez, Stacy <SDominguez@crowell.com>
**Subject:** Automotive Parts - End Payor -- follow-up to 10.16.19 call

Marc, Hollis, and Adam –

Thank you again for making time for the call yesterday. We are following-up with a written list of our questions, including one at bottom that we forgot to raise during the call.

As we explained, we would like to get clarity on these issues both to address questions we are fielding from our clients and to review options in advance of the November 19th deadline.  Accordingly, we would request a response no later than November 1.

We are happy to discuss any of these questions in more detail, if helpful.

- **Vehicle Identification Numbers (VINs)**
    - Will a VIN be required for each claimed vehicle?
    - What, if any, alternate information may be considered in the absence of a VIN for each claimed vehicle?

- **Replacement Part Purchase Information**
    - What recommendations do you have for claimants who have quantity and/or spend data for replacement part purchases but incomplete or missing part manufacturer information?
    - Relatedly, will an extrapolation methodology for parts purchases be considered here, *e.g.*, based on total number of parts in some fraction of total claimed vehicle count as was employed in the *Auto Parts Dealership* claims process?

- **Guaranteed Minimum Payment/Claimant**
    - With respect to the $100/claimant guarantee first noted in the most recent Plan of Allocation, how was the $100 figure derived?
    - What consideration, if any, was given to the disproportionate payout to individual vehicle claimants as compared to multi-vehicle claimants (*i.e.*, those with a substantial number of vehicles)?

- **Fleet Management Companies**
    - Please confirm that fleet management companies who purchase (and hold title to) new vehicles are within the class definition and not otherwise excluded from the class by virtue of leasing their vehicles out to customers under long term leases
        - Please note that this question concerns fleet management company inclusion in the settlement class and is not intended to address any independent contractual obligations that may exist between fleet management companies and their lessees

- **Insurers**
    - Please confirm that insurers who incurred the cost of replacement part purchases and new vehicle purchases (for total loss claims by their insureds) are eligible to file claims to the End Payor settlements


**Emma Burton** | Crowell & Moring LLP
1001 Pennsylvania Avenue NW | Washington, DC 20004
202-624-2974 (direct) | 301-602-9536 (mobile)