# EXHIBIT 1

## MASTER EQUITY LEASE AGREEMENT

This Master Equity Lease Agreement is entered into this ___ day of _____, 20__, by and between Enterprise FM Trust, a Delaware statutory trust ("Lessor"), and the lessee whose name and address is set forth on the signature page below ("Lessee").

**1. LEASE OF VEHICLES:** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the vehicles (individually, a "Vehicle" and collectively, the "Vehicles") described in the schedules from time to time delivered by Lessor to Lessee as set forth below ("Schedule(s)") for the rentals and on the terms set forth in this Agreement and in the applicable Schedule. References to this "Agreement" shall include this Master Equity Lease Agreement and the various Schedules and addenda to this Master Equity Lease Agreement, each of which are incorporated herein as part of a single, unitary Agreement. Lessor will, on or about the date of delivery of each Vehicle to Lessee, send Lessee a Schedule covering the Vehicle, which will include, among other things, a description of the Vehicle, the lease term and the monthly rental and other payments due with respect to the Vehicle. The terms contained in each such Schedule will be binding on Lessee unless Lessee objects in writing to such Schedule within ten (10) days after the date of delivery of the Vehicle covered by such Schedule. Lessor is the sole legal owner of each Vehicle. This Agreement is a lease only and Lessee will have no right, title or interest in or to the Vehicles except for the use of the Vehicles as described in this Agreement. This Agreement shall be treated as a true lease for federal and applicable state income tax purposes with Lessor having all benefits of ownership of the Vehicles. It is understood and agreed that Enterprise Fleet Management, Inc. or an affiliate thereof (together with any subservicer, agent, successor or assign as servicer on behalf of Lessor, "Servicer") may administer this Agreement on behalf of Lessor and may perform the service functions herein provided to be performed by Lessor.

**2. TERM:** The term of this Agreement ("Term") for each Vehicle begins on the date such Vehicle is delivered to Lessee (the "Delivery Date") and, unless terminated earlier in accordance with the terms of this Agreement, continues for the "Lease Term" as described in the applicable Schedule.

**3. RENT AND OTHER CHARGES:**
   (a) Lessee agrees to pay Lessor monthly rental and other payments according to the Schedules and this Agreement.

[Redacted]

**4. USE AND SURRENDER OF VEHICLES:** Lessee agrees to allow only duly authorized, licensed and insured drivers to use and operate the Vehicles. Lessee agrees to comply with, and cause its drivers to comply with, all laws, statutes, rules, regulations and ordinances and the provisions of all insurance policies affecting or covering the Vehicles or their use or operation. Lessee agrees to keep the Vehicles free of all liens, charges and encumbrances.

[Redacted]

**5. COSTS, EXPENSES, FEES AND CHARGES:** Lessee agrees to pay all costs, expenses, fees, charges, fines, tickets, penalties and taxes (other than

federal and state income taxes on the income of Lessor) incurred in connection with the titling, registration, delivery, purchase, sale, rental, use or operation of the Vehicles during the Term. If Lessor, Servicer or any other agent of Lessor incurs any such costs or expenses, Lessee agrees to promptly reimburse Lessor for the same.

**6. LICENSE AND CHARGES:** Each Vehicle will be titled and licensed in the name designated by Lessor at Lessee's expense. Certain other charges relating to the acquisition of each Vehicle and paid or satisfied by Lessor have been capitalized in determining the monthly rental, treated as an initial charge or otherwise charged to Lessee. Such charges have been determined without reduction for trade-in, exchange allowance or other credit attributable to any Lessor-owned vehicle.

**7. REGISTRATION PLATES, ETC.:** Lessee agrees, at its expense, to obtain in the name designated by Lessor all registration plates and other plates, permits, inspections and/or licenses required in connection with the Vehicles, except for the initial registration plates which Lessor will obtain at Lessee's expense. The parties agree to cooperate and to furnish any and all information or documentation, which may be reasonably necessary for compliance with the provisions of this Section or any federal, state or local law, rule, regulation or ordinance. Lessee agrees that it will not permit any Vehicle to be located in a state other than the state in which such Vehicle is then titled for any continuous period of time that would require such Vehicle to become subject to the titling and/or registration laws of such other state.

**8. MAINTENANCE OF AND IMPROVEMENTS TO VEHICLES:**
    (a) Lessee agrees, at its expense, to (i) maintain the Vehicles in good condition, repair, maintenance and running order and in accordance with all manufacturer's instructions and warranty requirements and all legal requirements and (ii) furnish all labor, materials, parts and other essentials required for the proper operation and maintenance of the Vehicles. Any alterations, additions, replacement parts or improvements to a Vehicle will become and remain the property of Lessor and will be returned with such Vehicle upon such Vehicle's return pursuant to Section 4. Notwithstanding the foregoing, so long as no Event of Default has occurred and is continuing, Lessee shall have the right to remove any additional equipment installed by Lessee on a Vehicle prior to returning such Vehicle to Lessor under Section 4. The value of such alterations, additions, replacement parts and improvements will in no instance be regarded as rent. Without the prior written consent of Lessor, Lessee will not make any alterations, additions, replacement parts or improvements to any Vehicle which detract from its economic value or functional utility. Lessor will not be required to make any repairs or replacements of any nature or description with respect to any Vehicle, to maintain or repair any Vehicle or to make any expenditure whatsoever in connection with any Vehicle or this Agreement.

**9. SELECTION OF VEHICLES AND DISCLAIMER OF WARRANTIES:**
    (a) LESSEE ACCEPTANCE OF DELIVERY AND USE OF EACH VEHICLE WILL CONCLUSIVELY ESTABLISH THAT SUCH VEHICLE IS OF A SIZE, DESIGN, CAPACITY, TYPE AND MANUFACTURE SELECTED BY LESSEE AND THAT SUCH VEHICLE IS IN GOOD CONDITION AND REPAIR AND IS SATISFACTORY IN ALL RESPECTS AND IS SUITABLE FOR LESSEE'S PURPOSE. LESSEE ACKNOWLEDGES THAT LESSOR IS NOT A MANUFACTURER OF ANY VEHICLE OR AN AGENT OF A MANUFACTURER OF ANY VEHICLE.
    (b) LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY VEHICLE, INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY AS TO CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, IT BEING AGREED THAT ALL SUCH RISKS ARE TO BE BORNE BY LESSEE. THE VEHICLES ARE LEASED "AS IS," "WITH ALL FAULTS." All warranties made by any supplier, vendor and/or manufacturer of a Vehicle are hereby assigned by Lessor to Lessee for the applicable Term and Lessee's only remedy, if any, is against the supplier, vendor or manufacturer of the Vehicle.
    (c) None of Lessor, Servicer or any other agent of Lessor will be liable to Lessee for any liability, claim, loss, damage (direct, incidental or consequential) or expense of any kind or nature, caused directly or indirectly, by any Vehicle or any inadequacy of any Vehicle for any purpose or any defect (latent or patent) in any Vehicle or the use or maintenance of any Vehicle or any repair, servicing or adjustment of or to any Vehicle, or any delay in providing or failure to provide any Vehicle, or any interruption or loss of service or use of any Vehicle, or any loss of business or any damage whatsoever and however caused. In addition, none of Lessor, Servicer or any other agent of Lessor will have any liability to Lessee under this Agreement or under any order authorization form executed by Lessee if Lessor is unable to locate or purchase a Vehicle ordered by Lessee or for any delay in delivery of any Vehicle ordered by Lessee.

**10. RISK OF LOSS:** Lessee assumes and agrees to bear the entire risk of loss of, theft of, damage to or destruction of any Vehicle from any cause whatsoever ("Casualty Occurrence"). In the event of a Casualty Occurrence to a Vehicle, Lessee shall give Lessor prompt notice of the Casualty Occurrence and thereafter will place the applicable Vehicle in good repair, condition and working order; provided, however, that if the applicable Vehicle is determined by Lessor to be lost, stolen, destroyed or damaged beyond repair (a "Totaled Vehicle"), Lessee agrees to pay Lessor no later than the date thirty (30) days after the date of the Casualty Occurrence the amounts owed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with respect to such Totaled Vehicle. Upon such payment, this Agreement will terminate with respect to such Totaled Vehicle.

**11. INSURANCE:**
    (a) Lessee agrees to purchase and maintain in force during the Term, insurance policies in at least the amounts listed below covering each Vehicle, to be written by an insurance company or companies satisfactory to Lessor, insuring Lessee, Lessor and any other person or entity designated by Lessor against any damage, claim, suit, action or liability, and that Lessor will suffer immediate and irreparable harm if Lessee fails to comply with such obligations:



If the requirements of any governmental or regulatory agency exceed the minimums stated in this Agreement, Lessee must obtain and maintain the higher

insurance requirements. Lessee agrees that each required policy of insurance will by appropriate endorsement or otherwise name Lessor and any other person or entity designated by Lessor as additional insureds and loss payees, as their respective interests may appear. Further, each such insurance policy must provide the following: (i) that the same may not be cancelled, changed or modified until after the insurer has given to Lessor, Servicer and any other person or entity designated by Lessor at least thirty (30) days prior written notice of such proposed cancellation, change or modification, (ii) that no act or default of Lessee or any other person or entity shall affect the right of Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns to recover under such policy or policies of insurance in the event of any loss of or damage to any Vehicle and (iii) that the coverage is "primary coverage" for the protection of Lessee, Lessor, Servicer, any other agent of Lessor and their respective successors and assigns notwithstanding any other coverage carried by Lessee, Lessor, Servicer, any other agent of Lessor or any of their respective successors or assigns protecting against similar risks. Original certificates evidencing such coverage and naming Lessor, Servicer, any other agent of Lessor and any other person or entity designated by Lessor as additional insureds and loss payees shall be furnished to Lessor prior to the Delivery Date, and annually thereafter and/or as reasonably requested by Lessor from time to time. In the event of default, Lessee hereby appoints Lessor, Servicer and any other agent of Lessor as Lessee's attorney-in-fact to receive payment of, to endorse all checks and other documents and to take any other actions necessary to pursue insurance claims and recover payments if Lessee fails to do so. Any expense of Lessor, Servicer or any other agent of Lessor in adjusting or collecting insurance shall be borne by Lessee.

Lessee, its drivers, servants and agents agree to cooperate fully with Lessor, Servicer, any other agent of Lessor and any insurance carriers in the investigation, defense and prosecution of all claims or suits arising from the use or operation of any Vehicle. If any claim is made or action commenced for death, personal injury or property damage resulting from the ownership, maintenance, use or operation of any Vehicle, Lessee will promptly notify Lessor of such action or claim and forward to Lessor a copy of every demand, notice, summons or other process received in connection with such claim or action.

[redacted]

**12. INDEMNITY**: [redacted]

**13. INSPECTION OF VEHICLES; ODOMETER DISCLOSURE; FINANCIAL STATEMENTS:** Lessee agrees to accomplish, at its expense, all inspections of the Vehicles required by any governmental authority during the Term. Lessor, Servicer, any other agent of Lessor and any of their respective successors or assigns will have the right to inspect any Vehicle at any reasonable time(s) during the Term and for this purpose to enter into or upon any building or place where any Vehicle is located. Lessee agrees to comply with all odometer disclosure laws, rules and regulations and to provide such written and signed disclosure information on such forms and in such manner as directed by Lessor. Providing false information or failure to complete the odometer disclosure form as required by law may result in fines and/or imprisonment. [redacted]

**14. DEFAULT; REMEDIES**: [redacted]

[redacted]

**15. ASSIGNMENTS:** Lessor may from time to time assign, pledge or transfer this Agreement and/or any or all of its rights and obligations under this Agreement to any person or entity.  Lessee agrees, upon notice of any such assignment, pledge or transfer of any amounts due or to become due to Lessor under this Agreement to pay all such amounts to such assignee, pledgee or transferee.  Any such assignee, pledgee or transferee of any rights or obligations of Lessor under this Agreement will have all of the rights and obligations that have been assigned to it.  Lessee's rights and interest in and to the Vehicles are and will continue at all times to be subject and subordinate in all respects to any assignment, pledge or transfer now or hereafter executed by Lessor with or in favor of any such assignee, pledgee or transferee, provided that Lessee shall have the right of quiet enjoyment of the Vehicles so long as no Event of Default under this Agreement has occurred and is continuing. Lessee acknowledges and agrees that the rights of any assignee, pledgee or transferee in and to any amounts payable by the Lessee under any provisions of this Agreement shall be absolute and unconditional and shall not be subject to any abatement whatsoever, or to any defense, setoff, counterclaim or recoupment whatsoever, whether by reason of any damage to or loss or destruction of any Vehicle or by reason of any defect in or failure of title of the Lessor or interruption from whatsoever cause in the use, operation or possession of any Vehicle, or by reason of any indebtedness or liability howsoever and whenever arising of the Lessor or any of its affiliates to the Lessee or to any other person or entity, or for any other reason.

Without the prior written consent of Lessor, Lessee may not assign, sublease, transfer or pledge this Agreement, any Vehicle, or any interest in this Agreement or in and to any Vehicle, or permit its rights under this Agreement or any Vehicle to be subject to any lien, charge or encumbrance.  Lessee's interest in this Agreement is not assignable and cannot be assigned or transferred by operation of law.  Lessee will not transfer or relinquish possession of any Vehicle (except for the sole purpose of repair or service of such Vehicle) without the prior written consent of Lessor.

**16. MISCELLANEOUS**:  This Agreement contains the entire understanding of the parties.  This Agreement may only be amended or modified by an instrument in writing executed by both parties. Lessor shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies under this Agreement and no waiver whatsoever shall be valid unless in writing and signed by Lessor and then only to the extent therein set forth.  A waiver by Lessor of any right or remedy under this Agreement on any one occasion shall not be construed as a bar to any right or remedy, which Lessor would otherwise have on any future occasion. If any term or provision of this Agreement or any application of any such term or provision is invalid or unenforceable, the remainder of this Agreement and any other application of such term or provision will not be affected thereby.  Giving of all notices under this Agreement will be sufficient if mailed by certified mail to a party at its address set forth below or at such other address as such party may provide in writing from time to time.  Any such notice mailed to such address will be effective one (1) day after deposit in the United States mail, duly addressed, with certified mail, postage prepaid.  Lessee will promptly notify Lessor of any change in Lessee's address.

**17. SUCCESSORS AND ASSIGNS; GOVERNING LAW:**  Subject to the provisions of Section 15, this Agreement will be binding upon Lessee and its heirs, executors, personal representatives, successors and assigns, and will inure to the benefit of Lessor, Servicer, any other agent of Lessor and their respective successors and assigns.  This Agreement will be governed by and construed in accordance with the substantive laws of the State of Missouri (determined without reference to conflict of law principles).

**18.**

IN WITNESS WHEREOF, Lessor and Lessee have duly executed this Master Equity Lease Agreement as of the day and year first above written.

| LESSEE: | LESSOR: | Enterprise FM Trust |
| --- | --- | --- |
| | By: | Enterprise Fleet Management, Inc., its attorney in fact |

_____         _____

By:                                                                                       By:
Title:                                                                                    Title:

Address:                                                                             Address:


Date Signed: _____, _____            Date Signed  _____, _____