# EXHIBIT C

In re Automotive Parts Antitrust Litigation, 997 F.3d 677 (2021)

2021-1 Trade Cases P 81,653

997 F.3d 677
United States Court of Appeals, Sixth Circuit.

IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION and In re: Anti-Vibrational Rubber Parts Cases, End-Payor Actions.
Direct Purchaser Plaintiffs, Interested Parties-Appellees,
v.
Yamashita Rubber Company, Ltd.; YUSA Corporation; DTR Industries, Inc.; Bridgestone Corporation; Bridgestone APM Company; Toyo Tire & Rubber Company, Ltd.; Toyo Tire North America OE Sales LLC; Toyo Automotive Parts (USA), Inc., Sumitomo Riko Company Limited, fna Tokai Rubber Industries, Ltd., Defendants-Appellants.

No. 20-1599
|
Argued: March 11, 2021
|
Decided and Filed: May 14, 2021

**Synopsis**
**Background:** Purported direct purchasers of automotive anti-vibration rubber parts brought putative antitrust class action against manufacturers. The United States District Court for the Eastern District of Michigan, Marianne O. Battani, Senior District Judge, denied manufacturers' motion to enforce prior settlement agreement against purchasers. Manufacturers appealed.

**[Holding:]** The Court of Appeals, Bush, Circuit Judge, held that settlement agreement in prior class action barred this action.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion to Enforce Settlement.

West Headnotes (17)

**[1]** Antitrust and Trade Regulation⚖︎Indirect purchasers

Under federal antitrust law, private plaintiff generally must be direct purchaser to have suffered injury and thus have standing to sue manufacturer or supplier.

**[2]** Antitrust and Trade Regulation⚖︎Indirect purchasers

An indirect purchaser might have standing to sue a manufacturer or supplier under federal antitrust law if it purchased from an intermediary that was owned or controlled by the ultimate seller.

**[3]** Federal Courts⚖︎Compromise and Settlement

The Court of Appeals reviews a district court's denial of a motion to enforce a settlement agreement for an abuse of discretion.

**[4]** Federal Courts⚖︎Abuse of discretion in general

A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact.

**[5]** Federal Courts⚖︎Compromise and Settlement

Where the issue involves the interpretation of a settlement agreement, the Court of Appeals' review of the district court's determination is de

novo.

**[6]** Federal Courts — Contracts

If contractual language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact subject to appellate review for clear error.

**[7]** Compromise, Settlement, and Release — Contractual Nature and Requisites in General

A settlement agreement is a contract governed by principles of state contract law.

**[8]** Contracts — Intention of Parties

Under Michigan law, the primary goal of contract interpretation is to honor the intent of the parties.

**[9]** Contracts — Construction as a whole

Under Michigan law, a court interpreting a contract must read the contract as a whole.

**[10]** Contracts — Language of Instrument

Under Michigan law, if contractual language is clear and unambiguous, terms are to be taken and understood in their plain, ordinary, and popular sense.

**[11]** Contracts — Intention of Parties

Under Michigan law, a court interpreting a contract is governed by what the parties said and did, and not merely by their unexpressed subjective intent.

**[12]** Compromise, Settlement, and Release — Persons Affected

Under Michigan law, settlement agreement in prior class action antitrust suit, which released all past and future claims of settlement class consisting of all indirect purchasers of automotive anti-vibration rubber parts manufactured by or sold by manufacturers or any current or former subsidiary of the manufacturers, applied to bar purported "direct purchasers" of automotive anti-vibration rubber parts from bringing anti-trust suit against manufacturers, where purchasers conceded that they did not purchase parts immediately from manufacturers or subsidiaries, and that their purchases were two or more steps removed from the alleged anti-trust violators.

**[13]** Contracts — Language of Instrument

Under Michigan law, a court interpreting a contract can look to dictionary definitions to find the plain and ordinary meaning of terms and phrases that are not defined in the contract.

[14] **Antitrust and Trade Regulation** ⚊ Indirect purchasers

For purposes of federal antitrust law, "direct purchasers" are those who buy immediately from alleged antitrust violators, and "indirect purchasers" are those who are two or more steps removed from the violator in distribution chain.

[15] **Antitrust and Trade Regulation** ⚊ Indirect purchasers

The ownership-or-control exception to the general rule that only direct purchasers have standing to sue manufacturer or supplier for federal antitrust violations permits courts to treat indirect purchasers from intermediary that is owned or controlled by manufacturer or supplier as direct purchasers for standing purposes so that antitrust violators cannot simply integrate vertically to escape federal antitrust liability.

[16] **Evidence** ⚊ Showing Intent of Parties as to Subject Matter

Under Michigan law, courts are prohibited from considering extrinsic evidence to determine the parties' intent when the contract language is clear and unambiguous.

[17] **Contracts** ⚊ Application to Contracts in General

Under Michigan law, where the language in the contract is clear and unambiguous, a court interpreting it looks only within the four corners of the relevant contract to accomplish that task.

*678 Appeal from the United States District Court for the Eastern District of Michigan at Detroit. Nos. 2:12-md-02311; 2:13-cv-00803—Marianne O. Battani, District Judge.

**Attorneys and Law Firms**

ARGUED: Zachary D. Tripp, WEIL, GOTSHAL & MANGES LLP, Washington, D.C., for Appellants. David H. Fink, FINK BRESSACK, Bloomfield Hills, Michigan, for Appellees. ON BRIEF: Zachary D. Tripp, WEIL, GOTSHAL & MANGES LLP, Washington, D.C., Adam C. Hemlock, David Yolkut, WEIL, GOTSHAL & MANGES LLP, New York, New York, Frederick R. Juckniess, JUCKNIESS LAW FIRM PLC, Ann Arbor, Michigan, Matthew J. Turchyn, HERTZ SCHRAM PC, Bloomfield Hills, Michigan, Robert N. Hochman, SIDLEY AUSTIN LLP, Chicago, Illinois, Joanne G. Swanson, KERR, RUSSELL AND WEBER, PLC, Detroit, Michigan, J. Clayton Everett, Jr., MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., Larry J. Saylor, MILLER, CANFIELD, PADDOCK & STONE P.L.C., Detroit, Michigan, for Appellants. David H. Fink, Nathan J. Fink, FINK BRESSACK, Bloomfield Hills, Michigan, for Appellees.

Before: BATCHELDER, GRIFFIN, and BUSH, Circuit Judges.

**OPINION**

JOHN K. BUSH, Circuit Judge.

*679 [1] [2] Under federal antitrust law, a private plaintiff generally must be a "direct purchaser" to have suffered injury and thus have standing to sue a manufacturer or supplier. In *Illinois Brick Co. v. Illinois*, however, the Supreme Court recognized an exception to the direct-purchaser rule, holding that an "indirect purchaser" might have standing to sue if it purchased from an intermediary that was "owned or controlled" by the ultimate seller. 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). The present dispute raises the question whether *Illinois Brick* has any effect on the interpretation of certain antitrust class-action settlement

agreements under Michigan law.

Specifically, we consider *Illinois Brick* to address whether Plaintiffs, who purchased automotive anti-vibration rubber parts, are barred from maintaining a purported direct-purchaser class-action lawsuit against the manufacturers and sellers of those parts. Defendants argue that Plaintiffs settled all their claims as part of a class composed of certain "persons and entities" that "indirectly purchased" anti-vibration rubber parts. Plaintiffs argue that, in accordance with *Illinois Brick*, they are not part of the settlement class because they purchased "directly" from subsidiaries of a manufacturer. As explained below, regardless of whether *Illinois Brick* applies to Plaintiffs' underlying claims, Plaintiffs fit within the class definition because they "indirectly purchased" parts under the plain meaning of the settlement agreements. Their suit is therefore barred by those agreements. We reverse the district court's contrary holding.

I.

This appeal is part of the litigation that arose from the manufacture and sale of automotive anti-vibration rubber parts. Those parts are used, as their name suggests, to absorb and reduce vibration transmission in various sections of a vehicle. In 2013, a putative class of anti-vibration rubber part purchasers, referred to as end-payor purchasers, sued several manufacturers and suppliers, alleging that they conspired to fix prices of anti-vibration *680 rubber parts.[1] The end payors brought claims under the Clayton Act, 15 U.S.C. § 26, for violations of the Sherman Act, 15 U.S.C. § 1 et seq. They also sued under certain state antitrust laws.

The end-payor litigation settled in 2016 and 2017, after the district court certified a nationwide settlement class comprising persons and entities who indirectly purchased anti-vibration rubber parts that were manufactured or sold by the defendant manufacturers and suppliers. Notably, the settlement class excludes persons or entities who purchased parts directly or for resale. In total, the defendants agreed to pay $80.4 million to the settlement class. In exchange for that sum, the class members "completely released, acquitted, and forever discharged ... any and all claims" against the defendants arising out of or relating to the conduct alleged in the complaint. The agreements bind all settlement class members except those who timely opted out. Finally, the agreements contain a list of exclusions from the releases, including for all direct purchasers and specific indirect purchasers.

Before the district court entered final judgments approving the settlement agreements in the end-payor lawsuit, Jerry Anderson, Laura LaRue, and Christopher Lee filed a separate putative class action against the same manufacturers and suppliers defending the end-payor litigation, in the same court, in front of the same judge.[2] As Plaintiffs in that new lawsuit, they seek money damages under the Clayton Act on behalf of a putative class of all "direct purchasers" of anti-vibration rubber parts.

Specifically, Plaintiffs allege that they purchased parts "from an entity of which one of the Defendants is the ultimate parent." Of note, the entity that Plaintiffs allegedly purchased parts from is not a defendant in their direct-purchaser lawsuit or the end-payor lawsuit. They purchased anti-vibration rubber parts from a Firestone repair shop (Bridgestone Retail Operations, dba Firestone Complete Auto Care), which is owned by Bridgestone Americas, a subsidiary of one of the defendants in both lawsuits, Bridgestone Corporation. The trial record also reflects that Plaintiffs purchased from a couple of other retail shops, "Tires Plus" and "Wheel Works," which too are allegedly "part of the Bridgestone ... family." Like the end-payor class, Plaintiffs claim that Defendants conspired to raise prices for anti-vibration rubber parts and passed down the increased costs to their putative class of direct purchasers.

Soon after Plaintiffs filed the direct-purchaser lawsuit, the district court entered final judgments approving the settlement agreements in the end-payor lawsuit. In doing so, the court enjoined all settlement class members from "commencing, prosecuting, or continuing ... any and all claims" arising out of or relating to the released claims.

About a year later, after Plaintiffs filed their first discovery request in the direct-purchaser lawsuit, Defendants filed a motion to enforce the judgments from the *681 end-payor lawsuit against Plaintiffs. They asked the district court to enjoin Plaintiffs from litigating their claims in the direct-purchaser lawsuit because the settlement agreements in the end-payor lawsuits prohibited Plaintiffs, as indirect purchasers, from maintaining their federal antitrust claims against Defendants. The district court denied the motion because, in its view, Plaintiffs were properly considered direct purchasers under the ownership-or-control exception to the standing rule of *Illinois Brick*. It also reasoned that Defendants' litigation tactics and other post-settlement actions tipped the scales of justice in Plaintiffs' favor. Defendants appeal.

## II.

[3] [4] [5] [6]We review a district court's denial of a motion to enforce a settlement agreement for an abuse of discretion. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Fowler*, 819 F.3d 298, 303 (6th Cir. 2016) (quoting *United States v. Bridgewater*, 606 F.3d 258, 260 (6th Cir. 2010)). Where, as here, the issue involves the interpretation of a settlement agreement, our review is de novo. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). But if contractual language is "unclear or susceptible to multiple meanings, interpretation becomes a question of fact" subject to review for clear error. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (quoting *Port Huron Educ. Assn. v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 550 N.W.2d 228, 237 (1996)).

## III.

### A. THE SETTLEMENT AGREEMENTS

[7]The only issue on appeal is whether the settlement agreements bar Plaintiffs from maintaining their direct-purchaser lawsuit. A settlement agreement is a contract governed by principles of state contract law, here Michigan law. *See Converge, Inc. v. Topy Am., Inc.*, 316 F. App'x 401, 404–05 (6th Cir. 2009); *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 452, 733 N.W.2d 766 (2006). So this case simply requires us to apply that law to interpret the parties' contracts.

[8] [9] [10] [11]Under Michigan law, "[t]he primary goal of contract interpretation is to honor the intent of the parties." *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63, 620 N.W.2d 663 (2000). To achieve that goal, we must read the contract as a whole. *Id.* If the contractual language is "clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense." *Michigan Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87, 514 N.W.2d 185 (1994). We "are governed by what the parties said and did, and not merely by their unexpressed subjective intent." *Fletcher v. Bd. of Educ. of Sch. Dist. Fractional No. 5*, 323 Mich. 343, 348, 35 N.W.2d 177 (1948).

[12]Read in light of those rules, the settlement agreements clearly and unambiguously bar Plaintiffs from maintaining their direct-purchaser lawsuit. The district court's contrary legal determination was incorrect and thus an abuse of discretion.

First, we consider the relevant contractual language.[3] The agreements release all **\*682** the past and future claims of the settlement class. The settlement class includes:

> All persons and entities that, from March 1, 1996 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Anti-Vibration Rubber Part(s) as a component part, or indirectly purchased one or more Anti-Vibration Rubber Part(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

That definition excludes those persons and entities that purchased anti-vibration rubber parts "directly or for resale." If Plaintiffs are indirect purchasers who did not timely elect to be excluded from the settlement class, the settlement agreements bar their direct-purchaser lawsuit.[4] But, if they are direct purchasers, the settlement agreements cannot stand in their way.

[13]The settlement agreements do not define "indirectly purchased" or "directly purchased," or any variation of those phrases. Those omissions, however, do not make the agreements ambiguous. *See McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434, 439, 802 N.W.2d 619 (2010) ("A[ ] ... contract is not ambiguous merely because a term is not defined in the contract."). We can look to the plain and ordinary meaning of those terms and phrases as described in dictionary definitions. *Id.* "Direct" means "[s]traightforward, uninterrupted, immediate"; "[e]ffected or existing without intermediation or intervening agency; immediate." *Direct*, Oxford English Dictionary (2d ed.

1989); *see also Direct*, Webster's Third New International Dictionary (1986) ("immediate"; "stemming immediately from a source"; without an "intervening agency, instrumentality, [ ] influence ... or intervening step"; "without use of a broker or other middleman."). And "indirect" is just the opposite; it means "[n]ot direct." *Indirect*, Oxford English Dictionary (2d ed. 1989).

Plaintiffs alleged that they purchased anti-vibration rubber parts from Bridgestone Retail Operations, LLC, (dba Firestone) and the other retailers noted, which purchased the parts from Bridgestone Americas, Inc., which in turn purchased them from the Bridgestone Corporation—one of the defendants and alleged antitrust violators in both the end-payor and direct-purchaser lawsuits. Plaintiffs' purchasing arrangement was not "[s]traightforward, uninterrupted," or "immediate." And it certainly was not "without intermediation," an "intervening step" or a "middleman." By definition then, it was not direct. It was indirect.

[14] To the extent "indirectly" or "directly purchased" are used in the settlement agreements as "legal phrase[s] or term[s] of art," Michigan law instructs us to further consider "case law explanation[s] that those familiar with such terms of art are held to understand." *Henderson v. State Farm Fire and Cas. Co.*, 460 Mich. 348, 357 n.9, 596 N.W.2d 190 (1999). Examination of the relevant antitrust case-law explanations of the terms "indirectly" and "directly purchased" (or "indirect" and "direct purchaser") confirms the plain meaning of the agreements. The Supreme Court has "consistently stated" that, for purposes of federal antitrust law, direct purchasers are those who buy "immediately from the alleged antitrust violators," and indirect purchasers are those "who are two or **\*683** more steps removed from the violator in a distribution chain[.]" *Apple Inc. v. Pepper*, ––– U.S. ––––, 139 S. Ct. 1514, 1520, 203 L.Ed.2d 802 (2019) (quoting *Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 207, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990)). Here, Plaintiffs concede that they did not purchase "immediately" from Defendant Bridgestone Corporation, or any of the other Defendants. They acknowledge that their purchases were "two or more steps removed" from the alleged violator. *Id.* Plaintiffs are thus indirect purchasers. Accordingly, they fall within the settlement class defined above and are barred by the settlement agreements from maintaining their federal antitrust claims as the named Plaintiffs in the direct-purchaser lawsuit.

B. *ILLINOIS BRICK* & THE OWNERSHIP-OR-CONTROL EXCEPTION

To circumvent the plain meaning, Plaintiffs argue that, as a matter of law, we should treat them as direct purchasers under the ownership-or-control exception to the antitrust-standing rule of *Illinois Brick Co. v. Illinois*. We find their theory unpersuasive.

[15] *Illinois Brick* recognized the general rule that a plaintiff has no standing under federal antitrust law to sue an alleged antitrust violator if the plaintiff did not directly purchase the overcharged product from the alleged violator. 431 U.S. at 729–30, 97 S.Ct. 2061. But it hinted that that standing rule might not apply if plaintiffs bought from a direct purchaser that was "owned or controlled" by the alleged antitrust violator. *Id.* at 736 n.16, 97 S.Ct. 2061. That hint has since turned into an exception allowing an indirect purchaser to bring a federal antitrust suit when, for example, an alleged antitrust violator owns or controls its direct purchaser. *See Jewish Hosp. Ass'n of Louisville, Ky., Inc. v. Stewart Mech. Enters., Inc.*, 628 F.2d 971, 975 (6th Cir. 1980); *see also, e.g.*, *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 371 (3d Cir. 2005). In practice, the ownership-or-control exception permits courts to treat indirect purchasers as direct purchasers for standing purposes so that antitrust violators cannot simply integrate vertically to escape federal antitrust liability.

As highlighted above, Plaintiffs allege that at least some of Defendants are vertically integrated such that they own their direct purchasers. Accordingly, the argument goes, Plaintiffs are the only purchasers that Defendants do not own, and so, under the "ownership" prong of the ownership-or-control exception, they can proceed against Defendants as its direct purchasers. Defendants assert that Plaintiffs' argument is irrelevant to our interpretation of the settlement agreement.

We agree with Defendants. Whether Plaintiffs can maintain their direct-purchaser lawsuit under the ownership-or-control exception of *Illinois Brick* is a question of antitrust standing. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613–14 (6th Cir. 2004). It is not a question that bears on our interpretation of the settlement agreements. That Plaintiffs might be considered to have standing under *Illinois Brick* does not alter the reality that they indirectly purchased anti-vibration rubber parts from Defendant Bridgestone Corporation.[5] *See, e.g.*, **\*684** *Jewish Hosp.*, 628 F.2d at 975; *Howard*, 424 F.3d at 371. The

ownership-or-control exception mentioned in *Illinois Brick* is ultimately a pragmatic carveout to a federal antitrust standing rule, not a redefinition of indirect purchaser.

By nevertheless claiming that the exception applies to them, Plaintiffs concede that they are in fact indirect purchasers. How so? Well, because the ownership-or-control exception applies *only* to indirect purchasers. See *Jewish Hosp.*, 628 F.2d at 975. If Plaintiffs had directly purchased anti-vibration rubber parts from Defendants, they would have no reason to rely on the exception; the settlement agreements would expressly permit their new lawsuit.

What's more, the settlement agreements include eight express exclusions from the class-wide releases, none of which references this ownership-or-control exception. The exclusions allow only certain indirect purchasers to bring federal antitrust claims against Defendants. See *Bridgestone Settlement Agreement*, R. 265-2 at PageID 9859–60 (permitting claims asserted by "automobile dealerships" and "equipment dealerships," that are "indirect purchasers of Anti-Vibration Rubber Parts," or claims asserted by "any state, state agency, or instrumentality or political sub-division of a state"). The exclusions also permit any "claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State."[6] *Id.* at PageID 9860. That means that persons or entities who indirectly purchased anti-vibration rubber parts can sue Defendants under state antitrust laws in states, like Michigan, that do not follow the special standing rule of *Illinois Brick*. See Mich. Comp. Laws Ann. § 445.778. Thus, it seems that the settlement agreements explicitly mention how Plaintiffs might sue the manufacturers in the future—namely, under certain state antitrust laws. The failure of the agreements to provide in their exclusions a means by which Plaintiffs, as indirect purchasers, might sue under federal antitrust law (*e.g.*, through the ownership-or-control exception) strongly suggests that Plaintiffs cannot maintain their federal claims.

C. "OTHER FACTORS"

Two final matters bear mentioning before we conclude. First, the district court mentioned in its order that a number of "other factors" tipped the scale in Plaintiffs' favor. Those factors included its observations that (1) Defendants' counsel did not file a notice in the direct-purchaser lawsuit that it had settled Plaintiffs' claims in the end-payor settlement agreements, (2) Defendants' counsel also did not notify Plaintiffs of its motion to enforce judgment, and finally, (3) Plaintiffs' claims would not be duplicative of the end-payor claims because the end payors sought injunctive relief against Defendants whereas Plaintiffs now seek money damages.

[16] None of those factors has anything to do with the language in the settlement agreements. Under Michigan law, courts are prohibited from considering extrinsic evidence to determine the parties' intent when the contract language is clear ***685** and unambiguous. See *Kyocera Corp. v Hemlock Semiconductor, LLC*, 313 Mich. App. 437, 446, 886 N.W.2d 445 (2015). The district court did not purport to find ambiguity in the agreements. We do not find ambiguity either. Therefore, the district court's consideration of post-contracting, external evidence of the parties' intent was an abuse of discretion.

[17] Second, the manufacturers raise a number of policy considerations in their briefing on appeal. We decide this case without reference to those considerations. This is a contract case that requires us to interpret a set of terms. Where, as here, the language in the contracts is clear and unambiguous, we look only within the four corners of the relevant contracts to accomplish our task. *See, e.g.*, *Old Kent Bank*, 243 Mich. App. at 63, 620 N.W.2d 663.

IV.

Having evaluated the terms of the settlement agreements, we hold that they unambiguously bar Plaintiffs from maintaining their alleged direct-purchaser lawsuit. The district court abused its discretion in holding otherwise. We therefore reverse the district court and remand for further proceedings consistent with this opinion.

**All Citations**

997 F.3d 677, 2021-1 Trade Cases P 81,653

**Footnotes**

**In re Automotive Parts Antitrust Litigation, 997 F.3d 677 (2021)**

2021-1 Trade Cases P 81,653

| | |
|---|---|
| 1 | Those manufacturers and suppliers include Bridgestone Corporation, Bridgestone APM Company, Yamashita Rubber Co., YUSA Corporation, Tokai Rubber Industries, DTR Industries, Toyo Tire & Rubber Co., Toyo Tire North American OE Sales, and Toyo Automotive Parts (USA) and "unnamed co-conspirators." |
| 2 | Judge Marianne O. Battani of the Eastern District of Michigan oversaw the *In re: Automotive Parts Antitrust Litigation* MDL for about eight years. In June of 2020, she removed herself from the MDL for health reasons. Judge Sean F. Cox, of the same district, is now presiding over the MDL. |
| 3 | Because each manufacturer settled with the class separately, there are several settlement agreements. The relevant language is identical in all the agreements, so our analysis applies to all Defendants. |
| 4 | Plaintiffs concede that they did not timely opt out of the settlement class, and they do not contend that Defendants provided them insufficient notice of the settlement agreement, or of their ability to opt out of the class. |
| 5 | In resolving this appeal, we do not decide whether Plaintiffs are appropriately considered direct purchasers for purposes of antitrust standing. Just a year ago, after the district court denied Defendants' motion to dismiss the direct-purchaser lawsuit, we held, on review of a petition to appeal under 28 U.S.C. § 1292(b), that the facts were not sufficiently "fleshed out" to decide whether Plaintiffs had antitrust standing under the ownership-or-control exception. *In re: Auto parts Antitrust Litig, et al.*, Dkt. No. 19–106, Doc. No. 13 at 2. No additional discovery has been conducted in the interim to alter that holding. |
| 6 | After *Illinois Brick* was decided, several states passed statutes rejecting the logic of the special standing rule in *Illinois Brick.* Those states that amended their antitrust laws to specifically allow indirect purchasers to bring suit are often called "Repealer States"; the states that did not amend their laws after *Illinois Brick* are referred to as "Indirect Purchaser States." |

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.