# EXHIBIT D

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39795 Filed 03/17/22 Page 2 of 16

Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

14 F.4th 1059
United States Court of Appeals, Ninth Circuit.

Karen STROMBERG; Samuel Roecker; Thomas Lammel; Mary Galloway; Danielle Lagrave; Thomas McMahon; Boardsports School LLC; Patrick Benad; Lindsey Carr; Renee Acosta; Patricia Burness; Carol Harris; Robert Links; Nichelle Lyons; Nuala Vignoles; Rachel L. Miller; John William Kiefer III; Matthew Mitchell; Susan Gonzalez-Pender; Terese Russell; Sarah Key; Dalia Zatlin; Beth Crandall; Clarissa Simon; Kendall Martin; Rodrigo Sapla; Rebecca Davis; Thomas McManus; Kimberly Scavone; Melissa Ju; Chris Thompson; Martha Countess; Karen Hood; Jaime Martin; Adrian Esteban; Jeffrey Davis; Ericsson Broadbent; Paul Scott Ervin; Caralyn Tada; Nagore Miles; Bethany Rising; Jiying Spencer; Dayan Crutcher; Catherine Schmidlin; Allison Tripp; Lindsay Smith; Katie Smith; Kirsten Luenz; Laurel Vener; Stephen Judge; Seth Salenger; Scott Hansen; Joseph Kovacevich; Michelle Reynolds; George Marut; Janet Ackerman; Alan Schlaikjer; Lori Landes; Joyce Grantz; Gabrielle Kurdt; John Solak; Todd Espinosa; Andrew Westley; Laura Hallahan; Mary C. McDevitt; Padraic J. Brennan; Jason Schwartz; Suzanne Block; Kevin Calero; Carlo Endozo Caringal; Ian Carson; Andre Cruz; Lucas Rangel Ferreira; Masood Javaherian; David Koplovitz; Brian Letulle; Deirdre McElhaney; Carmen Minon; Erica Minon; Gabriel Minon; Betsy Santiago; Javier Santiago; Peter Yee; Alicia Hadnett; Daniel Carroll; Debra Grasl; Amanda Newsome; David Kreuzer; Armando Herrera; Eden Wagner; Neil Wagner; Allan Rotman; Shari Cole; Phillip James Zacharias; Mary Beth Cummins; Guy Snowdy; Cynthia Bambini; Grant Hauschild; David Floyd; Kim Coughlin; Brandon Fuller; Lisa Patnode; Nina Bartoshevich; Leonidas Miras; James Clark, Plaintiffs-Appellees,
and
Jordie Bornstein; Cordt Byrne; Elliot Carter; Jeff Ciotti; Dwight Dickerson; Matthew Christianson; Logan Griesemer; Ryan Hart; William Horton; Steve Krug; Gail Margolis; Kate Mortensen; Alyssa Nee; Christopher Whalen; Stephan Farid Wozniak; Christopher Zayas-Bazan; David Carney; Julie Ewald; Tom Parkin; Brian Depperschmidt; Brandon Steele; Kyle Weber; Craig Housenick; Ryan Margulis; Richard Rizzo; Guy Dietrich; Jeffrey M. Kurzon; Susan Nagy; Nicolas Yousif; Scott Frederick; Charles Poon; Andrea Hogan; Tina Heim; Monica Morrow; Mark Cardillo; Allison Shipp; Michelle Mackay; Colleen Sparke; Janet Silverness; Melanie Barclay; Tiffany Ringo; Hallie Lingo; Crystal Hohenthaner; Daniel K. Brendtro; Daniel Delier; Paul Nelson; Catherine Kaderavek; Karen Carlet; David Waring; Leon Theodore Lipka III, Plaintiffs,
v.
QUALCOMM INCORPORATED, Defendant-Appellant.

No. 19-15159
|
Argued and Submitted December 2, 2019
|
Submission Withdrawn March 3, 2020
|
Resubmitted September 21, 2021 San Francisco, California
|
Filed September 29, 2021

**Synopsis**
**Background:** In antitrust multidistrict litigation, in which consumers sought injunctive and monetary relief under Sherman Act against licensor of modem chips, the United States District Court for the Northern District of California, Lucy H. Koh, J., certified nationwide class. Licensor appealed.

**[Holding:]** The Court of Appeals, R. Nelson, Circuit Judge, held that under California law's governmental-interest test, foreign states in which consumers resided had interest in applying their state laws to consumers' claims, as could support finding that foreign states' laws rather than solely California law applied to action, thus informing determination of whether predominance requirement for class certification was met.

Vacated and remanded.

**Procedural Posture(s):** Interlocutory Appeal; Motion to Certify Class.

West Headnotes (16)

**[1]**     **Antitrust and Trade Regulation** 🔑 Indirect

Case 2:12-md-02311-SFC-RSW   ECF No. 2192-8, PageID.39796   Filed 03/17/22   Page 3 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

purchasers

Indirect purchasers are barred from seeking damages for alleged Sherman Act violations. Sherman Act § 1, 15 U.S.C.A. § 1 et seq.

[2]     **Antitrust and Trade Regulation**⚖️Indirect purchasers
**Antitrust and Trade Regulation**⚖️Treble damages

California's Cartwright Act, though modeled after the Sherman Act, permits indirect purchasers to bring antitrust claims and recover treble damages. Sherman Act § 1, 15 U.S.C.A. § 1 et seq.; Cal. Bus. & Prof. Code § 16700 et seq.

[3]     **Federal Courts**⚖️Class actions

Court of Appeals reviews the district court's class certification rulings for abuse of discretion and reviews for clear error any findings of fact the district court relied upon in its certification order.

[4]     **Federal Courts**⚖️Abuse of discretion in general

A district court abuses its discretion where it commits an error of law, relies on an improper factor, omits a substantial factor, or engages in a clear error of judgment in weighing the correct mix of factors.

[5]     **Federal Courts**⚖️What law governs and choice of law in general

District court's choice of law determination is reviewed de novo, but its underlying factual findings are reviewed for clear error.

[6]     **Federal Civil Procedure**⚖️Evidence; pleadings and supplementary material

Party seeking class certification has burden of affirmatively demonstrating that class meets requirements of rule governing class certification. Fed. R. Civ. P. 23.

1 Cases that cite this headnote

[7]     **Federal Civil Procedure**⚖️Superiority, manageability, and need in general
**Federal Civil Procedure**⚖️Common interest in subject matter, questions and relief; damages issues

The inquiry into predominance and superiority, for class certification, focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Fed. R. Civ. P. 23(b)(3).

2 Cases that cite this headnote

[8]     **Declaratory Judgment**⚖️Representative or class actions
**Federal Civil Procedure**⚖️Common interest in subject matter, questions and relief; damages issues

Requirements of rule governing certification of class as to injunctive or corresponding declaratory relief are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the

Case 2:12-md-02311-SFC-RSW   ECF No. 2192-8, PageID.39797   Filed 03/17/22   Page 4 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

class as a whole. Fed. R. Civ. P. 23(b)(2).

1 Cases that cite this headnote

**[9]** **Antitrust and Trade Regulation** What law governs
**Federal Civil Procedure** Antitrust plaintiffs

Under California law's governmental-interest test, foreign states in which consumers, as putative class members, resided had interest in applying their state laws to consumers' claims, as could support finding that foreign states' laws rather than solely California law applied to action against licensor of modem chips, seeking injunctive and monetary relief under Sherman Act, thus informing determination of whether predominance requirement for class certification was met; some of the states had repealed *Illinois Brick* decision precluding damages for indirect-purchaser claims under Sherman Act while others had not, and place of wrong would be the state in which consumer bought chip-containing product. Sherman Act § 1, 15 U.S.C.A. § 1 et seq.; Fed. R. Civ. P. 23(b)(3).

**[10]** **Federal Civil Procedure** Common interest in subject matter, questions and relief; damages issues

Understanding which law will apply before making predominance determination as to class certification is important when there are variations in applicable state law. Fed. R. Civ. P. 23(b)(3).

**[11]** **Federal Civil Procedure** Common interest in subject matter, questions and relief; damages issues

In a putative class action, variations in state law can overwhelm common issues and preclude predominance for single nationwide class. Fed. R. Civ. P. 23(b)(3).

**[12]** **Federal Courts** Conflict of Laws; Choice of Law

When state claims are brought, federal courts apply choice-of-law rules of forum state.

1 Cases that cite this headnote

**[13]** **Federal Civil Procedure** Evidence; pleadings and supplementary material

Under California's choice of law rules, class action proponent bears initial burden to show that application of California law is constitutional on basis that California has significant contact or significant aggregation of contacts to claims of each class member; once class action proponent makes this showing, burden shifts to other side to demonstrate that foreign law, rather than California law, should apply to class claims. Fed. R. Civ. P. 23.

**[14]** **Action** What law governs

Under California law, to determine whether interests of other states outweigh California's interest in class claims and thus whether California law can apply on classwide basis, courts use three-step governmental interest test; first, court determines whether relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is same or different, second, if there is a difference, court examines each jurisdiction's interest in application of its own law under

Case 2:12-md-02311-SFC-RSW   ECF No. 2192-8, PageID.39798   Filed 03/17/22   Page 5 of 16

Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

circumstances of case to determine whether true conflict exists, and third, if court finds there is true conflict, it carefully evaluates and compares nature and strength of interest of each jurisdiction in application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

[15]  Action ⚖ What law governs

Under California law, the place of the wrong, while not always controlling, remains a relevant consideration in the governmental-interest test for determining whether California law or the law of a foreign state applies.

1 Cases that cite this headnote

[16]  Federal Courts ⚖ Class actions

On interlocutory appeal of class certification, merits questions may be considered to the extent, but only to the extent, that they are relevant to determining whether the prerequisites for class certification are satisfied. Fed. R. Civ. P. 23.

1 Cases that cite this headnote

**\*1061** Appeal from the United States District Court for the Northern District of California, Lucy H. Koh, District Judge, Presiding, D.C. No. 5:17-md-02773-LHK

**Attorneys and Law Firms**

Robert A. Van Nest (argued), Eugene M. Paige, Steven A. Hirsch, Cody S. Harris, and Justina Sessions, Keker Van Nest & Peters LLP, San Francisco, California; Gary A. Bornstein and Yonatan Even, Cravath Swaine & Moore LLP, New York, New York; Richard S. Taffet, Morgan Lewis & Bockius LLP, New York, New York; Willard K. Tom, Morgan Lewis & Bockius LLP, Washington, D.C.; Geoffrey T. Holtz, Morgan Lewis & Bockius LLP, San Francisco, California; for Defendant-Appellant.

Kalpana Srinivasan (argued), Susman Godfrey LLP, Los Angeles, California; Joseph W. Cotchett (argued), Michael A. Montaño (argued), Adam Zapala, and Tamarah Prevost, Cotchett Pitre & McCarthy LLP, Burlingame, California; Marc M. Seltzer (argued), Steven G. Sklaver, Amanda Bonn, Oleg Elkhunovich, Krysta Kauble Pachman, and Lora Krsulich, Susman Godfrey LLP, Los Angeles, California; Joseph Grinstein, Susman Godfrey LLP, Houston, Texas; Katherine M. Peaslee, Susman Godfrey LLP, Seattle, Washington; Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, Washington; Jeffrey D. Friedman and Rio S. Pierce, Hagens Berman Sobol Shapiro LLP, Oakland, California; for Plaintiffs-Appellees.

Mary Helen Wimberly (argued) and Kristen C. Limarzi, Attorneys; William J. Rinner, Chief of Staff and Senior Counsel; Michael F. Murray, Deputy Assistant Attorney General; Andrew C. Finch, Principal Deputy Assistant Attorney General; Makan Delrahim, Assistant Attorney General; Antitrust Division, United States Department of Justice, Washington, D.C.; Jeff Landry, Attorney General; Elizabeth Baker Murrill, Solicitor General; Louisiana Department of Justice, Baton Rouge, Louisiana; Dave Yost, Attorney General; Benjamin M. Flowers, State Solicitor; Office of the Attorney General, Columbus, Ohio; Ken Paxton, Attorney General; Kyle Hawkins, Solicitor General; Office of the Attorney General, Austin, Texas; for Amici Curiae United States of America and States of Louisiana, Ohio, and Texas.

Kevin G. Clarkson, Attorney General, Office of the Attorney General, Anchorage, Alaska; Eric Schmitt, Attorney General, Office of the Attorney General, Jefferson City, Missouri; for Amici Curiae States of Alaska and Missouri.

Ashley C. Parrish and Joshua N. Mitchell, King & Spalding LLP, Washington, D.C.; Steven P. Lehotsky and Jonathan D. Urick, U.S. Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

Richard A. Samp and Cory L. Andrews, Washington Legal Foundation, Washington, D.C., for Amicus Curiae Washington Legal Foundation.

Randy M. Stutz, American Antitrust Institute, Washington, D.C., for Amicus Curiae American Antitrust

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39799 Filed 03/17/22 Page 6 of 16

Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

Institute.

Steven N. Williams, Joseph Saveri Law Firm Inc., San Francisco, California, for Amici Curiae Choice of Law Professors.

Scott Martin, Hausfeld LLP, New York, New York, for Amici Curiae Economists and Professors.

Leslie A. Brueckner and Stephanie K. Glaberson, Public Justice P.C., Oakland, California; Jefffrey R. White and Amy L. Brogioli, American Association for Justice, Washington, D.C.; Richard A. Koffman, Emmy L. Levens, and Bo Uuganbayar, Cohen Milstein Sellers & Toll PLLC, Washington, D.C.; Sandeep Vaheesan, Open Markets Institute, Oakland Park, Florida; for Amici Curiae Public Justice P.C., American Association for Justice, and Open Markets Institute.

Before: Eugene E. Siler[*], Jay S. Bybee, and Ryan D. Nelson, Circuit Judges.

**OPINION**

R. NELSON, Circuit Judge:

***1063** Qualcomm Incorporated seeks interlocutory review of the district court's order certifying a nationwide class of up to 250 million class members in an antitrust multi-district litigation raising claims under the Sherman Act and California state law. Because the district court erred in its choice of law analysis and in light of *FTC v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020), we vacate the class certification order. On remand, the district court should reconsider the viability of Plaintiffs' claims given *FTC v. Qualcomm*.

**I**

**A**

With its principal place of business in California, Qualcomm is a global leader in cellular technology. Over the years, Qualcomm has contributed notable technological innovations to modern cellular communication standards and holds thousands of cellular patents.

Some of Qualcomm's patents are standard essential patents ("SEPs") covering technology that international standard-setting organizations ("SSOs") incorporated into cellular communication standards, such as 3G CDMA or 4G LTE. SSOs "are global collaborations of industry participants that establish technical specifications to ensure that products from different manufacturers are compatible with each other." *FTC v. Qualcomm*, 969 F.3d at 982–83 (internal quotation marks and citations omitted). Manufacturers and suppliers must use technology covered in Qualcomm's SEPs if they want to practice 3G CDMA or 4G LTE standards. Thus, a manufacturer or supplier wanting to comply with 3G CDMA or 4G LTE standards will infringe on Qualcomm's SEPs unless they license those SEPs.

Before incorporating patented technology into a standard, SSOs require that patent holders commit to license their SEPs on fair, reasonable, and non-discriminatory ("FRAND") terms. FRAND commitments safeguard against abuses like "patent holdup," through which a SEP holder demands excessive royalties from suppliers and manufacturers of standard-compliant products and services. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 876 (9th Cir. 2012) (citation omitted).

Qualcomm licenses its cellular patent portfolio, including its SEPs, to original equipment manufacturers ("OEMs") with products, like cellphones, that incorporate Qualcomm's patented technologies. Though Qualcomm licenses its patents at the level of completed cellphone devices, it does not license its patents at the level of any given cellphone component. When Qualcomm licenses its patents, it receives a royalty that is typically 5% of the device's wholesale net selling price.

Besides licensing technology, Qualcomm also designs and sells semiconductor devices known as modem chips ("chips") to OEMs. Chips enable cellphones to connect with cellular networks as well as provide other functions. Qualcomm is the leading supplier of CDMA and premium LTE chips worldwide.

**B**

In a separate action brought in January 2017, the Federal

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39800 Filed 03/17/22 Page 7 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

Trade Commission ***1064** ("FTC") sued Qualcomm, alleging that Qualcomm engaged in unfair methods of competition in violation of the Federal Trade Commission Act ("FTCA") and the Sherman Act. Afterward, many follow-on consumer antitrust class actions were filed against Qualcomm, generally alleging that Qualcomm's conduct violated federal and state antitrust and consumer protection laws based on similar claims of anti-competitive conduct. The Judicial Panel on Multidistrict Litigation centralized these consumer class actions as a consolidated class action in the United States District Court for the Northern District of California before the same judge presiding over the separate FTC action.

Plaintiffs in this multidistrict litigation are consumers who bought cellphones and allege that Qualcomm maintained a monopoly in chips by: (1) engaging in a "no-license-no-chips" policy by which Qualcomm sold chips only to OEMs that paid above-FRAND royalty rates to license Qualcomm's SEPs; (2) refusing to license its SEPs to rival chip suppliers; and (3) entering into exclusive dealing arrangements with Apple that prevented rival chip suppliers from competing with Qualcomm to supply Apple's chip demand. Plaintiffs contend these practices harmed consumers because the amount attributable to the allegedly excessive royalty—the amount above the FRAND royalty—was passed through the distribution chain to consumers in the form of higher prices or reduced quality in cellphones.

Plaintiffs seek injunctive and monetary relief against Qualcomm, asserting violations of Sections 1 and 2 of the Sherman Act as well as California's Cartwright Act and Unfair Competition Law ("UCL").

[1]Sections 1 and 2 of the Sherman Act are "particularly 'important to the preservation of economic freedom and our free-enterprise system.' " *FTC v. Qualcomm*, 969 F.3d at 988 (quoting *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972)). Section 1 prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Section 2 also makes it illegal to "monopolize any part of the trade or commerce among the several States." *Id.* § 2. Direct purchasers—meaning those who buy the relevant product directly from the alleged antitrust violator—can bring antitrust suits for treble damages under the Sherman Act. *See id.* § 15. But the Supreme Court has long held that indirect purchasers—meaning those who purchase the relevant product through middlemen—are barred from seeking damages for alleged Sherman Act violations. *See Ill. Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Here, Plaintiffs are "indirect purchasers who are two or more steps removed from [Qualcomm] in a distribution chain" and thus cannot seek damages for the alleged Sherman Act violations. *See Apple Inc. v. Pepper*, ––– U.S. ––––, 139 S. Ct. 1514, 1520, 203 L.Ed.2d 802 (2019) (emphasis omitted).

[2]After the Supreme Court's *Illinois Brick* decision, many states enacted *Illinois Brick* repealer laws, authorizing indirect purchasers to bring antitrust damages suits under state laws. For instance, California's Cartwright Act, though modeled after the Sherman Act, permits indirect purchasers to bring antitrust claims and recover treble damages. Cal. Bus. & Prof. Code § 16700 *et seq.* Currently, thirty-five states and the District of Columbia effectively repealed *Illinois Brick* (known as "repealer states") in one form or another, but fifteen states have not (known as "non-repealer states"). *See* Practical Law Antitrust, *State Illinois Brick Repealer Laws Chart*, Westlaw, https://bit.ly/3foROqr.

***1065** In addition to the Sherman Act and California's Cartwright Act, Plaintiffs brought a claim under California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, which generally prohibits any "unlawful, unfair or fraudulent" conduct. *Id.* § 17200. Plaintiffs' UCL claim is based on the Sherman and Cartwright Act violations. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 539–40 (1999) (explaining that the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable" (internal quotation marks and citation omitted)). Because neither party identified any material difference between the federal and state claims beyond the availability of damages, the district court generally treated Plaintiffs' state law claims together with the federal claims.

C

Plaintiffs sought certification under Federal Rule of Civil Procedure 23 (" Rule 23") for an indirect purchaser class comprising "[a]ll natural persons and entities in the United States who purchased, paid for, and/or provided reimbursement for some or all of the purchase price for all UMTS, CDMA (including

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39801 Filed 03/17/22 Page 8 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

CDMAone and cdma2000) and/or LTE cellular phones ... for their own use and not for resale from February 11, 2001 ...." This class would number between 232.8 and 250 million people, and the lower bound on damages to the consumer class was estimated as $4.84 billion. Opposing class certification, Qualcomm argued that (1) Plaintiffs provided no model that could prove antitrust impact using common evidence on a class-wide basis; (2) the proposed class's size and heterogeneity violated due process, was unmanageable, and therefore not superior; and (3) indirect purchasers in non-repealer states lack standing to seek antitrust damages.

The district court certified Plaintiffs' class under Rule 23(b)(2) and (b)(3). Because the Cartwright Act mirrors federal antitrust law, Plaintiffs' UCL claim is premised at least in part upon the Sherman and Cartwright Act violations, and the parties did not identify any material differences between the federal and state claims, the district court treated Plaintiffs' federal and state law claims together when certifying the class. After concluding that the proposed class satisfied the requirements of Rule 23(a), the district court held that the proposed class satisfied Rule 23(b)(3)'s predominance and superiority requirements. As to predominance, the district court concluded that common questions predominate overall and as to the elements of the federal antitrust claim—particularly, as to antitrust violation, antitrust impact, and damages.

The district court also concluded that Plaintiffs can seek damages on behalf of the entire nationwide class under the Cartwright Act. In so concluding, the district court applied California's choice of law rules and determined that California has sufficient contacts with the claims of each class member. The district court then applied California's three-step governmental interest test to determine whether other state law, besides California law, should apply. Applying that test, the district court first concluded that non-repealer states' antitrust laws were materially different from California's Cartwright Act on the issue of damages recovery. The district court then determined that California has an interest in applying its law to this case because Qualcomm is a California business and the Cartwright Act (by allowing damages recovery) benefits consumers. But, according to the district court, non-repealer states have no interest in applying their laws here because non-repealer laws disadvantage resident consumers and are not intended to protect out-of-state businesses. ***1066** As a result, the district court held that California's Cartwright Act applied to the nationwide class, allowing the consumer class to sue for antitrust damages under Rule 23(b)(3).

Besides certifying the class under Rule 23(b)(3), the district court certified a Rule 23(b)(2) injunctive relief class. According to the district court, the class satisfied 23(b)(2)'s requirements because Qualcomm's allegedly anticompetitive conduct—*i.e.*, the practices to be enjoined—are generally applicable to the whole class.

Qualcomm seeks interlocutory review under Rule 23(f) of the district court's class certification order. On appeal, Qualcomm challenges the district court's finding of Rule 23(b)(3) predominance, arguing that antitrust impact cannot be shown by common evidence, the class improperly includes millions of iPhone purchasers suffering no antitrust impact, and California law cannot apply to the nationwide class. Qualcomm also argues that the class is unmanageable and not a superior method of adjudicating the claims as required by Rule 23(b)(3) and that the class failed to meet Rule 23(b)(2)'s requirements for injunctive relief.

After this case was submitted, this court issued its opinion in *FTC v. Qualcomm*, 969 F.3d 974. We directed the parties to file supplemental briefs addressing the effect of that decision, if any, on this case. Qualcomm urges us to remand to the district court with instructions to dismiss because *FTC v. Qualcomm* means that Plaintiffs lack any viable foundation for their claims. Plaintiffs argue that *FTC v. Qualcomm* does not affect this Rule 23(f) interlocutory appeal and that the impact, if any, of *FTC v. Qualcomm* on Plaintiffs' claims requires further development before this court can weigh in.

II

[3] [4] [5] We review the district court's class certification rulings for abuse of discretion and "review for clear error any findings of fact the district court relied upon in its certification order." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 926 (9th Cir. 2019). "A district court abuses its discretion where it commits an error of law, relies on an improper factor, omits a substantial factor, or engages in a clear error of judgment in weighing the correct mix of factors." *Id.* (citing *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1113 (9th Cir. 2014)). A district court's choice of law determination is reviewed de novo, but its underlying factual findings are reviewed for clear error. *Zinser v.*

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39802 Filed 03/17/22 Page 9 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

*Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001), *amended* 273 F.3d 1266 (9th Cir. 2001).

### III

[6] Rule 23 governs class certification. "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of [Rule] 23." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)). As a threshold matter, a class must first meet the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Senne*, 934 F.3d at 927. In addition to Rule 23(a)'s requirements, the class must meet the requirements of at least one of the "three different types of classes" set forth in Rule 23(b). *Id.* (quoting *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013)). On appeal, Qualcomm does not contest that Plaintiffs met Rule 23(a)'s requirements; rather, it contests class certification under Rule 23(b)(3) and (b)(2).

**\*1067** [7]Under Rule 23(b)(3), a court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This "inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

[8] Rule 23(b)(2), however, requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) "requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)).

Qualcomm asserts that the class did not meet the requirements of Rule 23(b)(2) and (b)(3). Even though Qualcomm raises various 23(b)(3) predominance arguments on appeal, we hold that the 23(b)(3) class was erroneously certified under a faulty choice of law analysis because differences in relevant state laws swamp predominance. Therefore, we vacate the 23(b)(3) class certification order. We also vacate the 23(b)(2) class certification order in light of *FTC v. Qualcomm*. On remand, the district court should address in the first instance the effect of *FTC v. Qualcomm* on certification, particularly on the 23(b)(3) and (b)(2) classes' ability to meet the threshold requirements of Rule 23(a) as well as the viability of Plaintiffs' claims to move forward.[1]

### A

[9]After considering Qualcomm's various arguments, we hold that most fundamentally the district court failed to properly analyze California's choice of law rules to determine the applicable state laws. When properly analyzed, California's choice of law rules preclude the district court's certification of the 23(b)(3) class because the laws of other states—beyond California's Cartwright Act—should apply. As a result, common issues of law do not predominate in the class as currently certified.

[10] [11]"Understanding which law will apply before making a predominance determination is important when there are variations in applicable state law." *Zinser*, 253 F.3d at 1189. "[V]ariances in state law [can] overwhelm common issues and preclude predominance for a single nationwide class." *Mazza*, 666 F.3d at 596. To determine which laws will apply and consequently whether 23(b)(3) predominance can be met, courts must conduct a choice of law analysis.

[12] [13]When state claims are brought, federal courts apply the choice of law rules of the forum state—here, California. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under California's choice of law rules, the class action proponent bears the initial burden to show that application of California law is constitutional **\*1068** on the basis that California has " 'significant contact or significant

Case 2:12-md-02311-SFC-RSW   ECF No. 2192-8, PageID.39803   Filed 03/17/22   Page 10 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

aggregation of contacts' to the claims of each class member." *Mazza*, 666 F.3d at 589–90 (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1081 (2001) (citations omitted)). "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims.' " *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank*, 103 Cal.Rptr.2d 320, 15 P.3d at 1081).

[14]California law cannot apply to the class claims if the interests of other states outweigh California's interest. *Mazza*, 666 F.3d at 590. To make this determination, courts use California's three-step governmental interest test. *Id.* "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *Chen v. Los Angeles Truck Ctrs., LLC*, 249 Cal.Rptr.3d 594, 444 P.3d 727, 730 (Cal. 2019) (citations omitted). "Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Id.*, 249 Cal.Rptr.3d 594, 444 P.3d at 730–31 (citations omitted). Finally, "if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied." *Id.*, 249 Cal.Rptr.3d 594, 444 P.3d at 731 (internal quotation marks and citations omitted).

As an initial matter, the district court correctly concluded that California has a constitutionally sufficient aggregation of contacts to the claims of each class member. Qualcomm's principal place of business is in California; the class includes residents of California as well as indirect purchasers who bought cellphones in California; and Qualcomm made business decisions and negotiated licenses related to its allegedly anticompetitive conduct in California. *See Mazza*, 666 F.3d at 590 (citing *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605, 236 Cal. Rptr. 605, 612–13 (1987)). Qualcomm does not dispute there are sufficient contacts in California. Instead, it argues that the district court misapplied the three-step governmental interest test in making its predominance determination. We agree.

### 1

There is no dispute that material differences exist between California's Cartwright Act and the antitrust laws of other states. Non-repealer states do not allow indirect purchasers to bring antitrust damages suits, while repealer states—like California—do. *See supra* Section I.B. This difference is material because it "will spell the difference between the success and failure of a claim." *Mazza*, 666 F.3d at 591. But the district court erred in its analysis at the first step because it overlooked variations in the antitrust laws of *Illinois Brick*-repealer states. Even among the repealer states, there are significant variations in the scope of repealer laws. For instance, state repealer laws vary as to the type of law the repeal applies to;[2] who can *1069 sue for damages;[3] and the amount or type of damages indirect purchasers can recover.[4] Thus, the district court failed to "determine[ ] ... the relevant law of each of the potentially affected jurisdictions," as required under California's governmental interest test. *Mazza*, 666 F.3d at 590 (citation omitted).

### 2

The district court also erroneously concluded that "while California has an interest in applying its law, other states have no interest in applying their laws to the current dispute." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 313 (N.D. Cal. 2018). True, as the district court noted, California has an interest in applying its law to regulate and deter Qualcomm (a resident California corporation) from allegedly unlawful business activities in California. But other states, including non-repealer states, have an interest in how their markets are managed and how best to enforce antitrust violations and regulate commerce in their states.

This court has not yet addressed California choice of law analysis in the antitrust context. *Cf. AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) (addressing only the constitutional limits of choice of law analysis in an antitrust case, not California choice of law rules themselves). But we have addressed California choice of law rules in the tort context, *Mazza*, 666 F.3d 581, and labor context, *Senne*, 934 F.3d 918.

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39804 Filed 03/17/22 Page 11 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

Turning to the tort context in *Mazza*, Honda, a California corporation, appealed the district court's certification of a nationwide 23(b)(3) class of consumers who alleged misrepresentation in connection with their purchase of certain vehicles. 666 F.3d at 587. This court held that the district court abused its discretion in certifying a class under California law containing class members who purchased or leased vehicles in different jurisdictions with materially different consumer protection laws. *Id.* at 590. In so doing, we turned to California's governmental interest test. *Id.* at 590–94.

First, we concluded that California law materially differed from some of the laws of the forty-three other jurisdictions. *Id.* at 591.

Second, because the vehicle sales at issue took place in forty-four different jurisdictions, we held that each state has a strong interest in applying its own consumer protection laws to those transactions. *Id.* at 592. We explained that federalism provides that "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *Id.* at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)). "[E]very state has an interest in having its law applied to its resident *1070 claimants." *Mazza*, 666 F.3d at 592 (alteration in original) (citation omitted). We thus concluded that "states may permissibly differ on the extent to which they will tolerate a degree of lessened protection for consumers to create a more favorable business climate for the companies that the state seeks to attract to do business in the state." *Id.* Likewise, each state has an interest in balancing the products and prices offered to consumers with the legal protections afforded to them as well as an interest in "being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Id.* at 592–93 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 105 Cal.Rptr.3d 378, 225 P.3d 516, 534 (2010)).

Third, we held that the district court did not adequately recognize that each foreign state has an interest in applying its law to transactions within its borders and that foreign states would be impaired in their ability to calibrate liability to foster commerce if California law were applied to the entire class. *Mazza*, 666 F.3d at 593. The district court improperly elevated state interest in consumer protection to a superordinate level while giving too little weight to each state's interest in promoting business—the exact type of outcome the Class Action Fairness Act of 2005 ("CAFA") intended to avoid. *Id.* (citing Findings, CAFA § 2(a)(4), Pub. L. 109–2, 119 Stat. 4, 5 (2005)). CAFA's key purpose was to correct the problem of "false federalism" in which courts faced with interstate class actions dictate the substantive law of other states by applying their own laws to other states. *Mazza*, 666 F.3d at 593 (quoting S. Rep. No. 109–14, at 61 (2005), 2005 U.S.C.C.A.N. 3, 57).

In *Mazza*, we explained California recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest" and the "place of the wrong" is said "to be the state where the last event necessary to make the actor liable occurred." 666 F.3d at 593 (internal quotation marks and citations omitted). We noted that "the last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign states, not in California." *Id.* at 594. Thus, the foreign states had a strong interest in applying their laws to transactions between their citizens and corporations doing business within their state. *Id.* Further, California's interest in applying its law to residents of foreign states was attenuated. *Id.* California did not need to apply its law to acts taking place in other states where vehicles were purchased or leased to achieve its interest in regulating those who do business within its state. *Id.* As a result, the *Mazza* court vacated the class certification order, concluding that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.*

In the labor context in *Senne*, minor league baseball players brought a class action alleging wage and hour violations under the Fair Labor Standards Act ("FLSA") and California, Arizona, and Florida law. 934 F.3d at 925. As relevant here, the district court certified a California class under Rule 23(b)(3) but denied certification for the proposed Arizona and Florida 23(b)(3) classes. *Id.* at 926. On appeal, we used California's three-step governmental interest test to determine which laws should apply to the proposed classes. *Id.* at 928. We first held that California *1071 law should apply to the 23(b)(3) California class for work

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39805 Filed 03/17/22 Page 12 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

performed in California. *Id.* at 930–31.

We also reversed the district court's determination that choice of law considerations defeated predominance and adequacy requirements for the proposed Arizona and Florida 23(b)(3) classes. *Id.* at 933. We held that Arizona law should govern the Arizona class for work performed in Arizona, and Florida law should govern the Florida class for work performed in Florida. *Id.* at 937. In so holding, we relied on the California choice of law principle, often used in tort actions, that a state ordinarily has the predominant interest in regulating conduct within its own borders. *Id.* at 936–37 (citing *Mazza*, 666 F.3d at 591–92; *State Farm*, 538 U.S. at 422, 123 S.Ct. 1513; *McCann*, 105 Cal.Rptr.3d 378, 225 P.3d at 534). Arizona and Florida wage and hour laws, when applied to work performed in-state, promotes the states' chosen balance between protecting workers and fostering a hospitable business environment within their states. *Senne*, 934 F.3d at 937.

Though this court has not addressed California's choice of law rules in the antitrust context, we recently outlined important antitrust principles in *FTC v. Qualcomm*, 969 F.3d 974. There, the FTC sued Qualcomm alleging violations of Section 5 of the FTCA, 15 U.S.C. § 45 *et seq.*, and Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. *Id.* at 986. According to the FTC, Qualcomm violated these statutes by engaging in anticompetitive conduct—the same conduct complained of by Plaintiffs here—namely that Qualcomm: (1) engaged in a "no-license-no-chips" policy by which Qualcomm sold chips only to OEMs that paid above-FRAND royalty rates to license Qualcomm's SEPs; (2) refused to license its SEPs to rival chip suppliers; and (3) entered into exclusive dealing arrangements with Apple that prevented rival chip suppliers from competing with Qualcomm to supply Apple's chip demand. *See id.* at 984–86. After a ten-day bench trial, the district court ordered a permanent, worldwide injunction prohibiting Qualcomm's core business practices and concluded that "Qualcomm's licensing practices are an unreasonable restraint of trade under § 1 of the Sherman Act and exclusionary conduct under § 2 of the Sherman Act." *Id.* at 986–87 (quoting *FTC v. Qualcomm Inc.*, 411 F. Supp. 3d 658, 812 (N.D. Cal. 2019)).

On appeal, this court reversed the district court and vacated its injunction. *FTC v. Qualcomm*, 969 F.3d at 1005. We held that Qualcomm's licensing practices did not violate the Sherman Act, and the exclusive dealing agreements with Apple did not substantially foreclose competition and were terminated years ago; thus, "there is nothing to be enjoined." *Id.* We explained that (1) "Qualcomm's practice of licensing its SEPs exclusively at the OEM level does not amount to anticompetitive conduct in violation of § 2, as Qualcomm is under no antitrust duty to license rival chip suppliers," and "[t]o the extent Qualcomm has breached any of its FRAND commitments, a conclusion we need not and do not reach, the remedy for such a breach lies in contract and patent law;" (2) "Qualcomm's patent-licensing royalties and 'no license, no chips' policy do not impose an anticompetitive surcharge on rivals' modem chip sales;" rather, "these aspects of Qualcomm's business model are 'chip-supplier neutral' and do not undermine competition in the relevant antitrust markets;" and (3) "Qualcomm's 2011 and 2013 agreements with Apple have not had the actual or practical effect of substantially foreclosing competition in the CDMA modem chip market." *Id.* Underlying much of this court's holding in *FTC v. Qualcomm* is the principle that "the antitrust laws, including the Sherman Act, were enacted for the protection of competition," and "actual or **\*1072** alleged harms to customers and consumers outside the relevant markets are beyond the scope of antitrust law."[5] *Id.* at 993 (cleaned up) (internal quotation marks and citations omitted).

Here, we have an antitrust case and examine the relevant state interests considering antitrust principles. Given those principles, there is no basis for concluding that only California has an interest. Non-repealer states' *Illinois Brick* laws are designed to regulate antitrust enforcement by allocating recoverable antitrust damages in a way those states think best promotes market competition. In other words, the relevant interests are not simply about the benefit or harm to resident consumers or liability to resident antitrust defendants; rather the relevant interests are about harm to the competitive process and in-state business activity.

As the Supreme Court explained in *Apple*, 139 S. Ct. at 1524, "[t]he *Illinois Brick* Court listed three reasons for barring indirect-purchaser suits: (1) facilitating more effective enforcement of antitrust laws; (2) avoiding complicated damages calculations; and (3) eliminating duplicative damages against antitrust defendants." These reasons underlie non-repealer states' interests in having their laws apply here.

Allowing non-repealer states to apply their laws to class

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39806 Filed 03/17/22 Page 13 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

members purchasing cellphones in-state furthers those states' determinations of how to "facilitat[e] more effective enforcement of antitrust laws." See id. The decision to bar indirect purchaser damages recovery is a policy choice regarding how a state wants antitrust laws to be enforced within its borders so competition and business can be best promoted in the state. Non-repealer laws reflect the state calculation that antitrust enforcement is best served by having indirect purchasers realize the benefit of antitrust enforcement outside of court processes. For instance, even if barred from suing for antitrust damages, indirect purchasers in non-repealer states can realize the benefit of antitrust enforcement when direct purchasers recover antitrust damages and factor that recovery into their pricing and business activity in-state, which can then be passed through to consumers in the market.

Applying non-repealer laws to in-state cellphone purchases would also further state interests in reducing the risk that transactions within their borders expose businesses to excessive and "complicated" antitrust litigation with "duplicative damages" recovery. Id. By lowering this risk, non-repealer states can attract more business in-state from entities like Qualcomm (and those who do business with Qualcomm) by creating a more favorable business environment. Non-repealer laws can be understood as choosing to run the risk of under-deterring antitrust violators over overcompensating plaintiffs and complicating antitrust enforcement; meanwhile repealer laws, like the Cartwright Act, take the opposite approach.[6] While the district court may disagree with non-repealer states' chosen priorities, federalism forbids a court from "evaluating their underlying *1073 wisdom" or inserting the court's own preference into choice of law analysis. Mazza, 666 F.3d at 593. Because non-repealer states have a clear interest in applying their laws to class members who purchased cellphones in their state, the district court erred in concluding that only California has an interest.

To the extent that, for choice of law purposes, this antitrust case can be understood as a "tort-like suit[ ]," AT&T Mobility, 707 F.3d at 1112, the district court still erred in concluding non-repealer states have no interest under Mazza.

According to the district court, non-repealer laws are designed to protect only in-state businesses from excessive antitrust liability and thus non-repealer states have no interest here because the sole defendant is an out-of-state business. Under Mazza, however, the relevant state interest is not confined to protecting only a resident company from excessive liability. 666 F.3d at 593. Rather, a state's adherence to Illinois Brick may reflect a policy decision "calibrat[ing] liability to foster commerce" in the state. Id. Thus, non-repealer states have an interest in furthering that policy by "shielding out-of-state businesses from what the state may consider to be excessive litigation" through "applying its law to transactions within its borders." Id. at 592–93.

The district court also reasoned that non-repealer states have no interest because the indirect purchaser bar does not "benefit" their residents. In doing so, the district court distinguished non-repealer states' interests at issue (disadvantaging residents by barring damages) from those foreign state interests recognized in Mazza (benefitting residents by imposing liability on out-of-state businesses). Id. at 591–93. But that reasoning ignores that residents can still benefit from their state's non-repealer laws, which "calibrate liability" to benefit in-state commerce, leading to "increase in commerce and jobs" and avoiding "higher prices for consumers or a decrease in product availability." See id. at 592–93.

Even though it grounded most of its choice of law analysis in the tort context, the district court failed to evaluate state interests as the "place of the wrong." Id. at 593 (quoting Hernandez v. Burger, 102 Cal.App.3d 795, 162 Cal. Rptr. 564, 568 (1980)). The place of the wrong is "the state where the last event necessary to make the actor liable occurred." Mazza, 666 F.3d at 593 (citations omitted). In the Mazza class action—where purchasers claimed Honda misrepresented information while marketing vehicles—the last events necessary for liability were the "communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles." Id. at 594. In other words, the place of wrong was "the jurisdiction in which the transaction took place." Id. Here, the nationwide class consists of downstream consumers—individuals who bought cellphones from various retailers located throughout the fifty states. The last events giving rise to liability would be the consumer's purchase of the cellphone, and thus the "place of wrong" would be the state where the consumer bought the cellphone. In most instances for non-California residents, this would have occurred outside of California.

[15] The place of the wrong, while not always controlling, "remains a relevant consideration" in California's governmental interest test. Hernandez, 162 Cal. Rptr. at 568. "[W]ith respect to regulating or affecting conduct

Case 2:12-md-02311-SFC-RSW ECF No. 2192-8, PageID.39807 Filed 03/17/22 Page 14 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

within its borders, the place of the wrong has the predominant interest." *Mazza*, 666 F.3d at 593 (quoting *Hernandez*, 162 Cal. Rptr. at 568). Here, *Illinois Brick* laws regulate antitrust enforcement to affect conduct consistent with the state's interest in promoting commerce. **\*1074** In other words, even under the tort choice of law principles, non-repealer states have a strong interest in applying their state laws to Plaintiffs' claims. Regardless of whether the district court approaches step two under antitrust or tort principles, it erred by dismissing non-repealer states' interest in applying their laws to in-state cellphone purchases.

### 3

Because it held that only California had an interest, the district court failed to determine which states' interests would be more impaired if their policies were subordinated to another state's law, as required under the third step of the governmental interest test. This was error.

As discussed above, non-repealer states have a strong interest in applying their laws to those consumers who bought cellphones in-state. Likewise, California's interest is attenuated where its law is applied to consumers purchasing cellphones in non-repealer states. By applying California law to the nationwide class of indirect purchasers, the district court improperly impaired non-repealer state policy by allowing California to set antitrust enforcement policy for the entire country. This is the "false federalism" that CAFA intended to correct. *See Mazza*, 666 F.3d at 593 (citing Findings, CAFA § 2(a)(4); Pub. L. No. 109–2, 119 Stat. 4, 5 (2005) (noting that courts "making judgments that impose their view of the law on other States and bind the rights of the residents of those States" is an "abuse[ ]" of class actions)). Here, more than one state's law should apply to the 23(b)(3) class. *Mazza*, 666 F.3d at 594 (noting the "false premise that one state's law must be chosen to apply to all 44 jurisdictions"). The non-repealer laws should control those purchases occurring in non-repealer states and class members with purchases in non-repealer states should be carved out of the 23(b)(3) class. Even among the repealer states, the various state laws are hardly uniform. Thus, it is not clear that a single class of all repealer state Plaintiffs could be certified under Rule 23(b)(3). That said, the district court should reach that question in the first instance after reconducting its choice of law analysis starting at step one. We thus vacate and remand the 23(b)(3) class on choice of law grounds.

### B

As for the 23(b)(2) class, the district court did not specify which claims that class would be entitled to pursue for injunctive relief. But the identified variations in state law regarding when indirect purchasers can sue for antitrust damages are not implicated in the 23(b)(2) class. Nonetheless, we also vacate the 23(b)(2) class so that on remand the district court can reconsider certification of the entire class given this court's *FTC v. Qualcomm* decision, particularly in light of the threshold requirements of Rule 23(a).

Qualcomm argues that *FTC v. Qualcomm* requires that we remand with instructions to dismiss. According to Qualcomm, that decision bars Plaintiffs from showing, based on their liability theories, that Qualcomm's conduct harmed competition in the relevant markets. But *FTC v. Qualcomm*'s effect remains unclear because neither party adequately addressed the central focus of our Rule 23(f) review—that is, how the decision affects the class's ability to meet Rule 23's certification requirements.

[16]This case and *FTC v. Qualcomm* have overlapping facts and claims, and many of our conclusions in *FTC v. Qualcomm* were conclusions of law. Thus, *FTC v. Qualcomm* likely has preclusive effect on many issues raised by Plaintiffs in this case. Ultimately, however, we are not reviewing a motion to dismiss or motion for summary judgment. Rather, our jurisdiction **\*1075** in this interlocutory appeal is limited to class certification under Rule 23(f).[7] "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S. Ct. 1184, 1194–95, 185 L.Ed.2d 308 (2013).

In their supplemental briefs, the parties narrowly focused on *FTC v. Qualcomm*'s effect on the class's ability to meet Rule 23(b)(3)'s predominance requirement. But before we can address *FTC v. Qualcomm*'s effect on Rule 23(b)(3) requirements, we must determine what state law or laws will apply to the 23(b)(3) class. That

Case 2:12-md-02311-SFC-RSW   ECF No. 2192-8, PageID.39808   Filed 03/17/22   Page 15 of 16

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

analysis ultimately must await the district court's new choice of law analysis on remand. *See supra* Section III.A.

Moreover, neither party addressed whether *FTC v. Qualcomm* affects Plaintiffs' ability to meet other class certification requirements, like Rule 23(a)(2)'s commonality requirement. *See Dukes,* 564 U.S. at 352, 359, 131 S.Ct. 2541 (concluding that "proof of commonality necessarily overlaps with respondents' merits contention" and that the employee class could not be certified because it failed to meet Rule 23(a)(2)'s commonality requirement by not offering significant proof that the employer operated under a general policy of discrimination); *Senne,* 934 F.3d at 927 ("Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." (citations omitted)). Likewise, neither party fully addressed the effect of *FTC v. Qualcomm* on the 23(b)(2) class. Qualcomm mentioned that the 23(b)(2) class could not be certified after *FTC v. Qualcomm* because the Apple agreements were terminated years ago and the remaining ongoing conduct was held not to be anticompetitive. But we have held that the class's ability to meet Rule 23(b)(2) requirements "does not require an examination of the viability or bases of the class members' claims for relief." *See Parsons,* 754 F.3d at 688 (citations omitted). Thus, *FTC v. Qualcomm*'s effect on 23(b)(2) certification requirements remains another open question to be considered on remand.

We concluded in *FTC v. Qualcomm* that Qualcomm's SEP licensing practices, the same practices complained of here, are lawful and not anticompetitive. *See* 969 F.3d at 1005. Because Plaintiffs' arguments in this case overlap with those brought in *FTC v. Qualcomm*, there would have to be some extraordinary difference for Plaintiffs' claims here to not fail as a matter of law—for instance, differences between Sherman Act claims brought by the government versus private parties, differences between Sherman Act analysis and other state laws that might apply, or difference in Plaintiffs' ability to meet their burden of proof under the rule of reason. *See id.*

\* \* \*

While *FTC v. Qualcomm* may well warrant dismissal of Plaintiffs' claims, that issue is not presently before us on interlocutory appeal. Thus, we vacate the 23(b)(2) class and remand with instructions for the district court to reconsider certification of the entire class given *FTC v. Qualcomm*. If the district court determines that **\*1076** *FTC v. Qualcomm* defeats the class on Rule 23(a) grounds—a threshold requirement before turning to Rule 23(b)—that would eliminate the need to reconduct the choice of law analysis for the 23(b)(3) class. *See supra* Section II.A. If the class meets Rule 23(a)'s requirements, then the district court should determine the effect of *FTC v. Qualcomm* on the 23(b)(2) class and, after it has reconducted its choice of law analysis and determined what state law applies to the class, the effect on the 23(b)(3) class.

**VACATED AND REMANDED.**

**All Citations**

14 F.4th 1059, 2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148, 2021 Daily Journal D.A.R. 10,215

---

**Footnotes**

| | |
|---|---|
| \* | The Honorable Eugene E. Siler Jr., Senior United States Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation. |
| 1 | Because we vacate and remand the 23(b)(2) class so the district court can reconsider certification given *FTC v. Qualcomm*, we need not reach Qualcomm's argument that the 23(b)(2) class failed to meet the Rule 23(b)(2) cohesiveness requirement, which—as Qualcomm later concedes in its reply brief—we rejected in *Senne,* 934 F.3d 918. |

**Stromberg v. Qualcomm Incorporated, 14 F.4th 1059 (2021)**
2021-2 Trade Cases P 81,834, 21 Cal. Daily Op. Serv. 10,148...

| | |
|---|---|
| 2 | Florida, Massachusetts, Missouri, and New Hampshire limit the repeal to consumer protection statutes. *See Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 108 (Fla. Dist. Ct. App. 1996); *Ciardi v. F. Hoffman-La Roche, Ltd.*, 436 Mass. 53, 762 N.E.2d 303, 312 (2002); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *19 (N.D. Cal. Oct. 2, 2014) (quoting *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007)); *LaChance v. U.S. Smokeless Tobacco Co.*, 156 N.H. 88, 931 A.2d 571, 582 (2007). |
| 3 | Though Illinois allows indirect purchaser recovery, it precludes class actions brought by indirect purchasers. 740 Ill. Comp. Stat. Ann. 10/7. And, as another example, Alaska, Arkansas, Colorado, and Idaho limit indirect purchaser claims to suits brought by the state attorney general. *See* Alaska Stat. Ann. § 45.50.577(i); Ark. Code Ann. § 4-75-315(b); Colo. Rev. Stat. Ann. § 6-4-111(2); Idaho Code Ann. § 48-108(2). |
| 4 | For instance, Hawaii only permits indirect purchaser suits for compensatory damages. Haw. Rev. Stat. Ann. § 480-13(a)(1). Minnesota, New York, Rhode Island, South Dakota, and Vermont either encourage or require that courts take steps necessary to avoid duplicative recovery. Minn. Stat. Ann. § 325D.57; N.Y. Gen. Bus. Law § 340(6); 6 R.I. Gen. Laws § 6-36-7(d); S.D. Codified Laws § 37-1-33; Vt. Stat. Ann. tit. 9 § 2465(b). |
| 5 | We recognize that the relevant market was "the market for CDMA modem chips and the market for premium LTE modem chips," not the "much larger market of cellular services generally." *FTC v. Qualcomm*, 969 F.3d at 992 (internal quotation marks and citation omitted). Nevertheless, the point remains that antitrust differs from tort law because antitrust is designed to protect competition rather than protect the actual plaintiffs or defendants. |
| 6 | The California Supreme Court has explained that the Cartwright Act weighs "[t]he goal of deterring antitrust violations" over "concerns that [plaintiffs] may receive a windfall." *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 111 Cal.Rptr.3d 666, 233 P.3d 1066, 1081–83 (2010). |
| 7 | This distinction commands the scope of our review. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016) ("When, as here, 'the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification.'" (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 107 (2009))). |

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.