# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Sean F. Cox |
|  | : | |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | : : : : : | |

## END-PAYOR PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ENTERPRISE FLEET MANAGEMENT, INC.'S MOTION TO ENFORCE END PAYOR SETTLEMENTS AND STRIKE STIPULATION

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. **Can Crowell & Moring LLP obtain recovery under the settlement agreements for its client, Enterprise Fleet Management, Inc., where neither entity is a settlement class member and where neither entity sought leave of the Court to intervene to assert their arguments?**

     No.

2. **Should the Court strike its order entering a stipulation between Settlement Class Counsel, Class Action Capital, LLC, and its clients where:  (i) the stipulation is consistent with the settlement agreements and plan of allocation; (ii) the stipulation is limited to the signatories; and (iii) as an entity that is not included in the settlement classes, Enterprise Fleet Management Corp. has no standing to challenge them?**

     No.

## <u>TABLE OF MOST CONTROLLING AUTHORITIES</u>

*Request Foods, Inc. v. Am. Roland Food Corp.*, No. 1:11-CV-128, 2012 WL 13018611 (W.D. Mich. Sept. 12, 2012).

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED..................................................i

        1.    Can Crowell & Moring LLP obtain recovery under the settlement agreements for its client, Enterprise Fleet Management, Inc., where neither entity is a settlement class member and where neither entity sought leave of the Court to intervene to assert their arguments? ........................i

        2.    Should the Court strike its order entering a stipulation between Settlement Class Counsel, Class Action Capital, LLC, and its clients where:  (i) the stipulation is consistent with the settlement agreements and plan of allocation; (ii) the stipulation is limited to the signatories; and (iii) as an entity that is not included in the settlement classes, Enterprise Fleet Management Corp. has no standing to challenge them? ...................................i

TABLE OF MOST CONTROLLING AUTHORITIES ........................... ii

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................3

    I.    The End-Payor Actions Always Contemplated a Settlement Class Definition Limited to End-Payors. ................................3

    II.    Settlement Class Counsel's November 2019 Email to Crowell Is Irrelevant, Was Not Relied Upon, And Is Not Inconsistent With the Settlement Class Definition....................................8

    III.    Settlement Class Counsel Entered into a Stipulation with Another Third-Party Claims Filer and Its Clients that Is Not Binding on EFM and is Consistent with a Settlement Class Definition Limited to End-Payors.......................................10

    IV.    The FMCs, Including EFM, Operate in a Manner that Excludes them from the Settlement Classes. .......................12

ARGUMENT ..................................................................................13

I.    EFM Is Not Entitled to Relief Since It Is Not A Settlement Class Member. ............................................................. 14

    A.    The Settlement Agreements Limit the Settlement Class to End-Payors. ............................................................. 14

    B.    EFM is Properly Excluded from the Settlement Class Because FMCs Are Not "End-Payors" of a Leased Vehicle. ............................................................................. 16

    C.    Treating EFM As An EPP Settlement Class Member Creates Double Recovery Problems And Was Never Contemplated. ................................................................. 16

II.    The Motion is Procedurally Improper Since EFM Has Neither Sought Nor Been Granted Leave to Intervene. ................................... 18

III.    Estoppel Does Not Prevent Settlement Class Counsel From Asserting EFM's Exclusion From the Settlement Classes. ................ 19

IV.    The CAC Stipulation Supports Settlement Class Counsel's Position and Is Consistent With the Plan of Allocation. ..................... 20

    A.    Movant Does Not Have Standing to Challenge the Stipulation. ............................................................... 21

    B.    The CAC Stipulation Does Not Violate Illinois Brick. ............ 22

    C.    The CAC Stipulation Does Not Violate the Plan of Allocation. .............................................................. 24

CONCLUSION .................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Franklin Cty. v. Travelers Prop. Cas. Ins. Co. of Am.*,
No. CIV.A 3:08-52-DCR, 2008 WL 4787401 (E.D. Ky. Oct. 30, 2008) ..........18

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)..................................................................................*passim*

*In re Automotive Parts Litig.*,
997 F.3d 677 (6th Cir. 2021) ...............................................................3, 14, 23

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*,
140 F. Supp. 3d 339 (D. Del. 2015)........................................................................5

*In re Methionine Antitrust Litig.*,
204 F.R.D. 161 (N.D. Cal. 2001)............................................................................5

*In re Optical Disk Drive Antitrust Litig.*,
2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ......................................................23

*In re Polyurethane Foam Antitrust Litig.*,
168 F. Supp. 3d 985 (N.D. Ohio 2016) .............................................................23

*Livonia Prop. Hldgs., L.L.C. v. 12840-12976 Farmington Rd. Hldgs., L.L.C.*,
717 F. Supp. 2d 724 (E.D. Mich. 2010) ............................................................21

*Lyngaas v. Curaden AG*,
436 F. Supp. 3d 1019 (E.D. Mich. 2020), aff'd sub nom. 992 F.3d 412
(6th Cir. 2021)....................................................................................................23

*Marino v. Ortiz*,
484 U.S. 301 (1988)............................................................................................21

*Old Kent Bank v. Sobczak*,
243 Mich. App. 57 (2000) ..................................................................................14

*Paul v. Detroit Edison Co.*,
94 F. Supp. 3d 880 (E.D. Mich. 2015) .........................................................19, 20

*Request Foods, Inc. v. Am. Roland Food Corp.*,
    No. 1:11-CV-128, 2012 WL 13018611 (W.D. Mich. Sept. 12, 2012)...............15

*Stromberg v. Qualcomm, Inc.*,
    14 F.4th 1059 (9th Cir. 2021) ............................................................................24

*Toldy v. Fifth Third Mortg. Co.*,
    No. 1:09 CV 377, 2010 WL 2640021 (N.D. Ohio June 29, 2010) ...................18

*Welsh v. Wachovia Corp.*,
    191 F. App'x 345 (6th Cir. 2006).....................................................................22

## **INTRODUCTION**

End-Payor Plaintiffs ("EPPs"), by and through their Court-appointed counsel ("Settlement Class Counsel"), respectfully submit this memorandum in opposition to the motion made by Crowell & Moring LLP's ("Crowell") on behalf of non-party Enterprise Fleet Management, Inc. ("EFM") to participate in the settlements as if it were a settlement class member. ECF No. 2192. Fleet Management Companies ("FMCs") such as EFM are companies in the business of leasing vehicles to their business customers. In addition to submitting claims on behalf of EFM, Crowell has submitted claims on behalf of EFM's customers based on many of the same vehicles. Plainly, the FMC customers are at the end of the chain of distribution and are the members of the class. For the reasons set forth below, the motion should be denied.

First, the Settlement Agreements were made on behalf of settlement classes of end payors. This is obvious both on the face of the Settlement Agreements, *see, e.g.*, *Exhaust Systems*, ECF No. 112-1, PgId.3818 (defining Releasors as "***End-Payor Plaintiff Class Representatives*** and the Settlement Class Members"), and by reference to the underlying complaints, which explain that the "members of the proposed Classes purchased [the affected parts] indirectly" as "an owner or lessee of a new Vehicle" and that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule," *Id.*, PgId.3816. The settlement class definitions also include the exclusionary term "not for resale,"

which excludes all entities except end-users. The record in these cases demonstrate that the settlement classes are limited to end payors.

Second, FMCs, such as EFM, cannot automatically be deemed settlement class members, particularly where they make claims for vehicles they lease. EFM does not contest that the vehicles it seeks to recover upon in this litigation are those it purchased *to lease* to its corporate customers; it is therefore not the end-user in the chain of distribution. This is illustrated by the fact that even the sample lease agreement provided by a FMC passes all risk of loss on to the lessor, as well as all "costs, expenses, fees and charges." ECF No. 2192-6, PgId.39781-82.

Third, movant's interpretation is contradicted by the record in these cases. Nothing in the settlement agreements, plan of allocation, or any other filing made in these cases contemplate that two persons or entities could make a claim to share in the settlements based on the same vehicle. Movant's interpretation would in fact **contradict** the *pro rata* scheme in the Plan of Allocation that provides for payment on a per-vehicle and per-part *pro rata* basis.

In sum, if granted, the motion filed by Crowell on behalf of EFM would do violence to the standard principles of claims administration by raising fundamental questions about fairness of notice to end-payor purchasers—the only settlement class members specified in the settlement agreements. It would also cause substantial additional delay to an already-complicated claims administration process.

Movant's attempt to overturn a negotiated stipulation between EPPs and the nation's largest FMCs—a stipulation *that recognizes the limitation of the settlement classes to end-payors*—should also be rejected. EFM does not have standing to challenge the stipulation since it is not a settlement class member and is not bound by the agreement. The stipulation, which resolves a disputed question, does not violate *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 723 (1977), a case that only applies to a litigated class and not to a settlement class. As the Sixth Circuit has recognized, "*Illinois Brick* is a question of antitrust standing . . . It is not a question that bears on the interpretation of the settlement agreements." *In re Automotive Parts Litig.*, 997 F.3d 677, 683 (6th Cir. 2021) (hereinafter "*Yamashita*"). The stipulation is likewise consistent with the plan of allocation and does not contemplate that overlapping claims could be submitted based on the same vehicles. The motion should be denied.

## **BACKGROUND**

### I.   **The End-Payor Actions Always Contemplated a Settlement Class Definition Limited to End-Payors.**

The district court granted final approval of the settlements in four successive rounds.[1]

---

[1] Final approval was granted on June 20, 2016 (Round 1), September 25, 2017 (Round 2), November 8, 2019 (Round 3), and September 23, 2020 (Round 4). ECF No. 2101, PgId.38264. Preliminary approval was granted months before each final approval hearing took place.

As is acknowledged in the motion, EPP settlement class members only include "persons and entities that . . . purchased or leased a new Vehicle [or replacement parts] in the United States not for resale." ECF No. 2192, PgId.39741. The settlement classes are defined in the settlement agreements, described in the class notices for each round of settlements, and outlined in the Plan of Allocation repeatedly approved by the district court. *See, e.g.*, *Exhaust Systems*, ECF No. 112-1, PgId.3819 (Meritor Settlement); ECF No. 2005-2, PgId.36628 (Plan of Allocation). On their face, the settlement agreements do not entitle FMCs—entities who purchase large volumes of vehicles not for their own use but to immediately lease them to their end-user customers—to share in the settlements. Entities who purchase vehicles for the purpose of immediately re-leasing them were never intended to be included in the settlement classes. Reiss Decl. ¶ 4. The intent not to include them is particularly obvious when viewed in proper context.

**Other Provisions within the Settlement Agreements:** The settlement agreements at issue all contain consistent language stating that the agreements "shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in the agreement." *See, e.g.*, *Exhaust Systems*, ECF No. 112-1, PgId.3841 (Meritor Settlement). Releasors are defined in the settlement agreements as "End-Payor Plaintiff Class Representatives and the

Settlement Class Members." *Id.*, PgId.3818. The settlement agreements also expressly reference each respective complaint. *Id.*, PgId.3816. Those complaints note the "members of the proposed Classes purchased [the affected parts] indirectly" as "an owner or lessee of a new Vehicle." *See, e.g.*, *Exhaust Systems*, ECF No. 70 ¶ 100. They further explain that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule." *Id.* ¶ 200.

**Settlement Class Counsel's Prior Filings:** Throughout the course of this long-pending litigation, Settlement Class Counsel have consistently taken the position that the classes they represent include only those at the end of the distribution chain and not entities higher up in the chain, such as automobile dealers. *See, e.g.*, *Exhaust Systems*, ECF No. 36 (response to motion to dismiss). This position is consistent with the case law addressing potential conflicts of interest among multiple levels of indirect purchasers in antitrust class actions. S*ee In re Methionine Antitrust Litig.*, 204 F.R.D. 161, 167 (N.D. Cal. 2001) (denying class certification in part because plaintiffs sought to represent two levels of indirect purchasers and noting "Plaintiff does appear to have a conflict with the class members to whom it resold methionine"); *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 140 F. Supp. 3d 339 n.7 (D. Del. 2015) (finding a conflict where "truck resellers within the class have an interest in proving that they passed-

through zero overcharges in order to recover 100% of the damages attributed to each resale, while the downstream purchasers have an opposite interest").

Settlement Class Counsel repeatedly explained in the motions for final approval that the settlements benefited the End-Payor Purchaser Class because "Defendants would offer expert testimony challenging the impact of their conduct" and End-Payor Purchasers would have to show the "Settling Defendants' illegal overcharges were passed through multiple levels of indirect purchasers." *See, e.g.*, *Exhaust Systems*, ECF No. 171, PgId.6197. This is consistent with an intent to represent only the end-payors—and not indirect purchasers that subsequently resold or leased vehicles to the end-payors.

***The Class Notice:*** Each Class Notice clearly explains that "you are included in the Settlement Classes … if …you bought or leased a qualifying new vehicle in the U.S. (not for resale)." ECF No. 2002-6, PgId.36559. The Class Notices also make clear that only "Purchasers or lessees of qualifying new vehicles"—not resellers or lessors—"may be members of the Settlement Classes entitled to monetary recovery." *Id.*, PgId.36569. This is further consistent with an intent to exclude entities like EFM that lease vehicles to end-payors.

***The Plan of Allocation:*** The approved Plan of Allocation also makes clear that "Authorized Claimants will share and share alike on a *pro rata* basis in the Net Settlement Funds" and "Allowed Claim Amounts for each Authorized Claimant will

be determined separately for each Automotive Part." *See, e.g., Exhaust Systems,* ECF No. 2002-2, PgId.36521-2. This indicates that only one settlement payment will be made for each qualifying Automotive Part. The Plan of Allocation does not permit (or even contemplate) multiple payments for the same vehicle to multiple levels of indirect purchasers within the vehicle distribution chain.

*The Structure of the* **In re: Automotive Parts Antitrust Litigation:** This litigation contains two separate groups of indirect purchaser plaintiffs: the "Auto Dealer Class" and "End-Payor Class." The Auto Dealer Settlement Class includes, "Dealers who indirectly purchased certain component parts and/or purchased new vehicles containing [the] component parts."[2] "Dealer" or "Automobile Dealer" is defined as "an entity or person ***authorized to engage in the business of selling and/or leasing new vehicles*** at retail in the United States." *Id.* To the extent that FMCs, like EFM, are authorized to sell or lease new vehicles in the United States— by virtue of their actual vehicles sales and leases to end-payors—they are potential members of the Auto Dealer class.

*The Court's Orders Approving the Settlements*: Crowell and EFM acknowledge that, in approving the settlements, the Court understood that the settlement classes in these actions were limited to end-payor plaintiffs. For example,

---

[2] *First Phase Notice in Auto Dealer Action,* http://www.autodealersettlement.com/media/692505/v4_auto1_notice_091715_fin al.pdf (last visited April 20, 2022).

the Court stated that the settlements "identif[y] those jurisdictions that allow **EPPs**, who are indirect purchasers, to seek money damages or restitution." *In re Wire Harness*, No. 12-cv-00103-SFC, ECF No. 512, PageID.17218 (Aug. 9, 2016); *see also* ECF No. 2192, PgId.39750 (where this quote is cited by Crowell and EFM).

## II. Settlement Class Counsel's November 2019 Email to Crowell Is Irrelevant, Was Not Relied Upon, And Is Not Inconsistent With the Settlement Class Definition.

Crowell first raised a question about FMCs in an email dated October 17, 2019. ECF No. 2192-3, PgId.39771. In that email, Crowell asked Settlement Class Counsel to confirm, *inter alia*, that "fleet management companies who purchase (and hold title to) new vehicles are . . . not otherwise excluded from the class by virtue of leasing their vehicles out to customers under long term leases." *Id.*, PgId.39770. The very fact that Crowell raised this question undercuts the argument that the settlement agreements unambiguously include FMCs as class members. In raising this question, neither Crowell nor EFM provided Settlement Class Counsel with any actual lease terms. Langham Decl. ¶ 4. Despite this, Settlement Class Counsel responded as follows on November 9, 2019:

> As discussed on our call, we will address many of the issues related to fleet management companies ***on a case-by-case basis***. However, ***assuming for purposes of this response*** that the fleet management company at issue purchased new vehicles and retained title to those new vehicles while leasing them to customers under long term leases, those fleet management companies would be included in the class.

*Id.*; *see also* ECF No. 2192-3, PgId.39770 (emphasis added).

Settlement Class Counsel did not "confirm that fleet management companies such as EFM" "were included in the End Payor settlement class" as Crowell now contends. ECF No. 2192-2 at PgId.39762, ¶ 4 (Burton Decl.); *see also* Langham Decl. ¶ 5. Settlement Class Counsel did not state that in all cases FMCs that leased their vehicles to customers under long term leases would be included in the settlement class. *Id.* And, importantly, Settlement Class Counsel **never** stated that there could be multiple claimants and multiple recoveries for a single vehicle. *Id.* Instead, Settlement Class Counsel emphasized the "case-by-case" nature of the analysis involving FMCs, acknowledging that there may be some cases in which FMCs could recover as end-payors. *Id.* Crowell did not seek further follow-up and did not ask for more information. *Id.* ¶ 6.

Three days after receiving that email, Crowell filed a claim on behalf of EFM. ECF No. 2192-5, PgId.39774 ¶ 3. It later supplemented EFM's claim on March 16, 2020. *Id.*; *see also* Reiss Decl. ¶ 5, Ex. D. EFM is the only FMC represented by Crowell. *Id.* ¶ 6. And the March 16, 2020 claim form is the only one on file for EFM. *Id.* To Settlement Class Counsel's knowledge, all of the vehicles claimed by EFM are subject to long-term lease agreements; none were claimed or purchased for EFM's own use or account. *Id.* In total, EFM seeks to recover for 1,043,056 vehicles and 2,618,908 replacement parts. *Id.* ¶ 7. Both before and after filing EFM's claim,

Crowell filed a litany of claims on behalf of true end-payors, including many who are on information and belief EFM's customers. *Id.* ¶ 8. Regardless, these claims seek compensation for the same vehicles (identified by VIN) as EFM.

Once the claims-filing deadline passed, the Claims Administrator began the process of de-duplicating claims by VIN number. Reiss Decl. ¶ 9. Of the 1,043,056 vehicles claimed by EFM, 503,316 of them—48.25%—were *also* claimed by another entity and most—more than 500,000 of them—were claimed by another entity who is *also* represented by Crowell. *Id.* In many cases, in fact, Crowell filed not one, not two, but *three separate claims* for a single vehicle. Reiss Decl. ¶ 9. Settlement Class Counsel alerted Crowell to this specific problem in January 2022.[3] Langham Decl. ¶ 7 at Ex. A. Settlement Class Counsel also asked Crowell for EFM's lease agreements, which Crowell initially declined to provide. Langham Decl. *Id.* ¶ 8. In any event, Crowell's motion does not and cannot identify EFM or any other party's detrimental reliance on Settlement Class Counsel's email. *See, e.g.*, ECF No. 2192.

**III.    Settlement Class Counsel Entered into a Stipulation with Another Third-Party Claims Filer and Its Clients that Is Not Binding on EFM and is Consistent with a Settlement Class Definition Limited to End-Payors.**

Third-party claims filer Class Action Capital, LLC ("CAC") previously filed

---

[3] This undercuts Crowell's claim that it has received "no correspondence or communication . . . denying, limiting, or otherwise indicating that its claim is not in good standing." ECF No. 2192-2, PgId.39763 ¶ 4.

a Motion to Enforce Settlement Agreements relating to claims filed by four of the five largest FMCs, all of whom it represents. ECF No. 2149. CAC and Settlement Class Counsel negotiated a resolution to that motion through a stipulation entered by the Court. ECF No. 2182. The stipulation recognized that "[a] dispute has arisen as to whether FMCs that purchased vehicles and then leased those vehicles (as lessors) to FMC Customers (as lessees) are members of the EPP Settlement Classes and entitled to recover from the EPPs' class settlements." The stipulation further recognized that "two persons or entitles cannot both have a claim to share in the net settlement funds based on the purchase or lease of the same vehicle," and set forth procedures for addressing FMC claims. *See generally id.*

Those procedures established that in those instances where both FMCs and their customers filed otherwise valid and timely claims for the same vehicle, FMC customers and not FMCs would be paid. *Id.*, PgId.39704. To address the concern that FMCs may have filed claims on ***behalf of their customers*** who did not file their own claims, the stipulation allows for FMC customers to recover through the FMCs in the event no duplicate customer claim was actually filed by the ultimate end-payor. *Id.* In such cases, the "FMC Claimants shall be required to pass on the recoveries they obtain from the net settlement funds to the FMC Claimants' customers [minus capped fees agreed to between the FMC and its customers]." *Id.*

Following entry of the stipulation, Settlement Class Counsel discussed the

issue with Crowell and offered Crowell's clients the same treatment as defined in the stipulation. Langham Decl. ¶ 11. Settlement Class Counsel emphasized that payment of claims to multiple levels of the chain of distribution was inconsistent with the text and intent of the class definition. *Id.*

Crowell, on behalf of its clients, did not agree to be bound by the terms of the stipulation, which patently does not bind any party other than the signatories. ECF No. 2182. Instead, given that EFM is not an end-payor and did not make any qualifying purchases, it is not a class member and its claims will be denied.

## IV. The FMCs, Including EFM, Operate in a Manner that Excludes them from the Settlement Classes.

There is little dispute about the general operation of the FMC business model. FMCs purchase large volumes of vehicles to satisfy customer demand for large quantities of new vehicles, often ordering thousands of vehicles at a time through orders placed directly with OEMs. Langham Decl. ¶ 12. Although the FMC-client relationship can vary, as a general matter, FMCs "provide fleet management services to businesses that operate fleets of vehicles." ECF No. 2182, PgId.39700. "In certain, but not all instances, FMCs purchased new vehicles and then leased those vehicles to their customers" and "[i]n other instances, FMC Customers purchased or leased new vehicles directly from an automobile dealer or other third party either on their own or with an FMC's administrative assistance, and the FMC performed fleet management services to the FMC customers relating to those vehicles." *Id.*

As the motion acknowledges, FMC leases mostly take the form of Open-End or Terminal Rental Adjustment Clause ("TRAC") leases. ECF No. 2192-5, PgId.39775 ¶¶ 5 & 6.[4] When FMCs lease vehicles under open TRAC leases, the lease generally provides that the lessor will sell the vehicle at the end of the lease term and share the profits or losses of the sale with the FMC Customer.[5] The FMCs purchase the vehicles specifically for purposes of leasing the vehicle to their customers under an open-ended lease agreement that contemplates that the vehicle will be sold as part of the same transaction. Exs. to ECF No. 2149 (sample leases from some of the largest EFMs). EFM's website explicitly mentions that it is a resale expert, stating "[n]o other company buys and sells more vehicles than enterprise" and noting that "[i]n 2017, Enterprise sold more than 1.1 million client vehicles."[6] Although EFM has redacted its own sample lease agreement, lease agreements from the largest FMCs confirm that FMC customers make lease payments pegged to the new vehicle purchase price, plus the FMC's administrative fees. Exs. to ECF No. 2149 (Element, at Art. 7; Wheels, at 2).[7]

## **ARGUMENT**

---

[4] *See also* Langham Decl., ¶ 13, Exhibit C at 30-31 (Deloitte (2018): *Fleet Leasing & Management in North America*).

[5] Langham Decl., ¶ 12, Exhibit B at 2 (Fleet Financials (2016): *Open-End vs. Closed-End Leasing*).

[6] https://www.elementfleet.com/fleet-services/car-light-duty/vehicle-remarketing.

[7] Element does not contend that its business model operates any differently than the other FMCs. *See generally* ECF No. 2192.

I.   **EFM Is Not Entitled to Relief Since It Is Not A Settlement Class Member.**

A.   **The Settlement Agreements Limit the Settlement Class to End-Payors.**

Crowell and EPPs agree that the language of the settlement agreements govern whether EFM is a member of the Settlement Classes. ECF No. 2192, PgId.39735. Because settlement agreements are a type of contract, their interpretation is governed by state contract law. *See Yamashita*, 997 F.3d at 681 ("A settlement agreement is a contract governed by principles of state contract law, here Michigan law."). "Under Michigan law, '[t]he primary goal of contract interpretation is to honor the intent of the parties.'" *Id.* (quoting *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63 (2000)).

Crowell incorrectly alleges that FMCs like EFM are settlement class members under the "plain language of the settlements." ECF No. 2192, PgId.39741. But this reading requires the Court to improperly look at the settlement class definition **without** consideration of the "contract as a whole." *Yamashita,* 997 F.3d at 681. For example, the settlement agreements make clear that only end-payors are covered. *See, e.g.*, *Exhaust Systems*, ECF No. 112-1, PgId.3818 (defining Releasors as "***End-Payor Plaintiff Class Representatives*** and the Settlement Class Members"). The settlement agreements also specifically reference each respective complaint. *Id.*, PgId.3816. Those complaints explain that the "members of the proposed Classes purchased [the affected parts] indirectly" as "an owner or lessee of a new Vehicle" and that "in a multiple-level chain of distribution, passing on monopoly overcharges

14

is not the exception: it is the rule." *Id.* ¶ 200; *See also Exhaust Systems*, ECF No. 70 ¶¶ 100, 200 & ECF No. 171, PgID.6197 (noting "EPPs would have to show that the . . . Settling Defendants' illegal overcharges were passed through multiple levels of indirect purchasers"). The motion ignores this when it asserts that "whether FMCs are 'end payors' under antitrust law is wholly irrelevant here in light of the approved class definition in the Settlement Agreements." ECF No. 2192, PgId.39742.

Also, the settlement class definitions contain the exclusionary term "not for resale." Courts considering the "not for resale" term have found that its "ordinary use" excludes all entities except end-users. *See Request Foods, Inc. v. Am. Roland Food Corp.*, No. 1:11-CV-128, 2012 WL 13018611, at *2 (W.D. Mich. Sept. 12, 2012). In *Request Foods*, the court held that an entity that purchased olive paste to incorporate it into frozen food entrees to be sold in wholesale quantities at retail constituted a "reseller" of olive paste for purposes of the Magnuson Moss Warranty Act. *Id.* In so holding, the court rejected the entity's argument that it was a purchaser of a consumer product sufficient to obtain that law's protection because the entity made the purchase for "resale." *Id.* at *1-2. The court specifically interpreted the term "resale" to focus on "the ultimate end user, or the retail level customer," and exclude all others. *Id.* The same interpretation should apply here, particularly in light of the settlement agreements' explicit instruction that the agreements "shall be construed and interpreted to effectuate the intent of parties." *See Exhaust Systems*,

15

ECF No. 112-1, PgId.3841 (Meritor Settlement). This is the only interpretation supported by the additional documents, mentioned above. *Supra* at Background, § I.

### B. EFM is Properly Excluded from the Settlement Class Because FMCs Are Not "End-Payors" of a Leased Vehicle.

Given that the settlement classes are limited to "end-payors," it is clear that FMCs such as EFM cannot automatically be settlement class members. EFM does not contest that it purchases vehicles ***to lease*** those vehicles to its corporate customers. *See supra* Background, § IV. It therefore concedes that it is not the end-user in the chain of distribution but is simply part of a chain of indirect purchasers that passed costs through to businesses and consumers that ultimately purchased or leased the new vehicles from it. Further supporting this conclusion is the fact that even the redacted sample lease agreement provided by FMC passes all risk of loss on to the client, as well as all "costs, expenses, fees and charges." ECF No. 2192-6, PgId.39782 ("Lessee assumes and agrees to bear the entire risk of loss . . . ").

### C. Treating EFM As An EPP Settlement Class Member Creates Double Recovery Problems And Was Never Contemplated.

The motion's position that "both owners and lessees" are entitled to recover for the same vehicle cannot be correct for the simple reason that nothing in the settlement agreements, plan of allocation, or any other document filed in this litigation contemplate such duplicate recovery. The Plan of Allocation allocates payment on a per-vehicle and per-part *pro rata* basis. Offering two payments for a

single vehicle would necessarily contradict this *pro rata* scheme. Additional payments to FMC lessors would also reduce payments recovered by end-payor class members that purchased or leased vehicles without FMCs. The fact that the Plan of Allocation makes no provision for more than one payment on a single vehicle—to FMC lessors or otherwise—further indicates an intent to exclude such double payments. It is also the case that, despite purporting to have filed this motion solely on behalf of EFM, Crowell's position that multiple recoveries are available for a single vehicle would ***reduce*** EFM's total recovery under the *pro rata* payment system if EFM were a settlement class member at the expense of its clients. This fact calls into question whether the instant motion was ***in fact*** filed on behalf of EFM's interests (rather than Crowell's).

The *In re Navistar MaxxForce Engines Marketing* notice cited in the motion, ECF No. 2192 at PgId.39745, does not suggest otherwise, Case No. 1:14-cv-10318 PageID.13703-4 (N.D. Ill.). *Navistar* was a product liability case, not an antitrust action. In that case, the settlement class definition expressly included ***both*** the lessor and the lessee of the same vehicle. The notice also expressly provided that each would share in the settlement on a 50/50 basis with respect to claims based on the same vehicle. In this case, the settling parties ***did not*** include lessors of vehicles in the settlement class definition. Nor did the plan of allocation provide that settlement proceeds would be shared by the lessors and lessees of the same vehicle. *Navistar*

actually supports EPPs' position. Had the parties intended both lessors and lessees to recover, they would have memorialized this in the settlement agreements.[8] Instead, the settling parties repeatedly referenced lessees as the appropriate end-payor plaintiff; providing only a single payment per vehicle in the plan of allocation.

## II.    The Motion is Procedurally Improper Since EFM Has Neither Sought Nor Been Granted Leave to Intervene.

Beyond the merits, the motion should be denied for the independent reason that it is improper. In order for a non-party to insert itself into a lawsuit where it purportedly asserts interests, it must first successfully intervene. *Franklin Cty. v. Travelers Prop. Cas. Ins. Co. of Am.*, No. CIV.A 3:08-52-DCR, 2008 WL 4787401, at *2 (E.D. Ky. Oct. 30, 2008) (intervention "allows non-parties to insert themselves into lawsuits where their interests may be affected"); *see also Toldy v. Fifth Third Mortg. Co.*, No. 1:09 CV 377, 2010 WL 2640021, at *2 (N.D. Ohio June 29, 2010).

Here, EFM has not sought intervention and is not a party. EFM is admittedly not an end-payor and is therefore not a settlement class member. EFM has only filed claims for vehicles that it resold or leased to end-payor customers, and thus has only filed claims in its capacity as a lessor and reseller. EFM's failure to intervene is

---

[8] Crowell's self-serving interpretation could potentially allow a second type of double-recovery. The Auto Dealer settlement agreements define "Automobile Dealership" as "any person or entity who has purchased new Vehicles . . . ***for resale or lease***." Case No. 2:13-cv-00702-MOB-MKM, ECF No. 93-3, PgId.2363 (Denso Settlement Agreement). FMCs could recover for claims in the Auto Dealer cases.

18

therefore fatal and the motion should be denied.[9]

### III.   Estoppel Does Not Prevent Settlement Class Counsel From Asserting EFM's Exclusion From the Settlement Classes.

Without using the word "estoppel," Crowell (allegedly on behalf of EFM) suggests that statements made in Settlement Class Counsel's November 2019 email require a tortured interpretation of the settlement class definition that would include ***both*** FMCs ***and their clients***. ECF No. 2192, PgId.39839-40. But this argument misconstrues the content of Settlement Class Counsel's email as well as the requirements of equitable estoppel. *See Paul v. Detroit Edison Co.*, 94 F. Supp. 3d 880, 887 (E.D. Mich. 2015) (noting the elements of estoppel, including reliance).

As stated above, the statement in Settlement Class Counsel's November 2019 email does not say what Crowell and EFM suggest and emphasized the "case-by-case" nature of the analysis. *See supra* Background, § 2. Moreover, the very fact that Crowell asked whether "fleet management companies who purchase (and hold title to) new vehicles are . . . not otherwise excluded from the class by virtue of leasing their vehicles out to customers under long term leases" demonstrates that the Settlement Agreements did not include FMCs.[10]

---

[9] Even if Crowell or EFM moved to intervene at this juncture, such a motion would properly be denied as untimely.

[10] For example, one factor to consider in a case-by-case analysis of FMC transactions would be whether the agreements between the FMC and its customers contemplated at the outset that at the end of the lease term the FMC would resell the vehicle. In that circumstance, the vehicle would have been purchased for purposes of resale.

Regardless of what Settlement Class Counsel said in 2019 to Crowell, no such statement forms the basis of any claim by EFM to participate in the settlements. EFM does not claim that Settlement Class Counsel are estopped from asserting that EFM is not entitled to share in the settlements. Nor could it. Estoppel requires the moving party to **prove** detrimental reliance. *Paul*, 94 F. Supp. 3d 887. EFM submitted no evidence showing it relied upon a statement made by Settlement Class Counsel in November 2019. And the claim of reliance made on its behalf is purely conclusory; no one claims that EFM refrained from filing claims as a result of the purported "guidance." ECF No. 2192-2, PgId.39762 (alleging only reliance "in pursuing its claim to the End Payor settlements"). Furthermore, the customers of EFM also submitted claims; accordingly, neither EFM nor Crowell can say that timely claims were not filed as a result of the November 2019 statement of Settlement Class Counsel. *See, e.g.*, Langham Decl. ¶ 7; Reiss Decl. ¶ 8.

## IV.   The CAC Stipulation Supports Settlement Class Counsel's Position and Is Consistent With the Plan of Allocation.

EFM next asserts the CAC stipulation entered by this Court should be stricken. ECF No. 2192, PgId.39746. EFM takes aim at the stipulation for a simple reason: it supports EPPs' position that there can only be one claimant per vehicle. ECF No. 2182, PgId.39702 ("[T]wo persons or entitles cannot both have a claim to share in the net settlement funds based on the purchase or lease of the same vehicle and the Claims Administrator will only recognize one claim for each unique vehicle

VIN."). This recital agreed to by four of the largest FMCs who filed more claims than EFM supports the position taken by Settlement Class Counsel. *Id.*, PgId.39701.

The motion also seeks to overturn the stipulation because it gives the FMC customer claimant preference where there are competing claims for the same vehicle filed by both a customer and an FMC and because it requires the FMC to "pass on the recoveries they obtain from the net settlement funds to the FMC Claimants' customers." *Id.*, PgId.39703-4. The motion argues that the stipulation "violates the approved Plans of Allocation by compensating non-class members and class members who failed to file valid, timely claims, and raises serious concerns about the scope of the class release." ECF No. 2192, PgId.39746. But this is incorrect. Not only does EFM lack standing to challenge the stipulation, but the stipulation does not violate either *Illinois Brick* or the plan of allocation.

## A. Movant Does Not Have Standing to Challenge the Stipulation.

Since EFM is not a settlement class member, it does not have standing to challenge the stipulation or any other proceedings in connection with the settlements. *Marino v. Ortiz*, 484 U.S. 301 (1988) (holding that white police officers could not appeal a settlement involving a class of minority policy officers who had brought a racial discrimination suit even though the settlement affected them). Similarly, EFM does not have authority to overturn an agreement to which it is not a party. *See Livonia Prop. Hldgs., L.L.C. v. 12840-12976 Farmington Rd. Hldgs., L.L.C.*, 717 F.

Supp. 2d 724, 735 (E.D. Mich. 2010) ("a non-party to a contract does not have the right to challenge the validity of the contract unless it is a third-party beneficiary to that contract"). To the degree EFM contends that it is bound by the stipulation, it is mistaken. ECF No. 2192, PgId.39753. Settlement Class Counsel did offer EFM the same treatment as outlined in the stipulation and EFM declined. Langham Decl. ¶ 11. Settlement Class Counsel does not seek to bind any person or entity to the Stipulation other than the signatories. *Id.* ¶¶ 11 & 13.

> **B.      The CAC Stipulation Does Not Violate *Illinois Brick*.**

Even if EFM or Crowell did have standing to challenge the stipulation, their arguments lack merit. First, the contention that the stipulation violates the law by "diminish[ing] qualifying state claims in violation of *Illinois Brick* by allowing . . . FMCs to pass on settlement funds to their non-qualifying state customers" is wrong. ECF No. 2192, PgId.39747. Tellingly, the motion fails to cite to a single example of such an outcome. To be clear, where such information can be reasonably ascertained, an FMC customer's eligibility to participate in the settlements will be based on the FMC customer and not the FMC's principal place of business or place of purchase/lease. Where such information cannot be reasonably ascertained, nothing precludes the Claims Administrator from relying on additional information, including, but not limited to, the place of purchase or principal place of business of the FMC. *See, e.g.*, *Welsh v. Wachovia Corp.,* 191 F. App'x 345, 348 (6th Cir. 2006)

(noting that the claims administrator on an insurance claim had discretion regarding proof of claims); *see also Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1027 (E.D. Mich. 2020), aff'd sub nom. 992 F.3d 412 (6th Cir. 2021) (claim form could require verification layers). The fact that a small number of hypothetical non-qualifying entities may recover does not render the settlements or the claims process unfair. *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 998 (N.D. Ohio 2016) (rejecting "boilerplate, conclusory assertions" that the "[c]laims administration process fails to require reliable oversight, accountability and reporting about whether the claims process actually delivers what it was promised" and saying that this does not suggest the "administration process carries any meaningful or serious faults").

Second, Crowell's contention that the stipulation is prohibited by *Illinois Brick* misses the mark. As an initial matter, *Illinois Brick* only applies to a litigated class and not to a settlement class. 431 U.S. 720 (1977); *see also* ECF No. 2182 at PageID.39702 (noting "[t]he Stipulating Parties propose to resolve the dispute for purposes of settlement only"). As Crowell correctly points out in its moving brief, the Sixth Circuit recently held that "*Illinois Brick* is a question of antitrust standing . . . It is not a question that bears on the interpretation of the settlement agreements." *In re Automotive Parts Litig.*, 997 F.3d 677, 683 (6th Cir. 2021). Indeed, all of the cases cited in support of the motion bolster this point; each involved litigation rather than settlement classes. *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444,

23

*13 (N.D. Cal. Feb. 8, 2016) (certifying litigation class and requesting report "on how the litigation should proceed"); *see also Stromberg v. Qualcomm, Inc.*, 14 F.4th 1059, 1068 (9th Cir. 2021) (vacating certification of litigation class). It follows, *a fortiori,* that *Illinois Brick* has no relevance on the claims validation process.

Similarly, Crowell's contention that the stipulation obligates FMCs to " 'pass on' 80% of any settlement recovery to their customers, regardless of the customer's nexus to a qualifying state" is also wrong. ECF No. 2192. The stipulation instead permits third-party filer CAC and its FMC clients to seek from FMC customers an aggregate fee reflecting "the amount previously agreed to" by the parties, but in no event "greater than 20%." *Id.* ¶ 6 (emphasis added). But for the imposition of a ceiling on fees collected, this is no different than the myriad agreements that third-party filers such as Crowell have with their clients. The fact that CAC and its FMC clients have agreed to a cap on the aggregate fee that they will seek to collect from FMC customers pursuant to the parties' agreements does not in any way prejudice EFM or any settlement class member. Nor does it undermine the settlements, the plan of allocation, the claims process, or the distribution of the settlement proceeds.

## C.    The CAC Stipulation Does Not Violate the Plan of Allocation.

The motion next complains that the CAC stipulation "violates the approved Plans of Allocation by allowing . . . FMCs to pass on settlement funds to class members who failed to file timely claims, or any claim at all." ECF No. 2192,

PgId.39751. Stated differently, these entities seek to overturn the stipulation based on a contention that the stipulated order will dilute payments to other end payors.

But neither EFM nor Crowell have standing to make this objection since neither are adversely affected by the stipulated order. The stipulation was entered into to resolve a dispute about whether FMCs could assert claims to share in the settlements and to address the concern that FMCs may be deemed to have filed claims on **behalf of their customers** who did not file their own claims. Accordingly, it allows for FMC customers to recover based on the claims submitted by FMCs and requires them to pass on any recoveries to their customers in the event no duplicate customer claim was actually filed by the ultimate end-payor. EFM's complaint about FMC claims being recognized (and with the requirement to pass on their recoveries to their customers) which thereby allegedly enables unqualified customers to share in the settlements also contradicts its position that the FMCs are entitled to be considered as class members.

## <u>CONCLUSION</u>

EPPs respectfully request that this Court deny the request for relief.


Dated: April 25, 2022                    Respectfully submitted,

                                         SUSMAN GODFREY L.L.P.

                                         */s/ Jenna G. Farleigh*

Marc M. Seltzer
Steven G. Sklaver
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
SUSMAN GODFREY LLP
1000 Louisiana Street, 5100
Houston, Texas 77002
Telephone: (713) 651-9366
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
Jenna G. Farleigh
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
fshort@susmangodfrey.com
jfarleigh@susmangodfrey.com

Adam J. Zapala
Elizabeth Castillo
COTCHETT, PITRE &
McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com
ecastillo@cpmlegal.com

William V. Reiss
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, New York 10022
Telephone: (212) 980-7400
wreiss@robinskaplan.com

***Attorneys for End-Payor Plaintiffs-Appellees***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2022, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

Dated:  April 25, 2022                          */s/ Jenna G. Farleigh*
                                               Jenna G. Farleigh

                                               *Attorney for End-Payor Plaintiffs*