**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311<br>Honorable Sean F. Cox |
| THIS DOCUMENT RELATES TO:<br><br>ALL END-PAYOR ACTIONS | : | DECLARATION OF CHANLER LANGHAM IN OPPOSITION TO ENTERPRISE FLEET MANAGEMENT, INC.'S MOTION TO ENFORCE END PAYOR SETTLEMENTS AND STRIKE STIPULATION |

**DECLARATION OF CHANLER LANGHAM IN OPPOSITION TO ENTERPRISE FLEET MANAGEMENT, INC.'S MOTION TO ENFORCE END PAYOR SETTLEMENTS AND STRIKE STIPULATION**

I, Chanler Langham, hereby declare the following in accordance with the provisions of 28 U.S.C. § 1746:

1. I am a partner at the law firm of Susman Godfrey L.L.P., Interim Co-Lead Counsel for the End-Payor Plaintiff Classes. I submit this declaration in support of End-Payor Plaintiffs' Opposition to Enterprise Fleet Management, Inc.'s ("EFM's") Motion to Enforce End Payor Settlements and Strike Stipulation.

2. The following facts are based on my personal knowledge and knowledge acquired in my role as Co-Lead Class Counsel in this litigation. If called upon as a witness, I could and would testify competently to them.

3. I have also reviewed the Declarations of Emma K. Burton and Ryan C. Koenig filed in Support of EFM's Motion to Enforce End Payor Settlements and Strike Contradictory and Improper Stipulation and take issue with their characterization of certain facts.

4. Crowell & Moring LLP ("Crowell") first raised a question about FMCs in an email dated October 17, 2019. In that email, Crowell asked Settlement Class Counsel to confirm, among a host of other things, that "fleet management companies who purchase (and hold title to) new vehicles are . . . not otherwise excluded from the class by virtue of leasing their vehicles out to customers under long term leases." I did not receive any actual lease terms, but responded in part as follows on November 9, 2019:

> As discussed on our call, we will address many of the issues related to fleet management companies ***on a case-by-case basis***. However, ***assuming for purposes of this response*** that the fleet management company at issue purchased new vehicles and retained title to those new vehicles while leasing them to customers under long term leases, those fleet management companies would be included in the class.

5. Nowhere in that email or otherwise did I ever suggest or state that there can be multiple class member claimants for a single vehicle or part. It has always

been Settlement Class Counsel's position that there can only be a single end-payor claimant (and a single recovery) per vehicle or part. I also did not "confirm that fleet management companies such as EFM" "were included in the End Payor settlement class" as Ms. Burton from Crowell now represents. I also did not state that in all cases FMCs that leased their vehicles to customers under long term leases would be included in the settlement class. Instead, I emphasized the "case-by-case" nature of the analysis while acknowledging that there may be some cases in which FMCs could recover as end-payors.

6. Crowell did not seek further follow-up and did not ask for more information.

7. After the claims-filing deadline passed, the Claims Administrator began the process of de-duplicating claims by VIN number. Of the 1,043,056 vehicles claimed by EFM, 503,316 of them—48.25%—were ***also*** claimed by another entity and most—more than 500,000 of them—were claimed by an entity who is ***also*** represented by Crowell. I then alerted Crowell by email about this problem. A true and correct copy of my January 13, 2022 email to Ms. Burton with attachments is attached as **Exhibit A.**

8. I also asked Crowell for EFM's lease agreements, which Crowell initially declined to provide. Crowell has still not provided any of the specific lease

agreements between FMC and its individual clients relating to the claims EFM made.

9. Crowell's Emma Burton has stated that EFM relied on the statement in my November 9, 2019 email "in pursuing its claim to the End Payor Settlements." But this claim of reliance is conclusory since Ms. Burton does not state that EFM refrained from filing claims as a result of my statements. And nobody from EFM can claim detrimental reliance on any statement made by me or other Co-Lead Class Counsel since EFM timely filed and supplemented claims.

10. Following the filing of another third-party claims filer, that claims filer and Settlement Class Counsel negotiated a resolution to that motion through a stipulation entered by the Court. That claims-filer represented four of the largest FMCs, representing a much larger total share of the FMC market than EFM. The procedures in that stipulation established that in those instances where both FMCs and their customers filed otherwise valid and timely claims for the same vehicle, FMC customers and not FMCs would be paid. The stipulation also allows for FMC customers to recover through the FMCs in the event no duplicate customer claim was actually filed by the ultimate end-payor. In such cases, the "FMC Claimants shall be required to pass on the recoveries they obtain from the net settlement funds to the FMC Claimants' customers [minus agreed-on fees]."

11. Following entry of the stipulation, I discussed the issue with Crowell and offered Crowell's clients the same treatment as defined in the stipulation. I emphasized that payment of claims to multiple levels of the chain of distribution was inconsistent with the text and intent of the class definition.

12. My understanding of the FMC business model has evolved since November 2019. My understanding is that FMCs satisfy customer demand for large quantities of new vehicles, often ordering thousands of vehicles at a time through orders placed directly with OEMs. As a result, FMCs are not end-payors. FMCs also often lease vehicles under open TRAC leases, where the lease generally provides that the lessor will sell the vehicle at the end of the lease term and share the profits or losses of the sale with the FMC Customer. This understanding is based in part on a *Fleet Financials* article titled *Open-End vs. Closed-End Leasing* published in January 2016. That article also notes that when FMCs lease vehicles under open TRAC leases, they generally provide that the lessor will sell the vehicle at the end of the lease term and share the profits or losses of the sale with the FMC Customer. A true and correct copy of the *Fleet Financials* article is attached hereto at **Exhibit B.**

13. I further understand that FMC leases mostly take the form of Open-End or Terminal Rental Adjustment Clause ("TRAC") leases. That understanding comes from an article titled *Fleet Leasing & Management in North America* published by

Deloitte in 2018. That article states that "North American customers favor open-end lease over closed-end lease contracts (90 percent/10 percent)." A true and accurate copy of that article is attached hereto as **Exhibit C.**

14. Crowell, on behalf of its clients, did not agree to be bound by the terms of the stipulation, which patently does not bind any party other than the signatories. Settlement Class Counsel does not seek to bind any person or entity to the Stipulation other than the signatories.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 25th day of April 2022, in Houston, Texas.

*<u>/s/ Chanler Langham</u>*
Chanler Langham