# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS           No. 12-md-02311
ANTITRUST LITIGATION           Hon. Sean F. Cox

_____

| | |
|---|---|
| IN RE : WIRE HARNESS | CASE NO. 2:12-CV-00103 |
| IN RE : INSTRUMENT PANEL CLUSTERS | CASE NO. 2:12-CV-00203 |
| IN RE : FUEL SENDERS | CASE NO. 2:12-CV-00303 |
| IN RE : HEATER CONTROL PANELS | CASE NO. 2:12-CV-00403 |
| IN RE : BEARINGS | CASE NO. 2:12-CV-00503 |
| IN RE : OCCUPANT SAFETY SYSTEMS | CASE NO. 2:12-CV-00603 |
| IN RE : ALTERNATORS | CASE NO. 2:13-CV-00703 |
| IN RE : ANTI-VIBRATIONAL RUBBER PARTS | CASE NO. 2:13-CV-00803 |
| IN RE : WINDSHIELD WIPERS | CASE NO. 2:13-CV-00903 |
| IN RE : RADIATORS | CASE NO. 2:13-CV-01003 |
| IN RE : STARTERS | CASE NO. 2:13-CV-01103 |
| IN RE : AUTOMOTIVE LAMPS | CASE NO. 2:13-CV-01203 |
| IN RE : SWITCHES | CASE NO. 2:13-CV-01303 |
| IN RE : IGNITION COILS | CASE NO. 2:13-CV-01403 |
| IN RE : MOTOR GENERATOR | CASE NO. 2:13-CV-01503 |
| IN RE : STEERING ANGLE SENSORS | CASE NO. 2:13-CV-01603 |
| IN RE : HID BALLASTS | CASE NO. 2:13-CV-01703 |
| IN RE : INVERTERS | CASE NO. 2:13-CV-01803 |
| IN RE : ELECTRONIC POWERED STEERING ASSEMBLIES | CASE NO. 2:13-CV-01903 |
| IN RE : AIR FLOW METERS | CASE NO. 2:13-CV-02003 |
| IN RE : FAN MOTORS | CASE NO. 2:13-CV-02103 |
| IN RE : FUEL INJECTION SYSTEMS | CASE NO. 2:13-CV-02203 |
| IN RE : POWER WINDOW MOTORS | CASE NO. 2:13-CV-02303 |
| IN RE : AUTOMATIC TRANSMISSION FLUID WARMERS | CASE NO. 2:13-CV-02403 |

| | | |
|---|---|---|
| IN RE : | VALVE TIMING CONTROL DEVICES | CASE NO. 2:13-CV-02503 |
| IN RE : | ELECTRONIC THROTTLE BODIES | CASE NO. 2:13-CV-02603 |
| IN RE : | AIR CONDITIONING SYSTEM | CASE NO. 2:13-CV-02703 |
| IN RE : | WINDSHIELD WASHER | CASE NO. 2:13-CV-02803 |
| IN RE : | AUTOMOTIVE CONSTANT VELOCITY JOINT BOOT PRODUCTS | CASE NO. 2:14-CV-02903 |
| IN RE : | SPARK PLUGS | CASE NO. 2:15-CV-03003 |
| IN RE : | AUTOMOTIVE HOSES | CASE NO. 2:15-CV-03203 |
| IN RE : | SHOCK ABSORBERS | CASE NO. 2:15-CV-03303 |
| IN RE : | BODY SEALING PRODUCTS | CASE NO. 2:16-CV-03403 |
| IN RE : | INTERIOR TRIM PRODUCTS | CASE NO. 2:16-CV-03503 |
| IN RE : | BRAKE HOSES | CASE NO. 2:16-CV-03603 |
| IN RE : | EXHAUST SYSTEMS | CASE NO. 2:16-CV-03703 |
| IN RE : | CERAMIC SUBSTRATES | CASE NO. 2:16-CV-03803 |
| IN RE : | POWER WINDOW SWITCHES | CASE NO. 2:16-CV-03903 |
| IN RE : | AUTOMOTIVE STEEL TUBE | CASE NO. 2:16-CV-04003 |
| IN RE : | ACCESS MECHANISMS ACTIONS | CASE NO. 2:16-CV-04103 |
| IN RE : | DOOR LATCHES | CASE NO. 2:17-CV-04303 |

_____

THIS DOCUMENT RELATES TO:
End-Payor Actions

_____

## **REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE END-PAYOR SETTLEMENTS AND STRIKE CONTRADICTORY AND IMPROPER STIPULATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

I.     FMCs are without question members of the End-Payor
Settlement Class. ....................................................................................... 2

     A.     Leases are not sales and the settlements very clearly do not
exclude lessors from the End-Payor class ...................................... 3

     B.     Clear, unambiguous terms of the settlements prohibit
EPPs' reliance on extrinsic evidence of intent. ............................. 4

     C.     Contrary to EPPs' suggestion, FMCs are not part of the
Dealer class and not eligible to recover from the Dealer
settlements. ...................................................................................... 5

     D.     FMCs' position in the distribution chain is irrelevant to
their inclusion in the end-payor settlement class, but even
so, FMCs still have standing as end-payors. ................................... 6

II.     The Stipulation clearly applies to all FMCs and negotiates away
the rights of all valid claimants. ................................................................ 7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Autoparts Antitrust Litig.*,
  997 F.3d 677 (6th Cir. 2021) ................................................................... 3, 5, 6

*Kyocera Corp. v. Hemlock Semiconductor, LLC*,
  313 Mich. App. 437 (2015) ............................................................................ 5

*Request Foods, Inc. v. Am. Roland Food Corp.*,
  No. 1-11-CV-128, 2012 WL 13018611 (W.D. Mich. Sept. 12, 2012) ....................... 6

# INTRODUCTION

More than two years ago, End-Payor Plaintiffs' class counsel ("EPPs") confirmed Enterprise Fleet Management's ("EFM") understanding that it was an End-Payor Settlement Class member having "purchased or leased a new Vehicle in the United States not for resale, which included one or more of [the applicable component parts]." Three days after receiving the following explicit response from EPPs, EFM filed a claim to the End-Payor Settlements:

> As discussed on our call, we will address many of the issues related to fleet management companies on a case-by-case basis. **However, assuming for purposes of this response that the fleet management company at issue [1] purchased new vehicles and [2] retained title to those new vehicles *while leasing them to customers under long term leases*, those fleet management companies would be included in the class.** PageID.39770 (emphasis added).[1]

EPPs' 2019 response makes clear that they knew FMCs engaged in long-term leases and that fact did not exclude them from the Class. Now, over two years since EFM filed a timely claim, EPPs seek to mischaracterize EFM as a "reseller" and try to insert terms like "end user" into the class definition—despite the fact that (1) the settlements themselves expressly limit outside evidence, and (2) Michigan law prohibits courts from considering extrinsic evidence where settlement language is clear and unambiguous.

Further, EPPs' efforts to invoke "intent" in an attempt to exclude EFM from

---

[1] As a Settlement Class member, EFM is a party to these proceedings and under no obligation to seek leave to intervene; EPPs' 2019 written confirmation of FMC inclusion in the End-Payor class should, alone, moot any question of intervention here.

the End-Payor class is misplaced. Over the course of four rounds of settlements, the parties' "intent" is memorialized in all but one of the settlement agreements as follows:

> This Agreement shall be construed and interpreted to effectuate the **intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims** with respect to each Releasee as provided in this Agreement.

*See, e.g.,* Meritor Settlement Agreement, 16-cv-03703 PageID.3841 (emphasis added). Defendants clearly intended for a broad release that encompassed all indirect purchasers, and had they wanted to exclude vehicles purchased **for lease**, they could and would have done so. Given the clear and unambiguous terms before this Court, EPPs cannot now change those agreed-upon, Court-approved terms post-factum.

Finally, EPPs also seek to prevent EFM from challenging the FMC Stipulation, suggesting that it somehow does not apply to other FMCs, despite clear and express language that the stipulation will apply to *"**any FMC** or customer of an FMC"* that filed a claim, EFM included. PageID.39702 (emphasis added).

## ARGUMENT

### I.      FMCs are without question members of the End-Payor Settlement Class.

FMCs, including EFM, are unequivocally class members under the End-Payor settlement agreements' plain language, which defines class members as:

> All persons and entities that . . . [1] purchased or leased a new Vehicle in the United States [2] not for resale, which included one or more [of the applicable component parts].

PageID.12034-12036. EFM's claimed vehicle purchases fall within the class definition's

exact language—which EPPs confirmed, writing that FMCs "would be included in the class" where they "[1] purchased new vehicles and [2] retained title to those new vehicles while leasing them to customers under long term leases." PageID.39770.

There is no dispute that EFM purchased its vehicles new and held title to its vehicles for the full duration of leases to its customers. There should be no question that EFM's vehicle purchases were not for purposes of resale. Further, as the settlement terms are clear and unambiguous, both the settlements' language and Michigan law prohibit courts from considering extrinsic evidence of intent. *See In re Autoparts Antitrust Litig.*, 997 F.3d 677, 685 (6th Cir. 2021) ("Rubber Parts").

### A. Leases are not sales and the settlements very clearly do not exclude lessors from the End-Payor class

EFM purchases vehicles for the sole purpose of leasing them to its customers under long-term leases. As the other FMCs detailed at length in their motion, a lease is not a sale as a matter of law. PageID.39510-39516. At no time during the pendency of its leases is EFM engaged in efforts to sell its vehicles. By contrast, when dealers purchase vehicles, those vehicles are immediately put in inventory and held out to the public for resale as quickly as possible.

That EFM sells its vehicles at the expiration of its leases—leases that, on average, last more than 3 years—is ancillary; EFM's vehicle purchases would not happen but for the anticipated lease in the interim. Decl. of Emma K. Burton attached as Exhibit A ("Burton Decl.") ¶ 7. If, as EPPs now contend, EFM's subsequent sale of a vehicle after

3

owning it for several years somehow converts its original purchase into one for the purpose of "resale," individuals who purchase a vehicle and subsequently sell it after a period of years, perhaps to Carvana or via Craigslist, would also be excluded from the class. The fallacy of EPPs' position here is clear, and clearly untenable.

### B.   Clear, unambiguous terms of the settlements prohibit EPPs' reliance on extrinsic evidence of intent.

EPPs understood, as early as their 2019 response, that (1) FMCs purchase vehicles for purposes of leasing them out under long-term leases, and (2) that FMCs would file claims to the End-Payor settlements as class members.  Now, EPPs seek to rewrite history, contending that "entities who purchase vehicles for the purpose of immediately re-leasing them were never intended to be included in the settlement class" despite the clear and unambiguous settlement language to the contrary. PageID.39866.

Not only is the class definition clear, but every End-Payor settlement contains an integration clause, prohibiting outside evidence of intent where terms are clear and providing that the settlement:

> [C]onstitutes the entire, complete and integrated agreement among End-Payor Plaintiffs and [Defendant] . . . and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between End-Payor Plaintiffs and [Defendant]. *E.g.,* 16-cv-03703 PageID.3842.

Even without an integration clause, Michigan law is clear that where the settlement—a contract—contains language that is "clear and unambiguous," courts must look only to the "four corners of the relevant contracts" and "[t]he words used in

the contract are the best evidence [of] the parties' intent." *Rubber Parts*, 997 F.3d at 685;

*Kyocera Corp. v. Hemlock Semiconductor, LLC*, 313 Mich. App. 437, 446 (2015). There is no

language in the settlement agreements, plans of allocation, or class notice excluding

lessors and EPPs cannot now suggest that the Court look beyond the clear settlement

language to exclude valid members of the End-Payor class.

### C.   Contrary to EPPs' suggestion, FMCs are not part of the Dealer class and not eligible to recover from the Dealer settlements.

Unable to exclude FMCs from the End-Payor settlements under the clear

language, EPPs next try to contend that FMCs are instead Dealer class members and

"could recover for claims in the Auto Dealer cases." PageID.39869, 39880. However,

FMCs are very clearly not part of the Dealer class.

The Dealer settlements define Dealers as "an entity or person *authorized* to engage

in the business of selling and/or leasing Vehicles *at retail* in the United States," meaning

"authorized" by the OEM vehicle manufacturers. 13-cv-02702 PageID.4494 (emphasis

added). FMCs such as EFM are not in the business of, nor are they authorized by OEMs

to, sell or lease new vehicles at retail, and they do not have the Dealership State

License/Registration Numbers or OEM Dealer IDs required for valid Dealer claimants.

Burton Decl. ¶ 4. Consequently, the Dealer class claims administrator confirmed that

entities that lease vehicles as part of a fleet management business are not Dealer class

members and not eligible to recover from the Dealer settlements. Ex. 2 to Burton Decl.

EPPs' misleading assertions aside, EFM did not—and could not—recover for its

5

claimed vehicles in the Dealer settlements. EFM, and all FMCs, squarely belong to the

End-Payor class.

> **D.      FMCs' position in the distribution chain is irrelevant to their inclusion in the end-payor settlement class, but even so, FMCs still have standing as end-payors.**

In an effort to defend their Stipulation and its end run around recovery in *Illinois*

*Brick* non-repealer states, EPPs concede the very point they spend the majority of their

Response arguing—that a class member's place in the distribution chain is irrelevant if

they meet the definition of the settlement class itself:

> Whether Plaintiffs can maintain their direct-purchaser lawsuit under the ownership-or-control exception of *Illinois Brick* is a question of antitrust standing. **It is not a question that bears on our interpretation of the settlement agreements.**

*Rubber Parts*, 997 F.3d 677 at 683 (emphasis added). EFM, as an indirect purchaser of

new vehicles not for resale, meets the clear settlement class definition, and the analysis

necessarily stops there.[2]  The analysis also renders moot EPPs' contention that FMCs

must be excluded from the class because of duplicate valid claims to the same vehicle,

yet that result is precisely the predicable consequence of including both purchasers and

lessees in the class definition proposed by the parties and approved by the Court.

---

[2] Even supposing EFM's position in the distribution chain was relevant, which it is not, EFM is still an end payor. EPPs would have the Court redefine "not for resale" as excluding all but the "ultimate end user" and thereby excluding EFM as not an end payor. But the lone case cited by EPPs for this proposition does not stand for it. In referencing the "ultimate end user, or the retail level consumer," the court recognized the "overall goal of the [Magnuson Moss Warranty] Act" and not the definition of "not for resale." *See Request Foods, Inc. v. Am. Roland Food Corp.*, No. 1-11-CV-128, 2012 WL 13018611, at *2 (W.D. Mich. Sept. 12, 2012). In fact, the party in that case conceded that the product would be resold, so the definition of "resale" was not even at issue. *Id.*

## II.    The Stipulation clearly applies to all FMCs and negotiates away the rights of all valid claimants.

The Stipulation could not be clearer in its application to all FMCs. In the Stipulation's first paragraph, the specific term "FMC Claimants" is used to reference the four named FMCs who negotiated the Stipulation. Two paragraphs later, the Stipulation defines "FMCs" as fleet management companies generally. When EPPs state in Stipulation Paragraph J that they "intend to apply the guidelines and procedures set forth below to all claims that have been submitted by or on behalf of *any FMC or customer of an FMC*" (emphasis added), they clearly plan to apply the Stipulation's terms to *all* FMCs, not just the four "FMC Claimants." EFM has every right to challenge, as its recovery in this settlement is directly impacted by the Stipulation.

Moreover, for the reasons articulated in EFM's Memorandum, the Stipulation impacts not just all FMCs but *all* valid claimants—privately negotiating away portions of the settlement fund without providing notice and in violation of the Plans of Allocation. The Stipulation, to use EPPs' own language, raises "fundamental questions about fairness of notice to end-payor purchasers." PageID.39864.

May 9, 2022                               Respectfully submitted,


By: /s/ Lawrence J. Lines III
Lawrence J. Lines III
Crowell & Moring LLP
3454 Shakespeare Dr.
Troy, MI 48084
Telephone: (949) 798-1389
Email: jlines@crowell.com

Deborah E. Arbabi
Daniel A. Sasse
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Telephone: (949) 263-8400
Email: darbabi@crowell.com
        dsasse@crowell.com

Emma K. Burton
Ann L. Rives
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Email: eburton@crowell.com
        arives@crowell.com

*Counsel for Enterprise Fleet Management, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2022, a copy of the foregoing was filed electronically using the Court's ECF system, which will send notification to each attorney of record by electronic means. Parties may access this filing through the Court's system.

Dated:  May 9, 2022                    By: */s/ Lawrence J. Lines III*
_____
Lawrence J. Lines III