```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION



IN RE:  AUTOMOTIVE PARTS
ANTITRUST LITIGATION                        Case No. 19-cv-12262
_____/



          MOTION TO ENFORCE END PAYOR SETTLEMENT
     AND STRIKE CONTRADICTORY AND IMPROPER STIPULATION

                  BEFORE JUDGE SEAN F. COX

         All Parties Appearing Via Zoom Teleconference

                Thursday, September 15th, 2022.


APPEARANCES:

FOR END PAYOR
PLAINTIFFS:               CHANLER ASHTON LANGHAM
                          Susman Godfrey LLP
                          1000 Louisiana
                          Suite 5100
                          Houston, TX  77002


FOR ENTERPRISE FLEET
MANAGEMENT:               EMMA K. BURTON
                          Crowell & Moring LLP
                          1001 Pennsylvania Avenue, NW
                          Washington, DC  20004




David B. Yarbrough, CSR, RMR, FCRR
Official Court Reporter
(313) 234-2619
```

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE

EXHIBITS

NONE

```
 1           Detroit, Michigan.
 2           Thursday, September 15th, 2022
 3           At or about 1:15 p.m.
 4                   --    ---    --
 5       THE CLERK OF THE COURT:  The United States District
 6   Court for the Eastern District of Michigan is now in session,
 7   the Honorable Sean Cox presiding.
 8           The Court calls case number 12-2311, In Re The
 9   Automotive Parts Antitrust Litigation and counsel, I need
10   appearances for the record, please?
11       MS. BURTON:  Good afternoon, your Honor.  This is
12   Emma Burton for Enterprise Fleet Management.
13       MR. LANGHAM:  Good afternoon, your Honor.  This is
14   Chanler Langham for the end payor plaintiffs.
15       THE COURT:  Good afternoon.  So Mr. Langham, do you
16   agree that Enterprise Fleet Management filed a timely claim?
17   I'm not saying it's valid, a timely claim in advance of the
18   June 18, 2020 claim filing deadline?
19       MR. LANGHAM:  Yes, your Honor.
20       THE COURT:  Okay, very good.  How many entities are
21   out there that may be in a similar situation as Enterprise
22   Fleet Management?
23       MR. LANGHAM:  So the stipulation at issue in the
24   motion addresses three of the largest fleet management
25   companies, umm, and Enterprise is also a large fleet management
```

1  company.  There, as far as I understand there have been claims
2  filed by about five fleet management companies.  As far as I
3  understand --
4        THE COURT:  Those claims, these five companies are
5  kind of in a similar situation?
6        MR. LANGHAM:  Very similar situation.  The only fleet
7  management company that I know of that has objected to the
8  stipulation is Enterprise Fleet Management.
9        THE COURT:  Okay.  What I'm trying to determine is
10 this claim of Enterprise Fleet Management isolated or are there
11 potential entities that are the same or similar situation as
12 fleet management, Enterprise Fleet Management?
13       MR. LANGHAM:  So I'll back up a little bit, your
14 Honor.  So there are a few companies that are fleet management
15 companies that are -- that would have been similarly situated
16 as Enterprise Fleet Management.  If you recall, Class Action
17 Capital on behalf fleet management companies called Element,
18 ARI, Donlen, they filed a motion to enforce the settlement
19 agreement so that fleet management companies could participate
20 in the settlement.  We worked out a stipulation with them --
21       THE COURT:  Right, right.
22       MR. LANGHAM:  -- and filed it --
23       THE COURT:  Right.
24       MR. LANGHAM:  -- and there's another fleet management
25 company that has contacted us and they have agreed to the terms

```
 1    of the stipulation as they are.
 2                THE COURT:  Okay.
 3                MR. LANGHAM:  We attempted to do that with Enterprise
 4    Fleet Management which is represented by Crowell and Emma
 5    Burton today.  They objected and then filed the objection
 6    before you.
 7                THE COURT:  So what was my question to you?
 8                MR. LANGHAM:  The answer is yes.
 9                THE COURT:  So they are the only entity out there --
10    so they're more or less isolated.  There aren't other entities,
11    fleet management companies or whatever out there that are in
12    the same situation as Ms. Burton's client that may make a
13    claim?
14                MR. LANGHAM:  I see.  There are no other fleet
15    management companies that object like Crowell's client,
16    Enterprise Fleet Management.
17                THE COURT:  Okay.  So potentially if there's a
18    resolution between the end payors and Enterprise Fleet
19    Management, it would be an isolated resolution and the end
20    payors would not have to worry about claims coming in from
21    entities in a similar situation as Enterprise Fleet Management
22    and saying hey, we're making the same claim as Enterprise Fleet
23    Management and you should settle our case just like you settled
24    Enterprise Fleet Management?  That's not a -- from what you're
25    telling me that's not a, should not be a concern.
```

1     MR. LANGHAM:  As I currently understand it, there is
2  no other company that is taking the same position as Enterprise
3  Fleet Management so we would not have to have several different
4  hearings like this to resolve those issues.
5     THE COURT:  Okay and is that your understanding, Ms.
6  Burton?
7     MS. BURTON:  Thank you, your Honor.  We had made a
8  proposal to end payor plaintiffs to try to resolve this issue.
9  We made that perfectly --
10    THE COURT:  You're not answering my question.
11    MS. BURTON:  Yes, sir.
12    THE COURT:  I'm trying to, you know, stick with my
13 question.
14    MS. BURTON:  If the question is am I aware of other
15 fleet management companies who may be similarly situated as
16 settlement class members who have raised objections to the
17 stipulation privately agreed to by end payor plaintiffs, I'm
18 not aware of any.
19    THE COURT:  So if we entered into a series of
20 negotiations, we wouldn't really have to worry about people
21 coming out of the woodwork making a claim similar to Enterprise
22 Fleet Management saying hey Judge, parties, you settled a claim
23 similar to this one, why won't you settle my claim?  So that's
24 not really a concern?
25    MS. BURTON:  That's right, your Honor.  If we look at

```
 1   the, the largest and even the smaller fleet management
 2   companies in the U.S. market, I think it's safe to say and
 3   certainly the administrator would have visibility into those
 4   who have filed claims, but I think it's safe to say that I am
 5   not aware of any that have raised any objection beyond
 6   Enterprise Fleet Management and I'm not aware of any beyond
 7   those that are parties to the stipulation reached with end
 8   payor plaintiffs who may, as you say, come out of the woodwork.
 9              THE COURT:  Is that a fair analysis, Mr. Langham?
10              MR. LANGHAM:  Yes, your Honor.  We are not aware of
11   any other fleet management company that objects like Enterprise
12   Fleet Management.
13              THE COURT:  So can we go off the record for a minute?
14              MR. LANGHAM:  Yes, your Honor.
15              MS. BURTON:  Yes.
16              (Off the record)
17              (Resumed on the record)
18              THE COURT:  Can you start your argument began,
19   Mr. Langham?  I apologize.  Do you remember my question?
20              MR. LANGHAM:  I do remember your question and I'm
21   also the respondent --
22              THE COURT:  I know.  I know exactly what your role
23   is.  Let me phrase the question again.  The issue is again
24   Enterprise Fleet Management, their claim was timely, it was in
25   advance of the June 8th -- 18th, 2020 claim filing deadline, so
```

```
 1   my question is why isn't Enterprise Fleet Management a member
 2   of the settlement class?  How do they not have standing?  I
 3   apologize, go ahead.
 4              MR. LANGHAM:  Thank you, your Honor.  The end payor
 5   complaint settlement and plan of allocation make it clear that
 6   we only represent end payors and the end payors are those at
 7   the end the distribution chain.  The complaint settlement and
 8   plaintiff allocation also make it clear that end payors are
 9   either purchasers or lessees of new vehicles, that is the end
10   payor class so the end payer class never included entities
11   higher up in the chain of distribution like auto dealers and
12   lessors who purchased and then leased vehicles to our class
13   members.  Auto dealers of course are not end payors and fleet
14   management companies are not end payors either, they are just
15   like auto dealers who leased vehicles to end payors.  That is
16   why auto dealers are separately represented in their own class
17   action and entered into separate settlement agreements.
18              Now the separate classes of indirect purchasers are
19   important to avoid conflicts of interest regarding the passing
20   on of damages.  In an indirect purchaser case like this one
21   with several levels in the distribution chain, end payer
22   plaintiffs must show that damages were passed on to them.  In
23   opposing recoveries by end payors, fleet management companies
24   lessors like Enterprise Fleet Management here and defendants
25   can be expected to claim that the lessors absorbed all the
```

1   damages and did not pass along any overcharges or damages to
2   their customers.  By contrast, end payer lessees who are the
3   customers would argue that all the damages were passed along to
4   them and none were absorbed by any lessors.  This potential
5   interclass conflict is what led us and the auto dealers to
6   maintain separate classes for lessors and end payor lessees.
7   Both cannot be included in the same class because their
8   interest in proving pass-through damages are directly at odds
9   with each other.  For these reasons, the fleet management
10  company that leases vehicles to its customers is
11  indistinguishable from an auto dealer that leases vehicles to
12  consumers.  Neither is an end payor and neither has an
13  incentive to argue damages were passed along to end payors.  To
14  the contrary, their interest is proving that no damages were
15  passed along at all and that is why we are treating Enterprise
16  Fleet Management and other fleet management companies as
17  outside of the class, but still coming up with a stipulation
18  that addresses the claims that they have filed and this is
19  consistent with the end payor plan of allocation which only
20  provides one claim per vehicle for a single end payor claimant.
21          It was never contemplated that two persons could have
22  a claim based on the very same vehicle.  The plan of allocation
23  which this Court has approved four times now has no provision
24  for calculating claims where two persons in the distribution
25  chain submit claims based on the same vehicle.  A multi-level

1   allocation formula has no place in our plan of allocation
2   because only a single end payor is eligible for payment per
3   vehicle.  Without an allocation formula allowing duplicative
4   claims based on the same vehicle would allow for double
5   recovery.  We strongly urge the Court to reject double recovery
6   here which would dilute the claims of true end payors.
7           In the Navistar case cited by Crowell on page 12 of
8   their brief, the settlements and plan of allocation there
9   expressly contemplated that two persons could make a claim
10  based on the same product and provided a formula for dividing
11  recovery among purchasers of the same product.  That's not our
12  case.  The end payor settlements and plan of allocation never
13  contemplated more than one recovery for a single vehicle.
14          THE COURT:  Okay.  Ms. Burton.
15          MS. BURTON:  Yes, your Honor?
16          THE COURT:  Your response?
17          MS. BURTON:  Thank you, your Honor.  I'd like to go
18  back to where end payor plaintiffs Mr. Langham began and the
19  suggestion that we, umm, Enterprise Fleet Management as a fleet
20  management company are members of the dealership class.  I want
21  to start by pointing out that we had affirmatively reached out
22  long ago to the claims administrator on class counsel and
23  dealership and were told that we were not in fact members of
24  the dealership class, that Enterprise including its fleet
25  management business were members of the end payor class.  We

1   thought it prudent at that time particularly because class
2   counsel and the claims administrator in dealership and end
3   payor were different and before any claim deadlines passed and
4   because Enterprise Fleet Management had purchased over a
5   million qualifying vehicles during this time period to confirm
6   that with class counsel to the end payor class.  We did that in
7   2019 and class counsel confirmed that fleet management
8   companies who purchase vehicles and hold title to those
9   vehicles when they are leased out to customers are members of
10  the settlement class and end payor.
11           We don't qualify for claims in dealership.  Fleet
12  management companies who together purchased 10's of millions of
13  vehicles during this time period are not members of the
14  dealership class.  The requirements in dealership require that
15  you have a manufacturer's authorization to sell or lease
16  vehicles at retail.  That is not the business that fleet
17  management companies are engaged in.
18           We don't have any claims -- I want to be very clear
19  that Enterprise Fleet Management does not have any claims in
20  dealership, we have not recovered any funds from the dealership
21  settlement fund for any vehicles including the vehicles that we
22  claimed in end payor and we are not members of the dealership
23  class and that's certainly not a reasonable ground to exclude
24  us from the class that we rightly belong in which is the end
25  payor class.

1          End payor plaintiffs also started with the
2  proposition that the end payor class includes both purchasers
3  and lessees.  We agree.  Enterprise Fleet Management purchases
4  vehicles.  We purchase vehicles in order to lease them to our
5  customers.  We certainly don't resale those vehicles.  The
6  leases that we have for our vehicles which are vest customary
7  for fleet management companies are very clear that Enterprise
8  Fleet Management owns the vehicles, holds title to the
9  vehicles.  Their customers have use and possession only.  These
10 leases are not a sale.  We are not excluded from the end payor
11 class as resellers.  I don't believe that class counsel is
12 taking the position that fleet management companies are
13 resellers and class counsel has also noted that, that fleet
14 management companies --
15         THE COURT:  So the motion is that there would be a
16 double recovery.  What's your response?
17         MS. BURTON:  Yes, your Honor.  The notion that both
18 purchasers and lessees, umm, is squarely within the settlement
19 class could recover on the same vehicle frankly is contemplated
20 by the clear language of the settlement agreements.  The
21 parties were aware certainly back in 2019 that fleet management
22 companies purchase vehicles for purposes of long-term leases.
23 They knew that fleet managements companies intended to pursue
24 claims to the end payor class.  They nonetheless proposed a
25 settlement class definition that includes both purchasers and

1  lessees.  Settlement notices were sent to flee the management
2  companies and their customer lessees and the plans of
3  allocation clearly provide that class members who submit timely
4  and valid claims will share and share alike in a pro rata basis
5  of --
6          THE COURT:  So you're telling me that double recovery
7  was recognized by the end payors?
8          MS. BURTON:  I certainly -- it was certainly
9  foreseeable that a claim could be filed to the same vehicle by
10 both the owner fleet management company and the customer
11 lessee.  To the extent --
12         THE COURT:  I thought you said the end payors were
13 aware.
14         MS. BURTON:  Yes, sir.  We corresponded with end
15 payors in 2019 to confirm fleet management inclusion in the
16 class and our interest in pursuing a claim to the end payor
17 class.  Class counsel responded, confirmed our inclusion in the
18 end payor class and so certainly we're aware of both fleet
19 management's business model of purchasing --
20         THE COURT:  Specifically how were they aware that
21 they may incur double recovery?
22         MS. BURTON:  They were aware that fleet management
23 companies as the purchasers were intent to pursue claims to the
24 end payor class.  In fact, they, they wrote that to the extent
25 that fleet management companies hold title to their vehicles

| | |
|---|---|
| 1 | during the entirety of their long-term leases, understanding |
| 2 | and appreciating that we lease these vehicles to customers, |
| 3 | that we were included in the class.  It's reasonable to the |
| 4 | extent that the class definition also includes lessees, that |
| 5 | customer lessees would pursue claims to the end payor class. |
| 6 | THE COURT:  So my question was, I think it was |
| 7 | specifically how were they aware. |
| 8 | MS. BURTON:  How were they aware that lessees would |
| 9 | pursue claims to the end payor class? |
| 10 | THE COURT:  That they were open to double recovery |
| 11 | and they were -- and they recognized that and agreed to it. |
| 12 | MS. BURTON:  Well, I think it's fair to say that the |
| 13 | definition itself is clear to that, but I also think that if we |
| 14 | take a look at the plans of allocation, double recovery is not |
| 15 | a -- |
| 16 | THE COURT:  Okay, you answered my question.  All |
| 17 | right, Mr. Langham, anything in response? |
| 18 | MR. LANGHAM:  Yes, your Honor, briefly.  Just to |
| 19 | point out that the letter that they say where the claims |
| 20 | administrators for auto dealers said were confirmed that |
| 21 | Enterprise Fleet Management company was not part of the auto |
| 22 | dealer class, if you look at the letter, it's the last exhibit |
| 23 | of their reply, it's 2207-4, that letter does not state |
| 24 | anything about lessors, leases or companies that lease vehicles |
| 25 | to end payors.  It doesn't even reference Enterprise Fleet |

```
 1   Management at all, talks about rental car companies and then in
 2   2019 when we responded to a very general question from Crowell
 3   which is --
 4              THE COURT:  All right, okay --
 5              MR. LANGHAM:  -- whether, about whether fleet
 6   management companies who leased vehicles could submit claims,
 7   we said depending on the facts, they might be able to do so.
 8   We never said that FMCs were automatically entitled to claims,
 9   but rather the claims would need to be considered on a
10   case-by-case basis.  That remains our position today.  At no
11   time did Crowell ask if both the FMC and its customers could
12   submit claims based on a single vehicle.  Had Crowell asked
13   that question, we would have said absolutely not.  We never
14   told Crowell that multiple claims based on single vehicle could
15   be filed nor did the claims administrator or anyone else acting
16   on behalf of end payors.  Doing so --
17              THE COURT:  Okay.
18              MR. LANGHAM:  Yes, your Honor?
19              THE COURT:  I think I have what I need for now, okay?
20              MR. LANGHAM:  Thank you, your Honor.
21              MS. BURTON:  Thank you, your Honor.
22              THE COURT:  Let me review everything and hopefully
23   I'll come up with a decision shortly, okay?
24              MS. BURTON:  Thank you, your Honor.
25              MR. LANGHAM:  Thank you, your Honor.
```

```
 1              THE COURT:  Thank you.
 2              THE CLERK OF THE COURT:  Court's in recess.
 3              (Hearing concluded at 1:47 p.m.)
 4                          --     ---    --
```

C E R T I F I C A T E

I, David B. Yarbrough, Official Court Reporter, do hereby certify that the foregoing pages comprise a true and accurate transcript of the proceedings taken by me in this matter on Thursday, September 15th, 2022.

10/5/2022                    /s/ David B. Yarbrough

Date                         David B. Yarbrough,
                             (CSR, RPR, FCRR, RMR)
                             231 W. Lafayette Blvd.
                             Detroit, MI  48226