# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | No. 12-md-02311<br>Hon. Sean F. Cox |

| | |
|---|---|
| In Re: Wire Harness Systems | Case No. 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | Case No. 2:12-cv-00203 |
| In Re: Fuel Senders | Case No. 2:12-cv-00303 |
| In Re: Heater Control Panels | Case No. 2:12-cv-00403 |
| In Re: Automotive Bearings | Case No. 2:12-cv-00503 |
| In Re: Occupant Safety Systems | Case No. 2:12-cv-00603 |
| In Re: Alternators | Case No. 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | Case No. 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | Case No. 2:13-cv-00903 |
| In Re: Radiators | Case No. 2:13-cv-01003 |
| In Re: Starters | Case No. 2:13-cv-01103 |
| In Re: Automotive Lamps | Case No. 2:13-cv-01203 |
| In Re: Switches | Case No. 2:13-cv-01303 |
| In Re: Ignition Coils | Case No. 2:13-cv-01403 |
| In Re: Motor Generator | Case No. 2:13-cv-01503 |
| In Re: Steering Angle Sensors | Case No. 2:13-cv-01603 |
| In Re: HID Ballasts | Case No. 2:13-cv-01703 |
| In Re: Inverters | Case No. 2:13-cv-01803 |
| In Re: Electric Powered Steering Assemblies | Case No. 2:13-cv-01903 |
| In Re: Air Flow Meters | Case No. 2:13-cv-02003 |
| In Re: Fan Motors | Case No. 2:13-cv-02103 |
| In Re: Fuel Injection Systems | Case No. 2:13-cv-02203 |
| In Re: Power Window Motors | Case No. 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | Case No. 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | Case No. 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | Case No. 2:13-cv-02603 |
| In Re: Air Conditioning Systems | Case No. 2:13-cv-02703 |
| In Re: Windshield Washer Systems | Case No. 2:13-cv-02803 |
| In Re: Automotive Constant Velocity Joint Boot Products | Case No. 2:14-cv-02903 |

| | |
|---|---|
| In Re: Spark Plugs | Case No. 2:15-cv-03003 |
| In Re: Automotive Hoses | Case No. 2:15-cv-03203 |
| In Re: Shock Absorbers | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | Case No. 2:16-cv-03803 |
| In Re: Power Window Switches | Case No. 2:16-cv-03903 |
| In Re: Automotive Steel Tubes | Case No. 2:16-cv-04003 |
| In Re: Access Mechanisms | Case No. 2:16-cv-04103 |
| In Re: Side Door Latches | Case No. 2:16-cv-04303 |
| In Re: Electronic Braking Systems | Case No. 2:21-cv-04403 |
| In Re: Hydraulic Braking Systems | Case No. 2:21-cv-04503 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

## END-PAYOR PLAINTIFFS' MOTION FOR *PRO RATA* DISTRIBUTIONS TO AUTHORIZED CLAIMANTS[1]

End-Payor Plaintiffs ("EPPs"), by their Settlement Class Counsel, respectfully move the Court for an order authorizing *pro rata* distributions of payments from the Net Settlement Funds[2] (excluding the reserved amount described

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning set forth in EPPs' Motion for Distribution of $100 Minimum Payment to Authorized Claimants (*see*, e.*g.,* No 2:12-cv-00103 (Aug. 29, 2024), ECF No. 656-1) and the Settlement Agreements that are the subject of the Rounds 1 through 5 Settlements.

[2] The Net Settlement Funds consist of the Rounds 1-5 Settlement Amounts, plus interest earned thereon through November 30, 2024, less attorneys' fees, litigation costs and expenses, class notice, and settlement administration expenses approved

below) to Authorized Claimants pursuant to the Court-approved Round 4 Plan of Allocation[3] and Round 5 Plan of Allocation.[4]

On October 21, 2024, the Court approved EPPs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants.[5] Settlement Class Counsel now seek approval to distribute payments from the Net Settlement Funds to Authorized Claimants on a *pro rata* basis based on their respective allowed claimed losses. In

---

by the Court and paid to date, class representative service payments, and the $100 minimum payments, plus a reserve established in connection with these payments totaling $450,000. The Net Settlement Funds continue to accrue interest and may be subject to reductions in connection with future expenses, including but not limited to Settlement Class Counsel's forthcoming application for attorneys' fees and reimbursement of expenses.

[3] *See*, *e.g.*, Order Granting EPPs' Unopposed Motion for an Order Approving the Proposed Further Revised Plan of Allocation and for Authorization to Disseminate Supplemental Notice to the Settlement Classes, Master File No. 2:12-md-02311 (Dec. 20, 2019), ECF No. 2032 (order granting EPPs' proposed Plan of Allocation in connection with the Rounds 1 through 4 Settlements); Proposed Further Revised Plan of Allocation and for Authorization to Disseminate Supplemental Notice to the Settlement Classes, Case No. 2:12-cv-00403 (Dec. 10, 2019), ECF No. 301-2 (EPPs' proposed Plan of Allocation in connection with the Rounds 1 through 4 Settlements).

[4] *See*, *e.g.*, Order Granting EPPs' Motion for an Order Approving the Proposed Plan of Allocation in Connection with the Round 5 Settlements, Master File No. 2:21-cv04403 (Feb. 6, 2023), ECF No. 14 (Order Granting EPPs' Proposed Plan of Allocation in Connection with the Round 5 Settlements); Proposed Plan of Allocation and Distribution of the Automotive Parts Settlement Funds, Case No. 2:21-cv-04403 (Nov. 18, 2022), ECF No. 8-1 (EPPs' proposed Plan of Allocation in connection with the Round 5 Settlements).

[5] *See* Order Overruling FRS's Objections and Approving End-Payor Plaintiffs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants, Case No 2:12-cv-00103 (Oct. 21, 2024), ECF No. 663.

support of this motion, EPPs submit the accompanying Memorandum of Law, the Declaration of Michelle M. La Count, Esq. Regarding End-Payor Plaintiffs' Motion for *Pro Rata* Distribution to Authorized Claimants, and a proposed order.

EPPs have not sought consent from Settling Defendants pursuant to Local Rule 7.1 because Settling Defendants have long since been dismissed from this Litigation and Settling Defendants have no interest in the distribution of the Net Settlement Funds.

Dated: December 27, 2024

By: /s/ *Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

By: /s/ *William V. Reiss*
William V. Reiss
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
wreiss@robinskaplan.com

By: /s/ *Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**

1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 651-6666
clangham@susmangodfrey.com

Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206 505-3826
jfarleigh@susmangodfrey.com

*Settlement Class Counsel for the End-Payor
Plaintiff Settlement Classes*


By: /s/ *E. Powell Miller*
E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Liaison Counsel for the End-Payor Plaintiff
Settlement Classes*

4

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | No. 12-md-02311<br>Hon. Sean F. Cox |
| In Re: Wire Harness Systems | Case No. 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | Case No. 2:12-cv-00203 |
| In Re: Fuel Senders | Case No. 2:12-cv-00303 |
| In Re: Heater Control Panels | Case No. 2:12-cv-00403 |
| In Re: Automotive Bearings | Case No. 2:12-cv-00503 |
| In Re: Occupant Safety Systems | Case No. 2:12-cv-00603 |
| In Re: Alternators | Case No. 2:13-cv-00703 |
| In Re: Anti-Vibrational Rubber Parts | Case No. 2:13-cv-00803 |
| In Re: Windshield Wiper Systems | Case No. 2:13-cv-00903 |
| In Re: Radiators | Case No. 2:13-cv-01003 |
| In Re: Starters | Case No. 2:13-cv-01103 |
| In Re: Automotive Lamps | Case No. 2:13-cv-01203 |
| In Re: Switches | Case No. 2:13-cv-01303 |
| In Re: Ignition Coils | Case No. 2:13-cv-01403 |
| In Re: Motor Generator | Case No. 2:13-cv-01503 |
| In Re: Steering Angle Sensors | Case No. 2:13-cv-01603 |
| In Re: HID Ballasts | Case No. 2:13-cv-01703 |
| In Re: Inverters | Case No. 2:13-cv-01803 |
| In Re: Electric Powered Steering Assemblies | Case No. 2:13-cv-01903 |
| In Re: Air Flow Meters | Case No. 2:13-cv-02003 |
| In Re: Fan Motors | Case No. 2:13-cv-02103 |
| In Re: Fuel Injection Systems | Case No. 2:13-cv-02203 |
| In Re: Power Window Motors | Case No. 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | Case No. 2:13-cv-02403 |
| In Re: Valve Timing Control Devices | Case No. 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | Case No. 2:13-cv-02603 |
| In Re: Air Conditioning Systems | Case No. 2:13-cv-02703 |
| In Re: Windshield Washer Systems | Case No. 2:13-cv-02803 |
| In Re: Automotive Constant Velocity Joint Boot Products | Case No. 2:14-cv-02903 |

| | |
|---|---|
| In Re: Spark Plugs | Case No. 2:15-cv-03003 |
| In Re: Automotive Hoses | Case No. 2:15-cv-03203 |
| In Re: Shock Absorbers | Case No. 2:15-cv-03303 |
| In Re: Body Sealing Products | Case No. 2:16-cv-03403 |
| In Re: Interior Trim Products | Case No. 2:16-cv-03503 |
| In Re: Automotive Brake Hoses | Case No. 2:16-cv-03603 |
| In Re: Exhaust Systems | Case No. 2:16-cv-03703 |
| In Re: Ceramic Substrates | Case No. 2:16-cv-03803 |
| In Re: Power Window Switches | Case No. 2:16-cv-03903 |
| In Re: Automotive Steel Tubes | Case No. 2:16-cv-04003 |
| In Re: Access Mechanisms | Case No. 2:16-cv-04103 |
| In Re: Side Door Latches | Case No. 2:16-cv-04303 |
| In Re: Electronic Braking Systems | Case No. 2:21-cv-04403 |
| In Re: Hydraulic Braking Systems | Case No. 2:21-cv-04503 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS'
MOTION FOR *PRO RATA* DISTRIBUTIONS TO AUTHORIZED
CLAIMANTS**

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF THE ISSUE PRESENTED ........................................................ ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES FOR
THE RELIEF SOUGHT ........................................................................ iii

I.    INTRODUCTION ..................................................................1

II.   BACKGROUND ....................................................................4

    A.    Implementation of the $100 Minimum Distribution .................4

    B.    Epiq's Settlement Administration Work to Date ......................4

    C.    Proposed *Pro Rata* Distribution of Award
       Payments from the Net Settlement Funds Subject
       to the Reserve Fund ..................................................9

III.  ARGUMENT ........................................................................12

    A.    The Court Should Approve the Settlement
       Administrator's Claim Determinations .....................................12

    B.    The Court Should Authorize the Creation of a
       Reserve Fund Amounting to 15% of the Net
       Settlement Funds ........................................................14

    C.    The Court Should Approve the Proposed *Pro Rata*
       Distribution of the Net Settlement Fund Subject to
       the Reserve Fund ........................................................14

    D.    At Settlement Class Counsel's Direction, the Court
       Should Permit the Settlement Administrator to
       Make Additional Payments to Authorized
       Claimants if the Circumstances Warrant and
       Authorize an Additional *Pro Rata* Distribution if
       Economically Feasible ..................................................16

IV.   CONCLUSION ....................................................................17

i

**STATEMENT OF THE ISSUE PRESENTED**

Whether the Court should authorize *pro rata* distributions of payments from the Net Settlement Funds (excluding the reserved amount) to Authorized Claimants pursuant to the Round 4 and Round 5 Plans of Allocation.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES FOR THE RELIEF SOUGHT

Proposed Further Revised Plan of Allocation and for Authorization to Disseminate Supplemental Notice to the Settlement Classes, Case No. 2:12-cv-00403 (Dec. 10, 2019), ECF No. 301-2 (EPPs' proposed Plan of Allocation in connection with the Rounds 1 through 4 Settlements).

Order Granting EPPs' Unopposed Motion for an Order Approving the Proposed Further Revised Plan of Allocation and for Authorization to Disseminate Supplemental Notice to the Settlement Classes, Master File No. 2:12-md-02311 (Dec. 20, 2019), ECF No. 2032 (order granting EPPs' proposed Plan of Allocation in connection with the Rounds 1 through 4 Settlements).

Proposed Plan of Allocation and Distribution of the Automotive Parts Settlement Funds, Case No. 2:21-cv-04403 (Nov. 18, 2022), ECF No. 8-1 (EPPs' proposed Plan of Allocation in connection with the Round 5 Settlements).

Order Granting EPPs' Motion for an Order Approving the Proposed Plan of Allocation in Connection with the Round 5 Settlements, Master File No. 2:21-cv04403 (Feb. 6, 2023), ECF No. 14 (order granting EPPs' proposed Plan of Allocation in connection with the Round 5 Settlements).

Order Overruling FRS's Objections and Approving End-Payor Plaintiffs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants, Case No. 2:12-cv-00103 (Oct. 21, 2024), ECF No. 663 (authorizing the Settlement Administrator to distribute $100 minimum payments to Authorized Claimants from the Net Settlement Funds from the Rounds 1 through 5 Settlements pursuant to the Round 4 and Round 5 Plans of Allocation).

## I.    INTRODUCTION

The settlement administration process in this complex multidistrict litigation has been extraordinarily complicated and time-consuming. Tens of thousands of claims have been submitted covering millions of vehicles. Settlement Class Counsel[1] and the Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Settlement Administrator"), expended thousands of hours reviewing and processing claims and engaging in follow-up efforts regarding the documentation submitted in support of the claims. Declaration of Michelle M. La Count, Esq. Regarding End-Payor Plaintiffs' Motion for *Pro Rata* Distributions to Authorized Claimants ("La Count Decl.") ¶ 13. In addition, Epiq expended many hours in consultation with Settlement Class Counsel deduplicating over 3.4 million claimed vehicles, which resulted in the elimination of millions of non-qualifying claimed vehicles. ¶¶ 11, 18, 22.

On October 21, 2024, the Court granted EPPs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants.[2] Minimum Distribution Order

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning set forth in in EPPs' Motion for Distribution of $100 Minimum Payment to Authorized Claimants (*see*, e.*g.,* No 2:12-cv-00103 (Aug. 29, 2024), ECF No. 656-1) and the Settlement Agreements that are the subject of the Rounds 1 through 5 Settlements.

[2] Order Overruling FRS's Objections and Approving End-Payor Plaintiffs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants, Case No. 2:12-cv-00103 (Oct. 21, 2024), ECF No. 663 ("Minimum Distribution Order").

¶ 4. On December 24, 2024, Epiq commenced distribution of the $100 minimum payments to Authorized Claimants. La Count Decl. ¶ 7.

Epiq reviewed each claimed vehicle and replacement part for eligibility for each of the 43 separate, but related EPP class action cases. La Count Decl. ¶¶ 9, 43, 56. Consistent with the Round 4 and Round 5 Plans of Allocation, Epiq performed calculations for the proposed *pro rata* distribution of payments from the Rounds 1-4 Net Settlement Funds to Authorized Claimants. *Id.* ¶ 51(h).[3]

Subject to approval by the Court, Epiq is now prepared to distribute *pro rata* payments from the Rounds 1-4 Net Settlement Funds to Authorized Claimants. Accordingly, EPPs respectfully move the Court for an order: (1) approving the Settlement Administrator's claim determinations made pursuant to the Round 4 and Round 5 Plans of Allocation as well as the methodology described herein and more fully described in the La Count Decl. at ¶ 51(a-h); (2) establishing a reserve of 15% of the Net Settlement Funds to be used for administrative costs, resolving any matters that might arise in connection with distribution of the proceeds of the

---

[3] After distribution of the minimum $100 payments in connection with the Round 5 Settlements, $741,862.64 will remain in the Round 5 Net Settlement Funds. La Count Decl. ¶ 6. Upon the Court's Order granting this Motion, Epiq will make any Round 5 *pro rata* distributions following consultation and approval by Settlement Class Counsel utilizing the same validation approach applied in the Rounds 1 through 4 Settlements.

remaining Net Settlement Funds,[4] and Settlement Class Counsel's application for attorneys' fees and reimbursement of costs and expenses ("the "Reserve Fund"); (3) authorizing the *pro rata* distributions of payments from the Net Settlement Funds to Authorized Claimants subject to the Reserve Fund; (4) authorizing the Settlement Administrator, at the direction of Settlement Class Counsel, to make additional payments to Authorized Claimants from the Reserve Fund in connection with the *pro rata* distributions if circumstances warrant; and (5) authorizing the Settlement Administrator, at the direction of Settlement Class Counsel, to make a second *pro rata* distribution from any residual amount of the Net Settlement Funds within 15 months of Epiq issuing checks in connection with the first *pro rata* distribution, if economically feasible.

The Net Settlement Funds total approximately $972 million. La Count Decl. ¶ 47. If the Court approves EPPs' requested Reserve Fund of 15% of the Net Settlement Funds, approximately $827 million will remain available to be distributed on a *pro rata* basis to Authorized Claimants at this time. *Id.* ¶ 49.

---

[4] The Net Settlement Funds consist of the Rounds 1-5 Settlement Amounts, plus interest earned thereon through November 30, 2024, less attorneys' fees, litigation costs and expenses, class notice and settlement administration expenses approved by the Court and paid to date, class representative service payments, and the $100 minimum payments plus a reserve in connection with these payments totaling $450,000.

## II.    BACKGROUND

### A.    Implementation of the $100 Minimum Distribution

On October 21, 2024, the Court entered an Order approving EPPs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants. *See*, *generally*, Minimum Distribution Order. Pursuant to the Court's $100 Minimum Distribution Order, the Settlement Administrator began distributing the $100 minimum payments to Authorized Claimants on December 24, 2024. La Count Decl. ¶ 7. The $100 minimum payment distribution included digital, wire, and physical check payments to Authorized Claimants. *Id.*

### B.    Epiq's Settlement Administration Work to Date

Since the Court's entry of the Minimum Distribution Order, the Settlement Administrator has completed initial processing for all claims in connection with the Rounds 1 through 5 Settlements and reviewed claimants' eligibility to recover for all qualifying vehicles and purchases claimed in connection with the Rounds 1-4 Settlements. La Count Decl. ¶¶ 9, 56. Epiq categorized claims into Small Claim Submissions and Large Claim Submissions based on the number of vehicles claimed (La Count Decl. ¶ 10) and undertook a careful and rigorous verification processes based on the claims that were submitted. *Id.* ¶¶ 11-28.

To ensure eligibility of a claim, claimants were required to submit certain information about claimed vehicles. For those claimants submitting Large Claim Submissions, the requisite information included a list of Vehicle Identification

Numbers ("VINs") for each vehicle claimed. *Id*. ¶¶ 14, 19. Based on this information, Epiq determined that claims covering 32,483,686 vehicles were valid. *Id*. ¶ 29. As set forth in greater detail in the La Count Decl., Epiq, along with Settlement Class Counsel, expended thousands of hours administering the claims that were submitted. *Id*. ¶¶ 13, 56.

For Large Claim Submissions, Epiq required that in addition to submitting a VIN for each vehicle claimed, each claimant was required to submit evidence of a representative sample of vehicles chosen by Epiq confirming the vehicles' make, model, year, ownership/leaseholder status, date of purchase/lease, and location of purchase/lease in a qualifying damages state for a particular number of the claimed vehicles ("Sample Vehicle Documentation").[5] *Id*. ¶ 19.

In consultation with Settlement Class Counsel, Epiq determined that a requirement that claimants provide documentation for all vehicles submitted as part of a Large Claim Submission might prove unduly burdensome for some claimants given the number of vehicles covered by each claim and the length of the Settlement Class Periods. *Id*. ¶ 23. Imposing such a requirement would also have been to the

---

[5] The Settlement Administrator specified that the requisite proof included purchase orders, lease contracts, title documents and/or purchase or lease documents that provided sufficient information enabling the Settlement Administrator to identify the purchaser's or lessee's name and address, VIN, the date and place of purchase or lease, and either the purchaser/lessee's place of residence, or for businesses, their principal place of business. La Count Decl. at ¶ 13 n. 8.

detriment of Settlement Class Members because it would have resulted in significant delay and increased costs. *Id.* Accordingly, Epiq requested Sample Vehicle Documentation from claimants with Large Claim Submissions for a subset of their claimed vehicles. *Id.* ¶ 24. As reflected in the La Count Decl., Epiq devised a matrix which established the number of vehicles for which a claimant was required to provide Sample Vehicle Documentation based on the number of vehicles claimed. *Id.* The more vehicles claimed, the greater number of vehicle claims a claimant was required to substantiate with Sample Vehicle Documentation. *Id.*

If a claimant was unable to provide Sample Vehicle Documents for vehicles model years 2011 and older, Epiq allowed the claimant to alternatively submit: (i) Sample Vehicle Documentation for three vehicles per claimed manufacturing  year in 2011 or before; or (ii) a data export from the claimant's digital records detailing all claimed purchases/leases from 2011 and before, accompanied by a signed affidavit verifying the claim. *Id.* ¶ 25.

Epiq sent out two rounds of deficiency notices to those claimants who failed to adequately support their claimed vehicles with Sample Vehicle Documentation. *Id.* ¶ 36. The Settlement Administrator devoted substantial time and effort reviewing and reconciling claimants' documentation and conferring with claimants concerning their submissions of supporting evidence. *Id.* As part of this process, Epiq conducted an analysis of documents submitted by claimants to support claims for 22,946

vehicles. Based on its analysis of these documents, Epiq was able to validate claims for 25.69% of these vehicles. *Id.*

Employing the 25.69% validation rate, Settlement Class Counsel directed the Settlement Administrator to adjust the validation rate of Large Claim Submissions based on the total number of vehicles a claimant supported with Sample Vehicle Documentation divided by the total number of vehicles for which Epiq requested Sample Vehicle Documentation ("Adjusted Validation Rate"). *Id.* ¶ 37.

Pursuant to the Adjusted Validation Rate, a claimant's calculated allowed points were adjusted (as necessary) by multiplying the total claimed vehicle points by an established adjustment percentage based on the proportion of sample vehicle claims that Epiq verified relative to the total number of vehicles for which Epiq requested Sample Vehicle Documentation. *Id.* ¶ 38. A chart reflecting the Adjusted Validation rates based on the percentage of sample vehicle claims that were validated is set forth in paragraph 38 of the La Count Decl.

For example, a claimant submitting a claim covering 100 vehicles with a total point value of 100 points (one point for each claimed vehicle) would have been requested by Epiq to submit Sample Vehicle Documentation for 20 vehicles. *Id.* ¶ 24. If the hypothetical claimant provided Sample Vehicle Documentation verifying its claims for five of the 20 vehicles for which Epiq requested Sample Vehicle

Documentation (25%), then the hypothetical claimant would have been awarded 50 total points (50% of its total eligible allowed loss points). *Id*. ¶ 38.

In consultation with Settlement Class Counsel, Epiq required that all claims for a replacement automotive part be accompanied by documentation.[6] *Id*. ¶ 43. Epiq imposed this requirement because many replacement automotive parts are manufactured and sold by third parties ("Aftermarket Parts") rather than by Defendants ("OEM Parts") and, absent documentation, it was in most instances impossible to determine the manufacturer of the replacement automotive part. *Id*. Epiq determined that all replacement automotive part claims unsupported by valid documentation of an OEM Part purchase would be ineligible for recovery in connection with the Rounds 1 through 5 Settlements. *Id.*

The La Count Decl. sets forth in detail how Epiq assessed the eligibility for *pro rata* distribution of claimed vehicles and automotive replacement parts. It also discusses how Epiq assessed eligibility for replacement automotive part claims. *Id*. ¶¶ 42-46.

No further review or validation is required for the Settlement Administrator to be able to effectuate a *pro rata* distribution of the Settlement Funds established by the Rounds 1-4 Settlements. *Id*. ¶ 56.

---

[6] This required, for example, that if a claimant submitted a claim for 100 replacement parts, Epiq required documentation for each of the 100 claimed replacement parts.

### C. Proposed *Pro Rata* Distribution of Award Payments from the Net Settlement Funds Subject to the Reserve Fund

Consistent with the Round 4 and Round 5 Plans of Allocation, Epiq allocated the Net Settlement Funds from the Rounds 1-5 Settlements into 43 Automotive Part Funds based on the applicable Automotive Part case (the "Settlement Part Fund") (*e.g.*, Instrument Panel Clusters Settlement Part Fund). *Id.* ¶ 50. Epiq then assigned each Authorized Claimant points based on all eligible vehicles purchased or leased or replacement parts purchased. *Id.* ¶ 32. Those vehicles that were specifically identified on the Settlement Website as "targeted" vehicles, meaning the vehicle was specifically targeted by the alleged conspiracies, were credited four points. *Id.* ¶ 30. All other eligible vehicles and all eligible replacement parts were credited one point. *Id.*[7]

Epiq calculated a *pro rata* percentage for each Authorized Claimant in a particular Settlement Part Fund by dividing the claimant's eligible points in a given Settlement Part Fund by the total points eligible for payment within each specific Settlement Part Fund. *Id.* ¶ 51(b). Epiq multiplied each claimant's *pro rata*

---

[7] *See*, *e.g.*, Order Granting EPPs' Unopposed Motion for an Order Approving the Proposed Further Revised Plan of Allocation and for Authorization to Disseminate Supplemental Notice to the Settlement Classes ¶¶ 6-8, Master File No. 2:12-md-02311 (Dec. 20, 2019), ECF No. 2032 (order approving further revised plan of allocation in connection with Round 4 Settlements); Proposed Further Revised Plan of Allocation and for Authorization to Disseminate Supplemental Notice to the Settlement Classes, Case No. 2:12-cv-00403 (Dec. 10, 2019), ECF No. 301-2 (EPPs' proposed Plan of Allocation in connection with the Rounds 1 through 4 Settlements).

percentage within each Settlement Part Fund by the available funding for the Settlement Part Fund after excluding the portion of the Reserve Fund applicable to each Settlement Part Fund, but before deducting funds attributable to the $100 minimum payments. *Id.* ¶ 51(c). Epiq then summed the claimant's *pro rata* payments across all the eligible Settlement Part Funds to establish an aggregated original *pro rata* distribution payment for each Authorized Claimant. *Id.* ¶ 51(d).

Epiq excluded from the *pro rata* distribution for each Settlement Part Fund those Authorized Claimants whose aggregate original *pro rata* distribution payment was less than or equal to $100. *Id.* ¶ 51(e). The Settlement Administrator included the remaining Authorized Claimants whose original *pro rata* calculation reached a combined value of more than $100 across one or more Settlement Part Funds in an adjusted *pro rata* calculation. *Id.* ¶ 51(f).

Epiq reapplied the *pro rata* calculation methodology outlined above after adjusting the balances of each Settlement Part Fund for the portion of the $100 minimum payment attributable to each Settlement Part Fund and the Reserve Fund. *Id.* Specifically, the Settlement Administrator (1) divided each claimant's points within a given Settlement Part Fund by the total combined point value of each Settlement Part Fund; (2) multiplied the resulting individualized *pro rata* percentage by the Settlement Part Fund's distributable funds; and (3) determined the individual

adjusted *pro rata* distribution payment for each Authorized Claimant in each Settlement Part Fund based on these calculations. *Id.*

Finally, Epiq combined the resulting individual adjusted *pro rata* distribution payments in each Settlement Part Fund to establish the total adjusted *pro rata* distribution payment for each Authorized Claimant. *Id.* ¶ 51(g).

For example, hypothetical Settlement Part Fund A has $10 million in settlement funds following the minimum $100 distribution payments and exclusion of the reserve fund. Hypothetical Settlement Part Fund A has 1 million eligible claimed vehicles, and 2,500,000 total eligible points (500,000 targeted vehicles, 500,000 vehicles not identified as targeted). Hypothetical Claimant Z submitted a claim that included 100 eligible vehicles within hypothetical Settlement Part Fund A. The hypothetical claim included 50 eligible targeted vehicles and 50 eligible vehicles that were not identified as targeted, providing a total of 250 eligible points (200 points targeted, 50 points not identified as targeted). *Id*. ¶ 52. Epiq requested five Sample Vehicle Documents from hypothetical Claimant Z. Hypothetical Claimant Z provided one valid Sample Vehicle Document that supported new vehicle purchases/leases (i.e., 20% of the requested Sample Vehicle Documents). *Id*. Epiq then applied an adjusted validation rate of 50% to Claimant Z's total vehicle points because Claimant Z's sample validation rate fell between >5%-25%. *Id*. Claimant Z's eligible base points resulted in an adjusted point value of 125 points.

*Id*. This means that Claimant Z would be entitled to receive a distribution payment of $500 (125/2,500,000 * $10,000,000) from Part Fund A in the pro rata distribution. *Id*. Epiq follows this same process for each eligible vehicle claimed in each applicable Part Fund and sums those amounts to create the aggregate distribution payment to Claimant Z. *Id*.

Based on the foregoing *pro rata* calculation methodology, the Settlement Administrator determined that 39,316 Authorized Claimants are eligible for a *pro rata* distribution payment from the Rounds 1 through 4 Settlements, for a combined total of $826,320,591.11. La Count Decl. ¶ 51(h).

## III. ARGUMENT

EPPs respectfully submit that the Court should approve the Motion and permit EPPs to distribute payments from the Net Settlement Funds to Authorized Claimants subject to the Reserve Fund, consistent with the approved Round 4 and Round 5 Plans of Allocation. EPPs thereby are seeking the Court's approval to promptly distribute the lion's share of the proceeds from these historic settlements to the Settlement Class Members.

### A. The Court Should Approve the Settlement Administrator's Claim Determinations

The Court should adopt the Settlement Administrator's recommendations regarding the acceptance or rejection of claims. As set forth above, Epiq conducted a thorough review of claims involving millions of vehicles and replacement parts.

La Count Decl. ¶¶ 3-46. Where it found claims that were incomplete or deficient, it provided claimants a full and fair opportunity to correct or supplement the submissions. *Id.* ¶¶ 15, 20, 23, 44. Epiq also conducted a quality control audit to confirm its administration and calculation of each of the claims. Declaration of Peter Sperry Regarding End-Payor Plaintiffs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants, Case No. 2:12-cv-00103 (Aug. 29, 2024), ECF No. 656-1 ¶¶ 24-28.

The use of sampling to verify documentation for Large Claim Submissions was appropriate and necessary. It is well-recognized that "[t]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 William B. Rubenstein, Newberg on Class Actions, § 12:15 (5th ed.) (Westlaw 2018).

As a result of this necessarily complex process, Epiq determined that there are 39,316 Authorized Claimants from the Rounds 1-4 Settlements that merit *pro rata* distribution payments. La Count Decl. ¶ 51(h). Epiq conducted its claim review process in a fair and reasonable matter, consistent with the Rounds 4 and 5 Plans of Allocation, and its methodology and claim determinations should be afforded deference.

**B.     The Court Should Authorize the Creation of a Reserve Fund Amounting to 15% of the Net Settlement Funds**

EPPs request that the Court authorize Epiq to create a reserve of 15% of the Net Settlement Funds. The requested reserve is necessary to account for (1) the payment of current and future administrative costs, including but not limited to, tax and claims administration costs; (2) any issues that may arise in connection with the distribution of the proceeds of the Net Settlement Funds; and (3) Settlement Class Counsel's anticipated application for additional attorneys' fees and reimbursement of costs and expenses.[8]

**C.     The Court Should Approve the Proposed *Pro Rata* Distribution of the Net Settlement Fund Subject to the Reserve Fund**

The proposed *pro rata* distribution (as described herein and more fully in the La Count Decl.) is entirely consistent with the Court-approved Round 4 and Round

---

[8] Reserving a portion of the Settlement Funds pending approval of Settlement Class Counsel's motion for attorneys' fees and reimbursement of expenses is consistent with the Court-approved notice sent out in connection with the Round 5 Settlements, which provides: "At a later date, Settlement Class Counsel will ask the Court for an award of attorneys' fees and reimbursement of costs and expenses for all of their services to be paid from the total Settlement Amounts established by the Rounds 1 through 5 Settlements, including any interest earned. The total amount of fees requested, combined with all fees previously awarded by the Court, will not exceed 30 percent of the total Settlement Amounts of all of the Rounds 1 through 5 Settlements, including any interest earned." Order Granting EPPs' Motion for an Order Approving the Proposed Plan of Allocation in Connection with the Round 5 Settlements, Master File No. 2:21-cv04403 (Feb. 6, 2023), ECF No. 14 at ¶ 22.

5 Plans of Allocation. For instance, both the Round 4 and Round 5 Plans of Allocation and the proposed *pro rata* distribution provide that:

- Authorized Claimants who were not fully compensated in the $100 Minimum Distribution round will share and share alike on a *pro rata* basis in the Net Settlement Funds established for each Settlement Class of which they are members based on their Allowed Claim Amounts, subject to the Minimum Payment Amount. *Compare* Round 4 Plan of Allocation at 7; Round 5 Plan of Allocation at 5 *with* La Count Decl. ¶ 51.

- Each Authorized Claimant shall be paid the percentage of the Net Settlement Fund established with respect to a particular Settlement Class that each Authorized Claimant's Allowed Claim Amount bears to the total of the Allowed Claim Amounts of all Authorized Claimants with respect to the same Settlement Class unless the Authorized Claimant's share was less than the $100 Minimum, then no further payment will be made by the Settlement Administrator. *Compare* Round 4 Plan of Allocation at 8; Round 5 Plan of Allocation at 5 *with* La Count Decl. ¶ 51(b-e).

- The *pro rata* allocation will be modified by initially distributing a $100 Minimum Payment Amount to all Authorized Claimants, and then

distributing the remaining funds to Authorized Claimants whose weighted *pro rata* allocation exceeds $100 (subject to their being sufficient funds for each Authorized Claimant to receive at least $100). *Compare* Round 4 Plan of Allocation at 8; Round 5 Plan of Allocation at 5 *with* La Count Decl. ¶ 7.

- Allowed Claim Amounts for each Authorized Claimant will be determined separately for each Automotive Part. With respect to the specific vehicles containing Automotive Parts which were allegedly targeted by the collusive conduct of Defendants, the per vehicle Allowed Claim Amounts for the purchase or lease of such Vehicle makes, models and years will be weighted at four times the Allowed Claim Amount for other vehicles. *Compare* Round 4 Plan of Allocation at 8; Round 5 Plan of Allocation at 6 *with* La Count Decl. ¶ 30.

Accordingly, the Court should approve the proposed *pro rata* distribution.

**D.      At Settlement Class Counsel's Direction, the Court Should Permit the Settlement Administrator to Make Additional Payments to Authorized Claimants if the Circumstances Warrant and Authorize an Additional *Pro Rata* Distribution if Economically Feasible**

Finally, EPPs seek approval from the Court to authorize Epiq, at Settlement Class Counsel's direction, to make additional payments to Authorized Claimants,

from the Reserve Fund if the circumstances warrant[9] and a second *pro rata* distribution if economically feasible. In the event it is economically infeasible, EPPs will seek approval from the Court to donate the balance, after payment of any unpaid costs, fees and taxes, to a not-for-profit 501(c)(3) organization as may be approved by the Court.

## IV.   CONCLUSION

For the foregoing reasons, EPPs respectfully request that the Court enter an order:  (1) approving the Settlement Administrator's claim determinations made pursuant to the methodology described herein and as set out more fully in the La Count Decl.; (2) establishing a reserve of 15% of the Net Settlement Funds to be used for future administrative costs, any issues that might arise in connection with the *pro rata* distribution of funds, and Settlement Class Counsel's application for attorneys' fees and reimbursement of costs and expenses; (3) authorizing *pro rata* distributions of the Net Settlement Funds to Authorized Claimants subject to the reserve; (4) authorizing the Settlement Administrator to make additional payments to Authorized Claimants from the Reserve Fund if circumstances warrant; and (5) authorizing the Settlement Administrator to make a second *pro rata* distribution

---

[9] Any such additional payments would be consistent with the Rounds 4 and 5 Plans of Allocation and the Settlement Administrator's claims validation and acceptance process described herein and in the La Count Decl.

within 15 months of Epiq issuing checks in connection with the first *pro rata* distribution, if economically feasible.

Dated: December 27, 2024

By:  /s/ *Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

By:  /s/ *William v. Reiss*
William V. Reiss
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
wreiss@robinskaplan.com

By:  /s/ *Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Chanler A. Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002

Telephone: (713) 651-9366
Facsimile: (713) 651-6666
clangham@susmangodfrey.com

Jenna G. Farleigh
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206 505-3826
jfarleigh@susmangodfrey.com

*Settlement Class Counsel for the End-Payor
Plaintiff Settlement Classes*


By:  /s/ *E. Powell Miller*
E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@@millerlawpc.com

*Liaison Counsel for the End-Payor Plaintiff
Settlement Class*